DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P., et al.,** | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF FILING OF SEVENTH PLAN SUPPLEMENT PURSUANT TO THE**
**FIFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

      **PLEASE TAKE NOTICE** that, on June 3, 2021, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed solicitation versions of (i) the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2982] (as modified, amended or supplemented from time to time, the "**Plan**") and (ii) the *Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2983] (as modified, amended or supplemented from time to time, the "**Disclosure Statement**"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**PLEASE TAKE FURTHER NOTICE** that, on April 23, 2021, the Debtors filed the Notice of Filing of Plan Supplement Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors [D.I. 2732] (the "**First Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on April 25, 2021, the Debtors filed the *Notice of Filing of Second Plan Supplement Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2737] (the "**Second Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on May 15, 2021, the Debtors filed the *Notice of Filing of Third Plan Supplement Pursuant to the Second Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2867] (the "**Third Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on May 17, 2021, the Debtors filed the *Notice of Filing of Fourth Plan Supplement Pursuant to the Second Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2868] (the "**Fourth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on May 26, 2021, the Debtors filed the *Notice of Filing of Fifth Plan Supplement Pursuant to the Fourth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2938] (the "**Fifth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on June 2, 2021, the Debtors filed the Notice of Filing of *Sixth Plan Supplement Pursuant to the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2977] (the "**Sixth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file this *Seventh Plan Supplement Pursuant to the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (this "**Seventh Plan Supplement**" and, together with the First Plan Supplement, the Second Plan Supplement, the Third Plan Supplement, the Fourth Plan Supplement, the Fifth Plan Supplement and the Sixth Plan Supplement, each as may be amended, modified or supplemented from time to time, the "**Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that this Seventh Plan Supplement contains the following documents, as may be amended, modified or supplemented from time to time by the Debtors in accordance with the Plan:

| **Exhibit I** | Non-NAS PI TDP |
| **Exhibit I-1** | Redline of Non-NAS PI TDP |
| **Exhibit J** | NAS PI TDP |
| **Exhibit J-1** | Redline of NAS PI TDP |
| **Exhibit L** | PI Trust Agreement |
| **Exhibit M** | PI Futures Trust Agreement |
| **Exhibit N** | PI Futures Trust TDP |

Redlines filed herein reflect changes in each Plan Supplement document from the version filed on June 2, 2021. Exhibits and Schedules to Plan Supplement documents without changes have been omitted from Redlines.

**PLEASE TAKE FURTHER NOTICE** that the forms of documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is confirmed, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, subject to the terms and conditions set forth in the Plan, to alter, amend, modify or supplement any document in the Plan Supplement; *provided* that, if any document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the hearing to confirm the Plan, the Debtors will file a redline of such document with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan Supplement, the Plan, and the Disclosure Statement may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Hearing will be commenced on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; provided that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Hearing shall be conducted telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[2] Please be advised that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court without further notice.

---

[2] A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

Dated:   June 30, 2021
         New York, New York

                         DAVIS POLK & WARDWELL LLP

                         By:   /s/ Eli J. Vonnegut
                         _____

                         450 Lexington Avenue
                         New York, New York 10017
                         Telephone: (212) 450-4000
                         Facsimile: (212) 701-5800
                         Marshall S. Huebner
                         Benjamin S. Kaminetzky
                         Timothy Graulich
                         Eli J. Vonnegut
                         Christopher S. Robertson

                         *Counsel to the Debtors*
                         *and Debtors in Possession*

# **Exhibit I**

Non-NAS PI Trust Distribution Procedures

### INDIVIDUAL PURDUE PHARMA L.P.
### PI TRUST DISTRIBUTION PROCEDURE FOR NON-NAS PI CHANNELED CLAIMS

## § 1.    APPLICABILITY AND SUBMISSION INSTRUCTIONS.

This trust distribution procedure for Non-NAS PI Channeled Claims (as defined below) (the "Non-NAS PI TDP") sets forth the manner in which Non-NAS PI Channeled Claims may become eligible for payments from, and shall be fully discharged by, the PI Trust.[1] Distributions in respect of Non-NAS PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust Non-NAS Fund to Holders of Non-NAS PI Channeled Claims on the terms set forth herein.

Pursuant to the Plan and the Master TDP, the following claims (the "Non-NAS PI Channeled Claims") will be channeled to, and liability therefore shall be assumed by, the PI Trust as of the Effective Date of the Plan: (i) all Non-NAS PI Claims, which are claims against any Debtor for alleged opioid-related personal injury or other similar opioid-related claims or Causes of Action against any Debtor, and that arose prior to the Petition Date, and that are not (A) NAS PI Claims, Third-Party Payor Claims, NAS Monitoring Claims or Hospital Claims, or (B) held by a Domestic Governmental Entity, and (ii) all Released Claims or Shareholder Released Claims that are claims for alleged opioid-related personal injury or that are similar opioid-related claims or Causes of Action, and that arose prior to the Petition Date, and that are not (A) NAS PI Channeled Claims, Third-Party Payor Channeled Claims, NAS Monitoring Channeled Claims or Hospital Channeled Claims, or (B) held by a Domestic Governmental Entity. Non-NAS PI Channeled Claims shall be administered, liquidated and discharged pursuant to this Non-NAS PI TDP, and satisfied solely from the PI Trust Non-NAS Fund. Holders of Non-NAS PI Channeled Claims are referred to herein as "Non-NAS PI Claimants."[2]

Non-NAS PI Channeled Claims liquidated under this Non-NAS PI TDP shall be (i) Allowed or Disallowed (such Non-NAS PI Channeled Claims so Allowed, "Allowed Non-NAS PI Channeled Claims") and, for Allowed Non-NAS PI Channeled Claims, (ii) liquidated to determine the gross amounts receivable thereon (an "Award"), in each case pursuant to the terms of this Non-NAS PI TDP.

An Award for a Non-NAS PI Channeled Claim liquidated hereunder will be a gross number before deduction of the following "PI Trust Deductions and Holdbacks": (A) a pro rata share of the operating expenses of the PI Trust; (B) amounts held back under the Lien Resolution Program (the "LRP Agreement") to settle liens held by private insurance companies against that Award, if any; (C)  amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of the federal healthcare programs like

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 2967] (the "Plan") (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

[2]    "Non-NAS PI Claimant" includes each person holding a Non-NAS PI Channeled Claim arising from his/her own opioid use, and each person holding a Non-NAS PI Channeled Claim arising from the opioid use of a decedent (such deceased person, a "Decedent").

Medicare, Tricare, VA, or Medicaid against that Award, if any; (D) a pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan; and (E) the common benefit assessment required under Section 5.8(c) of the Plan, and the fees and costs of the Non-NAS PI Claimant's individual attorney(s) in the Chapter 11 Cases, if any, reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan.[3] In addition to the deductions and holdbacks described above, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

The order of payments to be made hereunder by the PI Trust is set forth in § 6. No amounts shall be paid on account of a Non-NAS PI Channeled Claim unless such Claim has been Allowed.

This Non-NAS PI TDP sets forth what evidence and forms you must submit in order to be eligible to receive an Award. Forms may be completed online at the PI Trust's website, www._____.com, or by mailing back the completed forms to the PI Trust at the below address. Evidence in support of your Non-NAS PI Claim should be submitted to [_____].[4]

---

[3]   If you have an individual attorney, then your attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from your Award.

[4]   Submission instructions to be added after solicitation.

2

**ELECTION TO LIQUIDATE NON-NAS PI CLAIM IN THE
TORT SYSTEM RATHER THAN UNDER THIS NON-NAS PI TDP**

**A Non-NAS PI Claimant who (i) timely filed a Proof of Claim in the Chapter 11 Cases prior to the General Bar Date asserting his/her Non-NAS PI Claim against one or more Debtors and (ii) elects expressly, by timely submission of the Non-NAS PI Claim Form attached hereto as Exhibit A, to liquidate his/her Non-NAS PI Claim in the tort system rather than pursuant to the streamlined procedures set forth in §§ 6-9 of this Non-NAS PI TDP (each, a "Non-NAS Opt-Out Claimant" and, collectively, the "Non-NAS Opt-Out Claimants"), may assert and liquidate such Non-NAS PI Claim in the tort system at his/her own expense, as set forth in more detail in Exhibit B, and shall forfeit all rights to liquidate such Non-NAS PI Claim (and any associated Non-NAS PI Channeled Claims regarding the same injuries that are the same subject of his/her Non-NAS PI Claim) under the streamlined procedures set forth in §§ 6-9 of this Non-NAS PI TDP, as well as the right to expedited appeal set forth in Exhibit C hereto. The right to litigate in the tort system is available only with respect to Claims that meet the definition of "PI Claim" set forth in the Plan.**

**OPTING OUT REQUIRES YOU TO TAKE THE AFFIRMATIVE ACTION OF CHECKING THE "OPT OUT" BOX ON THE NON-NAS PI CLAIM FORM AND TIMELY SUBMITTING YOUR NON-NAS PI CLAIM FORM TO THE PI TRUST. FAILURE TO TIMELY SUBMIT THE NON-NAS PI CLAIM FORM SHALL CONSTITUTE CONSENT TO HAVE YOUR NON-NAS PI CHANNELED CLAIMS LIQUIDATED PURSUANT TO THE PROVISIONS OF THIS NON-NAS PI TDP.**

**§ 2.    ALLOCATION OF FUNDS; CLAIMS ADMINISTRATOR.**

(a)    Allocations of Funds to the PI Trust and Further Allocation to the PI Trust NAS Fund and the PI Trust Non-NAS Fund.

Under the Plan, the PI Trust will receive a gross amount of between $700 million and $750 million (minus amounts distributed directly to the United States under the United States-PI Claimant Medical Expense Claim Settlement), in the form of an initial installment of $300 million on the Effective Date of the Plan and subsequent installments, in each case subject to the United States-PI Claimant Medical Expense Claim Settlement. The PI Trust shall establish a fund to pay NAS PI Channeled Claims (the "PI Trust NAS Fund"); and a fund to pay Non-NAS PI Channeled Claims (the "PI Trust Non-NAS Fund"), and shall allocate each distribution it receives under the Plan as follows: (i) 6.43% to the PI Trust NAS Fund, up to an aggregate maximum of $45 million, and (ii) the remainder to the PI Trust Non-NAS Fund, in each case subject to applicable PI Trust Deductions and Holdbacks.

(b)    Claims Administrator.

(i)    The PI Trust shall be established in accordance with § 5.7 of the Plan to (1) assume all liability for the PI Channeled Claims, (2) hold the MDT PI Claim and collect the Initial PI Trust Distribution and payments due under

3

the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents, (3) administer, process, resolve and liquidate PI Channeled Claims, (4) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents (including this Non-NAS PI TDP), (5) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement and (6) carry out such other matters as are set forth in the PI Trust Documents.[5] The trustee of the PI Trust (the "Trustee"), Edgar Gentle III, of Gentle, Turner, Sexton & Harbison, LLC, will serve as claims administrator (the "Claims Administrator") to carry out the duties of the Trustee as set forth in the Plan and PI Trust Documents.[6]

(ii)   The Trustee and the Claims Administrator[7] shall determine, pursuant to the requirements set forth herein, the Allowance or Disallowance and valuation of all Non-NAS PI Channeled Claims liquidated under §§ 6-9 of this PI TDP, regardless of the type of Award sought. Distributions hereunder are determined only with consideration to a Non-NAS PI Claim held against the Debtors, and not to any associated Non-NAS PI Channeled Claim against a non-Debtor party. However, any Distribution to a Non-NAS PI Claimant on account of his/her Non-NAS PI Claim is deemed to be a distribution in satisfaction of all Non-NAS PI Channeled Claims held by such Non-NAS PI Claimant with respect to the injuries that are the subject of his/her Non-NAS PI Claim. The Claims Administrator may investigate any such claim, and may request information from any Non-NAS PI Claimant to ensure compliance with the terms outlined in this document. For Non-NAS PI Claimants who execute the required HIPAA forms attached hereto as Exhibit D, the

---

[5]   The PI Trust Agreement shall provide that the Trustee shall have the power to appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of the PI Trust Agreement, the PI TDP, and the LRP Agreement, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents.

[6]   The PI Trust Agreement shall provide that the Trustee shall receive a retainer from the PI Trust for his service as a Trustee in the amount of $150,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the PI Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour. For all non-working travel time in connection with PI Trust business, the Trustee shall receive the sum of $200 per hour. The Trustee shall record all hourly time to be charged to the PI Trust. The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the PI Trust's oversight committee, appropriately adjusted by the Trustee for changes in the cost of living. The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

[7]   As the same individual is serving as both Trustee and Claims Administrator, reference to actions by each reference Mr. Gentle acting in such respective capacity.

Claims Administrator also has the power to directly obtain such Non-NAS
PI Claimant's medical records.

## § 3.    INITIAL NON-NAS PI CHANNELED CLAIM ALLOWANCE.

For a Non-NAS PI Channeled Claim that is being liquidated pursuant to the streamlined
procedures set forth in §§ 6-9 of this Non-NAS PI TDP to be Allowed, the applicable Non-NAS
PI Claimant <u>must, with respect to that Non-NAS PI Channeled Claim</u>:

(a)    <u>Hold such Non-NAS PI Channeled Claim against one or more Debtors;</u>

(b)    <u>Demonstrate usage of a qualifying **prescribed** opioid listed in Exhibit E hereto (a
"Qualifying Opioid")</u>

    (i)    Non-NAS PI Claimants who used only (or, as applicable, where the
Decedent used only) a **non-prescribed** (diverted) version of a Qualifying
Opioid (OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC
Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt) are not eligible for an
Easy Payment, Base Payment or Level Award (each as defined below)
unless that Non-NAS PI Claimant or Decedent (as applicable) was a minor
when s/he initiated usage of a non-prescribed, *branded* version of a
Qualifying Opioid;

(c)    <u>Have already timely[8] filed an individual personal injury Proof of Claim against
one or more Debtors in the Chapter 11 Cases asserting his/her Non-NAS PI Claim
against one or more Debtors;</u>

(d)    <u>Complete, sign and submit the Non-NAS PI Claim Form attached hereto as
Exhibit A, checking at least one injury box[9] by the date that is 90 days[10] after the
Non-NAS PI Claim Form is disseminated[11] to Non-NAS PI Claimants;[12]</u>

---

[8]    If the Proof of Claim was filed after the Bar Date but before April 23, 2021, the Claims Administrator shall
consider the Non-NAS PI Channeled Claim without penalty. If the Proof of Claim was filed on April 23, 2021
or after, the Non-NAS PI Channeled Claim asserted by such Proof of Claim shall be Disallowed unless (i) the
Claims Administrator determines, which determination shall be on a case-by-case basis, that good cause exists
to treat the late-filed Non-NAS PI Channeled Claim as if it were timely filed, or (ii) the Bankruptcy Court so
orders otherwise.

[9]    In the event a Non-NAS PI Claimant does not check any injury box from use of opioids on his/her Non-NAS PI
Claim Form, his/her Non-NAS PI Channeled Claim shall be Disallowed. The Non-NAS PI Claim Form shall
include clear language notifying a Non-NAS PI Claimant that if he or she fails to check any injury box from use
of opioids, s/he will receive no recovery on his/her Non-NAS PI Channeled Claim.

[10]    Subject to extension in the discretion of the Claims Administrator.

[11]    Within 60 days after Effective Date, the Non-NAS PI Claim Form will be made available to Non-NAS PI
Claimants electronically and, if a Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI
Claimant in physical copy. When disseminated, the Non-NAS PI Claim Form will clearly state the absolute
deadline (e.g., "January 30, 2022") by which the Non-NAS PI Claim Form must be returned.

(e)    Complete, sign and submit the two HIPAA consent forms attached hereto as
Exhibit D; and

(f)    If the Non-NAS PI Channeled Claim concerns the injuries of a Decedent, then
also execute and submit the appropriate Heirship Declaration attached hereto as
Exhibit F.[13]

Any Non-NAS PI Claimant who satisfies all of the above requirements (a)-(f) with respect to a given
Non-NAS PI Channeled Claim shall have that Non-NAS PI Channeled Claim Allowed.

**If a Non-NAS PI Claimant does not satisfy these requirements with respect to a Non-NAS
PI Channeled Claim that is being liquidated under §§ 6-9 of this Non-NAS PI TDP,
INCLUDING THE REQUIREMENT TO TIMELY SUBMIT HIS/HER NON-NAS PI
CLAIM FORM AND ANY NECESSARY ACCOMPANYING EVIDENCE, then such
Non-NAS PI Channeled Claim shall be Disallowed.**

**Regardless of whether you elect to "opt out" or to have your claim liquidated under this
Non-NAS PI TDP, you must complete the Non-NAS PI Claim Form as instructed by the
deadline, which is 90 days[14] after the Non-NAS PI Claim Form is disseminated. Failure to
timely submit the Non-NAS PI Claim Form (and any required supporting evidence) will
result in your claim being disallowed. In other words, if you do nothing, you will not
receive any compensation from the PI Trust.**

## § 4.    DETERMINING WHETHER A PRODUCT IS QUALIFYING.

One of the following is required to demonstrate a Qualifying Opioid as listed in Exhibit E:

(a)    A Non-NAS PI Claimant who provides evidence of a prescription for brand name
OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR,
OxyFast, OxyIR, Palladone, or Ryzolt may rely on the name alone without the
necessity of a corresponding NDC number.

(b)    In order for a Non-NAS PI Claimant to qualify based on the use of one of the
generic products listed in Exhibit E (e.g., oxycodone ER/CR, morphine sulfate ER,
hydromorphone), s/he must present either:

(i)    The corresponding NDC number, which is set forth in Exhibit E;[15] or

---

[12]    If the Non-NAS PI Claimant checks the box on the Non-NAS PI Claim Form indicating his/her election to
liquidate his/her Non-NAS PI Claim in the tort system rather than under §§ 6-9 of this PI TDP, then such Non-
NAS PI Claim will not be liquidated hereunder.

[13]    Exhibit F contains two declaration forms. One applies if the Decedent named the Non-NAS PI Claimant as
executor in his/her will; the other applies if the Decedent had no will.

[14]    Subject to extensions which the PI Trust claims administrator may give in his discretion.

[15]    Subject to additional NDC numbers after discovery from or other disclosure by Debtors.

       (ii)     A notation in the record that the product is manufactured or sold by Rhodes or Purdue.

    (c)     A Non-NAS PI Claimant who used (or, as applicable, where the Decedent used) a generic oxycodone prescription that does not contain evidence of § 4(a) or (b) may only qualify if the prescription utilizes one of the following:

       (i)     Oxycodone CR (or controlled release); or

       (ii)     Oxycodone ER (or extended release).

## § 5.    TYPES OF EVIDENCE REQUIRED FOR QUALIFYING PRODUCTS.

All Non-NAS PI Claimants must demonstrate a prescription (which contains the name of the Non-NAS PI Claimant or Decedent, as applicable) and a Qualifying Opioid by one of the following pieces of evidence:

    (a)     Pharmacy prescription records;

    (b)     Prescription records, including without limitation:

       (i)     A visit note in which the prescribing physician lists a prescription for one of the Qualifying Opioids; or

       (ii)     A signed prescription from a doctor for one of the Qualifying Opioids;

    (c)     A historical reference to one of the Qualifying Opioids, including but not limited to:[16]

       (i)     A reference in contemporaneous medical records to historical use of one of the Qualifying Opioids;

       (ii)     A reference in contemporaneous substance abuse/rehabilitation/mental health records to historical use of one of the Qualifying Opioids;

       (iii)     A reference in contemporaneous law enforcement records to historical use of one of the Qualifying Opioids; or

       (iv)     A reference in contemporaneous family law or other legal proceedings records to historical use of one of the Qualifying Opioids;

    (d)     A photograph of the prescription bottle or packaging of one of the Qualifying Opioids with the name of the Non-NAS PI Claimant or Decedent (as applicable) as the patient listed the prescription label; or

---

[16] The record must have been created prior to September 15, 2019 only if the historical reference is self-reported by the Non-NAS PI Claimant.

(e)      A certification supplied by a Debtor, any of its successors (including the PI Trust), or a third party at a Debtor's or one of its successors' request, indicating that customer loyalty programs, patient assistance programs ("PAPs"), copay assistance programs, or any other data otherwise available to the certifying entity reflects that the Non-NAS PI Claimant or Decedent (as applicable) had at least one prescription for one of the Qualifying Opioids.

(f)      With respect to a Non-NAS PI Claimant whose Non-NAS PI Channeled Claim is based on the Non-NAS PI Claimant's or Decedent's use of only *diverted* (i.e., without a lawful prescription) qualifying branded products as a minor pursuant to § 3(b)(i) above and who cannot meet the evidentiary requirements of § 5(a)-(e) above[17] may qualify if the Non-NAS PI Claimant can demonstrate both of the following:[18]

(i)      A declaration under penalty of perjury (a) from the Non-NAS PI Claimant, or (b) in the case of a claim arising from a Decedent's opioid use, from any third party with knowledge of the Decedent's opioid use, that the Non-NAS PI Claimant or Decedent is known to have used diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt as a minor. The declaration must also state how long the diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the Non-NAS PI Channeled Claim would qualify for Tier 2 or Tier 3; and

(ii)     An *additional* declaration from a third party with personal knowledge of the Non-NAS PI Claimant's or Decedent's use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the Non-NAS PI Claimant or Decedent is known to have used diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt as a minor. The declaration must claim how long the diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the Non-NAS PI Channeled Claim would qualify for Tier 2 or Tier 3.

(g)      In the event a Non-NAS PI Claimant holds a claim arising from a *lawful* prescription of a qualifying product and cannot meet the evidentiary requirements of § 5(a)-(e) above, s/he may only qualify if s/he demonstrates all of the following:

---

[17]  Since by definition diversion cases do not have a prescription, a Non-NAS PI Claimant could otherwise meet the evidentiary requirements above only with a historical reference to the diverted use of a qualifying product as a minor. In the absence of that historical reference in the medical records, this affidavit requirement can be used under the conditions set forth in this subsection.

[18]  Sample affidavits will be made available on the PI Trust website.

8

(i)    That the Non-NAS PI Claimant or his/her agents made a bona fide attempt to retrieve all known prescribing physician medical charts, all known pharmacy charts, all known rehabilitation charts, and all known insurance explanation of benefits was made. An affidavit of no records (ANR), certificate of no records (CNR), affidvit of destroyed records (ADR), or certificate of destroyed records (CNR) must be provided as to all known records listed above (and in the Non-NAS PI Claim Form). Alternatively, if some medical records were produced in response to the Non-NAS PI Claimant's request but others were not, then evidence must be provided that the Non-NAS PI Claimant requested all records but that only limited records were produced by the facilities (with an explanation of how the portion of records not provided by the custodian likely contains the qualifying product and the basis for that assessment of probability); and

(ii)    A declaration under penalty of perjury from the Non-NAS PI Claimant or, in the case of a claim arising from the opioid use of a Decedent, from a third party with knowledge of the Decedent's opioid use, that the Non-NAS PI Claimant or Decedent is known to have been prescribed and used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the Non-NAS PI Channeled Claim would qualify for Tier 2 or Tier 3; and

(iii)    A supporting declaration from a third party with personal knowledge of the Non-NAS PI Claimant's or Decedent's use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the Non-NAS PI Claimant or Decedent is known to have used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the Non-NAS PI Channeled Claim would qualify for Tier 2 or Tier 3.

(h)    The Claims Administrator shall have discretion, subject to the appeal process set forth in Exhibit C hereto, to determine whether the requirements in § 5(f)-(g) above have been met so as to provide sufficient indicia of reliability that the Non-NAS PI Claimant or Decedent was prescribed (or as a minor received diverted) and used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt.

(i)    In no event may a Non-NAS PI Claimant whose evidence of qualifying product use is based solely on the declarations under § 5(f)-(g) qualify for Tier 1A or Tier 1B. Whether the Non-NAS PI Claimant qualifies for Tier 2 or Tier 3 will be based on the length of use stated in the declaration.

9

(j)      Any Non-NAS PI Claimant who fails to meet the requirements of § 3, § 4 and § 5(a)-(g) is not entitled to any payment, including Easy Payment, Base Payment, or Level Award (each as defined below).

(k)      The Claims Administrator has the discretion to request additional documentation believed to be in the possession of the Non-NAS PI Claimant or his or her authorized agent or lawyer. The Claims Administrator has the sole discretion, subject to the appeal process set forth in Exhibit C hereto, to Disallow, or to reduce or eliminate Awards on, claims being liquidated hereunder where he concludes that there has been a pattern and practice to circumvent full or truthful disclosure under this § 5.

## § 6.    ORDER OF PAYMENTS; EASY PAYMENT.

A Non-NAS PI Claimant may choose between receiving an "Easy Payment" *or* a "Base Payment" and "Level Award," as detailed below.

The PI Trust will make payments in the following order:

(a)      Easy Payment (as defined below) of $3,500 per qualifying Non-NAS PI Claimant[19] to those Non-NAS PI Claimants who elect to receive an Easy Payment; and

(b)      Base Payments and Level Awards (each as defined below) to qualified Non-NAS PI Claimants who did not elect to receive an Easy Payment.

Because monies are being received by the PI Trust in installments, payments of Awards other than Easy Payments may be in installments. Additionally, payments of awards may be further delayed into installment payments if a competent court so orders. Finally, distributions to minors are to be held in trust until the minor becomes a legal adult (unless a competent court orders otherwise). For all of these reasons, it may take years before you receive all of your Award.

A Non-NAS PI Claimant meeting the requirements of § 3 (Allowance) pursuant to the standards set in § 4 (Determining What is a Qualifying Product) and § 5 (Evidence Required to Demonstrate a Qualifying Product) may elect on his/her Non-NAS PI Claim Form to receive a set payment (an "Easy Payment") in lieu of other compensation. **NOTE: if you select an Easy Payment, you are NOT eligible to receive any additional funds for your Non-NAS PI Channeled Claim**. That means you cannot receive any of the Base Payments or Level Awards below. If you select an Easy Payment and your Non-NAS PI Channeled Claim is determined to be an Allowed Non-NAS PI Channeled Claim, you will be entitled to a gross payment of $3,500, before deduction of any fees, costs or liens as described herein, within a reasonably short amount of time after receipt of your claims package by the Claims Administrator, or as soon as all

---

[19]    If a Non-NAS PI Claimant has multiple qualified PI Claims on account of personal injuries to more than one opioid user, then that Non-NAS PI Claimant may have distinct Non-NAS PI Claims, each of which may recover hereunder.

applicable liens have been cleared. The Easy Payment is also expected to be free of many (but not all) types of health care liens, including liens of Third-Party Payors.

## § 7.    ADDITIONAL AWARD DETERMINATION.

(a)    Allowed Non-NAS PI Channeled Claims held by Non-NAS PI Claimants who do not elect to receive an Easy Payment and who otherwise meet the Qualifying Opioid requirement shall be categorized[20] as follows:

    (i)    **Tier 1A**:

        A.    Base Payment:

            1.    For Non-NAS PI Claimants who demonstrate that his/her or the Decedent's addiction, dependence or substance abuse began while using one of the Qualifying Opioids.

            2.    Other than submission of qualifying product records under § 3, § 4 and § 5(a)-(f), no additional documents are required for a Holder of an Allowed Non-NAS PI Channeled Claim to secure a Tier 1A Base Payment. The showing required for a Tier 1A Base Payment is a temporal relationship between use of a qualifying product and the onset of addiction, dependence or substance abuse within six months after use of a qualifying product. There is a presumption that proof of qualifying product usage under the methods above within 6 months before the onset of addiction, dependence or substance abuse (as set forth in the Non-NAS PI Claim Form) is sufficient.

              aa.    However, notwithstanding evidence of a qualifying product usage before the onset of addiction, dependence or substance abuse noted in the Non-NAS PI Claim Form, if the Non-NAS PI Claim Form, pharmacy, medical or other records demonstrate any of the below indicia of addiction, dependence or substance abuse that precede the earliest use of a qualifying product demonstrated by a Non-NAS PI Claimant, the claim does not qualify for Tier 1A.

                a. diagnosis of addiction, dependence or substance abuse relating to opioid use made by any medical professional;

                b. treatment in a rehabilitation center for opioid use disorder;

                c. overdose, withdrawal, or detox from an opioid;

---

[20]    Non-NAS PI Claimants who assert or allege Qualifying Opioid usage in their Non-NAS PI Claim Forms for which they cannot produce corresponding evidence will not recover on account of such alleged opioid usage.

     d. consecutive use of opioids with MME of greater than 90 mg/day for 6 months or more;

     e. use of illegal opioids; or

     f. use of medication-assisted treatment ("MAT") like methadone.

B.   <u>Level Awards</u>: In addition to Base Payments, Tier 1A Non-NAS PI Claimants meeting the criteria below qualify for the additional payment attendant to the highest Level they qualify for (but not multiple Levels).

  1.  *Level A*:

    aa.   For Non-NAS PI Claimants who demonstrate one or more of the following:

     a. Opioid Use Disorder ("OUD");[21]

     b. MAT usage >6 months. MAT drugs include methadone, buprenorphine, Butrans, Suboxone, Zubsolv, Methadose, and naltrexone; or

     c. Administration of Narcan, Evzio or Naloxone.

  2.  *Level B*:

    aa.   For Non-NAS PI Claimants who demonstrate death caused by an opioid (such as overdose or withdrawal).

C.   <u>Additional Evidence for Level Awards</u>:

  1.   If making a claim for a Tier 1A Level Award based on OUD diagnosis, medical records, including rehabilitation records, primary care, hospital, billing or other records reflecting a diagnosis of OUD made by a medical or health professional. No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

  2.   If making a claim for a Tier 1 A Level Award based on MAT or Narcan, Evzio or Naloxone use, pharmacy or other medical records reflecting use of MAT, Narcan, Evzio or Naloxone. The types of evidence that qualify to show MAT, Narcan, Evzio or Naloxone exposure are the same as those in § 5(a)-(d). No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

  3.   If making a claim for a Tier 1A Level Award based on death, the death certificate of the Decedent as well as any toxicology reports or autopsy reports. The records do not have to coincide in time with the provided qualifying

---

[21] The diagnosis can be made by any medical professional, specifically including physicians, nurses, physician's assistant, mental health counselor or therapist, or professional at a rehabilitation center.

product use. No affidavits may be used to meet this requirement.

4. The Non-NAS PI Claimant may submit such additional information as the Non-NAS PI Claimant believes will assist the Claims Administrator's determination of the appropriate amount of any Non-NAS PI Channeled Claim that has satisfied the initial claim validity requirements.

(ii) **Tier 1B:** Opioid-related death (overdose or withdrawal) while on OxyContin (temporal relationship between date of death and usage of OxyContin) qualify for Tier 1B Base Payment. Only branded OxyContin would qualify under Tier 1B (i.e., no other Qualifying Opioids). There are no Level Awards. If a Non-NAS PI Claimant is making a claim for a Tier 1B Award, the death certificate of the Decedent as well as any toxicology reports or autopsy reports must be produced. The death must coincide in time with the provided qualifying product use (i.e. the timing of usage, including number of pills, falls within 5 days of the death). For example, if the Decedent had a prescription 20 days before death and the number of pills in that prescription was enough such that it can reasonably be expected the Decedent was using it within 5 days of death, the case qualifies. Conversely, if the Decedent had a prescription 45 days before death and the number of pills in the prescription was such that it can reasonably be expected that the Decedent would have run out of pills 15 days before death, the case does not qualify. The underlying addiction does not need to have begun during qualifying product use; OxyContin use at the time of death is sufficient.

(iii) **Tier 2:** Non-NAS PI Claimants must demonstrate use of a qualifying product for more than 6 months; however, the usage does not have to be consecutive.

A. Base Payment: Other than for qualifying product records under § 3, § 4 and § 5(a)-(g), no additional documents are required for a Tier 2 Base Payment. All Non-NAS PI Claimants that qualify for Tier 2 will receive a Base Payment.

B. Level Awards: In addition to Base Payments, Tier 2 Non-NAS PI Claimants meeting the criteria below qualify for the additional payment attendant to the highest Level they qualify for (but not multiple Levels).

1. *Level A*:

aa. For Non-NAS PI Claimants who demonstrate one or more of the following:

a. Opioid Use Disorder (OUD);

b. MAT >6 months days; or

c. Administration of Narcan, Evzio or Naloxone.

13

      2. *Level B*:

        aa.   For Non-NAS PI Claimants who demonstrate death caused by an opioid.

C.    <u>Additional Evidence for Level Awards</u>:

    1.   If making a claim for a Tier 2 Level Award based on OUD diagnosis, medical records, including rehabilitation records, primary care, hospital, billing or other records reflecting a diagnosis of OUD made by a medical or health professional. No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

    2.   If making a claim for a for a Tier 2 Level Award based on MAT or Narcan, Evzio or Naloxone use, pharmacy or other medical records reflecting use of MAT, Narcan, Evzio or Naloxone. The types of evidence that qualify to show MAT, Narcan, Evzio or Naloxone exposure are the same as those in § 5(a)-(d). No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

    3.   If making a claim for a Tier 2 Level Award based on death, the death certificate of the Decedent as well as any toxicology reports or autopsy reports. The records do not have to coincide in time with the provided qualifying product use. No affidavits may be used to meet this requirement.

(iv)   **<u>Tier 3</u>:** Use of a qualifying product less than 6 months and otherwise not meeting the criteria of Tier 1A, Tier 1B or Tier 2 are entitled to no additional payments other than the Base Payment. Non-NAS PI Claimants who elect to receive the Easy Payment cannot receive any additional compensation, and no Tier applies to their Non-NAS PI Claim. However, in the event a Non-NAS PI Claimant declines the Easy Payment and elects to proceed but does not qualify for Tiers 1A, 1B, or 2, such Non-NAS PI Claimant will receive the Tier 3 Base Payment and only the Tier 3 Base Payment.

## § 8.   BASE PAYMENTS AND LEVEL AWARDS.

(a)    Grid Origins.

The point values provided in this grid resulted from the work of counsel to the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject matter experts for the Ad Hoc Group of Individual Victims and the other holders of PI Channeled Claims, and collaborative discussions with stakeholders. The estimated amount per point is based on a sample, and will be updated periodically on the PI Trust's website, www._____.com.

(b)      Amount of Money Per Point.

Based on an initial sample, we estimate that the dollar award amount per point will be between $0.80 and $1.20. The dollar amount ultimately awarded per point will be determined with reference to the funds available in the PI Trust and the pool of claims remaining against the PI Trust after the payment of Easy Payments.

| | **Tier 1A**<br>*Addiction from Purdue Opioids* | **Tier 1B**<br>*Death on OxyContin* | **Tier 2**<br>*Purdue Opioids Use ≥6 months* | **Tier 3**<br>*No Addiction/ Death from Purdue Opioids, and Purdue Opioids Use <6 months* |
|---|---|---|---|---|
| **BASE PAYMENTS** | 20,000 pts[22] | 40,000 pts | 6,000 pts | $3,500 |
| **LEVELS (one of the below)[23]** | | | | |
| **A** | 10,000 pts<br><br>OUD Diagnosis, OR MAT for >6 months | N/A | 3,000 pts<br><br>OUD Diagnosis, OR MAT for >6 months | N/A |
| **B** | 20,000 pts<br><br>Death from an Opioid | N/A | 20,000 pts<br><br>Death from an Opioid | N/A |

## § 9.      ADDITIONAL CLAIM FACTORS AND VALUATION.

(a)      To the extent practicable, only objective factors are to be scored, based upon the axiom that in mass torts consistency is fairness.

(b)      This grid is based in part on other scoring grids developed in comparable cases and development of a scoring grid with unique customization according to the claims and injuries encountered and reviewed in sampling individual PI Claims.

(c)      Because of limited funds, economic damages are not compensable. This Non-NAS PI TDP only compensates general pain and suffering. Nonetheless, all personal injury damages from use of Qualifying Opioids are being channeled to the PI Trust and released, including both economic and non-economic or general damages.

(d)      Only reported injuries are to be scored.

---

[22]   Non-NAS PI Claimants who do not claim addiction, dependence or abuse of opioids are not entitled to receive Tier 1A Awards.

[23]   If a Non-NAS PI Claimant does not qualify for additional Level Awards, he/she does not get additional money above the Base Payment. A Non-NAS PI Claimant can only qualify for one, but not multiple, Level Awards.

15

(e)     In no circumstance shall the Claims Administrator assign any claim value for any punitive damages, exemplary damages, statutory enhanced damages, or attorneys' fees or costs (including statutory attorneys' fees and costs).

(f)     Only Non-NAS PI Claims based on injuries or facts occurring prior to the filing of your Non-NAS PI Claim Form are eligible for recovery.

## § 10.   BAR FOR PRIOR SETTLED CASES.

A Non-NAS PI Claimant whose Non-NAS PI Channeled Claim was reduced prior to the Petition Date to a settlement, judgment, or award against a Debtor shall be barred from receiving any Award under this Non-NAS PI TDP (Easy Payment, Base Payment or Level Award) on account of such Non-NAS PI Channeled Claim and shall not recover from the PI Trust on account of such Non-NAS PI Channeled Claim; provided, however, that a prior settlement with respect to a living person's OUD claim does not bar a subsequent wrongful death claim arising out of that settled OUD claim.

## § 11.   SPECIAL PROCEDURES IN RESPECT OF MINORS.

For Non-NAS PI Claimants who are minors under applicable law, the special procedures set forth in Exhibit G hereto also apply and shall supplement the procedures set forth in this Non-NAS PI TDP.

## § 12.   FAIRNESS AUDITS AND FRAUD PREVENTION.

The Claims Administrator will use appropriate technology and strategies to prevent paying fraudulent claims while making the claims process as simple as possible. Reasonable steps will be taken to mitigate fraud so as to ensure a fair and secure claims review and payment process, while not falsely flagging legitimate PI Channeled Claims. Among the techniques will be technology to prevent claims submitted by BOTS, unique Non-NAS PI Claimant identification numbers, and strategic Non-NAS PI Claim Form fields. Periodic fairness audits will be conducted on samples of Non-NAS PI Channeled Claims to ensure that they are being graded and paid fairly.

## § 13.   CHARITY.

The PI Trust will establish a charitable trust to accept donations that can be used to address the opioid addiction crisis by providing grant funding for recovery support services, addiction and addiction family harm reduction-related activities, education, family support, community-based advocacy efforts, and assistance to organizations providing services to individuals and caregivers grappling with opioid-related problems of Non-NAS PI Claimants. The distribution of funding provided by this charity may be streamlined through qualified not-for-profit organizations. The charity will be funded only through donations; none of the funds received by the PI Trust under the Plan will be diverted to fund this charity. Non-NAS PI Claimants may choose to allocate part or all of their share of their recovery to this charity.

16

## § 14.    APPEALS.

Each Non-NAS PI Claimant who has his/her Non-NAS PI Channeled Claims liquidated under this Non-NAS PI TDP has an appeal right, which is described in Exhibit C. Decisions of the Appeals Master pursuant to Exhibit C are final and binding, and Non-NAS PI Claimants have no further appeal rights as to any determinations made by the Claims Administrator under this Non-NAS PI TDP beyond those set forth in Exhibit C.

## **EXHIBIT A**

## **SAMPLE CLAIM FORM FOR**
## **THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION**
## **PROCEDURE FOR NON-NAS PI CLAIMS**

# PURDUE PHARMA PI TDP
# NON-NAS CLAIM FORM
# INSTRUCTIONS PAGE

**THIS IS A SAMPLE CLAIM FORM AND IS SUBJECT TO CHANGE. DO NOT COMPLETE THE FORM AT THIS TIME. A BLANK COPY OF THE FINAL FORM WILL BE AVAILABLE ONLINE AND BY MAIL FOR YOU TO COMPLETE AT THE APPROPRIATE TIME AFTER THE PURDUE PLAN OF REORGANIZATION HAS BEEN APPROVED AND GONE EFFECTIVE.**

This Purdue Bankruptcy Claim Form (the "Claim Form") must be completed by each Non-NAS PI Claimant seeking to recover money from the Purdue Personal Injury Trust (The "PI Trust") on its Non-NAS PI Channeled Claims.[1]  IF YOU DO NOT TIMELY RETURN THIS CLAIM FORM AS INSTRUCTED, YOU WILL BE DEEMED TO HAVE CONSENTED TO HAVE YOUR NON-NAS PI CHANNELED CLAIMS LIQUIDATED UNDER THE NON-NAS PI TDP, AND YOUR CLAIMS WILL BE DISALLOWED UNDER THE NON-NAS PI TDP FOR YOUR FAILURE TO TIMELY RESPOND.

If you hold multiple Non-NAS PI Claims against the Debtors on account of injuries to *more than one* opioid user, then fill out one Claim Form for each of those Non-NAS PI Claims. If you hold multiple Non-NAS PI Claims on account of multiple injuries to *the same* opioid user, then fill out only one Claim Form. One Claim Form submitted for a Non-NAS PI Claim shall be deemed to be a Claim Form in respect of that Non-NAS PI Claim and also any Non-NAS PI Channeled Claims against a Released Person or Shareholder Released Person that are associated with that Non-NAS PI Claim.

**Follow the instructions of each section carefully to ensure that your Claim Form is submitted correctly**. If any section does not pertain to your claim, leave it blank. Except as otherwise indicated, all words shall be given their ordinary, dictionary meaning. Submitting this Claim Form does not guarantee that you will receive payment from the PI Trust. Whether or not you receive payment depends on whether you make the additional required submissions, as set forth in the Non-NAS PI TDP, and whether or not your claim meets the eligibility requirements set forth in the Non-NAS PI TDP.

This Claim Form allows you to choose to "opt out" of the streamlined, expedited Non-NAS PI TDP liquidation process with respect to any Non-NAS PI Claim against one or more of the Debtors, and instead pursue that Non-NAS PI Claim in the tort system by filing a lawsuit against the PI Trust at your own expense. You may litigate in court only with respect to a Non-NAS PI Claim held against one or more Debtors, and may not litigate other Non-NAS PI Channeled Claims. If you select the "opt out" option, you will not be eligible to receive the Easy Payment or any "Base Payment" or "Level Award." Furthermore, you will not be allowed to opt back in to the Non-NAS PI TDP if your lawsuit is unsuccessful in the tort system. Any final judgment you obtain in the tort system against the Non-NAS PI Trust will be subject to reduction pursuant to the "opt out" procedures set forth in Exhibit B to the Non-NAS PI TDP. YOU MAY ONLY OPT OUT BY CHECKING THE "OPT OUT" BOX AND TIMELY RETURNING THIS CLAIM FORM. FAILURE TO RESPOND DOES NOT CONSTITUTE OPTING OUT.

For those who do not "opt out," this Claim Form requires you to choose between receiving an "Easy Payment" of $3,500 or seeking a "Base Payment" and "Level Award." If your Non-NAS PI Claim is eligible for

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Non-NAS PI TDP or, if not defined therein, then the meanings ascribed to them in the Chapter 11 Plan.

payment, then the "Easy Payment" choice will get you money faster, but may not pay as much as a "Base Payment" or "Level Award" would ultimately pay.

By submitting this Form and choosing to liquidate your Claim under the Non-NAS TDP, you are deemed to consent to the Lien Resolution Program, under which certain health insurance companies, known as "Third-Party Payors" or "TPPs," have agreed to resolve their claims against you and/or your recoveries under the Non-NAS PI TDP for reduced amounts or, in some cases, by waiving their claims altogether. The LRP Agreement is attached as Exhibit [ ] to the [ ] Plan Supplement.

**Instructions for Submission**: You may complete and submit this Claim Form either online, at ▮▮▮▮▮, or by mailing back the completed Claim Form to ▮▮▮▮▮

# PURDUE PHARMA PI TDP NON-NAS CLAIM FORM

## PART ONE: PERSONAL INFORMATION OF NON-NAS PI CLAIMANT

What is the Claim Number assigned to your claim by Prime Clerk? ███████████

Please only fill out **one** of the following sections (Section 1.A, 1.B, or 1.C).

☐ **Section 1.A: If you are filing a PI Claim arising from your own use of opioids, please fill out the information below.**

Claimant's Name**:** ██████████████

Date of Birth: ██████████████

Claimant's Address: ██████████████

Claimant's Social Security Number: ██████████████

☐ **Section 1.B: If you are filing a PI Claim due to another's death from use of opioids, please fill out the information below.**

Opioid User's Name: ████████████

Claimant Name Filing on behalf of the Opioid User: ████████████

Date of Birth of Opioid User: ████████████

Date of Death: ████████████

Cause of Death: ████████████

Opioid User's Social Security Number: ████████████

☐ **PART TWO: "OPT OUT" OF THE NON-NAS PI TDP PROCEDURE**

If you would like to forfeit all rights to have your Non-NAS PI Channeled Claims liquidated under the Non-NAS PI TDP and instead to pursue your Non-NAS PI Claim by filing a lawsuit against the PI Trust in court at your own expense, check the following box. If you "opt out," you will not be eligible to receive an "Easy Payment," "Base Payment," or "Level Award" from the PI Trust.

Mark the following box **only if** you **elect to "opt out" of the Non-NAS PI TDP liquidation process and instead pursue your Non-NAS PI Claim in civil court through the tort system by filing a lawsuit in court at your own expense**: ☐

**PART THREE: EASY PAYMENT ELECTION (If you selected "Opt Out," then skip this Part Three)**

**Section 3.A:** You may elect to receive an "Easy Payment" in lieu of other compensation. If you elect to receive an Easy Payment, you will receive a one-time payment of $3,500 within a reasonably short amount of time after receipt of your Claims Package by the Claims Administrator and resolution of any healthcare liens. The Easy Payment is expected to be free of many but not all types of health care liens. Even if you select the Easy Payment option, you must comply with the requirements of the Non-NAS PI TDP. **WARNING: If you elect to receive an Easy Payment, you are not eligible to receive any additional Awards for your Non-NAS PI Channeled Claims. On the other hand, declining the Easy Payment election and seeking a "Base Payment" and "Level Award" may result in receiving payment at a later date and through installments.**

Mark the following box **only if** you **elect to receive the Easy Payment** and **waive all additional Awards** or compensation:    ☐

---

**PART FOUR: PRESCRIBED MEDICATIONS (If you selected "Opt Out," SKIP this Part Four)**

**Section 4.A:** Identify any of the following Purdue brand opioids that the opioid user who is the subject of your Non-NAS PI Claim was prescribed. *Include evidence of the prescriptions when submitting this Claim Form.*

| | Date of first prescription: | Date of last prescription |
|---|---|---|
| OxyContin ☐ | | |
| MSContin ☐ | | |
| Dilaudid ☐ | | |
| Butrans ☐ | | |
| Hysingla ☐ | | |
| DHC Plus ☐ | | |
| MSIR ☐ | | |
| OxyFast ☐ | | |
| Oxy IR ☐ | | |
| Palladone ☐ | | |
| Ryzolt ☐ | | |
| Rhodes Generic (name) _____ _____ ☐ | | |

**Section 4.B:** Identify any of the following **Medication Assistance Treatment (MAT)** drugs prescribed to the opioid user who is the subject of your Non-NAS PI Claim. *Include evidence of the prescriptions when submitting this Claim Form.*

|  | | Date of first prescription: | Date of last prescription |
|---|---|---|---|
| Buprenorphine: | ☐ | | |
| Butrans: | ☐ | | |
| Methadone: | ☐ | | |
| Suboxone | ☐ | | |
| Zubsoly: | ☐ | | |
| Naltrexone: | ☐ | | |

**Section 4.C:** Identify any of the following medications provided to the opioid user (whether you or another person) during or after an opioid overdose. *Include evidence of the prescriptions when submitting this Claim Form.*

|  | | Date administered: |
|---|---|---|
| Narcan: | ☐ | |
| Evzio: | ☐ | |
| Naloxone: | ☐ | |

---

**PART SIX: OPIOID USER AND OPIOID CLAIMANT INJURIES (If you selected "Opt Out," SKIP this Part Six)**

**WARNING: IF YOU DO NOT CHECK ANY INJURIES ON THIS LIST, THEN YOUR NON-NAS PI CHANNELED CLAIMS WILL BE DISALLOWED AND YOU WILL RECEIVE NO RECOVERY**

**Section 6.A:**

**Please mark all that are applicable to your claim.**

_____ ADDICTION

Date addiction began:                              _____

Opioid that started the addiction:         _____

Diagnosis and Date of Opioid Use Disorder:   _____

_____ WITHDRAWALS

Date withdrawals occurred:                     _____

_____ OVERDOSE

Date overdose occurred:                          _____

_____ <u>JAIL</u>

Date jail sentence began/ended: _____

The charge: _____

_____ <u>REHAB</u>

Dates of inpatient or outpatient rehabilitation: _____

---

**PART SEVEN: TIERING AND LEVEL DESIGNATION (If you selected "Opt Out" or Easy Payment, SKIP this Part Seven)**

**Section 7.A: In this section, please circle the tier that applies to your Non-NAS PI Claim. IF MULTIPLE TIERS APPLY, CHECK THE FIRST ONE THAT APPLIES (for example, if 1B and 1A both apply, then check 1B, because that appears first in the list below).  Please refer to the Non-NAS PI TDP for full definitions and qualifying criteria.**

Highest

**Tier 1B:**

☐ You can demonstrate opioid-related death (such as overdose or withdrawal) while on Oxycontin.

**Tier 1A:**

☐ You can demonstrate that addiction, dependence, or substance abuse began while using one of the qualifying opioids.

**Tier 2:**

☐ You can demonstrate use of a qualifying product for more than 6 months (does not have to be consecutive use).

**Tier 3:**

☐ You can demonstrate use of a qualifying product for less than 6 months and otherwise do not meet the criteria of any of the above tiers.

Lowest

**Section 7.B: If you selected Tier 1A or Tier 2 above, please mark the level designation that applies to your Non-NAS PI Claim. IF BOTH LEVEL B AND LEVEL A APPLY TO YOU, CHOOSE LEVEL B. Please refer to the Non-NAS PI TDP for full definitions and qualifying criteria. (If you checked a Tier 1B or Tier 3 Claim above, SKIP this section.)**

**Level B:**

Highest

☐ You can demonstrate death caused by an opioid (e.g., death caused by overdose or withdrawal).

**Level A:**

Lowest

☐ You can demonstrate (1) a diagnosis of Opioid Use Disorder (OUD), (2) MAT usage of more than 6 months, or (3) administration of Narcan, Evzio, or Naloxone.

**PART EIGHT: MEDICAL PROVIDER INFORMATION (If you selected "Opt Out" or Easy Payment, SKIP this Part Eight)**

**Section 8.A:** In this section, please identify information for the medical providers (prescribing doctors and pharmacies) who prescribed opioids to the opioid user that is the subject of your Non-NAS PI Claim:

| Name of Prescriber/Pharmacy | Address | City | State | Zip | Date Range From | Date Range To |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**PART NINE: MEDICAL LIENS** (If you selected "Opt Out," SKIP this Part Nine)

**Section 9.A:** Did any insurance company pay for medical treatment for the opioid-related injuries that gave rise to your Non-NAS PI Claim?

Yes: ☐

No: ☐

**Section 9.B:** In the last 20 years, was the opioid user who is the subject of your claim eligible for coverage by any of the following, or did any of the following actually pay for his/her opioid-related health costs? Respond by writing "Yes" or "No" next to each insurance provider name, and provide the requested information as to each. If any insurance carrier who provided coverage to the opioid user is not identified, please fill in that carrier's information at the bottom of the chart.

| Type of Insurance | Yes/No | Street Address | Phone Number | Policy Number (if any) | Policy Holder | Dates of Coverage |
|---|---|---|---|---|---|---|
| Medicare | | | | | | |
| Medicaid | | | | | | |
| Tricare | | | | | | |
| VA | | | | | | |
| Champus | | | | | | |
| Private (Name Below): | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**PART TEN: SIGNATURE (You must complete this Part Ten regardless of your elections above)**

**Section 10.A: Please sign this section when you have completed this Claim Form.**

Non-NAS PI Claimant's Name: _____

Non-NAS PI Claimant's E-mail: _____

Non-NAS PI Claimant's Phone Number: _____

I am including the evidence requested above in my submission of this form: ☐

*I declare under penalty of perjury that the representations made and the information provided on this Claim Form are true, correct and complete to the best of my knowledge.*

*Non-NAS PI Claimant's Signature*

- 8 -

**EXHIBIT B**

**PROCEDURES FOR NON-NAS PI CLAIMANTS WHO OPT
TO LIQUIDATE THEIR NON-NAS PI CLAIMS IN THE TORT
SYSTEM RATHER THAN UNDER THE INDIVIDUAL PURDUE
PHARMA LP NON-NAS TRUST DISTRIBUTION PROCEDURE**

The following procedures shall apply in the case of a Non-NAS PI Claimant[1] who elects, subject to the terms hereof, to liquidate his or her Non-NAS PI Claim by commencing a lawsuit in the tort system after so timely indicating on his or her Non-NAS PI Claim Form. By so electing, such Non-NAS PI Claimant forfeits any right to have his or her Non-NAS PI Claim liquidated under sections 6 through 9 (inclusive) of the Non-NAS PI TDP, and instead shall have the right to liquidate his or her Non-NAS PI Claim exclusively in the tort system. Only claims that meet the definition of "Non-NAS PI Claim" under the Plan may be litigated in the tort system. The adjudication of a Non-NAS PI Claim in the tort system shall be deemed to be an adjudication of that Non-NAS PI Claim and any associated Non-NAS PI Channeled Claims of the Non-NAS PI Claimant regarding the same injuries that are the subject of his or her Non-NAS PI Claim. Any Distribution from the PI Trust on a Final Judgment (as defined below) in respect of such Non-NAS PI Claim, if any, shall be deemed to be a Distribution in satisfaction and conclusive resolution of such Non-NAS PI Claim and such associated Non-NAS PI Channeled Claims.

## § 1.    SUITS IN THE TORT SYSTEM.

If a Non-NAS PI Claimant timely filed a proof of claim in the Chapter 11 Cases asserting his or her Non-NAS PI Claim, then he or she may elect to liquidate such Non-NAS PI Claim in the tort system rather than under the Non-NAS PI TDP by checking the box so indicating on his or her Non-NAS PI Claim Form, which Non-NAS PI Claim Form must be filed by the date that is ninety (90) days[2] after the applicable Non-NAS PI Claim Form is disseminated to him/her.[3] If the Non-NAS PI Claimant makes such election, then the Non-NAS PI Claimant may file a lawsuit regarding only his or her Non-NAS PI Claim (and no other claims) against only the PI Trust (and including no other parties as defendants) solely in the United States District Court for the Southern District of New York (the "SDNY District Court"),[4] unless such court orders pursuant to 28 USC

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Non-NAS PI TDP or, if not defined in the Non-NAS PI TDP, the meanings ascribed to such terms in the Plan.

[2]  Within sixty (60) days after Effective Date, the Non-NAS PI Claim Form will be made available to Non-NAS PI Claimants electronically and, if the Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI Claimant in physical copy. When disseminated, each Non-NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the Non-NAS PI Claim Form must be returned.

[3]  The filing of a Non-NAS PI Claim Form indicating that a Non-NAS PI Claimant has elected to liquidate his or her Non-NAS PI Claim in the tort system shall have no effect on any federal or state statute of limitation or repose applicable to the Non-NAS PI Claims asserted by such Non-NAS PI Claimant.

[4]  The Debtors shall seek an order from the SDNY District Court requiring that lawsuits filed by Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system be filed and tried solely in the SDNY District Court pursuant to 28 U.S.C. § 157(b)(5).

§ 157(b)(5) that such suit may be filed and tried in the United States District Court for the district in which the Non-NAS PI Claim arose.

Any such lawsuit shall be filed by the Non-NAS PI Claimant in an individual capacity and not as a member or representative of a class, and no such lawsuit shall be consolidated with the lawsuit of any other plaintiff by, or on the motion of, any plaintiff.[5] All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[6]

Subject to the PI Trust's receipt of a Non-NAS PI Claim Form so indicating that a Non-NAS PI Claimant has elected to retain the option to file a lawsuit in the tort system as set forth above, NewCo and the Plan Administration Trust will establish and maintain, as necessary, a document reserve (the "PI Document Reserve") containing such materials as are necessary to such lawsuit as discovery material. Any such Non-NAS PI Claimant will be provided access to the PI Document Reserve subject to agreeing to (i) a protective order acceptable to the PI Trustee, the Plan Administration Trustee, and NewCo, and (ii) to the extent that the materials deposited into the PI Document Reserve include any documents produced by the Shareholder Released Parties that are not included in the Public Document Repository in accordance with the Plan and the Shareholder Settlement Agreement (the "Shareholder Released Party Documents"), the Protective Order, which shall exclusively govern the terms of disclosure of the Shareholder Released Party Documents. Any such Non-NAS PI Claimant who propounds on the PI Trust, NewCo, the Plan Administration Trustee, any other Creditor Trust, or any Debtor a request for additional documents or testimonial discovery must in such request (i) represent that such Non-NAS PI Claimant has conducted a reasonable search of the PI Document Reserve and, if it has been established, the Public Document Repository, and believes, based on such reasonable search, that the documents, information, or testimony it seeks is not available in either the PI Document Reserve or the Public Document Repository, and (ii) state and explain the basis for the Non-NAS PI Claimant's good faith belief that the additional discovery he or she seeks is relevant to such lawsuit. The PI Trust shall not be liable for any costs incurred by parties other than the PI Trust in connection with third-party discovery propounded by any party other than the PI Trust.[7]

If a Non-NAS PI Claimant obtains a judgment on his or her Non-NAS PI Claim in the tort system and such judgment becomes a final order (a "Final Judgment"), such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI Trust, subject to the limitations set forth in Section 2 below, as well as the Non-NAS Payment Percentage and Non-

---

[5]    The trustee of the PI Trust (the "PI Trustee") shall be empowered (i) to bring one or more consolidated actions against multiple Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system and (ii) to seek to consolidate multiple lawsuits commenced by individual Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system.

[6]    Among other things, the PI Trust shall be empowered to assert that the claim that is the subject of a Non-NAS PI Claimant's lawsuit is not a "Non-NAS PI Claim" within the meaning of the Plan.

[7]    In order to minimize costs incurred by the PI Trust in connection with third-party discovery, the PI Trustee shall be empowered to seek to consolidate discovery propounded by Holders of PI Claims or the PI Trust in multiple lawsuits commenced by individual Holders of PI Claims against the PI Trust.

NAS Maximum Value (each as defined below), as provided in <u>Section 6</u> below, the deductions as set forth in <u>Section 6</u> below, and the resolution of healthcare liens, as provided in <u>Section 7</u> below.

## § 2.    LIMITATION ON DAMAGES AND ATTORNEYS' FEES.

Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any Non-NAS PI Claim litigated against the PI Trust in the tort system.

## § 3.    NON-NAS MAXIMUM VALUE.

Payment on a Final Judgment for a Non-NAS Claim shall not exceed the dollar-equivalent of 120,000 points (the "<u>Non-NAS Maximum Value</u>"), which is three times the maximum point value attributed under the liquidation provisions of the Non-NAS PI TDP to eligible claims for the most severe injuries. Points will be converted to dollars consistent with the conversion set forth in section 8 of the Non-NAS PI TDP. As set forth in more detail in the Non-NAS PI TDP, the dollar amount ultimately awarded per point will be determined with reference to the funds remaining in the PI Trust and to the pool of claims remaining against the PI Trust. It will vary depending on how many people choose to opt out their claims and how expensive it is for the PI Trust to defend those claims in the tort system. It will also depend on the payment elections made by those who are liquidating their claims under sections 6 through 9 (inclusive) of the Non-NAS PI TDP. At this time, it is estimated that the dollar award amount per point will be between $0.80 and $1.20.

## § 4.    NON-NAS PAYMENT PERCENTAGE.

A Final Judgment on a Non-NAS Claim, minus any multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), interest, attorneys' fees or costs (including statutory attorneys' fees and costs) that may have been awarded as part of such Final Judgment, shall be subject to reduction by the same percentage that Non-NAS PI Claims liquidated under the Non-NAS PI TDP are reduced prior to payment. In other words, a Non-NAS PI Claimant who elects to liquidate his or her Non-NAS PI Claim in the tort system shall not be entitled to receive more than his or her pro-rata share of the value available for distribution to all Non-NAS PI Channeled Claims entitled to a recovery pursuant to the Non-NAS PI TDP. Based upon the work of the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject-matter experts for the Ad Hoc Group of Individual Victims and other holders of PI Claims, review of judgments obtained in lawsuits, settlement history, and collaborative discussions with stakeholders, the Base Payments and Level Awards described in the Non-NAS PI TDP represent an estimated pro-rata percentage recovery by PI Claimants holding Allowed PI Channeled Claims of approximately 2.0% (such pro-rata percentage recovery as may be altered over time, the "<u>Non-NAS Payment Percentage</u>"). Accordingly, the initial Non-NAS Payment Percentage is 2.0%.

No holder of a Non-NAS PI Claim who elects to liquidate his or her Non-NAS PI Claim in the tort system shall receive a payment that exceeds the liquidated value of his or her Non-NAS PI Claim multiplied by the Non-NAS Payment Percentage in effect at the time of payment (such value so reduced, the "<u>Non-NAS Percentage-Reduced Claim</u>"); *provided, however*, that if there is a

reduction in the Non-NAS Payment Percentage, the PI Trustee, in his or her sole discretion, may cause the Non-NAS PI Trust to pay a Non-NAS PI Claim based on the Non-NAS Payment Percentage that was in effect prior to the reduction if the judgment in respect of such Non-NAS PI Claim became a Final Judgment prior to the date on which the PI Trustee proposes the new Non-NAS Payment Percentage to the Oversight Committee and the processing of such Non-NAS PI Claim was unreasonably delayed due to circumstances beyond the control of the Non-NAS PI Claimant or the Claimant's Counsel (as applicable).

## § 5.    ADJUSTMENT OF THE NON-NAS PAYMENT PERCENTAGE.

The Non-NAS Payment Percentage shall be subject to change if the PI Trustee (with the assistance of the Claims Administrator), with the consent of the PI Trust's oversight committee (the "Oversight Committee"), determines that an adjustment is required. No less frequently than once every three (3) years, commencing with the date that is three (3) years after the Effective Date of the Plan, the PI Trustee (with the assistance of the Claims Administrator) shall reconsider the then-applicable Non-NAS Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration and with the consent of the Oversight Committee, change the Non-NAS Payment Percentage if necessary. The PI Trustee shall reconsider the then-applicable Non-NAS Payment Percentage at shorter intervals if he or she deems such reconsideration to be appropriate or if requested to do so by the Oversight Committee.

The PI Trustee shall base his or her determination of the Non-NAS Payment Percentage on current estimates of the number, types, and values of Non-NAS PI Channeled Claims, the value of the assets of the PI Trust Non-NAS Fund available for the payment of Non-NAS Allowed PI Channeled Claims pursuant to the Non-NAS PI TDP and amounts due and estimated to become due pursuant to the Non-NAS PI TDP in respect of Final Judgments obtained by Non-NAS PI Claimants who elect to liquidate their Non-NAS PI Claims in the tort system, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of (i) full value to all Holders of Allowed Non-NAS PI Channeled Claims and (ii) the Non-NAS Maximum Value to Non-NAS PI Claimants who elect to liquidate their Non-NAS PI Claims in the tort system. When making these determinations, the PI Trustee (with the assistance of the Claims Administrator) shall exercise common sense and flexibly evaluate all relevant factors.

If a redetermination of the Non-NAS Payment Percentage has been proposed in writing to the Oversight Committee by the PI Trustee, but such redetermination of the Non-NAS Payment Percentage has not yet been adopted by the Oversight Committee, a Non-NAS PI Claimant that has obtained a Final Judgment shall receive the lower of the then-current Non-NAS Payment Percentage and the proposed Non-NAS Payment Percentage. However, if the proposed Non-NAS Payment Percentage is the lower amount but is not subsequently adopted by the Oversight Committee, the Non-NAS PI Claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Non-NAS Payment Percentage is the higher amount and subsequent adopted, the Non-NAS PI Claimant who has obtained a Final Judgment shall thereafter receive the difference between the current amount and the higher adopted amount.

At least thirty (30) days prior to proposing in writing to the Oversight Committee a change in the Non-NAS Payment Percentage, the PI Trustee shall post to the PI Trust's website a notice indicating the PI Trustee is reconsidering the Non-NAS Payment Percentage.

If the PI Trustee (with the assistance of the Claims Administrator), with the consent of the Oversight Committee, makes a determination to increase the Non-NAS Payment Percentage due to a material change in estimates of the future assets and/or liabilities of the PI Trust Non-NAS Fund, the Claims Administrator shall make supplemental payments to all Non-NAS PI Claimants who obtained previously a Final Judgment and received payments based on a lower Non-NAS Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the Non-NAS PI Channeled Claim in question multiplied by the newly-adjusted Non-NAS Payment Percentage, less all amounts paid previously to the Non-NAS PI Claimant in respect of such Non-NAS PI Channeled Claim.

The PI Trust's obligation to make a supplemental payment to a Non-NAS PI Claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment/payments that was/were also suspended because it/they would have been less than $100.00. However, the PI Trust's obligation shall resume, and the PI Trust shall pay any such aggregate supplemental payments due to such Non-NAS PI Claimant, at such time that the total exceeds $100.00.

## § 6.    PAYMENT OF JUDGMENTS FOR MONEY DAMAGES.

A Non-NAS PI Claimant who obtains a Final Judgment shall be entitled to receive from the PI Trust Non-NAS Fund in full and final satisfaction of that Final Judgment, a gross amount (subject to deductions set forth next) equal to the *lesser* of (i) the Non-NAS Percentage-Reduced Claim and (ii) the Non-NAS Maximum Value, in each case as then in effect (as described next) (such lesser amount, the "Non-NAS Gross Amount"). A Non-NAS PI Claimant's Non-NAS Gross Amount shall be subject to the following deductions and holdbacks: (A) its pro rata share of the Creditor Trust Operating Expenses of the PI Trust; (B) amounts necessary to settle liens held by private insurance companies against such amount, if any; (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of the federal healthcare programs like Medicare, Tricare, VA, or Medicaid against such amount, if any; (D) its pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases as and to the extent provided in the PI Trust Agreement, subject to Section 5.8(g) of the Plan, and (E) the common benefit assessment required under Section 5.8(c) of the Plan, and the fees and costs of such Non-NAS PI Claimant's individual attorney(s) in the Chapter 11 Cases, if any, which deduction shall be taken by such individual attorney and reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan. The resulting net amount shall be paid to the Non-NAS PI Claimant in the form of an initial payment not to exceed $3,500.00 and five (5) additional equal installments in years six (6) through ten (10) following the year of the initial payment; *subject, however*, to the prior satisfaction of healthcare liens as set forth in Section 7 below. In no event shall interest be paid in respect of any judgment obtained in the tort system.

None of the Non-NAS Percentage-Reduced Claim, the Non-NAS Maximum Value, the Non-NAS Gross Amount, the deductions therefrom, or the payment schedule is subject to any appeal or reconsideration.

## § 7.    RESOLUTION OF HEALTH CARE LIENS.

The PI Trust shall not issue any payment in respect of a Final Judgment until the Claims Administrator has received proof to his or her reasonable satisfaction that any private or governmental healthcare liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

## § 8.    APPLICABILITY OF SPECIAL PROCEDURES FOR MINORS AND HEIRS.

The special procedures set forth in Exhibit G to the Non-NAS PI TDP shall apply to all Non-NAS PI Claimants who are minors under applicable law and elect, subject to the terms hereof, to liquidate their Non-NAS PI Claims by commencing a lawsuit in the tort system. Anyone seeking a Distribution from the PI Trust in his or her capacity as an heir must execute and submit the applicable Heirship Declaration attached to the Non-NAS PI TDP as Exhibit F.[8]

---

[8]    Exhibit F contains two declaration forms. One applies if the Decedent named the Non-NAS PI Claimant as executor in his/her will; the other applies if the Decedent had no will.

## EXHIBIT C

## PROCEDURE FOR DEFICIENCIES AND APPEALS FOR
## THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE
## FOR NON-NAS PI CLAIMS

These procedures apply only to PI Channeled Claims liquidated under sections 6 through 9 (inclusive) of the PI Trust Distribution Procedure for Non-NAS Claims (the "Non-NAS PI TDP"), and are not available for NAS PI Claims or for any PI Claims liquated in the tort system.

**1.01** **Curing Deficiencies.** If the Claims Administrator[1] determines that a claim submitted pursuant to the Non-NAS PI TDP is incomplete, (s)he will notify the PI Claimant and afford a 14-day period to cure any such deficiency. Such deficiencies include, but are not limited to, failure to sign the Claim Form (Exhibit A to the Non-NAS PI TDP), failure to complete the Claim Form, failure to execute a HIPAA authorization (Exhibit D to the Non-NAS PI TDP), or submission of a declaration that fails to meet the requirements of § 5 of the Non-NAS PI TDP. If the deficiency is timely cured to the satisfaction of the Claims Administrator, no deduction or penalty will be assessed to an otherwise qualifying Claim. If the deficiency is not timely cured, or not cured at all, the Claims Administrator, depending on the nature of the deficiency, has the authority to prevent the Non-NAS PI Claimant from receiving all or part of any award (s)he would otherwise be entitled to.

**1.02** **Appeals to the Claims Administrator.** If a PI Claimant is dissatisfied with his/her award determination pursuant to the Non-NAS PI TDP or a determination by the Claims Administrator thereunder to limit or prohibit an award pursuant to the deficiency process described in Section 1.01 above or any other determination made by the Claims Administrator under the Non-NAS PI TDP, (s)he can appeal to the Claims Administrator within fourteen (14) days of receiving notice of such Claims Administrator determination by submitting a written document clearly marked as "Appeal to Claims Administrator." In that document, the Non-NAS PI Claimant should identify the determination with which the Non-NAS PI Claimant disagrees and state the reasons for the disagreement. The Non-NAS PI Claimant may submit any additional documentation (s)he wishes to have considered. Only one appeal is permitted per Proof of Claim. The Claims Administrator shall conduct a de novo review and promptly issue a ruling in writing to the Non-NAS PI Claimant and/or his/her counsel, as applicable. In the event that the Claims Office determines that the records submitted in support of the Non-NAS PI Claimant's claim are unreliable, the Notification of Status letter shall advise the Non-NAS PI Claimant of such determination and shall identify the particular records or statements that are deemed unreliable. The Claims Administrator shall not change the Non-NAS PI TDP allowance criteria. The Non-NAS PI Claimant shall have the right to appeal any such determination to the Appeals Master as set forth in Section 1.03 herein.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Non-NAS PI TDP.

1

**1.03**    **Appeals to Appeals Master.**    PI Claimants who disagree with the ruling of the Claims Administrator may appeal to the Appeals Master within fourteen (14) days of notice of such ruling by submitting a written statement outlining the Non-NAS PI Claimant's position and why he/she believes the Claims Administrator has erred.   An appeal fee of $1,000 shall be assessed against the Non-NAS PI Claimant's recovery from the PI Trust regardless of the outcome of the appeal.   The Appeals Master shall review only the appeal record and claim file in deciding the appeal.   The Appeals Master shall apply the guidelines and procedures established in the Non-NAS PI TDP, and the appeals process shall not result in any modification of substantive eligibility criteria.   The Appeals Master shall issue a determination on the appeal in writing, which shall be served on the Non-NAS PI Claimant (and his/her counsel, where applicable) and the Claims Administrator.   Decisions of the Appeals Master pursuant hereto are final and binding, and Non-NAS PI Claimants have no further appeal rights beyond those set forth herein.

## EXHIBIT D

## SAMPLE HIPAA FORMS FOR
## THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION
## PROCEDURE FOR NON-NAS CLAIMS

**<span style="color:red">SAMPLE FORM – DO NOT COMPLETE.  A FINAL VERSION WILL BE MADE AVAILABLE TO YOU AFTER THE CHAPTER 11 PLAN HAS BEEN CONFIRMED AND GONE EFFECTIVE</span>**

## AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

Claimant Name: ███████████      Date: ███████████

Date of Birth: ███████████      SSN: ███████████

1. The following individuals or organizations are authorized to disclose my health records to the parties specified below in section #4: (**Note: Please list the names of your medical care providers and your health insurance providers that may have records relevant to the resolution of your PI Claim.  If you are unsure of the exact legal name of your medical providers and health insurance providers, you can leave this blank, and we will complete it for you with the understanding that you authorize all relevant parties**):

    _____

2. The type and amount of information to be used or disclosed as follows:

    The entire record, including but not limited to: any and all medical records, mental health records, psychological records, psychiatric records, problem lists, medication lists, lists of allergies, immunization records, history and physicals, discharge summaries, laboratory results, x-ray and imaging reports, medical images of any kind, video tapes, photographs, consultation reports, correspondence, itemized invoices and billing information, and information pertaining to Medicaid or Medicare eligibility and all payments made by those agencies, for the following dates: (**Note: List the date range for which the medical providers and insurance companies above may have records relevant to the resolution of your PI Claim. If you are unsure of the exact dates, then leave this blank, and we will complete this section for you with the understanding that you authorize all relevant date ranges**).

    Dates of Services: From: _____ To: _____

3. I understand that the information in my health records may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV).  It may also include information about behavioral or mental health services, as well as treatment for alcohol and drug abuse.

4. The health information may be disclosed to and used by the following individual and/or organization:

**MASSIVE: Medical & Subrogation Specialists**
**25657 Southfield Road**
**Southfield, MI 48075**
**(p) 833-466-2774     (f) 877-294-7893**

5. I understand I have the right to revoke this authorization at any time.  I understand if I revoke this authorization, I must do so in writing and present my written revocation to the health information management department.  I understand the revocation will not apply to information that has already been released in response to this authorization.  I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.   Unless otherwise revoked, this authorization will expire 10 years after the date that I sign it.

6. I understand that authorizing the disclosure of this health information is voluntary.  I can refuse to sign this authorization and forego a recovery under the Purdue bankruptcy personal injury trust distribution procedures. I understand that no organization may condition treatment, payment, enrollment, or eligibility  for benefits on my signing of this authorization.  I understand I may inspect or copy the information to be used or disclosed, as provided in CFR 1634.524.  I understand any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules or HIPAA.  If I have questions about disclosure of my health information, I can contact the parties listed above in section #4.

Patient or Legal Representative                                    Date

Relationship to Patient (If signed by Legal Representative)

**SAMPLE FORM – DO NOT COMPLETE.  A FINAL VERSION WILL BE
MADE AVAILABLE TO YOU AFTER THE CHAPTER 11 PLAN HAS
BEEN CONFIRMED AND GONE EFFECTIVE**

## AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

Claimant Name: ████████████    Date: ████████████

Date of Birth: ████████████    SSN: ████████████

1. The following individuals or organizations are authorized to disclose my health records to the parties specified below in section #4: **(Note: Please list the names of your medical care providers and your health insurance providers that may have records relevant to the resolution of your PI Claim.  If you are unsure of the exact legal name of your medical providers and health insurance providers, you can leave this blank, and we will complete it for you with the understanding that you authorize all relevant parties):**

   _____

2. The type and amount of information to be used or disclosed as follows:

   The entire record, including but not limited to: any and all medical records, mental health records, psychological records, psychiatric records, problem lists, medication lists, lists of allergies, immunization records, history and physicals, discharge summaries, laboratory results, x-ray and imaging reports, medical images of any kind, video tapes, photographs, consultation reports, correspondence, itemized invoices and billing information, and information pertaining to Medicaid or Medicare eligibility and all payments made by those agencies, for the following dates: **(Note: List the date range for which the medical providers and insurance companies above may have records relevant to the resolution of your PI Claim. If you are unsure of the exact dates, then leave this blank, and we will complete this section for you with the understanding that you authorize all relevant date ranges).**

   Dates of Services: From: _____ To: _____

3. I understand that the information in my health records may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV).  It may also include information about behavioral or mental health services, as well as treatment for alcohol and drug abuse.

4. The health information may be disclosed to and used by the following individual and/or organization:

**GENTLE, TURNER, SEXTON & HARBISON, LLC**
**501 Riverchase Parkway East, Suite 100**
**Hoover, Alabama 35244**
**(p) 205-716-3000    (f) 205-716-2364**

5. I understand I have the right to revoke this authorization at any time.  I understand if I revoke this authorization, I must do so in writing and present my written revocation to the health information management department.  I understand the revocation will not apply to information that has already been released in response to this authorization.  I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.  Unless otherwise revoked, this authorization will expire 10 years after the date that I sign it.

6. I understand that authorizing the disclosure of this health information is voluntary.  I can refuse to sign this authorization and forego a recovery under the Purdue bankruptcy personal injury trust distribution procedures. I understand that no organization may condition treatment, payment, enrollment, or eligibility for benefits on my signing of this authorization.  I understand I may inspect or copy the information to be used or disclosed, as provided in CFR 1634.524.  I understand any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules or HIPAA.  If I have questions about disclosure of my health information, I can contact the parties listed above in section #4.

███████████████████████████████████

Patient or Legal Representative                                      Date

███████████████████████████████████

Relationship to Patient (If signed by Legal Representative)

## EXHIBIT E

## QUALIFYING OPIOIDS FOR
## THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE
## FOR NON-NAS PI CLAIMS

| Drug Name | NDC Labeler and Drug Prefix |
|-----------|------------------------------|
| OxyContin | 59011-410- |
| OxyContin | 59011-415- |
| OxyContin | 59011-420- |
| OxyContin | 59011-430- |
| OxyContin | 59011-440- |
| OxyContin | 59011-460- |
| OxyContin | 59011-480- |
| OxyContin | 59011-0100- |
| OxyContin | 59011-0103- |
| OxyContin | 59011-0105- |
| OxyContin | 59011-0107- |
| OxyContin | 59011-0109- |
| OxyContin | 43063-0244- |
| OxyContin | 43063-0245- |
| OxyContin | 43063-0246- |
| OxyContin | 43063-0354- |
| Butrans | 59011-750- |
| Butrans | 59011-751- |
| Butrans | 59011-752- |
| Butrans | 59011-757- |
| Butrans | 59011-758- |
| Hysingla ER | 59011-271- |
| Hysingla ER | 59011-272- |
| Hysingla ER | 59011-273- |
| Hysingla ER | 59011-274- |
| Hysingla ER | 59011-275- |
| Hysingla ER | 59011-276- |
| Hysingla ER | 59011-277- |
| MS Contin | 42858-515- |
| MS Contin | 42858-631- |
| MS Contin | 42858-760- |
| MS Contin | 42858-799- |
| MS Contin | 42858-900- |
| MS Contin | 00034-0513- |
| MS Contin | 00034-0514- |
| MS Contin | 00034-0515- |
| MS Contin | 00034-0516- |
| MS Contin | 00034-0517- |
| MS Contin | 16590-884- |
| Dilaudid | 42858-122- |

| | |
|---|---|
| Dilaudid | 42858-234- |
| Dilaudid | 42858-338- |
| Dilaudid | 42858-416- |
| Dilaudid | 76045-009- |
| Dilaudid | 76045-010- |
| Dilaudid | 0074-2414- |
| Dilaudid | 0074-2415- |
| Dilaudid | 0074-2416- |
| Dilaudid | 0074-2426- |
| Dilaudid | 0074-2451- |
| Dilaudid | 0074-2452- |
| OxyIR | 59011-0201- |
| OxyFast | 59011-0225- |
| MSIR | 00034-0518- |
| MSIR | 00034-0519- |
| MSIR | 00034-0521- |
| MSIR | 00034-0522- |
| MSIR | 00034-0523- |
| Palladone | 59011-0312- |
| Palladone | 59011-0313- |
| Palladone | 59011-0314- |
| Palladone | 59011-0315- |
| Buprenorphine | 42858-353- |
| Buprenorphine | 42858-493- |
| Buprenorphine | 42858-501- |
| Buprenorphine | 42858-502- |
| Buprenorphine | 42858-586- |
| Buprenorphine | 42858-750- |
| Buprenorphine | 42858-839- |
| Hydromorphone Hydrochloride | 42858-301- |
| Hydromorphone Hydrochloride | 42858-302- |
| Hydromorphone Hydrochloride | 42858-303- |
| Hydromorphone Hydrochloride | 42858-304- |
| Morphine Sulfate | 42858-801- |
| Morphine Sulfate | 42858-802- |
| Morphine Sulfate | 42858-803- |
| Morphine Sulfate | 42858-804- |
| Morphine Sulfate | 42858-805- |
| Morphine Sulfate | 0904-6557- |
| Morphine Sulfate | 0904-6558- |
| Morphine Sulfate | 0904-6559- |
| Morphine Sulfate | 35356-833- |
| Morphine Sulfate | 35356-836- |
| Morphine Sulfate | 35356-838- |
| Morphine Sulfate | 42858-801- |
| Morphine Sulfate | 42858-802- |
| Morphine Sulfate | 42858-803- |
| Morphine Sulfate | 42858-810- |
| Morphine Sulfate | 42858-811- |

| | |
|---|---|
| Morphine Sulfate | 42858-812- |
| Morphine Sulfate | 61919-966- |
| Morphine Sulfate | 67296-1561- |
| Morphine Sulfate | 68084-157- |
| Morphine Sulfate | 68084-158- |
| Morphine Sulfate | 63304-400- |
| Morphine Sulfate | 63304-401- |
| Morphine Sulfate | 16590-966- |
| Oxycodone Hydrochloride | 0406-0595- |
| Oxycodone Hydrochloride | 0093-0031- |
| Oxycodone Hydrochloride | 0093-0032- |
| Oxycodone Hydrochloride | 0093-0033- |
| Oxycodone Hydrochloride | 0093-5731- |
| Oxycodone Hydrochloride | 0093-5732- |
| Oxycodone Hydrochloride | 0093-5733- |
| Oxycodone Hydrochloride | 0093-5734- |
| Oxycodone Hydrochloride | 0115-1556- |
| Oxycodone Hydrochloride | 0115-1557- |
| Oxycodone Hydrochloride | 0115-1558- |
| Oxycodone Hydrochloride | 0115-1559- |
| Oxycodone Hydrochloride | 0115-1560- |
| Oxycodone Hydrochloride | 0115-1561- |
| Oxycodone Hydrochloride | 0115-1562- |
| Oxycodone Hydrochloride | 0591-2693- |
| Oxycodone Hydrochloride | 0591-2708- |
| Oxycodone Hydrochloride | 0591-3503- |
| Oxycodone Hydrochloride | 0781-5703- |
| Oxycodone Hydrochloride | 0781-5726- |
| Oxycodone Hydrochloride | 0781-5767- |
| Oxycodone Hydrochloride | 0781-5785- |
| Oxycodone Hydrochloride | 10702-801- |
| Oxycodone Hydrochloride | 10702-803- |
| Oxycodone Hydrochloride | 42858-001- |
| Oxycodone Hydrochloride | 42858-002- |
| Oxycodone Hydrochloride | 42858-003- |
| Oxycodone Hydrochloride | 42858-004- |
| Oxycodone Hydrochloride | 42858-005- |
| Oxycodone Hydrochloride | 49884-136- |
| Oxycodone Hydrochloride | 49884-137- |
| Oxycodone Hydrochloride | 49884-138- |
| Oxycodone Hydrochloride | 49884-197- |
| Oxycodone Hydrochloride | 60505-3537- |
| Oxycodone Hydrochloride | 60505-3538- |
| Oxycodone Hydrochloride | 60505-3539- |
| Oxycodone Hydrochloride | 60505-3540- |
| Oxycodone Hydrochloride | 60951-0702- |
| Oxycodone Hydrochloride | 60951-0703- |
| Oxycodone Hydrochloride | 60951-0705- |
| Oxycodone Hydrochloride | 60951-0710- |

| | |
|---|---|
| Oxycodone Hydrochloride | 67296-1376- |
| Oxycodone Hydrochloride | 67296-1560- |
| Oxycodone Hydrochloride | 68774-0161- |
| Oxycodone Hydrochloride | 68774-0162- |
| Oxycodone Hydrochloride | 68774-0163- |
| Oxycodone Hydrochloride | 68774-0164- |
| Oxycodone Hydrochloride | 00093-0024- |
| Oxycodone Hydrochloride | 00093-0031- |
| Oxycodone Hydrochloride | 00093-0032- |
| Oxycodone Hydrochloride | 00093-0033- |
| Oxycodone Hydrochloride | 00115-1644- |
| Oxycodone Hydrochloride | 00172-6354- |
| Oxycodone Hydrochloride | 00172-6355- |
| Oxycodone Hydrochloride | 00172-6356- |
| Oxycodone Hydrochloride | 00172-6357- |
| Oxycodone Hydrochloride | 00591-3501- |
| Oxycodone Hydrochloride | 00591-3502- |
| Oxycodone Hydrochloride | 00591-3503- |
| Oxycodone Hydrochloride | 00591-3504- |
| Oxycodone Hydrochloride | 52152-0408- |
| Oxycodone Hydrochloride | 52152-0409- |
| Oxycodone Hydrochloride | 52152-0410- |
| Oxycodone Hydrochloride | 52152-0411- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-040- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-139- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-201- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-202- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-203- |
| Hydrocodone Bitartrate/Acetaminophen | 42858-238- |
| Oxycodone/Acetaminophen | 42858-102- |
| Oxycodone/Acetaminophen | 42858-103- |
| Oxycodone/Acetaminophen | 42858-104- |

## EXHIBIT F

## SAMPLE HEIRSHIP DECLARATIONS FOR
## THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION
## PROCEDURE FOR NON-NAS PI CLAIMS

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

**THIS IS A SAMPLE DECLARATION FORM FOR PURPOSES OF SOLICITATION. DO NOT FILL OUT THIS FORM AT THIS TIME.  ONCE THE PI PLAN HAS BEEN CONFIRMED AND GONE EFFECTIVE, THE FINAL COPY OF THIS FORM WILL BE MADE AVAILABLE TO YOU FOR COMPLETION AND SUBMISSION TO THE PI TRUST.[1]**

| SD-1 | SWORN DECLARATION: SIGNATORY IS EXECUTOR UNDER DECEDENT'S LAST WILL AND TESTAMENT |
|---|---|

You are required to complete this declaration if you hold a PI Claim[2] (and thus are a "PI Claimant") regarding the opioid-related death of another person (the "Decedent"), and you have not been appointed with the authority to act on behalf of the Decedent because no probate or estate proceeding has been commenced, but you have been named as executor or executrix (or comparable position under applicable state law) under the Last will and Testament of the Decedent.

## I.   DECEDENT INFORMATION

| Name | First Name | | | | M.I. | Last Name | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| Social Security Number | \|__\|__\|__\| - \|__\|__\| - \|__\|__\|__\|__\| | | | Date of Death | | / / (Month/Day/Year) | |
| Residence/Legal Domicile Address at Time of Death | Street | | | | | | |
| | City | | | | State | Zip Code | |

## II.   PI CLAIMANT INFORMATION

| Your Name | First Name | | | M.I. | Last Name | |
|---|---|---|---|---|---|---|
| Your Social Security Number | \|__\|__\|__\| - \|__\|__\| - \|__\|__\|__\|__\| | | | | | |
| Prime Clerk POC Number assigned to your PI Claim | | | | | | |
| Your Address | Street | | | | | |
| | City | | | State | Zip Code | |
| Your Relationship to Decedent | | | | | | |
| Basis of Your Authority to Act for the Decedent | | | | | | |

---

[1] Submission instructions shall be provided along with the final form after the Plan has been confirmed and gone effective.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the [ ] Amended Chapter 11 Plan of Purdue Pharma L.P. and its affiliated debtors (the "Plan").

1

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| | |
|---|---|
| **List here and attach copies of all document(s) evidencing the basis for your authority** | 1. Last Will and Testament of _____, dated _____.<br><br>2. |



2

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| | III.    HEIRS AND BENEFICIARIES OF DECEDENT (ATTACH ADDITIONAL SHEETS FOR THE SECTION IF NEEDED) | | |
|---|---|---|---|

Use the space below to identify the name and address of all persons who may have a legal right to share in any settlement payment on behalf of the claim of the Decedent. Also state if and how you notified these persons of the settlement, or the reason they cannot be notified.

| | **Name** | **Information** | |
|---|---|---|---|
| **1.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |
| **2.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |
| **3.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |

3

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| | Name | Information | | |
|---|---|---|---|---|
| **4.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |
| **5.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

## IV. PI CLAIMANT CERTIFICATION

This Sworn Declaration is an official document for submission to the PI Trust. By signing this Sworn Declaration, I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that:

(a) I am seeking authority to act on behalf of the Decedent and his or her estate, heirs, and beneficiaries in connection with the PI TDP, including with respect to the submission of forms and supporting evidence and the receipt of payment for any such awards.

(b) I will abide by all substantive laws of the Decedent's last state of domicile concerning the compromise and distribution of any monetary award to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(c) No one else has been appointed the personal representative, executor, administrator, or other position with the authority to act on behalf of the Decedent and his or her estate.

(d) The copy of the Last Will and Testament provided by me is the Last Will and Testament of the Decedent.

(e) No application or proceeding has been filed in state or other court to administer the estate of the Decedent or to appoint an executor or administrator because state law does not require it.

(f) I will notify the Claims Administrator immediately if my authority to act is curtailed, surrendered, withdrawn, or terminated.

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

(g) I am not aware of any objections to my appointment and service as the PI Claimant on behalf of the Decedent and his or her estate, heirs, and beneficiaries.

(h) No person notified under Section III objects to my serving as the PI Claimant and taking such steps as required by the PI TDP to resolve all claims related to the Decedent's prescription and/or use of Purdue opioids. The persons named in Section III are all of the persons who may have a legal right to share in any settlement payment issued in respect of the injuries of the Decedent.

(i) I will comply with any and all provisions of the state law regarding the compromise and distribution of the proceeds of the settlement of a survival or wrongful death claim to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(j) I will indemnify and hold harmless the PI Trust, the Claims Administrator, the Appeals Master, and the agents and representatives of any of the foregoing, from any and all claims, demands, or expenses of any kind arising out distributions from the PI trust on account of injuries of the Decedent.

The information I have provided in this Declaration is true and correct. I understand that the Claims Administrator and Court will rely on this Declaration, and false statements or claims made in connection with this Declaration may result in fines, imprisonment, and/or any other remedy available by law.

## V.    PI CLAIMANT SIGNATURE

| Signature | _____ | Date | ___/___/___ <br> (Month/Day/Year) |
|---|---|---|---|

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

**THIS IS A SAMPLE DECLARATION FORM FOR PURPOSES OF SOLICITATION. DO NOT FILL OUT THIS FORM AT THIS TIME. ONCE THE PI PLAN HAS BEEN CONFIRMED AND GONE EFFECTIVE, THE FINAL COPY OF THIS FORM WILL BE MADE AVAILABLE TO YOU FOR COMPLETION AND SUBMISSION TO THE PI TRUST.[1]**

| SD-2 | SWORN DECLARATION: DECEDENT DID NOT LEAVE A LAST WILL AND TESTAMENT |
|---|---|

You are required to complete this declaration if you hold a PI Claim[2] (and thus are a "PI Claimant") regarding the opioid-related death of another person (the "Decedent"), and you have not been appointed with the authority to act on behalf of the Decedent because the Decedent Claimant died without a Will and no probate or estate proceeding has been opened.

### I.    DECEDENT INFORMATION

| Name | First Name | | | M.I. | Last Name | |
|---|---|---|---|---|---|---|
| Social Security Number | | | | - | - | Date of Death: ___/___/___ (Month/Day/Year) |
| Residence/Legal Domicile Address at Time of Death | Street | | | | | |
| | City | | | State | Zip Code | |

### II.    PI CLAIMANT INFORMATION

| Your Name | First Name | M.I. | Last Name |
|---|---|---|---|
| Your Social Security Number | - - | | |
| Prime Clerk POC Number assigned to your PI Claim | | | |
| Your Address | Street | | |
| | City | State | Zip Code |
| Your Relationship to Decedent | | | |
| Basis of Your Authority to Act for the Decedent | | | |

---

[1] Submission instructions shall be provided along with the final form after the Plan has been confirmed and gone effective.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the [ ] Amended Chapter 11 Plan of Purdue Pharma L.P. and its affiliated debtors (the "Plan").

1

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| **List here and attach copies of all document(s) evidencing the basis for your authority** | 1. A copy of the intestate statute of the state or domicile of the Deceased Claimant at the time of his or her death.<br><br>2. |
| --- | --- |



# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| | III.    HEIRS AND BENEFICIARIES OF DECEDENT | |
|---|---|---|
| | (ATTACH ADDITIONAL SHEETS FOR THE SECTION IF NEEDED) | |
| | Use the space below to identify the name and address of all persons who may have a legal right to share in any settlement payment on behalf of the claim of the Decedent. Also state if and how you notified these persons of the settlement, or the reason they cannot be notified. | |
| | **Name** | **Information** |
| **1.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br><br> ☐ No. Why Not: _____ |
| **2.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br><br> ☐ No. Why Not: _____ |
| **3.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br><br> ☐ No. Why Not: _____ |

3

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| | Name | Information | | |
|---|---|---|---|---|
| **4.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |
| **5.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |

## IV. PI Claimant Certification

This Sworn Declaration is an official document for submission to the PI Trust.  By signing this Sworn Declaration, I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that:

(a) I am seeking authority to act on behalf of the Decedent and his or her estate, heirs, and beneficiaries in connection with the PI TDP, including with respect to the submission of forms and supporting evidence and the receipt of payment for any such awards.

(b) I will abide by all substantive laws of the Decedent's last state of domicile concerning the compromise and distribution of any monetary award to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(c) No one else has been appointed the personal representative, executor, administrator, or other position with the authority to act on behalf of the Decedent and his or her estate.

(d) There is no known last will and testament of the Decedent and no application or proceeding has been filed in state or other court to administer the estate of the Decedent or to appoint an executor or administrator;

(e) I will notify the Claims Administrator immediately if my authority to act is curtailed, surrendered, withdrawn, or terminated.

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

(f)  I am not aware of any objections to my appointment and service as the PI Claimant on behalf of the Decedent and his or her estate, heirs, and beneficiaries.

(g)  No person notified under Section III objects to my serving as the PI Claimant and taking such steps as required by the PI TDP to resolve all claims related to the Decedent's prescription and/or use of Purdue opioids.  The persons named in Section III are all of the persons who may have a legal right to share in any settlement payment issued in respect of the injuries of the Decedent.

(h)  I will comply with any and all provisions of the state law regarding the compromise and distribution of the proceeds of the settlement of a survival or wrongful death claim to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(i)  I will indemnify and hold harmless the PI Trust, the Claims Administrator, the Appeals Master, and the agents and representatives of any of the foregoing, from any and all claims, demands, or expenses of any kind arising out of distributions from the PI trust on account of injuries of the Decedent.

The information I have provided in this Declaration is true and correct.  I understand that the Claims Administrator and Court will rely on this Declaration, and false statements or claims made in connection with this Declaration may result in fines, imprisonment, and/or any other remedy available by law.

## V.    PI CLAIMANT SIGNATURE

| Signature | _____ | Date | ____/____/____ |
| | | | (Month/Day/Year) |

**EXHIBIT G**

**DISTRIBUTIONS TO OR FOR THE BENEFIT OF MINOR CLAIMANTS FOR THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE[1]**

The following procedures apply to any PI Claimant who is a minor under applicable law (a "Minor Claimant") for so long as the PI Claimant remains a minor under applicable law. These procedures apply regardless of whether the Minor Claimant holds an NAS PI Claim or a Non-NAS PI Claim, and regardless of whether the Minor Claimant's Proxy (as defined below) elects to have that PI Claim liquidated under the PI TDP[2] or to pursue it in the tort system.

1. **Actions by Proxy of Minor Claimant.** A Minor Claimant's custodial parent, his/her legal guardian under applicable law (a "Guardian"), or an adult providing custody and care to the minor (any of the foregoing acting on behalf of the Minor Claimant, the "Proxy") is authorized to make submissions on behalf of the Minor Claimant under the PI TDP, subject to paragraph 2 below.  The Proxy shall be responsible for submitting, on behalf of such Minor Claimant, all required forms under the PI TDP, including the Claim Form, as well as any evidence required by the PI Trust to support the Claim Form, and any other documentation required or requested pursuant to the PI TDP.  The Proxy is authorized to take, on behalf of a Minor Claimant, all actions under the PI TDP that the Minor Claimant would be authorized to take if such Minor Claimant were an adult, other than receiving distributions from the PI Trust (unless so authorized by paragraph 5 below).  These actions include, where permitted, making an opt-out or, if the Minor Claimant is a Non-NAS PI

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PI Trust Distribution Procedure ("PI TDP").

[2] "PI TDP" refers to either the NAS PI TDP or the Non-NAS PI TDP, as applicable for any particular PI Claimant.

Claimant, making a payment election or requesting an appeal pursuant to Exhibit C to the Non-NAS PI TDP.

2. **Establishing Proxy of a Minor Claimant**. Any purported Proxy making a submission to the PI Trust on behalf of a Minor Claimant shall include along with such submission documentation of his/her authority to act on behalf of the Minor Claimant, consisting of the following:

   a. If the purported Proxy is the Guardian of the Minor Claimant, then the court order appointing that Proxy as Guardian, or other documents reasonably acceptable to the Claims Administrator as sufficient under applicable law to evidence the guardianship.

   b. If the purported Proxy is the custodial parent of the Minor Claimant, then a sworn statement that such Proxy is the custodial parent of the Minor Claimant.

   c. If the purported Proxy is neither the Guardian nor custodial parent of the Minor Claimant, then a sworn statement by the purported Proxy that he/she is providing custody and care to the Minor Claimant, stating for how long he/she has been providing such care and custody, explaining his/her relationship to the Minor Claimant and the circumstances around the provision of care and custody, as well as a statement and/or records from one or more of the following in support of his/her sworn statement:

      1. Minor Claimant's school

      2. Purported Proxy's landlord or property manager

      3. Minor Claimant's health provider

      4. Minor Claimant's child care provider

5.  Purported Proxy's placement agency

6.  Governmental social services agency

7.  Indian tribe officials

8.  Purported Proxy's Employer

Whether the purported Proxy is a Guardian, custodial parent, or neither, the Claims Administrator may require additional corroborating evidence at his discretion, including in the event that instructions are received from more than one purported Proxy for the same Minor Claimant.

3.  **Distributions to Minor Claimants.**   When the PI Trust has determined the final distributable amount on a Minor Claimant's claim, it will send notice of such final amount to the Minor Claimant's Proxy and counsel (if known).  Such notice will include a letter inviting the Proxy to discuss how the distributable amount was determined, and the Claims Administrator will take reasonable steps to ensure that the Proxy understands how such amount was determined.  Any distributions owing to a Minor Claimant that are ready for issue by the PI Trust at a time when the Minor Claimant is still a minor under applicable law shall be (i) used to pay the individual attorneys' fees of the Minor Claimant pursuant to paragraph (4) below and (ii) with respect to the remainder, paid into an interest-bearing sub-fund of the Trust (the "Minor Claimants Account"), held there for the sole benefit of the Minor Claimant, and invested in a U.S. governmental money-market fund until such funds are distributed pursuant to Section 5 below or until the Minor Claimant becomes an adult under applicable law (the "Adult Distribution Date"), at which time the amount then held in such account (including interest earned) shall be paid directly to such PI Claimant. Pending distributions for all Minor Claimants may be held in the same sub-fund.

4.  **Payments of attorneys' fees.**

Within a reasonable period following receipt of notice of the final distributable amount on

Minor Claimant's PI Channeled Claim, and using forms to be provided by the Claims

Administrator, the Minor Claimant's counsel shall submit to the PI Trust, with a copy to

the Proxy, a request for payment of legal fees and expenses from the Minor's recovery. It

is the Minor Claimant's attorney's duty to comply with all ethical and legal rules respecting

such legal fees and expenses, and the Claims Administrator is permitted to rely upon such

representation in issuing payments in respect of such fees and expenses. Absent objection

from the Proxy with respect to such asserted fees and expenses, the Claims Administrator

shall remit payment to the Minor Claimant's attorney in accordance with the latter's

request.

5.  **Early Distributions.**  Funds held in the Minor Claimants Account for a Minor Claimant

may be released prior to the Adult Distribution Date only pursuant to (a) an order of a U.S.

court of general jurisdiction in the Minor Claimant's state of residence, or (b) an order

entered by the United States Bankruptcy Court for the Southern District of New York.[3]

---

[3] Early distributions mechanic under review.

## **Exhibit I-1**

Redline of Non-NAS PI Trust Distribution Procedures

**INDIVIDUAL PURDUE PHARMA L.P.**
**PI TRUST DISTRIBUTION PROCEDURE FOR NON-NAS PI CHANNELED CLAIMS**

## § 1.    APPLICABILITY AND SUBMISSION INSTRUCTIONS.

This trust distribution procedure for Non-NAS PI Channeled Claims (as defined below) (the "Non-NAS PI TDP") sets forth the manner in which Non-NAS PI Channeled Claims may become eligible for payments from, and shall be fully discharged by, the PI Trust.[1] Distributions in respect of Non-NAS PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust Non-NAS Fund to Holders of Non-NAS PI Channeled Claims on the terms set forth herein.

Pursuant to the Plan and the Master TDP, the following claims (the "Non-NAS PI Channeled Claims") will be channeled to, and liability therefore shall be assumed by, the PI Trust as of the Effective Date of the Plan: (i) all Non-NAS PI Claims, which are claims against any Debtor for alleged opioid-related personal injury or other similar opioid-related claims or Causes of Action against any Debtor, and that arose prior to the Petition Date, and that are not (A) NAS PI Claims, Third-Party Payor Claims, NAS Monitoring Claims or Hospital Claims, or (B) held by a Domestic Governmental Entity, and (ii) all Released Claims or Shareholder Released Claims that are claims for alleged opioid-related personal injury or that are similar opioid-related claims or Causes of Action, and that arose prior to the Petition Date, and that are not (A) NAS PI Channeled Claims, Third-Party Payor Channeled Claims, NAS Monitoring Channeled Claims or Hospital Channeled Claims, or (B) held by a Domestic Governmental Entity. Non-NAS PI Channeled Claims shall be administered, liquidated and discharged pursuant to this Non-NAS PI TDP, and satisfied solely from the PI Trust Non-NAS Fund. Holders of Non-NAS PI Channeled Claims are referred to herein as "Non-NAS PI Claimants."[2]

Non-NAS PI Channeled Claims liquidated under this Non-NAS PI TDP shall be (i) Allowed or Disallowed (such Non-NAS PI Channeled Claims so Allowed, "Allowed Non-NAS PI Channeled Claims") and, for Allowed Non-NAS PI Channeled Claims, (ii) liquidated to determine the gross amounts receivable thereon (an "Award"), in each case pursuant to the terms of this Non-NAS PI TDP.

An Award for a Non-NAS PI Channeled Claim liquidated hereunder will be a gross number before deduction of the following "PI Trust Deductions and Holdbacks": (A) a pro rata share of the operating expenses of the PI Trust; (B) amounts held back under the Lien Resolution

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 2967] (the "Plan") (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

[2]    "Non-NAS PI Claimant" includes each person holding a Non-NAS PI Channeled Claim arising from his/her own opioid use, and each person holding a Non-NAS PI Channeled Claim arising from the opioid use of a decedent (such deceased person, a "Decedent").

Program (the "LRP Agreement") to settle liens held by private insurance companies against that Award, if any; (C)  amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of the federal healthcare programs like Medicare, Tricare, VA, or Medicaid against that Award, if any; (D) a pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan; and (E) the common benefit assessment required under Section 5.8(c) of the Plan, and the fees and costs of the Non-NAS PI Claimant's individual attorney(s) in the Chapter 11 Cases, if any, reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan.[3] In addition to the deductions and holdbacks described above, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

The order of payments to be made hereunder by the PI Trust is set forth in § 6. No amounts shall be paid on account of a Non-NAS PI Channeled Claim unless such Claim has been Allowed.

This Non-NAS PI TDP sets forth what evidence and forms you must submit in order to be eligible to receive an Award. Forms may be completed online at the PI Trust's website, www._____.com, or by mailing back the completed forms to the PI Trust at the below address. Evidence in support of your Non-NAS PI Claim should be submitted to [____].[4]

---

[3]    If you have an individual attorney, then your attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from your Award.

[4]    Submission instructions to be added after solicitation.

**ELECTION TO LIQUIDATE NON-NAS PI CLAIM IN THE
TORT SYSTEM RATHER THAN UNDER THIS NON-NAS PI TDP**

**A Non-NAS PI Claimant who (i) timely filed a Proof of Claim in the Chapter 11 Cases prior to the General Bar Date asserting his/her Non-NAS PI Claim against one or more Debtors and (ii) elects expressly, by timely submission of the Non-NAS PI Claim Form attached hereto as Exhibit A, to liquidate his/her Non-NAS PI Claim in the tort system rather than pursuant to the streamlined procedures set forth in §§ 6-9 of this Non-NAS PI TDP (each, a "Non-NAS Opt-Out Claimant" and, collectively, the "Non-NAS Opt-Out Claimants"), may assert and liquidate such Non-NAS PI Claim in the tort system at his/her own expense, as set forth in more detail in Exhibit B, and shall forfeit all rights to liquidate such Non-NAS PI Claim (and any associated Non-NAS PI Channeled Claims regarding the same injuries that are the same subject of his/her Non-NAS PI Claim) under the streamlined procedures set forth in §§ 6-9 of this Non-NAS PI TDP, as well as the right to expedited appeal set forth in Exhibit C hereto. The right to litigate in the tort system is available only with respect to Claims that meet the definition of "PI Claim" set forth in the Plan.**

**OPTING OUT REQUIRES YOU TO TAKE THE AFFIRMATIVE ACTION OF CHECKING THE "OPT OUT" BOX ON THE NON-NAS PI CLAIM FORM AND TIMELY SUBMITTING YOUR NON-NAS PI CLAIM FORM TO THE PI TRUST. FAILURE TO TIMELY SUBMIT THE NON-NAS PI CLAIM FORM SHALL CONSTITUTE CONSENT TO HAVE YOUR NON-NAS PI CHANNELED CLAIMS LIQUIDATED PURSUANT TO THE PROVISIONS OF THIS NON-NAS PI TDP.**

## § 2.    ALLOCATION OF FUNDS; CLAIMS ADMINISTRATOR.

(a)    Allocations of Funds to the PI Trust and Further Allocation to the PI Trust NAS Fund and the PI Trust Non-NAS Fund.

Under the Plan, the PI Trust will receive a gross amount of between $700 million and $750 million (minus amounts distributed directly to the United States under the United States-PI Claimant Medical Expense Claim Settlement), in the form of an initial installment of $300 million on the Effective Date of the Plan and subsequent installments, in each case subject to the United States-PI Claimant Medical Expense Claim Settlement. The PI Trust shall establish a fund to pay NAS PI Channeled Claims (the "PI Trust NAS Fund"); and a fund to pay Non-NAS PI Channeled Claims (the "PI Trust Non-NAS Fund"), and shall allocate each distribution it receives under the Plan as follows: (i) 6.43% to the PI Trust NAS Fund, up to an aggregate maximum of $45 million, and (ii) the remainder to the PI Trust Non-NAS Fund, in each case subject to applicable PI Trust Deductions and Holdbacks.

(b)    Claims Administrator.

(i)    The PI Trust shall be established in accordance with § 5.7 of the Plan to (1) assume all liability for the PI Channeled Claims, (2) hold the MDT PI Claim and collect the Initial PI Trust Distribution and payments due under

3

the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents, (3) administer, process, resolve and liquidate PI Channeled Claims, (4) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents (including this Non-NAS PI TDP), (5) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement and (6) carry out such other matters as are set forth in the PI Trust Documents.[5] The trustee of the PI Trust (the "Trustee"), Edgar Gentle III, of Gentle, Turner, Sexton & Harbison, LLC, will serve as claims administrator (the "Claims Administrator") to carry out the duties of the Trustee as set forth in the Plan and PI Trust Documents.[6]

(ii)     The Trustee and the Claims Administrator[7] shall determine, pursuant to the requirements set forth herein, the Allowance or Disallowance and valuation of all Non-NAS PI Channeled Claims liquidated under §§ 6-9 of this PI TDP, regardless of the type of Award sought. Distributions hereunder are determined only with consideration to a Non-NAS PI Claim held against the Debtors, and not to any associated Non-NAS PI Channeled Claim against a non-Debtor party. However, any Distribution to a Non-NAS PI Claimant on account of his/her Non-NAS PI Claim is deemed to be a distribution in satisfaction of all Non-NAS PI Channeled Claims held by such Non-NAS PI Claimant with respect to the injuries that are the subject of his/her Non-NAS PI Claim. The Claims Administrator may investigate any such claim, and may request information from any Non-NAS PI Claimant to ensure compliance with

---

[5]   The PI Trust Agreement shall provide that the Trustee shall have the power to appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of the PI Trust Agreement, the PI TDP, and the LRP Agreement, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents.

[6]   The PI Trust Agreement shall provide that the Trustee shall receive a retainer from the PI Trust for his service as a Trustee in the amount of $150,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the PI Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour. For all non-working travel time in connection with PI Trust business, the Trustee shall receive the sum of $200 per hour. The Trustee shall record all hourly time to be charged to the PI Trust. The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the PI Trust's oversight committee, appropriately adjusted by the Trustee for changes in the cost of living. The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

[7]   As the same individual is serving as both Trustee and Claims Administrator, reference to actions by each reference Mr. Gentle acting in such respective capacity.

4

the terms outlined in this document. For Non-NAS PI Claimants who execute the required HIPAA forms attached hereto as Exhibit D, the Claims Administrator also has the power to directly obtain such Non-NAS PI Claimant's medical records.

## § 3.    INITIAL NON-NAS PI CHANNELED CLAIM ALLOWANCE.

For a Non-NAS PI Channeled Claim that is being liquidated pursuant to the streamlined procedures set forth in §§ 6-9 of this Non-NAS PI TDP to be Allowed, the applicable Non-NAS PI Claimant must, with respect to that Non-NAS PI Channeled Claim:

(a)    Hold such Non-NAS PI Channeled Claim against one or more Debtors;

(b)    Demonstrate usage of a qualifying **prescribed** opioid listed in Exhibit E hereto (a "Qualifying Opioid")

(i)    Non-NAS PI Claimants who used only (or, as applicable, where the Decedent used only) a **non-prescribed** (diverted) version of a Qualifying Opioid (OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt) are not eligible for an Easy Payment, Base Payment or Level Award (each as defined below) unless that Non-NAS PI Claimant or Decedent (as applicable) was a minor when s/he initiated usage of a non-prescribed, *branded* version of a Qualifying Opioid;

(c)    Have already timely[8] filed an individual personal injury Proof of Claim against one or more Debtors in the Chapter 11 Cases asserting his/her Non-NAS PI Claim against one or more Debtors;

(d)    Complete, sign and submit the Non-NAS PI Claim Form attached hereto as Exhibit A, checking at least one injury box[9] by the date that is 90 days[10] after the Non-NAS PI Claim Form is disseminated[11] to Non-NAS PI Claimants;[12]

---

[8]    If the Proof of Claim was filed after the Bar Date but before April 23, 2021, the Claims Administrator shall consider the Non-NAS PI Channeled Claim without penalty. If the Proof of Claim was filed on April 23, 2021 or after, the Non-NAS PI Channeled Claim asserted by such Proof of Claim shall be Disallowed unless (i) the Claims Administrator determines, which determination shall be on a case-by-case basis, that good cause exists to treat the late-filed Non-NAS PI Channeled Claim as if it were timely filed, or (ii) the Bankruptcy Court so orders otherwise.

[9]    In the event a Non-NAS PI Claimant does not check any injury box from use of opioids on his/her Non-NAS PI Claim Form, his/her Non-NAS PI Channeled Claim shall be Disallowed. The Non-NAS PI Claim Form shall include clear language notifying a Non-NAS PI Claimant that if he or she fails to check any injury box from use of opioids, s/he will receive no recovery on his/her Non-NAS PI Channeled Claim.

[10]    Subject to extension in the discretion of the Claims Administrator.

[11]    Within 60 days after Effective Date, the Non-NAS PI Claim Form will be made available to Non-NAS PI Claimants electronically and, if a Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI

(e)    <u>Complete, sign and submit the two HIPAA consent forms attached hereto as Exhibit D</u>; and

(f)    <u>If the Non-NAS PI Channeled Claim concerns the injuries of a Decedent, then also execute and submit the appropriate Heirship Declaration attached hereto as Exhibit F</u>.[13]

Any Non-NAS PI Claimant who satisfies all of the above requirements (a)-(f) with respect to a given Non-NAS PI Channeled Claim shall have that Non-NAS PI Channeled Claim Allowed.

**If a Non-NAS PI Claimant does not satisfy these requirements with respect to a Non-NAS PI Channeled Claim that is being liquidated under §§ 6-9 of this Non-NAS PI TDP, INCLUDING THE REQUIREMENT TO TIMELY SUBMIT HIS/HER NON-NAS PI CLAIM FORM AND ANY NECESSARY ACCOMPANYING EVIDENCE, then such Non-NAS PI Channeled Claim shall be Disallowed.**

**Regardless of whether you elect to "opt out" or to have your claim liquidated under this Non-NAS PI TDP, you must complete the Non-NAS PI Claim Form as instructed by the deadline, which is 90 days[14] after the Non-NAS PI Claim Form is disseminated. Failure to timely submit the Non-NAS PI Claim Form (and any required supporting evidence) will result in your claim being disallowed. In other words, if you do nothing, you will not receive any compensation from the PI Trust.**

## § 4.    DETERMINING WHETHER A PRODUCT IS QUALIFYING.

One of the following is required to demonstrate a Qualifying Opioid as listed in Exhibit E:

(a)    A Non-NAS PI Claimant who provides evidence of a prescription for brand name OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt may rely on the name alone without the necessity of a corresponding NDC number.

---

Claimants electronically and, if a Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI Claimant in physical copy. When disseminated, the Non-NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the Non-NAS PI Claim Form must be returned.

[12]    If the Non-NAS PI Claimant checks the box on the Non-NAS PI Claim Form indicating his/her election to liquidate his/her Non-NAS PI Claim in the tort system rather than under §§ 6-9 of this PI TDP, then such Non-NAS PI Claim will not be liquidated hereunder.

[13]    Exhibit F contains two declaration forms. One applies if the Decedent named the Non-NAS PI Claimant as executor in his/her will; the other applies if the Decedent had no will.

[14]    Subject to extensions which the PI Trust claims administrator may give in his discretion.

(b)     In order for a Non-NAS PI Claimant to qualify based on the use of one of the generic products listed in Exhibit E (e.g., oxycodone ER/CR, morphine sulfate ER, hydromorphone), s/he must present either:

    (i)     The corresponding NDC number, which is set forth in Exhibit E;[15] or

    (ii)    A notation in the record that the product is manufactured or sold by Rhodes or Purdue.

(c)     A Non-NAS PI Claimant who used (or, as applicable, where the Decedent used) a generic oxycodone prescription that does not contain evidence of § 4(a) or (b) may only qualify if the prescription utilizes one of the following:

    (i)     Oxycodone CR (or controlled release); or

    (ii)    Oxycodone ER (or extended release).

## § 5.    TYPES OF EVIDENCE REQUIRED FOR QUALIFYING PRODUCTS.

All Non-NAS PI Claimants must demonstrate a prescription (which contains the name of the Non-NAS PI Claimant or Decedent, as applicable) and a Qualifying Opioid by one of the following pieces of evidence:

(a)     Pharmacy prescription records;

(b)     Prescription records, including without limitation:

    (i)     A visit note in which the prescribing physician lists a prescription for one of the Qualifying Opioids; or

    (ii)    A signed prescription from a doctor for one of the Qualifying Opioids;

(c)     A historical reference to one of the Qualifying Opioids, including but not limited to:[16]

    (i)     A reference in contemporaneous medical records to historical use of one of the Qualifying Opioids;

    (ii)    A reference in contemporaneous substance abuse/rehabilitation/mental health records to historical use of one of the Qualifying Opioids;

---

[15]    Subject to additional NDC numbers after discovery from or other disclosure by Debtors.

[16]    The record must have been created prior to September 15, 2019 only if the historical reference is self-reported by the Non-NAS PI Claimant.

(iii)    A reference in contemporaneous law enforcement records to historical use of one of the Qualifying Opioids; or

(iv)    A reference in contemporaneous family law or other legal proceedings records to historical use of one of the Qualifying Opioids;

(d)    A photograph of the prescription bottle or packaging of one of the Qualifying Opioids with the name of the Non-NAS PI Claimant or Decedent (as applicable) as the patient listed the prescription label; or

(e)    A certification supplied by a Debtor, any of its successors (including the PI Trust), or a third party at a Debtor's or one of its successors' request, indicating that customer loyalty programs, patient assistance programs ("PAPs"), copay assistance programs, or any other data otherwise available to the certifying entity reflects that the Non-NAS PI Claimant or Decedent (as applicable) had at least one prescription for one of the Qualifying Opioids.

(f)    With respect to a Non-NAS PI ~~Claimants~~Claimant whose Non-NAS PI Channeled Claim is based on the Non-NAS PI Claimant's or Decedent's use of only *diverted* (i.e., without a lawful prescription) qualifying branded products as a minor pursuant to § 3(b)(i) above and who cannot meet the evidentiary requirements of § 5(a)-(e) above[17] may qualify if the Non-NAS PI Claimant can demonstrate both of the following:[18]

(i)    A declaration under penalty of perjury (a) from the Non-NAS PI Claimant, or (b) in the case of a claim arising from a Decedent's opioid use, from any third party with knowledge of the Decedent's opioid use, that the Non-NAS PI Claimant or Decedent is known to have used diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt as a minor. The declaration must also state how long the diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the Non-NAS PI Channeled Claim would qualify for Tier 2 or Tier 3; and

(ii)    An *additional* declaration from a third party with personal knowledge of the Non-NAS PI Claimant's or Decedent's use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the

---

[17]    Since by definition diversion cases do not have a prescription, a Non-NAS PI Claimant could otherwise meet the evidentiary requirements above only with a historical reference to the diverted use of a qualifying product as a minor. In the absence of that historical reference in the medical records, this affidavit requirement can be used under the conditions set forth in this subsection.

[18]    Sample affidavits will be made available on the PI Trust website.

Non-NAS PI Claimant or Decedent is known to have used diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt as a minor. The declaration must claim how long the diverted OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the Non-NAS PI Channeled Claim would qualify for Tier 2 or Tier 3.

(g)     In the event a Non-NAS PI Claimant holds a claim arising from a *lawful* prescription of a qualifying product and cannot meet the evidentiary requirements of § 5(a)-(e) above, s/he may only qualify if s/he demonstrates <u>all</u> of the following:

(i)     That the Non-NAS PI Claimant or his/her agents made a bona fide attempt to retrieve all known prescribing physician medical charts, all known pharmacy charts, all known rehabilitation charts, <u>and</u> all known insurance explanation of benefits was made. An affidavit of no records (ANR), certificate of no records (CNR), affidavit of destroyed records (ADR), or certificate of destroyed records (CNR) must be provided as to all known records listed above (and in the Non-NAS PI Claim Form). Alternatively, if some medical records were produced in response to the Non-NAS PI Claimant's request but others were not, then evidence must be provided that the Non-NAS PI Claimant requested all records but that only limited records were produced by the facilities (with an explanation of how the portion of records not provided by the custodian likely contains the qualifying product and the basis for that assessment of probability); and

(ii)    A declaration under penalty of perjury from the Non-NAS PI Claimant or, in the case of a claim arising from the opioid use of a Decedent, from a third party with knowledge of the Decedent's opioid use, that the Non-NAS PI Claimant or Decedent is known to have been prescribed and used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes of determining whether the Non-NAS PI Channeled Claim would qualify for Tier 2 or Tier 3; and

(iii)   A supporting declaration from a third party with personal knowledge of the Non-NAS PI Claimant's or Decedent's use of opioids products stating under penalty of perjury that the declarant has personal knowledge that the Non-NAS PI Claimant or Decedent is known to have used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt. The declaration must also state how long the prescribed OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt was used for purposes

of determining whether the Non-NAS PI Channeled Claim would qualify for Tier 2 or Tier 3.

(h)     The Claims Administrator shall have discretion, subject to the appeal process set forth in Exhibit C hereto, to determine whether the requirements in § 5(f)-(g) above have been met so as to provide sufficient indicia of reliability that the Non-NAS PI Claimant or Decedent was prescribed (or as a minor received diverted) and used OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt.

(i)     In no event may a Non-NAS PI Claimant whose evidence of qualifying product use is based solely on the declarations under § 5(f)-(g) qualify for Tier 1A or Tier 1B. Whether the Non-NAS PI Claimant qualifies for Tier 2 or Tier 3 will be based on the length of use stated in the declaration.

(j)     Any Non-NAS PI Claimant who fails to meet the requirements of § 3, § 4 and § 5(a)-(g) is not entitled to any payment, including Easy Payment, Base Payment, or Level Award (each as defined below).

(k)     The Claims Administrator has the discretion to request additional documentation believed to be in the possession of the Non-NAS PI Claimant or his or her authorized agent or lawyer. The Claims Administrator has the sole discretion, subject to the appeal process set forth in Exhibit C hereto, to Disallow, or to reduce or eliminate Awards on, claims being liquidated hereunder where he concludes that there has been a pattern and practice to circumvent full or truthful disclosure under this § 5.

## § 6.    ORDER OF PAYMENTS; EASY PAYMENT.

A Non-NAS PI Claimant may choose between receiving an "Easy Payment" _**or**_ a "Base Payment" and "Level Award," as detailed below.

The PI Trust will make payments in the following order:

(a)     Easy Payment (as defined below) of $3,500 per qualifying Non-NAS PI Claimant[19] to those Non-NAS PI Claimants who elect to receive an Easy Payment; and

(b)     Base Payments and Level Awards (each as defined below) to qualified Non-NAS PI Claimants who did not elect to receive an Easy Payment.

---

[19]     If a Non-NAS PI Claimant has multiple qualified PI Claims on account of personal injuries to more than one opioid user, then that Non-NAS PI Claimant may have distinct Non-NAS PI Claims, each of which may recover hereunder.

Because monies are being received by the PI Trust in installments, payments of Awards other than Easy Payments may be in installments. Additionally, payments of awards may be further delayed into installment payments if a competent court so orders. Finally, distributions to minors are to be held in trust until the minor becomes a legal adult (unless a competent court orders otherwise). For all of these reasons, it may take years before you receive all of your Award.

A Non-NAS PI Claimant meeting the requirements of § 3 (Allowance) pursuant to the standards set in § 4 (Determining What is a Qualifying Product) and § 5 (Evidence Required to Demonstrate a Qualifying Product) may elect on his/her Non-NAS PI Claim Form to receive a set payment (an "Easy Payment") in lieu of other compensation. **NOTE: if you select an Easy Payment, you are NOT eligible to receive any additional funds for your Non-NAS PI Channeled Claim**. That means you cannot receive any of the Base Payments or Level Awards below. If you select an Easy Payment and your Non-NAS PI Channeled Claim is determined to be an Allowed Non-NAS PI Channeled Claim, you will be entitled to a gross payment of $3,500, before deduction of any fees, costs or liens as described herein, within a reasonably short amount of time after receipt of your claims package by the Claims Administrator, or as soon as all applicable liens have been cleared. The Easy Payment is also expected to be free of many (but not all) types of health care liens, including liens of Third-Party Payors.

## § 7.    ADDITIONAL AWARD DETERMINATION.

(a)    Allowed Non-NAS PI Channeled Claims held by Non-NAS PI Claimants who do not elect to receive an Easy Payment and who otherwise meet the Qualifying Opioid requirement shall be categorized[20] as follows:

(i)    <u>**Tier 1A**</u>:

A.    <u>Base Payment</u>:

1. For Non-NAS PI Claimants who demonstrate that his/her or the Decedent's addiction, dependence or substance abuse began while using one of the Qualifying Opioids.

2. Other than submission of qualifying product records under § 3, § 4 and § 5(a)-(f), no additional documents are required for a Holder of an Allowed Non-NAS PI Channeled Claim to secure a Tier 1A Base Payment. The showing required for a Tier 1A Base Payment is a temporal relationship between use of a qualifying product and the onset of addiction, dependence or substance abuse within six months after use of a qualifying product. There is a presumption that proof of qualifying product usage under the methods above within 6 months before the onset of

---

[20]    Non-NAS PI Claimants who assert or allege Qualifying Opioid usage in their Non-NAS PI Claim Forms for which they cannot produce corresponding evidence will not recover on account of such alleged opioid usage.

addiction, dependence or substance abuse (as set forth in the Non-NAS PI Claim Form) is sufficient.

aa.    However, notwithstanding evidence of a qualifying product usage before the onset of addiction, dependence or substance abuse noted in the Non-NAS PI Claim Form, if the Non-NAS PI Claim Form, pharmacy, medical or other records demonstrate any of the below indicia of addiction, dependence or substance abuse that precede the earliest use of a qualifying product demonstrated by a Non-NAS PI Claimant, the claim does not qualify for Tier 1A.

a.    diagnosis of addiction, dependence or substance abuse relating to opioid use made by any medical professional;

b.    treatment in a rehabilitation center for opioid use disorder;

c.    overdose, withdrawal, or detox from an opioid;

d.    consecutive use of opioids with MME of greater than 90 mg/day for 6 months or more;

e.    use of illegal opioids; or

f.    use of medication-assisted treatment ("<u>MAT</u>") like methadone.

B.    <u>Level Awards</u>: In addition to Base Payments, Tier 1A Non-NAS PI Claimants meeting the criteria below qualify for the additional payment attendant to the highest Level they qualify for (but not multiple Levels).

1.    *Level A*:

aa.    For Non-NAS PI Claimants who demonstrate one or more of the following:

a.    Opioid Use Disorder ("<u>OUD</u>");[21]

b.    MAT usage >6 months. MAT drugs include methadone, buprenorphine, Butrans, Suboxone, Zubsolv, Methadose, and naltrexone; or

c.    Administration of Narcan, Evzio or Naloxone.

2.    *Level B*:

aa.    For Non-NAS PI Claimants who demonstrate death caused by an opioid (such as overdose or withdrawal).

C.    <u>Additional Evidence for Level Awards</u>:

---

[21]    The diagnosis can be made by any medical professional, specifically including physicians, nurses, physician's assistant, mental health counselor or therapist, or professional at a rehabilitation center.

1.  If making a claim for a Tier 1A Level Award based on OUD diagnosis, medical records, including rehabilitation records, primary care, hospital, billing or other records reflecting a diagnosis of OUD made by a medical or health professional. No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

2.  If making a claim for a Tier 1 A Level Award based on MAT or Narcan, Evzio or Naloxone use, pharmacy or other medical records reflecting use of MAT, Narcan, Evzio or Naloxone. The types of evidence that qualify to show MAT, Narcan, Evzio or Naloxone exposure are the same as those in § 5(a)-(d). No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

3.  If making a claim for a Tier 1A Level Award based on death, the death certificate of the Decedent as well as any toxicology reports or autopsy reports. The records do not have to coincide in time with the provided qualifying product use. No affidavits may be used to meet this requirement.

4.  The Non-NAS PI Claimant may submit such additional information as the Non-NAS PI Claimant believes will assist the Claims Administrator's determination of the appropriate amount of any Non-NAS PI Channeled Claim that has satisfied the initial claim validity requirements.

(ii)  **Tier 1B:** Opioid-related death (overdose or withdrawal) while on OxyContin (temporal relationship between date of death and usage of OxyContin) qualify for Tier 1B Base Payment. Only branded OxyContin would qualify under Tier 1B (i.e., no other Qualifying Opioids). There are no Level Awards. If a Non-NAS PI Claimant is making a claim for a Tier 1B Award, the death certificate of the Decedent as well as any toxicology reports or autopsy reports must be produced. The death must coincide in time with the provided qualifying product use (i.e. the timing of usage, including number of pills, falls within 5 days of the death). For example, if the Decedent had a prescription 20 days before death and the number of pills in that prescription was enough such that it can reasonably be expected the Decedent was using it within 5 days of death, the case qualifies. Conversely, if the Decedent had a prescription 45 days before death and the number of pills in the prescription was such that it can reasonably be expected that the Decedent would have run out of pills 15 days before death, the case does not qualify. The underlying addiction does not need to have begun during qualifying product use; OxyContin use at the time of death is sufficient.

(iii)  **Tier 2:** Non-NAS PI Claimants must demonstrate use of a qualifying product for more than 6 months; however, the usage does not have to be consecutive.

  A.  <u>Base Payment</u>: Other than for qualifying product records under § 3, § 4 and § 5(a)-(g), no additional documents are required for a Tier 2 Base Payment. All Non-NAS PI Claimants that qualify for Tier 2 will receive a Base Payment.

  B.  <u>Level Awards</u>: In addition to Base Payments, Tier 2 Non-NAS PI Claimants meeting the criteria below qualify for the additional payment attendant to the highest Level they qualify for (but not multiple Levels).

    1. *Level A*:

      aa.  For Non-NAS PI Claimants who demonstrate one or more of the following:

        a.  Opioid Use Disorder (OUD);

        b.  MAT >6 months days; or

        c.  Administration of Narcan, Evzio or Naloxone.

    2. *Level B*:

      aa.  For Non-NAS PI Claimants who demonstrate death caused by an opioid.

  C.  <u>Additional Evidence for Level Awards</u>:

    1. If making a claim for a Tier 2 Level Award based on OUD diagnosis, medical records, including rehabilitation records, primary care, hospital, billing or other records reflecting a diagnosis of OUD made by a medical or health professional. No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

    2. If making a claim for a for a Tier 2 Level Award based on MAT or Narcan, Evzio or Naloxone use, pharmacy or other medical records reflecting use of MAT, Narcan, Evzio or Naloxone. The types of evidence that qualify to show MAT, Narcan, Evzio or Naloxone exposure are the same as those in § 5(a)-(d). No affidavits may be used to meet this requirement. The records do not have to coincide in time with the provided qualifying product use.

    3. If making a claim for a Tier 2 Level Award based on death, the death certificate of the Decedent as well as any toxicology reports or autopsy reports. The records do not have to coincide in time with the provided qualifying product use. No affidavits may be used to meet this requirement.

14

(iv)   **Tier 3:** Use of a qualifying product less than 6 months and otherwise not meeting the criteria of Tier 1A, Tier 1B or Tier 2 are entitled to no additional payments other than the Base Payment. Non-NAS PI Claimants who elect to receive the Easy Payment cannot receive any additional compensation, and no Tier applies to their Non-NAS PI Claim. However, in the event a Non-NAS PI Claimant declines the Easy Payment and elects to proceed but does not qualify for Tiers 1A, 1B, or 2, such Non-NAS PI Claimant will receive the Tier 3 Base Payment and only the Tier 3 Base Payment.

## § 8.    BASE PAYMENTS AND LEVEL AWARDS.

(a)    Grid Origins.

The point values provided in this grid resulted from the work of counsel to the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject matter experts for the Ad Hoc Group of Individual Victims and the other holders of PI Channeled Claims, and collaborative discussions with stakeholders. The estimated amount per point is based on a sample, and will be updated periodically on the PI Trust's website, www._____.com.

(b)    Amount of Money Per Point.

Based on an initial sample, we estimate that the dollar award amount per point will be between $0.80 and $1.20. The dollar amount ultimately awarded per point will be determined with reference to the funds available in the PI Trust and the pool of claims remaining against the PI Trust after the payment of Easy Payments.

| | Tier 1A *Addiction from Purdue Opioids* | Tier 1B *Death on OxyContin* | Tier 2 *Purdue Opioids Use ≥6 months* | Tier 3 *No Addiction/ Death from Purdue Opioids, and Purdue Opioids Use <6 months* |
|---|---|---|---|---|
| **BASE PAYMENTS** | 20,000 pts[22] | 40,000 pts | 6,000 pts | $3,500 |
| **LEVELS (one of the below)[23]** | | | | |

---

[22]   Non-NAS PI Claimants who do not claim addiction, dependence or abuse of opioids are not entitled to receive Tier 1A Awards.

[23]   If a Non-NAS PI Claimant does not qualify for additional Level Awards, he/she does not get additional money above the Base Payment. A Non-NAS PI Claimant can only qualify for one, but not multiple, Level Awards.

| | | | | |
|---|---|---|---|---|
| **A** | 10,000 pts<br><br>OUD Diagnosis, OR<br>MAT for >6 months | N/A | 3,000 pts<br><br>OUD Diagnosis, OR<br>MAT for >6 months | N/A |
| **B** | 20,000 pts<br><br>Death from an<br>Opioid | N/A | 20,000 pts<br><br>Death from an<br>Opioid | N/A |

## § 9.   ADDITIONAL CLAIM FACTORS AND VALUATION.

(a)   To the extent practicable, only objective factors are to be scored, based upon the axiom that in mass torts consistency is fairness.

(b)   This grid is based in part on other scoring grids developed in comparable cases and development of a scoring grid with unique customization according to the claims and injuries encountered and reviewed in sampling individual PI Claims.

(c)   Because of limited funds, economic damages are not compensable. This Non-NAS PI TDP only compensates general pain and suffering. Nonetheless, all personal injury damages from use of Qualifying Opioids are being channeled to the PI Trust and released, including both economic and non-economic or general damages.

(d)   Only reported injuries are to be scored.

(e)   In no circumstance shall the Claims Administrator assign any claim value for any punitive damages, exemplary damages, statutory enhanced damages, or attorneys' fees or costs (including statutory attorneys' fees and costs).

(f)   Only Non-NAS PI Claims based on injuries or facts occurring prior to the filing of your Non-NAS PI Claim Form are eligible for recovery.

## § 10.   BAR FOR PRIOR SETTLED CASES.

A Non-NAS PI Claimant whose Non-NAS PI Channeled Claim was reduced prior to the Petition Date to a settlement, judgment, or award against a Debtor shall be barred from receiving any Award under this Non-NAS PI TDP (Easy Payment, Base Payment or Level Award) on account of such Non-NAS PI Channeled Claim and shall not recover from the PI Trust on account of such Non-NAS PI Channeled Claim; provided, however, that a prior settlement with respect to a living person's OUD claim does not bar a subsequent wrongful death claim arising out of that settled OUD claim.

## § 11.   SPECIAL PROCEDURES IN RESPECT OF MINORS.

For Non-NAS PI Claimants who are minors under applicable law, the special procedures set forth in Exhibit G hereto also apply and shall supplement the procedures set forth in this Non-NAS PI TDP.

## § 12.    FAIRNESS AUDITS AND FRAUD PREVENTION.

The Claims Administrator will use appropriate technology and strategies to prevent paying fraudulent claims while making the claims process as simple as possible. Reasonable steps will be taken to mitigate fraud so as to ensure a fair and secure claims review and payment process, while not falsely flagging legitimate PI Channeled Claims. Among the techniques will be technology to prevent claims submitted by BOTS, unique Non-NAS PI Claimant identification numbers, and strategic Non-NAS PI Claim Form fields. Periodic fairness audits will be conducted on samples of Non-NAS PI Channeled Claims to ensure that they are being graded and paid fairly.

## § 13.    CHARITY.

The PI Trust will establish a charitable trust to accept donations that can be used to address the opioid addiction crisis by providing grant funding for recovery support services, addiction and addiction family harm reduction-related activities, education, family support, community-based advocacy efforts, and assistance to organizations providing services to individuals and caregivers grappling with opioid-related problems of Non-NAS PI Claimants. The distribution of funding provided by this charity may be streamlined through qualified not-for-profit organizations. The charity will be funded only through donations; none of the funds received by the PI Trust under the Plan will be diverted to fund this charity. Non-NAS PI Claimants may choose to allocate part or all of their share of their recovery to this charity.

## § 14.    APPEALS.

Each Non-NAS PI Claimant who has his/her Non-NAS PI Channeled Claims liquidated under this Non-NAS PI TDP has an appeal right, which is described in Exhibit C. ~~The decision~~Decisions of the Appeals Master pursuant to Exhibit C ~~is~~are final and binding, and Non-NAS PI Claimants have no further appeal rights as to any determinations made by the Claims Administrator under this Non-NAS PI TDP beyond those set forth in Exhibit C.

17

**<u>EXHIBIT A</u>**

**<u>SAMPLE CLAIM FORM FOR</u>**
**<u>THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION</u>**
**<u>PROCEDURE FOR NON-NAS PI CLAIMS</u>**

**THIS IS A SAMPLE CLAIM FORM AND IS SUBJECT TO CHANGE. DO NOT COMPLETE THE FORM AT THIS TIME. A BLANK COPY OF THE FINAL FORM WILL BE AVAILABLE ONLINE AND BY MAIL FOR YOU TO COMPLETE AT THE APPROPRIATE TIME AFTER THE PURDUE PLAN OF REORGANIZATION HAS BEEN APPROVED AND GONE EFFECTIVE.**

This Purdue Bankruptcy Claim Form (the "Claim Form") must be completed by each Non-NAS PI Claimant seeking to recover money from the Purdue Personal Injury Trust (The "PI Trust") on its Non-NAS PI Channeled Claims.[1]  IF YOU DO NOT TIMELY RETURN THIS CLAIM FORM AS INSTRUCTED, YOU WILL BE DEEMED TO HAVE CONSENTED TO HAVE YOUR NON-NAS PI CHANNELED CLAIMS LIQUIDATED UNDER THE NON-NAS PI TDP, AND YOUR CLAIMS WILL BE DISALLOWED UNDER THE NON-NAS PI TDP FOR YOUR FAILURE TO TIMELY RESPOND.

If you hold multiple Non-NAS PI Claims against the Debtors on account of injuries to *more than one* opioid user, then fill out one Claim Form for each of those Non-NAS PI Claims. If you hold multiple Non-NAS PI Claims on account of multiple injuries to *the same* opioid user, then fill out only one Claim Form. One Claim Form submitted for a Non-NAS PI Claim shall be deemed to be a Claim Form in respect of that Non-NAS PI Claim and also any Non-NAS PI Channeled Claims against a Released Person or Shareholder Released Person that are associated with that Non-NAS PI Claim.

**Follow the instructions of each section carefully to ensure that your Claim Form is submitted correctly**. If any section does not pertain to your claim, leave it blank. Except as otherwise indicated, all words shall be given their ordinary, dictionary meaning. Submitting this Claim Form does not guarantee that you will receive payment from the PI Trust. Whether or not you receive payment depends on whether you make the additional required submissions, as set forth in the Non-NAS PI TDP, and whether or not your claim meets the eligibility requirements set forth in the Non-NAS PI TDP.

This Claim Form allows you to choose to "opt out" of the streamlined, expedited Non-NAS PI TDP liquidation process with respect to any Non-NAS PI Claim against one or more of the Debtors, and instead pursue that Non-NAS PI Claim in the tort system by filing a lawsuit against the PI Trust at your own expense. You may litigate in court only with respect to a Non-NAS PI Claim held against one or more Debtors, and may not litigate other Non-NAS PI Channeled Claims. If you select the "opt out" option, you will not be eligible to receive the Easy Payment or any "Base Payment" or "Level Award." Furthermore, you will not be allowed to opt back in to the Non-NAS PI TDP if your lawsuit in the tort system is unsuccessful. Any final judgment you obtain in the tort system against the Non-NAS PI Trust will be subject to reduction pursuant to the "opt out" procedures set forth in Exhibit B to the Non-NAS PI TDP.  YOU MAY ONLY OPT OUT BY CHECKING THE "OPT OUT" BOX AND TIMELY RETURNING THIS CLAIM FORM.  FAILURE TO RESPOND DOES NOT CONSTITUTE OPTING OUT.

For those who do not "opt out," this Claim Form requires you to choose between receiving an "Easy Payment" of $3,500 or seeking a "Base Payment" and "Level Award." If your Non-NAS PI Claim is eligible for

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Non-NAS PI TDP or, if not defined therein, then the meanings ascribed to them in the Chapter 11 Plan.

payment, then the "Easy Payment" choice will get you money faster, but may not pay as much as a "Base Payment" or "Level Award" would ultimately pay.

By submitting this Form and choosing to liquidate your Claim under the Non-NAS TDP, you are deemed to consent to the Lien Resolution Program, under which certain health insurance companies, known as "Third-Party Payors" or "TPPs," have agreed to resolve their claims against you and/or your recoveries under the Non-NAS PI TDP for reduced amounts or, in some cases, by waiving their claims altogether.  The LRP Agreement is attached as Exhibit [ ] to the [   ] Plan Supplement.

**Instructions for Submission**:  You may complete and submit this Claim Form either online, at ███████████████████████, or by mailing back the completed Claim Form to ██████████████████████
████████████████████████████████████████████.

███████████████████████████████████████████████

## PART ONE: PERSONAL INFORMATION OF NON-NAS PI CLAIMANT

What is the Claim Number assigned to your claim by Prime Clerk?    ████████████

Please only fill out **one** of the following sections (Section 1.A, 1.B, or 1.C).

**Section 1.A: If you are filing a PI Claim arising from your own use of opioids, please fill out the information below.**    ☐

Claimant's Name**:**    ██████████████████

Date of Birth:    ██████████████████

Claimant's Address:    ██████████████████

Claimant's Social Security Number:    ████████████████

**Section 1.B: If you are filing a PI Claim due to another's death from use of opioids, please fill out the information below.**    ☐

Opioid User's Name:    ██████████████

Claimant Name Filing on behalf of the Opioid User:    ██████████████

Date of Birth of Opioid User:    ██████████████

Date of Death:    ██████████████

Cause of Death:    ██████████████

Opioid User's Social Security Number:    ██████████████

☐

## PART TWO: "OPT OUT" OF THE NON-NAS PI TDP PROCEDURE

If you would like to forfeit all rights to have your Non-NAS PI Channeled Claims liquidated under the Non-NAS PI TDP and instead to pursue your Non-NAS PI Claim by filing a lawsuit against the PI Trust in court at your own expense, check the following box. If you "opt out," you will not be eligible to receive an "Easy Payment," "Base Payment," or "Level Award" from the  PI Trust.

Mark the following box **only if** you **elect to "opt out" of the Non-NAS PI TDP liquidation**    ☐    process **and instead pursue your Non-NAS PI Claim in civil court through the tort system by filing a lawsuit in court at your own expense**:

**PART THREE: EASY PAYMENT ELECTION (If you selected "Opt Out," then skip this Part Three)**

**Section 3.A:** You may elect to receive an "Easy Payment" in lieu of other compensation. If you elect to receive an Easy Payment, you will receive a one-time payment of $3,500 within a reasonably short amount of time after receipt of your Claims Package by the Claims Administrator and resolution of any healthcare liens. The Easy Payment is expected to be free of many but not all types of health care liens. Even if you select the Easy Payment option, you must comply with the requirements of the Non-NAS PI TDP. **WARNING: If you elect to receive an Easy Payment, you are not eligible to receive any additional Awards for your Non-NAS PI Channeled Claims. On the other hand, declining the Easy Payment election and seeking a "Base Payment" and "Level Award" may result in receiving payment at a later date and through installments.**

Mark the following box **only if** you **elect to receive the Easy Payment** and **waive all additional Awards** or compensation:

☐

---

**PART FOUR: PRESCRIBED MEDICATIONS (If you selected "Opt Out," SKIP this Part Four)**

**Section 4.A: Identify any of the following Purdue brand opioids that the opioid user who is the subject of your Non-NAS PI Claim was prescribed. _Include evidence of the prescriptions when submitting this Claim Form._**

| | Date of first prescription: | Date of last prescription |
|---|---|---|
| OxyContin ☐ | | |
| MSContin ☐ | | |
| Dilaudid ☐ | | |
| Butrans ☐ | | |
| Hysingla ☐ | | |
| DHC Plus ☐ | | |
| MSIR ☐ | | |
| OxyFast ☐ | | |
| Oxy IR ☐ | | |
| Palladone ☐ | | |
| Ryzolt ☐ | | |
| Rhodes Generic (name) _____ _____ ☐ | | |

**Section 4.B**: Identify any of the following Medication Assistance Treatment (MAT) drugs prescribed to the opioid user who is the subject of your Non-NAS PI Claim. ***Include evidence of the prescriptions when submitting this Claim Form.***

|  | | Date of first prescription: | Date of last prescription |
|---|---|---|---|
| Buprenorphine: | ☐ | | |
| Butrans: | ☐ | | |
| Methadone: | ☐ | | |
| Suboxone | ☐ | | |
| Zubsoly: | ☐ | | |
| Naltrexone: | ☐ | | |

**Section 4.C**: Identify any of the following medications provided to the opioid user (whether you or another person) during or after an opioid overdose. ***Include evidence of the prescriptions when submitting this Claim Form.***

|  | | Date administered: |
|---|---|---|
| Narcan: | ☐ | |
| Evzio: | ☐ | |
| Naloxone: | ☐ | |

---

**PART SIX: OPIOID USER AND OPIOID CLAIMANT INJURIES** (If you selected "Opt Out," SKIP this Part Six)

**WARNING: IF YOU DO NOT CHECK ANY INJURIES ON THIS LIST, THEN YOUR NON-NAS PI CHANNELED CLAIMS WILL BE DISALLOWED AND YOU WILL RECEIVE NO RECOVERY**

**Section 6.A:**

**Please mark all that are applicable to your claim.**

_____ ADDICTION

Date addiction began: _____

Opioid that started the addiction: _____

Diagnosis and Date of Opioid Use Disorder: _____

_____ WITHDRAWALS

Date withdrawals occurred: _____

_____ OVERDOSE

- 5 -

Date overdose occurred: _____

____ __JAIL__

Date jail sentence began/ended: _____

The charge: _____

____ __REHAB__

Dates of inpatient or outpatient rehabilitation: _____

---

**PART SEVEN: TIERING AND LEVEL DESIGNATION (If you selected "Opt Out" or Easy Payment, SKIP this Part Seven)**

**Section 7.A: In this section, please circle the tier that applies to your Non-NAS PI Claim. IF MULTIPLE TIERS APPLY, CHECK THE FIRST ONE THAT APPLIES (for example, if 1B and 1A both apply, then check 1B, because that appears first in the list below).  Please refer to the Non-NAS PI TDP for full definitions and qualifying criteria.**

Highest

**Tier 1B:**

☐ an demonstrate opioid-related death (such as overdose or withdrawal) while on Oxycontin.

**Tier 1A:**

☐ can demonstrate that addiction, dependence, or substance abuse began while using one of qualifying opioids.

**Tier 2:**

You can demonstrate use of a qualifying product for more than 6 months (does not have to be consecutive use).

**Tier 3:**

Lowest

☐ can demonstrate use of a qualifying product for less than 6 months and otherwise do not the criteria of any of the above tiers.

**Section 7.B: If you selected __Tier 1A__ or __Tier 2__ above, please mark the level designation that applies to your Non-NAS PI Claim. IF BOTH LEVEL B AND LEVEL A APPLY TO YOU, CHOOSE LEVEL B. Please refer to the Non-NAS PI TDP for full definitions and qualifying criteria. (If you checked a Tier 1B or Tier 3 Claim above, SKIP this section.)**

**Level B:**

Highest

☐ an demonstrate death caused by an opioid (e.g., death caused by overdose or withdrawal).

**Level A:**

Lowest

☐ an demonstrate (1) a diagnosis of Opioid Use Disorder (OUD), (2) MAT usage of more than 6 months, or (3) administration of Narcan, Evzio, or Naloxone.

**PART EIGHT: MEDICAL PROVIDER INFORMATION (If you selected "Opt Out" or Easy Payment, SKIP this Part Eight)**

**Section 8.A:** In this section, please identify information for the medical providers (prescribing doctors and pharmacies) who prescribed opioids to the opioid user that is the subject of your Non-NAS PI Claim:

| Name of Prescriber/Pharmacy | Address | City | State | Zip | Date Range From | Date Range To |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**PART NINE: MEDICAL LIENS (If you selected "Opt Out," SKIP this Part Nine)**

**Section 9.A:** Did any insurance company pay for medical treatment for the opioid-related injuries that gave rise to your Non-NAS PI Claim?

Yes: ☐

No: ☐

**Section 9.B:** In the last 20 years, was the opioid user who is the subject of your claim eligible for coverage by any of the following, or did any of the following actually pay for his/her opioid-related health costs? Respond by writing "Yes" or "No" next to each insurance provider name, and provide the requested information as to each. If any insurance carrier who provided coverage to the opioid user is not identified, please fill in that carrier's information at the bottom of the chart.

| Type of Insurance | Yes/ No | Street Address | Phone Number | Policy Number (if any) | Policy Holder | Dates of Coverage |
|---|---|---|---|---|---|---|
| Medicare | | | | | | |
| Medicaid | | | | | | |
| Tricare | | | | | | |
| VA | | | | | | |
| Champus | | | | | | |
| Private (Name Below): | | | | | | |
| | | | | | | |
| | | | | | | |

**PART TEN: SIGNATURE (You must complete this Part Ten regardless of your elections above)**

**Section 10.A**: Please sign this section when you have completed this Claim Form.

Non-NAS PI Claimant's Name: _____
Non-NAS PI Claimant's E-mail: _____
Non-NAS PI Claimant's Phone Number: _____

I am including the evidence requested above in my submission of this form: ☐

*I declare under penalty of perjury that the representations made and the information provided on this Claim Form are true and, correct and complete to the best of my knowledge.*

*Non-NAS PI Claimant's Signature*

**EXHIBIT B**

**PROCEDURES FOR NON-NAS PI CLAIMANTS WHO OPT
TO LIQUIDATE THEIR NON-NAS PI CLAIMS IN THE TORT
SYSTEM RATHER THAN UNDER THE INDIVIDUAL PURDUE
PHARMA LP NON-NAS TRUST DISTRIBUTION PROCEDURE**

The following procedures shall apply in the case of a Non-NAS PI Claimant[1] who elects, subject to the terms hereof, to liquidate his or her Non-NAS PI Claim by commencing a lawsuit in the tort system after so timely indicating on his or her Non-NAS PI Claim Form. By so electing, such Non-NAS PI Claimant forfeits any right to have his or her Non-NAS PI Claim liquidated under sections 6 through 9 (inclusive) of the Non-NAS PI TDP, and instead shall have the right to liquidate his or her Non-NAS PI Claim exclusively in the tort system. Only claims that meet the definition of "Non-NAS PI Claim" under the Plan may be litigated in the tort system. The adjudication of a Non-NAS PI Claim in the tort system shall be deemed to be an adjudication of that Non-NAS PI Claim and any associated Non-NAS PI Channeled Claims of the Non-NAS PI Claimant regarding the same injuries that are the subject of his or her Non-NAS PI Claim. Any Distribution from the PI Trust on a Final Judgment (as defined below) in respect of such Non-NAS PI Claim, if any, shall be deemed to be a Distribution in satisfaction and conclusive resolution of such <u>Non-NAS</u> PI Claim and such associated Non-NAS PI Channeled Claims.

## § 1.    SUITS IN THE TORT SYSTEM.

If a Non-NAS PI Claimant timely filed a proof of claim in the Chapter 11 Cases asserting his or her Non-NAS PI Claim, then he or she may elect to liquidate such Non-NAS PI Claim in the tort system rather than under the Non-NAS PI TDP by checking the box so indicating on his or her Non-NAS PI Claim Form, which Non-NAS PI Claim Form must be filed by the date that is ninety (90) days[2] after the applicable Non-NAS PI Claim Form is disseminated to him/her.[3] If the Non-NAS PI Claimant makes such election, then the Non-NAS PI Claimant may file a lawsuit regarding only his or her Non-NAS PI Claim (and no other claims) against only the PI Trust (and including no other parties as defendants) solely in the United States District Court for the Southern District of New York (the "<u>SDNY District Court</u>"),[4] unless such court orders pursuant

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Non-NAS PI TDP or, if not defined in the Non-NAS PI TDP, the meanings ascribed to such terms in the Plan.

[2]    Within sixty (60) days after Effective Date, the Non-NAS PI Claim Form will be made available to Non-NAS PI Claimants electronically and, if the Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI Claimant in physical copy. When disseminated, each Non-NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the Non-NAS PI Claim Form must be returned.

[3]    The filing of a Non-NAS PI Claim Form indicating that a Non-NAS PI Claimant has elected to liquidate his or her Non-NAS PI Claim in the tort system shall have no effect on any federal or state statute of limitation or repose applicable to the ~~claims~~<u>Non-NAS PI Claims</u> asserted by such Non-NAS PI ~~Claimant's action~~<u>Claimant</u>.

[4]    The Debtors shall seek an order from the SDNY District Court requiring that lawsuits filed by Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system be filed and tried solely in the SDNY District Court pursuant to 28 U.S.C. § 157(b)(5).

to 28 USC § 157(b)(5) that such suit may be filed and tried in the United States District Court for the district in which the Non-NAS PI Claim arose.

Any such lawsuit ~~must~~shall be filed by the Non-NAS PI Claimant in an individual capacity and not as a member or representative of a class, and no such lawsuit ~~may~~shall be consolidated with the lawsuit of any other plaintiff by, or on the motion of, any plaintiff.[5] All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[6]

Subject to the PI Trust's receipt of a Non-NAS PI Claim Form so indicating that a Non-NAS PI Claimant has elected to retain the option to file a lawsuit ~~as set forth above~~ in the tort system as set forth above, NewCo and the Plan Administration Trust will establish and maintain, as necessary, a document reserve (the "PI Document Reserve") containing such materials as are necessary to such lawsuit as discovery material. Any such Non-NAS PI Claimant will be provided access to the PI Document Reserve subject to agreeing to (i) a protective order acceptable to the PI Trustee, the Plan Administration Trustee, and NewCo, and (ii) to the extent that the materials deposited into the PI Document Reserve ~~by the PI Trust~~ include any documents produced by the Shareholder Released Parties that are not included in the Public Document Repository in accordance with the Plan and the Shareholder Settlement Agreement (the "Shareholder Released Party Documents"), the Protective Order, which shall exclusively govern the terms of disclosure of the Shareholder Released Party Documents. Any such Non-NAS PI Claimant who propounds on the PI Trust, NewCo, the Plan Administration Trustee, any other Creditor Trust, or any Debtor a request for additional ~~document~~documents or testimonial discovery must in such request (i) represent that such Non-NAS PI Claimant has conducted a reasonable search of the PI Document Reserve and, if it has been established, the Public Document Repository, and believes, based on such reasonable search, that the documents, information, or testimony it seeks is not available in either the PI Document Reserve or the Public Document Repository, and (ii) state and explain the basis for the Non-NAS PI Claimant's good faith belief that the additional discovery he or she seeks is relevant to such lawsuit. The PI Trust shall not be liable for any costs incurred by parties other than the PI Trust in connection with third-party discovery propounded by any party other than the PI Trust.[7]

If a Non-NAS PI Claimant obtains a judgment on his or her Non-NAS PI Claim in the tort system and such judgment becomes a final order (~~each,~~ a "Final Judgment"), such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI

---

[5]   The trustee of the PI Trust (the "PI Trustee") shall be empowered (i) to bring one or more consolidated actions against multiple Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system and (ii) to seek to consolidate multiple lawsuits commenced by individual Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system.

[6]   Among other things, the PI Trust shall be empowered to assert that the claim that is the subject of a Non-NAS PI Claimant's lawsuit is not a "Non-NAS PI Claim" within the meaning of the Plan.

[7]   In order to minimize costs incurred by the PI Trust in connection with third-party discovery, the PI Trustee shall be empowered to seek to consolidate discovery propounded by Holders of PI Claims or the PI Trust in multiple lawsuits commenced by individual Holders of PI Claims ~~who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system~~against the PI Trust.

Trust, subject to the ~~limitation on damages provision~~limitations set forth in Section 2 below, as well as the Non-NAS Payment Percentage and Non-NAS Maximum Value (each as defined below), as provided in Section 6 below, the deductions as set forth in Section 6 below, and the resolution of healthcare liens, as provided in Section 7 below.

## § 2.    LIMITATION ON DAMAGES AND ATTORNEYS' FEES.

Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any Non-NAS PI Claim litigated against the PI Trust in the tort system.

## § 3.    NON-NAS MAXIMUM VALUE.

Payment on a Final Judgment for a Non-NAS Claim shall not exceed the dollar-equivalent of 120,000 points (the "Non-NAS Maximum Value"), which is three times the maximum point value attributed under the liquidation provisions of the Non-NAS PI TDP to eligible claims for the most severe injuries. Points will be converted to dollars consistent with the conversion set forth in section 8 of the Non-NAS PI TDP. As set forth in more detail in the Non-NAS PI TDP, the dollar amount ultimately awarded per point will be determined with reference to the funds remaining in the PI Trust and to the pool of claims remaining against the PI Trust. It will vary depending on how many people choose to opt out their claims and how expensive it is for the PI Trust to defend those claims in the tort system. It will also depend on the payment elections made by those who are liquidating their claims under sections 6 through 9 (inclusive) of the Non-NAS PI TDP. At this time, it is estimated that the dollar award amount per point will be between $0.80 and $1.20.

## § 4.    NON-NAS PAYMENT PERCENTAGE.

A Final Judgment on a Non-NAS Claim, minus any multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), interest, attorneys' fees or costs (including statutory attorneys' fees and costs) that may have been awarded as part of such Final Judgment, shall be subject to reduction by the same percentage that Non-NAS PI Claims liquidated under the Non-NAS PI TDP are reduced prior to payment. In other words, a Non-NAS PI Claimant who elects to liquidate his or her Non-NAS PI Claim in the tort system shall not be entitled to receive more than his or her pro-rata share of the value available for distribution to all Non-NAS PI Channeled Claims entitled to a recovery pursuant to the Non-NAS PI TDP. Based upon the work of the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject-matter experts for the Ad Hoc Group of Individual Victims and other holders of PI Claims, review of judgments obtained in lawsuits, settlement history, and collaborative discussions with stakeholders, the Base Payments and Level Awards described in the Non-NAS PI TDP represent an estimated pro-rata percentage recovery by PI Claimants holding Allowed PI Channeled Claims of approximately 2.0% (such pro-rata percentage recovery as may be altered over time, the "Non-NAS Payment Percentage"). Accordingly, the initial Non-NAS Payment Percentage is 2.0%.

3

No holder of a Non-NAS PI Claim who elects to liquidate his or her Non-NAS PI Claim in the tort system shall receive a payment that exceeds the liquidated value of his or her Non-NAS PI Claim multiplied by the Non-NAS Payment Percentage in effect at the time of payment (such value so reduced, the "Non-NAS Percentage-Reduced Claim"); *provided, however*, that if there is a reduction in the Non-NAS Payment Percentage, the PI Trustee, in his or her sole discretion, may cause the Non-NAS PI Trust to pay a Non-NAS PI Claim based on the Non-NAS Payment Percentage that was in effect prior to the reduction if the judgment in respect of such Non-NAS PI Claim became a Final Judgment prior to the date on which the PI Trustee proposes the new Non-NAS Payment Percentage to the Oversight Committee and the processing of such Non-NAS PI Claim was unreasonably delayed due to circumstances beyond the control of the Non-NAS PI Claimant or the Claimant's Counsel (as applicable).

## § 5.    ADJUSTMENT OF THE NON-NAS PAYMENT PERCENTAGE.

The Non-NAS Payment Percentage shall be subject to change if the PI Trustee (with the assistance of the Claims Administrator), with the consent of the PI Trust's oversight committee (the "Oversight Committee"), determines that an adjustment is required. No less frequently than once every three (3) years, commencing with the date that is three (3) years after the Effective Date of the Plan, the PI Trustee (with the assistance of the Claims Administrator) shall reconsider the then-applicable Non-NAS Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration and with the consent of the Oversight Committee, change the Non-NAS Payment Percentage if necessary with the consent of the Oversight Committee. The PI Trustee shall reconsider the then-applicable Non-NAS Payment Percentage at shorter intervals if he or she deems such reconsideration to be appropriate or if requested to do so by the Oversight Committee.

The PI Trustee shall base his or her determination of the Non-NAS Payment Percentage on current estimates of the number, types, and values of Non-NAS PI Channeled Claims, the value of the assets of the PI Trust Non-NAS Fund available for the payment of Non-NAS Allowed PI Channeled Claims pursuant to the Non-NAS PI TDP and amounts due and estimated to become due pursuant to the Non-NAS PI TDP in respect to of Final Judgments obtained by Non-NAS PI Claimants who elect to liquidate their Non-NAS PI Claims in the tort system, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of (i) full value to all Holders of Allowed Non-NAS PI Channeled Claims and (ii) the Non-NAS Maximum Value to Non-NAS PI Claimants who elect to liquidate their Non-NAS PI Claims in the tort system. When making these determinations, the PI Trustee (with the assistance of the Claims Administrator) shall exercise common sense and flexibly evaluate all relevant factors.

If a redetermination of the Non-NAS Payment Percentage has been proposed in writing to the Oversight Committee by the PI Trustee, but such redetermination of the Non-NAS Payment Percentage has not yet been adopted by the Oversight Committee, a Non-NAS PI Claimant that has obtained a Final Judgment shall receive the lower of the then-current Non-NAS Payment Percentage and the proposed Non-NAS Payment Percentage. However, if the proposed Non-NAS Payment Percentage is the lower amount but is not subsequently adopted by the Oversight Committee, the Non-NAS PI Claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed Non-NAS Payment

Percentage is the higher amount and subsequent adopted, the Non-NAS PI Claimant who has obtained a Final Judgment shall thereafter receive the difference between the current amount and the higher adopted amount.

At least thirty (30) days prior to proposing in writing to the Oversight Committee a change in the Non-NAS Payment Percentage, the PI Trustee shall post to the PI Trust's website a notice indicating the PI Trustee is reconsidering the Non-NAS Payment Percentage.

If the PI Trustee (with the assistance of the Claims Administrator), with the consent of the Oversight Committee, makes a determination to increase the Non-NAS Payment Percentage due to a material change in estimates of the future assets and/or liabilities of the PI Trust Non-NAS Fund, the Claims Administrator shall make supplemental payments to all Non-NAS PI Claimants who obtained previously a Final Judgment and received payments based on a lower Non-NAS Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the Non-NAS PI Channeled Claim in question multiplied by the newly-adjusted Non-NAS Payment Percentage, less all amounts paid previously to the Non-NAS PI Claimant ~~with~~in respect of such Non-NAS PI Channeled Claim.

The PI Trust's obligation to make a supplemental payment to a Non-NAS PI Claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment/payments that was/were also suspended because it/they would have been less than $100.00. However, the PI Trust's obligation shall resume, and the PI Trust shall pay any such aggregate supplemental payments due to ~~the~~such Non-NAS PI Claimant ~~that obtained a Final Judgment,~~ at such time that the total exceeds $100.00.

## § 6.    PAYMENT OF JUDGMENTS FOR MONEY DAMAGES.

A Non-NAS PI Claimant who obtains a Final Judgment shall be entitled to receive from the PI Trust Non-NAS Fund in full and final satisfaction of that Final Judgment, a gross amount (subject to deductions set forth next) equal to the *lesser* of (i) the Non-NAS Percentage-Reduced Claim and (ii) the Non-NAS Maximum Value, in each case as then in effect ~~on the date of the pending payment,~~(as described next) (such lesser amount, the "Non-NAS Gross Amount"). A Non-NAS PI Claimant's Non-NAS Gross Amount shall be subject to the following deductions and holdbacks: (A) its pro rata share of the ~~operating expenses~~Creditor Trust Operating Expenses of the PI Trust; (B) amounts necessary to settle liens held by private insurance companies against such amount, if any; (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of the federal healthcare programs like Medicare, Tricare, VA, or Medicaid against such amount, if any; (D) its pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, as and to the extent provided in the PI Trust Agreement, subject to Section 5.8(g) of the Plan~~and the Trust Agreement~~, and (E) the common benefit assessment required under Section 5.8(c) of the Plan, and the fees and costs of such Non-NAS PI Claimant's individual attorney(s) in the Chapter 11 Cases, if any, which deduction shall be taken by such individual attorney and

reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan.[8] The resulting net amount shall be paid to the Non-NAS PI Claimant in the form of an initial payment not to exceed $3,500.00 and five (5) additional equal installments in years six (6) through ten (10) following the year of the initial payment; *subject, however*, to the prior satisfaction of healthcare liens as set forth in Section 7 below. In no event shall interest be paid in respect of any judgment obtained in the tort system.

None of the Non-NAS Percentage-Reduced Claim, the Non-NAS Maximum Value, the Non-NAS Gross Amount, the deductions therefrom, or the payment schedule is subject to any appeal or reconsideration.

## § 7.    RESOLUTION OF HEALTH CARE LIENS.

The PI Trust shall not issue any payment in respect of a Final Judgment until the Claims Administrator has received proof to his or her reasonable satisfaction that any private or governmental health carehealthcare liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

## § 8.    APPLICABILITY OF SPECIAL PROCEDURES FOR MINORS AND HEIRS.

The special procedures set forth in Exhibit G to the Non-NAS PI TDP shall apply to all Non-NAS PI Claimants who are minors under applicable law and elect, subject to the terms hereof, to liquidate their Non-NAS PI Claims by commencing a lawsuit in the tort system. Anyone seeking a Distribution from the PI Trust in theirhis or her capacity as an heir must execute and submit the applicable Heirship Declaration attached to the Non-NAS PI TDP as Exhibit F.[98]

---

[8] Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

[98] Exhibit F contains two declaration forms. One applies if the Decedent named the Non-NAS PI Claimant as executor in his/her will; the other applies if the Decedent had no will.

<u>EXHIBIT C</u>

<u>PROCEDURE FOR DEFICIENCIES AND APPEALS FOR
THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE
FOR NON-NAS PI CLAIMS</u>

These procedures apply only to PI Channeled Claims liquidated under sections 6 through 9 (inclusive) of the PI Trust Distribution Procedure for Non-NAS Claims (the "<u>Non-NAS PI TDP</u>"), and are not available for NAS PI Claims or for any PI Claims liquated in the tort system.

**1.01    Curing Deficiencies.**  If the Claims Administrator[1] determines that a claim submitted pursuant to the Non-NAS PI TDP is incomplete, (s)he will notify the PI Claimant and afford a 14-day period to cure any such deficiency.  Such deficiencies include, but are not limited to, failure to sign the Claim Form (Exhibit A to the Non-NAS PI TDP), failure to complete the Claim Form, failure to execute a HIPAA authorization (Exhibit D to the Non-NAS PI TDP), or submission of a declaration that fails to meet the requirements of § 5 of the Non-NAS PI TDP.  If the deficiency is timely cured to the satisfaction of the Claims Administrator, no deduction or penalty will be assessed to an otherwise qualifying Claim.  If the deficiency is not timely cured, or not cured at all, the Claims Administrator, depending on the nature of the deficiency, has the authority to prevent the Non-NAS PI Claimant from receiving all or part of any award (s)he would otherwise be entitled to.

**1.02    Appeals to the Claims Administrator.**  If a PI Claimant is dissatisfied with his/her award determination pursuant to the Non-NAS PI TDP or a determination by the Claims Administrator thereunder to limit or prohibit an award pursuant to the deficiency process described in Section 1.01 above <u>or any other determination made by the Claims Administrator under the Non-NAS PI TDP</u>, (s)he can appeal to the Claims Administrator within fourteen (14) days of receiving notice of such Claims Administrator determination by submitting a written document clearly marked as "Appeal to Claims Administrator." In that document, the Non-NAS PI Claimant should identify the determination with which the Non-NAS PI Claimant disagrees and state the reasons for the disagreement. The Non-NAS PI Claimant may submit any additional documentation (s)he wishes to have considered.  Only one appeal is permitted per Proof of Claim.  The Claims Administrator shall conduct a de novo review and promptly issue a ruling in writing to the Non-NAS PI Claimant and/or his/her counsel, as applicable.  In the event that the Claims Office determines that the records submitted in support of the Non-NAS PI Claimant's claim are unreliable, the Notification of Status letter shall advise the Non-NAS PI Claimant of such determination and shall identify the particular records or statements that are deemed unreliable.  The Claims Administrator shall not change the Non-NAS PI TDP allowance criteria.  The Non-NAS PI Claimant shall have the right to appeal any such determination to the Appeals Master as set forth in Section 1.03 herein.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Non-NAS PI TDP.

1

**1.03**    **Appeals to Appeals Master.**   PI Claimants who disagree with the ruling of the Claims Administrator may appeal to the Appeals Master within fourteen (14) days of notice of such ruling by submitting a written statement outlining the Non-NAS PI Claimant's position and why he/she believes the Claims Administrator has erred.   An appeal fee of $1,000 shall be assessed against the Non-NAS PI Claimant's recovery from the PI Trust regardless of the outcome of the appeal.   The Appeals Master shall review only the appeal record and claim file in deciding the appeal.   The Appeals Master shall apply the guidelines and procedures established in the Non-NAS PI TDP, and the appeals process shall not result in any modification of substantive eligibility criteria.   The Appeals Master shall issue a determination on the appeal in writing, which shall be served on the Non-NAS PI Claimant (and his/her counsel, where applicable) and the Claims Administrator.   Decisions of the Appeals Master pursuant hereto are final and binding, and Non-NAS PI Claimants have no further appeal rights beyond those set forth herein.

## EXHIBIT G

## DISTRIBUTIONS TO OR FOR THE BENEFIT OF MINOR CLAIMANTS FOR THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE[1]

The following procedures apply to any PI Claimant who is a minor under applicable law (a "Minor Claimant") for so long as the PI Claimant remains a minor under applicable law.  These procedures apply regardless of whether the Minor Claimant holds ~~a~~an NAS PI Claim or a Non-NAS PI Claim, and regardless of whether the Minor Claimant's Proxy (as defined below) elects to have that PI Claim liquidated under the PI TDP[2] or to pursue it in the tort system.

1.  **Actions by Proxy of Minor Claimant.**  A Minor Claimant's custodial parent, his/her legal guardian under applicable law (a "Guardian"), or an adult providing custody and care to the minor (any of the foregoing acting on behalf of the Minor Claimant, the "Proxy") is authorized to make submissions on behalf of the Minor Claimant under the PI TDP, subject to paragraph 2 below.  The Proxy shall be responsible for submitting, on behalf of such Minor Claimant, all required forms under the PI TDP, including the Claim Form, as well as any evidence required by the PI Trust to support the Claim Form, and any other documentation required or requested pursuant to the PI TDP.  The Proxy is authorized to take, on behalf of a Minor Claimant, all actions under the PI TDP that the Minor Claimant would be authorized to take if such Minor Claimant were an adult, other than receiving distributions from the PI Trust (unless so authorized by paragraph 5 below).  These actions include, where permitted, making an opt-out or, if the Minor

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PI Trust Distribution Procedure ("PI TDP").

[2] "PI TDP" refers to either the NAS PI TDP or the Non-NAS PI TDP, as applicable for any particular PI Claimant.

Claimant is a Non-NAS PI Claimant, making a payment election or requesting an appeal pursuant to Exhibit C to the Non-NAS PI TDP.

2. **Establishing Proxy of a Minor Claimant**. Any purported Proxy making a submission to the PI Trust on behalf of a Minor Claimant shall include along with such submission documentation of his/her authority to act on behalf of the Minor Claimant, consisting of the following:

   a. If the purported Proxy is the Guardian of the Minor Claimant, then the court order appointing that Proxy as Guardian, or other documents reasonably acceptable to the Claims Administrator as sufficient under applicable law to evidence the guardianship.

   b. If the purported Proxy is the custodial parent of the Minor Claimant, then a sworn statement that such Proxy is the custodial parent of the Minor Claimant.

   c. If the purported Proxy is neither the Guardian nor custodial parent of the Minor Claimant, then a sworn statement by the purported Proxy that he/she is providing custody and care to the Minor Claimant, stating for how long he/she has been providing such care and custody, explaining his/her relationship to the Minor Claimant and the circumstances around the provision of care and custody, as well as a statement and/or records from one or more of the following in support of his/her sworn statement:

      1. Minor Claimant's school

      2. Purported Proxy's landlord or property manager

      3. Minor Claimant's health provider

      4. Minor Claimant's child care provider

5.  Purported Proxy's placement agency

6.  Governmental social services agency

7.  Indian tribe officials

8.  Purported Proxy's Employer

Whether the purported Proxy is a Guardian, custodial parent, or neither, the Claims Administrator may require additional corroborating evidence at his discretion, including in the event that instructions are received from more than one purported Proxy for the same Minor Claimant.

3.  **Distributions to Minor Claimants.**    When the PI Trust has determined the final distributable amount on a Minor Claimant's claim, it will send notice of such final amount to the Minor Claimant's Proxy and counsel (if known).  Such notice will include a letter inviting the Proxy to discuss how the distributable amount was determined, and the Claims Administrator will take reasonable steps to ensure that the Proxy understands how such amount was determined.  Any distributions owing to a Minor Claimant that are ready for issue by the PI Trust at a time when the Minor Claimant is still a minor under applicable law shall be (i) used to pay the individual attorneys' fees of the Minor Claimant pursuant to paragraph (4) below and (ii) with respect to the remainder, paid into an interest-bearing sub-fund of the Trust (the "Minor Claimants Account"), held there for the sole benefit of the Minor Claimant, and invested in a U.S. governmental money-market fund until such funds are distributed pursuant to Section 5 below or until the Minor Claimant becomes an adult under applicable law (the "Adult Distribution Date"), at which time the amount then held in such account (including interest earned) shall be

paid directly to such PI Claimant.  Pending distributions for all Minor Claimants may be held in the same sub-fund.

4. **Payments of attorneys' fees.**

Within a reasonable period following receipt of ~~Notice~~notice of the final distributable amount on Minor Claimant's PI Channeled Claim, and using forms to be provided by the Claims Administrator, the Minor Claimant's counsel shall submit to the PI Trust, with a copy to the Proxy, a request for payment of legal fees and expenses from the Minor's recovery.  It is the Minor Claimant's attorney's duty to comply with all ethical and legal rules respecting such legal fees and expenses, and the Claims Administrator is permitted to rely upon such representation in issuing payments in respect of such fees and expenses. Absent objection from the Proxy with respect to such asserted fees and expenses, the Claims Administrator shall remit payment to the Minor Claimant's attorney in accordance with the latter's request.

5. **Early Distributions.**  Funds held in the Minor Claimants Account for a Minor Claimant may be released prior to the Adult Distribution Date only pursuant to (a) an order of a U.S. court of general jurisdiction in the Minor Claimant's state of residence, or (b) an order entered by the United States Bankruptcy Court for the Southern District of New York.[3]

---

[3] Early distributions mechanic under review.

## **Exhibit J**

NAS PI Trust Distribution Procedures

## INDIVIDUAL PURDUE PHARMA LP
## PI TRUST DISTRIBUTION PROCEDURE FOR NAS PI CHANNELED CLAIMS

## § 1.    APPLICABILITY AND SUBMISSION INSTRUCTIONS.

This trust distribution procedure for NAS PI Channeled Claims (as defined below) (the "NAS PI TDP") sets forth the manner in which NAS PI Channeled Claims may become eligible for payments from, and shall be fully discharged by, the PI Trust.[1] Distributions in respect of NAS PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust NAS Fund to Holders of NAS PI Channeled Claims on the terms set forth herein.

Pursuant to the Plan and the Master TDP, the following claims (the "NAS PI Channeled Claims") will be channeled to, and liability therefore shall be assumed by, the PI Trust as of the Effective Date of the Plan: (i) all NAS PI Claims, which are claims against any Debtor for alleged opioid-related personal injury to an NAS Child or similar opioid-related claims or Causes of Action against any Debtor asserted by or on behalf of an NAS Child, and that arose prior to the Petition Date, and that are not (A) a Third-Party Payor Claim, an NAS Monitoring Claim or a Hospital Claim, or (B) held by a Domestic Governmental Entity, and (ii) all Released Claims or Shareholder Released Claims that are claims for alleged opioid-related personal injury to an NAS Child or that are similar opioid-related claims or Causes of Action asserted by or on behalf of an NAS Child, and that arose prior to the Petition Date, and that are not (A) Third-Party Payor Channeled Claims, NAS Monitoring Channeled Claims or Hospital Channeled Claims or (B) held by a Domestic Governmental Entity. NAS PI Channeled Claims shall be administered, liquidated and discharged pursuant to this NAS PI TDP, and satisfied solely from the PI Trust NAS Fund (as defined below). Holders of NAS PI Channeled Claims are referred to herein as "NAS PI Claimants."

NAS PI Channeled Claims liquidated under this NAS PI TDP shall be (i) Allowed or Disallowed (such NAS PI Channeled Claims so Allowed, "Allowed NAS PI Channeled Claims") and, for Allowed NAS PI Channeled Claims, (ii) liquidated to determine the gross amounts receivable thereon (an "Award"), in each case pursuant to the terms of this NAS PI TDP.

An Award for an NAS PI Channeled Claim liquidated hereunder will be a gross number before deduction of the following "PI Trust Deductions and Holdbacks": (A) a pro rata share of the operating expenses of the PI Trust; (B) amounts held back under the Lien Resolution Program (the "LRP Agreement") to settle liens held by private insurance companies against that Award, if any; (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of the federal healthcare programs like Medicare, Tricare, VA, or Medicaid against that Award, if any; (D) a pro rata share of the compensation,

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 2967] (the "Plan") in the chapter 11 cases of Purdue Pharma L.P. and its Debtor affiliates (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to <u>Section 5.8(g)</u> of the Plan; and (E) the common benefit assessment required under Section 5.8(c) of the Plan, and the fees and costs of the NAS PI Claimant's individual attorney(s) in the Chapter 11 Cases, if any, reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan.[2] In addition to the deductions and holdbacks described above, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

This NAS PI TDP sets forth what evidence and forms you must submit in order to be eligible to receive an Award. Forms may be completed online at the PI Trust's website, www._____.com, or by mailing back the completed forms to the PI Trust at the below address. Evidence in support of your NAS PI Claim should be submitted to [____].[3]

---

**ELECTION TO LIQUIDATE NAS PI CLAIM IN THE
TORT SYSTEM RATHER THAN UNDER THIS NAS PI TDP**

**An NAS PI Claimant who (i) timely filed a Proof of Claim in the Chapter 11 Cases prior to the General Bar Date asserting his/her NAS PI Claim against one or more Debtors and (ii) elects expressly, by timely submission of the NAS PI Claim Form attached hereto as Exhibit A, to liquidate his/her NAS PI Claim in the tort system rather than pursuant to the streamlined liquidation procedures set herein (a "<u>NAS Opt-Out Claimant</u>"), may assert and liquidate such NAS PI Claim in the tort system at his/her own expense, as set forth in more detail in Exhibit B, and shall forfeit all rights to liquidate such NAS PI Claim (and any associated NAS PI Channeled Claims regarding the same injuries that are the same subject of its NAS PI Claim) under the streamlined procedures set forth in this NAS PI TDP. The right to litigate in the tort system is available only with respect to Claims that meet the definition of "PI Claim" set forth in the Plan.**

**OPTING OUT REQUIRES YOU TO TAKE THE AFFIRMATIVE ACTION OF CHECKING THE "OPT OUT" BOX ON THE NAS PI CLAIM FORM AND TIMELY SUBMITTING YOUR NAS PI CLAIM FORM TO THE PI TRUST. FAILURE TO TIMELY SUBMIT THE NAS PI CLAIM FORM SHALL CONSTITUTE CONSENT TO HAVE YOUR NAS PI CHANNELED CLAIMS LIQUIDATED PURSUANT TO THE PROVISIONS OF THIS NAS PI TDP.**

---

## § 2.    ALLOCATION OF FUNDS; CLAIMS ADMINISTRATOR.

(a)    Allocations of Funds to the PI Trust and Further Allocation to the PI Trust NAS Fund and the PI Trust Non-NAS Fund.

---

[2]    If you have an individual attorney, then your attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from your Award.

[3]    Submission instructions to be added after solicitation.

Under the Plan, the PI Trust will receive a gross amount of between $700 million and $750 million (minus amounts distributed directly to the United States under the United States-PI Claimant Medical Expense Claim Settlement), in the form of an initial installment of $300 million on the Effective Date of the Plan and subsequent installments, in each case subject to the United States-PI Claimant Medical Expense Claim Settlement. The PI Trust shall establish a fund to pay NAS PI Channeled Claims (the "PI Trust NAS Fund"); and a fund to pay Non-NAS PI Channeled Claims (the "PI Trust Non-NAS Fund"), and shall allocate each distribution it receives under the Plan as follows: (i) 6.43% to the PI Trust NAS Fund, up to an aggregate maximum of $45 million, and (ii) the remainder to the PI Trust Non-NAS Fund, in each case subject to applicable PI Trust Deductions and Holdbacks.

        (b)     Claims Administrator.

            (i)     The PI Trust shall be established in accordance with § 5.7 of the Plan to (1) assume all liability for the PI Channeled Claims, (2) hold the MDT PI Claim and collect the Initial PI Trust Distribution and payments due under the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents, (3) administer, process, resolve and liquidate PI Channeled Claims, (4) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents (including this NAS PI TDP), (5) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement and (6) carry out such other matters as are set forth in the PI Trust Documents.[4] The trustee of the PI Trust (the "Trustee"), Edgar Gentle III, of Gentle, Turner, Sexton & Harbison, LLC, will serve as claims administrator (the "Claims Administrator") to carry out the duties of the Trustee as set forth in the Plan and PI Trust Documents.[5]

---

[4]    The PI Trust Agreement shall provide that the Trustee shall have the power to appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of the PI Trust Agreement, this NAS PI TDP, the Non-NAS PI TDP, and the LRP Agreement, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents.

[5]    The PI Trust Agreement shall provide that the Trustee shall receive a retainer from the PI Trust for his service as a Trustee in the amount of $150,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the PI Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour. For all non-working travel time in connection with PI Trust business, the Trustee shall receive the sum of $200 per hour. The Trustee shall record all hourly time to be charged to the PI Trust. The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the PI Trust's oversight committee, appropriately adjusted by the Trustee for changes in the cost of living. The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

(ii)    The Trustee and the Claims Administrator[6] shall determine, pursuant to the requirements set forth herein, the Allowance or Disallowance of all NAS PI Channeled Claims liquidated under this NAS PI TDP. Distributions hereunder are determined only with consideration to an NAS PI Claim held against the Debtors, and not to any associated NAS PI Channeled Claim against a non-Debtor party. However, any Distribution to an NAS PI Claimant on account of his/her NAS PI Claim is deemed to be a distribution in satisfaction of <u>all</u> NAS PI Channeled Claims held by such NAS PI Claimant with respect to the injuries that are the subject of his/her NAS PI Claim. The Claims Administrator may investigate any such claim, and may request information from any NAS PI Claimant to ensure compliance with the terms outlined in this document. For NAS PI Claimants who execute the required HIPAA forms attached hereto as Exhibit C, the Claims Administrator also has the power to directly obtain such NAS PI Claimant's medical records.

## § 3.    INITIAL NAS PI CHANNELED CLAIM ALLOWANCE.

For an NAS PI Channeled Claim that is being liquidated pursuant to the streamlined procedures set forth in this NAS PI TDP to be Allowed, the applicable NAS PI Claimant must, with respect to that NAS PI Channeled Claim:

(a)    Hold such NAS PI Channeled Claim against one or more Debtors;

(b)    Have already timely[7] filed an individual personal injury Proof of Claim against one or more Debtors in the Chapter 11 Cases asserting his/her NAS PI Claim against one or more Debtors;

(c)    Demonstrate by Competent Evidence (as defined below) a diagnosis by a licensed medical provider of a medical, physical, cognitive or emotional condition resulting from the NAS Child's intrauterine exposure to opioids or

---

[6]    As the same individual is serving as both Trustee and Claims Administrator, reference to actions by each reference Mr. Gentle acting in such respective capacity.

[7]    If the Proof of Claim was filed after the General Bar Date but before April 23, 2021, the Claims Administrator shall consider the NAS PI Channeled Claim without penalty. If the Proof of Claim was filed on April 23, 2021 or after, the NAS PI Channeled Claim asserted by such Proof of Claim shall be Disallowed unless (i) the Claims Administrator determines, which determination shall be on a case-by-case basis, that good cause exists to treat the late-filed NAS PI Channeled Claim as if it were timely filed, or (ii) the Bankruptcy Court so orders. Notwithstanding this deadline, in addition to the other requirements herein, up to 274 late-filed Claims filed by NAS PI Claimants who appear on the West Virginia NAS Birth Score Program and are represented by the WV NAS Ad Hoc Group ("<u>WV NAS Claimants</u>") and who demonstrate the following to the satisfaction of the Claims Administrator shall be considered as if their Claim had been timely filed: (1) that the Claimant is a WV NAS Claimant, (2) that a Proof of Claim was filed in the Chapter 11 Cases by or on behalf of such WV NAS Claimant prior to April 15, 2021, and (3) a sworn declaration from the parent/guardian/custodian of such WV NAS Claimant that such parent/guardian/custodian did not know about the Chapter 11 Cases or Bar Date prior to the Bar Date.

opioid replacement or treatment medication, including but not limited to the condition known as neonatal abstinence syndrome ("<u>NAS</u>"). The diagnosis can be made by any licensed medical professional, specifically including physicians, nurses, physician assistants, mental health counselor or therapist, or professional at a rehabilitation center. Only NAS PI Claims based on injuries or facts occurring prior to the filing of your NAS PI Claim Form are eligible for recovery.

(d)     Complete, sign and submit the NAS PI Claim Form attached hereto as Exhibit A by the date that is 150 days[8] after the NAS PI Claim Form is disseminated[9] to NAS PI Claimants;[10]

(e)     Complete, sign and submit the two HIPAA consent forms attached hereto as Exhibit C; and

(f)     If the NAS PI Channeled Claim concerns the injuries of a decedent, then also execute and submit the appropriate Heirship Declaration attached hereto as Exhibit D.[11]

Any NAS PI Claimant who satisfies all of the above requirements (a)-(f) with respect to a given NAS PI Channeled Claim shall have that NAS PI Channeled Claim Allowed.

**If an NAS PI Claimant does not satisfy these requirements with respect to an NAS PI Channeled Claim that is being liquidated under the liquidation provisions of this NAS PI TDP, INCLUDING THE REQUIREMENT TO TIMELY SUBMIT HIS/HER NAS PI CLAIM FORM AND ANY NECESSARY ACCOMPANYING EVIDENCE, then such NAS PI Channeled Claim shall be Disallowed.**

**Regardless of whether you elect to "opt out" or to have your claim liquidated under this NAS PI TDP, you must complete the NAS PI Claim Form as instructed by the deadline, which is 150 days[12] after the NAS PI Claim Form is disseminated. Failure to timely submit the NAS PI Claim Form (and any required supporting evidence) will result in your claim being disallowed. In other words, if you do nothing, you will not receive any compensation from the PI Trust.**

---

[8]   Subject to extension in the discretion of the Claims Administrator.

[9]   Within 60 days after Effective Date, the NAS PI Claim Form will be made available to NAS PI Claimants electronically and, if an NAS PI Claimant is a pro se claimant, also mailed to such NAS PI Claimant in physical copy. When disseminated, the NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the NAS PI Claim Form must be returned.

[10]  If the NAS PI Claimant checks the box on the NAS PI Claim Form indicating his/her election to liquidate his/her NAS PI Claim in the tort system rather than under the liquidation provisions of this NAS PI TDP, then such NAS PI Claim will not be liquidated hereunder.

[11]  Exhibit D contains two declaration forms. One applies if the decedent named the person filing the NAS PI Claim Form as executor in his/her will; the other applies if the decedent had no will.

[12]  Subject to extension in the discretion of the Claims Administrator.

5

## § 4.    COMPETENT EVIDENCE REQUIRED.

(a)    To receive a recovery on his/her NAS PI Claim, an NAS PI Claimant must submit one of the following forms of evidence ("Competent Evidence"):

(i)    A document from a licensed medical provider diagnosing the NAS Child with a medical, physical, cognitive or emotional condition resulting from the NAS Child's intrauterine exposure to opioids or opioid replacement or treatment medication, including but not limited to the condition known as NAS;

(ii)    A document from a licensed medical provider affirming that the NAS Child had Neonatal Opioid Withdrawal Syndrome ("NOWS"); or

(iii)    Other medical records evidencing that the NAS Child had an NAS diagnosis, including post-natal treatment for symptoms caused by opioid exposure, symptoms of post-natal withdrawal from opioids, medical scoring for NAS or NOWS which is positive or indicates fetal opioid exposure, a positive toxicology screen of the birth mother or infant for opioids or opioid-weaning drugs, or a maternal diagnosis of opioid use disorder by the birth mother.

(b)    The Claims Administrator shall have discretion to determine whether these evidentiary requirements have been met, including whether the forms of evidence submitted constitute Competent Evidence.[13] Any NAS PI Claimant who fails to meet these requirements is not entitled to any payment.

(c)    The Claims Administrator shall have the discretion to request additional relevant documentation believed to be in the possession of the NAS PI Claimant or his or her authorized agent or lawyer. The Claims Administrator has the sole discretion to Disallow, or to reduce or eliminate Awards on, claims being liquidated hereunder where he concludes that there has been a pattern and practice to circumvent full or truthful disclosure under this § 4.

(d)    If the Claims Administrator determines that an NAS PI Claim Form or accompanying evidence submitted hereunder is incomplete, he will notify the NAS PI Claimant and afford a 30-day period to cure any such deficiency. Such deficiencies include, but are not limited to, failure to sign or complete the NAS PI Claim Form, failure to execute the required HIPAA authorizations, or failure to submit qualifying evidence. If the deficiency is timely cured to the satisfaction of

---

[13]    Competent Evidence necessary for Allowance of an NAS PI Claim is evidence, in the opinion of the Trustee, that establishes that the occurrence of a diagnosis of NAS with respect to an NAS PI Claimant is more likely true than not true, *i.e.* a probability standard. Competent Evidence requires more than a mere possibility or scintilla of truth, but such standard does not require proof that rises to the level of clear and convincing evidence. However, notwithstanding anything to the contrary in this NAS PI TDP, proof of a prescription of an opioid product shall not be required.

the Claims Administrator, no deduction or penalty will be assessed to an otherwise qualifying NAS PI Channeled Claim. If the deficiency is not timely cured, or not cured at all, the Claims Administrator, depending on the nature of the deficiency, has the authority to prevent the NAS PI Claimant from receiving all or part of any Award (s)he would otherwise be entitled to on such NAS PI Channeled Claim.

## § 5.   AWARDS.

The money available in the PI Trust NAS Fund for distribution to NAS PI Claimants shall be divided equally among the Allowed NAS PI Channeled Claims and allocated as equal gross awards to the Holders of such Allowed NAS PI Channeled Claims. The PI Trust may issue Distributions on account of Allowed NAS PI Channeled Claims in installments as funds are received by the PI Trust, or on account of installments pursuant to a court order. Because distributions to minors are to be held in trust until the minor becomes a legal adult (unless a competent court orders otherwise), it may take years before you have received all of your Award.

Your Distribution amount under the NAS PI TDP is a gross award that will be further reduced to pay the applicable PI Trust Deductions and Holdbacks. In addition, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

Although the Plan channels claims for all types of personal injury damages to the PI Trust, including both economic and non-economic or general damages, Awards issued hereunder compensate only general pain and suffering on account of the NAS Child's injuries. Because of limited funds, economic damages and punitive damages are not compensable.

## § 6.   BAR FOR PRIOR SETTLED CASES.

An NAS PI Claimant whose NAS PI Channeled Claim was reduced prior to the Petition Date to a settlement, judgment, or award against a Debtor shall be barred from receiving any Award under this NAS PI TDP on account of such NAS PI Channeled Claim and shall not recover from the PI Trust on account of such NAS PI Channeled Claim.

## § 7.   SPECIAL PROCEDURES IN RESPECT OF MINORS.

For NAS PI Claimants who are minors under applicable law, the special procedures set forth in Exhibit E hereto also apply and shall supplement the procedures set forth in this NAS PI TDP.

## § 8.   FAIRNESS AUDITS AND FRAUD PREVENTION.

The Claims Administrator will use appropriate technology and strategies to prevent paying fraudulent claims while making the claims process as simple as possible. Reasonable steps will be taken to mitigate fraud so as to ensure a fair and secure claims review and payment process, while not falsely flagging legitimate NAS PI Channeled Claims. Among the techniques will be technology to prevent claims submitted by BOTS, unique NAS PI Claimant identification

numbers, and strategic NAS PI Claim Form fields. Periodic fairness audits will be conducted on samples of NAS PI Channeled Claims to ensure that they are being evaluated and paid fairly.

## § 9.    APPEALS.

If an NAS PI Claimant is dissatisfied with any determination made by the Claims Administrator with respect to his or her NAS PI Channeled Claim, (s)he can appeal to the Claims Administrator within fourteen (14) days of receiving notice of such Claims Administrator determination by submitting a written document clearly marked as "Appeal to Claims Administrator." In that document, the NAS PI Claimant should identify the determination with which the NAS PI Claimant disagrees and state the reasons for the disagreement. The NAS PI Claimant may submit any additional documentation (s)he wishes to have considered. Only one appeal is permitted per Proof of Claim. The Claims Administrator shall conduct a de novo review and promptly issue a ruling in writing to the NAS PI Claimant and/or his/her counsel, as applicable. In the event that the Claims Office determines that the records submitted in support of the NAS PI Claimant's claim are unreliable, the Notification of Status letter shall advise the NAS PI Claimant of such determination and shall identify the particular records or statements that are deemed unreliable. In evaluating such appeal, the Claims Administrator shall not change the NAS PI TDP allowance criteria.

NAS PI Claimants shall have no other appeal rights beyond those set forth in this Section 9. Determinations made by the Claims Administrator in the appeals process pursuant to this Section 9 shall be final and binding and are not subject to further appeal in any forum.

8

**<u>EXHIBIT A</u>**

**<u>SAMPLE CLAIM FORM FOR</u>**
**<u>THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION</u>**
**<u>PROCEDURE FOR NAS PI CLAIMS</u>**

# PURDUE PHARMA PI TDP
# NAS CLAIM FORM
# INSTRUCTIONS PAGE

**THIS IS A SAMPLE CLAIM FORM AND IS SUBJECT TO CHANGE. DO NOT COMPLETE THE FORM AT THIS TIME. A BLANK COPY OF THE FINAL FORM WILL BE AVAILABLE ONLINE AND BY MAIL FOR YOU TO COMPLETE AT THE APPROPRIATE TIME AFTER THE PURDUE PLAN OF REORGANIZATION HAS BEEN APPROVED AND GONE EFFECTIVE.**

This Purdue Bankruptcy Claim Form (the "Claim Form") must be completed for each NAS PI Claimant seeking to recover money from the Purdue Personal Injury Trust (the "PI Trust") on its NAS PI Channeled Claims.[1] IF YOU DO NOT TIMELY RETURN THIS CLAIM FORM AS INSTRUCTED, YOU WILL BE DEEMED TO HAVE CONSENTED TO HAVE YOUR NAS PI CHANNELED CLAIMS LIQUIDATED UNDER THE NAS PI TDP, AND YOUR CLAIMS WILL BE DISALLOWED UNDER THE NAS PI TDP FOR YOUR FAILURE TO TIMELY RESPOND.

If you represent the interests of an NAS Child and are seeking to recover money from the Purdue Personal Injury Trust (The "PI Trust") on account of an that NAS Child's NAS PI Channeled Claim, you must complete this Claim Form (the "Claim Form") and return the form to _____. If you do not complete the form, you will NOT qualify to receive funds on behalf of the child you represent.

If you believe that the NAS Child you represent holds multiple NAS PI Claims against the Debtors on account of multiple injuries, you should still submit only one Claim Form. One Claim Form submitted for a NAS PI Claim shall be deemed to be a Claim Form in respect of that NAS PI Claim and also any NAS PI Channeled Claims against a Released Person or Shareholder Released Person that are associated with that NAS PI Claim.

If you represent the interests of more than one NAS Child, you must file a Claim Form on behalf of each individual NAS Child. YOU CANNOT file one Claim Form on behalf of multiple children.

**Please follow the instructions of each section carefully to ensure that your Claim Form is submitted correctly.** Except as otherwise indicated, all words shall be given their ordinary, dictionary meaning. Submitting this Claim Form does not guarantee that you will receive payment from the PI Trust. Whether or not you receive payment depends on whether you make the additional required submissions, as set forth in the NAS PI TDP, and whether or not your claim meets the eligibility requirements set forth in the NAS PI TDP.

This Claim Form allows you to choose to "opt out" of the streamlined, expedited NAS PI TDP liquidation process with respect to any NAS PI Claim against one or more of the Debtors, and instead pursue that NAS PI Claim in the tort system by filing a lawsuit against the PI Trust at your own expense. However, you may litigate in court only with respect to a NAS PI Claim held against one or more Debtors, and may not litigate any other NAS PI Channeled Claims. If you select the "opt out" option, you will not be eligible to receive any distribution under the streamlined liquidation procedures of the NAS PI TDP. Furthermore, you will not be allowed to opt back in to the liquidation provisions of the NAS PI TDP if your lawsuit is unsuccessful in the tort system. In other words, if you lose your lawsuit, you cannot return to the NAS PI Trust and ask for money. And importantly, if you do obtain a judgment in a court against the PI Trust, that award will be subject to reduction pursuant to the

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Non-NAS PI TDP or, if not defined therein, then the meanings ascribed to them in the Chapter 11 Plan.

"opt out" procedures set forth in Exhibit B to the NAS PI TDP. See the procedures set forth in Exhibit B to the NAS PI TDP for more detail. YOU MAY ONLY OPT OUT BY CHECKING THE "OPT OUT" BOX AND TIMELY RETURNING THIS CLAIM FORM. FAILURE TO RESPOND DOES NOT CONSTITUTE OPTING OUT.

For those who do not "opt out:" If your claim is Allowed by the Claims Administrator of the PI Trust, your claim will be liquidated and paid according to the provisions of the NAS PI TDP. If your claim is Disallowed by the Claims Administrator, you will not receive a distribution from the PI Trust. All claimants whose NAS PI Channeled Claims are Allowed by the Claims Administrator shall receive an equal distribution from the PI Trust NAS Fund, subject to the deductions described in the NAS PI TDP.

By submitting this Claim Form and choosing to liquidate your NAS PI Claim under the NAS PI TDP, you are deemed to consent to the Lien Resolution Program, under which certain health insurance companies, known as "Third-Party Payors" or "TPPs," have agreed to resolve their claims against you and/or your recoveries under the NAS PI TDP for reduced amounts or, in some cases, by waiving their claims altogether. The LRP Agreement is attached as Exhibit [ ] to the [  ] Plan Supplement.

**Instructions for Submission**: You may complete and submit this Claim Form either online, at ███████, or by mailing back the completed Claim Form to █████████.

# PURDUE PHARMA PI TDP
# NAS CLAIM FORM

## PART ONE: PERSONAL INFORMATION OF NAS PI CLAIMANT AND HIS/HER REPRESENTATIVE

What is the Claim Number assigned to your claim by Prime Clerk? ████████████

**Section 1.A: Fill out the information of the NAS Child below:**

NAS Child's Name: ████████████████████

NAS Child's Date of Birth: ████████████████

NAS Child's Address: ███████████████████

NAS Child's Social Security Number: ████████████

**Section 1.B: Fill out your own information below:**

Your Name: ███████████████████

Your Date of Birth: ██████████████████

Your Address: ████████████████████

Your Social Security Number: ██████████████

Your Phone Number: ████████████████████

State whether you are the "natural parent," "legal guardian," or "other custodian" of the NAS Child: ████████████████

## PART TWO: "OPT OUT" OF LIQUIDATION UNDER THE NAS PI TDP PROCEDURE

If you would like to forfeit all rights to have the NAS PI Claimant's NAS PI Channeled Claims liquidated under the NAS PI TDP and instead pursue the NAS PI Claimant's NAS PI Claim by filing a lawsuit against the PI Trust in court at your own expense, check the following box and provide the additional information sought in this PART TWO. **WARNING:  Mark the box in this paragraph of PART TWO only if you elect to "opt out" of the NAS PI TDP liquidation process and instead pursue your NAS PI Claim in civil court through the tort system by filing a lawsuit in court at your own expense.**

☐    **I have checked this box to opt out of the liquidation procedures of the NAS PI TDP and the PI Trust NAS Fund.**

## PART THREE: MEDICAL PROVIDER INFORMATION  (skip this section if you elected to "opt out")

**Section 3.A:** This section concerns licensed medical providers who have diagnosed the NAS Child with any medical, physical, cognitive or emotional condition resulting from his/her intrauterine exposure to opioids or opioid replacement or treatment medication(s).  The diagnoses may include, but are not limited to, the condition known as neonatal abstinence syndrome ("NAS").  Fill out and provide the following information, if known:

| Name of Licensed Medical Provider | Address | City | State | Zip | Date of Diagnosis | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Section 3.B:**  Even if you do not know the information sought in Section 3.A, please include with your submission of this Claim Form Competent Evidence that a licensed medical provider has diagnosed the NAS PI Claimant with any medical, physical, cognitive or emotional condition resulting from the Claimant's intrauterine exposure to opioids or opioid replacement or treatment medication(s).  The diagnoses may include, but are not limited to, the condition known as neonatal abstinence syndrome ("NAS").  The diagnosis can be made by any medical professional, specifically including physicians, nurses, physician assistants, mental health counselors or therapists, or professionals at a rehabilitation center.  Evidence can include, among other things, medical records evidencing that the NAS Child had a NAS diagnosis, post-natal treatment for symptoms caused by opioid exposure, symptoms of post-natal withdrawal from opioids, medical scoring for NAS or NOWS which is positive or indicates fetal opioid exposure, a positive toxicology screen of the birth mother or infant for opioids or opioid-weaning drugs, or a maternal diagnosis of opioid use disorder by the birth mother.

**Section 3.C**: Was the NAS Child born in a medical facility? If so:

Name of the Facility where
the NAS Child was born: ___██████████████████████████___

Location (city and state)
where the NAS Child was born: ___██████████████████████___

---

## PART FOUR: MEDICAL LIENS (skip this section if you elected to "opt out")

**Section 4.A**: Did any insurance company pay for medical treatment for the NAS Child's opioid-related injuries?

Yes: ☐

No: ☐

**Section 4.B**: In the last 20 years, was the NAS Child eligible for coverage by any of the following, or did any of the following actually pay for his/her opioid-related health costs? Respond by writing "Yes" or "No" next to each insurance provider name, and provide the requested information as to each. If any insurance carrier who provided coverage to the opioid user is not identified, please fill in that carrier's information at the bottom of the chart.

| Type of Insurance | Yes/No | Street Address | Phone Number | Policy Number (if any) | Policy Holder | Dates of Coverage |
|---|---|---|---|---|---|---|
| Medicare | | | | | | |
| Medicaid | | | | | | |
| Tricare | | | | | | |
| VA | | | | | | |
| Champus | | | | | | |
| Private (Name Below): | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## PART FIVE: SIGNATURE (You must complete this Part Five regardless of your elections above)

**Please fill out and sign this section when you have completed this Claim Form.**

NAS Child's Name: _____

NAS Child's E-mail (if any): _____

NAS Child's Phone Number (if any): _____

Your Name:                    _____

Your E-mail:                  _____

Your Phone Number:            _____


I am including the evidence requested in Section 3.B above in my submission of this form: ☐


*I declare under penalty of perjury that the representations made and the information provided on this Claim Form are true, correct and complete to the best of my knowledge.*

 

*Signature of NAS PI Claimant or individual acting on behalf of the NAS PI Claimant*

<u>**EXHIBIT B**</u>

<u>**PROCEDURES FOR NAS PI CLAIMANTS WHO OPT TO LIQUIDATE
THEIR NAS PI CLAIMS IN THE TORT SYSTEM RATHER THAN UNDER THE
INDIVIDUAL PURDUE PHARMA LP NAS TRUST DISTRIBUTION PROCEDURE**</u>

The following procedures shall apply in the case of an NAS PI Claimant[1] who elects, subject to the terms hereof, to liquidate his or her NAS PI Claim by commencing a lawsuit in the tort system after so timely indicating on his or her NAS PI Claim Form. By so electing, such NAS PI Claimant forfeits any right to have his or her NAS PI Claim liquidated under the liquidation provisions of the NAS PI TDP, and instead shall have the right to liquidate his or her NAS PI Claim exclusively in the tort system. Only claims that meet the definition of "NAS PI Claim" under the Plan may be litigated in the tort system. The adjudication of an NAS PI Claim in the tort system shall be deemed to be an adjudication of that NAS PI Claim and any associated NAS PI Channeled Claims of the NAS PI Claimant regarding the same injuries that are the subject of his or her NAS PI Claim. Any Distribution from the PI Trust on a Final Judgment (as defined below) in respect of such NAS PI Claim, if any, shall be deemed to be a Distribution in satisfaction and conclusive resolution of such NAS PI Claim and such associated NAS PI Channeled Claims.

## § 1.    SUITS IN THE TORT SYSTEM.

If an NAS PI Claimant timely filed a proof of claim in the Chapter 11 Cases asserting his or her NAS PI Claim, then he or she may elect to liquidate such NAS PI Claim in the tort system rather than under the NAS PI TDP by checking the box so indicating on his or her NAS PI Claim Form, which NAS PI Claim Form must be filed by the date that is one hundred and fifty (150) days[2] after the applicable NAS PI Claim Form is disseminated to him/her.[3] If the NAS PI Claimant makes such election, then the NAS PI Claimant may file a lawsuit regarding only his or her NAS PI Claim (and no other claims) against only the PI Trust (and including no other parties as defendants) solely in the United States District Court for the Southern District of New York (the "<u>SDNY District Court</u>"),[4] unless such court orders pursuant to 28 USC § 157(b)(5) that such suit may be filed and tried in the United States District Court for the district in which the NAS PI Claim arose.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the NAS PI TDP or, if not defined in the NAS PI TDP, the meanings ascribed to such terms in the Plan.

[2]    Within sixty (60) days after Effective Date, the NAS PI Claim Form will be made available to NAS PI Claimants electronically and, if the NAS PI Claimant is a pro se claimant, also mailed to such NAS PI Claimant in physical copy. When disseminated, each NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the NAS PI Claim Form must be returned.

[3]    The filing of an NAS PI Claim Form indicating that an NAS PI Claimant has elected to liquidate his or her NAS PI Claim in the tort system shall have no effect on any federal or state statute of limitation or repose applicable to the NAS PI Claims asserted by such NAS PI Claimant.

[4]    The Debtors shall seek an order from the SDNY District Court requiring that lawsuits filed by Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system be filed and tried solely in the SDNY District Court pursuant to 28 U.S.C. § 157(b)(5).

Any such lawsuit shall be filed by the NAS PI Claimant in an individual capacity and not as a member or representative of a class, and no such lawsuit shall be consolidated with the lawsuit of any other plaintiff by, or on the motion of, any plaintiff.[5] All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[6]

Subject to the PI Trust's receipt of an NAS PI Claim Form so indicating that an NAS PI Claimant has elected to retain the option to file a lawsuit in the tort system as set forth above, NewCo and the Plan Administration Trust will establish and maintain, as necessary, a document reserve (the "PI Document Reserve") containing such materials as are necessary to such lawsuit as discovery material. Any such NAS PI Claimant will be provided access to the PI Document Reserve subject to agreeing to (i) a protective order acceptable to the PI Trustee, the Plan Administration Trustee, and NewCo, and (ii) to the extent that the materials deposited into the PI Document Reserve include any documents produced by the Shareholder Released Parties that are not included in the Public Document Repository in accordance with the Plan and the Shareholder Settlement Agreement (the "Shareholder Released Party Documents"), the Protective Order, which shall exclusively govern the terms of disclosure of the Shareholder Released Party Documents. Any such NAS PI Claimant who propounds on the PI Trust, NewCo, the Plan Administration Trustee, any other Creditor Trust, or any Debtor a request for additional documents or testimonial discovery must in such request (i) represent that such NAS PI Claimant has conducted a reasonable search of the PI Document Reserve and, if it has been established, the Public Document Repository, and believes, based on such reasonable search, that the documents, information, or testimony it seeks is not available in either the PI Document Reserve or the Public Document Repository, and (ii) state and explain the basis for the NAS PI Claimant's good faith belief that the additional discovery he or she seeks is relevant to such lawsuit. The PI Trust shall not be liable for any costs incurred by parties other than the PI Trust in connection with third-party discovery propounded by any party other than the PI Trust.[7]

If an NAS PI Claimant obtains a judgment on his or her NAS PI Claim in the tort system and such judgment becomes a final order (a "Final Judgment"), such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI Trust, subject to the limitations set forth in Section 2 below, as well as the applicable Payment Percentage and Maximum Value (each as defined below), as provided in Section 6 below, the deductions as set forth in Section 6 below, and the resolution of healthcare liens, as provided in Section 7 below.

---

[5]     The trustee of the PI Trust (the "PI Trustee") shall be empowered (i) to bring one or more consolidated actions against multiple Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system and (ii) to seek to consolidate multiple lawsuits commenced by individual Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system.

[6]     Among other things, the PI Trust shall be empowered to assert that the claim that is the subject of an NAS PI Claimant's lawsuit is not an "NAS PI Claim" within the meaning of the Plan.

[7]     In order to minimize costs incurred by the PI Trust in connection with third-party discovery, the PI Trustee shall be empowered to seek to consolidate discovery propounded by Holders of PI Claims or the PI Trust in multiple lawsuits commenced by individual Holders of PI Claims against the PI Trust.

## § 2.    LIMITATION ON DAMAGES AND ATTORNEYS' FEES.

Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any NAS PI Claim litigated against the PI Trust in the tort system.

## § 3.    NAS MAXIMUM VALUE.

Payment on a Final Judgment for an NAS Child shall not exceed $21,000 (the "NAS Maximum Value") which is estimated to be three times the maximum value that will be distributed under the NAS PI TDP for a given NAS PI Claim.

## § 4.    NAS PAYMENT PERCENTAGE.

A Final Judgment on an NAS PI Claim, minus any multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), interest, attorneys' fees or costs (including statutory attorneys' fees and costs) that may have been awarded as part of such Final Judgment, shall be subject to reduction by the same percentage that NAS PI Claims liquidated under the NAS PI TDP are reduced prior to payment. In other words, an NAS PI Claimant who elects to liquidate his or her NAS PI Claim in the tort system shall not be entitled to receive more than his or her pro-rata share of the value available for distribution to all NAS PI Channeled Claims entitled to a recovery pursuant to the NAS PI TDP. Subject to Section 5.2(c) of the Plan, the estimated awards for NAS PI Claims liquidated under the NAS PI TDP represent an estimated pro-rata percentage recovery by NAS PI Claimants holding Allowed NAS PI Channeled Claims of approximately 2% (such pro-rata percentage recovery as may be altered over time, the "NAS Payment Percentage"). The initial NAS Payment Percentage is 2%.

No holder of an NAS PI Claim who elects to liquidate his or her NAS PI Claim in the tort system shall receive a payment that exceeds the liquidated value of his or her NAS PI Claim multiplied by the NAS Payment Percentage in effect at the time of payment (such value so reduced, the "NAS Percentage-Reduced Claim"); *provided, however*, that if there is a reduction in the NAS Payment Percentage, the PI Trustee, in his or her sole discretion, may cause the NAS PI Trust Fund to pay an NAS PI Claim based on the NAS Payment Percentage that was in effect prior to the reduction if the judgment in respect of such NAS PI Claim became a Final Judgment prior to the date on which the PI Trustee proposes the new NAS Payment Percentage to the Oversight Committee and the processing of such NAS PI Claim was unreasonably delayed due to circumstances beyond the control of the NAS PI Claimant or the NAS PI Claimant's Counsel (as applicable).

## § 5.    ADJUSTMENT OF THE NAS PAYMENT PERCENTAGE.

The NAS Payment Percentage shall be subject to change if the PI Trustee (with the assistance of the Claims Administrator), with the consent of the PI Trust's oversight committee (the "Oversight Committee"), determines that an adjustment is required. No less frequently than once every three (3) years, commencing with the date that is three (3) years after the Effective Date of the Plan, the PI Trustee (with the assistance of the Claims Administrator) shall reconsider the then-applicable NAS Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration and with the consent of the Oversight Committee, change the NAS

3

Payment Percentage if necessary. The PI Trustee shall reconsider the then-applicable NAS Payment Percentage at shorter intervals if he or she deems such reconsideration to be appropriate or if requested to do so by the Oversight Committee.

The PI Trustee shall base his or her determination of the NAS Payment Percentage on current estimates of the number of NAS PI Channeled Claims, the value of the assets of the PI Trust NAS Fund available for the payment of Allowed NAS PI Channeled Claims pursuant to the NAS PI TDP and amounts due and estimated to become due pursuant to the NAS PI TDP in respect of Final Judgments obtained by NAS PI Claimants who elect to liquidate their NAS PI Claims in the tort system, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of (i) full value to all Holders of Allowed NAS PI Channeled Claims and (ii) the NAS Maximum Value to NAS PI Claimants who elect to liquidate their NAS PI Claims in the tort system. When making these determinations, the PI Trustee (with the assistance of the Claims Administrator) shall exercise common sense and flexibly evaluate all relevant factors.

If a redetermination of the NAS Payment Percentage has been proposed in writing to the Oversight Committee by the PI Trustee, but such redetermination of the NAS Payment Percentage has not yet been adopted by the Oversight Committee, a NAS PI Claimant that has obtained a Final Judgment shall receive the lower of the then-current NAS Payment Percentage and the proposed NAS Payment Percentage. However, if the proposed NAS Payment Percentage is the lower amount but is not subsequently adopted by the Oversight Committee, the NAS PI Claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed NAS Payment Percentage is the higher amount and subsequent adopted, the NAS PI Claimant who has obtained a Final Judgment shall thereafter receive the difference between the current amount and the higher adopted amount.

At least thirty (30) days prior to proposing in writing to the Oversight Committee a change in the NAS Payment Percentage, the PI Trustee shall post to the PI Trust's website a notice indicating the PI Trustee is reconsidering the NAS Payment Percentage.

If the PI Trustee (with the assistance of the Claims Administrator), with the consent of the Oversight Committee, makes a determination to increase the NAS Payment Percentage due to a material change in estimates of the future assets and/or liabilities of the PI Trust NAS Fund, the Claims Administrator shall make supplemental payments to all NAS PI Claimants who obtained previously a Final Judgment and received payments based on a lower NAS Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the NAS PI Channeled Claim in question multiplied by the newly-adjusted NAS Payment Percentage, less all amounts paid previously to the NAS PI Claimant in respect of such NAS PI Channeled Claim.

The PI Trust's obligation to make a supplemental payment to an NAS PI Claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment/payments that was/were also suspended because it/they would have been less than $100.00. However, the PI Trust's obligation shall resume, and the PI Trust shall pay any such aggregate supplemental payments due to such NAS PI Claimant, at such time that the total exceeds $100.00.

4

## § 6.    PAYMENT OF JUDGMENTS FOR MONEY DAMAGES.

An NAS PI Claimant who obtains a Final Judgment shall be entitled to receive from the PI Trust NAS Fund, in full and final satisfaction of that Final Judgment, a gross amount (subject to deductions set forth next) equal to the *lesser* of (i) the NAS Percentage-Reduced Claim (using the NAS Payment Percentage then in effect) and (ii) the NAS Maximum Value (such lesser amount, the "NAS Gross Amount"). A NAS PI Claimant's NAS Gross Amount shall be subject to the following deductions and holdbacks: (A) its pro rata share of the Creditor Trust Operating Expenses of the PI Trust; (B) amounts necessary to settle liens held by private insurance companies against such amount, if any; (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of the federal healthcare programs like Medicare, Tricare, VA, or Medicaid against such amount, if any; (D) its pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan and the Trust Agreement, and (E) the common benefit assessment required under Section 5.8(c) of the Plan, and the fees and costs of such NAS PI Claimant's individual attorney(s) in the Chapter 11 Cases, if any, reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan.[8] The resulting net amount shall be paid to the NAS PI Claimant in the form of an initial payment not to exceed $3,500.00 and five (5) additional equal installments in years six (6) through ten (10) following the year of the initial payment; *subject, however*, to the prior satisfaction of healthcare liens as set forth in Section 7 below. In no event shall interest be paid in respect of any judgment obtained in the tort system.

None of the NAS Percentage-Reduced Claim, the NAS Maximum Value, the NAS Gross Amount, the deductions therefrom, or the payment schedule is subject to any appeal or reconsideration.

## § 7.    RESOLUTION OF HEALTH CARE LIENS.

The PI Trust shall not issue any payment in respect of a Final Judgment until the Claims Administrator has received proof to his or her reasonable satisfaction that any private or governmental healthcare liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

## § 8.    APPLICABILITY OF SPECIAL PROCEDURES FOR MINORS AND HEIRS.

The special procedures set forth in Exhibit E to the NAS PI TDP shall apply to all NAS PI Claimants who are minors under applicable law and elect, subject to the terms hereof, to liquidate their NAS PI Claims by commencing a lawsuit in the tort system. Anyone seeking a Distribution from the PI Trust in his or her capacity as an heir must execute and submit the applicable Heirship Declaration attached to the NAS PI TDP as Exhibit D.[9]

---

[8]    Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

[9]    Exhibit D contains two declaration forms. One applies if the NAS-Decedent named the NAS PI Claimant as executor in his/her will; the other applies if the NAS Decedent had no will.

## EXHIBIT C

## SAMPLE HIPAA FORMS FOR
## THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION
## PROCEDURE FOR NAS PI CLAIMS

**SAMPLE FORM – DO NOT COMPLETE.  A FINAL VERSION WILL BE
MADE AVAILABLE TO YOU AFTER THE CHAPTER 11 PLAN HAS
BEEN CONFIRMED AND GONE EFFECTIVE**

## AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

Claimant Name: ██████████████      Date: ████████████████

Date of Birth: ██████████████       SSN: ████████████████

1. The following individuals or organizations are authorized to disclose my health records to the parties specified below in section #4: (**Note: Please list the names of your medical care providers and your health insurance providers that may have records relevant to the resolution of your PI Claim.  If you are unsure of the exact legal name of your medical providers and health insurance providers, you can leave this blank, and we will complete it for you with the understanding that you authorize all relevant parties**):

   _____

2. The type and amount of information to be used or disclosed as follows:

   The entire record, including but not limited to: any and all medical records, mental health records, psychological records, psychiatric records, problem lists, medication lists, lists of allergies, immunization records, history and physicals, discharge summaries, laboratory results, x-ray and imaging reports, medical images of any kind, video tapes, photographs, consultation reports, correspondence, itemized invoices and billing information, and information pertaining to Medicaid or Medicare eligibility and all payments made by those agencies, for the following dates: (**Note: List the date range for which the medical providers and insurance companies above may have records relevant to the resolution of your PI Claim. If you are unsure of the exact dates, then leave this blank, and we will complete this section for you with the understanding that you authorize all relevant date ranges**).

   Dates of Services: From: _____      To: _____

3. I understand that the information in my health records may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV).  It may also include information about behavioral or mental health services, as well as treatment for alcohol and drug abuse.

4. The health information may be disclosed to and used by the following individual and/or organization:

**MASSIVE: Medical & Subrogation Specialists**
**25657 Southfield Road**
**Southfield, MI 48075**
**(p) 833-466-2774     (f) 877-294-7893**

5. I understand I have the right to revoke this authorization at any time.  I understand if I revoke this authorization, I must do so in writing and present my written revocation to the health information management department.  I understand the revocation will not apply to information that has already been released in response to this authorization.  I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.   Unless otherwise revoked, this authorization will expire 10 years after the date that I sign it.

6. I understand that authorizing the disclosure of this health information is voluntary.  I can refuse to sign this authorization and forego a recovery under the Purdue bankruptcy personal injury trust distribution procedures. I understand that no organization may condition treatment, payment, enrollment, or eligibility  for benefits on my signing of this authorization.  I understand I may inspect or copy the information to be used or disclosed, as provided in CFR 1634.524.  I understand any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules or HIPAA.  If I have questions about disclosure of my health information, I can contact the parties listed above in section #4.

Patient or Legal Representative                                         Date

Relationship to Patient (If signed by Legal Representative)

**SAMPLE FORM – DO NOT COMPLETE.  A FINAL VERSION WILL BE MADE AVAILABLE TO YOU AFTER THE CHAPTER 11 PLAN HAS BEEN CONFIRMED AND GONE EFFECTIVE**

## AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

Claimant Name: ███████████████    Date: ████████████████

Date of Birth: ███████████████    SSN: ████████████████

1. The following individuals or organizations are authorized to disclose my health records to the parties specified below in section #4: (**Note: Please list the names of your medical care providers and your health insurance providers that may have records relevant to the resolution of your PI Claim.  If you are unsure of the exact legal name of your medical providers and health insurance providers, you can leave this blank, and we will complete it for you with the understanding that you authorize all relevant parties**):

    _____

2. The type and amount of information to be used or disclosed as follows:

    The entire record, including but not limited to: any and all medical records, mental health records, psychological records, psychiatric records, problem lists, medication lists, lists of allergies, immunization records, history and physicals, discharge summaries, laboratory results, x-ray and imaging reports, medical images of any kind, video tapes, photographs, consultation reports, correspondence, itemized invoices and billing information, and information pertaining to Medicaid or Medicare eligibility and all payments made by those agencies, for the following dates: (**Note: List the date range for which the medical providers and insurance companies above may have records relevant to the resolution of your PI Claim. If you are unsure of the exact dates, then leave this blank, and we will complete this section for you with the understanding that you authorize all relevant date ranges**).

    Dates of Services: From: _____ To: _____

3. I understand that the information in my health records may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV).  It may also include information about behavioral or mental health services, as well as treatment for alcohol and drug abuse.

4. The health information may be disclosed to and used by the following individual and/or organization:

**GENTLE, TURNER, SEXTON & HARBISON, LLC**
**501 Riverchase Parkway East, Suite 100**
**Hoover, Alabama 35244**
**(p) 205-716-3000    (f) 205-716-2364**

5. I understand I have the right to revoke this authorization at any time.  I understand if I revoke this authorization, I must do so in writing and present my written revocation to the health information management department.  I understand the revocation will not apply to information that has already been released in response to this authorization.  I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.   Unless otherwise revoked, this authorization will expire 10 years after the date that I sign it.

6. I understand that authorizing the disclosure of this health information is voluntary.  I can refuse to sign this authorization and forego a recovery under the Purdue bankruptcy personal injury trust distribution procedures. I understand that no organization may condition treatment, payment, enrollment, or eligibility  for benefits on my signing of this authorization.  I understand I may inspect or copy the information to be used or disclosed, as provided in CFR 1634.524.  I understand any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules or HIPAA.  If I have questions about disclosure of my health information, I can contact the parties listed above in section #4.

Patient or Legal Representative                                        Date

Relationship to Patient (If signed by Legal Representative)

**<ins>EXHIBIT D</ins>**

**<ins>SAMPLE HEIRSHIP DECLARATIONS FOR
THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION
PROCEDURE FOR NAS PI CLAIMS</ins>**

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

**THIS IS A SAMPLE DECLARATION FORM FOR PURPOSES OF SOLICITATION. DO NOT FILL OUT THIS FORM AT THIS TIME.  ONCE THE PI PLAN HAS BEEN CONFIRMED AND GONE EFFECTIVE, THE FINAL COPY OF THIS FORM WILL BE MADE AVAILABLE TO YOU FOR COMPLETION AND SUBMISSION TO THE PI TRUST.[1]**

| SD-1 | SWORN DECLARATION:<br>SIGNATORY IS EXECUTOR UNDER DECEDENT'S LAST WILL AND TESTAMENT |
|---|---|

You are required to complete this declaration if you hold a PI Claim[2] (and thus are a "PI Claimant") regarding the opioid-related death of another person (the "Decedent"), and you have not been appointed with the authority to act on behalf of the Decedent because no probate or estate proceeding has been commenced, but you have been named as executor or executrix (or comparable position under applicable state law) under the Last will and Testament of the Decedent.

## I.    DECEDENT INFORMATION

| Name | First Name | | | M.I. | Last Name | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| Social Security Number | \| \| \| \| - \| \| - \| \| \| \| | | | Date of Death | / / ___ (Month/Day/Year) | | |
| Residence/Legal Domicile Address at Time of Death | Street | | | | | | |
| | City | | | | State | Zip Code | |

## II.    PI CLAIMANT INFORMATION

| Your Name | First Name | | | M.I. | Last Name | | |
|---|---|---|---|---|---|---|---|
| Your Social Security Number | \| \| \| \| - \| \| - \| \| \| \| | | | | | | |
| Prime Clerk POC Number assigned to your PI Claim | | | | | | | |
| Your Address | Street | | | | | | |
| | City | | | | State | Zip Code | |
| Your Relationship to Decedent | | | | | | | |
| Basis of Your Authority to Act for the Decedent | | | | | | | |

---

[1] Submission instructions shall be provided along with the final form after the Plan has been confirmed and gone effective.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the [ ] Amended Chapter 11 Plan of Purdue Pharma L.P. and its affiliated debtors (the "Plan").

1

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| **List here and attach copies of all document(s) evidencing the basis for your authority** | 1. Last Will and Testament of _____, dated _____.<br><br>2. |
| --- | --- |



# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| III.   HEIRS AND BENEFICIARIES OF DECEDENT |||
|---|---|---|
| (ATTACH ADDITIONAL SHEETS FOR THE SECTION IF NEEDED) |||

Use the space below to identify the name and address of all persons who may have a legal right to share in any settlement payment on behalf of the claim of the Decedent. Also state if and how you notified these persons of the settlement, or the reason they cannot be notified.

| | **Name** | **Information** | |
|---|---|---|---|
| **1.** | | Address | |
| | | Relationship to Decedent | |
| | | Notified of Settlement? | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |
| **2.** | | Address | |
| | | Relationship to Decedent | |
| | | Notified of Settlement? | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |
| **3.** | | Address | |
| | | Relationship to Decedent | |
| | | Notified of Settlement? | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |

SAMPLE

3

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| | Name | Information | | |
|---|---|---|---|---|
| **4.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |
| **5.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |

SAMPLE

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

## IV.  PI CLAIMANT CERTIFICATION

This Sworn Declaration is an official document for submission to the PI Trust.  By signing this Sworn Declaration, I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that:

(a)  I am seeking authority to act on behalf of the Decedent and his or her estate, heirs, and beneficiaries in connection with the PI TDP, including with respect to the submission of forms and supporting evidence and the receipt of payment for any such awards.

(b)  I will abide by all substantive laws of the Decedent's last state of domicile concerning the compromise and distribution of any monetary award to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(c)  No one else has been appointed the personal representative, executor, administrator, or other position with the authority to act on behalf of the Decedent and his or her estate.

(d)  The copy of the Last Will and Testament provided by me is the Last Will and Testament of the Decedent.

(e)  No application or proceeding has been filed in state or other court to administer the estate of the Decedent or to appoint an executor or administrator because state law does not require it.

(f)  I will notify the Claims Administrator immediately if my authority to act is curtailed, surrendered, withdrawn, or terminated.

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

(g) I am not aware of any objections to my appointment and service as the PI Claimant on behalf of the Decedent and his or her estate, heirs, and beneficiaries.

(h) No person notified under Section III objects to my serving as the PI Claimant and taking such steps as required by the PI TDP to resolve all claims related to the Decedent's prescription and/or use of Purdue opioids.  The persons named in Section III are all of the persons who may have a legal right to share in any settlement payment issued in respect of the injuries of the Decedent.

(i) I will comply with any and all provisions of the state law regarding the compromise and distribution of the proceeds of the settlement of a survival or wrongful death claim to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(j) I will indemnify and hold harmless the PI Trust, the Claims Administrator, the Appeals Master, and the agents and representatives of any of the foregoing, from any and all claims, demands, or expenses of any kind arising out distributions from the PI trust on account of injuries of the Decedent.

The information I have provided in this Declaration is true and correct.  I understand that the Claims Administrator and Court will rely on this Declaration, and false statements or claims made in connection with this Declaration may result in fines, imprisonment, and/or any other remedy available by law.

| V.    PI CLAIMANT SIGNATURE | | | |
|---|---|---|---|
| **Signature** | _____ | **Date** | ___/___/___ <br> (Month/Day/Year) |

6

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

**THIS IS A SAMPLE DECLARATION FORM FOR PURPOSES OF SOLICITATION. DO NOT FILL OUT THIS FORM AT THIS TIME. ONCE THE PI PLAN HAS BEEN CONFIRMED AND GONE EFFECTIVE, THE FINAL COPY OF THIS FORM WILL BE MADE AVAILABLE TO YOU FOR COMPLETION AND SUBMISSION TO THE PI TRUST.[1]**

| SD-2 | SWORN DECLARATION: DECEDENT DID NOT LEAVE A LAST WILL AND TESTAMENT |
|------|--------------------------------------------------------------------|

You are required to complete this declaration if you hold a PI Claim[2] (and thus are a "PI Claimant") regarding the opioid-related death of another person (the "Decedent"), and you have not been appointed with the authority to act on behalf of the Decedent because the Decedent Claimant died without a Will and no probate or estate proceeding has been opened.

## I. DECEDENT INFORMATION

| Name | First Name | | M.I. | Last Name |
|------|------------|---|------|-----------|
| | | | | |

| Social Security Number | \|___\|___\|___\| - \|___\|___\| - \|___\|___\|___\|___\| | Date of Death | ___/___/___ (Month/Day/Year) |
|------------------------|--|---------------|--|

| Residence/Legal Domicile Address at Time of Death | Street | | |
|---|---|---|---|
| | City | State | Zip Code |

## II. PI CLAIMANT INFORMATION

| Your Name | First Name | | M.I. | Last Name |
|-----------|------------|---|------|-----------|

| Your Social Security Number | \|___\|___\|___\| - \|___\|___\| - \|___\|___\|___\|___\| |
|-----------------------------|--|

| Prime Clerk POC Number assigned to your PI Claim | |
|---|---|

| Your Address | Street | | |
|---|---|---|---|
| | City | State | Zip Code |

| Your Relationship to Decedent | |
|---|---|

| Basis of Your Authority to Act for the Decedent | |
|---|---|

---

[1] Submission instructions shall be provided along with the final form after the Plan has been confirmed and gone effective.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the [ ] Amended Chapter 11 Plan of Purdue Pharma L.P. and its affiliated debtors (the "Plan").

1

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| **List here and attach copies of all document(s) evidencing the basis for your authority** | 1. A copy of the intestate statute of the state or domicile of the Deceased Claimant at the time of his or her death.<br><br>2. |
| --- | --- |



# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| | **III.**   HEIRS AND BENEFICIARIES OF DECEDENT <br> (ATTACH ADDITIONAL SHEETS FOR THE SECTION IF NEEDED) | | |
|---|---|---|---|
|  | Use the space below to identify the name and address of all persons who may have a legal right to share in any settlement payment on behalf of the claim of the Decedent. Also state if and how you notified these persons of the settlement, or the reason they cannot be notified. | | |
| | **Name** | **Information** | |
| **1.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br><br> ☐ No. Why Not: _____ |
| **2.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br><br> ☐ No. Why Not: _____ |
| **3.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ <br><br> ☐ No. Why Not: _____ |

SAMPLE

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

| | Name | Information | | |
|---|---|---|---|---|
| **4.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |
| **5.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of Settlement?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |

| **IV.    PI CLAIMANT CERTIFICATION** |
|---|

This Sworn Declaration is an official document for submission to the PI Trust.  By signing this Sworn Declaration, I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that:

(a) I am seeking authority to act on behalf of the Decedent and his or her estate, heirs, and beneficiaries in connection with the PI TDP, including with respect to the submission of forms and supporting evidence and the receipt of payment for any such awards.

(b) I will abide by all substantive laws of the Decedent's last state of domicile concerning the compromise and distribution of any monetary award to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(c) No one else has been appointed the personal representative, executor, administrator, or other position with the authority to act on behalf of the Decedent and his or her estate.

(d) There is no known last will and testament of the Decedent and no application or proceeding has been filed in state or other court to administer the estate of the Decedent or to appoint an executor or administrator;

(e) I will notify the Claims Administrator immediately if my authority to act is curtailed, surrendered, withdrawn, or terminated.

4

# HEIRSHIP DECLARATION FOR PURDUE PI TDP

(f)   I am not aware of any objections to my appointment and service as the PI Claimant on behalf of the Decedent and his or her estate, heirs, and beneficiaries.

(g)   No person notified under Section III objects to my serving as the PI Claimant and taking such steps as required by the PI TDP to resolve all claims related to the Decedent's prescription and/or use of Purdue opioids.  The persons named in Section III are all of the persons who may have a legal right to share in any settlement payment issued in respect of the injuries of the Decedent.

(h)   I will comply with any and all provisions of the state law regarding the compromise and distribution of the proceeds of the settlement of a survival or wrongful death claim to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(i)   I will indemnify and hold harmless the PI Trust, the Claims Administrator, the Appeals Master, and the agents and representatives of any of the foregoing, from any and all claims, demands, or expenses of any kind arising out of distributions from the PI trust on account of injuries of the Decedent.

The information I have provided in this Declaration is true and correct.  I understand that the Claims Administrator and Court will rely on this Declaration, and false statements or claims made in connection with this Declaration may result in fines, imprisonment, and/or any other remedy available by law.

| V.   PI CLAIMANT SIGNATURE | | | |
|---|---|---|---|
| **Signature** | _____ | **Date** | _____/_____/_____ <br> (Month/Day/Year) |

**EXHIBIT E**

**DISTRIBUTIONS TO OR FOR THE BENEFIT OF MINOR CLAIMANTS FOR THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE[1]**

The following procedures apply to any PI Claimant who is a minor under applicable law (a "Minor Claimant") for so long as the PI Claimant remains a minor under applicable law. These procedures apply regardless of whether the Minor Claimant holds an NAS PI Claim or a Non-NAS PI Claim, and regardless of whether the Minor Claimant's Proxy (as defined below) elects to have that PI Claim liquidated under the PI TDP[2] or to pursue it in the tort system.

1. **Actions by Proxy of Minor Claimant.** A Minor Claimant's custodial parent, his/her legal guardian under applicable law (a "Guardian"), or an adult providing custody and care to the minor (any of the foregoing acting on behalf of the Minor Claimant, the "Proxy") is authorized to make submissions on behalf of the Minor Claimant under the PI TDP, subject to paragraph 2 below. The Proxy shall be responsible for submitting, on behalf of such Minor Claimant, all required forms under the PI TDP, including the Claim Form, as well as any evidence required by the PI Trust to support the Claim Form, and any other documentation required or requested pursuant to the PI TDP. The Proxy is authorized to take, on behalf of a Minor Claimant, all actions under the PI TDP that the Minor Claimant would be authorized to take if such Minor Claimant were an adult, other than receiving distributions from the PI Trust (unless so authorized by paragraph 5 below). These actions include, where permitted, making an opt-out or, if the Minor Claimant is a Non-NAS PI

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PI Trust Distribution Procedure ("PI TDP").

[2] "PI TDP" refers to either the NAS PI TDP or the Non-NAS PI TDP, as applicable for any particular PI Claimant.

Claimant, making a payment election or requesting an appeal pursuant to Exhibit C to the Non-NAS PI TDP.

2. **Establishing Proxy of a Minor Claimant**. Any purported Proxy making a submission to the PI Trust on behalf of a Minor Claimant shall include along with such submission documentation of his/her authority to act on behalf of the Minor Claimant, consisting of the following:

   a. If the purported Proxy is the Guardian of the Minor Claimant, then the court order appointing that Proxy as Guardian, or other documents reasonably acceptable to the Claims Administrator as sufficient under applicable law to evidence the guardianship.

   b. If the purported Proxy is the custodial parent of the Minor Claimant, then a sworn statement that such Proxy is the custodial parent of the Minor Claimant.

   c. If the purported Proxy is neither the Guardian nor custodial parent of the Minor Claimant, then a sworn statement by the purported Proxy that he/she is providing custody and care to the Minor Claimant, stating for how long he/she has been providing such care and custody, explaining his/her relationship to the Minor Claimant and the circumstances around the provision of care and custody, as well as a statement and/or records from one or more of the following in support of his/her sworn statement:

      1. Minor Claimant's school

      2. Purported Proxy's landlord or property manager

      3. Minor Claimant's health provider

      4. Minor Claimant's child care provider

     5.   Purported Proxy's placement agency

     6.   Governmental social services agency

     7.   Indian tribe officials

     8.   Purported Proxy's Employer

Whether the purported Proxy is a Guardian, custodial parent, or neither, the Claims Administrator may require additional corroborating evidence at his discretion, including in the event that instructions are received from more than one purported Proxy for the same Minor Claimant.

**3. Distributions to Minor Claimants.** When the PI Trust has determined the final distributable amount on a Minor Claimant's claim, it will send notice of such final amount to the Minor Claimant's Proxy and counsel (if known). Such notice will include a letter inviting the Proxy to discuss how the distributable amount was determined, and the Claims Administrator will take reasonable steps to ensure that the Proxy understands how such amount was determined. Any distributions owing to a Minor Claimant that are ready for issue by the PI Trust at a time when the Minor Claimant is still a minor under applicable law shall be (i) used to pay the individual attorneys' fees of the Minor Claimant pursuant to paragraph (4) below and (ii) with respect to the remainder, paid into an interest-bearing sub-fund of the Trust (the "Minor Claimants Account"), held there for the sole benefit of the Minor Claimant, and invested in a U.S. governmental money-market fund until such funds are distributed pursuant to Section 5 below or until the Minor Claimant becomes an adult under applicable law (the "Adult Distribution Date"), at which time the amount then held in such account (including interest earned) shall be paid directly to such PI Claimant. Pending distributions for all Minor Claimants may be held in the same sub-fund.

3

4. **Payments of attorneys' fees.**

Within a reasonable period following receipt of notice of the final distributable amount on Minor Claimant's PI Channeled Claim, and using forms to be provided by the Claims Administrator, the Minor Claimant's counsel shall submit to the PI Trust, with a copy to the Proxy, a request for payment of legal fees and expenses from the Minor's recovery. It is the Minor Claimant's attorney's duty to comply with all ethical and legal rules respecting such legal fees and expenses, and the Claims Administrator is permitted to rely upon such representation in issuing payments in respect of such fees and expenses. Absent objection from the Proxy with respect to such asserted fees and expenses, the Claims Administrator shall remit payment to the Minor Claimant's attorney in accordance with the latter's request.

5. **Early Distributions.** Funds held in the Minor Claimants Account for a Minor Claimant may be released prior to the Adult Distribution Date only pursuant to (a) an order of a U.S. court of general jurisdiction in the Minor Claimant's state of residence, or (b) an order entered by the United States Bankruptcy Court for the Southern District of New York.[3]

---

[3] Early distributions mechanic under review.

## **Exhibit J-1**

Redline of NAS PI Trust Distribution Procedures

## INDIVIDUAL PURDUE PHARMA LP
## PI TRUST DISTRIBUTION PROCEDURE FOR NAS PI CHANNELED CLAIMS

### § 1.    APPLICABILITY AND SUBMISSION INSTRUCTIONS.

This trust distribution procedure for NAS PI Channeled Claims (as defined below) (the "NAS PI TDP") sets forth the manner in which NAS PI Channeled Claims may become eligible for payments from, and shall be fully discharged by, the PI Trust.[1] Distributions in respect of NAS PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust NAS Fund to Holders of NAS PI Channeled Claims on the terms set forth herein.

Pursuant to the Plan and the Master TDP, the following claims (the "NAS PI Channeled Claims") will be channeled to, and liability therefore shall be assumed by, the PI Trust as of the Effective Date of the Plan: (i) all NAS PI Claims, which are claims against any Debtor for alleged opioid-related personal injury to an NAS Child or similar opioid-related claims or Causes of Action against any Debtor asserted by or on behalf of an NAS Child, and that arose prior to the Petition Date, and that are not (A) a Third-Party Payor Claim, an NAS Monitoring Claim or a Hospital Claim, or (B) held by a Domestic Governmental Entity, and (ii) all Released Claims or Shareholder Released Claims that are claims for alleged opioid-related personal injury to an NAS Child or that are similar opioid-related claims or Causes of Action asserted by or on behalf of an NAS Child, and that arose prior to the Petition Date, and that are not (A) Third-Party Payor Channeled Claims, NAS Monitoring Channeled Claims or Hospital Channeled Claims or (B) held by a Domestic Governmental Entity. NAS PI Channeled Claims shall be administered, liquidated and discharged pursuant to this NAS PI TDP, and satisfied solely from the PI Trust NAS Fund (as defined below). Holders of NAS PI Channeled Claims are referred to herein as "NAS PI Claimants."

NAS PI Channeled Claims liquidated under this NAS PI TDP shall be (i) Allowed or Disallowed (such NAS PI Channeled Claims so Allowed, "Allowed NAS PI Channeled Claims") and, for Allowed NAS PI Channeled Claims, (ii) liquidated to determine the gross amounts receivable thereon (an "Award"), in each case pursuant to the terms of this NAS PI TDP.

An Award for an NAS PI Channeled Claim liquidated hereunder will be a gross number before deduction of the following "PI Trust Deductions and Holdbacks": (A) a pro rata share of the operating expenses of the PI Trust; (B) amounts held back under the Lien Resolution Program (the "LRP Agreement") to settle liens held by private insurance companies against that Award, if any; (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of the federal healthcare programs like Medicare, Tricare, VA, or Medicaid against that Award, if any; (D) a pro rata share of the compensation,

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 2967] (the "Plan") in the chapter 11 cases of Purdue Pharma L.P. and its Debtor affiliates (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan; and (E) the common benefit assessment required under Section 5.8(c) of the Plan, and the fees and costs of the NAS PI Claimant's individual attorney(s) in the Chapter 11 Cases, if any, reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan.[2] In addition to the deductions and holdbacks described above, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

This NAS PI TDP sets forth what evidence and forms you must submit in order to be eligible to receive an Award. Forms may be completed online at the PI Trust's website, www._____.com, or by mailing back the completed forms to the PI Trust at the below address. Evidence in support of your NAS PI Claim should be submitted to [_____].[3]

---

**ELECTION TO LIQUIDATE NAS PI CLAIM IN THE
TORT SYSTEM RATHER THAN UNDER THIS NAS PI TDP**

**An NAS PI Claimant who (i) timely filed a Proof of Claim in the Chapter 11 Cases prior to the General Bar Date asserting his/her NAS PI Claim against one or more Debtors and (ii) elects expressly, by timely submission of the NAS PI Claim Form attached hereto as Exhibit A, to liquidate his/her NAS PI Claim in the tort system rather than pursuant to the streamlined liquidation procedures set herein (a "NAS Opt-Out Claimant"), may assert and liquidate such NAS PI Claim in the tort system at his/her own expense, as set forth in more detail in Exhibit B, and shall forfeit all rights to liquidate such NAS PI Claim (and any associated NAS PI Channeled Claims regarding the same injuries that are the same subject of its NAS PI Claim) under the streamlined procedures set forth in this NAS PI TDP. The right to litigate in the tort system is available only with respect to Claims that meet the definition of "PI Claim" set forth in the Plan.**

**OPTING OUT REQUIRES YOU TO TAKE THE AFFIRMATIVE ACTION OF CHECKING THE "OPT OUT" BOX ON THE NAS PI CLAIM FORM AND TIMELY SUBMITTING YOUR NAS PI CLAIM FORM TO THE PI TRUST. FAILURE TO TIMELY SUBMIT THE NAS PI CLAIM FORM SHALL CONSTITUTE CONSENT TO HAVE YOUR NAS PI CHANNELED CLAIMS LIQUIDATED PURSUANT TO THE PROVISIONS OF THIS NAS PI TDP.**

---

## § 2.    ALLOCATION OF FUNDS; CLAIMS ADMINISTRATOR.

(a)    Allocations of Funds to the PI Trust and Further Allocation to the PI Trust NAS Fund and the PI Trust Non-NAS Fund.

---

[2]    If you have an individual attorney, then your attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from your Award.

[3]    Submission instructions to be added after solicitation.

Under the Plan, the PI Trust will receive a gross amount of between $700 million and $750 million (minus amounts distributed directly to the United States under the United States-PI Claimant Medical Expense Claim Settlement), in the form of an initial installment of $300 million on the Effective Date of the Plan and subsequent installments, in each case subject to the United States-PI Claimant Medical Expense Claim Settlement. The PI Trust shall establish a fund to pay NAS PI Channeled Claims (the "PI Trust NAS Fund"); and a fund to pay Non-NAS PI Channeled Claims (the "PI Trust Non-NAS Fund"), and shall allocate each distribution it receives under the Plan as follows: (i) 6.43% to the PI Trust NAS Fund, up to an aggregate maximum of $45 million, and (ii) the remainder to the PI Trust Non-NAS Fund, in each case subject to applicable PI Trust Deductions and Holdbacks.

> (b)    Claims Administrator.
>
>> (i)    The PI Trust shall be established in accordance with § 5.7 of the Plan to (1) assume all liability for the PI Channeled Claims, (2) hold the MDT PI Claim and collect the Initial PI Trust Distribution and payments due under the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents, (3) administer, process, resolve and liquidate PI Channeled Claims, (4) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents (including this NAS PI TDP), (5) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement and (6) carry out such other matters as are set forth in the PI Trust Documents.[4] The trustee of the PI Trust (the "Trustee"), Edgar Gentle III, of Gentle, Turner, Sexton & Harbison, LLC, will serve as claims administrator (the "Claims Administrator") to carry out the duties of the Trustee as set forth in the Plan and PI Trust Documents.[5]

---

[4]    The PI Trust Agreement shall provide that the Trustee shall have the power to appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of the PI Trust Agreement, this NAS PI TDP, the Non-NAS PI TDP, and the LRP Agreement, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents.

[5]    The PI Trust Agreement shall provide that the Trustee shall receive a retainer from the PI Trust for his service as a Trustee in the amount of $150,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the PI Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour. For all non-working travel time in connection with PI Trust business, the Trustee shall receive the sum of $200 per hour. The Trustee shall record all hourly time to be charged to the PI Trust. The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the PI Trust's oversight committee, appropriately adjusted by the Trustee for changes in the cost of living. The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

3

    (ii)    The Trustee and the Claims Administrator[6] shall determine, pursuant to the requirements set forth herein, the Allowance or Disallowance of all NAS PI Channeled Claims liquidated under this NAS PI TDP. Distributions hereunder are determined only with consideration to an NAS PI Claim held against the Debtors, and not to any associated NAS PI Channeled Claim against a non-Debtor party. However, any Distribution to an NAS PI Claimant on account of his/her NAS PI Claim is deemed to be a distribution in satisfaction of all NAS PI Channeled Claims held by such NAS PI Claimant with respect to the injuries that are the subject of his/her NAS PI Claim. The Claims Administrator may investigate any such claim, and may request information from any NAS PI Claimant to ensure compliance with the terms outlined in this document. For NAS PI Claimants who execute the required HIPAA forms attached hereto as Exhibit C, the Claims Administrator also has the power to directly obtain such NAS PI Claimant's medical records.

## § 3.    INITIAL NAS PI CHANNELED CLAIM ALLOWANCE.

For an NAS PI Channeled Claim that is being liquidated pursuant to the streamlined procedures set forth in this NAS PI TDP to be Allowed, the applicable NAS PI Claimant must, with respect to that NAS PI Channeled Claim:

    (a)    Hold such NAS PI Channeled Claim against one or more Debtors;

    (b)    Have already timely[7] filed an individual personal injury Proof of Claim against one or more Debtors in the Chapter 11 Cases asserting his/her NAS PI Claim against one or more Debtors;

    (c)    Demonstrate by Competent Evidence (as defined below) a diagnosis by a licensed medical provider of a medical, physical, cognitive or emotional condition resulting from the NAS Child's intrauterine exposure to opioids or

---

[6]    As the same individual is serving as both Trustee and Claims Administrator, reference to actions by each reference Mr. Gentle acting in such respective capacity.

[7]    If the Proof of Claim was filed after the General Bar Date but before April 23, 2021, the Claims Administrator shall consider the NAS PI Channeled Claim without penalty. If the Proof of Claim was filed on April 23, 2021 or after, the NAS PI Channeled Claim asserted by such Proof of Claim shall be Disallowed unless (i) the Claims Administrator determines, which determination shall be on a case-by-case basis, that good cause exists to treat the late-filed NAS PI Channeled Claim as if it were timely filed, or (ii) the Bankruptcy Court so orders. Notwithstanding this deadline, in addition to the other requirements herein, up to 274 late-filed Claims filed by NAS PI Claimants who appear on the West Virginia NAS Birth Score Program and are represented by the WV NAS Ad Hoc Group ("WV NAS Claimants") and who demonstrate the following to the satisfaction of the Claims Administrator shall be considered as if their Claim had been timely filed: (1) that the Claimant is a WV NAS Claimant, (2) that a Proof of Claim was filed in the Chapter 11 Cases by or on behalf of such WV NAS Claimant prior to April 15, 2021, and (3) a sworn declaration from the parent/guardian/custodian of such WV NAS Claimant that such parent/guardian/custodian did not know about the Chapter 11 Cases or Bar Date prior to the Bar Date.

opioid replacement or treatment medication, including but not limited to the condition known as neonatal abstinence syndrome ("NAS"). The diagnosis can be made by any licensed medical professional, specifically including physicians, nurses, physician assistants, mental health counselor or therapist, or professional at a rehabilitation center. Only NAS PI Claims based on injuries or facts occurring prior to the filing of your NAS PI Claim Form are eligible for recovery.

(d)     Complete, sign and submit the NAS PI Claim Form attached hereto as Exhibit A by the date that is 150 days[8] after the NAS PI Claim Form is disseminated[9] to NAS PI Claimants;[10]

(e)     Complete, sign and submit the two HIPAA consent forms attached hereto as Exhibit C; and

(f)     If the NAS PI Channeled Claim concerns the injuries of a decedent, then also execute and submit the appropriate Heirship Declaration attached hereto as Exhibit D.[11]

Any NAS PI Claimant who satisfies all of the above requirements (a)-(f) with respect to a given NAS PI Channeled Claim shall have that NAS PI Channeled Claim Allowed.

**If an NAS PI Claimant does not satisfy these requirements with respect to an NAS PI Channeled Claim that is being liquidated under the liquidation provisions of this NAS PI TDP, INCLUDING THE REQUIREMENT TO TIMELY SUBMIT HIS/HER NAS PI CLAIM FORM AND ANY NECESSARY ACCOMPANYING EVIDENCE, then such NAS PI Channeled Claim shall be Disallowed.**

**Regardless of whether you elect to "opt out" or to have your claim liquidated under this NAS PI TDP, you must complete the NAS PI Claim Form as instructed by the deadline, which is 150 days[12] after the NAS PI Claim Form is disseminated. Failure to timely submit the NAS PI Claim Form (and any required supporting evidence) will result in your claim**

---

[8]     Subject to extension in the discretion of the Claims Administrator.

[9]     Within 60 days after Effective Date, the NAS PI Claim Form will be made available to NAS PI Claimants electronically and, if an NAS PI Claimant is a pro se claimant, also mailed to such NAS PI Claimant in physical copy. When disseminated, the NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the NAS PI Claim Form must be returned.

[10]    If the NAS PI Claimant checks the box on the NAS PI Claim Form indicating his/her election to liquidate his/her NAS PI Claim in the tort system rather than under the liquidation provisions of this NAS PI TDP, then such NAS PI Claim will not be liquidated hereunder.

[11]    Exhibit D contains two declaration forms. One applies if the decedent named the person filing the NAS PI Claim Form as executor in his/her will; the other applies if the decedent had no will.

[12]    Subject to extension in the discretion of the Claims Administrator.

being disallowed. **In other words, if you do nothing, you will not receive any compensation from the PI Trust.**

**§ 4.    COMPETENT EVIDENCE REQUIRED.**

    (a)    To receive a recovery on his/her NAS PI Claim, an NAS PI Claimant must submit one of the following forms of evidence ("Competent Evidence"):

        (i)    A document from a licensed medical provider diagnosing the NAS Child with a medical, physical, cognitive or emotional condition resulting from the NAS Child's intrauterine exposure to opioids or opioid replacement or treatment medication, including but not limited to the condition known as NAS;

        (ii)    A document from a licensed medical provider affirming that the NAS Child had Neonatal Opioid Withdrawal Syndrome ("NOWS"); or

        (iii)    Other medical records evidencing that the NAS Child had an NAS diagnosis, including post-natal treatment for symptoms caused by opioid exposure, symptoms of post-natal withdrawal from opioids, medical scoring for NAS or NOWS which is positive or indicates fetal opioid exposure, a positive toxicology screen of the birth mother or infant for opioids or opioid-weaning drugs, or a maternal diagnosis of opioid use disorder by the birth mother.

    (b)    The Claims Administrator shall have discretion to determine whether these evidentiary requirements have been met, including whether the forms of evidence submitted constitute Competent Evidence.[13] Any NAS PI Claimant who fails to meet these requirements is not entitled to any payment.

    (c)    The Claims Administrator shall have the discretion to request additional relevant documentation believed to be in the possession of the NAS PI Claimant or his or her authorized agent or lawyer. The Claims Administrator has the sole discretion to Disallow, or to reduce or eliminate Awards on, claims being liquidated hereunder where he concludes that there has been a pattern and practice to circumvent full or truthful disclosure under this § 4.

    (d)    If the Claims Administrator determines that an NAS PI Claim Form or accompanying evidence submitted hereunder is incomplete, he will notify the NAS PI Claimant and afford a 30-day period to cure any such deficiency. Such

---

[13]    Competent Evidence necessary for Allowance of an NAS PI Claim is evidence, in the opinion of the Trustee, that establishes that the occurrence of a diagnosis of NAS with respect to an NAS PI Claimant is more likely true than not true, *i.e.* a probability standard. Competent Evidence requires more than a mere possibility or scintilla of truth, but such standard does not require proof that rises to the level of clear and convincing evidence. However, notwithstanding anything to the contrary in this NAS PI TDP, proof of a prescription of an opioid product shall not be required.

deficiencies include, but are not limited to, failure to sign or complete the NAS PI Claim Form, failure to execute the required HIPAA authorizations, or failure to submit qualifying evidence. If the deficiency is timely cured to the satisfaction of the Claims Administrator, no deduction or penalty will be assessed to an otherwise qualifying NAS PI Channeled Claim. If the deficiency is not timely cured, or not cured at all, the Claims Administrator, depending on the nature of the deficiency, has the authority to prevent the NAS PI Claimant from receiving all or part of any Award (s)he would otherwise be entitled to on such NAS PI Channeled Claim.

## § 5.    AWARDS.

The money available in the PI Trust NAS Fund for distribution to NAS PI Claimants shall be divided equally among the Allowed NAS PI Channeled Claims and allocated as equal gross awards to the Holders of such Allowed NAS PI Channeled Claims. The PI Trust may issue Distributions on account of Allowed NAS PI Channeled Claims in installments as funds are received by the PI Trust, or on account of installments pursuant to a court order. Because distributions to minors are to be held in trust until the minor becomes a legal adult (unless a competent court orders otherwise), it may take years before you have received all of your Award.

Your Distribution amount under the NAS PI TDP is a gross award that will be further reduced to pay the applicable PI Trust Deductions and Holdbacks. In addition, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

Although the Plan channels claims for all types of personal injury damages to the PI Trust, including both economic and non-economic or general damages, Awards issued hereunder compensate only general pain and suffering on account of the NAS Child's injuries. Because of limited funds, economic damages and punitive damages are not compensable.

## § 6.    BAR FOR PRIOR SETTLED CASES.

An NAS PI Claimant whose NAS PI Channeled Claim was reduced prior to the Petition Date to a settlement, judgment, or award against a Debtor shall be barred from receiving any Award under this NAS PI TDP on account of such NAS PI Channeled Claim and shall not recover from the PI Trust on account of such NAS PI Channeled Claim.

## § 7.    SPECIAL PROCEDURES IN RESPECT OF MINORS.

For NAS PI Claimants who are minors under applicable law, the special procedures set forth in Exhibit E hereto also apply and shall supplement the procedures set forth in this NAS PI TDP.

## § 8.    FAIRNESS AUDITS AND FRAUD PREVENTION.

The Claims Administrator will use appropriate technology and strategies to prevent paying fraudulent claims while making the claims process as simple as possible. Reasonable steps will be taken to mitigate fraud so as to ensure a fair and secure claims review and payment process,

while not falsely flagging legitimate NAS PI Channeled Claims. Among the techniques will be technology to prevent claims submitted by BOTS, unique NAS PI Claimant identification numbers, and strategic NAS PI Claim Form fields. Periodic fairness audits will be conducted on samples of NAS PI Channeled Claims to ensure that they are being evaluated and paid fairly.

## § 9.    APPEALS.

If an NAS PI Claimant is dissatisfied with any determination made by the Claims Administrator with respect to his or her NAS PI Channeled Claim, (s)he can appeal to the Claims Administrator within fourteen (14) days of receiving notice of such Claims Administrator determination by submitting a written document clearly marked as "Appeal to Claims Administrator." In that document, the NAS PI Claimant should identify the determination with which the NAS PI Claimant disagrees and state the reasons for the disagreement. The NAS PI Claimant may submit any additional documentation (s)he wishes to have considered. Only one appeal is permitted per Proof of Claim. The Claims Administrator shall conduct a de novo review and promptly issue a ruling in writing to the NAS PI Claimant and/or his/her counsel, as applicable. In the event that the Claims Office determines that the records submitted in support of the NAS PI Claimant's claim are unreliable, the Notification of Status letter shall advise the NAS PI Claimant of such determination and shall identify the particular records or statements that are deemed unreliable. In evaluating such appeal, the Claims Administrator shall not change the NAS PI TDP allowance criteria.

NAS PI Claimants shall have no other appeal rights beyond those set forth in this Section 9. Determinations made by the Claims Administrator in the appeals process pursuant to this Section 9 shall be final and binding and are not subject to further appeal in any forum.

## EXHIBIT A

## SAMPLE CLAIM FORM FOR
## THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION
## PROCEDURE FOR NAS PI CLAIMS

<div style="border: 2px solid red; color: red;">

**THIS IS A SAMPLE CLAIM FORM AND IS SUBJECT TO CHANGE. DO NOT COMPLETE THE FORM AT THIS TIME. A BLANK COPY OF THE FINAL FORM WILL BE AVAILABLE ONLINE AND BY MAIL FOR YOU TO COMPLETE AT THE APPROPRIATE TIME AFTER THE PURDUE PLAN OF REORGANIZATION HAS BEEN APPROVED AND GONE EFFECTIVE.**

</div>

This Purdue Bankruptcy Claim Form (the "Claim Form") must be completed for each NAS PI Claimant seeking to recover money from the Purdue Personal Injury Trust (the "PI Trust") on its NAS PI Channeled Claims.[1]  IF YOU DO NOT TIMELY RETURN THIS CLAIM FORM AS INSTRUCTED, YOU WILL BE DEEMED TO HAVE CONSENTED TO HAVE YOUR NAS PI CHANNELED CLAIMS LIQUIDATED UNDER THE NAS PI TDP, AND YOUR CLAIMS WILL BE DISALLOWED UNDER THE NAS PI TDP FOR YOUR FAILURE TO TIMELY RESPOND.

If you represent the interests of an NAS Child and are seeking to recover money from the Purdue Personal Injury Trust (The "PI Trust") on account of an that NAS Child's NAS PI Channeled Claim, you must complete this Claim Form (the "Claim Form") and return the form to _____.  If you do not complete the form, you will NOT qualify to receive funds on behalf of the child you represent.

If you believe that the NAS Child you represent holds multiple NAS PI Claims against the Debtors on account of multiple injuries, you should still submit only one Claim Form. One Claim Form submitted for a NAS PI Claim shall be deemed to be a Claim Form in respect of that NAS PI Claim and also any NAS PI Channeled Claims against a Released Person or Shareholder Released Person that are associated with that NAS PI Claim.

 If you represent the interests of more than one NAS Child, you must file a Claim Form on behalf of each individual NAS Child.  YOU CANNOT file one Claim Form on behalf of multiple children.

**Please follow the instructions of each section carefully to ensure that your Claim Form is submitted correctly**. Except as otherwise indicated, all words shall be given their ordinary, dictionary meaning. Submitting this Claim Form does not guarantee that you will receive payment from the PI Trust. Whether or not you receive payment depends on whether you make the additional required submissions, as set forth in the NAS PI TDP, and whether or not your claim meets the eligibility requirements set forth in the NAS PI TDP.

This Claim Form allows you to choose to "opt out" of the streamlined, expedited NAS PI TDP liquidation process with respect to any NAS PI Claim against one or more of the Debtors, and instead pursue that NAS PI Claim in the tort system by filing a lawsuit against the PI Trust at your own expense.  However, you may litigate in court only with respect to a NAS PI Claim held against one or more Debtors, and may not litigate any other NAS PI Channeled Claims. If you select the "opt out" option, you will not be eligible to receive any distribution under the streamlined liquidation procedures of the NAS PI TDP. Furthermore, you will not be allowed to opt back in to the liquidation provisions of the NAS PI TDP if your lawsuit is unsuccessful in the tort system. In other words, if you lose your lawsuit, you cannot return to the NAS PI Trust and ask for

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Non-NAS PI TDP or, if not defined therein, then the meanings ascribed to them in the Chapter 11 Plan.

money.  And importantly, if you do obtain a judgment in a court against the PI Trust, that award will be subject to reduction pursuant to the "opt out" procedures set forth in Exhibit B to the NAS PI TDP.  See the procedures set forth in Exhibit B to the NAS PI TDP for more detail.  YOU MAY ONLY OPT OUT BY CHECKING THE "OPT OUT" BOX AND TIMELY RETURNING THIS CLAIM FORM.  FAILURE TO RESPOND DOES NOT CONSTITUTE OPTING OUT.

For those who do not "opt out:" If your claim is Allowed by the Claims Administrator of the PI Trust, your claim will be liquidated and paid according to the provisions of the NAS PI TDP.  If your claim is Disallowed by the Claims Administrator, you will not receive a distribution from the PI Trust.  All claimants whose NAS PI Channeled Claims are Allowed by the Claims Administrator shall receive an equal distribution from the PI Trust NAS Fund, subject to the deductions described in the NAS PI TDP.

By submitting this Claim Form and choosing to liquidate your NAS PI Claim under the NAS PI TDP, you are deemed to consent to the Lien Resolution Program, under which certain health insurance companies, known as "Third-Party Payors" or "TPPs," have agreed to resolve their claims against you and/or your recoveries under the NAS PI TDP for reduced amounts or, in some cases, by waiving their claims altogether. The LRP Agreement is attached as Exhibit [ ] to the [  ] Plan Supplement.

**Instructions for Submission**: You may complete and submit this Claim Form either online, at ██████████████████████████████, or by mailing back the completed Claim Form to ████████████
████████████████████████████████

████████████████████████████████████████████████████

**PART ONE: PERSONAL INFORMATION OF NAS PI CLAIMANT AND HIS/HER REPRESENTATIVE**

What is the Claim Number assigned to your claim by Prime Clerk?    ████████████

**Section 1.A: Fill out the information of the NAS Child below:**

NAS Child's Name:    ████████████████████████

NAS Child's Date of Birth:    ████████████████████████

NAS Child's Address:    ████████████████████████

NAS Child's Social Security Number:    ████████████████████████

**Section 1.B: Fill out your own information below:**

Your Name:    ████████████████████████

Your Date of Birth:    ████████████████████████

Your Address:    ████████████████████████

Your Social Security Number:    ████████████████████████

Your Phone Number:    ████████████████████████

State whether you are the "natural parent," "legal guardian," or "other custodian" of the NAS Child:    ████████████████████████

## PART TWO: "OPT OUT" OF LIQUIDATION UNDER THE NAS PI TDP PROCEDURE

If you would like to forfeit all rights to have the NAS PI Claimant's NAS PI Channeled Claims liquidated under the NAS PI TDP and instead pursue the NAS PI Claimant's NAS PI Claim by filing a lawsuit against the PI Trust in court at your own expense, check the following box and provide the additional information sought in this PART TWO.  **WARNING:   Mark the box in this paragraph of PART TWO only if you elect to "opt out" of the NAS PI TDP liquidation process and instead pursue your NAS PI Claim in civil court through the tort system by filing a lawsuit in court at your own expense.**

☐   **I have checked this box to opt out of the liquidation procedures of the NAS PI TDP and the PI Trust NAS Fund.**

---

**PART THREE: MEDICAL PROVIDER INFORMATION**  (skip this section if you elected to "opt out")

**Section 3.A:** This section concerns licensed medical providers who have diagnosed the NAS Child with any medical, physical, cognitive or emotional condition resulting from his/her intrauterine exposure to opioids or opioid replacement or treatment medication(s).  The diagnoses may include, but are not limited to, the condition known as neonatal abstinence syndrome ("NAS").  Fill out and provide the following information, if known:

| Name of Licensed Medical Provider | Address | City | State | Zip | Date of Diagnosis |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**Section 3.B:**  Even if you do not know the information sought in Section 3.A, please include with your submission of this Claim Form Competent Evidence that a licensed medical provider has diagnosed the NAS PI Claimant with any medical, physical, cognitive or emotional condition resulting from the Claimant's intrauterine exposure to opioids or opioid replacement or treatment medication(s).  The diagnoses may include, but are not limited to, the condition known as neonatal abstinence syndrome ("NAS").  The diagnosis can be made by any medical professional, specifically including physicians, nurses, physician assistants, mental health counselors or therapists, or professionals at a rehabilitation center.  Evidence can include, among other things, medical records evidencing that the NAS Child had a NAS diagnosis, post-natal treatment for symptoms caused by opioid exposure, symptoms of post-natal withdrawal from opioids, medical scoring for NAS or NOWS which is positive or indicates fetal opioid exposure, a positive toxicology screen of the birth mother or infant for opioids or opioid-weaning drugs, or a maternal diagnosis of opioid use disorder by the birth mother.

**Section 3.C: Was the NAS Child born in a medical facility? If so:**

- 4 -

Name of the Facility where
the NAS Child was born: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Location (city and state)
where the NAS Child was born: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

**PART FOUR: MEDICAL LIENS** (skip this section if you elected to "opt out")

**Section 4.A:** Did any insurance company pay for medical treatment for the NAS Child's opioid-related injuries?

Yes: ☐

No: ☐

**Section 4.B:** In the last 20 years, was the NAS Child eligible for coverage by any of the following, or did any of the following actually pay for his/her opioid-related health costs?  Respond by writing "Yes" or "No" next to each insurance provider name, and provide the requested information as to each. If any insurance carrier who provided coverage to the opioid user is not identified, please fill in that carrier's information at the bottom of the chart.

| Type of Insurance | Yes/ No | Street Address | Phone Number | Policy Number (if any) | Policy Holder | Dates of Coverage |
|---|---|---|---|---|---|---|
| Medicare | | | | | | |
| Medicaid | | | | | | |
| Tricare | | | | | | |
| VA | | | | | | |
| Champus | | | | | | |
| Private  (Name Below): | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**PART FIVE: SIGNATURE (You must complete this Part Five regardless of your elections above)**

Please fill out and sign this section when you have completed this Claim Form.

NAS Child's Name: _____

NAS Child's E-mail (if any): _____

NAS Child's Phone Number (if any): _____

Your Name: _____

Your E-mail:                          _____

Your Phone Number:                    _____


I am including the evidence requested in Section 3.B above in my submission of this form: ☐


*I declare under penalty of perjury that the representations made and the information provided on this Claim Form are true and, correct and complete to the best of my knowledge.*

*Signature of NAS PI Claimant or individual acting on behalf of the NAS PI Claimant*

## EXHIBIT B

## PROCEDURES FOR NAS PI CLAIMANTS WHO OPT TO LIQUIDATE THEIR NAS PI CLAIMS IN THE TORT SYSTEM RATHER THAN UNDER THE INDIVIDUAL PURDUE PHARMA LP NAS TRUST DISTRIBUTION PROCEDURE

The following procedures shall apply in the case of an NAS PI Claimant[1] who elects, subject to the terms hereof, to liquidate his or her NAS PI Claim by commencing a lawsuit in the tort system after so timely indicating on his or her NAS PI Claim Form. By so electing, such NAS PI Claimant forfeits any right to have his or her NAS PI Claim liquidated under the liquidation provisions of the NAS PI TDP, and instead shall have the right to liquidate his or her NAS PI Claim exclusively in the tort system. Only claims that meet the definition of "NAS PI Claim" under the Plan may be litigated in the tort system. The adjudication of an NAS PI Claim in the tort system shall be deemed to be an adjudication of that NAS PI Claim and any associated NAS PI Channeled Claims of the NAS PI Claimant regarding the same injuries that are the subject of his or her NAS PI Claim. Any Distribution from the PI Trust on a Final Judgment (as defined below) in respect of such NAS PI Claim, if any, shall be deemed to be a Distribution in satisfaction and conclusive resolution of such NAS PI Claim and such associated NAS PI Channeled Claims.

## § 1.    SUITS IN THE TORT SYSTEM.

If an NAS PI Claimant timely filed a proof of claim in the Chapter 11 Cases asserting his or her NAS PI Claim, then he or she may elect to liquidate such NAS PI Claim in the tort system rather than under the NAS PI TDP by checking the box so indicating on his or her NAS PI Claim Form, which NAS PI Claim Form must be filed by the date that is one hundred and fifty (150) days[2] after the applicable NAS PI Claim Form is disseminated to him/her.[3] If the NAS PI Claimant makes such election, then the NAS PI Claimant may file a lawsuit regarding only his or her NAS PI Claim (and no other claims) against only the PI Trust (and including no other parties as defendants) solely in the United States District Court for the Southern District of New York (the "<u>SDNY District Court</u>"),[4] unless such court orders pursuant to 28 USC § 157(b)(5) that such

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the NAS PI TDP or, if not defined in the NAS PI TDP, the meanings ascribed to such terms in the Plan.

[2]    Within sixty (60) days after Effective Date, the NAS PI Claim Form will be made available to NAS PI Claimants electronically and, if the NAS PI Claimant is a pro se claimant, also mailed to such NAS PI Claimant in physical copy. When disseminated, each NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the NAS PI Claim Form must be returned.

[3]    The filing of an NAS PI Claim Form indicating that an NAS PI Claimant has elected to liquidate his or her NAS PI Claim in the tort system shall have no effect on any federal or state statute of limitation or repose applicable to the ~~claims~~NAS PI Claims asserted by such NAS PI ~~Claimant's action~~Claimant.

[4]    The Debtors shall seek an order from the SDNY District Court requiring that lawsuits filed by Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system be filed and tried solely in the SDNY District Court pursuant to 28 U.S.C. § 157(b)(5).

suit may be filed and tried in the United States District Court for the district in which the NAS PI Claim arose.

Any such lawsuit ~~must~~shall be filed by the NAS PI Claimant in an individual capacity and not as a member or representative of a class, and no such lawsuit ~~may~~shall be consolidated with the lawsuit of any other plaintiff by, or on the motion of, any plaintiff.[5] All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[6]

Subject to the PI Trust's receipt of an NAS PI Claim Form so indicating that an NAS PI Claimant has elected to retain the option to file a lawsuit ~~as set forth above~~ in the tort system as set forth above, NewCo and the Plan Administration Trust will establish and maintain, as necessary, a document reserve (the "PI Document Reserve") containing such materials as are necessary to such lawsuit as discovery material. Any such NAS PI Claimant will be provided access to the PI Document Reserve subject to agreeing to (i) a protective order acceptable to the PI Trustee, the Plan Administration Trustee, and NewCo, and (ii) to the extent that the materials deposited into the PI Document Reserve ~~by the PI Trust~~ include any documents produced by the Shareholder Released Parties that are not included in the Public Document Repository in accordance with the Plan and the Shareholder Settlement Agreement (the "Shareholder Released Party Documents"), the Protective Order, which shall exclusively govern the terms of disclosure of the Shareholder Released Party Documents. Any such NAS PI Claimant who propounds on the PI Trust, NewCo, the Plan Administration Trustee, any other Creditor Trust, or any Debtor a request for additional ~~document~~documents or testimonial discovery must in such request (i) represent that such NAS PI Claimant has conducted a reasonable search of the PI Document Reserve and, if it has been established, the Public Document Repository, and believes, based on such reasonable search, that the documents, information, or testimony it seeks is not available in either the PI Document Reserve or the Public Document Repository, and (ii) state and explain the basis for the NAS PI Claimant's good faith belief that the additional discovery he or she seeks is relevant to such lawsuit. The PI Trust shall not be liable for any costs incurred by parties other than the PI Trust in connection with third-party discovery propounded by any party other than the PI Trust.[7]

If an NAS PI Claimant obtains a judgment on his or her NAS PI Claim in the tort system and such judgment becomes a final order (~~each,~~ a "Final Judgment"), such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI Trust, subject to

---

[5]    The trustee of the PI Trust (the "PI Trustee") shall be empowered (i) to bring one or more consolidated actions against multiple Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system and (ii) to seek to consolidate multiple lawsuits commenced by individual Holders of PI Claims who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system.

[6]    Among other things, the PI Trust shall be empowered to assert that the claim that is the subject of an NAS PI Claimant's lawsuit is not ~~a~~an "NAS PI Claim" within the meaning of the Plan.

[7]    In order to minimize costs incurred by the PI Trust in connection with third-party discovery, the PI Trustee shall be empowered to seek to consolidate discovery propounded by Holders of PI Claims or the PI Trust in multiple lawsuits commenced by individual Holders of PI Claims ~~who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system~~against the PI Trust.

the ~~limitation on damages provision~~limitations set forth in Section 2 below, as well as the applicable Payment Percentage and Maximum Value (each as defined below), as provided in Section 6 below, the deductions as set forth in Section 6 below, and the resolution of healthcare liens, as provided in Section 7 below.

## § 2.    LIMITATION ON DAMAGES AND ATTORNEYS' FEES.

Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any NAS PI Claim litigated against the PI Trust in the tort system.

## § 3.    NAS MAXIMUM VALUE.

Payment on a Final Judgment for an NAS Child shall not exceed $21,000 (the "NAS Maximum Value") which is estimated to be three times the maximum value that will be distributed under the NAS PI TDP for a given NAS PI Claim.

## § 4.    NAS PAYMENT PERCENTAGE.

A Final Judgment on an NAS PI Claim, minus any multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), interest, attorneys' fees or costs (including statutory attorneys' fees and costs) that may have been awarded as part of such Final Judgment, shall be subject to reduction by the same percentage that NAS PI Claims liquidated under the NAS PI TDP are reduced prior to payment. In other words, an NAS PI Claimant who elects to liquidate his or her NAS PI Claim in the tort system shall not be entitled to receive more than his or her pro-rata share of the value available for distribution to all NAS PI Channeled Claims entitled to a recovery pursuant to the NAS PI TDP. ~~In the view~~Subject to Section 5.2(c) of the ~~NAS Committee~~Plan, the estimated awards for NAS PI Claims liquidated under the NAS PI TDP represent an estimated pro-rata percentage recovery by NAS PI Claimants holding Allowed NAS PI Channeled Claims of approximately [●]2% (such pro-rata percentage recovery as may be altered over time, the "NAS Payment Percentage"). ~~Accordingly, the~~The initial NAS Payment Percentage is [●]2%.

No holder of an NAS PI Claim who elects to liquidate his or her NAS PI Claim in the tort system shall receive a payment that exceeds the liquidated value of his or her NAS PI Claim multiplied by the NAS Payment Percentage in effect at the time of payment (such value so reduced, the "NAS Percentage-Reduced Claim"); *provided, however*, that if there is a reduction in the NAS Payment Percentage, the PI Trustee, in his or her sole discretion, may cause the NAS PI Trust Fund to pay an NAS PI Claim based on the NAS Payment Percentage that was in effect prior to the reduction if the judgment in respect of such NAS PI Claim became a Final Judgment prior to the date on which the PI Trustee proposes the new NAS Payment Percentage to the Oversight Committee and the processing of such NAS PI Claim was unreasonably delayed due to circumstances beyond the control of the NAS PI Claimant or the NAS PI Claimant's Counsel (as applicable).

## § 5.    ADJUSTMENT OF THE NAS PAYMENT PERCENTAGE.

The NAS Payment Percentage shall be subject to change if the PI Trustee (with the assistance of the Claims Administrator), with the consent of the PI Trust's oversight committee (the "Oversight Committee"), determines that an adjustment is required. No less frequently than once every three (3) years, commencing with the date that is three (3) years after the Effective Date of the Plan, the PI Trustee (with the assistance of the Claims Administrator) shall reconsider the then-applicable NAS Payment Percentage to assure that it is based on accurate, current information and may, after such reconsideration and with the consent of the Oversight Committee, change the NAS Payment Percentage if necessary with the consent of the Oversight Committee. The PI Trustee shall reconsider the then-applicable NAS Payment Percentage at shorter intervals if he or she deems such reconsideration to be appropriate or if requested to do so by the Oversight Committee.

The PI Trustee shall base his or her determination of the NAS Payment Percentage on current estimates of the number of NAS PI Channeled Claims, the value of the assets of the PI Trust NAS Fund available for the payment of Allowed NAS PI Channeled Claims pursuant to the NAS PI TDP and amounts due and estimated to become due pursuant to the NAS PI TDP in respect toof Final Judgments obtained by NAS PI Claimants who elect to liquidate their NAS PI Claims in the tort system, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of (i) full value to all Holders of Allowed NAS PI Channeled Claims and (ii) the NAS Maximum Value to NAS PI Claimants who elect to liquidate their NAS PI Claims in the tort system. When making these determinations, the PI Trustee (with the assistance of the Claims Administrator) shall exercise common sense and flexibly evaluate all relevant factors.

If a redetermination of the NAS Payment Percentage has been proposed in writing to the Oversight Committee by the PI Trustee, but such redetermination of the NAS Payment Percentage has not yet been adopted by the Oversight Committee, a NAS PI Claimant that has obtained a Final Judgment shall receive the lower of the then-current NAS Payment Percentage and the proposed NAS Payment Percentage. However, if the proposed NAS Payment Percentage is the lower amount but is not subsequently adopted by the Oversight Committee, the NAS PI Claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount. Conversely, if the proposed NAS Payment Percentage is the higher amount and subsequent adopted, the NAS PI Claimant who has obtained a Final Judgment shall thereafter receive the difference between the current amount and the higher adopted amount.

At least thirty (30) days prior to proposing in writing to the Oversight Committee a change in the NAS Payment Percentage, the PI Trustee shall post to the PI Trust's website a notice indicating the PI Trustee is reconsidering the NAS Payment Percentage.

If the PI Trustee (with the assistance of the Claims Administrator), with the consent of the Oversight Committee, makes a determination to increase the NAS Payment Percentage due to a material change in estimates of the future assets and/or liabilities of the PI Trust NAS Fund, the Claims Administrator shall make supplemental payments to all NAS PI Claimants who obtained previously a Final Judgment and received payments based on a lower NAS Payment Percentage. The amount of any such supplemental payment shall be the liquidated value of the NAS PI

Channeled Claim in question multiplied by the newly-adjusted NAS Payment Percentage, less all amounts paid previously to the NAS PI Claimant ~~with~~in respect of such NAS PI Channeled Claim.

The PI Trust's obligation to make a supplemental payment to an NAS PI Claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment/payments that was/were also suspended because it/they would have been less than $100.00. However, the PI Trust's obligation shall resume, and the PI Trust shall pay any such aggregate supplemental payments due to ~~the~~such NAS PI Claimant ~~that obtained a Final Judgment,~~ at such time that the total exceeds $100.00.

## § 6.    PAYMENT OF JUDGMENTS FOR MONEY DAMAGES.

An NAS PI Claimant who obtains a Final Judgment shall be entitled to receive from the PI Trust NAS Fund, in full and final satisfaction of that Final Judgment, a gross amount (subject to deductions set forth next) equal to the *lesser* of (i) the NAS Percentage-Reduced Claim (using the NAS Payment Percentage then in effect) and (ii) the NAS Maximum Value~~, in each case as in effect on the date of the pending payment, as described next (~~ (such lesser amount, the "NAS Gross Amount"). A NAS PI Claimant's NAS Gross Amount shall be subject to the following deductions and holdbacks: (A) its pro rata share of the ~~operating expenses~~Creditor Trust Operating Expenses of the PI Trust; (B) amounts necessary to settle liens held by private insurance companies against such amount, if any; (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of the federal healthcare programs like Medicare, Tricare, VA, or Medicaid against such amount, if any; (D) its pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan and the Trust Agreement, and (E) the common benefit assessment required under Section 5.8(c) of the Plan, and the fees and costs of such NAS PI Claimant's individual attorney(s) in the Chapter 11 Cases, if any, reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan.[8]  The resulting net amount shall be paid to the NAS PI Claimant in the form of an initial payment not to exceed $3,500.00 and five (5) additional equal installments in years six (6) through ten (10) following the year of the initial payment; *subject, however*, to the prior satisfaction of healthcare liens as set forth in Section 7 below. In no event shall interest be paid in respect of any judgment obtained in the tort system.

None of the NAS Percentage-Reduced Claim, the NAS Maximum Value, the NAS Gross Amount, the deductions therefrom, or the payment schedule is subject to any appeal or reconsideration.

---

[8]    Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

## § 7.    RESOLUTION OF HEALTH CARE LIENS.

The PI Trust shall not issue any payment in respect of a Final Judgment until the Claims Administrator has received proof to his or her reasonable satisfaction that any private or governmental ~~health care~~healthcare liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

## § 8.    APPLICABILITY OF SPECIAL PROCEDURES FOR MINORS AND HEIRS.

The special procedures set forth in Exhibit E to the NAS PI TDP shall apply to all NAS PI Claimants who are minors under applicable law and elect, subject to the terms hereof, to liquidate their NAS PI Claims by commencing a lawsuit in the tort system. Anyone seeking a Distribution from the PI Trust in ~~their~~his or her capacity as an heir must execute and submit the applicable Heirship Declaration attached to the NAS PI TDP as Exhibit D.[9]

---

[9]    Exhibit D contains two declaration forms. One applies if the NAS-Decedent named the NAS PI Claimant as executor in his/her will; the other applies if the NAS Decedent had no will.

**EXHIBIT E**

**DISTRIBUTIONS TO OR FOR THE BENEFIT OF MINOR CLAIMANTS FOR
THE INDIVIDUAL PURDUE PHARMA LP PI TRUST DISTRIBUTION PROCEDURE**[1]

The following procedures apply to any PI Claimant who is a minor under applicable law (a "Minor Claimant") for so long as the PI Claimant remains a minor under applicable law. These procedures apply regardless of whether the Minor Claimant holds ~~a~~an NAS PI Claim or a Non-NAS PI Claim, and regardless of whether the Minor Claimant's Proxy (as defined below) elects to have that PI Claim liquidated under the PI TDP[2] or to pursue it in the tort system.

1. **Actions by Proxy of Minor Claimant.** A Minor Claimant's custodial parent, his/her legal guardian under applicable law (a "Guardian"), or an adult providing custody and care to the minor (any of the foregoing acting on behalf of the Minor Claimant, the "Proxy") is authorized to make submissions on behalf of the Minor Claimant under the PI TDP, subject to paragraph 2 below. The Proxy shall be responsible for submitting, on behalf of such Minor Claimant, all required forms under the PI TDP, including the Claim Form, as well as any evidence required by the PI Trust to support the Claim Form, and any other documentation required or requested pursuant to the PI TDP. The Proxy is authorized to take, on behalf of a Minor Claimant, all actions under the PI TDP that the Minor Claimant would be authorized to take if such Minor Claimant were an adult, other than receiving distributions from the PI Trust (unless so authorized by paragraph 5 below). These actions include, where permitted, making an opt-out or, if the Minor

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PI Trust Distribution Procedure ("PI TDP").

[2] "PI TDP" refers to either the NAS PI TDP or the Non-NAS PI TDP, as applicable for any particular PI Claimant.

Claimant is a Non-NAS PI Claimant, making a payment election or requesting an appeal pursuant to Exhibit C to the Non-NAS PI TDP.

2. **Establishing Proxy of a Minor Claimant**. Any purported Proxy making a submission to the PI Trust on behalf of a Minor Claimant shall include along with such submission documentation of his/her authority to act on behalf of the Minor Claimant, consisting of the following:

   a. If the purported Proxy is the Guardian of the Minor Claimant, then the court order appointing that Proxy as Guardian, or other documents reasonably acceptable to the Claims Administrator as sufficient under applicable law to evidence the guardianship.

   b. If the purported Proxy is the custodial parent of the Minor Claimant, then a sworn statement that such Proxy is the custodial parent of the Minor Claimant.

   c. If the purported Proxy is neither the Guardian nor custodial parent of the Minor Claimant, then a sworn statement by the purported Proxy that he/she is providing custody and care to the Minor Claimant, stating for how long he/she has been providing such care and custody, explaining his/her relationship to the Minor Claimant and the circumstances around the provision of care and custody, as well as a statement and/or records from one or more of the following in support of his/her sworn statement:

      1. Minor Claimant's school

      2. Purported Proxy's landlord or property manager

      3. Minor Claimant's health provider

      4. Minor Claimant's child care provider

5. Purported Proxy's placement agency

6. Governmental social services agency

7. Indian tribe officials

8. Purported Proxy's Employer

Whether the purported Proxy is a Guardian, custodial parent, or neither, the Claims Administrator may require additional corroborating evidence at his discretion, including in the event that instructions are received from more than one purported Proxy for the same Minor Claimant.

3. **Distributions to Minor Claimants.**   When the PI Trust has determined the final distributable amount on a Minor Claimant's claim, it will send notice of such final amount to the Minor Claimant's Proxy and counsel (if known).  Such notice will include a letter inviting the Proxy to discuss how the distributable amount was determined, and the Claims Administrator will take reasonable steps to ensure that the Proxy understands how such amount was determined.  Any distributions owing to a Minor Claimant that are ready for issue by the PI Trust at a time when the Minor Claimant is still a minor under applicable law shall be (i) used to pay the individual attorneys' fees of the Minor Claimant pursuant to paragraph (4) below and (ii) with respect to the remainder, paid into an interest-bearing sub-fund of the Trust (the "Minor Claimants Account"), held there for the sole benefit of the Minor Claimant, and invested in a U.S. governmental money-market fund until such funds are distributed pursuant to Section 5 below or until the Minor Claimant becomes an adult under applicable law (the "Adult Distribution Date"), at which time the amount then held in such account (including interest earned) shall be

paid directly to such PI Claimant.  Pending distributions for all Minor Claimants may be held in the same sub-fund.

4. **Payments of attorneys' fees.**

Within a reasonable period following receipt of ~~Notice~~notice of the final distributable amount on Minor Claimant's PI Channeled Claim, and using forms to be provided by the Claims Administrator, the Minor Claimant's counsel shall submit to the PI Trust, with a copy to the Proxy, a request for payment of legal fees and expenses from the Minor's recovery.  It is the Minor Claimant's attorney's duty to comply with all ethical and legal rules respecting such legal fees and expenses, and the Claims Administrator is permitted to rely upon such representation in issuing payments in respect of such fees and expenses. Absent objection from the Proxy with respect to such asserted fees and expenses, the Claims Administrator shall remit payment to the Minor Claimant's attorney in accordance with the latter's request.

5. **Early Distributions.**  Funds held in the Minor Claimants Account for a Minor Claimant may be released prior to the Adult Distribution Date only pursuant to (a) an order of a U.S. court of general jurisdiction in the Minor Claimant's state of residence, or (b) an order entered by the United States Bankruptcy Court for the Southern District of New York.[3]

---

[3] Early distributions mechanic under review.

## **Exhibit L**

PI Trust Agreement

**PI TRUST AGREEMENT**

# TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST .................................................................4

    1.1    Creation and Name ..............................................................4

    1.2    Purpose ..............................................................................5

    1.3    Transfer of Assets ...............................................................8

    1.4    Acceptance of Assets and Assumption of Liabilities ............9

ARTICLE II POWERS AND TRUST ADMINISTRATION ...............................10

    2.1    Powers...............................................................................10

    2.2    General Administration .....................................................15

    2.3    Claims Administration ......................................................21

    2.4    Lien Resolution.................................................................26

    2.5    Financial Advisor..............................................................27

    2.6    Appeals Master .................................................................27

    2.7    Trust Expenses and Other Fees and Expenses...................27

    2.8    Common Benefit Escrow/Common Benefit Fund Assessments ........................29

    2.9    Medicare Reporting Obligations.......................................30

ARTICLE III ACCOUNTS AND INVESTMENTS ..............................................31

    3.1    Establishment of Accounts ...............................................31

    3.2    Investments.......................................................................32

    3.3    Source of Payments ..........................................................33

    3.4    Accounting Statements and Audit .....................................33

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE................................................34

    4.1    Number .............................................................................34

    4.2    Term of Service ................................................................34

    4.3    Appointment of Successor Trustee....................................35

-i-

# TABLE OF CONTENTS
(continued)

**Page**

4.4    Liability of Trustee and Others ........................................................ 36

4.5    Compensation and Expenses of Trustee and Delaware Trustee ........................... 36

4.6    Indemnification ........................................................................ 37

4.7    Lien ................................................................................... 39

4.8    Trustee's Employment of Experts; Delaware Trustee's Employment of Counsel ................................................................................. 39

4.9    Trustee's Independence ................................................................ 40

4.10   No Bond ............................................................................... 40

4.11   Delaware Trustee ...................................................................... 40

ARTICLE V OVERSIGHT COMMITTEE ......................................................... 43

5.1    Members ............................................................................... 43

5.2    Authority with Respect to Distribution of Funds and Review of Claims Operations ............................................................................. 43

5.3    General Power to Procure Insurance .................................................... 43

5.4    Duties ................................................................................. 44

5.5    Term of Office ........................................................................ 44

5.6    Appointment of Successor ............................................................... 45

5.7    Compensation and Expenses of the Oversight Committee ................................. 46

5.8    Meetings and Decisions ................................................................ 46

5.9    Procedures for Consulting with and Obtaining Consent of Oversight Committee ............................................................................. 47

ARTICLE VI GENERAL PROVISIONS ........................................................... 49

6.1    Irrevocability ........................................................................ 49

6.2    Term; Termination ..................................................................... 49

6.3    Independent Charitable Trust .......................................................... 50

# TABLE OF CONTENTS
(continued)

**Page**

6.4    Amendments ....................................................................................51

6.5    Severability ......................................................................................52

6.6    Notices .............................................................................................52

6.7    Successors and Assigns ...................................................................54

6.8    Limitation on Claim Interests for Securities Laws Purposes.................54

6.9    Entire Agreement; No Waiver .........................................................54

6.10   Headings ..........................................................................................55

6.11   Governing Law .................................................................................55

6.12   Settlors' Representative and Cooperation ........................................56

6.13   Dispute Resolution...........................................................................56

6.14   Enforcement and Administration......................................................57

6.15   Effectiveness....................................................................................57

6.16   Counterpart Signatures ....................................................................57

Exhibit 1   Certificate of Trust

## PI TRUST AGREEMENT

This PI Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into, pursuant to the *[Fifth] Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated [June 3], 2021 (as modified, amended, or supplemented from time to time, and together with all exhibits and schedules thereto, the "**Plan**"),[1] by Purdue Pharma L.P. and its Debtor affiliates[2] (collectively referred to as the "**Debtors**" or "**Settlors**"),[3] the Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al. identified in the *Amended Verified Statement of the Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al., Pursuant to Bankruptcy Rule 9019* [D.I. 1480] (the "**Ad Hoc Group of Individual Victims**"), the Ad Hoc Committee of NAS Children identified in the First Amended Verified Statement of the Ad Hoc Committee of NAS Children Pursuant to Bankruptcy Rule 2019 [D.I. 1582] (the "**NAS Committee**"), Edgar C. Gentle III, as trustee (the "**Trustee**"), [_____], as statutory Delaware trustee (the "**Delaware Trustee**"), and the members of the Oversight Committee identified on the signature pages hereof (together with the Debtors, the Ad Hoc Group of

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in title 11 of the United States Code (the "**Bankruptcy Code**") or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), shall have the meanings ascribed to them by the Bankruptcy Code or Bankruptcy Rules, as applicable, and such definitions are incorporated herein by reference.

[2] The Debtors in these Chapter 11 Cases are as follows: Purdue Pharma L.P.; Purdue Pharma Inc.; Purdue Transdermal Technologies L.P.; Purdue Pharma Manufacturing L.P.; Purdue Pharmaceuticals L.P.; Imbrium Therapeutics L.P.; Adlon Therapeutics L.P.; Greenfield BioVentures L.P.; Seven Seas Hill Corp; Ophir Green Corp.; Purdue Pharma of Puerto Rico; Avrio Health L.P.; Purdue Pharmaceutical Products L.P.; Purdue Neuroscience Company; Nayatt Cove Lifescience Inc.; Button Land L.P.; Rhodes Associates L.P.; Paul Land Inc.; Quidnick Land L.P.; Rhodes Pharmaceuticals L.P.; Rhodes Technologies; SVC Pharma L.P.; and SVC Pharma Inc.

[3] The Chapter 11 Cases of the Debtors and Debtors in Possession are jointly administered under Case No. 19-23649 (RDD) in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and known as *In re Purdue Pharma L.P., et al.*, Case No. 19-23649 (RDD).

Individual Victims, the NAS Committee, the Trustee, and the Delaware Trustee, the "**Parties**"); and

**WHEREAS,** the Debtors have reorganized under the provisions of chapter 11 of the Bankruptcy Code; and

**WHEREAS,** the Confirmation Order has been entered by the Bankruptcy Court; and

**WHEREAS,** the Plan provides, inter alia, for the establishment of a Creditor Trust with respect to PI Channeled Claims in accordance with Section 5.7 of the Plan (the "**PI Trust**"); and

**WHEREAS,** pursuant to the Plan, the PI Trust shall be established to (i) assume all liability for the PI Channeled Claims, (ii) hold the MDT PI Claim and collect the Initial PI Trust Distribution and additional payments due under the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents, (iii) administer PI Channeled Claims, (iv) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents, (v) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement and (vi) carry out such other matters as are set forth in the PI Trust Documents; and

**WHEREAS**, the Plan and the Master TDP provide that, as of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all PI Channeled Claims shall automatically, and without further act, deed or court order, be channeled to and assumed by the Master Disbursement Trust solely for the purpose of effectuating the Master TDP, and further provide that immediately thereafter, any and all PI Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the PI Trust; and

**WHEREAS**, pursuant to the Plan and the Confirmation Order, the PI Trust shall (i) hold, manage, and invest all funds and other Assets received by the PI Trust from the Master Disbursement Trust for the benefit of the beneficiaries of the PI Trust; (ii) hold and maintain the PI Trust Operating Reserve (as hereinafter defined); and (iii) administer, process, resolve, and liquidate all PI Channeled Claims that are Allowed by the Trustee in accordance with (A) the *Individual Purdue Pharma L.P. PI Trust Distribution Procedure for Non-NAS PI Channeled Claims* (the "**Non-NAS PI TDP**"), attached as Exhibit I of the Plan Supplement (the "**Allowed Non-NAS PI Channeled Claims**") and (B) the *Individual Purdue Pharma L.P. PI Trust Distribution Procedure for NAS PI Channeled Claims* (the "**NAS PI TDP**," and together with the Non-NAS PI TDP, the "**TDPs**"), attached as Exhibit J of the Plan Supplement (the "**Allowed NAS PI Channeled Claims**," and together with the Allowed Non-NAS PI Channeled Claims, the "**Allowed PI Channeled Claims**") and to make payments pursuant to, and subject to the terms of, the Master Agreement Governing the Opioids Private Lien Resolution Program (the "**LRP Agreement**"), attached hereto as Exhibit D; and

**WHEREAS,** it is the intent of the Debtors, the Ad Hoc Group of Individual Victims, the NAS Committee, the Trustee, and the Oversight Committee that the PI Trust will value the PI Channeled Claims, and be in a financial position to pay Holders of Allowed PI Channeled Claims, in accordance with the terms of this Trust Agreement, the TDPs, and the LRP Agreement; and

**WHEREAS,** all rights of the Holders of PI Channeled Claims (the "**PI Claimants**") arising under this Trust Agreement, the TDPs, and the LRP Agreement shall vest upon the Effective Date; and

**WHEREAS,** pursuant to the Plan, the PI Trust is intended to qualify as a "qualified settlement fund" (a "**Qualified Settlement Fund**") within the meaning of section 1.468B-1, et seq. of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"), and to be treated consistently for state and local tax purposes to the extent applicable; and

**WHEREAS,** the Bankruptcy Court has determined that the PI Trust and the Plan satisfy all the prerequisites for issuance of an injunction pursuant to section 105(a) of the Bankruptcy Code with respect to any and all PI Channeled Claims, and such injunction has been entered in connection with the Confirmation Order;

**NOW, THEREFORE,** it is hereby agreed as follows:

<div align="center">

**ARTICLE I**

**AGREEMENT OF TRUST**

</div>

**1.1    Creation and Name.**  The Debtors as Settlors hereby create a trust known as the "PI Trust" which is the PI Trust provided for and referred to in Section 5.7 of the Plan.  The Trustee of the PI Trust may transact the business and affairs of the PI Trust in the name of the PI Trust, and references herein to the PI Trust shall include the Trustee acting on behalf of the PI Trust.  It is the intention of the Parties that the PI Trust constitute a statutory trust under Chapter 38 of title 12 of the Delaware Code, 12 Del. C. § 3801, et seq. (the "**Act**") and that this Trust Agreement constitutes the governing instrument of the PI Trust.  The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit 1.

**1.2    Purpose**.  The purpose of the PI Trust is to assume all liabilities and responsibility for the PI Channeled Claims to the extent provided in the Plan and Master TDP and to make distributions in respect of Allowed NAS PI Channeled Claims and Allowed Non-

<div align="center">-4-</div>

NAS PI Channeled Claims in accordance with the NAS PI TDP and the Non-NAS PI TDP, respectively, and the LRP Agreement, as well as to, among other things:

(a)    assume all liability for the PI Channeled Claims;

(b)    hold the MDT PI Claim and collect the Initial PI Trust Distribution and additional payments due under the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents;

(c)    direct the administration, processing, resolution, and liquidation of PI Channeled Claims[4] and make Distributions on account of Allowed PI Channeled Claims, each in accordance with the Plan, the TDPs, the LRP Agreement, and the Confirmation Order;

(d)    hold, manage, and invest all funds and other Assets of the PI Trust for use in paying and resolving PI Channeled Claims in accordance with the Plan, the TDPs, the LRP Agreement, and the Confirmation Order;

(e)    qualify at all times as a Qualified Settlement Fund within the meaning of the QSF Regulations and be treated consistently for state and local tax purposes to the extent applicable;

(f)    establish a fund to make Distributions on account of Allowed NAS PI Channeled Claims (the "**PI Trust NAS Fund**") and a fund to make Distributions on account of Allowed Non-NAS PI Channeled Claims (the "**PI Trust Non-NAS Fund**") and make such Distributions in accordance with the Plan, the TDPs, the LRP Agreement, and the Confirmation Order;

---

[4] If an NAS PI Claimant checks the box on the NAS PI Claim Form (as defined in the NAS PI TDP) indicating his or her election to liquidate his or her NAS PI Claim in the tort system rather than under the liquidation provisions of the NAS PI TDP, then such NAS PI Claim shall not be liquidated under the NAS PI TDP; if a Non-NAS PI Claimant checks the box on the Non-NAS Claim Form (as defined in the Non-NAS PI TDP) indicating his or her election to liquidate his or her Non-NAS PI Claim in the tort system rather than under the Non-NAS PI TDP, then such Non-NAS PI Claim shall not be liquidated under the Non-NAS PI TDP.

(g)    fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement; and

(h)    pay assessments to the extent required by Section 5.8(c) of the Plan to fund the Common Benefit Escrow and then, upon its establishment, the Common Benefit Fund in accordance with the Plan.  The PI Trust is to use the PI Trust's assets and income to:

(i)    pay Holders of Allowed PI Channeled Claims in accordance with this Trust Agreement, the TDPs, and the LRP Agreement such that Holders of Allowed PI Channeled Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such Allowed PI Channeled Claims;

(ii)    fund the PI Trust NAS Fund and the PI Trust Non-NAS Fund and make Distributions therefrom to holders of Allowed NAS PI Channeled Claims and Allowed Non-NAS PI Channeled Claims, respectively, in accordance with the Plan, the TDPs, the LRP Agreement, and the Confirmation Order;

(iii)    fund the TPP LRP Escrow Account and make payments therefrom to Third Party Payors party to the LRP Agreement in accordance with and subject to the terms of the LRP Agreement;

(iv)    collect and remit assessments as and to the extent required by the Plan to fund the Common Benefit Escrow and then, upon its establishment, the Common Benefit Fund in accordance with Section 5.8(c) of the Plan;

(v)    hold and maintain reserves (the **"PI Trust Operating Reserve"**) to pay any and all fees, costs, expenses, taxes, disbursements, debts, or

obligations of the PI Trust incurred from the operation and administration of the PI Trust (including in connection with the TDPs and the LRP Agreement) and management of the PI Trust Assets (together, the "**Trust Operating Expenses**"), which shall be (a) funded with Cash and cash equivalents held by the PI Trust in accordance with the PI Trust Documents and (b) held by the PI Trust in a segregated account and administered by the Trustee;

(vi)    satisfy and pay the Trust Operating Expenses from the PI Trust Operating Reserve in accordance with the PI Trust Documents;

(vii)    replenish periodically, until the dissolution of the PI Trust, the PI Trust Operating Reserve from Cash held or received by the PI Trust to the extent deemed necessary by the Trustee to satisfy and pay estimated future Trust Operating Expenses in accordance with the PI Trust Documents;

(viii)    pay all fees and expenses incurred by the PI Trust with respect to, among other things, making distributions on Allowed PI Channeled Claims, including attorneys' fees and costs (as described in Section 2.7 herein and together with the Trust Operating Expenses, the "**Trust Expenses**").

No Future PI Channeled Claim shall be channeled to, attach to, be payable or otherwise compensable from, be eligible to receive a Distribution from, or have any recourse to, the PI Trust or the PI Trust Assets (as defined in Section 1.3 of this Trust Agreement).

1.3    **Transfer of Assets**.  Pursuant to, and in accordance with Articles IV and V of the Plan, the PI Trust has received the Initial PI Trust Distribution and the MDT PI Claim (together, the "**PI Trust Assets**") to fund the PI Trust and to settle or discharge all PI Channeled Claims,

subject to the PI Trust Deductions and Holdbacks described below.  In all events, the PI Trust

Assets and any other assets to be transferred to the PI Trust under the Plan shall be transferred to

the PI Trust free and clear of any Claims, Liens, or other recourse or encumbrances, and shall not

be subject to attachment, disgorgement, or recoupment by any Person.  The PI Trust shall

allocate the Initial PI Trust Distribution and additional payments it receives under the MDT PI

Claim as follows:  (i) 6.43% to the PI Trust NAS Fund, up to an aggregate maximum amount of

$45 million (the **"NAS PI Portion"**), and (ii) the remainder to the PI Trust Non-NAS Fund

(the **"Non-NAS PI Portion"**), after which the following applicable **"PI Trust Deductions and**

**Holdbacks"** will be deducted from awards:  (A) a pro rata share of Trust Operating Expenses,[5]

(B) amounts held back in the TPP LRP Escrow Account and payments therefrom to LRP

Participating TPPs, in each case, as required under and subject to the terms of the LRP

Agreement, to settle liens held by private insurance companies, if any, (C) amounts prepaid to

the United States under the United States-PI Claimant Medical Expense Claim Settlement to

settle liens of the federal healthcare programs like Medicare, Tricare, VA, or Medicaid, if any,

(D) a pro rata share of the compensation, costs, and fees of professionals that represented or

advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the

Chapter 11 Cases, subject to Section 5.8(g) of the Plan, and (E) the common benefit assessment

required under Section 5.8(c) of the Plan and, where applicable, the fees and costs of the PI

Claimants' individual attorneys in the Chapter 11 Cases, if any, which deductions shall be made

by such attorneys and reduced by the common benefit assessment in accordance with

---

[5] Common Trust Expenses, such as those incurred to set up the PI Trust, shall be shared by each PI Claimant pro rata to the size of the PI Claimant's award; expenses that are specific to NAS Claims or the PI Trust NAS Fund shall be shared by each NAS PI Claimant pro rata to the size of the NAS PI Claimant's award; expenses that are specific to Non-NAS PI Claims or the PI Trust Non-NAS Fund shall be shared by each Non-NAS PI Claimant pro rata to the size of the Non-NAS PI Claimant's award.

Section 5.8(c) of the Plan. The PI Trust shall deposit the NAS PI Portion into the PI Trust NAS Fund and the Non-NAS PI Portion into the PI Trust Non-NAS Fund, in each case, periodically as funds are received by the PI Trust.

**1.4** **Acceptance of Assets and Assumption of Liabilities**.

(a)    In furtherance of the purposes of the PI Trust, the PI Trust hereby expressly accepts the transfer to the PI Trust of the PI Trust Assets and any other transfers contemplated by the Plan and the Master TDP as contemplated in, and subject to the terms of, the Plan and the Master TDP.

(b)    In furtherance of the purposes of the PI Trust, the PI Trust expressly assumes all liabilities and responsibility for all PI Channeled Claims (except as set forth in the Plan), and none of the Debtors, the Protected Parties, or the Master Disbursement Trust shall have any further financial or other responsibility or liability therefor.  Except as otherwise provided in this Trust Agreement, the TDPs, the LRP Agreement, the Plan, or the Master TDP, the PI Trust shall have and retain any and all defenses, cross-claims, offsets, and recoupments regarding the PI Channeled Claims, as well as any and all rights of indemnification, contribution, subrogation, and similar rights, that the Debtors, the Released Parties, and the Shareholder Released Parties, as applicable, have or would have had under applicable law; *provided* that no such claims, defenses, or rights may be asserted against any Protected Party.

(c)    Notwithstanding anything to the contrary herein, no provision in this Trust Agreement, the TDPs, or the LRP Agreement shall be construed or implemented in a manner that would cause the PI Trust to fail to qualify as a Qualified Settlement Fund within the meanings of the QSF Regulations.

(d)    Nothing in this Trust Agreement shall be construed in any way to limit (i) the scope, enforceability, or effectiveness of the Channeling Injunction, or (ii) subject to the provisions of Section 1.4(b) herein, the PI Trust's assumption of all liability for PI Channeled Claims.

(e)    In this Trust Agreement, the TDPs, and the LRP Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(f)    To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the PI Trust (the **"Beneficial Owners"**) shall be deemed to be those PI Claimants holding Allowed PI Channeled Claims; *provided, however*, that (i) such PI Claimants, as such Beneficial Owners, shall have only such rights with respect to the PI Trust and its assets as are set forth in the TDPs and the LRP Agreement and (ii) no greater or other rights, including upon dissolution, liquidation, or winding up of the PI Trust, shall be deemed to apply to such PI Claimants in their capacity as Beneficial Owners.

## ARTICLE II

## POWERS AND TRUST ADMINISTRATION

### 2.1    Powers.

(a)    The Trustee is and shall act as a fiduciary to the PI Trust in accordance with the provisions of this Trust Agreement, the Plan, and the Confirmation Order.  The Trustee shall, at all times, administer the PI Trust and the PI Trust Assets in accordance with the purposes set forth in Section 1.2 herein.  Subject to the limitations set forth in this Trust Agreement, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the PI Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental

thereto and not inconsistent with the requirements of Section 2.2 herein, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)    Except as required by applicable law or otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)    Without limiting the generality of Section 2.1(a) herein, and except as limited below or by the Plan, the Trustee shall have the power to

(i)    receive and hold the PI Trust Assets and exercise all rights with respect thereto;

(ii)    invest the monies held from time to time by the PI Trust, in collaboration with the Oversight Committee and the investment and financial advisor for the PI Trust (the "**Financial Advisor**");

(iii)    sell, transfer or exchange any or all of the Trust Assets at such prices and upon such terms as he or she may consider proper, consistent with the other terms of this Trust Agreement;

(iv)    enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to facilitate operation of the PI Trust;

(v)    pay liabilities and expenses of the PI Trust, including the Trust Expenses and indemnification obligations;

(vi)    deduct, hold back, and pay the PI Trust Deductions and Holdbacks;

(vii)    establish the PI Trust NAS Fund, the PI Trust Non-NAS Fund, the PI Trust Operating Reserve, and such other funds, reserves, and accounts within the PI Trust

estate as deemed by the Trustee to facilitate carrying out the purposes of the PI Trust, subject to the limitations set forth in Section 3.1 herein;

(viii)    sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding, as required to reconcile, administer, or defend against the PI Channeled Claims, including post-Effective Date proceedings before the Bankruptcy Court under Section 6.21 of the Plan, or to enforce the rights of the PI Trust under the Plan and the Plan Documents;

(ix)    initiate, prosecute, defend, and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary by the Trustee to fulfill the purposes of the PI Trust;

(x)    in any court, defend, and assert counterclaims against, PI Channeled Claims brought against the PI Trust by PI Claimants who have "opted out" of the applicable TDP, bring one or more consolidated actions against PI Claimants who elect to liquidate their PI Claims by commencing separate lawsuits in the tort system, seek to consolidate multiple lawsuits commenced by such PI Claimants, and seek to consolidate discovery propounded by such PI Claimants or by the PI Trust in multiple lawsuits commenced by such PI Claimants;

(xi)    bring any and all arguments in furtherance of items (viii) and (ix) above, including the argument that a purported NAS PI Claim or Non-NAS PI Claim does not meet the definition thereof under the Plan;

(xii)    establish, supervise, and administer the PI Trust in accordance with this Trust Agreement, the TDPs, and the LRP Agreement;

(xiii)    appoint such officers, hire such employees, and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement, the TDPs, and the LRP Agreement;

(xiv)    pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents (including those engaged by the PI Trust in connection with its alternative dispute resolution activities);

(xv)    as provided below, (a) compensate the Trustee, the Delaware Trustee, the members of the Oversight Committee, the Claims Administrator, the PI LRP Administrator, and their respective employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents, including the Financial Advisor, and (b) reimburse the Trustee, the Delaware Trustee, the individual members of the Oversight Committee, the Claims Administrator, and the PI LRP Administrator for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xvi)    execute and deliver such instruments as the Trustee deems proper in administering the PI Trust;

(xvii)    enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the PI Trust;

(xviii)  in accordance with Section 4.6 herein, defend, indemnify, and hold harmless (and purchase insurance indemnifying) (A) the Trustee, (B) the Delaware Trustee, (C) the Oversight Committee and its members, (D) the Claims Administrator, (E) the PI LRP Administrator, and (F) the officers, employees, consultants, advisors, and agents of each of the PI Trust and the Oversight Committee (each of those in clause (F) herein, the **"Additional Indemnitees"**), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to defend, indemnify, hold harmless, or insure its directors, trustees, officers, employees, consultants, advisors, agents, and representatives. Notwithstanding anything to the contrary herein, no party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 herein;

(xix)  consult with the Oversight Committee at such times and with respect to such issues relating to the purpose, conduct, and affairs of the PI Trust as the Trustee considers desirable and as otherwise set forth in this Trust Agreement;

(xx)  make, pursue (by litigation or otherwise), collect, compromise, settle, or otherwise resolve, in the name of the PI Trust, any claim, right, action, or cause of action of the PI Trust, including, but not limited to, insurance recoveries, before any court of competent jurisdiction and without approval of the Bankruptcy Court; and

(xxi)  exercise any and all other rights of the Trustee, and take any and all other actions as are permitted, in accordance with the terms of this Trust Agreement.

(d)  The Trustee shall not have the power to guarantee any debt of other persons.

(e)  The Trustee agrees to take the actions of the PI Trust required hereunder.

(f)    The Trustee shall give the Oversight Committee prompt notice of any act proposed to be performed or taken pursuant to Section 2.2(g) herein.

**2.2    General Administration**.

(a)    The Trustee shall act in accordance with this Trust Agreement, the Plan, the Confirmation Order, the TDPs, and the LRP Agreement.  In the event of a conflict between the terms or provisions of (i) this Trust Agreement and (ii) the TDPs or the LRP, the terms of this Trust Agreement shall control.  In the event of a conflict between the terms or provisions of the Plan and this Trust Agreement or the TDPs, the terms of the Plan shall control.  For the avoidance of doubt, this Trust Agreement shall be construed and implemented in accordance with the Plan, regardless of whether any provision herein explicitly references the Plan.

(b)    The Trustee shall be the "administrator" of the PI Trust within the meaning of section 1.468B-2(k)(3) of the Treasury Regulations and, in collaboration with the Financial Advisor and the Oversight Committee, shall (i) timely file such income tax and other returns and statements as are required to comply with applicable provisions of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, and of any state law and the regulations promulgated thereunder, (ii) be responsible for paying, out of the PI Trust Assets, taxes and any other obligations or liabilities of any and all kinds whatsoever that at any time are lawfully levied, assessed upon, or become payable in respect of the PI Trust or its funds, (iii) comply with applicable tax reporting and withholding obligations, and (iv) ensure that the PI Trust qualifies and maintains its qualification as a Qualified Settlement Fund within the meaning of the QSF Regulations.  The PI Trust shall not take any action, or omit to take any action, that could adversely affect the PI Trust's qualification as a Qualified Settlement Fund.  Even if permitted by the Treasury Regulations governing Qualified Settlement Funds, no election shall

be filed by or on behalf of the PI Trust for the PI Trust to be treated as a grantor trust for federal income tax purposes.

(c)    The Trustee may withhold, and shall pay to the appropriate tax authority all amounts required by law to be withheld pursuant to the Internal Revenue Code or any provision of any applicable foreign, state, or local tax law with respect to any payment or Distribution to the Holders of Allowed PI Channeled Claims.  All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such Holders of Allowed PI Channeled Claims for all purposes of this Trust Agreement.  The Trustee shall be authorized to collect tax information, which may include applicable IRS Form W-8 or IRS Form W-9, from the Holders of Allowed PI Channeled Claims (including tax identification numbers) as reasonably requested by the Trustee, readily available to the Holders of the Allowed PI Channeled Claims and necessary to effectuate the Plan, the Confirmation Order, and this Trust Agreement.  The Trustee may refuse to make some or all of a Distribution to a Holder of an Allowed PI Channeled Claim that fails to furnish such information in a timely fashion, and until such information is delivered may treat such Holder's Allowed PI Channeled Claim, as disputed; provided, however, that, upon the delivery of such information by a Holder of an Allowed PI Channeled Claim, the Trustee shall make such Distribution to which such Holder is entitled, without additional interest occasioned by such Holder's delay in providing tax information. Notwithstanding the foregoing, if a Holder of an Allowed PI Channeled Claim fails to furnish any tax information reasonably requested by the Trustee before the date that is six months after the request is made (subject to extension in the discretion of the Trustee if such Holder demonstrates to the reasonable satisfaction of the Trustee that such Holder's failure to provide such tax information is due to one or more taxing authorities' failure to furnish information

necessary to respond to the Trustee's reasonable request to such Holder despite such Holder's request for such information), the amount of such Distribution shall irrevocably revert to the PI Trust, and any Allowed PI Channeled Claim with respect to such Distribution shall be discharged and forever barred from assertion against the PI Trust or its property.

(d)     The Trustee shall be responsible for all of the PI Trust's tax matters, including, without limitation, tax audits, claims, defenses and proceedings.  The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the PI Trust for all taxable periods through the dissolution of the PI Trust.  The Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the PI Trust that is required by any governmental unit and be responsible for payment, out of the PI Trust Assets, of any taxes imposed on the PI Trust or its assets.

(e)     The Financial Advisor, in collaboration with the Trustee, the Claims Administrator, and the Oversight Committee, shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual accounting containing financial statements of the PI Trust (the "**Annual Report**"), as described more fully in Section 3.4(b) herein.  The Financial Advisor shall cause to be prepared at the end of each of the first three quarters of each fiscal year a quarterly accounting containing unaudited financial statements of the PI Trust as of the end of such quarter, as described more fully in Section 3.4(c) herein.

(f)     On a quarterly basis, the Oversight Committee shall cause to be prepared, and provided to the Financial Advisor, a summary of PI Channeled Claims broken down as appropriate by categories and status.

(g)     The Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year (the **"Budget"**).  The Trustee shall provide a copy of the Budget and cash flow projections to the Oversight Committee and to the NAS Representative (defined below).

(h)     The Trustee shall consult with the Oversight Committee (i) on the general implementation and administration of the PI Trust; (ii) on the general implementation and administration of the TDPs and the LRP Agreement; and (iii) on such other matters as may be required under this Trust Agreement and the TDPs and LRP Agreement.  The Trustee shall consult with the NAS Representative on the general implementation and administration of the NAS PI TDP.

(i)     The Trustee shall be required to obtain the consent of the Oversight Committee pursuant to the consent process set forth in Section 5.9(b) hereof, in addition to any other instances elsewhere enumerated, in order to:

(i)     clarify the criteria for determining, to the extent such clarification is necessary, (A) an Award (as defined in the NAS PI TDP) and (B) the Base Payment and Level Awards (each as defined in the Non-NAS PI TDP) as set forth in the Non-NAS PI TDP;

(ii)     clarify the initial qualification requirements, to the extent such clarification is necessary, described in (A) Section 3 of the NAS PI TDP and (B) Section 3 of the Non-NAS PI TDP;

(iii)     determine, establish, or change whether a product is a Qualifying Opioid as defined and described in Sections 3 and 4 of the Non-NAS PI TDP;

-18-

(iv)    determine, establish, or change the types of evidence required for (A) Competent Evidence as defined and described in Section 4 of the NAS PI TDP and (B) a Qualified Opioid described in Section 5 of the Non-NAS PI TDP;

(v)    determine, establish, or change the additional claim factors valuation described in Section 9 of the Non-NAS PI TDP;

(vi)    determine, establish, or change the participating claimant obligations or participating third party payor obligations described in Section I of the LRP Agreement pursuant to the modification provisions of the LRP Agreement;

(vii)    determine, establish, or change the process for determining the payable lien amount described in Section III of the LRP Agreement pursuant to the modification provisions of the LRP Agreement;

(viii)    determine, establish, or change the process for resolving liens, payments made, and releases exchanged, including the form of Final Lien Release, described in Section IV of the LRP Agreement pursuant to the modification provisions of the LRP Agreement;

(ix)    terminate the PI Trust pursuant to Section 6.2 hereof;

(x)    settle the liability of any insurer under any insurance policy or legal action related thereto;

(xi)    change the compensation of the members of the Oversight Committee, the Delaware Trustee, the Trustee, the Claims Administrator, or the PI LRP Administrator, other than to reflect cost-of-living increases;

(xii)    take actions to minimize any tax on the PI Trust Assets; *provided, however*, that no such action prevents the PI Trust from qualifying as a Qualified Settlement

Fund within the meaning of the QSF Regulations or entails making an election for the PI Trust to be treated as a grantor trust for tax purposes;

(xiii)    amend any provision of this Trust Agreement or the TDPs; *provided* that no such amendment shall be in contravention of the Plan;

(xiv)    acquire an interest in or merge any claims resolution organization formed by the PI Trust with another claims resolution organization that is not specifically created by this Trust Agreement, the TDPs, or the LRP Agreement, or contract with another claims resolution organization or other entity that is not specifically created by this Trust Agreement, the TDPs, or the LRP Agreement, or permit any other party to join in any claims resolution organization that is formed by the PI Trust pursuant to the Trust Agreement, the TDPs, or the LRP Agreement; *provided, however*, that such merger, acquisition, contract, or joinder shall not (a) subject NewCo, TopCo, PPLP, the Liquidating Debtors, the Transferred PPLP Subsidiaries, any other Protected Party, or any successors in interest thereto, to any risk of having any PI Channeled Claim asserted against it or them, or (b) otherwise jeopardize the validity or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan; or (c) cause the PI Trust to fail to qualify as a Qualified Settlement Fund under the QSF Regulations; and *provided further* that the terms of such merger will require the surviving organization to make decisions about the allowability or value of claims in accordance with the provisions of the TDPs and the LRP Agreement, as applicable; or

(xv)    if and to the extent required by the TDPs or the LRP Agreement, disclose any information, documents, or other materials to preserve, litigate, resolve, or settle coverage, or comply with an applicable obligation under an insurance policy or settlement agreement pursuant to the TDPs or the LRP Agreement.

(j)      The Trustee shall meet with the Oversight Committee no less often than quarterly.  The Trustee shall meet in the interim with the Oversight Committee when so requested by the Oversight Committee.  Meetings may occur by videoconference (including Zoom) or teleconference on in person at the discretion of the Oversight Committee.

(k)      The Trustee, upon notice from the Oversight Committee, if practicable in view of pending business, shall consider issues submitted by the Oversight Committee at the next meeting with the Oversight Committee.  The Trustee shall keep the Oversight Committee reasonably informed regarding all aspects of the administration of the PI Trust.

(l)      Notwithstanding anything else in this Trust Agreement, the Trustee shall be required to obtain the consent of Celeste Brustowicz,[6] in her capacity as a representative of the interests of the NAS PI Claimants (the **"NAS Representative"**), which consent shall not be unreasonably withheld, in order to (i) amend the NAS PI TDP or any exhibits thereto in any way or (ii) modify this Trust Agreement in a way that impacts NAS PI Claimants in a way that does not impact Non-NAS PI Claimants.

2.3    **Claims Administration**.  The Trustee shall promptly proceed to implement the TDPs.  The Trustee shall retain a claims administrator (the **"Claims Administrator"**) to assist the Trustee in its duties as set forth in the Plan and the TDPs.  The Claims Administrator may be the same individual as the Trustee.  Edgar C. Gentle III, of Gentle, Turner, Sexton & Harbison, LLC, shall be retained as the Claims Administrator.  The Claims Administrator shall work in collaboration with the Oversight Committee and the Financial Advisor.

---

[6] In the event that the individual serving as NAS Representative becomes unavailable to so serve as the NAS Representative, Scott R. Bickford from the law firm of Martzell, Bickford & Centola, in his capacity as counsel to one or more NAS PI Claimants, may select the new NAS Representative and shall give notice of the same to the Trustee.

(a)     The Claims Administrator shall be responsible for (i) supervising the processing of and resolution of PI Channeled Claims and overseeing and supervising all aspects of the claims office (the **"Claims Office"**), which shall process PI Channeled Claims that are payable from the PI Trust in accordance with the TDPs and the LRP Agreement, (ii) preparing and distributing periodic reports documenting the activities of the Claims Office, including detailed reports on the submission of PI Channeled Claims and their resolution, and (iii) performing periodic analyses and estimates regarding the costs and projected costs of processing and resolving PI Channeled Claims and any matter or contingency that could affect the efficient use of funds for the payment of Allowed PI Channeled Claims.  The Claims Administrator, along with the Trustee, shall determine, in accordance with the applicable TDP, the Allowance or Disallowance of, and the awards payable on, (i) all NAS PI Channeled Claims liquidated under the NAS PI TDP[7] and (ii) all Non-NAS PI Channeled Claims liquidated under sections 6 through 9 of the Non-NAS PI TDP,[8] regardless of the type of Award (as defined in the Non-NAS PI TDP) sought pursuant to the requirements set forth in the Non-NAS PI TDP.

(b)     As set forth in the NAS PI TDP, Distributions under the NAS PI TDP, which shall be made solely from the PI Trust NAS Fund, are determined only with consideration to an NAS PI Claim held against the Debtors, and not to any associated NAS PI Channeled Claim against a non-Debtor party; any Distribution to an NAS PI Claimant on account of his or her NAS PI Claim shall be deemed to be a distribution in satisfaction of all NAS PI Channeled

---

[7] If an NAS PI Claimant checks the box on the NAS Claim Form indicating his or her election to liquidate his or her NAS PI Claim in the tort system rather than under the NAS PI TDP, then such NAS PI Claim shall not be liquidated under the NAS PI TDP.

[8] If a Non-NAS PI Claimant checks the box on the Non-NAS Claim Form indicating his or her election to liquidate his or her Non-NAS PI Claim in the tort system rather than under sections 6 through 9 of the Non-NAS PI TDP, then such Non-NAS PI Claim shall not be liquidated under the Non-NAS PI TDP.

Claims held by such NAS PI Claimant with respect to the same injuries that are the subject of his or her NAS PI Claim.

(c)    As set forth in the Non-NAS PI TDP, Distributions under the Non-NAS PI TDP, which shall be made solely from the PI Trust Non-NAS Fund, are determined only with consideration to a Non-NAS PI Claim held against the Debtors, and not to any associated Non-NAS PI Channeled Claim against a non-Debtor party; any Distribution to a Non-NAS PI Claimant on account of his or her Non-NAS PI Claim shall be deemed to be a distribution in satisfaction of all Non-NAS PI Channeled Claims held by such Non-NAS PI Claimant with respect to the same injuries that are the subject of his or her Non-NAS PI Claim.

(d)    In carrying out its duties under this Trust Agreement, the Claims Administrator may investigate any PI Channeled Claims and request information from any PI Claimant to ensure compliance with NAS PI TDP or the Non-NAS PI TDP, as applicable. For PI Claimants who execute the required HIPAA forms attached to the applicable TDP, the Claims Administrator also has the power to directly obtain such PI Claimant's medical records.

(e)    The Claims Office shall process PI Channeled Claims payable from the PI Trust in accordance with the TDPs and the LRP Agreement. NAS PI Channeled Claims that satisfy the eligibility criteria specified in the NAS PI TDP and Non-NAS PI Channeled Claims that satisfy the eligibility criteria specified in the Non-NAS PI TDP shall be paid as specified therein. Only those NAS PI Channeled Claims that satisfy the eligibility criteria specified in the NAS PI TDP and those Non-NAS PI Channeled Claims that satisfy the eligibility criteria specified in the Non-NAS PI TDP are eligible to receive payment. The TDPs establish specific guidelines for submitting and processing PI Channeled Claims. The Claims Administrator shall have discretion to implement such additional procedures and routines as necessary to implement

the TDPs, in collaboration with the Oversight Committee, and consistent with the terms of this Trust Agreement.

(f)    The Claims Administrator shall institute procedures (including with respect to setting deadlines by which PI Channeled Claims must be submitted to the PI Trust), claims processing, protocols, and staff training and shall develop claims-tracking, analysis, and payment systems as necessary to process the PI Channeled Claims in accordance with the TDPs and the LRP Agreement, including reasonable measures to detect and prevent claims fraud. The Oversight Committee and the Financial Advisor shall work with the Claims Administrator in this process.

(g)    The Claims Administrator shall maintain (but need not file with any court) records of all individual payments and settlements concerning the PI Channeled Claims. The Claims Office shall provide such records to the Oversight Committee in electronic format. The records shall include the documents and information relative to the scoring of the PI Channeled Claims.

(h)    The Claims Administrator shall serve for the duration of the PI Trust, subject to death, resignation, or removal. In the event that the Claims Administrator resigns, is removed from office, or otherwise is unable to perform the functions of the Claims Administrator, the Oversight Committee shall propose a successor Claims Administrator, subject to approval and appointment by the Trustee. The Claims Administrator may be removed from office for cause by the Bankruptcy Court after notice and a hearing.

(i)    The Claims Administrator (or successor Claims Administrator) shall be (i) an individual over the age of 35 whose experience and background are appropriate for the responsibilities set forth herein and (ii) at the time of appointment and at all times during the

term of service, independent.  For purposes of this section, a person is not independent if such

person:

        (i)       is or was at any time a Holder or a representative of a Holder of a

PI Channeled Claim or a Third-Party Payor Claim;

        (ii)      has or had a relationship with an individual Holder of a PI

Channeled Claim, an individual Holder of any other Channeled Claim channeled to the PI Trust,

or a Third-Party Payor Claim, such that the person's impartiality in serving as a Claims

Administrator could reasonably be questioned;

        (iii)     is a Holder of any Interest (other than interests held indirectly

through publicly traded mutual funds) in a Debtor or any Related Person with respect to a

Debtor;

        (iv)     is or was at any time an officer, director, employee, or agent of a

Debtor or any Related Person with respect to a Debtor or related to any of the foregoing, or

otherwise is or was an "insider," as defined in the Bankruptcy Code, with respect to a Debtor or

any Related Person with respect to a Debtor; or

        (v)       is an investment banker, financial advisor, accountant, or attorney,

or is related to any of the foregoing, for any Debtor or any Related Person with respect to a

Debtor, or an officer, director, employee, or agent of any person or entity that provides

investment banking, financial advice, accounting, or legal services to a Debtor or any Related

Person with respect to a Debtor or related to any of the foregoing, with the exception of any

person employed in the Claims Administrator's law firm who helps provide services in

connection with the Chapter 11 Cases.

(j)      The Claims Administrator (or his or her delegate) shall have the power to hire, and shall hire and appoint, such staff and other appropriate agents, including persons or entities performing PI Channeled Claim audit functions, as necessary to carry out the functions of the Claims Administrator under this Trust Agreement.  Except as provided in Section 2.3(h) herein, salaries, fees, budgets, and payment terms for any staff, contractors, or auditors shall be determined by the Claims Administrator in collaboration with the Oversight Committee.  The Claims Administrator shall not have authority to subcontract claims processing functions without the consent of the Oversight Committee.  Subject to the direction of the Oversight Committee, the Claims Administrator shall have the authority to enter into such contracts or agreements as may be necessary to operate the Claims Office, hire staff and contractors, or obtain services and equipment, and shall have the authority to serve all functions of an employer.

(k)      The compensation of the Claims Administrator and his or her staff, including periodic increases, shall be governed by the Budget developed by the Claims Administrator and approved by the Financial Advisor and the Oversight Committee, and as determined by the Oversight Committee, in collaboration with the Claims Administrator and the Financial Advisor

**2.4**      **Lien Resolution**.  The Trustee shall promptly proceed to implement the LRP Agreement.  The Trustee will retain Medical and Subrogation Specialists **("MASSIVE")**, as the third party lien resolution administrator (the **"PI LRP Administrator"**) under the LRP Agreement.  As set forth more fully in the LRP Agreement and pursuant and subject to the terms thereof, the PI LRP Administrator shall (i) provide each TPP Administrator (as defined in the LRP) with information regarding the PI Claimants participating under the LRP Agreement, (ii) in conjunction with each TPP Administrator, determine each Final Lien Amount and Holdback

(each as defined in the LRP Agreement), and (iii) perform such other duties as set forth in the LRP Agreement.

2.5   **Financial Advisor**.   The Financial Advisor shall be Protiviti, Inc., under the direction of Guy Davis, CPA.  Should it become necessary to replace the Financial Advisor, then the Oversight Committee, working with the Claims Administrator, shall select the Financial Advisor.  The Financial Advisor shall be responsible for determining the available assets of the PI Trust and shall have primary responsibility for (i) overseeing the investment of all funds paid to and held by the PI Trust, (ii) monitoring the assets and liabilities of the PI Trust, (iii) providing investment instructions to the PI Trust, (iv) overseeing the preparation of financial statements, and (v) preparing accounting statements and responding to audits.  The Financial Advisor shall prepare projections of the amount to be paid per point by the TDPs.  The Financial Advisor shall be paid reasonable compensation in accordance with the Budget.  The Financial Advisor shall have access to all data and reports necessary to perform the tasks of the Financial Advisor.

2.6   **Appeals Master**.   Appeals from decisions of the Claims Administrator shall be reviewed and decided pursuant to the appeals procedures set forth in the TDPs by an appeals master (the **"Appeals Master"**), whose decision shall be final and binding.  The Oversight Committee shall select the Appeals Master in consultation with the Trustee and the Claims Administrator.  Any successor or additional Appeals Master(s) shall be selected by the Oversight Committee in collaboration with the Claims Administrator.

2.7   **Trust Expenses and Other Fees and Expenses**.   The amount of the PI Trust Assets available to make settlement payments to Holders of Allowed PI Channeled Claims shall be subject to deductions for the Trust Expenses and other fees and expenses, including, but not limited to, (a) the Common Benefit Escrow/Common Benefit Fund assessments described in

Section 2.8 hereof, and (b) the amount of fees and expenses of (i) the Trustee, (ii) the Claims

Administrator, (iii) the Delaware Trustee, (iv) the Financial Advisor, (v) the Oversight

Committee, (vi) the PI LRP Administrator, (vii) the professionals that have represented or

advised and/or are representing or advising (A) the Ad Hoc Group of Individual Victims in

connection with the Chapter 11 Cases and (B) the NAS Committee in connection with the

Chapter 11 Cases, subject to the limitations set forth below, (viii) other employees of the PI

Trust, and (ix) outside legal, financial, accounting, investment, auditing, forecasting, expert, and

other consultants, advisors, and agents as the business of the PI Trust requires to carry out the

terms of the PI Trust, the TDPs, the LRP Agreement, and this Trust Agreement.  To the extent

such fees and expenses were incurred prior to the Effective Date and were not paid by the PI

Trust, the Trustee is authorized to pay or reimburse such fees and expenses from the PI Trust

Assets as Trust Expenses.  Fees and expenses of the Appeals Master shall be borne respectively

by any Non-NAS PI Claimant who appeals the ruling of the Claims Administrator regarding his

or her respective Non-NAS PI Channeled Claims, and such fees and expenses shall be deducted

from such PI Claimants' respective payments from the PI Trust pursuant to Exhibit C of the

Non-NAS PI TDP.  Additionally, PI Claimants that incurred individual legal fees and expenses

(including fees and expenses pursuant to retainer agreements) shall have such individual legal

fees and expenses deducted by their individual attorneys from their respective Distributions

under the Non-NAS PI TDP or NAS PI TDP, as applicable pursuant to Section 2.8 herein.

Notwithstanding anything herein to the contrary, (i) the amount of fees and expenses payable by

the PI Trust to the professionals that have represented or are representing the NAS Committee

shall not exceed $500,000 in the aggregate and (ii) no fees and expenses shall be payable to, on

behalf of, or for remittance or reimbursement to, a professional or firm engaged by (i) the NAS

Committee or (ii) one or more members of the NAS Committee if such professional or firm in its

capacity as counsel to the NAS Committee or one or more of its members files, prosecutes, or

joins in the filing of, prosecution of, or joining in, an objection to or appeal of confirmation of

the Plan, regardless of whether such fees and expenses were incurred prior to, as part of, or

following the filing of, prosecution of, or joining in, such objection to or appeal of confirmation

of the Plan; *provided* that any of the foregoing may object to the Plan to the extent that such

objection (A) either (1) seeks authority for the Bankruptcy Court to exercise jurisdiction over the

NAS Children to facilitate distributions to minor children or (2) seeks payment of fees and costs

related to obtaining a state court order from sources other than the PI Trust or (B) does not

otherwise impact the PI Trust (for the avoidance of doubt, the foregoing limitations shall not

apply to any objection related to NAS Child abatement issues).

       **2.8**    **Common Benefit Escrow/Common Benefit Fund Assessments**.    Upon the

establishment of a Common Benefit Escrow on the Effective Date, the PI Trust shall fund the

Common Benefit Escrow by assessments of five percent (5%) of each Distribution made by the

PI Trust in accordance with this Trust Agreement and the TDPs.    Upon the establishment of the

Common Benefit Fund by order entered by the MDL Court (the "**MDL Order**"), (i) the amounts

held by the Common Benefit Escrow and all subsequent assessments of five percent (5%) of

each Distribution made by the PI Trust shall be transferred to and distributed in accordance with

the MDL Order and (ii) the PI Trust shall fund the Common Benefit Fund by assessments equal

to five percent (5%) of each Distribution made by the PI Trust in accordance with this Trust

Agreement and the TDPs (the "**Common Benefit Assessments**").    Such payments shall be made

on a reasonable periodic or aggregate value basis to be agreed by the Governmental Consent

Parties, the Trustee and the Ad Hoc Group of Individual Victims.    Nothing in Section 5.8 of the

Plan or this Trust Agreement shall impair or otherwise affect any fee contract that is not a contingency fee contract between the Ad Hoc Group of Individual Victims and its professionals, or between the NAS Committee and its professionals.  Except as expressly set forth in Section 5.8 of the Plan, nothing in the Plan shall impair or otherwise affect any contingency fee contract between any Holder of a PI Channeled Claim (or any ad hoc group of Holders of PI Channeled Claims) and such Holder's (or ad hoc group's) counsel.  To the extent a Holder of an NAS PI Channeled Claim, a Non-NAS PI Channeled Claim, or any ad hoc group of holders thereof has retained counsel through a contingency fee arrangement, any contingency fees owed to such contingency counsel payable from Distributions under the Plan shall be reduced by the full amount payable under Section 5.8(c) of the Plan.  However, the applicable Holder and its counsel, in their sole discretion, may agree that an amount up to but not exceeding forty percent (40%) of the amount payable under Section 5.8(c) of the Plan may be applied to the reimbursement of actual costs and expenses incurred by such Holder's counsel, in which case such agreed cost-reimbursement amount shall not reduce the contingency fee amounts payable to such counsel.  Any amount payable to counsel to the Ad Hoc Group of Individual Victims on an hourly basis (including incremental amounts in consideration of deferring payment of hourly fees) shall not constitute a contingency fee and the agreement in respect thereof shall not constitute a contingency fee arrangement for purposes of this Section of this Trust Agreement or Section 5.8 of the Plan.

    2.9    **Medicare Reporting Obligations**.

        (a)    The PI Trust shall register as a Responsible Reporting Entity **("RRE")** under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) **("MMSEA")**.

(b)      The PI Trust shall, at its sole expense, timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the PI Trust or on account of contributions to the PI Trust.  The PI Trust, in its role as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, **"CMS"**) with respect to reporting to CMS pursuant to MMSEA.

(c)      Before disbursing any PI Trust Assets to any Holder of an Allowed PI Channeled Claim, the Trustee, to the extent still required after any settlement with the DOJ, shall obtain a certification that such Holder (or such Holder's authorized representative) has or will provide for the payment or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Allowed PI Channeled Claim.

## ARTICLE III

## ACCOUNTS AND INVESTMENTS

**3.1**    **Establishment of Accounts**.

(a)      The PI Trust shall have initial accounts, which may be divided at the instruction of the Oversight Committee, in collaboration with the Trustee, the Claims Administrator, and the Financial Advisor, as necessary to hold, manage, invest, and distribute funds in accordance with this Trust Agreement.  The PI Trust NAS Fund and the PI Trust Non-NAS Fund may be held in the same account in order to maximize interest returns, but shall be accounted for separately. Each of the PI Trust NAS Fund and the PI Trust Non-NAS Fund shall have an operating account

to make disbursements, which will draw from its respective share of the investment account. Each of the PI Trust NAS Fund, the PI Trust Non-NAS Fund, and any other funds, reserves, and accounts established by the Trustee pursuant to Section 2.1(b) herein shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" within the meaning of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, a "disputed ownership fund" within the meaning of the Treasury Regulations promulgated under the Internal Revenue Code, or otherwise.

(b)    The Trustee may, from time to time, create such accounts and reserves within the PI Trust as he or she may deem necessary, prudent, or useful to provide for the payment of expenses and payment of PI Channeled Claims and may, with respect to any such account or reserve, restrict the use of monies therein, and the earnings or accretions thereto.

(c)    The Trustee shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account, and the payments from each such account in the reports to be filed with the Bankruptcy Court and provided to the Oversight Committee pursuant to Section 2.2(c) herein.

**3.2**    **Investments**.  Investment of monies held in the PI Trust shall be administered in accordance with the investment style developed by the Oversight Committee, in collaboration with the Trustee, the Claims Administrator, and the Financial Advisor.   In determining investments to be held by the PI Trust, due regard shall be given to safety of principal and to production of reasonable amounts of current income.  In view of the purposes for which the PI Trust was created, the Oversight Committee shall not be under any obligation to invest the PI Trust Assets for capital appreciation, but is not prohibited from so doing.

3.3     **Source of Payments**.

(a)     Except to the extent otherwise provided in this Trust Agreement, all liabilities with respect to PI Channeled Claims subject to resolution by the PI Trust and all expenses of the PI Trust shall be payable solely by the PI Trust out of the PI Trust Assets.

(b)     The Trustee shall include in the Annual Report a reasonably detailed description of any payments made in accordance with this Section 3.3.

(c)     The Claims Administrator and the Financial Advisor, in conjunction with the Oversight Committee, shall establish a procedure to assure that the PI Trust disburses salaries, compensation payments, and other Trust Expenses on a schedule and in accordance with sound internal accounting controls.

3.4     **Accounting Statements and Audit**.

(a)     As soon as practicable on or about the commencement of each fiscal year, the Trustee, the Claims Administrator, and the Financial Advisor, in collaboration with the Oversight Committee, shall cause to be prepared Budget and cash flow projections covering such fiscal year and such succeeding fiscal years for which the Oversight Committee determines such projections are practicable and appropriate.

(b)     The Financial Advisor, in collaboration with the Trustee, the Claims Administrator, and the Oversight Committee, shall cause an Annual Report to be prepared and filed with the Bankruptcy Court at the end of each fiscal year, but in no event later than one hundred and twenty (120) days following the end of each fiscal year, which shall include, without limitation, a balance sheet, a statement of receipts and disbursements (which, as to the PI Channeled Claims, shall be presented in the aggregate, as opposed to individual PI Channeled Claims), a statement of profit and loss prepared on an accrual basis, a statement of operations

and a supplementary schedule of investments and assets listing both principal and income, audited by a recognized national or regional firm of independent public accountants selected by the Financial Advisor, the Trustee, the Claims Administrator, and the Oversight Committee, and reported on by such firm as to fairness of presentation in accordance with generally accepted accounting principles consistently applied.

(c)     The Financial Advisor shall prepare at the end of each of the first three quarters of each fiscal year a quarterly accounting containing unaudited financial statements of the PI Trust as of the end of such quarter, including, without limitation, a balance sheet, a statement of receipts and disbursements (which, as to the PI Channeled Claims, shall be presented (i) in the aggregate as to NAS PI Channeled Claims and (ii) in the aggregate as to Non-NAS PI Channeled Clams, in each case as opposed to by individual PI Channeled Claims), a statement of profit and loss prepared on an accrual basis, and a supplementary schedule of investments and assets listing both principal and income reported on, subject to normal year-end adjustments – as to fairness of presentation in accordance with generally accepted accounting principles consistently applied – by the PI Trust or by an accountant or financial officer or agent regularly employed by the PI Trust.

## ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

**4.1     Number**.  In addition to the Delaware Trustee appointed pursuant to Section 4.11 herein, there shall be one (1) Trustee, as named on the signature page hereof.

**4.2     Term of Service**.

(a)     The initial Trustee named pursuant to Section 4.1 herein (and any successor Trustee appointed pursuant to Section 4.3 herein) shall serve from the Effective Date until the earliest of (i) the Trustee's death, (ii) the Trustee's resignation pursuant to

Section 4.2(b) herein, (iii) the Trustee's removal pursuant to Section 4.2(c) herein, and (iv) the termination of the PI Trust pursuant to Section 6.2 herein.

(b)    The Trustee may resign at any time by written notice to the Oversight Committee and the trustees of the Master Disbursement Trust.  Such notice shall specify the date on which such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The Trustee may be removed by the Oversight Committee in the event that the Trustee becomes unable to discharge the Trustee's duties hereunder because of accident, physical deterioration, mental incompetence, or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general administration provisions of Section 2.2 herein, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder, or repeated nonattendance at scheduled meetings.  Such removal shall take effect at such time as the Oversight Committee shall determine.

**4.3    Appointment of Successor Trustee.**

(a)    In the event of a vacancy in the Trustee position, whether by term expiration, death, retirement, resignation, or removal, or because the Trustee is otherwise unable to perform its functions as Trustee, the Oversight Committee shall choose a successor Trustee. In the event that the Oversight Committee cannot agree on a successor Trustee, the Oversight Committee shall ask the Bankruptcy Court to select the successor Trustee.  Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as the Trustee for an additional term or terms.

(b)    Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.  No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

4.4    **Liability of Trustee and Others**.  To the maximum extent permitted by applicable law, each of the Trustee, the Delaware Trustee, the Claims Administrator, the NAS Representative, the members of the Oversight Committee, or each of their officers, employees, consultants, advisors, and agents shall not have or incur any liability for actions taken or omitted in such capacity, or on behalf of the PI Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in such capacity or on behalf of the PI Trust, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud.

4.5    **Compensation and Expenses of Trustee and Delaware Trustee**.

(a)    The Trustee shall receive a retainer from the PI Trust for his service as a Trustee in the amount of $150,000 per annum, paid annually on January 31.[9]  Hourly time, as described below, shall first be billed and applied to the annual retainer.  Hourly time in excess of the annual retainer shall be paid by the PI Trust.  For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the

---

[9] The salary shall be pro-rated for the remaining months of the year following Effective Date in the year in which the Plan goes effective, and such pro-rated salary shall be paid to the Trustee reasonably promptly following establishment of the PI Trust after Effective Date.

Trustee shall receive the sum of $400 per hour.  For all non-working travel time in connection with PI Trust business, the Trustee shall receive the sum of $200 per hour.  The Trustee shall record all hourly time to be charged to the PI Trust.  The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the members of the Oversight Committee, appropriately adjusted by the Trustee for changes in the cost of living.  The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

(b)      The PI Trust shall promptly reimburse each of the Trustee and the Delaware Trustee for their respective reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder, which costs and expenses shall be paid as a Trust Expense.

(c)      The PI Trust shall include in the Annual Report a description of the amounts paid under this Section 4.5.

**4.6      <u>Indemnification</u>**.

(a)      To the maximum extent permitted by applicable law, the PI Trust shall indemnify and reimburse each of the Trustee, the Delaware Trustee, the NAS Representative, the Additional Indemnitees, the Claims Administrator, the members of the Oversight Committee, and each of their officers, employees, consultants, advisors, and agents for reasonable fees and expenses (including reasonable attorneys' fees but excluding taxes in the nature of income taxes imposed on compensation paid to the Trustee, the Delaware Trustee, the Claims Administrator, the members of the Oversight Committee, or each of their officers, employees, consultants, advisors, and agents) incurred in defending the performance of their duties hereunder, in connection with activities undertaken by them prior to the Effective Date in connection with the

formation, establishment, or funding of the PI Trust, or on behalf of the PI Trust, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud under Section 4.4(a) herein.  Any valid indemnification claim of the Trustee, the Delaware Trustee, the NAS Representative, the Claims Administrator, the members of the Oversight Committee, or each of their officers, employees, consultants, advisors, and agents shall be satisfied from the PI Trust.

(b)    If the Trustee, the Oversight Committee, a member of the Oversight Committee, the Delaware Trustee, the NAS Representative, the Claims Administrator, the PI LRP Administrator, or an Additional Indemnitee is named in any action relating to their duties under this Trust Agreement, the TDPs, or the LRP Agreement, including, without limitation, the establishment of the charitable trust described in Section 6.3 hereof, then the Oversight Committee is authorized to retain counsel and arrange for payment of reasonable fees and expenses (including reasonable attorneys' fees) incurred by or on behalf of the PI Trust, the Trustee, the Oversight Committee, a member of the Oversight Committee, the Delaware Trustee, the NAS Representative, the Claims Administrator, the PI LRP Administrator, or an Additional Indemnitee (including the Claims Administrator), as applicable, in connection with any such action, suit, or proceeding; *provided, however*, that the Trustee, the Oversight Committee, the member of the Oversight Committee, the Delaware Trustee, the NAS Representative, the Claims Administrator, the PI LRP Administrator, or the Additional Indemnitee, as applicable, agree to repay such amount if it is ultimately determined that the Trustee, the Oversight Committee, the member of the Oversight Committee, the Delaware Trustee, the NAS Representative, the Claims Administrator, the PI LRP Administrator, or the Additional Indemnitee, as applicable, is not entitled to such indemnification by the PI Trust.

(c)    If any current or former member of the Oversight Committee is threatened with being made a party to any action, suit, or proceeding by reason of their membership on the Oversight Committee, he or she shall be indemnified by the PI Trust against reasonable costs, expenses and fees (including reasonable attorneys' fees) incurred by the member of the Oversight Committee in connection with or resulting from such action, suit, or proceeding so long as he or she acted in good faith and in a manner he or she reasonably believed to be in the best interests of the PI Trust.  All such amounts shall be paid from the PI Trust.

(d)    The Trustee may cause the PI Trust to purchase and maintain reasonable amounts and types of insurance, including on behalf of an individual who is or was a Trustee, a member of the Oversight Committee, the Claims Administrator, the PI LRP Administrator, or an Additional Indemnitee, including the Financial Advisor, against liability asserted against or incurred by such individual in that capacity.

**4.7**    **Lien**.    The Trustee, members of the Oversight Committee, the Claims Administrator, the PI LRP Administrator, the NAS Representative, and the Additional Indemnitees shall have a first priority lien upon the PI Trust Assets to secure the payment of any amounts payable to them pursuant to Section 4.6 herein.

**4.8**    **Trustee's Employment of Experts; Delaware Trustee's Employment of Counsel**.

(a)    The Trustee and the Claims Administrator may, but are not required to, retain counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed by the Trustee and the Claims Administrator to be qualified as experts on the matters submitted to them (the **"Trust Professionals"**), the cost of which shall be paid as a Trust Expense, regardless of whether any such party is affiliated with the

Trustee or the Claims Administrator in any manner (except as otherwise expressly provided in this Trust Agreement).  In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e), the written opinion of or information provided by any such party deemed by the Trustee and the Claims Administrator to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustee or the Claims Administrator hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

(b)    The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

4.9    **Trustee's Independence**.  During his or her tenure as the Trustee, the Trustee shall not act as an attorney, agent, or other professional for any person who holds a PI Channeled Claim, other than as required pursuant to the terms of the TDPs for PI Claimants who are minors. For the avoidance of doubt, this Section shall not be applicable to the Delaware Trustee.

4.10    **No Bond**.  Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

4.11    **Delaware Trustee**.

(a)    There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act.  The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware in accordance with section 3807 of the Act

and otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind such entity.  If at any time the Delaware Trustee ceases to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.11, the Delaware Trustee shall resign immediately in the manner and with the effect hereinafter specified in Section 4.11(c) herein.  For the avoidance of doubt, the Delaware Trustee shall have only such rights and obligations as expressly provided hereunder.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee set forth herein.  The Delaware Trustee shall be one of the trustees of the PI Trust for the sole and limited purpose of fulfilling the requirements of section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities, and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the PI Trust in the State of Delaware and (ii) executing, solely at the written direction of the Trustee, any certificates required to be filed with the Delaware Secretary of State that the Delaware Trustee is required to execute under section 3811 of the Act.  There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has any other duties (including fiduciary duties) and liabilities relating thereto to the PI Trust, the other Parties hereto, or any beneficiary of the PI Trust, it is hereby understood and agreed by the other Parties hereto that such other duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.

(c)    The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is

appointed by the Trustee in accordance with the terms of Section 4.11(d) herein.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; *provided, however*, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.11(d) herein.  If the Trustee does not appoint a successor within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.   Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee and any undisputed fees and expenses due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties, and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Trust Agreement.

(e)    The Delaware Trustee shall neither be required nor permitted to attend meetings relating to the PI Trust.

(f)    The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

(g)    The PI Trust shall reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Delaware Trustee in connection with the performance of its duties hereunder.

(h)    The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

<div align="center">

**ARTICLE V**

**OVERSIGHT COMMITTEE**

</div>

**5.1    Members**.  The Oversight Committee shall consist of three (3) members.  Two (2) members of the Oversight Committee shall be named by the Ad Hoc Group of Individual Victims.  These two members will select the third member of the Oversight Committee.

**5.2    Authority with Respect to Distribution of Funds and Review of Claims Operations**.  The Oversight Committee, in collaboration with the Claims Administrator, shall provide direction to the Financial Advisor regarding liquidity needs of and tax planning for the PI Trust and supervise the Financial Advisor to ensure that the investment management and other tasks assigned to the Financial Advisor are performed in accordance with this Trust Agreement. The Oversight Committee shall monitor the long-term goals and day-to-day activities of the Claims Office and work with the Claims Administrator to carry them out.

**5.3    General Power to Procure Insurance**.  The Oversight Committee shall procure such general liability and other insurance as necessary and as required by law with respect to the employees and staff performing the claims administration functions.  The Claims Administrator may purchase and maintain reasonable amounts and types of insurance, including insurance on behalf of an individual who is or was a Claims Administrator, Appeals Master, or member of the

Oversight Committee, against liability asserted against or incurred by such individual in that capacity; *provided however*, that the costs of such insurance are reasonable.  The cost of such insurance coverage shall be paid from the PI Trust.

5.4    **Duties**.  The members of the Oversight Committee shall serve in a fiduciary capacity and represent the interests of all PI Claimants.  The Oversight Committee shall have no fiduciary obligations or duties to any party other than the PI Claimants.  The Trustee must consult with the Oversight Committee on matters identified herein (including in Section 2.2(h) herein), and must obtain the consent of the Oversight Committee on matters identified in Section 2.2(i) herein.  Where provided in the TDPs, certain other actions by the Trustee are also subject to the consent of the Oversight Committee.  Except for the duties and obligations expressed in this Trust Agreement and the documents referenced herein (including the TDPs), there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Oversight Committee.  To the extent that, at law or in equity, the Oversight Committee has duties (including fiduciary duties) and liabilities relating thereto to the PI Trust, the other Parties hereto, or any beneficiary of the PI Trust, it is hereby understood and agreed by the other Parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Oversight Committee expressly set forth in this Trust Agreement and the documents referenced herein (including the TDPs, the Plan, and the Confirmation Order).

5.5    **Term of Office**.

(a)    Each member of the Oversight Committee shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 5.5(b) herein, (iii) his or her removal pursuant to Section 5.5(c) herein, or (iv) the termination of the PI Trust pursuant to Section 6.2 herein.

(b)     A member of the Oversight Committee may resign at any time by written notice to the other members of the Oversight Committee and the Trustee.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     A member of the Oversight Committee may be removed in the event that he or she becomes unable to discharge his or her duties hereunder because of accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder, such as repeated nonattendance at scheduled meetings, or for other good cause.  Such removal may be made by the other members of the Oversight Committee and the Trustee.

**5.6     Appointment of Successor.**

(a)     If, prior to the termination of service of a member of the Oversight Committee other than as a result of removal, he or she has designated in writing an individual to succeed him or her as a member of the Oversight Committee, such individual shall be his or her successor.  If such member of the Oversight Committee did not designate an individual to succeed him or her prior to the termination of his or her service as contemplated above, such member's law firm may designate his or her successor.  If (i) a member of the Oversight Committee did not designate an individual to succeed him or her prior to the termination of his or her service and such member's law firm does not designate his or her successor as contemplated above or (ii) he or she is removed pursuant to Section 5.5(c) herein, his or her successor shall be appointed by the other members of the Oversight Committee and the Trustee or, if such members and the Trustee do not appoint a successor, the Bankruptcy Court.  Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as a member of

the Oversight Committee for an additional term or terms, and there shall be no limit on the number of terms that an Oversight Committee member may serve.

(b)    Each successor Oversight Committee member shall serve until the earlier of (i) the end of the full term for which he or she was appointed, (ii) the end of the term of the member of the Oversight Committee whom he or she replaced if his or her predecessor member did not complete such term, (iii) his or her death, (iv) his or her resignation pursuant to Section 5.5(b) herein, (v) his or her removal pursuant to Section 5.5(c) herein, or (vi) the termination of the PI Trust pursuant to Section 6.2 herein.

(c)    No successor Oversight Committee member shall be liable personally for any act or omission of his or her predecessor Oversight Committee member.  No successor Oversight Committee member shall have any duty to investigate the acts or omissions of his or her predecessor Oversight Committee member.  No Oversight Committee member shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

5.7    **Compensation and Expenses of the Oversight Committee**.  The members of the Oversight Committee shall be compensated as provided in the Budget.  The PI Trust promptly will reimburse the members of the Oversight Committee for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder. Such reimbursement or direct payment shall be deemed a Trust Expense.  A description of the amounts paid under this Section 5.7 shall be included in the Annual Report to be filed with the Bankruptcy Court.

5.8    **Meetings and Decisions**.  The Oversight Committee shall have periodic meetings to carry out the duties of the Oversight Committee.  Meetings may occur by videoconference

(including Zoom), teleconference, or in person at the discretion of the Oversight Committee. The Oversight Committee shall act by majority vote.

**5.9    Procedures for Consulting with and Obtaining Consent of Oversight Committee**.

        (a)      Consultation Process.

        (i)      In the event the Trustee is required to consult with the Oversight Committee pursuant to Section 2.2(h) herein, the TDPs, the Plan, or otherwise, the Trustee shall provide the Oversight Committee with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustee shall also provide the Oversight Committee with such reasonable access to the Trust Professionals and other experts retained by the PI Trust and its staff (if any) as the Oversight Committee may reasonably request during the time that the Trustee is considering such matter, and shall also provide the Oversight Committee the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on such matter with the Trustee.

        (ii)      In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 5.9(a), the Trustee shall take into consideration the time required for the Oversight Committee, if its members so wish, to engage and consult with its own independent financial or investment advisors as to such matter. In any event, the Trustee shall not take definitive action on any such matter until at least thirty (30) days after providing the Oversight Committee with the initial written notice that such matter is under consideration by the Trustee, unless such time period is waived by the Oversight Committee.

        (b)      Consent Process.

(i)      In the event the Trustee is required to obtain the consent of the Oversight Committee pursuant to Section 2.2(i) herein, the TDPs, the Plan, or otherwise, the Trustee shall provide the Oversight Committee with a written notice stating that its consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustee proposes to take, and explaining in detail the reasons why the Trustee desires to take such action.  The Trustee shall provide the Oversight Committee as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances. The Trustee shall also provide the Oversight Committee with such reasonable access to the Trust Professionals and other experts retained by the PI Trust and its staff (if any) as the Oversight Committee may reasonably request during the time that the Trustee is considering such action, and shall also provide the Oversight Committee, at reasonable times and for reasonable periods of time, to discuss and comment on such action with the Trustee.

(ii)      The Oversight Committee must consider in good faith and in a timely fashion any request for its consent by the Trustee and must in any event advise the Trustee in writing of its consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustee, or within such additional time as the Trustee and the Oversight Committee may agree.  The Oversight Committee may not withhold its consent unreasonably.  If the Oversight Committee decides to withhold consent, it must explain in detail its objections to the proposed action.  If the Oversight Committee does not advise the Trustee in writing of its consent or objections to the proposed action within thirty (30) days of receiving notice regarding such request (or any additional time period agreed to by the Trustee), then the Oversight Committee's consent to the proposed actions shall be deemed to have been affirmatively granted.

(iii)    If, after following the procedures specified in this Section 5.9(b), the Oversight Committee continues to object to the proposed action and to withhold its consent to the proposed action, the Trustee and the Oversight Committee shall resolve their dispute pursuant to Section 6.13 hereof.  The Oversight Committee shall bear the burden of proving that it reasonably withheld its consent.  If the Oversight Committee meets that burden, the PI Trust shall then bear the burden of showing why it should be permitted to take the proposed action notwithstanding the Oversight Committee's reasonable objection.

## ARTICLE VI

## GENERAL PROVISIONS

**6.1    Irrevocability**.  To the fullest extent permitted by applicable law, the PI Trust is irrevocable.

**6.2    Term; Termination**.

(a)    The term for which the PI Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 6.2(b) - (c) hereof.

(b)    The PI Trust shall automatically dissolve on the date (the **"Dissolution Date"**) that is ninety (90) days after, or a reasonable time after ninety (90) days after, the first to occur of the date on which the Trustee decides, with the consent of the Oversight Committee, to dissolve the PI Trust upon completion of its duties and the satisfaction of the purposes of the PI Trust, wherein because (A) the Trustee deems it unlikely that new PI Channeled Claims will be filed against the PI Trust, (B) all PI Channeled Claims duly filed with the PI Trust have been liquidated and paid to the extent provided in this Trust Agreement and the TDPs or otherwise resolved, and (C) twelve (12) consecutive months have elapsed during which no new PI Channeled Claim has been filed with the PI Trust.

(c)    On the Dissolution Date (or as soon thereafter as is reasonably practicable), after the wind-up of the PI Trust's affairs by the Trustee and payment of all the PI Trust's liabilities have been provided for as required by applicable law including section 3808 of the Act, all monies remaining in the PI Trust shall be given to charitable organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Trustee using his or her reasonable discretion; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on the cure of, or other relief for individuals suffering from opioid use disorder, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Debtors within the meaning of section 468B(d)(3) of the Internal Revenue Code. Notwithstanding any contrary provision of the Plan and related documents, this Section 6.2(c) cannot be modified or amended.

(d)    Following the dissolution and distribution of the assets of the PI Trust, the PI Trust shall terminate and the Trustee and the Delaware Trustee (acting solely at the written direction of the Trustee) shall execute and cause a Certificate of Cancellation of the Certificate of Trust of the PI Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the PI Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

**6.3    Independent Charitable Trust**. A separate charitable trust (the **"Charitable Trust"**) shall be established by the Trustee, in collaboration with the Oversight Committee and the Financial Advisor, to carry out charitable purposes directly related to addressing the opioid crisis. PI Claimants and their counsel may make optional contributions to the Charitable Trust. Management of the Charitable Trust shall be independent of the PI Trust, and the Trustee, the

Oversight Committee, the Claims Administrator, and the Financial Advisor shall have no authority in connection therewith.  The documents governing the Charitable Trust shall include provisions to indemnify and hold harmless the PI Trust, the Trustee, the Delaware Trustee, the Oversight Committee and its members, the Claims Administrator, the PI LRP Administrator, and the Additional Indemnitees, including the Financial Advisor.

6.4    **Amendments**.  Subject to Section 2.2(l) herein, the Trustee, after consultation with the Oversight Committee, and subject to the unanimous consent of the Oversight Committee, may modify or amend this Trust Agreement.  Subject to Section 2.2(l) herein, the Trustee, after consultation with the Oversight Committee, and subject to the consent of the Oversight Committee, may modify or amend the TDPs; *provided, however,* that no modification or amendment of the TDPs shall (i) have a material and adverse effect on PI Claimants' entitlements to Distributions or (ii) be inconsistent with any of the provisions herein.  The LRP Agreement may be amended in writing, in whole or in part, only with the written consent of the law firm or Claimant's Counsel (as defined in the LRP Agreement) representing more than fifty percent (50%) of the Participating Claimants (as defined in the LRP Agreement) and counsel representing more than 50% of the Participating TPPs (as defined in the LRP Agreement); *provided, however*, that the LRP Agreement may not be amended in a way that imposes upon one or more Participating Claimants worse treatment than that afforded to one or more Participating Claimants without the consent of the Participating Claimants negatively impacted. Any modification or amendment made pursuant to this Section must be done in writing. Notwithstanding anything contained in this Trust Agreement, the TDPs, or the LRP Agreement to the contrary, neither this Trust Agreement, the TDPs, the LRP Agreement, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair,

or modify (i) the applicability of section 105 of the Bankruptcy Code to the Plan, the Confirmation Order, or the PI Trust, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan, (iii) the PI Trust's treatment as a Qualified Settlement Fund within the meaning of the QSF Regulations, or (iv) the Plan or the Confirmation Order. Any amendment affecting the rights, duties, immunities, or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent.

**6.5** **Severability**. Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

**6.6** **Notices**.

(a) Notices to persons asserting claims shall be given by first class mail, postage prepaid, at the address of such person, or, where applicable, such person's legal representative, in each case as provided on such person's claim form submitted to the PI Trust with respect to his or her PI Channeled Claim, or by such other means, including electronic notice, as may be agreed between the PI Trust and the Oversight Committee.

(b) Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the PI Trust through the Trustee:

> Purdue Personal Injury Trust
> Attn: Edgar C. Gentle, III, Esq.
> c/o Gentle, Turner, Sexton & Harbison, LLC
> 501 Riverchase Parkway East, Suite100
> Hoover, AL 35244

E-mail: egentle@gtandslaw.com

With a copy to:

[_____]

To the Delaware Trustee;

[_____]

To the Oversight Committee:

Sean Higgins, Esq.
on behalf of Andrews & Thornton
4701 Von Karman Avenue, Suite 300
Newport Beach, CA 92660
E-mail: shiggins@andrewsthornton.com

Troy Tatting, Esq.
on behalf of ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
E-mail: ttatting@askllp.com

Rochelle Guiton, Esq.
on behalf of D. Miller & Associates, PLLC
2610 West Sam Houston Parkway, Suite 200
Houston, TX 77042
E-mail: rochelle@dmillerlaw.com

With a copy to:

[_____]

To the NAS Representative:

Celeste Brustowicz, Esq.
On behalf of Cooper Law Firm L.L.C.
1525 Religious Street
New Orleans, LA 70130
E-mail: cbrustowicz@clfnola.com

With a copy to:

Scott R. Bickford, Esq.
On behalf of Martzell, Bickford &Centola
338 Lafayette St

New Orleans, LA 70130
Email: srb@mbfirm.com

To the Debtors:

[_____]

With a copy to:

[_____]

(c)     All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

6.7     **Successors and Assigns**.   The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Debtors, the PI Trust, the Trustee, the Oversight Committee, NewCo, and TopCo, and their respective successors and assigns, except that none of the Debtors, the PI Trust, the Trustee, the Oversight Committee, NewCo, nor TopCo may assign or otherwise transfer any of their rights or obligations, if any, under this Trust Agreement except, in the case of the Trustee in accordance with Section 4.3 herein, and the Oversight Committee members in accordance with Section 5.6 herein.

6.8     **Limitation on Claim Interests for Securities Laws Purposes**.  PI Channeled Claims and any interests therein, other than encumbrances on proceeds of PI Channeled Claims, (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution, or by operation of law; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

**6.9**    **Entire Agreement; No Waiver**.  The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein (including the Plan, the TDPs, and the LRP Agreement), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**6.10**    **Headings**.    The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**6.11**    **Governing Law**.  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; *provided, however*, that the Parties hereto intend that the provisions hereof shall control and, therefore, the following shall not be applicable to the PI Trust, the Trustee, the Delaware Trustee, the Oversight Committee, or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for

trustees, officers, agents, or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to trustees, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee, the Delaware Trustee, or the Oversight Committee set forth or referenced in this Trust Agreement.  Section 3540 of the Act shall not apply to the PI Trust.

6.12    **Settlors' Representative and Cooperation**.  The Debtors hereby are irrevocably designated as the Settlors of the PI Trust, and they hereby are authorized to take any action required of the Settlors by the Trustee in connection with this Trust Agreement.

6.13    **Dispute Resolution**.  Any disputes among the Parties hereto that arise under this Trust Agreement or under the TDPs or the LRP Agreement shall be resolved by submission of the matter to an alternative dispute resolution **("ADR")** process mutually agreeable to the Parties involved.  If any Party to the ADR process is dissatisfied with the decision of the arbitrator(s), that Party may apply to the Bankruptcy Court for a judicial determination of the matter.  Any review conducted by the Bankruptcy Court shall be *de novo*.  In any case, if the dispute arose pursuant to the consent provision set forth in Section 5.9 herein, the Party or Parties who withheld consent shall bear the burden of proving that it reasonably withheld its consent.  If the

objecting Party meets that burden, the PI Trust shall then bear the burden of showing why it should be permitted to take the proposed action notwithstanding the reasonable objection.  If the dispute is not resolved by the ADR process within thirty (30) days after submission, the Parties are relieved of the requirement to pursue ADR prior to application to the Bankruptcy Court.  If the Trustee determines that the matter in dispute is exigent and cannot await the completion of the ADR process, the Trustee shall have the discretion to elect out of the ADR process altogether or at any stage of the process and seek resolution of the dispute in the Bankruptcy Court.

6.14    **Enforcement and Administration**.  The provisions of this Trust Agreement and the TDPs shall be enforced by the Bankruptcy Court pursuant to the Plan and the Confirmation Order.  The Parties hereby acknowledge and agree that the Bankruptcy Court shall have continuing exclusive jurisdiction over the settlement of the accounts of the Trustee and over any disputes that arise under the PI Trust Documents and are not resolved by alternative dispute resolution in accordance with Section 6.13 herein.

6.15    **Effectiveness**.  This Trust Agreement shall not become effective until the Effective Date of the Plan and it has been executed and delivered by all the Parties hereto.

6.16    **Counterpart Signatures**.  This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this_____ day of _____, 2021.

**SETTLORS:**

**PURDUE PHARMA L.P.**

By:_____

**PURDUE PHARMA INC**.

By:_____

**PURDUE TRANSDERMAL TECHNOLOGIES L.P.**

By:_____

**PURDUE PHARMA MANUFACTURING L.P.**

By:_____

**PURDUE PHARMACEUTICALS L.P.**

By:_____

**IMBRIUM THERAPEUTICS L.P.**

By:_____

**ADLON THERAPEUTICS L.P.**

By:_____

**GREENFIELD BIOVENTURES L.P**.


By:_____


**SEVEN SEAS HILL CORP**.


By:_____


**OPHIR GREEN CORP**.

By:_____


**PURDUE PHARMA OF PUERTO RICO**


By:_____


**AVRIO HEALTH L.P**.


By:_____


**PURDUE PHARMACEUTICAL PRODUCTS L.P**.


By:_____


**PURDUE NEUROSCIENCE COMPANY**


By:_____

**NAYATT COVE LIFESCIENCE INC**.


By:_____


**BUTTON LAND L.P**.


By:_____


**RHODES ASSOCIATES L.P**.


By:_____


**PAUL LAND INC**.


By:_____


**QUIDNICK LAND L.P**.


By:_____


**RHODES PHARMACEUTICALS L.P**.


By:_____


**RHODES TECHNOLOGIES**


By:_____


**SVC PHARMA LP**


By:_____

**SVC PHARMA INC**.


By:_____


**TRUSTEE**


By:_____
Name:  Edgar C. Gentle, III, Esq.



**AD HOC GROUP OF INDIVIDUAL VICTIMS**


By:_____
Name:  Edward E. Neiger, Esq.


**NAS COMMITTEE**

By:_____
Name:  Harold Israel, Esq.



**DELAWARE TRUSTEE**


By:_____
Name:


**OVERSIGHT COMMITTEE:**

_____
Name:  Sean Higgins


_____
Name:  Troy Tatting


_____
Name:  [                    ]

**Exhibit 1**

Certificate of Trust

**(TO BE INSERTED)**

## **Exhibit M**

PI Futures Trust Agreement

**PI FUTURES TRUST AGREEMENT**

# TABLE OF CONTENTS

**Page**

ARTICLE I AGREEMENT OF TRUST ................................................................. 3

    1.1    Creation and Name ................................................................. 3

    1.2    Purpose ................................................................................. 4

    1.3    Transfer of Assets ................................................................. 6

    1.4    Acceptance of Assets and Assumption of Liabilities ........... 7

ARTICLE II POWERS AND TRUST ADMINISTRATION ...................................... 8

    2.1    Powers ................................................................................. 8

    2.2    General Administration ........................................................ 13

    2.3    Claims Administration ......................................................... 17

    2.4    Trust Expenses and Other Fees and Expenses .................... 18

    2.5    Common Benefit Escrow/Common Benefit Fund Assessments ........................ 19

    2.6    Medicare Reporting Obligations .......................................... 20

ARTICLE III ACCOUNTS AND INVESTMENTS ............................................... 21

    3.1    Establishment of Accounts ................................................... 21

    3.2    Investments ......................................................................... 21

    3.3    Source of Payments ............................................................. 22

    3.4    Accounting Statements and Audit ........................................ 22

ARTICLE IV TRUSTEE; DELAWARE TRUSTEE ............................................. 23

    4.1    Number ................................................................................ 23

    4.2    Term of Service ................................................................... 23

    4.3    Appointment of Successor Trustee ....................................... 24

    4.4    Liability of Trustee and Others ............................................ 25

    4.5    Compensation and Expenses of Trustee and Delaware Trustee ................... 25

    4.6    Indemnification ................................................................... 26

-i-

# TABLE OF CONTENTS
(continued)

4.7    Lien ...................................................................................................... 27

4.8    Trustee's Employment of Experts; Delaware Trustee's Employment of Counsel ............................................................................................... 27

4.9    Trustee's Independence ....................................................................... 28

4.10   No Bond ............................................................................................... 29

4.11   Delaware Trustee ................................................................................ 29

ARTICLE V GENERAL PROVISIONS ............................................................. 32

5.1    Irrevocability ....................................................................................... 32

5.2    Term; Termination ............................................................................... 32

5.3    Amendments ........................................................................................ 33

5.4    Severability .......................................................................................... 34

5.5    Notices ................................................................................................. 34

5.6    Successors and Assigns ....................................................................... 35

5.7    Limitation on Claim Interests for Securities Laws Purposes .............. 35

5.8    Entire Agreement; No Waiver ............................................................. 36

5.9    Headings .............................................................................................. 36

5.10   Governing Law .................................................................................... 36

5.11   Settlors' Representative and Cooperation ........................................... 37

5.12   Dispute Resolution .............................................................................. 37

5.13   Enforcement and Administration ........................................................ 37

5.14   Effectiveness ....................................................................................... 38

5.15   Counterpart Signatures ....................................................................... 38

Exhibit 1   Certificate of Trust

## PI FUTURES TRUST AGREEMENT

This PI Futures Trust Agreement (this "**Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered into, pursuant to the *[Fifth] Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* dated [June 3], 2021 (as modified, amended or supplemented from time to time, and together with all exhibits and schedules thereto, the **"Plan"**),[1] by Purdue Pharma L.P. and its Debtor affiliates[2] (collectively referred to as the **"Debtors"** or **"Settlors"**),[3] Edgar C. Gentle III, as trustee (the **"Trustee"**), and [●], as statutory Delaware trustee (the **"Delaware Trustee"**) (together with the Debtors and the Trustee, the "**Parties**"); and

**WHEREAS,** the Debtors have reorganized under the provisions of Chapter 11 of the Bankruptcy Code; and

**WHEREAS,** the Confirmation Order has been entered by the Bankruptcy Court; and

**WHEREAS,** the Plan provides, inter alia, for the establishment of a Creditor Trust with respect to Future PI Channeled Claims in accordance with Section 5.7 of the Plan (the **"Pl Futures Trust"**); and

---

[1] All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Plan, but defined in title 11 of the United States Code (the "**Bankruptcy Code**") or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), shall have the meanings ascribed to them by the Bankruptcy Code or Bankruptcy Rules, as applicable, and such definitions are incorporated herein by reference.

[2] The Debtors in these cases are as follows: Purdue Pharma L.P.; Purdue Pharma Inc.; Purdue Transdermal Technologies L.P.; Purdue Pharma Manufacturing L.P.; Purdue Pharmaceuticals L.P.; Imbrium Therapeutics L.P.; Adlon Therapeutics L.P.; Greenfield BioVentures L.P.; Seven Seas Hill Corp; Ophir Green Corp.; Purdue Pharma of Puerto Rico; Avrio Health L.P.; Purdue Pharmaceutical Products L.P.; Purdue Neuroscience Company; Nayatt Cove Lifescience Inc.; Button Land L.P.; Rhodes Associates L.P.; Paul Land Inc.; Quidnick Land L.P.; Rhodes Pharmaceuticals L.P.; Rhodes Technologies; SVC Pharma L.P.; and SVC Pharma Inc.

[3] The Chapter 11 Cases of the Debtors and Debtors in Possession are jointly administered under Case No. 19-23649 (RDD) in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and known as *In re Purdue Pharma L.P., et al.*, Case No. 19-23649 (RDD).

**WHEREAS,** pursuant to the Plan, the PI Futures Trust shall be established to (i) assume all liability for the Future PI Channeled Claims, (ii) collect the PI Futures Trust Distribution in accordance with the PI Futures Trust Documents, (iii) administer Future PI Channeled Claims, (iv) make Distributions on account of Allowed Future PI Channeled Claims in accordance with the PI Futures Trust Documents, and (v) carry out such other matters as are set forth in the PI Futures Trust Documents; and

**WHEREAS**, the Plan and the Master TDP provide that on the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all Future PI Channeled Claims shall automatically, and without further act, deed or court order, be channeled and assumed by the Master Disbursement Trust solely for the purpose of effectuating the Master TDP, and further provided that immediately thereafter, any and all Future PI Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the PI Futures Trust; and

**WHEREAS**, pursuant to the Plan and the Confirmation Order, the PI Futures Trust shall (i) hold, manage and invest all funds and other Assets received by the PI Futures Trust from the Master Disbursement Trust for the benefit of the beneficiaries of the PI Futures Trust; (ii) hold and maintain the PI Futures Trust Operating Reserve, as defined in Section 1.2 herein; and (iii) administer, process, resolve and liquidate all Future PI Channeled Claims that are Allowed by the Trustee in accordance with the *Purdue Pharma L.P. Trust Distribution Procedure for Future PI Channeled Claims* (the "**PI Futures TDP**"), attached as Exhibit N of the Plan Supplement, (the "**Allowed Future PI Channeled Claims**"); and

**WHEREAS,** it is the intent of the Debtors and the Trustee that the PI Futures Trust will be in a financial position to pay Holders of Allowed Future PI Channeled Claims, in accordance with the terms of this Trust Agreement and the PI Futures TDP; and

**WHEREAS,** all rights of the Holders of Future PI Channeled Claims (the "**Future PI Claimants**") arising under this Trust Agreement and the PI Futures TDP shall vest upon the later of the Effective Date and the date such Future PI Channeled Claim arises; and

**WHEREAS,** pursuant to the Plan, the PI Futures Trust is intended to qualify as a "qualified settlement fund" (a "**Qualified Settlement Fund**") within the meaning of section 1.468B-1, et seq. of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"), and to be treated consistently for state and local tax purposes to the extent applicable; and

**WHEREAS,** the Bankruptcy Court has determined that the PI Futures Trust and the Plan satisfy all the prerequisites for issuance of an injunction pursuant to section 105(a) of the Bankruptcy Code with respect to any and all Future PI Channeled Claims, and such injunction has been entered in connection with the Confirmation Order;

**NOW, THEREFORE,** it is hereby agreed as follows:

## ARTICLE I

## AGREEMENT OF TRUST

**1.1    Creation and Name.** The Debtors as Settlors hereby create a trust known as the "PI Futures Trust" which is the PI Futures Trust provided for and referred to in Section 5.7 of the Plan. The Trustee of the PI Futures Trust may transact the business and affairs of the PI Futures Trust in the name of the PI Futures Trust, and references herein to the PI Futures Trust shall include the Trustee acting on behalf of the PI Futures Trust. It is the intention of the Parties that the PI Futures Trust constitute a statutory trust under Chapter 38 of title 12 of the Delaware

Code, 12 Del. C. § 3801, et seq. (the **Act**"), and that this Trust Agreement constitute the governing instrument of the PI Futures Trust.  The Trustee and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit 1.

       1.2    **Purpose**.  The purpose of the PI Futures Trust is to assume all liabilities and responsibility for the Future PI Channeled Claims to the extent provided in the Plan and Master TDP and to make Distributions in respect of Allowed Future PI Channeled Claims in accordance with this Trust Agreement and the PI Futures TDP, as well as to, among other things:

       (a)    assume all liability for the Future PI Channeled Claims;

       (b)    collect the PI Futures Trust Distribution in accordance with the Plan, this Trust Agreement, and the PI Futures TDP;

       (c)    direct (i) the administration, processing, resolution, and liquidation of Future PI Channeled Claims and (ii) the making of Distributions on account of Allowed Future PI Channeled Claims, each in accordance with the Plan, the PI Futures TDP, and the Confirmation Order;

       (d)    hold, manage and invest all funds and other Assets of the PI Futures Trust for use in paying and resolving Future PI Channeled Claims in accordance with the Plan, the PI Futures TDP, and the Confirmation Order;

       (e)    qualify at all times as a Qualified Settlement Fund within the meaning of the QSF Regulations and be treated consistently for state and local tax purposes to the extent applicable;

       (f)    use the PI Futures Trust Assets and related income to:

             (i)    pay Holders of Allowed Future PI Channeled Claims in accordance with this Trust Agreement and the PI Futures TDP such that Holders of

Allowed Future PI Channeled Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such Allowed Future PI Channeled Claims and the term of the PI Futures Trust;

(ii)     collect and remit assessments as and to the extent required by the Plan to fund the Common Benefit Escrow and then, upon its establishment, the Common Benefit Fund in accordance with Section 5.8(c) of the Plan;

(iii)    hold and maintain reserves to pay the fees and expenses incurred with respect to administering the PI Futures Trust (including the PI Futures TDP) and managing the PI Futures Trust Assets (together, the "**Trust Operating Expenses**") of the PI Futures Trust (such reserves, the **"PI Futures Trust Operating Reserve"**), which shall be (a) funded with Cash and cash equivalents held by the PI Futures Trust in accordance with this Trust Agreement and the PI Futures TDP and (b) held by the PI Futures Trust in a segregated account and administered by the Trustee;

(iv)     pay the Trust Operating Expenses from the PI Futures Trust Operating Reserve;

(v)      replenish periodically, until the dissolution of a PI Futures Trust, the PI Futures Trust Operating Reserve from Cash held or received by the PI Futures Trust to the extent deemed necessary by the Trustee to satisfy and pay estimated future Trust Operating Expenses in accordance with this Trust Agreement and the PI Futures TDP; and

(vi)     pay all fees and expenses incurred with respect to, among other things, making Distributions on Allowed Future PI Channeled Claims, including

attorneys' fees and costs (as described in Section 2.4 herein and together with the Trust Operating Expenses, the **"Trust Expenses"**).

(g)    No Future PI Channeled Claim shall be channeled to, attach to, be payable or otherwise compensable from, be eligible to receive a Distribution from, or have any recourse to, the PI Trust or the Assets of the PI Trust, including, but not limited to, the Initial PI Trust Distribution, the MDT PI Claim, any MDT Bermuda-Form Insurance Proceeds, the Creditor Trust Operating Reserve of the PI Trust or any entitlement to, or products, proceeds or profits of, any of the foregoing, prior to the establishment of, during the existence of or following the dissolution of, the PI Futures Trust or at any other time.

**1.3    Transfer of Assets**.  Pursuant to and in accordance with Articles IV and V of the Plan, the PI Futures Trust has received the PI Futures Trust Distribution, and may receive any other assets required to be transferred to the PI Futures Trust under the Plan (collectively, the **"PI Futures Trust Assets"**) to fund the PI Futures Trust and to settle or discharge all Future PI Channeled Claims.  In all events, the PI Futures Trust Assets to be transferred to the PI Futures Trust under the Plan shall be transferred to the PI Futures Trust free and clear of any Claims, Liens, or other recourse or encumbrances, and shall not be subject to attachment, disgorgement, or recoupment by any Person.  The PI Futures Trust shall deduct from awards the (A) Trust Operating Expenses, which shall be held and maintained in the PI Futures Trust Operating Reserve, (B) the common benefit assessment required under Section 5.8(c) of the Plan, and (C) where applicable, the fees and costs of the Future PI Claimants' individual attorneys in the Chapter 11 Cases, if any, which deductions shall be made by such attorneys and reduced by the common benefit assessment in accordance with Section 5.8(c) of the Plan.

**1.4**      **Acceptance of Assets and Assumption of Liabilities**.

(a)      In furtherance of the purposes of the PI Futures Trust set forth in Section 1.2 herein, the PI Futures Trust hereby expressly accepts the transfer to the PI Futures Trust of the PI Futures Trust Assets and any other transfers contemplated by the Plan and the Master TDP as contemplated in, and subject to the terms of, the Plan and the Master TDP.

(b)      In furtherance of the purposes of the PI Futures Trust, the PI Futures Trust expressly assumes all liabilities and responsibility for all Future PI Channeled Claims (except as set forth in the Plan), subject to the PI Futures Trust Documents, and none of the Debtors, the Protected Parties, or the Master Disbursement Trust shall have any further financial or other responsibility or liability therefor.  Except as otherwise provided in this Trust Agreement, the PI Futures TDP, the Plan, or the Master TDP, the PI Futures Trust shall have and retain any and all defenses, cross-claims, offsets, and recoupments regarding the Future PI Channeled Claims, as well as any and all rights of indemnification, contribution, subrogation, and similar rights, that the Debtors, the Released Parties, and the Shareholder Released Parties, as applicable, have or would have had under applicable law; *provided* that no such claims, defenses or rights may be asserted against any Protected Party.

(c)      Notwithstanding anything to the contrary herein, no provision in this Trust Agreement or the PI Futures TDP shall be construed or implemented in a manner that would cause the PI Futures Trust to fail to qualify as a Qualified Settlement Fund within the meaning of the QSF Regulations.

(d)      Nothing in this Trust Agreement shall be construed in any way to limit (i) the scope, enforceability, or effectiveness of the Channeling Injunction and the channeling of the Future PI Channeled Claims to this PI Futures Trust in accordance with Section 10.19 of the

Plan, or (ii) subject to the provisions of Section 1.4(b) herein, the PI Futures Trust's assumption of all liability for Future PI Channeled Claims.

(e)    In this Trust Agreement, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

(f)    To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the PI Futures Trust (the **"Beneficial Owners"**) shall be deemed to be those Future PI Claimants holding Allowed Future PI Channeled Claims; *provided, however*, that (i) such Future PI Claimants, as such Beneficial Owners, shall have only such rights with respect to the PI Futures Trust and its assets as are set forth in the PI Futures TDP and (ii) no greater or other rights, including upon dissolution, liquidation, or winding up of the PI Futures Trust, shall be deemed to apply to such Future PI Claimants in their capacity as Beneficial Owners.

## ARTICLE II

## POWERS AND TRUST ADMINISTRATION

**2.1**    **Powers**.

(a)    The Trustee is and shall act as a fiduciary to the PI Futures Trust in accordance with the provisions of this Trust Agreement, the Plan, and the Confirmation Order. The Trustee shall, at all times, administer the PI Futures Trust and the PI Futures Trust Assets in accordance with the purposes set forth in Section 1.2 herein. Subject to the limitations set forth in this Trust Agreement, the Trustee shall have the power to take any and all actions that, in the judgment of the Trustee, are necessary or proper to fulfill the purposes of the PI Futures Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and not inconsistent with the requirements of Section 2.2 herein, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)     Except as required by applicable law or otherwise specified herein or in the Plan or the Confirmation Order, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)     Without limiting the generality of Section 2.1(a) herein, and except as limited below or by the Plan, the Trustee shall have the power to

(i)     receive and hold the PI Futures Trust Assets and exercise all rights with respect thereto;

(ii)     invest the monies held from time to time by the PI Futures Trust;

(iii)     sell, transfer or exchange any or all of the Trust Assets at such prices and upon such terms as he or she may consider proper, consistent with the other terms of this Trust Agreement;

(iv)     enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to facilitate operation of the PI Futures Trust;

(v)     pay liabilities and expenses of the PI Futures Trust, including the Trust Operating Expenses and Trust Expenses and indemnification obligations;

(vi)     establish the PI Futures Trust Operating Reserve for the PI Futures Trust, and such other funds, reserves, and accounts within the PI Futures Trust estate as deemed by the Trustee to facilitate carrying out the purposes of the PI Futures Trust, subject to the limitations set forth in Section 3.1 herein;

(vii)     initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of the PI Futures Trust as required to reconcile, administer, or defend against the Future PI Channeled Claims, including post-

Effective Date proceedings before the Bankruptcy Court under Section 6.21 of the Plan, or to enforce the rights of the PI Futures Trust under the Plan and Plan Documents;

(viii)    initiate, prosecute, defend and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary by the Trustee to fulfill the purposes of the PI Futures Trust;

(ix)    defend and assert in any court counterclaims against Future PI Channeled Claims brought against the PI Futures Trust by Future PI Claimants, bring one or more consolidated actions against Future PI Claimants who have commenced lawsuits against or concerning the PI Trust, seek to consolidate multiple such lawsuits commenced by such Future PI Claimants, and seek to consolidate discovery propounded by such Future PI Claimants or by the PI Futures Trust in multiple lawsuits commenced by such Future PI Claimants;

(x)    bring any and all arguments in furtherance of (vii)-(ix) above, including the argument that a purported Future PI Channeled Claim does not meet the definition of Future PI Channeled Claim, NAS Future PI Channeled Claim, or Non-NAS Future PI Channeled Claim under the PI Futures TDP;

(xi)    establish, supervise, and administer the PI Futures Trust in accordance with this Trust Agreement and the PI Futures TDP;

(xii)    appoint such officers, hire such employees, and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Futures Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement and the PI Futures TDP;

(xiii)    pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents (including those engaged by the PI Futures Trust in connection with its alternative dispute resolution activities);

(xiv)    as provided below, (a) compensate the Trustee, the Delaware Trustee and their respective employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents, and (b) reimburse the Trustee and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by such persons in connection with the performance of their duties hereunder;

(xv)    execute and deliver such instruments as the Trustee deems proper in administering the PI Futures Trust;

(xvi)    enter into such other arrangements with third parties as the Trustee deems useful in carrying out the purposes of the PI Futures Trust, provided such arrangements do not conflict with any other provision of this Trust Agreement;

(xvii)    in accordance with Section 4.6 herein, defend, indemnify, and hold harmless (and purchase insurance indemnifying) (A) the Trustee, (B) the Delaware Trustee, (C) the officers, employees, consultants, advisors, and agents of the Trustee and the Delaware Trustee (each of those in clause (C) herein, the **"Additional Indemnitees"**), for reasonable fees and expenses in defending any and all of their actions or inactions in their capacities as Trustee and the Delaware Trustee, or on behalf of the PI Futures Trust.  Notwithstanding anything to the contrary herein, no party shall be indemnified in any way for any liability, expense, claim, damage, or loss for which he or she is liable under Section 4.4 herein;

-11-

(xviii) make, pursue (by litigation or otherwise), collect, compromise, settle, or otherwise resolve, in the name of the PI Futures Trust, any claim, right, action, or cause of action of the PI Futures Trust, including, but not limited to, insurance recoveries, before any court of competent jurisdiction and without approval of the Bankruptcy Court;

(xix)    take actions to minimize any tax on the PI Futures Trust Assets; *provided, however*, that no such action prevents the PI Futures Trust from qualifying as a Qualified Settlement Fund within the meaning of the QSF Regulations or entails making an election for the PI Futures Trust to be treated as a grantor trust for tax purposes;

(xx)    settle the liability of any insurer under any insurance policy or legal action related thereto;

(xxi)    acquire an interest in or merge any claims resolution organization formed by the PI Futures Trust with another claims resolution organization that is not specifically created by this Trust Agreement or the PI Futures TDP, or contract with another claims resolution organization or other entity that is not specifically created by this Trust Agreement, or the PI Futures TDP, or permit any other party to join in any claims resolution organization that is formed by the PI Futures Trust pursuant to the Trust Agreement, or the PI Futures TDP; *provided, however*, that such merger, acquisition, contract, or joinder shall not (a) subject NewCo, TopCo, PPLP, the Liquidating Debtors, the Transferred PPLP Subsidiaries, any other Protected Party, or any successors in interest thereto, to any risk of having any Future PI Channeled Claim asserted against it or them, or (b) otherwise jeopardize the validity or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan; or (c) cause the PI Futures Trust to fail to qualify as a Qualified Settlement Fund within the meaning of the QSF Regulations; and *provided further* that the terms

of such merger will require the surviving organization to make decisions about the allowability or value of claims in accordance with the provisions of the PI Futures TDP;

(xxii)  if and to the extent required by the PI Futures TDP, disclose any information, documents, or other materials to preserve, litigate, resolve, or settle coverage, or comply with an applicable obligation under an insurance policy or settlement agreement pursuant to the PI Futures TDP;

(xxiii)  exercise any and all other rights of the Trustee, and take any and all other actions as are permitted, in accordance with the terms of this Trust Agreement;

(xxiv)  amend any provision of this Trust Agreement or the PI Futures TDP, provided that such amendments are consistent with the Plan.

(d)    The Trustee shall not have the power to guarantee any debt of other persons.

(e)    The Trustee agrees to take the actions of the PI Futures Trust required hereunder.

**2.2    General Administration**.

(a)    The Trustee shall act in accordance with this Trust Agreement, the Plan, the Confirmation Order, and the PI Futures TDP.  In the event of a conflict between the terms or provisions of (i) this Trust Agreement and (ii) the PI Futures TDP, the terms of the PI Futures TDP shall control.  In the event of a conflict between the terms or provisions of the Plan and this Trust Agreement or the PI Futures TDP, the terms of the Plan shall control.

(b)    The Trustee shall be the "administrator" of the PI Futures Trust within the meaning of section 1.468B-2(k)(3) of the Treasury Regulations and shall (i) timely file such income tax and other returns and statements as are required to comply with applicable provisions

of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, and of any

state law and the regulations promulgated thereunder, (ii) be responsible for paying, out of the PI

Futures Trust Assets, taxes and any other obligations or liabilities of any and all kinds

whatsoever that at any time are lawfully levied, assessed upon, or become payable in respect of

the PI Futures Trust or its funds, (iii) comply with applicable tax reporting and withholding

obligations, and (iv) ensure that the PI Futures Trust qualifies and maintains its qualification as a

Qualified Settlement Fund within the meaning of the QSF Regulations.   The PI Futures Trust

shall not take any action, or omit to take any action, that could adversely affect the PI Futures

Trust's qualification as a Qualified Settlement Fund.    Even if permitted by the Treasury

Regulations governing Qualified Settlement Funds, no election shall be filed by or on behalf of

the PI Futures Trust for the PI Futures Trust to be treated as a grantor trust for federal income tax

purposes.

        (c)    The Trustee may withhold, and shall pay to the appropriate tax authority,

all amounts required by law to be withheld pursuant to the Internal Revenue Code or any

provision of any applicable foreign, state, or local tax law with respect to any payment or

Distribution to the Holders of Allowed Future PI Channeled Claims.  All such amounts withheld

and paid to the appropriate tax authority shall be treated as amounts distributed to such Holders

of Allowed Future PI Channeled Claims for all purposes of this Trust Agreement.  The Trustee

shall be authorized to collect tax information, which may include an applicable IRS Form W-8 or

IRS Form W-9, from the Holders of Allowed Future PI Channeled Claims (including tax

identification numbers) as reasonably requested by the Trustee, readily available to the Holders

of the Allowed Future PI Channeled Claims and necessary to effectuate the Plan, the

Confirmation Order, and this Trust Agreement.  The Trustee may refuse to make some or all of a

Distribution to a Holder of an Allowed Future PI Channeled Claim that fails to furnish such information in a timely fashion, and until such information is delivered may treat such Holder's Allowed Future PI Channeled Claim, as disputed; *provided*, *however*, that, upon the delivery of such information by a Holder of an Allowed Future PI Channeled Claim, the Trustee shall make such Distribution to which such Holder is entitled, without additional interest occasioned by such Holder's delay in providing tax information.  Notwithstanding the foregoing, if a Holder of an Allowed Future PI Channeled Claim fails to furnish any tax information reasonably requested by the Trustee before the date that is six months after the request is made (subject to extension in the discretion of the Trustee if such Holder demonstrates to the reasonable satisfaction of the Trustee that such Holder's failure to provide such tax information is due to one or more taxing authorities' failure to furnish information necessary to respond to the Trustee's reasonable request to such Holder despite such Holder's request for such information), the amount of such Distribution shall irrevocably revert to the PI Futures Trust, and any Allowed Future PI Channeled Claim with respect to such Distribution shall be discharged and forever barred from assertion against the PI Futures Trust or its property.

(d)    The Trustee shall be responsible for all of the PI Futures Trust's tax matters, including, without limitation, tax audits, claims, defenses and proceedings.  The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the PI Futures Trust for all taxable periods through the dissolution of the PI Futures Trust.  The Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the PI Futures Trust that is required by any governmental unit and be responsible for payment, out of the PI Futures Trust Assets, of any taxes imposed on the PI Futures Trust or the PI Futures Trust Assets.

(e)    The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual accounting containing financial statements of the PI Futures Trust (the **"Annual Report"**), as described more fully in Section 3.4(b) herein.  The Trustee shall cause to be prepared at the end of each of the first three quarters of each fiscal year a quarterly accounting containing unaudited financial statements of the PI Futures Trust as of the end of such quarter, as described more fully in Section 3.4(c) herein.

(f)    On a quarterly basis, the Trustee shall cause to be prepared, and provided to the Trustee, a summary of Future PI Channeled Claims broken down as appropriate by categories and status.

(g)    The Trustee shall procure such general liability and other insurance as necessary and as required by law with respect to the employees and staff performing the claims administration functions.  The Trustee may purchase and maintain reasonable amounts and types of insurance, including insurance on behalf of an individual who is or was a Trustee, against liability asserted against or incurred by such individual in that capacity; *provided, however*, that the costs of such insurance are reasonable.  The cost of such insurance coverage shall be paid from the PI Futures Trust.

(h)    The Trustee shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering such fiscal year (the **"Budget"**), and shall cause the Budget to be filed with the Bankruptcy Court.

**2.3**     **Claims Administration**.

(a)     The Trustee shall promptly implement the PI Futures TDP if and when actions concerning Future PI Channeled Claims are commenced against the PI Futures Trust.

(b)     The Trustee shall be responsible for (i) supervising the processing of and resolution of Future PI Channeled Claims and overseeing and supervising all aspects of the claims office (the **"Claims Office"**), which shall process Future PI Channeled Claims that are payable from the PI Futures Trust in accordance with the PI Futures TDP, (ii) preparing and distributing periodic reports documenting the activities of the Claims Office, including detailed reports on the submission of Future PI Channeled Claims and their resolution, and (iii) performing periodic analyses and estimates regarding the costs and projected costs of resolving Future PI Channeled Claims and any matter or contingency that could affect the efficient use of funds for the payment of Allowed Future PI Channeled Claims.

(c)     As set forth in the PI Futures TDP, Distributions under the PI Futures TDP, which shall be made solely from the PI Futures Trust, are made only with consideration to an Future PI Channeled Claim held against the Debtors, and not to any associated Future PI Channeled Claim against a non-Debtor party; any Distribution to a Future PI Claimant on account of his or her Future PI Channeled Claim shall be deemed to be a distribution in satisfaction of all Future PI Channeled Claims held by such Future PI Claimant with respect to the same injuries that are the subject of his or her Future PI Claim.

(d)     The Claims Office shall process Future PI Channeled Claims payable from the PI Futures Trust in accordance with the PI Futures TDP.

(e)       The Trustee shall have discretion to implement such additional procedures and routines as necessary to implement the PI Futures TDP, and consistent with the terms of this Trust Agreement.

(f)       The Trustee shall monitor the long-term goals and day-to-day activities of the Claims Office.

(g)       The Trustee shall institute procedures, claims processing, protocols, and staff training and shall develop claims-tracking, analysis, and payment systems as necessary to process Future PI Channeled Claims (if any) in accordance with the PI Futures TDP, including reasonable measures to detect and prevent claims fraud.

(h)       The Trustee shall maintain (but need not file with any court) records of all individual payments and settlements concerning any Future PI Channeled Claims.  The Claims Office shall provide such records to the Trustee in electronic format.

(i)       The Trustee (or his or her delegate) shall have the power to hire, and shall hire and appoint, such staff and other appropriate agents, including persons or entities performing Future PI Channeled Claim audit functions, as necessary to carry out the functions of the Trustee under this Trust Agreement.  Salaries, fees, budgets, and payment terms for any staff, contractors, or auditors shall be determined by the Trustee.  The Trustee shall have the authority to enter into such contracts or agreements as may be necessary to operate the Claims Office, hire staff and contractors, or obtain services and equipment, and shall have the authority to serve all functions of an employer.

2.4       **Trust Expenses and Other Fees and Expenses**.  The amount of the PI Futures Trust Assets available to make settlement payments to Holders of Allowed Future PI Channeled Claims shall be subject to deductions for the Trust Expenses, including, but not limited to, the

-18-

amount of fees and expenses of (i) the Trustee, (ii) the Delaware Trustee, (iii) other employees of the PI Futures Trust, and (iv) outside legal, financial, accounting, investment, auditing, forecasting, expert, and other consultants, advisors, and agents as the business of the PI Futures Trust requires to carry out the terms of this Trust Agreement and the PI Futures TDP. Future PI Claimants that incurred individual legal fees and expenses (including fees and expenses pursuant to retainer agreements) shall have such individual legal fees and expenses deducted by their individual attorneys from their respective Distributions under the PI Futures TDP.

2.5    **Common Benefit Escrow/Common Benefit Fund Assessments**. Upon the establishment of a Common Benefit Escrow on the Effective Date, the PI Futures Trust shall fund the Common Benefit Escrow by assessments of five percent (5%) of each Distribution made by the PI Futures Trust in accordance with this Trust Agreement and the PI Futures TDP. Upon the establishment of the Common Benefit Fund by order entered by the MDL Court (the **"MDL Order"**), (i) the amounts held by the Common Benefit Escrow and all subsequent assessments of five percent (5%) of each Distribution made by the PI Futures Trust shall be transferred to and distributed in accordance with the MDL Order and (ii) the PI Futures Trust shall fund the Common Benefit Fund by assessments equal to five percent (5%) of each Distribution made by the PI Futures Trust in accordance with this Trust Agreement and the PI Futures TDP (the **"Common Benefit Assessments"**). Such payments shall be made on periodic schedules. To the extent a Holder of a Future PI Channeled Claim (or a group thereof) has retained counsel through a contingency fee arrangement, any contingency fees owed to such contingency counsel payable from Distributions under the Plan shall be reduced by the full amount payable by such Holder of a Future PI Channeled Claim (or such group thereof) under Section 5.8(c) of the Plan. However, the applicable Holder and its counsel, in their sole

discretion, may agree that an amount up to but not exceeding 40% of the amount payable under Section 5.8(c) of the Plan may be applied to the reimbursement of actual costs and expenses incurred by such Holder's counsel, in which case such agreed cost-reimbursement amount shall not reduce the contingency fee amounts payable to such counsel.

**2.6**     **Medicare Reporting Obligations**.

(a)     The PI Futures Trust shall register as a Responsible Reporting Entity (**"RRE"**) under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) (**"MMSEA"**).

(b)     The PI Futures Trust shall, at its sole expense, timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the PI Futures Trust or on account of contributions to the PI Futures Trust. The PI Futures Trust, in its role as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, **"CMS"**) with respect to reporting to CMS pursuant to MMSEA.

(c)     Before disbursing any PI Trust Assets to any Holder of an Allowed PI Channeled Claim, the Trustee shall obtain a certification that such Holder (or such Holder's authorized representative) has or will provide for the payment or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Allowed PI Channeled Claim.

## ARTICLE III

## ACCOUNTS AND INVESTMENTS

**3.1**    **Establishment of Accounts**.

(a)    The PI Futures Trust shall have initial accounts, which may be divided at the instruction of the Trustee, as necessary to hold, manage, invest, and distribute funds in accordance with this Trust Agreement.  The PI Futures Trust shall have an operating account to make disbursements, which will draw from the investment account.  Any funds, reserves, and accounts established by the Trustee pursuant to Section 2.1(b) herein shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" within the meaning of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, a "disputed ownership fund" within the meaning of the Treasury Regulations promulgated under the Internal Revenue Code, or otherwise.

(b)    The Trustee may, from time to time, create such accounts and reserves within the PI Futures Trust as he or she may deem necessary, prudent or useful to provide for the payment of expenses and payment of Future PI Channeled Claims and may, with respect to any such account or reserve, restrict the use of monies therein, and the earnings or accretions thereto.

(c)    The Trustee shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any such account, the transfers made to such account, the proceeds of or earnings on the assets held in each such account, and the payments from each such account in the reports to be filed with the Bankruptcy Court.

**3.2**    **Investments**.  Investment of monies held in the PI Futures Trust shall be administered in accordance with the investment style developed by the Trustee.  In determining investments to be held by the PI Futures Trust, due regard shall be given to safety of principal

and to production of reasonable amounts of current income.  In view of the purposes for which the PI Futures Trust was created, the Trustee shall not be under any obligation to invest the PI Futures Trust Assets for capital appreciation, but is not prohibited from so doing.

       3.3    **Source of Payments**.

       (a)    Except to the extent otherwise provided in this Trust Agreement, all liabilities with respect to Future PI Channeled Claims subject to resolution by the PI Futures Trust and all expenses of the PI Futures Trust shall be payable solely by the PI Futures Trust out of the PI Futures Trust Assets.

       (b)    The Trustee shall include in the Annual Report a reasonably detailed description of any payments made in accordance with this Section 3.3.

       (c)    The Trustee shall establish a procedure to assure that the PI Futures Trust disburses salaries, compensation payments, and other Trust Expenses on a schedule and in accordance with sound internal accounting controls.

       3.4    **Accounting Statements and Audit**.

       (a)    As soon as practicable on or about the commencement of each fiscal year, the Trustee shall cause to be prepared Budget and cash flow projections covering such fiscal year and such succeeding fiscal years for which the Trustee determines such projections are practicable and appropriate.

       (b)    The Trustee shall cause an Annual Report to be prepared and filed with the Bankruptcy Court at the end of each fiscal year, but in no event later than one hundred and twenty (120) days following the end of each fiscal year, which shall include, without limitation, a balance sheet, a statement of receipts and disbursements (which, as to the Allowed Future PI Channeled Claims, shall be presented in the aggregate, as opposed to individual Allowed Future

PI Channeled Claims), a statement of profit and loss prepared on an accrual basis, a statement of operations and a supplementary schedule of investments and assets listing both principal and income, audited by a recognized national or regional firm of independent public accountants selected by the Trustee, and reported on by such firm as to fairness of presentation in accordance with generally accepted accounting principles consistently applied.

(c)    The Trustee shall prepare at the end of each of the first three quarters of each fiscal year a quarterly accounting containing unaudited financial statements of the PI Futures Trust as of the end of such quarter, including, without limitation, a balance sheet, a statement of receipts and disbursements (which, as to the Future PI Channeled Claims, shall be presented (i) in the aggregate as to NAS Future PI Channeled Claims and (ii) in the aggregate as to Non-NAS PI Channeled Clams, in each case as opposed to by individual Future PI Channeled Claims), a statement of profit and loss prepared on an accrual basis, and a supplementary schedule of investments and assets listing both principal and income reported on, subject to normal year-end adjustments – as to fairness of presentation in accordance with generally accepted accounting principles consistently applied – by the PI Futures Trust or by an accountant or financial officer or agent regularly employed by the PI Futures Trust.

## ARTICLE IV

## TRUSTEE; DELAWARE TRUSTEE

**4.1    Number**.  In addition to the Delaware Trustee appointed pursuant to Section 4.11 herein, there shall be one (1) Trustee, as named on the signature page hereof.

**4.2    Term of Service**.

(a)    The initial Trustee named pursuant to Section 4.1 herein (and any successor Trustee appointed pursuant to Section 4.3 herein) shall serve from the Effective Date until the earliest of (i) the Trustee's death, (ii) the Trustee's resignation pursuant to Section

4.2(b) herein, (iii) the Trustee's removal pursuant to Section 4.2(c) herein, and (iv) the

termination of the PI Futures Trust pursuant to Section 5.2 herein.

(b)    The Trustee may resign at any time by written notice to the trustees of the

Master Disbursement Trust (the **"MDT Trustees"**).  Such notice shall specify the date on which

such resignation shall take effect, which shall not be less than ninety (90) days after the date such

notice is given, where practicable.

(c)    The Trustee may be removed by the MDT Trustees in the event that the

Trustee becomes unable to discharge the Trustee's duties hereunder because of accident,

physical deterioration, mental incompetence, or for other good cause.  Good cause shall be

deemed to include, without limitation, any substantial failure to comply with the general

administration provisions of Section 2.2 herein, a consistent pattern of neglect and failure to

perform or participate in performing the duties of the Trustee hereunder, or repeated

nonattendance at scheduled meetings.  Such removal shall take effect at such time as the MDT

Trustees shall determine.

**4.3    Appointment of Successor Trustee**.

(a)    In the event of a vacancy in the Trustee position, whether by term

expiration, death, retirement, resignation, or removal, or because the Trustee is otherwise unable

to perform its functions as Trustee, the MDT Trustees shall choose a successor Trustee.  The

successor Trustee shall be (i) an individual over the age of 35 whose experience and background

are appropriate for the responsibilities set forth herein and (ii) at the time of appointment and at

all times during the term of service, independent.  In the event that the MDT Trustees cannot

agree on a successor Trustee, the MDT Trustees shall ask the Bankruptcy Court to select the

successor Trustee.   Nothing in this Trust Agreement shall prevent the reappointment of an individual serving as the Trustee for an additional term or terms.

(b)    Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act.   No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.   No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

**4.4    Liability of Trustee and Others**.    To the maximum extent permitted by applicable law, none of the Trustee, the Delaware Trustee, or any of their officers, employees, consultants, advisors and agents shall have or incur any liability for actions taken or omitted, in their respective official capacities, or on behalf of the PI Futures Trust, except those acts found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of their actions or inactions in their capacities as such, or on behalf of the PI Futures Trust, except for any actions or inactions found by Final Order to be arising out of their willful misconduct, bad faith, gross negligence or fraud.

**4.5    Compensation and Expenses of Trustee and Delaware Trustee**.

(a)    The Trustee shall receive a retainer from the PI Futures Trust for his or her service as a Trustee in the amount of $5,000 per annum, paid annually on January 31.   Hourly time, as described below, shall first be billed and applied to the annual retainer.   Hourly time in excess of the annual retainer shall be paid by the PI Futures Trust.   For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour.   For all non-working travel

time in connection with PI Futures Trust business, the Trustee shall receive the sum of $200 per

hour.  The Trustee shall record all hourly time to be charged to the PI Futures Trust.  The hourly

compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and,

after consultation with the MDT Trustees, appropriately adjusted by the Trustee for changes in

the cost of living.  The Delaware Trustee shall be paid such compensation as agreed to pursuant

to a separate fee agreement.

        (b)     The PI Futures Trust shall promptly reimburse each of the Trustee and the

Delaware Trustee for their respective reasonable out-of-pocket costs and expenses incurred in

connection with the performance of their duties hereunder, which costs and expenses shall be

paid as a Trust Expense.

        (c)     The PI Futures Trust shall include in the Annual Report a description of

the amounts paid under this Section 4.5.

**4.6**    **Indemnification**.

        (a)     To the maximum extent permitted by applicable law, the PI Futures Trust

shall indemnify and reimburse the Trustee, the Delaware Trustee, and each of their officers,

employees, consultants, advisors, and agents for reasonable fees and expenses (other than taxes

in the nature of income taxes imposed on compensation paid to such persons) incurred in

defending any and all of their actions or inactions in their capacities as Trustee and the Delaware

Trustee, in connection with activities undertaken by them prior to the Effective Date in

connection with the formation, establishment, or funding of the PI Trust, or on behalf of the PI

Futures Trust, except for any actions or inactions found by Final Order to be arising out of their

willful misconduct, bad faith, gross negligence or fraud.  Any valid indemnification claim of the

Trustee, the Delaware Trustee, or each of their officers, employees, consultants, advisors, and agents shall be satisfied from the PI Futures Trust.

(b)    If the Trustee, the Delaware Trustee, or an Additional Indemnitee is named in any action relating to their duties under this Trust Agreement or the PI Futures TDP, then the Trustee is authorized to retain counsel and arrange for payment of reasonable expenses, costs, and fees (including reasonable attorneys' fees) incurred by or on behalf of the PI Futures Trust, the Trustee, the Delaware Trustee, or an Additional Indemnitee, as applicable, in connection with any such action, suit, or proceeding; *provided, however*, that the Trustee, the Delaware Trustee, or the Additional Indemnitee, as applicable, agree to repay such amount if it is ultimately determined that the Trustee, the Delaware Trustee, or the Additional Indemnitee, as applicable, is not entitled to such indemnification by the PI Futures Trust.

(c)    The Trustee may cause the PI Futures Trust to purchase and maintain reasonable amounts and types of insurance, including on behalf of an individual who is or was a Trustee or an Additional Indemnitee, against liability asserted against or incurred by such individual in that capacity.

4.7    **Lien**.  The Trustee and the Additional Indemnitees shall have a first priority lien upon the PI Futures Trust Assets to secure the payment of any amounts payable to them pursuant to Section 4.6 herein.

4.8    **Trustee's Employment of Experts; Delaware Trustee's Employment of Counsel**.

(a)    The Trustee may, but is not required to, retain counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such other parties deemed by the Trustee to be qualified as experts on the matters submitted to them (the **"Trust Professionals"**), the cost of which shall be paid as a Trust Expense, regardless of

whether any such party is affiliated with the Trustee in any manner (except as otherwise expressly provided in this Trust Agreement). In the absence of a bad faith violation of the implied contractual covenant of good faith and fair dealing within the meaning of 12 Del. C. § 3806(e), the written opinion of or information provided by any such party deemed by the Trustee to be an expert on the particular matter submitted to such party shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustee hereunder in good faith and in accordance with the written opinion of or information provided by any such party.

(b)     The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

4.9     **Trustee's Independence**. During his or her tenure as the Trustee, the Trustee shall be, at the time of appointment and at all times during the term of service, independent. For purposes of this section, a person is not independent if such person:

(i)     is an attorney, agent, or other professional for any person who holds a Future PI Channeled Claim, other than as required pursuant to the terms of the PI Futures TDP for Future PI Claimants who are minors

(ii)     is or was at any time a Holder or a representative of a Holder of a Future PI Channeled Claim.

(iii)     has or had a relationship with an individual Holder of a Future PI Channeled Claim such that the person's impartiality in serving as a Trustee could reasonably be questioned;

(iv)    is a Holder of any Interest (other than interests held indirectly through publicly traded mutual funds) in a Debtor or any Related Person with respect to a Debtor;

(v)    is or was at any time an officer, director, employee, or agent of a Debtor or any Related Person with respect to a Debtor or related to any of the foregoing, or otherwise is or was an "insider," as defined in the Bankruptcy Code, with respect to a Debtor or any Related Person with respect to a Debtor; or

(vi)    is an investment banker, financial advisor, accountant, or attorney, or is related to any of the foregoing, for any Debtor or any Related Person with respect to a Debtor, or an officer, director, employee, or agent of any person or entity that provides investment banking, financial advice, accounting, or legal services to a Debtor or any Related Person with respect to a Debtor or related to any of the foregoing, with the exception of any person employed in the Trustee's law firm who helps provide services in connection with the Chapter 11 Cases.

For the avoidance of doubt, this Section shall not be applicable to the Delaware Trustee.

**4.10**    **No Bond**.  Neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**4.11**    **Delaware Trustee**.

(a)    There shall at all times be a Delaware Trustee to serve in accordance with the requirements of the Act.  The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware in accordance with section 3807 of the Act and otherwise meets the requirements of applicable Delaware law and shall act through one or

more persons authorized to bind such entity.  If at any time the Delaware Trustee ceases to be eligible to serve as Delaware Trustee in accordance with the provisions of this Section 4.11, the Delaware Trustee shall resign immediately in the manner and with the effect hereinafter specified in Section 4.11(c) herein.  For the avoidance of doubt, the Delaware Trustee shall have only such rights and obligations as expressly provided hereunder.

(b)    The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustee set forth herein.  The Delaware Trustee shall be one of the trustees of the PI Futures Trust for the sole and limited purpose of fulfilling the requirements of section 3807 of the Act and for taking such actions as are required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities, and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the PI Futures Trust in the State of Delaware and (ii) executing, solely at the written direction of the Trustee, any certificates required to be filed with the Delaware Secretary of State that the Delaware Trustee is required to execute under section 3811 of the Act.  There shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.  To the extent that, at law or in equity, the Delaware Trustee has any other duties (including fiduciary duties) and liabilities relating thereto to the PI Futures Trust, the other Parties hereto, or any beneficiary of the PI Futures Trust, it is hereby understood and agreed by the other Parties hereto that such other duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Trust Agreement.

(c)    The Delaware Trustee shall serve until such time as the Trustee removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is

appointed by the Trustee in accordance with the terms of Section 4.11(d) herein.  The Delaware Trustee may resign at any time upon the giving of at least sixty (60) days' advance written notice to the Trustee; *provided, however*, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustee in accordance with Section 4.11(d) herein.  If the Trustee does not appoint a successor within such 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(d)    Upon the resignation or removal of the Delaware Trustee, the Trustee shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustee and any undisputed fees and expenses due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties, and obligations of the outgoing Delaware Trustee under this Trust Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Trust Agreement.

(e)    The Delaware Trustee shall neither be required nor permitted to attend meetings relating to the PI Futures Trust.

(f)    The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement.

-31-

(g)     The PI Futures Trust shall reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Delaware Trustee in connection with the performance of its duties hereunder.

(h)     The Delaware Trustee shall be permitted to retain counsel only in such circumstances as required in the exercise of its obligations hereunder, and compliance with the advice of such counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with such advice.

## ARTICLE V

## GENERAL PROVISIONS

5.1     <u>Irrevocability</u>.  To the fullest extent permitted by applicable law, the PI Futures Trust is irrevocable.

5.2     <u>Term; Termination</u>.

(a)     The term for which the PI Futures Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 5.2(b) - (c) hereof.

(b)     The PI Futures Trust shall automatically dissolve on the date (the **<u>"Dissolution Date"</u>**) that is ninety (90) days after, or a reasonable time after ninety (90) days after, the first to occur of the date on which the Trustee determines to dissolve the PI Futures Trust upon the earlier of (A) the distribution of all monies from the PI Futures Trust or (B) the sixth (6th) anniversary of the Effective Date.  The Trustee shall be discharged of his or her duties with respect to the PI Futures Trust reasonably promptly following the earliest of (A) and (B).  Any amounts remaining in the PI Futures Trust upon the resolution of all Future PI Channeled Claims asserted against the PI Futures Trust on or before the sixth (6th) anniversary of the Effective Date and the payment of all Creditor Trust Operating Expenses of the PI Futures

-32-

Trust shall be distributed pursuant to the Confirmation Order and in accordance with the PI

Futures Trust Documents.

(c)    On the Dissolution Date (or as soon thereafter as is reasonably

practicable), after the wind-up of the PI Futures Trust's affairs by the Trustee and payment of all

the PI Futures Trust's liabilities have been provided for as required by applicable law including

section 3808 of the Act, all monies remaining in the PI Futures Trust shall be paid to the Master

Disbursement Trust.

(d)    Following the dissolution and distribution of the assets of the PI Futures

Trust, the PI Futures Trust shall terminate and the Trustee and the Delaware Trustee (acting

solely at the written direction of the Trustee) shall execute and cause a Certificate of

Cancellation of the Certificate of Trust of the PI Futures Trust to be filed in accordance with the

Act.  Notwithstanding anything to the contrary contained in this Trust Agreement, the existence

of the PI Futures Trust as a separate legal entity shall continue until the filing of such Certificate

of Cancellation.

**5.3    <u>Amendments</u>**.  This Trust Agreement and the PI Futures TDP may be amended

or modified only with the approval of the Bankruptcy Court; *provided, however*, the Trustee may

make technical amendments to the Trust Agreement and the PI Futures TDP without such

Bankruptcy Court approval.  No amendment to the PI Futures TDP shall (i) have a material and

adverse effect on Future PI Claimants' entitlements to Distributions or (ii) be inconsistent with

any of the provisions hereof, or of the Confirmation Order or the Plan.  Any modification or

amendment made pursuant to this Section must be done in writing.  Notwithstanding anything

contained in this Trust Agreement or the PI Futures TDP to the contrary, neither this Trust

Agreement, the PI Futures TDP, nor any document annexed to the foregoing shall be modified or

amended in any way that could jeopardize, impair, or modify (i) the applicability of section 105 of the Bankruptcy Code to the Plan, the Confirmation Order, or the PI Futures Trust, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan, (iii) the PI Futures Trust's treatment as a Qualified Settlement Fund within the meaning of the QSF Regulations, or (iv) the Plan or the Confirmation Order.  Any amendment affecting the rights, duties, immunities, or liabilities of the Delaware Trustee shall require the Delaware Trustee's written consent.

      **5.4**    <u>**Severability**</u>.  Should any provision in this Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement.

      **5.5**    <u>**Notices**</u>.

      (a)    Notices to persons asserting PI Future Channeled Claims shall be given by first-class mail at the address of such person, or, where applicable, such person's legal representative, unless such person or representative elects to receive electronic notice instead.

      (b)    Any notices or other communications required or permitted hereunder to the following Parties shall be in writing and delivered to the addresses or e-mail addresses designated below, or to such other addresses or e-mail addresses as may hereafter be furnished in writing to each of the other Parties listed below in compliance with the terms hereof.

To the PI Futures Trust through the Trustee:

> Purdue PI Futures Trust
> Attn: Edgar C. Gentle, III, Esq.
> c/o Gentle, Turner, Sexton & Harbison, LLC
> 501 Riverchase Parkway East, Suite 100
> Hoover, AL 35244
> E-mail: egentle@gtandslaw.com

With a copy to:

[●]

To the Delaware Trustee;

[●]

To the Debtors:

[●]

With a copy to:

[●]

(c)    All such notices and communications if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return transmission.

**5.6    Successors and Assigns**.    The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Debtors, the PI Futures Trust, the Trustee, NewCo, and TopCo, and their respective successors and assigns, except that the Trustee may not assign or otherwise transfer any of his or her rights or obligations, if any, under this Trust Agreement except, in the case of the Trustee in accordance with Section 4.3 herein.

**5.7    Limitation on Claim Interests for Securities Laws Purposes**.    Future PI Channeled Claims and any interests therein, other than encumbrances on proceeds of Future PI Channeled Claims, (a) shall not be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will, under the laws of descent and distribution, or by operation of law; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

**5.8**    **Entire Agreement; No Waiver**.  The entire agreement of the Parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein (including the Plan and the PI Futures TDP), and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**5.9**    **Headings**.    The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

**5.10**    **Governing Law**.  The validity and construction of this Trust Agreement and all amendments hereto and thereto shall be governed by the laws of the State of Delaware, and the rights of all Parties hereto and the effect of every provision hereof shall be subject to and construed according to the laws of the State of Delaware without regard to the conflicts of law provisions thereof that would purport to apply the law of any other jurisdiction; *provided, however*, that the Parties hereto intend that the provisions hereof shall control and, therefore, the following shall not be applicable to the PI Futures Trust, the Trustee, the Delaware Trustee or this Trust Agreement, any provision of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate in a manner inconsistent with the terms hereof: (a) the filing with any court or governmental body or agency of Trustee accounts or schedules of Trustee fees and charges; (b) affirmative requirements to post bonds for trustees, officers, agents,

-36-

or employees of a trust; (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding, or disposition of real or personal property; (d) fees or other sums payable to trustees, officers, agents, or employees of a trust; (e) the allocation of receipts and expenditures to income or principal; (f) restrictions or limitations on the permissible nature, amount, or concentration of trust investments or requirements relating to the titling, storage, or other manner of holding of trust assets; (g) the existence of rights or interests (beneficial or otherwise) in trust assets; (h) the ability of beneficial owners or other persons to terminate or dissolve a trust; or (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee or the Delaware Trustee set forth or referenced in this Trust Agreement.  Section 3540 of the Act shall not apply to the PI Futures Trust.

**5.11    Settlors' Representative and Cooperation**.  The Debtors hereby are irrevocably designated as the Settlors of the PI Futures Trust, and they hereby are authorized to take any action required of the Settlors by the Trustee in connection with this Trust Agreement.

**5.12    Dispute Resolution**.  Any disputes among the Parties hereto that arise under this Trust Agreement or under the PI Futures TDP shall be resolved by submission of the matter to an alternative dispute resolution (**"ADR"**) process mutually agreeable to the Parties involved.  If any Party to the ADR process is dissatisfied with the decision of the arbitrator(s), that Party may apply to the Bankruptcy Court for a judicial determination of the matter.  Any review conducted by the Bankruptcy Court shall be *de novo*.

**5.13    Enforcement and Administration**.  The provisions of this Trust Agreement and the PI Futures TDP shall be enforced by the Bankruptcy Court pursuant to the Plan and the

Confirmation Order.  The Parties hereby acknowledge and agree that the Bankruptcy Court shall have continuing exclusive jurisdiction over the settlement of the accounts of the Trustee and over any disputes that arise under this Trust Agreement and the PI Futures TDP and are not resolved by alternative dispute resolution in accordance with Section 5.12 herein.

5.14    **Effectiveness**.    This Trust Agreement shall not become effective until the Effective Date of the Plan and it has been executed and delivered by all the Parties hereto.

5.15    **Counterpart Signatures**.  This Trust Agreement may be executed in any number of counterparts and by different Parties on separate counterparts (including by PDF transmitted by e-mail), and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Trust Agreement this_____ day of _____, 2021.

**SETTLORS:**

**PURDUE PHARMA L.P**.

By:_____

**PURDUE PHARMA INC**.

By:_____

**PURDUE TRANSDERMAL TECHNOLOGIES L.P.**

By:_____

**PURDUE PHARMA MANUFACTURING L.P**.

By:_____

**PURDUE PHARMACEUTICALS L.P**.

By:_____

**IMBRIUM THERAPEUTICS L.P**.

By:_____

**ADLON THERAPEUTICS L.P**.

By:_____

**GREENFIELD BIOVENTURES L.P**.


By:_____


**SEVEN SEAS HILL CORP**.


By:_____


**OPHIR GREEN CORP**.

By:_____


**PURDUE PHARMA OF PUERTO RICO**


By:_____


**AVRIO HEALTH L.P**.


By:_____


**PURDUE PHARMACEUTICAL PRODUCTS L.P**.


By:_____


**PURDUE NEUROSCIENCE COMPANY**


By:_____

**NAYATT COVE LIFESCIENCE INC**.


By:_____


**BUTTON LAND L.P.**


By:_____


**RHODES ASSOCIATES L.P.**


By:_____


**PAUL LAND INC**.


By:_____


**QUIDNICK LAND L.P.**


By:_____


**RHODES PHARMACEUTICALS L.P.**


By:_____


**RHODES TECHNOLOGIES**


By:_____


**SVC PHARMA LP**


By:_____

**SVC PHARMA INC**.


By:_____


**TRUSTEE**


By:_____
Name:  Edgar C. Gentle, III, Esq.


**DELAWARE TRUSTEE**


By:_____
Name:

**Exhibit 1**

Certificate of Trust

**(TO BE INSERTED)**

## **Exhibit N**

PI Futures TDP

## PURDUE PHARMA L.P.
## TRUST DISTRIBUTION PROCEDURE FOR FUTURE PI CHANNELED CLAIMS

## § 1.   APPLICABILITY AND PURPOSE.

This trust distribution procedure for Future PI Channeled Claims (as defined below) (the "PI Futures TDP") sets forth the manner in which Future PI Channeled Claims may become eligible for payments from, and shall be fully discharged by, the PI Futures Trust.[1] Distributions in respect of Future PI Channeled Claims shall be exclusively in the form of Distributions from the PI Futures Trust to Holders of Allowed Future PI Channeled Claims on the terms set forth herein.

Pursuant to the Plan and the Master TDP, the following claims (the "Future PI Channeled Claims") will be channeled to, and liability therefore shall be assumed by, the PI Futures Trust as of the Effective Date of the Plan: each Released Claim and Shareholder Released Claim that is for alleged opioid-related personal injury or that is a similar opioid-related claim or Cause of Action, and that is not (i) a PI Channeled Claim, a Third-Party Payor Channeled Claim, an NAS Monitoring Channeled Claim, a Hospital Channeled Claim or an Administrative Claim, (ii) held by a Domestic Governmental Entity or (iii) a Released Claim against any Debtor or its Estate, NewCo or any successor owner of NewCo's opioid business, in each case that arises from or relates to the use of an opioid that is manufactured by or placed in the stream of commerce by NewCo or any successor owner of NewCo's opioid business. Pursuant to section 6.21 of the Plan, in the event a Holder of a Future PI Channeled Claim seeks payment at any time on account of such Claim as to which no Proof of Claim was filed before the General Bar Date and/or for which no motion seeking leave or order granting leave to file a late Proof of Claim was filed or entered before the Confirmation Date, or as to which no Proof of Claim was required to be filed, such Person shall not be entitled to any payment or distribution on account of such Future PI Channeled Claim unless the Bankruptcy Court, by Final Order, first determines that such Person has a Future PI Channeled Claim that is or was channeled to the PI Futures Trust under the Master TDP and grants such Holder leave to assert such Future PI Channeled Claim against such the PI Futures Trust.

Future PI Channeled Claims shall be administered, liquidated and discharged solely pursuant to the PI Futures Trust Documents, and satisfied solely from the PI Futures Trust. Holders of Future PI Channeled Claims are referred to herein as "Future PI Claimants."

## § 2.   PI FUTURES TRUST AND TRUSTEE.

### a) *Allocations of Funds to the PI Futures Trust.*

Under the Plan, the PI Futures Trust will receive a distribution of $5 million (the "PI Futures Trust Distribution").

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 2967] (the "Plan") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

### b) *PI Futures Trust.*

The PI Futures Trust shall be established in accordance with section 5.7 of the Plan to (i) assume all liability for the Future PI Channeled Claims, (ii) collect the PI Futures Trust Distribution in accordance with the PI Futures Trust Documents, (iii) administer Future PI Channeled Claims, (iv) make Distributions on account of Allowed Future PI Channeled Claims in accordance with the PI Futures Trust Documents, and (v) carry out such other matters as are set forth in the PI Futures Trust Documents.[2] The trustee of the PI Futures Trust (the "Trustee") is Edgar Gentle III, of Gentle, Turner, Sexton & Harbison, LLC, and he will carry out the duties of the Trustee as set forth in the Plan and PI Futures Trust Documents.[3]

## § 3.    SUITS IN THE TORT SYSTEM.

Subject to satisfaction of section 6.21 of the Plan, Future PI Claimants have the right to commence a lawsuit in the tort system against the PI Futures Trust with respect to any Future PI Channeled Claim which, prior to channeling, was held against a Debtor or would have been held against a Debtor but for the Releases and Channeling Injunction pursuant to the Plan. Such lawsuit may be commenced against only the PI Futures Trust (and including no other parties as defendants[4]) solely in the United States District Court for the Southern District of New York (the "SDNY District Court"),[5] unless such court orders pursuant to 28 USC § 157(b)(5) that such suit may be filed and tried in the United States District Court for the district in which such Future PI Channeled Claim arose.

---

[2]    The PI Futures Trust Agreement shall provide that the Trustee shall have the power to appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Futures Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of the PI Futures Trust Agreement and this PI Futures TDP, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents.

[3]    The PI Futures Trust Agreement shall provide that the Trustee shall receive a retainer from the PI Futures Trust for his service as a Trustee in the amount of $5,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the PI Futures Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour. For all non-working travel time in connection with PI Futures Trust business, the Trustee shall receive the sum of $200 per hour. The Trustee shall record all hourly time to be charged to the PI Futures Trust. The hourly compensation payable to the Trustee hereunder shall be reviewed every year by the Trustee and, after consultation with the MDT Trustees, appropriately adjusted by the Trustee for changes in the cost of living. The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

[4]    For the avoidance of doubt, no Future PI Channeled Claim shall be channeled to, attach to, be payable or otherwise compensable from, be eligible to receive a Distribution from, or have any recourse to, the PI Trust or the Assets of the PI Trust, including, but not limited to, the Initial PI Trust Distribution, the MDT PI Claim, any MDT Bermuda-Form Insurance Proceeds, the Creditor Trust Operating Reserve of the PI Trust or any entitlement to, or products, proceeds or profits of, any of the foregoing, prior to the establishment of, during the existence of or following the dissolution of, the PI Futures Trust or at any other time.

[5]    The Debtors shall seek an order from the SDNY District Court requiring that lawsuits filed by Future PI Claimants against the PI Futures Trust must be filed and tried solely in the SDNY District Court pursuant to 28 U.S.C. § 157(b)(5).

Any such lawsuit must be filed by the applicable Future PI Claimant in an individual capacity and not as a member or representative of a class, and no such lawsuit may be consolidated with the lawsuit of any other plaintiff by, or on the motion of, any plaintiff.[6] All defenses (including, with respect to the PI Futures Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[7]

A Future PI Claimant may not pursue litigation against the PI Futures Trust for any Future PI Channeled Claim formerly held or that would have been held against a non-Debtor party. However, any Distribution to a Future PI Claimant on a Final Judgment (as defined below) in respect of his or her Future PI Channeled Claim formerly held or that would have been held (but for the Releases and Channeling Injunction pursuant to the Plan) against a Debtor is deemed to be a distribution in satisfaction of all Future PI Channeled Claims held by such Future PI Claimant with respect to the injuries that are the subject of his or her Future PI Channeled Claim against a Debtor.

Subject to the commencement of a lawsuit in the tort system against the PI Futures Trust by a Future PI Claimant that is not barred by section 6.21 of the Plan, NewCo and the Plan Administration Trust will establish and maintain, as necessary, a document reserve (the "PI Document Reserve") containing such materials as are necessary to such lawsuit(s) as discovery material. Any Future PI Claimant that has commenced such a lawsuit will be provided access to the PI Document Reserve subject to agreeing to (i) a protective order acceptable to the Trustee, the Plan Administration Trustee, and NewCo, and (ii) to the extent that the materials deposited into the PI Document Reserve include any documents produced by the Shareholder Released Parties that are not included in the Public Document Repository in accordance with the Plan and the Shareholder Settlement Agreement (the "Shareholder Released Party Documents"), the Protective Order, which shall exclusively govern the terms of disclosure of the Shareholder Released Party Documents. Any such Future PI Claimant who propounds on the PI Futures Trust, NewCo, the Plan Administration Trustee, any other Creditor Trust, or any Debtor a request for additional document or testimonial discovery must in such request (i) represent that such Future PI Claimant has conducted a reasonable search of the PI Document Reserve and, if it has been established, the Public Document Repository, and believes, based on such reasonable search, that the documents, information, or testimony it seeks is not available in either the PI Document Reserve or the Public Document Repository, and (ii) state and explain the basis for the Future PI Claimant's good faith belief that the additional discovery he or she seeks is relevant to such lawsuit. The PI Futures Trust shall not be liable for any costs incurred by parties other than the PI Futures Trust in connection with third-party discovery propounded by any party other than the PI Futures Trust.[8]

If Future PI Claimant obtains a judgment against the PI Futures Trust on his or her Future PI Channeled Claim in the tort system and such judgment becomes a Final Order (a

---

[6]    The Trustee shall be empowered (i) to bring one or more consolidated actions against multiple Future PI Claimants and (ii) to seek to consolidate multiple lawsuits commenced by individual Future PI Claimants.

[7]    Among other things, the PI Futures Trust shall be empowered to assert that the claim that is the subject of a Future PI Claimant's lawsuit is not a "Future PI Channeled Claim" within the meaning of the Plan.

[8]    In order to minimize costs incurred by the PI Futures Trust in connection with third-party discovery, the Trustee shall be empowered to seek to consolidate discovery propounded by Future PI Claimants or the PI Futures Trust in multiple lawsuits.

"Final Judgment"), such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI Futures Trust, subject to the applicable limitations of Sections 4.10 of this PI Futures TDP. No other Future PI Channeled Claims shall be Allowed.

## § 4.    LIMITATION ON DAMAGES AND ATTORNEYS' FEES.

Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any Future PI Channeled Claim litigated against the PI Futures Trust in the tort system.

## § 5.    NAS FUTURE PI CHANNELED CLAIMS AND NON-NAS FUTURE PI CHANNELED CLAIMS

If a Future PI Claimant obtains a Final Judgment on his or her Future PI Channeled Claim, the Trustee shall determine, in his or her sole discretion and in accordance with the definitions set forth herein, whether such Future PI Channeled Claim is a "NAS Future PI Channeled Claim" or a "Non-NAS Future PI Channeled Claim," defined as follows:

- A "NAS Future PI Channeled Claim" is a Future PI Channeled Claim that is for alleged opioid-related personal injury to an NAS Child or that is a similar opioid-related claim or Cause of Action asserted by or on behalf of an NAS Child.

- A "Non-NAS Future PI Channeled Claim" is a Future PI Channeled Claim that is not an NAS Future PI Channeled Claim.

## § 6.    NAS MAXIMUM VALUE, PAYMENT PERCENTAGE AND AWARD

This Section 6 only applies to NAS Future PI Channeled Claims.

### a)  NAS Maximum Value.

Payment on a Final Judgment issued in respect of an NAS Future PI Channeled Claim shall not exceed $21,000 (the "NAS Maximum Value"), which is estimated to be three times the maximum value that will be distributed under the NAS PI TDP for an NAS PI Claim that is Allowed under the NAS PI TDP.

### b)  NAS Payment Percentage.

A Final Judgment issued in respect of an NAS Future PI Channeled Claim, minus any multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), interest, attorneys' fees or costs (including statutory attorneys' fees and costs) that may have been awarded as part of such Final Judgment, shall be subject to reduction by the NAS Payment Percentage, as defined in Exhibit B to the NAS PI TDP. As discussed in Exhibit B to the

NAS PI TDP, the initial NAS Payment Percentage is 2% and is subject to change as set forth therein.

No holder of an NAS Future PI Channeled Claim shall receive a payment that exceeds the liquidated value of his or her NAS Future PI Channeled Claim multiplied by the NAS Payment Percentage then in effect (such value so reduced, the "Percentage-Reduced NAS Future PI Channeled Claim").

### c) NAS Future Award

A Future PI Claimant who obtains a Final Judgment on an NAS Future PI Channeled Claim shall be entitled to receive from the PI Futures Trust, in full and final satisfaction of that Final Judgment, an amount equal to the *lesser* of (i) the NAS Maximum Value, and (ii) the Percentage-Reduced NAS Future PI Channeled Claim (the "NAS Future Award"), subject to any reductions or reserves taken in accordance with Section 8 hereof.

An NAS Future Award is payable by the PI Futures Trust in a single lump sum, subject to Sections 8, 9 and 10 below. The PI Futures Trust shall pay such NAS Future Award reasonably promptly following a judgment becoming a Final Judgment and the Trustee's reasonable satisfaction that any applicable healthcare liens have been satisfied pursuant to Section 9 below. In no event shall the PI Futures Trust pay interest in respect of any judgment obtained in the tort system.

None of the Percentage-Reduced NAS Future PI Channeled Claim, the NAS Maximum Value, or the NAS Future Award is subject to any appeal or reconsideration.

## § 7.    NON-NAS MAXIMUM VALUE, PAYMENT PERCENTAGE AND AWARD

This Section 7 applies only to Non-NAS Future PI Channeled Claims.

### a) Non-NAS Maximum Value.

Payment on a Final Judgment issued in respect of a Non-NAS Future PI Channeled Claim shall not exceed the dollar-equivalent of 120,000 points (the "Non-NAS Maximum Value"), which is three times the maximum point value attributed under the liquidation provisions of the Non-NAS PI TDP to eligible claims for the most severe injuries. Points will be converted to dollars consistent with the dollar-award-per-point then in effect as set forth in section 8 of the Non-NAS PI TDP.

### b) Non-NAS Payment Percentage.

A Final Judgment issued in respect of a Non-NAS Future PI Channeled Claim, minus any multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), interest, attorneys' fees or costs (including statutory attorneys' fees and costs) that may have been awarded as part of such Final Judgment, shall be subject to reduction by the Non-NAS Payment Percentage, as defined in Exhibit B to the Non-NAS PI TDP. As discussed in Exhibit B

5

to the Non-NAS PI TDP, the initial Non-NAS Payment Percentage is 2.0% and is subject to change as set forth therein.

No holder of a Non-NAS Future PI Channeled Claim shall receive a payment that exceeds the liquidated value of his or her Non-NAS Future PI Channeled Claim multiplied by the Non-NAS Payment Percentage then in effect (such value so reduced, the "Percentage-Reduced Non-NAS Future PI Channeled Claim").

   *c)  Non-NAS Future Award.*

A Future PI Claimant who obtains a Final Judgment on a Non-NAS Future PI Channeled Claim shall be entitled to receive from the PI Futures Trust, in full and final satisfaction of that Final Judgment, an amount equal to the *lesser* of (i) the Non-NAS Maximum Value then in effect and (ii) the Percentage-Reduced Non-NAS Future PI Channeled Claim (the "Non-NAS Future Award"), subject to any reductions or reserves taken in accordance with Section 8 hereof.

A Non-NAS Future Award is payable by the PI Futures Trust in a single lump sum payment, subject to Sections 8, 9 and 10 below. The PI Futures Trust shall pay such Non-NAS Future Award reasonably promptly following a judgment becoming a Final Judgment and the Trustee's reasonable satisfaction that any applicable healthcare liens have been satisfied pursuant to Section 9 below. In no event shall the PI Futures Trust pay interest in respect of any judgment obtained in the tort system.

None of the Percentage-Reduced Non-NAS Future PI Channeled Claim, the Non-NAS Maximum Value, or the Non-NAS Future Award is subject to any appeal or reconsideration.

## § 8.    PI FUTURES TRUST OPERATING EXPENSES

The Creditor Trust Operating Expenses of the PI Futures Trust shall be paid solely from the PI Futures Trust. Creditor Trust Operating Expenses of the PI Futures Trust, including any amounts due to the Trustee in respect of indemnification and reimbursement as described in section 5.7(m) of the Plan, shall be paid on an ongoing basis with first priority before any payments hereunder are made on Allowed Future PI Channeled Claims. The Trustee shall also be entitled to reserve a reasonable amount of funds needed to wind down the PI Futures Trust, indemnify the Trustee for claims that may be brought against the Trustee in the future, and any other reserves for future costs or expenses that the Trustee reasonably believes are necessary before making payments hereunder on any Allowed Future PI Channeled Claim.

If insufficient funds remain in the PI Futures Trust to pay one or more outstanding Non-NAS Future Awards and/or NAS Future Awards that are otherwise ripe for payment hereunder, the Trustee shall, after reserving funds as necessary pursuant to the preceding paragraph, use any remaining funds to pay all such outstanding awards a pro rata portion of their face value, in full and final satisfaction of such Final Judgments.

## § 9.    RESOLUTION OF HEALTH CARE LIENS.

The PI Futures Trust shall not issue any payment on a Non-NAS Future Award or NAS Future Award until the Trustee has received proof to his or her reasonable satisfaction that any private or

6

governmental health care liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

## § 10.    APPLICABILITY OF SPECIAL PROCEDURES FOR MINORS AND HEIRS.

If a Future PI Claimant is a minor under applicable law at the time amounts are payable by the PI Futures Trust to such Future PI Claimant under this PI Futures TDP, any such amounts shall be paid at such time, to such recipient, and in such manner as ordered by the court that issued the Final Judgment, by a U.S. court of general jurisdiction in the Minor Claimant's state of residence, or by the United States Bankruptcy Court for the Southern District of New York.  Anyone seeking a Distribution from the PI Futures Trust in his or her capacity as an heir must execute and submit the applicable Heirship Declaration attached hereto as Exhibit A.[9]

---

[9]    Exhibit A contains two declaration forms. One applies if the Decedent named the Future PI Claimant as executor in his or her will; the other applies if the Decedent had no will.

## EXHIBIT A

## SAMPLE HEIRSHIP DECLARATIONS FOR THE PURDUE PHARMA L.P. TRUST DISTRIBUTION PROCEDURE FOR FUTURE PI CHANNELED CLAIMS

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

**THIS IS A SAMPLE DECLARATION FORM. DO NOT FILL OUT THIS FORM AT THIS TIME.  ONCE THE PURDUE PLAN HAS BEEN CONFIRMED AND GONE EFFECTIVE, A FINAL COPY OF THIS FORM WILL BE MADE AVAILABLE TO YOU FOR COMPLETION AND SUBMISSION TO THE PI FUTURES TRUST.[1]**

| SD-1 | SWORN DECLARATION:<br>SIGNATORY IS EXECUTOR UNDER DECEDENT'S LAST WILL AND TESTAMENT |
|---|---|

You are required to complete this declaration if you hold a Future PI Channeled Claim[2] (and thus are a "Future PI Claimant") regarding the opioid-related death of another person (the "Decedent"), and you have not been appointed with the authority to act on behalf of the Decedent because no probate or estate proceeding has been commenced, but you have been named as executor or executrix (or comparable position under applicable state law) under the Last Will and Testament of the Decedent.

## I.    DECEDENT INFORMATION

| Name | First Name | | M.I. | Last Name | |
|---|---|---|---|---|---|
| | | | | | |
| Social Security Number | \|___\|___\|___\| - \|___\|___\| - \|___\|___\|___\|___\| | | Date of Death | /     / <br> (Month/Day/Year) | |
| Residence/Legal Domicile Address at Time of Death | Street | | | | |
| | City | | State | Zip Code | |

## II.    FUTURE PI CLAIMANT INFORMATION

| Your Name | First Name | | M.I. | Last Name | |
|---|---|---|---|---|---|
| Your Social Security Number | \|___\|___\|___\| - \|___\|___\| - \|___\|___\|___\|___\| | | | | |
| Prime Clerk POC Number assigned to your PI Claim | | | | | |
| Your Address | Street | | | | |
| | City | | State | Zip Code | |
| Your Relationship to Decedent | | | | | |
| Basis of Your Authority to Act for the Decedent | | | | | |

---

[1] Submission instructions shall be provided along with the final form after the Plan has been confirmed and gone effective.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the [ ] Amended Chapter 11 Plan of Purdue Pharma L.P. and its affiliated debtors (the "Plan").

1

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

| | |
|---|---|
| **List here and attach copies of all document(s) evidencing the basis for your authority** | 1. Last Will and Testament of _____, dated _____. <br><br> 2. |

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

| III. | HEIRS AND BENEFICIARIES OF DECEDENT |
|---|---|
| | (ATTACH ADDITIONAL SHEETS FOR THE SECTION IF NEEDED) |

Use the space below to identify the name and address of all persons who may have a legal right to share in any distributions from the PI Futures Trust on account of injuries of the Decedent. Also state if and how you notified these persons of such expected distribution, or the reason they cannot be notified.

| | Name | Information | |
|---|---|---|---|
| **1.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |
| **2.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |
| **3.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____ <br> ☐ No. Why Not: _____ |

3

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

| | Name | Information | | |
|---|---|---|---|---|
| **4.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |
| **5.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

| IV.  FUTURE PI CLAIMANT CERTIFICATION |
|---|

This Sworn Declaration is an official document for submission to the PI Futures Trust.  By signing this Sworn Declaration, I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that:

(a)  I am seeking authority to act on behalf of the Decedent and his or her estate, heirs, and beneficiaries in connection with the PI Futures TDP, including with respect to the submission of forms and supporting evidence and the receipt of payment for any such awards.

(b)  I will abide by all substantive laws of the Decedent's last state of domicile concerning the compromise and distribution of any monetary award to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(c)  No one else has been appointed the personal representative, executor, administrator, or other position with the authority to act on behalf of the Decedent and his or her estate.

(d)  The copy of the Last Will and Testament provided by me is the Last Will and Testament of the Decedent.

(e)  No application or proceeding has been filed in state or other court to administer the estate of the Decedent or to appoint an executor or administrator because state law does not require it.

(f)  I will notify the trustee of the PI Futures Trust (the "PI Futures Trustee") immediately if my authority to act is curtailed, surrendered, withdrawn, or terminated.

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

(g)  I am not aware of any objections to my appointment and service as the Future PI Claimant on behalf of the Decedent and his or her estate, heirs, and beneficiaries.

(h)  No person notified under Section III objects to my serving as the Future PI Claimant and taking such steps as required by the PI Futures TDP to resolve all claims related to the Decedent's prescription and/or use of Purdue opioids.  The persons named in Section III are all of the persons who may have a legal right to share in any distributions issued by the PI Futures Trust in respect of the injuries of the Decedent.

(i)  I will comply with any and all provisions of the state law regarding the compromise and distribution of the proceeds of distributions in respect of a survival or wrongful death claim to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(j)  I will indemnify and hold harmless the PI Futures Trust, the PI Futures Trustee, and the agents and representatives of the foregoing, from any and all claims, demands, or expenses of any kind arising out distributions from the PI trust on account of injuries of the Decedent.

The information I have provided in this Declaration is true and correct.  I understand that the PI Futures Trustee and Court will rely on this Declaration, and false statements or claims made in connection with this Declaration may result in fines, imprisonment, and/or any other remedy available by law.

| V.    FUTURE PI CLAIMANT SIGNATURE | | |
|---|---|---|
| **Signature** | _____ | **Date** | ___/___/___  (Month/Day/Year) |

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

**THIS IS A SAMPLE DECLARATION FORM. DO NOT FILL OUT THIS FORM AT THIS TIME.  ONCE THE PURDUE PLAN HAS BEEN CONFIRMED AND GONE EFFECTIVE, A FINAL COPY OF THIS FORM WILL BE MADE AVAILABLE TO YOU FOR COMPLETION AND SUBMISSION TO THE PI FUTURES TRUST.[1]**

| SD-2 | SWORN DECLARATION:<br>DECEDENT DID NOT LEAVE A LAST WILL AND TESTAMENT |
|---|---|

You are required to complete this declaration if you hold a Future PI Channeled Claim[2] (and thus are a "Future PI Claimant") regarding the opioid-related death of another person (the "Decedent"), and you have not been appointed with the authority to act on behalf of the Decedent because the Decedent Claimant died without a Will and no probate or estate proceeding has been opened.

## I.    DECEDENT INFORMATION

| Name | First Name | | M.I. | Last Name |
|---|---|---|---|---|
| | | | | |
| Social Security Number | \|_\|_\|_\| - \|_\|_\| - \|_\|_\|_\|_\| | | Date of Death | ____/____/____ (Month/Day/Year) |
| Residence/Legal Domicile Address at Time of Death | Street | | | |
| | City | | State | Zip Code |

## II.    FUTURE PI CLAIMANT INFORMATION

| Your Name | First Name | | M.I. | Last Name |
|---|---|---|---|---|
| Your Social Security Number | \|_\|_\|_\| - \|_\|_\| - \|_\|_\|_\|_\| | | | |
| Prime Clerk POC Number assigned to your PI Claim | | | | |
| Your Address | Street | | | |
| | City | | State | Zip Code |
| Your Relationship to Decedent | | | | |
| Basis of Your Authority to Act for the Decedent | | | | |

---

[1] Submission instructions shall be provided along with the final form after the Plan has been confirmed and gone effective.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the [ ] Amended Chapter 11 Plan of Purdue Pharma L.P. and its affiliated debtors (the "Plan").

1

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

| **List here and attach copies of all document(s) evidencing the basis for your authority** | 1. A copy of the intestate statute of the state or domicile of the Deceased Claimant at the time of his or her death.<br><br>2. |
| --- | --- |

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

| | III.    HEIRS AND BENEFICIARIES OF DECEDENT |
|---|---|
| | (ATTACH ADDITIONAL SHEETS FOR THE SECTION IF NEEDED) |

Use the space below to identify the name and address of all persons who may have a legal right to share in any distributions from the PI Futures Trust on account of injuries of the Decedent. Also state if and how you notified these persons of such expected distribution, or the reason they cannot be notified.

| | **Name** | **Information** | |
|---|---|---|---|
| **1.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____<br>☐ No. Why Not: _____ |
| **2.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____<br>☐ No. Why Not: _____ |
| **3.** | | **Address** | |
| | | **Relationship to Decedent** | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____<br>☐ No. Why Not: _____ |

3

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

| | Name | Information | | |
|---|---|---|---|---|
| **4.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |
| **5.** | | **Address** | | |
| | | **Relationship to Decedent** | | |
| | | **Notified of distribution?** | ☐ Yes. How Notified: _____ | |
| | | | ☐ No. Why Not: _____ | |

| **IV.    FUTURE PI CLAIMANT CERTIFICATION** |
|---|

This Sworn Declaration is an official document for submission to the PI Futures Trust.  By signing this Sworn Declaration, I certify and declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that:

(a)  I am seeking authority to act on behalf of the Decedent and his or her estate, heirs, and beneficiaries in connection with the PI Futures TDP, including with respect to the submission of forms and supporting evidence and the receipt of payment for any such awards.

(b)  I will abide by all substantive laws of the Decedent's last state of domicile concerning the compromise and distribution of any monetary award to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(c)  No one else has been appointed the personal representative, executor, administrator, or other position with the authority to act on behalf of the Decedent and his or her estate.

(d)  There is no known last will and testament of the Decedent and no application or proceeding has been filed in state or other court to administer the estate of the Decedent or to appoint an executor or administrator;

(e)  I will notify the trustee of the PI Futures Trust (the "PI Futures Trustee") immediately if my authority to act is curtailed, surrendered, withdrawn, or terminated.

# HEIRSHIP DECLARATION FOR PURDUE PI FUTURES TDP

(f)  I am not aware of any objections to my appointment and service as the Future PI Claimant on behalf of the Decedent and his or her estate, heirs, and beneficiaries.

(g)  No person notified under Section III objects to my serving as the Future PI Claimant and taking such steps as required by the PI Futures TDP to resolve all claims related to the Decedent's prescription and/or use of Purdue opioids.  The persons named in Section III are all of the persons who may have a legal right to share in any distributions issued by the PI Futures Trust on account of the  injuries of the Decedent.

(h)  I will comply with any and all provisions of the state law regarding the compromise and distribution of the proceeds of distributions in respect of a survival or wrongful death claim to the appropriate heirs or other beneficiaries and any other parties with any right to receive any portion of any payments.

(i)  I will indemnify and hold harmless the PI Futures Trust, the PI Futures Trustee, and the agents and representatives of any of the foregoing, from any and all claims, demands, or expenses of any kind arising out of distributions from the PI Futures Trust on account of injuries of the Decedent.

The information I have provided in this Declaration is true and correct.  I understand that the PI Futures Trustee and Court will rely on this Declaration, and false statements or claims made in connection with this Declaration may result in fines, imprisonment, and/or any other remedy available by law.

|  | V.    FUTURE PI CLAIMANT SIGNATURE | | |
|---|---|---|---|
| **Signature** | | **Date** | ____/____/____<br>(Month/Day/Year) |

5