DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P., *et al.*,** | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF FILING OF SPECIAL EDUCATION INITIATIVE TERM SHEET**

**PLEASE TAKE NOTICE** that on June 3, 2021, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [ECF No. 2982] (as modified, amended or supplemented from time to time, the "**Plan**"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**PLEASE TAKE FURTHER NOTICE** that the Debtors, the proposed representatives of a putative class of independent public school districts (the "**Public School District Creditors**"), the Ad Hoc Committee and the MSGE Group have agreed to amend the Plan to provide for a $25.5 million contribution to the Public Schools' Special Education Initiative on the Effective Date out of the Initial NOAT Distribution, on terms set forth in the term sheet attached as **Exhibit A** hereto (the "**Term Sheet**").

**PLEASE TAKE FURTHER NOTICE** that copies of the Term Sheet may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Hearing will be commenced on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; provided that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Hearing shall be conducted telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[2] Please be advised that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court without further notice.

[2] A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operationsunder-exigent-circumstances-created-covid-19.

Dated: July 7, 2021
New York, New York

DAVIS POLK & WARDWELL LLP

By: */s/ Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

# Exhibit A

## Term Sheet

**July 7, 2021**

**Public Schools' Special Education Initiative (Purdue)**

The Purdue proposed plan of reorganization (the "Plan") will be promptly amended to provide for the Debtors' payment of $25.5 million to the Public Schools' Special Education Initiative out of the Initial NOAT Distribution as described below.

**Structure and Staffing**:

A fully independent trust[1] called the Public Schools' Special Education Initiative will be funded by the Debtors. The Debtors will pay the full amount of the $25.5 million on the Effective Date out of the Initial NOAT Distribution. This trust will be administered by a single trustee, selected by counsel for the public schools with input from public school claimants. Ideal candidates for trustee could have experience in both administration and education or services for at-risk youth, including those with pre-natal substance exposure. Counsel for the public schools is committed to interviewing a diverse slate of candidates and soliciting potential candidates with input from public school claimants, the Debtors and other stakeholders such as the UCC and the NAACP.

**Grant Process:**

The trustee will notify all school districts nationwide of the grant process and will invite proposals for projects to provide abatement through the public schools. The trustee will select grant recipients from among the proposals received. Grant money must be spent on abatement. In all cases, grant applications must demonstrate that funds will:

(a) Supplement, not supplant, other source(s) of funding, and,

(b) Be used to extend and/or expand existing services, or provide new services above and beyond services already provided.

The trustee may choose to enlist input from a volunteer committee of experts to help select grant recipients.

[1] Form of Public Schools' Special Education Initiative TBD.

**Allocation of Public School Funds:**

The trustee will make awards based on published criteria, known to all applicants beforehand. The trustee must direct funding to educational supports. The trustee will also aim to maximize impact (and not attempt a pro rata distribution). Although these factors are not dispositive, the trustee will give priority, in funding educational supports, to:

**(a)** Applications from school districts (or consortia of districts) in areas hardest hit by the opioid crisis.

**(b)** Applications from poorly funded school districts or school districts with low per-pupil spending.

**(c)** Applications that target services to children under the age of 8, where the potential gains are the highest.

**(d)** Applications that show that funds received will be used to leverage matching funds from other sources, increasing their impact.

**(e)** Applications that show how programs funded by the grant will become self-sustaining once the grant money has been spent.

**(f)** Applications for funding for direct services to students. Funding is not for research.

**(g)** Applications for projects that are innovative or designed to be replicated elsewhere.

Districts will be encouraged to apply for funding where it can have the greatest impact, whether for classroom services, school-based behavioral and mental services, instructional innovations, or other school-based supports.

**Illustrations of Uses:**

Uses that align with abatement goals and the criteria identified above might include:

- Grants for direct services, including to hire special education teachers, behavior specialists, counselors, social workers, reading coaches, occupational, mental health, or physical therapists;

- Grants for multi-disciplinary programs, such as partnerships between schools and medical or social services providers; or

- Grants to develop models, with nationwide applicability, for how to train and develop staff to provide special education or multi-disciplinary services to abate the ravages of the opioid epidemic in schools.

**Allowable Expenses:**

With the primary focus on high impact grants, other distributions of Public School Funds shall be limited to:

(a) Salary and expenses of the trustee, incurred to announce the opportunity to school districts, select grant recipients, and monitor compliance with grant requirements. It is expected that the trustee will receive $75,000/year in salary, plus reasonable expenses for support staff and travel, not to exceed $25,000/year, and reasonable expenses for school notice and outreach not to exceed $25,000/year.

(b) Modest awards to school districts that stepped forward and filed claims in the bankruptcy proceeding or otherwise contributed to making this recovery possible. The amount of these incentive awards will be determined by Ken Feinberg or Layn Phillips and awarded in that amount by the trustee.

(c) $500,000 dedicated for out-of-pocket litigation expenses, such as for special bankruptcy counsel and expert fees and expenses.

(d) Putative class counsels' reasonable attorneys' fees and litigation costs will be determined by Ken Feinberg or Layn Phillips and awarded in that amount by the trustee. Allocation to the Common Benefit Fund in the amount of 5.0% ($1,250,000) will be deducted from the fee award and paid to the Common Benefit Fund at the time of the fee award.

**Transparency and Records:**

1. The trustee will maintain records of:

   (a) Grant applications received;

   (b) Grants awarded;

   (c) Salary and expenses; and

   (d) Interim and final reports by grantees.

2. The trustee will monitor and enforce compliance with grant requirements, ensuring that funds are used for abatement purposes, and will require all grant recipients to record and file both interim and final reports showing, at a minimum:

   (a) Itemized expenditures of grant funds; and

   (b) Quantitative and qualitative information about the grant's impact.

3. The trustee shall file reports with the bankruptcy court, every six months, disclosing summaries of items 1 and 2 above.

**Eligibility for Other Funding:**

Nothing in the Plan will preclude schools from (i) being eligible to participate in any other aspect of abatement, (ii) receiving funds from the estates of Purdue Pharma L.P. and/or its affiliated Debtors, or (iii) receiving funds from any other sources, including third-party payors.