1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 19-23649-rdd

4   Adv. Case No. 21-07005-rdd

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   PURDUE PHARMA L.P.,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   AVRIO HEALTH L.P. et al.,

13                Plaintiffs,

14          v.

15   AIG SPECIALTY INSURANCE COMPANY (f/k/a AMERICAN

16   INTERNATIONAL SPECIALTY LINES  INSURANCE COMPANY), et al.,

17                Defendants.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

19

20

21

22

23

24

25

Page 2

1                    United States Bankruptcy Court

2                    300 Quarropas Street, Room 248

3                    White Plains, NY 10601

4

5                    June 21, 2021

6                    10:02 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    B E F O R E :

22    HON ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  JUSTIN WALKER

Page 3

1    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

2    L.P. et al v. AIG Specialty Insurance Company (f/k/a

3    American In  Avrio Health LP v. AIG Specialty Insurance Co.

4    WILL BE CONDUCTED USING ZOOM FOR GOVERNMENT VIDEO

5    CONFERENCING.

6

7    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

8    L.P. et al v. AIG Specialty Insurance Company (f/k/a

9    American In  Notice of Agenda for June 21, 202 l Hearing

10   Filed by Paul E. Breene on behalf of Avrio Health L.P.,

11   Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma

12   Manufacturing L.P., Purdue Pharma of Puerto Rico, Purdue

13   Pharmaceutical Products L.P., Purdue Pharmaceuticals L.P.,

14   Purdue Transdermal Technologies L.P., Rhodes Pharmaceuticals

15   L.P., Rhodes Technologies. with hearing to be held on

16   6/21/2021 at 10:00 AM at Videoconference (Zoom Gov)

17   (ECF # 159)

18

19   HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

20   L.P. et al v. AIG Specialty Insurance Company (f/k/a

21   American In  Motion to Stay / Notice of Motion for

22   Arbitration Insurers' Joint Motion to Stay the Claims

23   Against Them in the Adversary Proceeding in Favor of

24   Arbitration filed by Mitchell Jay Auslander on behalf of AIG

25   Specialty Insurance Company (f/k/a American International

Page 4

1   Specialty Lines Insurance Company), American International

2   Reinsurance Company (f/k/a Starr Excess Liability Insurance

3   International Limited), New Hampshire Insurance Company.

4   (Attachments:# I Declaration of Mitchell J. Auslander# 2

5   Declaration of Paul R. Koepff # 3 Declaration of Daren

6   McNally # 4 Declaration of Monica T. Sullivan # 5

7   Declaration of Arthur J. Liederman # 6 Declaration of George

8   R. Calhoun # 7 Declaration of Michael E. Gorelick # 8

9   Declaration of Kent A. Wilson# 9 Declaration of Richard

10  Geddes) (ECF #57)

11

12  HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

13  L.P. et al v. AIG Specialty Insurance Company (f/k/a

14  American In  Memorandum of Law in Support of the Arbitration

15  Insurers' Joint Motion to Stay the Claims Against Them in

16  the Adversary Proceeding in Favor of Arbitration (related

17  document(s)57) filed by Mitchell Jay Auslander on behalf of

18  AIG Specialty Insurance Company (f/k/a American

19  International Specialty Lines Insurance Company), American

20  International Reinsurance Company (f/k/a Starr Excess

21  Liability Insurance International Limited), New Hampshire

22  Insurance Company. (Attachments: # 1 Exhibit A - Chart of

23  Arbitration Provisions # 2 Exhibit B - Century 21 Dep't

24  Stores LLC  2/12/21 Hr'g Transcript) (ECF #59)

25

Page 5

1    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

2    L.P. et al v. AIG Specialty Insurance Company (f/k/a

3    American In  Opposition to Certain Insurers' Joint Motion to

4    Stay the Claims Against Them in the Adversary Proceeding in

5    Favor of the Arbitration (related document(s)57, 93) filed

6    by Paul E. Breene on behalf of Avrio Health L.P., Purdue

7    Pharma Inc., Purdue Pharma  L.P., Purdue Pharma

8    Manufacturing L.P., Purdue Pharma of Puerto Rico, Purdue

9    Pharmaceutical Products L.P., Purdue Pharmaceuticals L.P.,

10   Purdue Transdermal Technologies L.P., Rhodes Pharmaceuticals

11   L.P., Rhodes Technologies. (Attachments: # 1 Declaration of

12   Paul Breene # 2 Paul Breene Declaration Ex. 1 # 3 Paul

13   Breene Declaration Ex. 2 # 4 Paul Breene Declaration Ex. 3 #

14   5 Paul Breene Declaration Ex. 4 # 6 Paul Breene Declaration

15   Ex. 5 # 7 Paul Breene Declaration Ex. 6 # 8 Paul Breene

16   Declaration Ex. 7 # 9 Paul Breene Declaration Ex. 8 # 10

17   Paul Breene Declaration Ex. 9 # 11 Paul Breene Declaration

18   Ex. 10 # 12 Paul Breene Declaration Ex. 11 # 13 Paul Breene

19   Declaration Ex. 12 # 14 Paul Breene Declaration Ex. 13 # 15

20   Paul Breene Declaration Ex. 14 # 16 Paul Breene Declaration

21   Ex. 15 # 17 Paul Breene Declaration Ex. 16 # 18 Paul Breene

22   Declaration Ex. 17 # 19 Paul Breene Declaration Ex. 18 # 20

23   Paul Breene Declaration Ex. 19 # 21 Paul Breene Declaration

24   Ex. # 22 Paul Breene Declaration Ex. 21 # 23 Paul Breene

25   Declaration Ex. 22 # 24 Paul Breene Declaration Ex. 23 # 25

1    Paul Breene Declaration Ex. 24 # 26 Paul Breene Declaration

2    Ex. 25 # 27 Paul Breene Declaration Ex. 26 # 28 Paul Breene

3    Declaration Ex. 27 # 29 Paul Breene Declaration Ex. 28 # 30

4    Paul Breene Declaration Ex. 29 # 31 Paul Breene Declaration

5    Ex. 30) (ECF #133)

6

7    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

8    L.P. et al v. AIG Specialty Insurance Company (f/k/a

9    American In  Reply Memorandum of Law in Support of the

10   Arbitration Insurers' Joint Motion to Stay the Claims

11   Against Them in the Adversary Proceeding in Favor of

12   Arbitration (related document(s)57) filed by Mitchell Jay

13   Auslander on behalf of AIG Specialty Insurance Company

14   (f/k/a American International Specialty Lines Insurance

15   Company), American International Reinsurance Company (f/k/a

16   Starr Excess Liability Insurance International Limited), New

17   Hampshire Insurance Company. (ECF #144)

18

19   HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

20   L.P. et al v. AIG Specialty Insurance Company (f/k/a

21   American In  Reply Memorandum of Law of AIG Specialty

22   Insurance Company, Evanston Insurance Company, and Ironshore

23   Specialty Insurance Company in Support of the Arbitration

24   Insurers' Joint Motion to Stay the Claims Against Them in

25   the Adversary Proceeding in Favor of Arbitration (related

1   document(s)57) filed by Mitchell Jay Auslander on behalf of

2   AIG Specialty Insurance Company (f/k/a American

3   International Specialty Lines Insurance Company). (ECF #146)

4

5   HEARING re Motion for Relief from Stay filed by George

6   Calhoun IV on behalf of Ironshore Specialty Insurance

7   Company (ECF #712)  Notice of Adjournment of Hearing

8   (related document(s)712) filed by George Calhoun IV on

9   behalf of Ironshore Specialty Insurance Company. (ECF #2542)

10  Supplemental Response to Motion IRONSHORE SPECIALTY

11  INSURANCE COMPANYS, FORMERLY KNOWN AS TIG SPECIALTY

12  INSURANCE COMPANY, SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION

13  FOR RELIEF FROM AUTOMATIC STAY (related document(s)712)

14  filed by George Calhoun IV on behalf of Ironshore Specialty

15  Insurance Company. (Attachments: # 1 Declaration of George

16  Calhoun In Support of Supplemental Brief In Support of

17  Motion for Relief From Automatic Stay) (ECF #2326)

18  Objection to Motion/ Debtors' Objection to TI G's Motion for

19  Relief from the Automatic Stay (related document(s)712)

20  filed by Benjamin S. Kaminetzky on behalf of Purdue Pharma

21  L.P. (ECF #753)

22

23  HEARING re Objection of the Official Committee of Unsecured

24  Creditors to the Motion of Ironshore Specialty Insurance

25  Company for Relief from Automatic Stay and Joinder to the

Page 8

1   Debtor's Objection to Such Motion (related document(s)753,

2   712) filed by Ira S. Dizengoff on behalf of The Official

3   Committee of Unsecured Creditors of Purdue Pharma L.P., et

4   al. (ECF #756)

5

6   HEARING re Statement I Ad Hoc Committees Statement in

7   Support of Debtors Objection to TI Gs Motion for Relief From

8   the Automatic Stay (related document(s)753, 712) filed by

9   Kenneth H. Eckstein on behalf of Ad Hoc Committee of

10  Governmental and Other Contingent Litigation Claimants.

11  (ECF #757)

12

13  HEARING re Supplemental Opposition to Ironshore Specialty

14  Insurance Company, formerly known as TIG Specialty Insurance

15  Company Motion for Relief from the Automatic Stay

16  (related document(s)2326) filed by Paul E. Breene on behalf

17  of Purdue Pharma L.P.

18  (ECF #2801)

19

20  HEARING re Reply to Motion In Support of Motion For Relief

21  From Stay (related document(s)712) filed by George Calhoun

22  IV on behalf of Ironshore Specialty Insurance Company.

23  (ECF #765)

24

25

```
 1    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

 2    L.P. et al v. AIG Specialty Insurance Company (f/k/a

 3    American In  Motion to Dismiss Adversary Proceeding For Lack

 4    of Personal Jurisdiction filed by Barbara M. Almeida on

 5    behalf of Chubb Bermuda Insurance Ltd. (f/k/a ACE Bermuda

 6    Insurance Ltd.). (Attachments: # I Affirmation of Kevin G.

 7    Costello in support of Motion To Dismiss) (ECF #77)

 8    Adversary proceeding: 21-07005-rdd Avrio Health L.P. et al

 9    v. AIG Specialty Insurance Company (f/k/a American In

10    Memorandum of Law In Support Of Motion To Dismiss For Lack

11    Of Personal Jurisdiction filed by Barbara M. Almeida on

12    behalf of Chubb Bermuda Insurance Ltd. (f/k/a ACE Bermuda

13    Insurance Ltd.). (ECF #78)

14

15    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

16    L.P. et al v. AIG Specialty Insurance Company (f/k/a

17    American In  Motion to Dismiss Adversary Proceeding for Lack

18    of Personal Jurisdiction filed by Arthur J Liederman on

19    behalf of HDI Global SE (f/k/a Gerling-Konzern General

20    Insurance Company). (Attachments:# I Pleading Affirmation of

21    John McCammon in Support of Motion to Dismiss) (ECF #90)

22    Adversary proceeding: 21-07005-rdd Avrio Health L.P. et al

23    v. AIG Specialty Insurance Company (f/k/a American In

24    Memorandum of Law in Support of Defendant HDI Global SE's

25    Motion to Dismiss for Lack of Personal Jurisdiction (related
```

1   document(s)90) filed by Arthur J Liederman on behalf of HDI

2   Global SE (f/k/a Gerling-Konzern General Insurance Company).

3   (ECF #92)

4

5   HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

6   L.P. et al v. AIG Specialty Insurance Company (f/k/a

7   American In  Motion to Dismiss Adversary Proceeding filed by

8   Thomas Maeglin on behalf of Liberty Mutual Insurance Europe

9   SE (f/k/a Liberty International Insurance Company).

10  (Attachments: # I Affirmation of Julie Tripp # 2 Exhibit,

11  Exhibit A to Tripp Afl) (ECF #84)

12

13  HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

14  L.P. et al v. AIG Specialty Insurance Company (f/k/a

15  American In  Motion to Dismiss Adversary Proceeding For Lack

16  of Personal Jurisdiction filed by Richard Joseph Geddes on

17  behalf of XL Bermuda Ltd. (ECF #88)

18

19  HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

20  L.P. et al v. AIG Specialty Insurance Company (f/k/a

21  American In  Memorandum of Law IN SUPPORT OF THE MOTION OF

22  LIBERTY MUTUAL INSURANCE EUROPE SE TO DISMISS FOR LACK OF

23  PERSONAL JURISDICTION (Doc 84) (Maeglin, Thomas) (ECF #85)

24  Adversary proceeding: 21-07005-rdd Avrio Health L.P. et al

25  v. AIG Specialty Insurance Company (f/k/a American In

Page 11

1   Motion to Dismiss Adversary Proceeding For Lack of Personal

2   Jurisdiction filed by George Calhoun IV on behalf of Allied

3   World Assurance Company, Ltd .. (Attachments:# I

4   Affirmation of James Byrnes) (ECF #82)

5

6   HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

7   L.P. et al v. AIG Specialty Insurance Company (f/k/a

8   American In  Memorandum of Law In Support of Defendant

9   Allied World Assurance Company Ltd's Motion to Dismiss For

10  Lack of Personal Jurisdiction (related document(s)82) filed

11  by George Calhoun IV on behalf of Allied World Assurance

12  Company, Ltd. (ECF #83)

13

14  HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

15  L.P. et al v. AIG Specialty Insurance Company (f/k/a

16  American In  Motion to Dismiss Adversary Proceeding For Lack

17  Of Personal Jurisdiction filed by Paul R Koepff on behalf of

18  Arch Reinsurance Ltd. (Attachments: # I Affirmation of Robin

19  E. Saul) (ECF #80)

20

21  HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

22  L.P. et al v. AIG Specialty Insurance Company (f/k/a

23  American In  Memorandum of Law In Support of Motion To

24  Dismiss For Lack Of Personal Jurisdiction filed by Paul R

25  Koepff on behalf of Arch Reinsurance Ltd. (ECF #81)

```
 1    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

 2    L.P. et al v. AIG Specialty Insurance Company (f/k/a

 3    American In  Motion to Dismiss Party filed by Dan D Kohane

 4    on behalf of Chubb European Group SE (f/k/a ACE Insurance

 5    S.A.N.V.), Darag Insurance UK Limited (f/k/a The Underwriter

 6    Insurance Company Limited), QBE UK Limited (f/k/a QBE

 7    International Insurance Company Limited), SR International

 8    Business Company SE (f/k/a SR International Business

 9    Insurance Company Limited), Zurich Specialties London

10    Limited (f/k/a Zurich Reinsurance (London) Limited).

11    (Attachments: # I Declaration of Kent Wilson# 2 Affirmation

12    of Fran Eaton# 3 Affirmation of Nathan Barnett #1 # 4

13    Affirmation of Nathan Barnett #2 # 5 Affirmation of Sara

14    Mitchell# 6 Affirmation of Simon Cheal # 7 Memorandum of

15    Law) (ECF #73)

16

17    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

18    L.P. et al v. AIG Specialty Insurance Company (f/k/a

19    American In  Amended Memorandum of Law and letter of

20    explanation (related document(s)73) filed by Dan D Kohane on

21    behalf of Aspen American Insurance Company, Chubb European

22    Group SE (f/k/a ACE Insurance S.A.N.V.), Darag Insurance UK

23    Limited (f/k/a The Underwriter Insurance Company Limited),

24    North American Elite Insurance Company, QBE UK Limited

25    (f/k/a QBE International Insurance Company Limited), SR
```

Page 13

1    International Business Company SE (f/k/a SR International

2    Business Insurance Company Limited), Zurich Specialties

3    London Limited (f/k/a Zurich Reinsurance

4    (London) Limited). (ECF #96)

5

6    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

7    L.P. et al v. AIG Specialty Insurance Company (f/k/a

8    American In  Motion to File Under Seal Motion to Seal

9    Documents Submitted in Connection with Plaintiffs'

10   Consolidated Memorandum of Law in Opposition to Defendants'

11   Motions to Dismiss for Lack of Personal Jurisdiction

12   (related document(s)88, 84, 90, 77, 82, 80, 73) filed by

13   Jenna A Hudson on behalf of Ad Hoc Committee of Governmental

14   and Other Contingent Litigation Claimants. (ECF # 129)

15

16   HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

17   L.P. et al v. AIG Specialty Insurance Company (f/k/a

18   American In  Reply Memorandum of Law In Support Of Motion To

19   Dismiss For Lack Of Personal Jurisdiction (related

20   document(s)77) filed by Harris Wiener on behalf of Chubb

21   Bermuda Insurance Ltd. (f/k/a ACE Bermuda Insurance Ltd.).

22   (ECF #137)

23

24   HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

25   L.P. et al v. AIG Specialty Insurance Company (f/k/a

Page 14

1   American In  Reply Memorandum of Law In Support Of Motion To

2   Dismiss For Lack Of Personal Jurisdiction (related

3   document(s)90) filed by Arthur J Liederman on behalf of HDI

4   Global SE (f/k/a Gerling-Konzern General Insurance Company).

5   (Attachments: # 1 Declaration of John Yacoub) (ECF # 139)

6   Adversary proceeding: 21-07005-rdd Avrio Health L.P. et al

7   v. AIG Specialty Insurance Company (f/k/a American In

8   Reply Memorandum of Law in Support of its Motion to Dismiss

9   for Lack of Personal Jurisdiction filed by Richard Joseph

10  Geddes on behalf of XL Bermuda Ltd. (ECF # 140)

11

12  HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

13  L.P. et al v. AIG Specialty Insurance Company (f/k/a

14  American In  Reply Memorandum of Law IN SUPPORT OF THE

15  MOTION OF LIBERTY MUTUAL INSURANCE EUROPE SE TO DISMISS FOR

16  LACK OF PERSONAL JURISDICTION (related document(s)84) filed

17  by Thomas Maeglin on behalf of Liberty Mutual Insurance

18  Europe SE (f/k/a Liberty International Insurance Company).

19  (ECF #142)

20

21  HEARING re Liberty Mutual Insurance Europe SE (f/k/a Liberty

22  International Insurance Company). (ECF #142)

23  4

24  HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

25  L.P. et al v. AIG Specialty Insurance Company (f/k/a

1   American In  Reply to Motion (related document(s)77) filed

2   by George Calhoun IV on behalf of Allied World Assurance

3   Company, Ltd .. (Attachments:# 1 Affirmation of J. Byrnes)

4   (ECF #145)

5

6   HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

7   L.P. et al v. AIG Specialty Insurance Company (f/k/a

8   American In  Reply Memorandum of Law In Support Of Motion To

9   Dismiss For Lack Of Personal Jurisdiction (related

10  document(s)80) filed by Harris Wiener on behalf of Arch

11  Reinsurance Ltd .. (Attachments: # 1 Reply Affirmation of

12  Robin E. Saul) (ECF # 138)

13

14  HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

15  L.P. et al v. AIG Specialty Insurance Company (f/k/a

16  American In  Motion to Dismiss Party (related document(s)73)

17  filed by Lee Scott Siegel on behalf of Chubb European Group

18  SE (f/k/a ACE Insurance S.A.N.V.). (Attachments:# 1 Reply

19  Brief# 2 Exhibit Declaration of Kent A. Wilson) (ECF #135)

20  Adversary proceeding: 21-07005-rdd Avrio Health L.P. et al

21  v. AIG Specialty Insurance Company (f/k/a American In

22  Motion for More Definite Statement filed by William T.

23  Russell Jr. on behalf of Gulf Underwriters Insurance

24  Company, St. Paul Fire and Marine Insurance Company

25  (ECF #71)

Page 16

1    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

2    L.P. et al v. AIG Specialty Insurance Company (f/k/a

3    American In  Memorandum of Law in support of Motion for a

4    More Definite Statement (related document(s)71) filed by

5    William T. Russell Jr. on behalf of Gulf Underwriters

6    Insurance Company, St. Paul Fire and Marine Insurance

7    Company. (ECF #72)

8

9    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

10   L.P. et al v. AIG Specialty Insurance Company (f/k/a

11   American In  Demand for Jury Trial filed by Lauren M.

12   Macksoud on behalf of XL Insurance America, Inc. (ECF # 106)

13   Adversary proceeding: 21-07005-rdd Avrio Health L.P. et al

14   v. AIG Specialty Insurance Company (f/k/a American In

15   Opposition to Defendants' Motions for More Definite

16   Statement (related  document(s)72, 63, 71, 62) filed by

17   Jenna A Hudson on behalf of Ad Hoc Committee of Governmental

18   and Other Contingent Litigation Claimants.(ECF # 128)

19

20   HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

21   L.P. et al v. AIG Specialty Insurance Company (f/k/a

22   American In  Reply to Motion - Reply Memorandum in further

23   support of Motion for a More Definite Statement (related

24   document(s)71) filed by William T. Russell Jr. on behalf of

25   Gulf Underwriters Insurance Company, St. Paul Fire and

1    Marine Insurance Company. (ECF #141)

2

3    HEARING re Adversary proceeding: 21-07005-rdd Avrio Health

4    L.P. et al v. AIG Specialty Insurance Company (f/k/a

5    American In  Pre-Trial Conference

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
                                                      Page 18
 1    A P P E A R A N C E S :

 2

 3    REED SMITH LLP

 4         Attorneys for Debtors

 5         599 Lexington Avenue

 6         New York, NY 10022

 7

 8    BY:  PAUL E. BREENE

 9

10    WILLKIE FARR & GALLAGHER

11         Attorneys for Certain AIG Insurers

12         787 Seventh Avenue

13         New York, NY, 10019

14

15    BY:  MITCHELL AUSLANDER

16

17    NICOLAIDES FINK THORPE MICHAELIDES

18    SULLIVAN LLP

19         Attorney for Evanston Insurance Company

20         10 S. Wacker Drive, Suite 2100

21         Chicago, Illinois 60606

22

23    BY:  JODI S. GREEN

24

25
```

1   CLYDE & CO US LLP

2        Attorney for Arch

3        The Chrysler Building

4        405 Lexington Avenue, 16th Floor

5        New York, NY 10174

6

7   BY:  PAUL R. KOEPFF

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 20

1                     P R O C E E D I N G S

2            THE COURT:  Okay.  Good morning.  This is Judge

3    Drain.  We're here in In re Purdue Pharma, and more

4    specifically Purdue Pharma LP et al versus AIG Specialty

5    Insurance Company et al.

6            I have the agenda for today's hearing, and I'm

7    happy to go down the agenda unless there's been a change in

8    it that the parties have agreed on.  And that would mean

9    that the first matter on the agenda are the motions to stay

10   this adversary proceeding in favor of arbitration by those

11   defendants who have arbitration provisions in their

12   policies.

13           So I reviewed the parties' pleadings on this

14   through the two replies filed and the related exhibits, so

15   you should assume I have that background in this, but I'm

16   happy to hear brief oral argument as well.

17           MR. AUSLANDER:  Good morning, Your Honor.  May it

18   please the Court, this is Mitchell Auslander of Willkie Farr

19   & Gallagher, counsel for the AIG defendants.

20           First, may I ask can you hear me all right?

21           THE COURT:  I can hear you and see you.

22           MR. AUSLANDER:  Okay.  I can see you and hear you

23   too.

24           THE COURT:  Okay.

25           MR. AUSLANDER:  So this is a motion to stay this

1   adversary proceeding in favor of arbitration.  As Your Honor

2   noted in the In re (indiscernible) the law is quite

3   developed in this area, and that was back in 2013.  Since

4   then, we have more cases like ResCap, and MF Global, and

5   most recently Roman Catholic Diocese that largely confirm

6   that law.

7        But what I -- what I'd like to do is turn to what

8   I think is the part of the -- of (indiscernible), which is

9   under the outcome of the insurance coverage case is

10  essential to the Purdue bankruptcy, such that the Court

11  should override the parties' antecedent agreements

12  (indiscernible) FAA.

13       And the way I'd like to do that is to just briefly

14  say what this case is and turn to Plaintiffs' more

15  significant arguments in opposition to the motion.  And then

16  finally, just deal with a few issues the Plaintiffs raised

17  with regard to three separate policies that are at issue

18  here that don't necessarily apply to all of the arbitration

19  insurers.

20       So the case is a contract case, plain and simple.

21  It's not a plain and simple case, but the concept is it's a

22  contract case.  Plaintiffs are asking for a declaratory

23  judgment that they're entitled to insurance coverage for

24  their opioids liability.  To make that determination,

25  there'll have to be an interpretation of the contracts that

Page 22

1   the parties entered into.  There are no federal claims, and

2   there are no claims brought under the bankruptcy claim.

3          So we respectfully submit that this is

4   quintessential non-care case under (indiscernible) pipeline

5   and all of the cases in the second circuit that have come on

6   since then.

7          So now I'd just like to turn to the arguments that

8   Plaintiffs make.  Their biggest argument seems to be that

9   the insurance proceeds constitute a significant asset of the

10  estate and that therefore the matter should be handled in

11  the bankruptcy court.

12         There are several problems with this, the first

13  being there is no law that says that just because there is a

14  significant asset of the estate involved that that renders

15  the case core.  In fact, there's a legion of cases cited in

16  our brief, so I won't go through them, that say that adding

17  to an estate, augmenting to an estate even with a

18  significant asset is not enough to render a case core.  That

19  starts with In re Orion, U.S. Lines, Roman Catholic Diocese,

20  and so forth.  So it being a significant asset is simply not

21  enough.

22         In this case, the insurance proceeds are not even

23  the most significant asset of the estate.  The Plaintiffs

24  use the number $3.3 billion of insurance policy limits,

25  which I will come back to, but they never come to grips with

Page 23

1    the fact that the estate involves what may be in excess of

2    $10 billion.

3           As you know, Your Honor, the Sackler's have agreed

4    under the proposed plan to contribute $4.5 billion, and the

5    company will be in the estate, so we have here, unlike in

6    other cases, 10 billion in assets of which the insurance

7    proceeds are for sure a significant amount of money but not

8    even the most significant.

9           With respect to the $3.3 billion, we're not

10   exactly sure how the Plaintiffs calculated that number.  We

11   think that they simply added up all of the limits of all of

12   the policies that they bought from all of their insurers

13   over many years.  But of course that is not -- that is not

14   what the arbitration policy is.  The arbitration policies

15   are a subset of that.  The limits of the arbitration

16   policies are a subset of that, so it's not $3.3 billion.

17          The insurers have been unable to figure out

18   exactly how much is at issue in this adversary proceeding,

19   obviously something short of what the Plaintiffs intend.

20   But -- and that's because the parties are having discussions

21   about which policies are actually in play here and which

22   ones are not, but we have some idea of what the amount is

23   because counsel for Purdue, my friend Ann Kramer submitted

24   an affidavit -- a declaration, I should say -- in connection

25   with the personal jurisdiction motions, which refers to a $1

Page 24

1    billion tower of insurance, which includes the Bermuda

2    Insurance.  So we think that that is around the amount of

3    money that is at issue in the arbitrations or in the alveary

4    proceeding.

5            Now beyond that, Ms. Kramer pointed out in her

6    declaration that the lower layers, some of the lower layers

7    of that billion-dollar power have already been exhausted, so

8    what we're dealing with here is something less than $1

9    billion.  And that is less than 10 percent of what the total

10   assets of the estate will amount to.

11           If we needed any further proof that the insurance

12   recoveries are not essential, not core to the bankruptcy, we

13   just have to look at the history of the bankruptcy

14   proceeding.  The bankruptcy case was filed on September 15,

15   2019.  This adversary proceeding concerning the insurance

16   was not filed until January 29, 2021.  It's hard to see how

17   Plaintiff can argue the essential nature of proceeds when

18   the case has been going on for 16 months, and they haven't

19   brought them into -- the policies into focus.

20           Further, the plan itself doesn't rely on any

21   insurance recoveries.  It can be confirmed in all post-

22   confirmation commitments and be kept without any insurance

23   at all.

24           And lastly on this point, Your Honor, insurance

25   recovery is not even mentioned as a risk factor in the

Page 25

1    disclosure statement.  One would think that if it was so

2    important and if there was a need to move quickly to get

3    done with the insurance coverage issues, as the Plaintiffs

4    are now saying, one would expect to see something in the

5    disclosure -- in the risk factors of the disclosures.

6              The second argument that Plaintiffs make that I

7    want to address is that if matters go to arbitration, there

8    will be delayed payments to the creditors.  The fact is,

9    based upon the way this plan -- proposed plan is laid out,

10   there will not be any delay in the timing of payments

11   because the plan lays out in detail when the creditors will

12   be paid and how much.

13             It's true that the insurance recoveries may

14   accelerate the time when personal injury claimants receive

15   payments, but they are still scheduled to get the payments

16   as indicated in the plan, and it's not as though anybody

17   will receive payments right away anyway because there is, of

18   course, a claim processing system in the plan that will have

19   to be satisfied before anybody gets paid.

20             Bottom line on this one, Your Honor, is all

21   adversary proceedings have consequences for the debtor and

22   the creditors.  That has been noted in cases before and in

23   Orion more recently by Judge Oetken in the district court

24   where he said in ResCap the lateral consequences of state

25   law actions do not necessarily make actions poor, and that

Page 26

1    is certainly the case here.

2            Next, the Plaintiffs point to insurance coverage

3    defenses that the insurance companies may assert one day.  I

4    say may assert because there have not been a statement of

5    the Plaintiffs position as we would expect to have in an

6    arbitration proceeding where it's not noticed pleading.

7    It's you lay out your whole case, and then the defendants,

8    in this case the insurance companies, would respond in

9    detail with their defenses.  We don't -- we don't have that

10   here yet, so what the defenses will be is a matter of

11   speculation at this point.

12           But in any event, the defense that they express

13   some concern about are the consent to settle provision that

14   is contained in many of the policies, and the pay first

15   provision that's contained in some of the policies.

16           With respect to the consent provision, and in fact

17   the pay first provision, these are fairly common items that

18   appear in insurance policies.  And if the fact that an

19   insurance company might one day raise those as defenses or

20   even raise them as defenses, could render a matter core and

21   remove it from the -- remove it from arbitration, we

22   wouldn't have many arbitrations in large bankruptcy cases.

23   In fact, there was a consent to settle provision in the

24   Roman Catholic Diocese case, and the case was not deemed to

25   be core.

Page 27

```
 1              So the point here, Your Honor, is it can't be just
 2     these common provisions, fairly common provisions, that
 3     appear that render a case core.  In any event -- sorry.  In
 4     any event -- I'm sorry.  Was Your Honor going to ask me
 5     something?
 6              THE COURT:  I will, but why don't you finish what
 7     you were saying?
 8              MR. AUSLANDER:  All right.
 9              THE COURT:  Unless you're going on to a different
10     topic.
11              MR. AUSLANDER:  No, I'm still on the complaint --
12     the Plaintiffs' arguments.
13              THE COURT:  Right.
14              MR. AUSLANDER:  Unless you (indiscernible).
15              On this point, the only thing I wanted to add was
16     that, again, we're talking about a very -- a relatively
17     small amount of insurance proceeds, so the merit -- or lack
18     of merit -- of the defenses shouldn't matter with respect to
19     whether this is a core proceeding.
20              And -- I'm sorry.  Go ahead.
21              THE COURT:  So let me ask you this question.
22     Let's assume that the plan provides for a solution to the
23     pay-first provisions, you know, the Limon case or some other
24     solution that they come up with so they don't actually have
25     to pay it.
```

1            And similarly, assume for the moment that the

2     Debtors actually join the issue of the consent point so that

3     those two points are actually heard at the confirmation

4     hearing.

5            Would you agree that the Court's determination of

6     those two issues to the extent they were determined as part

7     of the confirmation hearing, and obviously assuming that

8     there's a final order, would then be binding on an

9     arbitrable -- arbitration panel as far as that prior

10    determination?

11           MR. AUSLANDER:  I wouldn't -- I wouldn't put it

12    that way, Your Honor.  I don't think that the -- it would

13    necessarily be binding, nor do I think that the arbitration

14    insurers are in a position today to say this or waive it.

15    But I would say this.  It would be difficult, it seems to

16    me, to raise those defenses in the context of the bankruptcy

17    plan where the creditors, including the insurance companies,

18    had an opportunity to object to it.  But I don't think it

19    would necessarily be binding, and those are issues that

20    could be raised -- wouldn't necessarily be raised, but

21    they're issues that could be raised.

22           THE COURT:  Well, when you say the -- I obviously

23    was posing a hypothetical, and being a careful lawyer, you

24    don't want to agree to a vague set of hypotheticals, but

25    when you say it wouldn't be binding or wouldn't necessarily

Page 29

1   be binding, is that because the arbitration panel would not

2   be bound by principles of claim and issue preclusion or for

3   some other reason?

4          MR. AUSLANDER:  Arbitration panels can be bound by

5   issue preclusion as a matter of law, and I think actually

6   that works -- that work -- that can work both ways.  But it

7   -- of course, it would depend upon what the plan said and

8   what exactly the Court ordered with respect to those

9   particular two issues, which as you say is hypothetical.  So

10  I couldn't say with certainty that they would be bound by

11  it, but I would just repeat that, you know, what the Court

12  has to say on those issues is going to matter both with

13  respect to whether the insurance companies actually raise

14  those defenses and what the arbitrators do about them.

15         THE COURT:  Okay.  One of the reasons I'm asking

16  is that in the Netflix versus Relativity case, the Circuit

17  actually found that the court's implementation of a plan

18  that it believed provided for a certain result led it to

19  conclude that that implementation or the action to further

20  the implementation would be core and that it couldn't be

21  heard in a different forum.

22         MR. AUSLANDER:  Well, in Netflix -- the big

23  difference in Netflix is the outcome of that dispute

24  could've destroyed the entire revenue stream of the debtor,

25  and that's what rendered it core in that case.

1          Here, as I've explained, the asset that we're

2     talking about, the problem that we're talking about is --

3     it's a relatively small asset.  Netflix, the film rights

4     mainstream was what that case was -- was largely, although

5     not exclusively, about.  And I believe the Court

6     specifically did say that the revenue -- the revenue stream

7     could be affected in a way that would render the case core.

8          THE COURT:  Okay.

9          MR. AUSLANDER:  Okay.  The last point I would make

10    on the pay first provision in particular is that in U.S.

11    Lines, the pay first provision was all over the policy.  It

12    was contained in all of the policies.  Here, we have it in

13    some but not all of the policies, and Plaintiffs cite to I

14    think four of the 16 arbitration policies that contain pay

15    first provisions, but they're not in all of them.

16          THE COURT:  Well, fair enough, but on the other

17    hand, under the rationale of the U.S. Lines case, given the

18    plan that had been already confirmed there, you would have a

19    potentially seriously inequitable result if the payments

20    came out first and then it was determined later that it

21    wouldn't be reimbursed by insurance, and I don't think when

22    you're -- when you're construing inequitable results, it

23    really depends on whether it's only in respect of certain of

24    the payments and not of all of them.

25          MR. AUSLANDER:  Your Honor, I mean, I think there

Page 31

1    are payments a few things on that.  If there are only a few

2    policies that have, let's call it, this problem, the problem

3    that they have to be paid first, and there are others where

4    the claimants are going to get paid with insurance money

5    after, of course, the money from the estate, I don't think

6    the fact that there are a few of those policies should

7    matter.

8              But in any event, you're right that in the U.S.

9    Lines case, there was a potentially inequitable result if

10   the insurance wasn't considered, and that's because the

11   insurance was the sole cash available to pay the personal

12   injury claimants.  Obviously that is not the case here.

13   Here, the personal injury claimants are going to be paid

14   $300 million immediately and $700 million over time without

15   any insurance recovery at all.

16             Furthermore, in U.S. Lines, as you were

17   indicating, Your Honor, the insurance proceeds wouldn't be

18   made available until the debtors paid the claims.  And the

19   Court, the Second Circuit in that case, said because the

20   debtor was insolvent, there wouldn't have any ability to pay

21   those claims unless there were what the Court called complex

22   and creative transactions that they could enter into.

23             Here, there's mechanisms for paying those claims.

24   They're laid out in the plan, so there isn't going to be a

25   problem paying those claims, and there isn't going to have

Page 32

1    to be a redistribution of assets after the -- after the plan

2    is confirmed.

3              So I think as far as the consent -- going back,

4    the consent to settle and the pay first provisions are

5    concerned, it's understandable based upon the caselaw a lot

6    of the plaintiffs have raised them, but in the context of

7    this case, they don't render the matter core.

8              The next major argument as I -- as I read their

9    papers -- that Plaintiffs make relate to the process of

10   arbitration, meaning that a Plaintiff had said, "Well, there

11   are going to be -- if it's not -- if the case isn't

12   maintained, there are going to be a lot of arbitrations, so

13   the problems will not be decentralized in the bankruptcy

14   court.  It'll be time consuming.  It'll be -- it'll cost

15   money, and there's a risk of inconsistent rulings."

16             Well, Your Honor, these kinds of considerations

17   are always present when there are arbitration contracts that

18   contain arbitration provisions.

19             Purdue bought many insurance policies over many

20   years from many insurance companies, some of which contain

21   arbitration provision, some of which do not contain

22   arbitration provisions.

23             If one were to say, okay, there are logistical

24   considerations and logistical problems with having

25   arbitrations in the context of the bankruptcy case, here

Page 33

1    again pretty much all large insurance cases that have

2    arbitrations in them will have to stay in the bankruptcy

3    court, and that's just not law, and the Plaintiffs don't

4    cite a case for that proposition.

5           By contrast, Judge Bernstein in In re Hagerstown

6    277 B.R. 181 said -- and I'll quote him here, "the strong

7    federal policy favoring arbitration trumps the usual

8    considerations that judicial economy and efficiency, thus

9    arbitration may be required, even though it will require

10   several litigations and possibly lead to inconsistent

11   results."

12          It is not the nature of the bankruptcy case that

13   has caused this problem here.  The logistical issues arise

14   from the antecedent contracts that Purdue entered into

15   voluntarily over a course of time.  And given the strong

16   public policy favoring arbitrations, they can't -- they

17   can't walk away from them now because it is not convenient.

18          The other point I'd like to make about the

19   logistical problems with arbitrations -- nobody can tell

20   what the order will be of arbitrations, how many there will

21   be, what will happen, but if Purdue goes down the path of

22   arbitrations, typically what happens -- or what often

23   happens is you have some basic arbitrations that take place,

24   and decisions are rendered in those arbitrations, and that

25   gives the parties a pretty good idea of what -- how the

Page 34

1    issues are going to turn out, the legal issues as applied to

2    the facts.  And so while I certainly couldn't say there

3    aren't going to be a multiplicity of arbitrations, that

4    would not necessarily be the case (indiscernible) practice.

5    So the logistical problems with respect to the Plaintiffs

6    are a little bit overbroad.

7            THE COURT:  So in the Residential Capital case,

8    Judge Lane stayed arbitrations in respect of excess coverage

9    so that the litigation of the primary coverage could go

10   ahead first.  Do we have those issues here?  It's really a

11   question for both you and the Plaintiffs.

12           MR. AUSLANDER:  It's a little different here, Your

13   Honor, because in ResCap we were talking about the tower of

14   insurance, and the bottom layers were the ones that were

15   allowed to go first, and the top ones were stayed, as I

16   think Your Honor is pointing out.  Here, we're talking about

17   the entire tower, so it's not the case that this would

18   necessarily lend itself to a ResCap type of stay analysis.

19           The -- and I'll speak for my own clients on this.

20   There certainly can be discussion with Purdue about whether

21   it makes sense to go ahead with all of the arbitrations or

22   maybe some order of arbitrations to make it make more sense

23   than just having a free-for-all where everybody is kind of

24   free to demand arbitration on everybody else, which isn't

25   going to happen as a matter of practice.  And for my clients

Page 35

1    anyway, I certainly would commit to speaking to Purdue about

2    how to handle that -- the tower of arbitrations.

3            So that brings me to the end of the Plaintiffs'

4    arguments with respect to all of the insurers.  They also

5    make some arguments with respect to three of the insurers,

6    one of which is my client, AISLIC, Evanston, and Ironshore.

7            The first argument that they make is that those

8    policies issued by those insurance companies have service-

9    of-suit provisions.  Service-of-suit provisions essentially

10   say that if the insurance company doesn't pay the claim,

11   they agree to (indiscernible) jurisdiction (indiscernible).

12           The courts in this circuit have addressed this a

13   number of times and have explained that the service-of-suit

14   clause is not an alternative to arbitration, part and parcel

15   of arbitration, meaning the service-of-suit clause is there

16   so that if there's an arbitration award that is not paid by

17   the insurance company, the Plaintiff's policyholder can go

18   forward to enforce the arbitration award.

19           And it's pretty straightforward in this circuit.

20   One of the cases is a case called NECA Insurance, Ltd.

21   against National Union.  The Second Circuit has also spoken

22   on this issue in Montauk Oil Transportation against

23   Steamship Mutual.  So I think that's -- that is a bit of a -

24   - to use the overused expression -- red herring.

25           The next argument that the Plaintiffs make is with

Page 36

1    respect to just two of the policies, one issued by AISLIC

2    and one issued by Evanston.  And what they say there is that

3    the particular arbitration provisions in those agreements

4    are not broad enough to capture this insurance coverage

5    dispute

6           The provision itself says "in the event of a

7    disagreement as to the interpretation of the policy, the

8    disagreement shall be submitted to binding arbitration

9    before a panel (indiscernible)."

10          Now, the complaint itself in this case,

11   Plaintiffs' complaint itself, specifically alleges that

12   "Debtors are entitled to have the debtor's insurance

13   policies interpreted or construed in a manner that maximizes

14   insurance protection."  So right there we know that even the

15   Plaintiffs understand that there's going to have to be an

16   interpretation of the policies.

17          But even if they hadn't alleged it, we know that

18   anyway because insurance coverage disputes, particularly

19   complex ones like this, always involve and in this --

20   interpretations of the policies terms like bodily injury.

21   What is the occurrence in the context of opioids litigation

22   where the occurrence could mean many different things?  What

23   is the bodily injury when you have governments that are

24   suing the opioids manufacturers?  What constitutes that

25   bodily injury?  Is it when the person ingests?  Is it an

1    opioid when the person gets sick?  (Audio Drops) kinds of

2    issues that are going to come up, and they will involve

3    contract interpretation.

4            The Plaintiffs make an argument that I have to

5    confess I did not fully understand, which sounded like there

6    are predominantly factual issues that have to be resolved,

7    and that is somehow beyond the scope of the arbitration

8    provisions.  And if I've misinterpreted, I'm sure I'll be

9    told that shortly, but I'm not sure where that gets them

10   because in all cases there are mixed questions of policy

11   interpretation and factual issues.  That's the nature of

12   insurance coverage disputes.  And of course, there will be

13   (sound drops) interpretation that will have to rely on

14   whatever (sound drops).

15           THE COURT:  Well, I guess the issue here is

16   whether the arbitrations with respect to these two policies

17   would bleed over into determining the facts.  And I gather

18   from your argument that that would be precluded, that it

19   would really just be interpreting the language as applied to

20   agreed facts for purposes of the arbitration.

21           MR. AUSLANDER:  I don't know that the facts -- I

22   would have to say I don't know whether the facts will

23   necessarily be agreed.  But at the end of the day, there

24   will be facts.  And I would think that evidence will be

25   taken in the arbitration proceedings -- maybe, maybe not.

Page 38

1   Depends on what the parties end up stipulating to.

2              And so I don't want to discount the possibility

3   that there could be facts that overlap with policy

4   interpretation.  I think that will probably be the case.

5   But doubts, as you know, Your Honor, about whether an issue

6   is arbitrable or not, or a case is arbitrable or not, are

7   always decided, resolved in favor of arbitration in this

8   circuit.

9              So there is -- this is going to involve major

10  policy interpretation, and the fact that there may be some

11  factual issues that have to be decided as well doesn't alter

12  the fact that the case has to go to arbitration.

13             The final issue regarding the other -- the three

14  other insurance policies is an issue for Evanston Insurance

15  Company, not my client.  And so Evanston's counsel, Jodi

16  Green, may want to speak to that.  But before I turn the mic

17  over to her, I would ask you, Your Honor, do you have any

18  more questions for me?

19             THE COURT:  No, I don't at this point.

20             MR. AUSLANDER:  Thank you, Your Honor.  Ms. Green?

21  She may not have anything.

22             MS. GREEN:  Yes.  Good morning, Your Honor.

23             THE COURT:  Good morning.

24             MS. GREEN:  Jodi Green on behalf of Evanston

25  Insurance Company.  I hope you can hear me okay.

Page 39

1              THE COURT:  Yes, and see you.

2              MS. GREEN:  Great.  So I'll briefly address the

3      arguments made by the Debtors in respect of Evanston which

4      is, you know, at its core that Evanston is an excess follow

5      form insurance company.  The policy follows form to an

6      underlying controlling policy, which is as set forth in our

7      briefing the AISLIC policy or AIG policy.  Purdue asserts

8      that it is ambiguous as to what policy Evanston actually

9      follows and therefore states to the Court simply that the

10     policy should be construed against Evanston and in favor of

11     no arbitration.

12             Your Honor, that argument, it simply does not

13     follow.  Excess follow form policies are very common.  They

14     identify an underlying policy.  Purdue has not provided any

15     evidence to indicate that there is some other policy other

16     than the AIG or AISLIC policy that applies.  Instead, it

17     indicates in its briefing that during the policy periods at

18     issue, there may have been three underlying policies to

19     which Evanston followed form.  Curiously, Purdue does not

20     identify what those three policies potentially are, and

21     Evanston is not aware of any policy other than the AISLIC or

22     AIG policy, which we identified in our briefing and

23     declaration in support.

24             Essentially, to accept Purdue's argument that the

25     service-of-suit clause in the Evanston policy should control

Page 40

1   would be to accept that the policy has no operative coverage

2   grant, it has no operative terms because it follows no

3   identifiable policy.  If that were the case, there would

4   simply be no coverage at all, which is a result I doubt

5   Purdue intends.

6           So there is simply nothing to support Purdue's

7   bald assertion that the Evanston policy follows form from

8   three underlying policies.  There is only one.  The only

9   evidence submitted supports that proposition.

10          And the ambiguity argument, you know, essentially

11  under New York law, before turning to contra proferentem,

12  the Court should consider extrinsic evidence as -- and as I

13  stated, the only evidence submitted indicates that the

14  Evanston policy follows AISLIC and therefore incorporates

15  the arbitration clause, and arbitration should be compelled

16  for the reasons state previously.

17          Thank you.

18          THE COURT:  Okay.

19          MR. KOEPFF:  Your Honor, this is Paul Koepff for

20  Arch.  Can I have a few words to answer some of your

21  questions?  Would that be permissible?

22          THE COURT:  Sure.

23          MR. KOEPFF:  Thank you.  Your Honor, my name is

24  Paul Koepff.  I'm with Clyde and Co, and I represent Arch.

25  Let me first deal with a couple of questions because the

1    arbitration insurers obviously have conferred the Court

2    today.

3              And one question that came up was multiple

4    arbitrations.  All of us, I believe, are prepared to commit

5    not to commence arbitrations.  We're prepared to agree to a

6    stay on arbitrations.  That was the solution that happened

7    in ResCap.  And when we were before Judge Lane, we were at a

8    hearing, and the Bermuda insurers in ResCap all agreed to a

9    stay so that the ResCap plaintiffs could litigate.  And even

10   today, that stay is in effect.  Even today, the ResCap

11   plaintiffs are still litigating coverage agent the non-

12   arbitration insurers.

13             So yes we would (indiscernible) agree to a stay.

14   Your Honor could order a stay, and then we could work with

15   the Plaintiffs on (indiscernible).  Okay.  That's the first

16   point.

17             The second point is -- and this also happened in

18   ResCap.  I think it's in part an answer to your question.  I

19   don't think any arbitration insurer intends to litigate or

20   relitigate bankruptcy rulings such as if you approved the

21   settlement of the bankruptcy plan.  We committed to Judge

22   Lane in ResCap, and I'm sure the arbitration insurers here

23   would agree.  They're not going to relitigate what Your

24   Honor has ruled in the context of this bankruptcy.  There

25   are issues -- and this happened with Judge Lane.  He noted

Page 42

1    that.  Whether we could say we relinquish consent under the

2    policy is a different issue.  It's not a bankruptcy issue.

3    It's nothing that the bankruptcy court will decide in the

4    bankruptcy proceeding.

5            My client only got notice undisputed in August

6    2020.  We have no information at all to determine whether we

7    could consent or withhold consent, so we've reserved on that

8    issue, but that would be a kind of indicia that goes to the

9    arbitration if and when that happens.

10           Now let me deal with a couple of your questions.

11   You asked about pay-first policies.  I think the record is

12   clear not all the policies in this case are pay-first.  My

13   client followed form to underlying Liberty and Mutual

14   policy, which is not a pay-first.  There are other such

15   examples.

16           Number two, I think one point I really wanted to

17   stress in response to one of Your Honor's questions, we're

18   dealing with international arbitration agreements for the

19   Bermuda insurers, and the law is clear.  This was too with

20   Judge Glenn in MF Global, with Judge Lane in ResCap.

21   There's a case called Bethlehem Steel.  All of these courts

22   reconfigured international arbitration agreements get more

23   deferential treatment in this very area.  And that's what

24   those courts hold, and there's less discretion for the

25   bankruptcy judge to deal with that.

Page 43

1            I think that's all I have to say, Your Honor.

2    Thank you for your patience.

3            THE COURT:  Okay.  But as to the pay-first point,

4    Bethlehem and the statements of the law in the other two

5    cases really isn't specific as to pay-first.  It's just a

6    general proposition of law, right?

7            MR. KOEPFF:  It's a general proposition of law,

8    but I know it was relied upon in U.S. Lines.  I know it was

9    relied upon by Plaintiffs here.  All I'm saying is there are

10   a number of policies which even Plaintiffs concede are not

11   pay-first.  And even if they are pay-first, we say it

12   doesn't make a difference.  Yes, Your Honor.

13           THE COURT:  Okay.  Okay.  Anyone else want to

14   speak on the Defendants' side before we turn to the

15   Plaintiffs?

16           Okay.  Why don't I hear from the Plaintiffs then?

17           MR. BREENE:  Your Honor, Paul Breene, Reed Smith,

18   on behalf of Debtors.  Can you hear me okay?

19           THE COURT:  Yes, fine.  I can see you too.

20           MR. BREENE:  Thank you, Your Honor.

21           Your Honor, the insurance companies' motions are

22   asking this Court to deny jurisdiction over matters

23   affecting what we will show, and I think Your Honor will

24   agree, are core jurisdictional matters before this Court.

25   Instead, they would allow these matters to be handled by

Page 44

1    numerous arbitral panels in various jurisdictions around the
2    globe.
3            In fact, what Mr. Koepff just said is they'd be
4    more than happy to just stay them and wait a couple of years
5    and not do anything with these but not be bound.
6            This adversary proceeding is core under well-
7    established Second Circuit precedent, and we will go through
8    it.  Because the matter is core, the Court has discretion to
9    determine whether to enforce the arbitration clauses and
10   various insurance policies.
11           And you know, Your Honor, we believe this Court
12   should exercise its discretion in favor of bankruptcy code,
13   policies of efficiency and centralization, bankruptcy
14   proceedings which under the particular (indiscernible) and
15   unique facts of this case, frankly with which counsel who
16   have argued today have scrupulously avoided, will show that
17   the needs and the policies of the bankruptcy code are far
18   more compelling than the Federal Arbitration Act favoring
19   arbitration.
20           And Your Honor, I want to start sort of in the
21   middle here because at one point when -- you asked Mr.
22   Auslander a question, and the question really dealt with
23   whether not didn't U.S. Lines indicate that it might be
24   problematic if money that was designated for one
25   constituency or set of claimants had to be diverted to

Page 45

1    another constituency or set of claimants.

2           In fact, the U.S. Lines quote that I believe you

3    were referring to comes on Page 639 of U.S. Lines.  "If the

4    trust were initially to pay the claimant with assets

5    earmarked for other creditors, only to be informed

6    afterwards that the payments did not trigger the Clubs',"

7    that's the insurance companies in that instance,

8    "indemnification obligation, the results would be an

9    inequitable distribution among the creditors.  Therefore, in

10   order to effectuate an equitable distribution of bankruptcy

11   estate, a comprehensive declaratory judgment is required to

12   determine whether a chosen payment plan will trigger the

13   indemnification obligation, and two, the amounts payable

14   under the insurance contracts."

15          Now I believe that was the quote from U.S. Lines

16   that Your Honor was referring to.  And in response to that,

17   Mr. Auslander said it's not a problem here.  And he said

18   it's essentially not a problem here because he correctly

19   notes that under the plan, the PI -- the personal injury

20   claimants are slated to collect $300 million on the

21   effective date and that thereafter, assuming there is no

22   insurance recovery, they will get on a schedule that is set

23   forth in the plan 200 -- and additional $200 million by July

24   30th, 2024; an additional $100 million by July 30, 2025; an

25   additional $100 million by July 30, 2026.

1           So bringing the total that the -- that the

2    personal injury claimants could collect without any

3    insurance to 700 million.  And as Your Honor is I think

4    aware, the amount that they could collect assuming that we

5    are successful in pursuing the insurance coverage only

6    increases -- or does increase by $50 million.

7           But the more essential point here, and the point

8    that the arbitration-asserting insurance companies have

9    completely failed to reckon with in either their papers or

10   in their argument today is where does that additional $400

11   million come from?  It comes from the MDT Trust, and it is

12   the residual value of the estate.  And where is that money

13   earmarked to go now?  And this is exactly the concern that

14   the U.S. Lines court had expressed.  That money is currently

15   earmarked to go to the National Opioid Abatement Trust for

16   the benefit of state and municipal creditors, and it is

17   scheduled to go to the Tribe Trust for the benefit of the

18   tribe claimants.

19          All of that money, that 400 million which will

20   then be diverted away from abatement, will go to the claims.

21   So we're not just arguing here about the money that is

22   directly going to the claims.  That money has to come from

23   somewhere, and where it's coming from is out of the

24   abatement trust.  So let's just be clear why this matter is

25   so tied up with the success of the plan.

Page 47

1              THE COURT:  I guess to me, the difference is that

2     the beneficiaries of those two trusts have agreed to this

3     distribution.  They took the risk on it, which is probably

4     one of the reasons that it's only 50 million that would come

5     in from insurance recoveries thereafter.  That seems to be a

6     distinguishing -- a significant distinguishing fact from the

7     U.S. Lines case where the payments to the PI classes were

8     question marked as far as where they would be coming from if

9     there wasn't going to be insurance.

10             MR. BREENE:  Well, that's true, Your Honor.  But

11    what the Court said is, you know -- again, as I read U.S.

12    Lines, the money -- they're -- the money to go to the

13    asbestos personal injury claimants was not the only money in

14    the estate, and the money was going to be diverted, you

15    know, to the extent that there were the pay first

16    provisions, which the counsel has admitted the majority of

17    the policies involved in this case have pay first and, in

18    fact, you know, the Bermuda form policies are reimbursement

19    policies.  So whether they use the term pay first or

20    reimbursement, they will claim that the money has to be paid

21    first.

22             So the issue there is the -- yes.  The personal

23    injury claimants have taken this risk, but I'm not so sure

24    that the abatement trusts, although they are -- they -- this

25    is the way the plan is laid out, have potentially taken this

Page 48

1    risk.  I think that's what they are getting, and they are

2    hopefully and expecting to get the money that would

3    otherwise go to the personal injury claimants.  So --

4              THE COURT:  But doesn't the plan make it clear

5    that if the insurance -- I think they do know that that's

6    the risk they're taking, unlike in U.S. Lines.  I guess

7    that's -- again, I mean, that's how I distinguish the two.

8              MR. BREENE:  So Your Honor, the -- let's go to

9    another case that's relied upon by claimants, and that's

10   ResCap because I think that, you know, Judge Lane's decision

11   there is somewhat instructive.

12             Now, he found that the matter was not a core

13   proceeding, but he -- if you look at the reasoning there,

14   first of all, it did not involve the pay first issue.  It

15   was distinguishable from U.S. Lines on those -- on that

16   ground.  But a very important point, and this really goes to

17   Mr. Koepff's point on the stay issue, is it was unclear --

18   entirely unclear -- whether or not the third level excess

19   policies in ResCap were even going to be reached.

20             I think that the insurance companies here, and I

21   think the arguing counsel have conceded that, you know, in

22   all likelihood, all of the coverage that is available will

23   be reached and exceeded.  The alleged liabilities of Purdue

24   and the estate vastly exceed the available insurance here.

25   So those are major distinguishing factors.  But even with

1    those major extinguishing factors -- and the judge decided

2    to stay this for two other reasons.  One is he was concerned

3    about the possibility with a few different arbitrations of

4    getting inconsistent results.  And secondly, he was

5    concerned about the expense.

6            And Your Honor, I wanted to focus for a moment on

7    the expense issue.  While the counsel has been clear that

8    they are willing to talk about a stay, and Mr. Auslander has

9    indicated that he's willing to discuss something -- I wasn't

10   exactly clear -- with regard to whether or not we wouldn't

11   have to go to as many arbitrations as currently they're

12   seeking, which appears to be a minimum of 16 and potentially

13   more.  And the question then becomes, in terms of this

14   Court's management of the estate, and especially the Court's

15   administration of all of the property in the bankruptcy

16   possession, which is a core aspect of any bankruptcy.  The

17   expense of our pursuing the adversary proceeding before Your

18   Honor, which no one disagrees will continue, whether it be

19   before Your Honor or whether it be in the district court,

20   which is a motion that has been made but not argued, that

21   motion will go forward.  In addition, I don't believe that

22   Purdue -- although, you know, I don't want to make a

23   commitment at this moment -- but the idea that the potential

24   to collect the arbitration funds should be put off until the

25   -- this Court determines the -- how the adversary proceeding

Page 50

1     comes out is frankly not attractive, and no one here has

2     committed to be bound by this Court's rulings in this

3     adversary proceeding.

4             So what we would be -- we would end up with under

5     such a scenario would be that this Court would move forward.

6     The -- potentially -- we believe it's potentially $2 billion

7     of Bermuda form coverage, or close to it.  The potential for

8     that coverage could simply stand in obeyance and then a

9     year-plus from now, according to the schedule that we

10    provided, that we agreed to with at least -- with the non-

11    moving insurance companies, there would be no decision in

12    this case until approximately a year or so from -- about a

13    year and a half from now.  And all that time, we would not

14    be pursuing the arbitrations.

15            Then the arbitrations would start, 16 of them, and

16    the amount of money -- let's just talk about how an

17    arbitration -- a London arbitration -- works.  You know,

18    London arbitration, all of the insurance company, all of the

19    law firms that are involved here today will likely continue

20    to be involved because these are new -- the policies call

21    for New York law.  And in every arbitration that I've been

22    involved in, New York lawyers have been -- you know, they're

23    working on the matter, handling the matter with respect to

24    their New York expertise.

25            On top of that, you add a layer of London

Page 51

1    solicitors.  On top of that, you add a barrister, who is the

2    person who actually presents the arbitration.  And then on

3    top of that, you add three paid arbitrators.  You've got

4    each party paying an arbitrator, and then the parties will

5    split the neutral arbitrator.

6            So that is an expensive process and, you know --

7    but it's multiplied now by 16.  What we're talking about now

8    is not an insubstantial but a very material cost to the

9    estate where money that could otherwise be going into

10   abatement and having a centralized uniform decision and

11   afford this Court in the adversary proceeding so that all of

12   the insurance issues were decided in one place, as is

13   favored by the bankruptcy court.

14           So the determination of whether or not to allow

15   the arbitration to go forward or not is a determination as

16   to whether or not the policies and the point of the

17   bankruptcy code of centralizing and maximizing the assets

18   that the -- that the Debtor has are undermined and seriously

19   jeopardized by spreading this out into 16 separate

20   arbitrations.

21           Your Honor, we submit that it would and that it

22   would not -- that it would do that in a way that would, A,

23   waste estate assets; B, significantly delay the

24   determination because even if we were to go to arbitration

25   tomorrow, the number of arbitrators who are qualified -- and

Page 52

1   this is a small world.  I don't know that you could get

2   arbitrators who are able to do 16 arbitrations within the

3   next couple of years.  I think that there would be a long

4   wait and they would have to be done seriatim because I don't

5   think there are enough people to do these arbitrations.

6           So then we get, Your Honor, to the consent to

7   settlement issue.

8           THE COURT:  Well, before we --

9           MR. BREENE:  Your Honor --

10          THE COURT:  Before we get there, I frankly don't

11   see a discussion of cost or delay in ResCap or any of the

12   other cases.

13          What I -- what I do see in some of the cases is a

14   concern that one should not direct arbitration if the very

15   cost of arbitration can't be borne by the estate.  For

16   example, if you have an insolvent Chapter 7 estate, it

17   literally has no cash, so it can't pay for an arbitrator,

18   courts will not direct arbitration.

19          But it seems to me that in ResCap, the Court was

20   totally focused on the fact that it had retained

21   jurisdiction under the plan to determine the primary insurer

22   coverage issues and did not want the excess layers which

23   followed that -- those policies -- to be arbitrated

24   separately with the risk of inconsistent results, and I

25   guess there would be in addition to that inefficiencies.

Page 53

1              But I don't -- what's missing on that point here,

2      and maybe you can point it out to me, is whether the

3      litigation that would stay in the bankruptcy court or, if

4      the reference, is withdrawn, in the district court over the

5      policies that don't have arbitration provisions is the same

6      as far as claim or issue preclusion that would be dealt with

7      in the arbitrations.

8              I mean, it's one thing to say that, as Judge Lane

9      did, that if that is the case, then you should stage these

10     in a way that decides the controlling issue, and then the

11     excess coverage follows along with it.  But if they're

12     different policies with different issues, then I'm having a

13     hard time seeing why you wouldn't just proceed with both.

14             And I think Mr. Koepff was volunteering that the

15     Defendants would basically let the Plaintiffs choose the

16     order of litigation.  But, you know, if you determine that

17     they were different policies and different issues, it would

18     seem to me that you would say, well, we're going to go ahead

19     in the bankruptcy court and the district court with the ones

20     that don't have arbitration provisions, and we'll go ahead

21     right away with at least the key ones in the -- in the

22     London arbitration and maybe stage the ones further up the

23     tower to follow, so that, you know, we can set that

24     precedent there.

25             Am I missing something?  I mean, I -- it seems to

Page 54

1    me that's a choice the Plaintiffs have, and I certainly see

2    authority for letting them have it, and I think the

3    Defendants do too, which is why they offered that up.

4            MR. BREENE:  Your Honor, let me -- let me try to

5    address the issue preclusion argument first.  I mean, I

6    believe that there will be significant overlap in terms of

7    the issues that will be litigated between the non-

8    arbitration-asserting insurance companies and the

9    arbitration-asserting insurance companies.

10           THE COURT:  Is that because -- is that because the

11   policies are essentially the same; they have the same

12   language?

13           MR. BREENE:  They are not -- they are not the

14   same, Your Honor.

15           THE COURT:  Okay.

16           MR. BREENE:  They -- the concepts are very

17   similar, and they're -- the -- while the language is not

18   identical, they -- which is why, frankly, that I don't want

19   to commit that there would be no issue preclusion.  I think

20   that we would have to look at that and might be able to

21   argue that.  But the -- there is different language but

22   overarching concepts which are similar.

23           The concept of -- you know, the easiest one is,

24   you know, whether or not the damages were expected or

25   intended from the standpoint of the insured.  That would be

Page 55

1    an issue in the adversary proceeding with the non-

2    arbitration clause insurance companies, and it will be an

3    issue with respect to the arbitration clause.

4         Now, so one of the dangers that we have here is

5    this Court could come to some conclusion.  I strongly

6    suspect that the arbitration-asserting insurance companies

7    will assert that whatever this Court decides on that issue

8    will not find them in their arbitrations.  And as the Court

9    is aware, those arbitration proceedings are confidential.

10   The -- what happens in them, what -- where the panels go

11   with the issues they get will remain secret and will not be

12   disclosed.

13        So the -- you know, and I believe that was an

14   issue that Judge Lane, you know, was concerned about, the

15   thought that there could be decisions that would be very

16   inconsistent, and that was one of his concerns in terms of

17   staying the arbitrations.

18        But again, staying the arbitrations while, you

19   know, tentatively offered here by Mr. Koepff, is really to

20   my mind not an attractive option for the purpose of the

21   plan, which is to maximize and, even more importantly,

22   expedite getting dollars into the hands of the abatement

23   trusts.  And to the -- so to the extent that we delay and

24   delay and delay and don't even start going through the

25   arbitration-asserting insurance policies until sometime

Page 56

1    after this Court decides the non-arbitration, that to me is

2    significantly defeating one of the main points that, as I

3    understand the plan to be attempting to accomplish.

4            THE COURT:  Well, that may be the case.  But I'm

5    not aware of any case that really goes off on that grounds

6    to deny the application of an arbitration provision.

7            MR. BREENE:  True enough, Your Honor, but one of

8    the things that I would like to point out is that there is

9    no case like this.  I'm not -- I mean, U.S. Lines -- I was

10   trying to figure it out.  U.S. Lines did involve 40 years'

11   worth of Club coverage and potentially -- it doesn't go off

12   on this issue and doesn't really address it, but you know,

13   potentially U.S. Lines had multiple -- many multiples of

14   arbitrations that would be faced if the matter were sent to

15   arbitration.

16           But other than U.S. Lines, I'm simply not aware,

17   Your Honor, of any Court that has been faced with a

18   situation where 16 discrete arbitrations were being

19   contemplated, and the Court said, "That's okay.  That

20   doesn't, you know, jeopardize the purpose of the plan.  That

21   doesn't threaten the core jurisdiction of this Court."

22   There is no such case.  I agree.  There's been no such case

23   because none of the cases being cited -- I mean, you know,

24   look at MF Global, which is one of the cases cited by the

25   insurance companies here.  That involved one insurance

Page 57

1    policy for $15 million with respect to a multibillion-dollar

2    bankruptcy.

3          The reality is here -- and I know that the --

4    those who have argued have tried to diminish the potential

5    size of the asset that we're talking about, but the

6    Plaintiffs here, you know, we have -- we've always said that

7    the -- we believe that the potential amount of coverage that

8    could be collected by the estate is in excess of $3.3

9    billion.  We now believe it's closer to $3.9 billion.  And

10   if you -- if you look at the various values of what else is

11   being contributed to this estate, while I don't have an

12   exact figure for you, this is a very substantial potential

13   asset of this estate, which we agree -- and we have never

14   taken the position that because it's property of the estate,

15   even because it's a substantial piece of property of the

16   estate, that alone renders it core.

17         But the other factors that are at play here, and

18   we haven't yet gotten to one that I think is very

19   significant, and that is the consent to settle.

20         The consent to settlement, which is in, you know,

21   either (indiscernible) which in one way or another is in

22   essentially all of these policies I believe puts at issue

23   the fact that the plan itself purports to settle, Section

24   5.2 of the fifth amended plan.  The plan itself purports to

25   accomplish a settlement of these claims.

1              And what I think the insurance companies intend to

2       do -- and I've heard absolutely nothing other than, you

3       know, trying to self-peddle the issue that would lead me to

4       -- give me comfort or, frankly, Your Honor, that should give

5       you comfort that in their arbitrations, they will take the

6       position that by accomplishing the settlement that this

7       Court we hope will end up confirming in this plan, the

8       policyholder has violated the policy and somehow avoided

9       coverage.

10             You know, we don't -- and again, I can't say that

11      they will take that position, but they have certainly not

12      said that they will not take that position.  And in fact,

13      when we raised that issue in our opposition, what came back

14      in the reply is what -- sort of a statement that, well, that

15      may all be well and good.  Maybe we will.  Maybe we won't.

16      But these are confidential arbitrations, so you know, it

17      won't affect anybody else.

18             So I think that the other aspect that renders this

19      core is that it -- there will be a question in the insurance

20      coverage case as to the actual settlement and actual -- what

21      was actually done in this plan.  And to me, the most

22      appropriate case for those coverage issues, which won't go

23      away, Your Honor, just simply because the matter is core and

24      is going to be decided in front of you rather than in front

25      of 16 arbitral panels, but it will be decided by the judge

Page 59

1    who oversaw the plan and has intimate knowledge of

2    everything that occurred and an understanding of what

3    occurred and the context of it.  And we believe that's where

4    this case belongs.

5              THE COURT:  Well, let me explore that for a

6    minute.  I mean, this is something that would come up if it

7    comes up at all, and I think you're probably right, at least

8    some insurer will probably assert it, but it will only

9    happen in the future.

10             Before it happens, there will have been a ruling

11   on the plan and the request for confirmation of the plan,

12   which will have been on notice to the insurers.  And I'm

13   assuming there will be an order that sets forth the Court's

14   findings and conclusions, including with respect to the

15   settlement embodied in the plan.  So to me, that's a fact

16   that would be among the facts that would be put in front of

17   the arbitration panel if I permitted the arbitration to go

18   forward.

19             I'm just not sure beyond that fact what there is

20   to interpret.  I mean, it's a fact like other facts, like

21   the facts about the amount of the claims or what year they

22   occurred in, and whether they were occasioned by, you know,

23   directly taking OxyContin or something else.  So I'm just --

24   again, I'm having a hard time seeing why the application of

25   that fact to the policy would be a core bankruptcy

Page 60

1    determination.  I would've already made the determination,

2    in other words.

3            MR. BREENE:  Right, and the argument that what you

4    did -- what you approved in the bankruptcy is -- has

5    resulted in the voiding of coverage.  In my view, that goes

6    directly to the administration of the plan and of the

7    bankrupt estate and renders the matter core.

8            THE COURT:  Well, but --

9            MR. BREENE:  And --

10           THE COURT:  But again, that would be a consequence

11   of the plan, not a determination of what the plan did.  It

12   would just be a consequence of it.  I mean --

13           MR. BREENE:  I think the -- I think the --

14           THE COURT:  For example, if the plan approves two

15   new tranches of post-confirmation debt to replace the

16   prepetition debt, and one is senior secured and one is

17   junior secured, and the documents laying out the extent of

18   the subordination are attached to the plan and approved by

19   the Court, then later there's a lawsuit between the seniors

20   and the juniors as to whether a particular piece of

21   collateral or a particular portion of the debt really is

22   subordinated: I don't think that dispute would be a core

23   dispute unless it's a dispute as to what the plan actually

24   said.  But if it's just a dispute based on the documents,

25   one's looking to enforce a document this way and the other

Page 61

1    that way, and the plan just approved the documents, it

2    didn't interpret them, I don't see how that would be a core

3    dispute.

4

5              I mean, I would contrast the Netflix case, the

6    Netflix-Relativity Media case, where the Circuit had the

7    view that the plan basically resolved how the streaming

8    would be dealt with, and the rights as between Netflix and

9    Relativity Media, and it was trying to be relitigated

10   elsewhere, and the Court said no, it should be litigated in

11   the bankruptcy court because it was the bankruptcy court's

12   determination.  And to the extent it would be interpreted,

13   the bankruptcy court should interpret it.

14             So I'm not sure how that really is core.

15             MR. BREENE:  Well, Your Honor, isn't that similar

16   to --

17             THE COURT:  I mean, clearly it's an issue that

18   would potentially have some aspects determined by the

19   confirmation order.  But again, to me that's just a fact.

20   Unless people are saying you have to interpret that order,

21   then I think you start a lawsuit here as to how it would be

22   interpreted.

23             MR. BREENE:  Your Honor, I think what's going --

24   you know, again, I guess I -- my view on that is that the --

25   part of the findings in the plan will be the fairness and

Page 62

1    reasonableness of the settlement.  And what I think we're

2    arguing here is that those functions of this Court in

3    approving that plan are going to be directly challenged by

4    the arbitrations, and the better place for the

5    determinations to be made as to whether or not there are any

6    -- there is any value in those claims and in those potential

7    defenses is before this Court.  We believe it goes to this

8    Court's specific jurisdiction, and that's why this Court

9    should exercise its discretion in retaining that

10   jurisdiction.

11            THE COURT:  Okay.

12            MR. BREENE:  Your Honor, one other point to be --

13   to be made here is, again -- and it does go to the

14   wastefulness of sending this out to 16 separate arbitrations

15   -- and that is that -- what we've determined is that of the

16   -- of the counsel representation the arbitration-asserting

17   insurance companies, 13 out of the 16 are involved in and

18   representing groups that do not have arbitration provisions.

19            So what we're going to have is essentially the

20   same lawyers doing the adversary proceeding before this

21   Court as well as 16 additional separate arbitrations.  In

22   our view, this is a massive waste of the state's assets.

23   And again, I already went through what those costs could be,

24   but we believe it could be tens upon tens of millions of

25   dollars.  It is not some insignificant amount or trivial

Page 63

1    amount.  That is additional costs that could be

2    (indiscernible) on, you know, going to abatement trusts or

3    the other purposes of the plan.

4           Your Honor, I think we've gone through the basic

5    arguments there.  Just if I -- if I could, just with respect

6    to the argument with respect to the three other -- the three

7    policies that we believe do not contain arbitration clauses

8    that could be effective here.

9           First, and I'll go through the argument very

10   quickly, Your Honor.  As an initial matter, the one Second

11   Circuit case relied upon by the insurance companies as

12   Montauk Oil.  Now, in Montauk Oil, the issue with -- in all

13   these cases is that there's an arbitration clause which says

14   you go to arbitration.  But then there is a service-of-suit

15   clause that says that the debtor or the policyholder can

16   bring suit, and the insurance company will consent to the

17   jurisdiction in any jurisdiction in the U.S.  So those are

18   in conflict.  And, you know, there are various ways that you

19   can read them.

20          But in the Montauk case, and in several of the

21   other cases cited by the insurance companies in this

22   instance, there was an additional clause and it said the New

23   York suable clause does not vitiate its contractual right to

24   arbitrate given its clear statement that it shall not change

25   the contractual or other substantive rights and obligations

Page 64

1   of the association or of the member.

2           So there was a saving clause there that basically

3   said it's not changing the duty to arbitrate, and that's

4   exactly what that Montauk case decided on.  The other

5   district court cases I think had very similar language.

6           There is no similar language in this case.  They

7   don't have the saving language, so you're left with two

8   arguably inconsistent provisions, but we believe the

9   decision in (indiscernible) was the right one that you can

10  reconcile them by basically saying, yes, there's the right

11  to arbitration, but then the policyholder itself has a

12  unilateral right to bring an action in the U.S. on the same

13  matter.

14          And the couple of cases that were cited where the

15  way that the Courts tried to reconcile to was to say, yes,

16  well, they consent to service of suit, but only with respect

17  to an award that has been issued by the arbitration panel.

18  Well, Your Honor, that language doesn't exist.  So what

19  those courts have done is read into the policy an additional

20  provision which, you know, they can't really do to make a

21  contract that's better than the one that the insurance

22  companies had sold.  So that's that issue.

23          The next issue, Your Honor, I think with respect

24  to the narrow arbitration provision for AIG that it -- that

25  it deals with interpretation of policies.  Well, Your Honor,

Page 65

1    we freely admit and we did admit that, you know, any dispute

2    here is going to be a mixed question.  There will be

3    interpretation issues.  There will be factual disputes.  But

4    what was agreed to be submitted were only the interpretation

5    issues, so if we read that arbitration clause, it -- and I

6    think Counsel had agreed, there were arbitration -- there

7    were -- while there will be interpretation issues, they

8    don't -- we have not agreed to arbitrate factual issues.  So

9    given that dichotomy, we don't believe that that particular

10   arbitration clause is broad enough to send the matter to

11   arbitration.

12        And finally, Your Honor, with respect to the

13   Evanston policy, it is simply unclear as to what policy --

14   the Evanston policy says that it follows form to

15   AISLIC/Munich, and we did identify the Munich policy that

16   was there, and the Munich policy does not contain an

17   arbitration clause, so there -- we do not believe there's an

18   operable arbitration clause in the Evanston policy, and we

19   think that the Court should (indiscernible).

20        THE COURT:  Well, let me make sure I have the

21   record on this.  The Evanston policy language that says it

22   follows the form you say identifies a specific AIG policy?

23        MR. BREENE:  It does not, Your Honor.  It doesn't

24   -- if it referred to a specific AIG policy -- I believe the

25   language that's in there -- that's in the -- let me just

Page 66

1    find it.  All it says, Your Honor is "AIG/Munich American."

2    Well, those are two different policies.  The policy period

3    that is given is somewhat different than the policy period

4    of the AISLIC policy.  So the policy period that's given in

5    the policy for the -- for the policy to which it follows

6    form 7-1-2000 to 10-1-2003.  The AISLIC policy in fact is --

7    the policy period is 10-1-2000 to 10-2-2003, you know, not

8    vastly different but different enough that there certainly

9    is a question as to whether it's the AIG policy, and the

10   Munich-American policy doesn't have an arbitration

11   provision.

12            THE COURT:  Well, that -- I guess that's my

13   question.  Do I have that policy somewhere in the record?

14            MR. BREENE:  I believe we do, Your Honor, but I'm

15   just going to check that out.

16            THE COURT:  Ms. Green, can you -- do you -- is

17   that policy in the record?

18            MS. GREEN:  Yes, Your Honor.  I can answer that.

19   It's not unclear.  Counsel says it's unclear which policy it

20   follows.  There is no Munich policy.  I'm not aware of one.

21   I have never seen one, and there was never one put into the

22   -- into the record by counsel for the Plaintiffs.

23            MR. BREENE:  Your Honor, there -- it's actually

24   the -- I believe it's actually the Gulf policy, Your Honor.

25   I think Munich was the reinsurer is my understanding.

1          THE COURT:  Well, do I have -- do I have it in the

2    record, whatever it is?  I mean, I think I have the AIG one,

3    right?  That's the one that has the arbitration provision.

4          MR. BREENE:  Your Honor, I believe it's in the

5    record, but I'm just trying to check here because I don't

6    want to represent if I'm not certain.

7          THE COURT:  Okay.

8          MS. GREEN:  And I can represent that the

9    AIG/AISLIC policy is in the record.  We put it in.  And

10   there is no Munich policy to which Plaintiffs refer.

11         THE COURT:  Okay.

12         MR. BREENE:  Yeah.  Your Honor, it's the Gulf

13   policy, and it is in the record.  The Munich policy referred

14   to in the AIG policy, they were simply referring to the --

15   let me see if I can get the actual document number.  It's

16   the Gulf policy that we -- the quote is to what's actually

17   in the Evanston policy, but let's see.  If you -- if you

18   take a look at Exhibit A, schedule of Debtor's insurance

19   policies to the complaint.  And it is Document 1, and

20   there's a -- there's a listing of all the policies, and it's

21   the Gulf underwriter's policy for 10-1-2002 to 10-1-2003.

22         THE COURT:  But how do I get to Gulf Underwriters

23   from AIG/Munich-American.

24         MR. BREENE:  Your Honor, it's my -- my

25   understanding is that -- again, that was what was written on

Page 68

1    the policy, and Gulf was -- my best understanding, Gulf was

2    the paper that was ultimately issued, but the -- but it was

3    -- but it was reinsured by Munich-American.  That's why

4    there's a little bit of a confusion.  And AIG and Gulf

5    shared that umbrella layer in a 50-50, so they shared the

6    layer.  There were two policies there, and the question is

7    which one did the Evanston policy follow form to?  It's got

8    both.

9             MS. GREEN:  Your Honor, may I say something to

10   clarify the record, please?

11            THE COURT:  Well, I just -- you can in a second.

12   I just had a question.  So Munich-American was the

13   reinsurance for the Gulf policy?

14            MR. BREENE:  That is my understanding, Your Honor.

15            THE COURT:  And Evanston is a layer above that?

16            MR. BREENE:  Evanston's above that.

17            THE COURT:  So --

18            MR. BREENE:  But the policy -- the policy to which

19   it refers ultimately is -- we believe is the Gulf policy.

20            THE COURT:  Well, but the -- but we don't have the

21   Munich-American one?

22            MR. BREENE:  No, the Gulf -- the Munich-American

23   one is the reinsurance.  It's not the -- it's not the paper

24   that was ultimately issued that -- even though it's referred

25   to in the Evanston policy, sometimes those things will

Page 69

1    change.  And what ultimately was issued in terms of the

2    actual paper that -- and the company that issued the policy

3    was the Gulf Insurance Company.

4              THE COURT:  Well, I know there's a list of the

5    policies, but do I actually have the policy that has the

6    absent arbitration provision -- that doesn't have an

7    arbitration provision, I mean?

8              MR. BREENE:  I'm going to go through.  I believe

9    that you do, Your Honor.  Let me -- let me find it.

10             THE COURT:  Right.  I think we may just have

11   excerpts that quote the arbitration provisions.  In any

12   event, Ms. Green, you were going to say something, and I

13   wanted to get my questions answered.

14             MR. BREENE:  Your Honor, I do not believe the Gulf

15   policy is an exhibit.

16             THE COURT:  Okay.  All right.  So Ms. Green, you

17   were going to say something?

18             MS. GREEN:  Yes.  I think it's important to

19   clarify a couple of things.  First of all, Counsel

20   identified a Gulf policy which it says controls.  None of

21   this was put into the record as evidence in support of

22   Plaintiffs' opposition.

23             In addition, you know, the assertion by

24   Plaintiffs' counsel that the Gulf policy period identified

25   in the complaint or the exhibit to the complaint is a period

Page 70

1    from 2002 to 2003 is significant in that the Evanston policy

2    terminated in October of 2001, and therefore it could not

3    possibly follow form to a policy period that incepted after

4    it terminated.

5              MR. BREENE:  Your Honor, with respect to that, I

6    think there is a disagreement between Plaintiff and Evanston

7    as to whether or not that policy ended.  I think that's one

8    of the issues in the litigation.

9              THE COURT:  Okay.

10             MR. BREENE:  Your Honor, if you have no further

11   questions for me, I don't think I have anything further on

12   this.

13             THE COURT:  Okay.  Fine.  I'm happy to hear a

14   brief response to the -- to those arguments.

15             MR. BREENE:  And Your Honor, just as a last point,

16   if the Court would like, we of course are willing to submit

17   the policy if the Court would like to see that policy.

18             THE COURT:  Okay.  Actually, before we -- before

19   we get to the Defendant's responses, let me just deal with

20   the issue of the facts and interpretation being intertwined.

21             Do you believe that you can in an order provide --

22   or I in an order can provide that the arbitration in respect

23   of the three policies that have the interpretation

24   arbitration provision would be confined to issues of pure

25   interpretation and/or agreed facts as applied to those

Page 71

1    issues or uncontested facts?  That's a question for Mr.

2    Breene.

3              MR. BREENE:  Yeah.  I realize it's a question for

4    me.  I'm thinking about whether I can answer it.  I -- it

5    may be possible.  I don't believe I've ever seen it, but I

6    think, again, getting back to the -- where we are in the

7    context of this bankruptcy estate, while it would arguably -

8    - the Court I guess would -- you would feel that the Court

9    is providing enforcement of the arbitration provision as

10   written.

11             It would by the same token essentially double the

12   work and the expense.  We'd end up doing an arbitration to

13   determine -- I don't know that there would be agreed-upon

14   facts.  I mean, certainly parties -- the Court could direct

15   the party to try to work toward agreed-upon facts.  And

16   there could, I guess, be an interpretation -- pure

17   interpretation based upon agreed-upon facts if we could come

18   to some landing on that.  I do think that there will likely

19   be some disputed facts.  And to the extent that there are,

20   such a, you know, solution, frankly, may be more difficult

21   than not.

22             THE COURT:  Well, I mean, you could also say that

23   it'll be limited to -- without any fact finding except just

24   the interpretation of the agreement.  That would be a fairly

25   short arbitration, I would think, because you would have --

Page 72

1    it would basically be a summary judgment type of

2    determination or judgment on the pleadings determination.

3    And the parties of course would be free to say no, we'll go

4    farther, if they want to.  And --

5              MR. BREENE:  I think at the -- I think then at the

6    end of the day, you'd come in with an interpretation in a

7    vacuum, and given -- what typically would happen here is

8    then there would likely -- even though we've got an

9    interpretation mandated by an arbitral panel, we may very

10   well end up in an additional litigation over how those facts

11   apply to that interpretation.

12             THE COURT:  Okay.  Although, Mr. Auslander will

13   say, well, if that's the case, then that highlights why the

14   courts are generally inclined to have an arbitration of

15   mixed law and fact being included in these types of

16   arbitrations.

17             Okay.  So why don't I -- why don't I hear any

18   response to these arguments?

19             MR. AUSLANDER:  Yes.  Thank you, Your Honor.  This

20   is Mitchell Auslander again, and that is exactly what I

21   would say, although I couldn't say it any better.

22             I do agree with Mr. Breene that it would be very

23   difficult if not impossible to come up with an agreed set of

24   facts, and I don't know that it is possible to have an

25   arbitration just on contract interpretation issues when we

Page 73

1    have difficult other issues in the context of opioids, such

2    as what is an occurrence?  What happens?  I don't think you

3    can say what is an occurrence without understanding what

4    happens, so I think it is a mixed question.

5            But coming back to a question you asked Mr.

6    Breene, you asked him if the forms of the non-arbitration

7    insurers, the insurance policy forms, are the same as the

8    arbitration policies forms, and they are -- they're not.

9    Mr. Breene answered with a common issue that might be --

10   might be handled in both -- under both policies, but the

11   forms are quite different.  The Bermuda forms have

12   integrated occurrence provisions and (indiscernible)

13   contracts do not contain those provisions.

14           In my client's case in particular, one of our

15   arbitration forms has a provision that says that you don't

16   have coverage if you -- if you declare an integrated

17   occurrence and you continue to sell the product anyway.

18   That is -- that's relatively unique to that form.  That is

19   not present in the non-arbitration provisions, and it

20   actually goes on, but the answer is they're different.

21           Mr. Breene kept saying there will be 16

22   arbitrations.  I couldn't say with any certainty that there

23   won't be 16 arbitrations, but I can say with a very high

24   degree of probability that there are not going to be 16

25   arbitrations.  That's just not the way these cases work out,

Page 74

1    as I indicated before.

2            And we're going to -- we will work through if they

3    want to go forward with their arbitrations, but we'll be

4    (indiscernible) in some way that makes sense to all the

5    parties, and at some point it will stop because it will

6    become clear what the results are.  So I think the 16

7    arbitrations is really a bogey and doesn't really come into

8    play here as a practical matter.

9            And the last thing I would point out is the -- Mr.

10   Breene made a point that there's so much insurance here that

11   that should matter.  I've already explained why that is not

12   the case under the law, but there are in fact cases where

13   there's a lot of insurance involved, and they're not deemed

14   to be core.  The Roman Catholic Diocese case, which involved

15   insurance coverage for sexual abuse cases, I don't know how

16   much insurance it was, but it would have been a lot.

17           THE COURT:  Right, although that wasn't an

18   arbitration case.  That was just a core versus non-core

19   case.

20           MR. AUSLANDER:  That's true, and it was not core

21   even though there was all of this insurance that was argued

22   to be so important to the -- to the (indiscernible).

23           THE COURT:  Right.  On the other hand, I could --

24   I could see a court -- if the insurance issues were

25   fundamental to negotiating a plan and parceling out the

Page 75

1    Debtor's assets, staying the arbitration so that they could

2    be dealt with in connection with the plan process, but the

3    next thing you're going to tell me is that's not the case

4    here.

5             MR. AUSLANDER:  Thank you, Your Honor.  That's

6    (indiscernible).

7             MR. BREENE:  Your Honor, if I could respond very,

8    very briefly to one point.  You know, Mr. Auslander and also

9    Mr.  Koepff have suggested that the way this could work is

10   you could start with the lower level and work your way up,

11   and maybe you only have to have one, or two, or three

12   arbitrations, and then everybody would say which way the

13   wind was blowing.  But Your Honor, that has never been our

14   experience.

15            And in fact, these are -- these are secret

16   results.  No one's allowed to discuss what occurs in any

17   particular arbitration.  They're non-precedential, so even

18   if there were a loss or a win in front of one arbitration

19   panel, that will have no precedential value whatsoever over

20   the next arbitral panel.  So the idea that, you know, "this

21   is not such a big problem.  It'll be, you know, taken care

22   of," that is not our experience, and I don't hear anyone

23   committing to it simply suggesting maybe this is the way it

24   could work.  It hasn't worked that way in our experience in

25   the past, and because no arbitral panel will know what the

1    other arbitral panel decided on any of these issues, it will

2    be Groundhog Day all over again, every time, over those 16

3    arbitrations.

4            MR. KOEPFF:  Your Honor, this is Paul Koepff.

5    Could I have two minutes to say a few things in reply, Your

6    Honor?

7            THE COURT:  Okay.

8            MR. KOEPFF:  In ResCap, the third layer, the

9    Bermuda layer, was definitely implicated -- it was still

10   implicated.  Our attachment point was 300 billion.  The

11   amount at stake was over 300 billion, and that didn't even

12   count impairment of underlying limits.

13           Number two, I thought I was being helpful to

14   Purdue and the creditors committee by offering a stay.  In

15   ResCap, the plaintiffs wanted a stay because they wanted to

16   focus on the litigation in the bankruptcy court before the

17   domestic insurers.  If Purdue doesn't want a stay, that's

18   their choice.  We would actually agree with what Mr.

19   Auslander suggested.  Stay, and let's talk about what makes

20   sense.  There are ways to coordinate this.  We all talk.

21   And I can say that arbitration insurers have worked really

22   well together as a group, so we are prepared to make that

23   commitment.  We're prepared to talk about that if and when

24   Mr. Breene wants to.

25           Your Honor mentioned this thing about rulings that

Page 77

```
 1    you would render, and that would be a fact, and you had an

 2    engaging colloquy with Mr. Breene about that.  We do these

 3    Bermuda form arbitrations, London, all the time.  And what

 4    happens is we treat rulings by a bankruptcy court or some

 5    other court as a fact.  We don't go to the tribunal and say,

 6    "Well, Judge Drain did this ruling, but he -- it should be

 7    revised."  No.  I said before, as we did in ResCap and I say

 8    here the arbitration insurers are committing not to

 9    relitigate a revised -- seek to revise your rulings in the

10    bankruptcy court.  Those are facts that we take as are the

11    facts.

12            The last point I want to make is in the Second

13    Circuit and in this court, traditional coverage actions are

14    deemed non-core.  That's the general rule.  Traditional

15    coverage actions are non-core.  That's what Judge Glenn

16    said, MF Global; what Judge Lane said; I believe that was

17    also said by the U.S. Lines at Second Circuit.  That's what

18    we have here, a traditional coverage action that's non-core.

19    And if it's non-core, the courts have said -- the same

20    courts have said there's no discretion here.  You have to

21    order a stay in favor of arbitration.

22            Thank you.

23            MR. CALHOUN:  Your Honor, this is George Calhoun

24    for Ironshore.  May I have a couple of minutes, please?

25            THE COURT:  Okay.
```

Page 78

1              MR. CALHOUN:  I would respond --

2              THE COURT:  Could you state the client's name

3     again?  It went by pretty quickly, for the court reporter?

4              MR. CALHOUN:  Sure.  It's Ironshore Specialty

5     Insurance Company.

6              THE COURT:  Right.

7              MR. CALHOUN:  We're one of the insurers that the

8     service-of-suit argument applied to.  And I wanted to point

9     out, Your Honor, onto that issue particularly that the

10    Second Circuit's decision in Montauk came down in 1996,

11    which is four years before these policies were issued.  And

12    Montauk said that when you have a service-of-suit provision

13    and an arbitration provision, that they should be

14    interpreted to harmonize them, not to make them in conflict.

15             Mr. Breene's argument says they're in conflict,

16    and therefore we should get to pick, which is exactly

17    opposite what the law was when these policies were -- and

18    continues to be when these policies were issued.

19             I'd also point out for Ironshore, we already have

20    an arbitration pending, so they're not saying we get to

21    pick.  They're saying we get to disregard a pending

22    arbitration in our case, which is a significant fact with

23    respect to that.

24             THE COURT:  But I think Mr. Breene was making

25    another point, which was that he says that in Montauk, there

1    was a separate reference to arbitration that basically made

2    it easy to harmonize the arbitration provisions, plural, as

3    opposed to just the one arbitration provision and the -- and

4    the service-of-suit provision.  Do you have a response on

5    that?

6          MR. CALHOUN:  As a rule of contractual

7    interpretation, you're always obligated to harmonize

8    provisions.  And both Montauk and the other cases that were

9    cited in the brief said the way that you do it is the way

10   that we're suggesting.  And all that they have to the

11   contrary are two old, out-of-district cases that have been

12   rejected by the courts in this district, so I just don't

13   think there's much there.

14          The other point I wanted to make, Your Honor, is

15   on this point about the determinations here that might be

16   made in connection with confirmation being significant facts

17   down the road, what they're really saying is (indiscernible)

18   predetermined, Your Honor.  We want you to litigate as part

19   of confirmation what the downstream impacts of confirmation

20   will be.  Either that's part of the declaratory judgment

21   they're seeking and that's the adversary proceeding, or

22   they're saying determine in advance what the preclusive

23   effect of the plan is or what the impact of those facts are.

24          And that's not something you get to do.  The

25   Second Circuit's been very clear, and I can cite Your Honor

Page 80

1    to Covanta Onondaga Limited versus Onondaga County Resources

2    318 F. 3d 392.  First Court doesn't get to say what the

3    preclusive effects of its own judgment are.  That's for the

4    later court.

5            We're not saying -- as Mr. Koepff said, we're not

6    relitigating anything, but facts will be the facts,

7    including whatever you do at confirmation, but they don't

8    get -- they also don't get to prejudge the adversary

9    proceeding as part of confirmation.

10           MR. BREENE:  Your Honor, if I can have just a

11   couple of mounts to respond to a couple of different things.

12           THE COURT:  Okay.

13           MR. BREENE:  First, Your Honor, you know, with

14   regard to Mr. Koepff's, you know, generous offer of a stay,

15   I'm not -- you know, I'm not in a position to say yes or no

16   today.  I mean, I don't think at the end of the day that is

17   the interest of the estate, and more specifically I don't

18   think it's in the interest of the abatement trust.  But I am

19   not taking a position one way or the other today as to

20   whether or not Purdue thinks that's a good idea or a bad

21   idea.  I want to make that clear.

22           Number two, Your Honor, Mr. Koepff very

23   interestingly said that in handling an arbitration in London

24   or Bermuda, the rulings of this court will be taken as fact.

25   Well, yes.  They are facts, and they will be taken as fact.

Page 81

1           What he did not say is that they will be binding

2    law.  And clearly, they will not take the position that they

3    are going to be binding law.  And in fact, Your Honor, the

4    fact that right now -- and it's actually sort of not part of

5    my responsibilities in this matter, but I'm very well aware

6    that the insurance companies and the Debtor are very -- in

7    very serious negotiations as we speak relating to insurance

8    neutrality, and in fact that the insurance companies have

9    moved to appoint an expert to testify at the confirmation

10   hearing on insurance neutrality.

11          And I would just point out, Your Honor, without

12   going into it at great length that to the extent they're

13   arguing for neutrality, they're obviously -- in my view and

14   I think in anybody else's view -- arguing that whatever this

15   Court decides in this matter can't bind them.

16          Finally, Your Honor, we respect to Mr. Calhoun's

17   argument and your rejoinder with respect to the fact that

18   the Second Circuit Montauk case came down a few years before

19   the policies at issue here were written, I think that that's

20   a very important concession.  And the policies that were

21   written and are at issue here, as I indicated to you, do not

22   have the saving language that the policy in Montauk had.

23          And in the Second Circuit, Your Honor, in Pan

24   American World Airways virus Aetna Casualty 505 F.2d 989

25   (indiscernible) 1001 (1974), the Second Circuit has held

Page 82

1    that in the event that there is policy language that would

2    fix a problem or an ambiguity that is available in the

3    marketplace at the time that the policy is issued and the

4    insurance company fails to incorporate it into its policy,

5    it can be presumed that they didn't intend to and that they

6    knew about the language that -- the language frankly quoted

7    in Montauk that would have gave them -- given them -- given

8    them the result that they seek.

9              Thank you, Your Honor.

10             THE COURT:  Okay.  Actually I had one other

11   question that's unrelated to the argument that's been going

12   on since the start of this hearing, which is are the

13   Plaintiffs pursuing the -- today -- the New York Insurance

14   Law Section 1213 point?

15             MR. BREENE:  Your Honor, no.  I don't think we

16   are.

17             THE COURT:  All right.  And that's because it's a

18   Connecticut point?

19             MR. BREENE:  Well, there is -- there is one

20   plaintiff that is -- that is in fact in New York entity, but

21   I think we are not pursuing that at this time.

22             THE COURT:  Okay.  All right.  Thanks.

23             All right.  I'm going to take about a 10-minute

24   break and then come back and give you my ruling on this set

25   of issues.  And then we can see what, if anything, is left

Page 83

1    on today's agenda following that ruling.

2            So don't hang up.  You can put your screen on

3    blank.  You can put yourself on mute, but don't hang up the

4    phone.

5            (Recess)

6            THE COURT:  Okay.  Good afternoon.  We're back on

7    the record in In re Purdue Pharma LP, and more specifically

8    Purdue Pharma LP, et al. versus AIG Specialty Insurance

9    Company, et al.

10           I have before me a motion by numerous insurance

11   carrier defendants for an order staying this adversary

12   proceeding in the light of either currently pending or to-

13   be-commenced arbitration proceedings under the parties'

14   contracts.

15           Arbitration is favored under the Federal

16   Arbitration Act in the federal courts, and the burden

17   clearly lies with the party opposing arbitration to show a

18   reason why it should not go forward and instead why

19   litigation that would contravene an arbitration provision

20   should not be stayed.  See for example, Resco Holdings LLC.

21   v. National Union Fire Insurance Company of Pittsburg PA,

22   2019 WL 6334733, *1 (S.D.N.Y Oct. 30, 2019).

23           Of course, this adversary proceeding is brought in

24   a bankruptcy case, and it has been long recognized that

25   disputes that involve both the Bankruptcy Code and the

Page 84

1    Arbitration Act often present conflicts of near polar

2    extremes, and the Second Circuit has recognized that a

3    bankruptcy court has discretion in the light of those

4    extremes to decline to compel arbitration when a conflict

5    exists between the Bankruptcy Code, which favors

6    centralization of disputes concerning a debtor's estate and

7    the Federal Arbitration Act, which advocates a decentralized

8    approach to dispute resolution.

9           See, among other cases, MBNA America Bank v. Hill,

10   436 F.3d 104, 108 (2nd Cir. 2006); Crysen/Montenay Energy

11   Company v. Shell Royal Company (In re Crysen/Montenay Energy

12   Company), 226 F.3d 160, 165 (2d Cir. 2000); and Drennen v.

13   Certain Underwriters at Lloyds of London (In re Residential

14   Capital LLC), 563 B.R. 756, 768 (Bankr. S.D.N.Y. 2016).

15          The reconciliation of the two statutes as applied

16   to particular facts is now the subject of extensive caselaw,

17   which provides guidance to the Court in respect of the

18   present motion.  That guidance comes from a number of

19   circuit-level cases as well as a number of cases at the

20   district and bankruptcy court level.

21          "In deciding whether to compel arbitration in a

22   bankruptcy context, courts apply a two-part test.  First the

23   Court must determine whether the proceeding at issue is core

24   or non-core.  If the proceeding is non-core, generally the

25   bankruptcy court must stay the proceeding in favor of

Page 85

1    arbitration, as non-core proceedings usually do not warrant

2    overriding the presumption in favor of arbitration.  Second,

3    if the proceedings are core, the Court must consider whether

4    enforcing the arbitration provisions would seriously

5    jeopardize any underlying purpose of the Bankruptcy Code.

6    This two-part test presents mixed questions of law and fact,

7    and on review the appellate courts accept the bankruptcy

8    court's factual findings unless they're clearly erroneous

9    and review as conclusions of law de novo."  In re Lehman

10   Brothers Holdings 663 Fed. App'x 65, 67 (2d Cir. October 6,

11   2016) (internal citations in quotations omitted.)

12            In applying that directive, the courts generally

13   engage in a four-step process.  First, the Court must

14   determine whether the parties agreed to arbitrate the

15   particular dispute.

16            Second, the Court must determine the scope of that

17   agreement.

18            Third, if federal statutory claims are asserted,

19   it must consider whether Congress intended those claims to

20   be non-arbitrable.

21            And fourth, if the Court concludes that some but

22   not all of the claims in the case are arbitrable, it must

23   then decide whether to stay the balance of the proceedings

24   pending arbitration.  See In re MF Global Holdings Limited,

25   571 B.R. 80, 89 (Bankr. S.D.N.Y.  2017), citing Bethlehem

1    Steel Corp. v. Moran Towing Corp. (In Re Bethlehem Steel

2    Corp.) 390 B.R. 784, 789 (Bankr. S.D.N.Y. 2008).  See also

3    In re Residential Capital LLC, 563 B.R. at 767.

4              Certain of those factors are not present here.

5    For example, there is no specific federal statutory claim

6    asserted here that would conflict with the right to

7    arbitration, unlike, for example, the violation of discharge

8    claims in Credit One Financial v. Anderson (in re Anderson)

9    and Belton v. GE Capital (In re Belton), as decided by the

10   Second Circuit.

11             Here, it's probably worth noting the qualifying

12   language in the Lehman Brothers Holdings quote that I read,

13   namely the Court must consider whether the proceeding is

14   core or non-core, and "generally" the bankruptcy court must

15   stay proceedings in favor of arbitration if they are non-

16   core, and the notion, going back to In re U.S. Lines Inc.

17   197 F.3d 631, 640 (2d Cir. 1999), that the conflict between

18   the policies of the Bankruptcy Code and the Federal

19   Arbitration Act may in certain circumstances require the

20   finding that a matter is core that would not in other

21   contexts be core, given its major impact on the Chapter 11

22   case.

23             On the flipside, as Judge Glenn noted in the MF

24   Global case, certain matters may be procedurally core or not

25   materially core, and, therefore, not warrant staying

Page 87

1    arbitration, but instead would warrant staying the

2    underlying matter before the bankruptcy court given the

3    Circuit's directive, which is a consistent one, that only if

4    arbitration would severely conflict with the text, history,

5    and purposes of the Bankruptcy Code should the bankruptcy

6    court have discretion to compel or to stay the arbitration.

7           Here, again applying the four-part analysis, it's

8    undisputed that the vast majority of the policies at issue

9    contain what the courts generally recognize as a broad

10   arbitration clause; i.e., 14 of the 16 arbitration

11   provisions provide for arbitration with regard to "any

12   dispute arising under or relating to the policy," which

13   would, in my view, cover the disputes raised in the

14   underlying complaint in this adversary proceeding.  Again

15   see In re:  Residential Capital, LLC, 563 B.R. at 769,

16   quoting JLM Industries, Inc. v. Stolt-Nielsen, S.A., 387

17   F.3d 163, 167 (2d Cir. 2004).  See also In re Cordali, 2010

18   WL 4791801, at *6 (Bankr. S.D.N.Y. Nov. 18, 2010).

19          It is asserted that two of the other policies have

20   a more narrow arbitration provision that would not apply to

21   the underlying dispute here, that is, with regard to the AIG

22   Specialty Insurance Company policy and Evanston Insurance

23   policy, as well as the Ironshore policy, each of which

24   provide for arbitration in the event of a disagreement as to

25   the "interpretation" of the policy.

Page 88

1          Those provision -- those types of limiting

2     language provisions are construed more narrowly and permit

3     an arbitration only obviously within the scope of such a

4     policy, and not with respect to the determination of factual

5     issues exclusively.  See, for example, United Parcel Service

6     v. Lexington Insurance Group, 2013 WL 1897777 at *3

7     (S.D.N.Y. May 7, 2013).

8          However, mixed questions of interpretation and

9     factual application in the light of that interpretation,

10    generally fall within the scope of such a provision, unlike

11    the case that I just cited where the only issue to be

12    decided was a factual issue, the interpretation of the

13    policy not being in dispute.  See, for example, WESCO

14    Holdings, LLC v. National Union Fire Insurance Company of

15    Pittsburgh, 2019 WL 6334733 at *1.

16         So I conclude that the policies at issue do, in

17    fact, provide for arbitration here with regard to the

18    complaint, which is, with regard to the three policies

19    subject to a more narrow arbitration provision, nevertheless

20    one that seeks declaratory relief in broad brush, not only

21    as to the facts at issue, i.e., the underlying types of

22    claims that might be subject to the policy, but also the

23    interpretation of the policies themselves and their specific

24    terms as to, for example, "bodily injury" and the like.

25         The second factor here, as I stated, doesn't

1    directly apply.  There's no specific provision of the

2    Bankruptcy Code that is implicated in this dispute, which is

3    fundamentally a contract dispute, whereby the plaintiffs are

4    looking to augment their estates by seeking a declaration

5    that their rights under the various policies at issue

6    entitle payment of substantial amounts of insurance

7    coverage.

8              Nevertheless, the plaintiffs argue that

9    fundamental policies embodied in the Bankruptcy Code require

10   that this litigation is not stayed in favor of arbitration.

11             As I noted, the law in this area has developed

12   over the last 20 years considerably, starting with the two

13   seminal cases that I've already cited, United States Lines

14   and MBNA America Bank v. Hill.  As stated in MBNA America

15   Bank, "Bankruptcy courts are more likely to have discretion

16   to refuse to compel arbitration of core bankruptcy matters

17   which implicate 'more pressing bankruptcy concerns.'

18   However, as to core proceedings, the bankruptcy court will

19   not have discretion to override an arbitration agreement

20   unless it finds that the proceedings are based on provisions

21   of the Bankruptcy Code that inherently conflict with the

22   Arbitration Act or that arbitration of the claim would

23   necessarily jeopardize the objective of the Bankruptcy Code.

24   "This determination requires a particularized inquiry into

25   the nature of the claim and the facts of the specific

Page 90

1    bankruptcy.  The objectives of the Bankruptcy Code relevant

2    to this inquiry include the goal of centralized resolution

3    of purely bankruptcy issues, the need to protect creditors

4    and reorganizing debtors from piecemeal litigation, and the

5    undisputed power of a bankruptcy court to enforce its own

6    orders.  "If a severe conflict is found, then the court can

7    properly conclude that with respect to the particular Code

8    provision involved, Congress intended to override the

9    Arbitration Act's general policy favoring the enforcement of

10   arbitration agreements."  436 F.3d at 108.  Here -- I'm

11   sorry, internal citations and quotations omitted, including

12   as to the U.S. Lines case at multiple points in that quote.

13

14          Here, the plaintiffs assert that the competing

15   interests favor strongly litigation of the complaint in the

16   bankruptcy court or the district court presiding over the

17   bankruptcy case rather than in an arbitration, based on the

18   following assertions that the issues raised in the complaint

19   will not all be subject to arbitration provisions, i.e.,

20   there are multiple defendants who do not have the benefit of

21   an arbitration provision, and therefore splitting the

22   determination of the claims in the complaint with having the

23   arbitrable claims decided by arbitration panels would both

24   be wasteful and lead potentially to inconsistent rulings.

25          It is also alleged that the mere staying of this

Page 91

1    litigation as to the defendants with arbitration provisions

2    would lead to undue cost and delay.  Finally, it is alleged

3    that the staying of the complaint would "disrupt

4    confirmation of the plan, would interfere with the mechanics

5    of plan implementation, and would prolong the wait for

6    distributions to estate creditors."  That's found at Page 3

7    of the plaintiffs' memorandum in opposition to the motion.

8             In further support of that latter point, the

9    defendants [sic] assert that it was a fundamental element of

10   the plan before the Court that the plaintiffs in this

11   adversary proceeding be agreed and agree on the pursuit of

12   the adversary proceeding for the benefit of the parties who

13   would receive insurance proceeds, if obtained through the

14   adversary proceeding under the plan.

15            It is also asserted that this Court should decide

16   at least two of the potential defenses that would be raised

17   in arbitrations because of their nexus to the bankruptcy

18   case.

19            The first is a defense that is anticipated to be

20   raised by various insurers who have the benefit of

21   arbitration provision, namely, that they would need to

22   consent, or at least have the opportunity in a period of

23   time to consent, to the settlements of the underlying

24   insured claims which, it is contended, has not occurred here

25   and will not occur here.

Page 92

1              The plaintiffs allege that the plan and its

2      confirmation might well affect the determination of that

3      issue, and, therefore, the Court, having presumably, in

4      their mind, confirmed a plan, would need to retain

5      jurisdiction over that defense since it would involve a

6      review of the circumstances under which the plan was

7      confirmed and the Court's order confirming the plan.

8              Secondly, the plaintiffs allege that certain of

9      the insurance policies at issue have a so-called pay-first

10     provision, i.e., liability under the policies whether

11     specifically denominated as payable only in these

12     circumstances or, by their wording, provide for

13     reimbursement, require first a payment of the underlying

14     claim against the debtors before the insurance kicks in to

15     reimburse that obligation.  It is alleged that the plan

16     would be jeopardized or performance of the plan would be

17     jeopardized if payments under it were made to claimants

18     before a determination that the underlying claims were, in

19     fact, subject to insurance coverage.

20             The movant insurers contend that the foregoing

21     arguments are, in fact, insufficient to establish the type

22     of fundamental inherent conflict under the caselaw that

23     would prevent the staying of the adversary proceeding.  I

24     conclude, based on my review of the parties' pleadings,

25     including the exhibits, but primarily the caselaw that they

1    have cited and our own research, that the movants have the

2    better of this argument.

3              First, under the present circumstances, I believe

4    that the claims in the adversary proceeding against the

5    moving insurers would not be viewed as core on a

6    "fundamental" core basis under the caselaw.  I say this

7    notwithstanding In re U.S. Lines, Inc., 197 F.3d 631, where

8    claims against insurers who insured against personal injury

9    were held by the Circuit to be core in the context of an

10   arbitration determination because I believe the facts of

11   that case are different than the facts here, and, as I noted

12   earlier, the Circuit has never had a non-fact-based

13   determination of what is core or "fundamentally" core.

14             The insurance dispute here, while clearly

15   important in the context of this -- of these Chapter 11

16   cases, is not so fundamentally important as to warrant its

17   centralization in one court presiding over the bankruptcy

18   cases.  I say this for a number of reasons.

19             The first is the context in which it arises.  It

20   neither arises at the beginning of the case, at which time

21   the parties would all be grappling on the nature of those

22   insurance rights to determine how fundamentally important

23   they are in the overall context of the parties', and,

24   ultimately, the Court's determination on how the assets and

25   liabilities of the debtors should be resolved.

1           Rather, they come up in the present context, years

2    after -- over a year after the case, the bankruptcy case,

3    that is, was filed and where I have a pending plan that

4    allocates insurance coverage but does not do so in a way

5    that makes the confirmation of the plan contingent upon

6    answering the scope of that coverage.

7           Instead, the plan provides for a personal injury

8    class that is to receive four substantial cash distributions

9    regardless of insurance that is available or determined to

10   be available, $300 million on the plan's effective date and

11   then $200 million, $100 million, and $100 million of cash on

12   anniversaries of the effective date, through July 30th,

13   2026.

14          In addition, another $50 million of cash will be

15   paid to the claimants in that cashe from the proceeds of

16   available insurance, i.e., if the debtors are successful or

17   the plaintiffs are successful in obtaining recoveries from

18   the insurers for personal injury claims.  And when I say $50

19   million, it's up to $50 million, i.e., the first $50 million

20   or less is obtained, the amount that's obtained.

21          The remaining amount would go to other trusts

22   under the plan which have negotiated that plan, I believe,

23   on the understanding that they will take the risk as to

24   whether there is more insurance coverage, and have agreed to

25   the cash payments or would agree if the plan were confirmed,

1    regardless of insurance coverage.

2           That is, the determination of insurance coverage

3    is not necessary, either to the negotiation of the plan or

4    to confirmation of it, or, as was the case in the U.S. Lines

5    decision, to the equitable implementation of the plan.

6           In that case, the plan had already been confirmed.

7    There were pay-first policies there.  Indeed, it was the

8    case that all of the policies were pay-first policies --

9    although, frankly, I don't think the fact that they were all

10   pay-first policies was dispositive -- and the Court found in

11   that context that it would be inequitable to make the

12   distributions under the plan of cash before determining the

13   rights in the policies, that that was not a bargain that the

14   creditors had made.  It was that "mutual reinforcement" that

15   was the tie to the plan provisions and the pay-first

16   contractual provisions that I believe is here lacking.  See

17   Mt. McKinley Insurance Company v. Corning, Inc., 398 F.3d

18   436, 448 (2d Cir. 2005).

19

20          It is also the case that the Circuit found in U.S.

21   Lines that the insurance rights were all or substantially

22   all of the assets of the particular debtors that were

23   bringing the litigation against the insurers.

24          Other courts, when faced with a motion either to

25   stay arbitration or an objection to a motion to stay

Page 96

1    litigation in favor of arbitration, or simply a motion to

2    withdraw the reference where they're determining whether a

3    matter is core or not for purposes of withdrawing the

4    reference, have latched onto that latter point in

5    distinguishing their facts from U.S. Lines, i.e., noted that

6    in their cases, the insurance at issue was not the sole

7    asset or even necessarily the primary asset of the Debtors

8    estate.See Roman Catholic Archdiocese of Rockville Centre,

9    New York v. Arrowood Indemnity Company, 2021 U.S. District

10   Lexis 94233 at *13-18 (S.D.N.Y. May 17, 2021).  See also the

11   Residential Capital and MF Global cases that I previously

12   cited, as well as Dewitt Rehab and Nursing Center v.

13   Columbia Casualty Company, 464 B.R. 587 (S.D.N.Y. 2012); In

14   re Quigley Company, 361 B.R. 723 (Bankr. S.D.N.Y. 2007); and

15   In re Durr Mechanical Construction, Inc., 2021 Bankruptcy

16   Lexis 1607 (Bankr. S.D.N.Y. June 16, 2021).  In the context

17   of not a motion to withdraw the reference but a motion to

18   either stay pending litigation or, alternatively, to stay

19   arbitration in favor of pending litigation, again, I believe

20   the core/non-core distinction can be broadened, based on the

21   context, as the court did, I think, in U.S. Lines.  But the

22   key point is that here, while very important, the proceeds

23   at issue of the insurance (which are asserted anywhere,

24   depending on who is talking with regard to these

25   arbitrations, would be between a billion dollars and $3.9

Page 97

1    billion) would not constitute even the primary asset of the

2    debtors' estates; but more importantly, again, this dispute

3    is not determinative or dispositive of the plan confirmation

4    process, either the negotiation of the plan or confirmation

5    of the plan itself.

6              That leaves the issue, or the two issues

7    specifically raised by the plaintiffs, namely the potential

8    defenses that could be raised by the defendants in

9    arbitration ostensibly to override or contradict the rulings

10   of this Court.  They would go to, again, the pay-first

11   provisions in some of the agreements and the "consent to

12   settlement" provisions in the agreements.

13             As to the consent to settlement provision, it

14   appears to me that it is likely -- although I'm predicting

15   the future -- that if I confirm the plan, there will be

16   aspects of that ruling that will address the propriety of

17   the settlements at issue and their effect on the insurers.

18   I am aware, based on the record of the disclosure statement

19   hearing, for example, in this case, that one issue for

20   confirmation is the so-called insurance-neutral aspect of

21   the plan and the insurers' contention that the plan is not

22   insurance-neutral but would determine some of their rights.

23             It would appear to me that my rulings would all be

24   facts that would be before an arbitration panel, and the

25   movants have contended that -- not contended, have assured

Page 98

1    the Court, and I am relying in part upon this assurance,

2    that they would not challenge this Court's rulings and seek

3    to relitigate those rulings in the insurance litigation in

4    the arbitration panel context.

5         Of course it is possible that an arbitration panel

6    could misconstrue the Court's rulings or misapply them to

7    the particular facts before it, but that is a risk that

8    generally comes up often in the post-confirmation context

9    where the courts are careful to limit the bankruptcy court's

10   post-confirmation jurisdiction to enforcing its orders and

11   not going beyond that to deciding every dispute that may

12   have some aspect of it that involves an interpretation of

13   the court's ruling, and it would apply to that dispute.

14        I do not believe, although of course I am again

15   looking into the future, that the former situation would

16   occur with regard to the defenses that have been asserted as

17   potential defenses by the plaintiffs here in opposition to

18   the motion and that therefore the arbitration panel would

19   not be looking to undo the Court's rulings.  If that were

20   the case, I believe that there would be authority to stay,

21   at that point, the arbitration.  But of course that is a

22   prediction upon a prediction and probably upon a further

23   prediction.  See generally Netflix v. Relativity Media, LLC

24   (In re Relativity Fashion, LLC), 696 F. App'x 26 (2d Cir.

25   Aug. 22, 2017).

Page 99

1            In any event, with the representations made on the

2    record today and upon which I am relying, I do not believe

3    that the potential for misconstruing the Court's rulings,

4    whatever they might be, that would potentially give rise to

5    a defense in the arbitration proceeding would warrant my

6    precluding that arbitration proceeding from being held.

7    More would be required.

8            I think I have largely addressed the pay-first

9    issue already.  I don't believe that the plan implicates the

10   pay-first issue as it did in the United States Lines case.

11   Rather, although again, the amount of money at stake here

12   and the uses to which that money could be put are both very

13   important, they don't have the level of importance tied into

14   the plan process that would require me to deny the motion.

15   Indeed, the disclosure statement for the plan does not list

16   the failure to recover all of the insurance as a risk with

17   regard to the implementation in obtaining the effective date

18   of the plan.

19           I also do not believe that the potential extra

20   cost of an arbitration process here, which could conceivably

21   involve 16 different arbitrations, although I believe that

22   in light of that cost, the insurers themselves, as they have

23   represented they in all likelihood would do, would try to

24   ameliorate that cost by conducting the arbitration

25   proceedings in an efficient manner, including staging them

Page 100

1    in an efficient manner, would warrant staying arbitration

2    and instead proceeding with the case before the bankruptcy

3    court, the adversary proceeding that is before the

4    bankruptcy court.

5         Cost alone, unless that cost is so high as to

6    deprive a debtor of insurance rights or a fundamental asset,

7    whether it's insurance or something else, is not a basis for

8    staying arbitration.  Although the cost in MBNA v. Hill to

9    the debtor in pursuing arbitration was significant to that

10   debtor, in that the debtor was an individual debtor and

11   enforcing the automatic stay is an important bankruptcy

12   policy, the court nevertheless stated that the cost involved

13   to that particular debtor in enforcing that debtor's rights

14   under the Bankruptcy Code was not enough to override the

15   arbitration provision where the debtor was looking for an

16   affirmative recovery as opposed to simply enforcing the

17   automatic stay and stopping the act that was in violation of

18   the automatic stay from continuing.

19        It is also not clear to me that if conducted

20   properly, in proper sequence, an arbitration process here

21   would be even unduly costly given the limitation on appeals

22   which would apply in an arbitration that of course does not

23   apply in bankruptcy litigation.  One also of course would

24   not have the added litigation as evidenced by the motions to

25   withdraw the reference over the conduct of a jury trial and

Page 101

1    the bankruptcy court's ability to issue a final order as

2    opposed to proposed findings of fact and conclusions of law.

3            The movants have stated, have confirmed on the

4    record that they will be amenable if the plaintiffs are to

5    staging the arbitrations in the order that the plaintiffs

6    would want in the light of potential litigation on non-

7    arbitrable matters in this adversary proceeding, and,

8    frankly, I believe in the arbitrations themselves.

9            This was the issue or concern over undue

10   multiplication of litigation and potentially inconsistent

11   results for claim or issue preclusion purposes that led

12   Judge Lane in the ResCap opinion after he found that

13   arbitration was warranted to proceed to stay the arbitration

14   until the non-arbitrated issues were decided before him.

15   And I gather, although this isn't entirely clear from the

16   opinion, that in fact the insurers agreed to such a stay to

17   ensure that the litigations that were before the bankruptcy

18   court and then before the arbitration panels would be

19   conducted in an efficient manner.

20           So as to the insurers with a broad arbitration

21   provision, I will grant the motion.  Again, based on those

22   representations as to not relitigating the Court's rulings

23   in the arbitration, this Court's rulings, that is, in the

24   arbitration, and, secondly, to defer to the debtors' choice

25   as to whether the arbitrations would be stayed pending the

Page 102

1    terminations in the non-arbitrated matters before me and as

2    to conducting the arbitrations or staging them in an

3    efficient way.

4            As to the other insurers with the more narrow

5    provision, I conclude that the more narrow provision, as I

6    said, does provide for arbitration, and the same rationale

7    that I've gone through with regard to the other insurers

8    applies to them.

9            In addition, the plaintiffs have raised two other

10           points.  First, they point out that in addition to

11   the arbitration provision in the AIG Specialty and Ironshore

12   provisions there is a so-called place of suit provision

13   which provides that the -- if I could turn to it -- well,

14   why don't I just read it?  That's probably the safest thing

15   to do.  And I'm reading from Exhibit 8 to Mr. Breene's

16   declaration which attaches the Allied World policy at issue.

17   I'm sorry.  I'm sorry, it would be Exhibit 2 to his

18   declaration, which is the AISL policy whish states at

19   Paragraph Y, Headed "Service of Suit", "In consideration of

20   the premium charge, it is hereby understood and agreed that

21   in the event of failure of American International Specialty

22   Lines Insurance Company, herein called the Company, to pay

23   any amount claimed to be due hereunder, the Company, at the

24   request of the insured, will submit to the jurisdiction of a

25   court of competent jurisdiction within the United

1    States."Nothing in this condition constitutes or should be

2    understood to constitute a waiver of the Company's rights to

3    commence an action in any court of competent jurisdiction in

4    the United States to remove an action to a United States

5    district court or to seek a transfer of a case to another

6    court as permitted by the laws of the United States or of

7    any state in the United States."  And then it agrees where

8    service or process may be made.  And finally it states,

9    "Further, pursuant to any statute of any state, territory,

10   or district of the United States which makes provision

11   therefor, the Company hereby designates the superintendent,

12   commissioner, or director of insurance or other officer

13   specified for that purpose in the statute or his or her

14   successor or successors in office as its true and lawful

15   attorney upon whom may be served any lawful process in any

16   action, suit, or proceeding instituted by or on behalf of

17   the insured or any beneficiary hereunder arising out of this

18   contract of insurance and hereby designates the above-named

19   counsel as the person to whom the said officer is authorized

20   to mail such process or to a true copy thereof."

21            The plaintiffs contend that this provision

22   conflicts with the arbitration provision in Paragraph O in

23   the -- on Page 23 where the parties submit to arbitration,

24   and in particular because it provides for submission to the

25   jurisdiction of a court of competent jurisdiction within the

1    U.S. in the event of a failure of the insurer to pay any

2    amount claimed to be due hereunder, placing the emphasis on

3    "claimed" as opposed to "failure" in that clause.

4         The movants respond by noting a substantial amount

5    of caselaw interpreting service of suit provisions,

6    including in this Circuit and holding that the two

7    provisions can be reconciled or harmonized relatively easily

8    by viewing the service of suit provision as one providing

9    for agreement to jurisdiction to enforce an arbitration

10   award, stemming from the seminal case of Montauk Oil

11   Transportation Corp. v. Steamship Mutual Underwriting Ass'n

12   (Bermuda) Ltd, 79 F.3d 295, 298 (2d Cir. 1996).

13        The movants correctly point out that part of the

14   analysis by the Circuit in that case hinged upon a provision

15   in the service of suit paragraph at issue there that doesn't

16   exist here, which expressly acknowledged that that

17   provision, the service of suit provision, did not,

18   colloquially, undermine the parties' rights under the

19   arbitration provision.

20        Certain cases since then applying the Montauk

21   holding have noted similar language, including that

22   additional provision.  See Hudson Specialty Insurance

23   Company v. New Jersey Transit Corp., 2015 WL 3542548

24   (S.D.N.Y. June 5, 2015).  However, many other ones do not

25   and instead rely upon the strong congressional policy in

1   favor of arbitration and the Circuit's view that the

2   provision really is one going to an acceptance of

3   jurisdiction, which when one harmonizes those two points

4   would be acceptance of jurisdiction for enforcement

5   purposes.  See for example NECA Insurance Limited v.

6   National Union Fire Insurance Company, 595 F. Supp. 955

7   (S.D.N.Y 1984); Ideal Mutual Insurance Company v. Phoenix

8   Greek Insurance Company, 1984 WL 602, at *2 (S.D.N.Y. July

9   3, 1984); and Certain Underwriters at Lloyd's London v.

10  Vintage Grant Condo Association, Inc., 2019 WL 760802

11  (S.D.N.Y. February 6, 2019).  See also on this point and

12  applying this interpretation, New Jersey Physicians United

13  Reciprocal Exchange v. ACE Underwriting Agencies, Ltd., 2013

14  U.S. Dist. LEXIS 52035 (D.N.J. Apr. 11, 2013).  See also BD

15  Conde Partnership Limited v. Certain Underwriters at Lloyds,

16  2009 U.S. Dist. LEXIS 27443 (S.D.N.Y. March 31 -- I think

17  it's 2005), which involved removal and not a conflict

18  between an arbitration provision and not arbitration but

19  again described the rationale of the service of suit

20  provision is one that is limited to ensuring jurisdiction

21  for enforcement purposes.

22          So, based on that analysis, although I think it is

23  a fairly close question, I conclude that the service of suit

24  provision in Paragraph Y of the parties' agreement does not

25  give, as the plaintiffs have asserted, the plaintiffs the

Page 106

1     option to either go to arbitration or alternatively to

2     pursue the litigation in this adversary proceeding.

3              Finally, there is a dispute as to the Evanston

4     insurance policy as to whether it provides for arbitration

5     or not.  That policy clearly provides that it will "follow

6     the form" as stated, which is an AIG/Munich Insurance form,

7     which is common language for excess insurers and

8     incorporates the form referenced.

9              There is clearly an AIG form that provides for

10    arbitration.  It is asserted nevertheless by the plaintiffs

11    that there is another policy that the Evanston policy could

12    be an excess policy for that is not a Munich policy, but

13    rather another policy that somehow morphed out of or into a

14    Munich policy.  However, although the name of that policy

15    has been identified, I don't have any record as to how it

16    would control here -- it is a so-called Gulf policy -- or

17    even the language that would show the absence of an

18    arbitration provision.

19             So at this point, I cannot conclude that

20    arbitration would be not applicable to the Evanston policy.

21    Of course if that is shown in the future, then arbitration

22    would not lie as to it.  The arbitrators would not be able

23    to take on an arbitration that does not have a contractual

24    basis like that.  But for purposes of today's record and

25    today's ruling, I cannot reach that conclusion.

Page 107

1          So, again recognizing and relying upon the

2     representations made to me by counsel for the insurers --

3     and no insurer has spoken up to contradict Mr. Koepff's

4     representation -- that's K-o-e-p-f-f - that I have referred

5     to earlier, so I believe it would be applicable to all the

6     movants here, I will grant the motion and stay the adversary

7     proceeding insofar as it applies to the movants.

8          I will ask one of the movants' counsel to submit

9     an order consistent with that ruling.  You don't have to go

10    through obviously the lengthy bench ruling that I just gave

11    you all.  You can simply refer to the bench ruling.  You

12    also don't need to formally settle it on Mr. Breene or

13    counsel for the plaintiffs, but you should run it by them to

14    make sure that they are comfortable that it's consistent

15    with my decision.  And obviously CC them, CC plaintiff's

16    counsel when you email it to chambers.

17         Does anyone have any questions about the ruling or

18    the order?  No?  I'm seeing everyone shaking their head.

19         MR. CALHOUN:  Your Honor, this is George Calhoun

20    for Ironshore.  You made a reference that insurers with a

21    more narrow provision, and you mentioned Ironshore in that

22    discussion.  That argument didn't apply to Ironshore.  And

23    just in case there is an attempt --

24         THE COURT:  Okay.

25         MR. CALHOUN:  -- to appeal Your Honor's ruling, I

Page 108

1    want --

2              THE COURT:  I actually thought it had, but I stand

3    corrected.  In any event, if it did, I would still be

4    granting the motion.

5              Okay.  So I obviously had another very extensive

6    set of motions to dismiss brought by the same insurers, that

7    is the foreign insurers under Rule 12(b) for lack of

8    personal jurisdiction.  I tend to agree with Judge Lane that

9    my ruling on arbitration would moot those motions.  So my

10   inclination is not to decide them at this time.  Obviously

11   if my arbitration ruling is reversed or if the parties

12   decide they nevertheless want to proceed with the lawsuit in

13   the adversary proceeding, it wouldn't be moot anymore.  But

14   at this point, it does seem to be moot.  Am I missing

15   something on that point?

16             MR. MCNALLY:  No, Your Honor.  Daren McNally,

17   Clyde & Co., representing Chubb Bermuda.  We filed the

18   motion to dismiss for lack of personal jurisdiction.  We

19   agree with Your Honor that to the extent that the matter is

20   stayed, that it doesn't really make sense to argue or have

21   Your Honor decide it so long as it's not viewed as some sort

22   of waiver of consent to personal jurisdiction.

23             THE COURT:  Right.  And I think the parties were

24   careful to preserve that argument in their motions.

25   Obviously to the extent they didn't in their motions

Page 109

```
 1   themselves, then that might be a waiver.  But my finding it

 2   being moot would not add any additional facts to a waiver

 3   argument.

 4            MR. LEVERIDGE:  Your Honor, this is Rick Leveridge

 5   on behalf of the plaintiffs.  We accept that conclusion.

 6            There is one item of housekeeping that relates to

 7   the motions to dismiss for lack of personal jurisdiction.

 8            As Your Honor may recall, when we filed our

 9   omnibus opposition, we filed material under seal because

10   some of that material was discovery that the insurers have

11   provided to us at jurisdictional discovery.  We put off the

12   issue.  You've questioned whether (indiscernible) the

13   designation.  We put that off until now because the insurers

14   recommended that and we didn't (indiscernible).

15            The one issue I have with -- I don't think it's

16   moot with respect to the motion to seal because that

17   material is in the record.  Now, if the Court is happy with

18   the current state of the record, that is they're under seal,

19   that's fine.  But if you're not, then I think we do need to

20   take the housekeeping step of having the insurers review

21   their designations of confidentiality and perhaps narrow

22   them and then we would resubmit just so that we have a

23   record that's clean.

24            MR. KOEPFF:  Your Honor, this is Paul Koepff

25   again.  I'll make life easier for everyone.  The insurers,
```

Page 110

1    the arbitration insurers conferred.  And we still have a

2    confidentiality agreement with the plaintiffs

3    (indiscernible) revisit.  But anything that was filed by the

4    plaintiffs we are no longer asking to be sealed.

5                THE COURT:  Okay.  All right.

6                MR. KOEPFF:  So whatever has been --

7                THE COURT:  That does make it easy.

8                MR. LEVERIDGE:  It does.

9                THE COURT:  That does make easy.  That's a

10   perfectly fine resolution of that issue.  And, Mr.

11   Leveridge, you summarized my reaction to the motion, which

12   is that I thought it was probably overkill as to what was

13   sought to be sealed and there would need to be more of a

14   focused request and the parties were certainly well within

15   their discretion not to go through that exercise until they

16   saw how today turned out.  And at this point, that could all

17   be filed on the docket.

18                MR. LEVERIDGE:  Okay, great.  Thank you, Your

19   Honor.

20                THE COURT:  Okay.  All right.  So I'm going to

21   turn back to the agenda then.  But all those of you who are

22   here on the arbitration motion and the motions to dismiss

23   don't need to stay on.  You can if you want to, but you can

24   certainly be excused as well.

25                So I think that leaves two matters left on the

Page 111

1   agenda.  One is a motion which we've been carrying for a

2   long time, which is the motion to lift the automatic stay to

3   let an arbitration proceed.  And I don't know if there's

4   been any discussion between the parties about this point.

5   It had been objected to by the debtors and the committee.

6   And again, it's been sitting here by agreement as the plan

7   has been negotiated and developed.  Where does that motion

8   stand at this point?

9            MR. CALHOUN:  Your Honor, this is George Calhoun

10  for Ironshore.  I did have some conversations with Mr.

11  Breene.  And I think given Your Honor's ruling on the motion

12  to compel arbitration that it stands to reason to grant our

13  motion.  And I think where this stands is that the

14  Plaintiffs would reserve the right to ask that it be stayed

15  pending any appeal they may bring.  But otherwise, I don't

16  think they're going to raise any additional arguments in

17  opposition to it.

18            MR. BREENE:  Your Honor, on behalf of the

19  Plaintiffs, that is correct.  We have no additional reason

20  to seek to stay the motion -- the (indiscernible)

21  arbitration.  And we reserve the right to seek a stay of any

22  and all of the arbitration subject to appeal.  But, you

23  know, there is no reason to have this one in a separate

24  category.

25            THE COURT:  Okay.  All right.  That's fine.

Page 112

1   Frankly, the only one I had is maybe the parties wanted some

2   time to just discuss the order that this would be done in.

3   And you can certainly do that even if there's no stay.  But

4   despite the inefficiency of having multiple arbitrations, as

5   I've said, that does not overcome the policy in favor of

6   arbitration here.  And I guess the debtors and plaintiffs do

7   want to proceed promptly to get a determination.  So I can

8   understand Mr. Breene's position.  So I will grant that

9   motion --

10            MR. JOSEPH:  Your Honor --

11            THE COURT:  Oh, I'm sorry.

12            MR. JOSEPH:  Your Honor, this is Gregory Joseph

13   for the plaintiffs.  I don't disagree with my co-counsel,

14   but I do want to just make a point that we would assume that

15   the Ironshore situation is wrapped up and Mr. Koepff's

16   representation to Your Honor that the --

17            THE COURT:  Well, again, I'm saying all of -- yes.

18   I think that's the case.

19            MR. JOSEPH:  Okay.  Well, I just want to make that

20   clear.

21            THE COURT:  Right.

22            MR. JOSEPH: That's how we saw it, too.

23            THE COURT:  Okay.

24            MR. JOSEPH:  And I just wanted (indiscernible).

25   Thank you.

1          THE COURT:  Okay.  All right.  So, Mr. Calhoun,

2     you can email the lift-stay order to chambers.  Again, you

3     don't need to formally settle it on notice to the

4     Plaintiffs, but you should provide a copy to Plaintiff's

5     counsel so they can make sure it's consistent with the

6     ruling, and then copy them on the email to chambers when you

7     email it in.

8          MR. CALHOUN:  Thank you, Your Honor.

9          THE COURT:  Okay.  Thank you.

10          And then unless I'm wrong, I think the last matter

11     on the calendar is a motion by Gulf Underwriters Insurance

12     Company and St. Paul Fire and Marine Insurance Company under

13     Rule 12(e) for a more definite statement.

14          MR. POLSTER:  Yes, Your Honor.  This is Joshua

15     Polster from Simson Thatcher for Gulf St. Paul.

16          THE COURT:  Okay.  And the other one of these had

17     been adjourned, but unless you tell me otherwise, I'm

18     assuming this one is still going forward.

19          MR. POLSTER:  Yes, that's correct, going forward.

20          THE COURT:  Okay.  All right.  Okay.  Well, I've

21     read the motion and the memorandum in support and the

22     memorandum in opposition and the reply memorandum.  I guess

23     I'm having a hard time seeing the basis for this relief.  I

24     think the only issue is that the debtors/plaintiffs have not

25     identified all of the claims or any of the claims, the

Page 114

1   underlying claims as to which they contend the insurance

2   would apply.  They define them generically.  And I guess

3   given that they've done that and defined the contracts at

4   issue, and given the number of claims, I'm not seeing how

5   this prevents filing an answer or otherwise moving at this

6   stage.

7           MR. POLSTER:  Yes, Your Honor.  That's -- the

8   basis of our motion is that Purdue hasn't identified which

9   specific claim or claims it is seeking coverage for from my

10  clients.  And our clients' preferred route would be an early

11  dispositive motion, a motion to dismiss.  And to do so, we

12  are entitled to know what are the specific claims for which

13  Purdue is seeking coverage.

14          For instance, as Purdue mentioned in their

15  complaint, the Gulf policies, Gulf and Purdue previously

16  agreed to a settlement and release.  Purdue says that Gulf

17  is included as a defendant in this case to the full extent

18  that the claims weren't previously released.  That sentence

19  is essentially a tautology.  If Purdue is asserting that

20  certain claims are not -- or sorry, certain claims were not

21  released, then our clients are entitled to know which claims

22  those are so we can make an early motion or not to evaluate

23  and respond appropriately.

24          A similar issue exists with respect --

25          THE COURT:  Well, I guess -- well, let's just take

Page 115

1    that one.  You can certainly answer, right, and say as a

2    defense these claims are settled.  Right?

3            MR. POLSTER:  Yes, although it would make it very

4    difficult to file a motion, and the answer wouldn't serve

5    much purpose without notice as to what particular claims are

6    if Purdue is contending that certain are or certain aren't -

7    - to know what is being litigated here for our clients.

8            THE COURT:  Well, and then as far as a motion is

9    concerned, are you saying you can't make a motion under

10    Twombly and Iqbal on Rule 8?

11            MR. POLSTER:  I mean, we certainly -- if we were

12    forced to, we could attempt to.  But then in opposition, for

13    instance, the Plaintiffs could contend, well, this claim

14    doesn't apply for whatever reason, we are entitled to know

15    that going into our motion if there are some claims that

16    they're saying are --

17            THE COURT:  But why are you entitled to know that

18    other than under Rule 8?

19            MR. POLSTER:  Because to be on notice of what

20    Plaintiff's claims -- what their --

21            THE COURT:  Give me a case.  Give me a case.

22    That's what I'm really asking for.

23            MR. POLSTER:  Sure.  Sure.

24            THE COURT:  I don't see this here, particularly

25    given the number of personal injury claims.

Page 116

1          MR. POLSTER:  The Bunge and MCS cases from the

2    S.D.N.Y. cited in our papers are on point here.  In both,

3    policyholders were seeking coverage for losses and the

4    courts granted 12(b) motions saying the policyholder had to

5    give specifics on what losses it was actually seeking

6    coverage for.  The Certain Underwriters --

7          THE COURT:  But the Bunge case is from 1940,

8    right, where you have the bill of particulars requirement.

9          MR. POLSTER:  Yes, that is correct.

10          THE COURT:  All right.  Okay.  And I interrupted

11    you.  I was just focusing on the first point, which is the

12    settlement point.  But you were going to go on from there.

13    There were other defenses that you said you weren't sure

14    whether you could actually assert at this stage given this

15    pleading.

16          MR. POLSTER:  Yes.  And just to return briefly,

17    the Certain Underwriters v. MSC case, that's from 2020, a

18    more recent case where the policyholder said essentially

19    they're seeking coverage for cargo lost at sea and the court

20    granted a Rule 12(b) motion saying, policyholder, you have

21    to give notice what particular ship or ships were lost so

22    the insurer can appropriately answer or move.

23          THE COURT:  Okay.  But there wasn't an issue there

24    of, you know, hundreds of thousands of personal injury

25    claims, right?

1          MR. POLSTER:  That is true.  I would say to that

2     point that if it's a (indiscernible) issue or it's felt to

3     be unreasonable, if there are exemplars that the Plaintiff

4     can point to and say the basis, we're not looking to be

5     unreasonable.  We understand Rule 8.  So examples could be a

6     way to resolve this.

7          Returning to the point you mentioned.  The other

8     policy, St. Paul's, has a products exclusion which is also

9     referenced in the complaint.  If there are certain claims

10    that Plaintiffs are saying don't fall within the exclusion,

11    that's something we should be put on notice of in the

12    complaint so we can either move or even in an answer to

13    begin discovery with what is, like Your Honor said, 3,000

14    claims without knowing what specific claims are being

15    asserted against us.  That leads to excessive burden and

16    waste that could be streamlined by just pleading what claims

17    are at issue in the case.

18          THE COURT:  But, again, the answer says see

19    Paragraph X of our policy, we have an exclusion.  That's our

20    defense.

21          MR. POLSTER:  Certainly.  But then on a motion,

22    again, we're left sort of arguing against something that

23    hasn't even been put forward.  And so we believe under the

24    two cases I referenced, Bunge and the more recent one, the

25    policyholder has to put the insurer on notice, here are the

Page 118

1    claims we're seeking coverage for under your policies in

2    this case.

3                THE COURT:  Okay.  All right.  Anything else?

4                MR. POLSTER:  No.  I think that covers the issue.

5    Thank you, Your Honor.

6                THE COURT:  Okay.  Who is going to be arguing this

7    one on behalf of the plaintiffs?

8                MS. HUDSON:  Good afternoon, Your Honor.  Jenna

9    Hudson (indiscernible).

10               THE COURT:  Afternoon.

11               MS. HUDSON:  I certainly can respond to the cases

12   that have (indiscernible), but I'd like to ask first if Your

13   Honor has any questions.  Essentially where I end is where

14   Your Honor started.  So rather than reiterate all of our

15   points, if there's anything in particular Your Honor would

16   like to hear from us on, happy to respond.

17               THE COURT:  Well, I guess I -- the motion is

18   premised upon the assertion that the insurers can't

19   appropriately respond to the complaint.  And I think that

20   comes down to not the identification of the policies, which

21   they have and which are identified in the complaint, in the

22   exhibit which is made a part of the complaint, but rather

23   they can't reasonable prepare a response.  And I guess

24   clearly a motion to dismiss one can prepare because they

25   have the defenses in mind and they can put those defenses in

Page 119

1    an answer or in a motion to dismiss.  And it may be that the

2    complaint is so conclusory that that motion might be

3    granted.  I don't know.

4           But I guess I don't understand what other -- maybe

5    this is a question for Mr. Polster.  What other motion would

6    you have in mind besides the motion to dismiss?  That would

7    be it, right?

8           MR. POLSTER:  That's correct.

9           THE COURT:  Otherwise, the parties go to discovery

10   and you might make a summary judgment motion at some point.

11          MR. POLSTER:  that's correct.  A motion to dismiss

12   would be what we would have in mind following getting to the

13   claims.

14          THE COURT:  All right.  So isn't that really the

15   Plaintiffs' lookout, that they don't satisfy Rule 8?  Why

16   are we going through this extra step, in other words?

17          MR. POLSTER:  Certainly, Your Honor.  And it was

18   not our intent to create an extra step, rather to make a

19   motion more efficient so it can be directed to whatever

20   claims Plaintiffs are saying are at issue so that we can

21   evaluate, one, whether such a motion at this stage is

22   justified.  And then, two, appropriately target the motion

23   at any or all of the claims the Plaintiff say are at issue.

24          THE COURT:  Okay.  So let me ask, Ms. Hudson, what

25   is the status of the claims -- the personal injury claims or

Page 120

1    the allegedly insured claims as asserted against the

2    Debtors?  What status are they in at this point?

3                MS. HUDSON:  The 614,000 claims, Your Honor?

4                THE COURT:  Yes.

5                MS. HUDSON:  Well, they vary.  Some of them are

6    merely subject to proofs of claim.  Some of them there have

7    been complaints filed.  My understanding is that some have

8    been resolved if not really resolved.  I guess in sort kind

9    of the gamut of stages that a claim could be.

10               They are, however --you know, we are sufficiently

11   clear and we believe we've set forth in the complaint as

12   much as we can in terms of the categories into which the

13   claims fall without getting into nuances of individual

14   claims.

15               For example, the complaint discussed the fact that

16   there are claims that specifically focus on Purdue drugs.

17   There also are complaints that include -- that allege that

18   Purdue is liable due to other company's drugs.  And finally,

19   that Purdue is liable due to people having taken holistic

20   drugs.  And our view is that those categories of claims

21   would be handled in various respects based on the differing

22   policy language of the policy before us.

23               THE COURT:  Okay.

24               MS. HUDSON:  I don't know that that completely

25   answers your question, Your Honor.  But the direct answer to

Page 121

1    your question is they are at various stages.  There are

2    614,000 claims we're talking about.

3                THE COURT:  Right.  And they're on file, right?

4    It's the claims that are filed by the bar date that you're

5    asserting are covered claims here, right?

6                MS. HUDSON:  Yes, Your Honor, with one caveat I

7    would make, that I would want to check in on the status of -

8    - to my understanding there are some claims that came in

9    after the bar date.  And I just --

10               THE COURT:  Right.  But that's a small number.

11   And they are filed, too.  They just came in late.

12               MS. HUDSON:  Correct.  We are focused on the

13   614,000 that were submitted by the bar date.

14               THE COURT:  Okay.  All right.  And that's referred

15   to in the complaint.

16               MS. HUDSON:  Yes, Your Honor.

17               THE COURT:  Okay.  So, again, look, other than

18   forcing the Debtor into a position that I don't think it

19   needs to be in consistent with Rule 8 to identify each of

20   these claims, I don't see the purpose of this motion.  So

21   I'm going to deny the motion.  I just -- these types of

22   motions are not favored.  The courts clearly believe that in

23   almost all cases they should -- the concerns raised by them

24   should really be dealt with in the discovery process and

25   really only are warranted where the pleading just is

Page 122

1   unintelligible so the district court can't make out the

2   actual theories of liability.

3           Based on my review of the complaint, I don't think

4   that's the type of complaint this is.  I think the insurer

5   is aware, obviously, of its policy.  It's aware of the

6   claims generally that are being asserted as covered by the

7   policies and references them, and they can be -- those

8   pleadings are certainly pleadings that one can take judicial

9   notice of in connection with the motion to dismiss.  And

10  it's obviously to me under those circumstance a completely

11  unwarranted burden to have to specify each of the claims.

12  At this point they're just filed claims, some of which, as

13  Ms. Hudson said, do have lawsuits attached to them, but they

14  have not been determined.  It's unduly burdensome to have

15  Plaintiff have to put that in a complaint.  It's just -- you

16  know, and it's not required under Rule 8 I don't believe.

17  So I'll deny the motion.  See Bldg. Serv. 32BJ Health Fund

18  v. Team Clean, Inc., 2015 WL 3953638 at *1 (S.D.N.Y. June

19  29, 2015) and the authorities cited therein, as well as Lee

20  v. Karaoke City, 2020 WL 5105176 at *10 (S.D.N.Y. Aug. 31,

21  2020) and the cases cited therein, and Section 12.36, [1]-

22  [2], Moore's Federal Practice, Third, 2021.  And as the

23  authors of the treatise state, among other things, the court

24  -- and this is at subparagraph [3], the courts will already

25  -- will take into account the knowledge and sophistication

Page 123

1    of the defendant.  And here again the claims themselves are

2    on the docket.  They are a matter of public record and I

3    think the Defendant can make sense of the complaint in light

4    of all that and the statements in the complaint.

5            So I'll ask Ms. Hudson to email an order to

6    chambers denying the motion for the reasons stated on the

7    record.  You don't need to formally settle that, but you

8    should run it by Mr. Polster before you email it in and copy

9    him on the email so he can make sure it's consistent with my

10   ruling.

11           MS. HUDSON:  Yes, Your Honor.

12           THE COURT:  Okay.  Thank you.  Okay.  I think that

13   concludes this morning's agenda.  Did I miss anything?  No?

14   Okay, very well.  Thank you all.  I'll look for those orders

15   then, those three orders.

16           (Whereupon these proceedings were concluded at

17   2:09 PM)

18

19

20

21

22

23

24

25

1               C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5     Sonya

6     Ledanski Hyde

7

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2021.07.13 16:11:25 -04'00'

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  June 28, 2021

[& - 31]

Page 1

**&**

**&** 18:10 19:1
20:19 108:17

**1**

**1** 4:22 5:11,12
7:15 12:12 14:5
15:3,11,18 23:25
24:8 67:19 83:22
88:15 122:18,21
**10** 5:16,18 18:20
23:2,6 24:9 82:23
122:20
**10-1-2000** 66:7
**10-1-2002** 67:21
**10-1-2003** 66:6
67:21
**10-2-2003** 66:7
**100** 45:24,25
94:11,11
**1001** 81:25
**10019** 18:13
**10022** 18:6
**10174** 19:5
**104** 84:10
**106** 16:12
**10601** 2:3
**108** 84:10 90:10
**10:00** 3:16
**10:02** 2:6
**11** 5:17,18 86:21
93:15 105:14
**11501** 124:23
**12** 5:18,19 108:7
113:13 116:4,20
**12.36** 122:21
**1213** 82:14
**128** 16:18
**129** 13:14
**13** 5:18,19 62:17
**13-18** 96:10
**133** 6:5
**135** 15:19

**137** 13:22
**138** 15:12
**139** 14:5
**14** 5:19,20 87:10
**140** 14:10
**141** 17:1
**142** 14:19,22
**144** 6:17
**145** 15:4
**146** 7:3
**15** 5:19,21 24:14
57:1
**159** 3:17
**16** 5:20,21 24:18
30:14 49:12 50:15
51:7,19 52:2
56:18 58:25 62:14
62:17,21 73:21,23
73:24 74:6 76:2
87:10 96:16 99:21
**160** 84:12
**1607** 96:16
**163** 87:17
**165** 84:12
**167** 87:17
**16th** 19:4
**17** 5:21,22 96:10
**18** 5:21,22 87:18
**181** 33:6
**1897777** 88:6
**19** 5:22,23
**19-23649** 1:3
**1940** 116:7
**197** 86:17 93:7
**1974** 81:25
**1984** 105:7,8,9
**1996** 78:10 104:12
**1999** 86:17

**2**

**2** 4:4,23 5:12,13
10:10 12:11,13
15:19 50:6 102:17
105:8 122:22

**2/12/21** 4:24
**20** 5:22 89:12
**200** 45:23,23
94:11
**2000** 84:12
**2001** 70:2
**2002** 70:1
**2003** 70:1
**2004** 87:17
**2005** 95:18 105:17
**2006** 84:10
**2007** 96:14
**2008** 86:2
**2009** 105:16
**2010** 87:17,18
**2012** 96:13
**2013** 21:3 88:6,7
105:13,14
**2015** 104:23,24
122:18,19
**2016** 84:14 85:11
**2017** 85:25 98:25
**2019** 24:15 83:22
83:22 88:15
105:10,11
**202** 3:9
**2020** 42:6 116:17
122:20,21
**2021** 2:5 24:16
96:9,10,15,16
122:22 124:25
**2024** 45:24
**2025** 45:24
**2026** 45:25 94:13
**21** 2:5 3:9 4:23
5:23,24
**21-07005** 1:4 3:1
3:7,19 4:12 5:1
6:7,19 9:1,8,15,22
10:5,13,19,24
11:6,14,21 12:1
12:17 13:6,16,24
14:6,12,24 15:6

15:14,20 16:1,9
16:13,20 17:3
**2100** 18:20
**22** 5:24,25 98:25
**226** 84:12
**23** 5:24,25 103:23
**2326** 7:17 8:16
**24** 5:25 6:1
**248** 2:2
**25** 5:25 6:2
**2542** 7:9
**26** 6:1,2 98:24
**27** 6:2,3
**27443** 105:16
**277** 33:6
**28** 6:2,3 124:25
**2801** 8:18
**29** 6:3,4 24:16
122:19
**295** 104:12
**298** 104:12
**2:09** 123:17
**2d** 84:12 85:10
86:17 87:17 95:18
98:24 104:12
**2nd** 84:10

**3**

**3** 4:5 5:12,13
12:12 88:6 91:6
105:9 122:24
**3,000** 117:13
**3.3** 22:24 23:9,16
57:8
**3.9** 57:9 96:25
**30** 6:3,5 45:24,25
83:22
**300** 2:2 31:14
45:20 76:10,11
94:10 124:22
**30th** 45:24 94:12
**31** 6:4 105:16
122:20

**318**  80:2
**32bj**  122:17
**330**  124:21
**3542548**  104:23
**361**  96:14
**387**  87:16
**390**  86:2
**392**  80:2
**3953638**  122:18
**398**  95:17
**3d**  80:2

**4**

**4**  4:6 5:13,14
  12:12 14:23
**4.5**  23:4
**40**  56:10
**400**  46:10,19
**405**  19:4
**436**  84:10 90:10
  95:18
**448**  95:18
**464**  96:13
**4791801**  87:18

**5**

**5**  4:6 5:14,15
  12:13 104:24
**5.2**  57:24
**50**  46:6 47:4 94:14
  94:18,19,19
**50-50**  68:5
**505**  81:24
**5105176**  122:20
**52035**  105:14
**563**  84:14 86:3
  87:15
**57**  4:10,17 5:5
  6:12 7:1
**571**  85:25
**587**  96:13
**59**  4:24
**595**  105:6
**599**  18:5

**6**

**6**  4:7 5:14,15
  12:14 85:10 87:18
  105:11
**6/21/2021**  3:16
**602**  105:8
**60606**  18:21
**614,000**  120:3
  121:2,13
**62**  16:16
**63**  16:16
**631**  86:17 93:7
**6334733**  83:22
  88:15
**639**  45:3
**640**  86:17
**65**  85:10
**663**  85:10
**67**  85:10
**696**  98:24

**7**

**7**  4:8 5:15,16
  12:14 52:16 88:7
**7-1-2000**  66:6
**700**  31:14 46:3
**71**  15:25 16:4,16
  16:24
**712**  7:7,8,13,19
  8:2,8,21
**72**  16:7,16
**723**  96:14
**73**  12:15,20 13:12
  15:16
**753**  7:21 8:1,8
**756**  8:4 84:14
**757**  8:11
**760802**  105:10
**765**  8:23
**767**  86:3
**768**  84:14
**769**  87:15
**77**  9:7 13:12,20
  15:1

**78**  9:13
**784**  86:2
**787**  18:12
**789**  86:2
**79**  104:12

**8**

**8**  4:8 5:15,16
  102:15 115:10,18
  117:5 119:15
  121:19 122:16
**80**  11:19 13:12
  15:10 85:25
**81**  11:25
**82**  11:4,10 13:12
**83**  11:12
**84**  10:11,23 13:12
  14:16
**85**  10:23
**88**  10:17 13:12
**89**  85:25

**9**

**9**  4:9 5:16,17
**90**  9:21 10:1 13:12
  14:3
**92**  10:3
**93**  5:5
**94233**  96:10
**955**  105:6
**96**  13:4
**989**  81:24

**a**

**abatement**  46:15
  46:20,24 47:24
  51:10 55:22 63:2
  80:18
**ability**  31:20
  101:1
**able**  52:2 54:20
  106:22
**absence**  106:17
**absent**  69:6

**absolutely**  58:2
**abuse**  74:15
**accelerate**  25:14
**accept**  39:24 40:1
  85:7 109:5
**acceptance**  105:2
  105:4
**accomplish**  56:3
  57:25
**accomplishing**
  58:6
**account**  122:25
**accurate**  124:4
**ace**  9:5,12 12:4,22
  13:21 15:18
  105:13
**acknowledged**
  104:16
**act**  44:18 83:16
  84:1,7 86:19
  89:22 100:17
**act's**  90:9
**action**  29:19
  64:12 77:18 103:3
  103:4,16
**actions**  25:25,25
  77:13,15
**actual**  58:20,20
  67:15 69:2 122:2
**ad**  8:6,9 13:13
  16:17
**add**  27:15 50:25
  51:1,3 109:2
**added**  23:11
  100:24
**adding**  22:16
**addition**  49:21
  52:25 69:23 94:14
  102:9,10
**additional**  45:23
  45:24,25 46:10
  62:21 63:1,22
  64:19 72:10

104:22 109:2
111:16,19
**address**   25:7 39:2
54:5 56:12 97:16
**addressed**   35:12
99:8
**adjourned**   113:17
**adjournment**   7:7
**administration**
49:15 60:6
**admit**   65:1,1
**admitted**   47:16
**adv**   1:4
**advance**   79:22
**adversary**   3:1,7
3:19,23 4:12,16
5:1,4 6:7,11,19,25
9:1,3,8,15,17,22
10:5,7,13,15,19
10:24 11:1,6,14
11:16,21 12:1,17
13:6,16,24 14:6
14:12,24 15:6,14
15:20 16:1,9,13
16:20 17:3 20:10
21:1 23:18 24:15
25:21 44:6 49:17
49:25 50:3 51:11
55:1 62:20 79:21
80:8 83:11,23
87:14 91:11,12,14
92:23 93:4 100:3
101:7 106:2 107:6
108:13
**advocates**   84:7
**aetna**   81:24
**affect**   58:17 92:2
**affidavit**   23:24
**affirmation**   9:6
9:20 10:10 11:4
11:18 12:11,12,13
12:13,14 15:3,11

**affirmative**
100:16
**afford**   51:11
**afl**   10:11
**afternoon**   83:6
118:8,10
**agencies**   105:13
**agenda**   3:9 20:6,7
20:9 83:1 110:21
111:1 123:13
**agent**   41:11
**agree**   28:5,24
35:11 41:5,13,23
43:24 56:22 57:13
72:22 76:18 91:11
94:25 108:8,19
**agreed**   20:8 23:3
37:20,23 41:8
47:2 50:10 65:4,6
65:8 70:25 71:13
71:15,17 72:23
85:14 91:11 94:24
101:16 102:20
114:16
**agreement**   71:24
85:17 89:19 104:9
105:24 110:2
111:6
**agreements**   21:11
36:3 42:18,22
90:10 97:11,12
**agrees**   103:7
**ahead**   27:20 34:10
34:21 53:18,20
**aig**   1:15 3:2,3,8,20
3:24 4:13,18 5:2
6:8,13,20,21 7:2
9:2,9,16,23 10:6
10:14,20,25 11:7
11:15,22 12:2,18
13:7,17,25 14:7
14:13,25 15:7,15
15:21 16:2,10,14

16:21 17:4 18:11
20:4,19 39:7,16
39:22 64:24 65:22
65:24 66:1,9 67:2
67:9,14,23 68:4
83:8 87:21 102:11
106:6,9
**airways**   81:24
**aisl**   102:18
**aislic**   35:6 36:1
39:7,16,21 40:14
65:15 66:4,6 67:9
**al**   1:12,16 3:2,8,20
4:13 5:2 6:8,20
8:4 9:2,8,16,22
10:6,14,20,24
11:7,15,22 12:2
12:18 13:7,17,25
14:6,13,25 15:7
15:15,20 16:2,10
16:13,21 17:4
20:4,5 83:8,9
**allege**   92:1,8
120:17
**alleged**   36:17
48:23 90:25 91:2
92:15
**allegedly**   120:1
**alleges**   36:11
**allied**   11:2,9,11
15:2 102:16
**allocates**   94:4
**allow**   43:25 51:14
**allowed**   34:15
75:16
**almeida**   9:4,11
**alter**   38:11
**alternative**   35:14
**alternatively**
96:18 106:1
**alveary**   24:3
**ambiguity**   40:10
82:2

**ambiguous**   39:8
**ameliorate**   99:24
**amenable**   101:4
**amended**   12:19
57:24
**america**   16:12
84:9 89:14,14
**american**   1:15 3:3
3:9,21,25 4:1,14
4:18,19 5:3 6:9,14
6:15,21 7:2 9:3,9
9:17,23 10:7,15
10:21,25 11:8,16
11:23 12:3,19,21
12:24 13:8,18
14:1,7,14 15:1,8
15:16,21 16:3,11
16:14,22 17:5
66:1,10 67:23
68:3,12,21,22
81:24 102:21
**amount**   23:7,22
24:2,10 27:17
46:4 50:16 57:7
59:21 62:25 63:1
76:11 94:20,21
99:11 102:23
104:2,4
**amounts**   45:13
89:6
**analysis**   34:18
87:7 104:14
105:22
**anderson**   86:8,8
**ann**   23:23
**anniversaries**
94:12
**answer**   40:20
41:18 66:18 71:4
73:20 114:5 115:1
115:4 116:22
117:12,18 119:1
120:25

**answered** 69:13
  73:9
**answering** 94:6
**answers** 120:25
**antecedent** 21:11
  33:14
**anticipated** 91:19
**anybody** 25:16,19
  58:17 81:14
**anymore** 108:13
**anyway** 25:17
  35:1 36:18 73:17
**app'x** 85:10 98:24
**appeal** 107:25
  111:15,22
**appeals** 100:21
**appear** 26:18 27:3
  97:23
**appears** 49:12
  97:14
**appellate** 85:7
**applicable** 106:20
  107:5
**application** 56:6
  59:24 88:9
**applied** 34:1
  37:19 70:25 78:8
  84:15
**applies** 39:16
  102:8 107:7
**apply** 21:18 72:11
  84:22 87:20 89:1
  98:13 100:22,23
  107:22 114:2
  115:14
**applying** 85:12
  87:7 104:20
  105:12
**appoint** 81:9
**approach** 84:8
**appropriate**
  58:22

**appropriately**
  114:23 116:22
  118:19 119:22
**approved** 41:20
  60:4,18 61:1
**approves** 60:14
**approving** 62:3
**approximately**
  50:12
**apr** 105:14
**arbitrable** 28:9
  38:6,6 85:20,22
  90:23 101:7
**arbitral** 44:1
  58:25 72:9 75:20
  75:25 76:1
**arbitrate** 63:24
  64:3 65:8 85:14
**arbitrated** 52:23
  101:14 102:1
**arbitration** 3:22
  3:24 4:14,16,23
  5:5 6:10,12,23,25
  20:10,11 21:1,18
  23:14,14,15 25:7
  26:6,21 28:9,13
  29:1,4 30:14
  32:10,17,18,21,22
  33:7,9 34:24
  35:14,15,16,18
  36:3,8 37:7,20,25
  38:7,12 39:11
  40:15,15 41:1,12
  41:19,22 42:9,18
  42:22 44:9,18,19
  46:8 49:24 50:17
  50:17,18,21 51:2
  51:15,24 52:14,15
  52:18 53:5,20,22
  54:8,9 55:2,3,6,9
  55:25 56:1,6,15
  59:17,17 62:16,18
  63:7,13,14 64:11

64:17,24 65:5,6
  65:10,11,17,18
  66:10 67:3 69:6,7
  69:11 70:22,24
  71:9,12,25 72:14
  72:25 73:6,8,15
  73:19 74:18 75:1
  75:17,18 76:21
  77:8,21 78:13,20
  78:22 79:1,2,3
  80:23 83:13,15,16
  83:17,19 84:1,4,7
  84:21 85:1,2,4,24
  86:7,15,19 87:1,4
  87:6,10,10,11,20
  87:24 88:3,17,19
  89:10,16,19,22,22
  90:9,10,17,19,21
  90:23 91:1,21
  93:10 95:25 96:1
  96:19 97:9,24
  98:4,5,18,21 99:5
  99:6,20,24 100:1
  100:8,9,15,20,22
  101:13,13,18,20
  101:23,24 102:6
  102:11 103:22,23
  104:9,19 105:1,18
  105:18 106:1,4,10
  106:18,20,21,23
  108:9,11 110:1,22
  111:3,12,21,22
  112:6
**arbitrations** 24:3
  26:22 32:12,25
  33:2,16,19,20,22
  33:23,24 34:3,8
  34:21,22 35:2
  37:16 41:4,5,6
  49:3,11 50:14,15
  51:20 52:2,5 53:7
  55:8,17,18 56:14
  56:18 58:5,16

62:4,14,21 72:16
  73:22,23,25 74:3
  74:7 75:12 76:3
  77:3 91:17 96:25
  99:21 101:5,8,25
  102:2 112:4
**arbitrator** 51:4,5
  52:17
**arbitrators** 29:14
  51:3,25 52:2
  106:22
**arch** 11:18,25
  15:10 19:2 40:20
  40:24
**archdiocese** 96:8
**area** 21:3 42:23
  89:11
**aren't** 115:6
**arguably** 64:8
  71:7
**argue** 24:17 54:21
  89:8 108:20
**argued** 44:16
  49:20 57:4 74:21
**arguing** 46:21
  48:21 62:2 81:13
  81:14 117:22
  118:6
**argument** 20:16
  22:8 25:6 32:8
  35:7,25 37:4,18
  39:12,24 40:10
  46:10 54:5 60:3
  63:6,9 78:8,15
  81:17 82:11 93:2
  107:22 108:24
  109:3
**arguments** 21:15
  22:7 27:12 35:4,5
  39:3 63:5 70:14
  72:18 92:21
  111:16

**arises** 93:19,20
**arising** 87:12
  103:17
**arrowood** 96:9
**arthur** 4:7 9:18
  10:1 14:3
**asbestos** 47:13
**asked** 42:11 44:21
  73:5,6
**asking** 21:22
  29:15 43:22 110:4
  115:22
**aspect** 49:16
  58:18 97:20 98:12
**aspects** 61:18
  97:16
**aspen** 12:21
**ass'n** 104:11
**assert** 26:3,4 55:7
  59:8 90:14 91:9
  116:14
**asserted** 85:18
  86:6 87:19 91:15
  96:23 98:16
  105:25 106:10
  117:15 120:1
  122:6
**asserting** 46:8
  54:8,9 55:6,25
  62:16 114:19
  121:5
**assertion** 40:7
  69:23 118:18
**assertions** 90:18
**asserts** 39:7
**asset** 22:9,14,18
  22:20,23 30:1,3
  57:5,13 96:7,7
  97:1 100:6
**assets** 23:6 24:10
  32:1 45:4 51:17
  51:23 62:22 75:1
  93:24 95:22

**association** 64:1
  105:10
**assume** 20:15
  27:22 28:1 112:14
**assuming** 28:7
  45:21 46:4 59:13
  113:18
**assurance** 11:3,9
  11:11 15:2 98:1
**assured** 97:25
**attached** 60:18
  122:13
**attaches** 102:16
**attachment** 76:10
**attachments** 4:4
  4:22 5:11 7:15 9:6
  9:20 10:10 11:3
  11:18 12:11 14:5
  15:3,11,18
**attempt** 107:23
  115:12
**attempting** 56:3
**attorney** 18:19
  19:2 103:15
**attorneys** 18:4,11
**attractive** 50:1
  55:20
**audio** 37:1
**aug** 98:25 122:20
**augment** 89:4
**augmenting** 22:17
**august** 42:5
**auslander** 3:24
  4:4,17 6:13 7:1
  18:15 20:17,18,22
  20:25 27:8,11,14
  28:11 29:4,22
  30:9,25 34:12
  37:21 38:20 44:22
  45:17 49:8 72:12
  72:19,20 74:20
  75:5,8 76:19

**authorities**
  122:19
**authority** 54:2
  98:20
**authorized**
  103:19
**authors** 122:23
**automatic** 7:13,17
  7:19,25 8:8,15
  100:11,17,18
  111:2
**available** 31:11,18
  48:22,24 82:2
  94:9,10,16
**avenue** 18:5,12
  19:4
**avoided** 44:16
  58:8
**avrio** 1:12 3:1,3,7
  3:10,19 4:12 5:1,6
  6:7,19 9:1,8,15,22
  10:5,13,19,24
  11:6,14,21 12:1
  12:17 13:6,16,24
  14:6,12,24 15:6
  15:14,20 16:1,9
  16:13,20 17:3
**award** 35:16,18
  64:17 104:10
**aware** 39:21 46:4
  55:9 56:5,16
  66:20 81:5 97:18
  122:5,5

|   | **b** |   |
|---|---|---|

**b** 2:21 4:23 51:23
  108:7 116:4,20
**b.r.** 33:6 84:14
  85:25 86:2,3
  87:15 96:13,14
**back** 21:3 22:25
  32:3 58:13 71:6
  73:5 82:24 83:6
  86:16 110:21

**background**
  20:15
**bad** 80:20
**balance** 85:23
**bald** 40:7
**bank** 84:9 89:14
  89:15
**bankr** 84:14
  85:25 86:2 87:18
  96:14,16
**bankrupt** 60:7
**bankruptcy** 1:1
  2:1,23 21:10 22:2
  22:11 24:12,13,14
  26:22 28:16 32:13
  32:25 33:2,12
  41:20,21,24 42:2
  42:3,4,25 44:12
  44:13,17 45:10
  49:15,16 51:13,17
  53:3,19 57:2
  59:25 60:4 61:11
  61:11,13 71:7
  76:16 77:4,10
  83:24,25 84:3,5
  84:20,22,25 85:5
  85:7 86:14,18
  87:2,5,5 89:2,9,15
  89:16,17,18,21,23
  90:1,1,3,5,16,17
  91:17 93:17 94:2
  96:15 98:9 100:2
  100:4,11,14,23
  101:1,17
**bar** 121:4,9,13
**barbara** 9:4,11
**bargain** 95:13
**barnett** 12:12,13
**barrister** 51:1
**based** 25:9 32:5
  60:24 71:17 89:20
  90:17 92:24 93:12
  96:20 97:18

101:21 105:22
120:21 122:3
**basic** 33:23 63:4
**basically** 53:15
61:7 64:2,10 72:1
79:1
**basis** 93:6 100:7
106:24 113:23
114:8 117:4
**bd** 105:14
**beginning** 93:20
**behalf** 3:10,24
4:17 5:6 6:13 7:1
7:6,9,14,20 8:2,9
8:16,22 9:5,12,19
10:1,8,17 11:2,11
11:17,25 12:4,21
13:13,20 14:3,10
14:17 15:2,10,17
15:23 16:5,12,17
16:24 38:24 43:18
103:16 109:5
111:18 118:7
**believe** 30:5 41:4
44:11 45:2,15
49:21 50:6 54:6
55:13 57:7,9,22
59:3 62:7,24 63:7
64:8 65:9,17,24
66:14,24 67:4
68:19 69:8,14
70:21 71:5 77:16
93:3,10 94:22
95:16 96:19 98:14
98:20 99:2,9,19
99:21 101:8 107:5
117:23 120:11
121:22 122:16
**believed** 29:18
**belongs** 59:4
**belton** 86:9,9
**bench** 107:10,11

**beneficiaries** 47:2
**beneficiary**
103:17
**benefit** 46:16,17
90:20 91:12,20
**benjamin** 7:20
**bermuda** 9:5,5,12
9:12 10:17 13:21
13:21 14:10 24:1
41:8 42:19 47:18
50:7 73:11 76:9
77:3 80:24 104:12
108:17
**bernstein** 33:5
**best** 68:1
**bethlehem** 42:21
43:4 85:25 86:1
**better** 62:4 64:21
72:21 93:2
**beyond** 24:5 37:7
59:19 98:11
**big** 29:22 75:21
**biggest** 22:8
**bill** 116:8
**billion** 22:24 23:2
23:4,6,9,16 24:1,7
24:9 50:6 57:9,9
76:10,11 96:25
97:1
**bind** 81:15
**binding** 28:8,13
28:19,25 29:1
36:8 81:1,3
**bit** 34:6 35:23
68:4
**blank** 83:3
**bldg** 122:17
**bleed** 37:17
**blowing** 75:13
**bodily** 36:20,23
36:25 88:24
**bogey** 74:7

**borne** 52:15
**bottom** 25:20
34:14
**bought** 23:12
32:19
**bound** 29:2,4,10
44:5 50:2
**break** 82:24
**breene** 3:10 5:6
5:12,12,13,13,14
5:14,15,15,16,17
5:17,18,18,19,20
5:20,21,21,22,23
5:23,24,24,25 6:1
6:1,2,2,3,4,4 8:16
18:8 43:17,17,20
47:10 48:8 52:9
54:4,13,16 56:7
60:3,9,13 61:15
61:23 62:12 65:23
66:14,23 67:4,12
67:24 68:14,16,18
68:22 69:8,14
70:5,10,15 71:2,3
72:5,22 73:6,9,21
74:10 75:7 76:24
77:2 78:24 80:10
80:13 82:15,19
107:12 111:11,18
**breene's** 78:15
**breene's** 102:15
112:8
**brief** 7:12,16
15:19 20:16 22:16
70:14 79:9
**briefing** 39:7,17
39:22
**briefly** 21:13 39:2
75:8 116:16
**bring** 63:16 64:12
111:15
**bringing** 46:1
95:23

**brings** 35:3
**broad** 36:4 65:10
87:9 88:20 101:20
**broadened** 96:20
**brothers** 85:10
86:12
**brought** 22:2
24:19 83:23 108:6
**brush** 88:20
**building** 19:3
**bunge** 116:1,7
117:24
**burden** 83:16
117:15 122:11
**burdensome**
122:14
**business** 12:8,8
13:1,2
**byrnes** 11:4 15:3

**c**

**c** 18:1 20:1 124:1
124:1
**calculated** 23:10
**calendar** 113:11
**calhoun** 4:8 7:6,8
7:14,16 8:21 11:2
11:11 15:2 77:23
77:23 78:1,4,7
79:6 107:19,19,25
111:9,9 113:1,8
**calhoun's** 81:16
**call** 31:2 50:20
**called** 31:21 35:20
42:21 92:9 97:20
102:12,22 106:16
**can't** 115:9
118:18,23 122:1
**capital** 34:7 84:14
86:3,9 87:15
96:11
**capture** 36:4
**care** 22:4 75:21

**careful**  28:23 98:9
  108:24
**cargo**  116:19
**carrier**  83:11
**carrying**  111:1
**case**  1:3,4 21:9,14
  21:20,20,21,22
  22:4,15,18,22
  24:14,18 26:1,7,8
  26:24,24 27:3,23
  29:16,25 30:4,7
  30:17 31:9,12,19
  32:7,11,25 33:4
  33:12 34:4,7,17
  35:20 36:10 38:4
  38:6,12 40:3
  42:12,21 44:15
  47:7,17 48:9
  50:12 53:9 56:4,5
  56:9,22,22 58:20
  58:22 59:4 61:5,6
  63:11,20 64:4,6
  72:13 73:14 74:12
  74:14,18,19 75:3
  78:22 81:18 83:24
  85:22 86:22,24
  88:11 90:12,17
  91:18 93:11,20
  94:2,2 95:4,6,8,20
  97:19 98:20 99:10
  100:2 103:5
  104:10,14 107:23
  112:18 114:17
  115:21,21 116:7
  116:17,18 117:17
  118:2
**caselaw**  32:5
  84:16 92:22,25
  93:6 104:5
**cases**  21:4 22:5,15
  23:6 25:22 26:22
  33:1 35:20 37:10
  43:5 52:12,13

56:23,24 63:13,21
  64:5,14 73:25
  74:12,15 79:8,11
  84:9,19,19 89:13
  93:16,18 96:6,11
  104:20 116:1
  117:24 118:11
  121:23 122:21
**cash**  31:11 52:17
  94:8,11,14,25
  95:12
**cashe**  94:15
**casualty**  81:24
  96:13
**categories**  120:12
  120:20
**category**  111:24
**catholic**  21:5
  22:19 26:24 74:14
  96:8
**caused**  33:13
**caveat**  121:6
**cc**  107:15,15
**center**  96:12
**centralization**
  44:13 84:6 93:17
**centralized**  51:10
  90:2
**centralizing**  51:17
**centre**  96:8
**century**  4:23
**certain**  5:3 18:11
  29:18 30:23 67:6
  84:13 86:4,19,24
  92:8 104:20 105:9
  105:15 114:20,20
  115:6,6 116:6,17
  117:9
**certainly**  26:1
  34:2,20 35:1 54:1
  58:11 66:8 71:14
  110:14,24 112:3
  115:1,11 117:21

118:11 119:17
  122:8
**certainty**  29:10
  73:22
**certified**  124:3
**challenge**  98:2
**challenged**  62:3
**chambers**  107:16
  113:2,6 123:6
**change**  20:7 63:24
  69:1
**changing**  64:3
**chapter**  52:16
  86:21 93:15
**charge**  102:20
**chart**  4:22
**cheal**  12:14
**check**  66:15 67:5
  121:7
**chicago**  18:21
**choice**  54:1 76:18
  101:24
**choose**  53:15
**chosen**  45:12
**chrysler**  19:3
**chubb**  9:5,12 12:4
  12:21 13:20 15:17
  108:17
**cir**  84:10,12 85:10
  86:17 87:17 95:18
  98:24 104:12
**circuit**  22:5 29:16
  31:19 35:12,19,21
  38:8 44:7 61:6
  63:11 77:13,17
  81:18,23,25 84:2
  84:19 86:10 93:9
  93:12 95:20 104:6
  104:14
**circuit's**  78:10
  79:25 87:3
**circuit's**  105:1

**circumstance**
  122:10
**circumstances**
  86:19 92:6,12
  93:3
**citations**  85:11
  90:11
**cite**  30:13 33:4
  79:25
**cited**  22:15 56:23
  56:24 63:21 64:14
  79:9 88:11 89:13
  93:1 96:12 116:2
  122:19,21
**citing**  85:25
**city**  122:20
**claim**  22:2 25:18
  29:2 35:10 47:20
  53:6 86:5 89:22
  89:25 92:14
  101:11 114:9
  115:13 120:6,9
**claimant**  45:4
**claimants**  8:10
  13:14 16:18 25:14
  31:4,12,13 44:25
  45:1,20 46:2,18
  47:13,23 48:3,9
  92:17 94:15
**claimed**  102:23
  104:2,3
**claims**  3:22 4:15
  5:4 6:10,24 22:1,2
  31:18,21,23,25
  46:20,22 57:25
  59:21 62:6 85:18
  85:19,22 86:8
  88:22 90:22,23
  91:24 92:18 93:4
  93:8 94:18 113:25
  113:25 114:1,4,9
  114:12,18,20,20
  114:21 115:2,5,15

[claims - concerning]                                                              Page 8

115:20,25 116:25
117:9,14,14,16
118:1 119:13,20
119:23,25,25
120:1,3,13,14,16
120:20 121:2,4,5
121:8,20 122:6,11
122:12 123:1
**clarify** 68:10
69:19
**class** 94:8
**classes** 47:7
**clause** 35:14,15
39:25 40:15 55:2
55:3 63:13,15,22
63:23 64:2 65:5
65:10,17,18 87:10
104:3
**clauses** 44:9 63:7
**clean** 109:23
122:18
**clear** 42:12,19
46:24 48:4 49:7
49:10 63:24 74:6
79:25 80:21
100:19 101:15
112:20 120:11
**clearly** 61:17 81:2
83:17 85:8 93:14
106:5,9 118:24
121:22
**client** 35:6 38:15
42:5,13
**client's** 73:14 78:2
**clients** 34:19,25
114:10,21 115:7
**clients'** 114:10
**close** 50:7 105:23
**closer** 57:9
**club** 56:11
**clubs** 45:6
**clyde** 19:1 40:24
108:17

**code** 44:12,17
51:17 83:25 84:5
85:5 86:18 87:5
89:2,9,21,23 90:1
90:7 100:14
**collateral** 60:21
**collect** 45:20 46:2
46:4 49:24
**collected** 57:8
**colloquially**
104:18
**colloquy** 77:2
**columbia** 96:13
**come** 22:5,25,25
27:24 37:2 46:11
46:22 47:4 55:5
59:6 71:17 72:6
72:23 74:7 82:24
94:1
**comes** 45:3 46:11
50:1 59:7 84:18
98:8 118:20
**comfort** 58:4,5
**comfortable**
107:14
**coming** 46:23
47:8 73:5
**commence** 41:5
103:3
**commenced** 83:13
**commissioner**
103:12
**commit** 35:1 41:4
54:19
**commitment**
49:23 76:23
**commitments**
24:22
**committed** 41:21
50:2
**committee** 7:23
8:3,9 13:13 16:17
76:14 111:5

**committees** 8:6
**committing** 75:23
77:8
**common** 26:17
27:2,2 39:13 73:9
106:7
**companies** 26:3,8
28:17 29:13 32:20
35:8 43:21 45:7
46:8 48:20 50:11
54:8,9 55:2,6
56:25 58:1 62:17
63:11,21 64:22
81:6,8
**company** 1:15,16
3:2,8,20,25 4:1,2
4:3,13,18,19,20
4:22 5:2 6:8,13,15
6:15,17,20,22,22
6:23 7:2,3,7,9,12
7:15,25 8:14,15
8:22 9:2,9,16,20
9:23 10:2,6,9,14
10:20,25 11:3,7,9
11:12,15,22 12:2
12:6,7,8,9,18,21
12:23,24,25 13:1
13:2,7,17,25 14:4
14:7,13,18,22,25
15:3,7,15,21,24
15:24 16:2,6,7,10
16:14,21,25 17:1
17:4 18:19 20:5
23:5 26:19 35:10
35:17 38:15,25
39:5 50:18 63:16
69:2,3 78:5 82:4
83:9,21 84:11,11
84:12 87:22 88:14
95:17 96:9,13,14
102:22,22,23
103:11 104:23
105:6,7,8 113:12

113:12
**companys** 7:11
**company's** 103:2
120:18
**compel** 84:4,21
87:6 89:16 111:12
**compelled** 40:15
**compelling** 44:18
**competent** 102:25
103:3,25
**competing** 90:14
**complaint** 27:11
36:10,11 67:19
69:25,25 87:14
88:18 90:15,18,22
91:3 114:15 117:9
117:12 118:19,21
118:22 119:2
120:11,15 121:15
122:3,4,15 123:3
123:4
**complaints** 120:7
120:17
**completely** 46:9
120:24 122:10
**complex** 31:21
36:19
**comprehensive**
45:11
**concede** 43:10
**conceded** 48:21
**conceivably** 99:20
**concept** 21:21
54:23
**concepts** 54:16,22
**concern** 26:13
46:13 52:14 101:9
**concerned** 32:5
49:2,5 55:14
115:9
**concerning** 24:15
84:6

concerns 55:16 89:17 121:23
concession 81:20
conclude 29:19 88:16 90:7 92:24 102:5 105:23 106:19
concluded 123:16
concludes 85:21 123:13
conclusion 55:5 106:25 109:5
conclusions 59:14 85:9 101:2
conclusory 119:2
conde 105:15
condition 103:1
condo 105:10
conduct 100:25
conducted 3:4 100:19 101:19
conducting 99:24 102:2
conference 17:5
conferencing 3:5
conferred 41:1 110:1
confess 37:5
confidential 55:9 58:16
confidentiality 109:21 110:2
confined 70:24
confirm 21:5 97:15
confirmation 24:22 28:3,7 59:11 60:15 61:19 79:16,19,19 80:7 80:9 81:9 91:4 92:2 94:5 95:4 97:3,4,20 98:8,10

confirmed 24:21 30:18 32:2 92:4,7 94:25 95:6 101:3
confirming 58:7 92:7
conflict 63:18 78:14,15 84:4 86:6,17 87:4 89:21 90:6 92:22 105:17
conflicts 84:1 103:22
confusion 68:4
congress 85:19 90:8
congressional 104:25
connecticut 82:18
connection 13:9 23:24 75:2 79:16 122:9
consent 26:13,16 26:23 28:2 32:3,4 42:1,7,7 52:6 57:19,20 63:16 64:16 91:22,23 97:11,13 108:22
consequence 60:10,12
consequences 25:21,24
consider 40:12 85:3,19 86:13
considerably 89:12
consideration 102:19
considerations 32:16,24 33:8
considered 31:10
consistent 87:3 107:9,14 113:5 121:19 123:9

consolidated 13:10
constituency 44:25 45:1
constitute 22:9 97:1 103:2
constitutes 36:24 103:1
construction 96:15
construed 36:13 39:10 88:2
construing 30:22
consuming 32:14
contain 30:14 32:18,20,21 63:7 65:16 73:13 87:9
contained 26:14 26:15 30:12
contemplated 56:19
contend 92:20 103:21 114:1 115:13
contended 91:24 97:25,25
contending 115:6
contention 97:21
context 28:16 32:6,25 36:21 41:24 59:3 71:7 73:1 84:22 93:9 93:15,19,23 94:1 95:11 96:16,21 98:4,8
contexts 86:21
contingent 8:10 13:14 16:18 94:5
continue 49:18 50:19 73:17
continues 78:18
continuing 100:18

contra 40:11
contract 21:20,22 37:3 64:21 72:25 89:3 103:18
contracts 21:25 32:17 33:14 45:14 73:13 83:14 114:3
contractual 63:23 63:25 79:6 95:16 106:23
contradict 97:9 107:3
contrary 79:11
contrast 33:5 61:5
contravene 83:19
contribute 23:4
contributed 57:11
control 39:25 106:16
controlling 39:6 53:10
controls 69:20
convenient 33:17
conversations 111:10
coordinate 76:20
copy 103:20 113:4 113:6 123:8
cordali 87:17
core 22:15,18 24:12 26:20,25 27:3,19 29:20,25 30:7 32:7 39:4 43:24 44:6,8 48:12 49:16 56:21 57:16 58:19,23 59:25 60:7,22 61:2,14 74:14,18 74:18,20 77:14,15 77:18,19 84:23,24 84:24 85:1,3 86:14,14,16,20,21 86:24,25 89:16,18

[core - debtor]                                                                                      Page 10

93:5,6,9,13,13
96:3,20,20
**corning**  95:17
**corp**  86:1,1,2
104:11,23
**correct**  111:19
113:19 116:9
119:8,11 121:12
**corrected**  108:3
**correctly**  45:18
104:13
**cost**  32:14 51:8
52:11,15 91:2
99:20,22,24 100:5
100:5,8,12
**costello**  9:7
**costly**  100:21
**costs**  62:23 63:1
**could've**  29:24
**counsel**  20:19
23:23 38:15 44:15
47:16 48:21 49:7
62:16 65:6 66:19
66:22 69:19,24
103:19 107:2,8,13
107:16 112:13
113:5
**count**  76:12
**country**  124:21
**county**  80:1
**couple**  40:25
42:10 44:4 52:3
64:14 69:19 77:24
80:11,11
**course**  23:13
25:18 29:7 31:5
33:15 37:12 70:16
72:3 83:23 98:5
98:14,21 100:22
100:23 106:21
**court**  1:1 2:1 20:2
20:18,21,24 21:10
22:11 25:23 27:6

27:9,13,21 28:22
29:8,11,15 30:5,8
30:16 31:19,21
32:14 33:3 34:7
37:15 38:19,23
39:1,9 40:12,18
40:22 41:1 42:3
43:3,13,19,22,24
44:8,11 46:14
47:1,11 48:4
49:19,25 50:5
51:11,13 52:8,10
52:19 53:3,4,19
53:19 54:10,15
55:5,7,8 56:1,4,17
56:19,21 58:7
59:5 60:8,10,14
60:19 61:10,11,13
61:17 62:2,7,8,11
62:21 64:5 65:19
65:20 66:12,16
67:1,7,11,22
68:11,15,17,20
69:4,10,16 70:9
70:13,16,17,18
71:8,8,14,22
72:12 74:17,23,24
76:7,16 77:4,5,10
77:13,25 78:2,3,6
78:24 80:2,4,12
80:24 81:15 82:10
82:17,22 83:6
84:3,17,20,23,25
85:3,13,16,21
86:13,14 87:2,6
89:18 90:5,6,16
90:16 91:10,15
92:3 93:17 95:10
96:21 97:10 98:1
100:3,4,12 101:18
102:25 103:3,5,6
103:25 107:24
108:2,23 109:17

110:5,7,9,20
111:25 112:11,17
112:21,23 113:1,9
113:16,20 114:25
115:8,17,21,24
116:7,10,19,23
117:18 118:3,6,10
118:17 119:9,14
119:24 120:4,23
121:3,10,14,17
122:1,23 123:12
**court's**  28:5 29:17
49:14,14 50:2
59:13 61:11 62:8
85:8 92:7 93:24
**courts**  35:12
42:21,24 52:18
64:15,19 72:14
77:19,20 79:12
83:16 84:22 85:7
85:12 87:9 89:15
95:24 98:9 116:4
121:22 122:24
**court's**  98:2,6,9
98:13,19 99:3
101:1,22,23
**covanta**  80:1
**cover**  87:13
**coverage**  21:9,23
25:3 26:2 34:8,9
36:4,18 37:12
40:1,4 41:11 46:5
48:22 50:7,8
52:22 53:11 56:11
57:7 58:9,20,22
60:5 73:16 74:15
77:13,15,18 89:7
92:19 94:4,6,24
95:1,2 114:9,13
116:3,6,19 118:1
**covered**  121:5
122:6

**covers**  118:4
**create**  119:18
**creative**  31:22
**credit**  86:8
**creditors**  7:24 8:3
25:8,11,22 28:17
45:5,9 46:16
76:14 90:3 91:6
95:14
**crysen**  84:10,11
**curiously**  39:19
**current**  109:18
**currently**  46:14
49:11 83:12

**d**

**d**  2:22 12:3,20
20:1
**d.n.j.**  105:14
**damages**  54:24
**dan**  12:3,20
**dangers**  55:4
**darag**  12:5,22
**daren**  4:5 108:16
**date**  45:21 94:10
94:12 99:17 121:4
121:9,13 124:25
**day**  26:3,19 37:23
72:6 76:2 80:16
**de**  85:9
**deal**  21:16 40:25
42:10,25 70:19
**dealing**  24:8
42:18
**deals**  64:25
**dealt**  44:22 53:6
61:8 75:2 121:24
**debt**  60:15,16,21
**debtor**  1:10 25:21
29:24 31:20 51:18
63:15 81:6 100:6
100:9,10,10,10,13
100:15 121:18

**debtor's** 8:1 36:12
67:18 75:1 84:6
**debtors** 7:18 8:7
18:4 28:2 31:18
36:12 39:3 43:18
90:4 92:14 93:25
94:16 95:22 96:7
97:2 111:5 112:6
113:24 120:2
**debtors'** 101:24
**debtor's** 100:13
**decentralized**
32:13 84:7
**decide** 42:3 85:23
91:15 108:10,12
108:21
**decided** 38:7,11
49:1 51:12 58:24
58:25 64:4 76:1
86:9 88:12 90:23
101:14
**decides** 53:10
55:7 56:1 81:15
**deciding** 84:21
98:11
**decision** 48:10
50:11 51:10 64:9
78:10 95:5 107:15
**decisions** 33:24
55:15
**declaration** 4:4,5
4:5,6,7,8,9,9
5:11,12,13,13,14
5:14,15,16,16,17
5:17,18,19,19,20
5:20,21,22,22,23
5:23,24,25,25 6:1
6:1,2,3,3,4,4 7:15
12:11 14:5 15:19
23:24 24:6 39:23
89:4 102:16,18
**declaratory** 21:22
45:11 79:20 88:20

**declare** 73:16
**decline** 84:4
**deemed** 26:24
74:13 77:14
**defeating** 56:2
**defendant** 9:24
11:8 114:17 123:1
123:3
**defendant's** 70:19
**defendants** 1:17
13:10 16:15 20:11
20:19 26:7 53:15
54:3 83:11 90:20
91:1,9 97:8
**defendants'** 43:14
**defense** 26:12
91:19 92:5 99:5
115:2 117:20
**defenses** 26:3,9,10
26:19,20 27:18
28:16 29:14 62:7
91:16 97:8 98:16
98:17 116:13
118:25,25
**defer** 101:24
**deferential** 42:23
**define** 114:2
**defined** 114:3
**definite** 15:22
16:4,15,23 113:13
**definitely** 76:9
**degree** 73:24
**delay** 25:10 51:23
52:11 55:23,24,24
91:2
**delayed** 25:8
**demand** 16:11
34:24
**denominated**
92:11
**deny** 43:22 56:6
99:14 121:21
122:17

**denying** 123:6
**dep't** 4:23
**depend** 29:7
**depending** 96:24
**depends** 30:23
38:1
**deprive** 100:6
**described** 105:19
**designated** 44:24
**designates** 103:11
103:18
**designation**
109:13
**designations**
109:21
**despite** 112:4
**destroyed** 29:24
**detail** 25:11 26:9
**determination**
21:24 28:5,10
51:14,15,24 60:1
60:1,11 61:12
72:2,2 88:4 89:24
90:22 92:2,18
93:10,13,24 95:2
112:7
**determinations**
62:5 79:15
**determinative**
97:3
**determine** 42:6
44:9 45:12 52:21
53:16 71:13 79:22
84:23 85:14,16
93:22 97:22
**determined** 28:6
30:20 61:18 62:15
94:9 122:14
**determines** 49:25
**determining**
37:17 95:12 96:2
**developed** 21:3
89:11 111:7

**dewitt** 96:12
**dichotomy** 65:9
**didn't** 107:22
108:25 109:14
**difference** 29:23
43:12 47:1
**different** 27:9
29:21 34:12 36:22
42:2 49:3 53:12
53:12,17,17 54:21
66:2,3,8,8 73:11
73:20 80:11 93:11
99:21
**differing** 120:21
**difficult** 28:15
71:20 72:23 73:1
115:4
**diminish** 57:4
**diocese** 21:5 22:19
26:24 74:14
**direct** 52:14,18
71:14 120:25
**directed** 119:19
**directive** 85:12
87:3
**directly** 46:22
59:23 60:6 62:3
89:1
**director** 103:12
**disagree** 112:13
**disagreement**
36:7,8 70:6 87:24
**disagrees** 49:18
**discharge** 86:7
**disclosed** 55:12
**disclosure** 25:1,5
97:18 99:15
**disclosures** 25:5
**discount** 38:2
**discovery** 109:10
109:11 117:13
119:9 121:24

discrete 56:18
discretion 42:24
  44:8,12 62:9
  77:20 84:3 87:6
  89:15,19 110:15
discuss 49:9 75:16
  112:2
discussed 120:15
discussion 34:20
  52:11 107:22
  111:4
discussions 23:20
dismiss 9:3,7,10
  9:17,21,25 10:7
  10:15,22 11:1,9
  11:16,24 12:3
  13:11,19 14:2,8
  14:15 15:9,16
  108:6,18 109:7
  110:22 114:11
  118:24 119:1,6,11
  122:9
dispositive 95:10
  97:3 114:11
dispute 29:23
  36:5 60:22,23,23
  60:24 61:3 65:1
  84:8 85:15 87:12
  87:21 88:13 89:2
  89:3 93:14 97:2
  98:11,13 106:3
disputed 71:19
disputes 36:18
  37:12 65:3 83:25
  84:6 87:13
disregard 78:21
disrupt 91:3
dist 105:14,16
distinction 96:20
distinguish 48:7
distinguishable
  48:15

distinguishing
  47:6,6 48:25 96:5
distribution 45:9
  45:10 47:3
distributions 91:6
  94:8 95:12
district 1:2 25:23
  49:19 53:4,19
  64:5 79:11,12
  84:20 90:16 96:9
  103:5,10 122:1
diverted 44:25
  46:20 47:14
dizengoff 8:2
doc 10:23
docket 110:17
  123:2
document 4:17
  5:5 6:12 7:1,8,13
  7:19 8:1,8,16,21
  10:1 11:10 12:20
  13:12,20 14:3,16
  15:1,10,16 16:4
  16:16,24 60:25
  67:15,19
documents 13:9
  60:17,24 61:1
doesn't 104:15
  108:20 115:14
doing 62:20 71:12
dollar 24:7 57:1
dollars 55:22
  62:25 96:25
domestic 76:17
don't 99:9,13
  102:14 106:15
  107:9,12 109:15
  110:23 111:3,15
  112:13 113:3
  115:24 117:10
  119:3,4,15 120:24
  121:18,20 122:3
  122:16 123:7

double 71:11
doubt 40:4
doubts 38:5
downstream
  79:19
drain 2:22 20:3
  77:6
drennen 84:12
drive 18:20
drops 37:1,13,14
drugs 120:16,18
  120:20
due 102:23 104:2
  120:18,19
durr 96:15
duty 64:3

e

e 2:21,21 3:10 4:8
  5:6 8:16 11:19
  15:12 18:1,1,8
  20:1,1 107:4
  113:13 124:1
earlier 93:12
  107:5
early 114:10,22
earmarked 45:5
  46:13,15
easier 109:25
easiest 54:23
easily 104:7
easy 79:2 110:7,9
eaton 12:12
ecf 3:17 4:10,24
  6:5,17 7:3,7,9,17
  7:21 8:4,11,18,23
  9:7,13,21 10:3,11
  10:17,23 11:4,12
  11:19,25 12:15
  13:4,14,22 14:5
  14:10,19,22 15:4
  15:12,19,25 16:7
  16:12,18 17:1

eckstein 8:9
economy 33:8
ecro 2:25
effect 41:10 79:23
  97:17
effective 45:21
  63:8 94:10,12
  99:17
effects 80:3
effectuate 45:10
efficiency 33:8
  44:13
efficient 99:25
  100:1 101:19
  102:3 119:19
either 46:9 57:21
  79:20 83:12 95:3
  95:24 96:18 97:4
  106:1 117:12
element 91:9
elite 12:24
else's 81:14
email 107:16
  113:2,6,7 123:5,8
  123:9
embodied 59:15
  89:9
emphasis 104:2
ended 70:7
energy 84:10,11
enforce 35:18
  44:9 60:25 90:5
  104:9
enforcement 71:9
  90:9 105:4,21
enforcing 85:4
  98:10 100:11,13
  100:16
engage 85:13
engaging 77:2
ensure 101:17
ensuring 105:20

enter   31:22
entered   22:1
    33:14
entire   29:24 34:17
entirely   48:18
    101:15
entitle   89:6
entitled   21:23
    36:12 114:12,21
    115:14,17
entity   82:20
equitable   45:10
    95:5
erroneous   85:8
especially   49:14
essential   21:10
    24:12,17 46:7
essentially   35:9
    39:24 40:10 45:18
    54:11 57:22 62:19
    71:11 114:19
    116:18 118:13
establish   92:21
established   44:7
estate   22:10,14,17
    22:17,23 23:1,5
    24:10 31:5 45:11
    46:12 47:14 48:24
    49:14 51:9,23
    52:15,16 57:8,11
    57:13,14,16 60:7
    71:7 80:17 84:6
    91:6
estate.see   96:8
estates   89:4 97:2
et   1:12,16 3:2,8,20
    4:13 5:2 6:8,20
    8:3 9:2,8,16,22
    10:6,14,20,24
    11:7,15,22 12:2
    12:18 13:7,17,25
    14:6,13,25 15:7
    15:15,20 16:2,10

16:13,21 17:4
    20:4,5 83:8,9
europe   10:8,22
    14:15,18,21
european   12:4,21
    15:17
evaluate   114:22
    119:21
evanston   6:22
    18:19 35:6 36:2
    38:14,24 39:3,4,8
    39:10,19,21,25
    40:7,14 65:13,14
    65:18,21 67:17
    68:7,15,25 70:1,6
    87:22 106:3,11,20
evanston's   38:15
    68:16
event   26:12 27:3,4
    31:8 36:6 69:12
    82:1 87:24 99:1
    102:21 104:1
    108:3
everybody   34:23
    34:24 75:12
evidence   37:24
    39:15 40:9,12,13
    69:21
evidenced   100:24
ex   5:12,13,13,14
    5:15,15,16,16,17
    5:18,18,19,19,20
    5:21,21,22,22,23
    5:24,24,25,25 6:1
    6:2,2,3,3,4,5
exact   57:12
exactly   23:10,18
    29:8 46:13 49:10
    64:4 72:20 78:16
example   52:16
    60:14 83:20 86:5
    86:7 88:5,13,24
    97:19 105:5

120:15
examples   42:15
    117:5
exceed   48:24
exceeded   48:23
excerpts   69:11
excess   4:2,20 6:16
    23:1 34:8 39:4,13
    48:18 52:22 53:11
    57:8 106:7,12
excessive   117:15
exchange   105:13
exclusion   117:8
    117:10,19
exclusively   30:5
    88:5
excused   110:24
exemplars   117:3
exercise   44:12
    62:9 110:15
exhausted   24:7
exhibit   4:22,23
    10:10,11 15:19
    67:18 69:15,25
    102:15,17 118:22
exhibits   20:14
    92:25
exist   64:18 104:16
exists   84:5 114:24
expect   25:4 26:5
expected   54:24
expecting   48:2
expedite   55:22
expense   49:5,7,17
    71:12
expensive   51:6
experience   75:14
    75:22,24
expert   81:9
expertise   50:24
explained   30:1
    35:13 74:11

explanation   12:20
explore   59:5
express   26:12
expressed   46:14
expression   35:24
expressly   104:16
extensive   84:16
    108:5
extent   28:6 47:15
    55:23 60:17 61:12
    71:19 81:12
    108:19,25 114:17
extinguishing
    49:1
extra   99:19
    119:16,18
extremes   84:2,4
extrinsic   40:12

                f

f   1:15 2:21 3:2,8
    3:20,25 4:2,13,18
    4:20 5:2 6:8,14,15
    6:20 7:2 9:2,5,9
    9:12,16,19,23
    10:2,6,9,14,20,25
    11:7,15,22 12:2,4
    12:5,6,8,10,18,22
    12:23,25 13:1,3,7
    13:17,21,25 14:4
    14:7,13,18,21,25
    15:7,15,18,21
    16:2,10,14,21
    17:4 80:2 98:24
    105:6 107:4,4
    124:1
f.2d   81:24
f.3d   84:10,12
    86:17 87:17 90:10
    93:7 95:17 104:12
faa   21:12
faced   56:14,17
    95:24

**fact** 22:15 23:1
25:8 26:16,18,23
31:6 38:10,12
44:3 45:2 47:6,18
52:20 57:23 58:12
59:15,19,20,25
61:19 66:6 71:23
72:15 74:12 75:15
77:1,5 78:22
80:24,25 81:3,4,8
81:17 82:20 85:6
88:17 92:19,21
93:12 95:9 101:2
101:16 120:15
**factor** 24:25 88:25
**factors** 25:5 48:25
49:1 57:17 86:4
**facts** 34:2 37:17
37:20,21,22,24
38:3 44:15 59:16
59:20,21 70:20,25
71:1,14,15,17,19
72:10,24 77:10,11
79:16,23 80:6,6
80:25 84:16 88:21
89:25 93:10,11
96:5 97:24 98:7
109:2
**factual** 37:6,11
38:11 65:3,8 85:8
88:4,9,12
**failed** 46:9
**fails** 82:4
**failure** 99:16
102:21 104:1,3
**fair** 30:16
**fairly** 26:17 27:2
71:24 105:23
**fairness** 61:25
**fall** 88:10 117:10
120:13
**far** 28:9 32:3
44:17 47:8 53:6

115:8
**farr** 18:10 20:18
**farther** 72:4
**fashion** 98:24
**favor** 3:23 4:16
5:5 6:11,25 20:10
21:1 38:7 39:10
44:12 77:21 84:25
85:2 86:15 89:10
90:15 96:1,19
105:1 112:5
**favored** 51:13
83:15 121:22
**favoring** 53:7,16
44:18 90:9
**favors** 84:5
**february** 105:11
**fed** 85:10
**federal** 22:1 33:7
44:18 83:15,16
84:7 85:18 86:5
86:18 122:22
**feel** 71:8
**felt** 117:2
**fifth** 57:24
**figure** 23:17 56:10
57:12
**file** 13:8 115:4
121:3
**filed** 3:10,24 4:17
5:5 6:12 7:1,5,8
7:14,20 8:2,8,16
8:21 9:4,11,18
10:1,7,16 11:2,10
11:17,24 12:3,20
13:12,20 14:3,9
14:16 15:1,10,17
15:22 16:4,11,16
16:24 20:14 24:14
24:16 94:3 108:17
109:8,9 110:3,17
120:7 121:4,11
122:12

**filing** 114:5
**film** 30:3
**final** 28:8 38:13
101:1
**finally** 21:16
65:12 81:16 91:2
103:8 106:3
120:18
**financial** 86:8
**find** 55:8 66:1
69:9
**finding** 71:23
86:20 109:1
**findings** 59:14
61:25 85:8 101:2
**finds** 89:20
**fine** 43:19 70:13
109:19 110:10
111:25
**finish** 27:6
**fink** 18:17
**fire** 15:24 16:6,25
83:21 88:14 105:6
113:12
**firms** 50:19
**first** 20:9,20 22:12
26:14,17 27:23
30:10,11,15,20
31:3 32:4 34:10
34:15 35:7 40:25
41:15 42:11,12,14
43:3,5,11,11
47:15,17,19,21
48:14,14 54:5
63:9 69:19 80:2
80:13 84:22 85:13
91:19 92:9,13
93:3,19 94:19
95:7,8,10,15
97:10 99:8,10
102:10 116:11
118:12

**fix** 82:2
**flipside** 86:23
**floor** 19:4
**focus** 24:19 49:6
76:16 120:16
**focused** 52:20
110:14 121:12
**focusing** 116:11
**follow** 39:4,13,13
53:23 68:7 70:3
106:5
**followed** 39:19
42:13 52:23
**following** 83:1
90:18 119:12
**follows** 39:5,9
40:2,7,14 53:11
65:14,22 66:5,20
**forced** 115:12
**forcing** 121:18
**foregoing** 92:20
124:3
**foreign** 108:7
**form** 39:5,5,13,19
40:7 42:13 47:18
50:7 65:14,22
66:6 68:7 70:3
73:18 77:3 106:6
106:6,8,9
**formally** 107:12
113:3 123:7
**former** 98:15
**formerly** 7:11
8:14
**forms** 73:6,7,8,11
73:11,15
**forth** 22:20 39:6
45:23 59:13
120:11
**forum** 29:21
**forward** 35:18
49:21 50:5 51:15
59:18 74:3 83:18

113:18,19 117:23
**found**  29:17 48:12
  90:6 91:6 95:10
  95:20 101:12
**four**  30:14 78:11
  85:13 87:7 94:8
**fourth**  85:21
**fran**  12:12
**frankly**  44:15
  50:1 52:10 54:18
  58:4 71:20 82:6
  95:9 101:8 112:1
**free**  34:23,24 72:3
**freely**  65:1
**friend**  23:23
**front**  58:24,24
  59:16 75:18
**full**  114:17
**fully**  37:5
**functions**  62:2
**fund**  122:17
**fundamental**
  74:25 89:9 91:9
  92:22 93:6 100:6
**fundamentally**
  89:3 93:13,16,22
**funds**  49:24
**further**  16:22
  24:11,20 29:19
  53:22 70:10,11
  91:8 98:22 103:9
**furthermore**
  31:16
**future**  59:9 97:15
  98:15 106:21

**g**

**g**  9:6 20:1
**g's**  7:18
**gallagher**  18:10
  20:19
**gamut**  120:9
**gather**  37:17
  101:15

**ge**  86:9
**geddes**  4:10 10:16
  14:10
**general**  9:19 10:2
  14:4 43:6,7 77:14
  90:9
**generally**  72:14
  84:24 85:12 86:14
  87:9 88:10 98:8
  98:23 122:6
**generically**  114:2
**generous**  80:14
**george**  4:7 7:5,8
  7:14,15 8:21 11:2
  11:11 15:2 77:23
  107:19 111:9
**gerling**  9:19 10:2
  14:4
**getting**  48:1 49:4
  55:22 71:6 119:12
  120:13
**give**  58:4,4 82:24
  99:4 105:25
  115:21,21 116:5
  116:21
**given**  30:17 33:15
  63:24 65:9 66:3,4
  72:7 82:7,7 86:21
  87:2 100:21
  111:11 114:3,4
  115:25 116:14
**gives**  33:25
**glenn**  42:20 77:15
  86:23
**global**  9:19,24
  10:2 14:4 21:4
  42:20 56:24 77:16
  85:24 86:24 96:11
**globe**  44:2
**go**  20:7 22:16 25:7
  27:20 34:9,15,21
  35:17 38:12 44:7
  46:13,15,17,20

47:12 48:3,8
  49:11,21 51:15,24
  53:18,20 55:10
  56:11 58:22 59:17
  62:13 63:9,14
  69:8 72:3 74:3
  77:5 83:18 94:21
  97:10 106:1 107:9
  110:15 116:12
  119:9
**goal**  90:2
**goes**  33:21 42:8
  48:16 56:5 60:5
  62:7 73:20
**going**  24:18 27:4
  27:9 29:12 31:4
  31:13,24,25 32:3
  32:11,12 34:1,3
  34:25 36:15 37:2
  38:9 41:23 46:22
  47:9,14 48:19
  51:9 53:18 55:24
  58:24 61:23 62:3
  62:19 63:2 65:2
  66:15 69:8,12,17
  73:24 74:2 75:3
  81:3,12 82:11,23
  86:16 98:11 105:2
  110:20 111:16
  113:18,19 115:15
  116:12 118:6
  119:16 121:21
**good**  20:2,17
  33:25 38:22,23
  58:15 80:20 83:6
  118:8
**gorelick**  4:8
**gotten**  57:18
**gov**  3:16
**government**  3:4
**governmental**
  8:10 13:13 16:17

**governments**
  36:23
**grant**  40:2 101:21
  105:10 107:6
  111:12 112:8
**granted**  116:4,20
  119:3
**granting**  108:4
**grappling**  93:21
**great**  39:2 81:12
  110:18
**greek**  105:8
**green**  18:23 38:16
  38:20,22,24,24
  39:2 66:16,18
  67:8 68:9 69:12
  69:16,18
**gregory**  112:12
**grips**  22:25
**ground**  48:16
**groundhog**  76:2
**grounds**  56:5
**group**  12:4,22
  15:17 76:22 88:6
**groups**  62:18
**gs**  8:7
**guess**  37:15 47:1
  48:6 52:25 61:24
  66:12 71:8,16
  112:6 113:22
  114:2,25 118:17
  118:23 119:4
  120:8
**guidance**  84:17,18
**gulf**  15:23 16:5,25
  66:24 67:12,16,21
  67:22 68:1,1,4,13
  68:19,22 69:3,14
  69:20,24 106:16
  113:11,15 114:15
  114:15,16

| **h** | 10:19,24 11:6,14 | **holistic** 120:19 | **housekeeping** |
|---|---|---|---|
| **h** 8:9 | 11:21 12:1,17 | **hon** 2:22 | 109:6,20 |
| **hagerstown** 33:5 | 13:6,16,24 14:6 | **honor** 20:17 21:1 | **hr'g** 4:24 |
| **half** 50:13 | 14:12,24 15:6,14 | 23:3 24:24 25:20 | **hudson** 13:13 |
| **hampshire** 4:3,21 | 15:20 16:1,9,13 | 27:1,4 28:12 | 16:17 104:22 |
| 6:17 | 16:20 17:3 122:17 | 30:25 31:17 32:16 | 118:8,9,11 119:24 |
| **hand** 30:17 74:23 | **hear** 20:16,20,21 | 34:13,16 38:5,17 | 120:3,5,24 121:6 |
| **handle** 35:2 | 20:22 38:25 43:16 | 38:20,22 39:12 | 121:12,16 122:13 |
| **handled** 22:10 | 43:18 70:13 72:17 | 40:19,23 41:14,24 | 123:5,11 |
| 43:25 73:10 | 75:22 118:16 | 43:1,12,17,20,21 | **hundreds** 116:24 |
| 120:21 | **heard** 28:3 29:21 | 43:23 44:11,20 | **hyde** 17:25 124:3 |
| **handling** 50:23 | 58:2 | 45:16 46:3 47:10 | 124:8 |
| 80:23 | **hearing** 3:1,7,9,15 | 48:8 49:6,18,19 | **hypothetical** |
| **hands** 55:22 | 3:19 4:12 5:1 6:7 | 51:21 52:6,9 54:4 | 28:23 29:9 |
| **hang** 83:2,3 | 6:19 7:5,7,23 8:6 | 54:14 56:7,17 | **hypotheticals** |
| **happen** 33:21 | 8:13,20 9:1,15 | 58:4,23 61:15,23 | 28:24 |
| 34:25 59:9 72:7 | 10:5,13,19 11:6 | 62:12 63:4,10 | |
| **happened** 41:6,17 | 11:14,21 12:1,17 | 64:18,23,25 65:12 | **i** |
| 41:25 | 13:6,16,24 14:12 | 65:23 66:1,14,18 | **i.e.** 87:10 88:21 |
| **happens** 33:22,23 | 14:21,24 15:6,14 | 66:23,24 67:4,12 | 90:19 92:10 94:16 |
| 42:9 55:10 59:10 | 16:1,9,20 17:3 | 67:24 68:9,14 | 94:19 96:5 |
| 73:2,4 77:4 | 20:6 28:4,7 41:8 | 69:9,14 70:5,10 | **idea** 23:22 33:25 |
| **happy** 20:7,16 | 81:10 82:12 97:19 | 70:15 72:19 75:5 | 49:23 75:20 80:20 |
| 44:4 70:13 109:17 | **held** 3:15 81:25 | 75:7,13 76:4,6,25 | 80:21 |
| 118:16 | 93:9 99:6 | 77:23 78:9 79:14 | **ideal** 105:7 |
| **hard** 24:16 53:13 | **helpful** 76:13 | 79:18,25 80:10,13 | **identical** 54:18 |
| 59:24 113:23 | **hereunder** 102:23 | 80:22 81:3,11,16 | **identifiable** 40:3 |
| **harmonize** 78:14 | 103:17 104:2 | 81:23 82:9,15 | **identification** |
| 79:2,7 | **herring** 35:24 | 107:19 108:16,19 | 118:20 |
| **harmonized** 104:7 | **high** 73:23 100:5 | 108:21 109:4,8,24 | **identified** 39:22 |
| **harmonizes** 105:3 | **highlights** 72:13 | 110:19 111:9,18 | 69:20,24 106:15 |
| **harris** 13:20 | **hill** 84:9 89:14 | 112:10,12,16 | 113:25 114:8 |
| 15:10 | 100:8 | 113:8,14 114:7 | 118:21 |
| **hasn't** 114:8 | **hinged** 104:14 | 117:13 118:5,8,13 | **identifies** 65:22 |
| 117:23 | **history** 24:13 87:4 | 118:14,15 119:17 | **identify** 39:14,20 |
| **hdi** 9:19,24 10:1 | **hoc** 8:6,9 13:13 | 120:3,25 121:6,16 | 65:15 121:19 |
| 14:3 | 16:17 | 123:11 | **illinois** 18:21 |
| **head** 107:18 | **hold** 42:24 | **honor's** 42:17 | **immediately** |
| **headed** 102:19 | **holding** 104:6,21 | **honor's** 107:25 | 31:14 |
| **health** 1:12 3:1,3 | **holdings** 83:20 | 111:11 | **impact** 79:23 |
| 3:7,10,19 4:12 5:1 | 85:10,24 86:12 | **hope** 38:25 58:7 | 86:21 |
| 5:6 6:7,19 9:1,8 | 88:14 | **hopefully** 48:2 | **impacts** 79:19 |
| 9:15,22 10:5,13 | | | **impairment** 76:12 |

**implementation**
29:17,19,20 91:5
95:5 99:17
**implicate** 89:17
**implicated** 76:9
76:10 89:2
**implicates** 99:9
**importance** 99:13
**important** 25:2
48:16 69:18 74:22
81:20 93:15,16,22
96:22 99:13
100:11
**importantly**
55:21 97:2
**impossible** 72:23
**incepted** 70:3
**inclination** 108:10
**inclined** 72:14
**include** 90:2
120:17
**included** 72:15
114:17
**includes** 24:1
**including** 28:17
59:14 80:7 90:11
92:25 99:25 104:6
104:21
**inconsistent** 32:15
33:10 49:4 52:24
55:16 64:8 90:24
101:10
**incorporate** 82:4
**incorporates**
40:14 106:8
**increase** 46:6
**increases** 46:6
**indemnification**
45:8,13
**indemnity** 96:9
**indicate** 39:15
44:23

**indicated** 25:16
49:9 74:1 81:21
**indicates** 39:17
40:13
**indicating** 31:17
**indicia** 42:8
**indiscernible** 21:2
21:8,12 22:4
27:14 34:4 35:11
35:11 36:9 41:13
41:15 44:14 57:21
63:2 64:9 65:19
73:12 74:4,22
75:6 79:17 81:25
109:12,14 110:3
111:20 112:24
117:2 118:9,12
**individual** 100:10
120:13
**industries** 87:16
**inefficiencies**
52:25
**inefficiency** 112:4
**inequitable** 30:19
30:22 31:9 45:9
95:11
**information** 42:6
**informed** 45:5
**ingests** 36:25
**inherent** 92:22
**inherently** 89:21
**initial** 63:10
**initially** 45:4
**injury** 25:14
31:12,13 36:20,23
36:25 45:19 46:2
47:13,23 48:3
88:24 93:8 94:7
94:18 115:25
116:24 119:25
**inquiry** 89:24
90:2

**insignificant**
62:25
**insofar** 107:7
**insolvent** 31:20
52:16
**instance** 45:7
63:22 114:14
115:13
**instituted** 103:16
**instructive** 48:11
**insubstantial** 51:8
**insufficient** 92:21
**insurance** 1:15,16
3:2,3,8,20,25 4:1
4:2,3,13,18,19,21
4:22 5:2 6:8,13,14
6:16,17,20,22,22
6:23 7:2,3,6,9,11
7:12,15,24 8:14
8:14,22 9:2,5,6,9
9:12,13,16,20,23
10:2,6,8,9,14,20
10:22,25 11:7,15
11:22 12:2,4,5,6,7
12:9,18,21,22,22
12:23,24,25 13:2
13:7,17,21,21,25
14:4,7,13,15,17
14:18,21,22,24
15:7,15,18,21,23
15:24 16:2,6,6,10
16:12,14,21,25
17:1,4 18:19 20:5
21:9,23 22:9,22
22:24 23:6 24:1,2
24:11,15,21,22,24
25:3,13 26:2,3,8
26:18,19 27:17
28:17 29:13 30:21
31:4,10,11,15,17
32:19,20 33:1
34:14 35:8,10,17
35:20 36:4,12,14

36:18 37:12 38:14
38:14,25 39:5
43:21 44:10 45:7
45:14,22 46:3,5,8
47:5,9 48:5,20,24
50:11,18 51:12
54:8,9 55:2,6,25
56:25,25 58:1,19
62:17 63:11,16,21
64:21 67:18 69:3
73:7 74:10,13,15
74:16,21,24 78:5
81:6,7,8,10 82:4
82:13 83:8,10,21
87:22,22 88:6,14
89:6 91:13 92:9
92:14,19 93:14,22
94:4,9,16,24 95:1
95:2,17,21 96:6
96:23 97:20,22
98:3 99:16 100:6
100:7 102:22
103:12,18 104:22
105:5,6,7,8 106:4
106:6 113:11,12
114:1
**insured** 54:25
91:24 93:8 102:24
103:17 120:1
**insurer** 41:19
52:21 59:8 104:1
107:3 116:22
117:25 122:4
**insurers** 3:22 4:15
5:3 6:10,24 18:11
21:19 23:12,17
28:14 35:4,5 41:1
41:8,12,22 42:19
59:12 73:7 76:17
76:21 77:8 78:7
91:20 92:20 93:5
93:8 94:18 95:23
97:17 99:22

101:16,20 102:4,7
106:7 107:2,20
108:6,7 109:10,13
109:20,25 110:1
118:18
**insurers'** 97:21
**integrated** 73:12
73:16
**intend** 23:19 58:1
82:5
**intended** 54:25
85:19 90:8
**intends** 40:5
41:19
**intent** 119:18
**interest** 80:17,18
**interestingly**
80:23
**interests** 90:15
**interfere** 91:4
**internal** 85:11
90:11
**international** 1:16
3:25 4:1,3,19,20
4:21 6:14,15,16
7:3 10:9 12:7,7,8
12:25 13:1,1
14:18,22 42:18,22
102:21
**interpret** 59:20
61:2,13,20
**interpretation**
21:25 36:7,16
37:3,11,13 38:4
38:10 64:25 65:3
65:4,7 70:20,23
70:25 71:16,17,24
72:6,9,11,25 79:7
87:25 88:8,9,12
88:23 98:12
105:12
**interpretations**
36:20

**interpreted** 36:13
61:12,22 78:14
**interpreting**
37:19 104:5
**interrupted**
116:10
**intertwined** 70:20
**intimate** 59:1
**involve** 36:19 37:2
38:9 48:14 56:10
83:25 92:5 99:21
**involved** 22:14
47:17 50:19,20,22
56:25 62:17 74:13
74:14 90:8 100:12
105:17
**involves** 23:1
98:12
**iqbal** 115:10
**ira** 8:2
**ironshore** 6:22
7:6,9,10,14,24
8:13,22 35:6
77:24 78:4,19
87:23 102:11
107:20,21,22
111:10 112:15
**isn't** 101:15
119:14
**issue** 21:17 23:18
24:3 28:2 29:2,5
35:22 37:15 38:5
38:13,14 39:18
42:2,2,8 47:22
48:14,17 49:7
52:7 53:6,10 54:5
54:19 55:1,3,7,14
56:12 57:22 58:3
58:13 61:17 63:12
64:22,23 70:20
73:9 78:9 81:19
81:21 84:23 87:8
88:11,12,16,21

89:5 92:3,9 96:6
96:23 97:6,17,19
99:9,10 101:1,9
101:11 102:16
104:15 109:12,15
110:10 113:24
114:4,24 116:23
117:2,17 118:4
119:20,23
**issued** 35:8 36:1,2
64:17 68:2,24
69:1,2 78:11,18
82:3
**issues** 21:16 25:3
28:6,19,21 29:9
29:12 33:13 34:1
34:1,10 37:2,6,11
38:11 41:25 51:12
52:22 53:12,17
54:7 55:11 58:22
65:3,5,7,8 70:8,24
71:1 72:25 73:1
74:24 76:1 82:25
88:5 90:3,18 97:6
101:14
**it'll** 32:14,14,14
71:23 75:21
**item** 109:6
**items** 26:17
**it's** 100:7 105:17
107:14 108:21
109:15 111:6
113:5 117:2,2
121:4 122:5,10,14
122:15,16 123:9
**iv** 7:6,8,14 8:22
11:2,11 15:2
**i'd** 118:12
**i'll** 109:25 122:17
123:5,14
**i'm** 102:15,17,17
107:18 110:20
112:11,17 113:10

113:17,23 114:4
115:22 121:21
**i've** 102:7 112:5
113:20

## j

**j** 4:4,7 9:18 10:1
14:3 15:3
**james** 11:4
**january** 24:16
**jay** 3:24 4:17 6:12
7:1
**jenna** 13:13 16:17
118:8
**jeopardize** 56:20
85:5 89:23
**jeopardized** 51:19
92:16,17
**jersey** 104:23
105:12
**jlm** 87:16
**jodi** 18:23 38:15
38:24
**john** 9:21 14:5
**join** 28:2
**joinder** 7:25
**joint** 3:22 4:15 5:3
6:10,24
**joseph** 10:16 14:9
112:10,12,12,19
112:22,24
**joshua** 113:14
**jr** 15:23 16:5,24
**judge** 2:23 20:2
25:23 33:5 34:8
41:7,21,25 42:20
42:20,25 48:10
49:1 53:8 55:14
58:25 77:6,15,16
86:23 101:12
108:8
**judgment** 21:23
45:11 72:1,2
79:20 80:3 119:10

**judicial** 33:8
122:8
**julie** 10:10
**july** 45:23,24,25
94:12 105:8
**june** 2:5 3:9 96:16
104:24 122:18
124:25
**junior** 60:17
**juniors** 60:20
**jurisdiction** 9:4
9:11,18,25 10:16
10:23 11:2,10,17
11:24 13:11,19
14:2,9,16 15:9
23:25 35:11 43:22
52:21 56:21 62:8
62:10 63:17,17
92:5 98:10 102:24
102:25 103:3,25
103:25 104:9
105:3,4,20 108:8
108:18,22 109:7
**jurisdictional**
43:24 109:11
**jurisdictions** 44:1
**jury** 16:11 100:25
**justified** 119:22
**justin** 2:25

**k**

**k** 1:15 3:2,8,20,25
4:2,13,18,20 5:2
6:8,14,15,20 7:2
9:2,5,9,12,16,19
9:23 10:2,6,9,14
10:20,25 11:7,15
11:22 12:2,4,5,6,8
12:10,18,22,23,25
13:1,3,7,17,21,25
14:4,7,13,18,21
14:25 15:7,15,18
15:21 16:2,10,14
16:21 17:4 107:4

**kaminetzky** 7:20
**karaoke** 122:20
**kenneth** 8:9
**kent** 4:9 12:11
15:19
**kept** 24:22 73:21
**kevin** 9:6
**key** 53:21 96:22
**kicks** 92:14
**kind** 34:23 42:8
120:8
**kinds** 32:16 37:1
**knew** 82:6
**know** 23:3 27:23
29:11 36:14,17
37:21,22 38:5
39:4 40:10 43:8,8
44:11 47:11,15,18
48:5,10,21 49:22
50:17,22 51:6
52:1 53:16,23
54:23,24 55:13,14
55:19 56:12,20,23
57:3,6,20 58:3,10
58:16 59:22 61:24
63:2,18 64:20
65:1 66:7 69:4,23
71:13,20 72:24
74:15 75:8,20,21
75:25 80:13,14,15
111:3,23 114:12
114:21 115:7,14
115:17 116:24
119:3 120:10,24
122:16
**knowing** 117:14
**knowledge** 59:1
122:25
**known** 7:11 8:14
**koepff** 4:5 11:17
11:25 19:7 40:19
40:19,23,24 43:7
44:3 53:14 55:19

75:9 76:4,4,8 80:5
80:22 109:24,24
110:6
**koepff's** 48:17
80:14
**koepff's** 107:3
112:15
**kohane** 12:3,20
**konzern** 9:19 10:2
14:4
**kramer** 23:23
24:5

**l**

**l** 3:9
**l.p.** 1:8,12 3:2,8
3:10,11,12,13,13
3:14,15,20 4:13
5:2,6,7,8,9,9,10
5:11 6:8,20 7:21
8:3,17 9:2,8,16,22
10:6,14,20,24
11:7,15,22 12:2
12:18 13:7,17,25
14:6,13,25 15:7
15:15,20 16:2,10
16:13,21 17:4
**lack** 9:3,10,17,25
10:15,22 11:1,10
11:16,24 13:11,19
14:2,9,16 15:9
27:17 108:7,18
109:7
**lacking** 95:16
**laid** 25:9 31:24
47:25
**landing** 71:18
**lane** 34:8 41:7,22
41:25 42:20 53:8
55:14 77:16
101:12 108:8
**lane's** 48:10
**language** 37:19
54:12,17,21 64:5

64:6,7,18 65:21
65:25 81:22 82:1
82:6,6 86:12 88:2
104:21 106:7,17
120:22
**large** 26:22 33:1
**largely** 21:5 30:4
99:8
**lastly** 24:24
**latched** 96:4
**late** 121:11
**lateral** 25:24
**lauren** 16:11
**law** 4:14 6:9,21
9:10,24 10:21
11:8,23 12:15,19
13:10,18 14:1,8
14:14 15:8 16:3
21:2,6 22:13
25:25 29:5 33:3
40:11 42:19 43:4
43:6,7 50:19,21
72:15 74:12 78:17
81:2,3 82:14 85:6
85:9 89:11 101:2
**lawful** 103:14,15
**laws** 103:6
**lawsuit** 60:19
61:21 108:12
**lawsuits** 122:13
**lawyer** 28:23
**lawyers** 50:22
62:20
**lay** 26:7
**layer** 50:25 68:5,6
68:15 76:8,9
**layers** 24:6,6
34:14 52:22
**laying** 60:17
**lays** 25:11
**lead** 33:10 58:3
90:24 91:2

**leads** 117:15
**leaves** 97:6 110:25
**led** 29:18 101:11
**ledanski** 17:25
 124:3,8
**lee** 15:17 122:19
**left** 64:7 82:25
 110:25 117:22
**legal** 34:1 124:20
**legion** 22:15
**lehman** 85:9
 86:12
**lend** 34:18
**length** 81:12
**lengthy** 107:10
**letter** 12:19
**letting** 54:2
**let's** 114:25
**level** 48:18 75:10
 84:19,20 99:13
**leveridge** 109:4,4
 110:8,11,18
**lexington** 18:5
 19:4 88:6
**lexis** 96:10,16
 105:14,16
**liabilities** 48:23
 93:25
**liability** 4:2,21
 6:16 21:24 92:10
 122:2
**liable** 120:18,19
**liberty** 10:8,9,22
 14:15,17,18,21,21
 42:13
**lie** 106:22
**liederman** 4:7
 9:18 10:1 14:3
**lies** 83:17
**life** 109:25
**lift** 111:2 113:2
**light** 83:12 84:3
 88:9 99:22 101:6

123:3
**likelihood** 48:22
 99:23
**limit** 98:9
**limitation** 100:21
**limited** 4:3,21
 6:16 12:5,6,6,7,9
 12:10,10,23,23,24
 12:25 13:2,3,4
 71:23 80:1 85:24
 105:5,15,20
**limiting** 88:1
**limits** 22:24 23:11
 23:15 76:12
**limon** 27:23
**line** 25:20
**lines** 1:16 4:1,19
 6:14 7:3 22:19
 30:11,17 31:9,16
 43:8 44:23 45:2,3
 45:15 46:14 47:7
 47:12 48:6,15
 56:9,10,13,16
 77:17 86:16 89:13
 90:12 93:7 95:4
 95:21 96:5,21
 99:10 102:22
**list** 69:4 99:15
**listing** 67:20
**literally** 52:17
**litigate** 41:9,19
 79:18
**litigated** 54:7
 61:10 115:7
**litigating** 41:11
**litigation** 8:10
 13:14 16:18 34:9
 36:21 53:3,16
 70:8 72:10 76:16
 83:19 89:10 90:4
 90:15 91:1 95:23
 96:1,18,19 98:3
 100:23,24 101:6

101:10 106:2
**litigations** 33:10
 101:17
**little** 34:6,12 68:4
**llc** 4:24 83:20
 84:14 86:3 87:15
 88:14 98:23,24
**lloyds** 84:13
 105:15
**lloyd's** 105:9
**llp** 18:3,18 19:1
**logistical** 32:23,24
 33:13,19 34:5
**london** 12:9,10
 13:3,4 50:17,18
 50:25 53:22 77:3
 80:23 84:13 105:9
**long** 52:3 83:24
 108:21 111:2
**longer** 110:4
**look** 24:13 48:13
 54:20 56:24 57:10
 67:18 121:17
 123:14
**looking** 60:25
 89:4 98:15,19
 100:15 117:4
**lookout** 119:15
**loss** 75:18
**losses** 116:3,5
**lost** 116:19,21
**lot** 32:5,12 74:13
 74:16
**lower** 24:6,6
 75:10
**lp** 3:3 20:4 83:7,8
**ltd's** 11:9

**m**

**m** 9:4,11 16:11
**macksoud** 16:12
**maeglin** 10:8,23
 14:17

**mail** 103:20
**main** 56:2
**mainstream** 30:4
**maintained** 32:12
**major** 32:8 38:9
 48:25 49:1 86:21
**majority** 47:16
 87:8
**making** 78:24
**management**
 49:14
**mandated** 72:9
**manner** 36:13
 99:25 100:1
 101:19
**manufacturers**
 36:24
**manufacturing**
 3:12 5:8
**march** 105:16
**marine** 15:24 16:6
 17:1 113:12
**marked** 47:8
**marketplace** 82:3
**massive** 62:22
**material** 51:8
 109:9,10,17
**materially** 86:25
**matter** 1:6 20:9
 22:10 26:10,20
 27:18 29:5,12
 31:7 32:7 34:25
 44:8 46:24 48:12
 50:23,23 56:14
 58:23 60:7 63:10
 64:13 65:10 74:8
 74:11 81:5,15
 86:20 87:2 96:3
 108:19 113:10
 123:2
**matters** 25:7
 43:22,24,25 86:24
 89:16 101:7 102:1

110:25
**maximize** 55:21
**maximizes** 36:13
**maximizing** 51:17
**mbna** 84:9 89:14
  89:14 100:8
**mccammon** 9:21
**mckinley** 95:17
**mcnally** 4:6
  108:16,16
**mcs** 116:1
**mdt** 46:11
**mean** 20:8 30:25
  36:22 48:7 53:8
  53:25 54:5 56:9
  56:23 59:6,20
  60:12 61:5,17
  67:2 69:7 71:14
  71:22 80:16
  115:11
**meaning** 32:10
  35:15
**mechanical** 96:15
**mechanics** 91:4
**mechanisms**
  31:23
**media** 61:6,9
  98:23
**member** 64:1
**memorandum**
  4:14 6:9,21 9:10
  9:24 10:21 11:8
  11:23 12:14,19
  13:10,18 14:1,8
  14:14 15:8 16:3
  16:22 91:7 113:21
  113:22,22
**mentioned** 24:25
  76:25 107:21
  114:14 117:7
**mere** 90:25
**merely** 120:6

**merit** 27:17,18
**mf** 21:4 42:20
  56:24 77:16 85:24
  86:23 96:11
**mic** 38:16
**michael** 4:8
**michaelides** 18:17
**middle** 44:21
**million** 31:14,14
  45:20,23,24,25
  46:3,6,11,19 47:4
  57:1 94:10,11,11
  94:11,14,19,19,19
**millions** 62:24
**mind** 55:20 92:4
  118:25 119:6,12
**mineola** 124:23
**minimum** 49:12
**minute** 59:6 82:23
**minutes** 76:5
  77:24
**misapply** 98:6
**misconstrue** 98:6
**misconstruing**
  99:3
**misinterpreted**
  37:8
**missing** 53:1,25
  108:14
**mitchell** 3:24 4:4
  4:17 6:12 7:1
  12:14 18:15 20:18
  72:20
**mixed** 37:10 65:2
  72:15 73:4 85:6
  88:8
**moment** 28:1 49:6
  49:23
**money** 23:7 24:3
  31:4,5 32:15
  44:24 46:12,14,19
  46:21,22 47:12,12
  47:13,14,20 48:2

50:16 51:9 99:11
  99:12
**monica** 4:6
**montauk** 35:22
  63:12,12,20 64:4
  78:10,12,25 79:8
  81:18,22 82:7
  104:10,20
**montenay** 84:10
  84:11
**months** 24:18
**moore's** 122:22
**moot** 108:9,13,14
  109:2,16
**moran** 86:1
**morning** 20:2,17
  38:22,23
**morning's** 123:13
**morphed** 106:13
**motion** 3:21,21,22
  4:15 5:3 6:10,24
  7:5,10,12,17,18
  7:18,24 8:1,7,15
  8:20,20 9:3,7,10
  9:17,21,25 10:7
  10:15,21 11:1,9
  11:16,23 12:3
  13:8,8,18 14:1,8
  14:15 15:1,8,16
  15:22 16:3,22,23
  20:25 21:15 49:20
  49:21 83:10 84:18
  91:7 95:24,25
  96:1,17,17 98:18
  99:14 101:21
  107:6 108:4,18
  109:16 110:11,22
  111:1,2,7,11,13
  111:20 112:9
  113:11,21 114:8
  114:11,11,22
  115:4,8,9,15
  116:20 117:21

118:17,24 119:1,2
  119:5,6,10,11,19
  119:21,22 121:20
  121:21 122:9,17
  123:6
**motions** 13:11
  16:15 20:9 23:25
  43:21 100:24
  108:6,9,24,25
  109:7 110:22
  116:4 121:22
**mounts** 80:11
**movant** 92:20
**movants** 93:1
  97:25 101:3 104:4
  104:13 107:6,7
**movants'** 107:8
**move** 25:2 50:5
  116:22 117:12
**moved** 81:9
**moving** 50:11
  93:5 114:5
**msc** 116:17
**mt** 95:17
**multibillion** 57:1
**multiple** 41:3
  56:13 90:12,20
  112:4
**multiples** 56:13
**multiplication**
  101:10
**multiplicity** 34:3
**multiplied** 51:7
**munich** 65:15,15
  65:16 66:1,10,20
  66:25 67:10,13,23
  68:3,12,21,22
  106:6,12,14
**municipal** 46:16
**mute** 83:3
**mutual** 10:8,22
  14:15,17,21 35:23
  42:13 95:14

104:11 105:7

**n**

**n** 18:1 20:1 124:1
**name** 40:23 78:2
  106:14
**named** 103:18
**narrow** 64:24
  87:20 88:19 102:4
  102:5 107:21
  109:21
**narrowly** 88:2
**nathan** 12:12,13
**national** 35:21
  46:15 83:21 88:14
  105:6
**nature** 24:17
  33:12 37:11 89:25
  93:21
**near** 84:1
**neca** 35:20 105:5
**necessarily** 21:18
  25:25 28:13,19,20
  28:25 34:4,18
  37:23 89:23 96:7
**necessary** 95:3
**need** 25:2 90:3
  91:21 92:4 107:12
  109:19 110:13,23
  113:3 123:7
**needed** 24:11
**needs** 44:17
  121:19
**negotiated** 94:22
  111:7
**negotiating** 74:25
**negotiation** 95:3
  97:4
**negotiations** 81:7
**neither** 93:20
**netflix** 29:16,22
  29:23 30:3 61:5,6
  61:8 98:23

**neutral** 51:5
  97:20,22
**neutrality** 81:8,10
  81:13
**never** 22:25 57:13
  66:21,21 75:13
  93:12
**nevertheless**
  88:19 89:8 100:12
  106:10 108:12
**new** 1:2 4:3,21
  6:16 18:6,13 19:5
  40:11 50:20,21,22
  50:24 60:15 63:22
  82:13,20 96:9
  104:23 105:12
**nexus** 91:17
**nicolaides** 18:17
**nielsen** 87:16
**non** 22:4 41:11
  50:10 54:7 55:1
  56:1 73:6,19
  74:18 75:17 77:14
  77:15,18,19 84:24
  84:24 85:1,20
  86:14,15 93:12
  96:20 101:6,14
  102:1
**north** 12:24
**noted** 21:2 25:22
  41:25 86:23 89:11
  93:11 96:5 104:21
**notes** 45:19
**notice** 3:9,21 7:7
  42:5 59:12 113:3
  115:5,19 116:21
  117:11,25 122:9
**noticed** 26:6
**noting** 86:11
  104:4
**notion** 86:16
**notwithstanding**
  93:7

**nov** 87:18
**novo** 85:9
**nuances** 120:13
**number** 22:24
  23:10 35:13 42:16
  43:10 51:25 67:15
  76:13 80:22 84:18
  84:19 93:18 114:4
  115:25 121:10
**numerous** 44:1
  83:10
**nursing** 96:12
**ny** 2:3 18:6,13
  19:5 124:23

**o**

**o** 2:21 20:1 103:22
  107:4 124:1
**obeyance** 50:8
**object** 28:18
**objected** 111:5
**objection** 7:18,18
  7:23 8:1,7 95:25
**objective** 89:23
**objectives** 90:1
**obligated** 79:7
**obligation** 45:8,13
  92:15
**obligations** 63:25
**obtained** 91:13
  94:20,20
**obtaining** 94:17
  99:17
**obviously** 23:19
  28:7,22 31:12
  41:1 81:13 88:3
  107:10,15 108:5
  108:10,25 122:5
  122:10
**occasioned** 59:22
**occur** 91:25 98:16
**occurred** 59:2,3
  59:22 91:24

**occurrence** 36:21
  36:22 73:2,3,12
  73:17
**occurs** 75:16
**oct** 83:22
**october** 70:2
  85:10
**oetken** 25:23
**offer** 80:14
**offered** 54:3 55:19
**offering** 76:14
**office** 103:14
**officer** 103:12,19
**official** 7:23 8:2
**oh** 112:11
**oil** 35:22 63:12,12
  104:10
**okay** 20:2,22,24
  29:15 30:8,9
  32:23 38:25 40:18
  41:15 43:3,13,13
  43:16,18 54:15
  56:19 62:11 67:7
  67:11 69:16 70:9
  70:13,18 72:12,17
  76:7 77:25 80:12
  82:10,22 83:6
  107:24 108:5
  110:5,18,20
  111:25 112:19,23
  113:1,9,16,20,20
  116:10,23 118:3,6
  119:24 120:23
  121:14,17 123:12
  123:12,14
**old** 79:11 124:21
**omitted** 85:11
  90:11
**omnibus** 109:9
**one's** 60:25 75:16
**ones** 23:22 34:14
  34:15 36:19 53:19
  53:21,22 104:24

[onondaga - person]

onondaga 80:1,1
operable 65:18
operative 40:1,2
opinion 101:12,16
opioid 37:1 46:15
opioids 21:24
  36:21,24 73:1
opportunity
  28:18 91:22
opposed 79:3
  100:16 101:2
  104:3
opposing 83:17
opposite 78:17
opposition 5:3
  8:13 13:10 16:15
  21:15 58:13 69:22
  91:7 98:17 109:9
  111:17 113:22
  115:12
option 55:20
  106:1
oral 20:16
order 28:8 33:20
  34:22 41:14 45:10
  53:16 59:13 61:19
  61:20 70:21,22
  77:21 83:11 92:7
  101:1,5 107:9,18
  112:2 113:2 123:5
ordered 29:8
orders 90:6 98:10
  123:14,15
orion 22:19 25:23
ostensibly 97:9
outcome 21:9
  29:23
overall 93:23
overarching
  54:22
overbroad 34:6
overcome 112:5

overkill 110:12
overlap 38:3 54:6
override 21:11
  89:19 90:8 97:9
  100:14
overriding 85:2
oversaw 59:1
overused 35:24
oxycontin 59:23

**p**

p 18:1,1 20:1
  107:4
pa 83:21
page 45:3 91:6
  103:23
paid 25:12,19
  31:3,4,13,18
  35:16 47:20 51:3
  94:15
pan 81:23
panel 28:9 29:1
  36:9 59:17 64:17
  72:9 75:19,20,25
  76:1 97:24 98:4,5
  98:18
panels 29:4 44:1
  55:10 58:25 90:23
  101:18
paper 68:2,23
  69:2
papers 32:9 46:9
  116:2
paragraph 102:19
  103:22 104:15
  105:24 117:19
parcel 35:14 88:5
parceling 74:25
part 21:8 28:6
  35:14 41:18 61:25
  79:18,20 80:9
  81:4 84:22 85:6
  87:7 98:1 104:13
  118:22

particular 29:9
  30:10 36:3 44:14
  60:20,21 65:9
  73:14 75:17 84:16
  85:15 90:7 95:22
  98:7 100:13
  103:24 115:5
  116:21 118:15
particularized
  89:24
particularly
  36:18 78:9 115:24
particulars 116:8
parties 20:8,13
  21:11 22:1 23:20
  33:25 38:1 51:4
  71:14 72:3 74:5
  83:13 85:14 91:12
  92:24 93:21
  103:23 108:11,23
  110:14 111:4
  112:1 119:9
parties' 93:23
  104:18 105:24
partnership
  105:15
party 12:3 15:16
  51:4 71:15 83:17
path 33:21
patience 43:2
paul 3:10 4:5 5:6
  5:12,12,12,13,14
  5:14,15,15,16,17
  5:17,18,18,19,20
  5:20,21,21,22,23
  5:23,24,24,25 6:1
  6:1,2,2,3,4,4 8:16
  11:17,24 15:24
  16:6,25 18:8 19:7
  40:19,24 43:17
  76:4 109:24
  113:12,15

paul's 117:8
pay 26:14,17
  27:23,25 30:10,11
  30:14 31:11,20
  32:4 35:10 42:11
  42:12,14 43:3,5
  43:11,11 45:4
  47:15,17,19 48:14
  52:17 92:9 95:7,8
  95:10,15 97:10
  99:8,10 102:22
  104:1
payable 45:13
  92:11
paying 31:23,25
  51:4
payment 45:12
  89:6 92:13
payments 25:8,10
  25:15,15,17 30:19
  30:24 31:1 45:6
  47:7 92:17 94:25
peddle 58:3
pending 78:20,21
  83:12 85:24 94:3
  96:18,19 101:25
  111:15
people 52:5 61:20
  120:19
percent 24:9
perfectly 110:10
performance
  92:16
period 66:2,3,4,7
  69:24,25 70:3
  91:22
periods 39:17
permissible 40:21
permit 88:2
permitted 59:17
  103:6
person 36:25 37:1
  51:2 103:19

[personal - policy]                                                    Page 24

personal   9:4,11
9:18,25 10:16,23
11:1,10,17,24
13:11,19 14:2,9
14:16 15:9 23:25
25:14 31:11,13
45:19 46:2 47:13
47:22 48:3 93:8
94:7,18 108:8,18
108:22 109:7
115:25 116:24
119:25
pharma   1:8 3:11
3:11,11,12 5:7,7,7
5:8 7:20 8:3,17
20:3,4 83:7,8
pharmaceutical
3:13 5:9
pharmaceuticals
3:13,14 5:9,10
phoenix   105:7
phone   83:4
physicians   105:12
pi   45:19 47:7
pick   78:16,21
piece   57:15 60:20
piecemeal   90:4
pipeline   22:4
pittsburg   83:21
pittsburgh   88:15
place   33:23 51:12
62:4 102:12
placing   104:2
plain   21:20,21
plains   2:3
plaintiff   24:17
32:10 70:6 82:20
117:3 119:23
122:15
plaintiff's   35:17
plaintiffs   1:13
13:9 21:14,16,22
22:8,23 23:10,19

25:3,6 26:2,5
27:12 30:13 32:6
32:9 33:3 34:5,11
35:3,25 36:11,15
37:4 41:9,11,15
43:9,10,15,16
53:15 54:1 57:6
66:22 67:10 69:22
69:24 76:15 82:13
89:3,8 90:14 91:7
91:10 92:1,8
94:17 97:7 98:17
101:4,5 102:9
103:21 105:25,25
106:10 107:13
109:5 110:2,4
111:14,19 112:6
112:13 113:4,24
115:13 117:10
118:7 119:20
plaintiffs'   119:15
plaintiff's   107:15
113:4 115:20
plan   23:4 24:20
25:9,9,11,16,18
27:22 28:17 29:7
29:17 30:18 31:24
32:1 41:21 45:12
45:19,23 46:25
47:25 48:4 52:21
55:21 56:3,20
57:23,24,24 58:7
58:21 59:1,11,11
59:15 60:6,11,11
60:14,18,23 61:1
61:7,25 62:3 63:3
74:25 75:2 79:23
91:4,5,10,14 92:1
92:4,6,7,15,16
94:3,5,7,22,22,25
95:3,5,6,12,15
97:3,4,5,15,21,21
99:9,14,15,18

111:6
plan's   94:10
play   23:21 57:17
74:8
pleading   9:20
26:6 116:15
117:16 121:25
pleadings   20:13
72:2 92:24 122:8
122:8
please   20:18
68:10 77:24
plural   79:2
plus   50:9
pm   123:17
point   24:24 26:2
26:11 27:1,15
28:2 30:9 33:18
38:19 41:16,17
42:16 43:3 44:21
46:7,7 48:16,17
51:16 53:1,2 56:8
62:12 70:15 74:5
74:9,10 75:8
76:10 77:12 78:8
78:19,25 79:14,15
81:11 82:14,18
91:8 96:4,22
98:21 102:10
104:13 105:11
106:19 108:14,15
110:16 111:4,8
112:14 116:2,11
116:12 117:2,4,7
119:10 120:2
122:12
pointed   24:5
pointing   34:16
points   28:3 56:2
90:12 102:10
105:3 118:15
polar   84:1

policies   20:12
21:17 23:12,14,16
23:21 24:19 26:14
26:15,18 30:12,13
30:14 31:2,6
32:19 35:8 36:1
36:13,16,20 37:16
38:14 39:13,18,20
40:8 42:11,12
43:10 44:10,13,17
47:17,18,19 48:19
50:20 51:16 52:23
53:5,12,17 54:11
55:25 57:22 63:7
64:25 66:2 67:19
67:20 68:6 69:5
70:23 73:8,10
78:11,17,18 81:19
81:20 86:18 87:8
87:19 88:16,18,23
89:5,9 92:9,10
95:7,8,8,10,13
114:15 118:1,20
122:7
policy   22:24 23:14
30:11 33:7,16
36:7 37:10 38:3
38:10 39:5,6,7,8
39:10,14,15,16,17
39:21,22,25 40:1
40:3,7,14 42:2,14
57:1 58:8 59:25
64:19 65:13,13,14
65:15,16,18,21,22
65:24 66:2,3,4,4,5
66:5,6,7,9,10,13
66:17,19,20,24
67:9,10,13,13,14
67:16,17,21 68:1
68:7,13,18,18,19
68:25 69:2,5,15
69:20,24 70:1,3,7
70:17,17 73:7

81:22 82:1,3,4
87:12,22,23,23,25
88:4,13,22 90:9
100:12 102:16,18
104:25 106:4,5,11
106:11,12,12,13
106:14,14,16,20
112:5 117:8,19
120:22,22 122:5
**policyholder**
35:17 58:8 63:15
64:11 116:4,18,20
117:25
**policyholders**
116:3
**polster** 113:14,15
113:19 114:7
115:3,11,19,23
116:1,9,16 117:1
117:21 118:4
119:5,8,11,17
123:8
**poor** 25:25
**portion** 60:21
**posing** 28:23
**position** 26:5
28:14 57:14 58:6
58:11,12 80:15,19
81:2 112:8 121:18
**possession** 49:16
**possibility** 38:2
49:3
**possible** 71:5
72:24 98:5
**possibly** 33:10
70:3
**post** 24:21 60:15
98:8,10
**potential** 49:23
50:7 57:4,7,12
62:6 91:16 97:7
98:17 99:3,19
101:6

**potentially** 30:19
31:9 39:20 47:25
49:12 50:6,6
56:11,13 61:18
90:24 99:4 101:10
**power** 24:7 90:5
**practical** 74:8
**practice** 34:4,25
122:22
**pre** 17:5
**precedent** 44:7
53:24
**precedential**
75:17,19
**precluded** 37:18
**precluding** 99:6
**preclusion** 29:2,5
53:6 54:5,19
101:11
**preclusive** 79:22
80:3
**predetermined**
79:18
**predicting** 97:14
**prediction** 98:22
98:22,23
**predominantly**
37:6
**preferred** 114:10
**prejudge** 80:8
**premised** 118:18
**premium** 102:20
**prepare** 118:23
118:24
**prepared** 41:4,5
76:22,23
**prepetition** 60:16
**present** 32:17
73:19 84:1,18
86:4 93:3 94:1
**presents** 51:2 85:6
**preserve** 108:24

**presiding** 90:16
93:17
**pressing** 89:17
**presumably** 92:3
**presumed** 82:5
**presumption** 85:2
**pretty** 33:1,25
35:19 78:3
**prevent** 92:23
**prevents** 114:5
**previously** 40:16
96:11 114:15,18
**primarily** 92:25
**primary** 34:9
52:21 96:7 97:1
**principles** 29:2
**prior** 28:9
**probability** 73:24
**probably** 38:4
47:3 59:7,8 86:11
98:22 102:14
110:12
**problem** 30:2
31:2,2,25 33:13
45:17,18 75:21
82:2
**problematic**
44:24
**problems** 22:12
32:13,24 33:19
34:5
**procedurally**
86:24
**proceed** 53:13
101:13 108:12
111:3 112:7
**proceeding** 3:1,7
3:19,23 4:12,16
5:1,4 6:7,11,19,25
9:1,3,8,15,17,22
10:5,7,13,15,19
10:24 11:1,6,14
11:16,21 12:1,17

13:6,16,24 14:6
14:12,24 15:6,14
15:20 16:1,9,13
16:20 17:3 20:10
21:1 23:18 24:4
24:14,15 26:6
27:19 42:4 44:6
48:13 49:17,25
50:3 51:11 55:1
62:20 79:21 80:9
83:12,23 84:23,24
84:25 86:13 87:14
91:11,12,14 92:23
93:4 99:5,6 100:2
100:3 101:7
103:16 106:2
107:7 108:13
**proceedings**
25:21 37:25 44:14
55:9 83:13 85:1,3
85:23 86:15 89:18
89:20 99:25
123:16 124:4
**proceeds** 22:9,22
23:7 24:17 27:17
31:17 91:13 94:15
96:22
**process** 32:9 51:6
75:2 85:13 97:4
99:14,20 100:20
103:8,15,20
121:24
**processing** 25:18
**product** 73:17
**products** 3:13 5:9
117:8
**proferentem**
40:11
**prolong** 91:5
**promptly** 112:7
**proof** 24:11
**proofs** 120:6

proper  100:20
properly  90:7
  100:20
property  49:15
  57:14,15
proposed  23:4
  25:9 101:2
proposition  33:4
  40:9 43:6,7
propriety  97:16
protect  90:3
protection  36:14
provide  70:21,22
  87:11,24 88:17
  92:12 102:6 113:4
provided  29:18
  39:14 50:10
  109:11
provides  27:22
  84:17 94:7 102:13
  103:24 106:4,5,9
providing  71:9
  104:8
provision  26:13
  26:15,16,17,23
  30:10,11 32:21
  36:6 56:6 64:20
  64:24 66:11 67:3
  69:6,7 70:24 71:9
  73:15 78:12,13
  79:3,4 83:19
  87:20 88:1,10,19
  89:1 90:8,21
  91:21 92:10 97:13
  100:15 101:21
  102:5,5,11,12
  103:10,21,22
  104:8,14,17,17,19
  104:22 105:2,18
  105:20,24 106:18
  107:21
provisions  4:23
  20:11 27:2,2,23

30:15 32:4,18,22
  35:9,9 36:3 37:8
  47:16 53:5,20
  62:18 64:8 69:11
  73:12,13,19 79:2
  79:8 85:4 87:11
  88:2 89:20 90:19
  91:1 95:15,16
  97:11,12 102:12
  104:5,7
public  33:16
  123:2
puerto  3:12 5:8
purdue  1:8 3:11
  3:11,11,12,12,13
  3:14 5:6,7,7,8,8,9
  5:10 7:20 8:3,17
  20:3,4 21:10
  23:23 32:19 33:14
  33:21 34:20 35:1
  39:7,14,19 40:5
  48:23 49:22 76:14
  76:17 80:20 83:7
  83:8 114:8,13,14
  114:15,16,19
  115:6 120:16,18
  120:19
purdue's  39:24
  40:6
pure  70:24 71:16
purely  90:3
purports  57:23,24
purpose  55:20
  56:20 85:5 103:13
  115:5 121:20
purposes  37:20
  63:3 87:5 96:3
  101:11 105:5,21
  106:24
pursuant  103:9
pursue  106:2
pursuing  46:5
  49:17 50:14 82:13

82:21 100:9
pursuit  91:11
put  28:11 49:24
  59:16 66:21 67:9
  69:21 83:2,3
  99:12 109:11,13
  117:11,23,25
  118:25 122:15
puts  57:22

q

qbe  12:6,6,24,25
qualified  51:25
qualifying  86:11
quarropas  2:2
question  27:21
  34:11 41:3,18
  44:22,22 47:8
  49:13 58:19 65:2
  66:9,13 68:6,12
  71:1,3 73:4,5
  82:11 105:23
  119:5 120:25
  121:1
questioned
  109:12
questions  37:10
  38:18 40:21,25
  42:10,17 69:13
  70:11 85:6 88:8
  107:17 118:13
quickly  25:2
  63:10 78:3
quigley  96:14
quintessential
  22:4
quite  21:2 73:11
quotations  85:11
  90:11
quote  33:6 45:2
  45:15 67:16 69:11
  86:12 90:12
quoted  82:6

quoting  87:16

r

r  2:21 4:5,8 11:17
  11:24 18:1 19:7
  20:1 124:1
raise  26:19,20
  28:16 29:13
  111:16
raised  21:16
  28:20,20,21 32:6
  58:13 87:13 90:18
  91:16,20 97:7,8
  102:9 121:23
rationale  30:17
  102:6 105:19
rdd  1:3,4 3:1,7,19
  4:12 5:1 6:7,19
  9:1,8,15,22 10:5
  10:13,19,24 11:6
  11:14,21 12:1,17
  13:6,16,24 14:6
  14:12,24 15:6,14
  15:20 16:1,9,13
  16:20 17:3
reach  106:25
reached  48:19,23
reaction  110:11
read  32:8 47:11
  63:19 64:19 65:5
  86:12 102:14
  113:21
reading  102:15
reality  57:3
realize  71:3
really  30:23 34:10
  37:19 42:16 43:5
  44:22 48:16 55:19
  56:5,12 60:21
  61:14 64:20 74:7
  74:7 76:21 79:17
  105:2 108:20
  115:22 119:14
  120:8 121:24,25

**reason**  29:3 83:18
  111:12,19,23
  115:14
**reasonable**
  118:23
**reasonableness**
  62:1
**reasoning**  48:13
**reasons**  29:15
  40:16 47:4 49:2
  93:18 123:6
**recall**  109:8
**receive**  25:14,17
  91:13 94:8
**recess**  83:5
**reciprocal**  105:13
**reckon**  46:9
**recognize**  87:9
**recognized**  83:24
  84:2
**recognizing**  107:1
**recommended**
  109:14
**reconcile**  64:10,15
**reconciled**  104:7
**reconciliation**
  84:15
**reconfigured**
  42:22
**record**  42:11
  65:21 66:13,17,22
  67:2,5,9,13 68:10
  69:21 83:7 97:18
  99:2 101:4 106:15
  106:24 109:17,18
  109:23 123:2,7
  124:4
**recover**  99:16
**recoveries**  24:12
  24:21 25:13 47:5
  94:17
**recovery**  24:25
  31:15 45:22

100:16
**red**  35:24
**redistribution**
  32:1
**reed**  18:3 43:17
**refer**  67:10
  107:11
**reference**  53:4
  79:1 96:2,4,17
  100:25 107:20
**referenced**  106:8
  117:9,24
**references**  122:7
**referred**  65:24
  67:13 68:24 107:4
  121:14
**referring**  45:3,16
  67:14
**refers**  23:25 68:19
**refuse**  89:16
**regard**  21:17
  49:10 80:14 87:11
  87:21 88:17,18
  96:24 98:16 99:17
  102:7
**regarding**  38:13
**regardless**  94:9
  95:1
**rehab**  96:12
**reimburse**  92:15
**reimbursed**  30:21
**reimbursement**
  47:18,20 92:13
**reinforcement**
  95:14
**reinsurance**  4:2
  4:20 6:15 11:18
  11:25 12:10 13:3
  15:11 68:13,23
**reinsured**  68:3
**reinsurer**  66:25
**reiterate**  118:14

**rejected**  79:12
**rejoinder**  81:17
**relate**  32:9
**related**  4:16 5:5
  6:12,25 7:8,13,19
  8:1,8,16,21 9:25
  11:10 12:20 13:12
  13:19 14:2,16
  15:1,9,16 16:4,16
  16:23 20:14
**relates**  109:6
**relating**  81:7
  87:12
**relatively**  27:16
  30:3 73:18 104:7
**relativity**  29:16
  61:6,9 98:23,24
**release**  114:16
**released**  114:18
  114:21
**relevant**  90:1
**relied**  43:8,9 48:9
  63:11
**relief**  7:5,13,17,19
  7:25 8:7,15,20
  88:20 113:23
**relinquish**  42:1
**relitigate**  41:20,23
  77:9 98:3
**relitigated**  61:9
**relitigating**  80:6
  101:22
**rely**  24:20 37:13
  104:25
**relying**  98:1 99:2
  107:1
**remain**  55:11
**remaining**  94:21
**removal**  105:17
**remove**  26:21,21
  103:4
**render**  22:18
  26:20 27:3 30:7

32:7 77:1
**rendered**  29:25
  33:24
**renders**  22:14
  57:16 58:18 60:7
**reorganizing**  90:4
**repeat**  29:11
**replace**  60:15
**replies**  20:14
**reply**  6:9,21 8:20
  13:18 14:1,8,14
  15:1,8,11,18
  16:22,22 58:14
  76:5 113:22
**reporter**  78:3
**represent**  40:24
  67:6,8
**representation**
  62:16 107:4
  112:16
**representations**
  99:1 101:22 107:2
**represented**  99:23
**representing**
  62:18 108:17
**request**  59:11
  102:24 110:14
**require**  33:9
  86:19 89:9 92:13
  99:14
**required**  33:9
  45:11 99:7 122:16
**requirement**
  116:8
**requires**  89:24
**rescap**  21:4 25:24
  34:13,18 41:7,8,9
  41:10,18,22 42:20
  48:10,19 52:11,19
  76:8,15 77:7
  101:12
**resco**  83:20

research  93:1
reserve  111:14,21
reserved  42:7
residential  34:7
  84:13 86:3 87:15
  96:11
residual  46:12
resolution  84:8
  90:2 110:10
resolve  117:6
resolved  37:6 38:7
  61:7 93:25 120:8
  120:8
resources  80:1
respect  23:9 26:16
  27:18 29:8,13
  30:23 34:5,8 35:4
  35:5 36:1 37:16
  39:3 50:23 55:3
  57:1 59:14 63:5,6
  64:16,23 65:12
  70:5,22 78:23
  81:16,17 84:17
  88:4 90:7 109:16
  114:24
respectfully  22:3
respects  120:21
respond  26:8 75:7
  78:1 80:11 104:4
  114:23 118:11,16
  118:19
response  7:10
  42:17 45:16 70:14
  72:18 79:4 118:23
responses  70:19
responsibilities
  81:5
resubmit  109:22
result  29:18 30:19
  31:9 40:4 82:8
resulted  60:5
results  30:22
  33:11 45:8 49:4

52:24 74:6 75:16
  101:11
retain  92:4
retained  52:20
retaining  62:9
return  116:16
returning  117:7
revenue  29:24
  30:6,6
reversed  108:11
review  85:7,9
  92:6,24 109:20
  122:3
reviewed  20:13
revise  77:9
revised  77:7,9
revisit  110:3
rhodes  3:14,15
  5:10,11
richard  4:9 10:16
  14:9
rick  109:4
rico  3:12 5:8
right  20:20 25:17
  27:8,13 31:8
  36:14 43:6 53:21
  59:7 60:3 63:23
  64:9,10,12 67:3
  69:10,16 74:17,23
  78:6 81:4 82:17
  82:22,23 86:6
  108:23 110:5,20
  111:14,21,25
  112:21 113:1,20
  115:1,2 116:8,10
  116:25 118:3
  119:7,14 121:3,3
  121:5,10,14
rights  30:3 61:8
  63:25 89:5 93:22
  95:13,21 97:22
  100:6,13 103:2
  104:18

rise  99:4
risk  24:25 25:5
  32:15 47:3,23
  48:1,6 52:24
  94:23 98:7 99:16
road  79:17 124:21
robert  2:22
robin  11:18 15:12
rockville  96:8
roman  21:5 22:19
  26:24 74:14 96:8
room  2:2
route  114:10
royal  84:11
rule  77:14 79:6
  108:7 113:13
  115:10,18 116:20
  117:5 119:15
  121:19 122:16
ruled  41:24
ruling  59:10 77:6
  82:24 83:1 97:16
  98:13 106:25
  107:9,10,11,17,25
  108:9,11 111:11
  113:6 123:10
rulings  32:15
  41:20 50:2 76:25
  77:4,9 80:24
  90:24 97:9,23
  98:2,3,6,19 99:3
  101:22,23
run  107:13 123:8
russell  15:23 16:5
  16:24

s

s  4:17 5:5 6:12 7:1
  7:8,13,19,20 8:1,2
  8:8,16,21 10:1
  11:10 12:20 13:12
  13:20 14:3,16
  15:1,10,16 16:4
  16:16,24 18:1,20

18:23 20:1
s.a.  87:16
s.a.n.v.  12:5,22
  15:18
s.d.n.y  83:22
  105:7
s.d.n.y.  84:14
  85:25 86:2 87:18
  88:7 96:10,13,14
  96:16 104:24
  105:8,11,16 116:2
  122:18,20
sackler's  23:3
safest  102:14
sara  12:13
satisfied  25:19
satisfy  119:15
saul  11:19 15:12
saving  64:2,7
  81:22
saw  110:16
  112:22
saying  25:4 27:7
  43:9 61:20 64:10
  73:21 78:20,21
  79:17,22 80:5
  112:17 115:9,16
  116:4,20 117:10
  119:20
says  22:13 36:6
  63:13,15 65:14,21
  66:1,19 69:20
  73:15 78:15,25
  114:16 117:18
scenario  50:5
schedule  45:22
  50:9 67:18
scheduled  25:15
  46:17
scope  37:7 85:16
  88:3,10 94:6
scott  15:17

| | | | |
|---|---|---|---|
| **screen** 83:2 | 111:21 | **sets** 59:13 | **simon** 12:14 |
| **scrupulously** 44:16 | **seeking** 49:12 79:21 89:4 114:9 114:13 116:3,5,19 118:1 | **settle** 26:13,23 32:4 57:19,23 107:12 113:3 123:7 | **simple** 21:20,21 **simply** 22:20 23:11 39:9,12 40:4,6 50:8 56:16 |
| **se** 9:19 10:2,9,22 12:4,8,22 13:1 14:4,15,18,21 15:18 | **seeks** 88:20 **seen** 66:21 71:5 | **settled** 115:2 **settlement** 41:21 | 58:23 65:13 67:14 75:23 96:1 100:16 107:11 |
| **se's** 9:24 | **self** 58:3 | 52:7 57:20,25 58:6,20 59:15 | **simson** 113:15 |
| **sea** 116:19 | **sell** 73:17 | 62:1 97:12,13 | **sitting** 111:6 |
| **seal** 13:8,8 109:9 109:16,18 | **seminal** 89:13 104:10 | 114:16 116:12 **settlements** 91:23 | **situation** 56:18 98:15 112:15 |
| **sealed** 110:4,13 | **send** 65:10 | 97:17 | **size** 57:5 |
| **second** 22:5 25:6 31:19 35:21 41:17 | **sending** 62:14 **senior** 60:16 | **seventh** 18:12 **severe** 90:6 | **slated** 45:20 **small** 27:17 30:3 52:1 121:10 |
| 44:7 63:10 68:11 77:12,17 78:10 | **seniors** 60:19 **sense** 34:21,22 | **severely** 87:4 **sexual** 74:15 | **smith** 18:3 43:17 **sold** 64:22 |
| 79:25 81:18,23,25 84:2 85:2,16 | 74:4 76:20 108:20 123:3 | **shaking** 107:18 **shared** 68:5,5 | **sole** 31:11 96:6 **solicitors** 51:1 |
| 86:10 88:25 | **sent** 56:14 | **shell** 84:11 | **solution** 27:22,24 |
| **secondly** 49:4 92:8 101:24 | **sentence** 114:18 **separate** 21:17 | **ship** 116:21 **ships** 116:21 | 41:6 71:20 **solutions** 124:20 |
| **secret** 55:11 75:15 | 51:19 62:14,21 79:1 111:23 | **short** 23:19 71:25 **shortly** 37:9 | **somewhat** 48:11 66:3 |
| **section** 57:23 82:14 122:21 | **separately** 52:24 **september** 24:14 | **show** 43:23 44:16 83:17 106:17 | **sonya** 17:25 124:3 124:8 |
| **secured** 60:16,17 | **sequence** 100:20 | **shown** 106:21 | **sophistication** |
| **see** 20:21,22 24:16 25:4 39:1 43:19 | **seriatim** 52:4 **serious** 81:7 | **sic** 91:9 **sick** 37:1 | 122:25 **sorry** 27:3,4,20 |
| 52:11,13 54:1 61:2 67:15,17 | **seriously** 30:19 51:18 85:4 | **side** 43:14 **siegel** 15:17 | 90:11 102:17,17 112:11 114:20 |
| 70:17 74:24 82:25 83:20 84:9 85:24 | **serv** 122:17 **serve** 115:4 | **significant** 21:15 22:9,14,18,20,23 | **sort** 44:20 58:14 81:4 108:21 |
| 86:2 87:15,17 88:5,13 95:16 | **served** 103:15 **service** 35:8,9,13 | 23:7,8 47:6 54:6 57:19 70:1 78:22 | 117:22 120:8 **sought** 110:13 |
| 96:10 98:23 104:22 105:5,11 | 35:15 39:25 63:14 64:16 78:8,12 | 79:16 100:9 **significantly** | **sound** 37:13,14 **sounded** 37:5 |
| 105:14 115:24 117:18 121:20 | 79:4 88:5 102:19 103:8 104:5,8,15 | 51:23 56:2 **similar** 54:17,22 | **southern** 1:2 **speak** 34:19 38:16 |
| 122:17 | 104:17 105:19,23 | 61:15 64:5,6 | 43:14 81:7 |
| **seeing** 53:13 59:24 107:18 113:23 114:4 | **set** 28:24 39:6 44:25 45:1,22 53:23 72:23 82:24 | 104:21 114:24 **similarly** 28:1 | **speaking** 35:1 |
| **seek** 77:9 82:8 98:2 103:5 111:20 | 108:6 120:11 | | |

**specialties** 12:9
13:2
**specialty** 1:15,16
3:2,3,8,20,25 4:1
4:13,18,19 5:2 6:8
6:13,14,20,21,23
7:2,3,6,9,10,11,14
7:24 8:13,14,22
9:2,9,16,23 10:6
10:14,20,25 11:7
11:15,22 12:2,18
13:7,17,25 14:7
14:13,25 15:7,15
15:21 16:2,10,14
16:21 17:4 20:4
78:4 83:8 87:22
102:11,21 104:22
**specific** 43:5 62:8
65:22,24 86:5
88:23 89:1,25
114:9,12 117:14
**specifically** 20:4
30:6 36:11 80:17
83:7 92:11 97:7
120:16
**specifics** 116:5
**specified** 103:13
**specify** 122:11
**speculation** 26:11
**split** 51:5
**splitting** 90:21
**spoken** 35:21
107:3
**spreading** 51:19
**sr** 12:7,8,25 13:1
**st** 15:24 16:6,25
113:12,15 117:8
**stage** 53:9,22
114:6 116:14
119:21
**stages** 120:9 121:1
**staging** 99:25
101:5 102:2

**stake** 76:11 99:11
**stand** 50:8 108:2
111:8
**standpoint** 54:25
**stands** 111:12,13
**starr** 4:2,20 6:16
**start** 44:20 50:15
55:24 61:21 75:10
82:12
**started** 118:14
**starting** 89:12
**starts** 22:19
**state** 25:24 40:16
46:16 78:2 103:7
103:9 109:18
122:23
**state's** 62:22
**stated** 40:13 88:25
89:14 100:12
101:3 106:6 123:6
**statement** 8:6,6
15:22 16:4,16,23
25:1 26:4 58:14
63:24 97:18 99:15
113:13
**statements** 43:4
123:4
**states** 1:1 2:1 39:9
89:13 99:10
102:18 103:1,4,4
103:6,7,8,10
**status** 119:25
120:2 121:7
**statute** 103:9,13
**statutes** 84:15
**statutory** 85:18
86:5
**stay** 3:21,22 4:15
5:4 6:10,24 7:5,13
7:17,19,25 8:8,15
8:21 20:9,25 33:2
34:18 41:6,9,10
41:13,14 44:4

48:17 49:2,8 53:3
76:14,15,17,19
77:21 80:14 84:25
85:23 86:15 87:6
95:25,25 96:18,18
98:20 100:11,17
100:18 101:13,16
107:6 110:23
111:2,20,21 112:3
113:2
**stayed** 34:8,15
83:20 89:10
101:25 108:20
111:14
**staying** 55:17,18
75:1 83:11 86:25
87:1 90:25 91:3
92:23 100:1,8
**steamship** 35:23
104:11
**steel** 42:21 86:1,1
**stemming** 104:10
**step** 85:13 109:20
119:16,18
**stipulating** 38:1
**stolt** 87:16
**stop** 74:5
**stopping** 100:17
**stores** 4:24
**straightforward**
35:19
**stream** 29:24 30:6
**streaming** 61:7
**streamlined**
117:16
**street** 2:2
**stress** 42:17
**strong** 33:6,15
104:25
**strongly** 55:5
90:15
**suable** 63:23

**subject** 84:16
88:19,22 90:19
92:19 111:22
120:6
**submission**
103:24
**submit** 22:3 51:21
70:16 102:24
103:23 107:8
**submitted** 13:9
23:23 36:8 40:9
40:13 65:4 121:13
**subordinated**
60:22
**subordination**
60:18
**subparagraph**
122:24
**subset** 23:15,16
**substantial** 57:12
57:15 89:6 94:8
104:4
**substantially**
95:21
**substantive** 63:25
**success** 46:25
**successful** 46:5
94:16,17
**successor** 103:14
**successors** 103:14
**sufficiently**
120:10
**suggested** 75:9
76:19
**suggesting** 75:23
79:10
**suing** 36:24
**suit** 35:9,9,13,15
39:25 63:14,16
64:16 78:8,12
79:4 102:12,19
103:16 104:5,8,15
104:17 105:19,23

| | | | |
|---|---|---|---|
| suite 18:20 124:22 | talking 27:16 30:2 | therefor 103:11 | thinking 71:4 |
| sullivan 4:6 18:18 | 30:2 34:13,16 | thereof 103:20 | thinks 80:20 |
| summarized | 51:7 57:5 96:24 | there's 111:3 | third 48:18 76:8 |
| 110:11 | 121:2 | 112:3 118:15 | 85:18 122:22 |
| summary 72:1 | target 119:22 | they're 109:18 | thomas 10:8,23 |
| 119:10 | tautology 114:19 | 111:16 115:16 | 14:17 |
| superintendent | team 122:18 | 116:19 121:3 | thorpe 18:17 |
| 103:11 | technologies 3:14 | 122:12 | thought 55:15 |
| supp 105:6 | 3:15 5:10,11 | they've 114:3 | 76:13 108:2 |
| supplemental | tell 33:19 75:3 | thing 27:15 53:8 | 110:12 |
| 7:10,12,16 8:13 | 113:17 | 74:9 75:3 76:25 | thousands 116:24 |
| support 4:14 6:9 | tend 108:8 | 102:14 | threaten 56:21 |
| 6:23 7:12,16,16 | tens 62:24,24 | things 31:1 36:22 | three 21:17 35:5 |
| 8:7,20 9:7,10,21 | tentatively 55:19 | 56:8 68:25 69:19 | 38:13 39:18,20 |
| 9:24 10:21 11:8 | term 47:19 | 76:5 80:11 122:23 | 40:8 51:3 63:6,6 |
| 11:23 13:18 14:1 | terminated 70:2,4 | think 21:8 23:11 | 70:23 75:11 88:18 |
| 14:8,14 15:8 16:3 | terminations | 24:2 25:1 28:12 | 123:15 |
| 16:23 39:23 40:6 | 102:1 | 28:13,18 29:5 | ti 7:18 8:7 |
| 69:21 91:8 113:21 | terms 36:20 40:2 | 30:14,21,25 31:5 | tie 95:15 |
| supports 40:9 | 49:13 54:6 55:16 | 32:3 34:16 35:23 | tied 46:25 99:13 |
| sure 23:7,10 37:8 | 69:1 88:24 120:12 | 37:24 38:4 41:18 | tig 7:11 8:14 |
| 37:9 40:22 41:22 | territory 103:9 | 41:19 42:11,16 | time 25:14 31:14 |
| 47:23 59:19 61:14 | test 84:22 85:6 | 43:1,23 46:3 48:1 | 32:14 33:15 50:13 |
| 65:20 78:4 107:14 | testify 81:9 | 48:5,10,20,21 | 53:13 59:24 76:2 |
| 113:5 115:23,23 | text 87:4 | 52:3,5 53:14 54:2 | 77:3 82:3,21 |
| 116:13 123:9 | thank 38:20 40:17 | 54:19 57:18 58:1 | 91:23 93:20 |
| suspect 55:6 | 40:23 43:2,20 | 58:18 59:7 60:13 | 108:10 111:2 |
| system 25:18 | 72:19 75:5 77:22 | 60:13,22 61:21,23 | 112:2 113:23 |
| **t** | 82:9 110:18 | 62:1 63:4 64:5,23 | times 35:13 |
| t 4:6 15:22 16:5 | 112:25 113:8,9 | 65:6,19 66:25 | timing 25:10 |
| 16:24 124:1,1 | 118:5 123:12,14 | 67:2 69:10,18 | today 28:14 41:2 |
| take 33:23 58:5 | thanks 82:22 | 70:6,7,11 71:6,18 | 41:10,10 44:16 |
| 58:11,12 67:18 | thatcher 113:15 | 71:25 72:5,5 73:2 | 46:10 50:19 80:16 |
| 77:10 81:2 82:23 | that's 102:14 | 73:4 74:6 78:24 | 80:19 82:13 99:2 |
| 94:23 106:23 | 107:4 109:19,23 | 79:13 80:16,18 | 110:16 |
| 109:20 114:25 | 110:9 111:25 | 81:14,19 82:15,21 | today's 20:6 83:1 |
| 122:8,25 | 112:18,22 113:19 | 95:9 96:21 99:8 | today's 106:24,25 |
| taken 37:25 47:23 | 114:7 115:22 | 105:16,22 108:23 | token 71:11 |
| 47:25 57:14 75:21 | 116:17 117:11,19 | 109:15,19 110:25 | told 37:9 |
| 80:24,25 120:19 | 119:8,11 121:10 | 111:11,13,16 | tomorrow 51:25 |
| talk 49:8 50:16 | 121:14 122:4 | 112:18 113:10,24 | top 34:15 50:25 |
| 76:19,20,23 | theories 122:2 | 118:4,19 121:18 | 51:1,3 |
| | | 122:3,4 123:3,12 | |

topic 27:10
total 24:9 46:1
totally 52:20
tower 24:1 34:13
  34:17 35:2 53:23
towing 86:1
traditional 77:13
  77:14,18
tranches 60:15
transactions
  31:22
transcribed 17:25
transcript 4:24
  124:4
transdermal 3:14
  5:10
transfer 103:5
transit 104:23
transportation
  35:22 104:11
treat 77:4
treatise 122:23
treatment 42:23
trial 16:11 17:5
  100:25
tribe 46:17,18
tribunal 77:5
tried 57:4 64:15
trigger 45:6,12
tripp 10:10,11
trivial 62:25
true 25:13 47:10
  56:7 74:20 103:14
  103:20 117:1
  124:4
trumps 33:7
trust 45:4 46:11
  46:15,17,24 80:18
trusts 47:2,24
  55:23 63:2 94:21
try 54:4 71:15
  99:23

trying 56:10 58:3
  61:9 67:5
turn 21:7,14 22:7
  34:1 38:16 43:14
  102:13 110:21
turned 110:16
turning 40:11
two 20:14 28:3,6
  29:9 36:1 37:16
  42:16 43:4 45:13
  47:2 48:7 49:2
  60:14 64:7 66:2
  68:6 75:11 76:5
  76:13 79:11 80:22
  84:15,22 85:6
  87:19 89:12 91:16
  97:6 102:9 104:6
  105:3 110:25
  117:24 119:22
twombly 115:10
type 34:18 72:1
  92:21 122:4
types 72:15 88:1
  88:21 121:21
typically 33:22
  72:7

u

u.s. 2:23 22:19
  30:10,17 31:8,16
  43:8 44:23 45:2,3
  45:15 46:14 47:7
  47:11 48:6,15
  56:9,10,13,16
  63:17 64:12 77:17
  86:16 90:12 93:7
  95:4,20 96:5,9,21
  104:1 105:14,16
uk 12:5,6,22,24
ultimately 68:2,19
  68:24 69:1 93:24
umbrella 68:5
unable 23:17

unclear 48:17,18
  65:13 66:19,19
uncontested 71:1
underlying 39:6
  39:14,18 40:8
  42:13 76:12 85:5
  87:2,14,21 88:21
  91:23 92:13,18
  114:1
undermine
  104:18
undermined
  51:18
understand 36:15
  37:5 56:3 112:8
  117:5 119:4
understandable
  32:5
understanding
  59:2 66:25 67:25
  68:1,14 73:3
  94:23 120:7 121:8
understood
  102:20 103:2
underwriter 12:5
  12:23
underwriter's
  67:21
underwriters
  15:23 16:5,25
  67:22 84:13 105:9
  105:15 113:11
  116:6,17
underwriting
  104:11 105:13
undisputed 42:5
  87:8 90:5
undo 98:19
undue 91:2 101:9
unduly 100:21
  122:14
uniform 51:10

unilateral 64:12
unintelligible
  122:1
union 35:21 83:21
  88:14 105:6
unique 44:15
  73:18
united 1:1 2:1
  88:5 89:13 99:10
  102:25 103:4,4,6
  103:7,10 105:12
unreasonable
  117:3,5
unrelated 82:11
unsecured 7:23
  8:3
unwarranted
  122:11
use 22:24 35:24
  47:19
uses 99:12
usual 33:7
usually 85:1

v

v 1:14 3:2,3,8,20
  4:13 5:2 6:8,20
  9:2,9,16,23 10:6
  10:14,20,25 11:7
  11:15,22 12:2,18
  13:7,17,25 14:7
  14:13,25 15:7,15
  15:21 16:2,10,14
  16:21 17:4 83:21
  84:9,11,12 86:1,8
  86:9 87:16 88:6
  88:14 89:14 95:17
  96:9,12 98:23
  100:8 104:11,23
  105:5,7,9,13,15
  116:17 122:18,20
vacuum 72:7
vague 28:24

**value**  46:12 62:6
  75:19
**values**  57:10
**various**  44:1,10
  57:10 63:18 89:5
  91:20 120:21
  121:1
**vary**  120:5
**vast**  87:8
**vastly**  48:24 66:8
**veritext**  124:20
**versus**  20:4 29:16
  74:18 80:1 83:8
**video**  3:4
**videoconference**
  3:16
**view**  60:5 61:7,24
  62:22 81:13,14
  87:13 105:1
  120:20
**viewed**  93:5
  108:21
**viewing**  104:8
**vintage**  105:10
**violated**  58:8
**violation**  86:7
  100:17
**virus**  81:24
**vitiate**  63:23
**voiding**  60:5
**voluntarily**  33:15
**volunteering**
  53:14

### w

**wacker**  18:20
**wait**  44:4 52:4
  91:5
**waive**  28:14
**waiver**  103:2
  108:22 109:1,2
**walk**  33:17
**walker**  2:25

**want**  25:7 28:24
  38:2,16 43:13
  44:20 49:22 52:22
  54:18 67:6 72:4
  74:3 76:17 77:12
  79:18 80:21 101:6
  108:1,12 110:23
  112:7,14,19 121:7
**wanted**  27:15
  42:16 49:6 69:13
  76:15,15 78:8
  79:14 112:1,24
**wants**  76:24
**warrant**  85:1
  86:25 87:1 93:16
  99:5 100:1
**warranted**  101:13
  121:25
**wasn't**  116:23
**waste**  51:23 62:22
  117:16
**wasteful**  90:24
**wastefulness**
  62:14
**way**  21:13 25:9
  28:12 30:7 47:25
  51:22 53:10 57:21
  60:25 61:1 64:15
  73:25 74:4 75:9
  75:10,12,23,24
  79:9,9 80:19 94:4
  102:3 117:6
**ways**  29:6 63:18
  76:20
**we've**  42:7 57:6
  62:15 63:4 72:8
**went**  62:23 78:3
**weren't**  114:18
  116:13
**wesco**  88:13
**we're**  117:4,22
  118:1 121:2

**we've**  111:1
  120:11
**whatsoever**  75:19
**whish**  102:18
**white**  2:3
**wiener**  13:20
  15:10
**william**  15:22
  16:5,24
**willing**  49:8,9
  70:16
**willkie**  18:10
  20:18
**wilson**  4:9 12:11
  15:19
**win**  75:18
**wind**  75:13
**withdraw**  96:2,17
  100:25
**withdrawing**  96:3
**withdrawn**  53:4
**withhold**  42:7
**wl**  83:22 87:18
  88:6,15 104:23
  105:8,10 122:18
  122:20
**wording**  92:12
**words**  40:20 60:2
  119:16
**work**  29:6,6 41:14
  71:12,15 73:25
  74:2 75:9,10,24
**worked**  75:24
  76:21
**working**  50:23
**works**  29:6 50:17
**world**  11:3,9,11
  15:2 52:1 81:24
  102:16
**worth**  56:11 86:11
**would've**  60:1
**wouldn't**  108:13
  115:4

**wrapped**  112:15
**written**  67:25
  71:10 81:19,21
**wrong**  113:10

### x

**x**  1:5,11,18 117:19
**xl**  10:17 14:10
  16:12

### y

**y**  102:19 105:24
**yacoub**  14:5
**yeah**  67:12 71:3
**year**  50:9,12,13
  59:21 94:2
**years**  23:13 32:20
  44:4 52:3 56:10
  78:11 81:18 89:12
  94:1
**york**  1:2 18:6,13
  19:5 40:11 50:21
  50:22,24 63:23
  82:13,20 96:9
**you're**  109:19
  121:4
**you've**  109:12

### z

**zoom**  3:4,16
**zurich**  12:9,10
  13:2,3