UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**SUMMARY STATEMENT FOR FIFTH INTERIM FEE APPLICATION
OF DECHERT LLP, SPECIAL COUNSEL FOR THE DEBTORS,
FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED**

| | |
|---|---|
| Name of applicant | Dechert LLP |
| Name of client | Purdue Debtors and Debtors in Possession |
| Time period covered by this application | February 1, 2021 through and including May 31, 2021 |
| Total compensation sought this period | $2,600,931.71[2] |

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]    This amount reflects a reduction in fees in the amount of $955,327.32 on account of the following: (i) a voluntary discount of $558,734.09 for aggregate fees as described in the *Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors* Nunc Pro Tunc *to the Petition Date* [Docket No. 424] (the "**Retention Application**"), *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965], *Dechert LLP's Second Notice of Increase in Hourly Rates for Patent Services* [Docket No. 2342] (collectively, the "**Notices of Increased Patent Fees**"), and *Dechert LLP's First Notice of Increase in Hourly Rates for Litigation Services* [Docket No. 2221] (the "**Notice of Increased Litigation Fees**"); (ii) a reduction of $396,593.23 per the Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure Approving (1) Settlement Agreement Between the United States Trustee, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmer Cutler Pickering Hale And Dorr LLP, and Dechert LLP and (2) Certain Releases by the Debtors, entered at ECF 2890 (the "**U.S. Trustee Settlement**"); and (iii) an additional voluntary, discounted reduction of $1,887.97 in fees

17769803

| | |
|---|---|
| Total expenses sought this period | $22,492.97 |
| Petition date | September 15, 2019 |
| Retention date | *nunc pro tunc* to November 21, 2019 |
| Date of order approving employment | November 21, 2019 |
| Total compensation approved by interim order to date | $15,143,288.68 |
| Total expenses approved by interim order to date | $2,231,312.33 |
| Total allowed compensation paid to date | $15,143,288.68 |
| Total allowed expenses paid to date | $2,231,312.33 |
| Blended rate in this application for all attorneys | $1,056.18 |
| Blended rate in this application for all timekeepers | $953.28 |
| Compensation sought in this application already paid (or credited against prepetition retainer) pursuant to a monthly compensation order but not yet allowed | $1,742,948.08[3] |
| Expenses sought in this application already paid (or credited against prepetition retainer) pursuant to a monthly compensation order but not yet allowed | $17,752.46[4] |
| Number of professionals included in this application | 34 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | N/A |
| If applicable, difference between fees budgeted and compensation sought for this period | Amount Budgeted: $5,335,000 - $5,555,000 Amount Sought: $2,600,931.71 |
| Number of professionals billing fewer than 15 hours to the case during this period | 8 |
| Are any rates higher than those approved or disclosed at retention? If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | Yes, the compensation period includes rate increases for time keepers, as disclosed on the Court docket at ECF Nos. 965, 2221, and 2342. |

This is a(n):    ____Monthly    __X__Interim    ____Final application.

This application includes 285.8 hours with a discounted value of $111,186.00 incurred in connection with the preparation of Fee Applications for the Debtors.

---

during the Compensation Period for transient and other non-professional timekeepers due to concerns previously raised by the Fee Examiner.

[3]    $820,727.81 in fees for May, 2021 have not been paid to date but may be paid prior to the hearing date on this application.

[4]    $4,740.51 in expenses for May, 2021 have not been paid to date but may be paid prior to the hearing date on this application.

## SUMMARY OF MONTHLY FEE STATEMENTS

| Application | Total Compensation and Expenses Incurred for Period Covered | | | Total Amount Requested in Fee Statements | | Total Unpaid |
|---|---|---|---|---|---|---|
| Date Filed/Docket No. | Period Covered | Total Fees | Expenses | Fees (80%) | Expenses (100%) | Fees and Expenses |
| 05/03/2021 Docket No. 2795 | 02/01/2021- 02/28/2021 | $599,966.34 | $1,674.14 | $479,973.07 | $1,674.14 | $119,993.27 |
| 06/01/2021 Docket No. 2965 | 03/01/2021- 03/31/2021 | $841,252.35 | $10,758.11 | $673,001.88 | $10,758.11 | $168,250.47 |
| 06/23/2021 Docket No. 3062 | 04/01/2021- 04/30/2021 | $737,466.41 | $5,320.21 | $589,973.13 | $5,320.21 | $147,493.28 |
| 07/07/2021 Docket No. 3115 | 05/01/2021- 05/31/2021 | $820,727.81 | $4,740.51 | $656,582.25 | $4,740.51 | $825,478.32 |
| Eee Statement Totals: | | $2,999,412.91 | $22,492.97 | $2,399,530.33 | $22,492.97 | $1,261,215.34 |
| U.S. Trustee Settlement | | ($396,593.23) | | | | |
| Subsequent Reduction | | ($1,887.97) | | | | |
| **Totals Sought in This Fee Application:** | | **$2,600,931.71[5]** | **$22,492.97** | **$2,080,745.37** | **$22,492.97** | **$520,186.34** |

---

[5] This amount reflects a reduction in fees in the amount of $957,215.29 on account of the following: (i) a voluntary discount of $558,734.09 for aggregate fees as described in the Retention Application, Notices of Increased Patent Fees, and Notice of Increased Litigation Fees; (ii) a reduction of $396,593.23 per the U.S. Trustee Settlement, and (iii) an additional voluntary, discounted reduction of $1,887.97 in fees during the Compensation Period for transient and other non-professional timekeepers due to concerns previously raised by the Fee Examiner.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## FIFTH INTERIM FEE APPLICATION OF DECHERT LLP, AS 327(e) SPECIAL COUNSEL, FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED DURING THE PERIOD FEBRUARY 1, 2021 THROUGH MAY 31, 2021

Dechert LLP ("**Dechert**"), as the retained special counsel to Purdue Pharma L.P. and its affiliated debtors ("**Purdue**" or the "**Debtors**") in the above captioned chapter 11 cases (the "**Case**"), hereby files this application (the "**Application**") pursuant to sections 330 and 331 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Order Pursuant to Section 327(e) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Dechert LLP, as Special Counsel to the Debtors, *Nunc Pro Tunc* to September 15, 2019 (the "**Petition Date**"), dated November 21, 2019 [Docket No. 525] (the "**Retention Order**", a copy of which is annexed hereto as Exhibit A), for an award of

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

17769803

compensation for professional services rendered to the Debtors in the amount of $2,600,931.71[2] incurred during the period from February 1, 2021 through and including May 31, 2021 (the "**Compensation Period**"), and reimbursement of disbursements incurred during that same period in the amount of $22,492.97.

## BACKGROUND

### A.  The Chapter 11 Cases

1.      On or about the Petition Date, the Debtors filed voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 27, 2019, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code [Docket No. 131].

---

[2]      This amount reflects a reduction in fees in the amount of $957,215.29 on account of the following:  (i) a voluntary discount of $558,734.09 for aggregate fees as described in the *Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel to the Debtors* Nunc Pro Tunc *to the Petition Date* [Docket No. 424] (the "**Retention Application**"), *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965], *Dechert LLP's Second Notice of Increase in Hourly Rates for Patent Services* [Docket No. 2342] (collectively, the "**Notices of Increased Patent Fees**"), and *Dechert LLP's First Notice of Increase in Hourly Rates for Litigation Services* [Docket No. 2221] (the "**Notice of Increased Litigation Fees**"); (ii) a reduction of $396,593.23 per the Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure Approving (1) Settlement Agreement Between the United States Trustee, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmer Cutler Pickering Hale And Dorr LLP, and Dechert LLP and (2) Certain Releases by the Debtors, entered at ECF 2890 (the "**U.S. Trustee Settlement**"); and (iii) an additional voluntary, discounted reduction of $1,887.97 in fees during the Compensation Period for transient and other non-professional timekeepers due to concerns previously raised by the Fee Examiner.

3.       On April 8, 2020, the Court entered the Order authorizing the appointment of an independent fee examiner (the "**Fee Examiner**") [Docket No. 1023].

**B.  The Debtors' Business**

4.       The Debtors are pharmaceutical companies that manufactured, sold, or distributed, among other products, extended release, long-acting, abuse-deterrent opioid pain medications.

5.       Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* [Docket No. 17] filed on September 16, 2019.

## JURISDICTION

6.       The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

7.       The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**").  By this Application, Dechert respectfully seeks Court approval and allowance of reasonable compensation for professional services rendered to the Debtors during the Compensation Period in the aggregate amount of $2,600,931.71 and for reimbursement of actual and necessary expenses incurred in connection with the rendition of such services in the amount of $22,492.97.

## BASIS FOR RELIEF

### A. Dechert's Retention

8.      On November 5, 2019, the Debtors filed their Application of the Debtors Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Dechert LLP, as Special Counsel to the Debtors, *Nunc Pro Tunc* to the Petition Date [Docket No. 424]. The Court entered the Retention Order on November 21, 2019. [Docket No. 525; Exhibit A hereto].

9.      The Order Granting Motion Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 529] (the "**Interim Compensation Order**"), entered by the court on November 21, 2019, outlines the procedures that all professionals must follow in order to receive compensation and reimbursement of expenses for services provided to the Debtors.

10.      Dechert is a full service law firm with well-developed practices in the areas of product liability and mass torts, business restructuring and reorganization, corporate and securities, complex commercial litigation, finance and real estate and financial services.

### B. Compensation

11.      This Application is Dechert LLP's fifth application for interim compensation and reimbursement of expenses as special counsel in these chapter 11 cases.

12.      Pursuant to the Interim Compensation Order, during the Compensation Period, Dechert filed four (4) fee statements (the "**Monthly Fee Statements**") with the Court as follows:

      a.   On May 3, 2021, Dechert filed its Eighteenth Monthly Fee Statement for the Period from February 1 Through February 28, 2021 [ECF No. 2795] (the "**February Fee Statement**"). The February Fee Statement reflected

4

fees in the amount of $599,966.34 and expenses incurred in the amount of $1,674.14.

b.  On June 1, 2021, Dechert filed its Nineteenth Monthly Fee Statement for the Period from March 1, 2021 Through March 30, 2021 [ECF No. 2965] (the "**March Fee Statement**").  The March Fee Statement reflected fees in the amount of $841,252.35 and expenses incurred in the amount of $10,758.11.

c.  On June 23, 2021, Dechert filed its Twentieth Monthly Fee Statement for the Period from April 1, 2021 Through April 31, 2021 [ECF No. 3062] (the "**April Fee Statement**").  The April Fee Statement reflected fees in the amount of $737,466.41 and expenses incurred in the amount of $5,320.21.

d.  On July 7, 2021, Dechert filed its Twenty-First Monthly Fee Statement for the Period from May 1, 2021 Through May 31, 2021 [ECF No. 3115] (the "**May Fee Statement**").  The May Fee Statement reflected fees in the amount of $820,727.81 and expenses incurred in the amount of $4,740.51.

13.    In total, therefore, Dechert has submitted Monthly Fee Statements during the Compensation Period for fees of $2,999,412.91 and expenses of $22,492.97.  As of the date of this Application, no party-in-interest has objected to Dechert's February, March, or April Fee Statements.  At the time of filing this Application, the deadline to object to the May Fee Statement has not yet passed.

14.    By this Application Dechert seeks compensation for the fair and reasonable fees and expenses incurred by Dechert to the estates of the Debtors during the Compensation Period.  The compensation requested herein is based on discounted regular hourly rates consistent with discounted rates provided for complex mass tort cases generating similar volume of legal fees and reflects the time, labor, and expertise brought to bear on the problems presented, and is either in line with, or lower than the rates charged by similar firms operating in a competitive market for legal services of the type involved in this case.

15.     This Application does not detail every correspondence, drafting session,

meeting, discussion, or conference held, all research conducted, or each of the numerous tasks

performed by Dechert.  Those matters are set forth in detail in the contemporaneous time records

filed with Dechert's Monthly Fee Statements and are incorporated herein by reference. In

addition, detail for expenses that were incurred by Dechert during the Compensation Period were

included in Dechert's Monthly Fee Statements and are incorporated herein by reference. All such

expenses are reflected in the books and records of Dechert, which are contemporaneously

maintained in the ordinary course of its business.

16.     The professional services for which compensation is sought were rendered

in the ordinary course of the Debtors' business and solely on behalf of the Debtors.

17.     By this Application, Dechert seeks allowance in full of interim

compensation for professional services rendered to the Debtors during the Compensation Period,

in the aggregate amount of $2,600,931.71 and for reimbursement of actual, necessary expenses

incurred in connection with such services in the amount of $22,492.97.  During the

Compensation Period, Dechert attorneys and paraprofessionals expended a total of 3,730.0 hours

for which compensation is requested.

**C.  Applicable Authority**

18.     Dechert LLP prepared this Application in accordance with: (a) the

Administrative Order Re: Amended Guidelines for Fees and Disbursements of Professionals in

Southern District of New York Bankruptcy Cases, adopted by the Court on January 25, 2013 and

effective as of February 5, 2013 (the "**Local Guidelines**"); (b) the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330, adopted on May 17, 1996 and June 11, 2013 (the "**UST Guidelines**",

6

and together with the Local Guidelines and the Interim Compensation Order, the "**Guidelines**");
and (c) the Interim Compensation Order.  Pursuant to the Local Guidelines, a certification
regarding compliance with the Guidelines is annexed hereto as <u>Exhibit B</u>.

### SUMMARY OF PROFESSIONAL COMPENSATION
### AND REIMBURSEMENT OF EXPENSES REQUESTED

19.     Dechert believes that the fair and reasonable (and discounted) value of its
professional services rendered during the Compensation Period is $2,600,931.71.  Based upon
the total attorneys' and paraprofessionals' time expended, and a resulting blended hourly rate of
$953.28 for professionals, Dechert believes the compensation requested herein to be reasonable
and appropriate.

20.     Dechert also seeks reimbursement of its actual, reasonable, and necessary
out-of-pocket expenses in the aggregate amount of $22,492.97.  These expenses were incurred
during the course of rendering professional services on behalf of the Debtors during the
Compensation Period.

21.     Dechert has utilized its existing hourly rate structure and has calculated its
request for compensation by multiplying the hours of time spent on services rendered on behalf
of the Debtors by the discounted hourly rate assigned to each attorney or paraprofessional
rendering such services.  Dechert respectfully submits that the fees sought herein are less than
customary and based on its normal criteria in matters of this type and are discounted from the
fees that Dechert has been allowed in other chapter 11 cases, including in this District.

22.     Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit C</u> is the
summary sheet required by the Local Guidelines, which includes a schedule setting forth the
names of all Dechert professionals and paraprofessionals who have performed services for which

7

compensation is sought, the person's position in the firm and department, and the date of bar admission for each attorney.  In addition, the schedule sets forth for each person (a) the hourly rate(s) during the Compensation Period; (b) the total hours billed for which compensation is sought; and (c) the total compensation for such hours.

23.     Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit D</u> is a summary by project category of the services performed by Dechert during the Compensation Period

24.     Annexed hereto as <u>Exhibit E</u> is a schedule specifying the categories of expenses for which Dechert in seeking reimbursement and the total amount of reimbursement requested for each such expense category.

**<u>SERVICES RENDERED BY DECHERT</u>**

25.     Dechert's lawyers have a longstanding relationship with the Debtors and was retained to continue to provide the litigation services the firm has provided to the Debtors over the 26 months preceding the Petition Date (as more fully described below, the "**Dechert Litigation Services**" or "**Litigation Services**").  Dechert's lawyers are and have been in charge of national coordination of nearly 2,600 civil actions, including cases filed by the Attorneys General of almost every state and territory, pending in various state and federal courts across the United States and its territories.  The cases generally allege that Purdue marketed prescription opioids in violation of state common-law tort duties and consumer protection, tort, and business statutes.

26.     In addition to the Dechert Litigation Services, Dechert also handles certain of the Debtors' patent prosecutions and related intellectual property issues (the "**Dechert Patent Services**" or "**Patent Services**", and together with the Dechert Litigation Services, the "**Dechert**

8

**Services**").  Dechert has in the past and is currently providing legal services in relation to the

following patent applications: (1) application no. 16/318,686; (2) application no. 16/446,397; (3)

application no. 16/578,278; (4) application no. 16/900,600; (5) application no. 16/964,174; (6)

application no. 17/084,588; (7) application no. 17/195,434; (8) application no. 17/202,320; (9)

application no. 63/191,536; and (10) PCT/IB2019/050522.  Dechert will continue to provide the

Dechert Patent Services to the Debtors during these chapter 11 cases.  In the ordinary course of

business and consistent with past practices, Dechert expects to provide additional patent and

intellectual property services as requested by the Debtors.

27.    The description of services below summarizes the primary services

rendered by Dechert during the Compensation Period and highlights the benefits conferred upon

the Debtors and their estates and creditors as a result of Dechert's services.  The following is a

summary description of the matters for which Dechert provided legal services to the Debtors

during the Compensation Period:

**L120:  Analysis and Strategy (Hours: 1,330.1 Fees: $1,370,511.00)**

28.    During the Compensation Period, Dechert professionals performed a

variety of services relating to the analysis and strategy in the opioid litigation and the mediation

and resolution of tort-based claims in the chapter 11 proceedings, including the following:

- Dechert professionals conducted weekly, and sometimes, daily, telephonic, and video conferencing meetings with various creditors, including the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**Consenting States**"), the Ad Hoc Group of Non-Consenting States  (the "**Non-Consenting States**"), the UCC, counsel representing the Neonatal Abstinence Syndrome  Claimants (the "**NAS Claimants**"), the Ad Hoc Group of Hospitals (the "**Hospitals**"), and counsel representing the Third Party Payor claimant group to discuss the proposed settlement framework and issues concerning public and private allocation frameworks and abatement proposals.

- Dechert professionals engaged in extensive negotiations over the course of multiple video conferences and telephonic meetings with various creditors, including the Consenting

9

States and the Non-Consenting States concerning the establishment of a document repository under the Plan of Reorganization.  In relation to those negotiations, Dechert professionals engaged in complex research and analysis of various legal issues—including attorney client and work product privileges—and evaluated the feasibility of various proposals relating the repository.

- Dechert professionals analyzed and evaluated abatement proposals from the Consenting and Non-Consenting States and other private creditor groups and researched evidence-based abatement proposals in the academic and public health literature.

- Dechert professionals worked with the Debtors, various creditor committees, and insurance co-counsel on strategic issues regarding the Debtors' insurance coverage, including providing advice regarding the adversary proceeding against select insurers and engaging in related insurer negotiations.

- Dechert professionals advised and assisted the Debtors and bankruptcy counsel on the claims administration process, including analyzing submitted proof of claim forms for settlement and engaging in numerous communications with the Debtors, consultants, and bankruptcy counsel regarding issues relating to claim allocation, valuation, and bankruptcy liquidation analysis for all creditor groups.

- Together with bankruptcy counsel, Dechert professionals worked with consultants to assist with claim estimation and bankruptcy liquidation analysis and participated in extensive communications and video conferences with consultants and co-counsel regarding claim valuation, estimation, and liquidation analysis.

- Dechert professionals reviewed and analyzed Debtors' experts' analysis in connection with claims allocation and estimation and liquidation analysis regarding public, personal injury, and commercial claimants, including NAS Claimants, Hospitals, and Third Party Payors (e.g., insurance companies).

- Dechert professionals monitored and responded to developments in the stayed litigations pending in the MDL proceeding and state courts around the country in order to assess the potential impact of those proceedings on the Debtors' bankruptcy and settlement activities.

- Dechert professionals analyzed activities and developments in the state and MDL cases in order to identify, and respond to, actual or potential violations of the stay or preliminary injunction.

- Dechert professionals analyzed and summarized key portions of pending opioid trials, including opening statements, expert testimony and evidentiary and other rulings by the courts and advised Debtors and co-counsel of developments.

10

- Dechert professionals advised the Debtors and co-counsel regarding communication strategy issues regarding settlement and mediation, public discussions and media inquiries.

- Dechert professionals engaged in numerous discussions and negotiations with the NAACP regarding the settlement framework, the Debtors' settlement-related public health initiatives, and the abatement objectives and plans.

- Dechert professional reviewed and analyzed the Plan of Reorganization, Disclosure Statement and trust agreements with respect to personal injury related issues, drafted memoranda concerning these issues and advised Debtors and co-counsel regarding strategy issues relating to the terms of the Plan.

- Dechert professional reviewed, analyzed and evaluated the MDL Court's denial of class certification to Neonatal Abstinence Syndrome plaintiffs and conferred extensively with bankruptcy counsel regarding the decision and its impact on the claims process.

- Dechert professionals analyzed issues related to so-called future claimants and held numerous video conference and telephonic meetings to discuss issues related to such claims with Debtors and co-counsel.

- Dechert professionals consulted with and advised the Debtors regarding ongoing media and public communications strategies.

29.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 1,330.1 hours to the Analysis and Strategy project category resulting in time charges of $1,370,511.00.

**L130:  Experts/Consultants (Hours: 221.3 Fees: $206,774.50)**

30.    During the Compensation Period, Dechert professionals performed a variety of services relating to identification and retention of experts by the Debtors, including the following:

- Dechert professionals worked with Debtors' affirmative experts to provide them with factual and litigation background relevant to the issues raised in underlying litigation, filed claims and claims resolution procedures agreed to by the various committees.

- Dechert professionals reviewed and analyzed claimants' expert reports, including those filed by NAS claimants.

11

- Dechert professionals engaged in multiple video conference and telephonic meetings with experts/consultants and co-counsel regarding claims analysis and evaluation in preparation for the Confirmation hearing.

- Dechert professionals engaged in background research and vetting of potential experts to respond to claimants' objections including those made by the NAS and other groups.

31.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 221.3 hours to the Experts/Consultants category resulting in time charges of $206,774.50.

**L160:  Settlement/Non-Binding ADR (Hours: 590.5 Fees: $698,319.50)**

32.    During the Compensation Period, Dechert performed a variety of services relating to settlement negotiations, including the following:

- Dechert professionals worked with the Debtors, bankruptcy counsel, and other co-counsel regarding global settlement negotiations and related strategy and settlement framework discussions.

- Dechert professionals advised the Debtors and assisted in responding to numerous requests and inquiries from various creditor committees such as the UCC and Non-Consenting States for various information relating to the settlement and mediation negotiations.

- Dechert professionals regularly advised the Debtors on strategic issues concerning ongoing settlement negotiations and allocation discussions between the Mediators and various public and private claimant constituent groups.

- Dechert professionals conducted regular meetings and engaged in numerous communications with the Mediators and responded to ongoing requests from the Mediators on settlement and mediation related issues.

- Dechert professionals tracked and oversaw litigation developments in the state courts and federal MDL and advised the Debtors regarding how such activities may impact settlement and bankruptcy related issues.

- Dechert professionals engaged in various communications and analysis regarding the Debtors' negotiations with its insurers and the availability of insurance proceeds for settlement purposes, including engaging in multiple discussions with the Debtors and creditors' committees, conferring regarding strategy, and reviewing materials relating to the adversary proceeding.

- Together with co-counsel, Dechert professionals advised the Debtors regarding strategy for insurance coverage issues relating to the settlement negotiations and strategy regarding engaging with insurance companies on coverage and settlement issues.

- Dechert professionals conferred with counsel for Debtors' insurers regarding coverage issues and potential mediation and settlement discussions and drafted related written communications.

- Dechert professionals advised the Debtors' Board of Directors regarding settlement and mediation strategy.

33.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 590.5 hours to the Settlement/Non-Binding ADR project category resulting in time charges of $698,319.50.

**L210:  Pleadings (Hours: 133.1 Fees: $147,011.50)**

34.    During the Compensation Period, Dechert performed a variety of services relating to pleadings issues including the following:

- Dechert professionals oversaw the opposition strategy regarding media intervenors' motion to unseal documents in the West Virginia McCallister action, including negotiating possible resolutions with the intervenors, drafting the opposition briefing, participating in hearings on the issue, reviewing and analyzing documents and discovery materials subject to the motion to further inform the negotiations and briefing, and advising the Debtors and bankruptcy co-counsel on strategic issues and advising the Debtors and bankruptcy co-counsel on strategic issues.

- Dechert professionals reviewed and revised filings relating to bankruptcy creditors' motions to compel production of select Debtors' documents and discovery materials.

- Dechert professionals reviewed and revised oppositions to motions by NAS Claimants seeking discovery from Debtors and engaged in numerous telephonic meetings and meet-and-confers with the NAS Claimants.

35.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 133.1 hours to the Pleadings project category resulting in time charges of $147,011.50.

13

**L220:  Preliminary Injunctions/Provisional Remedies (Hours: 139.3 Fees: $155,672.50)**

36.     During the Compensation Period, Dechert performed a variety of services

relating to pleadings issues including the following:

- Together with the Debtors, Dechert professionals held numerous  telephonic, and video conferences with the court appointed Monitor (both the outgoing and incoming Monitor) in this case ("**Monitor**") on issues regarding the Debtors' compliance with the November 2019 voluntary injunction (the "**Voluntary Injunction**") and assisted the Debtors in preparing for such meetings.

- Dechert professionals, together with the Consenting States, Non-Consenting States and other committees engaged in a search and vetting of potential Monitor candidates, interviewed candidates and engaged in video conferences and telephonic meetings to discuss the selection process.  Thereafter, Dechert oversaw the onboarding and orientation of the new Monitor.

- Dechert professionals assisted the Debtors in responding to multiple requests from the Monitor regarding inquiries, documents, and information related to the Debtors' compliance with the Voluntary Injunction and the Monitor's preparation of his reports to the Bankruptcy Court.

- Dechert professionals advised the Debtors regarding ongoing compliance issues and questions concerning the Voluntary Injunction.

- Dechert professionals reviewed, analyzed and redrafted the terms of the Voluntary Injunction and held numerous video conference and telephonic meetings with the Consenting States and the Non-Consenting States and the Debtors concerning negotiation of the terms of the Operating Injunction.

37.     During the Compensation Period, Dechert professionals and

paraprofessionals devoted 139.3 hours to the Preliminary Injunctions/Provisional Remedies

project category resulting in time charges of $155,672.50.

**L320:  Document Production (Hours: 47.5 Fees: $42,327.50); L440:  Other Trial Preparation and Support (Hours: 350.7 Fees: $250,072.00)**

38.     During the Compensation Period, Dechert professionals performed a

variety of services relating to document production, trial preparation and support issues including

the following:

14

- Dechert professionals reviewed and analyzed Purdue documents that were designated as proposed trial exhibits in the California, New York, West Virginia, and MDL trials against former co-defendants for confidentiality issues and admissibility objections.

- Dechert professionals reviewed, analyzed and categorized multiple documents to be used at ongoing opioid trials.

- Dechert professionals engaged in multiple telephonic conferences with Debtors and co-counsel regarding the terms of stipulations governing the use of Debtors' documents at ongoing trials.

- Dechert professionals engaged in research concerning and drafted stipulations relating to the use of Debtors' documents at ongoing trials.

39.     During the Compensation Period, Dechert professionals and paraprofessionals devoted 47.5 hours to the Document Production project category resulting in time charges of $42,327.50 and 350.7 hours to the Trial Preparation and Support project category resulting in time charges of $250,072.00.

**L330: Depositions (Hours: 23.1 Fees: $22,850.00)**

40.     During the Compensation Period, Dechert professionals performed a variety of services relating to depositions including the following:

- Dechert professionals advised the Debtors on strategy relating to creditors' requests for depositions of Debtors' witnesses in the bankruptcy and conferred extensively with the Debtors and co-counsel regarding preparing witnesses and responding to creditors' discovery requests.

- Dechert professionals reviewed and analyzed Debtors' witness testimony from the underlying litigation for purposes of responding to the UCC and other creditors' requests for discovery and depositions in the bankruptcy.

41.     During the Compensation Period, Dechert professionals and paraprofessionals devoted 23.1 hours to the Depositions project category resulting in time charges of $22,850.00.

15

**L450:  Trial and Hearing Attendance (Hours: 127.9 Fees: $111,848.00)**

42.     During the Compensation Period, Dechert performed a variety of services

relating to trial and hearing attendance issues including the following:

- Dechert professionals attended pre-trial conferences, hearings and trials in New York and California to monitor, among other issues, references to Debtors, testimony of expert witness, potential issues around indemnification and contribution and evidentiary rulings.

- Dechert professionals attended bankruptcy court hearings to monitor, analyze and provide strategic counseling regarding issues, including claims analysis, mediation and settlement and insurance.

43.     During the Compensation Period, Dechert professionals and

paraprofessionals devoted 127.9 hours to the Trial and Hearing Attendance project category

resulting in time charges of $111,848.00.

**P260:  Intellectual Property (Hours: 109.2 Fees: $65,319.00)**

44.     During the Compensation Period, Dechert professionals performed a

variety of services relating to intellectual property issues including the following:

- Dechert professionals reviewed certain of the Debtors' inventions to prepare a patent prosecution strategy related thereto.

45.     During the Compensation Period, Dechert professionals and

paraprofessionals devoted 109.2 hours to the Depositions project category resulting in time

charges of $65,319.00.

**B160:  Retention Issues and Fee Applications (Hours: 285.8 Fees: $131,850.00)**

46.     During the Compensation Period, Dechert professionals performed a

variety of services relating to its retention and compensation including the following:

- Dechert professionals corresponded electronically and participated in conference calls with the Debtors and/or various of their professionals regarding, among other things, fee applications.

16

- Dechert professionals prepared the monthly fee statements for the months of February, March, April, and May.

- Dechert professionals engaged in various communications regarding compliance with the bankruptcy fee examiner's report and related applications.

- Dechert professionals reviewed time entries for confidentiality issues and adherence to the Guidelines.

47.    During the Compensation Period, Dechert professionals and paraprofessionals devoted 285.8 hours to Retention Issues and Fee Applications project category resulting in time charges of $111,186.00.

48.    Dechert submits that for the reasons set forth above, the professional services rendered by Dechert on behalf of the Debtors during the Compensation Period were necessary and reasonable.

## EXPENSES INCURRED BY DECHERT

49.    Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed in a chapter 11 case.  11 U.S.C. § 330. Accordingly, Dechert seeks reimbursement of expenses incurred in rendering services during the Compensation Period.

50.    In accordance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Guidelines, Dechert maintains the following policies with respect to expenses for which reimbursement is sought:

a.    <u>Internal Duplicating</u> - Charged at $0.10 per page, based upon the cost of duplicating services, which varies due to volume;

b.    <u>Outside Duplicating</u> - Outside duplicating by third parties is charged at the actual cost billed to Dechert;

d.    <u>Computer Research Charges</u>  - Westlaw and Lexis legal research is charged according to an equation based on the flat fee charged to Dechert

17

(approximately 50% of the estimated cost for hourly rate for Lexis; approximately 70% of the estimated cost for hourly rate for Westlaw);

g.    <u>Delivery Services</u> - Dechert's practice is to charge postal, overnight delivery, and courier services at actual cost;

i.    <u>Meals</u> - In accordance with the Guidelines, meals charged to the Debtors were either associated with (i) out-of-town travel and are limited to $40 per person; or (ii) attorneys working at least two hours beyond their normal workday on matters concerning the chapter 11 cases and are limited to $20 per person.

## AUTHORITY FOR
## <u>ALLOWANCE OF COMPENSATION</u>

51.    Bankruptcy Code section 331 allows a bankruptcy court to authorize interim compensation for "[a] trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title… not more than once every 120 days after an order for relief in a case under this title…."

52.    Section 330 of the Bankruptcy Code authorizes the bankruptcy court to award a trustee, examiner, ombudsman or professional employed pursuant to 11 U.S.C. § 327 reasonable compensation for services and reimbursement of expenses.  Specifically, section 330 of the Bankruptcy Code provides that:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329, the court may award to . . . a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by . . . professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual necessary expenses. . . .

(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

A.      the time spent on such services;

18

B.      the rates charged for such services;

C.      whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, a case under this title;

D.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

E.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in case other than cases under this title.

53.     As set forth below, under the standards set forth in Bankruptcy Code

section 330(a), Dechert's representation of the Debtors warrants payment of its fees and

reimbursement of its expenses.

a.      Time and labor required:  As stated above, Dechert has expended 3,737.6 hours in its representation of the Debtors during the Compensation Period, with a blended average billable rate of $953.28 per hour for all timekeepers. All of the time spent by Dechert in these cases was necessary and appropriate and benefited the Debtors, their estates, their creditors, and other parties-in-interest.  Dechert submits that it has represented the Debtors in an efficient, timely, and cost-effective manner.

b.      Novelty and difficulty of questions presented:  The issues attended to by Dechert in connection with these cases were novel, complex, and difficult, requiring thorough attention and substantial firm resources.

c.      Skill required to perform legal services properly:  The experience, knowledge, and expertise of the various Dechert professionals and paraprofessionals representing the Debtors in these cases have facilitated and expedited the results achieved.  Providing mass tort products liability litigation advice to large debtors is a specialized practice that requires attorneys, such as the Dechert attorneys involved in this matter, with substantial expertise in various areas of the law.

d.      Preclusion of other employment:  Dechert's representation of the Debtors in these cases took time and effort that was not therefore available to provide comparable services to other current or potential clients.

e.      Customary fee paid for such legal services:  The hourly rates charged by Dechert for the services performed in these cases are discounted from the hourly rates regularly charged by Dechert in other similar matters and

19

representations, and Dechert submits that they are discounted to the customary charges of other professionals and paraprofessionals with similar degrees of skill and expertise.

f.      Experience, reputation, and ability of attorney:  Dechert believes that its professionals who performed services for the Debtors have an excellent reputation for their skill, quality, integrity, and ability in bankruptcy and other matters.  Dechert's professionals have significant experience in matters of this nature and regularly represent companies similar to the Debtors in various matters in and out of bankruptcy.

g.      Allowance in similar cases:  Dechert asserts that the fees and expenses for which it seeks compensation and reimbursement are lower than the compensation sought and allowed in similar cases for similar services rendered and results obtained by Dechert and by its peer law firms.

## **BUDGET AND STAFFING PLAN**

54.    In accordance with the Retention Order and the Interim Compensation

Order, attached hereto as Exhibit F are the budget and staffing plans that Dechert provided to the

Debtors for the Compensation Period.

## **QUESTIONS REQUIRED BY U.S. TRUSTEE GUIDELINES**

55.    Dechert responds to the questions presented by the U.S. Trustee

Guidelines Appendix B as follows:

Question:  Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Answer: Yes.  The Debtors enjoy discounted rates as well volume discounts as described in the Retention Application and disclosed on the Court docket at ECF Nos. 965, 2221, and 2342.

Question:  If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Answer:  The fees sought by Dechert in the Fifth Interim Fee Application for the Compensation Period are not more than 10% higher than the fees budgeted pursuant to the budget provided by Dechert to the Debtors.  In fact, the total amount in fees

20

sought by Dechert for the Compensation Period is $2,734,407.82 to $2,954,407.82 less than the amount originally budgeted by Debtors.

Question:  Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Answer:  No.

Question:  Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Answer:  Yes.  This application includes 285.8 hours with a discounted value of $111,186.00 incurred in connection with the preparation of Fee Applications and fee statements for the Debtors.

Question:  Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Answer:  No. Dechert's review of its time records is done to ensure compliance with the Guidelines although in the process of such review, attention is given to confidential information.

Question:  If the fee application includes any rate increases since retention:

Did your client review and approve those rate increases in advance?

Answer:  Yes.  This application includes rate increases for the Litigation Services as described in the Notice of Increased Litigation Fees (ECF No. 2221) and for Patent Services as described in the Notices of Increased Patent Fees (ECF Nos. 965 and 2342).

Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Answer:  No. The client did not agree to accept future rate increases.

## **NOTICE**

56.     Notice of this Application will be provided to: (a) the entities on the

Master Service List (as defined in the Case Management Order and available on the Debtors'

21

case website at https://restructuring.primeclerk.com/purduepharma) and (b) any party that has

requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

## <u>CONCLUSION</u>

WHEREFORE, Dechert respectfully requests that the Court enter an order (i) that

allowance be made to it in the sum of $2,600,931.71 as the fair and reasonable value of its actual

and necessary professional services rendered by Dechert to the Debtors during the Compensation

Period; (ii) that allowance be made to it in the sum of $22,492.97 as reimbursement for Dechert's

actual and necessary expenses incurred during the Compensation Period; (iii) authorizing and

directing the Debtors to pay to Dechert the unpaid balance of all approved fees and expenses;

(iv) holding that the allowance of such interim compensation for professional services rendered

and reimbursement of actual necessary expenses incurred be without prejudice to Dechert's right

to seek additional compensation for services performed and expenses incurred during the

Compensation Period which were not processed at the time of this Application; and (v) granting

Dechert such other and further relief as it deems just and proper.

Dated: July 15, 2021                                    Respectfully submitted,

                                                        */s/ Shmuel Vasser*
                                                        Shmuel Vasser
                                                        DECHERT LLP
                                                        1095 Avenue of the Americas
                                                        New York, New York 10036
                                                        Telephone:  (212) 698-3500
                                                        Facsimile:  (212) 698-3599

                                                        *Attorneys for Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Retention Order**

17769803

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF DECHERT LLP AS SPECIAL COUNSEL FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application, dated November 5, 2019 (ECF No. 424) (the "**Application**"),[2] of Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 327(e) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order authorizing the Debtors to retain Dechert as special counsel to the Debtors with respect to the Dechert Services, effective *nunc pro tunc* to the Petition Date, all as more fully set forth in the Application; and upon the declaration of Hayden Coleman, a partner of the law firm of Dechert LLP, attached to the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Application.

Application as **Exhibit B** (the "**Coleman Declaration**"), and this Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and there being no objections to the requested relief; and upon the record of the hearing held by the Court on the Application on November 19, 2019; and it appearing that Dechert does not hold or represent an adverse interest to the Debtors or their estates, is disinterested under section 101(14) of the Bankruptcy Code, and that its retention to perform the Dechert Services is necessary and in the best interests of the estates; now, therefore,

**IT IS HEREBY ORDERED THAT**:

1.    The Application is granted as set forth herein.

2.    Pursuant to sections 327(e) and 328(a) of the Bankruptcy Code the Debtors are authorized to retain Dechert as special counsel to the Debtors with respect to the Dechert Services, effective *nunc pro tunc* to the Petition Date, and Dechert is authorized to perform the Dechert Services described in the Application; provided, that Dechert shall use best efforts not to duplicate services of any of the Debtors' other professionals.

3.    Dechert shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Dechert Services in compliance with sections 330 and 331 of the Bankruptcy Code, as the case may be, and the applicable Bankruptcy Rules, Local Rules, and fee and expense guidelines and orders of the Court.

4.      Dechert shall provide at least ten (10) business days' notice to the Debtors,

the U.S. Trustee and any statutory committee appointed in these chapter 11 cases before

implementing any increases in the rates set forth in the Application for professionals providing the

Dechert Services, and such notice shall be filed with the Court.

5.      Notice of the Application as provided therein is good and sufficient notice

of such Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are

satisfied by such notice.

6.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, the

terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all reasonable actions necessary to

effectuate the relief granted in this Order in accordance with the Application.

8.      In the event of any inconsistency between the Application and this Order,

the terms of this Order shall govern.

9.      This Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and enforcement of this Order.

Dated:    November 21, 2019
          White Plains, New York

                                        /s/ Robert D. Drain
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

## **Certification**

17769803

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

### STATEMENT PURSUANT TO
### <u>FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016(b)</u>

I, Shmuel Vasser, Esquire, hereby declare the following under penalty of perjury:

1.      I am a Partner in the applicant firm, Dechert LLP, and have been admitted to the bar of New York since 1991.

2.      I have personally performed some of the legal services rendered by Dechert LLP as counsel for the Debtors, and I am familiar with all other work performed on behalf of the Debtors by the lawyers and paraprofessionals in the firm.

3.      I have read the foregoing interim fee application of Dechert, attorneys for Debtors, for the Compensation Period (the "<u>Fee Application</u>"). To the best of my knowledge, information and belief, the statements contained in the Fee Application are true and correct. In addition, I believe that the Fee Application complies with Local Bankruptcy Rule 2016-1 and the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

17769803

*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases.*

4.     In connection therewith, I hereby certify that:

a.  to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Fee Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, except as specifically set forth herein;

b.  except to the extent disclosed in the Fee Application, the fees and disbursements sought in the Fee Application are billed at rates customarily employed by Dechert and generally accepted by Dechert's clients. In addition, none of the professionals seeking compensation varied their hourly rate based on the geographic location of these chapter 11 cases;

c.  the total fees sought do not exceed the total fees budgeted in the budget and staffing plan;

d.  Dechert disclosed increases in hourly rates from those disclosed in the Retention Application during the Interim Compensation Period (i) for Litigation Services as described in *Dechert LLP's First Notice of Increase in Hourly Rates for Litigation Services* ("**Notice of Increased Litigation Fees**") [Docket No. 2221] and (ii) for Patent Services as described in *Dechert LLP's First Notice of Increase in Hourly Rates for Patent Services* [Docket No. 965] and *Dechert LLP's Second Notice of Increase in Hourly Rates for Patent Services* [Docket No. 2342] (collectively, the "**Notices of Increased Patent Fees**");

e.  Dechert is seeking compensation with respect to the approximately 285.8 hours with a discounted value of $111,186.00 in fees spent reviewing or revising time records, preparing, reviewing, and revising invoices, monthly fee statements, and Dechert's retention application. Dechert concurrently revises its invoices for compliance with the Guidelines and in the process of doing so also redacts privileged and confidential information as appropriate. Accordingly Dechert did not spend any additional time associated with the redaction of privileged or confidential information;

f.  in providing a reimbursable expense, Dechert does not make a profit on that expense, whether the service is performed by Dechert in-house or through a third party;

g.  in accordance with Bankruptcy Rule 2016(a) and section 504 of the Bankruptcy Code, no agreement or understanding exists between Dechert and any other person for the sharing of compensation to be

2

received in connection with the above cases except as authorized
pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules;

h.  all services for which compensation is sought were professional
services on behalf of Debtors and not on behalf of any other person;
and

i.  the U.S. Trustee, the Debtors, and all parties required under the
Interim Compensation Order have been provided with a statement of
the fees and disbursements for each month within the Compensation
Period.

5.      I hereby certify under 28 U.S.C. § 1746 that the foregoing is true and

correct to the best of my knowledge, information, and belief.

Dated: July 15, 2021                     Respectfully submitted,

                                         */s/ Shmuel Vasser*
                                         Shmuel Vasser
                                         DECHERT LLP
                                         1095 Avenue of the Americas
                                         New York, New York 10036
                                         Telephone:  (212) 698-3500
                                         Facsimile:  (212) 698-3599
                                         shmuel.vasser@dechert.com

                                         *Attorneys for Debtors and Debtors in Possession*

3

**<u>EXHIBIT C</u>**

**Summary of Fees Requested by Timekeeper**

17769803

**Compensation by Individual for Debtors for Litigation Services**

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Birnbaum, Sheila L | Partner | Litigation | 1965 | 1,500.00 | 542.90 | 814,350.00 |
| Coleman, Hayden A. | Partner | Litigation | 1985 | 1,050.00 | 664.30 | 697,515.00 |
| Cusker Gonzalez, Mara C. | Partner | Litigation | 2005 | 1,050.00 | 108.40 | 113,820.00 |
| Freiwald, Hope S. | Partner | Litigation | 1990 | 1,250.00 | 53.90 | 67,375.00 |
| LaFata, Paul A. | Partner | Litigation | 2007 | 975.00 | 185.40 | 180,765.00 |
| Roitman, Sara B. | Partner | Litigation | 2010 | 1,050.00 | 200.00 | 210,000.00 |
| Tam, Jonathan S. | Partner | Litigation | 2009 | 975.00 | 23.50 | 22,912.50 |
| Vasser, Shmuel | Partner | Restructuring/ Reorganization | 1988 | 1,250.00 | 105.30 | 131,625.00 |
| Boisvert, Christopher R. | Counsel | Litigation | 2009 | 975.00 | 119.30 | 116,317.50 |
| Gentin Stock, Danielle | Counsel | Litigation | 1999 | 975.00 | 421.10 | 410,572.50 |
| Lee, Jae H. | Counsel | Litigation | 2005 | 1,025.00 | 6.50 | 6,662.50 |
| Yeary, Michelle K. | Counsel | Litigation | 1995 | 975.00 | 81.90 | 79,852.50 |
| Becker, Noah | Associate | Litigation | 2019 | 630.00 | 125.50 | 79,065.00 |
| Clark, Alyssa C. | Associate | Litigation | 2017 | 790.00 | 125.50 | 79,065.00 |
| Flynn, Ashley A. | Associate | Litigation | 2018 | 790.00 | 77.00 | 60,830.00 |
| Gledhill, Rory M. | Associate | Litigation | 2017 | 790.00 | 3.10 | 2,449.00 |
| Goldberg-Gradess, Daniel | Associate | Litigation | 2018 | 700.00 | 143.40 | 100,380.00 |
| Kim, Mary H. | Associate | Litigation | 2015 | 880.00 | 1.70 | 1,496.00 |
| Newmark, Jenna C. | Associate | Litigation | 2011 | 950.00 | 84.20 | 79,990.00 |
| Norman, Katherine | Associate | Restructuring/ Reorganization | 2019 | 630.00 | 15.50 | 9,765.00 |
| Olsson, Jon E. | Associate | Litigation | 2017 | 790.00 | 0.70 | 553.00 |
| Patel, Amisha R. | Associate | Litigation | 2010 | 950.00 | 2.10 | 1,995.00 |
| Rosenberg, Rachel M. | Associate | Litigation | 2016 | 850.00 | 2.50 | 2,125.00 |
| Yale, Theodore E. | Associate | Litigation | 2017 | 790.00 | 15.20 | 12,008.00 |
| Zanello, Lindsay N. | Associate | Litigation | 2015 | 880.00 | 14.70 | 12,936.00 |
| Dean, Nicholas C. | Staff Attorney | Litigation | | 465.00 | 106.90 | 49,708.50 |
| Capobianco-Ranallo, Antonella | Legal Asst | Litigation | N/A | 300.00 | 97.70 | 29,310.00 |

---

[1]    As described in the Notice of Increased Litigation Fees, the billing rates for the Compensation Period reflect voluntary discounts of 0 to 10% for senior partners, 5% to 12% for partners, 5% for counsel, and 5% to 7% for associates.

17769803

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Stone, Matthew B. | Legal Asst | Restructuring/ Reorganization | N/A | 300.00 | 236.60 | 70,980.00 |
| Neris, Denise | Project Asst | Litigation | N/A | 175.00 | 29.50 | 5,162.50 |
| **Total** | | | | | **3,620.80** | **$3,490,600.50** |
| **Volume Discounts[2]** | | | | | | **($553,169.04)** |
| **Discounted Total** | | | | | | **$2,937,431.46** |

## Compensation by Individual for Debtors for Patent Services

| Name of Professional Person | Position of the Applicant | Practice Group or Department | Year of Obtaining License to Practice (if Applicable) | Hourly Billing Rate (Including Changes)[3] | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Abrams, Samuel B. | Partner | Intellectual Property | 1981 | 930.00 | 16.50 | 15,345.00 |
| Hackman, Blaine M. | Associate | Intellectual Property | 2012 | 765.00 | 21.60 | 16,524.00 |
| Macklin, Todd | Patent Agent | Intellectual Property | | 380.00 | 4.50 | 1,710.00 |
| Snyder, Seth E. | Patent Agent | Intellectual Property | | 630.00 | 36.90 | 23,247.00 |
| Breland, Sherrice T. | Legal Asst | Intellectual Property | N/A | 285.00 | 29.70 | 8,493.00 |
| **Total** | | | | | **109.20** | **$65,319.00** |
| **8% Volume Discount[4]** | | | | | | **($5,225.52)** |
| **Discounted Total** | | | | | | **$60,093.48** |

---

[2]    The Notice of Increased Litigation Fees described discounts in amounts of 15% up to $3 million, 18% from $3 million and to $6 million, and 20% above $6 million, as reflected herein.

[3]    As described in the Notice of Increased Patent Fees, the billing rates for the Compensation Period reflect voluntary discounts of 29% for partners, 23% for associates, 0% for paraprofessionals, and 8% to 15% for patent agents.

[4]    As described in the Notices of Increased Patent Fees, Dechert will apply an 8% discount for aggregate fees and this aggregate discount will apply to all timekeepers.

## **EXHIBIT D**

**Summary of Fees Requested by Project Category**

**Summary of Fees Requested by Project Category**

| Code | Project Category | Total Hours | Discounted Fees |
|------|------------------|------------:|----------------:|
| B110 | Case Administration | 10.50 | 8,060.00 |
| B160 | Fee/Employment Applications | 285.80 | 131,850.00 |
| B165 | Budgeting (case) | 17.80 | 15,702.50 |
| B260 | Board of Directors Matters | 25.90 | 38,640.00 |
| B310 | Claims Administration and Objections | 3.90 | 4,875.00 |
| B320 | Plan and Disclosure Statement | 52.60 | 64,932.50 |
| L110 | Fact Investigation/Development | 1.40 | 1,365.00 |
| L120 | Analysis/Strategy | 1,330.10 | 1,370,511.00 |
| L130 | Experts/Consultants | 221.30 | 206,774.50 |
| L140 | Document/File Management | 14.00 | 4,200.00 |
| L160 | Settlement/Non-Binding ADR | 590.50 | 698,319.50 |
| L190 | Other Case Assessment, Development and Administration | 29.60 | 5,260.00 |
| L210 | Pleadings | 133.10 | 147,011.50 |
| L220 | Preliminary Injunctions/Provisional Remedies | 139.30 | 155,672.50 |
| L230 | Court Mandated Conferences | 54.70 | 64,940.00 |
| L240 | Dispositive Motions | 1.20 | 1,170.00 |
| L250 | Other Written Motions and Submissions | 15.80 | 12,716.00 |
| L310 | Written Discovery | 91.10 | 86,235.50 |
| L320 | Document Production | 47.50 | 42,327.50 |
| L330 | Depositions | 23.10 | 22,850.00 |
| L340 | Expert Discovery | 3.70 | 3,885.00 |
| L350 | Discovery Motions | 3.80 | 3,807.50 |
| L390 | Other Discovery | 45.10 | 37,185.00 |
| L430 | Written Motions and Submissions | 0.40 | 390.00 |
| L440 | Other Trial Preparation and Support | 350.70 | 250,072.00 |
| L450 | Trial and Hearing Attendance | 127.90 | 111,848.00 |
| P260 | Intellectual Property | 109.20 | 65,319.00 |
| | | | |
| **Total** | | **3,730.00** | **$3,555,919.50**[1] |

---

[1]    This amount reflects the discounted billing rates but not the discounts for aggregate fees.

17769803

## **EXHIBIT E**

**Summary of Expense Reimbursement Requested by Category**

17769803

### Expense Summary for Debtors

| Expenses Category | Total Expenses |
|---|---:|
| Consultants Fees | 201.69 |
| Court Costs | 997.59 |
| Courtlink Search | 225.56 |
| Docket Fees | 85.90 |
| Document Storage/Retrieval | 53.25 |
| Federal Express Charges | 231.45 |
| Filing Fees and Related | 8,119.00 |
| Legal Publication Expense | 246.50 |
| Lexis/Legal Research | 4,074.78 |
| Pacer Research Fees | 457.00 |
| Transcripts | 1,501.92 |
| Westlaw Search Fees | 6,297.83 |
| | |
| **Total** | **$22,492.97** |

17769803

## **EXHIBIT F**

### **Budget and Staffing Plan**

17769803

**MASS TORT LITIGATION BUDGET**

| Category | Feb-21 | Mar-21 | Apr-21 | May-21 |
|---|---|---|---|---|
| Base Rate | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
| Additional Trial Fees | $0 | $0 | $0 | $0 |
| Appeal Fees | $0 | $0 | $0 | $0 |
| Subtotals | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
| | | | | |
| Before Discount | $1,562,500 | $1,562,500 | $1,562,500 | $1,562,500 |
| Discount | $312,500 | $312,500 | $312,500 | $312,500 |
| **After Discount** | **$1,250,000** | **$1,250,000** | **$1,250,000** | **$1,250,000** |

**BANKRUPTCY/IP RELATED BUDGET**
**FEBRUARY 2021 – MAY 2021**

| CATEGORY | ESTIMATED FEES |
|---|---|
| B110 - CASE ADMINISTRATION | $10,000-$20,000 |
| B140 - RELIEF FROM STAY/ADEQUATE PROTECTION | $10,000-$20,000 |
| B160 - FEE/EMPLOYMENT APPLICATIONS | $100,000-$150,000 |
| B165 - BUDGETING | $10,000-$20,000 |
| B310 – CLAIMS ADMINISTRATION AND OBJECTIONS | $25,000-$50,000 |
| B320 – PLAN AND DISCLOSURE STATEMENT | $50,000-$100,000 |
| B410 - GENERAL BANKRUPTCY ADVICE/OPINIONS | $10,000-$20,000 |
| IP MATTERS | $120,000-$175,000 |

**DECHERT STAFFING PLAN**
**FEBRUARY 2021 – MAY 2021**

| Staffing Plan | | |
|---|---|---|
| Years of Experience for Timekeeper (based on law school graduation) | Number of Timekeepers Expected to Work on the Matter During the Budget Period | Average Hourly Rate |
| 15+ Years | 9 | $1,111.67 |
| 8-14 Years | 7 | $948.57 |
| 4-7 Years | 7 | $824.29 |
| 0-3 Years | 4 | $687.50 |
| Paralegal | 3 | $295.00 |

17769803

## **EXHIBIT G**

**Blended Rate Schedule**

2

**Blended Rate Schedule**

Dechert's hourly rates for bankruptcy services are comparable to the hourly rates charged in complex chapter 11 cases by comparably skilled bankruptcy attorneys.  In addition, Dechert's hourly rates for bankruptcy services are comparable to the rates charged by the Firm, and by comparably skilled practitioners in other firms, for complex corporate and litigation matters, whether in court or otherwise, regardless of whether a fee application is required.  By way of example, Dechert's blended hourly rates for attorneys and paraprofessionals in the Financial Services, the Finance and Real Estate, and the White Collar, Securities, and Complex Commercial Litigation practice groups of the Firm for the prior calendar year were as set forth below.  Dechert believes that the services performed by those sections of the Firm are comparable to the services performed professionals who performed services during the Compensation Period.  Also included below is blended hourly rate information for the past calendar year for all sections of the Firm.

| Category of Timekeeper | Blended Hourly Rate[1] | | |
| --- | --- | --- | --- |
| | **Billed**<br>**In comparable practice areas[2] for 2/1/2021 - 5/31/2021** | **Billed**<br>**Firm-wide for 2/1/2021 - 5/31/2021** | **Billed**<br>**This Application** |
| **Partner** | $1,087 | $1,092 | $1,186.04 |
| **Counsel** | $878 | $885 | $975.52 |
| **Associate** | $730 | $719 | $758.79 |
| **Paralegal** | $290 | $281 | $298.85 |
| **Aggregated:** | $794 | $801 | $978.57 |

1 - All columns reflect US information only
2 - Comparable practice areas reflect PLMT, TIS, FRE, and FSG information only

17769803