AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**SUMMARY COVER SHEET TO THE FIFTH INTERIM FEE APPLICATION OF
AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.*,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF
FEBRUARY 1, 2021 THROUGH AND INCLUDING MAY 31, 2021**

In accordance with the Local Bankruptcy Rules for the Southern District of New York,

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of

Unsecured Creditors of Purdue Pharma L.P. and its affiliated debtors and debtors in possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp.  (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc.  (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc.  (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

submits this summary (the "<u>Summary</u>") of fees and expenses sought as actual, reasonable and necessary in the fee application to which the Summary is attached (the "<u>Application</u>")[2] for the period from February 1, 2021 through and including May 31, 2021 (the "<u>Compensation Period</u>").

Akin Gump submits the Application as its fifth interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "<u>Interim Compensation Order</u>").

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.* |
| Petition Date: | September 15, 2019 |
| Retention Date: | November 21, 2019, *nunc pro tunc* to September 26, 2019 |
| Prior Applications: | 4 |

| Summary of Fees and Expenses Sought in this Application | |
|---|---|
| Time Period Covered by this Application: | February 1, 2021 through and including May 31, 2021 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $8,389,582.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $478,594.23 |
| Total Compensation and Expenses Requested for the Compensation Period: | $8,868,176.73 |

| Summary of Past Requests for Compensation and Prior Payments | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $66,742,807.50[3] |

---

[2] Capitalized terms used but not defined in the Summary shall have the meanings ascribed to such terms in the Application.

[3] On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts pending review by the Fee

| | |
|---|---|
| Total Expenses Approved by Interim Order to Date: | $3,364,048.98 |
| Total Allowed Compensation Paid to Date: | $66,742,807.50 |
| Total Allowed Expenses Paid to Date: | $3,364,048.98 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees for the period from February 1, 2021 through and including March 31, 2021):[4] | $3,876,724.40 |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (100% of Expenses for the period from February 1, 2021 through and including March 31, 2021): | $297,181.82 |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $7,190,260.23 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $1,677,916.50 |

---

Examiner of the First through Fourth Monthly Fee Statements. Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner, and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020. On September 2, 2020, the Court entered an order [ECF No. 1649] allowing the fees and expenses requested by Akin Gump in the Second Interim Fee Application in the total amount of $17,644,573.70, reflecting a fee reduction of $154,951.00 proposed by the Fee Examiner and agreed to by Akin Gump. On December 16, 2020, the Court entered an order [ECF No. 2144] allowing the fees and expenses requested by Akin Gump in the Third Interim Fee Application in the total amount of $23,354,168.98, reflecting a fee reduction of $104,373.25 and an expense reduction of $12,528.06 proposed by the Fee Examiner and agreed to by Akin Gump. On April 22, 2021, the Court entered an order [ECF No. 2698] allowing the fees and expenses requested by Akin Gump in the Fourth Interim Fee Application in the total amount of $17,613,290.00, reflecting a fee reduction of $69,671.00 and an expense reduction of $447.98 proposed by the Fee Examiner and agreed to by Akin Gump. The "Total Compensation Approved by Interim Order to Date" ($66,742,807.50) reflects the aforementioned reductions.

[4] As of the date of this Application, Akin Gump has filed monthly fee statements for each month comprising the Compensation Period. Pursuant to the Interim Compensation Order, Akin Gump has received 80% of the fees requested and 100% of the expenses requested by each such Monthly Fee Statement, other than for the Nineteenth and Twentieth Monthly Fee Statements, for which it has not yet received compensation for any fees or reimbursement of expenses. Akin Gump anticipates that it will receive 80% of the fees requested and 100% of the expenses requested in its Nineteenth and Twentieth Monthly Fee Statements before the hearing on this Application. If such fees and expenses are paid as anticipated, as of the date of the hearing on this Application: (i) the total compensation sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $6,711,666.00; (ii) the total expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $478,594.23; (iii) the total compensation and expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $7,190,260.23; and (iv) the total compensation and expenses sought in this Application not yet paid will be $1,677,916.50.

| | |
|---|---|
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $654,538.16[5] |

| **Summary of Rates and Other Related Information for the Compensation Period** | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $1,066.90 |
| Blended Rate in this Application for All Timekeepers: | $930.09 |
| Number of Timekeepers Included in this Application: | 78 (59 attorneys; 19 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 9 |
| Increase in Rates Since Date of Retention: | 2[6] |
| Interim or Final Application: | Interim |

---

[5] Prior to filing its Monthly Fee Statements for the Compensation Period, Akin Gump voluntarily reduced its fees by the aggregate amount of $654,520.50 and reduced its expenses by $17.66 to comply with section F of the *General Order M-447, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013. In the Chapter 11 Cases to date, Akin Gump has reduced its fees by the aggregate amount of $8,086,510.16, which amount includes, in addition to the above voluntary amount for the Compensation Period: (i) $362,267.00 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the First Interim Fee Period; (ii) a $125,739.75 fee reduction for the First Interim Fee Period pursuant to an agreement with the Fee Examiner; (iii) $866,524.00 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Second Interim Fee Period; (iv) a $154,951.00 fee reduction for the Second Interim Fee Period pursuant to an agreement with the Fee Examiner; (v) $4,059,658.00 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Third Interim Fee Period; (vi) a $104,373.25 fee reduction for the Third Interim Fee Period pursuant to an agreement with the Fee Examiner; (vii) $1,688,788.00 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Fourth Interim Fee Period; and (viii) a $69,671.00 fee reduction for the Fourth Interim Fee Period pursuant to an agreement with the Fee Examiner. Akin Gump does not and will not seek payment of the foregoing fees and expenses in this Application or any other application. For the avoidance of doubt, the foregoing voluntary reductions are not based on any determination that such fees are not appropriate or compensable.

[6] Akin Gump increased its rates on January 1, 2020 and January 1, 2021, consistent with its customary practice and as disclosed in the Akin Retention Application and the *Fourth Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P.,* et al. *to Retain and Employ Akin Gump Strauss Hauer & Feld LLP,* Nunc Pro Tunc*, to September 26, 2019*, dated December 17, 2020 [ECF No. 2151].

## SUMMARY OF MONTHLY FEE STATEMENTS IN THE COMPENSATION PERIOD

| Docket Number | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid | Total Unpaid |
|---|---|---|---|---|---|---|
| 2796 | 02/1/21 – 02/28/21 | $2,476,856.00 | $286,755.59 | $1,981,484.80 | $286,755.59 | $495,371.20 |
| 2994 | 03/1/21 – 03/31/21 | $2,369,049.50 | $10,426.23 | $1,895,239.60 | $10,426.23 | $473,809.90 |
| 3081 | 04/1/21 – 04/30/21 | $1,918,035.00 | $121,982.54 | $0.00 | $0.00 | $2,040,017.54 |
| 3174 | 05/1/21 – 05/31/21 | $1,625,642.00 | $59,429.87 | $0.00 | $0.00 | $1,685,071.87 |
| **Totals** | | **$8,389,582.50** | **$478,594.23** | **$3,876,724.40** | **$297,181.82** | **$4,694,270.51** |

Summary of Any Objections to Monthly Fee Statements: None

Compensation and Expenses Sought in This Application Not Yet Paid: $4,694,270.51

v

## COMPENSATION BY PROFESSIONAL
### FEBRUARY 1, 2021 THROUGH AND INCLUDING MAY 31, 2021

| Partners | Department | Year of Admission | Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | 2011 | $1,265.00 | 566.9 | $717,128.50 |
| Cono Carrano | Intellectual Property | 1994 | $1,235.00 | 6.7 | $8,274.50 |
| Olivier De Moor | Tax | 2009 | $1,235.00 | 48.4 | $59,774.00 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,655.00 | 19.4 | $32,107.00 |
| Shawn Hanson | Litigation | 1983 | $1,195.00 | 43.3 | $51,743.50 |
| Mitchell Hurley | Litigation | 1997 | $1,655.00 | 237.2 | $392,566.00 |
| Howard Jacobson | Tax | 1979 | $1,310.00 | 141.9 | $185,889.00 |
| Stephen Kho | International Trade | 1998 | $1,330.00 | 12.1 | $16,093.00 |
| Jeffrey Kochian | Corporate | 2000 | $1,450.00 | 39.2 | $56,840.00 |
| Eli Miller | Corporate | 2009 | $1,135.00 | 449.4 | $510,069.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,655.00 | 578.4 | $957,252.00 |
| Corey Roush | Litigation | 2000 | $1,195.00 | 6.3 | $7,528.50 |
| Elizabeth Scott | Litigation | 2007 | $1,135.00 | 93.4 | $106,009.00 |
| Joseph Sorkin | Litigation | 2001 | $1,425.00 | 77.6 | $110,580.00 |
| David Vondle | Intellectual Property | 2002 | $1,175.00 | 89.9 | $105,632.50 |
| Scott Welkis | Corporate | 1997 | $1,450.00 | 240.3 | $348,435.00 |
| **Partner Total** | | | | **2,677.7** | **$3,697,999.00** |
| **Senior Counsel & Counsel** | **Department** | **Year of Admission** | **Rate** | **Total Hours** | **Total Compensation** |
| Melissa Gibson | Intellectual Property | 2010 | $1,005.00 | 175.4 | $176,277.00 |
| Elizabeth Harris | Tax | 1987 | $1,125.00 | 186.9 | $210,262.50 |
| Matthew Hartman | Intellectual Property | 2010 | $1,000.00 | 77.9 | $77,900.00 |
| Kristi Kirksey | Tax | 2014 | $1,045.00 | 70.0 | $73,150.00 |
| Edan Lisovicz | Financial Restructuring | 2014 | $1,045.00 | 464.7 | $485,611.50 |
| Matthew Lloyd | Litigation | 2012 | $980.00 | 27.9 | $27,342.00 |

| Anthony Loring | Financial Restructuring | 2017 | $1,010.00 | 85.0 | $85,850.00 |
|---|---|---|---|---|---|
| Clayton Matheson | Litigation | 2010 | $1,000.00 | 24.6 | $24,600.00 |
| Brennan Meier | Litigation | 2012 | $980.00 | 68.1 | $66,738.00 |
| Erin Parlar | Litigation | 2015 | $1,005.00 | 68.4 | $68,742.00 |
| Nicholas Petree | Litigation | 2012 | $980.00 | 97.6 | $95,648.00 |
| Katherine Porter | Litigation | 2011 | $1,145.00 | 144.1 | $164,994.50 |
| Jillie Richards | Litigation | 2007 | $935.00 | 17.8 | $16,643.00 |
| Peretz Riesenberg | Tax | 2016 | $985.00 | 14.7 | $14,479.50 |
| J. Matthew Schmitten | Litigation | 2020 | $935.00 | 9.3 | $8,695.50 |
| M. Todd Tuten | Public Law and Policy | N/A | $1,095.00 | 7.8 | $8,541.00 |
| Jonathan Underwood | Intellectual Property | 2014 | $935.00 | 63.4 | $59,279.00 |
| Molly Whitman | Litigation | 2013 | $960.00 | 24.7 | $23,712.00 |
| Dennis Windscheffel | Litigation | 2004 | $1,020.00 | 251.9 | $256,938.00 |
| **Senior Counsel & Counsel Total** | | | | **2,019.0** | **$2,092,830.00** |
| **Associates** | **Department** | **Year of Admission** | **Rate** | **Total Hours** | **Total Compensation** |
| Sudhana Bajracharya | Health | 2018 | $785.00 | 113.2 | $88,862.00 |
| Brooks Barker | Financial Restructuring | 2018 | $895.00 | 234.1 | $209,519.50 |
| Megi Belegu | Litigation | 2020 | $695.00 | 297.2 | $206,554.00 |
| Marc Caplan | Tax | 2019 | $785.00 | 23.2 | $18,212.00 |
| Alan Carrillo | Financial Restructuring | 2018 | $735.00 | 5.1 | $3,748.50 |
| Jess Coleman | Financial Restructuring | 2020 | $735.00 | 104.5 | $76,807.50 |
| Sanzana Faroque | Corporate | 2020 | $695.00 | 41.4 | $28,773.00 |
| Madison Gardiner | Financial Restructuring | 2020 | $735.00 | 58.3 | $42,850.50 |
| Lisa Garrett | Corporate | 2017 | $785.00 | 46.2 | $36,267.00 |
| Patrick Glackin | Litigation | 2019 | $770.00 | 29.6 | $22,792.00 |
| Nina Goepfert | Litigation | 2018 | $855.00 | 9.0 | $7,695.00 |
| Tania Iakovenko-Grässer | International Trade | 2019 | $650.00 | 112.4 | $73,060.00 |
| Srishti Kalro | Litigation | 2012 | $940.00 | 69.6 | $65,424.00 |

| Rachel Kurzweil | Health | 2015 | $870.00 | 10.3 | $8,961.00 |
|---|---|---|---|---|---|
| Joseph Lumley | Corporate | 2020 | $855.00 | 25.8 | $22,059.00 |
| McKenzie Miller | Litigation | 2020 | $625.00 | 222.4 | $139,000.00 |
| Mouna Moussaoui | Litigation | 2018 | $770.00 | 5.7 | $4,389.00 |
| Oluwaremilekun Ojurongbe | Litigation | 2020 | $625.00 | 18.4 | $11,500.00 |
| Jennifer Poon | Litigation | 2016 | $940.00 | 44.3 | $41,642.00 |
| James Salwen | Financial Restructuring | 2017 | $895.00 | 511.4 | $457,703.00 |
| Anthony Sierra | Intellectual Property | 2019 | $625.00 | 144.1 | $90,062.50 |
| Joshua Tate | Litigation | 2019 | $625.00 | 20.4 | $12,750.00 |
| Izabelle Tully | Litigation | 2020 | $695.00 | 215.3 | $149,633.50 |
| Grace Zhu | Financial Restructuring | 2021 | $650.00 | 187.3 | $121,745.00 |
| **Associate Total** | | | | **2,549.2** | **$1,940,010.00** |

| Staff Attorneys and Paraprofessionals | Department | Year of Admission | Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Anna Anisimova | Law Clerk, Litigation | N/A | $360.00 | 111.4 | $40,104.00 |
| Frank Castro | Paralegal, Litigation | N/A | $370.00 | 184.3 | $68,191.00 |
| Daniel Chau | EDiscovery | N/A | $390.00 | 142.1 | $55,419.00 |
| Suzanne Csizmadia | Paralegal, Intellectual Property | N/A | $350.00 | 117.0 | $40,950.00 |
| Sallie Henry | Paralegal, Corporate | N/A | $370.00 | 61.7 | $22,829.00 |
| Kareen Ejoh | Paralegal, Litigation | N/A | $300.00 | 81.5 | $24,450.00 |
| Rachael Fizette | Paralegal, Financial Restructuring | N/A | $245.00 | 12.5 | $3,062.50 |
| Amy Laaraj | Paralegal, Litigation | N/A | $370.00 | 474.6 | $175,602.00 |
| Brenda Kemp | Paralegal, Financial Restructuring | N/A | $390.00 | 10.2 | $3,978.00 |

| | | | | | |
|---|---|---|---|---|---|
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $440.00 | 232.6 | $102,344.00 |
| Jennifer Langmack | Paralegal, Litigation | N/A | $370.00 | 16.7 | $6,179.00 |
| Donna Moye | Practice Attorney, Litigation | 2001 | $545.00 | 56.4 | $30,738.00 |
| Kelsey Robins | Paralegal, Financial Restructuring | N/A | $245.00 | 7.6 | $1,862.00 |
| Gisselle Singleton | EDiscovery | N/A | $390.00 | 64.1 | $24,999.00 |
| Risa Slavin | Paralegal, Litigation | N/A | $410.00 | 22.0 | $9,020.00 |
| Camille Schoonmaker | Paralegal, Litigation | N/A | $230.00 | 109.1 | $25,093.00 |
| Bennett Walls | Paralegal, Litigation | N/A | $230.00 | 15.7 | $3,611.00 |
| Elizabeth Watson | Paralegal, Corporate | N/A | $260.00 | 16.9 | $4,394.00 |
| Karen Woodhouse | Practice Attorney, Litigation | 2003 | $420.00 | 37.9 | $15,918.00 |
| **Staff Attorneys and Paraprofessional Total** | | | | **1,774.3** | **$658,743.50** |
| **Total Hours / Fees Requested** | | | | **9,020.2** | **$8,389,582.50** |

## COMPENSATION BY PROJECT CATEGORY
## FEBRUARY 1, 2021 THROUGH AND INCLUDING MAY 31, 2021

| Task Code | Matter | Total Hours Billed | Total Value ($) |
|---|---|---|---|
| 2 | Case Administration | 91.0 | $56,008.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 266.5 | $224,518.00 |
| 4 | Analysis of Other Professional Fee Applications/Reports | 117.2 | $111,503.00 |
| 6 | Retention of Professionals | 182.2 | $85,610.00 |
| 7 | Creditor Committee Matters/Meetings (including 341 meetings) | 465.5 | $540,104.50 |
| 8 | Hearings and Court Matters/Court Preparation | 192.7 | $231,731.50 |
| 12 | Claims Analysis/Claims Objections (incl. Motions for Class Proofs of Claim) | 110.2 | $117,806.50 |
| 13 | Prepetition Transactions (incl. all Sackler transactions/ distributions) | 3,966.0 | $2,803,143.50 |
| 14 | Insurance Issues | 233.1 | $257,843.00 |
| 16 | Automatic Stay Issues | 35.2 | $41,360.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 31.3 | $32,511.50 |
| 18 | Tax Issues | 351.8 | $408,809.00 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 132.5 | $92,560.00 |
| 21 | Exclusivity | 0.8 | $588.00 |
| 22 | Disclosure Statement/ Solicitation/ Plan/ Confirmation | 2,700.7 | $3,222,419.50 |
| 23 | Asset Dispositions/363 Asset Sales/Bidding Procedures | 0.5 | $827.50 |
| 31 | Business Operations | 10.2 | $13,735.00 |
| 32 | Intellectual Property | 58.9 | $69,596.50 |
| 33 | Sackler Rule 2004 Discovery | 73.9 | $78,907.00 |
| **Total Hours / Fees Incurred:** | | **9,020.2** | **$8,389,582.50** |

x

**EXPENSE SUMMARY**
**FEBRUARY 1, 2021 THROUGH AND INCLUDING MAY 31, 2021**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $1,463.22 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $4,432.21 |
| Computerized Legal Research - Courtlink- In Contract 50% discount | $3,000.94 |
| Computerized Legal Research - Other | $1,567.00 |
| Courier Service/Messenger Service - Off Site | $206.30 |
| Court Costs | $770.00 |
| Document Retrieval | $179.00 |
| Meals - Overtime | $25.00 |
| Meals (100%) | $20.00 |
| Postage | $15.31 |
| Professional Fees - Legal | $464,015.04 |
| Research | $717.43 |
| Telephone - Long Distance | $1,120.00 |
| Transcripts | $192.00 |
| Travel - Ground Transportation | $583.89 |
| Local Transportation - Overtime | $286.89 |
| **Total Expenses Requested:** | **$478,594.23** |

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**FIFTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD
LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF PURDUE PHARMA L.P., *ET AL.*, FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR
THE PERIOD OF FEBRUARY 1, 2021 THROUGH AND INCLUDING MAY 31, 2021**

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Purdue Pharma, L.P. and its affiliated debtors and

debtors in possession (collectively, the "Debtors"), hereby submits its fifth application (the

"Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC
Pharma Inc. (4014).

"Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of compensation for services rendered to the Committee for the period of February 1, 2021 through and including May 31, 2021(the "Compensation Period") and for reimbursement of expenses incurred in connection therewith.  In support of this Application, Akin Gump submits the declaration of Arik Preis, a partner at Akin Gump, which is attached hereto as **Exhibit A** and incorporated by reference into this Application.  In further support of this Application, Akin Gump respectfully states as follows.

## INTRODUCTION

1.      By this Application, Akin Gump seeks: (i) interim allowance of compensation for the professional services rendered by Akin Gump during the Compensation Period in the amount of $8,389,582.50, representing 7,238.1 hours of professional services and 1,782.1 hours of paraprofessional and other non-legal services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in the amount of $478,594.23.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim Compensation Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in*

*Larger Chapter 11 Cases*, 78 Fed. Reg. 36248, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Committee has been given the opportunity to review this Application and the Co-Chairs (as defined below) have approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. Approval of this Application is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

A.      **The Debtors' Chapter 11 Cases**

7.      On September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On September 26, 2019 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated September 27, 2019 [ECF No. 131].  The Committee currently comprises nine members and two

*ex officio* members.[2]  The Blue Cross and Blue Shield Association and Ryan Hampton serve as co-chairs of the Committee (the "Co-Chairs").

## B.    Retention of Akin Gump

9.      On the Formation Date, the Committee selected Akin Gump as its legal counsel. On November 5, 2019, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Purdue Pharma L.P. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel,* Nunc Pro Tunc *to September 26, 2019* [ECF No. 421] (the "Akin Retention Application"), which was granted by an order of this Court dated November 21, 2019 [ECF No. 522] (the "Akin Retention Order").[3]

10.     The Akin Retention Order authorizes the Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to September 26, 2019, all as contemplated by the Akin Retention Application.   The Akin Retention Order further authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

---

[2] The Committee comprises the following members: (i) The Blue Cross and Blue Shield Association; (ii) CVS Caremark Part D Services L.L.C. and CaremarkPCS Health L.L.C.; (iii) Cheryl Juaire; (iv) Kara Trainor; (v) LTS Lohmann Therapy Systems Corporation; (vi) Pension Benefit Guaranty Corporation; (vii) Ryan Hampton; (viii) Walter Lee Salmons; and (ix) West Boca Medical Center, plus three *ex officio* members, Cameron County, Texas on behalf of the Multi-State Governmental Entities Group and the Cheyenne and Arapaho Tribes, on behalf of certain Native American Tribes and Native American-affiliated creditors, and Thornton Township High School District 205, on behalf of certain public school districts.

[3] The Committee selected Bayard, P.A ("Bayard") to serve as its "efficiency" counsel, Province, Inc. ("Province") to serve as its financial advisor, Jefferies LLC ("Jefferies") to serve as its investment banker, Kurtzman Carson Consultants LLC ("KCC") to serve as its information agent, KPMG LLP ("KPMG") to serve as joint tax consultant to the Committee and the Debtors and Bedell Cristin Jersey Partnership ("Bedell Cristin") to serve as special foreign counsel on September 29, 2019, October 1, 2019 and October 4, 2019, November 1, 2019, December 23, 2019, and February 27, 2020, respectively.  Orders authorizing the retention of Bayard [ECF No. 523], Province [ECF No. 524], Jefferies [ECF No. 526], KCC [ECF No. 527] were entered on November 21, 2019, and orders authorizing the retention of KPMG and Bedell Cristin were entered on February 24, 2020 [ECF No. 867] and June 26, 2020 [ECF No. 1310], respectively.  As disclosed in the *Notice of Change of Firm and Substitution of Counsel*, dated March 6, 2020 [ECF No. 900], Justin Alberto, who was serving as the primary attorney for the Committee at Bayard, resigned as a director at Bayard and became a member of the law firm of Cole Schotz P.C. ("Cole Schotz").  The Court entered an order authorizing the Committee's retention of Cole Schotz [ECF No. 1084] on April 24, 2020.

C.      **Appointment of Fee Examiner**

11.     On April 8, 2020, the Court entered the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 105(a) and Modifying Interim Compensation Procedures for Certain Professionals Employed Pursuant to 11 U.S.C. § 327*, dated April 8, 2020 [ECF No. 1023] appointing David M. Klauder, Esq. as fee examiner (the "Fee Examiner").  On May 26, 2020, the Court authorized the retention of Bielli & Klauder, LLC as counsel to the Fee Examiner.  *See Order Authorizing the Retention and Employment of Bielli & Klauder, LLC as Counsel to the Fee Examiner,* Nunc Pro Tunc *to the Appointment Date*, dated May 26, 2020 [ECF No. 1182].

D.      **Monthly Fee Statements**

12.     On January 10, 2020, Akin Gump filed and served the *First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of September 26, 2019 Through October 31, 2019*, dated January 10, 2020 [ECF No. 736] (the "First Monthly Fee Statement"),[4] pursuant to which Akin Gump sought payment of (i) $2,139,642.40 (80% of $2,674,553.00) as compensation for professional services rendered and (ii) $44,481.58 for reimbursement of expenses.  Akin Gump did not receive any objections to its First Monthly Fee Statement and received payment in respect thereof on February 10, 2020.

13.     On February 7, 2020, Akin Gump filed and served the *Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2019 Through November 30, 2019*, dated February 7, 2020 [ECF No. 812]

---

[4] A copy of the First Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzIzMjY4&id2=0.

(the "Second Monthly Fee Statement"),[5] pursuant to which Akin Gump sought payment of (i) 1,758,302.40 (80% of $2,197,878.00) as compensation for professional services rendered and (ii) $28,963.85 for reimbursement of expenses. Akin Gump did not receive any objections to the Second Monthly Fee Statement and received payment in respect thereof on March 2, 2020.

14.    On March 10, 2020, Akin Gump filed and served the *Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2019 Through December 31, 2019* [ECF No. 904] (the "Third Monthly Fee Statement"),[6] pursuant to which Akin Gump sought payment of (i) $1,491,816.00 (80% of $1,864,770.00) as compensation for professional services rendered and (ii) $23,812.68 for reimbursement of expenses. Akin Gump did not receive any objections to the Third Monthly Fee Statement and received payment in respect thereof on March 30, 2020.

15.    On March 13, 2020, Akin Gump filed and served the *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 Through January 31, 2019* [ECF No. 926] (the "Fourth Monthly Fee Statement"),[7] pursuant to which Akin Gump sought payment of (i) $2,480,835.20 (80% of $3,101,044.00) as compensation for professional services rendered and (ii) $68,475.18 for reimbursement of expenses. Akin Gump did not receive any objections to the Fourth Monthly Fee Statement and received payment in respect thereof on April 2, 2020.

---

[5] A copy of the Second Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzI4MTk2&id2=0.

[6] A copy of the Third Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM2OTgz&id2=0.

[7] A copy of the Fourth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4MzE3&id2=0.

16.     On March 16, 2020, Akin Gump filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.*, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of September 26, 2019 Through and Including January 31, 2020* [ECF No. 947] (the "First Interim Fee Application"),[8] pursuant to which Akin Gump sought allowance of (i) $9,838,245.00 as compensation for professional services rendered and (ii) $165,733.29 for reimbursement of expenses.  On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts[9] pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements.  Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020.

17.     On April 29, 2020, Akin Gump filed and served the *Fifth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of February 1, 2020 Through February 29, 2020* [ECF No. 1105] (the "Fifth Monthly Fee Statement"),[10] pursuant to which Akin Gump sought payment of (i) $2,612,236.40 (80% of $3,265,295.50) as compensation for professional services rendered and (ii) $51,460.31 for reimbursement of

---

[8] A copy of the First Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4Nzk0&id2=0.

[9] Pursuant to Paragraph 2(vi) of the Interim Compensation Order, the payment received by Akin Gump for compensation allowed in connection with the First through Fourth Monthly Fee Statements was subject to a 20% holdback.

[10] A copy of the Fifth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzcyNzgx&id2=0.

expenses.  Akin Gump did not receive any objections to the Fifth Monthly Fee Statement and received payment in respect thereof on May 18, 2020.

18.     On May 18, 2020, Akin Gump filed and served the *Sixth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2020 Through March 31, 2020* [ECF No. 1165] (the "Sixth Monthly Fee Statement"),[11] pursuant to which Akin Gump sought payment of (i) $3,918,530.40 (80% of $4,898,163.00) as compensation for professional services rendered and (ii) $52,477.20 for reimbursement of expenses.  Akin Gump did not receive any objections to the Sixth Monthly Fee Statement and received payment in respect thereof on June 8, 2020.

19.     On June 15, 2020, Akin Gump filed and served the *Seventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of April 1, 2020 Through April 30, 2020* [ECF No. 1276 ] (the "Seventh Monthly Fee Statement"),[12] pursuant to which Akin Gump sought payment of (i) $4,270,396.80 (80% of $5,337,996.00) as compensation for professional services rendered and (ii) $65,548.73 for reimbursement of expenses.  Akin Gump did not receive any objections to the Seventh Monthly Fee Statement and received payment in respect thereof on July 6, 2020.

20.     On July 14, 2020, Akin Gump filed and served the *Eighth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of May 1,*

---

[11] A copy of the Sixth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=Mzk4MjYx&id2=0.

[12] A copy of the Seventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDIzNTky&id2=0.

*2020 Through May 31, 2020* [ECF No. 1382] (the "Eighth Monthly Fee Statement"),[13] pursuant to which Akin Gump sought payment of (i) $3,249,619.60 (80% of $4,062,024.50) as compensation for professional services rendered and (ii) $66,559.50 for reimbursement of expenses. Akin Gump did not receive any objections to the Eighth Monthly Fee Statement and received payment in respect thereof on July 28, 2020.

21. On July 17, 2020, Akin Gump filed and served the *Second Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al., for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of February 1, 2020 Through and Including May 31, 2020* [ECF No. 1441] (the "Second Interim Fee Application"),[14] pursuant to which Akin Gump sought allowance of (i) $17,563,479.00 as compensation for professional services rendered and (ii) $236,045.74 for reimbursement of expenses. Following discussions with the Fee Examiner, Akin Gump agreed to a voluntary reduction of $154,951.00 in the fees requested pursuant to the Second Interim Fee Application, and the Court entered an order granting the Second Interim Fee Application, including the agreed reduction, on September 2, 2020. *See Omnibus Order Granting Second Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [ECF No. 1649].

22. On August 11, 2020, Akin Gump filed and served the *Ninth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of June 1,*

---

[13] A copy of the Eighth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDc1OTk3&id2=0.

[14] A copy of the Second Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDgyNTY1&id2=0.

*2020 Through June 30, 2020* [ECF No. 1559] (the "Ninth Monthly Fee Statement"),[15] pursuant to which Akin Gump sought payment of (i) $3,599,723.20 (80% of $4,499,654.00) as compensation for professional services rendered and (ii) $128,348.37 for reimbursement of expenses.  Akin Gump did not receive any objections to the Ninth Monthly Fee Statement and received payment in respect thereof on August 31, 2020.

23.    On September 16, 2020, Akin Gump filed and served the *Tenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of July 1, 2020 Through July 31, 2020* [ECF No. 1696] (the "Tenth Monthly Fee Statement),[16] pursuant to which Akin Gump sought payment of (i) $3,926,677.60 (80% of $4,908,347.00) as compensation for professional services rendered and (ii) $124,849.29 for reimbursement of expenses.  Akin Gump did not receive any objections to the Tenth Monthly Fee Statement and received payment in respect thereof on October 8, 2020.

24.    On October 29, 2020, Akin Gump filed and served the *Eleventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of August 1, 2020 Through August 31, 2020* [ECF No. 1870] (the "Eleventh Monthly Fee Statement),[17] pursuant to which Akin Gump sought payment of (i) $4,599,810.80 (80% of $5,749,763.50) as compensation for professional services rendered and (ii) $646,665.40 for

---

[15] A copy of the Ninth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: [https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NTc0MDc1&id2=0].

[16] A copy of the Tenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTA3MTAwNQ==&id2=0.

[17] A copy of the Eleventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExMTUyNA==&id2=0.

reimbursement of expenses.  Akin Gump did not receive any objections to the Eleventh Monthly

Fee Statement and received payment in respect thereof on November 19, 2020.

25.    On November 11, 2020, Akin Gump filed and served the *Twelfth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of September 1, 2020 Through September 30, 2020* [ECF No. 1696] (the "Twelfth Monthly

Fee Statement),[18] pursuant to which Akin Gump sought payment of (i) $5,564,074.40 (80% of

$6,955,093.00) as compensation for professional services rendered and (ii) $458,349.73 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Twelfth Monthly

Fee Statement and received payment in respect thereof on December 7, 2020.

26.    On November 16, 2020, Akin Gump filed and served the *Third Interim Fee*

*Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of*

*Unsecured Creditors of Purdue Pharma L.P.,* et al*., for Allowance of Compensation for Services*

*Rendered and Reimbursement of Expenses for the Period of June 1, 2020 Through and Including*

*September 30, 2020* [ECF No. 1983] (the "Third Interim Fee Application"),[19] pursuant to which

Akin Gump sought allowance of (i) $22,112,857.50 as compensation for professional services

rendered and (ii) $1,358,212.79 for reimbursement of expenses.  Following discussions with the

Fee Examiner, Akin Gump agreed to a voluntary reduction of $104,373.25 in the fees and

$12,528.06 in the expenses requested pursuant to the Third Interim Fee Application, and the Court

entered an order granting the Third Interim Fee Application, including the agreed reductions, on

December 16, 2020. *See Omnibus Order Granting Third Interim Fee Applications of Professionals*

---

[18] A copy of the Twelfth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExNDU0Mg==&id2=0.

[19] A copy of the Third Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExNjM5OA==&id2=0.

*for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [ECF No. 2144].

27.    On January 11, 2021, Akin Gump filed and served the *Thirteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of October 1, 2020 Through October 31, 2020* [ECF No. 2245] (the "Thirteenth Monthly Fee Statement")[20] pursuant to which Akin Gump sought payment of (i) 5,402,867.60 (80% of $6,753,584.50) as compensation for professional services rendered and (ii) $475,392.29 for reimbursement of expenses.  Akin Gump did not receive any objections to the Thirteenth Monthly Fee Statement and received payment in respect thereof on January 28, 2021.

28.    On January 28, 2021, Akin Gump filed and served the *Fourteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2020 Through November 30, 2020* [ECF No. 2330] (the "Fourteenth Monthly Fee Statement")[21] pursuant to which Akin Gump sought payment of (i) $3,610,640.80 (80% of $4,513,301.00) as compensation for professional services rendered and (ii) $441,183.42 for reimbursement of expenses.  Akin Gump did not receive any objections to the Fourteenth Monthly Fee Statement and received payment in respect thereof on February 18, 2021.

29.    On February 22, 2021, Akin Gump filed and served the *Fifteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

---

[20] A copy of the Thirteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTEzNzU4MA==&id2=0.

[21] A copy of the Fourteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE0MDQzOA==&id2=0.

*Period of December 1, 2020 Through December 31, 2020* [ECF No. 2407] (the "Fifteenth Monthly

Fee Statement")[22] pursuant to which Akin Gump sought payment of (i) $2,320,454.40 (80% of

$2,900,568.00) as compensation for professional services rendered and (ii) $350,047.89 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Fifteenth Monthly

Fee Statement and received payment in respect thereof on March 11, 2021.

30.     On March 12, 2021, Akin Gump filed and served the *Sixteenth Monthly Fee

Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and

Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the

Period of January 1, 2021 Through January 31, 2021* [ECF No. 2473] (the "Sixteenth Monthly

Fee Statement")[23] pursuant to which Akin Gump sought payment of (i) $2,812,406.00 (80% of

$3,515,507.50) as compensation for professional services rendered and (ii) $390,403.14 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Sixteenth Monthly

Fee Statement and received payment in respect thereof on April 1, 2021.

31.     On March 17, 2021, Akin Gump filed and served the *Fourth Interim Fee

Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of

Unsecured Creditors of Purdue Pharma L.P.,* et al., *for Allowance of Compensation for Services

Rendered and Reimbursement of Expenses for the Period of October 1, 2020 Through and

Including January 31, 2021* [ECF No. 2516] (the "Fourth Interim Fee Application"),[24] pursuant to

which Akin Gump sought allowance of (i) $17,682,961.00 as compensation for professional

services rendered and (ii) $1,657,026.74 for reimbursement of expenses.  Following discussions

---

[22] A copy of the Fifteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE3MjQ4Mw==&id2=0.

[23] A copy of the Sixteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE5NTgyNw==&id2=0.

[24] A copy of the Fourth Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE5NzI5OQ==&id2=-1.

with the Fee Examiner, Akin Gump agreed to a voluntary reduction of $69,671.00 in the fees and

$447.98 in the expenses requested pursuant to the Fourth Interim Fee Application, and the Court

entered an order granting the Fourth Interim Fee Application, including the agreed reductions, on

April 22, 2020. *See Omnibus Order Granting Fourth Interim Fee Applications of Professionals*

*for Allowance and Payment of Compensation for Professional Services Rendered and for*

*Reimbursement of Actual and Necessary Expenses* [ECF No. 2698].

32.     On May 3, 2021, Akin Gump filed and served the *Seventeenth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of February 1, 2021 Through February 28, 2021* [ECF No. 2796] (the "Seventeenth

Monthly Fee Statement"),[25] pursuant to which Akin Gump sought payment of (i) $1,981,484.80

(80% of $2,476,856.00) as compensation for professional services rendered and (ii) $286,755.59

for reimbursement of expenses.  Akin Gump did not receive any objections to the Seventeenth

Monthly Fee Statement and received payment in respect thereof on May 27, 2021.

33.     On June 4, 2021, Akin Gump filed and served the *Eighteenth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of March 1, 2021 Through March 31, 2021* [ECF No. 2994] (the "Eighteenth Monthly Fee

Statement"),[26] pursuant to which Akin Gump sought payment of (i) $1,895,239.60 (80% of

$2,369,049.50) as compensation for professional services rendered and (ii) $10,426.23 for

---

[25] A copy of the Seventeenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTIxMjE5NA==&id2=-1.

[26] A copy of the Eighteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTIyMzA5OQ==&id2=-1.

reimbursement of expenses.  Akin Gump did not receive any objections to the Eighteenth Monthly

Fee Statement and received payment in respect thereof on June 24, 2021.

34.    On June 29, 2021, Akin Gump filed and served the *Nineteenth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of April 1, 2021 Through April 30, 2021* [ECF No. 3081] (the "Nineteenth Monthly Fee

Statement"),[27] pursuant to which Akin Gump sought payment of (i) $1,534,428.00 (80% of

$1,918,035.00) as compensation for professional services rendered and (ii) $121,982.54 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Nineteenth Monthly

Fee Statement as of the applicable objection deadline but has not received any payments in respect

of the Nineteenth Monthly Fee Statement as of the date hereof.

35.    On July 14, 2021, Akin Gump filed and served the Twentieth Monthly Fee

Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and

Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the

Period of May 1, 2021 Through May 31, 2021 [ECF No. 3174] (the "Twentieth Monthly Fee

Statement," and together with the First through Nineteenth Monthly Fee Statements, the "Monthly

Fee Statements"),[28] pursuant to which Akin Gump sought payment of (i) $1,300,513.60 (80% of

$1,625,642.00) as compensation for professional services rendered and (ii) $59,429.87 for

reimbursement of expenses.  As of the date hereof, Akin Gump has not received any objections to

the Twentieth Monthly Fee Statement or any payments in respect thereof.

---

[27] A copy of the Nineteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTI0MTEyNg==&id2=-1.

[28] A copy of the Twentieth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTI2MDU4Mg==&id2=-1.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

36.     By this Application, Akin Gump requests allowance of interim compensation for professional services rendered to the Committee during the Compensation Period in the amount of $8,389,582.50 and expense reimbursements of $478,594.23.  During the Compensation Period, Akin Gump professionals and paraprofessionals expended a total of 9,020.2 hours for which compensation is sought.

37.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

38.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with its representation of the Committee in the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code against budgeted fees and hours is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services for the Committee during the Compensation Period have been filed and served with the Monthly Fee Statements in accordance with the Interim Compensation Order.

39.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

40.     Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

## SUMMARY OF SERVICES PERFORMED BY
## AKIN GUMP DURING THE COMPENSATION PERIOD

41.     The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Committee and commensurate with the complexity and significance of the matter.  Moreover, the nature of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis in furtherance of the Committee's objectives and the interests of the Debtors' unsecured creditors required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines during the Compensation Period.

42.     The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services performed in the category that most closely related to the services provided.  The below does not include summaries for certain task codes for which a *de minimis* amount of time was billed during the Compensation Period.

43.     Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an

attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the matters and issues that Akin Gump was required to address during the Compensation Period.

A.    **General Case Administration (Task Code 2)**

| Total Hours | Fees |
|---|---|
| 91.0 | $56,008.50 |

44.    This category includes time spent by Akin Gump professionals and paraprofessionals performing various general administrative tasks necessary to the Committee's involvement in the Chapter 11 Cases, including among other things: (i) maintaining distribution lists; (ii) monitoring the docket for the Chapter 11 Cases to track filings and to remain apprised of critical dates; (iii) ensuring that the appropriate parties and professionals are notified of filed documents, relevant objection and response deadlines, hearing dates and other critical dates; (iv) updating internal case calendars with key dates and deadlines; (v) communicating with the members of the Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters; and (vi) performing other necessary general administrative tasks.

45.    During the Compensation Period, Akin Gump was in close contact with counsel to the Debtors and other relevant parties in interest on a regular basis to discuss when various motions and applications would be filed and the information the Committee would require to analyze each motion or application properly and in a timely manner.  Akin Gump also consulted with Cole Schotz, Province and/or Jefferies multiple times each day with respect to documents and other information received from the Debtors, their representatives and other parties in interest.  In addition, Akin Gump professionals and paraprofessionals monitored the docket for the Chapter 11 Cases to remain apprised of all critical matters.  For each significant filing, Akin Gump

professionals and paraprofessionals worked to ensure that the appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any other critical matters related thereto. Due to Akin Gump's experience counseling official committees of unsecured creditors, Akin Gump believes it was able to address all issues relating to case administration that have arisen during the pendency of the Chapter 11 Cases in an effective and efficient manner.

**B.    Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 266.5 | $224,518.00 |

46.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the preparation of Akin Gump's monthly fee statements and fee applications. During the Compensation Period, these efforts included ensuring that the schedules attached to the Fifteenth, Sixteenth, Seventeenth, Eighteenth and Nineteenth Monthly Fee Statements complied with the Fee Guidelines, and that such schedules did not contain information that was privileged, confidential or subject to attorney work product protection. Akin Gump professionals and paraprofessionals also prepared, filed and served the Fourth Interim Fee Application. To minimize costs in connection with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Monthly Fee Statements and schedules for the Fourth Interim Fee Application, thereby limiting the time spent by professionals on the review of fees, where reasonably practicable.

**C.    Analysis of Other Professionals' Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
|---|---|
| 117.2 | $111,503.00 |

47.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing monthly fee statements submitted to the Court by other estate-compensated professionals. Akin Gump reviewed such fee statements to ensure that such

professionals operated in accordance with their individual mandates and sought reasonable compensation and reimbursement of expenses in connection with their roles in the Chapter 11 Cases. This category also includes time spent assisting the Committee's other professionals in reviewing, finalizing and filing their respective monthly fee statements and interim fee applications.

48.    In addition, this category includes time spent by Akin Gump professionals in connection with the *Debtors' Motion to Enter Into Term Sheet With and Pay Certain Fees and Expenses of the Multi-State Governmental Entities Group*, dated March 31, 2021 [ECF No. 2580] (the "MSGE Group Fee Motion"), pursuant to which the Debtors sought authorization to enter into a term sheet with and pay certain reasonable and documented fees and expenses of professionals retained by the Multi-State Governmental Entities Group (the "MSGE Group"). Akin Gump professionals identified certain concerns regarding the scope of the relief requested in the MSGE Group Fee Motion, including potential negative consequences for unsecured creditors that could result from payment of the MSGE Group's fees in the event the *Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated March 15, 2021 [ECF No. 2487] (as amended, the "Plan"), or any other plan in which the members of the MSGE Group are residual claimants, is not confirmed. After discussing such concerns with the advisors to the Debtors and the MSGE Group, the parties were able to agree upon additional language reflected in the revised proposed form of order filed by the Debtors on April 16, 2021 that addressed these issues, among other things.[29]   Thereafter, Akin Gump professionals prepared and filed *The Official Committee of Unsecured Creditors' Statement in Respect of Debtors' Motion to Enter Into Term*

---

[29] *See Certificate of No Objection Under 28 U.S.C. § 1746 Regarding Notice of Debtors Motion to Enter into Term Sheet with and Pay Certain Fees and Expenses of the Multi-State Governmental Entities Group*, dated April 16, 2021 [ECF No. 2658].

*Sheet with and Pay Certain Fees and Expenses of the Multi-State Governmental Entities Group*,

dated April 16, 2021 [ECF No. 2659], to inform the Court of the parties' resolution and explain

that the Committee was satisfied that the language added to the proposed form of order

appropriately limited the scope of the fees contemplated to be paid to the MSGE Group and

ensured that the Debtors' unsecured creditors would be not be prejudiced by payment of such fees

in the event the Plan is not confirmed.  On April 22, 2021, the Court granted the MSGE Group Fee

Motion and entered an order that was consistent with the revised proposed form of order agreed

upon by the Committee and reflected certain additional modifications based on the Court's

comments at the hearing on the motion.  *See Order Authorizing the Debtors to Enter into Term*

*Sheet with and Pay Certain Fees and Expenses of the Multi-State Governmental Entities Group*

[ECF No. 2695].

**D.    Retention of Professionals (Task Code 6)**

| Total Hours | Fees |
|---|---|
| 182.2 | $85,610.00 |

49.    This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with various professional retention matters.  During the

Compensation Period, Akin Gump professionals and paraprofessionals: (i) searched and reviewed

Akin Gump's conflict database against the list of additional potential parties in interest in the

Chapter 11 Cases identified since Akin Gump filed its prior supplemental declaration disclosing

potential connections to parties in interest[30] in order to prepare and file the *Supplemental*

*Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured*

*Creditors of Purdue Pharma L.P.,* et al. *To Retain and Employ Akin Gump Strauss Hauer & Feld*

---

[30] *See Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al. *to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel,* Nunc Pro Tunc *to September 26, 2019*, dated July 3, 2020 [ECF No. 1336].

*LLP as Counsel,* Nunc Pro Tunc*, to September 26, 2019*, dated April 23, 2021 [ECF No. 2704]

disclosing the results of such search; (ii) prepared and filed the *Supplemental Declaration of Arik*

*Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue*

*Pharma L.P.,* et al*. To Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel,* Nunc

Pro Tunc *to September 26, 2019*, dated May 17, 2021 [ECF No. 2869]; and (iii) assisted Bedell

Cristin with the preparation of the *Third Supplemental Declaration of Edward Drummond in*

*Support of Application of the Official Committee of Unsecured Creditors for Entry of an Order*

*Authorizing Retention and Employment of Bedell Cristin Jersey Partnership as Special Foreign*

*Counsel,* Nunc Pro Tunc *to February 27, 2020*, dated June 23, 2021 [ECF No. 3060].

**E.    Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|---|---|
| 465.5 | $540,104.50 |

50.    This category includes time spent by Akin Gump professionals and

paraprofessionals: (i) preparing for and participating in meetings and conference calls with the

Committee as a whole or with individual members of the Committee, including bi-weekly

conference calls with the full Committee; (ii) communicating with the Committee's other advisors

on a day-to-day basis regarding pending matters and case strategy; (iii) attending meetings with

various parties in interest on the Committee's behalf; (iv) responding to numerous daily inquiries

from individual creditors regarding various issues arising in connection with Chapter 11 Cases,

including reviewing and responding to numerous letters from incarcerated claimants, and

coordinating with counsel to the Debtors in connection therewith as appropriate; (v) providing

Committee members with summaries and updates regarding Court filings and relevant response

deadlines, hearing dates and any other critical matters related thereto; and (vi) attending to other

general Committee matters.

51.     The Committee continued to play a very active[31] role in the Chapter 11 Cases during the Compensation Period.  Akin Gump, together with the Committee's other advisors, held no fewer than 31 telephonic meetings with the full Committee, in addition to numerous telephonic conferences with individual Committee members and subcommittees.  Prior to each biweekly telephonic meeting with the full Committee, Akin Gump professionals reviewed pending matters, prepared an agenda describing issues requiring the Committee's attention and coordinated with the Committee's other advisors regarding such matters.  In addition, Akin Gump professionals prepared and/or assisted the Committee's other advisors in preparing detailed memoranda and presentations for the Committee addressing pertinent matters in the Chapter 11 Cases.  During such meetings, Akin Gump assisted the Committee in fulfilling its statutory duty to exercise informed judgment regarding the various issues arising in the Chapter 11 Cases and formulating positions with respect to significant matters.  Akin Gump also sent daily email updates to the Committee to ensure the Committee remained apprised of relevant matters.

52.     Akin Gump professionals and paraprofessionals devoted a significant number of hours to these tasks during the Compensation Period to ensure that the Committee was prepared to make informed decisions with respect to significant case issues.  Although such tasks do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated the Committee's participation in the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

53.     Importantly, this category also includes time spent by Akin Gump professionals, on behalf of the Committee, responding to inquiries from numerous unsecured creditors to fulfill the

---

[31] *See, e.g.,* Transcript of June 3, 2020 Hearing 95:3–5 (THE COURT: "You have an ***active***, well-informed and diligent official creditors committee that represents everyone.") (emphasis added); Transcript of September 30, 2020 Hearing 83:12–13 (THE COURT: "We have had an extremely active and well represented and thoughtful official Creditors' Committee.").

Committee's responsibility under Bankruptcy Code section 1102(b)(3) to "provide access to information for creditors . . . not appointed to the [C]ommittee." At the beginning of the Chapter 11 Cases, the Court entered the *Order Clarifying the Committee's Requirement to Provide Access to Confidential or Privileged Information and Approving a Protocol Regarding Creditor Requests for Information*, dated December 23, 2019 [ECF No. 699], which authorized the Committee to establish a website at which creditors can receive information regarding the status of the Chapter 11 Cases (among other things). The Committee's website, which is maintained by KCC, makes general information about the Chapter 11 Cases available to creditors, including information regarding case developments, key contact information and a detailed case calendar addressing upcoming hearings and other critical events. During the Compensation Period, Akin Gump professionals, in coordination with KCC, posted relevant updates and materials on the Committee's website, including detailed case calendars, information regarding significant case developments and key contact information. As noted above, Akin Gump professionals also fielded numerous inquiries from unsecured creditors regarding the status of the Chapter 11 Cases and responded to such inquiries by letter, email or over the phone.

F.    **Hearings and Court Matters/Meetings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 192.7 | $231,731.50 |

54.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the Court hearings and status conferences held during the Compensation Period. Specifically, Akin Gump professionals and paraprofessionals prepared for and participated in each of the eight hearings during the Compensation Period. In connection therewith, Akin Gump professionals, together with the Committee's other advisors, reviewed and analyzed all relevant issues, motions and applications filed with the Court, including any

objections and responses thereto, discussed with the Debtors' advisors and the advisors to other parties in interest the relief requested and, as necessary, asserted the Committee's positions at such hearings.  In addition, following each hearing, Akin Gump professionals provided the Committee with summaries and analyses of the results thereof, either in written form or telephonically during the next Committee meeting.

## G.    General Claims Analysis/Claims Objections (Task Code 12)

| Total Hours | Fees |
|:-:|:-:|
| 110.2 | $117,806.50 |

55.    This category includes time spent by Akin Gump professionals in continuing to evaluate the merits of the vast universe of claims against the Debtors—which include a wide range of contingent litigation claims, including without limitation claims by personal injury plaintiffs, hospitals, insurance ratepayers, third-party payors ("TPPs"), health plans, states, municipalities, the United States, Native American tribes and children born with neonatal abstinence syndrome ("NAS")—and potential approaches to addressing such claims in the Chapter 11 Cases.

56.    Prior to the Compensation Period, the Court entered the *Order Appointing Mediators*, dated as of March 4, 2020 [ECF No. 895] (the "Mediation Order"), pursuant to which Kenneth Feinberg and the Hon. Layn Phillips (Ret.) were appointed co-mediators to oversee the mediation regarding the allocation of value to be distributed under the Plan among the Debtors' various creditor constituencies (the "Phase I Mediation").[32]    Ultimately, Phase I Mediation

---

[32] Phase I Mediation involved representatives of nearly all significant creditor constituencies, including: (i) the Debtors; (ii) the Committee (including *ex officio* members); (iii) the Ad Hoc Committee; (iv) the Ad Hoc Committee of NAS Children (the "NAS Committee"); (v) the Ad Hoc Group of Hospitals (the "Hospitals"); (vi) the Non-Consenting States; (vii) the MSGE Group; (viii) the Ad Hoc Group of Individual Victims (the "Personal Injury Claimants"); (ix) counsel for the Blue Cross and Blue Shield Association, various third party payors and employer and government-sponsored health insurance plans administered by these companies; and (x) a putative class of individual health insurance purchasers (the "Ratepayers, and collectively, the "Phase I Mediation Parties").  In addition, certain other parties had varying levels of involvement in Phase I Mediation, but were not official Phase I Mediation Parties, including: (a) the United States Department of Justice, (b) the proposed representatives of a putative class of independent public school districts (the "Public Schools"); (c) certain federally recognized tribes represented

culminated in agreement among Phase I Mediation Parties on several key case issues, including, among other things: (i) the agreement of the Ad Hoc Committee, the Non-Consenting States and the MSGE Group (collectively, the "Non-Federal Public Claimants") that all value received by them in the Chapter 11 Cases will be used to fund programs designed to abate the opioid crisis; and (ii) term sheets addressing allocation of estate value among four private claimant groups—the Personal Injury Claimants, the Hospitals, counsel to certain of the TPPs and the NAS Committee (with regard to abatement)—each of which was agreed to by the Debtors, the Non-Federal Public Claimants and the specific private claimant group that is party to such term sheet. The term sheets for the Hospitals, the TPPs and the NAS Committee also required each group to use substantially all of the value received under a plan to fund programs to abate the opioid crisis.[33] *See Mediator's Report*, dated September 23, 2020 [ECF No. 1716] (the "Mediators' Report"). During the Compensation Period, Akin Gump professionals spent time addressing various issues that remained outstanding following the conclusion of Phase I Mediation, including engaging with the Mediators and representatives of the various creditor groups in an effort to facilitate to consensual resolutions of such issues.

57.    In addition, Akin Gump professionals spent time during the Compensation Period in connection with the *Motion of Debtors for Entry of Order Approving (I) Omnibus Claims Objection Procedures, (II) Omnibus Claims Settlement Procedures and (III) Omnibus Claims Hearing Procedures*, dated March 16, 2021 [ECF No. 2490] (the "Omnibus Claims Objection Procedures Motion"), by which the Debtors sought entry of an order establishing procedures for

by various counsel from the Tribal Leadership Committee and the Plaintiffs Executive Committee in MDL No. 2804; (d) proposed representatives of a putative class of children born with Neonatal Abstinence Syndrome ("NAS") in the State of West Virginia; (e) the National Association for the Advancement of Colored People; and (f) a group of individual victim advocates which refer to themselves as the "Ad Hoc Committee on Accountability."

[33] In addition, the Debtors and the insurance ratepayers reached agreement on a sum to be paid over two years and dedicated to abatement purposes.

(i) filing omnibus objections to certain claims, (ii) settling certain disputed claims without Bankruptcy Court approval and (iii) holding streamlined hearings on disputes arising in connection with contested claims.  Specifically, Akin Gump analyzed the Debtors' requested relief and related pleadings, including an objection filed by an ad hoc group of distributors, manufacturers and pharmacies[34] and the Debtors' reply in further support of the motion,[35] and negotiated certain modifications to the proposed form of order to ensure that claimants would not be prejudiced by such procedures.  Ultimately, the parties were able to resolve the DMP Objection, and the Court entered an order granting the Omnibus Claims Objection Procedures Motion on April 22, 2021.  *See Order Approving (I) Omnibus Claims Objection Procedures, (II) Omnibus Claims Settlement Procedures and (III) Omnibus Claims Hearing Procedures* [ECF No. 2696].

## H.    Prepetition Transactions (Task Code 13)

| Total Hours | Fees |
| --- | --- |
| 3,966.0 | $2,803,143.50 |

58.    This category includes time spent by Akin Gump professionals and paraprofessionals investigating and evaluating potential estate causes of action, including those against the Sacklers and certain affiliated entities, arising from prepetition transfers of value or the incurrence of obligations from the Debtors to other entities, as well as numerous other potential causes of action arising out of prepetition conduct and transactions.  Such efforts involved extensive legal research with respect to identifying and analyzing potential causes of action, as well as potential defenses to such causes of action.  This category also includes time related to

---

[34] *See Joint Objection of Distributors, Manufacturers and Pharmacies to Motion of Debtors for Entry of Order Approving (I) Omnibus Claims Objection Procedures, (II) Omnibus Claims Settlement Procedures and (III) Omnibus Claims Hearing Procedures*, dated April 15, 2021 [ECF No. 2644] (the "DMP Objection").

[35] *Debtors' Reply in Support of the Motion of Debtors for Entry of Order Approving (I) Omnibus Claims Objection Procedures, (II) Omnibus Claims Settlement Procedures, and (III) Omnibus Claims Hearing Procedures*, dated April 19, 2021 [ECF No. 2667].

evaluating the Debtors' proposed settlement framework (the "Settlement Framework")—which contemplated a global settlement of estate and third-party causes of action against the Sacklers and certain related entities—including diligence related to the Independent Associated Companies (the "IACs"), the sale of which is contemplated to provide a portion of the consideration for the settlement of such claims. In connection with ongoing efforts regarding such causes of action and the Settlement Framework, Akin Gump professionals coordinated closely with other creditor constituencies, including the Non-Consenting States.

59.    Specifically, during the Compensation Period, Akin Gump, in conjunction with the Committee's other advisors, continued reviewing voluminous materials produced by the Debtors, the Sacklers, the IACs and other parties and conducting fact discovery to, among other things: (i) assess potential causes of action on behalf of the Debtors' estates and the likelihood of recovery; (ii) obtain purportedly privileged documents withheld by the Sacklers, the Debtors and the IACs; and (iii) aid the Committee's efforts to evaluate the Settlement Framework and engage in the mediation with Sacklers, the Debtors, the Ad Hoc Committee, the MSGE Group and the Non-Consenting States to reach resolution with the Sacklers regarding an appropriate contribution to the Debtors' estates in respect of the claims against the Sacklers and various related entities ("Phase II Mediation").[36]

60.    As of shortly after the close of the Compensation Period, the Committee's advisors had received approximately 14 million documents comprising more than 104 million pages

---

[36] The result of Akin Gump's efforts, along with those of the professionals of the Debtors and the Ad Hoc Committee, in Phase II Mediation was an increase of $1.275 billion in guaranteed value beyond the approximately $3 billion initially offered by the Sacklers under the Settlement Framework. Thereafter, following a subsequent mediation among the Sacklers and the Non-Consenting States overseen by the Hon. Shelley C. Chapman, the Sacklers agreed to provide further economic consideration in the form of $50 million in incremental cash payments, acceleration of $50 million in previously agreed settlement payments and at least $175 million from charitable foundations established by members of the Sackler family, subject to receipt of necessary approvals. *See Mediator's Report*, dated July 7, 2021 [ECF No. 3119].

through discovery and other voluntary disclosures.  In light of the expedited timeframe under which the Committee's investigation was required to proceed, the Committee's advisors utilized a document review protocol assisted by analytics, and used such analytics and tailored searches to conduct targeted reviews of large volumes of materials.  Akin Gump professionals continued to conduct document review to identify and analyze the most relevant documents and prepared various memoranda and other work product in connection with the ongoing review of these documents and related factual analysis.  Further, these efforts included significant diligence and analysis related to the more than 160 IACs, including tailored document review to identify and review materials most relevant to the significant cash and non-cash transfers from the Debtors for the benefit of the IACs and the Sacklers.  Akin Gump professionals also met and conferred with counsel for the IACs during the Compensation Period regarding the production of non-privileged handwritten notes responsive to certain of the Committee's documents requests, negotiated a stipulation concerning the same and reviewed materials produced in connection with the foregoing to assess their impact on the Committee's analysis of potential estate causes of action.  *See Notice of Filing of Stipulation and Agreed Order Regarding Production of Documents and Privilege Logs Concerning Non-Privileged Handwritten Notes*, dated March 10, 2021 [ECF No. 2462].

61.    In addition, during the Compensation Period, Akin Gump professionals and paraprofessionals continued to analyze and prepare challenges (as necessary) to the nearly 400,000 documents the Debtors and the Sacklers initially withheld from production based on assertions of attorney-client privilege, work product protection, common interest and other grounds, which were the subject of two separate motions filed by the Committee prior to the Compensation Period.[37]

---

[37] *See Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers and the Debtors to Demonstrate Documents Identified on Logs Are Privileged*, dated September 30, 2020 [ECF No. 1752]; *Official Committee of Unsecured Creditors' Motion to Compel Production of Purportedly Privileged Documents or for In Camera Review, based on*

Akin Gump professionals continued to review privilege log entries and redactions associated with the withheld documents and engaged in a meet and confer process with the Debtors, the Sacklers, the IACs and Norton Rose Fulbright regarding various deficiencies in the privilege logs, as well as the exceptions to the asserted privileges that the Committee believes apply under the circumstances.

62.    In addition, prior to the Compensation Period, the Committee and the Debtors were able to reach a consensual resolution of the Privilege Motions as to the Debtors that provided the Committee (on a common interest basis) access to many thousands of the Debtors' privileged documents throughout the relevant time period subject to investigation, both with regard to transfers and various communications by and among the Sacklers and other board members. *See Notice of Agreement Between Debtors and Official Committee of Unsecured Creditors Regarding Privilege Motions and Adjournment of Hearing with Respect to Remaining Privilege Disputes as to the Sacklers*, dated November 6, 2020 [ECF No. 1908].  Therefore, during the Compensation Period, Akin Gump professionals spent time reviewing and analyzing additional documents produced by the Debtors pursuant to this consensual resolution.  Although the Committee was able to resolve the Privilege Motions[38] with respect to the Debtors, its attempts to reach a consensual resolution with the Sacklers were not successful.   Accordingly, Akin Gump professionals continued to spend time during the Compensation Period preparing for a potential hearing regarding the Privilege Motions, including reviewing newly-produced discovery materials,

---

*Good Cause, Crime Fraud, and At Issue Exceptions to Claims of Privilege*, dated September 30, 2020 [ECF No. 1753] (together, the "Privilege Motions").

[38] *See Official Committee of Unsecured Creditors' Reply in Support of Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Failure of the Sacklers to Demonstrate Documents Identified on Logs are Privileged*, dated November 18, 2020 [ECF No. 2013]; *Official Committee of Unsecured Creditors' Reply in Support of its Motion to Compel Production of Purportedly Privileged Documents, or for In Camera Review, Based on Good Cause, Crime Fraud, and at Issue Exceptions to Claims of Privilege*, dated November 19, 2020 [ECF No. 2014].

analyzing how such materials and related evidence would be presented if ultimately set for hearing and updating privilege log and discovery trackers in connection with the foregoing.

63.     Finally, this category includes time spent by Akin Gump professionals working with counsel to the Debtors and the Sacklers in connection with the motion of Dow Jones & Co, Inc., Boston Globe Media Partners, LLC and Reuters News & Media, Inc. (the "Media Intervenors") to intervene in the Chapter 11 Cases and obtain an order unsealing all sealed and redacted documents filed with the Court, which focused specifically on documents related to the Privilege Motions.  *See Motion to Intervene and Unseal Judicial Records by Dow Jones & Company, Inc., Boston Globe Media Partners, LLC, and Reuters News & Media, Inc.*, dated November 23, 2020 [ECF No. 2022] (the "Unsealing Motion").  Prior to the Compensation Period, Akin Gump professionals negotiated with counsel to the Debtors, the Sacklers, the Non-Consenting States, the IACs and the Media Intervenors and agreed to a largely consensual resolution of the Unsealing Motion that provided a procedure for reviewing and unredacting the briefing and exhibits to the Privilege Motions to the extent possible in an efficient and timely manner.  During the Compensation Period, Akin Gump professionals continued to engaged in a meet and confer process to resolve disputes regarding redactions proposed by counsel to the Debtors, the Sacklers and the IACs, which resulted in modifications to the initial proposed redactions that allowed more material to appear on the public docket.  As a result of these efforts both prior to and during the Compensation Period, less redacted or unredacted versions of most of the materials pertaining to the Privilege Motions have been filed on the public docket.[39]

---

[39] *See Stipulation and Agreed Order Regarding Media Intervenors' Motion to Unseal Materials Filed in Connection With UCC Privileges Motions*, dated December 15, 2020 [ECF No. 2140]; *Official Committee of Unsecured Creditors' Notice of Filing of Seventh Set of Partially Redacted Exhibits to the Declaration of Arik Preis Dated November 18, 2020 [ECF No. 2015]*, dated March 3, 2021 [ECF No. 2441]; *Official Committee of Unsecured Creditors' Notice of Filing of Fifth Set of Partially Redacted Exhibits to the Declaration of Mitchell Hurley Dated September 29, 2020 [ECF No. 1754]*, dated March 3, 2021 [ECF No. 2442]; *Official Committee of Unsecured Creditors' Notice of Filing of Sixth Set of Partially Redacted Exhibits to the Declaration of Mitchell Hurley Dated September 29, 2020 [ECF No.*

## I.    Insurance Issues (Task Code 14)

| Total Hours | Fees |
|:---:|:---:|
| 233.1 | $257,843.00 |

64.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the Committee's ongoing investigation into the scope, value and limitations of the Debtors' various insurance policies.  In particular, Akin Gump professionals continued performing comprehensive analyses regarding the potential availability of insurance coverage for opioid-related claims against the Debtors, including under the Debtors' directors and officers, general liability and products liability insurance policies.  In connection with the foregoing, Akin Gump professionals reviewed thousands of pages of insurance-related documents produced by the Debtors and other parties in interest.

65.    This category also includes time spent by Akin Gump professionals during the Compensation Period in connection with the adversary proceeding commenced by the Debtors, the Ad Hoc Committee and the Committee on January 29, 2021, captioned *Purdue Pharma L.P. v. AIG Specialty Insurance Company (f/k/a American International Specialty Lines Insurance Company)*, Adv. Pro. No. 21-07005 (Bankr. S.D.N.Y. 2021) (the "Insurance Adversary Proceeding").  In particular, Akin Gump professionals analyzed the various motions filed by certain insurers in the Insurance Adversary Proceeding, including motions (i) to dismiss for lack of personal jurisdiction, (ii) to stay claims against insurers in favor of arbitration and (iii) for a more definite statement, as well as the related memoranda of law and replies in support of such motions.  Akin Gump professionals conducted research related to various issues arising in connection with these motions and worked with the Committee's other professionals and counsel

---

*1754]*, dated March 23, 2021 [ECF No. 2553]; *Official Committee of Unsecured Creditors' Notice of Filing of Eighth Set of Partially Redacted Exhibits to the Declaration of Arik Preis Dated November 18, 2020 [ECF No. 2015]*, dated March 23, 2021 [ECF No. 2554].

to the Debtors and the Ad Hoc Committee to prepare the briefing in response to such motions.

Akin Gump professionals also coordinated closely with the advisors to the Debtors and the Ad

Hoc Committee to analyze and refine the parties' strategy in connection with the Insurance

Adversary Proceeding, including participating in settlement negotiations with the Debtors' various

insurers, and provided the Committee with updates and analyses of such developments.

## L.    Adversary Proceedings (Task Code 17)

| Total Hours | Fees |
|:---:|:---:|
| 31.3 | $32,511.50 |

66.    This category includes time spent by Akin Gump professionals in connection with

the adversary proceeding commenced by the Debtors on September 18, 2019, captioned *Purdue

Pharma L.P. v. Commonwealth of Massachusetts*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. 2019)

and matters relating to the *Order Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a

Preliminary Injunction, dated October 11, 2019* [Adv. Pro. No. 19-08289, ECF No. 82] (as

amended, the "Preliminary Injunction"), which stayed all litigation against the Debtors, the

Sacklers and certain related parties for an initial period of 180 days and was subsequently extended

on multiple occasions, including an extension granted on October 30, 2020, which extended the

Preliminary Injunction to March 1, 2021. *See Fourteenth Amended Order Pursuant to 11 U.S.C.

§ 105(a) Granting Motion for a Preliminary Injunction* [Adv. Pro. No. 19-08289, ECF No. 214].

At the start of the Compensation Period, the Debtors raised with the Committee and certain other

key creditor constituencies the prospect of a further, limited extension of the Preliminary

Injunction to allow for, among other things, continued discussions regarding the proposed

settlement agreement with the Sackler family and certain related entities (the "Shareholder

Settlement Agreement"). Accordingly, Akin Gump professionals analyzed and communicated

with the Committee and the advisors to the Debtors and key creditor constituencies regarding

various considerations related to the Chapter 11 Cases to determine whether and to what extent such an extension was warranted. As a result, and particularly in light of progress being made in negotiations with the Sacklers, the Committee determined to support a limited extension of the Preliminary Injunction through March 24, 2021, which the Court granted on March 1, 2021. *See Fifteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Adv. Pro. No. 19-08289, ECF No. 282].

67.    Thereafter, during the Compensation Period, the Debtors sought three additional, limited extensions of the Preliminary Injunction. Akin Gump professionals discussed the basis for each such extension with the Committee, the Debtors and key creditor constituencies, and reviewed and analyzed the various objections filed in connection with the proposed extensions. *See, e.g., Fourth Restatement of Limited Objection and Reservation of Rights of Tennessee Public Officials in Response to Debtors' Motion to Continue to Extend the Preliminary Injunction for Richard Sackler*, dated March 19, 2021 [Adv. Pro. No. 19-08289, ECF No. 231]; *Limited Objection of the Ad Hoc Committee on Accountability to Debtors' Motion to Extend the Preliminary Injunction*, dated March 19, 2021 [Adv. Pro. No. 19-08289, ECF No. 232]; *Continuing Objection and Voluntary Commitment in Response to Purdue's Motion to Extend the Preliminary Injunction*, dated May 14, 2021 [Adv. Pro. No. 19-08289, ECF No. 262]. Following such discussions and analysis, the Committee ultimately determined to support these extensions to enable further progress in negotiations with the Sackler family regarding the Shareholder Settlement Agreement and Plan. *See, e.g., Eighteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated May 24, 2021 [Adv. Pro. No. 19-08289, ECF No. 264].

**M.    Tax Issues (Task Code 18)**

| Total Hours | Fees |
|---|---|
| 351.8 | $408,809.00 |

68.      This category includes time spent by Akin Gump professionals reviewing and analyzing various tax issues affecting unsecured creditors.  Among other things, Akin Gump tax professionals devoted significant effort during the Compensation Period to: (i) ongoing diligence regarding prior U.S. federal and state tax returns (including such documents as provided by non-Debtors), distributions, tax distributions and withholdings; (ii) participating in discussions related to, and evaluating, potential tax consequences of distributions to the Debtors' direct and indirect shareholders; (iii) researching, analyzing and advising on potential tax consequences for the Debtors, IACs, other affiliated entities and various creditors; and (iv) researching and analyzing potential tax consequences of certain prior transactions and related tax filings and reporting by the Debtors or their direct and indirect owners.

69.      The foregoing tasks required review and analysis of significant tax diligence related to the IACs, the Debtors and other affiliated entities.  In light of the unusual structure of many of the Sacklers' assets and holdings and the wide scope and variety of prepetition distributions made by the Debtors, Akin Gump professionals were required to spend significant time conducting legal research and analysis concerning these and other complex tax-related issues, and communicated regularly with the Committee's other professionals and with the advisors to the Debtors and other interested parties regarding such issues.  This category also includes time spent by Akin Gump professionals analyzing discovery materials related to taxes, identifying missing information and priority requests and assisting with, drafting and revising correspondence and information requests related to tax-related issues.

70.      Finally, Akin Gump tax professionals spent significant time during the Compensation Period reviewing, analyzing and communicating with the advisors to the Debtors, the Ad Hoc Committee, the Sacklers and the IACs regarding tax issues arising in connection with

proposed structures for implementing the Plan, the Shareholder Settlement Agreement and related documents. Among other things, Akin Gump tax professionals analyzed and commented on the various tax-related provisions of the Plan—including tax aspects of the Master Disbursement Trust as defined in the Plan) and the various other trusts established under the Plan—the *Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors*, dated June 3, 2021 [ECF No. 2983] (the "Disclosure Statement"), the Shareholder Settlement Agreement and related documents, including credit support agreements with members of the Sackler family and related entities.

**N.      Interaction/Review of Other Opioid Companies and Cases (Task Code 20)**

| Total Hours | Fees |
|---|---|
| 132.5 | $92,560.00 |

71.    This category includes time spent by Akin Gump professionals reviewing and analyzing developments in various opioid litigations pending throughout the country, including reports in news articles and academic publications, to assess the potential impact of such matters on the Chapter 11 Cases. Given the wide-ranging nature of the opioid crisis and the numerous repeat players involved in litigation and/or settlement discussions with multiple defendants in numerous jurisdictions and throughout the country, tracking and ensuring that the Committee remains informed with respect to significant developments has been critical to the Committee's advisors' ability to assess issues of vital importance to these cases, including assessment of the various litigation claims against the Debtors and issues related to intercreditor allocation disputes and potential settlement and plan structures.

**O.      Disclosure Statement/Solicitation/Plan/Confirmation (Task Code 22)**

| Total Hours | Fees |
|---|---|
| 2,700.7 | $3,222,419.50 |

72.     This category includes significant time spent by Akin Gump professionals and paraprofessionals researching, analyzing and performing diligence in respect of numerous complex issues relating to the Plan, Disclosure Statement and related documents, including various iterations of the Plan Supplement Documents.  Specifically, during the Compensation Period, Akin Gump professionals: (i) reviewed and commented on various drafts of the Plan, the Disclosure Statement, the Plan Supplement Documents and the solicitation materials to be included in creditor solicitation packages (the "Solicitation Materials") and worked with the advisors to the Debtors and various creditor constituencies to address issues arising in connection therewith; (ii) conducted research regarding various issues related to the Plan and Disclosure Statement; (iii) reviewed each of the numerous objections to the Disclosure Statement filed by various parties and prepared summaries of the same for the Committee; (iv) reviewed, commented on and worked with the Debtors and counsel to various creditor constituencies regarding the Solicitation Materials and related procedures, including the Solicitation Directive (as defined in the Disclosure Statement); (v) drafted a letter (the "Plan Support Letter") expressing the Committee's position regarding the Plan, which was ultimately disseminated to all creditors as part of the Solicitation Materials; and (vi) analyzed and discussed critical issues arising in connection with the forgoing with the Committee's other advisors, the Committee and the advisors to the Debtors and other parties in interest, including preparing presentations and analyses for the Committee regarding the same.

73.     Specifically, during the Compensation Period, Akin Gump professionals devoted significant time and attention to analyzing and negotiating the documentation that will bind certain members of the Sackler family and certain affiliated trusts and entities to make the cash payments that will fund the various settlements with public and private creditors embodied in the Plan.  Akin Gump also assumed responsibility for coordinating numerous matters among various creditor

consistencies and professionals in connection with these negotiations, including local counsel in the jurisdictions relevant to certain key trusts party to the Shareholder Settlement Agreement.

74.     In addition, Akin Gump professionals continued to perform due diligence regarding certain Sackler entities and worked with the Sackler families' counsel and various financial advisors to understand the assets held by the various entities, trusts and individuals proposed as obligors under the Shareholder Settlement Agreement and the particular assets proposed as collateral.  Akin Gump professionals, in conjunction with the Committee's other advisors, also continued to conduct diligence concerning the Sackler family trusts, including analyzing discovery materials related to such trusts, and continued to review trust organizational and financial documents to identify the nature and location of assets held in the trusts.  Throughout the Compensation Period, Akin Gump professionals prepared summaries, analyses and presentation materials regarding these efforts and responded to questions from members of the Committee regarding these matters.

75.     Moreover, Akin Gump professionals and the Committee's other advisors spent significant time during the Compensation Period analyzing and discussing with the Committee various issues concerning the rights and treatment of the various classes of creditors under the Plan, including the rights of the various creditor trusts created thereunder.  Akin Gump professionals communicated extensively with the advisors to the Debtors and key creditor constituencies to help resolve issues arising in connection with documenting the settlement agreements reached in Phase I Mediation and ensuring that the Plan and related documents included appropriate protections for the rights of unsecured creditors and the beneficiaries of the creditor trusts.

76.     Finally, during the Compensation Period, Akin Gump professionals expended significant time drafting and revising the Plan Support Letter.  When Akin Gump professionals began preparing the Plan Support Letter, the Committee hoped and anticipated that it would be able to support the Plan by the time of the hearing on the Disclosure Statement, but—as noted in the initial version of the Disclosure Statement filed on March 15—was unable to do so at that time due to several outstanding unresolved issues.  These issues remained unresolved as of the May 24 status conference regarding the Disclosure Statement, and thus Akin Gump professionals prepared and filed a statement informing the Court and parties in interest of the Committee's position regarding the Plan and Disclosure Statement at such time.  *See Statement of the Official Committee of Unsecured Creditors in Respect of Disclosure Statement and Solicitation Procedures Motion for Third Amended Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors*, dated May 24, 2021 [ECF No. 2911].  Because such issues were not resolved until shortly prior to the June 3 hearing at which the Disclosure Statement was finally approved, Akin Gump professionals spent significant time updating and revising the Plan Support Letter to reflect the numerous developments that impacted the Committee's decision regarding whether it would support the Plan, as well as comments from Committee members, the Debtors and the Court.  As discussed on the record at the June 3, 2021 hearing, the parties ultimately were able to reach agreement on such issues, which enabled the Committee to support the Plan and resulted in a largely uncontested Disclosure Statement hearing.  Accordingly, the Committee was able to finalize the Plan Support Letter and recommend that creditors vote in favor of the Plan.

## P.    Business Operations (Task Code 31)

| Total Hours | Fees |
| --- | --- |
| 10.2 | $13,735.00 |

77.     This category includes time spent by Akin Gump professionals in connection with the Court-appointed monitor (the "Monitor") overseeing the Debtors' compliance with their obligations under the voluntary self-injunction. *See Seventh Amended Order Pursuant to 11 U.S.C. 105(a) Granting Motion for a Preliminary Injunction*, dated March 4, 2020 [Adv. Pro. No. 19-08289, ECF No. 143] at 7 and App'x 1.    During the Compensation Period, Akin Gump professionals reviewed the findings detailed in the *Fourth Monitor Report*, dated February 3, 2020 [ECF No. 2350] (the "Monitor's Report") and discussed the Monitor's Report in detail with the Committee.    Further, prior to the Compensation Period, President Biden nominated the Monitor, (then) former United States Secretary of Agriculture Thomas Vilsack, to serve again as the United States Secretary of Agriculture, requiring his resignation as the Monitor.    Thus, during the Compensation Period, Akin Gump professionals, in coordination with the Committee and other key creditor constituencies, began discussions regarding Secretary Vilsack's replacement.    Akin Gump professionals participated in interviews with candidates for the Monitor position and communicated with the Debtors and key creditor constituencies regarding an appropriate replacement.    Following such interviews and discussions, the parties agreed to appoint Stephen C. Bullock as Monitor.

78.     Finally, this category includes time spent by Akin Gump professionals in connection with the Debtors' obligations, pursuant to certain regulations promulgated by the Food and Drug Administration (the "FDA"), to report serious and unexpected adverse events related to their products.    Prior to the Compensation Period, Akin Gump professionals became aware that certain personal injury claimants that filed proofs of claim in the Chapter 11 Cases were subsequently contacted by the Debtors as a result of the Debtors' obligations under FDA regulations to investigate adverse events and report additional information related to such events

to the FDA.  This resulted in confusion among personal injury claimants, including numerous claimants that are not represented by counsel, regarding whether such outreach related to their claims in the Chapter 11 Cases.

79.    To address this issue, Akin Gump professionals worked with the Debtors and their regulatory counsel to prepare letters to represented and unpresented claimants which explained that the Debtors' adverse event reporting communications did not pertain to claims filed in the Chapter 11 Cases and that no further action from claimants in response to such letters was required. Akin Gump professionals also worked with the Debtors' regulatory counsel to request a waiver from the FDA that would excuse the Debtors from their obligation to contact unrepresented claimants regarding adverse events during the pendency of the Chapter 11 Cases.  During the Compensation Period, Akin Gump professionals reviewed and responded to correspondence from claimants regarding this issue and followed up with the Debtors' advisors regarding the waiver request, which the FDA granted near the end of the Compensation Period.

## Q.    Intellectual Property (Task Code 32)

| Total Hours | Fees |
|:---:|:---:|
| 58.9 | $69,596.50 |

80.    This task code includes time spent by Akin Gump professionals and paraprofessionals in connection with analyzing the Debtors' patents and patent applications, intellectual property license and ancillary agreements, intercompany intellectual property arrangements and related intellectual property issues, district court litigation and parallel proceedings related to the Debtors' intellectual property and supporting work streams in other categories that involved the Debtors' intellectual property.  Specifically, during the Compensation Period, Akin Gump professionals performed diligence and investigated numerous intellectual property issues, including, among other things:  (i) issues related to patent history, prosecution and

expiration; (ii) product exclusivity and expiration of patent coverage for the Debtors' products; (iii) ongoing, former and potential patent litigation (in particular ongoing patent infringement litigation and proceedings before the Patent Trial and Appeal Board of the United States Patent and Trademark Office); and (iv) patent licenses and ancillary agreements covering the Debtors' past and current product offerings.  As the Plan contemplates ongoing operations based on future expected revenues derived from current and pipeline products, the Committee's intellectual property analysis has encompassed ongoing discussions with the Debtors and their advisors regarding the Debtors' businesses and operations regarding those products, analyses of the proposed value of the Debtors' and the IACs' patents and the Debtors' patent portfolio.  In addition, Akin Gump professionals continued their ongoing analysis of the Debtors' license agreements with the IACs, as well as the IACs' intellectual property and licenses, in connection with the Committee's evaluation of potential estate causes of action.

R.    **Sackler Rule 2004 Discovery (Task Code 33)**

| Total Hours | Fees |
|:---:|:---:|
| 73.9 | $78,907.00 |

81.    This category includes time spent by Akin Gump professionals obtaining compulsory discovery from certain parties pursuant to certain discovery orders under Bankruptcy Rule 2004.  *See Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Third Parties*, dated March 27, 2020 [ECF No. 992]; *Order Pursuant to Federal Rules of Bankruptcy 2004 and 9016 Authorizing Examinations of and Document Production by Third Parties*, dated July 6, 2020 [ECF No. 1340]; *Order Pursuant to Federal Rules of Bankruptcy 2004 and 9016 Authorizing Examinations of Third Parties*, dated August 26, 2020 [ECF No. 1622]; *Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Certain Former Debtor Executives, Separately Represented Debtor*

*Personnel, and Norton Rose Fulbright Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006*, dated October 8, 2020 [ECF No. 1788] (collectively, the "Rule 2004 Orders"). As detailed above, prior to the Compensation Period, the Committee determined that it was necessary for its investigation of potential estate causes of action against the Sacklers and related entities to seek compulsory discovery from certain parties, and thus sought and obtained authorization through the Rule 2004 Orders to seek such discovery.

82. During the Compensation Period, Akin Gump professionals spent time meeting and conferring with counsel regarding document requests, drafting and responding to correspondence concerning such document requests and negotiating and drafting stipulations and related schedules governing the relevant production of documents and privilege logs, including negotiating with the Sacklers regarding how such motions and evidence would be presented if ultimately set for hearing. Because the Debtors, the Sacklers and the IACs and related entities continued to produce documents and privilege logs to the Committee during the Compensation Period, Akin Gump negotiated a series of stipulations with such parties regarding the use of additional evidence and exhibits in connection with a potential hearing on the Privilege Motions. *See, e.g., Notice of Filing of Stipulation and Agreed Order Regarding Exhibits for Use at the Hearing on Privilege Motions*, dated February 19, 2021 [ECF No. 2402]; *Notice of Filing of Amended Stipulation and Agreed Order Regarding Exhibits for Use at the Hearing on Privilege Motions*, dated March 19, 2021 [ECF No. 2537]; *Notice of Filing of Second Amended Stipulation and Agreed Order Regarding Exhibits for Use at the Hearing on Privilege Motions*, dated April 19, 2021 [ECF No. 2664]; *Notice of Filing of Third Amended Stipulation and Agreed Order Regarding Exhibits for Use at the Hearing on Privilege Motions*, dated May 12, 2021 [ECF No. 2851].

## ACTUAL AND NECESSARY DISBURSEMENTS

83.     Akin Gump seeks allowance of reimbursement in the amount of $478,594.23 for

expenses incurred during the Compensation Period in the course of providing professional services

to the Committee.  Akin Gump's disbursement policies pass through all out of pocket expenses at

actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example,

as it relates to computerized research, Akin Gump believes that it does not make a profit on that

service as a whole although the cost of any particular search is difficult to ascertain.   Other

reimbursable expenses (whether the service is performed by Akin Gump in-house or through a

third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries,

court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

84.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>> (A) the time spent on such services;
>> (B) the rates charged for such services;
>> (C) whether the services were necessary to the administration of,
>> or beneficial at the time at which the service was rendered
>> toward the completion of, a case under this title;
>> (D) whether the services were performed within a reasonable
>> amount of time commensurate with the complexity,
>> importance, and nature of the problem, issue, or task
>> addressed; and
>> (E) with respect to a professional person, whether the person is
>> board certified or otherwise has demonstrated skill and
>> experience in the bankruptcy field; and

(F) whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

85.    The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotation marks omitted).

86.    In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)). The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991). The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298–99 (5th Cir. 1977)

have been adopted by most courts.[40]  *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y.

1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212–

13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir.

2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King

ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered

in determining a reasonable allowance of compensation").

87.    Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

a.    <u>Time and Labor Required</u>.  Akin Gump billed a total of 7,238.1 hours of professional services and 1,782.1 hours of paraprofessional and other non-legal services during the Compensation Period.  As evidenced by this Application, Akin Gump professionals and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Compensation Period.  This is especially clear when considering the nature and complexity of the issues that arose in the Chapter 11 Cases during the Compensation Period.  In particular, the Compensation Period involved many material matters and issues that required a favorable resolution for the Debtors' estates and unsecured creditors, including, among other things, the MSGE Group Fee Motion, the Plan, the Plan Supplement Documents, the Disclosure Statement, the Shareholder Settlement Agreement, Phase II Mediation and various matters related to discovery of the Debtors, the Sacklers, the IACs and other parties in connection with the Committee's analysis of estate causes of action and the Settlement Framework.  Akin Gump's representation of the Committee has required it to balance the need to provide quality services with the need to act quickly and represent the Committee in an effective, efficient and timely manner.  Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases, the significant—and often urgent—legal and business issues raised and the numerous pleadings filed in the Chapter 11 Cases.

b.    <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, corporate, tax, trusts and estates, insurance and other issues.  As further described herein, Akin Gump's teams of skilled practitioners

---

[40] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson*, with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

assisted the Committee in analyzing, among other things, novel and/or difficult questions in connection with, among other things, the Plan, the Plan Supplement Documents, the Disclosure Statement, the Shareholder Settlement Agreement, the Solicitation Directive, the MSGE Group Fee Motion, Phase II Mediation, the Omnibus Claims Objection Procedures Motion, the Plan Support Letter, potential estate claims, the Insurance Adversary Proceeding and various tax-related issues.

c.  <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of complex issues has contributed to the administration of the Chapter 11 Cases and benefited the Debtors and the Committee.  Due to the nature and complexity of the legal issues presented by the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, tax, labor and corporate transaction matters.  Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d.  <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>.  Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e.  <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters.  Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required.  The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here.  Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.  <u>Whether the Fee Is Fixed or Contingent</u>.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained.

The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Committee in the Chapter 11 Cases.

g.   Time Limitations Imposed by the Client or Other Circumstances.  As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines.  For example, Akin Gump and the Committee's other advisors were faced with limited time in which to formulate an approach to numerous key case issues, including, among others, various discovery matters and the Privilege Motions, the Plan, the Plan Supplement Documents, the Disclosure Statement and the Shareholder Settlement Agreement, while simultaneously pursuing consensual modifications to or resolutions of such matters.  The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work permitted the Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.   Amount Involved and Results Obtained.   Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in preserving potential sources of recovery for the benefit of unsecured creditors.   In particular, Akin Gump's efforts in connection with, among other things, the Class Claim Motions and the Bonuses Motion have been instrumental in preserving value for the benefit of all creditor constituencies.  Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.   Experience, Reputation and Ability of Attorneys.   Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.  During the Compensation Period, Akin Gump solicited the skill and expertise of its professionals and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.  Akin Gump professionals have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Sears Holdings Corp., In re Insys Therapeutics, Inc., In re PG&E Corp., In re Nine West Holdings, Inc., In re iHeartMedia, Inc., In re Cumulus Media Inc., In re Avaya Inc., In re Chassix Holdings, Inc., In re Energy Future Holdings Corp., In re Dynegy Holdings, LLC, In re Nortel Networks Inc., In re Lightsquared Inc., In re Longview Power, LLC, In re Eastman Kodak Company, In re Cal Dive International, Inc., In re Washington Mutual Inc., In re NII Holdings, Inc., In re MPM Silicones, LLC, In re Overseas Shipholding Group, Inc., In re QCE Finance LLC, In re Residential Capital, LLC, In re Solutia,*

48

*Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp.* and many others.  Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.   In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.   <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

k.   <u>Nature and Length of Professional Relationship</u>.   Akin Gump has been rendering professional services to the Committee since it was selected as counsel to the Committee on September 26, 2019.

88.    For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Committee and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

89.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

## **ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES**

90.    The following is provided in response to the request for additional information set forth in ¶ C.5 of the U.S. Trustee Guidelines.

**Question**:     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Response:     No.

**Question**:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

**Question**:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:     No.

**Question**:     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

Response:     Yes.  During the Compensation Period, 130.0 hours and $107,798.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:     See above.

**Question**:     If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:     Akin Gump disclosed to the Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2020 in the Akin Retention Application, to which the Committee agreed.  On December 17, 2020, Akin Gump filed a notice disclosing to the Committee and other parties in interest that its hourly rates would be adjusted, in accordance with its customary practice, effective as of January 1, 2021. *See Fourth Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P.,* et al*. to Retain and Employ Akin Gump Strauss Hauer &*

*Feld LLP,* Nunc Pro Tunc*, to September 26, 2019*, dated December 17, 2020 [ECF No. 2151].

## **RESERVATION OF RIGHTS**

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

[*Remainder of Page Left Blank Intentionally*]

## **CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $8,389,582.50 and expense reimbursement in the amount of $478,594.23; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
July 15, 2021

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Arik Preis*
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com
elisovicz@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, L.P.,* et al.

## **EXHIBIT A**

**CERTIFICATION OF ARIK PREIS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE FOURTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.*, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF FEBRUARY 1, 2021 THROUGH AND INCLUDING MAY 31, 2021**

I, Arik Preis, hereby certify that:

1.       I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of the above captioned Debtors.  Akin Gump is counsel to Official Committee of Unsecured Creditors of Purdue Pharma, L.P. and its affiliated debtors and debtors in possession (collectively, the "Debtors").

2.       In accordance with the Fee Guidelines, this certification is made with respect to the Application for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.       In respect of section B.1 of the Local Guidelines, I certify that:

    a.       I have read the Application;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

b.    to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

c.    the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

d.    in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Committee are each being provided with a copy of the Application.

Dated: New York, New York                By: */s/  Arik Preis*_____
        July 15, 2021                            Arik Preis

## <u>EXHIBIT B</u>

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by Non-FR Timekeepers for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,091.00 | $1,381.04 |
| Senior Counsel & Counsel | $862.35 | $1,036.34 |
| Associate | $636.86 | $761.03 |
| Paraprofessional | $244.44 | $360.81 |
| Other | $539.24 | $418.68 |
| **All Timekeepers Aggregated** | **$822.89** | **$930.09** |

---

[1] Consistent with U.S. Trustee Guidelines, this column discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (*i.e.*, New York and Washington, D.C.), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group. This data is based on information from a rolling 12-month period ending May 31, 2021.

**<u>EXHIBIT C</u>**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Partners | Department | Year of Admission | Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | 2011 | $1,265.00 | 566.9 | $717,128.50 |
| Cono Carrano | Intellectual Property | 1994 | $1,235.00 | 6.7 | $8,274.50 |
| Olivier De Moor | Tax | 2009 | $1,235.00 | 48.4 | $59,774.00 |
| Ira Dizengoff | Financial Restructuring | 1992 | $1,655.00 | 19.4 | $32,107.00 |
| Shawn Hanson | Litigation | 1983 | $1,195.00 | 43.3 | $51,743.50 |
| Mitchell Hurley | Litigation | 1997 | $1,655.00 | 237.2 | $392,566.00 |
| Howard Jacobson | Tax | 1979 | $1,310.00 | 141.9 | $185,889.00 |
| Stephen Kho | International Trade | 1998 | $1,330.00 | 12.1 | $16,093.00 |
| Jeffrey Kochian | Corporate | 2000 | $1,450.00 | 39.2 | $56,840.00 |
| Eli Miller | Corporate | 2009 | $1,135.00 | 449.4 | $510,069.00 |
| Arik Preis | Financial Restructuring | 2001 | $1,655.00 | 578.4 | $957,252.00 |
| Corey Roush | Litigation | 2000 | $1,195.00 | 6.3 | $7,528.50 |
| Elizabeth Scott | Litigation | 2007 | $1,135.00 | 93.4 | $106,009.00 |
| Joseph Sorkin | Litigation | 2001 | $1,425.00 | 77.6 | $110,580.00 |
| David Vondle | Intellectual Property | 2002 | $1,175.00 | 89.9 | $105,632.50 |
| Scott Welkis | Corporate | 1997 | $1,450.00 | 240.3 | $348,435.00 |
| **Partner Total** | | | | **2,677.7** | **$3,697,999.00** |
| **Senior Counsel & Counsel** | **Department** | **Year of Admission** | **Rate** | **Total Hours** | **Total Compensation** |
| Melissa Gibson | Intellectual Property | 2010 | $1,005.00 | 175.4 | $176,277.00 |
| Elizabeth Harris | Tax | 1987 | $1,125.00 | 186.9 | $210,262.50 |
| Matthew Hartman | Intellectual Property | 2010 | $1,000.00 | 77.9 | $77,900.00 |
| Kristi Kirksey | Tax | 2014 | $1,045.00 | 70.0 | $73,150.00 |
| Edan Lisovicz | Financial Restructuring | 2014 | $1,045.00 | 464.7 | $485,611.50 |
| Matthew Lloyd | Litigation | 2012 | $980.00 | 27.9 | $27,342.00 |
| Anthony Loring | Financial Restructuring | 2017 | $1,010.00 | 85.0 | $85,850.00 |
| Clayton Matheson | Litigation | 2010 | $1,000.00 | 24.6 | $24,600.00 |
| Brennan Meier | Litigation | 2012 | $980.00 | 68.1 | $66,738.00 |
| Erin Parlar | Litigation | 2015 | $1,005.00 | 68.4 | $68,742.00 |
| Nicholas Petree | Litigation | 2012 | $980.00 | 97.6 | $95,648.00 |
| Katherine Porter | Litigation | 2011 | $1,145.00 | 144.1 | $164,994.50 |

| | | | | | |
|---|---|---|---|---|---|
| Jillie Richards | Litigation | 2007 | $935.00 | 17.8 | $16,643.00 |
| Peretz Riesenberg | Tax | 2016 | $985.00 | 14.7 | $14,479.50 |
| J. Matthew Schmitten | Litigation | 2020 | $935.00 | 9.3 | $8,695.50 |
| M. Todd Tuten | Public Law and Policy | N/A | $1,095.00 | 7.8 | $8,541.00 |
| Jonathan Underwood | Intellectual Property | 2014 | $935.00 | 63.4 | $59,279.00 |
| Molly Whitman | Litigation | 2013 | $960.00 | 24.7 | $23,712.00 |
| Dennis Windscheffel | Litigation | 2004 | $1,020.00 | 251.9 | $256,938.00 |
| **Senior Counsel & Counsel Total** | | | | **2,019.0** | **$2,092,830.00** |

| Associates | Department | Year of Admission | Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Sudhana Bajracharya | Health | 2018 | $785.00 | 113.2 | $88,862.00 |
| Brooks Barker | Financial Restructuring | 2018 | $895.00 | 234.1 | $209,519.50 |
| Megi Belegu | Litigation | 2020 | $695.00 | 297.2 | $206,554.00 |
| Marc Caplan | Tax | 2019 | $785.00 | 23.2 | $18,212.00 |
| Alan Carrillo | Financial Restructuring | 2018 | $735.00 | 5.1 | $3,748.50 |
| Jess Coleman | Financial Restructuring | 2020 | $735.00 | 104.5 | $76,807.50 |
| Sanzana Faroque | Corporate | 2020 | $695.00 | 41.4 | $28,773.00 |
| Madison Gardiner | Financial Restructuring | 2020 | $735.00 | 58.3 | $42,850.50 |
| Lisa Garrett | Corporate | 2017 | $785.00 | 46.2 | $36,267.00 |
| Patrick Glackin | Litigation | 2019 | $770.00 | 29.6 | $22,792.00 |
| Nina Goepfert | Litigation | 2018 | $855.00 | 9.0 | $7,695.00 |
| Tania Iakovenko-Grässer | International Trade | 2019 | $650.00 | 112.4 | $73,060.00 |
| Srishti Kalro | Litigation | 2012 | $940.00 | 69.6 | $65,424.00 |
| Rachel Kurzweil | Health | 2015 | $870.00 | 10.3 | $8,961.00 |
| Joseph Lumley | Corporate | 2020 | $855.00 | 25.8 | $22,059.00 |
| McKenzie Miller | Litigation | 2020 | $625.00 | 222.4 | $139,000.00 |
| Mouna Moussaoui | Litigation | 2018 | $770.00 | 5.7 | $4,389.00 |
| Oluwaremilekun Ojurongbe | Litigation | 2020 | $625.00 | 18.4 | $11,500.00 |
| Jennifer Poon | Litigation | 2016 | $940.00 | 44.3 | $41,642.00 |
| James Salwen | Financial Restructuring | 2017 | $895.00 | 511.4 | $457,703.00 |

| Anthony Sierra | Intellectual Property | 2019 | $625.00 | 144.1 | $90,062.50 |
|---|---|---|---|---|---|
| Joshua Tate | Litigation | 2019 | $625.00 | 20.4 | $12,750.00 |
| Izabelle Tully | Litigation | 2020 | $695.00 | 215.3 | $149,633.50 |
| Grace Zhu | Financial Restructuring | 2021 | $650.00 | 187.3 | $121,745.00 |
| **Associate Total** | | | | **2,549.2** | **$1,940,010.00** |

| Staff Attorneys and Paraprofessionals | Department | Year of Admission | Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Anna Anisimova | Law Clerk, Litigation | N/A | $360.00 | 111.4 | $40,104.00 |
| Frank Castro | Paralegal, Litigation | N/A | $370.00 | 184.3 | $68,191.00 |
| Daniel Chau | EDiscovery | N/A | $390.00 | 142.1 | $55,419.00 |
| Suzanne Csizmadia | Paralegal, Intellectual Property | N/A | $350.00 | 117.0 | $40,950.00 |
| Sallie Henry | Paralegal, Corporate | N/A | $370.00 | 61.7 | $22,829.00 |
| Kareen Ejoh | Paralegal, Litigation | N/A | $300.00 | 81.5 | $24,450.00 |
| Rachael Fizette | Paralegal, Financial Restructuring | N/A | $245.00 | 12.5 | $3,062.50 |
| Amy Laaraj | Paralegal, Litigation | N/A | $370.00 | 474.6 | $175,602.00 |
| Brenda Kemp | Paralegal, Financial Restructuring | N/A | $390.00 | 10.2 | $3,978.00 |
| Dagmara Krasa-Berstell | Paralegal, Financial Restructuring | N/A | $440.00 | 232.6 | $102,344.00 |
| Jennifer Langmack | Paralegal, Litigation | N/A | $370.00 | 16.7 | $6,179.00 |
| Donna Moye | Practice Attorney, Litigation | 2001 | $545.00 | 56.4 | $30,738.00 |
| Kelsey Robins | Paralegal, Financial Restructuring | N/A | $245.00 | 7.6 | $1,862.00 |
| Gisselle Singleton | EDiscovery | N/A | $390.00 | 64.1 | $24,999.00 |
| Risa Slavin | Paralegal, Litigation | N/A | $410.00 | 22.0 | $9,020.00 |

| | | | | | |
|---|---|---|---|---|---|
| Camille Schoonmaker | Paralegal, Litigation | N/A | $230.00 | 109.1 | $25,093.00 |
| Bennett Walls | Paralegal, Litigation | N/A | $230.00 | 15.7 | $3,611.00 |
| Elizabeth Watson | Paralegal, Corporate | N/A | $260.00 | 16.9 | $4,394.00 |
| Karen Woodhouse | Practice Attorney, Litigation | 2003 | $420.00 | 37.9 | $15,918.00 |
| **Staff Attorneys and Paraprofessional Total** | | | | **1,774.3** | **$658,743.50** |
| **Total Hours / Fees Requested** | | | | **9,020.2** | **$8,389,582.50** |

## **<u>EXHIBIT D</u>**

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 75–125 | $48,750–$81,250 | 91 | $56,008.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 300–400 | $255,000–$340,000 | 266.5 | $224,518.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 75–150 | $71,250–$142,500 | 117.2 | $111,503.00 |
| 6 | Retention of Professionals | 150–250 | $75,000–$125,000 | 182.2 | $85,610.00 |
| 7 | Creditors Committee Meetings/Meetings (including 341 Meetings) | 400–600 | $500,000–$750,000 | 465.5 | $540,104.50 |
| 8 | Hearings and Court Matters/Court Preparation | 150–300 | $187,500–$375,000 | 192.7 | $231,731.50 |
| 12 | General Claims Analysis/Claims Objections | 100–200 | $107,500–$215,000 | 110.2 | $117,806.50 |
| 13 | Analysis of Pre-Petition Transactions | 3,000–5,000 | $2,250,000–$3,750,000 | 3,966.0 | $2,803,143.50 |
| 14 | Insurance Issues | 200–400 | $220,000–$440,000 | 233.1 | $257,843.00 |
| 16 | Automatic Stay Issues | 25–50 | $30,000–$60,000 | 35.2 | $41,360.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 50–100 | $55,000–$110,000 | 31.3 | $32,511.50 |
| 18 | Tax Issues | 300–400 | $360,000–$480,000 | 351.8 | $408,809.00 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 150–250 | $105,000–$175,000 | 132.5 | $92,560.00 |
| 21 | Exclusivity | 5–10 | $3,750–$7,500 | 0.8 | $588.00 |
| 22 | Disclosure Statement/ Solicitation/Plan/Confirmation | 2000–4000 | $2,400,000–$4,800,000 | 2,700.70 | $3,222,419.50 |
| 23 | Asset Dispositions/363 Asset Sales/Bidding Procedures | 0–25 | $0.00–$37,500 | 0.5 | $827.50 |
| 31 | Business Operations | 25–75 | $35,000–$105,000 | 10.2 | $13,735.00 |
| 32 | Intellectual Property | 50–100 | $60,000–$120,000 | 58.9 | $69,596.50 |
| 33 | Sackler Rule 2004 Discovery | 75–150 | $78,750–$157,500 | 73.9 | $78,907.00 |
| **TOTAL** | | **7,130–12,585** | **$6,842,500–$12,271,250** | **9,020.20** | **$8,389,582.50** |

**<u>EXHIBIT E</u>**

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
|---|---:|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $1,463.22 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $4,432.21 |
| Computerized Legal Research - Courtlink- In Contract 50% discount | $3,000.94 |
| Computerized Legal Research - Other | $1,567.00 |
| Courier Service/Messenger Service - Off Site | $206.30 |
| Court Costs | $770.00 |
| Document Retrieval | $179.00 |
| Meals - Overtime | $25.00 |
| Meals (100%) | $20.00 |
| Postage | $15.31 |
| Professional Fees - Legal | $464,015.04 |
| Research | $717.43 |
| Telephone - Long Distance | $1,120.00 |
| Transcripts | $192.00 |
| Travel - Ground Transportation | $583.89 |
| Local Transportation - Overtime | $286.89 |
| **Total Expenses Requested:** | **$478,594.23** |

## **EXHIBIT F**

### **STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 15 | $1,350.00 |
| Senior Counsel and Counsel | 20 | $1,025.00 |
| Associate | 25 | $775.00 |
| Staff Attorneys and Paraprofessionals | 20 | $350.00 |