**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| **Debtors.** | (Jointly Administered) |

**FIFTH INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP FOR COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES AS SPECIAL
COUNSEL TO THE DEBTORS FOR THE PERIOD FROM
FEBRUARY 1, 2021 THROUGH AND INCLUDING MAY 31, 2021**

| *General Information* | |
|---|---|
| Name of Applicant: | Skadden, Arps, Slate, Meagher & Flom LLP |
| Authorized to Provide Services to: | Purdue Pharma L.P., et al. |
| Petition Date: | September 15, 2019 |
| Date of Retention: | November 25, 2019, nunc pro tunc to September 15, 2019 [Docket No. 545], supplemented as of July 27, 2020, nunc pro tunc to March 6, 2020 [Docket No. 1521] |

| *Summary of Fees and Expenses Sought in the Application for the Application Period* | |
|---|---|
| This is a/an: | _ monthly application |
| | x interim application |
| | _ final application |
| Period for Which Compensation and Expense Reimbursement is Sought: | February 1, 2021 through and including May 31, 2021 |

| | |
|---|---|
| Amount of Actual, Reasonable and Necessary Compensation Attributable to the Application Period: | $3,794,615.52[1] |
| Amount of Expense Reimbursement Requested as Actual, Reasonable and Necessary in the Application Period: | $76,225.81 |
| Total Compensation and Expense Reimbursement Attributable to the Application Period: | $3,870,841.33[2] |
| Voluntary Fee Waiver and Expense Reduction in the Application Period: | $858,343.61[3] |
| Compensation Sought in this Application for the Application Period Already Paid Pursuant to the Interim Compensation Procedures but Not Yet Allowed on a Final Basis: | $841,353.02[4] |
| Expenses Sought in this Application for the Application Period Already Paid Pursuant to the Interim Compensation Procedures but Not Yet Allowed on a Final Basis: | $0.00 |
| Total Outstanding Holdback (20% from each of the Monthly Fee Statements) | $758,923.10 |
| U.S. Trustee Settlement Amount (to be deducted from Total Allowed Fees) | $560,916.34 |

---

[1]    This amount represents 100% of fees Skadden billed the Debtors during the Application Period.

[2]    This amount includes payments Skadden has received to date on account of the February 2021 fee statement and the unpaid amounts set forth in the March 2021, April 2021, and May 2021 fee statements. This amount also includes the 20% holdback from each of the monthly fee statements, the allowance and payment of which Skadden is seeking at this time. This amount reflects the amount Skadden is seeking approval of prior to reduction as a result of application of the amount Skadden has agreed to pay pursuant to the settlement with the U.S. Trustee.

[3]    Skadden has voluntarily reduced its fees by $836,511.50 and its expenses by $21,832.11 during the Application Period, which has previously been applied and is reflected in the "Total Compensation and Expense Reimbursement Attributable to the Application Period". Skadden reserves the right to request these amounts.

[4]    This amount includes payments Skadden has received to date on account of the February 2021 fee statement. Skadden has not yet received payment on account of its March 2021, April 2021, and May 2021 fee statements.

2

| *Summary of Fees, Professionals, Rates and Budget for the Application Period* | |
|---|---|
| Blended Rate in this Application for All Attorneys during the Application Period: | $1,222.73 |
| Blended Rate in this Application for All Timekeepers during the Application Period: | $1,112.57 |
| Number of Professionals and Paraprofessionals Included in this Application for the Application Period: | 45 |
| Number of Professionals and Paraprofessionals Billing Fewer than 15 Hours to these Cases during the Application Period: | 15 |
| Increase in Rates: | Skadden applied an increase to its hourly rates as set forth in the *Notice Of Increase In Hourly Rates Of Skadden Professionals* [Docket No. 2527], effective as of January 1, 2021. |

## PRIOR FEE APPLICATIONS OF
## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| DATE FILED | DOCKET NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES AWARDED | EXPENSES AWARDED |
|---|---|---|---|---|---|---|
| 05/14/2020 | 1154 | 9/15/2019 – 1/31/2020 | $3,923,706.10 | $25,670.12 | $3,843,480.20 | $25,670.12[5] |
| 07/15/2020 | 1411 | 02/01/2020 – 5/30/2020 | $5,021,610.48 | $19,770.49 | $4,964,465.33 | $19,770.49[6] |
| 11/13/2020 | 1945 | 06/01/2020 – 9/30/2020 | $7,384,885.33 | $2,974.45 | $7,308,378.38 | $2,974.45[7] |
| 03/17/2021 | 2530 | 10/01/2020 – 1/31/2021 | $5,202,579.37 | $2,436.48 | $5,172,579.37 | $2,436.48[8] |
| **TOTAL** | | | **$21,532,781.28** | **$50,851.54** | **$21,288,903.28** | **$50,851.54[9]** |

---

[5]  Fees and expenses were awarded pursuant to the *Omnibus Order Granting First Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [Docket No. 1159].  As reflected in the *Omnibus Supplemental Order Authorizing and Directing Payment of First Interim Fee Period Holdback Amounts* [Docket No. 1306], Skadden subsequently agreed to a reduction of $80,225.90 in fees, which is reflected in the "Fees Awarded" column.

[6]  Fees and expenses were awarded pursuant to the *Omnibus Order Granting Second Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [Docket No. 1649].

[7]  Fees and expenses were awarded pursuant to the *Omnibus Order Granting Third Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [Docket No. 2144].

[8]  Fees and expenses were awarded pursuant to the *Omnibus Order Granting Fourth Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [Docket No. 2698].

[9]  All fees and expenses awarded pursuant to interim fee orders to date have been paid.

**PRIOR FEE STATEMENTS OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOR THE APPLICATION PERIOD**

| DATE FILED | DOCKET NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED |
|---|---|---|---|---|
| 4/14/2021 | 2643 | 2/01/2021-2/28/2021 | $841,353.02 (80% of $1,051,691.27) | $0.00 |
| 6/25/2021 | 3069 | 3/1/2021-3/31/2021 | $724,392.58 (80% of $905,490.72) | $16,225.81 |
| 7/1/2021 | 3103 | 4/1/2021-4/30/2021 | $809,410.69 (80% of $1,011,763.36) | $30,000.00 |
| 7/15/2021 | 3223 | 5/1/2021-5/31/2021 | $660,536.14 (80% of $825,670.17) | $30,000.00 |

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**PROFESSIONAL PERSON SUMMARY**
**FEBRUARY 1, 2021 – MAY 31, 2021**

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**PROFESSIONAL PERSON SUMMARY**
**FEBRUARY 1, 2021 – MAY 31, 2021**

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| **PARTNER** | | | | |
| Jennifer L. Bragg | 1996 | 1,565.00 | 386.10 | $  604,246.50 |
| Anthony W. Clark | 1979 | 1,565.00 | 24.20 | 37,873.00 |
| Elena M. Coyle | 2011 | 1,275.00 | 3.90 | 4,972.50 |
| Patrick Fitzgerald | 1986 | 1,775.00 | 172.70 | 306,542.50 |
| Maya P. Florence | 2004 | 1,425.00 | 529.20 | 754,110.00 |
| Marie L. Gibson | 1997 | 1,565.00 | 4.10 | 6,416.50 |
| William (Bill) McConagha | 1993 | 1,275.00 | 90.40 | 115,260.00 |
| William Ridgway | 2006 | 1,425.00 | 99.70 | 142,072.50 |
| Resa K. Schlossberg | 2005 | 1,425.00 | 121.00 | 172,425.00 |
| | | | | |
| | **TOTAL PARTNER** | | **1,431.30** | **$2,143,918.50** |
| **COUNSEL** | | | | |
| Michael S. Bailey | 2007 | $1,260.00 | 2.50 | $      3,150.00 |
| John Boyle | 1996 | 1,260.00 | 7.40 | 9,324.00 |
| Avia M. Dunn | 2008 | 1,260.00 | 125.30 | 157,878.00 |
| Wallis M. Hampton | 1992 | 1,260.00 | 0.10 | 126.00 |
| Daniel S. Mayerfeld | 2003 | 1,260.00 | 8.10 | 10,206.00 |
| Christy L. McElhaney | 1988 | 1,325.00 | 0.40 | 530.00 |
| | | | | |
| | **TOTAL COUNSEL** | | **143.80** | **$   181,214.00** |
| **ASSOCIATE** | | | | |
| William A. Bejan | 2018 | $825.00 | 72.80 | $     60,060.00 |
| Jennifer H. Berman | 2014 | 1,120.00 | 105.20 | 117,824.00 |
| Elizabeth L. Berry | 2016 | 995.00 | 167.30 | 166,463.50 |
| Jonathan Casseus | 2018 | 940.00 | 59.80 | 56,212.00 |
| Amanda H. Chan | 2019 | 825.00 | 84.20 | 69,465.00 |
| Barri Dean | 2019 | 825.00 | 17.90 | 14,767.50 |
| Timothy M. Frey | 2010 | 1,120.00 | 57.10 | 63,952.00 |
| Alexandra R. Gallogly | 2019 | 825.00 | 5.40 | 4,455.00 |
| Emily Hellman | 2017 | 995.00 | 314.10 | 312,529.50 |
| Drew M. Horwood | 2017 | 940.00 | 27.20 | 25,568.00 |
| Corbin D. Houston | 2017 | 940.00 | 111.80 | 105,092.00 |

6

| | | | | |
|---|---|---|---|---|
| Kendall R. Ickes | 2020 | 695.00 | 43.80 | 30,441.00 |
| Anthony Kakoyannis | 2016 | 995.00 | 110.50 | 109,947.50 |
| Julie Lee | 2014 | 1,120.00 | 2.30 | 2,576.00 |
| Jennifer Madden | 2010 | 1,120.00 | 48.00 | 53,760.00 |
| Noha K. Moustafa | 2016 | 1,030.00 | 107.10 | 110,313.00 |
| William S. O'Hare | 2013 | 1,120.00 | 5.70 | 6,384.00 |
| Sterling M. Paulson | 2018 | 825.00 | 125.40 | 103,455.00 |
| Kathleen Shelton | 2019 | 825.00 | 6.60 | 5,445.00 |
| Brianna M. van Kan | 2016 | 1,030.00 | 61.00 | 62,830.00 |
| Catherine Yuh | 2020 | 695.00 | 11.50 | 7,992.50 |
| | | | | |
| | **TOTAL ASSOCIATE** | | **1,544.70** | **$ 1,489,532.50** |
| **STAFF ATTORNEY** | | | | |
| Alain Anticoli | 1999 | $470.00 | 143.90 | $    67,633.00 |
| Victoria W. Dienst | 1994 | 450.00 | 77.80 | 35,010.00 |
| P. Christopher Kyle | 2011 | 450.00 | 85.10 | 38,295.00 |
| Brian D. Stuebner | 2008 | 470.00 | 43.00 | 20,210.00 |
| | | | | |
| | **TOTAL STAFF ATTORNEY** | | **349.80** | **$  161,148.00** |
| | | | | |
| **PARAPROFESSIONALS** | | | | |
| Gabriel M. Brainson | N/A | $350.00 | 11.90 | $      4,165.00 |
| Mark D. Campana | N/A | 450.00 | 13.10 | 5,895.00 |
| William R. Fieberg | N/A | 450.00 | 101.60 | 45,720.00 |
| Emma Goff | N/A | 395.00 | 1.40 | 553.00 |
| Rachel Redman | N/A | 450.00 | 44.60 | 20,070.00 |
| | | | | |
| **TOTAL PARAPROFESSIONALS** | | | **172.60** | **$    76,403.00** |
| | | | | |
| **TOTAL** | | | **3,642.20** | **$4,052,216.00** |
| **VOLUME DISCOUNT** | | | | **$  257,600.48** |
| **TOTAL FEES** | | | | **$3,794,615.52** |
| **U.S. TRUSTEE SETTLEMENT AMOUNT TO BE DEDUCTED** | | | | **$  560,916.34** |
| **TOTAL FEES TO BE PAID FOR APPLICATION PERIOD** | | | | **$3,233,699.18** |
| | | | | |
| | | | | |
| | | | | |
| **BLENDED HOURLY RATE      $1,112.57** | | | | |

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**PROJECT CATEGORY SUMMARY**
**FEBRUARY 1, 2021 – MAY 31, 2021**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Corporate/Transactional Advice | 77.60 | $      99,440.00 |
| DOJ | 2,039.00 | 2,338,781.50 |
| Compliance Project | 737.70 | 736,639.50 |
| Litigation Discovery Issues | 32.20 | 39,130.00 |
| Various Texas Actions | 60.10 | 39,600.00 |
| Retention/Fee Matter | 217.80 | 239,074.50 |
| Managed Care Review | 158.40 | 171,129.00 |
| Project Catalyst | 43.40 | 48,343.00 |
| Project Chimera | 276.00 | 340,078.50 |
| **TOTAL** | **3,642.20** | **$4,052,216.00** |
| **VOLUME DISCOUNT** | | **$   257,600.48** |
| **TOTAL FEES** | | **$3,794,615.52** |
| **U.S. TRUSTEE SETTLEMENT AMOUNT TO BE DEDUCTED** | | **$   560,916.34** |
| **TOTAL FEES TO BE PAID FOR APPLICATION PERIOD** | | **$3,233,699.18** |

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**EXPENSE SUMMARY**
**FEBRUARY 1, 2021 – MAY 31, 2021**

| Expense Category | Total Expenses |
|---|---|
| Reproduction-color (@ $0.10 per page) | $      180.00 |
| Courier & Express Carriers (e.g., Federal Express) | 190.66 |
| Professional Fees | 855.15 |
| Secondment of Skadden Attorney | 75,000.00 |
| **TOTAL** | **$  76,225.81** |

Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**"), counsel to the debtors and debtors-in-possession in the above-captioned case (collectively, the "**Debtors**"), submits this fifth interim application (this "**Application**") requesting allowance and approval of compensation for professional services rendered to the Debtors and reimbursement of actual and necessary expenses incurred in connection with such services on an interim basis, for the period from February 1, 2021 through and including May 31, 2021 (the "**Application Period**").  In support of this Application, Skadden submits the declaration of Anthony W. Clark, a partner at Skadden (the "**Clark Declaration**"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Application, Skadden represents as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431,* dated January 31, 2012 (Preska, C.J.).  These are core proceedings under 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Bankruptcy Rules**"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "**Local Guidelines**"), and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the

"**U.S. Trustee Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**").

## BACKGROUND

3.          On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with

this Court a voluntary case under Chapter 11 of title 11 of the United States Code (the

"**Bankruptcy Code**").  The Debtors are authorized to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee or examiner has been appointed in the Debtors' Chapter 11 cases.  On

September 27, 2019, the Office of the United States Trustee for the Southern District of New

York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the

"**Creditors' Committee**").

4.          The Debtors' Chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.  Purdue Pharma L.P. ("**PPLP**")

and its direct and indirect subsidiaries other than the Rhodes Debtors (defined below) (the

"**Purdue Debtors**") primarily operate a branded pharmaceuticals business, while Debtor Rhodes

Associates L.P. and its direct and indirect subsidiaries (the "**Rhodes Debtors**") primarily

develop and distribute generic pharmaceutical products and manufacture a range of active

pharmaceutical ingredients.

5.          As set forth in the Debtors' Informational Brief [Docket No. 17], PPLP had been

responding to subpoenas and civil investigative demands issued by various components of the

United States Department of Justice (the "**DOJ**") in connection with criminal and civil

investigations of PPLP.  Over the course of the investigations, PPLP engaged in discussions with

DOJ regarding a potential resolution.  On October 21, 2020, the Department of Justice

announced a global resolution of these investigations into PPLP.  PPLP continues to cooperate

with the DOJ investigation and Skadden continues to coordinate that cooperation but is also assisting the company's transition to allow for a public benefit company by spending substantial time addressing state and federal licensing and regulatory issues.

6.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Debtors' Informational Brief.

### THE DEBTORS' RETENTION OF SKADDEN

7.      On November 6, 2019, the Debtors applied to this Court for an order authorizing the retention of Skadden as special counsel, effective *nunc pro tunc* to the Petition Date [Docket No. 438] (the "**Initial Skadden Retention Application**").  On November 25, 2019, the Court approved the Initial Skadden Retention Application [Docket No. 545] (the "**Initial Retention Order**").  In addition, Skadden applied to this Court for an order authorizing the Debtors to supplement the retention and employment of Skadden as special counsel, *nunc pro tunc* to March 6, 2020 [Docket No. 1370] (the "**Supplemental Retention Application**," and together with the Initial Skadden Retention Application, the "**Skadden Retention Applications**").   On July 27, 2020, the Court approved the Supplemental Retention Application [Docket No. 1521] (the "**Supplemental Retention Order**," and together with the Initial Retention Order, the "**Retention Orders**").

8.      The Retention Orders authorize the Debtors to compensate Skadden at its standard hourly rates subject to certain discounts and reimburse Skadden for its actual and necessary out-of-pocket expenses incurred, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.[10]

---

[10]    Skadden and the Debtors have agreed to certain rate increases effective January 1, 2021, subject to certain discounts described in the *Notice Of Increase In Hourly Rates Of Skadden Professionals* [Docket No. 2527] (the "Rate Increase Notice").

9.      The Retention Orders also authorize Skadden to provide the following services

("**Services**"):

(a)     governmental investigation matters, including the ongoing criminal and civil investigations being coordinated through various components of the DOJ and other federal agencies, as well as related settlement negotiations and proceedings;

(b)     to represent PPLP and certain of its subsidiaries in connection with state governmental investigation matters, including the ongoing criminal and civil investigations being coordinated through offices of various states attorney general and other state agencies, as well as related negotiations and proceedings;

(c)     to represent PPLP and certain subsidiaries in connection with pending civil litigation as well as litigation that may arise after the date hereof, including the Texas Litigation and other Litigation Matters, as well as related negotiations and proceedings;

(d)     to represent PPLP and certain subsidiaries in the Advice Matters, including providing ongoing regulatory and compliance advice;

(e)     to provide other services normally and reasonably associated with these types of engagements; and

(f)     to provide services in connection with advising the Debtors regarding a potential transaction, as well as certain corporate and regulatory matters, including advice relating to the following matters: structuring the potential transaction; assisting with organizing due diligence and responding to inquiries from potential transaction counterparties; drafting and negotiating definitive documentation; and preparing for and assisting the Debtors in consummating the potential transaction, with advice covering, inter alia, corporate, regulatory, intellectual property, tax, environmental, and real estate matters.

10.     Other than between Skadden and its affiliated law practices and their members, no agreement or understanding exists between Skadden and any other person or persons for the sharing of compensation received or to be received for professional services rendered in or in connection with these cases, nor will any be made except as permitted pursuant to Bankruptcy Code section 504(b)(1).

13

## FEE PROCEDURES AND MONTHLY FEE STATEMENTS

11.     Pursuant to the interim compensation procedures (the "**Interim Compensation Procedures**") set forth in the amended interim compensation order [Docket No. 529] professionals who seek compensation must file monthly fee statements.  Parties in interest are provided 14 days to object to such statements.  Absent a timely objection, the Debtors are authorized to pay 80% of the fees requested (with the remaining 20% of the fees requested referred to herein as the "**Holdback**") and 100% of the charges and disbursements requested.

12.     In accordance with the Interim Compensation Procedures, Skadden seeks interim approval of the full amount of the fees and expenses requested in the monthly fee statements filed for the months of February, March, April, and May of 2021.[11]

13.     Pursuant to the Settlement Agreement between the U.S. Trustee, Dechert LLP, Skadden, and Wilmer Cutler Pickering Hale and Dorr LLP [Docket No. 2888] (the "U.S. Trustee Settlement") which was approved by the Court [Docket No. 2890], Skadden agreed to reduce payment due under future fee applications by $560,916.34 (the "U.S. Trustee Settlement Amount").  Accordingly, Skadden seeks interim approval and authorization for the Debtors to pay the amounts requested herein less the U.S. Trustee Settlement Amount.[12]

## RELIEF REQUESTED

14.     By this Application, Skadden seeks interim approval of $3,035,692.42 in fees calculated at the applicable guideline hourly billing rates as compensation for professional

---

[11]   This Application reflects an additional $380.00 voluntary reduction that is not reflected in the monthly fee statements for the Application Period.

[12]   The Debtors have been provided with an opportunity to review all amounts requested in the Application and have approved the amounts requested herein.

*(cont'd)*

services rendered[13] and reimbursement of $76,225.81 as actual and necessary expenses incurred during the Application Period.[14] Pursuant to the U.S. Trustee Settlement, Skadden will deduct the U.S. Trustee Settlement Amount ($560,916.34) from the total amount of interim fees allowed.

15.    In accordance with the Interim Compensation Procedures, Skadden submitted monthly fee statements for each of the months covered by the Application Period.  Skadden is now requesting payment of an aggregate Holdback amount of $758,923.10 for the Application Period less the U.S. Trustee Settlement Amount ($560,916.34) for a net payment of $198,006.76.

## DESCRIPTION OF SERVICES RENDERED

16.    During the Application Period, Skadden provided the Services described above to the Debtors, including advising the Debtors with respect to federal government investigation matters, certain corporate and regulatory matters, certain transactions, and other discrete matters relating to the pending investigations and the transactions.  Skadden's streamlined case management and staffing structure helped promote cost efficiencies and avoided duplicative or unnecessary work.

17.    Similarly, while it is Skadden's standard policy to charge its clients in all areas for certain charges and disbursements incurred in connection with such clients' matters (as disclosed

---

[13]    As set forth on the detailed schedules at the front of this Application, this amount corresponds to 3,642.20 hours Skadden devoted to representation of the Debtors during the Application Period: 1,431.30 hours by partners, 143.80 hours by counsel, 1,544.70 hours by associates, 349.80 hours by staff attorneys, and 172.60 hours by paraprofessionals.  Skadden's blended hourly rate for the Application Period was $1,112.57.

[14]    The total amount sought for fees and expenses ($3,870,841.33) reflects voluntary reductions (in addition to the Volume Discount) for the Application Period of $836,511.50 in fees, a 17.11% reduction and $21,832.11 in expenses, a 22.26% reduction.  Skadden reserves the right to request these amounts.

*(cont'd)*

in the Skadden Retention Applications), Skadden attempted to minimize such expenses during these bankruptcy cases.[15]

18.     During the Application Period, Skadden utilized 9 different matter numbers or subject-matter categories to which its professionals billed their time, all of which were related to the tasks performed by Skadden on behalf of the Debtors.  Skadden kept a contemporaneous record of the time spent rendering services and separated tasks in billing increments of one-tenth of an hour.  All of the services performed by Skadden were legal in nature and necessary and appropriate for the effective administration of these Chapter 11 Cases.

## RETENTION MATTERS

19.     Following below is a narrative summary of the work performed by Skadden during the Application Period in connection with each of the key matters to which Skadden professionals devoted significant time (listed in descending order based on amount of fees sought):

**A.     Matter No. 13 – DOJ**
        **Amount Sought: $2,338,781.50**

20.     Throughout the Chapter 11 Cases, Skadden has provided legal services to the Debtors in connection with federal governmental investigation matters, including the criminal and civil investigations that have been coordinated through various components of the DOJ and other federal agencies.  Skadden's efforts laid the groundwork for an $8.3 billion global resolution between PPLP and DOJ, which was announced on October 21, 2020 and pursuant to which PPLP entered a guilty plea on November 24, 2020 and anticipates ceasing to operate in current form and emerging from bankruptcy as a public benefit company or entity with similar

---

[15]    A chart summarizing such necessary charges and disbursements for the Application Period is included at the front of this Application.

mission.  The global resolution and settlement required significant coordination between numerous government agencies, stakeholders in PPLP's ongoing bankruptcy proceeding, and other parties and entities.

21.    During the Application Period, Skadden professionals continued to communicate with DOJ and responded to DOJ's cooperation requests by, among other things, identifying and producing documents in response to requests and investigating fact issues identified by DOJ. Moreover, Skadden professionals reviewed materials for relevance and to protect any information shielded by privilege.

22.    Skadden professionals have also provided substantial regulatory analysis and advice to the Debtors in connection with the change of control anticipated to occur upon emergence pursuant to the proposed plan of reorganization.  As part of this workstream, Skadden professionals have undertaken a significant review and analysis of federal and state regulatory licenses, provided advice to the Debtors regarding relevant regulatory requirements, and worked closely with co-counsel and regulatory consultants to plan and prepare for the emergence process.

23.    During the Application Period, Skadden professionals also provided advice to the Debtors regarding the public document repository proposed to be created pursuant to the proposed plan of reorganization.  Skadden professionals reviewed and analyzed draft proposals and participated in numerous conference calls with co-counsel and the Debtors relating to the proposed bankruptcy repository and the coordination of that repository with PPLP's document repository obligation arising out of the DOJ resolution and discussed the implications for attorney-client privilege and the confidentiality of negotiations with DOJ.

24.    During the Application Period, Skadden professionals also provided advice to the Debtors relating to the Voluntary Injunction that was entered in November 2019 by the Bankruptcy Court and regarding negotiations that are underway for an injunction that will apply upon emergence from Bankruptcy.

25.    Skadden professionals have also participated in numerous internal and external conference calls and meetings throughout the Application Period to coordinate these workstreams, including with the Debtors and co-counsel.

**B.    Matter No. 80 – Compliance Matter**
      **Amount Sought:  $736,639.50**

26.    During the Application Period, Skadden provided legal services to the Debtors in connection with their compliance functions. Skadden professionals reviewed and analyzed relevant documents, and participated in numerous conference calls and meetings throughout the Application Period, including with the Debtors and co-counsel.  Skadden professionals reviewed and analyzed draft proposals, discussed strategy, coordinated workstreams, and assessed and advised on potential legal questions.

**C.    Matter No. 78 –  Project Chimera**
      **Amount Sought: $340,078.50**

27.    During the Application Period, Skadden professionals provided advice relating to negotiation of a potential transaction involving a third-party's pharmaceutical product.  Time billed to this matter included drafting an initial proposed agreement, analyzing the counterparty's edits to the proposed agreement, drafting issues list related to the proposed agreement, and drafting revised versions of the proposed agreement.  Skadden professionals also participated in numerous internal calls with the Debtors on strategy, as well as numerous drafting sessions and negotiations with the counterparty.

18

### D.    Matter No. 73 - Retention / Fee Matters
### Amount Sought: $239,074.50

28.    During the Application Period, in accordance with the Interim Compensation

Procedures, Skadden professionals prepared and filed four Monthly Fee Statements [Docket Nos.

2355, 2528, 2643, and 2901].  In addition, during the Application Period, Skadden prepared the

Fourth Interim Fee Application for the period covering October 1, 2020 through January 31,

2021 [Docket No. 2530] and attended the hearing on the same.

29.    In addition, during the Application Period, Skadden conducted further

comprehensive checks with respect to newly-identified persons and parties in interest in these

Chapter 11 Cases.  In addition, Skadden engaged in further inquiry of its partners, counsel and

associates with respect to the matters identified in the Settlement Agreement Between the United

States Trustee, Skadden, Arps, Slate, Meagher & Flom LLP, Wilmer Cutler Pickering Hale and

Dorr, LLP, and Dechert, LLP [Docket No. 2888] (the "**UST Settlement**").  In connection with

its searches and inquiries and its obligations arising under the UST Settlement, Skadden prepared

a supplemental declaration of Anthony Clark in further support of Skadden's retention during the

Application Period.

### E.    Matter No. 81– Managed Care Review
### Amount Sought: $171,129.00

30.    During the Application Period, Skadden provided legal services to the Debtors in

connection with a review of managed care matters.   Skadden professionals assessed potential

legal and factual questions, reviewed and analyzed relevant documents, drafted legal

communications and attended numerous calls with the Debtors regarding the same.

**F.    Matter No. 74 – Corporate Advice**
**Amount Sought: $99,440.00**

31.    During the application period, Skadden professionals provided advice relating to certain corporate and transactional matters, including advising with respect to intellectual property and contract issues.  Time billed to this matter also included participating in internal calls to discuss strategy, conducting legal research and reviewing materials related to the matter, and corresponding with the client on strategy.

**G.    Matter No. 76 – Project Catalyst**
**Amount Sought: $48,343.00**

32.    Prior to the Application Period, with Skadden's counsel, the Debtors entered into an asset purchase agreement, a long-term supply agreement and transition services agreement related to an asset sale.  Pursuant to the asset purchase agreement, a third party purchaser acquired certain operating assets of an indirect subsidiary of PPLP, including a manufacturing plant, inventory and other assets relating to the subsidiary's active pharmaceutical ingredient (API) manufacturing business.  In addition, PPLP and/or its subsidiaries previously entered into a supply agreement and transition services agreement with such third party purchaser, pursuant to which such third party purchaser will supply APIs to PPLP for a minimum term of seven years and PPLP's indirect subsidiary will provide transition services to such third party purchaser, respectively.  The transactions contemplated by the asset purchase agreement closed on December 31, 2020.  Skadden professionals continued to advise the Debtors regarding these transactions and the obligations of the parties under the definitive agreements during the Application Period, including participating in internal and external communications relating thereto.

**H.    Matter No. 63 - Various Texas Actions**
**Amount Sought: $39,600.00**

33.    Skadden represented PPLP in opioid-related litigation in Texas state and federal

courts, brought mainly by state and local governments.  During the Application Period, Skadden

professionals continued to monitor filings in those cases for potential impact on PPLP.

**I.    Matter No. 75 – Litigation Discovery Issues**
**Amount Sought: $39,130.00**

34.    During the Application period, Skadden professionals conducted legal research

related to various regulatory issues.  Time billed to this matter also included participating in calls

to discuss strategy as related to correspondence with government agencies relating to Purdue's

ongoing regulatory obligations.

## REASONABLENESS OF FEES AND DISBURSEMENTS

35.    Bankruptcy Code section 330 authorizes the Court to award "reasonable

compensation for actual, necessary services rendered by the . . . professional person." 11 U.S.C.

§ 330.  Skadden respectfully submits that its request for an interim award of compensation for

the Application Period satisfies that standard.

36.    In accordance with the factors enumerated in 11 U.S.C. § 330, the amount

requested herein by Skadden is fair and reasonable in light of (a) the nature of the Chapter 11

cases, (b) the time and labor required to effectively represent the Debtors, (c) the nature and

extent of the services rendered, (d) Skadden's experience, reputation, and ability, (e) the value of

Skadden's services, and (f) the cost of comparable services outside of cases under the

Bankruptcy Code.

**A.    Nature of the Services Provided During the Chapter 11 Cases**

37.    As discussed above, Skadden professionals performed legal work for Debtors and

certain of its subsidiaries in connection with government investigations, complex and material

litigation matters, and these Chapter 11 cases. Skadden provided Services pertaining to:
(a) regulatory and compliance matters, (b) certain civil and criminal investigations initiated by
the DOJ, certain other United States agencies, and state attorneys general and state agencies,
(c) certain civil litigation, including approximately 51 cases filed in Texas state courts, most of
which have been consolidated into a Texas state multi-district litigation; (d) certain corporate and
regulatory matters; (e) certain transactional matters and related issues; and (f) the interplay of
these matters in the ongoing Chapter 11 cases. Skadden assigned various attorneys to discrete
tasks to avoid the performance of duplicative or unnecessary work.

38.     Given the variety of complex issues that arose in the regulatory, investigation,
litigation, and transactional matters, including matters that involved a combination of legal
disciplines, there were circumstances where a number of Skadden professionals had to be present
at, and participate in, discussions, negotiations, and strategy meetings. This level of participation
was necessary to ensure coordination within and among the defense team, culminating in the
DOJ's announcement of a global resolution with PPLP on October 21, 2020, as well as to ensure
coordination across the various matters Skadden handled for the Debtors during the Application
Period. Skadden believes that it has, through the summaries contained in this Application and
the time entries attached to the Monthly Fee Statements, articulated specific reasons for such
participation.

### B.     Experience of Skadden

39.     As set forth more fully in the Skadden Retention Applications, Skadden's
attorneys' knowledge and experience in the areas in which the Services were provided, as well as
the firm's longstanding relationship with the Debtors in connection with the Services, benefited
the Debtors' estates in various ways and ensured that matters related to the DOJ investigation

(including the global resolution), the transaction, as well as the other matters for which the

Debtors provide special counsel were addressed properly and promptly.

### C.    Comparable Services

40.    Skadden also satisfies the comparable cost requirement, because its rates in these

Chapter 11 Cases are consistent with Skadden's standard rates and the material terms for non-

bankruptcy matters and terms of other comparably skilled counsel.  Moreover, Skadden's rate

structure was disclosed clearly in the Skadden Retention Applications, which this Court

approved, the First Supplemental Fitzgerald Declaration, and the Rate Increase Notice.  The

amounts sought by Skadden are consistent with the fees, charges, and disbursements incurred in

other chapter 11 cases in other similar non-bankruptcy matters.  Accordingly, the cost of

comparable services supports the Application and the Services performed during the Application

Period warrants the allowance of compensation, particularly given the current joint-investigation

now underway, which provides a roadmap to a consensual resolution in these cases.

41.    Based on the foregoing, Skadden respectfully submits that approval of the

compensation sought herein is warranted and should be approved.

### D.    Reservation of Rights

42.    Skadden reserves the right to supplement this Application to seek amounts for

work performed or expenses incurred during the Application Period but not yet reflected in

Skadden's time records or to amend the amounts listed herein and in the Monthly Fee Statements

to correct any bookkeeping errors.  Skadden has attempted to include in the Monthly Fee

Statements and, by extension, this Application, all time and expenses relating to the Application

Period.  Delays in processing such time and receiving invoices for certain expenses do occur,

however.  In the event that a subsequent review reveals that additional professional services have

been rendered or expenses have been incurred on behalf of the Debtors during the Application

Period which were not processed by Skadden's accounting system before the time of this

Application, Skadden reserves the right to seek such additional fees and expenses by subsequent

application to the Court.  Skadden does not waive, and expressly reserves, its right to respond to

any objections regarding this Application and the amounts sought for Skadden's services in these

Chapter 11 Cases.

## COMPLIANCE WITH GUIDELINES

43.    Skadden believes that this Application, together with the attachments hereto,

substantially complies in all material respects with the Fee Guidelines.  To the extent this

Application does not comply in every respect with the requirements of such Fee Guidelines,

Skadden respectfully requests a waiver for any such technical non-compliance.

## NO PRIOR REQUEST

44.    No previous request for the relief sought herein has been made to this Court or

any other court.

## NOTICE

45.    Notice of this Motion will be given to the following parties: (a) Debtors; (b)

counsel to the Debtors; (c) counsel to the Committee; and (d) all parties entitled to notice

pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy

Court for the Southern District of New York.  The Debtors submit that no other or further notice

is required.

## CONCLUSION

46.    WHEREFORE, Skadden respectfully requests that the Court enter an order

allowing interim compensation of $3,794,615.52 to Skadden, payment of which will be subject

to a deduction of $560,916.34 pursuant to the U.S. Trustee Settlement, for a total of

$3,233,699.18 to be paid to Skadden for professional services rendered as counsel for the

Debtors during the Application Period, plus reimbursement of actual and necessary charges and disbursements incurred in the amount of $76,225.81.

Dated: New York, New York
July 15, 2021

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/      Julie E. Cohen*

Julie E. Cohen
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Fax:  (212) 735-2000

– and –

Patrick Fitzgerald
155 North Wacker Drive
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

– and –

Anthony W. Clark
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3080
Fax: (302) 434-3080

*Special Counsel to Debtors
and Debtors-in-Possession*

**Exhibit A**

**Clark Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors. 1 | (Jointly Administered) |

### CERTIFICATION OF ANTHONY W. CLARK IN SUPPORT OF THE FIFTH INTERIM FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS SPECIAL COUNSEL TO THE DEBTORS FOR THE PERIOD FROM FEBRUARY 1, 2021 THROUGH AND INCLUDING MAY 31, 2021

I, Anthony W. Clark, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am a member of the firm of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**") which maintains offices for the practice of law at, among other locations, 920 N. King Street, Wilmington, Delaware 19801.

2.      I am a practicing member in good standing of the bars of the State of Delaware and the Commonwealth of Pennsylvania.

3.      This certification is made in connection with Skadden's fifth application, dated July 15, 2021 (the "**Application**"),[1] for interim compensation and reimbursement of expenses for the period commencing February 1, 2021, through and including May 31, 2021.

4.      I have read the Application and to the best of my knowledge, information, and belief, the statements contained in the Application are true and correct. In addition, after reasonable inquiry, including consultation with Skadden's bankruptcy professionals, I believe

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Application.

1

that the Application substantially complies in all material respects with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York* (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "**Local Guidelines**"), and the *United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**" and together with the Local Guidelines, the "**Fee Guidelines**").

5.    With respect to section C.5 of the U.S. Trustee Guidelines, I certify the following:

**Question**:   Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response:   Yes, we have agreed to provide volume discounts as described in *Notice of Increase In Hourly Rates Of Skadden Professionals* [Docket No. 2527].

**Question**:   If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:   The aggregate fees sought in this application do not exceed the aggregate budget by 10% or more.

**Question**:   Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:   No.

**Question**:   Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:   Except as set forth below, the Application does not include any fees dedicated to revising time records or preparing and revising invoices that would not normally be compensable outside of bankruptcy. The Application includes 217.80 hours, totaling $239,074.50 (prior to application of the Volume Discount), which reflects approximately 5.90% of the total fees (prior to the Volume Discount) billed during the Application Period, for Skadden retention and fee matters, including time spent to (a) ensure that

2

time entries comply with the Fee Guidelines and do not disclose privileged or confidential information and (b) prepare monthly fee statements, prepare and revise Skadden's budget and staffing plan, and prepare and file the Application. All of these services, including review of and revisions to fee statements and applications, were necessary components of Skadden's fee and retention activities.

**Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response: See response above.

**Question:** If the fee application includes any rate increases since retention:

    i. Did your client review and approve those rate increases in advance?

Response: Skadden previously disclosed rate increases that were effective as of January 1, 2020 in the *Supplemental Declaration of Patrick Fitzgerald in Support of Application of Debtors to Retain and Employ Skadden* [Docket No. 936].  Subsequent rate increases, effective as of January 1, 2021 were the subject of weeks of arms' length negotiations with the client and are detailed in the *Notice of Increase In Hourly Rates Of Skadden Professionals* [Docket No. 2527].

    ii. Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Response: The client did not agree, when retaining the law firm, to accept all future rate increases.  All rate increases were the subject of weeks of arms' length discussions. The client was informed that it did not need to agree to modified rates or terms in order to have Skadden continue the representation.

With respect to section B.1 of the Local Guidelines, I certify the following:

    (a)    I have read the Application;

    (b)    to the best of my knowledge, information, and belief, formed after reasonable inquiry, including consultation with Skadden's bankruptcy professionals, the fees and disbursements sought in the Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, and fall within the Local Guidelines;

(c) except to the extent that fees and disbursements are prohibited by the Local Guidelines, the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by Skadden and generally accepted by Skadden's clients; and

(d) in providing a reimbursable expense, Skadden does not make a profit on that expense, whether the service is performed by Skadden in-house or through a third party.

6. With respect to section B.2 of the Local Guidelines, I certify that the Debtors have been provided during the Application Period with monthly statements of fees and out-of-pocket expenses, containing lists of professionals and paraprofessionals providing services, their respective billing rates, the work hours expended by each individual, a general description of services rendered, and a reasonably detailed breakdown of out-of-pocket expenses incurred.

7. With respect to section B.3 of the Local Guidelines, I certify that I will cause this Application to be served on the following parties: (a) Debtors; (b) counsel to the Debtors; (c) counsel to the Committee; and (d) all parties entitled to notice pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.

8. In accordance with Bankruptcy Rule 2016(a) and Bankruptcy Code section 504, I certify that no agreement or understanding exists between Skadden and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the above cases except as authorized pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. All services for which compensation is sought were professional services on behalf of the Debtors and not on behalf of any other person.

*[**Remainder of Page Intentionally Left Blank**]*

Dated: Wilmington, Delaware
          July 15, 2021

<div style="margin-left: 40%;">

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/      *Anthony W. Clark*
Anthony W. Clark
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3080
Fax: (302) 434-3080

*Special Counsel to Debtors
and Debtors-in-Possession*

</div>

## EXHIBIT B - Rate Disclosures

The blended hourly rate for all U.S.-based Skadden timekeepers (including both professionals and paraprofessionals), excluding all bankruptcy and pro bono engagements and all data from timekeepers practicing primarily in Skadden's Corporate Restructuring Group,[2] during the twelve-month period beginning on June 1, 2020 and ending on May 31, 2021 (the "**Comparable Period**") was, in the aggregate, approximately $923.74 per hour (the "**Non-Bankruptcy Blended Hourly Rate**").[3]

The blended hourly rate for all Skadden timekeepers who billed to the Debtors during the Application Period was approximately $1,112.57 per hour (the "**Debtors' Blended Hourly Rate**").[4] A detailed comparison of these rates follows:

| Position | Debtors' Blended Hourly Rate ($) | Non-Bankruptcy Blended Hourly Rate ($) |
|---|---|---|
| Partners/Of Counsel | $1,497.88 | $1,446.55 |
| Special Counsel/Counsel | $1,260.18 | $1,111.21 |
| Associate | $964.29 | $810.00 |
| Client Specialists and Paraprofessionals | $442.66 | $343.67 |
| All Others | $460.69 | $371.01 |
| **Total** | **$1,112.57** | **$923.74** |

[2]    For purposes of calculating the Non-Bankruptcy Blended Hourly Rate, Skadden tracks, as bankruptcy engagements, debtor-in-possession ("**DIP**") clients as well as reorganized and post-DIP clients, and excludes those engagements from the Non-Bankruptcy Blended Hourly Rate along with all time of members of the Corporate Restructuring department.

[3]    Skadden calculated the Non-Bankruptcy Blended Hourly Rate by dividing the total dollar amount billed by U.S.-based Skadden timekeepers, excluding all bankruptcy engagements, DIP clients, as well as reorganized and post-DIP clients, and all data from timekeepers of the Corporate Restructuring group (both attorneys and legal assistants), during the Comparable Period by the total number of corresponding hours billed by U.S.-based Skadden timekeepers during the Comparable Period.

[4]    Skadden calculates the Debtors' Blended Hourly Rate by dividing the total dollar amount billed by such timekeepers during the Application Period by the total number of hours billed by such timekeepers during the Application Period.  During the Application Period, Skadden voluntarily reduced its fees requested by $836,511.50 (17.11%) and its expenses requested by $21,832.11 (22.26%), for a total of $858,343.61 (17.21%), and its hours billed from a base of 4,347.30 to 3,642.20 (16.22%).  Skadden's Debtor Blended Hourly Rate does not account for Skadden's voluntary reduction of its fees.  The total blended hourly rate for Skadden timekeepers who billed to the Debtors during the Application Period based on the amount billed divided by actual hours worked (including non-billed hours) was $932.12.

The Debtors' Blended Hourly Rate is the following: for Partners/Of Counsel ($1,497.88). Special Counsel/Counsel ($1,260.18), Associates ($964.29), Client Specialists and Paraprofessionals ($442.66), and All Others ($460.69).  The Non-Bankruptcy Blended Hourly Rate is the following: for Partners/Of Counsel ($1,446.55), Special Counsel/Counsel ($1,111.21), Associates ($810.00), Client Specialists and Paraprofessionals ($343.67), and All Others ($371.01). The differences between the blended rates for these categories of professionals are not indicative of a premium being charged by Skadden for its representation of the Debtors, but rather the result of attending to the complexities involved in the Services and the Chapter 11 Cases that have required the use of more-senior professionals, with correspondingly higher billing rates, than in a typical representation.

**EXHIBIT C-1**
**Staffing Plan**

**February 1, 2021 through May 31, 2021**

Average hourly rates are weighted averages based on the hourly rate of, and projected number of hours worked by, timekeepers.

| Category of Timekeeper | Estimated Number of Timekeepers | Actual Number of Timekeepers | Actual Average Hourly Rate ($) |
|---|---|---|---|
| Partner | 21 | 9 | $1,477.22 |
| Counsel | 12 | 6 | $1,270.83 |
| Associate | 42 | 21 | $943.10 |
| Staff Attorneys | 5 | 4 | $460.00 |
| Client Specialists and Paraprofessional | 24 | 5 | $419.00 |
| **Total** | **104** | **45** | **$992.44** |

**EXHIBIT C-2**
**Budget & Compensation Summary By Matter**
**February 1, 2021 through May 31, 2021**

| Matter | Hours | | Compensation ($) | |
|---|---|---|---|---|
| | Budgeted | Billed | Budgeted | Billed |
| Compliance Review | 785 | 737.70 | $779,000.00 | $736,639.50 |
| Corporate/Transactional Advice | 255 | 77.60 | $253,000.00 | $99,440.00 |
| DOJ | 4,353 | 2,039.00 | $4,320,188.00 | $2,338,781.50 |
| Litigation Discovery Issues | 206 | 32.20 | $204,400.00 | $39,130.00 |
| Managed Care | 190 | 158.40 | $189,000.00 | $171,129.00 |
| Project Catalyst | 73 | 43.40 | $72,000.00 | $48,343.00 |
| Project Chimera | 489 | 276.00 | $485,000.00 | $340,078.50 |
| Retention/Fee Matters | 267 | 217.80 | $264,932.00 | $239,074.50 |
| Various Texas Actions | 124 | 60.10 | $123,476.00 | $39,600.00 |
| Volume Discount | | | | $257,600.48 |
| Total | 6,742 | 3,642.2 | $6,690,996.00 | $3,794,615.52 |
| U.S. Trustee Settlement | | | | ($560,916.34) |
| Total Amount To Be Paid | | | | $3,233,699.18 |

8

656522.01-PALSR01A - MSW