

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8

9              Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                     United States Bankruptcy Court

13                     300 Quarropas Street, Room 248

14                     White Plains, NY 10601

15

16                     June 1, 2021

17                     3:01 PM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  ART

Page 2

1   HEARING re Continuance from May 26 Hearing via Zoom – Motion

2   to Approve (I) the Adequacy of Information in the Disclosure

3   Statement, (II) Solicitation and Voting Procedures, (III)

4   Forms of Ballots, Notices and Notice Procedures in

5   Connection Therewith, and (IV) Certain Dates with Respect

6   Thereto (ECF #2489)

7

8   HEARING re Notice of Hearing /Notice of Supplemental Hearing

9   on Debtors Motion to Approve (I) the Adequacy of Information

10  in the Disclosure Statement, (II) Solicitation and Voting

11  Procedures, (III) Forms of Ballots, Notices and Notice

12  Procedures in Connection Therewith, and (IV) Certain Dates

13  with Respect Thereto (related document(s)2489)

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    DAVIS POLK & WARDWELL LLP

4        Attorneys for Debtor

5        450 Lexington Avenue

6        New York, NY, 10017

7

8    BY:  MARSHALL HUEBNER (TELEPHONICALLY)

9        JAMES MCCLAMMY (TELEPHONICALLY)

10

11   WHITE & CASE LLP

12       Attorneys for Ad Hoc Group of Individual Victims of

13       Purdue Pharma LP

14       1221 Avenue of the Americas

15       New York, NY 10020

16

17   BY:  J. CHRISTOPHER SHORE (TELEPHONICALLY)

18

19   PAUL S. ROTHSTEIN, P.A.

20       Attorneys for Dr. Michael Masiowski

21       626 NE 1st Street

22       Gainesville, FL 32601

23

24   BY:  PAUL ROTHSTEIN (TELEPHONICALLY)

25

1    PILLSBURY WINTHROP SHAW PITTMAN LLP

2        Attorneys for Ad Hoc Group of Non-Consenting States

3        31 West 52nd Street

4        New York, NY 10019

5

6    BY:  ANDREW TROOP (TELEPHONICALLY)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE COURT:  Good afternoon.  This is Judge Drain,

3    and we're here in In Re Purdue Pharma, et al.  As I'm sure

4    the people on the phone know, at the Debtors' request we had

5    reserved this time in case there were further issues to

6    discuss regarding the changes to the disclosure statement

7    that had been either agreed to or imposed as a result of the

8    hearing last week on the Debtors' request for approval of

9    their disclosure statement for their amended joint Chapter

10   11 plan, and also to give the parties some additional time

11   with respect to a few remaining issues that they were all

12   careful to say had not been completely resolved as of the

13   date of the hearing last week.

14           I don't have yet a blacklined disclosure

15   statement, So, I'm assuming I'll get an update from the

16   Debtors' counsel on that.  So, why don't we proceed with

17   that?

18           Thank you, Your Honor.  If I may ask if I can be

19   heard clearly?

20           THE COURT:  Yes, I can hear you.  You can go

21   ahead.

22           MR. HUEBNER:  Thank you.  Your Honor, for the

23   record, this is Marshall Huebner, at Davis Polk & Wardwell,

24   on behalf of the Debtors.  And again, I can probably -- this

25   is (indiscernible) is a status conference (indiscernible)

Page 6

1     for the many parties.

2              There is good news, although obviously not exactly

3     where we would like to be, which is pretty obvious from the

4     absence of something on the docket.  But let me switch off

5     these headphones (indiscernible).  I am getting some texts

6     that I'm not coming through too clearly.

7              Your Honor, is this actually more clear or less

8     clear?

9              PRESIDENT JOSEPH ARGENZIANO:  That's a lot better.

10    Thank you.

11             MR. HUEBNER:  Okay, terrific.  And I apologize for

12    that, the muffled headphones.

13             So, I think the good news is we had a very serious

14    and extensive seven-hour hearing last week, where we

15    obviously resolved, I think, basically virtually all of the

16    filed objections.  We got substantial guidance from the

17    Court, both on the disclosure statement and the form of

18    order.

19             And you will not be surprised to hear that those

20    things are already in the documents.  So, that's moving

21    along.  And there are a whole bunch of changed pages.  We

22    could have potentially filed that.  We'll be showing people.

23    But we have been distributing those documents with some

24    periodicity to all of the relevant parties.  And I think

25    that with the exception, perhaps, of one issue, my belief is

Page 7

1    that the parties are in agreement that our documents reflect

2    the changes that either we agreed to make on the record or

3    that the Judge directed us to make on the record or

4    suggested we make on the record with respect to the open

5    issues.  I'll get to that in a minute, that one issue in a

6    minute.

7              I told the Court last week that there were several

8    issues that were open, essentially on an intercreditor

9    basis, and then that there were several issues that were

10   open with respect to the Sacklers.  And you know, that is

11   obviously the Debtors, the UCC, the HC and the MSGE on the

12   one hand, sort of facing the Sacklers on the other hand.

13   So, let me give a status update on those things.

14             With respect to the intercreditor issues, I guess

15   I am happy to report -- although it's kind of at great

16   personal cost to many people over the last several days and

17   very late nights -- that we have actually made material

18   progress on -- I think we've made material progress on

19   pretty much all those issues.

20             One of them agreed in principle was reached

21   earlier today, which I'm going to take a few minutes and

22   describe because I think it is helpful to give the Court and

23   parties a sense of where the issue of hypothetical futures

24   claims (indiscernible) is going to find a home in the plan

25   structure.  And then one issue where we still unfortunately

1   do have some wood to chop, which was also previewed last

2   week, is the issue of attorneys fees, really sort of the

3   class action sort of percentage lawyers for the various

4   groups, and how the kind of MDL common benefit fund

5   structure fits into that.

6            There have been emails going, you know, possibly

7   as frequently as every 15 minutes, almost every waking hour

8   of the last many days.  Although we're not quite there yet.

9   There are, you know, some curlicues and complexities and,

10  you know, not quite meeting of the minds on those issues.

11           With respect to the Sacklers, I actually believe

12  it to be the case that of the issues that the Debtors and

13  the other negotiating parties felt very strongly had to be

14  agreed prior to the Debtors requesting entry of the

15  confirmation order.

16           I believe that they are now all agreed at a sort

17  of term sheet level, with one exception, which I actually

18  had hoped would be agreed by the hearing but is not.  But I

19  do remain very optimistic because it's a pretty remote

20  contingency, frankly, that we're trying to sort of allocate

21  risk for, that it will be agreed by tomorrow.  And so, there

22  is good news there.

23           Again, I do want to be very clear, So, that the

24  record is pristine on this.  There are still plenty of

25  things to negotiate with the Sacklers.  We do not have final

1    agreed executable settlement agreements.  We never were

2    going to have that by the disclosure statement.  Again, this

3    is all something we've all discussed before.

4           But since some of those people, you know, hear

5    things anew or don't fully cognize what they've heard before

6    when there are hearings on the record, I do want to be clear

7    that there is a level of what I'll call very detailed term

8    sheet agreement on all material points.  That is what we

9    were striving for before the Debtors were comfortable as

10   fiduciaries setting that plan out for a vote, and I think

11   that we are now one issue away essentially from being at

12   that level of comfort, maybe one and a half issues.

13          And obviously, by tomorrow at 3:00, which the

14   Court has, with extraordinary flexibility and graciousness,

15   given us for the final try to get this done for August

16   disclosure statement hearing, we will hopefully be able to

17   put on the record tomorrow how the remaining issues settled,

18   and we will be able to say that we now have the requisite

19   level of comfort facing the shareholders.

20          With respect to futures, Your Honor, now turning

21   back to intercreditor issues, here is sort of where I think

22   we've ended up.  And as with last time, without any

23   embarrassment, I know that there are many people sort of,

24   you know, potentially poised on their mute button to

25   supplement or add points of view or dimensionality or

Page 10

1    corrections.  In the end, I actually think I got away pretty

2    unscathed last week, talking for about five hours

3    summarizing things.  Hopefully I won't take more slings and

4    arrows today.  But here is sort of how I think the key

5    parties in the case think about this.

6           Purdue stopped detailing entirely in very early

7    2018.  Its entire sales force was released, and it ceased

8    promoting opioids as of a date that was well before the

9    position date and will ultimately be years before the

10   effective date, if you assume a late 2021, or unfortunately

11   if it slips a little bit -- we certainly hope it will not --

12   you know, possibly early 2022 emergence date.  That will be

13   four years since Purdue last promoted opioids.

14          And I think that the view of many very

15   sophisticated core parties involved in this case is that

16   there are no futures claims, period.  This is not,

17   obviously, something like asbestos with a (indiscernible)

18   period.  I'm not going to get into it more than that.  but

19   obviously, as the Court is aware, there are many, many ad

20   hoc groups in this case who each advocated for their

21   client's position, and that is not one of the, I think, 11

22   or So, groups that exist.

23          And so, you know, there was a strong view that

24   said we should just put on a case at confirmation that

25   explains that there just aren't future claims in this case,

Page 11

1    due to the nature of this situation.  And we actually are

2    going to be doing that.  But because we're a conservative

3    lot and we don't like to take chances and leave things, you

4    know, potentially with a gap that could become problematic,

5    a bunch of analysis was done, frankly, by different parties.

6            And an agreement in principle has been reached,

7    such that if it turns out -- and I should also mention that

8    since 2018, the volume of the Debtors' prescriptions have

9    been plummeting year-over-year for a variety of reasons.

10   And so, you know, the number of new prescriptions and new

11   patients and things like that has also likewise been

12   dropping very, very substantially.  We discussed at prior

13   hearings that Purdue, on an RX basis, has a much, much, much

14   smaller fraction of the prescription opiate market than I

15   think anybody, certainly me as previously uninvolved layman,

16   ever would have believed.

17           And So, after working with the Ad Hoc Committee of

18   Consenting States and the PIs themselves, who obviously have

19   done all sorts of analysis on both sides, and the Debtors'

20   internal analysis and consulting -- I talk usually many,

21   many times a week with Mr. Preis, who is the spearhead of

22   the UCC -- we're ending up at an agreement in principle

23   level arrangement that we are going to race to document --

24   is that there will be either a sub-trust or a separate trust

25   under the PI trust, funded with $5 million that will be

Page 12

1    there and will be impermeable.  That will be the place to

2    which future claims are channeled.

3              And of course, obviously, as the Court knows, a

4    future claim is a claim that...  Well, let me do this.  I

5    don't want to get into definitions because that's a

6    complicated topic on which people could differ.  So, let me

7    say it like this.

8              There are claims that are prepetition in nature

9    that are barred by the date.  There are clearly claims that

10   arise for the first time after the effective date, that if

11   they are triggered by the conduct of NewCo itself, right --

12   if NewCo goes out and punches somebody in the face, clearly

13   that is a post-effective date new claim against the

14   successor entity.

15             And then there is sort of potential twilight in

16   some cases of claims that arose prior to the petition date,

17   but you know, essentially could not have brought in or

18   excused from being brought until after the effective date,

19   or after the bar date -- I guess it could be either one.

20   Claims that many, many sophisticated people in this case

21   believe is a (indiscernible).

22             But in case someone does come along and attempt to

23   prove such claim, there will be a $5 million fund set up,

24   with trust distribution procedures and a mechanic.

25   Obviously, in the first instance, this Court will have to

Page 13

1   decide whether a claim that's brought is a prepetition

2   claim, a prepetition claim that missed the bar date, for

3   which there is no excusable neglect.  Obviously, if there is

4   excusable neglect, then it's a regular PI claim and it could

5   have been brought by the bar date, but there is excusable

6   neglect.

7           Or if it's a true futures claim, in which case it

8   goes into this newly created trust or sub-trust, which is

9   impermeable.  It's the sole source of recovery for this

10  hypothetical very small class.  Or obviously, potentially,

11  as I said, if NewCo itself goes out and causes brand-new

12  harm to someone, then it's not a futures claim at all.  It's

13  just a new claim that arises after the effective date.

14          And So, the very good news is that the AHC has

15  agreed to fund this new either sub-trust or separate trust,

16  and the PI folks have agreed to administer it, pursuant to a

17  TDP-BB sort of analogous to the existing (indiscernible)

18  TDP.  And I think the parties will be ready to show at

19  confirmation that we all believe that $5 million is

20  sufficient to provide hypothetical futures that we don't

21  actually believe exist, with treatment that is similar to

22  the treatment that would be provided, or is going to be

23  provided, to valid prepetition PIs under the main PI TDP.

24          And so, again, I know that's a lot of mouthful

25  without a document in front of the Court, but that was one

Page 14

1   of the things that was important to get resolved, including,

2   frankly, with respect to Sackler facing issues So, that

3   there is a potential home for a hypothetical category of

4   claims that, again, as this Court knows much better than I

5   do, many, many cases don't have any provision for futures,

6   because unless you actually believe that futures exist and

7   are a thing with which one has to deal, you don't have it at

8   all.

9        There's some cases, you know, obviously asbestos

10  cases, where there's a known long latency period where you

11  know perfectly well that futures are a very serious issue.

12  And that's why although it is not provided for statutorily

13  outside the asbestos context, when 524 was drafted there was

14  provision for the future, given the terrible nature of meSo,

15  and its often multi-year or multi-decade latency period.

16       Obviously, when we were talking about this at

17  confirmation, Your Honor, we will once again be hearing in

18  spades from Mr. McClammy and his witnesses, because there is

19  a reason that we spent more on noticing and accepted

20  basically every comment from every creditor group of

21  virtually any kind in order to -- I think the number was --

22  you know, we touched every single person in America, you

23  know, almost like 5.9 times.  And So, the notion that

24  someone, you know, didn't have notice and is excused and

25  still has a claim that relates to prepetition, for reasons

Page 15

1    we will explain then, you know, we are comfortable.

2           But again, that's not today's issue, because as we

3    discussed at some length last week, today is not the

4    confirmation hearing.  Today is the disclosure statement

5    hearing, and we thought it very important, you know,

6    ultimately to have as part of our solicitation materials

7    some sort of, you know, failsafe in emergency break-open

8    sub-trust mechanic, in case to everybody's surprise there

9    was ultimately a group of futures that had provable claims.

10          So, you know, attorneys fees we need to figure out

11   between now and tomorrow at 3:00.  You know, I wish it were

12   behind me, frankly, as I've said last week, this is my first

13   mass tort bankruptcy where things like this arise in spades.

14   And there are many parties working on it, and hopefully the

15   confusions and gaps and sometimes chasms of misperception

16   continue to narrow, and hopefully that will be resolved.  If

17   not, I predict it will be last issue standing, because I

18   think everything else I see a pathway to getting done by

19   3:00, and hopefully, you know, later tonight, when we sort

20   of all rub our foggy eyes, you know, we'll also find the

21   pathway on that.

22          With respect to last week's issues, Your Honor,

23   the only issue that I know of where I think we and the

24   objector do not agree with just what the Court ruled last

25   week actually relates to Mr. Lipson.  As a reminder, Mr.

Page 16

1    Lipson represents a single PI claimant.  He is counsel of

2    record to one person.  And he took issue last week with the

3    trust distribution procedures that the actual lawyers

4    representing the PI Committee and the MAS Committee and the

5    states and the Debtors and the UCC had all agreed on.  I

6    think that we're reading the transcript a little bit

7    differently about what the Court ordered.

8            And So, I was going to turn it over, I believe, to

9    Mr. McClammy to explain what we sort of -- we believe the

10   outcome was.  I know the folks from my case are also sort of

11   standing by.  Because it's actually not the Debtors' really

12   TDP.  I mean, you know, nominally, it's attached to our

13   plan.

14           But obviously, it is the Plaintiffs themselves who

15   are kind of, you know, the do shares for their own sub-

16   trust, who work this out with a great many other parties.

17   And I assume they will also jump in and explain why we're

18   pretty confident that we did what we think the Court, you

19   know, ultimately sort of expressed a view on.

20           But Mr. McClammy, if I could ask you to step in?

21   I believe -- again, when this is done, the Debtors will stop

22   talking and ask anyone else to weigh in after Mr. McClammy

23   and White & Case and Mr. Lipson and others finish on the

24   sub-issue.

25           But I do not, as I sit here right now, have

Page 17

1    affirmative knowledge that there is a disagreement between

2    the Debtors in any other party with respect to the documents

3    we've distributed and redistributed and redistributed,

4    trying to get closer and closer to peace, except for the

5    issues that I just finished cataloguing that I know are

6    still open and we somehow have to find a way through the

7    thicket on before tomorrow's hearing.

8              THE COURT:  Okay.

9              MR. HUEBNER:  So, Mr. McClammy, if I could ask you

10   to pick up the microphone?

11             MR. MCCLAMMY:  Thank you.  Good afternoon, Your

12   Honor.  Jim McClammy, of Davis Polk, on behalf of the

13   Debtors.  Are you able to hear me all right?

14             THE COURT:  Yes.  Fine, thanks.

15             MR. MCCLAMMY:  Thank you.  As Your Honor will

16   recall, we had a question about the TDPs, the trust

17   distribution procedures governing the personal injury and

18   the non-NAS and the NAS personal injury trust and need to

19   select what you are going to opt out of, essentially the

20   more streamlined trust distribution procedures, and pursue

21   claims in the tort system.  And if you fail to fill out a

22   form, whether or not that meant that you would not be

23   entitled to any distribution.

24             As we were reviewing the transcript and hearing

25   Your Honor's comments, our takeaway was that we needed to

1    make sure that it was clear, you know, to the extent that

2    people needed to fill out an additional form and they were

3    going to be provided, you know, essentially 150 days from

4    this time to do that.  If they were not going to have the

5    ability to recover, if they failed to fill out that form, we

6    needed to make that clear in the document.  And efforts have

7    been made to make that clearer in the disclosure statement.

8           And I believe Mr. Lipson's view is that there

9    should not be -- that the failure to fill out that form

10   should not be any bar to recovery; that essentially, people

11   should be determined to have not opted out.

12          But we did go back and look at the trust

13   distribution procedures and also followed up with counsel

14   for the Ad Hoc Committee of Individual Victims, and it is an

15   important part of, you know, really the administrative

16   process and protecting against, you know, the burden and the

17   costs that can consume these trusts.

18          And I will turn it over to Mr. Shore in a minute,

19   but as we see it, it's not much different that asking a

20   party to, you know, submit additional information.  And the

21   proof of claim forms are clear that parties may be asked to

22   submit additional information in order to proceed with their

23   claims.  And in the absence of having some of that

24   additional information, it may in fact be impossible to

25   process or more costly to process.

1           So, it is a provision that we thought that if we

2   disclosed that fact clearly, that if you failed to, you

3   know, submit this form, especially with the amount of time

4   that people are given to submit the form, that that is

5   reasonable under the circumstances.

6           But perhaps I'll turn it over to Mr. Shore --

7           THE COURT: Well no, why don't you --

8           MR. MCCLAMMY: -- on behalf of the Individual Ad

9   Hoc --

10           THE COURT: Why don't I hear from Mr. Lipson first

11   and then I may or may not need to hear from Mr. Shore.

12   Because I remember this discussion quite well.

13           MR. MCCLAMMY: Thank you, Your Honor.

14           THE COURT: Okay.

15           MR. LIPSON: Thank you, Your Honor. This is

16   Jonathan Lipson, for Peter Jackson. Can you hear and see

17   me?

18           THE COURT: Yes. Fine, thanks.

19           MR. LIPSON: As Debtors' counsel said, we objected

20   in part because it appeared to us that a failure to

21   supplement a timely filed claim would result in the

22   disallowance of a claim. And our position was that under

23   502(a) and Rule 2007, if the Debtors wish to disallow a

24   claim, there's a procedure for doing that. But otherwise,

25   properly timely filed claims are deemed allowed.

1          My understanding is that it appears, from what I

2     received last night, the Debtors have in fact enhanced the

3     notice of the fact that a failure to supplement will result

4     in disallowance.  But they have not changed fact that they

5     are doing what I thought this Court had instructed last

6     week, which was to say if you do nothing, you are in one or

7     the other.

8          For example, if you do nothing, you would have

9     been deemed to choose the arbitration pathway.  I think that

10    is separate from what happens if the creditor simply fails

11    to provide information.  They clearly need a mechanism for

12    dealing with that, but I don't think that should be -- that

13    should result in automatic disallowance, according to the

14    (indiscernible) that they provided.

15          THE COURT:  Okay.  Well, I think where I came out,

16    in fact where I know I came out last, is that PI creditors

17    need to make one choice timely.  And depending on which

18    choice they make, they need to fill out the information

19    timely as well.

20          First they need to choose whether they elect the

21    Court system approach, or instead, if they don't make that

22    election, they effectively choose the streamlined

23    liquidation approach.

24          So, first, they need to, again, by the deadline,

25    choose the court system in which to liquidate their claim,

1    and they need to be told that if they don't do that, they

2    will be deemed to be in the other camp, which is the claims

3    procedures approach, which you've referred to as the

4    arbitration approach, although it's -- well, as shorthand,

5    we can refer to it as the arbitration approach.

6            They also need to be told that if they don't opt

7    into the court system approach, they have to comply with the

8    rules of the arbitration approach, and those rules include,

9    importantly, filling out the form and submitting it by the

10   deadline.  And their failure to do So, may result in the

11   disallowance of the claim, because those procedures govern

12   that approach, and it only works if people follow those

13   procedures.

14           So, I hope that makes it clear.  I'm assuming that

15   the trust -- if someone, you know, is hospitalized for 150

16   days and can't fill out the form, we'll give them an

17   extension.  But barring extraordinary circumstances like

18   that, people need to follow the form.  And that's, I mean,

19   file the form and follow the procedures, which is a standard

20   feature of PI liquidation procedures adopted by courts all

21   around the country, including by me.

22           You know, if they don't follow the steps, then the

23   trustee of the trust, or whoever is (indiscernible)

24   administering the process, can have the claim be disallowed.

25   They can say, I did follow the steps or have a really good

Page 22

1     reason why I haven't, but barring that or failing that,

2     their claim will be disallowed.

3              MR. LIPSON:  So, it would be, I guess, helpful for

4     me to hear from the Debtors or Mr. Shore how the revised

5     disclosure statement and plan do that.  I don't have a

6     blacklined either.  What I read looks slightly different.  I

7     don't think what I read said that you would be deemed to be

8     in the arbitration pathway.  It does say that if you don't

9     submit your forms within, I think, 60 days or 90 days of the

10    effective date, your claim is disallowed.

11             So, I'm not quite sure how it is that the plan

12    achieves what you just described.  So, it might be useful if

13    they can --

14             THE COURT:  Well, I don't think you -- look, if

15    you don't submit the form at all -- I'm sorry -- if you

16    don't select the election -- not the form, the election --

17    if you don't submit the election, then you're deemed to be

18    in what I'll refer to as the arbitration path.

19             But it's also clear that the consequence of not

20    submitting the form and not submitting the election means

21    your claim is going to be disallowed.  So, I think, you

22    know, that it is the case.

23             The only change from the earlier disclosure

24    statement was the elimination of the requirement, to the

25    extent it was in there, could -- oh, it was arguably

Page 23

1    ambiguous -- but assume it was in there, the elimination of

2    the requirement to fill out the form, if you elected to go

3    the court route.

4              MR. HUEBNER:  Yeah.  And then, Your Honor, if I

5    can help for a second.  Just to be clear, you know, Mr.

6    Lipson is one private letter in this capacity representing

7    one claimant.

8              THE COURT:  Right.

9              MR. HUEBNER:  I think we're pretty confident that

10   he's not going to miss the deadline on behalf of his client.

11   And I think language when we correct it when we have the

12   Court's ruling, you know, respectfully, this is not an

13   academic seminar --

14             THE COURT:  Well --

15             MR. HUEBNER:  -- where we should --

16             THE COURT:  I mean, I think it should be -- I

17   mean, whenever people have an election to make, it should be

18   spelled out to them.  But I think it should be clear now how

19   it should be spelled out.  I'm assuming it --

20             MR. HUEBNER:  Exactly.

21             THE COURT:  Right.

22             MR. HUEBNER:  And I think that when people see the

23   language tomorrow, they'll see that the potential ambiguity

24   is resolved, and hopefully, people will, you know, have

25   clear notice and, frankly, plenty of time to get it done.

1              As I said last week, to be clear, this is not the

2       Debtors' trying to do or take or limit the (indiscernible).

3       This is the PIs themselves --

4              THE COURT:  And look, Mr. Shore made the point

5       last week that there's a reason for having a deadline for

6       those procedures, which is the trust wants to get money out

7       to people promptly, and therefore --

8              MR. HUEBNER:  Exactly.

9              THE COURT:  -- the procedures are streamlined.

10      And I think the disclosure statement bends over backwards to

11      say that.  So, I'm assuming it'll be clear when I see it

12      tomorrow.

13             MR. HUEBNER:  Okay, sure.  Thank you, Your Honor.

14      So, now let me ask if there is anyone else -- I know this is

15      unorthodox, but we are trying to get things done with

16      114,000 parties here for the common benefit.  I don't know

17      of any other issues from last week, other than the ones that

18      I noticed with -- you know, with discrete objectors, that

19      are unresolved that the Court did not pass on.

20             We think it was sort of the thoughts at the end of

21      the hearing that the disclosure statement -- I believe the

22      Court used words to the effect of, you know, it does have

23      sufficient information, et cetera.  But I don't want anybody

24      to feel sort of, you know, that we mislead the Court, or

25      they were not provided with their day in court if something

1    is unresolved that we should be discussing.

2              MR. ROTHSTEIN:  Your Honor, this is Paul

3    Rothstein, for Dr. Masiowski, emergency room physician.

4              THE COURT:  All right.  Afternoon.

5              MR. ROTHSTEIN:  Good afternoon.  We received

6    documents at 9-9:30 last night and then we received more

7    documents 9:00 this morning.  I need additional time to

8    review the documents as it pertains to the hospital trust.

9    So, I'd like to reserve any objections that we may have.  I

10   would like until Friday, but I know you have a hearing

11   tomorrow at 3:00.

12             THE COURT:  Right.

13             MR. ROTHSTEIN:  So, I'd like until then to be able

14   to speak to those issues.

15             MR. HUEBNER:  Yeah, So, --

16             THE COURT:  I would urge you to do it before then.

17   But I mean, frankly, if I have a chance to review them

18   tomorrow, I'll be surprised if you haven't had enough time

19   with the time you've stated.  But you can raise them

20   tomorrow at 3:00.

21             MR. ROTHSTEIN:  Thank you, Your Honor.

22             THE COURT:  Okay.

23             MR. HUEBNER:  Yeah, Your Honor, that said, it goes

24   without saying that we are standing by to hear any concerns.

25   You know, most of us, frankly, were up all night again last

1    night.  And it's one discrete issue and we really would

2    prefer not to sort of have to deal with oral argument at the

3    hearing, if there are things that either we missed, or it

4    can be resolved.  So, just to be clear, we'll be up probably

5    through the night again, Mr. Rothstein, So, if you can find

6    us, please, this evening, we'd be there.

7              THE COURT:  Yeah, people should try to reach out

8    to the Debtors if they think that something isn't clear or

9    has not been addressed from the last hearing.

10             MR. TROOP:  Your Honor, Andrew Troop, for the

11   Nonconsenting States --

12             THE COURT:  Afternoon.

13             MR. TROOP:  -- (indiscernible).  I represent 25

14   claimants for over 614,000.  But they represent a lot of

15   people.  Your Honor, my only observation is -- and we'll

16   reach out the Debtors; we just thought I wasn't in there

17   yet.  We had understood you to instruct the Debtors to

18   include some additional detail about the Sacklers' wealth --

19             THE COURT:  The Sacklers' wealth?

20             MR. TROOP:  -- and issues involving --

21             THE COURT:  I mean, I think I heard you say the

22   Sacklers' wealth?

23             MR. TROOP:  Wealth.  Yes, Your Honor.

24             THE COURT:  Right.

25             MR. TROOP:  Right, Sacklers' wealth -- sorry --

Page 27

1    and some additional issues.  We didn't see any changes yet

2    in the disclosure statement.  But we assumed we were getting

3    (indiscernible) drafts, which is why we haven't reached out.

4    If there is not an understanding with the Debtors that

5    there's supposed to be some additional language, just email

6    me and let me know who I should talk to.

7              THE COURT:  Okay.  Well, I mean, clearly there was

8    going to be a reference.  I think the Debtors needed to

9    confirm what was the most -- you know, most recent reliable

10   reference.  So, I'm assuming that that'll be in there.

11             MR. HUEBNER:  Yeah.  Your Honor, we'll certainly

12   work with Mr. Troop and point him to things this afternoon.

13   I think that in fact the reference, and maybe even a cross-

14   reference -- I'm not (indiscernible) to the Congressional

15   release of the, you know, slightly outdated information.

16   And then obviously, everybody heard Mr. Joseph talk about

17   the fact that they'd brought down the information to be much

18   more current.  And that is (indiscernible) as well.

19             I think the Court's actual direction -- because I

20   actually didn't check the transcript on every single topic

21   as we were updating this third statement, was that the

22   Debtors say a little bit more about the factor that they and

23   others considered in doing the settlement and the payment

24   terms and the timing in light of the Sacklers' wealth.  And

25   I think that we in fact did do that.  But we'll certainly

Page 28

1    take another look.  We're obviously not going to

2    (indiscernible) fail to him address a single piece of

3    direction.

4              But to the extent that, for example, we had -- I

5    don't even know if this is true -- but as an example, if we

6    have nonpublic information about the exact current amount of

7    the Sacklers' wealth, I don't know that it's for us to

8    publish.  We had a colloquy last week.  The question that we

9    said -- what the world needs to know is what the Debtors and

10   others considered in cutting this deal against the

11   background of the numbers, not necessarily the numbers.  And

12   I believe we actually did do that.

13             But to be clear, we want to resolve every single

14   (indiscernible) objection.  We will take another look at the

15   transcript.  We will talk to Mr. Troop.  If there are other

16   things we can reasonably add, we are of course delighted to,

17   within the confines of the protective order and the other

18   sort of, you know, things governing this case, to which all

19   of us, I think -- you know, including Mr. Troop and

20   everybody -- are all subject.

21             THE COURT:  I don't think you have to take another

22   look at the transcript.  There should be more than just the

23   hyperlink.  I mean, there should be the Debtors', albeit

24   brief, discussion of their view of the aggregate wealth and

25   their assessment of how the various pods or buckets have

Page 29

1    been analyzed and dealt with in the term sheets.

2              MR. HUEBNER:  Yep.  Understood.  We'll check how

3    we built it up and we'll make sure that we figure it out to

4    the best of our abilities.

5              MR. TROOP:  Thank you, Your Honor.  Nothing else

6    from me.  Thank you, Your Honor.

7              THE COURT:  Okay.  All right.  I appreciate the

8    update.  I think -- I know you want to get everything out as

9    in the form where it's all done.  But I do need to look at

10   the changes before that 3:00 hearing.  So, I would suggest

11   to you that either you set a deadline to get everything out,

12   an internal deadline So, that I can review it, or

13   alternatively, you get me everything except, if you have,

14   you know, something left open and you can resolve it by

15   3:00, then you can summarize that to me at 3:00.  But

16   otherwise, I'd like to see the blacklined sometime well

17   before 3:00, like at least a couple hours before.

18              And on the attorneys fee point, again, I

19   appreciate this is an important issue and not just a

20   parochial issue for the professionals involved, but also an

21   issue for their clients and the other parties' clients,

22   since every dollar, obviously, on fees reduces dollars that

23   go to clients or go to abatement.  And that's not to say

24   that attorneys don't earn their fees.  Everyone knows

25   attorneys don't work for free.

1          But I would say, as I said last week, and as the

2     U.S. Trustee also said, that some of this may seem less

3     important to me, given 1129(a)(4) and the requirement for

4     court review ultimately of fees that are provided for

5     related to the case and the plan.  So, I appreciate people

6     want to negotiate this down to the last comma or decimal

7     point.  But there still will be a review by the Court under

8     1129(a)(4).

9          And as far as the future claims point, I

10    appreciate the update and the parties' work on this.  I just

11    want to make sure I understand one point.  Mr. Huebner, you

12    said that this money would go into the sub-trust, and it

13    would be impermeable.  I'm assuming, though -- maybe you

14    should tell me if I'm wrong -- that if some period goes by -

15    - and I don't know what that will be, but I think the

16    parties might need to focus on it -- and the money is still

17    there and it's not been claimed or it's not been allocated,

18    it should go into the PI.  It should go into whoever gave

19    the money in the first place, which I think was --

20          MR. HUEBNER:  (indiscernible) sir.

21          THE COURT:  Yeah.

22          MR. HUEBNER:  Is it all right -- apologies -- what

23    I meant impermeable -- what I meant was that to the extent

24    that there were futures, they could not invade other trusts

25    and other peoples' trust.

1          THE COURT:  Right.

2          MR. HUEBNER:  The way we structured it, I believe

3    is that after a six-year period, there is a reversion of any

4    remaining funds into the general PI trust, which obviously

5    would then spray it out, including with a potential

6    supplemental distribution to futures, if any, So, that the

7    treatment was mathematically identical.

8          THE COURT:  Okay.

9          MR. HUEBNER:  I believe --

10          THE COURT:  That's fine.

11          MR. HUEBNER:  -- (indiscernible).  But we --

12          THE COURT:  I just, you know -- given that 3:00

13    tomorrow afternoon really is a hard deadline, I just wanted

14    to make sure that the parties were focusing on that point.

15          MR. HUEBNER:  Yeah.  I mean, the truth is, the

16    second option was to actually give it to your clerks.  They

17    lost by one vote.  So, unfortunately, their version is going

18    into the main PI trust.

19          THE COURT:  Okay.  All right.  Does anyone else

20    have anything more to say?

21          MR. ECKSTEIN:  This is Kenneth Eckstein, of Kramer

22    Levin, on behalf of the Ad Hoc Committee.  Just if I can

23    briefly.  On that last point, we did, I think, reach a

24    sensible resolution, and we had anticipated the issue of the

25    revision and I think in light of the fact that the PI sub-

Page 32

1    trust is going to take responsibility for essentially

2    administering the claims and dealing with them as part of

3    the agreement, we agreed to leave the residual to the

4    overall PI trust if there is any, and as Mr. Huebner

5    indicated, disburse it out to whatever claims are ultimately

6    allowed, including any subsequent claims to the extent they

7    are ultimately allowed as well.

8            THE COURT:  Right.

9            MR. ECKSTEIN:  The only other point I would like

10   to just mention is I think we're all quite mindful of the

11   fact that 1129(a)(4) requires the Court to find

12   reasonableness as to fees that are governed by the section.

13   We are trying to develop what hopefully will be a hopefully

14   be a sensible and workable structure to ensure that

15   1129(1)(4) can be met, yet at the same time a process that

16   is consistent with the types of fees we're dealing with.

17   Because we're not dealing with the (indiscernible)

18   professionals.

19           As Your Honor noted the other day, this doesn't

20   (indiscernible) with the firms that are representing the Ad

21   Hoc Committee or the MSGE group, but there are very

22   complicated fee structures that were in place long before

23   this case began that are involved in contractual

24   relationships between clients and lawyers, and it involves

25   states and municipalities, as well as many other

Page 33

1    constituencies.

2            So, I just want to assure Your Honor this is not

3    about trying to figure out the right numbers as much as

4    making sure we come up with the right process that will be

5    workable at confirmation.

6            THE COURT:  Right.  That's fine.  Maybe I was

7    saying this because although all of that work is really to

8    the good and commendable, if for no other reason that it

9    reflects the due diligence that the parties have put into

10   all of this, what people -- the risk that people run if they

11   don't reach agreement on those procedures is a much more

12   open-ended review by the Court under 1129(a)(4).  So, I

13   would urge you all to reach agreement.

14           MR. ECKSTEIN:  I'm very -- I appreciate that Your

15   Honor.  We'll going to make sure that we do that.

16           THE COURT:  Okay.  Very well.  Okay.  All right.

17   Well, this may be the last thing you want to hear, but I'm

18   happy to let you get back to your round-the-clock work.  So,

19   thank you, all.  And I'll see you tomorrow at 3:00 as well.

20           (Whereupon these proceedings were concluded at

21   3:45 PM)

22

23

24

25

Page 34

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya Ledanski Hyde

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2021.06.04 15:54:38 -04'00'

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 4, 2021

[& - automatic]                                                                    Page 1

| & | 5 |
|---|---|
| **&**   3:3,11 5:23 16:23 | **5**   11:25 12:23 13:19 |

| 1 |
|---|
| **5.9**   14:23 |
| **502**   19:23 |
| **524**   14:13 |
| **52nd**   4:3 |

**1**   1:16 32:15
**10017**   3:6
**10019**   4:4
**10020**   3:15
**10601**   1:14
**11**   5:10 10:21
**1129**   30:3,8 32:11
32:15 33:12
**114,000**   24:16
**11501**   34:23
**1221**   3:14
**15**   8:7
**150**   18:3 21:15
**19-23649**   1:3
**1st**   3:21

| 2 |
|---|

**2007**   19:23
**2018**   10:7 11:8
**2021**   1:16 10:10
34:25
**2022**   10:12
**248**   1:13
**2489**   2:6,13
**25**   26:13
**26**   2:1

| 3 |
|---|

**300**   1:13 34:22
**31**   4:3
**32601**   3:22
**330**   34:21
**3:01**   1:17
**3:45**   33:21

| 4 |
|---|

**4**   30:3,8 32:11,15
33:12 34:25
**450**   3:5

| 6 |
|---|

**60**   22:9
**614,000**   26:14
**626**   3:21

| 9 |
|---|

**9-9:30**   25:6
**90**   22:9
**9:00**   25:7

| a |
|---|

**abatement**   29:23
**abilities**   29:4
**ability**   18:5
**able**   9:16,18 17:13
25:13
**absence**   6:4 18:23
**academic**   23:13
**accepted**   14:19
**accurate**   34:4
**achieves**   22:12
**action**   8:3
**actual**   16:3 27:19
**ad**   3:12 4:2 10:19
11:17 18:14 19:8
31:22 32:20
**add**   9:25 28:16
**additional**   5:10
18:2,20,22,24
25:7 26:18 27:1,5
**address**   28:2
**addressed**   26:9
**adequacy**   2:2,9
**administer**   13:16
**administering**
21:24 32:2

**administrative**
18:15
**adopted**   21:20
**advocated**   10:20
**affirmative**   17:1
**afternoon**   5:2
17:11 25:4,5
26:12 27:12 31:13
**aggregate**   28:24
**agree**   15:24
**agreed**   5:7 7:2,20
8:14,16,18,21 9:1
13:15,16 16:5
32:3
**agreement**   7:1 9:8
11:6,22 32:3
33:11,13
**agreements**   9:1
**ahc**   13:14
**ahead**   5:21
**al**   5:3
**albeit**   28:23
**allocate**   8:20
**allocated**   30:17
**allowed**   19:25
32:6,7
**alternatively**
29:13
**ambiguity**   23:23
**ambiguous**   23:1
**amended**   5:9
**america**   14:22
**americas**   3:14
**amount**   19:3 28:6
**analogous**   13:17
**analysis**   11:5,19
11:20
**analyzed**   29:1
**andrew**   4:6 26:10
**anew**   9:5
**anticipated**   31:24
**anybody**   11:15
24:23

**apologies**   30:22
**apologize**   6:11
**appeared**   19:20
**appears**   20:1
**appreciate**   29:7
29:19 30:5,10
33:14
**approach**   20:21
20:23 21:3,4,5,7,8
21:12
**approval**   5:8
**approve**   2:2,9
**arbitration**   20:9
21:4,5,8 22:8,18
**argenziano**   6:9
**arguably**   22:25
**argument**   26:2
**arises**   13:13
**arose**   12:16
**arrangement**
11:23
**arrows**   10:4
**art**   1:25
**asbestos**   10:17
14:9,13
**asked**   18:21
**asking**   18:19
**assessment**   28:25
**assume**   10:10
16:17 23:1
**assumed**   27:2
**assuming**   5:15
21:14 23:19 24:11
27:10 30:13
**assure**   33:2
**attached**   16:12
**attempt**   12:22
**attorneys**   3:4,12
3:20 4:2 8:2 15:10
29:18,24,25
**august**   9:15
**automatic**   20:13

**avenue** 3:5,14
**aware** 10:19

**b**

**b** 1:21
**back** 9:21 18:12
  33:18
**background**
  28:11
**backwards** 24:10
**ballots** 2:4,11
**bankruptcy** 1:1
  1:12,23 15:13
**bar** 12:19 13:2,5
  18:10
**barred** 12:9
**barring** 21:17
  22:1
**basically** 6:15
  14:20
**basis** 7:9 11:13
**bb** 13:17
**began** 32:23
**behalf** 5:24 17:12
  19:8 23:10 31:22
**belief** 6:25
**believe** 8:11,16
  12:21 13:19,21
  14:6 16:8,9,21
  18:8 24:21 28:12
  31:2,9
**believed** 11:16
**bends** 24:10
**benefit** 8:4 24:16
**best** 29:4
**better** 6:9 14:4
**bit** 10:11 16:6
  27:22
**blacklined** 5:14
  22:6 29:16
**brand** 13:11
**break** 15:7
**brief** 28:24

**briefly** 31:23
**brought** 12:17,18
  13:1,5 27:17
**buckets** 28:25
**built** 29:3
**bunch** 6:21 11:5
**burden** 18:16
**button** 9:24

**c**

**c** 3:1 5:1 34:1,1
**call** 9:7
**camp** 21:2
**capacity** 23:6
**careful** 5:12
**case** 1:3 3:11 5:5
  8:12 10:5,15,20
  10:24,25 12:20,22
  13:7 15:8 16:10
  16:23 22:22 28:18
  30:5 32:23
**cases** 12:16 14:5,9
  14:10
**cataloguing** 17:5
**category** 14:3
**causes** 13:11
**ceased** 10:7
**certain** 2:5,12
**certainly** 10:11
  11:15 27:11,25
**certified** 34:3
**cetera** 24:23
**chance** 25:17
**chances** 11:3
**change** 22:23
**changed** 6:21 20:4
**changes** 5:6 7:2
  27:1 29:10
**channeled** 12:2
**chapter** 5:9
**chasms** 15:15
**check** 27:20 29:2
**choice** 20:17,18

**choose** 20:9,20,22
  20:25
**chop** 8:1
**christopher** 3:17
**circumstances**
  19:5 21:17
**claim** 12:4,4,13,23
  13:1,2,2,4,7,12,13
  14:25 18:21 19:21
  19:22,24 20:25
  21:11,24 22:2,10
  22:21
**claimant** 16:1
  23:7
**claimants** 26:14
**claimed** 30:17
**claims** 7:24 10:16
  10:25 12:2,8,9,16
  12:20 14:4 15:9
  17:21 18:23 19:25
  21:2 30:9 32:2,5,6
**class** 8:3 13:10
**clear** 6:7,8 8:23
  9:6 18:1,6,21
  21:14 22:19 23:5
  23:18,25 24:1,11
  26:4,8 28:13
**clearer** 18:7
**clearly** 5:19 6:6
  12:9,12 19:2
  20:11 27:7
**clerks** 31:16
**client** 23:10
**client's** 10:21
**clients** 29:21,21
  29:23 32:24
**clock** 33:18
**closer** 17:4,4
**cognize** 9:5
**colloquy** 28:8
**come** 12:22 33:4
**comfort** 9:12,19

**comfortable** 9:9
  15:1
**coming** 6:6
**comma** 30:6
**commendable**
  33:8
**comment** 14:20
**comments** 17:25
**committee** 11:17
  16:4,4 18:14
  31:22 32:21
**common** 8:4
  24:16
**completely** 5:12
**complexities** 8:9
**complicated** 12:6
  32:22
**comply** 21:7
**concerns** 25:24
**concluded** 33:20
**conduct** 12:11
**conference** 5:25
**confident** 16:18
  23:9
**confines** 28:17
**confirm** 27:9
**confirmation** 8:15
  10:24 13:19 14:17
  15:4 33:5
**confusions** 15:15
**congressional**
  27:14
**connection** 2:5,12
**consenting** 4:2
  11:18
**consequence**
  22:19
**conservative** 11:2
**considered** 27:23
  28:10
**consistent** 32:16
**constituencies**
  33:1

[consulting - elect]                                                                                    Page 3

consulting  11:20
consume  18:17
context  14:13
contingency  8:20
continuance  2:1
continue  15:16
contractual  32:23
core  10:15
correct  23:11
corrections  10:1
cost  7:16
costly  18:25
costs  18:17
counsel  5:16 16:1
  18:13 19:19
country  21:21
  34:21
couple  29:17
course  12:3 28:16
court  1:1,12 5:2
  5:20 6:17 7:7,22
  9:14 10:19 12:3
  12:25 13:25 14:4
  15:24 16:7,18
  17:8,14 19:7,10
  19:14,18 20:5,15
  20:21,25 21:7
  22:14 23:3,8,14
  23:16,21 24:4,9
  24:19,22,24,25
  25:4,12,16,22
  26:7,12,19,21,24
  27:7 28:21 29:7
  30:4,7,21 31:1,8
  31:10,12,19 32:8
  32:11 33:6,12,16
court's  23:12
  27:19
courts  21:20
created  13:8
creditor  14:20
  20:10

creditors  20:16
cross  27:13
curlicues  8:9
current  27:18
  28:6
cutting  28:10

**d**

d  1:22 5:1
date  5:13 10:8,9
  10:10,12 12:9,10
  12:13,16,18,19
  13:2,5,13 22:10
  34:25
dates  2:5,12
davis  3:3 5:23
  17:12
day  24:25 32:19
days  7:16 8:8 18:3
  21:16 22:9,9
deadline  20:24
  21:10 23:10 24:5
  29:11,12 31:13
deal  14:7 26:2
  28:10
dealing  20:12
  32:2,16,17
dealt  29:1
debtor  1:9 3:4
debtors  2:9 5:4,8
  5:16,24 7:11 8:12
  8:14 9:9 11:8,19
  16:5,11,21 17:2
  17:13 19:19,23
  20:2 22:4 24:2
  26:8,16,17 27:4,8
  27:22 28:9,23
decade  14:15
decide  13:1
decimal  30:6
deemed  19:25
  20:9 21:2 22:7,17
definitions  12:5

delighted  28:16
depending  20:17
describe  7:22
described  22:12
detail  26:18
detailed  9:7
detailing  10:6
determined  18:11
develop  32:13
differ  12:6
different  11:5
  18:19 22:6
differently  16:7
diligence  33:9
dimensionality
  9:25
directed  7:3
direction  27:19
  28:3
disagreement
  17:1
disallow  19:23
disallowance
  19:22 20:4,13
  21:11
disallowed  21:24
  22:2,10,21
disburse  32:5
disclosed  19:2
disclosure  2:2,10
  5:6,9,14 6:17 9:2
  9:16 15:4 18:7
  22:5,23 24:10,21
  27:2
discrete  24:18
  26:1
discuss  5:6
discussed  9:3
  11:12 15:3
discussing  25:1
discussion  19:12
  28:24

distributed  17:3
distributing  6:23
distribution  12:24
  16:3 17:17,20,23
  18:13 31:6
district  1:2
docket  6:4
document  2:13
  11:23 13:25 18:6
documents  6:20
  6:23 7:1 17:2 25:6
  25:7,8
doing  11:2 19:24
  20:5 27:23
dollar  29:22
dollars  29:22
dr  3:20 25:3
drafted  14:13
drafts  27:3
drain  1:22 5:2
dropping  11:12
due  11:1 33:9

**e**

e  1:21,21 3:1,1 5:1
  5:1 34:1
earlier  7:21 22:23
early  10:6,12
earn  29:24
ecf  2:6
eckstein  31:21,21
  32:9 33:14
ecro  1:25
effect  24:22
effective  10:10
  12:10,13,18 13:13
  22:10
effectively  20:22
efforts  18:6
either  5:7 7:2
  11:24 12:19 13:15
  22:6 26:3 29:11
elect  20:20

**elected** 23:2
**election** 20:22
  22:16,16,17,20
  23:17
**elimination** 22:24
  23:1
**email** 27:5
**emails** 8:6
**embarrassment**
  9:23
**emergence** 10:12
**emergency** 15:7
  25:3
**ended** 9:22 33:12
**enhanced** 20:2
**ensure** 32:14
**entire** 10:7
**entirely** 10:6
**entitled** 17:23
**entity** 12:14
**entry** 8:14
**especially** 19:3
**essentially** 7:8
  9:11 12:17 17:19
  18:3,10 32:1
**et** 5:3 24:23
**evening** 26:6
**everybody** 27:16
  28:20
**everybody's** 15:8
**exact** 28:6
**exactly** 6:2 23:20
  24:8
**example** 20:8 28:4
  28:5
**exception** 6:25
  8:17
**excusable** 13:3,4
  13:5
**excused** 12:18
  14:24
**executable** 9:1

**exist** 10:22 13:21
  14:6
**existing** 13:17
**explain** 15:1 16:9
  16:17
**explains** 10:25
**expressed** 16:19
**extension** 21:17
**extensive** 6:14
**extent** 18:1 22:25
  28:4 30:23 32:6
**extraordinary**
  9:14 21:17
**eyes** 15:20

**f**

**f** 1:21 34:1
**face** 12:12
**facing** 7:12 9:19
  14:2
**fact** 18:24 19:2
  20:2,3,4,16 27:13
  27:17,25 31:25
  32:11
**factor** 27:22
**fail** 17:21 28:2
**failed** 18:5 19:2
**failing** 22:1
**fails** 20:10
**failsafe** 15:7
**failure** 18:9 19:20
  20:3 21:10
**far** 30:9
**feature** 21:20
**fee** 29:18 32:22
**feel** 24:24
**fees** 8:2 15:10
  29:22,24 30:4
  32:12,16
**felt** 8:13
**fiduciaries** 9:10
**figure** 15:10 29:3
  33:3

**file** 21:19
**filed** 6:16,22
  19:21,25
**fill** 17:21 18:2,5,9
  20:18 21:16 23:2
**filling** 21:9
**final** 8:25 9:15
**find** 7:24 15:20
  17:6 26:5 32:11
**fine** 17:14 19:18
  31:10 33:6
**finish** 16:23
**finished** 17:5
**firms** 32:20
**first** 12:10,25
  15:12 19:10 20:20
  20:24 30:19
**fits** 8:5
**five** 10:2
**fl** 3:22
**flexibility** 9:14
**focus** 30:16
**focusing** 31:14
**foggy** 15:20
**folks** 13:16 16:10
**follow** 21:12,18
  21:19,22,25
**followed** 18:13
**force** 10:7
**foregoing** 34:3
**form** 6:17 17:22
  18:2,5,9 19:3,4
  21:9,16,18,19
  22:15,16,20 23:2
  29:9
**forms** 2:4,11
  18:21 22:9
**four** 10:13
**fraction** 11:14
**frankly** 8:20 11:5
  14:2 15:12 23:25
  25:17,25

**free** 29:25
**frequently** 8:7
**friday** 25:10
**front** 13:25
**fully** 9:5
**fund** 8:4 12:23
  13:15
**funded** 11:25
**funds** 31:4
**further** 5:5
**future** 10:25 12:2
  12:4 14:14 30:9
**futures** 7:23 9:20
  10:16 13:7,12,20
  14:5,6,11 15:9
  30:24 31:6

**g**

**g** 5:1
**gainesville** 3:22
**gap** 11:4
**gaps** 15:15
**general** 31:4
**getting** 6:5 15:18
  27:2
**give** 5:10 7:13,22
  21:16 31:16
**given** 9:15 14:14
  19:4 30:3 31:12
**go** 5:20 18:12 23:2
  29:23,23 30:12,18
  30:18
**goes** 12:12 13:8
  13:11 25:23 30:14
**going** 7:21,24 8:6
  9:2 10:18 11:2,23
  13:22 16:8 17:19
  18:3,4 22:21
  23:10 27:8 28:1
  31:17 32:1 33:15
**good** 5:2 6:2,13
  8:22 13:14 17:11
  21:25 25:5 33:8

**govern** 21:11
**governed** 32:12
**governing** 17:17
  28:18
**graciousness** 9:14
**great** 7:15 16:16
**group** 3:12 4:2
  14:20 15:9 32:21
**groups** 8:4 10:20
  10:22
**guess** 7:14 12:19
  22:3
**guidance** 6:16

**h**

**half** 9:12
**hand** 7:12,12
**happens** 20:10
**happy** 7:15 33:18
**hard** 31:13
**harm** 13:12
**haven't** 27:3
**hc** 7:11
**headphones** 6:5
  6:12
**hear** 5:20 6:19 9:4
  17:13 19:10,11,16
  22:4 25:24 33:17
**heard** 5:19 9:5
  26:21 27:16
**hearing** 2:1,1,8,8
  2:8 5:8,13 6:14
  8:18 9:16 14:17
  15:4,5 17:7,24
  24:21 25:10 26:3
  26:9 29:10
**hearings** 9:6
  11:13
**help** 23:5
**helpful** 7:22 22:3
**hoc** 3:12 4:2 10:20
  11:17 18:14 19:9
  31:22 32:21

**home** 7:24 14:3
**hon** 1:22
**honor** 5:18,22 6:7
  9:20 14:17 15:22
  17:12,15 19:13,15
  23:4 24:13 25:2
  25:21,23 26:10,15
  26:23 27:11 29:5
  29:6 32:19 33:2
  33:15
**honor's** 17:25
**hope** 10:11 21:14
**hoped** 8:18
**hopefully** 9:16
  10:3 15:14,16,19
  23:24 32:13,13
**hospital** 25:8
**hospitalized**
  21:15
**hour** 6:14 8:7
**hours** 10:2 29:17
**huebner** 3:8 5:22
  5:23 6:11 17:9
  23:4,9,15,20,22
  24:8,13 25:15,23
  27:11 29:2 30:11
  30:20,22 31:2,9
  31:11,15 32:4
**hyde** 2:25 34:3,8
**hyperlink** 28:23
**hypothetical** 7:23
  13:10,20 14:3

**i**

**identical** 31:7
**ii** 2:3,10
**iii** 2:3,11
**impermeable** 12:1
  13:9 30:13,23
**important** 14:1
  15:5 18:15 29:19
  30:3
**importantly** 21:9

**imposed** 5:7
**impossible** 18:24
**include** 21:8
  26:18
**including** 14:1
  21:21 28:19 31:5
  32:6
**indicated** 32:5
**indiscernible** 5:25
  5:25 6:5 7:24
  10:17 12:21 13:17
  20:14 21:23 24:2
  26:13 27:3,14,18
  28:2,14 30:20
  31:11 32:17,20
**individual** 3:12
  18:14 19:8
**information** 2:2,9
  18:20,22,24 20:11
  20:18 24:23 27:15
  27:17 28:6
**injury** 17:17,18
**instance** 12:25
**instruct** 26:17
**instructed** 20:5
**intercreditor** 7:8
  7:14 9:21
**internal** 11:20
  29:12
**invade** 30:24
**involved** 10:15
  29:20 32:23
**involves** 32:24
**involving** 26:20
**issue** 6:25 7:5,23
  7:25 8:2 9:11
  14:11 15:2,17,23
  16:2,24 26:1
  29:19,20,21 31:24
**issues** 5:5,11 7:5,8
  7:9,14,19 8:10,12
  9:12,17,21 14:2
  15:22 17:5 24:17

25:14 26:20 27:1
**it'll** 24:11
**iv** 2:5,12

**j**

**j** 3:17
**jackson** 19:16
**james** 3:9
**jim** 17:12
**joint** 5:9
**jonathan** 19:16
**joseph** 6:9 27:16
**judge** 1:23 5:2 7:3
**jump** 16:17
**june** 1:16 34:25

**k**

**kenneth** 31:21
**key** 10:4
**kind** 7:15 8:4
  14:21 16:15
**know** 5:4 7:10 8:6
  8:9,10 9:4,23,24
  10:12,23 11:4,10
  12:17 13:24 14:9
  14:11,22,23,24
  15:1,5,7,10,11,19
  15:20,23 16:10,12
  16:15,19 17:5
  18:1,3,15,16,20
  19:3 20:16 21:15
  21:22 22:22 23:5
  23:12,24 24:14,16
  24:18,22,24 25:10
  25:25 27:6,9,15
  28:5,7,9,18,19
  29:8,14 30:15
  31:12
**knowledge** 17:1
**known** 14:10
**knows** 12:3 14:4
  29:24
**kramer** 31:21

| l | m | | |
|---|---|---|---|
| **l.p.** 1:7 | **main** 13:23 31:18 | **minute** 7:5,6 | **newco** 12:11,12 |
| **language** 23:11,23 | **making** 33:4 | 18:18 | 13:11 |
| 27:5 | **market** 11:14 | **minutes** 7:21 8:7 | **newly** 13:8 |
| **late** 7:17 10:10 | **marshall** 3:8 5:23 | **mislead** 24:24 | **news** 6:2,13 8:22 |
| **latency** 14:10,15 | **mas** 16:4 | **misperception** | 13:14 |
| **lawyers** 8:3 16:3 | **masiowski** 3:20 | 15:15 | **night** 20:2 25:6,25 |
| 32:24 | 25:3 | **missed** 13:2 26:3 | 26:1,5 |
| **layman** 11:15 | **mass** 15:13 | **money** 24:6 30:12 | **nights** 7:17 |
| **leave** 11:3 32:3 | **material** 7:17,18 | 30:16,19 | **nominally** 16:12 |
| **ledanski** 2:25 34:3 | 9:8 | **morning** 25:7 | **non** 4:2 17:18 |
| 34:8 | **materials** 15:6 | **motion** 2:1,9 | **nonconsenting** |
| **left** 29:14 | **mathematically** | **mouthful** 13:24 | 26:11 |
| **legal** 34:20 | 31:7 | **moving** 6:20 | **nonpublic** 28:6 |
| **length** 15:3 | **matter** 1:5 | **msge** 7:11 32:21 | **noted** 32:19 |
| **letter** 23:6 | **mcclammy** 3:9 | **muffled** 6:12 | **notice** 2:4,8,8,11 |
| **level** 8:17 9:7,12 | 14:18 16:9,20,22 | **multi** 14:15,15 | 14:24 20:3 23:25 |
| 9:19 11:23 | 17:9,11,12,15 | **municipalities** | **noticed** 24:18 |
| **levin** 31:22 | 19:8,13 | 32:25 | **notices** 2:4,11 |
| **lexington** 3:5 | **mdl** 8:4 | **mute** 9:24 | **noticing** 14:19 |
| **light** 27:24 31:25 | **mean** 16:12 21:18 | | **notion** 14:23 |
| **likewise** 11:11 | 23:16,17 25:17 | **n** | **number** 11:10 |
| **limit** 24:2 | 26:21 27:7 28:23 | **n** 3:1 5:1 34:1 | 14:21 |
| **lipson** 15:25 16:1 | 31:15 | **narrow** 15:16 | **numbers** 28:11,11 |
| 16:23 19:10,15,16 | **means** 22:20 | **nas** 17:18,18 | 33:3 |
| 19:19 22:3 23:6 | **meant** 17:22 | **nature** 11:1 12:8 | **ny** 1:14 3:6,15 4:4 |
| **lipson's** 18:8 | 30:23,23 | 14:14 | 34:23 |
| **liquidate** 20:25 | **mechanic** 12:24 | **ne** 3:21 | |
| **liquidation** 20:23 | 15:8 | **necessarily** 28:11 | **o** |
| 21:20 | **mechanism** 20:11 | **need** 15:10 17:18 | **o** 1:21 5:1 34:1 |
| **little** 10:11 16:6 | **meeting** 8:10 | 19:11 20:11,17,18 | **objected** 19:19 |
| 27:22 | **mention** 11:7 | 20:20,24 21:1,6 | **objection** 28:14 |
| **llp** 3:3,11 4:1 | 32:10 | 21:18 25:7 29:9 | **objections** 6:16 |
| **long** 14:10 32:22 | **meso** 14:14 | 30:16 | 25:9 |
| **look** 18:12 22:14 | **met** 32:15 | **needed** 17:25 18:2 | **objector** 15:24 |
| 24:4 28:1,14,22 | **michael** 3:20 | 18:6 27:8 | **objectors** 24:18 |
| 29:9 | **microphone** 17:10 | **needs** 28:9 | **observation** 26:15 |
| **looks** 22:6 | **million** 11:25 | **neglect** 13:3,4,6 | **obvious** 6:3 |
| **lost** 31:17 | 12:23 13:19 | **negotiate** 8:25 | **obviously** 6:2,15 |
| **lot** 6:9 11:3 13:24 | **mindful** 32:10 | 30:6 | 7:11 9:13 10:17 |
| 26:14 | **minds** 8:10 | **negotiating** 8:13 | 10:19 11:18 12:3 |
| **lp** 3:13 | **mineola** 34:23 | **never** 9:1 | 12:25 13:3,10 |
| | | **new** 1:2 3:6,15 4:4 | 14:9,16 16:14 |
| | | 11:10,10 12:13 | 27:16 28:1 29:22 |
| | | 13:11,13,15 | 31:4 |

oh  22:25
okay  6:11 17:8
  19:14 20:15 24:13
  25:22 27:7 29:7
  31:8,19 33:16,16
old  34:21
once  14:17
ones  24:17
open  7:4,8,10 15:7
  17:6 29:14 33:12
opiate  11:14
opioids  10:8,13
opt  17:19 21:6
opted  18:11
optimistic  8:19
option  31:16
oral  26:2
order  6:18 8:15
  14:21 18:22 28:17
ordered  16:7
outcome  16:10
outdated  27:15
outside  14:13
overall  32:4

**p**

p  3:1,1 5:1
p.a.  3:19
pages  6:21
parochial  29:20
part  15:6 18:15
  19:20 32:2
parties  5:10 6:1
  6:24 7:1,23 8:13
  10:5,15 11:5
  13:18 15:14 16:16
  18:21 24:16 29:21
  30:10,16 31:14
  33:9
party  17:2 18:20
pass  24:19
path  22:18
pathway  15:18,21
  20:9 22:8

patients  11:11
paul  3:19,24 25:2
payment  27:23
peace  17:4
people  5:4 6:22
  7:16 9:4,23 12:6
  12:20 18:2,10
  19:4 21:12,18
  23:17,22,24 24:7
  26:7,15 30:5
  33:10,10
peoples  30:25
percentage  8:3
perfectly  14:11
period  10:16,18
  14:10,15 30:14
  31:3
periodicity  6:24
person  14:22 16:2
personal  7:16
  17:17,18
pertains  25:8
peter  19:16
petition  12:16
pharma  1:7 3:13
  5:3
phone  5:4
physician  25:3
pi  11:25 13:4,16
  13:23 16:1,4
  20:16 21:20 30:18
  31:4,18,25 32:4
pick  17:10
piece  28:2
pillsbury  4:1
pis  11:18 13:23
  24:3
pittman  4:1
place  12:1 30:19
  32:22
plains  1:14
plaintiffs  16:14

plan  5:10 7:24
  9:10 16:13 22:5
  22:11 30:5
please  26:6
plenty  8:24 23:25
plummeting  11:9
pm  1:17 33:21
pods  28:25
point  24:4 27:12
  29:18 30:7,9,11
  31:14,23 32:9
points  9:8,25
poised  9:24
polk  3:3 5:23
  17:12
position  10:9,21
  19:22
possibly  8:6 10:12
post  12:13
potential  12:15
  14:3 23:23 31:5
potentially  6:22
  9:24 11:4 13:10
predict  15:17
prefer  26:2
preis  11:21
prepetition  12:8
  13:1,2,23 14:25
prescription
  11:14
prescriptions
  11:8,10
president  6:9
pretty  6:3 7:19
  8:19 10:1 16:18
  23:9
previewed  8:1
previously  11:15
principle  7:20
  11:6,22
prior  8:14 11:12
  12:16

pristine  8:24
private  23:6
probably  5:24
  26:4
problematic  11:4
procedure  19:24
procedures  2:3,4
  2:11,12 12:24
  16:3 17:17,20
  18:13 21:3,11,13
  21:19,20 24:6,9
  33:11
proceed  5:16
  18:22
proceedings
  33:20 34:4
process  18:16,25
  18:25 21:24 32:15
  33:4
professionals
  29:20 32:18
progress  7:18,18
promoted  10:13
promoting  10:8
promptly  24:7
proof  18:21
properly  19:25
protecting  18:16
protective  28:17
provable  15:9
prove  12:23
provide  13:20
  20:11
provided  13:22,23
  14:12 18:3 20:14
  24:25 30:4
provision  14:5,14
  19:1
publish  28:8
punches  12:12
purdue  1:7 3:13
  5:3 10:6,13 11:13

**pursuant**  13:16
**pursue**  17:20
**put**  9:17 10:24
  33:9

**q**

**quarropas**  1:13
**question**  17:16
  28:8
**quite**  8:8,10 19:12
  22:11 32:10

**r**

**r**  1:21 3:1 5:1 34:1
**race**  11:23
**raise**  25:19
**rdd**  1:3
**reach**  26:7,16
  31:23 33:11,13
**reached**  7:20 11:6
  27:3
**read**  22:6,7
**reading**  16:6
**ready**  13:18
**really**  8:2 16:11
  18:15 21:25 26:1
  31:13 33:7
**reason**  14:19 22:1
  24:5 33:8
**reasonable**  19:5
**reasonableness**
  32:12
**reasonably**  28:16
**reasons**  11:9
  14:25
**recall**  17:16
**received**  20:2 25:5
  25:6
**record**  5:23 7:2,3
  7:4 8:24 9:6,17
  16:2 34:4
**recover**  18:5
**recovery**  13:9
  18:10

**redistributed**
  17:3,3
**reduces**  29:22
**refer**  21:5 22:18
**reference**  27:8,10
  27:13,14
**referred**  21:3
**reflect**  7:1
**reflects**  33:9
**regarding**  5:6
**regular**  13:4
**related**  2:13 30:5
**relates**  14:25
  15:25
**relationships**
  32:24
**release**  27:15
**released**  10:7
**relevant**  6:24
**reliable**  27:9
**remain**  8:19
**remaining**  5:11
  9:17 31:4
**remember**  19:12
**reminder**  15:25
**remote**  8:19
**report**  7:15
**represent**  26:13
  26:14
**representing**  16:4
  23:6 32:20
**represents**  16:1
**request**  5:4,8
**requesting**  8:14
**requirement**
  22:24 23:2 30:3
**requires**  32:11
**requisite**  9:18
**reserve**  25:9
**reserved**  5:5
**residual**  32:3
**resolution**  31:24

**resolve**  28:13
  29:14
**resolved**  5:12 6:15
  14:1 15:16 23:24
  26:4
**respect**  2:5,13
  5:11 7:4,10,14
  8:11 9:20 14:2
  15:22 17:2
**respectfully**  23:12
**responsibility**
  32:1
**result**  5:7 19:21
  20:3,13 21:10
**reversion**  31:3
**review**  25:8,17
  29:12 30:4,7
  33:12
**reviewing**  17:24
**revised**  22:4
**revision**  31:25
**right**  12:11 16:25
  17:13 23:8,21
  25:4,12 26:24,25
  29:7 30:22 31:1
  31:19 32:8 33:3,4
  33:6,16
**risk**  8:21 33:10
**road**  34:21
**robert**  1:22
**room**  1:13 25:3
**rothstein**  3:19,24
  25:2,3,5,13,21
  26:5
**round**  33:18
**route**  23:3
**rub**  15:20
**rule**  19:23
**ruled**  15:24
**rules**  21:8,8
**ruling**  23:12
**run**  33:10

**rx**  11:13

**s**

**s**  2:13 3:1,19 5:1
**sackler**  14:2
**sacklers**  7:10,12
  8:11,25 26:18,19
  26:22,25 27:24
  28:7
**sales**  10:7
**saying**  25:24 33:7
**second**  23:5 31:16
**section**  32:12
**see**  15:18 18:19
  19:16 23:22,23
  24:11 27:1 29:16
  33:19
**select**  17:19 22:16
**seminar**  23:13
**sense**  7:23
**sensible**  31:24
  32:14
**separate**  11:24
  13:15 20:10
**serious**  6:13 14:11
**set**  12:23 29:11
**setting**  9:10
**settled**  9:17
**settlement**  9:1
  27:23
**seven**  6:14
**shareholders**  9:19
**shares**  16:15
**shaw**  4:1
**sheet**  8:17 9:8
**sheets**  29:1
**shore**  3:17 18:18
  19:6,11 22:4 24:4
**shorthand**  21:4
**show**  13:18
**showing**  6:22
**sides**  11:19
**similar**  13:21

simply   20:10
single   14:22 16:1
   27:20 28:2,13
sir   30:20
sit   16:25
situation   11:1
six   31:3
slightly   22:6
   27:15
slings   10:3
slips   10:11
small   13:10
smaller   11:14
sole   13:9
solicitation   2:3,10
   15:6
solutions   34:20
somebody   12:12
sonya   2:25 34:3,8
sophisticated
   10:15 12:20
sorry   22:15 26:25
sort   7:12 8:2,3,16
   8:20 9:21,23 10:4
   12:15 13:17 15:7
   15:19 16:9,10,19
   24:20,24 26:2
   28:18
sorts   11:19
source   13:9
southern   1:2
spades   14:18
   15:13
speak   25:14
spearhead   11:21
spelled   23:18,19
spent   14:19
spray   31:5
standard   21:19
standing   15:17
   16:11 25:24
stated   25:19

statement   2:3,10
   5:6,9,15 6:17 9:2
   9:16 15:4 18:7
   22:5,24 24:10,21
   27:2,21
states   1:1,12 4:2
   11:18 16:5 26:11
   32:25
status   5:25 7:13
statutorily   14:12
step   16:20
steps   21:22,25
stop   16:21
stopped   10:6
streamlined   17:20
   20:22 24:9
street   1:13 3:21
   4:3
striving   9:9
strong   10:23
strongly   8:13
structure   7:25 8:5
   32:14
structured   31:2
structures   32:22
sub   11:24 13:8,15
   15:8 16:15,24
   30:12 31:25
subject   28:20
submit   18:20,22
   19:3,4 22:9,15,17
submitting   21:9
   22:20,20
subsequent   32:6
substantial   6:16
substantially
   11:12
successor   12:14
sufficient   13:20
   24:23
suggest   29:10
suggested   7:4

suite   34:22
summarize   29:15
summarizing   10:3
supplement   9:25
   19:21 20:3
supplemental   2:8
   31:6
supposed   27:5
sure   5:3 18:1
   22:11 24:13 29:3
   30:11 31:14 33:4
   33:15
surprise   15:8
surprised   6:19
   25:18
switch   6:4
system   17:21
   20:21,25 21:7

t

t   34:1,1
take   7:21 10:3
   11:3 24:2 28:1,14
   28:21 32:1
takeaway   17:25
talk   11:20 27:6,16
   28:15
talking   10:2 14:16
   16:22
tdp   13:17,18,23
   16:12
tdps   17:16
telephonically   3:8
   3:9,17,24 4:6
tell   30:14
term   8:17 9:7 29:1
terms   27:24
terrible   14:14
terrific   6:11
texts   6:5
thank   5:18,22
   6:10 17:11,15
   19:13,15 24:13
   25:21 29:5,6

33:19
thanks   17:14
   19:18
thereto   2:6,13
therewith   2:5,12
thicket   17:7
thing   14:7 33:17
things   6:20 7:13
   8:25 9:5 10:3 11:3
   11:11 14:1 15:13
   24:15 26:3 27:12
   28:16,18
think   6:13,15,24
   7:18,22 9:10,21
   10:1,4,5,14,21
   11:15 13:18 14:21
   15:18,23 16:6,18
   20:9,12,15 22:7,9
   22:14,21 23:9,11
   23:16,18,22 24:10
   24:20 26:8,21
   27:8,13,19,25
   28:19,21 29:8
   30:15,19 31:23,25
   32:10
third   27:21
thought   15:5 19:1
   20:5 26:16
thoughts   24:20
time   5:5,10 9:22
   12:10 18:4 19:3
   23:25 25:7,18,19
   32:15
timely   19:21,25
   20:17,19
times   11:21 14:23
timing   27:24
today   7:21 10:4
   15:3,4
today's   15:2
told   7:7 21:1,6
tomorrow   8:21
   9:13,17 15:11

| | u | w | x |
|---|---|---|---|
| 23:23 24:12 25:11 25:18,20 31:13 33:19 | **u.s.** 1:23 30:2 | **waking** 8:7 | **x** 1:4,10 |
| **tomorrow's** 17:7 | **ucc** 7:11 11:22 16:5 | **want** 8:23 9:6 12:5 24:23 28:13 29:8 30:6,11 33:2 33:17 | **y** |
| **tonight** 15:19 | **ultimately** 10:9 15:6,9 16:19 30:4 32:5,7 | | **yeah** 23:4 25:15 25:23 26:7 27:11 30:21 31:15 |
| **topic** 12:6 27:20 | | **wanted** 31:13 | |
| **tort** 15:13 17:21 | | **wants** 24:6 | **year** 11:9,9 14:15 31:3 |
| **touched** 14:22 | **understand** 30:11 | **wardwell** 3:3 5:23 | |
| **transcribed** 2:25 | **understanding** 20:1 27:4 | **way** 17:6 31:2 | **years** 10:9,13 |
| **transcript** 16:6 17:24 27:20 28:15 28:22 34:4 | | **we've** 7:18 9:3,22 17:3 | **yep** 29:2 |
| | **understood** 26:17 29:2 | | **york** 1:2 3:6,15 4:4 |
| **treatment** 13:21 13:22 31:7 | **unfortunately** 7:25 10:10 31:17 | **wealth** 26:18,19 26:22,23,25 27:24 28:7,24 | **z** |
| **triggered** 12:11 | **uninvolved** 11:15 | | **zoom** 2:1 |
| **troop** 4:6 26:10 26:10,13,20,23,25 27:12 28:15,19 29:5 | **united** 1:1,12 | **week** 5:8,13 6:14 7:7 8:2 10:2 11:21 15:3,12,25 16:2 20:6 24:1,5,17 28:8 30:1 | |
| | **unorthodox** 24:15 | | |
| | **unresolved** 24:19 25:1 | | |
| **true** 13:7 28:5 34:4 | **unscathed** 10:2 | **week's** 15:22 | |
| **trust** 11:24,24,25 12:24 13:8,8,15 13:15 15:8 16:3 16:16 17:16,18,20 18:12 21:15,23 24:6 25:8 30:12 30:25 31:4,18 32:1,4 | **update** 5:15 7:13 29:8 30:10 | **weigh** 16:22 | |
| | **updating** 27:21 | **west** 4:3 | |
| | **urge** 25:16 33:13 | **white** 1:14 3:11 16:23 | |
| | **useful** 22:12 | | |
| | **usually** 11:20 | **winthrop** 4:1 | |
| | **v** | **wish** 15:11 19:23 | |
| | **valid** 13:23 | **witnesses** 14:18 | |
| **trustee** 21:23 30:2 | **variety** 11:9 | **wood** 8:1 | |
| **trusts** 18:17 30:24 | **various** 8:3 28:25 | **words** 24:22 | |
| **truth** 31:15 | **veritext** 34:20 | **work** 16:16 27:12 29:25 30:10 33:7 33:18 | |
| **try** 9:15 26:7 | **version** 31:17 | | |
| **trying** 8:20 17:4 24:2,15 32:13 33:3 | **victims** 3:12 18:14 | **workable** 32:14 33:5 | |
| | **view** 9:25 10:14 10:23 16:19 18:8 28:24 | | |
| **turn** 16:8 18:18 19:6 | | **working** 11:17 15:14 | |
| | **virtually** 6:15 14:21 | **works** 21:12 | |
| **turning** 9:20 | **volume** 11:8 | **world** 28:9 | |
| **turns** 11:7 | **vote** 9:10 31:17 | **wrong** 30:14 | |
| **twilight** 12:15 | **voting** 2:3,10 | | |
| **types** 32:16 | | | |