**DAVIS POLK & WARDWELL LLP**

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P., et al.,** | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF FILING OF ELEVENTH PLAN SUPPLEMENT PURSUANT TO THE
SIXTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

    **PLEASE TAKE NOTICE** that, on July 14, 2021, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3185] (as modified, amended or supplemented from time to time, the "**Plan**"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

    **PLEASE TAKE FURTHER NOTICE** that, on June 3, 2021 the Debtors filed the solicitation version of the *Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2983] (as modified, amended or supplemented from time to time, the "**Disclosure Statement**").

**PLEASE TAKE FURTHER NOTICE** that, on April 23, 2021, the Debtors filed the Notice of Filing of Plan Supplement Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors [D.I. 2732] (the "**First Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on April 25, 2021, the Debtors filed the *Notice of Filing of Second Plan Supplement Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2737] (the "**Second Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on May 15, 2021, the Debtors filed the *Notice of Filing of Third Plan Supplement Pursuant to the Second Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2867] (the "**Third Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on May 17, 2021, the Debtors filed the *Notice of Filing of Fourth Plan Supplement Pursuant to the Second Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2868] (the "**Fourth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on May 26, 2021, the Debtors filed the *Notice of Filing of Fifth Plan Supplement Pursuant to the Fourth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2938] (the "**Fifth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on June 2, 2021, the Debtors filed the Notice of Filing of *Sixth Plan Supplement Pursuant to the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2977] (the "**Sixth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on June 30, 2021, the Debtors filed the Notice of Filing of *Seventh Plan Supplement Pursuant to the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3098] (the "**Seventh Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on July 7, 2021, the Debtors filed the Notice of Filing of *Eighth Plan Supplement Pursuant to the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3121] (the "**Eighth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on July 15, 2021, the Debtors filed the Notice of Filing of *Ninth Plan Supplement Pursuant to the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3187] (the "**Ninth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on July 15, 2021, the Debtors filed the Notice of Filing of *Tenth Plan Supplement Pursuant to the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3232] (the "**Tenth Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file this *Eleventh Plan Supplement Pursuant to the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (this "**Eleventh Plan Supplement**" and, together with the First Plan Supplement, the Second Plan Supplement, the Third Plan Supplement, the Fourth Plan Supplement, the Fifth Plan Supplement, the Sixth Plan Supplement, the Seventh Plan Supplement, the Eighth Plan Supplement, the Ninth Plan Supplement and the Tenth Plan Supplement, each as may be amended, modified or supplemented from time to time, the "**Plan Supplement**") in support of the Plan.

**PLEASE TAKE FURTHER NOTICE** that this Eleventh Plan Supplement contains the following documents, as may be amended, modified or supplemented from time to time by the Debtors in accordance with the Plan:

| **Exhibit U** | MDT Agreement |
| **Exhibit U-1** | Redline of MDT Agreement against the version filed with the Ninth Plan Supplement |

Exhibits and schedules to Plan Supplement documents without changes have been omitted from Redlines.

**PLEASE TAKE FURTHER NOTICE** that the forms of documents contained in the Plan Supplement are integral to, and are considered part of, the Plan. If the Plan is confirmed, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Plan.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise noted, the documents contained herein are in draft form and remain subject to continuing review and negotiation among the Debtors and interested parties with respect thereto and therefore remain subject to material change. The Debtors reserve the right, subject to the terms and conditions set forth in the Plan, to alter, amend, modify or supplement any document in the Plan Supplement at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court; provided that, if any document in the Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the hearing to confirm the Plan, the Debtors will file a redline of such document with the Bankruptcy Court. Each Plan Supplement document remains subject to the consent rights of the applicable parties in accordance with the terms of the Plan. For the avoidance of doubt, the inclusion in this Eleventh Plan Supplement of any document does not and shall not be construed to mean that any such party has provided such consent.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan Supplement, the Plan, and the Disclosure Statement may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of

any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Hearing will be commenced on **August 9, 2021, at 10:00 a.m., prevailing Eastern Time**, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140; provided that, pursuant to General Order M-543, dated March 20, 2021 (Morris, C.J.) ("**General Order M-543**"), such Hearing shall be conducted telephonically so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[2] Please be advised that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court without further notice.

Dated:    July 16, 2021
      New York, New York

DAVIS POLK & WARDWELL LLP

By:   */s/ Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

---

[2] A copy of General Order M-543 can be obtained by visiting https://www.nysb.uscourts.gov/news/general-order-m-543-court-operations-under-exigent-circumstances-created-covid-19.

# EXHIBIT U

**MDT Agreement**

**TRUST AGREEMENT OF**

**MASTER DISBURSEMENT TRUST**

**DATED AS OF [●], 2021**

**BY AND AMONG**

**[●] AS MDT TRUSTEES**

**[●] AS RESIDENT TRUSTEE**

**and**

**THE DEBTOR PARTIES HERETO**

# TABLE OF CONTENTS

**Article I**       **Declaration of Trust** ........................................................................**3**

Section 1.01.    Creation of Trust ........................................................................3
Section 1.02.    Purpose of Master Disbursement Trust................................................3
Section 1.03.    Vesting of the MDT Transferred Assets and Funding of the Master
Disbursement Trust ................................................................4
Section 1.04.    Assumption of Channeled Claims and the Master TDP ..........................6
Section 1.05.    Appointment and Acceptance of Initial MDT Trustees.............................6
Section 1.06.    No Reversion to Debtors ............................................................7
Section 1.07.    Relationship to Plan .................................................................7
Section 1.08.    Incidents of Ownership ..............................................................7

**Article II**     **MDT Beneficiaries** ........................................................................**7**

Section 2.01.    MDT Claims and MDT Interests ....................................................7
Section 2.02.    Disputed or Conflicting Claims or Demands .......................................8
Section 2.03.    Rights of MDT Beneficiaries ........................................................8
Section 2.04.    Nontransferability of MDT Claims and MDT Interests............................8
Section 2.05.    Limited Liability .....................................................................8

**Article III**    **Powers and Trust Administration** ........................................................**9**

Section 3.01.    Powers of the MDT Trustees ........................................................9
Section 3.02.    General Administration .............................................................11
Section 3.03.    Master TDP ..........................................................................12

**Article IV**   **Duration and Termination of the Master Disbursement Trust** .................**13**

Section 4.01.    Duration ..............................................................................13
Section 4.02.    Dissolution of the Master Disbursement Trust .................................13
Section 4.03.    Continuance of Master Disbursement Trust for Winding Up...................13

**Article V**     **Accounts, Investments and Payments** ..................................................**14**

Section 5.01.    Accounts..............................................................................14
Section 5.02.    MDT Operating Reserve ............................................................14
Section 5.03.    MDT Claims Reserve ...............................................................14
Section 5.04.    Investments ..........................................................................14
Section 5.05.    Source of Payments .................................................................15

**Article VI**   **Tax Matters** ..............................................................................**15**

Section 6.01.    U.S. ...................................................................................15
Section 6.02.    Tax Withholdings....................................................................15

**Article VII**  **Distributions** ............................................................................**16**

Section 7.01.    Distributions ........................................................................16
Section 7.02.    Distribution Dates ................................................................17
Section 7.03.    Escrow Periods and MDT Reserve Periods ...........................18
Section 7.04.    Public Creditor Trust Distributions ......................................19
Section 7.05.    Restriction on Use of Distributions by Creditor Trusts ...................19

**Article VIII    MDT Trustees, MDT Executive Director and Resident Trustee ...............19**

Section 8.01.    The MDT Trustees ...............................................................19
Section 8.02.    Term of Service of the MDT Trustees ..................................19
Section 8.03.    Appointment of Successor MDT Trustees .............................21
Section 8.04.    MDT Executive Director .......................................................21
Section 8.05.    Independence of the MDT Trustees and MDT Executive Director .................22
Section 8.06.    Obligations of the MDT Fiduciaries .....................................22
Section 8.07.    Compensation and Expenses of the MDT Trustees and the MDT Executive
                 Director and MDT Professionals ..........................................23
Section 8.08.    Resident Trustee ..................................................................23

**Article IX    Reliance, Liability and Indemnification ........................................25**

Section 9.01.    Reliance by the MDT Trustees and the MDT Executive Director ...................25
Section 9.02.    Nonliability of MDT Trustees and MDT Executive Director ..........................25
Section 9.03.    Exculpation ..........................................................................26
Section 9.04.    Limitation of Liability ..........................................................26
Section 9.05.    Indemnity ............................................................................26

**Article X    Miscellaneous Provisions .......................................................27**

Section 10.01.    Actions Taken on Other Than a Business Day ..................27
Section 10.02.    Governing Law ..................................................................27
Section 10.03.    Jurisdiction ......................................................................27
Section 10.04.    Severability ......................................................................27
Section 10.05.    Notices ............................................................................27
Section 10.06.    Headings ..........................................................................29
Section 10.07.    Entire Trust Agreement ....................................................29
Section 10.08.    Amendment and Waiver ....................................................29
Section 10.09.    Confidentiality .................................................................29
Section 10.10.    Meanings of Other Terms .................................................29
Section 10.11.    Counterparts ....................................................................30

ii

## MASTER DISBURSEMENT TRUST AGREEMENT

THIS MASTER DISBURSEMENT TRUST AGREEMENT (this "Trust Agreement"), dated as of [●], 2021 (the "Effective Date"), is entered into by and among each of (i) Purdue Pharma L.P., Purdue Pharma Inc., Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP and SVC Pharma Inc. (each, a "Debtor" and, collectively, the "Debtors"), as debtors and debtors-in-possession, (ii) the undersigned MDT Trustees (together with any successor or additional trustee appointed under the terms of this Trust Agreement, the "MDT Trustees"), and (iii) [●], as the Delaware resident trustee (together with any successor Delaware resident trustee appointed under the terms of this Trust Agreement, the "Resident Trustee"), for the purpose of forming a statutory trust under and pursuant to the provisions of the Delaware Statutory Trust Act, 12 Del. C. §§ 3801, et seq. (as the same may from time to time be amended, or any successor statute, the "Trust Act").

## RECITALS

WHEREAS, on September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), thereby commencing the chapter 11 cases jointly administered by the Bankruptcy Court under the caption *In re Purdue Pharma L.P., et al.*, Case No. 19-23649 (RDD) (the "Chapter 11 Cases");

WHEREAS, on July 14, 2021, the Debtors filed the *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (including all appendices, exhibits, schedules and supplements thereto, as the same may be altered, amended or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules and the terms thereof, the "Plan")[1] with the Bankruptcy Court;

WHEREAS, on [●], the Debtors and the Shareholder Payment Parties entered into the Shareholder Settlement Agreement, pursuant to which, among other things, the Shareholder Payment Parties shall be obligated to pay the Shareholder Settlement Amount in accordance with the terms thereof;

WHEREAS, on [●], 2021, the Bankruptcy Court entered the [*Order Confirming the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*] [D.I. [●]] confirming the Plan (the "Confirmation Order");

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

WHEREAS, in accordance with the Plan and the Confirmation Order, PPLP and [NEWCO, LLC], a limited liability company organized under the laws of the State of Delaware ("NewCo"), have entered into the Transfer Agreement, dated as of the Effective Date (the "NewCo Transfer Agreement"), pursuant to which the NewCo Transferred Assets were transferred to NewCo;

WHEREAS, the Plan provides for, among other things, the creation of a Master Disbursement Trust on the Effective Date;

WHEREAS, in accordance with the Plan and the Confirmation Order, the Master Disbursement Trust shall, among other things, (i) receive the MDT Transferred Assets and (ii) assume all liability of the Debtors and the other Protected Parties for any and all Channeled Claims, pursuant to the Channeling Injunction, solely for the purpose of effectuating the Master Trust Distributions Procedures attached as Exhibit A to this Trust Agreement (the "Master TDP"), pursuant to which (A) each Channeled Claim shall either be automatically channeled to and assumed exclusively by a Creditor Trust or otherwise Disallowed and released in full and (B) in exchange for the assumption of the applicable Channeled Claims, the Creditor Trusts shall receive the distributions set forth in the Master TDP;

WHEREAS, in accordance with the Plan, the Confirmation Order and the Master TDP, beneficial interests in the Master Disbursement Trust shall be granted to (i) the United States (such interest, the "MDT Federal Government Claim"), which MDT Federal Government Claim shall entitle the United States to payment of the amounts set forth in Section 4.3(b) of the Plan in accordance with the terms of the Plan and this Trust Agreement, (ii) the Hospital Trust (such interest, the "MDT Hospital Claim"), the NAS Monitoring Trust (such interest, the "MDT NAS Monitoring Claim"), the PI Trust (such interest, the "MDT PI Claim") and the TPP Trust (such interest, the "MDT TPP Claim"), which MDT Hospital Claim, MDT NAS Monitoring Claim, MDT PI Claim and MDT TPP Claim (collectively, the "MDT Private Claims" and, together with the MDT Federal Government Claim, the "MDT Claims") shall entitle such Private Creditor Trusts to payment of the amounts set forth in Section 5.2(d)(i) of the Plan in accordance with the terms of the Plan and this Trust Agreement and (iii) the Tribal Abatement Fund Trust ("TAFT") (such interest, the "MDT Tribe Interest") and NOAT (such interest, the "MDT NOAT Interest"), which MDT Tribe Interest and MDT NOAT Interest (collectively, the "MDT Interests") shall entitle TAFT and NOAT (collectively with the Hospital Trust, the NAS Monitoring Trust, the PI Trust, the TPP Trust, the United States and, solely for purposes of the distributions due to it under the Master TDP, the PI Futures Trust, the "MDT Beneficiaries") to their respective shares of distributions of MDT Excess Cash as set forth in Section 5.2(e)(i) of the Plan and in accordance with the terms of the Plan and this Trust Agreement;

WHEREAS, the purposes of the Master Disbursement Trust are, among other things, to (i) effectuate the Master TDP, (ii) hold and administer the MDT Transferred Assets, (iii) make payments in satisfaction of the MDT Claims in accordance with the Plan and the Private Entity Settlements, (iv) pursue MDT Causes of Action and the MDT Shareholder Rights, including monitoring and enforcing the Shareholder Settlement Agreement, and (v) make Public Creditor Trust Distributions in respect of the MDT Interests from MDT Excess Cash in accordance with the Plan and the Public Entity Settlements;

WHEREAS, in accordance with the Plan and the Confirmation Order, as of the Effective Date (i) [TOPCO LLC], a Delaware limited liability company ("TopCo"), shall hold 100% of the NewCo Interests, and (ii) the limited liability company interest in TopCo shall be held by NOAT (such interests, the "TopCo NOAT Interest") and Tribal Opioid Abatement Fund, LLC ("Tribe Opioid LLC" and, such interests, the "TopCo Tribe Interest" and, together with the TopCo NOAT Interest, the "TopCo Interests");

WHEREAS, in accordance with the Plan and the Confirmation Order, the Master Disbursement Trust, NewCo and TopCo shall enter into that certain Credit Support Agreement, dated as of the Effective Date (the "NewCo Credit Support Agreement"), pursuant to which NewCo and TopCo are each obligated to make certain payments to the Master Disbursement Trust, and the Master Disbursement Trust is obligated to repay such amounts to NewCo and TopCo; and

WHEREAS the Master Disbursement Trust was established and is effective for the benefit of the MDT Beneficiaries.

## AGREEMENT

NOW, THEREFORE, pursuant to the Confirmation Order, and in consideration of the foregoing and upon the terms and subject to the mutual covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE I
DECLARATION OF TRUST

Section 1.01.  Creation of Trust. The Debtors and the MDT Trustees, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby create the Master Disbursement Trust, which shall bear the name "Master Disbursement Trust." In connection with the exercise of the MDT Trustees' power hereunder, the MDT Trustees may use this name or such variation thereof as the MDT Trustees reasonably see fit. It is the intention of the parties hereto that the Master Disbursement Trust created hereby constitutes a statutory trust under the Trust Act and that the Confirmation Order, the Plan and this Trust Agreement, constitute the governing instruments of the Master Disbursement Trust.

Section 1.02.  Purpose of Master Disbursement Trust. The purpose of the Master Disbursement Trust is to carry out the duties of the Master Disbursement Trust as set forth in the Plan on behalf, and for the benefit, of the MDT Beneficiaries, including to effectuate the Master TDP and to liquidate, convert to Cash and distribute the MDT Transferred Assets in accordance with the terms of the Plan and this Trust Agreement. The Master Disbursement Trust shall, in each case in accordance with the Plan and this Trust Agreement: (a) hold, manage, sell, invest and distribute the MDT Transferred Assets for the benefit of the MDT Beneficiaries in accordance with the Plan, including the Private Entity Settlements and the Public Entity Settlements as set forth therein and incorporated herein; (b) enforce, pursue, prosecute, compromise and/or settle the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights, including monitoring and enforcing the Shareholder Settlement Agreement; (c) make payments in satisfaction of the MDT Claims; (d) make Public Creditor Trust Distributions from MDT Excess

3

Cash; and (e) publish on the MDT Website reports received from the Abatement Trusts regarding the disbursement and use of Abatement Distributions and compliance with Authorized Abatement Purposes. The Master Disbursement Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth in the Plan, this Trust Agreement, or any other agreement entered into between the Master Disbursement Trustee and any of the Debtors.

Section 1.03.    <u>Vesting of the MDT Transferred Assets and Funding of the Master Disbursement Trust.</u>

(a)    On the Effective Date, pursuant to Section 5.6(b) of the Plan and in accordance with this Trust Agreement, the MDT Transferred Assets shall be irrevocably transferred to and vest in the Master Disbursement Trust free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind; *provided* that, to the extent certain Assets comprising the MDT Transferred Assets are not known or identified as of the Effective Date, such Assets shall automatically, and without further act or deed, be transferred to and vest in the Master Disbursement Trust upon the discovery or identification thereof, including, with respect to the Surplus Reserve Cash, in accordance with Section 5.13(c) of the Plan; *provided further* that the transfer of the MDT Insurance Rights and the MDT Shareholder Insurance Rights shall be made in accordance with Section 5.6(i) and (j) of the Plan and the Shareholder Settlement. The Master Disbursement Trust shall have no liability for any prepetition or postpetition Claims, Causes of Action or liabilities of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including, but not limited to, Claims based on successor liability) based on any acts or omissions prior to the Effective Date, except as expressly set forth in the Plan and this Trust Agreement.

(b)    In accordance with the Plan, the MDT Transferred Assets shall consist of all right, title and interest of the Debtors arising under or attributable to:

(i)    the MDT Operating Reserve;

(ii)    the MDT Causes of Action;

(iii)    the MDT Insurance Rights, consisting of the Purdue Insurance Rights in respect of (A) the MDT Bermuda-Form Insurance Policies, as set forth on <u>Schedule 1</u> hereto, (B) the other MDT Insurance Policies, as defined in the Plan and including without limitation as set forth on <u>Schedule 2</u> hereto, but excluding in each case the Excluded Insurance Policies, as defined in the Plan and as set forth on <u>Schedule 3</u> hereto, and (C) the MDT Insurance Collateral, as set forth on <u>Schedule 4</u> hereto;[2]

---

[2] Notwithstanding anything to the contrary herein, (i) the MDT Insurance Rights with respect to the MDT Insurance Collateral for Isosceles Insurance Ltd. policy number PPLP-01/2019 shall be limited to the right to receive any such MDT Insurance Collateral remaining after the expiration of the policy period and any extension of coverage under such policy, (ii) the MDT Insurance Rights shall not include any right to interfere in any manner with the rights of the insureds under Isosceles Insurance Ltd. policy number PPLP-01/2019 prior to the expiration of the policy period and any extension of coverage under such policy and the resolution of all claims asserted thereunder and (iii) any persons who have unresolved claims under such policy at the expiration of the policy period, including any extension,

4

<div style="margin-left:2em">

(iv)    the MDT Shareholder Rights;

(v)    Cash in an amount equal to the Initial Private Creditor Trust Distributions and the Initial Public Creditor Trust Distributions;

(vi)    the TopCo Interests; and

(vii)    any Surplus Reserve Cash to be distributed to the Master Disbursement Trust, upon the identification thereof by the Plan Administration Trustee or the dissolution of the Plan Administration Trust, in accordance with Section 5.13(c) of the Plan.

</div>

(c)    Pursuant to Section 5.11(c) of the Plan, the transfer to the Master Disbursement Trust of information and copies of documents, including books and records, in accordance with Section 5.11(b) of the Plan shall not result in the destruction or waiver of any applicable Privileges. Further, the transfer and/or vesting of any privileges shall occur solely in accordance with, and be subject in all respects to, Section 5.11(c) of the Plan, which is incorporated herein by reference.

(d)    The Debtors shall execute any documents or other instruments and shall take all other steps as the MDT Trustees reasonably request to reflect the transfer and assignment of the MDT Transferred Assets to the Master Disbursement Trust. Upon the transfer of the MDT Transferred Assets to the Master Disbursement Trust, neither the Debtors nor any other Person (other than the MDT Beneficiaries) shall have any interest in or with respect to the MDT Transferred Assets or the Master Disbursement Trust other than as expressly provided for under this Trust Agreement and the Plan. Upon delivery of the MDT Transferred Assets to the Master Disbursement Trust, the Debtors and their predecessors, successors and assigns shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the MDT Transferred Assets or the Master Disbursement Trust.

(e)    The transfer of the MDT Transferred Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(f)    The Master Disbursement Trust shall be funded with the proceeds of the MDT Transferred Assets and amounts, if applicable, received pursuant to the NewCo Credit Support Agreement.

(g)    The MDT Transferred Assets and all other Assets held from time to time by the Master Disbursement Trust under this Trust Agreement and any earnings, including interest, on any of the foregoing shall be held and be applied by the MDT Trustees solely in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order.

---

shall cooperate with and provide consent to the Master Disbursement Trust to resolve those claims in connection with the MDT Insurance Collateral after the expiration of the policy period, including any extension.

Section 1.04.   Assumption of Channeled Claims and the Master TDP.

(a)      As of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all Channeled Claims shall automatically, and without further act, deed or court order, be channeled to and assumed by the Master Disbursement Trust solely for the purpose of effectuating the Master TDP, pursuant to which (i) each Channeled Claim shall either be automatically channeled to and assumed exclusively by a Creditor Trust or otherwise Disallowed and released in full and (ii) in consideration for the assumption by the Creditor Trusts of Channeled Claims in accordance therewith, the Master Disbursement Trust shall make the distributions and issue the beneficial interests, as applicable, to the Creditor Trusts as set forth in the Master TDP.

(b)      Distributions, in accordance with the applicable Creditor Trust TDP, from the Creditor Trust to which a Channeled Claim is channeled, in accordance with the Master TDP, shall be the sole source of recovery, if any, in respect of such Channeled Claim, and the Holder of such Channeled Claim shall have no other or further recourse to any Protected Party, including the Master Disbursement Trust. All Channeled Claims channeled to a Creditor Trust in accordance with the Master TDP shall be administered and resolved solely pursuant to, and solely to the extent provided in, the applicable Creditor Trust TDP for such Creditor Trust. All Channeled Claims that are Disallowed and released and not channeled to a Creditor Trust in accordance with the Master TDP shall have no recourse to any Protected Party, including the Master Disbursement Trust. For the avoidance of doubt, in no event shall any Channeled Claim have any recourse to the Assets of the Master Disbursement Trust.

(c)      In furtherance of the foregoing, the Master Disbursement Trust, subject to and only to the extent provided in the MDT Documents, shall have all defenses, cross-claims, offsets and recoupments regarding the Channeled Claims that the Debtors, the Released Parties and the Shareholder Released Parties, as applicable, have, or would have had, under applicable law, but solely to the extent consistent with the MDT Documents and the Plan; *provided* that no such Claims, defenses or rights may be asserted against any Protected Party; and *provided further* that all such defenses, cross-claims, offsets and recoupments regarding any Channeled Claim that is channeled to a Creditor Trust in accordance with the Master TDP shall be transferred to such Creditor Trust with such Channeled Claim, at which point, the Master Disbursement Trust shall no longer have such defenses, cross-claims, offsets and recoupments regarding such Channeled Claim.

(d)      For the avoidance of doubt, nothing in this Section 1.04 shall limit or affect the transfer of the MDT Insurance Rights to the Master Disbursement Trust.

(e)      Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction, Releases or Shareholder Releases under the Plan.

Section 1.05.   Appointment and Acceptance of Initial MDT Trustees. Upon the occurrence of the Effective Date, each of the initial MDT Trustees identified in Section 8.01(a) hereof shall be appointed to serve as the trustees of the Master Disbursement Trust pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code, subject to the terms of the Plan, the Confirmation Order and this Trust Agreement. The MDT Trustees accept the grant, assignment,

6

transfer, conveyance and delivery to the Master Disbursement Trust, on behalf, and for the benefit, of the MDT Beneficiaries, by the Debtors of all of the MDT Transferred Assets, upon and subject to the terms and conditions set forth herein, in the Plan and in the Confirmation Order. The MDT Trustees shall have and perform all of the duties, responsibilities, rights and obligations of the Master Disbursement Trust set forth in the Plan and this Trust Agreement, as applicable. The MDT Trustees, subject to the terms and conditions of the Plan, the Confirmation Order and this Trust Agreement, shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements, and to take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan, any agreement entered into in connection with the Plan, including the Shareholder Settlement Agreement and the NewCo Credit Support Agreement, and this Trust Agreement. The MDT Trustees' powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Master Disbursement Trust and not otherwise. The MDT Trustees shall have the authority to bind the Master Disbursement Trust within the limitations set forth in this Trust Agreement, but shall for all purposes hereunder be acting in their respective capacities as MDT Trustees, and not individually.

Section 1.06.   No Reversion to Debtors. In no event shall any part of the MDT Transferred Assets revert to or be distributed to any Debtor.

Section 1.07.   Relationship to Plan. The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, or the Confirmation Order, each document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; and (3) this Trust Agreement.

Section 1.08.   Incidents of Ownership. Except as otherwise provided in this Trust Agreement, the MDT Beneficiaries shall be the sole beneficiaries of the Master Disbursement Trust, and the MDT Trustees shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including those powers set forth in this Trust Agreement.

ARTICLE II
MDT BENEFICIARIES

Section 2.01.   MDT Claims and MDT Interests.

(a)     On the Effective Date, the MDT Federal Government Claim shall be issued to the United States in accordance with Section 4.3(b) of the Plan.

(b)     On the Effective Date, upon the assumption by the Creditor Trusts of the applicable Channeled Claims as set forth in the Master TDP, each MDT Private Claim and the MDT Interest shall be issued to the applicable Creditor Trust in accordance with the Plan and the Master TDP.

(c)     No beneficial interests in the Master Disbursement Trust shall be issued other than as provided in the foregoing paragraphs (a) and (b).

7

Section 2.02.   Disputed or Conflicting Claims or Demands. If any dispute arises with respect to a payment or distribution on account of an MDT Claim or MDT Interest, the MDT Trustees shall be entitled to elect to make no payment or distribution with respect to such MDT Claim or MDT Interest subject to the dispute and the MDT Trustees shall promptly refer such dispute to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such disputes; *provided* that any undisputed portion of such payment or distribution shall not be deferred pending such resolution. In so doing, the MDT Trustees shall not be or become liable to any party for its refusal to make such payment or distribution. The MDT Trustees shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or such other court of proper jurisdiction or (b) all disputes have been resolved by a written agreement among all such parties and the MDT Trustees, which agreement shall include a complete release of the Master Disbursement Trust, the MDT Trustees and the MDT Executive Director (the occurrence of either (a) or (b) in this Section 2.02 of this Trust Agreement being referred to as a "Dispute Resolution"). Promptly after a Dispute Resolution is reached, the MDT Trustees shall transfer the payments and distributions, if any, in accordance with the terms of such Dispute Resolution.

Section 2.03.   Rights of MDT Beneficiaries. Each MDT Beneficiary shall be entitled to participate in the rights and benefits due to an MDT Beneficiary hereunder according to the terms of its MDT Claim or MDT Interest, as applicable. Other than as expressly set forth in this Trust Agreement, the MDT Claims and MDT Interests shall not have consent or voting rights or otherwise confer on the MDT Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the MDT Trustees in connection with the Master Disbursement Trust. The MDT Claim or MDT Interest, as applicable, of an MDT Beneficiary is hereby declared and shall be in all respects personal property. Except as expressly provided hereunder, an MDT Beneficiary shall have no title to, right to, possession of, management of or control of the Master Disbursement Trust or the MDT Transferred Assets or to any right to call for a partition or division of such assets or to require an accounting. The whole title to the MDT Transferred Assets shall be vested in the Master Disbursement Trust, and the sole interest of each MDT Beneficiary shall be the rights and benefits given to such MDT Beneficiary under this Trust Agreement, the Confirmation Order and the Plan. For the avoidance of doubt, upon the payment in full in Cash of any MDT Claim (or, in the case of the PI Futures Trust, the payment in full of the PI Futures Trust Distribution), the holder of such MDT Claim (or, in the case of the PI Futures Trust Distribution, the PI Futures Trust) shall immediately cease to be an MDT Beneficiary for all purposes under this Trust Agreement, and the MDT Fiduciaries shall have no further fiduciary duties thereto.

Section 2.04.   Nontransferability of MDT Claims and MDT Interests. Except in respect of the United States-PI Claimant Medical Expense Claim Settlement as set forth in the Plan, the MDT Claims and MDT Interests shall be nontransferable and nonassignable.

Section 2.05.   Limited Liability. No provision of this Trust Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any MDT Beneficiary, shall give rise to any liability of such MDT Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, creditor, successor, representative, employee or equity interest holder of any Debtor, or by any other Person. MDT Beneficiaries shall be deemed to receive the MDT Claims and MDT Interests, as applicable, in the Master Disbursement Trust

in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order without further obligation or liability of any kind, but subject to the provisions of this Trust Agreement.

<div align="center">

ARTICLE III
POWERS AND TRUST ADMINISTRATION

</div>

Section 3.01.  <u>Powers of the MDT Trustees.</u>

(a)     Pursuant to the terms of the Plan, the Confirmation Order and this Trust Agreement, the MDT Trustees shall have all powers necessary to accomplish the purposes of the Master Disbursement Trust in accordance with this Trust Agreement, the Plan and the Confirmation Order. The MDT Trustees shall (i) have the power and authority to perform all functions on behalf of the Master Disbursement Trust, (ii) be responsible for all decisions and duties with respect to the Master Disbursement Trust and the MDT Transferred Assets, and (iii) in all circumstances, and at all times, act in a fiduciary capacity for the benefit of and in the best interests of the MDT Beneficiaries, in furtherance of the purposes of the Master Disbursement Trust, and in accordance with the Plan and this Trust Agreement.

(b)     Without limiting, but subject to, the foregoing paragraph (a), and except as limited in the Plan, this Trust Agreement and by applicable law, the MDT Trustees shall be expressly authorized to:

(i)     hold and maintain the MDT Operating Reserve;

(ii)    periodically, until the dissolution of the Master Disbursement Trust, replenish the MDT Operating Reserve from Cash held or received by the Master Disbursement Trust to the extent deemed necessary by the MDT Trustees to satisfy and pay estimated future MDT Operating Expenses;

(iii)   delegate certain duties to the MDT Executive Director;

(iv)    make distributions to MDT Beneficiaries in accordance with the Plan and this Trust Agreement;

(v)     determine MDT Distribution Dates, to the extent permitted by the Plan and this Trust Agreement;

(vi)    prosecute any MDT Causes of Action, including those relating to and necessary to enforce the MDT Insurance Rights and the MDT Shareholder Rights, on behalf of the Master Disbursement Trust, elect not to pursue any MDT Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss or otherwise dispose of any such MDT Causes of Action;

(vii)   retain MDT Professionals to assist in performing their duties under the Plan and hereunder;

<div align="center">9</div>

(viii)    prepare the MDT Operating Budgets;

(ix)    maintain the books, records and accounts of the Master Disbursement Trust;

(x)    invest Cash of the Master Disbursement Trust only to the extent permitted hereunder;

(xi)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of the MDT Professionals;

(xii)    administer the Master Disbursement Trust's tax obligations, including, but not limited to, representing the interest and account of the Master Disbursement Trust before any taxing authority in all matters including any claim, defense, action, suit, proceeding or audit;

(xiii)    in the case of the MDT Trustee or MDT Executive Director (if so designated by the MDT Trustees) who is the "administrator" within the meaning of Treasury Regulations section 1.468B-2(k)(3), perform the duties and functions contemplated in Section 6.01(b) of this Trust Agreement;

(xiv)    maintain appropriate liability insurance for the Indemnified Parties;

(xv)    pay statutory fees;

(xvi)    institute procedures, terms and conditions for any actions brought against any MDT Insurer consistent with Section 3.01(e) herein; and

(xvii)    perform such other duties and functions that are consistent with the implementation of the Plan and this Trust Agreement.

(c)    The MDT Trustees shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of the Master Disbursement Trust, including in respect of the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights. Such legal actions and other proceedings shall be limited solely to those required for the purposes of satisfying the responsibilities of the Master Disbursement Trust, including in respect of the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights. The MDT Trustees shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary or appropriate by the MDT Trustees. The Master Disbursement Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the date upon which the Master Disbursement Trust is established arising from, or associated with, any legal action or other proceeding brought pursuant to the foregoing.

(d)    Except as otherwise provided in this Trust Agreement, the MDT Trustees shall not be required to obtain any order or approval of the Bankruptcy Court or any other court of competent jurisdiction, or account to the Bankruptcy Court or any other court of competent jurisdiction, for the exercise of any right, power or privilege conferred hereunder.

(e)    To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the MDT Trustees shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer and the MDT Beneficiaries, to terminate, reduce or limit the scope of the MDT Insurer Injunction with respect to any MDT Insurer; provided that:

(i)    any termination, reduction, or limitation of the MDT Insurer Injunction shall apply in the same manner to all beneficiaries of the Creditor Trusts that are MDT Beneficiaries;

(ii)    the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust;

(iii)    any actions asserted against MDT Insurers as a result of the termination, reduction or limitation of the MDT Insurer Injunction shall comply with all procedures, terms and conditions implemented by the MDT Trustees with respect to such actions, provided that any such procedures, terms or conditions applicable to suits seeking recoveries under the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned, or delayed) of the Creditor Trustee for the PI Trust;

(iv)    all proceeds recovered in any manner, directly or indirectly, from any MDT Insurers (including, without limitation, as a result of actions asserted against, or settlements with, such MDT Insurers) shall be paid directly to the Master Disbursement Trust by the MDT Insurer (or, if such direct payment is not possible, immediately transferred (and in no event later than one (1) business day upon receipt) to the Master Disbursement Trust) for distribution in accordance with the Plan (including as if such proceeds were proceeds of MDT Insurance Rights); and

(v)    the Creditor Trustee(s) for each Creditor Trust that is an MDT Beneficiary may determine, subject to and in accordance with the applicable Creditor Trust Documents, to compensate the persons who have brought claims against MDT Insurers as a result of the termination, reduction or limitation in scope of the MDT Insurance Injunction; provided that, for the avoidance of doubt, such compensation shall not be additive to the amount that such MDT Beneficiary would otherwise receive pursuant to the Plan.

Section 3.02.    General Administration.

(a)    The MDT Trustees shall prepare and file or cause to be prepared and filed with the Bankruptcy Court, within forty-five (45) days after the last day of the fourth month following the Effective Date and after the last day of every fourth month thereafter, a thrice yearly report (the "MDT Report") containing reasonable information regarding the Master Disbursement Trust

and the MDT Trustees' activities (on a cumulative basis since the Effective Date and in the four-month period then ended), including with regard to (i) the MDT Shareholder Rights (or any reporting received pursuant to the Shareholder Settlement Agreement), (ii) the MDT Insurance Rights or the MDT Shareholder Insurance Rights (including any proceedings in respect thereof), (iii) the assets of the Master Disbursement Trust (including valuation thereof), (iv) expenditures of the Master Disbursement Trust, (v) distributions made by the Master Disbursement Trust and (vi) forward-looking projections with respect to the foregoing, in each case as the MDT Trustees deem to be reasonable and appropriate under the circumstances, taking into account the best interests of the MDT Beneficiaries and the purposes of the Master Disbursement Trust in accordance with the Plan and this Trust Agreement. The MDT Trustees shall provide a copy of each MDT Report to each of the Creditor Trustees for the Creditor Trusts and shall publish it on the MDT Website when such MDT Report is filed with the Bankruptcy Court.

(b)    The MDT Trustees shall, in connection with the filing of each MDT Report, host a call for the MDT Beneficiaries to answer questions of the MDT Beneficiaries relating to the MDT Report, and shall otherwise make themselves reasonably available to answer questions of the MDT Beneficiaries relating to the Master Disbursement Trust's activities.

(c)    The MDT Trustees shall prepare and deliver or cause to be prepared and delivered to the MDT Beneficiaries prior to each Scheduled MDT Distribution Date an annual budget of MDT Operating Expenses (the "MDT Operating Budget") for the twelve (12)-month period following such Scheduled MDT Distribution Date, which MDT Operating Budget shall be reviewed by, and reasonably acceptable to, the MDT Beneficiaries. In the event there is a dispute with respect to any MDT Operating Budget, the MDT Trustees shall refer such dispute to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such disputes. The MDT Trustees shall undertake to manage the expenses of the Master Disbursement Trust in accordance with the MDT Operating Budget.

(d)    The MDT Trustees shall establish a publicly available website (the "MDT Website") as soon as reasonably practicable after the Effective Date to aid in communicating information to the MDT Beneficiaries and Holders of Channeled Claims and in making the activities of the Master Disbursement Trust as transparent as possible. The MDT Trustees shall publish on the MDT Website (i) all reports received from the Abatement Trusts regarding the disbursement and use of Abatement Distributions and compliance with the Authorized Abatement Purposes, (ii) each MDT Report prepared and filed with the Bankruptcy Court in accordance with Section 3.02(a) hereof and (iii) such other information as the MDT Trustees deem prudent.

Section 3.03.    Master TDP. The Master TDP shall become effective and be automatically implemented according to its terms and the terms of the Plan upon the Effective Date, without any further order of the Bankruptcy Court or action by the MDT Trustees or any other Person. In the event any Person asserts any potential or alleged Channeled Claim against the Master Disbursement Trust, the MDT Trustees shall refer such potential or alleged Channeled Claim to the Bankruptcy Court, which shall determine whether such Person has a Channeled Claim and, if such Person has a Channeled Claim, whether such Channeled Claim is channeled to a Creditor Trust or otherwise released in accordance with the Master TDP.

ARTICLE IV
DURATION AND TERMINATION OF THE MASTER DISBURSEMENT TRUST

Section 4.01.  <u>Duration</u>. The Master Disbursement Trust was formed as of the execution and filing of a Certificate of Trust with the Delaware Secretary of State on [●], 2021 and its existence is intended to continue until such time as its Certificate of Trust has been cancelled by the filing of a certificate of cancellation in accordance with <u>Section 4.03</u> of this Trust Agreement.

Section 4.02.  <u>Dissolution of the Master Disbursement Trust</u>. The Master Disbursement Trust shall be dissolved and the MDT Trustees and the MDT Executive Director shall be discharged from their respective duties with respect to the Master Disbursement Trust upon completion of their duties as set forth in the Plan and this Trust Agreement, which, for the avoidance of doubt, shall be no earlier than the date on which (a) all Assets held by the Master Disbursement Trust, including the MDT Transferred Assets, have been liquidated and (b) all payments and other distributions required to be made from the Master Disbursement Trust under the Plan and this Trust Agreement have been made, including payment in full in Cash of all MDT Claims, unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court. Upon dissolution of the Master Disbursement Trust, any Cash remaining in the MDT Operating Reserve or otherwise held by the Master Disbursement Trust shall be distributed in accordance with the MDT Priority Waterfall and this Trust Agreement; *provided* that, in the event the Master Disbursement Trust is dissolved prior to the payment in full in Cash of all MDT Claims, all outstanding amounts under such MDT Claims shall be deemed due and payable for purposes of the distribution of such remaining Cash pursuant to the MDT Priority Waterfall. Subject to the foregoing sentences, the Master Disbursement Trust shall be dissolved at such time as the MDT Trustees determine that the administration of any remaining assets of the Master Disbursement Trust is not likely to yield sufficient additional proceeds to justify further pursuit.

Section 4.03.  <u>Continuance of Master Disbursement Trust for Winding Up</u>. After the dissolution of the Master Disbursement Trust and solely for the purpose of liquidating and winding up the affairs of the Master Disbursement Trust, the MDT Trustees, or the MDT Executive Director, shall continue to act as such until their duties have been fully performed. As soon as practicable after the MDT Trustees exhaust substantially all of the assets of the Master Disbursement Trust, the MDT Trustees shall, at the expense of the Master Disbursement Trust, (a) provide for the retention and storage of the Master Disbursement Trust's books and records until such time as all such books and records are no longer required to be retained under applicable law, (b) file a certificate with the Bankruptcy Court informing the Bankruptcy Court of the location at which such books and records are being stored and stating that the assets of the Master Disbursement Trust have been exhausted and that final distributions of Cash have been made pursuant to the Plan and this Trust Agreement, (c) notify the MDT Beneficiaries that the MDT Trustees have exhausted substantially all of the assets of the Master Disbursement Trust, and (d) file a certificate of cancellation with the Secretary of State of the State of Delaware to terminate the Master Disbursement Trust. Upon the taking of such actions in the preceding sentence, the Master Disbursement Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Master Disbursement Trust or payments to be made in connection therewith.

13

ARTICLE V
ACCOUNTS, INVESTMENTS AND PAYMENTS

Section 5.01.  Accounts. The MDT Trustees may, from time to time, create such accounts and reserves within or in the name of the Master Disbursement Trust as they may deem necessary, prudent or useful in order to discharge their duties hereunder and may, with respect to any such accounts or reserves, restrict the use of monies therein, and the earnings or accretions thereto (the "Trust Subaccounts"). Any such Trust Subaccounts established by the Trustees shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as "disputed claims reserves" within the meaning of the IRC or Treasury Regulations, "disputed ownership funds" within the meaning of the IRC or Treasury Regulations, or otherwise.

Section 5.02.  MDT Operating Reserve. On and after the Effective Date, the MDT Operating Reserve shall be held in a single segregated account administered by the MDT Trustees to pay any and all MDT Operating Expenses. On the Effective Date, the Debtors shall establish and fund the MDT Operating Reserve in accordance with the Plan, which shall vest in the Master Disbursement Trust in accordance with Section 5.6(b) of the Plan and be held and maintained by the MDT Trustees. All MDT Operating Expenses shall be satisfied and paid from the MDT Operating Reserve. Periodically, until the dissolution of the Master Disbursement Trust, the MDT Trustees shall replenish the MDT Operating Reserve from Cash held or received by the Master Disbursement Trust to the extent deemed necessary by the MDT Trustees to satisfy and pay estimated future MDT Operating Expenses.

Section 5.03.  MDT Claims Reserve. Upon the commencement and during the continuation of an MDT Reserve Period, the MDT Trustees shall establish the MDT Claims Reserve in a single segregated account administered by the MDT Trustees in accordance with the Plan and this Trust Agreement. For so long as an MDT Reserve Period is continuing, the MDT Claims Reserve shall remain in place and shall be funded, as of each relevant date of determination, in an amount equal to (a) all outstanding amounts then due on account of the MDT Claims plus (b) all installments of the MDT Claims due on the Scheduled MDT Distribution Date immediately following such date of determination; provided that, solely for purposes of any date of determination that is a NewCo Distribution Date on January 30 of any year, if the applicable MDT Reserve Period is continuing solely as a result of a payment default by certain Shareholder Payment Groups, this clause (b) shall be an amount equal to the installments of the MDT Claims due on the Scheduled MDT Distribution Date immediately following such NewCo Distribution Date multiplied by the SSA Percentage of such defaulting Shareholder Payment Groups for the next SSA Payment Date following such NewCo Distribution Date (the sum of the amounts in the foregoing clauses (a) and (b), the "MDT Claims Reserve Funding Amount").

Section 5.04.  Investments.

(a)      Investment of monies held in the Master Disbursement Trust shall comply with the guidelines set forth in Exhibit B to this Trust Agreement.

(b)      The foregoing paragraph (a) shall not apply to securities, instruments or other assets received as, or obtained as proceeds of, the MDT Transferred Assets, the NewCo Credit Support

14

Agreement, or, solely to the extent approved with the unanimous consent of the MDT Trustees, litigation or otherwise to resolve disputes.

Section 5.05. <u>Source of Payments</u>. All Master Disbursement Trust expenses and payments shall be payable solely out of the assets of the Master Disbursement Trust. None of the MDT Trustees, the MDT Executive Director or any other Protected Party shall be liable for the payment of any Master Disbursement Trust expense or payment or any other liability of the Master Disbursement Trust, except to the extent provided in the Plan or Plan Documents.

ARTICLE VI
TAX MATTERS

Section 6.01. <u>U.S. Federal Income Tax Treatment</u>.

(a)    The Master Disbursement Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC (the "<u>QSF Regulations</u>") and shall be treated consistently for state and local tax purposes, to the extent applicable. All parties (including the Debtors, the Master Disbursement Trust, the MDT Trustees and the Creditor Trusts) shall report consistently with the foregoing.

(b)    An MDT Trustee or the MDT Executive Director, as determined by a majority vote of the MDT Trustees, shall be the "administrator," within the meaning of Treasury Regulations section 1.468B-2(k)(3), of the Master Disbursement Trust. The administrator of the Master Disbursement Trust shall be responsible for (i) preparing and filing, or causing to be prepared and filed, all tax returns of the Master Disbursement Trust and the payment, out of the Assets of the Master Disbursement Trust, of any taxes due by or imposed on the Master Disbursement Trust and (ii) complying with all applicable tax reporting and withholding obligations. The MDT Trustees shall be responsible for causing the Master Disbursement Trust to satisfy all requirements necessary to qualify and maintain qualification of the Master Disbursement Trust as a qualified settlement fund within the meaning of the QSF Regulations, and shall take no action that could cause the Master Disbursement Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations. The MDT Trustees may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Master Disbursement Trust for all taxable periods through the dissolution of the Master Disbursement Trust.

(c)    Subject to <u>Section 6.01(b)</u> of this Trust Agreement, following the Effective Date, the MDT Trustees shall be responsible for all of the Master Disbursement Trust's tax matters, including, without limitation, tax audits, claims, defenses and proceedings. The MDT Trustees shall also file (or cause to be filed) any other statement, return or disclosure relating to the Master Disbursement Trust that is required by any governmental unit and be responsible for payment, out of the MDT Operating Reserve, of any taxes imposed on the Master Disbursement Trust or its assets.

Section 6.02. <u>Tax Withholdings</u>. The administrator of the Master Disbursement Trust shall withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant

to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or distribution to the MDT Beneficiaries. All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such MDT Beneficiaries for all purposes of this Trust Agreement. The MDT Trustees shall be authorized to collect such tax information from the MDT Beneficiaries (including tax identification numbers) as in their sole discretion the MDT Trustees deem necessary to effectuate the Plan, the Confirmation Order, and this Trust Agreement. In order to receive distributions, all MDT Beneficiaries shall be required to provide tax information to the MDT Trustees to the extent the MDT Trustees deem appropriate in the manner and in accordance with the procedures from time to time established by the MDT Trustees for these purposes. The MDT Trustees may refuse to make a payment or distribution to an MDT Beneficiary that fails to furnish such information in a timely fashion, and until such information is delivered may treat such MDT Beneficiary's MDT Claim or MDT Interest, as applicable, as disputed; *provided*, *however*, that, upon the delivery of such information by an MDT Beneficiary, the MDT Trustees shall make such payment or distribution to which such MDT Beneficiary is entitled, without additional interest occasioned by such MDT Beneficiary's delay in providing tax information. Notwithstanding the foregoing, if an MDT Beneficiary fails to furnish any tax information reasonably requested by the MDT Trustees before the date that is three hundred sixty-five (365) calendar days after the request is made or, if earlier, the date on which the Master Disbursement Trust is terminated in accordance with Article IV of this Trust Agreement, the amount of such payment or distribution shall irrevocably revert to the Master Disbursement Trust, and any MDT Claim with respect to such distribution shall be discharged and forever barred from assertion against the Master Disbursement Trust Beneficiary or its property.

## ARTICLE VII
## DISTRIBUTIONS

Section 7.01.  Distributions.

(a)      The MDT Trustees shall distribute all MDT Transferred Assets on behalf of the Master Disbursement Trust in accordance with the Plan and this Trust Agreement.

(b)      In accordance with the Master TDP, on the Effective Date, or as soon thereafter as reasonably practicable, the Master Disbursement Trust shall (i) make the Initial Private Creditor Trust Distributions to the Private Creditor Trusts and (ii) make the Initial Public Creditor Trust Distributions (other than the Public Schools' Special Education Initiative Contribution) and distribute the TopCo Interests to NOAT and TAFT.

(c)      Subject to Section 7.03 of this Trust Agreement, the MDT Trustees shall make distributions after the Effective Date as follows:

(i)      on each MDT Distribution Date, the MDT Trustees shall apply all Cash and cash equivalents of the Master Disbursement Trust (other than amounts subject to distribution in accordance with Section 5.2(d)(iv)(A) and (B) of the Plan) in accordance with the MDT Priority Waterfall;

(ii)      until the MDT PI Claim has been paid in full in Cash, no later than thirty (30) days after the receipt by the Master Disbursement Trust of any MDT

16

Bermuda-Form Insurance Proceeds, the MDT Trustees shall make the distribution to the PI Trust required pursuant to Section 5.2(d)(iv)(A) of the Plan; and

(iii)    until all MDT Claims have been paid in full in Cash, no later than ten (10) Business Days after the receipt by the Master Disbursement Trust of any MDT Distributable Sale Proceeds, the MDT Trustees shall make the distributions to the MDT Beneficiaries of the MDT Claims required pursuant to Section 5.2(d)(iv)(B) of the Plan.

(d)    The MDT Trustees shall not make any distributions, including to MDT Beneficiaries on account of the MDT Claims or MDT Interests or to NewCo or TopCo on account of repayments under the NewCo Credit Support Agreement, other than as provided in the foregoing paragraphs (b) and (c).

(e)    All distributions made by the MDT Trustees to any MDT Beneficiary shall be made on no less than ten (10) Business Days' notice to all MDT Beneficiaries, and thereafter shall become the property of such MDT Beneficiary, free and clear of all Claims, Liens or other recourse or encumbrances, and shall not be subject to attachment, disgorgement or recoupment by any Person, subject to Section 7.05 hereof; *provided* that such ten (10) Business Days' notice period shall not be required for the distributions to be made on the Effective Date in accordance with the Master TDP.

Section 7.02.   Distribution Dates.

(a)    The initial Scheduled MDT Distribution Date shall be [●].[3] Reasonably promptly after the Effective Date, the MDT Trustees shall provide notice to all MDT Beneficiaries of the date of such initial Scheduled MDT Distribution Date.

(b)    Subject to Section 7.03(a) hereof, the second Scheduled MDT Distribution Date shall be July 31, 2023 and each successive Scheduled MDT Distribution Date thereafter shall be on the twelve (12)-month anniversary of the preceding Scheduled MDT Distribution Date;

(c)    Subject to Section 7.03(a) hereof, there shall be an MDT Distribution Date on each date that is ten (10) Business Days after the receipt by the Master Disbursement Trust of a Shareholder Prepayment in accordance with Section 5.2(d)(iv)(C) of the Plan.

(d)    Subject to Section 7.03 of the Plan, the MDT Trustees may, in their discretion, acting in accordance with their fiduciary duties to the MDT Beneficiaries in accordance with Section 5.6(f) of the Plan, declare an MDT Distribution Date on any other date on which the MDT Trustees seek to make a repayment to NewCo or TopCo or a Public Creditor Trust Distribution.

---

[3] Expected to be July 31, 2022.

(e)      In the event that an MDT Distribution Date is a date that is not a Business Day, such MDT Distribution Date shall automatically be deemed to occur on the next succeeding Business Day.

Section 7.03.   <u>Escrow Periods and MDT Reserve Periods</u>.

(a)      No distributions shall be made to MDT Beneficiaries during an Escrow Period. If an Escrow Period is in effect on any date that would otherwise be an MDT Distribution Date or on which a distribution would otherwise be required to be paid by the Master Disbursement Trust, such MDT Distribution Date shall be deemed to not occur and such distribution shall be deemed to not be required to be paid, in each case, until the next Business Day following the termination of such Escrow Period. The MDT Trustees shall provide prompt written notice to all MDT Beneficiaries upon the commencement and upon the termination of any Escrow Period in accordance with the Shareholder Settlement Agreement.

(b)      An MDT Reserve Period shall commence immediately, and the MDT Trustees shall promptly provide notice thereof to NewCo, TopCo and each MDT Beneficiary, upon the occurrence of any of the following events: (i) any amount is not paid to the Master Disbursement Trust when due under the Shareholder Settlement Agreement, (ii) the MDT Trustees determine, after the receipt of a written acknowledgment by any obligor under the Shareholder Settlement Agreement that any amounts due on the next SSA Payment Date are not expected to be paid and that the Master Disbursement Trust is not likely to be able to fund the payments due on account of the MDT Claims on the next Scheduled MDT Distribution Date after taking into account all sources of liquidity and expected recoveries by the Master Disbursement Trust or (iii) the MDT Trustees determine, on or after the date that is one hundred twenty (120) days prior to July 31, 2024, that the Master Disbursement Trust is not likely to be able to fund the payments due on account of the MDT Claims on July 31, 2024 from the payments due under the Shareholder Settlement Agreement and other sources of liquidity and expected recoveries by the Master Disbursement Trust. Each MDT Reserve Period shall continue until either (x) all currently and past due payments under the Shareholder Settlement Agreement have been paid in full and, with respect to any MDT Reserve Period commencing or continuing based upon a determination by the MDT Trustees under clause (ii) or (iii) of the foregoing sentence, the MDT Trustees determine that the circumstances described in such clauses are no longer reasonably likely to occur or (y) the MDT Trustees determine that the Master Disbursement Trust is not reasonably likely to be unable to make the required payments on account of the MDT Claims on the next Scheduled MDT Distribution Date. The MDT Trustees shall provide prompt written notice to all MDT Beneficiaries upon the commencement and upon the termination of any MDT Reserve Period.

(c)      Upon the commencement of an MDT Reserve Period, the MDT Trustees shall establish and fund the MDT Claims Reserve in an amount equal to the MDT Claims Reserve Funding Amount. For so long as such MDT Reserve Period is continuing, the MDT Claims Reserve shall remain in place and no Public Creditor Trust Distributions, nor any repayments by the Master Disbursement Trust to NewCo or TopCo, shall be made until the MDT Operating Reserve is fully funded in an amount deemed necessary by the MDT Trustees to satisfy and pay estimated future MDT Operating Expenses and the MDT Claims Reserve is fully funded in an amount equal to the MDT Claims Reserve Funding Amount, in each case, determined as of the proposed date of such Public Creditor Trust Distribution or repayment to NewCo or TopCo. For

the avoidance of doubt, notwithstanding the occurrence and continuation of an MDT Reserve Period, so long as the MDT Operating Reserve and the MDT Claims Reserve are fully funded, the Master Disbursement Trust shall continue to make Public Creditor Trust Distributions from MDT Excess Cash solely in accordance with Section 5.2(e) of the Plan and this Trust Agreement.

Section 7.04.    Public Creditor Trust Distributions. All Public Creditor Trust Distributions from the Master Disbursement Trust shall be allocated between NOAT, on the one hand, and TAFT, on the other hand, in accordance with the Public Entity Allocation. In order to effectuate the Public Entity Allocation, the MDT Trustees shall maintain written records of each Public Creditor Trust Distribution made to NOAT, TAFT or Tribe Opioid LLC by TopCo or the Master Disbursement Trust. Prior to each NewCo Distribution Date and MDT Distribution Date, the MDT Trustees shall calculate the then-current Public Entity Allocation and provide written notice thereof to each of TopCo, NOAT, TAFT and Tribe Opioid LLC so that all Public Creditor Trust Distributions, whether from the Master Disbursement Trust or TopCo, to be made on or in connection with such NewCo Distribution Date or MDT Distribution Date can be made in accordance therewith. In furtherance of the foregoing, the TopCo Managers shall provide to the MDT Trustees advance written notice of each Public Creditor Trust Distribution to be made by TopCo and any other information with respect to Public Creditor Trust Distributions reasonably requested by the MDT Trustees. For the avoidance of doubt, none of the MDT Trustees or the Master Disbursement Trust shall have any liability for any Public Creditor Trust Distribution made by TopCo.

Section 7.05.    Restriction on Use of Distributions by Creditor Trusts. Each distribution made by the Master Disbursement Trust to the Creditor Trusts, including all Public Creditor Trust Distributions received on account of the TopCo Interests, shall be used exclusively for the administration (including the payment of Creditor Trust Operating Expenses) of such Creditor Trust, to make Distributions in accordance with the applicable Creditor Trust TDP on account of Channeled Claims channeled to such Creditor Trust pursuant to the Master TDP and for such other purposes as may be specifically set forth in the applicable Creditor Trust Documents and the Plan, including the assessments required pursuant to Section 5.8 of the Plan.

ARTICLE VIII
MDT TRUSTEES, MDT EXECUTIVE DIRECTOR AND RESIDENT TRUSTEE

Section 8.01.    The MDT Trustees.

(a)    There shall be three (3) MDT Trustees. The initial MDT Trustees shall be [●], [●] and [●]. References herein to the MDT Trustees shall refer to the individuals serving as the MDT Trustees solely in their respective capacities as trustees hereunder.

(b)    Unless otherwise provided herein, any act of the Master Disbursement Trust shall require the approval of and shall be approved by the affirmative vote of a majority of the MDT Trustees.

(c)    The MDT Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 8.02.    Term of Service of the MDT Trustees.

19

(a)      Each MDT Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 8.02(b) hereof, (iii) his or her removal pursuant to Section 8.02(c) hereof and (iv) such MDT Trustee complying with his or her obligations pursuant to Section 4.03 following the dissolution of the Master Disbursement Trust pursuant to Section 4.02 hereof.

(b)      An MDT Trustee may resign from the Master Disbursement Trust by giving not less than sixty (60) days' prior written notice thereof to each of the other MDT Trustees. Such resignation shall become effective on the later to occur of (i) the date specified in such written notice, (ii) the effective date of the appointment of a successor MDT Trustee in accordance with Section 8.03(a) of this Trust Agreement and such successor's acceptance of such appointment in accordance with Section 8.03(b) of this Trust Agreement and (iii) if such MDT Trustee is the last MDT Trustee then in office, the appointment of a successor by the Bankruptcy Court and the acceptance by such successor of such appointment. If a successor MDT Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation of the last MDT Trustee in office, then such MDT Trustee may petition the Bankruptcy Court for the appointment of a successor MDT Trustee. With respect to any other MDT Trustee's resignation, such resignation shall be effective whether or not a successor has been appointed by the effective date of the resigning MDT Trustee's resignation.

(c)      Upon the payment in full of the MDT Claims, any MDT Trustee may be removed by NOAT in its sole discretion. Prior to the payment in full of the MDT Claims, any MDT Trustee may be removed either (i) at the unanimous recommendation of the other two (2) MDT Trustees in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause or (ii) in connection with any dispute raised by any MDT Beneficiary in accordance with Section 8.02(d) below. Any removal of any MDT Trustee shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

(d)      To the extent there are any disputes raised by any MDT Beneficiary regarding the operation of the Master Disbursement Trust or the actions of the MDT Fiduciaries (including, without limitation, any failure to give notice of an MDT Reserve Period and any action related to the MDT Shareholder Rights), (i) any MDT Beneficiary shall have the right to seek resolution by the Bankruptcy Court of such a dispute, including seeking to enjoin any disputed action by the Master Disbursement Trust, and all MDT Fiduciaries and MDT Beneficiaries shall have the right to be heard with regard to any such dispute, including by filing objections, declarations, statements in support or other pleadings (including with supporting evidence) or providing witness testimony at any hearing and (ii) the Bankruptcy Court shall have exclusive jurisdiction to hear and resolve any such disputes, and shall be authorized to order appropriate relief (subject to the provisions of Section 5.6(f) of the Plan and this Trust Agreement and make a determination in an expedited manner, and in all events, shall make such a decision within thirty (30) days from the request for relief).

(e)      The death, resignation or removal of an MDT Trustee shall not operate to terminate the Master Disbursement Trust or to revoke any existing agency created pursuant to the terms of this Trust Agreement, the Plan or the Confirmation Order or invalidate any action theretofore taken by such MDT Trustee. All fees and expenses properly incurred by an MDT Trustee prior to the death, resignation or removal of such MDT Trustee shall be paid from the MDT Operating Reserve,

unless such fees and expenses are disputed, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor MDT Trustee that are subsequently allowed by the Bankruptcy Court shall be paid from the MDT Operating Reserve. In the event of the resignation or removal of an MDT Trustee, such MDT Trustee shall (i) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the remaining MDT Trustees or the successor MDT Trustee or directed by the Bankruptcy Court to effect the termination of such MDT Trustee's capacity under this Trust Agreement, (ii) promptly deliver to the remaining MDT Trustees and the successor MDT Trustee all documents, instruments, records and other writings related to the Master Disbursement Trust as may be in the possession of such MDT Trustee, and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor MDT Trustee.

Section 8.03.    Appointment of Successor MDT Trustees.

(a)    In the event of the death, resignation or removal of an MDT Trustee, a vacancy shall be deemed to exist and a successor shall be appointed by the other two (2) MDT Trustees, subject to the approval of the Bankruptcy Court, *provided* that, solely upon the payment in full of all MDT Claims, the MDT Trustees may be replaced by NOAT (including with any of the Creditor Trustees of NOAT) in its sole discretion. Such appointment shall specify the date on which such appointment shall be effective.

(b)    Any successor MDT Trustee appointed in accordance with this Trust Agreement shall execute an instrument accepting its appointment and shall deliver a counterpart thereof to the Bankruptcy Court for filing and, in case of an MDT Trustee's resignation, to the resigning MDT Trustee. Thereupon, such successor MDT Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Master Disbursement Trust with like effect as if originally named an initial MDT Trustee and shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The resigning or removed MDT Trustee shall duly assign, transfer and deliver to such successor MDT Trustee all property and money held by such resigning or removed MDT Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor MDT Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor MDT Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed MDT Trustee.

Section 8.04.    MDT Executive Director.

(a)    The MDT Executive Director shall be appointed by the MDT Trustees. The initial MDT Executive Director shall be [●].

(b)    The MDT Executive Director shall (i) carry out the day-to-day operations of the Master Disbursement Trust; (ii) make such enforcement, litigation and liquidation recommendations as are reasonably necessary to the MDT Trustees and such other administrative professionals or entities; and (iii) have such other duties and responsibilities as set forth in this Trust Agreement and as may be delegated to him or her by the MDT Trustees in accordance with this Trust Agreement. The MDT Executive Director shall comply with the terms of the Plan and

this Trust Agreement, and shall always act consistently with, and not contrary to, the purpose of the Master Disbursement Trust as set forth in the Plan.

(c)     The MDT Executive shall serve until the earliest of (i) his or her death, (ii) his or her resignation, (iii) his or her removal pursuant to Section 8.04(d) hereof and (iv) the dissolution of the Master Disbursement Trust pursuant to Section 4.02 hereof.

(d)     The MDT Executive Director may be removed by the majority vote of MDT Trustees. Such removal shall become effective on the date action is taken by the MDT Trustees or such other date as the MDT Trustees determine.

Section 8.05.    Independence of the MDT Trustees and MDT Executive Director.

(a)     The MDT Trustees and the MDT Executive Director shall be, at the time of appointment and at all times during the term of service, disinterested and independent.

(b)     None of the MDT Trustees or the MDT Executive Director shall, during the term of his or her service, hold a financial interest in, act as a representative, attorney, consultant or agent for or serve as any other professional for any Person with a financial interest in the Master Disbursement Trust or any Creditor Trust, including any Creditor Trustee or any Holder of a Channeled Claim; *provided* that, solely upon the payment in full of all MDT Claims, a Creditor Trustee of NOAT may be appointed as an MDT Trustee by NOAT in accordance with Section 8.03(a) hereof.

Section 8.06.    Obligations of the MDT Fiduciaries. The MDT Trustees and, to the extent he or she is determined by a court of competent jurisdiction to be subject to fiduciary duties, the MDT Executive Director shall take into account the interests of, and owe fiduciary duties to, each of the MDT Beneficiaries in making all decisions on behalf of the Master Disbursement Trust in accordance with Section 5.6(f) of the Plan. In furtherance of the foregoing, (a) in the event of a Specified Default (as defined in the Shareholder Settlement Agreement), the MDT Trustees and, to the extent he or she is determined by a court of competent jurisdiction to be subject to fiduciary duties, the MDT Executive Director, will take into account the remaining rights of the holders of MDT Claims as well as the interests of the holders of MDT Interests in formulating and exercising appropriate remedies as they relate to the Shareholder Payment Parties and the Shareholder Release Snapback Parties, but shall in all events, to the extent there are obligations remaining to the Private Creditor Trusts upon such default, seek to utilize all other available sources of assets (including by (i) enforcement of the NewCo Credit Support Agreement in accordance with the terms thereof and (ii) first utilizing commercially reasonable efforts to pursue a Payment Remedy (as defined in the Shareholder Settlement Agreement) before electing to pursue a Shareholder Release Remedy) to pay all outstanding amounts owed to the holders of MDT Claims then-due or to be paid in the future from amounts due from such Breaching Shareholder Family Group until such outstanding amounts have been paid in full, and (b) the Master Disbursement Trust shall provide no less than ten (10) Business Days' advance written notice (unless urgent circumstances require less notice) to each MDT Beneficiary of any material action proposed to be taken in respect of the MDT Shareholder Rights, including any exercise of remedies under the Shareholder Settlement Agreement or the commencement or settlement of any litigation against any Shareholder Payment Party or Shareholder Release Snapback Party.

Section 8.07.   Compensation and Expenses of the MDT Trustees and the MDT Executive Director and MDT Professionals. The MDT Trustees and the MDT Executive Director shall be entitled to reasonable compensation and to retain and reasonably compensate counsel, agents, advisors, consultants and other professionals (the "MDT Professionals") to assist in the duties of the Master Disbursement Trust on such terms as the MDT Trustees and the MDT Executive Director deem appropriate, without Bankruptcy Court approval. The compensation of the initial MDT Trustees shall be $[●]. The compensation of the initial MDT Executive Director shall be $[●]. The compensation of any successor MDT Trustee or MDT Executive Director shall be reasonably acceptable to the MDT Beneficiaries in the same manner as provided for the MDT Operating Budget. The payment of the fees and expenses of the MDT Trustees, the MDT Executive Director and the Master Disbursement Professionals shall be made from the MDT Operating Reserve in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided* that any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

Section 8.08.   Resident Trustee.

(a)     The Resident Trustee has been appointed and hereby agrees to serve as a trustee of the Master Disbursement Trust solely for the purpose of complying with the requirement of Section 3807(a) of the Trust Act that the Master Disbursement Trust have one trustee, which, in the case of a natural person, is a resident of the State of Delaware, or which in all other cases, has its principal place of business in the State of Delaware. The duties and responsibilities of the Resident Trustee shall be limited solely to (i) accepting legal process served on the Master Disbursement Trust in the State of Delaware, (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Resident Trustee is required to execute under Section 3811 of the Trust Act, and (iii) any other duties specifically allocated to the Resident Trustee in this Trust Agreement. Except as provided in the foregoing sentence, the Resident Trustee shall have no management responsibilities or owe any fiduciary duties to the Master Disbursement Trust, the MDT Trustees, or the MDT Beneficiaries.

(b)     By execution of this Trust Agreement, the Resident Trustee accepts the Master Disbursement Trust created herein. Except as otherwise expressly required by Section 8.08(a) of this Trust Agreement, the Resident Trustee shall not have any duty or liability with respect to the administration of the Master Disbursement Trust, the investment of the assets of the Master Disbursement Trust or the distribution of the MDT Transferred Assets to the MDT Beneficiaries, and no such duties shall be implied. The Resident Trustee shall not be liable for the acts or omissions of the MDT Trustees, nor shall the Resident Trustee be liable for supervising or monitoring the performance of the duties and obligations of the MDT Trustees or the MDT Executive Director under this Trust Agreement, except as expressly required by Section 8.08(a) of this Trust Agreement. The Resident Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Resident Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, bad faith, or gross negligence. Without limiting the foregoing:

(i)      the Resident Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence;

(ii)    no provision of this Trust Agreement shall require the Resident Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Resident Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)    the Resident Trustee shall not be personally liable for the validity or sufficiency of this Trust Agreement or for the due execution of this Trust Agreement by the other parties to this Trust Agreement;

(iv)    the Resident Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(v)    the Resident Trustee may request the MDT Trustees to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Resident Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)    in the exercise or administration of the Master Disbursement Trust hereunder, the Resident Trustee (A) may act directly or through agents or attorneys pursuant to agreements entered into with any of them and (B) may consult with nationally recognized counsel selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel; and

(vii)    the Resident Trustee acts solely as Resident Trustee hereunder and not in its individual capacity, and all persons having any claim against the Resident Trustee by reason of the transactions contemplated by this Trust Agreement shall look only to the assets of the Master Disbursement Trust for payment or satisfaction thereof.

(c)    The Resident Trustee shall be entitled to receive compensation out of the assets of the MDT Operating Reserve for the services that the Resident Trustee performs in accordance with this Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Resident Trustee and the MDT Trustees. The Resident Trustee may also consult with counsel (who may be counsel for the Master Disbursement Trust or for the Resident Trustee) with respect to those matters that relate to the Resident Trustee's role as the Delaware resident trustee of the Master Disbursement Trust, and the reasonable legal fees incurred in connection with such consultation shall be reimbursed out of the MDT Operating Reserve to the Resident Trustee pursuant to this Section 8.08(c) on terms acceptable to the MDT Trustees; *provided* that no such fees shall be reimbursed to the extent that they are incurred as a result of the Resident Trustee's gross negligence, bad faith or willful misconduct.

(d)     The Resident Trustee shall serve for the duration of the Master Disbursement Trust or until the earlier of (i) the effective date of the Resident Trustee's resignation, or (ii) the effective date of the removal of the Resident Trustee. The Resident Trustee may resign at any time by giving thirty (30) days' written notice to the MDT Trustees; *provided*, *however*, that such resignation shall not be effective until such time as a successor Resident Trustee has accepted appointment. The Resident Trustee may be removed at any time by the MDT Trustees by providing thirty (30) days' written notice to the Resident Trustee; *provided*, *however*, such removal shall not be effective until such time as a successor Resident Trustee has accepted appointment. Upon the resignation or removal of the Resident Trustee, the MDT Trustees shall appoint a successor Resident Trustee. If no successor Resident Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation or removal, the Resident Trustee may petition the Bankruptcy Court for the appointment of a successor Resident Trustee. Any successor Resident Trustee appointed pursuant to this Section 8.08(d) of this Trust Agreement shall be eligible to act in such capacity in accordance with this Trust Agreement and, following compliance with this Section 8.08(d) of this Trust Agreement, shall become fully vested with the rights, powers, duties, and obligations of its predecessor under this Trust Agreement, with like effect as if originally named as Resident Trustee. Any such successor Resident Trustee shall notify the Resident Trustee of its appointment by providing written notice to the Resident Trustee, and upon receipt of such notice, the Resident Trustee shall be discharged of its duties herein.

## ARTICLE IX
## RELIANCE, LIABILITY AND INDEMNIFICATION

Section 9.01.   Reliance by the MDT Trustees and the MDT Executive Director. Except as otherwise provided in this Trust Agreement, the Plan or the Confirmation Order, each MDT Trustee and the MDT Executive Director may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by such MDT Trustee and/or the MDT Executive Director to be genuine and to have been signed or presented by the proper party or parties having relevant authority or expertise.

Section 9.02.   Nonliability of MDT Trustees and MDT Executive Director. Except as provided herein, nothing contained in this Trust Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the MDT Trustees, the MDT Executive Director or the MDT Professionals of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by the MDT Trustees to assume or accept any such liability, obligation or duty. Any successor MDT Trustee or MDT Executive Director may accept and rely upon any accounting made by or on behalf of any predecessor MDT Trustee or MDT Executive Director hereunder, and any statement or representation made as to the assets comprising the MDT Transferred Assets or as to any other fact bearing upon the prior administration of the Master Disbursement Trust, so long as it has a good faith basis to do so. The MDT Trustees and the MDT Executive Director shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. Any successor MDT Trustee and MDT Executive Director shall not be liable for any act or omission of any predecessor MDT Trustee or MDT Executive Director, nor have a duty to enforce any claims against any predecessor MDT Trustee or MDT Executive

25

Director on account of any such act or omission. No provision of this Trust Agreement shall require the MDT Trustees or MDT Executive Director to expend or risk his or her personal funds or otherwise incur any financial liability in the performance of his or her rights or powers hereunder if the MDT Trustee or MDT Executive Director has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to him or her.

Section 9.03.    Exculpation. To the maximum extent permitted by applicable law, each of the MDT Trustees, the MDT Executive Director, the MDT Professionals and the Resident Trustee shall not have or incur any liability for actions taken or omitted in his or her capacity as an MDT Trustee, the MDT Executive Director, an MDT Professional or the Resident Trustee, or on behalf of the Master Disbursement Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or inactions in his or her capacity as an MDT Trustee, the MDT Executive Director, an MDT Professional or the Resident Trustee, or on behalf of the Master Disbursement Trust, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the MDT Trustees, the MDT Executive Director, the MDT Professionals or the Resident Trustee shall be satisfied from the MDT Operating Reserve.

Section 9.04.    Limitation of Liability. The MDT Trustees, the Resident Trustee, the MDT Executive Director, and the Master Disbursement Professionals will not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Trust Agreement under any circumstances.

Section 9.05.    Indemnity. The Master Disbursement Trust shall indemnify and hold harmless each of the MDT Trustee, MDT Executive Director, MDT Professional and Resident Trustee, in each case solely in such Person's capacity as such (each, an "Indemnified Party") from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses (other than taxes in the nature of income taxes imposed on compensation paid to the Indemnified Parties), including, but not limited to, attorneys' fees, arising out of or due to the implementation or administration of the Plan or this Trust Agreement, other than such Indemnified Party's willful misconduct, bad faith, gross negligence or fraud, with respect to the implementation or administration of the Plan or this Trust Agreement. To the extent that an Indemnified Party asserts a claim for indemnification as provided above, (a) any payment on account of such claim shall be paid solely from the MDT Operating Reserve and (b) the legal fees and related costs incurred by counsel to such Indemnified Party in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (provided that such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the MDT Operating Reserve or any insurance purchased using the MDT Operating Reserve. This indemnification provision shall remain available to, and the repayment obligation and be binding upon, any former MDT Trustee, MDT Executive Director, MDT Professional or Resident Trustee or the estate of any deceased MDT Trustee, MDT Executive Director, MDT Professional or Resident Trustee, as the case may be, and shall survive the termination of the Master Disbursement Trust.

26

ARTICLE X
MISCELLANEOUS PROVISIONS

Section 10.01. <u>Actions Taken on Other Than a Business Day</u>. In the event that any payment or act under the Plan or this Trust Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 10.02. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to principles of conflicts of laws.

Section 10.03. <u>Jurisdiction</u>. Subject to the proviso below, the Bankruptcy Court shall have exclusive jurisdiction over the Master Disbursement Trust, the MDT Trustees and the MDT Executive Director, including the administration and activities of the Master Disbursement Trust, the MDT Trustees and the MDT Executive Director, and, pursuant to the Plan, the Bankruptcy Court has retained such jurisdiction; *provided*, *however*, that, notwithstanding the foregoing, the MDT Trustees shall have power and authority to bring any action in any court of competent jurisdiction (including the Bankruptcy Court) to prosecute any MDT Causes of Action or any other Causes of Action held by the Master Disbursement Trust.

Section 10.04. <u>Severability</u>. In the event any provision of this Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Trust Agreement shall be valid and enforceable to the full extent permitted by law.

Section 10.05. <u>Notices</u>. Any notice or other communication required or permitted to be made under this Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by email, sent by nationally recognized overnight delivery service or mailed by first-class mail:

(a)    if to the Master Disbursement Trust, to:

[●]
Email: [●]

with a copy to:

[●]
Email: [●]

(b)    if to the MDT Trustees, to:

27

[●]
Email: [●]

(c)    if to the MDT Executive Director, then to each of:

[●]
Email: [●]

[●]
Email: [●]

[●]
Email: [●]

(d)    if to the MDT Beneficiaries, then to each of or as applicable:

(i)    with respect to the Private Creditor Trusts:

PI Trust
Edgar C. Gentle III
c/o Gentle Turner Sexton & Harbison, LLC
Hoover, Alabama 35244
Email: egentle@gtandslaw.com

Hospital Trust
[●]
Email: [●]

TPP Trust
[●]
Email: [●]

NAS Monitoring Trust
[●]
Email: [●]

(ii)    with respect to the Public Creditor Trusts:

NOAT
[●]
Email: [●]

TAFT or Tribe Opioid LLC
[●]
Email: [●]

(iii)    with respect to the United States:

[●]
Email: [●]

Section 10.06. <u>Headings</u>. The headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision of this Trust Agreement.

Section 10.07. <u>Entire Trust Agreement</u>. This Trust Agreement (including the recitals and annex hereto), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter of this Trust Agreement.

Section 10.08. <u>Amendment and Waiver</u>. Any provision of this Trust Agreement may be amended or waived only with the consent of (x) a majority of the MDT Trustees, (y) NOAT and (z) until the payment in full of the MDT Claims, a majority in number of the other MDT Beneficiaries (excluding NOAT); provided, however, that the MDT Trustees may amend this Trust Agreement by unanimous consent of the MDT Trustees from time to time, without the consent, approval or other authorization of any other Person, to make minor modifications or clarifying amendments as necessary to enable the MDT Trustees to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, no amendment or waiver of any provision of this Trust Agreement shall modify this Trust Agreement in a manner that (a) is inconsistent with the Plan or the Confirmation Order without an order of the Bankruptcy Court (after notice and a hearing) approving such modification, other than to make minor modifications or clarifying amendments by unanimous consent of the MDT Trustees as necessary to enable the MDT Trustees to effectuate the provisions of this Trust Agreement, (b) would adversely impact the distributions to, or confer additional obligations or liabilities upon, any MDT Beneficiary without the consent of such MDT Beneficiary; (c) would alter the duties or liabilities of the Resident Trustee without the consent of the Resident Trustee or (d) would amend or waive this Section 10.08. The MDT Trustees shall provide notice to the MDT Beneficiaries of any proposed amendment or wavier of any provision of this Trust Agreement including, for the avoidance of doubt, any proposed amendment or waiver that does not require the consent of the MDT Beneficiaries hereunder, not less than ten (10) Business Days before such amendment or waiver becomes effective.

Section 10.09. <u>Confidentiality</u>. The MDT Trustees, the Resident Trustee, the MDT Executive Director and the MDT Professionals (each, a "<u>Confidential Party</u>" and, collectively, the "<u>Confidential Parties</u>") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Debtor to which any of the MDT Transferred Assets relates; *provided*, *however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties or (b) such disclosure is required of the Confidential Parties pursuant to legal process including subpoena or other court order or other applicable laws or regulations. For the avoidance of doubt and notwithstanding anything to the contrary herein, each Confidential Party shall comply with Section 5.11(c) of the Plan.

Section 10.10. <u>Meanings of Other Terms</u>. Except where the context otherwise requires, (a) words importing the masculine, feminine or neuter gender include the masculine, feminine and

neuter gender, (b) words importing the singular or plural number shall include the singular and plural number, (c) the words "herein," "hereof," or "hereunder" and other words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Trust Agreement and (d) the words "includes" and "including" are not limiting.

Section 10.11. <u>Counterparts</u>. This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the Effective Date.

**[DEBTORS]**

By: _____
    Name:
    Title:

**[MDT TRUSTEE]**, as MDT Trustee

By: _____
    Name:

**[MDT TRUSTEE]**, as MDT Trustee

By: _____
    Name:

**[MDT TRUSTEE]**, as MDT Trustee

By: _____
    Name:

**[RESIDENT TRUSTEE]**, as Resident Trustee

By: _____
    Name:
    Title:

[Signature Page to Master Disbursement Trust Agreement]

<u>Schedule 1</u>

**Schedule of MDT Bermuda-Form Insurance Policies**

| Insurer | Policy Period Start | Policy Period End | Policy Number |
|---|---|---|---|
| Steadfast Insurance Company | 10/1/1999 | 10/1/2005 | GL02729885-03 |
| National Union Fire Insurance Company of Pittsburgh, PA | 10/1/2000 | 10/1/2005 | BE 357 40 57 |
| American International Specialty Lines Insurance Company | 10/1/2000 | 10/1/2005 | 267-47-08 |
| Gulf Underwriters Insurance Company | 10/1/1997 | 10/1/2005 | GU6078280 |
| Zurich Reinsurance (London) Limited | 10/1/1998 | 10/1/2005 | 823/KE9801815 |
| Gerling-Konzern General Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801816 |
| Zurich Reinsurance (London) Limited | 10/1/1998 | 10/1/2005 | 823/KE9801817 |
| Winterthur Swiss Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801818 |
| Gerling-Konzern General Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801818 |
| XL Insurance Company, Ltd. | 10/1/1988 | 10/1/2003 | XLUMB-00342 |
| Starr Excess Liability Insurance International Limited | 10/1/1998 | 10/1/2003 | 201012 |
| Winterthur Swiss Insurance Company | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| Ace Insurance S.A. N.V. (Chubb Europe) | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| New Hampshire Insurance Company (per AIG Europe (UK) Ltd.) | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| Underwriter Insurance Company Limited | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| QBE International Insurance Limited | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| SR International Business Insurance Company Ltd. | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| Gerling-Konzern General Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901926 |
| Liberty International Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901928 |
| SR International Business Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901927 |
| Zurich Reinsurance (London) Limited | 10/1/1999 | 10/1/2003 | 823/KE9901925 |
| ACE Bermuda Insurance Ltd. | 7/1/2000 | 10/1/2002 | PRA-1031/5 |
| TIG Specialty Insurance Company | 7/1/2000 | 10/1/2002 | XEX 37690728/ XLX38822826 |
| Kemper Indemnity Insurance Company | 7/1/2000 | 10/1/2002 | 9YR001019-00 |
| Evanston Insurance Company | 7/1/2000 | 10/1/2002 | XO-GA-1138-00 |

## Schedule 2

### Schedule of MDT Insurance Policies

| Insurer | Policy Period Start | Policy Period End | Policy Number |
|---|---|---|---|
| Gulf Underwriters Insurance Company | 10/1/1997 | 10/1/2005 | GU6078280 |
| Zurich Reinsurance (London) Limited | 10/1/1998 | 10/1/2005 | 823/KE9801815 |
| Gerling-Konzern General Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801816 |
| Starr Excess Liability Insurance International Limited | 10/1/1998 | 10/1/2003 | 201012 |
| XL Insurance Company, Ltd. Sedgwick Management Services (Bermuda), Limited | 10/1/1997 | 10/1/2003 | XLUMB-00342 |
| Zurich Reinsurance (London) Limited | 10/1/1998 | 10/1/2005 | 823/KE9801817 |
| Gerling-Konzern General Insurance Company UK Branch | 10/1/1998 | 10/1/2005 | 823/KE9801818 |
| Winterthur Swiss Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801818 |
| Zurich Reinsurance (London) Limited | 10/1/1999 | 10/1/2003 | 823/KE9901925 |
| Gerling Konzern Allgemeine Versicherungs – AG | 10/1/1999 | 10/1/2003 | 823/KE9901926 |
| Liberty International Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901928 |
| SR International Business Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901927 |
| Chubb Bermuda Insurance Ltd. (f/k/a ACE Bermuda Insurance Ltd.) | 7/1/2000 | 10/1/2002 | PRA-1031/5 |
| Certain Member Companies of the International Underwriting Association of London (subscribing companies include: Winterthur Swiss Insurance Company, ACE Insurance S.A. N.V., New Hampshire Insurance Company (per AIG Europe (UK) Ltd.), the Underwriter Insurance Company Limited, SR International Business Insurance Company Ltd., and QBE International Insurance Limited) | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| Evanston Insurance Company (Markel) | 7/1/2000 | 10/1/2002 | XO-GA-1138-00 |
| Kemper Indemnity Insurance Company | 7/1/2000 | 10/1/2002 | 9YR001019-00 |
| TIG Specialty Insurance Company | 7/1/2000 | 10/1/2002 | XEX 37690728/ XLX38822826 |
| American International Specialty Lines Insurance Company | 10/1/2000 | 10/1/2005 | 267-47-08 |
| National Union Fire Insurance Company of Pittsburgh, PA | 10/1/2000 | 10/1/2005 | BE 357 40 57 |
| Steadfast Insurance Company | 10/1/2000 | 10/1/2005 | GL02729885-03 |
| Allied World Assurance Company | 10/1/2003 | 10/1/2004 | C001210/002 |
| American Guarantee & Liability Insurance Company | 10/1/2003 | 10/1/2004 | AEC 9376768 00 |
| Arch Reinsurance Ltd. | 10/1/2003 | 10/1/2004 | B4-UFP-03233-01 |
| Liberty Mutual Fire Insurance Company | 10/1/2003 | 10/1/2004 | TH2-611-004531-063 |

| | | | |
|---|---|---|---|
| Liberty Mutual Fire Insurance Company | 7/1/2003 | 10/1/2004 | RG2-611-004531-023 |
| Federal Insurance Company | 11/15/2003 | 12/5/2004 | 8160-3480 |
| St. Paul Mercury Insurance Company | 11/15/2003 | 11/15/2004 | 564CM0215 |
| Allied World Assurance Company | 10/1/2004 | 10/1/2005 | C001210/003 |
| American Guarantee and Liability Insurance Company | 10/1/2004 | 10/1/2005 | AEC 9376768 01 |
| Arch Reinsurance Ltd. | 10/1/2004 | 10/1/2005 | B4-UFP-03233-02 |
| Liberty Mutual Fire Insurance Company | 10/1/2004 | 10/1/2005 | TH2-611-004531-064 |
| Liberty Mutual Insurance Company | 10/1/2004 | 10/1/2005 | EN1-611-0045310024 |
| Allied World Assurance Company | 10/1/2005 | 10/1/2006 | C001210/004 |
| American Guarantee and Liability Insurance Company | 10/1/2005 | 10/1/2006 | AEC 9376768 02 |
| Arch Reinsurance Ltd. | 10/1/2005 | 10/1/2006 | B4-UFP-03233-03 |
| Liberty Mutual Fire Insurance Company | 10/1/2005 | 10/1/2006 | TH2-611-004531-065 |
| Liberty Mutual Insurance Company | 10/1/2005 | 10/1/2006 | EN1-611-004531025 |
| Allied World Assurance Company | 10/1/2006 | 10/1/2007 | C001210/005 |
| American Guarantee and Liability Insurance Company | 10/1/2006 | 10/1/2007 | AEC 9376768 03 |
| Arch Reinsurance Ltd. | 10/1/2006 | 10/1/2007 | UFP001824000 |
| Liberty Mutual Fire Insurance Company | 10/1/2006 | 10/1/2007 | TH2-611-004531-066 |
| Liberty Mutual Insurance Company | 10/1/2006 | 10/1/2007 | EN1-611-0045310026 |
| American Guarantee and Liability Insurance Company | 10/1/2007 | 10/1/2008 | AEC 9376768 04 |
| Liberty Mutual Insurance Company | 10/1/2007 | 10/1/2008 | EN1-611-0045310027 |
| National Union Fire Insurance Company of Pittsburgh, Pa. | 10/1/2007 | 10/1/2008 | 9835266 |
| St. Paul Fire and Marine Insurance Company | 10/1/2007 | 10/1/2008 | QI05700185 |
| American Guarantee and Liability Insurance Company | 10/1/2008 | 10/1/2009 | AEC 9376768 05 |
| Liberty Mutual Fire Insurance Company | 10/1/2008 | 10/1/2009 | TH2-611-004531-148 |
| Liberty Mutual Insurance Company | 10/1/2008 | 10/1/2009 | EN1-611-0045310028 |
| XL Insurance America, Inc. | 10/1/2008 | 10/1/2009 | US00011152LI08A |
| Liberty Mutual Fire Insurance Company | 10/1/2009 | 10/1/2010 | TH2-611-004531-149 |
| Liberty Mutual Insurance Company | 10/1/2009 | 10/1/2010 | EN1-611-004531-029 |
| American Guarantee and Liability Insurance Company | 10/1/2009 | 10/1/2010 | AEC 9376768 06 |
| XL Insurance America, Inc. | 10/1/2009 | 10/1/2010 | US00011152LI09A |

| American Guarantee and Liability Insurance Company | 10/1/2010 | 10/1/2011 | AEC 9376768 07 |
|---|---|---|---|
| Liberty Mutual Fire Insurance Company | 10/1/2010 | 10/1/2011 | TH2-611-004531-140 |
| Liberty Mutual Insurance Company | 10/1/2010 | 10/1/2011 | EN1-611-004531-020 |
| XL Insurance America, Inc. | 10/1/2010 | 10/1/2011 | US00011152LI10A |
| American Guarantee and Liability Insurance Company | 10/1/2011 | 10/1/2012 | AEC 9376768 08 |
| Liberty Mutual Insurance Company | 10/1/2011 | 10/1/2012 | EN1-611-004531-021 |
| Liberty Mutual Insurance Company | 10/1/2011 | 10/1/2012 | TH2-611-004531-141 |
| Liberty Insurance Corporation | 10/1/2011 | 10/1/2012 | TH7-611-004531-141 |
| XL Insurance America, Inc. | 10/1/2011 | 10/1/2012 | US00011152LI11A |
| American Guarantee and Liability Insurance Company | 10/1/2012 | 10/1/2013 | AEC 9376768 09 |
| Liberty Mutual Insurance Company | 10/1/2012 | 10/1/2013 | EN1-611-004531-022 |
| North American Elite Insurance Company | 10/1/2012 | 10/1/2013 | H2U0000619-00 |
| XL Insurance America, Inc. | 10/1/2012 | 10/1/2013 | US00011152LI12A |
| American Guarantee and Liability Insurance Company | 10/1/2013 | 10/1/2014 | AEC 9376768 10 |
| Liberty Mutual Fire Insurance Company | 10/1/2013 | 10/1/2014 | EN2-611-004531-023 |
| North American Elite Insurance Company | 10/1/2013 | 10/1/2014 | UMB 000802001 |
| XL Insurance America, Inc. | 10/1/2013 | 10/1/2014 | US00011152LI13A |
| American Guarantee and Liability Insurance Company | 10/1/2014 | 10/1/2015 | AEC 9376768-11 |
| Liberty Mutual Fire Insurance Company | 10/1/2014 | 10/1/2015 | EN2-611-004531-024 |
| North American Elite Insurance Company | 10/1/2014 | 10/1/2015 | UMB000802002 |
| XL Insurance America, Inc. | 10/1/2014 | 10/1/2015 | US00011152LI14A |
| American Guarantee and Liability Insurance Company | 10/1/2015 | 10/1/2016 | AEC 9376768-12 |
| Columbia Casualty Company | 10/1/2015 | 10/1/2016 | HAZ 4032268671-0 |
| Liberty Mutual Fire Insurance Company | 10/1/2015 | 10/1/2016 | EN2-611-004531-025 |
| North American Elite Insurance Company | 10/1/2015 | 10/1/2016 | UMB000802003 |
| XL Insurance America, Inc. | 10/1/2015 | 10/1/2016 | US00011152LI15A |
| Aspen American Insurance Company | 10/1/2016 | 10/1/2017 | CX004QT16 |
| Columbia Casualty Company | 10/1/2016 | 10/1/2017 | HAZ 4032268671-1 |
| Liberty Mutual Fire Insurance Company | 10/1/2016 | 10/1/2017 | EN2-611-004531-026 |
| Navigators Specialty Insurance Company | 10/1/2016 | 10/1/2017 | SM16FXR884487IC |
| North American Elite Insurance Company | 10/1/2016 | 10/1/2017 | UMB000802004 |
| Swiss Re International SE | 10/1/2016 | 10/1/2017 | MH 145892.1 |
| XL Insurance America, Inc. | 10/1/2016 | 10/1/2017 | US00011152LI16A |

iii

| | | | |
|---|---|---|---|
| Allied World Assurance Company (Europe) Ltd. | 12/12/2016 | 1/11/2018 | B0509FINMR 1600558 |
| Arch Insurance Company (Europe) Ltd | 12/12/2016 | 1/11/2018 | B0509FINMR 1600559 |
| Beazley Insurance Company, Inc. | 12/12/2016 | 1/11/2018 | V1A42D160201 |
| National Union Fire Insurance Company of Pittsburgh, PA | 12/12/2016 | 1/11/2018 | 03-329-88-41 |
| QBE Insurance Company | 12/12/2015 | 1/11/2018 | QPL0172784 |
| U.S. Specialty Insurance Company | 12/12/2016 | 1/11/2018 | 12-MGU-16-A39466 |
| U.S. Specialty Insurance Company | 12/12/2016 | 1/11/2018 | 14-MGU-16-A39466 |
| XL Specialty Insurance Company | 12/12/2016 | 1/11/2018 | ELU147833-16 |
| ACE Property and Casualty Insurance Company | 10/1/2017 | 10/1/2019 | G46815634 001 |
| Aspen American Insurance Company | 10/1/2017 | 10/1/2019 | CX004QT17 |
| Columbia Casualty Company | 10/1/2017 | 10/1/2018 | HAZ 4032268671-2 |
| Liberty Mutual Fire Insurance Company | 10/1/2017 | 10/1/2019 | EN2-611-0045310027 |
| Navigators Specialty Insurance Company | 10/1/2017 | 10/1/2018 | NY17LGL786201NC |
| Navigators Specialty Insurance Company | 10/1/2017 | 10/1/2019 | SM16FXR884487IV |
| XL Insurance America, Inc. | 10/1/2017 | 10/1/2019 | US00011152LI17 |
| ACE Property and Casualty Insurance Company | 10/1/2018 | 10/1/2019 | G46815634 002 |
| ACE Property and Casualty Insurance Company | 10/1/2018 | 10/1/2019 | G71187263 001 |
| Liberty Mutual Fire Insurance Company | 10/1/2018 | 10/1/2019 | EN2-611-004531-028 |
| Liberty Mutual Fire Insurance Company | 10/1/2018 | 10/1/2019 | EB2-611-0045310178 |
| Liberty Surplus Insurance Corporation | 10/1/2018 | 10/1/2019 | 1000318031-01 |
| Old Republic Insurance Company | 10/1/2018 | 10/1/2020 | MWZZ 314344 |
| Isosceles Insurance Limited | 10/1/2019 | 10/1/2021 | PPLP-02/2019 |

## Schedule 3

**Schedule of Excluded Insurance Policies**

1.    Isosceles Insurance Ltd. policy number PPLP-01/2019

2.    The following Purdue Insurance Policies subject to clause (ii) of the definition of Excluded Insurance Policies:

      a.  automobile liability;

      b.  workers' compensation or employers' liability;

      c.  international products liability;

      d.  international completed operations liability;

      e.  foreign voluntary workers' compensation and employers' liability;

      f.  international general liability;

      g.  international premises liability;

      h.  international automobile liability;

      i.  first party property damage;

      j.  marine cargo;

      k.  clinical trials;

      l.  domestic credit insurance;

      m.  employment practices liability;

      n.  fiduciary liability;

      o.  crime and blanket crime;

      p.  employed lawyers;

      q.  special contingency, special risk, corporate protection and kidnapping and ransom;

      r.  marine and war risk; and

      s.  cyber, security and privacy liability.

## **Schedule 4**

Schedule of MDT Insurance Collateral

| Insurer | Policy Period Start | Policy Period End | Policy Number |
|---|---|---|---|
| Columbia Casualty Company | 10/1/2015 | 10/1/2016 | HAZ 4032268671-0 |
| Columbia Casualty Company | 10/1/2016 | 10/1/2017 | HAZ 4032268671-1 |
| Columbia Casualty Company | 10/1/2017 | 10/1/2018 | HAZ 4032268671-2 |
| Isosceles Ins. Ltd | 211/2019 | 2/11/2022 | PPLP-01/2019 |
| Isosceles Ins. Ltd | 10/1/2019 | 10/1/2021 | PPLP-02/2019 |
| Old Republic Ins. Co. | 10/1/2018 | 10/1/2020 | MWZZ 314344 |

**<u>Exhibit A</u>**

**Master TDP**

[Filed Separately]

## **Exhibit B**

### **Investment Guidelines**

Only the following investments will be permitted, provided that maturities on the following securities do not exceed twelve (12) months, all investments are U.S. dollar denominated and all requirements are satisfied at the time of purchase:

1.      marketable securities issued by the U.S. Government and supported by the full faith and credit of the U.S. Treasury; and

2.      a U.S. government money market fund required to invest exclusively in cash and U.S. government securities that are supported by the full faith and credit of the U.S. Treasury.

The borrowing of funds or securities for the purpose of purchasing and the lending of any investments is prohibited.

Notwithstanding the foregoing, it is acknowledged and agreed that the MDT Trustees may liquidate investments and deposit and maintain funds in or with banks, trust companies, savings and loan associations, money market organizations and other depositories or issuers of depository-type accounts at such times as the MDT Trustees determine to be necessary or appropriate to have cash available to satisfy distribution and other cash requirements of the Master Disbursement Trust.

**<u>EXHIBIT U-1</u>**

**Redline of MDT Agreement**

**TRUST AGREEMENT OF**

**MASTER DISBURSEMENT TRUST**

**DATED AS OF [  ], 2021**

**BY AND AMONG**

**[  ] AS MDT TRUSTEES**

**[  ] AS RESIDENT TRUSTEE**

**and**

**THE DEBTOR PARTIES HERETO**

# TABLE OF CONTENTS

**Article I**      **Declaration of Trust** ....................................................................... **3**

Section 1.01.    Creation of Trust ............................................................................... 3
Section 1.02.    Purpose of Master Disbursement Trust ............................................. 3
Section 1.03.    Vesting of the MDT Transferred Assets and Funding of the Master
Disbursement Trust ........................................................................... 4
Section 1.04.    Assumption of Channeled Claims and the Master TDP ...................... 6
Section 1.05.    Appointment and Acceptance of Initial MDT Trustees ....................... 6
Section 1.06.    No Reversion to Debtors ................................................................... 7
Section 1.07.    Relationship to Plan ........................................................................... 7
Section 1.08.    Incidents of Ownership ..................................................................... 7

**Article II**     **MDT Beneficiaries** ...................................................................... **7**

Section 2.01.    MDT Claims and MDT Interests ....................................................... 7
Section 2.02.    Disputed or Conflicting Claims or Demands ..................................... 8
Section 2.03.    Rights of MDT Beneficiaries ............................................................. 8
Section 2.04.    Nontransferability of MDT Claims and MDT Interests ...................... 8
Section 2.05.    Limited Liability ............................................................................... 8

**Article III**    **Powers and Trust Administration** ............................................... **9**

Section 3.01.    Powers of the MDT Trustees ............................................................. 9
Section 3.02.    General Administration ..................................................................... 11
Section 3.03.    Master TDP ..................................................................................... 12

**Article IV**    **Duration and Termination of the Master Disbursement Trust** .... **12**

Section 4.01.    Duration ........................................................................................... 12
Section 4.02.    Dissolution of the Master Disbursement Trust .................................. 13
Section 4.03.    Continuance of Master Disbursement Trust for Winding Up ............... 13

**Article V**     **Accounts, Investments and Payments** ......................................... **13**

Section 5.01.    Accounts ........................................................................................... 13
Section 5.02.    MDT Operating Reserve ................................................................... 14
Section 5.03.    MDT Claims Reserve ....................................................................... 14
Section 5.04.    Investments ..................................................................................... 14
Section 5.05.    Source of Payments ......................................................................... 14

**Article VI**    **Tax Matters** ................................................................................. **15**

Section 6.01.    U.S ................................................................................................... 15
Section 6.02.    Tax Withholdings ............................................................................. 15

**Article VII**          **Distributions**                                                                      **16**

Section 7.01.    Distributions                                                                           16
Section 7.02.    Distribution Dates                                                                  17
Section 7.03.    Escrow Periods and MDT Reserve Periods                            17
Section 7.04.    Public Creditor Trust Distributions                                       18
Section 7.05.    Restriction on Use of Distributions by Creditor Trusts         19

**Article VIII**        **MDT Trustees, MDT Executive Director and Resident Trustee**    **19**

Section 8.01.    The MDT Trustees                                                                 19
Section 8.02.    Term of Service of the MDT Trustees                                    19
Section 8.03.    Appointment of Successor MDT Trustees                              21
Section 8.04.    MDT Executive Director                                                         21
Section 8.05.    Independence of the MDT Trustees and MDT Executive Director    21
Section 8.06.    Obligations of the MDT Fiduciaries                                       22
Section 8.07.    Compensation and Expenses of the MDT Trustees and the MDT Executive
                 Director and MDT Professionals                                              22
Section 8.08.    Resident Trustee                                                                  23

**Article IX**          **Reliance, Liability and Indemnification**                             **25**

Section 9.01.    Reliance by the MDT Trustees and the MDT Executive Director    25
Section 9.02.    Nonliability of MDT Trustees and MDT Executive Director       25
Section 9.03.    Exculpation                                                                            25
Section 9.04.    Limitation of Liability                                                            26
Section 9.05.    Indemnity                                                                              26

**Article X**           **Miscellaneous Provisions**                                                  **26**

Section 10.01.   Actions Taken on Other Than a Business Day                         26
Section 10.02.   Governing Law                                                                       27
Section 10.03.   Jurisdiction                                                                            27
Section 10.04.   Severability                                                                            27
Section 10.05.   Notices                                                                                  27
Section 10.06.   Headings                                                                               28
Section 10.07.   Entire Trust Agreement                                                         29
Section 10.08.   Amendment and Waiver                                                         29
Section 10.09.   Confidentiality                                                                      29
Section 10.10.   Meanings of Other Terms                                                      29
Section 10.11.   Counterparts                                                                          29

## MASTER DISBURSEMENT TRUST AGREEMENT

THIS MASTER DISBURSEMENT TRUST AGREEMENT (this "Trust Agreement"), dated as of [  ], 2021 (the "Effective Date"), is entered into by and among each of (i) Purdue Pharma L.P., Purdue Pharma Inc., Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP and SVC Pharma Inc. (each, a "Debtor" and, collectively, the "Debtors"), as debtors and debtors-in-possession, (ii) the undersigned MDT Trustees (together with any successor or additional trustee appointed under the terms of this Trust Agreement, the "MDT Trustees"), and (iii) [  ], as the Delaware resident trustee (together with any successor Delaware resident trustee appointed under the terms of this Trust Agreement, the "Resident Trustee"), for the purpose of forming a statutory trust under and pursuant to the provisions of the Delaware Statutory Trust Act, 12 Del. C. §§ 3801, et seq. (as the same may from time to time be amended, or any successor statute, the "Trust Act").

## RECITALS

WHEREAS, on September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), thereby commencing the chapter 11 cases jointly administered by the Bankruptcy Court under the caption *In re Purdue Pharma L.P., et al.*, Case No. 19-23649 (RDD) (the "Chapter 11 Cases");

WHEREAS, on July 14, 2021, the Debtors filed the *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (including all appendices, exhibits, schedules and supplements thereto, as the same may be altered, amended or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules and the terms thereof, the "Plan")[1] with the Bankruptcy Court;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

WHEREAS, on [  ], the Debtors and the Shareholder Payment Parties entered into the Shareholder Settlement Agreement, pursuant to which, among other things, the Shareholder Payment Parties shall be obligated to pay the Shareholder Settlement Amount in accordance with the terms thereof;

WHEREAS, on [  ], 2021, the Bankruptcy Court entered the [*Order Confirming the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*] [D.I. [  ]] confirming the Plan (the "<u>Confirmation Order</u>");

WHEREAS, in accordance with the Plan and the Confirmation Order, PPLP and [NEWCO, LLC], a limited liability company organized under the laws of the State of Delaware ("<u>NewCo</u>"), have entered into the Transfer Agreement, dated as of the Effective Date (the "<u>NewCo Transfer Agreement</u>"), pursuant to which the NewCo Transferred Assets were transferred to NewCo;

WHEREAS, the Plan provides for, among other things, the creation of a Master Disbursement Trust on the Effective Date;

WHEREAS, in accordance with the Plan and the Confirmation Order, the Master Disbursement Trust shall, among other things, (i) receive the MDT Transferred Assets and (ii) assume all liability of the Debtors and the other Protected Parties for any and all Channeled Claims, pursuant to the Channeling Injunction, solely for the purpose of effectuating the Master Trust Distributions Procedures attached as <u>Exhibit A</u> to this Trust Agreement (the "<u>Master TDP</u>"), pursuant to which (A) each Channeled Claim shall either be automatically channeled to and assumed exclusively by a Creditor Trust or otherwise Disallowed and released in full and (B) in exchange for the assumption of the applicable Channeled Claims, the Creditor Trusts shall receive the distributions set forth in the Master TDP;

WHEREAS, in accordance with the Plan, the Confirmation Order and the Master TDP, beneficial interests in the Master Disbursement Trust shall be granted to (i) the United States (such interest, the "<u>MDT Federal Government Claim</u>"), which MDT Federal Government Claim shall entitle the United States to payment of the amounts set forth in Section 4.3(b) of the Plan in accordance with the terms of the Plan and this Trust Agreement, (ii) the Hospital Trust (such interest, the "<u>MDT Hospital Claim</u>"), the NAS Monitoring Trust (such interest, the "<u>MDT NAS Monitoring Claim</u>"), the PI Trust (such interest, the "<u>MDT PI Claim</u>") and the TPP Trust (such interest, the "<u>MDT TPP Claim</u>"), which MDT Hospital Claim, MDT NAS Monitoring Claim, MDT PI Claim and MDT TPP Claim (collectively, the "<u>MDT Private Claims</u>" and, together with the MDT Federal Government Claim, the "<u>MDT Claims</u>") shall entitle such Private Creditor Trusts to payment of the amounts set forth in Section 5.2(d)(i) of the Plan in accordance with the terms of the Plan and this Trust Agreement and (iii) the Tribal Abatement Fund Trust ("<u>TAFT</u>") (such interest, the "<u>MDT Tribe Interest</u>") and NOAT (such interest, the "<u>MDT NOAT Interest</u>"), which MDT Tribe Interest and MDT NOAT Interest (collectively, the "<u>MDT Interests</u>") shall entitle TAFT and NOAT (collectively with the Hospital Trust, the NAS Monitoring Trust, the PI Trust, the TPP Trust, the United States and, solely for purposes of the distributions due to it under the Master TDP, the PI Futures Trust, the "<u>MDT Beneficiaries</u>") to their respective shares of distributions of MDT Excess Cash as set forth in Section 5.2(e)(i) of the Plan and in accordance with the terms of the Plan and this Trust Agreement;

WHEREAS, the purposes of the Master Disbursement Trust are, among other things, to (i) effectuate the Master TDP, (ii) hold and administer the MDT Transferred Assets, (iii) make payments in satisfaction of the MDT Claims in accordance with the Plan and the Private Entity Settlements, (iv) pursue MDT Causes of Action and the MDT Shareholder Rights, including monitoring and enforcing the Shareholder Settlement Agreement, and (v) make Public Creditor Trust Distributions in respect of the MDT Interests from MDT Excess Cash in accordance with the Plan and the Public Entity Settlements;

WHEREAS, in accordance with the Plan and the Confirmation Order, as of the Effective Date (i) [TOPCO LLC], a Delaware limited liability company ("TopCo"), shall hold 100% of the NewCo Interests, and (ii) the limited liability company interest in TopCo shall be held by NOAT (such interests, the "TopCo NOAT Interest") and Tribal Opioid Abatement Fund, LLC ("Tribe Opioid LLC" and, such interests, the "TopCo Tribe Interest" and, together with the TopCo NOAT Interest, the "TopCo Interests");

WHEREAS, in accordance with the Plan and the Confirmation Order, the Master Disbursement Trust, NewCo and TopCo shall enter into that certain Credit Support Agreement, dated as of the Effective Date (the "NewCo Credit Support Agreement"), pursuant to which NewCo and TopCo are each obligated to make certain payments to the Master Disbursement Trust, and the Master Disbursement Trust is obligated to repay such amounts to NewCo and TopCo; and

WHEREAS the Master Disbursement Trust was established and is effective for the benefit of the MDT Beneficiaries.

## AGREEMENT

NOW, THEREFORE, pursuant to the Confirmation Order, and in consideration of the foregoing and upon the terms and subject to the mutual covenants and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE I
DECLARATION OF TRUST

Section 1.01. Creation of Trust. The Debtors and the MDT Trustees, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby create the Master Disbursement Trust, which shall bear the name "Master Disbursement Trust." In connection with the exercise of the MDT Trustees' power hereunder, the MDT Trustees may use this name or such variation thereof as the MDT Trustees reasonably see fit. It is the intention of the parties hereto that the Master Disbursement Trust created hereby constitutes a statutory trust under the Trust Act and that the Confirmation Order, the Plan and this Trust Agreement, constitute the governing instruments of the Master Disbursement Trust.

Section 1.02. Purpose of Master Disbursement Trust. The purpose of the Master Disbursement Trust is to carry out the duties of the Master Disbursement Trust as set forth in the Plan on behalf, and for the benefit, of the MDT Beneficiaries, including to effectuate the Master TDP and to liquidate, convert to Cash and distribute the MDT Transferred Assets in accordance

with the terms of the Plan and this Trust Agreement. The Master Disbursement Trust shall, in each case in accordance with the Plan and this Trust Agreement: (a) hold, manage, sell, invest and distribute the MDT Transferred Assets for the benefit of the MDT Beneficiaries in accordance with the Plan, including the Private Entity Settlements and the Public Entity Settlements as set forth therein and incorporated herein; (b) enforce, pursue, prosecute, compromise and/or settle the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights, including monitoring and enforcing the Shareholder Settlement Agreement; (c) make payments in satisfaction of the MDT Claims; (d) make Public Creditor Trust Distributions from MDT Excess Cash; and (e) publish on the MDT Website reports received from the Abatement Trusts regarding the disbursement and use of Abatement Distributions and compliance with Authorized Abatement Purposes. The Master Disbursement Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth in the Plan, this Trust Agreement, or any other agreement entered into between the Master Disbursement Trustee and any of the Debtors.

Section 1.03. <u>Vesting of the MDT Transferred Assets and Funding of the Master Disbursement Trust.</u>

(a)    On the Effective Date, pursuant to Section 5.6(b) of the Plan and in accordance with this Trust Agreement, the MDT Transferred Assets shall be irrevocably transferred to and vest in the Master Disbursement Trust free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind; *provided* that, to the extent certain Assets comprising the MDT Transferred Assets are not known or identified as of the Effective Date, such Assets shall automatically, and without further act or deed, be transferred to and vest in the Master Disbursement Trust upon the discovery or identification thereof, including, with respect to the Surplus Reserve Cash, in accordance with Section 5.13(c) of the Plan; *provided further* that the transfer of the MDT Insurance Rights and the MDT Shareholder Insurance Rights shall be made in accordance with Section 5.6(i) and (j) of the Plan and the Shareholder Settlement. The Master Disbursement Trust shall have no liability for any prepetition or postpetition Claims, Causes of Action or liabilities of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including, but not limited to, Claims based on successor liability) based on any acts or omissions prior to the Effective Date, except as expressly set forth in the Plan and this Trust Agreement.

(b)    In accordance with the Plan, the MDT Transferred Assets shall consist of all right, title and interest of the Debtors arising under or attributable to:

(i)    the MDT Operating Reserve;

(ii)    the MDT Causes of Action;

(iii)    the MDT Insurance Rights, consisting of the Purdue Insurance Rights in respect of (A) the MDT Bermuda-Form Insurance Policies, as set forth on <u>Schedule 1</u> hereto, (B) the other MDT Insurance Policies, as defined in the Plan and including without limitation as set forth on <u>Schedule 2</u> hereto, but excluding in each case the Excluded Insurance Policies, as defined in the

4

Plan and as set forth on <u>Schedule 3</u> hereto, and (C) the MDT Insurance Collateral, as set forth on <u>Schedule 4</u> hereto;[2]

(iv)    the MDT Shareholder Rights;

(v)    Cash in an amount equal to the Initial Private Creditor Trust Distributions and the Initial Public Creditor Trust Distributions;

(vi)    the TopCo Interests; and

(vii)    any Surplus Reserve Cash to be distributed to the Master Disbursement Trust, upon the identification thereof by the Plan Administration Trustee or the dissolution of the Plan Administration Trust, in accordance with Section 5.13(c) of the Plan.

(c)    Pursuant to Section 5.11(c) of the Plan, the transfer to the Master Disbursement Trust of information and copies of documents, including books and records, in accordance with Section 5.11(b) of the Plan shall not result in the destruction or waiver of any applicable Privileges. Further, the transfer and/or vesting of any privileges shall occur solely in accordance with, and be subject in all respects to, Section 5.11(c) of the Plan, which is incorporated herein by reference.

(d)    The Debtors shall execute any documents or other instruments and shall take all other steps as the MDT Trustees reasonably request to reflect the transfer and assignment of the MDT Transferred Assets to the Master Disbursement Trust. Upon the transfer of the MDT Transferred Assets to the Master Disbursement Trust, neither the Debtors nor any other Person (other than the MDT Beneficiaries) shall have any interest in or with respect to the MDT Transferred Assets or the Master Disbursement Trust other than as expressly provided for under this Trust Agreement and the Plan. Upon delivery of the MDT Transferred Assets to the Master Disbursement Trust, the Debtors and their predecessors, successors and assigns shall be released

---

[2] Notwithstanding anything to the contrary herein, (i) the MDT Insurance Rights with respect to the MDT Insurance Collateral for Isosceles Insurance Ltd. policy number PPLP-01/2019 shall be limited to the right to receive any such MDT Insurance Collateral remaining after the expiration of the policy period and any extension of coverage under such policy, (ii) the MDT Insurance Rights shall not include any right to interfere in any manner with the rights of the insureds under Isosceles Insurance Ltd. policy number PPLP-01/2019 prior to the expiration of the policy period and any extension of coverage under such policy and the resolution of all claims asserted thereunder and (iii) any persons who have unresolved claims under such policy at the expiration of the policy period, including any extension, shall cooperate with and provide consent to the Master Disbursement Trust to resolve those claims in connection with the MDT Insurance Collateral after the expiration of the policy period, including any extension.

from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the MDT Transferred Assets or the Master Disbursement Trust.

(e)    The transfer of the MDT Transferred Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(f)    The Master Disbursement Trust shall be funded with the proceeds of the MDT Transferred Assets and amounts, if applicable, received pursuant to the NewCo Credit Support Agreement.

(g)    The MDT Transferred Assets and all other Assets held from time to time by the Master Disbursement Trust under this Trust Agreement and any earnings, including interest, on any of the foregoing shall be held and be applied by the MDT Trustees solely in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order.

Section 1.04.  <u>Assumption of Channeled Claims and the Master TDP.</u>

(a)    As of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all Channeled Claims shall automatically, and without further act, deed or court order, be channeled to and assumed by the Master Disbursement Trust solely for the purpose of effectuating the Master TDP, pursuant to which (i) each Channeled Claim shall either be automatically channeled to and assumed exclusively by a Creditor Trust or otherwise Disallowed and released in full and (ii) in consideration for the assumption by the Creditor Trusts of Channeled Claims in accordance therewith, the Master Disbursement Trust shall make the distributions and issue the beneficial interests, as applicable, to the Creditor Trusts as set forth in the Master TDP.

(b)    Distributions, in accordance with the applicable Creditor Trust TDP, from the Creditor Trust to which a Channeled Claim is channeled, in accordance with the Master TDP, shall be the sole source of recovery, if any, in respect of such Channeled Claim, and the Holder of such Channeled Claim shall have no other or further recourse to any Protected Party, including the Master Disbursement Trust. All Channeled Claims channeled to a Creditor Trust in accordance with the Master TDP shall be administered and resolved solely pursuant to, and solely to the extent provided in, the applicable Creditor Trust TDP for such Creditor Trust. All Channeled Claims that are Disallowed and released and not channeled to a Creditor Trust in accordance with the Master TDP shall have no recourse to any Protected Party, including the Master Disbursement Trust. For the avoidance of doubt, in no event shall any Channeled Claim have any recourse to the Assets of the Master Disbursement Trust.

(c)    In furtherance of the foregoing, the Master Disbursement Trust, subject to and only to the extent provided in the MDT Documents, shall have all defenses, cross-claims, offsets and recoupments regarding the Channeled Claims that the Debtors, the Released Parties and the Shareholder Released Parties, as applicable, have, or would have had, under applicable law, but solely to the extent consistent with the MDT Documents and the Plan; *provided* that no such Claims, defenses or rights may be asserted against any Protected Party; and *provided further* that all such defenses, cross-claims, offsets and recoupments regarding any Channeled Claim that is channeled to a Creditor Trust in accordance with the Master TDP shall be transferred to such

Creditor Trust with such Channeled Claim, at which point, the Master Disbursement Trust shall no longer have such defenses, cross-claims, offsets and recoupments regarding such Channeled Claim.

(d)     For the avoidance of doubt, nothing in this Section 1.04 shall limit or affect the transfer of the MDT Insurance Rights to the Master Disbursement Trust.

(e)     Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction, Releases or Shareholder Releases under the Plan.

Section 1.05. Appointment and Acceptance of Initial MDT Trustees. Upon the occurrence of the Effective Date, each of the initial MDT Trustees identified in Section 8.01(a) hereof shall be appointed to serve as the trustees of the Master Disbursement Trust pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code, subject to the terms of the Plan, the Confirmation Order and this Trust Agreement. The MDT Trustees accept the grant, assignment, transfer, conveyance and delivery to the Master Disbursement Trust, on behalf, and for the benefit, of the MDT Beneficiaries, by the Debtors of all of the MDT Transferred Assets, upon and subject to the terms and conditions set forth herein, in the Plan and in the Confirmation Order. The MDT Trustees shall have and perform all of the duties, responsibilities, rights and obligations of the Master Disbursement Trust set forth in the Plan and this Trust Agreement, as applicable. The MDT Trustees, subject to the terms and conditions of the Plan, the Confirmation Order and this Trust Agreement, shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements, and to take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan, any agreement entered into in connection with the Plan, including the Shareholder Settlement Agreement and the NewCo Credit Support Agreement, and this Trust Agreement. The MDT Trustees' powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Master Disbursement Trust and not otherwise. The MDT Trustees shall have the authority to bind the Master Disbursement Trust within the limitations set forth in this Trust Agreement, but shall for all purposes hereunder be acting in their respective capacities as MDT Trustees, and not individually.

Section 1.06. No Reversion to Debtors. In no event shall any part of the MDT Transferred Assets revert to or be distributed to any Debtor.

Section 1.07. Relationship to Plan. The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, or the Confirmation Order, each document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; and (3) this Trust Agreement.

Section 1.08. Incidents of Ownership. Except as otherwise provided in this Trust Agreement, the MDT Beneficiaries shall be the sole beneficiaries of the Master Disbursement Trust, and the MDT Trustees shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including those powers set forth in this Trust Agreement.

ARTICLE II
MDT BENEFICIARIES

Section 2.01.  <u>MDT Claims and MDT Interests</u>.

(a)       On the Effective Date, the MDT Federal Government Claim shall be issued to the United States in accordance with Section 4.3(b) of the Plan.

(b)       On the Effective Date, upon the assumption by the Creditor Trusts of the applicable Channeled Claims as set forth in the Master TDP, each MDT Private Claim and the MDT Interest shall be issued to the applicable Creditor Trust in accordance with the Plan and the Master TDP.

(c)       No beneficial interests in the Master Disbursement Trust shall be issued other than as provided in the foregoing paragraphs (a) and (b).

Section 2.02.  <u>Disputed or Conflicting Claims or Demands</u>.  If any dispute arises with respect to a payment or distribution on account of an MDT Claim or MDT Interest, the MDT Trustees shall be entitled to elect to make no payment or distribution with respect to such MDT Claim or MDT Interest subject to the dispute and the MDT Trustees shall promptly refer such dispute to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such disputes; *provided* that any undisputed portion of such payment or distribution shall not be deferred pending such resolution. In so doing, the MDT Trustees shall not be or become liable to any party for its refusal to make such payment or distribution. The MDT Trustees shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or such other court of proper jurisdiction or (b) all disputes have been resolved by a written agreement among all such parties and the MDT Trustees, which agreement shall include a complete release of the Master Disbursement Trust, the MDT Trustees and the MDT Executive Director (the occurrence of either (a) or (b) in this <u>Section 2.02</u> of this Trust Agreement being referred to as a "<u>Dispute Resolution</u>"). Promptly after a Dispute Resolution is reached, the MDT Trustees shall transfer the payments and distributions, if any, in accordance with the terms of such Dispute Resolution.

Section 2.03.  <u>Rights of MDT Beneficiaries</u>.  Each MDT Beneficiary shall be entitled to participate in the rights and benefits due to an MDT Beneficiary hereunder according to the terms of its MDT Claim or MDT Interest, as applicable. Other than as expressly set forth in this Trust Agreement, the MDT Claims and MDT Interests shall not have consent or voting rights or otherwise confer on the MDT Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken by the MDT Trustees in connection with the Master Disbursement Trust. The MDT Claim or MDT Interest, as applicable, of an MDT Beneficiary is hereby declared and shall be in all respects personal property. Except as expressly provided hereunder, an MDT Beneficiary shall have no title to, right to, possession of, management of or control of the Master Disbursement Trust or the MDT Transferred Assets or to any right to call for a partition or division of such assets or to require an accounting. The whole title to the MDT Transferred Assets shall be vested in the Master Disbursement Trust, and the sole interest of each MDT Beneficiary shall be the rights and benefits given to such MDT Beneficiary under this Trust Agreement, the Confirmation Order and the Plan. For the avoidance of doubt, upon the payment in full in Cash of any MDT Claim (or, in the case of the PI Futures Trust, the payment in full of the PI Futures Trust Distribution), the holder of such MDT Claim (or, in the case of the PI Futures Trust

8

Distribution, the PI Futures Trust) shall immediately cease to be an MDT Beneficiary for all purposes under this Trust Agreement, and the MDT Fiduciaries shall have no further fiduciary duties thereto.

Section 2.04. <u>Nontransferability of MDT Claims and MDT Interests</u>. Except in respect of the United States-PI Claimant Medical Expense Claim Settlement as set forth in the Plan, the MDT Claims and MDT Interests shall be nontransferable and nonassignable.

Section 2.05. <u>Limited Liability</u>. No provision of this Trust Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any MDT Beneficiary, shall give rise to any liability of such MDT Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, creditor, successor, representative, employee or equity interest holder of any Debtor, or by any other Person. MDT Beneficiaries shall be deemed to receive the MDT Claims and MDT Interests, as applicable, in the Master Disbursement Trust in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order without further obligation or liability of any kind, but subject to the provisions of this Trust Agreement.

## ARTICLE III
## POWERS AND TRUST ADMINISTRATION

Section 3.01. <u>Powers of the MDT Trustees.</u>

(a)    Pursuant to the terms of the Plan, the Confirmation Order and this Trust Agreement, the MDT Trustees shall have all powers necessary to accomplish the purposes of the Master Disbursement Trust in accordance with this Trust Agreement, the Plan and the Confirmation Order. The MDT Trustees shall (i) have the power and authority to perform all functions on behalf of the Master Disbursement Trust, (ii) be responsible for all decisions and duties with respect to the Master Disbursement Trust and the MDT Transferred Assets, and (iii) in all circumstances, and at all times, act in a fiduciary capacity for the benefit of and in the best interests of the MDT Beneficiaries, in furtherance of the purposes of the Master Disbursement Trust, and in accordance with the Plan and this Trust Agreement.

(b)    Without limiting, but subject to, the foregoing paragraph (a), and except as limited in the Plan, this Trust Agreement and by applicable law, the MDT Trustees shall be expressly authorized to:

(i)    hold and maintain the MDT Operating Reserve;

(ii)    periodically, until the dissolution of the Master Disbursement Trust, replenish the MDT Operating Reserve from Cash held or received by the Master Disbursement Trust to the extent deemed necessary by the MDT Trustees to satisfy and pay estimated future MDT Operating Expenses;

(iii)    delegate certain duties to the MDT Executive Director;

 (iv)  make distributions to MDT Beneficiaries in accordance with the Plan and this Trust Agreement;

 (v)  determine MDT Distribution Dates, to the extent permitted by the Plan and this Trust Agreement;

 (vi)  prosecute any MDT Causes of Action, including those relating to and necessary to enforce the MDT Insurance Rights and the MDT Shareholder Rights, on behalf of the Master Disbursement Trust, elect not to pursue any MDT Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss or otherwise dispose of any such MDT Causes of Action;

 (vii)  retain MDT Professionals to assist in performing their duties under the Plan and hereunder;

 (viii)  prepare the MDT Operating Budgets;

 (ix)  maintain the books, records and accounts of the Master Disbursement Trust;

 (x)  invest Cash of the Master Disbursement Trust only to the extent permitted hereunder;

 (xi)  incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of the MDT Professionals;

 (xii)  administer the Master Disbursement Trust's tax obligations, including, but not limited to, representing the interest and account of the Master Disbursement Trust before any taxing authority in all matters including any claim, defense, action, suit, proceeding or audit;

 (xiii)  in the case of the MDT Trustee or MDT Executive Director (if so designated by the MDT Trustees) who is the "administrator" within the meaning of Treasury Regulations section 1.468B-2(k)(3), perform the duties and functions contemplated in <u>Section 6.01(b)</u> of this Trust Agreement;

 (xiv)  maintain appropriate liability insurance for the Indemnified Parties;

 (xv)  pay statutory fees;

 (xvi)  institute procedures, terms and conditions for any actions brought against any MDT Insurer consistent with <u>Section 3.01(e)</u> herein; and

 (xvii)  perform such other duties and functions that are consistent with the implementation of the Plan and this Trust Agreement.

 (c)  The MDT Trustees shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of the Master

Disbursement Trust, including in respect of the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights. Such legal actions and other proceedings shall be limited solely to those required for the purposes of satisfying the responsibilities of the Master Disbursement Trust, including in respect of the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights. The MDT Trustees shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary or appropriate by the MDT Trustees. The Master Disbursement Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the date upon which the Master Disbursement Trust is established arising from, or associated with, any legal action or other proceeding brought pursuant to the foregoing.

(d)       Except as otherwise provided in this Trust Agreement, the MDT Trustees shall not be required to obtain any order or approval of the Bankruptcy Court or any other court of competent jurisdiction, or account to the Bankruptcy Court or any other court of competent jurisdiction, for the exercise of any right, power or privilege conferred hereunder.

(e)       [To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the MDT Trustees shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer and the MDT Beneficiaries, to terminate, reduce or limit the scope of the MDT Insurer Injunction with respect to any MDT Insurer; provided that:

> (i)       any termination, reduction, or limitation of the MDT Insurer Injunction shall apply in the same manner to all beneficiaries of the Creditor Trusts that are MDT Beneficiaries;
>
> (ii)      the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust;
>
> (iii)     any actions asserted against MDT Insurers as a result of the termination, reduction or limitation of the MDT Insurer Injunction shall comply with all procedures, terms and conditions implemented by the MDT Trustees with respect to such actions, provided that any such procedures, terms or conditions applicable to suits seeking recoveries under the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned, or delayed) of the Creditor Trustee for the PI Trust;
>
> (iv)      all proceeds recovered in any manner, directly or indirectly, from any MDT Insurers (including, without limitation, as a result of actions asserted against, or settlements with, such MDT Insurers) shall be paid directly to the Master Disbursement Trust by the MDT Insurer (or, if such direct payment is not possible, immediately transferred (and in no event later than one (1) business day upon receipt) to the Master Disbursement Trust) for distribution in

accordance with ~~this Trust Agreement~~the Plan (including as if such proceeds were proceeds of MDT Insurance Rights); and

(v)     the Creditor Trustee(s) for each Creditor Trust that is an MDT Beneficiary may determine, subject to and in accordance with the applicable Creditor Trust Documents, to compensate the persons who have brought claims against MDT Insurers as a result of the termination, reduction or limitation in scope of the MDT Insurance Injunction; provided that, for the avoidance of doubt, such compensation shall not be additive to the amount that such MDT Beneficiary would otherwise receive pursuant to ~~this Trust Agreement.][3]~~the Plan.

Section 3.02.  <u>General Administration.</u>

(a)     The MDT Trustees shall prepare and file or cause to be prepared and filed with the Bankruptcy Court, within forty-five (45) days after the last day of the fourth month following the Effective Date and after the last day of every fourth month thereafter, a thrice yearly report (the "<u>MDT Report</u>") containing reasonable information regarding the Master Disbursement Trust and the MDT Trustees' activities (on a cumulative basis since the Effective Date and in the four-month period then ended), including with regard to (i) the MDT Shareholder Rights (or any reporting received pursuant to the Shareholder Settlement Agreement), (ii) the MDT Insurance Rights or the MDT Shareholder Insurance Rights (including any proceedings in respect thereof), (iii) the assets of the Master Disbursement Trust (including valuation thereof), (iv) expenditures of the Master Disbursement Trust, (v) distributions made by the Master Disbursement Trust and (vi) forward-looking projections with respect to the foregoing, in each case as the MDT Trustees deem to be reasonable and appropriate under the circumstances, taking into account the best interests of the MDT Beneficiaries and the purposes of the Master Disbursement Trust in accordance with the Plan and this Trust Agreement. The MDT Trustees shall provide a copy of each MDT Report to each of the Creditor Trustees for the Creditor Trusts and shall publish it on the MDT Website when such MDT Report is filed with the Bankruptcy Court.

(b)     The MDT Trustees shall, in connection with the filing of each MDT Report, host a call for the MDT Beneficiaries to answer questions of the MDT Beneficiaries relating to the MDT Report, and shall otherwise make themselves reasonably available to answer questions of the MDT Beneficiaries relating to the Master Disbursement Trust's activities.

---

[3] ~~Subject to ongoing discussion.~~

12

(c)    The MDT Trustees shall prepare and deliver or cause to be prepared and delivered to the MDT Beneficiaries prior to each Scheduled MDT Distribution Date an annual budget of MDT Operating Expenses (the "MDT Operating Budget") for the twelve (12)-month period following such Scheduled MDT Distribution Date, which MDT Operating Budget shall be reviewed by, and reasonably acceptable to, the MDT Beneficiaries. In the event there is a dispute with respect to any MDT Operating Budget, the MDT Trustees shall refer such dispute to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such disputes. The MDT Trustees shall undertake to manage the expenses of the Master Disbursement Trust in accordance with the MDT Operating Budget.

(d)    The MDT Trustees shall establish a publicly available website (the "MDT Website") as soon as reasonably practicable after the Effective Date to aid in communicating information to the MDT Beneficiaries and Holders of Channeled Claims and in making the activities of the Master Disbursement Trust as transparent as possible. The MDT Trustees shall publish on the MDT Website (i) all reports received from the Abatement Trusts regarding the disbursement and use of Abatement Distributions and compliance with the Authorized Abatement Purposes, (ii) each MDT Report prepared and filed with the Bankruptcy Court in accordance with Section 3.02(a) hereof and (iii) such other information as the MDT Trustees deem prudent.

Section 3.03.  Master TDP. The Master TDP shall become effective and be automatically implemented according to its terms and the terms of the Plan upon the Effective Date, without any further order of the Bankruptcy Court or action by the MDT Trustees or any other Person. In the event any Person asserts any potential or alleged Channeled Claim against the Master Disbursement Trust, the MDT Trustees shall refer such potential or alleged Channeled Claim to the Bankruptcy Court, which shall determine whether such Person has a Channeled Claim and, if such Person has a Channeled Claim, whether such Channeled Claim is channeled to a Creditor Trust or otherwise released in accordance with the Master TDP.

ARTICLE IV
DURATION AND TERMINATION OF THE MASTER DISBURSEMENT TRUST

Section 4.01.  Duration. The Master Disbursement Trust was formed as of the execution and filing of a Certificate of Trust with the Delaware Secretary of State on [ ], 2021 and its existence is intended to continue until such time as its Certificate of Trust has been cancelled by the filing of a certificate of cancellation in accordance with Section 4.03 of this Trust Agreement.

Section 4.02.  Dissolution of the Master Disbursement Trust. The Master Disbursement Trust shall be dissolved and the MDT Trustees and the MDT Executive Director shall be discharged from their respective duties with respect to the Master Disbursement Trust upon completion of their duties as set forth in the Plan and this Trust Agreement, which, for the avoidance of doubt, shall be no earlier than the date on which (a) all Assets held by the Master Disbursement Trust, including the MDT Transferred Assets, have been liquidated and (b) all payments and other distributions required to be made from the Master Disbursement Trust under the Plan and this Trust Agreement have been made, including payment in full in Cash of all MDT Claims, unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court. Upon dissolution of the Master Disbursement Trust, any Cash remaining in the MDT Operating Reserve or otherwise held by the Master Disbursement Trust shall be distributed in

13

accordance with the MDT Priority Waterfall and this Trust Agreement; *provided* that, in the event the Master Disbursement Trust is dissolved prior to the payment in full in Cash of all MDT Claims, all outstanding amounts under such MDT Claims shall be deemed due and payable for purposes of the distribution of such remaining Cash pursuant to the MDT Priority Waterfall. Subject to the foregoing sentences, the Master Disbursement Trust shall be dissolved at such time as the MDT Trustees determine that the administration of any remaining assets of the Master Disbursement Trust is not likely to yield sufficient additional proceeds to justify further pursuit.

Section 4.03. <u>Continuance of Master Disbursement Trust for Winding Up</u>. After the dissolution of the Master Disbursement Trust and solely for the purpose of liquidating and winding up the affairs of the Master Disbursement Trust, the MDT Trustees, or the MDT Executive Director, shall continue to act as such until their duties have been fully performed. As soon as practicable after the MDT Trustees exhaust substantially all of the assets of the Master Disbursement Trust, the MDT Trustees shall, at the expense of the Master Disbursement Trust, (a) provide for the retention and storage of the Master Disbursement Trust's books and records until such time as all such books and records are no longer required to be retained under applicable law, (b) file a certificate with the Bankruptcy Court informing the Bankruptcy Court of the location at which such books and records are being stored and stating that the assets of the Master Disbursement Trust have been exhausted and that final distributions of Cash have been made pursuant to the Plan and this Trust Agreement, (c) notify the MDT Beneficiaries that the MDT Trustees have exhausted substantially all of the assets of the Master Disbursement Trust, and (d) file a certificate of cancellation with the Secretary of State of the State of Delaware to terminate the Master Disbursement Trust. Upon the taking of such actions in the preceding sentence, the Master Disbursement Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Master Disbursement Trust or payments to be made in connection therewith.

ARTICLE V
ACCOUNTS, INVESTMENTS AND PAYMENTS

Section 5.01. <u>Accounts</u>. The MDT Trustees may, from time to time, create such accounts and reserves within or in the name of the Master Disbursement Trust as they may deem necessary, prudent or useful in order to discharge their duties hereunder and may, with respect to any such accounts or reserves, restrict the use of monies therein, and the earnings or accretions thereto (the "<u>Trust Subaccounts</u>"). Any such Trust Subaccounts established by the Trustees shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as "disputed claims reserves" within the meaning of the IRC or Treasury Regulations, "disputed ownership funds" within the meaning of the IRC or Treasury Regulations, or otherwise.

Section 5.02. <u>MDT Operating Reserve</u>. On and after the Effective Date, the MDT Operating Reserve shall be held in a single segregated account administered by the MDT Trustees to pay any and all MDT Operating Expenses. On the Effective Date, the Debtors shall establish and fund the MDT Operating Reserve in accordance with the Plan, which shall vest in the Master Disbursement Trust in accordance with Section 5.6(b) of the Plan and be held and maintained by the MDT Trustees. All MDT Operating Expenses shall be satisfied and paid from the MDT Operating Reserve. Periodically, until the dissolution of the Master Disbursement Trust, the MDT Trustees shall replenish the MDT Operating Reserve from Cash held or received by the Master

14

Disbursement Trust to the extent deemed necessary by the MDT Trustees to satisfy and pay estimated future MDT Operating Expenses.

Section 5.03. <u>MDT Claims Reserve</u>. Upon the commencement and during the continuation of an MDT Reserve Period, the MDT Trustees shall establish the MDT Claims Reserve in a single segregated account administered by the MDT Trustees in accordance with the Plan and this Trust Agreement. For so long as an MDT Reserve Period is continuing, the MDT Claims Reserve shall remain in place and shall be funded, as of each relevant date of determination, in an amount equal to (a) all outstanding amounts then due on account of the MDT Claims plus (b) all installments of the MDT Claims due on the Scheduled MDT Distribution Date immediately following such date of determination; *provided* that, solely for purposes of any date of determination that is a NewCo Distribution Date on January 30 of any year, if the applicable MDT Reserve Period is continuing solely as a result of a payment default by certain Shareholder Payment Groups, this clause (b) shall be an amount equal to the installments of the MDT Claims due on the Scheduled MDT Distribution Date immediately following such NewCo Distribution Date multiplied by the SSA Percentage of such defaulting Shareholder Payment Groups for the next SSA Payment Date following such NewCo Distribution Date (the sum of the amounts in the foregoing clauses (a) and (b), the "<u>MDT Claims Reserve Funding Amount</u>").

Section 5.04. <u>Investments</u>.

(a)    Investment of monies held in the Master Disbursement Trust shall comply with the guidelines set forth in <u>Exhibit B</u> to this Trust Agreement.

(b)    The foregoing paragraph (a) shall not apply to securities, instruments or other assets received as, or obtained as proceeds of, the MDT Transferred Assets, the NewCo Credit Support Agreement, or, solely to the extent approved with the unanimous consent of the MDT Trustees, litigation or otherwise to resolve disputes.

Section 5.05. <u>Source of Payments</u>. All Master Disbursement Trust expenses and payments shall be payable solely out of the assets of the Master Disbursement Trust. None of the MDT Trustees, the MDT Executive Director or any other Protected Party shall be liable for the payment of any Master Disbursement Trust expense or payment or any other liability of the Master Disbursement Trust, except to the extent provided in the Plan or Plan Documents.

ARTICLE VI
TAX MATTERS

Section 6.01. <u>U.S. Federal Income Tax Treatment</u>.

(a)    The Master Disbursement Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC (the "<u>QSF Regulations</u>") and shall be treated consistently for state and local tax purposes, to the extent applicable. All parties (including the Debtors, the Master Disbursement Trust, the MDT Trustees and the Creditor Trusts) shall report consistently with the foregoing.

(b)      An MDT Trustee or the MDT Executive Director, as determined by a majority vote of the MDT Trustees, shall be the "administrator," within the meaning of Treasury Regulations section 1.468B-2(k)(3), of the Master Disbursement Trust. The administrator of the Master Disbursement Trust shall be responsible for (i) preparing and filing, or causing to be prepared and filed, all tax returns of the Master Disbursement Trust and the payment, out of the Assets of the Master Disbursement Trust, of any taxes due by or imposed on the Master Disbursement Trust and (ii) complying with all applicable tax reporting and withholding obligations. The MDT Trustees shall be responsible for causing the Master Disbursement Trust to satisfy all requirements necessary to qualify and maintain qualification of the Master Disbursement Trust as a qualified settlement fund within the meaning of the QSF Regulations, and shall take no action that could cause the Master Disbursement Trust to fail to qualify as a qualified settlement fund within the meaning of the QSF Regulations. The MDT Trustees may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Master Disbursement Trust for all taxable periods through the dissolution of the Master Disbursement Trust.

(c)      Subject to Section 6.01(b) of this Trust Agreement, following the Effective Date, the MDT Trustees shall be responsible for all of the Master Disbursement Trust's tax matters, including, without limitation, tax audits, claims, defenses and proceedings. The MDT Trustees shall also file (or cause to be filed) any other statement, return or disclosure relating to the Master Disbursement Trust that is required by any governmental unit and be responsible for payment, out of the MDT Operating Reserve, of any taxes imposed on the Master Disbursement Trust or its assets.

Section 6.02. Tax Withholdings. The administrator of the Master Disbursement Trust shall withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or distribution to the MDT Beneficiaries. All such amounts withheld and paid to the appropriate tax authority shall be treated as amounts distributed to such MDT Beneficiaries for all purposes of this Trust Agreement. The MDT Trustees shall be authorized to collect such tax information from the MDT Beneficiaries (including tax identification numbers) as in their sole discretion the MDT Trustees deem necessary to effectuate the Plan, the Confirmation Order, and this Trust Agreement. In order to receive distributions, all MDT Beneficiaries shall be required to provide tax information to the MDT Trustees to the extent the MDT Trustees deem appropriate in the manner and in accordance with the procedures from time to time established by the MDT Trustees for these purposes. The MDT Trustees may refuse to make a payment or distribution to an MDT Beneficiary that fails to furnish such information in a timely fashion, and until such information is delivered may treat such MDT Beneficiary's MDT Claim or MDT Interest, as applicable, as disputed; provided, however, that, upon the delivery of such information by an MDT Beneficiary, the MDT Trustees shall make such payment or distribution to which such MDT Beneficiary is entitled, without additional interest occasioned by such MDT Beneficiary's delay in providing tax information. Notwithstanding the foregoing, if an MDT Beneficiary fails to furnish any tax information reasonably requested by the MDT Trustees before the date that is three hundred sixty-five (365) calendar days after the request is made or, if earlier, the date on which the Master Disbursement Trust is terminated in accordance with Article IV of this Trust Agreement, the amount of such payment or distribution shall irrevocably revert to the Master Disbursement Trust,

16

and any MDT Claim with respect to such distribution shall be discharged and forever barred from assertion against the Master Disbursement Trust Beneficiary or its property.

<div align="center">

ARTICLE VII

DISTRIBUTIONS

</div>

Section 7.01.  Distributions.

(a)      The MDT Trustees shall distribute all MDT Transferred Assets on behalf of the Master Disbursement Trust in accordance with the Plan and this Trust Agreement.

(b)      In accordance with the Master TDP, on the Effective Date, or as soon thereafter as reasonably practicable, the Master Disbursement Trust shall (i) make the Initial Private Creditor Trust Distributions to the Private Creditor Trusts and (ii) make the Initial Public Creditor Trust Distributions (other than the Public Schools' Special Education Initiative Contribution) and distribute the TopCo Interests to NOAT and TAFT.

(c)      Subject to Section 7.03 of this Trust Agreement, the MDT Trustees shall make distributions after the Effective Date as follows:

(i)      on each MDT Distribution Date, the MDT Trustees shall apply all Cash and cash equivalents of the Master Disbursement Trust (other than amounts subject to distribution in accordance with Section 5.2(d)(iv)(A) and (B) of the Plan) in accordance with the MDT Priority Waterfall;

(ii)     until the MDT PI Claim has been paid in full in Cash, no later than thirty (30) days after the receipt by the Master Disbursement Trust of any MDT Bermuda-Form Insurance Proceeds, the MDT Trustees shall make the distribution to the PI Trust required pursuant to Section 5.2(d)(iv)(A) of the Plan; and

(iii)    until all MDT Claims have been paid in full in Cash, no later than ten (10) Business Days after the receipt by the Master Disbursement Trust of any MDT Distributable Sale Proceeds, the MDT Trustees shall make the distributions to the MDT Beneficiaries of the MDT Claims required pursuant to Section 5.2(d)(iv)(B) of the Plan.

(d)      The MDT Trustees shall not make any distributions, including to MDT Beneficiaries on account of the MDT Claims or MDT Interests or to NewCo or TopCo on account of repayments under the NewCo Credit Support Agreement, other than as provided in the foregoing paragraphs (b) and (c).

(e)      All distributions made by the MDT Trustees to any MDT Beneficiary shall be made on no less than ten (10) Business Days' notice to all MDT Beneficiaries, and thereafter shall become the property of such MDT Beneficiary, free and clear of all Claims, Liens or other recourse or encumbrances, and shall not be subject to attachment, disgorgement or recoupment by any Person, subject to Section 7.05 hereof; *provided* that such ten (10) Business Days' notice

<div align="center">17</div>

period shall not be required for the distributions to be made on the Effective Date in accordance with the Master TDP.

Section 7.02.  Distribution Dates.

(a)      The initial Scheduled MDT Distribution Date shall be [   ].[43] Reasonably promptly after the Effective Date, the MDT Trustees shall provide notice to all MDT Beneficiaries of the date of such initial Scheduled MDT Distribution Date.

(b)      Subject to Section 7.03(a) hereof, the second Scheduled MDT Distribution Date shall be July 31, 2023 and each successive Scheduled MDT Distribution Date thereafter shall be on the twelve (12)-month anniversary of the preceding Scheduled MDT Distribution Date;

(c)      Subject to Section 7.03(a) hereof, there shall be an MDT Distribution Date on each date that is ten (10) Business Days after the receipt by the Master Disbursement Trust of a Shareholder Prepayment in accordance with Section 5.2(d)(iv)(C) of the Plan.

(d)      Subject to Section 7.03 of the Plan, the MDT Trustees may, in their discretion, acting in accordance with their fiduciary duties to the MDT Beneficiaries in accordance with Section 5.6(f) of the Plan, declare an MDT Distribution Date on any other date on which the MDT Trustees seek to make a repayment to NewCo or TopCo or a Public Creditor Trust Distribution.

(e)      In the event that an MDT Distribution Date is a date that is not a Business Day, such MDT Distribution Date shall automatically be deemed to occur on the next succeeding Business Day.

Section 7.03.  Escrow Periods and MDT Reserve Periods.

(a)      No distributions shall be made to MDT Beneficiaries during an Escrow Period. If an Escrow Period is in effect on any date that would otherwise be an MDT Distribution Date or on which a distribution would otherwise be required to be paid by the Master Disbursement Trust, such MDT Distribution Date shall be deemed to not occur and such distribution shall be deemed to not be required to be paid, in each case, until the next Business Day following the termination of such Escrow Period. The MDT Trustees shall provide prompt written notice to all MDT Beneficiaries

---

[43] Expected to be July 31, 2022.

upon the commencement and upon the termination of any Escrow Period in accordance with the Shareholder Settlement Agreement.

(b)      An MDT Reserve Period shall commence immediately, and the MDT Trustees shall promptly provide notice thereof to NewCo, TopCo and each MDT Beneficiary, upon the occurrence of any of the following events: (i) any amount is not paid to the Master Disbursement Trust when due under the Shareholder Settlement Agreement, (ii) the MDT Trustees determine, after the receipt of a written acknowledgment by any obligor under the Shareholder Settlement Agreement that any amounts due on the next SSA Payment Date are not expected to be paid and that the Master Disbursement Trust is not likely to be able to fund the payments due on account of the MDT Claims on the next Scheduled MDT Distribution Date after taking into account all sources of liquidity and expected recoveries by the Master Disbursement Trust or (iii) the MDT Trustees determine, on or after the date that is one hundred twenty (120) days prior to July 31, 2024, that the Master Disbursement Trust is not likely to be able to fund the payments due on account of the MDT Claims on July 31, 2024 from the payments due under the Shareholder Settlement Agreement and other sources of liquidity and expected recoveries by the Master Disbursement Trust. Each MDT Reserve Period shall continue until either (x) all currently and past due payments under the Shareholder Settlement Agreement have been paid in full and, with respect to any MDT Reserve Period commencing or continuing based upon a determination by the MDT Trustees under clause (ii) or (iii) of the foregoing sentence, the MDT Trustees determine that the circumstances described in such clauses are no longer reasonably likely to occur or (y) the MDT Trustees determine that the Master Disbursement Trust is not reasonably likely to be unable to make the required payments on account of the MDT Claims on the next Scheduled MDT Distribution Date. The MDT Trustees shall provide prompt written notice to all MDT Beneficiaries upon the commencement and upon the termination of any MDT Reserve Period.

(c)      Upon the commencement of an MDT Reserve Period, the MDT Trustees shall establish and fund the MDT Claims Reserve in an amount equal to the MDT Claims Reserve Funding Amount. For so long as such MDT Reserve Period is continuing, the MDT Claims Reserve shall remain in place and no Public Creditor Trust Distributions, nor any repayments by the Master Disbursement Trust to NewCo or TopCo, shall be made until the MDT Operating Reserve is fully funded in an amount deemed necessary by the MDT Trustees to satisfy and pay estimated future MDT Operating Expenses and the MDT Claims Reserve is fully funded in an amount equal to the MDT Claims Reserve Funding Amount, in each case, determined as of the proposed date of such Public Creditor Trust Distribution or repayment to NewCo or TopCo. For the avoidance of doubt, notwithstanding the occurrence and continuation of an MDT Reserve Period, so long as the MDT Operating Reserve and the MDT Claims Reserve are fully funded, the Master Disbursement Trust shall continue to make Public Creditor Trust Distributions from MDT Excess Cash solely in accordance with Section 5.2(e) of the Plan and this Trust Agreement.

Section 7.04.  Public Creditor Trust Distributions. All Public Creditor Trust Distributions from the Master Disbursement Trust shall be allocated between NOAT, on the one hand, and TAFT, on the other hand, in accordance with the Public Entity Allocation. In order to effectuate the Public Entity Allocation, the MDT Trustees shall maintain written records of each Public Creditor Trust Distribution made to NOAT, TAFT or Tribe Opioid LLC by TopCo or the Master Disbursement Trust. Prior to each NewCo Distribution Date and MDT Distribution Date, the MDT Trustees shall calculate the then-current Public Entity Allocation and provide written notice thereof to each of TopCo, NOAT, TAFT and Tribe Opioid LLC so that all Public Creditor Trust

Distributions, whether from the Master Disbursement Trust or TopCo, to be made on or in connection with such NewCo Distribution Date or MDT Distribution Date can be made in accordance therewith. In furtherance of the foregoing, the TopCo Managers shall provide to the MDT Trustees advance written notice of each Public Creditor Trust Distribution to be made by TopCo and any other information with respect to Public Creditor Trust Distributions reasonably requested by the MDT Trustees. For the avoidance of doubt, none of the MDT Trustees or the Master Disbursement Trust shall have any liability for any Public Creditor Trust Distribution made by TopCo.

Section 7.05. <u>Restriction on Use of Distributions by Creditor Trusts</u>. Each distribution made by the Master Disbursement Trust to the Creditor Trusts, including all Public Creditor Trust Distributions received on account of the TopCo Interests, shall be used exclusively for the administration (including the payment of Creditor Trust Operating Expenses) of such Creditor Trust, to make Distributions in accordance with the applicable Creditor Trust TDP on account of Channeled Claims channeled to such Creditor Trust pursuant to the Master TDP and for such other purposes as may be specifically set forth in the applicable Creditor Trust Documents and the Plan, including the assessments required pursuant to Section 5.8 of the Plan.

ARTICLE VIII
MDT TRUSTEES, MDT EXECUTIVE DIRECTOR AND RESIDENT TRUSTEE

Section 8.01. <u>The MDT Trustees</u>.

(a)    There shall be three (3) MDT Trustees. The initial MDT Trustees shall be [ ], [ ] and [ ]. References herein to the MDT Trustees shall refer to the individuals serving as the MDT Trustees solely in their respective capacities as trustees hereunder.

(b)    Unless otherwise provided herein, any act of the Master Disbursement Trust shall require the approval of and shall be approved by the affirmative vote of a majority of the MDT Trustees.

(c)    The MDT Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 8.02. <u>Term of Service of the MDT Trustees</u>.

(a)    Each MDT Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to <u>Section 8.02(b)</u> hereof, (iii) his or her removal pursuant to <u>Section 8.02(c)</u> hereof and (iv) such MDT Trustee complying with his or her obligations pursuant to <u>Section 4.03</u> following the dissolution of the Master Disbursement Trust pursuant to <u>Section 4.02</u> hereof.

(b)    An MDT Trustee may resign from the Master Disbursement Trust by giving not less than sixty (60) days' prior written notice thereof to each of the other MDT Trustees. Such resignation shall become effective on the later to occur of (i) the date specified in such written notice, (ii) the effective date of the appointment of a successor MDT Trustee in accordance with <u>Section 8.03(a)</u> of this Trust Agreement and such successor's acceptance of such appointment in accordance with <u>Section 8.03(b)</u> of this Trust Agreement and (iii) if such MDT Trustee is the last MDT Trustee then in office, the appointment of a successor by the Bankruptcy Court and the

acceptance by such successor of such appointment. If a successor MDT Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation of the last MDT Trustee in office, then such MDT Trustee may petition the Bankruptcy Court for the appointment of a successor MDT Trustee. With respect to any other MDT Trustee's resignation, such resignation shall be effective whether or not a successor has been appointed by the effective date of the resigning MDT Trustee's resignation.

(c)       Upon the payment in full of the MDT Claims, any MDT Trustee may be removed by NOAT in its sole discretion. Prior to the payment in full of the MDT Claims, any MDT Trustee may be removed either (i) at the unanimous recommendation of the other two (2) MDT Trustees in the event that he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause or (ii) in connection with any dispute raised by any MDT Beneficiary in accordance with Section 8.02(d) below. Any removal of any MDT Trustee shall require the approval of the Bankruptcy Court and shall take effect at such time as the Bankruptcy Court shall determine.

(d)       To the extent there are any disputes raised by any MDT Beneficiary regarding the operation of the Master Disbursement Trust or the actions of the MDT Fiduciaries (including, without limitation, any failure to give notice of an MDT Reserve Period and any action related to the MDT Shareholder Rights), (i) any MDT Beneficiary shall have the right to seek resolution by the Bankruptcy Court of such a dispute, including seeking to enjoin any disputed action by the Master Disbursement Trust, and all MDT Fiduciaries and MDT Beneficiaries shall have the right to be heard with regard to any such dispute, including by filing objections, declarations, statements in support or other pleadings (including with supporting evidence) or providing witness testimony at any hearing and (ii) the Bankruptcy Court shall have exclusive jurisdiction to hear and resolve any such disputes, and shall be authorized to order appropriate relief (subject to the provisions of Section 5.6(f) of the Plan and this Trust Agreement and make a determination in an expedited manner, and in all events, shall make such a decision within thirty (30) days from the request for relief).

(e)       The death, resignation or removal of an MDT Trustee shall not operate to terminate the Master Disbursement Trust or to revoke any existing agency created pursuant to the terms of this Trust Agreement, the Plan or the Confirmation Order or invalidate any action theretofore taken by such MDT Trustee. All fees and expenses properly incurred by an MDT Trustee prior to the death, resignation or removal of such MDT Trustee shall be paid from the MDT Operating Reserve, unless such fees and expenses are disputed, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor MDT Trustee that are subsequently allowed by the Bankruptcy Court shall be paid from the MDT Operating Reserve. In the event of the resignation or removal of an MDT Trustee, such MDT Trustee shall (i) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the remaining MDT Trustees or the successor MDT Trustee or directed by the Bankruptcy Court to effect the termination of such MDT Trustee's capacity under this Trust Agreement, (ii) promptly deliver to the remaining MDT Trustees and the successor MDT Trustee all documents, instruments, records and other writings related to the Master Disbursement Trust as may be in the possession of such MDT Trustee, and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor MDT Trustee.

Section 8.03. <u>Appointment of Successor MDT Trustees</u>.

(a)    In the event of the death, resignation or removal of an MDT Trustee, a vacancy shall be deemed to exist and a successor shall be appointed by the other two (2) MDT Trustees, subject to the approval of the Bankruptcy Court, *provided* that, solely upon the payment in full of all MDT Claims, the MDT Trustees may be replaced by NOAT (including with any of the Creditor Trustees of NOAT) in its sole discretion. Such appointment shall specify the date on which such appointment shall be effective.

(b)    Any successor MDT Trustee appointed in accordance with this Trust Agreement shall execute an instrument accepting its appointment and shall deliver a counterpart thereof to the Bankruptcy Court for filing and, in case of an MDT Trustee's resignation, to the resigning MDT Trustee. Thereupon, such successor MDT Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Master Disbursement Trust with like effect as if originally named an initial MDT Trustee and shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The resigning or removed MDT Trustee shall duly assign, transfer and deliver to such successor MDT Trustee all property and money held by such resigning or removed MDT Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor MDT Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor MDT Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed MDT Trustee.

Section 8.04. <u>MDT Executive Director</u>.

(a)    The MDT Executive Director shall be appointed by the MDT Trustees. The initial MDT Executive Director shall be [  ].

(b)    The MDT Executive Director shall (i) carry out the day-to-day operations of the Master Disbursement Trust; (ii) make such enforcement, litigation and liquidation recommendations as are reasonably necessary to the MDT Trustees and such other administrative professionals or entities; and (iii) have such other duties and responsibilities as set forth in this Trust Agreement and as may be delegated to him or her by the MDT Trustees in accordance with this Trust Agreement. The MDT Executive Director shall comply with the terms of the Plan and this Trust Agreement, and shall always act consistently with, and not contrary to, the purpose of the Master Disbursement Trust as set forth in the Plan.

(c)    The MDT Executive shall serve until the earliest of (i) his or her death, (ii) his or her resignation, (iii) his or her removal pursuant to <u>Section 8.04(d)</u> hereof and (iv) the dissolution of the Master Disbursement Trust pursuant to <u>Section 4.02</u> hereof.

(d)    The MDT Executive Director may be removed by the majority vote of MDT Trustees. Such removal shall become effective on the date action is taken by the MDT Trustees or such other date as the MDT Trustees determine.

Section 8.05. <u>Independence of the MDT Trustees and MDT Executive Director</u>.

(a)    The MDT Trustees and the MDT Executive Director shall be, at the time of appointment and at all times during the term of service, disinterested and independent.

(b)    None of the MDT Trustees or the MDT Executive Director shall, during the term of his or her service, hold a financial interest in, act as a representative, attorney, consultant or agent for or serve as any other professional for any Person with a financial interest in the Master Disbursement Trust or any Creditor Trust, including any Creditor Trustee or any Holder of a Channeled Claim; *provided* that, solely upon the payment in full of all MDT Claims, a Creditor Trustee of NOAT may be appointed as an MDT Trustee by NOAT in accordance with Section 8.03(a) hereof.

Section 8.06.    Obligations of the MDT Fiduciaries. The MDT Trustees and, to the extent he or she is determined by a court of competent jurisdiction to be subject to fiduciary duties, the MDT Executive Director shall take into account the interests of, and owe fiduciary duties to, each of the MDT Beneficiaries in making all decisions on behalf of the Master Disbursement Trust in accordance with Section 5.6(f) of the Plan. In furtherance of the foregoing, (a) in the event of a Specified Default (as defined in the Shareholder Settlement Agreement), the MDT Trustees and, to the extent he or she is determined by a court of competent jurisdiction to be subject to fiduciary duties, the MDT Executive Director, will take into account the remaining rights of the holders of MDT Claims as well as the interests of the holders of MDT Interests in formulating and exercising appropriate remedies as they relate to the Shareholder Payment Parties and the Shareholder Release Snapback Parties, but shall in all events, to the extent there are obligations remaining to the Private Creditor Trusts upon such default, seek to utilize all other available sources of assets (including by (i) enforcement of the NewCo Credit Support Agreement in accordance with the terms thereof and (ii) first utilizing commercially reasonable efforts to pursue a Payment Remedy (as defined in the Shareholder Settlement Agreement) before electing to pursue a Shareholder Release Remedy) to pay all outstanding amounts owed to the holders of MDT Claims then-due or to be paid in the future from amounts due from such Breaching Shareholder Family Group until such outstanding amounts have been paid in full, and (b) the Master Disbursement Trust shall provide no less than ten (10) Business Days' advance written notice (unless urgent circumstances require less notice) to each MDT Beneficiary of any material action proposed to be taken in respect of the MDT Shareholder Rights, including any exercise of remedies under the Shareholder Settlement Agreement or the commencement or settlement of any litigation against any Shareholder Payment Party or Shareholder Release Snapback Party.

Section 8.07.    Compensation and Expenses of the MDT Trustees and the MDT Executive Director and MDT Professionals. The MDT Trustees and the MDT Executive Director shall be entitled to reasonable compensation and to retain and reasonably compensate counsel, agents, advisors, consultants and other professionals (the "MDT Professionals") to assist in the duties of the Master Disbursement Trust on such terms as the MDT Trustees and the MDT Executive Director deem appropriate, without Bankruptcy Court approval. The compensation of the initial MDT Trustees shall be $[  ]. The compensation of the initial MDT Executive Director shall be $[  ]. The compensation of any successor MDT Trustee or MDT Executive Director shall be reasonably acceptable to the MDT Beneficiaries in the same manner as provided for the MDT Operating Budget. The payment of the fees and expenses of the MDT Trustees, the MDT Executive Director and the Master Disbursement Professionals shall be made from the MDT Operating Reserve in the ordinary course of business and shall not be subject to the approval of the

23

Bankruptcy Court; *provided* that any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

Section 8.08. <u>Resident Trustee</u>.

(a)    The Resident Trustee has been appointed and hereby agrees to serve as a trustee of the Master Disbursement Trust solely for the purpose of complying with the requirement of Section 3807(a) of the Trust Act that the Master Disbursement Trust have one trustee, which, in the case of a natural person, is a resident of the State of Delaware, or which in all other cases, has its principal place of business in the State of Delaware. The duties and responsibilities of the Resident Trustee shall be limited solely to (i) accepting legal process served on the Master Disbursement Trust in the State of Delaware, (ii) the execution of any certificates required to be filed with the office of the Delaware Secretary of State that the Resident Trustee is required to execute under Section 3811 of the Trust Act, and (iii) any other duties specifically allocated to the Resident Trustee in this Trust Agreement. Except as provided in the foregoing sentence, the Resident Trustee shall have no management responsibilities or owe any fiduciary duties to the Master Disbursement Trust, the MDT Trustees, or the MDT Beneficiaries.

(b)    By execution of this Trust Agreement, the Resident Trustee accepts the Master Disbursement Trust created herein. Except as otherwise expressly required by <u>Section 8.08(a)</u> of this Trust Agreement, the Resident Trustee shall not have any duty or liability with respect to the administration of the Master Disbursement Trust, the investment of the assets of the Master Disbursement Trust or the distribution of the MDT Transferred Assets to the MDT Beneficiaries, and no such duties shall be implied. The Resident Trustee shall not be liable for the acts or omissions of the MDT Trustees, nor shall the Resident Trustee be liable for supervising or monitoring the performance of the duties and obligations of the MDT Trustees or the MDT Executive Director under this Trust Agreement, except as expressly required by <u>Section 8.08(a)</u> of this Trust Agreement. The Resident Trustee shall not be obligated to give any bond or other security for the performance of any of its duties hereunder. The Resident Trustee shall not be personally liable under any circumstances, except for its own willful misconduct, bad faith, or gross negligence. Without limiting the foregoing:

(i)    the Resident Trustee shall not be personally liable for any error of judgment made in good faith, except to the extent such error of judgment constitutes willful misconduct, bad faith or gross negligence;

(ii)    no provision of this Trust Agreement shall require the Resident Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Resident Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(iii)    the Resident Trustee shall not be personally liable for the validity or sufficiency of this Trust Agreement or for the due execution of this Trust Agreement by the other parties to this Trust Agreement;

24

(iv)    the Resident Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect;

(v)    the Resident Trustee may request the MDT Trustees to provide a certificate with regard to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, and such certificate shall constitute full protection to the Resident Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon;

(vi)    in the exercise or administration of the Master Disbursement Trust hereunder, the Resident Trustee (A) may act directly or through agents or attorneys pursuant to agreements entered into with any of them and (B) may consult with nationally recognized counsel selected by it in good faith and with due care and employed by it, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel; and

(vii)    the Resident Trustee acts solely as Resident Trustee hereunder and not in its individual capacity, and all persons having any claim against the Resident Trustee by reason of the transactions contemplated by this Trust Agreement shall look only to the assets of the Master Disbursement Trust for payment or satisfaction thereof.

(c)    The Resident Trustee shall be entitled to receive compensation out of the assets of the MDT Operating Reserve for the services that the Resident Trustee performs in accordance with this Trust Agreement in accordance with such fee schedules as shall be agreed from time to time by the Resident Trustee and the MDT Trustees. The Resident Trustee may also consult with counsel (who may be counsel for the Master Disbursement Trust or for the Resident Trustee) with respect to those matters that relate to the Resident Trustee's role as the Delaware resident trustee of the Master Disbursement Trust, and the reasonable legal fees incurred in connection with such consultation shall be reimbursed out of the MDT Operating Reserve to the Resident Trustee pursuant to this Section 8.08(c) on terms acceptable to the MDT Trustees; *provided* that no such fees shall be reimbursed to the extent that they are incurred as a result of the Resident Trustee's gross negligence, bad faith or willful misconduct.

(d)    The Resident Trustee shall serve for the duration of the Master Disbursement Trust or until the earlier of (i) the effective date of the Resident Trustee's resignation, or (ii) the effective date of the removal of the Resident Trustee. The Resident Trustee may resign at any time by giving thirty (30) days' written notice to the MDT Trustees; *provided*, *however*, that such resignation shall not be effective until such time as a successor Resident Trustee has accepted appointment. The Resident Trustee may be removed at any time by the MDT Trustees by providing thirty (30) days' written notice to the Resident Trustee; *provided*, *however*, such removal shall not be effective until such time as a successor Resident Trustee has accepted appointment. Upon the resignation or removal of the Resident Trustee, the MDT Trustees shall appoint a successor Resident Trustee. If no successor Resident Trustee shall have been appointed and shall have accepted such appointment within forty-five (45) days after the giving of such notice of resignation

or removal, the Resident Trustee may petition the Bankruptcy Court for the appointment of a successor Resident Trustee. Any successor Resident Trustee appointed pursuant to this Section 8.08(d) of this Trust Agreement shall be eligible to act in such capacity in accordance with this Trust Agreement and, following compliance with this Section 8.08(d) of this Trust Agreement, shall become fully vested with the rights, powers, duties, and obligations of its predecessor under this Trust Agreement, with like effect as if originally named as Resident Trustee. Any such successor Resident Trustee shall notify the Resident Trustee of its appointment by providing written notice to the Resident Trustee, and upon receipt of such notice, the Resident Trustee shall be discharged of its duties herein.

ARTICLE IX
RELIANCE, LIABILITY AND INDEMNIFICATION

Section 9.01. Reliance by the MDT Trustees and the MDT Executive Director. Except as otherwise provided in this Trust Agreement, the Plan or the Confirmation Order, each MDT Trustee and the MDT Executive Director may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by such MDT Trustee and/or the MDT Executive Director to be genuine and to have been signed or presented by the proper party or parties having relevant authority or expertise.

Section 9.02. Nonliability of MDT Trustees and MDT Executive Director. Except as provided herein, nothing contained in this Trust Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the MDT Trustees, the MDT Executive Director or the MDT Professionals of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by the MDT Trustees to assume or accept any such liability, obligation or duty. Any successor MDT Trustee or MDT Executive Director may accept and rely upon any accounting made by or on behalf of any predecessor MDT Trustee or MDT Executive Director hereunder, and any statement or representation made as to the assets comprising the MDT Transferred Assets or as to any other fact bearing upon the prior administration of the Master Disbursement Trust, so long as it has a good faith basis to do so. The MDT Trustees and the MDT Executive Director shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. Any successor MDT Trustee and MDT Executive Director shall not be liable for any act or omission of any predecessor MDT Trustee or MDT Executive Director, nor have a duty to enforce any claims against any predecessor MDT Trustee or MDT Executive Director on account of any such act or omission. No provision of this Trust Agreement shall require the MDT Trustees or MDT Executive Director to expend or risk his or her personal funds or otherwise incur any financial liability in the performance of his or her rights or powers hereunder if the MDT Trustee or MDT Executive Director has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to him or her.

Section 9.03. Exculpation. To the maximum extent permitted by applicable law, each of the MDT Trustees, the MDT Executive Director, the MDT Professionals and the Resident Trustee shall not have or incur any liability for actions taken or omitted in his or her capacity as an MDT Trustee, the MDT Executive Director, an MDT Professional or the Resident Trustee, or on behalf of the Master Disbursement Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification

26

and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or inactions in his or her capacity as an MDT Trustee, the MDT Executive Director, an MDT Professional or the Resident Trustee, or on behalf of the Master Disbursement Trust, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the MDT Trustees, the MDT Executive Director, the MDT Professionals or the Resident Trustee shall be satisfied from the MDT Operating Reserve.

Section 9.04. <u>Limitation of Liability</u>. The MDT Trustees, the Resident Trustee, the MDT Executive Director, and the Master Disbursement Professionals will not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Trust Agreement under any circumstances.

Section 9.05. <u>Indemnity</u>. The Master Disbursement Trust shall indemnify and hold harmless each of the MDT Trustee, MDT Executive Director, MDT Professional and Resident Trustee, in each case solely in such Person's capacity as such (each, an "<u>Indemnified Party</u>"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses (other than taxes in the nature of income taxes imposed on compensation paid to the Indemnified Parties), including, but not limited to, attorneys' fees, arising out of or due to the implementation or administration of the Plan or this Trust Agreement, other than such Indemnified Party's willful misconduct, bad faith, gross negligence or fraud, with respect to the implementation or administration of the Plan or this Trust Agreement. To the extent that an Indemnified Party asserts a claim for indemnification as provided above, (a) any payment on account of such claim shall be paid solely from the MDT Operating Reserve and (b) the legal fees and related costs incurred by counsel to such Indemnified Party in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (provided that such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefore) out of the MDT Operating Reserve or any insurance purchased using the MDT Operating Reserve. This indemnification provision shall remain available to, and the repayment obligation and be binding upon, any former MDT Trustee, MDT Executive Director, MDT Professional or Resident Trustee or the estate of any deceased MDT Trustee, MDT Executive Director, MDT Professional or Resident Trustee, as the case may be, and shall survive the termination of the Master Disbursement Trust.

ARTICLE X
MISCELLANEOUS PROVISIONS

Section 10.01.<u>Actions Taken on Other Than a Business Day</u>. In the event that any payment or act under the Plan or this Trust Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 10.02.<u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Trust Agreement

shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to principles of conflicts of laws.

Section 10.03. <u>Jurisdiction</u>. Subject to the proviso below, the Bankruptcy Court shall have exclusive jurisdiction over the Master Disbursement Trust, the MDT Trustees and the MDT Executive Director, including the administration and activities of the Master Disbursement Trust, the MDT Trustees and the MDT Executive Director, and, pursuant to the Plan, the Bankruptcy Court has retained such jurisdiction; *provided*, *however*, that, notwithstanding the foregoing, the MDT Trustees shall have power and authority to bring any action in any court of competent jurisdiction (including the Bankruptcy Court) to prosecute any MDT Causes of Action or any other Causes of Action held by the Master Disbursement Trust.

Section 10.04. <u>Severability</u>. In the event any provision of this Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Trust Agreement shall be valid and enforceable to the full extent permitted by law.

Section 10.05. <u>Notices</u>. Any notice or other communication required or permitted to be made under this Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by email, sent by nationally recognized overnight delivery service or mailed by first-class mail:

(a)    if to the Master Disbursement Trust, to:

[  ]
Email: [  ]

with a copy to:

[  ]
Email: [  ]

(b)    if to the MDT Trustees, to:

[  ]
Email: [  ]

(c)    if to the MDT Executive Director, then to each of:

[  ]
Email: [  ]

[  ]
Email: [  ]

[  ]
Email: [  ]

(d)      if to the MDT Beneficiaries, then to each of or as applicable:

    (i)      with respect to the Private Creditor Trusts:

PI Trust
Edgar C. Gentle III
c/o Gentle Turner Sexton & Harbison, LLC
Hoover, Alabama 35244
Email: egentle@gtandslaw.com

Hospital Trust
[  ]
Email: [  ]

TPP Trust
[  ]
Email: [  ]

NAS Monitoring Trust
[  ]
Email: [  ]

    (ii)      with respect to the Public Creditor Trusts:

NOAT
[  ]
Email: [  ]

TAFT or Tribe Opioid LLC
[  ]
Email: [  ]

    (iii)      with respect to the United States:

[  ]
Email: [  ]

Section 10.06. <u>Headings</u>. The headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision of this Trust Agreement.

Section 10.07. <u>Entire Trust Agreement</u>. This Trust Agreement (including the recitals and annex hereto), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter of this Trust Agreement.

Section 10.08.<u>Amendment and Waiver</u>. Any provision of this Trust Agreement may be amended or waived only with the consent of (x) a majority of the MDT Trustees, (y) NOAT and (z) until the payment in full of the MDT Claims, a majority in number of the other MDT Beneficiaries (excluding NOAT); provided, however, that the MDT Trustees may amend this Trust Agreement by unanimous consent of the MDT Trustees from time to time, without the consent, approval or other authorization of any other Person, to make minor modifications or clarifying amendments as necessary to enable the MDT Trustees to effectuate the provisions of this Trust Agreement. Notwithstanding the foregoing, no amendment or waiver of any provision of this Trust Agreement shall modify this Trust Agreement in a manner that (a) is inconsistent with the Plan or the Confirmation Order without an order of the Bankruptcy Court (after notice and a hearing) approving such modification, other than to make minor modifications or clarifying amendments by unanimous consent of the MDT Trustees as necessary to enable the MDT Trustees to effectuate the provisions of this Trust Agreement, (b) would adversely impact the distributions to, or confer additional obligations or liabilities upon, any MDT Beneficiary without the consent of such MDT Beneficiary; (c) would alter the duties or liabilities of the Resident Trustee without the consent of the Resident Trustee or (d) would amend or waive this Section 10.08. The MDT Trustees shall provide notice to the MDT Beneficiaries of any proposed amendment or wavier of any provision of this Trust Agreement including, for the avoidance of doubt, any proposed amendment or waiver that does not require the consent of the MDT Beneficiaries hereunder, not less than ten (10) Business Days before such amendment or waiver becomes effective.

Section 10.09.<u>Confidentiality</u>. The MDT Trustees, the Resident Trustee, the MDT Executive Director and the MDT Professionals (each, a "<u>Confidential Party</u>" and, collectively, the "<u>Confidential Parties</u>") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, or of or pertaining to any Debtor to which any of the MDT Transferred Assets relates; *provided*, *however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties or (b) such disclosure is required of the Confidential Parties pursuant to legal process including subpoena or other court order or other applicable laws or regulations. For the avoidance of doubt and notwithstanding anything to the contrary herein, each Confidential Party shall comply with Section 5.11(c) of the Plan.

Section 10.10.<u>Meanings of Other Terms</u>. Except where the context otherwise requires, (a) words importing the masculine, feminine or neuter gender include the masculine, feminine and neuter gender, (b) words importing the singular or plural number shall include the singular and plural number, (c) the words "herein," "hereof," or "hereunder" and other words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Trust Agreement and (d) the words "includes" and "including" are not limiting.

Section 10.11.<u>Counterparts</u>. This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the Effective Date.

**[DEBTORS]**

By: _____
      Name:
      Title:

**[MDT TRUSTEE]**, as MDT Trustee

By: _____
      Name:

**[MDT TRUSTEE]**, as MDT Trustee

By: _____
      Name:

**[MDT TRUSTEE]**, as MDT Trustee

By: _____
      Name:

**[RESIDENT TRUSTEE]**, as Resident Trustee

By: _____
      Name:
      Title:

## Schedule 1

### Schedule of MDT Bermuda-Form Insurance Policies

| Insurer | Policy Period Start | Policy Period End | Policy Number |
|---|---|---|---|
| Steadfast Insurance Company | 10/1/1999 | 10/1/2005 | GL02729885-03 |
| National Union Fire Insurance Company of Pittsburgh, PA | 10/1/2000 | 10/1/2005 | BE 357 40 57 |
| American International Specialty Lines Insurance Company | 10/1/2000 | 10/1/2005 | 267-47-08 |
| Gulf Underwriters Insurance Company | 10/1/1997 | 10/1/2005 | GU6078280 |
| Zurich Reinsurance (London) Limited | 10/1/1998 | 10/1/2005 | 823/KE9801815 |
| Gerling-Konzern General Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801816 |
| Zurich Reinsurance (London) Limited | 10/1/1998 | 10/1/2005 | 823/KE9801817 |
| Winterthur Swiss Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801818 |
| Gerling-Konzern General Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801818 |
| XL Insurance Company, Ltd. | 10/1/1988 | 10/1/2003 | XLUMB-00342 |
| Starr Excess Liability Insurance International Limited | 10/1/1998 | 10/1/2003 | 201012 |
| Winterthur Swiss Insurance Company | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| Ace Insurance S.A. N.V. (Chubb Europe) | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| New Hampshire Insurance Company (per AIG Europe (UK) Ltd.) | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| Underwriter Insurance Company Limited | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| QBE International Insurance Limited | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| SR International Business Insurance Company Ltd. | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| Gerling-Konzern General Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901926 |
| Liberty International Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901928 |
| SR International Business Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901927 |
| Zurich Reinsurance (London) Limited | 10/1/1999 | 10/1/2003 | 823/KE9901925 |
| ACE Bermuda Insurance Ltd. | 7/1/2000 | 10/1/2002 | PRA-1031/5 |
| TIG Specialty Insurance Company | 7/1/2000 | 10/1/2002 | XEX 37690728/ XLX38822826 |
| Kemper Indemnity Insurance Company | 7/1/2000 | 10/1/2002 | 9YR001019-00 |
| Evanston Insurance Company | 7/1/2000 | 10/1/2002 | XO-GA-1138-00 |

## Schedule 2

## Schedule of MDT Insurance Policies

| Insurer | Policy Period Start | Policy Period End | Policy Number |
|---|---|---|---|
| Gulf Underwriters Insurance Company | 10/1/1997 | 10/1/2005 | GU6078280 |
| Zurich Reinsurance (London) Limited | 10/1/1998 | 10/1/2005 | 823/KE9801815 |
| Gerling-Konzern General Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801816 |
| Starr Excess Liability Insurance International Limited | 10/1/1998 | 10/1/2003 | 201012 |
| XL Insurance Company, Ltd. Sedgwick Management Services (Bermuda), Limited | 10/1/1997 | 10/1/2003 | XLUMB-00342 |
| Zurich Reinsurance (London) Limited | 10/1/1998 | 10/1/2005 | 823/KE9801817 |
| Gerling-Konzern General Insurance Company UK Branch | 10/1/1998 | 10/1/2005 | 823/KE9801818 |
| Winterthur Swiss Insurance Company | 10/1/1998 | 10/1/2005 | 823/KE9801818 |
| Zurich Reinsurance (London) Limited | 10/1/1999 | 10/1/2003 | 823/KE9901925 |
| Gerling Konzern Allgemeine Versicherungs – AG | 10/1/1999 | 10/1/2003 | 823/KE9901926 |
| Liberty International Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901928 |
| SR International Business Insurance Company | 10/1/1999 | 10/1/2003 | 823/KE9901927 |
| Chubb Bermuda Insurance Ltd. (f/k/a ACE Bermuda Insurance Ltd. (now Chubb) | 7/1/2000 | 10/1/2002 | PRA-1031/5 |
| Certain Member Companies of the International Underwriting Association of London (subscribing companies include: Winterthur Swiss Insurance Company, ACE Insurance S.A. N.V., New Hampshire Insurance Company (per AIG Europe (UK) Ltd.), the Underwriter Insurance Company Limited, SR International Business Insurance Company Ltd., and QBE International Insurance Limited) | 7/1/2000 | 10/1/2003 | 823/KE0002108 |
| Evanston Insurance Company (Markel) | 7/1/2000 | 10/1/2002 | XO-GA-1138-00 |
| Kemper Indemnity Insurance Company | 7/1/2000 | 10/1/2002 | 9YR001019-00 |
| TIG Specialty Insurance Company | 7/1/2000 | 10/1/2002 | XEX 37690728/ XLX38822826 |
| American International Specialty Lines Insurance Company | 10/1/2000 | 10/1/2005 | 267-47-08 |
| National Union Fire Insurance Company of Pittsburgh, PA | 10/1/2000 | 10/1/2005 | BE 357 40 57 |
| Steadfast Insurance Company | 10/1/2000 | 10/1/2005 | GL02729885-03 |
| Allied World Assurance Company | 10/1/2003 | 10/1/2004 | C001210/002 |
| American Guarantee & Liability Insurance Company | 10/1/2003 | 10/1/2004 | AEC 9376768 00 |
| Arch Reinsurance Ltd. | 10/1/2003 | 10/1/2004 | B4-UFP-03233-01 |

| | | | |
|---|---|---|---|
| Liberty Mutual Fire Insurance Company | 10/1/2003 | 10/1/2004 | TH2-611-004531-063 |
| Liberty Mutual Fire Insurance Company | 7/1/2003 | 10/1/2004 | RG2-611-004531-023 |
| Federal Insurance Company | 11/15/2003 | 12/5/2004 | 8160-3480 |
| St. Paul Mercury Insurance Company | 11/15/2003 | 11/15/2004 | 564CM0215 |
| Allied World Assurance Company | 10/1/2004 | 10/1/2005 | C001210/003 |
| American Guarantee and Liability Insurance Company | 10/1/2004 | 10/1/2005 | AEC 9376768 01 |
| Arch Reinsurance Ltd. | 10/1/2004 | 10/1/2005 | B4-UFP-03233-02 |
| Liberty Mutual Fire Insurance Company | 10/1/2004 | 10/1/2005 | TH2-611-004531-064 |
| Liberty Mutual Insurance Company | 10/1/2004 | 10/1/2005 | EN1-611-0045310024 |
| Allied World Assurance Company | 10/1/2005 | 10/1/2006 | C001210/004 |
| American Guarantee and Liability Insurance Company | 10/1/2005 | 10/1/2006 | AEC 9376768 02 |
| Arch Reinsurance Ltd. | 10/1/2005 | 10/1/2006 | B4-UFP-03233-03 |
| Liberty Mutual Fire Insurance Company | 10/1/2005 | 10/1/2006 | TH2-611-004531-065 |
| Liberty Mutual Insurance Company | 10/1/2005 | 10/1/2006 | EN1-611-004531025 |
| Allied World Assurance Company | 10/1/2006 | 10/1/2007 | C001210/005 |
| American Guarantee and Liability Insurance Company | 10/1/2006 | 10/1/2007 | AEC 9376768 03 |
| Arch Reinsurance Ltd. | 10/1/2006 | 10/1/2007 | UFP001824000 |
| Liberty Mutual Fire Insurance Company | 10/1/2006 | 10/1/2007 | TH2-611-004531-066 |
| Liberty Mutual Insurance Company | 10/1/2006 | 10/1/2007 | EN1-611-0045310026 |
| American Guarantee and Liability Insurance Company | 10/1/2007 | 10/1/2008 | AEC 9376768 04 |
| Liberty Mutual Insurance Company | 10/1/2007 | 10/1/2008 | EN1-611-0045310027 |
| National Union Fire Insurance Company of Pittsburgh, Pa. | 10/1/2007 | 10/1/2008 | 9835266 |
| St. Paul Fire and Marine Insurance Company | 10/1/2007 | 10/1/2008 | QI05700185 |
| American Guarantee and Liability Insurance Company | 10/1/2008 | 10/1/2009 | AEC 9376768 05 |
| Liberty Mutual Fire Insurance Company | 10/1/2008 | 10/1/2009 | TH2-611-004531-148 |
| Liberty Mutual Insurance Company | 10/1/2008 | 10/1/2009 | EN1-611-0045310028 |
| XL Insurance America, Inc. | 10/1/2008 | 10/1/2009 | US00011152LI08A |
| Liberty Mutual Fire Insurance Company | 10/1/2009 | 10/1/2010 | TH2-611-004531-149 |
| Liberty Mutual Insurance Company | 10/1/2009 | 10/1/2010 | EN1-611-004531-029 |
| American Guarantee and Liability Insurance | 10/1/2009 | 10/1/2010 | AEC 9376768 06 |

| Company | | | |
|---|---|---|---|
| XL Insurance America, Inc. | 10/1/2009 | 10/1/2010 | US00011152LI09A |
| American Guarantee and Liability Insurance Company | 10/1/2010 | 10/1/2011 | AEC 9376768 07 |
| Liberty Mutual Fire Insurance Company | 10/1/2010 | 10/1/2011 | TH2-611-004531-14 0 |
| Liberty Mutual Insurance Company | 10/1/2010 | 10/1/2011 | EN1-611-004531-02 0 |
| XL Insurance America, Inc. | 10/1/2010 | 10/1/2011 | US00011152LI10A |
| American Guarantee and Liability Insurance Company | 10/1/2011 | 10/1/2012 | AEC 9376768 08 |
| Liberty Mutual Insurance Company | 10/1/2011 | 10/1/2012 | EN1-611-004531-02 1 |
| Liberty Mutual Insurance Company | 10/1/2011 | 10/1/2012 | TH2-611-004531-14 1 |
| Liberty Insurance Corporation | 10/1/2011 | 10/1/2012 | TH7-611-004531-14 1 |
| XL Insurance America, Inc. | 10/1/2011 | 10/1/2012 | US00011152LI11A |
| American Guarantee and Liability Insurance Company | 10/1/2012 | 10/1/2013 | AEC 9376768 09 |
| Liberty Mutual Insurance Company | 10/1/2012 | 10/1/2013 | EN1-611-004531-02 2 |
| North American Elite Insurance Company | 10/1/2012 | 10/1/2013 | H2U0000619-00 |
| XL Insurance America, Inc. | 10/1/2012 | 10/1/2013 | US00011152LI12A |
| American Guarantee and Liability Insurance Company | 10/1/2013 | 10/1/2014 | AEC 9376768 10 |
| Liberty Mutual Fire Insurance Company | 10/1/2013 | 10/1/2014 | EN2-611-004531-02 3 |
| North American Elite Insurance Company | 10/1/2013 | 10/1/2014 | UMB 000802001 |
| XL Insurance America, Inc. | 10/1/2013 | 10/1/2014 | US00011152LI13A |
| American Guarantee and Liability Insurance Company | 10/1/2014 | 10/1/2015 | AEC 9376768-11 |
| Liberty Mutual Fire Insurance Company | 10/1/2014 | 10/1/2015 | EN2-611-004531-02 4 |
| North American Elite Insurance Company | 10/1/2014 | 10/1/2015 | UMB000802002 |
| XL Insurance America, Inc. | 10/1/2014 | 10/1/2015 | US00011152LI14A |
| American Guarantee and Liability Insurance Company | 10/1/2015 | 10/1/2016 | AEC 9376768-12 |
| Columbia Casualty Company | 10/1/2015 | 10/1/2016 | HAZ 4032268671-0 |
| Liberty Mutual Fire Insurance Company | 10/1/2015 | 10/1/2016 | EN2-611-004531-02 5 |
| North American Elite Insurance Company | 10/1/2015 | 10/1/2016 | UMB000802003 |
| XL Insurance America, Inc. | 10/1/2015 | 10/1/2016 | US00011152LI15A |
| Aspen American Insurance Company | 10/1/2016 | 10/1/2017 | CX004QT16 |
| Columbia Casualty Company | 10/1/2016 | 10/1/2017 | HAZ 4032268671-1 |
| Liberty Mutual Fire Insurance Company | 10/1/2016 | 10/1/2017 | EN2-611-004531-02 6 |
| Navigators Specialty Insurance Company | 10/1/2016 | 10/1/2017 | SM16FXR884487IC |

| | | | |
|---|---|---|---|
| North American Elite Insurance Company | 10/1/2016 | 10/1/2017 | UMB000802004 |
| Swiss Re International SE | 10/1/2016 | 10/1/2017 | MH 145892.1 |
| XL Insurance America, Inc. | 10/1/2016 | 10/1/2017 | US00011152LI16A |
| Allied World Assurance Company (Europe) Ltd. | 12/12/2016 | 1/11/2018 | B0509FINMR 1600558 |
| Arch Insurance Company (Europe) Ltd | 12/12/2016 | 1/11/2018 | B0509FINMR 1600559 |
| Beazley Insurance Company, Inc. | 12/12/2016 | 1/11/2018 | V1A42D160201 |
| National Union Fire Insurance Company of Pittsburgh, PA | 12/12/2016 | 1/11/2018 | 03-329-88-41 |
| QBE Insurance Company | 12/12/2015 | 1/11/2018 | QPL0172784 |
| U.S. Specialty Insurance Company | 12/12/2016 | 1/11/2018 | 12-MGU-16-A39466 |
| U.S. Specialty Insurance Company | 12/12/2016 | 1/11/2018 | 14-MGU-16-A39466 |
| XL Specialty Insurance Company | 12/12/2016 | 1/11/2018 | ELU147833-16 |
| ACE Property and Casualty Insurance Company | 10/1/2017 | 10/1/2019 | G46815634 001 |
| Aspen American Insurance Company | 10/1/2017 | 10/1/2019 | CX004QT17 |
| Columbia Casualty Company | 10/1/2017 | 10/1/2018 | HAZ 4032268671-2 |
| Liberty Mutual Fire Insurance Company | 10/1/2017 | 10/1/2019 | EN2-611-0045310027 |
| Navigators Specialty Insurance Company | 10/1/2017 | 10/1/2018 | NY17LGL786201NC |
| Navigators Specialty Insurance Company | 10/1/2017 | 10/1/2019 | SM16FXR884487IV |
| XL Insurance America, Inc. | 10/1/2017 | 10/1/2019 | US00011152LI17 |
| ACE Property and Casualty Insurance Company | 10/1/2018 | 10/1/2019 | G46815634 002 |
| ACE Property and Casualty Insurance Company | 10/1/2018 | 10/1/2019 | G71187263 001 |
| Liberty Mutual Fire Insurance Company | 10/1/2018 | 10/1/2019 | EN2-611-004531-028 |
| Liberty Mutual Fire Insurance Company | 10/1/2018 | 10/1/2019 | EB2-611-0045310178 |
| Liberty Surplus Insurance Corporation | 10/1/2018 | 10/1/2019 | 1000318031-01 |
| Old Republic Insurance Company | 10/1/2018 | 10/1/2020 | MWZZ 314344 |
| Isosceles Insurance Limited | 10/1/2019 | 10/1/2021 | PPLP-02/2019 |

## Schedule 3

### Schedule of Excluded Insurance Policies

1.      Isosceles Insurance Ltd. policy number PPLP-01/2019

2.      The following Purdue Insurance Policies subject to clause (ii) of the definition of Excluded Insurance Policies:

      a.   automobile liability;

      b.   workers' compensation or employers' liability;

      c.   international products liability;

      d.   international completed operations liability;

      e.   foreign voluntary workers' compensation and employers' liability;

      f.   international general liability;

      g.   international premises liability;

      h.   international automobile liability;

      i.   first party property damage;

      j.   marine cargo;

      k.   clinical trials;

      l.   domestic credit insurance;

      m.  employment practices liability;

      n.   fiduciary liability;

      o.   crime and blanket crime;

      p.   employed lawyers;

      q.   special contingency, special risk, corporate protection and kidnapping and ransom;

      r.   marine and war risk; and

      s.   cyber, security and privacy liability.

## Schedule 4

Schedule of MDT Insurance Collateral

| Insurer | Policy Period Start | Policy Period End | Policy Number |
|---------|---------------------|-------------------|---------------|
| Columbia Casualty Company | 10/1/2015 | 10/1/2016 | HAZ 4032268671-0 |
| Columbia Casualty Company | 10/1/2016 | 10/1/2017 | HAZ 4032268671-1 |
| Columbia Casualty Company | 10/1/2017 | 10/1/2018 | HAZ 4032268671-2 |
| Isosceles Ins. Ltd | 211/2019 | 2/11/2022 | PPLP-01/2019 |
| Isosceles Ins. Ltd | 10/1/2019 | 10/1/2021 | PPLP-02/2019 |
| Old Republic Ins. Co. | 10/1/2018 | 10/1/2020 | MWZZ 314344 |

**<u>Exhibit A</u>**

**Master TDP**

[Filed Separately]

## Exhibit B

### Investment Guidelines

Only the following investments will be permitted, provided that maturities on the following securities do not exceed twelve (12) months, all investments are U.S. dollar denominated and all requirements are satisfied at the time of purchase:

1.      marketable securities issued by the U.S. Government and supported by the full faith and credit of the U.S. Treasury; and

2.      a U.S. government money market fund required to invest exclusively in cash and U.S. government securities that are supported by the full faith and credit of the U.S. Treasury.

The borrowing of funds or securities for the purpose of purchasing and the lending of any investments is prohibited.

Notwithstanding the foregoing, it is acknowledged and agreed that the MDT Trustees may liquidate investments and deposit and maintain funds in or with banks, trust companies, savings and loan associations, money market organizations and other depositories or issuers of depository-type accounts at such times as the MDT Trustees determine to be necessary or appropriate to have cash available to satisfy distribution and other cash requirements of the Master Disbursement Trust.

| Summary report: | |
|---|---|
| **Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 7/16/2021 5:44:35 PM** | |
| **Style name:** Comments+Color Legislative Moves+Images | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://DMSWEB/AmericasActive/94381154/28 | |
| **Modified DMS:** iw://DMSWEB/AmericasActive/94381154/29 | |
| **Changes:** | |
| Add | 6 |
| Delete | 9 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 15 |