# EXHIBIT A

# American Guarantee & Liability Insurance Company Excess Liability Policy, AGLIC00000047 - AGLIC00000064

# Following Form Excess Liability Policy
## Declarations



**American Guarantee & Liability Insurance Company**

**Policy Number: AEC 9376768 03**                                **Renewal of Number: AEC 9376768 02**

1. Named Insured:        **PURDUE PHARMA L.P.**              Producer:        **MARSH USA, INC.**

2. Mailing Address:      **ONE STAMFORD FORUM**                                **601 MERRITT 7**
                         **STAMFORD, CT 06901**                                **NORWALK, CT 06851-1091**

3. Policy Period:        FROM:  **10/01/2006**   TO:  **10/01/2007**
   at 12:01 A.M. Standard Time at the address of the Named Insured.

4. Limits of Insurance:  A.  **$25,000,000** Occurrence

                         B.  **$25,000,000** Other Aggregate

                         C.  **$25,000,000** Products/Completed Operations Aggregate

5. Policy Premium:
   Advance Premium                          **$114,130**
   Policy Minimum Earned Premium            **$28,532**

6. Underlying Insurance:

   A. Controlling Underlying Policy:

      Insurance Company:     **LIBERTY MUTUAL FIRE INSURANCE CO**
      Policy Number:         **TH2-611-004531-066**
      Policy Period:         From: **10/01/2006**   To: **10/01/2007**
      Limit of Insurance:

                             $**25,000,000** Occurrence

                             $**25,000,000** Other Aggregate

                             $**25,000,000** Products/Completed Operations Aggregate

   B. Total Limits Of All Underlying Insurance, Including The Controlling Underlying Policy Which This Policy Applies Excess Of:

                             $**25,000,000** Occurrence

                             $**25,000,000** Other Aggregate

                             $**25,000,000** Products/Completed Operations Aggregate

7. Endorsements Attached:     See Attached Schedule of Forms and Endorsements

Signed by:_____        _____
          Authorized Representative                       Date

U-EXS-D-100-A CW  (4/99)
Page 1 of 1

CONFIDENTIAL
AGLIC00000047

# Schedule of Forms and Endorsements


ZURICH

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer |
|---|---|---|---|---|
| AEC 9376768 03 | 10/01/2006 | 10/01/2007 | 10/01/2006 | 62828000 |

**Named Insured and Mailing Address:**

**PURDUE PHARMA L.P.**
**ONE STAMFORD FORUM**
**STAMFORD, CT 06901**

**Producer:**

**MARSH USA, INC.**
**601 MERRITT 7**
**NORWALK, CT 06851-1091**

**Schedule of Forms and Endorsements**

| Form Name | Form Number | Edition Date |
|---|---|---|
| Following Form Excess Liability Policy Declarations | UEXSD100ACW | 4/1999 |
| Schedule of Forms and Endorsements | UEXS215ACW | 4/1999 |
| Products/Completed Operations Hazard Exclusion | UEXS160ACW | 4/1999 |
| Violation of Communication or Information Law Exclusion | UEXS296ACW | 6/2004 |
| Cancellation - Amendment of Notice | UEXS112ACW | 4/1999 |
| War or Military Action | UEXS150ACW | 4/1999 |
| Certified Act of Terrorism Retained Amount Provisions | UEXS150ACW | 4/1999 |
| Connecticut Changes Cancellation/Nonrenewal | UEXS208ACT | 4/1999 |
| Disclosure of Premium (Relating to Terrorism Risk Insurance Act) | UGU630B | 1/2006 |
| Following Form Excess Liability Policy Jacket | UEXS218ACW | 4/1999 |
| Following Form Excess Liability Policy | UEXS100ACW | 4/1999 |
| In Witness Clause | UEXS217ACW | 4/1999 |

Signed by: _____    _____
                    Authorized Representative                                          Date

CONFIDENTIAL

AGLIC00000048

**Endorsement # 1**

# Products/Completed Operations Hazard Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9376768 03 | 10/01/2006 | 10/01/2007 | 10/01/2006 | 62828000 | --- | --- |

**Named Insured and Mailing Address:**

**PURDUE PHARMA L.P.**
**ONE STAMFORD FORUM**
**STAMFORD, CT 06901**

**Producer:**

**MARSH USA, INC.**
**601 MERRITT 7**
**NORWALK, CT 06851-1091**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This policy does not apply to bodily injury or property damage included within the products/completed operations hazard and which arises out of any of your products.

Signed by:_____    _____
      Authorized Representative                                                    Date

Includes copyrighted material of Insurance Services Office, Inc. with its permission
Copyright, Insurance Services Office, Inc. 1985

U-EXS-160-A CW  (4/99)
Page 1 of 1

CONFIDENTIAL

AGLIC00000049

**Endorsement # 2**

# Violation of Communication or Information Law Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9376768 03 | 10/01/2006 | 10/01/2007 | 10/01/2006 | 62828000 | --- | --- |

**Named Insured and Mailing Address:**

**PURDUE PHARMA L.P.**
**ONE STAMFORD FORUM**
**STAMFORD, CT 06901**

**Producer:**

**MARSH USA, INC.**
**601 MERRITT 7**
**NORWALK, CT 06851-1091**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This policy does not apply to any liability, damage, loss, cost or expense resulting from or arising out of any actual or alleged violation of:

1. The federal Telephone Consumer Protection Act (47 U.S.C. § 227), Drivers Privacy Protection Act (18 U.S.C. § 2721 - 2725) or Controlling the Assault of Non-Solicited Pornography and Marketing Act  (15 U.S.C. § 7701, et seq.); or

2. Any other federal, state or local statute, regulation or ordinance that imposes liability for the:

    a. Unlawful use of telephone, electronic mail, internet, computer, facsimile machine or other communication or transmission device; or

    b. Unlawful use, collection, dissemination, disclosure or re-disclosure of personal information in any manner

   by any insured or on behalf of any insured.

Signed by: _____    _____
              Authorized Representative                                          Date

Includes copyrighted material of Insurance Services Office, Inc. with its permission    U-EXS-296-A CW  (06/04)
Page 1 of 1

CONFIDENTIAL    AGLIC00000050

**Endorsement # 3**

# Cancellation - Amendment Of Notice



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9376768 03 | 10/01/2006 | 10/01/2007 | 10/01/2006 | 62828000 | --- | --- |

**Named Insured and Mailing Address:**

**PURDUE PHARMA L.P.**
**ONE STAMFORD FORUM**
**STAMFORD, CT 06901**

**Producer:**

**MARSH USA, INC.**
**601 MERRITT 7**
**NORWALK, CT 06851-1091**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is agreed that the number of days of advance written notice of cancellation, for reasons other than non-payment of premium, stated in paragraph **2.** of **CONDITION C. Cancellation** or any applicable amendatory endorsement governing the cancellation of this policy, is amended to 90 days. If we cancel for reason of nonpayment of premium, the number of days notice stated in paragraph **2.** of **CONDITION C. Cancellation** or any applicable amendatory endorsement governing the cancellation of this policy remains unchanged.

Signed by:_____     _____
          Authorized Representative                              Date

**Endorsement # 4**

# War or Military Action



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9376768 03 | 10/01/2006 | 10/01/2007 | 10/01/2006 | 62828000 | --- | --- |

**Named Insured and Mailing Address:**

**PURDUE PHARMA L.P.
ONE STAMFORD FORUM
STAMFORD, CT 06901**

**Producer:**

**MARSH USA, INC.
601 MERRITT 7
NORWALK, CT 06851-1091**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This policy does not apply to any liability, damage, loss, cost or expense arising, directly or indirectly, out of:

    **A.**  War, including undeclared or civil war; or

    **B.**  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **C.**  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these regardless of any other cause or event that contributes concurrently or in any sequence to injury or damage.

Signed by:_____          _____
              Authorized Representative                                                                  Date

U-EXS-150-A CW  (4/99)
Page 1 of 1

CONFIDENTIAL                                                                                                                                                      AGLIC00000052

**Endorsement # 5**

# Certified Act of Terrorism Retained Amount Provisions



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9376768 03 | 10/01/2006 | 10/01/2007 | 10/01/2006 | 62828000 | --- | --- |

**Named Insured and Mailing Address:**  
**PURDUE PHARMA L.P.**  
**ONE STAMFORD FORUM**  
**STAMFORD, CT 06901**

**Producer:**  
**MARSH USA, INC.**  
**601 MERRITT 7**  
**NORWALK, CT 06851-1091**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**CERTIFIED ACT OF TERRORISM RETAINED AMOUNT SCHEDULE.**

| | |
|---|---|
| Each Occurrence Retained Amount: | $25,000,000 |
| Products-Completed Operations Aggregate Retained Amount: | $25,000,000 |
| Other Aggregate Retained Amount: | $25,000,000 |

The following additional provisions apply to this policy as respects any liability, damage, loss, cost or expense arising, directly or indirectly, out of a "certified act of terrorism", including any action taken in hindering or defending against an actual or expected "certified act of terrorism", regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage:

A. We will pay on behalf of the insured the sums in excess of the Total Limits of Underlying Insurance shown in Item **6. B**. of the Declarations or in excess of the "retained amount" shown in the **Certified Act of Terrorism Retained Amount Schedule** of this endorsement, whichever is greater, that the insured legally becomes obligated to pay as damages.

B. Except as otherwise provided by this policy and by this endorsement, coverage as respects an "certified act of terrorism" follows the terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

C. The amount we will pay for damages is limited as described in **SECTION II. LIMITS OF INSURANCE** except that Paragraph **B. 6.** is amended to read as follows:

Subject to Paragraphs **B. 2., B. 3., and B.4.** and **B. 5.** above, if the underlying Limits of Insurance stated in Item **6.** of the Declarations or the applicable "retained amount" in the **Certified Act of Terrorism Retained Amount Schedule** of this endorsement are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or  "retained amount"  or, if all Underlying Limits or "retained amounts"  are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy or this endorsement.

U-EXS-150-A CW  (4/99)  
Page 1 of 2

CONFIDENTIAL

D.  If the coverage of this policy applies in excess of the "retained amount", per paragraph A. above, rather than the Total Underlying Limits of Insurance shown in Item 6.B of the Declarations, the specific "retained amounts" applying to any "certified acts of terrorism" are as follows:

1. The Each Occurrence Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to each occurrence.

2. The Products-Completed Operations Aggregate Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to all occurrences included within the products-completed operations hazard.

3. The Other Aggregate Retained Amount shown in the Schedule above is the total "retained amount" of damages for which the insured is responsible, applicable to all occurrences except for occurrences included within the products-completed operations hazard.

E. The following provision is added to **SECTION V., CONDITIONS, F., Notice of Occurrence**:

You must notify us immediately in writing of any claim or suit which seeks damages in an amount which is fifty (50) percent or more of the amount of the Each Occurrence Retained Amount stated in the **Certified Act of Terrorism Retained Amount Schedule** of this endorsement.

F. As used in this endorsement, "certified act of terrorism" means an act that is certified by the Secretary of Treasury of the United States, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. Section 102 of the Terrorism Risk Insurance Act of 2002 sets forth the criteria and process that the Secretary of the Treasury shall use to determine whether to certify an act of terrorism.

As used in this endorsement, "retained amount" means the amount of damages for which the insured is responsible as shown in the **Certified Act of Terrorism Retained Amount Schedule** of this endorsement.

**All other terms, conditions or limitations of the policy remain unchanged**.

Signed by:_____         _____
           Authorized Representative                                        Date

U-EXS-150-A CW  (4/99)
Page 2 of 2

CONFIDENTIAL                                                                                                                                    AGLIC00000054

**Endorsement # 6**

# Connecticut Changes Cancellation/Nonrenewal



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9376768 03 | 10/01/2006 | 10/01/2007 | 10/01/2006 | 62828000 | --- | --- |

**Named Insured and Mailing Address:**

**PURDUE PHARMA L.P.**
**ONE STAMFORD FORUM**
**STAMFORD, CT 06901**

**Producer:**

**MARSH USA, INC.**
**601 MERRITT 7**
**NORWALK, CT 06851-1091**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

A. **SECTION V. CONDITIONS, CONDITION C. Cancellation** is deleted and replaced in its entirety by the following

   **Cancellation**

   1. You may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   2. Cancellation of policies in effect for less than 60 days.

      If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

      a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
      b. 30 days before the effective date of cancellation if we cancel for any other reason.
   3. Cancellation of policies in effect for 60 days or more.

      a. If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

         (1) 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:
            (a) Nonpayment of premium;
            (b) Conviction of a crime arising out of acts increasing the hazard insured against;
            (c) Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;
            (d) Discovery of willful or reckless act or omissions by you increasing the hazard insured against; or
            (e) A determination by the Commissioner that the continuation of the policy would place us in violation of the law; or
         (2) 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:
            (a) Physical changes in the property which increase the hazard insured against;
            (b) A material increase in the hazard insured against; or
            (c) A substantial loss of reinsurance by us affecting this particular line of insurance.
      b. We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph **3.a.(1)** above.
      c. If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

    **d.**  Notice of Cancellation will be delivered or sent by:

        **(1)** Registered mail;

        **(2)** Certified mail; or

        **(3)** Mail evidenced by a United States Post Office certificate of mailing.

**4.** We will give notice to you at your last mailing address known to us.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is canceled, we will send to you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following is added and supersedes any other provision to the contrary.

**Nonrenewal**

**1.** If we decide not to renew this policy, we will mail or deliver to you a written notice of nonrenewal stating the reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

**2.** This notice will be delivered or sent by:

    **a**.  Registered mail;

    **b.**  Certified mail; or

    **c.**  Mail evidenced by a certificate of mailing.

If notice is mailed, proof of mailing is sufficient proof of notice.

**3.** However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

Signed by:_____      _____
          Authorized Representative                                 Date



Insured Name:   PURDUE PHARMA L.P.
Policy Number:  AEC 9376768 03
Effective Date: 10/01/2006

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY.
THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND
CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM
## (RELATING TO TERRORISM RISK INSURANCE ACT)

**SCHEDULE***

| |
|---|
| Premium attributable to risk of loss from certified acts of terrorism for lines subject to TRIA: |
| $1,130 |

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**
In accordance with the federal Terrorism Risk Insurance Act of 2002 ("TRIA"), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of your premium attributable is shown in the Schedule of this endorsement or in the Declarations.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**
The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention (85% for acts of terrorism in 2007).

**C. Limitation of Liability and Termination of the Program**
The Act currently provides for no insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year. The federal program established by the Act is scheduled to terminate at the end of December 31, 2007 unless extended by the federal government.

**D. Availability**
As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

**E. Definition of Act of Terrorism**
TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
  1. to be an act of terrorism;
  2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
  3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
  4. to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

But, no act shall be certified by the Secretary as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright Zurich American Insurance Company 2004

U-GU-630-B  (01/06)
Page 1 of 1

CONFIDENTIAL

AGLIC00000057



# Following Form Excess Liability Policy

Zurich U.S.
Insurance is provided by the company designated on the declarations page of this policy.

The addresses of the Zurich U.S. companies are shown below:

ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS COMPANY
1400 American Lane
Schaumburg, Illinois 60196-1056

AMERICAN ZURICH INSURANCE

1400 American Lane
Schaumburg, Illinois 60196-1056

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY
One Liberty Plaza, 165 Broadway
New York, New York 10006

Administrative Offices of all Zurich U.S. companies are
located at 1400 American Lane, Schaumburg, Illinois 60196-1056

U-EXS-218-A CW  (4/99)
Page 1 of 1

CONFIDENTIAL
AGLIC00000058

# Following Form Excess Liability Policy



There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such in the Controlling Underlying Policy, but only to the extent and within the scope for which such "insureds" qualify for coverage in the Controlling Underlying Policy.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations and in accordance with the provisions of this policy we agree with you to provide coverage as follows:

**Insuring Agreements**

### SECTION I. COVERAGE

**A.** We will pay on behalf of the insured the sums in excess of the total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations that the insured becomes legally obligated to pay as damages.

**B.** This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item **6.A.** of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

**C.** The amount we will pay for damages is limited as described in **SECTION II. LIMITS OF INSURANCE.**

### SECTION II. LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

1. Insured's;
2. Claims made or suits brought; or
3. Persons or organizations making claims or bringing suits.

**B.** The Limits of Insurance of this policy will apply as follows:

1. This policy applies only in excess of the Underlying Limits of Insurance shown in Item **6.B.** of the Declarations.
2. If our Limits of Insurance stated in Item **4.** of the Declarations are less than the total Limits of Insurance stated in Item **4.**, the limits of our liability shall be that proportion of all damages which our Limits of Insurance bear to the total Limits of Insurance in Item **4.** and which is in excess of the total underlying insurance limits as stated in Item **6.B.** of the Declarations.
3. Subject to Paragraph **B. 2.** above, the Occurrence Limit stated in Item **4.A.** of the Declarations is the most we will pay for all damages arising out of any one occurrence to which this policy applies.
4. Subject to Paragraphs **B.2.** and **B.3.** above, the limit stated in Item **4.C.** of the Declarations for the Products/Completed Operations Aggregate is the most we will pay for all damages during our policy period under the products/ completed operations hazard.

5. Subject to Paragraphs **B.2.** and **B.3.** above, the Other Aggregate Limit stated in Item **4.B.** of the Declarations is the most we will pay for all damages, except for damages covered under the products/completed operations hazard, that are subject to an aggregate limit provided by the Controlling Underlying Policy. The Other Aggregate Limit applies separately and in the same manner as the aggregate limits provided by the Controlling Underlying Policy.

6. Subject to Paragraphs **B.2., B.3., B.4.** and **B.5.** above, if the underlying Limits of Insurance stated in Item **6.** of the Declarations are reduced or exhausted solely by payment of damages to which this policy applies, such insurance provided by this policy will apply in excess of the reduced Underlying Limits or, if all Underlying Limits are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions and exclusions of this policy.

7. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

**SECTION III. DEFENSE**

**A.** We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

**B.** We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

**C.** If all Underlying Limits of Insurance stated in Item **6.** of the Declarations are exhausted solely by payment of damages, we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item **4.** of the Declarations are exhausted by payment of damages.

If we exercise our rights under Paragraphs **B.** or **C.** above, we will do so at our own expense, and any such expense payments will not reduce the Limits of Insurance provided by this policy.

**SECTION IV. EXCLUSIONS**

This policy does not apply to any liability, damage, loss, cost or expense:

**ASBESTOS**

**A.** Arising out of;

1. The mining, processing, manufacturing, use, testing, ownership, sale or removal of asbestos, asbestos fibers or materials containing asbestos;

2. Exposure to asbestos, asbestos fibers, or material containing asbestos; or

3. Any error or omission in supervision, instructions, recommendations, notices, warnings or advice given, or which should have been given, in connection with asbestos fibers or material containing asbestos.

**POLLUTION**

**B. 1.** Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**a.** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**b.** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**2.** Arising out of any:

**a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

As used in this exclusion:

1. A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

2. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**NUCLEAR**

**C.** 1. With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

   2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    **a.** A person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    **b.** Any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

   3. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material", if:

    **a.** The "nuclear material":

      **(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of, any insured; or

      **(ii)** Has been discharged or dispersed therefrom;

    **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any insured; or

    **c.** The injury or "nuclear property damage" arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph **c.** applies only to "nuclear property damage" to such "nuclear facility'" and any property thereat.

As used in this exclusion:

1. "Hazardous properties" include radioactive, toxic or explosive properties.

2. "Nuclear Facility" means:

    **a.** Any "nuclear reactor";

    **b.** Any equipment or device designed or used for:

      **(i)** Separating the isotopes of uranium or plutonium,

      **(ii)** Processing or utilizing "spent fuel", or

      **(iii)** Handling, processing or packaging "waste";

    **c.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    **d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

3. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

CONFIDENTIAL

4. **"Nuclear property damage"** includes all forms of radioactive contamination of property;

5. **"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

6. **"Source material"**, **"special nuclear material"** and **"by-product material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

7. **"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

8. **"Waste"** means any waste material;

    a. Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    b. Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

## SECTION V.  CONDITIONS

**A. Appeals**

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and additional interest accruing during this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in **SECTION II.** of this policy.

**B. Bankruptcy or Insolvency**

The bankruptcy, insolvency or inability to pay of any insured will not relieve us from our obligation to pay damages covered by this policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of any underlying insurer, the insurance afforded by this policy will not replace such underlying insurance, but will apply as if all the limits of any underlying insurance is fully available and collectible.

**C. Cancellation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we will mail or deliver to you not less than ten (10) days advance written notice when the cancellation is to take effect. If we cancel for any other reason, we will mail or deliver to you not less than sixty (60) days advance written notice stating when the cancellation is to take effect. Mailing notice to you at your mailing address shown in Item **2.** of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The Named Insured in Item **1.** of the Declarations will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

**D. Maintenance of Underlying Insurance**

During the period of this policy, you agree:

1. To keep the policies making up the Total Limits of Underlying Insurance in Item **6.B.** of the Declarations in full force and effect;

CONFIDENTIAL                                                                                                                                                         AGLIC00000062

2. That the Limits of Insurance of the Underlying Insurance policies will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for damages covered by Underlying Insurance;

3. The Underlying Insurance policies may not be canceled or not renewed by you without notifying us, and you agree to notify us in the event an insurance company cancels or declines to renew any Underlying Insurance policy;

4. Renewals or replacements of the Controlling Underlying Policy will not be materially changed without our agreement.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

**E. Notice of Occurrence**

1. You must see to it that we are notified as soon as practicable of an occurrence which may result in damages covered by this policy. To the extent possible, notice will include:

    a. How, when and where the occurrence took place;

    b. The names and addresses of any injured persons and witnesses;

    c. The nature and location of any injury or damage arising out of the occurrence.

2. If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved insured must:

    a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

    b. Authorize us to obtain records and other information;

    c. Cooperate with us in the investigation, settlement or defense of the claim or suit; and

    d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

4. The insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F. Other Insurance**

If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

**G. Terms Conformed to Statute**

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes. If we are prevented by law or statute from paying on behalf of the insured, then we will, where permitted by law or statute, indemnify the insured.

**H. When Damages are Payable**

Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item **6.B.** of the Declarations.

When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy.

CONFIDENTIAL                                                                                                                                      AGLIC00000063

# In Witness Clause



In return for the payment of premium, and subject to all the terms of the policy, we agree with you to provide insurance as stated in this policy.  This policy shall not be valid unless countersigned by the duly authorized Representative of the Company.

**In Witness Whereof,** this Company has executed and attested these presents, and where required by law, has caused this policy to be countersigned by its duly authorized Representative.

**President**                                                                **Corporate Secretary**

**American Guarantee and Liability Insurance Company**
**American Zurich Insurance Company**
**Zurich American Insurance Company of Illinois**
   **Administrative Offices**
   **Zurich Towers**
   **1400 American Lane**
   **Schaumburg, Illinois   60196-1056**

| QUESTIONS ABOUT YOUR INSURANCE?  Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready): |
|---|
| Zurich U.S.<br>Customer Inquiry Center<br>1400 American Lane<br>Schaumburg, Illinois  60196-1056<br>**1-800-382-2150** (Business Hours:  8am - 4pm [CT]) |

U-EXS-217-A CW (4/99)
Page 1 of 1