# EXHIBIT B



State of West Virginia
Office of the Attorney General

Patrick Morrisey                                                    (304) 558-2021
Attorney General                                               Fax (304) 558-0140

June 21, 2019

*Via regular mail and email*

Attorney General Josh Stein
North Carolina Department of Justice
1114 W. Edenton Street
Raleigh, NC  27603
By email @ jstein@ncdoj.gov

Attorney General Herbert. H. Slatery, III
2845 Baker Highway
Huntsville, TN  37756
By email @ Herbert.slatery@ag.tn.gov

RE:    The Denver Interstate Opioid Settlement Allocation Plan

Dear Generals Stein and Slatery:

Thank you for convening an opioid settlement allocation meeting in Denver on June 4, 2019.  I appreciated receiving your June 6th letter summarizing the meeting.

Your letter states "after a full day of discussions, that consensus was achieved with the Denver State Allocation Plan." My office has learned from representatives of several States who attended the meeting that there was no such consensus. In fact, several States who attended the meeting did not agree with the final allocation model but were not able to vote against it, either because their Attorney General could not attend the meeting or their Attorney General had to leave the meeting before its conclusion.

With that being said, I have objections to the Denver Allocation Plan ("the Plan").  First, and foremost, this Plan fails to factor in all relevant time periods and other key information.  For example, MME data for all states is available from 2006-2017.  However, the Plan only considers data to 2014.  The Plan's Use Disorder metric is based solely upon pain reliever use disorder (PRUD) data for the years 2015-2017, instead of using the more comprehensive Opioid Use

Josh Stein
Attorney General, State of North Carolina
Herbert. H. Slatery, III
Attorney General, State of Tennessee
June 21, 2019
Page 2
-------------------------------

Disorder (OUD) data.  OUD information is available for the years 2006-2016, and includes not only prescription opioids, but also illicit heroin and fentanyl.  West Virginia, as well as many other States, know the increase in the use of illicit opioids is a direct result of the prescription opioid epidemic.  Thus, any metric that ignores this fact would be flawed.

The most heavily weighted metric in the Denver Plan is population.  Unfortunately, population does not accurately illustrate the severity of any particular State's opioid problem.  For example, West Virginia received 0.90% of the nation's opioid shipments based on MME (Denver Metric #1), 0.69% of the pain reliever use disorders (Denver Metric #2), 1.85% of the opioid overdose deaths, and 1.29% of the drug overdose deaths.  And yet, West Virginia represents only 0.55% of the United States' population.  No metric based upon population is appropriate and would not be remedied by any "high impact fund."

While I have respect for those with different perspectives, I will oppose and will urge others to oppose any allocation model that does not factor in a metric on opioid overdose deaths or fails to reflect the severity of the opioid problem in a state.  West Virginia has struggled with the fallout from this crisis for twenty years.  The Denver Allocation Plan does not accurately capture the costs of abatement and does not have my support.

Sincerely yours,

Patrick Morrisey
Attorney General