**Hearing Date: August 9, 2021**
**Hearing Time: 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

**PURDUE PHARMA L.P., et al.,**                    Bankr. No. 19-23649 (RDD)

　　　　　　　Debtors.

## STATEMENT OF THE UNITED STATES
## REGARDING THE SHAREHOLDER RELEASE

AUDREY STRAUSS
United States Attorney
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2800
Lawrence.Fogelman@usdoj.gov
Peter.Aronoff@usdoj.gov
Danielle.Levine@usdoj.gov

LAWRENCE H. FOGELMAN
PETER ARONOFF
DANIELLE LEVINE
Assistant United States Attorneys
—Of Counsel—

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

    I.   The Proposed Involuntary Third-Party Release Violates Due Process ............................. 3

      A.   Lack of Sufficient Notice ........................................................................................ 4

      B.   Lack of Sufficient Opportunity to Be Heard ......................................................... 7

    II.   Involuntary Third-Party Releases Are Not Permitted Under the Bankruptcy Code .......... 9

    III.  The Bankruptcy Court Lacks Authority to Approve the Shareholder Release ................. 11

CONCLUSION ....................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V.* (*In re Vitro S.A.B. de CV*),
   701 F.3d 1031 (5th Cir. 2012) ................................................................. 2
*Airadigm Commc'ns , Inc. v. FCC* (*In re Airadigm Commc'ns, Inc.*),
   519 F.3d 640 (7th Cir. 2008) ................................................................. 2
*Barrett v. United States*,
   689 F.2d 324 (2d Cir. 1982)................................................................. 7
*Bauxites de Guinee*,
   456 U.S. 694 (1982)................................................................. 8, 15
*Boddie v. Connecticut*,
   401 U.S. 371 (1971)................................................................. 7
*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995)................................................................. 12
*Class Five Nevada Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*),
   280 F.3d 648 (6th Cir. 2002) ................................................................. 2
*Dunaway v. Purdue Pharms. L.P.* (*In re Purdue Pharms. L.P.*),
   619 B.R. 38 (S.D.N.Y. 2020)................................................................. 15, 16
*Dunmore v. United States*,
   358 F.3d 1107 (9th Cir. 2004) ................................................................. 15
*Elliott v. General Motors LLC* (*In re Motors Liquidation Co.*),
   829 F.3d 135 (2d Cir. 2016)................................................................. 12
*FCC v. NextWave Pers. Commc'n, Inc.*,
   537 U.S. 293 (2003)................................................................. 9
*Feld v. Zale Corp.* (*In re Zale Corp.*),
   62 F.3d 746 (5th Cir. 1995) ................................................................. 13
*First State Ins. Co. v. Combustion Eng'g Inc.* (*In re Combustion Eng'g Inc.*),
   391 F.3d 190 (3d Cir. 2005)................................................................. 14
*Halper v. Halper*,
   164 F.3d 830 (3d Cir. 1999)................................................................. 13, 15
*In re Aegean Marine Petroleum Network, Inc.*,
   599 B.R. 717 (Bankr. S.D.N.Y. 2019)................................................. 7, 8, 10, 14
*In re Digital Impact, Inc.*,
   223 B.R. 1 (Bankr. N.D. Okla. 1998) ................................................................. 4, 5
*In re Dreier LLP*,
   429 B.R. 112 (Bankr. S.D.N.Y. 2010)................................................................. 14
*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)................................................................. 2
*In re Johns-Manville Corp.*,
   517 F.3d 52 (2d Cir. 2008)................................................................. 12, 14

*In re Kirwan Offs. S.a.r.l.*,
    592 B.R. 489 (S.D.N.Y. 2018) ........................................................................... 13
*In re Lower Bucks Hosp.*,
    488 B.R. 303 (E.D. Pa. 2013) ........................................................................... 14
*In re Metcalfe & Mansfield Alternative Investments*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) ............................................................... 14
*In re Metromedia Fiber Network, Inc.*,
    416 F.3d 136 (2d Cir. 2005) ...................................................................... passim
*In re Millennium Lab Holdings II, LLC*,
    945 F.3d 126 (3d Cir. 2019) ................................................................. 2, 13, 14
*In re Pac. Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) .............................................................................. 2
*In re Veneman*,
    309 F.3d 789 (D.C. Cir. 2002) ........................................................................... 7
*Karpova v. Snow*,
    497 F.3d 262 (2d Cir. 2007) ............................................................................... 3
*Landsing Diversified Properties–II v. First Nat'l Bank & Trust Co. (In re W. Real Estate Fund, Inc.)*,
    922 F.2d 592 (10th Cir. 1990) ........................................................................... 2
*Lindsay v. Gov't Employees Ins. Co.*,
    448 F.3d 416 (D.C. Cir. 2006) ........................................................................... 7
*Menard-Sanford v. Mabey (In re A.H. Robins Co.)*,
    880 F.2d 694 (4th Cir. 1989) ............................................................................. 2
*Merriweather v. Sherwood*,
    235 F. Supp. 2d 339 (S.D.N.Y. 2002) ........................................................... 3, 5, 6
*Pac. Dunlop Holdings (USA) Inc. v. Exide Techs. (In re Exide Techs.)*,
    544 F.3d 196 (3d Cir. 2008) ............................................................................. 15
*Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*,
    67 F.3d 1394 (9th Cir. 1995) ............................................................................. 2
*Robinson v. Metro-N. Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ............................................................................... 7
*Russello v. United States*,
    464 U.S. 16 (1983) ............................................................................................. 9
*Southeast Prop. Holdings, LLC v. Seaside Eng'g & Surveying, Inc. (In re Seaside Eng'g & Surveying, Inc.)*,
    780 F.3d 1070 (11th Cir. 2015) .......................................................................... 2
*Stern v. Marshall*,
    564 U.S. 462 (2011) ......................................................................................... 12
*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) ........................................................................................... 8
*Trulis v. Barton*,
    107 F.3d 685 (9th Cir. 1995) ......................................................................... 3, 8
*Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015) ......................................................................................... 12
*Williams v. United States*,
    947 F.2d 37 (2d Cir. 1991) .............................................................................. 15

Statutes

11 U.S.C. § 105........................................................................................................................... 9
11 U.S.C. § 105(a) ................................................................................................................... 10
11 U.S.C. § 523(a)(2)............................................................................................................... 10
11 U.S.C. § 524(g)............................................................................................................... 9, 13
11 U.S.C. § 524(g)(3)(A)......................................................................................................... 16
28 U.S.C. § 157(b)(1) ......................................................................................................... 11, 12
28 U.S.C. § 157(c)(1)............................................................................................................... 12

## PRELIMINARY STATEMENT

The United States of America (the "United States" or the "Government") respectfully submits this statement addressing the Shareholder Release of the Shareholder Released Parties contained in the Sixth Amended Joint Chapter 11 Plan of Reorganization (the "Plan"), ECF No. 3185,[1] filed by Purdue Pharma L.P and related entities (collectively, "Debtors" or "Purdue").[2] While the Shareholder Release does not apply to the United States,[3] we submit this statement to advise the Court of the Government's concerns with the Plan's proposed involuntary third-party release of the Shareholder Released Parties.

The United States supports the goal of abating the opioid crisis, as reflected in the resolutions it negotiated with Purdue. To further that goal, the Government has agreed to credit $1.775 billion of its $2 billion asset-forfeiture resolution against funds that will be used by Purdue's non-federal public creditors to combat the opioid crisis. It also supports the proposed conversion of Purdue into a public benefit company or entity with a similar mission, whose

---

[1] The capitalized and defined terms in this statement have the same meaning as used in the Plan.

[2] These related entities include Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).

[3] *See* Plan § 10.20 ("Notwithstanding anything to the contrary herein, nothing in the Plan, the Confirmation Order, the Shareholder Settlement Agreement or any other document filed in connection with the Plan shall release claims held by the United States of America against the Shareholder Released Parties"). The Government provided a separate release to certain members of the Sackler family (Dr. Richard Sackler, David Sackler, Mortimer D.A. Sackler, Kathe Sackler, and the Estate of Jonathan Sackler), in a Settlement Agreement executed on October 21, 2020. *See* ECF No. 1833 (Exhibit A).

profits will be used to fund opioid abatement and engage in a public-health initiative to develop and provide medications to treat opioid use disorder and combat opioid overdoses. The Plan dedicates a substantial amount of the estate's assets to abate the opioid crisis, and provides for the creation of a comprehensive document repository regarding Purdue.

Nonetheless, the United States has fundamental concerns with the proposed Shareholder Release. First, the proposed involuntary third-party release violates due process because it deprives individuals and entities of their property rights without sufficient notice or a sufficient opportunity to be heard. Second, there is no authorization in the Bankruptcy Code for third-party releases outside of the asbestos context, and the Second Circuit's ruling in *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142-43 (2d Cir. 2005), that permitted a third-party release notwithstanding a lack of statutory authorization, was wrongly decided.[4] Nor can debtors make the required showing under *Metromedia* given the breadth and scope of the Shareholder Release. Third, if involuntary third-party releases are permissible, they must be approved by the district court *de novo*, as bankruptcy courts lack the adjudicatory and constitutional authority to enter final orders approving such releases.

---

[4] There is a circuit split on whether involuntary third-party releases are permitted under the Bankruptcy Code. Several circuits have held that third-party releases are not allowed. *See Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de CV)*, 701 F.3d 1031, 1061 (5th Cir. 2012); *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009); *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995); *Landsing Diversified Properties–II v. First Nat'l Bank & Trust Co. (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 601 (10th Cir. 1990). Other circuits, including the Second Circuit, have allowed third-party releases in certain circumstances. *See In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 140 (3d Cir. 2019); *In re Metromedia*, 416 F.3d at 142; *Southeast Prop. Holdings, LLC v. Seaside Eng'g & Surveying, Inc. (In re Seaside Eng'g & Surveying, Inc.)*, 780 F.3d 1070, 1077-79 (11th Cir. 2015); *Airadigm Commc'ns , Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 519 F.3d 640, 655-58 (7th Cir. 2008); *Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656-58 (6th Cir. 2002); *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992); *Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 700-02 (4th Cir. 1989).

## I.    The Proposed Involuntary Third-Party Release Violates Due Process

The proposed Shareholder Release violates due process principles. It would bar a limitless number of Releasing Parties from pursuing a limitless set of civil liabilities against a limitless set of Shareholder Released Parties. And all of this without any determination by this Court as to whether it has personal jurisdiction over the releasing and released parties or subject matter jurisdiction over the released liabilities—and without adequate notice and an opportunity for the Releasing Parties to know which of their claims are being released or to have an opportunity to litigate these liabilities if they choose not to release them. Nor does the Plan evaluate the merits of the released liabilities, or explain what, if anything, each Releasing Party will receive for the loss of its right to pursue the released claims. The releases thus effect a deprivation of property—the Releasing Parties' potential claims against the Shareholder Released Parties—without due process, and exceed this Court's authority because they effectively adjudicate a vast set of claims without a determination that this Court has subject matter or personal jurisdiction over them. Neither *Metromedia* nor any other precedent authorizes such a third-party release.

The constitutional right to due process requires that, before being forced to forfeit a property interest, parties must be provided with "reasonable notice and an opportunity to be heard." *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007). That opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Id*. (internal quotation marks omitted). The proposed release denies both reasonable notice and a sufficient opportunity to be heard.

As a threshold matter, claims that would be released are property, and thus merit due process protection. *See, e.g.*, *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (holding that plan confirmation order containing releases of claims against third parties constituted final judgment on those claims); *Merriweather v. Sherwood*, 235 F. Supp. 2d 339, 343 (S.D.N.Y.

3

2002) ("A legal cause of action constitutes a species of property protected by the Fourteenth

Amendment's Due Process Clause." (internal quotation marks omitted)). And a third-party

release is an injunction against pursuing the claim, which deprives the claimholder of its property

interest. *See In re Digital Impact, Inc.*, 223 B.R. 1, 13 (Bankr. N.D. Okla. 1998) ("A permanent

injunction prohibiting certain legal action against a non-debtor is a *final adjudication* of such

anticipated legal action in favor of the non-debtor, and all jurisdictional and due process

prerequisites for such a final adjudication must be satisfied." (emphasis in original)).

### A.  Lack of Sufficient Notice

The Plan would release claims without sufficient notice. First, the proposed set of

"Releasing Parties" is as broad as possible: it includes all "Persons"—meaning any "individual

(including, without limitation, in his or her capacity as a trustee, protector or executor),

corporation, partnership, joint venture, association, joint stock company, limited liability

company, limited liability partnership, trust or trustee, protector, executor, estate, unincorporated

organization, Governmental Unit, Tribe or other Entity." Plan § 1.1. The set of Releasing Parties

is specifically *not* limited to only creditors of the bankruptcy estate who are receiving some

measure of compensation under the Plan.

Second, the scope of the released liabilities is equally broad. It covers:

> [A]ny and all Claims, claims, counterclaims, disputes, obligations, suits,
> judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies,
> losses, contributions, indemnities, rights of subrogation, costs, liabilities,
> attorneys' fees and expenses, in each case, of any kind, character or nature
> whatsoever . . . whether sounding in tort or contract or based on any other legal or
> equitable theory or principle (including fraud, negligence, gross negligence,
> recklessness, reckless disregard, deliberate ignorance, public or private nuisance,
> breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego
> theories of liability, unjust enrichment, disgorgement, restitution, contribution,
> indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in
> rem*, *in personam* or otherwise, or whether arising under federal or state statutory
> or common law, or any other applicable international, foreign or domestic law,
> rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of

where in the world accrued or arising, from the beginning of time . . . arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party . . . , (iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

*Id.* § 10.7(b). There has been no determination as to which specific claims are actually proposed to be released.

Third, the list of entities that are proposed to receive the Shareholder Release includes a 24-page-long list of names and entities—with no discussion of how or why these entities are entitled to a release, and what, if anything, they have or will contribute to the bankruptcy estate. *See* Dkt. 2983, App. H at 475-99. The list includes 361 line-items for "Certain A-Side Release Parties," and 683 line-items for "Certain B-Side Release Parties." *Id.* But the list is even broader than that, because some entries reference other large categories of people or entities. *See, e.g.*, *id.* at 476 ("The assets, businesses and entities owned by the above"); *id.* at 479, 480, 484 (same);

*id.* at 476 ("Any entities or individuals to which any assets of the above are transferred"); *id.* at 479, 480, 484 (same).

This lengthy list of released parties is not confined to those identified individuals and entities. In addition to the more than 1,000 separate released parties listed in Appendix H to the Disclosure Statement, the definition of Shareholder Released Parties includes each of their:

> (A) predecessors, successors, permitted assigns, subsidiaries, controlled affiliates, spouses, heirs, executors, estates and nominees, in each case solely in their respective capacities as such, [and] (B) current and former officers and directors, principals, members, employees, financial advisors, attorneys (including, without limitation, attorneys retained by any director, in his or her capacity as such), accountants, investment bankers (including, without limitation, investment bankers retained by any director, in his or her capacity as such), consultants, experts and other professionals, solely in their respective capacities as such.

Plan § 1.1. This broad definition is entirely inconsistent with due process—and presumably encompasses a slew of financial advisors, attorneys, accountants, investment bankers, consultants, and other professionals who have been well compensated for their services to the estate or the Sackler family.

To be sure, many individual creditors in the Purdue bankruptcy have agreed to give this release in exchange for the payments and other benefits they will receive under the Plan, and presumably find this to be a fair deal. But many others, including states who have voted against or objected to the Plan, have not agreed. More importantly, there has been no demonstration— nor could there be—that each "Person" in the world has received any notice of each claim that could fall within this vast definition of released claims and parties. Even those actually aware of the Plan would have difficulty determining the scope of the proposed released parties, let alone whether they might have claims against them. This broad release does not provide constitutionally adequate notice.

## B. Lack of Sufficient Opportunity to Be Heard

The proposed Shareholder Release also violates due process because it denies releasing

parties an opportunity to be heard on their released claims. They cannot litigate their claims

(including with ordinary civil discovery) to a liability judgment on the merits, and they will have

no other opportunity to present the merits of their claims. *See, e.g.*, *Boddie v. Connecticut*, 401

U.S. 371, 378 (1971) (the due process clause does not require a hearing on the merits in every

civil case, but it does mandate "an opportunity granted at a meaningful time and in a meaningful

manner . . . for a hearing appropriate to the nature of the case") (internal quotation marks and

alterations omitted). They will have no opportunity to ascertain their damages stemming from the

released claims. *See, e.g.*, *Barrett v. United States*, 689 F.2d 324, 332 (2d Cir. 1982) (the

"[s]tatutory or common law entitlement to be fully compensated through a lawsuit for one's

injuries" is a "species of property" protected by the due process clause). The Plan makes it

impossible for the releasing parties or a court to determine whether they will receive appropriate

compensation. *In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717, 723-27 (Bankr.

S.D.N.Y. 2019). Nor can releasing parties opt out of a forced settlement via the third-party

release, which courts have held is required by due process in the related mass litigation context

of Rule 23 class actions. *See Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 420 (D.C. Cir.

2006) ("Because members of a class seeking substantial monetary damages may have divergent

interests, due process requires that putative class members receive notice and an opportunity to

opt out." (citing *In re Veneman,* 309 F.3d 789, 792 (D.C. Cir. 2002)); *Robinson v. Metro-N.

Commuter R.R. Co.*, 267 F.3d 147, 166 (2d Cir. 2001).

Indeed, the Shareholder Release would be imposed on nonconsenting releasing parties

without ensuring that the Court has personal jurisdiction over each of the parties to the release

and subject matter jurisdiction over each of the disputes or claims at issue. *See In re Aegean*, 599

B.R. at 723-24; *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694,

702 (1982) (subject matter jurisdiction is a requirement of Article III, and personal jurisdiction a

requirement of the due process clause). A "release" of a particular claim has the same *res*

*judicata* effect as a judgment on the merits of that claim. *See Travelers Indem. Co. v. Bailey*, 557

U.S. 137, 151-54 (2009); *Trulis*, 107 F.3d at 691 (holding that plan confirmation order

containing releases of claims against third parties constituted final judgment on those claims).

Thus, a court that lacks jurisdiction to actually adjudicate a claim also lacks the authority to enter

a final judgment releasing it. A court that proceeds past this limit acts outside its authority.[5]

Finally, the Second Circuit's *Metromedia* decision did not address a due process

challenge and did not consider a release of the breadth proposed here. *Metromedia*, 416 F.3d at

141 ("Appellants' sole argument—and the only argument that we consider—is that these

nondebtor releases were unauthorized by the Bankruptcy Code . . . ."). Whatever *Metromedia*

might allow, it cannot be read to authorize third-party releases that provide constitutionally

inadequate notice and no meaningful opportunity to be heard.

---

[5] A bankruptcy court in this district recently noted that "when third-party releases are proposed there is rarely any 'proceeding' pending at all. Instead, the court is asked to exercise power over a potential *claim* for which no actual proceeding exists . . . ." *In re Aegean*, 599 B.R. at 723. (citations omitted). Even if the court had personal and subject matter jurisdiction, that alone does not give the court "the power to impose an involuntary release"; rather, "a claim that belongs to a third party may only be resolved through litigation on the merits, or on terms to which the third party agrees." *Id.* at 725. "[W]e should not lose sight of the fact that when we impose involuntary releases we do not provide claimants with other procedural and substantive rights that they ordinarily would have," particularly "the commencement of adversary proceedings, with formal service of process," followed by discovery and a hearing on the merits. *Id.* And "[i]nvoluntary releases also result in a taking of property without a formal hearing to ensure that the affected party has received proper compensation, . . . based only on the contributions that a proposed releasee has purportedly made to the reorganization process generally, rather than the benefits to be provided directly to the persons whose claims are being released. But even in those instances in which powers of eminent domain authorize an involuntary taking of property, due process requires that the claimant receive compensation that is based on the actual value of the property being taken from them. . . ." *Id.* at 725-26.

## II.      Involuntary Third-Party Releases Are Not Permitted Under the Bankruptcy Code

Despite the holding of *Metromedia* to the contrary, it is the Government's position that involuntary third-party releases are not authorized by the Bankruptcy Code, and thus the Shareholder Release here is unlawful. Nor have the parties seeking approval of the Shareholder Release satisfied their burden of demonstrating its alleged appropriateness under the standard announced in *Metromedia*. The proposed release here is so broad, for all the reasons set forth above, *see supra* Point I, that it would fail the *Metromedia* standard in any event.

Only one section of the Bankruptcy Code expressly contemplates a release of third parties—and it deals exclusively with the release of asbestos-related claims. *See* 11 U.S.C. § 524(g). There is no other statutory authorization for third-party releases. Congress's omission of third-party releases other than for asbestos claims demonstrates that they are not otherwise authorized by the Bankruptcy Code. *See FCC v. NextWave Pers. Commc'n, Inc.*, 537 U.S. 293, 302 (2003) (observing that "where Congress has intended to provide regulatory exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly"); *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation and internal quotation marks omitted) (alteration in original)).

The Second Circuit approved involuntary third-party releases as exercises of bankruptcy courts' equitable powers, *see* 11 U.S.C. § 105, coupled with the perceived necessity or importance of the release—rather than on any substantive statutory provision of the Bankruptcy Code. *See Metromedia*, 416 F.3d at 141 ("We have previously held that '[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays *an important part* in the debtor's reorganization plan.'") (citation omitted; emphasis added). This extra-

9

statutory reasoning, however, is flawed. Section 105 allows bankruptcy courts only to "carry

out" substantive powers that are authorized by other statutory provisions; it does not create any

additional substantive authority for bankruptcy courts to take actions not otherwise permitted

under the Code. The *Metromedia* court acknowledged this:

> True, 11 U.S.C. § 105(a) authorizes the bankruptcy court to "issue any order,
> process, or judgment that is necessary or appropriate to carry out the provisions of
> [the Code]"; *but section 105(a) does not allow the bankruptcy court to create
> substantive rights that are otherwise unavailable under applicable law.* Any
> power that a judge enjoys under § 105 *must derive ultimately from some other
> provision of the Bankruptcy Code.*

*Id.* at 142 (citations and internal quotation marks omitted; emphasis added). Despite that

admonition, the *Metromedia* court permitted an involuntary third-party release in certain very

limited circumstances. *Id.* This was mistaken. Because the Bankruptcy Code authorizes third-

party releases only in the context of asbestos claims, a bankruptcy court's grant of an involuntary

third-party release impermissibly creates a substantive right for the released party that is not

otherwise available under applicable law.

The error of the extra-statutory third-party release is demonstrated by the anomalous

result that a *non*-debtor may receive a broader release than the debtor itself. For example, the

Plan proposes that the Shareholder Released Parties will be released from all claims of "fraud"

against them, *see* Plan § 10.7(b)—but claims of fraud against actual debtors are not

dischargeable, *see* 11 U.S.C. § 523(a)(2). This circumvents Congress's express determinations of

the liabilities that may be discharged in bankruptcy, and shows the abusive nature of the third-

party release. *Cf. In re Aegean*, 599 B.R. at 726 ("[P]roposed third party releases often present

the anomalous situation in which the beneficiary of a third-party release asks for broader

protection than he or she could have obtained in his or her own bankruptcy case. For example,

debtors often seek to free officers and directors from potential securities law claims; in fact, that

10

is one of the types of potential claims for which the Debtors seek involuntary releases in this

case. Under Section 523(a)(19) of the Bankruptcy Code, however, liabilities for violations of the

securities laws are not dischargeable so long as the violations result in a judgment or settlement

either before or after the bankruptcy case is filed. We therefore have the odd situation where we

are being asked to use an unwritten authority to release non-debtor officers and directors from

claims when the Bankruptcy Code would bar us from giving similar relief to those persons if

they were debtors in their own cases.").

Finally, given the nature and vast breadth of the release, *see supra* Point I, the Debtors

cannot meet their burden under *Metromedia* to show that the release of *each* released claim is

justified based on certain factors, such as whether "the estate received substantial consideration,"

whether "the enjoined claims were channeled to a settlement fund rather than extinguished,"

whether "the enjoined claims would indirectly impact the debtor's reorganization by way of

indemnity or contribution," and whether "the plan otherwise provided for the full payment of the

enjoined claims." 416 F.3d at 142 (internal quotation marks omitted). It is apparent, for example,

that the great majority of released parties will contribute nothing to the estate, and that the

releasing parties will receive substantially less than full payment on their released claims.

## III. The Bankruptcy Court Lacks Authority to Approve the Shareholder Release

Even if the proposed involuntary third-party release did not violate due process and met

the *Metromedia* test, only a district court—and not a bankruptcy court—would have the authority

to approve it.

Two separate constraints—statutory and constitutional—prevent bankruptcy courts from

entering final orders granting involuntary third-party releases, if such releases are permissible at

all. First, bankruptcy courts may enter final orders only in "core proceedings," which "aris[e]

under" the Bankruptcy Code or in a bankruptcy case, and include "confirmations of plans." 28

U.S.C. § 157(b)(1), (b)(2)(L). Although bankruptcy courts may also hear "non-core" proceedings—matters that are merely "related to" a bankruptcy case—they may enter final judgment on such claims only "with the consent of all parties to the proceeding," or otherwise by submitting proposed findings to the district court, which can enter final judgment only after reviewing *de novo* any parties' objections. *Id.* § 157(c)(1), (2); *see Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 152 (2d Cir. 2016).

Second, and separately, the Supreme Court has held that given their status as Article I courts, bankruptcy courts may enter final judgment only on claims that "stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process"; otherwise, they must submit proposed findings to the district court, *Stern v. Marshall*, 564 U.S. 462, 499 (2011)—unless the parties consent, implicitly or explicitly, to the jurisdiction of the bankruptcy court, *see Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674-86 (2015).

Claims between non-debtors that arise under non-bankruptcy substantive law are at most "related to" the bankruptcy, 28 U.S.C. § 157(c)(1), and would not "necessarily be resolved in the claims allowance process," *Stern*, 564 U.S. at 499. Thus, absent all parties' consent, bankruptcy courts do not have the statutory or constitutional authority to enter final judgment on such claims. Indeed, the Supreme Court has cited as paradigmatic examples of "related to" bankruptcy jurisdiction "suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995). Likewise, the Second Circuit has considered whether claims in a third-party release in a Chapter 11 plan were "related to" the bankruptcy— and concluded that some were not. *See In re Johns-Manville Corp.*, 517 F.3d 52, 60-65 (2d Cir. 2008).

As discussed above, the "release" of a claim has the same *res judicata* effect as a

judgment on the merits of that claim. Nonetheless, some courts have concluded—incorrectly, in

the Government's view—that bankruptcy courts have "core" jurisdiction to approve plans of

reorganization that contain involuntary third-party releases, simply because a plan is itself a

creature of bankruptcy law. *See, e.g.*, *In re Kirwan Offs. S.a.r.l.*, 592 B.R. 489, 504 (S.D.N.Y.

2018) ("A bankruptcy court acts pursuant to its core jurisdiction when it considers the

involuntary release of claims against a third-party, non-debtor in connection with the

confirmation of a proposed plan of reorganization, which is a statutorily-defined core

proceeding"), *aff'd on other grounds*, 792 F. App'x 99 (2d Cir. 2019); *In re Millennium Lab

Holdings II, LLC*, 945 F.3d at 140 (finding that "under the particular facts of this case, the

Bankruptcy Court's conclusion that the release provisions were integral to the restructuring was

well-reasoned and well-supported by the record"). It would be illogical for Congress to designate

particular claims as statutorily outside a bankruptcy courts' jurisdiction, if those limitations could

be circumvented simply by joining such claims with "core" claims in the same document or

proceeding. *See Halper v. Halper*, 164 F.3d 830, 838 (3d Cir. 1999).

The fallacy of the position that a bankruptcy court has jurisdiction to release claims

against third parties is shown when a third-party release is proposed to a bankruptcy court as part

of a standalone settlement rather than as part of a bankruptcy plan. In one such case, the Fifth

Circuit examined whether the claims proposed to be released even fell within the bankruptcy

court's "related to" jurisdiction; it concluded that some of them did not, and thus could not be

released. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 751-59 (5th Cir. 1995). The

Third Circuit has also rejected a bankruptcy court's attempt to release asbestos-related claims—

in a plan—beyond what is authorized by 11 U.S.C. § 524(g), as outside its "related to"

jurisdiction. *See First State Ins. Co. v. Combustion Eng'g Inc. (In re Combustion Eng'g Inc.)*, 391 F.3d 190, 227-30 (3d Cir. 2005).[6]

A bankruptcy court's "jurisdiction to enjoin third-party nondebtor claims" is limited to those claims "that directly affect the *res* of the bankruptcy estate." *Johns-Manville*, 517 F.3d at 66; *see also In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 695 (Bankr. S.D.N.Y. 2010) (noting "jurisdictional limits [*Johns-*]*Manville* imposes on a bankruptcy court"). Where a party's claim is not "against an asset of the bankruptcy estate," and the claim does not "affect the estate," a bankruptcy court lacks jurisdiction to enjoin it. *Johns-Manville*, 517 F.3d at 65; *see In re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) (no jurisdiction to enjoin matter that does "not affect property of the estate or the administration of the estate"). In this analysis, "the question is not whether the court has jurisdiction over the settlement [containing the nondebtor releases] but whether it has jurisdiction over the attempts to enjoin the creditors' unasserted claims against the third party." *In re Dreier LLP*, 429 B.R. at 131; *see also In re Aegean*, 599 B.R. at 723 ("[T]he third-party claims that are the subject of the proposed releases in this case are not claims against the estate or against property of the estate. A bankruptcy court has no *in rem* jurisdiction over such third-party claims.").

---

[6] More recently, the Third Circuit ruled, with minimal analysis, that a bankruptcy court "indisputably had 'core' statutory authority to confirm [a] plan" containing third-party releases. *In re Millennium Lab Holdings II, LLC*, 945 F.3d at 137. In reaching this conclusion, the court of appeals failed to address (or even acknowledge) its earlier holding in *In re Combustion Eng'g Inc.*, 391 F.3d at 227-30, that the mere inclusion of third-party releases in a Chapter 11 plan does not give a bankruptcy court "core" statutory authority to approve such releases. *See also In re Lower Bucks Hosp.*, 488 B.R. 303, 312 nn.28 & 30, 313 (E.D. Pa. 2013) (although "[t]he third party release issue arose as part of the plan confirmation process, which is considered a 'core proceeding' . . . . the [released] action does not 'arise under' or 'arise in' bankruptcy" and "the Bankruptcy Court had subject matter jurisdiction only if the [released] claims . . . are 'related to' [debtor's] bankruptcy[]"), *aff'd,* 571 F. App'x 139 (3d Cir. 2014).

Moreover, parties cannot create subject matter jurisdiction by agreement. *Williams v. United States*, 947 F.2d 37, 40 (2d Cir. 1991) ("[S]ubject matter jurisdiction may not be created by estoppel or consent of the parties." (citing *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702)). Much less can some parties create subject matter jurisdiction over the claims of other, non-consenting (or non-participating) parties. Thus, courts should analyze individual legal claims separately to determine whether there is a basis for jurisdiction over each one. *See Halper*, 164 F.3d at 838-39 (where a case "presented the Bankruptcy Court with a mixture of core and non-core claims," adopting "a claim by claim analysis to determine the extent of [the court's] jurisdiction"); *accord Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004). A bankruptcy court is not vested with jurisdiction over a non-core claim simply by virtue of its inclusion in a document that also includes core claims. *See Pac. Dunlop Holdings (USA) Inc. v. Exide Techs. (In re Exide Techs.)*, 544 F.3d 196, 220 (3d Cir. 2008) ("Each state court claim removed to bankruptcy court must be considered individually; non-core claims do not become core simply by virtue of being pursued in the same litigation as core claims.").

The district court—on an appeal from this Court's order preliminarily enjoining a lawsuit brought against Purdue by five district attorneys in Tennessee and an infant born addicted to opioids—held that claims against the Sacklers and a preliminary injunction against such claims only fell within this Court's "related to" jurisdiction, and required *de novo* review by the district court. *Dunaway v. Purdue Pharms. L.P.* (*In re Purdue Pharms. L.P.*), 619 B.R. 38, 56 (S.D.N.Y. 2020). The district court rejected "the Debtors' argument that 'arising in' jurisdiction can expand at the bankruptcy's court's equitable discretion, depending upon the court's perception of how close the parties are to agreeing on a confirmable plan of reorganization." *Id.* at 56. Such a construction of Section 105, it held, "is as unnecessary as it is contrary to law, since the

Bankruptcy Court had the authority to enjoin the [action against the Sacklers] under the 'related to' prong of its jurisdiction," but cannot "adjudicate the *Dunaway* claims against Dr. Sackler without first being permitted to do so by this court, reviewing an order of the Bankruptcy Judge *de novo.*" *Id.* at 56-57.

The same analysis applies to the proposed release in the Plan, which would permanently—rather than only preliminarily—enjoin such third-party claims. The authority to enjoin these claims by entering a final order approving the proposed involuntary release is at most only "related to" the bankruptcy proceeding, and thus the only court that could do so—if any—is the district court. Indeed, in the sole category of cases where Congress authorized third-party releases (*i.e.*, asbestos related cases), the effectiveness of such releases is contingent upon approval by a district court. 11 U.S.C. § 524(g)(3)(A) (providing that any order confirming a plan that includes third-party releases must be "issued or affirmed by the district court that has jurisdiction over the reorganization."). In setting forth this requirement, Congress was presumably mindful of the jurisdictional and constitutional limitations on a bankruptcy court's ability to grant such relief on a final basis.

**CONCLUSION**

We thank the Court for its consideration of this statement regarding the Shareholder

Release.

Dated:  New York, New York
        July 19, 2021

                                    Respectfully submitted,

                                    AUDREY STRAUSS
                                    United States Attorney
                                    Southern District of New York

By:    */s/ Lawrence H. Fogelman*
                                    LAWRENCE H. FOGELMAN
                                    PETER ARONOFF
                                    DANIELLE LEVINE
                                    Assistant United States Attorneys
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Telephone: (212) 637-2800
                                    Lawrence.Fogelman@usdoj.gov
                                    Peter.Aronoff@usdoj.gov
                                    Danielle.Levine@usdoj.gov