SIMPSON THACHER & BARTLETT LLP
Bryce L. Friedman
William T. Russell, Jr.
David R. Zylberberg
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
bfriedman@stblaw.com
wrussell@stblaw.com
david.zylberberg@stblaw.com

*Attorneys for Gulf Underwriters Insurance Company
and St. Paul Fire and Marine Insurance Company*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |
| | Ref: ECF No. 3185 |

**JOINDER AND OBJECTION OF GULF UNDERWRITERS INSURANCE COMPANY
AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY TO THE
SIXTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

Parties in interest Gulf Underwriters Insurance Company ("Gulf") and St. Paul Fire and Marine Insurance Company ("St. Paul") hereby submit the following (i) joinder in support of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Certain Insurers' Limited Objection to Plan Confirmation and Reservation of Rights (the "Objection") [ECF No. 3263], and (ii) objection to confirmation of the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors (as amended, modified, or supplemented, the "Plan") [ECF No. 3185] in these jointly-administered bankruptcy cases (the "Case").  Gulf and St. Paul object to the Plan because:

- it contains impermissible non-consensual third party releases that would deprive Gulf and St. Paul of contractual and common law indemnity and other rights against non-Debtor affiliates of the Debtors; and

- it does not explicitly protect Gulf's and St. Paul's state-created contract rights, and contemplates that the Plan, Confirmation Order, or other Orders of the Court can modify prepetition insurance contracts and/or settlement agreements (currently subject to ongoing litigation), or Gulf and St. Paul's rights and defenses thereunder.

**I.    Factual Background**

    A.    <u>Gulf Policy and Settlement Agreement and Release</u>

Gulf issued an insurance policy (the "Gulf Policy") that provided coverage to certain Debtors and non-Debtor affiliates (the "Purdue Parties").  The Purdue Parties were the subject of numerous claims arising from the development, manufacture, distribution, or other acts or omissions related to the Purdue Parties' products.  The Purdue Parties then sought insurance coverage from Gulf and ultimately sued Gulf to obtain coverage.  On May 4, 2006, Gulf and the Purdue Parties entered into a Settlement Agreement and Release (the "Settlement Agreement") resolving the suit, among other things.  "Purdue Parties," as that term is used in the Settlement Agreement, refers collectively to Purdue Pharma L.P., Purdue Pharma Inc., and Purdue Pharmaceuticals L.P. (the "Debtor Purdue Parties"), as well as The Purdue Frederick Company Inc., The P.F. Laboratories, Inc., and PRA Holdings, Inc. (the "Non-Debtor Purdue Parties").

The Settlement Agreement required Gulf to make scheduled settlement payments to Purdue Pharma L.P., and all of these payment obligations were fulfilled by Gulf in accordance with the

2

Settlement Agreement more than a decade ago.  In exchange, each Purdue Party undertook three primary obligations: (1) it released Gulf (and related entities) with respect to obligations under the Gulf Policy related to certain Purdue Parties' products (including certain opiate and opiate-related products); (2) it agreed to indemnify Gulf and its affiliated entities with respect to any released claims related to the Gulf Policy; and (3) it agreed to defend Gulf with respect to any released claims asserted under the Gulf Policy.

      B.      <u>Proof of Claims in Purdue's Bankruptcy Case for Indemnity Under the Settlement Agreement and Contribution under Common Law</u>

Gulf currently is the subject of litigation claims for which each of the Purdue Parties—both Debtors and non-Debtors—owe it indemnity.  Gulf anticipates incurring millions of dollars of expenses that should be indemnified by the Purdue Parties pursuant to the Settlement Agreement.  Accordingly, to preserve its rights against the Debtor Purdue Parties, The Travelers Indemnity Company filed a proof of claim on behalf of Gulf and St. Paul against the Debtor Purdue Parties on July 30, 2020, seeking indemnity pursuant to the Settlement Agreement on behalf of Gulf and common-law contribution obligations for the benefit of Gulf and St. Paul (the "Debtor Indemnity Claims").  The proof of claim is claim number 116704 on the online claims register maintained by Prime Clerk, LLC.  Gulf intends to continue to assert its indemnity rights against the Non-Debtor Purdue Parties as Gulf incurs expenses litigating the claims that have been asserted against it.

After the Court approved the Debtors' solicitation procedures, Travelers received a ballot classifying Gulf's and St. Paul's Debtor Indemnity Claims in Class 11(c) (Other General Unsecured Claims).  Under Section 4.13 of the Plan, the Debtors dispute all Other General Unsecured Claims, including the Debtor Indemnity Claims.  Other General Unsecured Claims that are ultimately allowed are to receive their "pro rata" share of a $15,000,000 reserve.  The Plan defines "pro rata" as the ratio of the allowed claim to the *aggregate* of allowed and disputed Other

General Unsecured Claims. *Id.* This pro rata construct, which permanently dilutes recoveries for legitimate claims by including them in a claims pool with claims that may ultimately be disallowed, improperly reduces the allowed amount of Gulf's and St Paul's Debtor Indemnity Claims without any basis for doing so.

The Debtors optimistically predict that their disallowance process will eliminate enough Other General Unsecured Claims to enable the $15,000,000 reserve to sufficiently pay "in full" (at the improperly-reduced allowed amount) all 773 claims in the class. Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 2983] at 29. But if the Debtors' prediction is incorrect, the Plan contains no mechanism to top-up the reserve to fully compensate parties for their allowed claims. In short, Gulf's and St. Paul's claims against the Debtors are impaired, potentially substantially.

    C.    <u>Non-Consensual Third Party Releases</u>

While Gulf and St. Paul would be paid only a portion of their Debtor Indemnity Claims under the Plan, Gulf is being forced to release its claims against the Non-Debtor Purdue Parties, even though Gulf previously paid the Purdue Parties substantial settlement payments in exchange for, among other things, indemnity recourse to those Non-Debtor Purdue Parties. Specifically, Section 10.6(b) of the Plan provides that all Holders of Claims against and Interests in the Debtors release their claims against all Released Parties. Holders of Claims against and Interests in the Debtors are unable to opt out of the releases, and the releases are binding on such holders regardless of whether they vote in favor of the Plan or opt in.

"Released Parties," as that term is used in the Plan, includes each of the Debtors' Related Parties, and "Related Parties," as that term is used in the Plan, includes, *inter alia*, "affiliates." The Plan contains more than thirty pages of defined terms. "Affiliate," however, is not defined. The term "Shareholder Released Parties" includes a "controlled affiliate," which implies that the term

4

"affiliate" includes even those which are not Debtor-controlled. Counsel for Gulf and St. Paul has written to counsel for the Debtors to confirm whether the Non-Debtor Purdue Parties are receiving releases, but the Debtors have not responded.

D.  Insurance Neutrality

The Plan purports to contain an insurance neutrality provision at Section 5.10. All prior versions of the Plan contained the following insurance neutrality provision:

> Nothing in the Plan, the Plan Documents or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way relate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing or modifying (a) the rights or obligations of any of the Insurance Companies or (b) any rights or obligations of the Debtors arising out of or under any Purdue Insurance Policy.

*See, e.g.*, Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 2982] § 5.10.

As described more fully in the Objection, the Debtors completely rewrote the insurance neutrality provision in the Sixth Amended Plan with new language that is the polar opposite of insurance neutral. The blackline filed by the Debtors with the Plan highlights the substantial revision of the insurance neutrality provision.

> **5.10  *Insurance Neutrality*.**
>
> Nothing in the Plan, the Plan Documents or the Confirmation Order, ~~including any provision that purports to be preemptory or supervening, shall in any way relate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing or modifying (a)~~ shall alter, supplement, change, decrease or modify the terms (including conditions, limitations and/or exclusions) of the Purdue Insurance Policies, including the MDT Insurance Policies; *provided* that, notwithstanding anything in the foregoing to the contrary, the enforceability and applicability of the terms (including conditions, limitations and/or exclusions) of the Purdue Insurance Policies, including the MDT Insurance Policies, and thus the rights or obligations of any of the Insurance Companies ~~or (b) any rights or obligations of~~, the Debtors and the applicable post-Effective Date Entities, including the Master Disbursement Trust, arising out of or under any Purdue Insurance Policy~~.~~, including any MDT Insurance Policy, whether before or after the Effective Date, are subject to the Bankruptcy Code and applicable law (including any actions or obligations of the Debtors thereunder), the terms of the Plan and the Plan Documents, the Confirmation Order (including the findings contained therein or issued in conjunction therewith, including but not limited to any findings pursuant to Sections 5.2 and 5.6(i) of the Plan) and any other ruling made or order entered by the Bankruptcy Court.

Notice of Filing of Blackline of Sixth Amended Plan [ECF No. 3186] at 103.

As described more fully in the Objection, the insurance neutrality provision is now potentially rendered meaningless by the remainder of the paragraph, which provides that the insurers' rights, including the terms, conditions, limitations, and/or exclusions in their policies, "are subject to" the Bankruptcy Code, any undefined "applicable law," any actions by the Debtors, the terms of the Plan, Plan Documents, and Confirmation Order, any findings contained in the Confirmation Order, and any other ruling or Order that might be made by this Court.

Instead of preserving the insurers' rights, this language affirmatively seeks to prejudice the insurers, and is a complete revision of all prior versions of the Plan that was filed after the deadlines for fact and expert discovery had passed, and just two business days before the deadline to object to the Plan.[2] Gulf and St. Paul are not aware of any other case in which a confirmed plan included this or similar language.

## II. The Plan's Non-Consensual Third Party Releases are Impermissible under Second Circuit Case Law in *Metromedia*

The Plan in its current form should not be confirmed because it appears to contain impermissible non-consensual third party releases of the Non-Debtor Purdue Parties who owe indemnity and contribution obligations to Gulf and St. Paul.

Non-consensual third party releases in the Second Circuit are governed by *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136 (2d Cir. 2005) ("*Metromedia*"). Under *Metromedia*, non-consensual "third party releases are proper only in rare and unique circumstances" because they lend themselves to abuse by non-debtor

---

[2] Gulf and St. Paul nevertheless timely filed this joinder and objection. In light of the eleventh-hour changes that the Debtors made in the insurance neutrality provision in the Plan, however, Gulf and St. Paul reserve all rights to file a supplemental brief in support of their joinder and objection to confirmation. They also reserve all rights to object to the proposed form of Confirmation Order, which has not yet been filed or otherwise provided to Gulf and St. Paul.

affiliates receiving the benefit of a discharge without the burden of a bankruptcy. *In re SunEdison, Inc.*, 576 B.R. 453, 461–62 (Bankr. S.D.N.Y 2017).

Situations in which non-consensual third party releases may be justified include where the estate has received a substantial contribution from the released party, the released claims are channeled to a settlement fund rather than extinguished, the released claims would indirectly impact the debtor's reorganization through claims of indemnity or contribution, the plan otherwise provides for payment in full of the released claims, or the releasing party has consented. *Id.* at 462. By contrast, the non-consensual third party release of the Non-Debtor Purdue Parties under this Plan does not satisfy any of the criteria set forth by the Second Circuit in *Metromedia*, and is therefore inappropriate in these circumstances.

First, it does not appear that the Non-Debtor Purdue Parties have appeared in this case, participated in any negotiations, or contributed to the Debtors' estates. The Non-Debtor Purdue Parties have not contributed anything to the undersized reserve set aside for Other General Unsecured Creditors in exchange for their release.

Second, the claims against Non-Debtor Purdue Parties would be completely extinguished under the Plan's releases, and not channeled to a settlement fund.

Third, a non-consensual third party release of Gulf's and St. Paul's claims against the non-Debtor Purdue Parties is unnecessary for the Debtors' reorganization because the claims would not lead to indemnity or contribution claims against the Debtors and will not "have a conceivable effect on the estate." *Id.*, 576 B.R. at 462. Any indemnity claims held by the Non-Debtor Purdue Parties against the Debtor Purdue Parties are discharged and released by the Plan, so there is no harm to the Debtors in leaving the contractual obligations of the Non-Debtor Purdue Parties unaffected.

Finally, the Plan does not provide that Gulf and St. Paul will be paid in full (despite the Debtors' apparent attempt to create an illusion to the contrary), and Gulf and St. Paul are unable to opt out of the third party releases. Therefore, none of the *Metromedia* considerations support a non-consensual third party release by Gulf and St. Paul in this case. Despite the unusual nature of this case, no "circumstances that may be characterized as unique" exist to support their non-consensual release of Non-Debtor Purdue Parties. *Id.*

This Court has described a confirmed chapter 11 plan as a "super-contract" that binds "the debtor, its creditors and holder of interests." *In re Frontier Ins. Grp., Inc.*, 585 B.R. 685 (Bankr. S.D.N.Y. 2018). This Court relied in part on that characterization when it overruled the United States Trustee's objection to non-consensual third party releases in *In re Tops Holding II Corp.*, Case No. 18-22279. This Court mentioned two distinct factors to support overruling the United States Trustee's objection, neither of which is applicable here.

First, this Court noted that in *Tops*, no releasing party objected to the plan, and a number of the releasing parties had opted out. Hr'g Transcript at 74:23–75:3, *In re Tops Holding II Corp.*, Case No. 18-22279 [ECF No. 76]. In this case, Gulf and St. Paul, both Releasing Parties, are objecting to the Plan and lack any ability under the Plan to opt out.

Second, this Court highlighted that *Tops* featured a "remarkably consensual plan" and case. *Id.* at 75:5 & 75:9. In contrast, while a consensus does appear to be developing among various creditor constituencies, this case nonetheless has been heavily contested and this Court received a number of objections to the Disclosure Statement from creditors and interested parties and has received a number of objections to confirmation of the Plan. The Debtors have resolved some of the objections to confirmation, but other objections remain outstanding.

8

The non-consensual third party releases in the Plan do not satisfy the *Metromedia* factors with respect to Gulf and St. Paul, and this Plan process is wholly unlike the "remarkably consensual" process this Court described in *Tops*. The Plan in its current form, which releases non-Debtor entities from an indemnity for which Gulf fully paid, should not be confirmed. From the perspective of Gulf and St. Paul (and Other General Unsecured Creditors), the Non-Debtor Purdue Parties are being released from their claims for free.

### III. The Plan's Insurance Neutrality Provision Does Not Leave Insurance Policies Unaffected as Required by Applicable Law

Gulf and St. Paul hereby join in the Objection and the relief sought therein and object to the Plan on the ground that it is not insurance neutral, as it impermissibly impairs the state law rights and defenses of Gulf and St. Paul under their insurance policies and common law.[3]

As described more fully in the Objection property interests in bankruptcy are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979). Therefore, "[t]he filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy." *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 194–95 (Bankr. S.D.N.Y. 2012). Accordingly, a bankruptcy plan of reorganization (or other orders of a bankruptcy court) may not abridge the rights of insurers unless a provision of the Bankruptcy Code specifically authorizes that abridgement. *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (bankruptcy courts lack authority to enter orders that "expand the contractual obligations of parties"); *In re Crippin*, 877 F.2d 594, 598 (7th Cir.

---

[3] Gulf and St. Paul dispute the Debtors' contention that Gulf and St. Paul policies provide coverage or benefits to the Debtors for claims that are the subject of the Complaint for Declaratory Relief, Adv. Proc. No. 21-07005 (RDD) (the "Insurance Adversary Proceeding") [ECF No. 1]. Still, the Gulf and St. Paul policies are MDT Insurance Policies, as that term is used in the Plan, because "the Debtors have sought . . . coverage or benefits" under the policies and the policies are "listed in Exhibit A to the *Complaint for Declaratory Relief*" filed in the adversary proceeding. *See* Plan at 35–36 (defining Purdue Insurance Policies) & 21 (defining MDT Insurance Policies). As such, the policies are affected by the so-called insurance neutrality provision.

9

1989) ("[B]ankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms.").

    A.    The Insurance Neutrality Provision Contemplates Modification of Insurance Contracts, State Law Contracts, and State-Law Rights

Gulf's and St. Paul's insurance policies and the Settlement Agreement contain a number of terms, exclusions, conditions, definitions, declarations, endorsements, and/or limitations to coverage, and Gulf and St. Paul have other defenses under state insurance and contract law, all of which will be central to the coverage issues in the non-core Insurance Adversary Proceeding. *See* Answer, Adv. Proc. No. 21-07005 (RDD) [ECF No. 169] at 11–15. Gulf and St. Paul seek to preserve these defenses and their rights under applicable law.[4]

The Plan's insurance neutrality provision is contradictory and misleading. In particular, the newly-added proviso provides that rights and obligations of the Insurance Companies under the Purdue Insurance Policies are expressly subject to the Plan, Plan Documents, the Confirmation Order and, indeed *any* order or ruling of the Court. *See* Plan § 5.10. With the addition of this proviso, the so-called insurance neutrality provision is the opposite of what it purports to be: it appears to try to empower the Court to *modify* insurance policies and state law rights arising thereunder, including Gulf's and St. Paul's defenses and rights under applicable law. Further, as described in the Objection, the Plan's insurance neutrality provision may cause many improper consequences.

This violates applicable law, and unless this provision is modified, the Plan should not be confirmed. Under *Butner's* bedrock rule, property interests are governed by state law, and the

---

[4] To be clear, Gulf and St. Paul are not asking the Court, in connection with the confirmation hearing, to address the merits of any of these assertions. The point, rather, is that these defenses and coverage issues must be preserved for adjudication in the Insurance Adversary Proceeding.

10

Debtors cannot enlarge or rewrite their rights under insurance policies by filing a petition and a plan of reorganization.

      B.      <u>The Plan Impairs Contribution Rights of Gulf and St. Paul against Other Insurers</u>

Section 10.11 of the Plan, titled "Settling MDT Insurer Injunction," enjoins anyone who does or may hold a claim arising under an MDT Insurance Policy from taking any action to collect, recover, or receive payment for such claim from a Settling MDT Insurer. Such claims can, however, be used "as a setoff claim against the Master Disbursement Trust," but cannot be used to affirmatively collect from a Settling MDT Insurer. Plan § 10.11.

Gulf and St. Paul may have contribution claims against other insurers who hold MDT Insurance Policies. Section 10.11 of the Plan serves to impair, alter, change, decrease, and modify the rights of Gulf and St. Paul, in direct violation of the Plan's purported insurance neutrality language, by limiting its potential contribution rights to a setoff claim against the Master Disbursement Trust, and enjoining any affirmative recovery from a Settling MDT Insurer. This provision of the Plan is not insurance neutral.

      C.      <u>The Insurance Neutrality Provision Must Be Amended to Preserve the Resolution of Any Insurance Coverage Disputes for Outside the Bankruptcy Case</u>

The Debtors' proposed neutrality provision is also insufficient to ensure that parties will not seek to use any issue addressed in the bankruptcy proceeding offensively or defensively in any insurance coverage litigation. Accordingly, the Plan must be revised to make clear that all claims and defenses of any Insurance Companies shall be preserved for resolution outside the bankruptcy case, and that all rights of Insurance Companies under their policies remain unaffected by the Plan. By way of example only, such a provision is necessary to prevent Purdue from asserting that the Bankruptcy Court's approval of Purdue's trust disbursement procedures for the public creditor

11

trusts or private creditor trusts establishes the liability of Purdue for purposes of Gulf's or St. Paul's policies or the Settlement Agreement.

## IV. Reservation of Rights

Gulf and St. Paul and all of their respective subsidiaries and affiliates reserve the right to supplement and modify these objections to state additional objections, to revise the objections already stated, and to object to the proposed form of Confirmation Order.

## V. Conclusion

For the reasons set forth above, the Plan in its current form should not be confirmed.

Dated: New York, New York
July 19, 2021

        Respectfully submitted,

        SIMPSON THACHER & BARTLETT LLP

        */s/ Bryce L. Friedman*
        Bryce L. Friedman
        William T. Russell, Jr.
        David R. Zylberberg
        425 Lexington Avenue
        New York, NY 10017
        Tel: (212) 455-2000
        Fax: (212) 455-2502
        bfriedman@stblaw.com
        wrussell@stblaw.com
        david.zylberberg@stblaw.com

        ***Attorneys for Gulf Underwriters Insurance Company and St. Paul Fire and Marine Insurance Company***