| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date:   August 9, 2021<br>Hearing Time:   10:00 am |

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br><br>                                       Debtors.[1] | : Chapter 11<br>:<br>: Case No. 19-23649 (RDD)<br>:<br>: Jointly Administered<br>:<br>: |

**OBJECTION OF CERTAIN CANADIAN MUNICIPALITY CREDITORS AND CANADIAN FIRST NATION CREDITORS TO CONFIRMATION OF THE SIXTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

**TO:   THE HONORABLE ROBERT D. DRAIN,
         UNITED STATES BANKRUPTCY JUDGE:**

For their objection and reservation of rights (the "Objection") to the Debtors' proposed Confirmation of the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors (the "Plan"), certain Canadian Municipal Creditors and Canadian First Nation Creditors (the "Canadian Municipality and First Nations Creditors" or "CMFNC" respectfully state as follows:

**PRELIMINARY STATEMENT**

This Court, the Debtors and a multitude of creditors and interested parties have clearly expended extraordinary effort in attempting to bring resolution to an exceptionally sad and complicated set of circumstances. While the Canadian Municipality and First Nations Creditors wish to see a fair and just resolution to these matters, and although they wish not to upset a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors shall include their affiliates and other entities under their control. The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

delicate apple cart, the interests of the CMFNC have been largely ignored or unaddressed by the Debtors to date. The CMFNC have not participated in a meaningful way in the negotiations that resulting in the NOAT and the Tribal Trust. The end result is a Plan and Supplemental Documents which are unconfirmable as drafted, and which require the CMFNC to both reserve certain rights, and object to Confirmation because:

A. The Plan and recently filed Supplemental Documents impermissibly fail to provide equality of treatment to similar creditors in the same classes;

B. Without more, it is unclear that the Plan has been proposed in good faith as to the Canadian Municipality and First Nations Creditors; and

C. The Non-Debtor Third Party Releases and other aspects of the Plan require objections and reservations of rights insofar as they may seek to impermissibly extend US jurisdiction, contractual release and discharge of non-US sovereigns, and they may seek to affect a corporate and third-party discharge of CMFNC in contravention of *Section 1141(d)(6)(A)*.

Each of the above, while impacting the CMFNC directly, also impacts all creditors generally, insofar as the Plan fails to create the sort of circumstance a Plan is generally required to outline – ie. a clear summary and framework upon which a commercial shareholder or party-in-interest could reasonably assess the outcome and knowledgeably vote its interests as to same, as if same were a public company.

**RELEVANT CREDITOR, BANKRUPTCY AND CLAIM BACKGROUND**

September 15, 2019 is the Chapter 11 Petition Date ("Petition Date") for the Debtors hereon. On September 19, 2019, the Ontario Superior Court of Justice (Commercial List) in Toronto, Ontario, Canada (the "Canadian Court") entered the Initial Recognition Order (Foreign Main Proceeding) pursuant to Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, that, among other things, recognized the Chapter 11 Cases as foreign main proceedings (Court File No. CV-19-627656-00CL) (the "CCAA Proceedings"). The orders issued by the Canadian Court recognized the Chapter 11 Cases as "foreign main proceedings" under the CCAA, stayed (a) all proceedings in Canada currently under way against or in respect of any of the Debtors or affecting their business or property and (b) all proceedings against certain Canadian affiliates of the Debtors, including Purdue Pharma Inc., Purdue Frederick Inc., and Purdue Pharma and recognized certain orders entered in the Chapter 11 Cases to permit the Chapter 11 Debtors to continue operating their respective businesses during the course of the Chapter 11 Proceedings. Since the filing of the CCAA Proceeding in the Canadian Court, the litigation of the claims against the Debtor's Canadian entities have also been stayed.

Thereafter, Guardian Law Group LLP timely filed the below proofs of claim, with supporting documents, in the Debtor's main case, asserting detailed facts asserting claims of conspiracy, estoppel, fraudulent concealment, supply chain liability, common law public nuisance, negligence and negligent misrepresentation, common law fraud, and unjust enrichment. Punitive damages were also sought. In short, like many US municipalities and Native American Tribes, generally the CMFCN plaintiffs were (and are) seeking to recover for the costs and abatement associated with Debtors pre-petition acts and representations giving rise to the opioid crisis that this Court is fully aware of. Each proof of claim asserts significant monetary amounts. It is noteworthy that two of the Canadian actions are class actions – one as to all Canadian Municipalities, and one

3

on behalf of all Canadian First Nations and Metis People. Four of the other actions and claims are specifically brought on behalf of separate Canadian cities, and one of the other claims, and action, is on behalf of a separate Canadian First Nation.

| **Creditor** | **Debtor Name** | **Claim Number** |
| --- | --- | --- |
| The City of Grande Prairie, as Representative Plaintiff for a Class Consisting of All Canadian Municipalities | Purdue Pharma L.P. | 145592 |
| Peter Ballantyne Cree Nation on behalf of All Canadian First Nations and Metis People | Purdue Pharma L.P. | 144535 |
| The City of Brantford | Purdue Pharma L.P. | 144455 |
| The City of Grande Prairie | Purdue Pharma L.P. | 144366 |
| Lac La Ronge Indian Band | Purdue Pharma L.P. | 144514 |
| The City of Lethbridge | Purdue Pharma L.P. | 144475 |
| The City of Wetaskiwin | Purdue Pharma L.P. | 144465 |

Ultimately, it was unclear from the Disclosure Statements, Plan Documents and Supplements available, as to which classes the Debtor intended to include the above claims. As an electronic opting multi-claim filer under the ballot documents, when Guardian Law Group entered its claim information for voting purposes, the respective ballots auto-populated such that the Canadian Municipal claim appear to have bene characterized by the Debtor as Class 4 Non-Federal Domestic Governmental Claims, and the First Nation Claims appear to have been characterized by the Debtor as Class Five Tribal Claims. All of the ballots on all of the above claims were votes against Confirmation.

Notwithstanding the characterization of the above claims in respective classes 4 and 5 for voting purposes, the process leaves the CMFNC creditors with a number of concerns. First, the Plan and Supplement (Trust) documents reserve the right for the subsequent, post-confirmation,

4

recharacterization of claims. This in and of itself is objectionable and of grave concern given the potential for recharacterization as general unsecured claims in Class 11(c), which given the $15 million dollar funding of the class might result in almost no dividend to the above creditors.

Moreover, the Plan documents themselves foster this lack of clarity. The definitional section of the Plan defines Non-Federal Domestic Governmental Claims seemingly strictly as to US municipalities – without reference to Canadian municipalities, cities or governmental entities. The definitional section of the Plan defines Tribal Claims as those arising strictly under US federal tribal law, also without reference to Canadian First Nation claimants. These concerns have not been abated by the recently filed Plan Supplement documents – or any other documents or information from the Debtors. Notably, the entire apparent basis for the NOAT analysis and distribution scheme is based solely on the 50 US states and US territories, without any meaningful reference whatsoever to the claims costs or damages to Canadian provinces, municipalities or cities. The same is true insofar as with regard to the Tribal Claims, neither the Disclosure Statement, Plan nor Plan Supplement Tribal Trust make any reference to Canadian First Nations' claims, cost or damages in any way. In short, the Plan is fundamentally premised on the trusts set up for the equitable distribution of allocated funds to claimants – yet it does not appear that there is any analysis or allocation as to Canadian Municipal or First Nations Claims – it is not at all clear from the Disclosure Statement, Plan and Supplements that any funds will be allocated to these claims.

This is all the more concerning because the Plan specifically, clearly and intentionally addresses Canadian personal injury tort and class action claims. Prior to the Petition Date, the lead plaintiffs (collectively, the "Patient Plaintiffs") in ten class actions (the "Canadian Patient Class Actions") that were commenced in each province of Canada (except Manitoba) between May 11, 2007 and June 22, 2012, on one hand, and the defendants in the Canadian Patient Class Actions, on the other hand, entered into a conditional national class action settlement agreement (the "Patient

5

Settlement Agreement"). Pursuant to its own terms and Canadian class action legislation, the Patient Settlement Agreement must be approved by the Ontario Superior Court of Justice, the Superior Court of Quebec, the Supreme Court of Nova Scotia and the Saskatchewan Court of Queen's Bench in order to become effective - the Patient Settlement Agreement has yet to receive the approval of the Saskatchewan Court.   The above anomalies and lack of clarity in the Plan and Plan documents leave the Canadian Municipal Creditors and the Canadian First Nation Creditors wondering whether and why the Debtors have seemingly forgotten to clearly address their claims.

A.  **CONFIRMATION OF THE PLAN MUST BE DENIED BECAUSE THE PLAN AND SUPPLEMENTAL DOCUMENTS, ON THEIR FACE, DO NOT PROVIDE EQUAL TREATMENT TO SIMILAR CREDITORS IN THE SAME CLASS**

The Debtors are required under *Section* 1122 of the Bankruptcy Code to classify claims against the Debtors into classes that contain claims and interests that are substantially similar to the other claims and interests in such class. *Section* 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 *U.S.C.* § 1123(a)(4). Insofar as the Canadian Municipal and First Nations Claimants all voted against the Plan, they have not consented or agreed to less favorable treatment under the Plan. Equality of treatment means essentially that all class members receive equal value distributions. *Ahuja v. LightSquared, Inc.* (*In re LightSquared, Inc.*), 534 B.R. 522, 537 (S.D.N.Y. 2015), *aff'd*, 644 F. App'x 24 (2d Cir.), *cert. denied*, 137 S. Ct. 335, 196 L. Ed. 2d 262 (2016); *In re Quigley Co. Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007); *see In re AOV Indus., Inc.*, 792 F.2d 1140, 1152, 253 U.S. App. D.C. 186 (D.C. Cir. 1986); *In re W.R. Grace & Co.*, 475 B.R. 34, 121 (D. Del. 2012).   Although Section 1123(a)(4) requires equality of treatment, it does not similarly

6

require equality of result. *In re Breitburn Energy Partners LP*, 582 B.R. 321, 357-358, 2018 Bankr. LEXIS 691, 89-91 (Bankr. S.D.N.Y. 2018). The requirement of equality of treatment is met if claimants in the same class have the same opportunity for recovery. *Id.* citing *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013) ("[C]ourts have interpreted the 'same treatment' requirement to mean that all claimants in a class must have 'the same opportunity' for recovery."); *Ad Hoc Committee of Personal Injury Asbestos Claimants v. Dana Corp.*, (*In re Dana Corp.*), 412 B.R. 53, 62 (S.D.N.Y. 2008) ("The key inquiry under § 1123(a)(4) is not whether all of the claimants in a class obtain the same thing, but whether they have the same opportunity."); *In re Republic Airways Holdings, Inc.*, 565 B.R. 710, 728 n. 13 (Bankr. S.D.N.Y. 2017) (same); *see In re Central Med. Ctr., Inc.*, 122 B.R. 568, 574 (Bankr. E.D. Mo. 1990) (lottery system that paid certain bondholders before others and at different interest rates did not violate section 1123(a)(4) because all members were subject to the same process for the satisfaction of their claims).

The problem with Debtor's Plan, the NOAT and the Tribal Trust, is that because they do not contain any apparent reference to Canadian Municipal Claims or Canadian First Nations Claims, because there is no analysis, and there are no percentages or calculations related to same, there is more than an argument that the Plan does not provide equality of treatment / equality of opportunity. In addition to not being described in any of the referenced documents, upon information, Canadian Municipalities and First Nations were not a part of the NOAT or Tribal negotiations. The entire process begs the question who cities and First Nations facing the exact same issues as US municipalities and tribes, can be forgotten form, or excluded from, the process. Confirmation of the Plan must be denied pursuant to *Section* 1123(a)(4) because the proposed treatment is unequal – no level of analysis was given to these Canadian claims, and no percentages have been allocated to these Canadian claims, notwithstanding that they are in all respects similar to the US municipal and tribal claims, and are apparently treated in the same class for voting purposes.

7

At present it appears that the Canadian Municipal and First Nations Claims receive no treatment under the Plan and Supplement documents. Without more, with no consideration given and nothing apparently allocated to the CMFNC claims, this Court's analysis seems rather simple, as zero in this instance is clearly not evidence of equal treatment or equal opportunity.

B.    CONFIRMATION MUST BE DENIED BECAUSE THE FAILURE OF THE DEBTORS TO APPROPRIATELY ADDRESS SIMILARLY SITUATED CLAIMS, IN THE SAME CLASS, IN LIGHT OF THE TOTALITY OF THE CIRCUMSTANCES CALLS INTO QUESTION THE DEBTORS' GOOD FAITH IN PROPOSING THE PLAN

The CMFNC Claims are not specifically addressed in the Disclosure Statement or Plan. Nor are the claims specifically addressed in the NOAT or Tribal Trust. Notably, although the NOAT details percentages and formulas as to 50 states, and at a more granular level, hundreds of US municipalities, it makes no reference to Canadian municipalities who have borne similar costs, from similar damages, from similar acts, by the same parties. The Tribal Trust also makes no reference to any of the Canadian First Nations, again, who have also borne similar costs, and similar damages, from the same acts, by the same parties. Debtor has given no explanation for not more clearly addressing or allocating as to these claims.

A party seeking confirmation must show that "[t]he plan has been proposed in good faith and not by any means forbidden by law." 11 *U.S.C.* § 1129(a)(3). "Good faith," as used in *Section* 1129(a)(3), is not defined in the Code, but generally means that the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Breitburn Energy Partners LP*, 582 B.R. 321, 352, 2018 Bankr. LEXIS 691, 74-75; *Argo Fund Ltd. v. Bd. of Directors of Telecom Argentina, S.A* (*In re Bd. of Directors of Telecom Argentina, S.A*), 528 F.3d 162, 174 (2d Cir. 2008) (quoting *Koelbl v. Glessing* (*In re Koelbl*), 751 F.2d 137, 139 (2d Cir.1984) (internal quotations omitted); *accord Kane v. Johns-Manville Corp.*, 843 F.2d

8

636, 649 (2d Cir. 1988) ("The good-faith test means that the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected."). Section 1129(a)(3) "speaks more to the process of plan development than to the content of the plan." *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010); *accord Quigley, Inc.*, 437 B.R. at 125. It must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan. *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984); *In re Jasik*, 727 F.2d 1379, 1383 (5th Cir. 1984); *Chemtura*, 439 B.R. at 608; *In re WorldCom, Inc.*, No. 02-13533, 2003 Bankr. LEXIS 1401, 2003 WL 23861928, at *51 (S.D.N.Y. Oct. 31, 2003); *In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997). Under the totality of circumstances, the Debtors failure to address, detail, provide analyses or make allocation for the CMFNC claims at this late date suggests that the Plan has not been proposed in good faith, or for a purpose permitted by law.

**C.    THE NON-DEBTOR THIRD PARTY RELEASES AND OTHER ASPECTS OF THE PLAN REQUIRE OBJECTIONS AND RESERVATIONS OF RIGHTS - THE PLAN SEEKS TO IMPERMISSABLY EXTEND US JURISDICTION, REQUIRE THE RELEASE AND DISCHARGE OF THE RIGHTS OF AND CLAIMS OF NON-US SOVEREIGNS AND MAY SEEK TO AFFECT A CORPORATE AND THIRD-PARTY DISCHARGE OF CMFNC CLAIMS IN CONTRAVENTION OF *SECTION* 1141(d)(6)(A)**

Debtors as Plan proponents must prove by a preponderance of the evidence that they satisfy the relevant requirements of 11 *U.S.C.* § 1129(a), and if the plan is not fully consensual, 11 *U.S.C.* § 1129(b). *In re Breitburn Energy Partners LP*, 582 B.R. 321, 349, 2018 Bankr. LEXIS 691, *67; *See In re Quigley Co.*, 437 B.R. 102, 125 (Bankr. S.D.N.Y. 2010).

Presently, the Plan would appear to be proposed on a nonconsensual basis. This would generally create certain hurdles as to a Bankruptcy Court's invocation of broad third-party releases of the type found under this Plan. Given a proper balancing, under certain circumstances in certain type of cases, those hurdles may not be insurmountable for a Debtor – however they are high –

9

even in the Second Circuit. The CMFNC are each respectively sovereigns for relevant plan purposes. The imposition by a bankruptcy court of non-consensual third-party releases against foreign sovereigns certainly raises a number of obvious questions. As stated by this Court:

> ". . . we should not lose sight of the fact that when we impose involuntary releases we do not provide claimants with other procedural and substantive rights that they ordinarily would have. The Federal Rules of Bankruptcy Procedure require the commencement of adversary proceedings, with formal service of process, when a money judgment is sought against a third party, or when a court is asked to rule upon a third party's interest in property, or when a court is asked to make a declaration of the third party's rights, or when a court is asked to issue an injunction. But these procedures are not applied when third-party releases are sought. The court is asked to take a third party's property without any hearing on the merits and without any of the discovery or other rights that a litigant usually would have."

*In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717, 725-726, 2019 Bankr. LEXIS 1076, 17-18 (Bankr. S.D.N.Y. 2019) *citing In re Digital Impact*, 223 B.R. 1, 13 n. 6 (Bankr. N.D. Okla. 1998) (noting that a third-party release has "the effect of a judgment - a judgment against the claimant and in favor of the non-debtor, accomplished without due process."). As further stated in *Aegean*:

> "Involuntary releases also result in a taking of property without a formal hearing to ensure that the affected party has received proper compensation. In fact, when a court is asked to award a third-party release in a bankruptcy case, it is often asked to do so based only on the contributions that a proposed releasee has purportedly made to the reorganization process generally, rather than the benefits to be provided directly to the persons whose claims are being released. But even in those instances in which powers of eminent domain authorize an involuntary taking of property, due process requires that the claimant receive compensation that is based on the actual value of the property being taken from them."

*Id. citing See, e.g.*, *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.*, 482 U.S. 304, 322, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987).

The complication then, with regard to CMFNC as foreign sovereigns is that pursuant to The Foreign Sovereign Immunities Act of 1976 (the "FSIA"), 28 U.S.C. § 1602 *et. seq.,* provides the exclusive source of subject matter jurisdiction over suits against foreign states brought in

United States courts. *Hirsh v. State of Israel*, 962 F. Supp. 377, 379, 1997 U.S. Dist. LEXIS 4406, 4-5 (S.D.N.Y 1997) *citing Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610-11, 119 L. Ed. 2d 394, 112 S. Ct. 2160 (1992); *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, 102 L. Ed. 2d 818, 109 S. Ct. 683 (1989). The FSIA confers original jurisdiction on federal district courts without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity. *Id. citing* 28 *U.S.C.* § 1330(a). Nevertheless, the general rule is that a foreign state is presumptively immune from jurisdiction unless a court finds that one of the specific exceptions to immunity provided in sections 1605 to 1607 of the FSIA applies. *Id.* Obviously, there is an argument 11 *U.S.C.* § 106 provides grounds for waiver of a finding of a waiver of this immunity. Nevertheless, there is an argument that the waivers intended by *Section* 106 relate to affirmative actions against sovereigns for recovery of property or funds, and not the circumstances of non-consensual third-party releases. In sum, there is a significant question of whether this Court has subject matter jurisdiction to render a non-consensual third party release as to the claims of a foreign sovereign.

Moreover, certain claims of the CMFNC may be nondischargeable pursuant to *Section* 1141(d)(6). Debtor's Plan does not address specifically whether reserves are to be held as to the CMFNC claims, or any other claims, which may fall within such category (which is self-effectuating and does not require the filing of an adversary complaint), or how the treatment of such claims would be addressed. In short, *Section* 1141 makes the nondischargeability language of *Section* 523(a)(2) applicable in certain circumstances with reference to corporate debtors. It is more than arguable, with specific reference to the CMFNC proofs of claim and attachments, that *Section* 1141(d)(6) may be applicable to such claims, particular with reference to Canadian law. The issue then is the Debtors' failure to address what becomes of self-effectuating non-

dischargeability obligations should they be proven, and this aspect of CMFNC claims may render the Plan unconfirmable.

Nothing contained herein shall constitute a waiver of any rights or remedies of the CMFNC under title 11 of the United States Code or applicable law, including, without limitation, the right to (i) amend, modify, or supplement this Objection, or (ii) raise any other additional arguments at a later date, including, but not limited to, in an objection to any further Amended Plan, and the right to assert lack of subject matter jurisdiction, preemption. immunity form suit or inapplicability of the automatic stay, depending upon the final outcome of the CCAA proceeding or related matters before this Court.

Dated: July 19, 2021                                Respectfully submitted,

/s/ Allen J. Underwood, II
**LITE DEPALMA GREENBERG
& AFANADOR, LLC**
OAllen J. Underwood II, Esq.
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
e-mail: aunderwood@litedepalma.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2021, a true and correct copy of the foregoing Notice of Appearance and Request for Service of Notices and Papers was filed via this Court's CM/ECF system and will be forwarded by electronic transmission to all parties registered to receive electronic notice in these cases, as identified on the Notice of Electronic Filing (NEF).

*/s/ Allen J. Underwood II*
Allen J. Underwood II