# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

IN RE:  Purdue Pharma L.P.

Social Security/Taxpayer ID/Employer ID/
Other Nos.: 06-1307484

CASE NO.: 19-23649-RDD

## OBJECTION TO PLAN CONFIRMATION

Creighton Bloyd hereby objects to the confirmation of the Plan proposed in this case.  In support of this objection, Bloyd states:

1. Bloyd is a consumer finance executive. He also has opioid use disorder, a condition that he developed as a college student.

2. Bloyd manages his disorder through medicine assisted therapy (MAT).

3. Bloyd has paid for his MAT out of his own pocket and will likely have to continue to do so.

4. Bloyd filed a class claim in this case. A copy of which is attached hereto as Exhibit 1.  No one objected.

5. The Plan provides for compensation to individual personal injury victims, but includes within that class of claimants persons who are both victims in

active recovery and persons whose family members died from opioid use disorder. These two groups of victims have economic interests that conflict with each other.

6. Opioid use disorder patients should have been treated as secured creditors in this case. Opioid use disorder patients should have rights to subsidized recovery and rehabilitation services pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. 3663A. If those rights were recognized, they would have liens under the MVRA, which liens would give their claims improved status in this case. Instead, under the plea agreement discussed below, living opioid use disorder patients were grouped together with those creditors whose family members died from opioid use disorder and were thus treated as unsecured creditors.

7. The cornerstone of the Plan is a plea agreement reached between the United States and the Debtors, which agreement requires Debtors to pay money to the United States, but which gives Debtors an offset for amounts paid to other creditors, including other governmental entities. The assumption behind the offset appears to be that amounts paid to other governmental entities will inure to the benefit of opioid use disorder victims and other stakeholders, who can hold governmental entities accountable. However, opioid use disorder victims are disproportionately at risk of de facto or de jure disenfranchisement. It is unreasonable to expect governmental entities to look after the interests of opioid use disorder victims, whose suffering is generally criminalized, rather than treated,

by governments. Moreover, the entire agreement was put together by law firms that represented both the Debtors and the Sackler families, but which had not disclosed that potential conflict of interest. Thus, while the Debtors got away without paying the restitution that the MVRA anticipates, the Sacklers got away with no criminal penalties at all.

Wherefore, Bloyd, on behalf of himself and those on whose behalf he has filed claims, respectfully objects to confirmation of the Plan and further prays this Court will set this matter for hearing and thereafter deny confirmation.

Respectfully submitted,

s/ Frank Ozment
Frank Ozment (ASB-7203-N73J)
Frank Ozment Attorney at Law, LLC
217 Country Club Park, Box 501
Birmingham, AL 35213
Phone: (205) 847-5401
***Attorney for Plaintiffs***

**OF COUNSEL:**
Roderick Graham (ASB-3237-R74R)
Graham and Associates, P.C.
P.O. Box 43334
Birmingham, Alabama 35243
Phone: (205) 427-9494
***Attorney for Plaintiffs***

# EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1: In Re: Purdue Pharma, L. P.

Debtor 2 (Spouse, if filing):

United States Bankruptcy Court for the: Northern District of New York

Case number: 7:2019-bk-23649

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Creighton Boyd, on behalf myself and all similiar situated individual
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
C/o Roderick Graham, Esq.
Name
2910 Linden Avenue
Number    Street
Birmingham    AL    35209
City    State    ZIP Code

Contact phone (205) 4279494
Contact email rodgrah@hotmail.com

Where should payments to the creditor be sent? (if different)

Name
Number    Street
City    State    ZIP Code

Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410    Proof of Claim    page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

6. **Do you have any number you use to identify the debtor?**
   ☒ No
   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7. **How much is the claim?**    $ _contingent and unliquidated_ .    **Does this amount include interest or other charges?**
   ☒ No
   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   personal injury

9. **Is all or part of the claim secured?**
   ☒ No
   ☐ Yes.   The claim is secured by a lien on property.
   
   **Nature of property:**
   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☐ Other. Describe: _____
   
   **Basis for perfection:** _____
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)
   
   **Value of property:**    $_____
   **Amount of the claim that is secured:**    $_____
   
   **Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)
   
   **Amount necessary to cure any default as of the date of the petition:**    $_____
   
   **Annual Interest Rate** (when case was filed) _____ %
   ☐ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**
    ☒ No
    ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**
    ☒ No
    ☐ Yes. Identify the property: _____

Official Form 410                              **Proof of Claim**                              page 2

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  06/26/2020
                  MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Roderick | | Graham |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Graham and Associates | | |
| | *Identify the corporate servicer as the company if the authorized agent is a servicer.* | | |
| Address | P. O. Box 43334 | | |
| | Number      Street | | |
| | Birmingham | AL | 35243 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | Rodgrah@hotmail.com |

Official Form 410                    **Proof of Claim**                    page 3

# ATTACHMENT TO PROOF OF CLAIM

1. Purdue is primarily engaged in the manufacture, promotion, and distribution of opioids nationally, including the following:

   a. OxyContin (oxycodone hydrochloride extended release) is a Schedule II opioid agonist Tablet first approved in 1995 and indicated for the "management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate." Prior to April 2014, OxyContin was indicated for the "management of moderate to severe pain when a continuous, around-the-clock opioid analgesic is needed for an extended period of time."

   a. MS Contin (morphine sulfate extended release) is a Schedule II opioid agonist tablet first approved in 1987 and indicated for the "management of pain severe enough to require daily, around-the- clock, long-term opioid treatment and for which alternative treatment options are inadequate." Prior to April 2014, MS Contin was indicated for the "management of moderate to severe pain when a continuous, around-the-clock opioid analgesic is needed for an extended period of time."

   b. Dilaudid (hydromorphone hydrochloride) is a Schedule II opioid agonist first approved in 1984 (injection) and 1992 (oral solution and tablet) and indicated for the "management of pain in patients where an opioid analgesic is appropriate."

   c. Dilaudid-HP (hydromorphone hydrochloride) is a Schedule II opioid agonist injection first approved in 1984 and indicated for the "relief of moderate-to-severe pain in opioid-tolerant patients who require larger than usual doses of opioids to provide adequate pain relief."

   d. Butrans (buprenorphine) is a Schedule III opioid partial agonist transdermal patch first approved in 2010 and indicated for the "management of pain severe enough to require daily, around-the- clock, long-term opioid treatment and for which alternative treatment options are inadequate." Prior to April 2014, Butrans was indicated for the "management of moderate to severe pain when a continuous, around-the-clock opioid analgesic is needed for an extended period of time."

   e. Hysingla ER (hydrocodone bitrate) is a Schedule II opioid agonist tablet first approved in 2014 and indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

   f. Targiniq ER (oxycodone hydrochloride and naloxone hydrochloride) is a Schedule II combination product of oxycodone, an opioid agonist, and naloxone, an opioid

antagonist, first approved in 2014 and indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

2. OxyContin is Purdue's largest-selling opioid. Since 2009, Purdue's national annual sales of OxyContin have fluctuated between $2.47 billion and $2.99 billion, up four-fold from 2006 sales of $800 million. OxyContin constitutes roughly 30% of the entire market for analgesic drugs (i.e., painkillers).

3. In 2007, Purdue settled criminal and civil charges against it for misbranding OxyContin and agreed to pay the United States $635 million—at the time one of the largest settlements with a drug company for marketing misconduct.35 Pursuant to its settlement, Purdue operated under a Corporate Integrity Agreement with the Office of Inspector General of the U.S.

4. Various Purdue-Related Entities are businesses, trusts, and individuals associated with Purdue. The Purdue-Related Entities are members of a worldwide group of associated companies all of which are owned and controlled, directly or indirectly through family trusts and holding companies, 50% by the widow and descendants of Mortimer D. Sackler ("Mortimer Sackler Family") and 50% by the widow and descendants of Raymond R. Sackler ("Raymond Sackler Family") (together the Mortimer Sackler Family and the Raymond Sackler Family are referred to as the "Sackler Families"). At all relevant times, the Sackler Families jointly managed and controlled all of the associated companies that the two families owned. Each of the Purdue-related individuals and entities named herein as Additional Defendants knowingly aided, abetted, participated in, and benefitted from the wrongdoing of Purdue as alleged in the Complaint; none is named merely because of his, her, or its status as a shareholder, limited partner, member of a limited liability company, or beneficiary of a trust.

5. Purdue has been sued by many plaintiffs for the role it played in creating the opioid epidemic and has petitioned for bankruptcy. The three Purdue entities identified herein as non-party co-conspirators and that are also entitled to the protection of the bankruptcy stay may lack sufficient assets

to satisfy their liabilities to those plaintiffs, other creditors, and Plaintiff, because billions of dollars of profits from Purdue's sale of opioids has been distributed to the Sackler Families since the 1980s. Accordingly, by this pleading, Plaintiff identifies as non-party co-conspirators those members of the Sackler Families and their controlled entities who knowingly participated in the wrongdoing of Purdue as alleged in the Complaint, and who knowingly received the benefits of that wrongdoing. Initiation of a legal action against the Purdue-Related Entities is prohibited at this time by injunction.

6.  Stacey Bridges was prescribed OxyContin at the age of 19 year old. She develops an addictive to the drug. She has undergo chronic opioid therapy. She is suing to have money set aside to pay for the chronic opioid therapy. She suing on her behalf and on behalf of similarly situated person. She is also seeking other damages in this class.