**Hearing Date: August 9, 2021 at 10:00 a.m. (ET)**
**Objection Deadline: July 19, 2021 at 4:00 p.m. (ET)**

Brian E. Frosh, Attorney General
Brian T. Edmunds, Assistant Attorney General
Sara E. Tonnesen, Assistant Attorney General
Lauren J. Kelleher, Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, Maryland 21202
bedmunds@oag.state.md.us
(410) 567-6578

*Counsel for the State of Maryland*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **PURDUE PHARMA, L.P.,** *et al.*, | ) | Case No. 19-23649 (RDD) |
| | ) | |
| **Debtors.** | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## STATE OF MARYLAND'S SEPARATE OBJECTION AND JOINDER TO THE OBJECTIONS OF CONNECTICUT AND WASHINGTON TO CONFIRMATION OF THE DEBTORS' PROPOSED SIXTH AMENDED JOINT PLAN OF REORGANIZATION

To:  The Honorable Robert D. Drain:

The State of Maryland, by and through the Attorney General of Maryland, respectfully objects to Confirmation of Debtors' proposed Sixth Amended Joint Plan of Reorganization [3185]. In so doing, Maryland fully joins and incorporates by reference the contemporaneously filed objection of the State of Connecticut and joins and incorporates the State of Washington's objection, except for paragraphs 85 through 89 (on which Maryland expresses no position).  In further support of its objections, Maryland states:

1.      No one desires these proceedings to end in protracted litigation with the Sacklers. But the States, unlike typical creditors, have the unique and sovereign responsibility to ensure that the public health, safety, and welfare are protected.  To ensure that protection, any plan of reorganization must achieve the ends of justice in the enforcement and vindication of State law.  It must ensure robust injunctive and monetary relief and deter future wrongdoing.

2.      The United States Constitution vests the general police power to enact and enforce laws that promote the public health, safety, and welfare in the States as dual sovereigns within the system of federalism it erects.  *See, e.g.*, *Nat'l Fed. Indep. Bus. v. Sebellius*, 567 U.S. 519, 535-36 (2012); *Printz v. United States*, 521 U.S. 898, 918-19 (1997).   As the Supreme Court has recognized, the States' use of their police powers to regulate the sale of pharmaceutical products is critical to maintaining Congress' careful scheme to ensure the safety and efficacy of pharmaceutical markets.  *See Wyeth v. Levine*, 555 U.S. 555, 578-79 (2005).  In enacting the Bankruptcy Code, Congress was careful to preserve such police powers.  *See* 11 U.S.C. § 362(b)(4) (providing exception to automatic stay); *id.* § 523(a)(7) (preventing the discharge of claims for governmental fines, penalties, and forfeitures); *see also* 28 U.S.C. § 1334 (c) (mandatory and permissive abstention from jurisdiction).

3.      In 2019, after completing an investigation, the Maryland Consumer Protection Division commenced an enforcement action against Purdue and members of the Sackler Families under its Consumer Protection Act, Md. Code Ann., Com. Law. §§ 13-101 *et seq.*  The Maryland General Assembly enacted the Consumer Protection Act to provide robust protections for Marylanders who purchase consumer goods, including prescription drugs.  As the Court of Appeals of Maryland has explained:

> Finding that existing laws were "inadequate, poorly coordinated and not widely known or adequately enforced," the General Assembly enacted the CPA as a

> comprehensive consumer protection act to provide protection against unfair or deceptive practices in consumer transactions. The intention of the Legislature was to set "minimum statewide standards for the protection of consumers." To realize this end, the General Assembly sought to implement strong protective and preventive measures to assist the public in obtaining relief from unlawful consumer practices and to maintain the health and welfare of the citizens of the State . . . . The Division of Consumer Protection of the Office of the Attorney General (Division) is given broad powers to enforce the CPA, including the ability to seek injunctions, cease and desist orders, restitution, and civil penalties. Such actions may be initiated by a consumer complaint or a Division investigation. Violators of the CPA may also be criminally prosecuted.

*Citaramanis v. Hallowell*, 613 A.2d 964, 968 (Md. 1992). The Consumer Protection Act provides for a variety of relief, including injunctive relief, damages, disgorgement and civil penalties.

4.    Maryland also has created other statutory and common law claims that enable the State to take legal action to enforce the law and protect the public health, including in its *parens patriae* capacity. *Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 2d 420 (D. Md. 2019)

5.    Having considered its duties to police the market for dangerous and addictive drugs and the gravity of the public health crisis that now kills nearly 7 Marylanders daily and approximately 2,500 per year, the State of Maryland, in the exercise of its sovereign authority to do so, has rejected the proposed settlements with the Sacklers and other non-debtors that are incorporated into the Plan.

6.    The Plan leaves the Sacklers and other third parties who engaged in Purdue's misconduct free to retain billions of dollars that they wrongfully obtained, while paying back to the public only a tiny fraction of the more that $2 trillion in damages that their conduct played a decisive role in creating. Given this, the Plan does not sufficiently promote the interests of the State and the public in deterrence and the establishment of justice. It also fails to secure relief sufficient to justify releasing the Sacklers and other third parties from liability for wrongdoing. Simply put, the Plan fails to establish justice and vindicate the law. *See* Plan § 10.6 & 32-33

(setting forth the scope of releases and, through the definitions of "released parties" and "related parties," releasing potentially bad actors against whom public creditors may valuable claims, the pursuit of which will facilitate deterrence and relief, including:  "affiliates, managed accounts or funds, past, present and future officers, board members, directors, principals, agents, servants, independent contractors, co-promoters, third-party sales representatives, medical liaisons, members, partners (general or limited), managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys and legal representatives, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals and advisors, trusts (including trusts established for the benefit of such Person), trustees, protectors, beneficiaries, direct or indirect owners and/or equityholders, parents, transferees, heirs, executors, estates, nominees, administrators, and legatees").

7.    Neither the Constitution nor the Bankruptcy Code authorize confirmation of a plan that overrides a State Attorney General's prosecutorial decision to continue to pursue the State's police power claims against non-debtor wrongdoers.  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1733 (2019) (Roberts, C.J.) ("[T]he decision whether to institute criminal charges is one our Constitution vests in state and federal executive officials, not judges."); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (Rehnquist, C.J.) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion").  To the contrary, a legion of Supreme Court and other precedent makes clear that the federal government may not expand its powers to intrude upon state executive branch law enforcement decisions on matters fundamentally reserved to States under the Constitution and Tenth Amendment.  *See, e.g, Sebellius*, 567 U.S. 529; *Printz*, 521 U.S. 898.  The States and their Attorneys General have a

unique responsibility and position — and, in the circumstances here, the sole legal authority — to make prosecutorial decisions about the needs of justice in the enforcement of State law. *Nieves v. Bartlett*, 139 S. Ct. at 1733; *Chaney.* And such decisions are not appropriately made through the process of adversarial adjudication by a specialized court in another state, insulated from political oversight, isolated from interaction with affected communities, public health officers, and law enforcement agents, and receiving information about concerns only through the adversarial presentation of refined evidence.

8.      The Sacklers are not debtors and are not insolvent. They are not the "subject of bankruptcies" nor is resolving the claims against them necessary to Debtors' reorganization. *See* U.S. Const. Art. 1, Sect. 8, Cl. 4. The States and others' direct claims against them do not involve Purdue's assets and will not prevent their reorganization. *See In re Johns-Manville Corp.,* 517 F.3d 52, 67 (2d Cir. 2008), rev'd and remanded sub nom. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). And with so much evidence that Congress wished, consistent with constitutionally established principles of federalism and of the limits of the judicial power, to preserve state police power litigation from a variety of Bankruptcy Code provisions, *see supra* ¶ 2, it is exceptionally clear that 11 U.S.C. § 105(a) does not permit non-consensual releases of State police power claims against unlawfully acting non-debtors.

9.      For the reasons stated by Connecticut and Washington, and for the foregoing reasons, the State of Maryland in the exercise of its sovereign authority to promote the health of its residents to determine the need for enforcement of its laws, objects to the Plan. "Congress did not intend for bankruptcy . . . to abrogate the States' police powers [or] be a haven for wrongdoers. *In re Berry Estates, Inc.*, 812 F.2d 67, 71 (2d Cir. 1987). The Plan should not be confirmed.

Dated July 19, 2021

Respectfully Submitted

BRIAN E. FROSH
Attorney General of Maryland


/s/ Brian T. Edmunds
BRIAN T. EDMUNDS
SARA E. TONNESEN
LAUREN E. KELLEHER
Assistant Attorneys General

Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, Maryland 21202
bedmunds@oag.state.md.us
(410) 576-6578

## <u>CERTIFICATE OF SERVICE</u>

I, Brian T. Edmunds, hereby certify that, on July 19, 2021, I caused true and correct copies of the foregoing document to be served (i) by the Court's Case Management/Electronic Case File (CM/ECF) System to all parties who are deemed to have consented to electronic service; (ii) by email upon the parties who provided email addresses set forth in the Master Service List maintained by the Debtors in respect of these chapter 11 cases; and (iii) by email upon the chambers of the Honorable Judge Robert D. Drain (rdd.Chambers@nysb.uscourts.gov) and the Office of the United States Trustee for the Southern District of New York (Attn: Paul K. Schwartzberg, paul.schwartzberg@usdoj.gov).

/s/Brian T. Edmunds