Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   PURDUE PHARMA L.P., et al.,   Case No. 19-23649 (RDD)

8                                 (Jointly Administered)

9        Debtors.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13               United States Bankruptcy Court

14               One Bowling Green

15               New York, New York 10004-1408

16

17               January 20, 2021

18               10:08 AM

19          HEARING HELD TELEPHONICALLY

20               VIA COURT SOLUTIONS

21

22

23  B E F O R E :

24  HON ROBERT D. DRAIN

25  U.S. BANKRUPTCY JUDGE

Page 2

1    Hearing re:  Motion of the Debtors for an Order Approving

2    Stipulation and Agreed Order Granting Joint Standing to

3    Prosecute Claims and Causes of Action Related to the

4    Insurance Coverage to (1) Official Committee of Unsecured

5    Creditors and (2) Ad Hoc Committee of Governmental and other

6    Contingent Litigation Claimants (ECF #2227)

7

8    Hearing re:  Objection to Motion (related document(s)2227)

9    filed by George Calhoun IV on behalf

10   of Ironshore Specialty Insurance Company. (ECF #2281)

11

12   Hearing re:  The Ad Hoc Group of Non-Consenting States

13   Statement in Support of Debtors Motion to Approve

14   Stipulation Granting Joint Standing to Prosecute Claims and

15   Causes of Action Related to the Debtors Insurance Coverage

16   to (1) the Official Committee of Unsecured Creditors and (2)

17   the Ad Hoc Committee of Governmental and Other Contingent

18   Litigation Claimants Filed by Andrew M. Troop on Behalf of

19   Ad Hoc Group of Non-Consenting States. (ECF #2289)

20

21

22

23

24

25

Page 3

1   Hearing re:  Reply in Support of the Motion of the Debtors

2   for an Order Approving Stipulation and Agreed Order Granting

3   Joint Standing to Prosecute Claims and Causes of Action to

4   the Insurance Coverage to (1) Official Committee of

5   Unsecured Creditors and (2) Ad Hoc Committee of Governmental

6   and other Contingent Litigation Claimants (related

7   document(s)2227) filed by Benjamin S. Kaminetzky on behalf

8   of Purdue Pharma L.P. (ECF #2292)

9

10  Hearing re:  Motion to Approve/Motion for Claim Payment, re:

11  Claims No. 10231, 615270, 615218 and 614341 with Certificate

12  of Service filed by Deborah Clonts (ECF #2059)

13

14  Hearing re:  Objection to Motion / Debtors' Omnibus

15  Objection to Deborah Clont's Motions to Approve Claimant

16  Payment and for Lift of Automatic Stay (related

17  document(s)2209, 2059, 2175) filed by James I. McClammy on

18  behalf of Purdue Pharma L.P. (ECF#2266)

19

20  Hearing re:  Motion for Lift of Automatic Stay filed by

21  Deborah Clonts (ECF #2175)

22

23

24

25

Page 4

1   Hearing re:  Debtors' Omnibus Objection to Deborah Clont's

2   Motions to Approve Claimant Payment and for Lift of

3   Automatic Stay (related document(s)2209, 2059, 2175) filed

4   by James I. McClammy on behalf of Purdue Pharma L.P.

5   (ECF #2266)

6

7   Hearing re:  Letter dated 12/21/2020 in support of Amended

8   Motion for Lifting of the Automatic Stay (dated 12/21/2020)

9   Filed by Deborah Clonts (ECF #2194)

10

11   Hearing re:  Amended Motion to Amend Motion for Lift of

12   Automatic Stay (related document(s)2175) filed by Deborah

13   Clonts (ECF #2209)

14

15   Hearing re:  Fifth Amended Order Extending Time to Object to

16   Dischargeability of Certain Debts (related document(s)1829,

17   1289, 700, 720, 1009, 1524) filed by Eli J. Vonnegut on

18   behalf of Purdue Pharma L.P. with presentment to be held on

19   1/19/2021 at 10:00 AM (ECF #2220)

20

21   Hearing re:  Objection to Debtors' Fifth Amended Order

22   Extending Time to Object to Dischargeability of Certain

23   Debts filed by Deborah Clonts (ECF #2270)

24

25

Page 5

1    Hearing re:  Debtors' Reply in Further Support of the Fifth

2    Amended Order Extending Time to Object to Dischargeability

3    of Certain Debts [Related to ECF No. 2220 and ECF No.

4    2270] filed by James I. McClammy on behalf of Purdue Pharma

5    L.P. (ECF #2287)

6

7    Hearing re:  Motion of Debtors for Entry of an Order

8    Extending Time to Object to Dischargeability of Certain

9    Debts (ECF #700)

10

11   Hearing re:  Order signed on 1/7/2020. Extending Time to

12   Object to Dischargeability of Certain Debts (ECF #720)

13

14   Hearing re:  First Order signed on 4/2/2020 Extending Time

15   to Object to Dischargeability of Certain Debts (related

16   document(s)720) (ECF #1009)

17

18   Hearing re:  Second Amended Order signed on 6/17/2020

19   Extending Time to Object to Dischargeability of Certain

20   Debts (ECF #1290)

21

22   Hearing re:  Third Amended Order signed on 7/27/2020

23   Extending Time to Object to Dischargeability of Certain

24   Debts to and including November 2, 2020 (ECF #1524)

25

Page 6

1    Hearing re:  Fourth Amended Order signed on 10/21/2020

2    Extending Time to Object to Dischargeability of Certain

3    Debts (ECF #1829)

4

5    Hearing re:  Motion to Intervene filed by KatieLynn B

6    Townsend on behalf of Dow Jones & Company, Inc., Boston

7    Globe Media Partners, LLC, and Reuters News & Media, Inc.

8    (ECF #2022)

9

10   Hearing re:  Statement / The Ad Hoc Group of Non-Consenting

11   States' Statement Regarding the Motion to Intervene and

12   Unseal Judicial Records by Dow Jones & Company, Inc.,

13   Boston Globe Media Partners, LLC, and Reuters News & Media,

14   Inc. (related document(s)2022) filed by Andrew M. Troop on

15   behalf of Ad Hoc Group of Non- Consenting States (ECF #2065)

16

17   Hearing re:  Statement in Support of Motion to Intervene

18   (related document(s)2022) filed by Paul A. Rachmuth on

19   behalf of Ad Hoc Committee on Accountability (ECF #2066)

20

21

22

23

24

25

Page 7

```
 1    Hearing re: Response /The NAS Children Ad Hoc Committee's

 2    Joinder to the Ad Hoc Group of Non-Consenting States'

 3    Statement Regarding the Motion to Intervene and Unseal

 4    Judicial Records by Dow Jones & Company, Inc., Boston Glob

 5    Media Partners, LLC and Reuters News & Media, Inc. (related

 6    document(s)2065) filed by Scott S. Markowitz on behalf of Ad

 7    Hoc Committee of NAS Babies (ECF #2090)

 8

 9    Hearing re:  Statement of The Raymond Sackler Family In

10    Respect of The Motion To Intervene And Unseal Judicial

11    Records By Dow Jones & Company, Inc., Boston Globe Media

12    Partners, LLC, and Reuters News & Media, Inc. (related

13    document(s)2022) filed by Gerard Uzzi on behalf of The

14    Raymond Sackler Family (ECF #2132)

15

16    Hearing re:  Debtors' Limited Objection to the Media

17    Intervenors' Motions to Intervene and Unseal Judicial

18    Records and Cross-Motion to Seal Certain Judicial Records

19    (related document(s)1828, 2188) filed by Benjamin S.

20    Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2252)

21

22    Hearing re:  Reply to Motion to Unseal (related

23    document(s)2022) filed by KatieLynn B Townsend on behalf of

24    Dow Jones & Company, Inc., Boston Globe Media Partners, LLC,

25    and Reuters News & Media, Inc. (ECF #2288)
```

Page 8

1   Hearing re:  Motion to Amend Proposed Order (related

2   document(s)2022) filed by KatieLynn B. Townsend on behalf of

3   Dow Jones & Company, Inc., Boston Globe Media Partners,

4   LLC, and Reuters News & Media, Inc. (ECF #2039)

5

6   Hearing re:  Notice of Adjournment of Hearing on Motion to

7   Intervene and Unseal (related document(s)2022) filed by

8   KatieLynn B Townsend on behalf of Dow Jones & Company, Inc.,

9   Boston Globe Media Partners, LLC, and Reuters News & Media,

10  Inc. (ECF #2091)

11

12  Hearing re:  Stipulation / Notice of Filing of Stipulation

13  and Agreed Order Regarding Media Intervenors' Motion to

14  Unseal Materials Filed in Connection with UCC Privilege

15  Motions and Adjournment of Hearing on Media Intervenors'

16  Motion to Unseal (related document(s)2022) Filed by Benjamin

17  S. Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2136)

18

19  Hearing re:  Stipulation and Agreed Order Signed on

20  12/15/2020 Regarding Media Intervenors' Motion to Unseal

21  Materials Filed in Connection with UCC Privilege Motions and

22  Adjournment of Hearing on Media Intervenors' Motion to

23  Unseal (related document(s)2022) (ECF #2140)

24

25

Page 9

1    Hearing re:  Debtors' Ex Parte Motion for Entry of an Order

2    Shortening Notice with Respect to Debtors' Motion for Entry

3    of an Order Sealing Judicial Documents (related

4    document(s)2252) filed by Benjamin S. Kaminetzky on behalf

5    of Purdue Pharma L.P. (ECF #2153)

6

7    Hearing re:  Declaration of Jon Lowne in Support of the

8    Debtors' Limited Objection to Media Intervenors' Motions to

9    Intervene (related document(s)2252) filed by Benjamin S.

10   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2154)

11

12   Hearing re:  Second Motion to Intervene and Unseal filed by

13   KatieLynn B Townsend on behalf of Dow Jones & Company, Inc.,

14   Boston Globe Media Partners, LLC, and Reuters News & Media,

15   Inc. (ECF #2188)

16

17   Hearing re:  Debtors' Limited Objection to the Media

18   Intervenors' Motions to Intervene and Unseal Judicial

19   Records and Cross-Motion to Seal Certain Judicial Records

20   (related document(s)1828, 2188) filed by Benjamin S.

21   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2252)

22

23

24

25

1    Hearing re:  Statement of the Raymond Sackler Family in

2    Respect of the Second Motion to Unseal Judicial Records by

3    Media Intervenors Dow Jones & Company, Inc., Boston Globe

4    Media Partners, LLC, and Reuters News & Media, Inc. (related

5    document(s)2132, 2188) filed by Gerard Uzzi on behalf of The

6    Raymond Sackler Family. (ECF #2265)

7

8    Hearing re:  Reply to Motion to Unseal (related

9    document(s)2022) filed by KatieLynn B Townsend on behalf of

10   Dow Jones & Company, Inc., Boston Globe Media Partners, LLC,

11   and Reuters News & Media, Inc. (ECF #2288)

12

13   Hearing re:  Debtors' Ex Parte Motion for Entry of an Order

14   Shortening Notice with Respect to Debtors' Motion for Entry

15   of an Order Sealing Judicial Documents (related

16   document(s)2252) filed by Benjamin S. Kaminetzky on behalf

17   of Purdue Pharma L.P. (ECF #2253)

18

19   Hearing re:  Declaration of Jon Lowne in Support of the

20   Debtors' Limited Objection to Media Intervenors' Motions to

21   Intervene (related document(s)2252) filed by Benjamin S.

22   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2254)

23

24

25

1    Hearing re:  Debtors' Ex Parte Motion for Entry of an Order

2    Shortening Notice with Respect to Debtors' Motion for Entry

3    of an Order Sealing Judicial Documents (related

4    document(s)2252) filed by Benjamin S. Kaminetzky on behalf

5    of Purdue Pharma L.P. (ECF #2253)

6

7    Hearing re:  Debtors' Limited Objection to the Media

8    Intervenors' Motions to Intervene and Unseal Judicial

9    Records and Cross-Motion to Seal Certain Judicial Records

10   (related document(s)1828, 2188) filed by Benjamin S.

11   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #2252)

12

13   Hearing re:  Debtors' Ex Parte Motion for Entry of an Order

14   Shortening Notice with Respect to Debtors' Motion for Entry

15   of an Order Sealing Judicial Documents (related

16   document(s)2252) filed by Benjamin S. Kaminetzky on behalf

17   of Purdue Pharma L.P. (ECF #2153)

18

19   Hearing re:  Second Motion to Intervene and Unseal filed by

20   KatieLynn B Townsend on behalf of Dow Jones & Company, Inc.,

21   Boston Globe Media Partners, LLC, and Reuters News & Media,

22   Inc. (ECF #2188)

23

24   Transcribed by:  William J. Garling, Pamela A. Skaw, and

25   Sherri L. Breach

Page 12

```
1   A P P E A R A N C E S :

2   DAVIS POLK & WARDWELL, LLP

3       Attorneys for Debtors

4       450 Lexington Avenue

5       New York, New York 10017

6

7   BY:  MARSHALL S. HUEBNER, ESQ.

8        BENJAMIN S. KAMINETZKY, ESQ.

9        JAMES I. MCCLAMMY, ESQ.

10

11   PILLSBURY WINTHROP SHAW PITTMAN, LLP

12       Attorneys for the Ad Hoc Group of Non-Consenting States
                  nd
13       31 West 52  Street

14       New York, New York 10019

15

16   BY:  ANDREW M. TROOP, ESQ.

17

18   GILBERT, LLP

19       Attorneys for the Ad Hoc Committee of Governmental and

20       Other Contingent Litigation Claimants

21       700 Pennsylvania Avenue, SE

22       Suite 400

23       Washington, DC 20003

24

25   BY:  RICHARD SHORE, ESQUIRE
```

```
                                                    Page 13
 1   A P P E A R A N C E S :

 2   AKIN GUMP STRAUSS HAUER & FELD, LLP

 3        Attorneys for the Official Committee of Unsecured

 4        Creditors

 5        One Bryan Park

 6        New York, New York 10036

 7

 8   BY:  SARA L. BRAUNER, ESQ.

 9        MITCHELL P. HURLEY, ESQ.

10

11   IFRAH LAW

12        Attorneys for Ironshore Specialty Insurance Company

13        1717 Pennsylvania Avenue, NW

14        Suite 650

15        Washington, DC 20006

16

17   BY:  GEORGE CALHOUN IV, ESQ.

18

19   JOSEPH HAGE AARONSON, LLC

20        Attorneys for the Sackler Family

21        485 Lexington Avenue

            th
22        30  Floor

23        New York, New York 10017

24

25   BY:  GREGORY P. JOSEPH, ESQ.
```

Page 14

1   A P P E A R A N C E S :

2   MILBANK, LLP

3        Attorneys for the Sackler Family

4        55 Hudson Yards

5        New York, New York 10001

6

7   BY:  ALEXANDER LEES, ESQ.

8

9   DEBEVOISE & PLIMPTON, LLP

10        Attorneys for Mortimer Sackler

11        919 Third Avenue

12        New York, New York 10022

13

14   BY:  MAURA K. MONAGHAN, ESQ.

15

16   REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS

17        Attorneys for the Media Intervenors
                   th
18        1156 15  Street, NW

19        Suite 1020

20        Washington, DC 20005

21

22   BY:  KATIELYNN B. TOWNSEND, ESQ.

23

24   APPEARING PRO PER:  DEBORAH CLONTS

25

Page 15

```
 1                    P R O C E E D I N G S

 2            THE CLERK:  Good morning, everyone.  My name is

 3    Brian, one of Judge Drain's court clerks.

 4            Just as a reminder, today's hearing is 100 percent

 5    telephonic, so we do ask everyone to please carry yourself

 6    with the same decorum you would inside the courtroom.

 7            Please remember to keep your lines muted when not

 8    speaking so we can avoid any unnecessary background invoices

 9    that may interfere with today's hearing, and make sure to

10    unmute yourself before speaking so that you are heard.

11            We do ask that everyone please state your name

12    each time that you speak so that the judge, all other

13    participants, and the recording for the transcriber can keep

14    track of who is speaking at all times.

15            Thank you, everyone, for your cooperation and your

16    participation, and the judge will be joining us in just a

17    few short minutes.

18            (Pause)

19            UNIDENTIFIED SPEAKER:  Hi, Dr. Jay

20    (indiscernible).

21            THE COURT:  Good morning, this is Judge Drain.

22            We're here on the omnibus hearing date in January

23    for Purdue Pharma, L.P. et al.  This hearing is completely

24    telephonic.

25            You should identify yourself and if you're a
```

Page 16

1    lawyer or your client, the first time you speak, you should

2    do so thereafter so there's no doubt that the court reporter

3    can put together your name with your voice.

4              Because this hearing is completely telephonic, you

5    should keep your phone on mute unless you are speaking, of

6    course, another which point you should unmute yourself.

7    There's one authorized recording of these hearings.  It's

8    taken on a daily basis by Court Solutions and provided on a

9    daily basis to our Clerk's Office.

10             If you want a transcript of the hearing on your

11   matter, you should contact the Clerk's Office to arrange for

12   the production of one.

13             So, with that introduction, I have the amended

14   agenda for these omnibus hearings, which came in yesterday

15   and I'm happy to go down that agenda in the order that the

16   agenda lists the matters.

17             MR. HUEBNER:  Thank you, Your Honor.

18             Let me first do a sound check.  This is Marshall

19   Huebner of Davis Polk, on behalf of the Debtors.

20             Can you Court hear me clearly?

21             THE COURT:  Yes, I can hear you fine.  Thanks.

22             MR. HUEBNER:  Terrific.

23             Good morning, Your Honor.  Happy new year, on this

24   important day, obviously, on events far outside of this

25   case.

Page 17

1           As is our custom, I would like to give a brief,

2     and actually in today's case, an unusually brief overall

3     case update before turning to the agenda.

4           Number one, Your Honor, good news on the Noramco

5     front.  So, I would like to note for the benefit of the

6     Court and all parties, that the Noramco Coventry sale that

7     was approved by motion last year closed on December 31st,

8     2020, as we hoped it would.  You know, with all the issues

9     going on in this case (indiscernible) other cases would be

10    very important case developments risked being lost entirely.

11    As we stated in our September 14th motion, this sale will

12    inject significant incremental value into the estate by

13    reducing the cost to Purdue of obtaining necessary active

14    pharmaceutical ingredients for various products.

15          And now that the transaction has closed, I'm very

16    pleased to report that we think that the savings will be

17    even greater than we had projected and will likely,

18    substantially feed $100 million, frankly, of incremental

19    value to stakeholders, which is, in the context of this

20    case, and given the unexpected uses of the estate's value,

21    is particularly important.

22          Number two, Your Honor, very briefly, what I would

23    call cash balance and health of the business.  So that the

24    Court knows, the Debtors' cash balance as of our last

25    publicly filed MOR is $1.275 billion, which, remarkably, is

Page 18

1    pretty close to what the considerable cash balance was on

2    the petition date almost a year and a half ago.

3              So that it's clear to all parties, this most

4    assuredly has not been achieved through increase or even in

5    the maintenance of the level of opioid sales.  In fact, if

6    you look at the November MOR and compare it to the one from

7    a year ago, you would see that our net sales are actually

8    down about 22 percent from the same month a year ago;

9    rather, the cash balance is a result of prudent, strategic

10   decisions and stewardship.  It's all the more impressive

11   when you consider the extraordinary burdens of this case

12   both, in soft and hard costs.

13             The complex underlying pharmaceutical business,

14   which obviously has many products, not just OxyContin, as I

15   have said a few times before over the last many months,

16   often gets lost in our various discussions of Purdue as a

17   Defendant or Purdue as a Debtor and the businesses, in fact,

18   have been managed and then performed exceptionally well in

19   the face of the truly extraordinary costs and enormous

20   challenges of these Chapter 11 cases and, of course, the

21   national climate and the pandemic, which has obviously

22   resulted in our highly regulated, you know, factories and

23   other facilities and even more extraordinary restrictions

24   that, you know, were further had to be dealt with and

25   addressed.

1          Number three, Your Honor, very briefly, on the PHI

2    initiatives, just a quick update since we did turn the year-

3    end, the Debtors have continued to progress their public

4    health initiative since each was last discussed with the

5    Court.  We, of course, fully understand and has made clear

6    many times that what happens with the Debtors' assets, post-

7    emergence, including with respect to the scope and the costs

8    of PHI initiatives is an issue whose precise contours are to

9    be worked out with the relevant stakeholders, but while in

10   Chapter 11, as we've also said many times, the company's job

11   continues to be on a cost-effective way advancing these

12   important public health initiatives so that decisions can

13   then be made.

14          As a reminder, we were last before the Court on

15   this topic on June 23rd, 2020, almost seven months ago.  And

16   since then, there have been, which I will very quickly tick

17   through, a couple of -- several, actually, very important

18   milestones.  Number, with respect to Nalmefene, which is the

19   medication intended to reverse opioid overdoses, the Debtors

20   in December filed with the FDA, an abbreviated new drug

21   application, known in the field as an NDA, for approval of

22   the vial version, V-I-A-L, of Nalmefene, and the approval of

23   the other forms, including the autoinjector, which I'm sure

24   the Court remembers, we discussed at some length, are on

25   track as well.  The target submission date for the prefilled

Page 20

1    syringe is May 2021 and the autoinjector target filing date

2    is May 2022.

3          With respect to the Debtors' generic version of

4    suboxone tablets, which is one of the leading, current

5    opioid addiction treatments, the FDA approved the Debtors in

6    March and as of May 2020, Purdue's generic suboxone tablets

7    were manufactured and ready for shipment.  So, that one is

8    already at fruition.

9          With respect to the thing we discussed most

10   recently, which is the HRT, low-cost, over-the-counter

11   naloxone nasal spray, to take it out of the world of

12   prescription and hopefully lower the cost dramatically for

13   the whole country, really, this is the medicine that is

14   similar no NARCAN and is intended to be used to reverse

15   opioid overdoses.

16         One clinical trial is required by the FDA

17   (indiscernible) approval.  That actually commenced in

18   September 2020, which followed the FDA's tentative approval

19   of RIVIVE, R-I-V-I-V-E, as the trade name, in May 2020.

20         The target, new-drug application submission date

21   for OTC naloxone is the third quarter of this year with

22   approval and launch both expected in the year thereafter.

23         So, I am happy to report since we, as you know,

24   and many others candidly think that these are extremely

25   important medications, that PI is progressing on track.

1              The last topic, Your Honor, before we go to the

2    agenda is where we are, you know, the end of exclusivity,

3    other upcoming dates in the case and the status of

4    mediation, which I will touch very lightly, but I think a

5    couple of very quick updates are important.

6              Obviously, Your Honor, it's not lost on anyone

7    dialed in this morning to the hearing that you ruled at our

8    last hearing that the mediation will be concluding on

9    January 31, which, at this point, is 11 days away and after

10   that, of course, exclusivity, as the Debtors requested, ends

11   on February 15th.

12             But February 15th is actually a critically

13   important date in this case for a second reason, as well.

14   The extraordinary injunction originally granted by this

15   Court on October 11th, 2019, is currently slated to expire

16   on March 1 and the deadline by which the Debtors have to

17   file a motion to extend that injunction, with respect to

18   either or both of the Debtors and the shareholder-related

19   persons is in fact February 15th on the motion that we

20   expect to be heard at the March 1 hearing at 10:00 a.m.

21             With respect to these issues, I think it's very

22   important for the Court and all parties to understand that

23   unless a settlement has been reached with the shareholders

24   by February 15th or the Debtors believe that one will very

25   soon be reached on or about that date, as I stand here today

Page 22

1   it is very difficult for me to conceive of a circumstance in

2   which the Debtors would, on February 15th, move to extend

3   the injunction, with respect to the shareholder-related

4   (indiscernible).

5        So, that brings us back to February 15th, which is

6   26 days from today.  With respect to the mediation, as the

7   Court and the parties are, of course, also aware, we are

8   extremely limited, as we should be, by the confidentiality

9   provisions and the mediation order we asked this Court to

10  enter as to what we can report.  That said, I don't think

11  it's telling any tales out of school today that we are not

12  currently where we need to be or, of course, I would be

13  standing here today making a good news announcement and I am

14  clearly not doing that.

                                           th
15       We have 26 days until February 15 , and we are

16  working as hard as we know how to on many, many issues with

17  many parties.  And on or about February 15th, we will, as we

18  have been ordered to, as, of course, must because of

19  exclusivity, file the best plan then possible, which we hope

20  will have widespread support, even if it does not yet have

21  complete consensus.

22       As Your Honor has told us again, and again, and

23  again, including on June 3rd, July 23rd, September 30th, and

24  December 15th, work hard to build consensus, but the Court

25  understands the likelihood that everyone will be onboard

Page 23

1    with all aspects as of any particular date, and that the

2    Debtors need to take the conversations as far as they can,

3    but also need to move the cases forward and not let the

4    perfect be the enemy of the good.

5            I will cite only three examples for context and

6    then turn the agenda over.  On June 3rd, 2020, you said, and

7    I quote:

8            "The parties in this case need to realize that the

9    results in this case cannot be exactly what they want.

10   Perfection is not achievable here... I want this case to

11   move ... and one way to do that is to tell the Debtors we

12   don't need consensus on everything."

13           On July 23rd, 2020, you said:

14           "I sincerely hope that that's an agreement that

15   involves and includes all the mediation parties, but, again,

16   having served in that role many times, I know that sometimes

17   you can't achieve that.  Maybe you get all but one, for

18   example.  I'm not expecting complete consensus ... so I

19   would urge the parties, as I did last month, to put aside

20   the perfect and agree on the good and move on with things to

21   the next stage of this case."

22           And then, finally, and even in more direct context

23   on December 15th, you said:

24           "The parties don't have to reach agreement, but I

25   urge them to do their best to do so by January 31 on these

Page 24

1    issues so that if possible, a settlement is reached on both

2    the Debtor claims and potentially the third-party claims ...

3    the parties simply need to conclude these negotiations so

4    the plan can be filed because as we all know, every day that

5    passes, some poor soul is not getting either the counseling

6    that he or she needs or the treatment that he or she needs

7    or a NAF baby is no longer a baby and their grandparents are

8    not getting the help they need."

9            We will of course follow the Court's clear and

10   consistent admonitions.  Candidly, Your Honor, I don't know,

11   as I stand here today, exactly what plan we will be filing.

12   We have 26 days left and we know that the relevant parties

13   will remain intentionally and fully engaged both, through

14   the end of mediation on January 31, as well as the first two

15   weeks in February.

16           But I can assure you, Your Honor, that we will

17   file the best plan we can, based on where we are in the

18   middle of February.  With that, Your Honor, unless the Court

19   has any questions, I would propose to proceed with the

20   agenda.

21           THE COURT:  Okay.  Thanks for the update.

22           I don't have any questions.  I don't know if

23   there's anything that anyone, for example, the committee,

24   wants to respond to or whether to just move on to the

25   agenda.  So, I'll pause for a moment if someone wants to

Page 25

1    address anything that Mr. Huebner has not covered in his

2    opening remarks?

3              (Pause)

4              THE COURT:  Okay.  Then, why don't we proceed down

5    the agenda.

6              MR. HUEBNER:  Terrific, Your Honor.

7              Item 1 on the agenda is a contested matter which

8    is the Debtors' motion.  I would ask my partner, Mr.

9    Kaminetzky, if he would step up to the electronic podium and

10   handle the motion to approve the insurance stipulation.

11             THE COURT:  Okay.

12             MR. KAMINETZKY:  Good morning, Your Honor.  May I

13   please the Court, Benjamin Kaminetzky of Davis Polk on

14   behalf of Purdue, its 22 subsidiaries, and Purdue Pharma,

15   Inc., its general partner.

16             Can you hear me all right?

17             THE COURT:  Yes, I can hear you fine.  Thanks.

18             MR. KAMINETZKY:  So, Your Honor, I'll be

19   addressing the Debtors' motion for the Court to approve the

20   stipulation agreed order granting joint standing to

21   prosecute the Debtors' insurance causes of action to the UCC

22   and the ad hoc committee, which I'll refer to together as

23   "the committees."

24             The stipulation represents an almost unprecedented

25   occasion in these cases where relief has been requested

Page 26

1    and/or supported by both estate fiduciaries, the Debtors,

2    and the UCC, by the ad hoc committee, and by the non-

3    consenting states group, whose statement in support is at

4    Docket Number 2289.

5          I'll also be responding to the single objection

6    filed by Ironshore Specialty Insurance, formerly known as

7    TIG, one of the Debtors' insurers.  I will refer to them as

8    "TIG."

9          Now, consistent with the coordination and

10   cooperation among the Debtors and the committees that the

11   stipulation embodies, the committees have left it to me to

12   present the argument on this motion and my colleagues from

13   Akin and the Gilbert firm will step in only on rebuttal or,

14   of course, if the Court has any questions specifically for

15   one of them.

16         Your Honor, three sentences of context.  Debtors

17   and certain related parties are insureds, pursuant to over

18   100 insurance policies covering periods between 2001 and

19   2018 from over 30 insurance groups, which together provide

20   over $3 billion of coverage limits for, among other things,

21   product liability, general liability, and D&O liability.

22   Aside from approximately $275 million that has been

23   exhausted or is insolvent, this coverage remains

24   unexhausted.  The collective proceeds of this remaining

25   coverage is a very large substantial asset of the Debtors'

Page 27

1    estate to say the least.

2            Now, the stipulation reflects the Debtors'

3    judgment that is in the best interests of the estates for

4    the Debtors and the committees to cooperate and share

5    responsibility for pursuing the Debtors' insurance proceeds,

6    in which they all share a common interest.  The Debtors and

7    the committees, of course, hope to obtain these proceeds

8    through consensual resolution with our insurers, but certain

9    insurers have been unwilling to engage in productive

10   negotiations.

11           Now, given that intransigence, the Debtors and the

12   committees must prepare and be in a position to seek

13   litigated relief.  This stipulation accomplishes the goals

14   of cooperation and coordination through the following means.

15   Briefly, Your Honor, first it confers joint standing, so-

16   called Housecraft standing on the committees, and authorized

17   the committees jointly as co-Plaintiffs and co-parties with

18   the Debtors to assert, litigate, and resolve any or all

19   claims, causes of action, disputes, or other matters related

20   to Debtors' insurance on behalf of the estates.

21           To be clear, the Debtors will share their standing

22   with the UCC and the ad hoc committee.  This is not STN and

23   it's not Commodore; it's Housecraft.  The Debtors and the

24   committees are committed to cooperating and coordinating in

25   regards to the Debtors insurance causes of action.

Page 28

1          Importantly, Your Honor, nothing in this, as

2     stated in the stipulation in recital J, nothing in the

3     stipulation order shall predetermine the terms of a plan of

4     reorganization or bind a post-emergence entity after the

5     effective date of any plan of reorganization in these

6     Chapter 11 cases; in other words, this stipulation does not

7     address or affect who will have the authority to prosecute

8     the Debtors' insurance causes of action after the effective

9     date of the plan of reorganization and the emergence from

10    bankruptcy, at which point, if the insurance issues are not

11    resolved, (indiscernible) will transfer to the post-

12    emergence entity in charge of pursuing any of the Debtors'

13    remaining insurance proceeds.

14          Now, second, the stipulation states that the

15    Debtors will not seek approval of any settlement related to

16    the insurance causes of action without the consent of at

17    least one of the committees and neither of the committees

18    will seek such approval without the consent of the Debtors.

19    The point of this provision, Your Honor, is to avoid

20    disputes and minimize the need to any messy litigation over

21    any proposed insurance settlement.

22          Your Honor, the motion, stipulation are a

23    straightforward application of the Second Circuit's decision

24    in Housecraft.  Housecraft, as Your Honor well knows,

25    confirmed that a Debtor, like Purdue here, may consensually

Page 29

1      request, as we have done, that the Court vest committees of

2      creditor or even a single creditor with joint standing to

3      pursue estate causes of action alongside the Debtor, so long

4      as it's in the best interest of the bankruptcy estate and

5      necessary and beneficial to the fair and efficient

6      resolution of the case.

7              No one, not even TIG suggests that the motion and

8      stipulation are not necessary and beneficial to the fair and

9      efficient resolution of the case.  So, there's only one

10     issue before Your Honor today, and that's whether it is in

11     the best interests of the estates for the Court to confer

12     joint standing to the committee under the terms of

13     stipulation consistent with Housecraft and its progeny, so

14     that the committees can coordinate and participate with the

15     Debtors in pursuing the Debtors' insurance causes of action.

16             And we submit, Your Honor, that the answer here is

17     easy and it's an easy yes.  The proposed insurance

18     stipulation sets up a cooperative framework and marshals the

19     resources available to the estates, including the expertise

20     of ad hoc committee's insurance recovery counsel in order to

21     maximize recovery from the Debtors' insurance causes of

22     action, while at the same time, minimizing any need of the

23     parties to the stipulation to jockey for position, second-

24     guess each other, or to litigate related insurance issues

25     among the estate's key constituencies.

1          A single, focused voice aimed at maximizing

2     recoveries is most certainly in the best interests of the

3     estate.  And arriving at an efficient process to pursue

4     proceeds from the Debtors' insurance is critical to the fair

5     and efficient resolution of these cases, as the Debtors'

6     insurance represents one of the estate's most important

7     assets, when faced with resolving over 600,000 claims filed

8     by claimants asserting over $140 trillion in liability.

9          Your Honor, not one of the claimants that filed

10    these 600,000 claims in these cases has objected to the

11    Debtors' motion or second-guessed the judgment of the

12    Debtors, the UCC, and the ad hoc committee, not one.  The

13    only party to object is TIG, one of the Debtors' insurers,

14    and likely a future target of efforts to prosecute the

15    Debtors' insurance causes of action.

16         TIG's objection to what really amounts to an

17    administrative motion is understandably.  It has only to

18    gain from obstructing efforts to bring any proceeds from the

19    Debtors' insurance into these estates and it is only TIG and

20    not the estates themselves, as TIG attempts to suggest, that

21    stands to lose if the motion is granted.  That alone is

22    enough reason to question TIG's argument that the

23    stipulation is not in the estate's best interests, but most

24    importantly, each of their arguments fails on its merits, as

25    well.

Page 31

```
 1              First, TIG argues that the UCC, a committee,

 2    should not be allowed to participate in insurance disputes

 3    because the information TIG would seek in a dispute might

 4    increase Debtors' exposure to claims brought by the

 5    committee's constituents.  Well, as Your Honor well knows,

 6    the information sharing in these cases between the Debtors

 7    and the committees has been extensive and extraordinary and

 8    that is even after the massive amounts of discovery on these

 9    issues and the thousands of prepetition lawsuits before we

10    even entered this courtroom.  So, the notion that discovery

11    in an adversary proceeding regarding the Debtors' insurance

12    causes of action would somehow expose the Debtors to

13    additional exposure in a bankruptcy case with over 600,000

14    proofs of claim asserting over $140 trillion in liability

15    is, respectfully, absurd.

16              Second, TIG argued that an ad hoc committee's

17    involvement will not benefit the estates because claims of

18    government creditors are not covered by insurance.  Setting

19    aside the fact for a moment that this is simply not true,

20    that TIG's policies did not cover claims of government

21    entities, which the Debtors and committees will be happy to

22    address upon full briefing at the appropriate time, there is

23    clearly a benefit to all creditors, including those

24    represented by the ad hoc committee to increase the source

25    of value available for distribution to other creditors, so
```

Page 32

1    as to preserve their own share of estate value.

2            Third, TIG argues that the hourly rate of the ad

3    hoc committee's insurance counsel is higher than the rate of

4    the Debtors' insurance counsel; respectfully, this

5    completely misses the point.  The stipulation is not about

6    legal-rate arbitrage.  The point is that the Debtors will

7    certainly have to pay for this work once and that all

8    parties will benefit from coordination, so that the Debtors

9    do not have to pay for this work twice or three times.  This

10   stipulation ensures that.

11           Fourth, TIG objects to a purported veto right that

12   the committees have over any settlement by the Debtors.  As

13   discussed, Your Honor, the stipulation provides that the

14   Debtors will now file a 9019 motion for improve an insurance

15   settlement without the consent of at least one of the

16   committees.  This is designed to minimize the chance and

17   expense of litigation among the estate's chief

18   constituencies.  This is a sound exercise of the Debtors'

19   business judgment and was agreed to build trust and display

20   a unit of purpose.

21           And, by the way, assuring insurers that a

22   settlement is a settlement and not an opportunity to get

23   salami-sliced by others in a contested 9019 process is, I

24   think, a positive, not a negative.

25           Your Honor, at the end of the day, TIG opposes

Page 33

1    this stipulation because it has a very significant interest

2    in reducing any insurance recovery by the estates.  Since

3    the estate's best interests are contrary, this Court should

4    approve this settlement.

5              So, the two elements of Housecraft are satisfied,

6    and I could stop here, but, Your Honor, TIG attempts to cite

7    that the straightforward application of Housecraft by

8    arguing that general state law limits on creditor standing

9    would somehow limit standing under federal bankruptcy law.

10   This is fundamentally mistaken.  Federal bankruptcy law, not

11   state law, governs the question of which party or parties

12   may bring an estate cause of action on behalf of a Debtor.

13   And where federal bankruptcy law provides that another party

14   may bring an estate cause of action, be it a trustee or a

15   committee or a creditor that has standing, whether under

16   state law, a creditor or committee would also have separate

17   standing to bring the claim is simply not relevant at all.

18             Indeed, to be crystal clear, the committees do not

19   contend that they currently have standing to pursue the

20   Debtors' insurance proceeds, independent of the Debtor under

21   New York, Delaware, or any other state's law.  If the

22   committee did so believe, the motion would be unnecessary.

23             It is therefore no surprise that TIG cites no

24   Second Circuit authority that puts any state law constraints

25   on Housecraft standing.  Indeed, Judge Wiles over the summer

Page 34

1    rejected any attempt to import state law standing doctrines

2    into bankruptcy standing, and I'm referring to the McClatchy

3    case that we heard in July that we included a discussion in

4    our brief.

5             In that case, Judge Wiles explained that what a

6    committee seeks to do under the STN trilogy is to be

7    authorized:

8             "To act as the estate representative to pursue the

9    claims that belong to the estate and to do so as a matter of

10   federal bankruptcy law, not state law."

11            In other words, slightly paraphrasing Judge Wiles,

12   and I'm again quoting, the committee is not asking the Court

13   to permit a derivative claim under the authority of Delaware

14   law or under other state law because, again, "the claims at

15   issue here plainly belongs to the Debtors' estate and should

16   be pursued on behalf of the estate."

17            Now, TIG relies on a few decisions from the

18   District of Delaware, which appear to hold that a committee

19   vested with standing to sue, sues not as the estate, but as

20   a collection of creditors and, thus, only maintains suits

21   that a creditor could maintain under state law.  And I'm

22   referring to the cases they cite, the Dura case, the HH

23   Liquidation case, Citadel.  But these decisions are simply

24   inconsistent with the Second Circuit's STN, Commodore,

25   Housecraft jurisprudence.

1            The Second Circuit makes clear that a party vested

2      with standing is not prosecuting a cause of action that may

3      prosecute it in its own name, but rather, is suing in the

4      name of the estate by suing alongside with or stepping into

5      the shoes of the Debtor.

6            Now, perhaps these decisions flow from the fact

7      that the Third Circuit's Cybergenics doctrine is somewhat

8      different from the Second Circuit's doctrine.  Among other

9      important differences, Cybergenics does not provide an

10     analog of Housecraft.  But, in any event, it's clear that

11     these cases have no application to this case because the

12     committees here would be sharing the Debtors' standing, just

13     as a creditor in Housecraft shared the standing of the

14     trustee.

15           And as a reminder, Your Honor, the Second Circuit

16     in Housecraft went so far as to emphasize that:

17           "The case for recognition of a creditor's standing

18     ... is more compelling, whereas here, the trustee or Debtor-

19     in-possession, is also named plaintiff."

20           Second, TIG also conflates the concept of

21     Housecraft standing on the one hand and attempts by a

22     committee to intervene in a Debtors' cause of action in its

23     own right under 1109(b), which provides that parties in

24     interest have a right to appear and be heard.  But the

25     proposed insurance stipulation is not grounded on 1109, so

Page 36

```
 1    this entire line of TIG's argument is simply irrelevant and

 2    in addition to being irrelevant, it's also completely wrong.

 3            It's clear under Second Circuit decision in Caldor

 4    in 2002, that even in the absence of the stipulation, the

 5    committees would undoubtedly have an unconditional right to

 6    intervene and to appear and be heard in every adversary

 7    proceeding involving the Debtors' insurance causes of

 8    action.  And, further, because Caldor's holding does not

 9    draw the core/non-core distinction that TIG hopes to

10    interject, TIG's attempt to raise and litigate that issue

11    now as opposed to do and in connection with full briefing in

12    an adversary proceeding regarding the Debtors' insurance

13    causes of action is not only procedural improper, but it's

14    just plain wrong.

15            Also, the allegedly, factually similar -- that's a

16    quote -- case identified by TIG to support its position,

17    that case out of Alaska, the Catholic Bishop case suffers

18    from at least three defects.  First, it did not involve a

19    Debtors' consent to a committee gaining standing, but,

20    rather, was addressing 1109(b).  Second, the Court there, I

21    believe it mistakenly conflated the interests of the

22    committee with those of an individual tort claimant.  And

23    most importantly, in addressing Section 1109(b), the Court

24    there expressly rejected Caldor, which is binding, Second

25    Circuit precedent for the principle that a creditor has
```

Page 37

1    unconditional rights to intervene in an action commenced by

2    a Debtor and, instead, cited other Circuit's approach to

3    intervention.

4         Your Honor, finally, TIG's express attempts to

5    litigate the motion for relief from stay without notice in

6    summary fashion in a paragraph is entirely improper and

7    should be denied at this time without prejudice.

8    Procedurally, this motion was never adjourned or re-noticed

9    as direct by the Court at the January 24th, 2020, omnibus

10   hearing, and TIG raising the issue in an objection to an

11   unrelated motion certainly does not comply with the 21-day

12   notice requirement that is required under the case

13   management order for all motions to lift stay.

14        Substantively, as noted in the Debtors' reply,

15   TIG's motion for relief from stay is still inappropriate for

16   decision and should be denied.  As foreshadowed by the

17   stipulation and TIG's vociferous objection to it, it is

18   likely to be very soon that the Debtors and committees

19   decide to litigate in this court the claims TIG argues

20   should be subject to arbitration.

21        When that happens, the parties to the proceedings

22   will be able to fully brief and argue those important

23   issues, but that day is not today.

24        In sum, Your Honor, it is clear that TIG has

25   fallen well short of demonstrating that the stipulation is

Page 38

1    not in the best interests of the estates and the silence and

2    assent of each and every one of the creditors of these

3    estates certainly speak much louder than the self-serving

4    suggestion of a target insurer that it knows better than

5    everyone else what is in the estate's best interests.

6           Accordingly, TIG's objection should be overruled

7    in its entirely, the Debtors' motion should be granted, and

8    the proposed insurance stipulation, among the Debtors, the

9    UCC, and the ad hoc committee should be entered.

10           Your Honor, unless you have any questions, I would

11    propose to turn the podium over to my colleague Andrew

12    Troop, representing the non-consenting states, who I believe

13    wants to be heard on this issue, as well.

14           THE COURT:  Okay.  Well, I do have one question,

15    and I probably ought to hear -- well, I should definitely

16    hear from you.  I should also hear in anyone who's a party

17    to this stipulation disagrees with your answer.

18           The Debtors' response to the objection by TIG, or

19    T-I-G, relies largely and ultimately, perhaps entirely, on

20    the concept embody in the Commodore and Housecraft cases,

21    that when one is conferred standing under those cases, one

22    has standing to bring the Debtors' causes of action on

23    behalf of the estate, generally, the 541 estate.

24           And in reading the stipulation, paragraph I, which

25    starts on page 3 defines the term Debtors' insurance causes

1    of action and, at least, based on the plain terms of the

2    defined term, Debtors' insurance causes of action, it would

3    appear clear to me that what the parties are agreeing to

4    cooperate on and for which standing is conferred or joint

5    standing along with the Debtor, ala Housecraft, are causes

6    of action that belong to the Debtor.

7            The definition that precedes the defined term

8    arguably could be read a little more broadly.  It is any and

9    all claims, causes of action, disputes, or other matters

10   regarding the Debtors' insurance.  And the authorization

11   paragraph, paragraph 1 on page 4, says subject to the terms

12   of the stipulation and order, the official committee and the

13   ad hoc committee are hereby granted leave, and shall each

14   have joint standing with the Debtors to assert, litigate,

15   and resolve in each case, co-plaintiffs and co-parties with

16   the Debtors, any and all claims, causes of action, disputes,

17   or other matters regarding the Debtors' insurance causes of

18   action on behalf of the Debtors' estates.

19           Now, I read that to mean in paragraph 1,

20   particularly in light of the last clause, to be on behalf of

21   the Debtors' estates and no one else.  One could, I guess,

22   argue that the cooperation provisions of this stipulation

23   could also cover potentially actions that the two committees

24   might have on their own, but I just want confirmation that

25   that's not what's contemplated here.  What's contemplated is

1       actions on behalf of the Debtors' estates, exclusively.

2               Is that correct?

3               MR. KAMINETZKY:  One hundred percent, Your Honor.

4       That is my intention and apologies if it's unclear.  But

5       it's a purely, you know, Housecraft, you know, they can

6       jointly assert with us, (indiscernible) you know, the

7       insurance causes of action that the Debtors have, it doesn't

8       mean to expand or include anything else, other than the

9       Debtors' causes of action.

10              THE COURT:  Okay.  I don't think it's unclear, but

11      in my experience in insurance litigation, at times,

12      perfectly clear language can be asserted to be unclear and I

13      wanted the record to be clear that this stipulation pertains

14      only to Debtors' estate causes of action or causes of action

15      that belong to the Debtors and their estate.

16              And I mean assuming from the silence by the ad hoc

17      committee and the official committee that that's their view,

18      also.

19              MR. SHORE:  Your Honor, this is Richard Shore of

20      Gilbert, LLC on behalf of the ad hoc committee, and I can

21      confirm that, as well, on behalf of the ad hoc committee.

22              THE COURT:  Okay.

23              MS. BRAUNER:  Good morning, Your Honor.

24              Sara Brauner, Akin Gump, on behalf of the official

25      committee.  We confirm it, as well.

Page 41

1                    THE COURT:  Okay.  Very well.

2                    All right.  That was my one question, and I am now

3        going to hear briefly from, I think, the non-consenting or

4        the ad hoc committee of non-consenting states.  I believe

5        that's who you were going to introduce, Mr. Kaminetzky, and

6        anyone else in support of this motion, if they want to say

7        anything more.

8                    MR. KAMINETZKY:  That's correct, Your Honor.

9                    Mr. Troop has to say something in support and, as

10       I mentioned, in the up front, unless Your Honor has specific

11       questions, which, indeed, the committee and the official

12       committee and the ad hoc committee was just relying on me,

13       subject to any rebuttal.

14                    THE COURT:  Okay.  Very well.

15                    MR. TROOP:  Thank you, Your Honor.

16                    This is Andrew Troop, on behalf of the ad hoc

17       group of non-consenting states.  I hope that I am clearly

18       audible.

19                    THE COURT:  I can hear you fine, thanks.

20                    MR. TROOP:  Thank you, Your Honor.

21                    Your Honor, I will be brief.  As Mr. Kaminetzky

22       said, I think other than coming before you and asking for an

23       adjournment, this may be the first time that the four major

24       active groups in this case are here with a united view as to

25       what is in the best interests of these estates, and to be

Page 42

1    clear, the non-consenting states group not only believes

2    it's in the best interests of these estates for the Debtors'

3    insurance causes of action to be asserted, litigated, if

4    possible, resolved now, but it is in the best interests of

5    these estates for it to be done by this triad of parties.

6           They represent a broad cross-section.  Two are

7    fiduciaries.  One, in particular, the ad hoc committee's

8    lawyers are, you know, at the Gilbert firm, this is what

9    they do and they do so well, efficiently, and always with

10   the view towards what advances the best interests of the

11   estate in the recognition that the monetization of the

12   Debtors' insurance policies will, regardless of how this

13   case resolves itself through a plan of reorganization,

14   benefit all creditors.

15          We are supportive.  We are also very -- we think,

16   also, that the recognitions in the motion and in the

17   statement of common interests that not only the Debtors'

18   committee and the ad hoc committee have, but other

19   committees have.  We think that's absolutely right, and we

20   are confident that the checks and balances put into the

21   stipulation to ensure efficiency and voice are the right way

22   to go here.

23          We are also convinced and can understand that we

24   will be on the side parties in the sense of we are common

25   interests parties, and we will be kept apprised and the

1    like, but no more lawyers were necessary, and no more

2    representatives were necessary to achieve the goals here

3    that everyone shares.

4           So, I won't repeat anything on the legal side,

5    which Mr. Kaminetzky covered fully, but at its core, this

6    stipulation strikes the appropriate balance to advance the

7    Estate's interests at a time when it's important to do so

8    and I would urge the Court to approve it.  Thank you, Your

9    Honor.

10          THE COURT:  Okay.  Thank you.

11          All right.  I should have said this at the

12   beginning.  I've read the pleadings on this and having heard

13   oral argument on behalf of the movants, I'm happy to hear

14   oral argument on behalf of TIG, although, again, I have

15   reviewed the pleadings from both sides.

16          MR. CALHOUN:  Good morning, Your Honor.

17          This is George Calhoun of Ifrah Law on behalf of

18   Ironshore Specialty Insurance Company, formerly known as TIG

19   Specialty Insurance Company.  I also have Josh Wirtshafter

20   of Kennedys, who's counsel in the pending arbitration.

21          Can you hear me okay, Your Honor?

22          THE COURT:  Yes, I can hear you fine, Mr. Calhoun.

23          MR. CALHOUN:  Okay.  Thank you, Your Honor.

24          So, I know you've read the pleadings.  I won't

25   repeat what's in there, but I did want to respond and

1   address to some of the points raised by counsel for Purdue.

2   First, I appreciate the clarification that they're relying

3   strictly on Housecraft, not on 1109(b).  Housecraft is,

4   obviously, a controlling Second Circuit decision and

5   depending on how Your Honor interprets it, it's either not

6   applicable or there's a Circuit split, or a third

7   possibility is it's got to be simply applied and find that

8   there's a -- it's not in the best interests of the estate

9   and let me explain why.

10        Housecraft dealt with an avoidance action under

11   Section 548 and in that case, the creditor in that case,

12   BMT, funded the litigation that the trustee otherwise could

13   not undertake, and so it provided a clear benefit to the

14   estate's causes of action, otherwise it would not have been

15   brought at all.  So, Housecraft, so that situation is

16   completely different than this case where the Debtor is

17   proposing not only to pay its counsel, but two other sets of

18   counsel to pursue an estate cause of action.

19        Housecraft is also not applicable here, Your

20   Honor, because it didn't direct at all in that case where

21   there was a controlling state law that says that this type

22   of action could not be brought by the third party.

23   Housecraft doesn't necessarily purport to override such

24   state law.  There's nothing in the Bankruptcy Code that pre-

25   empts state law that says a creditor or a group of creditors

Page 45

1    can bring a cause of action against an insurer, which they

2    concede they can't.  But it's not the case that there's any

3    sort of express preemption or even applied preemption

4    because they haven't shown any inconsistency here.  And,

5    obviously, this is not STN where they've made a demand and

6    haven't been able to pursue it.  So, I think those on

7    points, Housecraft just doesn't apply.  It's a different

8    situation.  There's no need to create a Circuit split

9    between the Second Circuit and the Third Circuit.

10            THE COURT:  Well, what's the Third Circuit split?

11    I'm not clear on that.  Are you referring to the Delaware

12    Bankruptcy Court cases, obviously, those are not Circuit-

13    level cases.

14            MR. CALHOUN:  No, but as Debtors' counsel referred

15    to, it's just a different level of how they apply these

16    principles.  I don't know that the Third Circuit objected

17    (indiscernible), but it's going to get to that issue.

18            THE COURT:  I guess the other point I would ask

19    you about is the Court in Housecraft, and, of course, it's

20    part of a trilogy, dealt with a statute, 548 of the

21    Bankruptcy Code, which, specifically, confers standing on

22    one party, the trustee or Debtor-in-possession.

23            To me, that's not also any specific issue of or

24    raising any sort of issue that would involve preemption

25    principles.  It involved standing principles; i.e., a party

Page 46

1    can take the place of and step into the shoes of a trustee

2    or Debtor in possession under a particular statute to assert

3    the Debtors' rights and I'm not sure that there is any real

4    distinction there between a federal statute and a state

5    statute.

6         It's really a question of who, as a fiduciary,

7    under the ultimate supervision of the Bankruptcy Court, can

8    act on behalf of the Debtor and its -- estate.

9         MR. CALHOUN:  Correct, Your Honor.

10        And what the Second Circuit said in Housecraft

11   with that, if you look at that question, you have to

12   consider what's in the best interests of the estate and --

13        THE COURT:  No, I understand that, but I think one

14   would have to admit that the target of potential litigation

15   is probably the least likely person to listen to, as to

16   what's in the benefit of the estate, as opposed to the

17   Debtor and fiduciaries, or tens of thousands of creditors.

18        MR. CALHOUN:  I understand that, Your Honor, and,

19   obviously, you can factor in that issue, but as counsel for

20   an insurer, we do feel strongly that our coverage litigation

21   should be with our insurer and not with lawyers for the

22   creditors.  It does create (indiscernible) and this really

23   gets into some of the things I want to talk about on that

24   issue, on best interests of the estate and the problems that

25   this causes.

Page 47

1            I'd just note from the outset, counsel for the

2    Debtors, at one point in his presentation, made the comment

3    that some of the insurance companies were trying to obstruct

4    relief and were (indiscernible) that they were delaying.  I

5    just wanted to point out that, you know, we asked Your Honor

6    nearly a year ago for relief from the stay to pursue our

7    insurance coverage action and the Debtors approached us in

8    July and said, hey, would you like to negotiate?

9            We said, yes.  We didn't hear anything back from

10   them again until October when they ignored a response and

11   said would you like to negotiate?

12           We said sure, but if it doesn't work out, we'd

13   like to get relief from stay to finish resolving these

14   issues.  So, we have absolutely not refused (indiscernible);

15   it's been the opposite.  (Indiscernible) impatient while

16   we've been waiting for some further resolution and the Court

17   directed at our motion at our hearing on the motion for

18   relief from stay.

19           Something else that was said in terms of the

20   presentation that is really critical, they said there should

21   be a single voice, but what they're really asking for is

22   three voices.  They're asking for other groups to represent

23   not the Debtors' interests or the insured's interests, but

24   the interests of creditor groups.  And, certainly, to the

25   extent they had a settlement or something of that nature,

1    those parties are going to have the right to weigh in and we

2    understand the desire to build consensus on that and don't

3    really have a problem with that, but we do have problem with

4    having three parties in our litigation multiplying the

5    litigation, which is not in the estate's best interests;

6    It's going to multiply the amount of work that's required.

7    There's been no allegation and there's no contention that

8    the Debtors don't want to maximize their -- the value of

9    their insurance.  They're represented by one of the largest

10   and career insurance groups in the country at Reed Smith.

11        And if we have three parties in our case, the

12   other half is another issue, as much as we'd like this done

13   as soon as possible, I have serious doubts, Your Honor, that

14   an insurance litigation is going to be finished before this

15   confirmation.

16        We're going to then have parties and the

17   litigations who represent committees that will be most

18   likely dissolved.  I know the stipulation doesn't control

19   the issue of what happens but that creates a very serious

20   concern about delay and problems in our ensuing coverage

21   litigation.

22        In fact, Your Honor, just -- I don't see the

23   benefit, on a cost benefit or any other basis, to create

24   those future problems in litigation when the Debtor's

25   perfectly competent and willing to step in and do this.

Page 49

1          We have no problem if they consult with the

2     committees, but the committees don't need to be parties.

3     The committees being parties, not to represent the estate's

4     interests, but to represent their own, which is what they're

5     saying.  They're there to represent the interests of all

6     these creditors.  It's what's been alleged in the papers and

7     it was what was alleged today.

8          There's no need for it in this case.  The Debtors

9     have -- are perfectly capable of funding this litigation.

10    They're perfectly capable of pursuing it.

11         It's -- you know, we're happy that they can reach

12    consensus with these groups on something.  I'm sure they're

13    -- that can aid in their discussions but it -- it's got

14    nothing to do with it -- with the pursuit in this litigation

15    in an effective manner and efficient manner which is in the

16    estate's interests.

17         Which is why we raised our pending lift stay

18    motion.  We're happy, Your Honor -- we recognize that either

19    way there's some response and not on notice.  We're happy to

20    file a notice and have this heard.

21         We frankly were waiting and hoping that there'd be

22    some resolution or remediation before (indiscernible) this

23    motion prompted it.

24         And so, Your Honor, we think --

25         THE COURT:  That's the problem with telephonic

Page 50

1    hearings.  I can't -- you have more to say, I guess.

2              MR. CALHOUN:  No, go ahead, Your Honor.

3              THE COURT:  No, no.  I thought you might have been

4    done because there was a pause.  But you were just catching

5    your breath.

6              MR. CALHOUN:  Yeah.  I was -- I was just looking

7    at my notes because they're a little bit scrambled.  But,

8    yes, Your Honor, you know, so in short, we think there's

9    good reasons here not to interfere with the state law

10   standing requirements that would ordinarily -- ordinarily

11   would preclude these third parties from participating in

12   this litigation where there's no need to have them in there

13   from a funding or from a motivation standpoint.

14              It avoids any conflict with state law or between

15   other districts and circuits and, frankly, Your Honor, if

16   the term sheet that's proposed is incorporated into the plan

17   and that plan is confirmed, these creditor parties are going

18   to replace the Debtor down the road anyway and, you know,

19   that might be a more appropriate time to deal with that

20   issue.

21              THE COURT:  Okay.  Then you wouldn't raise

22   (indiscernible) cases then?

23              MR. CALHOUN:  (Indiscernible) I can answer -- no,

24   Your Honor.  What I'm saying is if what they really want is

25   to control the insurance litigation, if the plan proposes

1   that creditors become the new owners of the company, which

2   is my understanding of what was proposed, when they become

3   the new owners of the company, they'll be in control of

4   their insurance litigation.

5            THE COURT:  Okay.

6            MR. CALHOUN:  They're really sort of prejudging

7   that issue by asking that the -- not co-counsel for the

8   estate, but joint parties is what they're asking for, Your

9   Honor.  They're not asking, let's have one voice on behalf

10  of the Debtors in this insurance litigation.  Let's have

11  three voices which is not quite the same thing.

12           THE COURT:  Okay.  Very well.  Anyone else have

13  anything more to say?

14           MR. SHORE:  Your Honor, Richard Shore on behalf of

15  the ad hoc committee and just very, very quickly.

16           Mr. Calhoun said that -- that the Debtor and the

17  two committees reached out to take -- regarding settlement

18  to take -- said, sure, you know, let's sit down and they

19  didn't hear back from us.

20           What Mr. Calhoun left out is the take place, the

21  condition, on its willingness to sit down with us which was

22  that we agree or the Debtor agree that any disputes

23  regarding insurance coverage be resolved through

24  arbitration.

25           Obviously, that was not an acceptable condition to

Page 52

1    proceeding with settlement negotiations.

2            Mr. Calhoun also said that -- and I should say,

3    you know, more broadly, we did seek to negotiate with all of

4    the insurers to enter into settlement negotiations.  They

5    would have got little, not no, but little traction.

6            We think approving the stipulation and allowing

7    the Debtor and committees to initiate litigation will focus

8    the insurers on the need to resolve the coverage issue,

9    enhance prospects of settlement and, to the extent that we

10   can't settle during the bankruptcy case, we'll start this --

11   this -- the insurance disputes on the road to judicial

12   resolution sooner rather than later.  So we think that's

13   very important.

14           And then, finally, Mr. Calhoun said that it was

15   unlikely that the litigation would be resolved during the

16   bankruptcy case.  That, in our view, is a reason to approve

17   the stipulation, not not to approve it.

18           It would create approving a stipulation allowing

19   the committee -- the committees and the Debtor to work

20   together in coordination now, will create a smooth

21   transition to what happens, post-confirmation.

22           THE COURT:  Okay.  Thank you.  All right.

23           I have before me a motion by the Debtors in these

24   cases for approval of a stipulation between the Debtors and,

25   on the one hand, and the official unsecured creditors

Page 53

1    committee and the ad hoc committee of governmental entities,

2    of states and governmental entities, that is -- which I will

3    refer to as the ad hoc committee.

4            With respect to the Debtors' insurance causes of

5    action, the Debtors are parties to many difference insurance

6    policies and, as often happens in bankruptcy cases involving

7    rights to insurance, as well as outside of bankruptcy, there

8    appear to be disputes or potential disputes between the

9    Debtors and their insurers about the extent of coverage

10   under those policies.

11           The stipulation is brief and provides, first -- so

12   the terms of the stipulation are that the two committees are

13   granted leave and shall have joint standing with the Debtors

14   to assert, litigate and resolve any and all claims, causes

15   of action, disputes, or other matters regarding the Debtors'

16   insurance causes of action on behalf of the Debtors'

17   estates.

18           It is, I believe, clear, in particular because of

19   the last clause of that paragraph one of the stipulation but

20   also based on the representations made on the record today,

21   that standing and the stipulation as a whole pertains to

22   only the Debtors' estates' causes of action in respect of

23   their insurance policies.

24           The committees acknowledge that they currently do

25   not have their own causes of action in respect of the

Page 54

1    insurance policies; i.e., they don't have direct action

2    rights at this time and they're not under the stipulation

3    being conferred direct action rights or such standing or

4    even derivative standing but, rather, if I granted the

5    stipulation, standing along with the Debtor, in each case,

6    on behalf of the Debtors' estates with respect to the

7    Debtors' insurance causes of action.

8         The stipulation also prescribes when the Debtors

9    can seek approval of a settlement of causes of action and

10   prescribes the rights of the two committees and prohibits

11   their ability to seek approval of any settlement of the

12   insurance causes of action without the Debtors' consent.

13        That's in paragraph two of the settlement and then

14   finally in paragraph three of the settlement provides that

15   the parties, that is the Debtors and the two committees,

16   shall confer and work cooperatively regarding litigation of

17   the Debtors' insurance causes of actions and the parties

18   shall endeavor to make all decisions by agreement among the

19   parties subject to applicable law.

20        Given that paragraph and the representations in

21   the Debtors' reply to the sold objection to the motion,

22   which is by one of the insurers, Ironshore Specialty

23   Insurance Company, which people have been referring to in

24   this matter by its former name, T-I-G or TIG Specialty

25   Insurance Company, they will work cooperatively to proceed

Page 55

1    with any litigation efficiently from the perspective of the

2    Debtors' estate and, of course, will also obviously work

3    cooperatively because they need to, under paragraph two of

4    the settlement, with regard to any settlement negotiations.

5           The Second Circuit has well developed case law on

6    the conference of standing on third parties where standing

7    is, by statute, conferred only on the trustee or a debtor-

8    in-possession, where the conference of standing would permit

9    the third party to have standing to pursue estate causes of

10   action; i.e., causes of action on behalf of the debtor in

11   respect of its property and estate.

12          Starting with Commodore International Ltd. V.

13   Gould (In Re Commodore International Ltd), 262 F3d. 96, 100,

14   (2nd Cir. 2001) and proceeding thereafter to Blinka v.

15   Mirrored Industries USA, Inc., In Re Housecraft, Inc., 310

16   F3d., 64 (2nd Cir. 2002), the circuit has recognized that

17   where a trustee or debtor-in-possession with standing by

18   statute to pursue an estate cause of action or an estate

19   property right, agrees or consents to conferring that

20   standing on a third party, the court will grant that

21   standing and approve that agreement if doing so is (a) in

22   the best interests of the debtor's estate and (b) necessary

23   and beneficial to the fair and efficient resolution of the

24   bankruptcy case or proceeding.

25          In Housecraft, the Second Circuit recognized joint

Page 56

1    standing; i.e., standing on behalf of both the debtor and a

2    third party at the same time to pursue estate causes of

3    action and that is what is being proposed here as well.

4            No creditor of the estate has objected to this

5    motion and, indeed, the three groups collectively

6    representing essentially all of the creditors, affirmatively

7    support the motion; that is, the two parties who are parties

8    to the stipulation along with the Debtors, the official

9    committee of unsecured creditors and the ad hoc committee.

10   And, in addition, the ad hoc committee of so-called non-

11   consenting estates affirmatively support the motion as, of

12   course, do the Debtors.

13           The only party objecting to the motion is one of

14   the potential litigation targets, TIG, an insurer.  In the

15   Housecraft case, the circuit noted that where the debtor is

16   remaining as a party to a litigation and consenting to joint

17   standing, the court is well within its discretion to be

18   differential to that decision.

19           I believe that's particularly the case where all

20   of the key parties-in-interest in the case with an economic

21   stake in maximizing insurance proceeds recovery agree as

22   well to the conference of standing.

23           The objection asserts a few bases in support of

24   that objection.  The first is that the grant of standing

25   might confuse or otherwise impair the Debtors' estates'

1    rights in respect of the Debtors' insurance claims.

2            The argument is that under applicable state law,

3    only the Debtor would have the ability to pursue these

4    causes of action at this time.

5            Of course, that is also the case or was also the

6    case in the Housecraft and Commodore cases with the

7    exception that the applicable statute there was a section

8    under Chapter 5 of the Bankruptcy Code that conferred

9    standing specially on the trustee or debtor-in-possession.

10           Nevertheless, the courts, as I have noted,

11   accorded standing to third parties to act on behalf of the

12   Debtor's estate.

13           The same logic, to my mind, would apply wherever a

14   third party would be acting literally on behalf of the

15   debtor's estate whether that cause of action be under state

16   or federal law.

17           The objector points to three or four cases decided

18   by the Bankruptcy Court for the District of Delaware as

19   authority for the contrary position that, in fact, the two

20   committees even if accorded standing to pursue the cause of

21   action would, in fact, not have such standing.

22           I have read those cases carefully and I believe

23   they are distinguishable and not, in fact, contrary to the

24   grant of standing here under paragraph one of this proposed

25   stipulation and order.

1              Perhaps the clearest example of that is the most

2    recent of those cases, In Re Citadel Watford City Disposal

3    Partners,  603 B.R. 897 (Bankr. D. Del. 2019).  In that

4    case, pre-bankruptcy -- I'm sorry, during the bankruptcy

5    case, before confirmation of the Chapter 11 plan, the

6    official creditors committee was accorded standing to bring

7    estate causes of action.

8              Under the plan, the liquidation trustee was given

9    that status as the debtor's successor.

10             Nevertheless, the official committee brought the

11   litigation as a derivative matter for breach of fiduciary

12   duty claims under Delaware's Limited Liability Company Act,

13   or Limited Partnership Act.

14             Later, the liquidation trustee sought to modify

15   the caption of the case to include the liquidation trustee

16   as a plaintiff or the plaintiff, as a plaintiff rather,

17   asserting that this was just a procedural matter and of not

18   substantive import.

19             The court, Judge Kerry, in analyzing two prior

20   decisions by his colleagues, which I'll get to in a moment,

21   concluded, under the plain terms of the Delaware Limited

22   Partnership statute, that as of the time that the litigation

23   was commenced, the plaintiff did not have standing to bring

24   the cause of action.

25             At that time, when it was commenced, the official

Page 59

1    unsecured creditors committee was the plaintiff and it was

2    bringing the action on a derivative basis which the Delaware

3    statute precluded.

4         The court, I believe, was clear that the

5    liquidation trustee was taking the standing, at that point,

6    as an assignee of the liquidation -- of the unsecured

7    creditors committee and concluded that the liquidation

8    trustee also did not have standing.  Id. at 901 thru 902 as

9    well as 907.

10        The court's whole focus was on derivative

11   standing, not standing as conferred by the Bankruptcy Court

12   to bring causes of action on behalf of the estate but rather

13   derivative standing under Delaware law.

14        That was also the focus in the two cases that

15   Judge Kerry construed, Judge Gross's case, In Re HH

16   Liquidation, LLC, 590 B.R. 211 at 284 through 85, (Bankr. D.

17   Del. 2018) and In Re Pennysaver USA Publishing, LLC, 587

18   B.R. 445, 467 (Bankr. D. Del. 2018).

19        In each of those cases, the courts were focused on

20   the bringing of derivative claims for breach of fiduciary

21   duties owed to creditors of either -- of a limited liability

22   company in that case as opposed to an LP in the Watford City

23   case.

24        The whole focus was on derivative standing, not on

25   direct standing, as conferred by a court order which the

Page 60

1    courts did not discuss at all.

2              I believe if that issue had been raised and

3    focused on by them, they would have reached the same result

4    which is that this was an action, if it could be brought by

5    the company, would be brought by the company and its

6    successors as opposed to someone suing derivatively in the

7    name of the company which was precluded by the Delaware

8    statutes.

9              I believe, therefore, that there would be no

10   impediments to standing here in a litigation that would name

11   the Debtor and the two committees as co-plaintiffs in each

12   case, acting on behalf of the Debtor.

13             Of course, if some court disagreed with that

14   analysis, although arguably it would now be collateral

15   estoppel as to TIG, since it's actually been litigated, the

16   solution would be simple.  You would drop the two committees

17   and continue on with the Debtor or its successor under a

18   plan.

19             But that limited prospect, in my view, is no

20   reason to deny approval of the stipulation as not being in

21   the best interests of the estate.

22             The objection also argues that, as a cost and case

23   management matter, the stipulation is not in the best

24   interests of the estate.  Again, I believe that the Debtor

25   has a low bar to meet here given that it would remain a

Page 61

1    party to a litigation and given, in addition, the lack of an

2    objection by anyone except a potential target of the

3    litigation.

4         The other prong of the test bears a little more

5    scrutiny than that, however, i.e., the prong that requires

6    the conference of standing to be necessary and beneficial to

7    the fair and efficient resolution of the bankruptcy

8    proceedings.

9         TIG argues that it will now be confronting three

10   plaintiffs potentially instead of one and that would

11   multiply the conduct of any litigation and unnecessary --

12   and unnecessarily complicates settlement discussions.

13        I've considered that argument carefully; first,

14   whether the focus should even be on the other party to the

15   litigation as opposed to the conduct of the bankruptcy case

16   generally but even putting the focus on the former point, as

17   opposed to the later one, which I believe is probably not

18   the right result, but I will do it anyway, it appears clear

19   to me that in respect of settlement discussions and the

20   settlement process, in the context of this particular case,

21   having the two committees with standing to particulate in

22   settlement discussions under the construct of paragraph two

23   of this stipulation is beneficial not only to the estates

24   generally but also to the other party to those settlement

25   discussions; i.e., the insurer.

Page 62

1              In this case, the Debtors have been clear, from

2     the start, and this is far from the norm in Chapter 11

3     cases, that they, in one form or another, will make all of

4     their assets, including their insurance assets, available

5     for their creditors.

6              The creditors, as a practical matter, therefore,

7     in their views, are of high importance in the Court's

8     determination as to the approval of any settlement, directly

9     involving the two committees therefore in settlement

10    discussions will cut short any further attack on a

11    settlement or litigation over a settlement, or further

12    negotiations to improve the terms of a settlement,

13    previously negotiated by the Debtors because the key

14    parties-in-interest are actually there with standing to

15    participate directly as a party with standing in the

16    settlement process.

17             As far as litigation is concerned, it is clear

18    from paragraph three of the stipulation as well as the

19    representations made in support of the motion that the

20    parties, as they have done here, will coordinate their

21    efforts so that I do not expect, and I believe it would be

22    perfectly incumbent upon a court or an arbitration panel to

23    so limit if my expectation is not followed by the Debtor and

24    the two committees to prevent unnecessary duplication of

25    argument and discovery and any other aspects of the

Page 63

1   litigation that would be unduly burdensome and costly to the

2   defendant in that litigation.

3           As was the case here, the Debtors' counsel spoke

4   on behalf of the three parties.  They coordinated on a joint

5   reply and I'm assuming that they would do so in similar

6   fashion with regard to any litigation pleadings and the

7   conduct of litigation hearings so that you would not have,

8   for example, three different parties standing up and

9   objecting to the admissibility of any particular exhibit or

10  question of a witness or the like.  But that they would

11  coordinate those to be efficient.

12          I think a trial court would have -- be well within

13  its rights to rein in contrary behavior if it occurred

14  notwithstanding paragraph three of the stipulation.

15          So, it does not appear to me, even I were focusing

16  primarily on the insurers here, and their interests in fair

17  and efficient resolution of the bankruptcy proceedings, as

18  opposed to the fair and efficient resolution of the

19  proceedings generally, to conclude that this motion should

20  be denied.

21          To the contrary, I believe it should be granted.

22          I also believe it should be granted because I see

23  no reason for any delay in resolving the Debtors' insurance

24  claims and rights before confirmation of a plan.

25          Of course, the plan itself can modify again who

Page 64

1      would have standing to pursue those claims and rights on

2      behalf of the Debtors' estate but there's no reason to wait

3      for confirmation of a plan to continue with the process

4      that's thus far has been, it appears to me, rather desultory

5      but now with the approval of this motion, I believe, will

6      gain speed along with seriousness given the joint

7      involvement of the two committees.

8              So, I will grant the motion and Mr. Kaminetzky you

9      can email me the proposed order.  You don't need to formally

10     settle it on Mr. Calhoun but you should copy him on the

11     email so he can make sure it's consistent with my ruling and

12     doesn't change anything as far as the stipulation is

13     concerned.

14             MR. KAMINETZKY:  Thank you, Your Honor.

15             THE COURT:  There -- as noted, there's no motion

16     currently before me scheduled for a hearing for relief from

17     the automatic stay by TIG,  Of course, with proper notice, I

18     would hear such a motion although I would hope that, at this

19     point, now that the lines of authority are clear, the

20     parties will engage in trying to resolve these issues before

21     sending them to litigation, whether that would be in this

22     Court, in a district court or in an arbitration.

23             So I think that concludes this matter and we can

24     move on to the next matter on the calendar.

25             MR. KAMINETZKY:  Yes, Your Honor.

Page 65

1          Again, Ben -- Benjamin Kaminetzky.  I'm going to

2     turn the virtual podium over to my colleague, Jim McClammy

3     for items two and three on the agenda.

4          THE COURT:  Okay.

5          MR. MCCLAMMY:  Good morning, Your Honor.

6          Jim McClammy of Davis Polk on behalf of the

7     Debtors.

8          Items two and three are the motions that were

9     brought pro se by Ms. Deborah Clonts; one motion for claim

10    payment and that, two, a motion, and amended motion for the

11    lifting of the automatic stay.

12         I believe I see that Ms. Clonts is on the phone.

13         THE COURT:  Right.

14         MS. CLONTS:  Yes, I'm here.

15         THE COURT:  (Indiscernible) what I was about to

16    say.  So Ms. Clonts, you're here.  You're representing

17    yourself; is that correct?

18         MS. CLONTS:  Yes.

19         THE COURT:  Okay.  And it's C-L-O-N-T-S.

20         MS. CLONTS:  Yes, that's correct.

21         THE COURT:  Okay.  So I have reviewed your motion

22    for payment as well as the motion and amended motion for

23    relief from the automatic stay.

24         MS. CLONTS:  Your Honor, if -- uh-huh.

25         THE COURT:  So I just want to let you know that I

Page 66

1    have reviewed those as well as the Debtors' objections to

2    them.

3            MS. CLONTS:  Uh-huh.

4            THE COURT:  But if you want to say anything more

5    in support of those motions, you could do that now.

6            MS. CLONTS:  Okay.  Before I was making a claim

7    for an exception.  It wasn't just claim payments.  That's

8    why I was motioning for the lift of stay or I'm not sure

9    because, you know, clearly I'm not an attorney.

10           But I'm not sure if it's called the lift of stay

11   or relief.

12           THE COURT:  Either term is fine.  Relief from the

13   stay or lift of the stay.

14           MS. CLONTS:  My term is fine?

15           THE COURT:  Yeah.

16           MS. CLONTS:  Okay.  Yeah.  So that's what I was --

17   that's what I came to argue was the crime fraud exception

18   and if that's okay, I will -- I will continue with that.

19           THE COURT:  Well, again, I've read -- I've read

20   your pleading.  So it's okay for you to continue with, you

21   know, to make an oral argument, too, or you can just rest on

22   the pleading; either one.

23           MS. CLONTS:  Okay.  And to be clear, I didn't -- I

24   have no idea that the UCC was working on this when I started

25   this, just to be clear.  I wanted to state that.

Page 67

1          It started with me seeing someone file a motion

2     for a claim payment and I just thought, that's easy.  So I

3     filed one.  And then I was issued a hearing and while I was

4     researching for that hearing, I stumbled across the crime

5     fraud exception and I thought, well, that sounds easy.

6     Perdue just pled guilty to fraud.

7          So I went ahead and filed the crime fraud

8     exception.  It seemed like an open and closed case.

9          So I motioned for the lift of automatic stay

10    because, as I understood it, that's what you had to do to

11    invoke the crime fraud exception.  It seemed justified.

12         And with Perdue's strategic and well planned

13    bankruptcy, it just seemed that Perdue and the Sacklers were

14    trying to save billions of dollars in litigation and they

15    could afford excellent attorneys and I just -- I just

16    thought that that didn't seem fair and it seems, to me, that

17    the attorneys are the only ones making any money in this.

18    The victims are -- are not getting paid and, when they do

19    get paid, it seems that it'll just be pennies on the

20    dollars.

21         So the Sacklers breached their fiduciary duty by

22    transferring huge amounts of money anticipating litigation.

23    They transferred it out of Perdue to overseas trusts in an

24    attempt to hide assets from creditors.

25         So that was their -- qualified for their fraud,

Page 68

1    crime fraud exception.

2              Perdue also pled guilty to fraud all the way back

3    to 2007 and now 2020.  Their aggressive marketing tactics,

4    the -- the thing that you were just talking about, the

5    derivative fiduciary duty, that qualifies for that.

6              The directors also failed and breached their

7    fiduciary duty when they knew the company employees were

8    breaking the law and they permitted it.

9              My damages, most importantly, are the -- is the

10   loss of my daughter and up and down the docket is all, you

11   know, many, many documents and many, many exhibits.  You

12   know more than I do because you've probably seen the

13   unredacted ones.

14             And they have been before Congress, taken

15   responsibility, full accountability for everyone to see.

16   And I just believe that when the law for this is applied to

17   this case that it brings it to the level of meeting the

18   burden for crime fraud exception.

19             Thank you, Your Honor.

20             THE COURT:  Okay.  Thank you.  And, again,

21   Mr. McClammy, I've read the pleadings on this.  So you

22   should assume that but I'm happy to hear brief oral argument

23   if you want to do that or you can rest on the pleadings.

24             I think you may still be on mute, Mr. McClammy.

25             MR. MCCLAMMY:  I'm sorry about that, Your Honor.

Page 69

1    Thank you.

2          I think unless there are specific questions that

3    Your Honor has for the Debtors, we will rest on our

4    pleadings and simply reiterate, as this Court is aware, you

5    know, the import of the stay to these cases and moving them

6    forward and the fact that the Debtors and the other

7    constituents in this case, you know, remain very much

8    focused on bringing these cases to a conclusion for the

9    benefit of all the -- all of Perdue's creditors and the

10   public in general.

11         But, again, if Your Honor has specific questions,

12   happy to answer those.

13         THE COURT:  Okay.  That's fine.  Thank you.

14         All right.  I have two motions before me by

15   Ms. Clonts, each of which is opposed by the Debtors in these

16   Chapter 11 cases.

17         The first motion is a motion for payment of

18   Ms. Clonts' claims in these Chapter 11 cases.

19         There were four claims filed by  her and they're

20   each entitled, if allowed, ultimately to payment from the

21   Debtors' estates.  The claims are unsecured and they're pre-

22   petition claims; i.e., claims for harm that occurred to Ms.

23   Clonts based on the death of her daughter before the start

24   of these bankruptcy cases.

25         Ms. Clonts is not the only person who has filed

Page 70

1    such claims in these cases.  In fact, there are tens of

2    thousands of such claims filed against the Debtors

3    unfortunately for the claimants as well as claims by almost

4    all of the states in the United States, thousands of other

5    governmental entities and Indian Tribes, insurers,

6    hospitals, and other non-individual entities.

7            The amount of claims filed in this case, the

8    dollar amount is staggering and the Debtors, with the

9    official unsecured creditors committee, which is the

10   fiduciary for all unsecured creditors, and the ad hoc

11   committees in these cases, representing the states and other

12   governmental entities, as well as specific types of

13   claimants, such as the ad hoc committee of NES babies, and

14   insurers, have been addressing, since the start of these

15   cases, how to distribute to all of the claimants the maximum

16   amount of value that can be distributed.

17           The first motion, as I said, seeks payment now of

18   Ms. Clonts' claim.  She acknowledges that she saw a similar

19   motion made earlier in these cases by a claimant, like

20   herself, who tragically lost a child and believed that

21   making such a motion and the grant of such a motion would be

22   relatively simple.

23           However, the grant of such a motion runs contrary

24   to a fundamental principle of bankruptcy law, which is why I

25   denied the prior motion; namely, it is highly unusual,

Page 71

1    unless there's a net benefit to the other creditors, to pay

2    a pre-petition, unsecured claim before similarly situated

3    claims are paid.

4          The fundamental principle of the Bankruptcy Code

5    is to prevent some creditors from getting a leg up over

6    other creditors in the treatment of their similar claims

7    but, rather, to have that treatment apply to all claims

8    under, in the case of the Chapter 11 case, a Chapter 11

9    plan, that is negotiated as the Debtors have been

10   negotiating with key fiduciaries for creditors and then

11   ultimately proposed, on notice to everyone, and confirmed or

12   not by the Bankruptcy Court.

13         It would unduly prefer Ms. Clonts over the other

14   claimants to grant her motion now for payment and,

15   therefore, I will deny the motion.

16         I will similarly deny the motion for relief from

17   the stay which, to the extent it doesn't seek immediate

18   payment, would seek the ability to litigate the unsecured

19   claim that Ms. Clonts has filed in a non-bankruptcy forum

20   and I believe then, at least reading between the lines of

21   the motion, have it be paid.

22         Again, it is rare to have relief from the

23   automatic stay under 362(a) of the Bankruptcy Code to pursue

24   litigation of a pre-petition claim even without having it be

25   paid, just to have it be litigated unless unique

Page 72

1    circumstances apply such as the litigation is fully insured,

2    or the litigation is very far advanced and it would be more

3    efficient to have the claim be litigated in the forum that

4    has been presiding over the matter or the like.

5            The factors applied by the Second Circuit in the

6    In Re Sonnax Industries case, none of those factors applies

7    here.

8            Ms. Clonts has stated, and I appreciate she's not

9    a lawyer, that she believed that a so-called crime fraud

10   exception would provide for relief from the automatic stay

11   here and noted that the Debtors, Perdue, have already pled

12   guilty to certain crimes in the District Court of the

13   District of New Jersey during the course of these cases.

14           However, there was no such general exception or

15   exclusion from the automatic stay provided for in the

16   Bankruptcy Code.  Section 362(b)(4) provides that certain

17   sections of the automatic stay do not apply to the

18   commencement or continuation of an action or proceeding by a

19   governmental unit to enforce such governmental unit's police

20   and regulatory power including the enforcement of a judgment

21   other than a money judgment obtained in an action or

22   proceeding by the governmental unit to enforce such

23   governmental unit's police or regulatory power.

24           But, by its plain terms, that exception to the

25   automatic stay applies to governments, to governmental units

Page 73

1    and would not apply to an individual such as Ms. Clonts.

2            Her motion also references a claim that her claim

3    would not be subject to any discharge in this case under

4    Section 523(a)(2) of the Bankruptcy Code.

5            Again, I recognize that Ms. Clonts is not a lawyer

6    but there are two points to make here.  First, actions for a

7    declaration that the bankruptcy discharge does not apply to

8    a particular debtor under Section 523(a) of the Bankruptcy

9    Code are normally brought by an adversary proceeding rather

10   than a motion like this.

11           But, more importantly, by its plain terms, Section

12   523(a) of the Bankruptcy Code applies only to discharges of

13   individual debtors; i.e., people as interpreted by the

14   Second Circuit as the Second Circuit interprets the term

15   individual debtor.

16           These Debtors are not people.  They're

17   corporations and other legal entities.  For such entities,

18   Congress has a far more restrictive limitation on a

19   discharge.  It is set forth in Section 1141(d)(6) of the

20   Bankruptcy Code.  It says that notwithstanding paragraph

21   (1), which is the general discharge provision for

22   corporations and entities other than people, the

23   confirmation of a plan does not discharge a debtor that is a

24   corporation from any kind -- from -- of a kind of a debt

25   specified in paragraph (2)(a) or (2)(b) of Section 523(a)

Page 74

1    that is owed to a domestic governmental unit or owed to a

2    period as the result of an action filed under Subchapter 3A

3    of Chapter 37 of Title 31 where a similar state statute

4    which, in essence, is a type of statute that lets a person

5    step into the shoes of a governmental unit like a

6    whistleblower statute.

7              Again, Ms. Clonts is not a governmental unit and

8    doesn't fall into that exception.

9              So, Ms. Clonts, I understand fully that you would

10   like to have some payment from the Debtors' estate as soon

11   as possible.  That payment, however, cannot come ahead of

12   payments to (indiscernible).  They should be made together

13   once your and their claims are allowed.

14             The parties have been negotiating a process, a

15   structure for reviewing claims like yours, and considering

16   whether they should be allowed in a way that's efficient and

17   cost effective for people like yourself as well as the

18   Debtors that tries to minimize lawyer involvement, for

19   example.

20             Those sorts of procedures have been adopted in

21   many cases where there are claim like yours and I am

22   assuming that if and when a plan is confirmed in this case,

23   such a procedure will be part of it and your claim will be

24   reviewed and whether it be allowed or disallowed or reduced,

25   but once that happens, there will be distribution on it as

Page 75

1    that -- and that that same process will apply to everyone

2    else who has filed a claim like yours.

3              But that process is a collective one.  An enormous

4    number of people are affected by these cases and it has

5    taken as long as we have taken in this case to get to a

6    point near to which such a plan can be filed and confirmed.

7              If the Debtor warrants a discharge, if that plan

8    is a truly organization plan as opposed to a liquidation

9    plan, then the Debtor will get a discharge except to the

10   extent it is asserted it is not entitled to one under the

11   section I just read from, Section 1141(d)(6).

12             But, again, that applies to governmental units,

13   i.e., the states and other governmental entities if they

14   want to pursue that type of relief.

15             But, at this point in the case, while people are

16   still dealing with the ultimate structure of a plan, and the

17   resolution of all of the Debtors' estates' claims against

18   third parties, including claims for alleged avoidable

19   transfers, which you have referred to, i.e., transfers of

20   value out of the Debtors for less than fair value or fair

21   consideration, where the Debtors were insolvent or the like.

22             But, again, that needs to be resolved before there

23   can be distributions to creditors.  And I can tell you that

24   the tea parties in this case, whether they be the Debtors,

25   the creditors committee or the ad hoc committees of the

Page 76

1    states and governmental entities and other ad hoc

2    committees, I believe have been doing their utmost to

3    resolved those issues as promptly as they can.  And I have

4    been doing my utmost to make sure that they focus on that

5    process in a way that takes into account the risks that they

6    face of not reaching an agreement on the process and the

7    rewards of either reaching an agreement or not reaching one.

8            I believe that that process is coming to a close.

9    I set a deadline on it.  And I am looking at I hope a

10   largely, if not entirely, consensual plan before the spring

11   and confirmation in the spring of this year.

12           We'll see if that can happen.  But I cannot move

13   the process any faster than it is moving at this point.

14           So I will ask Mr. McClammy to submit an order to

15   chambers denying both of the motions.  That order will make

16   it clear that it is not not denying or disallowing your

17   underlying claims.  You file those claims and they will be

18   dealt with under a plan.

19           MR. MCCLAMMY:  We will take care to submit that

20   order, Your Honor.

21           MS. CLONTS:  Thank you.

22           THE COURT:  Okay.

23           MS. CLONTS:  Thank you.  Thank you, Your Honor.

24   I'm so sorry that I had -- I got involved in this and I

25   didn't know what to do.  I didn't know --

1                THE COURT:  No.  There's no reason --

2                MS. CLONTS:  -- you know --

3                THE COURT:  -- there's no reason to -- ma'am,

4    there's no reason to apologize at all.

5                MS. CLONTS:  Okay.

6                THE COURT:  This --

7                MS. CLONTS:  All right.

8                THE COURT:  -- is -- these are complicated issues.

9                MS. CLONTS:  Uh-huh.

10               THE COURT:  The Bankruptcy Code is something that

11   lawyers work with their entire career and they still learn

12   new things that are in it.

13               MS. CLONTS:  Yes.

14               THE COURT:  So we shouldn't -- you shouldn't

15   apologize.  There's no reason to.

16               But I did want to lay this out carefully so that

17   perhaps --

18               MS. CLONTS:  Uh-huh.

19               THE COURT:  -- the transcript can be pointed to if

20   there are other people, like yourself, who read things in

21   the press and think, oh, well, maybe I can get paid now or,

22   you know, why aren't payments being made now.

23               MS. CLONTS:  Right.

24               THE COURT:  If they reach out to the Debtors or

25   the creditors committee, the Debtors can send them this

Page 78

1   section of the transcript, at least to see how I analyzed it

2   in your situation and if there's a similar, you know, they

3   could then see it.  So --

4           MS. CLONTS:  Well, you made it very clear.  I

5   understand completely.

6           THE COURT:  Yes.  Okay.  All right.

7           MS. CLONTS:  Thank you so much.

8           THE COURT:  And, of course, the -- the claims

9   you've asserted are serious.  I mean, I --

10          MS. CLONTS:  Uh-huh.

11          THE COURT:  -- am not dealing with the merits of

12  those claims at all.  They're serious claims and it's

13  because of the seriousness of those claims and tens of

14  thousands of others, that the parties have been working so

15  hard in this case and by the parties, I mean, not just the

16  Debtors --

17          MS. CLONTS:  Right.

18          THE COURT:  -- but the various committees to try

19  to get a fair resolution for everybody.

20          MS. CLONTS:  Right.  I'm just so relieved this is

21  over.  So thank you again.

22          THE COURT:  It's not over yet, I'm afraid.  I'm

23  just (indiscernible) --

24          MS. CLONTS:  No, I mean -- I mean, for me, this

25  part of the --

Page 79

1              THE COURT:  Oh, okay.

2              MS. CLONTS:  -- this, I'm just glad this is over.

3     Thank you.

4              THE COURT:  Okay.  Very well.  Thank you.

5              MS. CLONTS:  Bye-bye.

6              THE COURT:  Okay.  All right.  I think the next

7     matter on the calendar apropos the section that I was just

8     talking about is the Debtors' request for a further

9     extension of the time to object to dischargeability under

10    Bankruptcy Rule 4007(c) and 1141(d).

11             I think that's the next matter.  I don't know who

12    was handling that from Debtors' side.

13             MR. MCCLAMMY:  Yes, Your Honor.  This is Jim

14    McClammy.  I believe that will be handled by Christopher

15    Robertson for us.

16             THE COURT:  Okay.

17             MR. ROBERTSON:  Good afternoon, Your Honor.  For

18    the record, Christopher Robertson, Davis, Polk and Wardwell

19    on behalf of the Debtors.

20             Can I be heard clearly in the Court?

21             THE COURT:  Yes.

22             MR. ROBERTSON:  Oh, thank you, Your Honor.

23             Your Honor, turning to agenda item number four,

24    very briefly, Ms. Clonts also objects to entry of the fifth

25    amended order extending time to object to dischargeability

Page 80

1    of certain debts.

2              I understand this objection remains live

3    notwithstanding the prior discussion.

4              THE COURT:  But this is the only objection, I

5    gather, too.  There's been no other -- no other responses to

6    the motion?

7              MR. ROBERTSON:  That -- that is correct, Your

8    Honor.  I guess let's skip to the end.

9              We initially filed this -- the request to extend

10   the determination deadline back on December 23rd, 2019.

11   There have been no objections to the extension that any, you

12   know, back then or any subsequent time until the present.

13             THE COURT:  Okay.  And have there been any changes

14   to the proposed order?

15             MR. ROBERTSON:  Just updating dates, Your Honor.

16             THE COURT:  Right.  But, I mean, no changes from

17   that -- from those dates, those updated dates.

18             MR. ROBERTSON:  No, Your Honor.

19             THE COURT:  Okay.  All right.

20             And I'm assuming no one has anything further to

21   say on this motion?

22             All right.  I will grant the motion for the same

23   reasons that I've granted the prior extensions.  I believe

24   that, at this time, in these cases, it would be a sideshow

25   and an undue burden on the governmental entities and any

Page 81

1    other entity to have to face the deadline under Rule 4007 to

2    seek a declaration of non-dischargeability under Section

3    523(a) to the extent that such a deadline applies and that

4    it's appropriate to extend that deadline so the parties can

5    see whether they can negotiate -- include negotiations on a

6    plan that would deal with dischargeability issues among many

7    others.  Debtors have sought this relief themselves.  They

8    would be the ones benefitting from the imposition of the

9    deadline.  If they're prepared to extend it, and no one else

10   has objected, other than Ms. Clonts, who I believe now

11   understands that the motion really doesn't pertain to

12   directly to her in any event.

13            So I will grant the motion and you can email that

14   order to chambers.

15            MR. ROBERTSON:  Thank you, Your Honor.

16            And, at this time, I would like to turn the podium

17   back over to my colleague, Benjamin Kaminetzky.

18            THE COURT:  Okay.

19            MS. KAMINETZKY:  Your Honor, that brings us to --

20   this is Benjamin Kaminetzky again of Davis Polk.  Good

21   afternoon.

22            That bring us to the final items on the agenda,

23   which is agenda items five, six, seven and eight.

24            I will be addressing those.

25            I'll turn things over to the media intervenors

1    shortly to address the specific objections that remain to

2    the sealing and redactions proposed by the Debtors and the

3    Sackler families.

4            But I thought it would be helpful before we jump

5    into merits to give the Court a brief overview of what's

6    been going on and kind of the numerous docket entries and

7    what's actually still --

8            THE COURT:  I think you may have hit -- I think

9    you may have hit mute briefly, Mr. Kaminetzky.

10           MR. KAMINETZKY:  Oh, I'm sorry.  I -- what I

11   propose to do is just to kind of update Your Honor on where

12   we are and what's still at issue because I think, quite

13   frankly, it'll make Your Honor happy as well as put

14   everything in context.

15           So -- and then I'll hand it over to Ms. Townsend's

16   representing the media parties to present any issues that

17   remain.

18           So, as you know, back in September, the UCC filed

19   two motions to compel the production of privileged documents

20   from the Debtors and the members of the Sackler families.

21           Motions to which the Debtors and the UCC reached a

22   negotiated resolution back in November.

23           Now, in connection with the UCC's privileges

24   motions, over 550 documents totaling almost 14,000 pages

25   were initially filed under seal or in case -- in the case of

Page 83

1    briefing heavily redacted an immense amount of material by

2    any measure and it's these materials that were the subject

3    of the media intervenors motions.

4            As Your Honor may recall, many of those papers

5    were initially filed under seal because they were, you know,

6    constituted documents produced and marked confidential

7    pursuant to the relevant protective orders entered in this

8    case or referenced such materials,

9            At the time, no party had objected to this sealing

10   until the media intervenors filed their motion in late

11   November.

12           It should not be left unsaid that there's no small

13   amount of irony to the fact that the parties are here today

14   on the media intervenors' motion to unseal.

15           The vast majority of the materials that are

16   subject to the motion were filed by the UCC and the

17   Sacklers, not by the Debtors.  And large swaths of it was

18   the Debtors' business material.  Hundreds, or multi hundred

19   page presentations to the Debtors' board of directors

20   containing detailed information about the Debtors' business

21   and product offerings, quarterly reports to the board and

22   the like.

23           Now why was this material filed?  The answer is

24   simple.  The bulk of the exhibits filed by the UCC and the

25   Sacklers are -- were intended to go to the merits of the

Page 84

1    parties' underlying liability argument and were filed so

2    that the parties could "tell their stories" through these

3    two discovery motions and specifically through various

4    arguments concerning the so-called crime fraud exception to

5    the attorney-client privilege.

6            But it was the Debtors who were caught in the

7    middle of the strategic decisions of the UCC and the

8    Sacklers to litigate by their stories, by proxy, through

9    these documents.

10           Now, in light of the fact that the hearing on the

11   privileges motions was until Monday evening scheduled to

12   proceed today, it was the Debtors who had to shoulder the

13   burden of reviewing thousands upon thousands of pages of

14   documents over the holidays, often page-by-page, and even

15   line-by-line.

16           The Debtors were and remain quite supportive of

17   the adjournment of the UCC's privileges motion and so the

18   Sacklers, so it means that the parties will continue to

19   dialogue.

20           But that doesn't change the fact, however, that

21   the Debtors were forced to evaluate reams of information

22   that we most assuredly, we, the Debtors, wouldn't have filed

23   and we had to do this in an extremely compressed timetable

24   demanded by the media parties.

25           With that out of the way, let me be crystal clear

Page 85

1    about one thing.  We agree, we fully agree, with the medial

2    intervenors that transparency in judicial proceedings is of

3    paramount importance not only to the parties and to the

4    Court, but also to the press and the American public.

5            There is intense public interest in these specific

6    Chapter 11 cases, understandably so.  Indeed, the Debtors

7    recognize that -- that as these cases enter their final

8    stages hopefully the public's impressed interest in these

9    proceedings is almost certainly to continue unabated.

10           And, for these reasons, the Debtors have been and

11   continue to be committed to transparency in these cases, a

12   commitment that I believe has been exemplified yet again by

13   the Debtors' response to the media intervenors motions to

14   unseal.

15           In short, over just a handful of weeks, a good

16   portion of which fell over Christmas and New Years, the

17   Debtors worked diligently to voluntarily unseal or authorize

18   the unsealing of the vast overwhelming majority of the

19   Debtors' information that was filed in connection with the

20   UCC privileges motion.  Again, mostly by parties other than

21   the Debtors.

22           And I don't think it would be an unfair or an

23   exaggeration in the slightest to say that the redactions

24   that remain are targeted and exceedingly narrow, in many

25   instances mere words or pages in exceedingly lengthy

Page 86

1    documents.

2              Now as Ms. Town said -- Townsend informed the

3    Court last night, the press and the parties have met and

4    conferred extensively and narrowed their disputes to

5    essentially two documents with redactions on a total of 42

6    pages.  That's .3 percent, not three percent, .3 percent of

7    the total pages filed in connection with the UCC's

8    privileges motion.  And there was a remaining issue as well.

9              Before turning the podium over to Ms. Townsend,

10   let me dispense with the remaining issue, at least as to the

11   debtors.  I don't speak to the Sacklers.

12             As Ms. Townsend informed the Court last night,

13   certain privilege log excerpts and related documents such as

14   compilations of individuals appearing on privilege logs that

15   were exchanged in discovery continued to remain under seal.

16   The debtors believe that withholding to be entirely

17   appropriate because, among other things, these materials

18   contain much information that has little or no relevance to

19   the case.

20             But, nevertheless, the debtors last night kept --

21   continued to consider the issue in good faith and can now

22   inform the Court, and we informed Ms. Townsend earlier

23   today, that the debtors do not now object to the unsealing

24   of the privilege log information so long as there is a

25   reasonable amount of time afforded to the parties to apply

Page 87

1    redactions to any commercially sensitive information which

2    might be theoretically in the subject lines or personally

3    identifiable information, such as email addresses, which is

4    consistent with the redactions that the debtors have applied

5    without objection to the other materials.

6             So in light of that, and I believe we could get

7    that done, Your Honor, in the next two weeks or so.  I

8    believe -- and then we could unseal that as well.

9             So I believe, Your Honor, we're down to literally

10   two documents.  And to be clear, it's not two documents

11   entirely under seal, but sporadic redactions in only two

12   documents that are still at issue, at least with respect to

13   the media and to the debtors.  And those are the documents

14   that Ms. Townsend identified last night, which is Mark Pries

15   Exhibit 137 as well as Leventhal Exhibit 123.

16            So, Your Honor, all that just to say is that we've

17   substantially -- I guess that would be an understanding.

18   We've narrowed the issues to certain redactions on two

19   certain documents that I think are still at issue.

20            But I now turn the podium over to Ms. Townsend who

21   we've been working with for the last several months and who

22   has been, quite frankly, a pleasure to deal with.

23            THE COURT:  Okay.  But before we do that, I just

24   want to -- I want to make sure the context for this is clear

25   in one respect.

1          There was extensive discovery in these cases

2     starting early in the cases between the creditors' committee

3     and the ad hoc committee of non-consenting states on the one

4     hand, and the debtors and the Sacklers on the other side,

5     not really on the other hand, the debtors and the Sacklers.

6          As part of that discovery, as is quite common,

7     customary, the parties, both the targets of the discovery

8     and the parties seeking discovery, agreed to protective

9     orders to be so ordered by me whereby they contemplated that

10    certain information provided in the discovery would remain

11    confidential and, in fact, at different levels of

12    confidentiality.  That's a common practice to enable

13    discovery to proceed quickly without fights over what is

14    produced in the first instance.

15          But those orders, as is my practice and the

16    practice of the judges in the Southern District, contemplate

17    that they are subject to review and motions to unseal such

18    information by third parties, including, of course, the

19    press.

20          The debtors have on the calendar today motions to

21    seal documents under Section 107(b) of the Bankruptcy Code

22    and there are sealing orders in the case.  But, again,

23    sealing orders under 107 also recognize, because they're

24    often sought on shorten notice, again, to permit pleadings

25    to be considered without fights over confidentiality by the

Page 89

1    Court and other parties that have access to the full

2    information.  But they are subject, again, to the rights of

3    others, including the press, to have the documents be

4    unsealed.

5            In all of these instances, the ultimate burden on

6    disclosure and more appropriately to prevent disclosure is

7    on the party who wants to prevent disclosure.

8            So I appreciate all of the work that the parties

9    have done to focus on what is properly now at this stage in

10   these cases fit for disclosure to the public and it is clear

11   to me that they've done it with a proper eye to the actual

12   law, which would require disclosure of almost everything,

13   and certainly the materials that have been disclosed, which

14   is almost everything and that we're now discussing a far

15   more constrained or limited set of items.  In fact, we're

16   now down, as far as the debtors are concerned, to two pieces

17   of information.

18           This is all, of course, separate and apart from

19   the privilege motion.  And I agree with you, Mr. Kaminetzky,

20   that the issue of the sealed documents is largely

21   precipitated by both the committee and the ad hoc committee

22   of nonconsenting states on the one hand and the Sacklers on

23   the other to litigate, not in front of me, but in public

24   eye, not a privilege motion, but to some extent the merits

25   of their respective positions vis-à-vis each other.

Page 90

1                So that's just an inescapable fact as to the state

2      in which these cases were in when those documents were filed

3      and everyone had to deal with that.  There was a period, of

4      course, where the parties were educating themselves and

5      ultimately the issues here are issues to be decided by a

6      court and not by public opinion.  But I don't -- I certainly

7      do not fault anyone for precipitating the disputes that were

8      raised by the media intervenors.

9                So with that, I'm happy to hear from the

10     intervenors' counsel, Ms. Townsend.

11               MS. TOWNSEND:  Thank you, Your Honor.  And for the

12     record, Katie Townsend of the Reporters' Committee for

13     Freedom of the Press on behalf of the media intervenors, Dow

14     Jones & Company Inc., Boston Globe Media Partners, LLC and

15     Reuters News & Media, Inc.

16               As Your Honor is aware and as you and Mr.

17     Kaminetzky have already indicated, in December and January

18     the parties in this matter met and conferred without

19     participation from the media intervenors and ultimately

20     publicly filed in unsealed redacted form the vast majority

21     of the material that was previously sealed in its entirety

22     and that was the subject of the media intervenors' motions

23     to unseal.

24               We've since reviewed those publicly filed

25     materials and we've met and conferred with the relevant

Page 91

1    parties who filed timely objections to the motions to

2    unseal.

3            At this point the media intervenors are in a

4    position to voluntarily withdraw their pending motions to

5    unseal without prejudice except as to 17 documents that we

6    contend are still improperly sealed or redacted.  And those

7    documents, 17 documents, Your Honor, fall within two

8    categories identified in our reply.  And I'll address both

9    of those categories briefly.

10           I'll start with two -- the two documents that Mr.

11   Kaminetzky referenced, Exhibit 123 to the October 14th, 2020

12   Leventhal declaration, and Exhibit 137 to the November 18th,

13   2020 Preis declaration.  Those documents have been redacted

14   by the debtors purportedly on the ground that they contain

15   confidential commercial information within the scope of

16   Section 107(b).

17           Now, Your Honor, Section 107(a), as you know,

18   makes any paper filed in a bankruptcy matter like this one a

19   public record open to public inspection unless one of the

20   express enumerated exceptions to that disclosure mandate

21   applies.  Those enumerated exceptions that are found in

22   Section 107(b) or -- and 107(c) are narrowly construed.  And

23   as we explain in our briefing, the Second Circuit has

24   interpreted commercial information in this context to be

25   information that, if disclosed, would give an unfair

Page 92

1    advantage to competitors by revealing details about the

2    entity's commercial operations.

3            With respect to 123, Exhibit -- excuse me, Exhibit

4    123 to the Leventhal declaration and Exhibit 137 to the

5    Preis declaration, the debtors assert the redactions are

6    warranted, and as Your Honor has already indicated they

7    therefore bear the burden of demonstrating that the

8    redactions falls within the scope of an exception to Section

9    107, and that there's a compelling need to preclude public

10   access.

11           It's the media intervenors' position that they

12   have not met that burden with respect to these two

13   documents.  Exhibit 123 is a slide presentation dating back

14   to mid-2016 and we understand that the information redacted

15   from that presentation consists of internal projections

16   about exclusivity periods for certain products.  It's our

17   understanding including opioid products.

18           Exhibit 137 is a 2017 memorandum from Purdue's

19   president and CEO, Mr. Landau expressing his views about the

20   challenges that have been facing the company.  Large swats

21   of that memorandum are -- have been redacted and remain

22   under seal.

23           It's not at all clear and it's our position the

24   debtors haven't demonstrated that unsealing these documents

25   in their entirety, particularly given that they are at least

Page 93

1    four or five years old at this point, would give an unfair

2    advantage to any competitor of Purdue Pharma.  And for that

3    reason we argue that they should be unsealed.

4          With respect to the remaining 15 documents, and I

5    understand that the debtor's position with respect to these

6    has changed and so Mr. Kaminetzky didn't address them.

7    Those are privileged logs --

8          THE COURT:  Well, why don't we ask, do the

9    Sacklers still oppose the unsealing of the privilege logs?

10          MR. JOSEPH:  Your Honor, Gregory Joseph for the

11    Raymond Sackler family.  Yes, that is the one thing that we

12    do oppose.

13          THE COURT:  Okay.  All right.  I'm sorry to

14    interrupt you, Ms. Townsend, but I wanted to make sure that

15    you were arguing -- that you needed to argue on this point.

16    But you do, so go ahead.

17          MS. TOWNSEND:  Thank you, Your Honor.

18          With respect to those documents, so those are the

19    privileged log materials, and they include excerpts of

20    privilege logs that were filed as exhibits in connection

21    with the UCC's privileges motion and those are currently

22    sealed -- that are currently sealed in their entirety.

23          So setting aside the debtor is the only party to

24    timely file an objection to the unsealing of the privilege

25    log materials and the only party to offer I would say any

1    form of a substantive argument for doing so is the Raymond

2    Sackler family party, and so I'll briefly respond.  We've

3    done so a bit in our reply, but I'll briefly respond to what

4    I understand their arguments in favor of continued sealing

5    of those materials, what I understand those arguments to be.

6         First, in the written objections, the Raymond

7    Sackler family relies upon this argument that these

8    materials are not evidence and, therefore, they can be

9    sealed in their entirety.  It appears to me that their

10   position is that the materials here are not judicial records

11   to which the common law presumption of public access applies

12   or that the common law presumption is weaker here.

13        Now to be clear, we disagree that these are

14   nonjudicial records.  We've argued for their disclosure

15   under the First Amendment as well as Section 107 and as

16   we've pointed out --

17        THE COURT:  Well --

18        MS. TOWNSEND:  -- in our reply brief --

19        THE COURT:  -- can I interrupt you on this point?

20   I want to make sure I have -- I want to -- I'm sorry to

21   interrupt you.  I want to make sure I have the facts

22   straight on this.  These are not just privilege logs that

23   were provided in discovery.  They were actually filed on the

24   docket as exhibits to various declarations in the privilege

25   litigation, correct?

1          MS. TOWNSEND:  That is correct, Your Honor.  We do

2    not seek --

3          THE COURT:  Okay.

4          MS. TOWNSEND:  Our motions do not seek any unfiled

5    discovery material merely exchanged between the parties,

6    only material that was filed.

7          THE COURT:  Okay.  Okay.  So you can go ahead.  I

8    just wanted to make sure that was clear on the record.

9          MS. TOWNSEND:  Thank you, Your Honor.

10         I think that my next point will sort of dovetail

11   with precisely that.  We do -- it is our position, and as we

12   stated in our reply, that the interpretation of the Second

13   Circuit's decision in Brown v Maxwell is not right, but I

14   think that's a little bit besides the point because we have

15   not moved to unseal these materials under the common law

16   presumption of access because in bankruptcy proceedings the

17   common law presumption has been displaced by Section 107.

18         And so the question here is not, you know, whether

19   or not these are judicial records to which the common law

20   presumption applies and whether that right has been

21   overcome, but rather whether Section 107 applies and, if it

22   does, which it clearly does because Section 107(a) doesn't

23   just apply to any paper.  And this is by plain language.

24   It's expressed in plain language.  It applies to any paper

25   filed in a case under -- in -- under -- in bankruptcy.

1          So Section 107(a) plainly applies to these

2   materials because they were filed in connection -- they were

3   filed with the Court in this matter.  The question then

4   becomes does an exception apply.

5          Now with respect to the privileged materials as a

6   whole, the Raymond Sackler family has not asserted that any

7   specific exception would, under 107(b) or (c) applies to

8   make those documents not properly unseal -- not -- doesn't

9   require them to be unsealed.  And quite frankly, Your Honor,

10  I can't think of what possible argument that would be --

11          THE COURT:  Well --

12          MS. TOWNSEND:  -- if they are --

13          THE COURT:  -- the only one I can really think of

14  here is the one identified by Mr. Kaminetzky, which is

15  personally identifying information might be in the privilege

16  log for some reason.

17          And you don't have any problem with that being

18  redacted, do you?

19          MS. TOWNSEND:  No.  And to be clear, I was

20  referring to the documents as a whole.  I think to the

21  extent that there is -- that there are -- there is properly

22  with -- that there can be properly redacted, you know, non-

23  public personal identifying information, you know, we

24  wouldn't challenge the redaction of material that actually

25  does fall within an exception.

1          I think I would flag for Your Honor that it's my

2   understanding that the Sackler family parties are -- have --

3   are taking the position, and I'll be frank.  We didn't

4   realize this until meet and confer discussions with their

5   counsel that some of the material would also necessarily

6   from their perspective need to be redacted because it

7   includes counterparty information, so business and

8   investment counterparty information.

9          And the basis that they've asserted for that,

10  which they sort of dealt with as a separate category in

11  their objections to our motions to unseal, is the Court's

12  May 1st, 2020 ruling which brought that material within the

13  scope of sort of a heightened level of protection under the

14  protective order governing discovery.

15          And I think our position there would -- is sort of

16  two-fold:  One, the fact that there is a -- you know, the

17  propriety of the scope of a protective order governing

18  discovery, which is entered on a different standard, a good

19  cause standard, is not really what's at issue here.  What's

20  at issue here is whether this material that was filed with

21  the Court is accepted from disclosure under Section 107.

22          So I would respectfully to the Sackler family's

23  counsel say that the existence of the protective order or

24  the fact that this material is subject to a protective order

25  that governs discovery is not relevant at this stage.  In

Page 98

1    fact, most of the material as you've indicated that has been

2    unsealed to date was subject to a protective over governing

3    its provision in discovery.  And, again, those -- as Your

4    Honor's already indicated, protective orders certainly serve

5    different purposes in litigation than a sealing order does.

6           And you would -- we would contend that that

7    material also does not fall within one of the express

8    exceptions under Section 107.  It's not confidential

9    commercial information.  It's not trade secret information.

10   It's not research and development information, the specific

11   categories that have been identified -- that are identified

12   or expressly enumerated in Section 107(b).

13          And so for that reason, too, we would argue that

14   the privilege log materials should be disclosed.  To the

15   extent that there are redactions, that that material that is

16   properly within the subject of an exception to 107, that

17   would be non-public TII, for example, that material could be

18   redacted, but those redactions have not been made.  The

19   material has just been sealed in its entirety.

20          And I think, Your Honor, that really covers the

21   waterfront with respect to the material that's -- the 17

22   documents that we -- that are still at issue.  I would be

23   happy to answer additional questions Your Honor has with

24   respect to those materials.

25          THE COURT:  Well, I have a question for the

Page 99

1    parties.

2             We have been looking for a complete version, both

3    redacted and unredacted, of Exhibit 123 to the Leventhal

4    declaration and Exhibit 137 to the Preis declaration and

5    don't have them.  I would like someone to email those to

6    chambers immediately so I can look at them, both the

7    redacted and unredacted versions.

8             MR. HURLEY:  Your Honor, this is Mitch Hurley with

9    Akin Gump on behalf of the official committee.  We can

10   certainly take care of sending the Preis exhibit you

11   referenced.  And whatever version of the Leventhal exhibit

12   we have we will send as well.

13            THE COURT:  Okay.  And, again, I need both the

14   complete and the redacted ones.

15            MR. KAMINETZKY:  Well, Your Honor, we could --

16   this is Ben Kaminetzky.  I'll have someone do that from my

17   office right away --

18            THE COURT:  Okay.

19            MR. KAMINETZKY:  -- both of them --

20            THE COURT:  Thank you.

21            MR. KAMINETZKY:  -- together.

22            THE COURT:  Okay.

23            MR. KAMINETZKY:  Your Honor, would you like to --

24            THE COURT:  All right.

25            MR. KAMINETZKY:  This is -- I'm sorry.  Would you

1    like to deal with the privilege log issue with --

2            THE COURT:  Yeah.

3            MR. KAMINETZKY:  -- the Sacklers or --

4            THE COURT:  We should deal with -- why don't we

5    deal with the privilege logs while I'm waiting to get those

6    other two exhibits.

7            MR. KAMINETZKY:  Okay.  So I will --

8            THE COURT:  So I take that -- I think that means

9    Mr. Joseph?

10           MR. JOSEPH:  Yes, Your Honor.  May it please the

11   Court, thank you.

12           Your Honor, the only issue concerning the

13   privilege logs that I would like to raise is, first, it's

14   only relevant to the general challenges motion which has

15   been adjourned at the request of the UCC to see whether it

16   can be resolved.  As -- and I'll come in a moment to the

17   fact that it has been overwhelmingly resolved so far.

18           But this motion, the general challenges motion,

19   hasn't been heard, may never be heard.  And if it is heard,

20   we're talking about a series of entries that are not

21   evidence, that are not evidential, that are tools that are

22   used for the Court to help identify what the nature of the

23   claim is and how to resolve the evidence issue.  Ninety

24   percent of the entries being sought are irrelevant to any

25   decision the Court would ever render on the general

Page 101

1    challenges motion.  That's because during the briefing

2    process, the parties have streamlined the dispute so that

3    almost 90 percent of the entries that the media is seeking

4    will never be relevant, will never be used by the Court to

5    decide the motion.

6            Hurley Exhibit B, which was the privilege log

7    entry exhibit filed with the opening briefs contains over

8    12,500 entries.  Preis Exhibit B, which was filed on reply,

9    cut that number to 1,661 entries.  So that eliminated

10   approximately 90 percent of the initial privilege log

11   entries from potentially even being relevant to Your Honor's

12   decision and we've cut that number down.  By making another

13   production it's still a number in excess of 1,500, and this

14   process is continuing.  That was the reason why the UCC

15   sought to defer the motion for which these are relevant.

16           And we suggest, Your Honor, that 107 under the

17   Second Circuit's opinion in Orion codifies the common law

18   right of access and it specifically says the right is not

19   absolute.  The Court has to grant the motion to protect if

20   it's under 107(b) in there particular categories, but it has

21   discretion.  And the Supreme Court says that when a statute

22   covers an issue that's previously governed by the common

23   law, the statutes interpreted consistently with the common

24   law with the presumption that congress intended to read --

25   retain the substance of the common law.

Page 102

1          So if we look at what the law is in this area, the

2     leading decision is the decision by the Second Circuit in

3     Brown.  And the Court said that the weight to be given a

4     presumption of access for discovery materials depends on the

5     role the material plays in the exercise of judicial power

6     and the resulting value of the information to people, the

7     media and the public monitoring the federal courts.

8          And the reason it says that is it distinguishes

9     summary judgment materials.  It says those are automatically

10    reviewable.  That's going to lead to an adjudication on the

11    merits.  That's an act of government that has to be

12    reviewable.  But a discovery issue is not an adjudication on

13    the merits.

14         And here we know that if this motion is decided,

15    it's not going to be used -- Your Honor will not be using at

16    least 90 percent of the materials which the media is

17    seeking.  Brown says that you look at the role the material

18    plays in the exercise of judicial power.  Well, we know even

19    for the ten percent that remains it's not comparable to

20    summary judgment evidence.  It's not any evidence.  It's not

21    something you would decide in adjudicating a substantive

22    motion.

23         Public access isn't going to facilitate any

24    meaningful public monitoring of the Court's function and its

25    exercise of its function.  All the relevant entries are

Page 103

1    quoted in the briefs.  And there is prejudice in unsealing

2    these materials.  They do contain the names of investment

3    counterparties which Your Honor ruled on May 1 would cause

4    harm to the estate because it would cause harm to the

5    Sacklers in connection with their ability to fund any

6    settlement.  They contain personally identifying

7    information.  All of that would need to be redacted.

8           But there's another prejudice here, too.  It's no

9    secret that our clients have been vilified in the media.

10   They're harassed and threatened on social media.  So

11   publishing thousands of irrelevant entries listing

12   communications with others over a 25-year period will permit

13   those others to be harassed and threatened, and there is no

14   legitimate need for public access to non-evidence.

15          It's also -- if you think, Your Honor, about this

16   for a moment.  Suppose they had made this motion initially

17   when the Hurley Exhibit B was the standard.  Then there

18   would have been 12,500 entries that were potentially

19   relevant.  Now there are about 1,500.  The parties are

20   speaking to see whether they can resolve this general

21   challenges motion altogether and render them entirely

22   irrelevant.  If that happens, then this whole issue as to

23   which these non-evidential privilege log entries were filed

24   would be moot.

25          I would suggest, Your Honor, that at a minimum

Page 104

1    this motion is premature because if the parties succeed in

2    resolving the general challenges motion, then none of these

3    materials are ever going to be relevant to a judicial

4    decision.  The issue is going to be moot.  Under the common

5    law, Judge Preska (ph) and Magistrate Judge Ellis have ruled

6    documents submitted on a motion that is moot are not

7    judicial documents under the common law.

8            So we would ask the Court if it's not inclined to

9    deny this motion, to adjourn it to the date which is set for

10   the general challenges motion if that's not resolved.  And

11   we would also know at that point which, if any, entries

12   might actually be considered by the Court and be relevant to

13   the Court in rendering a decision.

14           Thank you, Your Honor.

15           THE COURT:  The issue as to the counterparties,

16   are those current counterparties or past counterparties?

17           MR. JOSEPH:  We are concerned about current

18   counterparties.  That is what Your Honor permitted us to

19   redact.  But we'll have to --

20           THE COURT:  Would --

21           MR. JOSEPH:  -- go through, you know, thousands --

22           THE COURT:  -- that be -- but as far as the

23   privilege logs are concerned, is that -- I mean, are there

24   current counterparties on the privilege logs who are engaged

25   in business not as advisors, but in business with your

1    clients?

2             MR. JOSEPH:  Your Honor, because there were 20,000

3    entries on those logs, I can't answer that.  I can tell you

4    we -- on the initial set of logs.  We will have to go

5    through and identify.  But we have provided who's who of

6    people on logs which include counter -- investment

7    counterparties.  But we would have to see whether they're

8    within either the 12,500 or the 1,661 or whatever the

9    ultimate number of relevant entries is, depending on Your

10   Honor's decision.

11            THE COURT:  But that hasn't been done yet I

12   gather?

13            MR. JOSEPH:  We did -- correct.  We did not make

14   that review because we don't have Your Honor's permission to

15   do it.  This is now an application to unseal and we would

16   have to get permission to be able to continue to do that

17   just like the personally identifying information, which was

18   also ordered on May 1.

19            THE COURT:  All right.  Have you given me the

20   cases on mootness?

21            MR. JOSEPH:  No, Your Honor, we have not.

22            THE COURT:  Okay.  So what are those cites?

23            MR. JOSEPH:  Yes.  International Equity Investment

24   Inc. versus Opportunity Equity Partners, 2010 Westlaw

25   779314.  That's Magistrate Judge Elli's opinion holding that

Page 106

1    the motion became moot when the parties entered a

2    stipulation that resolved the issue raised by the motion.

3    Thus the Court didn't use the documents to make a

4    substantive determination because of the targeted doc --

5    because targeted documents don't fall within the category of

6    judicial documents.  There's no presumptive right of access.

7            The second case is Giuffre, G-I-U-F-F-R-E, versus

8    Maxwell, 2020 Westlaw 133570, and that's Judge Preska's

9    decision from January 30th of 2020 in which she holds that

10   all disputes regarding the underlying merits of the action

11   have been rendered moot by the settlement.  There's, thus,

12   no live controversy to which a judicial power can extend.

13   There was never and now never can be a judicial decision-

14   making process that would trigger the public's right to

15   access the undecided motions and the documents relevant to

16   them.

17           And the Court, Judge Preska, does say in a

18   footnote that the Court will have to consider the issue of a

19   motion that's been submitted and hasn't been decided.  But

20   this is a discovery motion.  This is not a summary judgment

21   motion which as a matter of law means that every document

22   filed is entitled public access.  Lougash (ph) says that and

23   Brown says that.  This is a discovery motion and we're

24   dealing with devices or tools, not evidence.

25           Thank you.

1               THE COURT:  Okay.

2               MS. TOWNSEND:  Your Honor, this is Katie Townsend

3     for the media intervenors.  May I respond briefly to the

4     argument that has been made by Mr. Joseph?

5               THE COURT:  Sure.

6               MS. TOWNSEND:  Thank you.  And I would be happy,

7     Your Honor, as well, to the extent that Your Honor wants to

8     take this under submission, we could certainly provide

9     additional briefing to the Court on these issues.  I note

10    that the two cases that have been cited by Mr. Joseph,

11    neither of those are bankruptcy cases.  And I -- we would

12    agree as the Second Circuit concluded in Orion that Section

13    107(a)'s disclosure requirement is not absolute; that it is

14    qualified, but it is qualified expressly, solely by the

15    exceptions that are set forth in Section 107.  And, again,

16    Section 107(a)'s language that indicates that it applies to

17    any paper filed I think would be controlling in this case.

18               I would also note that the Giuffre Maxwell case,

19    Judge Preska's decision, cited -- that was cited by Mr.

20    Joseph is, in fact, is the same case on remand in the Brown

21    v Maxwell case that was cited by the Sackler family parties

22    in their briefing and again indicates to the contrary that

23    material that is cited, that is filed in connection with a

24    discovery motion, it's not as though the common law

25    presumption does not apply to those materials.  I think the

Page 108

1    Second Circuit in Brown v Maxwell make clear that even if

2    the presumption is weaker, it certainly still applies.  And,

3    again, I would note that we think that the presumption has

4    been displaced in this context by Section 107 of the

5    Bankruptcy Code.

6              I would also just want -- like to take issue, I

7    think, with the notion that there's a sort of temporal, you

8    know, sort of a time period when material could be

9    accessible to the public and that that can change depending

10   on actions taken by the parties.  So taken to its logical

11   conclusion, I think the arguments that Mr. Joseph is making

12   is that if a party were to file a motion for summary

13   judgment under seal, that the public would have a right of

14   access to that if it moved to unseal.

15             But if the parties then reached a settlement

16   agreement and withdrew those motions for summary judgments,

17   that the right of access would sort of evaporate into thin

18   air.  And I think that that's just contrary to existing law

19   that makes very clear that the right of access both under

20   the common law and the First Amendment where it applies is a

21   contemporaneous right of access.  The Supreme Court in

22   Nebraska Press against Stewart, the cite for that is 423 US

23   13 -- 1327.  It's a 1975 decision that makes clear that sort

24   of each day that access is delayed or denied to the public

25   constitutes a separate and cognizable infringement on the

Page 109

1    First Amendment right of access.

2              And other lower courts agree, the Fourth Circuit

3    in Doe against Public Citizens, the cite for that is 749

4    F.3rd 246.  That's a 2014 decision from the Fourth Circuit

5    make clear that when the public and press have a right of

6    access to court documents, that right is contemporaneous.

7    In other words, the right of access attaches.

8              And Section 107(a), again, I think it displaces

9    the common law right, but it certainly applies on its face

10   to any paper filed.  It applies as soon as that material is

11   filed with the Court.  There's no sort of temporal

12   requirement that the Court rule on a motion or dispose of a

13   motion, and that includes a motion for summary judgment.  It

14   includes any kind of motion filed with the Court in order

15   for the public's right of -- to have a right of access to

16   that material.

17             So I think fundamentally that argument is simply

18   mis-- the way that the public's right of access operates.

19   It is intended to allow members of the press and public to

20   observe the progress of proceedings.  And that certainly can

21   mean that motions for summary judgment are filed.  The

22   public sees those motions for summary judgments, and then a

23   settlement is reached.  It can mean that a motion to compel

24   is filed and that the party ultimately withdraws that or

25   narrows the scope of issues -- of the issues to be presented

Page 110

1    by that motion to compel.  That happens routinely.  It

2    doesn't alter the public's right of access to that material.

3              And I think finally, Your Honor, I would note that

4    again with respect to the business and investment

5    counterparty information, there simply is no exception under

6    Section 107 that would apply to that type information.  If

7    you look at the May 1st, 2020 hearing that Mr. Joseph

8    referenced, he argued at that hearing that the basis for --

9    and, again, we weren't talking about, we weren't talking

10   about sealing material filed with the Court at that point.

11   We were talking about how material exchanged between the

12   parties, the discovery process would be handled by those

13   parties.

14             He contended that to -- that for certain

15   counterparties to be publicly associated with the Sackler

16   family would cause them to, you know, pull away or terminate

17   relationships or potentially end relationships with the

18   family because of that association.  That is not a trade

19   secret information.  That is not research and development

20   information.  That is not confidential commercial

21   information that its disclose would harm an entity's

22   business by giving an unfair advantage to its competitors.

23   It's just simply not the type of information that the

24   exceptions to 107 were intended or the purpose of Section

25   107 -- the exceptions to 107 were intended to protect.

Page 111

1          And so I think I would just finally say, Your

2     Honor, that with respect to PII, and I think the parties

3     would -- and the redaction of PII and the privilege log

4     materials, you know, I think the parties would agree with me

5     that the media intervenors have not objected to that in a

6     number of the vast majority of the documents that have been

7     filed.  Therefore, to the extent the Court would like to

8     proceed to the debtor's request for a reasonable period of

9     time for the parties to review those materials to redact

10    PII's, which is non-public email addresses, things of that

11    nature, the media intervenors would not object to that as a

12    way of moving forward with respect to these materials.

13         And with that, Your Honor, again, we're happy if

14    you would prefer -- if you would like or need additional

15    briefing on any of the legal issues, we're happy to provide

16    that.

17         THE COURT:  Okay.  Let me go back to Mr. Joseph.

18         I obviously reviewed the Orion Pictures case

19    before this hearing.  I've looked at it again.  I don't see

20    a recognition by the Circuit in that case that there are any

21    exceptions in 107(a) other than those in 107(b).  Am I

22    missing something?

23         MR. JOSEPH:  Well, Your Honor, on page 27 -- I'm

24    just going to read two sentences if I may.

25         THE COURT:  Right.

Page 112

1           MR. JOSEPH:  Although the right of public access

2    to court records is firmly entrenched and well supported by

3    policy and practical considerations, a right is not

4    absolute.  There's a cite to Colliers.  And then it says, in

5    limited circumstances the Court must deny access to judicial

6    documents generally where open inspection may be used as a

7    vehicle for improper purposes.  Generally, not exclusively.

8    That's not limited to the exceptions in 107(b).

9           Here, the entire purpose on May 1 of not

10   permitting investment counterparty information to go even to

11   the parties int his case was to avoid a leak to the press.

12   That doesn't change because the press now comes to seek it

13   directly.  Counsel --

14           THE COURT:  But --

15           MR. JOSEPH:  -- Ms. Townsend --

16           THE COURT:  But on the other hand --

17           MR. JOSEPH:  I'm sorry, Your Honor.

18           THE COURT:  But congress in 107(a) says, except as

19   provided in Subsections (b) and (c) a paper filed in a case

20   under this title in the dockets of a Bankruptcy Court are

21   public records and open to examination.

22           MR. JOSEPH:  Your Honor, I think that there is a

23   fair argument that a privilege log that is sent as a tool to

24   permit the Court to identify documents isn't a paper that's

25   contemplated by that.  But I'm not going to say that.  I can

1    rely on Orion which gives the Court discretion.  There is no

2    --

3              THE COURT:  Well --

4              MR. JOSEPH:  -- proper purpose in getting --

5              THE COURT:  -- the Court only considered 107(b).

6    It didn't consider any other basis for sealing the

7    documents.

8              MR. JOSEPH:  That's true.  But that is two

9    paragraphs down when it actually goes to the statutory

10   exception.  That's subsequent to its recognition of a

11   discretionary exception.  And that --

12             THE COURT:  Well --

13             MR. JOSEPH:  -- is where the inspection may be

14   used as a vehicle for improper --

15             THE COURT:  -- do you have any case that provides

16   a discretionary exception that's not within the ambit of

17   107(b) in a bankruptcy case?

18             MR. JOSEPH:  Other than Orion I do not, Your

19   Honor.

20             THE COURT:  Okay.  And I read that language in

21   Orion as just sort of an introductory discussion of the

22   topic of sealing and not a construction of 107(a).  I mean,

23   it -- I don't see how a judge-made rule, which is what I

24   think we're talking about in the Brown case and other cases,

25   can override a statute.

Page 114

1          MR. JOSEPH:  Your Honor, the Orion case cites the

2    Nixon decision citing a Rhode Island case saying in this

3    hypo -- in this example, a court can ensure its records are

4    not used to promote public scandal.  I mean, it does --

5          THE COURT:  Well, but that -- if that's --

6          MR. JOSEPH:  -- use its discretion in --

7          THE COURT:  I mean, that's a separate provision in

8    107(b).  It protects a person with respect to scandals or

9    defamatory matter.

10          MR. JOSEPH:  I do understand that, Your Honor.  I

11    do understand that.  But --

12          THE COURT:  I mean, I -- look, I see the language

13    you're referring to.  Court's do sometimes like to explain

14    why there are exceptions to something that's a very

15    important public policy, i.e. the First Amendment or common

16    law right to access.  And the heading of that section is

17    common law right to access, but it's -- I guess I view that

18    as just an introduction to what the Court actually had to

19    decide which is what exception is there to 107(a).  And it

20    only applied 107(b).  It didn't look at anything else.

21          MR. JOSEPH:  In that case, Your Honor, I cannot

22    disagree.  But I think it's relevant that the discussion of

23    107(b) comes up in connection with the common law right of

24    access because the Supreme Court tells us that when a

25    statute covers an issue that was governed by the common law,

Page 115

1   it should be interpreted consistently.  There have to be

2   some limits, which is why the Court talks about improper

3   purposes.

4           And common law --

5           THE COURT:  Well, I guess -- although, I mean, the

6   statute I think arguably isn't a major change from common

7   law because (b) largely covers common law provisions.

8           MR. JOSEPH:  But common law does go --

9           THE COURT:  The common law concept.  In one way it

10  makes it broader with the absolute protection for trade

11  secrets or confidential research development or commercial

12  information.  And then it has the protection against

13  scandalous and defamatory matter.

14          What it doesn't include, what -- and what is

15  included in Rule 12(f) is irrelevant matter.  But I think

16  that's a -- you know, that -- that's a motion to strike

17  something in a pleading, not a --

18          MR. JOSEPH:  Well --

19          THE COURT:  -- an access to pleadings in the first

20  place.

21          MR. JOSEPH:  -- the Court has -- I mean, the Court

22  has access -- the Second Circuit has applied 12(f) beyond --

23  in this -- beyond just filings of pleadings in the case.

24          But, Your Honor, on that reading, which is Ms.

25  Townsend's reading that 107 applies to any paper filed, then

Page 116

1   in a case like this it could be used as a vehicle to put in

2   anything for ulterior reasons that -- and then ask the press

3   to come and get it.

4           THE COURT:  No, but if there are --

5           MR. JOSEPH:  I mean --

6           THE COURT:  But, again, if there ulterior reasons,

7   then (b)(2) would protect the person.

8           MR. JOSEPH:  Well, but I'm talking about non-

9   scandalous and defamatory.  I mean, it could be all sorts of

10   things that disclose information just to harm, which is what

11   investment counterparty information does.

12           THE COURT:  Well --

13           MR. JOSEPH:  Disclosing information --

14           THE COURT:  -- but we don't -- I guess that's a

15   separate point that I wanted to raise.

16           One of the key points from the Brown decision,

17   Giuffre v Brown or Brown v Giuffre, and then Brown v Maxwell

18   is that the Court needs to engage in a particularized

19   analysis.  I don't know what the level of harm here is.  You

20   know, it's -- it -- that analysis hasn't been done by the

21   party that's looking to have these remain sealed.  I don't

22   know if there's a threat to safety, for example.  You know,

23   I would think that the most persuasive set of facts for your

24   argument, that there's got to be something beyond 107(b) to

25   prevent public access to something filed in a bankruptcy

Page 117

1    case, or (c) which deals with personally identifiable

2    information, would go to the safety of a person.

3              And yet I don't know whether there's any -- I

4    don't know whether any particular one of these has that

5    issue.  It's not been -- in other words, there's a blanket

6    sealing here.  So it would seem to me that pending that

7    review, the privilege logs should be disclosed with the

8    exception of what's covered by 107(c) personal identifiers,

9    and however without prejudice to the making of a motion,

10   which I would decide on an actual factual record as to

11   whether there is some level of information that is protected

12   here either under 107(b)(1) or (2) or under some common law

13   theory.

14             But I'm just -- we're just hypothesizing right

15   now.  We really don't know what we're talking about.

16             MR. JOSEPH:  But, Your Honor, if I may --

17             THE COURT:  So it seems to me that the burden on

18   this point should be -- since you're going to be reviewing

19   the documents anyway, would be to raise it in that context

20   as opposed to in a general context.

21             MR. JOSEPH:  Your Honor, counsel for the press has

22   suggested briefing.  I've been provided by one of my

23   colleagues with a Bankruptcy Court case from the District of

24   Delaware that does contemplate that a Court retains

25   authority to seal documents when justice so requires.

Page 118

1    Owings Corner Armstrong 560 --

2              THE COURT:  Well, that -- that's fine.  But I

3    guess my issue is I would like to know when justice so

4    requires beyond just the proposition, which is not on the

5    record before me at this point.

6              MS. MONAGHAN:  Your Honor, this is Maura Monaghan

7    from Debevoise & Plimpton.  I represent the Mortimer Sackler

8    branch of the Sackler family.

9              THE COURT:  Right.

10              MS. MONAGHAN:  I just wanted to raise one

11   complication to perhaps discuss about process for making

12   that showing.

13              Your Honor raised the concern about safety which

14   is a real concern and does, we think, require redaction of

15   certain names.  The trouble is if we file something making

16   that motion on the docket, that itself becomes a filing and

17   we have concerns about copycats.  I don't know if Your Honor

18   has any suggestion for a procedure to address that concern.

19   But one of the cleft sticks (sic) we find ourselves in is we

20   don't necessarily want to publicize the threats against our

21   clients and, you know, where those threats took place or

22   what types of threats they were.

23              THE COURT:  Well, has this been discussed with the

24   media parties at all?

25              MS. MONAGHAN:  I don't believe it's been up for

Page 119

1    discussion until now.  We could have that conversation --

2              THE COURT:  All right.

3              MS. MONAGHAN:  -- with Ms. Townsend.

4              THE COURT:  Look, I want to step back for a

5    second.

6              As everyone on this -- every lawyer on this call

7    knows, I really like the briefing to be in advance because I

8    rule from the bench and because these matters need to move

9    ahead and don't warrant delay with a written opinion.

10             Normally I would be quite cross with parties that

11   haven't cited me any of the applicable case law, in fact,

12   any of the actual reasons for denial of the motion except

13   for the reason that was asserted based on the information

14   being irrelevant, which is actually something that I was

15   able to research and it was actually well dealt with in the

16   context of 12(h) -- I'm sorry -- 12(h) -- 12(f) of the

17   federal rules by another District Court, a later District

18   Court.

19             So on the other hand, this motion as it was

20   originally styled and pursued covered an enormously greater

21   amount and range of documents, and the parties have been

22   working hard on narrowing those down and saving the Court

23   from a lot of work on a lot of other issues.

24             I still don't have copies of the other two

25   documents that I actually need to focus on to see if

Page 120

1     107(b)(1) applies.  So I guess all things considered rather

2     than simply saying, no, I'm not going to take any more, you

3     had your chance and that's it.  It probably makes sense for

4     the parties to discuss these two documents as well as give

5     me those documents and I guess provide me at least with the

6     case law on this in simultaneous briefs.

7            I have to say that generally speaking it's hard to

8     see how privilege logs really would lead to anything

9     material in a newspaper story.  But that's not ultimately

10    the point except to say that it's probably worth adjourning

11    this so that I can get those briefs and decide it at the

12    next omnibus hearing with the actual pleadings -- I'm sorry

13    -- the actual court filings that are sought to be redacted

14    and a further description of what the concern is in real

15    terms that the Sacklers have with regard to the privilege

16    logs.

17            In that context, I would expect the media

18    representatives to act responsibly about some means to

19    protect people from public disclosures, to threats on their

20    life or their safety.  That's not something that any

21    reputable media outlet and certainly the media companies

22    that are part of Ms. Townsend's client group are responsible

23    media companies.

24            So I am assuming you would -- you people would be

25    able to work something out on that point so that I could

Page 121

1     have a proper record before me.

2          MS. TOWNSEND:  Your Honor, this is Katie Townsend

3     on behalf of the media intervenors.  Just to be clear, this

4     is the first throughout this entire process that we have

5     heard anyone raise any concern with respect to any of the

6     documents that were at issue here, about any --

7          THE COURT:  Well, I understand, Ms. Townsend.

8     And --

9          MS. TOWNSEND:  Okay.

10         THE COURT:  -- frankly, I came into this hearing

11    about 99 percent sure that I would grant your motion as to

12    the privilege logs except for personally identifying

13    information covered by 107(c).

14         But it could be met by the Sacklers' own motion to

15    seal under 107(c) even if I directed these to be unsealed

16    upon a proper review by them, which is really all that I'm

17    asking to have happen at this point.  And so, you know, I

18    think that's just where we are.

19         And I have it hard to belief, put it differently,

20    I find it hard to believe that any press account related to

21    this case generally would be unduly delayed because

22    privilege logs weren't provided, given everything else

23    that's been provided as far as claims and defenses asserted

24    by the parties that go right to the merits.

25         MS. TOWNSEND:  Your Honor, I don't think --

Page 122

1           MR. LEES:  Your Honor, this is --

2           MS. TOWNSEND:  Oh, I apologize.  Go ahead.

3           MR. LEES:  Your Honor, this is Alex Lees at

4    Milbank for the Raymond Sackler family.  I'm co-counsel to

5    Mr. Joseph.  I just wanted to make one observation of the

6    facts so that the record is clear, which is that our

7    position with respect to the right to redact counterparty

8    names in the public versions of documents that was filed was

9    made in our statement in response to the original motion to

10   unseal filed by the press intervenors.

11          THE COURT:  Yeah.  No, I know --

12          MR. LEES:  And --

13          THE COURT:  -- it was.  But it wasn't

14   particularized.  I didn't know who those people were, you

15   know, what it was, you know.  I mean, it -- whether they're

16   current, whether they're past.  It's just sort of a general

17   statement.  So it's fine as far as it goes, but it's just --

18   you know, if -- as far as meeting a burden, it's just not

19   there.

20          MR. LEES:  Understood, Your Honor.  We had

21   intended to rely on the previous colloquy and ruling in the

22   court.  But I understand the point and we will address it in

23   a more particularized way given the opportunity for further

24   briefing.

25          Thank you.

 1                THE COURT:  Okay.  All right.

 2                Now, Ms. Townsend, you were going to say

 3     something, too.

 4                MS. TOWNSEND:  Your Honor, I was just going to say

 5     that I understand the predicament that you're in.  I mean, I

 6     think we came into this -- the media intervenors came into

 7     this hearing very much of the view that the parties had not

 8     met their burden to demonstrate that this material to remain

 9     sealed precisely because they have not made a particularized

10     showing.

11                THE COURT:  Right.

12                MS. TOWNSEND:  I think that to the Court -- we do

13     not object to the Court giving the parties a reasonable

14     opportunity to -- to giving the parties, including the media

15     intervenors an opportunity to submit additional simultaneous

16     briefing, and provided that the party -- to the extent that

17     the parties are arguing that portions of these documents

18     should remain sealed, that they do, in fact, make that

19     particularized showing for the Court.

20                I recognize we could talk a little bit more about

21     process.  I am happy to defer to whatever Your Honor thinks

22     is the right process, but I want it to be clear that to the

23     extent the Court needs additional information and believes

24     additional information be submitted for Your Honor to rule,

25     we don't object to that approach.

Page 124

1          THE COURT:  Okay.

2          MR. HURLEY:  Your Honor, it's Mitch Hurley.

3          THE COURT:  Okay.  I did just get -- I did just an

4     email from the debtor's counsel that, I guess, has these

5     documents attached.

6          MR. KAMINETZKY:  Your Honor, we tried initially to

7     just send it by email and it got bounced several times by

8     the Court because of its size.  So we had to set up this

9     client link or whatever it's called.  So now Your Honor

10    should have it in a form.

11         But I don't -- I don't know if Your Honor wants to

12    deal with this today because what we sent Your Honor is --

13         THE COURT:  No.  I will review it.  I may just

14    give the parties my ruling separately on this one.  I mean,

15    again, my chambers practice on motions to seal is to insist

16    that I get the unredacted document and the redacted

17    document.  I look at them and I decide whether I think it's

18    covered by 107 or not, 107(b) or not.

19         And I have the briefing on this.  I have your

20    arguments.  I think I have the case law on it.  We're just

21    talking about 107(b) as far as Exhibits 137 and 123 are

22    concerned.  So I don't need any more briefing on that.  And

23    I may just rule on that before the next hearing.

24         MR. KAMINETZKY:  That's fine, Your Honor.  Let me

25    just -- if you could just allow me to explain.  What we sent

Page 125

1    Your Honor was what we called transparent redactions in that

2    you have the whole document, but we put --

3              THE COURT:  Yeah.

4              MR. KAMINETZKY:  -- red boxes around --

5              THE COURT:  The redline.

6              MR. KAMINETZKY:  Right.

7              THE COURT:  The redline.  I see that.

8              MR. KAMINETZKY:  So that you know what it is that

9    -- and we think that this falls -- everything Your Honor

10   said.  This is just a 107(b) and --

11             THE COURT:  Right.

12             MR. KAMINETZKY:  -- we think Mr. Lowne in the

13   declaration that we submitted in connection with our papers,

14   this one declaration that he explains what the basis is

15   under 107(b) for the proposed few redactions on those two

16   documents.  And as far as the debtor is concerned, we'll --

17   with respect to the privilege log we'll do what we said we

18   would do.  We would just -- we would redact PII and, you

19   know, any personal identifying information like email

20   addresses, and then just take a quick look to make sure

21   there's nothing -- no 107(b) information in the subject

22   line, and then just give us a week or two and we'll unseal

23   that.

24             THE COURT:  Okay.  Well, as far as that's

25   concerned, I think that -- I don't' think you're going to

Page 126

1    have to have armies of people on it.  I can't imagine a

2    privilege log likely to have sensitive commercial

3    information on it.  But I understand you want to eyeball it

4    for sure.

5         Okay.  So I will adjourn the hearing on this

6    motion on --

7         MR. HURLEY:  Judge, may I --

8         THE COURT:  There was just an update motion.  So

9    it's really one motion, although there are two motions on

10   the calendar from the media parties to the next omnibus

11   hearing.

12        It's unlikely that I will take additional oral

13   argument.  The parties are both represented by -- are all

14   represented by capable counsel.  And I will -- I know Ms.

15   Townsend said supplemental briefing.  I think actually it's

16   incumbent upon the Sackler parties to submit their brief

17   first and after consulting with the media parties about the

18   safety issue, if that's still an issue and hopefully

19   resolving that, also including for me, you know, specific

20   documents, clean and redacted, that are at issue.  I have a

21   feeling that most of the entries won't be.  And so I want to

22   have the ones identified that are at issue specifically.

23        And then a reply brief can be filed by the media

24   parties three days before the hearing.

25        DR. JOSHI:  Your Honor --

Page 127

1          MR. HURLEY:  Your Honor, does that --

2          DR. JOSHI:  Your Honor, I was granted by the Court

3     in December a moment to speak about --

4          THE COURT:  No.  No.  I want to continue on this

5     matter.  Does anyone have any more matters on the media

6     motions?

7          MR. HURLEY:  Your Honor, it's Mitch Hurley.  Can I

8     just make one point of clarification very briefly?

9          THE COURT:  Sure.

10         MR. HURLEY:  Okay.  Mitch Hurley for the

11    committee. The official committee takes no position on the

12    unsealing of the privilege logs, Your Honor.  We don't

13    advocate for it.  We don't oppose it.

14         I do want to be clear, though, that the exhibits

15    we're talking about actually are not exclusively related to

16    the log challenges motion.  There are entries on those

17    exhibits that we have identified as samples in connection

18    with the exceptions motion as well.

19         I just wanted to make that clear for the record.

20         Thank you.

21         THE COURT:  Well, when you say the exceptions

22    motion -- I'm sorry.  What two motions are you referring to?

23         MR. HURLEY:  Sure.  So the committee filed two

24    motions to compel.  One is referred to as the log challenges

25    motion, which was a motion made -- based on ordinary

Page 128

```
 1    challenges to a privilege log.  Third parties are present,

 2    you know, non-lawyers waiver, that sort of thing.

 3              And then there's the other motion which is the

 4    exceptions motion based on the crime fraud and at issue

 5    exceptions --

 6              THE COURT:  Right.  But they both go to --

 7              MR. HURLEY:  -- of these --

 8              THE COURT:  -- they both go to privilege issues.

 9              MR. HURLEY:  Correct.

10              THE COURT:  And that's how I'm -- that's how I'm

11    treating this even though there are two separate motions.

12    They're both dealing with the admissibility or the -- I'm

13    sorry, the require -- the requirement to produce --

14              MR. HURLEY:  Correct.

15              THE COURT:  -- what are asserted to be privilege

16    documents.

17              MR. HURLEY:  Correct.  I'm just responding to Mr.

18    Joseph had suggested that if we're able to resolve the log

19    challenges motion --

20              THE COURT:  Well, you would have to -- yeah.  I

21    understand, although again --

22              MR. HURLEY:  Yeah.

23              THE COURT:  -- that assumes that I think that

24    there are limits and that those limits are within the facts

25    beyond what is set forth in 107(b) to 107(a) of the
```

Page 129

1    Bankruptcy Code.

2              MR. HURLEY:  Understood.

3              THE COURT:  So there you are.

4              I guess -- so I didn't set a date for the brief

5    from the Sacklers or briefs from the two sides of the

6    Sackler family.  I would say when is -- can someone remind

7    me when the February omnibus hearing is?

8              MR. JOSEPH:  I believe it's February 17th, Your

9    Honor.

10             THE COURT:  All right.  So the 14th would be the

11   reply.  I guess the 7th would be the date for the brief.

12             MR. JOSEPH:  Thank you, Your Honor.

13             THE COURT:  Okay.  Or briefs if the two different,

14   Side A and Side B want to file separate briefs.

15             Okay.  Now someone was speaking up about some

16   other matter.  I think that is the end of today's calendar.

17   But I think someone --

18             DR. JOSHI:  Yes.

19             THE COURT:  -- was raising his hand to speak.

20             DR. JOSHI:  Yeah.  Judge Drain, thank you for a

21   time.  My name is Dr. Jay Joshi.  I filed amicus on behalf

22   of my patients who are represented in some of the cases that

23   have been aggregated.

24             I understand that we're turning towards the end so

25   I will make this quick.

Page 130

1           First of all, I would like --

2           THE COURT:  No.  No.  Mr. Joshi, no, don't --

3    wait.  I'm going to interrupt you, Doctor.

4           I thought that I had explained this to you in an

5    email.  I'm going to explain it now again, and I apologize

6    if it wasn't clear before.

7           When one wants to file an amicus pleading, two

8    things have to apply.  First, there has to be a motion for

9    leave to file it; and, second, it has to apply; that is, the

10   underlying pleading has to apply to something that is before

11   the Court to decide.

12          If the Court grants permission to file the amicus

13   pleading, it will consider it only in that context, i.e. it

14   is part of the record for the matter that the Court has

15   before it to decide.  There is nothing before me on today's

16   calendar that pertains to your amicus pleading.  There is no

17   motion to which that pleading would apply.

18          So somehow you've gotten the impression that you

19   can pursue this matter today.  That's simply not the case.

20   An amicus pleading is, as the name suggests, a pleading

21   filed by someone who as a friend to the Court wants to

22   elucidate and illuminate further than the parties have the

23   issues before the Court on a particular matter that the

24   Court has to decide.  I don't have anything before me

25   relating to the document that you have filed.

1           DR. JOSHI:  Okay.  I understand, sir.  I can

2    probably send you emails that refute that, but out of

3    respect for your time, sir, and respect for everybody else

4    we can maybe take this offline, otherwise I can continue

5    discussion.  But I respect for the Court that --

6           THE COURT:  No.  There's nothing to discuss

7    offline, sir.  The calendar today had five matters on it,

8    some of which had subparts.  None of them pertained to the

9    document that you have filed.  Sometime in the future there

10   may be an issue before me to decide that does pertain to it,

11   at which point you should file a motion seeking leave for

12   consideration of an amicus brief.  But there's nothing

13   before me today.

14           And I don't want there to be any more confusion on

15   it.  There's no more reason to talk to anyone in chambers

16   about it, to anyone in the clerk's office or to me about it.

17   I just want to be clear on that.  Okay.

18           Again, courts decide specific things that are

19   brought before them on a proper record with proper briefing

20   and proper notice.  They're not general forums for

21   expressions of opinion.  Those are, you know, the Boston

22   Globe or Dow Jones or Reuters or a law review article.  But

23   that's not the Court's function.

24           So I think that does close the agenda for

25   today's hearings.  And I'll see you all at the omnibus date

Page 132

1    or, actually, probably just hear you all at the omnibus date

2    in February.

3                Okay.  Anything else from anyone?

4                All right.  Very well.  Thank you, all.

5                MR. JOSEPH:  Thank you, Your Honor.

6                MR. KAMINETZKY:  Thank you.

7                (Whereupon these proceedings were concluded at

8    1:20 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         I N D E X

2

3                         RULINGS

4                                                         PAGE

5    Motion to Approve Insurance Stipulation          64

6    Deborah Clonts Claim Payment Motion              71

7    Deborah Clonts Motion to Lift Automatic Stay     71

8    Debtors' Fifth Amended Order Extending Time to Object   80

9    to Dischargeability of Certain Debts

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 134

1                    C E R T I F I C A T I O N

2

3      We, William J. Garling, Pamela A. Skaw, and Sherri L.

4      Breach, certify that the foregoing transcript is a true and

5      accurate record of the proceedings.

6      William Joshua        Digitally signed by William Joshua Garling
                             DN: cn=William Joshua Garling, o, ou,
                             email=digtial@veritext.com, c=US
7      Garling               Date: 2021.07.21 09:17:35 -04'00'
       _____

8      William J. Garling,

9      AAERT Certified Electronic Transcriber

10     Pamela Skaw           Digitally signed by Pamela Skaw
                             DN: cn=Pamela Skaw, o, ou,
                             email=digital@veritext.com, c=US
11                           Date: 2021.07.21 09:18:00 -04'00'
       _____

12     Pamela A. Skaw

13     AAERT Certified Electronic Transcriber

14     Sherri L. Breach     Digitally signed by Sherri L. Breach
                             DN: cn=Sherri L. Breach, o, ou,
                             email=digital@veritext.com, c=US
15                           Date: 2021.07.21 09:18:28 -04'00'
       _____

16     Sherri L. Breach

17     AAERT Certified Electronic Transcriber

18

19     Date:  January 22, 2021

20

21

22     Veritext Legal Solutions

23     330 Old Country Road

24     Suite 300

25     Mineola, NY 11501

[& - 2281]                                                                                    Page 1

**&**

**&** 6:6,7,12,13 7:4
7:5,11,12,24,25
8:3,4,8,9 9:13,14
10:3,4,10,11
11:20,21 12:3
13:2 14:9 90:14
90:15 118:7

**1**

**1** 2:4,16 3:4 12:2
21:16,20 25:7
39:11,19 73:21
103:3 105:18
112:9 117:12
120:1
**1,500** 101:13
103:19
**1,661** 101:9 105:8
**1.275** 17:25
**1/19/2021** 4:19
**1/7/2020** 5:11
**10** 12:11
**10/21/2020** 6:1
**100** 15:4 17:18
26:18 55:13
**10001** 14:5
**10004-1408** 1:15
**10017** 12:6 13:23
**10019** 12:15
**10022** 14:12
**10036** 13:6
**1009** 4:17 5:16
**1020** 14:19
**10231** 3:11
**107** 88:21,23
91:16,17,22,22
92:9 94:15 95:17
95:21,22 96:1,7
97:21 98:8,12,16
101:16,20 107:13
107:15,16 108:4
109:8 110:6,24,25
110:25 111:21,21

112:8,18 113:5,17
113:22 114:8,19
114:20,23 115:25
116:24 117:8,12
120:1 121:13,15
124:18,18,21
125:10,15,21
128:25,25
**10:00** 4:19 21:20
**10:08** 1:18
**11** 12:12 18:20
19:10 21:9 28:6
58:5 62:2 69:16
69:18 71:8,8 85:6
**1109** 35:23,25
36:20,23 44:3
**1141** 73:19 75:11
79:10
**11501** 134:25
**1156** 14:18
**11th** 21:15
**12** 12:1,13 115:15
115:22 119:16,16
119:16
**12,500** 101:8
103:18 105:8
**12/15/2020** 8:20
**12/21/2020** 4:7,8
**123** 87:15 91:11
92:3,4,13 99:3
124:21
**1289** 4:17
**1290** 5:20
**13** 12:14 108:23
**1327** 108:23
**133570** 106:8
**137** 87:15 91:12
92:4,18 99:4
124:21
**14** 12:15
**14,000** 82:24
**140** 30:8 31:14

**14th** 17:11 91:11
129:10
**15** 12:16 14:18
22:15 93:4
**1524** 4:17 5:24
**15th** 21:11,12,19
21:24 22:2,5,17
22:24 23:23
**16** 12:17
**17** 12:18 91:5,7
98:21
**1717** 13:13
**17th** 129:8
**18** 12:19
**1828** 7:19 9:20
11:10
**1829** 4:16 6:3
**18th** 91:12
**19** 12:20
**19-23649** 1:7
**1975** 108:23
**1:20** 132:8
**1st** 97:12 110:7

**2**

**2** 2:5,16 3:5 5:24
12:3 73:4,25,25
116:7 117:12
**20** 1:17 12:21
**20,000** 105:2
**20003** 12:24
**20005** 14:20
**20006** 13:15
**2001** 26:18 55:14
**2002** 36:4 55:16
**2007** 68:3
**2010** 105:24
**2014** 109:4
**2016** 92:14
**2017** 92:18
**2018** 26:19 59:17
59:18
**2019** 21:15 58:3
80:10

**2020** 5:24 17:8
19:15 20:6,18,19
23:6,13 37:9 68:3
91:11,13 97:12
106:8,9 110:7
**2021** 1:17 20:1
134:19
**2022** 6:8,14,18
7:13,23 8:2,7,16
8:23 10:9 20:2
**2039** 8:4
**2059** 3:12,17 4:3
**2065** 6:15 7:6
**2066** 6:19
**2090** 7:7
**2091** 8:10
**21** 12:22 37:11
**211** 59:16
**2132** 7:14 10:5
**2136** 8:17
**2140** 8:23
**2153** 9:5 11:17
**2154** 9:10
**2175** 3:17,21 4:3
4:12
**2188** 7:19 9:15,20
10:5 11:10,22
**2194** 4:9
**22** 12:23 18:8
25:14 134:19
**2209** 3:17 4:3,13
**2220** 4:19 5:3
**2227** 2:6,8 3:7
**2252** 7:20 9:4,9,21
10:16,21 11:4,11
11:16
**2253** 10:17 11:5
**2254** 10:22
**2265** 10:6
**2266** 3:18 4:5
**2270** 4:23 5:4
**2281** 2:10

[2287 - actual]                                                                      Page 2

**2287** 5:5
**2288** 7:25 10:11
**2289** 2:19 26:4
**2292** 3:8
**23** 12:24
**23rd** 19:15 22:23
  23:13 80:10
**24** 12:25
**246** 109:4
**24th** 37:9
**25** 12:25 103:12
**26** 22:6,15 24:12
**262** 55:13
**27** 111:23
**275** 26:22
**284** 59:16
**2nd** 55:14,16

**3**

**3** 12:4 26:20 38:25
  86:6,6
**30** 13:22 26:19
**300** 134:24
**30th** 22:23 106:9
**31** 12:14 21:9
  23:25 24:14 74:3
**310** 55:15
**31st** 17:7
**330** 134:23
**362** 71:23 72:16
**37** 74:3
**3a** 74:2
**3rd** 22:23 23:6

**4**

**4** 12:5 39:11 72:16
**4/2/2020** 5:14
**400** 12:23
**4007** 79:10 81:1
**42** 86:5
**423** 108:22
**445** 59:18
**450** 12:5
**467** 59:18

**485** 13:21

**5**

**5** 12:6 57:8
**52** 12:14
**523** 73:4,8,12,25
  81:3
**541** 38:23
**548** 44:11 45:20
**55** 14:4
**550** 82:24
**560** 118:1
**587** 59:17
**590** 59:16

**6**

**6** 12:7 73:19 75:11
**6/17/2020** 5:18
**600,000** 30:7,10
  31:13
**603** 58:3
**614341** 3:11
**615218** 3:11
**615270** 3:11
**64** 55:16 133:5
**650** 13:14

**7**

**7** 12:8
**7/27/2020** 5:22
**700** 4:17 5:9 12:22
**71** 133:6,7
**720** 4:17 5:12,16
**749** 109:3
**779314** 105:25
**7th** 129:11

**8**

**8** 12:9
**80** 133:8
**85** 59:16
**897** 58:3

**9**

**9** 12:10

**90** 101:3,10
  102:16
**901** 59:8
**9019** 32:14,23
**902** 59:8
**907** 59:9
**919** 14:11
**96** 55:13
**99** 121:11

**a**

**a.m.** 21:20
**aaert** 134:9,13,17
**aaronson** 13:19
**abbreviated**
  19:20
**ability** 54:11 57:3
  71:18 103:5
**able** 37:22 45:6
  105:16 119:15
  120:25 128:18
**absence** 36:4
**absolute** 101:19
  107:13 112:4
  115:10
**absolutely** 42:19
  47:14
**absurd** 31:15
**acceptable** 51:25
**accepted** 97:21
**access** 89:1 92:10
  94:11 95:16
  101:18 102:4,23
  103:14 106:6,15
  106:22 108:14,17
  108:19,21,24
  109:1,6,7,15,18
  110:2 112:1,5
  114:16,17,24
  115:19,22 116:25
**accessible** 108:9
**accomplishes**
  27:13

**accorded** 57:11
  57:20 58:6
**account** 76:5
  121:20
**accountability**
  6:19 68:15
**accurate** 134:5
**achievable** 23:10
**achieve** 23:17
  43:2
**achieved** 18:4
**acknowledge**
  53:24
**acknowledges**
  70:18
**act** 34:8 46:8
  57:11 58:12,13
  102:11 120:18
**acting** 57:14
  60:12
**action** 2:3,15 3:3
  25:21 27:19,25
  28:8,16 29:3,15
  29:22 30:15 31:12
  33:12,14 35:2,22
  36:8,13 37:1
  38:22 39:1,2,6,9
  39:16,18 40:7,9
  40:14,14 42:3
  44:10,14,18,22
  45:1 47:7 53:5,15
  53:16,22,25 54:1
  54:3,7,9,12 55:10
  55:10,18 56:3
  57:4,15,21 58:7
  58:24 59:2,12
  60:4 72:18,21
  74:2 106:10
**actions** 39:23 40:1
  54:17 73:6 108:10
**active** 17:13 41:24
**actual** 89:11
  117:10 119:12

[actual - application]                                                    Page 3

120:12,13
ad   2:5,12,17,19
  3:5 6:10,15,19 7:1
  7:2,6 12:13,20
  25:22 26:2 27:22
  29:20 30:12 31:16
  31:24 32:2 38:9
  39:13 40:16,20,21
  41:4,12,16 42:7
  42:18 51:15 53:1
  53:3 56:9,10
  70:10,13 75:25
  76:1 88:3 89:21
addiction   20:5
addition   36:2
  56:10 61:1
additional   31:13
  98:23 107:9
  111:14 123:15,23
  123:24 126:12
address   25:1 28:7
  31:22 44:1 82:1
  91:8 93:6 118:18
  122:22
addressed   18:25
addresses   87:3
  111:10 125:20
addressing   25:19
  36:20,23 70:14
  81:24
adjourn   104:9
  126:5
adjourned   37:8
  100:15
adjourning
  120:10
adjournment   8:6
  8:15,22 41:23
  84:17
adjudicating
  102:21
adjudication
  102:10,12

administered   1:8
administrative
  30:17
admissibility   63:9
  128:12
admit   46:14
admonitions
  24:10
adopted   74:20
advance   43:6
  119:7
advanced   72:2
advances   42:10
advancing   19:11
advantage   92:1
  93:2 110:22
adversary   31:11
  36:6,12 73:9
advisors   104:25
advocate   127:13
affect   28:7
affirmatively   56:6
  56:11
afford   67:15
afforded   86:25
afraid   78:22
afternoon   79:17
  81:21
agenda   16:14,15
  16:16 17:3 21:2
  23:6 24:20,25
  25:5,7 65:3 79:23
  81:22,23 131:24
aggregated
  129:23
aggressive   68:3
ago   18:2,7,8 19:15
  47:6
agree   23:20 51:22
  51:22 56:21 85:1
  85:1 89:19 107:12
  109:2 111:4

agreed   2:2 3:2
  8:13,19 25:20
  32:19 88:8
agreeing   39:3
agreement   23:14
  23:24 54:18 55:21
  76:6,7 108:16
agrees   55:19
ahead   50:2 67:7
  74:11 93:16 95:7
  119:9 122:2
aid   49:13
aimed   30:1
air   108:18
akin   13:2 26:13
  40:24 99:9
al   1:7 15:23
ala   39:5
alaska   36:17
alex   122:3
alexander   14:7
allegation   48:7
alleged   49:6,7
  75:18
allegedly   36:15
allow   109:19
  124:25
allowed   31:2
  69:20 74:13,16,24
allowing   52:6,18
alongside   29:3
  35:4
alter   110:2
altogether   103:21
ambit   113:16
amend   4:11 8:1
amended   4:7,11
  4:15,21 5:2,18,22
  6:1 16:13 65:10
  65:22 79:25 133:8
amendment   94:15
  108:20 109:1
  114:15

american   85:4
amicus   129:21
  130:7,12,16,20
  131:12
amount   48:6 70:7
  70:8,16 83:1,13
  86:25 119:21
amounts   30:16
  31:8 67:22
analog   35:10
analysis   60:14
  116:19,20
analyzed   78:1
analyzing   58:19
andrew   2:18 6:14
  12:17 38:11 41:16
announcement
  22:13
answer   29:16
  38:17 50:23 69:12
  83:23 98:23 105:3
anticipating
  67:22
anyway   50:18
  61:18 117:19
apart   89:18
apologies   40:4
apologize   77:4,15
  122:2 130:5
appear   34:18
  35:24 36:6 39:3
  53:8 63:15
appearing   14:24
  86:14
appears   61:18
  64:4 94:9
applicable   44:6
  44:19 54:19 57:2
  57:7 119:11
application   19:21
  20:20 28:23 33:7
  35:11 105:15

**applied** 44:7 45:3
68:16 72:5 87:4
114:20 115:22
**applies** 72:6,25
73:12 75:12 81:3
91:21 94:11 95:20
95:21,24 96:1,7
107:16 108:2,20
109:9,10 115:25
120:1
**apply** 45:7,15
57:13 71:7 72:1
72:17 73:1,7 75:1
86:25 95:23 96:4
107:25 110:6
130:8,9,10,17
**appreciate** 44:2
72:8 89:8
**apprised** 42:25
**approach** 37:2
123:25
**approached** 47:7
**appropriate**
31:22 43:6 50:19
81:4 86:17
**appropriately**
89:6
**approval** 19:21,22
20:17,18,22 28:15
28:18 52:24 54:9
54:11 60:20 62:8
64:5
**approve** 2:13 3:10
3:15 4:2 25:10,19
33:4 43:8 52:16
52:17 55:21 133:5
**approved** 17:7
20:5
**approving** 2:1 3:2
52:6,18
**approximately**
26:22 101:10

**apropos** 79:7
**arbitrage** 32:6
**arbitration** 37:20
43:20 51:24 62:22
64:22
**area** 102:1
**arguably** 39:8
60:14 115:6
**argue** 37:22 39:22
66:17 93:3,15
98:13
**argued** 31:16
94:14 110:8
**argues** 31:1 32:2
37:19 60:22 61:9
**arguing** 33:8
93:15 123:17
**argument** 26:12
30:22 36:1 43:13
43:14 57:2 61:13
62:25 66:21 68:22
84:1 94:1,7 96:10
107:4 109:17
112:23 116:24
126:13
**arguments** 30:24
84:4 94:4,5
108:11 124:20
**armies** 126:1
**armstrong** 118:1
**arrange** 16:11
**arriving** 30:3
**article** 131:22
**aside** 23:19 26:22
31:19 93:23
**asked** 22:9 47:5
**asking** 34:12
41:22 47:21,22
51:7,8,9 121:17
**aspects** 23:1 62:25
**assent** 38:2
**assert** 27:18 39:14
40:6 46:2 53:14

92:5
**asserted** 40:12
42:3 75:10 78:9
96:6 97:9 119:13
121:23 128:15
**asserting** 30:8
31:14 58:17
**asserts** 56:23
**asset** 26:25
**assets** 19:6 30:7
62:4,4 67:24
**assignee** 59:6
**associated** 110:15
**association**
110:18
**assume** 68:22
**assumes** 128:23
**assuming** 40:16
63:5 74:22 80:20
120:24
**assure** 24:16
**assuredly** 18:4
84:22
**assuring** 32:21
**attached** 124:5
**attaches** 109:7
**attack** 62:10
**attempt** 34:1
36:10 67:24
**attempts** 30:20
33:6 35:21 37:4
**attorney** 66:9
84:5
**attorneys** 12:4,13
12:20 13:3,12,20
14:3,10,17 67:15
67:17
**audible** 41:18
**authority** 28:7
33:24 34:13 57:19
64:19 117:25
**authorization**
39:10

**authorize** 85:17
**authorized** 16:7
27:16 34:7
**autoinjector**
19:23 20:1
**automatic** 3:16,20
4:3,8,12 64:17
65:11,23 67:9
71:23 72:10,15,17
72:25 133:7
**automatically**
102:9
**available** 29:19
31:25 62:4
**avenue** 12:5,22
13:13,21 14:11
**avoid** 15:8 28:19
112:11
**avoidable** 75:18
**avoidance** 44:10
**avoids** 50:14
**aware** 22:7 69:4
90:16

|   b   |
|:-----:|

**b** 1:23 6:5 7:23
8:2,8 9:13 10:9
11:20 14:22 35:23
36:20,23 44:3
55:22 72:16 73:25
88:21 91:16,22
96:7 98:18 101:6
101:8,20 103:17
111:21 112:8,19
113:5,17 114:8,20
114:23 115:7
116:7,24 117:12
120:1 124:18,21
125:10,15,21
128:25 129:14
**b.r.** 58:3 59:16,18
**babies** 7:7 70:13
**baby** 24:7,7

**back** 22:5 47:9
51:19 68:2 80:10
80:12 81:17 82:18
82:22 92:13
111:17 119:4
**background** 15:8
**balance** 17:23,24
18:1,9 43:6
**balances** 42:20
**bankr** 58:3 59:16
59:18
**bankruptcy** 1:1
1:13,25 28:10
29:4 31:13 33:9
33:10,13 34:2,10
44:24 45:12,21
46:7 52:10,16
53:6,7 55:24 57:8
57:18 58:4,4
59:11 61:7,15
63:17 67:13 69:24
70:24 71:4,12,19
71:23 72:16 73:4
73:7,8,12,20
77:10 79:10 88:21
91:18 95:16,25
107:11 108:5
112:20 113:17
116:25 117:23
129:1
**bar** 60:25
**based** 24:17 39:1
53:20 69:23
119:13 127:25
128:4
**bases** 56:23
**basis** 16:8,9 48:23
59:2 97:9 110:8
113:6 125:14
**bear** 92:7
**bears** 61:4
**beginning** 43:12

**behalf** 2:9,18 3:7
3:18 4:4,18 5:4
6:6,15,19 7:6,13
7:20,23 8:2,8,17
9:4,10,13,21 10:5
10:9,16,22 11:4
11:11,16,20 16:19
25:14 27:20 33:12
34:16 38:23 39:18
39:20 40:1,20,21
40:24 41:16 43:13
43:14,17 46:8
51:9,14 53:16
54:6 55:10 56:1
57:11,14 59:12
60:12 63:4 64:2
65:6 79:19 90:13
99:9 121:3 129:21
**behavior** 63:13
**belief** 121:19
**believe** 21:24
33:22 36:21 38:12
41:4 53:18 56:19
57:22 59:4 60:2,9
60:24 61:17 62:21
63:21,22 64:5
65:12 68:16 71:20
76:2,8 79:14
80:23 81:10 85:12
86:16 87:6,8,9
118:25 121:20
129:8
**believed** 70:20
72:9
**believes** 42:1
123:23
**belong** 34:9 39:6
40:15
**belongs** 34:15
**ben** 65:1 99:16
**bench** 119:8
**beneficial** 29:5,8
55:23 61:6,23

**benefit** 17:5 31:17
31:23 32:8 42:14
44:13 46:16 48:23
48:23 69:9 71:1
**benefitting** 81:8
**benjamin** 3:7 7:19
8:16 9:4,9,20
10:16,21 11:4,10
11:16 12:9 25:13
65:1 81:17,20
**best** 22:19 23:25
24:17 27:3 29:4
29:11 30:2,23
33:3 38:1,5 41:25
42:2,4,10 44:8
46:12,24 48:5
55:22 60:21,23
**better** 38:4
**beyond** 115:22,23
116:24 118:4
128:25
**billion** 17:25
26:20
**billions** 67:14
**bind** 28:4
**binding** 36:24
**bishop** 36:17
**bit** 50:7 94:3
95:14 123:20
**blanket** 117:5
**blinka** 55:14
**bmt** 44:12
**board** 83:19,21
**boston** 6:6,13 7:4
7:11,24 8:3,9 9:14
10:3,10 11:21
90:14 131:21
**bounced** 124:7
**bowling** 1:14
**boxes** 125:4
**branch** 118:8
**brauner** 13:8
40:23,24

**breach** 11:25
58:11 59:20 134:4
134:16
**breached** 67:21
68:6
**breaking** 68:8
**breath** 50:5
**brian** 15:3
**brief** 17:1,2 34:4
37:22 41:21 53:11
68:22 82:5 94:18
126:16,23 129:4
129:11 131:12
**briefing** 31:22
36:11 83:1 91:23
101:1 107:9,22
111:15 117:22
119:7 122:24
123:16 124:19,22
126:15 131:19
**briefly** 17:22 19:1
27:15 41:3 79:24
82:9 91:9 94:2,3
107:3 127:8
**briefs** 101:7 103:1
120:6,11 129:5,13
129:14
**bring** 30:18 33:12
33:14,17 38:22
45:1 58:6,23
59:12 81:22
**bringing** 59:2,20
69:8
**brings** 22:5 68:17
81:19
**broad** 42:6
**broader** 115:10
**broadly** 39:8 52:3
**brought** 31:4
44:15,22 58:10
60:4,5 65:9 73:9
97:12 131:19

**brown** 95:13
102:3,17 106:23
107:20 108:1
113:24 116:16,17
116:17,17
**bryan** 13:5
**build** 22:24 32:19
48:2
**bulk** 83:24
**burden** 68:18
80:25 84:13 89:5
92:7,12 117:17
122:18 123:8
**burdens** 18:11
**burdensome** 63:1
**business** 17:23
18:13 32:19 83:18
83:20 97:7 104:25
104:25 110:4,22
**businesses** 18:17
**bye** 79:5,5

**c**

**c** 12:2 13:1 14:1
15:1 65:19 79:10
91:22 96:7 112:19
117:1,8 121:13,15
134:1,1
**caldor** 36:3,24
**caldor's** 36:8
**calendar** 64:24
79:7 88:20 126:10
129:16 130:16
131:7
**calhoun** 2:9 13:17
43:16,17,22,23
45:14 46:9,18
50:2,6,23 51:6,16
51:20 52:2,14
64:10
**call** 17:23 119:6
**called** 27:16 56:10
66:10 72:9 84:4
124:9 125:1

**candidly** 20:24
24:10
**capable** 49:9,10
126:14
**caption** 58:15
**care** 76:19 99:10
**career** 48:10
77:11
**carefully** 57:22
61:13 77:16
**carry** 15:5
**case** 1:7 16:25
17:2,3,9,10,20
18:11 21:3,13
23:8,9,10,21 29:6
29:9 31:13 34:3,5
34:22,23 35:11,17
36:16,17,17 37:12
39:15 41:24 42:13
44:11,11,16,20
45:2 48:11 49:8
52:10,16 54:5
55:5,24 56:15,19
56:20 57:5,6 58:4
58:5,15 59:15,22
59:23 60:12,22
61:15,20 62:1
63:3 67:8 68:17
69:7 70:7 71:8,8
72:6 73:3 74:22
75:5,15,24 78:15
82:25,25 83:8
86:19 88:22 95:25
106:7 107:17,18
107:20,21 111:18
111:20 112:11,19
113:15,17,24
114:1,2,21 115:23
116:1 117:1,23
119:11 120:6
121:21 124:20
130:19

**cases** 17:9 18:20
23:3 25:25 28:6
30:5,10 31:6
34:22 35:11 38:20
38:21 45:12,13
50:22 52:24 53:6
57:6,17,22 58:2
59:14,19 62:3
69:5,8,16,18,24
70:1,11,15,19
72:13 74:21 75:4
80:24 85:6,7,11
88:1,2 89:10 90:2
105:20 107:10,11
113:24 129:22
**cash** 17:23,24
18:1,9
**catching** 50:4
**categories** 91:8,9
98:11 101:20
**category** 97:10
96:5
**catholic** 36:17
**caught** 84:6
**cause** 33:12,14
35:2,22 44:18
45:1 55:18 57:15
57:20 58:24 97:19
103:3,4 110:16
**causes** 2:3,15 3:3
25:21 27:19,25
28:8,16 29:3,15
29:21 30:15 31:12
36:7,13 38:22,25
39:2,5,9,16,17
40:7,9,14,14 42:3
44:14 46:25 53:4
53:14,16,22,25
54:7,9,12,17 55:9
55:10 56:2 57:4
58:7 59:12
**ceo** 92:19

**certain** 4:16,22
5:3,8,12,15,19,23
6:2 7:18 9:19 11:9
26:17 27:8 72:12
72:16 80:1 86:13
87:18,19 88:10
92:16 110:14
118:15 133:9
**certainly** 30:2
32:7 37:11 38:3
47:24 85:9 89:13
90:6 98:4 99:10
107:8 108:2 109:9
109:20 120:21
**certificate** 3:11
**certified** 134:9,13
134:17
**certify** 134:4
**challenge** 96:24
**challenges** 18:20
92:20 100:14,18
101:1 103:21
104:2,10 127:16
127:24 128:1,19
**chambers** 76:15
81:14 99:6 124:15
131:15
**chance** 32:16
120:3
**change** 64:12
84:20 108:9
112:12 115:6
**changed** 93:6
**changes** 80:13,16
**chapter** 18:20
19:10 28:6 57:8
58:5 62:2 69:16
69:18 71:8,8 74:3
85:6
**charge** 28:12
**check** 16:18
**checks** 42:20

chief 32:17
child 70:20
children 7:1
christmas 85:16
christopher 79:14
79:18
cir 55:14,16
circuit 33:24 35:1
35:15 36:3,25
44:4,6 45:8,9,9,10
45:12,16 46:10
55:5,16,25 56:15
72:5 73:14,14
91:23 102:2
107:12 108:1
109:2,4 111:20
115:22
circuit's 28:23
34:24 35:7,8 37:2
95:13 101:17
circuits 50:15
circumstance
22:1
circumstances
72:1 112:5
citadel 34:23 58:2
cite 23:5 33:6
34:22 108:22
109:3 112:4
cited 37:2 107:10
107:19,19,21,23
119:11
cites 33:23 105:22
114:1
citing 114:2
citizens 109:3
city 58:2 59:22
claim 3:10 31:14
33:17 34:13 65:9
66:6,7 67:2 70:18
71:2,19,24 72:3
73:2,2 74:21,23
75:2 100:23 133:6

claimant 3:15 4:2
36:22 70:19
claimants 2:6,18
3:6 12:21 30:8,9
70:3,13,15 71:14
claims 2:3,14 3:3
3:11 24:2,2 27:19
30:7,10 31:4,17
31:20 34:9,14
37:19 39:9,16
53:14 57:1 58:12
59:20 63:24 64:1
69:18,19,21,22,22
70:1,2,3,7 71:3,6
71:7 74:13,15
75:17,18 76:17,17
78:8,12,12,13
121:23
clarification 44:2
127:8
clause 39:20
53:19
clean 126:20
clear 18:3 19:5
24:9 27:21 33:18
35:1,10 36:3
37:24 39:3 40:12
40:13 42:1 44:13
45:11 53:18 59:4
61:18 62:1,17
64:19 66:23,25
76:16 78:4 84:25
87:10,24 89:10
92:23 94:13 95:8
96:19 108:1,19,23
109:5 121:3 122:6
123:22 127:14,19
130:6 131:17
clearest 58:1
clearly 16:20
22:14 31:23 41:17
66:9 79:20 95:22

cleft 118:19
clerk 15:2
clerk's 16:9,11
131:16
clerks 15:3
client 16:1 84:5
120:22 124:9
clients 103:9
105:1 118:21
climate 18:21
clinical 20:16
clont's 3:15 4:1
clonts 3:12,21 4:9
4:13,23 14:24
65:9,12,14,16,18
65:20,24 66:3,6
66:14,16,23 69:15
69:18,23,25 70:18
71:13,19 72:8
73:1,5 74:7,9
76:21,23 77:2,5,7
77:9,13,18,23
78:4,7,10,17,20
78:24 79:2,5,24
81:10 133:6,7
close 18:1 76:8
131:24
closed 17:7,15
67:8
code 44:24 45:21
57:8 71:4,23
72:16 73:4,9,12
73:20 77:10 88:21
108:5 129:1
codifies 101:17
cognizable 108:25
collateral 60:14
colleague 38:11
65:2 81:17
colleagues 26:12
58:20 117:23
collection 34:20

collective 26:24
75:3
collectively 56:5
colliers 112:4
colloquy 122:21
come 74:11
100:16 116:3
comes 112:12
114:23
coming 41:22
76:8
commenced 20:17
37:1 58:23,25
commencement
72:18
comment 47:2
commercial 91:15
91:24 92:2 98:9
110:20 115:11
126:2
commercially
87:1
commitment
85:12
committed 27:24
85:11
committee 2:4,5
2:16,17 3:4,5 6:19
7:7 12:20 13:3
14:16 24:23 25:22
26:2 27:22 29:12
30:12 31:1,24
33:15,16,22 34:6
34:12,18 35:22
36:19,22 38:9
39:12,13 40:17,17
40:20,21,25 41:4
41:11,12,12 42:18
42:18 51:15 52:19
53:1,1,3 56:9,9,10
58:6,10 59:1,7
70:9,13 75:25
77:25 88:2,3

89:21,21 90:12
99:9 127:11,11,23
**committee's** 7:1
29:20 31:5,16
32:3 42:7
**committees** 25:23
26:10,11 27:4,7
27:12,16,17,24
28:17,17 29:1,14
31:7,21 32:12,16
33:18 35:12 36:5
37:18 39:23 42:19
48:17 49:2,2,3
51:17 52:7,19
53:12,24 54:10,15
57:20 60:11,16
61:21 62:9,24
64:7 70:11 75:25
76:2 78:18
**commodore** 27:23
34:24 38:20 55:12
55:13 57:6
**common** 27:6
42:17,24 88:6,12
94:11,12 95:15,17
95:19 101:17,22
101:23,25 104:4,7
107:24 108:20
109:9 114:15,17
114:23,25 115:4,6
115:7,8,9 117:12
**communications**
103:12
**companies** 47:3
120:21,23
**company** 2:10 6:6
6:12 7:4,11,24 8:3
8:8 9:13 10:3,10
11:20 13:12 43:18
43:19 51:1,3
54:23,25 58:12
59:22 60:5,5,7
68:7 90:14 92:20

**company's** 19:10
**comparable**
102:19
**compare** 18:6
**compel** 82:19
109:23 110:1
127:24
**compelling** 35:18
92:9
**competent** 48:25
**competitor** 93:2
**competitors** 92:1
110:22
**compilations**
86:14
**complete** 22:21
23:18 99:2,14
**completely** 15:23
16:4 32:5 36:2
44:16 78:5
**complex** 18:13
**complicated** 77:8
**complicates** 61:12
**complication**
118:11
**comply** 37:11
**compressed** 84:23
**concede** 45:2
**conceive** 22:1
**concept** 35:20
38:20 115:9
**concern** 48:20
118:13,14,18
120:14 121:5
**concerned** 62:17
64:13 89:16
104:17,23 124:22
125:16,25
**concerning** 84:4
100:12
**concerns** 118:17
**conclude** 24:3
63:19

**concluded** 58:21
59:7 107:12 132:7
**concludes** 64:23
**concluding** 21:8
**conclusion** 69:8
108:11
**condition** 51:21
51:25
**conduct** 61:11,15
63:7
**confer** 29:11
54:16 97:4
**conference** 55:6,8
56:22 61:6
**conferred** 38:21
39:4 54:3 55:7
57:8 59:11,25
86:4 90:18,25
**conferring** 55:19
**confers** 27:15
45:21
**confident** 42:20
**confidential** 83:6
88:11 91:15 98:8
110:20 115:11
**confidentiality**
22:8 88:12,25
**confirm** 40:21,25
**confirmation**
39:24 48:15 52:21
58:5 63:24 64:3
73:23 76:11
**confirmed** 28:25
50:17 71:11 74:22
75:6
**conflated** 36:21
**conflates** 35:20
**conflict** 50:14
**confronting** 61:9
**confuse** 56:25
**confusion** 131:14
**congress** 68:14
73:18 101:24

112:18
**connection** 8:14
8:21 36:11 82:23
85:19 86:7 93:20
96:2 103:5 107:23
114:23 125:13
127:17
**consensual** 27:8
76:10
**consensually**
28:25
**consensus** 22:21
22:24 23:12,18
48:2 49:12
**consent** 28:16,18
32:15 36:19 54:12
**consenting** 2:12
2:19 6:10,15 7:2
12:13 26:3 38:12
41:3,4,17 42:1
56:11,16 88:3
**consents** 55:19
**consider** 18:11
46:12 86:21
106:18 113:6
130:13
**considerable** 18:1
**consideration**
75:21 131:12
**considerations**
112:3
**considered** 61:13
88:25 104:12
113:5 120:1
**considering** 74:15
**consistent** 24:10
26:9 29:13 64:11
87:4
**consistently**
101:23 115:1
**consists** 92:15
**constituencies**
29:25 32:18

constituents  31:5
  69:7
constituted  83:6
constitutes  108:25
constrained  89:15
constraints  33:24
construct  61:22
construction
  113:22
construed  59:15
  91:22
consult  49:1
consulting  126:17
contact  16:11
contain  86:18
  91:14 103:2,6
containing  83:20
contains  101:7
contemplate
  88:16 117:24
contemplated
  39:25,25 88:9
  112:25
contemporaneous
  108:21 109:6
contend  33:19
  91:6 98:6
contended  110:14
contention  48:7
contested  25:7
  32:23
context  17:19
  23:5,22 26:16
  61:20 82:14 87:24
  91:24 108:4
  117:19,20 119:16
  120:17 130:13
contingent  2:6,17
  3:6 12:21
continuation
  72:18
continue  60:17
  64:3 66:18,20

84:18 85:9,11
  105:16 127:4
  131:4
continued  19:3
  86:15,21 94:4
continues  19:11
continuing  101:14
contours  19:8
contrary  33:3
  57:19,23 63:13,21
  70:23 107:22
  108:18
control  48:18
  50:25 51:3
controlling  44:4
  44:21 107:17
controversy
  106:12
conversation
  119:1
conversations
  23:2
convinced  42:23
cooperate  27:4
  39:4
cooperating  27:24
cooperation  15:15
  26:10 27:14 39:22
cooperative  29:18
cooperatively
  54:16,25 55:3
coordinate  29:14
  62:20 63:11
coordinated  63:4
coordinating
  27:24
coordination  26:9
  27:14 32:8 52:20
copies  119:24
copy  64:10
copycats  118:17
core  36:9,9 43:5

corner  118:1
corporation  73:24
corporations
  73:17,22
correct  40:2 41:8
  46:9 65:17,20
  80:7 94:25 95:1
  105:13 128:9,14
  128:17
cost  17:13 19:11
  20:10,12 48:23
  60:22 74:17
costly  63:1
costs  18:12,19
  19:7
counsel  29:20
  32:3,4 43:20 44:1
  44:17,18 45:14
  46:19 47:1 51:7
  63:3 90:10 97:5
  97:23 112:13
  117:21 122:4
  124:4 126:14
counseling  24:5
counter  20:10
  105:6
counterparties
  103:3 104:15,16
  104:16,18,24
  105:7 110:15
counterparty
  97:7,8 110:5
  112:10 116:11
  122:7
country  20:13
  48:10 134:23
couple  19:17 21:5
course  16:6 18:20
  19:5 21:10 22:7
  22:12,18 24:9
  26:14 27:7 45:19
  55:2 56:12 57:5
  60:13 63:25 64:17

72:13 78:8 88:18
  89:18 90:4
court  1:1,13,20
  15:3,21 16:2,8,20
  16:21 17:6,24
  19:5,14,24 21:15
  21:22 22:7,9,24
  24:18,21 25:4,11
  25:13,17,19 26:14
  29:1,11 33:3
  34:12 36:20,23
  37:9,19 38:14
  40:10,22 41:1,14
  41:19 43:8,10,22
  45:10,12,18,19
  46:7,13 47:16
  49:25 50:3,21
  51:5,12 52:22
  55:20 56:17 57:18
  58:19 59:4,11,25
  60:13 62:22 63:12
  64:15,22,22 65:4
  65:13,15,19,21,25
  66:4,12,15,19
  68:20 69:4,13
  71:12 72:12 76:22
  77:1,3,6,8,10,14
  77:19,24 78:6,8
  78:11,18,22 79:1
  79:4,6,16,20,21
  80:4,13,16,19
  81:18 82:5,8 85:4
  86:3,12,22 87:23
  89:1 90:6 93:8,13
  94:17,19 95:3,7
  96:3,11,13 97:21
  98:25 99:13,18,20
  99:22,24 100:2,4
  100:8,11,22,25
  101:4,19,21 102:3
  104:8,12,13,15,20
  104:22 105:11,19
  105:22 106:3,17

106:18 107:1,5,9
108:21 109:6,11
109:12,14 110:10
111:7,17,25 112:2
112:5,14,16,18,20
112:24 113:1,3,5
113:5,12,15,20
114:3,5,7,12,18
114:24 115:2,5,9
115:19,21,21
116:4,6,12,14,18
117:17,23,24
118:2,9,23 119:2
119:4,17,18,22
120:13 121:7,10
122:11,13,22
123:1,11,12,13,19
123:23 124:1,3,8
124:13 125:3,5,7
125:11,24 126:8
127:2,4,9,21
128:6,8,10,15,20
128:23 129:3,10
129:13,19 130:2
130:11,12,14,21
130:23,24 131:5,6
court's 24:9 59:10
62:7 97:11 102:24
114:13 131:23
courtroom 15:6
31:10
courts 57:10
59:19 60:1 102:7
109:2 131:18
coventry 17:6
cover 31:20 39:23
coverage 2:4,15
3:4 26:20,23,25
46:20 47:7 48:20
51:23 52:8 53:9
covered 25:1
31:18 43:5 117:8
119:20 121:13

124:18
covering 26:18
covers 98:20
101:22 114:25
115:7
create 45:8 46:22
48:23 52:18,20
creates 48:19
creditor 29:2,2
33:8,15,16 34:21
35:13 36:25 44:11
44:25 47:24 50:17
56:4
creditor's 35:17
creditors 2:5,16
3:5 13:4 31:18,23
31:25 34:20 38:2
42:14 44:25 46:17
46:22 49:6 51:1
52:25 56:6,9 58:6
59:1,7,21 62:5,6
67:24 69:9 70:9
70:10 71:1,5,6,10
75:23,25 77:25
88:2
crime 66:17 67:4
67:7,11 68:1,18
72:9 84:4 128:4
crimes 72:12
critical 30:4 47:20
critically 21:12
cross 7:18 9:19
11:9 42:6 119:10
crystal 33:18
84:25
current 20:4
104:16,17,24
122:16
currently 21:15
22:12 33:19 53:24
64:16 93:21,22
custom 17:1

customary 88:7
cut 62:10 101:9
101:12
cybergenics 35:7
35:9

d

d 1:24 15:1 58:3
59:16,18 73:19
75:11 79:10 133:1
d&o 26:21
daily 16:8,9
damages 68:9
date 15:22 18:2
19:25 20:1,20
21:13,25 23:1
28:5,9 98:2 104:9
129:4,11 131:25
132:1 134:19
dated 4:7,8
dates 21:3 80:15
80:17,17
dating 92:13
daughter 68:10
69:23
davis 12:3 16:19
25:13 65:6 79:18
81:20
day 16:24 24:4
32:25 37:11,23
108:24
days 21:9 22:6,15
24:12 126:24
dc 12:24 13:15
14:20
deadline 21:16
76:9 80:10 81:1,3
81:4,9
deal 50:19 81:6
87:22 90:3 100:1
100:4,5 124:12
dealing 75:16
78:11 106:24
128:12

deals 117:1
dealt 18:24 44:10
45:20 76:18 97:10
119:15
death 69:23
debevoise 14:9
118:7
deborah 3:12,15
3:21 4:1,9,12,23
14:24 65:9 133:6
133:7
debt 73:24
debtor 18:17 24:2
28:25 29:3 33:12
33:20 35:5,18
37:2 39:5,6 44:16
45:22 46:2,8,17
50:18 51:16,22
52:7,19 54:5 55:7
55:10,17 56:1,15
57:3,9 60:11,12
60:17,24 62:23
73:8,15,23 75:7,9
93:23 125:16
debtor's 48:24
55:22 57:12,15
58:9 93:5 111:8
124:4
debtors 1:9 2:1,13
2:15 3:1,14 4:1,21
5:1,7 7:16 9:1,2,8
9:17 10:13,14,20
11:1,2,7,13,14
12:4 16:19 17:24
19:3,6,19 20:3,5
21:10,16,18,24
22:2 23:2,11 25:8
25:19,21 26:1,7
26:10,16,25 27:2
27:4,5,6,11,18,20
27:21,23,25 28:8
28:12,15,18 29:15
29:15,21 30:4,5

30:11,12,13,15,19
31:4,6,11,12,21
32:4,6,8,12,14,18
33:20 34:15 35:12
35:22 36:7,12,19
37:14,18 38:7,8
38:18,22,25 39:2
39:10,14,16,17,18
39:21 40:1,7,9,14
40:15 42:2,12,17
45:14 46:3 47:2,7
47:23 48:8 49:8
51:10 52:23,24
53:4,5,9,13,15,16
53:22 54:6,7,8,12
54:15,17,21 55:2
56:8,12,25 57:1
62:1,13 63:3,23
64:2 65:7 66:1
69:3,6,15,21 70:2
70:8 71:9 72:11
73:13,16 74:10,18
75:17,20,21,24
77:24,25 78:16
79:8,12,19 81:7
82:2,20,21 83:17
83:18,19,20 84:6
84:12,16,21,22
85:6,10,13,17,19
85:21 86:11,16,20
86:23 87:4,13
88:4,5,20 89:16
91:14 92:5,24
**debtors'** 133:8
**debts** 4:16,23 5:3
5:9,12,15,20,24
6:3 80:1 133:9
**december** 17:7
19:20 22:24 23:23
80:10 90:17 127:3
**decide** 37:19
101:5 102:21
114:19 117:10

120:11 124:17
130:11,15,24
131:10,18
**decided** 57:17
90:5 102:14
106:19
**decision** 28:23
36:3 37:16 44:4
56:18 95:13
100:25 101:12
102:2,2 104:4,13
105:10 106:9,13
107:19 108:23
109:4 114:2
116:16
**decisions** 18:10
19:12 34:17,23
35:6 54:18 58:20
84:7
**declaration** 9:7
10:19 73:7 81:2
91:12,13 92:4,5
99:4,4 125:13,14
**declarations**
94:24
**decorum** 15:6
**defamatory** 114:9
115:13 116:9
**defects** 36:18
**defendant** 18:17
63:2
**defenses** 121:23
**defer** 101:15
123:21
**defined** 39:2,7
**defines** 38:25
**definitely** 38:15
**definition** 39:7
**del** 58:3 59:17,18
**delaware** 33:21
34:13,18 45:11
57:18 58:21 59:2
59:13 60:7 117:24

**delaware's** 58:12
**delay** 48:20 63:23
119:9
**delayed** 108:24
121:21
**delaying** 47:4
**demand** 45:5
**demanded** 84:24
**demonstrate**
123:8
**demonstrated**
92:24
**demonstrating**
37:25 92:7
**denial** 119:12
**denied** 37:7,16
63:20 70:25
108:24
**deny** 60:20 71:15
71:16 104:9 112:5
**denying** 76:15,16
**depending** 44:5
105:9 108:9
**depends** 102:4
**derivative** 34:13
54:4 58:11 59:2
59:10,13,20,24
68:5
**derivatively** 60:6
**description**
120:14
**designed** 32:16
**desire** 48:2
**desultory** 64:4
**detailed** 83:20
**details** 92:1
**determination**
62:8 80:10 106:4
**developed** 55:5
**development**
98:10 110:19
115:11

**developments**
17:10
**devices** 106:24
**dialed** 21:7
**dialogue** 84:19
**difference** 53:5
**differences** 35:9
**different** 35:8
44:16 45:7,15
63:8 88:11 97:18
98:5 129:13
**differential** 56:18
**differently** 121:19
**difficult** 22:1
**diligently** 85:17
**direct** 23:22 37:9
44:20 54:1,3
59:25
**directed** 47:17
121:15
**directly** 62:8,15
81:12 112:13
**directors** 68:6
83:19
**disagree** 94:13
114:22
**disagreed** 60:13
**disagrees** 38:17
**disallowed** 74:24
**disallowing** 76:16
**discharge** 73:3,7
73:19,21,23 75:7
75:9
**dischargeability**
4:16,22 5:2,8,12
5:15,19,23 6:2
79:9,25 81:2,6
133:9
**discharges** 73:12
**disclose** 110:21
116:10
**disclosed** 89:13
91:25 98:14 117:7

**disclosing** 116:13
**disclosure** 89:6,6
  89:7,10,12 91:20
  94:14 97:21
  107:13
**disclosures**
  120:19
**discovery** 31:8,10
  62:25 84:3 86:15
  88:1,6,7,8,10,13
  94:23 95:5 97:14
  97:18,25 98:3
  102:4,12 106:20
  106:23 107:24
  110:12
**discretion** 56:17
  101:21 113:1
  114:6
**discretionary**
  113:11,16
**discuss** 60:1
  118:11 120:4
  131:6
**discussed** 19:4,24
  20:9 32:13 118:23
**discussing** 89:14
**discussion** 34:3
  80:3 113:21
  114:22 119:1
  131:5
**discussions** 18:16
  49:13 61:12,19,22
  61:25 62:10 97:4
**dispense** 86:10
**displaced** 95:17
  108:4
**displaces** 109:8
**display** 32:19
**disposal** 58:2
**dispose** 109:12
**dispute** 31:3
  101:2

**disputes** 27:19
  28:20 31:2 39:9
  39:16 51:22 52:11
  53:8,8,15 86:4
  90:7 106:10
**dissolved** 48:18
**distinction** 36:9
  46:4
**distinguishable**
  57:23
**distinguishes**
  102:8
**distribute** 70:15
**distributed** 70:16
**distribution** 31:25
  74:25
**distributions**
  75:23
**district** 1:2 34:18
  57:18 64:22 72:12
  72:13 88:16
  117:23 119:17,17
**districts** 50:15
**doc** 106:4
**docket** 26:4 68:10
  82:6 94:24 118:16
**dockets** 112:20
**doctor** 130:3
**doctrine** 35:7,8
**doctrines** 34:1
**document** 2:8 3:7
  3:17 4:3,12,16
  5:16 6:14,18 7:6
  7:13,19,23 8:2,7
  8:16,23 9:4,9,20
  10:5,9,16,21 11:4
  11:10,16 106:21
  124:16,17 125:2
  130:25 131:9
**documents** 9:3
  10:15 11:3,15
  68:11 82:19,24
  83:6 84:9,14 86:1

86:5,13 87:10,10
  87:12,13,19 88:21
  89:3,20 90:2 91:5
  91:7,7,10,13
  92:13,24 93:4,18
  96:8,20 98:22
  104:6,7 106:3,5,6
  106:15 109:6
  111:6 112:6,24
  113:7 117:19,25
  119:21,25 120:4,5
  121:6 122:8
  123:17 124:5
  125:16 126:20
  128:16
**doe** 109:3
**doing** 22:14 55:21
  76:2,4 94:1
**dollar** 70:8
**dollars** 67:14,20
**domestic** 74:1
**don't** 123:25
  125:25 127:12
**doubt** 16:2
**doubts** 48:13
**dovetail** 95:10
**dow** 6:6,12 7:4,11
  7:24 8:3,8 9:13
  10:3,10 11:20
  90:13 131:22
**dr** 15:19 126:25
  127:2 129:18,20
  129:21 131:1
**drain** 1:24 15:21
  129:20
**drain's** 15:3
**dramatically**
  20:12
**draw** 36:9
**drop** 60:16
**drug** 19:20 20:20
**duplication** 62:24

**dura** 34:22
**duties** 59:21
**duty** 58:12 67:21
  68:5,7

|e|
|---|

**e** 1:23,23 12:2,2
  13:1,1 14:1,1 15:1
  15:1 20:19 106:7
  133:1 134:1
**earlier** 70:19
  86:22
**early** 88:2
**easy** 29:17,17
  67:2,5
**ecf** 2:6,10,19 3:8
  3:12,18,21 4:5,9
  4:13,19,23 5:3,3,5
  5:9,12,16,20,24
  6:3,8,15,19 7:7,14
  7:20,25 8:4,10,17
  8:23 9:5,10,15,21
  10:6,11,17,22
  11:5,11,17,22
**economic** 56:20
**educating** 90:4
**effective** 19:11
  28:5,8 49:15
  74:17
**efficiency** 42:21
**efficient** 29:5,9
  30:3,5 49:15
  55:23 61:7 63:11
  63:17,18 72:3
  74:16
**efficiently** 42:9
  55:1
**efforts** 30:14,18
  62:21
**eight** 81:23
**either** 21:18 24:5
  44:5 49:18 59:21
  66:12,22 76:7
  105:8 117:12

electronic 25:9
134:9,13,17
elements 33:5
eli 4:17
eliminated 101:9
elli's 105:25
ellis 104:5
elucidate 130:22
email 64:9,11
81:13 87:3 99:5
111:10 124:4,7
125:19 130:5
emails 131:2
embodies 26:11
embody 38:20
emergence 19:7
28:4,9,12
emphasize 35:16
employees 68:7
empts 44:25
enable 88:12
endeavor 54:18
ends 21:10
enemy 23:4
enforce 72:19,22
enforcement
72:20
engage 27:9 64:20
116:18
engaged 24:13
104:24
enhance 52:9
enormous 18:19
75:3
enormously
119:20
ensuing 48:20
ensure 42:21
114:3
ensures 32:10
enter 22:10 52:4
85:7

entered 31:10
38:9 83:7 97:18
106:1
entire 36:1 77:11
112:9 121:4
entirely 17:10
37:6 38:7,19
76:10 86:16 87:11
103:21
entirety 90:21
92:25 93:22 94:9
98:19
entities 31:21 53:1
53:2 70:5,6,12
73:17,17,22 75:13
76:1 80:25
entitled 69:20
75:10 106:22
entity 28:4,12
81:1
entity's 92:2
110:21
entrenched 112:2
entries 82:6
100:20,24 101:3,8
101:9,11 102:25
103:11,18,23
104:11 105:3,9
126:21 127:16
entry 5:7 9:1,2
10:13,14 11:1,2
11:13,14 79:24
101:7
enumerated 91:20
91:21 98:12
equity 105:23,24
esq 12:8,9,10,17
13:8,9,17,25 14:7
14:14,22
esquire 12:25
essence 74:4
essentially 56:6
86:5

estate 17:12 26:1
27:1 29:3,4 30:3
32:1 33:12,14
34:8,9,15,16,19
35:4 38:23,23
40:14,15 42:11
44:8,14 46:8,12
46:16,24 51:8
55:2,9,11,18,18
55:22 56:2,4
57:12,15 58:7
59:12 60:21,24
64:2 74:10 103:4
estate's 17:20
29:25 30:6,23
32:17 33:3 38:5
43:7 44:14 48:5
49:3,16
estates 27:3,20
29:11,19 30:19,20
31:17 33:2 38:1,3
39:18,21 40:1
41:25 42:2,5
53:17,22 54:6
56:11,25 61:23
69:21 75:17
estoppel 60:15
et 1:7 15:23
evaluate 84:21
evaporate 108:17
evening 84:11
event 35:10 81:12
events 16:24
everybody 78:19
131:3
evidence 94:8
100:21,23 102:20
102:20 103:14
106:24
evidential 100:21
103:23
ex 9:1 10:13 11:1
11:13

exactly 23:9 24:11
exaggeration
85:23
examination
112:21
example 23:18
24:23 58:1 63:8
74:19 98:17 114:3
116:22
examples 23:5
exceedingly 85:24
85:25
excellent 67:15
exception 57:7
66:7,17 67:5,8,11
68:1,18 72:10,14
72:24 74:8 84:4
92:8 96:4,7,25
98:16 110:5
113:10,11,16
114:19 117:8
exceptionally
18:18
exceptions 91:20
91:21 98:8 107:15
110:24,25 111:21
112:8 114:14
127:18,21 128:4,5
excerpts 86:13
93:19
excess 101:13
exchanged 86:15
95:5 110:11
exclusion 72:15
exclusively 40:1
112:7 127:15
exclusivity 21:2
21:10 22:19 92:16
excuse 92:3
exemplified 85:12
exercise 32:18
102:5,18,25

[exhausted - filed]                                                    Page 14

exhausted  26:23
exhibit  63:9 87:15
  87:15 91:11,12
  92:3,3,4,13,18
  99:3,4,10,11
  101:6,7,8 103:17
exhibits  68:11
  83:24 93:20 94:24
  100:6 124:21
  127:14,17
existence  97:23
existing  108:18
expand  40:8
expect  21:20
  62:21 120:17
expectation  62:23
expected  20:22
expecting  23:18
expense  32:17
experience  40:11
expertise  29:19
expire  21:15
explain  44:9
  91:23 114:13
  124:25 130:5
explained  34:5
  130:4
explains  125:14
expose  31:12
exposure  31:4,13
express  37:4 45:3
  91:20 98:7
expressed  95:24
expressing  92:19
expressions
  131:21
expressly  36:24
  98:12 107:14
extend  21:17 22:2
  80:9 81:4,9
  106:12
extending  4:15,22
  5:2,8,11,14,19,23

6:2 79:25 133:8
extension  79:9
  80:11
extensions  80:23
extensive  31:7
  88:1
extensively  86:4
extent  47:25 52:9
  53:9 71:17 75:10
  81:3 89:24 96:21
  98:15 107:7 111:7
  123:16,23
extraordinary
  18:11,19,23 21:14
  31:7
extremely  20:24
  22:8 84:23
eye  89:11,24
eyeball  126:3

f

f  1:23 106:7,7
  115:15,22 119:16
  134:1
f.3rd  109:4
f3d  55:13,16
face  18:19 76:6
  81:1 109:9
faced  30:7
facilitate  102:23
facilities  18:23
facing  92:20
fact  18:5,17 21:19
  31:19 35:6 48:22
  57:19,21,23 69:6
  70:1 83:13 84:10
  84:20 88:11 89:15
  90:1 97:16,24
  98:1 100:17
  107:20 119:11
  123:18
factor  46:19
factories  18:22

factors  72:5,6
facts  94:21 116:23
  122:6 128:24
factual  117:10
factually  36:15
failed  68:6
fails  30:24
fair  29:5,8 30:4
  55:23 61:7 63:16
  63:18 67:16 75:20
  75:20 78:19
  112:23
faith  86:21
fall  74:8 91:7
  96:25 98:7 106:5
fallen  37:25
falls  92:8 125:9
families  82:3,20
family  7:9,14 10:1
  10:6 13:20 14:3
  93:11 94:2,7 96:6
  97:2 107:21
  110:16,18 118:8
  122:4 129:6
family's  97:22
far  16:24 23:2
  35:16 62:2,17
  64:4,12 72:2
  73:18 89:14,16
  100:17 104:22
  121:23 122:17,18
  124:21 125:16,24
fashion  37:6 63:6
faster  76:13
fault  90:7
favor  94:4
fda  19:20 20:5,16
fda's  20:18
february  21:11,12
  21:19,24 22:2,5
  22:15,17 24:15,18
  129:7,8 132:2

federal  33:9,10,13
  34:10 46:4 57:16
  102:7 119:17
feed  17:18
feel  46:20
feeling  126:21
feld  13:2
fell  85:16
fiduciaries  26:1
  42:7 46:17 71:10
fiduciary  46:6
  58:11 59:20 67:21
  68:5,7 70:10
field  19:21
fifth  4:15,21 5:1
  79:24 133:8
fights  88:13,25
file  21:17 22:19
  24:17 32:14 49:20
  67:1 76:17 93:24
  108:12 118:15
  129:11 130:7,9,12
  131:11
filed  2:9,18 3:7,12
  3:17,20 4:3,9,12
  4:17,23 5:4 6:5,14
  6:18 7:6,13,19,23
  8:2,7,14,16,21 9:4
  9:9,12,20 10:5,9
  10:16,21 11:4,10
  11:16,19 17:25
  19:20 24:4 26:6
  30:7,9 67:3,7
  69:19,25 70:2,7
  71:19 74:2 75:2,6
  80:9 82:18,25
  83:5,10,16,23,24
  84:1,22 85:19
  86:7 90:2,20,24
  91:1,18 93:20
  94:23 95:6,25
  96:2,3 97:20
  101:7,8 103:23

[filed - goes]                                                                    Page 15

106:22 107:17,23
109:10,11,14,21
109:24 110:10
111:7 112:19
115:25 116:25
122:8,10 126:23
127:23 129:21
130:21,25 131:9
**filing** 8:12 20:1
24:11 118:16
**filings** 115:23
120:13
**final** 81:22 85:7
**finally** 23:22 37:4
52:14 54:14 110:3
111:1
**find** 44:7 118:19
121:20
**fine** 16:21 25:17
41:19 43:22 66:12
66:14 69:13 118:2
122:17 124:24
**finish** 47:13
**finished** 48:14
**firm** 26:13 42:8
**firmly** 112:2
**first** 5:14 16:1,18
24:14 27:15 31:1
36:18 41:23 44:2
53:11 56:24 61:13
69:17 70:17 73:6
88:14 94:6,15
100:13 108:20
109:1 114:15
115:19 121:4
126:17 130:1,8
**fit** 89:10
**five** 81:23 93:1
131:7
**flag** 97:1
**floor** 13:22
**flow** 35:6

**focus** 52:7 59:10
59:14,24 61:14,16
76:4 89:9 119:25
**focused** 30:1
59:19 60:3 69:8
**focusing** 63:15
**fold** 97:16
**follow** 24:9
**followed** 20:18
62:23
**following** 27:14
**footnote** 106:18
**forced** 84:21
**foregoing** 134:4
**foreshadowed**
37:16
**form** 62:3 90:20
94:1 124:10
**formally** 64:9
**former** 54:24
61:16
**formerly** 26:6
43:18
**forms** 19:23
**forth** 73:19
107:15 128:25
**forum** 71:19 72:3
**forums** 131:20
**forward** 23:3 69:6
111:12
**found** 91:21
**four** 41:23 57:17
69:19 79:23 93:1
**fourth** 6:1 32:11
109:2,4
**framework** 29:18
**frank** 97:3
**frankly** 17:18
49:21 50:15 82:13
87:22 96:9 121:10
**fraud** 66:17 67:5
67:6,7,11,25 68:1
68:2,18 72:9 84:4

128:4
**freedom** 14:16
90:13
**friend** 130:21
**front** 17:5 41:10
89:23
**fruition** 20:8
**full** 31:22 36:11
68:15 89:1
**fully** 19:5 24:13
37:22 43:5 72:1
74:9 85:1
**function** 102:24
102:25 131:23
**fund** 103:5
**fundamental**
70:24 71:4
**fundamentally**
33:10 109:17
**funded** 44:12
**funding** 49:9
50:13
**further** 5:1 18:24
36:8 47:16 62:10
62:11 79:8 80:20
120:14 122:23
130:22
**future** 30:14
48:24 131:9

**g**

**g** 15:1 38:19 54:24
106:7
**gain** 30:18 64:6
**gaining** 36:19
**garling** 11:24
134:3,8
**gather** 80:5
105:12
**general** 25:15
26:21 33:8 69:10
72:14 73:21
100:14,18,25
103:20 104:2,10

117:20 122:16
131:20
**generally** 38:23
61:16,24 63:19
112:6,7 120:7
121:21
**generic** 20:3,6
**george** 2:9 13:17
43:17
**gerard** 7:13 10:5
**getting** 24:5,8
67:18 71:5 113:4
**gilbert** 12:19
26:13 40:20 42:8
**giuffre** 106:7
107:18 116:17,17
**give** 17:1 82:5
91:25 93:1 120:4
124:14 125:22
**given** 17:20 27:11
54:20 58:8 60:25
61:1 64:6 92:25
102:3 105:19
121:22 122:23
**gives** 113:1
**giving** 110:22
123:13,14
**glad** 79:2
**glob** 7:4
**globe** 6:7,13 7:11
7:24 8:3,9 9:14
10:3,10 11:21
90:14 131:22
**go** 16:15 21:1
42:22 50:2 83:25
93:16 95:7 104:21
105:4 111:17
112:10 115:8
117:2 121:24
122:2 128:6,8
**goals** 27:13 43:2
**goes** 113:9 122:17

going   17:9 41:3,5
  45:17 48:1,6,14
  48:16 50:17 65:1
  82:6 102:10,15,23
  104:3,4 111:24
  112:25 117:18
  120:2 123:2,4
  125:25 130:3,5
good   15:2,21
  16:23 17:4 22:13
  23:4,20 25:12
  40:23 43:16 50:9
  65:5 79:17 81:20
  85:15 86:21 97:18
gotten   130:18
gould   55:13
governed   101:22
  114:25
governing   97:14
  97:17 98:2
government   31:18
  31:20 102:11
governmental   2:5
  2:17 3:5 12:20
  53:1,2 70:5,12
  72:19,19,22,23,25
  74:1,5,7 75:12,13
  76:1 80:25
governments
  72:25
governs   33:11
  97:25
grandparents
  24:7
grant   55:20 56:24
  57:24 64:8 70:21
  70:23 71:14 80:22
  81:13 101:19
  121:11
granted   21:14
  30:21 38:7 39:13
  53:13 54:4 63:21
  63:22 80:23 127:2

granting   2:2,14
  3:2 25:20
grants   130:12
greater   17:17
  119:20
green   1:14
gregory   13:25
  93:10
gross's   59:15
ground   91:14
grounded   35:25
group   2:12,19
  6:10,15 7:2 12:13
  26:3 41:17 42:1
  44:25 120:22
groups   26:19
  41:24 47:22,24
  48:10 49:12 56:5
guess   29:24 39:21
  45:18 50:1 80:8
  87:17 114:17
  115:5 116:14
  118:3 120:1,5
  124:4 129:4,11
guessed   30:11
guilty   67:6 68:2
  72:12
gump   13:2 40:24
  99:9

## h

h   119:16,16
hage   13:19
half   18:2 48:12
hand   35:21 52:25
  82:15 88:4,5
  89:22 112:16
  119:19 129:19
handful   85:15
handle   25:10
handled   79:14
  110:12
handling   79:12

happen   76:12
  121:17
happens   19:6
  37:21 48:19 52:21
  53:6 74:25 103:22
  110:1
happy   16:15,23
  20:23 31:21 43:13
  49:11,18,19 68:22
  69:12 82:13 90:9
  98:23 107:6
  111:13,15 123:21
harassed   103:10
  103:13
hard   18:12 22:16
  22:24 78:15
  119:22 120:7
  121:19,20
harm   69:22 103:4
  103:4 110:21
  116:10,19
hauer   13:2
heading   114:16
health   17:23 19:4
  19:12
hear   16:20,21
  25:16,17 38:15,16
  38:16 41:3,19
  43:13,21,22 47:9
  51:19 64:18 68:22
  90:9 132:1
heard   15:10 21:20
  34:3 35:24 36:6
  38:13 43:12 49:20
  79:20 100:19,19
  100:19 121:5
hearing   1:19 2:1,8
  2:12 3:1,10,14,20
  4:1,7,11,15,21 5:1
  5:7,11,14,18,22
  6:1,5,10,17 7:1,9
  7:16,22 8:1,6,6,12
  8:15,19,22 9:1,7

9:12,17 10:1,8,13
  10:19 11:1,7,13
  11:19 15:4,9,22
  15:23 16:4,10
  21:7,8,20 37:10
  47:17 64:16 67:3
  67:4 84:10 110:7
  110:8 111:19
  120:12 121:10
  123:7 124:23
  126:5,11,24 129:7
hearings   16:7,14
  50:1 63:7 131:25
heavily   83:1
heightened   97:13
held   1:19 4:18
help   24:8 100:22
helpful   82:4
hey   47:8
hh   34:22 59:15
hi   15:19
hide   67:24
high   62:7
higher   32:3
highly   18:22
  70:25
hit   82:8,9
hoc   2:5,12,17,19
  3:5 6:10,15,19 7:1
  7:2,7 12:13,20
  25:22 26:2 27:22
  29:20 30:12 31:16
  31:24 32:3 38:9
  39:13 40:16,20,21
  41:4,12,16 42:7
  42:18 51:15 53:1
  53:3 56:9,10
  70:10,13 75:25
  76:1 88:3 89:21
hold   34:18
holding   36:8
  105:25

[holds - incumbent]                                                                      Page 17

**holds**  106:9
**holidays**  84:14
**hon**  1:24
**honor**  16:17,23
  17:4,22 19:1 21:1
  21:6 22:22 24:10
  24:16,18 25:6,12
  25:18 26:16 27:15
  28:1,19,22,24
  29:10,16 30:9
  31:5 32:13,25
  33:6 35:15 37:4
  37:24 38:10 40:3
  40:19,23 41:8,10
  41:15,20,21 43:9
  43:16,21,23 44:5
  44:20 46:9,18
  47:5 48:13,22
  49:18,24 50:2,8
  50:15,24 51:9,14
  64:14,25 65:5,24
  68:19,25 69:3,11
  76:20,23 79:13,17
  79:22,23 80:8,15
  80:18 81:15,19
  82:11,13 83:4
  87:7,9,16 90:11
  90:16 91:7,17
  92:6 93:10,17
  95:1,9 96:9 97:1
  98:20,23 99:8,15
  99:23 100:10,12
  101:16 102:15
  103:3,15,25
  104:14,18 105:2
  105:21 107:2,7,7
  110:3 111:2,13,23
  112:17,22 113:19
  114:1,10,21
  115:24 117:16,21
  118:6,13,17 121:2
  121:25 122:1,3,20
  123:4,21,24 124:2

  124:6,9,11,12,24
  125:1,9 126:25
  127:1,2,7,12
  129:9,12 132:5
**honor's**  98:4
  101:11 105:10,14
**hope**  22:19 23:14
  27:7 41:17 64:18
  76:9
**hoped**  17:8
**hopefully**  20:12
  85:8 126:18
**hopes**  36:9
**hoping**  49:21
**hospitals**  70:6
**hourly**  32:2
**housecraft**  27:16
  27:23 28:24,24
  29:13 33:5,7,25
  34:25 35:10,13,16
  35:21 38:20 39:5
  40:5 44:3,3,10,15
  44:19,23 45:7,19
  46:10 55:15,25
  56:15 57:6
**hrt**  20:10
**hudson**  14:4
**huebner**  12:8
  16:17,19,22 25:1
  25:6
**huge**  67:22
**huh**  65:24 66:3
  77:9,18 78:10
**hundred**  40:3
  83:18
**hundreds**  83:18
**hurley**  13:9 99:8,8
  101:6 103:17
  124:2,2 126:7
  127:1,7,7,10,10
  127:23 128:7,9,14
  128:17,22 129:2

**hypo**  114:3
**hypothesizing**
  117:14

### i

**i.e.**  45:25 54:1
  55:10 56:1 61:5
  61:25 69:22 73:13
  75:13,19 114:15
  130:13
**idea**  66:24
**identifiable**  87:3
  117:1
**identified**  36:16
  87:14 91:8 96:14
  98:11,11 126:22
  127:17
**identifiers**  117:8
**identify**  15:25
  100:22 105:5
  112:24
**identifying**  96:15
  96:23 103:6
  105:17 121:12
  125:19
**ifrah**  13:11 43:17
**ignored**  47:10
**illuminate**  130:22
**imagine**  126:1
**immediate**  71:17
**immediately**  99:6
**immense**  83:1
**impair**  56:25
**impatient**  47:15
**impediments**
  60:10
**import**  34:1 58:18
  69:5
**importance**  62:7
  85:3
**important**  16:24
  17:10,21 19:12,17
  20:25 21:5,13,22
  30:6 35:9 37:22

43:7 52:13 114:15
**importantly**  28:1
  30:24 36:23 68:9
  73:11
**imposition**  81:8
**impressed**  85:8
**impression**
  130:18
**impressive**  18:10
**improper**  36:13
  37:6 112:7 113:14
  115:2
**improperly**  91:6
**improve**  32:14
  62:12
**inappropriate**
  37:15
**inclined**  104:8
**include**  40:8
  58:15 81:5 93:19
  105:6 115:14
**included**  34:3
  115:15
**includes**  23:15
  97:7 109:13,14
**including**  5:24
  19:7,23 22:23
  29:19 31:23 62:4
  72:20 75:18 88:18
  89:3 92:17 123:14
  126:19
**inconsistency**
  45:4
**inconsistent**  34:24
**incorporated**
  50:16
**increase**  18:4 31:4
  31:24
**incremental**  17:12
  17:18
**incumbent**  62:22
  126:16

**independent**
33:20
**indian** 70:5
**indicated** 90:17
92:6 98:1,4
**indicates** 107:16
107:22
**indiscernible**
15:20 17:9 20:17
22:4 28:11 40:6
45:17 46:22 47:4
47:14,15 49:22
50:22,23 65:15
74:12 78:23
**individual** 36:22
70:6 73:1,13,15
**individuals** 86:14
**industries** 55:15
72:6
**inescapable** 90:1
**inform** 86:22
**information** 31:3
31:6 83:20 84:21
85:19 86:18,24
87:1,3 88:10,18
89:2,17 91:15,24
91:25 92:14 96:15
96:23 97:7,8 98:9
98:9,10 102:6
103:7 105:17
110:5,6,19,20,21
110:23 112:10
115:12 116:10,11
116:13 117:2,11
119:13 121:13
123:23,24 125:19
125:21 126:3
**informed** 86:2,12
86:22
**infringement**
108:25
**ingredients** 17:14

**initial** 101:10
105:4
**initially** 80:9
82:25 83:5 103:16
124:6
**initiate** 52:7
**initiative** 19:4
**initiatives** 19:2,8
19:12
**inject** 17:12
**injunction** 21:14
21:17 22:3
**inside** 15:6
**insist** 124:15
**insolvent** 26:23
75:21
**inspection** 91:19
112:6 113:13
**instance** 88:14
**instances** 85:25
89:5
**insurance** 2:4,10
2:15 3:4 13:12
25:10,21 26:6,18
26:19 27:5,20,25
28:8,10,13,16,21
29:15,17,20,21,24
30:4,6,15,19 31:2
31:11,18 32:3,4
32:14 33:2,20
35:25 36:7,12
38:8,25 39:2,10
39:17 40:7,11
42:3,12 43:18,19
47:3,7 48:9,10,14
50:25 51:4,10,23
52:11 53:4,5,7,16
53:23 54:1,7,12
54:17,23,25 56:21
57:1 62:4 63:23
133:5
**insured** 72:1

**insured's** 47:23
**insureds** 26:17
**insurer** 38:4 45:1
46:20,21 56:14
61:25
**insurers** 26:7 27:8
27:9 30:13 32:21
52:4,8 53:9 54:22
63:16 70:5,14
**int** 112:11
**intended** 19:19
20:14 83:25
101:24 109:19
110:24,25 122:21
**intense** 85:5
**intention** 40:4
**intentionally**
24:13
**interest** 27:6 29:4
33:1 35:24 56:20
62:14 85:5,8
**interests** 27:3
29:11 30:2,23
33:3 36:21 38:1,5
41:25 42:2,4,10
42:17,25 43:7
44:8 46:12,24
47:23,23,24 48:5
49:4,5,16 55:22
60:21,24 63:16
**interfere** 15:9
50:9
**interject** 36:10
**internal** 92:15
**international**
55:12,13 105:23
**interpretation**
95:12
**interpreted** 73:13
91:24 101:23
115:1
**interprets** 44:5
73:14

**interrupt** 93:14
94:19,21 130:3
**intervene** 6:5,11
6:17 7:3,10,17 8:7
9:9,12,18 10:21
11:8,19 35:22
36:6 37:1
**intervenors** 7:17
8:13,15,20,22 9:8
9:18 10:3,20 11:8
14:17 81:25 83:3
83:10,14 85:2,13
90:8,10,13,19,22
91:3 92:11 107:3
111:5,11 121:3
122:10 123:6,15
**intervention** 37:3
**intransigence**
27:11
**introduce** 41:5
**introduction**
16:13 114:18
**introductory**
113:21
**investment** 97:8
103:2 105:6,23
110:4 112:10
116:11
**invoices** 15:8
**invoke** 67:11
**involve** 36:18
45:24
**involved** 45:25
76:24
**involvement**
31:17 64:7 74:18
**involves** 23:15
**involving** 36:7
53:6 62:9
**ironshore** 2:10
13:12 26:6 43:18
54:22

**irony** 83:13
**irrelevant** 36:1,2
  100:24 103:11,22
  115:15 119:14
**island** 114:2
**issue** 19:8 29:10
  34:15 36:10 37:10
  38:13 45:17,23,24
  46:19,24 48:12,19
  50:20 51:7 52:8
  60:2 82:12 86:8
  86:10,21 87:12,19
  89:20 97:19,20
  98:22 100:1,12,23
  101:22 102:12
  103:22 104:4,15
  106:2,18 108:6
  114:25 117:5
  118:3 121:6
  126:18,18,20,22
  128:4 131:10
**issued** 67:3
**issues** 17:8 21:21
  22:16 24:1 28:10
  29:24 31:9 37:23
  47:14 64:20 76:3
  77:8 81:6 82:16
  87:18 90:5,5
  107:9 109:25,25
  111:15 119:23
  128:8 130:23
**it'll** 67:19 82:13
**item** 25:7 79:23
**items** 65:3,8 81:22
  81:23 89:15
**iv** 2:9 13:17
**i'm** 111:23 112:17

**j**

**j** 4:17 11:24 28:2
  134:3,8
**james** 3:17 4:4 5:4
  12:10

**january** 1:17
  15:22 21:9 23:25
  24:14 37:9 90:17
  106:9 134:19
**jay** 15:19 129:21
**jersey** 72:13
**jim** 65:2,6 79:13
**job** 19:10
**jockey** 29:23
**joinder** 7:2
**joining** 15:16
**joint** 2:2,14 3:3
  25:20 27:15 29:2
  29:12 39:4,14
  51:8 53:13 55:25
  56:16 63:4 64:6
**jointly** 1:8 27:17
  40:6
**jon** 9:7 10:19
**jones** 6:6,12 7:4
  7:11,24 8:3,8 9:13
  10:3,10 11:20
  90:14 131:22
**joseph** 13:19,25
  93:10,10 100:9,10
  104:17,21 105:2
  105:13,21,23
  107:4,10,20
  108:11 110:7
  111:17,23 112:1
  112:15,17,22
  113:4,8,13,18
  114:1,6,10,21
  115:8,18,21 116:5
  116:8,13 117:16
  117:21 122:5
  128:18 129:8,12
  132:5
**josh** 43:19
**joshi** 126:25 127:2
  129:18,20,21
  130:2 131:1

**judge** 1:25 15:3
  15:12,16,21 33:25
  34:5,11 58:19
  59:15,15 104:5,5
  105:25 106:8,17
  107:19 113:23
  126:7 129:20
**judges** 88:16
**judgment** 27:3
  30:11 32:19 72:20
  72:21 102:9,20
  106:20 108:13
  109:13,21
**judgments** 108:16
  109:22
**judicial** 6:12 7:4
  7:10,17,18 9:3,18
  9:19 10:2,15 11:3
  11:8,9,15 52:11
  85:2 94:10 95:19
  102:5,18 104:3,7
  106:6,12,13 112:5
**july** 22:23 23:13
  34:3 47:8
**jump** 82:4
**june** 19:15 22:23
  23:6
**jurisprudence**
  34:25
**justice** 117:25
  118:3
**justified** 67:11

**k**

**k** 14:14
**kaminetzky** 3:7
  7:20 8:17 9:4,10
  9:21 10:16,22
  11:4,11,16 12:9
  25:9,12,13,18
  40:3 41:5,8,21
  43:5 64:8,14,25
  65:1 81:17,19,20
  82:9,10 89:19

90:17 91:11 93:6
  96:14 99:15,16,19
  99:21,23,25 100:3
  100:7 124:6,24
  125:4,6,8,12
  132:6
**katie** 90:12 107:2
  121:2
**katielynn** 6:5 7:23
  8:2,8 9:13 10:9
  11:20 14:22
**keep** 15:7,13 16:5
**kennedys** 43:20
**kept** 42:25 86:20
**kerry** 58:19 59:15
**key** 29:25 56:20
  62:13 71:10
  116:16
**kind** 73:24,24
  82:6,11 109:14
**knew** 68:7
**know** 17:8 18:22
  18:24 20:23 21:2
  22:16 23:16 24:4
  24:10,12,22 40:5
  40:5,6 42:8 43:24
  45:16 47:5 48:18
  49:11 50:8,18
  51:18 52:3 65:25
  66:9,21 68:11,12
  69:5,7 76:25,25
  77:2,22 78:2
  79:11 80:12 82:18
  83:5 91:17 95:18
  96:22,23 97:16
  102:14,18 104:11
  104:21 108:8
  110:16 111:4
  115:16 116:19,20
  116:22,22 117:3,4
  117:15 118:3,17
  118:21 121:17
  122:11,14,15,15

122:18 124:11
125:8,19 126:14
126:19 128:2
131:21
**known**  19:21 26:6
43:18
**knows**  17:24
28:24 31:5 38:4
119:7

---

**l**

**l**  11:25 13:8 19:22
65:19 134:3,16
**l.p.**  1:7 3:8,18 4:4
4:18 5:5 7:20 8:17
9:5,10,21 10:17
10:22 11:5,11,17
15:23
**lack**  61:1
**landau**  92:19
**language**  40:12
95:23,24 107:16
113:20 114:12
**large**  26:25 83:17
92:20
**largely**  38:19
76:10 89:20 115:7
**largest**  48:9
**late**  83:10
**launch**  20:22
**law**  13:11 33:8,9
33:10,11,13,16,21
33:24 34:1,10,10
34:14,14,21 43:17
44:21,24,25 50:9
50:14 54:19 55:5
57:2,16 59:13
68:8,16 70:24
89:12 94:11,12
95:15,17,19
101:17,23,24,25
102:1 104:5,7
106:21 107:24
108:18,20 109:9

114:16,17,23,25
115:4,7,7,8,9
117:12 119:11
120:6 124:20
131:22
**lawsuits**  31:9
**lawyer**  16:1 72:9
73:5 74:18 119:6
**lawyers**  42:8 43:1
46:21 77:11 128:2
**lay**  77:16
**lead**  102:10 120:8
**leading**  20:4
102:2
**leak**  112:11
**learn**  77:11
**leave**  39:13 53:13
130:9 131:11
**lees**  14:7 122:1,3,3
122:12,20
**left**  24:12 26:11
51:20 83:12
**leg**  71:5
**legal**  32:6 43:4
73:17 111:15
134:22
**legitimate**  103:14
**length**  19:24
**lengthy**  85:25
**letter**  4:7
**level**  18:5 45:13
45:15 68:17 97:13
116:19 117:11
**levels**  88:11
**leventhal**  87:15
91:12 92:4 99:3
99:11
**lexington**  12:5
13:21
**liability**  26:21,21
26:21 30:8 31:14
58:12 59:21 84:1

**life**  120:20
**lift**  3:16,20 4:2,11
37:13 49:17 66:8
66:10,13 67:9
133:7
**lifting**  4:8 65:11
**light**  39:20 84:10
87:6
**lightly**  21:4
**likelihood**  22:25
**limit**  33:9 62:23
**limitation**  73:18
**limited**  7:16 9:8
9:17 10:20 11:7
22:8 58:12,13,21
59:21 60:19 89:15
112:5,8
**limits**  26:20 33:8
115:2 128:24,24
**line**  36:1 84:15,15
125:22
**lines**  15:7 64:19
71:20 87:2
**link**  124:9
**liquidation**  34:23
58:8,14,15 59:5,6
59:7,16 75:8
**listen**  46:15
**listing**  103:11
**lists**  16:16
**literally**  57:14
87:9
**litigate**  27:18
29:24 36:10 37:5
37:19 39:14 53:14
71:18 84:8 89:23
**litigated**  27:13
42:3 60:15 71:25
72:3
**litigation**  2:6,18
3:6 12:21 28:20
32:17 40:11 44:12
46:14,20 48:4,5

48:14,21,24 49:9
49:14 50:12,25
51:4,10 52:7,15
54:16 55:1 56:14
56:16 58:11,22
60:10 61:1,3,11
61:15 62:11,17
63:1,2,6,7 64:21
67:14,22 71:24
72:1,2 94:25 98:5
**litigations**  48:17
**little**  39:8 50:7
52:5,5 61:4 86:18
95:14 123:20
**live**  80:2 106:12
**llc**  6:7,13 7:5,12
7:24 8:4,9 9:14
10:4,10 11:21
13:19 40:20 59:16
59:17 90:14
**llp**  12:3,12,19
13:2 14:2,9
**log**  86:13,24 93:19
93:25 96:16 98:14
100:1 101:6,10
103:23 111:3
112:23 125:17
126:2 127:16,24
128:1,18
**logic**  57:13
**logical**  108:10
**logs**  86:14 93:7,9
93:20 94:22 100:5
100:13 104:23,24
105:3,4,6 117:7
120:8,16 121:12
121:22 127:12
**long**  29:3 75:5
86:24
**longer**  24:7
**look**  18:6 46:11
99:6 102:1,17
110:7 114:12,20

119:4 124:17
125:20
**looked** 111:19
**looking** 50:6 76:9
99:2 116:21
**lose** 30:21
**loss** 68:10
**lost** 17:10 18:16
21:6 70:20
**lot** 119:23,23
**louder** 38:3
**lougash** 106:22
**low** 20:10 60:25
**lower** 20:12 109:2
**lowne** 9:7 10:19
125:12
**lp** 59:22

**m**

**m** 2:18 6:14 12:17
**ma'am** 77:3
**magistrate** 104:5
105:25
**maintain** 34:21
**maintains** 34:20
**maintenance** 18:5
**major** 41:23
115:6
**majority** 83:15
85:18 90:20 111:6
**making** 22:13
66:6 67:17 70:21
101:12 106:14
108:11 117:9
118:11,15
**managed** 18:18
**management**
37:13 60:23
**mandate** 91:20
**manner** 49:15,15
**manufactured**
20:7
**march** 20:6 21:16
21:20

**mark** 87:14
**marked** 83:6
**marketing** 68:3
**markowitz** 7:6
**marshall** 12:8
16:18
**marshals** 29:18
**massive** 31:8
**material** 83:1,18
83:23 90:21 95:5
95:6 96:24 97:5
97:12,20,24 98:1
98:7,15,17,19,21
102:5,17 107:23
108:8 109:10,16
110:2,10,11 120:9
123:8
**materials** 8:14,21
83:2,8,15 86:17
87:5 89:13 90:25
93:19,25 94:5,8
94:10 95:15 96:2
96:5 98:14,24
102:4,9,16 103:2
104:3 107:25
111:4,9,12
**matter** 1:5 16:11
25:7 34:9 54:24
58:11,17 60:23
62:6 64:23,24
72:4 79:7,11
90:18 91:18 96:3
106:21 114:9
115:13,15 127:5
129:16 130:14,19
130:23
**matters** 16:16
27:19 39:9,17
53:15 119:8 127:5
131:7
**maura** 14:14
118:6

**maximize** 29:21
48:8
**maximizing** 30:1
56:21
**maximum** 70:15
**maxwell** 95:13
106:8 107:18,21
108:1 116:17
**mcclammy** 3:17
4:4 5:4 12:10 65:2
65:5,6 68:21,24
68:25 76:14,19
79:13,14
**mcclatchy** 34:2
**mean** 39:19 40:8
40:16 78:9,15,24
78:24 80:16
104:23 109:21,23
113:22 114:4,7,12
115:5,21 116:5,9
122:15 123:5
124:14
**meaningful**
102:24
**means** 27:14
84:18 100:8
106:21 120:18
**measure** 83:2
**media** 6:7,7,13,13
7:5,5,11,12,16,24
7:25 8:3,4,9,9,13
8:15,20,22 9:8,14
9:14,17 10:3,4,4
10:10,11,20 11:7
11:21,21 14:17
81:25 82:16 83:3
83:10,14 84:24
85:13 87:13 90:8
90:13,14,15,19,22
91:3 92:11 101:3
102:7,16 103:9,10
107:3 111:5,11
118:24 120:17,21

120:21,23 121:3
123:6,14 126:10
126:17,23 127:5
**medial** 85:1
**mediation** 21:4,8
22:6,9 23:15
24:14
**medication** 19:19
**medications** 20:25
**medicine** 20:13
**meet** 60:25 97:4
**meeting** 68:17
122:18
**members** 82:20
109:19
**memorandum**
92:18,21
**mentioned** 41:10
**mere** 85:25
**merely** 95:5
**merits** 30:24
78:11 82:5 83:25
89:24 102:11,13
106:10 121:24
**messy** 28:20
**met** 86:3 90:18,25
92:12 121:14
123:8
**mid** 92:14
**middle** 24:18 84:7
**milbank** 14:2
122:4
**milestones** 19:18
**million** 17:18
26:22
**mind** 57:13
**mineola** 134:25
**minimize** 28:20
32:16 74:18
**minimizing** 29:22
**minimum** 103:25
**minutes** 15:17

[mirrored - negotiations]                                                    Page 22

mirrored 55:15
mis 109:18
misses 32:5
missing 111:22
mistaken 33:10
mistakenly 36:21
mitch 99:8 124:2
    127:7,10
mitchell 13:9
modify 58:14
    63:25
moment 24:25
    31:19 58:20
    100:16 103:16
    127:3
monaghan 14:14
    118:6,6,10,25
    119:3
monday 84:11
monetization
    42:11
money 67:17,22
    72:21
monitoring 102:7
    102:24
month 18:8 23:19
months 18:15
    19:15 87:21
moot 103:24
    104:4,6 106:1,11
mootness 105:20
mor 17:25 18:6
morning 15:2,21
    16:23 21:7 25:12
    40:23 43:16 65:5
mortimer 14:10
    118:7
motion 2:1,8,13
    3:1,10,10,14,20
    4:8,11,11 5:7 6:5
    6:11,17 7:3,10,18
    7:22 8:1,6,13,16
    8:20,22 9:1,2,12

9:19 10:2,8,13,14
    11:1,2,9,13,14,19
    17:7,11 21:17,19
    25:8,10,19 26:12
    28:22 29:7 30:11
    30:17,21 32:14
    33:22 37:5,8,11
    37:15 38:7 41:6
    42:16 47:17,17
    49:18,23 52:23
    54:21 56:5,7,11
    56:13 62:19 63:19
    64:5,8,15,18 65:9
    65:10,10,21,22,22
    67:1 69:17,17
    70:17,19,21,21,23
    70:25 71:14,15,16
    71:21 73:2,10
    80:6,21,22 81:11
    81:13 83:10,14,16
    84:17 85:20 86:8
    89:19,24 93:21
    100:14,18,18
    101:1,5,15,19
    102:14,22 103:16
    103:21 104:1,2,6
    104:9,10 106:1,2
    106:19,20,21,23
    107:24 108:12
    109:12,13,13,14
    109:23 110:1
    115:16 117:9
    118:16 119:12,19
    121:11,14 122:9
    126:6,8,9 127:16
    127:18,22,25,25
    128:3,4,19 130:8
    130:17 131:11
    133:5,6,7
motioned 67:9
motioning 66:8
motions 3:15 4:2
    7:17 8:15,21 9:8

9:18 10:20 11:8
    37:13 65:8 66:5
    69:14 76:15 82:19
    82:21,24 83:3
    84:3,11 85:13
    88:17,20 90:22
    91:1,4 95:4 97:11
    106:15 108:16
    109:21,22 124:15
    126:9 127:6,22,24
    128:11
motivation 50:13
movants 43:13
move 22:2 23:3,11
    23:20 24:24 64:24
    76:12 119:8
moved 95:15
    108:14
moving 69:5
    76:13 111:12
multi 83:18
multiply 48:6
    61:11
multiplying 48:4
mute 16:5 68:24
    82:9
muted 15:7

n

n 12:2 13:1 14:1
    15:1 65:19 133:1
    134:1
naf 24:7
nalmefene 19:18
    19:22
naloxone 20:11,21
name 15:2,11 16:3
    20:19 35:3,4
    54:24 60:7,10
    129:21 130:20
named 35:19
names 103:2
    118:15 122:8

narcan 20:14
narrow 85:24
narrowed 86:4
    87:18
narrowing 119:22
narrowly 91:22
narrows 109:25
nas 7:1,7
nasal 20:11
national 18:21
nature 47:25
    100:22 111:11
nd 12:14
nda 19:21
near 75:6
nearly 47:6
nebraska 108:22
necessarily 44:23
    97:5 118:20
necessary 17:13
    29:5,8 43:1,2
    55:22 61:6
need 22:12 23:2,3
    23:8,12 24:3,8
    28:20 29:22 45:8
    49:2,8 50:12 52:8
    55:3 64:9 92:9
    97:6 99:13 103:7
    103:14 111:14
    119:8,25 124:22
needed 93:15
needs 24:6,6
    75:22 116:18
    123:23
negative 32:24
negotiate 47:8,11
    52:3 81:5
negotiated 62:13
    71:9 82:22
negotiating 71:10
    74:14
negotiations 24:3
    27:10 52:1,4 55:4

62:12 81:5
**neither** 28:17
  107:11
**nes** 70:13
**net** 18:7 71:1
**never** 37:8 100:19
  101:4,4 106:13,13
**nevertheless**
  57:10 58:10 86:20
**new** 1:2,15,15
  12:6,6,15,15 13:6
  13:6,23,23 14:5,5
  14:12,12 16:23
  19:20 20:20 33:21
  51:1,3 72:13
  77:12 85:16
**news** 6:7,13 7:5
  7:12,25 8:4,9 9:14
  10:4,11 11:21
  17:4 22:13 90:15
**newspaper** 120:9
**night** 86:3,12,20
  87:14
**ninety** 100:23
**nixon** 114:2
**non** 2:12,19 6:10
  6:15 7:2 12:13
  26:2 36:9 38:12
  41:3,4,17 42:1
  56:10 70:6 71:19
  81:2 88:3 96:22
  98:17 103:14,23
  111:10 116:8
  128:2
**nonconsenting**
  89:22
**nonjudicial** 94:14
**noramco** 17:4,6
**norm** 62:2
**normally** 73:9
  119:10
**note** 17:5 47:1
  107:9,18 108:3

110:3
**noted** 37:14 56:15
  57:10 64:15 72:11
**notes** 50:7
**notice** 8:6,12 9:2
  10:14 11:2,14
  37:5,12 49:19,20
  64:17 71:11 88:24
  131:20
**noticed** 37:8
**notion** 31:10
  108:7
**notwithstanding**
  63:14 73:20 80:3
**november** 5:24
  18:6 82:22 83:11
  91:12
**number** 17:4,22
  19:1,18 26:4 75:4
  79:23 101:9,12,13
  105:9 111:6
**numerous** 82:6
**nw** 13:13 14:18
**ny** 134:25

**o**

**o** 1:23 15:1 65:19
  134:1
**object** 4:15,22 5:2
  5:8,12,15,19,23
  6:2 30:13 79:9,25
  86:23 111:11
  123:13,25 133:8
**objected** 30:10
  45:16 56:4 81:10
  83:9 111:5
**objecting** 56:13
  63:9
**objection** 2:8 3:14
  3:15 4:1,21 7:16
  9:8,17 10:20 11:7
  26:5 30:16 37:10
  37:17 38:6,18
  54:21 56:23,24

60:22 61:2 80:2,4
  87:5 93:24
**objections** 66:1
  80:11 82:1 91:1
  94:6 97:11
**objector** 57:17
**objects** 32:11
  79:24
**observation** 122:5
**observe** 109:20
**obstruct** 47:3
**obstructing** 30:18
**obtain** 27:7
**obtained** 72:21
**obtaining** 17:13
**obviously** 16:24
  18:14,21 21:6
  44:4 45:5,12
  46:19 51:25 55:2
  111:18
**occasion** 25:25
**occurred** 63:13
  69:22
**october** 21:15
  47:10 91:11
**offer** 93:25
**offerings** 83:21
**office** 16:9,11
  99:17 131:16
**official** 2:4,16 3:4
  13:3 39:12 40:17
  40:24 41:11 52:25
  56:8 58:6,10,25
  70:9 99:9 127:11
**offline** 131:4,7
**oh** 77:21 79:1,22
  82:10 122:2
**okay** 24:21 25:4
  25:11 38:14 40:10
  40:22 41:1,14
  43:10,21,23 50:21
  51:5,12 52:22
  65:4,19,21 66:6

66:16,18,20,23
  68:20 69:13 76:22
  77:5 78:6 79:1,4,6
  79:16 80:13,19
  81:18 87:23 93:13
  95:3,7,7 99:13,18
  99:22 100:7
  105:22 107:1
  111:17 113:20
  121:9 123:1 124:1
  124:3 125:24
  126:5 127:10
  129:13,15 131:1
  131:17 132:3
**old** 93:1 134:23
**omnibus** 3:14 4:1
  15:22 16:14 37:9
  120:12 126:10
  129:7 131:25
  132:1
**onboard** 22:25
**once** 32:7 74:13
  74:25
**ones** 67:17 68:13
  81:8 99:14 126:22
**open** 67:8 91:19
  112:6,21
**opening** 25:2
  101:7
**operates** 109:18
**operations** 92:2
**opinion** 90:6
  101:17 105:25
  119:9 131:21
**opioid** 18:5 19:19
  20:5,15 92:17
**opportunity**
  32:22 105:24
  122:23 123:14,15
**oppose** 93:9,12
  127:13
**opposed** 36:11
  46:16 59:22 60:6

61:15,17 63:18
69:15 75:8 117:20
**opposes** 32:25
**opposite** 47:15
**oral** 43:13,14
66:21 68:22
126:12
**order** 2:1,2 3:2,2
4:15,21 5:2,7,11
5:14,18,22 6:1 8:1
8:13,19 9:1,3
10:13,15 11:1,3
11:13,15 16:15
22:9 25:20 28:3
29:20 37:13 39:12
57:25 59:25 64:9
76:14,15,20 79:25
80:14 81:14 97:14
97:17,23,24 98:5
109:14 133:8
**ordered** 22:18
88:9 105:18
**orders** 83:7 88:9
88:15,22,23 98:4
**ordinarily** 50:10
50:10
**ordinary** 127:25
**organization** 75:8
**original** 122:9
**originally** 21:14
119:20
**orion** 101:17
107:12 111:18
113:1,18,21 114:1
**otc** 20:21
**ought** 38:15
**outlet** 120:21
**outset** 47:1
**outside** 16:24 53:7
**overall** 17:2
**overcome** 95:21
**overdoses** 19:19
20:15

**override** 44:23
113:25
**overruled** 38:6
**overseas** 67:23
**overview** 82:5
**overwhelming**
85:18
**overwhelmingly**
100:17
**owed** 59:21 74:1,1
**owings** 118:1
**owners** 51:1,3
**oxycontin** 18:14

**p**

**p** 12:2,2 13:1,1,9
13:25 14:1,1 15:1
**page** 12:1 38:25
39:11 83:19 84:14
84:14 111:23
133:4
**pages** 82:24 84:13
85:25 86:6,7
**paid** 67:18,19
71:3,21,25 77:21
**pamela** 11:24
134:3,12
**pandemic** 18:21
**panel** 62:22
**paper** 91:18 95:23
95:24 107:17
109:10 112:19,24
115:25
**papers** 49:6 83:4
125:13
**paragraph** 37:6
38:24 39:11,11,19
53:19 54:13,14,20
55:3 57:24 61:22
62:18 63:14 73:20
73:25
**paragraphs** 113:9
**paramount** 85:3

**paraphrasing**
34:11
**park** 13:5
**part** 45:20 74:23
78:25 88:6 120:22
130:14
**parte** 9:1 10:13
11:1,13
**participants**
15:13
**participate** 29:14
31:2 62:15
**participating**
50:11
**participation**
15:16 90:19
**particular** 23:1
42:7 46:2 53:18
61:20 63:9 73:8
101:20 117:4
130:23
**particularized**
116:18 122:14,23
123:9,19
**particularly**
17:21 39:20 56:19
92:25
**particulate** 61:21
**parties** 17:6 18:3
21:22 22:7,17
23:8,15,19,24
24:3,12 26:17
27:17 29:23 32:8
33:11 35:23 37:21
39:3,15 42:5,24
42:25 48:1,4,11
48:16 49:2,3
50:11,17 51:8
53:5 54:15,17,19
55:6 56:7,7,20
57:11 62:14,20
63:4,8 64:20
74:14 75:18,24

78:14,15 81:4
82:16 83:13 84:1
84:2,18,24 85:3
85:20 86:3,25
88:7,8,18 89:1,8
90:4,18 91:1 95:5
97:2 99:1 101:2
103:19 104:1
106:1 107:21
108:10,15 110:12
110:13 111:2,4,9
112:11 118:24
119:10,21 120:4
121:24 123:7,13
123:14,17 124:14
126:10,13,16,17
126:24 128:1
130:22
**partner** 25:8,15
**partners** 6:7,13
7:5,12,24 8:3,9
9:14 10:4,10
11:21 58:3 90:14
105:24
**partnership** 58:13
58:22
**party** 24:2 30:13
33:11,13 35:1
38:16 44:22 45:22
45:25 55:9,20
56:2,13,16 57:14
61:1,14,24 62:15
83:9 89:7 93:23
93:25 94:2 108:12
109:24 116:21
123:16
**passes** 24:5
**patients** 129:22
**paul** 6:18
**pause** 15:18 24:25
25:3 50:4
**pay** 32:7,9 44:17
71:1

[payment - post]                                                              Page 25

**payment** 3:10,16
  4:2 65:10,22 67:2
  69:17,20 70:17
  71:14,18 74:10,11
  133:6
**payments** 66:7
  74:12 77:22
**pending** 43:20
  49:17 91:4 117:6
**pennies** 67:19
**pennsylvania**
  12:22 13:13
**pennysaver** 59:17
**people** 54:23
  73:13,16,22 74:17
  75:4,15 77:20
  102:6 105:6
  120:19,24 122:14
  126:1
**percent** 15:4 18:8
  40:3 86:6,6,6
  100:24 101:3,10
  102:16,19 121:11
**perdue** 67:6,13,23
  68:2 72:11
**perdue's** 67:12
  69:9
**perfect** 23:4,20
**perfection** 23:10
**perfectly** 40:12
  48:25 49:9,10
  62:22
**performed** 18:18
**period** 74:2 90:3
  103:12 108:8
  111:8
**periods** 26:18
  92:16
**permission**
  105:14,16 130:12
**permit** 34:13 55:8
  88:24 103:12
  112:24

**permitted** 68:8
  104:18
**permitting** 112:10
**person** 46:15
  69:25 74:4 114:8
  116:7 117:2
**personal** 96:23
  117:8 125:19
**personally** 87:2
  96:15 103:6
  105:17 117:1
  121:12
**persons** 21:19
**perspective** 55:1
  97:6
**persuasive** 116:23
**pertain** 81:11
  131:10
**pertained** 131:8
**pertains** 40:13
  53:21 130:16
**petition** 18:2
  69:22 71:2,24
**ph** 104:5 106:22
**pharma** 1:7 3:8
  3:18 4:4,18 5:4
  7:20 8:17 9:5,10
  9:21 10:17,22
  11:5,11,17 15:23
  25:14 93:2
**pharmaceutical**
  17:14 18:13
**phi** 19:1,8
**phone** 16:5 65:12
**pi** 20:25
**pictures** 111:18
**pieces** 89:16
**pii** 111:2,3 125:18
**pii's** 111:10
**pillsbury** 12:12
**pittman** 12:12
**place** 46:1 51:20
  115:20 118:21

**plain** 36:14 39:1
  58:21 72:24 73:11
  95:23,24
**plainly** 34:15 96:1
**plaintiff** 35:19
  58:16,16,16,23
  59:1
**plaintiffs** 27:17
  39:15 60:11 61:10
**plan** 22:19 24:4
  24:11,17 28:3,5,9
  42:13 50:16,17,25
  58:5,8 60:18
  63:24,25 64:3
  71:9 73:23 74:22
  75:6,7,8,9,16
  76:10,18 81:6
**planned** 67:12
**plays** 102:5,18
**pleading** 66:20,22
  115:17 130:7,10
  130:13,16,17,20
  130:20
**pleadings** 43:12
  43:15,24 63:6
  68:21,23 69:4
  88:24 115:19,23
  120:12
**please** 15:5,7,11
  25:13 100:10
**pleased** 17:16
**pleasure** 87:22
**pled** 67:6 68:2
  72:11
**plimpton** 14:9
  118:7
**pm** 132:8
**podium** 25:9
  38:11 65:2 81:16
  86:9 87:20
**point** 16:6 21:9
  28:10,19 32:5,6
  45:18 47:2,5 59:5

  61:16 64:19 75:6
  75:15 76:13 91:3
  93:1,15 94:19
  95:10,14 104:11
  110:10 116:15
  117:18 118:5
  120:10,25 121:17
  122:22 127:8
  131:11
**pointed** 77:19
  94:16
**points** 44:1 45:7
  57:17 73:6 116:16
**police** 72:19,23
**policies** 26:18
  31:20 42:12 53:2
  53:10,23 54:1
**policy** 112:3
  114:15
**polk** 12:3 16:19
  25:13 65:6 79:18
  81:20
**poor** 24:5
**portion** 85:16
**portions** 123:17
**position** 27:12
  29:23 36:16 57:19
  91:4 92:11,23
  93:5 94:10 95:11
  97:3,15 122:7
  127:11
**positions** 89:25
**positive** 32:24
**possession** 35:19
  45:22 46:2 55:8
  55:17 57:9
**possibility** 44:7
**possible** 22:19
  24:1 42:4 48:13
  74:11 96:10
**post** 19:6 28:4,11
  52:21

potential   46:14
53:8 56:14 61:2
potentially   24:2
39:23 61:10
101:11 103:18
110:17
power   72:20,23
102:5,18 106:12
practical   62:6
112:3
practice   88:12,15
88:16 124:15
pre   44:24 58:4
69:21 71:2,24
precedent   36:25
precedes   39:7
precipitated
89:21
precipitating   90:7
precise   19:8
precisely   95:11
123:9
preclude   50:11
92:9
precluded   59:3
60:7
predetermine
28:3
predicament
123:5
preemption   45:3
45:3,24
prefer   71:13
111:14
prefilled   19:25
preis   91:13 92:5
99:4,10 101:8
prejudging   51:6
prejudice   37:7
91:5 103:1,8
117:9
premature   104:1

prepare   27:12
prepared   81:9
prepetition   31:9
prescribes   54:8
54:10
prescription
20:12
present   26:12
80:12 82:16 128:1
presentation   47:2
47:20 92:13,15
presentations
83:19
presented   109:25
presentment   4:18
preserve   32:1
president   92:19
presiding   72:4
preska   104:5
106:17
preska's   106:8
107:19
press   14:16 77:21
85:4 86:3 88:19
89:3 90:13 108:22
109:5,19 112:11
112:12 116:2
117:21 121:20
122:10
presumption
94:11,12 95:16,17
95:20 101:24
102:4 107:25
108:2,3
presumptive
106:6
pretty   18:1
prevent   62:24
71:5 89:6,7
116:25
previous   122:21
previously   62:13
90:21 101:22

pries   87:14
primarily   63:16
principle   36:25
70:24 71:4
principles   45:16
45:25,25
prior   58:19 70:25
80:3,23
privilege   8:14,21
84:5 86:13,14,24
89:19,24 93:9,20
93:24 94:22,24
96:15 98:14 100:1
100:5,13 101:6,10
103:23 104:23,24
111:3 112:23
117:7 120:8,15
121:12,22 125:17
126:2 127:12
128:1,8,15
privileged   82:19
93:7,19 96:5
privileges   82:23
84:11,17 85:20
86:8 93:21
pro   14:24 65:9
probably   38:15
46:15 61:17 68:12
120:3,10 131:2
132:1
problem   48:3,3
49:1,25 96:17
problems   46:24
48:20,24
procedural   36:13
58:17
procedurally   37:8
procedure   74:23
118:18
procedures   74:20
proceed   24:19
25:4 54:25 84:12
88:13 111:8

proceeding   31:11
36:7,12 52:1
55:14,24 72:18,22
73:9
proceedings
37:21 61:8 63:17
63:19 85:2,9
95:16 109:20
132:7 134:5
proceeds   26:24
27:5,7 28:13 30:4
30:18 33:20 56:21
process   30:3
32:23 61:20 62:16
64:3 74:14 75:1,3
76:5,6,8,13 101:2
101:14 106:14
110:12 118:11
121:4 123:21,22
produce   128:13
produced   83:6
88:14
product   26:21
83:21
production   16:12
82:19 101:13
productive   27:9
products   17:14
18:14 92:16,17
progeny   29:13
progress   19:3
109:20
progressing   20:25
prohibits   54:10
projected   17:17
projections   92:15
promote   114:4
prompted   49:23
promptly   76:3
prong   61:4,5
proofs   31:14
proper   64:17
89:11 113:4 121:1

121:16 131:19,19
131:20
**properly** 89:9
96:8,21,22 98:16
**property** 55:11,19
**propose** 24:19
38:11 82:11
**proposed** 8:1
28:21 29:17 35:25
38:8 50:16 51:2
56:3 57:24 64:9
71:11 80:14 82:2
125:15
**proposes** 50:25
**proposing** 44:17
**proposition** 118:4
**propriety** 97:17
**prosecute** 2:3,14
3:3 25:21 28:7
30:14 35:3
**prosecuting** 35:2
**prospect** 60:19
**prospects** 52:9
**protect** 101:19
110:25 116:7
120:19
**protected** 117:11
**protection** 97:13
115:10,12
**protective** 83:7
88:8 97:14,17,23
97:24 98:2,4
**protects** 114:8
**provide** 26:19
35:9 72:10 107:8
111:15 120:5
**provided** 16:8
44:13 72:15 88:10
94:23 105:5
112:19 117:22
121:22,23 123:16
**provides** 32:13
33:13 35:23 53:11

54:14 72:16
113:15
**provision** 28:19
73:21 98:3 114:7
**provisions** 22:9
39:22 115:7
**proxy** 84:8
**prudent** 18:9
**public** 19:3,12
69:10 85:4,5
89:10,23 90:6
91:19,19 92:9
94:11 96:23 98:17
102:7,23,24
103:14 106:22
108:9,13,24 109:3
109:5,19,22
111:10 112:1,21
114:4,15 116:25
120:19 122:8
**public's** 85:8
106:14 109:15,18
110:2
**publicize** 118:20
**publicly** 17:25
90:20,24 110:15
**publishing** 59:17
103:11
**pull** 110:16
**purdue** 1:7 3:8,18
4:4,18 5:4 7:20
8:17 9:5,10,21
10:17,22 11:5,11
11:17 15:23 17:13
18:16,17 25:14,14
28:25 44:1 93:2
**purdue's** 20:6
92:18
**purely** 40:5
**purport** 44:23
**purported** 32:11
**purportedly**
91:14

**purpose** 32:20
110:24 112:9
113:4
**purposes** 98:5
112:7 115:3
**pursuant** 26:17
83:7
**pursue** 29:3 30:3
33:19 34:8 44:18
45:6 47:6 55:9,18
56:2 57:3,20 64:1
71:23 75:14
130:19
**pursued** 34:16
119:20
**pursuing** 27:5
28:12 29:15 49:10
**pursuit** 49:14
**put** 16:3 23:19
42:20 82:13 116:1
121:19 125:2
**puts** 33:24
**putting** 61:16

**q**

**qualified** 67:25
107:14,14
**qualifies** 68:5
**quarter** 20:21
**quarterly** 83:21
**question** 30:22
33:11 38:14 41:2
46:6,11 63:10
95:18 96:3 98:25
**questions** 24:19
24:22 26:14 38:10
41:11 69:2,11
98:23
**quick** 19:2 21:5
125:20 129:25
**quickly** 19:16
51:15 88:13
**quite** 51:11 82:12
84:16 87:22 88:6

96:9 119:10
**quote** 23:7 36:16
**quoted** 103:1
**quoting** 34:12

**r**

**r** 1:23 12:2 13:1
14:1 15:1 20:19
106:7 134:1
**rachmuth** 6:18
**raise** 36:10 50:21
100:13 116:15
117:19 118:10
121:5
**raised** 44:1 49:17
60:2 90:8 106:2
118:13
**raising** 37:10
45:24 129:19
**range** 119:21
**rare** 71:22
**rate** 32:2,3,6
**raymond** 7:9,14
10:1,6 93:11 94:1
94:6 96:6 122:4
**rdd** 1:7
**reach** 23:24 49:11
77:24
**reached** 21:23,25
24:1 51:17 60:3
82:21 108:15
109:23
**reaching** 76:6,7,7
**read** 39:8,19
43:12,24 57:22
66:19,19 68:21
75:11 77:20
101:24 111:24
113:20
**reading** 38:24
71:20 115:24,25
**ready** 20:7
**real** 46:3 118:14
120:14

**realize** 23:8 97:4
**really** 20:13 30:16
  46:6,22 47:20,21
  48:3 50:24 51:6
  81:11 88:5 96:13
  97:19 98:20
  117:15 119:7
  120:8 121:16
  126:9
**reams** 84:21
**reason** 21:13
  30:22 52:16 60:20
  63:23 64:2 77:1,3
  77:4,15 93:3
  96:16 98:13
  101:14 102:8
  119:13 131:15
**reasonable** 86:25
  111:8 123:13
**reasons** 50:9
  80:23 85:10 116:2
  116:6 119:12
**rebuttal** 26:13
  41:13
**recall** 83:4
**recital** 28:2
**recognition** 35:17
  42:11 111:20
  113:10
**recognitions**
  42:16
**recognize** 49:18
  73:5 85:7 88:23
  123:20
**recognized** 55:16
  55:25
**record** 40:13
  53:20 79:18 90:12
  91:19 95:8 117:10
  118:5 121:1 122:6
  127:19 130:14
  131:19 134:5

**recording** 15:13
  16:7
**records** 6:12 7:4
  7:11,18,18 9:19
  9:19 10:2 11:9,9
  94:10,14 95:19
  112:2,21 114:3
**recoveries** 30:2
**recovery** 29:20,21
  33:2 56:21
**red** 125:4
**redact** 104:19
  111:9 122:7
  125:18
**redacted** 83:1
  90:20 91:6,13
  92:14,21 96:18,22
  97:6 98:18 99:3,7
  99:14 103:7
  120:13 124:16
  126:20
**redaction** 96:24
  111:3 118:14
**redactions** 82:2
  85:23 86:5 87:1,4
  87:11,18 92:5,8
  98:15,18 125:1,15
**redline** 125:5,7
**reduced** 74:24
**reducing** 17:13
  33:2
**reed** 48:10
**refer** 25:22 26:7
  53:3
**referenced** 83:8
  91:11 99:11 110:8
**references** 73:2
**referred** 45:14
  75:19 127:24
**referring** 34:2,22
  45:11 54:23 96:20
  114:13 127:22

**reflects** 27:2
**refused** 47:14
**refute** 131:2
**regard** 55:4 63:6
  120:15
**regarding** 6:11
  7:3 8:13,20 31:11
  36:12 39:10,17
  51:17,23 53:15
  54:16 106:10
**regardless** 42:12
**regards** 27:25
**regulated** 18:22
**regulatory** 72:20
  72:23
**rein** 63:13
**reiterate** 69:4
**rejected** 34:1
  36:24
**related** 2:3,8,15
  3:6,16 4:3,12,16
  5:3,15 6:14,18 7:5
  7:12,19,22 8:1,7
  8:16,23 9:3,9,20
  10:4,8,15,21 11:3
  11:10,15 21:18
  22:3 26:17 27:19
  28:15 29:24 86:13
  121:20 127:15
**relating** 130:25
**relationships**
  110:17,17
**relatively** 70:22
**relevance** 86:18
**relevant** 19:9
  24:12 33:17 83:7
  90:25 97:25
  100:14 101:4,11
  101:15 102:25
  103:19 104:3,12
  105:9 106:15
  114:22

**relief** 25:25 27:13
  37:5,15 47:4,6,13
  47:18 64:16 65:23
  66:11,12 71:16,22
  72:10 75:14 81:7
**relies** 34:17 38:19
  94:7
**relieved** 78:20
**rely** 113:1 122:21
**relying** 41:12 44:2
**remain** 24:13
  60:25 69:7 82:1
  82:17 84:16 85:24
  86:15 88:10 92:21
  116:21 123:8,18
**remaining** 26:24
  28:13 56:16 86:8
  86:10 93:4
**remains** 26:23
  80:2 102:19
**remand** 107:20
**remarkably** 17:25
**remarks** 25:2
**remediation**
  49:22
**remember** 15:7
**remembers** 19:24
**remind** 129:6
**reminder** 15:4
  19:14 35:15
**render** 100:25
  103:21
**rendered** 106:11
**rendering** 104:13
**reorganization**
  28:4,5,9 42:13
**repeat** 43:4,25
**replace** 50:18
**reply** 3:1 5:1 7:22
  10:8 37:14 54:21
  63:5 91:8 94:3,18
  95:12 101:8
  126:23 129:11

report  17:16
  20:23 22:10
reporter  16:2
reporters  14:16
  90:12
reports  83:21
represent  42:6
  47:22 48:17 49:3
  49:4,5 118:7
representations
  53:20 54:20 62:19
representative
  34:8
representatives
  43:2 120:18
represented  31:24
  48:9 126:13,14
  129:22
representing
  38:12 56:6 65:16
  70:11 82:16
represents  25:24
  30:6
reputable  120:21
request  29:1 79:8
  80:9 100:15 111:8
requested  21:10
  25:25
require  89:12
  96:9 118:14
  128:13
required  20:16
  37:12 48:6
requirement
  37:12 107:13
  109:12 128:13
requirements
  50:10
requires  61:5
  117:25 118:4
research  98:10
  110:19 115:11
  119:15

researching  67:4
resolution  27:8
  29:6,9 30:5 47:16
  49:22 52:12 55:23
  61:7 63:17,18
  75:17 78:19 82:22
resolve  27:18
  39:15 52:8 53:14
  64:20 100:23
  103:20 128:18
resolved  28:11
  42:4 51:23 52:15
  75:22 76:3 100:16
  100:17 104:10
  106:2
resolves  42:13
resolving  30:7
  47:13 63:23 104:2
  126:19
resources  29:19
respect  7:10 9:2
  10:2,14 11:2,14
  19:7,18 20:3,9
  21:17,21 22:3,6
  53:4,22,25 54:6
  55:11 57:1 61:19
  87:12,25 92:3,12
  93:4,5,18 96:5
  98:21,24 110:4
  111:2,12 114:8
  121:5 122:7
  125:17 131:3,3,5
respectfully  31:15
  32:4 97:22
respective  89:25
respond  24:24
  43:25 94:2,3
  107:3
responding  26:5
  128:17
response  7:1
  38:18 47:10 49:19
  85:13 122:9

responses  80:5
responsibility
  27:5 68:15
responsible
  120:22
responsibly
  120:18
rest  66:21 68:23
  69:3
restrictions  18:23
restrictive  73:18
result  18:9 60:3
  61:18 74:2
resulted  18:22
resulting  102:6
results  23:9
retain  101:25
retains  117:24
reuters  6:7,13 7:5
  7:12,25 8:4,9 9:14
  10:4,11 11:21
  90:15 131:22
revealing  92:1
reverse  19:19
  20:14
review  88:17
  105:14 111:9
  117:7 121:16
  124:13 131:22
reviewable
  102:10,12
reviewed  43:15
  65:21 66:1 74:24
  90:24 111:18
reviewing  74:15
  84:13 117:18
rewards  76:7
rhode  114:2
richard  12:25
  40:19 51:14
right  25:16 32:11
  35:23,24 36:5
  41:2 42:19,21

43:11 48:1 52:22
  55:19 61:18 65:13
  69:14 77:7,23
  78:6,17,20 79:6
  80:16,19,22 93:13
  95:13,20 99:17,24
  101:18,18 105:19
  106:6,14 108:13
  108:17,19,21
  109:1,5,6,7,9,15
  109:15,18 110:2
  111:25 112:1,3
  114:16,17,23
  117:14 118:9
  119:2 121:24
  122:7 123:1,11,22
  125:6,11 128:6
  129:10 132:4
rights  37:1 46:3
  53:7 54:2,3,10
  57:1 63:13,24
  64:1 89:2
risked  17:10
risks  76:5
rivive  20:19
road  50:18 52:11
  134:23
robert  1:24
robertson  79:15
  79:17,18,22 80:7
  80:15,18 81:15
role  23:16 102:5
  102:17
routinely  110:1
rule  79:10 81:1
  109:12 113:23
  115:15 119:8
  123:24 124:23
ruled  21:7 103:3
  104:5
rules  119:17
ruling  64:11
  97:12 122:21

[ruling - settlement]                                                 Page 30

124:14
rulings  133:3
runs  70:23

**s**

s  2:8 3:7,7,17 4:3
4:12,16 5:16 6:14
6:18 7:6,6,13,19
7:19,23 8:2,7,16
8:17,23 9:4,4,9,9
9:20,20 10:5,9,16
10:16,21,21 11:4
11:4,10,10,16,16
12:2,8,9 13:1 14:1
15:1 65:19 107:13
107:16
sackler  7:9,14
10:1,6 13:20 14:3
14:10 82:3,20
93:11 94:2,7 96:6
97:2,22 107:21
110:15 118:7,8
122:4 126:16
129:6
sacklers  67:13,21
83:17,25 84:8,18
86:11 88:4,5
89:22 93:9 100:3
103:5 120:15
121:14 129:5
safety  116:22
117:2 118:13
120:20 126:18
salami  32:23
sale  17:6,11
sales  18:5,7
samples  127:17
sara  13:8 40:24
satisfied  33:5
save  67:14
saving  119:22
savings  17:16
saw  70:18

saying  49:5 50:24
114:2 120:2
says  39:11 44:21
44:25 73:20
101:18,21 102:8,9
102:17 106:22,23
112:4,18
scandal  114:4
scandalous
115:13 116:9
scandals  114:8
scheduled  64:16
84:11
school  22:11
scope  19:7 91:15
92:8 97:13,17
109:25
scott  7:6
scrambled  50:7
scrutiny  61:5
se  12:22 65:9
seal  7:18 9:19
11:9 82:25 83:5
86:15 87:11 88:21
92:22 108:13
117:25 121:15
124:15
sealed  89:20
90:21 91:6 93:22
93:22 94:9 98:19
116:21 123:9,18
sealing  9:3 10:15
11:3,15 82:2 83:9
88:22,23 94:4
98:5 110:10 113:6
113:22 117:6
second  5:18 9:12
10:2 11:19 21:13
28:14,23 29:23
30:11 31:16 33:24
34:24 35:1,8,15
35:20 36:3,20,24
44:4 45:9 46:10

55:5,25 72:5
73:14,14 91:23
95:12 101:17
102:2 106:7
107:12 108:1
115:22 119:5
130:9
secret  98:9 103:9
110:19
secrets  115:11
section  36:23 42:6
44:11 57:7 72:16
73:4,8,11,19,25
75:11,11 78:1
79:7 81:2 88:21
91:16,17,22 92:8
94:15 95:17,21,22
96:1 97:21 98:8
98:12 107:12,15
107:16 108:4
109:8 110:6,24
114:16
sections  72:17
see  18:7 48:22
63:22 65:12 68:15
76:12 78:1,3 81:5
100:15 103:20
105:7 111:19
113:23 114:12
119:25 120:8
125:7 131:25
seeing  67:1
seek  27:12 28:15
28:18 31:3 52:3
54:9,11 71:17,18
81:2 95:2,4
112:12
seeking  88:8
101:3 102:17
131:11
seeks  34:6 70:17
seen  68:12

sees  109:22
self  38:3
send  77:25 99:12
124:7 131:2
sending  64:21
99:10
sense  42:24 120:3
sensitive  87:1
126:2
sent  112:23
124:12,25
sentences  26:16
111:24
separate  33:16
89:18 97:10
108:25 114:7
116:15 128:11
129:14
separately  124:14
september  17:11
20:18 22:23 82:18
series  100:20
serious  48:13,19
78:9,12
seriousness  64:6
78:13
serve  98:4
served  23:16
service  3:12
serving  38:3
set  73:19 76:9
89:15 104:9 105:4
107:15 116:23
124:8 128:25
129:4
sets  29:18 44:17
setting  31:18
93:23
settle  52:10 64:10
settlement  21:23
24:1 28:15,21
32:12,15,22,22
33:4 47:25 51:17

52:1,4,9 54:9,11
54:13,14 55:4,4
61:12,19,20,22,24
62:8,9,11,11,12
62:16 103:6
106:11 108:15
109:23
**seven** 19:15 81:23
**share** 27:4,6,21
32:1
**shared** 35:13
**shareholder**
21:18 22:3
**shareholders**
21:23
**shares** 43:3
**sharing** 31:6
35:12
**shaw** 12:12
**sheet** 50:16
**sherri** 11:25 134:3
134:16
**shipment** 20:7
**shoes** 35:5 46:1
74:5
**shore** 12:25 40:19
40:19 51:14,14
**short** 15:17 37:25
50:8 62:10 85:15
**shorten** 88:24
**shortening** 9:2
10:14 11:2,14
**shortly** 82:1
**shoulder** 84:12
**showing** 118:12
123:10,19
**shown** 45:4
**sic** 118:19
**side** 42:24 43:4
79:12 88:4 129:14
129:14
**sides** 43:15 129:5

**sideshow** 80:24
**signed** 5:11,14,18
5:22 6:1 8:19
**significant** 17:12
33:1
**silence** 38:1 40:16
**similar** 20:14
36:15 63:5 70:18
71:6 74:3 78:2
**similarly** 71:2,16
**simple** 60:16
70:22 83:24
**simply** 24:3 31:19
33:17 34:23 36:1
44:7 69:4 109:17
110:5,23 120:2
130:19
**simultaneous**
120:6 123:15
**sincerely** 23:14
**single** 26:5 29:2
30:1 47:21
**sir** 131:1,3,7
**sit** 51:18,21
**situated** 71:2
**situation** 44:15
45:8 78:2
**six** 81:23
**size** 124:8
**skaw** 11:24 134:3
134:12
**skip** 80:8
**slated** 21:15
**sliced** 32:23
**slide** 92:13
**slightest** 85:23
**slightly** 34:11
**small** 83:12
**smith** 48:10
**smooth** 52:20
**social** 103:10
**soft** 18:12

**sold** 54:21
**solely** 107:14
**solution** 60:16
**solutions** 1:20
16:8 134:22
**somewhat** 35:7
**sonnax** 72:6
**soon** 21:25 37:18
48:13 74:10
109:10
**sooner** 52:12
**sorry** 58:4 68:25
76:24 82:10 93:13
94:20 99:25
112:17 119:16
120:12 127:22
128:13
**sort** 45:3,24 51:6
95:10 97:10,13,15
108:7,8,17,23
109:11 113:21
122:16 128:2
**sorts** 74:20 116:9
**sought** 58:14 81:7
88:24 100:24
101:15 120:13
**soul** 24:5
**sound** 16:18 32:18
**sounds** 67:5
**source** 31:24
**southern** 1:2
88:16
**speak** 15:12 16:1
38:3 86:11 127:3
129:19
**speaker** 15:19
**speaking** 15:8,10
15:14 16:5 103:20
120:7 129:15
**specially** 57:9
**specialty** 2:10
13:12 26:6 43:18
43:19 54:22,24

**specific** 41:10
45:23 69:2,11
70:12 82:1 85:5
96:7 98:10 126:19
131:18
**specifically** 26:14
45:21 84:3 101:18
126:22
**specified** 73:25
**speed** 64:6
**split** 44:6 45:8,10
**spoke** 63:3
**sporadic** 87:11
**spray** 20:11
**spring** 76:10,11
**stage** 23:21 89:9
97:25
**stages** 85:8
**staggering** 70:8
**stake** 56:21
**stakeholders**
17:19 19:9
**stand** 21:25 24:11
**standard** 97:18,19
103:17
**standing** 2:2,14
3:3 22:13 25:20
27:15,16,21 29:2
29:12 33:8,9,15
33:17,19,25 34:1
34:2,19 35:2,12
35:13,17,21 36:19
38:21,22 39:4,5
39:14 45:21,25
50:10 53:13,21
54:3,4,5 55:6,6,8
55:9,17,20,21
56:1,1,17,22,24
57:9,11,20,21,24
58:6,23 59:5,8,11
59:11,13,24,25
60:10 61:6,21
62:14,15 63:8

64:1
**standpoint** 50:13
**stands** 30:21
**start** 52:10 62:2
  69:23 70:14 91:10
**started** 66:24 67:1
**starting** 55:12
  88:2
**starts** 38:25
**state** 15:11 33:8
  33:11,16,24 34:1
  34:10,14,21 44:21
  44:24,25 46:4
  50:9,14 57:2,15
  66:25 74:3 90:1
**state's** 33:21
**stated** 17:11 28:2
  72:8 95:12
**statement** 2:13
  6:10,11,17 7:3,9
  10:1 26:3 42:17
  122:9,17
**states** 1:1,13 2:12
  2:19 6:11,15 7:2
  12:13 26:3 28:14
  38:12 41:4,17
  42:1 53:2 70:4,4
  70:11 75:13 76:1
  88:3 89:22
**status** 21:3 58:9
**statute** 45:20 46:2
  46:4,5 55:7,18
  57:7 58:22 59:3
  74:3,4,6 101:21
  113:25 114:25
  115:6
**statutes** 60:8
  101:23
**statutory** 113:9
**stay** 3:16,20 4:3,8
  4:12 37:5,13,15
  47:6,13,18 49:17
  64:17 65:11,23

66:8,10,13,13
67:9 69:5 71:17
71:23 72:10,15,17
72:25 133:7
**step** 25:9 26:13
  46:1 48:25 74:5
  119:4
**stepping** 35:4
**stewardship**
  18:10
**stewart** 108:22
**sticks** 118:19
**stipulation** 2:2,14
  3:2 8:12,12,19
  25:10,20,24 26:11
  27:2,13 28:2,3,6
  28:14,22 29:8,13
  29:18,23 30:23
  32:5,10,13 33:1
  35:25 36:4 37:17
  37:25 38:8,17,24
  39:12,22 40:13
  42:21 43:6 48:18
  52:6,17,18,24
  53:11,12,19,21
  54:2,5,8 56:8
  57:25 60:20,23
  61:23 62:18 63:14
  64:12 106:2 133:5
**stn** 27:22 34:6,24
  45:5
**stop** 33:6
**stories** 84:2,8
**story** 120:9
**straight** 94:22
**straightforward**
  28:23 33:7
**strategic** 18:9
  67:12 84:7
**strauss** 13:2
**streamlined** 101:2
**street** 12:14 14:18

**strictly** 44:3
**strike** 115:16
**strikes** 43:6
**strongly** 46:20
**structure** 74:15
  75:16
**stumbled** 67:4
**styled** 119:20
**subchapter** 74:2
**subject** 37:20
  39:11 41:13 54:19
  73:3 83:2,16 87:2
  88:17 89:2 90:22
  97:24 98:2,16
  125:21
**submission** 19:25
  20:20 107:8
**submit** 29:16
  76:14,19 123:15
  126:16
**submitted** 104:6
  106:19 123:24
  125:13
**suboxone** 20:4,6
**subparts** 131:8
**subsections**
  112:19
**subsequent** 80:12
  113:10
**subsidiaries** 25:14
**substance** 101:25
**substantial** 26:25
**substantially**
  17:18 87:17
**substantive** 58:18
  94:1 102:21 106:4
**substantively**
  37:14
**succeed** 104:1
**successor** 58:9
  60:17
**successors** 60:6

**sue** 34:19
**sues** 34:19
**suffers** 36:17
**suggest** 30:20
  101:16 103:25
**suggested** 117:22
  128:18
**suggestion** 38:4
  118:18
**suggests** 29:7
  130:20
**suing** 35:3,4 60:6
**suite** 12:23 13:14
  14:19 134:24
**suits** 34:20
**sum** 37:24
**summary** 37:6
  102:9,20 106:20
  108:12,16 109:13
  109:21,22
**summer** 33:25
**supervision** 46:7
**supplemental**
  126:15
**support** 2:13 3:1
  4:7 5:1 6:17 9:7
  10:19 22:20 26:3
  36:16 41:6,9 56:7
  56:11,23 62:19
  66:5
**supported** 26:1
  112:2
**supportive** 42:15
  84:16
**suppose** 103:16
**supreme** 101:21
  108:21 114:24
**sure** 15:9 19:23
  46:3 47:12 49:12
  51:18 64:11 66:8
  66:10 76:4 87:24
  93:14 94:20,21
  95:8 107:5 121:11

125:20 126:4
127:9,23
**surprise** 33:23
**swaths** 83:17
**swats** 92:20
**syringe** 20:1

**t**

**t** 38:19 54:24
65:19 134:1,1
**tablets** 20:4,6
**tactics** 68:3
**take** 20:11 23:2
46:1 51:17,18,20
76:19 99:10 100:8
107:8 108:6 120:2
125:20 126:12
131:4
**taken** 16:8 68:14
75:5,5 108:10,10
**takes** 76:5 127:11
**tales** 22:11
**talk** 46:23 123:20
131:15
**talking** 68:4 79:8
100:20 110:9,9,11
113:24 116:8
117:15 124:21
127:15
**talks** 115:2
**target** 19:25 20:1
20:20 30:14 38:4
46:14 61:2
**targeted** 85:24
106:4,5
**targets** 56:14 88:7
**tea** 75:24
**telephonic** 15:5
15:24 16:4 49:25
**telephonically**
1:19
**tell** 23:11 75:23
84:2 105:3

**telling** 22:11
**tells** 114:24
**temporal** 108:7
109:11
**ten** 102:19
**tens** 46:17 70:1
78:13
**tentative** 20:18
**term** 38:25 39:2,7
50:16 66:12,14
73:14
**terminate** 110:16
**terms** 28:3 29:12
39:1,11 47:19
53:12 58:21 62:12
72:24 73:11
120:15
**terrific** 16:22 25:6
**test** 61:4
**th** 13:21 14:17
22:14
**thank** 15:15 16:17
41:15,20 43:8,10
43:23 52:22 64:14
68:19,20 69:1,13
76:21,23,23 78:7
78:21 79:3,4,22
81:15 90:11 93:17
95:9 99:20 100:11
104:14 106:25
107:6 122:25
127:20 129:12,20
132:4,5,6
**thanks** 16:21
24:21 25:17 41:19
**theoretically** 87:2
**theory** 117:13
**thin** 108:17
**thing** 20:9 51:11
68:4 85:1 93:11
128:2
**things** 23:20
26:20 46:23 77:12

77:20 81:25 86:17
111:10 116:10
120:1 130:8
131:18
**think** 17:16 20:24
21:4,21 22:10
32:24 40:10 41:3
41:22 42:15,19
45:6 46:13 49:24
50:8 52:6,12
63:12 64:23 68:24
69:2 77:21 79:6
79:11 82:8,8,12
85:22 87:19 95:10
95:14 96:10,13,20
97:1,15 98:20
100:8 103:15
107:17,25 108:3,7
108:11,18 109:8
109:17 110:3
111:1,2,4 112:22
113:24 114:22
115:6,15 116:23
118:14 121:18,25
123:6,12 124:17
124:20 125:9,12
125:25,25 126:15
128:23 129:16,17
131:24
**thinks** 123:21
**third** 5:22 14:11
20:21 24:2 32:2
35:7 44:6,22 45:9
45:10,16 50:11
55:6,9,20 56:2
57:11,14 75:18
88:18 128:1
**thought** 50:3 67:2
67:5,16 82:4
130:4
**thousands** 31:9
46:17 70:2,4
78:14 84:13,13

103:11 104:21
**threat** 116:22
**threatened**
103:10,13
**threats** 118:20,21
118:22 120:19
**three** 19:1 23:5
26:16 32:9 36:18
47:22 48:4,11
51:11 54:14 56:5
57:17 61:9 62:18
63:4,8,14 65:3,8
86:6 126:24
**tick** 19:16
**tig** 26:7,8 29:7
30:13,19,20 31:1
31:3,16 32:2,11
32:25 33:6,23
34:17 35:20 36:9
36:16 37:10,19,24
38:18 43:14,18
54:24 56:14 60:15
61:9 64:17
**tig's** 30:16,22
31:20 36:1,10
37:4,15,17 38:6
**tii** 98:17
**time** 4:15,22 5:2,8
5:11,14,19,23 6:2
15:12 16:1 29:22
31:22 37:7 41:23
43:7 50:19 54:2
56:2 57:4 58:22
58:25 79:9,25
80:12,24 81:16
83:9 86:25 108:8
111:9 129:21
131:3 133:8
**timely** 91:1 93:24
**times** 15:14 18:15
19:6,10 23:16
32:9 40:11 124:7

**timetable** 84:23
**title** 74:3 112:20
**today** 21:25 22:6
  22:11,13 24:11
  29:10 37:23 49:7
  53:20 83:13 84:12
  86:23 88:20
  124:12 130:19
  131:7,13
**today's** 15:4,9
  17:2 129:16
  130:15 131:25
**told** 22:22
**tool** 112:23
**tools** 100:21
  106:24
**topic** 19:15 21:1
  113:22
**tort** 36:22
**total** 86:5,7
**totaling** 82:24
**touch** 21:4
**town** 86:2
**townsend** 6:6 7:23
  8:2,8 9:13 10:9
  11:20 14:22 86:2
  86:9,12,22 87:14
  87:20 90:10,11,12
  93:14,17 94:18
  95:1,4,9 96:12,19
  107:2,2,6 112:15
  119:3 121:2,2,7,9
  121:25 122:2
  123:2,4,12 126:15
**townsend's** 82:15
  115:25 120:22
**track** 15:14 19:25
  20:25
**traction** 52:5
**trade** 20:19 98:9
  110:18 115:10
**tragically** 70:20

**transaction** 17:15
**transcribed** 11:24
**transcriber** 15:13
  134:9,13,17
**transcript** 16:10
  77:19 78:1 134:4
**transfer** 28:11
**transferred** 67:23
**transferring**
  67:22
**transfers** 75:19,19
**transition** 52:21
**transparency**
  85:2,11
**transparent** 125:1
**treating** 128:11
**treatment** 24:6
  71:6,7
**treatments** 20:5
**triad** 42:5
**trial** 20:16 63:12
**tribes** 70:5
**tried** 124:6
**tries** 74:18
**trigger** 106:14
**trillion** 30:8 31:14
**trilogy** 34:6 45:20
**troop** 2:18 6:14
  12:17 38:12 41:9
  41:15,16,20
**trouble** 118:15
**true** 31:19 113:8
  134:4
**truly** 18:19 75:8
**trust** 32:19
**trustee** 33:14
  35:14,18 44:12
  45:22 46:1 55:7
  55:17 57:9 58:8
  58:14,15 59:5,8
**trusts** 67:23
**try** 78:18

**trying** 47:3 64:20
  67:14
**turn** 19:2 23:6
  38:11 65:2 81:16
  81:25 87:20
**turning** 17:3
  79:23 86:9 129:24
**twice** 32:9
**two** 17:22 24:14
  33:5 39:23 42:6
  44:17 51:17 53:12
  54:10,13,15 55:3
  56:7 57:19 58:19
  59:14 60:11,16
  61:21,22 62:9,24
  64:7 65:3,8,10
  69:14 73:6 82:19
  84:3 86:5 87:7,10
  87:10,11,18 89:16
  91:7,10,10 92:12
  97:16 100:6
  107:10 111:24
  113:8 119:24
  120:4 125:15,22
  126:9 127:22,23
  128:11 129:5,13
  130:7
**type** 44:21 74:4
  75:14 110:6,23
**types** 70:12
  118:22

**u**

**u** 106:7
**u.s.** 1:25
**ucc** 8:14,21 25:21
  26:2 27:22 30:12
  31:1 38:9 66:24
  82:18,21 83:16,24
  84:7 85:20 100:15
  101:14
**ucc's** 82:23 84:17
  86:7 93:21

**uh** 65:24 66:3
  77:9,18 78:10
**ulterior** 116:2,6
**ultimate** 46:7
  75:16 89:5 105:9
**ultimately** 38:19
  69:20 71:11 90:5
  90:19 109:24
  120:9
**unabated** 85:9
**unclear** 40:4,10
  40:12
**unconditional**
  36:5 37:1
**undecided** 106:15
**underlying** 18:13
  76:17 84:1 106:10
  130:10
**understand** 19:5
  21:22 42:23 46:13
  46:18 48:2 74:9
  78:5 80:2 92:14
  93:5 94:4,5
  114:10,11 121:7
  122:22 123:5
  126:3 128:21
  129:24 131:1
**understandably**
  30:17 85:6
**understanding**
  51:2 87:17 92:17
  97:2
**understands**
  22:25 81:11
**understood** 67:10
  122:20 129:2
**undertake** 44:13
**undoubtedly** 36:5
**undue** 80:25
**unduly** 63:1 71:13
  121:21
**unexhausted**
  26:24

**unexpected** 17:20
**unfair** 85:22
   91:25 93:1 110:22
**unfiled** 95:4
**unfortunately**
   70:3
**unidentified**
   15:19
**unique** 71:25
**unit** 32:20 72:19
   72:22 74:1,5,7
**unit's** 72:19,23
**united** 1:1,13
   41:24 70:4
**units** 72:25 75:12
**unmute** 15:10
   16:6
**unnecessarily**
   61:12
**unnecessary** 15:8
   33:22 61:11 62:24
**unprecedented**
   25:24
**unredacted** 68:13
   99:3,7 124:16
**unrelated** 37:11
**unsaid** 83:12
**unseal** 6:12 7:3,10
   7:17,22 8:7,14,16
   8:20,23 9:12,18
   10:2,8 11:8,19
   83:14 85:14,17
   87:8 88:17 90:23
   91:2,5 95:15 96:8
   97:11 105:15
   108:14 122:10
   125:22
**unsealed** 89:4
   90:20 93:3 96:9
   98:2 121:15
**unsealing** 85:18
   86:23 92:24 93:9
   93:24 103:1

127:12
**unsecured** 2:4,16
   3:5 13:3 52:25
   56:9 59:1,6 69:21
   70:9,10 71:2,18
**unusual** 70:25
**unusually** 17:2
**unwilling** 27:9
**upcoming** 21:3
**update** 17:3 19:2
   24:21 82:11 126:8
**updated** 80:17
**updates** 21:5
**updating** 80:15
**urge** 23:19,25
   43:8
**usa** 55:15 59:17
**use** 106:3 114:6
**uses** 17:20
**utmost** 76:2,4
**uzzi** 7:13 10:5

**v**

**v** 19:22 20:19,19
   55:12,14 95:13
   107:21 108:1
   116:17,17,17
**value** 17:12,19,20
   31:25 32:1 48:8
   70:16 75:20,20
   102:6
**various** 17:14
   18:16 78:18 84:3
   94:24
**vast** 83:15 85:18
   90:20 111:6
**vehicle** 112:7
   113:14 116:1
**veritext** 134:22
**version** 19:22
   20:3 99:2,11
**versions** 99:7
   122:8

**versus** 105:24
   106:7
**vest** 29:1
**vested** 34:19 35:1
**veto** 32:11
**vial** 19:22
**victims** 67:18
**view** 40:17 41:24
   42:10 52:16 60:19
   114:17 123:7
**views** 62:7 92:19
**vilified** 103:9
**virtual** 65:2
**vis** 89:25,25
**vociferous** 37:17
**voice** 16:3 30:1
   42:21 47:21 51:9
**voices** 47:22 51:11
**voluntarily** 85:17
   91:4
**vonnegut** 4:17

**w**

**wait** 64:2 130:3
**waiting** 47:16
   49:21 100:5
**waiver** 128:2
**want** 16:10 23:9
   23:10 39:24 41:6
   43:25 46:23 48:8
   50:24 65:25 66:4
   68:23 75:14 77:16
   87:24,24 94:20,20
   94:21 108:6
   118:20 119:4
   123:22 126:3,21
   127:4,14 129:14
   131:14,17
**wanted** 40:13
   47:5 66:25 93:14
   95:8 116:15
   118:10 122:5
   127:19

**wants** 24:24,25
   38:13 89:7 107:7
   124:11 130:7,21
**wardwell** 12:3
   79:18
**warrant** 119:9
**warranted** 92:6
**warrants** 75:7
**washington** 12:24
   13:15 14:20
**waterfront** 98:21
**watford** 58:2
   59:22
**way** 19:11 23:11
   32:21 42:21 49:19
   68:2 74:16 76:5
   84:25 109:18
   111:12 115:9
   122:23
**we've** 19:10 47:16
   87:16,18,21 90:24
   90:25 94:2,14,16
   101:12
**weaker** 94:12
   108:2
**week** 125:22
**weeks** 24:15 85:15
   87:7
**weigh** 48:1
**weight** 102:3
**went** 35:16 67:7
**west** 12:14
**westlaw** 105:24
   106:8
**whistleblower**
   74:6
**widespread** 22:20
**wiles** 33:25 34:5
   34:11
**william** 11:24
   134:3,8
**willing** 48:25

| | |
|---|---|
| **willingness**  51:21 | 14:12,12 33:21 |
| **winthrop**  12:12 | **à** |
| **wirtshafter**  43:19 | **à**  89:25 |
| **withdraw**  91:4 | |
| **withdraws**  109:24 | |
| **withdrew**  108:16 | |
| **withholding** | |
|   86:16 | |
| **witness**  63:10 | |
| **words**  28:6 34:11 | |
|   85:25 109:7 117:5 | |
| **work**  22:24 32:7,9 | |
|   47:12 48:6 52:19 | |
|   54:16,25 55:2 | |
|   77:11 89:8 119:23 | |
|   120:25 | |
| **worked**  19:9 | |
|   85:17 | |
| **working**  22:16 | |
|   66:24 78:14 87:21 | |
|   119:22 | |
| **world**  20:11 | |
| **worth**  120:10 | |
| **written**  94:6 | |
|   119:9 | |
| **wrong**  36:2,14 | |
| **x** | |
| **x**  1:4,11 133:1 | |
| **y** | |
| **yards**  14:4 | |
| **yeah**  50:6 66:15 | |
|   66:16 100:2 | |
|   122:11 125:3 | |
|   128:20,22 129:20 | |
| **year**  16:23 17:7 | |
|   18:2,7,8 19:2 | |
|   20:21,22 47:6 | |
|   76:11 103:12 | |
| **years**  85:16 93:1 | |
| **yesterday**  16:14 | |
| **york**  1:2,15,15 | |
|   12:6,15,15 13:6 | |
|   13:6,23,23 14:5,5 | |