**DUANE MORRIS LLP**
Wendy M. Simkulak
Lawrence J. Kotler
1540 Broadway
New York, NY 10036
Telephone: 212.692.1000
Facsimile: 212.692.1020

-and-

Drew S. McGehrin
30 S. 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020
*Counsel to Chubb Insurance USA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**CHUBB INSURANCE USA'S OBJECTION TO THE SIXTH AMENDED JOINT
CHAPTER 11 PLAN OF REORGANIZATION OF PURDUE PHARMA L.P. AND ITS
<u>AFFILIATED DEBTORS</u>**

ACE American Insurance Company, ACE Property and Casualty Insurance Company,

Westchester Surplus Lines Insurance Company, Federal Insurance Company, Executive Risk

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Indemnity Inc., and each of their U.S.-based affiliates and successors and each in their capacity as insurers (collectively "Chubb Insurance USA"), by and through their undersigned counsel, Duane Morris LLP, hereby objects (the "Objection") to the *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. And Its Affiliated Debtors* [Docket No. 3185] (the "Plan")[2] and, in support of the Objection, Chubb Insurance USA respectfully states as follows:

## BACKGROUND

**A.    The Bankruptcy Case.**

1.    On September 15, 2019 and September 16, 2019 (collectively, the "Petition Date"), Purdue Pharma L.P. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.    On July 8, 2021, the Debtors filed the *Notice of Filing Eighth Plan Supplement Pursuant To The Fifth Amended Joint Chapter 11 Plan Of Reorganization Of Purdue Pharma L.P. And Its Affiliated Debtors* [Docket No. 3246] (the "Eighth Plan Supplement").

3.    On July 14, 2021, the Debtors filed the Plan.

4.    On July 16, 2021, the Debtors filed the *Notice Of Filing Of Eleventh Plan Supplement Pursuant To The Sixth Amended Joint Chapter 11 Plan Of Reorganization Of Purdue Pharma L.P. And Its Affiliated Debtors* [Docket No. 3187] (the "Eleventh Plan Supplement," and together with the Eighth Plan Supplement, the "Plan Supplement").

**B.    The Insurance Programs.**

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

2

5. Prior to the Petition Date, Chubb Insurance USA issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors, as named insureds.

6. Pursuant to certain Policies (together with any agreements related thereto, the "ACE Insurance Program"), ACE American Insurance Company, ACE Property and Casualty Insurance Company and Westchester Surplus Lines Insurance Company provide, *inter alia*, casualty, umbrella, international umbrella excess and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to Chubb Insurance USA certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

7. Pursuant to other Policies (together with any agreements related thereto, the "Chubb Insurance Program", and collectively with the ACE Insurance Program, the "Insurance Programs"),[3] Federal Insurance Company and Executive Risk Indemnity Inc. provide, *inter alia*, property, excess, employed lawyers', professional liability, executive protection and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to Chubb Insurance USA certain amounts including, but

---

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

3

not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (the "Chubb Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

8. The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments

**C.    The Plan.**

9. With respect to insurance neutrality, the Plan provides:

> **Insurance Neutrality**. Nothing in the Plan, the Plan Documents or the Confirmation Order shall alter, supplement, change, decrease or modify the terms (including conditions, limitations and/or exclusions) of the Purdue Insurance Policies, including the MDT Insurance Policies; provided that, notwithstanding anything in the foregoing to the contrary, *the enforceability and applicability of the terms (including conditions, limitations and/or exclusions) of the Purdue Insurance Policies*, including the MDT Insurance Policies, *and thus the rights or obligations of any of the Insurance Companies*, the Debtors and the applicable post-Effective Date Entities, including the Master Disbursement Trust, arising out of or under any Purdue Insurance Policy, including any MDT Insurance Policy, whether before or after the Effective Date, *are subject to the Bankruptcy Code and applicable law (including any actions or obligations of the Debtors thereunder), the terms of the Plan and the Plan Documents, the Confirmation Order (including the findings contained therein or issued in conjunction therewith, including but not limited to any findings pursuant to Sections 5.2 and 5.6(i) of the Plan) and any other ruling made or order entered by the Bankruptcy Court*.

Plan § 5.10 (emphasis added).

10. Similarly, with respect to D&O Insurance Policies and other Purdue Insurance Policies generally, the Plan provides, in relevant part:

> **Insurance Policies**.
>
> (a)    Nothing in the Plan shall terminate or otherwise reduce the coverage under any D&O Insurance Policy with respect

4

> to conduct occurring on or prior to the Effective Date, and, ***after the Effective Date, all directors, officers, managers, authorized agents and employees of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any D&O Insurance Policy for the full term of such policy, including but not limited to any extension of coverage for a period of six (6) years after the end of such policy period***, in accordance with the terms thereof, subject to (i) any release or assignment of rights by certain Shareholder Released Parties pursuant to the Shareholder Settlement and (ii) with respect to D&O Insurance Policies that are MDT Insurance Policies, the provisions of paragraph (b) of this Section 8.8.
>
> . . .
>
> (c) On and after the Effective Date, all Purdue Insurance Policies (other than the MDT Insurance Policies) shall be deemed to be, and shall be treated as, executory contracts under the Plan, and ***shall be assumed by the applicable Debtor, and such Purdue Insurance Policies shall vest, and/or the Purdue Insurance Rights (other than the MDT Insurance Rights) associated therewith shall vest, as applicable, in NewCo, the applicable Transferred Debtor or the Plan Administration Trust***, as applicable, in accordance with the NewCo Transfer Agreement and the PAT Agreement and continue in full force and effect in accordance with their respective terms.

Plan § 8.8 (emphasis added).

11. Finally, with respect to the MDT Insurance Policies and related MDT Insurance rights, the Plan provides:

> **Transfer of the MDT Insurance Rights**. In furtherance of the transfer of the MDT Transferred Assets to the Master Disbursement Trust and in accordance with the MDT Agreement, on the Effective Date, the Debtors shall irrevocably transfer, grant and assign to the Master Disbursement Trust, and the Master Disbursement Trust shall receive and accept, any and all of the MDT Causes of Action and MDT Insurance Rights. To the extent any Insurance Company would be obligated in respect of any MDT Insurance Policy to pay any Channeled Claim on behalf of one or more of the Debtors, the Debtors shall transfer and assign to the Master Disbursement Trust the right to enforce such Insurance Company's obligation. ***The foregoing transfer shall be (i) free and clear of all Claims, Liens, encumbrances and Causes of Action of any nature whatsoever***, (ii) made to the maximum extent possible under applicable law, (iii)

5

absolute and without requirement of any further action by the Debtors, the Liquidating Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Bankruptcy Court or any other Person, and (iv) governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the applicable MDT Insurance Policies. Notwithstanding the foregoing, the Master Disbursement Trust shall become and remain liable in full for and shall satisfy, to the extent required under applicable law, any prospective premiums, deductibles, self-insured retentions and any other amounts or obligations arising in any way out of the receipt of payment from an Insurance Company in respect of the MDT Insurance Rights; provided that, for the avoidance of doubt, the Master Disbursement Trust will not be required to pay premiums or any other amounts for Purdue Insurance Policies that are not MDT Insurance Policies. The transfer of the MDT Insurance Rights contemplated in this Section 5.6(i) is not an assignment of any insurance policy itself. The Confirmation Order shall contain findings reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties related to or necessary to preserve all MDT Insurance Rights.

Plan § 5.6(i) (emphasis added).

**D.    The Plan Supplement.**

12.    The Plan Supplement contains, among other things, drafts of the MDT Agreement, the NewCo Transfer Agreement and the PAT Agreement.

13.    Included within the MDT Agreement is the Schedule of MDT Insurance Policies, which lists the following Policies issued by Chubb Insurance USA:

| Insurer | Policy Period Start | Policy Period End | Policy Number |
|---|---|---|---|
| Federal Insurance Company | 11/15/2003 | 12/5/2004 | 8160-3480 |
| ACE Property and Casualty Insurance Company | 10/1/2017 | 10/1/2019 | G46815634 001 |
| ACE Property and Casualty Insurance Company | 10/1/2018 | 10/1/2019 | G46815634 002 |
| ACE Property and Casualty Insurance Company | 10/1/2018 | 10/1/2019 | G71187263 001 |

MDT Agreement at Schedule 2.

14. Further, under the NewCo Transfer Agreement, NewCo is to receive all of PPLP's right, title and interest in, to and under certain assets, free and clear of all Claims, Interests, Liens other encumbrances and liabilities of any kind, including all Purdue Insurance Rights (other than the MDT Insurance Rights and the PAT Insurance Rights). *See* NewCo Transfer Agreement at § 1.

15. Finally, pursuant to the PAT Agreement, certain assets, defined in the Plan as the PAT Assets are to be transferred to the Plan Administration Trust. Included within the definition of the PAT Assets are the PAT Insurance Rights, which the PAT Agreement defines to include "all Purdue Insurance Rights in respect of any Purdue Insurance Policy (other than an MDT Insurance Policy) to the extent such Purdue Insurance Policy provides coverage for any Claim for which the holder thereof is entitled to payment from the Plan Administration Trust." *See* PAT Agreement at § 1.03(b)(v).

## SUMMARY OF OBJECTION

16. Chubb Insurance USA objects to the Plan on the basis that: (i) the Plan contemplates an improper assignment of the Insurance Programs; (ii) the Debtors seek to obtain the benefits of the Insurance Programs (*see* Plan §§ 5.6, 8.8; MDT Agreement at Schedule 2; NewCo Transfer Agreement at § 1; PAT Agreement at § 1.03(b)(v)) without having the Debtors' assignees remaining liable in full for the Obligations under the Insurance Programs; (iii) the Plan attempts to improperly alter or otherwise modify the terms of the Insurance Programs; and (iv) the Plan fails to provide that workers' compensation claims and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course of business, as required by applicable state law.

**OBJECTION**

**I.    The Insurance Programs Cannot Be Assigned Or Otherwise Transferred Without The Prior Written Consent Of Chubb Insurance USA, Which Consent Has Not Been Sought Or Given.**

17. Pursuant to the Plan and Plan Supplement, it appears as though the Debtors intend to transfer or assign certain portions of the Insurance Program to NewCo, the Master Disbursement Trust, and the Plan Administration Trust. *See, e.g.,* Plan § 5.6(i), 8.8; MDT Agreement at Schedule 2; NewCo Transfer Agreement at § 1; PAT Agreement at § 1.03(b)(v).

18. To the extent that the Plan seeks to transfer or assign any part of the Insurance Programs to NewCo, the Master Disbursement Trust and/or the Plan Administration Trust, such transfer or assignment cannot occur without the express written consent of Chubb Insurance USA.

19. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

20. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Allied Corp. v. Frola*, No. 87-462, 1992 U.S. Dist. LEXIS 15778 (D.N.J. Oct. 6, 1992) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property); *see also*, Chubb Products Liability Policies Insuring Agreement at § VI(M).

21. Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with.").

22. Therefore, as Chubb Insurance USA has not consented to any proposed transfer or assignment of the Insurance Programs, the Debtors cannot transfer or assign such Insurance Programs and Chubb Insurance USA objects to any and all such transfers or assignments at this time.

23. Some courts have found that insurance policies may be assigned to a trust created under 11 U.S.C. § 524(g) pursuant to a plan under 11 U.S.C. § 1123 without the consent of the insurer. *See, e.g., In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) of the Bankruptcy Code to the extent they prohibit transfer to a § 524(g) trust); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust).

9

24. In this case, however, the Debtors are not proposing an assignment to a trust created pursuant to 11 U.S.C. § 524(g) and, as such, the consent of the insurers is mandatory.

25. Accordingly, the Plan's proposed assumption and assignment of the Insurance Programs is improper and contrary to applicable law.

## II.     The Insurance Programs Must Continue In Their Entirety.

26. Through the Plan, it appears that the Debtors seek to continue to receive the benefits of the Insurance Programs post confirmation (*see, e.g.*, Plan §§ 5.6(i), 5.10, 8.8; MDT Agreement at Schedule 2; NewCo Transfer Agreement at § 1; PAT Agreement at § 1.03(b)(v)). Indeed, the continuing availability of insurance proceeds and the assignment or other transfer of certain insurance rights and benefits to the Master Disbursement Trust and Plan Administration Trust are vital components of the Plan.[4]

27. However, the Plan does not adequately address the continuing obligations of the Debtors or their assignees under each of the Insurance Programs, or the fact that the Insurance Programs must each be treated as a single program and that the rights and benefits under each of the Insurance Programs are part of, and inseparable from, the balance of the respective Insurance Program.

28. Each of the Insurance Programs must each be read, interpreted and enforced in its entirety.[5] *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy*

---

[4]   The Plan is premised, in part, upon the establishment of the Master Disbursement Trust and its receipt of the MDT Insurance Rights, including the MDT Insurance Proceeds, with the same to be payable to the beneficiaries thereof. *See, e.g.*, Plan § 5.6(c) ("The Master Disbursement Trust shall be funded with the proceeds of the MDT Transferred Assets"); 5.6(i) ("To the extent any Insurance Company would be obligated in respect of any MDT Insurance Policy to pay any Channeled Claim on behalf of one or more of the Debtors, the Debtors shall transfer and assign to the Master Disbursement Trust the right to enforce such Insurance Company's obligation.").

[5]   Chubb Insurance USA reserves the right to object to the treatment of the Policies and any related insurance agreements as executory if the Debtors seek to reject any such contracts.

*Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

29.    It is also well-established that debtors cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that

a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect.") (internal citations omitted); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

30. Therefore, to the extent that the Debtors or their assignees seek to retain the benefits of any portion of the Insurance Programs, each of the Insurance Programs must continue in its entirety, and the rights and benefits under each of the Insurance Programs cannot be split from the respective obligations thereunder. The Debtors or any of their assignees must also remain liable in full for all of the Obligations arising under the Insurance Programs, regardless of when they arise.

31. However, the Plan purports to transfer certain insurance rights and proceeds under certain Policies to the Master Disbursement Trust and Plan Administration Trust, as opposed to any of the Policies themselves, while the balance of the Insurance Programs are purportedly being assumed and assigned to NewCo and/or the applicable Transferred Debtors.

32. Such a bifurcation creates an improper split between certain Policies and the rights and benefits thereunder, without ever clearly providing for the retention (and concomitant assumption) of the Obligations under the Policies.

33. Chubb Insurance USA objects to the Plan on the basis of this purported treatment.

### III. The Plan Improperly Alters The Terms Of The Insurance Programs.

34. Neither the Debtors nor this Court can rewrite the Insurance Programs but, rather, the Insurance Programs must be enforced as written. *See, e.g., In re WorldCorp, Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement."); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written.").

35. However, the Plan contains provisions which provide for: (i) the release of claims and other causes of action; (ii) the vesting and transfer of assets in the Master Disbursement Trust, the Plan Administration Trust and NewCo free and clear of liens; (iii) releases of certain third-parties; and (iv) exculpatory and injunctive relief against certain actions, including the MDT Injunction and the Settling Insurer Injunction. *See, e.g.*, Plan §§ 10.5-10.13.

36. While the Plan purports to provide that nothing in the Plan, the Plan Documents, or the Confirmation Order, shall operate or have the effect of modifying insurance policies (Plan § 5.10), various provisions of the Plan, including, but not limited to those provisions cited above, do in fact modify the Policies. Indeed, in the very section where the Plan purports to preserve all terms and conditions of the Purdue Insurance Policies, it thereafter expressly subjects all rights and obligations of any Insurance Companies, the Debtors and the applicable post-Effective Date

Entities to the Bankruptcy Code, applicable law, and the terms of the Plan, Plan Documents and Confirmation Order.

37. This provision, consequently, is not only internally inconsistent but an impermissible attempt to materially modify the Purdue Insurance Policies and parties' rights and obligations thereunder, and accordingly must be clarified.

38. Further, the Plan contemplates an improper transfer of proceeds under the Insurance Programs between the Master Disbursement Trust and the Plan Administration Trust resulting in a further impermissible modification of the terms and conditions of the Insurance Programs.

39. Indeed, the Plan purports to (i) transfer rights and proceeds between the Master Disbursement Trust and the Plan Administration Trust, as opposed to the Policies themselves, and (ii) potentially split the proceeds of certain Policies between the Master Disbursement Trust and the Plan Administration Trust (and possibly NewCo), without adequately providing for the retention of the Obligations thereunder.

40. The Policies and Obligations are each part of the Insurance Programs and inseparable from the balance of the respective Insurance Programs. *See supra.*

41. Any such attempt to transfer rights under the Insurance Programs between the two separate trusts and potentially NewCo (which the Plan currently provides) would result in Chubb Insurance USA being forced to insure potentially three separate and unrelated entities under the same Policies.

42. This improperly modifies and contradicts the terms of the Insurance Programs, and should not be permitted.

43. Further, the Plan also purports to improperly expand the scope of coverage of the D&O Insurance Policies by providing that "all directors, officers, managers, authorized agents

employees of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any D&O Insurance Policy for the full term of such policy, including but not limited to the extension of coverage for a period of six (6) years after the end of such policy period," without regard or mention of the terms, conditions, limitations or defenses that may exist under such D&O Insurance Policies. *See* Plan § 8.8(a).

44. Finally, the Plan cannot modify, limit, amend, or otherwise affect any of the defenses, rights, and obligations of the Debtors and Chubb Insurance USA with respect to coverage, denial of coverage, or the proper court, forum or jurisdiction for any disputes regarding coverage or regarding Chubb Insurance USA's rights and obligations under the Insurance Programs. Accordingly, the Plan must be clarified to provide that the foregoing shall be preserved and determined under the terms of the Insurance Programs and/or applicable non-bankruptcy law, and that nothing in the Plan, Plan Supplement, or the Confirmation Order shall constitute a determination, consent to, or waiver of jurisdiction as to any of the foregoing.

45. Accordingly, Chubb Insurance USA further objects on the basis that the Plan fails to contain such statements.

## IV. The Plan Must Provide That Workers' Compensation Claims And Direct Action Claims Must Continue In The Ordinary Course.

46. The Plan does not provide for the handling of workers' compensation claims and direct action claims.

47. Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g., Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic

15

stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

48.    Accordingly, the Plan must clarify that workers' compensation and direct action claims may continue to be administered, handled, defended, settled, and/or paid in the ordinary course.

49.    Relatedly, the Plan must also provide that Chubb Insurance USA may continue to so administer, handle, defend, settle, and/or pay covered claims in the ordinary course, and pursuant to the terms of the Insurance Programs.

V.    **Reservation Of Rights.**

50.    Chubb Insurance USA specifically reserves all of its rights with respect to the Insurance Programs and its right to assert additional objections to the Plan.

WHEREFORE, Chubb Insurance USA respectfully requests that this Court (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the modifications requested herein; and (b) grant such other relief as the Court deems appropriate.

Dated: July 22, 2021

**DUANE MORRIS LLP**

By: */s/ Lawrence J. Kotler*
Lawrence J. Kotler
Wendy M. Simkulak
1540 Broadway
New York, NY 10036
Telephone: 212.692.1000
Facsimile: 212.692.1020

-and-

Drew S. McGehrin
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: 215.979.1000
Facsimile: 215.979.1020

*Counsel for Chubb Insurance USA*