Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                     United States Bankruptcy Court

13                     300 Quarropas Street, Room 248

14                     White Plains, NY 10601

15

16                     June 3, 2020

17                     10:03 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: UNKNOWN

Page 2

1    HEARING re Amended Agenda (ECF #1219)

2

3    Motion Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R.

4    Bankr. P. 2002 and 3003(c)(3) for Entry of an Order (I)

5    Extending the General Bar Date for a Limited Period and (II)

6    Approving the Form and Manner of Notice Thereof filed by

7    James I. McClammy on behalf of Purdue Pharma L.P. (ECF#1178)

8

9    Objection Limited Objection of the Ad Hoc Committee on

10   Accountability to the Debtors Motion for an Order Extending

11   General Bar Date (related document(s)1178) (ECF #1187)

12

13   Limited Objection of the Non-Consenting States To Debtors'

14   Motion (related document(s)1178) filed by Andrew M. Troop on

15   behalf of Ad Hoc Group of Non- Consenting States. (Troop,

16   Andrew) (ECF #1197)

17

18   Ad Hoc Committee's Objection to Requests to Extend the Bar

19   Date (related document(s)1178, 1173) filed by Kenneth H.

20   Eckstein on behalf of Ad Hoc Committee of Governmental and

21   Other Contingent Litigation Claimants (ECF #1202)

22

23   Debtors' Omnibus Reply (ECF #1214)

24

25

Page 3

1    Supplemental Declaration of Jeanne C. Finegan (related

2    document(s)1178) filed by James I. McClammy on behalf of

3    Purdue Pharma L.P. (ECF #1179)

4

5    Memorandum of Law Limited Objection to Ad Hoc Committee's

6    Limited Objection to Debtors' Motion to Extend General Bar

7    Date (related document(s)1187) filed by Paul A. Rachmuth on

8    behalf of Ad Hoc Committee on Accountability (ECF #1788)

9

10   Declaration of Michael S. Quinn in Support of the Ad Hoc

11   Committee on Accountability's Limited Objection to Debtors'

12   Motion to Extend the General Bar Date (related

13   document(s)1187) filed by Paul A. Rachmuth on behalf of Ad

14   Hoc Committee on Accountability (ECF #1189)

15

16   Statement / Multi-State Governmental Entities Groups

17   Statement in Support of the Debtors' Motion for Entry of an

18   Order Extending the General Bar Date for a Limited Period

19   and Approving the Form of Notice Thereof (related

20   document(s)1178) (ECF #1196)

21

22

23

24

25

Page 4

1   Statement of the Ad Hoc Group of Individual Victims (I) in

2   Support of the Debtor's Motion for Entry of an Order

3   Extending the General Bar Date for a Limited Period and

4   (III) Objecting to Requests for Entry of Order Extending Bar

5   date by Ninety Days 1173 (related document(s)1178) filed by

6   J. Christopher Shore on behalf of Ad Hoc Group of Individual

7   Victims of Purdue Pharma L.P. (ECF #1198)

8

9   Statement of Unsecured Committee In Support of Debtors'

10  Motion (ECF #1213)

11

12  Notice For Listen-In Only Dial-in Information (ECF #1216)

13

14  Letter Re: Request for Extension of Bar Date Filed by

15  Harrison Cullen (ECF #1133)

16

17  Letter to Judge Drain re: Supporting Harrison Cullens

18  request filed on 5/6/20 to extend the deadline for

19  individual claims to September 30th. (related

20  document(s)1133) Filed by Joanne Peterson (ECF #1141)

21

22  Letter Letter to Judge Drain re: an addition to the letter I

23  wrote to you in October, 2019 against the proposed

24  settlement for Pursue Pharma (related document(s)280) Filed

25  by Stephen G. Gelfand (ECF #1142)

1   Letter to Judge Drain re: support to Harrison Cullens

2   request to extend the deadline by Ninety days for filing of

3   individual claims... (related document(s)1133) Filed by

4   Edward J. Bisch (ECF #1145)

5

6   Letter to Judge Drain re: support Harrison Cullens request

7   to extend the deadline to September 30, 2020 for filing of

8   individual claims (related document(s)1133) Filed by Barbara

9   Van Rooyan (ECF #1149)

10

11  Letter to Judge Drain re: support of the letter submitted by

12  Harrison Cullen, filed to the docket on May 6, 2020,

13  regarding movement of the bar date for individual victims to

14  September 30, 2020. (related document(s)1133) Filed by

15  Cynthia Munger (ECF #1153)

16

17  Motion to File Proof of Claim After Claims Bar Date /support

18  Harrison Cullens request to extend the deadline by Ninety

19  days for filing of individual claims filed by Dan Schneider

20  (ECF #1157)

21

22  Motion to File Proof of Claim After Claims Bar Date (request

23  that you extend the filing of personal injury claims against

24  Purdue Pharma and the drug OxyContin) filed by Ed Vanicky.

25  (ECF #1158)

Page 6

1    Letter to Judge Drain re: Support Harrison Cullens request

2    filed on 5/6/20 to extend deadline for individual claims to

3    September 30th (related document(s)1133) Filed by Maryanne

4    Frangules MOAR Executive Director (ECF #1160)

5

6    Motion to File Proof of Claim After Claims Bar Date filed by

7    On behalf of the Farash Family Barbara Farash (ECF #1168)

8

9    Letter to Judge Drain re: support of Harrison Cullen's

10   request by ninety days. The deadline of individual claims

11   (related document(s)1133) Filed by Leona Nuss (ECF #1174)

12

13   Statement / Multi-State Governmental Entities Groups

14   Statement in Support of the Debtors' Motion for Entry of an

15   Order Extending the General Bar Date for a Limited Period

16   and Approving the Form of Notice Thereof (ECF #1196)

17

18   Statement of the Ad Hoc Group of Individual Victims (I) in

19   Support of the Debtor's Motion for Entry of an Order

20   Extending the General Bar Date for a Limited Period and

21   (III) Objecting to Requests for Entry of Order Extending Bar

22   date by Ninety Days 1173 (related document(s)1178) filed by

23   J. Christopher Shore (ECF #1198)

24

25

Page 7

1    Limited Objection of the Debtors to Pending Requests

2    Regarding Extension of the Bar Date (related documents 1185,

3    1157, 1158) (related document(s)1149, 1153, 1173,

4    1174, 1133, 1145, 1142, 1160, 1141) filed by James I.

5    McClammy on behalf of Purdue Pharma L.P. (ECF #1199)

6

7    Statement of the Official Committee of Unsecured Creditors

8    in Response to Letter Briefs Requesting Extension of Bar

9    Date (related document(s)1178) filed by Ira S. Dizengoff on

10   behalf of The Official Committee of Unsecured Creditors of

11   Purdue Pharma L.P., et al. (ECF #1200)

12

13   Statement / Memorandum in Support of the Entry of an Order

14   Extending the Bar Date filed by Andrew M. Troop on behalf of

15   Ad Hoc Group of Non-Consenting States (ECF #1173)

16

17   Objection / Ad Hoc Committee's Objection to Requests to

18   Extend the Bar Date (related document(s)1178, 1173) filed by

19   Kenneth H. Eckstein on behalf of Ad Hoc Committee of

20   Governmental and Other Contingent Litigation Claimants (ECF

21   #1202)

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 8

1   A P P E A R A N C E S :

2

3   DAVIS POLK & WARDWELL LLP

4        Attorneys for the Debtors

5        450 Lexington Avenue

6        New York, NY 10017

7

8   BY:  MARSHALL HUEBNER (TELEPHONICALLY)

9        BENJAMIN KAMINETZKY (TELEPHONICALLY)

10        JAMES MCCLAMMY (TELEPHONICALLY)

11

12   U.S. DEPARTMENT OF JUSTICE

13        Attorney for the U.S. Trustee

14        86 Chambers Street

15        New York, NY 10007

16

17   BY:  PAUL SCHWARTZBERG (TELEPHONICALLY)

18

19   WHITE & CASE

20        Attorney for Ad Hoc Group of Individual Victims

21        1221 Avenue of the Americas

22        New York, NY 10020

23

24   BY:  CHRISTOPHER SHORE  (TELEPHONICALLY)

25

**Page 9**

```
 1   PILLSBURY WINTHROP SHAW PITTMAN LLP

 2        Attorneys for Ad Hoc Group of Non-Consenting States

 3        31 West 52nd Street

 4        New York, NY 10019

 5

 6   BY:  ANDREW M. TROOP (TELEPHONICALLY)

 7

 8   EISENBERG & BAUM LAW

 9        Attorney for Ad Hoc Committee on Accountability

10        24 Union Square East

11        New York, NY 10003

12

13   BY:  MICHAEL QUINN (TELEPHONICALLY)

14

15   FINSON LAW FIRM

16        Attorney for Anne Alexander, et al.

17        126 Westwind Mall

18        Marina del Rey, CA 90292

19

20   BY:  LOWELL FINSON  (TELEPHONICALLY)

21

22

23

24

25
```

1    CAPLIN & DRYSDALE

2         Attorneys for Multi-State Governmental Entities Group

3         One Thomas Circle, NW, Suite 1100

4         Washington, DC 20005

5

6    BY:  GEORGE M. O'CONNOR (TELEPHONICALLY)

7

8    STEVENS & LEE

9         Attorney for Putative Class Claimants

10        485 Madison Avenue, 20th Floor

11        New York, NY 10022

12

13   BY:  CONSTANTINE DEAN POURAKIS (TELEPHONICALLY)

14

15   MCGRAIL & BENSINGER LLP

16        Attorney Ad Hoc Group of Hospitals

17        888-C 8th Avenue #107

18        New York, NY 10019

19

20   BY:  ILANA VOLKOV (TELEPHONICALLY)

21

22

23

24

25

Page 11

1   NEIGER LLP

2        Attorney for Ad Hoc Group of Individual Victims

3        151 West 46th Street

4        New York, NY 10036

5

6   BY:  EDWARD NEIGER (TELEPHONICALLY)

7

8   DEBEVOISE & PLIMPTON LLP

9        Attorneys for Beacon Company

10        919 Third Avenue

11        New York, NY 10022

12

13   BY:  JASMINE BALL (TELEPHONICALLY)

14        JEFFREY ROSEN (TELEPHONICALLY)

15        NATASHA LABOVITZ (TELEPHONICALLY)

16        MAURA MONAGHAN (TELEPHONICALLY)

17        DANIEL E. STROIK (TELEPHONICALLY)

18        HAROLD WILLIFORD (TELEPHONICALLY)

19

20   CAPLIN & DRYSDALE

21        Attorney for Multi-State Governmental Entities Group

22        1 Thomas Circle, NW

23        Washington, DC 20005

24

25   BY:  KEVIN MACLAY  (TELEPHONICALLY)

Page 12

1    ROYER COOPER COHEN BRAUNFELD

2         Attorney for Independent Associated Companies

3         1120 Avenue of the Americas, 4th Floor

4         New York, NY 10036

5

6    BY:  MARC SKAPOF (TELEPHONICALLY)

7         MARC HIRSCHFIELD (TELEPHONICALLY)

8

9    FIND JUSTICE

10        Attorney for Independent Public Schools

11        1250 Connecticut Avenue NW

12        Washington, DC 200363

13

14   BY:  CYRUS MEHRI (TELEPHONICALLY)

15        STEVEN SKALET  (TELEPHONICALLY)

16        AISHA RICH   (TELEPHONICALLY)

17        JOSHUA KARSH (TELEPHONICALLY)

18

19   HUGHES SOCOL PIERS RESNICK & DYM, LTD

20        Attorney for Board of Education of the City of Chicago,

21        School District No. 299

22        70 West Madison Street

23        Chicago, IL 60602

24

25   BY:  MATTHEW PIERS (TELEPHONICALLY)

Page 13

1   MILBANK TWEED

2        Attorney for Raymond Sackler Family

3        55 Hudson Yards

4        New York, NY 10001

5

6   BY:  ALEX LEES (TELEPHONICALLY)

7        GERARD UZZI (TELEPHONICALLY)

8

9   AKIN GUMP

10       Attorney for Official Committee of

11       Unsecured Creditors

12       One Bryant Park

13       New York, NY 10036

14

15  BY:  MITCHELL P. HURLEY (TELEPHONICALLY)

16       ARIK PREIS (TELEPHONICALLY)

17

18  LITT LAW GROUP

19       Attorney for Ad Hoc Committee on Accountability

20       66 North Village Avenue

21       Rockville Centre, NY 11570

22

23  BY:  PAUL RACHMUTH (TELEPHONICALLY)

24

25

Page 14

```
 1    JOSEPH HAGE AARONSON LLC

 2         Attorney for Raymond Sackler Family

 3         485 Lexington Avenue

 4         New York, NY 10017

 5

 6    BY:  GREGORY JOSEPH (TELEPHONICALLY)

 7         MARA LEVENTHAL (TELEPHONICALLY)

 8

 9    KRAMER LEVIN

10         Attorney for Ad Hoc Committee of

11         Governmental and Other Contingent

12         Litigation Claimants

13         1177 Avenue of the Americas

14         New York, NY 10036

15

16    BY:  KENNETH H. ECKSTEIN  (TELEPHONICALLY)

17

18    ALSO APPEARING TELEPHONICALLY:

19    DANIELLE GENTIN-STOCK

20    DONALD CREADORE

21    ANDREW ALFANO

22    THOMAS MAEGLIN

23    LAWRENCE FOGELMAN

24    MEGAN RUNDLET

25    GEORGE CALHOUN
```

Page 15

1    SHEILA BIRNBAUM

2    MEGAN RUNDLET

3    GEORGE CALHOUN

4    SHEILA BIRNBAUM

5    HAYDEN COLEMAN

6    THOMAS MAHLUM

7    HEATHER CROCKETT

8    DANIELLE LEVINE

9    MARK LIGHTNER

10   DAVID JONES

11   RICK ARCHER

12   ARTEM SKOROSTENSKY

13   NICHOLAS KAJON

14   HOWARD NATIONS

15   EMILY WALDEN

16   JENNIFER CHRISTIAN

17   GEOFF MULVIHILL

18   LAURIE MISKOWIEC

19   SYDENHAM ALEXANDER

20   ALIX BROZMAN

21   ERICA CLARK

22   HARRISON CULLEN

23   WHITNEY FOGELBERG

24   CAROLINE GANGE

25   SETH MEYER

Page 16

1   VIOLA M. SO

2   BARBARA VAN ROOYAN

3   SHIRA WEINER

4   EDWARD BISCH

5   CATRINA SHEA

6   JEREMY KLEINMAN

7   SHAYNA SACKS

8   AGOSTINO ZAMMIELLO

9   DENNIS CHU

10   ERIC HWANG

11   JEREMY PEARLMAN

12   BROOKS BARKER

13   NICHOLAS PREY

14   JEREMY RYAN

15   RYAN D. SLAUGH

16   MARK YORK

17   CLAUDIA SPRINGER

18   CYNTHIA MUNGER

19   ADAM HABERKOM

20   SCOTT BICKFORD

21   MEGAN KAPLER

22   NATHANIEL REGENOLD

23   HOLLY NIGHBERT

24   HAYLEY THEISEN

25   MARIA CHUTCHIAN

1    EMILY F. MACKAY

2    CHARLOTTE BISMUTH

1              P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge Drain and

3    we're here in In re Purdue Pharma, LP, et al.  This is a

4    completely telephonic hearing; therefore, I'm going to ask

5    you stating your name and client the first time you speak,

6    to do so again if you come in later in the hearing and one

7    would reasonably believe that the Court reporter might not

8    know who you are from your voice.  I may ask you to identify

9    yourself also for that same reason later in the hearing.

10             There is only one authorized recording of this

11   hearing.  It's being taken by Court Solutions.  Court

12   Solutions provides that recording to our clerk's office on a

13   daily basis.  If you want a transcript of the hearing, you

14   should contact the clerk's office to arrange for one.

15             So, with that introduction, I have the amended

16   agenda for today's hearing, which really covers only one

17   matter, which is the issue of the proposed extension of the

18   June 30 bar date in this case.  So, with that introduction,

19   I should hear from counsel for the Debtors on their motion.

20             MR. HUEBNER:  Sure.  Good morning, Your Honor.

21   It's Marshall Huebner of Davis, Polk, and Wardwell for the

22   Debtors.  Can I be heard clearly and well?

23             THE COURT:  Yes.  Yeah, fine, thank you.

24             MR. HUEBNER:  Sure.  Okay.  Let me begin on a more

25   personal note to the Court.  The U.S. Trustee's office,

1    really everybody on the line, obviously, these are very

2    difficult, painful, and trying times in many ways.  I hope

3    that people are all safe and healthy and well in their

4    various circumstances.  I also did want to thank the Court.

5    This is, obviously, and extra hearing on top of our normal

6    omnibus schedule.  We are all very well aware of how

7    burdened the Court is on multiple, very large matters, and

8    so thank you for accommodating us in something that,

9    obviously, we think is quite important.

10              I want to spend just about three minutes, Your

11   Honor.  We try to give very brief case updates since,

12   obviously, there are -- sort of 97 percent of the iceberg is

13   under the waterline and not visible and most of it, frankly,

14   should be that way until it's time to bring it to the Court

15   or other attention, but there are a couple of things, I

16   think, are worth just quickly noting, none of which may be

17   news, but still worth noting.

18              Last week, we filed what we call Report 1D, Your

19   Honor, which is a very detailed and voluminous, I think 401

20   pages, I think, probably even without exhibits, report that

21   is covering the period from January 1 of 2008 until, I

22   believe, the petition date.  It covers all intercompany and

23   other corporate transactions between the Debtors on the one

24   hand, and shareholder and other shareholder-owned entities

25   on the other hand, and all non-cash transfers.

Page 20

1           As the Court surely remembers, on December 16th,

2    only three months after the filing date, we filed an equally

3    extraordinarily detailed and thorough Report 1A.  Report 1A

4    covered all cash distributions and dividends and the like,

5    but obviously, there was more connectivity between Purdue on

6    the one hand and the shareholders and shareholder-owned

7    companies on the other hand.

8           Report 1B is the other half of the circle, so

9    whether it was a dividend or something that was not cash or

10   whether it was a contractual relationship or royalty

11   agreement, anything, this is designed to be another massive

12   plank in our early promise of, what I think, can probably

13   fairly be called radical transparency.  And this, I think,

14   now covers the waterfront for all transaction for a very

15   long period between the Debtors on the one hand and the

16   shareholders and shareholder-owned entities on the other

17   hand.

18          I should also note, because it hasn't come up, I

19   think, to anyone's attention recently, but we know that some

20   creditors hold it very sacred and we're still waiting for

21   proposals for -- from some of them for some more

22   granularity, but we have also not forgotten the promise that

23   we made several times on the record -- and as I think this

24   Court knows, we always keep our promises -- that when this

25   case is over, as soon as we can all get it over, for any

Page 21

1   number of reasons, responsibly and well, and the plan and

2   the releases contemplated go effective, with whatever final

3   form the plan takes, there will be a repository of documents

4   the way there has been other -- after other analogous

5   situations, like, I believe, tobacco, for example.

6           We know that that is important to people and I

7   don't want it to think -- I don't want anybody to think the

8   we have forgotten about that commitment.  The only other

9   thing that I will quickly mention before I turn to the,

10  essentially, single item on the agenda is mediation, and I

11  think brevity is probably appropriate here.  People are very

12  hard at work on the mediations.  The mediators, themselves,

13  are also very hard at work.

14          There were many mediations days in May.  There are

15  many mediation days in June, and I think that it's

16  proceeding.  More than that, I probably should not say, but

17  I didn't want the Court to think that despite the

18  complexities of everybody's current situation, that the

19  bottom 97 percent of the iceberg was not proceeding along

20  multiple fronts.  It most assuredly is.

21          With respect to today's hearing, Your Honor, let

22  me now turn to the agenda.  It will, on the main, be handled

23  by my partner, Jim McClammy who, for today's purposes, we

24  will actually just call Mr. McClammy as opposed to saying

25  Jim.  I would note that the agenda letter is slightly

Page 22

1   complicated because there were some letters from patient

2   advocate and similar groups that were put on the docket

3   early on.  We don't -- I don't know the origin of those or

4   whether it's a concerted effort.  Doesn't really matter.

5           People have a right to express views; although, we

6   do remain concerned that groups continue to use our docket

7   to express their views on topics, as opposed to seeking

8   relief from the Court.  Those were more in the nature of

9   hybrid letters, and then, although the core parties knew

10  that we were on the very brink of filing a motion, we did

11  get a kind of statement and memorandum of law from the non-

12  consenting states filed a few hours before our motion hit

13  the docket.

14          I think Your Honor already said, as we see it,

15  this is really a single-issue hearing.  I think probably the

16  right order of operations -- sorry, one last thing.

17          We did confirm with Mr. Troop that they do not

18  intend to cross examine Ms. Finegan, because that would have

19  made this hearing much more complicated, and I actually

20  don't think that any of the facts in the Prime Clerk

21  declaration are disputed by anybody, but I'll leave the

22  technicalities of moving that into evidence to Mr. McClammy,

23  but it was important to us because, obviously, if there was

24  going to be a cross examination, the Court might have wanted

25  video or some other mechanic to ensure that a witness could

Page 23

1    be sworn in, but we don't believe that is the case.

2              And so, what I think probably makes sense and

3    they're sort of two different movants at the end of the day.

4    I think there is our motion that seeks the 30-day extension

5    and then there's Mr. Troop's sort of motion, statement and

6    memorandum, that seeks a 90-day extension, and there are a

7    whole bunch of other people who just have views on those

8    two, I don't know, ideas, for lack of a better word.

9    Probably, it makes sense for the Debtors to go first, which

10   Your Honor has already said, so I think that's definitely

11   what's happening.

12             It probably makes sense for Mr. Troop to go second

13   because, I think, he's probably the chief spokesman of the

14   other point of view, and then I think -- and the Committee

15   actually put a very helpful chart in their pleading, showing

16   sort of the lay of the land.  Now I think at that point,

17   maybe we turn the podium over -- and I didn't write out an

18   order because I didn't want to be cheeky, but obviously,

19   there are a variety of other major stakeholders who have

20   views on zero, 30, 90, something else, and then we sort of

21   maybe bring it home after that.

22             So, if that sounds sensible, I will turn the

23   podium over to Mr. McClammy and then Mr. Troop can follow

24   and then we'll sort of figure out a good order of operations

25   for the people who have views on, essentially, the two

Page 24

```
 1   primary options before the Court.  Is that --

 2             THE COURT:  Okay.

 3             MR. HUEBNER:  -- sensible, Your Honor?

 4             THE COURT:  Well, I actually believe there's only

 5   one motion before me, which is the Debtors motion.  That

 6   isn't to say that -- I take seriously the other matters on

 7   the docket, including the Ad Hoc Committee of States

 8   filings, but there really only is one motion before me, and

 9   of course, this is motion for relief from an order, my prior

10   bar date order, from February.

11             So, I think it is appropriate to proceed with that

12   motion, but I also think, the order that you're suggesting,

13   which is that your presentation be followed by the Ad Hoc

14   Non-Consenting States Committee is fine.  So, why don't we

15   proceed on that basis?

16             MR. HUEBNER:  Okay, terrific.  So then, I will

17   turn my microphone onto mute and ask for Mr. McClammy to

18   take over, including whatever admission of the declaration

19   is necessary, and thank you.

20             THE COURT:  Okay.

21             MR. MCCLAMMY:  Good morning, Your Honor.  Jim

22   McClammy on behalf of -- Jim McClammy of David, Polk, and

23   Wardwell on behalf of the Debtors.

24             THE COURT:  Morning.

25             MR. MCCLAMMY:  Good morning.  With us on the phone
```

Page 25

1    today is Ms. Jeanne Finegan, our declarant from Prime Clerk.

2    Also, on the phone from Davis Polk, we have Ms. Jacquelyn

3    Knudson and Ester Townes, my David Polk colleagues who have

4    been, really, unflagging in their efforts in connection with

5    the bar date, and their efforts have been greatly

6    appreciated.

7            And as Mr. Huebner mentioned, all parties, I

8    believe, really greatly appreciate, especially in these

9    trying times, the Court's and the parties' efforts to

10   continue to move these cases forward.

11           So, with that, Your Honor, I'll turn to the fact

12   that we have on, before the Court today, the motion to

13   extend the bar date by 30 days.  I'll note that that has

14   been supported by the Unsecured Creditors Committee, the

15   Multistate Governmental Entities Ad Hoc Group, and the Ad

16   Hoc Group of Individual Victims.

17           I believe it was noted in the statement in support

18   by the Unsecured Creditors Committee that the Individual

19   Victims Ad Hoc Group may have taken the position that they

20   were supporting the motion only with respect to personal

21   injury victims.  Our read of their papers, and after further

22   communications with counsel for the Individual Victims

23   Group, it is our understanding that they support the

24   extension of extension of the bar date for all potential

25   claimants, and not just the individual victims.

Page 26

1              Your Honor, I'd like to make, I think, a brief

2      statement, just to give an overview of the Debtors'

3      positions with respect to the various statements that have

4      been filed in support and in opposition to our motion, then,

5      I would then propose to move into evidence the declaration

6      of Ms. Finegan before we move on to a brief legal argument

7      addressing each of the objections, if that's okay with Your

8      Honor.

9              THE COURT:  That's fine.

10             MR. MCCLAMMY:  Thank you, Your Honor.  You know,

11     as Your Honor knows, it's the Debtors' job, really, to be

12     good stewards of these cases, and often, as here, that means

13     managing the requests and views of all parties in interest,

14     in light of what is necessary to both move these cases

15     forward without undue delay and without increasing the

16     administrative burden on the bankruptcy, on these estates.

17     And it was really, with that in mind, that the Debtors

18     reviewed and really took into consideration the many

19     conflicting views that they've received in light of the

20     submissions that were made with respect to the ongoing

21     COVID-19 pandemic.

22             Some of the key constituencies, as mentioned,

23     including the Ad Hoc Committee of Governmental and Other

24     Contingent Litigation Claimants have made it clear that they

25     do not believe that any extension of the bar date is

1   necessary, whether it be 30 days or 90 days.  However, the

2   Ad Hoc Committee did agree that, should an extension be

3   granted, it should be for 30 days.  Others, particularly

4   those individual creditors and groups, including the Ad Hoc

5   Group of Non-Consenting States have filed requests for

6   extensions on the docket and believe that the bar date

7   should be extended for a prolonged period of at least 90

8   days.

9          And still others, like the Official Committee of

10  Unsecured Creditors, the Ad Hoc Group of Individual Victims,

11  and the Multi-State Governmental Entities Group, have

12  supported the Debtors' request for a limited 30-day, one-

13  time extension for all potential claimants, even though some

14  of them may have not preferred to have any extension of the

15  general bar date at all.

16         For their part, the Debtors believe supplemental

17  notice plan is running successfully and effectively, and

18  it's providing notice to the Debtors' potential claimants

19  and also provides a workable way for them to file their

20  proofs of claim.  In fact, with the increased time spent in

21  front of TVs and online as a result of COVID-19, some of the

22  elements of the plan, really, have already over delivered.

23         And I say that, all to make clear that the Debtors

24  did not determine that 30 days was the right amount of time

25  to extend the general bar date in light of COVID-19, in a

Page 28

1   vacuum.  The Debtors have spent considerable time

2   reconciling those varying views in light of the success of

3   the notice program and evaluating that and the needs of

4   these cases, before determining if 30 days was the right

5   number.

6          In landing on that 30-day timeframe, the Debtors

7   considered a number of key factors.  First, there is no

8   credible argument that the Debtors, with the noticing agent,

9   have not been providing adequate notice to potential

10  claimants through what this Court knows is an unprecedented,

11  robust, and multifaceted supplemental notice plan.

12         Second, the notice program and the claims filing

13  process was developed with mechanisms in place that, as it

14  turns out, are workable, even during the pandemic and the

15  shutdown.  There's a toll-free number and online information

16  available.  There's the fact that the claimants are allowed

17  to request and file proofs of claim forms by mail.

18         We required only a baseline of necessary

19  information, and we simplified the forms in a way that took

20  into account these considerations, after having discussed

21  them with all of the creditor constituencies that ended up

22  supporting the bar date when it was first presented to the

23  Court, including with respect to the ability to provide

24  information with the filing of your claims and

25  documentations with the filing of your claims, but not

Page 29

1      making that a necessary component of filing those claims.

2              Third, is generalized and potentially -- the

3      generalized and potentially speculative assertions of

4      difficulty in filing claims cannot, in and of themselves,

5      justify the substantial cost to these estates and the

6      resulting reduction and potential recovery to the Debtors'

7      claimants, that a delay due to a prolonged extension of the

8      bar date would cause.

9              In addition to the fact, that there will be the

10     direct cost of about $700,000 to conduct the notice program

11     for the extension, there will also be substantial secondary

12     costs, including from keeping the bankruptcy estate in place

13     longer than otherwise might be, the cost of which has been

14     in the millions, indeed perhaps tens of millions of dollars

15     per month in these cases in recent times.

16             Fourth, to the extent that potential claimants do

17     have legitimate individualized claims of difficulties

18     warranting a deviation from the bar date, the Bankruptcy

19     Code and the bankruptcy rules provide mechanisms for those

20     claimants to seek appropriate relief from the Court.

21             And fifth, with the proposed 30-day extension, the

22     bar date in this case will have run for 178 days, a time

23     period that is much longer than the bar date periods in

24     other mass tort bankruptcy cases.

25             With that general overview, Your Honor, I would

Page 30

1    like to move now for the submission into evidence of the

2    declaration of Ms. Jeanne C. Finegan.  As I mentioned, Ms.

3    Finegan is on the phone and she is a vice president of

4    notice and media solutions at Prime Clerk, LLC.  She

5    submitted a declaration in connection with the original bar

6    date motion and submitted a supplemental declaration in

7    support of the motion for an extension that was submitted on

8    Ma 20th of this year, and it's found at Docket No. 1179.

9            We have reached out to counsel for the objectors,

10   and my understanding is that counsel for the Non-Consenting

11   States and also counsel for the Ad Hoc Committee for

12   Accountability have no objection to the submission of her

13   declaration into evidence.  And with that, Your Honor, I

14   would move for the submission of that declaration into

15   evidence.

16           THE COURT:  Okay.  Does anyone want to question

17   Ms. Finegan on her supplemental declaration?

18           MR. TROOP:  Your Honor, Andrew Troop from

19   Pillsbury for the Non-Consenting States.  No, we don't plan

20   on questioning Ms. Finegan.

21           THE COURT:  Okay, thank you.  All right.  Ms.

22   Finegan is on the line, I see, in looking at the hearing

23   dashboard.  Let me ask you, ma'am, I have your supplemental

24   declaration here.  It's dated May 20th, which is fairly

25   recently, but knowing that this would be your direct

Page 31

1    testimony in this matter, is there anything in it that you

2    wish to change?  You may have -- you might be on mute.  I'm

3    not sure.  Your -- yeah, there you go.  Is there anything --

4             MS. FINEGAN:  Apology --

5             THE COURT:  -- you would wish to change, Ms.

6    Finegan?

7             MS. FINEGAN:  Apologies, Your Honor.  No, the

8    declaration stands.

9             THE COURT:  Okay.  Very well, thank you.  I may

10   have questions related to it, but I have a feeling that Mr.

11   McClammy will be able to answer them.  If not, I'll come

12   back to you for an answer, if I don't get one from him.  But

13   having said that and having reviewed the declaration, I will

14   admit it into evidence as Ms. Finegan's direct testimony.

15   And, of course, I also have her declaration from January

16   30th of this year, in support of the original bar date

17   motion, which was ultimately granted in somewhat modified

18   form in early February as well as her testimony at the

19   hearing on the bar date motion, which I've also re-reviewed.

20           So, that doesn't need to be admitted again.  it's

21   already part of the record, but the supplemental declaration

22   is now admitted.  So, you can go ahead, Mr. McClammy, with

23   the rest of your presentation.

24           MR. MCCLAMMY:  Thank you, Your Honor.  Turning

25   first, with respect to the Ad Hoc Group of Individual

Page 32

1   Victims, one of the things that we discussed with them in

2   connection with their submitting a statement in support of

3   the extension of the bar date, with making sure that's -- we

4   made clear for the record that, although we believe that

5   cause exists here to extend the bar date for a limited 30

6   days, these Debtors do agree with some of the points that

7   are made in the statement of support submitted by the Ad Hoc

8   Group of Individual Victims, in particular, that potential

9   claimants, including individuals, should not delay filing a

10  claim simply because there is an extension.

11          Extending the bar date here is not intended as an

12  open invitation from -- for potential claimants to delay

13  such a filing.  Rather, we see this extension, which is

14  being requested under unprecedented circumstances, as being

15  meant as an accommodation to those who may be having or

16  experiencing difficulties in light of COVID-19 in completing

17  the claims filing process.  Notice of the bar date extension

18  will be provided as set forth in the supplemental

19  declaration of Ms. Finegan so that the claimants are aware

20  of the extended bar date, and that a failure to submit a

21  claim by that extended date will mean that such a claim

22  could be subject to being barred or being disallowed.

23          However, as noted by the Ad Hoc Group of

24  Individual Victims, there is, in fact, a possibility that

25  even with all the notice that has been provided and with the

Page 33

1    extension of the bar date, that there may be claimants that

2    seek to file claims under Bankruptcy Rule 9006 on the basis

3    of excusable neglect.  If Debtors will endeavor to give

4    appropriate consideration to late filing claimants who

5    affirm that they did not receive actual notice and/or who

6    believe that their particular circumstances justify their

7    failure to comply with the bar date, including hardships

8    occasioned by COVID-19.

9           We believe that that provides some important

10   context to keep in mind when considering the objections that

11   seek 90 days or longer extensions to the bar date.  With

12   that, I will turn now to the --

13          THE COURT:  Well, can I -- let me jump in here,

14   and I think I should, just to make my view clear, and I

15   think it's consistent with the law.  A bar date is a very

16   important event in a Chapter 11 case, including these cases.

17   As the courts say, it's not just a mere procedural gauntlet.

18   It really is a key deadline for asserting one's claims in

19   the case.

20          The Second Circuit, in fact, in its own words, has

21   taken a hard line in applying a bar date deadline and said

22   that if compliance with the bar date is within the control

23   of the party who missed it, it's a very rare case where the

24   bar date deadline would be extended.  So, I think it is

25   important to note that it is an important deadline that

Page 34

1    needs to be complied with.  If someone is, heaven forbid, in

2    the hospital or for some other reason unable not because of

3    their neglect or a legitimate -- for a legitimate excuse,

4    not to file a claim by the bar date, then on motion by them,

5    Courts extend it.

6         But the Courts look at those requests carefully

7    and, as I said, generally unless there's a good reason why

8    the deadline could not be complied with, the request for an

9    extension is normally denied, and that might particularly be

10   the case when there has been a lengthy period, such as

11   provided for here.  So, while it is clear that there may be

12   exceptions, and the Supreme Court has recognized that in the

13   Pioneer case and Bankruptcy Rules recognize it in Rule 9006,

14   those exceptions are limited.

15        So, people should definitely not wait until the

16   last minute under the assumption that, well, if they miss it

17   by a day or two, it'll be okay.  They should file their

18   claim promptly, before the last minute, to assure themselves

19   that it can actually be recognized as a claim in the case.

20        MR. MCCLAMMY:  Thank you, Your Honor.  Very much

21   appreciated and completely agree with the Court's statement

22   on -- in that regard, and we think that that will be very

23   helpful to the process going forward, to have the claims in

24   as soon as they can be filed.

25        THE COURT:  Let me say one other thing.  There are

Page 35

1   a great deal of potential -- a great number of potential

2   claimants here who are not entitled to individual notice,

3   i.e., a letter to them that would say, you have until X date

4   to file your proof of claim.

5           That is because the Debtors' product here was in

6   very wide circulation and the parties, and ultimately, the

7   Court concluded that individualized notice to anyone who was

8   prescribed OxyContin or some other product by the Debtors

9   that would give rise, potentially, to a claim, would not be

10  required on an individual basis, but rather through the

11  extensive notice program that the Debtors proposed, that

12  with some changes, I approved.

13          So, you should not expect, as a claimant, to be

14  getting, necessarily, an individual notice or letter.  If

15  you see an advertisement on TV or online or a billboard,

16  that applies to you, and you need to, therefore, abide by

17  the deadline.  The deadline will be running regardless

18  whether you got individualized notice, i.e., a letter to you

19  specifically or not.

20          There may be exceptions for some people who, if

21  they can show that the Debtor actually knew you,

22  particularly, would have a claim or would be reasonably

23  knowable to the Debtor, but it's not a good idea to rely on

24  those exceptions, because, again, the Courts narrowly

25  construe bar date or requests for relief from the bar date.

Page 36

1   So, when you see an advertisement or a billboard or a notice

2   on YouTube or in a blog, follow up and file the claim by the

3   deadline.

4               MR. MCCLAMMY:   Thank you, Your Honor.  With that,

5   I'd like to move to the Non-Consenting States objection to a

6   30-day extension.  The Non-Consenting States, I see, it

7   really failed to demonstrate why anything more than a one-

8   time, 30-day extension of the general bar date would be

9   reasonable here, or satisfy the cause standard.  And

10  although the Non-Consenting States correctly note that the

11  Debtors' supplemental notice plan was developed prior to

12  COVID-19, it seems to me that they failed to appreciate the

13  that the supplemental notice plan is not static in nature

14  and, in fact, has been adjusted and optimized in response to

15  COVID-19.

16              For example, if you're looking at the supplemental

17  Finegan declaration, Paragraph 15, it notes that in response

18  to COVID-19, Prime Clerk adjusted TV commercials to air

19  during day parts and on networks where research has shown

20  that 35 increase -- a 35 percent increase in viewership, in

21  general, increased national TV spots, and streaming video

22  ads in response to movie theater closures, and the fact that

23  we mailed a two-page full color summary flier of the bar

24  date notice to 178 mobile health teams for distribution to

25  replace the planned boots-on-the-ground approach.

1           Moreover, as previously discussed, the Debtors'

2    claims filing process includes mechanisms that safeguard

3    against potential impacts of COVID-19 and impact it could

4    have had on the process.  As I mentioned, the proof of claim

5    forms can be received and filed by mail.  The filing of a

6    proof of claim form does not require access to medical

7    records.  Indeed, this was a specifically negotiated and

8    much discussed point, including with the Non-Consenting

9    States Group in advance of the filing of the original bar

10   date motion, that supporting documentation is not an

11   absolute requirement.

12           It may be needed at some time and even demanded at

13   some time later, but is not a requirement before claimants

14   file their proof of claim.  And, indeed, claimants do not

15   need specific personnel or even an attorney to file a claim.

16   We believe the claim forms are straightforward, and also, it

17   was noted in our claims form process, that the failure to

18   answer a question, in and of itself, will not necessarily

19   result in the denial of a claim.

20           It's also important to note that in arguing that

21   the Debtors can extend the general bar date by 90 days with,

22   in their view, "only" an additional $1.4 million above the

23   Debtors' estimate of $700,000 for the direct costs of the

24   extended notice program, that the Non-Consenting States

25   overlook the soft and the hard costs that would certain run

Page 38

1    into the tens of millions of dollars if these cases are

2    delayed, and for those reasons, Your Honor, we believe that

3    the Non-Consenting States Group's objections should be

4    overruled.

5           With respect to the Ad Hoc Committee of

6    Accountability --

7           THE COURT:  Could -- I'm sorry, can I interrupt

8    you on this?  And I know I'll be hearing from Mr. Troop in

9    due course, but I had some questions for you on the 90-day

10   alternative.

11          At least one of the pleadings in support of the

12   Debtors' motion, albeit in somewhat reluctant support,

13   states that the Debtors are seeking or planning on filing a

14   Chapter 11 plan this fall, which could be as early as the

15   end of September or later in the fall, but that's the

16   Debtors' goal and that it is argued -- argues for not having

17   a bar date extension to the end of September.

18          I didn't see anything to that effect, although,

19   maybe I just missed it, in the Debtors' own pleadings.  Do

20   the Debtors have -- and this is not something written in

21   stone, but did the Debtors have a goal as to when they would

22   be filing a plan in this case?

23          MR. MCCLAMMY:  Your Honor --

24          MR. HUEBNER:  Your Honor, with Mr. McClammy's

25   consent, I'll jump in.  We are reluctant, frankly, in an

1    open forum and in our pleadings to set forth exactly what

2    our multi-tracks or plans and thoughts and calendars are.

3    It is a complicated case.  The mediation is a complicated

4    thing that is proceeding alongside the bankruptcy process,

5    as are other major initiatives.  Our goal is to get this

6    company out of Chapter 11 as soon as humanly possible and to

7    turn off all the professionals and send everybody home and

8    give the money out to the stakeholders and to the people who

9    need it.

10         We want to file a plan at the earliest possible

11   opportunity.  Several things clearly have to happen before

12   that is possible.  If we filed a plan tomorrow with the

13   mediation midstream, other things unresolved, we think in

14   this case that would be very counterproductive.  There are

15   some cases in which Debtors file plans that have the support

16   of no one, just to get balls rolling.

17         From where we sit right now, on June 3rd, this is

18   not that case at this time.  Do we hope that a plan is

19   absolutely viable sometime in the next few months?

20   Absolutely.  Which month of fall, is there a dream of

21   something a little earlier, is there a fear of something a

22   little later?  Sure.  But as each thing gets pushed out,

23   take the probability that this entire case and the tens of

24   millions of dollars of risk and business evaporation loss

25   and known cost, it makes it much more of a certainty that

Page 40

1    those will be incurred and the money will not go where we

2    need it.

3            So, I apologize for not saying something as simple

4    as, oh, Your Honor, first time ever, you missed something.

5    Page 7, Footnote 6, we said we're to file a plan between

6    August 15th and September 30th.  There is no such footnote,

7    because we don't think it's appropriate to lay something

8    like that out just yet.  But, given that we're now in the

9    beginning of June and we have a bunch of rows left to hoe,

10   there is certainly a hope, and more than a hope, that we

11   could be doing something in that general landing zone.

12           I would prefer not to be more specific than that,

13   unless the Court requires it.

14           THE COURT:  Okay, that's fine.  And then I had one

15   other question.  I'm aware, although I don't think there's a

16   reported decision on this, of one other fairly recent case

17   where a bar date was extended, or at least there was an

18   additional major effort to get claims in, in a mass tort

19   context, and that was the PG&E case.  That was prompted by a

20   perception that simply no one or very few people were filing

21   claims and that there might be something wrong with the

22   notice program that was associated with the bar date for

23   those tort -- potential tort claimants.

24           I did not see in the pleadings, except in one

25   letter which was filed fairly early in May, any contention

Page 41

1    that the anticipated number of claims being filed is

2    actually much lower -- I'm sorry, the number of claims

3    actually filed by individuals is much lower than was

4    anticipated.

5         Now, I appreciate, we're only at June 3, and

6    probably the data on the claims dates back to last week,

7    which is still more than a month before the end of the

8    current bar date period, but is there a perception on the

9    Debtors' part, maybe either Mr. McClammy or Ms. Finegan can

10   answer this, that the claims that were anticipated actually

11   greatly exceed the numbers that are being filed to date?

12        MR. MCCLAMMY:  Your Honor, Jim McClammy.  In

13   response to that, there isn't anything that we've seen to

14   suggest that there is a -- that there was an issue with the

15   noticing, nothing that's bearing itself out in the number of

16   claims being filed, the number of hits to the website, and

17   the number of page views to the website as set forth in Ms.

18   Finegan's declaration.  So, there isn't anything along those

19   lines.

20        It's really occasioned by trying to find the right

21   balance in light of the perception of difficulties that

22   people may be having as a result of COVID-19 and how that

23   may be impacting the schedules and finding the right

24   balance, cost-wise, between saying no extension and,

25   perhaps, having to deal with a larger number of people

Page 42

1    filing motions, to file late claims, or extending the bar

2    date for a short period of time to further strengthen the,

3    what we think is a successful program.

4              THE COURT:  Okay.  All right.

5              MR. MCCLAMMY:  With that, Your Honor, perhaps

6    before ceding the podium, I'd like to just finish up by

7    addressing briefly the Ad Hoc Committee on Accountability

8    and their assertions.

9              THE COURT:  Sure.

10             MR. MCCLAMMY:  So, as the Court noted, letters are

11   not going out to individual claimants, everyone that has

12   been prescribed a Purdue opioid or Purdue product, and that

13   was made after considering the substantial cost, time, and

14   effort that would be involved in undertaking such an

15   endeavor.  And indeed, the claims discussed by the

16   accountability group are really no different than any of the

17   other opioid-based claims in these cases, all of which,

18   really, in one form or another, assert that some Purdue

19   marketing effort or other created an environment in which

20   more opioids were prescribed.

21             The argument that they're making, in many ways,

22   proves too much, and if you were to follow the logic of the

23   AHCA, the Ad Hoc Committee on Accountability, the Debtors

24   would need to seek out and obtain personal contact

25   information for all such potential claimants from third

Page 43

1    parties and provide direct notice to all members of the

2    public that had received a prescription for a Purdue opioid.

3          We believe that, based on the already substantial

4    cost of the noticing in these case, the alternative direct

5    noticing efforts would have undoubtedly depleted the

6    substantial portion of the value of the Debtors' estates and

7    that doing so would have also increased the amount of time

8    it would've taken to have the notice program run its course.

9          In developing the notice strategy, the Debtors

10   considered how best to reach this multitude of potential

11   claimants, which we do not believe all of them are, in fact,

12   known claimants, nor do we believe that all of them,

13   necessarily, have potential claims, and we quickly realized

14   that attempting such a scorched earth search to obtain the

15   name and address information, some of which may no longer be

16   accurate, of these individuals, was simply not feasible for

17   a number of reasons, including that some of this information

18   is protected by HIPAA and that the requests for records that

19   would need to be sought and negotiated through means such as

20   protective orders and subpoenas, and the potential

21   litigation over all of that, would've come at a great

22   expense and delay.

23         And such efforts to provide actual written notice

24   would have been impractical and costly and, as I mentioned,

25   cause undue delay to these Chapter 11 cases.  So, based on

1    the above, it became clear that such persons are, in fact,

2    the very definition of unknown claimants because their

3    identities were not known or reasonably ascertainable by the

4    Debtors, and that information with respect to such claimants

5    were not within the possession of the Debtors or in their

6    books and records.

7              Indeed, after acknowledging that the actual

8    written notice was only -- not only not legally required for

9    these unknown claimants, but also entirely impractical.  The

10   Debtors and Prime Clerk, after consulting with key

11   constituencies in these cases, including the Creditors

12   Committee and other ad hoc groups, developed a supplemental

13   noticing plan that, as the Court has noted, is really far

14   reaching and is designed to reach 95 percent of the U.S.

15   adult population within average times of -- fixed times and

16   frequency and over 80 percent of the Canadian adult

17   population on an average of three times and is, in fact, on

18   track to exceed those targets.

19             We also believe that the cases relied upon by the

20   Committee on Accountability actually support the Debtors'

21   decision to provide notice to potential claimant who are not

22   in the Debtors' books and records through that supplemental

23   notice plan.  Those case, particularly, In RE:  Motors

24   Liquidation case and the In RE:  TK Holdings case really

25   stand for the general proposition that fashioning adequate

Page 45

1    notice will depend on the circumstances of the particular

2    case and, in some cases, perhaps more than examination of a

3    Debtor's books and records may be required in order to

4    satisfy the reasonable ascertainable standard.

5            But in neither of those case is there any

6    suggestion that that was something that would need to be

7    undertaken here.  In fact, if you look at something like In

8    RE:  Motors Liquidation Corp. at 2015 Bankruptcy Lexus 44,

9    45, you see the Court there noted that efforts beyond just

10   looking at the books and records are generally not required.

11           And if you look at the TK Holdings case, the

12   Debtors there sought information from a third party and its

13   subsidiary, and eventually the California Department of

14   Motor Vehicles, but that was for contact information

15   contained in the registration records for certain potential

16   claimants in those cases, so it was very particularized and

17   not something that, I think, can be applied here where we

18   would be looking at the logic of what they're asking to be

19   simply to extend notice to really every single recipient of

20   a prescription of a Purdue opioid, which, as this Court has

21   determined, is unworkable under the circumstances.

22           So, for those reasons, Your Honor, the Debtors,

23   being aware of the impact of the ongoing COVID-19 pandemic,

24   and taking into consideration the various views of the

25   creditor constituencies, we would request that the Court

Page 46

1    enter an order extending the bar date for a limited, one-

2    time extension of 30 days.  Unless Your Honor has any

3    questions, I will cede the podium to Mr. Troop and reserve

4    the right to respond on rebuttal.

5              THE COURT:  Okay.

6              MR. TROOP:  Thank you, Your Honor.  It's Andrew

7    Troop from Pillsbury for the Non-Consenting States.  Can I

8    proceed?

9              THE COURT:  Yes, good morning.

10             MR. TROOP:  Good morning, Your Honor.  Hopefully,

11   everyone can hear me.  I join in Mr. Huebner's thoughts for

12   everyone in light of the disruption to our lives and

13   people's lives as a result of COVID-19.  The world is a very

14   different place than when you entered the bar date order on

15   February 3rd.

16             Your Honor, I want to be as focused as I can here,

17   so bear with me if I take long pauses as I'm reading over my

18   notes from what's been said so far today.  First, Your

19   Honor, I do want to note that I think that everyone,

20   reluctantly or not, who's spoken in connection with or filed

21   pleadings in connection with the extension of the bar date

22   has acknowledged the unprecedented circumstances in which we

23   find ourselves and that those unprecedented circumstances

24   have, notwithstanding the breadth and scope of the notice,

25   supplemental notice program enacted by the Debtors, guided

Page 47

1    everyone to acknowledge that accommodations need to be

2    reached.

3            And in that regard, Your Honor, let me say

4    clearly, that the Debtors decision to file the motion where

5    the standard before you in deciding whether to extend the

6    bar date is for cause and not for excusable neglect, was not

7    lost, at least, on me.  If the standard were excusable

8    neglect after the bar date, as you note, your ability to

9    react to provide relief is extremely circumscribed by Second

10   Circuit and, frankly, Supreme Court precedent, and the issue

11   that you would need to be, as I read the cases, focused on

12   is, really, the issue -- are many of the issues that have

13   been discussed, the scope and breadth of notice.

14           But we find ourselves in a situation where the

15   scope and breadth of notice is only part of the analysis

16   that I think the Court needs to undertake in determining

17   when and for how long to extend the bar date for cause,

18   because it's not the scope of notice here that's at issue.

19   It is how current circumstances have impacted or may impact

20   the ability, willingness, focus of parties to respond.

21           Your Honor, there's been some suggestion in some

22   of the pleadings as to why the Non-Consenting States have

23   taken up this torch, and while the pleadings acknowledge

24   that states have been impacted, as well, by COVID-19,

25   they've been impacted in terms of their budgets, their own

Page 48

1    internal restructuring, the fact that the health care

2    workers at the state who are significantly involved in this

3    case are also the ones with primary responsibility for

4    responding to COVID-19.

5            The impact of COVID-19 on Non-Consenting States

6    has been disproportionally high.  According to the

7    Washington Post yesterday, 104,755 people have died from

8    COVID-19.  Nearly 80,000 of those people, more than 75

9    percent, are in Non-Consenting States.  The impact, here, is

10   far and wide, and Your Honor, it's frankly farther and wider

11   because of events over the last week.

12           Who would've thought we would've woken up this

13   morning to New York Times headlines that combat troops are

14   stationed outside of Washington, D.C., that National

15   Guardsmen are in many major cities, that Secretaries of

16   State's Offices were closed yesterday across the country?

17           These facts require an additional yard, Your

18   Honor.  They require that no one -- no one.  I can't say no

19   one, Your Honor.  They require that the likelihood that

20   someone will have to come before you and ask for permission

21   to file a late filed claim, based on the excusable neglect

22   standard, is minimized to the greatest extent possible.

23   And, Your Honor, we've already taken this into account in

24   connection with other matters in this case.

25           Your Honor, you may recall at a hearing before you

Page 49

1    on May 1st, believe it was Mr. Hurley discussing certain

2    discovery disputes before you, and one of those involved an

3    individual named Mr. Ives who is a Sackler-related party

4    where Mr. Hurley reported that Mr. Ives was unable to

5    respond to discovery requests because of what's been

6    happening with COVID-19.

7           And in response to that, with respect to discovery

8    requests that have been outstanding since early March, the

9    Court gave parties until September 1st to respond to

10   discovery, a significant increase over the -- much more than

11   parties in interest wanted in terms of responding to

12   document requests that are critical to the ability to -- for

13   this case to proceed.  I'll come back to that in just a

14   second, Your Honor.

15          So in sum, Your Honor, we're here because the

16   circumstances are different.  The standard before you is not

17   excusable neglect and the world is a very different place

18   without -- and without making any overly political statement

19   with regard to it, it's in a worse place than it was on

20   February 3rd.  The major -- so it seems, Your Honor, that

21   we're not arguing about an extension amongst most of the

22   parties, the Ad Hoc Committee notwithstanding.

23          We're really talking about how long, and that the

24   arguments provided in response to -- I'm sorry, one other

25   issue, Your Honor.  You asked a question about whether --

Page 50

1    how proofs of claim were coming in against estimates.  We

2    don't know what the estimates were that the Debtors had or

3    that Prime Clerk worked for them, and admittedly, Your

4    Honor, this is anecdotal, but someone in this case said to

5    me, Troop, if we extend the bar date, that could be

6    thousands and thousands of more claims filed.

7              And I thought to myself at the time, doesn't that

8    just prove the point?  Doesn't that just prove the point?

9    And, Your Honor, even if you apply the --

10             THE COURT:  Well, except it's not proof.  It's not

11   proof.  It's --

12             MR. TROOP:  I --

13             THE COURT:  -- hearsay, so --

14             MR. TROOP:  Your Honor, and I didn't -- I was very

15   clear about that.

16             THE COURT:  Yeah, I know, but maybe people --

17             MR. TROOP:  I think --

18             THE COURT:  -- who are not lawyers are not, so I

19   want to make it clear that that's not in any way evidence of

20   anything.

21             MR. TROOP:  But, Your Honor, we live in a world

22   where you can't gather evidence about the impact.  You can't

23   go out and interview people.  You can't go door to door and

24   do a survey.

25             THE COURT:  Well, but you can --

Page 51

```
 1                  MR. TROOP:  You have --

 2                  THE COURT:  You can't -- but you can look, as Ms.

 3        Finegan did, at visits to the claims website and you can

 4        look at the claims that have been filed to date and see

 5        whether they are, as one would anticipate, or whether

 6        they're dramatically lower.  That's just --

 7                  MR. TROOP:  And --

 8                  THE COURT:  That is evidence.

 9                  MR. TROOP:  And, Your Honor, I don't think there's

10        evidence on that, either.

11                  THE COURT:  Well, I asked the question.  I was

12        told no, they're not dramatically lower, by the --

13                  MR. TROOP:  By the Debtors' lawyer.

14                  THE COURT:  Well, I --

15                  MR. TROOP:  Right?  He's not aware of it --

16                  THE COURT:  Ms. Finegan, you heard my question of

17        Mr. McClammy.  Do you disagree with his answer?  I think

18        you're going to have to unmute yourself again, Ms. Finegan.

19        So, Ms. Finegan, do you disagree with Mr. McClammy's answer,

20        which was, it does not appear to the Debtors that the claims

21        that have been filed to date are materially lower than would

22        be anticipated as of today's date or as of last week?

23                  MS. FINEGAN:  Your Honor, I agree with Mr.

24        McClammy.

25                  THE COURT:  Okay.  Now, I appreciate --
```

Page 52

1           MR. TROOP:  Then, Your Honor --

2           THE COURT:  -- let me --

3           MR. TROOP:  -- I --

4           THE COURT:  I don't want to leave it at that, Mr.

5    Troop, because I also appreciate, of course, that we're

6    talking about June 3 and probably looking at claims from

7    last Friday, the end of May, and the bar date, as currently

8    set, is June 30 and there's always a large number of claims

9    that are filed shortly before the bar date.  Not -- you

10   know, people, human nature being what it is, people wait

11   until the last minutes.

12          So, I'm not sure how conclusive that evidence is,

13   but at least it's evidence, and I would be approaching this

14   very differently if this were a PG&E situation where people

15   are scratching their heads why there aren't as many claims

16   being filed as one would think.

17          MR. TROOP:  And, Your Honor, I therefore, again,

18   commend everyone for bringing this to you sooner rather than

19   later, recognizing, as I do agree with you, that the numbers

20   here will be much clearer on June 28th than they are today.

21   By June 28th, I think, everyone would agree, it would be a

22   very different effort in time to extend the bar date.

23          Your Honor, I may have a question, now, for Ms.

24   Finegan in light of your question, but I want to think about

25   it just a minute, of I may, and come back to it.

Page 53

1              THE COURT:  Okay.

2              MR. TROOP:  Your Honor, the other, I would say,

3    the other most significant argument against a longer

4    extension, which is, I think, what you were getting at in

5    terms of asking when plan might be filed, is this fall --

6    whether it would be this fall, is whether extending the bar

7    date for 90 days would, in fact, delay the case.  And, Your

8    Honor, I think not.  I mean, Mr. Huebner accurately

9    described the efforts of the parties engaged in mediation to

10   address the primary issue that was set forth for mediation,

11   which is allocation and, like Mr. Huebner, I am hesitant to

12   share with you details by -- other than to confirm everyone

13   is working very hard.

14              The public side creditors are making substantial

15   progress.  There were 25-ish, I think, maybe 20-ish days of

16   mediation set out for people in June, and while, again, this

17   is a changed circumstance, when the mediation was authorized

18   by the Court -- and the point of that, Your Honor, is the

19   mediation is moving along but taking longer than people

20   anticipated.  Think everyone -- I think the Court had hoped

21   that mediation would be concluded now, on this primary

22   issue, and you've urged us all to move expeditiously, but I

23   note that had that schedule, which maybe I expressed some

24   skepticism about, but had that schedule held, the bar date

25   would've come in after the mediation concluded.

Page 54

1          So, the -- now tying, as some do, the need to get

2     proofs of claim in with the mediation, is a red herring,

3     Your Honor.  It's a red herring.  And in terms of moving the

4     case forward, Your Honor, it's similarly a red herring.

5     There are, as alluded to, many issues that need to be

6     resolved or people need to try to resolve before filing or

7     abandoning a consensual plan is decided.

8          It's -- I've alluded already, Your Honor, to the

9     Sackler discovery and its timing.  Your Honor, I understood

10    you to order that Sackler discovery be concluded by

11    September 1st.  That's much more than 30 days from now, and

12    it will take months, I think, at least, but months to

13    analyze all those documents, confirm the Sackler's roles and

14    finances, and be able to evaluate and make reasoned

15    decisions on the plan with releases that Mr. Huebner

16    confirmed the Debtors intend to pursue.

17         Similarly, Your Honor, one of the parties that is

18    not compulsory -- is not compelled to engage in the

19    mediation is the United States and the Department of

20    Justice.  And the claims that the United States will assert,

21    may assert, it's demanded treatment in this case, and, Your

22    Honor, there's no secret, I think, here.  I think last month

23    the Debtors' special counsel, Skadden, charged the estate $2

24    million or so in their last interim fee application.

25         And their job is exclusively to deal with DOJ and

1    DOJ issues.  Those are all issues that are going to need to

2    be hammered down, nailed down, and resolved before a plan

3    can get presented to you for confirmation.  And those are

4    things beyond my control, Your Honor, but they are things

5    that are going to have to be considered.  So, nothing in

6    this case, in light of these issues, will be adversely

7    affected by a 90-day extension as opposed to a 30-day

8    extension.

9         In contrast, aside from enhancing, if not, in

10   actuality, the perception of the fairness of the process, in

11   light of changed circumstances, is clear.  And the costs of

12   not doing so are less predictable than the costs of doing

13   so.  No one can predict, Your Honor, whether now, 30 days

14   from now, or 90 days from now.  Readily admit that, that

15   late claims will get filed in this case.

16        But I think as you noted, Your Honor, the longer

17   the time, the more effort that's made to permit claims to be

18   filed, probably -- and I admit I have no evidence on this,

19   Your Honor, but we've all done this for a long time,

20   minimizes the likelihood that more claim -- more late-filed

21   claims will be filed than with a sooner bar date.  And I

22   think, frankly, Your Honor, it will make it easier for

23   everyone to address it the issues by the third -- the Second

24   Circuit when it comes to dealing with late filed claims.

25        So in sum, Your Honor, I think that the issues

Page 56

1   here are simply not whether, but how long to extend the bar

2   date, whether the intended benefits of extending the bar

3   date would be better achieved with a longer extension than a

4   shorter extension, in light of the fact that it's not the

5   scope of notice that people are fighting about, but people's

6   ability to respond, and whether, in fact, there will be

7   demonstrable delay in this case as a result, which there

8   will not be, Your Honor.

9          In fact, I don't think anyone thinks that having

10  proofs of claims on file are necessary for the mediation

11  process to continue because, as I noted, it was never

12  contemplated they would be on file as a prerequisite to

13  that.

14          Your Honor, I'm going to skip my question to Ms.

15  Finegan.

16          THE COURT:  Okay.

17          MR. TROOP:  Okay?  Any questions for me, Your

18  Honor?

19          THE COURT:  No.  No, thanks.

20          MR. HUEBNER:  So, Your Honor, it's Marshall

21  Huebner.  In terms of the, sort of, continued order of

22  operations, I think it probably makes sense -- again,

23  there's no magic to this, but I think that while, sort of,

24  Mr. Troop's theory of the longer bar date is right before

25  us, I -- the one other party that I believe has counsel, I

1    believe it's called the Ad Hoc Committee of Accountability

2    which is a new group.  I think it's actually five

3    individuals who have retained counsel, and if counsel is on

4    the line, we certainly would cede the podium to them to make

5    whatever remarks they believe appropriate.

6              THE COURT:  Okay.

7              MR. RACHMUTH:  Thank you.  May I, Your Honor?

8              THE COURT:  Yes, go ahead.

9              MR. RACHMUTH:  -- Paul Rachmuth on -- this is Paul

10   Rachmuth on behalf of the Ad Hoc Committee on Accountability

11   from Eisenberg and Baum.  Our focus in this case is much

12   narrower than the other committees that have spoken before

13   you, and it is, as the title of our group suggests, it is to

14   increase the accountability of the Debtor in the process.

15             The objection that we filed is premised on earlier

16   this year, there was a company, Practice Fusion, which is an

17   electronic medical records company, entered into a deferred

18   prosecution agreement with Vermont Attorney General's

19   Office.

20             THE COURT:  January 27th, right?

21             MR. RACHMUTH:  Yes, Your Honor.  This company pled

22   guilty to receiving illegal kickback from a drug

23   manufacturer, which many have identified at Purdue Pharma,

24   and I don't believe there can be any doubt that the party

25   named is Purdue Pharma.  Several of the exhibits used even

1    have Purdue Pharma's name on them.  The illegality was the

2    creation of a scheme to target patients in -- by creating a

3    medical billing system that influenced doctors to prescribe

4    extended-release opioids.

5              Accordingly, the victims of this scheme that was

6    perpetrated by the Debtor here were those patients that were

7    targeted.  And they're the victims, whether or not they

8    received OxyContin or another Purdue Pharma drug or a third

9    party's drug.  So the issue we have is that unless they are

10   -- receive notice that they are a claimant in this case,

11   specifically informing them that they were injured by Purdue

12   Pharma because of this illegal scheme, even if they were to

13   receive a hand-delivered note -- notice of the bar date,

14   they would not know to file a claim.

15             So, there is a database with the names of these

16   parties in it that's at Practice Fusion's custody and

17   control which can be accessed, which has all the relevant

18   information.  It is a known set of names and the Debtor, if

19   it so chooses or, if necessary, by 2004 from a third party,

20   including us, could get those specific names of the parties

21   that were targeted by the Debtor and are victims of this

22   scheme.

23             We're asking for two things.  One, that the Debtor

24   provide these parties notice, and a simple notice that

25   Purdue Pharma has filed bankruptcy and if you've been

1    injured by Purdue Pharma you have a claim, that notice isn't

2    sufficient because unless someone is told that Purdue Pharma

3    was behind this scheme, that even if they received a third-

4    party's opioids, they're still a victim of this scheme and

5    therefore are a potential creditor, unless that information

6    if provided, then a notice is insufficient.

7             And because of the time that we're -- to get the

8    names from Practice Fusion and construct this very narrow

9    focused, directed notice campaign, the 90 days would be

10   needed, not the 30 days.  And I believe that this benefits

11   the entire estate, not just this one narrow group of

12   creditors, because as both the Debtor and Mr. Troop have

13   pointed out, the hurdles for a party to overcome filing a

14   late-filed claim are high.

15            However, if that party can show they never knew

16   that they had a claim before the bar date, I expect Your

17   Honor would grant their claim.  In other words, there is a

18   whole class of creditors here, who would have an excusable

19   neglect to have late-filed claims.  So whether it is 90,

20   120, or 180 days down the line, if a creditor from this

21   Practice Fusion scheme does file a claim, that could

22   interrupt the case.

23            However, as Mr. Troop pointed out, this case is

24   not nearly ready for a consensual plan and the size of the

25   numerator in this case, the number of creditors, is not

Page 60

1     really the issue that's going to hold things up.  Delaying

2     90 days to get proper notice to this group of creditors

3     would not injure the process at all.  I realized the

4     enormity of the issue that's going on in this case.  I

5     understand this is a very small issue in comparison to all

6     of the major issues that Your Honor is dealing with.

7            I'm asking that this one issue, for this group of

8     creditors, be addressed appropriately.  Thank you.

9            THE COURT:  Okay.

10           MR. HUEBNER:  So at this point, Your Honor, again,

11    let me ask, is there anyone else -- there were some other

12    letter filings with respect to the request for a longer

13    extension.  We're not, obviously, taking a view.  We didn't

14    try to preclude any from speaking or being heard.  We're not

15    asserting any sort of party interest defense, anything like

16    that.

17           So is there anyone else from the people who are

18    listed in the agenda letter supporting a 90-day extension

19    who would like to be heard before I can sort of swing back

20    to the other stakeholders in the case?

21           MR. TROOP:  Your Honor, this is Andrew Troop again

22    from Pillsbury for the non-consenting states.  Your Honor, I

23    do believe that there was one person who had tried to dial

24    in but was unable to do so.  I'm just sharing that I haven't

25    heard from anyone else that intend to -- their intent to

Page 61

1    participate or present today.

2              THE COURT:  Okay.  Well, I mean, I'm not sure why

3    they weren't -- aren't able to do so or whether they

4    contacted the Court.  But if no one has anything further to

5    say in opposition to the motion or, perhaps better put,

6    seeking a longer extension, then I'm happy to hear from

7    other parties maybe beginning with the creditors' committee.

8              MR. PREIS:  Good morning, Your Honor.  Can you

9    hear me?

10             THE COURT:  Yes.

11             MR. PREIS:  Good morning.  This is Arik Preis from

12   Akin Gump Strauss Hauer & Feld on behalf of the Official

13   Committee of Unsecured Creditors.  Thank you, Your Honor,

14   for allowing us to speak this morning on what is really an

15   important issue in these cases.

16             We filed a statement yesterday setting forth our

17   position; that's at Docket #1213.

18             THE COURT:  Right.  I've reviewed that.

19             MR. PREIS:  Okay.  We included a chart there that

20   set forth the positions of various parties that filed

21   pleadings.  In setting forth those positions, we tried to

22   explain the fact that different positions have been taken by

23   different parties in this case that are, frankly, similarly

24   situated.  In some cases, we actually have the exact same

25   time of claimant taking a diametrically opposed position on

Page 62

1    an issue that would appear to affect them in the same way.

2           So I want to be actually a little specific because

3    our chart, although we tried to hit all the parties that had

4    filed pleadings, some of the parties that filed the

5    pleadings actually have multiple groups within their parties

6    or within their ad hoc group.  And I think it's probably

7    instructive for me to just go through all the different

8    types of claimants in this case and give you a sense of

9    where they are.  And we feel we're a little bit better

10   situated than anyone in the case right now to tell you this,

11   given who sits on our creditors' committee and our

12   interactions with a lot of the parties in the case.

13          So on the state side, you have the ad hoc group of

14   consenting group, 23 of them, arguing for no extension, and

15   the ad hoc group of non-consenting states, I believe there

16   are 25 of them along with some territories and District of

17   D.C., arguing for a 90-day extension.  On the county and

18   municipality side, and this is part of the reason I want to

19   go through this, the PEC and the MDL, which purports to

20   represent I believe 2,000 or so cities, counties and

21   municipalities, they're a member of the consenting group

22   and, therefore, they support no extension.  Then you have

23   the multi-state group, which is comprised of 1500

24   municipalities representing 60 million people, arguing for a

25   30-day extension.

Page 63

1              On the personal injury side, you have letter

2       requests arguing for a 90-day extension, as you know, and

3       newly formed ad hoc group of accountability, which you just

4       heard from, arguing for a 90-day extension for an entirely

5       different reason.  And then an ad hoc group of personal

6       injury victims, which has been vocal in this case and

7       purports to speak for 40,000 individual victims, supporting

8       only a 30-day extension.

9              Then there are a few groups that didn't file

10      anything -- the ad hoc group of ANS, the ad hoc group of

11      hospitals and the third-party payors, all of whom are

12      important players in these cases, did not file pleadings.

13      Each of them has a representative claimant or two that sits

14      on the creditors' committee; specifically, the creditors'

15      committee has a hospital on its committee, West Boca Medical

16      Center, one mother of an NAS child, one grandfather of an

17      NAS child, a third-party payor, Blue Cross & Blue Shield

18      Association, all of whom are on the UCC.  And I've been told

19      that although they didn't file a paper, the NAS ad hoc group

20      is of the view that if an extension is granted, it would

21      support a 30-day extension.

22             In addition, there are the Native American tribes.

23      Although they too did not file their own specific pleading,

24      some of them are members of the ad hoc group of consenting

25      parties, which group supported no extension, and some are ex

Page 64

1      officio members of the UCC.

2              And so, Your Honor, with this amount of difference

3      of opinions, not on type of claimant lines and not on

4      private versus public claimant lines, as you've heard

5      discussed on other issues, and, frankly, not on political

6      lines, it seems that one really needs to consider what the

7      various arguments here because one can't simply say X

8      creditor is saying Y because of how this affects them like

9      in a normal way case.

10             So some groups, the first issue that remains most

11     of the groups focus on is that we need to recognize that

12     opioid victims have been hit hard by the COVID-19 pandemic

13     for various reasons and, as such, need an extension of bar

14     date.  The ad hoc group of PIs appears in their pleadings to

15     provide some compelling rationales for how PI victims have

16     been particularly harmed by COVID-19.  Others have argued

17     that state and local governments or hospitals or third-party

18     payors have been focused on COVID-19, which indeed we would

19     want them to be and hope that they are.  And as such, we're

20     not focused on filling out a group claim form.

21             But although it's hard to argue that these types

22     of positions don't appear to have merit, the consenting

23     group may have been right when they said there's actually no

24     hard evidence that any group or individual was, in fact,

25     adversely affected by COVID-19 in a way that prevented them

Page 65

1    from receiving notice of the bar date or filling out a proof

2    of claim form.  I think you even said earlier there's no

3    evidence.  All we can say about this issue, at best, is that

4    it's simply impossible to know for certain which side is

5    right on this issue.

6              Second, some have seemed to hint that the noticing

7    program is not going to hit its noticing targets as a result

8    of COVID-19 process and, as such, an extension is warranted.

9    But there's no evidence of that either.  Jeanne Finegan's

10   argument -- Miss Finegan presented uncontroverted evidence

11   about the way the program worked and who it was targeted and

12   how it has been effective.  Some claimants seem to imply

13   that the noticing program hasn't worked or can't worked

14   because COVID-19 will result in people being unable to fill

15   out proof of claim forms.  But the truth is, the program is

16   a noticing program, it's not a file a proof of claim

17   program, and forms can be filled in online and almost no

18   documentation is necessary.  Indeed, the forms were intended

19   to be as simple as possible to fill out with different types

20   of forms for individuals making their forms even easier to

21   fill out.

22             I would note though on this point, Your Honor,

23   that earlier, you asked the Debtors or Prime Clerk whether

24   they have reason to believe that the number of claimants

25   that have filed claims is less than the amount anticipated,

Page 66

1    and Miss Finegan and Mr. McClammy answered that no, it's

2    not.  And I noted earlier -- I'm king of guessing here -

3    that Mr. Troop thought for a second about whether he was

4    going to cross-examine Miss Finegan and maybe he was going

5    to ask her about this issue.

6         But I too thought about it because I've never in

7    all of our discussions with the Debtors ever been told what

8    the Debtors or Prime Clerk expected as of this time or any

9    time as far as the number of claims to be filed.  Indeed,

10   that would require some pretty difficult assumptions about

11   number of claimants, likely amount of claimants who file

12   claims in mass torts of this unprecedented size and other

13   factors.

14        But I can assure you, Your Honor, that some groups

15   have absolutely told their Debtors their view on this.  For

16   example, the NAS ad hoc group has voiced to the Debtors

17   their view that the number of claimants that have filed NAS

18   claims is less than the amount they would have anticipated

19   as of now and has worked with the Debtors in an effort to

20   modify some of the noticing strategies as it relates to NAS.

21   For example, they've worked to modify images that are used

22   online since they're more applicable to the NAS children.

23        At this point, I think the NAS ad hoc group at

24   best would say that the jury is still out on this issue.  I

25   can't speak for any other group, but I did want to note that

Page 67

1    in response to something you raised earlier.

2            Third, some would argue that we shouldn't have any

3    extension because that will in some way impact mediation.

4    And I found myself agreeing with what Mr. Troop just said

5    and, indeed, it was in our papers.  That argument doesn't

6    ring true at all.  We began discussing mediation in late

7    February and began formal mediation in early March.  The bar

8    date on March 1st was 120 days away.  At that time, no one

9    objected to mediation or even voiced a view that we should

10   hold off on mediation because we don't know how many claims

11   will be in by the bar date and that we can't reach

12   resolution until we know the number of claims.  Meaningful

13   negotiations were intended to occur starting then, have

14   occurred and will occur prior to the bar date deadline

15   whenever it will be.

16           Moreover, and as Mr. Troop also alluded to, but

17   I'm going to need to fix something he said in a second, we

18   are in the midst of investigating the claims against the

19   Sacklers.  You are very aware from various discovery

20   disputes brought to your attention last month, and indeed

21   yesterday, we submitted another long letter to you of

22   various discovery issues that have arisen based on what you

23   ordered 32 days ago.

24           Discovery is likely months away from concluding,

25   much less having the UCC and the non-consenting states and

Page 68

1    perhaps others from agreeing to the settlement framework.

2    Therefore, while we obviously hope and would want the

3    consensual resolution by early fall, as was indicated

4    earlier, if not sooner, a lot has to be done before that.

5            And, Your Honor, I just want to correct something

6    that Mr. Troop earlier mentioned when talking about the

7    impact that COVID-19 had on getting access to Mr. Ives'

8    documents.  We had offered to meet and confer to reduce the

9    number of documents offline with Mr. Ives' counsel and that

10   the deadline should be based on the number of documents

11   returned.  Mr. Ives is still taking the position that his

12   documents would be due September 1st, and we are asking to

13   require them by separate letter, and obviously not for this

14   call for this hearing, to finish by August 1st.  But at no

15   point has anybody ever agreed to a deadline of discovery of

16   September 1st for anything.  As you know, there is a

17   deadline of July 1st for certain production to be done, but

18   again, that's not for this call.

19           Finally, in any argument that the bar date

20   extension should be only for one or a specific type of

21   claimant are just -- we don't believe are consistent with

22   fundamental fairness, and I think Mr. McClammy addressed

23   that earlier on in his comments.

24           Given all these competing positions, Your Honor,

25   and the arguments we've heard, our initial view, as we

Page 69

1    explained in our papers, was there should be a surgical

2    approach for extensions; specifically, if someone or some

3    institution or some governmental party, indeed, did have a

4    hardship due to COVID-19 and could not file a claim on time,

5    then they should file a late claim and submit an affidavit

6    to that effect, and there would be the need for the Debtor

7    to give everyone notice that this process was in effect.

8           But as we explained in our papers, requiring

9    people to go through this verification process and then have

10   a claims administrator adjudicate, or that the reasons were

11   indeed legitimate and ensuring that this process was run in

12   a fair and cost effective manner would have been

13   impracticable, difficult to negotiate, time consuming to

14   administer, and may in fact be unfair to those who we were

15   actually trying to help, so we decided to abandon that

16   proposal.

17          Therefore, we looked at all the competing

18   interests, which I went through with you earlier, and the

19   rationale espoused, and we considered the fact and

20   circumstances not just of this case, but of the world we

21   live in and, frankly, notions of fundamental fairness.

22          And honestly, Your Honor, I think it's fair to say

23   that once one determines that an extension of some sort is

24   appropriate, determining the length of that extension,

25   whether it's 15 or 30 or 45 or 60 or 90 days, is frankly

Page 70

1    simply a matter of what feels right based on what everyone

2    is arguing and what people are saying as reasons for

3    extending or not.

4         The UCC is a fiduciary, therefore supports a 30-

5    day extension, not because it necessarily is a legally right

6    answer, because frankly we're not sure there is a legally

7    right answer, but because it strikes the appropriate balance

8    among all the various positions advanced by all of the

9    different parties in the case.  And perhaps in that way,

10   it's the legally right answer.  Thank you, Your Honor.

11        THE COURT:  Okay, thank you.

12        MR. ECKSTEIN:  Your Honor, good morning.  This is

13   Kenneth Eckstein of Kramer Levin on behalf of the Ad Hoc

14   Committee of Consenting States and Local Governments.  Would

15   it be appropriate for me to speak at this point?

16        MR. ECKSTEIN:  Sure, go ahead.

17        MR. ECKSTEIN:  Thank you, Your Honor.  I trust

18   Your Honor has had an opportunity to read the pleading that

19   we submitted.  I believe that we are standing alone in some

20   respects in taking the position that there is no cause or

21   basis in this case for an extension of the bar date.  But

22   let me just briefly summarize some of the points that we've

23   made and address some of the comments that have been made

24   this morning.

25        First, Your Honor, I want to echo the comments

Page 71

1   that have been made by I believe all the speakers in noting

2   that the members of the ad hoc committee of consenting

3   states and local governments, and that includes all the

4   states and all of the cities, counties and municipalities

5   that sit on the ad hoc committee are keenly focused on the

6   demands and challenges presented by the COVID-19 crisis.

7           And I'm sure Your Honor can appreciate that the

8   members of the ad hoc committee, while focusing intensely on

9   a great deal of constructive activity that has been taking

10  place in this case over the last 90 days, has been working

11  almost full time as well on confronting the challenges in

12  their respective states and municipalities, and I don't

13  believe that there is any party in this case that is more

14  aware of the challenges presented by COVID-19 than the ad

15  hoc committee of consenting states and local governments.

16          Notwithstanding this crisis and that the crisis

17  clearly is unprecedented, I think as Your Honor has heard

18  repeatedly from I think again all of the parties, we're

19  balancing the challenges of the crisis with a very, very

20  unusual, I would say unique Chapter 11 case, which is at

21  this point I think heading into it's tenth month, with

22  tremendous cost and expense for all the constituencies and

23  where the significant resources that we had hoped were going

24  to be put into the system have not yet found their way to

25  start providing relief for the opioid crisis and its

Page 72

1    victims, and we think those are the balances that have to be

2    considered here.

3         At the end of the day, Your Honor, we have to

4    determine whether or not there's cause for an extension of

5    the bar date.  I believe there is uniform recognition that

6    the bar date that was established and approved by this Court

7    in this case is a model of a broad and comprehensive bar

8    date, it was undertaken at massive expense to the estate;

9    over $23 million was expended in providing broad and

10   extensive notice of the bar date in this case in a manner

11   that I certainly have not encountered in any other case in

12   which I've been involved.

13        The length of the bar date, even for a mass tort

14   case, is extremely long, and there has been no suggestion in

15   the papers or this hearing that there are parties who cannot

16   file the claim.  Every case, whether it's a bar date or a

17   pleading or a deadline, everybody wants more time and we all

18   recognize that and it's always more comfortable and it's

19   easier to have more time.  We also, I think, appreciate that

20   whenever there is a delay or an extension of time, it causes

21   delay to the case; that is almost axiomatic and that will be

22   true here as well.

23        We do need to balance.  And what I think Your

24   Honor has before you is the fact that there is a robust and

25   effective bar date that was put in place, that there is no

Page 73

1    specific compelling need for more time, that in fact the

2    evidence demonstrates that the claims are coming in, and the

3    fact of the matter is we are devoting day in and day out.

4    The parties in this case are devoting almost their entire

5    day in certain cases to mediation.

6            It is true, mediation was started before we knew

7    what the exact amount of the claims were going to be, but we

8    all recognized that by June 30th, we were going to have the

9    claims on file.  And we appreciated that, while we hoped

10   mediation would have been done earlier, the fact of the

11   matter is in a case of this complexity, it's no surprise

12   that it's ongoing and it's going to continue to be ongoing

13   for a while.  But as Your Honor has heard from Mr. Troop and

14   from others, progress has been made, and I believe progress

15   will be continued to be made.  And we all must, in this

16   case, aspire to the filing of a plan as early as possible,

17   and I don't think anybody would quarrel with the fact that

18   we should be aspiring to file a plan by the fall of 2020.

19           I appreciate full well, there are many, many

20   hurdles that could interfere with that goal.  So it would

21   seem obvious to me, Your Honor, and hopefully to the Court,

22   that creating additional hurdles to show this case down is

23   exactly what nobody in this case needs.  Unfortunately, we

24   do have a limited amount of resources, and we're working

25   mightily to figure out what the most effective way is to

1    make those resources available to numerous competing

2    parties.

3            If one party is going to say we are not yet

4    prepared to weigh in on what is the appropriate treatment

5    for our constituency in this case because we don't know the

6    universe of our claims, that could be a significant

7    impediment to making the critical necessary progress to

8    resolving the mediation and getting to the point where we

9    can file a plan.

10           The ad hoc committee is completely sympathetic

11   with all of the problems that we're all confronting.  And

12   this position should not be heard as anything other than a

13   desire to balance the sympathy for the challenges that we're

14   all dealing with, with the responsibility that we all have

15   to keep this case moving forward as constructively and

16   effectively as possible, and each of the parties who have

17   spoken, I believe, are doing that.  But by opening up a key

18   deadline, as Your Honor has pointed out, the bar date is not

19   merely an incidental or technical deadline; it is a key

20   dating item to be able to really make the progress we need

21   to in this case.

22           In the absence of cause because it's -- maybe it

23   feels better to give more time, that's not cause in this

24   case, Your Honor, so we would submit that the right answer

25   is notwithstanding the fact that it may feel good, we think

Page 75

1    the Court should conclude that it has put a robust

2    comprehensive extensive bar date in place where all parties

3    have received notice.

4              To the extent there are attorneys who want to file

5    claims, they've had months and months to do so, and there

6    are very, very simple mechanisms to make sure that the basic

7    requirement of filing a claim is satisfied; there is no

8    cause for another 30, 60 or 90 days to do so.  To the

9    contrary, we should be doing everything in our power to keep

10   this case moving and to not create additional impediments to

11   delay, all of which is costing this estate millions and

12   millions of dollars a month that will continue to be

13   incurred unless we commit ourselves collectively to actually

14   achieving a resolution that should be in hand.

15             So, Your Honor, we believe that there is no cause

16   for extending the bar date.  We believe that the notice

17   period in this case is adequate.  We believe that the Court

18   does have the ability, if there are specific exceptions that

19   surface in the future, to deal with the excusable neglect

20   standard by applying it to the unique circumstances that we

21   face right now in this country.  And if the facts warrant, I

22   have no doubt that Your Honor will find an opportunity to

23   accommodate genuine needs for additional time, and we

24   believe that the right conclusion in this case is for the

25   Court's order establishing a June 30 bar date to be

Page 76

1    maintained.

2            At the conclusion of our pleading, Your Honor, we

3    did say if the Court nonetheless believes that it is

4    prepared to open up this bar date, which is a very

5    significant event for the Court to do in a case of this

6    size; if the Court is going to nonetheless open up the bar

7    date, we believe that the appropriate step would be, in that

8    case, to provide not more than 30 days, make it available to

9    all parties, and that would be the fallback ruling that we

10   would recommend in the event the Court believes that there

11   actually is some need to extend.  We appreciate Your Honor's

12   consideration.  Thank you.

13           THE COURT:  Okay, thanks.

14           MR. MACLAY:  Your Honor, this is Kevin Maclay for

15   the MSG.  May I be heard?

16           THE COURT:  Briefly, yes.

17           MR. MACLAY:  Thank you, Your Honor, and I will be

18   brief because I don't want to retread any already applied

19   ground.

20           THE COURT:  Right, and that's the only reason I

21   suggested it.  I think we're probably getting to the point

22   of diminishing returns on other arguments since I think

23   we've now covered the gamut of the responses.

24           MR. MACLAY:  Thank you, Your Honor, yes, very

25   briefly.  As was noted by counsel for the UCC, my group

1   represents approximately 60 million people, localities

2   across the country who are on the front lines of both the

3   opioid and now the Covid crisis.  We carefully considered

4   the Debtors' positions and the evidence presented in support

5   of those positions, and we concluded that the Debtors'

6   judgment was correct; that the appropriate balance between

7   the hardships that have been laid out by some of the letter

8   writers and then, ultimately, the non-consenting state

9   group, and the delay to the case that, in our view, will

10  also inevitably result.  If a further extension were

11  granted, that the 30-day period was the correct period.

12  Thank you, Your Honor.

13          THE COURT:  Okay, thank you.  Anyone else?  And I

14  have read all the pleadings on this, so you can be assured

15  of that.

16          MR. McCLAMMY:  Your Honor, it's Jim McClammy for

17  the Debtors.

18          THE COURT:  Well, before you speak, Mr. McClammy,

19  I had a question for you or maybe Ms. Finegan.  The Debtors

20  budgeted over $23 million for the bar date notice process,

21  and as her supplemental declaration states, it's now more

22  than two-thirds done.  My question is, is there some point

23  of diminishing returns by way of an extension given that a

24  fair amount of this money has already been spent and you're

25  not contemplating a lot more; it's just a reference to an

Page 78

1    extension.  I just don't know.

2            In terms of noticing, is there some point by which

3    the extension goes out far enough so that the message that

4    you've already spent, you know, more than two-thirds of the

5    work on has been diluted?  I hope that's clear; if not, you

6    could ask me where it isn't clear.

7            MR. McCLAMMY:  Yes.  In the first instance, that

8    may be a question for Ms. Finegan.  I'll see if Ms.

9    Finegan's able to respond.

10           MS. FINEGAN:  Your Honor, in response to your

11   question, while we are two-thirds of the way through the

12   program's timeline, a majority of the budget has already

13   been spent and contractually committed.  We are currently in

14   a maintenance level just to keep awareness.  So at a very

15   minimum, the program is running online, social media ads and

16   display ads on YouTube.  We have yet to publish one magazine

17   title; again, that's coming out on June 12th, which is

18   "Parents Latina."  And then the program is, for the most

19   part, concluded.

20           THE COURT:  Okay.  But I guess my question is, a

21   tremendous amount of work and money has gone in to telling

22   people that June 30th is the deadline.  Is there any logic

23   to the notion that if you get more than a month or so beyond

24   that deadline with a new deadline, that the work already

25   done is vitiated, you know, so that people kind of lose

1    their memory of that ad they saw or that website banner that

2    they saw, you know, if you go much beyond the time that the

3    Debtors have said, or does it really not matter?

4            MS. FINEGAN:  If I understand your question

5    correctly, Your Honor, I believe that it is always helpful

6    for individuals to have a continuous reminder of a message

7    in front of them.  Of course, it's always up to that

8    individual whether or not that they take action.  We are

9    only 50 percent of the equation, so I believe that it is

10   helpful to have messages continuously in front of

11   individuals as reminders.

12           THE COURT:  Okay.  And isn't it -- there were

13   estimates given that the extra 30 days that the Debtors were

14   requesting would cost in hard dollars about $700,000, and

15   that 90 days would cost $2.1 million.  Is there a weekly

16   cost to this; is it that simple that it's X hundred thousand

17   per week?

18           MS. FINEGAN:  Typically, the media contracts are

19   negotiated on a monthly basis.  Certainly, we could work

20   that out for you.  I don't have that easily at my disposal,

21   but I'm happy to calculate that for Your Honor.

22           THE COURT:  But generally, you would negotiate a

23   month worth of --

24           MS. FINEGAN:  Yes, that's correct.

25           THE COURT:  I mean, Mr. Preis said -- you know,

Page 80

```
 1    Mr. Preis threw out numbers like 30 days, 45 days, 60 days,
 2    90 days; all but one of those was on a monthly basis.  And I
 3    guess that you're saying that generally speaking, if you're
 4    going to have maintenance, it would be on a monthly basis.
 5              MS. FINEGAN:  That's generally the case.  However,
 6    there have been notice programs that have extended into 45
 7    days, so it can be accomplished most certainly.
 8              THE COURT:  All right.  But you don't have a sense
 9    of what the cost of that would be.
10              MS. FINEGAN:  To run the program for 45 days?
11              THE COURT:  Yeah.
12              MS. FINEGAN:  I do not have that easily at my
13    fingertips, but I'm happy to gather it for you.
14              THE COURT:  Okay.  All right, thanks.  All right,
15    so Mr. McClammy, I interrupted you, but go ahead briefly.
16              MR. McCLAMMY:  Thank you, Your Honor.  Briefly,
17    Your Honor, I just want to respond to the points raised with
18    respect to the deferred prosecution agreement by the ad hoc
19    committee on accountability.  I believe Mr. Huebner might
20    have a couple of additional words as a general rebuttal, if
21    that's all right.
22              THE COURT:  Okay.
23              MR. McCLAMMY:  So, Your Honor, with respect to the
24    arguments raised by the ad hoc committee on accountability
25    concerning the deferred prosecution agreement, I just
```

Page 81

1    reiterate the remarks made in my opening; that those

2    patients are really not differently situated from the other

3    potential claimants in this case whose contact information

4    the Debtors do not have access to.  And, you know, the fact

5    that they may have had a contract with a party that was

6    subject to the deferred prosecution agreement does not

7    change that.

8              You know, in fact, you know, it's been very

9    public, the accusations against Purdue, including claims of

10   conspiracy.  So in addition to the fact that the deferred

11   prosecution agreement was in January, you know, it is not as

12   though those that believe that they have claims tied to

13   opioid use would have no basis for considering whether or

14   not they had a claim against Purdue based upon information

15   that was publicly available to them at the time.

16             So for those reasons and for the reasons included

17   in our papers, Your Honor, we suggest that the request that

18   there be a limited noticing tied to parties that may have

19   been impacted by the matters that are outlined in the

20   deferred prosecution agreement, that that should be

21   overruled.  And with that, I will turn it over to Mr.

22   Huebner.

23             THE COURT:  Okay.

24             MR. HUEBNER:  Your Honor, let me be very brief.  I

25   hope not to take more than five minutes, but this is very

Page 82

1    important, and I think there is actually a lot on the line.

2            Number one, I do want to acknowledge, we're all

3    talking about competing goods and we're all talking about

4    balance.  It's not -- this is not a binary issue.  The issue

5    is there is a material cost of delay, there is risk of

6    delay, and there is a probability of delay.  And ultimately,

7    in part, this comes down to judgment, but the judgment has

8    to be looked at in context, and the context is that this

9    original bar date was, you know, on a combined basis

10   probably the longest, deepest, most expensive, most

11   elaborate bar date in U.S. history.

12           We sort of joke about it, but, you know, that is

13   actually what Jim McClammy got sort of, you know, canonized

14   as St. Jim because we spent weeks and weeks and weeks taking

15   incredible amounts of input from every single group about

16   how to improve, extend and deepen the program and do things,

17   frankly, that in many cases, have never been done before.

18           And, you know, the numbers that we're talking

19   about, if you even sort of close your eyes and go back even

20   just a few years, to say that 95 percent of the more than

21   300 million people in our country will hear about the bar

22   date more than six times is something that 10-15 years ago,

23   nobody could have even fantasized could be something that's

24   going to be put into a declaration.  Now it used to be you

25   would mail it to creditors' last known address and you would

Page 83

1    take out four newspaper ads and that would be it.  This is

2    as far from that as anything could be.

3            And at the end of the day, as Your Honor has noted

4    several times, this is about evidence.  It's applying the

5    facts to the law and notions of fairness.  The evidence at

6    this hearing, just like the evidence at the original

7    hearing, is all and exclusively the Debtors.  There is a

8    very detailed declaration about the extraordinary number of

9    touchpoints that the bar date has already had, about the

10   extraordinary length of the bar date, and as far as we can

11   tell from sophisticated computer website hits and things

12   that those of us over 50 barely understand, an extraordinary

13   effectiveness in getting the message out.  And no one has

14   actually said anything to the contrary, except I guess from

15   Mr. Troop saying that some unknown person quipped to him

16   that he or she believes that we may see more claims if the

17   bar date is extended, which obviously isn't really hearsay,

18   it's just an aside.

19           And so, you know, I think at the end of the day,

20   the Debtors listened hard as they did the first time, and

21   the committee listened hard; I should say committees because

22   there are about seven of them.  But in this case, I mean the

23   official committee of unsecured creditors, which is the

24   fiduciary for all unsecured creditors, for all claimants in

25   this case who seek to file a claim and assert one against

Page 84

1    the Debtors.

2            And so, you have the twin fiduciaries who listened

3    and listened and listened and listened to arguments for only

4    my group, only my group and one other group, only on a

5    showing of cause, none at all, zero days, 15 days, 30 days,

6    45 days, 60 days, a couple of people saying 90 days.  And we

7    made a judgment to move for relief from our own motion that

8    was granted on unanimous unopposed consent because we

9    thought an extra time period was needed.  Nobody has said,

10   and there are no red herrings here, that for every day the

11   bar date is extended, the case will be extended, and it will

12   cost X dollars.

13           We obviously understand and I think I was very

14   clear at the outset, as was Mr. McClammy, that there are

15   many other things going on in this case, very many people

16   are hard at work on parallel tracks, and we're massively

17   parallel processing.  But any time one of the mega-things

18   gets pushed out, the case almost surely gets pushed out,

19   which is why we said that a further extension, we believe,

20   is highly likely to take tens of millions of dollars in

21   damage to the business and risk and cost and delay out of

22   the hands of the people that we're desperately trying to get

23   the money to as soon as we possibly can.

24           And so, I think at the end of the day, you know,

25   the layout of the parties is also not irrelevant, you know,

1    and Mr. Preis went into that in some detail.  And it's a

2    matter of counting heads and it's not a matter of saying,

3    you know, the two Chapter 11 fiduciaries are completely in

4    accord on the approach because obviously the states are

5    sovereign and their fiduciaries.

6            And, unfortunately, it's been the case at so many

7    hearings in this case, the dissenting states are on one side

8    and a great number of other ad hoc committees and

9    individuals and the Debtors and the UCC are on the other,

10   and that's their right and they are obviously the caring

11   fiduciaries for the citizens of their states.  But we also

12   have many people who separately speak for and legally

13   represent or purport to or allege to the individuals in the

14   state or the subdivisions within those states or the

15   hospitals within those states or the (indiscernible) within

16   those states.

17           And so, at the end of the day, you know, there's

18   no magic right answer, but it is a question of balancing

19   competing goods.  And the Debtors, joined by I think the

20   overall majority of organized parties in the case, very

21   strongly stick with the balance that they struck after

22   listening for weeks to all the parties and all their various

23   thoughts in the rather extraordinary step of seeking relief

24   from their own motion to extend what, as I said at the

25   outset, was I think already the touchiest, in terms of

1    touching Americans in enormous numbers enormous number of

2    times, longest deepest and probably most expensive bar date

3    that any of us has ever seen, and we ask that the relief in

4    the form for which we have moved be granted.

5              THE COURT:  Okay.  All right, appreciate

6    everyone's input on this.  I have before me a motion by the

7    Debtors to extend the general bar date in this case from

8    June 30th to July 30th of this year, a 30-day extension.  It

9    was made in response to, first, a number of letters filed

10   starting in early May by individuals, as well as

11   organizations, that have a role in fighting the opioid

12   crisis in this country for an extension of the bar date in

13   light of COVID-19.

14             But it's also clear to me that the effect of

15   COVID-19 was being considered at the same time by the key

16   parties-in-interest in this case, including the Debtors

17   independently, the official unsecured creditors' committee

18   and various ad hoc committees, and that led to the Debtors'

19   motion.

20             It has elicited a remarkable range of responses.

21   I think, if one were counting heads, the general majority of

22   parties-in-interest in the case have agreed to the concept

23   of a 30-day extension, with the exception of the two groups

24   of states and, in terms of the consenting ad hoc committee,

25   other governmental entities which interestingly have taken

Page 87

1    diametrically opposite positions.  One group, the non-

2    consenting states group has sought a 90-day extension;

3    whereas, the so-called consenting ad hoc group has argued

4    that there should be no extension.

5            Frankly, I do not doubt the good faith and well-

6    meaning nature of any of these responses.  I think people on

7    this issue, as they have with other issues in this case,

8    have taken their positions in good faith and sincerely, not

9    with an ultimate strategic end that would harm the ultimate

10   claimants here, which are the parties that would be affected

11   by the bar date.

12           This is a highly unusual case.  There is no funded

13   debt.  All of the claimants here effectively are unsecured

14   creditors and all but a minute portion are claimants because

15   of either tort or other theories connected to opioids.  And

16   if one were to draw them diagrams, one could conclude, given

17   the presence of all but a couple of states who have already

18   settled prepetition their claims, that every citizen of

19   every state in the United States is a claimant in one way or

20   another, at least in terms of being represented by their

21   state Attorneys' General or state governments, and in

22   addition, multiple governmental entities below the state

23   level.

24           Nevertheless, it is critical here, as in every

25   case, to have finality as to the universe of claims so that

Page 88

1    the parties can be confident that a Chapter 11 plan that

2    distributes the Debtors' value to claimants is doing so

3    without risk of other claimants coming out of the woodwork

4    and asserting claims separate and apart from the plan.

5           In light of that fact and the unique circumstances

6    of this case, i.e. the very broad number of claimants or

7    potential claimants, the Debtors proposed, and the Court

8    approved in early February of this year, an extraordinary

9    bar date in terms of the number of days to assert a claim,

10   as well as an extraordinary notice program, which has a high

11   cost to it, over $23 million.

12          But all of the constituents active in these cases

13   believed then, and I think still believe now, that that cost

14   was warranted given the number of potential claimants, their

15   desire to see the types of claims asserted.  And the fact

16   that under the Supreme Court and Second Circuit case law on

17   notice, much of that notice -- most of that notice would

18   need to be not individualized because the Debtors do not

19   have readily ascertainable data to provide individual

20   notices.

21          And, in fact, one could argue that if that were

22   the case, you'd provide individual notices to every person

23   in the United States, but rather would need to provide, in

24   addition to the notice on people on their schedules and who

25   one would say are readily ascertainable claimants or

Page 89

```
1     potential claimants, one would need to provide extensive

2     public notice far beyond the normal notice in Chapter 11

3     cases through, generally speaking, limited print media.

4            The notice here is indeed extraordinary, as was

5     detailed on Page 8 of Ms. Finegan's declaration in support

6     of the original bar date motion and then in her supplemental

7     declaration from May 20th in support of the current motion,

8     the notice is not only in print media, but extensive

9     television and radio notice, community outreach, and -- and

10    I think this is perhaps going to be more of a trend but it's

11    a major element of the notice here -- online, social media,

12    out of home, i.e. billboards, and earned media, including

13    bloggers and creative messaging.  That was combined with a

14    simplified proof of claims form and the ability to file a

15    claim or first, get more information about filing a claim

16    online -- there was a specific claims website -- and to file

17    a claim either online or by mail.

18           Based on Ms. Finegan's supplemental declaration,

19    it appears clear to me that that process of providing notice

20    has been quite successful in its goal in ultimately reaching

21    roughly 95 percent of all adults in the United States over

22    the age of 18 with an average frequency of message exposure

23    of six times, as well as over 80 percent of all adults in

24    Canada with an average message exposure of over three times.

25           In addition, the bar date program provided
```

Page 90

1    sufficient flexibility so that with the Covid pandemic, the

2    Debtors were able to switch out of certain types of

3    noticing, most specifically in movie theaters, into other

4    types of noticing, and to move their funds also to types of

5    media that, apparently in light of Covid, have gained

6    substantial viewership.

7             The Court recognizes, however, that there are two

8    steps in a proof of claim filing process: there is the

9    notice process, and then there's the process in filing a

10   proof of claim.  Here, the Debtors' program made filing a

11   proof of claim easy, more easy than in most cases.  It is a

12   myth, for example, that one needs detailed medical

13   information to file a claim in these cases.  There is also

14   no bar to filing a proof of claim in this case if you cannot

15   prove that you or your loved one was prescribed OxyContin or

16   some other opioid from Purdue; that would not be a perjured

17   proof of claim or a false proof of claim if you have a good

18   faith belief in such a claim.

19            It might ultimately turn out that the claim would

20   be disallowed because there might not be a legal basis for

21   the claim, but the notion that you must be prescribed and

22   show the prescription for one of the Debtors' opioid

23   products in order to file a claim is simply not true.

24            On the other hand, the Debtors have recognized

25   that there is cause to believe that because of the COVID-19

Page 91

1    pandemic and the requirement that individuals maintain

2    social distancing and, generally speaking, do not engage

3    with others unless in a necessary setting, that filing a

4    proof of claim might be somewhat more difficult and require

5    an extension of the bar date.

6            Many of the initial letters mentioned the fact

7    that the deadline for filing tax returns was extended 90

8    days from April, from mid-April to mid-July, for example.

9    The Debtors have proposed an extension to the end of July

10   for the bar date here, which would be in effect a six-month

11   notice period which, as the Debtors point out, is

12   extraordinary long in the context of any Chapter 11 case,

13   even one like this.

14           Based on the evidence before me, it is only the

15   perception that COVID-19 has upended peoples' lives that

16   would require any extension here, as opposed to what no one

17   has argued but what has been considered in other cases, some

18   problem in the notice program or some new discovery of

19   another claim group or something like that.  Frankly, the

20   only basis for the requested extension is simply a

21   perception.  There is no real evidence that the filing of

22   claims in these cases has, in fact, been materially affected

23   by the COVID-19 crisis.

24           That leads to what is the right extension.  And,

25   frankly, given the variation or variables in the parties'

Page 92

1    views on this, I think counsel for the committee, Mr. Preis

2    -- or Mr. Preis, excuse me -- is right and also candid in

3    saying one doesn't have a necessarily correct legally right

4    answer here, but merely needs to do what one things makes

5    sense in light of all of the circumstances.

6         The Debtors basically give three reasons for an

7    extension not being more than 30 days.  First and

8    importantly, there is a cost to a longer extension.  Even a

9    30-day extension would have, as estimated, a $700,000 hard

10   cost; whereas, it is estimated that a 90-day extension would

11   have a $2.1 million hard cost.

12        Secondly, there are undoubted, I believe, and

13   greater than $2.1 million so-called soft costs in having a

14   lengthy beyond-30-day extension of the bar date.  Bankruptcy

15   cases often work on deadlines.  The bar date is a critical

16   deadline in a bankruptcy case.  Even though other matters

17   are continuing in this case on an active basis, including

18   plan mediation and discovery related to analysis of a plan

19   that would contain within it potential releases for third

20   parties, the delay of a bar date inevitably has some adverse

21   effect on getting this case over with promptly.

22        And arguing for a longer date, frankly, I think

23   the argument comes down to there's no real harm in having a

24   longer date, and a longer date would leave no question as to

25   whether there's a legitimate excuse for not filing a proof

Page 93

1    of claim by, at this point, July 30th if the Debtors' motion

2    were granted, as opposed to two months later, September

3    30th.

4            As far as the cost benefit analysis, it has been

5    argued that that longer period would provide some more

6    fairness to people and present litigation over extensions of

7    the bar date under Rule 9006 and the Supreme Court's Pioneer

8    case, litigation over which might actually add cost to the

9    estate.  On the other hand, it is my experience that if

10   someone can show a good reason for an extension -- and in

11   this case, it would be I think if they actually had COVID-

12   19, were hospitalized and basically for the period at issue

13   unable to function reasonably -- the bar date would be

14   voluntarily extended and the Court would agree with that.

15   But I agree with the committee's analysis that a more

16   complicated set of rules for extensions would be unworkable.

17           In light of all of the arguments that were made

18   and my analysis here, I conclude that the bar date should be

19   extended the 30 days that the Debtors have requested, that

20   the committee has agreed with, and that most of the parties

21   that have taken a position here have agreed with.

22           Again, it is highly unusual to extend a bar date.

23   I don't believe the extension is warranted based on any

24   deficiencies in the notice program, and I believe that an

25   extension of two weeks beyond the date for the extension on

Page 94

1    filing taxes is weighing all the factors here appropriate,

2    so I will grant the Debtors motion in that regard.

3          I want to say one thing further about timing.

4    We're in the ninth month of this case.  In some ways, this

5    motion is a microcosm of the case as a whole.  It has

6    elicited strong views from multiple parties, views that,

7    again, I believe are taken in good faith and not to foster

8    any specifically parochial agenda.  Nevertheless, the

9    parties were not able to reach agreement on something as

10   simple as an extension of the bar date.

11         I began by saying how unusual this case is.  What

12   I did not state then and what I want to make perfectly clear

13   to everyone now, although I believe everyone knows it, is

14   that what is most unusual about this case is that there is

15   ongoing harm, not I hope harm being caused but harm being

16   suffered by individuals, individual people, as well as the

17   governments that serve them.  The parties in this case need

18   to realize that the result in this case cannot be exactly

19   what they want; perfection is not achievable here, and an

20   effort to achieve perfection will leave the people who are

21   suffering at greater harm.  The parties here need to

22   understand that where there's a public health crisis, as

23   Covid has brought home, many views need to be taken into

24   account.  There is no one perfect treatment.

25         I want this case to move, and I will make it move

1   if the parties don't start accommodating each other.  And

2   one way to do that is to tell the Debtors we don't need

3   consensus on everything.  You have an active, well-informed

4   and diligent official creditors committee that represents

5   everyone.

6          The Debtors themselves, as far as I can see in

7   this case, have been acting as good appropriate fiduciaries.

8   If people cannot see other peoples' points of view and some

9   consensus can be built, we need to move ahead.  So I fully

10  understand Mr. Huebner's point that we cannot set a date for

11  a plan here.  But if I hear a month or two from now that

12  people cannot set aside their views as to what is the

13  perfect use for the money that is available here and agree

14  to share on how that is to be used, I will be taking steps

15  to move the case along separately, and it's shame on us if

16  we don't do that.  This is flesh and blood.

17         Secondly, if there is an expectation here of a

18  plan that will have, in return for a contribution, releases.

19  When I say discovery should be X and I say it in a way to

20  avoid further litigation over discovery, then everyone

21  should understand it should be X and not Y.

22         Now I appreciate that I got the letter from the

23  creditors' committee yesterday and the Sacklers and others

24  should have time to respond and they can respond by Friday,

25  I think you all know why I am extremely disappointed by what

Page 96

1    I read in that letter.  So unless it's not true, I will be

2    issuing orders.

3            I want the firm, if we're to have a conference, I

4    want Dentons on the phone and I want the new firm on the

5    phone and they will be accountable, as will anyone who has

6    been instructing them to do something other than I

7    instructed to be done last May, the beginning of May.  Hedge

8    funds may play games like this -- and, frankly, although

9    it's important to a company and the people it employs to

10   come out of bankruptcy, I will give hedge funds some time to

11   shoot themselves in the foot.  State Attorneys' General and

12   governments shouldn't be doing that, nor should the

13   Sacklers.

14           You must be thinking practically here to get this

15   company out of bankruptcy and devoting its money to the

16   Debtors, so enough said on that topic.  I'll be looking for

17   the order from the Debtors on the motion that was on for

18   today.

19           MR. HUEBNER:  Thank you, Your Honor.

20

21           (Whereupon these proceedings were concluded

22           at 12:28 PM)

23

24

25

Page 97

1                  C E R T I F I C A T I O N

2

3         I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya                    Digitally signed by Sonya Ledanski
                              Hyde
6    Ledanski Hyde            DN: cn=Sonya Ledanski Hyde, o, ou,
                              email=digital@veritext.com, c=US
7                             Date: 2021.07.16 09:07:22 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 4, 2020

[& - 60]                                                                    Page 1

## &

**&**   8:3,19 9:8 10:1
10:8,15 11:8,20
12:19 61:12 63:17

## 1

**1**   11:22 19:21
**1.4**   37:22
**10-15**   82:22
**10001**   13:4
**10003**   9:11
**10007**   8:15
**10017**   8:6 14:4
**10019**   9:4 10:18
**10020**   8:22
**10022**   10:11 11:11
**10036**   11:4 12:4
13:13 14:14
**104,755**   48:7
**105**   2:3
**10601**   1:14
**107**   10:17
**10:03**   1:17
**11**   2:3 33:16 38:14
39:6 43:25 71:20
85:3 88:1 89:2
91:12
**1100**   10:3
**1120**   12:3
**1133**   4:15,20 5:3,8
5:14 6:3,11 7:4
**1141**   4:20 7:4
**1142**   4:25 7:4
**1145**   5:4 7:4
**1149**   5:9 7:3
**11501**   97:23
**1153**   5:15 7:3
**1157**   5:20 7:3
**11570**   13:21
**1158**   5:25 7:3
**1160**   6:4 7:4
**1168**   6:7
**1173**   2:19 4:5 6:22
7:3,15,18

**1174**   6:11 7:4
**1177**   14:13
**1178**   2:7,11,14,19
3:2,20 4:5 6:22
7:9,18
**1179**   3:3 30:8
**1185**   7:2
**1187**   2:11 3:7,13
**1189**   3:14
**1196**   3:20 6:16
**1197**   2:16
**1198**   4:7 6:23
**1199**   7:5
**120**   59:20 67:8
**1200**   7:11
**1202**   2:21 7:21
**1213**   4:10 61:17
**1214**   2:23
**1216**   4:12
**1219**   2:1
**1221**   8:21
**1250**   12:11
**126**   9:17
**12:28**   96:22
**12th**   78:17
**15**   36:17 69:25
84:5
**1500**   62:23
**151**   11:3
**15th**   40:6
**16th**   20:1
**178**   29:22 36:24
**1788**   3:8
**18**   89:22
**180**   59:20
**19**   26:21 27:21,25
32:16 33:8 36:12
36:15,18 37:3
41:22 45:23 46:13
47:24 48:4,5,8
49:6 64:12,16,18
64:25 65:8,14
68:7 69:4 71:6,14

86:13,15 90:25
91:15,23 93:12
**19-23649**   1:3
**1a**   20:3,3
**1b**   20:8
**1d**   19:18
**1st**   49:1,9 54:11
67:8 68:12,14,16
68:17

## 2

**2**   54:23
**2,000**   62:20
**2.1**   79:15 92:11,13
**20**   53:15
**20005**   10:4 11:23
**2002**   2:4
**200363**   12:12
**2004**   58:19
**2008**   19:21
**2015**   45:8
**2019**   4:23
**2020**   1:16 5:7,12
5:14 73:18 97:25
**20th**   10:10 30:8
30:24 89:7
**23**   62:14 72:9
77:20 88:11
**24**   9:10
**248**   1:13
**25**   53:15 62:16
**27th**   57:20
**280**   4:24
**28th**   52:20,21
**299**   12:21

## 3

**3**   1:16 2:4 41:5
52:6
**30**   5:7,14 18:18
23:4,20 25:13
27:1,3,12,24 28:4
28:6 29:21 32:5
36:6,8 46:2 52:8
54:11 55:7,13

59:10 62:25 63:8
63:21 69:25 70:4
75:8,25 76:8
77:11 79:13 80:1
84:5 86:8,23 92:7
92:9,14 93:19
**300**   1:13 82:21
97:22
**3003**   2:4
**30th**   4:19 6:3
31:16 40:6 73:8
78:22 86:8,8 93:1
93:3
**31**   9:3
**32**   67:23
**330**   97:21
**35**   36:20,20
**3rd**   39:17 46:15
49:20

## 4

**4**   97:25
**40,000**   63:7
**401**   19:19
**44**   45:8
**45**   45:9 69:25 80:1
80:6,10 84:6
**450**   8:5
**46th**   11:3
**485**   10:10 14:3
**4th**   12:3

## 5

**5/6/20**   4:18 6:2
**50**   79:9 83:12
**501**   2:3
**52nd**   9:3
**55**   13:3

## 6

**6**   5:12 40:5
**60**   62:24 69:25
75:8 77:1 80:1
84:6

[60602 - agreed]                                                    Page 2

**60602** 12:23
**66** 13:20

**7**

**7** 40:5
**70** 12:22
**700,000** 29:10
    37:23 79:14 92:9
**75** 48:8

**8**

**8** 89:5
**80** 44:16 89:23
**80,000** 48:8
**86** 8:14
**888** 10:17
**8th** 10:17

**9**

**90** 23:6,20 27:1,7
    33:11 37:21 38:9
    53:7 55:7,14 59:9
    59:19 60:2,18
    62:17 63:2,4
    69:25 71:10 75:8
    79:15 80:2 84:6
    87:2 91:7 92:10
**9006** 33:2 34:13
    93:7
**90292** 9:18
**919** 11:10
**95** 44:14 82:20
    89:21
**97** 19:12 21:19

**a**

**aaronson** 14:1
**abandon** 69:15
**abandoning** 54:7
**abide** 35:16
**ability** 28:23 47:8
    47:20 49:12 56:6
    75:18 89:14
**able** 31:11 54:14
    61:3 74:20 78:9
    90:2 94:9

**absence** 74:22
**absolute** 37:11
**absolutely** 39:19
    39:20 66:15
**access** 37:6 68:7
    81:4
**accessed** 58:17
**accommodate** 75:23
**accommodating** 19:8 95:1
**accommodation** 32:15
**accommodations** 47:1
**accomplished** 80:7
**accord** 85:4
**account** 28:20
    48:23 94:24
**accountability** 2:10 3:8,14 9:9
    13:19 30:12 38:6
    42:7,16,23 44:20
    57:1,10,14 63:3
    80:19,24
**accountability's** 3:11
**accountable** 96:5
**accurate** 43:16
    97:4
**accurately** 53:8
**accusations** 81:9
**achievable** 94:19
**achieve** 94:20
**achieved** 56:3
**achieving** 75:14
**acknowledge** 47:1
    47:23 82:2
**acknowledged** 46:22
**acknowledging** 44:7

**acting** 95:7
**action** 79:8
**active** 88:12 92:17
    95:3
**activity** 71:9
**actual** 33:5 43:23
    44:7
**actuality** 55:10
**ad** 2:9,15,18,20
    3:5,8,10,13 4:1,6
    6:18 7:15,17,19
    8:20 9:2,9 10:16
    11:2 13:19 14:10
    24:7,13 25:15,15
    25:19 26:23 27:2
    27:4,10 30:11
    31:25 32:7,23
    38:5 42:7,23
    44:12 49:22 57:1
    57:10 62:6,13,15
    63:3,5,10,10,19
    63:24 64:14 66:16
    66:23 70:13 71:2
    71:5,8,14 74:10
    79:1 80:18,24
    85:8 86:18,24
    87:3
**adam** 16:19
**add** 93:8
**addition** 4:22 29:9
    63:22 81:10 87:22
    88:24 89:25
**additional** 37:22
    40:18 48:17 73:22
    75:10,23 80:20
**address** 43:15
    53:10 55:23 70:23
    82:25
**addressed** 60:8
    68:22
**addressing** 26:7
    42:7

**acting** — right column

**adequate** 28:9
    44:25 75:17
**adjudicate** 69:10
**adjusted** 36:14,18
**administer** 69:14
**administrative** 26:16
**administrator** 69:10
**admission** 24:18
**admit** 31:14 55:14
    55:18
**admitted** 31:20,22
**admittedly** 50:3
**ads** 36:22 78:15
    78:16 83:1
**adult** 44:15,16
**adults** 89:21,23
**advance** 37:9
**advanced** 70:8
**adverse** 92:20
**adversely** 55:6
    64:25
**advertisement** 35:15 36:1
**advocate** 22:2
**affect** 62:1
**affidavit** 69:5
**affirm** 33:5
**age** 89:22
**agenda** 2:1 18:16
    21:10,22,25 60:18
    94:8
**agent** 28:8
**ago** 67:23 82:22
**agostino** 16:8
**agree** 27:2 32:6
    34:21 51:23 52:19
    52:21 93:14,15
    95:13
**agreed** 68:15
    86:22 93:20,21

[agreeing - available]                                        Page 3

**agreeing** 67:4
68:1
**agreement** 20:11
57:18 80:18,25
81:6,11,20 94:9
**ahca** 42:23
**ahead** 31:22 57:8
70:16 80:15 95:9
**air** 36:18
**aisha** 12:16
**akin** 13:9 61:12
**al** 7:11 9:16 18:3
**albeit** 38:12
**alex** 13:6
**alexander** 9:16
15:19
**alfano** 14:21
**alix** 15:20
**allege** 85:13
**allocation** 53:11
**allowed** 28:16
**allowing** 61:14
**alluded** 54:5,8
67:16
**alongside** 39:4
**alternative** 38:10
43:4
**amended** 2:1
18:15
**american** 63:22
**americans** 86:1
**americas** 8:21
12:3 14:13
**amount** 27:24
43:7 64:2 65:25
66:11,18 73:7,24
77:24 78:21
**amounts** 82:15
**analogous** 21:4
**analysis** 47:15
92:18 93:4,15,18
**analyze** 54:13

**andrew** 2:14,16
7:14 9:6 14:21
30:18 46:6 60:21
**anecdotal** 50:4
**anne** 9:16
**ans** 63:10
**answer** 31:11,12
37:18 41:10 51:17
51:19 70:6,7,10
74:24 85:18 92:4
**answered** 66:1
**anticipate** 51:5
**anticipated** 41:1,4
41:10 51:22 53:20
65:25 66:18
**anybody** 21:7
22:21 68:15 73:17
**anyone's** 20:19
**apart** 88:4
**apologies** 31:7
**apologize** 40:3
**apology** 31:4
**apparently** 90:5
**appear** 51:20 62:1
64:22
**appearing** 14:18
**appears** 64:14
89:19
**applicable** 66:22
**application** 54:24
**applied** 45:17
76:18
**applies** 35:16
**apply** 50:9
**applying** 33:21
75:20 83:4
**appreciate** 25:8
36:12 41:5 51:25
52:5 71:7 72:19
73:19 76:11 86:5
95:22
**appreciated** 25:6
34:21 73:9

**approach** 36:25
69:2 85:4
**approaching**
52:13
**appropriate**
21:11 24:11 29:20
33:4 40:7 57:5
69:24 70:7,15
74:4 76:7 77:6
94:1 95:7
**appropriately**
60:8
**approved** 35:12
72:6 88:8
**approving** 2:6
3:19 6:16
**approximately**
77:1
**april** 91:8,8
**archer** 15:11
**aren't** 52:15
**argue** 64:21 67:2
88:21
**argued** 38:16
64:16 87:3 91:17
93:5
**argues** 38:16
**arguing** 37:20
49:21 62:14,17,24
63:2,4 70:2 92:22
**argument** 26:6
28:8 42:21 53:3
65:10 67:5 68:19
92:23
**arguments** 49:24
64:7 68:25 76:22
80:24 84:3 93:17
**arik** 13:16 61:11
**arisen** 67:22
**arrange** 18:14
**artem** 15:12
**ascertainable**
44:3 45:4 88:19

**88**:25
**aside** 55:9 83:18
95:12
**asked** 49:25 51:11
65:23
**asking** 45:18 53:5
58:23 60:7 68:12
**aspire** 73:16
**aspiring** 73:18
**assert** 42:18 54:20
54:21 83:25 88:9
**asserted** 88:15
**asserting** 33:18
60:15 88:4
**assertions** 29:3
42:8
**associated** 12:2
40:22
**association** 63:18
**assumption** 34:16
**assumptions**
66:10
**assure** 34:18
66:14
**assured** 77:14
**assuredly** 21:20
**attempting** 43:14
**attention** 19:15
20:19 67:20
**attorney** 8:13,20
9:9,16 10:9,16
11:2,21 12:2,10
12:20 13:2,10,19
14:2,10 37:15
57:18
**attorneys** 8:4 9:2
10:2 11:9 75:4
87:21 96:11
**august** 40:6 68:14
**authorized** 18:10
53:17
**available** 28:16
74:1 76:8 81:15

95:13
**avenue** 8:5,21
  10:10,17 11:10
  12:3,11 13:20
  14:3,13
**average** 44:15,17
  89:22,24
**avoid** 95:20
**aware** 19:6 32:19
  40:15 45:23 51:15
  67:19 71:14
**awareness** 78:14
**axiomatic** 72:21

**b**

**b** 1:21
**back** 31:12 41:6
  49:13 52:25 60:19
  82:19
**balance** 41:21,24
  70:7 72:23 74:13
  77:6 82:4 85:21
**balances** 72:1
**balancing** 71:19
  85:18
**ball** 11:13
**balls** 39:16
**bankr** 2:4
**bankruptcy** 1:1
  1:12,23 26:16
  29:12,18,19,24
  33:2 34:13 39:4
  45:8 58:25 92:14
  92:16 96:10,15
**banner** 79:1
**bar** 2:5,11,18 3:6
  3:12,18 4:3,4,14
  5:13,17,22 6:6,15
  6:20,21 7:2,8,14
  7:18 18:18 24:10
  25:5,13,24 26:25
  27:6,15,25 28:22
  29:8,18,22,23
  30:5 31:16,19

32:3,5,11,17,20
33:1,7,11,15,21
33:22,24 34:4
35:25,25 36:8,23
37:9,21 38:17
40:17,22 41:8
42:1 46:1,14,21
47:6,8,17 50:5
52:7,9,22 53:6,24
55:21 56:1,2,24
58:13 59:16 64:13
65:1 67:7,11,14
68:19 70:21 72:5
72:6,7,10,13,16
72:25 74:18 75:2
75:16,25 76:4,6
77:20 82:9,11,21
83:9,10,17 84:11
86:2,7,12 87:11
88:9 89:6,25
90:14 91:5,10
92:14,15,20 93:7
93:13,18,22 94:10
**barbara** 5:8 6:7
  16:2
**barely** 83:12
**barker** 16:12
**barred** 32:22
**based** 42:17 43:3
  43:25 48:21 67:22
  68:10 70:1 81:14
  89:18 91:14 93:23
**baseline** 28:18
**basic** 75:6
**basically** 92:6
  93:12
**basis** 18:13 24:15
  33:2 35:10 70:21
  79:19 80:2,4
  81:13 82:9 90:20
  91:20 92:17
**baum** 9:8 57:11

**beacon** 11:9
**bear** 46:17
**bearing** 41:15
**began** 67:6,7
  94:11
**beginning** 40:9
  61:7 96:7
**behalf** 2:7,15,20
  3:2,8,13 4:6 6:7
  7:5,10,14,19
  24:22,23 57:10
  61:12 70:13
**belief** 90:18
**believe** 18:7 19:22
  21:5 23:1 24:4
  25:8,17 26:25
  27:6,16 32:4 33:6
  33:9 37:16 38:2
  43:3,11,12 44:19
  49:1 56:25 57:1,5
  57:24 59:10 60:23
  62:15,20 65:24
  68:21 70:19 71:1
  71:13 72:5 73:14
  74:17 75:15,16,17
  75:24 76:7 79:5,9
  80:19 81:12 84:19
  88:13 90:25 92:12
  93:23,24 94:7,13
**believed** 88:13
**believes** 76:3,10
  83:16
**benefit** 93:4
**benefits** 56:2
  59:10
**benjamin** 8:9
**bensinger** 10:15
**best** 43:10 65:3
  66:24
**better** 23:8 56:3
  61:5 62:9 74:23
**beyond** 45:9 55:4
  78:23 79:2 89:2

92:14 93:25
**bickford** 16:20
**billboard** 35:15
  36:1
**billboards** 89:12
**billing** 58:3
**binary** 82:4
**birnbaum** 15:1,4
**bisch** 5:4 16:4
**bismuth** 17:2
**bit** 62:9
**blog** 36:2
**bloggers** 89:13
**blood** 95:16
**blue** 63:17,17
**board** 12:20
**boca** 63:15
**books** 44:6,22
  45:3,10
**boots** 36:25
**bottom** 21:19
**braunfeld** 12:1
**breadth** 46:24
  47:13,15
**brevity** 21:11
**brief** 19:11 26:1,6
  76:18 81:24
**briefly** 42:7 70:22
  76:16,25 80:15,16
**briefs** 7:8
**bring** 19:14 23:21
**bringing** 52:18
**brink** 22:10
**broad** 72:7,9 88:6
**brooks** 16:12
**brought** 67:20
  94:23
**brozman** 15:20
**bryant** 13:12
**budget** 78:12
**budgeted** 77:20
**budgets** 47:25

[built - claimants]                                                      Page 5

**built** 95:9
**bunch** 23:7 40:9
**burden** 26:16
**burdened** 19:7
**business** 39:24
  84:21

**c**

**c** 2:4 3:1 8:1 10:17
  18:1 30:2 97:1,1
**ca** 9:18
**calculate** 79:21
**calendars** 39:2
**calhoun** 14:25
  15:3
**california** 45:13
**call** 19:18 21:24
  68:14,18
**called** 20:13 57:1
  87:3 92:13
**campaign** 59:9
**canada** 89:24
**canadian** 44:16
**candid** 92:2
**canonized** 82:13
**can't** 48:18 50:22
  50:22,23 51:2
**caplin** 10:1 11:20
**care** 48:1
**carefully** 34:6
  77:3
**caring** 85:10
**caroline** 15:24
**case** 1:3 8:19
  18:18 19:11 20:25
  23:1 29:22 33:16
  33:19,23 34:10,13
  34:19 38:22 39:3
  39:14,18,23 40:16
  40:19 43:4 44:23
  44:24,24 45:2,5
  45:11 48:3,24
  49:13 50:4 53:7
  54:4,21 55:6,15

56:7 57:11 58:10
59:22,23,25 60:4
60:20 61:23 62:8
62:10,12 63:6
64:9 69:20 70:9
70:21 71:10,13,20
72:7,10,11,14,16
72:21 73:4,11,16
73:22,23 74:5,15
74:21,24 75:10,17
75:24 76:5,8 77:9
80:5 81:3 83:22
83:25 84:11,15,18
85:6,7,20 86:7,16
86:22 87:7,12,25
88:6,16,22 90:14
91:12 92:16,17,21
93:8,11 94:4,5,11
94:14,17,18,25
95:7,15
**cases** 25:10 26:12
  26:14 28:4 29:15
  29:24 33:16 38:1
  39:15 42:17 43:25
  44:11,19 45:2,16
  47:11 61:15,24
  63:12 73:5 82:17
  88:12 89:3 90:11
  90:13 91:17,22
  92:15
**cash** 19:25 20:4,9
**catrina** 16:5
**cause** 29:8 32:5
  36:9 43:25 47:6
  47:17 70:20 72:4
  74:22,23 75:8,15
  84:5 90:25
**caused** 94:15
**causes** 72:20
**cede** 46:3 57:4
**ceding** 42:6
**center** 63:16

**centre** 13:21
**certain** 37:25
  45:15 49:1 65:4
  68:17 73:5 90:2
**certainly** 40:10
  57:4 72:11 79:19
  80:7
**certainty** 39:25
**certified** 97:3
**challenges** 71:6
  71:11,14,19 74:13
**chambers** 8:14
**change** 31:2,5
  81:7
**changed** 53:17
  55:11
**changes** 35:12
**chapter** 33:16
  38:14 39:6 43:25
  71:20 85:3 88:1
  89:2 91:12
**charged** 54:23
**charlotte** 17:2
**chart** 23:15 61:19
  62:3
**cheeky** 23:18
**chicago** 12:20,23
**chief** 23:13
**child** 63:16,17
**children** 66:22
**chooses** 58:19
**christian** 15:16
**christopher** 4:6
  6:23 8:24
**chu** 16:9
**chutchian** 16:25
**circle** 10:3 11:22
  20:8
**circuit** 33:20
  47:10 55:24 88:16
**circulation** 35:6
**circumscribed**
  47:9

**circumstance**
  53:17
**circumstances**
  19:4 32:14 33:3
  45:1,21 46:22,23
  47:19 49:16 55:11
  69:20 75:20 88:5
  92:5
**cities** 48:15 62:20
  71:4
**citizen** 87:18
**citizens** 85:11
**city** 12:20
**claim** 5:17,22 6:6
  27:20 28:17 32:10
  32:21,21 34:4,18
  34:19 35:4,9,22
  36:2 37:4,6,14,15
  37:16,19 48:21
  50:1 54:2 55:20
  58:14 59:1,14,16
  59:17,21 64:20
  65:2,15,16 69:4,5
  72:16 75:7 81:14
  83:25 88:9 89:15
  89:15,17 90:8,10
  90:11,13,14,17,17
  90:18,19,21,23
  91:4,19 93:1
**claimant** 35:13
  44:21 58:10 61:25
  63:13 64:3,4
  68:21 87:19
**claimants** 2:21
  7:20 10:9 14:12
  25:25 26:24 27:13
  27:18 28:10,16
  29:7,16,20 32:9
  32:12,19 33:1,4
  35:2 37:13,14
  40:23 42:11,25
  43:11,12 44:2,4,9
  45:16 62:8 65:12

65:24 66:11,11,17
81:3 83:24 87:10
87:13,14 88:2,3,6
88:7,14,25 89:1
**claims**  4:19 5:3,8
5:17,19,22,23 6:2
6:6,10 28:12,24
28:25 29:1,4,17
32:17 33:2,18
34:23 37:2,17
40:18,21 41:1,2,6
41:10,16 42:1,15
42:17 43:13 50:6
51:3,4,20 52:6,8
52:15 54:20 55:15
55:17,21,24 56:10
59:19 65:25 66:9
66:12,18 67:10,12
67:18 69:10 73:2
73:7,9 74:6 75:5
81:9,12 83:16
87:18,25 88:4,15
89:14,16 91:22
**clark**  15:21
**class**  10:9 59:18
**claudia**  16:17
**clear**  26:24 27:23
32:4 33:14 34:11
44:1 50:15,19
55:11 78:5,6
84:14 86:14 89:19
94:12
**clearer**  52:20
**clearly**  18:22
39:11 47:4 71:17
**clerk**  22:20 25:1
30:4 36:18 44:10
50:3 65:23 66:8
**clerk's**  18:12,14
**client**  18:5
**close**  82:19
**closed**  48:16

**closures**  36:22
**code**  29:19
**cohen**  12:1
**coleman**  15:5
**colleagues**  25:3
**collectively**  75:13
**color**  16:23
**combat**  48:13
**combined**  82:9
89:13
**come**  18:6 20:18
31:11 43:21 48:20
49:13 52:25 53:25
96:10
**comes**  55:24 82:7
92:23
**comfortable**
72:18
**coming**  50:1 73:2
78:17 88:3
**commend**  52:18
**comments**  68:23
70:23,25
**commercials**
36:18
**commit**  75:13
**commitment**  21:8
**committed**  78:13
**committee**  2:9,20
3:8,11,14 4:9 7:7
7:10,19 9:9 13:10
13:19 14:10 23:14
24:7,14 25:14,18
26:23 27:2,9
30:11 38:5 42:7
42:23 44:12,20
49:22 57:1,10
61:7,13 62:11
63:14,15,15 70:14
71:2,5,8,15 74:10
80:19,24 83:21,23
86:17,24 92:1
93:20 95:4,23

**committee's**  2:18
3:5 7:17 93:15
**committees**  57:12
83:21 85:8 86:18
**communications**
25:22
**community**  89:9
**companies**  12:2
20:7
**company**  11:9
39:6 57:16,17,21
96:9,15
**comparison**  60:5
**compelled**  54:18
**compelling**  64:15
73:1
**competing**  68:24
69:17 74:1 82:3
85:19
**completely**  18:4
34:21 74:10 85:3
**completing**  32:16
**complexities**
21:18
**complexity**  73:11
**compliance**  33:22
**complicated**  22:1
22:19 39:3,3
93:16
**complied**  34:1,8
**comply**  33:7
**component**  29:1
**comprehensive**
72:7 75:2
**comprised**  62:23
**compulsory**  54:18
**computer**  83:11
**concept**  86:22
**concerned**  22:6
**concerning**  80:25
**concerted**  22:4
**conclude**  75:1
87:16 93:18

**concluded**  35:7
53:21,25 54:10
77:5 78:19 96:21
**concluding**  67:24
**conclusion**  75:24
76:2
**conclusive**  52:12
**conduct**  29:10
**confer**  68:8
**conference**  96:3
**confident**  88:1
**confirm**  22:17
53:12 54:13
**confirmation**  55:3
**confirmed**  54:16
**conflicting**  26:23
**confronting**  71:11
74:11
**connected**  87:15
**connecticut**  12:11
**connection**  25:4
30:5 32:2 46:20
46:21 48:24
**connectivity**  20:5
**consensual**  54:7
59:24 68:3
**consensus**  95:3,9
**consent**  38:25
84:8
**consenting**  2:13
2:15 7:15 9:2
22:12 24:14 27:5
30:10,19 36:5,6
36:10 37:8,24
38:3 46:7 47:22
48:5,9 60:22
62:14,15,21 63:24
64:22 67:25 70:14
71:2,15 77:8
86:24 87:2,3
**consider**  64:6
**considerable**  28:1

**consideration**
26:18 33:4 45:24
76:12
**considerations**
28:20
**considered** 28:7
43:10 55:5 69:19
72:2 77:3 86:15
91:17
**considering** 33:10
42:13 81:13
**consistent** 33:15
68:21
**conspiracy** 81:10
**constantine** 10:13
**constituencies**
26:22 28:21 44:11
45:25 71:22
**constituency** 74:5
**constituents**
88:12
**construct** 59:8
**constructive** 71:9
**constructively**
74:15
**construe** 35:25
**consulting** 44:10
**consuming** 69:13
**contact** 18:14
42:24 45:14 81:3
**contacted** 61:4
**contain** 92:19
**contained** 45:15
**contemplated**
21:2 56:12
**contemplating**
77:25
**contention** 40:25
**context** 33:10
40:19 82:8,8
91:12
**contingent** 2:21
7:20 14:11 26:24

**continue** 22:6
25:10 56:11 73:12
75:12
**continued** 56:21
73:15
**continuing** 92:17
**continuous** 79:6
**continuously**
79:10
**contract** 81:5
**contracts** 79:18
**contractual** 20:10
**contractually**
78:13
**contrary** 75:9
83:14
**contrast** 55:9
**contribution**
95:18
**control** 33:22 55:4
58:17
**cooper** 12:1
**core** 22:9
**corp** 45:8
**corporate** 19:23
**correct** 68:5 77:6
77:11 79:24 92:3
**correctly** 36:10
79:5
**cost** 29:5,10,13
39:25 41:24 42:13
43:4 69:12 71:22
79:14,15,16 80:9
82:5 84:12,21
88:11,13 92:8,10
92:11 93:4,8
**costing** 75:11
**costly** 43:24
**costs** 29:12 37:23
37:25 55:11,12
92:13
**counsel** 18:19
25:22 30:9,10,11

54:23 56:25 57:3
57:3 68:9 76:25
92:1
**counterproducti...**
39:14
**counties** 62:20
71:4
**counting** 85:2
86:21
**country** 48:16
75:21 77:2 82:21
86:12 97:21
**county** 62:17
**couple** 19:15
80:20 84:6 87:17
**course** 24:9 31:15
38:9 43:8 52:5
79:7
**court** 1:1,12 18:2
18:7,11,11,23,25
19:4,7,14 20:1,24
21:17 22:8,24
24:1,2,4,20,24
25:12 26:9 28:10
28:23 29:20 30:16
30:21 31:5,9
33:13 34:12,25
35:7 38:7 40:13
40:14 42:4,9,10
44:13 45:9,20,25
46:5,9 47:10,16
49:9 50:10,13,16
50:18,25 51:2,8
51:11,14,16,25
52:2,4 53:1,18,20
56:16,19 57:6,8
57:20 60:9 61:2,4
61:10,18 70:11
72:6 73:21 75:1
75:17 76:3,5,6,10
76:13,16,20 77:13
77:18 78:20 79:12
79:22,25 80:8,11

80:14,22 81:23
86:5 88:7,16 90:7
93:14
**court's** 75:25 93:7
**courts** 33:17 34:5
34:6 35:24
**court's** 25:9 34:21
**covered** 20:4
76:23
**covering** 19:21
**covers** 18:16
19:22 20:14
**covid** 26:21 27:21
27:25 32:16 33:8
36:12,15,18 37:3
41:22 45:23 46:13
47:24 48:4,5,8
49:6 64:12,16,18
64:25 65:8,14
68:7 69:4 71:6,14
77:3 86:13,15
90:1,5,25 91:15
91:23 93:11 94:23
**creadore** 14:20
**create** 75:10
**created** 42:19
**creating** 58:2
73:22
**creation** 58:2
**creative** 89:13
**credible** 28:8
**creditor** 28:21
45:25 59:5,20
64:8
**creditors** 7:7,10
13:11 20:20 25:14
25:18 27:4,10
44:11 53:14 59:12
59:18,25 60:2,8
61:7,13 62:11
63:14,14 82:25
83:23,24 86:17
87:14 95:4,23

[crisis - defense]                                                              Page 8

**crisis** 71:6,16,16
71:19,25 77:3
86:12 91:23 94:22
**critical** 49:12 74:7
87:24 92:15
**crockett** 15:7
**cross** 22:18,24
63:17 66:4
**cullen** 4:15 5:12
15:22
**cullen's** 6:9
**cullens** 4:17 5:1,6
5:18 6:1
**current** 21:18
41:8 47:19 89:7
**currently** 52:7
78:13
**custody** 58:16
**cynthia** 5:15
16:18
**cyrus** 12:14

**d**

**d** 1:22 16:15 18:1
**d.c.** 48:14 62:17
**daily** 18:13
**damage** 84:21
**dan** 5:19
**daniel** 11:17
**danielle** 14:19
15:8
**dashboard** 30:23
**data** 41:6 88:19
**database** 58:15
**date** 2:5,11,19 3:7
3:12,18 4:3,5,14
5:13,17,22 6:6,15
6:20,22 7:2,9,14
7:18 18:18 19:22
20:2 24:10 25:5
25:13,24 26:25
27:6,15,25 28:22
29:8,18,22,23
30:6 31:16,19

32:3,5,11,17,20
32:21 33:1,7,11
33:15,21,22,24
34:4 35:3,25,25
36:8,24 37:10,21
38:17 40:17,22
41:8,11 42:2 46:1
46:14,21 47:6,8
47:17 50:5 51:4
51:21,22 52:7,9
52:22 53:7,24
55:21 56:2,3,24
58:13 59:16 64:14
65:1 67:8,11,14
68:19 70:21 72:5
72:6,8,10,13,16
72:25 74:18 75:2
75:16,25 76:4,7
77:20 82:9,11,22
83:9,10,17 84:11
86:2,7,12 87:11
88:9 89:6,25 91:5
91:10 92:14,15,20
92:22,24,24 93:7
93:13,18,22,25
94:10 95:10 97:25
**dated** 30:24
**dates** 41:6
**dating** 74:20
**david** 15:10 24:22
25:3
**davis** 8:3 18:21
25:2
**day** 23:3,4,6 27:12
28:6 29:21 34:17
36:6,8,19 38:9
55:7,7 60:18
62:17,25 63:2,4,8
63:21 70:5 72:3
73:3,3,5 77:11
83:3,19 84:10,24
85:17 86:8,23
87:2 92:9,10,14

**days** 4:5 5:2,19
6:10,22 21:14,15
25:13 27:1,1,3,8
27:24 28:4 29:22
32:6 33:11 37:21
46:2 53:7,15
54:11 55:13,14
59:9,10,20 60:2
67:8,23 69:25
71:10 75:8 76:8
79:13,15 80:1,1,1
80:2,7,10 84:5,5,5
84:6,6,6 88:9 91:8
92:7 93:19
**dc** 10:4 11:23
12:12
**deadline** 4:18 5:2
5:7,18 6:2,10
33:18,21,24,25
34:8 35:17,17
36:3 67:14 68:10
68:15,17 72:17
74:18,19 78:22,24
78:24 91:7 92:16
**deadlines** 92:15
**deal** 35:1 41:25
54:25 71:9 75:19
**dealing** 55:24
60:6 74:14
**dean** 10:13
**debevoise** 11:8
**debt** 87:13
**debtor** 1:9 35:21
35:23 57:14 58:6
58:18,21,23 59:12
69:6
**debtor's** 4:2 6:19
**debtors** 2:10,13
2:23 3:6,11,17 4:9
6:14 7:1 8:4 18:19
18:22 19:23 20:15
23:9 24:5,23
26:17 27:16,23

28:1,6,8 32:6 33:3
35:8,11 37:21
38:13,20,21 39:15
42:23 43:9 44:4,5
44:10 45:12,22
46:25 47:4 50:2
51:20 54:16 65:23
66:7,8,15,16,19
77:4,5,17,19 79:3
79:13 81:4 83:7
83:20 84:1 85:9
85:19 86:7,16,18
88:2,7,18 90:2,10
90:22,24 91:9,11
92:6 93:1,19 94:2
95:2,6 96:16,17
**debtors'** 26:2,11
27:12,18 29:6
35:5 36:11 37:1
37:23 38:12,16,19
41:9 43:6 44:20
44:22 51:13 54:23
**debtor's** 45:3
**december** 20:1
**decided** 54:7
69:15
**deciding** 47:5
**decision** 40:16
44:21 47:4
**decisions** 54:15
**declarant** 25:1
**declaration** 3:1,10
22:21 24:18 26:5
30:2,5,6,13,14,17
30:24 31:8,13,15
31:21 32:19 36:17
41:18 77:21 82:24
83:8 89:5,7,18
**deepen** 82:16
**deepest** 82:10
86:2
**defense** 60:15

**deferred** 57:17
80:18,25 81:6,10
81:20
**deficiencies** 93:24
**definitely** 23:10
34:15
**definition** 44:2
**del** 9:18
**delay** 26:15 29:7
32:9,12 43:22,25
53:7 56:7 72:20
72:21 75:11 77:9
82:5,6,6 84:21
92:20
**delayed** 38:2
**delaying** 60:1
**delivered** 27:22
58:13
**demanded** 37:12
54:21
**demands** 71:6
**demonstrable**
56:7
**demonstrate** 36:7
**demonstrates**
73:2
**denial** 37:19
**denied** 34:9
**dennis** 16:9
**dentons** 96:4
**department** 8:12
45:13 54:19
**depend** 45:1
**depleted** 43:5
**described** 53:9
**designed** 20:11
44:14
**desire** 74:13 88:15
**desperately** 84:22
**despite** 21:17
**detail** 85:1
**detailed** 19:19
20:3 83:8 89:5

90:12
**details** 53:12
**determine** 27:24
72:4
**determined** 45:21
**determines** 69:23
**determining** 28:4
47:16 69:24
**developed** 28:13
36:11 44:12
**developing** 43:9
**deviation** 29:18
**devoting** 73:3,4
96:15
**diagrams** 87:16
**dial** 4:12 60:23
**diametrically**
61:25 87:1
**didn't** 21:17
23:17,18 38:18
50:14 60:13
**died** 48:7
**difference** 64:2
**different** 23:3
42:16 46:14 49:16
49:17 52:22 61:22
61:23 62:7 63:5
65:19 70:9
**differently** 52:14
81:2
**difficult** 19:2
66:10 69:13 91:4
**difficulties** 29:17
32:16 41:21
**difficulty** 29:4
**diligent** 95:4
**diluted** 78:5
**diminishing** 76:22
77:23
**direct** 29:10 30:25
31:14 37:23 43:1
43:4

**directed** 59:9
**director** 6:4
**disagree** 51:17,19
**disallowed** 32:22
90:20
**disappointed**
95:25
**discovery** 49:2,5,7
49:10 54:9,10
67:19,22,24 68:15
91:18 92:18 95:19
95:20
**discussed** 28:20
32:1 37:1,8 42:15
47:13 64:5
**discussing** 49:1
67:6
**discussions** 66:7
**display** 78:16
**disposal** 79:20
**disproportionally**
48:6
**disputed** 22:21
**disputes** 49:2
67:20
**disruption** 46:12
**dissenting** 85:7
**distancing** 91:2
**distributes** 88:2
**distribution** 36:24
**distributions** 20:4
**district** 1:2 12:21
62:16
**dividend** 20:9
**dividends** 20:4
**dizengoff** 7:9
**docket** 5:12 22:2
22:6,13 24:7 27:6
30:8 61:17
**doctors** 58:3
**document** 2:11,14
2:19 3:2,7,13,20
4:5,20,24 5:3,8,14

6:3,11,22 7:3,9,18
49:12
**documentation**
37:10 65:18
**documentations**
28:25
**documents** 7:2
21:3 54:13 68:8,9
68:10,12
**doesn't** 22:4
31:20 50:7,8
**doing** 40:11 43:7
55:12,12 74:17
75:9 88:2 96:12
**doj** 54:25 55:1
**dollars** 29:14 38:1
39:24 75:12 79:14
84:12,20
**donald** 57:24 75:22
87:5
**donald** 14:20
**don't** 21:7,7 22:3
22:3,20 23:1,8
24:14 30:19 31:12
40:7,15 50:2 51:9
52:4 56:9 57:24
**door** 50:23,23
**doubt** 57:24 75:22
87:5
**drain** 1:22 4:17
4:22 5:1,6,11 6:1
6:9 18:2
**dramatically** 51:6
51:12
**draw** 87:16
**dream** 39:20
**drug** 5:24 57:22
58:8,9
**drysdale** 10:1
11:20
**due** 29:7 38:9
68:12 69:4
**dym** 12:19

| e | | | |
|---|---|---|---|
| **e**   1:21,21 8:1,1 11:17 18:1,1 97:1 | **effectiveness** 83:13 | **entry**   2:4 3:17 4:2 4:4 6:14,19,21 7:13 | 55:18 64:24 65:3 65:9,10 73:2 77:4 83:4,5,6 91:14,21 |
| **earlier**   39:21 57:15 65:2,23 66:2 67:1 68:4,6 68:23 69:18 73:10 | **effort**   22:4 40:18 42:14,19 52:22 55:17 66:19 94:20 | **environment** 42:19 | **ex**   63:25 |
| **earliest**   39:10 | **efforts**   25:4,5,9 43:5,23 45:9 53:9 | **equally**   20:2 | **exact**   61:24 73:7 |
| **early**   20:12 22:3 31:18 38:14 40:25 49:8 67:7 68:3 73:16 86:10 88:8 | **eisenberg**   9:8 57:11 | **equation**   79:9 | **exactly**   39:1 73:23 94:18 |
| **earned**   89:12 | **either**   41:9 51:10 65:9 87:15 89:17 | **eric**   16:10 | **examination** 22:24 45:2 |
| **earth**   43:14 | **elaborate**   82:11 | **erica**   15:21 | **examine**   22:18 66:4 |
| **easier**   55:22 65:20 72:19 | **electronic**   57:17 | **especially**   25:8 | **example**   21:5 36:16 66:16,21 90:12 91:8 |
| **easily**   79:20 80:12 | **element**   89:11 | **espoused**   69:19 | |
| **east**   9:10 | **elements**   27:22 | **essentially**   21:10 23:25 | **exceed**   41:11 44:18 |
| **easy**   90:11,11 | **elicited**   86:20 94:6 | **established**   72:6 | **exception**   86:23 |
| **ecf**   2:1,7,11,16,21 2:23 3:3,8,14,20 4:7,10,12,15,20 4:25 5:4,9,15,20 5:25 6:4,7,11,16 6:23 7:5,11,15,20 | **emily**   15:15 17:1 | **establishing**   75:25 | **exceptions**   34:12 34:14 35:20,24 75:18 |
| | **employs**   96:9 | **estate**   29:12 54:23 59:11 72:8 75:11 93:9 | |
| | **enacted**   46:25 | | **exclusively**   54:25 83:7 |
| | **encountered** 72:11 | **estates**   26:16 29:5 43:6 | **excusable**   33:3 47:6,7 48:21 49:17 59:18 75:19 |
| **echo**   70:25 | **endeavor**   33:3 42:15 | **ester**   25:3 | |
| **eckstein**   2:20 7:19 14:16 70:12,13,16 70:17 | **ended**   28:21 | **estimate**   37:23 | **excuse**   34:3 92:2 92:25 |
| | **engage**   54:18 91:2 | **estimated**   92:9,10 | **executive**   6:4 |
| **ecro**   1:25 | **engaged**   53:9 | **estimates**   50:1,2 79:13 | **exhibits**   19:20 57:25 |
| **ed**   5:24 | **enhancing**   55:9 | **et**   7:11 9:16 18:3 | **exists**   32:5 |
| **education**   12:20 | **enormity**   60:4 | **evaluate**   54:14 | **expect**   35:13 59:16 |
| **edward**   5:4 11:6 16:4 | **enormous**   86:1,1 | **evaluating**   28:3 | |
| | **ensure**   22:25 | **evaporation** 39:24 | **expectation**   95:17 |
| **effect**   38:18 69:6 69:7 86:14 91:10 92:21 | **ensuring**   69:11 | **event**   33:16 76:5 76:10 | **expected**   66:8 |
| | **enter**   46:1 | | **expeditiously** 53:22 |
| **effective**   21:2 65:12 69:12 72:25 73:25 | **entered**   46:14 57:17 | **events**   48:11 | **expended**   72:9 |
| | **entire**   39:23 59:11 73:4 | **eventually**   45:13 | **expense**   43:22 71:22 72:8 |
| | **entirely**   44:9 63:4 | **everybody**   19:1 39:7 72:17 | |
| **effectively**   27:17 74:16 87:13 | **entities**   3:16 6:13 10:2 11:21 19:24 20:16 25:15 27:11 86:25 87:22 | **everybody's** 21:18 | **expensive**   82:10 86:2 |
| | | **everyone's**   86:6 | |
| | **entitled**   35:2 | **evidence**   22:22 26:5 30:1,13,15 31:14 50:19,22 51:8,10 52:12,13 | |

experience 93:9
experiencing
32:16
explain 61:22
explained 69:1,8
exposure 89:22,24
express 22:5,7
expressed 53:23
extend 2:18 3:6
3:12 4:18 5:2,7,18
5:23 6:2 7:18
25:13 27:25 32:5
34:5 37:21 45:19
47:5,17 50:5
52:22 56:1 76:11
82:16 85:24 86:7
93:22
extended 27:7
32:20,21 33:24
37:24 40:17 58:4
80:6 83:17 84:11
84:11 91:7 93:14
93:19
extending 2:5,10
3:18 4:3,4 6:15,20
6:21 7:14 32:11
42:1 46:1 53:6
56:2 70:3 75:16
extension 4:14 7:2
7:8 18:17 23:4,6
25:24,24 26:25
27:2,13,14 29:7
29:11,21 30:7
32:3,10,13,17
33:1 34:9 36:6,8
38:17 41:24 46:2
46:21 49:21 53:4
55:7,8 56:3,4
60:13,18 61:6
62:14,17,22,25
63:2,4,8,20,21,25
64:13 65:8 67:3
68:20 69:23,24

70:5,21 72:4,20
77:10,23 78:1,3
84:19 86:8,12,23
87:2,4 91:5,9,16
91:20,24 92:7,8,9
92:10,14 93:10,23
93:25,25 94:10
extensions 27:6
33:11 69:2 93:6
93:16
extensive 35:11
72:10 75:2 89:1,8
extent 29:16
48:22 75:4
extra 19:5 79:13
84:9
extraordinarily
20:3
extraordinary
83:8,10,12 85:23
88:8,10 89:4
91:12
extremely 47:9
72:14 95:25
eyes 82:19

### f

f 1:21 17:1 97:1
face 75:21
fact 25:11 27:20
28:16 29:9 32:24
33:20 36:14,22
43:11 44:1,17
45:7 48:1 53:7
56:4,6,9 61:22
64:24 69:14,19
72:24 73:1,3,10
73:17 74:25 81:4
81:8,10 88:5,15
88:21 91:6,22
factors 28:7 66:13
94:1
facts 22:20 48:17
75:21 83:5

failed 36:7,12
failure 32:20 33:7
37:17
fair 69:12,22
77:24
fairly 20:13 30:24
40:16,25
fairness 55:10
68:22 69:21 83:5
93:6
faith 87:5,8 90:18
94:7
fall 38:14,15
39:20 53:5,6 68:3
73:18
fallback 76:9
false 90:17
family 6:7 13:2
14:2
fantasized 82:23
far 44:13 46:18
48:10 66:9 78:3
83:2,10 89:2 93:4
95:6
farash 6:7,7
farther 48:10
fashioning 44:25
fear 39:21
feasible 43:16
february 24:10
31:18 46:15 49:20
67:7 88:8
fed 2:3
fee 54:24
feel 62:9 74:25
feeling 31:10
feels 70:1 74:23
feld 61:12
fiduciaries 84:2
85:3,5,11 95:7
fiduciary 70:4
83:24

fifth 29:21
fighting 56:5
86:11
figure 23:24 73:25
file 5:17,22 6:6
27:19 28:17 33:2
34:4,17 35:4 36:2
37:14,15 39:10,15
40:5 42:1 47:4
48:21 56:10,12
58:14 59:21 63:9
63:12,19,23 65:16
66:11 69:4,5
72:16 73:9,18
74:9 75:4 83:25
89:14,16 90:13,23
filed 2:6,14,19 3:2
3:7,13 4:5,14,18
4:20,24 5:3,8,12
5:14,19,24 6:2,3,6
6:11,22 7:4,9,14
7:18 19:18 20:2
22:12 26:4 27:5
34:24 37:5 39:12
40:25 41:1,3,11
41:16 46:20 48:21
50:6 51:4,21 52:9
52:16 53:5 55:15
55:18,20,21,24
57:15 58:25 59:14
59:19 61:16,20
62:4,4 65:25 66:9
66:17 86:9
filing 5:2,7,19,23
20:2 22:10 28:12
28:24,25 29:1,4
32:9,13,17 33:4
37:2,5,9 38:13,22
40:20 42:1 54:6
59:13 73:16 75:7
89:15 90:8,9,10
90:14 91:3,7,21
92:25 94:1

filings 24:8 60:12
fill 65:14,19,21
filled 65:17
filling 64:20 65:1
final 21:2
finality 87:25
finally 68:19
finances 54:14
find 12:9 41:20
  46:23 47:14 75:22
finding 41:23
fine 18:23 24:14
  26:9 40:14
finegan 3:1 22:18
  25:1 26:6 30:2,3
  30:17,20,22 31:4
  31:6,7 32:19
  36:17 41:9 51:3
  51:16,18,19,23
  52:24 56:15 65:10
  66:1,4 77:19 78:8
  78:10 79:4,18,24
  80:5,10,12
finegan's 65:9
  78:9 89:5,18
finegan's 31:14
  41:18
fingertips 80:13
finish 42:6 68:14
finson 9:15,20
firm 9:15 96:3,4
first 18:5 23:9
  28:7,22 31:25
  40:4 46:18 64:10
  70:25 78:7 83:20
  86:9 89:15 92:7
five 57:2 81:25
fix 67:17
fixed 44:15
flesh 95:16
flexibility 90:1
flier 36:23

floor 10:10 12:3
focus 47:20 57:11
  64:11
focused 46:16
  47:11 59:9 64:18
  64:20 71:5
focusing 71:8
fogelberg 15:23
fogelman 14:23
follow 23:23 36:2
  42:22
followed 24:13
foot 96:11
footnote 40:5,6
forbid 34:1
foregoing 97:3
forgotten 20:22
  21:8
form 2:6 3:19
  6:16 21:3 31:18
  37:6,17 42:18
  64:20 65:2 86:4
  89:14
formal 67:7
formed 63:3
forms 28:17,19
  37:5,16 65:15,17
  65:18,20,20
forth 32:18 39:1
  41:17 53:10 61:16
  61:20,21
forum 39:1
forward 25:10
  26:15 34:23 54:4
  74:15
foster 94:7
found 30:8 67:4
  71:24
four 83:1
fourth 29:16
framework 68:1
frangules 6:4

frankly 19:13
  38:25 47:10 48:10
  55:22 61:23 64:5
  69:21,25 70:6
  82:17 87:5 91:19
  91:25 92:22 96:8
free 28:15
frequency 44:16
  89:22
friday 52:7 95:24
front 27:21 77:2
  79:7,10
fronts 21:20
full 36:23 71:11
  73:19
fully 95:9
function 93:13
fundamental
  68:22 69:21
funded 87:12
funds 90:4 96:8
  96:10
further 25:21
  42:2 61:4 77:10
  84:19 94:3 95:20
fusion 57:16 59:8
  59:21
fusion's 58:16
future 75:19

g

g 4:25 18:1
gained 90:5
games 96:8
gamut 76:23
gange 15:24
gather 50:22
  80:13
gauntlet 33:17
gelfand 4:25
general 2:5,11 3:6
  3:12,18 4:3 6:15
  6:20 27:15,25
  29:25 36:8,21

37:21 40:11 44:25
  80:20 86:7,21
  87:21 96:11
generalized 29:2
  29:3
generally 34:7
  45:10 79:22 80:3
  80:5 89:3 91:2
general's 57:18
gentin 14:19
genuine 75:23
geoff 15:17
george 10:6 14:25
  15:3
gerard 13:7
getting 35:14 53:4
  68:7 74:8 76:21
  83:13 92:21
give 19:11 26:2
  33:3 35:9 39:8
  62:8 69:7 74:23
  92:6 96:10
given 40:8 62:11
  68:24 77:23 79:13
  87:16 88:14 91:25
go 21:2 23:9,12
  31:3,22 40:1
  50:23,23 57:8
  62:7,19 69:9
  70:16 79:2 80:15
  82:19
goal 38:16,21 39:5
  73:20 89:20
goes 78:3
going 18:4 22:24
  34:23 42:11 51:18
  55:1,5 56:14 60:1
  60:4 65:7 66:4,4
  67:17 71:23 73:7
  73:8,12 74:3 76:6
  80:4 82:24 84:15
  89:10

**good** 18:2,20
  23:24 24:21,25
  26:12 34:7 35:23
  46:9,10 61:8,11
  70:12 74:25 87:5
  87:8 90:17 93:10
  94:7 95:7
**goods** 82:3 85:19
**governmental**
  2:20 3:16 6:13
  7:20 10:2 11:21
  14:11 25:15 26:23
  27:11 69:3 86:25
  87:22
**governments**
  64:17 70:14 71:3
  71:15 87:21 94:17
  96:12
**grandfather**
  63:16
**grant** 59:17 94:2
**granted** 27:3
  31:17 63:20 77:11
  84:8 86:4 93:2
**granularity** 20:22
**great** 35:1,1 43:21
  71:9 85:8
**greater** 92:13
  94:21
**greatest** 48:22
**greatly** 25:5,8
  41:11
**gregory** 14:6
**ground** 36:25
  76:19
**group** 2:15 4:1,6
  6:18 7:15 8:20 9:2
  10:2,16 11:2,21
  13:18 25:15,16,19
  25:23 27:5,10,11
  31:25 32:8,23
  37:9 42:16 57:2
  57:13 59:11 60:2

  60:7 62:6,13,14
  62:15,21,23 63:3
  63:5,10,10,19,24
  63:25 64:14,20,23
  64:24 66:16,23,25
  76:25 77:9 82:15
  84:4,4,4 87:1,2,3
  91:19
**groups** 3:16 6:13
  22:2,6 27:4 44:12
  62:5 63:9 64:10
  64:11 66:14 86:23
**group's** 38:3
**guardsmen** 48:15
**guess** 78:20 80:3
  83:14
**guessing** 66:2
**guided** 46:25
**guilty** 57:22
**gump** 13:9 61:12

**h**

**h** 2:19 7:19 14:16
**haberkom** 16:19
**hage** 14:1
**half** 20:8
**hammered** 55:2
**hand** 19:24,25
  20:6,7,15,17
  58:13 75:14 90:24
  93:9
**handled** 21:22
**hands** 84:22
**happen** 39:11
**happening** 23:11
  49:6
**happy** 61:6 79:21
  80:13
**hard** 21:12,13
  33:21 37:25 53:13
  64:12,21,24 79:14
  83:20,21 84:16
  92:9,11

**hardship** 69:4
**hardships** 33:7
  77:7
**harm** 87:9 92:23
  94:15,15,15,21
**harmed** 64:16
**harold** 11:18
**harrison** 4:15,17
  5:1,6,12,18 6:1,9
  15:22
**hasn't** 20:18
**hauer** 61:12
**hayden** 15:5
**hayley** 16:24
**heading** 71:21
**headlines** 48:13
**heads** 52:15 85:2
  86:21
**health** 36:24 48:1
  94:22
**healthy** 19:3
**hear** 18:19 46:11
  61:6,9 82:21
  95:11
**heard** 18:22 51:16
  60:14,19,25 63:4
  64:4 68:25 71:17
  73:13 74:12 76:15
**hearing** 2:1 18:4,6
  18:9,11,13,16
  19:5 21:21 22:15
  22:19 30:22 31:19
  38:8 48:25 68:14
  72:15 83:6,7
**hearings** 85:7
**hearsay** 50:13
  83:17
**heather** 15:7
**heaven** 34:1
**hedge** 96:7,10
**held** 53:24
**help** 69:15

**helpful** 23:15
  34:23 79:5,10
**herring** 54:2,3,4
**herrings** 84:10
**hesitant** 53:11
**he's** 23:13 51:15
**high** 48:6 59:14
  88:10
**highly** 84:20
  87:12 93:22
**hint** 65:6
**hipaa** 43:18
**hirschfield** 12:7
**history** 82:11
**hit** 22:12 62:3
  64:12 65:7
**hits** 41:16 83:11
**hoc** 2:9,15,18,20
  3:5,8,10,14 4:1,6
  6:18 7:15,17,19
  8:20 9:2,9 10:16
  11:2 13:19 14:10
  24:7,13 25:15,16
  25:19 26:23 27:2
  27:4,10 30:11
  31:25 32:7,23
  38:5 42:7,23
  44:12 49:22 57:1
  57:10 62:6,13,15
  63:3,5,10,10,19
  63:24 64:14 66:16
  66:23 70:13 71:2
  71:5,8,15 74:10
  80:18,24 85:8
  86:18,24 87:3
**hoe** 40:9
**hold** 20:20 60:1
  67:10
**holdings** 44:24
  45:11
**holly** 16:23
**home** 23:21 39:7
  89:12 94:23

hon 1:22
honestly 69:22
honor 18:20 19:11
19:19 21:21 22:14
23:10 24:3,21
25:11 26:1,8,10
26:11 29:25 30:13
30:18 31:7,24
34:20 36:4 38:2
38:23,24 40:4
41:12 42:5 45:22
46:2,6,10,16,19
47:3,21 48:10,18
48:19,23,25 49:14
49:15,20,25 50:4
50:9,14,21 51:9
51:23 52:1,17,23
53:2,8,18 54:3,4,8
54:9,17,22 55:4
55:13,16,19,22,25
56:8,14,18,20
57:7,21 59:17
60:6,10,21,22
61:8,13 64:2
65:22 66:14 68:5
68:24 69:22 70:10
70:12,17,18,25
71:7,17 72:3,24
73:13,21 74:18,24
75:15,22 76:2,14
76:17,24 77:12,16
78:10 79:5,21
80:16,17,23 81:17
81:24 83:3 96:19
honor's 76:11
hope 19:2 39:18
40:10,10 64:19
68:2 78:5 81:25
94:15
hoped 53:20
71:23 73:9
hopefully 46:10
73:21

hospital 34:2
63:15
hospitalized
93:12
hospitals 10:16
63:11 64:17 85:15
hours 22:12
howard 15:14
hudson 13:3
huebner 8:8 18:20
18:21,24 24:3,16
25:7 38:24 53:8
53:11 54:15 56:20
56:21 60:10 80:19
81:22,24 96:19
huebner's 95:10
huebner's 46:11
hughes 12:19
human 52:10
humanly 39:6
hundred 79:16
hurdles 59:13
73:20,22
hurley 13:15 49:1
49:4
hwang 16:10
hybrid 22:9
hyde 7:25 97:3,8

i

i.e. 35:3,18 88:6
89:12
iceberg 19:12
21:19
idea 35:23
ideas 23:8
identified 57:23
identify 18:8
identities 44:3
ii 2:5
iii 4:4 6:21
il 12:23
ilana 10:20

illegal 57:22 58:12
illegality 58:1
images 66:21
impact 37:3 45:23
47:19 48:5,9
50:22 67:3 68:7
impacted 47:19
47:24,25 81:19
impacting 41:23
impacts 37:3
impediment 74:7
impediments
75:10
imply 65:12
important 19:9
21:6 22:23 33:9
33:16,25,25 37:20
61:15 63:12 82:1
96:9
importantly 92:8
impossible 65:4
impracticable
69:13
impractical 43:24
44:9
improve 82:16
incidental 74:19
included 61:19
81:16
includes 37:2 71:3
including 24:7,18
26:23 27:4 28:23
29:12 32:9 33:7
33:16 37:8 43:17
44:11 58:20 81:9
86:16 89:12 92:17
increase 36:20,20
49:10 57:14
increased 27:20
36:21 43:7
increasing 26:15
incredible 82:15

incurred 40:1
75:13
independent 12:2
12:10
independently
86:17
indicated 68:3
indiscernible
85:15
individual 4:1,6
4:19 5:3,8,13,19
6:2,10,18 8:20
11:2 25:16,18,22
25:25 27:4,10
31:25 32:8,24
35:2,10,14 42:11
49:3 63:7 64:24
79:8 88:19,22
94:16
individualized
29:17 35:7,18
88:18
individuals 32:9
41:3 43:16 57:3
65:20 79:6,11
85:9,13 86:10
91:1 94:16
inevitably 77:10
92:20
influenced 58:3
information 4:12
28:15,19,24 42:25
43:15,17 44:4
45:12,14 58:18
59:5 81:3,14
89:15 90:13
informed 95:3
informing 58:11
initial 68:25 91:6
initiatives 39:5
injure 60:3
injured 58:11
59:1

injury   5:23 25:21
  63:1,6
input   82:15 86:6
instance   78:7
institution   69:3
instructed   96:7
instructing   96:6
instructive   62:7
insufficient   59:6
intend   22:18
  54:16 60:25
intended   32:11
  56:2 65:18 67:13
intensely   71:8
intent   60:25
interactions   62:12
intercompany
  19:22
interest   26:13
  49:11 60:15 86:16
  86:22
interestingly
  86:25
interests   69:18
interfere   73:20
interim   54:24
internal   48:1
interrupt   38:7
  59:22
interrupted   80:15
interview   50:23
introduction
  18:15,18
investigating
  67:18
invitation   32:12
involved   42:14
  48:2 49:2 72:12
ira   7:9
irrelevant   84:25
ish   53:15,15
isn't   24:6 41:13
  41:18 59:1

issue   18:17 22:15
  41:14 47:10,12,18
  49:25 53:10,22
  58:9 60:1,4,5,7
  61:15 62:1 64:10
  65:3,5 66:5,24
  82:4,4 87:7 93:12
issues   47:12 54:5
  55:1,1,6,23,25
  60:6 64:5 67:22
  87:7
issuing   96:2
item   21:10 74:20
it'll   34:17
it's   18:11,21
  19:14 21:15 22:4
  26:11 27:18 30:8
  30:24 31:20 33:15
  33:17,23 35:23
  40:7 41:20 46:6
  47:18 48:10 49:19
  50:10,11 52:13
  54:3,4,8,21 56:4
  56:20 57:1,2
ives   49:3,4 68:7,9
  68:11
i'd   26:1 36:5 42:6
i'll   22:21 25:11,13
  31:11 38:8,25
  49:13
i'm   18:4 31:2 38:7
  40:15 41:2 46:17
  49:24 52:12 56:14
  60:7
i've   31:19 54:8

### j

j   4:6 5:4 6:23
jacquelyn   25:2
james   2:7 3:2 7:4
  8:10
january   19:21
  31:15 57:20 81:11

jasmine   11:13
jeanne   3:1 25:1
  30:2 65:9
jeffrey   11:14
jennifer   15:16
jeremy   16:6,11,14
jim   21:23,25
  24:21,22 41:12
  77:16 82:13,14
joanne   4:20
job   26:11 54:25
join   46:11
joined   85:19
joke   82:12
jones   15:10
joseph   14:1,6
joshua   12:17
judge   1:23 4:17
  4:22 5:1,6,11 6:1
  6:9 18:2
judgment   77:6
  82:7,7 84:7
july   68:17 86:8
  91:8,9 93:1
jump   33:13 38:25
june   1:16 18:18
  21:15 39:17 40:9
  41:5 52:6,8,20,21
  53:16 73:8 75:25
  78:17,22 86:8
  97:25
jury   66:24
justice   8:12 12:9
  54:20
justify   29:5 33:6

### k

kajon   15:13
kaminetzky   8:9
kapler   16:21
karsh   12:17
keenly   71:5
keep   20:24 33:10
  74:15 75:9 78:14

keeping   29:12
kenneth   2:19 7:19
  14:16 70:13
kevin   11:25 76:14
key   26:22 28:7
  33:18 44:10 74:17
  74:19 86:15
kickback   57:22
kind   22:11 78:25
king   66:2
kleinman   16:6
knew   22:9 35:21
  59:15 73:6
know   18:8 20:19
  21:6 22:3 23:8
  26:10 38:8 50:2
  50:16 52:10 58:14
  63:2 65:4 67:10
  67:12 68:16 74:5
  78:1,4,25 79:2,25
  81:4,8,8,11 82:9
  82:12,13,18 83:19
  84:24,25 85:3,17
  95:25
knowable   35:23
knowing   30:25
known   39:25
  43:12 44:3 58:18
  82:25
knows   20:24
  26:11 28:10 94:13
knudson   25:3
kramer   14:9
  70:13

### l

l.p.   1:7 2:7 3:3 4:7
  7:5,11
labovitz   11:15
lack   23:8
laid   77:7
land   23:16
landing   28:6
  40:11

**large** 19:7 52:8
**larger** 41:25
**late** 33:4 42:1
48:21 55:15,20,24
59:14,19 67:6
69:5
**latina** 78:18
**laurie** 15:18
**law** 3:5 9:8,15
13:18 22:11 33:15
83:5 88:16
**lawrence** 14:23
**lawyer** 51:13
**lawyers** 50:18
**lay** 23:16 40:7
**layout** 84:25
**leads** 91:24
**leave** 22:21 52:4
92:24 94:20
**led** 86:18
**ledanski** 7:25 97:3
97:8
**lee** 10:8
**lees** 13:6
**left** 40:9
**legal** 26:6 90:20
97:20
**legally** 44:8 70:5,6
70:10 85:12 92:3
**legitimate** 29:17
34:3,3 69:11
92:25
**length** 69:24
72:13 83:10
**lengthy** 34:10
92:14
**leona** 6:11
**letter** 4:14,17,22
4:22,22 5:1,6,11
5:11 6:1,9 7:8
21:25 35:3,14,18
40:25 60:12,18
63:1 67:21 68:13

**live** 50:21 69:21
**lives** 46:12,13
91:15
**llc** 14:1 30:4
**llp** 8:3 9:1 10:15
11:1,8
**local** 64:17 70:14
71:3,15
**localities** 77:1
**logic** 42:22 45:18
78:22
**long** 20:15 46:17
47:17 49:23 55:19
56:1 67:21 72:14
91:12
**longer** 29:13,23
33:11 43:15 53:3
53:19 55:16 56:3
56:24 60:12 61:6
92:8,22,24,24
93:5
**longest** 82:10 86:2
**look** 34:6 45:7,11
51:2,4
**looked** 69:17 82:8
**looking** 30:22
36:16 45:10,18
52:6 96:16
**lose** 78:25
**loss** 39:24
**lost** 47:7
**lot** 62:12 68:4
77:25 82:1
**loved** 90:15
**lowell** 9:20
**lower** 41:2,3 51:6
51:12,21
**lp** 18:3

**mackay** 17:1
**maclay** 11:25
76:14,14,17,24
**madison** 10:10
12:22
**maeglin** 14:22
**magazine** 78:16
**magic** 56:23 85:18
**mahlum** 15:6
**mail** 28:17 37:5
82:25 89:17
**mailed** 36:23
**main** 21:22
**maintain** 91:1
**maintained** 76:1
**maintenance**
78:14 80:4
**major** 23:19 39:5
40:18 48:15 49:20
60:6 89:11
**majority** 78:12
85:20 86:21
**making** 29:1 32:3
42:21 49:18 53:14
65:20 74:7
**mall** 9:17
**managing** 26:13
**manner** 2:6 69:12
72:10
**manufacturer**
57:23
**mara** 14:7
**marc** 12:6,7
**march** 49:8 67:7,8
**maria** 16:25
**marina** 9:18
**mark** 15:9 16:16
**marketing** 42:19
**marshall** 8:8
18:21 56:20
**maryanne** 6:3
**mass** 29:24 40:18
66:12 72:13

77:7 95:22 96:1
**letters** 22:1,9
42:10 86:9 91:6
**level** 78:14 87:23
**leventhal** 14:7
**levin** 14:9 70:13
**levine** 15:8
**lexington** 8:5 14:3
**lexus** 45:8
**light** 26:14,19
27:25 28:2 32:16
41:21 46:12 52:24
55:6,11 56:4
86:13 88:5 90:5
92:5 93:17
**lightner** 15:9
**likelihood** 48:19
55:20
**limited** 2:5,9,13
3:5,6,11,18 4:3
6:15,20 7:1 27:12
32:5 34:14 46:1
73:24 81:18 89:3
**line** 19:1 30:22
33:21 57:4 59:20
82:1
**lines** 41:19 64:3,4
64:6 77:2
**liquidation** 44:24
45:8
**listed** 60:18
**listen** 4:12
**listened** 83:20,21
84:2,3,3,3
**listening** 85:22
**litigation** 2:21
7:20 14:12 26:24
43:21 93:6,8
95:20
**litt** 13:18
**little** 39:21,22
62:2,9

**m**

**m** 2:14 7:14 9:6
10:6 16:1
**ma** 30:8

**massive** 20:11
72:8
**massively** 84:16
**material** 82:5
**materially** 51:21
91:22
**matter** 1:5 18:17
22:4 31:1 70:1
73:3,11 79:3 85:2
85:2
**matters** 19:7 24:6
48:24 81:19 92:16
**matthew** 12:25
**maura** 11:16
**ma'am** 30:23
**mcclammy** 2:7
3:2 7:5 8:10 21:23
21:24 22:22 23:23
24:17,21,22,22,25
26:10 31:11,22,24
34:20 36:4 38:23
41:9,12,12 42:5
42:10 51:17,24
66:1 68:22 77:16
77:16,18 78:7
80:15,16,23 82:13
84:14
**mcclammy's**
38:24 51:19
**mcgrail** 10:15
**mdl** 62:19
**mean** 32:21 53:8
61:2 79:25 83:22
**meaning** 87:6
**meaningful** 67:12
**means** 26:12
43:19
**meant** 32:15
**mechanic** 22:25
**mechanisms**
28:13 29:19 37:2
75:6

**media** 30:4 78:15
79:18 89:3,8,11
89:12 90:5
**mediation** 21:10
21:15 39:3,13
53:9,10,16,17,19
53:21,25 54:2,19
56:10 67:3,6,7,9
67:10 73:5,6,10
74:8 92:18
**mediations** 21:12
21:14
**mediators** 21:12
**medical** 37:6
57:17 58:3 63:15
90:12
**meet** 68:8
**mega** 84:17
**megan** 14:24 15:2
16:21
**mehri** 12:14
**member** 62:21
**members** 43:1
63:24 64:1 71:2,8
**memorandum** 3:5
7:13 22:11 23:6
**memory** 79:1
**mention** 21:9
**mentioned** 25:7
26:22 30:2 37:4
43:24 68:6 91:6
**mere** 33:17
**merely** 74:19 92:4
**merit** 64:22
**message** 78:3 79:6
83:13 89:22,24
**messages** 79:10
**messaging** 89:13
**meyer** 15:25
**michael** 3:10 9:13
**microcosm** 94:5
**microphone** 24:17

**mid** 91:8,8
**midst** 67:18
**midstream** 39:13
**mightily** 73:25
**milbank** 13:1
**million** 37:22
54:24 62:24 72:9
77:1,20 79:15
82:21 88:11 92:11
92:13
**millions** 29:14,14
38:1 39:24 75:11
75:12 84:20
**mind** 26:17 33:10
**mineola** 97:23
**minimized** 48:22
**minimizes** 55:20
**minimum** 78:15
**minute** 34:16,18
52:25 87:14
**minutes** 19:10
52:11 81:25
**miskowiec** 15:18
**missed** 33:23
38:19 40:4
**mitchell** 13:15
**moar** 6:4
**mobile** 36:24
**model** 72:7
**modified** 31:17
**modify** 66:20,21
**monaghan** 11:16
**money** 39:8 40:1
77:24 78:21 84:23
95:13 96:15
**month** 29:15
39:20 41:7 54:22
67:20 71:21 75:12
78:23 79:23 91:10
94:4 95:11
**monthly** 79:19
80:2,4

**months** 20:2
39:19 54:12,12
67:24 75:5,5 93:2
**morning** 18:2,20
24:21,24,25 46:9
46:10 48:13 61:8
61:11,14 70:12,24
**mother** 63:16
**motion** 2:3,10,14
3:6,12,17 4:2,10
5:17,22 6:6,14,19
18:19 22:10,12
23:4,5 24:5,5,8,9
24:12 25:12,20
26:4 30:6,7 31:17
31:19 34:4 37:10
38:12 47:4 61:5
84:7 85:24 86:6
86:19 89:6,7 93:1
94:2,5 96:17
**motions** 42:1
**motor** 45:14
**motors** 44:23 45:8
**movants** 23:3
**move** 25:10 26:5,6
26:14 30:1,14
36:5 53:22 84:7
90:4 94:25,25
95:9,15
**moved** 86:4
**movement** 5:13
**movie** 36:22 90:3
**moving** 22:22
53:19 54:3 74:15
75:10
**msg** 76:15
**multi** 3:16 6:13
10:2 11:21 27:11
39:2 62:23
**multifaceted**
28:11
**multiple** 19:7
21:20 62:5 87:22

94:6
**multistate** 25:15
**multitude** 43:10
**mulvihill** 15:17
**munger** 5:15
16:18
**municipalities**
62:21,24 71:4,12
**municipality**
62:18
**mute** 24:17 31:2
**myth** 90:12

**n**

**n** 8:1 18:1 97:1
**nailed** 55:2
**name** 18:5 43:15
58:1
**named** 49:3 57:25
**names** 58:15,18
58:20 59:8
**narrow** 59:8,11
**narrower** 57:12
**narrowly** 35:24
**nas** 63:16,17,19
66:16,17,20,22,23
**natasha** 11:15
**nathaniel** 16:22
**national** 36:21
48:14
**nations** 15:14
**native** 63:22
**nature** 22:8 36:13
52:10 87:6
**nearly** 48:8 59:24
**necessarily** 35:14
37:18 43:13 70:5
92:3
**necessary** 24:19
26:14 27:1 28:18
29:1 56:10 58:19
65:18 74:7 91:3
**need** 31:20 35:16
37:15 39:9 40:2

42:24 43:19 45:6
47:1,11 54:1,5,6
55:1 64:11,13
67:17 69:6 72:23
73:1 74:20 76:11
88:18,23 89:1
94:17,21,23 95:2
95:9
**needed** 37:12
59:10 84:9
**needs** 28:3 34:1
47:16 64:6 73:23
75:23 90:12 92:4
**neglect** 33:3 34:3
47:6,8 48:21
49:17 59:19 75:19
**negotiate** 69:13
79:22
**negotiated** 37:7
43:19 79:19
**negotiations**
67:13
**neiger** 11:1,6
**neither** 45:5
**networks** 36:19
**never** 56:11 59:15
66:6 82:17
**nevertheless**
87:24 94:8
**new** 1:2 8:6,15,22
9:4,11 10:11,18
11:4,11 12:4 13:4
13:13 14:4,14
48:13 57:2 78:24
91:18 96:4
**newly** 63:3
**news** 19:17
**newspaper** 83:1
**nicholas** 15:13
16:13
**nighbert** 16:23
**ninety** 4:5 5:2,18
6:10,22

**ninth** 94:4
**non** 2:13,15 7:15
9:2 19:25 22:11
24:14 27:5 30:10
30:19 36:5,6,10
37:8,24 38:3 46:7
47:22 48:5,9
60:22 62:15 67:25
77:8 87:1
**normal** 19:5 64:9
89:2
**normally** 34:9
**north** 13:20
**note** 18:25 20:18
21:25 25:13 33:25
36:10 37:20 46:19
47:8 53:23 58:13
65:22 66:25
**noted** 25:17 32:23
37:17 42:10 44:13
45:9 55:16 56:11
66:2 76:25 83:3
**notes** 36:17 46:18
**notice** 2:6 3:19
4:12 6:16 27:17
27:18 28:3,9,11
28:12 29:10 30:4
32:17,25 33:5
35:2,7,11,14,18
36:1,11,13,24
37:24 40:22 43:1
43:8,9,23 44:8,21
44:23 45:1,19
46:24,25 47:13,15
47:18 56:5 58:10
58:13,24,24 59:1
59:6,9 60:2 65:1
69:7 72:10 75:3
75:16 77:20 80:6
88:10,17,17,24
89:2,2,4,8,9,11,19
90:9 91:11,18
93:24

**notices** 88:20,22
**noticing** 28:8
41:15 43:4,5
44:13 65:6,7,13
65:16 66:20 78:2
81:18 90:3,4
**noting** 19:16,17
71:1
**notion** 78:23
90:21
**notions** 69:21
83:5
**notwithstanding**
46:24 49:22 71:16
74:25
**number** 21:1 28:5
28:7,15 35:1 41:1
41:2,15,16,17,25
43:17 52:8 59:25
65:24 66:9,11,17
67:12 68:9,10
82:2 83:8 85:8
86:1,9 88:6,9,14
**numbers** 41:11
52:19 80:1 82:18
86:1
**numerator** 59:25
**numerous** 74:1
**nuss** 6:11
**nw** 10:3 11:22
12:11
**ny** 1:14 8:6,15,22
9:4,11 10:11,18
11:4,11 12:4 13:4
13:13,21 14:4,14
97:23

**o**

**o** 1:21 18:1 97:1
**o'connor** 10:6
**objected** 67:9
**objecting** 4:4 6:21
**objection** 2:9,9,13
2:18 3:5,6,11 7:1

7:17,17 30:12
36:5 57:15
**objections** 26:7
33:10 38:3
**objectors** 30:9
**obtain** 42:24
43:14
**obvious** 73:21
**obviously** 19:1,5,9
19:12 20:5 22:23
23:18 60:13 68:2
68:13 83:17 84:13
85:4,10
**occasioned** 33:8
41:20
**occur** 67:13,14
**occurred** 67:14
**october** 4:23
**offered** 68:8
**office** 18:12,14,25
57:19
**offices** 48:16
**official** 7:7,10
13:10 27:9 61:12
83:23 86:17 95:4
**officio** 64:1
**offline** 68:9
**oh** 40:4
**okay** 18:24 24:2
24:16,20 26:7
30:16,21 31:9
34:17 40:14 42:4
46:5 51:25 53:1
56:16,17 57:6
60:9 61:2,19
70:11 76:13 77:13
78:20 79:12 80:14
80:22 81:23 86:5
**old** 97:21
**omnibus** 2:23
19:6
**once** 69:23

**ones** 48:3
**one's** 33:18
**ongoing** 26:20
45:23 73:12,12
94:15
**online** 27:21
28:15 35:15 65:17
66:22 78:15 89:11
89:16,17
**open** 32:12 39:1
76:4,6
**opening** 74:17
81:1
**operations** 22:16
23:24 56:22
**opinions** 64:3
**opioid** 42:12,17
43:2 45:20 64:12
71:25 77:3 81:13
86:11 90:16,22
**opioids** 42:20 58:4
59:4 87:15
**opportunity**
39:11 70:18 75:22
**opposed** 21:24
22:7 55:7 61:25
91:16 93:2
**opposite** 87:1
**opposition** 26:4
61:5
**optimized** 36:14
**options** 24:1
**order** 2:4,10 3:18
4:2,4 6:15,19,21
7:13 22:16 23:18
23:24 24:9,10,12
45:3 46:1,14
54:10 56:21 75:25
90:23 96:17
**ordered** 67:23
**orders** 43:20 96:2
**organizations**
86:11

**organized** 85:20
**origin** 22:3
**original** 30:5
31:16 37:9 82:9
83:6 89:6
**outlined** 81:19
**outreach** 89:9
**outset** 84:14 85:25
**outside** 48:14
**outstanding** 49:8
**overall** 85:20
**overcome** 59:13
**overlook** 37:25
**overly** 49:18
**overruled** 38:4
81:21
**overview** 26:2
29:25
**owned** 19:24 20:6
20:16
**oxycontin** 5:24
35:8 58:8 90:15

**p**

**p** 2:4 8:1,1 13:15
18:1
**page** 36:23 40:5
41:17 89:5
**pages** 19:20
**painful** 19:2
**pandemic** 26:21
28:14 45:23 64:12
90:1 91:1
**paper** 63:19
**papers** 25:21 67:5
69:1,8 72:15
81:17
**paragraph** 36:17
**parallel** 84:16,17
**parents** 78:18
**park** 13:12
**parochial** 94:8
**part** 27:16 31:21
41:9 47:15 62:18

78:19 82:7
**participate** 61:1
**particular** 32:8
33:6 45:1
**particularized**
45:16
**particularly** 27:3
34:9 35:22 44:23
64:16
**parties** 22:9 25:7
26:13 35:6 43:1
47:20 49:9,11,22
53:9 54:17 58:16
58:20,24 61:7,20
61:23 62:3,4,5,12
63:25 70:9 71:18
72:15 73:4 74:2
74:16 75:2 76:9
81:18 84:25 85:20
85:22 86:16,22
87:10 88:1 91:25
92:20 93:20 94:6
94:9,17,21 95:1
**parties'** 25:9
**partner** 21:23
**parts** 36:19
**party** 33:23 45:12
49:3 56:25 57:24
58:19 59:13,15
60:15 63:11,17
64:17 69:3 71:13
74:3 81:5
**party's** 58:9 59:4
**patient** 22:1
**patients** 58:2,6
81:2
**paul** 3:7,13 8:17
13:23 57:9,9
**pauses** 46:17
**payor** 63:17
**payors** 63:11
64:18

pearlman 16:11
pec 62:19
pending 7:1
people 19:3 21:6
  21:11 22:5 23:7
  23:25 34:15 35:20
  39:8 40:20 41:22
  41:25 48:7,8
  50:16,23 52:10,10
  52:14 53:16,19
  54:6 56:5 60:17
  62:24 65:14 69:9
  70:2 77:1 78:22
  78:25 82:21 84:6
  84:15,22 85:12
  87:6 88:24 93:6
  94:16,20 95:8,12
  96:9
peoples 91:15
  95:8
people's 46:13
  56:5
percent 19:12
  21:19 36:20 44:14
  44:16 48:9 79:9
  82:20 89:21,23
perception 40:20
  41:8,21 55:10
  91:15,21
perfect 94:24
  95:13
perfection 94:19
  94:20
perfectly 94:12
period 2:5 3:18
  4:3 6:15,20 19:21
  20:15 27:7 29:23
  34:10 41:8 42:2
  75:17 77:11,11
  84:9 91:11 93:5
  93:12
periods 29:23

perjured 90:16
permission 48:20
permit 55:17
perpetrated 58:6
person 60:23
  83:15 88:22
personal 5:23
  18:25 25:20 42:24
  63:1,5
personnel 37:15
persons 44:1
peterson 4:20
petition 19:22
pg&e 40:19 52:14
pharma 1:7 2:7
  3:3 4:7,24 5:24
  7:5,11 18:3 57:23
  57:25 58:8,12,25
  59:1,2
pharma's 58:1
phone 24:25 25:2
  30:3 96:4,5
pi 64:15
piers 12:19,25
pillsbury 9:1
  30:19 46:7 60:22
pioneer 34:13
  93:7
pis 64:14
pittman 9:1
place 28:13 29:12
  46:14 49:17,19
  71:10 72:25 75:2
plains 1:14
plan 21:1,3 27:17
  27:22 28:11 30:19
  36:11,13 38:14,22
  39:10,12,18 40:5
  44:13,23 53:5
  54:7,15 55:2
  59:24 73:16,18
  74:9 88:1,4 92:18
  92:18 95:11,18

plank 20:12
planned 36:25
planning 38:13
plans 39:2,15
play 96:8
players 63:12
pleading 23:15
  63:23 70:18 72:17
  76:2
pleadings 38:11
  38:19 39:1 40:24
  46:21 47:22,23
  61:21 62:4,5
  63:12 64:14 77:14
pled 57:21
plimpton 11:8
pm 96:22
podium 23:17,23
  42:6 46:3 57:4
point 23:14,16
  37:8 50:8,8 53:18
  60:10 65:22 66:23
  68:15 70:15 71:21
  74:8 76:21 77:22
  78:2 91:11 93:1
  95:10
pointed 59:13,23
  74:18
points 32:6 70:22
  80:17 95:8
political 49:18
  64:5
polk 8:3 18:21
  24:22 25:2,3
population 44:15
  44:17
portion 43:6
  87:14
position 25:19
  61:17,25 68:11
  70:20 74:12 93:21
positions 26:3
  61:20,21,22 64:22

68:24 70:8 77:4,5
  87:1,8
possession 44:5
possibility 32:24
possible 39:6,10
  39:12 48:22 65:19
  73:16 74:16
possibly 84:23
post 48:7
potential 25:24
  27:13,18 28:9
  29:6,16 32:8,12
  35:1,1 37:3 40:23
  42:25 43:10,13,20
  44:21 45:15 59:5
  81:3 88:7,14 89:1
  92:19
potentially 29:2,3
  35:9
pourakis 10:13
power 75:9
practically 96:14
practice 57:16
  58:16 59:8,21
precedent 47:10
preclude 60:14
predict 55:13
predictable 55:12
prefer 40:12
preferred 27:14
preis 13:16 61:8
  61:11,11,19 79:25
  80:1 85:1 92:1,2
premised 57:15
prepared 74:4
  76:4
prepetition 87:18
prerequisite
  56:12
prescribe 58:3
prescribed 35:8
  42:12,20 90:15,21

prescription 43:2
45:20 90:22
presence 87:17
present 61:1 93:6
presentation
24:13 31:23
presented 28:22
55:3 65:10 71:6
71:14 77:4
president 30:3
pretty 66:10
prevented 64:25
previously 37:1
prey 16:13
primary 24:1 48:3
53:10,21
prime 22:20 25:1
30:4 36:18 44:10
50:3 65:23 66:8
print 89:3,8
prior 24:9 36:11
67:14
private 64:4
probability 39:23
82:6
probably 19:20
20:12 21:11,16
22:15 23:2,9,12
23:13 41:6 52:6
55:18 56:22 62:6
76:21 82:10 86:2
problem 91:18
problems 74:11
procedural 33:17
proceed 24:11,15
46:8 49:13
proceeding 21:16
21:19 39:4
proceedings
96:21 97:4
process 28:13
32:17 34:23 37:2
37:4,17 39:4

55:10 56:11 57:14
60:3 65:8 69:7,9
69:11 77:20 89:19
90:8,9,9
processing 84:17
product 35:5,8
42:12
production 68:17
products 90:23
professionals 39:7
program 28:3,12
29:10 35:11 37:24
40:22 42:3 43:8
46:25 65:7,11,13
65:15,16,17 78:15
78:18 80:10 82:16
88:10 89:25 90:10
91:18 93:24
program's 78:12
programs 80:6
progress 53:15
73:14,14 74:7,20
prolonged 27:7
29:7
promise 20:12,22
promises 20:24
prompted 40:19
promptly 34:18
92:21
proof 5:17,22 6:6
35:4 37:4,6,14
50:10,11 65:1,15
65:16 89:14 90:8
90:10,11,14,17,17
91:4 92:25
proofs 27:20
28:17 50:1 54:2
56:10
proper 60:2
proposal 69:16
proposals 20:21
propose 26:5

proposed 4:23
18:17 29:21 35:11
88:7 91:9
proposition 44:25
prosecution 57:18
80:18,25 81:6,11
81:20
protected 43:18
protective 43:20
prove 50:8,8
90:15
proves 42:22
provide 28:23
29:19 43:1,23
44:21 47:9 58:24
64:15 76:8 88:19
88:22,23 89:1
93:5
provided 32:18,25
34:11 49:24 59:6
89:25
provides 18:12
27:19 33:9
providing 27:18
28:9 71:25 72:9
89:19
public 12:10 43:2
53:14 64:4 81:9
89:2 94:22
publicly 81:15
publish 78:16
purdue 1:7 2:7
3:3 4:7 5:24 7:5
7:11 18:3 20:5
42:12,12,18 43:2
45:20 57:23,25
58:1,8,11,25 59:1
59:2 81:9,14
90:16
purport 85:13
purports 62:19
63:7

purposes 21:23
pursuant 2:3
pursue 4:24 54:16
pushed 39:22
84:18,18
put 22:2 23:15
61:5 71:24 72:25
75:1 82:24
putative 10:9

q

quarrel 73:17
quarropas 1:13
question 30:16
37:18 40:15 49:25
51:11,16 52:23,24
56:14 77:19,22
78:8,11,20 79:4
85:18 92:24
questioning 30:20
questions 31:10
38:9 46:3 56:17
quickly 19:16
21:9 43:13
quinn 3:10 9:13
quipped 83:15
quite 19:9 89:20

r

r 1:21 2:3 8:1 18:1
97:1
rachmuth 3:7,13
13:23 57:7,9,9,10
57:21
radical 20:13
radio 89:9
raised 67:1 80:17
80:24
range 86:20
rare 33:23
rationale 69:19
rationales 64:15
raymond 13:2
14:2

[rdd - responding]                                                      Page 22

**rdd** 1:3
**reach** 43:10 44:14
  67:11 94:9
**reached** 30:9 47:2
**reaching** 44:14
  89:20
**react** 47:9
**read** 25:21 47:11
  70:18 77:14 96:1
**readily** 55:14
  88:19,25
**reading** 46:17
**ready** 59:24
**real** 91:21 92:23
**realize** 94:18
**realized** 43:13
  60:3
**really** 18:16 19:1
  22:4,15 24:8 25:4
  25:8 26:11,17,18
  27:22 33:18 36:7
  41:20 42:16,18
  44:13,24 45:19
  47:12 49:23 60:1
  61:14 64:6 74:20
  79:3 81:2 83:17
**reason** 18:9 34:2
  34:7 62:18 63:5
  65:24 76:20 93:10
**reasonable** 36:9
  45:4
**reasonably** 18:7
  35:22 44:3 93:13
**reasoned** 54:14
**reasons** 21:1 38:2
  43:17 45:22 64:13
  69:10 70:2 81:16
  81:16 92:6
**rebuttal** 46:4
  80:20
**recall** 48:25
**receive** 33:5 58:10
  58:13

**received** 26:19
  37:5 43:2 58:8
  59:3 75:3
**receiving** 57:22
  65:1
**recipient** 45:19
**recognition** 72:5
**recognize** 34:13
  64:11 72:18
**recognized** 34:12
  34:19 73:8 90:24
**recognizes** 90:7
**recognizing** 52:19
**recommend** 76:10
**reconciling** 28:2
**record** 20:23
  31:21 32:4 97:4
**recording** 18:10
  18:12
**records** 37:7
  43:18 44:6,22
  45:3,10,15 57:17
**recovery** 29:6
**red** 54:2,3,4 84:10
**reduce** 68:8
**reduction** 29:6
**reference** 77:25
**regard** 34:22 47:3
  49:19 94:2
**regarding** 5:13
  7:2
**regardless** 35:17
**regenold** 16:22
**registration** 45:15
**reiterate** 81:1
**related** 2:11,14,19
  3:1,7,12,19 4:5,19
  4:24 5:3,8,14 6:3
  6:11,22 7:2,3,9,18
  31:10 49:3 92:18
**relates** 66:20
**relationship**
  20:10

**release** 58:4
**releases** 21:2
  54:15 92:19 95:18
**relevant** 58:17
**relied** 44:19
**relief** 22:8 24:9
  29:20 35:25 47:9
  71:25 84:7 85:23
  86:3
**reluctant** 38:12
  38:25
**reluctantly** 46:20
**rely** 35:23
**remain** 22:6
**remains** 64:10
**remarkable** 86:20
**remarks** 57:5
  81:1
**remembers** 20:1
**reminder** 79:6
**reminders** 79:11
**repeatedly** 71:18
**replace** 36:25
**reply** 2:23
**report** 19:18,20
  20:3,3,8
**reported** 40:16
  49:4
**reporter** 18:7
**repository** 21:3
**represent** 62:20
  85:13
**representative**
  63:13
**represented** 87:20
**representing**
  62:24
**represents** 77:1
  95:4
**request** 4:14,18
  5:2,6,18,22 6:1,10
  27:12 28:17 34:8
  45:25 60:12 81:17

**requested** 32:14
  91:20 93:19
**requesting** 7:8
  79:14
**requests** 2:18 4:4
  6:21 7:1,17 26:13
  27:5 34:6 35:25
  43:18 49:5,8,12
  63:2
**require** 37:6
  48:17,18,19 66:10
  68:13 91:4,16
**required** 28:18
  35:10 44:8 45:3
  45:10
**requirement**
  37:11,13 75:7
  91:1
**requires** 40:13
**requiring** 69:8
**research** 36:19
**reserve** 46:3
**resnick** 12:19
**resolution** 67:12
  68:3 75:14
**resolve** 54:6
**resolved** 54:6 55:2
**resolving** 74:8
**resources** 71:23
  73:24 74:1
**respect** 21:21
  25:20 26:3,20
  28:23 31:25 38:5
  44:4 49:7 60:12
  80:18,23
**respective** 71:12
**respects** 70:20
**respond** 46:4
  47:20 49:5,9 56:6
  78:9 80:17 95:24
  95:24
**responding** 48:4
  49:11

**response** 7:8
36:14,17,22 41:13
49:7,24 67:1
78:10 86:9
**responses** 76:23
86:20 87:6
**responsibility**
48:3 74:14
**responsibly** 21:1
**rest** 31:23
**restructuring**
48:1
**result** 27:21 37:19
41:22 46:13 56:7
65:7,14 77:10
94:18
**resulting** 29:6
**retained** 57:3
**retread** 76:18
**return** 95:18
**returned** 68:11
**returns** 76:22
77:23 91:7
**reviewed** 26:18
31:13,19 61:18
**rey** 9:18
**rich** 12:16
**rick** 15:11
**right** 22:5,16
27:24 28:4 30:21
39:17 41:20,23
42:4 46:4 51:15
56:24 57:20 61:18
62:10 64:23 65:5
70:1,5,7,10 74:24
75:21,24 76:20
80:8,14,14,21
85:10,18 86:5
91:24 92:2,3
**ring** 67:6
**rise** 35:9
**risk** 39:24 82:5
84:21 88:3

**road** 97:21
**robert** 1:22
**robust** 28:11
72:24 75:1
**rockville** 13:21
**role** 86:11
**roles** 54:13
**rolling** 39:16
**room** 1:13
**rooyan** 5:9 16:2
**rosen** 11:14
**roughly** 89:21
**rows** 40:9
**royalty** 20:10
**royer** 12:1
**rule** 33:2 34:13
93:7
**rules** 29:19 34:13
93:16
**ruling** 76:9
**run** 29:22 37:25
43:8 69:11 80:10
**rundlet** 14:24
15:2
**running** 27:17
35:17 78:15
**ryan** 16:14,15

**s**

**s** 2:11,14,19 3:2,7
3:10,13,20 4:5,20
4:24 5:3,8,14 6:3
6:11,22 7:3,9,9,18
8:1 18:1
**sackler** 13:2 14:2
49:3 54:9,10
**sacklers** 67:19
95:23 96:13
**sackler's** 54:13
**sacks** 16:7
**sacred** 20:20
**safe** 19:3
**safeguard** 37:2

**satisfied** 75:7
**satisfy** 36:9 45:4
**saw** 79:1,2
**saying** 21:24 40:3
41:24 64:8 70:2
80:3 83:15 84:6
85:2 92:3 94:11
**schedule** 19:6
53:23,24
**schedules** 41:23
88:24
**scheme** 58:2,5,12
58:22 59:3,4,21
**schneider** 5:19
**school** 12:21
**schools** 12:10
**schwartzberg**
8:17
**scope** 46:24 47:13
47:15,18 56:5
**scorched** 43:14
**scott** 16:20
**scratching** 52:15
**search** 43:14
**second** 23:12
28:12 33:20 47:9
49:14 55:23 65:6
66:3 67:17 88:16
**secondary** 29:11
**secondly** 92:12
95:17
**secret** 54:22
**secretaries** 48:15
**see** 22:14 30:22
32:13 35:15 36:1
36:6 38:18 40:24
45:9 51:4 78:8
83:16 88:15 95:6
95:8
**seek** 29:20 33:2
33:11 42:24 83:25
**seeking** 22:7
38:13 61:6 85:23

**seeks** 23:4,6
**seen** 41:13 86:3
**send** 39:7
**sense** 23:2,9,12
56:22 62:8 80:8
92:5
**sensible** 23:22
24:3
**separate** 68:13
88:4
**separately** 85:12
95:15
**september** 4:19
5:7,14 6:3 38:15
38:17 40:6 49:9
54:11 68:12,16
93:2
**seriously** 24:6
**serve** 94:17
**set** 32:18 39:1
41:17 52:8 53:10
53:16 58:18 61:20
93:16 95:10,12
**seth** 15:25
**setting** 61:16,21
91:3
**settled** 87:18
**settlement** 4:24
68:1
**seven** 83:22
**shame** 95:15
**share** 53:12 95:14
**shareholder**
19:24,24 20:6,16
**shareholders** 20:6
20:16
**sharing** 60:24
**shaw** 9:1
**shayna** 16:7
**shea** 16:5
**sheila** 15:1,4
**shield** 63:17

| | | | |
|---|---|---|---|
| shira 16:3 | six 82:22 89:23 | speakers 71:1 | 7:7,13 22:11 23:5 |
| shoot 96:11 | 91:10 | speaking 60:14 | 25:17 26:2 32:2,7 |
| shore 4:6 6:23 | size 59:24 66:12 | 80:3 89:3 91:2 | 34:21 49:18 61:16 |
| 8:24 | 76:6 | special 54:23 | statements 26:3 |
| short 42:2 | skadden 54:23 | specific 37:15 | states 1:1,12 2:13 |
| shorter 56:4 | skalet 12:15 | 40:12 58:20 62:2 | 2:15 7:15 9:2 |
| shortly 52:9 | skapof 12:6 | 63:23 68:20 73:1 | 22:12 24:7,14 |
| show 35:21 59:15 | skepticism 53:24 | 75:18 89:16 | 27:5 30:11,19 |
| 73:22 90:22 93:10 | skip 56:14 | specifically 35:19 | 36:5,6,10 37:9,24 |
| showing 23:15 | skorostensky | 37:7 58:11 63:14 | 38:3,13 46:7 |
| 84:5 | 15:12 | 69:2 90:3 94:8 | 47:22,24 48:5,9 |
| shown 36:19 | slaugh 16:15 | speculative 29:3 | 54:19,20 60:22 |
| shutdown 28:15 | slightly 21:25 | spend 19:10 | 62:15 67:25 70:14 |
| side 53:14 62:13 | small 60:5 | spent 27:20 28:1 | 71:3,4,12,15 |
| 62:18 63:1 65:4 | social 78:15 89:11 | 77:24 78:4,13 | 77:21 85:4,7,11 |
| 85:7 | 91:2 | 82:14 | 85:14,15,16 86:24 |
| significant 49:10 | socol 12:19 | spoken 46:20 | 87:2,17,19 88:23 |
| 53:3 71:23 74:6 | soft 37:25 92:13 | 57:12 74:17 | 89:21 |
| 76:5 | solutions 18:11,12 | spokesman 23:13 | state's 48:16 |
| significantly 48:2 | 30:4 97:20 | spots 36:21 | static 36:13 |
| similar 22:2 | somewhat 31:17 | springer 16:17 | stating 18:5 |
| similarly 54:4,17 | 38:12 91:4 | square 9:10 | stationed 48:14 |
| 61:23 | sonya 7:25 97:3,8 | st 82:14 | step 76:7 85:23 |
| simple 40:3 58:24 | soon 20:25 34:24 | stakeholders | stephen 4:25 |
| 65:19 75:6 79:16 | 39:6 84:23 | 23:19 39:8 60:20 | steps 90:8 95:14 |
| 94:10 | sooner 52:18 | stand 44:25 | steven 12:15 |
| simplified 28:19 | 55:21 68:4 | standard 36:9 | stevens 10:8 |
| 89:14 | sophisticated | 45:4 47:5,7 48:22 | stewards 26:12 |
| simply 32:10 | 83:11 | 49:16 75:20 | stick 85:21 |
| 40:20 43:16 45:19 | sorry 22:16 38:7 | standing 70:19 | stock 14:19 |
| 56:1 64:7 65:4 | 41:2 49:24 | stands 31:8 | stone 38:21 |
| 70:1 90:23 91:20 | sort 19:12 23:3,5 | start 71:25 95:1 | straightforward |
| sincerely 87:8 | 23:16,20,24 56:21 | started 73:6 | 37:16 |
| single 21:10 22:15 | 56:23 60:15,19 | starting 67:13 | strategic 87:9 |
| 45:19 82:15 | 69:23 82:12,13,19 | 86:10 | strategies 66:20 |
| sit 39:17 71:5 | sought 43:19 | state 3:16 6:13 | strategy 43:9 |
| sits 62:11 63:13 | 45:12 87:2 | 10:2 11:21 27:11 | strauss 61:12 |
| situated 61:24 | sounds 23:22 | 48:2 62:13,23 | streaming 36:21 |
| 62:10 81:2 | southern 1:2 | 64:17 77:8 85:14 | street 1:13 8:14 |
| situation 21:18 | sovereign 85:5 | 87:19,21,21,22 | 9:3 11:3 12:22 |
| 47:14 52:14 | speak 18:5 61:14 | 94:12 96:11 | strengthen 42:2 |
| situations 21:5 | 63:7 66:25 70:15 | statement 3:16,17 | strikes 70:7 |
| | 77:18 85:12 | 4:1,9 6:13,14,18 | |

stroik 11:17
strong 94:6
strongly 85:21
struck 85:21
subdivisions
85:14
subject 32:22 81:6
submission 30:1
30:12,14
submissions 26:20
submit 32:20 69:5
74:24
submitted 5:11
30:5,6,7 32:7
67:21 70:19
submitting 32:2
subpoenas 43:20
subsidiary 45:13
substantial 29:5
29:11 42:13 43:3
43:6 53:14 90:6
success 28:2
successful 42:3
89:20
successfully 27:17
suffered 94:16
suffering 94:21
sufficient 59:2
90:1
suggest 41:14
81:17
suggested 76:21
suggesting 24:12
suggestion 45:6
47:21 72:14
suggests 57:13
suite 10:3 97:22
sum 49:15 55:25
summarize 70:22
summary 36:23
supplemental 3:1
27:16 28:11 30:6
30:17,23 31:21

32:18 36:11,13,16
44:12,22 46:25
77:21 89:6,18
support 3:10,17
4:2,9 5:1,6,11,17
6:1,9,14,19 7:13
25:17,23 26:4
30:7 31:16 32:2,7
38:11,12 39:15
44:20 62:22 63:21
77:4 89:5,7
supported 25:14
27:12 63:25
supporting 4:17
25:20 28:22 37:10
60:18 63:7
supports 70:4
supreme 34:12
47:10 88:16 93:7
sure 18:20,24
31:3 32:3 39:22
42:9 52:12 61:2
70:6,16 71:7 75:6
surely 20:1 84:18
surface 75:19
surgical 69:1
surprise 73:11
survey 50:24
swing 60:19
switch 90:2
sworn 23:1
sydenham 15:19
sympathetic
74:10
sympathy 74:13
system 58:3 71:24

**t**

t 97:1,1
take 24:6,18
39:23 46:17 54:12
79:8 81:25 83:1
84:20

taken 18:11 25:19
33:21 43:8 47:23
48:23 61:22 86:25
87:8 93:21 94:7
94:23
takes 21:3
talking 49:23 52:6
68:6 82:3,3,18
target 58:2
targeted 58:7,21
65:11
targets 44:18 65:7
tax 91:7
taxes 94:1
teams 36:24
technical 74:19
technicalities
22:22
telephonic 18:4
telephonically 8:8
8:9,10,17,24 9:6
9:13,20 10:6,13
10:20 11:6,13,14
11:15,16,17,18,25
12:6,7,14,15,16
12:17,25 13:6,7
13:15,16,23 14:6
14:7,16,18
television 89:9
tell 62:10 83:11
95:2
telling 78:21
tens 29:14 38:1
39:23 84:20
tenth 71:21
terms 47:25 49:11
53:5 54:3 56:21
78:2 85:25 86:24
87:20 88:9
terrific 24:16
territories 62:16
testimony 31:1,14
31:18

thank 18:23 19:4
19:8 24:19 26:10
30:21 31:9,24
34:20 36:4 46:6
57:7 60:8 61:13
70:10,11,17 76:12
76:17,24 77:12,13
80:16 96:19
thanks 56:19
76:13 80:14
that's 23:10 26:7
26:9 32:3 38:15
40:14 41:15 47:18
50:19 51:6 54:11
55:17 58:16 60:1
60:4
theater 36:22
theaters 90:3
theisen 16:24
theories 87:15
theory 56:24
thereof 2:6 3:19
6:16
there's 23:5 24:4
28:15,16 34:7
40:15 47:21 51:9
52:8 54:22 56:23
they're 23:3 42:21
45:18 51:6,12
58:7 59:4
they've 26:19
47:25
thing 21:9 22:16
34:25 39:4,22
94:3
things 19:15 32:1
39:11,13 55:4,4
58:23 60:1 82:16
83:11 84:15,17
92:4
think 19:9,16,19
19:20 20:12,13,19
20:23 21:7,7,11

[think - unanimous]                                                     Page 26

21:15,17 22:14,15
22:20 23:2,4,10
23:13,14,16 24:11
24:12 26:1 33:14
33:15,24 34:22
39:13 40:7,15
42:3 45:17 46:19
47:16 50:17 51:9
51:17 52:16,21,24
53:4,8,15,20,20
54:12,22,22 55:16
55:22,25 56:9,22
56:23 57:2 62:6
65:2 66:23 68:22
69:22 71:17,18,21
72:1,19,23 73:17
74:25 76:21,22
82:1 83:19 84:13
84:24 85:19,25
86:21 87:6 88:13
89:10 92:1,22
93:11 95:25
**thinking**  96:14
**thinks**  56:9
**third**  11:10 29:2
42:25 45:12 55:23
58:8,19 59:3
63:11,17 64:17
67:2 92:19
**thirds**  77:22 78:4
78:11
**thomas**  10:3
11:22 14:22 15:6
**thorough**  20:3
**thought**  48:12
50:7 66:3,6 84:9
**thoughts**  39:2
46:11 85:23
**thousand**  79:16
**thousands**  50:6,6
**three**  19:10 20:2
44:17 89:24 92:6

**threw**  80:1
**tied**  81:12,18
**time**  18:5 19:14
27:13,20,24 28:1
29:22 36:8 37:12
37:13 39:18 40:4
42:2,13 43:7 46:2
50:7 52:22 55:17
55:19 59:7 61:25
66:8,9 67:8 69:4
69:13 71:11 72:17
72:19,20 73:1
74:23 75:23 79:2
81:15 83:20 84:9
84:17 86:15 95:24
96:10
**timeframe**  28:6
**timeline**  78:12
**times**  19:2 20:23
25:9 29:15 44:15
44:15,17 48:13
82:22 83:4 86:2
89:23,24
**timing**  54:9 94:3
**title**  57:13 78:17
**tk**  44:24 45:11
**tobacco**  21:5
**today**  25:1,12
46:18 52:20 61:1
96:18
**today's**  18:16
21:21,23 51:22
**told**  51:12 59:2
63:18 66:7,15
**toll**  28:15
**tomorrow**  39:12
**top**  19:5
**topic**  96:16
**topics**  22:7
**torch**  47:23
**tort**  29:24 40:18
40:23,23 72:13
87:15

**torts**  66:12
**touchiest**  85:25
**touching**  86:1
**touchpoints**  83:9
**townes**  25:3
**track**  44:18
**tracks**  39:2 84:16
**transaction**  20:14
**transactions**
19:23
**transcribed**  7:25
**transcript**  18:13
97:4
**transfers**  19:25
**transparency**
20:13
**treatment**  54:21
74:4 94:24
**tremendous**  71:22
78:21
**trend**  89:10
**tribes**  63:22
**tried**  60:23 61:21
62:3
**troop**  2:14,15
7:14 9:6 22:17
23:12,23 30:18,18
38:8 46:3,6,7,10
50:5,12,14,17,21
51:1,7,9,13,15
52:1,3,5,17 53:2
56:17 59:12,23
60:21,21 66:3
67:4,16 68:6
73:13 83:15
**troops**  48:13
**troop's**  23:5 56:24
**true**  67:6 72:22
73:6 90:23 96:1
97:4
**trust**  70:17
**trustee**  8:13

**trustee's**  18:25
**truth**  65:15
**try**  19:11 54:6
60:14
**trying**  19:2 25:9
41:20 69:15 84:22
**turn**  21:9,22
23:17,22 24:17
25:11 33:12 39:7
81:21 90:19
**turning**  31:24
**turns**  28:14
**tv**  35:15 36:18,21
**tvs**  27:21
**tweed**  13:1
**twin**  84:2
**two**  23:3,8,25
34:17 36:23 58:23
63:13 77:22 78:4
78:11 85:3 86:23
90:7 93:2,25
95:11
**tying**  54:1
**type**  64:3 68:20
**types**  62:8 64:21
65:19 88:15 90:2
90:4,4
**typically**  79:18

**u**

**u.s.**  1:23 8:12,13
18:25 44:14 82:11
**u.s.c.**  2:3
**ucc**  63:18 64:1
67:25 70:4 76:25
85:9
**ultimate**  87:9,9
**ultimately**  31:17
35:6 77:8 82:6
89:20 90:19
**unable**  34:2 49:4
60:24 65:14 93:13
**unanimous**  84:8

**uncontroverted**
65:10
**understand** 60:5
79:4 83:12 84:13
94:22 95:10,21
**understanding**
25:23 30:10
**understood** 54:9
**undertake** 47:16
**undertaken** 45:7
72:8
**undertaking**
42:14
**undoubted** 92:12
**undoubtedly** 43:5
**undue** 26:15
43:25
**unfair** 69:14
**unflagging** 25:4
**unfortunately**
73:23 85:6
**uniform** 72:5
**union** 9:10
**unique** 71:20
75:20 88:5
**united** 1:1,12
54:19,20 87:19
88:23 89:21
**universe** 74:6
87:25
**unknown** 1:25
44:2,9 83:15
**unmute** 51:18
**unopposed** 84:8
**unprecedented**
28:10 32:14 46:22
46:23 66:12 71:17
**unresolved** 39:13
**unsecured** 4:9 7:7
7:10 13:11 25:14
25:18 27:10 61:13
83:23,24 86:17
87:13

**unusual** 71:20
87:12 93:22 94:11
94:14
**unworkable**
45:21 93:16
**updates** 19:11
**upended** 91:15
**urged** 53:22
**use** 22:6 81:13
95:13
**uzzi** 13:7

**v**

**vacuum** 28:1
**value** 43:6 88:2
**van** 5:9 16:2
**vanicky** 5:24
**variables** 91:25
**variation** 91:25
**variety** 23:19
**various** 19:4 26:3
45:24 61:20 64:7
64:13 67:19,22
70:8 85:22 86:18
**varying** 28:2
**vehicles** 45:14
**verification** 69:9
**veritext** 97:20
**vermont** 57:18
**versus** 64:4
**viable** 39:19
**vice** 30:3
**victim** 59:4
**victims** 4:1,7 5:13
6:18 8:20 11:2
25:16,19,21,22,25
27:10 32:1,8,24
58:5,7,21 63:6,7
64:12,15 72:1
**video** 22:25 36:21
**view** 23:14 33:14
37:22 60:13 63:20
66:15,17 67:9
68:25 77:9 95:8

**viewership** 36:20
90:6
**views** 22:5,7 23:7
23:20,25 26:13,19
28:2 41:17 45:24
92:1 94:6,6,23
95:12
**village** 13:20
**viola** 16:1
**visible** 19:13
**visits** 51:3
**vitiated** 78:25
**vocal** 63:6
**voice** 18:8
**voiced** 66:16 67:9
**volkov** 10:20
**voluminous** 19:19
**voluntarily** 93:14

**w**

**wait** 34:15 52:10
**waiting** 20:20
**walden** 15:15
**want** 18:13 19:4
19:10 21:7,7,17
23:18 30:16 39:10
46:16,19 50:19
52:4,24 62:2,18
64:19 66:25 68:2
68:5 70:25 75:4
76:18 80:17 82:2
94:3,12,19,25
96:3,4,4
**wanted** 22:24
49:11
**wants** 72:17
**wardwell** 8:3
18:21 24:23
**warrant** 75:21
**warranted** 65:8
88:14 93:23
**warranting** 29:18
**washington** 10:4
11:23 12:12 48:7

48:14
**waterfront** 20:14
**waterline** 19:13
**way** 19:14 21:4
27:19 28:19 50:19
62:1 64:9,25
65:11 67:3 70:9
71:24 73:25 77:23
78:11 87:19 95:2
95:19
**ways** 19:2 42:21
94:4
**we've** 68:25 70:22
76:23
**website** 41:16,17
51:3 79:1 83:11
89:16
**week** 19:18 41:6
48:11 51:22 79:17
**weekly** 79:15
**weeks** 82:14,14,14
85:22 93:25
**weigh** 74:4
**weighing** 94:1
**weiner** 16:3
**went** 69:18 85:1
**west** 9:3 11:3
12:22 63:15
**westwind** 9:17
**we'll** 23:24
**we're** 18:3 20:20
40:5,8 41:5 49:15
49:21,23 52:5
58:23 59:7 60:13
60:14
**we've** 41:13 48:23
55:19
**what's** 23:11
46:18 49:5
**white** 1:14 8:19
**whitney** 15:23
**who's** 46:20

[wide - zone]                                                    Page 28

| | |
|---|---|
| **wide**  35:6 48:10 | **y** |
| **wider**  48:10 | **y**  64:8 95:21 |
| **williford**  11:18 | **yard**  48:17 |
| **willingness**  47:20 | **yards**  13:3 |
| **winthrop**  9:1 | **yeah**  18:23 31:3 |
| **wise**  41:24 |     50:16 80:11 |
| **wish**  31:2,5 | **year**  30:8 31:16 |
| **witness**  22:25 |     57:16 86:8 88:8 |
| **woken**  48:12 | **years**  82:20,22 |
| **woodwork**  88:3 | **yesterday**  48:7,16 |
| **word**  23:8 |     61:16 67:21 95:23 |
| **words**  33:20 | **york**  1:2 8:6,15,22 |
|     59:17 80:20 |     9:4,11 10:11,18 |
| **work**  21:12,13 |     11:4,11 12:4 13:4 |
|     78:5,21,24 79:19 |     13:13 14:4,14 |
|     84:16 92:15 |     16:16 48:13 |
| **workable**  27:19 | **youtube**  36:2 |
|     28:14 |     78:16 |
| **worked**  50:3 | **you're**  24:12 |
|     65:11,13,13 66:19 |     36:16 51:18 |
|     66:21 | **you've**  53:22 |
| **workers**  48:2 |     58:25 |
| **working**  53:13 | |
|     71:10 73:24 | **z** |
| **world**  46:13 49:17 | **zammiello**  16:8 |
|     50:21 69:20 | **zero**  23:20 84:5 |
| **worse**  49:19 | **zone**  40:11 |
| **worth**  19:16,17 | |
|     79:23 | |
| **would've**  43:8,21 | |
|     48:12,12 53:25 | |
| **write**  23:17 | |
| **writers**  77:8 | |
| **written**  38:20 | |
|     43:23 44:8 | |
| **wrong**  40:21 | |
| **wrote**  4:23 | |
| **x** | |
| **x**  1:4,10 35:3 64:7 | |
|     79:16 84:12 95:19 | |
|     95:21 | |