# Exhibit B

**Supplemental Lowne Declaration**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Eli J. Vonnegut
Darren S. Klein
James M. Millerman
Marc J. Tobak
Dylan A. Consla

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

**SUPPLEMENTAL DECLARATION OF JON LOWNE IN SUPPORT OF
MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING
IMPLEMENTATION OF 2021 KEY EMPLOYEE INCENTIVE
PLAN AND 2021 KEY EMPLOYEE RETENTION PLAN**

I, Jon Lowne, being fully sworn, hereby declare that the following is true to the best of my knowledge, information and belief:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1.    I am an Executive Vice President and the Chief Financial Officer of Purdue Pharma L.P. ("**PPLP**" and, collectively with each of the other above-captioned debtors, the "**Debtors**," the "**Company**" or "**Purdue**").  I was first employed by Purdue as Senior Internal Auditor in 1995 and gained increasing responsibility in the Company's finance team over time, including as Controller from 2005 to July 2017, and then as Acting Chief Financial Officer from August 2017 to February 2018.  Since March 2018, I have been the Chief Financial Officer of PPLP.  I am familiar with the day-to-day operations, business and financial affairs of the Debtors.

2.    I submit this declaration (this "**Declaration**") in further support of the *Motion of Debtors for Entry of an Order Authorizing Implementation of 2021 Key Employee Incentive Plan and 2021 Key Employee Retention Plan* [ECF No. 3077] (the "**Motion**").[2]  I am authorized to submit this Declaration on behalf of the Debtors.

3.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by other employees of the Company or the Company's advisors, or my opinion based upon experience, knowledge and information concerning the operations of the Debtors and the pharmaceutical industry as a whole.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**ATTRITION PRESENTS AN ONGOING THREAT TO THE DEBTORS' BUSINESS**

4.    Consistent with the concerns expressed by the Debtors in the Motion, the expiration of the clawback period with respect to the 2020 KERP Annual Award on June 30, 2021 was followed by an increase in attrition.  The Debtors have already experienced well over a full quarter's worth of voluntary attrition in July alone, with 17 employees leaving the company or

---

[2] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Motion.

2

giving notice month-to-date compared to 21[3] employees who left the Company in the entire first half of the year. Similarly and by way of comparison, on average 5 employees left the Company in the month of July in 2018 to 2020. As a result, the Debtors' annualized voluntary attrition in July was 26%[4] as compared to an average of approximately 8% for Q1 and Q2 2021. Attrition at this level presents a serious risk to the Company's business. The Company's employees—and their expertise—are in high demand among the Debtors' competitors, particularly in a tight labor market. Replacing the Debtors' departing talent remains difficult, requiring a tremendous amount of time and expense in finding, recruiting and incentivizing qualified individuals to join the Debtors.

5. The Debtors chose to seek Court approval of the 2021 Compensation Plans at this time so as to provide Purdue's employees with greater certainty about their compensation and avoid further, value-destructive defections that would damage the Debtors' business. Prior to the Petition Date, the Company's compensation plans were generally finalized and presented to employees no later than the end of the first quarter each year for over a decade. The 2021 Performance Metrics were communicated to employees early in the year, consistent with historical practice, and the Debtors' employees have been working with the expectation of receiving compensation reasonably in line with the Debtors' historical compensation practices, but the need for Court approval of the Company's compensation plans has introduced a level of uncertainty at

---

[3] The 25 resignations year-to-date that were cited in the Motion included 4 employees who gave notice prior to the filing of the Motion on June 28, 2021 but separated, or are scheduled to separate, from the Company in Q3 2021. In July 2021, 11 employees left the Company and 6 have resigned and are scheduled to separate from the Company in August 2021.

[4] The July 2021 annualized attrition rate illustrates the significant increase in voluntary resignations since the expiration of the clawback period with respect to the 2020 KERP Annual Award on June 30, 2021. Such calculation includes the 11 employees that have or are scheduled to leave the Company in July, but does not include the 6 employee who have resigned and are scheduled to leave in August.

3

this stage of the year that was not present prepetition. Indeed, following Court approval of the 2020 KERP early in the fourth quarter of 2020, the Debtors' annualized voluntary attrition rate fell from 8.8% in the third quarter to 5.6% in the fourth quarter of 2020. The Debtors believe that Court approval of the 2021 Compensation Plans will similarly help reduce attrition levels.

## CONCLUSION

6.   For all the reasons described above, it remains my opinion that the relief requested in the Motion is necessary to avoid irreparable harm to the Debtors and constitutes a critical element in maximizing the value of the Debtors' business.

[*Remainder of Page Intentionally Left Blank*]

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct,

Executed: July 28, 2021

                                                 /s/ *Jon Lowne*
                                                 Jon Lowne
                                                 Executive Vice President and Chief Financial Officer