**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

## MEDIATOR'S REPORT

Kenneth R. Feinberg, appointed co-mediator in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully submits this additional report in accordance with paragraph 17 of the Mediation Order.

## BACKGROUND

1. On September 23, 2020, I and my co-mediator, Layn Phillips, provided this Court with our Mediators' Report (Docket Number 1716) (the "First Mediators' Report").

2. In paragraph 11 of the First Mediators' Report, we stated that "legal fees for each Private Claimant group will be paid exclusively out of its agreed distribution or by other agreements with individual claimants (and not by the estate), although the *application of legal fees remains to be resolved between the Non-Federal Public Claimants and each of the Private Claimant groups*." (emphasis added).

3. In paragraphs 13 and 14 of the First Mediators' Report, we indicated that certain open issues remained unresolved.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

4. In paragraph 15, we agreed to remain available throughout September (and, if necessary, longer) to help facilitate resolution of open issues (the "Open Issues").

5. Since September 2020, I have participated in numerous conference calls and zoom sessions, as well as some in-person meetings, with regard to both the Open Issues as well as certain other issues that arose since September 23, 2020.

6. I have been informed that the resolution of all of these issues, which in many instances were reached during negotiations and informal mediation since September 23, 2020 (the "Informal Mediation"), have now been documented in a plan of reorganization filed by the Debtors, most recently as of July 14, 2021 (the "Plan").

7. I provide this report (the "Final Mediator's Report") to give the Court some additional information regarding the outcome of the Informal Mediation.

## NAS CHILDREN/AD HOC GROUP OF PI

8. First, I participated in numerous conference calls and zoom sessions with the Ad Hoc Group of NAS Children and the Ad Hoc Group of PI Victims, as well as the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Consenting Claimants, the Non-Consenting State Group, and the Multi-State Governmental Entities Group, in an effort to resolve the potential objection to a plan of reorganization that would have been brought by the Ad Hoc Group of NAS Children.

9. After months of arms'-length, good-faith negotiations, the NAS Ad Hoc Group and the Ad Hoc Group of PI Victims agreed to a resolution pursuant to which a certain portion of the funds that were being provided to all Personal Injury victims would be earmarked solely for the benefit of NAS Children.

10. I have been informed that this resolution is documented in the Plan.

11.  I believe this resolution is fair and appropriate, and consistent with my understanding of what is a reasonable award for certain types of personal injury victims within a wider group of general personal injury victims.

## PUBLIC SCHOOLS

12.  Second, I participated in numerous conference calls and zoom sessions with a nationwide Ad Hoc Group of Public Schools and the Ad Hoc Committee of Consenting Claimants, as well as the Debtors, the Official Committee of Unsecured Creditors, and the Multi-State Governmental Entities Group, in an effort to resolve the potential objection to a plan of reorganization that would have been brought by the Ad Hoc Group of Public Schools.

13.  In addition, in early June, I participated in a one day mediation session with these groups in a further effort to reach a potential resolution.

14.  After months of arms'-length, good faith negotiations, the Ad Hoc Committee of Consenting Claimants, the Multi-State Governmental Entities Group, and the Ad Hoc Group of Public Schools agreed to a resolution pursuant to which a certain portion of the funds that previously were going to be distributed to states and municipalities will now be earmarked solely for a Public Schools' Special Education Initiative.

15.  I have been informed that this resolution is documented in the Plan.

16.  I believe this resolution is fair and appropriate.

## CONTINGENCY FEES/COMMON BENEFIT

17.  Third, I participated in numerous conference calls and zoom sessions with, among others, the Ad Hoc Committee of Consenting Claimants, the Non-Consenting State Group, the Multi-State Governmental Entities Group, the Tribal Ad Hoc Group, the Third Party Payor Mediation Participants, the Hospital Ad Hoc Group, the NAS Children Ad Hoc Group, the PI Ad

Hoc Group, the Debtors, and the Official Committee of Unsecured Creditors regarding the issue of non-bankruptcy professional attorneys' fees.

18. Specifically, over several months, I engaged in good-faith, arms'-length discussions and mediations with the parties regarding how to address (a) private and public creditor contractual contingency fees, (b) private creditor group counsel fees, and (c) potential common benefit assessments of private creditor counsel to the MDL common benefit fund. The parties also engaged with each other directly in numerous negotiations over this period.

19. These negotiations covered many months, involved numerous creative and complicated proposals, and were conducted with every party named above – both in groups and individually. The negotiations were hard-fought, sometimes contentious, and conducted in the utmost good faith. I would note that many discussions and negotiations were conducted outside the presence of the mediator.

20. Settlements of these issues were reached seriatim and not simultaneously. At the conclusion of these negotiations and discussions, compromises and settlements were reached between and among all parties, regarding all of these fee-related issues.

21. All parties have informed the mediator that these various fee resolutions are an integral and non-severable part of the overall settlements on allocation among public and private claimants, and that the settlements reached in allocation are dependent on the various agreements reached pertaining to contingency fees and common benefit funding. As the mediator, I know of no facts that would make me doubt the veracity of such representations.

22. I have been informed that these agreements are documented in the Plan.

23. In my opinion, based on my decades of experience and involvement in mediating mass tort litigations and settlements, I believe that the contingency fee resolutions, as well as the

common benefit assessments, reached in this mediation, are consistent with fee awards, arrangements, and assessments agreed upon in other similar mass tort situations, and properly reflect a fair and reasonable settlement based on the work engaged in by all mediation participants.

24. I believe that the private side group counsel fee settlements, reached between the Ad Hoc Group of Hospitals and the Public Side Claimants, as well as the Ad Hoc Group of NAS Children and the Public Side Claimants, are consistent with my experience and involvement in similar mass tort situations where certain contingency fee counsel assume the responsibility of negotiating awards for a much larger group of constituents, after engaging in years of pre-settlement work. I believe that the percentages agreed upon in this matter are well within the range I am familiar with for comparable situations.

25. I further believe that the common benefit assessments are reasonable, reflecting the substantial work of the public-creditor contingency-fee counsel in federal and state court litigation over the past several years (in some cases since 2012). This work by the public-creditor contingency-fee counsel has benefited the nonpublic-creditor opioid claimant constituents. I would note that I have been informed that the common benefit assessment being sought in the currently pending Opioid Multi-District Litigation in Ohio is higher (7%) than the agreed upon percentage in this matter.

26. Finally, in my experience, reaching agreement pertaining to contingency fees and common benefit assessments is often an integral and necessary part of reaching an agreement concerning overall allocation. This situation is no different. I, therefore, conclude that all parties in this mediation should agree that the fee settlements documented in the Plan are fair, reasonable, appropriate, and should be deemed to be an integral part of the Plan.

Dated: New York, New York

July 28, 2021

*[signature: Kenneth R. Feinberg]*

_____

Kenneth R. Feinberg