**BARACK FERRAZZANO KIRSCHBAUM
& NAGELBERG LLP**
Nathan Q. Rugg, Esq. (Illinois State Bar No. 6272969)
Carmel I. Dooling (Illinois State Bar No. 6326826)
200 West Madison Street, Suite 3900
Chicago, IL 60606
(T)     (312) 984-3100
(E)     nathan.rugg@bfkn.com
         carmel.dooling@bfkn.com

*Counsel to Altergon Italia s.r.l.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*,[1] | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: August 2, 2021 @ 4:00 p.m. (prevailing Eastern Time)** |

**OBJECTION OF ALTERGON ITALIA S.R.L. TO NOTICE OF (A) EXECUTORY
CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED BY THE DEBTORS
PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY,
AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

Altergon Italia s.r.l. ("Altergon"), by and through its undersigned counsel, hereby files this objection (the "Cure Objection") to the *Debtors' Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, if any,*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

*and (C) Related Procedures in Connection Therewith*, filed on July 19, 2021 [Dkt. No. 3286] (the "Cure Notice"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. Rhodes Pharmaceuticals L.P., a Debtor herein, ("Rhodes") and Altergon entered into an Exclusive Supply and Distribution Agreement in April 2013, for the distribution of lidocaine patches in the U.S. market by Rhodes (the "S&D Agreement"). For the past several months, Altergon and Rhodes have engaged in good faith negotiations to resolve certain disputes with respect to the parties' respective obligations under the S&D Agreement and payments due thereunder. These disputes include disagreement over the outstanding amounts presently due under the contract.

2. The Debtors did not timely serve the Cure Notice as required by the court-established deadline in these Chapter 11 Cases. While service was due by July 19, 2021, the Debtors apparently first **mailed** the Cure Notice to Altergon, an Italian company, on July 20, 2021. Indeed, Altergon did not receive the Cure Notice until July 30, 2021.

3. Altergon remains hopeful that the parties will resolve their pending disputes, and does not object to the assumption of the S&D Agreement *per se*. However, in light of the Cure Notice and applicable Plan provisions, and the parties' present dispute as to amounts due and other obligations owing under the S&D Agreement, Altergon files this Cure Objection to preserve its rights as the parties continue their productive discussions.

## FACTUAL BACKGROUND

**Rhodes' Bankruptcy**

4. On September 15, 2019, Rhodes and its affiliated co-debtors, filed Petitions for Relief pursuant to Chapter 11 of Title 11 of the United States Code with the United States

Bankruptcy Court for the Southern District of New York (the "Chapter 11 Cases"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court in each of the Chapter 11 Cases.

6. Rhodes scheduled the S&D Agreement as an executory contract in Schedule G in that certain *Schedule of Assets and Liabilities for Rhodes Pharmaceuticals L.P.* [Dkt. No. 397]

7. The Debtors did not list the S&D Agreement in that certain *Notice Regarding Executory Contract and Unexpired Leases to be Rejected Pursuant to the Plan,* filed July 19, 2021 [Dkt. No. 3287], nor did they schedule the S&D Agreement or Altergon in Exhibit A to the Cure Notice. As such, the Debtors presently intend to assume the S&D Agreement with a Cure Amount of $0.

**Service of the Cure Notice was Untimely**

8. By orders entered by the Bankruptcy Court, the Debtors were required to serve the Cure Notice no later than July 19, 2021. *See Order (I) Approving Disclosure Statement for Fifth Amended Chapter 11 Plan, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures In Connection Therewith, and (IV) Certain Dates With Respect Thereto* [Dkt. No. 2988], ¶23; *Third Amended Order Granting Debtors Motion for Order Establishing Confirmation Schedule and Protocols* [Dkt. No. 3347], ¶3.c.i. The Cure Notice is dated July 19, 2021 and sets forth an objection deadline of August 2, 2021.

9. Pursuant to that certain *Affidavit of Service* [Dkt. No. 3330], the Debtors did not place the Cure Notice in the mail until July 20, 2021. Altergon did not receive the Cure Notice until July 30, 2021, one business day before the objection deadline.

**Payments and Performance due under the S&D Agreement**

10. The parties entered into the S&D Agreement in 2013 for the supply of lidocaine patches by Altergon to Rhodes, and the sale of same in the U.S. market by Rhodes. The contract contains certain confidentiality provisions.

11. Rhodes' initial goals and predictions at that time were to quickly capture 25% of the U.S. market, which would equate to approximately 40 million patches per year. Rhodes undertook efforts to obtain commercialization approval from the U.S. Food & Drug Administration ("FDA") while Altergon committed to increase its production capacity in order to meet Rhodes' stated goals.

12. Based on Rhodes' predictions, Altergon invested approximately €15 million in order to meet Rhodes' demand, even though Rhodes had not obtained the necessary approval of its abbreviated new drug application (the "ANDA") from the FDA. The ANDA was finally approved in 2020 allowing the first orders to be placed by Rhodes.

13. In January 2021, Altergon requested that the first milestone payment established under the S&D Agreement be paid since the threshold numbers of patches had been sold to Rhodes. Rhodes, however, indicated that it did not interpret the relevant S&D Agreement provisions as Altergon did. In short, Rhodes incorrectly considers that each milestone payment is triggered by sales from Rhodes to its customers, rather than by sales from Altergon to Rhodes. Rhodes' position does not reflect the parties' intentions or relevant discussions held prior to the signing of the S&D Agreement.

14. The milestone payments were always intended to compensate Altergon for the investments made and anticipated. This interpretation is supported both by the contract itself and the discussions between the parties.

15. In support of its interpretation, Altergon has pointed out in its correspondences to Rhodes both the contractual provisions and the practical considerations that support its position. Moreover, under Swiss law (which governs the S&D Agreement), a contract must be interpreted not only according to its letter but also its spirit. The contract must be interpreted according to all the facts, and to what the parties could and/or should have understood.

16. Currently, based on the orders Rhodes has placed, Altergon has satisfied three milestones under the S&D Agreement (set forth in Section 4.4) and is due $4,000,000.00 from Rhodes. Rhodes is also required under Section 8 of the S&D Agreement to order a minimum of 10 million patches from Altergon during each recurring twelve-month period.

## **OBJECTION**

17. Under the notice and Plan provisions of the Cure Notice, if a party is not listed in Exhibit A – Schedule of Assumed Contracts attached thereto, with a specific cure amount, the binding Cure Amount is $0. Altergon is not listed in Exhibit A to the Cure Notice.

18. Altergon does not object to the assumption of the S&D Agreement outright, but does object to the Cure Notice because it effectively sets forth $0 as the amount that is due to Altergon in connection with the S&D Agreement which must be paid as a condition of assumption of the S&D Agreement.

19. Pursuant to 11 U.S.C. § 365(b)(1), Rhodes must cure any defaults under the S&D Agreement in connection with the proposed assumption, as well as provide adequate assurance of future performance. Such defaults that must be cured include both pre-petition and post-

5

petition defaults. *In re Rachels Indus., Inc.*, 109 B.R. 797, 811–12 (Bankr. W.D. Tenn. 1990); s*ee also In re Liljeberg Enters., Inc.*, 304 F.3d 410, 438-439 (5th Cir. 2002). In this case, the proposed Cure Amount of $0 fails to cure the existing defaults of Rhodes under the S&D Agreement.

20. The current cure amount is $4,000,000.00 for existing payment defaults under the S&D Agreement. The support for the outstanding amount due is found both in the plain language of the S&D Agreement and the circumstances surrounding the parties' entry into the contract. As noted above, Swiss law allows for expansive consideration of the parties' intentions when entering into a contract, and a court or arbitrator need not rely solely on its "four corners" even if the contract terms are clear and unambiguous. For example, a court may examine (i) the circumstances in which the contract was concluded, (ii) the parties' respective interests, (iii) the purpose or objective of the contract, and (iv) subjective declarations of intent by the parties before the contract was executed, as well as their conduct thereafter.

21. Accordingly, under 11 U.S.C. § 365(b), in order to assume the S&D Agreement, (i) Altergon must receive a cure payment of at least $4,000,000.00, and (ii) Rhodes must provide adequate assurance that it can maintain orders of at least 10,000,000 patches for each recurring twelve-month period at the price established under the S&D Agreement.

## RESERVATION OF RIGHTS

22. Based on Rhodes' failure to timely serve the Cure Notice, Rhodes cannot assume the S&D Agreement based on the existing Cure Notice. Moreover, any potential assumption will not trigger until the Effective Date of the Plan occurs. Rhodes' obligations under the S&D Agreement continue to accrue. Altergon therefore expressly reserves its defenses and right to

object to all relief sought by the Debtors in connection with the assumption of the S&D Agreement, in addition to the objections set forth in this Cure Objection.

WHEREFORE, Altergon respectfully requests that the Court (a) sustain this Cure Objection, (b) enter an order requiring the Debtors to pay the actual amount owed to Altergon under the S&D Agreement and provide adequate assurance that all defaults will be cured before allowing the assumption of the S&D Agreement, and (c) grant Altergon such further relief as the Court deems just.

Dated: August 2, 2021                Respectfully Submitted,

 /s/ *Nathan Q. Rugg*
Nathan Q. Rugg (Illinois State Bar No. 6272969)
Carmel I. Dooling (Illinois State Bar No. 6326826)
Barack Ferrazzano Kirschbaum & Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, IL 60606
Telephone: (312) 984-3100
Email: nathan.rugg@bfkn.com
         carmel.dooling@bfkn.com

*Attorneys for Altergon Italia s.r.l.*

19-23649-shl    Doc 3365    Filed 08/02/21    Entered 08/02/21 14:12:20    Main Document
                                       Pg 8 of 9

## CERTIFICATE OF SERVICE

I, Nathan Q. Rugg, an attorney, hereby certify that on August 2, 2021, a copy of the foregoing **OBJECTION OF ALTERGON ITALIA S.R.L. TO NOTICE OF (A) EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED BY THE DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY, AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH,** was duly served to all registered parties through the CM/ECF system for the United States Bankruptcy Court for the Southern District of New York, as well as by electronic transmission, to the parties on the following list, except to the party indicated below that was served via overnight courier.

/s/ *Nathan Q. Rugg*

## SERVICE LIST

Chambers of the Honorable Robert D. Drain
U.S. Bankruptcy Court
for the Southern District of New York
300 Quarropas Street
White Plains, New York 10601
(*served via overnight courier*)

Paul K. Schwartzberg, Esquire
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street
Room 1006
New York, NY 10014
paul.k.schwartzberg@usdoj.gov
USTPRegion02.NYECF@USDOJ.GOV

Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
marshall.huebner@davispolk.com
ben.kaminetzky@davispolk.com
eli.vonnegut@davispolk.com
***Counsel to the Debtors***

Arik Preis
Mitchell P. Hurley
Sara L. Brauner
Edan Lisovicz
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com
elisovicz@akingump.com
*Counsel to the Committee of Unsecured Creditors*

Justin R. Alberto
Cole Schotz P.C.
500 Delaware Avenue
Suite 1410
Wilmington, DE 19801
jalberto@coleschotz.com
*Counsel to the Committee of Unsecured Creditors*