IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered)<br><br>Hearing Date: August 12, 2021, at 10:00 a.m., Eastern Standard Time<br><br>Re: Docket Nos. 3287, 3286, 3185 |

## OBJECTION OF AMERISOURCEBERGEN DRUG CORPORATION AND RELATED ENTITIES TO NOTICE OF ASSUMPTION

AmerisourceBergen Drug Corporation and certain related entities listed in **Exhibit A** (collectively, "AmerisourceBergen" or "ABDC")[2] hereby submit this objection (this "Objection"), to the proposed assumption by the Debtors of their executory contracts with AmerisourceBergen, as set forth in the *Notice Of (A) Executory Contracts And Unexpired Leases To Be Assumed By The Debtors Pursuant To The Plan, (B) Cure Amounts, If Any, And (C) Related Procedures In Connection Therewith* [D.I. 3286] (the "Assumed Contracts Notice"), and the provisions of the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnic Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined in this Objection shall have the meaning ascribed to them in the Plan, as defined below, and, where appropriate, the *Joint Objection of Certain Distributors, Manufacturers, and Pharmacies to the Sixth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and its Affiliated Debtors* [D.I. 3306] (the "Joint Confirmation Objection").

1

*Sixth Amended Joint Chapter 11 Plan Of Reorganization Of Purdue Pharma L.P. And Its Affiliated Debtors* [D.I. 3185] (the "Plan"),³ and respectfully state as follows:

## INTRODUCTION

1.  The Debtors' proposed assumption and unilateral and nonconsensual amendment of their contracts with AmerisourceBergen (as amended, restated, supplemented, or modified, the "ABDC Contracts") is unlawful and should not be approved by this Court. For the reasons given below and in the *Joint Objection Of Certain Distributors, Manufacturers, And Pharmacies To The Sixth Amended Joint Chapter 11 Plan Of Purdue Pharma L.P. And Its Affiliated Debtors* [D.I. 3306] (the "Joint Confirmation Objection"), AmerisourceBergen objects and does not consent to the Debtors' proposed assumption of the ABDC Contracts or to the Debtors' proposal to amend those contracts to remove any provisions that grant AmerisourceBergen indemnification, reimbursement, and/or insurance rights against the Debtors and the Debtors' insurers.

## BACKGROUND

2.  AmerisourceBergen is a leading global distributor of pharmaceuticals. AmerisourceBergen is a party to numerous contracts with the Debtors, including Purdue Pharma L.P. ("PPLP" or "Purdue") and Rhodes Pharmaceuticals L.P. ("Rhodes"), pursuant to which it has distributed certain of the Debtors' products, including opioids, and provided related services throughout the United States.

---

³ Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors, D.I. 3185 (July 14, 2021) [hereinafter Plan]. In this Objection, unless otherwise noted, the specific provisions of the Plan are referred to as "Article [#].[#]" within its body, but "art. [].[]" within its accompanying citations consistent with the Plan's formatting style.

2

3.      These contracts, all of which were in effect through and after the Petition Date and qualify as executory contracts pursuant to Section 365 of the Bankruptcy Code,[4] include the ABDC Contracts set forth in **Exhibit B**.[5]

4.      The ABDC Contracts provide AmerisourceBergen with indemnification, reimbursement, and insurance rights against the Debtors and the Debtors' insurers. Regarding the ABDC Contracts with PPLP, Section 12.6 of the Drug Distribution Service Agreement by and between Amerisource Bergen and PPLP, effective as of April 1, 2006, provides that PPLP:

> shall be responsible for and agrees to defend, indemnify, and hold harmless [ABDC] and its affiliates, shareholders, directors, officers and employees from and against any and all claims, causes of action, obligations, liability, liens, indebtedness, debts, judgments, damages (exclusive of [ABDC's] lost profits) losses, costs, expenses, and fees (including, without limitation, reasonable attorney fees) to the extent arising from or resulting from or out of (i) breach or default under any representation, warranty, covenant, obligation or promise made by Purdue under this Agreement, (ii) Purdue's fraud, intentional misconduct, or negligence; (iii) any intellectual property infringement actions arising out of [ABDC's] distribution of Products under the terms of this Agreement (vi) possession, distribution, sale and/or use of, or by reason of the seizure of, any Products of Purdue, including any prosecution or action whatsoever by any governmental body or agency.

Likewise, the Authorized Distributor Agreement and the Distribution Performance Agreement, each effective as of October 1, 2012, as well as the Logistical Services Agreement, effective as of November 1, 2015, each include the same, or substantially the same, language.

5.      The ABDC Contracts with Rhodes contain similar provisions. For example, Section 13(a) of the Master Distribution Services Agreement, effective as of January 1, 2015, by and between AmerisourceBergen and Rhodes provides:

---

[4] In this Objection, unless otherwise noted, the term "Bankruptcy Code" refers to Title 11 of the United States Code, and the specific sections and chapters of the Bankruptcy Code, set forth in 11 U.S.C. §§ 101–1532, inclusive, are referred to as "Section []" or "§ []" and "chapter []," respectively.

[5] To be clear, AmerisourceBergen objects to the Debtors' assumption of any one of its agreements with the Debtors, whether or not explicitly mentioned in this Objection or listed in Exhibit B.

> each party (the "Indemnifying Party") shall indemnify, defend and hold harmless the other, its agents, servants, employees, officers, directors, attorneys, subsidiaries, affiliates, parent and assigns from and against all third party claims (including, but not limited to, product liability claims and claims relating to "class of trade" pricing), losses, damages, liabilities and expenses, including without limitation reasonable legal fees and court costs (collectively, "Indemnifiable Losses"), to the extent arising out of (i) the material breach by the Indemnifying Party of any obligation contained herein; or (ii) the fraud, intentional misconduct, negligent acts or omissions or wrongdoing of any kind alleged or actual on the part of the Indemnifying Party.

Likewise, the Distribution Services Agreement, effective as of March 16, 2016, and the Master Distribution Services Agreement, effective as of January 1, 2018, incorporate identical or substantially undistinguishable requirements. Similarly, PPLP executed Continuing Guaranty and Indemnification Agreements in connection with each ABDC Contract with Rhodes, whereby PPLP agreed to:

> defend, indemnify and hold AmerisourceBergen Corporation and each of its subsidiaries harmless against any and all claims, losses, damages, costs, liabilities and expenses, including attorneys' fees and expenses, arising as a result of (a) any actual or asserted violation of Applicable Laws or by virtue of which Products made, sold, supplied, or delivered by or on behalf of Guarantors may be alleged or determined to be adulterated, misbranded or otherwise not in full compliance with or in contravention of Applicable Laws, (b) the possession, distribution, sale and/or use of, or by reason of the seizure of, any Products of Guarantors, including any prosecution or action whatsoever by any governmental body or agency or by any private patty, including claims of bodily injury, death or property damage, (c) any actual or asserted claim that Guarantors' Products infringe any proprietary or intellectual property rights of any person, including infringement of any trademarks or service names, trade names, trade secrets, inventions, patents or violation of any copyright laws or any other applicable federal, state or local laws, and (d) any actual or asserted claim of negligence, willful misconduct or breach of contract except to the extent arising from the negligence, willful misconduct or breach of contract of AmerisourceBergen or its affiliates.

6. In addition to these indemnification rights, many of the ABDC Contracts provide that any applicable Debtor counterparty will name ABDC as an additional insured in their insurance policies.

7.      As of the Petition Date, and as of date of this Objection' filing, AmerisourceBergen is a defendant in thousands of lawsuits relating to its distribution of the Debtors' products in accordance with some of the ABDC Contracts (the "Opioid Litigation"), and has incurred millions of dollars paid in settlement as well as in professional fees relating thereto.

8.      For these reasons, AmerisourceBergen filed proofs of claim against the Debtors asserting claims both for costs actually incurred in defending and settling the Opioid Litigation and for future costs.[6]

9.      Article 8.1(a) of the Plan first indicates that most, if not all, of the Debtors' contracts (in certain cases, as amended by the Plan) are being assumed. It reads:

> As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party, as amended pursuant to Section 8.4, shall be deemed assumed by the applicable Debtor and, except with respect to any contract or lease held by a Transferred Debtor, assigned to NewCo or its designee, except for any executory contract or unexpired lease that (i) has previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (ii) is specifically identified on the Schedule of Rejected Contracts, (iii) is the subject of a separate assumption or rejection motion filed by the Debtors under section 365 of the Bankruptcy Code pending on the Confirmation Date, (iv) is the subject of a pending Contract Dispute or (v) is being otherwise treated pursuant to the Plan.[7]

Based on this language, even if an executory contract is not listed on the Contract Assumption Notice, it is to be assumed so long as it is not also listed in the Debtors' *Notice Regarding Executory Contracts And Unexpired Leases To Be Rejected Pursuant To The Plan* [D.I. 3287] (the "Contract Rejection Notice"). Moreover, per Article 8.2(a) of the Plan, even "[i]f a counterparty to an executory contract or unexpired lease receives [the Contract Assumption Notice], but such

---

[6] AmerisourceBergen filed hundreds of proofs of claim. *E.g.*, Proof of Claim Nos. 73755, 82982, 82987, 91540, 91587, 91780.

[7] Plan, *supra* note 3, art. VIII.1(a) at 110.

5

executory contract or unexpired lease is *not* listed therein, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0)."[8]

10. Additionally, Article 8.4 of the Plan seeks to amend the ABDC Contracts to remove ABDC's indemnification, reimbursement and insurance rights. *First*, Article 8.4(a) provides that:

> The Plan shall constitute (i) an *amendment to each assumed or assumed and assigned contract or lease as necessary to render null and void any and all terms or provisions* thereof solely to the extent such terms or provisions create an obligation of any Debtor (or any assignee thereof), or give rise to a right in favor of any non-Debtor under any MDT Insurance Policy, for the indemnification or reimbursement of any Person for costs, losses, damages, fees, expenses or any other amounts whatsoever relating to or arising from any actual or potential opioid-related litigation or dispute, whether accrued or unaccrued, asserted or unasserted, existing or hereinafter arising, based on or relating to, or in any manner arising from, in whole or in part, Opioid-Related Activities or other conduct occurring prior to the Effective Date; and (ii) an *agreement by each counterparty to release the Debtors (and any assignee thereof or successor thereto) and all Insurance Companies* from any and all obligations, liabilities, Claims, Causes of Action and other rights of recovery arising under or relating to such indemnification and reimbursement rights to the extent relating to any conduct occurring prior to the Effective Date, and an agreement by such party to release any and all Co-Defendant Claims held by such party and to channel, in accordance with the Channeling Injunction, all Channeled Claims arising under or relating to such contract, including any such Claims that might otherwise be elevated to administrative status through assumption of such contract or lease.[9]

*Second*, Article 8.4(a) continues:

> [A]ll Co-Defendant Claims[, including AmerisourceBergen's claims related to the Opioid Litigation,] arising under or related to any such assumed or assumed and assigned contract or lease shall be released and discharged with no consideration on account thereof, and all Proofs of Claim in respect thereof shall be deemed Disallowed and expunged, without further notice, or action, order or approval of the Bankruptcy Court or any other Person.[10]

---

[8] Plan, *supra* note 3, art. VIII.2(a) at 111 (emphasis added).

[9] *Id.* art. VIII.4(a) at 112 (emphasis added).

[10] *Id.* art. VIII.4(a) at 112.

6

And *finally*, Article 8.4(b) provides that the proposed assumption and amendment of any executory contract is only effective as long as "an objection to the amendments and releases described in … [Article] 8.4(a) is not timely filed and properly served on the Debtors with respect to a contract or lease in accordance with the procedures set forth in the [applicable a]ssumption [n]otice …."[11]

11. Because neither the Contract Assumption Notice nor the Contract Rejection Notice lists *any* of the ABDC Contracts, the Debtors therefore appear to seek to assume all of the ABDC Contracts and to do so without payment of any cure costs *but* with the elimination of the indemnification and insurance provisions that favor AmerisourceBergen.

## **OBJECTION**

12. Apart from the Debtors' substantive violations of Section 365, the Assumed Contracts Notice itself is impermissibly vague. The Debtors do not list any contracts for which they do not intend to pay a cure, and do not specifically identify which contracts are subject to the amendment provisions described herein. The Debtors thus effectively rely on counterparties, such as AmerisourceBergen, to guess which category they fall in and respond accordingly. This kind of scheme turns the Code on its head, as it is the *Debtors*' burden, not AmerisourceBergen's, to specifically prove that they have met every precondition of assuming each and every executory contract before this Court can permit its assumption, or properly weigh the propriety of any such decision. *Cf. Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 86 (2d Cir. 2002) (stressing that the debtor's obligation to cure a prepetition default must be filled before assumption takes place); *In re Super. Toy & Mfg.*, 78 F.3d 1169, 1174 (7th Cir. 1996) (quoting S. REP. NO. 95-989, at 59 (1978) ("'If the trustee [or debtor-in-possession] is to assume a contract or lease, the

---

[11] *Id.* art. VIII.4(b) at 112–13.

court will have to insure that the trustee's performance under the contract or lease gives the other contracting party the full benefit of his bargain.'").

13. More substantively, the Debtors' assumption and unilateral amendment of the ABDC Contracts without payment of the amounts due under the ABDC Contracts is contrary to the Bankruptcy Code and applicable non-bankruptcy law. AmerisourceBergen therefore and hereby objects and does not consent to the Debtors' assumption of the ABDC Contracts or to the Debtor's proposal to amend the ABDC Contracts to remove any provisions that grant AmerisourceBergen any indemnification, reimbursement, and insurance rights against the Debtors and the Debtors' insurers. In particular, the Debtors proposed treatment of the ABDC Contracts is illegal for at least three reasons.

14. *First*, pursuant to Article 8.4(a) of the Plan, the Debtors improperly seek to simultaneously assume the ABDC Contracts and amend them so as to eliminate AmerisourceBergen's indemnification, reimbursement, and insurance rights, all without any manifestation of consent to such unilateral—and material—contractual rewriting. This construct is contrary to fundamental black-letter law that, although a chapter 11 debtor has broad discretion to exercise its business judgment to assume or reject executory contracts, it must assume or reject the contracts *cum onere*, and cannot pick and choose only those provisions that it wishes to keep. *E.g.*, *NLRB* v. *Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).[12]

15. *Second*, the Debtors added a deemed consent provision to the Plan that attempts—but fails—to remedy the Plan's violation of this anti-cherry picking rule.[13] As noted above, Article

---

[12] *See also* Joint Confirmation Objection, *supra* note 2, ¶¶ 67–68 (collecting similar such cases).

[13] *See also id.* ¶¶ 65–73 (discussing this issue in more detail).

8.4(b) of the Plan provides that the proposed assumption and amendment of any executory contract is only effective so long as the contract counterparty does not object to the proposed amendment. Yet, just as "[a] party to a contract cannot renegotiate the terms of the contract for which it bargained simply because things did not turn out favorably for it," nor can it "convince a court to rewrite the contract to fulfill an unspoken expectation" outside of bankruptcy, *Ally Fin. Inc. v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015), it cannot do so inside of bankruptcy under Section 365, *see City of Covington v. Covington Land Ltd. P'ship*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("When the debtor assumes the lease or the contract under § 365, it must assume both the benefits and the burdens of the contract"; "[n]either the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."), *cited in, e.g., Empire State Bldg. Co., L.L.C. v. New York Skyline, Inc. (In re New York Skyline, Inc.)*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010). Instead, for a contract to be validly modified under the common law and hence the Bankruptcy Code, that modification must "satisfy all the criteria essential for a valid original contract, including offer, acceptance, and consideration," and "[m]utual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract." *AIU Ins. Co. v. TIG Ins. Co.,* 934 F. Supp. 2d 594, 602 (S.D.N.Y. 2013). Whatever else it may allow, the Bankruptcy Code does not authorize any attempted circumvention of such basic contract law principles. *E.g., In re New York Skyline, Inc.*, 432 B.R. at 77; *Enterpriser Lighting, Inc.*, No. 93-34352, 1994 Bankr. LEXIS 1307, 1994 WL 774636, at *3 (Bankr. E.D. Va. Jan. 21, 1994); *In re Heaven Sent, Ltd.*, 37 B.R. 597, 598 (Bankr. E.D. Pa. 1984).  This is especially so when, as here, the ABDC Contracts themselves require both parties to sign any amendment in order for it to be effective.

16. Relatedly, the Debtors' deemed consent construct is inconsistent with the Bankruptcy Code. As explained by the Second Circuit, if a debtor assumes a contract, its counterparty receives an administrative expense claim for the cure amount and for any amounts that come due under the contract after the date of assumption. *Regen Capital I, Inc. v. Halperin (In re Wireless Data, Inc.)*, 547 F.3d 484, 496 (2d Cir. 2008) (citing, among others, *Kimmelman v. Port Auth. Of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311, 318 (3d Cir. 2003)). The contract counterparty is then entitled to payment of its administrative expense claim in cash on the plan's effective date unless the counterparty "has *agreed* to a different treatment of such claim." 11 U.S.C. § 1129(a)(9) (emphasis added). Courts have interpreted "agreed" in Section 1129(a)(9) to require an administrative claimant's "*affirmative* consent" to any proposal to impair their recoveries on their administrative expense claims in full and in cash; deemed or inferred consent, including through a failure to opt-out of the proposed impairment of administrative claims, is not sufficient. *E.g.*, *In re Real Wilson Enters.*, No. 11-15697, 2013 Bankr. LEXIS 3997, 2013 WL 5352697, at *8 (Bankr. E.D. Cal. Sept. 23, 2013) (emphasis added) (collecting cases so concluding, including *In re Jankins*, 184 B.R. 488, 492 n.8 (Bankr. E.D. Va. 1995)).[14] Similarly, here, this Court cannot interpret any counterparty's failure to object to the Debtors' proposed assumption and amendment of any executory contract as consent to amendments that would eliminate duties the Debtors owe under those contracts (including duties of indemnification and reimbursement) when the amendments would effectively eliminate any administrative expense claims counterparties would otherwise hold in exchange for the assumption of their contracts in full. That, however, is precisely what the Debtors strive to do via Article 8.4(a) of the Plan, a

---

[14] To the extent the Debtors intend to rely on *In re Teligent, Inc.*, 282 B.R. 765, 770–71 (Bankr. S.D.N.Y. 2002), to argue otherwise, AmerisourceBergen adopts the response made by McKesson Corporation in its separate objection.

provision whose illegality is further underscored by the language in the ABDC Contracts requiring both parties to sign any amendment of the contract in order for it to be effective.

17.    *Finally*, the Debtors impermissibly propose to amend the ABDC Contracts to strip AmerisourceBergen of its rights in the Debtors' insurance coverage. Certain of the ABDC Contracts require the Debtors to name AmerisourceBergen as an additional or named insured under the Debtors' insurance policies, including the MDT Insurance Policies.[15] These contracts require the MDT Insurance Policies to serve as the primary insurance policies for AmerisourceBergen as to the Debtors' products and require the MDT Insurance Policies to cover defense costs. As set forth above, however, Article 8.4(a) of the Plan would amend such ABDC Contracts, if assumed in the manner proposed in the Plan, to "render null and void" any provision that "give[s] rise to a right in favor of any non-Debtor under any MDT Insurance Policy,"[16] including the provisions entitling AmerisourceBergen to insurance coverage under any MDT Insurance Policy.

18.    However, as a matter of law, AmerisourceBergen's insurance rights are not property of the estate. Indeed, as numerous courts have recognized, "any individual [or third-party] insured has a contractually-distinct status that runs directly between itself and the insurer" and "the right to receive payment on a covered claim [is] the property of that insured itself." *In re Petters Co.*, 419 B.R. 369, 375–76 (Bankr. D. Minn. 2009). Thus, such insurance interests and rights are the exclusive property of AmerisourceBergen—and are not property of the Debtors' estates. *E.g.*, *In re Adelphia Comm'cns Corp.*, 364 B.R. 518, 527 (Bankr. S.D.N.Y. 2007); *In re W.R. Grace & Co.*, 607 B.R. 419, 424 (Bankr. D. Del. 2019). Where the estate's claim ends, so too does a debtor's

---

[15] Per the Plan, "MDT Insurance Policies" means "all Purdue Insurance Policies that do or may afford the Debtors rights, benefits, indemnity, insurance coverage or defense costs with respect to any Claim or Cause of Action against the Debtors arising out of, on account of, or in connection with Opioid-Related Activities or for which the Debtors have insurance rights arising out of or in connection with Opioid-Related Activities …." Plan, *supra* note 3, art. I.1 at 16.

[16] *Id.* art. VIII.4(a) at 112.

power to affect another's property. As a result, neither this Court nor the Debtors have the authority or basis to impair AmerisourceBergen's insurance rights against non-debtor insurers.

19. In short, AmerisourceBergen has existing indemnity rights under the ABDC Agreements and has asserted valid claims which, pursuant to Section 365, would need to be assumed and complied with as part of assumption of its agreements generally. The Debtors lack the means to avoid this duty so long as AmerisourceBergen does not—and it does not—consent to the proposed assumption and amendment of its contracts. If the Debtors wish to continue their commercial relationship with AmerisourceBergen on terms other than those previously bargained for and agreed to, they are welcome to take the usual approach of attempting to negotiate mutually commercially acceptable amendments, rather than distorting the Bankruptcy Code's statutory assumption process by trying to cram one-sided amendments down the throat of their counterparty.

## CONCLUSION

For all of these reasons and the reasons stated in the Joint Confirmation Objection, this Court should bar the Debtors' proposed assumption and amendment of the ABDC Contracts and grant such further relief as is appropriate and just.

[*Rest of page intentionally blank.*]

Dated: August 2, 2021                    Respectfully submitted,

*/s/ Christopher A. Lynch*
**REED SMITH LLP**
Christopher A. Lynch
599 Lexington Avenue
New York, New York 10022-7650
Telephone: (212) 521-5400
Fax: (212) 521-5450
E-mail: clynch@reedsmith.com

-and-

**REED SMITH LLP**
Lauren S. Zabel (admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
Telephone: (215) 851-8100
Fax: (215) 851-1420
E-mail: lzabel@reedsmith.com

-and-

**CRAVATH, SWAINE & MOORE LLP**
Michael T. Reynolds
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1552
Fax: (212) 474-3700
E-mail: mreynolds@cravath.com

*Counsel for AmerisourceBergen Drug Corporation and Certain of Its Affiliates*