IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered)<br><br>Hearing Date: August 12, 2021, at 10:00 a.m. EDT<br><br>Re: Docket No. 3286 |

## OBJECTION OF CARDINAL HEALTH TO DEBTORS' PROPOSED ASSUMPTION AND AMENDMENT OF CARDINAL HEALTH'S EXECUTORY CONTRACTS

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's registration number are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnic Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Cardinal Health, Inc. and certain affiliates listed on Exhibit A (together, "Cardinal Health") hereby objects to the Debtors' proposed assumption and amendment of their executory contracts with Cardinal Health as set forth in the *Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, (B) Cure Amounts, if any, and (C) Related Procedures in Connection Therewith* [Dkt. No. 3286] (the "Assumed Contracts Notice"), and to corresponding provisions of the *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Dkt. No. 3185] (the "Plan"), and respectfully states as follows:

## BACKGROUND

1. Cardinal Health is one of the nation's leading distributors of healthcare products, including pharmaceuticals and medical devices. Cardinal Health is party to numerous agreements with the Debtors, including Purdue Pharma L.P. and Rhodes Pharmaceuticals L.P., pursuant to which it distributes the Debtors' products and provides related services.

2. Cardinal Health is currently party to an Authorized Distributor Agreement (the "ADA"), a Distribution Performance Agreement, and a Central Distribution Services Agreement, as amended, with Purdue Pharma L.P. and its affiliates (together, "Purdue"), and to a Generic Wholesale Service Agreement, as amended (the "GWSA"), a Wholesale Purchase Agreement (the "WPA") and a Developing Suppliers Program Distribution Service Agreement, as amended, with Rhodes Pharmaceuticals L.P. ("Rhodes").[2]

3. Those agreements provide, *inter alia*, that the Debtors will indemnify Cardinal Health for losses relating to Cardinal Health's distribution of Purdue and Rhodes products.

---

[2] *See* Claim No. 147569 filed by Cardinal Health, Annex at 2-5 (describing current and former agreements between Cardinal Health and Debtors).

Specifically, the ADA, effective as of July 1, 2012, provided that Purdue, defined as Purdue Pharma L.P. and a broad range of its "associated companies":

> will defend, indemnify, and hold harmless [Cardinal Health] and its directors, officers, and employees ("[Cardinal Health] Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties caused by or arising from any (i) negligent acts or omission of Purdue, (ii) failure of Purdue to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this ADA, (iv) claims of patent, trademark, copyright or other infringement related to Products, (v) an act or omission by Purdue in its direct storage, handling, use, demonstration, consumption, ingestion, digestion, design, manufacture, production and assembly of Products and their transportation to [Cardinal Health], or (vi) Claims arising out of [Cardinal Health]'s administration of Contracts with third party Customers (e.g. GPOs) in connection with applicable Contract Prices as set or determined by Purdue in writing or electronic transmission; provided, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of [Cardinal Health] or [Cardinal Health] Indemnitees.

ADA § 35(a).[3] On January 1, 2021, Cardinal Health and Purdue entered into an amendment to the ADA, which contained a substantially similar indemnity provision.

    4.    Likewise, the WPA provides that Rhodes:

> will defend, indemnify, and hold harmless Cardinal Health and its affiliates, subsidiaries, directors, officers, employees and representatives from and against any and all claims, liabilities, losses, damages, costs, and expenses (including without limitation reasonable attorneys' fees) arising or claimed to arise directly or indirectly out of: (a) the breach of any representation or warranty set forth in this Section; (b) the fraud, intentional misconduct, omission or negligence of Supplier; (c) the manufacture, marketing, testing, shipping, sale, possession or use of the Products (excluding any claim, liability, loss, damage, cost or expense shown to be solely attributable to Cardinal Health's negligence in handling such Product); (d) "class of trade" pricing, if any, maintained by Supplier

---

[3] Section 17(a) of the Distribution Performance Agreement provides for substantially identical indemnification.

> from and after the effective date of this Agreement, including without limitation those arising out of Cardinal Health's administration of Supplier Contracts; and (e) any intellectual property infringement actions (including patent, trademark, service mark, copyright trade dress, trade secret and other proprietary rights) brought by a third party in connection with Cardinal Health's distribution of Products hereunder.

WPA § 12. The GWSA and its amendments contain similar indemnity provisions. *See, e.g.*, GWSA § 15.

5. In addition, certain current and former agreements between Cardinal Health and the Debtors require the Debtors to obtain products and general liability insurance, and to name Cardinal and its affiliates as additional insureds under such policies. *See, e.g.*, WPA § 13; GWSA Ex. A § 16; GWSA Nov. 25, 2014 amendment § 2(d).

6. As of the Debtors' petition date, and as of the date of this filing, Cardinal Health is a defendant in thousands of lawsuits relating to its distribution of the Debtors' products. Cardinal Health has incurred millions of dollars paid in settlement as well as in professional fees relating thereto, and has expressly sought compensation from the Debtors for the same. Accordingly, Cardinal Health filed proofs of claim against the Debtors asserting claims both for costs actually incurred in defending and settling opioid litigation and for future costs.[4]

7. The Plan provides that the Debtors will assume all executory contracts other than those listed on the Schedule of Rejected Contracts, which was filed contemporaneously with the Assumed Contracts Notice. *See* Plan § 8.1; *Notice Regarding Executory Contracts and Unexpired Leases to be Rejected Pursuant to the Plan* [Dkt. No. 3287] (the "Rejected Contracts Notice"). In addition, the Assumed Contracts Notice only lists agreements for which the Debtors believe they owe a cure amount, and states that "the Cure Amount . . . will be deemed to be Zero

---

[4] *See, e.g.*, Claim No. 147569 filed by Cardinal Health.

Dollars ($0) if such contract is not listed" on the exhibit thereto. Assumed Contracts Notice at 3. Cardinal's agreements with the Debtors are not listed on either the Assumed Contracts Notice or the Rejected Contracts Notice.

8. For many of those contracts that are subject to this default assumption, the Plan provides for unilateral amendment to strip out indemnity and insurance rights relating to pre-Effective Date opioid activities. Specifically, the Assumed Contracts Notice, and corresponding language found at section 8.4 of the Plan, states that the Plan constitutes:

> (i) an amendment to each assumed or assumed and assigned contract or lease as necessary to render null and void any and all terms or provisions thereof solely to the extent such terms or provisions create an obligation of any Debtor (or any assignee thereof), or give rise to a right in favor of any non-Debtor under any MDT Insurance Policy, for the indemnification or reimbursement of any Person for costs, losses, damages, fees, expenses or any other amounts whatsoever relating to or arising from any actual or potential opioid-related litigation or dispute, whether accrued or unaccrued, asserted or unasserted, existing or hereinafter arising, based on or relating to, or in any manner arising from, in whole or in part, Opioid-Related Activities or other conduct occurring prior to the Effective Date; and (ii) an agreement by each counterparty to release the Debtors (and any assignee thereof or successor thereto) and all Insurance Companies from any and all obligations, liabilities, Claims, Causes of Action and other rights of recovery arising under or relating to such indemnification and reimbursement rights to the extent relating to any conduct occurring prior to the Effective Date, and an agreement by such party to release any and all Co-Defendant Claims held by such party and to channel, in accordance with the Channeling Injunction, all Channeled Claims arising under or relating to such contract, including any such Claims that might otherwise be elevated to administrative status through assumption of such contract or lease.

Assumed Contracts Notice at 3-4.

9. The Plan further provides that all "Co-Defendant Claims," defined to include Cardinal Health's opioid-related indemnity and contribution claims as well as claims against Purdue's insurance policies, "shall be released and discharged with no consideration on account

thereof, and all Proofs of Claim in respect thereof shall be deemed Disallowed and expunged." Plan § 8.4(a); Assumed Contracts Notice at 4. And finally, the Plan provides that any contract counterparty that does not timely object shall be deemed to have consented to such assumption and amendment of its agreements, and release of its claims. *Id.*

## OBJECTION

10. Cardinal objects and does not consent to the proposed assumption and unilateral amendments of its contracts with the Debtors.

11. First, Cardinal Health objects to the Assumed Contracts Notice as impermissibly vague. The Debtors do not list any contracts for which they do not intend to pay a cure, and do not specifically identify which contracts are subject to the amendment provisions described herein, instead relying on counterparties such as Cardinal Health to guess which category they fall into and respond accordingly.

12. Based on Cardinal Health's understanding that the Debtors do intend to assume and amend all of Cardinal Health's current distribution and related agreements with Purdue Pharma L.P., Rhodes Pharmaceuticals L.P., and related Debtors without paying any cure cost, Cardinal Health hereby objects to the assumption of each and every such agreement.

13. It is fundamental black-letter law that, although a chapter 11 debtor has broad discretion to exercise its business judgment to assume or reject executory contracts, it must assume or reject the contracts *cum onere*, and cannot pick and choose only those provisions that it wishes to keep. *See N.L.R.B.* v. *Bildisco & Bildisco*, 465 U.S. 513, 532 (1984); *accord In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) (explaining that a debtor must either assume contract in its entirety, or reject it, "shedding obligations as well as benefits").

14. Instead of complying with this basic command, the Debtors seek to assume and amend — as a default rule — distributor contracts like Cardinal Health's to nullify all indemnity and related provisions insofar as they relate to pre-petition opioid claims. The Debtors go further, seeking to strip out Cardinal Health's rights as an additional insured under certain of the Debtors' insurance policies, including the MDT Insurance Policies.[5] As set forth in detail in section I.B of the *Joint Objection of Certain Distributors, Manufacturers, and Pharmacies to the Sixth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and its Affiliated Debtors* [Dkt. No. 3306] (the "DMP Plan Objection"), which Cardinal Health adopts and incorporates by reference herein, Cardinal Health's rights as an additional insured are independent property and contract rights running between Cardinal Health and the respective insurers. *See In re Petters Co.*, 419 B.R. 369, 376 (Bankr. D. Minn. 2009) (describing each insured's status as "contractually-distinct"). As such, these additional insured rights are not property of the estate and this Court lacks jurisdiction to alter those rights. *See In re Adelphia Comm'cns Corp.*, 364 B.R. 518, 527 (Bankr. S.D.N.Y. 2007) (explaining that additional insureds' rights to payment from insurers are "a contractual entitlement . . . as a kind of *in rem* right, and would be independent of anything the Estate sought or received").

15. Cardinal Health further objects to the "deemed consent" process for amendment set forth in the Plan and the Assumed Contracts Notice, which states that contracts will be assumed and amended unless the counterparty objects to the proposed amendment and releases described in the Plan. *See* Plan § 8.4(a). As set forth in further detail in the DMP Plan

---

[5] "MDT Insurance Policies" is defined to mean "all Purdue Insurance Policies that do or may afford the Debtors rights, benefits, indemnity, insurance coverage or defense costs with respect to any Claim or Cause of Action against the Debtors arising out of, on account of, or in connection with Opioid-Related Activities or for which the Debtors have insurance rights arising out of or in connection with Opioid-Related Activities . . . ." Plan § 1.1 at 16.

Objection, this procedure is procedurally deficient and contrary to applicable law. *See* DMP Plan Objection § I.C; *see also, e.g.*, *City of Covington* v. *Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1226 (6th Cir. 1995) ("Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party."). This is particularly true where, as here, the terms of the parties' agreements require that amendments be in writing. *See* ADA § 42 (requiring that amendments be in writing signed by authorized representatives of both parties); WPA § 22 (same).

16. The "deemed consent" construct is likewise inconsistent with the Bankruptcy Code, which grants administrative expense status to cure amounts and to any amounts that come due after a contract is assumed. *See ReGen Cap. I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.)*, 547 F.3d 484, 496 (2d Cir. 2008). The Bankruptcy Code requires that such expenses be paid in full in cash on the Plan effective date unless the counterparty "has agreed to a different treatment." 11 U.S.C. § 1129(a)(9). The Plan's default treatment fails to comply with this requirement.

17. The Assumed Contracts Notice and corresponding provisions of the Plan provide that to the extent a counterparty objects to such treatment of its contracts, those contracts will be rejected and the counterparty's rejection claims disallowed, and any "Estate Causes of Action" against such counterparty will be retained. Assumed Contracts Notice at 4; Plan § 8.4(c). Although the meaning of the retention of claims is left unclear by the Assumed Contracts Notice, the Plan itself makes clear that, even for counterparties willing to accept the proposed unilateral

amendment to eliminate their indemnity and insurance claims, the Debtors nonetheless intend to retain, and not release, their own purported indemnity claims against those counterparties.[6]

18. Cardinal Health, which has existing indemnity and insurance rights under its agreements and has asserted valid claims which, pursuant to 11 U.S.C. § 365, would need to be assumed and complied with as part of assumption of its agreements generally, does not consent to the proposed assumption and amendment of each of its contracts.[7] If the Debtors wish to continue their commercial relationship with Cardinal Health on different terms than those previously agreed to, they are welcome to take the usual approach of attempting to negotiate mutually commercially acceptable amendments, rather than distorting the Code's statutory assumption process by trying to cram one-sided amendments down the throat of their counterparty.

## CONCLUSION

19. For the foregoing reasons, the Debtors' request to assume and amend their contracts with Cardinal Health should be denied.

---

[6] Plan § 1.1 at 23 (defining "NewCo Transferred Assets" to include "all Retained Causes of Action against Co-Defendants and ongoing commercial counterparties of NewCo"); *id.* § 10.6(c) (excluding from Debtors' release of claimants "any . . . Co-Defendant").

[7] Cardinal Health objects to the Debtors' assumption of each of their agreements with Cardinal Health whether or not listed herein. In addition, Cardinal Health's proofs of claim expressly assert claims under Cardinal Health's prior agreements with the Debtors. Certain of those agreements also contained indemnity and/or additional insured provisions in Cardinal Health's favor, and, for the avoidance of doubt, Cardinal Health likewise objects to the attempted impairment of those rights under the Plan.

| | |
|---|---|
| Dated: August 2, 2021<br>New York, New York | Respectfully submitted,<br><br>*/s/ Douglas K. Mayer*<br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>Richard G. Mason<br>Douglas K. Mayer<br>Elaine P. Golin<br>Angela K. Herring<br>51 West 52nd Street<br>New York, New York  10019<br>Telephone:  (212) 403-1000<br>Fax:  (212) 403-2000<br>E-mail:  RGMason@wlrk.com<br>　　　　　DKMayer@wlrk.com<br>　　　　　EPGolin@wlrk.com<br>　　　　　AKHerring@wlrk.com<br><br>*Counsel for Cardinal Health, Inc. and*<br>*Related Entities Listed on Exhibit A* |

- 9 -

## Exhibit A: Cardinal Health Entities

- Cardinal Health, Inc.
- Cardinal Health 3, LLC
- Cardinal Health 3, Inc.
- Cardinal Health 5, LLC
- Cardinal Health 6 Inc. (f/k/a Physicians Purchasing, Inc.)
- Cardinal Health 100, Inc.
- Cardinal Health 103, Inc.
- Cardinal Health 104, LP
- Cardinal Health 105, Inc. (d/b/a Specialty Pharmaceutical Services)
- Cardinal Health 106, Inc.
- Cardinal Health 107, LLC
- Cardinal Health 107, Inc.
- Cardinal Health 108, LLC (f/k/a Cardinal Health 108, Inc.) (d/b/a Specialty Pharmaceutical Distribution) (d/b/a Metro Medical Supply)
- Cardinal Health 110, LLC (d/b/a Gen-Source RX) (f/k/a Cardinal Health 110, Inc.)
- Cardinal Health 112, LLC
- Cardinal Health 113, Inc.
- Cardinal Health 113, LLC
- Cardinal Health 122, LLC (f/k/a P4 Healthcare, LLC)
- Cardinal Health 132, LLC
- Cardinal Health 200, LLC
- Cardinal Health 201, LLC
- Cardinal Health 201, Inc.
- Cardinal Health 411, Inc.
- Cardinal Health 414, LLC
- Cardinal Health P.R. 120, Inc. (f/k/a Borschow Hospital & Medical Supplies, Inc.)
- Cardinal Health Pharmacy Services, LLC
- Dik Drug Company, LLC
- The Harvard Drug Group, L.L.C. (d/b/a Major Pharmaceuticals) (d/b/a Rugby Laboratories)
- Kinray, LLC (f/k/a Kinray, Inc.)
- Kinray I LLC
- ParMed Pharmaceuticals LLC (f/k/a Parmed Pharmaceuticals, Inc.)