UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

# DECLARATION OF GARRETT LYNAM

Under 28 U.S.C. § 1746, I, Garrett Lynam, declare under the penalty of perjury that the following is true and correct:

1. I am General Counsel at Kokino LLC ("Kokino"), which is a single-family office owned by the Jonathan Sackler family that provides investment management and other services to their family and other associated family clients. Kokino competes with hedge funds, private equity funds, venture capital funds and other family offices for investment opportunities.

2. I am also the executor of the Estate of Jonathan Sackler. The Jonathan Sackler family is part of the Raymond Sackler (or, "Side B") family. The Estate of Jonathan Sackler is a Shareholder Payment Party in the Shareholder Settlement Agreement, as those terms are defined in the *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 3185] (the "Plan"). Under the Plan, the Shareholder Payment Parties are the parties who will enter into the Shareholder Settlement Agreement on behalf of the shareholders of the Debtors and other released parties who are associated with the Shareholder Payment Parties.

3. I hold positions with additional Side B Shareholder Payment Parties as follows:

(a) AJ Irrevocable Trust: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of the AJ Irrevocable Trust.

(b) <u>JDS Revocable Pourover Trust</u>: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of the JDS Revocable Pourover Trust.

(c) <u>Raymond R. Sackler Trust 2 dtd 12/23/89</u>: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of the Raymond R. Sackler Trust 2 dtd 12/23/89.

(d) <u>Raymond R. Sackler Trust 2B dtd 12/23/89</u>: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of the Raymond R. Sackler Trust 2B dtd 12/23/89.

(e) <u>Trust under agreement dated December 23, 1980 f/b/o Jonathan D. Sackler</u>: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of the Trust under agreement dated December 23, 1980 f/b/o Jonathan D. Sackler.

(f) <u>Trust under agreement dated December 3, 1979 f/b/o Jonathan D. Sackler</u>: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of the Trust under agreement dated December 3, 1979 f/b/o Jonathan D. Sackler.

(g) <u>Trust under agreement dated June 16, 1980 f/b/o Jonathan D. Sackler</u>: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of the Trust under agreement dated June 16, 1980 f/b/o Jonathan D. Sackler.

(h) <u>Temagami LLC</u>: I am the sole manager of Temagami LLC.

(i) <u>Hudson Trust</u>: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of Hudson Trust.

(j) <u>Irrevocable Trust under Declaration dated as of December 29, 1992</u>: I am a Vice President of Cornice Fiduciary Management LLC, which is the trustee of the Irrevocable Trust under Declaration dated as of December 29, 1992.

4. I expect that I will have a managerial (or similar) role with the following Side B Shareholder Payment Parties that are yet to be formed:

(a) "New AJ Holding Company LLC"

(b) "New 2A Trust Holding Company LLC"

5. As General Counsel of Kokino, I work with or provide services to the following Side B Shareholder Payment Parties:

(a) 1JM LLC

    (b)    2JM LLC

    (c)    3JM LLC

    (d)    JGT One LLC

    (e)    JGT Two LLC

    (f)    JGT Three LLC

    (g)    Meridian International, Ltd.

    (h)    Trust U/A 11/5/74 fbo Beverly Sackler.[1]

6.    In my capacity as an executor, officer, or advisor to the Side B Shareholder Payment Parties discussed above, I have authority over, or meaningful input into, the material decisions of these entities and trusts, including whether to enter into the Shareholder Settlement Agreement and contribute to payment of the Shareholder Settlement Amount.

7.    I would not advise or authorize the Side B Shareholder Payment Parties to enter into the Shareholder Settlement Agreement or contribute to the Shareholder Settlement Amount without the releases currently contemplated in the Plan. I understand that these releases release claims based on or relating to the Debtors against the Side B Sackler family members who are former directors of Debtors (the "<u>Side B Former Directors</u>"), as well as claims against Sackler family members who never held a meaningful role with the Debtors and certain persons, trusts and entities associated with the Side B family members (such as employees of, and advisors to,

---

[1] I also serve on committees of Cedar Cliff Fiduciary Management Inc., which is one of the trustees of Trust U/A 11/5/74 fbo Beverly Sackler.

the Side B family; trusts for their benefit (including current and former trustees); and entities beneficially owned by them (including current and former directors, officers and other principals)).

8.  I believe that it is important for all of these parties to be released because otherwise the Side B family members and their assets (including the Side B Shareholder Payment Parties that I advise) would continue to be involved in and affected by litigation similar to that which was ongoing before the Debtors filed for bankruptcy protection. The releases currently contemplated in the Plan for various Side B related parties, including the family members, employees, advisors, trusts, trustees and entities (including officers) set forth in Appendix H to the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 2983] and other persons constituting Shareholder Released Parties (collectively, the "Related Parties"), are important because history has shown that plaintiffs will pursue individuals in litigation related to the Debtors even if the individual has little or no connection to the Debtors. For example, the children of Jonathan Sackler, who never had any role with the Debtors (other than summer internships or similar short-term educational experiences when they were in school) were subjected to extensive document discovery in these bankruptcy cases. Marianna Sackler, the daughter of Richard Sackler, was similarly subjected to extensive discovery in these bankruptcy cases and was sued in pre-petition litigation even though to my knowledge she never had a meaningful role with the Debtors. Litigation against Related Parties would continue to negatively affect Side B family members by subjecting them to burdensome third-party discovery, exposing them to litigation, and causing them personal distress.

9. Additionally, certain of the Side B Shareholder Payment Parties are entities and trusts whose owners and beneficiaries are not limited to the Side B Former Directors. I would not recommend or authorize these trusts and entities to contribute to the Shareholder Settlement Amount without ensuring that all these entities and trusts, and their respective owners, trustees, beneficiaries and other Related Parties, receive releases in exchange for the contribution.

10. In summary, as a fiduciary to the Side B family and the Side B Shareholder Payment Parties, I would not recommend that the Side B Shareholder Payment Parties enter into the Shareholder Settlement Agreement or contribute to the Shareholder Settlement Amount without the releases currently contemplated in the Plan, including the releases of the Related Parties. My recommendation that the Side B Shareholder Payment Parties enter into the Shareholder Settlement Agreement and contribute to the Shareholder Settlement Amount is expressly conditioned on the inclusion of the releases currently contemplated in the Plan without any material change.

Date: August 2, 2021

_____
Garrett Lynam