UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

### DECLARATION OF ALEXA M. SAUNDERS

I, Alexa M. Saunders, declare as follows:

1. I am a director of Bowland Company Limited, which acts as a protector of certain trusts for the benefit of the Mortimer D. Sackler family ("**Side A**"). I am also myself a protector of certain of the trusts for the benefit of Side A. In this declaration, I refer to certain trusts for the benefit of Side A as the "**General Trusts**" and I refer to my role (whether I am acting as a director of Bowland Company Limited or personally) as a "**Protector**." The General Trusts are known as such because the beneficiaries are typically the widow and descendants of Dr. Mortimer D. Sackler and, in some cases, charitable beneficiaries (see further paragraph 4 below). I also act as protector of certain trusts for the benefit of particular sub-branches of Side A (known as "**Family Trusts**"), but these trusts are not included in references to "General Trusts"

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

and are not otherwise referred to in this Declaration save where I refer to "Trusts" where I mean the General Trusts and the Family Trusts collectively.  Attached as Schedule A is a list of the General Trusts of which I am a Protector.  I am submitting this Declaration in my own individual capacity.  I am also submitting this Declaration as a representative of Bowland Company Limited.  The other director of Bowland Company Limited is Maître Hermance Schaepman, who also acts as an individual Protector.  Avocat Schaepman has reviewed this declaration and agrees with its contents.

2.     Certain of the General Trusts hold Side A's share in approximately 50% equity interest in certain international pharmaceutical companies (the "**Independent Associated Companies**" or "**IACs**").  A number of entities are designated under the relevant trust instruments as "Retained Assets," meaning that consent of the Protectors is required before these entities can be sold.  Certain of the entities that I understand are identified as IACs under the settlement agreement are designated as "Retained Assets" for the purposes of the applicable trust instruments.  I am submitting this Declaration to the Court to explain that, as fiduciaries, the Protectors cannot validly agree to the sale of these IACs, as would be required under the Shareholder Settlement Agreement to be entered into in connection with the Plan (as defined in paragraph 8 below), unless the Protectors consider that to do so is in the best interests of the beneficiaries of the relevant General Trusts as a whole.  I cannot see that there would be benefit to the beneficiaries in the IACs being sold and the sale proceeds remitted to the Estate in the manner envisaged in the Shareholder Settlement Agreement unless releases are obtained for the Trusts, Trustees, Trustee Directors, Protectors, Special Trustees, all of the beneficiaries and certain related persons and entities with respect to claims that could be brought by the Estate (the "**Estate Claims**") and statutory or common law claims relating to Purdue Pharma L.P. (the

"**Third-Party Claims**") (the "**Shareholder Releases**" as set forth in Section 10.7 of the Plan). Unless releases are obtained, the trustees of the relevant General Trusts would need to maintain the IACs, which are valuable assets, or retain the proceeds of any sale of the IACs, in order to fund the immense costs of defending hundreds, if not thousands, of cases for the foreseeable future.

**I.    Professional Overview**

3.    I am a resident of Jersey, Channel Islands ("**Jersey**"). I am qualified as an Advocate of the Royal Court of Jersey and as a solicitor of the Supreme Court of England and Wales (currently non-practising). I am a partner in the Trusts and Private Wealth team of Carey Olsen Jersey LLP. I have been acting as a Protector of the General Trusts set out in Schedule A since March 2018. The role of the Protector under the General Trusts is principally to ensure that the trustees are exercising certain powers enumerated in the relevant trust instrument properly.

**II.    Overview of the Relevant Trusts**

4.    I am a Protector of 24 General Trusts that hold Side A's interests in certain pharmaceutical companies or cash and other investments for the benefit of Side A generally (see Schedule A). The beneficiaries of the General Trusts are the widow and descendants of Dr. Mortimer D. Sackler. Dr. Mortimer D. Sackler, who passed away in 2010, was survived by his wife, Theresa Sackler, and seven adult children: Ilene Sackler, Kathe Sackler, Samantha Hunt, Mortimer D.A. Sackler, Marissa Sackler, Sophie Dalrymple, and Michael D. Sackler. With grandchildren and great grandchildren, there are currently 30 beneficiaries of the General Trusts plus certain charitable beneficiaries.

5.    The protectors' obligations under the General Trusts are fiduciary. This means that, under Jersey law, as a Protector I can only act in what I believe to be the best interests of the

beneficiaries of the General Trusts.  The specific role and responsibilities of the Protectors are described in the applicable declaration of trust.  The principal role of the Protectors under the General Trusts is to oversee certain actions of the trustees, which can only be taken with the consent of the Protectors.

6. Fifteen of the General Trusts are the ultimate owners of approximately 50% interests in the IACs for the benefit of Side A.[2]  Certain of the entities that I understand are identified as IACs under the settlement agreement are designated as "Retained Assets" for the purposes of the applicable trust instruments.   Under the terms of the applicable trust instruments, the trust companies that act as trustees for the General Trusts (the "**Trustees**") can sell the IACs that are designated as "Retained Assets" only with the consent of the Protectors.  The following language is representative of the terms in the applicable General Trusts that govern "Retained Assets"[3]:

> If the Settlor shall direct in writing the Trustees to retain any asset (a "**Retained Asset**") as part of the Trust Fund of this Settlement the Trustees shall not dispose of any such Retained Asset unless directed to do so by the Settlor during his lifetime.  Thereafter or in the case of the incapacity of the Settlor the Trustees shall not dispose of any Retained Asset other than with the prior or simultaneous written consent of the Protectors.  Neither the Trustees nor the Protectors shall be under any duty to act upon any information received in respect of any Retained Assets (other than any such directions) or to make any enquiries as to the desirability of any such Retained Asset as an investment.  The Trustees and the Protectors shall be absolved from any liability in respect of any loss to the Trust Fund in relation to any Retained Asset.

If a majority of the Protectors do not consent, the Trustees cannot validly authorize the sale of such IACs.  Although there are three protectors – Bowland Company Limited, Avocat

---

[2] I understand the rest of the interests in the IACs are held by entities for the benefit of Side B.

[3] I understand that the applicable trust instruments have been provided to creditor representatives in the bankruptcy proceedings.

Schaepman and myself – in practice, because Avocat Schaepman and I are the only directors of Bowland Company Limited, we would have to unanimously agree to any such sale.

### III. The Protectors Will Consent to the Sale of the IACs Only if the Plan Contains the Broad Shareholder Releases As Set Forth in the Plan

7. I am aware that since 2018, certain governmental and private plaintiffs have named as defendants (among others) four beneficiaries of the General Trusts who served on Purdue's board (Ilene Sackler, Kathe Sackler, Mortimer D.A. Sackler, and Theresa Sackler, collectively, the "**Side A Former Directors**"). I understand that there are currently approximately 2,600 suits against Purdue regarding its prescription opioid marketing practices and approximately 750 suits against the Side A Former Directors. These claims are seeking billions, if not trillions, of dollars in damages. In addition, the Estate has asserted that it could bring claims, styled as fraudulent conveyance or otherwise, to recover at least $10 billion in distributions from Purdue to entities for the benefit of the Sackler families (approximately half of which I understand was for the purpose of paying taxes on Purdue's income).

8. I am aware that an agreement has been reached between the Sackler families, the Debtors and a wide variety of creditor groups, that is incorporated into the Plan of Reorganization (the "**Plan**"). The Plan has been submitted to the Court for approval. Of relevance to the Protectors, the Shareholder Settlement Agreement provides that the IACs will be sold and the proceeds will be escrowed and used to fund the payment obligations of the Sackler families. The IACs that have been designated as Retained Assets can be sold only with consent of a majority of the Protectors. That effectively means that Side A cannot participate in the Shareholder Settlement Agreement without the Protectors' consent.

9. As fiduciaries with a duty to ensure that the decisions of the Trustees to which they are asked to consent are made in the best interests of beneficiaries, the Protectors consider

5

that they could not consent to the sale of the IACs that have been designated as Retained Assets in circumstances where the proceeds would be remitted to the Estate in the manner envisaged in the Shareholder Settlement Agreement unless the Shareholder Settlement Agreement contains the Shareholder Releases, as set forth in Section 10.7 of the Plan. The Protectors can in good conscience consent to the sale of Retained Assets only if they consider that to do so is in the best interests of the beneficiaries as a whole. Entry into the Shareholder Settlement Agreement is considered to be in the best interests of the beneficiaries if, and only if, it provides for global finality. Global finality means that risks of litigation related to the subject matter of the Shareholder Releases will be eliminated, once and for all. Absent the Shareholder Releases, there would be no global finality; the General Trusts would be selling the IACs, a major source of Side A's wealth, and remitting the proceeds to Estate in the manner envisaged in the Shareholder Settlement Agreement yet the beneficiaries and Trusts would still remain subject to suits seeking billions of dollars in damages.

10. To be clear, if one or more of the parties that has objected to the Plan were carved out or otherwise excluded from the Shareholder Releases, the benefits of global finality that provide the rationale for the sale of the IACs and the performance of the Settlement would be seriously undermined and I do not believe the Protectors could properly consent to the sale of the Retained Assets in those circumstances.

I declare under the penalty of perjury that the foregoing is true and correct.

*/s/ Alexa Saunders*
Alexa M. Saunders

Executed at Jersey, Channel Islands
on 5 August 2021

6

## Schedule A

### GENERAL TRUSTS OF WHICH ALEXA M SAUNDERS OR BOWLAND IS PROTECTOR

**"AMS"**          Alexa M. Saunders

**"Bowland"**      Bowland Company Limited

**"HBMS"**         Hermance B. M. Schaepman

|     | Name of General Trust      | Protectors           |
|-----|----------------------------|----------------------|
| 1.  | Angonoka Trust             | Bowland, AMS, HBMS   |
| 2.  | Beacon Trust               | Bowland, AMS         |
| 3.  | Canadian Partnership Trust | Bowland              |
| 4.  | Clover Trust               | Bowland, AMS, HBMS   |
| 5.  | Cobo Bay Trust             | Bowland, AMS, HBMS   |
| 6.  | Diagonal Blue Trust        | Bowland, AMS, HBMS   |
| 7.  | Fidinc Trust               | Bowland, AMS, HBMS   |
| 8.  | Gorey Trust                | AMS, HBMS            |
| 9.  | Halm Trust                 | Bowland, AMS, HBMS   |
| 10. | Hercules Trust             | Bowland, AMS, HBMS   |
| 11. | La Coupe Trust             | AMS, HBMS            |
| 12. | Lune River Trust           | Bowland, AMS, HBMS   |
| 13. | Medichem Trust             | Bowland, AMS, HBMS   |
| 14. | Meerkat Trust              | Bowland, AMS, HBMS   |
| 15. | Memphis Pharma Trust       | Bowland, AMS, HBMS   |
| 16. | Mil Trust                  | Bowland, AMS, HBMS   |
| 17. | Milton Trust               | Bowland, AMS, HBMS   |

8

| | | |
|---|---|---|
| 18. | Mondai Trust | Bowland, AMS, HBMS |
| 19. | Mundi Lab Trust | Bowland, AMS, HBMS |
| 20. | Pickering Trust | Bowland, AMS, HBMS |
| 21. | Reserve Trust | Bowland, AMS, HBMS |
| 22. | Silver Trust | Bowland, AMS, HBMS |
| 23. | Tom & Kelly Trust | Bowland, AMS, HBMS |
| 24. | Varus Trust | Bowland, AMS, HBMS |