**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re:                                                                    Case No.:  19-23649

      PURDUE PHARMA L.P., et al.,                         Chapter 11

                      Debtor

-----------------------------------------------------------x          Hearing Date:  Aug. 9, 2021
                                           Hearing Time:  10:00 a.m.

### AD HOC GROUP OF HOSPITALS' REPLY TO THE OBJECTION OF THE UNITED STATES TRUSTEE TO  SIXTH AMENDED JOINT CHAPTER 11 PLAN OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS

The Ad Hoc Group of Hospitals (the "Hospitals") submits this reply ("Reply") to the Objection of the United States Trustee to Sixth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and its Affiliated Debtors (the "UST Objection") [D.E. #3256].  In support, the Hospitals incorporate declarations of Don Barrett (Exhibit "A") and Shannon McNulty (Exhibit "B"), as well as the Final Mediator's Report [D.E. #3339] and state as follows:

### I.      Summary of Argument

While everyone appreciates the U.S. Trustee's role as "watchdog of the federal bankruptcy system" and in particular its focus on professional fees, especially in mega-cases, the UST Objection misses the mark in the second part[1] of its Objection when criticizing "the payment of up to $500 Million in attorneys' fees under Section 5.8 without court oversight and approval or the opportunity for parties to object as required by Section 503(b)(4) of the Code."  The UST misapprehends the fee provisions and its objection is, therefore, misplaced.  As described in more

---

[1] The first and primary portion of the UST Objection is devoted to a critique of the Plan as it relates to the Sackler Entities; the Hospitals are relying on the Debtors to address that portion of the UST Objections

detail below, the Plan is essentially the vehicle for implementing a whole series of good-faith, hard-fought, interdependent and closely integrated settlements, only achieved after remarkably extensive mediation efforts by Kenneth Feinberg.  Notably, and perhaps not fully acknowledged by the UST,  because the fees and expenses being paid to the Hospitals' counsel under Section 5.8 of the Plan are coming from creditor distributions and not the estate, and paid out over the course of five years as distributions are received by the Hospital Trust, both Sections 1129(a)(4) and 503(b)(4) are simply inapposite.[2] Even if those statutory provisions did apply, however, the contemplated fees and expenses are both eminently reasonable and cannot be severed from the overall settlements reflected in the Plan.

## II.    <u>Argument</u>

**A.  The Purdue Plan Provides For The Fees Of The Hospitals' Counsel To Be Paid Out Of Class 6 Abatement Distributions, <u>Not</u> Paid Directly By The Debtor Or Plan Proponent, So Bankruptcy Code Section 1129(A)(4) Is Inapplicable, Particularly Where The Plan Incorporates Complex, Interwoven And Nonseverable Settlements.**

1.    Courts that have considered the applicability of Bankruptcy Code section 1129(a)(4) have drawn a distinction between (i) non-estate compensated professional fees payable directly by the debtor or a plan proponent and (ii) non-estate compensated professional fees payable out of creditor distributions.  Bankruptcy Code section 1129(a)(4) does not apply to the latter.

---

[2] In our Argument below, we focus on section 1129(a)(4), which this Court identified as a potential confirmation issue in prior hearings. The UST Objection's discussion of section 503(b)(4) relies solely on  <u>In re Lehman Bros. Holdings, Inc.</u>, 508 B.R. 283, 289 (S.D.N.Y. 2014), which is an outlier case, contrary to the case law addressing a Court's ability to approve fees in the context of a plan of reorganization. Unlike in this case, the fees at issue in <u>Lehman</u> were not determined through a court order as part of a global plan settlement, but instead were those of committee member professionals, whose fees are otherwise not permitted to be paid (absent a substantial contribution) under the Bankruptcy Code.

2.    Bankruptcy Code section 1129(a)(4) provides that the court shall confirm a plan only if "any payment made or to be made *by the proponent, by the debtor*, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case . . . has been approved by, or is subject to the approval of, the court *as reasonable*." 11 U.S.C. § 1129(a)(4) (emphasis added).

3.    Consistent with the express language of Bankruptcy Code section 1129(a)(4), courts within the Second Circuit have held that this provision requires "all payments of professional fees that are made *from estate assets* be subject to review and approval as to their reasonableness by the Court." *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401, at *159 (Bankr. S.D.N.Y. Oct. 31, 2003) (emphasis added) (citing *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992); *In re Ditech Holding Corp.*, 606 B.R. 544, 574 (Bankr. S.D.N.Y. 2019) ("Pursuant to [Bankruptcy Code section 1129(a)(4)], first there must be disclosure of the proposed payment, second the court must approve the reasonableness of payments*.").*

4.    In *Johns-Manville*, the bankruptcy court for the Southern District of New York concluded that Bankruptcy Code section 1129(a)(4) does <u>not</u> apply to a plan provision that provided for payment of asbestos claimants' professional fees because such fees would be paid out of plan distributions on such claimants' allowed claims. *Matter of Johns-Manville Corp.*, 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986). Specifically, the court held that it did not have jurisdiction to rule on the propriety of fee arrangements between tort claimants and their attorneys, noting that such fee arrangements did not "effect the administration of the Debtor's estate" and were "immaterial to these reorganization proceedings." *Id.* at 632.

5.    Other cases in which courts have found Bankruptcy Code section 1129(a)(4) applicable to plan provisions providing for the payment on non-estate professional fees have

focused on the fact that the contemplated fees would be paid directly by the debtor or a plan proponent. For example, in *TCI 2 Holdings*, the U.S. Trustee objected to a plan provision that required the debtors to pay the fees and expenses of an ad hoc committee of second lien noteholders, the second lien indenture trustee and the backstop parties, all without application by or on behalf of any such parties, and without notice and a hearing. *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 145-46, 2010 Bankr. LEXIS 1169, at *55-57 (Bankr. D.N.J. April 12, 2010). The bankruptcy court refused to approve this provision, noting that approval of such fees would require disclosure and court approval under Bankruptcy Code section 1129(a)(4), and further held that the advisors seeking such fees would be required to apply for payment of their fees and expenses under Bankruptcy Code section 503(b). *Id.*

6.      Accordingly, in this case, given the Plan's structure, and the fact that the legal fees in question are being paid from creditor distributions for a dedicated trust, the Court should conclude that Bankruptcy Code section 1129(a)(4) simply does not apply.

**B.      If This Court Determines That Fees Contemplated To Be Paid To Non-Estate Professionals Must Satisfy Bankruptcy Code Section 1129(A)(4), The Hospitals Have Established That Such Payments Meet The Reasonableness Standard.**

> **(1) Relevant case law supports Class Six's conformity with Plan requirements and the reasonableness of the fees.**

7.      Courts have noted that the reasonableness inquiry is open-ended and involves consideration of the particular facts and circumstances of the case. Courts generally review submissions from the party seeking reimbursement—which may include disclosure of the amount of compensation sought and a description of the services provided (with varying levels of detail)— and a declaration or other submission from the debtor or plan proponent in support of the reasonableness of the fees at issue.

8.      Courts within the Second Circuit have agreed with the Fifth Circuit's statement in

*Cajun Electric*, stating in pertinent part:

> [t]he determination whether a payment is reasonable under § 1129(a)(4) requires
> an analysis of the issue of reasonableness based on the facts and circumstances of
> the payments. . . .  [T]he issue of reasonableness will clearly vary from case to case
> and, among other things, will hinge to some degree upon who makes the payments
> at issue, who receives those payments, and whether the payments are made from
> assets of the estate.  In the typical case, payments that are not payable from, or
> reimbursable by, the bankruptcy estate should not engender anything like the
> judicial scrutiny devoted to those that are payable out of the bankruptcy estate . . .
> Bankruptcy courts . . . should be chary about succumbing to the exhortations of
> litigants to turn 1129(a)(4) into a mandate for an expensive and unnecessary
> inquiry. *In re Journal Register Co.*, 407 B.R. 520, 537-38 (internal quotations
> omitted) (approving post-emergence incentive plan for certain of the debtors'
> employees).

9.      There exists a wide range of inquiry with respect to the showing courts require in

assessing the reasonableness of non-estate compensated professional fees requested under a plan

pursuant to Bankruptcy Code section 1129(a)(4), depending primarily on whether any party

objected to the fee provisions in question.  Perhaps not surprisingly, in cases where a plan's fee

provisions were fully consensual, courts seem to require a less comprehensive showing than in

cases where parties objected to payment of fees.   In cases where a party objected to the fee

provisions, courts appear to require, at minimum, disclosure of the amount of fees requested and

explanation of the services provided in connection with the requested fees, all of which is

addressed below.

10.      In *In re Adelphia Communs. Corp.*, one of the few cases within the Second Circuit

that discusses the permissibility and reasonableness of a plan provision providing for the payment

of non-estate professional fees in detail, the bankruptcy court concluded that (i) payment of an ad

hoc group's professional fees pursuant to a chapter 11 plan is permissible so long as the fees are

reasonable and the plan provision is not inconsistent with the Bankruptcy Code and (ii) the

5

reasonableness requirement prohibits payment of fees incurred in connection with certain inappropriate conduct. *In re Adelphia Commc'ns Corp.*, 441 B.R. 6 (Bankr. S.D.N.Y. 2010). In *Adelphia*, the chapter 11 plan incorporated a global settlement that resolved a highly contentious, protracted intercreditor dispute and that provided, among other things, for payment **from the debtors' estates** of the non-estate professional fees for fourteen ad hoc committees and certain individual creditors (collectively, the "Adelphia Applicants").

11.    After the plan was confirmed and the effective date occurred, the Adelphia Applicants filed fee applications seeking reimbursement for approximately $88 million in fees, and the U.S. Trustee objected on the grounds that such fees are permissible only as administrative expense claims that comply with Bankruptcy Code section 503(b) and that the Adelphia Applicants' fees were unreasonable. *Id*. at 11. Overruling the first part of the U.S. Trustee's objection, the bankruptcy court concluded that reasonable fees may be recovered under Bankruptcy Code section 1124(a)(9) without satisfying the requirements set forth in Bankruptcy Code section 503(b)(3) or (4). *Id.* at 19.

### (2) The litigation history of the Hospitals and their counsel further supports the appropriateness of the fees.[3]

12.    The advent of healthcare data, specifically the uniform coding and maintenance of patient claims data, brought change to healthcare operations. As expected, diagnoses and treatment data permits healthcare professionals to identify trends. In particular, as a consequence of their mission, their patient volume and the Emergency Medical Treatment and Labor Act ("EMTALA"), hospitals uniquely acquire insights concerning their patient population and the costs associated with their treatment of patients.

---

[3] (See Decl. of Barrett and McNulty, Exs. A and B).

6

13.     When there is a pandemic or an epidemic, like the opioid crisis, Hospitals can utilize their massive data warehouse to objectively isolate factors that quantify the impact on Hospitals and the communities they serve.  Of course, the processes and resources associated with making the data accessible and reliable for conducting such medical and "social autopsies" are intense and, for many, prohibitive, in terms of time, people, technology and expense. Counsel for the Hospital Group undertook that resource-intensive process.

14.     Significantly, Acute Care Hospitals were deep in the trenches of our country's opioid crisis. Indeed, when others could decline services or assistance to those who struggled with dependence on the offending pills, EMTALA obligated Acute Care Hospitals to accept and treat any and all patients, most significantly, those who suffered Opioid Use Disorder (OUD). Acute Care Hospitals effectively became ground zero for the overdosed patients, for pill-seeking patients including those who appeared otherwise functional, and for patients admitted for diagnoses most typically associated with opioid use.

15.     Equally significant, Acute Care Hospitals were the front-line infrastructure in the fallout from the opioid crises, providing the clinical and support staff, professional services, equipment, programming, and support necessary for essentially all medical treatment. They were steady and reliable anchors in their communities.

16.     Eventually, the burden of the opioid crisis was overwhelming hospitals, as reflected in staff burnout, increased security needs and lost revenue attributable to the increased complexity, frequency and cost associated with treating OUD patients.

17.     Accordingly, though generally litigation-averse, so bad had conditions become, that Hospitals sought the assistance of counsel for the purpose of asserting claims against

manufacturers (including these Debtors) and distributors. Hospitals stepped out as leaders in securing relief for treatment providers.

18.    In the pre-litigation phase, the Ad Hoc Group of Hospitals ("Hospitals" or "Hospital Group") conducted extensive research for the purpose of identifying viable causes of action. For example, counsel invested in data infrastructure (hardware and software) for the purpose of securely obtaining and maintaining the extensive claims data that served as the objective starting point for supporting the allegations against the debtor.

19.    From the onset, the Hospital Group engaged clinical experts to narrow relevant diagnoses and treatment codes, and engaged the chiefs of its various hospital-clients' clinical departments, including physicians and staff in emergency medicine, cardiology, nursing, critical care, psychiatry, addiction, obstetrics, the ICU and NICU, pharmacy and the hospitals' IT staff. With this expertise assembled early on, in 2017, 2018 and 2019 (all pre-pandemic), the Hospital Group spent months each year (traveling weeks at a time) to meet with Hospitals for the purpose of correlating the first-hand clinical experience surrounding the opioid crisis with highly focused data analyses. Unique to the Hospitals' cases, the Hospital Group isolated actual prescriptions for the various products, including those specifically manufactured by the Debtors. Thousands of hours were spent with representatives of a very substantial majority of the approximately 950 hospitals contractually represented by the Hospital Group.

20.    After amassing and securing healthcare data and firsthand clinical and operational context, the Hospital Group engaged the nation's foremost authority on the Racketeer Influenced and Corrupt Organization Act (RICO), University of Notre Dame Professor G. Robert Blakey and, with his disciplined expertise, prepared and filed the pleadings that constitute the basis for the

several dozens of cases initiated against the debtor (and now pending) in the Multi District Litigation (MDL No. 2804) and in many jurisdictions across the country.

21.      Once the litigation started, in support of the Hospitals' claims, the Hospital Group engaged in coordinated discovery across several states, engaging dozens of its attorneys in the review and coding of various production sets; assisted in the document review in the MDL (where Don Barrett, on behalf of Hospitals, had ultimately been appointed to the Plaintiffs' Executive Committee by Judge Polster); conducted separate collection, review and coding of hospital-specific discovery in response to discovery requests; and retained consulting experts in healthcare analytics, damages modeling, statistics, abatement planning, economics, addiction, critical care and trauma medicine, standard of care, pharmaceutical marketing and diversion.

22.      Importantly, in the course of discovery, the Hospital Group was able to isolate the various products by manufacturer and distributor, determine the pill volume circulating in the service areas of the various hospitals and locate actual prescriptions, by pill brand, for virtually every OUD patient encounter at the various hospitals represented by the Hospital Group. The Hospital Group then replicated and refined the process so that no uncertainty existed as to either causation or damages. From 2017 to present, thousands of hours have been dedicated to the collection, processing, analysis and storage of some 2.79 terabytes of patient data. Doubtlessly, the Hospital Group's data compiled in this litigation represents an exceedingly rare, if not historic, dataset.

23.      Once refined, other Class Six Hospitals' counsel reached out for assistance. The Hospital Group expended significant resources, in terms of people, time and money, assisting other Hospitals and their counsel with analyses of their data. Members of Class Six, and members of other groups inquiring, as well, were accommodated with analysis of their respective clients' data.

There was no charge to the requestors at the time of analysis, because it was understood (as customary with class allegations) that, if successful, the compensation for work that benefitted others who were not participating in litigation, would be reconciled in the context of disbursements.

24.     The Purdue Pharma bankruptcy proceedings posed further opportunity for the Hospital Group to advocate for healthcare's burden suffered in the crisis and their prominent role in abatement strategies. Though confident in their claims and their evidence, the Hospital Group was not simply designated an allocation of proceeds from the debtor's estate; nor was an allocation presumed. Instead, the Hospital Group quickly mobilized to share its facts and evidence in support of a hospital-specific allocation. One consequence of that effort was the designation of the Ad Hoc Group of Hospitals, through its counsel Don Barrett as a Mediation Party.

25.     Tirelessly, Don Barrett, with his co-counsel, Robert A. Clifford, Jon Cuneo, Ruth Lichtenfeld, Steve Martino and Shannon M. McNulty, worked through several months of mediation and adversarial proceedings to ensure a meaningful allocation for all Acute Care Hospitals and holders of Class Six Claims.  Though there was agreement amongst nearly all participants to the Hospital Mediation that acute care hospitals constituted anchors in their communities that were best-positioned to deliver abatement services, there was not immediate consensus on the necessity and import of designating a specific trust for Class Six. Over many months, in two phases, the Hospital Group demonstrated its evidence in support of that necessity. The Hospital Group presented experts, data and clinically-based abatement plan proposals.

26.     Throughout the proceedings, the Hospital Group provided multiple demonstrations of the data and Trust Distribution Procedures, and permitted regularly scheduled access to its expert, Bill Legier. Further, the Hospital Group championed the significance of the amassed OUD

claims data and the value of its objectivity. The Hospital Group continued to coordinate with the

clinical expertise and real experience of their clients, as well as their consulting experts, including

Rebecca Busch (claims data auditing); Gayle Galan, M.D., (emergency medicine); Rahul Gupta,

M.D. (abatement and social autopsy) and Bill Legier (causation and damages), all retained by the

Hospitals in connection these proceedings.

27.     The mediation was extensive, rigorous and adversarial. The Hospitals' role in

abating the crisis was expected to be expansive, but the recovery was not sufficient to satisfy the

demands placed on Hospitals as a result of the crisis and the implications of EMTALA. At every

turn, the Hospitals were challenged and the Hospital Group rose to those challenges with their

supporting data. Of course, another key component of the Hospitals success was its Motion

Seeking Leave to File a Class Proof of Claim for all Acute Care Hospitals. JX 2612. The relatively

substantial value allocated for the Class Six Claims was due to the strength of the Hospitals' class

motion and its supporting evidence presented during the mediation. The Hospitals did not run from

scrutiny or withdraw the class motion. Instead, the Hospital Group withstood and leaned into the

scrutiny with the strength of its objective evidence. For that reason, Class Six received an

allocation of $250,000,000.00.

28.     With the principled oversight of Mediator Feinberg over the course of many

months, the participants in the mediations eventually reached agreement that Class Six was worthy

of a separately designated trust. The Hospital Group succeeded in establishing a source of funding

for Class Six with a focus on abatement activities recognized by experts as being manageable for

clinicians, appropriate for the budget, and effective for the communities served. Without the

quantitative and qualitative evidence wholly unique to, and adduced only by, the Hospital Group,

and without the perseverance of negotiating for the Holders of Class Six Claims, it is unlikely that the Holders of Class Six Claims would have a specially designated Trust in this proceeding.

29.    The Hospital Group has made itself available to all Holders of Class Six Claims. Of the two objectors, one withdrew is objection once the parties conferred. As a result of the Hospital Group's thoroughness, fairness and evidence-based advocacy, the other objector, an emergency room physician,  has been caused to reduce his complaints to merely one (which is handled in separate papers). Remarkably, the Hospital Group has worked diligently with the debtor and the governmental entities to cohesively resolve all disputes that arose during the proceedings. Ultimately, the Plan was overwhelmingly approved with 89% acceptance by the Class 6 Creditors.

30.    As to the Hospital Group's fees, Section 5.8 of the Plan, which is a byproduct of the mediation, is reasonable, fair, and more than justified in light of the history of the Hospital litigation;  the Hospitals' case work-up, including the development of objective and statistically reliable evidence that demonstrated the specific impact of opioids in the treatment provider context; as well as the service, accessibility  and, ultimately, benefit provided by the Hospital Group to the Holders of Class Six Claims.

### (3)    **The 20% contingent fee (essentially reduced to 15% by means of the Common Benefit Fund) (a) is at the low end of the spectrum of contingent fees, whether in bankruptcy cases or otherwise; and (b) was disclosed to and approved overwhelmingly by Class 6 creditors**

31.    The proposed fees in Class 6 are well within the realm of reasonableness for class action-type cases and the typical attorneys' fee awards in larger cases.  There are numerous recent cases holding that larger awards are reasonable.  See, e.g., *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) (awarding 21% of a $50 million settlement fund in attorneys' fees); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348-55 (S.D.N.Y. 2014)

(awarded 25% of a $49.5 million settlement fund in attorneys' fees); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) (awarding 20.2% of a $58.5 million settlement fund in attorneys' fees); *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2015 WL 4560206 (S.D.N.Y. July 7, 2015) (awarding 22.5% of a $72.5 million settlement fund in attorneys' fees); *Stinson v. City of New York*, 256 F. Supp. 3d 283 (S.D.N.Y. 2017) (awarding 24.6% of a $56.5 million settlement fund in attorneys' fees).

32.    Moreover, the UST Objection  entirely overlooks the fact that *all* of the attorney fee provisions set forth in section 5.8 of the Plan, including the fees in Class 6, were integral parts of a global plan settlement that was the product of numerous mediations and other negotiations among the Debtors, the Hospitals and the numerous private and public parties-in-interest. Additionally, Class 6  overwhelmingly voted to accept the Plan, after full and complete disclosure of the attorney fee provisions.

### (4) **The Final Mediator's Statement Confirms both the Reasonableness of the Fees and the fact that this issue is an integral part of a nonseverable agreement**

33.    In the First Mediators' Report, Messrs Feinberg and Phillips noted that "legal fees for each Private Claimant group will be paid exclusively out of its agreed distribution or by other agreements with individual claimants (and not by the estate), although the *application of legal fees remains to be resolved between the Non-Federal Public Claimants and each of the Private Claimant groups*." (emphasis added). [DE1716 at ¶ 11]

34.    Since September 2020, with the assistance of the Mediators, as well as in other discussions, the Hospitals' counsel have participated in numerous conference calls and Zoom sessions aimed at resolving the issue of legal fees for Class 6 counsel.

35.    At about the time of the several hearings on approval of the Purdue Disclosure Statement, those negotiations concluded. The resolution of all of these issues are now documented in the Plan, including section 5.8 thereof.

36.    That resolution is the result of good-faith, arms'-length discussions and mediations. At the conclusion of these negotiations and discussions, compromises and settlements were reached between and among all parties, regarding all of the fee-related issues. The various fee resolutions described in Plan section 5.8 and elsewhere are an integral and non-severable part of the overall settlements on allocation among public and private claimants, and the settlements reached on allocation are dependent on the various agreements reached pertaining to contingency fees and common benefit funding.

37.    The Final Mediators' Report [DE 3339 at ¶¶17-26] confirms that: the legal fee resolutions are consistent with fee awards, arrangements, and assessments agreed upon in other similar mass tort situations, and properly reflect a fair and reasonable settlement based on the work engaged in by all mediation participants; the private side group counsel fee settlements, reached between the Ad Hoc Group of Hospitals and the Public Side Claimants, are consistent with similar mass tort situations where certain contingency fee counsel assume the responsibility of negotiating awards for a much larger group of constituents, after engaging in years of pre-settlement work; the percentages agreed upon in this matter are well within, if not at the lower end of, the range for comparable situations and that reaching agreement pertaining to contingency fees and common benefit assessments is often an integral and necessary part of reaching an agreement concerning overall allocation; and the fee settlements documented in the Plan are fair, reasonable, appropriate, and should be deemed to be an integral part of the Plan.

38.    Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  In determining whether to approve a settlement as fair and equitable under Bankrupt Rule 9019, courts in the Second Circuit the *Iridium* factors, which include: (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (c) the paramount interest of the creditors; (d) whether other parties in interest affirmatively support the proposed settlement; (e) the nature and breadth of releases to be obtained by officers and directors; (f) whether the competency and experience of counsel support the settlement; and (g) the extent to which the settlement is the product of arm's-length bargaining.  See In re Iridium Operating LLC, 478 F.3d 452, 462 (2d Cir. 2007); see also Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 292 (2d Cir. 1992); In re Ionosphere Clubs, Inc., 156 B.R. 414, 428 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).

39.    At this point in this case, it is widely accepted, and effectively self-evident,  that the Plan, and all of the settlements embodied therein, including the resolution of Class 6 legal fees, represent a fair and equitable compromise that is in the best interest of the Debtors' estates and creditors, falls well within the range of reasonableness, and satisfies each of the relevant *Iridium* factors.

WHEREFORE, the Hospitals request that the UST Objection be overruled and that the

Court grant such other and further relief as it deems proper.

Dated: August 5, 2021                          Respectfully submitted,


                                               TAFT STETTINIUS & HOLLISTER LLP

                                               By:    */s/ Michael P. O'Neil*
                                                      Michael P. O'Neil
                                                      Admitted *Pro Hac Vice*
                                                      Counsel for Ad Hoc Group of Hospitals

TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Tel.:    (317) 713-3500
Fax:    (317) 713-3699


## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2021 I caused a copy of the foregoing *AD HOC GROUP OF HOSPITALS' REPLY TO THE OBJECTION OF THE UNITED STATES TRUSTEE TO  SIXTH AMENDED JOINT CHAPTER 11 PLAN OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS*  to be electronically filed and served via the United States Bankruptcy Court for the Southern District of New York's CM/ECF system upon the following parties in this case: (See attached list)

                                               */s/ Michael P. O'Neil*
                                               Michael P. O'Neil

**Mailing Information for Case 19-23649-rdd – August 5, 2021**
**Electronic Mail Notice List**
The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Michael Geoffrey Abelow**    mabelow@sherrardroe.com, neads@sherrardroe.com
- **Jill Abrams**    jill.abrams@vermont.gov
- **Nicklas Arnold Akers**    nicklas.akers@doj.ca.gov
- **Sydenham B. Alexander**    sandy.alexander@mass.gov
- **Andrew Vincent Alfano**    andrew.alfano@pillsburylaw.com
- **Barbara M. Almeida**    barbara.almeida@clydeco.us, shane.calendar@clydeco.us
- **Anne Andrews**    aa@andrewsthornton.com
- **Philip D. Anker**    philip.anker@wilmerhale.com,
  yolande.thompson@wilmerhale.com;WHDocketing@wilmerhale.com;Joel.Millar@wilmerhale.com
- **Alison Archer**    alison.archer@ohioattorneygeneral.gov
- **Reuel D. Ash**    rash@ulmer.com, sbenoit@ulmer.com
- **Mitchell Jay Auslander**    maosbny@willkie.com, mauslander@willkie.com
- **Michael I. Baird**    baird.michael@pbgc.gov, efile@pbgc.gov
- **Jasmine Ball**    jball@debevoise.com, cponeal@debevoise.com;nquigley@debevoise.com
- **Lauren Guth Barnes**    lauren@hbsslaw.com, purduebankruptcy@hbsslaw.com
- **Barry Z. Bazian**    bbazian@goodwinlaw.com, acunningham@goodwinlaw.com
- **Morgan R Bentley**    mbentley@bentleyandbruning.com
- **Alexander Berk**    aberk@mayerbrown.com, courtnotification@mayerbrown.com
- **Thomas Moultrie Beshere**    tbeshere@oag.state.va.us
- **Thomas D. Bielli**    tbielli@bk-legal.com, dklauder@bk-legal.com;tnobis@bk-legal.com
- **Kathryn Blake**    kathryn.blake@ag.ny.gov
- **Jordan S. Blask**    jblask@fbtlaw.com, agilbert@tuckerlaw.com
- **Anthony D. Boccanfuso**    Anthony.Boccanfuso@apks.com, ecf-b9841d808f73@ecf.pacerpro.com
- **James T. Boffetti**    james.boffetti@doj.nh.gov, janet.demers@doj.nh.gov
- **John A. Boyle**    jboyle@khmarino.com, docketing@khmarino.com
- **Morton R. Branzburg**    mbranzburg@klehr.com, jtaylor@klehr.com
- **Paul E. Breene**    pbreene@reedsmith.com
- **William J. Brennan**    william.brennan@kennedyslaw.com
- **Gary D. Bressler**    gbressler@mdmc-law.com, scarney@mdmc-law.com;nleonard@mdmc-law.com
- **Daniel R Brice**    drbrice@bklawyers.com
- **Emily Brown**    ebrown@hsplegal.com
- **Celeste Brustowicz**    cbrustowicz@sch-llc.com, lrichardson@clfnola.com
- **Michael Morris Buchman**    mbuchman@motleyrice.com
- **Chane Buck**    cbuck@jonesday.com
- **Michiyo Michelle Burkart**    michelle.burkart@doj.ca.gov
- **Ira Burnim**    irabster@gmail.com
- **Lori A. Butler**    butler.lori@pbgc.gov, efile@pbgc.gov
- **CRG Financial LLC**    notices@CRGfinancial.com
- **Aaron R. Cahn**    cahn@clm.com, cahn@clm.com;bankruptcy@clm.com;CourtMail@clm.com
- **George Calhoun**    george@ifrahlaw.com
- **Robert P. Charbonneau**    rpc@agentislaw.com,
  bss@agentislaw.com;bankruptcy.ecc@ecf.courtdrive.com
- **Shawn M. Christianson**    schristianson@buchalter.com, cmcintire@buchalter.com
- **Elizabeth A Citrin**    elizabeth@elizabethcitrin.com
- **Marvin E. Clements**    agbanknewyork@ag.tn.gov
- **Julie Elizabeth Cohen**    julie.cohen@skadden.com
- **Daniel S. Connolly**    daniel.connolly@bracewell.com,
  mco@bracewell.com;joseph.lasher@bracewell.com

- **John Michael Connolly**    mike@consovoymccarthy.com
- **William S Consovoy**    will@consovoymccarthy.com
- **Linda J Conti**    linda.conti@maine.gov
- **Merrida Coxwell**    lenah@coxwelllaw.com
- **Anthony Crawford**    acrawford@reedsmith.com
- **Ashley Crawford**    avcrawford@akingump.com
- **Heather M Crockett**    heather.crockett@atg.in.gov, marie.baker@atg.in.gov
- **Jonathan Watson Cuneo**    jonc@cuneolaw.com
- **Melanie L. Cyganowski**    mcyganowski@oshr.com,
  awilliams@oshr.com;jfeeney@otterbourg.com;Slane@otterbourg.com;ryan@otterbourg.com;jhildebrandt
  @otterbourg.com;hildebrandtjr81341@notify.bestcase.com;mmaizel@otterbourg.com;
  mpantzer@otterbourg.com
- **Peter D'Apice**    dapice@sbep-law.com
- **Scott I. Davidson**    sdavidson@kslaw.com, jcmccullough@kslaw.com
- **Joseph G. Davis**    jdavis@willkie.com, maodc1@willkie.com
- **Brett T DeLange**    brett.delange@ag.idaho.gov
- **Ira S. Dizengoff**    idizengoff@akingump.com, apreis@akingump.com;dkrasa-
  berstell@akingump.com;nymco@akingump.com;AGSearch-Lit@akingump.com;bkemp@akingump.com
- **Mark S. Dym**    mdym@hsplegal.com
- **Leslie A. Eaton**    leslie.eaton@coag.gov
- **Kenneth H. Eckstein**    keckstein@kramerlevin.com, corporate-reorg-1449@ecf.pacerpro.com
- **Brian Edmunds**    bedmunds@oag.state.md.us
- **Leah M. Eisenberg**    leisenberg@mayerbrown.com
- **Justin M Ellis**    jellis@mololamken.com
- **Susan Ellis**    sellis@atg.state.il.us
- **Bernard Ardavan Eskandari**    bernard.eskandari@doj.ca.gov
- **Gillian Feiner**    gillian.feiner@mass.gov
- **Jamie Fell**    jamie.fell@stblaw.com
- **Laura Femino**    laura.femino@whitecase.com
- **Lowell W. Finson**    lowellwfinson@gmail.com
- **Judith Aurora Yosepha Fiorentini**    judith.fiorentini@doj.ca.gov
- **Eric Fisher**    efisher@binderschwartz.com, docket@binderschwartz.com
- **Lara J Fogel**    lfogel@levinelee.com
- **Lawrence Fogelman**    lawrence.fogelman@usdoj.gov
- **Joseph D. Frank**    jfrank@fgllp.com, csucic@fgllp.com;csmith@fgllp.com
- **Bryce L. Friedman**    bfriedman@stblaw.com, 5962535420@filings.docketbird.com
- **George Robert Gage**    grgage@gagespencer.com
- **Richard R Gan**    richlaw1@comcast.net
- **Jeffrey K. Garfinkle**    jgarfinkle@buchalter.com, dcyrankowski@buchalter.com;docket@buchalter.com
- **Alison Gaske**    gaskea@gilbertlegal.com
- **Scott F. Gautier**    scott.gautier@faegredrinker.com,
  kmeek@robinskaplan.com;mdelaney@robinskaplan.com
- **Richard Joseph Geddes**    richard.geddes@kennedyslaw.com
- **Marc P Gertz**    mpgertz@gertzrosen.com
- **Steven A. Ginther**    sdnyecf@dor.mo.gov
- **Eric M. Gold**    eric.gold@state.ma.us
- **Matthew J. Gold**    mgold@kkwc.com, jremi@kkwc.com
- **Irve J. Goldman**    igoldman@pullcom.com, jshearin@pullcom.com;rmccoy@pullcom.com
- **Eric Goldstein**    egoldstein@goodwin.com,
  bankruptcy@goodwin.com;bankruptcyparalegal@goodwin.com
- **Michael Goldstein**    mgoldstein@goodwinlaw.com
- **Leslie A. Goller**    lgoller@terrellhogan.com
- **Michael Gorelick**    mgorelick@agfjlaw.com

- **Alexander M Gormley**    agormley@williamsmullen.com, ssavitsky@slevinhart.com
- **Isley Markman Gostin**    isley.gostin@wilmerhale.com
- **Gary A. Gotto**    ggotto@kellerrohrback.com
- **Elisha D. Graff**    egraff@stblaw.com
- **Timothy E. Graulich**    ecf.ct.papers@davispolk.com;bankruptcy_routing@davispolk.com
- **Christopher Graver**    cgraver@kellerrohrback.com
- **Adam P. Haberkorn**    ahaberkorn@omm.com
- **Mawerdi Hamid**    mawerdi.hamid@ag.state.mn.us
- **William Hao**    william.hao@alston.com, leslie.salcedo@alston.com
- **Ben Harrington**    benh@hbsslaw.com
- **Neil L Henrichsen**    nhenrichsen@hslawyers.com
- **Angela K. Herring**    akherring@wlrk.com, calert@wlrk.com
- **John Wayne Hogan**    hogan@terrellhogan.com
- **Jake Holdreith**    jholdreith@robinskaplan.com, bmiller@robinskaplan.com;tbarrett@robinskaplan.com;cmay@robinskaplan.com
- **Daniel Ari Horowitz**    dhorowitz@obbblaw.com, jfitzgerald@obbblaw.com;sbushinsky@obbblaw.com;bcollins@obbblaw.com
- **Chiung-Hui Huang**    chuang@hslawyers.com
- **Jenna A Hudson**    hudsonj@gilbertlegal.com, johnsonka@gilbertlegal.com;colcocks@gilbertlegal.com
- **Harold D. Israel**    hisrael@lplegal.com, ikropiewnicka@lplegal.com;bdroca@lplegal.com;nbailey@lplegal.com
- **Henry Jaffe**    Henry.Jaffe@troutman.com, wlbank@troutman.com;Monica.Molitor@troutman.com
- **Evan M. Jones**    ejones@omm.com, evan-jones-5677@ecf.pacerpro.com
- **Gregory P. Joseph**    gjoseph@jhany.com
- **Nicholas F. Kajon**    nfk@stevenslee.com
- **Benjamin S. Kaminetzky**    kaminet@dpw.com, ecf.ct.papers@davispolk.com
- **Nickolas Karavolas**    nkaravolas@phillipslytle.com, ddrons@phillipslytle.com
- **Joshua Karsh**    pleadings@findjustice.com
- **Michael J Kasen**    mkasen@kasenlaw.com
- **Beth Kaswan**    bkaswan@scott-scott.com
- **Ashley Keller**    ack@kellerlenkner.com
- **Nicolas G. Keller**    nicolas.keller@dfs.ny.gov
- **Neil Francis Xavier Kelly**    nkelly@riag.ri.gov, mdifonzo@riag.ri.gov
- **Muhammad Umair Khan**    umair.khan@ag.ny.gov
- **Michael S. Kimm**    msk@kimmlaw.com, law@kimmlaw.com;proh@kimmlaw.com
- **Thomas S. Kiriakos**    tkiriakos@mayerbrown.com, cnotification@mayerbrown.com
- **Jeremy C. Kleinman**    jkleinman@fgllp.com
- **John R. Knapp**    john.knapp@millernash.com, edgar.rosales@millernash.com;dona.purdy@millernash.com
- **Paul R Koepff**    paul.koepff@clydeco.us, meisee.hon@clydeco.us
- **Dan D Kohane**    ddk@hurwitzfine.com, donnab@hurwitzfine.com;kathik@hurwitzfine.com
- **Anna Kordas**    akordas@jonesday.com, cbuck@jonesday.com
- **Lawrence J. Kotler**    ljkotler@duanemorris.com
- **Ann Kramer**    akramer@reedsmith.com
- **Mark Krueger**    mkrueger@ag.nv.gov, dpotnar@ag.nv.gov,jwhitson@ag.nv.gov,lmtucker@ag.nv.gov
- **Thomas Lauria**    tlauria@whitecase.com
- **Andrea Law**    alaw@atg.state.il.us
- **Jillian Lazar**    jillian.lazar@delaware.gov
- **Trish Lazich**    trish.lazich@ohioattorneygeneral.org
- **Garrett S. Ledgerwood**    garrett.ledgerwood@millernash.com
- **Alexander Lees**    alees@milbank.com, alexander-lees-2212@ecf.pacerpro.com;AutoDocketECF@milbank.com
- **Nicole A Leonard**    nleonard@mdmc-law.com, sshidner@mdmc-law.com

- **Stephen D. Lerner**    stephen.lerner@squirepb.com, sarah.conley@squirepb.com;stephen-lerner-2073@ecf.pacerpro.com
- **Richard James Leveridge**    leveridger@gilbertlegal.com
- **Richard B. Levin**    rlevin@jenner.com
- **Arthur J Liederman**    aliederman@morrisonmahoney.com
- **Jonathan C Lipson**    jlipson@temple.edu
- **Mimi Liu**    mliu@motleyrice.com
- **Michael G Louis**    mlouis@macelree.com
- **Donald K. Ludman**    dludman@brownconnery.com
- **Timothy Lundgren**    timothy.lundgren@doj.ca.gov
- **Michael Luskin**    luskin@lsellp.com
- **Jennifer B Lyday**    notice@waldrepwall.com
- **Joanna Lydgate**    joanna.lydgate@mass.gov
- **Christopher A. Lynch**    clynch@reedsmith.com, chris-lynch-7800@ecf.pacerpro.com
- **Lauren M. Macksoud**    lauren.macksoud@dentons.com
- **Kevin C. Maclay**    cecilia-guerrero-caplin-6140@ecf.pacerpro.com,jgiglio@capdale.com
- **Thomas Maeglin**    tmaeglin@agfjlaw.com
- **Ambria Mahomes**    amahomes@shb.com
- **Eric John Maloney**    eric.maloney@ag.state.mn.us
- **Scott S. Markowitz**    smarkowitz@tarterkrinsky.com, snobles@tarterkrinsky.com;jseitllari@tarterkrinsky.com;mtorres@tarterkrinsky.com
- **Kimberly P. Massicotte**    kimberly.massicotte@ct.gov
- **Brian S. Masumoto**    nysbnotice@gmail.com
- **Clayton Matheson**    cmatheson@akingump.com
- **Annemarie Belanger Mathews**    abm@columbia13.com
- **Douglas Kirk Mayer**    dkmayer@wlrk.com, calert@wlrk.com
- **James I. McClammy**    james.mcclammy@davispolk.com, ecf.ct.papers@davispolk.com
- **Katherine McCraw**    kmccraw@ncdoj.gov, kchadwick@ncdoj.gov;etant@ncdoj.gov;lbulls@ncdoj.gov
- **John P McDonald**    jpmcdonald@lockelord.com
- **Laura McFarlane**    mcfarlanele@doj.state.wi.us
- **Michael D McMahan**    MMcMahan@hobbsstraus.com, cbonewitz@hobbsstraus.com;HClapp@hobbsstraus.com
- **Patrick Francis McTernan**    pmcternan@croninfried.com, cfskf@croninfried.com
- **Cyrus Mehri**    cmehri@findjustice.com
- **Seth Adam Meyer**    sam@kellerlenkner.com, docket@kellerlenkner.com
- **Samuel Mitchell**    sam@mitchellspeights.com
- **Corey Moll**    cmoll@phjlaw.com
- **Steven Francis Molo**    smolo@mololamken.com
- **Carol E. Momjian**    cmomjian@attorneygeneral.gov
- **Denise Mondell**    denise.mondell@ct.gov
- **Brandan Montminy**    brandan.montminy@lockelord.com
- **Patrick Morrisey**    pm@wvago.gov
- **Eleanor M. Mullen**    eleanor.mullen@ct.gov
- **Joseph L Mulvey**    joseph@mulveylawllc.com
- **Lucian Murley**    luke.murley@saul.com, robyn.warren@saul.com
- **Sean Michael Murphy**    murphysm@doj.state.wi.us, radkeke@doj.state.wi.us
- **Lynn Hagman Murray**    lhmurray@shb.com, docket@shb.com
- **David Eli Nachman**    david.nachman@ag.ny.gov
- **Alissa M. Nann**    anann@foley.com, alissa-nann-1605@ecf.pacerpro.com
- **Edward E. Neiger**    eneiger@askllp.com, lmiskowiec@askllp.com;ttatting@askllp.com;jsteinfeld@askllp.com
- **Jill L. Nicholson**    jnicholson@foley.com, mstockl@foley.com
- **Darlene M. Nowak**    nowak@marcus-shapira.com

- **Sean A. O'Neal**    soneal@cgsh.com, maofiling@cgsh.com
- **Brendan O'Neil**    brendan.oneil@maine.gov
- **Michael Patrick O'Nil**    moneil@taftlaw.com
- **Peter Francis O'Neill**    pfoneill@shb.com, docket@shb.com
- **Steven P Ordaz**    sordaz@bmcgroup.com
- **Jessica Ortiz**    jortiz@mololamken.com
- **Norma E. Ortiz**    email@ortizandortiz.com,
  bkcourt@gmail.com;ortiznoticeme@gmail.com;ortizandortiz@gmail.com;
  ortiznr70019@notify.bestcase.com
- **Andrew Owen**    aowen@ulmer.com
- **James Franklin Ozment**    frankozmentlaw@gmail.com
- **Robert Padjen**    robert.padjen@coag.gov
- **Jeremy Pearlman**    jeremy.pearlman@ct.gov
- **William R Pearson**    william.pearson@ag.iowa.gov
- **Amanda Peterson**    apeterson@forthepeople.com
- **Justino D Petrarca**    jpetrarca@edlawyer.com, emcnulty@edlawyer.com
- **Todd E. Phillips**    tphillips@capdale.com, cecilia-guerrero-caplin-6140@ecf.pacerpro.com
- **Alissa K. Piccione**    alissa.piccione@troutman.com, Brett.Goodman@troutman.com
- **Matthew J. Piers**    mpiers@hsplegal.com, rortiz@hsplegal.com;docketing@hsplegal.com
- **Mark D. Plevin**    mplevin@crowell.com
- **Joshua Polster**    joshua.polster@stblaw.com
- **Constantine Dean Pourakis**    cp@stevenslee.com
- **Michele Puiggari**    michele@mpuiggari.com
- **Amanda Quick**    amanda.quick@atg.in.gov, marie.baker@atg.in.gov
- **Marion Quirk**    marion.quirk@delaware.gov
- **Paul A. Rachmuth**    paul@paresq.com
- **Geoffrey T. Raicht**    graicht@raichtlawpc.com, jgreen@nicolaidesllp.com;msullivan@nicolaidesllp.com
- **Martin S. Rapaport**    manhatoffice@yahoo.com
- **Lawrence R. Reich**    reichlaw@reichpc.com
- **Alexander Gary Rheaume**    arheaume@mofo.com
- **Aisha Rich**    arich@findjustice.com
- **Mai Lan G. Rodgers**    rodgers.mailan@pbgc.gov, efile@pbgc.gov
- **Laurel D. Roglen**    roglenl@ballardspahr.com, carbonej@ballardspahr.com
- **Evan Romanoff**    evan.romanoff@ag.state.mn.us
- **Paul S Rothstein**    psr@rothsteinforjustice.com
- **Corey William Roush**    croush@akingump.com
- **Laurie Rubinow**    lrubinow@millershah.com, pleadings@millershah.com
- **Jason Rubinstein**    rubinsteinj@gilbertlegal.com
- **Vadim J. Rubinstein**    vrubinstein@loeb.com, vrubinstein@ecf.courtdrive.com;nybkdocket@loeb.com
- **Nathan Quinn Rugg**    nathan.rugg@bfkn.com, jean.montgomery@bfkn.com
- **Megan Paris Rundlet**    megan.rundlet@coag.gov
- **Michael B. Rush**    rushm@gotofirm.com
- **William T. Russell**    wrussell@stblaw.com
- **Tancred V. Schiavoni**    tschiavoni@omm.com, jmcdonald@omm.com;tancred-schiavoni-9326@ecf.pacerpro.com
- **Frederick E. Schmidt**    eschmidt@cozen.com, frederick-schmidt-4035@ecf.pacerpro.com
- **David Edward Schoenfeld**    dschoenfeld@shb.com
- **Elizabeth Scott**    edscott@akingump.com
- **Joel Shafferman**    shaffermanjoel@gmail.com
- **Hunter J. Shkolnik**    hunter@nsprlaw.com
- **J. Christopher Shore**    cshore@whitecase.com, jdisanti@whitecase.com;mcosbny@whitecase.com
- **Richard Shore**    shorer@gilbertlegal.com

- **George W. Shuster**    george.shuster@wilmerhale.com,
  WHDocketing@wilmerhale.com;yolande.thompson@wilmerhale.com
- **Lee Scott Siegel**    lss@hurwitzfine.com, kathik@hurwitzfine.com
- **Linda Singer**    lsinger@motleyrice.com
- **Paul M. Singer**    psinger@reedsmith.com,
  gwieland@reedsmith.com;SLucas@ReedSmith.com;bankruptcy-2628@ecf.pacerpro.com
- **Steven A Skalet**    sskalet@findjustice.com
- **Daniel H. Slate**    dslate@buchalter.com
- **Eric J. Snyder**    esnyder@wilkauslander.com, jstauder@wilkauslander.com
- **Colleen P Sorensen**    csorensen@hww-law.com, afaber@hww-law.com
- **Christopher B Spuches**    cbs@ecclegal.com,
  bankruptcy@ecclegal.com;nsocorro@ecclegal.com;nvillegas@ecclegal.com
- **Katherine Stadler**    kstadler@gklaw.com, kboucher@gklaw.com
- **Catherine Steege**    csteege@jenner.com, jeffrey_cross@discovery.com
- **Mark Stein**    mstein@lowestein.com
- **Dawn Stewart**    dstewart@thestewartlawfirm.com
- **Aaron H. Stulman**    astulman@potteranderson.com,
  bankruptcy@potteranderson.com;nrainey@potteranderson.com
- **Jeffrey S. Swyers**    jswyers@slevinhart.com, courtalerts@slevinhart.com
- **Lisa A Szymanski**    lszymanski@reedsmith.com
- **Mark Tate**    wkell@tatelawgroup.com
- **Jay Teitelbaum**    jteitelbaum@tblawllp.com, dcampagne@tblawllp.com
- **Louis J. Testa**    louis.testa@ag.ny.gov
- **Wendy Tien**    wendy.tien@ag.state.mn.us
- **Marc Joseph Tobak**    mtobak@dpw.com, purdue.bloyd.service@davispolk.com
- **Lawrence L. Tong**    lawrence.l.tong@hawaii.gov, mana.moriarty@hawaii.gov;aaron.s.joyce@hawaii.gov
- **Sara Tonnesen**    stonnesen@oag.state.md.us
- **KatieLynn B Townsend**    ktownsend@rcfp.org
- **Andrew M. Troop**    andrew.troop@pillsburylaw.com
- **Margaret Truesdale**    mtruesdale@hsplegal.com
- **Kelly Tsai**    ktsai@crowell.com
- **Marshall C. Turner**    marshall.turner@husch.com, marshall-turner-8668@ecf.pacerpro.com
- **Allen J. Underwood**    aunderwood@litedepalma.com, grodriguez@litedepalma.com
- **United States Trustee**    USTPRegion02.NYECF@USDOJ.GOV
- **Warren A. Usatine**    wusatine@coleschotz.com, fpisano@coleschotz.com
- **Gerard Uzzi**    guzzi@milbank.com, jackie-brewster-
  1417@ecf.pacerpro.com;dporat@milbank.com;nprey@milbank.com;gerard-uzzi-
  2982@ecf.pacerpro.com;RCahill-OBrien@milbank.com;mmuscara@Milbank.com
- **Melissa L. Van Eck**    mvaneck@attorneygeneral.gov
- **Jennifer Lynn Vandermeuse**    vandermeusejl@doj.state.wi.us, radkeke@doj.state.wi.us
- **Shmuel Vasser**    shmuel.vasser@dechert.com,
  nycmanagingclerks@dechert.com;brett.stone@dechert.com
- **Ilana Volkov**    ivolkov@mcgrailbensinger.com, ivolkov@mcgrailbensinger.com
- **Eli J. Vonnegut**    eli.vonnegut@davispolk.com,
  ecf.ct.papers@davispolk.com;Jacob.Weiner@davispolk.com
- **Daniel Walfish**    dwalfish@walfishfissell.com
- **Anne Gilbert Wallice**    anne.wallice@kirkland.com
- **Peter H Weinberger**    sschebek@spanglaw.com
- **William P. Weintraub**    wweintraub@goodwinlaw.com, gfox@goodwinprocter.com
- **Erin West**    ewest@gklaw.com, kboucher@gklaw.com;elewerenz@gklaw.com
- **Dorothy White-Coleman**    whitecoleman@whitecoleman.net
- **Harris Wiener**    harris.wiener@clydeco.us
- **Gregory Dale Willard**    gwillard@dubllc.com

- **Brady C. Williamson**    bwilliamson@gklaw.com
- **Dennis Windscheffel**    dwindscheffel@akingump.com
- **Douglas Wolfe**    dwolfe@asmcapital.com
- **Charles Wysong**    cwysong@hsplegal.com
- **Dina L. Yunker Frank**    bcuyunker@atg.wa.gov
- **David Zwally**    dzwally@haugpartners.com
- **David Zylberberg**    david.zylberberg@stblaw.com

70793873v1