**Appendix A**

**Confirmation Objections Response Chart[1]**

| Objecting Party | Summary of Objection | | Debtors' Response | |
|---|---|---|---|---|
| 1.  U.S. Trustee ("UST")  [Dkt. No. 3256] | (a) | Section 10.7(b) of the Plan cannot be approved because the Bankruptcy Code expressly prohibits courts from extinguishing involuntarily the claims of non-debtor third parties against other non-debtors except in asbestos cases, including because it contravenes Section 524. (pgs. 3, 16.) | (a) | This objection should be overruled because Third-Party Releases rest on well-established Second Circuit law, which authorizes bankruptcy courts to enjoin litigation against third parties as part of a plan of confirmation where, as here, that injunction "plays an important part in the debtor's reorganization."  (Debtors' Mem. L. in Supp. Of Confirmation of the Debtors' Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Debtor Affiliates and Omnibus Reply to Objections Thereto ("**Conf. Br.**") ¶¶ 118-168.) |
| | (b) | The Bankruptcy Court's use of Section 105(a) as the basis for extinguishing a non-debtor's direct claims against another non-debtor would exceed the authority of bankruptcy courts under the Bankruptcy Clause of the Constitution.  (pgs. 3, 21.) | (b) | This objection should be overruled.  The U.S. Trustee lacks support for its contention that the Court's ability to impose third-party releases unconstitutionally exceeds the scope of the Bankruptcy Clause. (Conf. Br. ¶ 168 n.58.)  Every one of the third-party release cases cited by the U.S. Trustee for this purportedly constitutional argument apply the "conceivable effects" test for related to jurisdiction, and none found—or even contemplated—a violation of the Bankruptcy Clause.  (*Id.*) |

---

[1] The Joint Objection of Certain Distributors, Manufacturers, and Pharmacies [Dkt. No. 3306], and objections adopting, incorporating, or joining the same [Dkt. Nos. 3359, 3367, 3370, 3373], will be addressed in a separate pleading to be filed on August 9, 2021.

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | (c)  The Releases do not fall within the bankruptcy court's jurisdiction because the Court would not have jurisdiction "to impose third-party releases against non-debtor claimants that extinguish their state law claims against other non-debtors." (pgs. 22, 26) | (c)  The Court's ability to confirm a plan that contains third-party releases falls comfortably within its "arising under" or "arising in" and "arising under" jurisdiction.  (Conf. Br. ¶ 156-57.)  Moreover, the Court has "related to" jurisdiction to enjoin suits that "might have any conceivable effect on the bankruptcy estate," and here, the Released Claims and Shareholder Released Claims would undoubtedly have a direct—and surely "conceivable"—effect on the Debtors' estates.  (*Id.* ¶¶ 156-63.) |
| | (d)  The Releases would violate the parties' due process rights guaranteed by the Fifth Amendment because the Plan. (pgs. 23-25). | (d)  This objection should be overruled.  The Releases satisfy the requirements of due process because (i) holders of claims do have an opportunity to be heard on the propriety of the releases—as evidenced by the Objections that have been filed in this very case, on this very issue; (ii) due process does not require that litigants be able to litigate their claims to judgment; and (iii) the Debtors' comprehensive Bar Date Notice Plan reached at least 98% of adults in the United States, and further notice was provided in connection with the confirmation hearing; and (iv) the confirmation hearing is not the proper time to raise issues with the notice procedures, which were adjudicated and approved by the Court's order on June 3, 2021.  The Debtors' arguments are set out in full in their Confirmation Brief.  (Conf. Br. ¶¶ 149-55.) |
| | (e)  The Court lacks the constitutional authority to order imposing the third party releases. (pg. 25) | (e)  This objection should be overruled because numerous courts—including this one—have held that where, as here, a bankruptcy court considers non-consensual third-party releases in connection with the confirmation of a proposed plan of reorganization, it acts pursuant to its core authority. (Conf. Br. ¶¶ 166-67.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | (f) The Debtors cannot rely on *Metromedia* to confirm the plan because *Metromedia* and other cases that permit releases were wrongly decided, and even if *Metromedia* applies, the Releases here are improper.  (pgs. 26-31) | (f) This objection should be overruled because *Metromedia* is well-established precedent in the Second Circuit as well as others, and the Releases, which are the linchpin of the Debtors' abatement-centric plan, satisfy all requirements under *Metromedia*.  The Debtors' response is set out in full in their Confirmation Brief. (Conf. Br. ¶¶ 118-37.) |
| | (g) The Plan cannot be confirmed because section 5.8 calls for the payment of attorneys' fees during the pendency of the cases, which in turn violates Section 503(b)(4).  (pgs. 4, 33-34) | (g) This objection should be overruled.  Agreements regarding certain fee arrangements, as reflected in Section 5.8 of the Plan, were an integral and necessary part of reaching an agreement concerning overall allocation of the Debtors' estates and thus are an integral part of the Plan's abatement-centric resolutions.  (*See* Conf. Br. ¶¶ 115.)  The payment of attorney's fees contemplated under the Plan is consistent with the Bankruptcy Code. |
| 2.  Statement of the United States ("**DOJ**")  [Dkt. No. 3268] | (a) The involuntary third-party release violates due process because (i) the Plan would release claims without sufficient notice; and (ii) the proposed Shareholder Release denies releasing parties an opportunity to be heard on their released claims.  (pgs. 3-8) | (a) This objection should be overruled.  The Releases satisfy the requirements of due process because (i) holders of claims do have an opportunity to be heard on the propriety of the releases—as evidenced by the Objections that have been filed in this very case, on this very issue; (ii) due process does not require that litigants be able to litigate their claims to judgment; (iii) the Debtors' comprehensive Bar Date Notice Plan reached at least 98% of adults in the United States, and further notice was provided in connection with the confirmation hearing; and (iv) the confirmation hearing is not the proper time to raise issues with the notice procedures, which were adjudicated and approved by the Court's order on June 3, 2021.  The Debtors' arguments are set out in full in their Confirmation Brief.  (Conf. Br. ¶¶ 149-55.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | (b) Despite the holding of *Metromedia* to the contrary, involuntary releases are not permitted under the Bankruptcy Code and the Shareholder Release is unlawful.  In any event, the parties seeking approval of the Shareholder Release have failed to demonstrate the appropriateness of the Release under the standard in *Metromedia*. (pg. 9-11) | (b) This objection should be overruled because it contradicts the established precedent in the Second Circuit and other Circuits, which reject the argument that third-party releases are categorically unavailable in the confirmation context. (*See* Conf. Br. ¶¶ 118-68.)  Moreover, the Shareholder Releases, which are the linchpin of the Debtors' abatement-centric Plan satisfy the requirements of *Metromedia*.  (*Id.*) |
| | (c) In the alternative, if involuntary third-party releases are permissible, the releases must be approved by the district court *de novo*, as bankruptcy courts lack the adjudicatory and constitutional authority to enter final orders approving such releases.  (pgs. 11-12.) | (c) This objection should be overruled because the Bankruptcy Court has core authority to consider a third-party release as part of a proposed plan of reorganization.  (Conf. Br. ¶¶ 156-63; 166-67;) |
| 3.    Washington, Oregon & the Objecting States (Maryland, Rhode Island, and the District of Columbia) ("**Washington**")  [Dkt. No. 3276] | (a) The Third Party Releases under the Plan are impermissible because the Bankruptcy Code prohibits the involuntary dismissal non-consensual releases of State police power claims, and *Metromedia* does not permit a release of State police power claims.  (¶¶ 12-46.) | (a) This objection should be overruled because it contradicts the established precedent in the Second Circuit and other Circuits, which reject the argument that third-party releases are categorically unavailable in the Bankruptcy context. (*See* Conf. Br. ¶¶ 138-40.)  Moreover, there is no exception to *Metromedia* for so-called police power actions, nor does any circumstance of this case justify the creation of one. (Conf. Br. ¶¶ 138-48.) |
| | (b) The Court lacks jurisdiction to release claims against non-debtor third-parties, and the release of the States' direct claims against the Sacklers is improper.  (¶¶ 47-52.) | (b) This objection should be overruled because the Second Circuit's precedent is clear that the Bankruptcy Court has jurisdiction to consider a third-party release as part of a proposed plan of reorganization.  (Conf. Br. ¶¶ 156-63.) Moreover, the Court has related to jurisdiction to enjoin claims by third party that have a "conceivable effect" on the Estates, and the Shareholder Releases here would have a conceivable  effect on estate property, as set out in the Debtors Confirmation Brief.  (Conf. Br. ¶¶ 156-63.) |
| | (c) The Plan should not be confirmed because the shareholder releases do not satisfy the *Metromedia* factors.  (¶¶ 53-67.) | (c) This objection should be overruled.  The shareholder releases, which are the linchpin of the Debtors' abatement-centric Plan, satisfy the *Metromedia* standard.  (*See* Conf. Br. ¶¶ 118-37.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | (d) The Sackler settlement should be not be approved under Rule 9019 because it does not satisfy the *Iridium* factors. (¶¶ 68-80.) | (d) This objection should be overruled. The Shareholder Settlement, which forms the core of the Debtors' highly negotiated plan of reorganization, should be approved because it is reasonable, in the best interests of the Estates, and satisfies each of the *Iridium* factors. (*See* Conf. Br. § I.) |
| | (e) The Plan violates section 1122(a) and in turn does not satisfy section 1129(a)(1) because the States are improperly classified with their political subdivisions in Class 4. (¶¶ 81-89.) | (e) This objection should be overruled. First, the Objecting States' contention that the Plan improperly classifies the States' claims with their political subdivisions is entirely without merit because even if the States were placed in their own class, it would be an overwhelmingly consenting class. (*See* Conf. Br. ¶ 174.) Second, the State and local government entity opioid litigation claims are substantially similar because they allegedly arise out of the same conduct by the Debtors, seek the same redress, and as have an identical relationship to the property in the Debtors' estates as unsecured claims, and therefore are properly classified together. (*See id.* ¶¶ 175-76.) |
| | (f) The voting provisions for the non-federal government claimants in Class 4 violates section 1126(c) because (i) the $1 vote allocation "is plainly contrary to fact" and "State claims are categorically different from subdivision claims and necessarily orders of magnitude larger;" and (ii) grouping the political subdivisions with States effectively subordinates the States interests in order for the Debtors to gerrymander the vote and cramdown the Plan. (¶¶ 90-95.) | (f) This objection should be overruled because the Plan does not violate Section 1126(c). In mass tort bankruptcy cases (such as these), tort claims are frequently estimated for voting purposes because liquidating each tort claim to a specific amount would be virtually impossible and immensely value-destructive. (*See* Conf. Br. ¶ 174 n.57.) |
| | (g) The Plan does not satisfy Section 1129(a)(1) because it does not treat similar claims equally, such as the claims of the States and the claims of the United States. (pgs. 35-36.) Under the Plan, the States must release all police power claims, however the United States is still permitted to "exercise police powers post-confirmation." (¶¶ 96-100.) | (g) This objection should be overruled because the Plan satisfies the requirements of section 1129(a)(1) and treats similar claims equally. (*See* Conf. Br. ¶¶ 182-87.) In any event, the claims of the States and the United States are classified separately under the Plan, so even assuming, *arguendo*, that the objectors' assertion is true, the claims of the States and United States are not required to receive the same treatment as each other. (*See* Conf. Br. ¶ 187.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | (h) The Plan potentially violates Bankruptcy Code sections 1127(c) and (d) because Section 12.3 of the Plan permits the Debtors to modify the scope of the Plan's releases on consent of the Governmental Consent Parties (which do not include the Non-Consenting States) without the additional disclosure required under Bankruptcy Code section 1125. (¶¶ 101-103.) | (h) This objection should be overruled.  Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation so long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and here, the Debtors' modifications to the Plan were permissible under 11 U.S.C § 1127. (*See* Conf. Br. ¶¶ 213-16.) |
| | (i) Section 5.7(l) intrude[s] on the police powers of individual states because that Section appoints new trustees to Raymond and Beverly Sackler foundations providing a private benefit to the Sacklers contrary to state law governing nonprofits. (¶ 44-45.) | (i) This objection should be overruled.  The Raymond and Beverly Sackler foundation assets are not being used to benefit private individuals.  (Conf. Br. ¶ 293-300.)  Section 5.7(l) of the Plan benefits the public by increasing the quantum of assets directed to opioid abatement initiatives, it does not transfer funds to any specific recipient or otherwise effect a transfer of Foundation value.  (*Id.*) |
| | (j) Washington joins and adopts the objections made by Connecticut, Maryland, and the District of Columbia. (¶ 104.) | (j) *See infra* row 9. |
| 4.    City of Seattle Joinder  [Dkt. No. 3264] | (a) Seattle joins Washington's police power objection (*supra* Row 3(a)), and adds that "the Plan's improper release of police-power claims against the third-party Sackler family" is "impermissible to the extent" it purports to also extinguish the police-power claims of "local governments, including Seattle." (pgs. 1-2.) | (a) This objection should be overruled for the reasons stated *supra* row 3(a) and as set out in full in the Debtors' Confirmation Brief.  (*See* Conf. Br. ¶¶ 118-63.) |
| | (b) Seattle joins Washington's Objection that the Shareholder Settlement does not satisfy the *Iridium* factors, and thus should not be approved under Rule 9019.  (pg. 2.) | (b) This objection should be overruled for the reasons stated *supra*, row 3(d), and as set out in full in the Debtors' Confirmation Brief.  (*See* Conf. Br. § I.) |
| | (c) Seattle joins Washington's that the Plan fails to satisfy § 1125 because the Debtors have materially modified the Plan that was modified in the Disclosure Statement.  (pg. 2.) | (c) This objection should be overruled for the reasons explained *supra*, row 3(h). |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | (d) The Plan is not "fair" since it "allows the Debtor, upon emergence as "NewCo," to continue to manufacture the very opioids that have devastated communities, including communities across Seattle," and should instead focus on treatment and abatement.  (pg. 2.) | (d) To the extent that this is an objection to confirmation of the Plan, no legal basis is provided, and the objection should be overruled. |
| 5. California Joinder to Washington Objection<br><br>[Dkt. No. 3274] | (a) California joins Washington's objections.  *See supra* row 3. | (a) This objection should be overruled for the reasons explained *supra*, row 3. |
| | (b) The Plan is unconfirmable pursuant to § 524(e) because "it purports to unlawfully impose broad third-party, nonconsensual releases of claims and causes of action against the Sackler Family Members and others, including the nonconsensual release of sovereign police-power actions asserted by various States, including California, on behalf of their citizens." (pg. 2.) | (b) This objection should be overruled because there is no "police power" exception to *Metromedia* for the reasons stated *supra* Row 3(a) and as set out in full in the Debtors' Confirmation Brief.  (Conf. Br. ¶¶ 118-67). |
| 6. Maryland Joinder to Connecticut & Washington<br><br>[Dkt. No. 3278] | (a) Maryland joins and incorporates by reference Washington's objections, except for paragraphs 85 through 89.  *See supra* row 3. | (a) This objection should be overruled for the reasons explained *supra*, row 3. |
| | (b) Maryland joins and incorporates by reference Connecticut's objections.  *See infra* row 9. | (b) This objection should be overruled for the reasons explained *infra* row 9. |
| | (c) The Plan does not sufficiently promote the interests of the State and the public in deterrence and the establishment of justice because it permits the Sacklers and other third parties to maintain billions of dollars and fails to justify the releases.  (¶ 6.) | (c) This objection should be overruled for the reasons set forth in Section II of the confirmation brief. |
| | (d) The Plan cannot be confirmed because neither the Constitution nor the Section 105 of the Bankruptcy Code authorize confirmation of a plan that provides for non-consensual releases of State police power claims against non-debtors.  (¶ 8.) | (d) This objection should be overruled for the reasons stated *supra*, row 3(a) and as set forth in full in the Debtors' Confirmation Brief.  (*See* Conf. Br. ¶¶ 138-48.) |
| 7. Vermont Joinder to Washington<br><br>[Dkt. No. 3279] | (a) Vermont joins Washington's objection to the Plan.  *See supra* row 3 for Washington's objections. | (a) This objection should be overruled for the reasons stated *supra*, row 3. |

| Objecting Party | | Summary of Objection | | Debtors' Response |
|---|---|---|---|---|
| 8. | Delaware Joinder to Washington<br><br>[Dkt. No. 3280] | (a) | Delaware joins Washington's objection to the Plan, except for paragraphs, 44 and 45, regarding whether Section 5.7(l) of the Plan is confirmable because Delaware is the domicile of The Raymond and Beverly Sackler Fund for Arts and Sciences.  *See supra* row 3 for Washington's objections. | (a)  This objection should be overruled for the reasons stated *supra*, row 3. |
| 9. | Joint Objection of Connecticut, Maryland & D.C.<br><br>[Dkt. No. 3270] | (a) | The Plan violates § 1129(a)(1) because the third-party releases under the plan improperly usurp Connecticut's sovereign right to have its police power claims adjudicated in its chosen forum. (¶¶ 19-23.) | (b)  This objection should be overruled because there is no police power exception to *Metromedia*.  (Conf. Br. ¶¶ 138-48.) |
| | | (b) | The Plan fails to comply with Title 11 because the third-party releases effectively discharge police power claims under §§ 523(a)(2)(A) or 523(a)(7), which would be non-dischargeable were the Sacklers made to file their own bankruptcy proceedings. (¶ 28-31.) | (c)  This objection should be overruled because, as explained *supra*, in row 3(a), there is no exception to *Metromedia* for police power actions.  (*See* Conf. Br. ¶¶ 138-48.)  Additionally, this argument proves too much.  Section 523(a) applies only to individuals, so even under this theory the Sackler Entities could get released.  And in any event, there is no reason to graft the exceptions to discharge to *Metromedia*.  The difference between the scope of a discharge and the Third-Party Releases flows from their essentially different functions.  (*See* Conf. Br. ¶ 142.) |
| | | (c) | The Court lacks subject matter jurisdiction to grant non-consensual third-party releases of police power and other non-derivative claims of sovereign states because (i) there is no Bankruptcy Code authority for granting that release; and (ii) the claims to be released will not affect the estate res in a manner that justifies the exercise of jurisdiction. (¶¶ 32-50) | (d)  This objection should be because it contradicts the established precedent in the Second Circuit and other Circuits, which reject the argument that third-party releases are categorically unavailable in the Bankruptcy context.  (*See* Conf. Br. ¶¶ 118-37.)  Moreover, there is no police power exception to *Metromedia*.  (*Id.*) The Court's ability to confirm a plan that contains third-party releases falls comfortably within its "arising under" or "arising in" and "arising under" jurisdiction.  (Conf. Br. ¶ 156-57.)  Moreover, the Court has "related to" jurisdiction to enjoin suits that "might have any conceivable effect on the bankruptcy estate," and here, the Released Claims and Shareholder Released Claims would undoubtedly have a direct—and surely "conceivable"—effect on the Debtors' estates.  (*Id.* ¶¶ 156-63.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | (d) The Plan's non-consensual third-party releases are not justified under the test set forth in *Metromedia*. | (d) This objection should be overruled.  The shareholder releases, which are the linchpin of the Debtors' abatement-centric plan satisfy the *Metromedia* factors.  (*See* Conf. Br. ¶¶ 118-37.) |
| | (e) The Plan violates § 1122 because it improperly classifies the States in Class 4 together with their political subdivisions and assigns their claims a value of $1 for voting purposes.  (¶ 65.) | (e) This objection should be overruled for the reasons stated *supra*, row 3(e)-(f) and set out in full in the Debtors' Confirmation Brief.  (Conf. Br. ¶¶182-87.) |
| | (f) The Plan violates § 1123(a)(4) by treating unequally the claims of the States and the United States, which unlike the States retains the ability to pursue any police or regulatory action after the Plan's confirmation.  (¶¶ 68-71.) | (f) This objection should be overruled for the reasons stated *supra*, row 3(g) and set out in full in the Debtors' Confirmation Brief.  (Conf. Br. ¶¶ 182-87.) |
| | (g) The Debtors fail to show that the Plan is in the best interests of creditors, as required by § 1129(a)(7), because the Liquidation Analysis fails to account for the value of third-party claims in a hypothetical liquidation scenario.  (¶¶ 73-78.) | (g) This objection should be overruled because the Plan provides for recoveries that are no less than, and in many cases far greater than, what creditors might receive in a hypothetical chapter 7 liquidation.  (Conf. Br. ¶¶ 225-41.) |
| 10. The State of West Virginia, ex rel. Patrick Morrisey, Attorney General ("**West Virginia**")<br><br>[Dkt. No. 3265] | (a) West Virginia asserts that because the NOAT allocation scheme was the product of a negotiation dominated by large-population states, the Plan was not proposed in good faith in violation of 11 U.S.C. 1129(a)(3).  (¶ 7-8, 22-27.) | (a) This objection should be overruled because the Plan was proposed by the Debtors in good faith.  (*See* Conf. Br. ¶¶ 218-19)  West Virginia's good faith objection also fails because the Debtors had no involvement in the resolution of the NOAT allocation and West Virginia has proffered no evidence other than conclusory assertions that larger states have "taken control of the interstate negotiations." (Conf. Br. ¶ 186 n.62.)  To the contrary, the Plan (and the NOAT Allocation Formula) has the support of a supermajority of States, including many with smaller populations.  (*See id.*)  West Virginia's disagreement is no indication of bad faith; it is just the natural incident of a collective, value-maximizing settlement process.  (*See id.*) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | (b) West Virginia also argues that the NOAT allocation scheme violates 11 U.S.C. 1123(a)(4) because it fails to provide the same treatment to all members of Class 4. (¶ 28-33.) | (b) West Virginia's objection should be overruled because every claimant in Class 4 has the same opportunity to recover pursuant to the generally applicable NOAT Allocation Formula. This argument is addressed in greater detail in the Debtors' Confirmation Brief. (*See* Conf. Br. ¶¶ 182-86.) |
| 11. Navigators Specialty Insurance Company ("**Navigators**"), American Guarantee and Liability Insurance Company ("**AGLIC**"), and Steadfast ("**Insurers**")<br><br>[Dkt. No. 3263] | (a) The Insurers object to the insurance neutrality language in the Plan. | (a) For the Debtors response to this objection, *see* Debtors' Omnibus Response to Insurer Confirmation Objections filed contemporaneously herewith. |
| 12. Joinder of National Union<br><br>[Dkt. No. 3304] | (a) National Union joins the objections of Certain Insurers. *See supra* row 11. | (a) For the Debtors response to this objection, *see* Debtors' Omnibus Response to Insurer Confirmation Objections filed contemporaneously herewith. |
| 13. Native American Tribe Group<br><br>[Dkt. No. 3257] | (a) The Plan should be modified to have the transfer of the Raymond and Beverly Sackler foundations under 5.7(l) included in Section 5.2(e)(iii) or direct payment should go to the tribes because the transfer of the Sackler Foundation to the control of N.O.A.T. through Section 5.7(1) of the Plan without apportioning 3% evades the tribal allocation requirement. (¶¶ 13, 16.) | (a) As explained, *supra*, Row 3(c), Section 5.7(l) of the Plan does not affect a transfer of funds or of Foundation value. In addition, nowhere in their 14 pages of briefing do the Tribes cite any provision under the Bankruptcy Code or bankruptcy law that would render confirmation of the Plan inappropriate on the supposed basis they identify—nor is there one. (*See* Conf. Br. ¶¶ 293-300.) |
| 14. Gulf Underwriters Insurance Company ("**Gulf**") & St. Paul Fire and Marine Insurance Company ("**St. Paul**")<br><br>[Dkt. No. 3272] | (a) Gulf & St. Paul join the objections of Insurers. *See supra* row 11. | (a) For the Debtors response to this objection, *see* Debtors' Omnibus Response to Insurer Confirmation Objections filed contemporaneously herewith. |

| Objecting Party | Summary of Objection | | Debtors' Response | |
|---|---|---|---|---|
| 15. ACE American Insurance Company, ACE Property and Casualty Insurance Company, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Executive Risk Indemnity Inc., and each of their U.S.-based affiliates and successors and each in their capacity as insurers ("**Chubb Insurance USA**" or "**Chubb**")<br><br>[Dkt. No. 3301] | (a) | Chubb Insurance USA objects to the Plan on the basis that the Plan contemplates an improper assignment of the Insurance Programs; (ii) the Debtors seek to obtain the benefits of the Insurance Programs (see Plan §§ 5.6, 8.8; MDT Agreement at Schedule 2; NewCo Transfer Agreement at § 1; PAT Agreement at § 1.03(b)(v)) without having the Debtors' assignees remaining liable in full for the Obligations under the Insurance Programs; (iii) the Plan attempts to improperly alter or otherwise modify the terms of the Insurance Programs; and (iv) the Plan fails to provide that workers' compensation claims and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course of business, as required by applicable state law. | (a) | For the Debtors response to this objection, *see* Debtors' Omnibus Response to Insurer Confirmation Objections filed contemporaneously herewith. |
| 16. ER Physician<br><br>[Dkt. No. 3262] | (a) | The Plan violates Section 1122(a) because other healthcare service providers that are not permitted in the HTDP may apply for a distribution unless they have filed a proof of claim even though hospitals may apply for a distribution even without having filed a proof of claim. (¶ 2, 4.) | (a) | Dr. Masiowski's classification objection should be overruled.  Claims in Class 6 are properly classified together because all such claims have an identical relationship to the property in the Debtors' estates—they are unliquidated and unsecured.  (*See* Conf. Br. ¶ 176 n.59.)  That is sufficient to classify them together under section 1122(a). |
| | (b) | The Plan includes third party releases for non-debtors that do not meet the standard enunciated in *In re Metromedia Fiber Network, Inc.*, 416 F. 3d 136, 141 (2d Cir. 2005)." (¶ 11.) | (b) | This objection should be overruled.  The shareholder releases, which are the linchpin of the Debtors' abatement-centric plan satisfy the *Metromedia* factors.  (*See* Conf. Br. ¶¶ 118-37.) |
| 17. ER Physician Supplemental<br><br>[Dkt. No. 3323] | (a) | ER Physician adds that the Plan cannot be confirmed because it violates the due process clause.  (pg. 4.) | (c) | Dr. Masiowski's untimely due process objection should be overruled.  In the cases in this Circuit considering third-party releases, not one has concluded that such releases violate due process.  (Conf. Br. ¶¶ 149-155.) |
| | (b) | The Plan does not meet the provisions of the Bankruptcy Code and is not confirmable pursuant to Section 1129(a).  (pg. 5.) | (d) | This objection should be overruled.  The Debtors' Plan satisfies each requirement of 11 U.S.C. 1129 (a).  (*See* Conf. Br. § III.) |

| Objecting Party | | Summary of Objection | | Debtors' Response |
|---|---|---|---|---|
| | (c) | The Plan does not provide a rationale to satisfy Section 1123(a)(4) "to show any rationally based legitimate reason why Hospitals that did not file proofs of claim should be permitted to receive an allocation but other types of "healthcare service providers" must have filed valid proofs of claim." (pgs. 7-8.) The Plan should include the safe harbor to all IERP's. (pg. 8.) | (e) | The Debtors join that the Ad Hoc Group of Hospitals reply to Masiowski's equal treatment objection. |
| 18. Canadian Municipality Creditors & Canadian First Nation Creditors ("**CMFNC**") [Dkt. No. 3275] | (a) | The Plan includes third-party releases that purport to release the claims of the CMFNC, which would violate the Foreign Sovereign Immunity Act and 11 U.S.C. § 1141(d)(6) because the CMFNC are foreign sovereigns. (pgs. 9-10.) | (a) | This objection should be overruled for the reasons stated in the Debtors' Confirmation Brief at ¶¶ 282-289. |
| | (b) | The Plan violates § 1123(a)(4) by failing to provide equal treatment to the CMFNC's claims, which are placed in Classes 4 & 5, but apparently receive nothing under the Plan. (pg. 6.) | (b) | This objection should be overruled for the reasons stated in the Debtors' Confirmation Brief at ¶¶ 282-289. |
| | (c) | CMFNC objects to the Plan because "[t]he Plan and Supplemental (Trust) documents reserve the right for the subsequent post-confirmation, recharacterization of claims," which in turn could result in no dividend to CMFNC. (pg. 4-5.) | (c) | This objection should be overruled for the reasons stated in the Debtors' Confirmation Brief at ¶¶ 282-289. |
| | (d) | The Plan violates § 1129(a)(3) because it was not proposed in good faith with respect to the CMFNC, as shown by the Plan's failure to address their claims. (pg. 8.) | (d) | This objection should be overruled for the reasons stated in the Debtors' Confirmation Brief at ¶¶ 282-289. |
| 19. Creighton Bloyd, Stacy Bridges, and Charles Fitch (the "**Recovering Creditors**") [Dkt No. 3271] | (a) | The Debtors failed to provide constitutionally adequate notice of the deadline to file a proof of claim, particularly to claimants in state prisons who have limited access to the media. (¶ 3.) | (a) | This objection should be overruled for the reasons stated in the Debtors' Confirmation Brief at ¶¶ 290-292. |
| | (b) | The distribution procedures under the Plan unfairly prejudice poor people and incarcerated persons by requiring information to which such persons lack access. (¶ 4.) | (b) | This objection should be overruled for the reasons stated in the Debtors' Confirmation Brief at ¶¶ 290-292. |

| Objecting Party | | Summary of Objection | | Debtors' Response |
|---|---|---|---|---|
| 20. Creighton Bloyd<br><br>[Dkt. 3277] | (a) | Opioid use disorder patients should be treated as secured creditors pursuant to the Mandatory Victims Restitution Act (MVRA). (¶ 6.) Under the MVRA, the creditors would have lien, such that the claims would received "improved status." (¶ 6.) | (a) | This objection should be overruled for the reasons stated in the Debtors' Confirmation Brief at ¶ 292 & n. 84. |
| 21. Sarasota County Public Hospital District<br><br>[Dkt. No. 3288] | (a) | The Plan does not satisfy the "best interests" test. (pg. 2.) | | **Sarasota withdrew its objection. [Dkt. 3312]** |
| | (b) | The Plan does not provide any future recovery to Sarasota and "pre-supposes that all prior creditors will have some level of abatement programming under which the creditor can seek reimbursement from the hospital trust." (pg. 3.) | | **Sarasota withdrew its objection. [Dkt. 3312.]** |
| | (c) | The Plan "provides releases and litigation protection to those who are not even part of the current bankruptcy – namely the Sackler family." (pg. 3.) | | **Sarasota withdrew its objection. [Dkt. 3312.]** |
| 22. John Stewart<br><br>[Dkt. No. 3273] | (a) | The Plan violates § 1123(a)(4) by failing to provide Stewart's claims with the same treatment as other claims in his class. | | **This objection has been resolved.** |
| 23. Kelvin C. Singleton<br><br>[Dkt. No. 3125] | (a) | Mr. Singleton who has been affected by opioid use disorder, states that the Settlement Plan does not "ease the harms physically done to [the claimant] . . . and will do nothing without compensation." (pg. 2.) The estimated amount of recovery provided in the Disclosure Statement is insufficient "for those who suffered harm or death." (pg. 3.) | (a) | This objection should be overruled. As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $700-750 million under the Plan, and the evidence at confirmation will hearing that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (*See* Conf. Br. ¶¶ 43, 225-246.) |
| | (b) | The Plan was "drafted on behalf of the government, politicians, big businesses and shareholders, who at the end of the day will control the $4.275 billion dollar settlement," such that the settlement will never reach those actually effected. (pg. 2.) | (b) | This objection should be overruled. As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $700-750 million under the Plan, and billions are estimated to be distributed to trusts exclusively dedicated to abating the opioid crisis. (*See* Conf. Br. ¶¶ 43, 48, 225-246.) |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 24. Donald Ernest Allee<br><br>[Dkt. No. 3199] | (a) Mr. Allee states that it is "impossible . . . to make an informed decision regarding their ability to vote" until they have counsel. (pg. 2.)  Mr. Allee continues that he is not capable of making a "proper or informed decision[]." (pg. 2.) | (a) This objection should be overruled.  This is not a valid plan objection. |
| 25. Mary Butler-Fink<br><br>[Dkt. No. 3235] | (a) The Plan should not give the Sacklers "immunity from criminal charges or any future lawsuits against them." (pg. 2.) | (a) This objection should be overruled.  The Shareholder Releases **do not** release any criminal claims or provide any criminal immunity.  (Plan §§ 1.1 (Excluded Claim); 10.7.) The Shareholder Releases are justified under *Metromedia*. (Conf. Br. § 2.) |
| 26. Tamara Graham<br><br>[Dkt. No. 3122] | (a) The Plan does not take into consideration the financial circumstances of the plaintiffs and the only people who will benefit from the Plan are attorneys.  (pgs. 1-2.) | (a) This objection should be overruled.  As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $700-750 million under the Plan, and the evidence at confirmation will hearing that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing.  (*See* Conf. Br. ¶¶ 43, 225-46.) |
| 27. Teresa VomSaal<br><br>[Dkt. No. 3110] | (a) There should not be a "continued manufacture and use" of [l]ong acting opiates, and call for treating chronic pain and enhancing rural health systems  (pg. 1.) | (b) To the extent that this is an objection to the confirmability of the Plan, no legal basis is provided, and the objection should be overruled. |
| 28. Unnamed Objector<br><br>[Dkt. No. 3123] | (a) The Unnamed Objector did not receive an update on the personal injury "channel claim" and was only notified with the "vote disclosure." (pg. 1.)  The Unnamed Objector further states that he "is willing to stay in favor of the court settlement disclosure plan, to the highest option . . . but not to succeed above the plan fixed amount of money available to compensate all other claimants." (pg. 2.) | (a) This objection should be overruled.  As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $700-750 million under the Plan, and the evidence at confirmation will hearing that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing.  (*See* Conf. Br. ¶¶ 43, 225-46.) |

| Objecting Party | Summary of Objection | | Debtors' Response | |
|---|---|---|---|---|
| 29. Jerome Ferrier on behalf of Richard McMillan<br><br>[Dkt. No. 3293] | (a) | Mr Ferrier writes on behalf of Mr. McMillan who is incarcerated after distributing Oxycontin. (pg. 1.) Since Mr. McMillan did not receive a "disclaimer" that Oxycontin was not safe, he has a claim against Purdue such that he can vote on the Plan. (pg. 2.) | (a) | This objection should be overruled. This is not a valid plan objection. |
| 30. Joyce Villnave<br><br>[Dkt. No. 3292] | (a) | Purdue executives should face criminal liability and punitive damages. (pgs. 1-2.) | (a) | This objection should be overruled. The releases in the Plan do not contain releases for criminal claims. |
| 31. Shirley Belk<br><br>[Dkt. No. 3188] | (a) | Ms. Belk states that she is in support of the Plan and asks the court to find an attorney prior to the July 14, 2021 deadline. (pgs. 1-2.) | (a) | This is not a plan objection. |
| 32. Earl Cobb<br><br>[Dkt. No. 3298] | (a) | Mr. Cobb states that the Plan does not include sufficient punishment of the Sacklers and that "if the courts would [divvy] up the 4.275 billion and leave them with n[o]thing that would be a fair settlement." (pg. 1.) | (a) | This objection should be overruled. The Shareholder Releases **do not** release any criminal claims or provide any criminal immunity. (Plan §§ 1.1 (Excluded Claim); 10.7.) To the extent that this is an objection to adequacy of the amount of the Shareholder Settlement under the Plan, it should be overruled. The settlement confers substantial benefits on creditors, primarily by facilitating the transfer of billions of dollars in value in respect of their claims, both for the purpose of opioid crisis abatement and to compensating qualifying personal injury claimants, and is in the best interest of the estates. (Conf. Br. ¶¶ 46-117.) |
| 33. Tim Wright<br><br>[Dkt. No. 3299] | (a) | Wright states that the Plan does not include sufficient punishment of the Sacklers and that "if the courts would [divvy] up the 4.275 billion and leave them with n[o]thing that would be a fair settlement." (pg. 1.) | (a) | This objection should be overruled. The Shareholder Releases **do not** release any criminal claims or provide any criminal immunity. (Plan §§ 1.1 (Excluded Claim); 10.7.) To the extent that this is an objection to adequacy of the amount of the Shareholder Settlement under the Plan, it should be overruled. The settlement confers substantial benefits on creditors, primarily by facilitating the transfer of billions of dollars in value in respect of their claims, both for the purpose of opioid crisis abatement and to compensating qualifying personal injury claimants, and is in the best interest of the estates. (Conf. Br. ¶¶ 46-117.) |

| Objecting Party | Summary of Objection | | Debtors' Response | |
|---|---|---|---|---|
| 34.  Michael W. Normile III<br><br>[Dkt. No. 2966] | (a) | The Plan should not be confirmed because "the currently proposed levels of compensation are clearly and woefully, inadequate."  (pg. 2.)  The Sackler settlement in particular is "barely a slap on the wrist," and is not a fine, but more of a "donation." (pg. 1.) | (a) | To the extent that this is an objection to adequacy of the amount of the Shareholder Settlement under the Plan, it should be overruled.  The settlement confers substantial benefits on creditors, primarily by facilitating the transfer of billions of dollars in value in respect of their claims, both for the purpose of opioid crisis abatement and to compensating qualifying personal injury claimants, and is in the best interest of the estates. (Conf. Br. ¶¶ 46-117.) |
| | (b) | Mr. Normile also states that Purdue should be liable for capital murder based on the felony murder doctrine since claimant is going to die.  (pg. 3.) | (b) | This objection is not a valid Plan objection and should be overruled. |
| 35.  Les Burris<br><br>[Dkt. No. 3028] | (a) | The Plan should be reconsidered, such that personal injury claimants are to receive more than $48,000.  (pg. 1.) | (a) | This objection should be overruled.  As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $700-750 million under the Plan, and the evidence at confirmation will hearing that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing.  (*See* Conf. Br. ¶¶ 43, 225-246.) |
| 36.  Theresa Willis<br><br>[Dkt. No. 3100] | (a) | Ms. Willis states that they "do not agree with not charging all parties," and that Willis "deserve[s] to be compensated." | (b) | This objection should be overruled.  As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $700-750 million under the Plan, and the evidence at confirmation will hearing that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing.  (*See* Conf. Br. ¶¶ 43, 225-246.) |
| 37.  Maria Ecke | (a) | Ms. Ecke states that the proof of claims filed on her behalf were erroneously filed. (pg. 1.) | (a) | This is not a plan objection. |

| Objecting Party | | Summary of Objection | | Debtors' Response |
|---|---|---|---|---|
| [Dkt. No. 3357] | (b) | Ms. Ecke states that there should be more money to be distributed among all the claimants. (pg. 1.) | (b) | This objection should be overruled. As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $700-750 million under the Plan, and the evidence at confirmation will hearing that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (*See* Conf. Br. ¶¶ 43, 225-246.) |
| 38. Daniel West, on behalf of Brian West<br><br>[Dkt. No. 3057] | (a) | Mr. West urges the court to not "forget the little guy," and approve Brian West's claim. (pg. 1.) | (a) | This is not a valid Plan objection and should be overruled. |
| | (b) | Mr. West also states that "Purdue Pharma and its executives do not deserve anything once" the bankruptcy is finished. (pg. 1.) | (b) | This is not a Plan objection. To the extent it is an objection to the Plan, this objection should be overruled. |
| 39. James E. Crawley<br><br>[Dkt. No. 3111] | (a) | Mr. Crawley asserts that the Debtor "should be held accountable for lives lost and lives destroyed" due to opioids. (pg. 1.) | (a) | This objection should be overruled. |
| | (b) | Mr. Crawley also states that he has "been informed or given notice," and is "looking for legal help[.]" (pg. 1.) | (b) | This is not a Plan objection. |
| 40. Thomas Hickey<br><br>[Dkt. No. 3099] | (a) | Mr. Hickey states that he has not been able to receive legal mail since the mail has been confiscated as contraband in state prison. (pg. 1.) Mr. Hickey believes this violates his rights and asks for assistance to view the mail. (pgs. 1-3.) | (a) | To the extent that this is an objection to the confirmability of the Plan, no legal basis is provided, and the objection should be overruled. |
| 41. D. Thomas Page<br><br>[Dkt. No. 3368] | (a) | Mr. Page objects to the Plan because they have not received a copy of the Plan, a copy of the "Shareholder List or the response by Sackler Family, or the voting ballot. (pg. 1.) | (a) | The Debtors provided adequate notice and complied with the solicitation procedures order. |
| | (b) | Mr. Page asks to be included "in all motions civil or otherwise." (pg. 1.) | (b) | The Debtors provided adequate notice and complied with the solicitation procedures order. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 42.  CL McGaha<br><br>[Dkt. No. 3102] | (a)  McGaha objects to (i) continued manufacture and use of long-acting opiates; (ii) the Plan because it does not provide for unit-dose packaging; (iii) lack of alternative treatment options in rural areas.  McGaha also argues that the plan increases stigma and sets up a huge bureaucracy. | (c)  This is not a valid Plan objection. |
| 43.  Barbara Farash<br><br>[Dkt. No. 3404] | (a)  Ms. Farash objects that most of the financial benefits from the Plan will be paid to attorneys, large corporations, and governmental entities, and argues that a victims and families of the Debtors' should receive a larger share. | (b)  This objection should be overruled.  As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $700-750 million under the Plan, and the evidence at confirmation will hearing that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing.  (*See* Conf. Br. ¶¶ 43, 225-46.) |