UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Hearing Date: August 9, 2021 |
|  | : | Hearing Time:   10:00 a.m. |
|  | : |  |
| PURDUE PHARMA L.P., *et al.* | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 19-23649 (RDD) |
|  | : | Jointly Administered |
| Debtors.[1] | : |  |

**LIMITED OBJECTION OF CERTAIN CANADIAN MUNICIPALITY CREDITORS AND CANADIAN FIRST NATION CREDITORS TO DEBTORS' EX PARTE MOTION ON SHORTENED NOTICE WITH RESPECT TO THE STIPULATION AND AGREED ORDER BY AND AMONG THE DEBTORS AND THE CANADIAN GOVERNMENTAL CLAIMANTS PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3006 AND 9019**

TO:   THE HONORABLE ROBERT D. DRAIN,
         UNITED STATES BANKRUPTCY JUDGE:

For their Limited Objection and reservation of rights (the "Objection") to the Debtors' Motion On Shortened Notice For Entry of the Stipulation and Agreed Order by and Among the Debtors and the Canadian Governmental Claimants Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 3006 and 9019 (referred to herein as the "Application" or "Stipulation," or "Canadian Province Stipulation" respectively)(CMECF Docket Entries 3332 and 3333) the Canadian Municipal Creditors and Canadian First Nation Creditors (the "Canadian Municipality and First Nations Creditors" or "CMFNC" respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors shall include their affiliates and other entities under their control. The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

**PRELIMINARY STATEMENT**

1. Creditors and counsel herein have duty to take such steps as are required to prevent a party from leading this Court to error. Given the information and arguments revealed over the past couple of days and hours, the CMFNC by way of their limited objection request additional disclosure and this Court's careful consideration of the proposed Stipulation.

2. It is possible that Debtors are leading this Court to grave error with respect to certain significant Canadian sovereign claims, including but not limited to the CMFNC Claims.

3. The Canadian Province Stipulation may be a stepping stone, only very recently placed, on this path to error. The CMFNC do not wish to interfere with any valid or beneficial settlement or stipulation entered into by the Canadian Provinces. However, there is simply not enough information contained in the Debtors application, heard on shortened notice in the exceptionally close vicinity of Plan Confirmation, with difficult positions unfolding in real time, for the CMFNC claimants and other Canadian creditors to properly evaluate the terms of, effect of, and motivations for the entry into, the proposed Stipulation.

4. This is particularly so in light of: a) the dollar value quantum of the Canadian Province Claims; b) the dollar value quantum of the CMFNC Claims; c) the independent complexity of these claims; d) complex Plan and trust issues regarding these claims; and e) the shear number of individuals who are directly or indirectly affected.

5. Debtors have proceeded effectively by drawing a line at the US – Canadian border – entirely arbitrarily. This posture infects the entire case and Plan process skewing the result horribly as to Canadian Creditors.

6. It is doubtful that this Court would participate in a Plan process that treated Canadian vendors entirely differently than US vendors merely on the basis of citizenship. But this

is exactly what the Debtors have done, and are attempting to close the loop on, vis a vis Canadian Province, Municipal and First Nations claims against the US Debtors.

7. The suggestion, confirmed by Debtors recent filings, that effectively Canadian Provinces, Municipalities and First Nations have dubious to no valid claim against the US Debtors, and that their claims are or should be limited to a Canadian sister company alone, is conclusory and patently false to the point of embarrassment. This is so particularly with reference to the NOAT, Tribal Trust, trust structure and exceptional negotiations and benefits which have been afforded similarly situated US state, county municipal and tribal claimants, who have been placed in entirely different classes, with totally disparate treatment, as opposed to certain Canadian claimants.

## BACKGROUND

8. Upon the filing of this Chapter 11 bankruptcy case, the CMFNC complied with the US automatic stay, and the CCAA stay, and placed their faith in the US Bankruptcy process by timely filing proofs of claim.

9. Today, it appears that CMFNC patience and faith in the US bankruptcy process may have been misplaced. Certainly the CMFNC believed that by virtue of the Recognition Order and the seemingly robust process in this case, that their claims would be completely and fairly addressed, globally, in line with other similarly situated claims, in this US bankruptcy court. Today, that does not appear to be the case.

10. The Debtors' filing late Thursday (yesterday) of the *Debtors' Memorandum of Law in Support of Confirmation of Debtors' Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Debtor Affiliates and Omnibus Reply to Objections Thereto* (the "Reply")(docket entry 3461) and its response to the CMFNC Plan Objection makes this clear.

11. The Reply states that:

3

> "The Debtors informed the Canadian Objectors over a week before they filed their objection that their claims are classified for purposes of distribution in Class 11(c) (Other General Unsecured Claims) under the Plan—and not Class 4 or Class 5— notwithstanding the fact that the Canadian Objectors received ballots to vote in Classes 4 and 5."

(Debtors Reply, page 180.)

12. In real time, the above quotation references a date roughly three weeks ago. Debtors thus admit that any presumptions that the CMNCF or other Canadian Creditors may have had about the Plan and Trusts and Canadian Municipal and Canadian First Nation treatment thereunder was mistaken – upon the Debtors' clear revelation that the Class Four had Five Ballots that the CMNCF creditors had received, as voting purposes only ballots, meant nothing in terms of treatment or distribution, and that the Debtors' true intent was to treat the CMNCF classes within class 11(c) – a catch all class where the CMNCF would undoubtedly receive a slim fraction of a very small allocation.

13. It must be understood that CMNCF raise these issues now in an attempt to protect all Canadian Municipalities - those that filed claims, and those that did not. By way of reference to Canadian Municipalities that did file claims, but who are similarly situated to the CMNCF and in effect a part of the putative Canadian Municipal opt-out class, the CMNCF draws this Court's attention to Governmental Opiod Proof of Claim No. 144211, timely filed by the City of Toronto, with exceptional detail, in the sum of $277,248,754 (CAD).

14. In short, Debtors' Reply reveals now in writing what the CMNCF and other Canadian Creditors have come to understand only very recently – that they were not a part of the massive US NOAT and Tribal trust claims resolution process, and in all likelihood, were never going to be.

15. If the Debtor was truly seeking a global, orderly and final resolution to all of the

4

claims stemming from the Canadian and US Purdue entities and the Sackler Family ownership of and involvement therein, it is very difficult under the circumstances for the CMNCF to find Debtors' good faith in this process that it now seems, whether intentional or not, misled and excluded them.

16. It is from this place that the CMNCF file the within Limited Objection.

## THE STIPULATION

17. This background is material to this Court's review of the Proposed Stipulation because it begs the ultimate question for Canadian creditors, and a large question for the US Debtors and Creditors and this Court – whether the Canadian CCAA Court will confirm the Plan as currently propounded when presented with same post-Confirmation.

18. A failure of the CCAA Court to do so, whether in whole or in part, would create a panoply of complex issues regarding foreign sovereigns, comity, the effect of this Court's orders, non-debtor releases, the ability of the non-debtor released parties to actually satisfy the terms of the proposed Plan and Trusts, and the certainty that creditors of the US entity believed they were negotiating.

**a. The Application on Shortened Notice to Approve the Stipulation, is in Actual Fact A Motion to Approve a Compromise or Settlement, With Little of the Requisite Supporting Analysis and Information.**

19. In but one sentence in the Application in Support of the Stipulation do the Debtors actually refer to the terms contained in the Stipulation as a "settlement." (See, Page 3 of the Application).[1]

20. By definition, the act of foreign sovereigns seeking to settle and withdraw multi-billion dollar claims merits this Court's and the Creditors attention and analysis of detail.

---

[1] "10. The Stipulation and Order reflects a **settlement** that has been reached between the Debtors and the Canadian Governmental Claimants and acknowledged and agreed to by counsel to the Sackler families." [emphasis added]"

5

21. In short, it appears that the Canadian Provinces are receiving a limited carve out from any proposed Plan release of their claims against the Purdue Canada entities, and the non-debtor released parties. As *quid pro quo* the Canadian Provinces are withdrawing their claims against the US Debtors. This is an extraordinary step – particularly in light of the radically different treatment that US states, municipalities and tribes are receiving under the proposed Plan. It bears this Court's close consideration and investigation.

22. The net effect of the Stipulation would be to limit the Canadian Province claims to recovery against Purdue Canada assets, and the Non-Debtor Released Parties (the Sacklers), in Canada.

23. This is problematic, insofar as, upon information and belief, Purdue Canada owns no real estate in Canada, and is a business with approximately ninety employees and approximately $100 million dollars in average yearly revenue. It is very unclear what if anything Candiand assets might amount to on liquidation or sale – and this is not apparently addressed in any Plan document, supplement or otherwise.

24. Moreover, it is arguable this Court is not presently actively administering the assets of Purdue Canada. Nor apparently is the Canadian Court.

25. It appears from review of the Information Officer's Reports in the CCAA action, and other Plan documents, that post US Confirmation, the Sackler owners of Purdue Canada will seek sale of Purdue Canada within seven (7) years, and contribute "most" of the proceeds to Canadian creditors.

26. It is not clear under the Plan documents whether the ultimate sale of Purdue Canada will be under the auspices of any Court – or whether the proceeds will be received directly by the Sacklers.

27. The question asked by the CMNCF is: why are the Canadian Provinces abdicating

and withdrawing their US claims, in exchange for limited modification of release language as to what, in seven (7) years, may be very pyrrhic assets as a basis for recovery – whether with reference to Purdue Canada, or with reference to whatever Sackler assets are or remain in Canada.

28. Moreover, there is a strong argument that what the Canadian Provinces are receiving is what they were, or were going to be, entitled to in any event as a matter of law.

29. The CMNCF can only suppose, based upon the extremely terse Debtor filing in support of the Stipulation, and with reference to other Debtor documents and the CCAA Information Officer's Reports, what benefits are obtained by the US Debtors and the Canadian Provinces by entry into the Stipulation, because of the lack of disclosure and analysis regarding this quasi-settlement.

30. Debtors in the Application in Support of the Stipulation state in the most conclusory fashion that the settlement benefits the Estate due to the withdrawal of the Canadian Province Claims.

31. Granted, the withdrawal of claims in most Chapter 11 circumstances would almost always on its face appear to benefit the debtor and its creditors.

32. However here, in light of the size of these claims, the number of creditors and people affected and the potential down the road impact, the proposed settlement and its bona-fides bear real probing.

33. Because of the Plan and Trust structure, and the manner in which Canadian Creditors have been treated (or ignored), the post Stipulation and Post Confirmation effect of the Stipulation must be clearly understood by all.

34. The first concern is that the Canadian Provinces did not need at this time Court approval to withdraw their claims under Rule 3006 – raising the question of the necessity of the Stipulation.

35. Second, the Debtors could have submitted revised release language as it pertains to Canada by way of an amendment to the Plan on notice to all – and it is expected that there will be amendments prior to entry of a Confirmation Order in this contested process, without the necessity of this Court's entry of the Stipulation.

36. Third, it is not at all clear from the Application or the proposed Stipulation, in light of the Purdue Canada asset value and Debtor admitted liability and collection issues as to the Non-Debtor Released Parties (the Sacklers), what the Canadian Provinces are gaining by virtue of the Stipulation.

37. Fourth and finally, it appears that beyond the conclusory statement that withdrawal of the claims is "good" for the Debtors and their Creditors, the question is begged as to whether that is in fact true, if the Stipulation creates in whole or part a situation where the CCAA Court does not later confirm this Court's Plan Confirmation Order.

38. Debtors state that entry of the Stipulation would benefit creditors by reducing the claims pool. The Debtors do not even indicate which claims pool is benefited. To the extent that the Canadian Province claims are in class 11(C), the benefit to creditors within said class is de minimis to the point of being non-existent.

39. In the same breath, this Court need wonder about the effect of this foreign sovereign potentially withdrawing from the Plan process and this Court's jurisdiction.

**b.    Debtors Do Not Provide the Factual Detail and Support and Legal Analysis Typically Required for Approval of a Compromise or Settlement, or Quasi-Settlement, by the Bankruptcy Court.**

40. The Application contains absolutely no *Rule* 9019 analysis, and no reference to any of the large body of caselaw developed in support of a Bankruptcy Court's analysis of a settlement or compromise, in effect referencing Rule 9019 largely only in titles.

41. The settlement is described as:

> "the Debtors and the Canadian Governmental Claimants have agreed to certain clarifications regarding the scope and impact of the releases set forth in the Plan, in consideration for which the Canadian Governmental Claimants have agreed to withdraw the Canadian Proofs of Claim as of right and release the Debtors and their Related Parties (solely in their capacities as Related Parties of the Debtors) from any and all Claims, obligations or liabilities related to or arising from the Canadian Proofs of Claim"

(Docket entry 3332, Application at page 3)

42. *Rule* 9019(a) authorizes a court, after notice and a hearing, to approve a compromise or settlement of a controversy, providing, in relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." *Fed. R. Bankr. P.* 9019(a).

43. Bankruptcy courts will generally approve a settlement pursuant to *Rule* 9019 if the settlement is in the best interest of the debtor's estate. *See Vaughn v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

44. Settlements approved under *Rule* 9019 need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness." *Id. See also In re Ashford Hotels Ltd.,* 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.").

45. This standard is deferential, because compromises are favored in bankruptcy since "they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate." *O'Connell v. Packles* (*In re Hilsen*), 404 B.R. 58, 69 (Bankr. E.D.N.Y. 2009). Courts generally exercise their discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). 15.

46. Although a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968),

47. Courts generally will consider whether a settlement is above the lowest range of reasonableness by determining whether the settlement is "fair and equitable" and "in the best interests of the estate." *TMT Trailer Ferry*, 390 U.S. at 424; *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co.* (*In re Ionosphere Clubs, Inc.*), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994) (a Court need only find that the settlement is fair and equitable, reasonable, and in the best interests of the debtors' estate). Courts will also consider, where relevant, the following factors: (1) the complexity and likely expenses and duration of litigation; (2) the balance between the likelihood of success compared to the present and future benefits offered by the litigation; (3) the risk of establishing liability and damages; (4) the relative benefits achieved through settlement; (5) creditor support for the settlement; and (6) the reasonableness of the settlement in light of all the attendant risks of litigation. *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994).

48. CMNCF simply asks by way of Limited Objection, as yet unaddressed, in the long run, does this Stipulation really benefit anyone? And notwithstanding any purported benefit, does it lay the groundwork for larger problems down the road?

49. Nothing contained herein shall constitute a waiver of any rights or remedies of the CMFNC under title 11 of the United States Code or applicable law, including, without limitation, the right to (i) amend, modify, or supplement this Objection, or (ii) raise any other additional arguments at a later date, including, but not limited to, in an objection to any further Amended Plan or revised Stipulation, and the right to assert lack of subject matter jurisdiction, preemption.

immunity form suit or inapplicability of the automatic stay, depending upon the final outcome of the CCAA proceeding or related matters before this Court.

Dated: August 6, 2021

Respectfully submitted,

/s/ Allen J. Underwood, II
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Allen J. Underwood II, Esq.
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
e-mail: aunderwood@litedepalma.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2021, a true and correct copy of the foregoing Limited Objection was filed via this Court's CM/ECF system and will be forwarded by electronic transmission to all parties registered to receive electronic notice in these cases, as identified on the Notice of Electronic Filing (NEF).

*/s/ Allen J. Underwood II*
Allen J. Underwood II