WHITE & CASE LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131
Tel.: (305) 371-2700
Fax: (305) 358-5744
Thomas E Lauria (admitted *pro hac vice*)
Laura L. Femino (admitted *pro hac vice*)

1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 819-8200
Fax: (212) 354-8113
J. Christopher Shore
Michele J. Meises
Alice Tsier

-and-

ASK LLP
60 East 42nd Street, 46th Floor
New York, New York 10165
Tel.: (212) 267-7342
Fax: (212) 918-3427
Edward E. Neiger
Jennifer A. Christian

*Co-Counsel for Ad Hoc Group of Individual*
*Victims of Purdue Pharma L.P., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Purdue Pharma L.P., *et al.*,[1] | ) | Case No. 19-23649 (RDD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

### THE AD HOC GROUP OF INDIVIDUAL VICTIMS' MOTION
### FOR ENTRY OF A HIPAA-QUALIFIED PROTECTIVE ORDER

The Ad Hoc Group of Individual Victims (the "Personal Injury Ad Hoc Group") of Purdue Pharma L.P., *et al*., hereby moves pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, as incorporated by Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure, for entry of a qualified protective order, substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Proposed Order"), consistent with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended by the Health Information Technology for Economic and Clinical Health Act, and all applicable regulations issued by the Secretary of the United States Department of Health and Human Services, and respectfully states as follows:

### Preliminary Statement

This motion (the "Motion") seeks relief to facilitate the administration of PI Channeled Claims[2] under the PI TDP, including the preparatory work in respect of PI Channeled Claims described in and contemplated by the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Entry of an Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and TopCo, (II) Directing Prime Clerk LLC to Release Certain Protected Information, and (III) Granting Other Related Relief* [ECF No. 3484] (the "Advances Motion"). The Personal Injury Ad Hoc Group requests entry of the Proposed Order authorizing Mr. Edgar C. Gentle III of Gentle of Turner, Sexton & Harbison, LLC, the proposed trustee for the PI Trust (presently, the "Proposed PI Trustee" and, once appointed, the "PI Trustee") and proposed claims administrator for the PI TDP (presently, the "Proposed PI Claims Administrator"

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [ECF No. 3185] (the "Plan") and the PI Trust Documents as filed in the *Ninth Plan Supplement Pursuant to the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [ECF No. 3187].

and, once appointed, the "PI Claims Administrator"), as well as a limited number of other professionals, as detailed below, to receive and transmit (including electronically) information pertaining to Holders of PI Claims (the "PI Claimants") that is or may be protected and/or made confidential by HIPAA and its amendments, including the detailed information on the approximately 140,000 personal injury Proofs of Claim filed in the Chapter 11 Cases. Any such receipt or transmittal of PI Claimant data would remain subject to the *Third Amended Protective Order* entered November 12, 2020 [ECF No. 1935] (the "Existing Protective Order"). As detailed below, such relief is common in mass tort cases, and the present Motion is supported by the Debtors and the NAS Committee. The Personal Injury Ad Hoc Group seeks this relief only if and after the Confirmation Order is entered.

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3. As set forth in the Plan, all PI Channeled Claims will ultimately be channeled to the PI Trust on the Effective Date. As set forth in more detail in the Plan and the PI TDP, Mr. Edgar C. Gentle III of Gentle of Turner, Sexton & Harbison, LLC is the Proposed PI Trustee and will serve as the PI Trustee. Mr. Gentle is also the Proposed PI Claims Administrator and will serve as the PI Claims Administrator. In such capacities, Mr. Gentle will administer, process, and resolve the PI Channeled Claims in accordance with the PI TDP and PI Trust Agreement.

4. Resolution of PI Channeled Claims under the PI TDP involves review of various forms of HIPAA-protected information, as well as the detailed information set forth on the approximately 140,000 Proofs of Claim filed by PI Claimants with Prime Clerk LLC (the "PI Data"). Applicable provisions of the PI TDP may require a PI Claimant to produce medical records in support of his or her PI Claim,[3] and the PI Claims Administrator, in resolving such a Claim, may need to verify the records produced or seek additional corroborating records from healthcare entities.[4] Any PI Claimant who "opts out" of the PI TDP and successfully obtains a final judgment on his or her PI Claim in the tort system will also be required to provide to the PI Claims Administrator certain healthcare-related information evidencing that his or her PI Claim is free of outstanding medical liens.[5]

5. Claims that are liquidated under the PI TDP will also be subject to the LRP Agreement, which consensually resolves certain healthcare-related liens or claims held by Third-Party Payors signatory thereto (the "Participating TPPs") against Distributions to PI Claimants. Resolving these liens (and related claims) under the LRP Agreement will require MASSIVE: Medical & Subrogation Specialists, as the proposed lien administrator thereunder (presently, the "Proposed LRP Administrator" and, once appointed, the "LRP Administrator"), to work with the Participating TPPs to identify, for each Claim eligible for recovery under the PI TDP, the qualifying liens such Participating TPPs may hold against such recovery. Certain Third-Party Payors have through their counsel indicated an interest in beginning, prior to the Effective Date, the process of "matching" their lists of insureds against the names of PI Claimants, in order to accelerate the process of lien resolution under the LRP Agreement post-Effective Date. To

---

[3] *See, e.g.*, Non-NAS PI TDP § 5.
[4] *Id*. § 5(k); § 2(b)(2).
[5] Non-NAS Opt-Out Procedures (Exhibit B to the Non-NAS TDP) § 5; NAS Opt-Out Procedures (Exhibit B to the Non-NAS TDP) § 5.

4

facilitate this advance work, it is anticipated that the Proposed PI Trustee and certain Third-Party Payors (those who sign the interim agreement, the "Committed TPPs") will execute an interim agreement that provides for the exchange of information on a confidential basis, limits the use of any such confidential information to the purposes of eventual lien resolution under the LRP Agreement and claim processing under the PI TDP, and binds the signing parties to the LRP Agreement upon the Effective Date.

6.  As set forth in more detail in the Advances Motion, the Proposed PI Trustee proposes to begin the preliminary stages of claims administration work in the interim period between confirmation of the Plan and the Effective Date. This advance work will require the same HIPAA-related relief needed for the post-Effective Date period and consists of the following:

  i. hiring a third-party vendor to build a claims database for the PI Trust (the "PI Trust Claims Database"), the PI Trust website, online version of the Non-NAS PI Claim Form and NAS PI Claim Form (each as defined in the PI TDP and, together, the "PI Claim Forms"), an online portal for electronic submissions of those forms, and a smartphone application with portable versions of the same;

  ii. testing and optimizing the PI Trust Claims Database for new data intake, including client data held in different electronic forms by various plaintiffs' counsel;

  iii. using the PI Trust Claims Database to process and upload the PI Data;

  iv. identifying an estimated 30,000 to 40,000 *pro se* claimants from among the PI Data; confirming, updating, and completing contact information for those *pro se* claimants; and preparing the physical mailing of the PI Claim Forms to those PI Claimants post-Effective Date;

  v. collaborating with various plaintiffs' counsel to solicit the completion of a sample set of PI Claim Forms;

  vi. preliminarily processing and scoring that sample data under the PI TDP; and

  vii. analyzing the data sample results and fine-tuning the projected recoveries under the PI TDP, including the dollars-per-point conversion rate contemplated by the Non-NAS PI TDP.

**Relief Requested**

7.     The Personal Injury Ad Hoc Group respectfully requests that the Court authorize (i) the Proposed PI Trustee, the Proposed PI Claims Administrator, and the Proposed LRP Administrator and the partners, associates, employees, counsel, and agents of each of the foregoing, (ii) prior to the Effective Date, the Committed TPPs and their employees, counsel, and agents, in each case only to the extent required to ultimately resolve under the LRP Agreement claims held by such Committed TPPs or to otherwise aid in the ultimate resolution of PI Claims under the PI TDP, and (iii) after the Effective Date, the Participating TPPs and their employees, counsel, and agents, in each case only to the extent required to ultimately resolve under the LRP Agreement claims held by such Participating TPPs or to otherwise aid in the ultimate resolution of PI Claims under the PI TDP (all parties collectively, the "Receiving Parties") to receive and transmit (including electronically), subject to the Existing Protective Order and execution by such party of the Acknowledgment and Agreement to be Bound by Qualified Protective Order attached hereto as **Exhibit B**, information pertaining to PI Claimants that is or may be protected and/or made confidential by HIPAA and its amendments, including "protected health information" ("PHI") and "individually identifiable health information," as defined in 45 C.F.R. § 160.103.[6] The Personal Injury Ad Hoc Group respectfully requests that the same relief apply to the Receiving Parties both before and after the Effective Date.

---

[6] 45 CFR § 160.103 defines "protected health information" as "individually identifiable health information: (1) Except as provided in paragraph (2) of this definition, that is: (i) Transmitted by electronic media; (ii) Maintained in electronic media; or (iii) Transmitted or maintained in any other form or medium. (2) Protected health information excludes individually identifiable health information:(i) In education records covered by the Family Educational Rights and Privacy Act, as amended, 20 U.S.C. 1232g; (ii) In records described at 20 U.S.C. § 1232g(a)(4)(B)(iv); (iii) In employment records held by a covered entity in its role as employer; and (iv) Regarding a person who has been deceased for more than 50 years. It defines "individually identifiable health information" as "[i]ndividually identifiable health information is information that is a subset of health information, including demographic information collected from an individual, and: (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

**Argument**

8. In order to perform their respective duties and functions under the Plan and the PI Trust Documents, as well as the advance work described in the Advances Motion, the (Proposed) PI Claims Administrator and the (Proposed) LRP Administrator will need access to PHI, individually identifiable health information, and related healthcare information pertaining to the PI Claimants. Among other things, the (Proposed) PI Claims Administrator will need to seek healthcare-related information from various "Covered Entities," defined in 45 C.F.R. § 160.103 to comprise health plans, health care clearinghouses, and health care providers who transmit health information in electronic form in connection with a transaction covered by such subchapter, and such Covered Entities will need authorization to provide such requested information.

9. The PI TDP requires individuals seeking a Distribution from the PI Trust to complete and return to the PI Trust individual HIPAA authorization forms before they can receive Distributions. *See* Exhibit D to the Non-NAS PI TDP; Exhibit B to the NAS PI TDP. However, because of the large number of PI Claimants and the efficiencies of grouping information requests across the PI Claimant pool, entry of the Proposed Order will significantly expedite the Claim administration and lien-resolution processes as compared to individual, claimant-by-claimant authorizations. It will also permit the Receiving Parties to begin work processing Claims and resolving liens *before* the PI Trustee's and PI Claims Administrator's receipt of the individual PI Claim Forms, which are not due until 90 to 150 days after PI Claim Form dissemination, thereby allowing the PI Trust to begin payments to qualified personal injury victims sooner. For this reason, entry of similar qualified protective orders is common in mass tort bankruptcies. *See, e.g.*, *In re Palm Beach Brain & Spine, LLC, et al.*, No. 19-20831-MAM (Bankr. S.D. Fla. Dec. 5, 2019) [ECF No. 214] (providing for production and transfer of HIPAA-covered individually identifiable

19-23649-shl    Doc 3486    Filed 08/06/21    Entered 08/06/21 21:48:32    Main Document
Pg 8 of 9


protected health information amongst parties); *In re Am. Workers Ins. Servs., Inc. & Assoc. Health Care Mgmt., Inc.*, No. 19-44208-mxm11 (Bankr. N.D. Tex. Oct. 29, 2019) [ECF No. 56] (same); *In re Campbellton-Graceville Hosp. Corp.*, No. 17-40185-KKS (Bankr. N.D. Fla. June 20, 2018) [ECF No. 723] (same).

## Notice

10.     Notice of the Motion will be provided to the entities on the Master Service List (as defined in the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498] and available on the Debtors' case website at https://restructuring.preimeclerk.com/purduepharma). The Personal Injury Ad Hoc Group respectfully submits that no further notice is required.

## No Prior Request

11.     The Personal Injury Ad Hoc Group has not previously sought the relief requested herein from the Court or any other court.

## Conclusion

WHEREFORE, for the reasons set forth above, the Personal Injury Ad Hoc Group respectfully requests that the Court grant the Motion and such other relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: August 6, 2021<br>New York, New York | WHITE & CASE LLP<br><br>By: */s/ J. Christopher Shore*<br>J. Christopher Shore<br>Michele J. Meises<br>Alice Tsier<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Tel.: (212) 819-8200<br>Fax: (305) 358-5744<br>cshore@whitecase.com<br>michele.meises@whitecase.com<br>alice.tsier@whitecase.com<br><br>Thomas E Lauria (admitted *pro hac vice*)<br>Laura L. Femino (admitted *pro hac vice*)<br>Southeast Financial Center, Suite 4900<br>200 South Biscayne Boulevard<br>Miami, Florida 33131<br>Tel.: (305) 371-2700<br>Fax: (305) 358-5744<br>tlauria@whitecase.com<br>laura.femino@whitecase.com<br><br>-and-<br><br>ASK LLP<br>Edward E. Neiger<br>Jennifer A. Christian<br>60 East 42nd Street, 46th Floor<br>New York, New York 10165<br>Tel.: (212) 267-7342<br>Fax: (212) 918-3427<br>eneiger@askllp.com<br>jchristian@askllp.com<br><br>*Co-Counsel for the Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al.* |