DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
James I. McClammy
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.¹ | (Jointly Administered) |

**DEBTORS' REPLY TO LIMITED OBJECTION OF CERTAIN CANADIAN MUNICIPALITY CREDITORS AND CANADIAN FIRST NATION CREDITORS TO DEBTORS' EX PARTE MOTION ON SHORTENED NOTICE WITH RESPECT TO THE STIPULATION AND AGREED ORDER BY AND AMONG THE DEBTORS AND THE CANADIAN GOVERNMENTAL CLAIMANTS PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3006 AND 9019**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Purdue Pharma L.P. ("**PPLP**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**"), hereby submit this reply (this "**Reply**") in support of the *Stipulation and Agreed Order By and Among the Debtors and the Canadian Governmental Claimants Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 3006 and 9019* [Dkt. No. 3332] (the "**Stipulation and Order**")[2] and in response to the *Limited Objection of Certain Canadian Municipality Creditors and Canadian First Nation Creditors to Debtors' Ex Parte Motion on Shortened Notice with Respect to the Stipulation and Agreed Order By and Among the Debtors and the Canadian Governmental Claimants Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rules 3006 and 9019* [Dkt. No. 3474] (the "**Objection**") filed by certain Canadian Municipal Creditors and Canadian First Nation Creditors (the "**CMFNC Objectors**"). The Debtors respectfully state as follows:

1. The Stipulation and Order that is before the Court is an agreement by and among the Debtors, the Canadian Governmental Claimants and the Sackler families. It provides for a negotiated resolution resulting in the withdrawal of the claims filed by the Canadian Governmental Claimants against the Debtors and the preservation of "Continuing Claims"[3]

---

[2] Except where otherwise indicated, capitalized terms used but not defined in this Reply have the meanings ascribed to them in the Stipulation and Order or the Plan, as applicable.

[3] "**Continuing Claims**" means any Claims or Causes of Action held by a Canadian Governmental Claimant, by the federal government of Canada or by the governments of any of the territories of Canada (collectively, the "**Canadian Governments**") against any non-Debtor person or entity (including, without limitation, and for greater certainty, Purdue Canada and/or each Shareholder Released Party) that (x) arise out of or relate to the conduct of any corporations, companies, partnerships and other entities formed under the laws of Canada or its provinces affiliated or associated with any of the Debtors, including, without limitation, Purdue Canada and (y) are not based upon any conduct of the Debtors, including any Opioid-Related Activities of the Debtors.

1

against non-Debtors, including against the Shareholder Released Parties and the Sackler-owned Canadian independent associated companies. The Stipulation and Order does not affect the CMFNC Objectors' rights in any manner whatsoever.

2. The CMFNC Objectors are four Canadian cities (Grande Prairie, Alberta; Lethbridge, Alberta; Wetaskiwin, Alberta; and Brantford, Ontario) and two Canadian First Nations (the Peter Ballantyne Cree Nation and the Lac La Ronge Indian Band). Although the CMFNC Objectors purport to have filed class proofs of claim (Proofs of Claim 144535 and 145592), they never filed a motion for leave to file class proofs of claim, and any attempt to do so now would be untimely. Indeed, the Court expressly discouraged the filing of additional motions for class treatment at the July 23, 2020 omnibus hearing—over 12 months ago—stating that it "would be unduly unfair . . . if other parties jumped in now, after today's hearing" (July 23, 2020 Hr'g Tr. 127:6-7), characterizing any such future motion as being "too late" (*Id.* at 127:9), and directing potential class claim movants to consider timeliness before deciding "to spend the time making the motion" (*Id.* at 127:16). To the extent that the CMFNC Objectors purport to speak for Canadian creditors generally, they do not.

3. The CMFNC Objectors appear to be asking the Court to consider why the Canadian Governmental Claimants and the Debtors have reached a resolution and are entering into the Stipulation and Order. The only relevant question, however, is whether the resolution reached and entry into the Stipulation and Order is in the best interests of the Debtors' estates, and it unquestionably is.

4. The Canadian Governmental Claimants asserted claims in the amount of more than $60 billion.[4] The Debtors also understand that the Canadian Governmental Claimants intended to object to the proposed Plan on a number of grounds. *See Reservation of Rights of Her Majesty the Queen in Right of the Province of British Columbia and Other Canadian Governments with Respect to Confirmation of the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [Dkt. No. 3335]. If the Stipulation and Order is approved, the Canadian Governmental Claimants will withdraw their $60 billion of claims and will not oppose confirmation of the Plan.

5. The CMFNC Objectors complain that the Stipulation and Order does not contain an analysis of whether the settlement contained in the Stipulation and Order is above the lowest range of reasonableness and is "fair and equitable" and "in the best interest of the estate." *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) ("**TMT Trailer Ferry**"). The Debtors submit that the benefits of the Stipulation and Order to the Debtors' estate are obvious. A formal analysis only serves to underscore this point.

6. It is axiomatic that "settlements or compromises are favored in bankruptcy and, in fact, encouraged." *In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010). That is because settlements "minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re Motors Liquidation Co.*, 555 B.R. 355, 364-65 (Bankr. S.D.N.Y. 2016). Indeed, as the Supreme Court observed in the seminal *TMT Trailer*

---

[4] *See* Proofs of Claim appearing at numbers 144370, 144375, 144376, 144377, 144379, 144380, 144386, 144392, 144398 and 144412 on the claims registry in these Cases.

*Ferry* case, "it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *TMT Trailer Ferry*, 390 U.S. at 424.

7. The "fair and equitable" standard does not require the settlement to be the best compromise that the Debtors could have possibly obtained. Courts will instead approve a settlement so long as it does not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991); Hr'g Tr. 34:23-35:4, *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 8, 2020) ("[T]he court . . . must only canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . ."). In other words, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 257 (Bankr. S.D.N.Y. 2016) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The ultimate determination as to whether the proposed settlement falls within that range is firmly committed to the discretion of the bankruptcy court. *In re Sabine Oil & Gas Corp.*, 555 B.R. at 256-57 ("The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court."); *In re Residential Cap., LLC*, 497 B.R. 720, 749 (Bankr. S.D.N.Y. 2013) ("The decision to approve or deny a particular settlement involving a bankruptcy estate lies within the discretion of the bankruptcy court."); *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. at 505 ("A decision to either accept or reject a compromise and settlement is within the sound discretion of the Court . . . .").

8. Courts in the Second Circuit look to seven separate (but at times interrelated) factors—the so-called "*Iridium* factors"—to determine whether a settlement is reasonable and in

4

the best interests of the estates. These factors are: (1) "the balance between the litigation's possibility of success and the settlement's future benefits"; (2) "the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay, including the difficulty in collecting on the judgment"; (3) "the paramount interest of the creditors"; (4) "whether other parties in interest affirmatively support the proposed settlement"; (5) the "competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement"; (6) the "nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal quotations and alterations omitted). When assessing a global settlement of claims, "[t]he appropriate inquiry is whether the [s]ettlement [a]greement is in its entirety appropriate for the [] estate." *In re Ionosphere Clubs*, 156 B.R. at 430 (emphasis added).

9.  In weighing the *Iridium* factors, courts do not undertake a full-blown "'mini-trial of the facts or the merits underlying the dispute.'" *In re NII Holdings, Inc.*, 536 B.R. at 65 (quoting *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007)). Nor should they. "[L]ittle would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims." *In re Best Prods. Co., Inc.*, 168 B.R. at 51. Courts instead "'canvass the [settled] issues [to] see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Adelphia Commc'ns Corp.*, 368 B.R. at 225 (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). Moreover, although a court must make its own "considered and independent judgment" as to the reasonableness of the settlement, the court "may rely on the opinions of the

5

debtor, the parties to the settlement, and professionals in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement." *In re NII Holdings*, 536 B.R. at 99 (quoting *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012)); *see also In re Best Prod. Co., Inc.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) ("[T]he court may credit and consider the opinion of counsel that the settlement is fair and equitable.").

10. The relevant *Iridium* factors when applied here weigh overwhelmingly in favor of approval of the Stipulation and Order. The Stipulation and Order resolves over $60 billion of asserted claims, resolves potential Plan objections by the Canadian Governmental Claimants, and avoids any future litigation regarding the validity or amount of the Canadian Governmental Claimants' claims, all for no cost to the Debtors' estates, thus satisfying the first three *Iridium* factors. No party in interest other than the CMFNC Objectors opposes approval of the Stipulation and Order. And the Stipulation and Order was the product of extensive, arm's length negotiations among the Debtors, the Canadian Governmental Claimants and the Sackler families, all of whom are represented by sophisticated and experienced U.S. and Canadian counsel.

11. While the CMFNC Objectors ask many questions and cast many unfounded aspersions, they only raise two issues with respect to the value of the Stipulation and Order to the Debtors' estates. First, they argue that approval of the Stipulation and Order will somehow create "in whole or part a situation where the CCAA Court does not later confirm this Court's Plan Confirmation Order." CMFNC Obj. ¶ 17-18, 37. Second, they argue that the benefit of the withdrawal of the Canadian Governmental Claimants' claims is "de minimis to the point of being non-existent" to other general unsecured creditors. CMFNC Obj. ¶ 38. Both of these objections are entirely without merit.

12. The CMFNC Objectors do not and cannot explain how approval of the Stipulation and Order could possibly cause the Canadian Court to refuse to recognize an order of this Court confirming the Debtors' Plan. The Stipulation and Order is not the Plan. It is an agreement under which the Canadian Governmental Claimants are withdrawing and releasing claims asserted against the Debtors and their Related Parties while preserving Continuing Claims against non-Debtors—in fact by narrowing the proposed Plan's releases, discussed in paragraph 14 *infra*, the Stipulation and Order may help the Debtors obtain recognition of an order confirming the proposed Plan.

13. Nor do the CMFNC Objectors provide any serious support for the absurd suggestion that the withdrawal of the Canadian Governmental Claimants' claims has no benefit to other general unsecured creditors classified in Class 11(c) of the Plan. Under the Plan, each holder of an Allowed Other General Unsecured Claim will recover its pro rata share of the Other General Unsecured Claim Cash, which is a dedicated portion of the Effective Date Cash in an aggregate amount of $15 million. (Plan §§ 1.1 (definition of Other General Unsecured Claim Cash); 4.13.) If the Canadian Governmental Claimants' claims were ultimately allowed in even a fraction of the asserted face amount—which is *over $60 billion*—and classified in Class 11(c), their claims would massively dilute recoveries for other creditors in the class. Moreover, the CMFNC Objectors completely ignore the fact that, absent the Stipulation and Order, the Debtors would likely incur the expense of litigating the Canadian Governmental Claimants' Plan objections and the merits of their asserted claims, which would further reduce the funds available for distribution generally.

14. Finally, much of the Objection, including almost the entirety of the preliminary statement and background sections, is not an objection to the Stipulation and Order at all but is

7

instead an objection to the Plan. Again, the Stipulation and Order is not the Plan, and approval of the Stipulation and Order would not affect the CMFNC Objectors' rights (or any other party's rights) under the Plan. The CMFNC Objectors are aware, because the Debtors have shared draft language with them, that the Debtors intend to revise the scope of the third-party releases in the Plan to provide in effect that "Continuing Claims" held by all parties will not be released. To the extent that the CMFNC Objectors object to the scope of the Plan's third-party releases, they are free to raise those issues at confirmation.[5]

15. The Debtors will address Plan objections in the context of confirmation. There is, however, one point raised in the Objection that warrants brief mention at this time.

16. The CMFNC Objectors repeatedly suggest that the structure of the NOAT and the Tribe Trust were somehow kept secret from Canadian creditors until very recently. *See, e.g.,* CMFNC Obj. ¶ 14 ("In short, Debtors' Reply reveals now in writing what the CMNCF (sic) and other Canadian Creditors have come to understand only very recently – that they were not a part of the massive US NOAT and Tribal trust claims process, and in all likelihood, were never going to be."). This suggestion is absurd. The Disclosure Statement, which was first filed on March 15, 2021, along with every filed version of the Plan and documents relating to NOAT and the Tribe Trust are all very clear that these trusts will make distributions on account of Non-Federal <u>Domestic</u> Governmental Claims and Tribe Claims. At no point did the Debtors ever suggest that

---

[5] The CMFNC Objectors have filed a separate objection to the Plan (Dkt. No. 3275, the "**CMFNC Plan Objection**"). The CMFNC Plan Objection does not include any arguments regarding the scope of the third-party releases in the Plan other than an argument that this Court cannot release third-party claims of "foreign sovereigns." CMFNC Plan Obj. p. 9-12. The Debtors address this objection in paragraph 290 of the *Debtors' Memorandum of Law in Support of Confirmation of Debtors' Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Debtor Affiliates and Omnibus Reply to Objections Thereto* (Dkt. No. 3461).

8

NOAT or the Tribe Trust would make distributions on account of non-U.S. claims. The CMFNC Objectors obviously knew that they themselves were not participating in the creation of these trusts, and to the extent they had any questions regarding the treatment of their claims, they should have raised these concerns with the Debtors.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that the Court overrule the CMFNC Objection and promptly enter the Stipulation and Order.

Dated:   August 8, 2021
           New York, New York

                                      DAVIS POLK & WARDWELL LLP

                                      By:  */s/ Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
James I. McClammy
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

10