**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | |
| PURDUE PHARMA L.P., *et al.* ) | Chapter 11 |
| ) | |
| Debtors ) | Case No. 19-23649 (RDD) |
| ) | |

**CERTAIN INSURERS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED SOLELY TO INSURANCE COVERAGE AND TO STRIKE INSURANCE-RELATED TESTIMONY IN DEBTORS' DECLARATIONS**

In connection with the confirmation hearing on the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [Dkt. 3185] (the "Sixth Amended Plan"), Navigators Specialty Insurance Company, American Guarantee and Liability Insurance Company, Steadfast Insurance Company, XL Insurance America, Inc., Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, North American Elite Insurance Company, Aspen American Insurance Company, Gulf Underwriters Insurance Company, St. Paul Fire and Marine Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa. (collectively, the "Insurers") hereby move (i) *in limine* to exclude trial exhibits and testimony related solely to issues of insurance coverage, and (ii) to strike insurance-related testimony in the Declarations of Jesse DelConte [Dkt. 3456] (the "DelConte Declaration") and Lianna Simmonds [Dkt. 3432] (the "Simmonds Declaration"). The Insurers respectfully request that the Court grant the Motion because Plan confirmation does not require resolution of any insurance coverage issues and litigating insurance coverage will unnecessarily (and inappropriately) complicate the confirmation hearing.

1

**BACKGROUND**

As this Court has previously recognized, the dispute between the Debtors and their insurance carriers regarding coverage for the opioid claims pending against the Debtors (the "Opioid Claims") is non-core.  6/21/21 Hr'g Tr., Adv. Pro. No. 21-07005 [Dkt. 173] at 92-94. Among the reasons it is non-core is that confirmation and implementation of the Debtors' Plan does not require resolution of whether the Debtors' insurance policies cover the Opioid Claims. *Id*.  Indeed, nothing in the Plan depends on even a penny of recovery from the Insurers.  The financial projections in the approved disclosure statement, which the Debtors rely on to demonstrate the feasibility of the Plan and the projected distributions in the disclosure statement, acknowledge that "[t]he timing of any recoveries in respect of MDT Insurance Rights is currently uncertain and such recoveries have not been included in the forecast for conservatism." [Dkt. 2983] Appx. C at 4.  In recognition of its ability to confirm the Plan without addressing insurance coverage issues, the Court has suggested that it will leave resolution of the impact of the confirmation order and related findings for a later date.  6/21/21 Hr'g Tr., Adv. Pro. No. 21-07005 [Dkt. 173] at 59:12-18; 60:10-12.

Until recently, the Debtors' Plan reflected this same understanding.  Section 5.10 of the Plan—including the solicitation version that was overwhelmingly approved by creditors, including those represented by the Ad Hoc Committee of Governmental and Other Contingent Litigation (the "Ad Hoc Committee")— provided that nothing in the Plan or Confirmation Order would alter the parties' insurance contracts or their rights and obligations thereunder.  Fifth Amended Plan [Dkt. 2982] §5.10.  In reliance on this language, the Insurers did not conduct insurance-related discovery in connection with plan confirmation, instead anticipating that such discovery would take place in the adversary proceeding initiated by the Debtors (the "Adversary

Proceeding"), and in which this Court will have the opportunity to address insurance coverage issues on a full record.

As described below, however, the Debtors now appear to be engaging in a last-minute effort to interject insurance coverage issues into the confirmation hearing. The apparent reason for this interjection is the Ad Hoc Committee's desire to obtain factual findings and legal conclusions regarding the Debtors' insurance coverage through a process that prevents the Insurers from fully presenting their case and to use those findings and conclusions offensively to collaterally estop the Insurers from litigating defenses they have raised in the Adversary Proceeding.

### *The Debtors' Removal of Insurance Neutrality Language*

On the very day confirmation discovery closed—July 15, 2021—the Debtors amended the Plan so that it was no longer insurance neutral.[1] [Dkt. 3455] at 6-7. In response to the Insurers' objection to this untimely amendment, the Debtors now assert that the Plan should *not* be insurance neutral. Their Reply argues:

> Here, the Debtors are not suggesting that the Plan is "insurance neutral." Quite the contrary: Section 5.10 of the Plan makes clear that the terms of the Purdue Insurance Policies will be subject to (among other things) orders and findings in these Chapter 11 Cases…
>
> * * *
>
> As such, ***the Debtors fully expect that certain elements of the Plan and the Confirmation Order (including findings of fact and conclusions of law) will be used to pursue insurance coverage***

---

[1] The Ad Hoc Committee's suggestion that the Insurers were aware that *the Debtors* intended the policies to be subject to the Plan and confirmation order is false. [Dkt. 3465] at 62. The May 9 call referenced in the Ad Hoc Committee's Reply to Plan Objections alerted certain of the Insurers to the Ad Hoc Committee's position on insurance neutrality, but not the Debtors' position. Because the Debtors never advised the Insurers that they intended to amend the plan in accordance with the Ad Hoc Committee's proposal (despite numerous requests for updates), the Insurers only learned of the amendment after reviewing the filed Plan, as amended.

3

> from the Objecting Insurers after this Plan is confirmed. The Objecting Insurers have received ample notice of these proceedings and of the terms of the Plan itself, which leaves them in a position to be heard, and, indeed, they have elected to pursue their objections as part of the confirmation process in these Chapter 11 Cases.

[Dkt. 3455] at 6-7 (emphasis added).

### *The Insurance-Related Exhibits*

On July 26, the Debtors disclosed hundreds of proposed exhibits that relate solely to insurance issues. These exhibits include numerous insurance policies under which the Debtors were not previously seeking coverage and a series of letters the Debtors sent to the insurers purporting to notify them of the underlying actions and inviting settlement negotiations (the "Resolution Letters"). They also include documents that purport to show the existence of policies that Defendants maintain do not exist. *See, e.g.* Exhibit A.

### *The DelConte and Simmonds Declarations*

On August 5, the Debtors filed the DelConte and Simmonds Declarations, both of which purport to offer irrelevant testimony on issues related solely to insurance coverage.[2] In particular, the DelConte Declaration attempts to summarize the substance of the Insurers' policies and opines, without any apparent basis or foundation, that that the Insurers' policies "provide insurance coverage to the Debtors for opioid-related liabilities" and "each promise, without limitation and with varying wording, to indemnify Debtors for, or to pay on Debtors' behalf damages for bodily injury." [Dkt. 3456]. The Simmonds Declaration purports to provide a foundation for admission of the Resolution Letters as business records. [Dkt. 3432].

---

[2] Mr. DelConte was disclosed on July 26, 2021, but the disclosure did not identify insurance as a topic on which Mr. DelConte would testify. Ms. Simmonds was not disclosed as a witness until her declaration was filed on August 5, 2021; she was not listed on the Debtors' witness list served on July 26, 2021

## ARGUMENT

The Court should exclude all testimony and exhibits related solely to insurance coverage as irrelevant to plan confirmation, including the exhibits identified on Exhibit A hereto, and, for the same reason, strike the insurance-related testimony from the DelConte and Simmonds Declarations.

### A. Insurance Coverage Is Irrelevant to Plan Confirmation and Should Be Litigated in the Adversary Proceeding.

As this Court has previously recognized, confirmation of the Plan does not require resolution of the Parties' coverage dispute. 6/21/21 Hr'g Tr., Adv. Pro. No. 21-07005 [Dkt. 173] at 92-94. As a result, the coverage dispute is non-core and properly resolved in an adversary proceeding. *See, e.g.*, *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) (holding that the bankruptcy court was required to resolve a non-core, state-law contract dispute in an adversary proceeding). Litigating coverage issues at the confirmation hearing will unnecessarily lengthen and needlessly complicate the confirmation hearing.

In addition, the last-minute nature of the Debtors' attempt to litigate coverage during the confirmation hearing will prejudice the Insurers. Prior to the July 15 cut-off for confirmation discovery, the then-applicable version of the Plan (i.e., the version solicited to creditors) gave the Insurers every reason to believe that the Debtors agreed that the parties' insurance disputes would, as the law requires, be resolved in separate proceedings. In reliance on that insurance neutrality provision, the Insurers did not conduct insurance-related discovery or disclose an expert witness in connection with plan confirmation.[3] Instead, the Insurers have been

---

[3] Several insurers initially designated an expert for the confirmation hearing "to testify concerning the extent to which the [Fifth Amended Plan] is not 'insurance neutral'" [Dkt. 3027],

5

participating in discovery in good faith within the confines of the Adversary Proceeding, where most of the Insurers have produced their claim and underwriting files per the Debtors' requests but, despite agreeing to keep the Debtor's documents confidential pending entry of an agreed confidentiality order, have yet to receive the vast majority of documents requested from the Debtors.

To require the Insurers to now litigate issues of insurance coverage as part of plan confirmation—rather than in the Adversary Proceeding—denies the Insurers the rights to discovery and other due process to which they are entitled. The agreed scheduling order entered by the Court in the Adversary Proceeding provides for almost one year of discovery, the chance to file motions for summary judgment, disclosure of experts, and an exchange of witness lists. *See* Scheduling and Pre-Trial Order, Adv. Pro. No. 21-07005 [Dkt. 162]. That is the appropriate proceeding for insurance coverage issues to be resolved.

**B.      The Exhibits Identified on Exhibit A Relate Solely to Insurance Coverage and Should, Therefore, Be Excluded from Evidence in the Confirmation Hearing.**

Despite the irrelevance of insurance coverage to confirmation, the exhibits identified on Exhibit A include a number of insurance policies under which the Debtors ***do not*** seek coverage in the Adversary Proceeding, documents that purport to establish the existence of policies that the Insurers maintain do not exist, the Resolution Letters (described *supra* at 4) and pleadings from the Adversary Proceeding. Nothing contained in these documents makes any fact relevant to confirmation of the Plan "more or less probable." Fed. R. Evid. 401. They are thus inadmissible under Federal Rules of Evidence 402 and 403.

---

but subsequently withdrew that designation and advised the Debtors that the insurers in fact would not be presenting any expert testimony.

The Insurers assume that the Debtors have offered the Resolution Letters as evidence that they provided notice to the Insurers of the Opioid Claims and the Insurers' answers from the Adversary Proceeding as evidence that the Insurers have denied coverage.[4]  But the Plan can be confirmed (or not) regardless of whether the Debtors properly notified the Insurers of the Opioid Claims and regardless of whether the Insurers consented to the settlement or denied coverage.  Indeed, even the Ad Hoc Committee's requested insurance "finding" that the Bankruptcy Code authorizes the Debtors to settle the opioid claims regardless of the Policies' terms and conditions, [Dkt. 3465] at 65-66 (which include what is really a conclusion of law, not a finding of fact) does not require review of the Resolution Letters.  The language of the Policies, and whether the Debtors provided adequate notice of the Opioid Claims against them, do not matter to the legal argument the Ad Hoc Committee is making—an argument that, in any event, should be made in the Adversary Proceeding or in arbitration proceedings.

The Insurers have no idea why the Plaintiffs' complaint from the Adversary Proceeding is disclosed as an exhibit, but there is no question it is equally irrelevant.  Certainly, it cannot be admitted for the truth of the matters asserted therein.  The complaint consists of unsubstantiated allegations of fact and the plaintiffs' legal positions—none of which have anything to do with whether the Plan should be confirmed.

C.   **Mr. DelConte's Testimony Regarding Insurance Is Inadmissible.**

In addition to identifying insurance-related exhibits, the Debtors have submitted declarations regarding their alleged insurance coverage.  Paragraphs 16 and 35-40 of the

---

[4] There are also factual issues about at least some of the Resolution Letters that would have to be litigated, as part of the confirmation hearing, if those letters were admitted.  For example, Steadfast and AGLIC dispute that they ever received certain of the Resolution Letters addressed to them, because they were mailed to an address that Steadfast and AGLIC had long ago vacated.  Admission of the Resolution Letters would thus lead to sideshow litigation on additional issues not necessary to confirmation.

DelConte Declaration purports to describe the coverage provided by the "MDT Insurance Policies" (which are defined to include policies issued by the Insurers and at issue in the Adversary Proceeding) and, apparently, to opine that this coverage extends to the Debtors' opioid-related liabilities. This testimony, for the reasons set forth *supra* at A, is wholly irrelevant to whether the Plan should be confirmed, and therefore inadmissible under Federal Rule of Evidence 402. Moreover, the way in which this issue was introduced into the plan confirmation proceeding—after confirmation-related discovery was already complete and all parties assumed the scope of coverage would be decided after a carefully negotiated schedule in the Adversary Proceeding—means that this testimonial evidence would also be unduly prejudicial under Federal Rule of Evidence 403.

Even if coverage were properly before the Court at the confirmation hearing, paragraphs 16 and 35-40 of the DelConte Declaration would be inadmissible to establish either the terms of the Policies or their meaning. Federal Rule of Evidence 1002 requires policy terms to be established by the Policies themselves, not Mr. DelConte's one-sided (and the Insurers' maintain inaccurate) testimony. *See* Fed. R. Civ. P. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."); *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1335 (10th Cir. 1996) (FRE 1006 only permits summaries of voluminous records if "accurate"). Once those terms are established, the interpretation of their unambiguous terms presents a question of law for the Court to decide. *See e.g., Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.*, 905 F.3d 84, 88 (2d Cir. 2018) (applying Connecticut law). Mr. DelConte's opinion on whether the Insurers' policies cover the Debtors' opioid-related liabilities is an inadmissible legal conclusion that usurps the Court's authority. *See, e.g., Miller Marine Services, Inc. v. Travelers Prop. Cas. Ins. Co.*, 197

8

Fed. Appx. 62, 64 (2d Cir. 2006) (holding that expert opinion that an injury was caused by an "occurrence" within the meaning of defendant's insurance policy was an improper legal conclusion).

In any event, even were the Policies ambiguous (which they are not), Mr. DelConte would not be a proper witness on their meaning. The Debtors have disclosed Mr. DelConte as a fact witness with respect to insurance, and there is nothing to suggest that Mr. DelConte, a Managing Director at Alix Partners whose expertise relates to leading distressed companies through restructurings, has any expertise in construing insurance policies. Thus, Federal Rule of Evidence 602 limits his testimony to matters within his personal knowledge. Mr. DelConte has no relevant, personal knowledge regarding the meaning of the insurance policies at issue as he was not involved in their negotiation or procurement.

Finally, admission in evidence of paragraphs 16 and 35-40 of the DelConte Declaration would raise satellite issues that would require admission of evidence from the Insurers to dispute Mr. DelConte's testimony. As noted, Mr. DelConte testifies that each of the Insurers' policies "promise, ***without limitation*** and with varying wording, to indemnify Debtors for, or to pay on Debtors' behalf damages for bodily injury." [Dkt. 3456] ¶ 37 (emphasis supplied). However, the policies also contain exclusions limiting coverage, and conditions on coverage, that would have to be presented to counter Mr. DelConte's statement that coverage is provided "without limitation." Likewise, the Debtors 15 years ago released coverage under certain of their policies as part of a settlement (*see* Adv. Pro. No. 21-07005 [Dkt. 51] ¶ 82), which is another limitation on coverage that, in fairness, would have to be considered.

D.      **The Simmonds Declaration and Resolution Letters are Inadmissible.**

The Court should strike the Simmonds Declaration because, like Mr. DelConte's insurance testimony, it will serve no legitimate purpose at the confirmation hearing. The

9

Simmonds Declaration purports to certify the Resolution Letters as Reed Smith's business records under Federal Rules of Evidence 803(6) and 902(11). As discussed *supra* at A-B, the Resolution Letters are not relevant to Plan confirmation and thus are inadmissible under Federal Rule of Evidence 402.

Even if the Resolution Letters were relevant, however, they are not business records, and neither the Simmonds Declaration nor any other testimony can bring them with Rule 803(6)'s exception to the rule against hearsay. Rule 803(6) requires that a business record be made as "a regular practice of" of the maker's business and that the "source of information" and the "method or circumstances of preparation" indicate trustworthiness. Ms. Simmonds does not testify (and no witness could) that "making the [Resolution Letters] was a regular practice of" the Debtors' business as required by Rule 803(6)(C). These letters were prepared by the Debtors' coverage counsel (Reed Smith) and opine on the Debtors' coverage in anticipation of coverage litigation, not in the ordinary course of business. *See Timberlake Construction Co. v. U.S. Fidelity and Guaranty Co.*, 71 F.3d 335 (10th Cir. 1995) (holding that letters written by plaintiff's president and by plaintiff's attorney containing legal conclusions claiming the existence of insurance coverage were not admissible under Rule 806(3) and citing *Palmer v. Hoffman*, 318 U.S. 109 (1943)); Fed. R. Evid. 803(6) Advisory Committee Note (also citing *Palmer v. Hoffman*, 318 U.S. 109 (1943)). For the same reason, the statements in the letters are not trustworthy in the sense of a typical business record, such as an accounting ledger, and thus do not comply with Rule 803(6)(E).

Finally, Rule 902(11) requires that "[b]efore the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to

challenge them." The Debtors provided the Insurers with no advance notice of that Ms. Simmonds, a secretary for Debtors' coverage counsel, intended to certify records—and certainly no notice sufficient to give the Insurers a fair opportunity to challenge the records. Therefore, the Simmonds Declaration is not admissible to certify any records.

## CONCLUSION

For the reasons stated, the Court should exclude *in limine* all evidence related solely to insurance coverage and strike the insurance-related testimony in the DelConte and Simmonds Declarations.

Dated: August 10, 2021

/s/ *Philip D. Anker*
Philip D. Anker
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
Tel: (212) 230-8890
Fax: (212) 230-8888
philip.anker@wilmerhale.com

Joseph A. Hinkhouse (*pro hac vice*)
Colleen P. Sorensen (*pro hac vice*)
HINKHOUSE WILLIAMS
WALSH LLP
180 N. Stetson Ave., Suite 3400
Chicago, IL 60601
Tel: (312) 784-5400
Fax: (312) 784-5499
jhinkhouse@hww-law.com
csorensen@hww-law.com

Isley Markman Gostin
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6551
Fax: (202) 663-6363
isley.gostin@wilmerhale.com

*Attorneys for Navigators Specialty Insurance Company*

| | |
|---|---|
| Kelly H. Tsai<br>CROWELL & MORING LLP<br>590 Madison Avenue, 19th Floor<br>New York, New York  10022<br>Tel: 212-223-4000<br>Fax: 212-223-4134<br>ktsai@crowell.com | Mark D. Plevin (*pro hac vice*)<br>CROWELL & MORING LLP<br>Three Embarcadero Center, 26th Floor<br>San Francisco, California  94111<br>Tel: 415-986-2800<br>Fax: 415-986-2827<br>mplevin@crowell.com |

*Attorneys for American Guarantee and Liability Insurance Company and Steadfast Insurance Company*

| | |
|---|---|
| Dan D. Kohane<br>ddk@hurwitzfine.com<br>Lee Siegel<br>lss@hurwitzfine.com<br>HURWITZ & FINE, P.C.<br>1300 Liberty Building<br>Buffalo, New York 14202<br><br>David Christian (*pro hac vice pending*)<br>DAVID CHRISTIAN ATTORNEYS LLC<br>105 W. Madison St., Suite 1400<br>Chicago, IL 60602<br>862-362-8605<br>dchristian@dca.law | Adam H. Fleischer (*pro hac vice*)<br>afleischer@batescarey.com<br>R. Patrick Bedell (*pro hac vice*)<br>pbedell@batescarey.com<br>Kristi S. Nolley (*pro hac vice*)<br>knolley@batescarey.com<br>BATESCAREY LLP<br>191 N Wacker Drive, Suite 2400<br>Chicago, Illinois 60606<br>Telephone:  312-762-3100<br>Facsimile:  312-762-3200 |

*Attorneys for North American Elite Insurance Company and Aspen American Insurance Company*

| | |
|---|---|
| COZEN O'CONNOR<br>Mark E. Felger<br>Frederick E. Schmidt, Jr.<br>3 WTC, 175 Greenwich Street, 55th Floor<br>New York, NY  10007<br>Tel: (212) 883-4900<br>Fax: (646) 588-1552<br>mfelger@cozen.com<br>eschmidt@cozen.com | MINTZ, LEVIN, COHN, FERRIS,<br>GLOVSKY AND POPEO, P.C.<br>Kim V. Marrkand<br>Nicholas C. Cramb<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 542-6000<br>Fax: (617) 542-2241<br>KMarrkand@mintz.com<br>NCCramb@mintz.com |

*Attorneys for Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Insurance Corporation*

| | |
|---|---|
| Lauren Macksoud<br>DENTONS US LLP<br>1221 Avenue of the Americas<br>New York, NY 10020-1089<br>Telephone: (212) 768-6700<br>Facsimile: (212) 768-6800<br>E-Mail: lauren.macksoud@dentons.com | Kathryn Guinn (admitted pro hac vice)<br>DENTONS US LLP<br>1400 Wewatta Street, Suite 700<br>Denver, CO 80202<br>Telephone: (303) 634-4000<br>Facsimile: (303) 634-4400<br>E-Mail: Katy.guinn@dentons.com |

Patrick Maxcy (*admitted pro hac vice*)
Keith Moskowitz (*admitted pro hac vice*)
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
E-Mail: Patrick.maxcy@dentons.com
E-Mail: keith.moskowitz@dentons.com

*Attorneys For XL Insurance America, Inc.*

| | |
|---|---|
| Joseph G. Davis<br>WILLKIE FARR & GALLAGHER LLP<br>1875 K Street, N.W.<br>Washington, DC 20006-1238<br>Telephone: (202) 303 1000<br>Facsimile: (202) 303 2000<br>jdavis@willkie.com | Mitchell J. Auslander<br>James Fitzmaurice<br>WILLKIE FARR & GALLAGHER LLP<br>787 Seventh Avenue<br>New York, NY 10019-6099<br>Telephone: (212) 728-8000<br>Facsimile: (212) 728-8111<br>mauslander@willkie.com<br>jfitzmaurice@willkie.com |

*Attorneys for National Union Fire Insurance Company of Pittsburgh, Pa.*

Bryce L. Friedman
William T. Russell, Jr.
David R. Zylberberg
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
bfriedman@stblaw.com
wrussell@stblaw.com
david.zylberberg@stblaw.com

*Attorneys for Gulf Underwriters Insurance Co. and St. Paul Fire and Marine Insurance Co.*