Brian E. Frosh, Attorney General
Brian T. Edmunds, Assistant Attorney General
Sara E. Tonnesen, Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, Maryland 21202
bedmunds@oag.state.md.us
(410) 567-6578

*Counsel for the State of Maryland*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| **PURDUE PHARMA, L.P.,** *et al.*, | ) | Case No. 19-23649 (RDD) |
| | ) | |
| **Debtors.** | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**STATE OF MARYLAND'S MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY
AND STRIKE THE DECLARATION OF LAWRENCE A. HAMEMERSH [3421]**

To: The Honorable Robert D. Drain:

The State of Maryland respectfully requests that the Court enter an order *in limine*
precluding the testimony and striking the Declaration of Lawrence A. Hamermesh [3421] and his
attached Expert Report ("Hamermesh Rept.") that counsel for the Raymond Sackler Family
submitted on August 5, 2021. Professor Hamermesh's declaration is one of several ways in which
proponents of the plan have tried to slip into the record misleading and one-sided "hypothetical"
evidence related to the underlying merits of the States' police power claims against members of
the Sackler families, thereby requiring an evidentiary response.

Professor Hamermesh has long taught and published with distinction papers related to
corporate law. He is currently Executive Director of the Institute for Law and Economics at the

1

University of Pennsylvania Carey Law School.  Hamermesh Rept. ¶ 1.  In this case, however, he serves as no more than the kind of oath-helper the Federal Rules of Evidence prohibit.

## BACKGROUND

1.    Professor Hamermesh was asked to examine approximately 639 documents selected by the Raymond Sackler Family's ("RSF") counsel and to "consider" a 128-page statement of assumed facts prepared by the same counsel – more than double the length of Professor Hamermesh's main report.  *See* Deposition of Lawrence Hamermesh (July 15, 2021) (JX-0384) ("Hamermesh Dep.") at 102:9-105:16; Expert Report of Prof. Lawrence Hamermesh (Corrected Ver. July 12, 2021) (JX-0470) ("Hamermesh Rept.") ¶ 7, Ex. B (list of "materials considered"), Ex. C (Assumed Statement of Facts).  Though not a photocopy, the statement of assumed facts appears to be a shorter version of the Proposed Findings of Fact & Conclusions of Law attached to the Declaration of Gregory P. Joseph [3441] filed in this Court on August 5, 2021.  Many of the supposed "facts" track verbatim the findings that the members of the RSF appear to wish the court to make.  *Compare*, *e.g.*, Hamermesh Rept. Ex. C ¶ 293 (requiring Professor Hamermesh to assume that "[n]o evidence has been adduced that Richard Sackler participated in any decisions about what Purdue's marketing would say during the Relevant Period.") *with*, *e.g.*, Joseph Decl. (proposing that this Court find that "[n]o evidence has been adduced that, during the Relevant Period, Richard Sackler controlled or participated in decisions about what Purdue's marketing would say."); *but see, e.g.,* Purdue Quarterly Report to the Board, 2d Quarter 2012 (July 27, 2012) (JX-1790) at 3-11 (███████████████████████████████████████ ███████████████████████████████████████████████).

2.    Professor Hamermesh did not know how counsel had chosen the documents he considered and only added a few secondary sources to the list himself, *see* Hamermesh Dep. at

106:11-107:22, but the documents listed in Professor Hamermesh's Report overlap the documents in the statement of assumed facts and therefore the documents that the RSF's counsel have utilized in multiple presentations and in the Proposed Findings of Fact & Conclusions of Law attached to the August 5, 2021 Declaration of Gregory P. Joseph [3441], submitted by RSF counsel.  In other words, Professor Hamermesh was not called upon to select the documents he considered relevant or to review a random sample.

3.        Professor Hamermesh explained that he looked at the documents in "various levels of detail," Hamermesh Rept. ¶ 7, over "a spectrum ranging from close multiple readings at one end to observation of the title and subject matter and no more at the other end," Hamermesh Dep. at 110:18-111:8.  In fact, for many documents, his study did not go "beyond observing what they were about and their date and where they came from."  Hamermesh Dep. at 111:9-17.  He acknowledged also that there even was "a sliding scale of how much [he] examined [the] documents that [he] actually opened."  Hamermesh Dep. at 112:19-22 ("That's correct.").  For an unquantified number of the documents he was asked to review, he simply took counsels' characterization of the documents without examining them himself thoroughly or at all. Hamermesh Dep. at 111:22-112:5.

4.        Professor Hamermesh reluctantly admitted that as Executive Director of the Institute for Law and Economics he is responsible for "raising money."  Hamermesh Dep. at 26:18-27:19.   The Institute has received contributions of tens of thousands of dollars over time from individual firms that represent Purdue or the Sacklers in this bankruptcy and elsewhere, including Debevoise & Plimpton and Skadden Arps. Hamermesh Dep. at 29:2-30:2.   Other firms representing the Sacklers or Debtors are listed as sponsors on the Institute's website.  Although

"Joseph Hage is not a member," Professor Hamermesh quipped that he should "talk to [Mr. Joseph] about that after the deposition." Hamermesh Dep. at 29:2-29:11.

5.     Based on his incomplete review of a counsel-selected multi-hundred document fraction of a multi-million document universe, Hamermesh Dep. at 127:3-8; Hamermesh Rept. ¶ 11, Professor Hamermesh concludes that "the efforts made by the Board of Directors of PPI to establish and monitor measures taken . . . to assure compliance . . . are consistent with customary norms of corporate practice," that "the activities of the members of the Former Directors . . . did not constitute personal participation in the management of the business of PPI or PPLP," and that "[t]he members of the Raymond Sackler family, either individually or in combination, did not . . . act in a manner inconsistent with customary norms of corporate governance practices." Hamermesh Rept. ¶ 10.

6.     To supplement these abstract central conclusions, however, Professor Hamermesh also opines about a variety of issues that relate to the estate's and States' claims against the Sacklers, including their legal liability. *See, e.g.*, Hamermesh Rept. ¶¶ 11, 26, 31, 42, 43, 44, 45, 49, 50, 51, 52. These opinions purport to exculpate the Sacklers from liability for the Debtors' and States' claims. Hamermesh Rept. ¶¶ 49, 50, 51, 52. This is true despite Professor Hamermesh's repeat recognition in footnotes and elsewhere that "[d]irectors are of course not permitted to cause a corporation to seek profit by illegal means . . . . " Hamermesh Rept. ¶ 50; *see also* Hamermesh Dep. at 142:3-24.

7.     Nevertheless, reviewing some of the documents presented (which relate sometimes in detail to Debtors' complicated business in matters about which he has no expertise) and taking the assumed statement of facts drafted by counsel as gospel, Professor Hamermesh purports to exonerate the Sacklers from liability to the estate or the States. Hamermesh Rept. ¶ 52 ("[I]t is my

4

opinion that the conduct of the Former Directors during the Relevant Period did not amount to personal, direct participation in any wrongdoing by Purdue . . . .").

8.       Professor Hamermesh, however, is not an expert who is qualified to review documents that relate to the pharmaceutical industry or the operations of a prescription drug manufacturer.  Hamermesh Dep. at 39:914; 60:11-16.

9.       Nor is Professor Hamermesh qualified to render opinions on state or federal legal questions related to the Food, Drug & Cosmetic Act, Controlled Substances Act, the Federal Trade Commission Act, State tort law (other than State tort law claims of breach of fiduciary duty by a corporate director or officer), or State consumer protection, unfair and deceptive trade practices law, or public nuisance law.  Hamermesh Dep. at 39:16-40:15; 60:2-10.

10.      Professor Hamermesh also is not in the business of designing or implementing compliance plans or marketing materials for pharmaceutical manufacturers, or in advising pharmaceutical manufacturers with respect to controlled substances.  Hamermesh Dep. at 55:7-24; 57:11-19; 59:3-11; 59:12-25; 60:11-16; 61:10-14; 64:10-25.

11.      He has no expertise in medicine, addiction, or pharmaceutical products. Hamermesh Dep. at 59:12-25.

12.      He has no expertise in investigations and does not appear to have ever conducted any internal corporate compliance investigation.  Hamermesh Dep. at 61:15- 63:25.

13.      Finally, in rendering these opinions, Professor Hamermesh disclaimed that "[a]lthough I have had access to a database that I understand contains all documents produced by or to the Raymond Sackler family in these proceedings, I do not claim to be familiar with the entire universe of information disclosed, which I understand to be in excess of 100 million pages. I am not aware of facts that in my view would render the facts and assumptions on which this report is

based materially inaccurate or incomplete." Hamermesh Rept. ¶ 11. "I respectfully reserve the right to supplement or modify this opinion if and as I am presented with additional factual information." Hamermesh Rept. ¶ 7.

## ARGUMENT

14.    Professor Hamermesh's opinions should be excluded for multiple reasons, each of which, standing alone, is sufficient. Viewed together, these reasons are overwhelming.

15.    *First*, RSF counsel and Professor Hamermesh have made clear that Professor Hamermesh's opinions do not relate to the facts of this case, only a tiny fraction of which counsel selected for Professor Hamermesh to review and only a smaller fraction of which he then did review, but rather to a "hypothetical" case that – by definition – does not exist. Accordingly, Professor Hamermesh's opinions are inadmissible because they are simply not relevant to the case before the Court. *See* Fed. R. Evid. 401, 402. Federal courts do not sit to consider hypotheticals; they deal with the cases and controversies that are brought before them. Indeed, courts have long held that enabling parties to assemble hypothetical composites from fragments of evidence, in the way Professor Hamermesh has done with the assistance of the RSF counsel, raises serious constitutional concerns and threatens the integrity of judicial fact-finding. *See, e.g., Broussard v. Meineke Discount Mufflers*, 155 F.3d 1151 (4th Cir. 1998) (reversing district court order that permitted plaintiffs to assemble selected evidence together in a hypothetical composite that bore no relation to actual facts).

16.    Beyond this obvious failing, the relevance of Professor Hamermesh's opinions becomes even more dicey in light of the complication introduced by Mr. Joseph's declaration. The assertion that Professor Hamermesh's opinions relate *only* to some hypothetical future litigation

begs the question of whether his testimony "is of consequence in determining [this one]." Fed. R.

Evid. 401(b).

17.      *Second*, Professor Hamermesh is not qualified to render the opinions he renders

in this case.   Professor Hamermesh opines that the compliance reports demonstrate that the

Sacklers did not act inconsistently with generally accepted corporate governance principles.  But

Professor Hamermesh lacks the expertise to assess what any of those reports mean.

Pharmaceutical compliance reports and other evidence of activities heavily involve an

understanding of complex scientific issues that require years of study, to say nothing of the internal

complexities of pharmaceutical manufacturers, the Food, Drug & Cosmetic Act, State regulation

of healthcare, and the closed system of distribution of the federal Controlled Substances Act and

state statutes.  Professor Hamermesh is not qualified to conduct the cold (and cursory) review that

he conducted and draw conclusions about how the Sacklers acted or failed to act.  Lacking such

expertise, he  simply  is  not  qualified  to  render  the  factual  opinions  he  derived  from  the

methodologies that he used, let alone apply them under the laws of fifty states in areas in which he

is completely unfamiliar.  His opinions cannot be admitted under Fed. R. Evid. 702.

18.      *Third*, Professor Hamermesh's opinions are not reliable under *Daubert v. Merrell

Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Professor Hamermesh's opinion, based on a

partial and cursory review of fewer than 639 documents provided to him and the statement of

assumed facts, is not a reliable way to draw conclusions about millions of documents, let alone the

undocumented conversations that can only be gleaned from interviews Professor Hamermesh

failed to take.    Hamermesh Rept. ¶ 11 ("I do not claim to be familiar with the entire universe of

information disclosed . . . I am not aware of facts that in my view would render the facts and

assumptions on which this report is based materially inaccurate or incomplete); Hamermesh Dep.

at 143:5-6 (noting he "did not intend to give an opinion about legal liability"). Professor

Hamermesh's opinions might very well change if he relaxed assumptions about pre-2007 conduct

(Hamermesh Rept. ¶ 12), or if he were shown additional documents or given additional

information. These statements alone render his opinions completely unreliable under *Daubert.*

*Daubert* 509 U.S. at 597 (noting under Fed. R. Evid. 702 an expert's testimony must both "rest[]

on a reliable foundation" and be "relevant to the task at hand"); *Wills v. Amerada Hess Corp.*, 379

F.3d 32, 48 (2d Cir. 2004) (Sotomayor, J.)("In gauging reliability the district court should consider

the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on

sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and

(3) that the witness has applied the principles and methods reliably to the facts of the case");

*Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("[W]hen an

expert opinion is based on data, a methodology, or studies that are simply inadequate to support

the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion

testimony").

19.   Additionally, although retained by their counsel to provide opinions regarding

them, Professor Hamermesh did not interview any member of the Sackler family or any other

person to ask them questions about their conduct. Every lawyer and investigator knows that

documentary evidence is not complete evidence. Professor Hamermesh's failure to interview the

Sacklers directly regarding their conduct, despite the fact that he had easy access to at least some

of them, renders any opinions he provides inherently suspect.

20.   *Fourth,* in part because they are irrelevant, Professor Hamermesh's opinions simply

cannot assist this Court as the trier of fact. *See* Fed. R. Evid. 704. Professor Hamermesh's

hypothetical case based on the Sackler lawyer-drafted assumed statement of facts is not about the

facts in this case but is an oath-helper opinion for a selective dreamworld created by the B Side Family's counsel that omits key documents and misinterprets others without any regard to corporate law.

21.     Professor Hamermesh's conclusions miss this point, however, because he did not examine any of the law applicable to the states' claims. This failure renders his opinions unreliable and unhelpful under *Daubert*.

22.     Moreover, Professor Hamermesh's opinions on corporate director principles have nothing to do with the law applicable to estate claims.  For example, under Maryland law, Professor Hamermesh's factual assessment gives rise to legal liability.  The fact that the Sackler Family directors reviewed compliance reports and designed a compliance program under which Purdue pleaded guilty to federal charges in both 2007 and 2020 and was almost constantly under investigation for wrongdoing *establishes* liability.  Maryland, like other states, has adopted the *Amy Travel* standard for corporate liability.  Under that standard, corporate officers and directors may be held liable for unfair and deceptive trade practices, even without direct participation, if they had (1) "authority to control" the corporation's conduct and (2) actual or constructive knowledge of the practices. *Consumer Protection Div. v. Morgan*, 874 A.2d 919, 949 (Md. 2005). Professor Hamermesh supplies, at a bare minimum, evidence sufficient to demonstrate "authority to control," and there is ample reason to believe, even without the hundreds of Sackler emails that lead to this inescapable conclusion (and also show that they in fact directly participated in the illegal conduct), that between the bookends of Purdue's 2007 and 2020 pleas to federal criminal charges, the Sacklers who served as its directors were pervasively aware of its illegal activities.

23.     *Finally,* Professor Hamermesh's opinions are nothing more than an opinion on the legal issue of RSF liability – even though Professor Hamermesh attempted to disclaim this.

Professor Hamermesh stated that he "did not intend to give an opinion about legal liability" (Hamermesh Dep. 143:5-11), but his report repeatedly references RSF "liability" for Purdue's conduct.  *See* Hamermesh Rept. ¶ 10 (noting in his "Summary of Opinions" what was relevant to his ultimate "assessment of liability"); Hamermesh Dep. at 127:13-25 (agreeing ¶ 10 contained all his report's opinions).  Additionally, he describes the three types of claims against the RSF that his opinion addresses as:  1) "Claims that the Former Directors should be personally liable for harm allegedly caused by Purdue's allegedly improper marketing"; 2) "Claims that by direct participation in management of PPI (and, indirectly, PPLP), the Former Directors are personally liable for harm allegedly caused by Purdue's allegedly improper marketing of opioids"; and 3) "Claims that individual members of the Raymond Sackler family who served on PPI's board . . . should be personally liable for harm allegedly caused by Purdue's allegedly improper marketing . . . ."  Hamermesh Rept. ¶ 13.

24.    At the end of the day, without any intended denigration of Professor Hamermesh's achievements and qualifications in the many contributions he has made to the legal community and to particular students for decades, Professor Hamermesh is an oath-helper here.  He reviewed some of the documents provided to him by counsel to varying degrees and in other cases took their characterizations wholesale.  But he engaged in no further investigation and simply provided an opinion based on these selected documents and 128 pages of opinions by counsel upon which he was required to rely without questioning.  He was merely an oath-helper and his testimony here is wholly inadmissible. *See U.S. v. Scop*, 846 F.2d 135, 139-40 (2d Cir. 1988) (citing Fed. R. Evid. 704 Advisory Comm. Notes) ("[R]ule 704 was not intended to allow experts to offer opinions embodying legal conclusions"); *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 268 (D. Conn. 2017) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)) ("[T]his Circuit is in accord with other

circuits in requiring exclusion of expert testimony that expresses a legal conclusion. While Rule 704 has abolished the common law ultimate issue rule, however, it has not lowered the bar so as to admit all opinions.") (internal citations and quotations omitted); *accord* Fed. R. Evid. 704 Advisory Comm. Notes ("Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.  These provisions afford ample assurances against the admissions of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day").

25.    WHEREFORE, Professor Hamermesh's testimony should be precluded and his declaration stricken from the evidence in presented for the confirmation hearing.

Dated: August 11, 2021                     Respectfully submitted,

                                           BRIAN E. FROSH
                                           Attorney General of Maryland


                                           /s/ Brian T. Edmunds
                                           BRIAN T. EDMUNDS
                                           SARA E. TONNESEN
                                           Assistant Attorneys General
                                           Office of the Attorney General of Maryland
                                           200 Saint Paul Place
                                           Baltimore, Maryland 21202
                                           bedmunds@oag.state.md.us
                                           (410) 576-6578
                                           *Attorneys for the State of Maryland*

# EXHIBIT A

Brian E. Frosh, Attorney General
Brian T. Edmunds, Assistant Attorney General
Sara E. Tonnesen, Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, Maryland 21202
bedmunds@oag.state.md.us
(410) 567-6578

*Counsel for the State of Maryland*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 11 |
| | ) | |
| | ) | |
| **PURDUE PHARMA, L.P.,** *et al.*, | ) | Case No. 19-23649 (RDD) |
| | ) | |
| | ) | |
| **Debtors.** | ) | (Jointly Administered) |

**[PROPOSED] ORDER GRANTING STATE OF MARYLAND'S MOTION IN LIMINE TO PRECLUDE TESTIMONY AND STRIKE THE DECLARATION OF LAWRENCE HAMERMESH**

Upon the Motion in Limine of the State of Maryland to Preclude Testimony and Strike the Declaration of Lawrence Hamermesh (the "Motion") and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2019; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and no other or further notice of the Motion being required; and, after due deliberation, the Court having determined that the legal and factual bases set forth in the Motion establish good and sufficient cause for the relief granted herein, in that this Court having determined that the legal

1

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court and after due deliberation and sufficient cause

appearing therefor, deliberation and sufficient cause appearing therefor,

     **IT IS HEREBY ORDERED THAT:**

The Motion is Granted as set forth therein.

Dated: White Plains, New York
_____ \_\_, \_\_\_\_\_

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE