TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Tel.:    (317) 713-3500
Fax:    (317) 713-3699
Michael P. O'Neil
*Admitted Pro Hac Vice*
*Counsel for Ad Hoc Group of Hospitals*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

**AMENDED DECLARATION OF GAYLE A. GALAN, MD, FACP**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Pursuant to 28 U.S.C. § 1746, I, Gayle A. Galan, MD, FACP hereby declare as follows under penalty of perjury:

1.      On July 13, 2021, I submitted an Expert Report, which report I understand has been designated as JX-2603.

2.      Nothing that I have learned since the submission of my report has changed any of my opinions expressed therein.  However, I now understand that since the time of the report's filing, Dr. Masiowski: has narrowed his objections; did not identify any witnesses or exhibits for the confirmation hearing; and asked counsel for the Ad Hoc Group of Hospitals if  my report could be redacted to remove direct references to him and his expert report dated June 22, 2021. Relying on the representations of Dr. Masiowski and his counsel, I am amenable to such redactions, as they do not affect the remaining opinions and observations set forth in my original report.

3.      I respectfully submit this Amended Declaration and my attached redacted report as my direct testimony on behalf of the Ad Hoc Group of Hospitals.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 16, 2021

By:      */s/ Gayle A. Galan*
         Gayle A. Galan

70791807v1

**THE OPINIONS OF GAYLE A. GALAN, M.D. FACEP,** ███████████████

Gayle Galan, M.D. FACEP
101 Clare Kennedy Drive
Marietta, Ohio 45750

July 13, 2021

**FOREWORD**

This document includes my opinions ███████████████████████████ ████████████ concerning the Hospital Trust Distribution Procedures. These opinions are based on my experience, education, and training, documents in the case. Documents and information considered in forming these opinions are listed in the body of this report. My opinions are offered to a reasonable degree of medical certainty.

These opinions are based on information known to me at this time. I may supplement or revise my opinions as discovery continues and other or additional information becomes available to me in the future. If caused to testify, my testimony under oath would be consistent with the opinions contained herein.

**BACKGROUND & QUALIFICATIONS**

I am currently an Associate Director of Emergency and Urgent Care Medicine for the Marietta Memorial Hospital System, Core Faculty, Emergency Medicine Residency, for the Marietta Memorial Hospital System, and College Physician, Hiram College, and a Consultant for Medical Mutual of Ohio. I have served as Chairman and/or Medical Director for several Emergency Departments in Ohio and, more specifically, in communities devastated by the opioid crisis. I previously served as Chairperson of the Mass Casualty Incident Committee for Disaster Planning in Cuyahoga County, Ohio. I presently serve on the Cuyahoga County Emergency Management Executive Board, the Disaster Planning Committee for the Cleveland Hopkins Airport, the Cleveland EMS Educational Committee, the Case Western Reserve University Emergency Medicine Advisory Committee and the NEOSEM Advisory Committee. In my clinical practice of emergency medicine, I serve a patient population that is substantially affected by the opioid crisis. I base my opinions and testimony on my education, training, and experience, including my clinical engagement with patients within the epicenter of the opioid crisis. In forming, my opinions, I have reviewed Dr. Masiowski's opinions, and the various pleadings filed by Dr. Masiowksi, the Hospitals, and the Debtors.

My curriculum vitae is attached, hereto, as <u>Exhibit A</u>.

**PRIOR TESTIMONY**

My testimony for the last four years is attached as <u>Exhibit B</u>.

**MATERIALS REVIEWED**

CDC/NCHS National Vital Statistics System. (2017). Drug Overdose Death Data. Retrieved from
https://www.cdc.gov/drugoverdose/data/statedeaths.html

Department of Health and Human Resources Office of Communications. (2017). DHHR Announces Funding for Harm Reduction Programs. Charleston. Retrieved from
http://dhhr.wv.gov/oeps/harm-reduction/documents/Harm-Reduction-Funding.pdf

Joudrey, Paul J., Nicholas Chadi, Payel Roy, Kenneth L. Morford, Paxton Bach, Simeon Kimmel, Emily A. Wang, Susan L. Calcaterra, *Pharmacy-based methadone dispensing and drive time to methadone treatment in five states within the United States: A cross-sectional study*, Drug and Alcohol Dependence, 10.1016/j.drugalcdep.2020.107968, (107968), (2020).

O'Donnell, J. K., Halpin, J., Mattson, C. L., Goldberger, B. A., & Gladden, R Matthew. (2017). Morbidity and Mortality Weekly Report Deaths Involving Fentanyl, Fentanyl Analogs, and U-47700 —10 States, July–December 2016, 3(43). Retrieved from https://www.cdc.gov/mmwr/volumes/66/wr/pdfs/mm6643e1-H.pdf

Substance Abuse and Mental Health Services Administration. (n.d.). Medication Assisted Treatment (MAT). Retrieved from https://www.integration.samhsa.gov/clinicalpractice/mat/mat-overview

The Henry J Kaiser Family Foundation. (2015). Community Health Center Delivery Sites and Patient Visits. Retrieved January 1, 2017, from https://www.kff.org/statecategory/providers-service-use/community-health-centers/.

United States Department of Health & Human Services. (2016). *FACING ADDICTION IN AMERICA: The Surgeon General's Report on Alcohol, Drugs, and Health*. Retrieved from https://addiction.surgeongeneral.gov/sites/default/files/surgeon-generals-report.pdf.

████████████████████
███

████████████████████████

████████████████████████

Hospital Trust dated 6/30/2021;

Hospital Trust Distribution Procedures date 6/30/2021;

Hospitals Class Complaint.

## SCOPE OF ENGAGEMENT

Attorneys for the Ad Hoc Group of Hospitals and their co-counsel asked me to review and analyze the Hospital Trust Distribution Procedures ███████████████████████

████████████████████████

███████

My opinions expressed in this report are held to a reasonable professional and medical certainty based on the facts and circumstances of this action.  I reserve the right to render additional opinions and to supplement or amend the opinions and bases given in this report based on new or additional

information that is provided to me between the date of this report and the date that I may testify at the hearing, including but not limited to expert reports, case documents, test results, additional complaint data, deposition transcripts and related exhibits.

Fees for services performed by me have been charged at my hourly rate of $500.00/hr. Fees for deposition will be $3500; minimum 4 hours, trial appearance will be $6000 for a half day. Out-of-pocket expenses would be invoiced at cost.

## OPINIONS AND BASES

I have formed the following opinions based on my education, experience, training, research, patient encounters and review of documents in this case. These opinions are held to a reasonable degree of professional and medical certainty.

The emergency department (ED) and emergency room physician are critical points of contact for opioid use disorder ("OUD") patients. Often people who struggle with OUD do not have a primary care physician, lack medical insurance, or feel ashamed to see a doctor about their addiction. When an OUD patient presents to the ED, emergency physicians have an opportunity to provide evidence-based interventions and improve the care of patients with untreated opioid use disorder. In the ED, physicians can identify patients with OUD, provide treatment and education for overdose, and direct patients to further opioid agonist therapy and preventive services. With strategies in place, lives can be saved.

Emergency room physicians who treat patients, including OUD patients, generate patient claims data, irrespective of their employment characterization. Several of the Hospital Trust requirements and/or abatement uses are already mandated in some communities (e.g., use of Automated Prescription Reporting Systems to track the dispensing of controlled prescription drugs) to monitor for suspected abuse or diversion. None of the Hospital Trust requirements are burdensome. The patient's electronic medical record is an important tool in diagnosing and treating OUD. An emergency room physician can fulfill the requirements of the Hospital Trust Distribution Procedures. As an Emergency physician I have had instances in which I have engaged in the same activities enumerated in the Hospital Trust Distribution Procedures. There are patient treatment modalities available that can be initiated by the emergency room physician who is not trained (by either waiver or certification) in Medically-Assisted Treatment ("MAT").

## OPINION 1:

Emergency physicians' encounters with patients, including OUD patients, are subject to the standard of care applicable to the practice of emergency medicine. The standard of care is the same irrespective of employment contracts or whether an emergency room physician is not hospital employed or deemed to be self-employed, or independent. The American College of Emergency Physicians recently announced consensus recommendations, including strategies for OUD treatment and emergency department program implementation. These recommendations were approved by the ACEP board of directors in January 2021. [Ann Emerg Med. 2021;-:1-9.]. Based on literature review, clinical experience, and expert consensus, the group recommends that emergency physicians offer to initiate OUD treatment with buprenorphine in appropriate patients,

and to provide direct linkage to ongoing treatment for patients with untreated OUD. The ACEP recommendations do not distinguish between hospital-employed emergency physicians and independently contracted emergency physicians. The practice recommendations apply irrespective of whether they are administered by a hospital-employed physician or one that is independently contracted.

**OPINION 2:**

Successful abatement efforts often incorporate coordination with other providers. For example, Project ASSERT (Alcohol & Substance Abuse Services, Education, & Referral to Treatment) is one such program at the Yale-New Haven Hospital (YNHH) Emergency Department that helps patients access drug treatment services. The intervention starts with the emergency physician, but the project's success is a reflection of strong working relationships amongst clinicians, community organizations & specialized treatment centers. Project ASSERT frequently presents at national substance abuse conferences and was the subject of a 2010 article in the Academic Emergency Medicine Journal. (D'Onofrio, Gail MD, MS, Degutis Linda C. DrPH, MSN, *Integrating Project ASSERT: A Screening, Intervention, and Referral to Treatment Program for Unhealthy Alcohol and Drug Use Into an Urban Emergency Department.* Academic Emergency Medicine (August 2010). Volume 17, Issue 8, pp. 903-911).

In addition to providing funding for abatement programming that may be new to a treatment provider, the Trust offers a range of authorized abatement activities that are already underway in many clinical settings, including emergency departments. Abatement strategies are not static, Emergency physicians, including those who independently contract to run an emergency room, can implement such programming. Emergency physicians routinely implement harm reduction discussions through their interactions with patients, such as inquiring about how to prevent a respiratory infection or reduce their risk of stroke. In other encounters, harm reduction originates when the physician asks about helmet use or tobacco. The implementation of some of the OUD harm reduction strategies authorized by the Trust is not all that different. Programming to combat the opioid crisis requires the engagement of colleagues and community stakeholders to

5

develop protocols and communication which, in turn, improves the continuity of care for patients with OUD. As with all chronic diseases, emergency departments and emergency physicians are dependent on other disciplines and local resources.



In the community where I practice, in Marietta, Ohio, a community health needs assessment identified the community's top health concerns as (1) Substance abuse (53%); (2) Unhealthy lifestyle (41%); and (3) Chronic disease (41%). In response, and in coordination with other clinicians and resources, emergency room physicians in my community implement strategies that identify patients with OUD with use of a screening process; we manage OUD by implementing evidence-based practices in emergency medicine; and then we transition or link patients to long-term care and supportive services.

The Trust's authorized abatement activities are both appropriate and feasible                The activities reflect abatement strategies that I encounter in my own practice of emergency medicine. Further, the authorized abatement activities are consistent with similar evidence-based programming funded by the National Institutes of Health (access the NIH Office of Extramural Research for a listing of all funded OUD programming at https://nexus.od.nih.gov/all/) and National Institute on Drug Abuse. Notably, the Trust allows for the Trustee to consider new innovative strategies that may emerge over the five-year duration of the Trust.

**OPINION 3**:



The Trust's enforceability mechanism is fulfilled by the Trustee, the auditing function and the annually published report of the funding allocated for the designated abatement efforts. Typical of abatement programming, the Trust provides that the recipients will submit annually to the Trustee a report concerning the use of the funding. These measures support enforceability and accountability. Non-compliance, as set forth in the Trust Distribution Procedures, results in the return of any allocated money with a penalty. Moreover, accountability is further reinforced where our profession adheres to professional and ethical guidance, and an oath to do no harm, combined with a standard of care. In addition to the Trust's monetary penalties, the medical profession can impose consequences on those who deviate from the clinical and ethical standards.

As to specificity, the Trust balances accepted evidence-based abatement strategies, while at the same time, allowing for the clinician to exercise medical judgment based on the patient, the patient's clinical history and other potentially influential factors including patient preferences and priorities.

**OPINION 4:**

The Trust's use of patient claims data is a reliable method of assessing OUD impact in a community, emphasizing the power of data and the use of data to implement need-based solutions, including funding. Integrating decision support into the electronic health record is highly effective for streamlining the process of MAT in the ED or making referrals for ongoing treatment.

**OPINION 5:**



The Plan definitions make clear to claimants that the abatement activities are implemented in a community's health system, ▮▮▮▮▮▮▮▮▮▮▮ The terms are consistent with language and descriptors commonly used in OUD treatment and abatement programming.

**OPINION 6:**

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully,

Gayle A. Galan, M.D., FACEP

# Exhibit A

# CURRICULUM VITAE

## Gayle A. Galan, M.D. FACEP
**101 Clare Kennedy Drive**
**Marietta, Ohio 45750**
**Telephone: 330-819-0189**
**Email: galanmd@gmail.com**

**PRESENT EMPLOYMENT**

     Associate Director Emergency and Urgent Care Medicine Marietta Memorial
          Hospital System
     Core Faculty Emergency Medicine Residency Marietta Memorial
          Hospital System
     College Physician Hiram College
     Consultant for Medical Mutual of Ohio

**PAST EMPLOYMENT**

     Chairman, Emergency Medicine and Emergency Medical Education
          Selby General Hospital
     Chairman, Emergency Medicine.  Marietta Memorial Hospital
          2009-2012
     Chairman, Emergency Medical Education.  Southwest General Hospital
          2005-2009
     Chairman, Emergency Medicine
      St. Vincent Charity Hospital System Jan 1997-2005
     Medical Director Psychiatric Emergency Department
      St. Vincent Charity Hospital System Jan 1997-2005
     Chairman, Emergency Medicine
      University Hospitals of Cleveland, (1994-1997)
     Director, Emergency Department
      St. Joseph Riverside Hospital, Warren, Ohio (1991-1994)
     Director-Cleveland, Occupational Medicine
      British Petroleum of America, Inc. (1991-1994)
     Director, Emergency Department
      Wooster Community Hospital (1989-1991)
     Assistant Director-Cleveland, Occupational Medicine
      British Petroleum of America, Inc. (1987-1989)
     Associate Director, Emergency Medicine
      St. Vincent Charity Hospital, Cleveland, Ohio (1983-1989)
     Emergency Staff Physician
      Barberton Citizens Hospital, Barberton, Ohio (1982-1983)
     Associate Director, Family Medicine
      St. Thomas Hospital, Akron, Ohio (1981-1982)

C.V. - Dr. Gayle Galan

**FACULTY POSITIONS**
    Associate Clinical Professor, Emergency Medicine
      Ohio University School of Medicine
    Assistant Clinical Professor, Emergency Medicine Emeritus
      Department of Medicine, Case Western Reserve University
    Assistant Professor, Family Medicine
      Northeastern Ohio College of Medicine
    Clinical Preceptor Marietta College Physician Assistant Program
    Clinical Preceptor Washington State Community College Nursing Program

**MEDICAL EDUCATION:**
    Case Western Reserve University School of Medicine
        Cleveland, Ohio
    Year of Graduation - 1978
    No class rank established
    Degree: M.D.
    Honor Society: Alpha Omega Alpha
    Honors: Honors work in Pediatrics, Psychiatry, and
        Obstetrics and Gynecology
    Two outside Scholarship Awards

**UNDERGRADUATE EDUCATION:**
    Case Western Reserve University, Cleveland, Ohio
    Year Graduated - 1974
    GPA 4.0/4.0, Class Rank - 1
    Degree: B.A. Chemistry, summa cum laude
        Minor in Sociology
    Undergraduate Research:
      2 years in Neuromuscular Physiology & Immunology
    Honor Societies: Phi Beta Kappa, Iota Sigma Pi, (Chemistry Honor Society)
    Honors: John Schoff Mills Award for Scholastic Excellence
    Five Outside Scholastic Awards

**SECONDARY EDUCATION:**
    James Ford Rhodes High School, Cleveland, Ohio
    Year of Graduation: 1970
    Class Rank -3

**RESIDENCY**
    Three Year Residency (1978-1981)
      Akron City Hospital, in Family Medicine
    Postgraduate Fellowship in Trauma
      Maryland Institute of Emergency Medical Systems, 1982
    Mini Residency in Occupational Medicine University of Cincinnati
      1989

C.V. - Dr. Gayle Galan

**BOARD STATUS**
>   Board Certified in Family Medicine, 1981, Recertified 1995, 2002, 2009, 2020
>   Board Certified in Emergency Medicine, 1987, Recertified 1997, 2007, 2016

**EMERGENCY MEDICINE CERTIFICATIONS**
>   BCLS-Basic Cardiac Life Support
>   ACLS-Advanced Cardiac Life Support, Instructor
>   ATLS-Advanced Trauma Life Support, Instructor
>   PALS-Pediatric Advanced Life Support, Instructor
>   AHLS-Advanced Hazmat Life Support Instructor

**PREHOSPITAL CARE AFFILIATIONS (EMS):**
>   Present:
>>   Cleveland Emergency Medical Services (EMS)
>>>   Advisory Board (1983-1987, 1994-present)
>>>   Education Committee, Past Chairman (1995- present consultant)
>>   Faculty, Paramedic Training, Cleveland EMS (1983-1987, 1995- present)
>>   Medical Control Advisor, Cleveland EMS (1983-1987, 1995- present consultant)
>   Past:   Director, Wayne County EMS System (1989-1991)
>>   Medical Director, Auburn Fire Dept, Reminderville Fire Dept, Aurora Fire Dept, Streetsboro Fire Dept., Hiram Fire Dept (1998-2005)

**MEDICAL SOCIETY MEMBERSHIPS:**
>   Fellow, American Academy of Family Medicine
>   American Medical Association
>   Cleveland Academy of Medicine
>   Ohio College of Emergency Physicians
>   Fellow, American College of Emergency Physicians
>   American College of Sports Medicine
>   American Occupational Medical Association

**PUBLICATIONS**
>   "Observations on the effects of Aerosolized Albuterol in Acute Asthma"
>   Am J. Respir Crit Care Med, vol 155.  pp 454-458, 1997
>   Strauss, Hejal, Galan, Dixon, McFadden Jr.
>
>   "The Influence of Parasympatholytics on the Resolution of Acute Attacks of Asthma". The American Journal of Medicine, vol 102. pp 7-13, Jan 1997
>   McFadden Jr., Elsinadi, Strauss, Galan
>
>   "Comparison of Two Dosage Regimens of Albuterol in Acute Asthma"
>   The American Journal of Medicine, vol 105. pp12-17, July 1998
>   McFadden Jr., Strauss, Hejal, Galan

C.V. - Dr. Gayle Galan

**PUBLICATIONS:** *(continued)*

"Impact of Race on the Severity of Acute Episodes of Asthma and Adrenergic Responsiveness". Am J Respiratory and Critical Care Medicine, vol 174. pp 508-513, (2006)

**COMMITTEES:**
Past:
Chairperson, Mass Casualty Incident Committee
Disaster Planning, Cuyahoga County
NEOUCOM Committee on Family and Human Sexuality
Clinical Consultation Team
Protective Services Consortium for Older Adults of
Cuyahoga County
Present:
Cuyahoga County Emergency Management Executive Board
Disaster Planning Committee, Cleveland Hopkins Airport
Cleveland EMS Educational Committtee
CWRU Emergency Medicine Advisory Committee
NEOSEM Advisory Committee

**RESEARCH:**
Co-Principle Investigator of Crusade Acute Coronary Syndrome Study
St. Vincent Charity Hospital (2002-2003)

**HONORS:**
Medical Director of the Year 2002-Emergency Professional Services

C.V. - Dr. Gayle Galan

# Exhibit B

## GAYLE A GALAN, MD – CASE LIST

| D/P | DATE | ATTORNEY | CASE | STATE |
|-----|------|----------|------|-------|
| D | 2016 | April Hitzelberger | Harris v BWMC | MD |
| D | 2016 | Stephen Oertle | Puentes v Las Cruces | NM |
| P | 2016 | Roxanne Conlin | Mykel Crawford | IO |
| P | 2017 | Daniel Grna | Yaeger v St Lukes | OH |
| D | 2017 | Gabaldon | Fitzpatrick v Ash | NM |
| P | 2017 | Cacciatore | Guerra v Rockford | IO |
| D | 2018 | Hupp | Weimer v Humilty of Mary | OH |
| P | 2018 | Werner | Vargas v Genetta | WVA |

GAYLE A GALAN, MD – CASE LIST

| | | | | |
|---|---|---|---|---|
| D | 2018 | Woulfe | Hernandez v Universal Health Services | FL |
| P | 2018 | Leoni | Rock v Chritiana Care Health Services Inc | Del |
| D | 2018 | Hupp | Casares v Mercy St Vincent and James Lewis DO et al | OH |
| P | 2018 | Koch | Kirby v Charles Emergency Physicians | MD |
| D | 2018 | Milligan | Ross v Aultman Hospital | OH |
| P | 2018 | Diaz | Faust v Guthrie County Hospital | IO |
| D | 2019 | Hupp | Casares v Mercy St Vincent and James Lewis DO et al Trial | OH |
| P | 2019 | Thurswell | Wells v St John | MI |
| P | 2019 | Edwards | Maurita Spangler(Estate Craig Spangler) v Jackson Purchase Medical Center et al | KY |

GAYLE A GALAN, MD – CASE LIST

| D | 2019 | Throckmartin | Ali Amlefleh v St Elizabeth Hospital | Illinois |
|---|------|--------------|--------------------------------------|----------|
| P | 2019 | Norman | Shayla Ross v Johns Hopkins Hospital | MD |
| P | 2019 | Bedigian | Zayes v Dimensions Health et al | MD |
| D | 2020 | Adkinson | Cosgrove v St E Urgent Care et. al | OH |
| P | 2020 | Haddad | Sowers v Catawba Valley Medical Group et al | NC |
| P | 2020 | Protil | Watson v Sidhu MD. et al | MD |

Exhibit C

# Gayle Galan, M.D., FACEP

**Associate Clinical Professor  Emergency Medicine**
**Ohio University School of Medicine**
**1742 Rock Hill Lane**
**Akron, Ohio 44313**
**Tele: 330-819-0189**
**galanmd@gmail.com**

Jan 2, 2021

## <u>Fee Schedule</u>

| | |
|---|---|
| **Retainer Fee** | **$2,500** *(Hourly applied to retainer)* |
| **Hourly Fee** | **$500** |
| **Deposition Testimony** | **$3500*** <br> **$875/hr. (minimum 4 hrs.)** <br> ***Minimum Payment is required 5 business days prior to deposition** |
| **Trial Testimony** | **$6000/half day** |

**Cancellation Policy:** Depositions cancelled 5 or less business days in advance of the deposition will be charged with the fee of $3,500