

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8

9           Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    August 9, 2021

17                    10:05 AM

18

19

20

21    B E F O R E :

22    HON ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  ART

Page 2

1    HEARING re Notice of Agenda / Amended Agenda for August 9,

2    2021 Hearing and Pre-Trial Conference

3

4    HEARING re Stipulation and Agreed Order by and Among the

5    Debtors and the Canadian Governmental Claimants Pursuant to

6    Section 105 of the Bankruptcy Code and Bankruptcy Rules 3006

7    and 9019 Filed by Eli J. Vonnegut on behalf of Purdue Pharma

8    L.P. (ECF #3332)

9

10   HEARING re Objection to Stipulation (related document(s)

11   3333, 3332) filed by Allen J. Underwood on behalf of Certain

12   Canadian Municipality Creditors and Canadian First Nation

13   Creditors. (ECF #3474)

14

15   HEARING re Debtors' Reply to Limited Objection of Certain

16   Canadian Municipality Creditors and Canadian First Nation

17   Creditors to Debtors' Ex Parte Motion on Shortened Notice

18   with Respect to the Stipulation and Agreed Order by and

19   among the Debtors and the Canadian Governmental Claimants

20   Pursuant to Section 105 of the Bankruptcy Code and

21   Bankruptcy Rules 3006 and 9019 (related document(s)3332,

22   3474) filed by Eli J. Vonnegut on behalf of Purdue Pharma

23   L.P. (ECF #3492)

24

25

Page 3

1    HEARING re Motion to Shorten Time / Debtors Ex Parte Motion

2    for Entry of an Order Shortening Notice with Respect to

3    Stipulation and Agreed Order by and Among the Debtors and

4    the Canadian Governmental Claimants Pursuant to Section 105

5    of the Bankruptcy Code and Bankruptcy Rules 3006 and 9019

6    filed by Eli J. Vonnegut on behalf of Purdue Pharma L.P.

7    (related to document #3332) (ECF #3333)

8

9    HEARING re Establishing Confirmation Schedule and Protocols

10   and Final Pretrial Conference to be held at Videoconference

11   (ZoomGov) (RDD) (related document(s)2536, 2989, 2858) (ECF

12   #3347)

13

14   HEARING re Amended Plan / Sixth Amended Joint Chapter 11

15   Plan of Reorganization of Purdue Pharma L.P. and its

16   Affiliated Debtors filed by Eli J. Vonnegut on behalf of

17   Purdue Pharma L P. (ECF #3185)

18

19   Responses:

20

21   Objection to the Bankruptcy plan re: Claim 88041 filed by

22   Carrie L. McGaha. (ECF #2921)

23

24   Letter to Judge Drain re: 82739 received 6- 1-21 Filed by

25   Michael W. Normile III. (ECF #2966)

1    Letter to Judge Drain re: Claim 6177, Disclosure Statement

2    Filed by Les Burris.(ECF #3028)

3

4    Letter to Judge Drain, re: 6750 Filed by Daniel West, on

5    behalf of Brian West.(ECF #3057)

6

7    Letter Re: Legal Mail from Prime Clerk Marked Contraband

8    Filed by Thomas Hickey.(ECF #3099)

9

10   Letter received 6/30/21 Filed by Theresa Willis. (ECF #3100)

11

12   Letter /Concerns regarding Disclosure Statement/Plan

13   (related document(s)2988) Filed by Teresa VomSaal. (ECF

14   #3110)

15

16   Letter received 6/28/21 Filed by James E Crawley. (ECF

17   #3111)

18

19   Statement /Victim Statement (Claim 619028) filed by Tamara

20   Graham. (ECF #3122)

21

22   Letter re: Disclosure Statement (Settlement) (related

23   document(s)2988) Filed by Ruby Romas. (ECF #3123)

24

25

Page 5

1    HEARING re Objection to Debtors' Plan of Reorganization

2    (related document(s)2988) filed by Kelvin X Singleton. (ECF

3    #3125)

4

5    Letter re: Voting Disclosure Statement (related

6    document(s)2988) Filed by Shirley Belk.( ECF #3188)

7

8    HEARING re Objection to the Plan/Claimants Objection

9    (related document(s)2988) filed by Donald Ernest Allee. (EOF

10   #3199)

11

12   HEARING re Objection to Plan (related document(s)2988) filed

13   by Mary Butler-Fink, a/k/a Parker's Mom. (ECF #3235)

14

15   HEARING re Objection of the United States Trustee to Sixth

16   Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and its

17   Affiliated Debtors (related document(s)2982, 2983, 3185)

18   filed by Paul Kenan Schwartzberg on behalf of United States

19   Trustee. (ECF #3256)

20

21   HEARING re Objection to Sixth Amended Joint Plan, filed by

22   Peter D'Apice on behalf of Certain Native American Tribes

23   and Others.(ECF #3257)

24

25

Page 6

1    HEARING re Objection to Confirmation of Amended Plan by

2    Independent Emergency Room Physician Michael Masiowski

3    (related document(s)3185) filed by Paul S. Rothstein on

4    behalf of Paul S. Rothstein. (ECF #3262)

5

6    HEARING re Objection / Certain Insurers' Limited Objection

7    to Plan Confirmation and Reservation of Rights (related

8    document(s)3185) filed by Philip D. Anker on behalf of XL

9    Insurance America, Inc., Liberty Mutual Insurance Company,

10   Liberty Mutual Fire Insurance Company, Liberty Insurance

11   Corporation, American Guarantee and Liability Insurance

12   Company, Aspen American Insurance Company, Navigators

13   Specialty Insurance Company, North American Elite Insurance

14   Company, Steadfast Insurance Company. (ECF #3263)

15

16   HEARING re Objection to Confirmation of Amended Plan City of

17   Seattle's Objection to the Debtors' Plan of Reorganization

18   filed by Ben Harrington on behalf of City of Seattle. (ECF

19   #3264)

20

21   HEARING re Objection by The State of West Virginia, ex. rel

22   Patrick Morrisey, Attorney General to Confirmation of the

23   Debtors' Sixth Amended Joint Plan of Reorganization (related

24   document(s)2982, 2983, 3185) filed by Aaron R. Cahn on

25   behalf of The State of West Virginia, ex el. Patrick

Page 7

1    Morrisey, Attorney General. (ECF #3265)

2

3    Statement of the United States Regarding the Shareholder

4    Release filed by Lawrence Fogelman on behalf of United

5    States of America.(ECF #3268)

6

7    HEARING re Joint Objection to Confirmation of Plan of the

8    State of Connecticut, State of Maryland and District of

9    Columbia filed by Irve J. Goldman on behalf of State of

10   Connecticut. (ECF #3270)

11

12   HEARING re Objection to Plan and Plan Confirmation filed by

13   James Franklin Ozment I on behalf of Stacey Bridges. (ECF

14   #3271)

15

16   HEARING re Joinder and Objection of Gulf Underwriters

17   Insurance Company and St. Paul Fire and Marine Insurance

18   Company to the Sixth Amended Joint Chapter 11 Plan of

19   Reorganization of Purdue Pharma L.P. and its Affiliated

20   Debtors (related document(s)3185) filed by Bryce L. Friedman

21   on behalf of Gulf Underwriters Insurance Company, St. Paul

22   Fire and Marine Insurance Company. (ECF #3272)

23

24

25

Page 8

1    HEARING re Objection to Confirmation of Plan (related

2    document(s)3185) filed by John A. Boyle on behalf of John H.

3    Stewart. (ECF #3273)

4

5    HEARING re Objection to Confirmation of Amended Plan filed

6    by Bernard Ardavan Eskandari on behalf of People of the

7    State of California. (ECF #3274)

8

9    HEARING re Objection to Confirmation of Plan by Certain

10    Canadian Municipality Creditors and Canadian First Nation

11    Creditors to Confirmation of the Sixth Amended Joint Chapter

12    11 Plan of Reorganization of Purdue Pharma L.P. and its

13    Affiliated Debtors (related document(s)3185) filed by Allen

14    J. Underwood on behalf of Guardian Law Group LLP (ECF #3275)

15

16    HEARING re Objection to Confirmation of Plan of the State of

17    Washington, the State of Oregon, and the Objecting States

18    filed by Matthew J. Gold on behalf of State of Washington.

19    (ECF #3276)

20

21    HEARING re Objection to Plan Confirmation filed by James

22    Franklin Ozment I on behalf of Creighton Bloyd. (ECF #3277)

23

24

25

Page 9

1    HEARING re Objection to Motion Objection to Sixth Amended

2    Joint Plan of Reorganization filed by Brian Edmunds on

3    behalf of State Of Maryland. (ECF #3278)

4

5    HEARING re Joinder filed by Jill Abrams on behalf of State

6    of Vermont. (ECF #3279)

7

8    HEARING re Joinder of the State of Delaware to Objection of

9    the State of Washington, the State of Oregon, and the

10   Objecting States to Confirmation of the Debtors' Plan of

11   Reorganization filed by Jillian Lazar on behalf of State of

12   Delaware. (ECF #3280)

13

14   HEARING re Objection to Motion filed by Morgan R Bentley on

15   behalf of Sarasota County Public Hospital District.(ECF

16   #3288)

17

18   HEARING re Objection to Consider Confirmation of the Fifth

19   Amended Chapter 11 Plan (related document(s)2988) filed by

20   Joyce Villnave. (ECF #3292)

21

22   HEARING re Objection to Fifth Amended Chapter 11 Plan of

23   Reorganization (Motion for Allowance) (related

24   document(s)2988) filed by Jerome J. Ferrier. (ECF #3293)

25

1    HEARING re Objection to the Plan & Motion to file late

2    ballots (related document(s)2988) filed by Earl Cobb.(ECF

3    #3298)

4

5    HEARING re Objection to the Plan & Motion to file late

6    ballots (related document(s)2988) filed by Tim Wright.(ECF

7    #3299)

8

9    HEARING re Objection to Confirmation of Plan Chubb Insurance

10   USAs Objection To The Sixth Amended Joint Chapter 11 Plan Of

11   Reorganization Of Purdue Pharma L.P. and its Affiliated

12   Debtors (related document(s)3185) filed by Lawrence J.

13   Kotler on behalf of Chubb Insurance USA. (ECF #3301)

14

15   HEARING re Opposition / Joinder of National Union to Certain

16   Insurers' Limited Objection to Plan Confirmation (related

17   document (s)3263) filed by Joseph G. Davis on behalf of

18   National Union Fire Insurance Company of Pittsburgh, PA.

19   (ECF #3304)

20

21   HEARING re Objection /Joint Objection of Certain

22   Distributors, Manufacturers, and Pharmacies (ECF #3306)

23

24

25

1   HEARING re Amended Objection to Confirmation of Amended Plan

2   by Independent ER Room . Physician, Dr. Michael Masiowski

3   (ECF #3323)

4

5   HEARING re Statement Reservation of Rights of Her Majesty

6   the Queen in Right of the Province of British Columbia and

7   other Canadian Governments with respect to confirmation of

8   the Sixth Amended Joint Chapter 11 Plan of Reorganization of

9   Purdue Pharma L.P. and Its Affiliated Debtors filed by

10   Nickolas Karavolas on behalf of Her Majesty in Right of the

11   Province of British Columbia. (ECF #3335)

12

13   HEARING re Objection to Restructuring of Purdue Pharma L.P.,

14   Et Al Case No. 19-23649(RDD) (related document(s)2988) filed

15   by Maria Ecke. (ECF #3357)

16

17   HEARING re Objection AndersonBrecon, Inc D/B/A PCI Pharma

18   Services (ECF #3359)

19

20   HEARING re Objection to the plan (related document(s)2988)

21   filed by D. Thomas Page. (ECF #3368)

22

23   HEARING re Objection to Confirmation of Plan filed by On

24   behalf of the Farash Family Barbara Farash.(ECF #3404)

25

1  HEARING re The Multi-State Governmental Entities Group's

2  Statement in Support of and Response to Certain Objections

3  to the Sixth Amended Joint Chapter 11 Plan of Reorganization

4  of Purdue Pharma L.P. and Its Affiliated Debtors filed by

5  Kevin C. Maclay on behalf of Multi-State Governmental

6  Entities Group. (ECF #3430)

7

8  HEARING re Statement of The Raymond Sackler Family in

9  Support of Confirmation of Debtors' Sixth Amended Plan of

10  Reorganization and in Reply to Plan Objections filed by

11  Gerard Uzzi on behalf of The Raymond Sackler Family. (ECF

12  #3438)

13

14  HEARING re Objection to Proposed Amendment of Contracts

15  Pursuant to Section 8.4 of Sixth Amended Joint Chapter 11

16  Plan of Purdue Pharma L.P. and Its Affiliated Debtors

17  (related document(s)3185) filed by Daniel Joseph Saval on

18  behalf of CuraScript, Inc., Express Scripts Holding Company,

19  Express Scripts Pharmacy, Inc., Express Scripts, Inc. (ECF

20  #3439)

21

22  HEARING re Response to Motion The Mortimer D. Sackler

23  Family's Response to Plan Objections and Statement in

24  Support of Confirmation of The Sixth Amended Joint Chapter

25  11 Plan of Reorganization of Purdue Pharma L.P. and its

1    Affiliated Debtors (related document(s)3435) filed by

2    Jasmine Ball on behalf of Beacon Company. (ECF #3442)

3

4    HEARING re Response to Objection of the United States

5    Trustee (related document(s)3256) filed by Michael Patrick

6    O'Neil on behalf of Ad Hoc Group of Hospitals. (ECF #3453)

7

8    HEARING re Response TO INSURER CONFIRMATION OBJECTIONS

9    (related document(s)3301, 3304, 3272, 3263) filed by Paul M.

10   Singer on behalf of Purdue Pharma L.P. (ECF #3455)

11

12   HEARING re Statement / Redacted Statement of the Official

13   Committee of Unsecured Creditors in Support of Confirmation

14   of the Sixth Amended Joint Chapter 11 Plan of Reorganization

15   of Purdue Pharma L.P. and Its Affiliated Debtors filed by

16   Ira S. Dizengoff on behalf of The Official Committee of

17   Unsecured Creditors of Purdue Pharma L.P., et al. (ECF

18   #3459)

19

20   Reply:

21

22   HEARING re Reply to Objection and Improperly Submitted

23   Amended Supplemental Objection of Dr. Michael Masiowski

24   (related document(s)3323, 3262) filed by Michael Patrick

25   O'Neil on behalf of Ad Hoc Group of Hospitals. (ECF #3413)

1   HEARING re Response / The Ad Hoc Group of Individual

2   Victims' Limited Reply in Support of Confirmation of the

3   Debtors' Joint Chapter 11 Plan of Reorganization (related

4   document(s)3271, 3256, 3185) filed by J. Christopher Shore

5   on behalf of Ad Hoc Group of Individual Victims of Purdue

6   Pharma L.P. (ECF #3427)

7

8   HEARING re Ad Hoc Committee Of NAS Children's Motion For

9   Leave To Exceed The Page Limit In Filing The Reply To The

10  United States Trustee's Objection To The Fee Settlements

11  Included In Sixth Amended Joint Chapter 11 Plan Of

12  Reorganization Of Purdue Pharma L.P. And Its Affiliated

13  Debtors filed by Scott S. Markowitz on behalf of Ad Hoc

14  Committee of NAS Babies. (ECF #3396)

15

16  HEARING re Debtors' Memorandum of Law in Support of

17  Confirmation of Debtors' Sixth Amended Joint Chapter 11 Plan

18  of Reorganization of Purdue Pharma L.P. and its Debtor

19  Affiliates and Omnibus Reply to Objections Thereto (related

20  document(s)3185) filed by Marshall Scott Huebner on behalf

21  of Purdue Pharma L.P. (ECF #3461)

22

23

24

25

Page 15

1   HEARING re Ad Hoc Committee's Reply to Plan Objections

2   (related document(s)3268, 3270, 3256, 3272, 3276, 3265,

3   3301, 3304, 3185, 3263, 3306) filed by Kenneth H. Eckstein

4   on behalf of Ad Hoc Committee of Governmental and Other

5   Contingent Litigation Claimants. (ECF #3465)

6

7   Related Documents:

8

9   Statement / Notice of Filing of Special Education Initiative

10  Term Sheet (related document(s)2982) filed by Eli J.

11  Vonnegut on behalf of Purdue Pharma L.P. (ECF #3120)

12

13  Statement / Notice of Filing of Eighth Plan Supplement

14  Pursuant to the Fifth Amended Joint Chapter 11 Plan of

15  Reorganization of Purdue Pharma L.P. and its Affiliated

16  Debtors (related document(s)2982) filed by Eli J. Vonnegut

17  on behalf of Purdue Pharma L.P. (ECF #3121)

18

19  Letter request for video access to Confirmation Hearing

20  Filed by Katie Lynn B Townsend on behalf of Dow Jones &

21  Company, Inc., Boston Globe Media Partners, LLC, and Reuters

22  News & Media, Inc. (ECF #3129)

23

24

25

1    Statement/Notice of Filing of Blackline of Sixth Amended

2    Plan (related document(s)3185) filed by Eli J. Vonnegut on

3    behalf of Purdue Pharma L.P. (ECF #3186)

4

5    Statement / Notice of Filing of Ninth Plan Supplement

6    Pursuant to the Sixth Amended Joint Chapter 11 Plan of

7    Reorganization of Purdue Pharma L.P. and its Affiliated

8    Debtors (related document(s)3185) filed by Eli J. Vonnegut

9    on behalf of Purdue Pharma L.P. (ECF #3187)

10

11   Statement / Notice of Extension of Voting Deadline (related

12   document(s)3166, 2982) filed by Eli J. Vonnegut on behalf of

13   Purdue Pharma L.P. (ECF #3231)

14

15   Statement / Notice of Filing of Tenth Plan Supplement

16   Pursuant to the Sixth Amended Joint Chapter 11 Plan of

17   Reorganization of Purdue Pharma L.P. and its Affiliated

18   Debtors (related document(s)3185) filed by Eli J. Vonnegut

19   on behalf of Purdue Pharma L.P. (ECF#3232)

20

21   Statement / Notice of Filing of Eleventh Plan Supplement

22   Pursuant to the Sixth Amended Joint Chapter 11 Plan of

23   Reorganization of Purdue Pharma L.P. and its Affiliated

24   Debtors (related document(s)3185) filed by Eli J. Vonnegut

25   on behalf of Purdue Pharma L.P. (ECF #3246)

1    Letter (Letter in Support of Request for Video Access to

2    Confirmation Hearing) (related document(s)3129) Filed by

3    Andrew M. Troop on behalf of Ad Hoc Group of Non-Consenting

4    States. (ECF #3248)

5

6    HEARING re Motion to Allow Filing of Amici Curiae Brief

7    filed by Ira Burnim on behalf of Kennedy Forum and other

8    national organizations. (ECF #3251)

9

10   HEARING re Statement / Notice of Filing of Twelfth Plan

11   Supplement Pursuant to the Sixth Amended Joint Chapter 11

12   Plan of Reorganization of Purdue Pharma L.P. and its

13   Affiliated Debtors (related document(s)3185) filed by Eli J.

14   Vonnegut on behalf of Purdue Pharma L.P. (ECF #3283)

15

16   HEARING re Certain Distributors, Manufacturers, and

17   Pharmacies' Motion to Authorize Leave to Exceed Page Limit

18   in Filing the Joint Objection to the Sixth Amended Joint

19   Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated

20   Debtors filed by Christopher A. Lynch (ECF #3305)

21

22   HEARING re Order signed on 7/23/2021 Granting Leave to

23   Exceed Page Limit in Filing the Joint Objection to the Sixth

24   Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and Its

25   Affiliated Debtors (Related Doc # 3305) (ECF #3309)

Page 18

1    HEARING re Declaration / Preliminary Declaration of

2    Christina Pullo of Prime Clerk LLC Regarding the

3    Solicitation of Votes and Tabulation of Ballots Cast on the

4    Fifth Amended Joint Chapter 11 Plan of Reorganization of

5    Purdue Pharma L.P. and its Affiliated Debtors (related

6    document(s)2982) filed by Eli J. Vonnegut on behalf of

7    Purdue Pharma L.P. (ECF #3327)

8

9    HEARING re Letter re Consents to Filing Amici Curiae Brief

10   Filed by Ira Burnim on behalf of Kennedy Forum and other

11   national organizations. (ECF #3355)

12

13   HEARING re Declaration / Final Declaration of Christina

14   Pullo of Prime Clerk LLC Regarding the Solicitation of Votes

15   and Tabulation of Ballots Cast on the Fifth Amended Joint

16   Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and

17   its Affiliated Debtors (related document(s)3327, 2982) filed

18   by Eli J. Vonnegut on behalf of Purdue Pharma L.P. (ECF

19   #3372)

20

21   HEARING re Motion to Allow Ad Hoc Committee Of NAS

22   Children's Motion For Leave To Exceed The Page Limit In

23   Filing The Reply To The United States Trustee's Objection To

24   The Fee Settlements Included In Sixth Amended Joint Chapter

25   11 Plan Of Reorganization Of Purdue Pharma L.P. And Its

Page 19

1   Affiliated Debtors filed by Scott S. Markowitz on behalf of

2   Ad Hoc Committee of NAS Babies. (ECF #3396)

3

4   Declaration of Scott R. Bickford, Esq. In Support of The Ad

5   Hoc Committee of NAS Children's Reply To The United States

6   Trustee's Objection To The Fee Settlements Included In The

7   Sixth Amended Joint Chapter 11 Plan of Reorganization of

8   Purdue Pharma L.P. And Its Affiliated Debtors (related

9   document(s)3397, 3256, 3185) filed by Scott S. Markowitz on

10  behalf of Ad Hoc Committee of NAS Babies. (ECF #3398)

11

12  Declaration / Third Supplemental Declaration of Jeanne C.

13  Finegan (related document(s)717, 719) filed by James I.

14  McClammy on behalf of Purdue Pharma L.P. (ECF #3403)

15

16  Affidavit Declaration of Rahul Gupta, MD, MPH, MBA, FACP

17  Filed by Michael Patrick O'Neil on behalf of Ad Hoc Group of

18  Hospitals. (ECF #3405)

19

20  Affidavit Declaration of Rebecca M.S. Busch, MBA Filed by

21  Michael Patrick O'Neil on behalf of Ad Hoc Group of

22  Hospitals.(ECF #3407)

23

24

25

1    Affidavit Declaration of Gayle A. Galan, M.D. FACEP Filed by

2    Michael Patrick O'Neil on behalf of Ad Hoc Group of

3    Hospitals. (ECF #3408)

4

5    Affidavit Declaration of William Legier Filed by Michael

6    Patrick O'Neil on behalf of Ad Hoc Group of Hospitals. (ECF

7    #3409)

8

9    Declaration of Richard A. Collura filed by Benjamin S.

10   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3410)

11

12   Declaration of Jesse DelConte filed by Benjamin S.

13   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3411)

14

15   Declaration of Deborah E. Greenspan filed by Benjamin S.

16   Kaminetzky on behalf of Purdue Pharma L.P. (ECF#3412)

17

18   Declaration of Gautam Gowrisankaran filed by Benjamin S.

19   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3414)

20

21   Declaration of Carl J. Trompetta filed by Gerard Uzzi on

22   behalf of The Raymond Sackler Family. (ECF #3415)

23

24   Declaration of Garrett Lynam filed by Gerard Uzzi on behalf

25   of The Raymond Sackler Family. (ECF #3416)

1   Declaration of Stephen A. Ives filed by Gerard Uzzi on

2   behalf of The Raymond Sackler Family. (ECF#3417)

3

4   Declaration of David Sackler filed by Gerard Uzzi on behalf

5   of The Raymond Sackler Family. (ECF #3418)

6

7   Declaration Supplemental Declaration of Jennifer L. Blouin

8   filed by Gerard Uzzi on behalf of The Raymond Sackler

9   Family. (ECF #3419)

10

11  Declaration Maureen M. Chakraborty filed by Gerard Uzzi on

12  behalf of The Raymond Sackler Family. (ECF #3420)

13

14  Declaration of Lawrence A. Hamermesh filed by Gerard Uzzi on

15  behalf of The Raymond Sackler Family. (ECF #3421)

16

17  Declaration of Timothy J. Martin filed by Gerard Uzzi on

18  behalf of The Raymond, Sackler Family. (ECF #3422)

19

20  Declaration of Mark F. Rule, CFA filed by Benjamin S.

21  Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3424)

22

23  HEARING re Motion to Authorize Raymond Sackler Family's

24  Motion for Leave to Exceed Page Limit in Statement in

25  Support of Confirmation of Debtors' Sixth Amended Plan of

1    Reorganization and in Reply to Plan Objections filed by

2    Gerard Uzzi on behalf of The Raymond Sackler Family. (ECF

3    #3425)

4

5    HEARING re Order signed on 8/5/2021 Granting Leave to Exceed

6    the Page Limit in Filing the Reply to the United States

7    Trustee's Objection to the Fee Settlements Included in Sixth

8    Amended Joint Chapter 11 Plan of Reorganization of Purdue

9    Pharma L.P. And its Affiliated Debtors,(Related Doc # 3396)

10   (ECF #3426)

11

12   Declaration of David W. DeRamus, Ph.D. filed by Benjamin S.

13   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3428)

14

15   HEARING re Order signed on 8/5/2021 RE: Establishing

16   Procedures for Remote Hearing on Confirmation of the Joint

17   Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and

18   It's Affiliated Debtors. (ECF #3429)

19

20   HEARING re Declaration of Joseph L. Turner filed by Benjamin

21   S. Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3431)

22

23   HEARING re Declaration of Lianna E. Simmonds filed by

24   Benjamin S. Kaminetzky on behalf of Purdue Pharma L.P. (ECF

25   #3432)

Page 23

1

2    HEARING re Declaration of John S. Dubel filed by Benjamin S.

3    Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3433)

4

5    HEARING re Motion to Allow The Mortimer D. Sackler Family's

6    Motion for Leave to Exceed Page Limit in Filing their

7    Response to Plan Objections and Statement in Support of

8    Confirmation of the Sixth Amended Joint Chapter 11 Plan of

9    Reorganization of Purdue Pharma L.P. and its Affiliated

10   Debtors filed by Jasmine Ball on behalf of Beacon Company.

11   (ECF #3435)

12

13   HEARING re Motion to Authorize Leave to Exceed the Page

14   Limit in Filing the Reply to the U.S. Trustee's Objection

15   filed by Michael Patrick O'Neil on behalf of Ad Hoc Group of

16   Hospitals. (ECF #3437)

17

18   HEARING re Declaration of Jon Lowne filed by Benjamin S.

19   Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3440)

20

21   HEARING re Declaration of Gregory P. Joseph filed by Gerard

22   Uzzi on behalf of The Raymond Sackler Family. (ECF #3441)

23

24   HEARING re Declaration / Declaration of Gary A. Gotto in

25   Support of Ad Hoc Committee's Reply to Plan Objections and

1    in Support of Plan Confirmation filed by Kenneth H. Eckstein

2    on behalf of Ad Hoc Committee of Governmental and Other

3    Contingent Litigation Claimants. (ECF #3443)

4

5    HEARING re Declaration / Declaration of John M. Guard in

6    Support of Ad Hoc Committee's Reply to Plan Objections and

7    in Support of Plan Confirmation filed by Kenneth H. Eckstein

8    on behalf of Ad Hoc Committee of Governmental and Other

9    Contingent Litigation Claimants. (ECF #3446)

10

11    HEARING re Declaration / Declaration of Jayne Conroy in

12    Support of Ad Hoc Committee's Reply to Plan Objections and

13    in Support of Plan Confirmation filed by Kenneth H. Eckstein

14    on behalf of Ad Hoc Committee of Governmental and Other

15    Contingent Litigation Claimants. (ECF #3447)

16

17    HEARING re Declaration Declaration of Timothy J. Martin

18    (related document(s)3442, 3185) filed by Jasmine Ball on

19    behalf of Beacon Company. (ECF #3448)

20

21    HEARING re Declaration / Declaration of Peter H. Weinberger

22    in Support of Ad Hoc Committee's Reply to Plan Objections

23    and in Support of Plan Confirmation filed by Kenneth H.

24    Eckstein on behalf of Ad Hoc Committee of Governmental and

25    Other Contingent Litigation Claimants. (ECF #3449)

Page 25

1

2   HEARING re Declaration / Declaration of Jessica B. Horewitz,

3   Ph.D in Support of the Ad Hoc Committee's Reply to Plan

4   Objections and in Support of Plan Confirmation filed by

5   Kenneth H. Eckstein on behalf of Ad Hoc Committee of

6   Governmental and Other Contingent Litigation Claimants. (ECF

7   #3450)

8

9   HEARING re Declaration Declaration of Jonathan Greville

10  White (related document(s)3442, 3185) filed by Jasmine Ball

11  on behalf of Beacon Company. (ECF #3451)

12

13  HEARING re Declaration Declaration of Alexa M. Saunders

14  (related document(s)3442, 3185) filed by Jasmine Ball on

15  behalf of Beacon Company. (ECF #3452)

16

17  HEARING re Declaration of Jesse DelConte filed by Benjamin

18  S. Kaminetzky on behalf of Purdue Pharma L.P. (ECF #3456)

19

20  HEARING re Motion to Allow/ Motion of the Official Committee

21  of Unsecured Creditors for Leave to Exceed Page Limit in

22  Statement in Support of Confirmation of the Sixth Amended

23  Joint Chapter 11 Plan of Reorganization of Purdue Pharma

24  L.P. and Its Affiliated Debtors filed by Ira S. Dizengoff on

25  behalf of The Official Committee of Unsecured Creditors of

1    Purdue Pharma L.P., et al. (ECF #3457)

2

3    HEARING re Declaration / Redacted Declaration of Michael

4    Atkinson in Support of the Statement of the Official

5    Committee of Unsecured Creditors in Support of Confirmation

6    of the Sixth Amended Joint Chapter 11 Plan of Reorganization

7    of Purdue Pharma L.P. and Its Affiliated Debtors filed by

8    Ira S. Dizengoff on behalf of The Official Committee of

9    Unsecured Creditors of Purdue Pharma L.P., et al.(ECF #3460)

10

11   HEARING re Motion to Allow/ Debtors' Motion for Leave to

12   Exceed the Page Limit in Filing Memorandum of Law in Support

13   of Confirmation of Debtors' Sixth Amended Joint Chapter 11

14   Plan of Reorganization of Purdue Pharma L.P. and its Debtor

15   Affiliates and Omnibus Reply to Objections Thereto filed by

16   Marc Joseph Tobak on behalf of Purdue Pharma L.P. (ECF

17   #3462)

18

19   HEARING re Motion to Approve Motion to Exclude the Expert

20   Testimony of William P. Hrycay, CFA filed by Jasmine Ball on

21   behalf of Beacon Company (ECF #3490)

22

23   HEARING re Notice of Motion to Exclude the Expert Testimony

24   of William P. Hrycay, CFA (related document(s)3490) filed by

25   Jasmine Ball on behalf of Beacon Company. (ECF #3491)

1

2

3    Transcribed by:    Sonya Ledanski Hyde

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 28

1    A P P E A R A N C E S :

2

3    DAVIS POLK WARDWELL LLP

4         Attorney for Debtors

5         450 Lexington Avenue

6         New York, NY 10017

7

8    BY:   ELI VONNEGUT (TELEPHONICALLY)

9          CHRIS ROBERTSON (TELEPHONICALLY)

10         BENJAMIN KAMINETZKY (TELEPHONICALLY)

11         MARSHALL SCOTT HUEBNER (TELEPHONICALLY)

12

13   MCELROY, DEUTSCH, MULVANEY & CARPENTER

14         Attorneys for Westchester Fire Insurance Company

15         225 Liberty Street, 36th Floor

16         New York, NY 10281

17

18   BY:   NICOLE LEONARD (TELEPHONICALLY)

19

20   PHILLIPS LYTLE

21         Attorney for Canadian provincial claimants

22         340 Madison Avenue, 17th Floor

23         New York, NY 10173

24

25   BY:   NICHOLAS KARAVOLAS (TELEPHONICALLY)

1    LITE DEPALMA GREENBERG & AFANADOR

2        Attorneys for Certain Canadian Municipality Creditors

3        and Canadian First Nation Creditors

4        570 Broad Street

5        Suite 1201

6        Newark, NJ 07102

7

8    BY:  ALLEN J. UNDERWOOD (TELEPHONICALLY)

9

10   PULLMAN COMLEY, LLC

11   Attorney on behalf of State of Connecticut

12   850 Main Street

13   Bridgeport, CT 06604

14

15   BY:  IRVE J. GOLDMAN (TELEPHONICALLY)

16

17   KOBRE & KIM

18       Attorney on behalf of CuraScript, Inc., Express Scripts

19       Holding Company, Express Scripts Pharmacy, Inc.,

20       Express Scripts, Inc

21       800 3rd Avenue

22       New York, NY 10022

23

24   BY:  DANIEL JOSEPH SAVAL (TELEPHONICALLY)

25

Page 30

1    OFFICE OF THE ATTORNEY GENERAL- STATE OF MARYLAND

2         Attorney for the State of Maryland

3         200 Saint Paul Place

4         Baltimore, MD 20852

5

6    BY:  BRIAN EDMUNDS (TELEPHONICALLY)

7

8    PAUL S. ROTHSTEIN ATTORNEY AT LAW

9         Attorney for Dr. Masiowski, Independent

10        Emergency Room Physician

11        626 NE 1st Street

12        Gainesville, FL 32601

13

14   BY:  PAUL S. ROTHSTEIN (TELEPHONICALLY)

15

16   TAFT STETTINIUS HOLLISTER LLP

17        Ad Hoc Hospitals counsel

18        211 N. Pennsylvania Street

19        One Indiana Square

20        Indianapolis, IN 46204

21

22   BY:  MICHAEL PATRICK O'NEAL (TELEPHONICALLY)

23

24

25

Page 31

1   PILLSBURY WINTHROP SHAW PITTMAN LLP

2       Attorney for the Non-Consenting States

3       31 West 52nd Street

4       New York, NY 10019

5

6   BY:  ANDREW TROOP (TELEPHONICALLY)

7

8   CROWELL MORING LLP

9       Attorney on behalf of Steadfast and Associated

10      Guarantee Three Embarcadero Center

11      26th Floor

12      San Francisco, CA 94115

13

14  BY;  MARK PLEVIN (TELEPHONICALLY)

15

16  US ATTORNEY'S OFFICE

17      Attorney on behalf of the United States

18      86 Chambers Street

19      3rd Floor

20      New York, NY 10007

21

22  BY

23

24  :    LARRY FOGELMAN (TELEPHONICALLY)

25

Page 32

1    LAW OFFICES OF JULIANNE FELIZ AND C. SAMUEL

2    SUTTER

3         Attorney for Unsecured Creditors

4         70 South Main Street

5         Fall River, MA 02721

6

7    BY:  JULIANNE FELIZ (TELEPHONICALLY)

8

9

10   OFFICE OF THE UNITED STATES TRUSTEE

11        Attorney for U.S. Trustee

12        201 Varick Street, Room 1006

13        New York, NY 10014

14

15   BY:  PAUL SCHWARTZBERG (TELEPHONICALLY)

16

17   JENNER BLOCK

18        Attorney for McKesson

19        353 N. Clark Street

20        Chicago, IL 60654

21

22   BY:  CATHERINE STEEGE (TELEPHONICALLY)

23

24

25

Page 33

```
 1    O'MELVENY MYERS LLP

 2         Attorneys for Johnson & Johnson

 3         7 Times Square

 4         New York, NY 10036

 5

 6    BY:  EVAN JONES (TELEPHONICALLY)

 7

 8    AKIN GUMP

 9         Attorney for Official Committee of Unsecured Creditors

10         1 Bryant Park

11         New York, NY 10036

12

13    BY:  ARIK PREIS (TELEPHONICALLY)

14

15    WILMER CUTLER PICKERING HALE AND DORR

16         Attorneys on behalf of XL Insurance America, Inc.,

17         Liberty Mutual Insurance Company,

18         Liberty Mutual Fire Insurance Company,

19         Liberty Insurance Corporation, American

20         Guarantee and Liability Insurance Company,

21         Aspen American Insurance Company, Navigators

22         Specialty Insurance Company, North American

23         Elite Insurance Company, Steadfast Insurance

24         Company

25         7 World Trade Center
```

1        New York, NY 10007

2

3   BY:  PHILIP D. ANKER (TELEPHONICALLY)

4

5   KLEINBERG, KAPLAN, WOLFF COHEN, P.C.

6        Attorney on behalf of State of Washington

7        500 Fifth Avenue

8        New York, NY 10110

9

10  BY:  MATTHEW J. GOLD (TELEPHONICALLY)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 35

1                    P R O C E E D I N G S

2              THE COURT:  Good morning, everyone.  This is Judge

3      Drain and we are here in In re Purdue Pharma L.P.  I have

4      the amended agenda for this hearing.  It has been scheduled

5      for a while now as the pretrial conference for the

6      confirmation hearing on the Debtor's amended Chapter 11

7      plan, which is scheduled to start on August 12th.

8              In addition, the first item on the agenda is the

9      Debtor's motion to shorten notice and the underlying motion

10     that that motion relates to, which is a stipulation with

11     Canadian governmental claimants, namely the provincial

12     governments of British Columbia, Alberta, Saskatchewan,

13     Ontario, Nova Scotia, New Brunswick, Newfoundland, and

14     Labrador, Prince Edward Island, Quebec, and Manitoba, and

15     the objection to those requests for relief by certain local

16     governmental -- Canadian governmental claimants and for its

17     people's representatives and the Debtor's reply.

18             So I expect the vast majority of people on the

19     call are here for the pretrial conference, but I'm happy to

20     go in the order of the agenda.

21             MR. ROBERTSON:  Thank you, Your Honor.  Good

22     morning.  For the record, Chris Robertson, Davis, Polk &

23     Wardwell on behalf of (indiscernible).

24             THE COURT:  We're turning you up.  I don't see

25     anyone else on the call looking like they can't hear you.

Page 36

1    So you can go ahead.

2              MR. ROBERTSON:   Okay.   Thank you, Your Honor.

3    Before we turn to the confirmation and pretrial conference,

4    I do note there is one contested matter on the agenda, which

5    is the proof of stipulation order by and among the debtors,

6    the Canadian provincial governments, the claimants, and

7    Sackler families.   I will try to do this briefly, Your

8    Honor.

9              Your Honor, before addressing the stipulation

10   itself, we should address the motion to shorten notice.   The

11   Debtors filed a stipulation and order and the motion to

12   shorten on July 28th, which was 12 days ago.   Because the

13   stipulation and order is a settlement of claims that causes

14   action against the debtors, we understand that Bankruptcy

15   Rule 2002(a)(3) would ordinarily require 21 days' notice to

16   parties in interest.

17             However, as we submit in our motion to shorten and

18   in our reply, we believe that entry of the stipulation and

19   order does not adversely affect any creditor and we believe

20   that no credit should have a legitimate issue that would

21   necessitate delay in having this hearing.

22             We and the Canadian governmental claimants also

23   have a desire to have a stipulation and order occur at or

24   prior to confirmation because it relates to and narrows the

25   scope of third-party releases and resolves potential

objections to confirmation from the Canadian Governmental Claimants. Under the circumstances, we believe that the notice provided is sufficient and appropriate. I will pause here in case counsel would like to speak on the shorten on behalf of the municipal and first nation creditors.

THE COURT: Well, before we hear from them, let me ask you, what is the difference between hearing this today and hearing it on the 12th?

MR. ROBERTSON: Your Honor, I don’t think that there is any major difference. When we scheduled this motion for hearing, the confirmation hearing was still scheduled to begin today. And so this was commenced immediately prior to confirmation. However, as we had Court time available for the 9th, we thought it was appropriate to keep this matter on the agenda rather than moving it to the 12th. And we have obviously other matters to address.

THE COURT: Okay. The reason I’m asking is that at least I believe, although I only see about five percent of what’s going in the case, literally, but based upon all of the pleadings that were filed recently, I believe that many parties in interest in this case may have been focusing on that as opposed to really focusing on this motion.

Indeed, the limited objection filed to the motion suggests that the parties have not really thought it through very much, and a few more days might give people a little

1    more time to focus on it.

2          MR. ROBERTSON:  Your Honor, to that point I think

3    I would only add that although the stipulation was filed on

4    July 28th, we have been in constant communication with

5    counsel to other Canadian claimants where we believe this is

6    sort of -- who are most interested in this formulation to

7    the stipulation.  We also had a number of conversations with

8    the objecting parties leading up to and after filing the

9    stipulation.

10         And so, frankly, I'm not sure that there is --

11   that there will be any further objections to this

12   stipulation.  I don't expect there will be.  Again, we don't

13   think that it affects any other parties' rights.  And the

14   Canadian municipalities who are objecting have had -- have

15   already submitted their papers and have been through the

16   stipulation and discussed with us and with the Canadian

17   provinces.  And so, you know, I wouldn't want to speak for

18   them, but I don't believe that a couple more days is going

19   to further develop their arguments in respect to this

20   matter.

21         THE COURT:  Okay.  Well --

22         MR. KARAVOLAS:  Your Honor, if I may be heard as

23   well.  I think I can add --

24         THE COURT:  Well, let me just -- let me speak for

25   a second.  I was going to ask if there are other parties on

1    the line besides the objectors, the Canadian objectors, who

2    would like more time to review this motion.

3             Okay.  All right.  Why don't I hear from the

4    Canadian objectors?

5             MR. KARAVOLAS:  Thank you, Your Honor.  Nicholas

6    Karavolas, Phillips Lytle, for the Canadian provincial

7    claimants.  Can you hear me well, Your Honor?

8             THE COURT:  Yes.  And of course your clients are

9    not objectors.  You are the counterparties to the

10   stipulation then.

11            MR. KARAVOLAS:  That's correct, Your Honor.

12            THE COURT:  Okay.

13            MR. KARAVOLAS:  So to address your question

14   regarding timing, we think it's appropriate certainly for

15   the Court to hear the stipulation today.  And we have

16   concerns about this matter spilling into the date of the

17   confirmation hearing for the following reason.

18            On July 28th at Docket 3335, the Canadian

19   provinces filed a reservation of rights with respect to

20   confirmation of the Debtor's sixth amended plan.  And in

21   that, the Canadian provinces referenced a stipulation

22   represent, A, that it was the product of extensive arm's

23   length negotiations, but that it also resolves the general

24   objections that are set forth in the reservation of rights

25   as well as other objections that the Canadian provinces

1    have.  And rather than leave the Canadian provinces in limbo

2    as to whether or not the stipulation will ultimately be

3    approved by the Court and when those objections could be

4    put, you know, publicly available and made available to the

5    Court for reviews to ensure that the debtors are aware of

6    the full, you know, scope of the objections, I think it

7    makes sense for the Court to hear the stipulation in advance

8    of the confirmation hearing so the Canadian provinces aren't

9    jammed up and have to assert objections in the event that

10   the Court does not approve to stipulate.

11            THE COURT:  Okay.  That's understandable.  Thank

12   you.

13            MR. KARAVOLAS:  Thank you, Your Honor.

14            THE COURT:  So why don't I hear from the Canadian

15   objectors.

16            MR. UNDERWOOD:  Good morning, Your Honor.  This is

17   Allen Underwood on behalf of the class of Canadian

18   municipalities as well as the class of Canadian first

19   nations who filed the limited objection --

20            THE COURT:  Can I interrupt you on that point?

21   How are you representing a class as opposed to the

22   individual entities that are named in the objection?

23            MR. UNDERWOOD:  Well, I would say there's two

24   issues related to that.  First of all, yes, they are

25   individual entities who filed actions.  Certainly we

Page 41

1    represent those.  And in addition, the actions were filed in

2    Canada as opt-out classes.  If you're driving at whether or

3    not Rule 7023 approval is required prior to a certain of

4    class claim, we don't, frankly, think at this time that it

5    is.  And of course the Court may differ.

6            THE COURT:  I do.  I've never granted any such

7    approval.

8            MR. UNDERWOOD:  That could be correct.  And my

9    involvement in this case is relatively recent.  And I think

10   this goes back to the larger issue, which is actually

11   outlined in the limited opposition that we filed here, which

12   is simply that the Canadian creditors came to this Court,

13   they came to the United States, they filed their proofs of

14   claim.

15           Whether we're talking about individual

16   municipalities or class proofs and whether we're talking

17   about municipalities, or whether we're talking about first

18   nations, they filed their claims and they expected to be

19   part of this process.  They were not.  And when I say this

20   process, I mean the (indiscernible) process with regard to

21   municipalities and first nations.

22           And so ultimately here we are today.  And I think

23   ultimately with regard to this objection, or limited

24   objection to the stipulation, the concern that I have is

25   that what is being proposed is effectively a withdrawal of

Page 42

1    $60 billion worth of Canadian sovereign claims.  And that's

2    material, and on its face it would be hard to suggest that

3    that would not be beneficial for a U.S. Debtor.

4          My concern is what it may suggest in a larger

5    perspective with regard to the process that is going on here

6    and what's the motivation for the Canadian provinces to

7    withdraw such significant claims that I am sure are backed

8    by -- that are real claims.

9          And the problem being I think there's -- what it

10    suggests to me is that the Canadian provinces, in order to

11    avoid the risk of what may be arguably over-broad third

12    party releases, would rather withdraw from U.S. jurisdiction

13    than be a part of this bankruptcy process.  And I just don't

14    think that that is -- I don't think that's a good path for

15    any court to follow.  And that's the primary concern here,

16    is that in fact what this Court is working towards is a

17    global resolution, to the extent that's achievable, and

18    finality in further disputes in other jurisdictions about

19    the extent to which any provisions of any confirmed plan

20    apply.

21          That's pretty much the nub of this limited

22    objection, Your Honor.  And otherwise, I'll rest on the

23    papers submitted.

24          THE COURT:  Okay.  All right.  Well, does anyone -

25    - well, I guess I already asked this question, but I'll ask

Page 43

1   it one more time.  Does anyone want to address the first

2   motion that's on the calendar, which is the motion to

3   shorten time?  Okay.  I'm going to rule on that request now.

4           I will grant the Debtor's motion to shorten time

5   for consideration of the underlying request for relief

6   that's on today's calendar.  As the parties know, I very,

7   very rarely grant motions to shorten time on an ex parte

8   basis, at least that gives parties in interest additional

9   time to explain to me why a motion to shorten is not

10  warranted in the particular circumstance.

11          The motion to shorten time was filed on July 28th.

12  It's now August 9th.  No one at today's hearing which has

13  registered for it, all of the at least entities who have

14  objected to confirmation of the plan audit and therefore the

15  parties who I believe will be most interested in this motion

16  have objected to the Debtor's request to shorten time.  And

17  as far as the one objection, it really does go primarily to

18  the merits, and there is a well-thought-out written

19  objection to the merits, which has just been addressed by

20  counsel, by the objectors.

21          So given the nature of the underlying relief

22  sought and the parties to the stipulation's desire to have

23  that relief or request for relief addressed before the start

24  of the confirmation hearing so that they do not have to

25  decide whether to litigate an objection to confirmation and

Page 44

1    a reply to it that would otherwise be resolved by the

2    settlement, it appears to me that there is sufficient cause

3    to shorten notice.

4              I have heard Mr. Underwood on objection to the

5    underlying relief and of course read the objection itself.

6    I've also read the Debtor's reply, but I'm happy to hear

7    additional remarks, oral argument in reply to the objection,

8    to the underlying relief that's being sought.

9              MR. ROBERTSON:  Thank you, Your Honor.  Again,

10   this is Christopher Robertson, Davis, Polk & Wardwell, on

11   behalf of the Debtors.

12             Turning to stipulation and order, we believe that

13   entry of the stipulation is clearly in the best interest of

14   the Debtor's estate.  Very briefly, Your Honor.

15             PPLC and certain of the other debtors are named as

16   defendants in the proposed class action, which was commenced

17   in August of 2018 by the government of British Columbia on

18   behalf of all provincial and territorial governments in

19   Canada.  The relief sought in this action is the recovery of

20   healthcare costs expended to treat opioid-related harm in

21   addition to claims for damages arising from alleged breaches

22   of statutory and common law duties.  The Canadian IACs are

23   also named as defendants, as are a number of other

24   manufacturers (indiscernible).

25             The Canadian governmental claimants, in other

Page 45

1    words, the provincial governments that are party to the

2    stipulation and order, each filed proofs of claims in these

3    cases.  The aggregate asserted claim amount is about $85.5

4    billion Canadian, which is approximately $67 billion U.S.

5    currency.

6            The Canadian governmental claimants' claims

7    against the debtors are complex and litigation would entail

8    complicated legal and factual issues, including with respect

9    to causation.

10           However, the Debtors understand that in the

11   context of these cases, the Canadian governmental claimants

12   are principally concerned with reserving their rights as

13   against the Canadian IACs and the Sacklers for claims

14   unrelated to the U.S. debtors.

15           The stipulation and order gives the Canadian

16   governmental claimants comfort that their rights will be

17   preserved as against the Canadian IACs and Sacklers

18   (indiscernible) continuing claims in the stipulation and it

19   gives the debtors and other creditors comfort that estate

20   resources will not be expended in litigating the Canadian

21   governmental claimants' claims.

22           In a nutshell, over $60 billion of claims asserted

23   against the debtors are being withdrawn at no cost to

24   debtors' estates.  In return, the Canadian governmental

25   claimants and the Sacklers agree on the scope of claims held

Page 46

1    by the Canadian government against the Canadian IAC and the

2    Sacklers that will not be released through the bankruptcy

3    proceedings.  Approval of the stipulation and order will not

4    affect any other creditors' rights in any way.

5            Your Honor, there is only one objection to the

6    approval.  I am not going to address the objection's various

7    insinuations, but there are many.  And I am not going to

8    address points that are plainly objections to confirmation,

9    which I believe you just heard Mr. Underwood voice.

10           The only question for the Court is whether the

11   stipulation and order is beneficial to the Debtor's estates,

12   and it unquestionably is.  The objector's arguments to the

13   contrary that the withdrawal of $60 billion of claims

14   asserted by the Canadian government provides no benefit to

15   anyone, and that the agreement with the provincial

16   governments regarding the scope of claims that they and no

17   one else hold against non-debtor third parties will somehow

18   jeopardize recognition of the confirmation order by the

19   Canadian court in the Debtor's ancillary CCAA proceeding are

20   utterly without merit.

21           And if the point was not already clear, I will say

22   it again.  Approval of the stipulation and order will not

23   affect the Canadian municipalities' and first nation

24   creditors' claims at all.  The Debtors, therefore, submit

25   that the stipulation and order should be approved.  I am

Page 47

1      happy to address any questions that Your Honor may have.

2      Counsel for the provincial governments -- you've heard from

3      Mr. Karavolas -- and the Sacklers are in court to address

4      any questions as well.  Otherwise, I would cede the podium

5      to the objectors.

6              THE COURT:  Okay.  All right.  Well, I don't know

7      if -- does anyone else want to address the settlement?

8              MR. KARAVOLAS:  Your Honor, if I may?

9              THE COURT:  Sure.

10             MR. KARAVOLAS:  Thank you, Your Honor,  Nicholas

11     Karavolas again for the Canadian provincial creditors.

12             The Canadian municipalities and first nation

13     creditors' objection, which is styled as a limited objection

14     and reservation of rights, should be overruled for a number

15     of reasons, not least of which is that it questions the

16     motives of the parties, particularly the Canadian provinces,

17     in entering into the stipulation based solely on conjecture

18     and speculation.

19             We can assure Your Honor that the terms and

20     provisions of the stipulation are the product of extensive,

21     challenging, at times tedious arm's length negotiations

22     between the debtors, the shareholders, and the Canadian

23     provinces, the discussion of which actually commenced in and

24     around November of 2020 and the drafting of which started in

25     late April of this year.

1            Contrary to the unsupported allegations of the

2     objectors, from the province's perspective, the settlement

3     is for all intents and purposes a true business procedure of

4     sorts.  And the concept of assuring that the claims of non-

5     debtors related to Canadian activity survived these

6     bankruptcy cases and are not subject to the injunction and

7     relief provisions of the plan is one of critical importance

8     to the Canadian provinces.  The provinces desire this

9     certainty, and the stipulation achieves this purpose.

10    Drafting this concept into the stipulation was no easy task

11    and took a lot of work, but eventually the parties reached

12    terms that they were comfortable with and submitted them to

13    the Court for approval.

14            The Debtors clearly expressed the benefit to the

15    estates.  And as stated in our reservation of rights, the

16    stipulation resolves the provinces, you know, multitude of

17    objections to plan confirmation.

18            The terms of the stipulation we believe are clear.

19    They do not intend to nor do they affect the rights of other

20    creditors or the claims of other creditors.  And

21    accordingly, Your Honor, we respectfully request that the

22    Court approve the stipulation.

23            THE COURT:  Okay, very well.  Thank you.

24            I just want to confirm.  As far as the debtors are

25    concerned, what are the debtors giving up under this

Page 49

1    stipulation?  I guess that's a question for the Debtor's

2    counsel.

3              MR. ROBERTSON:  Your Honor, I think from the

4    Debtor's perspective, the answer is very little, if

5    anything.  Claims are being withdrawn against the estate.

6    The stipulation also includes a release of those claims that

7    the plaintiffs hold against the estate.

8              I think the reason why we engaged in these

9    negotiations for so long with the provincial governments --

10             Mr. Underwood, could you go on mute?  Because

11   there's a lot of feedback, and I think it may be because

12   more than one person other than the Court is not on mute at

13   the time.

14             I apologize for interrupting, but I assume people

15   are having the same feedback problem I am.

16             MR. ROBERTSON:  Thank you, Marshall.

17             Part of the negotiations here, I think a lot of

18   the negotiations here were really around having the

19   opportunity for the provincial governments to participate in

20   the process of refining the plan releases in a way that

21   works for them and incorporates the stipulation.

22             So I think from the Debtor's perspective, this is

23   really as straightforward as $60 billion of claims are being

24   withdrawn to no cost to the estate and it avoids future

25   litigation over the plan and over the claims.

1           THE COURT:  All right.  I mean, I guess that is

2    how I read it, although I guess there is some consequence in

3    the following sense.  The agreement, which is also agreed to

4    by representatives of the Sackler family, side A and B, does

5    subject them to the exposure of potential liability in

6    relation to Canadian -- or entities formed under the laws of

7    Canada or its provinces associated with the debtors, which I

8    guess could conceivably mean there would be less money to

9    collect or fund the settlement that's in this plan.  But on

10   the other hand, the provinces would not be looking to that

11   money in the plan before me.  Is that a fair summary?

12           MR. ROBERTSON:  I think that is a fair summary,

13   Your Honor.  And I would only add that, I think it's

14   obvious, we were negotiating the stipulation with the

15   backdrop of ultimate recognition of the plan and

16   confirmation (indiscernible) Canada.  And so without, you

17   know, sort of getting into more, I don't -- I would leave it

18   at that.  I think it's a fair summary, Your Honor.

19           THE COURT:  Okay.

20           MR. HUEBNER:  Your Honor, may I add to that?

21           THE COURT:  Sure.

22           MR. HUEBNER:  Thank you, Your Honor.  So the

23   Purdue Pharma L.P. is the foreign representative in the

24   Canadian recognition proceeding.  And the Debtors do have an

25   obligation or the foreign representative does have an

Page 51

1    obligation under the stipulation to ensure that the plan --

2    that the confirmation order, rather, that ultimately, you

3    know, if any gets entered in these cases, conforms with the

4    stipulation upon recognition in Canada.  And that is an

5    obligation of the foreign representative.  And that goes

6    beyond plans that are proposed by the debtors in these

7    cases.  Any plan proposed in these cases must conform to the

8    terms of the stipulation.

9           And to go, you know, even further, there are

10   certain obligations to ensure most favored nation treatment

11   for the Canadian provinces and other benefits to the

12   Canadian provinces beyond just simply (indiscernible).  I

13   think to say that the Canadian provinces benefitted from its

14   stipulation by receiving a carveout only is a highly

15   oversimplification of the stipulation.

16          THE COURT:  Right.  But in terms of the economics

17   -- and I appreciate that the debtor's or other plans would

18   need to memorialize this stipulation -- the economics are as

19   set forth on the record.  Right?

20          MR. HUEBNER:  That's correct, Your Honor.

21          THE COURT:  Okay.  All right.  Okay.  So, Mr.

22   Underwood, I don't know if you have anything more to say in

23   response to those remarks?

24          MR. UNDERWOOD:  Yes.  Very briefly, Your Honor.

25   Just simply that it does appear from the third-party

Page 52

1    perspective that the debtors created a plan situation that

2    caused a province, a sovereign entity, to want to withdraw

3    from the jurisdiction of this Court.  It's hard to

4    understand, other than his question of releases, third-party

5    releases, why a foreign sovereign would want to give up

6    essentially money under this plan for I guess significantly

7    less in Canada.  That was the question we raised.  It was a

8    limited objection, and I appreciate the Court's

9    consideration in this matter.  Thank you.

10           THE COURT:  Okay.  All right.  I have before me a

11   motion by the debtors for approval of a stipulation and

12   agreed order by and among them and the Canadian governmental

13   claimants, i.e. the provincial governments listed in the

14   stipulation, as well as representatives of Beacon Company

15   and the Raymond Sackler family which would resolve the

16   Canadian provincial claimants' claims in this or these

17   Chapter 11 cases by the withdrawal of those claims and the

18   agreement that would be reflected not only in the

19   stipulation, but in any plan confirmed in these Chapter 11

20   cases that the non-debtor or non-province parties to the

21   stipulation would be subject to the terms of the

22   stipulation, including the modification of the proposed

23   third-party injunction and third-party claim release under

24   the debtor's plan in these cases as narrowed by Paragraph 2

25   of the proposed stipulation.  Which would, in narrowing the

Page 53

1    proposed release, create a carveout from the release of the

2    defined term Continuing Claims as defined in Footnote 3 on

3    Page 4 of the stipulation, and again, Paragraph 2.

4          The standard for approval of such an agreement, a

5    settlement, is well-established.  The settlement needs to be

6    fair and equitable and in the best interest of the debtor's

7    estate, in this case the debtor's estates, and satisfy the

8    lowest range of reasonableness, taking into account various

9    factors, including the merits of litigation that would ensue

10   if the settlement was not entered into in relation to the

11   benefits of the settlement, the potential duration, expense

12   of such litigation, the interest of creditors, including

13   whether other parties-in-interest affirmatively support the

14   settlements, the competency and experience of counsel

15   supporting, and the experience and knowledge or arm's length

16   nature of the parties' negotiations and the nature and

17   breadth of releases to be (indiscernible) as part of the

18   settlement.

19          See generally In re TMT Trailer Ferry -- I'm

20   sorry, let me start over with that cite.  See Protective

21   Committee of Independent Stockholders of TMT Trailer Ferry

22   Inc v. Anderson, 390 U.S. 414 (1968), and Motorola, Inc. v.

23   Official Committee of Unsecured Creditors (In re Iridium

24   Operating LLC) - 478 F.3d 452, 462 (2d Cir. 2007), as well

25   as more recent caselaw such as In re Windstream Holdings

Page 54

1    Inc. and In re Sabine Oil and Gas Corp, 555 B.R. 180, 257

2    (Bankr. S.D.N.Y. 2016).

3              Here, I believe the benefits of the settlement are

4    clear.  Over $60 billion of claims would come of the

5    debtor's books, and the cost of that settlement would be

6    borne not by the debtors but rather potentially by third

7    parties, the entities against which the Continuing Claims

8    are preserved under the settlement.  Indirectly, that may

9    affect those entities' ability to fund their agreements

10   under the plan that's presently before the Court, or any

11   other plan.  But to me, that is a clear tradeoff that is

12   beneficial to the Debtors.

13             There's really no argument to the contrary in the

14   one objection that was filed to the request for approval of

15   the settlement, which was filed by certain non-provincial

16   governmental claimants and first nation creditors that have

17   filed proofs of claim in these Chapter 11 cases.  primarily

18   those objectors question the benefits to the non-debtor

19   parties to the settlement, namely the Canadian provinces,

20   which is not my purview to consider under the authorities

21   that I have previously cited.

22             I trust, however, that as the conglomeration of

23   all of the Canadian provinces, represented by capable and

24   sophisticated counsel, they have considered and acted

25   accordingly the reasons why they have chosen to enter into

Page 55

1    the settlement.  And I accept based on this record, which is

2    really not at all controverted, that the negotiations over

3    the settlement agreement were in fact conducted by

4    sophisticated parties represented by capable counsel and at

5    arm's length.

6            There is a suggestion in the objection that

7    somehow this settlement might create a problem in

8    recognition of any plan that would ultimately be confirmed

9    in these cases by a Canadian court, but no real reason is

10   given for that other than questioning the provinces'

11   judgement.  Although, again, that judgement is not

12   questioned with any supporting arguments.

13           In any event, it appears to me that the settlement

14   actually thoughtfully addresses the rights of the Canadian

15   provinces, both here and in Canada, and the debtor's rights

16   in relation to the Canadian provinces' rights in Canada and

17   in these cases.

18           I will also note that the stipulation is quite

19   clear that the parties' agreement does not affect the rights

20   of any other parties in interest in these Chapter 11 cases,

21   including, without limitation, the objectors to this motion,

22   who can still pursue their objections to the Debtor's

23   Chapter 11 plan and any other Chapter 11 plan filed in these

24   cases.

25           So I will so order the stipulation granting the

1    Debtor's motion for approval of it and overrule the

2    objection by the governmental and first nation objectors.

3            So you can email the stipulation and order to

4    chambers in Word format so that it can be so ordered and

5    entered.

6            MR. ROBERTSON:  Thank you, Your Honor.  I would

7    now proceed to the confirmation pretrial conference.  I will

8    cede the podium to my colleague, Mr. Kaminetzky.

9            THE COURT:  Okay, very well.  Thank you.

10           MR. KAMINETZKY:  Good morning, Your Honor.

11   Benjamin Kaminetzky of Davis Polk & Wardwell for Debtors,

12   Purdue Pharma.

13           THE COURT:  Good morning.

14           MR. KAMINETZKY:  Can you hear me okay?

15           THE COURT:  I can hear you fine, thanks.

16           MR. KAMINETZKY:  We are here this morning, as you

17   know, for the final pretrial conference in advance of plan

18   confirmation, which is scheduled to begin this Thursday

19   morning, August 12th.

20           Before I proceed to address the bulk of what it is

21   -- I'm sorry, I'm getting a bunch of feedback.  Could folks

22   go on mute --

23           THE COURT:  Yes.  Everyone should put themselves

24   on mute if they are not already on mute so that we can hear

25   each other clearly.

1              MR. HUEBNER:  Your Honor, just one suggestion.

2     There is a person dialing in named Kimberly Snow who is not

3     on mute.  There is another entry also with the last name

4     Snow.  It's possible because that's one family or group,

5     they're on from two phones from the same location.  It's

6     possible -- I see there's also Ashley -- and I'm sorry, I

7     don't have my reading glasses -- there are a variety of

8     people not on mute, is the short answer.  And I think that's

9     going to be a big problem.

10             THE COURT:  We'll mute everyone from here.  I'll

11    just ask you to unmute yourself -- they can do that, right,

12    Arthur -- if you want to speak.  Okay.

13             MR. ROBERTSON:  They muted you, Your Honor.

14             THE COURT:  Oh, we'll they'll -- don't mute me,

15    Arthur.  Okay.

16             MR. HUEBNER:  To back up Mr. Troop, we now can't

17    hear the Court.  The Court must have been muted, although

18    the system is still showing several individual participants

19    --

20             THE COURT:  Now you can hear me, right?

21             MR. HUEBNER:  Yeah, exactly.  We can.

22             THE COURT:  Okay.  All right.

23             MR. HUEBNER:  But for example, again, Kimberly

24    Snow is not muted.  I'm just sort of quickly flipping the

25    screens.

1             THE COURT:  No, I think -- I'm being told that

2      everyone is muted and have to unmute themselves if they are

3      going to speak.

4             MR. HUEBNER:  Perfect.  Okay.  I will go back on

5      mute myself.

6             THE COURT:  Okay.

7             MR. KAMINETZKY:  Okay.  I hope I'm not on mute

8      now.

9             THE COURT:  No, I can hear you, Mr. Kaminetzky.

10            MR. KAMINETZKY:  Okay, thank you.  Okay.  So

11     before I proceed to address the bulk of what's on for

12     discussion today, I'd like to just briefly update the Court

13     on a resolution of two plan objections subject to final

14     documentation and detail.  It's the objections of the

15     debtor's former CEO, John Stewart, which was filed at Docket

16     3273, and that of the Debtor's former CEO, Mark Timney,

17     which was actually resolved without the need for Mr. Timney

18     to formally object.  So just a bit of good news.

19            So, moving on from the good news.  A lot has

20     occurred in the last few days.  Allow me to update the

21     Court.  And with the Court's permission, I will first

22     address the evidentiary portion of the hearing and then

23     proceed to discuss oral argument on the various issues

24     raised by the objectors.

25            So on Thursday afternoon, August 5th, the Debtors

Page 59

1    and certain plan supporters filed their respective briefs in

2    support of confirmation and in response to the objection.

3    Along with their brief, the debtors filed seven face

4    declarations which serve as those witness' direct testimony.

5            The Debtors have previously served their expert

6    reports, that is their experts' direct testimony, around

7    June 15th, almost eight weeks ago.

8            As far as the other plan supporters, the UCC, the

9    AHC, the MSGE, the various ad hoc groups of individual

10   victims and of hospitals and of NAS children and of both

11   sides of the Sackler family, in addition to their briefs,

12   collectively filed 13 fact declarations which supplemented

13   their collective 12 expert reports, none of which were

14   served later than a month ago.

15           Finally -- I'm sorry?  Finally, the objecting

16   parties filed just one fact declaration which was filed by

17   Marilyn on Friday per an extension that we happily granted.

18           Now, the Debtors immediately compiled all of this

19   information on each of these potential witnesses and on

20   Friday morning reached out to each of the objectors and

21   supporters and asked for each parties' estimate of how much

22   cross-examination time they would need with each witness.

23   You requested responses by noon on Sunday.  And before I

24   forget, I want to thank each of the parties for their

25   cooperation.  This was a grueling schedule and process and

Page 60

1    we all are working literally around the clock, including

2    nights, weekends, et cetera.

3           I'm not exaggerating when I say that we were

4    literally floored by the responses we received to our

5    outreach.  As detailed in the chart we sent to Your Honor

6    last night, taking the low end of these estimates, the

7    parties estimate over 164 hours of time, or assuming seven

8    on-the-record hours a day, roughly 23-and-a-half days just

9    for witness testimony.  If you add 25 percent to this for

10   redirect, recross, and any questions from the Court, which

11   we believe is probably a conservative estimate, that comes

12   to approximately 205 hours and over 29 trial days just of

13   evidence.

14          The objecting states of Connecticut, Maryland,

15   Oregon, and Washington account for 137 of the 164 hours we

16   just discussed, or almost 84 percent of the total requested

17   time.

18          Breaking this out another way might be helpful,

19   too.  And, again, Your Honor may want to reference the chart

20   we attached to Mr. Tobak's email last night.  There are two

21   types of witnesses, witness, whether expert or fact, who

22   submitted written declarations which would be their direct

23   testimony, and hostile witnesses who are being called for

24   rebuttal.

25          With respect to the former, witnesses who

Page 61

1    submitted direct, the parties are requesting approximately

2    100 of the 164 hours.  Rebuttal witnesses account for 64

3    hours or a full nine additional trial days, still without

4    counting redirect, recross, and questions from the Court.

5            Now, with respect to witnesses who submitted

6    direct testimony, any party certainly has the right to

7    cross-examine that person within the scope of his or her

8    direct testimony.  And if the parties abide by this basic

9    rule, we can have no problem.

10           But as an aside, it is very hard to believe that

11   that this is the purpose given the limited number of the

12   direct -- the limited nature of the direct, the fact that no

13   parties showed any interest in this testimony until

14   yesterday.  Not a single deposition of any of the debtor's

15   experts or witnesses were noticed.  And the enormous amount

16   of estimated time that people are predicting or estimating

17   they need with these witnesses also seems rather hard.

18           But, again, the witness's direct is certainly fair

19   game.  And maybe I'm missing something as to the extent that

20   someone could legitimately spend time crossing within the

21   proper scope.  And if someone ventures beyond the direct, I

22   guess we can deal with that during the relevant -- during

23   the hearing via objection.

24           But the seven purely rebuttal witnesses, which

25   account for 64 hours of estimated evidence time, I believe

Page 62

1    are addressing purely opioid merit issues that no one is

2    asking this Court to decide.

3            Now, to be clear -- and let me make this clear --

4    the Debtors believe that holding a mini trial, or perhaps at

5    this point we could call it a maxi trial on the merits as

6    the objecting states seem to intent, would conclusively

7    demonstrate the wisdom of the settlement contemplated in the

8    plan.  The opposing states and the Sackler families fiercely

9    fighting on the merits for weeks on end would all but prove

10   the conclusion that any real merits litigation on these

11   issues would be value-destructive, protracted, uncertain,

12   complex, slow, and weigh heavily in favor of approving the

13   current shareholder settlement.

14           So as a litigator whose myopic task is to win

15   confirmation, this is actually a real gift.  But Your Honor

16   will have to determine whether this will be helpful to the

17   Court's analysis of the plan and whether it is worth

18   massive, massive drain on the resources of the estate that

19   would otherwise go to opioid abatement.

20           However, to be crystal clear, if there is any

21   doubt as to whether Debtors would be asking the Court to

22   make any finding regarding the strength or weakness of the

23   merits of the states' claims against the Sacklers, those

24   doubts have now been definitively put to rest now that the

25   Debtors have filed its briefs and submitted its direct case.

Page 63

1    And I include, Your Honor, our arguments with respect to

2    1129(a)(7), (indiscernible), et cetera.  We filed our brief

3    here with the Court and everyone else can look at it.  And

4    we do not address the merits of the underlying opioid

5    litigation except to say -- to make the very obvious point

6    that success is far from assured and that there are novel

7    legal theories.

8            Now, to put the requested time for cross-

9    examination further in context, in the California opioid

10   trial against Endo, Teva, Johnson & Johnson, and Allergan

11   that recently concluded, there was about 28 days of trial

12   testimony.  And that included live direct examination.  And

13   here, if folks get what they want, even on the low end of

14   their estimates, we would get 29 days of testimony in a

15   hearing, Your Honor, where all parties agree is not one in

16   which the merits should be decided.

17           So given the incredible amount of time proposed

18   for what appears to be to the debtors and other parties to

19   be merits witnesses, but cognizant of the incredible cost to

20   the estate that every day of the hearing incurs, the

21   Debtors, the UCC, the AHC, and the two sides of the Sackler

22   families are now working on a stipulation that would provide

23   that any party's silence during the opioid merits part of

24   the evidentiary presentation, should Your Honor let it go

25   forward, is without prejudice to any future litigation among

Page 64

1    the signatory parties or their successors.

2            To put it bluntly, the UCC and most of the states

3    do not want to risk prejudice if they were ever to need to -

4    - if there were ever to be a snapback litigation against the

5    Sackler families under the terms of the shareholder

6    settlement agreement or for any other reason just because

7    they are trying to preserve value of the state by refraining

8    from joining the donnybrook that the opposing states are

9    requesting.

10           So objecting -- just one other point with respect

11   to evidence.  Objecting states' and merits testimony aside,

12   I do need to address an issue with respect to the requested

13   cross time that I believe the Court may want to address

14   sooner rather than later.

15           The Canadian municipality and First Nations

16   creditors, which we just heard from, which I will call the

17   Canadian Munis for ease of reference, are pursuing

18   fundamentally narrow and legal objections articulated in

19   their 12-page objection to confirmation.  The Debtors

20   strongly disagree with this objection for the reasons

21   addressed in our reply, and I won't address the merits of

22   the arguments now.

23           But as relevant to our discussion today, the bases

24   for both the objection and the Debtor's reply are entirely

25   legal in nature.  The Canadian Munis raise not a single

Page 65

1    factual dispute in their very short objection.  Nonetheless,

2    they alone seek 12 hours, almost a full two days of witness

3    testimony on cross-examination, which would amount to an

4    hour for each page of their objection.  There is simply

5    nothing in their objection that would warrant any cross-

6    examination, let alone 12 hours of time cross-examining 13

7    different witnesses testifying in support of the plan.

8           So I could pause now, Your Honor, because that's

9    the end of my presentation with respect to testimony time.

10   I could then shift to oral argument.  But perhaps I should

11   pause if Your Honor wants to hear from others about the

12   (indiscernible).

13          THE COURT:  No.  I think we should focus on the

14   factual portion of the hearing first.

15          So I have reviewed the chart that was attached to

16   I guess Mr. Tobak's email, or maybe it was attached to Mr.

17   Kaminetzky's email.  Anyway, it was attached to an email

18   that went to the parties participating in the confirmation

19   hearing.  And obviously I do have serious questions about

20   the basis for the time listed here.  And we could do this in

21   a couple of ways.  I suppose I could go through each witness

22   and ask the parties why they think they need that much time

23   given what the witness is testifying to.  But I guess I do

24   have -- well, why don't we leave it at that?

25          So I am happy to hear from the parties who have

1    been designated substantial time for witness examination,

2    and that probably should begin with the objecting states.

3         So do I have counsel for the objecting states on

4    the phone at this point?  I saw Mr. Gold about -- oh, there

5    he is.

6         MR. GOLD:  Yes, Your Honor.  I guess I was a

7    little uncertain which of us was going to be going first.

8         MR. GOLD  Thank you, Your Honor.  (indiscernible).

9    Can you hear me clearly?

10        THE COURT:  Yes.

11        MR. GOLD  Thank you, Your Honor.  Your Honor, I

12   would like to just make a few points in general regarding

13   what's been stated.  The first is that we received, I don't

14   know, maybe a thousand pages worth of paper that was filed

15   on Thursday when the proponents of the plan for the first

16   time set forth their theory of the case in connection with

17   this confirmation hearing and how they intended to present

18   it.

19        So we have attempted in a shot time to react to

20   what they put forward.  As Mr. Kaminetzky properly stated,

21   working around the clock, nights and weekends, to try to put

22   this together.

23        My second point is that estimating time in the

24   context of a Zoom hearing is a highly, highly uncertain

25   process.  I would note that this telephonic hearing has been

Page 67

1   going on for approximately an hour now.  And I think if

2   anyone had asked me ahead of time how long it would take to

3   cover (indiscernible), I would have thought it would have

4   been a lot faster.  And probably in the old days when it was

5   in person, it would have been a lot faster.

6           So asking us to estimate how long the testimony is

7   going to take is a highly uncertain process.  We will

8   confess to everyone (indiscernible) to take this with the

9   goal of overestimating rather than underestimating so that

10  we would not be in a position afterwards where we were

11  seeking more testimony and someone says but you thought it

12  would take less time.

13          It is possible if we continue to work on our

14  preparation for the witnesses that the amount will come down

15  as --

16          THE COURT:  No, it is more than possible.  It is

17  certain.  And I'm going to cut this short.  I have given

18  more time, reserved more time for this confirmation hearing

19  than I've had in any trial since I went on the bench in

20  2002.  And I have had, as many of you know, very complex,

21  fact-based trials that involved extensive testimony as to

22  valuation and as to settlements and valuation related to

23  settlements.  I have never had a trial longer than five

24  days.

25          I am reserving the following days, and you are,

1    all of you, to fit within that time.  Period.  Because I

2    believe that any capable lawyer can do so.

3            First, two days this week.  The 12th and the 13th.

4    Second, four days the following week, 16th through the 20th,

5    although we do have, and it's probably half a day at most,

6    the Purdue omnibus date on the 16th.  The parties should

7    consider whether they really need that time or it can be

8    done for the confirmation hearing alone.  And finally, four

9    days the week of August 23 through 27.

10           Now, the issues here, having reviewed the

11   objections and the Debtor's reply are limited.  They go to

12   the merits of the settlement of the Debtor's claims, the

13   Debtor's own claims under TMT Trailer Ferry and Iridium.

14   They have been limited by the Debtor's choice as to the

15   analysis of third party claims against the Sacklers.

16           Since the Debtor is giving up all of the equity to

17   creditors except to the extent there is an objection as to

18   treatment, such as West Virginia's, the notion of valuation

19   testimony as to the Debtor's net worth being anything more

20   than a relatively brief period for cross-examination makes

21   no sense whatsoever.  There is no absolute priority fight

22   happening here, in other words.

23           And as far as -- I mean, I just -- look, I

24   appreciate that you had a short time to focus on this.  No

25   doubt.  And it's probably the safer course to put in six

Page 69

1    hours, for example, for Jesse DelConte and six hours for

2    John Lowne and six hours for John Dubel when we've already

3    had an examiner look at the independent board is

4    preposterous.  Similarly, eight hours for the Committee's

5    representative to talk about how the Committee analyzed the

6    settlement?

7            So I've given you the parameters.  I will simply

8    cut people off if they are wasting time.  I've given you the

9    days to fill in, and you will fill them in accordingly.

10   You're going to have a couple more days to do it before we

11   begin on the 12th, and I expect people to act consistent

12   with what I said.

13           If the Debtors are not going to argue the merits

14   of third-party claims against the Sacklers, you surely do

15   not need 64 hours of testimony by them or their

16   representatives.  The debtors have the burden of proof on

17   the plan, including 1129(a)(7), including the so-called

18   Ditech issue.  And they've chosen to pursue it the way they

19   have.  We had this discussion last week, and I think I was

20   quite clear then in saying that the parties could see what

21   type of testimony they would need in light of what the

22   Debtors filed.  The Debtors have filed what they filed, and

23   I certainly don't see the need for 64 hours plus another

24   apparently roughly 30 hours of cross dealing with claims

25   that the Debtors are not going to be addressing.  They've

 1   made that choice.

 2        So I think in determining the time, you will know,

 3   because I will tell you that this is irrelevant.  I would

 4   urge you in your planning to do that work on your own.

 5   That's what would save time at the trial.

 6        I also will not permit cumulative cross-

 7   examination by counsel engaging in the same questions on

 8   behalf of their clients which have already been addressed in

 9   questioning by other parties.  So I'll cut that off, too.

10   And in your planning, you should assume that.

11        So I'm not sure what else we can do at this point

12   other than that as far as the witness examinations as

13   opposed to final argument.

14        MR. GOLDMAN:  Your Honor, Irve Godman from the

15   State of Connecticut.  Could I please be heard?

16        THE COURT:  Sure.

17        MR. GOLDMAN:  Thank you.  I'm going to direct my

18   comments to one specific filing that was made on August 5th.

19   And that is the declaration of Gregory Joseph which was

20   submitted on behalf of Side B.  That submission, which is a

21   270-page document with proposed findings of fact and

22   conclusions of law consisting of 766 paragraphs is in

23   addition to the statement that the Side B family filed in

24   support of confirmation, which is itself 138 pages in

25   length.

Page 71

1          There is nothing in the confirmation protocol

2    order that authorizes such a filing.  That order provides

3    the declarations were supposed to be filed, served, and

4    submitted to witnesses that a party intended to call in

5    their cases in chief.  And as I understand it, Side B does

6    not intend to call Mr. Joseph.  His declaration and the

7    accompanying proposed findings and conclusion of law is also

8    not on Side B's witness list, or exhibit list, I should say.

9          Now, the confirmation protocol order does provide

10   for filing of the replies by supporting parties to

11   objections to (indiscernible).  But as I mentioned, Side B

12   has filed a separate 138-page reply, if you could call it

13   that, it was framed as a statement in support of

14   confirmation.

15         So I would maintain that the filing of this

16   declaration is not authorized by the protocol order and puts

17   the objecting states in an unfair and disadvantaged

18   position.  A provision of this type of declaration where in

19   the confirmation protocol (indiscernible) could have

20   prepared one that connected all of the evidence we have to

21   Sackler liability.  But since there is no provision like

22   that, we did not take it upon ourselves (indiscernible).

23         So I think that really needs to be addressed.  I

24   think it's the source of some angst on our part in framing

25   our --

1           THE COURT:  No, that's a fair point, Mr. Goldman.

2     And I have refrained from looking at that declaration so far

3     because it does stand out.  It's obviously not a witness

4     declaration.  It attaches, however, as you say, lengthy

5     proposed findings and conclusions.  I'm not sure how it is

6     intended by the Debtors or their allies seeking confirmation

7     of the plan to be used in the confirmation hearing.  And I

8     agree with you, at least I hope I agree with you, that

9     depending on the answer to that question, a lot of the

10    proposed testimony by the objecting states would come off

11    the boards.

12          So I don't know if it's a question for Mr.

13    Kaminetzky first or Mr. Joseph, but I think the two of you

14    should address that.

15          MR. KAMINETZKY:  I am happy to address it.  It

16    wasn't filed by the Debtors.  It wasn't, you know,

17    encouraged by the Debtors, it wasn't reviewed by the

18    Debtors.  I don't know what more to say.

19          THE COURT:  Okay.  All right.  The debtors aren't

20    making those types of -- well, I don't really know what

21    those types of arguments are because I haven't really looked

22    at it yet, in part because of the chambers conference we

23    had, the telephonic chambers conference we had last week, I

24    knew that there might well be an issue with regard to

25    something like this.  So I haven't looked at it yet.

1           MR. KAMINETZKY:  Your Honor, if I may --

2           THE COURT:  We'll let Mr. Kaminetzky finish his

3    thought and then...

4           MR. KAMINETZKY:  Again, the debtors were

5    extraordinarily careful, like Your Honor said.  We chose the

6    train that we're riding, and that's what we're doing.  And

7    the train we're riding is not the merits.  We are not saying

8    that the merits against the Sacklers are strong or are weak.

9    We have other bases for the confirmation of these plans.

10          So you saw in our brief, a long brief, we just

11   simply do not go there.  And we've done that deliberately

12   and with a full and -- you know, after full analysis and

13   review of the relevant elements of plan confirmation.

14          THE COURT:  Okay.  So, Mr. Joseph, you were going

15   to say something I think.

16          MR. JOSEPH:  Thank you, Your Honor.  The

17   declaration specifically states we are not asking the Court

18   to find facts on the ultimate merits.  It's being offered,

19   as our brief says, only as hypothetical to show you what we

20   would submit on the merits so that the Court has a basis for

21   determining that substantial defenses exist.  That's the

22   only purpose.  That was done at the suggestion that the

23   Debtors made to us some weeks ago that everything should be

24   done hypothetically.  So we put in no witness testimony on

25   the merits.  All of our witnesses are only talking about

Page 74

1    plan issues.  And we put in a brief and the attorney

2    declaration so that the Court could see that there is a

3    basis for a determination that there are issues with the

4    claims.  That's --

5              THE COURT:  Well, I understand the brief.  It's

6    just that proposed findings at least have the suggestion

7    that notwithstanding the introduction, which I gather is in

8    your covering declaration, that this is just hypothetical

9    depending on how a court might rule at some point on the

10   findings.  Right?

11             MR. JOSEPH:  Yes, Your Honor.  It provides the

12   factual basis for the brief.  That's just a place to --

13             THE COURT:  But you're not trying to establish the

14   facts.

15             MR. JOSEPH:  No.  Just to show you that the

16   evidence exists.  That's where the evidence is.

17             THE COURT:  Well, except I'm not taking it as

18   evidence, so I don't know how it exists.  I mean, I could

19   see two ways to go on this.  I could see excluding it and

20   just having the brief, or I could say, look if the states

21   want to also submit hypothetical evidence, they could do

22   that before I end up ruling on confirmation at some point in

23   the week of August 23.  And I don't know if you want to do

24   that or whether it would make more sense just to exclude it.

25             MR. GOLDMAN:  Your Honor, I would say it would

Page 75

1   make more sense to exclude it.  I think that we would be

2   disadvantaged in the sense of time.  Because, unlike Mr.

3   Joseph, we didn't have time to have an army of professionals

4   put together this --

5           THE COURT:  Well, I mean, I posed it as an

6   either/or.  I'm not going to get into whether the states

7   involved here have taken their positions on the plan on

8   something other than a thorough assessment of what they

9   believe these third-party claims are worth, which would

10  strike me as a very odd thing for the state attorney general

11  to have done, but I guess it's conceivable.

12          So, look, I haven't reviewed it.  I don't think

13  there is a motion in limine, although I think my clerks told

14  me one might have either been filed or there are inquiries

15  about it.  I can give you my preliminary views today on it.

16          Again, I haven't read it because I figured we

17  would be talking about it.  But it is an odd -- the brief

18  refers to the arguments that the Sacklers would make.  The

19  proposed findings I think do raise the specter of, like, why

20  are they there other than to suggest evidence and that

21  there's no -- there will be no evidence.  So my inclination

22  at least for now would be to exclude it unless someone wants

23  to chime in.

24          MR. GOLDMAN:  If Your Honor is not interested in

25  reading them, then I think excluding them makes find sense.

Page 76

1    We just wanted the Court to know that there is a factual

2    basis for what was say in the brief.  That's really the only

3    purpose for that.

4              THE COURT:  Okay.  But again, I'm not taking

5    factual testimony on it, so -- just as I'm not taking

6    factual testimony on the states' assertions regarding the

7    Sacklers in light of that.

8              MR. ROBERTSON:  And the reason why, Your Honor,

9    that the Debtors are -- I don't know what the right word is

10   -- agnostic as to this is because we think that even without

11   this, there's plenty of evidence that can be pointed to to

12   show the very uncontroversial point we believe that

13   litigation among the states and the Sacklers would be hard-

14   fought, long, expensive, time-consuming, and everything

15   else.  I think in fact everyone would, you know, after

16   sitting through this hearing would stipulate to that.

17             So that's why I think this may be, you know, kind

18   of much ado about very little.

19             MR. EDMUNDS  Your Honor --

20             THE COURT:  My -- go ahead.  I'm sorry.

21             MR. EDMUNDS:  I'm sorry.  Just very briefly.

22   Brian Edmunds for the State of Maryland.  I just wanted to

23   point out I agree with everything Mr. Gold and Mr. Goldman

24   have said about Mr. Joseph's declaration and what is

25   incorporated within it.  There are a couple of other points

Page 77

1   in the record where the same kind of evidence gets in.

2           THE COURT:  Okay.  Before we get to that, I just

3   want to sort of close the loop on the proposed findings

4   declaration.  I will assume that it will not be part of the

5   record for the confirmation hearing.  If someone wants to

6   file a pleading to say that it should be, they should really

7   do that before the -- by the 11th and state their reasons.

8   Otherwise I -- that's how I'm going to treat it.  And I'm

9   doing that because there really is no formal motion before

10  me, but it's not being offered as evidence.  So I don't

11  think you need a motion in limine, but I appreciate, again,

12  that people were working on these things over the weekend

13  and, you know, this is just my view of it, and I think it's

14  the right one.  But I'm going to give people a day or so to

15  decide whether they want to press the issue further.

16          So go ahead, Mr. Edmunds, on the other points you

17  were going to raise.

18          MR. EDMUNDS:  Your Honor, there are not other

19  points.  There are just a few other items in evidence that

20  we may include in that pleading that you just mentioned and

21  that are probably best reserved for doing --

22          THE COURT:  Okay, all right. That's fine.

23          MR. EDMUNDS:  But, Your Honor, if I may, the State

24  of Maryland has filed a conclusory affidavit from an

25  investigator asserting claims against the Sacklers.  And I

Page 78

1    would also -- and if everything is withdrawn, it's

2    withdrawn.  I would assume this has an impact then on the

3    cross-examination.  All the witnesses called for cross-

4    examination on the merits of the underlying opioid claims by

5    the objecting states.

6         THE COURT:  Well, I don't -- let me just -- who is

7    the -- is the investigator on the witness list?

8         MR. EDMUNDS:  He is.

9         THE COURT:  Okay.

10        MR. EDMUNDS:  Your Honor, if I may, we did file a

11    declaration of Mr. Brian Sheldon, who was our investigator.

12    His declaration is in part responsive to what we anticipated

13    because we had some of it in advance from the Sackler

14    families.  And I would think that some of that will not be

15    needed based on what Your Honor has said today.  But there

16    are other parts of it that I think go directly to the status

17    of our claims and our litigation that I think are small

18    points that would require Your Honor to resolve the merits.

19    So I think that --

20        THE COURT:  Well, what I suggest on Mr. Sheldon is

21    that you and the Debtor's counsel and the Sackler's counsel

22    discuss what is coming out, see if you can agree on that.

23    And in light of those discussions, I think we can see what

24    if anything anyone from the Sackler side would be testifying

25    to.  I have a sense it's probably fairly minimal.

1          MR. EDMUNDS:  You would be right, Your Honor.

2    Thank you.

3          THE COURT:  Okay.  And I think that would in all

4    likelihood mean that the 64 hours of testimony on Page 2 of

5    this chart will probably come down to, you know, maybe half

6    an hour at most is my guess.  But we'll see after you have

7    those discussions.

8          And again, we covered this in the chambers call

9    last week.  I had a feeling that you wouldn't be able to

10   completely resolve it until today, and I think it's probably

11   been resolved by about 95 percent or maybe more.  But you

12   should discuss that remaining testimony.

13         MR. HUEBNER:  Your Honor, it's Marshall Huebner.

14   Just one small process point, as I don't think we'll have

15   the transcript in time.  I don't want there to be ambiguity.

16         I think Mr. Edmunds said -- based on what he said,

17   I want to make sure we all heard it the same way, which is

18   that things like the findings of fact or the conclusions of

19   law that are proposed, and obviously the Debtors do not

20   remotely agree with attached to Mr. Joseph, those were

21   presumptively excluded.  And it's only if someone on the

22   Sackler side believes that they need to press forward with

23   them, they will file the motion.  It's not that Mr. Edmunds

24   or someone else has to file a motion to exclude them.

25   You've essentially synthetically ruled on a synthetic sort

Page 80

1    of motion in limine.  Because in fact we all agree, as Mr.

2    Kaminetzky pointed out, that through the looking glass

3    quality of this, everyone on the planet agrees that the

4    Sacklers believe that they would mount a furious defense and

5    they believe or advocated they would be vindicated and that

6    the estates and the AHC and the UCC and MSG and MSCG and the

7    remaining objectors and everyone else agree that we would

8    litigate multibillion-dollar claims against them for a very

9    long time that we believe have great merit, which is why

10   we've been trying for weeks to get people just to agree to a

11   -- we all agree that this would be brutally hard fought --

12            THE COURT:  Okay --

13            MR. HUEBNER: -- incredibly complicated --

14            THE COURT:  I just want to go back to your first

15   point, Mr. Huebner, which is that there really doesn't need

16   to be a motion in limine on this point since it really isn't

17   evidence, but I am giving the Sacklers time to say, you

18   know, Judge, you missed something, there's something in here

19   that should be part of the record.  Although, in all

20   likelihood, I would deny it.

21            MR. HUEBNER:  Perfect, Your Honor.  Thank you.

22   That's all I wanted to clarify for everybody's benefit.

23            THE COURT:  Okay.

24            MR. GOLDMAN:  Your Honor, one other quick -- not

25   on this subject.  It would help us greatly, and I don't know

Page 81

1    whether that the Debtor and other parties could do this, if

2    they could provide us the order in which they intend to call

3    their witnesses, if that's an agreeable --

4              THE COURT:  Yeah.

5              MR. GOLDMAN:  -- (indiscernible).

6              THE COURT:  That makes sense.  I agree with that,

7    and we need to have that anyway, because you need to get the

8    witnesses primed to testify on Zoom.  So that -- I'm sure

9    that'll happen.  Mr. Edmunds, you were going to say

10   something, too?

11             MR. EDMUNDS:  Your Honor, I'd just note again,

12   there's a few other pieces.  There's a declaration filed by

13   Debtors, Mr. John Dumel -- Dubel, rather, and a few expert

14   reports filed by either side of the Sackler family, and I

15   think we'll just note that (sound drops) in a motion or that

16   -- we don't have to discuss (sound drops) on the record and

17   --

18             THE COURT:  Okay.  All right.

19             MR. EDMUNDS:  But I --

20             THE COURT:  But again, I mean, I think there's a

21   distinction here between the Debtors' claims against the

22   Sacklers and third-party claims against the Sacklers, and it

23   seems to me that most of the 64 hours on Page 2 of this

24   chart go to the latter point, and given what we just went

25   through, the Debtors are not really pushing that issue

1    directly.  So, I would expect, given, you know, a several

2    hundred-page report and the discovery taken by the Creditors

3    Committee, that the testimony on the Debtors' claims that

4    are being settled under the plan would be a lot shorter than

5    is listed here on this chart.

6            MR. EDMUNDS:  Understood, Your Honor.

7            THE COURT:  Okay.

8            MR. GOLDMAN: Your Honor, I don't mean to belabor

9    the point here, but I -- and I know I've come to the case

10   much later than most --

11           THE COURT:  I'm sorry, who is -- I can't see whose

12   speaking.

13           MR. GOLDMAN:  I'm sorry, Your Honor, it's Irve

14   Goldman again --

15           THE COURT:  Okay, sorry.  I can see you now, yeah.

16           MR. GOLDMAN:  Yeah, I should've identified myself.

17   And this may be the result of my coming late to the case.

18   The -- obviously Side A and Side B have submitted a

19   substantial amount of evidence on their list, some of which

20   is -- appears to be for the purpose of exonerating the

21   Sacklers on the third-party claims, not the Debtors' claims,

22   and so that also accounted for our response in the sense

23   that we felt we had to meet them.

24           The other thing that I found confusing was that,

25   obviously, there are parties in interest, but they didn't

Page 83

1    intervene in the contested matter, which is the confirmation

2    hearing and I'm just wondering how that is going to work,

3    that if the Debtors don't submit evidence on a point but

4    then the Sacklers get to do that, as parties to

5    confirmation, it all becomes part of the record, yet they

6    haven't intervened in the contested matter.

7           THE COURT:  I mean, they are shareholders, right,

8    so they're parties in interest that way, and again, it is

9    not unusual for the non-debtor party to a settlement to

10   remind the Court that as far as they're concerned, they're

11   also giving up value for the settlement.

12          So, any judge will take some level of assertions

13   like that, but as I understood it, at least from our

14   conference last week, the parties in support of the plan,

15   and that would include the Sacklers, were not, unless they

16   were, in essence, forced to by the states, going to be

17   submitting any really material testimony or factual record

18   as to the claims against the Sacklers by third parties.

19          MR. HUEBNER:  And Your Honor, it's Marshall

20   Huebner.  Just to help on that for a minute, I mean, for the

21   avoidance of doubt, I mean, the Debtors have not ever sought

22   to bar basically anybody from participating in these

23   bankruptcy cases.  The definition of party in interest under

24   the Bankruptcy Code, the rules, is extremely broad.  We are

25   actually, of course, compelling the Sacklers to waive

Page 84

1    virtually all claims against the estate.

2         They have actually filed contingent claims.  We,

3    of course, never would've occurred to us in a million years,

4    asking individual states to formally intervene in adversary

5    proceedings.  People filed their objections to confirmation

6    and the like, and I think that's, frankly, how bankruptcy

7    cases always work, because that's how the Bankruptcy Code

8    works in terms of the definition of party in interest.

9         I don't want there to be any implication that any

10   party in this case got any sort of procedural easy pass, you

11   know, to get into a hearing.  No one has ever been forced to

12   formally intervene in conformation, and frankly, although it

13   seems bizarre because we think of them as defendants, the

14   Sacklers are actually contingent creditors of the estate and

15   have filed claims preserving those claims, so I don't think

16   there's any world, technical or otherwise in which they

17   could (indiscernible).

18        I think Mr. Goldman was more asking a question

19   than raising sort of an attack or a concern, but there's no

20   world in which I think one could allege that pretty much

21   anybody who filed a pleading is simply not allowed to be

22   heard at confirmation.

23        THE COURT:  Well, I mean, there are standing

24   issues, but there's not an issue here as to the Sacklers'

25   standing, given that they're shareholders.  I mean, let

1    alone, you know, to the extent some of them have filed

2    proofs of claims, but I want to go to Mr. Goldman's other

3    point.  I have not gone through the pleadings filed by the

4    Sacklers.  I don't know what evidence you're referring to,

5    other than the proposed findings that we've already

6    discussed that raises, in your mind, factual issues as to

7    the validity of third-party claims against the Sacklers.

8            MR. GOLDMAN:  Just off the top of my head, Your

9    Honor, the -- a number of compliance reports were --

10           THE COURT:  I'm sorry, number of what?

11           MR. GOLDMAN:  Compliance reports that the board

12   received throughout the period of time which is covered by

13   the guilty plea with the DOJ.  Obviously, they're trying to

14   use that as exonerating evidence (indiscernible).  I think

15   there are many other items like that that I perceive were

16   directed to trying to create the impression that they --

17           THE COURT:  All right.  Well, look, again, I --

18   that is -- particularly given the telephone chambers

19   conference that we had last week about these issues, where I

20   said, look, wait until you see what's been filed, the

21   Debtors are the primary proponent of the plan.  They're not

22   pushing those issues at all, nor is the Committee, nor is

23   anyone, I think, except perhaps the Sacklers.  But my

24   impression from the conference we had last week is that if

25   the states aren't pushing those issues, then the Sacklers

Page 86

1    wouldn't, either, which, I think, would lead to an agreement

2    as to certain exhibits, perhaps, coming out of the exhibit

3    book.

4            Obviously, if that doesn't happen, then if you

5    want to introduce someone or you want to cross examine

6    someone, I'll let you do it; although, not for 12 hours.

7            MR. GOLDMAN:  That's helpful, Your Honor.  Thank

8    you.

9            THE COURT:  Okay.

10           MR. GOLDMAN:  Your Honor, if I may, and we will

11   work to avoid as many issues as we can.  A number of these

12   exhibits also go into estate claims like Caremark claims.

13           THE COURT:  Well, that -- and that's a different

14   point and you can certainly stipulate that that's the

15   purpose for which they're being used, and not anything else.

16           MR. GOLDMAN:  Thank you.

17           MR. VONNEGUT:  That's what I think some of the

18   (sound drops) might be about is that -- again, I'm just

19   asking people to focus on the difference between estate

20   claims that are being settled and state claims, which is the

21   claims that a state could have in a hypothetical case

22   against the Sacklers.  So, they're two different buckets,

23   and when you talk about merit or you talk about the

24   evidence, you know, focus on that, because I think there's

25   been lots of confusion in that regard.

Page 87

1          THE COURT:  I agree with that completely.  So,

2     getting back to Mr. Goldman's other point, the Debtor have

3     no problem, do they, in having a list of who they're going

4     to -- you know, in what order they're going to present their

5     witnesses?

6          MR. VONNEGUT:  Absolutely.  We're going to do that

7     in the next day or --

8          THE COURT:  And not just the Debtors' witnesses,

9     but, you know, everyone else, too, in what order they're

10    going to go.  So, we could turn to the oral argument

11    proposal, but I thought before we did that, I wanted to

12    address briefly, since we're talking about witnesses, still,

13    the order on procedures.

14          I decided to enter it on the docket so that

15    everyone could see it and sort of take the onus off the

16    Debtor of circulating it.  I did get an email from Mr.

17    Consla -- well, I guess it was a little after midnight last

18    night, that gave people's comments on it and a proposed

19    blackline and I'm open to most of these comments and we can

20    go through it briefly.  We have in brackets, and I'm not

21    quite sure what number of plan we're up to.  Is it still the

22    sixth or is it the seventh?

23          MR. VONNEGUT:  We're still up to the sixth.

24          THE COURT:  Sixth.  Okay.  So, we'll make it the

25    sixth, then, in the order.  So, in looking at a couple of --

Page 88

1           MR. VONNEGUT:  Excuse me, Your Honor.  This is Eli

2    Vonnegut.  I think in advance of the commencement of the

3    hearing, we will be filing a further amended plan, so for

4    purposes of the order, it should be the seventh.

5           THE COURT:  Well, I just want to have it the right

6    one when I enter the order.  Because --

7           MR. VONNEGUT:  Okay.  That's fair, Your Honor.

8           THE COURT:  Because the defined term is, as the

9    same may be modified or supplemented.  So, I don't know if

10   people have the blackline in front of them, but I was going

11   to add to that blackline in Paragraph 2, which says any

12   party in interest who's filed a timely objection to

13   confirmation of the plan and wishes to participate shall

14   register, and it says how to do that and when.

15           After that boldface language, Tuesday, August 10,

16   2021 at four prevailing eastern time, I've added a footnote

17   which says, "If such a party in interest is the Official

18   Committee of Unsecured Creditors or an Ad Hoc Committee, its

19   members may view but not participate in the proceedings via

20   Zoom if they register their appearance as described above,"

21   and I think that addresses that a couple of the comments

22   were, which was we'd like our clients to be able to see, and

23   that's fine.

24           I just don't want lots of different people

25   speaking on behalf of the objector.  The lawyers, of course,

1    can, but I think that was meant to address that and I think

2    that does address it, unless someone has another issue.

3              I've, on Page 5, provided that the remote witness

4    is not the only party to get the impeachment exhibit.  It

5    has to come to the Court and opposing counsel as well so

6    that we have it in front of us.  And then I deleted the

7    blackline on Page 6.  The language, as I had put it in,

8    said, "The formalities of a courtroom must be observed," and

9    then it says, "When observing -- when appearing by Zoom,

10   each counsel must be situated in such a manner as to be able

11   to view the video screen and be seen by the Court," and then

12   it says, "except when such counsel is in a room with a

13   witness who is testifying."

14             I actually want to see the counsel who's in the

15   room.  I don't -- I expect no one who's appearing at today's

16   conference would do this, but I have had Zoom hearings where

17   I didn't want to have coaching and, in a trial, I can see

18   the counsel who might be trying to coach the witness and I

19   want to see the counsel who therefore is representing the

20   witness is in -- and is in the room with her or him.  So

21   that's --

22             MAN 1:  Your Honor?

23             THE COURT:  -- took that out.

24             MAN 1:  (indiscernible) clarifying question with

25   this regard?

1              THE COURT:  Sure.

2              MAN 1:  Do I understand then that we'll have to

3     arrange where there is a witness to have a somewhat further

4     back --

5              THE COURT:  Yeah.

6              MAN 1:  Cameras (sound drops) can see several

7     people at the same time --

8              THE COURT:  Right.

9              MAN 1:  I'm sure we can arrange that, and I just

10    note, I'm wondering where Mr. Huebner is, because I've heard

11    him speak a couple of times and I'm not --

12             THE COURT:  Mr. Huebner is apparently somewhat

13    camera shy.  He will be on the camera during the

14    confirmation hearing.

15             MR. HUEBNER:  That is absolutely correct, Your

16    Honor.  I will be on camera then and I'm all alone, not

17    coaching or being coached by anybody right now, but as the

18    Court has allowed at prior hearings, because I am madly

19    triaging constant texts and emails from many parties, asking

20    me to clarify things, it's impossible to be on camera in a

21    setting like this and not be rude, so I apologize for that.

22             Your Honor, I -- one question I've gotten from

23    several people is, you mentioned four days the week of the

24    16th and four days of the 23rd, but I'm not actually sure

25    you mentioned which four days those two weeks --

1             THE COURT:  Well --

2             MR. HUEBNER:  -- the Court has locked for us?

3             THE COURT:  On the week of the 16th, it would

4    actually be five days, 16 through 20, but you all have

5    scheduled a Purdue omnibus day on the 16th, so that may --

6    you know, I don't know how long that will take, but we could

7    have a full day if you move that omnibus day or

8    alternatively --

9             MR. HUEBNER:  Understood.

10            THE COURT:  -- we could budge a half day.  I'm

11   just not sure --

12            MR. HUEBNER:  Got you.  We'll -- yeah, we'll

13   figure that out and streamline it as much as possible, Your

14   Honor.

15            THE COURT:  And then --

16            MR. HUEBNER:  And then the week of the --

17            THE COURT:  The week of the 23rd, I have a Sears

18   omnibus day on the 24th, so that would probably have to

19   stay.

20            MR. HUEBNER:  Okay.  Thank you, Your Honor.

21   Again, apologies, but, you know, this is exactly why I'm not

22   no camera, because if everyone, like, emails me, like, he

23   didn't say which days and I'm just trying to help everybody

24   along.

25            THE COURT:  Okay.  So, I think that those comments

Page 92

1    and my acceptance of the blackline addresses the comments

2    that were sent to me in the letter from around midnight this

3    morning, but if someone has another point they want to raise

4    on this procedures order, you can do it now.

5            MR. ROTHSTEIN:  Your Honor, this is Paul Rothstein

6    for Dr. Masiowski, independent emergency room physician.

7    And the issue that I would raise is that the hospitals have

8    listed four witnesses for direct testimony and those

9    witnesses, from our perspective, are not responding to

10   anything of our objection to the plan.

11           Our objection to confirmation deals with one

12   focused issue on a hospital trust.  Dr. Masiowski had

13   submitted an expert report.  Then after other materials were

14   provided by the Debtor in terms of the plan of the hospital

15   trust, Dr. Masiowski did not file that expert report, so the

16   hospital listed rebuttal expert witnesses and -- as a part

17   of the rebuttal expert report, but there is nothing to rebut

18   because Dr. Masiowski's report was served but not filed.

19           So, the objection that we have is that we don't

20   feel those expert reports should be made part of the record,

21   because, to the extent that they respond to Dr. Masiowski's

22   opinions that were served in regards to the expert report he

23   filed before -- he didn't file, he served -- before

24   additional information was provided.

25           THE COURT:  All right, so you're not looking to

1     introduce that expert report, then?

2              MR. ROTHSTEIN:  We're not looking to introduce the

3     expert report.  We just want the rebuttal expert reports not

4     to be introduced into the confirmation --

5              THE COURT:  Okay.

6              MR. ROTHSTEIN:  -- evidence.

7              THE COURT:  Well, I haven't reviewed those,

8     either, so I don't know whether they are strictly in

9     rebuttal to that report where the record is now clear that

10    Mr. Masiowski is not looking to rely on it or introduce it

11    or have it be part of the record, so I think that's -- I

12    understand the logic of what you're saying.  I just don't

13    know whether those expert reports that you're referring to

14    really are just in rebuttal to something that now they don't

15    need to be in rebuttal to.  So, I guess I'll leave it --

16             MR. O'NEAL:  This is Michael O'Neal, Ad Hoc

17    Hospitals counsel.  Could I address that briefly?

18             THE COURT:  Sure.

19             MR. O'NEAL:  Judge, we're happy to address what

20    Mr. Rothstein said in writing.  It's much less clear than he

21    points out in terms of what is in the record and what is

22    not.  We offered on Friday to have a meet and confer to try

23    to narrow those issues, and we'll certainly undertake to do

24    that --

25             THE COURT:  All right.

1          MR. O'NEAL:  (indiscernible) something.

2          THE COURT:  Why don't the two of you do that,

3     then?

4          MR. O'NEAL:  Yes.  Thank you, Judge.

5          THE COURT:  Okay.

6          MR. ROTHSTEIN:  Thank you, Your Honor.

7          THE COURT:  All right.  Again, I just wanted to --

8     I'm sorry.  Maybe I cut people off too soon on the witness

9     presentation and turned to the procedures order, but let me

10    just stick with the procedures order for a second.  Does

11    anyone have anything more to say on that?  If not, I'll

12    enter an amended procedures order, consistent with what

13    we've covered on the record today.

14         MR. TROOP:  Thank you, Your Honor.  If I may be

15    heard for a moment?  Andrew Troop for the Non-Consenting

16    States.

17         THE COURT:  Sure.

18         MR. TROOP:  Thank you, Your Honor.  Your Honor, I

19    apologize if I missed this, but I'm assuming that the -- as

20    counsel for the Non-Consenting States I can participate in

21    the hearing and have a Zoom link?

22         THE COURT:  Yes.  Yeah.

23         MR. TROOP:  (indiscernible) and I understand that

24    from your (indiscernible) ruling that members of the Non-

25    Consenting States Group who want to observe through Zoom

1    could (sound drops) be heard, but will also be able to do

2    that, and that the order will be amended --

3              THE COURT:  Yeah.  That's what I was trying to do

4    with the footnote.

5              MR. TROOP:  Okay.  Appreciate it, Your Honor.

6    Thank you very much.

7              THE COURT:  Okay.

8              MR. PLEVIN:  Your Honor, Mark Plevin on behalf of

9    Steadfast and Associated Guarantee.  I didn't catch the name

10   of the person who sent you that email.  I don't think I was

11   on the list and I want to contact them to be sure.

12             THE COURT:  Dylan Consla at Davis Polk.

13             MR. PLEVIN:  Thank you.

14             MR. FOGELMAN:  Good morning, Your Honor.  This is

15   Larry Fogelman on behalf of the United States.  I think

16   under Paragraph 2 we're not covered, since we filed a

17   statement but not an objection, and I just want to confirm

18   with Your Honor that United States will be permitted to

19   appear at the confirmation hearing.

20             THE COURT:  I'll add the word objection or

21   statement.  I'll add "or statement."

22             MR. FOGELMAN:  Thank you, Your Honor.

23             THE COURT:  Okay.

24             MS. FELIZ:  Good morning --

25             MS. LEONARD:  I'm sorry, this is Nicole Leonard

Page 96

1    from McElroy, Deutsch, Mulvaney, & Carpenter on behalf of

2    Westchester Fire Insurance Company and it's U.S.-based

3    affiliated sureties.  Westchester raised informal objections

4    with the Debtors which have been resolved through an

5    agreement (sound drops) language in the confirmation order.

6    We just would like to participate in the confirmation

7    hearing, but we'd like to be (sound drops) up until (sound

8    drops) the confirmation order is addressed, with Your

9    Honor's approval.

10             THE COURT:  Okay.  That's fine.

11             MS. LEONARD:  Thank you, Your Honor.

12             THE COURT:  And I guess this is really a point for

13   Mr. Kaminetzky.  If you have parties who've not filed a

14   formal pleading, a statement, or an objection, but they're

15   going to want to listen in to and maybe confirm that they're

16   on board with a settlement, just let Mr. Andino know and

17   he'll send them a Zoom link, too.

18             MS. FELIZ:  Good morning.  I don't know if you can

19   hear me, Your Honor.

20             THE COURT:  Yes, but I don't know who you are.  If

21   you could just state your name.

22             MS. FELIZ:  Okay, yes.  I'm on the list.  My name

23   is attorney Julianne Feliz, and myself and my colleague we

24   practice in Fall River, Massachusetts.  I don't know if you

25   know where that is, but it's an --

1              THE COURT:  Sure.

2              MS. FELIZ:  -- area that --

3              THE COURT:  Of course.

4              MS. FELIZ:  -- been decimated by this opioid as it

5     relates to OxyContin.  I myself filed all 88 narratives on

6     behalf of the personal injury claimants, including 20

7     deaths.  I just don't hear anyone in these eloquent hearings

8     -- and, you know, I just commend you, Judge, because this

9     case is just so complex and we're trial lawyers, we're

10    criminal trial lawyers, that is, so it's a different area of

11    law, certainly.  But I don't hear anyone speaking on behalf

12    of the claimants, the personal injury claimants, the debts,

13    the (sound drops), nobody.

14             THE COURT:  Well, Ms. Feliz, this is a pretrial

15    conference where we're setting up the mechanics for the

16    confirmation hearing.  There are counsel -- in fact, I

17    believe I saw at the beginning of the hearing, who have

18    represented tens of thousands of personal injury claimants

19    who will participate in the hearing, but this is not a

20    hearing on the merits.  This is a pretrial conference, so I

21    would not want to have anyone address anything other than

22    what's on for this conference, which is just the preparation

23    for that hearing.

24             MS. FELIZ:  Yeah, thank you.  I just am concerned

25    --

1                THE COURT:  Okay.

2                MS. FELIZ:  Thank you for your patience.

3                THE COURT:  Okay.

4                MR. HUEBNER:  Your Honor, if I may, just for 20

5      seconds to give, at least, what hopefully is some comfort,

6      for the avoidance of doubt, there are voluminous pleadings

7      filed throughout the case by counsel for the personal injury

8      claimants on the adult side, separate pleadings filed by the

9      NAS Children on the juvenile and younger side, including

10     pleadings filed in support of confirmation.

11               Obviously, I'm leaving aside the fact that, you

12     know, 38 of the 38 states who represent their citizens

13     clearly speak for all of their citizens and many other

14     representative groups, so please, rest assured that entirely

15     separate from the views of the Debtors as fiduciaries for

16     all stakeholder, the Official Committee of Unsecured

17     Creditors as fiduciary for all stakeholders, with all

18     creditors, we have unofficial groups, that, as the judge

19     pointed out, represent thousands, tens of thousands, or

20     hundreds of thousands of creditors who have been actively

21     involved in negotiating and participating in settlements and

22     virtually all of them support confirmation.

23               So, I just don't want there to be a mis-impression

24     that no one is speaking, even at confirmation, if you look

25     back at the docket, which is provided free of charge, even

Page 99

1   over the last week, you will see pleadings filed by the

2   Municipalities Group, the Official Creditors Committee, the

3   Adult PI Victims, the NAS Children, the UCC, and the Debtors

4   on all of these issues.  So, apologies for the interjection,

5   but it's such an important issue about sort of where people

6   line up and obviously (indiscernible) vote, so please do

7   rest assured that there are many, many, many people who care

8   very deeply about the individual victims here.

9           THE COURT:  Okay.  So, does anyone want to say

10  anything more for the pretrial conference before we move to

11  the proposed oral argument schedule?  No.  Okay.  So, I

12  received this also, basically overnight.  Mr. Kaminetzky,

13  you want to address it?

14          MR. KAMINTEZKY:  Yes, Your Honor.  So, as you see,

15  we sent this around.  We sent our proposed schedule.  This

16  is what, you see, Your Honor, takes into account certain of

17  the -- certain of the comments that we received.  What we --

18  we think that the only thing that makes sense here, given

19  the overlapping nature of the objections -- for example, 11

20  objections deal with third-party releases.  We think the

21  only rational way to do this is to break it up by topics,

22  allocate 50 percent for one side, 50 percent of the time for

23  the other side, have folks, you know, cooperate with their

24  own side and present the argument in that way.

25          I think there's general agreement with the notion

Page 100

1    that the issues should be split up in that way, other than,

2    I think the U.S. Trustee said that each objection should be

3    able to, you know, argue their motion by themselves, which I

4    just don't think will work in this context.  We received

5    some other, you know, comments that we, you know, were happy

6    to address.  Most of the comments are that folks think that

7    their argument or that their issue needs more time than

8    others.

9            We tried to be rational about it and, but, you

10   know, to the extent Your Honor thinks that there's -- more

11   time is needed for a particular issue, we're happy to talk

12   about that.  You know, for example, like the objecting

13   states, Maryland, Connecticut, Washington, and Oregon, asked

14   they -- that they be allocated by themselves three issues on

15   the third-party releases, but we simply don't think that we

16   need all that time.

17           The DMPs say they need another 20 minutes for

18   their unique issues, and, you know, we're happy to give them

19   another 10 or 20 minutes.  The objecting states also raised

20   an ordering issue and they suggest that their issues should

21   come last.  Not sure that makes a lot of sense, given the

22   number of issues that they raised.  We -- you know, the

23   insurers asked for more time.  We can provide them more time

24   if the Court thinks it's necessary.

25           The Canadian Munis, I think, just didn't

Page 101

1    understand what we were proposing and we're happy to give

2    them their own time because their issue is somewhat unique.

3    The U.S. Trustee asked for two hours for closing.  I'm not

4    sure I understand what they were getting at there, because

5    I'm not -- Your Honor said that you'll let us know if and

6    when we need closing arguments, but I don't see that as, you

7    know -- I see this as kind of addressing the various issues

8    raised in the objection, not as closing arguments.

9            To make it short, Your Honor, I'm happy to meet

10   and continue to meet and confer about it.  I think we have a

11   good structure that I think makes sense, gives everyone

12   time, lists out the issues, and forces people to kind of

13   coordinate with their own side so that you're not hearing

14   the same things again and again and again, but we're happy

15   to take your guidance.

16           THE COURT:  I had a couple of reactions to this,

17   then I'm happy to hear from the parties as well.  I think we

18   should schedule the U.S. Trustee fourth, i.e., after the

19   third-party releases so that they can move into their other

20   point.  And I think we should hear from the States first and

21   then other parties in interest second and I would like the

22   other parties in interest and the States to coordinate on

23   the arguments that are not unique to the States.

24           I'm not going to hear, you know, six people give

25   me the same arguments, for example.  And similarly, I

1      appreciate the States, that at least three counsel would

2      appear for the States.  I would expect that they'll be one

3      lead on that and that the other two will be -- confine

4      themselves to something that their colleague missed or that

5      their colleague wanted to leave to them.

6              I don't know who's talking in the background, but

7      you should keep your phone on mute.  Can you tell who that

8      is, Arthur?

9              And then I just want to be clear, because when you

10     have, for example, No. 12, Canadian Municipality creditors,

11     No. 10, Native American Tribe objection, these are

12     objections other than the third-party release points that

13     they have raised, which I think is clear.  I want to make

14     that clear.

15             The last point I'd raise is, I think what you have

16     down here is more than two days for oral argument, which

17     seems too long to me.  At most, it should be two days.  And

18     frankly, I think it should be less than that.

19             MR. GOLDMAN:  Your Honor --

20             MR. KAMINTEZKY:  we're happy --

21             MR. GOLDMAN:  -- one clarifying question in

22     response to Your Honor's comment.  As opposed to having just

23     one lead counsel for the objecting states, would Your Honor

24     have a problem if we decided to divide up the --

25             THE COURT:  No, that's fine.  That's fine.  You

Page 103

1    can divide it up.  I just don't want people repeating

2    themselves.

3             MR. GOLDMAN:  Okay.  Just wanted to make sure,

4    Your Honor.  Thank you.

5             THE COURT:  Right.  And again, I think that

6    counsel for the other parties who have raised third-party

7    claim release or injunction issues should coordinate among

8    themselves and the States to make sure that, you know, we're

9    not repeating testimony.  I mean, we're not repeating

10   argument, excuse me.

11            These -- and again, it seems to me that, frankly,

12   the issues generally have been briefed.  There's a lot of

13   precedent on them, what is unique or unusual here, is the

14   argument -- the federalism argument made by the States, but

15   the other arguments are largely -- well, put it this way,

16   other than tying the testimony into the argument, your

17   briefs pretty much cover them.

18            MR. SCHWARTZBERG:  Your Honor, Paul Schwartzberg

19   for the U.S. Trustee's Office.

20            THE COURT:  Yes.

21            MR. SCHWARTZBERG:  I just -- Your Honor, the six

22   hours allocated to the third-party releases split 50 percent

23   to the Debtor side, 50 percent to the objector side, that's

24   three hours for, I believe, 17, if I'm counting them up,

25   different parties.  Now, obviously, nobody's going to try to

Page 104

1    repeat what's been said, but it seems that third-party

2    releases are an extremely important issue in this case and

3    three hours for all of the parties to set forth their

4    closing arguments seems to be not sufficient.

5            THE COURT:  I -- six hours on this issue is just

6    ridiculous to me.  It's just not -- it doesn't correspond to

7    the state of the law.  I don't think the Debtors will take

8    three hours, and the other parties shouldn't.  I mean, I

9    could see maybe an hour on the States' unique arguments.  It

10   just -- there's caselaw on this.  This isn't -- you know,

11   this isn't new stuff.  Yes, we do have to tie the arguments

12   into the record, but these are issues that people have been

13   ruling on since the early -- well, actually, since the '80s.

14           So, and again, they're well briefed.  And as you

15   know, I read the briefs.  So, I'm not bothered -- I mean, if

16   I'm bothered at all by this, I'm bothered by the fact that I

17   think it's too much time for oral argument.  This isn't, for

18   example, a, you know, 95-count complaint against 35

19   different defendants, all of whom are different, and, you

20   know, you have to hear -- you have to hear from each of

21   them.  It's just not like that -- on a motion to dismiss,

22   for example, where I have had an all-day argument.

23           MR. SCHWARTZBERG:  Your Honor, I would hope after

24   -- I would hope after, if I'm speaking for (indiscernible),

25   speaking for ten minutes and we're trying not to repeat and

Page 105

1    we have not repeated, (sound drops), we won't be just cut

2    off and we'll be able to finish our --

3            THE COURT:  I think that's not a vain hope.

4            MR. HUEBNER:  Your Honor, although -- this is

5    Marshall Huebner.  To be clear, I mean, this colloquy

6    exactly proves the point.  There are 17 objectors -- I'm

7    assuming Mr. Schwartzberg, invariably, is correct, right,

8    making largely similar arguments on what we believe is

9    largely a pure issue of law and the problem is, you know, if

10   each of those people is allowed, you know, time, first of

11   all, the Debtors have to respond alone to 17, which is why

12   the -- you know, the view that the objectors somehow deserve

13   more time because there are more of them piling on,

14   obviously, is decidedly unfair.

15           We could have easily taken the position that we

16   deserve more time because we, alone, have to respond to a

17   huge multiplicity of things.  But we didn't do that.  We

18   went right down the middle and said 50/50 on every issue.

19           I'd also note that if we were in the Supreme

20   Court, there'd be one lead counsel and there would be

21   probably 10 to 12 to 18 to 20 minutes a side.  The Second

22   Circuit wouldn't be much different and the District Court

23   wouldn't be much different.  I mean, these are legal issues

24   and the notion that six hours of oral argument does not

25   suffice, is pretty hard to accept.

Page 106

```
 1              I don't think the number of objectors, other than,

 2      again, as Your Honor (sound drops).

 3              THE COURT:  You cut out, Mr. Huebner.

 4              MR. HUEBNER:  -- sort of sovereign status as being

 5      different in this context.  You know, okay, but, you know,

 6      the rest just doesn't make -- and we're very concerned about

 7      each person taking an extra five or an extra ten --

 8              THE COURT:  All right.

 9              MR. HUEBNER:  -- which collectively is -- could be

10      two more days.

11              THE COURT:  Right.  No, I understand, and I guess

12      where I'm leaning on this is that with the slight adjustment

13      to the order that I mentioned, it would seem to me that the

14      people on this list who would be preparing to argue, say, on

15      day two or day three at the beginning of that day, should

16      also be prepared to argue at the end of the day preceding

17      because we might get to them.  In fact, we probably will get

18      to them.

19              MR. KAMINTEZKY:  Your Honor, just to be clear,

20      when you say order of those arguing, that's within the

21      various issues that we've laid out, right?

22              THE COURT:  Yeah, one, two, three, four through 15

23      or 14.  So if someone is on -- Mr. Masiowski, number seven,

24      if you looked at the time here, you would assume that he's

25      going to be in the morning of the second day of oral
```

Page 107

1    argument.  He may well be in the afternoon of the first day,

2    so Mr. Rothstein needs to be ready for that.

3          What we haven't discussed is, I think, the -- as

4    always happens with a confirmation hearing -- there needs to

5    be time in your schedule, both for the evidentiary

6    presentations and the oral argument, for the Debtor to

7    reflect agreements or modifications to the plan on the

8    record.  And in particular, that would be useful with regard

9    to the section of the plan that deals with third-party

10   releases and injunctions, if you're going to narrow that in

11   any way.

12         If you can -- you know, the sooner you decide to

13   do that, if you're going to do that, you should get that out

14   on the record so that everyone can address the more narrowed

15   version as opposed to the wider version.

16         So, I don't know if anyone has anything more to

17   say about oral argument?

18         MS. STEEGE:  Your Honor, this -- Your Honor, this

19   is Catherine Steege.  I represent McKesson and have been

20   designated by the distributor (sound drops) pharmacy group

21   to make our arguments.  The one point I would note is that

22   our objection raises (sound drops) and best interest issues.

23   We're not listed as an objector there and my understanding

24   is the Debtor has slotted us to raise the arguments on that

25   regard in our number 11 on this agenda, and I just wanted to

Page 108

1    make sure the Court was aware of that.

2              MR. KAMINTEZKY:  Yeah, that's right.  As we've

3    (indiscernible) unique arguments on those issues are within

4    number 11.

5              THE COURT:  Okay.  Okay.

6              MR. JONES:  If I may, Your Honor, this is Evan

7    Jones of O'Melveny and Myers.  We represent Johnson &

8    Johnson, which is also part of this DMP group.  There's a

9    drafting issue that's raised in the DMP objection.  We've

10   been in conversation with Davis Polk about it.  I don't

11   think there's a resolution yet.  I hope it's resolved, but

12   we may need five minutes during that time for that issue, if

13   it's not resolved.

14             THE COURT:  Okay.  Well, you're down here, but

15   what you're saying is, other than Ms. Steege, you may be

16   saying something, too?

17             MR. JONES:  Yes, Your Honor.

18             THE COURT:  Okay.

19             MR. JONES:  We are an informal group and we try to

20   work together, but this is one that the group as a whole has

21   noted but we are particularly interested in.

22             THE COURT:  Okay.

23             MR. JONES:  And again --

24             THE COURT:  I would hope that this group could be

25   able to narrow down its issues, not just as to Johnson &

Page 109

```
 1    Johnson, but the whole group as I've said repeatedly during

 2    the case.  I'm not quite sure why, ultimately, their issues

 3    are -- unless there's confusion about the drafting being

 4    pursued aggressively here, but we'll deal with that at

 5    confirmation.

 6            MS. STEEGE:  Your Honor, to speak to that, one of

 7    the reasons why we're speaking to third-party releases isn't

 8    to sit there and recite the Metromedia factors to you, but

 9    to point out something that treats us differently than

10    everyone else.  The Sacklers are providing a release to

11    every other creditor that's releasing them, except for the

12    members of our group, and that's a unique issue.  We don't

13    want to take a lot of time pointing that out, but there are

14    some arguments related to that and with the other --

15            THE COURT:  Well --

16            MS. STEEGE:  -- larger group --

17            THE COURT:  I understand, but that's why I led my

18    -- with my comment that it would seem to me that that might

19    be fruitful to discuss and resolve as opposed to litigating

20    over.  Any co-defendant, I would think, would find some

21    common ground with the Debtors here more easily than a

22    straight claimant.

23            MS. STEEGE:  Your Honor, we're working to do so.

24    I think that there's some efforts being made to use this

25    plan to increase parties' advantages in other courts not in
```

Page 110

1    front of Your Honor --

2              THE COURT:  Well --

3              MS. STEEGE:  -- and that's why --

4              THE COURT:  Well --

5              MS. STEEGE:  -- we're (indiscernible) --

6              THE COURT:  I would just urge you all to continue

7    to work to do so, and I'm not just addressing you and Mr.

8    Jones, but the people you're negotiating with.

9              Okay.  Anyone else?

10             MR PREIS:  Your Honor?  This is Arik Preis from

11   Akin Gump on behalf of (sound drops).  Can I be heard for

12   two minutes?

13             THE COURT:  Sure.

14             MR. PREIS:  One -- first of all, thank you for

15   making the modifications to the protocol, allowing our

16   Committee members to listen in to the hearing.  That was our

17   request (sound drops).  Second question, the days for the

18   hearing, you have the 12th, the 13th, the 16th to the 20th,

19   then the 23rd, 25th, 26th, 27th.  Those are inclusive --

20   although we talked about them during the evidentiary

21   portion, I assume those also include the days for oral

22   argument.

23             THE COURT:  That's right.  That's right, and you

24   need to leave time for me to give you my ruling.  I mean, I

25   may be ruling as we go along, but you need to leave time for

Page 111

1    me during the days, those days, the oral argument days, for

2    me to rule on these issues, and the oral ruling on the

3    third-party injunction may be lengthy, as you all have

4    suffered through oral rulings before by me.

5            MR. PREIS:  Okay.  Thank you for that

6    clarification.  Third issue, Mr. Kaminetzky about two hours

7    ago mentioned the fact that we are working on a stipulation

8    with the Sacklers to ensure that there's no prejudice to any

9    party that is not taking part in the evidentiary portion of

10   the hearing, namely the UCC, the parties that are on board

11   with the case, the future (indiscernible), et cetera.

12           I just wanted to reiterate, I know he said it

13   rather quickly, but it is an important part for us in

14   particular, as it is for (sound drops).

15           THE COURT:  And this is a stipulation what would

16   say, if things fall apart, and people are pursuing their

17   claims, the failure to -- or, not the failure -- the choice

18   not to actively participate isn't a waiver in that -- of the

19   right to pursue claims in the future, right?

20           MR. PREIS:  Well, it's two things.  First of all,

21   when you say fall apart, it could fall apart (sound drops)

22   the order, the confirmation order (sound drops), or second,

23   in the future, if the Sacklers default on the settlement

24   agreement, there's a potential for (indiscernible), but

25   that's one.  And two, it's not just prejudice that we didn't

Page 112

1    make argument.  It's prejudice that we're not -- we didn't

2    cross examine any witnesses.

3              THE COURT:  Right.  The whole conduct of the

4    hearing.

5              MR. PREIS:  Correct.

6              THE COURT:  Yeah, so, that's fine.  I don't --

7    that makes sense to me.  I understand that.  So, I -- if

8    what you submit is like that, it'll be so ordered.  We don't

9    need a hearing on that.  That's straightforward.

10             MR. PREIS:  Thank you, Your Honor.  That was it.

11             THE COURT:  Okay.  All right.

12             MR. CAHN:  Your Honor?

13             THE COURT:  Yes.

14             MR. CAHN:  Your Honor, this is Aaron Cahn for the

15   State of West Virginia.  Can I be heard?

16             THE COURT:  Sure.

17             MR. CAHN:  I have what I believe could be

18   characterized as a housekeeping issue.  Our expert report

19   has to -- will refer to a number of exhibits, which have

20   been designated as confidential because they were covered by

21   the pre-bankruptcy agreement between the various States

22   about the submission of confidential materials.  We've

23   agreed with -- beg your pardon?

24             THE COURT:  I haven't said anything.

25             MR. CAHN:  Oh, sorry.  We've agreed with the Ad

Page 113

1    Hoc Committee which has taken the lead on this issue, (sound

2    drops) objecting to submission of materials, that we can

3    submit these to Your Honor in camera for Your Honor's review

4    in conjunction with our expert's report and the Debtor, I

5    believe, (indiscernible) not taken a position on this issue,

6    they're okay with whatever we decide to do.

7             So, my question is, how would you like us to

8    accomplish this?

9             THE COURT:  Well, I don't know how voluminous they

10   are.

11            MR. CAHN:  They're not very voluminous.

12            THE COURT:  So just send hard copies to chambers

13   and with a cover note saying, these are the materials that

14   the parties have agreed that the Court could review in

15   camera.

16            MR. CAHN:  Thank you, Your Honor.  That's what

17   we'll do.  Appreciate it.

18            THE COURT:  I mean -- look there maybe be other

19   parties that want to see them, but I'm happy to review them

20   in camera.  If someone else says they want to see them, then

21   we'll have to -- I mean, the fact that you've gone through

22   this procedure doesn't prevent someone from saying that.

23            MR. CAHN:  Of course.

24            MR. GOLDMAN:  Your Honor -- Your Honor, if I may

25   be heard for a moment (sound drops).  One of the issues here

Page 114

1    with regard to these documents (indiscernible) subject to a

2    (sound drops) amongst the states.  The Non-Consenting States

3    do not agree that are not subject to a common interest and

4    therefore can be admitted as evidence.  So, we're going to

5    have to (sound drops) that issue (sound drops) the

6    submission even in camera, but we're prepared to address

7    that issue directly with Your Honor in connection with the

8    review of these documents.

9              THE COURT:  Okay.  That's fine.

10             MR. GOLDMAN:  Thank you.

11             THE COURT:  That's fine.

12             MR. ANKER:  Your Honor, this is Philip Anker for

13   Navigators, one of the insurers.  If I might be heard very

14   briefly, we are hopeful, frankly, that we will be able, if

15   not entirely, almost entirely not participate in the

16   confirmation order -- confirmation hearing, I should say, at

17   all.  We are seeking -- we've indicated to the Debtors that

18   the form of so-called insurance neutrality they had in the

19   plan that went out for solicitation, the fifth amended plan,

20   would largely, if not entirely, be acceptable to us and I

21   can promise you we will and we are seeking to negotiate a

22   way -- frankly, I don't think these are issues, insurance

23   coverage, that are relevant to the confirmation hearing and

24   we share Your Honor's desire to narrow rather than broaden.

25             The only reason I speak up -- and I've said this

Page 115

1    offline in a series of emails, but I just want to say it for

2    the record.  It would be enormously helpful to us and I

3    think narrow the hearing if we could get, even if it's

4    working draft, a draft of the proposed confirmation order so

5    we know what findings, precisely, if any, are being sought

6    with respect to our issues that we think would be

7    inappropriate.

8            It will inform us in examining witnesses.  You

9    know, there are declaration that have stray statements in

10   them that could be read to testify on insurance coverage

11   issues.  I don't think that's the intent, but they're there

12   and I'd, rather than waste time with a cross and waste time

13   with an argument, it would be helpful -- I will say the Ad

14   Hoc Committee did put in, in their reply brief, identified

15   some findings they intend to request.

16           That was helpful, because I think we can negotiate

17   on some and we can then narrow where we disagree, so I

18   simply say, it would be helpful to us to get this across the

19   finish line and get out of Your Honor's hair and everyone

20   else's hair, if we could see the confirmation order on that

21   -- on those issues at least, and be able then to speak with

22   the Debtors and with the claimant groups to try to narrow or

23   eliminate altogether our issues.

24           As I say, our goal is not to lengthen the hearing;

25   our goal is not to interject coverage issues into this

1    confirmation hearing.  We're going to be before Your Honor

2    in the insurance adversary.  It is to do precisely the

3    opposite, have those issues addressed then.  Thank you, Your

4    Honor.

5         THE COURT:  Well, I'm assuming that there are

6    going to be attempt to negotiate them, so that language -- I

7    mean, I'm assuming what you'll say is, all right, is there

8    anything else you're going to put in the order than what

9    we've negotiated.  So, I think the parties will be

10   addressing it.

11        MR. ANKER:  Thank you, Your Honor.

12        THE COURT:  Okay.  All right.  Anything else?  No?

13        MR. KAMINTEZKY:  I think we're done.  Just to put

14   on your -- well, I guess two things.  One, just to put on

15   Your Honor's radar, there seem to be two evidentiary motions

16   that two parties have filed, neither of which really involve

17   the Debtor.  The first is an objection by Dr. Masiowski.  I

18   think you've -- we had a little bit of that.  That's at

19   Docket 3482.

20        THE COURT:  There's going to be a meet and confer

21   on that, though, I think, right?  And I think that one, if

22   it's not resolved, I'll deal with it when the exhibit comes

23   up as opposed to ruling in advance on it.

24        MR. KAMINTEZKY:  The second is a motion to exclude

25   under Daubert the expert testimony of William Hrycay.  I

1    think I'm spell -- I'm saying that right.  It was brought by

2    Side A of the Sackler family.  That's Docket No. 3490 and

3    the notice of docket is 3491.  I think that was just filed.

4    I just wanted to put that on Your Honor's radar.

5                THE COURT:  Whose expert is he?

6                MR. KAMINTEZKY:  It's the States -- the objecting

7    States' expert.

8                THE COURT:  All right.  Well, this may be part of

9    the discussion that we had at length at the beginning of the

10   hearing.  It may not be that -- in light of what we

11   discussed at this hearing, I'm not sure how much that expert

12   is going to be offered for at this point.  So, I would like

13   the party to discuss that, and again, I think I'd rather you

14   have that discussion first before I address it, and I can

15   address it when -- if I need to, if the States are still

16   looking to have his testimony admitted.

17               MR. GOLD:  Your Honor, this is Matthew Gold.  That

18   makes -- we agree, that makes perfect sense.  We -- it would

19   be a little helpful because as of yet, we're expecting the

20   next few days, I've heard, that we'll be getting the order

21   in which witnesses may be heard.  My expectation is that in

22   no event would this witness be called on the first day of

23   the hearing and once we have that order, we can make sure

24   that we can try to resolve and narrow any issues, see if

25   this has to be briefed and heard with an understanding of

1    what day this is -- we're actually pointing toward.

2            THE COURT:  All right.  That's fine, although I

3    would hope that your group of three lawyers and the

4    Sacklers' lawyers would engage even before the order of

5    witnesses is circulated, so that while this is fresh on your

6    -- this conference is fresh in your mind, you can see what,

7    if anything, remains as far as certain aspects of the

8    evidence that both sides had put down as wanting to put in,

9    but I think have acknowledged today they probably don't

10   intend to put in.

11           So, I would like you all to start on that;

12   although, maybe you need to get some sleep, but I'd like you

13   all to start on that today, frankly.

14           MR. GOLD:  We will, Your Honor.  This literally

15   arose over the weekend.

16           THE COURT:  Okay.

17           MR. TROOP:  And Your Honor, just -- Your Honor,

18   Andrew Troop for the Non-Consenting States.  While there --

19   it's not our witness, there are allegations in the motion

20   which are incorrect as they relate to the Non-Consenting

21   States Group and I'm happy to talk with that side counsel

22   about that, but right now, they noticed up an objection

23   deadline for Thursday at the start of the hearing.

24           I'm assuming that based on your ruling, that

25   objection deadline was going to be (sound drops) that

Page 119

1    objection deadline in connection with (sound drops)

2    testimony we've offered.

3            THE COURT:  Okay.  Well, I haven't read this

4    motion.  My clerk just handed it to me literally just now.

5    So I -- I'm not sure why it's referring to your group

6    anyway, Mr. Troop, which is, at this point, kind of a -- you

7    know, a Dalmatian or a zebra group.  They're neither non-

8    consenting nor consenting, so --

9            MR. TROOP:  They're looking for a new snappy

10   title.

11           THE COURT:  Okay.  In any event, yeah, I think

12   that this will be narrowed down considerably and, in all

13   likelihood, I'll probably rule on it, if I have to rule on

14   it at all, when Mr. H-R-Y-C-A-Y is offered up as a witness.

15           MR. KAMINTEZKY:  Your Honor, a final word --

16           MR. TROOP:  I'm sorry, Ben --

17           MR. KAMINTEZKY:  Sorry.

18           MR. TROOP:  If there are unresolved issues, we'll

19   get (sound drops) advance of that.

20           THE COURT:  Okay.  That's fine.

21           MR. ANKER:  This is Mr. Anker.  May I just make

22   one comment before -- I realize everyone's trying to -- I

23   appreciate we're testing your patience, Your Honor.  I just

24   wanted to give you a heads up.  We did (sound drops) my

25   comments earlier, get the witness declarations late

Page 120

1    Thursday.  Consistent with our view that many of them have

2    nothing to do with confirmation, I think we are likely, as

3    early, possibly, as today, to move to exclude some of them

4    and to exclude some of the exhibits.  I wanted to say that

5    because we just had a discussion about it and I didn't want

6    to be accused, Your Honor, of sandbagging and not informing

7    the Court and I pledge to Your Honor and the Debtors, we are

8    happy to sit down and will sit down and try to narrow the

9    issues consensually.  But I just said that because I didn't

10   want to have the record end and anyone think that we had, as

11   I said, sandbagged and not been forthcoming.  Thank you,

12   Your Honor.

13            THE COURT:  Okay.

14            MR. KAMINTEZKY:  Your Honor, just a final word

15   just to make sure we're clear.  Your Honor generously gave

16   us, I think by my count, 11 days for this confirmation

17   hearing.  I don't want people to walk away -- and Your Honor

18   also mentioned that you think two days are sufficient for

19   the oral argument on the --

20            THE COURT:  Oral argument and rulings.  Oral

21   argument and rulings.

22            MR. KAMINTEZKY:  And ruling.

23            THE COURT:  Yeah.

24            MR. KAMINTEZKY:  But are you -- I don't want

25   people to walk away thinking that you're expecting, then,

1    eight full days of testimony or that you feel like you need

2    eight full days of testimony.

3            THE COURT:  I have those days available.  Again, I

4    don't think I will need them all.  You should work really

5    hard to reduce it, because otherwise if people are seeking

6    to have testimony that's irrelevant, I'll exclude it.  I

7    just think it's better for the attorneys to know sort of the

8    outside range and then use their professional judgment based

9    on the issues that are actually before the Court and who has

10   the burden of proof to come up with a schedule that actually

11   makes sense.

12           Otherwise, we'll be spending time that isn't

13   really necessary, I think, if people do that, and me telling

14   people no, you got to stop, this testimony is irrelevant,

15   it's a waste of time.  And of course, just my saying that is

16   a waste of time, too, because you guys should've figured

17   that out beforehand.

18           MR. KAMINTEZKY:  That's all I have, Your Honor.

19   Thank you.

20           THE COURT:  Okay.  All right.  All right.  My

21   clerk reminds me that you, in addition to the omni day, you

22   had actually scheduled a separate motion, the KEIP motion,

23   for the 19th, so you need to take that into account, too, on

24   how -- what you want to do with that as far as the timing

25   here.

Page 122

1              It's probably not your matter, Mr. -- maybe it is

2      your matter.  I don't know.  I just -- she correctly

3      reminded me of that, too.

4              MR. VONNEGUT:  Understood, Your Honor.  This is

5      Eli Vonnegut of Davis Polk.  We'll coordinate on that on the

6      Debtors' side.

7              THE COURT:  Okay.  Very well.  All right.  Thanks,

8      everyone.  I appreciate all the hard work you've been

9      putting into this, and that's the collective you, you know,

10     all the lawyers who've been involved in it.  But it's not

11     quite -- that work still needs -- there's still some

12     important things you need to do over the next few days.

13     Thank you.

14             MR. TROOP:  Thank you, Your Honor.

15

16

17             (Whereupon these proceedings were concluded at

18     12:27 PM)

19

20

21

22

23

24

25

Page 123

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

   Sonya Ledanski          Digitally signed by Sonya Ledanski Hyde
6                          DN: cn=Sonya Ledanski Hyde, o, ou,
   Hyde                    email=digital@veritext.com, c=US
7                          Date: 2021.08.10 13:26:33 -04'00'

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  August 10, 2021

[& - 3263]                                                                Page 1

**&**

**&**   10:1,5 15:20,22
  28:13 29:1,17
  33:2 35:22 44:10
  56:11 63:10 96:1
  108:7,25

**0**

**02721**   32:5
**06604**   29:13
**07102**   29:6

**1**

**1**   33:10 89:22,24
  90:2,6,9
**1-21**   3:24
**10**   88:15 100:19
  102:11 105:21
  123:25
**100**   61:2
**10007**   31:20 34:1
**10014**   32:13
**10017**   28:6
**10019**   31:4
**10022**   29:22
**10036**   33:4,11
**1006**   32:12
**10110**   34:8
**10173**   28:23
**10281**   28:16
**105**   2:6,20 3:4
**10601**   1:14
**10:05**   1:17
**11**   3:14 5:16 7:18
  8:12 9:19,22
  10:10 11:8 12:3
  12:15,25 13:14
  14:3,11,17 15:14
  16:6,16,22 17:11
  17:19,24 18:4,16
  18:25 19:7 22:8
  22:17 23:8 25:23
  26:6,13 35:6
  52:17,19 54:17

55:20,23,23 99:19
  107:25 108:4
  120:16
**1129**   63:2 69:17
**11501**   123:23
**11th**   77:7
**12**   36:12 59:13
  64:19 65:2,6 86:6
  102:10 105:21
**1201**   29:5
**12:27**   122:18
**12th**   35:7 37:8,16
  56:19 68:3 69:11
  110:18
**13**   59:12 65:6
**137**   60:15
**138**   70:24 71:12
**13th**   68:3 110:18
**14**   106:23
**15**   106:22
**15th**   59:7
**16**   91:4
**164**   60:7,15 61:2
**16th**   68:4,6 90:24
  91:3,5 110:18
**17**   103:24 105:6
  105:11
**17th**   28:22
**18**   105:21
**180**   54:1
**19-23649**   1:3
  11:14
**1968**   53:22
**19th**   121:23
**1st**   30:11

**2**

**2**   52:24 53:3 79:4
  81:23 88:11 95:16
**20**   91:4 97:6 98:4
  100:17,19 105:21
**200**   30:3
**2002**   36:15 67:20

**2007**   53:24
**201**   32:12
**2016**   54:2
**2018**   44:17
**2020**   47:24
**2021**   1:16 2:2
  88:16 123:25
**205**   60:12
**20852**   30:4
**20th**   68:4 110:18
**21**   36:15
**211**   30:18
**225**   28:15
**23**   60:8 68:9 74:23
**23rd**   90:24 91:17
  110:19
**248**   1:13
**24th**   91:18
**25**   60:9
**2536**   3:11
**257**   54:1
**25th**   110:19
**26th**   31:11 110:19
**27**   68:9
**270**   70:21
**27th**   110:19
**28**   63:11
**2858**   3:11
**28th**   36:12 38:4
  39:18 43:11
**29**   60:12 63:14
**2921**   3:22
**2966**   3:25
**2982**   5:17 6:24
  15:10,16 16:12
  18:6,17
**2983**   5:17 6:24
**2988**   4:13,23 5:2,6
  5:9,12 9:19,24
  10:2,6 11:14,20
**2989**   3:11
**2d**   53:24

**3**

**3**   36:15 53:2
**30**   69:24
**300**   1:13 123:22
**3006**   2:6,21 3:5
**3028**   4:2
**3057**   4:5
**3099**   4:8
**31**   31:3
**3100**   4:10
**3110**   4:14
**3111**   4:17
**3120**   15:11
**3121**   15:17
**3122**   4:20
**3123**   4:23
**3125**   5:3
**3129**   15:22 17:2
**3166**   16:12
**3185**   3:17 5:17 6:3
  6:8,24 7:20 8:2,13
  10:12 12:17 14:4
  14:20 15:3 16:2,8
  16:18,24 17:13
  19:9 24:18 25:10
  25:14
**3186**   16:3
**3187**   16:9
**3188**   5:6
**3199**   5:10
**3231**   16:13
**3232**   16:19
**3235**   5:13
**3246**   16:25
**3248**   17:4
**3251**   17:8
**3256**   5:19 13:5
  14:4 15:2 19:9
**3257**   5:23
**32601**   30:12
**3262**   6:4 13:24
**3263**   6:14 10:17
  13:9 15:3

| | | | |
|---|---|---|---|
| **3264** 6:19 | **3397** 19:9 | **3447** 24:15 | **555** 54:1 |
| **3265** 7:1 15:2 | **3398** 19:10 | **3448** 24:19 | **570** 29:4 |
| **3268** 7:5 15:2 | **340** 28:22 | **3449** 24:25 | **5th** 58:25 70:18 |
| **3270** 7:10 15:2 | **3403** 19:14 | **3450** 25:7 | **6** |
| **3271** 7:14 14:4 | **3404** 11:24 | **3451** 25:11 | **6** 3:24 89:7 |
| 15:2 | **3405** 19:18 | **3452** 25:15 | **6/28/21** 4:16 |
| **3273** 8:3 58:16 | **3407** 19:22 | **3453** 13:6 | **6/30/21** 4:10 |
| **3274** 8:7 | **3408** 20:3 | **3455** 13:10 | **60** 42:1 45:22 |
| **3275** 8:14 | **3409** 20:7 | **3456** 25:18 | 46:13 49:23 54:4 |
| **3276** 8:19 15:2 | **3410** 20:10 | **3457** 26:1 | **60654** 32:20 |
| **3277** 8:22 | **3411** 20:13 | **3459** 13:18 | **6177** 4:1 |
| **3278** 9:3 | **3412** 20:16 | **3460** 26:9 | **619028** 4:19 |
| **3279** 9:6 | **3413** 13:25 | **3461** 14:21 | **626** 30:11 |
| **3280** 9:12 | **3414** 20:19 | **3462** 26:17 | **64** 61:2,25 69:15 |
| **3283** 17:14 | **3415** 20:22 | **3465** 15:5 | 69:23 79:4 81:23 |
| **3288** 9:16 | **3416** 20:25 | **3474** 2:13,22 | **67** 45:4 |
| **3292** 9:20 | **3417** 21:2 | **3482** 116:19 | **6750** 4:4 |
| **3293** 9:24 | **3418** 21:5 | **3490** 26:21,24 | **7** |
| **3298** 10:3 | **3419** 21:9 | 117:2 | **7** 33:3,25 63:2 |
| **3299** 10:7 | **3420** 21:12 | **3491** 26:25 117:3 | 69:17 |
| **330** 123:21 | **3421** 21:15 | **3492** 2:23 | **7/23/2021** 17:22 |
| **3301** 10:13 13:9 | **3422** 21:18 | **35** 104:18 | **70** 32:4 |
| 15:3 | **3424** 21:21 | **353** 32:19 | **7023** 41:3 |
| **3304** 10:19 13:9 | **3425** 22:3 | **36th** 28:15 | **717** 19:13 |
| 15:3 | **3426** 22:10 | **38** 98:12,12 | **719** 19:13 |
| **3305** 17:20,25 | **3427** 14:6 | **390** 53:22 | **766** 70:22 |
| **3306** 10:22 15:3 | **3428** 22:13 | **3rd** 29:21 31:19 | **8** |
| **3309** 17:25 | **3429** 22:18 | **4** | **8.4** 12:15 |
| **3323** 11:3 13:24 | **3430** 12:6 | **4** 53:3 | **8/5/2021** 22:5,15 |
| **3327** 18:7,17 | **3431** 22:21 | **414** 53:22 | **800** 29:21 |
| **3332** 2:8,11,21 3:7 | **3432** 22:25 | **450** 28:5 | **80s** 104:13 |
| **3333** 2:11 3:7 | **3433** 23:3 | **452** 53:24 | **82739** 3:24 |
| **3335** 11:11 39:18 | **3435** 13:1 23:11 | **462** 53:24 | **84** 60:16 |
| **3347** 3:12 | **3437** 23:16 | **46204** 30:20 | **85.5** 45:3 |
| **3355** 18:11 | **3438** 12:12 | **478** 53:24 | **850** 29:12 |
| **3357** 11:15 | **3439** 12:20 | **5** | **86** 31:18 |
| **3359** 11:18 | **3440** 23:19 | **5** 89:3 | **88** 97:5 |
| **3368** 11:21 | **3441** 23:22 | **50** 99:22,22 | **88041** 3:21 |
| **3372** 18:19 | **3442** 13:2 24:18 | 103:22,23 | **9** |
| **3396** 14:14 19:2 | 25:10,14 | **50/50** 105:18 | **9** 1:16 2:1 |
| 22:9 | **3443** 24:3 | **500** 34:7 | **9019** 2:7,21 3:5 |
| | **3446** 24:9 | **52nd** 31:3 | |

**94115** 31:12
**95** 79:11 104:18
**9th** 37:14 43:12

**a**

**aaron** 6:24 112:14
**abatement** 62:19
**abide** 61:8
**ability** 54:9
**able** 79:9 88:22
  89:10 95:1 100:3
  105:2 108:25
  114:14 115:21
**abrams** 9:5
**absolute** 68:21
**absolutely** 87:6
  90:15
**accept** 55:1
  105:25
**acceptable** 114:20
**acceptance** 92:1
**access** 15:19 17:1
**accompanying**
  71:7
**accomplish** 113:8
**account** 53:8
  60:15 61:2,25
  99:16 121:23
**accounted** 82:22
**accurate** 123:4
**accused** 120:6
**achievable** 42:17
**achieves** 48:9
**acknowledged**
  118:9
**act** 69:11
**acted** 54:24
**action** 36:14
  44:16,19
**actions** 40:25 41:1
**actively** 98:20
  111:18
**activity** 48:5

**ad** 13:6,25 14:1,5
  14:8,13 15:1,4
  17:3 18:21 19:2,4
  19:10,17,21 20:2
  20:6 23:15,25
  24:2,6,8,12,14,22
  24:24 25:3,5
  30:17 59:9 88:18
  93:16 112:25
  115:13
**add** 38:3,23 50:13
  50:20 60:9 88:11
  95:20,21
**added** 88:16
**addition** 35:8 41:1
  44:21 59:11 70:23
  121:21
**additional** 43:8
  44:7 61:3 92:24
**address** 36:10
  37:16 39:13 43:1
  46:6,8 47:1,3,7
  56:20 58:11,22
  63:4 64:12,13,21
  72:14,15 87:12
  89:1,2 93:17,19
  97:21 99:13 100:6
  107:14 114:6
  117:14,15
**addressed** 43:19
  43:23 64:21 70:8
  71:23 96:8 116:3
**addresses** 55:14
  88:21 92:1
**addressing** 36:9
  62:1 69:25 101:7
  110:7 116:10
**adjustment**
  106:12
**admitted** 114:4
  117:16
**ado** 76:18

**adult** 98:8 99:3
**advance** 40:7
  56:17 78:13 88:2
  116:23 119:19
**advantages**
  109:25
**adversary** 84:4
  116:2
**adversely** 36:19
**advocated** 80:5
**afanador** 29:1
**affect** 36:19 46:4
  46:23 48:19 54:9
  55:19
**affidavit** 19:16,20
  20:1,5 77:24
**affiliated** 3:16
  5:17 7:19 8:13
  10:11 11:9 12:4
  12:16 13:1,15
  14:12 15:15 16:7
  16:17,23 17:13,19
  17:25 18:5,17
  19:1,8 22:9,18
  23:9 25:24 26:7
  96:3
**affiliates** 14:19
  26:15
**affirmatively**
  53:13
**afternoon** 58:25
  107:1
**agenda** 2:1,1 35:4
  35:8,20 36:4
  37:15 107:25
**aggregate** 45:3
**aggressively**
  109:4
**agnostic** 76:10
**ago** 36:12 59:7,14
  73:23 111:7
**agree** 45:25 63:15
  72:8,8 76:23

**adult** 98:8 99:3
**agreeable** 81:3
**agreed** 2:4,18 3:3
  50:3 52:12 112:23
  112:25 113:14
**agreement** 46:15
  50:3 52:18 53:4
  55:3,19 64:6 86:1
  96:5 99:25 111:24
  112:21
**agreements** 54:9
  107:7
**agrees** 80:3
**ahc** 59:9 63:21
  80:6
**ahead** 36:1 67:2
  76:20 77:16
**akin** 33:8 110:11
**al** 11:14 13:17
  26:1,9
**alberta** 35:12
**alexa** 25:13
**allee** 5:9
**allegations** 48:1
  118:19
**allege** 84:20
**alleged** 44:21
**allen** 2:11 8:13
  29:8 40:17
**allergan** 63:10
**allies** 72:6
**allocate** 99:22
**allocated** 100:14
  103:22
**allow** 17:6 18:21
  23:5 25:20 26:11
  58:20
**allowance** 9:23
**allowed** 84:21
  90:18 105:10

78:22 79:20 80:1
  80:7,10,11 81:6
  87:1 114:3 117:18

**allowing** 110:15
**alternatively** 91:8
**altogether** 115:23
**ambiguity** 79:15
**amended** 2:1 3:14
3:14 5:16,21 6:1
6:16,23 7:18 8:5
8:11 9:1,19,22
10:10 11:1,1,8
12:3,9,15,24
13:14,23 14:11,17
15:14 16:1,6,16
16:22 17:11,18,24
18:4,15,24 19:7
21:25 22:8 23:8
25:22 26:6,13
35:4,6 39:20 88:3
94:12 95:2 114:19
**amendment** 12:14
**america** 6:9 7:5
33:16
**american** 5:22
6:11,12,13 33:19
33:21,22 102:11
**amici** 17:6 18:9
**amount** 45:3
61:15 63:17 65:3
67:14 82:19
**analysis** 62:17
68:15 73:12
**analyzed** 69:5
**ancillary** 46:19
**anderson** 53:22
**andersonbrecon**
11:17
**andino** 96:16
**andrew** 17:3 31:6
94:15 118:18
**angst** 71:24
**anker** 6:8 34:3
114:12,12 116:11
119:21,21

**answer** 49:4 57:8
72:9
**anticipated** 78:12
**anybody** 83:22
84:21 90:17
**anyway** 65:17
81:7 119:6
**apart** 111:16,21
111:21
**apologies** 91:21
99:4
**apologize** 49:14
90:21 94:19
**apparently** 69:24
90:12
**appear** 51:25
95:19 102:2
**appearance** 88:20
**appearing** 89:9,15
**appears** 44:2
55:13 63:18 82:20
**apply** 42:20
**appreciate** 51:17
52:8 68:24 77:11
95:5 102:1 113:17
119:23 122:8
**appropriate** 37:3
37:14 39:14
**approval** 41:3,7
46:3,6,22 48:13
52:11 53:4 54:14
56:1 96:9
**approve** 26:19
40:10 48:22
**approved** 40:3
46:25
**approving** 62:12
**approximately**
45:4 60:12 61:1
67:1
**april** 47:25
**ardavan** 8:6

**area** 97:2,10
**aren't** 40:8 72:19
**arguably** 42:11
**argue** 69:13 100:3
106:14,16
**arguing** 106:20
**argument** 44:7
54:13 58:23 65:10
70:13 87:10 99:11
99:24 100:7
102:16 103:10,14
103:14,16 104:17
104:22 105:24
107:1,6,17 110:22
111:1 112:1
115:13 120:19,20
120:21
**arguments** 38:19
46:12 55:12 63:1
64:22 72:21 75:18
101:6,8,23,25
103:15 104:4,9,11
105:8 107:21,24
108:3 109:14
**arik** 33:13 110:10
**arising** 44:21
**army** 75:3
**arm's** 39:22 47:21
53:15 55:5
**arose** 118:15
**arrange** 90:3,9
**art** 1:25
**arthur** 57:12,15
102:8
**articulated** 64:18
**ashley** 57:6
**aside** 61:10 64:11
98:11
**asked** 42:25 59:21
67:2 100:13,23
101:3
**asking** 37:17 62:2
62:21 67:6 73:17

84:4,18 86:19
90:19
**aspects** 118:7
**aspen** 6:12 33:21
**assert** 40:9
**asserted** 45:3,22
46:14
**asserting** 77:25
**assertions** 76:6
83:12
**assessment** 75:8
**associated** 31:9
50:7 95:9
**assume** 49:14
70:10 77:4 78:2
106:24 110:21
**assuming** 60:7
94:19 105:7 116:5
116:7 118:24
**assure** 47:19
**assured** 63:6
98:14 99:7
**assuring** 48:4
**atkinson** 26:4
**attached** 60:20
65:15,16,17 79:20
**attaches** 72:4
**attack** 84:19
**attempt** 116:6
**attempted** 66:19
**attorney** 6:22 7:1
28:4,21 29:11,18
30:1,2,8,9 31:2,9
31:17 32:3,11,18
33:9 34:6 74:1
75:10 96:23
**attorney's** 31:16
**attorneys** 28:14
29:2 33:2,16
121:7
**audit** 43:14
**august** 1:16 2:1
35:7 43:12 44:17

56:19 58:25 68:9
70:18 74:23 88:15
123:25
**authorities** 54:20
**authorize** 17:17
21:23 23:13
**authorized** 71:16
**authorizes** 71:2
**available** 37:14
40:4,4 121:3
**avenue** 28:5,22
29:21 34:7
**avoid** 42:11 86:11
**avoidance** 83:21
98:6
**avoids** 49:24
**aware** 40:5 108:1

**b**

**b** 1:21 11:17
15:20 25:2 50:4
70:20,23 71:5,11
82:18
**b.r.** 54:1
**babies** 14:14 19:2
19:10
**back** 41:10 57:16
58:4 80:14 87:2
90:4 98:25
**backdrop** 50:15
**backed** 42:7
**background**
102:6
**ball** 13:2 23:10
24:18 25:10,14
26:20,25
**ballots** 10:2,6
18:3,15
**baltimore** 30:4
**bankr** 54:2
**bankruptcy** 1:1
1:12,23 2:6,6,20
2:21 3:5,5,21
36:14 42:13 46:2

48:6 83:23,24
84:6,7 112:21
**bar** 83:22
**barbara** 11:24
**based** 37:19 47:17
55:1 67:21 78:15
79:16 96:2 118:24
121:8
**bases** 64:23 73:9
**basic** 61:8
**basically** 83:22
99:12
**basis** 43:8 65:20
73:20 74:3,12
76:2
**beacon** 13:2 23:10
24:19 25:11,15
26:21,25 52:14
**beg** 112:23
**beginning** 97:17
106:15 117:9
**behalf** 2:7,11,22
3:6,16 4:5 5:18,22
6:4,8,18,25 7:4,9
7:13,21 8:2,6,14
8:18,22 9:3,5,11
9:15 10:13,17
11:10,24 12:5,11
12:18 13:2,6,10
13:16,25 14:5,13
14:20 15:4,11,17
15:20 16:3,9,12
16:19,25 17:3,7
17:14 18:6,10,18
19:1,10,14,17,21
20:2,6,10,13,16
20:19,22,24 21:2
21:4,8,12,15,18
21:21 22:2,13,21
22:24 23:3,10,15
23:19,22 24:2,8
24:14,19,24 25:5
25:11,15,18,25

26:8,16,21,25
29:11,18 31:9,17
33:16 34:6 35:23
37:5 40:17 44:11
44:18 70:8,20
88:25 95:8,15
96:1 97:6,11
110:11
**belabor** 82:8
**believe** 36:18,19
37:2,18,20 38:5
38:18 43:15 44:12
46:9 48:18 54:3
60:11 61:10,25
62:4 64:13 68:2
75:9 76:12 80:4,5
80:9 97:17 103:24
105:8 112:17
113:5
**believes** 79:22
**belk** 5:6
**ben** 6:18 119:16
**bench** 67:19
**beneficial** 42:3
46:11 54:12
**benefit** 46:14
48:14 80:22
**benefits** 51:11
53:11 54:3,18
**benefitted** 51:13
**benjamin** 20:9,12
20:15,18 21:20
22:12,20,24 23:2
23:18 25:17 28:10
56:11
**bentley** 9:14
**bernard** 8:6
**best** 44:13 53:6
77:21 107:22
**better** 121:7
**beyond** 51:6,12
61:21

**bickford** 19:4
**big** 57:9
**billion** 42:1 45:4,4
45:22 46:13 49:23
54:4
**bit** 58:18 116:18
**bizarre** 84:13
**blackline** 16:1
87:19 88:10,11
89:7 92:1
**block** 32:17
**blouin** 21:7
**bloyd** 8:22
**bluntly** 64:2
**board** 69:3 85:11
96:16 111:10
**boards** 72:11
**boldface** 88:15
**book** 86:3
**books** 54:5
**borne** 54:6
**boston** 15:21
**bothered** 104:15
104:16,16
**boyle** 8:2
**brackets** 87:20
**breaches** 44:21
**breadth** 53:17
**break** 99:21
**breaking** 60:18
**brian** 4:5 9:2 30:6
76:22 78:11
**bridgeport** 29:13
**bridges** 7:13
**brief** 17:6 18:9
59:3 63:2 68:20
73:10,10,19 74:1
74:5,12,20 75:17
76:2 115:14
**briefed** 103:12
104:14 117:25
**briefly** 36:7 44:14
51:24 58:12 76:21

[briefly - circulated]

87:12,20 93:17
114:14
**briefs** 59:1,11
62:25 103:17
104:15
**british** 11:6,11
35:12 44:17
**broad** 29:4 42:11
83:24
**broaden** 114:24
**brought** 117:1
**brunswick** 35:13
**brutally** 80:11
**bryant** 33:10
**bryce** 7:20
**buckets** 86:22
**budge** 91:10
**bulk** 56:20 58:11
**bunch** 56:21
**burden** 69:16
121:10
**burnim** 17:7
18:10
**burris** 4:2
**busch** 19:20
**business** 48:3
**butler** 5:13
**b's** 71:8

**c**

**c** 12:5 19:12 28:1
32:1 35:1 119:14
123:1,1
**ca** 31:12
**cahn** 6:24 112:12
112:14,14,17,25
113:11,16,23
**calendar** 43:2,6
**california** 8:7
63:9
**call** 35:19,25 62:5
64:16 71:4,6,12
79:8 81:2

**called** 60:23 69:17
78:3 114:18
117:22
**camera** 90:13,13
90:16,20 91:22
113:3,15,20 114:6
**cameras** 90:6
**canada** 41:2 44:19
50:7,16 51:4 52:7
55:15,16
**canadian** 2:5,12
2:12,16,16,19 3:4
8:10,10 11:7
28:21 29:2,3
35:11,16 36:6,22
37:1 38:5,14,16
39:1,4,6,18,21,25
40:1,8,14,17,18
41:12 42:1,6,10
44:22,25 45:4,6
45:11,13,15,17,20
45:24 46:1,1,14
46:19,23 47:11,12
47:16,22 48:5,8
50:6,24 51:11,12
51:13 52:12,16
54:19,23 55:9,14
55:16 64:15,17,25
100:25 102:10
**can't** 35:25 57:16
**capable** 54:23
55:4 68:2
**care** 99:7
**careful** 73:5
**caremark** 86:12
**carl** 20:21
**carpenter** 28:13
96:1
**carrie** 3:22
**carveout** 51:14
53:1
**case** 1:3 11:14
37:4,19,21 41:9

53:7 62:25 66:16
82:9,17 84:10
86:21 97:9 98:7
104:2 109:2
111:11
**caselaw** 53:25
104:10
**cases** 45:3,11 48:6
51:3,7,7 52:17,20
52:24 54:17 55:9
55:17,20,24 71:5
83:23 84:7
**cast** 18:3,15
**catch** 95:9
**catherine** 32:22
107:19
**causation** 45:9
**cause** 44:2
**caused** 52:2
**causes** 36:13
**ccaa** 46:19
**cede** 47:4 56:8
**center** 31:10
33:25
**ceo** 58:15,16
**certain** 2:11,15
5:22 6:6 8:9 10:15
10:21 12:2 17:16
29:2 35:15 41:3
44:15 51:10 54:15
59:1 67:17 86:2
99:16,17 118:7
**certainly** 39:14
40:25 61:6,18
69:23 86:14 93:23
97:11
**certainty** 48:9
**certified** 123:3
**cetera** 60:2 63:2
111:11
**cfa** 21:20 26:20,24
**chakraborty**
21:11

**challenging** 47:21
**chambers** 31:18
56:4 72:22,23
79:8 85:18 113:12
**chapter** 3:14 5:16
7:18 8:11 9:19,22
10:10 11:8 12:3
12:15,24 13:14
14:3,11,17 15:14
16:6,16,22 17:11
17:19,24 18:4,16
18:24 19:7 22:8
22:17 23:8 25:23
26:6,13 35:6
52:17,19 54:17
55:20,23,23
**characterized**
112:18
**charge** 98:25
**chart** 60:5,19
65:15 79:5 81:24
82:5
**chicago** 32:20
**chief** 71:5
**children** 59:10
98:9 99:3
**children's** 14:8
18:22 19:5
**chime** 75:23
**choice** 68:14 70:1
111:17
**chose** 73:5
**chosen** 54:25
69:18
**chris** 28:9 35:22
**christina** 18:2,13
**christopher** 14:4
17:20 44:10
**chubb** 10:9,13
**cir** 53:24
**circuit** 105:22
**circulated** 118:5

circulating 87:16
circumstance
  43:10
circumstances
  37:2
cite 53:20
cited 54:21
citizens 98:12,13
city 6:16,18
claim 3:21 4:1,19
  41:4,14 45:3
  52:23 54:17 103:7
claimant 109:22
  115:22
claimants 2:5,19
  3:4 5:8 15:5 24:3
  24:9,15,25 25:6
  28:21 35:11,16
  36:6,22 37:2 38:5
  39:7 44:25 45:11
  45:16,25 52:13
  54:16 97:6,12,12
  97:18 98:8
claimants' 45:6
  45:21 52:16
claims 36:13
  41:18 42:1,7,8
  44:21 45:2,6,13
  45:18,21,22,25
  46:13,16,24 48:4
  48:20 49:5,6,23
  49:25 52:16,17
  53:2 54:4,7 62:23
  68:12,13,15 69:14
  69:24 74:4 75:9
  77:25 78:4,17
  80:8 81:21,22
  82:3,21,21 83:18
  84:1,2,15,15 85:2
  85:7 86:12,12,20
  86:20,21 111:17
  111:19

clarification
  111:6
clarify 80:22
  90:20
clarifying 89:24
  102:21
clark 32:19
class 40:17,18,21
  41:4,16 44:16
classes 41:2
clear 46:21 48:18
  54:4,11 55:19
  62:3,3,20 69:20
  93:9,20 102:9,13
  102:14 105:5
  106:19 120:15
clearly 44:13
  48:14 56:25 66:9
  98:13
clerk 4:7 18:2,14
  119:4 121:21
clerks 75:13
clients 39:8 70:8
  88:22
clock 60:1 66:21
close 77:3
closing 101:3,6,8
  104:4
coach 89:18
coached 90:17
coaching 89:17
  90:17
cobb 10:2
code 2:6,20 3:5
  83:24 84:7
cognizant 63:19
cohen 34:5
colleague 56:8
  96:23 102:4,5
collect 50:9
collective 59:13
  122:9

collectively 59:12
  106:9
colloquy 105:5
collura 20:9
columbia 7:9 11:6
  11:11 35:12 44:17
come 54:4 67:14
  72:10 79:5 82:9
  89:5 100:21
  121:10
comes 60:11
  116:22
comfort 45:16,19
  98:5
comfortable
  48:12
coming 78:22
  82:17 86:2
comley 29:10
commenced 37:12
  44:16 47:23
commencement
  88:2
commend 97:8
comment 102:22
  109:18 119:22
comments 70:18
  87:18,19 88:21
  91:25 92:1 99:17
  100:5,6 119:25
committee 13:13
  13:16 14:8,14
  15:4 18:21 19:2,5
  19:10 24:2,8,14
  24:24 25:5,20,25
  26:5,8 33:9 53:21
  53:23 69:5 82:3
  85:22 88:18,18
  98:16 99:2 110:16
  113:1 115:14
committee's 15:1
  23:25 24:6,12,22
  25:3

committee's 69:4
common 44:22
  109:21 114:3
communication
  38:4
company 6:9,10
  6:12,12,13,14,14
  7:17,18,21,22
  10:18 12:18 13:2
  15:21 23:10 24:19
  25:11,15 26:21,25
  28:14 29:19 33:17
  33:18,20,21,22,23
  33:24 52:14 96:2
compelling 83:25
competency 53:14
compiled 59:18
complaint 104:18
completely 79:10
  87:1
complex 45:7
  62:12 67:20 97:9
compliance 85:9
  85:11
complicated 45:8
  80:13
conceivable 75:11
conceivably 50:8
concept 48:4,10
concern 41:24
  42:4,15 84:19
concerned 45:12
  48:25 83:10 97:24
  106:6
concerns 4:12
  39:16
concluded 63:11
  122:17
conclusion 62:10
  71:7
conclusions 70:22
  72:5 79:18

conclusively 62:6
conclusory 77:24
conduct 112:3
conducted 55:3
confer 93:22
101:10 116:20
conference 2:2
3:10 35:5,19 36:3
56:7,17 72:22,23
83:14 85:19,24
89:16 97:15,20,22
99:10 118:6
confess 67:8
confidential
112:20,22
confine 102:3
confirm 48:24
95:17 96:15
confirmation 3:9
6:1,7,16,22 7:7,12
8:1,5,9,11,16,21
9:10,18 10:9,16
11:1,7,23 12:9,24
13:8,13 14:2,17
15:19 17:2 21:25
22:16 23:8 24:1,7
24:13,23 25:4,22
26:5,13 35:6 36:3
36:24 37:1,11,13
39:17,20 40:8
43:14,24,25 46:8
46:18 48:17 50:16
51:2 56:7,18 59:2
62:15 64:19 65:18
66:17 67:18 68:8
70:24 71:1,9,14
71:19 72:6,7 73:9
73:13 74:22 77:5
83:1,5 84:5,22
88:13 90:14 92:11
93:4 95:19 96:5,6
96:8 97:16 98:10
98:22,24 107:4

109:5 111:22
114:16,16,23
115:4,20 116:1
120:2,16
confirmed 42:19
52:19 55:8
conform 51:7
conformation
84:12
conforms 51:3
confusing 82:24
confusion 86:25
109:3
conglomeration
54:22
conjecture 47:17
conjunction 113:4
connected 71:20
connecticut 7:8
7:10 29:11 60:14
70:15 100:13
connection 66:16
114:7 119:1
conroy 24:11
consensually
120:9
consenting 17:3
31:2 94:15,20,25
114:2 118:18,20
119:8,8
consents 18:9
consequence 50:2
conservative
60:11
consider 9:18
54:20 68:7
considerably
119:12
consideration
43:5 52:9
considered 54:24
consistent 69:11
94:12 120:1

consisting 70:22
consla 87:17
95:12
constant 38:4
90:19
consuming 76:14
contact 95:11
contemplated
62:7
contested 36:4
83:1,6
context 45:11
63:9 66:24 100:4
106:5
contingent 15:5
24:3,9,15,25 25:6
84:2,14
continue 67:13
101:10 110:6
continuing 45:18
53:2 54:7
contraband 4:7
contracts 12:14
contrary 46:13
48:1 54:13
controverted 55:2
conversation
108:10
conversations
38:7
cooperate 99:23
cooperation 59:25
coordinate 101:13
101:22 103:7
122:5
copies 113:12
corp 54:1
corporation 6:11
33:19
correct 39:11 41:8
51:20 90:15 105:7
112:5

correctly 122:2
correspond 104:6
cost 45:23 49:24
54:5 63:19
costs 44:20
counsel 30:17
37:4 38:5 43:20
47:2 49:2 53:14
54:24 55:4 66:3
70:7 78:21,21
89:5,10,12,14,18
89:19 93:17 94:20
97:16 98:7 102:1
102:23 103:6
105:20 118:21
count 104:18
120:16
counterparties
39:9
counting 61:4
103:24
country 123:21
county 9:15
couple 38:18
65:21 69:10 76:25
87:25 88:21 90:11
101:16
course 39:8 41:5
44:5 68:25 83:25
84:3 88:25 97:3
113:23 121:15
court 1:1,12 35:2
35:24 37:6,13,17
38:21,24 39:8,12
39:15 40:3,5,7,10
40:11,14,20 41:5
41:6,12 42:15,16
42:24 46:10,19
47:3,6,9 48:13,22
48:23 49:12 50:1
50:19,21 51:16,21
52:3,10 54:10
55:9 56:9,13,15

56:23 57:10,14,17
57:17,20,22 58:1
58:6,9,12,21
60:10 61:4 62:2
62:21 63:3 64:13
65:13 66:10 67:16
70:16 72:1,19
73:2,14,17,20
74:2,5,9,13,17
75:5 76:1,4,20
77:2,22 78:6,9,20
79:3 80:12,14,23
81:4,6,18,20 82:7
82:11,15 83:7,10
84:23 85:10,17
86:9,13 87:1,8,24
88:5,8 89:5,11,23
90:1,5,8,12,18
91:1,2,3,10,15,17
91:25 92:25 93:5
93:7,18,25 94:2,5
94:7,17,22 95:3,7
95:12,20,23 96:10
96:12,20 97:1,3
97:14 98:1,3 99:9
100:24 101:16
102:25 103:5,20
104:5 105:3,20,22
106:3,8,11,22
108:1,5,14,18,22
108:24 109:15,17
110:2,4,6,13,23
111:15 112:3,6,11
112:13,16,24
113:9,12,14,18
114:9,11 116:5,12
116:20 117:5,8
118:2,16 119:3,11
119:20 120:7,13
120:20,23 121:3,9
121:20 122:7
**courtroom** 89:8

**courts** 109:25
**court's** 52:8 58:21
62:17
**cover** 67:3 103:17
113:13
**coverage** 114:23
115:10,25
**covered** 79:8
85:12 94:13 95:16
112:20
**covering** 74:8
**crawley** 4:16
**create** 53:1 55:7
85:16
**created** 52:1
**credit** 36:20
**creditor** 36:19
109:11
**creditors** 2:12,13
2:16,17 8:10,11
13:13,17 25:21,25
26:5,9 29:2,3 32:3
33:9 37:5 41:12
45:19 47:11 48:20
48:20 53:12,23
54:16 64:16 68:17
82:2 84:14 88:18
98:17,18,20 99:2
102:10
**creditors'** 46:4,24
47:13
**creighton** 8:22
**criminal** 97:10
**critical** 48:7
**cross** 59:22 61:7
63:8 64:13 65:3,5
65:6 68:20 69:24
70:6 78:3,3 86:5
112:2 115:12
**crossing** 61:20
**crowell** 31:8
**crystal** 62:20

**ct** 29:13
**cumulative** 70:6
**curascript** 12:18
29:18
**curiae** 17:6 18:9
**currency** 45:5
**current** 62:13
**cut** 67:17 69:8
70:9 94:8 105:1
106:3
**cutler** 33:15

**d**

**d** 1:22 6:8 11:17
11:21 12:22 23:5
34:3 35:1
**d'apice** 5:22
**dalmatian** 119:7
**damages** 44:21
**daniel** 4:4 12:17
29:24
**date** 39:16 68:6
123:25
**daubert** 116:25
**david** 21:4 22:12
**davis** 10:17 28:3
35:22 44:10 56:11
95:12 108:10
122:5
**day** 60:8 63:20
68:5 77:14 87:7
91:5,7,7,10,18
104:22 106:15,15
106:15,16,25
107:1 117:22
118:1 121:21
**days** 36:12 37:25
38:18 58:20 60:8
60:12 61:3 63:11
63:14 65:2 67:4
67:24,25 68:3,4,9
69:9,10 90:23,24
90:25 91:4,23
102:16,17 106:10

110:17,21 111:1,1
111:1 117:20
120:16,18 121:1,2
121:3 122:12
**days'** 36:15
**deadline** 16:11
118:23,25 119:1
**deal** 61:22 99:20
109:4 116:22
**dealing** 69:24
**deals** 92:11 107:9
**deaths** 97:7
**deborah** 20:15
**debtor** 1:9 14:18
26:14 42:3 46:17
52:20 54:18 68:16
81:1 83:9 87:2,16
92:14 103:23
107:6,24 113:4
116:17
**debtors** 2:5,15,17
2:19 3:1,3,16 5:1
5:17 6:17,23 7:20
8:13 9:10 10:12
11:9 12:4,9,16
13:1,15 14:3,13
14:16,17 15:16
16:8,18,24 17:13
17:20,25 18:5,17
19:1,8 21:25 22:9
22:18 23:10 25:24
26:7,11,13 28:4
36:5,11,14 40:5
44:11,15 45:7,10
45:14,19,23 46:24
47:22 48:5,14,24
48:25 50:7,24
51:6 52:1,11 54:6
54:12 56:11 58:25
59:3,5,18 62:4,21
62:25 63:18,21
64:19 69:13,16,22
69:22,25 72:6,16

72:17,18,19 73:4
73:23 76:9 79:19
81:13,21,25 82:3
82:21 83:3,21
85:21 87:8 96:4
98:15 99:3 104:7
105:11 109:21
114:17 115:22
120:7 122:6
**debtors'** 45:24
**debtor's** 35:6,9,17
39:20 43:4,16
44:6,14 46:11,19
49:1,4,22 51:17
52:24 53:6,7 54:5
55:15,22 56:1
58:15,16 61:14
64:24 68:11,12,13
68:14,19 78:21
**debts** 97:12
**decide** 43:25 62:2
77:15 107:12
113:6
**decided** 63:16
87:14 102:24
**decidedly** 105:14
**decimated** 97:4
**declaration** 18:1,1
18:13,13 19:4,12
19:12,16,20 20:1
20:5,9,12,15,18
20:21,24 21:1,4,7
21:7,11,14,17,20
22:12,20,23 23:2
23:18,21,24,24
24:5,5,11,11,17
24:17,21,21 25:2
25:2,9,9,13,13,17
26:3,3 59:16
70:19 71:6,16,18
72:2,4 73:17 74:2
74:8 76:24 77:4
78:11,12 81:12

**115:**9
**declarations** 59:4
59:12 60:22 71:3
119:25
**deeply** 99:8
**default** 111:23
**defendant** 109:20
**defendants** 44:16
44:23 84:13
104:19
**defense** 80:4
**defenses** 73:21
**defined** 53:2,2
88:8
**definition** 83:23
84:8
**definitively** 62:24
**delaware** 9:8,12
**delay** 36:21
**delconte** 20:12
25:17 69:1
**deleted** 89:6
**deliberately** 73:11
**demonstrate** 62:7
**deny** 80:20
**depalma** 29:1
**depending** 72:9
74:9
**deposition** 61:14
**deramus** 22:12
**described** 88:20
**deserve** 105:12,16
**designated** 66:1
107:20 112:20
**desire** 36:23 43:22
48:8 114:24
**destructive** 62:11
**detail** 58:14
**detailed** 60:5
**determination**
74:3
**determine** 62:16

**determining** 70:2
73:21
**deutsch** 28:13
96:1
**develop** 38:19
**dialing** 57:2
**didn't** 75:3
**differ** 41:5
**difference** 37:7,10
86:19
**different** 65:7
86:13,22 88:24
97:10 103:25
104:19,19 105:22
105:23 106:5
**differently** 109:9
**direct** 59:4,6
60:22 61:1,6,8,12
61:12,18,21 62:25
63:12 70:17 92:8
**directed** 85:16
**directly** 78:16
82:1 114:7
**disadvantaged**
71:17 75:2
**disagree** 64:20
115:17
**disclosure** 4:1,12
4:22 5:5
**discovery** 82:2
**discuss** 58:23
78:22 79:12 81:16
109:19 117:13
**discussed** 38:16
60:16 85:6 107:3
117:11
**discussion** 47:23
58:12 64:23 69:19
117:9,14 120:5
**discussions** 78:23
79:7
**dismiss** 104:21

**dispute** 65:1
**disputes** 42:18
**distinction** 81:21
**distributor**
107:20
**distributors** 10:22
17:16
**district** 1:2 7:8
9:15 105:22
**ditech** 69:18
**divide** 102:24
103:1
**dizengoff** 13:16
25:24 26:8
**dmp** 108:8,9
**dmps** 100:17
**doc** 17:25 22:9
**docket** 39:18
58:15 87:14 98:25
116:19 117:2,3
**document** 2:10,21
3:7,11 4:13,23 5:2
5:6,9,12,17 6:3,8
6:24 7:20 8:2,13
9:19,24 10:2,6,12
10:17 11:14,20
12:17 13:1,5,9,24
14:4,20 15:2,10
15:16 16:2,8,12
16:18,24 17:2,13
18:6,17 19:9,13
24:18 25:10,14
26:24 70:21
**documentation**
58:14
**documents** 15:7
114:1,8
**doing** 73:6 77:9
77:21
**doj** 85:13
**dollar** 80:8
**donald** 5:9

donnybrook 64:8
don't 35:24 37:9
38:12,12,18 39:3
40:14 41:4 42:13
42:14 47:6 50:17
51:22 57:7,14
65:24 66:13 69:23
72:12,18,20 74:18
74:23 75:12 76:9
77:10 78:6 79:14
79:15
dorr 33:15
doubt 62:21 68:25
83:21 98:6
doubts 62:24
dow 15:20
dr 11:2 13:23 30:9
92:6,12,15,18,21
116:17
draft 115:4,4
drafting 47:24
48:10 108:9 109:3
drain 1:22 3:24
4:1,4 35:3 62:18
driving 41:2
drops 81:15,16
86:18 90:6 95:1
96:5,7,8 97:13
105:1 106:2
107:20,22 110:11
110:17 111:14,21
111:22 113:2,25
114:2,5,5 118:25
119:1,19,24
dubel 23:2 69:2
81:13
dumel 81:13
duration 53:11
duties 44:22
dylan 95:12

**e**

e 1:21,21 4:16
20:15 22:23 28:1
28:1 35:1,1 123:1
earl 10:2
earlier 119:25
early 104:13
120:3
ease 64:17
easily 105:15
109:21
eastern 88:16
easy 48:10 84:10
ecf 2:8,13,23 3:7
3:11,17,22,25 4:2
4:5,8,10,13,16,20
4:23 5:2,6,13,19
5:23 6:4,14,18 7:1
7:5,10,13,22 8:3,7
8:14,19,22 9:3,6
9:12,15,20,24
10:2,6,13,19,22
11:3,11,15,18,21
11:24 12:6,11,19
13:2,6,10,17,25
14:6,14,21 15:5
15:11,17,22 16:3
16:9,13,19,25
17:4,8,14,20,25
18:7,11,18 19:2
19:10,14,18,22
20:3,6,10,13,16
20:19,22,25 21:2
21:5,9,12,15,18
21:21 22:2,10,13
22:18,21,24 23:3
23:11,16,19,22
24:3,9,15,19,25
25:6,11,15,18
26:1,9,16,21,25
ecke 11:15
eckstein 15:3 24:1
24:7,13,24 25:5

economics 51:16
51:18
ecro 1:25
edmunds 9:2 30:6
76:19,21,22 77:16
77:18,23 78:8,10
79:1,16,23 81:9
81:11,19 82:6
education 15:9
edward 35:14
effectively 41:25
efforts 109:24
eight 59:7 69:4
121:1,2
eighth 15:13
either 75:6,14
81:14 86:1 93:8
el 6:25
elements 73:13
eleventh 16:21
eli 2:7,22 3:6,16
15:10,16 16:2,8
16:12,18,24 17:13
18:6,18 28:8 88:1
122:5
eliminate 115:23
elite 6:13 33:23
eloquent 97:7
else's 115:20
email 56:3 60:20
65:16,17,17 87:16
95:10
emails 90:19
91:22 115:1
embarcadero
31:10
emergency 6:2
30:10 92:6
encouraged 72:17
endo 63:10
engage 118:4
engaged 49:8

engaging 70:7
enormous 61:15
enormously 115:2
ensue 53:9
ensure 40:5 51:1
51:10 111:8
entail 45:7
enter 54:25 87:14
88:6 94:12
entered 51:3
53:10 56:5
entering 47:17
entirely 64:24
98:14 114:15,15
114:20
entities 12:1,6
40:22,25 43:13
50:6 54:7
entities' 54:9
entity 52:2
entry 3:2 36:18
44:13 57:3
eof 5:9
equitable 53:6
equity 68:16
er 11:2
ernest 5:9
eskandari 8:6
esq 19:4
essence 83:16
essentially 52:6
79:25
establish 74:13
established 53:5
establishing 3:9
22:15
estate 44:14 45:19
49:5,7,24 53:7
62:18 63:20 84:1
84:14 86:12,19
estates 45:24
46:11 48:15 53:7
80:6

| | | | |
|---|---|---|---|
| **estimate** 59:21 60:7,11 67:6 | **examine** 61:7 86:5 112:2 | **experience** 53:14 53:15 | **facts** 73:18 74:14 |
| **estimated** 61:16 61:25 | **examiner** 69:3 | **expert** 26:19,23 59:5,13 60:21 81:13 92:13,15,16 92:17,20,22 93:1 93:3,3,13 112:18 116:25 117:5,7,11 | **factual** 45:8 65:1 65:14 74:12 76:1 76:5,6 83:17 85:6 |
| **estimates** 60:6 63:14 | **examining** 65:6 115:8 | | **failure** 111:17,17 |
| **estimating** 61:16 66:23 | **example** 57:23 69:1 99:19 100:12 101:25 102:10 104:18,22 | | **fair** 50:11,12,18 53:6 61:18 72:1 88:7 |
| **et** 11:14 13:17 26:1,9 60:2 63:2 111:11 | **exceed** 14:9 17:17 17:23 18:22 21:24 22:5 23:6,13 25:21 26:12 | **expert's** 113:4 | **fairly** 78:25 |
| **evan** 33:6 108:6 | | **experts** 61:15 | **fall** 32:5 96:24 111:16,21,21 |
| **event** 40:9 55:13 117:22 119:11 | | **experts'** 59:6 | **families** 36:7 62:8 63:22 64:5 78:14 |
| **eventually** 48:11 | **exclude** 26:19,23 74:24 75:1,22 79:24 116:24 120:3,4 121:6 | **explain** 43:9 | **family** 11:24 12:8 12:11 20:22,25 21:2,5,9,12,15,18 22:2 23:22 50:4 52:15 57:4 59:11 70:23 81:14 117:2 |
| **everybody** 91:23 | | **exposure** 50:5 | |
| **everybody's** 80:22 | | **express** 12:18,19 12:19 29:18,19,20 | |
| **everyone's** 119:22 | **excluded** 79:21 | **expressed** 48:14 | |
| **evidence** 60:13 61:25 64:11 71:20 74:16,16,18,21 75:20,21 76:11 77:1,10,19 80:17 82:19 83:3 85:4 85:14 86:24 93:6 114:4 118:8 | **excluding** 74:19 75:25 | **extension** 16:11 59:17 | **family's** 12:23 21:23 23:5 |
| | **excuse** 88:1 103:10 | **extensive** 39:22 47:20 67:21 | **far** 43:17 48:24 59:8 63:6 68:23 70:12 72:2 83:10 118:7 121:24 |
| | **exhibit** 71:8 86:2 89:4 116:22 | **extent** 42:17,19 61:19 68:17 85:1 92:21 100:10 | |
| | **exhibits** 86:2,12 112:19 120:4 | **extra** 106:7,7 | **farash** 11:24,24 |
| **evidentiary** 58:22 63:24 107:5 110:20 111:9 116:15 | **exist** 73:21 | **extraordinarily** 73:5 | **faster** 67:4,5 |
| | **exists** 74:16,18 | | **favor** 62:12 |
| | **exonerating** 82:20 85:14 | **extremely** 83:24 104:2 | **favored** 51:10 |
| **ex** 2:17 3:1 6:21 6:25 43:7 | **expect** 35:18 38:12 69:11 82:1 89:15 102:2 | | **federalism** 103:14 |
| | | **f** | **fee** 14:10 18:24 19:6 22:7 |
| **exactly** 57:21 91:21 105:6 | | **f** 1:21 21:20 123:1 | |
| | **expectation** 117:21 | **f.3d** 53:24 | **feedback** 49:11,15 56:21 |
| **exaggerating** 60:3 | | **face** 42:2 59:3 | |
| **examination** 59:22 63:9,12 65:3,6 66:1 68:20 70:7 78:3,4 | **expected** 41:18 | **facep** 20:1 | **feel** 92:20 121:1 |
| | **expecting** 117:19 120:25 | **facp** 19:16 | **feeling** 79:9 |
| | | **fact** 42:16 55:3 59:12,16 60:21 61:12 67:21 70:21 76:15 79:18 80:1 97:16 98:11 104:16 106:17 111:7 113:21 | **feliz** 32:1,7 95:24 96:18,22,23 97:2 97:4,14,24 98:2 |
| | **expended** 44:20 45:20 | | **felt** 82:23 |
| **examinations** 70:12 | **expense** 53:11 | | **ferrier** 9:24 |
| | **expensive** 76:14 | **factors** 53:9 109:8 | **ferry** 53:19,21 68:13 |

[fiduciaries - full]                                                                          Page 13

**fiduciaries** 98:15
**fiduciary** 98:17
**fiercely** 62:8
**fifth** 9:18,22
   15:14 18:4,15
   34:7 114:19
**fight** 68:21
**fighting** 62:9
**figure** 91:13
**figured** 75:16
   121:16
**file** 10:1,5 77:6
   78:10 79:23,24
   92:15,23
**filed** 2:7,11,22 3:6
   3:16,21,24 4:2,4,8
   4:10,13,16,19,23
   5:2,6,9,12,18,21
   6:3,8,18,24 7:4,9
   7:12,20 8:2,5,13
   8:18,21 9:2,5,11
   9:14,19,24 10:2,6
   10:12,17 11:9,14
   11:21,23 12:4,10
   12:17 13:1,5,9,15
   13:24 14:4,13,20
   15:3,10,16,20
   16:2,8,12,18,24
   17:2,7,13,20 18:6
   18:10,17 19:1,9
   19:13,17,20 20:1
   20:5,9,12,15,18
   20:21,24 21:1,4,8
   21:11,14,17,20
   22:1,12,20,23
   23:2,10,15,18,21
   24:1,7,13,18,23
   25:4,10,14,17,24
   26:7,15,20,24
   36:11 37:20,23
   38:3 39:19 40:19
   40:25 41:1,11,13
   41:18 43:11 45:2

**fink** 5:13
**fire** 6:10 7:17,22
   10:18 28:14 33:18
   96:2
**first** 2:12,16 8:10
   29:3 35:8 37:5
   40:18,24 41:17,21
   43:1 46:23 47:12
   54:16 56:2 58:21
   64:15 65:14 66:7
   66:13,15 68:3
   72:13 80:14
   101:20 105:10
   107:1 110:14
   111:20 116:17
   117:14,22
**fit** 68:1
**five** 37:18 67:23
   91:4 106:7 108:12
**fl** 30:12
**flipping** 57:24
**floor** 28:15,22
   31:11,19
**floored** 60:4
**focus** 38:1 65:13
   68:24 86:19,24
**focused** 92:12
**focusing** 37:21,22
**fogelman** 7:4
   31:24 95:14,15,22
**folks** 56:21 63:13
   99:23 100:6
**follow** 42:15
**following** 39:17
   50:3 67:25 68:4
**footnote** 53:2
   88:16 95:4
**forced** 83:16
   84:11
**forces** 101:12
**foregoing** 123:3
**foreign** 50:23,25
   51:5 52:5

**forget** 59:24
**form** 114:18
**formal** 77:9 96:14
**formalities** 89:3
**formally** 58:18
   84:4,12
**format** 56:4
**formed** 50:6
**former** 58:15,16
   60:25
**formulation** 38:6
**forth** 39:24 51:19
   66:16 104:3
**forthcoming**
   120:11
**forum** 17:7 18:10
**forward** 63:25
   66:20 79:22
**fought** 76:14
   80:11
**found** 82:24
**four** 68:4,8 88:16
   90:23,24,25 92:8
   106:22
**fourth** 101:18
**framed** 71:13
**framing** 71:24
**francisco** 31:12
**franklin** 7:13 8:22
**frankly** 38:10
   41:4 84:6,12
   102:18 103:11
   114:14,22 118:13
**free** 98:25
**fresh** 118:5,6
**friday** 59:17,20
   93:22
**friedman** 7:20
**front** 88:10 89:6
   110:1
**fruitful** 109:19
**full** 40:6 61:3 65:2
   73:12,12 91:7

54:14,15,17 55:23
58:15 59:1,3,12
59:16,16 62:25
63:2 66:14 69:22
69:22,22 70:23
71:3,12 72:16
75:14 77:24 81:12
81:14 84:2,5,15
84:21 85:1,3,20
88:12 92:18,23
95:16 96:13 97:5
98:7,8,10 99:1
116:16 117:3
**filing** 14:9 15:9,13
   16:1,5,15,21 17:6
   17:10,18,23 18:9
   18:23 22:6 23:6
   23:14 26:12 38:8
   70:18 71:2,10,15
   88:3
**fill** 69:9,9
**final** 3:10 18:13
   56:17 58:13 70:13
   119:15 120:14
**finality** 42:18
**finally** 59:15,15
   68:8
**find** 73:18 75:25
   109:20
**finding** 62:22
**findings** 70:21
   71:7 72:5 74:6,10
   75:19 77:3 79:18
   85:5 115:5,15
**fine** 56:15 77:22
   88:23 96:10
   102:25,25 112:6
   114:9,11 118:2
   119:20
**finegan** 19:13
**finish** 73:2 105:2
   115:19

121:1,2
**fund** 50:9 54:9
**fundamentally**
  64:18
**furious** 80:4
**further** 38:11,19
  42:18 51:9 63:9
  77:15 88:3 90:3
**future** 49:24
  63:25 111:11,19
  111:23

**g**

**g** 10:17 35:1
**gainesville** 30:12
**galan** 20:1
**game** 61:19
**garrett** 20:24
**gary** 23:24
**gas** 54:1
**gather** 74:7
**gautam** 20:18
**gayle** 20:1
**general** 6:22 7:1
  30:1 39:23 66:12
  75:10 99:25
**generally** 53:19
  103:12
**generously**
  120:15
**gerard** 12:11
  20:21,24 21:1,4,8
  21:11,14,17 22:2
  23:21
**getting** 50:17
  56:21 87:2 101:4
  117:20
**gift** 62:15
**give** 37:25 52:5
  75:15 77:14 98:5
  100:18 101:1,24
  110:24 119:24
**given** 43:21 55:10
  61:11 63:17 65:23

67:17 69:7,8
  81:24 82:1 84:25
  85:18 99:18
  100:21
**gives** 43:8 45:15
  45:19 101:11
**giving** 48:25
  68:16 80:17 83:11
**glass** 80:2
**glasses** 57:7
**global** 42:17
**globe** 15:21
**go** 35:20 36:1
  43:17 49:10 51:9
  56:22 58:4 62:19
  63:24 65:21 68:11
  73:11 74:19 76:20
  77:16 78:16 80:14
  81:24 85:2 86:12
  87:10,20 110:25
**goal** 67:9 115:24
  115:25
**godman** 70:14
**goes** 41:10 51:5
**going** 37:19 38:18
  38:25 42:5 43:3
  46:6,7 57:9 58:3
  66:7,7 67:1,7,17
  69:10,13,25 70:17
  73:14 75:6 77:8
  77:14,17 81:9
  83:2,16 87:3,4,6
  87:10 88:10 96:15
  101:24 103:25
  106:25 107:10,13
  114:4 116:1,6,8
  116:20 117:12
  118:25
**gold** 8:18 34:10
  66:4,6,8,11 76:23
  117:17,17 118:14
**goldman** 7:9
  29:15 70:14,17

72:1 74:25 75:24
  76:23 80:24 81:5
  82:8,13,14,16
  84:18 85:8,11
  86:7,10,16 102:19
  102:21 103:3
  113:24 114:10
**goldman's** 85:2
  87:2
**good** 35:2,21
  40:16 42:14 56:10
  56:13 58:18,19
  95:14,24 96:18
  101:11
**gotten** 90:22
**gotto** 23:24
**government** 44:17
  46:1,14
**governmental** 2:5
  2:19 3:4 12:1,5
  15:4 24:2,8,14,24
  25:6 35:11,16,16
  36:22 37:1 44:25
  45:6,11,16,21,24
  52:12 54:16 56:2
**governments** 11:7
  35:12 36:6 44:18
  45:1 46:16 47:2
  49:9,19 52:13
**gowrisankaran**
  20:18
**graham** 4:20
**grant** 43:4,7
**granted** 41:6
  59:17
**granting** 17:22
  22:5 55:25
**great** 80:9
**greatly** 80:25
**greenberg** 29:1
**greenspan** 20:15
**gregory** 23:21
  70:19

**greville** 25:9
**ground** 109:21
**group** 8:14 12:6
  13:6,25 14:1,5
  17:3 19:17,21
  20:2,6 23:15 57:4
  94:25 99:2 107:20
  108:8,19,20,24
  109:1,12,16 118:3
  118:21 119:5,7
**group's** 12:1
**groups** 59:9 98:14
  98:18 115:22
**grueling** 59:25
**guarantee** 6:11
  31:10 33:20 95:7
**guard** 24:5
**guardian** 8:14
**guess** 42:25 49:1
  50:1,2,8 52:6
  61:22 65:16,23
  66:6 75:11 79:6
  87:17 93:15 96:12
  106:11 116:14
**guidance** 101:15
**guilty** 85:13
**gulf** 7:16,21
**gump** 33:8 110:11
**gupta** 19:16
**guys** 121:16

**h**

**h** 8:2 15:3 24:1,7
  24:13,21,23 25:5
  119:14
**hair** 115:19,20
**hale** 33:15
**half** 60:8 68:5
  79:5 91:10
**hamermesh** 21:14
**hand** 50:10
**handed** 119:4
**happen** 81:9 86:4

happening  68:22
happens  107:4
happily  59:17
happy  35:19 44:6
  47:1 65:25 72:15
  93:19 100:5,11,18
  101:1,9,14,17
  102:20 113:19
  118:21 120:8
hard  42:2 52:3
  61:10,17 76:13
  80:11 105:25
  113:12 121:5
  122:8
harm  44:20
harrington  6:18
haven't  72:21,25
  75:12,16
he'll  96:17
head  85:8
heads  119:24
healthcare  44:20
hear  35:25 37:6
  39:3,7,15 40:7,14
  44:6 56:14,15,24
  57:17,20 58:9
  65:11,25 66:9
  96:19 97:7,11
  101:17,20,24
  104:20,20
heard  38:22 44:4
  46:9 47:2 64:16
  70:15 79:17 84:22
  90:10 94:15 95:1
  110:11 112:15
  113:25 114:13
  117:20,21,25
hearing  2:1,2,4,10
  2:15 3:1,9,14 5:1
  5:8,12,15,21 6:1,6
  6:16,21 7:7,12,16
  8:1,5,9,16,21 9:1
  9:5,8,14,18,22

10:1,5,9,15,21
11:1,5,13,17,20
11:23 12:1,8,14
12:22 13:4,8,12
13:22 14:1,8,16
15:1,19 17:2,6,10
17:16,22 18:1,9
18:13,21 21:23
22:5,15,16,20,23
23:2,5,13,18,21
23:24 24:5,11,17
24:21 25:2,9,13
25:17,20 26:3,11
26:19,23 35:4,6
36:21 37:7,8,11
37:11 39:17 40:8
43:12,24 58:22
61:23 63:15,20
65:14,19 66:17,24
66:25 67:18 68:8
72:7 76:16 77:5
83:2 84:11 88:3
90:14 94:21 95:19
96:7 97:16,17,19
97:20,23 101:13
107:4 110:16,18
111:10 112:4,9
114:16,23 115:3
115:24 116:1
117:10,11,23
118:23 120:17
hearings  89:16
  90:18 97:7
heavily  62:12
held  3:10 45:25
help  80:25 83:20
  91:23
helpful  60:18
  62:16 86:7 115:2
  115:13,16,18
  117:19
hickey  4:8

highly  51:14
  66:24,24 67:7
hoc  13:6,25 14:1,5
  14:8,13 15:1,4
  17:3 18:21 19:2,5
  19:10,17,21 20:2
  20:6 23:15,25
  24:2,6,8,12,14,22
  24:24 25:3,5
  30:17 59:9 88:18
  93:16 113:1
  115:14
hold  46:17 49:7
holding  12:18
  29:19 62:4
holdings  53:25
hollister  30:16
hon  1:22
honor  35:21 36:2
  36:8,9 37:9 38:2
  38:22 39:5,7,11
  40:13,16 42:22
  44:9,14 46:5 47:1
  47:8,10,19 48:21
  49:3 50:13,18,20
  50:22 51:20,24
  56:6,10 57:1,13
  60:5,19 62:15
  63:1,15,24 65:8
  65:11 66:6,8,11
  66:11 70:14 73:1
  73:5,16 74:11,25
  75:24 76:8,19
  77:18,23 78:10,15
  78:18 79:1,13
  80:21,24 81:11
  82:6,8,13 83:19
  85:9 86:7,10 88:1
  88:7 89:22 90:16
  90:22 91:14,20
  92:5 94:6,14,18
  94:18 95:5,8,14
  95:18,22 96:11,19

98:4 99:14,16
100:10 101:5,9
102:19,23 103:4
103:18,21 104:23
105:4 106:2,19
107:18,18 108:6
108:17 109:6,23
110:1,10 112:10
112:12,14 113:3
113:16,24,24
114:7,12 116:1,4
116:11 117:17
118:14,17,17
119:15,23 120:6,7
120:12,14,15,17
121:18 122:4,14
honor's  96:9
  102:22 113:3
  114:24 115:19
  116:15 117:4
hope  58:7 72:8
  104:23,24 105:3
  108:11,24 118:3
hopeful  114:14
hopefully  98:5
horewitz  25:2
hospital  9:15
  92:12,14,16
hospitals  13:6,25
  19:18,22 20:3,6
  23:16 30:17 59:10
  92:7 93:17
hostile  60:23
hour  65:4 67:1
  79:6 104:9
hours  60:7,8,12
  60:15 61:2,3,25
  65:2,6 69:1,1,2,4
  69:15,23,24 79:4
  81:23 86:6 101:3
  103:22,24 104:3,5
  104:8 105:24
  111:6

housekeeping
 112:18
hrycay  26:20,24
 116:25
huebner  14:20
 28:11 50:20,22
 51:20 57:1,16,21
 57:23 58:4 79:13
 79:13 80:13,15,21
 83:19,20 90:10,12
 90:15 91:2,9,12
 91:16,20 98:4
 105:4,5 106:3,4,9
huge  105:17
hundred  82:2
hundreds  98:20
hyde  27:3 123:3,8
hypothetical
 73:19 74:8,21
 86:21
hypothetically
 73:24

i

i.e.  52:13 101:18
iac  46:1
iacs  44:22 45:13
 45:17
identified  82:16
 115:14
iii  3:25
il  32:20
immediately
 37:13 59:18
impact  78:2
impeachment
 89:4
implication  84:9
importance  48:7
important  99:5
 104:2 111:13
 122:12
impossible  90:20

impression  85:16
 85:24 98:23
improperly  13:22
inappropriate
 115:7
inclination  75:21
include  63:1
 77:20 83:15
 110:21
included  14:11
 18:24 19:6 22:7
 63:12
includes  49:6
including  45:8
 52:22 53:9,12
 55:21 60:1 69:17
 69:17 97:6 98:9
inclusive  110:19
incorporated
 76:25
incorporates
 49:21
incorrect  118:20
increase  109:25
incredible  63:17
 63:19
incredibly  80:13
incurs  63:20
independent  6:2
 11:2 30:9 53:21
 69:3 92:6
indiana  30:19
indianapolis
 30:20
indicated  114:17
indirectly  54:8
indiscernible
 35:23 41:20 44:24
 45:18 50:16 51:12
 53:17 63:2 65:12
 66:8 67:3,8 71:11
 71:19,22 81:5
 84:17 85:14 89:24

94:1,23,24 99:6
 104:24 108:3
 110:5 111:11,24
 113:5 114:1
individual  14:1,5
 40:22,25 41:15
 57:18 59:9 84:4
 99:8
inform  115:8
informal  96:3
 108:19
information  59:19
 92:24
informing  120:6
initiative  15:9
injunction  48:6
 52:23 103:7 111:3
injunctions
 107:10
injury  97:6,12,18
 98:7
inquiries  75:14
insinuations  46:7
insurance  6:9,9
 6:10,10,11,12,13
 6:13,14 7:17,17
 7:21,22 10:9,13
 10:18 28:14 33:16
 33:17,18,19,20,21
 33:22,23,23 96:2
 114:18,22 115:10
 116:2
insurer  13:8
insurers  6:6 10:16
 100:23 114:13
intend  48:19 71:6
 81:2 115:15
 118:10
intended  66:17
 71:4 72:6
intent  62:6 115:11
intents  48:3

interest  36:16
 37:21 43:8 44:13
 53:6,12,13 55:20
 61:13 82:25 83:8
 83:23 84:8 88:12
 88:17 101:21,22
 107:22 114:3
interested  38:6
 43:15 75:24
 108:21
interject  115:25
interjection  99:4
interrupt  40:20
interrupting
 49:14
intervene  83:1
 84:4,12
intervened  83:6
introduce  86:5
 93:1,2,10
introduced  93:4
introduction  74:7
invariably  105:7
investigator  77:25
 78:7,11
involve  116:16
involved  67:21
 75:7 98:21 122:10
involvement  41:9
ira  13:16 17:7
 18:10 25:24 26:8
iridium  53:23
 68:13
irrelevant  70:3
 121:6,14
irve  7:9 29:15
 70:14 82:13
island  35:14
issue  36:20 41:10
 64:12 69:18 72:24
 77:15 81:25 84:24
 89:2 92:7,12 99:5
 100:7,11,20 101:2

104:2,5 105:9,18
108:9,12 109:12
111:6 112:18
113:1,5 114:5,7
**issues** 40:24 45:8
58:23 62:1,11
68:10 74:1,3
84:24 85:6,19,22
85:25 86:11 93:23
99:4 100:1,14,18
100:20,22 101:7
101:12 103:7,12
104:12 105:23
106:21 107:22
108:3,25 109:2
111:2 113:25
114:22 115:6,11
115:21,23,25
116:3 117:24
119:18 120:9
121:9
**it'll** 112:8
**item** 35:8
**items** 77:19 85:15
**it's** 39:14 43:12
50:13,18 52:3
57:4,5 58:14 68:5
68:25 71:24 72:3
72:12 73:18 74:5
75:11 77:10,13
78:1,25 79:10,13
79:21,23
**ives** 21:1
**i'd** 58:12
**i'll** 42:22,25 57:10
70:9
**i'm** 35:19 37:17
38:10 43:3 44:6
53:19 56:21,21
57:6,24 58:1,7
59:15 60:3 61:19
67:17 70:11,17
72:5 74:17 75:6

76:4,5,20,21 77:8
77:8,14
**i've** 41:6 44:6
67:19 69:7,8

**j**

**j** 2:7,11,22 3:6,16
7:9 8:14,18 9:24
10:12 14:4 15:10
15:16 16:2,8,12
16:18,24 17:13
18:6,18 20:21
21:17 24:17 29:8
29:15 34:10
**james** 4:16 7:13
8:21 19:13
**jammed** 40:9
**jasmine** 13:2
23:10 24:18 25:10
25:14 26:20,25
**jayne** 24:11
**jeanne** 19:12
**jenner** 32:17
**jennifer** 21:7
**jeopardize** 46:18
**jerome** 9:24
**jesse** 20:12 25:17
69:1
**jessica** 25:2
**jill** 9:5
**jillian** 9:11
**john** 8:2,2 23:2
24:5 58:15 69:2,2
81:13
**johnson** 33:2,2
63:10,10 108:7,8
108:25 109:1
**joinder** 7:16 9:5,8
10:15
**joining** 64:8
**joint** 3:14 5:16,21
6:23 7:7,18 8:11
9:2 10:10,21 11:8
12:3,15,24 13:14

14:3,11,17 15:14
16:6,16,22 17:11
17:18,18,23,24
18:4,15,24 19:7
22:8,16 23:8
25:23 26:6,13
**jon** 23:18
**jonathan** 25:9
**jones** 15:20 33:6
108:6,7,17,19,23
110:8
**joseph** 10:17
12:17 22:20 23:21
26:16 29:24 70:19
71:6 72:13 73:14
73:16 74:11,15
75:3 79:20
**joseph's** 76:24
**joyce** 9:20
**judge** 1:23 3:24
4:1,4 35:2 80:18
83:12 93:19 94:4
97:8 98:18
**judgement** 55:11
55:11
**judgment** 121:8
**julianne** 32:1,7
96:23
**july** 36:12 38:4
39:18 43:11
**june** 59:7
**jurisdiction** 42:12
52:3
**jurisdictions**
42:18
**juvenile** 98:9

**k**

**k** 5:13
**kaminetzky** 20:10
20:13,16,19 21:21
22:13,21,24 23:3
23:19 25:18 28:10
56:8,10,11,14,16

58:7,9,10 66:20
72:13,15 73:1,2,4
80:2 96:13 99:12
111:6
**kaminetzky's**
65:17
**kamintezky** 99:14
102:20 106:19
108:2 116:13,15
117:6 119:15,17
120:14,22,24
121:18
**kaplan** 34:5
**karavolas** 11:10
28:25 38:22 39:5
39:6,11,13 40:11
47:3,8,10,11
**katie** 15:20
**keep** 37:15 102:7
**keip** 121:22
**kelvin** 5:2
**kenan** 5:18
**kennedy** 17:7
18:10
**kenneth** 15:3 24:1
24:7,13,23 25:5
**kevin** 12:5
**kim** 29:17
**kimberly** 57:2,23
**kind** 76:17 77:1
101:7,12 119:6
**kleinberg** 34:5
**knew** 72:24
**know** 38:17 40:4
40:6 43:6 47:6
48:16 50:17 51:3
51:9,22 56:17
66:14 67:20 70:2
72:12,16,18,20
73:12 74:18,23
76:1,9,15,17
77:13 79:5 80:18
80:25 82:1,9

84:11 85:1,4
86:24 87:4,9 88:9
91:6,6,21 93:8,13
96:16,18,20,24,25
97:8 98:12 99:23
100:3,5,5,10,12
100:18,22 101:5,7
101:24 102:6
103:8 104:10,15
104:18,20 105:9
105:10,12 106:5,5
107:12,16 111:12
113:9 115:5,9
119:7 121:7 122:2
122:9
**knowledge** 53:15
**kobre** 29:17
**kotler** 10:13

**l**

**l** 3:17,22 7:20 21:7
22:20
**l.p.** 1:7 2:8,23 3:6
3:15 5:16 7:19
8:12 10:11 11:9
11:13 12:4,16,25
13:10,15,17 14:6
14:12,18,21 15:11
15:15,17 16:3,7,9
16:13,17,19,23,25
17:12,14,19,24
18:5,7,16,18,25
19:8,14 20:10,13
20:16,19 21:21
22:9,13,17,21,24
23:3,9,19 25:18
25:24 26:1,7,9,14
26:16 35:3 50:23
**labrador** 35:14
**laid** 106:21
**language** 88:15
89:7 96:5 116:6
**largely** 103:15
105:8,9 114:20

**larger** 41:10 42:4
109:16
**larry** 31:24 95:15
**late** 10:1,5 47:25
82:17 119:25
**law** 8:14 14:16
26:12 30:8 32:1
44:22 70:22 71:7
79:19 97:11 104:7
105:9
**lawrence** 7:4
10:12 21:14
**laws** 50:6
**lawyer** 68:2
**lawyers** 88:25
97:9,10 118:3,4
122:10
**lazar** 9:11
**lead** 86:1 102:3,23
105:20 113:1
**leading** 38:8
**leaning** 106:12
**leave** 14:9 17:17
17:22 18:22 21:24
22:5 23:6,13
25:21 26:11 40:1
50:17 65:24 93:15
102:5 110:24,25
**leaving** 98:11
**led** 109:17
**ledanski** 27:3
123:3,8
**legal** 4:7 45:8 63:7
64:18,25 105:23
123:20
**legier** 20:5
**legitimate** 36:20
**legitimately** 61:20
**length** 39:23
47:21 53:15 55:5
70:25 117:9
**lengthen** 115:24

**lengthy** 72:4
111:3
**leonard** 28:18
95:25,25 96:11
**les** 4:2
**letter** 3:24 4:1,4,7
4:10,12,16,22 5:5
15:19 17:1,1 18:9
92:2
**level** 83:12
**lexington** 28:5
**liability** 6:11
33:20 50:5 71:21
**lianna** 22:23
**liberty** 6:9,10,10
28:15 33:17,18,19
**light** 69:21 76:7
78:23 117:10
**likelihood** 79:4
80:20 119:13
**limbo** 40:1
**limine** 75:13
77:11 80:1,16
**limit** 14:9 17:17
17:23 18:22 21:24
22:6 23:6,14
25:21 26:12
**limitation** 55:21
**limited** 2:15 6:6
10:16 14:2 37:23
40:19 41:11,23
42:21 47:13 52:8
61:11,12 68:11,14
**line** 39:1 99:6
115:19
**link** 94:21 96:17
**list** 71:8,8 78:7
82:19 87:3 95:11
96:22 106:14
**listed** 52:13 65:20
82:5 92:8,16
107:23

**listen** 96:15
110:16
**lists** 101:12
**lite** 29:1
**literally** 37:19
60:1,4 118:14
119:4
**litigate** 43:25 80:8
**litigating** 45:20
109:19
**litigation** 15:5
24:3,9,15,25 25:6
45:7 49:25 53:9
53:12 62:10 63:5
63:25 64:4 76:13
78:17
**litigator** 62:14
**little** 37:25 49:4
66:7 76:18 87:17
116:18 117:19
**live** 63:12
**llc** 15:21 18:2,14
29:10 53:24
**llp** 8:14 28:3
30:16 31:1,8 33:1
**local** 35:15
**location** 57:5
**locked** 91:2
**logic** 93:12
**long** 49:9 67:2,6
73:10 76:14 80:9
91:6 102:17
**longer** 67:23
**look** 63:3 68:23
69:3 74:20 75:12
85:17,20 98:24
113:18
**looked** 72:21,25
106:24
**looking** 35:25
50:10 72:2 80:2
87:25 92:25 93:2
93:10 117:16

119:9
loop  77:3
lot  48:11 49:11,17
  58:19 67:4,5 72:9
  82:4 100:21
  103:12 109:13
lots  86:25 88:24
low  60:6 63:13
lowest  53:8
lowne  23:18 69:2
lynam  20:24
lynch  17:20
lynn  15:20
lytle  28:20 39:6

**m**

m  13:9 17:3 21:11
  24:5 25:13
m.d.  20:1
m.s.  19:20
ma  32:5
maclay  12:5
madison  28:22
madly  90:18
mail  4:7
main  29:12 32:4
maintain  71:15
majesty  11:5,10
major  37:10
majority  35:18
making  72:20
  105:8 110:15
man  89:22,24
  90:2,6,9
manitoba  35:14
manner  89:10
manufacturers
  10:22 17:16 44:24
marc  26:16
maria  11:15
marilyn  59:17
marine  7:17,22
mark  21:20 31:14
  58:16 95:8

marked  4:7
markowitz  14:13
  19:1,9
marshall  14:20
  28:11 49:16 79:13
  83:19 105:5
martin  21:17
  24:17
mary  5:13
maryland  7:8 9:3
  30:1,2 60:14
  76:22 77:24
  100:13
masiowski  6:2
  11:2 13:23 30:9
  92:6,12,15 93:10
  106:23 116:17
masiowski's
  92:18,21
massachusetts
  96:24
massive  62:18,18
material  42:2
  83:17
materials  92:13
  112:22 113:2,13
matter  1:5 36:4
  37:15 38:20 39:16
  52:9 83:1,6 122:1
  122:2
matters  37:16
matthew  8:18
  34:10 117:17
maureen  21:11
maxi  62:5
mba  19:16,20
mcclammy  19:14
mcelroy  28:13
  96:1
mcgaha  3:22
mckesson  32:18
  107:19

md  19:16 30:4
mean  41:20 50:1,8
  68:23 74:18 75:5
  79:4 81:20 82:8
  83:7,20,21 84:23
  84:25 103:9 104:8
  104:15 105:5,23
  110:24 113:18,21
  116:7
meant  89:1
mechanics  97:15
media  15:21,22
meet  82:23 93:22
  101:9,10 116:20
members  88:19
  94:24 109:12
  110:16
memorandum
  14:16 26:12
memorialize
  51:18
mentioned  71:11
  77:20 90:23,25
  106:13 111:7
  120:18
merit  46:20 62:1
  80:9 86:23
merits  43:18,19
  53:9 62:5,9,10,23
  63:4,16,19,23
  64:11,21 68:12
  69:13 73:7,8,18
  73:20,25 78:4,18
  97:20
metromedia
  109:8
michael  3:25 6:2
  11:2 13:5,23,24
  19:17,21 20:2,5
  23:15 26:3 30:22
  93:16
middle  105:18

midnight  87:17
  92:2
million  84:3
mind  85:6 118:6
mineola  123:23
mini  62:4
minimal  78:25
minute  83:20
minutes  100:17
  100:19 104:25
  105:21 108:12
  110:12
mis  98:23
missed  80:18
  94:19 102:4
missing  61:19
modification
  52:22
modifications
  107:7 110:15
modified  88:9
mom  5:13
moment  94:15
  113:25
money  50:8,11
  52:6
month  59:14
morgan  9:14
moring  31:8
morning  35:2,22
  40:16 56:10,13,16
  56:19 59:20 92:3
  95:14,24 96:18
  106:25
morrisey  6:22 7:1
mortimer  12:22
  23:5
motion  2:17 3:1,1
  9:1,14,23 10:1,5
  12:22 14:8 17:6
  17:17 18:21,22
  21:23,24 23:5,6
  23:13 25:20,20

26:11,11,19,19,23
35:9,9,10 36:10
36:11,17 37:11,22
37:23 39:2 43:2,2
43:4,9,11,15
52:11 55:21 56:1
75:13 77:9,11
79:23,24 80:1,16
81:15 100:3
104:21 116:24
118:19 119:4
121:22,22
**motions** 43:7
116:15
**motivation** 42:6
**motives** 47:16
**motorola** 53:22
**mount** 80:4
**move** 91:7 99:10
101:19 120:3
**moving** 37:15
58:19
**mph** 19:16
**mscg** 80:6
**msg** 80:6
**msge** 59:9
**multi** 12:1,5
**multibillion** 80:8
**multiplicity**
105:17
**multitude** 48:16
**mulvaney** 28:13
96:1
**municipal** 37:5
**municipalities**
38:14 40:18 41:16
41:17,21 47:12
99:2
**municipalities'**
46:23
**municipality** 2:12
2:16 8:10 29:2
64:15 102:10

**munis** 64:17,25
100:25
**mute** 49:10,12
56:22,24,24 57:3
57:8,10,14 58:5,7
102:7
**muted** 57:13,17
57:24 58:2
**mutual** 6:9,10
33:17,18
**myers** 33:1 108:7
**myopic** 62:14

**n**

**n** 28:1 30:18
32:19 35:1 123:1
**name** 57:3 95:9
96:21,22
**named** 40:22
44:15,23 57:2
**narratives** 97:5
**narrow** 64:18
93:23 107:10
108:25 114:24
115:3,17,22
117:24 120:8
**narrowed** 52:24
107:14 119:12
**narrowing** 52:25
**narrows** 36:24
**nas** 14:8,14 18:21
19:2,5,10 59:10
98:9 99:3
**nation** 2:12,16
8:10 29:3 37:5
46:23 47:12 51:10
54:16 56:2
**national** 10:15,18
17:8 18:11
**nations** 40:19
41:18,21 64:15
**native** 5:22
102:11

**nature** 43:21
53:16,16 61:12
64:25 99:19
**navigators** 6:12
33:21 114:13
**ne** 30:11
**necessary** 100:24
121:13
**necessitate** 36:21
**need** 51:18 58:17
59:22 61:17 64:3
64:12 65:22 68:7
69:15,21,23 77:11
79:22 80:15 81:7
81:7 93:15 100:16
100:17 101:6
108:12 110:24,25
112:9 117:15
118:12 121:1,4,23
122:12
**needed** 78:15
100:11
**needs** 53:5 71:23
100:7 107:2,4
122:11
**negotiate** 114:21
115:16 116:6
**negotiated** 116:9
**negotiating** 50:14
98:21 110:8
**negotiations**
39:23 47:21 49:9
49:17,18 53:16
55:2
**neither** 116:16
119:7
**net** 68:19
**neutrality** 114:18
**never** 41:6 67:23
84:3
**new** 1:2 28:6,16
28:23 29:22 31:4
31:20 32:13 33:4

33:11 34:1,8
35:13 104:11
119:9
**newark** 29:6
**newfoundland**
35:13
**news** 15:22 58:18
58:19
**nicholas** 28:25
39:5 47:10
**nickolas** 11:10
**nicole** 28:18 95:25
**night** 60:6,20
87:18
**nights** 60:2 66:21
**nine** 61:3
**ninth** 16:5
**nj** 29:6
**nobody's** 103:25
**non** 17:3 31:2
46:17 48:4 52:20
52:20 54:15,18
83:9 94:15,20,24
114:2 118:18,20
119:7
**noon** 59:23
**normile** 3:25
**north** 6:13 33:22
**note** 36:4 55:18
66:25 81:11,15
90:10 105:19
107:21 113:13
**noted** 108:21
**notice** 2:1,17 3:2
15:9,13 16:1,5,11
16:15,21 17:10
26:23 35:9 36:10
36:15 37:3 44:3
117:3
**noticed** 61:15
118:22
**notion** 68:18
99:25 105:24

notwithstanding
74:7
nova 35:13
novel 63:6
november 47:24
nub 42:21
number 38:7
44:23 47:14 61:11
85:9,10 86:11
87:21 100:22
106:1,23 107:25
108:4 112:19
nutshell 45:22
ny 1:14 28:6,16,23
29:22 31:4,20
32:13 33:4,11
34:1,8 123:23

**o**

o 1:21 35:1 123:1
o'melveny 33:1
108:7
o'neal 30:22 93:16
93:16,19 94:1,4
o'neil 13:6,25
19:17,21 20:2,6
23:15
object 58:18
objected 43:14,16
objecting 8:17
9:10 38:8,14
59:15 60:14 62:6
64:10,11 66:2,3
71:17 72:10 78:5
100:12,19 102:23
113:2 117:6
objection 2:10,15
3:21 5:1,8,8,12,15
5:21 6:1,6,6,16,17
6:21 7:7,12,16 8:1
8:5,9,16,21 9:1,1
9:8,14,18,22 10:1
10:5,9,10,16,21
10:21 11:1,13,17

11:20,23 12:14
13:4,22,23 14:10
17:18,23 18:23
19:6 22:7 23:14
35:15 37:23 40:19
40:22 41:23,24
42:22 43:17,19,25
44:4,5,7 46:5
47:13,13 52:8
54:14 55:6 56:2
59:2 61:23 64:19
64:20,24 65:1,4,5
68:17 88:12 92:10
92:11,19 95:17,20
96:14 100:2 101:8
102:11 107:22
108:9 116:17
118:22,25 119:1
objections 12:2,10
12:23 13:8 14:19
15:1 22:1 23:7,25
24:6,12,22 25:4
26:15 37:1 38:11
39:24,25 40:3,6,9
46:8 48:17 55:22
58:13,14 64:18
68:11 71:11 84:5
96:3 99:19,20
102:12
objection's 46:6
objector 88:25
103:23 107:23
objectors 39:1,1,4
39:9 40:15 43:20
47:5 48:2 54:18
55:21 56:2 58:24
59:20 80:7 105:6
105:12 106:1
objector's 46:12
obligation 50:25
51:1,5
obligations 51:10

observe 94:25
observed 89:8
observing 89:9
obvious 50:14
63:5
obviously 37:16
65:19 72:3 79:19
82:18,25 85:13
86:4 98:11 99:6
103:25 105:14
occur 36:23
occurred 58:20
84:3
odd 75:10,17
offered 73:18
77:10 93:22
117:12 119:2,14
office 30:1 31:16
32:10 103:19
offices 32:1
official 13:12,16
25:20,25 26:4,8
33:9 53:23 88:17
98:16 99:2
offline 115:1
oh 57:14 66:4
112:25
oil 54:1
okay 36:2 37:17
38:21 39:3,12
40:11 42:24 43:3
47:6 48:23 50:19
51:21,21 52:10
56:9,14 57:12,15
57:22 58:4,6,7,10
58:10 72:19 73:14
76:4 77:2,22 78:9
79:3 80:12,23
81:18 82:7,15
86:9 87:24 88:7
91:20,25 93:5
94:5 95:5,7,23
96:10,22 98:1,3

99:9,11 103:3
106:5 108:5,5,14
108:18,22 110:9
111:5 112:11
113:6 114:9
116:12 118:16
119:3,11,20
120:13 121:20
122:7
old 67:4 123:21
omni 121:21
omnibus 14:19
26:15 68:6 91:5,7
91:18
once 117:23
ontario 35:13
onus 87:15
open 87:19
operating 53:24
opinions 92:22
opioid 44:20 62:1
62:19 63:4,9,23
78:4 97:4
opportunity
49:19
opposed 37:22
40:21 70:13
102:22 107:15
109:19 116:23
opposing 62:8
64:8 89:5
opposite 116:3
opposition 10:15
41:11
opt 41:2
oral 44:7 58:23
65:10 87:10 99:11
102:16 104:17
105:24 106:25
107:6,17 110:21
111:1,2,4 120:19
120:20,20

[order - perspective]    Page 22

**order**  2:4,18 3:2,3
  17:22 22:5,15
  35:20 36:5,11,13
  36:19,23 42:10
  44:12 45:2,15
  46:3,11,18,22,25
  51:2 52:12 55:25
  56:3 71:2,2,9,16
  81:2 87:4,9,13,25
  88:4,6 92:4 94:9
  94:10,12 95:2
  96:5,8 106:13,20
  111:22,22 114:16
  115:4,20 116:8
  117:20,23 118:4
**ordered**  56:4
  112:8
**ordering**  100:20
**ordinarily**  36:15
**oregon**  8:17 9:9
  60:15 100:13
**organizations**
  17:8 18:11
**outlined**  41:11
**outreach**  60:5
**outside**  121:8
**overestimating**
  67:9
**overlapping**
  99:19
**overnight**  99:12
**overrule**  56:1
**overruled**  47:14
**oversimplificati...**
  51:15
**oxycontin**  97:5
**ozment**  7:13 8:22

**p**

**p**  3:17 23:21
  26:20,24 28:1,1
  35:1
**p.c.**  34:5

**pa**  10:18
**page**  11:21 14:9
  17:17,23 18:22
  21:24 22:6 23:6
  23:13 25:21 26:12
  53:3 64:19 65:4
  70:21 71:12 79:4
  81:23 82:2 89:3,7
**pages**  66:14 70:24
**paper**  66:14
**papers**  38:15
  42:23
**paragraph**  52:24
  53:3 88:11 95:16
**paragraphs**  70:22
**parameters**  69:7
**pardon**  112:23
**park**  33:10
**parker's**  5:13
**part**  41:19 42:13
  49:17 53:17 63:23
  71:24 72:22 77:4
  78:12 80:19 83:5
  92:16,20 93:11
  108:8 111:9,13
  117:8
**parte**  2:17 3:1
  43:7
**participants**
  57:18
**participate**  49:19
  88:13,19 94:20
  96:6 97:19 111:18
  114:15
**participating**
  65:18 83:22 98:21
**particular**  43:10
  100:11 107:8
  111:14
**particularly**
  47:16 85:18
  108:21

**parties**  36:16
  37:21,24 38:8,25
  43:6,8,15,22
  46:17 47:16 48:11
  52:20 53:13 54:7
  54:19 55:4,20
  59:16,24 60:7
  61:1,8,13 63:15
  63:18 64:1 65:18
  65:22,25 68:6
  69:20 70:9 71:10
  81:1 82:25 83:4,8
  83:14,18 90:19
  96:13 101:17,21
  101:22 103:6,25
  104:3,8 109:25
  111:10 113:14,19
  116:9,16
**parties'**  38:13
  53:16 55:19 59:21
**partners**  15:21
**parts**  78:16
**party**  36:25 42:12
  45:1 51:25 52:4
  52:23,23 61:6
  68:15 69:14 71:4
  75:9 81:22 82:21
  83:9,23 84:8,10
  85:7 88:12,17
  89:4 99:20 100:15
  101:19 102:12
  103:6,22 104:1
  107:9 109:7 111:3
  111:9 117:13
**party's**  63:23
**pass**  84:10
**path**  42:14
**patience**  98:2
  119:23
**patrick**  6:22,25
  13:5,24 19:17,21
  20:2,6 23:15
  30:22

**paul**  5:18 6:3,4
  7:17,21 13:9 30:3
  30:8,14 32:15
  92:5 103:18
**pause**  37:3 65:8
  65:11
**pci**  11:17
**pennsylvania**
  30:18
**people**  8:6 35:18
  37:25 49:14 57:8
  61:16 69:8,11
  77:12,14 80:10
  84:5 86:19 88:10
  88:24 90:7,23
  94:8 99:5,7
  101:12,24 103:1
  104:12 105:10
  106:14 110:8
  111:16 120:17,25
  121:5,13,14
**people's**  87:18
**people's**  35:17
**perceive**  85:15
**percent**  37:18
  60:9,16 79:11
  99:22,22 103:22
  103:23
**perfect**  58:4 80:21
  117:18
**period**  68:1,20
  85:12
**permission**  58:21
**permit**  70:6
**permitted**  95:18
**person**  49:12 57:2
  61:7 67:5 95:10
  106:7
**personal**  97:6,12
  97:18 98:7
**perspective**  42:5
  48:2 49:4,22 52:1
  92:9

peter 5:22 24:21
ph.d 25:3
ph.d. 22:12
pharma 1:7 2:7
  2:22 3:6,15,17
  5:16 7:19 8:12
  10:11 11:9,13,17
  12:4,16,25 13:10
  13:15,17 14:6,12
  14:18,21 15:11,15
  15:17 16:3,7,9,13
  16:17,19,23,25
  17:12,14,19,24
  18:5,7,16,18,25
  19:8,14 20:10,13
  20:16,19 21:21
  22:9,13,17,21,24
  23:3,9,19 25:18
  25:23 26:1,7,9,14
  26:16 35:3 50:23
  56:12
pharmacies 10:22
  17:17
pharmacy 12:19
  29:19 107:20
philip 6:8 34:3
  114:12
phillips 28:20
  39:6
phone 66:4 102:7
phones 57:5
physician 6:2 11:2
  30:10 92:6
pi 99:3
pickering 33:15
pieces 81:12
piling 105:13
pillsbury 31:1
pittman 31:1
pittsburgh 10:18
place 30:3 74:12
plainly 46:8

plains 1:14
plaintiffs 49:7
plan 3:14,15,21
  4:12 5:1,8,12,16
  5:21 6:1,7,16,17
  6:23 7:7,12,12,18
  8:1,5,9,12,16,21
  9:2,10,19,22 10:1
  10:5,9,10,16 11:1
  11:8,20,23 12:3,9
  12:10,16,23,25
  13:14 14:3,11,17
  15:1,13,14 16:2,5
  16:6,15,16,21,22
  17:10,12,19,24
  18:4,16,25 19:7
  21:25 22:1,8,17
  23:7,8,25 24:1,6,7
  24:12,13,22,23
  25:3,4,23 26:6,14
  35:7 39:20 42:19
  43:14 48:7,17
  49:20,25 50:9,11
  50:15 51:1,7 52:1
  52:6,19,24 54:10
  54:11 55:8,23,23
  56:17 58:13 59:1
  59:8 62:8,17 65:7
  66:15 69:17 72:7
  73:13 74:1 75:7
  82:4 83:14 85:21
  87:21 88:3,13
  92:10,14 107:7,9
  109:25 114:19,19
planet 80:3
planning 70:4,10
plans 51:6,17 73:9
plea 85:13
pleading 77:6,20
  84:21 96:14
pleadings 37:20
  85:3 98:6,8,10
  99:1

please 70:15
  98:14 99:6
pledge 120:7
plenty 76:11
plevin 31:14 95:8
  95:8,13
plus 69:23
pm 122:18
podium 47:4 56:8
point 38:2 40:20
  46:21 62:5 63:5
  64:10 66:4,23
  70:11 72:1 74:9
  74:22 76:12,23
  79:14 80:15,16
  81:24 82:9 83:3
  85:3 86:14 87:2
  92:3 96:12 101:20
  102:15 105:6
  107:21 109:9
  117:12 119:6
pointed 76:11
  80:2 98:19
pointing 109:13
  118:1
points 46:8 66:12
  76:25 77:16,19
  78:18 93:21
  102:12
polk 28:3 35:22
  44:10 56:11 95:12
  108:10 122:5
portion 58:22
  65:14 110:21
  111:9
posed 75:5
position 67:10
  71:18 105:15
  113:5
positions 75:7
possible 57:4,6
  67:13,16 91:13

possibly 120:3
potential 36:25
  50:5 53:11 59:19
  111:24
potentially 54:6
pplc 44:15
practice 96:24
pre 2:2 112:21
precedent 103:13
preceding 106:16
precisely 115:5
  116:2
predicting 61:16
preis 33:13
  110:10,10,14
  111:5,20 112:5,10
prejudice 63:25
  64:3 111:8,25
  112:1
preliminary 18:1
  75:15
preparation
  67:14 97:22
prepared 71:20
  106:16 114:6
preparing 106:14
preposterous 69:4
present 66:17
  87:4 99:24
presentation
  63:24 65:9 94:9
presentations
  107:6
presently 54:10
preserve 64:7
preserved 45:17
  54:8
preserving 84:15
press 77:15 79:22
presumptively
  79:21
pretrial 3:10 35:5
  35:19 36:3 56:7

[pretrial - questioning]                                                Page 24

56:17 97:14,20
99:10
**pretty** 42:21
84:20 103:17
105:25
**prevailing** 88:16
**prevent** 113:22
**previously** 54:21
59:5
**primarily** 43:17
54:17
**primary** 42:15
85:21
**prime** 4:7 18:2,14
**primed** 81:8
**prince** 35:14
**principally** 45:12
**prior** 36:24 37:13
41:3 90:18
**priority** 68:21
**probably** 60:11
66:2 67:4 68:5,25
77:21 78:25 79:5
79:10 91:18
105:21 106:17
118:9 119:13
122:1
**problem** 42:9
49:15 55:7 57:9
61:9 87:3 102:24
105:9
**procedural** 84:10
**procedure** 48:3
113:22
**procedures** 22:16
87:13 92:4 94:9
94:10,12
**proceed** 56:7,20
58:11,23
**proceeding** 46:19
50:24
**proceedings** 46:3
84:5 88:19 122:17

123:4
**process** 41:19,20
41:20 42:5,13
49:20 59:25 66:25
67:7 79:14
**product** 39:22
47:20
**professional**
121:8
**professionals** 75:3
**promise** 114:21
**proof** 36:5 69:16
121:10
**proofs** 41:13,16
45:2 54:17 85:2
**proper** 61:21
**properly** 66:20
**proponent** 85:21
**proponents** 66:15
**proposal** 87:11
**proposed** 12:14
41:25 44:16 51:6
51:7 52:22,25
53:1 63:17 70:21
71:7 72:5,10 74:6
75:19 77:3 79:19
85:5 87:18 99:11
99:15 115:4
**proposing** 101:1
**protective** 53:20
**protocol** 71:1,9,16
71:19 110:15
**protocols** 3:9
**protracted** 62:11
**prove** 62:9
**proves** 105:6
**provide** 63:22
71:9 81:2 100:23
**provided** 37:3
89:3 92:14,24
98:25
**provides** 46:14
71:2 74:11

**providing** 109:10
**province** 11:6,11
52:2,20
**provinces** 38:17
39:19,21,25 40:1
40:8 42:6,10
47:16,23 48:8,8
48:16 50:7,10
51:11,12,13 54:19
54:23 55:15
**provinces'** 55:10
55:16
**province's** 48:2
**provincial** 28:21
35:11 36:6 39:6
44:18 45:1 46:15
47:2,11 49:9,19
52:13,16 54:15
**provision** 71:18
71:21
**provisions** 42:19
47:20 48:7
**public** 9:15
**publicly** 40:4
**pullman** 29:10
**pullo** 18:2,14
**purdue** 1:7 2:7,22
3:6,15,17 5:16
7:19 8:12 10:11
11:9,13 12:4,16
12:25 13:10,15,17
14:5,12,18,21
15:11,15,17 16:3
16:7,9,13,17,19
16:23,25 17:12,14
17:19,24 18:5,7
18:16,18,25 19:8
19:14 20:10,13,16
20:19 21:21 22:8
22:13,17,21,24
23:3,9,19 25:18
25:23 26:1,7,9,14
26:16 35:3 50:23

56:12 68:6 91:5
**pure** 105:9
**purely** 61:24 62:1
**purpose** 48:9
61:11 73:22 76:3
82:20 86:15
**purposes** 48:3
88:4
**pursuant** 2:5,20
3:4 12:15 15:14
16:6,16,22 17:11
**pursue** 55:22
69:18 111:19
**pursued** 109:4
**pursuing** 64:17
111:16
**purview** 54:20
**pushing** 81:25
85:22,25
**put** 40:4 56:23
62:24 63:8 64:2
66:20,21 68:25
73:24 74:1 75:4
89:7 103:15
115:14 116:8,13
116:14 117:4
118:8,8,10
**puts** 71:16
**putting** 122:9

**q**

**quality** 80:3
**quarropas** 1:13
**quebec** 35:14
**queen** 11:6
**question** 39:13
42:25 46:10 49:1
52:4,7 54:18 72:9
72:12 84:18 89:24
90:22 102:21
110:17 113:7
**questioned** 55:12
**questioning** 55:10
70:9

**questions** 47:1,4
47:15 60:10 61:4
65:19 70:7
**quick** 80:24
**quickly** 57:24
111:13
**quite** 55:18 69:20
87:21 109:2
122:11

**r**

**r** 1:21 6:24 9:14
19:4 28:1 35:1
119:14 123:1
**radar** 116:15
117:4
**rahul** 19:16
**raise** 64:25 75:19
77:17 92:3,7
102:15 107:24
**raised** 52:7 58:24
96:3 100:19,22
101:8 102:13
103:6 108:9
**raises** 85:6 107:22
**raising** 84:19
**range** 53:8 121:8
**rarely** 43:7
**rational** 99:21
100:9
**raymond** 12:8,11
20:22,25 21:2,5,8
21:12,15,18,23
22:2 23:22 52:15
**rdd** 1:3 3:11
11:14
**reached** 48:11
59:20
**react** 66:19
**reactions** 101:16
**read** 44:5,6 50:2
75:16 104:15
115:10 119:3

**reading** 57:7
75:25
**ready** 107:2
**real** 42:8 55:9
62:10,15
**realize** 119:22
**really** 37:22,24
43:17 49:18,23
54:13 55:2 68:7
71:23 72:20,21
76:2 77:6,9 80:15
80:16 81:25 83:17
93:14 96:12
116:16 121:4,13
**reason** 37:17
39:17 49:8 55:9
64:6 76:8 114:25
**reasonableness**
53:8
**reasons** 47:15
54:25 64:20 77:7
109:7
**rebecca** 19:20
**rebut** 92:17
**rebuttal** 60:24
61:2,24 92:16,17
93:3,9,14,15
**received** 3:24 4:10
4:16 60:4 66:13
85:12 99:12,17
100:4
**receiving** 51:14
**recite** 109:8
**recognition** 46:18
50:15,24 51:4
55:8
**record** 35:22
51:19 55:1 60:8
77:1,5 80:19
81:16 83:5,17
92:20 93:9,11,21
94:13 104:12
107:8,14 115:2

120:10 123:4
**recovery** 44:19
**recross** 60:10 61:4
**redacted** 13:12
26:3
**redirect** 60:10
61:4
**reduce** 121:5
**refer** 112:19
**reference** 60:19
64:17
**referenced** 39:21
**referring** 85:4
93:13 119:5
**refers** 75:18
**refining** 49:20
**reflect** 107:7
**reflected** 52:18
**refrained** 72:2
**refraining** 64:7
**regard** 41:20,23
42:5 72:24 86:25
89:25 107:8,25
114:1
**regarding** 4:12
7:3 18:2,14 39:14
46:16 62:22 66:12
76:6
**regards** 92:22
**register** 88:14,20
**registered** 43:13
**reiterate** 111:12
**rel** 6:21
**relate** 118:20
**related** 2:10,21
3:7,11 4:13,22 5:2
5:5,9,12,17 6:3,7
6:23 7:20 8:1,13
9:19,23 10:2,6,12
10:16 11:14,20
12:17 13:1,5,9,24
14:3,19 15:2,7,10
15:16 16:2,8,11

16:18,24 17:2,13
17:25 18:5,17
19:8,13 22:9
24:18 25:10,14
26:24 40:24 44:20
48:5 67:22 109:14
**relates** 35:10
36:24 97:5
**relation** 50:6
53:10 55:16
**relatively** 41:9
68:20
**release** 7:4 49:6
52:23 53:1,1
102:12 103:7
109:10
**released** 46:2
**releases** 36:25
42:12 49:20 52:4
52:5 53:17 99:20
100:15 101:19
103:22 104:2
107:10 109:7
**releasing** 109:11
**relevant** 61:22
64:23 73:13
114:23
**relief** 35:15 43:5
43:21,23,23 44:5
44:8,19 48:7
**rely** 93:10
**remaining** 79:12
80:7
**remains** 118:7
**remarks** 44:7
51:23
**remind** 83:10
**reminded** 122:3
**reminds** 121:21
**remote** 22:16 89:3
**remotely** 79:20
**reorganization**
3:15 5:1 6:17,23

7:19 8:12 9:2,11
9:23 10:11 11:8
12:3,10,25 13:14
14:3,12,18 15:15
16:7,17,23 17:12
18:4,16,25 19:7
22:1,8,17 23:9
25:23 26:6,14
**repeat**  104:1,25
**repeated**  105:1
**repeatedly**  109:1
**repeating**  103:1,9
103:9
**replies**  71:10
**reply**  2:15 12:10
13:20,22 14:2,9
14:19 15:1 18:23
19:5 22:1,6 23:14
23:25 24:6,12,22
25:3 26:15 35:17
36:18 44:1,6,7
64:21,24 68:11
71:12 115:14
**report**  82:2 92:13
92:15,17,18,22
93:1,3,9 112:18
113:4
**reports**  59:6,13
81:14 85:9,11
92:20 93:3,13
**represent**  39:22
41:1 98:12,19
107:19 108:7
**representative**
50:23,25 51:5
69:5 98:14
**representatives**
35:17 50:4 52:14
69:16
**represented**  54:23
55:4 97:18
**representing**
40:21 89:19

**request**  15:19
17:1 43:3,5,16,23
48:21 54:14
110:17 115:15
**requested**  59:23
60:16 63:8 64:12
**requesting**  61:1
64:9
**requests**  35:15
**require**  36:15
78:18
**required**  41:3
**reservation**  6:7
11:5 39:19,24
47:14 48:15
**reserved**  67:18
77:21
**reserving**  45:12
67:25
**resolution**  42:17
58:13 108:11
**resolve**  52:15
78:18 79:10
109:19 117:24
**resolved**  44:1
58:17 79:11 96:4
108:11,13 116:22
**resolves**  36:25
39:23 48:16
**resources**  45:20
62:18
**respect**  2:18 3:2
11:7 38:19 39:19
45:8 60:25 61:5
63:1 64:10,12
65:9 115:6
**respectfully**  48:21
**respective**  59:1
**respond**  92:21
105:11,16
**responding**  92:9
**response**  12:2,22
12:23 13:4,8 14:1

23:7 51:23 59:2
82:22 102:22
**responses**  3:19
59:23 60:4
**responsive**  78:12
**rest**  42:22 62:24
98:14 99:7 106:6
**restructuring**
11:13
**result**  82:17
**return**  45:24
**reuters**  15:21
**review**  39:2 73:13
113:3,14,19 114:8
**reviewed**  65:15
68:10 72:17 75:12
93:7
**reviews**  40:5
**richard**  20:9
**ridiculous**  104:6
**riding**  73:6,7
**right**  11:6,10 39:3
42:24 47:6 50:1
51:16,19,21 52:10
57:11,20,22 61:6
72:19 74:10 76:9
77:14,22 79:1
81:18 83:7 85:17
88:5 90:8,17
92:25 93:25 94:7
103:5 105:7,18
106:8,11,21 108:2
110:23,23 111:19
111:19 112:3,11
116:7,12,21 117:1
117:8 118:2,22
121:20,20 122:7
**rights**  6:7 11:5
38:13 39:19,24
45:12,16 46:4
47:14 48:15,19
55:14,15,16,19

**risk**  42:11 64:3
**river**  32:5 96:24
**road**  123:21
**robert**  1:22
**robertson**  28:9
35:21,22 36:2
37:9 38:2 44:9,10
49:3,16 50:12
56:6 57:13 76:8
**romas**  4:23
**room**  1:13 6:2
11:2 30:10 32:12
89:12,15,20 92:6
**rothstein**  6:3,4
30:8,14 92:5,5
93:2,6,20 94:6
107:2
**roughly**  60:8
69:24
**ruby**  4:23
**rude**  90:21
**rule**  21:20 36:15
41:3 43:3 61:9
74:9 111:2 119:13
119:13
**ruled**  79:25
**rules**  2:6,21 3:5
83:24
**ruling**  74:22
94:24 104:13
110:24,25 111:2
116:23 118:24
120:22
**rulings**  111:4
120:20,21

|   s   |
| --- |

**s**  2:10,21 3:11
4:13,23 5:2,6,9,12
5:17 6:3,3,4,8,24
7:20 8:2,13 9:19
9:24 10:2,6,12,17
11:14,20 12:17
13:1,5,9,16,24

14:4,13,20 15:2
15:10,16 16:2,8
16:12,18,24 17:2
17:13 18:6,17
19:1,9,9,13 20:9
20:12,15,18 21:20
22:12,21,24 23:2
23:2,18 24:18
25:10,14,18,24
26:8,24 28:1 30:8
30:14 35:1
**s.d.n.y.** 54:2
**sabine** 54:1
**sackler** 12:8,11,22
20:22,25 21:2,4,5
21:8,12,15,18,23
22:2 23:5,22 36:7
50:4 52:15 59:11
62:8 63:21 64:5
71:21 78:13,24
79:22 81:14 117:2
**sacklers** 45:13,17
45:25 46:2 47:3
62:23 68:15 69:14
73:8 75:18 76:7
76:13 77:25 80:4
80:17 81:22,22
82:21 83:4,15,18
83:25 84:14,24
85:4,7,23,25
86:22 109:10
111:8,23 118:4
**sackler's** 78:21
**safer** 68:25
**saint** 30:3
**samuel** 32:1
**san** 31:12
**sandbagged**
120:11
**sandbagging**
120:6
**sarasota** 9:15

**saskatchewan**
35:12
**satisfy** 53:7
**saunders** 25:13
**saval** 12:17 29:24
**save** 70:5
**saw** 66:4 73:10
97:17
**saying** 69:20 73:7
93:12 108:15,16
113:13,22 117:1
121:15
**says** 67:11 73:19
88:11,14,17 89:9
89:12 113:20
**schedule** 3:9
59:25 99:11,15
101:18 107:5
121:10
**scheduled** 35:4,7
37:10,12 56:18
91:5 121:22
**schwartzberg**
5:18 32:15 103:18
103:18,21 104:23
105:7
**scope** 36:25 40:6
45:25 46:16 61:7
61:21
**scotia** 35:13
**scott** 14:13,20
19:1,4,9 28:11
**screen** 89:11
**screens** 57:25
**scripts** 12:18,19
12:19 29:18,19,20
**sears** 91:17
**seattle** 6:18
**seattle's** 6:17
**second** 38:25
66:23 68:4 94:10
101:21 105:21
106:25 110:17

111:22 116:24
**seconds** 98:5
**section** 2:6,20 3:4
12:15 107:9
**see** 35:24 37:18
53:19,20 57:6
69:20,23 74:2,19
74:19 78:22,23
79:6 82:11,15
85:20 87:15 88:22
89:14,17,19 90:6
99:1,14,16 101:6
101:7 104:9
113:19,20 115:20
117:24 118:6
**seek** 65:2
**seeking** 67:11
72:6 114:17,21
121:5
**seen** 89:11
**send** 96:17 113:12
**sense** 40:7 50:3
68:21 74:24 75:1
75:2,25 78:25
81:6 82:22 99:18
100:21 101:11
112:7 117:18
121:11
**sent** 60:5 92:2
95:10 99:15,15
**separate** 71:12
98:8,15 121:22
**series** 115:1
**serious** 65:19
**serve** 59:4
**served** 59:5,14
71:3 92:18,22,23
**services** 11:18
**set** 39:24 51:19
66:16 104:3
**setting** 90:21
97:15

**settled** 82:4 86:20
**settlement** 4:22
36:13 44:2 47:7
48:2 50:9 53:5,5
53:10,11,18 54:3
54:5,8,15,19 55:1
55:3,7,13 62:7,13
64:6 68:12 69:6
83:9,11 96:16
111:23
**settlements** 14:10
18:24 19:6 22:7
53:14 67:22,23
98:21
**seven** 59:3 60:7
61:24 106:23
**seventh** 87:22
88:4
**share** 114:24
**shareholder** 7:3
62:13 64:5
**shareholders**
47:22 83:7 84:25
**shaw** 31:1
**sheet** 15:10
**sheldon** 78:11,20
**shift** 65:10
**shirley** 5:6
**shore** 14:4
**short** 57:8 65:1
67:17 68:24 101:9
**shorten** 3:1 35:9
36:10,12,17 37:4
43:3,4,7,9,11,16
44:3
**shortened** 2:17
**shortening** 3:2
**shorter** 82:4
**shot** 66:19
**should've** 82:16
121:16
**show** 73:19 74:15
76:12

| | | | |
|---|---|---|---|
| **showed** 61:13 | 17:23 18:24 19:7 | 110:17 111:14,21 | 9:3,5,8,9,9,11 |
| **showing** 57:18 | 21:25 22:7 23:8 | 111:22 113:1,25 | 12:1,5 29:11 30:1 |
| **shy** 90:13 | 25:22 26:6,13 | 114:2,5,5 118:25 | 30:2 34:6 64:7 |
| **side** 50:4 70:20,23 | 39:20 87:22,23,24 | 119:1,19,24 | 70:15 75:10 76:22 |
| 71:5,8,11 78:24 | 87:25 | **source** 71:24 | 77:7,23 86:20,21 |
| 79:22 81:14 82:18 | **sleep** 118:12 | **south** 32:4 | 96:21 104:7 |
| 82:18 98:8,9 | **slight** 106:12 | **southern** 1:2 | 112:15 |
| 99:22,23,24 | **slotted** 107:24 | **sovereign** 42:1 | **stated** 48:15 66:13 |
| 101:13 103:23,23 | **slow** 62:12 | 52:2,5 106:4 | 66:20 |
| 105:21 117:2 | **small** 78:17 79:14 | **speak** 37:4 38:17 | **statement** 4:1,12 |
| 118:21 122:6 | **snapback** 64:4 | 38:24 57:12 58:3 | 4:19,19,22 5:5 7:3 |
| **sides** 59:11 63:21 | **snappy** 119:9 | 90:11 98:13 109:6 | 11:5 12:2,8,23 |
| 118:8 | **snow** 57:2,4,24 | 114:25 115:21 | 13:12,12 15:9,13 |
| **signatory** 64:1 | **solely** 47:17 | **speaking** 82:12 | 16:1,5,11,15,21 |
| **signed** 17:22 22:5 | **solicitation** 18:3 | 88:25 97:11 98:24 | 17:10 21:24 23:7 |
| 22:15 | 18:14 114:19 | 104:24,25 109:7 | 25:22 26:4 70:23 |
| **significant** 42:7 | **solutions** 123:20 | **special** 15:9 | 71:13 95:17,21,21 |
| **significantly** 52:6 | **somewhat** 90:3,12 | **specialty** 6:13 | 96:14 |
| **silence** 63:23 | 101:2 | 33:22 | **statements** 115:9 |
| **similar** 105:8 | **sonya** 27:3 123:3 | **specific** 70:18 | **states** 1:1,12 5:15 |
| **similarly** 69:4 | 123:8 | **specifically** 73:17 | 5:18 7:3,5 8:17 |
| 101:25 | **soon** 94:8 | **specter** 75:19 | 9:10 13:4 14:10 |
| **simmonds** 22:23 | **sooner** 64:14 | **speculation** 47:18 | 17:4 18:23 19:5 |
| **simply** 41:12 | 107:12 | **spell** 117:1 | 22:6 31:2,17 |
| 51:12,25 65:4 | **sophisticated** | **spend** 61:20 | 32:10 41:13 60:14 |
| 69:7 73:11 84:21 | 54:24 55:4 | **spending** 121:12 | 62:6,8 64:2,8 66:2 |
| 100:15 115:18 | **sorry** 53:20 56:21 | **spilling** 39:16 | 66:3 71:17 72:10 |
| **singer** 13:10 | 57:6 59:15 76:20 | **split** 100:1 103:22 | 73:17 74:20 75:6 |
| **single** 61:14 64:25 | 76:21 82:11,13,15 | **square** 30:19 33:3 | 76:13 78:5 83:16 |
| **singleton** 5:2 | 85:10 94:8 95:25 | **st** 7:17,21 | 84:4 85:25 94:16 |
| **sit** 109:8 120:8,8 | 112:25 119:16,17 | **stacey** 7:13 | 94:20,25 95:15,18 |
| **sitting** 76:16 | **sort** 38:6 50:17 | **stakeholder** 98:16 | 98:12 100:13,19 |
| **situated** 89:10 | 57:24 77:3 79:25 | **stakeholders** | 101:20,22,23 |
| **situation** 52:1 | 84:10,19 87:15 | 98:17 | 102:1,2,23 103:8 |
| **six** 68:25 69:1,2 | 99:5 106:4 121:7 | **stand** 72:3 | 103:14 104:9 |
| 101:24 103:21 | **sorts** 48:4 | **standard** 53:4 | 112:21 114:2,2 |
| 104:5 105:24 | **sought** 43:22 44:8 | **standing** 84:23,25 | 117:6,7,15 118:18 |
| **sixth** 3:14 5:15,21 | 44:19 83:21 115:5 | **start** 35:7 43:23 | 118:21 |
| 6:23 7:18 8:11 9:1 | **sound** 81:15,16 | 53:20 118:11,13 | **states'** 62:23 |
| 10:10 11:8 12:3,9 | 86:18 90:6 95:1 | 118:23 | 64:11 76:6 |
| 12:15,24 13:14 | 96:5,7,7 97:13 | **started** 47:24 | **status** 78:16 106:4 |
| 14:11,17 16:1,6 | 105:1 106:2 | **state** 6:21,25 7:8,8 | **statutory** 44:22 |
| 16:16,22 17:11,18 | 107:20,22 110:11 | 7:9 8:7,16,17,18 | |

| | | | **t** |
|---|---|---|---|

stay  91:19
steadfast  6:14
  31:9 33:23 95:9
steege  32:22
  107:18,19 108:15
  109:6,16,23 110:3
  110:5
stephen  21:1
stettinius  30:16
stewart  8:3 58:15
stick  94:10
stipulate  40:10
  76:16 86:14
stipulation  2:4,10
  2:18 3:3 35:10
  36:5,9,11,13,18
  36:23 38:3,7,9,12
  38:16 39:10,15,21
  40:2,7 41:24
  44:12,13 45:2,15
  45:18 46:3,11,22
  46:25 47:17,20
  48:9,10,16,18,22
  49:1,6,21 50:14
  51:1,4,8,14,15,18
  52:11,14,19,21,22
  52:25 53:3 55:18
  55:25 56:3 63:22
  111:7,15
stipulation's
  43:22
stockholders
  53:21
stop  121:14
straight  109:22
straightforward
  49:23 112:9
stray  115:9
streamline  91:13
street  1:13 28:15
  29:4,12 30:11,18
  31:3,18 32:4,12
  32:19

strength  62:22
strictly  93:8
strike  75:10
strong  73:8
strongly  64:20
structure  101:11
stuff  104:11
styled  47:13
subject  48:6 50:5
  52:21 58:13 80:25
  114:1,3
submission  70:20
  112:22 113:2
  114:6
submit  36:17
  46:24 73:20 74:21
  83:3 112:8 113:3
submitted  13:22
  38:15 42:23 48:12
  60:22 61:1,5
  62:25 70:20 71:4
  82:18 92:13
submitting  83:17
substantial  66:1
  73:21 82:19
success  63:6
successors  64:1
suffered  111:4
suffice  105:25
sufficient  37:3
  44:2 104:4 120:18
suggest  42:2,4
  75:20 78:20
  100:20
suggestion  55:6
  57:1 73:22 74:6
suggests  37:24
  42:10
suite  29:5 123:22
summary  50:11
  50:12,18
sunday  59:23

supplement  15:13
  16:5,15,21 17:11
supplemental
  13:23 19:12 21:7
supplemented
  59:12 88:9
support  12:2,9,24
  13:13 14:2,16
  17:1 19:4 21:25
  23:7,25 24:1,6,7
  24:12,13,22,23
  25:3,4,22 26:4,5
  26:12 53:13 59:2
  65:7 70:24 71:13
  83:14 98:10,22
supporters  59:1,8
  59:21
supporting  53:15
  55:12 71:10
suppose  65:21
supposed  71:3
supreme  105:19
sure  38:10 42:7
  47:9 50:21 70:11
  70:16 72:5 79:17
  81:8 87:21 90:1,9
  90:24 91:11 93:18
  94:17 95:11 97:1
  100:21 101:4
  103:3,8 108:1
  109:2 110:13
  112:16 117:11,23
  119:5 120:15
surely  69:14
sureties  96:3
survived  48:5
sutter  32:2
synthetic  79:25
synthetically
  79:25
system  57:18

t  123:1,1
tabulation  18:3
  18:15
taft  30:16
take  67:2,7,8,12
  71:22 83:12 87:15
  91:6 101:15 104:7
  109:13 121:23
taken  75:7 82:2
  105:15 113:1,5
takes  99:16
talk  69:5 86:23,23
  100:11 118:21
talked  110:20
talking  41:15,16
  41:17 73:25 75:17
  87:12 102:6
tamara  4:19
task  48:10 62:14
technical  84:16
tedious  47:21
telephone  85:18
telephonic  66:25
  72:23
telephonically
  28:8,9,10,11,18
  28:25 29:8,15,24
  30:6,14,22 31:6
  31:14,24 32:7,15
  32:22 33:6,13
  34:3,10
tell  70:3 102:7
telling  121:13
ten  104:25 106:7
tens  97:18 98:19
tenth  16:15
teresa  4:13
term  15:10 53:2
  88:8
terms  47:19 48:12
  48:18 51:8,16
  52:21 64:5 84:8

92:14 93:21
**territorial** 44:18
**testify** 81:8
  115:10
**testifying** 65:7,23
  78:24 89:13
**testimony** 26:20
  26:23 59:4,6 60:9
  60:23 61:6,8,13
  63:12,14 64:11
  65:3,9 67:6,11,21
  68:19 69:15,21
  72:10 73:24 76:5
  76:6 79:4,12 82:3
  83:17 92:8 103:9
  103:16 116:25
  117:16 119:2
  121:1,2,6,14
**testing** 119:23
**teva** 63:10
**texts** 90:19
**thank** 35:21 36:2
  39:5 40:11,13
  44:9 47:10 48:23
  49:16 50:22 52:9
  56:6,9 58:10
  59:24 66:8,11
  70:17 73:16 79:2
  80:21 86:7,16
  91:20 94:4,6,14
  94:18 95:6,13,22
  96:11 97:24 98:2
  103:4 110:14
  111:5 112:10
  113:16 114:10
  116:3,11 120:11
  121:19 122:13,14
**thanks** 56:15
  122:7
**that's** 39:11 40:11
  42:1,14,15,17,21
  43:2,6 44:8 49:1
  50:9 51:20 54:10

57:4,8 65:8 70:5
  72:1 73:6,21 74:4
  74:12,16 76:2,17
  77:8,22
**theories** 63:7
**theory** 66:16
**theresa** 4:10
**thereto** 14:19
  26:15
**there's** 40:23 42:9
  49:11 54:13 57:6
  75:21 76:11
**they'll** 57:14
**they're** 57:5
**they've** 69:18,25
**thing** 75:10 82:24
  99:18
**things** 77:12
  79:18 90:20
  101:14 105:17
  111:16,20 116:14
  122:12
**think** 37:9 38:2,13
  38:23 39:14 40:6
  41:4,9,22 42:9,14
  42:14 49:3,8,11
  49:17,22 50:12,13
  50:18 51:13 57:8
  58:1 65:13,22
  67:1 69:19 70:2
  71:23,24 72:13
  73:15 75:1,12,13
  75:19,25 76:10,15
  76:17 77:11,13
  78:14,16,17,19,23
  79:3,10,14,16
  81:15,20 84:6,13
  84:15,18,20 85:14
  85:23 86:1,17,24
  88:2,21 89:1,1
  91:25 93:11 95:10
  95:15 99:18,20,25
  100:2,4,6,15,25

101:10,11,17,20
  102:13,15,18
  103:5 104:7,17
  105:3 106:1 107:3
  108:11 109:20,24
  114:22 115:3,6,11
  115:16 116:9,13
  116:18,21,21
  117:1,3,13 118:9
  119:11 120:2,10
  120:16,18 121:4,7
  121:13
**thinking** 120:25
**thinks** 100:10,24
**third** 19:12 36:25
  42:11 46:17 51:25
  52:4,23,23 54:6
  68:15 69:14 75:9
  81:22 82:21 83:18
  85:7 99:20 100:15
  101:19 102:12
  103:6,22 104:1
  107:9 109:7 111:3
  111:6
**thomas** 4:8 11:21
**thorough** 75:8
**thought** 37:14,24
  43:18 67:3,11
  73:3 87:11
**thoughtfully**
  55:14
**thousand** 66:14
**thousands** 97:18
  98:19,19,20
**three** 31:10
  100:14 102:1
  103:24 104:3,8
  106:15,22 118:3
**thursday** 56:18
  58:25 66:15
  118:23 120:1
**tie** 104:11

**tim** 10:6
**time** 3:1 37:14
  38:1 39:2 41:4
  43:1,3,4,7,9,11,16
  49:13 59:22 60:7
  60:17 61:16,20,25
  63:8,17 64:13
  65:6,9,20,22 66:1
  66:16,19,23 67:2
  67:12,18,18 68:1
  68:7,24 69:8 70:2
  70:5 75:2,3 76:14
  79:15 80:9,17
  85:12 88:16 90:7
  99:22 100:7,11,16
  100:23,23 101:2
  101:12 104:17
  105:10,13,16
  106:24 107:5
  108:12 109:13
  110:24,25 115:12
  115:12 121:12,15
  121:16
**timely** 88:12
**times** 33:3 47:21
  90:11
**timing** 39:14
  121:24
**timney** 58:16,17
**timothy** 21:17
  24:17
**title** 119:10
**tmt** 53:19,21
  68:13
**tobak** 26:16
**tobak's** 60:20
  65:16
**today** 37:7,12
  39:15 41:22 58:12
  64:23 75:15 78:15
  79:10 94:13 118:9
  118:13 120:3

today's 89:15
today's 43:6,12
told 58:1 75:13
top 85:8
topics 99:21
total 60:16
townsend 15:20
trade 33:25
tradeoff 54:11
trailer 53:19,21
  68:13
train 73:6,7
transcribed 27:3
transcript 79:15
  123:4
treat 44:20 77:8
treatment 51:10
  68:18
treats 109:9
triaging 90:19
trial 2:2 60:12
  61:3 62:4,5 63:10
  63:11 67:19,23
  70:5 89:17 97:9
  97:10
trials 67:21
tribe 102:11
tribes 5:22
tried 100:9
trompetta 20:21
troop 17:3 31:6
  57:16 94:14,15,18
  94:23 95:5 118:17
  118:18 119:6,9,16
  119:18 122:14
true 48:3 123:4
trust 54:22 92:12
  92:15
trustee 5:15,19
  13:5 32:10,11
  100:2 101:3,18
trustee's 14:10
  18:23 19:6 22:7

23:14 103:19
try 36:7 66:21
  93:22 103:25
  108:19 115:22
  117:24 120:8
trying 64:7 74:13
  80:10 85:13,16
  89:18 91:23 95:3
  104:25 119:22
tuesday 88:15
turn 36:3 87:10
turned 94:9
turner 22:20
turning 35:24
  44:12
twelfth 17:10
two 40:23 57:5
  58:13 60:20 63:21
  65:2 68:3 72:13
  74:19 86:22 90:25
  94:2 101:3 102:3
  102:16,17 106:10
  106:15,22 110:12
  111:6,20,25
  116:14,15,16
  120:18
tying 103:16
type 69:21 71:18
types 60:21 72:20
  72:21

u

u.s. 1:23 23:14
  32:11 42:3,12
  45:4,14 53:22
  96:2 100:2 101:3
  101:18 103:19
ucc 59:8 63:21
  64:2 80:6 99:3
  111:10
ultimate 50:15
  73:18
ultimately 40:2
  41:22,23 51:2

55:8 109:2
uncertain 62:11
  66:7,24 67:7
uncontroversial
  76:12
underestimating
  67:9
underlying 35:9
  43:5,21 44:5,8
  63:4 78:4
understand 36:14
  45:10 52:4 71:5
  74:5 90:2 93:12
  94:23 101:1,4
  106:11 109:17
  112:7
understandable
  40:11
understanding
  107:23 117:25
understood 82:6
  83:13 91:9 122:4
undertake 93:23
underwood 2:11
  8:14 29:8 40:16
  40:17,23 41:8
  44:4 46:9 49:10
  51:22,24
underwriters
  7:16,21
unfair 71:17
  105:14
union 10:15,18
unique 100:18
  101:2,23 103:13
  104:9 108:3
  109:12
united 1:1,12 5:15
  5:18 7:3,4 13:4
  14:10 18:23 19:5
  22:6 31:17 32:10
  41:13 95:15,18

unmute 57:11
  58:2
unofficial 98:18
unquestionably
  46:12
unrelated 45:14
unresolved
  119:18
unsecured 13:13
  13:17 25:21,25
  26:5,9 32:3 33:9
  53:23 88:18 98:16
unsupported 48:1
unusual 83:9
  103:13
update 58:12,20
urge 70:4 110:6
usa 10:13
usas 10:10
use 85:14 109:24
  121:8
useful 107:8
utterly 46:20
uzzi 12:11 20:21
  20:24 21:1,4,8,11
  21:14,17 22:2
  23:22

v

v 53:22,22
vain 105:3
validity 85:7
valuation 67:22
  67:22 68:18
value 62:11 64:7
  83:11
varick 32:12
variety 57:7
various 46:6 53:8
  58:23 59:9 101:7
  106:21 112:21
vast 35:18
ventures 61:21

| | | | |
|---|---|---|---|
| **veritext** 123:20 | 57:12 59:24 60:19 | 108:2,9 112:22,25 | **windstream** 53:25 |
| **vermont** 9:6 | 63:13 64:3,13 | 114:17 116:9 | **winthrop** 31:1 |
| **version** 107:15,15 | 74:21,23 77:3,15 | 119:2 | **wisdom** 62:7 |
| **victim** 4:19 | 79:15,17 80:14 | **weak** 73:8 | **wishes** 88:13 |
| **victims** 14:2,5 | 84:9 85:2 86:5,5 | **weakness** 62:22 | **withdraw** 42:7,12 |
| 59:10 99:3,8 | 88:5,24 89:14,17 | **week** 68:3,4,9 | 52:2 |
| **video** 15:19 17:1 | 89:19 92:3 93:3 | 69:19 72:23 74:23 | **withdrawal** 41:25 |
| 89:11 | 94:25 95:11,17 | 79:9 83:14 85:19 | 46:13 52:17 |
| **videoconference** | 96:15 97:21 98:23 | 85:24 90:23 91:3 | **withdrawn** 45:23 |
| 3:10 | 99:9,13 102:9,13 | 91:16,17 99:1 | 49:5,24 78:1,2 |
| **view** 77:13 88:19 | 103:1 109:13 | **weekend** 77:12 | **witness** 59:22 |
| 89:11 105:12 | 113:19,20 115:1 | 118:15 | 60:9,21 65:2,21 |
| 120:1 | 120:5,10,17,24 | **weekends** 60:2 | 65:23 66:1 70:12 |
| **views** 75:15 98:15 | 121:24 | 66:21 | 71:8 72:3 73:24 |
| **villnave** 9:20 | **wanted** 76:1,22 | **weeks** 59:7 62:9 | 78:7 89:3,13,18 |
| **vindicated** 80:5 | 80:22 87:11 94:7 | 73:23 80:10 90:25 | 89:20 90:3 94:8 |
| **virginia** 6:21,25 | 102:5 103:3 | **weigh** 62:12 | 117:22 118:19 |
| 112:15 | 107:25 111:12 | **weinberger** 24:21 | 119:14,25 |
| **virginia's** 68:18 | 117:4 119:24 | **went** 65:18 67:19 | **witnesses** 59:19 |
| **virtually** 84:1 | 120:4 | 81:24 105:18 | 60:21,23,25 61:2 |
| 98:22 | **wanting** 118:8 | 114:19 | 61:5,15,17,24 |
| **voice** 46:9 | **wants** 65:11 75:22 | **west** 4:4,5 6:21,25 | 63:19 65:7 67:14 |
| **voluminous** 98:6 | 77:5 | 31:3 68:18 112:15 | 71:4 73:25 78:3 |
| 113:9,11 | **wardwell** 28:3 | **westchester** 28:14 | 81:3,8 87:5,8,12 |
| **vomsaal** 4:13 | 35:23 44:10 56:11 | 96:2,3 | 92:8,9,16 112:2 |
| **vonnegut** 2:7,22 | **warrant** 65:5 | **we'll** 57:10,14 | 115:8 117:21 |
| 3:6,16 15:11,16 | **warranted** 43:10 | 73:2 79:6,14 | 118:5 |
| 16:2,8,12,18,24 | **washington** 8:17 | **we're** 35:24 41:15 | **witness'** 59:4 |
| 17:14 18:6,18 | 8:18 9:9 34:6 | 41:16,17 73:6,6,7 | **witness's** 61:18 |
| 28:8 86:17 87:6 | 60:15 100:13 | **we've** 69:2 73:11 | **wolff** 34:5 |
| 87:23 88:1,2,7 | **wasn't** 72:16,16 | **whatsoever** 68:21 | **wondering** 83:2 |
| 122:4,5 | 72:17 | **what's** 37:19 42:6 | 90:10 |
| **vote** 99:6 | **waste** 115:12,12 | 58:11 66:13 | **won't** 64:21 |
| **votes** 18:3,14 | 121:15,16 | **white** 1:14 25:10 | **word** 56:4 76:9 |
| **voting** 5:5 16:11 | **wasting** 69:8 | **who've** 96:13 | 95:20 119:15 |
| | **way** 46:4 49:20 | 122:10 | 120:14 |
| **w** | 60:18 69:18 79:17 | **wider** 107:15 | **words** 45:1 68:22 |
| **w** 3:25 22:12 | 83:8 99:21,24 | **william** 20:5 | **work** 48:11 67:13 |
| **wait** 85:20 | 100:1 103:15 | 26:20,24 116:25 | 70:4 83:2 84:7 |
| **waive** 83:25 | 107:11 114:22 | **willis** 4:10 | 86:11 100:4 |
| **waiver** 111:18 | **ways** 65:21 74:19 | **wilmer** 33:15 | 108:20 110:7 |
| **walk** 120:17,25 | **we've** 80:10 85:5 | **win** 62:14 | 121:4 122:8,11 |
| **want** 38:17 43:1 | 94:13 106:21 | | |
| 47:7 48:24 52:2,5 | | | |

[working - zoomgov]

| | |
|---|---|
| **working** 42:16 60:1 63:22 66:21 77:12 109:23 111:7 115:4 | 94:21,25 96:17 **zoomgov** 3:11 |
| **works** 49:21 84:8 | |
| **world** 33:25 84:16 84:20 | |
| **worth** 42:1 62:17 66:14 68:19 75:9 | |
| **would've** 84:3 | |
| **wouldn't** 38:17 79:9 | |
| **wright** 10:6 | |
| **writing** 93:20 | |
| **written** 43:18 60:22 | |

**x**

**x** 1:4,10 5:2
**xl** 6:8 33:16

**y**

**y** 119:14,14
**yeah** 57:21 81:4
  82:15,16 90:5
  91:12 94:22 95:3
  97:24 106:22
  108:2 112:6
  119:11 120:23
**year** 47:25
**years** 84:3
**yesterday** 61:14
**york** 1:2 28:6,16
  28:23 29:22 31:4
  31:20 32:13 33:4
  33:11 34:1,8
**younger** 98:9
**you're** 41:2 69:10
  74:13
**you've** 47:2 79:25

**z**

**zebra** 119:7
**zoom** 66:24 81:8
  88:20 89:9,16