KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
Matthew J. Gold
500 Fifth Avenue
New York, NY 10110
Tel:  (212) 986-6000

PULLMAN & COMLEY, LLC
Irve J. Goldman
850 Main Street, 8th Floor
PO Box 7006
 Bridgeport, CT 06601-7006
(203) 330-2213

*Counsel to the States of Washington and Oregon
and the District of Columbia*

*Counsel to the State of Connecticut*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- x

**In re:**

**PURDUE PHARMA L.P.,** *et al.*,

**Debtors.**

---------------------------------------- x

:
:
:
:
:
:
:
:

Chapter 11

Case No. 19-23649 (RDD)

(Jointly Administered)

**LIMITED OBJECTION OF THE STATES OF WASHINGTON, CALIFORNIA, CONNECTICUT, DELAWARE, MARYLAND, OREGON, RHODE ISLAND AND VERMONT AND THE DISTRICT OF COLUMBIA TO DEBTORS' PROPOSED ORDER CONFIRMING THE SEVENTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

The States of Washington, California, Connecticut, Delaware, Maryland, Oregon, Rhode Island and Vermont and the District of Columbia (collectively the "States"), by and through their undersigned counsel, hereby submit this limited objection to the Proposed Order Confirming the Seventh Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors, filed by the Debtors on August 12, 2021 (Dkt. # 3552) (the "Proposed Order"), and in support of their objection respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The States have objected to the confirmation of the Debtors' Seventh Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). This limited objection is directed to a

1

particular provision of the Proposed Order, which purports to override the 14-day stay of the effectiveness of a confirmation order provided for in Bankruptcy Rule 3020(e).

2.      The Plan proposes, in an unprecedented stretch of bankruptcy jurisdiction, to extinguish, over the States' vigorous objections, the States' ability to exercise their sovereign police powers to protect their citizens from the acute, ongoing public health crisis that is the opioid epidemic — a crisis wrought in significant measure by the Debtors and the Sacklers. The Debtors have not cited any cases in which nonconsensual third party releases have been imposed in such a context, and the appellate issues are substantial. The Court should not countenance a request that would unduly burden the appellate courts and potentially impair their ability to consider the substantial questions that would be raised in any appeal.

3.      The purpose of the Rule 3020(e) stay is to "provide sufficient time for a party to request a stay pending appeal of an order confirming a plan … before the plan is implemented and an appeal becomes moot." (Committee Notes to the 1999 Amendment to Rule 3020.) The stay waiver would completely upend the purpose of Rule 3020(e) and leave parties with *insufficient* time to request a stay pending appeal of an order confirming the Plan before the Plan is implemented and an appeal becomes potentially moot.

4.      A confirmation order should allow for an orderly appeals process that preserves the possibility of effective appellate review and affords any appellate courts an adequate opportunity to weigh the consequential issues at play in a suitably deliberate (albeit necessarily expeditious) fashion. To the extent that the appeals process involves requests for a stay pending appeal, any confirmation order should allow this Court and/or the appellate courts to have sufficient time to consider any such request.

5.      The Debtors have not made a motion seeking a Rule 3020(e) stay waiver. They have not provided any explanation for the proposed waiver, let alone provided any citation to caselaw to justify the request. Instead, they have merely included a Rule 3020(e) stay waiver in Proposed Order paragraph 60. Accordingly, for the reasons set forth herein, in the event that the Plan is confirmed, Paragraph 60 of the Proposed Order should be excised and the 14-day stay should apply to any Order confirming the Plan, without prejudice to the right of any appellant to request an extension of such stay.

**<u>ARGUMENT</u>**

I.      **In Light of the Serious Objections Raised by the States in Furtherance of Their Sovereign Prerogatives, any Order Confirming the Plan Should Provide for an Adequate Opportunity for Meaningful Appellate Review.**

6.      At stake in this confirmation hearing is nothing less than the right of the States to protect their citizens through the enforcement of the States' own duly enacted laws in the States' own courts.  While the States appreciate that others have concluded that the Plan adequately serves the interests of their constituents, the States have determined that the Plan and the non-debtor releases it seeks to impose on them do not fairly and justly serve the interests of their citizens, whose welfare they should be allowed to protect as they deem fit.

7.      The proposed Plan would strip the States of their sovereign police power to protect their citizens as they deem fit, in furtherance of a resolution that permits the Sacklers to walk away from the devastation they have caused with the bulk of their enormous fortune intact, and purports to justify extinguishing the States' claims against the Sacklers because other States and other creditors have voted in favor of that result.

8.      For the reasons set forth in the States' Objection to Confirmation of the Debtors' Plan of Reorganization (Dkt. # 3276) and Joint Objection of the State of Connecticut, State of Maryland and District of Columbia to Confirmation of the Debtors' Sixth Amended Plan of

Reorganization (Dkt. # 3270), such non-consensual releases of the States' police powers are not authorized by the Bankruptcy Code or caselaw. As cogently articulated by the Court in *FTC v. First Alliance Mortg. Co. (In re First Alliance Mortg. Co.)*, 264 B.R. 634, 659 (C.D. Cal. 2001), "it is the governmental units charged with enforcing consumer protection laws, governmental units that are responsible to the political will of the people, that should be the ones to make the choice [about how State police powers should be exercised], not the bankruptcy court." Here, the States have made their reasoned and deliberate choice, and the sovereign authority to make it should not be stripped from them.

9.    Furthermore, the evidence adduced in the confirmation hearing has demonstrated that the Sacklers, who are the principal beneficiaries of the Debtors' decade-long criminal conduct, do not have clean hands such as would merit their receipt of injunctions in their favor.

10.    At an absolute minimum, the States' objections present weighty and consequential issues concerning the non-consensual release of State police power claims. Should the Plan be confirmed, there should be orderly and substantive appellate review.

11.    The Debtors' Proposed Order threatens to short-circuit such review through a waiver of the 14-day stay provided for in Rule 3020(e)—precisely the opposite of what the drafters of the Rule intended.   (*See supra*, at ¶ 3 (quoting Advisory Committee Note on the 1999 Amendment to Rule 3020).)

12.    The Court should not condone a request that could insulate a confirmation order from appellate review based on equitable mootness.

13.    Absent a stay, the Debtors will attempt to substantially consummate the Plan such that the doctrine of "equitable mootness" may be deemed to bar an appellate court from considering the States' substantive objections on the merits   *See, e.g., Harrington v. LSC*

4

*Commc'ns, Inc. (In re LSC Commc'ns, Inc.)*, No. 20-cv-5006, 2021 BL 258017, at *3 (S.D.N.Y.

July 9, 2021); *see also*, *e.g.*, *GLM DFW, Inc. v. Windstream Holdings Inc. (In re Windstream*

*Holdings Inc.)*, 838 Fed. App'x 634, 636 (2d Cir. 2021).

14.    Indeed, the Sacklers already have signaled their intention to manufacture a

condition of equitable mootness through Section 2.09(c) of their proposed Settlement Agreement,

which would commit the Master Distribution Trust to oppose any attempt to stay effectiveness of

an Order confirming the Plan.  (*See* Notice of Filing of Fourteenth Plan Supplement Pursuant to

the Seventh Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its

Affiliated Debtors, Dkt. # 3547, at § 2.09(c).)

15.    To be clear, the States do not concede that equitable mootness necessarily should

preclude appellate review of the Plan should it be confirmed.[1] Rather, the States recognize that

there is a litigation risk that the doctrine may be applied. This Court should aim to minimize the

possibility that equitable mootness will be applied in this case.

16.    As recognized in *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re*

*Adelphia Commc'ns Corp.)*, 361 B.R. 337, 345 n. 20 (S.D.N.Y. 2007), simple fairness dictates that

opportunities for judicial review should not be foreclosed by making a confirmation order effective

immediately, contrary to the intent of Rule 3020(e).

---

[1] The Second Circuit has recognized that equitable mootness is a judge-created "prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented." *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc)*, 416 F.3d 136, 144 (2d Cir. 2005). But as the Supreme Court has recently reaffirmed, courts have a "virtually unflagging" obligation to "hear and decide a case" and "to exercise the jurisdiction [they were] given." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). To that end, two circuit court judges have concluded that equitable mootness is increasingly incompatible with Supreme Court jurisprudence. *See In re City of Detroit, Michigan*, 838 F.3d 792, 805-06 (6th Cir. 2016) (Moore, J., dissenting); *In re One2One Communications*, LLC, 805 F.3d 428, 438-41 (3d Cir. 2015) (Krause, J., concurrence). *See also FishDish, LLP v. VeroBlue Farms USA, Inc. (In re VeroBlue Farms USA, Inc.)* No. 19-3413, 2021 BL 294741, 2021 US App Lexis 23164 (1st Cir. Aug. 5, 2021) (noting that equitable mootness is disfavored and that judges should scrutinize debtors' attempts to craft plans that trigger it); *In re LSC Communications, Inc., supra*, 2021 WL 2887708 at *2-4 (declining to dismiss the United States Trustee's appeal on equitable mootness grounds).

17.    The proposed stay waiver would also place undue and unnecessary burdens upon appellate courts. In the event that an order confirming the Plan is made effective immediately, then, in order to substantially the possibility of substantive appellate review, it will be necessary for any appellant to brief, and the appropriate court(s) to act upon, a motion for a stay pending appeal in a highly compressed and disorderly fashion. Such a procedural is antithetical to the purposes of Rule 3020(e), and is especially inappropriate in light of the consequential issues at play.

18.    Accordingly, in the event that the Plan is confirmed, the Court should not waive the 14-day stay provided for in Rule 3020(e)—to the contrary, the effectiveness of the order should be stayed at a minimum for the full 14 days while a motion for a stay pending appeal can be briefed and adjudicated.  Paragraph 60 of the Proposed Order should be stricken.

**II.    Implementing the Rule 3020(e) Stay Would Further the Relevant Equities While Working Little To No Prejudice.**

19.    Staying the effectiveness of the Plan for the 14 days provided for in Rule 3020(e) in order to allow for the process of seeking a stay pending appeal to proceed in an orderly (albeit expeditious) fashion would be far and away the most equitable outcome in the event that the Plan is confirmed.

20.    To the extent relevant, the equities tip decisively in favor of the States and other potential appellants, thus reinforcing the appropriateness of the Rule 3020(e) stay.

21.    Staying the effectiveness of the Plan for the full 14 days provided for in Rule 3020(e) should result in little if any prejudice to the Debtors or to any other interested party. Two weeks is a trivially short time relative to both (i) the importance of the issues that would be at stake in any potential appeal, and (ii) the length of time during which these proceedings already have

been pending. Indeed, it is little longer than the adjournment of the confirmation hearing that the Debtors recently requested and consensually obtained.

22.    The principal impetus behind the Plan has been the insistence of the Sacklers that they be granted immunity from all State police power actions. All the benefits that the Plan would accord the victims of the Debtors' decade-long criminal conduct have been held hostage to the Sacklers' desire for immunity. While it is unfortunate that an appeal may cause a delay in the provision of benefits to some creditors, that delay is primarily caused by the complicity of the Debtors in steering the plan process along a course that is completely congruent with the Sacklers' desires.

23.    As is clear from the evidence adduced at the ongoing hearing, the Sacklers dominated the Debtors during the period in which the Debtors admit that they were engaged in multiple federal crimes, with the Sacklers regularly exercising operational and managerial control—including specifically with respect to Purdue's sales and marketing efforts—that ordinarily would be left to a company's professional managers. The record is equally clear that the Sacklers extracted billions of dollars from Purdue during this very same period—amounts far greater than the Plan provides for them to disgorge, and even then only very gradually over the period of a full decade. They then set up offshore trusts to protect this largesse from the claims of creditors, and those trusts are now being used to justify the Plan's proposed settlement on the theory that it would be difficult to recover what they took. At the end of the day, if the Plan is confirmed, the Sacklers will be left with billions of dollars that will be fully immunized from civil liability and which they will have acquired principally from the Debtors' misbegotten profits—all without ever facing substantive judicial inquiry of their culpability and role in the opioid epidemic.

24.     In marked contrast, the States are the constitutionally recognized representatives of their citizens, many thousands of which have been victimized by the Debtors' egregious and admitted wrongdoing over a decade-long span. Indeed, the States' ability to protect the health and well-being of their citizens through *parens patriae* and other statutorily authorized actions represents a core aspect of their sovereign prerogatives. *See*, *e.g.*, *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601-08 (1982). Each State makes these determinations on its own. A determination by a State that its population is best protected through the application of its police powers against the Sacklers should not be second-guessed by this Court, and certainly not in a manner that enhances the danger that such a decision by a Bankruptcy Court could be immunized from appellate review.

25.     A stay of two weeks should not in any way impact the solvency of the post-emergence Debtors or threaten the implementation of any of the details of the Plan.  In short, the brief delay that will result from implementation of the Rule 3020(e) stay would be far outweighed by the prejudice to the States of the potential forfeiture of their right to obtain substantive appellate review of a confirming Order that extinguishes their police power actions.

## **CONCLUSION**

26.     For the foregoing reasons, the States respectfully request that Paragraph 60 of the Proposed Order be stricken to the extent that it purports to waive the stay provided for in Rule 3020(e), and effectiveness of any Order confirming the Plan be stayed for the full 14-day period to allow for the question of a stay pending appeal to be briefed and adjudicated in an orderly fashion that preserves the possibility of substantive appellate review.

Dated: August 18, 2021
        New York, New York

Respectfully submitted,

8

KLEINBERG, KAPLAN, WOLFF &
COHEN, P.C.

By:    _/s/ Matthew J. Gold_____
      Matthew J. Gold
      Robert M. Tuchman

500 Fifth Avenue
New York, New York 10110
Tel:  (212) 986-6000
Fax:  (212) 986-8866
E-mail:    mgold@kkwc.com
        rtuchman@kkwc.com

*Attorneys for the States of Washington and
Oregon and the District of Columbia*

ELLEN R. ROSENBLUM
Attorney General of the State Oregon

By:    _/s/ David Hart_____
David Hart

Assistant-Attorney-in-Charge
Financial Fraud and Consumer Protection
Section

Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Tel: (971) 673-1880
Email: david.hart@doj.state.or.us

DISTRICT OF COLUMBIA
Karl A. Racine, Attorney General

By:    _/s/Kathleen Konopka_____
Kathleen Konopka
Deputy Attorney General
Public Advocacy Division
Office of the Attorney General
400 Sixth Street, N.W., 10th Floor

ROBERT W. FERGUSON
Attorney General of the State of Washington

By:    _/s/ Laura K. Clinton_____
Laura K. Clinton

Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, Washington  98104
Tel:  (206) 233-3383
Email: laura.clinton@atg.wa.gov

Tad Robinson O'Neill
Assistant Attorney General
Tel:  (206) 254-0570
Email: tad.oneill@atg.wa.gov

*Attorneys for the State of Washington*

STATE OF VERMONT

By:    _/s/ Jill S. Abrams_____
Jill S. Abrams (JA 1578)
Assistant Attorney General

Director, Consumer Protection Division
Vermont Attorney General's Office
109 State Street
Montpelier, Vermont 05403
(802) 828-1106
Jill.abrams@vermont.gov

BRIAN E. FROSH
Attorney General of Maryland

By:    _/s/ Brian T. Edmunds_____
Brian T. Edmunds
Sara E. Tonnesen
Assistant Attorneys General
Office of the Attorney General of Maryland

Washington, D.C. 20001

Kathleen.Konopka@dc.gov
Its Attorneys

200 Saint Paul Place
Baltimore, Maryland 21202
bedmunds@oag.state.md.us
(410) 576-6578

STATE OF RHODE ISLAND
Peter F. Neronha
Attorney General

By:     */s/ Neil F.X. Kelly*
Neil F.X. Kelly, Deputy Chief, Civil Division
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400 ext. 2284
Fax: 401-222-2995
nkelly@riag.ri.gov

STATE OF DELAWARE
Kathleen Jennings
Kathleen Jennings

By:     */s/ Marion Quirk*
Owen Lefkon
Director, Fraud and Consumer Protection
Division
Jillian Lazar (JL2222)
Director of Investor Protection
Marion Quirk
Director of Consumer Protection
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) (683-8899)
Email: owen.lefkon@delaware.gov
            jillian.lazar@delaware.gov
            marion.quirk@delaware.gov

*Attorneys for the State of Delaware*

STATE OF CONNECTICUT
WILLIAM TONG, ATTORNEY GENERAL

By:     */s/ Irve J. Goldman*
Irve J. Goldman (ct02404)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
Tel: 203 330 2213
igoldman@pullcom.com
Its Attorneys

ROB BONTA
Attorney General of California
Nicklas A. Akers
Senior Assistant Attorney General

By:  */s/ Bernard A. Eskandari*
Supervising Deputy Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6348
bernard.eskandari@doj.ca.gov

*Attorneys for the State of California and the
People of the State of California*

## CERTIFICATE OF SERVICE

I, Juliet Remi, hereby certify that, on August 18, 2021, I caused true and correct copies of the foregoing document to be served (i) by the Court's Case Management/Electronic Case File (CM/ECF) System to all parties who are deemed to have consented to electronic service; (ii) by email upon the parties who provided email addresses set forth in the Master Service List maintained by the Debtors in respect of these chapter 11 cases; and (iii) by email upon the chambers of the Honorable Judge Robert D. Drain (rdd.Chambers@nysb.uscourts.gov) and the Office of the United States Trustee for the Southern District of New York (Attn: Paul K. Schwartzberg, paul.schwartzberg@usdoj.gov).

*/s/ Juliet Remi*
Juliet Remi