# APPENDIX A

| Abhai | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| AbbVie, Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| Allergan Limited, v/k/a Allergan, and Related Companies | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Continuing Guaranty and Indemnity Agreement executed by P.F. Laboratories, Inc., on behalf of Purdue Frederick Company and Purdue Pharma L.P., in favor of AmerisourceBergen Drug Corporation ("ABDC," and, collectively with related entities, "ABDC Entities"), dated February 3, 2005 | The undersigned hereby agrees to defend, indemnify and hold AmerisourceBergen Corporation and each of its subsidiaries harmless against any and all claims, losses, damages, and liabilities whatsoever (and expenses connected therewith, including counsel fees), arising as a result of (a) any actual or asserted violation(s) of the [the Federal Food, Drug and Cosmetic] Act or any other federal, state or local law or regulation by virtue of which products or merchandise sold, supplied, or delivered by the undersigned shall be alleged or determined to be adulterated, misbranded, mislabeled or otherwise not in full compliance with or in contravention of any federal, state or local law or regulation, (b) the possession, distribution, sale and/or use of, or by reason of the | The undersigned further agrees to maintain primary and noncontributing Products Liability Insurance of not less than U.S. $5,000,000.00 per occurrence, Combined Single Limit (Bodily Injury and Property Damage) including AmerisourceBergen Corporation and its subsidiary corporations as Additional Insureds, including a Broad Form Vendors Endorsement, with provision for at least 30 days' prior written notice to the Additional Insureds in the event of cancellation or material reduction of coverage, and upon request promptly |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | seizure of, any of the undersigned's products, including any prosecution or action whatsoever by any governmental body or agency or by any private party, including claims of bodily injury, death or property damage, and (c) any actual or asserted claim that the undersigned's products or merchandise infringe any proprietary or intellectual property rights of any person, including without limitation the infringement of any trademarks or service names, trade names, trade secrets, inventions, patents or the violation of any copyright laws or any other applicable federal, state or local laws…. (¶ 2 at 1.) | submit satisfactory evidence of such insurance. All insurance coverage must be with a carrier acceptable to AmerisourceBergen Corporation, at its sole discretion. (¶ 2 at 1.) |
| Drug Distribution Service Agreement by and among Purdue Pharma L.P., its associated U.S. companies, and AmerisourceBergen Drug Corporation, effective as of April 1, 2006 and:<br>• extension letter dated December 19, 2012 | Except to the extent arising from the acts or omissions of Wholesaler, including without limitation, the intentional misconduct or negligence of Wholesaler. Purdue shall be responsible for and agrees to defend, indemnify, and hold harmless Wholesaler and its affiliates, shareholders, directors, officers and employees from and against any and all claims, causes of action, obligations, liability, liens, indebtedness, debts, judgments, damages (exclusive of Wholesaler's lost profits) losses, costs, expenses, and fees (including, without limitation, reasonable attorney fees) to the extent arising from or resulting from or out of (i) breach or default under any representation, warranty, covenant, obligation or promise made by Purdue under this Agreement, (ii) Purdue's fraud, intentional misconduct, or negligence; (iii) any intellectual property infringement actions arising out of Wholesaler's distribution of Products under the terms of this Agreement (vi) possession, distribution, sale and/or use of, or by reason of the seizure of, any Products of Purdue, including any prosecution or action whatsoever by any governmental body or agency. | Insurance. Purdue and Wholesaler each shall maintain comprehensive general liability insurance (including coverage for products liability and personal injury damages) with a limit of not less than $5,000,000.00 USD per person and $5,000,000.00 USD per occurrence. In lieu of insurance purchased through third parties, either party may elect to self-insure any or a portion of these coverage's. (§ 12.11.) |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | (§ 12.6.)<br><br>Except to the extent arising from the acts or omissions of Purdue, including without limitation, the intentional misconduct or negligence of Purdue, Wholesaler shall be responsible for and agrees to defend, indemnify, and hold harmless Purdue and its shareholders, directors, officers and employees from and against any and all claims, causes of action, obligations, liability, liens, indebtedness, debts, judgments, damages losses, costs, expenses, and fees (including, without limitation, reasonable attorney fees) to the extent arising from or resulting from (i) breach or default under any representation, warranty, covenant, obligation or promise made by Wholesaler or a Wholesaler affiliate under this Agreement, (ii) Wholesaler's fraud, intentional misconduct, or negligence.<br><br>EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.<br><br>Notwithstanding the above, neither party shall be obligated to defend, indemnify, or hold harmless the other from claims to the extent arising out of a party's willful, wanton or negligent act or omission or that party's breach of this Agreement. This indemnity is conditioned upon the party seeking indemnification giving prompt notice to the indemnifying party of any claim which may be covered by this indemnity, permitting the indemnifying party to handle such claim as it reasonably determines most appropriate, cooperating fully with the indemnifying party in its handling of such claim, and not making or offering to make any settlement of such claim without the prior written consent of the indemnified party. Failure to provide | |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | prompt notice shall only relieve the indemnifying party of its obligations of indemnification to the extent the indemnifying party has been prejudiced by such late notice.<br><br>Furthermore, Purdue will not be obligated to defend, indemnify, or hold Wholesaler harmless from claims arising out of product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue or from a Purdue Authorized Distributor of Record.<br><br>Any notice required or desired to be given to any party under this Agreement shall be in writing and shall be deemed given when: (i) deposited in the United States mail, first-class postage prepaid, and addressed to that party at the address for such party set forth at the beginning of this Agreement; (ii) delivered to Federal Express, Airborne, or any other similar express delivery service for delivery to that party at that address; or (iii) sent by facsimile transmission, with electronic confirmation, to that party at its facsimile number set forth at the end of this Agreement. Any party may change its address or facsimile number for notices under this Agreement by giving the other party notice of such change.<br><br>(§ 12.7.) | |
| Distribution Performance Agreement by and between Purdue Pharma L.P. and ABDC, effective as of October 1, 2012, and:<br>• First Amendment to Distribution Performance | <u>By Purdue</u>. Purdue will defend, indemnify, and hold harmless Wholesaler and its Affiliates, shareholders, directors, officers, and employees and representatives ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties against Wholesaler or Wholesaler Indemnitees caused by or arising from any ( i) negligent acts or omission of Purdue or Purdue Indemnitees (see § 17 b below), | None |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Agreement effective as of September 30, 2014<br>• Second Amendment to Distribution Performance Agreement effective as of September 30, 2015<br>• Third Amendment to Distribution Performance Agreement effective as of September 29, 2018<br>• Fourth Amendment to Distribution Performance Agreement effective as of October 1, 2019 | (ii) failure of Purdue to perform its obligations or to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this DPA (iv) claims of patent, trademark, copyright or other infringement related to Products, or ( v) an act or omission by Purdue in its direct storage, handling, use, demonstration, consumption, ingestion, digestion, manufacture, production and assembly of Products and their transportation to Wholesaler; provided, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any willful, wanton or negligent act or omission of Wholesaler or Wholesaler Indemnitees.<br><br>(§ 17(a).)<br><br><u>By Wholesaler</u>. Wholesaler will defend, indemnify and hold harmless Purdue and its Associated Companies, shareholders, directors, officers, employees and representatives ("Purdue Indemnitees") from and against all Claims brought by third parties against Purdue or Purdue Indemnitees caused by or arising from any (i) negligent acts or omission of Wholesaler or Wholesaler Indemnitees, (ii) failure of Wholesaler to perform its obligations or to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by Wholesaler in this DPA, (iv) act or omission by Wholesaler in its storage, shipping, handling or distribution of Products or (v) making by Wholesaler of representations or warranties with respect to Products to the extent not authorized by Purdue; provided, however, that Wholesaler will have no obligations under this Section for any Claims to the extent caused by any willful, wanton or negligent act or omission of Purdue or Purdue Indemnitees. | |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | (§ 17(b).) <br><br> <u>Procedures</u>. The obligations and liabilities of the Parties with respect to Claims subject to indemnification under this DPA ("Indemnified Claims") will be subject to the following terms and conditions: <br><br> i. The Party claiming a right to indemnification hereunder ("Indemnified Person") will give prompt written notice to the indemnifying Party ("Indemnifying Person") of any Indemnified Claim, stating its nature, basis and amount, to the extent known. Each such notice will be accompanied by copies of all relevant documentation, including any summons, complaint or other pleading that may have been served or any written demand or other document. Failure to provide prompt notice shall only relieve the Indemnifying Person of its obligations to the extent the Indemnifying Party has been prejudiced by such late notice. <br><br> ii. With respect to any Indemnified Claim: (A) the Indemnifying Person will defend or settle the Indemnified Claim, subject to provisions of this subsection, ( B) the Indemnified Person will, at the Indemnifying Person's sole cost and expense, cooperate in the defense by providing access to witnesses and evidence available to it, (C) the Indemnified Person will have the right to participate in any defense at its own cost and expense to the extent that, in its judgment, the Indemnified Person may otherwise be prejudiced thereby, (D) the Indemnified Person will not settle, offer to settle or admit liability in any Indemnified Claim without the written consent of an officer of the Indemnifying Person, and (E) the Indemnifying Person will not settle, offer to settle or admit liability as to any | |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Indemnified Claim in which it controls the defense if such settlement, offer or admission contains any admission of fault or guilt on the part of the Indemnified Person, or would impose any liability or other restriction or encumbrance on the Indemnified Person, without the written consent of an officer of the Indemnified Person . <br><br> iii. Each Party will cooperate with, and comply with all reasonable requests of, each other Party and act in a reasonable and good faith manner to minimize the scope of any Indemnified Claim. <br><br> (§ 17(c).) <br><br> Under no circumstances will Purdue be obligated to defend, indemnify, or hold Wholesaler harmless from claims arising out of product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue or from a Purdue ADR. <br><br> (§ 17(d).) <br><br> EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES. <br> (§ 17(e).) | |
| Authorized Distributor Agreement by and between Purdue Pharma L.P. and AmerisourceBergen Drug Corporation, effective as of October 1, 2012, and: | By Purdue. Purdue will defend, indemnify, and hold harmless Wholesaler and its Affiliates, shareholders, directors, officers, and employees and representatives ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties against Wholesaler or Wholesaler Indemnitees caused by or arising from any ( i) negligent acts or omission of Purdue or Purdue Indemnitees (see § 35 b below), | i. Wholesaler will, at Wholesaler's sole cost and expense, procure and maintain during the term of this ADA and for a period of two (2) years following the termination or expiration of this ADA the following minimum insurance coverage, written by insurance companies authorized to do business in the applicable jurisdiction(s) with a minimum |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| • First Amendment to Authorized Distributor Agreement effective as of September 30, 2014<br>• Second Amendment to Authorized Distributor Agreement effective as of September 30, 2015<br>• Third Amendment to Authorized Distributor Agreement effective as of September 1, 2017<br>• Fourth Amendment to Authorized Distributor Agreement effective as of October 1, 2019 | (ii) failure of Purdue to perform its obligations or to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this ADA (iv) claims of patent, trademark, copyright or other infringement related to Products, or ( v) an act or omission by Purdue in its direct storage, handling, use, demonstration, consumption, ingestion, digestion, manufacture, production and assembly of Products and their transportation to Wholesaler; <u>provided</u>, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any willful, wanton or negligent act or omission of Wholesaler or Wholesaler Indemnitees.<br><br>(§ 35(a).)<br><br><u>By Wholesaler</u>. Wholesaler will defend, indemnify and hold harmless Purdue and its Associated Companies, shareholders, directors, officers, employees and representatives ("Purdue Indemnitees") from and against all Claims brought by third parties against Purdue or Purdue Indemnitees caused by or arising from any (i) negligent acts or omission of Wholesaler or Wholesaler Indemnitees, (ii) failure of Wholesaler to perform its obligations or to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by Wholesaler in this ADA, (iv) act or omission by Wholesaler in its storage, shipping, handling or distribution of Products or (v) making by Wholesaler of representations or warranties with respect to Products to the extent not authorized by Purdue; provided, however, that Wholesaler will have no obligations under this Section for any Claims to the extent caused by any willful, wanton or negligent act or omission of Purdue or Purdue Indemnitees. | financial rating of at least an "A-" or higher by the latest edition of A.M. Best or its equivalent, the policies for which will be primary and non-contributory:<br><br>a. Commercial General Liability including liability coverages for Premises Operations, Blanket Contractual, Personal Injury and Advertising Injury and Products/Completed Operations in amounts not less than $5,000,000 per occurrence and $5,000,000 annual aggregate; and<br><br>Employers Liability and Workers' Compensation Insurance: (i) Employers Liability: in amounts not less than $2,000,000 per occurrence and $2,000,000 annual aggregate; and (ii) Workers' Compensation: coverage as mandated by applicable state statutes (or self-insurance approved by the applicable state regulatory agency).<br><br>Automobile Liability in amounts not less than $2,000,000 per occurrence and $2,000,000 annual aggregate covering all owned, hired and non-owned automobile equipment; and |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | (§ 35(b).)<br><br>Procedures. The obligations and liabilities of the Parties with respect to Claims subject to indemnification under this ADA ("Indemnified Claims") will be subject to the following terms and conditions:<br><br>i. The Party claiming a right to indemnification hereunder ("Indemnified Person") will give prompt written notice to the indemnifying Party ("Indemnifying Person") of any Indemnified Claim, stating its nature, basis and amount, to the extent known. Each such notice will be accompanied by copies of all relevant documentation, including any summons, complaint or other pleading that may have been served or any written demand or other document. Failure to provide prompt notice shall only relieve the Indemnifying Person of its obligations to the extent the Indemnifying Party has been prejudiced by such late notice.<br><br>ii. With respect to any Indemnified Claim: (A) the Indemnifying Person will defend or settle the Indemnified Claim, subject to provisions of this subsection, ( B) the Indemnified Person will, at the Indemnifying Person's sole cost and expense, cooperate in the defense by providing access to witnesses and evidence available to it, (C) the Indemnified Person will have the right to participate in any defense at its own cost and expense to the extent that, in its judgment, the Indemnified Person may otherwise be prejudiced thereby, (D) the Indemnified Person will not settle, offer to settle or admit liability in any Indemnified Claim without the written consent of an officer of the Indemnifying Person, and (E) the Indemnifying Person will not settle, offer to settle or admit liability as to any | Professional Liability Insurance in an amounts not less than $2,000,000 per occurrence and $2,000,000 annual aggregate;<br><br>ii. The insurance required herein may be satisfied by a combination of primary and excess policies. Deductibles and/or self-insured retentions will be at Wholesaler's sole discretion and Wholesaler's sole responsibility. Before the commencement of the services hereunder, Wholesaler agrees to submit to Purdue a certificate of insurance as evidence of the insurance required herein. Wholesaler will provide Purdue with written notice at least thirty (30) days prior to cancellation or non-renewal of the insurance required herein.<br><br>(§ 39(a).)<br><br>i. Purdue will, at Purdue's sole cost and expense, procure and maintain during the term of this ADA and for a period of two (2) years following the termination or expiration of this ADA the following minimum insurance coverage, written by insurance companies authorized to do business in the applicable jurisdiction(s) with a minimum financial rating of at least an "A-" or higher by the latest edition of A.M. Best or its |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Indemnified Claim in which it controls the defense if such settlement, offer or admission contains any admission of fault or guilt on the part of the Indemnified Person, or would impose any liability or other restriction or encumbrance on the Indemnified Person, without the written consent of an officer of the Indemnified Person .<br><br>iii. Each Party will cooperate with, and comply with all reasonable requests of, each other Party and act in a reasonable and good faith manner to minimize the scope of any Indemnified Claim.<br><br>(§ 35(c).)<br><br>Under no circumstances will Purdue be obligated to defend, indemnify, or hold Wholesaler harmless from claims arising out of product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue or from a Purdue ADR.<br><br>(§ 35(d).)<br><br>EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.<br><br>(§ 35(e).) | equivalent, the policies for which will be primary and non-contributory:<br><br>a. Commercial General Liability including liability coverages for Premises Operations, Blanket Contractual, Personal Injury and Advertising Injury and Products/Completed Operations (coverage can be in a separate Products/Completed Operations insurance policy) in amounts not less than $5,000,000 per occurrence and $5,000,000 annual aggregate, and including Wholesaler as additional insured for claims arising out of Purdue's Products; and<br><br>b. Employers Liability and Workers' Compensation Insurance: (i.) Employers Liability: in amounts not less than $2,000,000 per occurrence and $2,000,000 annual aggregate; and (ii.) Workers' Compensation: coverage as mandated by applicable state statutes (or self-insurance approved by the applicable state regulatory agency).<br><br>c. Automobile Liability in amounts not less than $2,000,000 per occurrence and $2,000,000 annual aggregate covering all owned, hired |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | | and non-owned automobile equipment; and |
| | | ii. The insurance required herein may be satisfied by a combination of primary and excess policies. Deductibles and/or self-insured retentions will be at Purdue's sole discretion and Purdue's sole responsibility. Before the commencement of the services hereunder, Purdue agrees to submit to Wholesaler a certificate of insurance as evidence of the insurance required herein. Purdue will provide Wholesaler with written notice at least thirty (30) days prior to cancellation or non-renewal of the insurance required herein. |
| | | (§ 39(b).) |
| | | The obligations set forth in this Section 39 will survive the termination or expiration of this ADA. |
| | | (§ 39(c).) |
| Logistics Services Agreement by and among Purdue Pharma L.P. and Integrated Commercialization Solutions, Inc. and AmerisourceBergen Drug Corporation, effective as of November 1, 2015, and: | By the Company. The Company will defend, indemnify, and hold harmless ICS and its affiliates, directors, officers, employees and representatives from any claims, demands, costs, expenses (including reasonable attorneys' fees) and liabilities or losses ("Claims") that may be asserted against ICS or that person or entity by or on behalf of a third party to the extent that the Claims result from or arise out of the negligence or willful misconduct of the Company in connection with its manufacture | None |

Appendix A

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| • Second Amendment to Logistics Services Agreement effective as of October 1, 2019 | or sale of the Product or the Company's breach of this Agreement. (§ 12(a).) <br><br> <u>By ICS</u>. ICS will defend indemnify and hold harmless the Company and its Associated Companies, directors, officers, employees and representatives from any Claims that may be asserted against the Company or that person or entity by or on behalf of a third party to the extent that the Claims result from or arise out of the negligence or willful misconduct of ICS in connection with Services it provides under this Agreement or ICS's breach of this Agreement. (§ 12(b).) <br><br> <u>Indemnification Procedures</u>. The obligations and liabilities of the patties with respect to claims subject to indemnification under this Agreement ("Indemnified Claims") are subject to the following terms and conditions: <br><br> i.   The party claiming a right to indemnification under this Agreement ("Indemnified Person") will give prompt written notice to the indemnifying party ("Indemnifying Person") of any Indemnified Claim, stating its nature, basis and amount, to the extent known. Each notice will be accompanied by copies of all relevant documentation, including any summons, complaint or other pleading that may have been served or any written demand or other document. <br><br> ii.  With respect to any Indemnified Claim: (A) the Indemnifying Person will defend or settle the Indemnified Claim, subject to provisions of this subsection, (B) the Indemnified Person will, at the Indemnifying Person's sole cost and expense, | |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | cooperate in the defense by providing access to witnesses and evidence available to it, (C) the Indemnified Person will have the right to participate in any defense at its own cost and expense to the extent that, in its judgment, the Indemnified Person may otherwise be prejudiced thereby, (D) the Indemnified Person will not settle, offer to settle or admit liability as to any Indemnified Claim without the written consent of the Indemnifying Person, and (E) the Indemnifying Person will not settle, offer to settle or admit liability as to any Indemnified Claim in which it controls the defense if the settlement, offer or admission contains any admission of fault or guilt on the part of the Indemnified Person, or would impose any liability or other restriction or encumbrance on the Indemnified Person, without the written consent of the Indemnified Person.<br><br>iii.    Each party will cooperate with, and comply with all reasonable requests of, each other party and act in a reasonable and good faith manner to minimize the scope of any Indemnified Claim.<br>(§ 12(c).) | |
| Master Distribution Services Agreement between Rhodes Pharmaceuticals LP and AmerisourceBergen Drug Corporation and Bellco Drug Corp., effective as of January 1, 2015, and: | In addition to any indemnities or remedies specifically set forth elsewhere in this Agreement, each party (the "Indemnifying Party") shall indemnify, defend and hold harmless the other, its agents, servants, employees, officers, directors, attorneys, subsidiaries, affiliates, parent and assigns from and against all third party claims (including, but not limited to, product liability claims and claims relating to "class of trade" pricing), losses, damages, liabilities and expenses, including without limitation reasonable legal fees and court costs (collectively, | Guarantors shall maintain primary, product liability insurance of not less than $5,000,000 per occurrence for claims relating to Products. This insurance must include AmerisourceBergen Corporation, its subsidiaries and their successors as additional insureds for claims arising out of Products. Guarantor shall provide for at least thirty days' advance written notice to |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| • PrxO Generics Program Addendum to Master Distribution Services Agreement, effective as of January 1, 2015<br>• Addendum to Master Distribution Services Agreement, effective as of January 1, 2015 | "Indemnifiable Losses"), to the extent arising out of (i) the material breach by the Indemnifying Party of any obligation contained herein; or (ii) the fraud, intentional misconduct, negligent acts or omissions or wrongdoing of any kind alleged or actual on the part of the Indemnifying Party.<br>(§ 13(a).)<br>In the event that any party to this Agreement shall incur any Indemnifiable Losses in respect of which indemnity may be sought by such party pursuant to this Section 13 or any other provision of this Agreement, the party indemnified hereunder (the "Indemnified Party") shall notify the Indemnifying Party promptly. Such notice shall in any event be given within a reasonable period of time of the filing or assertion or becoming aware of any claim against the Indemnified Party stating the nature and basis of such claim; provided, however, that any delay or failure to notify the Indemnifying Party of any claim shall not relieve it from any liability except to the extent that the Indemnifying Party demonstrates that the defense of such action has been materially prejudiced by such delay or failure to notify. The Indemnifying Party shall, within a reasonable period of time of its receipt of notice of such claim or being made aware of such claim, notify the Indemnified Party of its intention to assume the defense of such claim. If the Indemnifying Party shall not assume the defense of any such claim or litigation resulting therefrom, the Indemnified Party may defend against any such claim or litigation in such manner as it may deem appropriate and the Indemnified Party may settle such claim or litigation on such terms as it may deem appropriate, and assert against the Indemnifying Party any rights or claims to which the Indemnified Party is entitled. Payment of Indemnifiable Losses shall be made within a reasonable time after a final | AmerisourceBergen Corporation of cancellation or material reduction of the required insurance. If the required insurance is underwritten on a "claims made" basis, the insurance must include a provision for an extended reporting period ("ERP") of not less than twenty-four months: Guarantors further agree to purchase the ERP if continuous claims made insurance, with a retroactive date not later than the date of this Agreement, is not continually maintained or is otherwise unavailable. This insurance shall be with an insurer and in a form acceptable to AmerisourceBergen Corporation, and any deductible or retained risk must be commercially and financially reasonable and acceptable to AmerisourceBergen Corporation. Guarantors warrant that they have sufficient assets to cover any self-insurance or retained risk. Upon request, Guarantors will promptly provide satisfactory evidence of the required insurance.<br>(Ex. A.) |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
|  | determination of a claim. A final determination of a disputed claim shall be (i) a judgment of any court determining the validity of disputed claim, if no appeal is pending from such judgment or if the time to appeal therefrom has elapsed; (ii) an award of any arbitration determining the validity of such disputed claim, if there is not pending any motion to set aside such award or if the time within to move to set such award aside has elapsed; (iii) a written termination of the dispute with respect to such claim signed by all of the parties thereto or their attorneys; (iv) a written acknowledgment of the Indemnifying Party that it no longer disputes the validity of such claim; or (v) such other evidence of final determination of a disputed claim as shall be acceptable to the parties.<br><br>(§ 13(b).)<br>The indemnification provisions of this Section 13 shall survive any termination or expiration of this Agreement.<br><br>(§ 13(c).)<br>Guarantors shall promptly defend, indemnify and hold AmerisourceBergen Corporation and each of its subsidiaries harmless against any and all claims, losses, damages, costs, liabilities and expenses, including attorneys' fees and expenses, arising as a result of (a) any actual or asserted violation of Applicable Laws or by virtue of which Products made, sold, supplied, or delivered by or on behalf of Guarantors may be alleged or determined to be adulterated, misbranded or otherwise not in full compliance with or in contravention of Applicable Laws, (b) the possession, distribution, sale and/or use of, or by reason of the seizure of, any Products of Guarantors, including any prosecution or action whatsoever by any governmental body or agency or by any private party, |  |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | including claims of bodily injury, death or property damage, (c) any actual or asserted claim that Guarantors' Products infringe any proprietary or intellectual property rights of any person, including infringement of any trademarks or service names, trade names, trade secrets, inventions, patents or violation of any copyright laws or any other applicable federal, state or local laws, and (d) any actual or asserted claim of negligence, willful misconduct or breach of contract except to the extent arising from the negligence, willful misconduct or breach of contract of AmerisourceBergen or its affiliates.<br><br>(Ex. A.) | |
| Distribution Services Agreement between Rhodes Pharmaceuticals LP and AmerisourceBergen Drug Corporation and Bellco Drug Corp., effective as of March 16, 2015, and:<br>• Amendment to Distribution Services Agreement effective as of January 20, 2017<br>• modification letter dated January 9, 2017<br>• Second Amendment to | In addition to any indemnities or remedies specifically set forth elsewhere in this Agreement, each party (the "Indemnifying Party") shall indemnify, defend and hold harmless the other, its agents, servants, employees, officers, directors, attorneys, subsidiaries, affiliates, parent and assigns from and against all third party claims (including, but not limited to, product liability claims and claims relating to "class of trade" pricing), losses, damages, liabilities and expenses, including , without limitation, reasonable legal fees and court costs (collectively, "Indemnifiable Losses"), to the extent arising out of (i) the material breach by the Indemnifying Party of any obligation contained herein, or (ii) the fraud, intentional misconduct, negligent acts or omissions or wrongdoing of any kind alleged or actual on the part of the Indemnifying Party.<br><br>(§ 11(a).)<br><br>In the event that any party to this Agreement shall incur any Indemnifiable Losses in respect of which indemnity may be sought by such party pursuant to this Section 11 or any other provision of this Agreement, the party indemnified hereunder (the "Indemnified Party") shall notify the Indemnifying Party | Guarantors shall maintain primary, product liability insurance of not less than $5,000,000 per occurrence for claims relating to Products. This insurance must include AmerisourceBergen Corporation, its subsidiaries and their successors as additional insureds for claims arising out of Products. Guarantor shall provide for at least thirty days' advance written notice to AmerisourceBergen Corporation of cancellation or material reduction of the required insurance. If the required insurance is underwritten on a "claims made" basis, the insurance must include a provision for an extended reporting period ("ERP") of not less than twenty-four months: Guarantors further agree to purchase the ERP if continuous claims made insurance, with a retroactive date not later than the date of this Agreement, is not continually maintained or is otherwise |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Distribution Services Agreement effective as of March 16, 2020 | promptly. Such notice shall in any event be given within a reasonable period of time of the filing or assertion or becoming aware of any claim against the Indemnified Party stating the nature and basis of such claim; provided, however, that any delay or failure to notify the Indemnifying Party of any claim shall not relieve it from any liability except to the extent that the Indemnifying Party demonstrates that the defense of such action has been materially prejudiced by such delay or failure to notify. The Indemnifying Party shall, within a reasonable period of time of its receipt of notice of such claim or being made aware of such claim, notify the Indemnified Party of its intention to assume the defense of such claim. If the Indemnifying Party shall not assume the defense of any such claim or litigation resulting therefrom, the Indemnified Party may defend against any such claim or litigation in such manner as it may deem appropriate and the Indemnified Party may settle such claim or litigation on such terms as it may deem appropriate, and assert against the Indemnifying Party any rights or claims to which the Indemnified Party is entitled. Payment of Indemnifiable Losses shall be made within a reasonable time after a final determination of a claim. A final determination of a disputed claim shall be (a) a judgment of any court determining the validity of disputed claim, if no appeal is pending from such judgment or if the time to appeal therefrom has elapsed, (b) an award of any arbitration determining the validity of such disputed claim, if there is not pending any motion to set aside such award or if the time within to move to set such award aside has elapsed, (c) a written termination of the dispute with respect to such claim signed by all of the parties thereto or their attorneys, (d) a written acknowledgment of the Indemnifying Party that it no longer disputes the validity of such claim, or (e) | unavailable. This insurance shall be with an insurer and in a form acceptable to AmerisourceBergen Corporation, and any deductible or retained risk must be commercially and financially reasonable and acceptable to AmerisourceBergen Corporation. Guarantors warrant that they have sufficient assets to cover any self-insurance or retained risk. Upon request, Guarantors will promptly provide satisfactory evidence of the required insurance.<br><br>(Ex. A.) |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | such other evidence of final determination of a disputed claim as shall be acceptable to the parties.<br><br>(§ 11(b).)<br>The indemnification provisions of this Section 11 shall survive any termination or expiration of this Agreement.<br><br>(§ 11(c).)<br>Guarantors shall promptly defend, indemnify and hold AmerisourceBergen Corporation and each of its subsidiaries harmless against any and all claims, losses, damages, costs, liabilities and expenses, including attorneys' fees and expenses, arising as a result of (a) any actual or asserted violation of Applicable Laws or by virtue of which Products made, sold, supplied, or delivered by or on behalf of Guarantors may be alleged or determined to be adulterated, misbranded or otherwise not in full compliance with or in contravention of Applicable Laws, (b) the possession, distribution, sale and/or use of, or by reason of the seizure of, any Products of Guarantors, including any prosecution or action whatsoever by any governmental body or agency or by any private party, including claims of bodily injury, death or property damage, (c) any actual or asserted claim that Guarantors' Products infringe any proprietary or intellectual property rights of any person, including infringement of any trademarks or service names, trade names, trade secrets, inventions, patents or violation of any copyright laws or any other applicable federal, state or local laws, and (d) any actual or asserted claim of negligence, willful misconduct or breach of contract except to the extent arising from the negligence, willful misconduct or breach of contract of AmerisourceBergen or its affiliates.<br><br>(Ex. A.) | |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | | |
| Master Distribution Services Agreement between Rhodes Pharmaceuticals LP and AmerisourceBergen Drug Corporation, effective as of January 1, 2018, and:<br>• PrxO Generics Program Addendum to Master Distribution Services Agreement effective as of January 1, 2018<br>• Pharmagen Generics Program Addendum to Master Distribution Services Agreement effective as of January 1, 2018 | In addition to any indemnities or remedies specifically set forth elsewhere in this Agreement, each party (the "Indemnifying Party") shall indemnify. defend and hold harmless the other, its agents, servants, employees, officers, directors, attorneys, subsidiaries, affiliates, parent and assigns from and against all third party claims (including, but not limited to, product liability claims and claims relating to "class of trade" pricing), losses, damages, liabilities and expenses. including without limitation reasonable legal fees and court costs (collectively, "Indemnifiable Losses"), to the extent arising out of (i) the material breach by the Indemnifying Party of any obligation contained herein; or (ii) the fraud, intentional misconduct, negligent acts or omissions or wrongdoing of any kind alleged or actual on the part of the Indemnifying Party.<br><br>(§ 12(a).)<br>In the event that any party to this Agreement shall incur any Indemnifiable Losses in respect of which indemnity may he sought by such party pursuant to this Section 12 or any other provision of this Agreement, the party indemnified hereunder (the "Indemnified Party") shall notify the Indemnifying Party promptly. Such notice shall in any event be given within a reasonable period of time of the filing or assertion or becoming aware of any claim against the Indemnified Party stating the nature and basis of such claim; provided, however, that any delay or failure to notify the Indemnifying Party of any claim shall not relieve it from any liability except to the extent that the Indemnifying Party demonstrates that the defense of such action has been materially prejudiced by such delay or failure to notify. The Indemnifying Party shall, within a reasonable period of time | Guarantors shall maintain primary, noncontributory product liability insurance of not less than $5,000,000 per occurrence for claims relating to Products. This insurance must include AmerisourceBergen Corporation, its subsidiaries and their successors as additional insureds for claims arising out of Products. Guarantor shall provide for at least thirty days' advance written notice to AmerisourceBergen Corporation of cancellation or material reduction of the required insurance. If the required insurance is underwritten on a "claims made" basis, the insurance must include a provision for an extended reporting period ("ERP") of not less than twenty-four months; Guarantors further agree to purchase the ERP if continuous claims made insurance, with a retroactive date not later than the date of this Agreement, is not continually maintained or is otherwise unavailable. This insurance shall be with an insurer and in a form acceptable to AmerisourceBergen Corporation, and any deductible or retained risk must be commercially and financially reasonable and acceptable to AmerisourceBergen Corporation. Guarantors warrant that they have sufficient assets to cover any self-insurance or retained risk. Upon request, Guarantors will promptly |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | of its receipt of notice of such claim or being made aware of such claim, notify the Indemnified Party of its intention to assume the defense of such claim. If the Indemnifying Party shall not assume the defense of any such claim or litigation resulting therefrom, the Indemnified Party may defend against any such claim or litigation in such manner as it may deem appropriate and the Indemnified Party may settle such claim or litigation on such terms as it may deem appropriate, and assert against the Indemnifying Party any rights or claims to which the Indemnified Party is entitled. Payment of Indemnifiable Losses shall be made within a reasonable time after a final determination of a claim. A final determination of a disputed claim shall be (i) a judgment of any court determining the validity of disputed claim, if no appeal is pending from such judgment or if the time to appeal therefrom has elapsed; (ii) an award of any arbitration determining the validity of such disputed claim, if there is not pending any motion to set aside such award or if the time within to move to set such award aside has elapsed; (iii) a written termination of the dispute with respect to such claim signed by all of the parties thereto or their attorneys; (iv) a written acknowledgment of the Indemnifying Party that it no longer disputes the validity of such claim; or (v) such other evidence of final determination of a disputed claim as shall be acceptable to the parties.<br><br>(§ 12(b).)<br>The indemnification provisions of this Section 12 shall survive any termination or expiration of this Agreement.<br><br>(§ 12(c).)<br>Guarantors shall promptly defend, indemnify and hold AmerisourceBergen Corporation and each of its subsidiaries | provide satisfactory evidence of the required insurance.<br><br>(Ex. A.) |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | harmless against any and all claims, losses, damages, costs, liabilities and expenses, including attorneys' fees and expenses, arising as a result of (a) an actual or asserted violation of Applicable Laws or by virtue of which Products made, sold, supplied, or delivered by or on behalf of Guarantors may be alleged or determined to be adulterated, misbranded or otherwise not in full compliance with or in contravention of Applicable Laws, (b) the possession, distribution, sale and/or use of. or by reason of the seizure of, any Products of Guarantors, including any prosecution or action whatsoever by any governmental body or agency or by any private party, including claims of bodily injury, death or property damage, (c) any actual or asserted claim that Guarantors' Products infringe any proprietary or intellectual property rights of any person, including infringement of any trademarks or service names, trade names, trade secrets. inventions, patents or violation of any copyright laws or any other applicable federal, state or local laws, and (d) any actual or asserted claim of negligence, willful misconduct or breach of contract except to the extent arising from the negligence, willful misconduct or breach of contract of AmerisourceBergen or its affiliates.<br><br>(Ex. A.) | |
| Continuing Guaranty and Indemnity Agreement executed by Purdue Pharma L.P. in favor of ABDC Entities, dated October 1, 2019 | Guarantors shall promptly defend, indemnify and hold AmerisourceBergen Corporation and each of its subsidiaries harmless against any and all claims, losses, damages, costs, liabilities and expenses, including attorneys' fees and expenses, arising as a result of (a) any actual or asserted violation of Applicable Laws or by virtue of which Products made, sold, supplied, or delivered by or on behalf of Guarantors may be alleged or determined to be adulterated, | Guarantors shall maintain primary, noncontributory product liability insurance of not less than $5,000,000 per occurrence for claims relating to Products. This insurance must include AmerisourceBergen Corporation, its subsidiaries and their successors as additional insureds for claims arising out of |

| AmerisourceBergen Drug Corporation and Certain Affiliates | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | misbranded or otherwise not in full compliance with or in contravention of Applicable Laws, (b) the possession, distribution, sale and/or use of, or by reason of the seizure of, any Products of Guarantors, including any prosecution or action whatsoever by any governmental body or agency or by any private party, including claims of bodily injury, death or property damage, (c) any actual or asserted claim that Guarantors' Products infringe any proprietary or intellectual property rights of any person, including infringement of any trademarks or service names, trade names, trade secrets, inventions, patents or violation of any copyright laws or any other applicable federal, state or local laws, and (d) any actual or asserted claim of negligence, willful misconduct or breach of contract except to the extent arising from the negligence, willful misconduct or breach of contract of AmerisourceBergen or its affiliates.<br><br>(¶ 2 at 1.) | Products. Guarantor shall provide for at least thirty days' advance written notice to AmerisourceBergen Corporation of cancellation or material reduction of the required insurance. If the required insurance is underwritten on a "claims made" basis, the insurance must include a provision for an extended reporting period ("ERP") of not less than twenty-four months; Guarantors further agree to purchase the ERP if continuous claims made insurance, with a retroactive date not later than the date of this Agreement, is not continually maintained or is otherwise unavailable. This insurance shall be with an insurer and in a form acceptable to AmerisourceBergen Corporation, and any deductible or retained risk must be commercially and financially reasonable and acceptable to AmerisourceBergen Corporation. Guarantors warrant that they have sufficient assets to cover any self-insurance or retained risk. Upon request, Guarantors will promptly provide satisfactory evidence of the required insurance.<br><br>(¶ 3 at 1.) |

| Amneal Pharmaceuticals LLC, Amneal Pharmaceuticals of New York, LLC, Impax Laboratories, Inc., and Impax Laboratories, LLC | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Drug Distribution Service Agreement effective as of April 1, 2006, as amended from time to time | § 12.6. Indemnity. Purdue shall be solely responsible for and agrees to defend, indemnify, and hold harmless Wholesaler and its affiliates, shareholders, directors, officers and employees from and against any and all claims, causes of action, obligations, liability, liens, indebtedness, debts, judgments, damages, (exclusive of lost profits) losses, costs, expenses, and fees (including, without limitation, reasonable attorney fees) to the extent arising from or related to (i) breach or default under any representation, warranty, covenant, obligation or promise made by Purdue under this Agreement, (ii) Purdue's fraud, intentional misconduct, omission or negligence, (iii) Purdue's pricing, including claims arising out of Wholesaler's administration of Purdue contracts; (iv) the manufacture, marketing, testing, shipping, sale, possession or use of the Products (excluding any claim, liability, loss, damage, cost or expense shown to be solely attributable to Wholesaler's negligence in handling such Products); and (v) any intellectual property infringement actions arising out of Wholesaler's distribution of Products.

Wholesaler shall be solely responsible for and agrees to defend, indemnify, and hold harmless Purdue and its shareholders, directors, officers and employees from and against any and all claims, causes of action, obligations, liability, liens, | § 12.10. Insurance. During the term of this Agreement, and thereafter as may be necessary to cover claims associated with Products purchased by Wholesaler (whether before, during or after such term), Purdue shall obtain, pay for, and keep in full force and effect Product - Completed Operations Liability insurance with a per occurrence limit of not less than Ten Million Dollars ($10,000,000), with one or more insurance carriers with an AM Best Rating of at least A-, or its equivalent. In the event that these insurance policies are written on a claims-made basis, then the policy(ies) shall be maintained during the entire period of this Agreement and for a period of not less than five (5) years following the termination or expiration of this Agreement. Purdue shall deliver to Wholesaler certificates evidencing the existence and continuation of such insurance at the execution of this Agreement and upon Purdue's periodic renewal of such policy with the following language: "Cardinal Health, Inc. and its subsidiaries and |

| Cardinal Health | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | indebtedness, debts, judgments, damages (exclusive of lost profits), losses, costs, expenses, and fees (including, without limitation, reasonable attorney fees) to the extent arising from or related to (i) breach or default under any representation, warranty, covenant, obligation or promise made by Wholesaler or a Wholesaler affiliate under this Agreement, (ii) Wholesaler's fraud, intentional misconduct, omission or negligence, (iii) Wholesaler's intentional misconduct or negligence in the shipping, sale, possession, handling or storage of the Products; (iv) Wholesaler's pricing, and (v) Wholesaler's negligent failure to administer Purdue contracts in accordance with the terms of this Agreement.<br><br>IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OR LOST PROFITS.<br><br>Notwithstanding the above, neither party shall not be obligated to defend, indemnify, or hold harmless the other party to the extent the claim, cause of action, obligation, liability, lien, indebtedness, debt, judgment, damage (exclusive of lost profits), loss, cost, expense, and fee (including, without limitation, reasonable attorney fees) arises out of such other party's willful, wanton or negligent act or omission or breach of this Agreement.<br><br>This indemnity is conditioned upon the party seeking indemnification giving prompt notice to the indemnifying party of any claim which may be covered by this indemnity, permitting the indemnifying party to handle such claim as it determines most appropriate, cooperating fully with the indemnifying party in its handling of such claim, and not making | affiliates are named as additional insured and the insurance evidenced by this certificate shall be considered primary and non-contributing to any Cardinal Health insurance." Such insurance shall include a provision for at least thirty (30) days prior written notice to Wholesaler in the event of cancellation or material reduction of coverage. In lieu of insurance purchased through third parties, Purdue may elect to self-insure any or a portion of these coverages. |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | or offering to make any settlement of such claim without the prior written consent of the indemnified party. Furthermore, Purdue will not be obligated to defend, indemnify, or hold Wholesaler harmless under the terms of this agreement from claims arising out of Product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue, excluding Product returned to Wholesaler by Wholesaler's customers. | |
| Authorized Distributor Agreement effective as of July 1, 2012, by and between Purdue Pharma L.P. and Cardinal Health | <u>By Purdue</u>. Purdue will defend, indemnify, and hold harmless Wholesaler and its directors, officers, and employees ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties caused by or arising from any (i) negligent acts or omission of Purdue, (ii) failure of Purdue to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this ADA, (iv) claims of patent, trademark, copyright or other infringement related to Products, (v) an act or omission by Purdue in its direct storage, handling, use, demonstration, consumption, ingestion, digestion, design, manufacture, production and assembly of Products and their transportation to Wholesaler, or (vi) Claims arising out of Wholesaler's administration of Contracts with third party Customers (e.g. GPOs) in connection with applicable Contract Prices as set or determined by Purdue in writing or electronic transmission; <u>provided</u>, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Wholesaler or Wholesaler Indemnitees.<br><br>(§ 35(a).) | a. Wholesaler Insurance.<br><br>i. Wholesaler will, at Wholesaler's sole cost and expense, procure and maintain during the term of this ADA and for a period of five (5) years following the termination or expiration of this ADA the following minimum insurance coverage, written by insurance companies authorized to do business in the applicable jurisdiction(s) with a minimum financial rating of at least an "A-" or higher by the latest edition of A.M. Best or its equivalent:<br><br>• Commercial General Liability in amounts not less than $2,000,000 per occurrence and $5,000,000 annual aggregate; and<br><br>• Products Liability, including Products Completed Operations, in amounts not less than $2,000,000 per occurrence and $5,000,000 annual aggregate; and |

| Cardinal Health | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | <u>By Wholesaler</u>. Wholesaler will defend, indemnify and hold harmless Purdue and its Associated Companies, shareholders, directors, officers, employees and representatives ("Purdue Indemnitees") from and against all Claims brought by third parties against Purdue or Purdue Indemnitees caused by or arising from any (i) negligent acts or omission of Wholesaler or Wholesaler Indemnitees, (ii) failure of Wholesaler to perform its obligations or to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by Wholesaler in this ADA, (iv) act or omission by Wholesaler in its storage, shipping, handling or distribution of Products or (v) making by Wholesaler of representations or warranties with respect to Products to the extent not authorized by Purdue; <u>provided,</u> however, that Wholesaler will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Purdue or Purdue Indemnitees.<br><br>(§ 35(b).)<br><br><u>Procedures.</u> The obligations and liabilities of the Parties with respect to Claims subject to indemnification under this ADA ("Indemnified Claims") will be subject to the following terms and conditions:<br><br>i. The Party claiming a right to indemnification hereunder ("Indemnified Person") will give prompt written notice to the indemnifying Party ("Indemnifying Person") of any Indemnified Claim, stating its nature, basis and amount, to the extent known. Each such notice will be accompanied by copies of all relevant documentation, including any | • Professional Liability Insurance in an amount not less than $2,000,000 per occurrence and $2,000,000 annual aggregate;<br><br>ii. Before the commencement of the services hereunder, Wholesaler agrees to submit to Purdue documentation evidencing existence of the requirements contained above. Upon request, Wholesaler agrees to provide documentation of insurance evidencing the insurance required in this ADA.<br><br>iii. Wholesaler may self-insure and self-administer all or any portion of the required insurance, and to the extent that Wholesaler does self-insure, such insurance will not be deemed to exceed the scope of coverage and/or limits that would have been provided in an actual policy of insurance that satisfies the insurance requirements set forth in this Section. Further, no insurance coverage maintained by Wholesaler, whether self-insurance or otherwise, will be construed to expand any indemnification obligations that may be contained in this ADA.<br><br>(§ 39(a).)<br><br>b. <u>Purdue Insurance</u>. |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | summons, complaint or other pleading that may have been served or any written demand or other document.<br><br>ii. With respect to any Indemnified Claim: (A) the Indemnifying Person will defend or settle the Indemnified Claim, subject to the provisions of this subsection, (B) the Indemnified Person will, at the Indemnifying Person's sole cost and expense, cooperate in the defense by providing access to witnesses and evidence available to it, (C) the Indemnified Person will have the right to participate in any defense at its own cost and expense to the extent that, in its judgment, the Indemnified Person may otherwise be prejudiced thereby, (D) the Indemnified Person will not settle, offer to settle or admit liability in any Indemnified Claim without the written consent of an officer of the Indemnifying Person, and (E) the Indemnifying Person will not settle, offer to settle or admit liability as to any Indemnified Claim in which it controls the defense if such settlement, offer or admission contains any admission of fault or guilt on the part of the Indemnified Person, or would impose any liability or other restriction or encumbrance on the Indemnified Person, without the written consent of an officer of the Indemnified Person.<br><br>iii. Each Party will cooperate with, and comply with all reasonable requests of, each other Party and act in a reasonable and good faith manner to minimize the scope of any Indemnified Claim.<br><br>(§ 35(c).)<br><br>Under no circumstances will Purdue be obligated to defend, indemnify, or hold Wholesaler harmless from claims arising | i. Purdue will, at its sole cost and expense, procure and maintain during the term of this ADA and for a period of five (5) years following the termination or expiration of this ADA the following minimum insurance coverage, written by insurance companies authorized to do business in the applicable jurisdiction(s) with a minimum financial rating of at least an "A-" or higher by the latest edition of A.M. Best or its equivalent:<br><br>• Commercial General Liability insurance with a per occurrence limit of not less than two million dollars ($2,000,000.00); and<br><br>• Products and Completed Operations Liability insurance with a limit of ten million dollars ($10,000,000) per occurrence.<br><br>ii. In the event that any of the above described insurance policies are written on a claims made basis, then such policy(ies) will be maintained during the entire period of this ADA and for a period of not less than five (5) years following the termination or expiration of this ADA.<br><br>iii. The above-described insurance policies will be issued by insurance carriers with an A.M. Best Rating of at least A- VII. . An |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | out of product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue.<br><br>(§ 35(d).)<br><br>**EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.**<br><br>(§ 35(e).) | annual certificate of insurance will be issued to Wholesaler.<br><br>(§ 39(b).) |
| Distribution Performance Agreement effective as of August 1, 2012 between Purdue Pharma L.P. and Cardinal Health | <u>By Purdue</u>. Purdue will defend, indemnify, and hold harmless Wholesaler and its, directors, officers, and employees ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties caused by or arising from any (i) negligent acts or omission of Purdue, (ii) failure of Purdue to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this DPA (iv) claims of patent, trademark, copyright or other infringement related to Products, (v) an act or omission by Purdue in its direct storage, handling, use, demonstration, consumption, ingestion, digestion, design, manufacture, production and assembly of Products and their transportation to Wholesaler, or (vi) Claims arising out of Wholesaler's administration of Contracts with third party Customers (e.g. GPOs) in connection with applicable Contract Prices as set or determined by Purdue in writing or electronic transmission; <u>provided</u>, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any | None. |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | negligent act or omission of Wholesaler or Wholesaler Indemnitees.<br><br>(§ 17(a).)<br><br>By Wholesaler. Wholesaler will defend, indemnify and hold harmless Purdue and its Associated Companies, shareholders, directors, officers, employees and representatives ("Purdue Indemnitees") from and against all Claims brought by third parties against Purdue or Purdue Indemnitees caused by or arising from any (i) negligent acts or omission of Wholesaler or Wholesaler Indemnitees, (ii) failure of Wholesaler to perform its obligations or to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by Wholesaler in this DPA, act or omission by Wholesaler in its storage, shipping, handling or distribution of Products or making by Wholesaler of representations or warranties with respect to Products to the extent not authorized by Purdue; provided, however, that Wholesaler will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Purdue or Purdue Indemnitees.<br><br>(§ 17(b).)<br><br>Procedures. The obligations and liabilities of the Parties with respect to Claims subject to indemnification under this DPA ("Indemnified Claims") will be subject to the following terms and conditions:<br><br>    i. The Party claiming a right to indemnification hereunder ("Indemnified Person") will give prompt written notice to the indemnifying Party ("Indemnifying Person") of any Indemnified Claim, stating its nature, basis and amount, | |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
|  | to the extent known. Each such notice will be accompanied by copies of all relevant documentation, including any summons, complaint or other pleading that may have been served or any written demand or other document.<br><br>ii. With respect to any Indemnified Claim: (A) the Indemnifying Person will defend or settle the Indemnified Claim, subject to provisions of this subsection, (B) the Indemnified Person will, at the Indemnifying Person's sole cost and expense, cooperate in the defense by providing access to witnesses and evidence available to it, (C) the Indemnified Person will have the right to participate in any defense at its own cost and expense to the extent that, in its judgment, the Indemnified Person may otherwise be prejudiced thereby, (D) the Indemnified Person will not settle, offer to settle or admit liability in any Indemnified Claim without the written consent of an officer of the Indemnifying Person, and (E) the Indemnifying Person will not settle, offer to settle or admit liability as to any Indemnified Claim in which it controls the defense if such settlement, offer or admission contains any admission of fault or guilt on the part of the Indemnified Person, or would impose any liability or other restriction or encumbrance on the Indemnified Person, without the written consent of an officer of the Indemnified Person.<br><br>iii. Each Party will cooperate with, and comply with all reasonable requests of, each other Party and act in a reasonable and good faith manner to minimize the scope of any Indemnified Claim. |  |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | (§ 17(c).)<br><br>Under no circumstances will Purdue be obligated to defend, indemnify, or hold Wholesaler harmless from claims arising out of product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue.<br><br>(§ 17(d).)<br><br>**EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.**<br><br>(§ 17(e).) | |
| Generic Wholesale Service Agreement effective as of January 1, 2010 between Cardinal Health and Rhodes Pharmaceuticals<br><br>Amended by Supplier Agreement effective as of November 25, 2014 between Rhodes Pharmaceuticals L.P. and Cardinal Health, and Red Oak Sourcing, LLC Generic Pharmaceuticals Business Standards incorporated by reference | Supplier will defend, indemnify, and hold harmless Cardinal and its affiliates, customers, directors, officers, employees and representatives from and against any and all claims, losses, damages, costs, and expenses (including without limitation reasonable attorneys' fees) arising directly or indirectly out of: (a) the fraud, misrepresentation, intentional misconduct, omission or negligence of Supplier; (b) the manufacture, marketing, testing, shipping, sale, possession or use of the Products (excluding any claim, liability, loss, damage, cost or expense shown to be solely attributable to Cardinal's negligence in handling such Products); (c) "class of trade" pricing, if any, maintained by Supplier from and after the effective date of this Agreement, including without limitation those arising out of Cardinal's administration of Supplier Contracts; and (d) any intellectual property infringement actions (including patent, trademark, service mark, copyright trade dress, trade secret | During the term of this Agreement and thereafter as may be necessary to cover claims associated with Products purchased by Cardinal (whether before, during or after such term), Supplier will obtain, pay for, and keep in full force and effect Product — Completed Operations Liability insurance with a per occurrence limit of not less than $10 million, with one or more insurance carriers with an AM Best Rating of at least A-, VII or its equivalent. In the event that these insurance policies are written on a claims-made basis, then the policy(ies) will be maintained during the entire period of this Agreement and for a period of not less than five (5) years following the termination or |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| therein and Red Oak Standards incorporated by reference | and other proprietary rights) brought by a third party in connection with Cardinal's distribution of Products hereunder. The warranty and indemnification provisions of this section will survive any termination or expiration of this Agreement.<br><br>(Ex. A, § 15.)<br><br>Supplier shall defend, indemnify and hold harmless each Buyer and its affiliates, directors, officers, employees, representatives, and customers (provided that indemnification of customers shall apply in the case of Cardinal Health only) from and against any and all claims, losses, damages (including incidental, consequential and indirect damages), costs and expenses (including, without limitation reasonable attorneys' fees) ("Losses") arising directly or indirectly out of: (i) use of any Supplier product, (ii) injury or death to person or property alleged to have been caused by any defect in Supplier's product; (iii) any recall, quarantine, warning or withdrawal of the Supplier's product; (iv) infringement of any third party's intellectual property rights, (v) Supplier's indirect contracts, and (vi) Supplier's fraud, misrepresentation, negligence or wrongdoing or any breach of representations, warranties, covenants and agreements contained within these Generic Business Standards. Supplier shall have no liability to a Buyer for Losses to the extent resulting from the negligence on the part of such Buyer, its employees or agents. The terms of this section shall survive expiration or termination of the purchasing relationship with Supplier.<br><br>(Red Oak Standards § 17.) | expiration of this Agreement. Supplier will deliver to Cardinal certificates evidencing the existence and continuation of such insurance at the execution of this Agreement and upon Supplier's periodic renewal of such policy with the following language: "Cardinal Health, Inc. and its subsidiaries and affiliates are named as additional insureds and the insurance evidenced by this certificate will be considered primary and non-contributing to any Cardinal Health insurance." Such insurance will include a provision for at least thirty (30) days prior written notice to Cardinal in the event of cancellation or material reduction of coverage.<br><br>(Ex. A, § 16.)<br><br>Section 2(d) Insurance. Supplier shall obtain and maintain Products and Completed Operations Liability Insurance with a per occurrence limit of not less than five million dollars ($5,000,000). Red Oak Sourcing, LLC and Cardinal Health, Inc. & its subsidiaries and affiliates shall be named as additional insureds under the required policy. Supplier's insurance shall be primary and non-contributory over any insurance or self-insurance program maintained by Red Oak Sourcing, LLC or Cardinal Health, Inc. Supplier will provide a Certificate of |

| Cardinal Health | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | | Insurance or other evidence of insurance coverage evidencing the insurance required in this Agreement and the additional insured status.<br><br>(Nov. 25, 2014 Supplier Agreement amending GWSA § 2(d).)<br><br>Insurance, The Supplier shall, at its expense, carry and maintain a Commercial General Liability policy, including products liability coverage covering all products, with a per occurrence limit as required by each respective Buyer. Such policy shall name each Buyer as an additional insured. Such insurance will be primarily insurance with respect to Buyer's insurance or any self-insurance. Required insurance coverage under this section shall not limit Supplier's obligations under these Generic Business Standards.<br><br>(Red Oak Generic Business Terms § 18.) |
| Wholesale Purchase Agreement effective as of March 10, 2015 by and between Rhodes Pharmaceuticals L.P. and Cardinal Health | Supplier will defend, indemnify, and hold harmless Cardinal Health and its affiliates, subsidiaries, directors, officers, employees and representatives from and against any and all claims, liabilities, losses, damages, costs, and expenses (including without limitation reasonable attorneys' fees) arising or claimed to arise directly or indirectly out of: (a) the breach of any representation or warranty set forth in this Section; (b) the fraud, intentional misconduct, omission or negligence of Supplier; (c) the manufacture, marketing, | Insurance. Without limiting any other obligation or liability of Supplier, Supplier will obtain and maintain insurance coverage with limits and conditions not less than the following:<br><br>a. Commercial general liability insurance with a per-occurrence limit of not less than $2,000,000; and |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | testing, shipping, sale, possession or use of the Products (excluding any claim, liability, loss, damage, cost or expense shown to be solely attributable to Cardinal Health's negligence in handling such Product); (d) "class of trade" pricing, if any, maintained by Supplier from and after the effective date of this Agreement, including without limitation those arising out of Cardinal Health's administration of Supplier Contracts; and (e) any intellectual property infringement actions (including patent, trademark, service mark, copyright trade dress, trade secret and other proprietary rights) brought by a third party in connection with Cardinal Health's distribution of Products hereunder. <br><br> Cardinal Health will defend, indemnify, and hold harmless Supplier and its affiliates, subsidiaries, directors, officers, employees and representatives from and against any and all claims, liabilities, losses, damages, costs, and expenses (including without limitation reasonable attorneys' fees) arising or claimed to arise directly or indirectly out of: (a) the breach of any representation or warranty set forth in this Section; and (b) the fraud, intentional misconduct, omission or negligence of Cardinal Health. <br><br> The warranty and indemnification provisions of this Section will survive any termination or expiration of this Agreement. <br><br> (§ 12.) | b. Product and completed operations liability insurance with a limit of not less than $10,000,000. <br><br> If any of the above-described insurance policies are written on a claims-made basis, then Supplier will maintain such policy in effect through a period of not less than 5 years following the termination or expiration of this Agreement. <br><br> The above-described insurance policies must be issued by insurance carriers with an A.M. Best Rating of at least A-VII or its equivalent, and Cardinal Health, Inc. and its subsidiaries and affiliates must be named as additional insureds under the policies. The required policies must provide primary insurance over any insurance or self-insurance program maintained by Cardinal Health. Supplier will not be deemed to be relieved of any liability or responsibility because of the fact that it maintains (or does not maintain) insurance. Before Supplier sells any Products to Cardinal Health, and upon renewal of the required policies, Supplier will provide a certificate of insurance evidencing the insurance required in this Agreement and the additional insured status. Supplier will endeavor to provide Cardinal Health 30 days' written notice of |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | | any cancellation prior to the policy's expiration.<br><br>(§ 13.) |
| Third Amendment to Authorized Distributor Agreement, effective as of January 1, 2021, by and between Purdue Pharma L.P. and Cardinal Health § 35(a). | 15. Section 35(a) of the ADA is hereby amended by deleting such Section in its entirety and substituting in place thereof the following:<br>    a. By Purdue. Purdue will defend, indemnify, and hold harmless Wholesaler and its directors, officers, and employees and representatives ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties caused by or arising from any (i) negligent acts or omission of Purdue, (ii) failure of Purdue to perform its obligations or to comply in all material respects with applicable laws, regulations, rules and ordinances, (iii) any material breach of any warranty made by Purdue in this ADA, (iv) claims of patent, trademark, copyright or other infringement related to Products, or (v) an act or omission by Purdue in its direct storage, handling, use, demonstration, consumption, ingestion, digestion, manufacture, production and assembly of Products and their transportation to Wholesaler, (vi) Claims arising out of Wholesaler's administration of Contracts with third party customers (e.g. GPOs) in connection with applicable Contract prices as set or determined by Purdue in writing or electronic transmission or (vii) death or bodily harm allegedly caused from the use or consumption of any Product; provided, however, Purdue will have no obligations under this Section for any | Same as 2012 ADA |

| Cardinal Health | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Claims to the extent caused by any willful, wanton or negligent act or omission of Wholesaler or Wholesaler Indemnitees." | |
| Fifth Amendment to Distribution Performance Agreement ("DPA"), effective as of January 1, 2021, by and between Purdue Pharma L.P. and Cardinal Health | 17. Section 17(a) of the DPA is hereby amended by deleting such Section in its entirety and substituting in place thereof the following:<br><br>By Purdue. Purdue will defend, indemnify, and hold harmless Wholesaler and its directors, officers, and employees and representatives ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties caused by or arising from any (i) negligent acts or omission of Purdue, (ii) failure of Purdue to perform its obligations or to comply in all material respects with applicable laws, regulations, rules and ordinances, (iii) any material breach of any warranty made by Purdue in this DPA, (iv) claims of patent, trademark, copyright or other infringement related to Products, or (v) an act or omission by Purdue in its direct storage, handling, use, demonstration, consumption, ingestion, digestion, manufacture, production and assembly of Products and their transportation to Wholesaler (vi) or Claims arising out of Wholesaler's administration of Contracts with third party customers (e.g. GPOs) in connection with applicable Contract prices as set or determined by Purdue in writing or electronic transmission, or (vii) death or bodily harm allegedly caused from the use or consumption of any Product; provided, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any willful, wanton or negligent act or omission of Wholesaler or Wholesaler Indemnitees. | |

| CVS | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Rebate Agreement dated as of January 1, 2014, by and between CaremarkPCS Health, L.L.C. ("PBM") and Purdue Pharma L.P. ("PURDUE") | PBM shall indemnify, defend, and hold harmless PURDUE and its Affiliates and their respective officers, directors, employees, agents and subcontractors (collectively, "PURDUE Indemnitees") from any and all claims, demands, actions, causes of action, losses, judgments, liabilities, damages, costs and expenses (including, but not limited to, reasonable attorneys' fees, court costs and costs of settlement) (collectively, "Losses") that the PURDUE Indemnitees, or any of them, may suffer as a result of the negligence or willful misconduct of PBM. PURDUE shall indemnify, defend, and hold harmless PBM and its Affiliates and their respective officers, directors, employees, agents and subcontractors (collectively, "PBM Indemnitees") from any and all Losses that the PBM Indemnitees, or any of them, may suffer that arise from or relate to: (i) the death of, or bodily injury to, any person on account of the use of any PURDUE product; (ii) any recall, quarantine, warning or withdrawal of any [Debtor] product; (iii) any breach by PURDUE of any of its representations, warranties, covenants or agreements contained in this Agreement; (iv) any claim that a PURDUE product infringes on the patent or trademark of any third party; or (v) the negligence or willful misconduct of PURDUE.<br><br>(§ 4(d).) | Purdue shall maintain in effect during the term of this Agreement a comprehensive general liability policy and products liability coverage covering all Products, and Purdue shall promptly after the execution of this Agreement designate PBM as an additional insured on such policies, and such insurance will be primary insurance with respect to PBM. The policy shall be underwritten by an insurance company that carries an A- or better rating from A.M. Best. This comprehensive insurance policy shall be in an amount not less than Five Million Dollars ($5,000,000) per occurrence. Purdue shall provide thirty (30) days notice to PBM in the event of any modifications, cancellation, or termination thereof. Purdue shall provide PBM with a certificate of insurance naming PBM as additional insured evidencing compliance with this Section within thirty (30) days of execution of this Agreement and thereafter upon request. The amount of such required insurance coverage under this Section shall not limit Purdue's obligations under this Agreement.<br><br>(§ 4(f).) |
| Medicare Part D Program Rebate Agreement dated as of January 1, 2019, by | PBM shall indemnify, defend and hold harmless Manufacturer and its Affiliates and their respective officers, directors, employees, agents and subcontractors | Manufacturer shall maintain in effect during the term of this Agreement a comprehensive general liability policy and |

| CVS | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| and between CVS Caremark Part D Services L.L.C. ("PBM") and Purdue Pharma L.P. and, as appropriate, Purdue Pharma Puerto Rico | (collectively, "Manufacturer Indemnitees") from any and all claims, demands; actions, causes: of action, losses, judgments, liabilities, damages, costs and expenses, including, but not limited to, reasonable attorneys' fees, court costs and costs of settlement) (collectively, "Losses") that the Manufacturer Indemnitees, or any of them, may suffer as a result of (i) any breach by PBM of its representations, warranties, covenants or agreements contained 'in this Agreement, or (ii) the negligence or willful misconduct of PBM.<br><br>Manufacturer shall indemnify, defend, and hold harmless PBM and its Affiliates and their respective officers, directors, employees, agents and subcontractors (collectively, "PBM Indemnitees") from any and all Losses that the PBM Indemnitees, or any of them, may suffer that arise from or relate to: (i) the death of, or bodily injury to, any person on account of the use of any Manufacturer Product; (ii) any recall, quarantine, warning or withdrawal of any Manufacturer Product; (iii) any breach by Manufacturer of any of its representations, warranties, covenants or agreements contained in this Agreement; (iv) any claim that a Manufacturer Product infringes on the patent or trademark of any third party; or (v) the negligence or willful misconduct of Manufacturer, provided the Losses do not arise from the negligence or wrongful act or omission of the party seeking indemnification. The party seeking indemnity under this Section shall indemnify the: other patty's Indemnitees from the Losses that arise from the above provided: (1). the Losses arise or result from the ,negligence or wrongful act or omission of the other party; (ii) the Losses | products liability coverage covering Manufacturer's Products, and Manufacturer shall promptly after the execution of this Agreement designate PBM as an additional insured on such policy, and such insurance will be primary insurance with respect to the policy shall be underwritten by an insurance company that carries an A- rating from A.M. Best. This comprehensive insurance policy shall be in an amount not less than Five Million Dollars ($5,000,000) per occurrence. The Manufacturer shall provide prompt betide to PBM in the event of any adverse Material modifications resulting in the reduction of required coverage, cancellation or termination thereof. Manufacturer shall provide PBM with a certificate of insurance naming PBM as additional insured evidencing compliance with this Section with thirty (30) days of execution of this Agreement and thereafter upon request. The amount of such required insurance coverage under this Section shall not limit Manufacturer's obligations under this Agreement.<br><br>(§ 4(e).) |

| CVS | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | do not arise or result from the negligence or wrongful act or omission of the party seeking indemnification; (iii) the Indemnitees provide prompt written notice of the Losses to the other patty; (iv) the Indemnitees do not :compromise, settle or consent to judgment on the Losses without the prior written approval of the indemnifying party; and (v) the indemnifying party has the right to appoint counsel to defend the Losses and the Indemnitees reasonably cooperate with the defense of the Losses.<br><br>(§ 4(c).) | |

| Endo International plc and its Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Twelfth Amendment, effective January 1, 2020, made to the Medicare Part D Rebate Program Agreement, effective January 1, 2011, by and between Express Scripts Senior Care Holdings, Inc. ("ESSC") and Purdue | Indemnification. Company shall indemnify and hold harmless ESSC, its Affiliates, successors, assigns, officers, directors, shareholders, employees and Covered Plan Sponsors ("ESSC Indemnitees"), from and against any and all liability, losses, damages, claims, demands, fines, causes of action, suits or proceedings and expenses connected therewith (including reasonable attorneys' fees, reasonable expert witness fees and court costs) brought by third parties ("Claims") that the ESSC Indemnitees, or any of them, may suffer arising from or related to any: (1) bodily or other injury or death allegedly resulting | None |

| Express Scripts Inc. | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Pharma L.P. and its Subsidiaries ("Company") | from a Part D Eligible Individual's appropriate ingestion or use of a Product; (2) negligent acts or omission of Company Indemnitees; (3) failure of Company to perform its obligations or to comply with applicable laws, rules, and regulations; or (4) breach of any warranty made by, or obligation of, Company in this Agreement, provided, however, that Company will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of ESSC or ESSC Indemnitees, as to which Claims each party shall indemnify the other to the extent of their respective liability.<br><br>With respect to bodily or other injury or death allegedly resulting from a Part D Eligible Individual's ingestion or use of a Product, Company shall not be obligated to indemnify ESSC Indemnitees for the following: (i) representations made by an ESSC Indemnitee concerning the Products that are materially different from the prescribing information for the Products; or (ii) when the Claim involves substitution of a product of another manufacturer in place of a Product.<br><br>ESSC shall defend, indemnify and hold harmless Company, and its Affiliates, successors, assigns, officers, directors, shareholders, and employees ("Company Indemnitees"), from and against any and all Claims caused by or arising from any (i) negligent acts or omission of ESSC Indemnitees or (ii) failure of ESSC to perform its obligations or to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by, or obligation of, ESSC in this Agreement; provided, however, that ESSC will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Company or Company Indemnitees, as to which | |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Claims each party shall indemnify the other to the extent of their respective liability.<br><br>The Party claiming indemnity under this Section (the "Indemnified Party") will give written notice to the Party from whom indemnity is being sought (the "Indemnifying Party") promptly after learning of such third party Claim; provided, however, that the failure of the Indemnified Party to provide such written notice will not release the Indemnifying Party from its obligations to the Indemnified Party under this Section except to the extent that the Indemnifying Party is actually prejudiced as a result of such failure. The Indemnified Party will provide the Indemnifying Party with reasonable assistance, at the Indemnifying Party's reasonable expense, in connection with the defense of the third party Claim for which indemnity is being sought. The Indemnified Party may participate in and monitor such defense with counsel of its own choosing at its sole expense; provided, however, the Indemnifying Party may assume and conduct the defense of the Claim with counsel of its choice, which counsel will be reasonably acceptable to the Indemnified Party. The Indemnifying Party will not settle any third party Claim without the prior written consent of the Indemnified Party, not to be unreasonably withheld, unless the settlement involves only the payment of money. So long as the Indemnifying Party is actively defending the Claim in good faith, the Indemnified Party will not settle or compromise any such Claim without the prior written consent of the Indemnifying Party. If the Indemnifying Party does not assume and conduct the defense of the Claim as provided above, (a) the Indemnified Party may defend against, consent to the entry of any judgment, or enter into any settlement with respect to such | |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Claim in any manner the Indemnified Party may deem reasonably appropriate (and the Indemnified Party need not consult with, or obtain any consent from, the Indemnifying Party in connection therewith), and (b) the Indemnifying Party will remain responsible to indemnify the Indemnified Party as provided in this Section. (XI.F.) | |
| GPO Product Agreement, effective September 12, 2013, by and between Econdisc Contracting Solutions, LLC ("GPO") and Rhodes Pharmaceuticals L.P. ("Vendor") | Indemnification. Vendor hereby agrees to indemnify, defend and hold harmless GPO and each Participant and their respective directors, officers, employees, insurers, and agents from and against any and all claims, demands (excluding lost profits), actions, losses, expenses, damages, liabilities, costs (including, without limitation, interest, penalties and reasonable attorneys' fees) and judgments for third party claims, actions or demands arising out of or related to: (a) alleged bodily injury, death, property damage or any other damage or injury allegedly caused by in whole or in part, contributed by, or associated with any Product(s) covered by this Agreement, or (b) the gross negligence or willful misconduct of Vendor or any of its employees and agents acting under its control or supervision. Notwithstanding the foregoing, Vendor shall not be obligated to defend, indemnify or hold harmless GPO or a Participant from claims to the extent arising out of the GPO's and/or such Participant's willful misconduct, wanton or negligent act or omission or such party's breach of this Agreement. (§ 26.) | 27. Insurance. Vendor shall maintain such policies of insurance of the types and in amounts customarily carried by businesses in Vendor's respective industry, including but not limited to: <br> 27.1 Statutory worker's compensation insurance covering liability under the appropriate state statutes and employers liability insurance with minimum limits of $1 million per accident, per employee, per disease; <br> 27.2 Commercial general liability insurance with minimum limits of $2 million per occurrence; and <br> 27.3 Product liability insurance with minimum limits of $10 million per occurrence. This policy shall be endorsed to name GPO and Participant(s) as additional insureds with respect to Vendor's indemnification and liabilities assumed under this Agreement. |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | | The required insurance types and limits above shall in no way limit Vendor's indemnification obligations or liability under Section 26 of this Agreement. All required insurance shall be underwritten by insurers having an A.M. Best financial rating of A-VIII or better. Deductibles or self-insured retentions applicable to all required insurance in this Section 27, except for Section 27.1 above, shall not exceed $100,000 without the express written approval of GPO and when applicable, Participant(s).<br><br>(§ 27.) |
| Preferred Savings Grid Rebate Program Agreement, effective January 1, 2014, by and between Express Scripts, Inc. ("ESI"), and Purdue Pharma L.P. and its Associated U.S. Companies ("Company") | Indemnification. Company shall indemnify and hold harmless ESI, its Affiliates, successors, assigns, officers, directors, shareholders, employees and Clients ("Indemnitees"), from and against any and all liability, losses, damages, claims, demands, fines, causes of action, suits or proceedings and expenses connected therewith (including reasonable attorneys' fees, reasonable expert witness fees and court costs) arising from or related to bodily or other injury or death allegedly resulting from a Participant's ingestion or use of a Product.<br><br>This indemnification is conditioned upon the following: (i) ESI promptly notifying Company of the claim or suit; (ii) ESI making all relevant records available to Company; (iii) ESI affording Company the right to assume the defense of or settle such claim or suit; and (iv) ESI in all ways cooperating fully with Company in defending against the claim or suit. | None |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Company shall not be obligated to indemnify Indemnitees for the following: (1) negligence or other wrongful acts on the part of an Indemnitee or third parties not under Company's control; (ii) representations made by an Indemnitees concerning the Products that are materially different from the prescribing information for the Products; or (iii) when the claim or suit involves substitution of a product of another manufacturer in place of a Product.<br><br>(X.G.) | |
| Inflation Agreement, effective January 1, 2016, by and between Express Scripts, Inc. ("ESI"), and Purdue Pharma L.P. & its Associated U.S. Companies ("Company") | Indemnification. Company shall indemnify and hold harmless ESI, its Affiliates, successors, assigns, officers, directors, shareholders, employees and Clients ("Indemnitees"), from and against any and all liability, losses, damages, claims, demands, fines, causes of action, suits or proceedings and expenses connected therewith (including reasonable attorneys' fees, reasonable expert witness fees and court costs) arising from or related to bodily or other injury or death allegedly resulting from a person's ingestion or use of Company's pharmaceutical product.<br><br>This indemnification is conditioned upon the following: (i) ESI promptly notifying Company of the claim or suit; (ii) ESI making all relevant records available to Company; (iii) ESI affording Company the right to assume the defense of or settle such claim or suit; and (iv) ESI in all ways cooperating fully with Company in defending against the claim or suit.<br><br>Company shall not be obligated to indemnify Indemnitees for the following: (i) negligence or other wrongful acts on the part of an Indemnitee or third parties not under Company's control; | None |

| Express Scripts Inc. | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | (ii) representations made by an Indemnitee concerning the products that are materially different from the prescribing information for the products; or (iii) when the claim or suit involves substitution of a product of another manufacturer in place of a product.<br><br>(VIII.I.) | |
| Third Amendment, effective January 1, 2020, to the Medicare Part D Inflation Agreement, effective January 1, 2017, by and between Express Scripts Senior Care Holdings, Inc. ("ESSC") and Purdue Pharma L.P. and its Subsidiaries ("Company") | Company shall indemnify and hold harmless ESSC, its Affiliates, successors, assigns, officers, directors, shareholders, employees and Covered Plan Sponsors ("ESSC Indemnitees"), from and against any and all liability, losses, damages, claims, demands, fines, causes of action, suits or proceedings and expenses connected therewith (including reasonable attorneys' fees, reasonable expert witness fees and court costs) brought by third parties ("Claims") that the ESSC Indemnitees or any of them may suffer arising from or related to (1) bodily or other injury or death allegedly resulting from a person's appropriate ingestion or use of Company's pharmaceutical product. (2) negligent acts or omission of Company Indemnites; (3) failure of Company to perform its obligations or to comply with applicable laws, rules, and regulations; or (4) breach of any warranty made by, or obligation of, Company in this Agreement, provided, however, that Company will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of ESSC or ESSC Indemnitees, as to which Claims each party shall indemnify the other to the extent of their respective liability.<br><br>With respect to bodily or other injury or death allegedly resulting from a person's appropriate ingestion or use of Company's pharmaceutical product, Company shall not be obligated to | None |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | indemnify ESSC Indemnitees for the following: (i) representations made by an ESSC Indemnitee concerning the products that are materially different from the prescribing information for the products; or (ii) when the Claim involves substitution of a product of another manufacturer in place of a product.<br><br>ESSC shall defend, indemnify and hold harmless Company, and its Affiliates, successors, assigns, officers, directors, shareholders, and employees ("Company Indemnitees"), from and against any and all Claims caused by or arising from any (i) negligent acts or omission of ESSC Indemnitees or (ii) failure of ESSC to perform its obligations or to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by, or obligation of, ESSC in this Agreement; provided, however, that ESSC will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Company or Company Indemnitees, as to which Claims each party shall indemnify the other to the extent of their respective liability.<br><br>The Party claiming indemnity under this Section (the "Indemnified Party") will give written notice to the Party from whom indemnity is being sought (the "Indemnifying Party") promptly after learning of such third party Claim; provided, however, that the failure of the Indemnified Party to provide such written notice will not release the Indemnifying Party from its obligations to the Indemnified Party under this Section except to the extent that the Indemnifying Party is actually prejudiced as a result of such failure. The Indemnified Party will provide the Indemnifying Party with reasonable assistance, at the | |

| Express Scripts Inc. | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Indemnifying Party's reasonable expense, in connection with the defense of the third party Claim for which indemnity is being sought. The Indemnified Party may participate in and monitor such defense with counsel of its own choosing at its sole expense; provided, however, the Indemnifying Party may assume and conduct the defense of the Claim with counsel of its choice, which counsel will be reasonably acceptable to the Indemnified Party. The Indemnifying Party will not settle any third party Claim without the prior written consent of the Indemnified Party, not to be unreasonably withheld, unless the settlement involves only the payment of money. So long as the Indemnifying Party is actively defending the Claim in good faith, the Indemnified Party will not settle or compromise any such Claim without the prior written consent of the Indemnifying Party. If the Indemnifying Party does not assume and conduct the defense of the Claim as provided above, (a) the Indemnified Party may defend against, consent to the entry of any judgment, or enter into any settlement with respect to such Claim in any manner the Indemnified Party may deem reasonably appropriate (and the Indemnified Party need not consult with, or obtain any consent from, the Indemnifying Party in connection therewith), and (b) the Indemnifying Party will remain responsible to indemnify the Indemnified Party as provided in this Section. <br><br>(VIII.I.) | |
| Preferred Savings Grid Rebate Program Agreement, effective July 1, 2019, by and between Express Scripts, Inc. | Indemnification. ESI shall defend, indemnify and hold harmless Company, and its Affiliates, successors, assigns, officers, directors, shareholders, and employees ("Company Indemnitees"), from and against any and all liability, losses, damages, claims, demands, fines, causes of action, suits or proceedings and expenses connected therewith (including | |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| ("ESI"), and Purdue Pharma L.P. ("PPLP") | reasonable attorneys' fees, reasonable expert witness fees and court costs) brought by third parties against the Company Indemnitees ("Claims") caused by or arising from any (i) negligent acts or omission of ESI Indemnitees or (ii) failure of ESI to perform its obligations or to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by, or obligation of, ESI in this Agreement; provided, however, that ESI will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Company or Company Indemnitees, as to which Claims each party shall indemnify the other to the extent of their respective liability.<br><br>Company shall defend, indemnify and hold harmless ESI, its Affiliates, successors, assigns, officers, directors, shareholders, employees, and Clients ("ESI Indemnitees"), from and against any and all Claims that the ESI Indemnitees, or any of them, may suffer arising from or related to any: (1) bodily or other injury or death allegedly resulting from a Member's appropriate ingestion or use of a Product; (2) negligent acts or omission of Company Indemnitees; (3) failure of Company to perform its obligations or to comply with applicable laws, rules, and regulations; or (4) breach of any warranty made by, or obligation of, Company in this Agreement. With respect to bodily or other injury or death allegedly resulting from a Member's ingestion or use of a Product, Company shall not be obligated to indemnify ESI Indemnitees for the following: (i) representations made by an ESI Indemnitee concerning the Products that are materially different from the prescribing information for the Products; or (ii) when the Claim involves substitution of a product of another manufacturer in place of a Product. | |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | The Party claiming indemnity under this Section (the "Indemnified Party") will give written notice to the Party from whom indemnity is being sought (the "Indemnifying Party") promptly after learning of such third party Claim; provided, however, that the failure of the Indemnified Party to provide such written notice will not release the Indemnifying Party from its obligations to the Indemnified Party under this Section except to the extent that the Indemnifying Party is actually prejudiced as a result of such failure. The Indemnified Party will provide the Indemnifying Party with reasonable assistance, at the Indemnifying Party's reasonable expense, in connection with the defense of the third party Claim for which indemnity is being sought. The Indemnified Party may participate in and monitor such defense with counsel of its own choosing at its sole expense; provided, however, the Indemnifying Party may assume and conduct the defense of the third party Claim with counsel of its choice, which counsel will be reasonably acceptable to the Indemnified Party. The Indemnifying Party will not settle any third party Claim without the prior written consent of the Indemnified Party, not to be unreasonably withheld, unless the settlement involves only the payment of money. So long as the Indemnifying Party is actively defending the Third Party Claim in good faith, the Indemnified Party will not settle or compromise any such Third Party Claim without the prior written consent of the Indemnifying Party. If the Indemnifying Party does not assume and conduct the defense of the Third Party Claim as provided above, (a) the Indemnified Party may defend against, consent to the entry of any judgment, or enter into any settlement with respect to such third party Claim in any manner the Indemnified Party may deem | |

| Express Scripts Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | reasonably appropriate (and the Indemnified Party need not consult with, or obtain any consent from, the Indemnifying Party in connection therewith), and (b) the Indemnifying Party will remain responsible to indemnify the Indemnified Party as provided in this Section.<br><br>(X.H.)<br><br>Remedies. **EXCEPT FOR THIRD PARTY CLAIMS COVERED UNDER THE INDEMNIFICATION PROVISIONS IN THE SECTION TITLED, "INDEMNIFICATION," ABOVE, NEITHER PARTY, NOR ANY OF THEIR RESPECTIVE AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS, SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT OR PUNITIVE DAMAGES, INCLUDING BUT NOT LIMITED TO ANY LOSS OF OPPORTUNITY, REVENUES, OR PROFITS, REGARDLESS OF WHETHER SUCH DAMAGES OR LOSSES WERE KNOWN OR FORESEEABLE. EXCEPT FOR LIABILITY UNDER THE INDEMNIFICATION PROVISIONS HEREIN, THE PARTIES IRREVOCABLY WAIVE CONSEQUENTIAL, SPECIAL, INDIRECT AND PUNITIVE DAMAGES IN ARBITRATION OR ANY OTHER FORUM.**<br><br>(X.I.) | |

| Henry Schein | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Master Supply Agreement, dated January 1, 2008 between Noramco, Inc., and Purdue Pharma L.P. | **9.0 INDEMNIFICATION; DISCLAIMER OF FURTHER WARRANTIES; LIMITATION ON LIABILITY**<br><br>9.1 <u>Indemnification by Seller</u>. Seller will indemnify, defend and hold harmless Buyer, its Associates, and its and their respective employees, agents, officers, and directors from and against any Liability arising from a Third Party Claim caused by Seller's: (a) negligence or willful misconduct, (b) failure of Product to meet the Specifications; or (c) breach of any of its representations, warranties or obligations in this Agreement, except to the extent that such Liability arises out of or results from, the negligence or misconduct of an Indemnified Party.<br><br>9.2 <u>Indemnification by Buyer</u>. Buyer will indemnify, defend and hold harmless Seller, its Associates, and its and their respective employees, agents, officers, and directors from and against any Liability arising from a Third Party Claim caused by Buyer's: (a) negligence or willful misconduct or (b) manufacture and/or distribution of the final drug product containing the API; or (c) breach of any of its representations, warranties or obligations in this Agreement, except to the extent that such Liability arises out of or results from the negligence or misconduct of an Indemnified Party.<br><br>9.3 <u>Procedures for Indemnification</u>. Each Indemnified Party agrees to give the Indemnifying Party prompt written notice of any Claim or Liability or the discovery of a fact upon which such Indemnified Party intends to base a request for indemnification hereunder.<br><br>9.3.1 Each Party shall furnish promptly to the other, copies of all papers and official documents received in respect of any Claim or Liability. The Indemnified Party shall cooperate as | **7.0 INSURANCE**<br><br>7.1 Each Party shall, at its own expense. obtain and maintain throughout the term of this agreement and for a period of time thereafter consistent with the shelf life of the Product, (i) product liability insurance providing protection in the amount of at least Ten Million Dollars ($10,000,000) per occurrence and annual aggregate and (ii) commercial general liability insurance providing protection in the amount of at least Five Million Dollars ($5,000,000) per occurrence and Ten Million Dollars ($10,000,000) annual aggregate. Each party shall have the right to provide for such insurance through a program of self-insurance. Upon written request, each party shall provide the other Party with written evidence of the required insurance. The existence of such coverage shall in no way limit Buyer's or Seller's liabilities or obligations hereunder. |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | reasonably requested by the Indemnifying Party in the defense against any Losses.<br><br>9.3.2 With respect to any Claim or Liability relating to all matters as to which the Indemnifying Party shall have acknowledged in writing the obligation to indemnify the Indemnified Party hereunder, the Indemnifying Party shall have the sole right to control the defense of such matter, provided that the Indemnifying Party shall obtain the written consent of the Indemnified Party, prior to ceasing to defend, settling or otherwise disposing of any Losses if as a result thereof (i) the Indemnified Party would become subject to injunctive or other equitable relief or any remedy other than the payment of money by the indemnifying party or (ii) the business of the Indemnified Party would be adversely affected.<br><br>9.3.3 The Indemnified Party shall have the right to participate in the defense of all other matters, provided that the Indemnifying Party shall not be liable for any settlement or other disposition of a Claim or Liability by the Indemnified Party that is reached without the written consent of the Indemnifying Party, which consent shall not be unreasonably withheld.<br><br>…<br><br>9.5 LIMITATION OF LIABILITY. NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR PROSPECTIVE PROFITS, NOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES BASED UPON NEGLIGENCE, BREACH OF WARRANTY, STRICT | |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | LIABILITY IN TORT OR ANY OTHER CAUSE OF ACTION. | |
| Master Supply Agreement, dated January 1, 2008, between Noramco, Inc., and Rhodes Technologies | 9.0 INDEMNIFICATION; DISCLAIMER OF' FURTHER WARRANTIES; LIMITATION ON LIABILITY<br><br>9.1 Indemnification by Seller. Seller will indemnify, defend and hold harmless Buyer, its Associates, and its and their respective employees, agents, officers, and directors from and against any Liability arising from a Third Party Claim caused by Seller's: (a) negligence or willful misconduct, (b) failure of Product to meet the Specifications; or (c) breach of any of its representations, warranties or obligations in this Agreement, except to the extent that such Liability arises out of, or results from, the negligence or misconduct of an Indemnified Party.<br><br>9.2 Indemnification of Buyer. Buyer will indemnify, defend and hold harmless Seller, its Associates, and its and their respective employees, agents, officers, and directors from and against any Liability arising from a Third Party Claim caused by Buyer's: (a) negligence or willful misconduct or (b) manufacture and/or distribution of the API containing the conforming Product and/or final drug product containing the API; or (c) breach of any of its representations, warranties or obligations in this Agreement, except to the extent that such Liability arises out of or results from the negligence or misconduct of an Indemnified Party.<br><br>9.3 Procedures for Indemnification. Each Indemnified Party agrees to give the Indemnifying Party prompt written notice of any Claim or Liability or the discovery of a fact upon which such Indemnified Party intends to base a request for indemnification hereunder. | 7.0 INSURANCE<br><br>7.1 Each Party shall, at its own expense, obtain and maintain throughout the term of this agreement and for a period of time thereafter consistent with the shelf life of the Product, (i) product liability insurance providing protection in the amount of at least Ten Million Dollars ($10,000,000) per occurrence and annual aggregate and (ii) commercial general liability insurance providing protection in the amount of at least Five Million Dollars ($5,000,000) per occurrence and Ten Million Dollars ($10,000,000) annual aggregate. Each party shall have the right to provide for such insurance through a program of self—insurance. Upon written request, each party shall provide the other Party with written evidence of the required insurance. The existence of such coverage shall in no way limit Buyer's or Seller's liabilities or obligations hereunder. |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | 9.3.1 Each Party shall furnish promptly to the other, copies of all papers and official documents received in respect of any Claim or Liability. The Indemnified Party shall cooperate as reasonably requested by the Indemnifying Party in the defense against any Losses.<br><br>9.3.2 With respect to any Claim or Liability relating to all matters as to which the Indemnifying Party shall have acknowledged in writing the obligation to indemnify the Indemnified Party hereunder, the Indemnifying Party shall have the sole right to control the defense of such matter, provided that the Indemnifying Party shall obtain. the written consent of the Indemnified Party, prior to ceasing to defend, settling or otherwise disposing of any Losses if as a result thereof (i) the Indemnified Party would become subject to injunctive or other equitable relief or any remedy other than the payment of money by the indemnifying party or (ii) the business of the Indemnified Party would be adversely affected.<br><br>9.3.3 The Indemnified Party shall have the right to participate in the defense of all other matters, provided that the Indemnifying Party shall not be liable for any settlement or other disposition of a Claim or Liability by the Indemnified Party that is reached without the written consent of the Indemnifying Party, which consent shall not be unreasonably withheld.<br><br>…<br><br>9.5 LIMITATION OF LIABILITY. NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR PROSPECTIVE PROFITS, NOR SPECIAL, INDIRECT, INCIDENTAL OR | |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | CONSEQUENTIAL DAMAGES BASED UPON NEGLIGENCE, BREACH OF WARRANTY, STRICT LIABILITY IN TORT OR ANY OTHER CAUSE OF ACTION. | |
| Supply Agreement, dated July 1, 2010 by and between Noramco, Inc. and Rhodes Pharmaceuticals L.P. | 10. INDEMNIFICATIONS<br><br>10.1 RHODES PHARMA shall indemnify, defend, save and hold Noramco and each of its Affiliates and their respective officers, directors, employees and agents harmless from and against Loss or Losses in connection with any and all suits, investigations, claims or demands by third parties to the extent resulting from, or arising out of (i) any material breach of any warranty hereunder or material non-fulfillment or non-performance by RHODES PHARMA of any agreement, covenant or obligation of RHODES PHARMA under this Agreement, (ii) RHODES PHARMA's negligence or willful misconduct in performing any of its obligations under this Agreement, and/or (iii) any defect in any Product to the extent not resulting from Nonconforming API.<br><br>10.2 Noramco shall indemnify, defend, save and hold RHODES PHARMA and their respective, Officers, directors, employees and agents harmless from and against Loss or Losses in connection with any and all suits, investigations, claims or demands by third parties to the extent resulting from, or arising out of (i) any material breach of any warranty hereunder or material non-fulfillment or non-performance by Noramco of any agreement, covenant or obligation of Noramco under this Agreement, (ii) Noramco's negligence or willful misconduct in performing any of its obligations under this Agreement, and/or (iii) any Nonconforming API. | None |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | 10.3 Upon the occurrence of an event that requires indemnification under this Agreement, the indemnified Party shall give prompt written notice to the indemnifying Party providing reasonable details of the nature of the event and basis of the indemnity claim. The indemnifying Party will then have the right, at its expense and with counsel of its choice, to defend, contest, or otherwise protect against any Action. The indemnified Party will also have the right, but not the obligation, to participate, at its own expense, in the defense thereof with counsel of its choice. The indemnified Party shall cooperate to the extent reasonably necessary to assist the indemnifying Party in defending, contesting or otherwise protesting against any Action, provided that the reasonable cost in doing so is paid for by the indemnifying Party. If the indemnifying Party fails within thirty (30) days after receipt of notice (i) to notify the indemnified Party of its intent to defend, or (ii) to defend, contest or otherwise protect against any Action or fails to diligently continue to provide the defense after undertaking to do so, the indemnified Party will have the right upon ten (10) days prior written notice to the indemnifying Party to defend, settle and satisfy any Action and recover the costs of the same from the indemnifying Party. No Action may be settled other than by the Party defending the same, and then only with the consent of the other Party, which shall not be unreasonably withheld; provided, however, that the indemnified Party shall have no obligation to consent to any settlement of any Action that imposes on the indemnified Party any liability or obligation that cannot be assumed and performed by the indemnifying Party and is assumed. | |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | 10.4 Except in the event of and to the extent of claims by and Losses awarded to a third party in connection with the indemnification provisions provided for in Articles 10.1 and 10.2 and except for a Party's negligence, willful misconduct or fraudulent act or omission, no Party may be liable to the other Party for special, indirect, incidental or consequential damages (including, but not limited to loss of profits or loss of opportunity) whether in contract, warranty, negligence, tort, strict liability or otherwise. | |
| Master Supply Agreement, dated January 29, 2013, by and between Noramco, Inc., and Rhodes Technologies | 9. INDEMNIFICATION; DISCLAIMER OF FURTHER WARRANTIES; LIMITATION ON LIABILITY<br><br>9.1    Indemnification by Seller. Seller will indemnify, defend and hold harmless Buyer, its Associates, and its and their respective employees, agents, officers and directors from and against any Liability arising from a Third Party Claim caused by Seller's: (a) negligence or willful misconduct, (b) failure of Product to meet the Specifications; or (c) breach of any of its representations, warranties or obligations in this Agreement, except to the extent that such Liability arises out of, or results from, the negligence or misconduct of an Indemnified Party.<br><br>9.2    Indemnification by Buyer. Buyer will indemnify, defend and hold harmless Seller, its Associates, and its and their respective employees, agents, officers, and directors from and against any Liability arising from a Third Party Claim caused by Buyer's: (a) negligence or willful misconduct; (b) manufacture and/or distribution of the API containing the Product and/or final drug product containing the API; or (c) breach of any of its representations, warranties or obligations in this Agreement, | 7.    INSURANCE.<br><br>Seller will, at Seller's sole cost and expense, procure and maintain during the term of this Agreement and for a period of two (2) years following the termination or expiration of this Agreement the following minimum insurance coverage, written by insurance companies authorized to do business in the applicable jurisdiction(s) with a minimum financial rating of at least an "A-" or higher by the latest edition of A.M. Best or its equivalent, the policies for which will be primary and non-contributory:<br><br>a.    Commercial General Liability Insurance in amounts not less than $1,000,000 per occurrence and $1,000,000 annual aggregate.<br><br>b. Employers Liability and Workers' Compensation Insurance: i.    Employers Liability: in amounts not |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
|  | except to the extent that such Liability arises out of or results from the negligence or misconduct of an Indemnified Party.<br><br>9.3    Procedures for Indemnification. Each Indemnified Party agrees to give the Indemnifying Party prompt written notice of any Claim or Liability or the discovery of a fact upon which such Indemnified Party intends to base a request for indemnification hereunder.<br><br>9.3.1 Each Party shall furnish promptly to the other copies of all papers and official documents received in respect of any Claim or Liability. The Indemnified Party shall cooperate as reasonably requested by the Indemnifying Party in the defense against any Losses.<br><br>9.3.2 With respect to any Claim or Liability relating to all matters as to which the Indemnifying Party shall have acknowledged in writing the obligation to indemnify the Indemnified Party hereunder, the Indemnifying Party shall have the sole right to control the defense of such matter, provided that the Indemnifying Party shall obtain the written consent of the Indemnified Party, prior to ceasing to defend, settling or otherwise disposing of any claim if as a result thereof (i) the Indemnified Party would become subject to injunctive or other equitable relief or any remedy other than the payment of money by the indemnifying party, or (ii) the business of the Indemnified Party would be adversely affected. 9.3.3 The Indemnified Party shall have the right to participate in the defense of all other matters, provided that the Indemnifying Party shall not be liable for any settlement or other disposition of a Claim or Liability by the Indemnified Party that is reached without the written consent of the | less than $100.000 per worker, $1,000,000 per occurrence and $1,000,000 annual aggregate. ii.    Workers' Compensation: coverage as mandated by applicable Spanish laws.<br><br>c.    Excess Liability Insurance in amounts not less than $1,000,000 per occurrence and $1,000,000 annual aggregate.<br><br>d.    Products Liability Insurance in amounts not less than $5,000,000 per occurrence and $5,000,000 annual aggregate.<br><br>Buyer reserves the right to ask for additional insurance coverage for specific Services in the applicable SOW.<br><br>Any insurance policies which are written on a "claims-made" basis shall be kept in force for not less than two years following termination or expiration of the Agreement. Evidence of successive policy periods shall be made by the annual issuance of a certificate of insurance to the Company. Alternatively, a copy of an "extended reporting period" endorsement, expiring no less than two years following completion of the work covered by this Agreement, shall be provided to the Buyer. |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Indemnifying Party, which consent shall not be unreasonably withheld. | Before the commencement of the Services hereunder, Seller agrees to submit to Buyer a certificate of insurance. Buyer shall be provided with certified endorsements evidencing existence of the requirements contained above including an "extended reporting period" endorsement and primary and non-contributory endorsement. The certificate of insurance must be signed by a duly authorized officer or agent of the insurer. In addition, Seller will provide the Buyer with written notice at least thirty (30) days prior to cancellation, non-renewal or material change in such insurance. The standard certificate of insurance cancellation language shall be modified to comply with this requirement. |
| U.S. Co-promotion Agreement, dated September 18, 1997 (as amended, restated, amended and restated or otherwise modified from time to time), between Ortho-McNeil Pharmaceuticals, Inc. and Purdue Pharma L.P. | 6.1 Product Liability Claims. All product liability aspects of Licensed Products, including litigation or threatened litigation, will be subject to the following provisos:<br><br>(i)    Except where PURDUE is named as the sole defendant in such litigation, ORTHO will manage and direct the handling of any product liability claims or litigation regarding Licensed Product(s) in the same manner as it manages its own products. In such event, PURDUE shall nevertheless be entitled, at its own expense, to retain counsel to represent it in such litigation;<br><br>(ii)    Outside legal fees, disbursements, settlement costs and final judgment awards based on injury, suffering death or any other liability caused by the failure of the Party responsible for the manufacture of the Licensed Product(s) ("the Manufacturing | None |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Party") to meet Licensed Product specifications or if the Licensed Product is otherwise defective in manufacture or as a result of storage, handling or distribution while under the control of the Manufacturing Party will be assessed 100% against the Manufacturing Party and the Manufacturing Party will promptly reimburse the other Party any moneys paid by the other Party on such accounts. In the event each Party is performing steps in the manufacturing process as provided for in Paragraph 5.2 hereof, and a Licensed Product so manufactured is the subject of such claim, such fees, disbursements, costs and awards shall be allocated between the Parties in proportion to their responsibility for any judgment. In the event of a settlement or judgment for the defendants, the Parties shall attempt in good faith to allocate such costs, and if they fail to do so, the matter shall be determined under Article XIV hereof; <br><br> (iii)    ORTHO and PURDUE agree that to the extent that any liability of ORTHO or PURDUE shall arise from the acts or omissions of agents, servants or employees of ORTHO or PURDUE, which are: (1) intentional misconduct or negligent acts or omissions; or (2) acts or omissions which are outside of the scope of the permissible conduct of such agents, servants or employees as required in view of the FDA approval of Licensed Product, including but not limited to, making claims for the Licensed Product beyond the approved labeling, failing to provide the approved package insert as may be required with Licensed Product, recommending use in non-indicated patients; then the employer of such agent, servant or employee who committed such act or omission shall indemnify and hold harmless the other party to this Agreement against any and all | |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | liability, including reasonable attorney's fees, arising from such act or omission, | |
| | (iv)      ORTHO and PURDUE agree that to the extent that it can clearly be established that any liability of ORTHO or PURDUE shall arise from any decision of the Marketing and Sales Committee with which PURDUE has specifically disagreed in writing; then ORTHO shall indemnify and hold PURDUE harmless against any and all liability, including reasonable attorney's fees, arising from such decision, and, | |
| | (v) ORTHO and PURDUE agree to the extent that any liability of ORTHO or PURDUE shall arise from the failure of the other party's agents, servants or employees to perform any act required under the License Agreement, then the employer of such agents, servants or employees shall indemnify and hold harmless the other party to this Agreement against any and all liability, including reasonable attorney's fees, arising from such act or omission. | |
| | 6.2 Fees and Costs. The outside legal fees, costs, disbursements, settlement costs, judgment awards and expenses associated with defense of any claim, against ORTHO or PURDUE by Third Parties arising from the use of or exposure to Licensed Products, excluding internal cost of ORTHO and PURDUE except as provided in Paragraph 7.1 (ii, iii, iv or v), will be assessed against ORTHO and PURDUE according to the percentage split used to determine the Net Product Contribution in the United States for each Party, as calculated pursuant to Exhibit B as of the date the assessment is finalized. | |
| | 6.3 Assessments. Assessments under this Article VI as a result of Product Liability claims (except under Paragraph 6.1 (ii, iii, | |

| Johnson & Johnson | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
|  | iv or v)) against ORTHO and/or PURDUE will be deducted from Net Product Contribution. |  |
| Agreement, dated December 21, 2012 (as amended, restated, amended and restated or otherwise modified from time to time), between Noramco, Inc., and Purdue Pharma L.P. | 7.07 Indemnification by Noramco. Noramco shall defend, indemnify, and hold harmless Purdue and each of the Purdue Parties (each, a "Purdue Indemnified Party") from and against any Third Party's Losses resulting, in whole or in part, directly or indirectly, from the manufacture, use, offer for sale, sale, import and distribution of Noramco Product by the Noramco Parties, except to the extent such Third Party's Losses are the result of Purdue's breach of this Agreement or is caused by the intentional misconduct or gross negligence of a Purdue Indemnified Party.<br><br>7.08 Indemnification by Purdue. Purdue shall defend, indemnify, and hold harmless Noramco and each of the Noramco Parties (each a "Noramco Indemnified Party") from and against any Third Party's Losses resulting, in whole or in part, directly or indirectly, from the manufacture, use, offer for sale, sale, import and distribution of Purdue Low ABUK Products by the Purdue Parties, except to the extent such Third Party's Losses are the result of Noramco's breach of this Agreement or is caused by the intentional misconduct or gross negligence of a Noramco Indemnified Party.<br><br>7.09 Indemnification Procedure. If an indemnified party intends to claim indemnification under this Article 7, such party shall promptly notify the indemnifying Party, of any Loss or Action in respect of which the indemnified party intends to claim such indemnification, and the indemnifying Party shall assume the sole defense thereof with counsel selected by the indemnifying Party; provided however, that an indemnified party shall have the right to retain its own counsel, with the fees and expenses to | None |

| Johnson & Johnson | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | be paid by the indemnified party. The failure or delay to deliver notice to the indemnifying Party within a reasonable time after the commencement of any such Action, if irreparably prejudicial to the indemnifying Party's ability to defend such Action, shall only relieve the indemnifying Party of any liability or duty to the indemnified party under this Article 7 to the extent it is directly attributable in its entirety to such failure or delay, but the omission to deliver notice to the indemnifying Party will not relieve the indemnifying Party of any liability or duty that the indemnifying Party may have to any indemnified party otherwise. The indemnified party shall cooperate fully with the indemnifying Party and their legal representatives in the investigation of any Losses, covered by this indemnification, and shall mitigate such Losses. | |

| KVK –Tech Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Authorized Distributor Agreement between McKesson Corporation and Purdue Pharma L.P. dated July 1, 2012, as amended ("ADA") | § 35.    INDEMNIFICATION/LIMITATION OF LIABILITY.<br><br>a.    By Purdue. Purdue will defend, indemnify, and hold harmless Wholesaler and its Affiliates, directors, officers, shareholders and employees ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") | § 39.    INSURANCE.<br><br>a. Wholesaler Insurance<br><br>i. Wholesaler will, at Wholesaler's sole cost and expense, procure and maintain during the term of this ADA and for a period of two (2) |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | brought by third parties caused by or arising from any (i) negligent acts or omissions or willful misconduct of Purdue or Purdue Indemnitees, (ii) failure of Purdue to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this ADA (iv) claims of patent, trademark, copyright or other infringement related to Products, or (v) use or consumption of Product(s); provided, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission or willful misconduct of Wholesaler or Wholesaler Indemnitees. "Affiliate" as used in this Section 35(a) shall mean the same as Associated Companies, albeit with reference to Wholesaler Associated Companies, provided, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission or willful misconduct of Wholesaler or Wholesaler Indemnitees.<br><br>(§ 35(a).)<br><br>By Wholesaler. Wholesaler will defend, indemnify and hold harmless Purdue and its Associated Companies, shareholders, directors, officers, and employees ("Purdue Indemnitees") from and against all Claims brought by third parties against Purdue or Purdue Indemnitees caused by or arising from any (i) negligent acts or omission or willful misconduct of Wholesaler or Wholesaler Indemnitees, (ii) failure of Wholesaler to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by Wholesaler in this ADA, (iv) negligent act or omission or willful misconduct by Wholesaler in its storage, shipping, handling or distribution of Products or (v) making by Wholesaler of representations or warranties with respect to Products to the extent not authorized by Purdue; provided, | years following the termination or expiration of this ADA the following minimum insurance coverage, written by insurance companies authorized to do business in the applicable jurisdiction(s) with a minimum financial rating of at least an "A-" VII or higher by the latest edition of A.M. Best or its equivalent the policies for which will be primary as a result of Wholesaler's sole negligence:<br><br>a. Commercial General Liability including liability coverages for Premises Operations, Blanket Contractual, Personal Injury and Advertising Injury and Products/Completed Operations in amounts not less than $5,000,000 per occurrence and $10,000,000 annual aggregate; and<br><br>b. Employers Liability and Workers' Compensation Insurance:<br><br>i. Employers Liability: in amounts not less than $1,000,000 per occurrence and $1,000,000 annual aggregate; and<br><br>ii. Workers' Compensation: coverage as mandated by applicable state statutes.<br><br>c. Automobile Liability in amounts not less than $2,000,000 per occurrence and |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
|  | however, that Wholesaler will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission or willful misconduct of Purdue or Purdue Indemnitees.<br><br>(§ 35(b).)<br><br>Procedures. The obligations and liabilities of the Parties with respect to Claims subject to indemnification under this ADA ("Indemnified Claims") will be subject to the following terms and conditions:<br><br>i.    The Party claiming a right to indemnification hereunder ("Indemnified Person") will give prompt written notice to the indemnifying Party ("Indemnifying Person') of any Indemnified Claim, stating its nature, basis and amount, to the extent known. Each such notice will be accompanied by copies of all relevant documentation, including any summons, complaint or other pleading that may have been served or any written demand or other document.<br><br>ii.    With respect to any Indemnified Claim: (A) the Indemnifying Person will defend or settle the Indemnified Claim, subject to provisions of this subsection, (B) the Indemnified Person will, at the Indemnifying Person's sole cost and expense, cooperate in the defense by providing access to witnesses and evidence available to it, (C) the Indemnified Person will have the right to participate in any defense at its own cost and expense to the extent that, in its judgment, the Indemnified Person may otherwise be prejudiced thereby, (D) the Indemnified Person will not settle, offer to settle or admit liability in any Indemnified Claim without the written consent of an officer of the | $2,000,000 annual aggregate covering all owned, hired and non-owned automobile equipment;<br><br>d. Excess Liability Insurance in amounts not less than $10,000,000 per occurrence and $10,000,000 annual aggregate;<br><br>e. Professional Liability Insurance in an amounts not less than $5,000,000 per occurrence and $5,000,000 annual aggregate;<br><br>f.    Commercial property covering Wholesaler's respective property interest in connection with this Agreement including "all risks" coverage for its inventory, fire or water damage, business interruption and extra expense; and<br><br>g. Cargo insurance in sufficient amounts to cover loss of or damage to Product until title of such Products transfers from Wholesaler.<br><br>(§ 39(a)(i).)<br><br>ii. Purdue reserves the right to ask for additional insurance coverage subject to advance written notice to, and agreement by Wholesaler. Any insurance policies which are written on a "claims-made" basis will be kept in force for not less than two (2) years following termination or expiration of the ADA. Evidence of successive policy periods |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Indemnifying Person, and (E) the Indemnifying Person will not settle, offer to settle or admit liability as to any Indemnified Claim in which it controls the defense if such settlement, offer or admission contains any admission of fault or guilt on the part of the Indemnified Person, or would impose any liability or other restriction or encumbrance on the Indemnified Person, without the written consent of an officer of the Indemnified Person.<br><br>iii. Each Party will cooperate with, and comply with all reasonable requests of, each other Party and act in a reasonable and good faith manner to minimize the scope of any Indemnified Claim.<br><br>(§ 35(c).)<br><br>d. Under no circumstances will Purdue be obligated to defend, indemnify, or hold Wholesaler harmless from Claims arising out of Product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue, or from an authorized distributor if instructed in writing by Purdue's Executive Director, National Accounts.<br><br>(§ 35(d).)<br><br>EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.<br><br>(§ 35(e).) | will be made by the annual issuance of a certificate of insurance to Purdue. Alternatively, a copy of an "extended reporting period" endorsement, expiring no less than two (2) years following completion of the work covered by this ADA, will be provided to Purdue.<br><br>(§ 39(a)(ii).)<br><br>iii. Purdue and its Associated Companies and their respective officers, directors, shareholders, employees, authorized agents and permitted assigns are named as additional insureds under General Liability, Products Liability, Automobile Liability, and Excess Liability insurance coverage obtained by Wholesaler.<br><br>(§ 39(a)(iii).)<br><br>iv. Wholesaler waives, and will require all of its insurers to waive, all rights of recovery against Purdue and its Associated Companies and their respective officers, directors, shareholders, employees, authorized agents and assigns, arising from any perils insured against in connection with this ADA, whether in contract, tort (including negligence and strict liability) or otherwise where legally permissible.<br><br>(§ 39(a)(iv).) |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | | v.　　Before the commencement of the services hereunder, Wholesaler agrees to submit to Purdue a certificate of insurance ACORD Form 25-S (1/95), or latest edition. Purdue will be provided with endorsement evidencing existence of the requirements contained above including an "extended reporting period" endorsement. The COI must be signed by a duly authorized officer or agent of the insurer. In addition, Wholesaler will provide Purdue with written notice at least thirty (30) days prior to cancellation of any of the required insurance policies prior to policy expiration, except in the instance of cancellation for non-payment of premium, in such instance, ten (10) days notice will be given to Purdue. The failure to provide certificates of insurance to Purdue upon request will not release Wholesaler in any manner from any liability limited to that which is recoverable by insurance. |
| | | (§ 39(a)(v).) |
| | | b. Purdue Insurance |
| | | i.　　Purdue will, at its sole cost and expense, procure and maintain during the term of this ADA and for a period of two (2) years following the termination or expiration of this ADA the following minimum insurance coverage, written by insurance companies authorized to do business in the |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | | applicable jurisdiction(s) with a minimum financial rating of at least an "A-" VII or higher by the latest edition of A.M. Best or its equivalent:<br><br>a. Commercial General Liability insurance with a per occurrence limit of not less than five million dollars ($5,000,000.00) and ten million dollars ($10,000,000) in the annual aggregate, which may be a combination of general liability and excess liability; and<br><br>b. Products and Completed Operations Liability insurance with a limit of five million dollars ($5,000,000) per occurrence and ten million dollars ($10,000,000) in the annual aggregate;<br><br>c. Statutory Workers' Compensation insurance in the amount and coverage required by statute for all states in which work is to be performed;<br><br>d. Automobile Liability in amounts not less than $2,000,000 per occurrence and $2,000,000 annual aggregate covering all owned, hired and non-owned automobiles;<br><br>e. Employer's Liability insurance with a per occurrence limit of one million dollars ($1,000,000); |

| McKesson Corporation and Related Entities | | |
| --- | --- | --- |
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | | f.    Excess Liability Insurance in amounts not less than $10,000,000 per occurrence and $10,000,000 annual aggregate; <br><br> g.    Cargo insurance in sufficient amounts to cover loss of or damage to Product until title of such Products transfers from Purdue. <br><br>(§ 39(b)(i).) <br><br>ii.    In the event that any of the above described insurance policies are written on a claims made basis, then such policy(ies) will be maintained during the entire period of this ADA and for a period of not less than two (2) years following the termination or expiration of this ADA. <br><br>(§ 39(b)(ii).) <br><br>iii.    Wholesaler and its respective officers, directors,     shareholders,     employees, authorized agents and permitted assigns are named as additional insureds under General Liability, Products Liability, Automobile Liability, and Excess Liability insurance coverage obtained by Wholesaler. <br><br>(§ 39(b)(iii).) <br><br>iv.    Purdue waives, and will require all of its insurers to waive, all rights of recovery against Wholesaler and its respective officers, directors,     shareholders,     employees, |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | | authorized agents and assigns, arising from any perils insured against in connection with this ADA, whether in contract, tort (including negligence and strict liability) or otherwise where legally permissible.<br><br>(§ 39(b)(iv).)<br><br>v.     Before the commencement of the services hereunder, Purdue agrees to submit to Wholesaler a certificate of insurance ACORD Form 25-S (1/95), or latest edition. Purdue will be provided with endorsement evidencing existence of the requirements contained above including an "extended reporting period" endorsement. The COI must be signed by a duly authorized officer or agent of the insurer. In addition, Purdue will provide Wholesaler with written notice at least thirty (30) days prior to cancellation of any of the required insurance policies prior to policy expiration, except in the instance of cancellation for non-payment of premium, in such instance, ten (10) days notice will be given to Wholesaler. The failure to provide certificates of insurance to Wholesaler upon request will not release Purdue from liability limited to that which is recoverable by insurance pursuant to this ADA.<br><br>(§ 39(b)(v).) |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | | c.      Wholesaler or parent corporation use of self-insurance or captive insurance is deemed to satisfy all insurance requirements set forth under this entire Agreement. The obligations set forth in this Section 39 will survive the termination or expiration of this ADA.<br><br>(§ 39(c).) |
| Distribution Performance Agreement between McKesson Corporation and Purdue Pharma L.P. dated July 1, 2012, as amended ("DPA") | § 17 Indemnification / Limitation of Liability<br><br>a. <u>By Purdue</u>. Purdue will defend, indemnify, and hold harmless Wholesaler and its Affiliates, directors, officers, shareholders and employees ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties caused by or arising from any (i) negligent acts or omission or willful misconduct of Purdue or Purdue's Indemnitees, (ii) failure of Purdue to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this DPA (iv) claims of patent, trademark, copyright or other infringement related to Products, or (v) use or consumption of Product(s); <u>provided</u>, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission or willful misconduct of Wholesaler or Wholesaler Indemnitees. "Affiliate" as used in this Section 17(a) shall mean the same as Associated Companies, albeit with reference to Wholesaler Associated Companies.<br><br>(§ 17(a).) | None |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | b. <u>By Wholesaler</u>. Wholesaler will defend, indemnify and hold harmless Purdue and its, directors, officers, and employees ("Purdue Indemnitees") from and against all Claims brought by third parties against Purdue or Purdue Indemnitees caused by or arising from any (i) negligent acts or omission or willful misconduct of Wholesaler or Wholesaler Indemnitees, (ii) failure of Wholesaler to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by Wholesaler in this DPA, (iv) negligent act or omission or willful misconduct by Wholesaler in its storage, shipping, handling or distribution of Products or (v) making by Wholesaler of representations or warranties with respect to Products to the extent not authorized by Purdue; <u>provided</u>, however, that Wholesaler will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission or willful misconduct of Purdue or Purdue Indemnitees.<br><br>(§ 17(b).)<br><br>c. <u>Procedures</u>. The obligations and liabilities of the Parties with respect to Claims subject to indemnification under this DPA ("Indemnified Claims") will be subject to the following terms and conditions:<br><br>    i. The Party claiming a right to indemnification hereunder ("Indemnified Person") will give prompt written notice to the indemnifying Party ("Indemnifying Person") of any Indemnified Claim, stating its nature, basis and amount, to the extent known. Each such notice will be accompanied by copies of all relevant documentation, including any | |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | summons, complaint or other pleading that may have been served or any written demand or other document.<br><br>ii. With respect to any Indemnified Claim: (A) the Indemnifying Person will defend or settle the Indemnified Claim, subject to provisions of this subsection, (B) the Indemnified Person will, at the Indemnifying Person's sole cost and expense, cooperate in the defense by providing access to witnesses and evidence available to it, (C) the Indemnified Person will have the right to participate in any defense at its own cost and expense to the extent that, in its judgment, the Indemnified Person may otherwise be prejudiced thereby, (D) the Indemnified Person will not settle, offer to settle or admit liability in any Indemnified Claim without the written consent of an officer of the Indemnifying Person, and (E) the Indemnifying Person will not settle, offer to settle or admit liability as to any Indemnified Claim in which it controls the defense if such settlement, offer or admission contains any admission of fault or guilt on the part of the Indemnified Person, or would impose any liability or other restriction or encumbrance on the Indemnified Person, without the written consent of an officer of the Indemnified Person.<br><br>iii. Each Party will cooperate with, and comply with all reasonable requests of, each other Party and act in a reasonable and good faith manner to minimize the scope of any Indemnified Claim.<br><br>(§ 17(c).) | |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | d. Under no circumstances will Purdue be obligated to defend, indemnify, or hold Wholesaler harmless from Claims arising out of Product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue or from an authorized distributor if instructed in writing by Purdue's Executive Director, National Accounts.<br><br>(§ 17(d).)<br><br>e. EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.<br><br>(§ 17(e).) | |
| McKesson Supplier Standard Terms & Conditions, as amended, which standard terms and conditions have applied to all contracts by and among McKesson Corporation, Purdue Pharma L.P., and their respective related entities ("STCs") | Schedule L, § 5 Indemnification<br><br>A.    By Supplier. Supplier shall indemnify and hold harmless McKesson and its respective Affiliates and each of their respective directors, officers, employees and agents from and against all Claims relating to Supplier's rights or obligations under the STCs and any other transaction contemplated by or relating to the STCs or any Commercial Agreement, that may directly or indirectly arise out of, relate to, or result from the alleged: (i) negligence or willful or wrongful acts or omissions of Supplier, (ii) breach by Supplier of any of its representations, warranties, or covenants under the STCs or any Commercial Agreement, (iii) failure of Supplier to comply with Applicable Laws, (iv) injury to a person resulting from the purchase, use, consumption or recall of any Product, whether or not involving a defect in a Product, its labeling or packaging, or (v) infringement by the Product or its packaging of the patent, | Schedule L, Insurance Requirements<br><br>1.  Insurance Requirements and Minimum Limits – All of Supplier's insurers must meet the minimum A.M. Best rating of A- VII or better. The limits required under the insurance requirements set forth in this Schedule can be satisfied through any combination of primary and umbrella/excess insurance.<br><br>A.    Products Liability insurance with a minimum limit of $10,000,000 per each occurrence. Coverage shall include bodily injury and property damage, including contractual liability for all products and completed operations and any work |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | copyright, trademark, trade secret or other intellectual property of any other person or entity; except to the extent such Claims described in (i) through (v) arise directly or indirectly as a result of any of the matters for which McKesson is providing indemnification pursuant to Section 5.B.<br><br>B.    By McKesson. McKesson shall indemnify, defend and hold harmless Supplier and its Affiliates and each of their respective directors, officers, employees, and agents from and against all Claims relating to McKesson's rights or obligations under the STCs and any other transactions contemplated by or relating to the STCs or any Commercial Agreement, that may directly or indirectly arise out of, relate to, or result from the alleged: (i) negligence or willful or wrongful acts or omissions of McKesson, (ii) breach by McKesson of any of its representations, warranties or covenants under the STCs, or (iii) failure of McKesson to comply with Applicable Laws; except to the extent such Claims described in (i) through (iii) arise as a result of any of the matters for which Supplier is providing indemnification pursuant to Section 5.A.<br>C.    Procedures. The Party claiming indemnification under this Section 5 (each an "Indemnified Party") shall promptly provide Notice to the Party from which indemnification is being sought (the "Indemnifying Party") in writing, of any Claim for which indemnity may be sought and will thereafter keep such Indemnifying Party reasonably informed with respect thereto, provided that failure to give Indemnifying Party prompt Notice as provided herein shall not relieve the Indemnifying Party of its obligations hereunder except to the extent, if any, it shall have been prejudiced thereby. The Indemnified Party shall fully cooperate with the Indemnifying Party and shall permit the | supplied pursuant to the terms and conditions of a Commercial Agreement. Stand-alone products liability coverage is not required if products liability is covered under the commercial general liability policy and complies with the requirements of this Section.<br><br>B.    <u>Commercial General Liability insurance</u>, including products and completed operations, premises liability, personal and advertising injury and contractual liability. Such policy will have limits of no less than $3,000,000 per occurrence for premises liability, personal and advertising injury and limits of no less than $10,000,000 per occurrence for products liability and completed operations and for work supplied pursuant to the terms and conditions of a Commercial Agreement. If the Supplier maintains a stand-alone products liability policy which complies with these requirements, products and completed operations coverage is not required under this commercial general liability policy.<br>C.    <u>Business Auto Liability insurance</u> with a minimum combined |

| McKesson Corporation and Related Entities | | |
| --- | --- | --- |
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Indemnifying Party to conduct and control the defense and disposition of such Claims, provided however, that the Indemnifying Party shall not admit fault on behalf of the Indemnified Party without Indemnified Party's prior written consent. The Indemnifying Party shall promptly assume, at its cost and expense, the sole defense of such Claim through counsel selected by the Indemnifying Party and reasonably acceptable to the Indemnified Party, provided that in the event that the Indemnifying Party does not assume the defense on a timely basis or reasonably maintain the defense, then, without prejudice to any other rights and remedies available to the Indemnified Party under the STCs or any Commercial Agreement the Indemnified Party may take over such defense with counsel of its choosing at the Indemnifying Party's cost and expense. Notwithstanding that the Indemnified Party takes over such defense with counsel of its own choosing, the Indemnifying Party shall not be precluded from participating in the defense with counsel of its own choosing and at its own cost. If the Indemnifying Party assumes the defense of any Claim as provided in this Section 5, the Indemnified Party shall provide reasonable assistance to the Indemnifying Party in its efforts to investigate and defend the Claim, including providing reasonable access to such documentary evidence and witnesses as are available to the Indemnified Party. In the event that a conflict of interest arises that, under applicable principles of legal ethics prevents a single legal counsel from representing both the Indemnifying Party and the Indemnified Party, the Indemnified Party may take over its defense with counsel of its choosing at the Indemnifying Party's cost and expense. Neither Party shall, without the written consent of the other Party: (i) settle or compromise any Claim without including an | single limit of no less than $1,000,000 for all vehicles that are owned, non-owned, hired, leased or otherwise used in the performance of Supplier's obligations pursuant to the terms and conditions of a Commercial Agreement. <br><br> D.    Umbrella Liability insurance with a minimum limit of $5,000,000 per occurrence, providing coverage in excess of underlying products liability or general liability including products liability coverage, business automobile liability, and employers' liability. <br><br> E.    Crime (employee dishonesty) insurance with a minimum limit of $1,000,000 for loss arising out of or in connection with any fraudulent or dishonest acts committed by the employees or agents of Supplier, acting alone or in collusion with others, including property coverage resulting in the loss of money and securities or other property of McKesson; and, such other insurance as Supplier may reasonably deem necessary to ensure the performance of its obligations pursuant to the terms |

| McKesson Corporation and Related Entities | | |
| --- | --- | --- |
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | unconditional release with respect to all liability under such Claim, or consent to the entry of any judgment which does not include a dismissal with prejudice of the Indemnified Party and Indemnifying Party; (ii) settle or compromise any Claim in any manner that may adversely affect the other Party other than as a result of money damages or other monetary payments; or (iii) settle or compromise any Claim in any manner that includes an admission of fault or liability on the part of the other Party. | and conditions of a Commercial Agreement. <br><br> F.    Workers' Compensation insurance with statutory limits in accordance with applicable laws and Employers' Liability insurance with minimum limits of $1,000,000 bodily injury by accident, $1,000,000 bodily injury by disease – each employee, and $1,000,000 bodily injury by disease – policy limit. <br><br> (Schedule L, 1.) <br><br> 2. Additional Insurance Requirements <br><br> A. Waivers and Endorsements – At no additional cost to McKesson, Supplier shall obtain a waiver of subrogation in favor of McKesson for Supplier's Workers' Compensation policy. Supplier shall cause its insurer(s) to endorse all insurance policies, except Workers' Compensation and Employers Liability, to: (i) name McKesson Corporation, its subsidiaries and affiliates as an additional insured; (ii) give McKesson at least thirty (30) days prior written notice of any cancellation, material change or termination in coverage required |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | | under this Schedule; (iii) include a separation of insured provision, or insured versus insured provision with no cross liability or cross suits exclusions; (iv) state a waiver of the insurer(s)' subrogation rights against McKesson; and (v) state all insurance maintained by Supplier will be primary and non-contributory. |
| | | B.    Certificates of Insurance – Supplier agrees to furnish McKesson with applicable Acord certificates of insurance ("COI") including all insurance requirements herein and executed by an authorized representative. Supplier will provide a renewal COI prior to the expiration date of each required insurance policy by submitting a renewal COI to McKesson at EDMItemVendor@McKesson.com. |
| | | C.    Subcontractors – If Supplier will use a subcontractor(s) to perform its obligations under a Commercial Agreement, then Supplier shall furnish to McKesson prior to subcontractor's service either (i) a Supplier COI evidencing that Supplier's insurance meets all requirements included herein and |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | | covers such subcontractor(s) including naming such subcontractor as an additional insured under Supplier's applicable insurance policy, or (ii) a subcontractor COI evidencing that such subcontractor of Supplier satisfies all insurance terms required of Supplier by McKesson noted herein, including but not limited to, the requirement to name McKesson as an additional insured on all required insurance policies. <br><br> D.   Claims-Made Policies – If any insurance policy is a "claims-made" policy, then such claims-made policy must be kept in force for not less than six (6) years immediately following termination of the Commercial Agreement. Evidence of successive policy periods must be made by the annual issuance of a COI to McKesson. Alternatively, Supplier, and Supplier's subcontractors (if applicable), shall purchase a six (6) year extended reporting ("tail") policy immediately following termination of the Commercial Agreement with prior acts coverage including the same for any claim arising in connection with the Commercial Agreement with a |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | | retroactive date on, or prior to, the earliest Commercial Agreement effective date. Such tail policy or endorsement follows the terms and conditions of the terminated policy. |
| | | (Schedule L, 2.) |
| | | 3.      No Relief from Obligations – Approval or acceptance of any of Supplier's insurance policies by McKesson will not relieve Supplier of any obligations contained in this Schedule or in any other agreement, including any of Supplier's indemnification obligations to McKesson, whether or not McKesson's claims fall under insurance noted above, and/or within, outside or in excess of Supplier's policy limits, and regardless of solvency or insolvency of the insurer(s) that issues such coverage. Insurance or lack thereof will not preclude McKesson from taking any actions that are available to McKesson under any contract or applicable law. The failure to provide COIs or add McKesson as an additional insured in accordance with the insurance requirements set forth in this Schedule will not release Supplier in any manner of any liability arising under any Commercial Agreement. Furthermore, in no way shall Supplier's liability be limited to that which is recoverable by insurance. |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | | (Schedule L, 3.) |
| | | 4.   <u>Survival</u> – The insurance requirements set forth in this Schedule shall survive termination of the Commercial Agreement. Supplier and/or Supplier's subcontractors shall cause all of its successors, assigns and subsequent purchasers to adhere to the insurance requirements set forth in this Schedule and nothing herein shall be deemed to relieve Supplier or Supplier's subcontractors of any liability for its acts, omissions or obligations occurring or accruing up to and including the effective date of such assignment, sale or transfer. |
| | | (Schedule L, 4.) |
| | | 5.   <u>Definitions</u> – Capitalized terms that are not defined herein shall have the meanings ascribed to such terms in other Schedules of the STCs. |
| | | (Schedule L, 5.) |
| Sourcing Framework Agreement between ClarusONE Sourcing Services LLP and Rhodes Pharmaceuticals L.P. dated October 1, 2017, as amended | § 7(B) Indemnification.<br><br>(1) By Supplier. Supplier shall indemnify, defend and hold harmless ClarusONE and each Member, and their respective Affiliates and each of their respective directors, officers, employees and agents from and against all Claims that may directly or indirectly arise out of, relate to, or result from the alleged: (i) negligence or willful or wrongful acts or omissions of Supplier, (ii) breach by Supplier of any of its representations, | § 7(D) Insurance<br><u>Insurance Requirements</u>. Supplier will comply with the insurance requirements set forth in each Member's MPA [*i.e.*, the "the Member Purchase Agreement executed by Supplier and a Member, as may be amended from time to time in accordance with the terms set forth therein |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | warranties or covenants under this Agreement, including any exhibit, schedule or attachment hereto, (iii) failure of Supplier to comply with Applicable Laws, (iv) injury to a person resulting from the purchase, use, consumption or recall of any Product, whether or not involving a defect in a Product, its labeling or packaging, (v) infringement by the Product or its packaging of the patent, copyright, trademark, trade secret or other intellectual property of any other person or entity, or (vi) additional indemnifiable matters set forth in each MPA and any Exhibit attached thereto, except to the extent such Claim arises directly or indirectly as a result of any of the matters for which ClarusONE is providing indemnification pursuant to Section 7.B(2).

(2)      By ClarusONE. ClarusONE shall indemnify, defend and hold harmless Supplier and its Affiliates and its and their directors, officers, employees, and agents from and against all Claims that may directly or indirectly arise out of, relate to, or result from the alleged: (i) negligence or willful or wrongful acts or omissions of ClarusONE, (ii) breach by ClarusONE of any of its representations or warranties under this Agreement including any exhibit, schedule or attachment hereto, or (iii) failure of ClarusONE to comply with Applicable Laws, except to the extent such Claim arises directly or indirectly as a result of any of the matters for which indemnification is being provided pursuant to Section 7.B(1).

(3)      Procedures.

(a)      The Party claiming indemnification under this Section 7.B (each an "Indemnified Party") shall promptly provide Notice to the Party from which indemnification is being sought (the "Indemnifying Party") in writing, of any Claim for which | |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | indemnity may be sought and will thereafter keep such Indemnifying Party reasonably informed with respect thereto, provided that failure to give Indemnifying Party prompt Notice as provided herein shall not relieve the Indemnifying Party of its obligations hereunder except to the extent, if any, it shall have been prejudiced thereby. The Indemnified Party shall fully cooperate with the Indemnifying Party and shall permit the Indemnifying Party to conduct and control the defense and disposition of such Claims, provided however, that the Indemnifying Party shall not admit fault on behalf of the Indemnified Party without Indemnified Party's prior written consent. The Indemnifying Party shall promptly assume, at its cost and expense, the sole defense of such Claim through counsel selected by the Indemnifying Party and reasonably acceptable to the Indemnified Party, provided that in the event that the Indemnifying Party does not assume the defense on a timely basis or reasonably maintain the defense, then, without prejudice to any other rights and remedies available to the Indemnified Party under this Agreement, the Indemnified Party may take over such defense with counsel of its choosing at the Indemnifying Party's cost and expense. If the Indemnifying Party assumes the defense of any Claim as provided in this Section 7.B(3), the Indemnified Party shall provide reasonable assistance to the Indemnifying Party in its efforts to investigate and defend the Claim, including providing reasonable access to such documentary evidence and witnesses as are available to the Indemnified Party. In the event that a conflict of interest arises, which, under applicable principles of legal ethics prevents a single legal counsel from representing both the Indemnifying Party and the Indemnified Party; the Indemnified Party may take | |

| McKesson Corporation and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | over its defense with counsel of its reasonable choosing at the Indemnifying Party's cost and expense.<br><br>(b)      Neither Party shall, without the written consent of the other Party: (i) settle or compromise any Claim without including an unconditional release with respect to all liability under such Claim, or consent to the entry of any judgment that does not include a dismissal with prejudice of the Indemnified Party and Indemnifying Party; (ii) settle or compromise any Claim in any manner that may adversely affect the other Party other than as a result of money damages or other monetary payments; or (iii) settle or compromise any Claim in any manner that includes an admission of fault or liability on the part of the other Party. | |

| Sanis Health Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| Sandoz Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Distribution and Supply Agreement dated January 5, 2014 by and between Purdue Pharma L.P. and Sandoz Inc. | 8.1 Purdue Indemnity. Purdue shall defend, indemnify, and hold harmless Distributor [Sandoz Inc.], its Affiliates, and the respective directors, officers, agents and employees of each of them (collectively, the "Distributor Indemnitees"), from and against any and all losses, liabilities, costs and expenses (including reasonable attorneys' fees and costs) incurred by or rendered against Distributor Indemnitees to the extent resulting | None |

| Sandoz Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | from any claims, demands, actions or other proceedings ("Claims") arising or resulting from or relating to (i) the breach by Purdue of any warranty, representation, covenant or agreement made by Purdue in this Agreement or the Quality Agreement, (ii) the willful intentional misconduct or gross negligence of Purdue or its Affiliates in connection with this Agreement, the Quality Agreement or the Product, (iii) Purdue's or any of Purdue's Affiliates' distribution, marketing, sales activities, sale or use of the Branded Product, (iv) any product liability claim arising from or in connection with the sale or use of the Product supplied by Purdue (including but not limited to, failure to warn claims, design defect claims, product defect claims, or claims under strict liability in tort), or (v) any direct damages incurred by Distributor from any of Distributor's customers as a result of Purdue's failure or inability to timely provide Product as scheduled to be delivered hereunder. Notwithstanding the foregoing, Purdue's aggregate liability resulting from Claims under clause (v) above shall be limited to, and shall not exceed, the amount of $2,000,000 in the aggregate, for Purdue's failure or inability to timely provide Product as scheduled to be delivered hereunder. | |

| Mylan, Inc. | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| None | None | None |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Distribution and Supply Agreement, effective as of December 3, 2004, among and between IVAX Pharmaceuticals, Inc. and Purdue Pharma L.P. | 9.1 Purdue Indemnity, Purdue Will indemnify, defend, save, protect, and hold harmless IVAX. and its Affiliates and their respective directors, officers, employees, and agents ("IVAX Indemnitees'") from and against any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees .and expenses and court costs) (collectively, "Losses") resulting or arising from any Third Party claims, suits, actions, proceedings or litigation ("Third Party Claims") arising from or in connection with:<br><br>(a) any actual or alleged death of or bodily injury to any individual arising out of the use of the Product sold by IVAX in the Territory, including a claim based on failure to warn, design defect, product defect, strict liability in tort, or otherwise;<br><br>(b) any patent infringement or antitrust claim (other than a claim based on .the propriety of authorized generics or a claim arising from this Agreement) arising out of the sale of the Product by IVAX in the Territory, but only to the extent that it is claimed Purdue improperly asserted its patents covering the Products; ·<br><br>(c) Purdue's negligence or Willful misconduct in performing any of its obligations under tins Agreement; or<br><br>(d) .a breach by Purdue of any of its representations, warranties, covenants or agreements under this Agreement;<br><br>provided, however, that in all cases referred to in this Section 9.1, Purdue will not be liable to indemnify IVAX for any Losses of IVAX to the extent that such Losses of IVAX were caused by: (i) the negligence or willful misconduct or wrongdoing of | 6.1.3 Insurance. During the Term and for a period of five years after the termination of this Agreement, each Party, at its sole cost and expense, will use Commercially Reasonable Efforts to obtain and maintain (either through the purchase of a policy :from a third party insurer or through the maintenance of a self-insurance program and subject to availability on commercially reasonable terms) (a) product liability insurance covering the Products with a minimum per occurrence limit of $5 million and a minimum aggregate limit of $5 million per year and (b) commercial general liability insurance, including contractual liability, personal injury .and advertising offense liability coverages, with a minimum per occurrence limit of $5 million and a minimum aggregate limit of $5 million per year. Each Party will provide a certificate of insurance (from the insurance company, if applicable) evidencing such insurance to the other Party upon request. |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | IVAX or (ii) any breach by IVAX of its representations, warranties, covenants or agreements under this Agreement.<br><br>9.2 IVAX Indemnity. IVAX will indemnify, defend, save, protect, and hold harmless Purdue and its Affiliates and their respective directors, officers, employees, and agents (the "Purdue Indemnitees") against any and all Losses resulting or arising from any Third Party Claims arising from or in connection with:<br><br>    (a) IVAX's negligence or willful misconduct in performing any of its obligations under this Agreement; or<br><br>    (b) a breach by IVAX of any of its representations, warranties, covenants or agreements under this Agreement;<br><br>provided, however, that in all cases referred to in this Section 9.2, IVAX will not be liable to indemnify Purdue for any Losses of Purdue to the extent that such Losses of Purdue were caused by: (i) the negligence or willful misconduct or wrongdoing of Purdue or (ii) any breach by Purdue of its representations, warranties, covenants or agreements under this Agreement.<br><br>9.3 Procedure for Indemnification.<br><br>9.3.1 Notice. In the case of a Third Party Claim as to which a Party (the "Indemnifying Party") may be obligated to provide indemnification pursuant to this Agreement, such Party seeking indemnification hereunder ("Indemnitee") will notify the Indemnifying Party in writing of the Third Party Claim (and specifying in reasonable detail the factual basis for the Third Party Claim and to the extent known, the amount of the Third Party Claim) promptly after becoming aware of such Third Party Claim; provided, however, that failure to give such notification will not affect the indemnification provided hereunder except to | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | the extent the Indemnifying Party will have been actually prejudiced as a result of such failure.<br><br>9.3.2 Defense of Claim.<br><br>(a) If a Third Party Claim is made against an Indemnitee, the Indemnifying Party will be entitled to assume the defense of the Indemnitee by providing written notice to Indemnitee of its intention to assume the defense of such Third Party Claim (at the expense of the Indemnifying Party) within 30 days after receipt of written notice from the Indemnitee of such Third Party Claim with counsel selected by the Indemnifying Party and reasonably satisfactory to the Indemnitee for so long as the Indemnifying Party is conducting a good faith and diligent defense.<br><br>(b) Should the Indemnifying Party so elect to assume the defense of the Indemnitee, the Indemnifying Party will not be liable to the Indemnitee for any legal or other expenses subsequently incurred by the Indemnitee in connection with the defense thereof; provided, that if under applicable standards of professional conduct a conflict of interest exists between the Indemnifying Party and the Indemnitee in respect of such claim, such Indemnitee will have the right to employ separate counsel to represent such Indemnitee with respect to the matters as to which a conflict of interest exists, and in that event the reasonable fees and expenses of such separate counsel will be paid by such Indemnifying Party; provided, further, that the Indemnifying Party will only be responsible for the reasonable fees and expenses of one separate counsel for such Indemnitee.<br><br>(c) If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnitee will have the right to participate in | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | such defense and to employ counsel, at its own expense, separate from the counsel employed by the Indemnifying Party. (d) If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnifying Party' will promptly supply to the Indemnitee copies of all correspondence and documents relating to or in connection with such Third .Party Claim and keep the Indemnitee informed of developments relating to or in connection with such Third Party Claim, as may be reasonably requested by the Indemnitee (including providing to the Indemnitee on reasonable request updates and summaries as to the status thereof). (e) If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnitee will, and will cause all IVAX Indemnitees or Purdue Indemnitees, as the case may be, to reasonably cooperate with the Indemnifying Party in the defense thereof (including making documents and records available for review and copying and making persons within its/his/her control available for pertinent testimony). (f) If the Indemnifying Party does not elect to assume the defense of the Indemnitee or does not provide written acknowledgement of the defense of the Indemnitee within the 30-day period set forth in Section 9.3.2(a), or if a good faith and diligent defense is not being or ceases to be conducted by the Indemnifying Party, the Indemnitee will have the right, at the reasonable expense of the Indemnifying Party, after three Business days' notice to the Indemnifying Party of its intent to do so, to undertake the defense of the Indemnitee (at the reasonable expense of the Indemnifying Party) with counsel reasonably selected by the Indemnitee, and to compromise or settle such Third Party Claim, with the Indemnifying Party's reasonable consent (which | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | consent will not be unreasonably withheld, delayed or conditioned). | |
| | 9.3.3 Settlement of Claims. If the Indemnifying Party acknowledges in writing its obligation to indemnify the Indemnitee for a Third Party Claim, the Indemnitee will agree (which agreement will not be unreasonably withheld, delayed or conditioned) to a reasonable settlement, compromise or discharge of such Third Party Claim that the Indemnifying Party may recommend; provided, however, that, without the Indemnitee's prior written consent, the Indemnifying Party will not consent to any settlement, compromise or discharge (including the consent to entry of any judgment), and the Indemnitee may refuse to agree to any such settlement, compromise or discharge, that :Provides for injunctive or other nonmonetary relief affecting the Indemnitee. If the Indemnifying Party acknowledges in writing its obligation to indemnify the Indemnitee for .a Third Party Claim, the Indemnitee will not (unless required by law) admit any liability with respect to, or settle, compromise or discharge ("Indemnitee Settlement"), such Third Party Claim without the Indemnifying Party's prior written consent (which consent will not be unreasonably withheld, delayed or conditioned) and .if such consent is not received, then the Indemnifying Party will have no obligation or liability under this Article IX for any Indemnitee Settlement.<br><br>9.4 Limitations on Liability<br><br>9.4.1 Nothing in this Article .IX will act to negate any obligation under common law of either Party to mitigate damages with | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | respect to any Third Party Claim for which such Party is seeking indemnification from the other Party hereunder.<br><br>9.4.2 EXCEPT FOR THE PARTIES' INDEMNIFICATION OBLIGATIONS UNDER SECTIONS 9.1 AND 9.2, UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES, COSTS OR EXPENSES (INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, LOST REVENUES AND/OR LOST SAVINGS), ARISING UNDER THIS AGREEMENT OR CONCERNING ANY PRODUCTS, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, COSTS OR EXPENSES. | |
| Distribution and Supply Agreement, effective as of March 14, 2005, among and between IVAX Pharmaceuticals, Inc. and Purdue Pharma L.P. | 9.1 Purdue Indemnity, Purdue Will indemnify, defend, save, protect, and hold harmless IVAX. and its Affiliates and their respective directors, officers, employees, and agents ("IVAX Indemnitees") from and against any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees .and expenses and court costs) (collectively, "Losses") resulting or arising from any Third Party claims, suits, actions, proceedings or litigation ("Third Party Claims") arising from or in connection with:<br><br>(a) any actual or alleged death of or bodily injury to any individual arising out of the use of the Product sold by IVAX in the Territory, including a claim based on failure to warn, design defect, product defect, strict liability in tort, or otherwise;<br><br>(b) any patent infringement or antitrust claim (other than a claim based on .the propriety of authorized generics or a | 6.1.3 Insurance. During the Term and for a period of five years after the termination of this Agreement, each Party, at its sole cost and expense, will use Commercially Reasonable Efforts to obtain and maintain (either through the purchase of a policy :from a third party insurer or through the maintenance of a self-insurance program and subject to availability on commercially reasonable terms) (a) product liability insurance covering the Products with a minimum per occurrence limit of $5 million and a minimum aggregate limit of $5 million per year and (b) commercial general liability insurance, including contractual liability, personal injury .and advertising offense liability coverages, with a minimum per |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | claim arising from this Agreement) arising out of the sale of the Product by IVAX in the Territory, but only to the extent that it is claimed Purdue improperly asserted its patents covering the Products; ·<br><br>(c) Purdue's negligence or Willful misconduct in performing any of its obligations under tins Agreement; or<br><br>(d) .a breach by Purdue of any of its representations, warranties, covenants or agreements under this Agreement;<br><br>provided, however, that in all cases referred to in this Section 9.1, Purdue will not be liable to indemnify IVAX for any Losses of IVAX to the extent that such Losses of IVAX were caused by: (i) the negligence or willful misconduct or wrongdoing of IVAX or (ii) any breach by IVAX of its representations, warranties, covenants or agreements under this Agreement.<br><br>9.2 IVAX Indemnity. IVAX will indemnify, defend, save, protect, and hold harmless Purdue and its Affiliates and their respective directors, officers, employees, and agents (the "Purdue Indemnitees") against any and all Losses resulting or arising from any Third Party Claims arising from or in connection with:<br><br>(a) IVAX's negligence or willful misconduct in performing any of its obligations under this Agreement; or<br><br>(b) a breach by IVAX of any of its representations, warranties, covenants or agreements under this Agreement;<br><br>provided, however, that in all cases referred to in this Section 9.2, IVAX will not be liable to indemnify Purdue for any Losses of Purdue to the extent that such Losses of Purdue were caused by: (i) the negligence or willful misconduct or wrongdoing of | occurrence limit of $5 million and a minimum aggregate limit of $5 million per year. Each Party will provide a certificate of insurance (from the insurance company, if applicable) evidencing such insurance to the other Party upon request. |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | Purdue or (ii) any breach by Purdue of its representations, warranties, covenants or agreements under this Agreement.<br><br>9.3 Procedure for Indemnification.<br><br>9.3.1 Notice. In the case of a Third Party Claim as to which a Party (the "Indemnifying Party") may be obligated to provide indemnification pursuant to this Agreement, such Party seeking indemnification hereunder ("Indemnitee") will notify the Indemnifying Party in writing of the Third Party Claim (and specifying in reasonable detail the factual basis for the Third Party Claim and to the extent known, the amount of the Third Party Claim) promptly after becoming aware of such Third Party Claim; provided, however, that failure to give such notification will not affect the indemnification provided hereunder except to the extent the Indemnifying Party will have been actually prejudiced as a result of such failure.<br><br>9.3.2 Defense of Claim.<br><br>(a) If a Third Party Claim is made against an Indemnitee, the Indemnifying Party will be entitled to assume the defense of the Indemnitee by providing written notice to Indemnitee of its intention to assume the defense of such Third Party Claim (at the expense of the Indemnifying Party) within 30 days after receipt of written notice from the Indemnitee of such Third Party Claim with counsel selected by the Indemnifying Party and reasonably satisfactory to the Indemnitee for so long as the Indemnifying Party is conducting a good faith and diligent defense.<br><br>(b) Should the Indemnifying Party so elect to assume the defense of the Indemnitee, the Indemnifying Party will not be liable to the Indemnitee for any legal or other expenses subsequently incurred by the Indemnitee in connection with the defense | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | thereof; provided, that if under applicable standards of professional conduct a conflict of interest exists between the Indemnifying Party and the Indemnitee in respect of such claim, such Indemnitee will have the right to employ separate counsel to represent such Indemnitee with respect to the matters as to which a conflict of interest exists, and in that event the reasonable fees and expenses of such separate counsel will be paid by such Indemnifying Party; provided, further, that the Indemnifying Party will only be responsible for the reasonable fees and expenses of one separate counsel for such Indemnitee.<br><br>(c) If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnitee will have the right to participate in such defense and to employ counsel, at its own expense, separate from the counsel employed by the Indemnifying Party.<br><br>(d) If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnifying Party' will promptly supply to the Indemnitee copies of all correspondence and documents relating to or in connection with such Third .Party Claim and keep the Indemnitee informed of developments relating to or in connection with such Third Party Claim, as may be reasonably requested by the Indemnitee (including providing to the Indemnitee on reasonable request updates and summaries as to the status thereof).<br><br>(e) If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnitee will, and will cause all IVAX Indemnitees or Purdue Indemnitees, as the case may be, to reasonably cooperate with the Indemnifying Party in the defense thereof (including making documents and records available for | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | review and copying and making persons within its/his/her control available for pertinent testimony). | |

(f) If the Indemnifying Party does not elect to assume the defense of the Indemnitee or does not provide written acknowledgement of the defense of the Indemnitee within the 30-day period set forth in Section 9.3.2(a), or if a good faith and diligent defense is not being or ceases to be conducted by the Indemnifying Party, the Indemnitee will have the right, at the reasonable expense of the Indemnifying Party, after three Business days' notice to the Indemnifying Party of its intent to do so, to undertake the defense of the Indemnitee (at the reasonable expense of the Indemnifying Party) with counsel reasonably selected by the Indemnitee, and to compromise or settle such Third Party Claim, with the Indemnifying Party's reasonable consent (which consent will not be unreasonably withheld, delayed or conditioned).

9.3.3 Settlement of Claims. If the Indemnifying Party acknowledges in writing its obligation to indemnify the Indemnitee for a Third Party Claim, the Indemnitee will agree (which agreement will not be unreasonably withheld, delayed or conditioned) to a reasonable settlement, compromise or discharge of such Third Party Claim that the Indemnifying Party may recommend; provided, however, that, without the Indemnitee's prior written consent, the Indemnifying Party will not consent to any settlement, compromise or discharge (including the consent to entry of any judgment), and the Indemnitee may refuse to agree to any such settlement, compromise or discharge, that :Provides for injunctive or other nonmonetary relief affecting the Indemnitee. If the Indemnifying Party acknowledges in writing its obligation to

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | indemnify the Indemnitee for .a Third Party Claim, the Indemnitee will not (unless required by law) admit any liability with respect to, or settle, compromise or discharge ("Indemnitee Settlement"), such Third Party Claim without the Indemnifying Party's prior written consent (which consent will not be unreasonably withheld, delayed or conditioned) and .if such consent is not received, then the Indemnifying Party will have no obligation or liability under this Article IX for any Indemnitee Settlement.<br><br>9.4 Limitations on Liability<br><br>9.4.1 Nothing in this Article .IX will act to negate any obligation under common law of either Party to mitigate damages with respect to any Third Party Claim for which such Party is seeking indemnification from the other Party hereunder.<br><br>9.4.2 EXCEPT FOR THE PARTIES' INDEMNIFICATION OBLIGATIONS UNDER SECTIONS 9.1 AND 9.2, UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES, COSTS OR EXPENSES (INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, LOST REVENUES AND/OR LOST SAVINGS), ARISING UNDER THIS AGREEMENT OR CONCERNING ANY PRODUCTS, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, COSTS OR EXPENSES. | |
| Patent License Agreement, dated as of October 16, 2006, among and between Teva Pharmaceuticals | 8. Indemnification. Teva shall defend, indemnify and hold harmless the Purdue Companies, their Affiliates and the respective owners, directors, officers, agents and employees of each (together, the "Purdue Parties"), from and against any and all expenses, demands, liabilities, damages or money judgments | None |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| USA, Inc. and Purdue Pharma L.P., The Purdue Frederick Company Inc. d/b/a The Purdue Frederick Company, Euro-Celtique S.A., and The P.F. Laboratories, Inc. | incurred by or rendered against the Purdue Parties resulting from any claim, action or proceeding by any Third Party arising out of the making, having made, use, offer for sale, sale or importation of the Licensed Product or any products previously made, used or sold under the Teva ANDAs. The Purdue Companies shall defend, indemnify and hold harmless Teva, its Affiliates, and the respective directors, officers, agents and employees of each (together, the "Teva Parties") from and against any and all expenses, demands, liabilities, damages, or money judgments incurred by or rendered against the Teva Parties resulting from any claim, action or proceeding by any Third Party arising out of the making, having made, use, offer for sale, sale or importation of the Purdue Product. The provisions of this paragraph 8 shall survive the termination of this Patent License Agreement. The provisions of this paragraph 8 shall not apply to any claims made by either Party or by Third Parties under Federal or state antitrust, unfair competition, consumer protection or securities laws. | |
| Distribution Performance Agreement, effective as of July 1, 2012, among and between Anda, Inc. and Purdue Pharma L.P.<br><br>• First Amendment to Distributor Performance Agreement, effective as of June 30, 2015 | 17.    INDEMNIFICATION/LIMITATION OF LIABILITY.<br><br>a. By Purdue. Purdue will defend, indemnify, and hold harmless Wholesaler and its, directors, officers, and employees ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ("Claims") brought by third parties caused by or arising from any (i) negligent acts or omission of Purdue, (ii) failure of Purdue to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this DPA (iv) claims of patent, trademark, copyright or other infringement related to Products, or (v) an act or omission by Purdue in its direct storage, handling, use, | None |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| • Second Amendment to Distributor Performance Agreement, effective as of June 30, 2018 | demonstration, consumption, ingestion, digestion, manufacture, production and assembly of Products and their transportation to Wholesaler; provided, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Wholesaler or Wholesaler Indemnitees.<br><br>b.    By Wholesaler. Wholesaler will defend, indemnify and hold harmless Purdue and its Associated Companies, shareholders, directors, officers, employees and representatives ("Purdue Indemnitees") from and against all Claims brought by third parties against Purdue or Purdue Indemnitees caused by or arising from any (i) negligent acts or omission of Wholesaler or Wholesaler Indemnitees, (ii) failure of Wholesaler to perform its obligations or to comply with applicable laws, rules and regulations, (iii) breach of any warranty made by Wholesaler in this DPA, (iv) act or omission by Wholesaler in its storage, shipping, handling or distribution of Products or (v) making by Wholesaler of representations or warranties with respect to Products to the extent not authorized by Purdue; provided, however, that Wholesaler will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Purdue or Purdue Indemnitees.<br><br> . . .<br><br>d. Under no circumstances will Purdue be obligated to defend, indemnify, or hold Wholesaler harmless from claims arising out of product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue. | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | e. EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES. | |
| Authorized Distributor Agreement, effective as of July 1, 2012, among and between Anda, Inc. and Purdue Pharma L.P.<br>• First Amendment to Authorized Distributor Agreement, effective as of April 15, 2016<br>• Second Amendment to Authorized Distributor Agreement, effective as of June 30, 2017 | 35 INDEMNIFICATION/LIMITATION OF LIABILITY.<br><br>By Purdue. Purdue will defend, indemnify, and hold harmless Wholesaler and its directors, officers, and employees ("Wholesaler Indemnitees") from and against any claims, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees ('Claims") brought by third parties caused by or arising from any (i) negligent acts or omission of Purdue, (ii) failure of Purdue to comply with applicable laws, regulations, rules and ordinances (iii) breach of any warranty made by Purdue in this ADA (iv) claims of patent, trademark, copyright or other infringement related to Products, or (v) an act or omission by Purdue in its direct storage, handling, use, demonstration, consumption, ingestion, digestion, manufacture, production and assembly of Products and their transportation to Wholesaler; provided, however, Purdue will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Wholesaler or Wholesaler Indemnitees.<br><br>b. By Wholesaler. Wholesaler will defend, indemnify and hold harmless Purdue and its Associated Companies, shareholders, directors, officers, employees and representatives ("Purdue Indemnitees") from and against all Claims brought by third parties against Purdue or Purdue Indemnitees caused by or arising from any (i) negligent acts or omission of Wholesaler or Wholesaler Indemnitees, (ii) failure of Wholesaler to perform its obligations or to comply with applicable laws, rules and | 39 INSURANCE<br><br>a. Wholesaler will, at Wholesaler's sole cost and expense, procure and maintain during the term of this ADA and for a period of two (2) years following the termination or expiration of this ADA the following minimum insurance coverage, written by insurance companies authorized to do business in the applicable jurisdiction(s) with a minimum financial rating of at least an 'A-" or higher by the latest edition of A.M. Best or its equivalent, the policies for which will be primary and noncontributory:<br><br>i.  Commercial General Liability including liability coverages for Premises Operations, Blanket Contractual, Personal Injury and Advertising Injury and Products/Completed Operations in amounts not less than $2,000,000 per occurrence and $5,000,000 annual aggregate; and<br><br>ii.  Employers Liability and Workers' Compensation Insurance:  A. Employers Liability: in amounts not less than $500,000 per occurrence and $500,000 annual aggregate;  and  B. |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | regulations, (iii) breach of any warranty made by Wholesaler in this ADA, (iv) act or omission by Wholesaler in its storage, shipping, handling or distribution of Products or (v) making by Wholesaler of representations or warranties with respect to Products to the extent not authorized by Purdue; provided, however, that Wholesaler will have no obligations under this Section for any Claims to the extent caused by any negligent act or omission of Purdue or Purdue Indemnitees.<br><br>c. Procedures. The obligations and liabilities of the Parties with respect to Claims subject to indemnification under this ADA ("Indemnified Claims") will be subject to the following terms and conditions:<br><br>i.      The Party claiming a right to indemnification hereunder ("Indemnified Person") will give prompt written notice to the indemnifying Party ("Indemnifying Person") of any Indemnified Claim, stating its nature, basis and amount, to the extent known. Each such notice will be accompanied by copies of all relevant documentation, including any summons, complaint or other pleading that may have been served or any written demand or other document.<br><br>ii.      With respect to any Indemnified Claim: (A) the Indemnifying Person will defend or settle the Indemnified Claim, subject to provisions of this subsection, (B) the Indemnified Person will, at the Indemnifying Person's sole cost and expense, cooperate in the defense by providing access to witnesses and evidence available to it, (C) the Indemnified Person will have the right to participate in any defense at its own cost and expense to the extent that, in its judgment, the Indemnified Person may otherwise be prejudiced thereby, (D) the Indemnified Person will not settle, offer to settle or admit | Workers' Compensation: coverage as mandated by applicable state statutes.<br><br>iii.   Automobile Liability in amounts not less than $1,000,000 per occurrence and $1,000,000 annual aggregate covering all owned, hired and non-owned automobile equipment; and<br><br>iv.   Excess Liability Insurance in amounts not less than $1,000,000 per occurrence and $1,000,000 annual aggregate; and<br><br>v.    Professional Liability Insurance in an amounts not less than $2,000,000 per occurrence and $2,000,000 annual aggregate;<br><br>b. Any insurance policies which are written on a "claims-made" basis will be kept in force for not less than two (2) years following termination or expiration of the ADA. Evidence of successive policy periods will be made by the annual issuance of a certificate of insurance to Purdue. Alternatively, a copy of an "extended reporting period" endorsement, expiring no less than two (2) years following completion of the work covered by this contract, will be provided to Purdue.<br><br>c. Purdue and its Associated Companies and their respective officers, directors, shareholders, employees, authorized agents |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | liability in any Indemnified Claim without the written consent of an officer of the Indemnifying Person, and (E) the Indemnifying Person will not settle, offer to settle or admit liability as to any Indemnified Claim in which it controls the defense if such settlement, offer or admission contains any admission of fault or guilt on the part of the Indemnified Person, or would impose any liability or other restriction or encumbrance on the Indemnified Person, without the written consent of an officer of the Indemnified Person.<br><br>iii.    Each Party will cooperate with, and comply with all reasonable requests of, each other Party and act in a reasonable and good faith manner to minimize the scope of any Indemnified Claim.<br><br>d.    Under no circumstances will Purdue be obligated to defend, indemnify, or hold Wholesaler harmless from claims arising out of product sold by Wholesaler that was not purchased by Wholesaler directly from Purdue.<br><br>e.    EXCEPT FOR INDEMNIFICATION OBLIGATIONS OF THIRD PARTY CLAIMS, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES. | and permitted assigns are named as additional insureds under General Liability, Products Liability, Automobile Liability, and Excess Liability insurance coverage obtained by Wholesaler.<br><br>d. Before the commencement of the services hereunder, Wholesaler agrees to submit to Purdue a certificate of insurance ACORD Form 25-S (1/95), or latest edition. Purdue will be provided with certified endorsements evidencing existence of the requirements contained above including an "extended reporting period" endorsement and primary and non-contributory endorsement. The COI must be signed by a duly authorized officer or agent of the insurer. In addition, Wholesaler will provide Purdue with written notice at least thirty (30) days prior to cancellation, non-renewal or material change in such insurance. The standard certificate of insurance cancellation language will be modified to comply with this requirement.<br><br>e.    The obligations set forth in this Section 39 will survive the termination or expiration of this ADA. |
| Distribution and Supply Agreement, effective as of December 18, 2014, among and between Teva | VIII. INDEMNIFICATION; LIMITATIONS ON LIABILITY<br><br>8.1    Purdue Indemnity. Purdue will indemnify, defend, save, protect, and hold harmless Distributor and its Affiliates from and against any and all Losses resulting or arising from any Third | None |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Pharmaceuticals USA, Inc. and Purdue Pharma L.P.<br><br>• First Amendment to the Distribution and Supply Agreement, effective as of August 2, 2016 | Party claims, suits, actions, proceedings or litigation ("Third Party Claims") arising from or in connection with any claim, action or proceeding by any Third Party arising out of the development, manufacturing or sale by Purdue or any other Purdue distributor of the Products or the Branded Products, or with respect to any information provided to Distributor by Purdue, including, without limitation, with respect to claims involving the labeling or warnings associated with the Products; provided, however, that in all cases referred to in this Section 8.1, Purdue will not be liable to indemnify Distributor and its Affiliates for any Losses of Distributor and its Affiliates to the extent that such Losses of Distributor and its Affiliates were caused by a Third Party Claim arising from: (i) the negligence or willful misconduct or wrongdoing of Distributor or its Affiliates or (ii) any breach by Distributor or its Affiliates of Distributor's representations, warranties, covenants or agreements under this Agreement.<br><br>8.2    Distributor Indemnity. Distributor will indemnify, defend, save, protect, and hold harmless Purdue and its Affiliates from and against any and all Losses resulting or arising from any Third Party Claims arising from or in connection with any claim, action or proceeding by any Third Party arising out of any materials used by Distributor in connection with the marketing of the Products; provided, however, that in all cases referred to in this Section 8.2, Distributor will not be liable to indemnify Purdue and its Affiliates for any Losses of Purdue and its Affiliates to the extent that such Losses of Purdue and its Affiliates were caused by a Third Party Claim arising from: (i) the negligence or willful misconduct or wrongdoing of Purdue or its Affiliates or (ii) any breach by Purdue or its Affiliates of | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| Contract Title / Desc. | Indemnification Provision | Insurance Provision |
| | Purdue's representations, warranties, covenants or agreements under this Agreement.<br><br>8.3    Procedure for Indemnification.<br><br>8.3.1 Notice. In the case of a Third Party Claim as to which a Party (the "Indemnifying Party") may be obligated to provide indemnification pursuant to this Agreement, such Party seeking indemnification hereunder (the "Indemnitee") will notify the Indemnifying Party in writing of the Third Party Claim (and specifying in reasonable detail the factual basis for the Third Party Claim and, to the extent known, the amount of the Third Party Claim) promptly after becoming aware of such Third Party Claim; provided, however, that failure to give such notification will not affect the indemnification provided hereunder except to the extent the Indemnifying Party will have been actually prejudiced as a result of such failure.<br><br>8.3.2 Defense of Claim.<br><br>(a)    If a Third Party Claim is made against an Indemnitee, the Indemnifying Party will be entitled to assume the defense of the Indemnitee by providing written notice to the Indemnitee of its intention to assume the defense of such Third Party Claim (at the expense of the Indemnifying Party) within thirty (30) calendar days after receipt of written notice from the Indemnitee of such Third Party Claim, with counsel selected by the Indemnifying Party and reasonably satisfactory to the Indemnitee for so long as the Indemnifying Party is conducting a good faith and diligent defense.<br><br>(b)    Should the Indemnifying Party so elect to assume the defense of the Indemnitee, the Indemnifying Party will not be liable to the Indemnitee for any legal or other expenses | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | subsequently incurred by the Indemnitee in connection with the defense thereof; provided, however, that if under applicable standards of professional conduct a conflict of interest exists between the Indemnifying Party and the Indemnitee in respect of such claim, such Indemnitee will have the right to employ separate counsel to represent such Indemnitee with respect to the matters as to which a conflict of interest exists, and in that event the reasonable fees and expenses of such separate counsel will be paid by such Indemnifying Party; and provided further that the Indemnifying Party will only be responsible for the reasonable fees and expenses of one separate counsel for such Indemnitee.<br><br>(c)    If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnitee will have the right to participate in such defense and to employ counsel, at its own expense, separate from the counsel employed by the Indemnifying Party.<br><br>(d)    If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnifying Party will promptly supply to the Indemnitee copies of all correspondence and documents relating to or in connection with such Third Party Claim and keep the Indemnitee informed of developments relating to or in connection with such Third Party Claim, as may be reasonably requested by the Indemnitee (including providing to the Indemnitee on reasonable request updates and summaries as to the status thereof).<br><br>(e)    If the Indemnifying Party assumes the defense of the Indemnitee, the Indemnitee will, and will cause the Distributor or Purdue, as the case may be, to reasonably cooperate with the Indemnifying Party in the defense thereof (including making documents and records available for review and copying and | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | making persons within its/his/her control available for pertinent testimony). | |
| | (f)    If the Indemnifying Party does not elect to assume the defense of the Indemnitee or does not provide written acknowledgement of the defense of the Indemnitee within the 30-day period set forth in Section 8.3.2(a), or if a good faith and diligent defense is not being or ceases to be conducted by the Indemnifying Party, the Indemnitee will have the right, at the reasonable expense of the Indemnifying Party, after three (3) Business Days' notice to the Indemnifying Party of its intent to do so, to undertake the defense of the Indemnitee (at the reasonable expense of the Indemnifying Party) with counsel reasonably selected by the Indemnitee, and to compromise or settle such Third Party Claim, with the Indemnifying Party's reasonable consent (which consent will not be unreasonably withheld, delayed or conditioned). | |
| | 8.3.3 Settlement of Claims. If the Indemnifying Party acknowledges in writing its obligation to indemnify the Indemnitee for a Third Party Claim, the Indemnitee will agree (which agreement will not be unreasonably withheld, delayed or conditioned) to a reasonable settlement, compromise or discharge of such Third Party Claim that the Indemnifying Party may recommend; provided, however, that the Indemnifying Party will not consent to any settlement, compromise or discharge (including the consent to entry of any judgment), and the Indemnitee may refuse to agree to any such settlement, compromise or discharge, that provides for injunctive or other non-monetary relief affecting the Indemnitee, including an admission or finding of liability by Indemnitee. If the Indemnifying Party acknowledges in writing its obligation to | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | indemnify the Indemnitee for a Third Party Claim, the Indemnitee will not (unless required by law) admit any liability with respect to, or settle, compromise or discharge ("Indemnitee Settlement"), such Third Party Claim without the Indemnifying Party's prior written consent (which consent will not be unreasonably withheld, delayed or conditioned) and if such consent is not received, then the Indemnifying Party will have no obligation or liability under this Article VIII for any Indemnitee Settlement entered into without the Indemnifying Party's consent.<br><br>8.4    Limitations on Liability. Nothing in this Article VIII will act to negate any obligation under common law of either Party to mitigate damages with respect to any Third Party Claim for which such Party is seeking indemnification from the other Party hereunder. | |
| Patent License Agreement, effective as of December 18, 2014, among and between Teva Pharmaceuticals USA, Inc. and Purdue Pharma L.P., The P.F. Laboratories, Inc., Purdue Pharmaceuticals L.P., and Rhodes Technologies. | 7.    Indemnification.<br><br>(a) Teva shall and shall cause its Affiliates to defend, indemnify and hold harmless the Purdue Companies and their Affiliates from and against any and all expenses (including reasonable attorneys' fees), demands, liabilities, damages or money judgments ("Losses") incurred by or rendered against the Purdue Companies and their Affiliates to the extent based on (i) any claim, action or proceeding brought against the Purdue Companies or their Affiliates by any Third Party to the extent arising out of the making, use, offer for Sale, Sale, marketing, shipping, importing or distribution of the Teva Products in the Territory, including any direct action against the Purdue Companies or their Affiliates based upon the dissemination of information by Teva, its Affiliates, distributors or wholesalers concerning such Teva Products and (ii) any claim, action or | None |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | proceeding against any of the Purdue Companies or their Affiliates by any Third Party arising out of any material breach by Teva of any of its representations, warranties (taking into account the matters expressly disclaimed in Section 5 of this Patent License Agreement), covenants or agreements made under this Patent License Agreement, except in the case of each of clauses (i) and (ii) above, to the extent that such Losses arise from the negligence or willful misconduct of any of the Purdue Companies.<br><br>(b)    The Purdue Companies shall and shall cause their Affiliates to defend, indemnify and hold harmless the Teva Companies, from and against any and all Losses incurred by or rendered against any of the Teva Companies to the extent based on (i) any claim, action or proceeding brought against any of the Teva Companies by any Third Party to the extent arising out of the making, use, offer for Sale, Sale marketing, shipping, importing or distribution of Purdue Product in the Territory by or on behalf of the Purdue Companies or any Third Party, (ii) any claim, action or proceeding by any Third Party arising out of any material breach by the Purdue Companies of any of their representations, warranties (taking into account the matters expressly disclaimed in Section 5 of this Patent License Agreement), covenants or agreements made under this Patent License Agreement, except in the case of each of clauses (i) and (ii) above, to the extent that such Losses arise from the negligence or willful misconduct of the Teva Companies.<br><br>(c)    The provisions of this Section 7 shall not apply to any claims made by either Party or by Third Parties under Federal or state antitrust or unfair competition laws. | |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Patent License Agreement, effective as of December 18, 2017, among and between Actavis Laboratories FL, Inc. and Teva Pharmaceuticals USA, Inc. and Purdue Pharma L.P. The P.F. Laboratories, Inc. and Purdue Pharmaceuticals L.P | 12.      Indemnification.<br><br>(a)      Actavis shall and shall cause the Actavis Companies to defend, indemnify and hold harmless the Purdue Companies and their Associated Companies from and against any and all expenses (including reasonable attorneys' fees), demands, liabilities, damages or money judgments ("Losses") incurred by or rendered against the Purdue Companies and their Associated Companies to the extent based on (i) any claim, action or proceeding brought against the Purdue Companies or their Associated Companies by any Third Party to the extent arising out of the making, use, offer for Sale, Sale, marketing, shipping, importing or distribution of the Actavis ANDA Products in the Territory, including any direct action against the Purdue Companies or their Associated Companies based upon the dissemination of information by Actavis, the Actavis Companies, distributors or wholesalers concerning such Actavis ANDA Products and (ii) any claim, action or proceeding against any of the Purdue Companies or their Associated Companies by any Third Party arising out of any material breach by Actavis of any of its representations, warranties, covenants or agreements made under this Patent License Agreement, except in the case of each of clauses (i) and (ii) above, to the extent that such Losses arise from (A) any failure to warn claim to the extent that Actavis or the Actavis Companies are preempted by reason of a decision of the Supreme Court of the United States or federal law from unilaterally making any changes to the applicable FDA-approved label, (B) any breach of any of the Settlement Documents by any of the Purdue Companies, or (C) the negligence or willful misconduct of any of the Purdue Companies. (b)      The Purdue Companies shall and shall | None |

| Teva Pharmaceuticals USA, Inc. and Related Entities | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | cause their Associated Companies to defend, indemnify and hold harmless the Actavis Companies, from and against any and all Losses incurred by or rendered against any of the Actavis Companies to the extent based on (i) any claim, action or proceeding brought against any of the Actavis Companies by any Third Party to the extent arising out of the making, use, offer for Sale, Sale, marketing, shipping, importing or distribution of Purdue Product in the Territory by or on behalf of the Purdue Companies or any Third Party, (ii) any claim, action or proceeding by any Third Party arising out of any material breach by the Purdue Companies of any of their representations, warranties, covenants or agreements made under this Patent License Agreement, except in the case of each of clauses (i) and (ii) above, to the extent that such Losses arise from any breach of any of the Settlement Documents by any of the Actavis Companies or the negligence or willful misconduct of the Actavis Companies.<br><br>(c)    The provisions of this Section 12 shall not apply to any claims made by either Party or by Third Parties under Federal or state antitrust or unfair competition laws. | |

| Walgreen | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Master Services Agreement between Purdue Pharma L.P. and Walgreen Co., effective as of July 15, 2017 | INDEMNIFICATION. Each Party hereby agrees to indemnify, defend, and hold harmless the other Party and its Affiliates, and each of their respective directors, officers, employees, shareholders, and agents ("Indemnities"), to the fullest extent permitted by law, from and against any and all third-party claims, demands, actions, damages, liabilities, costs, and | b.    Manufacturer Insurance, Manufacturer agrees (i) to obtain and maintain, while this Agreement is in effect, commercial general liability insurance, with coverage limits of not less than $1,000,000 per occurrence and $2,000,000 in the |

| Walgreen | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | expenses (including, without limitation, reasonable attorneys' fees and expenses) arising out of bodily-injury, property damage, or any other damage or injury, to the extent caused by the indemnifying Party's (or its or agents'): (1) breach of any representation, warranty, covenant, or obligation contained in this Agreement; (2) violation of any applicable law or regulation; (3) infringement, misappropriation, or violation of any right of a third party; (4) negligence, recklessness, or willful misconduct. or (5) breach of -data privacy in violation of law, regulation, or the terms of this Agreement. Such indemnification, hold harmless, and right to defense will not be applicable to the extent the claim, demand, action, damage, liability, cost, or expense results from an Indemnitees' breach of this Agreement; violation of law; infringement, misappropriation, or violation of any right of a third party; or negligent, reckless, or other wrongful conduct. The Party seeking-indemnification shall: (i) provide timely notice to the indemnifying Party of the claim for which indemnification is sought; (ii) provide full reasonable cooperation with the indemnifying Party in the defense of the claim; and (iii): not compromise or otherwise settle such. claim without the indemnifying. Party's prior written consent. The foregoing indemnity obligations will not apply to the extent that Indemnitees fail to comply with the immediately Preceding requirements (i) - (iii) and Indemnitor's defense of the relevant claims are prejudiced by such failure. | aggregate, and (ii) not to cancel the insurance or reduce the coverage without giving prior written notice to Walgreens unless such policy is replaced with a materially equivalent policy. At the request of Walgreens, Manufacturer shall provide Walgreens with a copy of a certificate of insurance to verify that insurance with the required coverage is in effect. |
| Product Update Master Services Agreement between Purdue Pharma L.P. and Walgreen Co., | 5.1 Mutual Indemnification. Each party shall defend, indemnify and hold the other party and its directors, officers, employees, shareholders, and agents harmless from any of all third party claims, demands, liability, damage, loss, suits and/or judgments, | |

| Walgreen | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| effective as of March 17, 2015 | including, but not limited to, attorneys' fees and the cost of any judgment and settlements arising out of or in connection with the negligent performance of that party under the terms of this Agreement, the violation of applicable law by that party or breach of this Agreement by that party. The party providing indemnification hereunder ("Indemnifying Party") will be promptly notified of any injury or claim that the other party ("Indemnified Party") is made aware of. The indemnified Party agrees to cooperate in assisting the Indemnifying Party in presenting a defense, if requested to do so. | |
| Pharmacy Insights Master Services Agreement between Purdue Pharma L.P. and Walgreen Co., effective as of September 20, 2016 | 8.4 Purdue shall indemnify, defend, and hold harmless Walgreens, its Affiliates and their respective officers, directors, employees and agents from and against any and all third-party claims, damages, losses, penalties and liabilities (including, but not limited to, reasonable legal fees and costs) arising out of or resulting from (i) the omission, negligence, willful misconduct, illegality or wrongdoing of any kind, alleged or actual, on the part of Purdue or any third party engaged by Purdue; or (ii) a breach of this Agreement by Purdue, including but not limited to the use or disclosure of the data in a manner not expressly permitted under this Agreement, except to the extent arising out of or in connection with Walgreens' negligence, fraud or willful misconduct.

8.5 Walgreens shall indemnify, defend and hold harmless Purdue its Affiliates and their respective officers, directors, employees and agents from and against any and all third-party claims, damages, losses, penalties and liabilities (including, but not limited to, reasonable legal fees and costs) arising out of or resulting from (i) the omission, negligence, willful misconduct, | |

| Walgreen | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | illegality or wrongdoing of any kind, alleged or actual, on the part of Walgreens or any third party engaged by Walgreens; or (ii) a breach of this Agreement by Walgreens, except to the extent arising out of or in connection with Purdue's negligence, fraud or willful misconduct. | |

| Walmart | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| Walmart General Merchandise Agreement, dated September 15, 2017 | 14. INDEMNIFICATION. Supplier shall protect, defend, hold harmless and indemnify Company, including its affiliates, officers, directors, employees and agents, from and against any and all lawsuits, claims, demands, actions, liabilities, injuries, losses, damages, expenses, and attorneys' fees and costs, regardless of whether such matters are groundless, fraudulent, or false, regardless of the cause or alleged cause thereof, and regardless of whether such matters arise out of or were caused by the alleged or actual joint or concurrent negligence of Company, its affiliates or their officers, directors, employees or agents arising in whole or in part out of any actual or alleged: (a)    Misappropriation or infringement of any patent, trademark, trade dress, trade secret, copyright or other right relating to any Merchandise; (b)    Death of or injury to any person, damage to any property, or any other damage or loss, by whomsoever suffered, arising in whole or in part, out of any actual or alleged defect in the Merchandise (whether latent or patent), including but not limited to: (i) any actual or alleged failure to provide adequate warnings, labeling or instructions; (ii) any actual or alleged improper | 18.    INSURANCE    REQUIREMENTS. During the term of this Agreement and for at least two (2) years thereafter, Supplier at its own cost and expense will procure and maintain insurance coverage from qualified underwriters meeting or exceeding the requirements    posted    at http://corporate.walmart.com/suppliers, which are incorporated into this Agreement. (a)    Company    may    change    the requirements    for    insurance    posted    at http://corporate.walmart.com/suppliers at any time. Changes to the insurance requirements posted after the Effective Date of this Agreement, however, will not be applicable to Supplier until twelve (12) months after Company's posting of such changes. (b)    Upon Supplier's execution of this Agreement, Supplier must provide Company with    a    current    Certificate    of    Insurance |

| Walmart | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | design, manufacture, construction, assembly, or installation of the Merchandise; or (iii) any actual or alleged failure of the Merchandise to comply with specifications or with any express or implied warranties of Supplier;<br><br>(c)    Violation of any Law relating to the Merchandise, or to any of its components or ingredients, or to its manufacture, shipment, labeling, use or sale, or to any failure to provide a Material Safety Data Sheet or certification;<br><br>(d)    Act, activity or omission of Supplier or any of its employees, representatives or agents, including but not limited to activities on Company's premises;<br><br>(e)    Use of any vehicle, equipment, fixture or material of Supplier in connection with any sale to or service for the Company; and<br><br>(f)    Any display, exhibit, pallet or other tangible items related to Merchandise or services under this Agreement. Supplier shall promptly notify Company of the assertion, filing or service of any lawsuit, claim, demand, action, liability or other matter that is or may be covered by this indemnity, and shall immediately take such action as may be necessary or appropriate to protect the interests of Company, its affiliates, officers, directors, employees and agents. Upon Company's request, Supplier will promptly provide reasonable cooperation and assistance to Company with respect to any claim, lawsuit, demand, or investigation involving Company that relates to the Merchandise or any obligations under this Agreement. Supplier shall promptly notify Company of the legal counsel Supplier proposes to engage to defend and otherwise protect Company's interest in such matter. Supplier agrees that any counsel | verifying Supplier's compliance with the insurance requirements. The Certificate of Insurance must be dated not more than thirty (30) days before the Effective Date of this Agreement and not less than thirty (30) days before the expiration of the policy period of any policy identified in the Certificate of Insurance. Thereafter, Supplier must provide current Certificates of Insurance (i) at any time upon request of Company; (ii) not less than thirty (30) days prior to expiration of any policy required by this Agreement; and (iii) annually upon the Effective Date of this Agreement. The Certificate of Insurance must include the Supplier's Supplier Number, if one has been assigned to Supplier. Supplier's failure to provide Certificate(s) of Insurance to Company does not limit or diminish, in whole or in part, Supplier's obligations in this Section 18.<br><br>(c)    Supplier will provide written notice to Company at least thirty (30) days prior to any cancellation, expiration, substitution or material change of or to any policy of insurance required by this Agreement.<br><br>(d)    Supplier's failure to procure and maintain the insurance required by this Agreement constitutes a material breach and default under this Agreement by Supplier. In addition to and without limiting any other |

| Walmart | | |
|---|---|---|
| **Contract Title / Desc.** | **Indemnification Provision** | **Insurance Provision** |
| | proposed, selected or provided by Supplier or its insurer to represent or defend Company or any of its affiliates, officers, directors, employees or agents shall represent, defend and protect Company's interests strictly in accordance with the requirements set forth in Company's Indemnity Counsel Guidelines. If Company determines that such legal counsel has not represented, defended or protected Company's interests in accordance with the Indemnity Counsel Guidelines, or reasonably believes Supplier's legal counsel is unwilling or unable to do so, Company may replace such counsel with other counsel of Company's own choosing. In such event, any fees and expenses of Company's new counsel, together with all expenses or costs incurred because of the change of counsel, shall be paid or reimbursed by Supplier as part of its indemnity obligation hereunder. Company shall at all times have the right to direct the defense of, and to accept or reject any offer to compromise or settle, any lawsuit, claim, demand or liability asserted against Company or any of its officers, directors, employees or agents, and Supplier will not settle or resolve any portion of any such claim or lawsuit without Company's written approval, which Company will not unreasonably withhold. The duties and obligations of Supplier created hereby shall not be affected or limited in any way by Supplier's fulfillment of its insurance requirements under this Agreement, or Company's extension of express or implied warranties to its customers. | remedy available to Company, upon a breach by Supplier of its obligations under this Section, Company may withhold payment of any invoice and/or any Order until Supplier has provided written documentation of Supplier's compliance with this Section.<br><br>(e)      Upon Supplier's execution of this Agreement, Supplier must provide Company with a Supplier Contact for product liability claims, including name, address, telephone, email and the name, telephone, and email contact information of Supplier's insuring company.<br><br>The requirements of this Section 18 are not intended to and will not in any manner limit or qualify the liabilities or obligations assumed by Supplier under this Agreement including, without limitation, Suppliers indemnity obligations under Section 14 of this Agreement. |