**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No.: 19-23649 (RDD) |
| Debtors. | (Jointly Administered) |

**CERTAIN INSURERS'**
**OBJECTIONS TO THE FORM OF**
**DEBTORS' PROPOSED CONFIRMATION ORDER**

The insurers listed in the signature blocks below (collectively, the "Insurers") hereby object to the form of certain provisions in "[Debtors' Proposed] Findings of Fact, Conclusions of Law, and Order Confirming the [Seventh] Amended Joint Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors" (the "Proposed Confirmation Order," Dkt. No. 3552-1). The following objections to certain specific provisions of the Proposed Confirmation Order are not intended to waive the Insurers' Limited Objection to Plan Confirmation (Dkt. No. 3263), which is incorporated herein by reference.

The five provisions of the Proposed Confirmation Order to which the Insurers object are findings and conclusions regarding insurance coverage under the MDT Insurance Policies. As this Court previously recognized in the Insurance Adversary Proceeding pending at No. 21-07005 (RDD) (Bankr. S.D.N.Y.), confirmation of the Plan does not require resolution of coverage under those policies. *See* Transcript of June 21, 2021 Hearing (Dkt. No. 173), Adv. Pro. No. 21-07005, at 92-94. Indeed, in ruling that the plaintiffs' claims in the Insurance Adversary Proceeding are non-core, the Court explained that "the determination of insurance coverage is not necessary, either to the negotiation of the plan or to confirmation of it." *Id.* at

95:7-9. The Court further noted that findings by the Court for plan confirmation purposes under the Bankruptcy Code would be a fact, but the Court would not be determining at confirmation the legal consequences of those findings for insurance coverage purposes. *Id.* at 59:12-18, 60:10-12.

The proposed findings and conclusions to which the Insurers object concern non-core issues that are properly resolved in the Insurance Adversary Proceeding, not here. Not only do the proposed findings and conclusions relate to matters of insurance coverage rather than plan confirmation, but there is little, if any, record or briefing to support them. That is hardly surprising because Debtors provided no notice that they would seek any of these findings or conclusions until long after confirmation discovery had been completed and, indeed, until after confirmation objections had been filed. Debtors can seek all the same findings and conclusions in the Insurance Adversary Proceeding. In that action, the Insurers will have the opportunity to take discovery and fully litigate those issues—an opportunity they did not have in connection with plan confirmation—and the Court will be afforded full briefing, from both Debtors and the Insurers, and an actual record on the issues. It is in that adversary proceeding, not this confirmation hearing, that issues of insurance coverage should be decided. *See, e.g.*, *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) (holding that the bankruptcy court was required to resolve a non-core, state-law contract dispute in an adversary proceeding).

Because issues of insurance coverage are not properly addressed at this confirmation hearing, the Insurers filed a Reservation of Rights to Object to Admission of Insurance-Related Documents (Dkt. 3468) and a motion *in limine* (Dkt. No. 3588) to exclude evidence on issues of insurance coverage. To resolve the motion *in limine*, Debtors entered into

a stipulation with the Insurers (Dkt. No. 3588) providing that evidence that may have a bearing on issues of insurance coverage is either withdrawn or may only be admitted in evidence at the Confirmation Hearing for limited purposes, on issues other than insurance coverage. Accordingly, not only are findings on insurance coverage unnecessary and improper, but they are also unsupported by any evidence in the record.

Although issues of insurance coverage need not, and should not, be resolved in connection with confirmation of the Plan, the Insurers do not dispute that the filing of the Chapter 11 Cases did not violate the policies or that the Debtors' discharge under the Plan does not discharge the Insurers. In addition, in the circumstances of this case, the Insurers do not object to the transfer of MDT Insurance Rights to the Trust. And the Insurers do not object to findings in the confirmation order to that effect.

Consistent with these principles, on August 15, 2021, the Insurers sent Debtors and counsel for the Ad Hoc Committee proposed language for the Confirmation Order (and for Section 5.10 of the Plan, the insurance neutrality provision) that would resolve the Insurers' objections to the Plan and the Proposed Confirmation Order. But the Committee's insurance counsel has declined to agree to any of the requested changes. Hence, the Insurers request that certain provisions of the Proposed Confirmation Order be modified as set forth below.

1. Paragraph E(h), page 9. The Insurers request that this finding/conclusion be modified as follows:

> All parties including, without limitation, the Debtors' insurers, had notice of the filing of the Chapter 11 Cases ~~Purdue bankruptcy proceedings and an opportunity to participate in them and were on notice that Debtors' opioid-related liabilities were being mediated, negotiated, and resolved~~.

First, the revision substitutes the Plan-defined term "Chapter 11 Cases" for the vague, undefined "Purdue bankruptcy proceedings." Second, the revision deletes an overly-

broad factual finding for which there is no record support and that is unnecessary to plan confirmation. The Insurers of course were aware that Purdue had filed for bankruptcy. But whether they had a meaningful "opportunity to participate" in the bankruptcy proceedings is a matter on which there is no evidence. There is no evidence of record, for example, that the Insurers were invited to participate in any negotiations during the bankruptcy case over the resolution of any opioid claims. In this regard, Paragraph 6 of the stipulation resolving the Insurers' motion *in limine* (Dkt. No. 3558) provides that the so-called "Resolution Letters" exhibits—*i.e.*, letters allegedly sent by Debtors to insurers—cannot be used at the Confirmation Hearing to establish that such letters were ever received or to establish any coverage rights or obligations under any insurance policy. As such, those exhibits provide no support for the requested finding. Debtors will have the opportunity, in the Insurance Adversary Proceeding pending in this Court, to present evidence on this and any other issues that may affect coverage, and the Insurers will then have an opportunity to present contrary evidence. *See generally* Dkt. No. 3263 at 10-12 (Insurers' Limited Objection to Plan Confirmation, explaining that the Plan was modified, after the deadlines for fact and expert discovery had passed, to remove "insurance neutrality" provisions that had been acceptable to the Insurers, handicapping the Insurers' ability to protect their interests in this hearing).

2. Paragraph L(e), page 13: The Insurers request that this finding/ conclusion be modified as follows:

> . . . ~~The Bankruptcy Code authorizes~~ The Insurers who joined in "Certain Insurers' Limited Objection to Plan Confirmation and Reservation of Rights," Dkt. No. 3263 (the "Insurers") have represented that they do not, in the specific circumstances of these Chapter 11 Cases, oppose the transfer and vesting of the MDT Transferred Assets to and in the Master Distribution Trust, and no other insurance company or other party in interest has objected to such transfer and vesting. In the absence of any outstanding objections, such transfer and vesting of the MDT Insurance Rights

> ~~Transferred Assets~~ is authorized~~, notwithstanding any terms of the Purdue Insurance Policies or provisions of non-bankruptcy law~~.

The Insurers had previously notified Debtors that they did not object to the transfer of the MDT Insurance Rights to the Master Distribution Trust, notwithstanding any terms of the Purdue Insurance Policies issued by them that, the Insurers might otherwise contend, would give them the right to challenge such transfer of the MDT Insurance Rights. Given that notice by the Insurers, and the absence of any objection by any other insurer, the Court need not render an advisory ruling regarding whether the Bankruptcy Code authorizes the proposed transfer and vesting notwithstanding any insurance policy-based arguments or defenses that the Insurers could assert, and may assert in other cases, but are not asserting here. The Insurers' proposed revision accomplishes this. It also avoids the need for the Court to engage in a complicated preemption analysis on which courts have differed.

3. Paragraph JJ(A), page 31: The Insurers request that this finding/ conclusion be modified as follows:

> The settlements reached between the Debtors (viewed collectively) and the opioid-related claimants, as embodied in the Plan, are reasonable and were entered into in good faith based on arms-length negotiations.~~ Such negotiation, settlement and resolution of liabilities shall not operate to excuse any insurer from its obligations under any insurance policy, notwithstanding any terms of such insurance policy (including any consent-to settle or pay-first provisions) or provisions of non-bankruptcy law.~~

All the Court must find for Plan confirmation purposes is set forth in the first sentence of this proposed finding/conclusion. What consequences that finding may have for insurance coverage purposes is a matter that properly should be reserved for decision in the Insurance Adversary Proceeding pending before this Court. That is especially so because, as this Court has already held, the Plan does not turn on whether insurance coverage exists for the opioid claims. (*See* p. 1, above.) Accordingly, the portion of the finding/conclusion that the

Insurers propose to delete is not necessary for confirmation of the Plan, and the consequences of the Debtors' settlements on its rights to insurance coverage should be deferred to the Insurance Adversary Proceeding, not addressed in this confirmation hearing.[1]

In addition, the Insurers propose to insert the words "viewed collectively" in the first sentence to conform the Debtors' proposed finding to the only supporting evidence presented at the Confirmation Hearing: specifically, the testimony of Ms. Horewitz, an expert witness for the Ad Hoc Committee, who said that in comparing the Debtors' potential labilities to their assets, she only looked at those potential liabilities and assets in the aggregate. This matters because, by Debtors' own admission (*see* Disclosure Statement (Dkt. 2983) at 51), at least one of the Debtors, Rhodes Pharmaceuticals L.P., never marketed opioid drugs and what liability, if any, it might have for opioid claims is not the subject of any evidence. This, too, is an issue on which the parties can present evidence and argument in the Insurance Adversary Proceeding and that need not, and cannot, be decided on the record of the confirmation hearing.

4. Paragraph JJ(B), page 31: The Insurers request that this finding/ conclusion be deleted:

> ~~None of Debtors' insurers has acknowledged that its policies provide coverage for Debtors' opioid liabilities at issue in the bankruptcy, and thus they cannot reasonably~~

---

[1] Moreover, the requested finding – one which expressly seeks to modify rights under insurance policies and applicable insurance law – is precisely the type of request that would have been foreclosed by the insurance neutrality language contained in prior versions of the Plan, including the version that was sent out to creditors for the solicitation of votes. Section 5.10 of the Fifth Amended Plan, the solicitation version of the Plan, provided as follows:

> Nothing in the Plan, the Plan Documents or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way relate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing or modifying (a) the rights or obligations of any of the Insurance Companies or (b) any rights or obligations of the Debtors arising out of or under any Purdue Insurance Policy.

> ~~or in good faith object to Debtors' having entered into a reasonable resolution of those liabilities, and any requirement under the policies that Debtors obtain insurers' consent to the resolution of those liabilities as embodied in the Plan is deemed satisfied or waived or otherwise does not constitute a valid defense to coverage by the insurers.~~

This proposed finding/conclusion requests a ruling that is unnecessary to confirmation and therefore should be deferred for decision to the Insurance Adversary Proceeding, for the same reasons discussed above. There is no evidence in the record regarding whether the Insurers have denied coverage for Debtors' opioid liabilities (and, as a factual matter, at least one insurer has offered to defend certain opioid lawsuits). Mr. DelConte's testimony on this issue was subject to the Insurers' motion *in limine*, based in part, on his lack of competency to testify on this matter, and Paragraph 6 of the stipulation resolving the Insurers' motion *in limine* (Dkt. No. 3588) provides that Mr. DelConte's testimony cannot be used to establish "coverage rights or obligations under any insurance policy."

Even if there were evidence in the record that none of Debtors' insurers have acknowledged coverage for Debtors' opioid liabilities, the Court has no basis at this time, in this confirmation hearing, to find or conclude that any such refusal to acknowledge was unreasonable or not in good faith. For example, there could be applicable exclusions or other justifications for an insurer to not accept coverage. The existence and applicability of such defenses present quintessential insurance coverage issues that will be heard and resolved in the Insurance Adversary Proceeding following discovery, briefing, and, if necessary, trial on the merits. There is no reason why the Court should make such a requested finding/conclusion now, and no basis for it to do so without a record, since the proposed finding/conclusion is not necessary for Plan confirmation purposes and appears to be sought simply to prejudice the Insurers' ability to assert defenses in the Insurance Adversary Proceeding.

5. Paragraph NN, page 40. The Insurers request that this finding/ conclusion be modified as follows:

> Except as expressly provided in this Order or the Plan, the discharge ~~or release~~ of the Debtors through the Plan will not operate to relieve any other entity, including Insurance Companies, of their obligation, if any, to pay the Debtors' opioid-related liabilities~~, without regard to (i) whether the Debtors would be able to pay such liabilities in the first instance outside of bankruptcy, and (ii) whether the Debtors or a post-bankruptcy trust can or do pay those liabilities in full, in both instances notwithstanding any terms of the Purdue Insurance Policies or provisions of non-bankruptcy law~~. The Plan discharges ~~or releases~~ Debtors for their opioid-related liabilities.

This proposed finding/conclusion should be revised to be made consistent with §§ 524(e) and 1141 of the Bankruptcy Code. Those statutory provisions speak only of the effect of the discharge; they say nothing about releases. As proposed by Debtors, this finding/conclusion seeks a prospective, advisory opinion on the meaning and scope of unidentified releases given by certain parties to the Debtors. In particular, it seeks a ruling now, completely unnecessary to plan confirmation, as to whether these unidentified releases preclude the assertion of certain coverage issues by the Insurers. As noted by the Court during the June 21 hearing in the Insurance Adversary Proceeding, the insurance coverage "consequences" of plan provisions or portions of the confirmation order should be determined in the Insurance Adversary Proceeding, not at confirmation.[2]

WHEREFORE, for the reasons stated above, the Insurers respectfully request that if the Court decides to confirm the Plan, it make the above-requested revisions to the Proposed Confirmation Order.

[signatures begin on next page; remainder of this page intentionally left blank]

---

[2] June 21, 2021 transcript (Dkt. No. 173 in the Insurance Adversary Proceeding) at 60:10-12.

Dated: August 20, 2021
New York, NY

Respectfully submitted,

*/s/ Kelly H. Tsai*

Kelly H. Tsai
CROWELL & MORING LLP
590 Madison Avenue, 19th Floor
New York, New York 10022
Tel: 212-223-4000
Fax: 212-223-4134
ktsai@crowell.com

Mark D. Plevin (admitted *pro hac vice*)
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Tel: 415-986-2800
Fax: 415-986-2827
mplevin@crowell.com

Attorneys for American Guarantee and Liability Insurance Company and Steadfast Insurance Company

Philip D. Anker
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8890
Fax: (212) 230-8888
philip.anker@wilmerhale.com

Isley Markman Gostin
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel: (202) 663-6551
Fax: (202) 663-6363
isley.gostin@wilmerhale.com

-and-

Colleen P. Sorensen
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Ave., Suite 3400
Chicago, Illinois 60601
Tel: (312) 784-5400
Fax: (312) 784-5499
csorensen@hww-law.com

Attorneys for Navigators Specialty Insurance Company

Dan D. Kohane
Lee Siegel
HURWITZ & FINE, P.C.
1300 Liberty Building
Buffalo, New York 14202
ddk@hurwitzfine.com,
lss@hurwitzfine.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
105 W. Madison St., Suite 1400
Chicago, Illinois 60602
862-362-8605
dchristian@dca.law

Adam H. Fleischer
R. Patrick Bedell
Kristi S. Nolley
BATESCAREY LLP
191 N Wacker Drive, Suite 2400
Chicago, Illinois 60606
Tel.: 312-762-3100
Fax: 312-762-3200
afleischer@batescarey.com,
pbedell@batescarey.com,
knolley@batescarey.com

Attorneys for North American Elite Insurance Company and Aspen American Insurance Company

Mark E. Felger
Frederick E. Schmidt, Jr.
COZEN O'CONNOR
3 WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
Tel: (212) 883-4900
Fax: (646) 588-1552
mfelger@cozen.com,
eschmidt@cozen.com

Kim V. Marrkand
Nicholas C. Cramb
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
KMarrkand@mintz.com,
NCCramb@mintz.com

Attorneys for Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Insurance Corporation

Lauren Macksoud
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Tel.: (212) 768-6700
Fax: (212) 768-6800
E-Mail: lauren.macksoud@dentons.com

Kathryn Guinn
DENTONS US LLP
1400 Wewatta Street, Suite 700
Denver, Colorado 80202
Tel.: (303) 634-4000
Fax: (303) 634-4400
E-Mail: Katy.guinn@dentons.com

-and-

Patrick Maxcy
Keith Moskowitz
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, Illinois 60606-6361
Tel.: (312) 876-8000
Fax: (312) 876-7934
E-Mail: Patrick.maxcy@dentons.com,
keith.moskowitz@dentons.com

Attorneys for XL Insurance America, Inc.

Mitchell J. Auslander
James Fitzmaurice
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
Tel.: (212) 728-8000
E-mail: mauslander@willkie.com,
jfitzmaurice@willkie.com

Joseph G. Davis
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Tel.: (202) 303-1000
jdavis@willkie.com

Attorneys for National Union Fire Insurance Company of Pittsburgh, Pa.

906223195.02