DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
James I. McClammy
Marc J. Tobak
Christopher S. Robertson
Gerard X. McCarthy

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

**DEBTORS' REPLY TO LIMITED OBJECTION OF THE STATES OF WASHINGTON, CALIFORNIA, CONNECTICUT, DELAWARE, MARYLAND, OREGON, RHODE ISLAND AND VERMONT AND THE DISTRICT OF COLUMBIA TO DEBTORS' PROPOSED ORDER CONFIRMING THE SEVENTH AMENDED JOINT CHAPTER 11 <u>PLAN OF REORGANIZATION</u>**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," "**Purdue**" or the "**Company**") submit this reply (this "**Reply**") to the *Limited Objection of the States Of Washington, California, Connecticut, Delaware, Maryland, Oregon, Rhode Island and Vermont and The District Of Columbia To Debtors' Proposed Order Confirming the Seventh Amended Joint Chapter 11 Plan of Reorganization* [ECF No. 3594] (the "**Limited Objection**")[2] of the States Of Washington, California, Connecticut, Delaware, Maryland, Oregon, Rhode Island and Vermont and The District Of Columbia (the "**Objecting States**"). The Debtors respectfully represent as follows:

## STATEMENT

1. The Objecting States filed their untimely and improper Limited Objection without so much as a single phone call or email to the Debtors to ask whether the single provision in 101 pages of <u>proposed</u> findings of fact and conclusions of law that they take issue with might be removed. Had they made even the most cursory inquiry, they would immediately have learned that the proposed waiver of Bankruptcy Rule 3020(e) (although a standard provision that is routinely included in confirmation orders in this jurisdiction) could and would come out. Other parties have sent productive comments on the Proposed Order that the Debtors have worked assiduously to address. No other party filed an objection in lieu of calling or emailing regarding their issue.[3] This filing demonstrates a total lack of concern for avoiding the waste of Estate or Judicial resources.

---

[2] Except where otherwise indicated, capitalized terms used but not defined in this Reply have the meanings ascribed to them in the Limited Objection or the *Debtors' Memorandum of Law in Support of Confirmation of Debtors' Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Debtor Affiliates and Omnibus Reply to Objections Thereto* [ECF No. 3461] (the "**Confirmation Brief**"), as applicable.

[3] In dramatic contrast, the parties to the subsequently filed *Certain Insurers' Objections to the Form of Debtors' Proposed Confirmation Order* [ECF No. 3618] engaged with the Debtors before filing their

2.      Nor did the Objecting States limit their pleading to their narrow stated concern, instead filing a brief in the middle of an ongoing trial arguing that supposed "police power" claims for money damages cannot be released and repeatedly discussing the "evidence adduced in the confirmation hearing." Limited Objection ¶¶ 6-9, 23-24. This improper mid-hearing brief violates this Court's order establishing the schedule and protocols for these confirmation proceedings.[4]

3.      The baseless and improper accusations in the Limited Objection reflect, at best, a profound ignorance of the facts of these chapter 11 cases and the terms of the proposed Plan. The Limited Objection includes factual statements that the Objecting States know or should know are false, including with respect to issues that they have themselves been involved in litigating before this Court in just the past month, and makes the shocking, offensive and totally false accusation that the Debtors (and by implication the extraordinarily high percentage of creditors who have not objected to the Plan) acted in complicity with the Sacklers in formulating the Plan.

I.      **The Statement that the Debtors "Will" Attempt to Substantially Consummate the Plan Within 14 Days of Confirmation Absent the 14-Day Stay Provided for in Rule 3020(e) is False**

4.      In seeking to maintain the 14-day stay provided for in Bankruptcy Rule 3020(e), the Limited Objection represents to this Court that "[a]bsent a stay, the Debtors will attempt to substantially consummate the Plan." Limited Objection ¶ 13 (emphasis added). By presenting a pleading to this Court, the signatory attorneys are each "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support." Bankruptcy Rule

---

pleading, which is limited to the issues that the parties were not able to resolve after many calls and email exchanges with respect to the Proposed Order.

[4] *See Third Amended Order Granting Debtors' Motion for Order Establishing Confirmation Schedule and Protocols* [ECF No. 3347] (the "**Protocols Order**") ¶ 3(a)(ii).

2

9011(b)(3). The Objecting States and their counsel either are, or should have been, well aware that the Debtors cannot and will not consummate the Plan within 14 days of confirmation.

5.  In fact, the Objecting States consist of nine of the twenty-five members of the Non-Consenting States Group who just last month litigated an issue involving the anticipated timing of consummation of the Plan with the Debtors. As this Court itself specifically reminded them less than four weeks ago: "the new Board, if I confirm a Plan for these Debtors, will not be appointed anywhere close to the end of August and I believe, given the nature of the Debtors' settlement with the DOJ, quite possibly not until well into 2022." Hr'g Tr., 57:17–21, July 29, 2021. This was after the Debtors had again explained that "under the terms of the plea agreement by and among PPLP and the United States, a sentencing hearing may be held no earlier than 75 days following confirmation of the Plan, and the Debtors' emergence from chapter 11 may occur no earlier than seven days after such sentencing hearing" in response to the Non-Consenting States Group's objection in that matter. *Debtors' Omnibus Reply in Support of Motion of Debtors for Entry of an Order Authorizing Implementation of 2021 Key Employee Incentive Plan and 2021 Key Employee Retention Plan* [ECF No. 3334] ¶¶ 16-17. Moreover, these same states were also involved in litigating approval of the DOJ Settlement that provides for the 82-day period and are perfectly aware of its terms. *See Objection of the Ad Hoc Group of Non-Consenting States to the Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. 9019 Authorizing and Approving Settlements Between the Debtors and the United States* [ECF No. 1914]. To be clear, the Debtors and virtually all of the over one hundred thousand supporting creditors have an extraordinarily strong interest in consummating the Plan, if confirmed, as soon as they are able to. However, the Debtors will not be able to do so within 14 or 24 or 64 or 74 days of confirmation. The Objecting

3

States' purported concern that the Debtors would emerge within 14 days of confirmation in their untimely mid-trial brief is not only unsupported, but also unsupportable.

II. **The Objecting States' Accusations that the Debtors Were "Complicit" With the Sacklers in Formulating the Plan is Wholly Unsupported and Plainly False**

6.  Again willing to disregard facts in favor of a baseless soundbite, the Objecting States assert in their mid-trial brief that the Plan is the product of the "complicity of the Debtors in steering the plan process along a course that is completely congruent with the Sacklers' desires." Limited Objection ¶ 22. This accusation actually is outside the bounds of acceptable advocacy. In fact, the Debtors have on countless occasions demonstrated that they are fiercely independent of and adverse to the Sacklers. Indeed, after a thorough and independent investigation, the Examiner ordered by this Court and appointed by the Department of Justice "found no evidence that the Sackler Families either attempted to, or did, influence the Special Committee," which was and is vested with exclusive authority to provide approval with respect to all transactions between Purdue and members of the Sackler Families, in its work, as the *Report of Stephen D. Lerner, Examiner* [ECF No. 3285] made clear.

7.  As the Objecting States know perfectly well, the plaintiff constituencies that negotiated and supported the Settlement Framework that was put forward at the outset of these chapter 11 cases included no fewer than 23 state attorneys general and analogous officials from the five U.S. territories, as well as the court-appointed Plaintiffs' Executive Committee and Co-Lead Counsel in the federal multi-district opioid litigation pending in Ohio. It was these parties that negotiated opposite the Sackler Families in the lead-up to Purdue's bankruptcy. After the Petition Date, additional parties joined the negotiations and more information and discovery was exchanged "with respect to elements of [the] settlement with the Sacklers than [this Court] had[] ever seen, and [perhaps] ha[s] ever been provided in any [c]hapter 11 case." Hr'g Tr., 56:5–9,

4

Mar. 24, 2021. Three groups—the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, the Official Committee of Unsecured Creditors, and the Multi-State Governmental Entities, who collectively speak for every single creditor in these cases as a matter of law—then each <u>independently</u> negotiated and agreed to the proposed settlement with the Sackler Families after extensive mediation before mediators. The mediators, who were <u>approved by</u> the Objecting States, jointly recommended the settlement embodied in the Plan. Only after having run the gauntlet of these difficult negotiations did the Plan, yet further improved over time in a third round of mediation in which these very Objecting States were among the primary participants and during which over 62% of the formerly dissenting States agreed to support the Plan, garner an overwhelming level support from a multitude of creditor constituencies in these chapter 11 cases. The Objectors' assertion that Plan and Shareholder settlement are tainted by complicity and were guided by "the Sacklers' desires," Limited Objection ¶ 22, is flatly false, unsupported, and profoundly offensive to those who negotiated opposite the Sackler Families.

### III.    The Objecting States Continue to Disregard the Record of These Chapter 11 Cases

8.    The Limited Objection, as with other pleadings filed by certain of the Objecting States, reflects a fundamental misunderstanding of these chapter 11 cases, or worse. For example, a single paragraph of the *Objection of the State of Washington, the State of Oregon, and the Objecting States to Confirmation of the Debtors' Plan of Reorganization* [ECF No. 3276] (the "**Washington Objection**") serves as a prime example of the multiple similar misstatements made to this Court. This paragraph first asserts that "[h]ad Purdue Pharma simply reorganized as a business entity, this case would have been a relatively simply one. The structure of a plan could have been essentially the same as the current plan with the Sackler settlement excised." This absurd and false statement willfully ignores, among other things, (1) the term sheets that <u>these very states</u> negotiated with the private side creditors in Phase 1 of the mediation, which were

5

conditioned on Sackler contributions, (2) the DOJ Resolution, whose $1.775 billion Forfeiture Judgment Credit cannot be satisfied without the Sackler settlement funds, (3) the MSGE's agreement to support the Plan, which is predicated on such payments being received, and (4) the fee settlement, to which they are a party, which cannot be consummated without the Sackler funds.

9. In the very same paragraph, the Washington Objection also asserts that "[a]s amply demonstrated by the Debtors' feasibility analysis Purdue Pharma had and has ample resources on its own – without any contribution from the Sacklers – to pay all administrative expenses and provide sufficient funding to the Reorganized Debtors." Wash. Obj. ¶ 7. The analysis cited expressly includes and relies on the payments under the Shareholder Settlement Agreement. *See* JX-0534 (Disclosure Statement) Appendix C at 9-11; Lowne Decl. ¶ 16. The Debtors must provide $2 billion in cash or in value to or for the benefit of governmental creditors to satisfy the Plea Agreement one way or the other—in addition to satisfying all other administrative claims—which is a central fact of these chapter 11 cases of which the parties to the Washington Objection appear to be completely unaware (or misrepresent), despite having been part of a group that litigated this issue as well. *See Objection of the Ad Hoc Group of Non-Consenting States to the Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. 9019 Authorizing and Approving Settlements Between the Debtors and the United States* [ECF No. 1914].

10. Finally, the Objecting States also used the Limited Objection as an improper, untimely opportunity to stray far afield from the topic of Bankruptcy Rule 3020(e) as their mid-trial brief re-litigates their argument that supposed "police power" claims for money damages cannot be released in a plan of reorganization simply because of the nature of those claims or the identity of the claimants. These arguments were already raised in the Washington Objection and which the Debtors have already fully addressed. *See* Limited Objection ¶¶ 7-8; Wash. Obj. ¶¶ 12-

46; Confirmation Brief ¶¶ 141-150.  Leaving no doubt about their pleading's impropriety, the Limited Objection references trial testimony regarding these issues, referring to "the evidence adduced in the confirmation hearing" and the "evidence adduced at the ongoing hearing" in multiple sections of the brief.  Limited Objection ¶¶ 9, 23.

11. If the parties to the Limited Objection were not governmental entities, the Debtors would have seriously considered seeking costs for this wasteful, wholly improper, and untruthful mid-trial brief—whose purported rationale could and would have been resolved with a 45 second phone call.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE, given that the Debtors will no longer include a waiver of Bankruptcy Rule 3020(e) in the Proposed Order, the Debtors respectfully submit that the Limited Objection should be denied as moot.

Dated:   August 20, 2021
         New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    By:   /s/ Marshall S. Huebner

                                    450 Lexington Avenue
                                    New York, New York 10017
                                    Telephone: (212) 450-4000
                                    Facsimile: (212) 701-5800
                                    Marshall S. Huebner
                                    Benjamin S. Kaminetzky
                                    Eli J. Vonnegut
                                    James I. McClammy
                                    Marc J. Tobak
                                    Christopher S. Robertson
                                    Gerard X. McCarthy

                                    *Counsel to the Debtors*
                                    *and Debtors in Possession*