DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

### NOTICE OF FILING OF BLACKLINE OF EIGHTH AMENDED PLAN

PLEASE TAKE NOTICE that on March 15, 2021, the above-captioned debtors and

debtors in possession (collectively, the "**Debtors**") filed (i) the *Joint Chapter 11 Plan of*

*Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2487] (as may be modified,

amended, or supplemented from time to time, the "**Plan**") and (ii) the *Disclosure Statement for*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2488] (as modified,

amended, or supplemented from time to time, the "**Disclosure Statement**").[2]

   **PLEASE TAKE FURTHER NOTICE** that (i) on April 23, 2021, the Debtors filed the

*First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated*

*Debtors* [D.I. 2731] (the "**First Amended Plan**") and (ii) on April 30, 2021, the Debtors filed the

*Amended Disclosure Statement for First Amended Chapter 11 Plan for Purdue Pharma L.P. and*

*Its Affiliated Debtors* [D.I. 2788] (the "**First Amended Disclosure Statement**").

   **PLEASE TAKE FURTHER NOTICE** that (i) on May 7, 2021, the Debtors filed the

*Second Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its*

*Affiliated Debtors* [D.I. 2823] (the "**Second Amended Plan**") and (ii) on May 8, 2021, the Debtors

filed the *Disclosure Statement for Second Amended Chapter 11 Plan for Purdue Pharma L.P. and*

*Its Affiliated Debtors* [D.I. 2825] (the "**Second Amended Disclosure Statement**").

   **PLEASE TAKE FURTHER NOTICE** that, on May 24, 2021, the Debtors filed (i) the

*Third Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated*

*Debtors* [D.I. 2904] (the "**Third Amended Plan**") and (ii) the *Disclosure Statement for Third*

*Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2907] (the

"**Third Amended Disclosure Statement**").

   **PLEASE TAKE FURTHER NOTICE** that, on May 26, 2021, the Debtors filed (i) the

*Fourth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its*

*Affiliated Debtors* [D.I. 2935] (the "**Fourth Amended Plan**") and (ii) the *Disclosure Statement*

*for Fourth Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors*

[D.I. 2937] (the "**Fourth Amended Disclosure Statement**").

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider the adequacy of the information contained in the Disclosure Statement was held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**") on May 26, 2021, at 10:00 a.m. (prevailing Eastern Time) (the "**Disclosure Statement Hearing**").

**PLEASE TAKE FURTHER NOTICE** that, at the Disclosure Statement Hearing, the Bankruptcy Court found that the Disclosure Statement contains sufficient information pursuant to Section 1125(a) of the Bankruptcy Code, subject to certain changes set forth on the record at the Disclosure Statement Hearing.

**PLEASE TAKE FURTHER NOTICE** that, on June 2, 2021, the Debtors filed (i) the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2967] (the "**Original Fifth Amended Plan**") and (ii) the *Disclosure Statement for Fifth Amended Chapter 11 Plan for Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2969] (the "**Fifth Amended Disclosure Statement**").

**PLEASE TAKE FURTHER NOTICE** that a supplemental hearing for the sole purpose of considering incremental changes to the Disclosure Statement was held before the Bankruptcy Court on June 2, 2021, at 3:00 p.m. (prevailing Eastern Time) (the "**Supplemental Hearing**").

**PLEASE TAKE FURTHER NOTICE** that, at the Supplemental Hearing, the Bankruptcy Court found that the Disclosure Statement contains sufficient information pursuant to Section 1125(a) of the Bankruptcy Code, subject to certain further changes set forth on the record at the Supplemental Hearing.

**PLEASE TAKE FURTHER NOTICE** that, on June 3, 2021, the Debtors filed a revised *Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2982] (the "**Revised Fifth Amended Plan**").

**PLEASE TAKE FURTHER NOTICE** that, on July 14, 2021, the Debtors filed the *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3185] (the "**Sixth Amended Plan**").

**PLEASE TAKE FURTHER NOTICE** that, on August 12, 2021, the Debtors filed the *Seventh Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3545] (the "**Seventh Amended Plan**").

**PLEASE TAKE FURTHER NOTICE** that, contemporaneously herewith, the Debtors are filing the *Eighth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3632] (the "**Eighth Amended Plan**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a blackline of the Eighth Amended Plan reflecting changes from the Seventh Amended Plan.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that, to the extent the Debtors make further revisions to the Eighth Amended Plan, the Debtors will present further blacklined copies of such revised documents to the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that, to address concerns raised by certain objectors and to avoid the need for any objectors to file unnecessary supplemental pleadings, the Debtors stipulate that all outstanding objections not consensually withdrawn, apply equally to the Eighth Amended Plan as to the prior versions of the Plan and that no objector will be prejudiced by failing to update or supplement their outstanding objection.

Dated:    August 23, 2021
        New York, New York

                     DAVIS POLK & WARDWELL LLP

                     By:    */s/ Eli J. Vonnegut*

                     450 Lexington Avenue
                     New York, New York 10017
                     Telephone: (212) 450-4000
                     Facsimile:  (212) 701-5800
                     Marshall S. Huebner
                     Benjamin S. Kaminetzky
                     Timothy Graulich
                     Eli J. Vonnegut
                     Christopher S. Robertson

                     *Counsel to the Debtors*
                     *and Debtors in Possession*

## Exhibit A

**Blackline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P., et al.,**<br>**Debtors.**[1] | **Case No. 19-23649 (RDD)** |
| | **(Jointly Administered)** |

## ~~SEVENTH~~EIGHTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

Dated: August ~~12~~23, 2021
New York, New York

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Table of Contents**

| | | |
|---|---|---|
| ARTICLE I | DEFINITIONS AND INTERPRETATION. | 1 |
| 1.1 | Definitions | 1 |
| 1.2 | Interpretation; Application of Definitions; Rules of Construction | 42 |
| 1.3 | Reference to Monetary Figures | ~~42~~43 |
| 1.4 | Controlling Document | ~~42~~43 |
| ARTICLE II | ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS AND DOJ FORFEITURE JUDGMENT CLAIM. | ~~42~~43 |
| 2.1 | Administrative Claims | ~~42~~43 |
| 2.2 | Priority Tax Claims | ~~43~~44 |
| 2.3 | DOJ Forfeiture Judgment Claim | ~~43~~44 |
| ARTICLE III | CLASSIFICATION OF CLAIMS AND INTERESTS. | 44 |
| 3.1 | Classification in General | 44 |
| 3.2 | Summary of Classification of Claims and Interests | ~~44~~45 |
| 3.3 | Voting Classes; Presumed Acceptance by Non-Voting Classes | ~~45~~46 |
| 3.4 | Voting; Presumptions; Solicitation | ~~45~~46 |
| 3.5 | Cramdown | 46 |
| 3.6 | No Waiver | ~~46~~47 |
| ARTICLE IV | TREATMENT OF CLAIMS AND INTERESTS. | ~~46~~47 |
| 4.1 | Secured Claims (Class 1) | ~~46~~47 |
| 4.2 | Other Priority Claims (Class 2) | ~~46~~47 |
| 4.3 | Federal Government Unsecured Claims (Class 3) | 47 |
| 4.4 | Non-Federal Domestic Governmental Claims (Class 4) | ~~47~~48 |
| 4.5 | Tribe Claims (Class 5) | 48 |
| 4.6 | Hospital Claims (Class 6) | ~~48~~49 |
| 4.7 | Third-Party Payor Claims (Class 7) | 49 |
| 4.8 | Ratepayer Claims (Class 8) | ~~49~~50 |
| 4.9 | NAS Monitoring Claims (Class 9) | ~~49~~50 |
| 4.10 | PI Claims (Classes 10(a) and 10(b)) | ~~50~~51 |
| 4.11 | Avrio General Unsecured Claims (Class 11(a)) | ~~52~~53 |
| 4.12 | Adlon General Unsecured Claims (Class 11(b)) | ~~52~~53 |
| 4.13 | Other General Unsecured Claims (Class 11(c)) | ~~52~~53 |
| 4.14 | Intercompany Claims (Class 12) | 53 |
| 4.15 | Shareholder Claims (Class 13) | ~~53~~54 |
| 4.16 | Co-Defendant Claims (Class 14) | ~~53~~54 |

| 4.17 | Other Subordinated Claims (Class 15) | 54 |
| 4.18 | PPLP Interests (Class 16) | ~~54~~55 |
| 4.19 | PPI Interests (Class 17) | ~~54~~55 |
| 4.20 | Intercompany Interests (Class 18) | 55 |
| 4.21 | Debtors' Rights with Respect to Unimpaired Claims | ~~55~~56 |
| ARTICLE V | MEANS FOR IMPLEMENTATION. | ~~55~~56 |
| 5.1 | Restructuring Transactions | ~~55~~56 |
| 5.2 | Plan Settlements | 56 |
| 5.3 | The Plan Administration Trust | ~~66~~67 |
| 5.4 | NewCo | ~~69~~70 |
| 5.5 | TopCo | ~~71~~72 |
| 5.6 | Master Disbursement Trust | ~~72~~73 |
| 5.7 | Creditor Trusts | 80 |
| 5.8 | Attorneys' Fees and Costs | ~~85~~86 |
| 5.9 | Transferability of Distribution Rights | 88 |
| 5.10 | Insurance Neutrality | ~~88~~89 |
| 5.11 | Transfer of Books and Records; Cooperation; Privilege | ~~88~~89 |
| 5.12 | Public Document Repository | ~~90~~91 |
| 5.13 | Effective Date Cash; Surplus Reserved Cash | 101 |
| 5.14 | Corporate Action | 102 |
| 5.15 | Cancellation of Notes, Interests, Instruments, Certificates and Other Documents | ~~103~~104 |
| 5.16 | Closing of Chapter 11 Cases | ~~103~~104 |
| ARTICLE VI | DISTRIBUTIONS. | ~~103~~104 |
| 6.1 | Distributions Generally | ~~103~~104 |
| 6.2 | Distributions on the Effective Date | 104 |
| 6.3 | Date of Distributions | ~~104~~105 |
| 6.4 | Disbursing Agent | ~~104~~105 |
| 6.5 | Rights and Powers of Disbursing Agent | ~~104~~105 |
| 6.6 | Expenses of Disbursement Agent | ~~104~~105 |
| 6.7 | Delivery of Distributions | 105 |
| 6.8 | Undeliverable and Unclaimed Distributions | 105 |
| 6.9 | Distribution Record Date | ~~105~~106 |
| 6.10 | Manner of Payment under Plan | ~~105~~106 |
| 6.11 | Minimum Cash Distributions | ~~105~~106 |

6.12    Setoffs and Recoupment .................................................................... ~~105~~106

6.13    Claims Paid or Payable by Third Parties ............................................ 106

6.14    Distributions After Effective Date ...................................................... ~~106~~107

6.15    No Postpetition Interest and Penalties on Claims .............................. ~~106~~107

6.16    Allocation of Distributions Between Principal and Interest ............... ~~106~~107

6.17    No Constructive Receipt ..................................................................... ~~106~~107

6.18    No Distribution in Excess of Amount of Allowed Claim .................. 107

6.19    Satisfaction of Claims ........................................................................ 107

6.20    Withholding and Reporting Requirements .......................................... ~~107~~108

6.21    Post-Confirmation Claims .................................................................. 108

ARTICLE VII        PROCEDURES FOR DISPUTED CLAIMS. ............................... ~~108~~109

7.1    Procedures for Disputed Claims Generally ........................................ ~~108~~109

7.2    Disputed Claims Reserve .................................................................... ~~108~~109

7.3    Claim Objections ................................................................................ 109

7.4    No Distribution Pending Allowance ................................................... ~~109~~110

7.5    Estimation of Claims .......................................................................... ~~109~~110

7.6    Distribution After Allowance ............................................................. ~~109~~110

7.7    Resolution of Claims .......................................................................... ~~109~~110

7.8    Property Held in Disputed Claims Reserves ...................................... 110

7.9    Claims Resolution Procedures Cumulative ....................................... ~~110~~111

7.10    No Postpetition Interest or Penalties on Disputed Claims ................. ~~110~~111

ARTICLE VIII        EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ........ ~~110~~111

8.1    Assumption and Rejection of Executory Contracts and Unexpired Leases ... ~~110~~111

8.2    Determination of Contract Disputes and Deemed Consent ............... ~~111~~112

8.3    Payments Related to Assumption of Contracts and Leases ............... ~~112~~113

8.4    Co-Defendant ~~Indemnification Provisions~~ ......................... ~~112~~Contracts        113

8.5    Rejection Claims ................................................................................. ~~113~~114

8.6    Compensation and Benefit Plans ........................................................ 114

8.7    Purdue Pension Plan ........................................................................... 114

8.8    Insurance Policies ............................................................................... ~~114~~115

8.9    Reservation of Rights .......................................................................... 116

ARTICLE IX        CONDITIONS PRECEDENT TO THE OCCURRENCE OF THE EFFECTIVE
                DATE. .................................................................................. ~~116~~117

9.1    Conditions Precedent to Effective Date ............................................. ~~116~~117

9.2    Waiver of Conditions Precedent ........................................................ 118

ARTICLE X        EFFECT OF CONFIRMATION. ............................................ ~~118~~119

10.1    Binding Effect ............................................................................ ~~118~~119

10.2    Discharge of Claims against and Interests in the Debtors ........................... 119

10.3    Pre-Confirmation Injunctions, Stays, Stipulations and Discovery Orders ............ 119

10.4    Injunction against Interference with Plan ........................................... 120

10.5    Plan Injunction .......................................................................... ~~120~~121

10.6    Releases ................................................................................... ~~121~~122

10.7    Shareholder Releases .................................................................... ~~125~~124

10.8    Channeling Injunction ................................................................... ~~130~~127

10.9    Tolling of Shareholder Released Claims; Violations of Shareholder Releases and
        Channeling Injunction ................................................................... ~~132~~129

10.10   MDT Insurer Injunction ................................................................. ~~133~~130

10.11   Settling MDT Insurer Injunction ........................................................ ~~135~~132

10.12   Exculpation ............................................................................... ~~136~~133

10.13   Injunction Related to Releases and Exculpation ....................................... ~~136~~133

10.14   Subordinated Claims ..................................................................... ~~136~~134

10.15   Preservation of Causes of Action and Reservation of Rights ......................... ~~137~~134

10.16   Ipso Facto and Similar Provisions Ineffective ......................................... ~~137~~134

10.17   No Successor Liability ................................................................... ~~137~~134

10.18   Co-Defendant Defensive Rights ......................................................... ~~138~~135

10.19   Channeling of Future PI Channeled Claims and Injunction in Support of PI Futures
        Trust ~~138~~135

10.20   Reinstatement of Certain Shareholder Released Claims ................................ ~~138~~136

10.21   Special Provisions for United States ................................................... ~~139~~136

ARTICLE XI        RETENTION OF JURISDICTION. ........................................ ~~142~~139

11.1    Retention of Jurisdiction ................................................................ ~~142~~139

ARTICLE XII        MISCELLANEOUS PROVISIONS. ...................................... ~~145~~142

12.1    Exemption from Certain Transfer Taxes ................................................ ~~145~~142

12.2    Dates of Actions to Implement Plan .................................................... ~~145~~142

12.3    Amendments .............................................................................. ~~145~~142

12.4    Revocation or Withdrawal of Plan ...................................................... ~~146~~143

12.5    Payment of Statutory Fees .............................................................. ~~146~~144

12.6    Severability .............................................................................. ~~147~~144

12.7    Governing Law ........................................................................... ~~147~~144

12.8    Immediate Binding Effect ............................................................... ~~147~~145

| 12.9 | Successors and Assigns | ~~147~~145 |
| 12.10 | Entire Agreement | ~~148~~145 |
| 12.11 | Computing Time | ~~148~~145 |
| 12.12 | Exhibits to Plan | ~~148~~145 |
| 12.13 | Notices | ~~148~~145 |
| 12.14 | Dissolution of the Creditors' Committee | ~~148~~146 |
| 12.15 | Reservation of Rights | ~~149~~146 |

Each of Purdue Pharma L.P., Purdue Pharma Inc., Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP and SVC Pharma Inc. (each, a "***Debtor***" and, collectively, the "***Debtors***" or "***Purdue***") proposes the following ~~seventh~~eighth amended joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Section 1.1 below.

**ARTICLE I    DEFINITIONS AND INTERPRETATION.**

      1.1    *Definitions*.

The following terms shall have the respective meanings specified below:

"***Abatement Distribution***" means a distribution from an Abatement Trust to an Authorized Recipient for Authorized Abatement Purposes.

"***Abatement Trust Documents***" means, collectively, the NOAT Documents, the Tribe Trust Documents, the Hospital Trust Documents, the TPP Trust Documents and the NAS Monitoring Trust Documents.

"***Abatement Trusts***" means, collectively, NOAT, the Tribe Trust, the Hospital Trust, the TPP Trust and the NAS Monitoring Trust.

"***Ad Hoc Committee***" means the ad hoc committee of governmental and other contingent litigation claimants identified in the *Verified Statement Pursuant to Bankruptcy Rule 2019* [D.I. 279], as may be amended from time to time.

"***Ad Hoc Group of Hospitals***" means the Ad Hoc Group of Hospitals identified in the *Second Amended Verified Statement of the Ad Hoc Group of Hospitals Pursuant to Bankruptcy Rule 2019* [D.I. 1536].

"***Ad Hoc Group of Individual Victims***" means the Ad Hoc Group of Individual Victims of Purdue Pharma L.P. identified in the *Amended Verified Statement of the Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al., Pursuant to Bankruptcy Rule 2019* [D.I. 1480], as may be amended from time to time.

"***Adlon General Unsecured Claim***" means any Claim against Adlon Therapeutics L.P. that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Federal Government Unsecured Claim, a Channeled Claim, a Ratepayer Claim, a Co-Defendant Claim, an Other Subordinated Claim, an Intercompany Claim or a Shareholder Claim.

"***Administrative Claim***" means any Claim against any Debtor for costs and expenses of administration of the Chapter 11 Cases pursuant to section 327, 328, 330, 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' business, (ii) any Professional Fee Claim, (iii) any fee or charge assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, (iv) any Allowed Claim that is to be treated as an Administrative Claim pursuant to a Final Order of the Bankruptcy Court under

section 546(c)(2) of the Bankruptcy Code, (v) once Allowed in accordance with Section 2.3(a) of the Plan, the DOJ Forfeiture Judgment Claim and (vi) any Allowed Cure Claim.

"*AHC Reimbursement Agreement Assumption Order*" means the *Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* [D.I. 553], as amended or supplemented by the Bankruptcy Court pursuant to D.I. 1617 and D.I. 2190.

"*Allowed*" means (i) with respect to a Channeled Claim, such Channeled Claim that has been allowed in accordance with the applicable Creditor Trust TDP, (ii) with respect to any Adlon General Unsecured Claim or Avrio General Unsecured Claim, such Claim that is Scheduled as not disputed, contingent or unliquidated, and for which no Proof of Claim or Interest, as applicable, has been timely filed, and (iii) with respect to any Claim (other than a Channeled Claim) against a Debtor, such Claim (A) that is allowed pursuant to the Plan or a Final Order, (B) as to which no objection has been timely filed and that is evidenced by a Proof of Claim timely filed by the applicable Bar Date or that is not required to be evidenced by a filed Proof of Claim under the Plan, the Bankruptcy Code or a Final Order, or (C) the amount of which has been agreed, compromised, settled or otherwise resolved pursuant to the authority of the Debtors or the Plan Administration Trustee, as applicable. Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest or other charges on such Claim on and after the Petition Date. No Claim of any Person subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Person pays in full the amount for which it is liable to such Debtor or the Plan Administration Trustee as provided in section 502(d). Correlative terms such as "Allow" and "Allowance" have correlative meanings.

"*Asset*" means, with respect to a Person, all of the right, title and interest of such Person in and to property of whatever type or nature, including real, personal, mixed, intellectual, tangible and intangible property, which, for avoidance of doubt, includes insurance policies and any rights, claims or potential claims with respect thereto.

"*Assumed Liabilities*" means the liabilities of the Debtors assumed by NewCo as expressly set forth in the NewCo Transfer Agreement.

"*Assumption Notice*" means a notice of the assumption or assumption and assignment and any proposed Cure Amount provided to counterparties to executory contracts and unexpired leases pursuant to the Solicitation Procedures Order.

"*Authorized Abatement Purpose*" means, with respect to any Abatement Trust, (i) an authorized opioid abatement purpose for which an Abatement Distribution from such Abatement Trust may be used, as set forth in the Creditor Trust TDP for such Abatement Trust, which Creditor Trust TDPs shall be attached to the Confirmation Order or (ii) the payment of attorneys' fees and costs of Holders of Channeled Claims channeled to such Abatement Trust (including any counsel to any ad hoc group or other group of such Holders, including any such counsel that is not a Professional Person).

"*Authorized Recipient*" means an eligible recipient of funds from an Abatement Trust in accordance with the Plan, the Confirmation Order and the applicable Abatement Trust Documents.

"*Avrio General Unsecured Claim*" means any Claim against Avrio Health L.P. that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Federal Government Unsecured Claim, a Channeled Claim, a Ratepayer Claim, a Co-Defendant Claim, an Other Subordinated Claim, an Intercompany Claim or a Shareholder Claim.

"*Case Stipulation*" means the *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* [D.I. 518], including any predecessors thereto.

"*Cash*" means all legal tender of the United States of America.

"*Cause of Action*" means any Claim, action, class action, claim, cross-claim, counterclaim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, rights of subrogation, reimbursement, guaranty, suit, obligation, liability, debt, damage, judgment, loss, cost, attorneys' fees and expenses, account, defense, remedy, offset, power, privilege, license or franchise, in each case, of any kind, character or nature whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, allowable or disallowable, Allowed or Disallowed, assertible directly or derivatively (including, without limitation, under alter-ego theories), *in rem*, *quasi in rem*, *in personam* or otherwise, whether arising before, on or after the Petition Date, arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, in contract or in tort, at law, in equity or otherwise, regardless of where in the world accrued or arising, or pursuant to any other theory or principle of law, including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, Willful Misconduct, veil piercing, unjust enrichment, disgorgement, restitution, contribution, indemnification, rights of subrogation and joint liability, regardless of where in the world accrued or arising. For the avoidance of doubt, "Cause of Action" expressly includes (i) any Cause of Action held by a natural person who is not yet born or who has not yet attained majority as of the Petition Date or as of the Effective Date, (ii) any right of setoff, counterclaim or recoupment and any ClaimCause of Action for breach of contract or for breach of duty imposed by law or in equity, (iii) the right to object to or otherwise contest Claims or Interests, (iv) any Claim or Cause of Action pursuant to section 362 of the Bankruptcy Code or chapter 5 of the Bankruptcy Code, (v) any claim or defense, including fraud, mistake, duress and usury and any other defense set forth in section 558 of the Bankruptcy Code, and (vi) any claim under any state or foreign law, including for the recovery of any fraudulent transfer or similar theory.

"*Channeled Claims*" means, collectively, all Non-Federal Domestic Governmental Claims, Tribe Claims, Hospital Claims, Third-Party Payor Claims, NAS Monitoring Claims, PI Claims, Released Claims and Shareholder Released Claims.

"*Channeling Injunction*" means the channeling injunction issued pursuant to Section 10.8 of the Plan.

"*Chapter 11 Cases*" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on or after the Petition Date (and not otherwise dismissed), currently pending in the Bankruptcy Court that are jointly administered in the case styled *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD).

"*Civil Settlement Agreement*" means that certain civil settlement agreement attached as Exhibit C to the DOJ 9019 Motion, as approved and modified by the DOJ 9019 Order, by and among Purdue Pharma L.P. and the United States, acting through the United States Department of Justice, Civil Division, Commercial Litigation Branch, the United States Attorney's Office for the District of New Jersey, the United States Attorney's Office for the District of Vermont, and on behalf of the Office of Inspector General of the United States Department of Health and Human Services, the Defense Health

Agency, acting on behalf of the TRICARE Program, 10 U.S.C. §§ 1071-1110b, and the Office of Personnel Management.

"**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"**Class**" means any group of Claims or Interests classified under this Plan pursuant to section 1122(a) of the Bankruptcy Code.

"**Co-Defendant**" means (i) any Holder of a Co-Defendant Claim and (ii) any co-defendant in a Pending Opioid Action commenced as of the Effective Date, in each case, other than (x) the Debtors and their current and former officers, directors, authorized agents and employees and (y) the Shareholder Released Parties.

"*Co-Defendant Action*" means any Pending Opioid Action and any previous, pending, or future litigation or dispute that alleges substantially similar facts or causes of action as those alleged in the Pending Opioid Actions and that concerns conduct occurring before the Effective Date.

"**Co-Defendant Claim**" means any Claim, other than a Claim held by an Insurance Company, that (i) either (A) is or could be asserted against any Debtor, including without limitation any Claim that would otherwise be a Cure Claim or (B) seeks to recover from any property of any Debtor or its Estate, including any MDT Insurance Policy, (ii) is for or based upon or arises from contribution, indemnification, reimbursement, setoff or recoupment or any other similar claim or Cause of Action (other than indemnification obligations expressly assumed pursuant to the Plan or otherwise by the Debtors), and (iii) seeks to recover, directly or indirectly, any costs, losses, damages, fees, expenses or any other amounts whatsoever, actually or potentially imposed upon the Holder of such Claim, in each case relating to or arising from any actual or potential litigation or dispute, whether accrued or unaccrued, asserted or unasserted, existing or hereinafter arising, based on or relating to, or in any manner arising from, in whole or in part, Opioid-Related Activities or otherwise relating to opioids (including, without limitation, any such Claims asserted by any manufacturer, distributor, pharmacy, pharmacy-benefit manager, group purchasing organization or physician or other contract counterparty or business partner of any Debtor), in each case that is not a Shareholder Claim or a Claim held by any current or former director, officer, employee or agent of the Debtors. For the avoidance of doubt, a Co-Defendant Claim shall not include any Claim held by a Co-Defendant that exists in the ordinary course of business and that is not related to an actual or pending litigation or dispute relating to Opioid-Related Activities, including, but not limited to, Claims based on the return of ProductsCo-Defendant Surviving Pre-Effective Date Claim. Notwithstanding anything to the contrary outside of this definition in the Plan, any Claim that satisfies the definition of a Co-Defendant Claim shall be a Co-Defendant Claim notwithstanding that such Claim would otherwise satisfy the definition of another type of Claim. For the avoidance of doubt, Co-Defendant Claim includes a Claim that is held by an insurance company in its capacity as subrogee of a Holder of a Co-Defendant Claim.

"*Co-Defendant Defensive Rights*" means any and all direct, or indirect, rights, remedies, protections, immunities, objections, defenses, assertions, Claims, Causes of Action and, in each case, of any kind, character or nature, whether legal, equitable or contractual, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, including, without limitation, all rights, remedies, defenses, assertions and Claims against liability, rights to setoff, offset, recoupment, counter-claims, cross-claims, rights to allocation or apportionment of fault and judgment reduction, apportionment of damages, any other defenses, affirmative defenses or judgment reduction mechanisms or rights similar to the foregoing, and any steps necessary to assert the foregoing, in each case, solely to reduce the liability, judgment, obligation or fault of the applicable Holder of a Co-Defendant Claim or Excluded Party to any Person that asserts any Cause of Action or Claim against such Holder of any Co-Defendant Claim or

Excluded Party based in whole or in part on Opioid-Related Activities. Co-Defendant Defensive Rights (i) may be used to offset, set-off, recoup, allocate or apportion fault, liability or damages, or seek judgment reduction or otherwise defend against any Cause of Action ~~or Claim~~ brought by any Person against the Holder of any Co-Defendant Claim or the Excluded Party based in whole or in part on Opioid-Related Activities and (ii) shall in no case be used to seek or obtain any affirmative monetary recovery from any Protected Party or any Asset of any Protected Party (including from any Purdue Insurance Policy or any other insurance policy of a Protected Party) on account of any Released Claim or Shareholder Released Claim. ~~The forgoing does not constitute a release of any Co-Defendant's Class 14 Claim or any other Excluded Party's Class 11(c) Claim.~~

"**_Co-Defendant Surviving Pre-Effective Date Claim_**" means any Cause of Action held by a Co-Defendant that (i) arose in the ordinary course of business, (ii) is not related to a Co-Defendant Action, and (iii) concerns conduct occurring before the Effective Date.

"**_Common Benefit Escrow_**" means the fund to be established as set forth in Section 5.8(c) of the Plan.

"**_Common Benefit Fund_**" means a common benefit fund established by order of, and administered by, the MDL Court.

"**_Confirmation Date_**" means the date on which the Bankruptcy Court enters the Confirmation Order.

"**_Confirmation Hearing_**" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**_Confirmation Order_**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code and approving the Plan Settlement, which shall be in form and substance acceptable to the Debtors and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties.

"**_Continuing Foundation Members_**" means the Persons appointed to serve as members of the Foundations in accordance with Section 5.7(l) of the Plan, which Persons shall be ~~either~~ (i) the individuals appointed to serve as Creditor Trustees of NOAT and/or (ii) ~~such other qualified Person or Persons appointed by the Bankruptcy Court in the event any of those individuals is unwilling or unable to be a member of the Foundations, or~~ as otherwise agreed to by the Debtors, the Governmental Consent Parties and counsel to the Newly Consenting States.

"**_Contract Dispute_**" means an unresolved objection regarding assumption or assumption and assignment, Cure Amount, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) or other issues related to assumption or assumption and assignment of an executory contract or unexpired lease.

"**_Creditor Trust_**" means (i) with respect to Non-Federal Domestic Governmental Channeled Claims, NOAT, (ii) with respect to Tribe Channeled Claims, the Tribe Trust, (iii) with respect to Hospital Channeled Claims, the Hospital Trust, (iv) with respect to Third-Party Payor Channeled Claims, the TPP Trust, (v) with respect to NAS Monitoring Channeled Claims, the NAS Monitoring Trust, (vi) with respect to PI Channeled Claims, the PI Trust and (vii) with respect to Future PI Channeled Claims, the PI Futures Trust.

"***DOJ Forfeiture Payment***" means a payment of $225 million in Cash by PPLP to the United States Marshals in accordance with the Plan, the Plea Agreement and the DOJ 9019 Order.

"***DOJ Resolution***" means the Plea Agreement and the Civil Settlement Agreement, including the settlements contemplated therein and the other terms and conditions thereof.

"***DOJ Unsecured Claims***" means the DOJ Civil Claim and the DOJ Criminal Fine Claim.

"***Domestic Governmental Entity***" means the United States or any State, county, municipality, Tribe, public school district or other Governmental Unit within the United States, or an officer of any of the foregoing in his or her official capacity, but, for the avoidance of doubt, not including any Non-Federal Acute Care Hospitals.

"***Effective Date***" means the date selected by the Debtors for the consummation of the Plan, or as soon thereafter as reasonably practicable.

"***Effective Date Cash***" means, collectively all Cash and cash equivalents of the Debtors (including all amounts received under the Shareholder Settlement Agreement) on the Effective Date prior to the making of any payments by the Debtors in accordance with the Restructuring Transactions, excluding any Cash and cash equivalents (i) in the form of security deposits, (ii) that collateralize any obligations of the Debtors or (iii) that are otherwise subject to any legal, contractual or other restriction on the ability to freely transfer such Cash or cash equivalents.

"***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"***ERISA***" means the Employee Retirement Income Security Act of 1974, as amended. 29 U.S.C. §§ 1301-1461.

"***Escrow Period***" means (i) a period commencing on an SSA Payment Date on which the Minimum Required Settlement Payment under the Shareholder Settlement Agreement is held in escrow pursuant to Section 2.08 of the Shareholder Settlement Agreement and not released to the Master Disbursement Trust, and continuing until all such escrowed Minimum Required Settlement Payments have been released from escrow and paid to the Master Disbursement Trust (and, if such release of funds or other payment to the Master Disbursement Trust that would terminate the Escrow Period is solely in accordance with Section 2.08(f) of the Shareholder Settlement Agreement, no party to the Shareholder Settlement Agreement objects to the termination of the Escrow Period), in accordance with the terms of the Shareholder Settlement Agreement and (ii) if the Supreme Court grants a writ of certiorari that could result in the vacatur, modification, or reversal of the Shareholder Releases, a period commencing the date on which such writ is granted, and continuing until the Supreme Court renders a decision or dismisses the appeal or writ of certiorari.

"***Estate(s)***" means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

"***Estate Causes of Action***" means any and all Causes of Action that any Debtor may have or be entitled to assert on behalf of its Estate or itself, whether or not asserted.

"***Estate Surviving Pre-Effective Date Claim***" means any Estate Cause of Action against a Co-Defendant that (i) arose in the ordinary course of business, (ii) is not related to a Co-Defendant Action, and (iii) concerns conduct occurring before the Effective Date.

"**_Excluded Assets_**" means (i) all Effective Date Cash other than the Initial NewCo Cash and (ii) any other Assets of the Debtors excluded from the transfer to NewCo pursuant to the NewCo Transfer Agreement, including without limitation all MDT Transferred Assets and all PAT Assets.

"**_Excluded Claim_**" means (i) any criminal action or criminal proceeding arising under a criminal provision of any statute instituted (A) by a Domestic Governmental Entity that has authority to bring such a criminal action or criminal proceeding, and (B) to adjudicate a person's guilt or to set a convicted person's punishment; (ii) any Cause of Action against a ~~Shareholder Released Party~~non-Debtor Person by any federal, state or local authority with respect to income taxes imposed on such ~~Shareholder Released Party~~non-Debtor Person; (iii) any Estate Cause of Action or any Cause of Action held by a Releasing Party against an Excluded Party; (iv) any Estate Cause of Action identified on the Schedule of Retained Causes of Action; (v) any Cause of Action ~~against a Shareholder Released Party by a Person, or by a Shareholder Released Party against a Person, in each case, where such Person is such Shareholder Released Party's current or former officer, director, principal, member, employee, financial advisor, attorney (including, without limitation, any attorney retained by any director, in his or her capacity as such), accountant, investment banker (including, without limitation, investment banker retained by any director, in his or her capacity as such), consultant, expert or other professional, in each case, in such Person's capacity as such, and such Cause of Action is not against a Shareholder Released Party for indemnification, contribution or similar liability-sharing theory in connection with Opioid-Related Activities or Pending Opioid Actions; or (vi) any Claims or Causes of Action~~ (including, without limitation, any such ~~Claims or Causes of~~Cause of Action held by holders of Settled Canadian Patient Claims or by other Canadians) against any non-Debtor Person (including, without limitation, Purdue Pharma, a Canadian limited partnership, Purdue Pharma Inc., a Canadian corporation and/or Purdue Frederick Inc., a Canadian corporation (collectively, "**_Purdue Canada_**") or any other Shareholder Released Party) that (x) ~~arise~~arises out of or ~~relate~~relates to the conduct of any corporations, companies, partnerships and other entities formed under the laws of Canada or its provinces affiliated or associated with any of the Debtors, including, without limitation, Purdue Canada and (y) ~~are~~is not based upon any conduct of the Debtors, including any Opioid-Related Activities of the Debtors; (vi) any Willful Non-Opioid Claim; (vii) any Willful Related Party Claim; or (viii) any Cause of Action against any Person to the extent based on the actual conduct of such Person after the Effective Date. For greater certainty, with respect to the foregoing clause (~~vi~~v), to the extent a ~~Claim or~~Cause of Action is asserted in Canada against a Shareholder Released Party and/or former director or officer of a Debtor, the knowledge of that Person regarding the Opioid-Related Activities of the Debtors may be asserted against that Person and form part of the ~~Claim or~~ Cause of Action in Canada, and any such assertion shall be without prejudice to all defenses of the applicable Shareholder Released Party or former officer or director to such assertion.

"**_Excluded Insurance Policies_**" means (i) the Isosceles Insurance Ltd. policy number PPLP-01/2019, (ii) the Purdue Insurance Policies agreed by the Debtors, the Creditors' Committee and the Governmental Consent Parties, which shall be identified in the MDT Agreement, and (iii) any rights or obligations under any Purdue Insurance Policy to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for workers' compensation liability. For the avoidance of doubt, clause (i) of this definition does not negate or limit the scope of the definition of MDT Insurance Collateral. For the avoidance of further doubt, if a Purdue Insurance Policy both (x) does or may afford the Debtors rights, benefits, indemnity, insurance coverage or defense costs with respect to any ~~Claim or~~ Cause of Action against the Debtors arising out of, on account of, or in connection with Opioid-Related Activities or for which the Debtors have insurance rights arising out of or in connection with Opioid-Related Activities and (y) is subject to clause (ii) or (iii) of this definition, such Purdue Insurance Policy is only an Excluded Insurance Policy to the extent it is subject to clause (ii) or (iii) of this

definition, and all provisions herein concerning the MDT Insurance Policies apply to that Purdue Insurance Policy.

"*Excluded Party*" means (i) each Person identified on the Schedule of Excluded Parties; *provided* that, (i) subject to the terms of the Settling Executive Stipulation, the Settling Executives shall not be Excluded Parties, and (ii) each no Settling Co-Defendant that is party to a contract or lease rejected pursuant to Section 8.4(c) of the Plan and (iii) any Co-Defendant that is not a party to any contract or lease with the Debtors.and none of their respective Related Parties (except to the extent any such Related Party is identified by name on the Schedule of Excluded Parties filed on August 23, 2021) shall be an Excluded Party.

"*Excluded Privileged Materials*" means the Privileged documents, books and records prepared in connection with or related to any Purdue Legal Matter.

"*Exculpated Parties*" means, collectively, (i) the Debtors, (ii) the Creditors' Committee and its members, solely in their capacities as such, (iii) the Plan Administration Trustee, (iv) the MDT Trustees and the MDT Executive Director, (v) the Creditor Trustees, (vi) the Supporting Claimants, each solely in their capacities as such, (vii) the DOB members, (viii) the Continuing Foundation Members and (ix) with respect to each of the Persons in the foregoing clauses (i) through (viii), each of their Related Parties; *provided*, *however*, that no Excluded Party or Shareholder Released Party (other than current and former directors, officers and employees of the Debtors that are not Excluded Parties or Sackler Family Members) shall be an Exculpated Party in any capacity or respect.

"*FDA*" means the United States Food and Drug Administration.

"*Federal Government Unsecured Claims*" means the DOJ Unsecured Claims and the Other Federal Agency Claims.

"*Final Order*" means an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case, or of any other court of competent jurisdiction (i) that has not been reversed, stayed, modified or amended, and (ii) (A) as to which the time to appeal, seek certiorari or move for a new trial, re-argument or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, re-argument or rehearing has been timely taken or (B) as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, re-argument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

"*Foundations*" means, collectively, the RBS Foundation and the RBS Fund.

"*Future PI Channeled Claim*" means any alleged opioid-related personal injury or similar opioid-related claim or Cause of Action against any Released Party or Shareholder Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors (, as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases (including but not limited to the subject matter described in subclauses (i) through (xii) of Sectionsubclause (i) of Sections 10.6(b) and 10.7(b) of the Plan), the Estates or the Chapter 11 Cases, and that is not (i) a PI Channeled Claim, a Third-Party Payor Channeled Claim, an NAS Monitoring Channeled Claim, a Hospital Channeled Claim or an Administrative Claim, (ii) held by a Domestic Governmental Entity or (iii) a Released Claim against any Debtor or its Estate, NewCo or any successor owner of NewCo's opioid business, in each case, that arises from or relates to the use of an opioid that is manufactured by or placed in the stream of commerce

by NewCo or any successor owner of NewCo's opioid business. Future PI Channeled Claims shall be channeled solely to the PI Futures Trust in accordance with the Master TDP.

"*General Bar Date*" means July 30, 2020.

"*Governmental Consent Parties*" means (i) the Ad Hoc Committee and (ii) the MSGE Group; *provided* that, with respect to any consent required exclusively under Section 5.7(l) of the Plan as it relates solely to the membership of the RBS Foundation, such term shall also include the Attorney General of the State of New York in the exercise of its authorities relating to the operation of corporations subject to the provisions of the New York Not-For-Profit Corporation Law.

"*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"*Holder*" means a Person holding a Claim, a Channeled Claim, a Cause of Action, a Lien or an Interest, as applicable.

"*Hospital Attorney Fee Fund*" means the fund to be established as set forth in Section 5.8(d) of the Plan.

"*Hospital Channeled Claim*" means (i) any Hospital Claim or (ii) any Released Claim or Shareholder Released Claim that is held by a provider of healthcare treatment services or any social services, in its capacity as such, that is not a Domestic Governmental Entity. Hospital Channeled Claims shall be channeled to the Hospital Trust in accordance with the Master TDP.

"*Hospital Claim*" means any Claim against any Debtor that is held by a provider of healthcare treatment services or any social services, in its capacity as such, that is not a Domestic Governmental Entity, including, based on the Debtors' initial review, the Claims set forth in the 1,030 Proofs of Claims filed by hospitals and the 150 Proofs of Claims filed by other treatment providers.

"*Hospital TDP*" means the trust distribution procedures to be implemented by the Hospital Trust setting forth the procedures for the distribution of Abatement Distributions by the Hospital Trust to Authorized Recipients and the Authorized Abatement Purposes for Abatement Distributions from the Hospital Trust, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and the Ad Hoc Group of Hospitals and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement (it being understood and agreed that the form of Hospital TDP filed on July 7, 2021 is acceptable to such parties).

"*Hospital Trust*" means a trust to be established in accordance with Section 5.7 of the Plan to (i) assume all liability for the Hospital Channeled Claims, (ii) hold the MDT Hospital Claim and collect the Initial Hospital Trust Distribution and additional payments due under the MDT Hospital Claim in accordance with the Private Entity Settlements and the Hospital Trust Documents, (iii) administer Hospital Channeled Claims and (iv) make Abatement Distributions to Authorized Recipients for Authorized Abatement Purposes, in each case in accordance with the Hospital TDP.

"*Hospital Trust Agreement*" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the Hospital Trust, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and the Ad Hoc Group of Hospitals and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement.

"***MDT Insurance Policies***" means all Purdue Insurance Policies that do or may afford the Debtors rights, benefits, indemnity, insurance coverage or defense costs with respect to any ~~Claim or~~ Cause of Action against the Debtors arising out of, on account of, or in connection with Opioid-Related Activities or for which the Debtors have or may have insurance rights arising out of or in connection with Opioid-Related Activities, including, but not limited to (i) all Purdue Insurance Policies listed in Exhibit A to the *Complaint for Declaratory Relief*, Adv. Pro. No. 21-07005 (RDD) [D.I. 1], (ii) all D&O Insurance Policies and (iii) any additional Purdue Insurance Policies agreed by the Debtors and the Governmental Consent Parties, which shall be identified in the MDT Agreement, but excluding in each case the Excluded Insurance Policies.

"***MDT Insurance Proceeds***" means the Cash proceeds obtained through the pursuit of the MDT Insurance Rights, including but not limited to the Cash proceeds in respect of any MDT Insurance Settlement, whether received before, on or after the Effective Date.

"***MDT Insurance Rights***" means the Purdue Insurance Rights in respect of the MDT Insurance Policies and the MDT Insurance Collateral, which Purdue Insurance Rights shall be transferred by the Debtors to the Master Disbursement Trust on the Effective Date. Notwithstanding anything to the contrary herein, (i) the MDT Insurance Rights with respect to the MDT Insurance Collateral for Isosceles Insurance Ltd. policy number PPLP-01/2019 shall be limited to the right to receive any such MDT Insurance Collateral remaining after the expiration of the policy period and any extension of coverage under such policy, (ii) the MDT Insurance Rights shall not include any right to interfere in any manner with the rights of the insureds under Isosceles Insurance Ltd. policy number PPLP-01/2019 prior to the expiration of the policy period and any extension of coverage under such policy and the resolution of all claims asserted thereunder and (iii) any persons who have unresolved claims under the Isosceles Insurance Ltd. policy number PPLP-01/2019 at the expiration of the policy period, including any extension, shall cooperate with and provide consent to the Master Disbursement Trust to resolve those claims in connection with the MDT Insurance Collateral after the expiration of the policy period, including any extension.

"***MDT Insurance Settlement***" means each settlement agreement concerning the MDT Insurance Rights that (i) the Debtors and an MDT Insurer have entered into pursuant to the Purdue Insurance Stipulation on or before the Effective Date or (ii) the Master Disbursement Trust and an MDT Insurer have entered into after the Effective Date; *provided* that, in the case of both clauses (i) and (ii), the settlement agreement is approved by the Bankruptcy Court.

"***MDT Insurer***" means an Insurance Company that has issued, is responsible for, or has liability to pay under any MDT Insurance Policy or MDT Insurance Collateral, and each of its affiliates, predecessors in interest, and agents, solely in its capacity as such and solely with respect to such MDT Insurance Policy or MDT Insurance Collateral.

"***MDT Insurer Injunction***" means the injunction issued pursuant to Section 10.10 of the Plan.

"***MDT Interests***" means, collectively, the MDT NOAT Interest and the MDT Tribe Interest.

"***MDT NAS Monitoring Claim***" means the beneficial interest in the Master Disbursement Trust granted to the NAS Monitoring Trust pursuant to the Private Entity Settlements, which interest shall entitle the NAS Monitoring Trust to the payment of the amounts set forth in Section 5.2(d)(i)(C) of the Plan.

reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement (it being understood and agreed that the form of NAS Monitoring TDP filed on July 14, 2021 is acceptable to such parties).

"**NAS Monitoring Trust**" means the trust to be established in accordance with Section 5.7 of the Plan to (i) assume all liability for the NAS Monitoring Channeled Claims, (ii) hold the MDT NAS Monitoring Claim and collect the Initial NAS Monitoring Trust Distribution and additional payments due under the MDT NAS Monitoring Claim in accordance with the Private Entity Settlements and the NAS Monitoring Trust Documents, (iii) administer NAS Monitoring Channeled Claims and (iv) make Abatement Distributions to Authorized Recipients for Authorized Abatement Purposes, in each case in accordance with the NAS Monitoring TDP.

"**NAS Monitoring Trust Agreement**" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the NAS Monitoring Trust, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and the NAS Committee and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement.

"**NAS Monitoring Trust Documents**" means the NAS Monitoring Trust Agreement and the NAS Monitoring TDP.

"**NAS PI Channeled Claim**" means (i) any NAS PI Claim or (ii) any Released Claim or Shareholder Released Claim that is for alleged opioid-related personal injury to an NAS Child or that is a similar opioid-related ~~claim or~~ Cause of Action asserted by or on behalf of an NAS Child, in each case, that arose prior to the Petition Date, and that is not a Third-Party Payor Channeled Claim, an NAS Monitoring Channeled Claim or a Hospital Channeled Claim, or held by a Domestic Governmental Entity. NAS PI Channeled Claims shall be channeled to the PI Trust in accordance with the Master TDP.

"**NAS PI Claim**" means any Claim against any Debtor that is for alleged opioid-related personal injury to an NAS Child or similar opioid-related ~~claim or~~ Cause of Action against any Debtor asserted by or on behalf of an NAS Child, in each case, that arose prior to the Petition Date, and that is not a Third-Party Payor Claim, an NAS Monitoring Claim or a Hospital Claim, or held by a Domestic Governmental Entity.

"**NAS PI Portion**" means 6.43% (up to an aggregate amount equal to $45 million) of amounts distributed to the PI Trust under the Plan, which amount is gross of applicable PI Trust Deductions and Holdbacks.

"**NAS PI TDP**" means the trust distribution procedures to be implemented by the PI Trust with respect to NAS PI Channeled Claims, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and the NAS Committee and reasonably acceptable to the Ad Hoc Group of Individual Victims, the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement (it being understood and agreed that the form of NAS PI TDP filed on July 14, 2021 is acceptable to such parties).

"**Native American Tribe Group**" means the group consisting of the Muscogee (Creek) Nation, a member of the Ad Hoc Committee, the Cheyenne & Arapaho Tribes, an ex officio member of the Creditors' Committee, and other Tribes represented by various counsel from the Tribal Leadership Committee and the MDL Plaintiffs' Executive Committee.

"**Net Prepaid Settlement Amount**" means (i) the amount of a Minimum Required Settlement Payment that is paid prior to its scheduled SSA Payment Date pursuant to a particular

Co-Defendants and ongoing commercial counterparties of NewCo and any Estate Surviving Pre-Effective Date Claims shall be NewCo Transferred Assets.

"***NewCo/TopCo Governance Term Sheet***" means the governance term sheet for NewCo and TopCo attached as Appendix F to the Disclosure Statement.

"***Newly Consenting States***" means the members of the Non-Consenting States Group that agreed to support the Plan on the terms set forth in the *Mediator's Report* filed with the Bankruptcy Court on July 7, 2021 [D.I. 3119].

"***NOAT***" means the National Opioid Abatement Trust, a Delaware statutory trust to be established in accordance with Section 5.7 of the Plan to (i) assume all liability for the Non-Federal Domestic Governmental Channeled Claims, (ii) hold the MDT NOAT Interest and the TopCo NOAT Interest and collect the Initial NOAT Distribution (*less* the Public Schools' Special Education Initiative Contribution) and other Public Creditor Trust Distributions received in accordance with the Public Entity Settlements, (iii) administer Non-Federal Domestic Governmental Channeled Claims and (iv) make Abatement Distributions to Authorized Recipients for Authorized Abatement Purposes, in each case in accordance with the NOAT TDP.

"***NOAT Agreement***" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of NOAT, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the DOJ and the Governmental Consent Parties, in consultation with the Debtors and the Creditors' Committee, and which shall be filed by the Debtors with the Plan Supplement.

"***NOAT Documents***" means the NOAT Agreement and the NOAT TDP.

"***NOAT TDP***" means the trust distribution procedures to be implemented by NOAT setting forth the procedures for the distribution of Abatement Distributions by NOAT to Authorized Recipients and the Authorized Abatement Purposes for Abatement Distributions from NOAT, which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the DOJ and the Governmental Consent Parties, in consultation with the Debtors and the Creditors' Committee, and which shall be filed by the Debtors with the Plan Supplement (it being understood and agreed that the form of NOAT TDP filed on July 14, 2021 is acceptable to such parties).

"***Non-Consenting States Group***" means the Ad Hoc Group of Non-Consenting States identified in the *Verified Statement of the Ad Hoc Group of Non-Consenting States Pursuant to Bankruptcy Rule 2019* [D.I. 296].

"***Non-Federal Acute Care Hospital***" means and includes (i) all non-federal acute care hospitals as defined by the Centers for Medicare & Medicaid Services, and (ii) all non-federal hospitals and hospital districts that are required by law to provide inpatient acute care and/or fund the provision of inpatient acute care.

"***Non-Federal Domestic Governmental Channeled Claim***" means (i) any Non-Federal Domestic Governmental Claim or (ii) any Released Claim or Shareholder Released Claim that is held by a Domestic Governmental Entity other than the United States or a Tribe. Non-Federal Domestic Governmental Channeled Claims shall be channeled to NOAT in accordance with the Master TDP.

"***Non-Federal Domestic Governmental Claim***" means any Claim against any Debtor that is held by a Domestic Governmental Entity other than the United States or a Tribe (including any Claim

based on the subrogation rights of the Holder thereof that is not an Other Subordinated Claim), and that is not a Priority Tax Claim.

"**Non-NAS PI Channeled Claim**" means (i) any Non-NAS PI Claim or (ii) any Released Claim or Shareholder Released Claim that is for alleged opioid-related personal injury or that is a similar opioid-related ~~claim or~~ Cause of Action, in each case, that arose prior to the Petition Date, and that is not an NAS PI Channeled Claim, a Third-Party Payor Channeled Claim, an NAS Monitoring Channeled Claim or a Hospital Channeled Claim, or held by a Domestic Governmental Entity. Non-NAS PI Channeled Claims shall be channeled to the PI Trust in accordance with the Master TDP.

"**Non-NAS PI Claim**" means any Claim against any Debtor that is for alleged opioid-related personal injury or other similar opioid-related ~~claim or~~ Cause of Action against any Debtor, in each case, that arose prior to the Petition Date, and that is not an NAS PI Claim, a Third-Party Payor Claim, an NAS Monitoring Claim or a Hospital Claim, or held by a Domestic Governmental Entity.

"**Non-NAS PI Portion**" means (i) all amounts distributed to the PI Trust under the Plan *less* (ii) the NAS PI Portion, which amount is gross of applicable PI Trust Deductions and Holdbacks.

"**Non-NAS PI TDP**" means the trust distribution procedures to be implemented by the PI Trust with respect to Non-NAS PI Channeled Claims, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and the Ad Hoc Group of Individual Victims and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement (it being understood and agreed that the form of Non-NAS PI TDP filed on July 14, 2021 is acceptable to such parties).

"**Notice of Shareholder Release Snapback**" means a notice filed with the Bankruptcy Court by the Master Disbursement Trust pursuant to the Shareholder Settlement Agreement providing notice that a Shareholder Family Group is in Specified Breach (as defined in the Shareholder Settlement Agreement) and the Master Disbursement Trust has elected to enforce the Shareholder Release Remedy and identifying the Breaching Shareholder Family Group and the Designated Shareholder Released Parties subject to such Shareholder Release Remedy.

"**Opioid Proceeds**" means any profits or proceeds derived from the development, production, manufacture, licensing, labeling, marketing, distribution or sale of opioid products by NewCo or the disposition of NewCo's opioid businesses.

"**Opioid-Related Activities**" means the development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of opioid Products or the use or receipt of any proceeds therefrom, including as described in greater detail in the DOJ Resolution, or the use <u>or misuse</u> of opioids, including opioids that are not Products.

"**Other Federal Agency Claim**" means any Claim filed by the United States Department of Health and Human Services, the United States Department of Veterans Affairs, the Indian Health Service and the Centers for Medicare & Medicaid Services, set forth in Proof of Claim Nos. 138509, 137406, 137782 and 138522, respectively.

"**Other General Unsecured Claim**" means any Claim against any Debtor that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Federal Government Unsecured Claim, a Channeled Claim, a Ratepayer Claim, a Co-Defendant Claim, an Other Subordinated Claim, an Avrio General Unsecured Claim, an Adlon General Unsecured Claim, an Intercompany Claim or a Shareholder Claim.

"***Other General Unsecured Claim Cash***" means $15 million of Effective Date Cash to be used to make Distributions to Holders of Allowed Other General Unsecured Claims.

"***Other Priority Claim***" means any Claim against any Debtor that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code and is not an Administrative Claim or a Priority Tax Claim.

"***Other Subordinated Claim***" means any Claim against any Debtor that is subject to subordination under section 509(c) or 510 of the Bankruptcy Code or other applicable law, and that is not a Co-Defendant Claim or a Shareholder Claim. Notwithstanding anything to the contrary outside of this definition in the Plan, any Claim that satisfies the definition of an Other Subordinated Claim shall be an Other Subordinated Claim notwithstanding that such Claim would otherwise satisfy the definition of another type of Claim.

"***PAT Agreement***" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the Plan Administration Trust, as it may be amended from time to time, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors, and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement.

"***PAT Assets***" means (i) the PAT Reserves, (ii) the PAT Distribution Accounts, (iii) the Retained Causes of Action relating solely to, and only to the extent necessary for, the administration of Claims against the Debtors (other than Channeled Claims), the enforcement of the Plan Administration Trust's rights and the other responsibilities of the Plan Administration Trust, *provided* that no Retained Causes of Action against Excluded Parties shall constitute PAT Assets, except as necessary to object to and resolve any Disputed Claims held by an Excluded Party, (iv) the Excluded Privileged Materials and (v) any other Excluded Assets that are not MDT Transferred Assets.

"***PAT Distribution Account***" means one or more accounts to be established to make Distributions in respect of Allowed Federal Government Unsecured Claims, Allowed Avrio General Unsecured Claims, Allowed Adlon General Unsecured Claims and Allowed Other General Unsecured Claims (which may be a single or collective account for one or more Classes of Claims). The PAT Distribution Account shall be (i) funded on the Effective Date in accordance with Section 5.13(a)(viii) of the Plan in an amount necessary to make Distributions in respect of such Claims to the extent Allowed as of the Effective Date and periodically funded thereafter in accordance with Section 7.6 of the Plan and (ii) held by the Plan Administration Trust and administered by the Plan Administration Trustee.

"***PAT Distribution Date***" means any date upon which a Distribution is made by the Plan Administration Trustee.

"***PAT Reserves***" means, collectively, the Wind-Up Reserve, the Disputed Claims Reserves, the Disputed Cure Claims Reserve and the Priority Claims Reserve.

"***PBGC***" means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation, and an agency of the United States created by ERISA.

"***Pending Opioid Actions***" means the judicial, administrative or other actions or proceedings or Causes of Actions that were or could have been commenced before the commencement of the Chapter 11 Cases and that are identified in the charts annexed as Appendix II and Appendix III to the Preliminary Injunction, as well as any other pending actions against any of the Debtors, Released Parties

or Shareholder Released Parties alleging substantially similar facts or ~~causes~~Causes of ~~action~~Action as those alleged in the actions identified in those appendices.

"*Person*" means an individual (including, without limitation, in his or her capacity as a trustee, protector or executor), corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust or trustee, protector, executor, estate, unincorporated organization, Governmental Unit, Tribe or other Entity.

"*Petition Date*" means September 15, 2019.

"*PI Channeled Claim*" means any NAS PI Channeled Claim or Non-NAS PI Channeled Claim.

"*PI Claim*" means any NAS PI Claim or Non-NAS PI Claim.

"*PI Futures TDP*" means, the trust distribution procedures to be implemented by the PI Futures Trust with respect to Future PI Channeled Claims, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and the Creditors' Committee and reasonably acceptable to the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement.

"*PI Futures Trust*" means the trust to be established in accordance with Section 5.7 of the Plan to (i) assume all liability for the Future PI Channeled Claims, (ii) collect the PI Futures Trust Distribution in accordance with the PI Futures Trust Documents, (iii) administer Future PI Channeled Claims, (iv) make Distributions on account of Allowed Future PI Channeled Claims in accordance with the PI Futures Trust Documents, and (v) carry out such other matters as are set forth in the PI Futures Trust Documents.

"*PI Futures Trust Agreement*" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the PI Futures Trust, the terms of which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and the Creditors' Committee and reasonably acceptable to the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement.

"*PI Futures Trust Distribution*" means the payment of $5 million of Effective Date Cash to the PI Futures Trust on the Effective Date.

"*PI Futures Trust Documents*" means the PI Futures Trust Agreement and the PI Futures TDP.

"*PI TDP*" means, collectively or as applicable, (i) with respect to NAS PI Channeled Claims, the NAS PI TDP and (ii) with respect to Non-NAS PI Channeled Claims, the Non-NAS PI TDP.

"*PI Trust*" means the trust to be established in accordance with Section 5.7 of the Plan to (i) assume all liability for the PI Channeled Claims, (ii) hold the MDT PI Claim and collect the Initial PI Trust Distribution and additional payments due under the MDT PI Claim in accordance with the Private Entity Settlements and the PI Trust Documents, (iii) administer PI Channeled Claims, (iv) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents, (v) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement and (vi) carry out such other matters as are set forth in the PI Trust Documents.

"*Ratepayer Mediation Participants*" means the proposed representatives of classes of privately insured parties who are plaintiffs and proposed class representatives identified in the *Amended Verified Statement of Stevens & Lee, P.C. Pursuant to Bankruptcy Rule 2019* [D.I. 333].

"*RBS Foundation*" means the Raymond and Beverly Sackler Foundation, a New York not-for-profit corporation.

"*RBS Fund*" means the Raymond and Beverly Sackler Fund for the Arts and Sciences, a Delaware not-for-profit and non-stock corporation.

"*Reciprocal Releasee*" means each of the following: (i) the Debtors and their Estates; (ii) the Supporting Claimants, solely in their respective capacities as such; (iii) all Holders of Claims against or Interests in the Debtors, solely in their respective capacities as such; (iv) each Person that has a Claim or Cause of Action against a Shareholder Released Party relating to or arising out of the Opioid-Related Activities of the Debtors, solely in its capacity as a litigant in connection with such Cause of Action; and (v) each Settling Co-Defendant; and (vi) with respect to each of the Persons in the foregoing clauses (i) through (ivv), each of their Related Parties, solely in their respective capacities as such; *provided* that no Shareholder Released Party shall be a Reciprocal Releasee.

"*Reinstated*" means, with respect to any Claim against or Interest in a Debtor, that such Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

"*Related Parties*" means, with respect to a Person, (i) such Person's predecessors, successors, assigns, Subsidiaries, affiliates, managed accounts or funds, past, present and future officers, board members, directors, principals, agents, servants, independent contractors, co-promoters, third-party sales representatives, medical liaisons, members, partners (general or limited), managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys and legal representatives, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals and advisors, trusts (including trusts established for the benefit of such Person), trustees, protectors, beneficiaries, direct or indirect owners and/or equityholders, parents, transferees, heirs, executors, estates, nominees, administrators, and legatees, in each case in their respective capacities as such, and; (ii) the Related Parties of each of the foregoing, in each case in their respective capacities as such; and (iii) solely with respect to the Settling Co-Defendants, any insurer of any Settling Co-Defendant solely in its capacity as such and specifically excluding any MDT Insurer, solely in its capacity as an MDT Insurer. For the avoidance of doubt, the citizens and residents of a State shall not be deemed to be Related Parties of such State solely as a result of being citizens or residents of such State.

"*Released Claims*" means any Claims and Causes of Action released pursuant to Section 10.6(a) and (b) of the Plan.

"*Released Parties*" means, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in Section 10.6(a) of the Plan, (A) the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such and (B) the Settling Co-Defendants and each of their Related Parties; *provided*, *however*, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the

underlying claim against the Released Party is released against the Person to which the Related Party is related.

"***Releases***" means the releases provided for in Section 10.6 of the Plan.

"***Releasing Parties***" means, collectively, (i) the Supporting Claimants, solely in their respective capacities as such, (ii) all Holders of Claims or Causes of Action against, or Interests in, the Debtors, (iii) all Holders of Future PI Channeled Claims, (iv) the Settling Co-Defendants, (v) with respect to each of the Persons in the foregoing clauses (i) through (iiiiv), each of their Related Parties and (vvi) each of the Debtors' Related Parties, in each case, other than any Shareholder Released Party.

"***Reserved MDT Insurance Policies***" means (i) policy number B0509FINMR 1600558 and policy number B0509FINMR 1600559 and (ii) any MDT Insurance Policy that is not listed by policy number in Schedule 2 to the MDT Agreement.

"***Restructuring Steps Memorandum***" means the summary of transaction steps to complete the Restructuring Transactions, which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be included in the Plan Supplement.

"***Restructuring Transactions***" means one or more transactions to occur on or before the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan, including (i) the creation of NewCo and the direct or indirect transfer thereto and vesting therein (or in a Subsidiary of NewCo) of the NewCo Transferred Assets free and clear of Claims, Interests and liabilities in accordance with the NewCo Transfer Agreement, (ii) the creation of TopCo and the issuance of the NewCo Interest to TopCo, (iii) the creation of the Master Disbursement Trust and the transfer thereto and vesting therein of the MDT Transferred Assets, (iv) the creation of the Plan Administration Trust and the vesting therein of the PAT Assets, (v) the creation of NOAT and the Tribe Trust and the consummation of the Public Entity Settlements, consisting of the payment of the Initial Public Creditor Trust Distributions and the issuance of the MDT Interests and the TopCo Interests, (vi) the creation of the Private Creditor Trusts and the consummation of the Private Entity Settlements, consisting of the payment of the Initial Private Creditor Trust Distributions and the issuance of the MDT Private Claims, (vii) the creation and funding of the Priority Claims Reserve and the PAT Distribution Account to make Distributions in respect of Allowed Claims (other than Channeled Claims), (viii) the payment of the Truth Initiative Contribution in satisfaction of the Ratepayer Claims, (ix) entry into the Shareholder Settlement, including the Shareholder Releases and the Channeling Injunction for the benefit of the Shareholder Released Parties in exchange for, among other things, the contribution of funds to the Master Disbursement Trust pursuant to the Shareholder Settlement Agreement, (x) the Releases, injunctions and exculpations set forth herein and in the Confirmation Order and (xi) the transactions set forth in the Restructuring Steps Memorandum.

"***Retained Causes of Action***" means all Estate Causes of Action that are not expressly settled or released under the Plan on or prior to the Effective Date, and which shall include all Causes of Action against Excluded Parties and the Causes of Action set forth on the Schedule of Retained Causes of Action. Any and all Estate Causes of Action against any Settling Co-Defendant (other than any Estate Causes of Action against any Settling Co-Defendant expressly preserved against such Settling Co-Defendants in Section 10.6 of the Plan) are not Retained Causes of Action and are released under the Plan.

"***Sackler Family Members***" means (i) Raymond R. Sackler and Mortimer D. Sackler, (ii) all Persons who are descendants of either Raymond R. Sackler or Mortimer D. Sackler, (iii) all current

and former spouses of any individual identified in the ~~forgoing~~ foregoing clause (i) or (ii), and (iv) the estate of any individual identified in the foregoing clause (i), (ii) and (iii).

"*Schedule of Excluded Parties*" means the schedule of Excluded Parties filed by the Debtors with the Plan Supplement, which shall include only Persons agreed to by the Debtors and the Governmental Consent Parties, in consultation with the Creditors' Committee.

"*Schedule of Rejected Contracts*" means the schedule of all executory contracts and unexpired leases to be rejected by the Debtors, if any, filed by the Debtors with the Plan Supplement, which shall be in form and substance acceptable to the Debtors and reasonably acceptable to the Governmental Consent Parties, in consultation with the Creditors' Committee.

"*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action filed by the Debtors with the Plan Supplement, which shall be in form and substance acceptable to the Debtors and the Governmental Consent Parties and reasonably acceptable to the Creditors' Committee.

"*Scheduled*" means, with respect to any Claim against the Debtors, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

"*Scheduled MDT Distribution Date*" means (i) the date that is one (1) Business Day after the initial NewCo Distribution Date and (ii) July 31, 2023 and each twelve (12)-month anniversary thereof, until the MDT Claims are paid in full; *provided* that, if an Escrow Period is then in effect on any such date, such Scheduled MDT Distribution Date shall be the next Business Day following the termination of such Escrow Period.

"*Schedules*" means the schedules of assets and liabilities, statements of financial affairs, lists of Holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court to the extent such filing is not waived pursuant to an order of the Bankruptcy Court.

"*Secured Claim*" means any Claim against any Debtor to the extent such Claim is (i) secured by a valid, perfected and non-avoidable Lien on property of a Debtor's Estate, the amount of which is equal to or less than the value of such property (A) as set forth in this Plan, (B) as agreed to by the Holder of such Claim and the Debtors, or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) subject to any setoff right of the Holder of such Claim under section 553 of the Bankruptcy Code. "Secured Claim" does not include any Claim that meets the definition of "Priority Tax Claim."

"*Securities Act*" means the Securities Act of 1933, as amended.

"*Separation Agreement*" means the agreements entered into in accordance with the Shareholder Settlement Agreement to govern continuing business relationships and claims among the Debtors, NewCo and any entities owned directly or indirectly by the Shareholder Payment Parties, Sackler Family Members or trusts established by or for the benefit of the Sackler Family Members.

"*Settled Canadian Patient Claims*" means the "Settled Patient Claims" as defined in the Canadian Patient Claim Settlement Stipulation.

"*Settling Co-Defendant*" means (i) any Person that is a signatory to the *Joint Objection of Certain Distributors, Manufacturers, and Pharmacies to the Sixth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3306] and/or (ii) any Co-Defendant that objected,

formally or informally, or reserved rights with respect to the assumption and assignment of any contract pursuant to the Plan.

"*Settling Executive Stipulation*" means the *Stipulation in Connection with the Debtors' Chapter 11 Plan of Reorganization* [D.I. 3543].

"*Settling Executives*" means Mark Timney and John H. Stewart, each a former executive of Purdue.

"*Settling MDT Insurer*" means an Insurance Company that has entered into an MDT Insurance Settlement, solely in its capacity as such and solely with respect to any MDT Insurance Policy released in such MDT Insurance Settlement.

"*Settling MDT Insurer Injunction*" means the injunction issued pursuant to Section 10.11 of the Plan.

"*Shareholder Claim*" means any Claim against any Debtor or that seeks to recover from any property of any Debtor or its Estate, including from any MDT Insurance Policy, in each case, that is held by a Shareholder Released Party (other than any current or former director, officer or employee of the Debtors that is not a Sackler Family Member). Notwithstanding anything to the contrary outside of this definition in the Plan, any Claim that satisfies the definition of a Shareholder Claim shall be a Shareholder Claim notwithstanding that such Claim would otherwise satisfy the definition of another type of Claim.

"*Shareholder Family Group*" has the meaning ascribed to the term "Family Group" in the Shareholder Settlement Agreement.

"*Shareholder Payment Group*" has the meaning ascribed to the term "Payment Group" in the Shareholder Settlement Agreement.

"*Shareholder Payment Party*" means the Shareholder Released Parties that are parties to the Shareholder Settlement Agreement.

"*Shareholder Prepayment*" means any payment of all or any portion of a Minimum Required Settlement Payment to the Master Disbursement Trust prior to the scheduled SSA Payment Date for such Minimum Required Settlement Payment as set forth in the Shareholder Settlement Agreement.

"*Shareholder Release Remedy*" has the meaning ascribed to the term "Release Remedy" in the Shareholder Settlement Agreement.

"*Shareholder Release Snapback Parties*" means, collectively, the Designated Shareholder Released Parties and all members of any Shareholder Family Group.

"*Shareholder Released Claims*" means any ~~Claims and~~ Causes of Action released pursuant to Section 10.7(a) and (b) of the Plan.

"*Shareholder Released Parties*" means, collectively, (i) the Shareholder Payment Parties; (ii) the Designated Shareholder Released Parties and the Persons identified on Appendix H to the Disclosure Statement; (iii) all Persons directly or indirectly owning an equity interest in any Debtor on the date on which such Debtor commenced its Chapter 11 Case; (iv) Sackler Family Members; (v) all trusts for the benefit of any of the Persons identified in the foregoing clause (iv) and the past, present and future trustees (including, without limitation, officers, directors and employees of any such trustees that are

corporate or limited liability company trustees and members and managers of trustees that are limited liability company trustees), protectors and beneficiaries thereof, solely in their respective capacities as such; (vi) all Persons (other than the Debtors) ~~in~~to which ~~any~~property or funds of the Persons identified in any of the foregoing clauses (i) through (v) ~~own,~~have been or are directly or indirectly~~, an Interest and/or any other Person that has otherwise received or will receive grants, gifts, property or funds from any of the Persons identified in any of the foregoing clauses (i) through (v~~ transferred (including for charitable or philanthropic purposes), solely in ~~their respective~~such Persons' capacities as ~~such~~transferees and solely to the extent of any property transferred to them); and (vii) with respect to each Person in the foregoing clauses (i) through (vi), such Person's (A) predecessors, successors, permitted assigns, subsidiaries (other than the Debtors), controlled affiliates, spouses, heirs, executors, estates and nominees, in each case solely in their respective capacities as such, (B) current and former officers and directors, principals, members, employees, financial advisors, attorneys (including, without limitation, attorneys retained by any director, in his or her capacity as such), accountants, investment bankers (including, without limitation, investment bankers retained by any director, in his or her capacity as such), consultants, experts and other professionals, solely in their respective capacities as such, and (C) property possessed or owned at any time or the proceeds therefrom; provided that the Debtors and the Excluded Parties identified on the Schedule of Excluded Parties shall not be Shareholder Released Parties. For purposes of this definition of "Shareholder Released Parties," the phrase "solely in their respective capacities as such" means, with respect to a Person, solely to the extent (x) a claim arises from actions taken by such Person in the identified capacity in relation to another specified Shareholder Released Party and not in such Person's independent capacity and (y) the underlying claim against such Person is released against such other Shareholder Released Party to which such Person is related. For the avoidance of doubt, ~~the inclusion of~~ any Person that fits within multiple categories above shall be a Shareholder Released Party in all such categories and failure to include any Person that fits within any category above on Appendix H to the Disclosure Statement ~~that also fits within a category above shall not be construed to narrow such category or to support an inference that another Person within such category but not on such Appendix H~~shall not mean that such Person is not a Shareholder Released Party.

"*Shareholder Releases*" means the releases provided for in Section 10.7 of the Plan.

"*Shareholder Settlement*" means the Shareholder Settlement Agreement and the transactions contemplated thereunder, the release and channeling of the Shareholder Released Claims pursuant to the Shareholder Releases and the Channeling Injunction issued for the benefit of the Shareholder Released Parties as set forth in Sections 10.7 and 10.8 of the Plan, the other transactions and terms described in Section 5.2(g) of the Plan and all other terms and provisions of the Plan, the Confirmation Order and the other Plan Documents implementing any of the foregoing.

"*Shareholder Settlement Agreement*" means the settlement agreement to be entered into by and among the Debtors (and/or successors to the Debtors) and the Shareholder Payment Parties, which shall provide for, among other things, the payment of the Shareholder Settlement Amount by the Shareholder Payment Parties to the Master Disbursement Trust in exchange for the Shareholder Releases and the Channeling Injunction with respect to the Shareholder Released Claims, and the terms of which shall be consistent with Articles I through XII of the Plan and the Shareholder Settlement Term Sheet and otherwise acceptable to the Debtors, the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement.

"*Shareholder Settlement Amount*" means Cash in an aggregate amount equal to $4.325 billion, which shall be paid by the Shareholder Payment Parties on the dates and pursuant to the terms set forth in the Shareholder Settlement Agreement.

"*United States*" means the United States of America, its agencies, departments or agents.

"*United States-PI Claimant Medical Expense Claim*" means any healthcare-related claim, Cause of Action or Lien (including a subrogation claim or reimbursement claim), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, (i) against a Holder of a PI Claim or the recoveries of a Holder of a PI Claim pursuant to the PI TDP or under the Plan, (ii) held by any of the following federal governmental agencies or federal health insurance programs: the United States Department of Health and Human Services, on its own behalf and on behalf of its component agencies, which are the Centers for Medicare & Medicaid Services and the Indian Health Service on behalf of its federally-operated programs; the TRICARE Program; and the United States Department of Veterans Affairs, and (iii) on account of opioid injury-related conditional payments made by such programs or agencies to, on behalf of, or in respect of, such Holders of PI Claims. The United States-PI Claimant Medical Expense Claim Settlement does not apply to any claims brought by programs operated by tribes or tribal organizations under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 5301–5423, or programs operated by urban Indian organizations that have a grant or contract with the Indian Health Service under the Indian Health Care Improvement Act, 25 U.S.C. §§ 1601–1685.

"*United States-PI Claimant Medical Expense Claim Releases*" means the releases provided for in Section 5.2(h)(ii) of the Plan.

"*United States-PI Claimant Medical Expense Claim Settlement*" means the settlement provided for in Section 5.2(h) of the Plan.

"*Voting Deadline*" means the last day for Holders of Claims and Interests entitled to vote on the Plan to cast their votes to accept or reject the Plan as may be set by the Bankruptcy Court.

"*Voting Representative*" means a Firm representing Holders of Claims in any of the Master Ballot Classes who has returned a properly completed Solicitation Directive (as such terms are defined in the Solicitation Procedures Order).

"*Willful Misconduct*" means an action taken (or not taken) in bad fath and with actual knowledge that such action (or failure to act) is unlawful, prohibited or false and will be harmful to another. As used herein, the phrase "actual and separate Willful Misconduct" of a Person means that such Person in fact engaged personally and actively in the Willful Misconduct in question and had the requisite state of mind, and not that the act or state of mind of another (or liability therefor) can be imputed to such Person by law, such as on a theory of veil piercing, alter-ego, agency, vicarious liability, constructive notice, control person liability, or otherwise.

"*Willful Non-Opioid Claim*" means a Cause of Action by a Person that is not a Debtor, an Estate, the Master Disbursement Trust, a Creditor Trust, the Plan Administration Trust or any successor of any of the foregoing against a Shareholder Released Party to the extent such Cause of Action (i) is based on such Shareholder Released Party's actual and separate Willful Misconduct, (ii) does not arise from or relate to Opioid-Related Activities, Pending Opioid Actions, or any Products or conduct of the Debtors connected in any way to opioids, opioid use or misuse, or the consequences thereof, (iii) is not based upon and does not arise from the same allegations, facts or evidence as any Pending Opioid Action, and (iv) has been authorized to proceed by the Bankruptcy Court in accordance with Section 11.01(e) of the Plan.

"*Willful Related Party Claim*" means a Cause of Action by a Person that is not a Debtor, an Estate, the Master Disbursement Trust, a Creditor Trust, the Plan Administration Trust or any

successor of any of the foregoing against a Person described in subsection (vii)(B) of the definition of "Shareholder Released Party," and no other portion of such definition, to the extent such Cause of Action (i) is based on the actual and separate Willful Misconduct of such Person, and (ii) has been authorized to proceed by the Bankruptcy Court in accordance with Section 11.01(e) of the Plan.

"***Wind-Up Reserve***" means a reserve to be established to pay any and all costs, expenses, fees, taxes, debts, or obligations incurred from the operation and administration of the Debtors' Estates after the Effective Date (including professional fees and expenses). The Wind-Up Reserve shall be (i) funded with Effective Date Cash in an amount determined by the Debtors, in consultation with the Creditors' Committee and the Governmental Consent Parties, and, to the extent of any deficiency of funding in the Wind-Up Reserve after the Effective Date, Cash from NewCo (or any purchaser of, or successor to, NewCo) and (ii) held by the Plan Administration Trust in a segregated account and administered by the Plan Administration Trustee on and after the Effective Date.

## 1.2 *Interpretation; Application of Definitions; Rules of Construction*.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof. The words "herein," "hereof," or "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," and "under the Plan," respectively. The words "includes" and "including" are not limiting. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the reference document shall be substantially in that form or substantially on those terms and conditions; (c) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (d) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## 1.3 *Reference to Monetary Figures*.

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

## 1.4 *Controlling Document*.

In the event of an inconsistency between Articles I through XII of the Plan and the Plan Supplement, the terms of Articles I through XII of the Plan shall control, except that in the event of an inconsistency between Articles I through XII of the Plan and the Shareholder Settlement Agreement (or any agreements ancillary to the Shareholder Settlement Agreement), the Shareholder Settlement Agreement (or such ancillary agreement) shall control. In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, *however*, that, if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be reconciled, then, the provisions of the

(ii)    Compromised and settled or canceled and extinguished with no distribution on account thereof.

(b)    Impairment and Voting: Intercompany Claims are either Unimpaired or Impaired with no distribution on account thereof. Holders of Intercompany Claims are either conclusively presumed to accept this Plan pursuant to section 1126(f) of the Bankruptcy Code or deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Claims.

### 4.15    *Shareholder Claims (Class 13)*.

(a)    Treatment: Holders of Shareholder Claims shall not receive or retain any property on account of such Claims. As of the Effective Date, in accordance with the terms of and except as otherwise expressly provided in the Shareholder Settlement, all Shareholder Claims shall automatically, and without further act, deed or court order, be deemed to have been released without any distribution on account thereof, and such Claims shall be of no further force or effect.

(b)    Impairment and Voting: Shareholder Claims are Impaired. Holders of Shareholder Claims are deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Shareholder Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Shareholder Claims.[2]

### 4.16    *Co-Defendant Claims (Class 14)*.

(a)    Treatment: ~~All Co-Defendant Claims are Disputed and the Debtors shall seek Disallowance of such Claims pursuant to a separate motion to be filed by the Debtors with the Bankruptcy Court. If any~~In full and final satisfaction and release of each Co-Defendant Claim ~~is ultimately Allowed, such Claim shall be subordinated pursuant to the Plan and section 509(c) and/or section 510 of the Bankruptcy Code.[3]As a result of such subordination or Disallowance, Holders of Co-Defendant Claims shall~~, the Holder thereof shall (i) not receive or retain any property on account of such ~~Claims~~Co-Defendant Claim and not have any recourse to any Debtor or any Assets of any Debtor, any Estate or any Assets of any Estate, or any other Protected Party or any Assets of any Protected Party and (ii) retain its Co-Defendant Defensive Rights, which may be exercised solely in accordance with Section 10.18. As of the Effective Date, ~~all~~ Co-Defendant Claims shall be ~~released in accordance with Section 8.4 of the Plan or otherwise~~ deemed expunged, released and extinguished without further action by or order of the Bankruptcy Court ~~with no distribution on account thereof~~, and shall be of no further force or effect. ~~To the extent necessary, the Confirmation Order shall contain findings supporting the conclusions providing for such subordination of such Claims for the purposes of Distribution on the terms set forth in this Section 4.16. Subject to the Solicitations Procedure Order, each Holder of a Co-Defendant Claim shall be provided a notice informing each such Holder of the proposed treatment of such Claim under the Plan, and affording such Holder the opportunity to object to such treatment or to the subordination of such Claim.~~Notwithstanding the release, satisfaction, expungement and extinguishment of Co-Defendant Claims, a Co-Defendant retains its Co-Defendant Defensive Rights, which includes the

---

[2] Although Holders of Shareholder Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, the Shareholder Payment Parties, in all capacities (including as Holders of Claims), have agreed to support the Plan pursuant to the Shareholder Settlement Agreement.

~~[3] Any effort or request to reduce, disallow, estimate or subordinate any Co-Defendant Claim must be initiated by filing a separate objection or motion and comply with Paragraph 5 of the *Amended Order Granting Debtors' Motion for Order Establishing Confirmation Schedule and Protocols* [D.I. 2894].~~

ability to recover from Persons that are not Protected Parties or from any insurance policies that are not Purdue Insurance Policies or other insurance policies of Protected Parties.

(b)    <u>Impairment and Voting</u>: Co-Defendant Claims are Impaired. Holders of Co-Defendant Claims are deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Co-Defendant Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Co-Defendant Claims.

### 4.17     *Other Subordinated Claims (Class 15)*.

(a)    <u>Treatment</u>: Other Subordinated Claims are subordinated pursuant to the Plan and section 509(c) and/or 510 of the Bankruptcy Code and/or other applicable law. Holders of Other Subordinated Claims shall not receive or retain any property under this Plan on account of such Claims. As of the Effective Date, Other Subordinated Claims shall be deemed expunged, released and extinguished without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(b)    <u>Impairment and Voting</u>: Other Subordinated Claims are Impaired. Holders of Other Subordinated Claims are deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Other Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Other Subordinated Claims.

### 4.18     *PPLP Interests (Class 16)*.

(a)    <u>Treatment</u>: In accordance with the terms of the Shareholder Settlement Agreement, Holders of PPLP Interests shall relinquish such Interests and shall not receive or retain any property under the Plan on account of such Interests. As of the PPLP Dissolution Date, all PPLP Interests shall be deemed surrendered, canceled and/or redeemed without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(b)    <u>Impairment and Voting</u>: PPLP Interests are Impaired. Holders of PPLP Interests are deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of PPLP Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such PPLP Interests.

### 4.19     *PPI Interests (Class 17)*.

(a)    <u>Treatment</u>: In accordance with the terms of the Shareholder Settlement Agreement, Holders of PPI Interests shall relinquish such Interests and shall not receive or retain any property under this Plan on account of such Interests. As of the Effective Date, PPI Interests shall be deemed surrendered, canceled and/or redeemed without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(b)    <u>Impairment and Voting</u>: PPI Interests are Impaired. Holders of PPI Interests are deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of PPI Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such PPI Interests.

(h) **United States-PI Claimant Medical Expense Claim Settlement**. The United States-PI Claimant Medical Expense Claim Settlement is as follows:

(i) On the Effective Date of the Plan, the PI Trust shall be deemed, without further action of the Bankruptcy Court or the PI Trust, to have irrevocably assigned to the United States the PI Trust's right to receive $26 million from the Master Disbursement Trust, which amount shall be paid by the Debtors or the Master Disbursement Trust, as applicable, to the United States in installments equal to 3.7143% of the amounts otherwise distributable to the PI Trust under the Plan in the form of the Initial PI Trust Distribution and payments made on account of the MDT PI Claim, and on the same distribution schedule as such distributions to the PI Trust, until the United States has received payments aggregating to $26 million. For the avoidance of doubt, in no event shall (A) the stated amount of the Initial PI Trust Distribution or the stated amount of the MDT PI Claim be altered in a manner that would reduce the aggregate amount to be paid to the United States pursuant to this Section 5.2(h)(i) of the Plan, (B) the aggregate amount paid to the United States pursuant to this Section 5.2(h)(i) of the Plan exceed $26 million, or (C) the United States' claim against the Master Disbursement Trust arising from the assignment described in this Section 5.2(h)(i) of the Plan be released until the United States has received payments thereof aggregating to $26 million. Should the PI Trust obtain recoveries under the Plan from a source other than the Master Disbursement Trust as a result of litigation following and resulting from either a modification of the MDT Insurer Injunction pursuant to Section 10.10 of the Plan or election by the Master Disbursement Trust of a Shareholder Release Remedy, the PI Trust shall pay over 3.7143% of any such recoveries to the United States until the United States shall have received payments aggregating to $26 million pursuant to the United States-PI Claimant Medical Expense Claim Settlement. The United States shall have the right to enforce the obligations set forth in this Section 5.2(h)(i) of the Plan notwithstanding the United States-PI Claimant Medical Expense Claim Releases.

(ii) Notwithstanding Section 10.19 of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the PI Trust, each Holder of a PI Claim and, in respect of each of the PI Trust and each Holder of a PI Claim, its respective agents, representatives, heirs, successors and assigns, in their respective capacities as such, shall, without any further action by the Bankruptcy Court, be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by each Holder of a United States-PI Claimant Medical Expense Claim of all United States-PI Claimant Medical Expense Claims and all ~~claims and~~ Causes of Action based on or relating to, or in any manner

arising from, in whole or in part, the United States-PI Claimant Medical Expense Claim Settlement (other than a ~~claim or~~ Cause of Action to enforce the United States-PI Claimant Medical Expense Claim Settlement, including, but not limited to, the release set forth in Section 5.2(h)(iii) of the Plan) that each Holder of a United States-PI Claimant Medical Expense Claim has asserted or could assert on its own behalf or on behalf of another Person or party, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), against the PI Trust, a Holder of a PI Claim, Distributions to Holders of PI Claims pursuant to the PI TDP or under the Plan and, in respect of each of the PI Trust and each Holder of a PI Claim, its respective agents, representatives, heirs, successors and assigns, in their respective capacities as such; *provided*, *however*, that, if a Holder of a PI Claim commences a legal action against a Holder of a United States-PI Claimant Medical Expense Claim challenging all or any portion of the United States-PI Claimant Medical Expense Claim Settlement, then, from and after the commencement of such legal action, the United States-PI Claimant Medical Expense Claim Release shall be *void ab initio* solely with respect to such Holder of a PI Claim, and the heirs, successors and assigns of such Holder of a PI Claim, in their capacities as such, and not with respect to any other Person or party, including, but not limited to, the PI Trust, counsel to such Holder of a PI Claim and, in respect of each of the PI Trust and such counsel, its respective agents, representatives, heirs, successors and assigns, in their respective capacities as such; *provided further* that no such legal action against a Holder of a United States-PI Claimant Medical Expense Claim shall impair or reduce the amount that the United States shall receive pursuant to Section 5.2(h)(i). Nothing in this Section 5.2(h)(ii) creates any rights of a Holder of a PI Claim to sue the United States or any of its agencies, including a Holder of a United States-PI Claimant Medical Expense Claim, and the United States and its agencies reserve all rights and defenses in that regard; and nothing in this paragraph is or shall be deemed a waiver of any applicable sovereign immunity with respect to any legal action against the United States or any of its agencies challenging all or any portion of the United States-PI Claimant Medical Expense Claim Settlement brought by a Holder of a PI Claim or the heirs, successors or assigns of such Holder of a PI Claim, in their capacities as such.

(iii)    As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a United States-PI Claimant Medical Expense Claim shall, without any further action by the Bankruptcy Court, be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the PI Trust and its agents, representatives, successors and assigns, in their respective

capacities as such, of all ~~claims and~~ Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the United States-PI Claimant Medical Expense Claim Settlement (other than a ~~claim or~~ Cause of Action to enforce the United States-PI Claimant Medical Expense Claim Settlement, including, but not limited to, any United States-PI Claimant Medical Expense Claim Release) that the PI Trust has asserted or could assert on its own behalf or on behalf of another Person or party, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), against a Holder of a United States-PI Claimant Medical Expense Claim and, in respect of each Holder of a United States-PI Claimant Medical Expense Claim, its respective agents, representatives, successors and assigns, in their respective capacities as such.

(iv)     The payments made to the United States pursuant to Section 5.2(h)(i) of the Plan are a prepayment by the PI Trust of amounts that would otherwise be payable by certain Holders of PI Claims to Holders of United States-PI Claimant Medical Expense Claims upon receipt by such Holders of PI Claims of Distributions pursuant to the PI TDP and under the Plan. Such prepayment shall be borne equitably by such Holders of PI Claims in the form of a reduction in the Distributions otherwise payable to such Holders of PI Claims pursuant to the PI TDP.

(v)     The United States Department of Defense, Defense Health Agency (in respect of the TRICARE Program) submits to the jurisdiction of the Bankruptcy Court for purposes of the United States-PI Claimant Medical Expense Claim Settlement, including, but not limited to, the United States-PI Claimant Medical Expense Claim Releases.

(vi)     The United States Department of Health and Human Services, on its own behalf and on behalf of its component agencies, which are the Centers for Medicare & Medicaid Services and the Indian Health Service on behalf of its federally-operated programs; the United States Department of Defense, Defense Health Agency (in respect of the TRICARE Program); and the United States Department of Veterans Affairs submit to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding in respect of the interpretation or enforcement of the United States-PI Claimant Medical Expense Claim Settlement including, but not limited to, the United States-PI Claimant Medical Expense Claim Releases.

## 5.3     *The Plan Administration Trust*.

(a)     **Establishment and Purpose of Plan Administration Trust**. On or before the Effective Date, the Debtors shall take all necessary steps to form the Plan Administration Trust

implementation or administration of the Plan or the PAT Agreement, in each case, except for any actions or inactions found by Final Order to be arising out of its willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the Plan Administration Trustee shall be satisfied from the Wind-Up Reserve.

      **5.4**    *NewCo*.

      (a)    **Establishment and Ownership of NewCo**. On or before the Effective Date, NewCo and any Subsidiaries of NewCo shall be formed in accordance with the Plan and the NewCo Operating Agreement. In accordance with the Public Entity Settlements, upon completion of the Restructuring Transactions, TopCo shall hold the NewCo Interest, representing 100% of the voting and economic Interests in NewCo.

      (b)    **Purpose of NewCo**. From and after the Effective Date, NewCo shall operate the NewCo Transferred Assets in accordance with the terms of the NewCo Operating Agreement, and subject to the NewCo Operating Injunction and the NewCo Governance Covenants set forth in the Confirmation Order. NewCo shall be operated in a responsible and sustainable manner, balancing (i) the interests of its stakeholders to fund and provide abatement of the opioid crisis, (ii) effective deployment of its assets to address the opioid crisis and (iii) the interests of those materially affected by its conduct.

      (c)    **Vesting of the NewCo Transferred Assets in NewCo**. On or prior to the Effective Date, pursuant to the Plan and in accordance with the NewCo Transfer Agreement, the NewCo Transferred Assets, including the NewCo Cash, shall be transferred to and vest in NewCo or one or more Subsidiaries of NewCo (other than any NewCo Transferred Assets held by a Transferred Debtor, which shall revest in such Transferred Debtor), in each case free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind; *provided* that NewCo shall comply with its obligations under the Plan, including NewCo's obligations under the NewCo Credit Support Agreement, NewCo's obligation to satisfy any deficiency of funding in the Wind-Up Reserve (which obligation shall be assumed by NewCo and any successor to NewCo's business) and NewCo's obligations under Section 5.3(e) of the Plan, and NewCo shall assume the Assumed Liabilities. Except as described in the foregoing sentence, NewCo shall have no liability for, and the NewCo Transferred Assets shall vest in NewCo free and clear of, any prepetition and postpetition ~~Claims,~~ Causes of Action ~~or liabilities~~ of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including, but not limited to, Claims based on successor liability) based on any acts or omissions prior to the Effective Date.

      (d)    **Appointment of the NewCo Managers**. The board of managers of NewCo will consist of five (5) or seven (7) NewCo Managers, each with experience in one or more of the following areas: pharmaceuticals, public policy (including public health policy), law enforcement, ethics and compliance, finance, audit, general business and/or corporate governance issues. The initial NewCo Managers shall be disinterested and independent, and shall be selected by the Governmental Consent Parties, in consultation with the Debtors and the Creditors' Committee, and pursuant to a selection process that is reasonably acceptable to the Debtors; *provided* that the DOJ shall have the right, in its discretion, to observe such selection process.[43] The identity of the initial NewCo Managers shall be included in the Plan Supplement. The appointment of the initial NewCo Managers shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.

---

[43] If determined to be necessary by the Governmental Consent Parties, NewCo may retain one or more of the four independent directors on PPLP's Special Committee for a period of time to serve as interim directors of NewCo to allow for a period of transition and onboarding of NewCo Managers.

NewCo, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith or fraud. Any valid indemnification claim of any TopCo Manager shall be satisfied by TopCo.

5.6     *Master Disbursement Trust*.

(a)     **Establishment and Purpose of the Master Disbursement Trust**. On or before the Effective Date, the Debtors shall take all necessary steps to establish the Master Disbursement Trust in accordance with the Plan and the MDT Agreement. The Master Disbursement Trust shall be established for the purposes described in this Plan and any other purposes more fully described in the MDT Agreement, and shall be subject to the jurisdiction of the Bankruptcy Court. The Master Disbursement Trust shall, in each case in accordance with the Plan and the MDT Agreement:

(i)     hold, manage, sell, invest and distribute the MDT Transferred Assets for the benefit of the MDT Beneficiaries in accordance with the Private Entity Settlements and the Public Entity Settlements;

(ii)     enforce, pursue, prosecute, compromise and/or settle the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights, including monitoring and enforcing the Shareholder Settlement Agreement;

(iii)     make payments in satisfaction of the MDT Claims;

(iv)     make Public Creditor Trust Distributions from MDT Excess Cash; and

(v)     publish on a publicly available website reports received from the Abatement Trusts regarding the disbursement and use of Abatement Distributions and compliance with Authorized Abatement Purposes.

(b)     **Vesting of the MDT Transferred Assets in the Master Disbursement Trust**. The corpus of the Master Disbursement Trust shall consist of the MDT Transferred Assets. On the Effective Date, pursuant to the Plan and in accordance with the MDT Agreement, the MDT Transferred Assets shall be irrevocably transferred to and vest in the Master Disbursement Trust free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind; *provided* that, to the extent certain Assets comprising the MDT Transferred Assets are not known or identified as of the Effective Date, such Assets shall automatically, and without further act or deed, be transferred to and vest in the Master Disbursement Trust upon the discovery or identification thereof, including, with respect to the Surplus Reserve Cash, in accordance with Section 5.13(c) of the Plan. The Master Disbursement Trust shall have no liability for any prepetition or postpetition ~~Claims,~~ Causes of Action ~~or liabilities~~ of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including, but not limited to, Claims based on successor liability) based on any acts or omissions prior to the Effective Date, except as expressly set forth in the Plan and the MDT Agreement; *provided* that the Master Disbursement Trust will assume the Channeled Claims solely for the purpose of effectuating the Master TDP in accordance with Section 5.6(g) of the Plan and issue the MDT Claims and MDT Interests in accordance with the Public Entity Settlements and the Private Entity Settlements. From and after the Effective Date, all proceeds of the MDT Transferred Assets, including without limitation, amounts paid by Insurance Companies under the MDT Insurance Policies and amounts paid under the

76

Disbursement Trust, subject to and only to the extent provided in the MDT Documents, shall have all defenses, cross-claims, offsets and recoupments regarding the Channeled Claims that the Debtors, the Released Parties and the Shareholder Released Parties, as applicable, have, or would have had, under applicable law, but solely to the extent consistent with the MDT Documents and the Plan; *provided* that no such Claims, defenses or rights may be asserted against any Protected Party; and *provided further* that all such defenses, cross-claims, offsets and recoupments regarding any Channeled Claim that is channeled to a Creditor Trust in accordance with the Master TDP shall be transferred to such Creditor Trust with such Channeled Claim, at which point, the Master Disbursement Trust shall no longer have such defenses, cross-claims, offsets and recoupments regarding such Channeled Claim. For the avoidance of doubt, nothing in this <u>Section 5.6(g)</u> shall limit or affect the transfer of the MDT Insurance Rights.

(h)    **MDT Operating Expenses**. On the Effective Date, the Debtors shall establish and fund the MDT Operating Reserve, which shall vest in the Master Disbursement Trust in accordance with <u>Section 5.6(b)</u> of the Plan and be held and maintained by the MDT Trustees. Periodically, until the dissolution of the Master Disbursement Trust, the MDT Trustees will replenish the MDT Operating Reserve from Cash held or received by the Master Disbursement Trust to the extent deemed necessary by the MDT Trustees to satisfy and pay estimated future MDT Operating Expenses. The MDT Trustees shall create and maintain an annual budget of MDT Operating Expenses, which shall be reviewed by the MDT Beneficiaries and reasonably acceptable to the MDT Beneficiaries. All MDT Operating Expenses shall be satisfied and paid from the MDT Operating Reserve. The MDT Trustees and the MDT Executive Director shall be entitled to reasonable compensation and to retain and reasonably compensate counsel and other professionals to assist in the duties of the Master Disbursement Trust on such terms as the MDT Trustees and the MDT Executive Director deem appropriate without Bankruptcy Court approval, subject to the provisions of the MDT Agreement. The initial compensation of the MDT Trustees and the MDT Executive Director shall be reasonably acceptable to the Debtors, the Creditors' Committee and the Governmental Consent Parties, and thereafter shall be subject to the annual budgets prepared by the MDT Trustees.

(i)    **Transfer of the MDT Insurance Rights**. In furtherance of the transfer of the MDT Transferred Assets to the Master Disbursement Trust and in accordance with the MDT Agreement, on the Effective Date, the Debtors shall irrevocably transfer, grant and assign to the Master Disbursement Trust, and the Master Disbursement Trust shall receive and accept, any and all of the MDT Causes of Action and MDT Insurance Rights. To the extent any Insurance Company would be obligated in respect of any MDT Insurance Policy to pay any Channeled Claim on behalf of one or more of the Debtors, the Debtors shall transfer and assign to the Master Disbursement Trust the right to enforce such Insurance Company's obligation. The foregoing transfer shall be (i) free and clear of all ~~Claims, Liens,~~ encumbrances and Causes of Action of any nature whatsoever, (ii) made to the maximum extent possible under applicable law, (iii) absolute and without requirement of any further action by the Debtors, the Liquidating Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Bankruptcy Court or any other Person, and (iv) governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the applicable MDT Insurance Policies. Notwithstanding the foregoing, the Master Disbursement Trust shall become and remain liable in full for and shall satisfy, to the extent required under applicable law, any prospective premiums, deductibles, self-insured retentions and any other amounts or obligations arising in any way out of the receipt of payment from an Insurance Company in respect of the MDT Insurance Rights; *provided* that, for the avoidance of doubt, the Master Disbursement Trust will not be required to pay premiums or any other amounts for Purdue Insurance Policies that are not MDT Insurance Policies. The transfer of the MDT Insurance Rights contemplated in this <u>Section 5.6(i)</u> is not an assignment of any insurance policy itself. The Confirmation Order shall contain findings reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties related to or necessary to preserve all MDT Insurance Rights.

80

(j)        **Transfer of MDT Shareholder Insurance Rights**. On the Effective Date, in consideration of the Shareholder Releases, the Shareholder Released Parties shall irrevocably transfer, grant, and assign to the Master Disbursement Trust, and the Master Disbursement Trust shall receive and accept, any and all MDT Shareholder Insurance Rights. Each Shareholder Released Party shall be deemed to have irrevocably transferred, granted, and assigned to the Master Disbursement Trust any and all MDT Shareholder Insurance Rights without further action and without further consideration to such Shareholder Released Party. Pursuant to the Plan, the foregoing transfer shall be (i) free and clear of all ~~Claims, Liens,~~ encumbrances and Causes of Action of any nature whatsoever, (ii) made to the maximum extent possible under applicable law, (iii) absolute and without requirement of any further action by the Shareholder Released Parties, the Debtors, the Liquidating Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Bankruptcy Court or any other Person, and (iv) governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the MDT Shareholder Insurance Rights. The transfer of the MDT Shareholder Insurance Rights is not an assignment of any insurance policy itself. For the avoidance of doubt, the transfer of the MDT Shareholder Insurance Rights is in addition to the other obligations of the Shareholder Released Parties set forth herein. The Shareholder Released Parties will make best efforts to provide the Master Disbursement Trust access to information and copies of documents that are reasonably necessary to preserve, secure, or obtain the benefit of the MDT Shareholder Insurance Rights, and will comply in all respects with the Plan to preserve, secure, or obtain the benefit of the MDT Shareholder Insurance Rights, including but not limited to the obligations set forth in Section 8.8(b). The Confirmation Order shall contain findings reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties related to or necessary to preserve all MDT Shareholder Insurance Rights. Notwithstanding the foregoing in this paragraph, to the extent that (y) a Shareholder Released Party has, prior to the Effective Date or January 11, 2022 (whichever occurs later), provided notice of a Claim under a Reserved MDT Insurance Policy under which a Shareholder Released Party is covered and (z) such Claim is not one for which such Shareholder Released Party receives the benefit of the Shareholder Releases (a "*Retained Shareholder Insurance Claim*"), such Shareholder Released Party shall not be deemed to have irrevocably transferred, granted, and assigned to the Master Disbursement Trust the Retained Shareholder Insurance Claim, and such Shareholder Released Party shall be entitled to pursue any such Retained Shareholder Insurance Claim prior to and after the Effective Date, *provided* that, notwithstanding the foregoing, with respect to the Retained Shareholder Insurance Claims, each Shareholder Released Party, in consideration of the Shareholder Releases, (A) will confer and fully cooperate with the Master Disbursement Trust in connection with the settlement of all claims or rights under such MDT Insurance Policy, including the Retained Shareholder Insurance Claims, and including but not limited to as set forth in Section 8.8(b)(i) of the Plan, and (B) in the event the Master Disbursement Trust has obtained settlement terms that it deems acceptable in its sole discretion, and such settlement terms include a settlement of any Retained Shareholder Insurance Claim, each Shareholder Released Party with rights under such Retained Shareholder Insurance Claim shall be deemed to consent to the release of any claims or rights held by such Shareholder Released Party against and under such MDT Insurance Policy, with the same effect as if such Shareholder Released Party had executed such settlement agreement, and without further consideration to such Shareholder Released Party from the insurance settlement proceeds or otherwise in respect of such settlement. After the Effective Date or January 11, 2022 (whichever occurs later), no Shareholder Released Party shall be entitled to submit a claim under any MDT Insurance Policy (with the exception of a current or former director, officer, manager, authorized agent or employee that is not a Sackler Family Member, but solely to the extent such individual has a right to submit a claim after the Effective Date pursuant to Section 8.8(b)(ii) of the Plan).

(k)        **Shareholder Insurance Release**. On the Effective Date, in consideration of the Shareholder Releases, all Sackler Family Members shall irrevocably, fully and forever release and discharge any obligation to indemnify and/or to defend the Sackler Family Members under the Isosceles Insurance Ltd. policy number PPLP-01/2019 for any Claim or loss of any type or nature whatsoever,

be paid on periodic schedules for each Private Creditor Trust acceptable to the Governmental Consent Parties, the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the NAS Committee and the Ad Hoc Group of Individual Victims, as applicable. The assessments payable by the Public Schools' Special Education Initiative shall be deducted from and paid at the time of the fee award described in Section 5.8(h)(ii). The amounts in the Common Benefit Escrow shall be held in escrow until an order is entered by the MDL Court establishing a Common Benefit Fund, at which time the amounts held by the Common Benefit Escrow and all subsequent assessments of 5% of each Distribution made by the Private Creditor Trusts shall be transferred to and distributed in accordance with the order of the MDL Court establishing the Common Benefit Fund. To the extent a Holder of a Hospital Channeled Claim, a Third-Party Payor Channeled Claim, an NAS Monitoring Channeled Claim, an NAS PI Channeled Claim or a Non-NAS PI Channeled Claim (or any ad hoc group consisting of Holders of any of the foregoing) has retained counsel through a contingency fee arrangement, any contingency fees owed to such contingency counsel payable from Distributions under the Plan shall be reduced by the full amount payable under this Section 5.8(c).[54] However, the applicable Holder and its counsel, in their sole discretion, may agree that an amount up to but not exceeding 40% of the amount payable under this Section 5.8(c) may be applied to the reimbursement of actual costs and expenses incurred by such Holder's counsel, in which case such agreed cost-reimbursement amount shall not reduce the contingency fee amounts payable to such counsel. For the avoidance of doubt, if the Debtors, the Ad Hoc Committee or the MSGE Group agrees to any reduced or less restrictive terms concerning the 5% Common Benefit Fund assessment (or its implementation) provided under any portion of this Section 5.8(c) (or any portion of Section 5.8) for any of the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the NAS Committee or the Ad Hoc Group of Individual Victims, then such modification shall apply to each of such groups, *mutatis mutandis*.

(d)    **Hospital Costs and Expenses**. On the Effective Date, the Hospital Attorney Fee Fund shall be established for the payment of attorneys' fees and costs of the Ad Hoc Group of Hospitals with respect to Hospital Channeled Claims. The Hospital Attorney Fee Fund shall be funded with (i) 20% of each Abatement Distribution made by the Hospital Trust to Holders of Hospital Channeled Claims that have not retained (or are not part of an ad hoc group that has retained), on or before the General Bar Date as reflected in a timely filed Proof of Claim or representation to the Hospital Trust in accordance with the Hospital TDP, separate counsel through an individual contingency fee arrangement *less* (ii) the amount of such Distributions payable to the Common Benefit Escrow and the Common Benefit Fund under Section 5.8(c). The Hospital Attorney Fee Fund shall be administered by the Hospital Trust on terms acceptable to the Ad Hoc Group of Hospitals.

(e)    **NAS Monitoring Claimant Costs and Expenses**. On the Effective Date, the NAS Monitoring Attorney Fee Fund shall be established for the payment of attorneys' fees and costs of the NAS Committee with respect to NAS Monitoring Channeled Claims. The NAS Monitoring Attorney Fee Fund shall be funded with (i) 20% of each distribution made by the Master Disbursement Trust to the NAS Monitoring Trust *less* (ii) the amount of such Distributions payable to the Common Benefit Escrow and the Common Benefit Fund under Section 5.8(c). Reasonable expert costs incurred by the NAS Committee in the formation of the abatement plan for the NAS Monitoring Trust shall also be paid by the NAS Monitoring Trust, and, for the avoidance of doubt, (x) there shall be no amounts payable to the Common Benefit Escrow or the Common Benefit Fund on account of such cost reimbursements and (y) the 20% limitation on attorneys' fees shall not apply to the foregoing reasonable expert costs. The

---

[54] For the avoidance of doubt, any amount payable to counsel to the Ad Hoc Group of Individual Victims on an hourly basis (including incremental amounts in consideration of deferring payment of hourly fees) shall not constitute a "contingency fee," and the agreement in respect thereof shall not constitute a "contingency fee arrangement," in each case for purposes of Section 5.8 of the Plan.

disclosure to the Master Disbursement Trust and the DOB and shall not be included in the Public Document Repository, nor shall any internal Debtor documents reflecting such communications or the strategy for such communications. The Debtors shall implement this exclusion when creating the set of Sequestered Materials.

(v)      **Documents Produced By Certain Financial Institutions**. The disclosure program shall not include the documents produced by financial institutions pursuant to the examination authorized by the Bankruptcy Court at D.I. 1143. For the avoidance of doubt, if the same information also appears in a second source that is subject to disclosure (e.g., a deposition exhibit), then the information in that second source is subject to disclosure.

(w)      **Active Vendor Contracts**. The Public Document Repository shall not disclose the NewCo's active vendor contracts or expired contracts that would reveal the sum and substance of active contracts. The DOB shall take appropriate steps to implement this exclusion.

(x)      **Exculpation and Indemnification of DOB members and Host Institution**. To the maximum extent permitted by applicable law, the DOB members, whenever appointed, and the Host Institution shall not have or incur any liability for actions taken or omitted in his or her capacity as a DOB member, or on behalf of the DOB, except those acts found to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification, advancement and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or inactions in his or her capacity as a DOB member, except for any actions or inactions found to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the DOB members shall be satisfied from the Disclosure Program Budget.

(y)      **Reports**. On each of the first five anniversaries of the Effective Date, the DOB shall publish a public report describing the activities of the disclosure program, the use of any funds expended, and any funds committed for future use.

(z)      **Wind Down**. In or after January 2026, the DOB shall wind itself down. If appropriate to facilitate the long-term success of the Public Document Repository, the DOB may arrange for another long-lived institution, such as one or more Attorneys General Offices, to interact with the Host Institution after the DOB is wound down (e.g., by receiving reports). Upon the wind down of the DOB, (i) the Host Institution shall be responsible for the permanent maintenance of the Public Document Repository; *provided* that, for avoidance of doubt, the access to the Access Materials and the Sequestered Materials granted to the DOB herein shall not be transferred to any successor institution other than the Host Institution and (ii) any Access Materials or Sequestered Materials in the possession of the DOB but not included in the Public Document Repository, for any reason, shall be, at NewCo's election, delivered to NewCo or destroyed or, if all or substantially all of the Assets of or Interests in NewCo have been sold, destroyed or delivered to Privilege Defense Counsel. Within ninety (90) days of the announcement of the dissolution of the Plan Administration Trust, the Plan Administration Trust shall use commercially reasonable efforts to return Privileged materials to Privilege Defense Counsel who shall retain the materials in a segregated client file.

(aa)      **Master Disbursement Trust**. For the avoidance of doubt, nothing in this Section 5.12 limits the rights of the Master Disbursement Trust, subject to and in accordance with Section 5.11 of the Plan, to access or use Privileged documents, including Excluded Privileged Materials, in connection with any potential or actual ~~disputes, claims, causes of action or litigation~~Causes of Action, including, among other things, any potential or actual ~~disputes, claims, causes of action, or litigation~~Causes of Action contemplated by or that may result from, the Shareholder Settlement

Agreement, including, without limitation, with respect to a ~~claim~~Cause of Action against a Shareholder Release Snapback Party upon the filing of a Notice of Shareholder Release Snapback.

### 5.13    *Effective Date Cash; Surplus Reserved Cash*.

(a)    **Effective Date Fixed Payments**. On the Effective Date, Effective Date Cash shall be used to fund (i) the Professional Fee Escrow Account in an amount necessary to satisfy Professional Fee Claims in accordance with Section 2.1(b) of the Plan, (ii) the Priority Claims Reserve in an amount necessary to satisfy estimated Allowed Administrative Claims (other than Professional Fee Claims and the DOJ Forfeiture Judgment Claim), Allowed Secured Claims and Allowed Priority Claims, (iii) the Disputed Claims Reserves in accordance with Section 7.1 of the Plan, (15) the Disputed Cure Claims Reserve in accordance with Section 8.2(d) of the Plan, (16) the Wind-Up Reserve in accordance with Section 5.3(d) of the Plan, (17) the MDT Operating Reserve in accordance with Section 5.6(f) of the Plan, (18) the Initial NewCo Cash in accordance with Section 5.4(c) of the Plan, (19) the applicable PAT Distribution Account in the amounts necessary to make Distributions required in accordance with Article IV of the Plan in respect of Allowed Adlon General Unsecured Claims and Allowed Avrio General Unsecured Claims, each to the extent Allowed as of the Effective Date, (20) the Truth Initiative Contribution and the attorneys' fees of the Ratepayer Mediation Participants in satisfaction of Ratepayer Claims in accordance with Section 4.8 of the Plan, (21) the Initial Private Creditor Trust Distributions, (22) the Initial Tribe Trust Distribution, (23) the Initial Federal Government Distribution, (24) amounts required to establish the Public Document Repository in accordance with Section 5.12 of the Plan, (25) the upfront insurance premium payments and other amounts in accordance with Sections 5.3(e), 5.4(g) and 5.5(d) of the Plan and (26) any other amounts required to be paid on the Effective Date pursuant to the Plan. No later than five (5) Business Days prior to the Effective Date, the Debtors shall provide notice to the Creditors' Committee and the Governmental Consent Parties of the then-current estimated amount of Effective Date Cash and all amounts described in this Section 5.13(a), and shall promptly notify the Creditors' Committee and the Governmental Consent Parties of any changes to such estimations prior to the Effective Date. Any objection by the Creditors' Committee or the Governmental Consent Parties with respect to the Debtors' proposed amount of funding of any PAT Reserve shall be resolved by the Bankruptcy Court.

(b)    **Initial NOAT Distribution**. On the Effective Date, all Effective Date Cash remaining after the satisfaction of all amounts described in the foregoing paragraph (a) shall be used to make the Initial NOAT Distribution, which is currently estimated to be $220 million.[65] An updated estimate of the Initial NOAT Distribution shall be provided in the Plan Supplement.

(c)    **Surplus Reserved Cash**. Prior to the dissolution of the Plan Administration Trust, the Plan Administration Trustee shall determine, on each six (6)-month anniversary of the Effective Date, whether the amounts available in any PAT Reserve exceed the amounts necessary to satisfy the purpose for which such reserves were established. If the Plan Administration Trustee determines that a surplus exists in any PAT Reserve as of the date of such determination, such Surplus Reserve Cash shall be (i) *first*, used to satisfy any funding deficiency in any other PAT Reserve and (ii) *second*, with respect to any amounts not used to satisfy any such funding deficiency in another PAT Reserve, transferred to the Master Disbursement Trust in accordance with the MDT Agreement. All Cash and cash equivalents of the Plan Administration Trust remaining upon the dissolution of Plan

---

[65] The final amount of the Initial NOAT Distribution on the Effective Date is subject to adjustment for (i) proposed accelerated payments payable on the Effective Date under the Debtors' 2021 key employee incentive plan and 2021 key employee retention plan if approved as proposed, (ii) year-to-date budget to actual adjustments for both operating and non-operating results, (iii) items outside of the Debtors' control, including but not limited to, potential variability in investment monetization proceeds, higher than forecasted restructuring-related professional fees and potential cash collateral necessary to secure insurance coverage for NewCo and TopCo and (iv) other adjustments.

Administration Trustee and a Holder of a Disputed Claim are unable to reach a settlement on the Disputed Claim, such Disputed Claim shall be submitted to the Bankruptcy Court for resolution.

### 7.8    *Property Held in Disputed Claims Reserves*.

Each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall have recourse only to the undistributed Cash held in the applicable Disputed Claims Reserve for satisfaction of the Distributions to which such Holder is entitled under the Plan and the PAT Agreement (net of any costs and expenses, including taxes, of the applicable Disputed Claims Reserve), and not against any Protected Party or any Assets previously distributed on account of any Allowed Claim.

### 7.9    *Claims Resolution Procedures Cumulative*.

All of the objection, estimation, settlement and resolution procedures set forth in this Plan with respect to Claims against the Debtors are intended to be cumulative and not exclusive of one another. Claims against the Debtors may be established and subsequently settled, compromised, withdrawn or resolved in accordance with this Plan by any mechanism approved by the Bankruptcy Court.

### 7.10    *No Postpetition Interest or Penalties on Disputed Claims*.

Unless otherwise specifically provided for in the Plan or the Confirmation Order or required by applicable bankruptcy law, no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date or to any penalties on any Claim. Interest and penalties shall not accrue or be paid upon any Disputed Claim with respect to the period from the Effective Date to the date a Distribution is made thereon, or on and after such Disputed Claim becomes an Allowed Claim.

## ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1    *Assumption and Rejection of Executory Contracts and Unexpired Leases*.

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party, as amended pursuant to subject to the terms of Section 8.4, shall be deemed assumed by the applicable Debtor and, except with respect to any contract or lease held by a Transferred Debtor, assigned to NewCo or its designee, except for any executory contract or unexpired lease that (i) has previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, (ii) is specifically identified on the Schedule of Rejected Contracts, (1) is the subject of a separate assumption or rejection motion filed by the Debtors under section 365 of the Bankruptcy Code pending on the Confirmation Date, (2) is the subject of a pending Contract Dispute or (3) is being otherwise treated pursuant to the Plan. The Debtors reserve the right to modify the treatment of any particular executory contract or unexpired lease pursuant to this Plan. Furthermore, notwithstanding anything to the contrary in the Plan, the Debtors may alter, amend, modify or supplement the Schedule of Rejected Contracts and assume, assume and assign or reject executory contracts and unexpired leases at any time prior to the Effective Date or, with respect to any executory contract or unexpired lease subject to a Contract Dispute that is resolved after the Effective Date, within thirty (30) days following entry of a Final Order of the Bankruptcy Court resolving such Contract Dispute.

(b)    Subject to the occurrence of the Effective Date, the payment of any applicable Cure Amount and the resolution of any Contract Dispute, the entry of the Confirmation Order shall constitute approval of the rejections, assumptions and assumptions and assignments provided for in this Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated herein or provided in a separate order of the Bankruptcy Court, rejections, assumptions and assumptions and

(e)    To the extent an objection is not timely filed and properly served on the Debtors with respect to a Contract Dispute, then the counterparty to the applicable contract or lease shall be deemed to have assented to (i) the Cure Amount proposed by the Debtors and (4) the assumption or assumption and assignment of such contract or lease on the terms set forth in the Plan and the Assumption Notice, notwithstanding any provision of the applicable contract or lease that (a) prohibits, restricts or conditions the transfer or assignment of such contract or lease or (b) terminates or permits the termination of such contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change in the ownership or control as contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan.

(f)    With respect to payment of any Cure Amounts or resolution of Contract Disputes, none of the Debtors, the Plan Administration Trustee, NewCo or any Transferred Debtor shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Cure Claim.

### 8.3    *Payments Related to Assumption of Contracts and Leases*.

(a)    Subject to resolution of any Contract Dispute, any Cure Claim shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Plan Administration Trust from the Priority Claims Reserve or the Disputed Cure Claims Reserve, as applicable, or NewCo in the ordinary course of business upon assumption thereof.

(b)    Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed Disallowed and expunged, without further notice, or action, order or approval of the Bankruptcy Court or any other Person.

### 8.4    *Co-Defendant ~~Indemnification Provisions~~Contracts*.

(a) ~~In the Assumption Notices, the Debtors shall provide notice to all known counterparties that, except~~Except as otherwise provided in the Plan or agreed by any counterparty and the Debtors (with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties, and after consultation with the Creditors' Committee), the ~~Plan shall constitute (i) an amendment to each assumed or assumed and assigned~~assumption of any contract or lease ~~as necessary to render null and void~~under the Plan shall (a) release any Causes of Action on account of any and all terms or provisions ~~thereof~~of such contract or lease solely to the extent such terms or provisions create an obligation of any ~~Debtor~~party thereto (or any assignee thereof), or give rise to a right in favor of any non-Debtor under any MDT Insurance Policy or any other insurance policy of any Protected Party, for the indemnification or reimbursement of any Person for costs, losses, damages, fees, expenses or any other amounts whatsoever relating to or arising from any actual or potential opioid-related litigation or dispute, whether accrued or unaccrued, asserted or unasserted, existing or hereinafter arising, based on or relating to, or in any manner arising from, in whole or in part, Opioid-Related Activities or other conduct occurring prior to the Effective Date; and ~~(ii) an agreement by each~~ (b) constitute a release by each party of each other counterparty ~~to release the Debtors~~(and any assignee thereof or successor thereto) and by

each non-Debtor party of all Insurance Companies, in each case, from any and all ~~obligations, liabilities, Claims,~~ Causes of Action and other rights of recovery arising under or relating to such indemnification and reimbursement rights to the extent relating to any conduct occurring prior to the Effective Date, and an agreement by ~~such party to~~each non-Debtor counterparty to release any and all Co-Defendant Claims held by such party and to channel, in accordance with the Channeling Injunction, all Channeled Claims arising under or relating to such contract, including any such Claims that might otherwise be elevated to administrative status through assumption of such contract or lease. On the Effective Date, (x) all Co-Defendant Claims arising under or related to any such assumed or assumed and assigned contract or lease shall be released and discharged with no consideration on account thereof, and all Proofs of Claim in respect thereof shall be deemed ~~Disallowed and~~ expunged, without further notice, or action, order or approval of the Bankruptcy Court or any other Person and (y) all Channeled Claims arising under or related to any such assumed or assumed and assigned contract or lease shall be channeled in accordance with the Channeling Injunction. For the avoidance of doubt, unless otherwise agreed by the counterparty to any assumed or assumed and assigned contract or lease, the foregoing shall not release or otherwise modify any term or provision of such contract or lease to the extent of any indemnification or reimbursement rights (i) accruing after the Effective Date for conduct occurring after the Effective Date~~.~~, (ii) for any amounts, if any, due to a Co-Defendant as a result of the New York Opioid Stewardship Act (2018 N.Y. Sess. Laws, ch. 57, pt. NN 7 (codified at N.Y. Pub. Health Law § 3323 and N.Y. State Fin. Law § 97-aaaaa)) or (iii) for any Co-Defendant Surviving Pre-Effective Date Claim. Notwithstanding the release, satisfaction, expungement and extinguishment of Co-Defendant Claims, a Co-Defendant retains its Co-Defendant Defensive Rights, which includes the ability to recover from Persons that are not Protected Parties or from any insurance policies that are not Purdue Insurance Policies or other insurance policies of Protected Parties. The counterparty to such contract or lease and all other applicable Persons shall be bound by the terms set forth in this Section 8.4.

~~(b)   To the extent an objection to the amendments and releases described in Section 8.4(a) is not timely filed and properly served on the Debtors with respect to a contract or lease in accordance with the procedures set forth in the Assumption Notice, (i) the counterparty to such contract or lease and all other applicable Persons shall be bound by and deemed to have assented to the terms set forth in Section 8.4(a), including the amendment of such contract or lease as described in Section 8.4(a)(i) and the assumption or assumption and assignment of such contract or lease, as so amended, (ii) except to the extent such contract or lease is included in the Schedule of Rejected Contracts, as of the Effective Date, subject to the consensual resolution of any applicable Contract Dispute by such counterparty and the Debtors (with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties, and after consultation with the Creditors' Committee), such contract or lease, solely as amended pursuant to this Section 8.4, shall be assumed by the applicable Debtor and, except with respect to any such contract of the Transferred Debtors, assigned to NewCo (or one of its Subsidiaries), and (iii) as of the Effective Date, such counterparty and all other applicable Persons shall be deemed to have released any and all rights, obligations, liabilities, Claims, Causes of Action and other rights of recovery described in Section 8.4(a)(ii).~~

~~(c)   To the extent an objection to the amendment and release described in Section 8.4(a) is timely filed and properly served on the Debtors by any counterparty with respect to such counterparty's contract or lease, and such objection has not been consensually resolved between such counterparty and the Debtors (with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties, and after consultation with the Creditors' Committee) prior to the Confirmation Hearing, (i) such contract or lease shall be deemed to be rejected, (ii) any Claims against the Debtors resulting from such rejection shall be classified and treated in accordance with Section 8.5 of the Plan and (iii) all Estate Causes of Action against such counterparty shall be preserved and not released and shall constitute Retained Causes of Action.~~

~~(d) Except to the extent that the Holder of a Co-Defendant Claim otherwise agrees or fails to object to such treatment, the assumption or rejection of a contract or lease with the Holder of a Co-Defendant Claim shall not operate as a release, waiver or discharge of any Co-Defendant Defensive Rights or Co-Defendant Claims.~~

### 8.5    *Rejection Claims*.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors herein results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their Estates, properties or interests in property, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Debtors no later than thirty (30) days after the entry of the order of the Bankruptcy Court (including the Confirmation Order) authorizing the rejection of such executory contract or unexpired lease. Any such Claim shall be classified in accordance with the classification of Claims set forth in Article III of the Plan, including that any such Claims that constitute Co-Defendant Claims shall be classified as such. The Confirmation Order shall constitute the Bankruptcy Court's authorization of the rejection of all the leases and contracts identified in the Schedule of Rejected Contracts.

### 8.6    *Compensation and Benefit Plans*.

Except with respect to any Benefit Plans for which the Debtors have received approval of the Bankruptcy Court to reject or terminate on or before the Effective Date or that are subject to a pending motion to reject or terminate as of the Confirmation Hearing, all Benefit Plans shall be deemed to be, and shall be treated as, executory contracts under this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code and shall be assumed by applicable Debtors and, unless held by a Transferred Debtor, assigned to NewCo (or one of its Subsidiaries).

### 8.7    *Purdue Pension Plan*.

The Purdue Pension Plan has approximately 3,200 participants. PPLP is the contributing sponsor of the Purdue Pension Plan. The Debtors that are members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) are jointly and severally liable with respect to the Purdue Pension Plan. Further, any non-debtor members of the contributing sponsor's controlled-group are also jointly and severally liable with respect to the Purdue Pension Plan.

Upon the Effective Date, NewCo (or one of its Subsidiaries) shall be deemed to have assumed the Purdue Pension Plan and all liabilities and Assets thereunder and shall comply with all applicable statutory provisions of ERISA and the IRC, including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083, paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307 and administering the Purdue Pension Plan in accordance with its terms and the provisions of ERISA and the IRC (and NewCo reserves all rights thereunder).

Notwithstanding any provision in the Plan to the contrary, no provision contained in the Plan, the Confirmation Order, the Bankruptcy Code (including section 1141 thereof), or any other document filed in the Debtors' bankruptcy cases shall be construed as discharging, releasing, exculpating or relieving any Person (other than the Liquidating Debtors) from any fiduciary duties or liabilities under Title I of ERISA with respect to the Purdue Pension Plan. PBGC and the Purdue Pension Plan shall not be enjoined or precluded from enforcing such fiduciary duties or liabilities under Title I of ERISA as a result of any of the provisions of the Plan, the Confirmation Order, the Bankruptcy Code or any other document

(iii)    no such Shareholder Released Party (other than a current or former director, officer, manager, authorized agent or employee that is not a Sackler Family Member, each of whom is subject to the foregoing paragraph (ii) of this <u>Section 8.8(b)</u>) shall be entitled to submit a claim under any MDT Insurance Policy other than in accordance with the Shareholder Settlement;

(c)    on and after the Effective Date, all Purdue Insurance Policies (other than the MDT Insurance Policies) shall be deemed to be, and shall be treated as, executory contracts under the Plan, and shall be assumed pursuant to sections 105 and 365 of the Bankruptcy Code by the applicable Debtor, and such Purdue Insurance Policies shall vest, and/or the Purdue Insurance Rights (other than the MDT Insurance Rights) associated therewith shall vest, as applicable, in NewCo, the applicable Transferred Debtor or the Plan Administration Trust, as applicable, in accordance with the NewCo Transfer Agreement and the PAT Agreement and continue in full force and effect in accordance with their respective terms such that the applicable recipients of the Purdue Insurance Policies (other than the MDT Insurance Policies) and the Purdue Insurance Rights (other than the MDT Insurance Rights) shall become and remain liable in full for and shall satisfy, to the extent required under applicable law, any prospective premiums, deductibles, self-insured retentions and any other amounts or obligations arising in any way out of the receipt of payment from an Insurance Company in respect of the Purdue Insurance Policies (other than the MDT Insurance Policies); and

(d)    solely with respect to Purdue Insurance Policies that are not MDT Insurance Policies, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit (i) claimants with valid workers' compensation claims or direct action claims against Insurance Companies under applicable non-bankruptcy law to proceed with their claims; and (ii) Insurance Companies to administer, handle, defend, settle and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against an Insurance Company under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing.

**8.9**    ***Reservation of Rights***.

(a)    Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors have any liability thereunder.

(b)    Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish or otherwise alter any of the ~~defenses, Claims,~~Estate Causes of Action ~~or other rights of the Debtors~~ under any executory or non-executory contract or unexpired lease.

(c)    Nothing in this Plan shall increase, augment or add to any of the duties, obligations, responsibilities or liabilities of the Debtors under any executory or non-executory contract or unexpired or expired lease, including the Purdue Insurance Policies.

(d)    If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtors shall have thirty (30)

Agreement) shall have been satisfied or waived in accordance with the terms of the Shareholder Settlement Agreement;

(j)     the PAT Agreement shall have been executed, the PAT Assets shall have vested in the Plan Administration Trust in accordance therewith and the Plan Administration Trustee shall have been appointed;

(k)     each of the PAT Reserves, the Professional Fee Escrow Account and the PAT Distribution Accounts shall have been fully funded, and each of the other payments and Distributions of Effective Date Cash described in Section 5.13(a) and (b) of the Plan shall have been made or will be made substantially simultaneously with consummation of the Plan;

(l)     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings and documents that are necessary to implement and effectuate the Plan;

(m)     all Professional Fee Claims shall have been paid in full or amounts sufficient to pay such Claims after the Effective Date shall have been placed in the Professional Fee Escrow Account, or shall be otherwise contained in a professional fee retainer, pending approval by the Bankruptcy Court;

(n)     the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with this Plan;

(o)     the Bankruptcy Court shall have confirmed that the Bankruptcy Code authorizes the transfer and vesting of the MDT Transferred Assets, notwithstanding any terms of the Purdue Insurance Policies or provisions of non-bankruptcy law that any Insurance Company may otherwise argue prohibits such transfer and vesting;

(p)     the DOB shall have been appointed in accordance with Section 5.12(c) of the Plan; and

(q)     all other actions, documents and agreements necessary to implement and effectuate the Plan shall have been effected or executed.

### 9.2     *Waiver of Conditions Precedent*.

(a) Each of the conditions precedent to the occurrence of the Effective Date (other than the condition precedent set forth in Section 9.1(i) of the Plan) may be waived by the Debtors; *provided* that (i) (a) with respect to any condition precedent, the waiver of which would materially and adversely affect the entitlements of any Class of Claims (or any Creditor Trust to which such Claims shall be channeled) represented by any of the Supporting Claimants, the waiver of such condition precedent shall require the consent (not to be unreasonably withheld, conditioned or delayed) of the applicable Supporting Claimants representing such materially and adversely affected Class of Claims, (ii) (b) the waiver of the conditions precedent set forth in Section 9.1(a), (b) (solely with respect to any Plan Document over which the Creditors' Committee has a consent right set forth in the Plan), (e), (f), (h), (j), (k), (m) (solely with respect to Professional Fee Claims by Professional Persons retained by the Creditors' Committee), (n), (o) and (p) of the Plan shall require the consent of the Creditors' Committee (which consent shall not be unreasonably withheld, delayed or conditioned) and (iii) (c) the waiver of the conditions precedent set forth in Section 9.1(a), (b) (solely with respect to any Plan Document over which the Governmental Consent Parties have a consent right set forth in the Plan), (d), (e), (f), (g), (n), (o) and (p) of the Plan shall require the consent of the Governmental Consent Parties (which consent shall not be

unreasonably withheld, delayed or conditioned). The condition precedent set forth in Section 9.1(i) of the Plan may not be waived by any party.

(b) The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

## ARTICLE X    EFFECT OF CONFIRMATION.

### 10.1    *Binding Effect*.

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan and the Plan Documents shall bind every Holder of a Claim against or Interest in any Debtor and every Holder of a Channeled Claim and inure to the benefit of, and be binding on, any such Holder's respective successors and assigns, regardless of whether any Claim or Interest of such Holder is Impaired under this Plan or whether such Holder has accepted this Plan.

### 10.2    *Discharge of Claims against and Interests in the Debtors*.

Upon the Effective Date and in consideration of the Distributions to be made under this Plan, except as otherwise provided in the Plan or in the Confirmation Order, each Holder (as well as any trustee or agent on behalf of such Holder) of a Claim or Interest and any successor, assign and affiliate of such Holder shall be deemed to have forever waived, released and discharged the Debtors (other than the Liquidating Debtors), to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date. Except as otherwise provided in this Plan, upon the Effective Date, all such Holders of Claims against or Interests in the Debtors, and their successors, assigns and affiliates, shall be forever precluded and enjoined, pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against, or terminated Interest in, any Debtor. Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge the Liquidating Debtors; *provided* that, upon confirmation of the Plan and the occurrence of the Effective Date, Holders of Claims against and Interests in the Debtors may not seek or receive any payment or other Distribution from, or seek recourse against, the Debtors or their Estates or any other Protected Party, except as expressly provided in the Plan. The Co-Defendant Defensive Rights shall not be waived, released or discharged and all Co-Defendant Defensive Rights are preserved, as provided in Section 10.18 of the Plan.

### 10.3    *Pre-Confirmation Injunctions, Stays, Stipulations and Discovery Orders*.

(a)    Unless otherwise provided in this Plan, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

(b)    Notwithstanding the foregoing paragraph (a) of this Section 10.3, on the Effective Date, without further action by or order of the Bankruptcy Court:

(i)    any and all obligations of the Shareholder Released Parties arising under the Case Stipulation shall terminate and the Case Stipulation shall be withdrawn, vacated and superseded by the Confirmation Order solely with respect to paragraphs 15, 17, 19, 22 and 25 of the Case Stipulation, and solely as such paragraphs

of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order against a Released Party, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Persons mentioned in this clause (ii) or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing any encumbrance of any kind or asserting any Released Claims in any manner, directly or indirectly, against a Released Party or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this clause (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan.

10.6    *Releases*.

(a)    **Releases by Debtors**.

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem, quasi in rem, in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, (i) the Debtors (, as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and

~~any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any~~ (including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the past, present or future use or misuse of any opioid ~~whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during~~ by a Releasing Party), (ii) the Estates or (iii) the Chapter 11 Cases ~~, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing~~. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this Section 10.6(a).

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(a) shall (A) release any contractual Estate Cause of Action or any Estate Cause of Action that is commercial in nature and, in each case, unrelated to the Chapter 11 Cases or the subject matter of the Pending Opioid Actions; *provided* that, with respect to the Settling Co-Defendants, only Estate Surviving Pre-Effective Date Claims shall be retained and not released, (B) release any Cause of Action against any Shareholder Release Snapback Party, (~~B~~C) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan, *provided, however,* that the foregoing shall not apply to any Holder of a Co-Defendant Claim solely with respect to such Co-Defendant Claim, or (~~C~~D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

(b)    Releases by Releasing Parties.

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all ~~Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights,~~ Causes of Action, ~~Liens, remedies, losses, contributions,~~

~~indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever,~~ including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates ~~(including any Causes of Action arising under chapter 5 of the Bankruptcy Code)~~ and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether ~~liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued,~~ existing or hereinafter arising, ~~choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time,~~ in each case, based on or relating to, or in any manner arising from, in whole or in part, __(i)__ the Debtors ~~(, as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any~~ __(including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the__ past, present or future use or misuse of any opioid~~, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during~~ __by a Releasing Party), (ii) the Estates or (iii)__ the Chapter 11 Cases~~, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes~~ with respect to the Plan, ~~or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing~~__.__

        For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own

right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this <u>Section 10.6(b)</u> shall (A) release any Cause of Action against ~~(I)~~ any Shareholder Release Snapback Party ~~or (II) any Holder of Co-Defendant Claims~~, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan, *provided, however, that the foregoing shall not apply to any Holder of a Co-Defendant Claim solely with respect to such Co-Defendant Claim,* or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, **but subject to the MDT Insurer Injunction and the Settling MDT Insurer Injunction,** the Debtors shall not be released from liability for any Claim **(other than any Co-Defendant Claim)** that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim, and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

(c)    **Releases by Debtors of Holders of Claims.**

As of the Effective Date, all Holders of Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party ~~, Co-Defendant~~ or MDT Insurer) are hereby released by the Debtors and their Estates from any and all ~~Claims, obligations, suits, judgments, damages, demands, debts, rights,~~ Causes of Action ~~remedies, losses and liabilities~~ for any Claim in connection with, or arising out of, (i) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing or (ii) such Holder's participation in the Pending Opioid Actions. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in this <u>Section 10.6(c)</u>.

As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party ~~, Co-Defendant~~ or MDT Insurer) are hereby released by the Debtors and

their Estates from any and all ~~Claims, obligations, suits, judgments, damages, demands, debts, rights,~~ Causes of Action~~, remedies, losses and liabilities~~ for any Claim in connection with, or arising out of, (i) the Debtors ~~(,~~ as such Entities existed prior to or after the Petition Date~~), their~~ (including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the past, present or future use or misuse of any opioid by a Releasing Party), (ii) the Estates or (iii) the Chapter 11 Cases, including, ~~without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii)~~ the Pending Opioid Actions, ~~(iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past~~ use or misuse ~~of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an~~ in each case, without limitation, any act, conduct, omission, event, transaction, occurrence, injury, damage, or continuing condition in any way relating to ~~any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of~~ the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in this Section 10.6(c) shall (A) release any contractual Estate Cause of Action or any Estate Cause of Action that is commercial in nature and, in each case, unrelated to the Chapter 11 Cases or the subject matter of the Pending Opioid Actions, *provided that, with respect to the Settling Co-Defendants, only Estate Surviving Pre-Effective Date Claims shall be retained and not released,* (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan, *provided, however, that the foregoing shall not apply to any Holder of a Co-Defendant Claim solely with respect to such Co-Defendant Claim,* (C) release any claim or right arising in the ordinary course of the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

10.7   *Shareholder Releases.*

(a)   **Releases by Debtors.**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this Section 10.7(a), by the Debtors and their Estates from any and all ~~Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights,~~ Causes of Action, ~~Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever,~~ including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates ~~(including any Causes of Action arising under chapter 5 of the Bankruptcy~~

~~Code)~~ and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether ~~liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued,~~ existing or hereinafter arising, ~~choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time,~~ in each case, based on or relating to, or in any manner arising from, in whole or in part, __(i)__ the Debtors ~~(,~~ as such Entities existed prior to or after the Petition Date~~), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and~~ any __Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any__ __(including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the__ past, present or future use or misuse of any opioid~~, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during~~ __by a Releasing Party), (ii) the Estates or (iii)__ the Chapter 11 Cases~~, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing~~. **The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly-formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in this __Section 10.7(a)__.**

**Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this __Section 10.7(a)__ shall be construed to impair in**

any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this <u>Section 10.7(a)</u> shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of this <u>Section 10.7(a)</u> had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(b)      **Releases by Non-Debtors.**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this <u>Section 10.7(b)</u>, by the Releasing Parties from any and all ~~Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights,~~ Causes of Action ~~Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever,~~ including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates ~~(including any Causes of Action arising under chapter 5 of the Bankruptcy Code)~~ and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party ~~or any other Person,~~ would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether ~~liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued,~~ existing or hereinafter arising, ~~choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time,~~ in each case, based on or relating to, or in any manner arising from, in whole or in part, <u>(i)</u> the Debtors ~~(~~, as such Entities existed prior to or after the Petition Date~~), their Estates or the Chapter 11 Cases, including, without~~

~~limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any~~ **(including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the** past, present or future use or misuse of any opioid~~, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing~~ **by a Releasing Party), (ii) the Estates or (iii) the Chapter 11 Cases. In addition, as of the Effective Date, notwithstanding anything to the contrary herein, and notwithstanding that the Shareholder Released Parties are not otherwise Releasing Parties, each Shareholder Released Party shall be released by each other Shareholder Released Party from any Cause of Action for indemnification, contribution or any similar liability-sharing theory based on or relating to, or in any manner arising from, in whole or in part, (i) the Debtors, as such Entities existed prior to or after the Petition Date (including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the past, present or future use or misuse of any opioid by a Releasing Party), (ii) the Estates or (iii) the Chapter 11 Cases.**

        For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

        Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this <u>Section 10.7(b)</u> shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in this

**Section 10.7(b)** shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(c)        Releases by Shareholder Released Parties.

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of this **Section 10.7(c)**, by the Shareholder Released Parties from any and all ~~Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights,~~ Causes of Action ~~Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever,~~ including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates ~~(including any Causes of Action arising under chapter 5 of the Bankruptcy Code)~~ and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party ~~or any other Person~~, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether ~~liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued,~~ existing or hereinafter arising, ~~choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, quasi in rem, in personam or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time,~~ in each case, based on or relating to, or in any manner arising from, in whole or in part, __(i)__ the Debtors ~~(,~~ as such Entities existed prior to or after the Petition Date~~), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors'~~

~~development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any~~ **(including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the** past, present or future use or misuse of any opioid ~~, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during~~ **by a Releasing Party), (ii) the Estates or (iii)** the Chapter 11 Cases ~~, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.~~**.**

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in this Section 10.7(c) shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, and including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any Claims held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in this Section 10.7(c) of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in this Section 10.7(c) shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

###### 10.8    *Channeling Injunction*.

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in Sections 10.5, 10.6 and 10.7 of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(a)    **Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in Sections 10.5, 10.6 and 10.7 of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or**

10.9    _Tolling of Shareholder Released Claims; Violations of Shareholder Releases
and Channeling Injunction_.

(a)    **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of (i) the end of such period; (ii) with respect to the applicable Shareholder Family Group and any Designated Shareholder Released Party, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; (iii) with respect to the applicable Shareholder Family Group and any Designated Shareholder Released Party, when such Shareholder Family Group fulfills its payment obligations under the Shareholder Settlement Agreement; and (iv) with respect to the applicable Shareholder Released Party that is a Subsidiary (as defined in the Shareholder Settlement Agreement) of a Shareholder ~~Released~~Payment Party, two hundred twenty-five (225) days after the reinstatement of any Estate Cause of Action against such Shareholder Released Party pursuant to Section 10.20 of the Plan.

(b)    **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, (i) disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); (ii) the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; (iii) the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); (iv) an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; (v) a fine or penalty paid into the Bankruptcy Court; (vi) a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; (vii) an appropriate sanction on any attorney or law firm responsible for the violation; (viii) injunctive relief to prevent future violations by the Person or its counsel; and (ix) attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

10.10    _MDT Insurer Injunction_.

(a)    **Terms. In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an**

**MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:**

(i)      **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(ii)     **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iii)    **creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;**

(iv)    **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and**

(v)     **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.**

(b)      **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, or any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action or liability for payment against an MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect (i) any claims between or among MDT Insurers that are not Settling MDT Insurers; (ii) the rights of current and former directors, officers, employees and authorized agents of the Debtors that are not Sackler Family Members that are preserved under the Plan or (iii) the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(c)      **Modifications**. To the extent the MDT Trustees make a good faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the

arising under or attributable to such MDT Insurance Policy;
and

(v)    taking any act, in any manner, in any place whatsoever, that
does not conform to, or comply with, the provisions of the
Plan applicable to such Claim based on, arising under or
attributable to such MDT Insurance Policy.

(b)    **Reduction of Insurance Judgments.** Any right, Claim or cause of
action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but
for the Settling MDT Insurer Injunction, if any such right, Claim or cause of action exists under
applicable non-bankruptcy law, shall become a right, Claim or cause of action solely as a setoff claim
against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in
question. Any such right, Claim or cause of action to which an Insurance Company may be entitled shall
be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that
Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative
recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim
or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert
any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim or
cause of action.

(c)    **Modifications**. There can be no modification, dissolution or termination
of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

(d)    **Non-Limitation of Settling MDT Insurer Injunction**. Except as set
forth in paragraphs (b) and (c) of this Section 10.11, nothing in the Plan, the MDT Documents or the
Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness
of the Settling MDT Insurer Injunction issued in connection with the Plan.

**10.12**  _**Exculpation**_.

To the maximum extent permitted by applicable law, no Exculpated Party shall
have or incur, and each Exculpated Party is hereby released and exculpated from: any ~~Claim, obligation,
suit, judgment, damage, demand, debt, right,~~ Cause of Action, ~~remedy, loss and liability~~ for any Claim in
connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit
of the Disclosure Statement (including any information provided, or statements made, in the Disclosure
Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust
(including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust
TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the
Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the
property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and
the transactions in furtherance of any of the foregoing, in each case other than ~~Claims or~~ Causes of Action
arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes
fraud, gross negligence or willful misconduct. This exculpation shall be in addition to, and not in
limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules
protecting such Exculpated Parties from liability. For the avoidance of doubt, this Section 10.12 shall not
exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party
prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence
or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the
contrary, nothing in the Plan shall release any ~~Claims or~~ Causes of Action that may be asserted against
any Excluded Party.

141

### 10.13   *Injunction Related to Releases and Exculpation*.

To the maximum extent permitted under applicable law, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any ~~Claims, obligations, suits, judgments, damages, demands, debts, rights,~~ Causes of Action~~, losses or liabilities~~ released pursuant to this Plan, including, without limitation, the ~~Claims, obligations, suits, judgments, damages, demands, debts, rights,~~ Causes of Action ~~and liabilities~~ released or exculpated in this Plan and the Claims, Interests, Liens, other encumbrances or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan (but, for the avoidance of doubt, excluding any Excluded Claims).

### 10.14   *Subordinated Claims*.

The allowance, classification and treatment of all Claims and Interests and the respective Distributions and treatments in respect thereof under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 509(c), 510(a), 510(b) or 510(c) of the Bankruptcy Code or otherwise. Pursuant to sections 509(c) and 510 of the Bankruptcy Code or otherwise, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal or equitable subordination relating thereto.

### 10.15   *Preservation of Causes of Action and Reservation of Rights*.

As of the Effective Date, (a) the Master Disbursement Trust shall have the right to prosecute any and all MDT Causes of Action, (b) the Plan Administration Trust shall have the right to prosecute any and all Retained Causes of Action relating to and necessary for the administration of Claims against the Debtors (other than Channeled Claims) or the other responsibilities of the Plan Administration Trustee in accordance with the PAT Agreement, (c) each Creditor Trust shall have the right to prosecute any and all Retained Causes of Action relating to and necessary for the administration of the applicable Channeled Claims in accordance with the applicable Creditor Trust TDP and (d) NewCo shall have the right to prosecute any and all Retained Causes of Action constituting NewCo Transferred Assets; *provided* that (i) any settlement or release by NewCo of such Retained Causes of Action shall be subject to the consent of TopCo and (ii) in the event NewCo fails to prosecute any such Retained Causes of Action, TopCo may direct such prosecution by NewCo, in accordance with the NewCo Operating Agreement. Pursuant to section 1123(b) of the Bankruptcy Code, except as expressly provided in Sections 10.5 through 10.13 of the Plan, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any ~~rights, Claims or~~ Causes of Action that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including but not limited to any actions specifically enumerated in the Schedule of Retained Causes of Action. Subject to Sections 10.5 through 10.13 of the Plan, all such ~~rights, Claims and~~ Causes of Action shall be transferred to the Master Disbursement Trust, the Plan Administration Trust, the applicable Creditor Trust or NewCo, as applicable, which shall have, retain, reserve and be entitled to assert all such ~~rights, Claims and~~ Causes of Action in accordance with the Plan as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights with respect to any Claim or Interest may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 10.16   *Ipso Facto and Similar Provisions Ineffective*.

Any term of any policy, contract or other obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent such policy, contract, or

other obligation is conditioned on, creates an obligation of any Debtor as a result of, or gives rise to a right of any Person based on any of the following: (a) the insolvency or financial condition of a Debtor; (b) the commencement of the Chapter 11 Cases; iv) the confirmation or consummation of this Plan, including any change of control that shall occur as a result of such consummation; or v) the Restructuring Transactions.

### 10.17    *No Successor Liability*.

Except as otherwise expressly provided in this Plan and the Confirmation Order, each of NewCo, TopCo, the Master Disbursement Trust, the Plan Administration Trust and the Creditor Trusts (a) is not, and shall not be deemed to assume, agree to perform, pay or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the Assets of the Debtors on or prior to the Effective Date, (b) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date and (c) shall not have any successor or transferee liability of any kind or character.

### 10.18    *Co-Defendant Defensive Rights*.

Except as provided in the MDT Insurer Injunction, the Settling MDT Insurer Injunction or clause (ii) of the penultimate sentence of this Section 10.18, notwithstanding anything to the contrary in this Article X or in the Plan as it currently exists or as it might be further amended, the Confirmation Order or any order entered in connection with the Plan (or the Plan as amended) (or any such order, as amended, modified or supplemented), or any supplement to the Plan (or the Plan as amended), nothing contained in the Plan or any of the foregoing documents or orders (including, without limitation, the classification, treatment, allowance, disallowance, release, bar, injunction, Channeling Injunction or any other provision of the Plan or the Plan as amended with respect to, impacting, affecting, modifying, limiting, subordinating, impairing, in any respect, a Co-Defendant Claim), will release, bar, enjoin, impair, alter, modify, amend, limit, prohibit, restrict, reduce, improve or enhance any Co-Defendant Defensive Rights of any Holder of a Co-Defendant Claim or Excluded Party as such rights exist or might in the future exist under applicable non-bankruptcy law. Nothing in the Plan, any of the Plan Documents or in the Confirmation Order shall preclude, operate to or have the effect of, impairing any Holder of a Co-Defendant Claim or Excluded Party from asserting in any proceeding any and all Co-Defendant Defensive Rights that it has or may have under applicable law. Nothing in the Plan, any of the Plan Documents or the Confirmation Order shall be deemed to waive any Co-Defendant Defensive Rights, and nothing in the Chapter 11 Cases, the Plan, any of the Plan Documents or the Confirmation Order may be used as evidence of any determination regarding any Co-Defendant Defensive Rights, and under no circumstances shall any Person be permitted to assert issue preclusion or claim preclusion, waiver, estoppel or consent in response to the assertion of an Co-Defendant Defensive Rights. This Section 10.18 shall be included in the Confirmation Order. Co-Defendant Defensive Rights (i) may be used to offset, set-off, recoup, allocate or apportion fault, liability, or damages, or seek judgment reduction or otherwise defend against any Cause of Action or Claim brought by any Person against the Holder of any Co-Defendant Claim or the Excluded Party based in whole or in part on Opioid-Related Activities and (ii) shall in no case be used to seek or obtain any affirmative monetary recovery from any Protected Party or any Asset of any Protected Party (including from any Purdue Insurance Policy or any other insurance policy of a Protected Party) on account of any Released Claim or Shareholder Released Claim. The forgoing foregoing does not constitute a release of any Co-Defendant's Class 14 Claim or any other Excluded Party's Class 11(c) Claim.

(ix)    to hear and determine all Professional Fee Claims;

(x)    to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(xi)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments in furtherance of the Plan or the Confirmation Order or any agreement, instrument or other document governing, or related to, any of the foregoing, including the Plan Documents;

(xii)    to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute and consummate this Plan, including any release (including, but not limited to, the United States-PI Claimant Medical Expense Claim Releases), exculpation or injunction provisions set forth in this Plan, or to maintain the integrity of this Plan following the occurrence of the Effective Date;

(xiii)    to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(xiv)    to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any Bar Date established in the Chapter 11 Cases or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(xv)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Shareholder Settlement Agreement;

(xvi)    to hear and determine disputes arising in connection with (A) the MDT Claims and the interpretation, implementation or enforcement of the NewCo Credit Support Agreement or (B) operations of the Master Disbursement Trust or the actions of the MDT Fiduciaries;

(xvii)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Abatement Trust Documents, and to hear and determine disputes concerning violations of the Confirmation Order or the use of funds from the Abatement Trusts in a manner inconsistent with the applicable Abatement Trust Documents; *provided* that, with respect to NOAT and the Tribe Trust, such jurisdiction shall be concurrent

and not exclusive to the extent set forth in the NOAT Documents and the Tribe Trust Documents, respectively, as in effect on the Effective Date;

(xviii)    to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order;

(xix)    to hear and determine all matters relating to the Plan Settlements, to the extent permitted under applicable law; and

(xx)    to enter a final decree closing each of the Chapter 11 Cases.

(b)    The Bankruptcy Court shall retain concurrent, rather than exclusive, jurisdiction of all matters arising under, arising out of or related to the Chapter 11 Cases and the Plan to, among other things, hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code), and to hear and resolve or recommend resolution of disputes related to the MDT Insurance Rights.

(c)    Notwithstanding anything in this Article XI to the contrary, the resolution of Channeled Claims against the Debtors and the forum in which such resolution shall be determined shall be governed by, and in accordance with, Section 6.21 of the Plan, the Master TDP and the Creditor Trust TDPs, if applicable.

(d)    By consenting to the treatment provided by this Plan or otherwise supporting the Plan, no State or Tribe shall be construed to have waived any claim of Sovereign Immunity that it may have in any other action or proceeding, including any action or proceeding occurring after the Effective Date.

(e)    No Person shall be permitted to initiate, continue, or otherwise prosecute a Cause of Action against a Shareholder Released Party based on an allegation, argument or position that such Cause of Action is or would be a Willful Related Party Claim or a Willful Non-Opioid Claim, unless such Person first obtains leave of the Bankruptcy Court. Without limiting the generality of the foregoing clauses of this Section 11.01, the Bankruptcy Court shall have and retain exclusive jurisdiction of, and authority to hear and determine, any request for such leave, and may grant such a request only upon a showing by the requesting Person, based on an appropriate evidentiary record, that such Cause of Action is colorable and is within the definition of Willful Related Party Claim or Willful Non-Opioid Claim. The only Persons with standing to be heard on such a request for leave shall be: (i) the Person seeking to bring such Cause of Action; (ii) any Shareholder Released Party against which such Cause of Action would be brought; (iii) any Shareholder Payment Party; and (1) the MDT [or NewCo].

## ARTICLE XII  MISCELLANEOUS PROVISIONS.

### 12.1    *Exemption from Certain Transfer Taxes*.

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan pursuant to (a) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors, (b) the Restructuring Transactions, (c) the creation, modification, consolidation, termination, refinancing and/or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means, or (d) the making, assignment, recording or surrender of any lease or sublease, or the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with the

(A) valid and enforceable pursuant to its terms, (a) integral to both the entirety of the Shareholder Settlement and the Plan and may not be excised or modified other than in accordance with the Shareholder Settlement Agreement, and (b) nonseverable from and mutually dependent on each other term in the Shareholder Settlement and the Plan; and (5) in the event that any one or more provisions of the Shareholder Settlement are deemed null, void, illegal or unenforceable, the Shareholder Settlement, the Plan, the Confirmation Order and the Plan Documents shall be null and void.

(b)        If, prior to entry of the Confirmation Order, any term or provision of this Plan that is not related to the Shareholder Settlement is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with this Section 12.6, is valid and enforceable pursuant to its terms.

## 12.7    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that a Plan Document provides otherwise, the rights, duties and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).

## 12.8    *Immediate Binding Effect*.

Notwithstanding Subject only to Bankruptcy Rule Rules 3020(e), 6004(h) or and 7062 or otherwise, as applicable, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the other Protected Parties, all Holders of Claims against or Interests in the Debtors, all Holders of Channeled Claims, all Releasing Parties and each of their respective successors and assigns.

## 12.9    *Successors and Assigns*.

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or permitted assign, if any, of each such Person.

## 12.10   *Entire Agreement*.

On the Effective Date, this Plan, the Plan Supplement and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations concerning such documents, all of which have become merged and integrated into this Plan.

12.15    *__Reservation of Rights__*.

Except as otherwise provided herein, this Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the filing of this Plan, any statement or provisions of this Plan or the taking of any action by the Debtors with respect to this Plan shall be, or deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claim or Interest prior to the Effective Date.

Dated: August ~~12~~23, 2021
By: */s/ Jon Lowne*
Name: Jon Lowne
Title: Authorized Signatory

**PURDUE PHARMA L.P.**
**PURDUE PHARMA INC.**
**PURDUE TRANSDERMAL TECHNOLOGIES L.P.**
**PURDUE PHARMA MANUFACTURING L.P.**
**PURDUE PHARMACEUTICALS L.P.**
**IMBRIUM THERAPEUTICS L.P.**
**ADLON THERAPEUTICS L.P.**
**GREENFIELD BIOVENTURES L.P.**
**SEVEN SEAS HILL CORP.**
**OPHIR GREEN CORP.**
**PURDUE PHARMA OF PUERTO RICO**
**AVRIO HEALTH L.P.**
**PURDUE PHARMACEUTICAL PRODUCTS L.P.**
**PURDUE NEUROSCIENCE COMPANY**
**NAYATT COVE LIFESCIENCE INC.**
**BUTTON LAND L.P.**
**RHODES ASSOCIATES L.P.**
**PAUL LAND INC.**
**QUIDNICK LAND L.P.**
**RHODES PHARMACEUTICALS L.P.**
**RHODES TECHNOLOGIES**
**UDF LP**
**SVC PHARMA LP**
**SVC PHARMA INC.**

| Summary report: Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 8/23/2021 1:09:45 AM | |
|---|---|
| **Style name:** Comments+Color Legislative Moves+Images | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://DMSWEB/AmericasActive/93933062/162 | |
| **Modified DMS:** iw://DMSWEB/AmericasActive/93933062/167 | |
| **Changes:** | |
| Add | 295 |
| Delete | 469 |
| Move From | 30 |
| Move To | 30 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 824 |