REED SMITH LLP
Paul E. Breene
Ann V. Kramer
Michael Venditto
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400

Paul M. Singer (*pro hac vice*)
Andy J. Muha (*pro hac vice*)
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Tel. (412) 288-3131

*Insurance Counsel to Debtors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Bankruptcy Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

## JOINT REPLY OF DEBTOR AND AD HOC COMMITTEE TO CERTAIN INSURERS' OBJECTIONS TO THE FORM OF DEBTORS' PROPOSED CONFIRMATION ORDER

The Debtors and the Ad Hoc Committee of Governmental and Other Contingent

Litigation Claimants (the "Ad Hoc Committee") file this Joint Reply ("Reply") to Objections

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

("Objections") to the Form of Debtors' Proposed Confirmation Order ("Proposed Confirmation Order") by Navigators Specialty Insurance Company, American Guarantee Liability and Insurance Company, Steadfast Insurance Company, XL Insurance America, Inc., Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation and North American Elite Insurance Company and Aspen American Insurance Company (collectively, "Certain Insurers") [Dkt. No. 3618].

## PRELIMINARY STATEMENT

1.  The Proposed Confirmation Order contains seven findings of fact and conclusions of law ("Findings and Conclusions") necessary to ensure that the Plan, including the Debtors' entry into it and the Court's confirmation of it, does not negate or diminish the value of the insurance assets being transferred to the Master Disbursement Trust (the "MDT Insurance Rights," as defined in the Plan). The Findings and Conclusions provide, among other things, that the settlements reached between the Debtors and the opioid-related claimants, as embodied in the Plan, are reasonable and were negotiated in good faith, and that such negotiation, settlement, and resolution of liabilities shall not operate to excuse any insurer from its obligations under any insurance policy, notwithstanding any terms of such insurance policy or provisions of non-bankruptcy law. These findings are necessary to prevent the Debtors' insurers (including not only Certain Insurers but also those subject to the Court's June 29, 2021 Order in the Adversary Proceeding[2] permitting international arbitrations who have not appeared at confirmation) from using the Plan itself, and the settlements embodied therein, to escape or minimize their coverage

---

[2] Order Granting the Arbitration Insurers' Joint Motion to Stay the Claims Against Them in this Adversary Proceeding in Favor of Arbitration, signed June 29, 2021 (Ins. Adv. Docket #164).

obligations—by, for example, arguing that the Debtors' settlement violates any purported rights of insurers under their policies to control resolution of claims against their insureds.

## STATEMENT

2.      Counsel for the Ad Hoc Committee provided a draft list of the seven Findings and Conclusions to Certain Insurers at their request on August 11, 2021. The Debtors, the Ad Hoc Committee, and Certain Insurers were unable to resolve disputes regarding four of the Findings and Conclusions after several rounds of communications. On August 20, 2021, Certain Insurers filed Objections to those four Findings and Conclusions,[3] asserting that (1) they address coverage issues that must be resolved exclusively in the insurance adversary proceeding post-confirmation, and (2) they lack factual or legal support. These arguments are meritless for at least the following reasons:

3.      The Findings and Conclusions do not require the Court to adjudicate garden-variety coverage disputes, as Certain Insurers assert. Nor do they require the Court to find that the MDT Insurance Policies provide coverage for opioid-related liabilities; nor the value of any such coverage. They seek to have the Court determine that the Plan itself—including the Plan's settlement of liabilities and transfer of insurance assets, as approved by this Court—does not extinguish the insurers' coverage obligations. Such findings, and the resolution of any dispute between Debtors and Certain Insurers regarding them, are inextricably intertwined with the Debtors' obligation and ability to marshal, preserve, and distribute their assets to creditors in

---

[3] Certain Insurers' objection to a fifth finding, section Paragraph JJ(B), page 31, is moot. The Debtors have removed this finding in a revised Proposed Confirmation Order, ECF No. 3635-1.

satisfaction of their liabilities pursuant to the Bankruptcy Code, and the dispute could not exist absent the bankruptcy.

4. As such, the Findings and Conclusions are core issues properly decided by this Court as part of confirmation. *See, e.g.*, *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108-109 (2d Cir. 2006) ("Claims that clearly invoke substantive rights created by federal bankruptcy law necessarily arise under Title 11 and are deemed core proceedings. So too are proceedings that, by their nature, could arise only in the context of a bankruptcy case.") (internal citations omitted); *In re Washington Mut., Inc.*, 442 B.R. 314, 325 (Bankr. D. Del. 2011) (stating that consideration of the reasonableness of a settlement incorporated in a plan is a core proceeding). This principle is consistent with the Court's statement in the insurance adversary proceeding that it may appropriately "address the propriety of the settlements at issue and their effect on the insurers" in the Confirmation Order, and that Debtors' insurers would be bound by the Court's rulings. *See* Hr'g Tr. at 97:21-25, *Avrio Health L.P. v. AIG Specialty Ins. Co.*, Adv. Pro. No. 21-07005 (June 21, 2021).

5. The Findings and Conclusions are not only appropriate for confirmation, but necessary for confirmation. The Ad Hoc Committee agreed to accept the settlements and structures embodied in the Plan on the condition that the MDT will be entitled to access the same rights to coverage that the Debtors had for their opioid liabilities pre-petition, and that nothing in the Plan itself shall extinguish or diminish that coverage. For example, Section 9.1(o) of the Plan requires as a condition precedent to confirmation that the Confirmation Order deem the insurance rights transfer effective notwithstanding any policy provisions to the contrary. Section 5.6(i) requires that the Confirmation Order "shall contain findings reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties related to or necessary to preserve

- 4 -

all MDT Insurance Rights." These provisions have been in the Plan since its inception in order to ensure that the Plan itself does not give rise to additional risks to insurance recovery. Omitting these Findings and Conclusions from the Confirmation Order thus would be a material change to the Plan approved by various creditor constituencies.

6. Inclusion of the Findings and Conclusions in the Confirmation Order is consistent with the Bankruptcy Code and the policies underlying it. The purpose of the Code is to provide debtors with efficient and expedient means to use their existing assets to resolve liabilities and obtain a "fresh start." *See, e.g.*, *In re Fed.-Mogul Glob., Inc.*, 684 F.3d 355, 378 (3d Cir. 2012) (use of existing assets to address current and future claims is "a goal consonant with the 'fresh start' purpose of bankruptcy"); *In re Gunsalus*, 613 B.R. 1, 10 (Bankr. W.D.N.Y. 2020) ("The broader purposes of the Bankruptcy Code . . . is to ensure both a fair distribution of the debtor's assets among creditors and a fresh start for the debtor.") (quotations and alterations omitted); *Greene v. Balaber-Strauss*, 76 B.R. 940, 941 (S.D.N.Y. 1987) ("[I]t is of prime importance in bankruptcy law that honest debtors be afforded a fresh start as soon and as efficiently as possible."). Providing insurers with control over a debtor's settlement of its liabilities in bankruptcy would frustrate that purpose, as it would give insurers—who have every incentive to use the reorganization process to delay or minimize their payment obligations, and who have no fiduciary obligations to the debtor's estate—an effective veto right over any plan of reorganization and the contents thereof. Accepting Certain Insurers' arguments would mean that this Court would be powerless to prevent the Debtors' insurers from undermining the purposes of the Code, and the rights and obligations it establishes vis a vis the Debtors to pursue a consensual resolution of their liabilities.

7. The Findings and Conclusions themselves are supported by the facts and the law. For ease of reference, attached as Exhibit A is a chart of the Findings and Conclusions, along with any objections or proposed modifications by Certain Insurers, and the Debtors' and Ad Hoc Committee's legal and/or factual justification for each. *See* "Purdue Bankruptcy: Insurance-Related Findings" ("Findings Chart") (attached as Ex. A).

## RESPONSES TO SPECIFIC OBJECTIONS

8. <u>Finding E(h), page 9 (insurer mark-up)</u>:

All parties including, without limitation, the Debtors' insurers, had notice of the <span style="color:blue;text-decoration:underline">filing of the Chapter 11 cases</span> <span style="color:red;text-decoration:line-through">Purdue bankruptcy proceedings and an opportunity to participate in them and were on notice that Debtors' opioid-related liabilities were being mediated, negotiated, and resolved</span>.

Certain Insurers assert that there is no evidence that they had an opportunity to participate in the bankruptcy proceedings or negotiations. Objections at 3-4. Such an assertion is contradicted by voluminous evidence of the Debtors' robust and comprehensive notice program, the numerous mediation orders and reports filed on the bankruptcy docket, detailed descriptions of the mediation in the Disclosure Statement, extensive media coverage regarding the negotiations, and the fact that various parties who were not defined as "Mediation Parties" in this Court's mediation order intervened in those proceedings with seemingly little difficulty—not to mention that Certain Insurers are here now objecting to the Plan and Proposed Confirmation Order. *See* Findings Chart at 1-2.

9. <u>Finding L(e) (insurer mark-up)</u>:

<span style="color:red;text-decoration:line-through">The Bankruptcy Code authorizes</span> <span style="color:blue;text-decoration:underline">The Insurers who joined in "Certain Insurers' Limited Objection to Plan Confirmation and Reservation of Rights," Dkt. No. 3263 (the "Insurers") have represented that they do not, in the specific circumstances of these Chapter 11 Cases, oppose</span> the transfer and vesting of the MDT Transferred Assets <span style="color:blue;text-decoration:underline">to and in the Master Distribution Trust, and no other insurance company or other party in interest has objected to such transfer and vesting. In the absence of any outstanding objections, such transfer and vesting of</span>

- 6 -

<span style="color:blue">the MDT Insurance Rights</span> <span style="color:blue">is authorized</span> <span style="color:red">~~notwithstanding any terms of the Purdue Insurance Policies or provisions of non-bankruptcy law~~</span>.

Certain Insurers assert that the Court should not issue a ruling that the Bankruptcy Code authorizes the transfer and vesting of the Debtors' insurance assets notwithstanding any otherwise applicable non-bankruptcy law. *See* Objections at 4–5. They do not argue that it is an inaccurate statement of the law (and indeed, as set forth in the Debtors' and Ad Hoc Committee's replies to insurer objections to the Plan,[4] this principle is well-established). They assert instead that, because they have not objected to the transfer, the Court should not issue an "advisory" ruling on this point. *See* Objections at 4–5.

10. This finding addresses a crucial component of the Plan, and its inclusion in the Confirmation Order is a condition precedent to Plan confirmation. *See* Plan at Section 9.1(o). A ruling to this effect is not "advisory," as another insurer—Chubb Insurance USA—has objected to the transfer. *See* Chubb Insurance USA's Objection to the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors [Dkt. No. 3301]. The language proposed by Certain Insurers does not indicate universal commitment from all insurers not to challenge the transfer of the MDT Transferred Assets (which include the MDT Insurance Rights), and thus provides little protection to the Debtors and their creditors. The finding is necessary to ensure that Debtors' insurers cannot argue later, in coverage proceedings, that the Plan itself, by transferring insurance assets to the MDT, negated those assets or gave the insurers a defense to coverage that they would not have had absent Debtors' insolvency and entry into the Plan.

---

[4] *See* ECF Nos. 3461, 3465.

       11.     <u>Finding JJ(a), second and third sentences (insurer mark-up)</u>:

<u>The settlements reached between the Debtors <span style="color:blue">(viewed collectively)</span> and the opioid-related claimants, as embodied in the Plan, are reasonable and were entered into in good faith based on arms-length negotiations.</u>  <s>Such negotiation, settlement and resolution of liabilities shall not operate to excuse any insurer from its obligations under any insurance policy, notwithstanding any terms of such insurance policy (including any consent-to-settle or pay-first provisions) or provisions of non-bankruptcy law.</s>

<u>Finding NN (insurer mark-up)</u>:  Except as expressly provided in this Order or the Plan, the discharge <s>or release</s> of the Debtors through the Plan will not operate to relieve any other entity, including Insurance Companies, of their obligation<span style="color:blue">, if any,</span> to pay the Debtors' opioid-related liabilities<s>, without regard to (i) whether the Debtors would be able to pay such liabilities in the first instance outside of bankruptcy, and (ii) whether the Debtors or a post-bankruptcy trust can or do pay those liabilities in full, in both instances notwithstanding any terms of the Purdue Insurance Policies or provisions of non-bankruptcy law</s>.  The Plan discharges <s>or releases</s> Debtors for their opioid-related liabilities.

Certain Insurers argue that these are coverage determinations that properly should be reserved for decision in the insurance adversary proceeding pending before this Court.  Objections at 5–6, 7.  They further assert that reference to "release" of the Debtors should be struck from Finding NN, arguing that sections 524(e) and 1141 of the Bankruptcy Code speak only to the effect of the discharge, rather than the release, of a debtor, and because inclusion of the term "release" would require an advisory opinion on the meaning and scope of unidentified release provided to the Debtors.  *Id.* at 8.

       12.     As explained above, these two Findings and Conclusions do not require this Court to determine that coverage exists, or the scope or amount of coverage.  Nor do they require the Court to determine the meaning and scope of any releases in the Plan.  Rather, they seek to have the Court determine that the Plan itself, including the Debtors' negotiation, proposal, and entry into it, and this Court's approval of it, does not negate or diminish coverage, and that the

Debtors' insurers cannot seek to avoid their coverage obligations on this basis.[5] Any distinction between a "discharge" or a "release" of the Debtors by the Plan is irrelevant for this purpose—they are merely examples of elements of the Plan that the insurers may not use to escape their coverage obligations. Such Findings and Conclusions are required by the Plan and further the purposes of the Bankruptcy Code. Indeed, Certain Insurers' position, that they are not bound by the Plan without their consent, would frustrate the purposes of the Bankruptcy Code by exalting their supposed rights over the framework for the resolution of debtors' liabilities established by the Bankruptcy Code.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Debtors and Ad Hoc Committee respectfully request that Certain Insurers' objections be overruled and that the Court enter the Debtors' proposed Findings and Conclusions.

Respectfully submitted,

Dated: August 23, 2021
New York, New York

**REED SMITH LLP**

/s/Ann V. Kramer
Paul E. Breene
Ann V. Kramer
Michael Venditto
599 Lexington Avenue
New York, NY 10022

---

[5] Certain Insurers also propose inserting the words "viewed collectively" in the first sentence to reflect that Ms. Horewitz, an expert witness for the Ad Hoc Committee, analyzed the Debtors' potential liabilities as compared to their assets in the aggregate. Objection at 6. Certain Insurers have made clear that they seek to insert this language solely for the purpose of allowing them to argue in the insurance adversary proceeding that the Debtors' settlement was not reasonable as to Rhodes Pharmaceuticals L.P. ("Rhodes"), which Certain Insurers assert had no liability for opioid claims. *Id.*; *see also* Certain Insurers' Limited Objection to Plan Confirmation and Reservation of Rights [Dkt. No. 3263] at 18-19 (asserting that, regardless of whether global settlement is reasonable from the perspective of the Debtors collectively, "it cannot preclude Navigators (or the other Insurers) from asserting that, *for insurance coverage purposes*, Rhodes (or any other insured) paid more than what its insurers reasonably would have, or could have, paid to resolve the claims . . . ."). Such argument contradicts the insurers' commitment to this Court in the insurance adversary proceeding that they would treat the findings of this Court in the Confirmation Order as binding, including as to reasonableness of the Plan's settlements. Therefore, there is no reasonable basis on which to add this language.

- 9 -

Tel. (212) 521-5400

Paul M. Singer (*pro hac vice*)
Andy J. Muha (*pro hac vice*)
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Tel. (412) 288-3131

*Insurance Counsel to Debtors*

*/s/ Emily P. Grim*

Scott D. Gilbert (admitted *pro hac vice*)
Craig Litherland (admitted *pro hac vice*)
Kami E. Quinn (admitted *pro hac vice*)
Richard D. Shore (admitted *pro hac vice*)
Jenna A. Hudson (admitted *pro hac vice*)
Emily P. Grim (admitted *pro hac vice*)
GILBERT LLP
700 Pennsylvania Avenue, S.E., Suite 400
Washington, D.C. 20003
Telephone: (202) 772-2200
Email:  gilberts@gilbertlegal.com
        litherlandc@gilbertlegal.com
        quinnk@gilbertlegal.com
        shorer@gilbertlegal.com
        hudsonj@gilbertlegal.com
        grime@gilbertlegal.com

*/s/ Kenneth H. Eckstein*
Kenneth H. Eckstein
Rachael Ringer
Jonathan Wagner
David E. Blabey Jr.
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Email:  keckstein@kramerlevin.com
        rringer@kramerlevin.com
        jwagner@kramerlevin.com
        dblabey@kramerlevin.com

/s/ David J. Molton
David J. Molton
Steven D. Pohl
Gerard Cicero
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Email: dmolton@brownrudnick.com
spohl@brownrudnick.com
gcicero@brownrudnick.com

/s/ Melanie L. Cyganowski
Melanie L. Cyganowski
Jennifer S. Feeney
OTTERBOURG P.C.
230 Park Avenue
New York, NY 10169
Telephone: (212) 661-9100
Email:
mcyganowski@otterbourg.com
jfeeney@otterbourg.com

*Attorneys for the Ad Hoc Committee*