# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., et al.,<br><br>           Debtors. | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |
| STACEY BRIDGES and CREIGHTON BLOYD and others similarly situated,<br><br>           Plaintiffs,<br>v.<br><br>PURDUE PHARMA L.P. and THE UNITED STATES OF AMERICA,<br><br>           Defendants. | Adversary Proceeding<br><br>Case No. _____ |

**COMPLAINT AND MOTION TO**
**<u>SUBORDINATE THE CLAIMS AND LIENS OF THE UNITED STATES</u>**

On behalf of themselves and those similarly situated to them, Stacy Bridges and Creighton Bloyd hereby move this Court to subordinate the claims of the United States to those of personal injury victims, particularly those who are alive and who are in active recovery. Bridges and Bloyd have filed class proofs of claim in this matter and no one has objected to their proofs of claim. In support of this motion, Bridges and Bloyd state:

1.      This Court has jurisdiction to hear this complaint pursuant to 28 U.S.C. § 157(b)(1).  In particular, and without limitation, this complaint seeks to determine the validity and priority of the liens, claims and/or charges of the United States against the Debtors.  Thus, this complaint involves a core proceeding under 28 U.S.C. § 157(b)(2)(K).  Bridges and Bloyd further submit that they and persons similarly situated to them are entitled to priority over those claims that the United States (and the Debtors) have characterized as administrative expenses. Their request for subordination with respect to those claims is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  In its agreement with the Debtors regarding the resolution of civil claims, the United States insisted on seeking an order from this Court.  The United States further insisted that the terms of the Order should prevent anyone from subordinating the claims of the United States.  If that agreement or any order of this Court should, in fact, prohibit this Court from subordinating the claims, liens, and/or charges of the United States to the claims, liens, or other interests of Bridges, Bloyd, or those similarly situated to Bridges and Bloyd, then Bridges and Bloyd respectfully request this Court to take jurisdiction of this matter as a non-core proceeding.

2.      A bankruptcy court may subordinate the claims of a secured party to those of an unsecured party.  In *Windstream Holdings, Inc. v. Charter Communs.*

*Inc.* (*In re Windstream Holdings, Inc.*), 627 B.R. 32 (Bankr. S.D.N.Y. 2021), this Court stated:

> The purpose of the doctrine of equitable subordination codified in section 510(c) of the Bankruptcy Code is 'to undo wrongdoing by an individual creditor in the interest of the other creditors.' *Enron Corp. v. Springfield Assocs. LLC* (In re Enron Corp.), 379 B.R. 425, 434 (S.D.N.Y. 2007). It has been described as 'a drastic and unusual remedy' that 'should be applied only to the extent necessary to offset the specific harm that creditors have suffered on account of the inequitable conduct.' Id. Courts in this district have long applied to so-called Mobile Steel test derived *from Benjamin v. Diamond (In re Mobile Steel Corp.)*, 563 F.2d 692, 700 (5th Cir. 1977), when asked to equitably subordinate a claim: (1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct caused injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim is consistent with bankruptcy law. *Assante v. Eastern Sav. Bank (In re Assante)*, 2013 U.S. Dist. LEXIS 30132, at *12 (S.D.N.Y. March 4, 2013); *In re Enron Corp.*, 379 B.R. at 433; *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 69 B.R. 832, 837 (Bankr. S.D.N.Y. 1994). See also *United States v. Noland*, 517 U.S. 535, 538-39 (1996) (citing Mobile Steel).[94] The required 'misconduct' is best described as conduct that violates a generally recognized duty that justifies the intervention of equity. *In re 80 Nassau Assocs.*, 69 B.R. at 839-40.

3. The United States Department of Justice has a duty under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, to protect the interests of persons who were victimized by the Debtor's misconduct. Under that statute, victims of criminal misconduct are entitled to restitution, including but not limited to the costs of their medical and vocational rehabilitation. This right is absolute when the criminals have engaged in fraud and deceit.

4. When simultaneously agreeing to resolve criminal and civil charges against the Debtors, and while also agreeing to resolve civil claims against certain members of the Sackler family, the United States expressly declined to vindicate the rights of victims of the Debtors under the MVRA. To justify this refusal, the United States averred that recognizing the rights of victims would result in unnecessary "prolongation" of the proceedings. A copy of materials published by the United States in connection with the criminal plea agreement and the civil settlement are appended hereto as Exhibit 1.

5. The United States (or anyone else) could have easily counted at least some of the victims of Debtor's conduct by consulting the records in this case, where thousands of personal injury victims have filed claims. Others could have been identified by consulting public records. While such counting may not have exhaustively identified all debtor's victims, the difficulty of identifying all victims hardly justifies ignoring all victims. While many of the victims are deceased, such that they and perhaps their estates may not have been entitled to any restitution under the MVRA, many, like Bridges and Bloyd, are still very much alive, are courageously fighting their addictions, and working hard to overcome the consequences of the Debtor's misconduct.

6. Likewise, the resources necessary to rehabilitate victims are subject to calculation. At the confirmation hearing in this case, Dr. Charles Cowan offered

unrebutted testimony that rehabilitating a victim could take as long as six years and as much as $100,000.00 each.

7. There can be no doubt that persons such as Bridges, Bloyd, and those similarly situated to them are, in fact, victims. Even Mortimer Sackler admitted as much in his testimony at the confirmation hearing. At least one United States Attorney publicly announced that the Debtors had undermined the doctor patient relationship by their misconduct. See materials attached as Exhibit C. When that relationship was undermined, the patient is a victim, even if the physician, whose dignity may be impaired but whose life is not for that reason alone shattered, may also be a victim.

8. The Court has commented on the conduct of the United States when the United States obtained the secured position, priority, etc., that the United States now claims in this case. We very respectfully submit the comments of the Court were understated in light of the MVRA, which was not a focus of the proceedings when those comments were made. The United States did not merely overreach on its own position: it undermined the position of victims whose rights are protected by federal statute and who were entitled to liens. The United States claimed for itself what, by statute, the United States should have claimed for the benefit of victims.

9. By ignoring the rights of victims under the MVRA, the United States has clearly "engaged in some type of inequitable conduct." *In Re Windstream Holdings, supra.* There can be no doubt that this conduct has resulted in harm to Bridges and those similarly situated to her. While the amount of cash money that living personal injury victims will receive from the PI trust in this case is still a matter of conjecture, it is apparently clear that no victim, alive or dead, can expect to receive more than $48,000. While some victims in States with expanded Medicaid may receive more in the form of "abatement" benefits administered by States and local governments, that is hardly true for victims such as Bridges and Bloyd, who live in a State without expanded Medicaid. Even if it eventually manifests itself, the largesse of the States could hardly diminish the immediate injury of victims.

10. The United States not only injured victims: it improperly enriched itself. The Debtors (or parties related to them) pleaded guilty to criminal charges in 2007. According to the testimony of Mortimer Sackler, the Food and Drug Administration was literally onsite with the Debtors for years. Yet USDOJ and other federal agencies allowed the Debtors to do business without impediment for years, even as the Nation suffered through the Debtor's unlawful practices. The United States should not now be allowed to vindicate its interest after having allowed the Debtors to run amok. However, if this Court disagrees, either by

6

finding that the United States was not complicit in the opioid crisis or by finding that the United States has not improperly enriched itself, Bridges respectfully submits the Court should still subordinate the claims, liens, and/or charges, or any of them, of the United States to those of Bridges, Bloyd, and persons situated similarly to them. Especially when a creditor is charged by law with a duty to mind the interests of others, injuring those interests ought to suffice for subordination, regardless whether the injuring creditor itself profited.

11.    Of course, the United States and the Debtors moved this Court to enter an order dated November 18, 2020, which order provides that "The Allowed Claims shall be treated as prepetition general unsecured claims against PPLP, shall not be entitled to priority, shall not be subject to subordination, and their allowance shall not be subject to reconsideration." However, the order anticipates that the United States would obtain a forfeiture judgment of $2 billion, and the definition of Allowed Claims does not include that forfeiture judgment.  While the Order dated November 18, 2020 provides, "PPLP shall not grant to any other party any superpriority claim that is senior to or a parity with the Forfeiture Judgment," the Order does not state that the Court cannot subordinate the interests of the United States with respect to the Forfeiture Judgment.  In any event, Bridges and Bloyd humbly submit that the Court should never be constrained by language in an order prohibiting equitable subordination, if the Court included such language without

having been fully advised of the premises. In this case, those premises would include the failure of the United States to vindicate rights under the MVRA.

12. Bloyd and Bridges shall serve a copy of this pleading on the United States Attorney for the Southern District of New York, the United States Trustee, and the United States Attorney General.

WHEREFORE, Bridges, on behalf of herself and all others similarly situated to her, respectfully requests this Court to subordinate the liens, claims, and/or charges of the United States to those of Bridges and persons similarly situated to them, or either of them.

Respectfully submitted,

s/ Frank Ozment
Frank Ozment (ASB-7203-N73J)
Frank Ozment Attorney at Law, LLC
217 Country Club Park, Box 501
Birmingham, AL 35213
Phone: (205) 847-5401
Email: frankozmentlaw@gmail.com
***Attorney for Claimant***

**OF COUNSEL:**
Roderick Graham (ASB-3237-R74R)
Graham and Associates, P.C.
P.O. Box 43334
Birmingham, Alabama 35243
Phone: (205) 427-9494
Email: Rodgrah@hotmail.com
***Attorney for Claimant***

**Defendant's Addresses:**

United States of America
c/o Peter Aronoff
Lawrence Fogelman
Assistant U.S. Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
212.637.2697

United States of America
c/o Merrick Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Office of the United States Trustee
Attn: Paul Schwartzberg
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, New York 10014
212.510.10014, Ext. 221
212.668.7631
paul.schwartzberg@usdoj.gov