# Exhibit 2

**First Supplemental Werth Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 |
| Debtors. [1] | (Jointly Administered) |

**FIRST SUPPLEMENTAL DECLARATION OF RAYMOND WERTH IN SUPPORT OF APPLICATION OF DEBTORS FOR AUTHORITY TO SUPPLEMENT RETENTION AND EMPLOYMENT OF GRANT THORNTON LLP FOR TAX ANALYSIS AND VALUATION SERVICES EFFECTIVE SEPTEMBER 1, 2021**

I, Raymond Werth, state the following under penalty of perjury:

1. I am a Partner of the firm of Grant Thornton LLP ("**Grant Thornton**"). I am duly authorized to execute this declaration (this "**Declaration**") on behalf of Grant Thornton.

2. The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other employees under my supervisions and direction. I am familiar with the matters set forth herein, and if called as a witness, I could and would testify thereto.

3. I make this Declaration in support of the Debtors' *Application of Debtors for Authority to Supplement Retention and Employment of Grant Thornton LLP for Tax Analysis and Valuation Services Effective September 1, 2021* (the "**Supplemental Application**"). This

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Declaration is also submitted as the statement required pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4. Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Supplemental Application.

**Grant Thornton's Prior Services to the Debtor Provided in the Ordinary Course of Business and Not Related to the Administration of the Debtors' Chapter 11 Cases**

5. Prior to the Petition Date, since approximately June 2018, the Debtors have engaged Grant Thornton to provide tax-related services to the Debtors pursuant to the terms and conditions of that certain MSA, dated June 1, 2018, and other related statements of work executed in connection therewith.

6. As previously disclosed in the Initial Retention Application, the Debtors retained Grant Thornton after the Petition Date to continue to provide the following tax-related services to assist the Debtors in the ordinary course of their business operations (collectively, the "**OCB Tax Services**"):

> (i) <u>Sales and Use Tax Compliance Services</u>: On August 11, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Sales and Use Tax Return Preparation Services*, pursuant to which Grant Thornton was retained to assist the Debtors with the generation of sales, use and other transactional tax returns by providing tax return compliance services. That August 11, 2020 statement of work was subsequently replaced and superseded by that certain *Statement of Work for Sales and Use Tax Return Preparation Services*, dated March 2, 2021. True and correct copies of both of these statements of work are attached to the Supplemental Application as **Exhibit 3-C**.

2

  (ii)  <u>2020 Tax Preparation Services</u>:  On December 7, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Tax Compliance Services*, pursuant to which Grant Thornton was retained to prepare the Debtors' federal and state tax returns, including extension calculations and estimated tax payments, for the 2020 taxable year.  A true and correct copy of this statement of work is attached to the Supplemental Application as **Exhibit 3-D**.

  7.  Because the OCB Tax Services were being provided in the ordinary course of the Debtors' business and were unrelated to the administration of the bankruptcy cases, I understood that it was not necessary for Grant Thornton to be retained in these bankruptcy cases and that payment on account of such OCB Tax Services would be paid consistent with past practices and in the ordinary course of the Debtors' ongoing business operations.

<b><u>Grant Thornton's Initial Retention Application</u></b>

  8.  In January 2021, the Debtors requested that Grant Thornton provide additional tax structuring services that directly related to the development the Debtors' Plan.  As a result of this requested expanded scope of work, on or about January 20, 2021, Grant Thornton and the Debtors entered into that certain *Statement of Work for Tax Structuring Services* (the "**Plan-Related SOW**").

  9.  On April 13, 2021, the Debtors filed the Initial Retention Application, which sought approval of Grant Thornton's retention and employment in these bankruptcy cases to provide the Initial Services described in the Plan-Related SOW, and to otherwise approve the terms and conditions of the Plan-Related SOW.  The Initial Retention Application was approved by the Court by an order entered on April 28, 2021.

3

10. As set forth in the Initial Retention Application, the Debtors retained Grant Thornton to provide the Initial Services for tax structuring work related to the Plan, including: (a) assisting the Debtors' management in analyzing the income tax consequences to the Debtors with respect to transactions between the Debtors and NewCo anticipated to be created in the bankruptcy reorganization; (b) consulting with PPLP and its legal counsel, Davis Polk, regarding the federal and state income tax implications of transactions required by the Court (transactions as proposed by Davis Polk) effectuating the bankruptcy reorganization; (c) assisting PPLP's management in determining the federal income tax basis in the assets of the NewCo and its affiliates immediately following the bankruptcy reorganization; and (d) assisting in modeling future U.S. federal and state income tax cash tax liabilities for NewCo following emergence from bankruptcy.

**Proposed Expanded Scope of Grant Thornton's Plan Related Services**

11. By the Supplemental Application, the Debtors seek to expand the scope of Grant Thornton's employment and retention to allow Grant Thornton to provide the following additional services that relate to the administration of the bankruptcy cases and the Debtors' successful emergence from chapter 11 in accordance with the Plan:

(a) **Valuation Services:** The services set forth in the *Statement of Work for Advisory Services*, dated August 25, 2021, to assist the Debtors' management with the following Valuation Services: (i) estimation of the fair values of certain tangible and intangible assets, as well as certain liabilities of NewCo, including inventory, real and personal property, and intangible assets; (ii) analysis of the components of goodwill (*e.g.*, assembled workforce, etc.); (iii) assisting the Debtors' management in the identification of the legal entities requiring discrete opinions of value for tax purposes; (iv) estimation of the fair market value of the identified legal entities; (v) reconciliation of the enterprise value of NewCo and the identified legal entities; and (vi) preparation of separate narrative reports and exhibits for financial reporting and tax valuation purposes.

(b) **Employment Tax and Tax Analysis Services:** The services set forth in the *Statement of Work for Employment Tax Services & State Corporate*

4

> *Income/Franchise Tax Nexus Analysis Services*, dated August 26, 2021, which include assisting the Debtors' management with the following Tax Analysis Services: (i) various payroll tax considerations with respect to transactions between the Debtors and NewCo anticipated to be created in the bankruptcy reorganization, as well as existing entities that will be restructured post-emergence; (ii) conducting a corporate income/franchise tax nexus analysis based on "doing business" criteria and economic presence criteria; (iii) evaluating the scope of multistate sales and other business activities, office operations and location of employees to evaluate current corporate/franchise tax filing and additional jurisdictional filing requirements for Adlon Therapeutics LP, Avrio Health LP, Imbrium Therapeutics LP, Rhodes Pharmaceuticals LP, Purdue Pharmaceuticals and Purdue Pharma LP.

12. A true and correct copy of the Valuation Services SOW is attached to the Supplemental Application as **Exhibit 3-A**.

13. A true and correct copy of the Tax Analysis SOW is attached to the Supplemental Application as **Exhibit 3-B**.

14. If the Debtors request Grant Thornton to perform additional services in the future not contemplated by the Plan-Related SOW or the Supplemental SOWs, the Debtors and Grant Thornton will mutually agree in advance upon such services and fees for those services in writing in a new statement of work, which will be subject to the Court's review upon proper application.

15. Notwithstanding the foregoing paragraph, it continues to be my understanding, after discussions with the Debtors and their counsel, that the OCB Tax Services, and the statements of work executed in connection therewith prior to Grant Thornton's retention under the Initial Retention Order, continue to be services provided in the ordinary course of business that will not be subject to the Court's review pursuant to a retention application. To the extent that the Court requires that the OCB Tax Services be included as part of Grant Thornton's retention application in these Bankruptcy Cases, notwithstanding that such OCB Tax Services are provided in aid of the Debtors' ordinary course business operations and not in the

5

administration of the bankruptcy cases, Grant Thornton will work with the Debtors to file another supplement to Grant Thornton's Initial Retention Application to include those OCB Tax Services.

16.     I have informed the Debtors' management that, subject to Court approval of the Supplemental Application, Grant Thornton is willing to serve as the Debtors' consultant and to perform the Supplemental Services on matters arising during these chapter 11 cases.

**Grant Thornton's Qualifications and the Need for the Supplemental Services**

17.     Grant Thornton is the U.S. member of Grant Thornton International Ltd., a global audit, tax, and advisory organization of separate, independent network firms providing services in more than 120 countries (the "**Grant Thornton Network**"), including 59 offices in the United States. Each member firm is a separate legal entity.

18.     The professionals in Grant Thornton's valuation and tax practices consist of senior tax, accounting, and other professionals specializing in tax, valuation, financial, business, and strategic advice to enterprises, including distressed enterprises.

19.     Grant Thornton has significant qualifications, experience, and extensive knowledge in the fields of accounting, valuation and taxation for large, sophisticated companies, both in and out of chapter 11 bankruptcy. As such, I believe that Grant Thornton has the resources and experience necessary to perform the Supplemental Services in these chapter 11 cases.

20.     By virtue of its ongoing engagement by the Debtors prior to and during these bankruptcy cases, both with respect to the OCB Tax Services and the Initial Services, Grant Thornton is familiar with the Debtors' business affairs, the issues surrounding this matter, will be able to draw on its earlier data collection, and will be able to streamline its analysis under this engagement and minimize costs to the estate.

21.     As such, I believe that Grant Thornton is well qualified and uniquely able to represent the Debtors with respect to the Supplemental Services pursuant to section 327(a) of the Bankruptcy Code.

### Grant Thornton's Disinterestedness

22.     On January 29, 2021, Davis Polk forwarded to our outside counsel a 109 page list of potential interested parties in the chapter 11 cases from which Grant Thornton could perform its conflict search (the "**Conflicts List**").  A summary list of the categories of potential parties in interest set forth on the Conflicts List is attached to the Initial Werth Declaration as **Exhibit 1** filed as part of the Initial Retention Application.[2]

23.     To perform its conflict search, Grant Thornton ran the 109 pages of names provided in each of the categories listed on such **Exhibit 1** through its firm-wide conflicts system.  With respect to the other member firms in the Grant Thornton Network, Grant Thornton ran a search of the Conflicts List against various internal lists and databases, which yields potential "hits" in other member firms.

24.     Among the internal lists and databases that are included in the searches performed are: audit, tax and advisory engagement acceptance databases, and client database; business arrangements with public companies; financial relationships or arrangements; global list of publicly traded audit clients or their affiliates; audit and attest clients; the SEC audit directors list; subcontractor lists; and a list of other entities to be aware of that may not be on one of the lists above, among others.  If there is such a potential "hit" indicated for another member firm, then Grant Thornton will send a conflict check, for that entity, to the relevant member firm.  The

---

[2]  Because the Conflicts List is 109 pages long, the entire list is not attached to this declaration.  Rather, a summary of the Conflicts List by categories was provided for reference.  A copy of the Conflicts List may be obtained upon request or, if requested by the Court, Grant Thornton can file a supplemental declaration with the actual Conflicts List.

7

member firm then has a certain amount of time to report whether there is a relationship with that entity. If the member firm makes such a report, then it is reviewed to determine whether it will have an effect on Grant Thornton's disinterestedness.

25. "Hits" were then sent to the relevant member firms per the process described above, including to member firms in the following jurisdictions: Canada; Hungary; Israel; Poland; Sweden and the United Kingdom. If there were responses received, the "hit" was then cleared to confirm that the connection was unrelated to the Debtors or these chapter 11 cases and reported on **Exhibit 2** to the Initial Werth Declaration in order for Grant Thornton to declare its disinterestedness.

26. As set forth on such **Exhibit 2**, the hits for the relevant cross-border member firms identified above are reported on **Exhibit 2** as the relevant jurisdiction and the general type of relationship, such as audit, advisory, business, forensic, tax or valuation, as the circumstances require.

27. I, or someone working under my supervision, reviewed any client connections from the Conflicts List to the Debtors' chapter 11 cases, in accordance with the procedures set forth above, to determine whether Grant Thornton has an adverse interest to the Debtors' estates. Likewise, since the date of the Initial Werth Declaration until now, I am not aware of any additional "hits" from other member firms other than those originally disclosed in the Initial Werth Declaration.

28. Based on the results of this conflicts search, to the best of my knowledge, neither I, nor Grant Thornton or any member in the Grant Thornton Network, nor any partner or employee thereof, insofar as I have been able to ascertain, has any connection with any of the parties in

8

interest identified in the Debtors' Conflicts Lists, except as disclosed or otherwise described on **Exhibit 2** attached to the Initial Werth Declaration, which is incorporated herein by reference.

29.  I believe that none of the connections disclosed on such **Exhibit 2** have or will affect Grant Thornton's representation of the Debtors in matters requiring the Supplemental Services. None of Grant Thornton's representations of these parties comprises a material component of Grant Thornton's practice, nor does Grant Thornton currently represent any such parties in any matter adverse to the Debtors.

30.  The services that Grant Thornton performed for Millennium Trust do not relate to these bankruptcy cases. Moreover, Millennium Trust is not currently a client of Grant Thornton, and Grant Thornton has not performed any work for Millennium Trust for the past decade.

31.  As part of its diverse practice, Grant Thornton appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in the chapter 11 cases.

32.  Grant Thornton has performed in the past, and may perform in the future, audit, tax, and consulting services for various attorneys and law firms in the legal community, and has been represented by several attorneys and law firms in the legal community, some of whom may be involved in the chapter 11 cases.

33.  Grant Thornton has in the past, may currently and will likely in the future be working with or against other professionals involved in these chapter 11 cases in matters unrelated to the chapter 11 cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relationships constitute interests materially adverse

to the Debtors herein in matters upon which Grant Thornton is to be employed, and none are in connection with these chapter 11 cases.

34. To the best of my knowledge, Grant Thornton has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases.

35. Grant Thornton will not accept any engagement or perform any services for any entity or person other than the Debtors relating to these chapter 11 cases. Grant Thornton may, however, provide professional services to entities or persons that may be creditors of the Debtors or parties in interest in these chapter 11 cases; provided, however, that such services do not relate to, or have any direct connection with, these chapter 11 cases.

36. Despite the efforts described above to identify and disclose Grant Thornton's connections to parties in interest in these chapter 11 cases, Grant Thornton is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Grant Thornton discovers additional information that requires disclosure, Grant Thornton will file a supplemental disclosure with the Court as promptly as possible.

37. To the best of my knowledge, neither Grant Thornton nor its professionals hold or represent any interest adverse to the Debtors or their estates.

38. To the best of my knowledge, Grant Thornton and its professionals are "disinterested persons" under section 101(14) of the Bankruptcy Code.

39. To the best of my knowledge, (a) Grant Thornton has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these Chapter 11 Cases; (b) Grant Thornton does not hold or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Grant

10

Thornton (i) is not a creditor, equity security holder, or an insider of the Debtors, and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the Grant Thornton professionals expected to assist the Debtors in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for the Southern District of New York, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

40. Grant Thornton is not aware of any outstanding amounts owed for professional services rendered to the Debtors prior to the Petition Date. Additionally, Grant Thornton is not aware of any amounts paid by the Debtors to Grant Thornton in the 90 days prior to the Petition Date. As part of the Initial Retention Application, Grant Thornton agreed to waive any and all currently outstanding amounts owed for professional services rendered to the Debtors prior to the Petition Date.

**Grant Thornton's Compensation**

41. Grant Thornton's discounted hourly billing rates for the Valuation Services are as follows:

| Level | Discounted Hourly Rate |
| --- | --- |
| Partner / Principal / Managing Director | $720 |
| Senior Manager / Director | $590 |
| Manager | $500 |
| Senior Associate | $400 |
| Associate | $270 |

42. Compensation for the Tax Analysis Services is as follows:

State & Local Tax Nexus Analysis Services

11

- Corporate Income/Franchise Tax Nexus Analysis Matrix - $7,000 to $10,000

Payroll Services:

- Preparation of registration forms for NewCo - $600/form

- Preparation of update forms - $500/form

- Preparation of closure forms - $450/form

- Preparation of payroll matrix - $325/state

- Preparation of successorship memo - $2,500 for federal and $1,000/state

- Consulting of various employee scenarios and coordination with Ceridian will be billed at Grant Thornton's discounted hourly rates as reflected in the following table:

| Level | Discounted Hourly Rate |
|---|---|
| Partner / Managing Director | $765 |
| Senior Manager / Director | $650 |
| Manager | $570 |
| Senior Associate | $460 |
| Associate | $280 |

43. Grant Thornton's hourly rates for the Supplemental Services are subject to change from time to time in the regular course of Grant Thornton's business. Grant Thornton will provide notice to the Debtors, the Office of the United States Trustee and any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases of any change in Grant Thornton's hourly rates for the Supplemental Services. Grant Thornton also will file a notice of any such change in hourly rates with the Court.

44. In addition to the hourly billing rates set forth herein, Grant Thornton customarily charges its clients for direct expenses incurred by Grant Thornton in connection with the

12

Supplemental Services provided herein including, but not limited to, reasonable and customary out-of-pocket expenses for items such as copies, postage, supplies, computer and technology usage, software licensing, research and library databases and similar expense items, as well as the fees and expenses that Grant Thornton's counsel directly bills Grant Thornton in connection with this engagement relating to Grant Thornton's retention and fee applications submitted in the chapter 11 cases.

45. In addition, if Grant Thornton is requested or authorized by the Debtors or Davis Polk, or is required by government regulation, subpoena or other legal process, to produce its documents or personnel as witnesses with respect to the Supplemental Services, so long as Grant Thornton is not a party in the proceeding in which such information is sought, Grant Thornton customarily charges its clients for its professional time and expenses, as well as the fees and expenses of Grant Thornton's counsel, if any, incurred in responding to such requests.

46. Neither Grant Thornton nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Debtors' chapter 11 cases, other than as permitted by the Bankruptcy Code. Grant Thornton has agreed not to share compensation received in connection with this case with any other person.

47. Grant Thornton will apply to the Court for allowance of compensation and reimbursement of expenses for all Initial Services and Supplemental Services performed and expenses incurred for such Initial Services and Supplemental Services after the Petition Date in accordance with the Fee Guidelines, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

48. Notwithstanding the foregoing paragraph, the OCB Tax Services being provided by Grant Thornton were agreed to and entered into before Grant Thornton's retention in these bankruptcy cases to perform the Initial Services and Supplemental Services. As such, the OCB Tax Services were billed by Grant Thornton and paid by the Debtors in the ordinary course of business consistent with the Debtors' business practices, and as such were not prepared in accordance with, or, as I understand, otherwise subject to the procedures for allowance of compensation and reimbursement of expenses under the Fee Guidelines and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable orders of the Court. In light of Grant Thornton's subsequent retention in these bankruptcy cases by order entered April 28, 2021, out of an abundance of caution and for purposes of full disclosure, Grant Thornton will include disclosure of all invoices that remain unpaid as of the date hereof on account of the OCB Tax Services in its monthly fee statements and interim and final fee applications going forward.

49. Grant Thornton's rates and policies are consistent with Grant Thornton's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.

50. I also believe that Grant Thornton's rates and policies are reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Grant Thornton's substantial experience with respect to tax structuring services, and (d) the nature and scope of work to be performed by Grant Thornton in these chapter 11 cases.

### No Duplication of Services

51.  I understand that the Debtors have retained and may retain additional professionals during the term of their engagement and Grant Thornton agrees to work cooperatively with such professionals to avoid any duplication of services.

### Additional Fee Guidelines Disclosures

52.  In addition, in accordance and in response to the request for additional information set forth in paragraph D.1 of the Fee Guidelines:

   a. Grant Thornton did not agree to any variations from, or alternatives to, Grant Thornton's customary billing arrangements for this engagement, except with respect to the discount hourly billing rates for this engagement that Grant Thornton agreed to provide Debtors as set forth herein and in the Supplemental SOWs.

   b. None of Grant Thornton's professionals included in this engagement varied or will vary their rate based on the geographic location of these chapter 11 bankruptcy cases.

   c. Grant Thornton will provide such information as the Debtors request or require for them to prepare and submit budget and staffing plans required under the Fee Guidelines.

   d. Grant Thornton will use its best efforts to avoid duplicating services rendered by the Debtors' other retained professionals.

15

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 10th day of September, 2021.

*/s/ Raymond Werth*
Raymond Werth

16