**Presentment Date and Time: October 19, 2021, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Date and Time: October 12, 2021, at 4:00 p.m. (prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | **(Jointly Administered)** |

**NOTICE OF PRESENTMENT OF MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF CERTAIN ONCOLOGY-RELATED ASSETS TO CELLACT PHARMA GMBH FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE APA AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**PLEASE TAKE NOTICE** that on September 28, 2021, the above-captioned debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") filed the annexed *Motion of the Debtors for Entry of an Order (I) Authorizing the Sale of Certain Oncology-Related Assets to CellAct Pharma GmbH Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the APA and (III) Granting Related Relief* (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that, unless a written objection to the Motion is served and filed with proof of service with the Clerk of the Court, and a courtesy copy delivered to the undersigned and to chambers of the Honorable Robert D. Drain, so as to be received by **October 12, 2021 at 4:00 p.m. (prevailing Eastern Time)**, there will not be a hearing to consider such Motion, and an order, substantially in the form attached to the Motion as **Exhibit A** (the "**Proposed Order**"), will be presented for signature by the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), on **October 19, 2021 at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that, if a written objection is timely filed and served with respect to the Motion, a hearing (the "**Hearing**") will be held to consider the Motion and Proposed Order before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on a date to be announced; *provided* that, pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), such Hearing shall be conducted **via Zoom for**

2

**Government**® so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[2]

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default; *provided* that objecting parties shall attend the Hearing via Zoom for Government so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of Page Intentionally Left Blank*]

---

[2] A copy of General Order M-543 can be obtained by visiting https://www.nysb.uscourts.gov/news/general-order-m-543-court-operations-under-exigent-circumstances-created-covid-19.

Dated: September 28, 2021
       New York, New York

                              DAVIS POLK & WARDWELL LLP

                              By:  */s/ Eli J. Vonnegut*

                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone: (212) 450-4000
                              Facsimile: (212) 701-5800
                              Marshall S. Huebner
                              Benjamin S. Kaminetzky
                              Timothy Graulich
                              Eli J. Vonnegut
                              Christopher S. Robertson

                              *Counsel to the Debtors*
                              *and Debtors in Possession*

4

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Timothy Graulich
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.,* | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF CERTAIN ONCOLOGY-RELATED ASSETS TO CELLACT PHARMA GMBH FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE APA AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby file this *Motion of the Debtors for Entry of an Order (I) Authorizing the Sale of Certain*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Oncology-Related Assets to CellAct Pharma GmbH Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the APA and (III) Granting Related Relief* (this "**Motion**"). In support of this Motion, the Debtors respectfully state as follows:

### Relief Requested

1. By this Motion, and pursuant to sections 105(a) and 363 of the United States Code, 11 U.S.C. § 101, *et seq*. (as amended or modified, the "**Bankruptcy Code**"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**") and the *Amended Guidelines for the Conduct of Asset Sales, General Order M-383 of the Court* (the "**Sale Guidelines**"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Sale Order**") approving the sale (the "**Sale**") of certain oncology-related assets (as more specifically set forth in Section 2.1 of the APA (as defined below), the "**Acquired Assets**") of Debtor Purdue Pharma L.P. ("**Purdue**" or the "**Seller**") to CellAct Pharma GmbH ("**CellAct**" or the "**Purchaser**") pursuant to that certain Asset Purchase Agreement, dated as of September 17, 2021 (attached hereto as **Exhibit B**, and as amended from time to time, including all schedules and exhibits, the "**APA**"),[2] free and clear of all liens, claims, encumbrances and other interests ("**Claims and Interests**") to the fullest extent permitted by law and granting certain related relief.

2. In support of this Motion, the Debtors rely on and incorporate the *Declaration of Jon Lowne in Support of the Motion of the Debtors for Entry of an Order (I) Authorizing the Sale of Certain Oncology-Related Assets to CellAct Pharma GmbH Free and Clear of Liens, Claims,*

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the APA.

2

*Interests and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the APA and (III) Granting Related Relief* (the "**Lowne Declaration**"), filed contemporaneously herewith.

### Jurisdiction and Venue

3.  The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and, pursuant to Bankruptcy Rule 7008, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### General Background

5.  On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 27, 2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors.

6.  Information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* filed on September 16, 2019 [ECF No. 17].

3

7.  The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court on September 18, 2019 in each of the Chapter 11 Cases.

### Proposed Sale

**A.    2017 Transaction**

8.  In 2017, Purdue and Mundipharma International Corporation Limited ("**MICL**"), through separate asset purchase agreements, acquired certain oncology-related assets, including rights to the active pharmaceutical ingredient CAP7.1 (the "**API**"), from CellAct (the "**Original Transaction**"). The API is a pro-drug of etoposide, a drug approved to treat certain cancers. These oncology-related assets were divided between MICL and Purdue, with the intent that Purdue would develop and bring to market a product containing the API in the United States, and MICL would develop and bring to market a product containing the API in other non-U.S. major markets. The Original Transaction included an assignment by CellAct to Purdue of an exclusive U.S. license agreement (the "**Charité License**") with Charité-Universitätsmedizin Berlin, which is the master licensor of the rights to develop the API. CellAct also made a separate non-U.S. assignment to MICL.

**B.    The Proposed Sale**

9.  In April 2020, Purdue and MICL made the decision to terminate the development of the API. After extensive arm's-length negotiations and good-faith efforts by all parties, on September 17, 2021, Purdue and the Purchaser executed the APA in contemplation of a private sale pursuant to which the Purchaser has agreed to acquire the Acquired Assets. As more fully described in Section 2.1 of the APA, the Acquired Assets consist of the rights to the API and rights under and obligations with respect to the Charité License.

4

10. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ payment to Purdue will be based on the commercialization and milestone events achieved by CellAct (or its licensees) with respect to the Acquired Assets. Under the APA, Purdue will be entitled to receive:

- ▆▆▆ of any and all one-time or lump sum payments received by CellAct for any and all milestone events achieved by CellAct's licensees with respect to the Acquired Assets;

- ▆▆▆ of all Net Sales earned by CellAct or paid to CellAct by its licensees in connection with the sales of a product or service that uses the Acquired Assets; and

- Certain one-time payments set forth in the APA upon the achievement by CellAct or its Affiliates of certain milestone events with respect to the Acquired Assets.

Purdue will also be entitled to receive ▆▆▆ of any amounts received by CellAct or its Affiliates from the transfer of the Acquired Assets to a Third Party. The maximum purchase price for the Acquired Assets that Purdue will receive from CellAct is ▆▆▆▆▆▆.

11. MICL will enter into a separate, substantially identical asset purchase agreement with CellAct. MICL will receive separate consideration from CellAct.

C. **The Sale Is Value-Maximizing and in the Best Interests of the Debtors, and Should Be Approved**

12. In light of the foregoing, including the good-faith and arm's-length negotiation process and the consideration to be received for the Acquired Assets, the Debtors believe that the Sale represents fair value and the highest or otherwise best transaction involving the Acquired Assets available to the Debtors and their estates, as it provides a greater value than would likely be available under any other alternative. Lowne Declaration ¶ 7.

13. Moreover, as described in the Lowne Declaration, the Debtors believe that CellAct is the only party that would be interested in acquiring the Acquired Assets. *Id.* The Debtors

5

therefore believe that a court-supervised auction process would only harm the Debtors' estates by creating considerable, unnecessary delay and additional expense with no commensurate benefit. The Sale has received all requisite internal approvals. *Id.* ¶ 10.

14. Accordingly, the Debtors believe that the Sale is in the best interest of the Debtors, their estates and all parties in interest and seek the Court's authorization to enter into and perform under the APA and consummate the Sale.

### Summary of the Asset Purchase Agreement

15. A summary of the material terms of the APA are set forth in the table below.[3]

| Term | Summary Description |
|---|---|
| **Purchase Price** APA, § 2.3 | Up to ▓▓▓, consisting of (a) ▓▓▓ of any and all one-time or lump sum payments received by CellAct for any and all milestone events achieved by CellAct's licensees with respect to the Acquired Assets, (b) ▓▓▓ of all net sales earned by CellAct or paid to CellAct by its licensees in connection with the sales of a product or service that uses the Acquired Assets, and (c) certain one-time payments set forth in the APA upon the achievement by CellAct of certain milestone events with respect to the Acquired Assets, which are set forth on Exhibit C to the APA (collectively, the "**Purchase Price**"). |
| **Acquired Assets** APA, § 2.1 | (a) The assets set forth on Exhibit A of the APA ▓▓▓, and (b) all of Seller's rights under and obligations with respect to the Charité License. |
| **Transfer of Acquired Assets** APA, § 2.7 | In the event CellAct transfers, sells, assigns or out-licenses all or substantially all or any portion of the Acquired Assets to a third party, including in connection with a merger, consolidation or sale of all or substantially all of the assets or stock of CellAct, CellAct will pay Purdue an amount equal to ▓▓▓ of any amount CellAct receives as a result of such transfer. Any such transfer will be made pursuant to an agreement that requires the third party to undertake and perform CellAct's obligations under the APA. |

16. In accordance with the Sale Guidelines, a summary of the Extraordinary Provisions (as defined in the Sale Guidelines) of the APA is set forth in the table below.

---

[3] Any summaries contained herein are provided for the convenience of the Court and parties in interest. To the extent that there is any conflict between this Motion and the APA, the APA shall govern in all respects. Capitalized terms used but not otherwise defined in this paragraph have the meanings ascribed to such terms in the APA.

| Provision | Summary Description |
|---|---|
| **Sale to Insider** Guideline I.D.1 | The Purchaser is not an "insider," as such term is defined in section 101(31) of the Bankruptcy Code, of any of the Debtors. |
| **Agreements with Management** Guideline I.D.2 | N/A |
| **Private Sale/No Competitive Bidding** Guideline I.D.3 | The Debtors seek to consummate the Sale as a private sale without an auction or further bidding process. As described herein and in the Lowne Declaration, the Debtors believe that no other party would be interested in a similar transaction and that the Sale provides the best opportunity to maximize value. |
| **Deadlines** Guideline I.D.4 | N/A |
| **Good-Faith Deposit** Guideline I.D.5 | Due to the structure and timing of payment of the Purchase Price for the Acquired Assets, the Purchaser is not required to provide a good-faith deposit under the APA. |
| **Interim Arrangements with Proposed Buyer** Guideline I.D.6 | As set forth in Section 3.4 of the APA, for a period not to exceed ▓▓▓▓ following the Closing Date, Purdue shall use commercially reasonable efforts to execute or procure the execution of any document or take any other action necessary for the proper transfer of the Acquired Assets to the Purchaser and duly executed copies of assignment/transfer of granted orphan drug designations relating to the Acquired Assets. After such ▓▓▓▓ period, Purdue shall cooperate with the Purchaser to the extent necessary to transfer any Acquired Assets that remain in its possession. In the event that any requested document is not available, there shall be no obligation upon Purdue to create or otherwise generate the requested document or to carry out any such action. |
| **Use of Proceeds** Guideline I.D.7 | No specific use of proceeds is contemplated. |
| **Tax Exemption** Guideline I.D.8 | The Debtors do not seek to have the Sale of the Acquired Assets declared exempt from taxes under section 1146(a) of the Bankruptcy Code. |
| **Record Retention** Guideline I.D.9 | CellAct shall, and shall cause its Affiliates and its and their licensees to, maintain all relevant records, financial books and supporting documentation used in preparation of all Exploitation Reports, Milestone Payment Reports, and Royalty Payment Reports for the longer of: (i) the period of time required by Applicable Law and (ii) three (3) years following the payment in full by CellAct, or its designee, to Purdue of the Purchase Price in accordance with Article 2. *See* APA, § 6.8. |
| **Sale of Avoidance Actions** Guideline I.D.11 | N/A |
| **Requested Findings as to Successor Liability** Guideline I.D.12 | N/A |
| **Future Conduct** Guideline I.D.13 | N/A |

| | |
|---|---|
| **Requested Findings as to Fraudulent Conveyance** Guideline I.D.14 | N/A |
| **Sale Free and Clear of Unexpired Leases** Guideline I.D.15 | The Debtors seek to sell the Acquired Assets to the Purchaser free and clear of all Claims and Interests. *See* APA, § 8.2; Proposed Sale Order ¶¶ 8, 10. |
| **Relief from Bankruptcy Rule 6004(h)** Guideline I.D.16 | The Debtors seek relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h). *See* Proposed Sale Order ¶ 19. |

## Basis for Relief Requested

**A.    The Proposed Sale Satisfies the Requirements of Section 363 of the Bankruptcy Code and Should Be Approved**

   *1.    The Proposed Sale of the Acquired Assets Is Justified by Good and Sound Business Reasons*

17.    Section 363(b)(1) of the Bankruptcy Code empowers the Court to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, the Second Circuit requires a debtor to show that the decision to use the property outside of the ordinary course of business was based on the debtor's sound business judgment in light of "all salient factors" relating to the bankruptcy case. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *see also In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) ("Although not specified by section 363, the Second Circuit requires that transactions under section 363 be based on the sound business judgment of the debtor or trustee.").

8

18. The Debtors have demonstrated that the Sale is supported by good and sound business reasons. The Sale will enable the Debtors to receive maximum value for the Acquired Assets, which the Debtors have previously decided not to develop. Furthermore, the proposed Sale does not benefit any insider, nor does it unfairly favor any creditor or other party in interest.

### 2. *A Private Sale Is Warranted and Maximizes the Value for the Debtors' Estates*

19. Bankruptcy Rule 6004(f)(l) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). Courts often allow chapter 11 debtors to sell assets outside the ordinary course of business by private sale when the debtors demonstrate that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code and is based on sound business judgment. *See, e.g.*, *In re 160 Royal Palm, LLC*, 600 B.R. 119, 127 (S.D. Fla.) (explaining that "private sales are not unheard of in bankruptcy proceedings, and are in fact expressly contemplated by the bankruptcy rules"), *aff'd*, 785 F. App'x 829 (11th Cir. 2019); *In re Waypoint Leasing Holdings Ltd.*, Case No. 18-13648 (SMB) (Bankr. S.D.N.Y. Jan. 8, 2019) [ECF No. 226] (approving private sale of helicopter pursuant to section 363(b)); *In re China Fishery Grp. Ltd. (Cayman)*, Case No. 16-11895 (JLG) (Bankr. S.D.N.Y. Nov. 15, 2016) [ECF No. 228] (approving private sale of golf club membership pursuant to section 363(b)); *In re MF Glob. Inc.*, 535 B.R. 596, 605–06, 608 (Bankr. S.D.N.Y. 2015) (approving the private sale to a buyer already familiar with the debtors' assets as an exercise of "sound business judgment" under section 363(b)); *In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Jan. 18, 2013) [ECF No. 2893] (approving private sale of a technology center and industrial complex pursuant to section 363(b)); *In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (MG), 2012 Bankr. LEXIS 5116, at *17 (Bankr. S.D.N.Y. Nov. 1, 2012) (holding that "the Debtor has established a good business reason," pursuant to section 363(b), to sell its artwork through a private auction to save costs, reduce delay, and maximize the sale price). *C.f. In re Great Atl. & Pac. Tea Co.*, 544

9

B.R. 43, 49 (Bankr. S.D.N.Y. 2016) (noting that "there is no rule that a debtor's decision to reject a lease be subject to a formal auction: even asset sales are not conditioned on such a requirement, which does not appear in the Bankruptcy Code or Bankruptcy Rules" and pointing out that the Sale Guidelines "specifically recognize[] the propriety of private sales" and provide that, "subject to certain disclosure requirements, the Court does not 'express a preference for public sales over private sales as a means to maximize the sale price'" (footnote omitted)).

20.     Additionally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to section 105(a), orders are appropriate where they are essential to the debtor's reorganization efforts and do not pose a burden on the debtor's creditors. *See U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n* (*In re U.S. Lines, Inc.*), 197 F.3d 631, 640 (2d Cir. 1999); *Momentum Mfg. Corp. v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

21.     A court should defer to a debtor's business judgment regarding the manner in which an asset sale is conducted, including whether structured as a public or private sale. *See MF Glob.*, 535 B.R. at 605–06, 608 (noting that "[t]he business judgment of a trustee is entitled to great deference" and approving the sale of property pursuant to a private sale after consideration of the trustee's articulated justifications for the appropriateness of a private sale); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (recognizing that a trustee "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property" (quotation omitted)). *See also 160 Royal Palm,* 600 B.R. at 128 ("The use of a private sale, to take advantage

10

of the offer made by [the proposed purchaser], was within the Debtor's business judgment, and the Court sees no reason to supplant its judgment for the business judgment determination of the Debtor."); *In re NEPSCO, Inc.*, 36 B.R. 25, 26 (Bankr. D. Me. 1983) ("Clearly, the thrust of th[e] statutory scheme [governing section 363 sales] is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, *i.e.,* the creditors of the estate.").

22. The Debtors' decision to pursue a private sale is supported by the unique characteristics of this transaction. CellAct is uniquely positioned to acquire the Acquired Assets and has offered economics that are more attractive than the alternative, which is rejection of the existing agreements with CellAct. The Debtors believe that a public sale or bidding process and/or further private marketing efforts would result in delay and additional expense with no commensurate benefit to the Debtors' estates. Thus, the Debtors' determination to enter into the APA and to sell the Acquired Assets to the Purchaser in a private sale is a valid and sound exercise of the Debtors' business judgment.

**B.     The Sale of the Acquired Assets Should Be Free and Clear of Claims and Interests**

23. The Debtors propose to sell the Acquired Assets to the Purchaser free and clear of all Claims and Interests. The sale of estate property free and clear of any interest therein is governed by section 363(f) of the Bankruptcy Code, which provides, in relevant part:

> The trustee may sell property under [section 363(b) or (c)] free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

11

>   (4)   such interest is in bona fide dispute; or
>
>   (5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

24. Because section 363(f) of the Bankruptcy Code is written in the disjunctive, the Sale may be free and clear of interests if any of the five conditions are met. *Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343, 345 (E.D. Pa. 1988); *In re Borders Grp., Inc.*, 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011).

25. The Debtors submit that the Sale of the Acquired Assets free and clear of Claims and Interests satisfies one or more of the requirements under section 363(f) of the Bankruptcy Code. To the extent a party objects to the proposed Sale on the basis that it holds a prepetition Claim or Interest in the Acquired Assets, where the purchase price for a debtor's assets is the best available purchase price under the circumstances, a court may authorize the sale free and clear of interests pursuant to section 363(f)(3) of the Bankruptcy Code even if the purchase price is less than the face amount of such interests. *See In re Bos. Generating, LLC*, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010); *In re Beker Indus. Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986). The Debtors believe that the consideration provided by the proposed Sale represents the fair value of such assets.

26. Furthermore, if a party does not object to the proposed Sale, then such failure to object may be deemed consent under section 363(f)(2) of the Bankruptcy Code. Accordingly, the Debtors request that, unless a party asserting a prepetition Claim or Interest with respect to any of the Acquired Assets timely objects to this Motion, such party shall be deemed to have consented to the Sale. *See In re GSC, Inc.*, 453 B.R. 132, 183 (Bankr. S.D.N.Y. 2011); *Borders Grp.*, 453 B.R. at 484 ("Under section 363(f)(2), a lienholder who receives notice of a sale but does not object

within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens.").

27.    Therefore, the Sale free and clear of all Claims and Interests is in the best interest of the Debtors' estates and valid and justified under section 363(f) of the Bankruptcy Code.

**C.    The Purchaser Should Be Granted the Full Protection of Section 363(m) of the Bankruptcy Code**

28.    Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor in the event the approval of the sale under section 363(b) of the Bankruptcy Code is later reversed or modified on appeal. Specifically, section 363(m) of the Bankruptcy Code states the following:

> The reversal or modification on appeal of an authorization under [section 363(b) of the Bankruptcy Code] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

29.    Section 363(m) of the Bankruptcy Code fosters the "policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quotation omitted). *See also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) (explaining that section 363(m) "provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *Reloeb Co. v. LTV Corp.* (*In re Chateaugay Corp.*), No. 92 Civ. 7054 (PKL), 1993 U.S. Dist. LEXIS 6130, at *9 (S.D.N.Y. May 10, 1993).

30.    While the Bankruptcy Code does not define "good faith," most courts have adopted a traditional equitable definition, applying it to a buyer who "purchases the assets for value, in

good faith and without notice of adverse claims." *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 390 (2d Cir. 1997) (quoting *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985)). Good faith of a purchaser is demonstrated by "the integrity of his conduct during the course of the sale proceedings." *Id*. Courts in the Second Circuit have held that misconduct that would typically destroy a purchaser's good-faith status involves fraud, collusion or an attempt to control the sale price or take unfair advantage of other bidders. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs.* (*In re Colony Hill Assocs.*), 111 F.3d 269, 276 (2d Cir. 1997).

31.     The negotiations over the Sale were conducted in good faith and at arm's length, and to the best of the Debtors' knowledge, information and belief, no party has engaged in any misconduct, fraud or collusion. Therefore, the Debtors submit that the Purchaser has acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protections as such as set forth therein.

### Debtors' Reservation of Rights

32.     Except as expressly set forth herein, nothing contained herein or any action taken pursuant to such relief is intended to or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder or any other party; or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program or policy between the Debtors and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission as

to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Stay Under Bankruptcy Rule 6004(h)

33. The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h).[6] As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to maximize the value of their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the nature of the relief sought herein justifies immediate relief.

### Notice

34. Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any person or entity with a particularized interest in the subject matter of this Motion (together with the entities on the Master Service List, the "**Notice Parties**"). The Debtors respectfully submit that no further notice is required.

### No Prior Request

35. The Debtors have not previously sought the relief requested herein from the Court or any other court.

---

[6] Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

15

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Sale Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 28, 2021
New York, New York

          DAVIS POLK & WARDWELL LLP

          By: */s/ Eli J. Vonnegut*

          450 Lexington Avenue
          New York, New York 10017
          Telephone: (212) 450-4000
          Facsimile: (212) 701-5800
          Marshall S. Huebner
          Benjamin S. Kaminetzky
          Timothy Graulich
          Eli J. Vonnegut
          Christopher S. Robertson

          *Counsel to the Debtors*
          *and Debtors in Possession*