UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                 :

In re                                       :           Chapter 11

                                                   :

PURDUE PHARMA L.P., *et al.*,             :           Case No. 19-23649 (RDD)

                                                   :

                           Debtors.    :           Jointly Administered

                                                   :

------------------------------------------------------- x

## UNITED STATES TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY DIRECT APPEAL TO THE COURT OF APPEALS UNDER 28 U.S.C. § 158(d)

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
BETH A. LEVENE
SUMI K. SAKATA
WENDY COX
Trial Attorneys

Department of Justice
Executive Office for United States
  Trustees
441 G Street, N.W., Suite 6150
Washington, DC  20530
(202) 307-1399
Fax:  (202) 307-2397

WILLIAM K. HARRINGTON
United States Trustee, Region 2
LINDA A. RIFFKIN
Assistant United States Trustee
PAUL K. SCHWARTZBERG
BENJAMIN J. HIGGINS
Trial Attorneys

Department of Justice
Office of the United States Trustee
201 Varick Street, Room 1006
New York, NY  10014
(212) 510-0500
Fax:  (212) 668-2361

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND FACTS ................................................................................................................ 3

QUESTIONS PRESENTED AND RELIEF SOUGHT ................................................................ 12

REASONS WHY THE DIRECT APPEAL SHOULD BE ALLOWED ..................................... 13

    A.    The United States Trustee's Appeal Involves Legal Questions as to Which There Is No Controlling Precedent. ..................................................................... 15

    B.    The Appeal Involves a Matter of Public Importance. .......................................... 20

    C.    The Appeal Involves a Question of Law Requiring Resolution of Conflicting Decisions............................................................................................................... 24

    D.    An Immediate Appeal Would Materially Advance the Progress of the Case. ...... 25

CONCLUSION .............................................................................................................................. 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network Inc.*,
   599 B.R. 717 (Bankr. S.D.N.Y. 2019) ...........................................................................23, 25

*In re Bernard L. Madoff Inv. Securities LLC*,
   740 F.3d 81 (2d Cir. 2014) ...........................................................................................................19

*Bullard v. Blue Hills Bank*,
   575 U.S. 496 (2015) .......................................................................................................................14

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) .......................................................................................................................17

*In re Chassix Holdings, Inc.*,
   533 B.R. 64 (Bankr. S.D.N.Y. 2015) ........................................................................................25

*In re Chemtura Corp.*,
   439 B.R. 561 (Bankr. S.D.N.Y. 2010) .......................................................................................25

*Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber
   Network, Inc.*),
   416 F.3d 136 (2d Cir. 2005) .........................................................................................................19

*Elliott v. General Motors LLC (In re Motors Liquidation Co.)*,
   829 F.2d 135 (2d Cir. 2016) .........................................................................................................15

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995) .........................................................................................................19

*Homaidan v. Sallie Mae, Inc.*,
   No. 19-935, 2020 WL 5668972 (E.D.N.Y. Feb. 25, 2020) ....................................................14

*In re Johns-Manville Corp.*,
   517 F.3d 52 (2d Cir. 2008), *rev'd and remanded sub nom. Travelers Indem.
   Co. v. Bailey*, 557 U.S. 137 (2009) ...........................................................................................16

*In re Johns-Manville Corp.*,
   551 B.R. 104 (S.D.N.Y. 2016) ....................................................................................................15

*In re Johns-Manville Corp.*,
   802 F. App'x 20 (2d Cir. 2020) ...................................................................................................16

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982) .......................................................................................................................15

*Lynch v. Lapidem Ltd. (In re Kirwan Offices S.a.r.l.)*,
    592 B.R. 506 (S.D.N.Y. 2018), *aff'd, Lynch v. Mascini Holdings. Ltd. (In re
    Kirwan Offices S.a.R.L.)*, 792 F. App'x 99 (2d Cir. 2019) .....................................18

*MacArthur Co. v. Johns-Manville Corp.*,
    837 F.2d 89 (2d Cir. 1988) ..................................................................................19

*Mark IV Indus., Inc. v. N.M. Env't Dept.*,
    452 B.R. 385 (S.D.N.Y. 2011) ............................................................................20

*Martinez v. State of Cal.*,
    444 U.S. 277 (1980) ............................................................................................15

*In re Millennium Lab Holdings II, LLC*,
    945 F.3d 126 (3d Cir. 2019) ................................................................................18

*In re MPM Silicones, LLC*,
    No. 14-22503, 2014 WL 4436335 (Bankr. S.D.N.Y. Sep. 9, 2014), *aff'd in
    part, rev'd in part, and remanded*, 874 F.3d 787 (2d Cir. 2017).............................24

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ............................................................................................16

*In re Pacific Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) ..............................................................................13

*In re Quigley Co.*,
    676 F.3d 45 (2d Cir. 2012).......................................................................11, 18, 19

*Railway Lab. Executives' Ass'n v. Gibbons*,
    455 U.S. 457 (1982) ............................................................................................18

*SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp.,
    Inc.)*,
    960 F.2d 285 (2d Cir. 1992) ................................................................................19

*Securities Inv. Protection Corp. v. Bernard V. Madoff Inv. Secs. LLC*, Adv. P.
    Nos. 08-01789, 11-02760, 2017 WL 1806506, at *3 (Bankr. S.D.N.Y. May 4,
    2017) ...................................................................................................................14

*Société Internationale v. Rogers*,
    357 U.S. 197 (1958) ............................................................................................15

*In re Springfield Hosp., Inc.*,
    618 B.R. 109 (Bankr. D. Vt. 2020) ............................................................14, 20, 25

*In re Stearns Holdings, LLC*,
    607 B.R. 781 (Bankr. S.D.N.Y. 2019) ..................................................................25

*Stern v. Marshall*,
    564 U.S. 462 (2011).............................................................................5, 11, 17, 18

*In re SunEdison, Inc.*,
    576 B.R. 453 (Bankr. S.D.N.Y. 2017) ..................................................................25

*Weber v. United States*,
    484 F.3d 154 (2d Cir. 2007).............................................................................13, 26

*In re Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015)............................................................................................5, 17

**Statutes**

11 U.S.C. § 105 ..........................................................................................................5, 24

11 U.S.C. § 523 ...............................................................................................................22

11 U.S.C. § 524(e) ......................................................................................................5, 11

11 U.S.C. § 524(g) ..........................................................................................................19

11 U.S.C. § 1129(a)(1).......................................................................................................5

11 U.S.C. § 1141(d) ...........................................................................................................5

28 U.S.C. § 157(a) ...........................................................................................................17

28 U.S.C. § 157(b) ...........................................................................................................11

28 U.S.C. § 157(c)(1).....................................................................................................5, 17

28 U.S.C. § 158(d) .............................................................................................................1

28 U.S.C. § 158(d)(2) ...............................................................................................*passim*

28 U.S.C. § 1334(b) .........................................................................................................17

**Other Authorities**

Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks
    and Balances*, 100 Tex. L. Rev. 74 (2021), *available at*
    http://dx.doi.org/10.2139/ssrn.3851339 .......................................................25

Douglas G. Baird, Anthony J. Casey & Randal C. Picker, *The Bankruptcy Partition*, 166
U. PA. L. REV. 1675, 1688 (2018) .........................................................................19

Fed. R. Bankr. P. 8002 .....................................................................................................13

Fed. R. Bankr. P. 8002(b) ...................................................................................14

Fed. R. Bankr. P. 8006.................................................................................1, 13

Fed. R. Civ. P. Rule 23 .......................................................................................19

H.R. 2096 ..............................................................................................................24

H.R. 4777 ..............................................................................................................24

https://www.cdc.gov/opioids/basics/epidemic.html .......................................21

https://www.drugabuse.gov/drug-topics/opioids/opioid-overdose-crisis ......21

https://www.fda.gov/drugs/information-drug-class/timeline-selected-fda-
    activities-and-significant-events-addressing-opioid-misuse-and-abuse ...........21, 22

https://www.hhs.gov/opioids/about-the-epidemic/.html..................................21

Lindsey Simon, *Bankruptcy Grifters* (April 1, 2021) Yale Law Journal,
    Forthcoming, *available at* SSRN: https://ssrn.com/abstract=3817530 ...................23

Richard L. Epling, *Third-Party Releases in Bankruptcy Cases: Should There Be
    Statutory Reform?*, 75 Bus. Law. 1747, 1748 (spring 2020) ....................................19

U.S. Const. Amdt. 5...............................................................................................5

U.S. Const. art. I, § 8, cl. 4................................................................................5, 18

TO:   THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to 28 U.S.C. § 158(d) and Rule 8006(f) of the Federal Rules of Bankruptcy

Procedure, William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), hereby respectfully submits this memorandum of law in support of his Motion to

certify a direct appeal to the court of appeals under 28 U.S.C. § 158(d) of this Court's order

confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma

L.P. and Its Affiliated Debtors,[1] ECF No. 3787, (the "Confirmation Order"), and the related

order allowing the debtors to advance funds and take other actions to further the plan, Dkt. 3773

(the "Advance Order").  The Confirmation Order, Advance Order, and the Court's Modified

Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter 11 Plan (the

"Bench Ruling"), ECF No. 3786, are attached.  In support thereof, the United States Trustee

respectfully states:

## PRELIMINARY STATEMENT

Under 28 U.S.C. § 158(d), certification of a direct appeal is required here to resolve

questions of critical public importance concerning the circumstances, if any, under which chapter

11 bankruptcy may extinguish non-debtors' direct claims against other non-debtors.  This

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.  For convenience, we refer to these parties collectively as "Debtors" or "Purdue".

question has led to a range of divergent and inconsistent results within this circuit and even this

district.[2]  An expeditious decision by the Second Circuit will resolve these legal questions.

    This appeal arises from what is, by any measure, one of the largest mass tort and public

health crises in history.  Like any other bankruptcy plan, the plan approved by the Confirmation

Order (the "Plan") creates a comprehensive framework for resolving and paying claims asserted

against Purdue by its creditors, who include countless victims of the opioid crisis.  But the Plan

goes far beyond reorganizing Purdue as a public benefit company by also enjoining and

effectively discharging opioid claims against countless other individuals and entities who have

neither sought nor been granted bankruptcy relief—most notably the Sackler family (the

"Shareholder Release"), members of which until recently managed Purdue and who are and will

remain its ultimate owners until the Plan goes effective.  The Plan provides no opportunity for an

opioid victim or other creditor to consent to the Shareholder Release, much less opt out of it.

Moreover, because of its broad definitions, the Shareholder Release extinguishes a wide array of

opioid-related causes of action that could be asserted by an opioid victim against the Sacklers

and others.

    The sweeping nature of the Shareholder Release raises important questions about the

limits of the bankruptcy court's statutory, constitutional, and jurisdictional authority to

extinguish claims by non-debtors against other non-debtors, as well as whether such a release

may be imposed absent consent or direct compensation, and without adequate notice and hearing

on the merits, without violating the due process rights of the affected claimants.  Although the

Second Circuit has considered more limited third-party releases in other contexts, it has never

before considered on the merits the constitutional or legal propriety of extinguishing non-

---

[2] It has also produced a deep split among courts of appeals.

2

debtors' direct claims against other non-debtors under the Due Process Clause of the United

States Constitution.  And it has never passed upon the propriety of releases as limitless as the one

approved here.  Thus, the principal questions raised by this appeal are of great public importance

and the subject of inconsistent decisions within the circuit and within the Southern District of

New York.  They are not subject to controlling Second Circuit or Supreme Court precedent.

Moreover, an immediate appeal will materially advance the conclusion of this case.  Each of

these reasons independently warrants certification of this appeal for direct appeal to the Second

Circuit.

### BACKGROUND FACTS

1.      Purdue Pharma L.P. and its affiliated debtors commenced voluntary cases under

chapter 11 of the Bankruptcy Code on September 15, 2019 (the "Petition Date").

2.      They are pharmaceutical companies that have manufactured, sold, or distributed,

among other products, extended-release, long-acting opioid pain medications.  *See* First Day

Brief, ECF No. 17 at 4.

3.      The Debtors are wholly owned by a non-debtor, Pharmaceutical Research

Associates LP ("PRA").  *Id*. at 19.  PRA is owned by two entities, each of which is ultimately

owned by various trusts for the benefit of Debtors' ultimate owners, members of the Raymond

Sackler family and Mortimer Sackler family (collectively, the "Sackler Family").  *Id*.

4.      No member of the Sackler Family is a debtor in these cases.

**The Confirmation Proceedings.**

5.      On March 16, 2021, the Debtors filed a proposed Disclosure Statement for

Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated Debtors.  ECF No. 2488.

6.      On April 21, 2021, the United States Trustee objected to the Disclosure

Statement, arguing that it failed to contain adequate information regarding the releases and

3

injunctions contemplated for the Sackler Family and other non-debtors, and questioning this

Court's authority and jurisdiction to issue those releases.  ECF No. 2686.

7.    On June 3, 2021, the Debtors filed a Disclosure Statement for Fifth Amended

Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors (the

"Disclosure Statement").  ECF No. 2983.

8.    On the same day, this Court entered the Order Approving (I) Disclosure

Statement for Fifth Amended Chapter 11 Plan, (II) Solicitation and Voting Procedures,

(III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain

Dates with Respect Thereto (the "Disclosure Statement Order").  ECF No. 2988.[3]

9.    On July 14, 2021, the Debtors filed the Sixth Amended Joint Chapter 11 Plan of

Reorganization of Purdue Pharma L.P. and its Affiliated Debtors (the "Sixth Plan").  ECF No.

3185.

10.    Section 10.7(b) of the Sixth Plan included a broad release of causes of action (the

"Shareholder Release") against all "Shareholder Released Parties," which it defined to include

the "Sackler Family Members"—which in turn was defined to include Raymond and Mortimer

Sackler, any of their descendants, any current and former spouses, and any of their estates—as

well as six other broad categories that encompass potentially thousands of individuals and

entities.  *Id*. at 40, 41-42, 132-34.  Under its terms, it is impossible to specifically identify all

those being released, but the Shareholder Released Parties include Sackler Family members still

unborn.

11.    As of the Sixth Plan, those losing their claims against the Sackler Family

Members and potentially thousands of others included not just all holders of claims or interests

---

[3] The United States Trustee has also appealed the interlocutory order approving the disclosure statement, which
merged into the final confirmation order.  That order is also attached.

against the Debtors, but also all people and entities, including those that do not hold claims or interests against the Debtors. *Id.* at 26, 33. Under the Sixth Plan, the claims being released included any claims against the Sackler Family Members and associated persons bearing any relationship to the opioid crisis, arising anywhere in the world, from the beginning of time, other than for criminal liability (which neither the Court nor the parties can release). *Id*. at 132-34.

12.    On July 19, 2021, the United States Trustee objected to confirmation of the Sixth Plan with the Shareholder Release for several reasons, including:

- The Bankruptcy Code expressly prohibits courts from extinguishing involuntarily the claims of non-debtor third parties against other non-debtors except in asbestos cases. Section 524(e) of the Bankruptcy Code proscribes the discharge of non-debtors, and section 1129(a)(1) prohibits confirmation of a plan that does not comply with "applicable provisions" of the Bankruptcy Code. Section 1141(d) specifies the scope of discharge upon confirmation and does not include non-debtor parties within its scope. And Supreme Court precedent bars the residual equitable powers of section 105 from being used to allow what the Bankruptcy Code neither authorizes nor permits.

- The Shareholder Release violates the United States Constitution.[4] A release of direct claims held by non-debtors against other non-debtors that are untethered from the bankruptcy estate would exceed the powers conferred by the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4. Even if the Code could loosely be read to allow bankruptcy courts to discharge non-debtor claims against other non-debtors, the Due Process Clause, U.S. Const. Amdt. 5, prohibits such a broad deprivation of the rights of third parties absent proper notice and a hearing—notice that is woefully deficient here because of the incomprehensible definitions of who is released, who is releasing, and what is released. But even all the notice in the world cannot legitimize a court's dictating settlement terms or forcing parties to relinquish claims without their consent or their day in court.

---

[4] In addition, as non-Article III judges, bankruptcy judges lack constitutional authority to adjudicate the state law causes of action against the Sackler Family and other non-debtors that are extinguished by the Plan. Claims between non-debtors that arise under non-bankruptcy substantive law are at most "related to" the bankruptcy, 28 U.S.C. § 157(c)(1), and would not "necessarily be resolved in the claims allowance process." *Stern v. Marshall*, 564 U.S. 462, 499 (2011). Thus, absent all parties' knowing and informed consent, bankruptcy judges lack statutory and constitutional authority to enter a final judgment to impose third-party releases against non-debtors that extinguish their state law causes of action against other non-debtors. *See In re Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015).

ECF No. 3256.

13.     The United States Attorney for the Southern District of New York filed a

statement echoing the due process and other concerns expressed by the United States Trustee.

ECF No. 3268.  Many others, including victims, state and local governments, insurers, and

industry participants, also objected or expressed similar concerns.  *See, e.g.*, ECF No. 323, 3262,

3264, 3270, 3272, 3274, 3275, 3276, 3278, 3279, 3280, 3292, and 3306.

14.     Between the morning that the confirmation hearing began and the day *after* the

bankruptcy court rendered its oral ruling stating it would confirm the plan, the Debtors amended

their proposed plan six more times.  *See* ECF Nos. 3545, 3632, 3652, 3682, 3706, 3726.  Each of

these plans altered the release language of the Sixth Plan in small ways, but the text continued to

release an admittedly unknown, and unidentifiable, number of non-debtors from liability without

the knowing and informed consent of the releasing parties.  *See, e.g.,* ECF No. 3682 at 43

(definition of "Shareholder Released Parties"); *id*. at 132-33 (Plan § 10.7(b)).

15.     The United States Trustee filed supplemental objections to the amended plans re-

asserting his prior objections to the Shareholder Release and objecting to amendments being

filed after the close of evidence in the confirmation hearing.  ECF Nos. 3636, 3710.

16.     The Court held the confirmation hearing on August 12-13, 2021, August 16-19,

2021, August 23, 2021, August 25, 2021, and August 27, 2021.

17.     On September 1, 2021, the Court rendered an oral ruling stating that it would

confirm the proposed plan provided that two changes were made relating to claims against the

Sackler Family Members and other non-debtors.  9/1/21 Tr. at 134-35, 154-55.  The first change

required that the Shareholder Release apply to claims where the Debtors' conduct is a legal cause

or legally relevant factor to the cause of action against the non-debtors.  *Id*. at 134-35.  The

second change was to a provision requiring that parties must first receive permission from this Court before they may bring certain non-opioid claims that are not released against the Sackler Family Members or other non-debtors. *Id*. at 154-55.

18.    On September 2, 2021, the Debtors filed a Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors.  ECF No. 3726.  The Plan includes the amendments the Court requested but remains objectionable for the reasons explained in the United States Trustee's objections to the prior version of the plan.  Among other things, the Plan expanded the definition of a "Cause of Action."  *Compare* ECF No. 2967 at 9-10 *to* ECF No. 3726 at 10.  It also narrowed the Shareholder Release to some extent, such as by excluding certain non-opioid claims.  ECF No. 3726 at 31, 132.  However, as described in more detail below, the Shareholder Release continues to shield the Sackler Family Members and hundreds of other non-debtors from opioid-related liability.

19.    On September 15, 2021, the Court entered the Advance Order.  Dkt. 3773.

20.    On September 17, 2021, the Court entered the Confirmation Order, ECF No. 3787, and Modified Bench Ruling, ECF No. 3786.

**The Shareholder Release and the Modified Bench Ruling.**

21.    The Shareholder Release in section 10.7(b) of the confirmed Plan discharges a potentially limitless group of Sackler-related non-debtors for world-wide opioid-related liability and bars other non-debtors' from asserting their direct claims against the Sacklers and related parties.  The Shareholder Release as confirmed continues to provide a release of non-debtors' claims for the benefit of the hundreds or thousands of Sackler Family Members, associated entities, and other non-debtor parties, including attorneys and trusts.  ECF No. 3726 at 43.  This includes all Persons listed on "Exhibit X" to the Shareholder Settlement Agreement, an as-yet

7

unsigned contract between Purdue and the Sackler Family and related parties through which

Purdue's chapter 11 plan will be funded. ECF No. 3711 at 43-483 (Seventeenth Plan

Supplement, Ex. AA). Exhibit X to the Shareholder Settlement Agreement includes roughly one

thousand line-entries for persons and entities related to the Sackler Family. ECF No. 3711 at

305-333 (Seventeenth Plan Supplement, Ex. X to Ex. AA). It also includes entries that list

categories without names (such as all spouses, children, and grandchildren of, or the businesses,

assets, and entities owned by, certain individual Sackler Family Members). *Id.* at 306.

22.    The confirmed Plan defines the "Releasing Parties" whose claims against non-

debtors are deemed to be released under the Plan as including, among others, "all Holders of

Claims (whether or not asserted, transferred, hypothecated, waived, Allowed, allowable, choate,

known, accrued, treated under this Plan or otherwise) against, or Interests in, the Debtors," and

"all Holders of Future PI Channeled Claims." ECF No. 3706 at 40. "Future PI Channeled

Claim" is defined as any opioid-related personal injury claim relating in any way to the Debtors

other than "PI Channeled Claims" and other non-individual claims. *Id.* at 17-18. "PI Channeled

Claims" are defined, among other things, as opioid-related personal injury claims that arose pre-

petition. *Id.* at 27, 31 & 33. Consequently, the Releasing Parties include (i) anyone with both a

claim against Purdue and a cause of action against the non-debtor Sackler Family or other

Shareholder Released parties, as well as (ii) anyone with a post-petition Purdue-related opioid-

related personal injury claim against the non-debtor Sackler Family or other Shareholder

Released parties. *Id.*

23.    The Shareholder Release extends to

any and all Causes of Action . . . that any Releasing Party, or that any other Person
or party claiming under or through any Releasing Party, would have presently or in
the future been legally entitled to assert in its own right (whether individually or
collectively) or on behalf of any Releasing Party or any other Person, . . . (x) based

8

on or relating to, or in any manner arising from, in whole or in part, (i) the Debtors, as such Entities existed prior to or after the Petition Date (including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the past, present or future use or misuse of any opioid by a Releasing Party), (ii) the Estates or (iii) the Chapter 11 Cases and (y) as to which any conduct, omission or liability of any Debtor or any Estate is the legal cause or is otherwise a legally relevant factor.

ECF No. 3726 at 132.  The Plan does not release claims of the federal government, which

reached its own settlement with certain Sackler Family Members.  ECF No. 3706 at 142-43 (Plan

§ 10.21).  The Shareholder Release also does not release claims for criminal or tax liability.  *Id.*

at 16, 132 (definition of "Excluded Claim" & § 10.7(b)).  It also does not release certain non-

opioid claims.  *Id*. at 31, 132 (definition of "Non-Opioid Excluded Claim," § 10.7(b)).

24.    The Plan extinguishes (i) all pre-petition opioid-related causes of action against

the Sackler Family Members and other non-debtors as to which Purdue's conduct is a "legal

cause or is otherwise a legally relevant factor," held by any non-debtor arising anywhere in the

world, from the beginning of time, if that non-debtor also held a claim against Purdue, and

(ii) any post-petition opioid-related personal injury claims against the Sackler Family Members

and other non-debtors that was in any way related to Purdue.  It would release not just claims

against the Sackler Family Members and other non-debtors for derivative liability related to

Purdue's misconduct, but also opioid-related claims directly against such persons or entities for

their own misconduct.

25.    Relatedly, the Plan establishes a perpetual, post-confirmation gate-keeping role

for this Court to permit any person to assert a cause of action against released parties based on a

"Non-Opioid Excluded Claim."  ECF No. 3726 at 148 (Plan § 11.1(e)).  Should this Court

determine that the claimant's cause of action does not qualify under the definition, that

9

determination would dispose of the non-debtors' cause of action before it could proceed before a state, or Article III, court.

26.      The confirmed Plan defines various forms of what it terms "channeled claims" to include causes of actions released by the Shareholder Release, and ostensibly channels the causes of actions to trusts established under the plan.  *See*, *e.g.*, ECF No. 3726 at 27 & 31, 57-58 (Plan, definitions of "NAS PI Channeled Claims" and "Non-NAS PI Channeled Claims;" § 4.10).  Yet, no one is entitled to any distribution based on their causes of action against non-debtors.  *See* ECF No. 3787 at 333 (Non-NAS PI TDP § 2(b)(ii)); *id*. at 392 (NAS PI TDP § 2(b)(ii)); *id*. at 433 (PI Futures TDP § 3).

27.      In considering the Shareholder Release, the Court first held that "bankruptcy subject matter jurisdiction to impose a third-party claims release and injunction under the plan exists" where a release directly affects the *res* of the Debtors' estates, including where there are "insurance rights, the shareholder released parties' rights to indemnification and contribution, and the Debtors ability to pursue the estates' own closely related, indeed fundamentally overlapping, claims."  ECF No. 3786 at 111.

28.      The Court overruled due process objections to the extinguishment of the non-debtors' direct claims against the Sacklers on the ground that a third-party release is not "an adjudication of the claim. . . . [but] part of the settlement of the claim that channels the settlement funds to the estate."  *Id.* at 113.  As to notice, the Court also ruled that "only holders of claims against the Debtors are being deemed to grant the shareholder release, and it is equally clear . . . that holders of such claims received due process notice of the plan's intention to provide a broad release of third-party claims against the shareholders and their related entities related to the Debtors."  *Id.*

29.     The Court also held that a "proceeding to determine whether a Chapter 11 plan that contains such a release should be confirmed not only is a core proceeding under 28 U.S.C. § 157(b), but also is a fundamentally central aspect of a Chapter 11 case's adjustment of the debtor/creditor relationship and, therefore, 'constitutionally core' under *Stern v. Marshall*, 564 U.S. 462 (2011), and its progeny." *Id.* at 116 (citations omitted).

30.     As to the statutory objections, the Court held that "[i]t appears clear, therefore, under well-reasoned caselaw as well as the Code itself that section 524(e) is not a statutory impediment to the issuance or enforcement of a third-party claim release under a plan in appropriate circumstances." *Id.* at 124 (*see also* discussion at 118-124).  As to the authority supporting such releases, the Court held that "there is a sufficient source of power in the Bankruptcy Code itself, in sections 105(a) and 1123(a)(5) and (b)(6), as well as in the Court's inherent equitable power." *Id.* at 131; *see also id.* at 124-25 (discussing the bankruptcy court's power).

31.     Finally, the Court held that the Shareholder Release satisfied Second Circuit precedent. *See id.* at 125-143.  The Court cited *In re Quigley Co.,* 676 F.3d 45 (2d Cir. 2012), and held that "[t]o properly be subject to a third-party claims release under a plan, therefore, the third-party claim should be premised as a legal matter on a meaningful overlap with the debtor's conduct." *Id.* at 130.  The Court also determined that the Court should "analyze[] the fairness of the settlement from the perspective of the third-party claimants in comparison to the likely result if they were instead able to separately pursue their third-party claims" and made related findings. *Id.* at 138-143.

**The Appeal.**

32.    On September 15, 2021, the United States Trustee filed notices of appeal of the

Court's September 1, 2021, oral ruling confirming the Plan and the Advance Order.  ECF Nos.

3776, 3777.

33.    On September 17, 2021, the Court entered the Confirmation Order, ECF No.

3787, and Modified Bench Ruling, ECF No. 3786.

34.    On September 21, the United States Trustee filed an amended notice of appeal

from the Confirmation Order and the Modified Bench Ruling.  ECF No. 3799.

## QUESTIONS PRESENTED AND RELIEF SOUGHT

The questions presented by the United States Trustee's appeal of the Confirmation Order

include the following:

(1) Whether this Court violated the releasing parties' rights under the Fifth Amendment's Due

Process Clause when it extinguished their direct claims against non-debtors, including the

Sackler Family?

(2) Whether this Court erred by concluding that the Bankruptcy Code authorizes non-consensual

non-debtor releases?

(3) Whether this Court exceeded the scope of the bankruptcy power under the Bankruptcy Clause

of the Constitution by approving the non-consensual non-debtor releases?

(4) Whether this Court erred by concluding that an Article I court could constitutionally issue a

final order that extinguishes non-debtors' direct state-law claims against other non-debtors?

(5) Whether this Court correctly construed Second Circuit decisions to permit non-consensual

non-debtor releases and if so, whether this Court correctly construed the scope of that authority?

12

The United States Trustee asks this Court to certify the Confirmation Order and Advance

Order for direct review by the Second Circuit.[5]

## **REASONS WHY THE DIRECT APPEAL SHOULD BE ALLOWED**

Under 28 U.S.C. § 158(d)(2), appeal of an order issued by a bankruptcy court may be

heard directly by the Court of Appeals if the order is certified for direct appeal and the Court of

Appeals accepts the appeal.  "The twin purposes of th[is] provision [are] to expedite appeals in

significant cases and to generate binding appellate precedent in bankruptcy, whose caselaw has

been plagued by indeterminacy."  *In re Pacific Lumber Co.*, 584 F.3d 229, 241-42 (5th Cir.

2009).

The statute is written in the disjunctive and thus states four independent criteria under

which direct review is appropriate.  Direct review is warranted if the order (1) "involves a

question of law as to which there is no controlling decision of the court of appeals for the circuit

or of the Supreme Court of the United States," 28 U.S.C. § 158(d)(2)(A)(i), *or* (2) "involves a

matter of public importance," 28 U.S.C. § 158(d)(2)(A)(i), *or* (3) "involves a question of law

requiring resolution of conflicting decisions," 28 U.S.C. § 158(d)(2)(A)(ii), *or* if (4) "an

immediate appeal . . . may materially advance the progress of the case," 28 U.S.C.

§ 158(d)(2)(A)(iii).  *See Weber v. United States*, 484 F.3d 154, 157 (2d Cir. 2007) (quoting 28

U.S.C. § 158(d)(2)(A)).[6]  Only one of the four criteria must be satisfied to certify an order for

---

[5] Because the only purpose of the Advance Order is to further the Plan, the Advance Order only has merit to the extent the Confirmation Order itself is likely to survive appeal.  Accordingly, the United States Trustee plans to move the district court to consolidate the appeals of the two orders, and they likewise should be heard together at the Second Circuit if the appeal is certified for direct review.

[6] A request for certification must be made "not later than 60 days after the entry of the judgment, order, or decree." 28 U.S.C. § 158(d)(2)(E).  And it must be addressed to the court where the matter is deemed to be pending.  *See* Fed. R. Bankr. P. 8006(b) & (d).  Under the rule, a request for certification should be directed to the bankruptcy court within 30 days after the effective date under Fed. R. Bankr. P. 8002 of the notice of appeal.  After that date, a request for certification should be directed to the district court.  A notice of appeal "filed after the bankruptcy court announces a decision or order—but before entry of the judgment, order, or decree—is treated as filed on the date of

direct appeal. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015) ("Unlike [28 U.S.C.]

§ 1292(b), which permits certification only when three enumerated factors suggesting

importance are *all* present, § 158(d)(2) permits certification when *any one* of several such factors

exists. . . .") (emphasis added). Notably, none of these factors require this Court to agree that the

appeal is meritorious. Only the first and third factors directly relate to the merits, and they look

only to whether the appeal presents a question of law for which there is no controlling appellate

precedent or on which there are conflicting decisions.

Certification of an order for direct appeal is not discretionary. *In re Springfield Hosp.,*

*Inc.,* 618 B.R. 109, 113 (Bankr. D. Vt. 2020) (quoting *GE Cap. Corp. v. Mukamal*, 2017 WL

7792615, at *2 (S.D. Fla. 2017)). The statute provides that if the bankruptcy court determines

that one of the four listed circumstances exists, then the bankruptcy court "*shall* make the

certification." 28 U.S.C. § 158(d)(2)(B) (emphasis added). Thus, the bankruptcy court must

certify an order for direct review if any one of the four statutory criteria is satisfied. *Homaidan*

*v. Sallie Mae, Inc.*, No. 19-935, 2020 WL 5668972, at *2 (E.D.N.Y. Feb. 25, 2020); *Securities*

*Inv. Protection Corp. v. Bernard V. Madoff Inv. Secs. LLC*, Adv. P. Nos. 08-01789, 11-02760,

2017 WL 1806506, at *3 (Bankr. S.D.N.Y. May 4, 2017); 1 Collier on Bankruptcy ¶ 5.06[3]

("court must [certify] on request of one or more of the parties if it determines that [at] least one

of the conditions specified in section 158(d)(2)(a)(i), (ii) or (iii) exists").

Because the United States Trustee's appeal satisfies all four of the statutory tests for

direct certification (although it need only satisfy one), the Court must certify as requested.

---

and after the entry." Fed. R. Bankr. P. 8002(b). Here, the United States Trustee filed his original notice of appeal of
the Confirmation Order after the Court announced its decision but before it entered the Confirmation Order. Thus,
the notice of appeal became effective on September 17, 2021, the date on which this Court entered its written order.
Therefore, this motion is timely and properly addressed to this Court.

A.    **The United States Trustee's Appeal Involves Legal Questions as to Which There Is No Controlling Precedent.**

This appeal presents the pure legal issue of whether a bankruptcy court may constitutionally extinguish direct non-debtor claims against other non-debtors without compensation or consent and without the opportunity to be heard on those claims. The extinguished causes of action are the victims' property protected by the Due Process Clause, which applies in bankruptcy cases like this. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Martinez v. State of Cal.*, 444 U.S. 277, 281–82 (1980); *Société Internationale v. Rogers*, 357 U.S. 197, 209 (1958); *Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.2d 135, 161 (2d Cir. 2016); *In re Johns-Manville Corp.*, 551 B.R. 104, 113 (S.D.N.Y. 2016).

The Plan denies the victims any compensation for their extinguished causes of action against the Sackler Family Members and the other released non-debtors. Under the Plan, newly created trusts will pay victims only on their bankruptcy claims against the Debtors and not on their causes of action against the extinguished non-debtor claims. *See* ECF No. 3726 at 115 (Plan § 6.21); ECF 3655 at 10 (Exhibit I, Non-BNAS PI TDP); *id.* at 44 (Exhibit J, NAS PI TDP). The Plan documents expressly prohibit any value being paid for pre-petition direct causes of action against the Sackler Family or other non-debtors for opioid-related personal injury claims. *See* ECF No. 3655 at 10 (Exhibit I) ("Distributions hereunder are determined only with consideration to a Non-NAS PI Claim held against the Debtors, and not to any associated Non-NAS PI Channeled Claim against a non-Debtor party.") (emphasis added); *id.* at 44 (Exhibit J) ("Distributions hereunder are determined only with consideration to an NAS PI Claim held against the Debtors, and not to any associated NAS PI Channeled Claim against a non-Debtor party.") (emphasis added). The same is true for any opioid-related causes of action arising post-

15

petition. *See* ECF No. 3655 at 61 (Exhibit N, PI Futures TDP) ("A Future PI Claimant may not pursue litigation against the PI Futures Trust for any Future PI Channeled Claim formerly held or that would have been held against a non-Debtor party.").

The Plan also deprives the non-debtor Releasing Parties of their opportunity to be heard on their extinguished direct claims against the Sacklers. The "deep-rooted historical tradition that everyone should have his own day in court" is a fundamental right guaranteed by the Due Process Clause. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989)). The Releasing Parties, however, were deprived of their day in court and given no opportunity to litigate or settle their direct causes of action against solvent parties. As this Court explained to one of the many victims who lost a loved one to opioids, even for the 140,000 claims filed against the Debtors in these cases—which would not include causes of action against non-debtors—"[t]he merits . . . have not yet been determined" and would not be until after the Plan is confirmed. 8/16/21 Tr. at 51-59. But for those with causes of action against the Sackler Family Members and other non-debtors that are being extinguished by this Plan, the merits of their causes of action will never be determined because those victims' claims will never be heard by any court.

Neither the Supreme Court nor the Second Circuit has held that the Due Process Clause permits a bankruptcy court to non-consensually and permanently extinguish non-debtors' direct causes of action against other non-debtors without compensation or consent and without a hearing on their claims.[7]

---

[7] Although the Second Circuit has considered, in a non-precedential opinion, due process issues in connection with the different question of whether a non-debtor release may be enforced on res judicata grounds once it has become final and non-appealable, *see In re Johns-Manville Corp.*, 802 F. App'x 20, 23-24 (2d Cir. 2020), it has never directly considered a due process challenge to such a release on the merits. *See In re Johns-Manville Corp.*, 517 F.3d 52, 60 n.17 (2d Cir. 2008) (noting it was not addressing due process claims), *rev'd and remanded sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 154 (2009) ("We do not resolve whether a bankruptcy court, in 1986

Likewise, the question remains open in this circuit as to whether bankruptcy courts, which are not Article III courts, can constitutionally extinguish independent claims held by non-debtors against non-debtors through non-debtor releases or whether such releases fall within the scope of the power granted by the Bankruptcy Clause. The United States Trustee argued that non-Article III judges lack constitutional authority to adjudicate the state law causes of action against the Sackler Family Members and other non-debtors that are extinguished by the Plan and thus, lack authority to extinguish those claims. Claims between non-debtors that arise under non-bankruptcy substantive law are at most "related to" the bankruptcy, 28 U.S.C. § 157(c)(1), and would not "necessarily be resolved in the claims allowance process." *Stern v. Marshall*, 564 U.S. 462, 499 (2011) (holding authority to adjudicate private state-law disputes must generally be vested in Article III judges). *See also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (although recognizing bankruptcy court's jurisdiction over proceedings "related to" bankruptcy case under 28 U.S.C. §§ 157(a) & 1334(b), such jurisdiction "cannot be limitless"); *id.* at 323 (questioning authority of bankruptcy court to "grant injunctions over cases that [it] may not decide" as "inconsistent" with limited jurisdiction over related proceedings under 28 U.S.C. § 157(c)(1)) (Stevens, J.) (dissenting). Thus, absent all parties' knowing and informed consent, bankruptcy judges lack statutory and constitutional authority to enter a final judgment to impose third-party releases against non-debtors that extinguish their state law causes of action against other non-debtors. *See In re Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) ("Article III is not violated when the parties knowingly and voluntarily consent to adjudication [of a *Stern* claim] by a bankruptcy judge.").

---

or today, could properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing.").

While the Court's ruling relied primarily on *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019), and *Lynch v. Lapidem Ltd. (In re Kirwan Offices S.a.r.l.)*, 592 B.R. 506, 509-12 (S.D.N.Y. 2018), *aff'd, Lynch v. Mascini Holdings. Ltd. (In re Kirwan Offices S.a.R.L.)*, 792 F. App'x 99 (2d Cir. 2019).  As a Third Circuit decision, *Millennium Lab* is not binding in this circuit, and the Second Circuit did not reach this issue in its nonprecedential decision affirming *Lynch*.

While this Court cited *In re Quigley Co.*, 676 F.3d 45, 51-52 (2d Cir. 2012), in support of its ruling on this issue, ECF No. 3786 at 117, *Quigley* did not address bankruptcy courts' constitutional authority to extinguish a claim.  Notably, *Quigley* concerned a temporary stay of litigation rather than the permanent disposition of claims.  *Id*. at 52 ("Enjoining litigation to protect bankruptcy estates *during the pendency of bankruptcy proceedings*, unlike the entry of the final tort judgment at issue in *Stern*, has historically been the province of the bankruptcy courts.") (emphasis added).

Nor has the Second Circuit addressed whether the extinguishment of direct causes of action held by non-debtor victims against other non-debtors falls outside the powers conferred by the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4.  "Congress' power under the Bankruptcy Clause 'contemplate[s] an adjustment of a failing debtor's obligations.'" *Railway Lab. Executives' Ass'n v. Gibbons*, 455 U.S. 457, 466 (1982) (quoting *Continental Ill. Nat'l Bank & Tr. Co. of Chicago v. Chicago, R.I. & P. Ry. Co.*, 294 U.S. 648, 673 (1935)).  Releasing claims by non-debtors against other non-debtors does not fall within the scope of this power because it adjusts a non-debtor's obligations—not the obligations of a debtor who is within the bankruptcy court's in rem jurisdiction.

18

Finally, the court of appeals has yet to address directly the bankruptcy court's statutory

or equitable authority to issue these releases.  The Second Circuit decisions cited by this Court in

the Bench Ruling either decided the appeal on other grounds, *e.g., Deutsche Bank AG v.*

*Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 145 (2d

Cir. 2005) (affirming approval of third-party release on grounds of equitable mootness), or

involved a release that was authorized by a specific statutory provision not relevant here,

released only claims that are duplicative or derivative of claims belonging to the debtor, sought

relief from property that was part of the debtor's estate.[8]  *See, e.g., In re Bernard L. Madoff Inv.*

*Securities LLC,* 740 F.3d 81, 92 (2d Cir. 2014) (affirming injunction in SIPA proceeding against

third-party litigation because "as in *Manville I,* appellants' alleged injuries are inseparable from,

and predicated upon, a legal injury to the estate");[9] *In re Quigley Co.*, 676 F.3d 45 (2d Cir. 2012)

(finding, in context of section 524(g) asbestos case, that temporary injunction against third-party

litigation was within bankruptcy court's jurisdiction due to its direct impact on debtor's

insurance rights but holding that injunction could not be imposed under section 524(g)); *SEC v.*

*Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*), 960 F.2d 285

(2d Cir. 1992) (approving release of claim by class representative in Fed. R. Civ. P. Rule 23 class

action); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988) (approving

---

[8] And the "Supreme Court has never ruled on the legitimacy and permissible scope of third-party releases, so the
case law has developed in the U.S. circuit courts of appeals."  Richard L. Epling, *Third-Party Releases in
Bankruptcy Cases: Should There Be Statutory Reform?*, 75 Bus. Law. 1747, 1748 (spring 2020).

[9] Indeed, other Second Circuit bankruptcy decisions hold that "when creditors . . . have a claim for injury that is
particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded
from doing so." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1093 (2d Cir. 1995).  It would follow that if the
trustee or debtor in possession cannot pursue a creditor's claims for particularized injury against a third party, then
the court should not have the authority to extinguish that very claim.  "Parties forced to accept releases in the name
of global peace can always be completely compensated.  If they are not compensated, one should suspect that the
estate is capturing the value of an asset—a cause of action one third-party has against another—that
does not belong to it."  Douglas G. Baird, Anthony J. Casey & Randal C. Picker, *The Bankruptcy Partition*, 166
U. PA. L. REV. 1675, 1688 (2018).

injunction regarding disposition of debtor's insurance proceeds where plaintiffs' claims were

"inseparable from Manville's own insurance coverage") (often referred to as "*Manville I*").

None of these cases stand for the proposition that a bankruptcy court has authority to

extinguish non-debtors' direct claims against other non-debtors that are independent of the

debtor's own claims and property to further a debtor's reorganization.  Nor do these cases hold

that a non-debtor defendant may create bankruptcy jurisdiction by insisting on such a third-party

release as a condition of its own settlement with the estate.

The issues of this appeal are therefore of first impression in the Second Circuit and not

the subject of controlling precedent, making certification of a direct appeal mandatory.

### B.    The Appeal Involves a Matter of Public Importance.

Certification is also independently required because the constitutionality and legality of

non-consensual non-debtor releases in chapter 11 plans generally and in this case particularly

"involve[] a matter of public importance."  28 U.S.C. § 158(d)(2)(A)(i).  "Public importance

exists when the matter on appeal transcends the litigants and involves a legal question the

resolution of which will advance the cause of jurisprudence to a degree that is usually not the

case."  *Mark IV Indus., Inc. v. N.M. Env't Dept.,* 452 B.R. 385, 388 (S.D.N.Y. 2011).  For

example, in *Springfield Hospital*, the bankruptcy court certified for direct appeal a case involving

a hospital's access to Paycheck Protection Program loans given, among other reasons, its

essential role as a health care provider in combatting Covid-19.  *In re Springfield Hosp., Inc.,*

618 B.R. 109, 118 (Bankr. D. Vt. 2020).  Not only is the authority of bankruptcy courts to adjust

the rights and liabilities between non-debtors within a bankruptcy case that none of them

commenced important to the public at large given the frequency that this relief is requested and

the scope of the relief that is granted, the context of this case—insulating the Sackler Family

20

Members from all civil liability for their role in fomenting the American opioid crisis—
transcends the litigants.

The opioid epidemic stems from the late 1990s, when "pharmaceutical companies
reassured the medical community that patients would not become addicted to opioid pain
relievers and healthcare providers began to prescribe them at greater rates." *See*
https://www.hhs.gov/opioids/about-the-epidemic/.html.  Subsequent "widespread misuse of both
prescription and non-prescription opioids" made "clear that these medications could indeed be
highly addictive." *Id.*  The Department of Health and Human Services declared it a "public
health emergency" in 2017. *Id.*  As calculated by the Centers for Disease Control and Prevention
("CDC"), "[f]rom 1999–2019, nearly 500,000 people died from an overdose involving any
opioid, including prescription and illicit opioids." *See*
https://www.cdc.gov/opioids/basics/epidemic.html.  One estimate, cited by the CDC and
National Institutes of Health, reflects "that the total 'economic burden' of prescription opioid
misuse alone in the United States is $78.5 billion a year, including the costs of healthcare, lost
productivity, addiction treatment, and criminal justice involvement." *See*
https://www.drugabuse.gov/drug-topics/opioids/opioid-overdose-crisis.

Before it filed for relief in this Court, Purdue had been sued 2,900 times for its role in the
opioid crisis.  ECF No. 2983 at 162.  The U.S. Food & Drug Administration ("FDA") compiled a
timeline of significant events in the opioid epidemic, and its summary begins with the FDA's
approval of Purdue's product, OxyContin.  *See* https://www.fda.gov/drugs/information-drug-
class/timeline-selected-fda-activities-and-significant-events-addressing-opioid-misuse-and-
abuse.  As the FDA states in the timeline's entry under December 1995, "OxyContin would soon
become a focal point of opioid abuse issues that would continue to escalate into the late 2000s

21

and beyond." *Id.* The FDA's timeline summary further reflects that by the early 2000s, "reports of overdose and death from prescription pain, especially OxyContin, began to rise sharply." *Id.* And yet, in 2003, the FDA had to issue a warning letter to Purdue for its "misleading advertisements" related to OxyContin that misrepresented the risks of addiction. *Id.*

The Sackler Family had also been sued approximately 400 times before the Court issued an injunction to stay those suits and preclude the filing of additional suits. ECF No. 2983 at 162. As the ultimate owners of Purdue, they have sought to shield the family's billions of dollars from future lawsuits by doling out a portion of their wealth over a decade-long period under the Plan—using Purdue's bankruptcy case to do what they could not do had they filed their own personal bankruptcy cases. They demanded that the bankruptcy court permanently deny any person or governmental entity anywhere in the world from pursuing opioid-related claims against the Sackler Family Members and hundreds of related people and entities if they also held opioid claims against the Debtors. The Sackler Family did so after transferring billions of dollars of cash and other assets from Purdue towards their own benefit for years. ECF No. 2983 at 144 & 146. And they sought this extraordinary relief in Purdue's bankruptcy despite the facts that (i) they themselves were not bankruptcy debtors and (ii) such relief was greater than what would have been permitted if the individual family members were themselves debtors, as certain debts would not have been dischargeable in their individual bankruptcy cases, *see*, *e.g.*, 11 U.S.C. § 523 (exceptions to discharge), (a)(2) (fraud), (6) (willful or malicious injury) & (7) (fine, penalty, or forfeiture to governmental unit).

Objections to Purdue's Plan were filed by citizens injured by opioids, *see, e.g.*, ECF No. 3235 (objection of Mary Butler-Fink, aka Parker's Mom),[10] and insurers seeking indemnification

---

[10] *See also* ECF No. 3582, Ellen Isaacs's Emergency Request for Immediate Injunction and Hearing for Due Process (filed *pro se* August 17, 2021).

from the certain individual Sackler Family members, *see* ECF No. 3272. And objections to the

non-debtor release of the Sackler Family were also lodged by eight states—California,

Connecticut, Delaware, Maryland, Oregon, Rhode Island, Vermont, and Washington—as well as

Washington, D.C. and certain municipalities and tribes of Canada. ECF Nos. 3270, 3274, 3275,

3276, 3278, 3279 & 3280. Among other grounds, the objecting states argued that the

Shareholder Release would improperly usurp the states' police power. ECF No. 3270 at 6. And

to date, Washington, Maryland, Connecticut, Washington D.C., California, Vermont, Delaware,

Rhode Island, Oregon, certain Canadian governmental entities, and a pro se individual have now

appealed the bankruptcy court's confirmation order. ECF Nos. 3724, 3725, 3774, 3775, 3780,

3784, 3810, 3812, 3813, 3818, 3832, 3839, 3849, 3851, 3853.

The Shareholder Release also highlights long-standing problems inherent in the use of

non-consensual, non-debtor releases in chapter 11 plans. An increasing number of proposed

plans contain some form of involuntary third-party release. *See In re Aegean Marine Petroleum

Network Inc.*, 599 B.R. 717, 723 (Bankr. S.D.N.Y. 2019) ("Debtors in chapter 11 cases before

me frequently seek third-party releases, and they are often presented as though the involuntary

imposition of a third-party release is no big deal. I disagree."). *See generally* Lindsey Simon,

*Bankruptcy Grifters* (April 1, 2021) Yale Law Journal, Forthcoming, *available at*

SSRN: https://ssrn.com/abstract=3817530 ("If left unchecked, bankruptcy [third-party releases

and injunctions] can serve as an accelerant for the gravest due process threats facing mass tort

victims.") ("*Grifters*").[11]  This Court recognized that "courts generally approve them [third-party

---

[11] The author further explains how "courts allowed the piecemeal expansion [of non-debtor relief] to fundamentally change the scope of bankruptcy protections" and how "[b]ankruptcy grifters are like a Trojan horse in the bankruptcy system, undermining the integrity of the bankruptcy process at the expense of claimants who will lose procedural protections and rights." *Grifters*, at 1 and 4.

releases] unless they are truly overreaching on their face." *In re MPM Silicones, LLC*, No. 14-22503, 2014 WL 4436335, at *32 (Bankr. S.D.N.Y. Sep. 9, 2014), *aff'd in part, rev'd in part, and remanded*, 874 F.3d 787 (2d Cir. 2017) (the releases were not part of the Second Circuit appeal). Even now, another opioid manufacturer, Mallinckrodt plc, is seeking confirmation of a chapter 11 plan in another court that includes a non-debtor release. *In re Mallinckrodt plc, et al.,* Case No. 20-12522 (JTD) (Bankr. D. Del.). And four recent bills in Congress have been proposed to block the abuse wrought by third-party releases in chapter 11.[12]

The resolution of the Shareholder Release, which affects both individual victims of the opioid epidemic and states seeking to enforce their police powers, is thus of great public importance. Additionally, the Sackler Family's attempt to misuse the bankruptcy system to avoid future liability raises long-standing problems inherent in the use of non-debtor releases in chapter 11 plans. The appeal thus involves a question of public importance and warrants direct review by the Second Circuit under 28 U.S.C. § 158(d)(2)(A)(i) for this separate, additional reason.

### C.    The Appeal Involves a Question of Law Requiring Resolution of Conflicting Decisions.

Certification is also independently required because the constitutionality and legality of non-consensual non-debtor releases in chapter 11 plans "involve[] a question of law requiring resolution of conflicting decisions." 28 U.S.C. § 158(d)(2)(A)(ii). The relevant inquiry "is

---

[12] Two bills are pending in each house of Congress. The SACKLER Act is pending as H.R. 2096 and S. 2472. These bills are identical. The SACKLER Act would amend 11 U.S.C. § 105 to prohibit a court from enjoining or releasing a claim against a non-debtor by a State, municipality, or federally recognized Tribe, of the United States but would have no effect on the imposition of non-consensual, non-debtor third-party releases on private parties. The Non-Debtor Release Prohibition Act is pending as H.R. 4777 and S. 2497. These bills are also identical. These bills would, with some exceptions, prohibit courts from approving non-consensual non-debtor releases and further define what constitutes claimant consent to non-debtor releases. Both bills also provide for expedited appellate review of orders approving non-debtor releases or the extension of a stay to non-debtors. All four legislative proposals remain pending before the respective Judiciary Committees of the House and the Senate.

whether conflicting decisions exist within the Second Circuit." *Springfield Hospital*, 618 B.R. at 119. Non-debtor releases like the one at issue in this appeal are the subject of great controversy among courts within the Second Circuit (as well as across Circuits).

Indeed, even within this district, bankruptcy courts have reached sharply divergent conclusions regarding the permissibility of involuntary third-party releases.[13] *See generally* Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances*, 100 Tex. L. Rev. 74 (2021), *available at* http://dx.doi.org/10.2139/ssrn.3851339 (noting divergence of holdings within the Southern District of New York); *SDNY Bankruptcy Judges Have Differing Views on a Bankruptcy Courts Jurisdiction to Issue Third-Party Releases*, 12 St. John's Bankr. Research Libr. No. 3 (2020). In contrast to the decision here, other decisions from this district have held that the bankruptcy court lacks subject matter or personal jurisdiction to enter the requested third-party release. *Aegean Marine*, 599 B.R. at 723-726 (calling third-party releases "participation trophies" that are sought in virtually every case); *In re SunEdison, Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017) (no jurisdiction to enter non-consensual releases).

The resolution of the Shareholder Release would clarify an area of the law on which courts within the Second Circuit have issued conflicting decisions, and thus this appeal also warrants direct review by the Second Circuit under 28 U.S.C. § 158(d)(2)(A)(ii).

### D.    An Immediate Appeal Would Materially Advance the Progress of the Case.

Certification is also independently required because "an immediate appeal . . . may materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A)(iii).

---

[13] The cases from this district are divided on what constitutes consent for third-party releases. *Compare In re SunEdison, Inc.*, 576 B.R. 453, 461 (Bankr. S.D.N.Y. 2017) (implying consent from creditor inaction is not consent), and *In re Chassix Holdings, Inc.*, 533 B.R. 64, 80 (Bankr. S.D.N.Y. 2015) (same) *with In re Stearns Holdings, LLC*, 607 B.R. 781, 788 (Bankr. S.D.N.Y. 2019) (creditor's failure to vote and opt out renders release consensual). *See also In re Chemtura Corp.*, 439 B.R. 561, 609–613 (Bankr. S.D.N.Y. 2010) (refusing to enforce third-party releases against creditors with no option to grant or to reject such releases).

The Debtors have stated that their goal in these cases is to serve the public interest and provide remedies for those harmed by the opioid crisis (largely fueled by the Debtors and their owners). ECF No. 2983 at 11. Vindicating the public's rights to an expeditious, meaningful review on appeal would thus further not only the public interest but also the purported mission of these cases. The Disclosure Statement expressly acknowledges that the Confirmation Order may be appealed. ECF No. 2983 at 320. The Shareholder Settlement Agreement included in the Plan documents includes an agreement to move that the appeal "be expedited on the fastest feasible schedule." ECF No. 3711 at 88 (Shareholder Settlement Agreement § 2.09). Moreover, in the September 13, 2021, hearing, this Court advised that all appellants should seek expedited appellate review. 9/13/21 Tr. at 29: 11- 13.

Moreover, this is not an issue where "percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision." *See Weber*, 484 F.3d at 161. Rather, this is the type of case where the Court of Appeals would benefit less from the case's prior consideration in the district court and is more likely to render a decision expeditiously, given the purely legal nature of many of the issues in dispute. *See id.* Moreover, it is not necessarily the case here that "without certification, the parties will have an opportunity to appeal both to the district court and to [the court of appeals] before the termination of the entire bankruptcy proceeding." *See id*. The importance of affording relief to victims of the opioid crisis and implementation of additional abatement measures weighs in favor of direct review because clear guidance from the Circuit will allow all parties to structure a resolution to furnish relief while allowing the countless (and uncounted) victims who—without their consent—will have their claims against non-debtors forever barred to be granted meaningful review of their rights.

26

Neither the Debtors nor any other parties will be prejudiced by a direct appeal to the Second Circuit.  No matter what the district court were to decide, the losing party is virtually certain to appeal given the important and contentious issues at stake.  Allowing the appeal to proceed to the Second Circuit will thus be more efficient and enable faster appellate resolution.

The resolution of this appeal regarding the Shareholder Release would thus materially advance the progress of this case and warrants direct review by the Second Circuit under 28 U.S.C. § 158(d)(2)(A)(iii).

**CONCLUSION**

For each of these reasons, this Court should certify the Confirmation Order and Advance Order for direct appeal by the Second Circuit.


Dated: New York, New York
       October 1, 2021

                                    Respectfully submitted,

                                    WILLIAM K. HARRINGTON
                                    UNITED STATES TRUSTEE, Region 2

                                    By: */s/ Linda A. Riffkin*
                                    Linda A. Riffkin, Assistant United States Trustee

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
BETH A. LEVENE
SUMI K. SAKATA
Trial Attorneys

Department of Justice
Executive Office for United States
  Trustees
441 G Street, N.W., Suite 6150
Washington, DC  20530
(202) 307-1399
Fax:  (202) 307-2397

WILLIAM K. HARRINGTON
United States Trustee, Region 2
LINDA A. RIFFKIN
Assistant United States Trustee
PAUL K. SCHWARTZBERG
BENJAMIN J. HIGGINS
Trial Attorneys

Department of Justice
Office of the United States Trustee
201 Varick Street, Room 1006
New York, NY  10014
(212) 510-0500
Fax:  (212) 668-2361