

Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 19-23649-rdd

4  - - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  PURDUE PHARMA L.P.,

8

9        Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                United States Bankruptcy Court

12                300 Quarropas Street, Room 248

13                White Plains, NY 10601

14

15

16                September 30, 2021

17                2:04 PM

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:   A. VARGAS

Page 2

1    HEARING re Statement / Notice of Status and Scheduling

2    Conference (related document(s)3779) (ECF #3788).

3

4    HEARING re Motion to Shorten Time United States Trustees Ex

5    Parte Motion For An Order Shortening Notice And Scheduling

6    Hearing With Respect To The United States Trustees Expedited

7    Motion For A Stay Of Confirmation Order And Related Orders

8    Pending Appeal Pursuant To Federal Rule Of Bankruptcy

9    Procedure 8007 (related document(s)3778) filed by Linda

10   Riffkin on behalf of United States Trustee. (ECF #3779)

11

12   HEARING re Motion for Stay Pending Appeal /Memorandum of Law

13   In Support Of United States Trustees Expedited Motion For A

14   Stay Of Confirmation Order And Related Orders Pending Appeal

15   Pursuant To Federal Rule Of Bankruptcy Procedure 8007

16   (related document(s)3777, 3776) filed by Linda Riffkin on

17   behalf of United States Trustee. (ECF #3778)

18

19   HEARING re Notice of Appeal - United States Trustee's Notice

20   of Appeal of Advance Funding Order (related document(s)3773)

21   filed by Linda Riffkin on behalf of United States Trustee.

22   (ECF #3777)

23

24

25

Page 3

1    HEARING re Notice of Appeal - United States Trustee's Notice

2    of Appeal of Confirmation Order and Order Approving

3    Disclosure Statement, filed by Linda Riffkin on behalf of

4    United States Trustee. (ECF #3776)

5

6    HEARING re Order signed on 9/15/2021 Granting Motion (I)

7    Authorizing the Debtors to Fund Establishment of the

8    Creditor Trusts, the Master Disbursement Trust and Topco,

9    (II) Directing Prime Clerk LLC to Release Certain Protected

10   Information, and (III) Granting Other Related Relief

11   (Related Doc # 3484) (ECF #3773).

12

13   HEARING re Statement / Notice of Listen-Only Dial-in for

14   Status and Scheduling Conference (related document(s)3779)

15   (ECF #3838)

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

```
 1   A P P E A R A N C E S :

 2

 3   DAVIS POLK WARDWELL LLP

 4        Attorneys for Debtor

 5        450 Lexington Avenue

 6        New York, NY 10017

 7

 8   BY:  MARSHALL HUEBNER (TELEPHONICALLY)

 9

10   KLEINBERG KAPLAN WOLFF COHEN, P.C.

11        Attorneys for The State of Washington

12        500 Fifth Avenue

13        New York, NY 10110

14

15   BY:  MATTHEW GOLD (TELEPHONICALLY)

16

17   PULLMAN COMLEY

18        Attorneys for The State of Connecticut

19        850 Main Street

20        Bridgeport, CT 06604

21

22   BY:  IRVE GOLDMAN (TELEPHONICALLY)

23

24

25
```

1   LITE DEPALMA GREENBERG AFANADOR, LLC

2        Attorneys for Canadian Municipalities First Nation

3        Creditors

4        570 Broad Street

5        Newark, NJ 07102

6

7   BY:  ALLEN J. UNDERWOOD (TELEPHONICALLY)

8

9   CALIFORNIA DEPARTMENT OF JUSTICE

10        Attorneys for The State of California

11        300 South Spring Street

12        Los Angeles, CA 90013

13

14   BY:  BERNARD ARDAVAN ESKANDARI (TELEPHONICALLY)

15

16   OFFICE OF THE ATTORNEY GENERAL - STATE OF MARYLAND

17        Attorneys for The State of Maryland

18        200 Saint Paul Place

19        Baltimore, MD 20852

20

21   BY:  BRIAN EDMUNDS (TELEPHONICALLY)

22

23

24

25

1   AKIN GUMB STRAUSS HAUER FELD LLP

2        Attorneys for The Official Committee of Unsecured

3        Creditors

4        One Bryant Park

5        New York, NY 10036

6

7   BY:  ARIK PREIS (TELEPHONICALLY)

8

9   KRAMER LEVIN NAFTALIS FRANKEL LLP

10        Attorneys for Ad Hoc Committee

11        1177 Avenue of the Americas

12        New York, NY 10036

13

14   BY:  KENNETH ECKSTEIN (TELEPHONICALLY)

15

16   UNITED STATES ATTORNEY'S OFFICE

17        Attorneys for The United States of America

18        86 Chambers Street

19        New York, NY 10007

20

21   BY:  LAWRENCE FOGELMAN (TELEPHONICALLY)

22

23

24

25

1    UNITED STATES DEPARTENT OF JUSTICE

2        Attorneys for The United States Trustee

3        201 Varick Street

4        New York, NY 10014

5

6    BY:  PAUL SCHWARTZBERG

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2            THE COURT:  Good afternoon, everyone.  We are here

3    in In re Purdue Pharma L.P., et al on a status conference

4    that I scheduled pertaining to the issue of a motion or

5    motions to come for a stay pending appeal of my order

6    confirming the Chapter 11 plan in this case from September

7    17th.

8            The last day I believe to file an appeal is

9    tomorrow.  So I guess it's conceivable there would be

10   someone who would not be participating today.  But the

11   purpose of this conference is to put some structure around

12   the process of considering motions for a stay pending appeal

13   of the confirmation order.

14           There were some appeals filed before the order was

15   even entered.  And, somewhat surprisingly, at least one

16   motion for a stay pending appeal before the order was

17   entered.  I have been assured by the Debtors, and I believe

18   this is borne out by the facts of the case, that the plan

19   could not go effective for a considerable time.  It's

20   somewhat unclear to me whether that time runs out in

21   November or some period in December.  But it seemed to me

22   that rather than rushing ahead and dealing with piecemeal

23   motions for a stay pending appeal, we should have this

24   conference and set a reasonable date for the parties to put

25   something before the Court on a basis that is not rushed.

1            So I guess the first question is one for the

2    Debtors, which is to ask them to go through the timing on

3    when at the earliest the Chapter 11 plan could go effective.

4            MR. HUEBNER:  Sure, Your Honor.  Can I be heard

5    clearly in the court?

6            THE COURT:  Yes.

7            MR. HUEBNER:  Okay.  Your Honor, for the record,

8    Marshall Huebner of Davis Polk & Wardwell LLP on behalf of

9    the Debtors.

10           Your Honor, the way that the DOJ settlement works

11   is that there is to be a sentencing hearing scheduled --

12   there is a lot of feedback.  I'm not sure where it's coming

13   from.

14           THE COURT:  I can hear you clearly, but it may be

15   coming separately from someone.

16           MR. HUEBNER:  Okay.  There is a hearing on the

17   sentencing to be held not earlier than 75 days from the day

18   the Court confirms the plan.  It doesn't say entry of the

19   confirmation order or doesn't say anything like it.  It just

20   says the day the Court confirms the plan.  We're talking

21   (indiscernible) whether we have a shared view about that.

22   Obviously one possible date is September 1st when Your Honor

23   said I am confirming the plan and then gave us a six-and-a-

24   half-hour oral ruling.  Another possibility is obviously

25   September 17th, when the amended bench order and the

Page 10

1   findings of facts and conclusions of law were entered.  But

2   in any event, it's many weeks away and so I think it's not

3   really relevant most likely for today's purposes because

4   first, there is a sentencing and then there is another brief

5   period before the Debtors can emerge.  That structure was

6   put into the DOJ settlement by the Debtors for the Debtors

7   because we need time to get ready to emerge and obviously

8   didn't want to be sentenced until essentially the eve of

9   emergence.

10          So it's there really for our purposes, and I'm

11   sure we'll figure out where the other -- whether it's

12   November 22nd or I think December 8th is the alternative

13   date.  But in any event, just to get ahead to help everybody

14   out here, the parties have had hours of calls and emails and

15   things like that about the right schedule for this.  And I

16   think that there is universal agreement that we would like a

17   stay hearing if it is possible before this Court which all

18   parties are willing to agree to, most likely in the middle

19   of October.  And depending on some things that relate to

20   evidence that came up on a call earlier today which I am

21   happy to explain, that might need to slip a little bit.  But

22   in any event, several to many weeks before the earliest

23   possible emergence date, which I think is far more than

24   enough time to let people have a hearing on a stay and

25   potentially further.

1          If it would be useful to the Court, I'm happy to

2   explain why there might be presently unknowable arbitrage in

3   the actual hearing date based on what essentially

4   (indiscernible) to a very large two-hour meet and confer we

5   had earlier today if that would be useful.

6          THE COURT:  Okay.

7          MR. HUEBNER:  So, simply stated, Your Honor, but

8   for one issue, I think the core parties, and many of them

9   were on the call -- I think there were 60 people on the

10  email -- are by and large agreeable to the reply papers of

11  appellees and parties supporting the appellees being filed

12  on October 7th and then the hearing either being held

13  October 14th if that's the date that the Court can make it,

14  or, because Mr. Eckstein is very important and without,

15  unfortunately, giving too much of a shoutout, he is just not

16  available that day, some other day very soon thereafter.  We

17  are not in any way, shape, or form trying to slow things

18  down.  We are happy to move very quickly.

19          The reason that date might not work is because the

20  movants -- and I think we got the latest stay motion only

21  very late last night from Maryland.  And so they're still

22  kind of coming in piecemeal on a rolling basis.  One of the

23  stay motions I believe had evidence attached to them.

24  They're just legal briefs.  But of course the stay inquiry

25  is a balancing of the harms, which in fact I think two of

Page 12

1    the four prongs in fact relate to facts about where the

2    harms are both from granting a stay and from not granting a

3    stay.  And suffice it to say that many parties other than

4    the tiny number of objectors and appellants take

5    extraordinarily strong issue with the lawyers' claims about

6    where harm is and is not.

7              And so at a minimum, the Debtors, the AHC, the

8    UCC, and the MSGE all plan to have declarations attached to

9    their reply briefs providing facts for the Court to have in

10   front of it with respect to our view of harms from a stay,

11   facts that were not adduced at trial which have nothing to

12   do with harm from the timing or a delay in effectiveness,

13   but rather more about the propriety and legality of the

14   plan.  So this is actually a different issue.  It's a

15   different motion, it's a different legal standard, it's a

16   different inquiry.

17             And as Your Honor has heard me say many times, at

18   the end of the day, maybe it's simplistic, but I believe

19   that our job is to present facts that support law and lead

20   to a conclusion.  And I think we're supposed to have both

21   when we make motions, which is why the debtors invariably

22   do.

23             And so the (indiscernible) arbitrage comes in the

24   fact that if the movants for the stay decide they don't want

25   to depose our witnesses and they are happy to cross-examine

Page 13

1    them sort of live at the hearing and they're not putting in

2    any witnesses of their own on rebuttal, which at this point

3    (indiscernible) fairly allowed because everybody filed their

4    motions and they chose not to put in evidence, that was

5    their choice.  At this point that other than I think an

6    improper ambush, they should be limited to rebuttal.  Then

7    maybe we can still proceed on the 14th.

8              But if they say oh, wait a minute, there are now

9    going to be four or five witnesses, we want to depose them

10   all and then we want to reserve the right to put in rebuttal

11   witnesses of our own, then this turns into a factually

12   contested matter, and obviously we will need time -- you

13   know, the same seven days I assume that they got at a

14   minimum with our stuff to see what facts they have at least

15   decided to put in sometime in late October and probably

16   depose their witnesses and then have a hearing sometime

17   later.

18             So the short answer is if they want to move very

19   quickly, we're totally game for that.  And we're ready to

20   proceed as early on or after the 14th and as makes sense.

21   But obviously if they would like time to depose our

22   witnesses, because it's certainly our due process and

23   constitutional right to supply facts along with our legal

24   pleadings, then obviously at their election, they are

25   welcome to slow things down.  And we have no objection to

Page 14

1   that, either.  We are in essence happy to proceed in

2   whatever way seems sensible based on what the movants want

3   to do in response to what we intend to do in our objections.

4          So I hope and trust, fingers crossed, that I

5   fairly summarized a pretty intense, freewheeling

6   conversation among many parties that lasted a pretty long

7   time earlier today.  I see Mr. Schwartzberg, who was the

8   first of the movants, is on screen.  And so hopefully he

9   will add to what I say as opposed to correcting it.  If I

10  got something wrong and he corrects it, that's fine, too.

11  I'm just trying to relay what I believe was discussed among

12  the great many parties.

13          THE COURT:  Okay.

14          MR. HUEBNER:  Paul, you're on mute.

15          MR. SCHWARTZBERG:  I'm sorry, Your Honor.  Good

16  afternoon.  Paul Schwartzberg from the U.S. Trustee's

17  Office.  I also just wanted to bring the Court's attention

18  to my colleague, Beth Levine, who is also on the line with

19  me and probably filling the holes that I miss.

20          Your Honor, the U.S. Trustee believes that a stay

21  is necessary to ensure an appropriate review of important

22  constitutional rights of victims by an Article 3 court.  And

23  as Mr. Huebner said, we do believe a hearing should go

24  forward on October 14th.  We are prepared to go forward with

25  the stay hearing at that time.

1          We do disagree with Mr. Huebner that there needs

2    to be an evidentiary hearing.  We believe that all the facts

3    are on the record from the multi-day confirmation hearing,

4    Your Honor.  We believe that perhaps the seeking of adding

5    more evidence or trying to stretch out the hearing is

6    perhaps a delaying tactic to try to get us beyond the

7    effective date.

8          And in fact, Your Honor, although Mr. Huebner

9    indicated that effective date could be as early as November

10   22nd, I do note I believe November 14th, which is only six

11   weeks from now, would be the date of a possible sentencing

12   hearing.  So a lot of eggs could be scrambled on the

13   November 14th date, Your Honor.

14         But back to the hearing, Your Honor.  I do also

15   note that just last night we did also receive a notice of

16   deposition from one of the appellees seeking a deposition of

17   the U.S. Trustee, which we believe is also once again trying

18   to delay the matter and put us beyond the effective date.

19   But we are trying to move as expeditiously as possible.

20         In fact, we've received a notice of approval from

21   the Solicitor General to try to seek a direct appeal to the

22   Second Circuit in this case.  But while we're doing that, we

23   also think we can go on a dual track and try to deal with

24   the appeal on the merits in the district court on an

25   expedited basis.  And we spoke to the Debtor about a

Page 16

1    proposed briefing schedule there where we think we could

2    possibly get oral arguments before the -- hopefully before

3    the November 14th date.  They hopefully are amenable to

4    that.

5           But, Your Honor, between now and the 14th, the 14-

6    day automatic stay of the confirmation order is going to

7    expire.  I believe the 14 day ends tomorrow and hearing on

8    the stay motion is not until the 14th.  And so we had a

9    conversation on what's actually going on between now and

10   then.  People were concerned the eggs may be scrambled, that

11   the horse may get out of the barn between now and the 14th.

12   And we know pursuant to the structuring steps memoranda, a

13   lot of things are going to be happening.  The shareholder

14   settlement agreement will be entered into, Newco and Topco

15   will be formed, the various trusts under the plan will be

16   formed.  The directors' and employees' escrow account may be

17   established, the $6.8 million from the advanced funding

18   order potentially will be distributed.  And it's not just

19   going to sit in an account.  It's actually going to be

20   distributed out.  Prime Clerk may release personally-

21   identifiable information to the PI trustee and his

22   associates.  And then we believe a lot of licensing and

23   regulatory office work will be done to be able to turn the

24   switch upon the effective date such that -- I keep using the

25   metaphor, Your Honor, the eggs will be scrambled.

Page 17

 1          So I think between now and the 14th, as we put in

 2     our motion, we would like a bridge order extending that 14-

 3     day order to whatever date Your Honor sets for a hearing on

 4     the stay motion.

 5          MR. HUEBNER:  Okay, Your Honor, just to help

 6     clarify a couple of things.  Number one, when we've already

 7     told all parties that we agree both to their expedited

 8     schedule for the 14th and we also have the contours of an

 9     agreement for potential expedited briefing on the merits and

10     an appeal before whatever appeal court we go to, to hear Mr.

11     Schwartzberg even use the phrase delaying tactic I actually

12     find simply extraordinary, especially in the same --

13          THE COURT:  All right, let's cut this short.  Have

14     the other appellants agreed to seek an expedited appeal,

15     whether it's to the district court or directly to the

16     circuit?

17          MR. HUEBNER:  Go ahead.

18          MR. SCHWARTZBERG:  I was going to say, Your Honor,

19     you'd have to ask -- I can't --

20          THE COURT:  No, I'm not asking you, Mr.

21     Schwartzberg.  I'm asking the other appellants.

22          MR. SCHWARTZBERG:  I apologize.

23          MR. GOLD:  Excuse me, Your Honor, Matthew Gold

24     from Kleinberg Kaplan.  Can you hear me?

25          THE COURT:  Yes.  Afternoon.

Page 18

```
 1              MR. GOLD:  Thank you, Your Honor.  We represent

 2    the State of Washington and I believe now as appellants the

 3    State of Oregon and District of Columbia.  In any event, we

 4    agree both with the idea that there should be a direct

 5    appeal to the Second Circuit which will most expedite the

 6    appellate review of this process, and also to the idea of an

 7    expedited briefing schedule on the merits.  I'm not sure

 8    that we've completely worked out the exact dates, but we

 9    strongly support the concept.

10              THE COURT:  Okay, thank you.

11              MR. GOLDMAN:  Your Honor, good afternoon.  Irve

12    Goldman, Pullman & Comley, State of Connecticut.  We do as

13    well support a direct appeal to the Second Circuit and the

14    expedited briefing schedule that's been discussed.

15              THE COURT:  Okay, thanks.

16              MR. UNDERWOOD:  This is Allen Underwood on behalf

17    of certain Canadian municipal creditors and first nations'

18    appellants each, and we also support an expedited appeal to

19    the Second Circuit.  Thank you.

20              THE COURT:  Okay.  Thank you, Mr. Underwood.

21              Is there anyone else?

22              MR. ESKANDARI:  Bernard Eskandari on behalf of the

23    State of California.  We concur with direct appeal to the

24    Second Circuit as well as expedited briefing.

25              THE COURT:  Okay, thank you.
```

1          MR. EDMUNDS:  Your Honor, Brian Edmunds from

2     Maryland.  I'm sorry, something has come up here where I

3     can't be on camera.  But we are in agreement as to direct

4     review by the Second Circuit.

5          THE COURT:  Okay.

6          MR. HUEBNER:  Your Honor, just so the point is not

7     lost, I do want to be clear for the avoidance of any

8     ambiguity.  The position I talked about before is about the

9     expedition of the appeal, not about its venue.  And there

10    are a fair number of parties obviously on the other side

11    from these appellants.  And that's actually not an issue

12    neither up for today nor, rankly, up for this Court.

13         THE COURT:  I understand.

14         MR. HUEBNER:  Okay.  I just want to make sure

15    there's no confusion.

16         THE COURT:  What I'm leading up to -- and I think

17    it probably isn't that big an issue given what I've just

18    heard -- is that it would seem to me that the appellants'

19    willingness, as well as the appellees' willingness to have

20    an expedited appeal, whether it's to the district court or a

21    direct appeal to the circuit, but in any event seeking

22    expedition, is an important factor that I'll take into

23    account on the request for a stay.  And that's just to give

24    people a heads up.

25         MR. HUEBNER:  Understood, Your Honor.

1            THE COURT:  As far as the timing is concerned,

2    October 14th is the Purdue omnibus day for October.  It's

3    not that far off.  I think it's probably achievable if the

4    parties don't engage in any material discovery before that

5    hearing.  But you're not really able to tell me that today I

6    think.  I also have free either November 9 or November 10.

7    We can move things that are on the calendar for each of

8    those days to the other day.  So it may make sense just to

9    fix that day which would give parties another week for

10   discovery of November 9th.  That's well before I believe the

11   plan would even, under what I think is an unlikely scenario,

12   be ready to go effective.

13           To me, and I think this applies to the time to

14   appeal, frankly, it's when the order is entered, not when

15   the Judge says that he is going to enter an order.  And that

16   clearly is in any event, whether that more likely scenario

17   applies or the less likely one, gives parties plenty of

18   time, having gotten their whole record in the lower court,

19   if they disagree with my ruling to go to the district court.

20   Which by that point will have had pleadings and gotten some

21   grounding in the matter.  So you're not going to be hitting

22   someone cold with the arguments that you will have made and

23   will again make on appeal of request for a stay.

24           So I guess I would urge people to focus on the 9th

25   unless you can get clear agreement on an acceptable

Page 21

1    discovery schedule for the 14th.

2              MR. SCHWARTZBERG:  Your Honor, the U.S. Trustee

3    would prefer to at least initially put in the 14th and --

4              THE COURT:  Well, the 14th is an omnibus day.  So

5    that could be done.  But I'm not prepared to do that yet

6    unless it actually works given the timing here.  It's not an

7    issue that warrants any concern.  If I ruled on the 9th,

8    there is still plenty of time to address it at a higher

9    level.

10             MR. GOLD:  Your Honor, may I be heard?

11             THE COURT:  Sure.

12             MR. GOLD:  Matthew Gold.  I recognize that Your

13   Honor's calendar is one that I have not looked at

14   extensively, but I just wish to ask whether it's possible

15   from the Court's perspective that there could be a hearing

16   date the week following the 14th just because --

17             THE COURT:  Well, you can check with Ms. Li on

18   that.

19             MR. GOLD:  Okay, thank you.

20             THE COURT:  I'm giving you the dates that I

21   thought were free.  And given again the timing here -- and

22   it's certainly not unheard of for a bankruptcy judge, even

23   if it denies a stay or if it grants a stay, one way or the

24   other, but it would really only apply if I denied the

25   request for a stay, nevertheless to grant a sufficient stay

Page 22

1    so that the district court could decide that issue.  I have

2    a feeling that that would be unnecessary here, whether it's

3    the 14th or the 9th.  And it's certainly the case that if I

4    denied a stay, I would nevertheless require the Debtors for

5    example to provide notice to all the appellants several

6    days, perhaps as much as two weeks in advance of their going

7    effective so that they could go to the district court if my

8    assessment of when they would go effective is just

9    inaccurate.  So I think the parties are protected here under

10   either date.

11          MR. SCHWARTZBERG:  Your Honor, Paul Schwartzberg.

12   I just wanted to point out that the sentencing date, at

13   least under the Debtor's calculation, would be just a few

14   days after the 9th.  So --

15          THE COURT:  What did I just say, Mr. Schwartzberg?

16   I said that if I denied a stay, I would probably

17   nevertheless stay it so that a district court could rule.  I

18   would expect that at that point you would have engaged with

19   the district court, you would have gotten a timeline for

20   when that judge is free.

21          MR. SCHWARTZBERG:  Thank you, Your Honor.

22          THE COURT:  So I'm not going to have people jump

23   through hoops for the least likely event here under the

24   scenarios that apply.  I'm also not going to enter some sort

25   of bridge order between now and then.  It's clear to me -- I

Page 23

1   said this when I granted the motion.  It's in the order for

2   the pre-effective date implementation work that that just

3   isn't a basis for mootness.  It just isn't.  All the things

4   you listed, Mr. Schwartzberg, can be undone.  Every single

5   one of them.  It just can't be a basis for mootness, and it

6   isn't.  And the Debtors have said so.  And that's why I

7   granted the motion, so they would be judicially estopped.

8   I'm not going to go through that again.  It makes no sense

9   to enter a stay now on the order that I granted given the

10  basis for that order and the record.

11          MR. HUEBNER:  Your Honor, let me give all parties

12  comfort.  Because the thing that they're concerned about and

13  that Your Honor is talking about actually can't happen.  Let

14  me explain.

15          Our sentencing hearing is going to be a very

16  public hearing before the district court in New Jersey, of

17  which everyone in this case and many other people will get

18  clear notice.  There is no question that people will know

19  exactly when our sentencing hearing is scheduled.

20          Under the DOJ settlement agreement, we cannot

21  emerge prior to seven days after the sentencing hearing.  So

22  there is going to be plenty of notice and plenty of time

23  about the earliest possible confirmation date.  And,

24  frankly, I actually don't think that a temporary stay might

25  even be needed then.  Because if you rule on date X and our

Page 24

1    sentencing hearing is scheduled for day Y and then it's T

2    plus seven, that could easily be a sufficient period.

3          In any event, we've explained to people again and

4    again -- and it's all in the public documents that were

5    actually approved after an extensive hearing -- the earliest

6    possible emergence dates are utterly, completely knowable

7    and known by all parties because they are keyed off of

8    another hearing in another federal court whose date will be

9    very open and public.

10          So I think there really is neither a concern that

11   the ministerial things happening before sentencing could

12   ever constitute mootness, as we've also told the parties

13   about a hundred times.  But it is also case that there can't

14   be some prized emergency.  It's just not possible.  We have

15   a court-approved agreement with the United States of America

16   that sets forth the timing that keys it off of seven days

17   after a public sentencing hearing before the district court

18   in New Jersey.

19          So hopefully that will give people comfort now

20   that we've said it yet again on the record yet again about

21   how it works.  But there can be no surprise press release

22   that we emerged yesterday.  It just can't happen because of

23   the DOJ agreement.

24          THE COURT:  Okay.  Well, that probably is the

25   case, Mr. Huebner.  But in any event, if there is some issue

Page 25

1   on the timing, in all likelihood I would require the Debtors

2   to provide advanced notice as I've described it of an

3   effective date.

4          MR. HUEBNER:  Thank you, Your Honor.

5          THE COURT:  So, look, I think I can't set the 14th

6   today because you don't have that agreement with the

7   appellants and appellees about discovery.  In fact, it's

8   conceivable there would be some other appellant tomorrow.

9          On the other hand, that day is already set for

10  Purdue.  So I don't think you need to reserve it.  If you

11  reach that agreement, we can use that day.

12         But I think you should be thinking of the 9th or

13  10th of November as your fallback day.  And we won't be

14  scheduling anything for those days.  I have matters -- I

15  have omnibus days on other cases on both of those days, but

16  the omnibus matter on each day can be moved to the other day

17  just to accommodate a hearing on the stay motions for either

18  the 9th or the 10th.

19         So I think that probably is enough for today.

20  Although I do want to say to me, given the timing here and

21  everyone's desire to have an expeditious determination on

22  appeal, that should be the parties' focus, and I'm glad it

23  is the parties' focus.  I have little doubt that there will

24  be appellate review here.  I can't imagine why there

25  wouldn't be given the facts and the parties' desire to move

Page 26

1    expeditiously.  The judges in this building really do

2    understand the need for speed in bankruptcy matters when

3    that need exists.  And I think certainly in this case they

4    will be told that exists by the parties and they'll see that

5    it is important.  And I think that's in all likelihood the

6    same for the Second Circuit Court of Appeals.  So I am

7    encouraged that the parties are in agreement on moving

8    expeditiously on this because there is no reason why it

9    shouldn't be reviewed at the appellate level.

10           MR. HUEBNER:  Your Honor, assuming for a minute

11   that the evidentiary issues as requested by the appellants

12   don't delay the hearing, it sounds to me like we should

13   still be shooting for filing our briefs and declarations by

14   October 7th.  So if people decide we'll just cross-examine

15   them at the hearing, we choose speed over a slower discovery

16   period.  In other words, we're giving them the choice.  And

17   I want to be clear about that.

18           THE COURT:  Right.

19           MR. HUEBNER:  Obviously we need to have our briefs

20   so we can go forward with the hearing to have that be fair.

21   So we're still willing I think to be held until October 7th.

22           THE COURT:  That's fine.  A week in advance of the

23   hearing with three days before the hearing for reply briefs,

24   that's fine.

25           THE COURT:  Right.  But I should just ask, because

1    I'm very nervous, as I'm normally not a litigator, I'm

2    certainly not an appellant litigator.  And if I could ask

3    the UCC, the AHC, the MSGE, or the PIs if I have sort of

4    gotten something wrong or if there is some other deadline.

5    Because, for example, the fact that we're still getting new

6    stay motions right now -- obviously we got one very late

7    last night.  Are there any other deadlines that as part of

8    this, if this calendar holds, that we want to make sure that

9    we sort of lay out right now so we're not surprised by

10   filings.  So I would ask someone from one of the other

11   parties on sort of our side of the V as it were, to please

12   jump in if I've missed something that's important that we

13   all agree and lock down publicly and firmly on the record.

14   Mr. Shore and Mr. Preis, Mr. Maclay, Mr. Eckstein, please

15   supplement if I've gotten something not complete.

16            MR. PREIS:  Your Honor, this is Arik Preis with

17   Akin Gump Strauss Hauer &  Feld.  Can you hear me?

18            THE COURT:  Yes.  Fine, thanks.

19            MR. PREIS:  Good afternoon.  I did want to ask one

20   question.  Because you correctly pointed out at the

21   beginning that there are motion or motions to come seeking a

22   stay.  Given that and given that you're either going to have

23   this hearing on October 14th or November 9th, how does the

24   Court (indiscernible) deal with the late (indiscernible) who

25   are appealing today, but then they make final their motion

Page 28

1    for stay next week?  How do we deal with that?

2          THE COURT:  Right.  Well, I think they have to fit

3    into the same schedule.  It's a good question, but I think

4    they have to fit into the same schedule.  I mean, look, they

5    waited -- they will have waited obviously until the last day

6    to file an appeal and the 14-day stay will have passed then.

7    Because of that choice, I think they really need to be

8    prepared, and they've had time to be prepared to make a stay

9    motion.  And they'll just have to fit into the schedule that

10   is adopted.  And that includes if there is an agreement by

11   everyone else that they don't need discovery on your

12   witnesses.  That would apply to someone who files a stay

13   motion say on October 3rd or whenever, you know, before the

14   hearing.

15         MR. PREIS:  Well, that's understood.  And I

16   appreciate that.  But Mr. Huebner just said our replies

17   would come in October 7th.  We can't very well reply to

18   something that comes in October 7th if it comes in

19   (indiscernible).

20         THE COURT:  Well, I guess that's fair.  On the

21   other hand, there are plenty of motions for stays pending

22   appeal where it's just heard orally by the judge.  And I

23   think, look, I think the issues on appeal are going to be

24   pretty standard.  So I'm not bothered by that.  If there's

25   something that really comes in from left field and it's not

```
 1    some that you can dispose of easily at oral argument, then

 2    maybe I'll hear that a couple days later.  But I don't want

 3    to suggest that that would happen because I don't think it

 4    will.

 5              MR. PREIS:  Is there a way -- I take your point.

 6    But is there any way to set a deadline for motions for stay

 7    pending appeal (indiscernible) on October 15th?

 8              THE COURT:  I think the deadline is just the fact

 9    that they have to be ready for the hearing then.  And I

10    appreciate that puts some pressure on you, but I think the

11    allies of the appellee debtor are up to him on that.

12              MR. PREIS:  Okay.

13              THE COURT:  Again, with the caveat if something

14    truly comes out of left field that isn't bizarrely out of

15    left field -- and I think it would be unfair to give you

16    just a day or so to respond, then I may hear that particular

17    issue later.

18              MR. PREIS:  Okay.  Thank you, Your Honor.

19              THE COURT:  Okay.

20              MR. ECKSTEIN:  Your Honor, good afternoon.  It's

21    Kenneth Eckstein of Kramer Levin, if I can briefly be heard.

22              THE COURT:  Sure.

23              MR. ECKSTEIN:  First, as Mr. Huebner indicated,

24    from a personal standpoint, I would prefer the 9th.  But if

25    the hearing needs to go forward on October 14th, my
```

1    colleague is certainly capable of handling it in my place.

2    I actually do believe that November 9th is a more organized

3    date to do this because (indiscernible) pleadings on the

4    7th.  We do intend to put in declarations (indiscernible)

5    that the harm is (indiscernible) and needs to be addressed

6    in connection with the consideration of even a suggestion of

7    staying beyond the effective date.

8              I happen agree with Your Honor, between now and

9    the effective date, we don't see the urgency because

10   (indiscernible) a couple of weeks.

11             THE COURT:  Well, the urgency is getting it in

12   front of the appellate court.  That's the urgency.

13             MR. ECKSTEIN:  Right.  And I recognize that.  And

14   I think that we're all willing to work to make sure that

15   that gets accomplished.

16             But in any event, it's a bit I think disjointed if

17   we're going to find out two days in advance of the court

18   date that there's either going to need to be depositions or

19   there's going to be rebuttal witnesses or if there's even

20   going to be cross-examination and the like.  So that to me

21   compels in favor of a more organized date.  But as I said,

22   we will work with either and we'll be prepared

23   (indiscernible) to put in a pleading and a declaration in

24   opposition to a post effective date (indiscernible).

25             THE COURT:  Okay.  I mean, coming into this

Page 31

1   conference, it seemed to me that November 9th might be also

2   a more organized date for all of this.  But if the parties

3   are able to do it by the 14th, I guess we can do it by the

4   14th.  One benefit of doing it on the 9th is that you do

5   have another week that the appellate court will be focusing

6   on this.  And just based on the nature of this chapter 11

7   case, someone on some side will be unhappy with my ruling

8   about a stay.  And having the appellate court be more up to

9   speed on the underlying issues might be helpful when they

10  hear a request for a stay, or more likely, an appeal from my

11  ruling on the stay.  So I'd like the parties to keep that in

12  mind too as far as picking a date

13          MR. ECKSTEIN:  I think that is (indiscernible),

14  Your Honor.  And I think that they're going to overlap quite

15  significantly, there's no question.

16          THE COURT:  Right.  I mean, look, I think one of

17  the reasons that the law on equitable mootness is so diverse

18  throughout the country and even within circuits is because

19  there are times when an appellate court just wants to rule.

20  You know?  They want to address something that they see that

21  needs to be addressed in the lower court's order, and

22  they're going to find a way to do it.  And other times, they

23  really don't want to rule.  And sometimes, therefore,

24  instead of affirming or reversing, simply say it's moot.

25  The more that the appellate court is informed, the better as

Page 32

1     far as the consideration of these types of issues at that

2     level.

3                  MR. SCHWARTZBERG:  Your Honor, Paul Schwartzberg

4     again.  I apologize.  When the parties coalesce on a date,

5     whether it be the 14th or the 9th, should we just contact

6     chambers?

7                  THE COURT:  Yes.  Again, yes, definitely.  And in

8     the meantime, we won't add anything to either the 9th or the

9     10th.  So you can coalesce on that date.  And in the

10    meantime of course we have the 14th because it's a Purdue

11    omnibus day.

12                 MR. SCHWARTZBERG:  Thank you, Your Honor.

13                 THE COURT:  But in each case, any objections to

14    the stay motions would be due a week in advance unless

15    someone files a stay motion.  You know, but you can't do

16    that -- you know, someone else other than the people here.

17    And any replies three days before the hearing.  And I won't

18    reiterate what I told Mr. Preis, but that's also applicable.

19                 Mr. Fogelman --

20                 MR. HUEBNER:  Your Honor, one -- I'm sorry, Your

21    Honor.  I apologize.

22                 THE COURT:  Mr. Fogelman, I think you've been

23    trying to say something.  Or maybe not.

24                 MR. FOGELMAN:  Yes, Your Honor.  Thank you.  I

25    just wanted to address the point that Mr. Huebner raised

Page 33

1    before when he said the issue of whether the Debtor

2    (indiscernible) or not, it's not before the Court today.

3    While that may literally true on the calendar, it's clear

4    today that all appellants have expressed a willingness to

5    brief the merits on an expedited schedule and

6    (indiscernible) direct certification to the Second Circuit.

7           Frankly, Your Honor, it makes sense for the Second

8    Circuit to have the opportunity to review these important

9    issues before the plan goes effective.  And in order to

10   facilitate the process, it would be helpful to hear from the

11   Debtors as quickly as possible regarding whether they

12   consent to (indiscernible) certification as they are the

13   only appellee here, that they agree to certification

14   (indiscernible) have the right to go to the Second Circuit

15   on petition without further action of the bankruptcy court.

16   And I think it makes sense first to determine

17   (indiscernible) briefing schedule as soon as possible and

18   well in advance (indiscernible).

19           Thank you, Your Honor.

20           THE COURT:  That's a fair point.  I'm sure the

21   parties are focusing on that, and that's important.

22           MR. HUEBNER:  So, Your Honor, two quick points.

23   One thing I realize may not have been what the Court

24   intended, which is I don't think it would be remotely fair -

25   - and I hope it's not what anybody intended -- that we file

1    our briefs on October 7th, then the appellant announce we're

2    good with November 9th and we're not filing anything for a

3    month until November 6th, including witness declarations --

4            THE COURT:  No, no.  You should work it -- well

5    before the briefs, well before the objections are filed, the

6    parties need to work out whether it's the 14th or the 9th.

7            MR. HUEBNER:  Exactly.  And I assume that we'll

8    have a different schedule if there are going to be

9    evidentiary submissions by the appellants, which would be

10   well before three days before the hearing in November.

11           THE COURT:  The best way to describe it is it

12   should be -- any replies are three days before the hearing

13   and any briefs are seven days before the hearing, whichever

14   hearing it's going to be, the 14th or the 9th.

15           MR. HUEBNER:  Okay.  So we'll figure that out in a

16   way that's fair.

17           With respect to Mr. Fogelman's point, I just want

18   to note it's a little bit bizarre that Department of Justice

19   itself filed the first (indiscernible) of appeal, it listed

20   both sides of the Sackler families as appellees.  Of course

21   it's a little bit strategic to say the least because they

22   did not list all the other plan supporters who actually in

23   in fact I think are the actual appellees.  The MSGE, the

24   AHC, the UCC, the PIs.  It's ultimately for the appellate

25   court to decide who the appellees are.  And, frankly, this

Page 35

1   sort of jockeying before the trial court, including who the

2   appellees are, is (indiscernible).  But again, to have Mr.

3   Fogelman on behalf of the DOJ saying the only appellees are

4   the debtor while another part of the DOJ listed only the

5   debtors and the Sacklers, truly could create a terrible

6   misimpression up above that this is the Debtors and the

7   Sacklers versus the U.S. Government, when as everybody

8   knows, the Sacklers did not vote on the plan, did not draft

9   the plan, did not see the plan until it was public.  Rather,

10  this is the creditors' and the stakeholders' plan.  And,

11  Your Honor, I think that many of our core constituencies

12  absolutely positively and passionately believe that they are

13  appellees, and I think they will be seeking to be made

14  appellees.  And those are the kinds of things that lots of

15  conversations are going on about right now.

16          So I just -- Mr. Fogelman knows how deeply I

17  respect him.  But to have him stand up and contradict the

18  written position of the Department of Justice on this issue

19  is a little bit too much to bear.

20          THE COURT:  Well, Department of Justice hasn't

21  appealed.  It's the United States Trustee that has appealed.

22          MR. HUEBNER:  Well, they are a division of the

23  Department of Justice.  I don't imagine we'll be seeing

24  conflicting positions from different parts of one

25  government.  But if they are allowed to do that, we'll deal

1    with it as it comes.

2            THE COURT:  All right.

3            MR. HUEBNER:  Nothing more to be said about that.

4    It's not today's issue.  We're working as quickly as we can

5    --

6            THE COURT:  But I think that -- okay, fine.

7    Although that's really more of an issue for the appellate

8    court, including identifying who they need to check into and

9    make sure that they are aware of their interests in the

10   case.

11           But as far as the decision on whether they agree

12   to a direct appeal or not, that really should be made

13   promptly.  Because obviously this is going to be a

14   substantial amount of work for one of the judges in this

15   building.  And there's no reason to have him or her engage

16   in that work if everyone promptly agrees that it should be a

17   direct appeal.

18           MR. HUEBNER:  Your Honor, we agree completely.

19   And we are working hours a day on all of these topics.  I

20   don't want to leave any misimpression.

21           Ironically, we actually think we can get to a much

22   faster hearing on the merits before the district court

23   because it saves probably two rounds of briefing before the

24   merits.  But again, people make their own decision.  The

25   direct certification rules essentially call for a polling of

1    both appellants and appellees, and not even all appellants

2    are even on this hearing, so I'm not -- you know, there are

3    some that aren't even here at all right now.  So I'm not

4    sure how anybody could speak for all appellants.

5            But lots of conferences going on, lots of emails.

6    Everyone is working at warp speed.  We know we're going

7    upstairs.  We know we're having stay hearings.  We're all

8    working as fast as we can.  And that's I think the best we

9    can do.

10           THE COURT:  Okay.  All right.  Very well.  Very

11   well.  All right.

12           So I think in all likelihood then sometime

13   probably early next week, probably I would say no later than

14   Wednesday or Thursday next week, you should let Ms. Li in

15   chambers know whether you're going to be moving ahead on the

16   omnibus day, October 14, or instead on the 9th of November.

17           MR. HUEBNER:  Thank you, Your Honor.

18           THE COURT:  Okay.

19           MR. GOLD:  Your Honor?

20           THE COURT:  Yes.

21           MR. GOLD:  Matthew Gold again.  May I briefly

22   address the Court?

23           THE COURT:  Sure.

24           MR. GOLD:  Just to raise the related topic that

25   we've all been discussing partially.  While we are in

1    agreement, as I said before, that we should be moving

2    promptly to try to get a certification, but I would request

3    to the Court that perhaps we can also -- if Your Honor is

4    agreeable, file a formal motion to be heard on the 14th so

5    that if the parties are still having a discussion, it

6    provides the vehicle for the Court to make a decision one

7    way or another.  We did discuss certification during the

8    call earlier today, and several of the parties said to us

9    you haven't even filed a motion yet and need to file a

10   motion for us to consider it.  So we are trying to be

11   responsive to that concern unless Your Honor doesn't think

12   it's necessary.  We just want to be able to move that

13   process forward as quickly and properly as possible.

14        THE COURT:  I haven't really looked at that issue.

15   I know there is a scheduling order in place in the case

16   which might require you to file the motion by tomorrow.  I

17   think if you file it within a reasonable time, I would be

18   willing to modify that order so that it could be heard on

19   the 14th.  On the other hand, my distinct impression,

20   although it's based on looking at these issues several years

21   ago, is that ultimately it's up to the Second Circuit

22   whether they take it or not.

23        MR. GOLD:  Okay.  Thank you, Your Honor.

24        THE COURT:  So how I rule on that issue is not

25   necessarily that important.

1          MR. GOLD:  (indiscernible)

2          THE COURT:  Okay.

3          MR. HUEBNER:  So, Your Honor, we're happy to look

4   at that just so that we're all clear (indiscernible).  I do

5   not believe I was on any call where anyone said you haven't

6   even filed a motion --

7          THE COURT:  Well, it doesn't matter.  I mean, Mr.

8   Gold has a legitimate concern that under the scheduling

9   order in the case generally if he doesn't file it by

10  tomorrow, someone -- not necessarily you -- may raise their

11  hand and say, well, it's too late for the judge to hear it

12  on the 14th.  If you file it within a reasonable time before

13  the 14th, Mr. Gold, I will probably hear it.

14         MR. HUEBNER:  Yeah.  And, Your Honor, that's where

15  I was going to go next, which is, like everything else we

16  keep saying, we actually believe in due process.  And if

17  people need to make a motion to protect their rights, we

18  will move as swiftly as reasonable to meet them on whatever

19  schedule the Court requires.  And if this ends up being

20  contested at the trial court level, which is one

21  possibility, absent consent from the majority of appellants

22  and appellees, we have no problem at all moving swiftly.  So

23  I was actually going to agree with the predicate, just not

24  with the factual statement that preceded it.

25         THE COURT:  Okay.  All right.

1          MR. ECKSTEIN:  Your Honor, just before you

2     conclude, it's Mr. Eckstein.  Just if I could suggest one

3     minor amendment to the way Your Honor was I think

4     concluding.  Given the fact that right now if the hearing

5     goes forward on the 14th, brief will be due on the 7th,

6     which is I think next Thursday, I would suggest that both

7     parties try to reach consensus by Tuesday as to whether or

8     not we're going to use the --

9          THE COURT:  That's fair.  I don't see why people

10    need to be flat-out rushing to get briefs in if they can

11    reach consensus, you know, by end of the day Tuesday.

12    That's fair.

13         MR. HUEBNER:  Yeah.  And then if it's the 9th,

14    we'll just try to agree on an appropriate briefing schedule

15    if they're going to be putting in witnesses and declaration

16    and discovery, it then becomes a contested evidentiary

17    matter, and presumably we should be able to be on a schedule

18    cruising towards the 9th.

19         THE COURT:  So can I just leave you with one

20    thought?  And I'm just going to leave it with you because

21    it's just to help perhaps guide all the parties' thinking on

22    the stay pending appeal issue.

23         It seems to me that having a sense for the

24    schedule as to when the appellate court or courts can rule -

25    - and of course you don't know that for sure, but at least

Page 41

1   you know what your briefing schedule would be, you're

2   assuming that there would be requests for expedited ruling.

3   And we've seen in the past that they rule promptly in

4   important cases like this.

5           It would be my wish if that schedule is a

6   reasonable one that does not run the risk of causing

7   enormous harm to the creditors, to have a stay through that

8   period or at least to have a stay through the period that

9   everyone things is necessary with a potential second look at

10  the appellate court as to whether any further stay is

11  necessary.  I think that might obviate the need for a lot of

12  litigation with the stay issue.

13          I don't know if -- I hope I am being clear.  The

14  idea is I would like to accommodate those who believe -- and

15  I think it's a very legitimate belief -- that my ruling

16  should be subject to review, meaningful review.  On the

17  other hand, I am sensitive to the concerns of the creditors

18  that getting this money out into the health system and to

19  individuals is important.  If you can hit the sweet spot or

20  close to the sweet spot where at least you can reasonably

21  predict that there will be appellate review by date X, I

22  think you might well consider coming together on an order

23  that just has a stay until day X with an opportunity to, if

24  the Court hasn't ruled by then, if the appellate court

25  hasn't ruled by then, go to the appellate court and say all

Page 42

1    right, you know, I want to extend that stay.  And then

2    everyone who says that that's too long can oppose it.

3    I have a feeling that the appellate court will have ruled by

4    then and you won't need to do that.

5              So that's the question I will be asking you

6    primarily at this hearing, whether it's on October 14 or

7    November 9th.  And so I think that's what you all should be

8    focusing on.  That involves getting some crystal balling

9    from your litigators about your briefing schedule and when a

10   court might rule on this.  But, you know, they moved really

11   fast in GM and Chrysler.  And this doesn't affect the entire

12   auto industry, but it affects a lot of people.  And I think

13   they probably would rule very fast here one way or the

14   other, at least within the period that you are contemplating

15   here, which is months from now.

16             Okay.  Thank you.

17             MR. GOLDMAN: Your Honor?

18             THE COURT:  Yes.

19             MR. GOLDMAN:  One last comment here.  I'm sorry to

20   digress.  But in terms of the opposition papers, I think we

21   would be at somewhat of a disability to determine whether we

22   are going to make it an evidentiary hearing unless we

23   actually see what the opposition papers are.  So I don't

24   know --

25             THE COURT:  Well, I'm assuming they will tell you

Page 43

1    what they intend to have their witnesses, you know, submit

2    declarations on.  And I'm assuming they're declarations

3    about the timing of getting the money out to individual

4    victims and to the states and localities for abatement.  And

5    I find it hard to believe that there wouldn't be any other

6    irreparable harm that they're focusing on.  And, again, that

7    ties into just what I said.  If you hit the sweet spot and

8    let the appellate process play out, albeit on an expedited

9    basis without jeopardizing that timetable in a meaningful

10   way, then the parties should be able to agree on at least a

11   date.  You can't decide -- you can't force the appellate

12   courts to make a ruling by that date, but at least you could

13   extend it to that date with the right to ask for a further

14   stay of that court.  They know what they're up to at that

15   point.  They know how long it will take to rule, and they

16   can evaluate the balance of harms themselves at that point.

17   So I'm just leaving that with you all.

18           But I think they don't have to -- I mean, I think

19   it's too much to say we need to see their briefs and then

20   decide whether we're going together on going forward on the

21   14th.  But they'll tell you what it is they intend to put

22   out.  And if they surprise you and submit something else,

23   then we'll have to move it.  But I don't think that's going

24   to happen, but they should tell you generally.  But I'm

25   assuming that's what it's going to be about, that type of

Page 44

1    harm, that type of calculus.

2              MR. GOLDMAN:  Okay.  Thank you, Your Honor.

3              THE COURT:  Okay.  All right.  Thanks, everyone.

4              MR. HUEBNER:  Thank you, Your Honor.

5              (Whereupon these proceedings were concluded at

6    2:59 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 45

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 4, 2021