**Hearing Date: October 14, 2021 at 10:00 a.m.**
**Response Deadline: October 7, 20201 at 4:00 p.m.**

ANDREW J. BRUCK
Acting Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, New Jersey 08625-0106
Attorney for The State of New Jersey

By:  Valerie Hamilton (01820-1995)
     Deputy Attorney General
     (609) 376-3256
     Valerie.Hamilton@law.njoag.gov

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____
                              :  Hon. Robert D. Drain
In re:                        :
                              :  Case No. 19-23649 (RDD)
PURDUE PHARMA L.P., et al.,   :  (Jointly Administered)
                              :
        Debtors.              :  Chapter 11
                              :
                              :  **RELATED TO:**
                              :  Doc. Nos. 3619, 3721, and 3745
_____

**OBJECTION OF THE STATE OF NEW JERSEY TO RONALD BASS,
SR.'S MOTION PURSUANT TO FED. R. BANKR. P. 7019 FOR THE
JOINT ADMINISTRATION OF CLAIMS MOVANT ASSERTS AGAINST
THE DEBTORS AND THE STATE OF NEW JERSEY AND OTHER RELIEF**

The State of New Jersey[1] ("State"), by and through its counsel

ANDREW J. BRUCK, Acting Attorney General of New Jersey (Valerie

Hamilton, Deputy Attorney General, appearing), hereby objects to

Ronald Bass, Sr.'s ("Movant" or "Mr. Bass") motion ("Motion")

pursuant to Bankruptcy Rule 7019 for an "order for the United

---

[1] Mr. Bass has named numerous individuals, agencies, and instrumentalities of the State as "defendants to be jointly administered." Upon information and belief, none of these individuals, agencies or instrumentalities has been served with the Motion. See Doc. No. 3702 (Cert. of Service).

States Trustee to file a motion to jointly administrative [sic] a derivative claims against the State of New Jersey Medicaid Program, et al." [Doc. 3619.]

## SUMMARY OF ARGUMENT[2]

1.    The Motion should be denied in its entirety.  As an initial matter, this Court lacks jurisdiction to adjudicate claims Mr. Bass asserts against the State.

2.    Further, relief may not be granted pursuant to Fed. R. Bankr. P. 7019 because there is no pending adversary proceeding where the rule may apply and the State is not a "necessary party" to adjudicate Mr. Bass's claims against the Debtors.

3.    Even if Rule 7019 applied, that rule does not authorize the Court to direct the United States Trustee to take any action, including the commencement of massive litigation that Mr. Bass would like to bring against a slew of Federal, State, and private defendants.

4.    The Motion should also be denied because it improperly seeks injunctive relief barring distribution to the State of New Jersey without making the requisite showing under Fed. R. Civ. P.

---

[2] This Objection sets forth several dispositive reasons for denial of the Motion. However, it is not intended to be an exhaustive recitation of all defenses available to the State in this matter. If the Motion is granted, the State hereby reserves the right to assert any and all defenses to Movant's claims and to contest the Court's authority to adjudicate and render final judgments on such claims.

65. This form of prejudgment attachment of the State's distribution is inappropriate and should be denied.

5. Finally, granting first priority to Mr. Bass's claim, as he requests in the Motion, would frustrate the fundamental bankruptcy policy of equal treatment of similarly-situated creditor claims.

## FACTUAL BACKGROUND

6. On September 15, 2019, each of Purdue Pharma L.P., its general partner Purdue Pharma Inc., and Purdue Pharma's wholly owned direct and indirect subsidiaries (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

7. According to Mr. Bass, he filed a proof of claim identified as Claim No. 89590. Public access to this claim is restricted, but according to the Claims Register, Claim 89590 is a general unsecured claim in the amount of $300 million. Claims were also allegedly filed on behalf of Mr. Bass's children (Claim Nos. 112924 and 104975). Each of the children's claims is restricted from public view, but according to the Claims Register, each is a general unsecured claim in the amount of $3 million.

8. By Order dated September 17, 2021 (the "Confirmation Order"), this Court confirmed the Debtors' Twelfth Amended Joint

Chapter 11 Plan of Reorganization for the Debtor. Doc. No. 3787. Multiple parties in interest have appealed from the Confirmation Order, including Mr. Bass. See Doc. No. 3810 (Bass Notice of Appeal).

9.    On August 12, 2021, Mr. Bass, representing himself, filed the present Motion, seeking an order compelling the United States Trustee to "jointly administrator [sic] all the other debtors and defendants named in his 'Tag-along' claims filed with the United States Judicial Panel on the National Opioid Litigation and Civil Action 2:19-cv-19709" in this Court, in these proceedings.

### In re National Prescription Opiate Litigation

10.    On December 12, 2017, the United States Judicial Panel on Multi-District Litigation directed the transfer of forty-six (46) lawsuits to the United States District Court for the Northern District of Ohio. See Case No. 1:17-md-02804-DAP, Doc. No. 1. Since that time, thousands of other opioid cases have been transferred to that court and consolidated under the caption "In re National Prescription Opioid Litigation" ("MDL 2804"). Defendants in MDL 2804 include pharmaceutical manufacturers, opioid distributors, pharmacy retailers, and others alleged to have a role in the opioid crisis.

11.    In MDL 2804, the various plaintiffs allege that the manufacturers of prescription opioids grossly misrepresented the

4

risks of long-term use of those drugs for persons with chronic pain, and distributors failed to properly monitor suspicious orders of those prescription drugs--all of which contributed to the current opioid epidemic.  MDL 2804 Docket.

12.  Upon information and belief, the Clerk of the Judicial Panel on Multi-District Litigation has twice denied Plaintiff's request to join MDL 2804.  See USDC-DNJ Case No. 2:19-cv-19709, Doc. No. 3 and Notice filed 3/26/2020.

13.  The State is unaware whether Mr. Bass is a member of a class of individuals whose claims will be adjudicated in MDL 2804.

**New Jersey Federal Court Litigation**

14.  On November 1, 2019, Mr. Bass filed in the United States District Court for the District of New Jersey a pro se complaint styled Ronald Bass Sr., Nosaj Ronald Bass, Jr., Kamika Irby v. Purdue Pharma, L.P.; Purdue Pharms [sic], Inc., The Purdue Frederick, United States Department of Justice, Secretary of Homeland Security and the XYZ Corporation 1-20 et al. (Civil Action No. 2:19-cv-19709-BRM-JAD) (the "New Jersey Federal Litigation"). No state entity was named as a defendant in the New Jersey Federal Litigation.

15.  In his initial complaint in the New Jersey Federal Litigation, Mr. Bass generally alleged that the Debtors and others are collectively responsible for causing his addiction to prescription opioids and seeks compensation for the personal

consequences he has suffered as a result of that addiction. Those consequences include losing custody of his son during a state court proceeding, loss of employment, and loss of future job opportunities. The Complaint also alleged a widespread government conspiracy between various actors and entities, including Plaintiff's former attorney, the Honorable Gary J. Furnari, J.S.C., the U.S. Attorney's Office for the District of New Jersey, the Department of Justice, and the Department of Homeland Security.

16. On February 21, 2020, the District Court dismissed Mr. Bass's complaint in its entirety for failure to satisfy Fed. R. Civ. P. 8 and granted him leave to file an amended complaint. Civil Action No. 2:19-cv-19709, Doc. No. 5.

17. Mr. Bass subsequently filed an amended complaint, in which he alleged that, because of his "medically prescribed opiate addictions[,]" he was "denied equal protection of the constitution to received [sic] any type of federally assisted programs or state's programs" for himself or his son. Id., Doc. No. 6. He further alleged that the United States Department of Homeland Security and the State of New Jersey wrongfully shared information relating to his "parental rights, employment[s], and housings [sic]." Id., Doc. No. 6. By Order dated February 26, 2021, Mr. Bass's amended complaint was again dismissed for failure to satisfy Rule 8. Id., Doc. No. 18.

18.  Mr. Bass has since filed two amended complaints that the district court has not yet screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Civil Action No. 2:19-cv-19709, Doc. Nos. 20 and 23.

**The Present Motion**

19.  The Motion currently pending before this Court is largely indecipherable as to the specific relief sought by the Movant.  However, since filing the Motion, Mr. Bass has filed additional pleadings which appear to shed some light on the relief he appears to be seeking.

20.  On August 26, 2021, Mr. Bass filed a letter (the "August 26 Letter") with this Court stating that he was once addicted to Oxycontin and other manufactured opiate drugs, which he alleges rendered him disabled under federal law.  Doc. No. 3721 at 2.

21.  He further asserts that "The State of New Jersey, et al., discrimination [sic] against me for past non-violent crimes of subculture behavior's [sic] of drug addiction and I was stigmatize [sic] because of my disability and drug addiction." Id. at 1, ¶ 2 (emphasis omitted).

22.  Mr. Bass claims that he was wrongfully denied or excluded from receiving "essential services or the participation in . . . programs, activities, or services . . . offered by the State of New Jersey public and private entities that received federal funding" to provide healthcare benefits for his son.  Id. at 1, 3

(alleges denial of early childhood intervention services for his son).

23. He claims that his lack of inclusion in these State programs was discriminatory and in violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act of 1990. Id. at 2.

24. Mr. Bass alleges that the State of New Jersey, on behalf of various pension plans and retirement systems, invests in Purdue Pharma, L.P., and thereby has a "contractual relationship through New Jersey's Division of Investments ["DOI"], et al., with the debtors, Purdue Pharma, L.P., et al., and [the] 'Sackler's Family' [sic]." Id. at 2, ¶ 2. DOI is unaware of any past or present holdings in Purdue Pharma and leaves Movant to his proofs. The Debtors have represented that Purdue is wholly owned by Pharmaceutical Research Associates L.P., which, in turn, is indirectly owned by various trusts established for the benefit of the Sackler families. See Doc. No. 17 at 16 ("Ownership of the Debtors").

25. Mr. Bass asserts that, as a result of the State's alleged investment in the stock of the Debtors and other pharmaceutical companies, the State of New Jersey, various State agencies, and certain State employees, including all employees of the New Jersey Attorney General's Office, are derivatively and personally liable for the Debtors' "distribution [of opiates] and harm caused me by the opioid drugs and its synthetics." Doc. No. 3721 at 2.

8

26. It appears that, through the present Motion, Mr. Bass seeks to join, in this forum, all of his disparate claims against the Debtors, each of the defendants in MDL 2804 and the New Jersey Federal Litigation, and a litany of other enumerated parties. Doc. No. 3619 at 3-4. He claims that each of these entities is a "necessary party" that must be joined pursuant to Rule 7019. Id. at 1.

27. For relief, Mr. Bass requests that this Court and the United States Trustee "avoid and stop payouts" due to the State of New Jersey under the Debtors' confirmed plan and adjudicate his claims against each of the parties "before any pay-out [is] made to any State[']s settlement with anyone [sic] of the Pharmaceutical Companies or its affiliate." Id. at 5. He asserts that making distributions before determination of his claims would result in the "fraudulent conveyance" of his claims pursuant to 11 U.S.C. § 548. Id. at 4. Finally, he seeks a declaration that his claims "hold[] a first in line position for compensation." Id. at 5.

**ARGUMENT**

**POINT I**

**THE MOTION SHOULD BE DENIED BECAUSE THIS COURT LACKS JURISDICTION TO ADJUDICATE MOVANT'S CLAIMS AGAINST THE STATE.**

28. The subject matter jurisdiction of the bankruptcy court is defined by statute. 28 U.S.C. §§ 157 and 1334. Section 1334(b) grants the district courts original, but not exclusive,

9

jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b); In re Garnett, 303 B.R. 274, 275 (E.D.N.Y. 2003). Section 157(a) allows district courts to refer cases under title 11 and any proceedings "arising under" title 11, or "arising in" or "related to" a case under title 11 to the bankruptcy court. 28 U.S.C. § 157(a); Enron Corp. v. Citigroup, Inc. (In re Enron Corp.), 353 B.R. 51, 59 (Bankr. S.D.N.Y. 2006); Garnett, 303 B.R. at 275.

29.    Thus, Section 157(a) vests four categories of subject matter in the jurisdiction of the bankruptcy court: (1) cases under title 11; (2) civil proceedings arising under title 11; (3) civil proceedings arising in a case under title 11; and (4) civil proceedings related to a case under title 11. Enron, 353 B.R. at 59; Garnett, 303 B.R. at 275.

30.    A case under title 11 is a reference to the bankruptcy petition itself. Enron, 353 B.R. at 57 (citing Wood v. Wood (In re Wood), 825 F.2d 90, 92 (5th Cir. 1987)). "Arising under" jurisdiction invokes a substantive right created by federal bankruptcy law. Ibid. (citing McCarthy v. Radcliffe (In re Radcliffe), 317 B.R. 581, 589 (Bankr. D. Conn. 2004)). A proceeding is considered "arising in" a bankruptcy case where, even though it is not based on a right expressly created by title 11, it would have no existence outside of bankruptcy. Ibid.

10

31.   A proceeding is "related to" a case under title 11 where "its outcome might have any 'conceivable effect' on the bankrupt estate." In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992); Pacor, Inc. v. Higgins (In re Pacor, Inc.), 743 F.2d 984, 994 (3d Cir. 1984)).   A proceeding between non-debtors has a "conceivable effect" on the bankruptcy estate where the dispute would "affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights and liabilities." Geron v. Schulman (In re Manshul Construction Corp.), 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998).

32.   Bankruptcy courts have the power to enter appropriate orders and judgments in cases under title 11 and in all core proceedings arising under title 11, or arising in a case under title 11.   28 U.S.C. § 157(b)(1); Garnett, 303 B.R. at 275.

33.   Here, the Court has jurisdiction to determine the extent, validity and amount of the Movant's claim against the Debtors because the claim "arises under" the Bankruptcy Code.   28 U.S.C. § 157(b)(2)(B) (allowance and disallowance of claims is a "core proceeding"); Liberty Mut. Ins. v. Lone Star Indus., 313 B.R. 9, 19 ("it is a core proceeding to allow or disallow a claim").

34.   However, this Court lacks jurisdiction to determine any claims the Movant may have against the State and other non-debtors

relating to his addiction to prescription opioids and the personal consequences he experienced as a result of his addiction.

35.  Movant has not filed a case under title 11.  The claims Movant seeks to bring into the Debtors' bankruptcy case do not "arise under" title 11, as they exist outside of a bankruptcy case. Mr. Bass asserts that, as a result of its alleged investment in the Debtors and other pharmaceutical companies, the State is "derivatively" liable for causing his addiction and the personal consequences he experienced as a result of his addiction, including loss of custody of his son through a state court proceeding, loss of employment, and exclusion from federally and state-funded health programs. Doc. No. 3619 at 5.  None of these claims is dependent upon the Bankruptcy Code for its existence.

36.  Similarly, his claims do not "arise in" a case under title 11.  In fact, Mr. Bass has asserted many of the same claims in the New Jersey Federal Litigation.  Doc. No. 3619 at 3 ("I have adopted and asserted these related claims in Civil Action No. 2:19-cv-19709-BRM-JAD").

37.  Finally, Movant's claims are not "related to" the Debtors' bankruptcy case.  Mr. Bass, a non-debtor, seeks to assert claims against the non-debtor State, based upon the State's alleged investment in the Debtors and other companies that manufacture, market, sell, or distribute opioids or their synthetics.  The resolution of those claims will have no conceivable effect upon

12

the Debtors' bankruptcy case.  This Court has already confirmed the Debtors' plan of reorganization.  Doc. No. 3787.

38.  A finding that the State, as a purported investor in the Debtors and others, is liable for the conduct of the companies in which the State invested will not affect how much property is available for distribution to the creditors of the Debtors' bankruptcy estate or the allocation of property among the Debtors' creditors.  Moreover, the outcome will not alter the Debtors' rights and liabilities.  Rather, the Movant seeks to hold additional parties liable for the Debtors' conduct, not reduce the scope of Debtors' liability.

39.  Therefore, this Court lacks jurisdiction over the Movant's claims against the State relating to its alleged investment in the Debtors and other companies involved in the manufacture, marketing, sale, and distribution of opioid products and their synthetics, and the Motion should be denied.

## POINT II

**RULE 7019 DOES NOT APPLY BECAUSE THERE IS NO PENDING ADVERSARY PROCEEDING BETWEEN THE PARTIES, AND THE STATE IS NOT A "NECESSARY PARTY" FOR DETERMINATION OF MR. BASS'S CLAIMS AGAINST THE DEBTORS.**

40.  Movant seeks relief pursuant to Rule 7019 of the Federal Rules of Bankruptcy Procedure.  Rule 7019 provides that Rule 19 of the Federal Rules of Civil Procedure applies in adversary proceedings.  Fed. R. Bankr. P. 7019.

41. There is no pending adversary proceeding involving the Movant's claims. Therefore, the Motion should be denied.

42. Federal Rule 19, made applicable to adversary proceedings by Fed. R. Bankr. P. 7019, governs the joinder of "required" parties. "The first question is whether the Court can accord 'complete relief' in the absence of the unjoined party." Geltzer v. Bedke (In re Mundo Latino Mkt.), 590 B.R. 610, 620 ((Bankr. S.D.N.Y. 2018) (citing 4 MOORE'S FEDERAL PRACTICE: Civil § 19.03[a] (3d ed. 2018)). "The term complete relief refers only to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." Ibid. (quoting Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 209 (2d Cir. 1985)) (internal quotation marks and citation omitted).

43. Here, the State is not a required party under Federal Rule 19(a)(1)(A) because this Court can accord complete relief on Mr. Bass's claim against the Debtors in the State's absence. This Court can grant complete relief by allowing Mr. Bass's claim against the Debtors and providing him with the distribution fixed by the Debtor's confirmed plan. Whether the State and a slew of others are also liable to Movant need not be determined by this Court in these proceedings in order to afford complete relief to Mr. Bass.

## POINT III

### RULE 7019 DOES NOT EMPOWER THIS COURT TO COMPEL THE UNITED STATES TRUSTEE TO TAKE ANY ACTION, INCLUDING JOINDER OF DISPARATE CLAIMS WITHIN THE DEBTORS' BANKRUPTCY CASE.

44.    In the Motion, Movant seeks "the Judge's order for the United States Trustee (Division of the U.S. Department of Justice) to file a derivative claims [sic] to protect my claims against fraudulent conveyance, refer to 11 [U.S.C.] § 548 and hold all of the New Jersey Attorney General Office employees accountable under New Jersey WEED and SEED Program as shareholders to the opioid investments."[3]  Doc. No. 3619 at 4.   Movant also seeks to compel the United States Trustee to "avoid and stop payouts to the settlements with the State of New Jersey, et al. and its shareholders of other financial securities."  Ibid.

45.    Rule 7019 does not authorize the Bankruptcy Court to direct the United States Trustee to take any action.   Nothing in Rule 7019 empowers the Court to compel the United States Trustee to file claims in these proceedings against the State and a long list of putative defendants to redress harms allegedly sustained by Mr. Bass.   Accordingly, the Motion should be denied.

---

[3] Weed and Seed is a United States Department of Justice community-based program whose goal is to prevent, control and reduce violent crime, drug abuse, and gang activity in targeted high-crime neighborhoods throughout the country.

**POINT IV**

**MOVANT FAILS TO MEET THE REQUIREMENTS FOR OBTAINING INJUNCTIVE RELIEF.**

46.  Movant requests that the Court and the United States Trustee "avoid and stop payouts to the settlements with the State of New Jersey, et al. and its shareholders of other financial securities."  Doc. No. 3619 at 4.   In essence, the Movant is requesting injunctive relief barring the Debtors from making distributions to the State pending final determination of all claims that Movant may have against the Debtors, the State, and a long list of companies involved in the manufacture, marketing, sale, or distribution of opioids and their synthetics.

47.  In order to obtain a preliminary injunction, the Movant must show (i) a likelihood of success on the merits, (ii) a likelihood of irreparable harm absent the injunction issuing, (iii) the balance of equities (or "hardships") tips in favor of the movant, and (iv) an injunction is in the public interest. Roman Catholic Diocese v. LG 35 Doe (In re Roman Catholic Diocese), 628 B.R. 571, 579-80 (Bankr. N.D.N.Y. 2021).

48.  Movant has not even attempted to make any showing of these elements, and therefore, the Motion should be denied.

49.  First, Movant cannot show a likelihood of success on the merits.

50.   "A corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability." Soviet Pan Am Travel Effort v. Travel Comm., Inc., 756 F. Supp. 126, 131 (S.D.N.Y. 1991).

51.   "To establish alter ego liability it is necessary to show that the individual defendant exercised such complete dominion and control that the corporation lacked independent will and that this control was used to commit fraud or wrong against the plaintiffs." McLeod v. Gen. Vision Servs., Inc., 2018 U.S. Dist. LEXIS 132395 (S.D.N.Y. Aug. 6, 2018).

52.   Regardless of whether the State directly or indirectly invests in pharmaceutical companies, such a passive investment does not render the State, its agents, or employees "derivatively" and personally liable for any acts or debts of the companies in which the State invests.

53.   Indeed, in confirming the Debtors' Plan, this Court cited the difficulty in holding even a controlling shareholder liable for the corporation's conduct. In re Purdue Pharma L.P., 2021 Bankr. LEXIS 2555, *101-02 (Bankr. S.D.N.Y. Sept. 17, 2021). By contrast, the Movant has submitted no evidence that the State was a controlling shareholder in the Debtors or any other company involved in the manufacture, marketing, sale, or distribution of opioids, and that such control was used to harm the Movant.

17

54.  <u>Second</u>, there is no irreparable harm. Movant has filed a proof of claim in the Debtors' bankruptcy case, which will be determined in due course. In addition, the Movant has filed an amended complaint in the New Jersey Federal Litigation.

55.  Movant argues that making a distribution to the State before adjudication of his claims will result in a "fraudulent conveyance" of his claims, in violation of Section 548 of the Bankruptcy Code.  He is misguided.  A fraudulent conveyance within the meaning of Section 548 necessarily involves the pre-petition transfer of the debtor's property.  11 U.S.C. § 548(a); <u>Geltzer v. Trey Whitfield Sch. (In re Michel)</u>, 573 B.R. 46, 48 (Bankr. E.D.N.Y. 2017) (reciting elements of constructively fraudulent transfer, including that "the transfer was made within two years before the bankruptcy case was commenced"). Here, Movant asserts that his "claims" are being fraudulently transferred, post-petition.

56.  <u>Third</u>, the balance of the equities weighs in favor of the State.  The Motion is a veiled attempt at prejudgment attachment on the State's distribution from the Debtors' estate. "A prejudgment attachment is ancillary to a suit to collect a debt" and "has the effect of impounding the debtor's property before judgment to insure the availability after judgment of sufficient assets from which to satisfy the creditor's claim." <u>In re Megan-Racine Assocs.</u>, 192 B.R. 321, 325 (Bankr. N.D.N.Y. 1995) (citations

omitted). It is "both a harsh and extraordinary remedy which requires strict statutory compliance." <u>Ibid.</u> Throughout this case, the Court has recognized the urgent need to make distributions to abate the opioid crisis. <u>Id.</u> at 50-51. Staying distribution to the State would frustrate the purpose of confirmation of the Debtors' Plan.

57. By contrast, Mr. Bass will not be harmed by the denial of injunctive relief and the State's receipt of its Court-approved distribution under the Debtors' Plan. He will remain in the same position as the majority of litigants, who must prevail in litigation before exercising its collection remedies.

58. <u>Finally</u>, injunctive relief is not in the public interest. The distributions the State will receive are to be devoted to opioid abatement. Enjoining the receipt of these funds would frustrate the results achieved through Plan confirmation and interfere with the State's efforts to mitigate the harms that the opioid crisis has inflicted upon the State and its citizens.

59. Therefore, the Motion should be denied to the extent that it seeks to "avoid and stop payouts" due to the State under the Debtors' confirmed Plan.

**POINT V**

**GRANTING FIRST PRIORITY STATUS TO MOVANT'S CLAIMS WOULD BE CONTRARY TO THE FUNDAMENTAL BANKRUPTCY POLICY OF EQUAL TREATMENT OF CREDITOR CLAIMS.**

60. The Court should deny Movant's request that this Court declare his claims "hold[] a first in line position for compensation." Doc. No. 3619 at 5.

61. "[B]ankruptcy is a collective remedy designed to maximize value for the benefit of the estate and fosters equality of distribution among similarly situated claims." In re Barkany, 2021 Bankr. LEXIS 2576, *25 (Bankr. E.D.N.Y. Sept. 20, 2021) (citing McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage), 210 B.R. 27, 33 (N.D.N.Y. 1997)). Equality of distribution is a fundamental bankruptcy principle. Cohen v. Drexel Burnham Lambert Group, 138 B.R. 687, 705 (Bankr. S.D.N.Y. 1992); In re Barkany, 542 B.R. 662, 688-89 (Bankr. E.D.N.Y. 2015) (equality of distribution is "a central theme of bankruptcy").

62. Debtors' request to jump to the head of the line would undermine one of the key principles of bankruptcy law: equality of distribution. The Movant has made no showing as to his entitlement to superpriority treatment, and therefore, the Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion and grant such other and further relief to the State as is just and proper.

Respectfully submitted,

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY


By: /s/ Valerie Hamilton
    Valerie Hamilton
    Deputy Attorney General

Dated:  October 7, 2021