DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

### DEBTORS' OBJECTION TO
### MOTION TO FILE PROOF OF CLAIM AFTER CLAIMS BAR DATE

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") submit this objection to the *Motion to File Proof of Claim After Claims Bar Date* [Dkt. No. 3840] (the "**Motion**") and the related letter in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

support [Dkt. No. 3885] (the "**Letter**") submitted by Dr. Howard Adelglass ("**Dr. Adelglass**") and respectfully state as follows:

1.  Dr. Adelglass requests that this Court extend the bar date as to him to allow the late filing of his prepetition claim because he believes he is entitled to compensation for his damages related to his being "unable to practice medicine in any capacity since November 18[], 2020" as a result of his trial. (Mot. at 1.) Dr. Adelglass states that "[d]uring the decades of [his] practice" (Ltr. at 1), he was "target[ed] . . . by Purdue Pharma" (Mot. at 1) and "led . . . to believe [that OxyContin] was a safe and viable option in treating [his] patients" (Ltr. at 1). Dr. Adelglass further states that "[b]y adhering to th[e] guidelines [of sales representatives], [he] lost [his] practice, [] reputation, [] health and [] ability to support [him[self] and [his] family." (*Id.*) Dr. Adelglass describes that, on November 18, 2020, he was arrested by FBI agents for "[n]arco-[c]onspiracy" and, subsequently, lost his medical license and has been unable to work as a physician. (*Id.*) As a result, Dr. Adelglass asserts that he has suffered damages related to his "service to humanity, professional reputation, loss of income, home, office . . . mental and emotional stress, family suffering, and exclusion from community events." (Mot. at 1.)

2.  To date, the Debtors, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), and the Ad Hoc Group of Individual Victims (the "**PI Group**"), with the approval of this Court, have agreed to allow the filing of fifteen[2] late proofs of claim. Each of those late claim motions were filed by personal injury claimants, and each made individualized assertions regarding the reason for the untimely filing. (*See* Dkt. Nos. 1661,

---

[2] On October 6, 2021 the Debtors filed the Notice of Proposed Order Granting Late Claim Motion [Dkt. No. 3901], which will be heard on October 14, 2021.

1664, 2057, 2086, 2069, 2071, 2088, 2193, 2211, 2458, 2834, 3058, 3342, 3526 & 3764.) Indeed, thirteen of the late claims allowed by this Court were filed by incarcerated individuals with limited information and resources due to their incarceration and the attendant restrictions caused by the COVID-19 pandemic. (*See* Dkt. Nos. 1664, 2057, 2086, 2069, 2071, 2088, 2193, 2458, 2834, 3058, 3342, 3526 & 3764.) The remaining two late claims were filed by (i) an individual who missed to deadline to file her proof claim by four days due to issues with mail during the COVID-19 pandemic, and (ii) an individual who was unable to timely file her claim because she was undergoing medical treatment. (*See* Dkt. Nos. 1661 & 2211.) Each of the prior late claim motions provided a justifiable reason for the delay such that the Debtors, Creditors' Committee, and PI Group agreed to allow the claims as timely, and this Court found good and sufficient cause for granting the requested extensions. The same is not true of the Motion.

3. Dr. Adelglass's request does not satisfy this Circuit's strict application of the "excusable neglect" standard set forth in Federal Rule of Bankruptcy Procedure 9006(b)(1) for a late-claimant to file a claim after the bar date. Courts have discretion to allow a late proof of claim only upon motion of a late-claimant showing "excusable neglect." Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'"). The burden of meeting the *Pioneer* test for excusable neglect, however, falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" ***and*** that the neglect was "excusable." *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010). A

court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

4. The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11.) Put simply, courts rarely extend the bar date for late-claimants, particularly where the equities do not favor them, and Dr. Adelglass's request for relief does little to meet the hard line drawn by the Second Circuit and, as such, the Motion must be denied.

5. As an initial matter, with respect to the most important factor—the reason for the delay—Dr. Adelglass provides little (indeed, <u>no</u>) reason beyond his apparent belief in the

strength and amount of his underlying claim for why he could not file a claim until now, almost three weeks after this Court entered the order confirming the Debtors' plan on September 17, 2021 [Dkt. No. 3787] (the "**Confirmation Order**"), and nearly a year after his arrest. In fact, although Dr. Adelglass claims harm from his arrest in November of 2020 (Mot. at 1; Ltr. at 1), he cites to "decades" of prior conduct by the Debtors that allegedly caused the resulting harm and yet, provides <u>no justification</u> for failing to file a proof of claim. This defect alone is sufficient to deny the Motion. *In re DPH Holdings*, 434 B.R. at 83.

6. However, each of the remaining *Pioneer* factors weigh against Dr. Adelglass as well. *First*, allowing Dr. Adelglass's claim would only encourage other late-come prescribers such as Dr. Adelglass also to try their hand at taking part in distributions from the Debtors' estates, to the prejudice and detriment of both the Debtors and, more importantly, their creditors. *See, e.g.*, *In re Enron,* 419 F.3d at 132 (finding that bankruptcy court properly considered "the opening of the 'floodgates' to similar claims" and "the number of *potential* claimants who might have been prompted to file late claims in the wake of a ruling in [the movant]'s favor" in denying late claim motion); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990) ("Bar dates protect not only the debtor's interests, but creditors' interests as well [because they] establish[] a date by which the plan proponent can determine which liabilities will be asserted against the estate."); *see also* Jan. 24, 2020 Omnibus Hr'g Tr. 64: 8-12 ("[T]he rationale[] here for having a bar date . . . is perhaps more important in this case than some other cases" because it is imperative to know "who individuals are who say they have a material claim.").

5

7.  *Second*, the delay is substantial and will adversely impact these proceedings. Indeed, Dr. Adelglass seeks to file a proof of claim almost three weeks after this Court entered the Confirmation Order. The Debtors' plan was solicited, voted on, and approved by the Debtors' creditors and this Court with the understanding of potential recoveries based on the number of timely filed claims. Deeming Dr. Adelglass's claim as timely—with its potential for opening the floodgates to additional similarly situated claims—only would result in attendant costs and delay to the final administration of these cases, including from the potential need to litigate such claims. *In re Enron*, 419 F.3d at 128 ("[C]ourts generally consider the degree to which . . . the delay may disrupt the judicial administration of the case.") (citation and quotations omitted).

8.  *Third*, while the Debtors are not aware of any specific evidence demonstrating that the Movant is not acting in good faith in making his late request, the Debtors' note that Dr. Adelglass was charged with illegally distributing oxycodone from his medical practice "after conducting limited or no examination of the purported patient."[3] Put simply, the equities do not favor (and, indeed, strongly weigh against) allowing Dr. Adelglass to seek compensation from

---

[3] Doctor And Office Manager Charged For Illegally Distributing Oxycodone From Midtown Manhattan Practice, Press Release, Department of Justice, U.S. Attorney's Office, Southern District of New York (Nov. 19, 2020), *accessible at* https://www.justice.gov/usao-sdny/pr/doctor-and-office-manager-charged-illegally-distributing-oxycodone-midtown-manhattan (stating that "[b]etween in or about November 2017 and in or about September 2020, ADELGLASS prescribed more than 1.3 million oxycodone pills. ADELGLASS generally dispensed these pills after conducting limited or no examination of the purported patient. The purported patients who obtained oxycodone through ADELGLASS and SANSONE at the Clinic were often drug-addicted individuals who failed drug tests administered by the Clinic. ADELGLASS nevertheless continued to prescribe large quantities of oxycodone to these patients, many of whom traveled long distances to obtain the illicit oxycodone from the Clinic.").

the Debtors' estates, whether through the personal injury trust under the Debtors' plan or otherwise, along with the over 120,000 personal injury claimants in these chapter 11 cases.

9. The Debtors have consulted with the advisors to the Official Committee of Unsecured Creditors, who agree that the Motion should be denied.

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion.

Dated: October 7, 2021
New York, New York

*/s/ James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*