Presentment Date and Time: October 14, 2021, at 10:00 a.m. (prevailing Eastern Time)
Objection Date and Time: October 7, 2021, at 4:00 p.m. (prevailing Eastern Time)

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Allen J. Underwood II, Esq.
e-mail: aunderwood@litedepalma.com
*Counsel to Certain Canadian Municipal Creditors and Appellants*
*and Certain Canadian First Nation Creditors and Appellants.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| PURDUE PHARMA L.P., *et al.* | Chapter 11 |
| | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**JOINDER OF CERTAIN CANADIAN MUNICIPALITY AND FIRST NATIONS CREDITORS AND APPELLANTS, IN SUPPORT OF THE MOTIONS BY THE OFFICE OF THE UNITED STATES TRUSTEE AND THE APPEALING STATES FOR CERTIFICATION OF A CONSOLIDATED AND EXPEDITED DIRECT APPEAL TO THE COURT OF APPEALS FOR THE SECOND CIRCUIT**

TO:  THE HONORABLE ROBERT D. DRAIN,
     UNITED STATES BANKRUPTCY JUDGE:

Pursuant to 28 U.S.C. § 158(d) and Rule 8006(f) of the Federal Rules of Bankruptcy Procedure, the above-referenced Canadian Municipality Creditors and Appellants and Canadian

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors shall include their affiliates and other entities under their control. The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

First Nations Creditors and Appellants (collectively, the "CMFN") respectfully submit this *Joinder in Support of the Motions by the Office of the United States Trustee and the Appealing States For Certification of a Consolidated and Expedited Direct Appeal to the United States Court of Appeals for the Second Circuit* (the "**Joinder**").  In support of this Joinder, the CMFN respectfully state as follows:

### Relief Requested

1. By the within Joinder, and pursuant to the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 8006(f), the CMFN join with the Office of the United States Trustee and the Appellant States in seeking direct, consolidated, expedited certification of pending appeals to the United States Court of Appeals for the Second Circuit.

### Joinder

2. On September 15, 2021, the Certain Canadian Municipalities filed with this Court a Notice of Appeal and Civil Cover Sheet as to this Court's September 1, 2021 Oral Ruling. (CM/ECF Docket Entry 3774).  Said *Notice of Appeal* was subsequently docketed by the United States District Court for the District of New York and is pending under United States District Court Docket Number 7:21-cv-07961.

3. On September 15, 2021, the Certain Canadian First Nations filed with this Court a Notice of Appeal and Civil Cover Sheet as to this Court's September 1, 2021 Oral Ruling. (CM/ECF Docket Entry 3775).  Said *Notice of Appeal* was subsequently docketed by the United States District Court for the District of New York and is pending under United States District Court Docket Number 7:21-cv-07962.

4, In addition to the appeals filed by the OUST and the CMFN, (7) seven other US states, and the District of Columbia, have also filed appeals essentially from the Confirmation Order.

5. Upon information, the majority if not all of the appealing states, the OUST, and the District of Columbia consent and agree to consolidation of the appeals and certification of same for expedited appeal to the Second Circuit.

6. As represented by counsel hereon at the Bankruptcy Court Scheduling Conference on September 30, 2021, the CMFN consent to certification and expedited review of their appeals to the Second Circuit.

7. This matter is currently pending a Bankruptcy Court hearing on certain motions, including but not limited to that filed by the CMFN, for a stay pending appeal.

8. In the interest of brevity, to avoid redundant briefing or argument, and so as to simplify proceedings as to the pending certification motions, the CMFN Creditors and Appellants respectively adopt the respective legal arguments of both the Office of the Unites States Trustee, and the Appellant states who have moved for direct, expedited and consolidated appeal to the Second Circuit.

9. Although the CMFN have many of the same legal issues and arguments as to the referenced orders as the other Appellants, nevertheless, there CMFN are distinct from, and have certain distinct arguments from all other Appellants.

14. This is so because the CMFN are not US States, districts or departments. The Canadian First Nations are inarguably and on a *prima facie* basis non-US foreign sovereigns. For the purposes of the applicable statutes in issue and addressed briefly herein, the Canadian Municipalities are also entitled to treatment as foreign sovereigns.

15. As all who have participated know, this bankruptcy case lies along the bleeding edge of one of the biggest public health crises in history: the prescription opioid epidemic.

16. The non-consensual, non-debtor, third party releases set forth in the Confirmed Plan test the limits of bankruptcy courts' ability to adjust, adjudicate, and extinguish non-debtors' liability to other non-debtors.

17. The CMFN challenge to these releases' validity raised by their appeals therefore raises issues of utmost seriousness, importance, and complexity that have the power to shape future large-scale bankruptcies.

18. These appeals are complicated further by the fact that the CMFN are foreign sovereign governmental entities, so extinguishing and adjudicating their claims implicates issues of sovereignty and foreign relations of great significance.

19. These unprecedented, difficult, and consequential issues deserve a definitive resolution by the Second Circuit. Nothing, including appeal to the District Court, should stand in the way of such review.

20. In particular, it is notable that even among the District Courts of this District, there are variations and gradations in which each District Court has generally addressed the issue of non-consensual, non-debtor, third party releases.

21. Because speed and finality are paramount, the motion to certify should be granted.

### ARGUMENT

22. The appeals from the Confirmation Order challenge the third-party releases included in the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors (the "**Plan**"). These releases force the CMFN to give up claims of liability against potentially thousands of non-debtors, including the Debtors' former owners and their family members, both born and unborn, board members of the Debtors and debtor and non-debtor subsidiaries, including many entities which provided direction to both Debtors and Purdue Canada, and which in some cases performed the function of a conduit for funds from non-debtors,

4

to other non-debtors and trusts. Dkt. No. 3185, § 10.7(b). The releases immunize these non-debtor individuals, companies and trusts from any legal claim that bears any relationship to the Debtors, arising anywhere in the world, to the end of time. *Id.* at 132-34.

22.     Although there exists a carve-out as to certain Canadian claims, essentially as to certain Canadian first instance assets and entities, the carve-out remains overbroad in that it shields those who directed the Canadian entities, and some of the conduit entities through which Canadian funds flowed.

23.     Given the size of the CMFN claims, and those withdrawn from this case by the Canadian Provinces by Stipulation, it is ultimately possible that the assets of Perdue Canada are insufficient to pay the judgments of all Canadian claimants. Even the carved-put release here would prevent recovery as stated from those who directed the Canadian entities, and those who were conduits for funds from the Canadian entities, as to avoidance actions in any subsequent Canadian insolvency.

24.     These serious and complex legal issues surrounding the releases and their effects on CMFN's ability to be made whole make this appeal worthy of certification under Section 158(d)(2)(A).

25.     Section 158(d)(2)(A)'s certification procedure exists to "expedite appeals in significant cases and to generate binding appellate precedent in bankruptcy, whose caselaw has been plagued by indeterminacy." *In re Pac. Lumber Co.*, 584 F.3d 229, 241–42 (5th Cir. 2009). Section 158(d)(2)(A) allows for parties in bankruptcy cases to appeal directly to the court of appeals when the bankruptcy court certifies any of the following:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. §158(d)(2)(A).

26. When any of these elements are present, Congress has directed that the appeal be heard by the court of appeals without appeal first to the district court. And the CMFN Creditors' appeals meet all of these requirements.

27. Notably, it is an open question at law whether Section 106 of the Bankruptcy Code is intended to abrogate the Foreign Sovereign Immunities Act, in the absence of any other exception to same, such that non-consensual, non-debtor third party releases function as a taking without due process against a foreign sovereign. Third-party releases of the kind included in the Plan require the resolution of conflicting decisions, even within this Circuit, particularly with reference to this takings question. *In re Aegean Marine Petroleum Network Inc*., 599 B.R. 717, 723 (Bankr. S.D.N.Y. 2019). There is little doubt that the immediate appeal to the Circuit advances the progress of this case is expediting finality, and because the issues to be addressed are of such public import that anything less may be intolerable to both the citizens of the United States, and Canada.

28. Guidance from the Second Circuit is necessary. Congress has directed that resolving "conflicting decisions" on certain issues is a project assigned exclusively to the Circuit. 28 U.S.C. §158(d)(2)(A) (ii). And as the U.S. Trustee has explained in its own motion for certification, courts have issued inconsistent judgments on fundamental aspects of the law

6

regarding third-party releases both nationally, within the circuit, and even within the Southern District of New York. *See* Dkt. No. 3868 at 30-31 (noting numerous conflicting decisions about the permissibility of involuntary third-party releases, bankruptcy courts' power to enter them, and the necessity of consent for them). *See also, Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005) (warning that third-party releases "may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code."); Lindsey Simon, *Bankruptcy Grifters* (April 1, 2021) Yale Law Journal, Forthcoming, *available at* SSRN: https://ssrn.com/abstract=3817530 ("If left unchecked, bankruptcy [third-party releases and injunctions] can serve as an accelerant for the gravest due process threats facing mass tort victims.").

29.  Lower courts, cognizant of these risks, have imposed "significant limitations" on such releases in Chapter 11 plans. *See In re Metcalfe & Mansfield Alternative Invs.*, No. 9-16709, 2010 BL 2759, at *9 (Bankr. S.D.N.Y. Jan. 5, 2010). Congress has assigned to the task of clarifying uncertainty to the circuit courts on direct appeal, counseling in favor of certification. 28 U.S.C. §158(d)(2)(A) (ii).

30.  Expeditious, efficient, and meaningful appellate review promises to best preserve estate value for those harmed, and is best served by bypassing the time and expense of district court review and heading directly to the court of appeals. This is why the Disclosure Statement expressly acknowledges that the Confirmation Order may be appealed, Dkt. No. 2983 at 320, and why the Settlement Agreement obliges the Master Designating Trustee to move for certification and facilitate any certification effort. Dkt. Nos. 3655 § 2.09(a). 3711 § 2.09. Accordingly, everyone should be acknowledging that there is much to be gained through direct appeal to the Second Circuit.

31.     There is also much that could be lost if the parties are forced proceed through the district court before inevitably reaching the Second Circuit. For reasons both practical and legal, there is at least some question whether "without certification, the parties will have an opportunity to appeal both to the district court and to [the court of appeals] before the termination of the entire bankruptcy proceeding." *Weber v. United States*, 484 F.3d 154, 157 (2d Cir. 2007). That risk counsels strongly in favor of certifying the case for direct appeal.

## CONCLUSION

Accordingly, the CMFN respectfully request that this Court certify that one or more of the circumstances set forth in 28 U.S.C. § 158(d)(2)(A) exists, so that this case may proceed on direct appeal to the United States Court of Appeals for the Second Circuit.

Dated: October 7, 2021

Respectfully submitted,

/s/ Allen J. Underwood, II
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Allen J. Underwood II, Esq.
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
e-mail: aunderwood@litedepalma.com