UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11
                                                        :
PURDUE PHARMA L.P., *et al.*,                           :    Case No. 19-23649 (RDD)
                                                        :
                                            Debtors.    :    Jointly Administered
                                                        :
------------------------------------------------------- x

**DESIGNATION OF RECORD IN SUPPORT OF AMENDED
MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES TRUSTEE'S
AMENDED EXPEDITED MOTION FOR A STAY OF CONFIRMATION ORDER
AND RELATED ORDERS PENDING APPEAL PURSUANT TO
<u>FEDERAL RULE OF BANKRUPTCY PROCEDURE 8007 [ECF NO. 3801]</u>**

William K. Harrington, the United States Trustee for Region 2, hereby designates the following items to be included in support of the Amended Memorandum of Law in Support of United States Trustee's Amended Expedited Motion for a Stay of Confirmation Order and Related Orders Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007 [ECF No. 3801] (the "Amended Stay Motion").

1.  First Day Brief, ECF No. 17.

2.  Complaint for Injunctive Relief, Adv. Proc. No. 19-08289, ECF No. 1.

3.  Declaration of Katherine Stadler in Support of Limited Objection and Response of Arkansas and Tennessee Public Officials in opposition to Debtors' Motion for Preliminary Injunction (related document(s) 39) filed by Katherine Stadler on behalf of Arkansas Plaintiffs, Tennessee Plaintiffs, Adv. Proc. No. 19-08289, ECF No. 43.

4.  Statement of the Raymond Sackler Family and Beacon Company in Support of the Debtors' Motion for a Preliminary Injunction, Adv. Pro. No. 18-08289-RDD, ECF No. 63.

5.  Order Pursuant to 11 U.S.C. § 105(a) Granting, in part, Motion for a Preliminary Injunction, Purdue Pharma L.P. v. Commonw. Of Mass., Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. Oct. 11, 2019), Adv. Proc. No. 19-08289, ECF No 82.

6.  Amended Order signed on 10/18/2019 Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 89.

7. Second Amended Order signed on 11/6/2019 Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 105.

8. Third Amended Order signed on 11/20/2019 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 115.

9. Fourth Amended Order signed on 12/9/2019 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 126.

10. Fifth Amended Order signed on 12/30/2019 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 132.

11. Sixth Amended Order signed on 2/14/2020 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 139.

12. Seventh Amended Order signed on 3/4/2020 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 145.

13. Eighth Amended Order signed on 3/30/2020 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 168.

14. Ninth Amended Order signed on 4/14/2020 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 175.

15. Tenth Amended Order signed on 5/18/2020 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 185.

16. Eleventh Amended Order signed on 7/20/2020 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 190.

17. Order Signed on 8/31/2020 Granting Twelfth Amended Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 194.

18. Thirteenth Amended Order signed on 10/1/2020 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 208.

19. Fourteenth Amended Order signed on 10/30/2020 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 214.

20. Fifteenth Amended Order signed on 3/1/2021 Pursuant to 11 U.S.C. § 105(a) Granting Motion for Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 219.

21. Sixteenth Amended Order signed on 3/26/2021 Granting Motion for a Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 241.

22. Seventeenth Amended Order signed on 4/22/2021 Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 254.

23. Eighteenth Amended Order signed on 4/22/2021 Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 264.

24. Nineteenth Amended Order signed on 6/17/2021 Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 274.

25. Twentieth Amended Order signed on 8/30/2021 Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 286.

26. Twenty-First Amended Order signed on 9/2/2021 Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, Adv. Proc. No. 19-08289, ECF No. 287.

27. Letter from Michael Julian, ECF No. 442.

28. Declaration of Jeanne C. Finegan, ECF No. 719.

29. Order signed on 2/3/2020 Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III Approving the Form and Manner of Notice Thereof, ECF No. 800.

30. Supplemental Declaration of Jeanne C. Finegan, ECF No. 1179.

31. Order signed on 6/3/2020 Granting Motion (I) Extending the General Bar Date for a Limited Period and (III) Approving the Form and Manner of Notice Thereof, ECF No. 1221.

32. Second Supplemental Declaration of Jeanne C. Finegan, ECF No. 2917.

33. Pro Se Letter from Michael Wilford Normille, III, ECF No. 2966.

34. Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P. and its Affiliate Debtors, ECF No. 2967.

35. Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P. and its Affiliate Debtors, ECF No. 2983.

36. Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P. and its Affiliate Debtors, ECF No. 2982.

37. Order Approving (I) Disclosure Statement for Fifth Amended Chapter 11 Plan, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto, ECF No. 2988.

38. Pro Se Letter from Les Burress, ECF No. 3028.

39. Objection to Debtors' Plan of Reorganization filed by Kelvin X. Singleton, ECF No. 3125.

40. Sixth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and its Affiliated Debtors, ECF No. 3185.

41. Objection to Plan filed by Mary Butler-Fink, ECF No. 3235.

42. Objection of the United States Trustee (William K. Harrington) to the Sixth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and its Affiliated Debtors, ECF No. 3256.

43. City of Seattle's Objection to Confirmation of the Debtor's Plan of Reorganization, ECF No. 3264.

44. Statement of the United States Regarding the Shareholder Release, ECF No. 3268.

45. Joint Objection of the State of Connecticut, the State of Maryland, and the District of Columbia to Confirmation of the Debtors' Sixth Amended Plan of Reorganization, ECF No. 3270.

46. Objection to Plan and Plan Confirmation (Stacey Bridges), ECF No. 3271.

47. Joinder and Objection of Gulf Underwriters Insurance Company and St. Paul Fire and Marine Insurance Company to the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors, ECF No. 3272.

48. Joinder of the State of California and the People of the State of California to Objection of the State of Washington and the State of Oregon, and the Objecting States to Confirmation of the Debtors' Plan of Reorganization, ECF No. 3274.

49. Objection of Certain Canadian Municipal Creditors and Canadian First Nation Creditors to Confirmation of the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors, ECF No. 3275.

50. Objection of the State of Washington, the State of Oregon and the Objecting States to Confirmation of the Debtor's Plan of Reorganization, ECF No. 3276.

51. State of Maryland's Separate Objection and Joinder to the Objections of Connecticut and Washington to Confirmation of the Debtors' Proposed Sixth Amended Joint Plan of Reorganization, ECF No. 3278.

52. Joinder of the State of Vermont to Objection of the State of Washington to Confirmation of the Debtors' Plan of Reorganization, ECF No. 3279.

53. Joinder of the State of Delaware to the Objection of the State of Washington, the State of Oregon, and the Objecting States to Confirmation of the Debtors' Plan of Reorganization, ECF No. 3280.

54. Objection to Consider Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization filed by Joyce Villnave, ECF No. 3292.

55. Joint Objection of Certain Distributors, Manufacturers, and Pharmacies to the Sixth Amended Joint Chapter 11 Plan of Purdue Pharma and its Affiliated Debtors, ECF No. 3306.

56. Objection to the Plan filed by D. Thomas Page, ECF No. 3368.

57. Final Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors, ECF No. 3372.

58. Third Supplemental Declaration of Jeanne C. Finegan, ECF No. 3403.

59. Objection to Confirmation of Plan filed on behalf of the Farash Family by Barbara Farash, ECF No. 3404.

60. Declaration of Jayne Conroy in Support of Ad Hoc Committee's Reply to Plan Objections and in Support of Plan Confirmation filed by Kenneth H. Eckstein on behalf of Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, ECF No. 3447.

61. Declaration of Peter H. Weinberger in Support of Ad Hoc Committee's Reply to Plan Objections and in Support of Plan Confirmation filed by Kenneth H. Eckstein on behalf of Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, ECF No. 3449.

62. Declaration of Jonathan Greville White filed by Jasmine Ball on behalf of Beacon Company, ECF No. 3451.

63. Declaration of Alexa M. Saunders filed by Jasmine Ball on behalf of Beacon Company, ECF No. 3452.

64. Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Entry of an Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information and (III) Granting Related Relief, ECF No. 3484.

65. Debtors' Ex Parte Motion for Entry of an Order Shortening Notice with Respect to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Entry of an Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information and (III) Granting Related Relief, ECF No. 3485.

66. Objection to Motion for Entry of an Order Shortening Notice with Respect to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Entry of an Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information and (III) Granting Related Relief, ECF No. 3493.

67. Seventh Amended Joint Chapter 11 Plan of Purdue Pharma and its Affiliated Debtors, ECF No. 3545.

68. Objection of United States Trustee to Debtors' Ex Parte Motion for Entry of an Order Shortening Notice with Respect to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Entry of an Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information and (III) Granting Related Relief, ECF No. 3555.

69. Emergency Request for Immediate Injunction and Hearing for Due Process, Production for Evidentiary Documents & Other Relief, ECF NO. 3582.

70. Eighth Amended Joint Chapter 11 Plan of Purdue Pharma and its Affiliated Debtors, ECF No. 3632.

71. Supplemental Objection of United States Trustee to (I) Eighth Amended Joint Chapter 11 Plan of Purdue Pharma and its Affiliated Debtors and (II) Proposed Confirmation Order, ECF No. 3636.

72. Objection of Trudy Duffy, ECF No. 3648.

73. Ninth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors, ECF No. 3652.

74. Notice of Filing of Sixteenth Plan Supplement Pursuant to Ninth Amended Joint Chapter 11 Plan of Purdue Pharma and its Affiliated Debtors, ECF No. 3655.

75. Objection of Vitaly Pinkusov, ECF No. 3677.

76. Tenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors, ECF No. 3682.

77. Eleventh Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors, ECF No. 3706.

78. Supplemental Objection of United States Trustee to (I) Eleventh Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and its Affiliated Debtors, and (II) Any Proposed Confirmation Order, ECF No. 3710.

79. Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors, ECF No. 3726.

80. Objection of Vitaly Pinkusov, ECF No. 3742.

81. Debtors Reply to the Objections of the Objecting States, the United States Trustee, and the Canadian Municipality Creditors and Canadian First Nations Creditors to the Debtors

      Motion Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Entry of an Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information and (III) Granting Related Relief, ECF No. 3743.

82. Order Signed on 9/15/2021 Granting Motion (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information and (III) Granting Related Relief, ECF No. 3773.

83. Modified Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter 11 Plan, ECF No 3786.

84. Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors, ECF No. 3787.

85. Objection of Paul Hartman, ECF No. 3793.

86. Notice of Appeal filed by Ellen Isaacs, ECF No. 3877.

87. Notice of Appeal filed by Maria Ecke, *et al.*, ECF No. 3878.

88. Motion for Stay Pending Appeal filed by Ellen Isaacs, ECF No. 3890.

89. 8/12/21 Tr. (testimony of Jennifer Finegan of Prime Clerk LLC).

90. 8/12/21 Tr. (testimony of Chief Financial Officer Lowne).

91. 8/18/21 Tr. (testimony of Dr. Richard Sackler).

92. 9/13/21 Tr. (statement of Ellen Isaacs).

93. Complaint, Delaware v. Sackler, Case No. N19C-09-062 (Super. Ct. Del.), JX-1646.

94. Complaint, Oregon v. Sackler, No. 19CV22185 (Cir. Ct. Ore.), JX-1647.

95. Complaint, Vermont v. Sackler (Super. Ct. Vt.), JX-1649.

96. Complaint, Rhode Island v. Sackler, C.A. No. PC 2019-9399 (Super. Ct. R.I.), JX-2214.

97. Complaint, California v. Purdue Pharma L.P., Case No. 19STCV19045 (Super. Ct. Cal.) (May Not Be Examined Without Court Order), JX-0947.

98. First Amended Complaint, Colorado v. Purdue Pharma L.P., Case No. 18CV33300 (Dist. Ct. Colo.), JX-2212.

99. Second Amended Complaint, Connecticut v. Purdue Pharma L.P., No. X07 HHD-CV-19-6105325-S (Super. Ct. Conn.), JX-0840.

100. Unredacted Complaint, District of Columbia v. Purdue Pharma L.P., Civil Action No. 2019 CA 003680 B (Super. Ct. D.C.), JX-0946.

101. Complaint, Massachusetts v. Purdue Pharm L.P., (Super. Ct. Mass.), JX-2209.

102. First Amended Complaint, Massachusetts v. Purdue Pharm L.P., C.A. No. 1884-cv-01808 (Super. Ct. Mass.), JX-2210.

103. First Amended Complaint, Minnesota v. Purdue Pharma L.P., No. 27-CV-18-10788 (Dist. Ct. Minn.), JX-2213.

104. First Amended Complaint, New York v. Purdue Pharma L.P., Index No.: 400016/2018 (Sup. Ct. N.Y.) (Confidential), JX-2211.

105. Complaint, Rhode Island v. Sackler, C.A. No.: PC 2019-9399 (Super. Ct. R.I.), JX-2214.

106. Complaint, West Virginia v. Purdue Pharma, L.P., CA No. 19-C-62 (Cir. Ct. W.Va.), JX-0949.

107. Finegan Decl., Ex. 1 - Bar Date Flyer Notice, JX-0932.

108. Finegan Decl., Ex. 2 - May Press Releases, JX-0933.

109. Finegan Decl., Ex. 3 - Sample of Online Display, Internet Search Term, and social Media Advertisements, JX-0934.

110. Finegan Decl., Ex. 4 - Bar Date Notice, JX-0935.

111. Finegan Decl., Ex. 5 - Bar Date Magazine, JX-0936 .

112. Finegan Decl., Ex. 6 - Notice of Hearing to Consider Confirmation of the Fifth Amended Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines, dated June 3, JX-0937.

113. Finegan Decl., Ex. 7 - June Press Releases, JX-0938.

114. Finegan Decl., Ex. 8 - Confirmation Hearing Publication Notice, JX-0939.

115. Finegan Decl., Ex. 9 - Confirmation Hearing Magazine Ad, JX-0940.

116. Finegan Decl., Ex. 10 - Confirmation Hearing Flyer Notice, JX-0941.

117. Finegan Decl., Ex. 11 - Sample of Online Display, Internet Search Term, and Social Media Advertisements, JX-0942.

118. Personal Injury Claimant Proof of Claim Form, at 03022020062113PurduePersonalInjuryClaimantProofofClaimForm02032020_2798_20200302181301965.pdf.

The United States Trustee also asks the Court to take judicial notice of the following publicly available documents in support of the Amended Stay Motion.

1. Adam J. Levitin, Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances, 100 Tex. L. Rev. 74 (2021), available at http://dx.doi.org/10.2139/ssrn.3851339.

2. Lindsey Simon, Bankruptcy Grifters (April 1, 2021) Yale Law Journal, Forthcoming, available at SSRN: https://ssrn.com/abstract=3817530.

3. Richard L. Epling, Third-Party Releases in Bankruptcy Cases: Should There Be Statutory Reform?, 75 Bus. Law. 1747, 1748 (spring 2020), available at https://heinonline.org/HOL/Page?handle=hein.journals/busl75&div=27&g_sent=1&casa_token=&collection=journals

4. SACKLER Act, H.R. 2096, 117th Congress (2021), text available at H.R.2096 - 117th Congress (2021-2022): SACKLER Act | Congress.gov | Library of Congress.

5. SACKLER Act, S. 2472, 117th Congress (2021), text available at S.2472 - 117th Congress (2021-2022): SACKLER Act | Congress.gov | Library of Congress.

6. Nondebtor Release Prohibition Act of 2021, H.R. 4777, 117th Congress (2021), text available at H.R.4777 - 117th Congress (2021-2022): Nondebtor Release Prohibition Act of 2021 | Congress.gov | Library of Congress.

7. Nondebtor Release Prohibition Act of 2021, S. 2497, 117th Congress (2021), text available at S.2497 - 117th Congress (2021-2022): Nondebtor Release Prohibition Act of 2021 | Congress.gov | Library of Congress.

8. The Role of Purdue Pharma and the Sackler Family in the Opioid Epidemic Before the House Committee on Oversight and Reform, 116th Congress (2020), https://oversight.house.gov/legislation/hearings/the-role-of-purdue-pharma-and-the-sackler-family-in-the-opioid-epidemic.

9. Oversight of the Bankruptcy Code, Part 1: Confronting Abuses of the Chapter 11 System Before U.S. House of Representatives Judiciary Committee, Subcommittee Antitrust, Commercial and Administrative Law, 117th Congress (2021), https://judiciary.house.gov/calendar/eventsingle.aspx?EventID=4666.

The United States Trustee also directs the Court's attention to the following specific sections he may reference in support of his argument that the balance of harms weighs in favor of granting the Amended Stay Motion.

1. First Day Brief, ECF No. 17.

   a. See p. 16. *"Purdue is wholly owned by Pharmaceutical Research Associates L.P. ("PRA"), a Delaware limited partnership. PRA is not a debtor in this case."*

   b. See p. 16. *"PRA is ultimately 99.5% owned by two entities in equal part, Beacon Company ("Beacon"), a Delaware general partnership, and Rosebay Medical Company L.P. ("Rosebay"), a Delaware limited partnership. Neither of these two entities is a debtor. Beacon and Rosebay are ultimately owned by various trusts established for the benefit of the Sackler Families."*

   c. See p. 16. *"The remaining equity interest in PRA (approximately 0.5%) is owned in approximately equal parts by PPI (as noted above) and PLP Associates Holdings Inc. ("PLP"), a New York corporation. PLP is not a debtor. PPI and PLP are also ultimately owned by various trusts established for the benefit of members of the Sackler Families."*

2. Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P. and its Affiliate Debtors, ECF No. 2983.

   a. See p. 162. *"When these Chapter 11 Cases began, certain members of the Sackler Families and Sackler Entities were faced, in aggregate, with approximately 400 civil suits throughout the United States. At that time, additional new suits against them were being filed every week. As a point of reference, at the same time, Purdue Pharma had been named as a defendant in more than 2,900 civil actions pending in various state and federal courts and other fora across the United States and its territories, and was also subject to several governmental investigations."*

   b. See p. 163. *"Documents released by the Committee on Oversight and Reform indicate that the Sackler Families' wealth is divided between the A and B sides of the Sackler Families (the descendants of Mortimer and Raymond Sackler, respectively), with the A-Side individuals, companies and trusts holding collectively approximately $4.8 billion in assets and the B-Side individuals, companies and trusts holding collectively approximately $6.2 billion in assets. The information that the Debtors and certain other parties were provided with, while substantially more detailed in some respects and in certain instances including information as of different dates than those reported in the materials released by the Committee on Oversight and Reform, did not indicate that the aggregate value of the Sackler Families' wealth is materially different from the amounts indicated by the documents released by the Committee on Oversight and Reform . . . ."*

    a. See p. 173. *"Third-party creditors of the Sackler Families have brought a variety of claims arising from Purdue Pharma's and the Sackler Families' roles in manufacturing and marketing the various Opioid Products, including OxyContin. These claims include, but are not limited to, product liability, wrongful death, negligence, including negligent misrepresentation, negligence per se and gross negligence, fraud, fraudulent concealment, deceit and other willful misconduct, unjust enrichment, public nuisance, and claims under state consumer protection and controlled substances laws."*

3. Statement of the Raymond Sackler Family and Beacon Company in Support of the Debtors' Motion for a Preliminary Injunction, Adv. Pro. No. 18-08289-RDD, ECF No. 63.

    a. See p. 8. *"The scale of ongoing litigation against the family members is staggering. Family members are currently facing approximately 400 civil suits, predominantly brought by counties, municipalities, and states throughout the United States. New suits are filed every week."*

4. Declaration of Alexa M. Saunders filed by Jasmine Ball on behalf of Beacon Company, ECF No. 3452.

    a. See ¶ 7. *"I understand that there are currently approximately 2,600 suits against Purdue regarding its prescription opioid marketing practices and approximately 750 suits against the Side A Former Directors. These claims are seeking billions, if not trillions, of dollars in damages."*

    b. See ¶ 9. *"[. . .] Absent the Shareholder Releases . . .[the] beneficiaries and Trusts would still remain subject to suits seeking billions of dollars in damages."*

5. Declaration of Jayne Conroy in Support of Ad Hoc Committee's Reply to Plan Objections and in Support of Plan Confirmation filed by Kenneth H. Eckstein on behalf of Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, ECF No. 3447.

    a. See ¶ 13. *"Our initial filings named as defendants several Purdue entities, but none of the individual members of the Sackler family. We believed that the members of the Sackler family bore significant responsibility for the illegal marketing of OxyContin and the ensuing opioid crisis, but we did not yet have the evidence we needed to name any of the Sacklers as defendants. By the fall of 2018, however, we believed we had a good faith basis to sue several members of the Sackler family. On October 23, 2018, we amended our complaint on behalf of Suffolk County, New York to name as defendants Richard Sackler, Jonathan Sackler, Mortimer D.A. Sackler, Kathe Sackler, Ilene Sackler Lefcourt, Beverly Sackler, Theresa Sackler, David A. Sackler, a Sackler family trust, and several other entities owned by the Sacklers. In November, 2018, we added the same Sackler and Purdue-related entities to our state court litigation in Delaware County, Pennsylvania."*

    b. See ¶ 14. *"The members of the Sackler family moved to dismiss the claims against them in New York and Pennsylvania on a variety of grounds. On June 21, 2019, the New York judge presiding over the New York State coordination denied the motions to dismiss filed by each of the individual Sacklers, as well as motions filed by the family trust and two of the Sackler-related entities. The orders of the New York court made clear, that whatever the merits of the defenses the Sacklers intended to offer, they would need to participate in full-blown discovery and face intense scrutiny of their individual conduct and their role in the creating and opioid epidemic. It was also clear that the Sacklers would be facing litigation on multiple fronts around the country."*

    c. See ¶ 15. *"Although the individual members of the Sackler family were not named as defendants in the Track 1 cases in the MDL, they were important fact witnesses for those cases. As discussed in the Declaration of Peter H. Weinberger in Support of Plan Confirmation ("Weinberger Declaration"), the PEC lawyers, the discovery that the PEC took in the MDL subjected the Sacklers to increasing scrutiny and pointed towards culpability of certain members of the family. Together with the orders in New York denying the motions to dismiss, the discovery in the MDL showed that the threat of liability for at least some members of the family was real and that, without the protections of bankruptcy, individual family members were at risk of substantial judgments against them."*

6.   Declaration of Peter H. Weinberger in Support of Ad Hoc Committee's Reply to Plan Objections and in Support of Plan Confirmation filed by Kenneth H. Eckstein on behalf of Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, ECF No. 3449.

    a. See ¶ 34. *"Under the Sackler family's close control, as discussed infra, and to their benefit, Purdue's marketing led to the widespread abuse and misuse of OxyContin, representing the start of the opioid crisis. As a result of both licit and illicit sales, the Sackler family reached the Forbes list of richest U.S. families as a result of OxyContin's sales, and their efforts to preserve and extract value from the companies."*

    b. See ¶ 35. *"The MDL Plaintiffs deposed Dr. Richard Sackler from March 7-8, 2019, and Dr. Kathe Sackler, on April 1, 2019. Over the course of these depositions, plaintiffs' counsel secured numerous admissions relating to their close management of the company, including knowledge of abuse, misuse, and diversion. MDL plaintiffs further obtained admissions that the Sackler family members did not take steps to curtail the abuse of their products, even upon urging from regulators."*

    c. See ¶ 36. *"State Attorney General actions against the Sacklers also relied on discovery obtained by the MDL plaintiffs. The Commonwealth of Massachusetts's First Amended Complaint against the Purdue and its Board of Directors and executives, including Sackler family members, C.A. No. 1885-cv-01808 (Super. Ct. Suffolk Cty. January 31, 2019), for example, relied on over 500 source documents*

     *obtained through MDL discovery. These documents included relevant Board of Directors meeting minutes and correspondence detailing the involvement of members of the Sackler family in Purdue's operations, as well as the documents establishing Purdue's underlying liability, such as their call notes, promotional materials, sales trainings, and marketing plans. Massachusetts also relied on documents obtained through MDL discovery to identify over $4 billion in payments from Purdue to the Sackler family from 2008-2016 (First Am. Cplt., 238 n.154)."*

    d. See ¶ 37. *"Plaintiffs' discovery analyses also contributed to findings of personal jurisdiction against the Sacklers in State Attorney General actions, which also contributed to litigation pressure on the Sacklers. Utah's Department of Consumer Production brought suit against the Purdue entities and Drs. Richard and Kathe Sackler, DCP Case No. 107102 on January 31, 2019. The Sacklers moved to dismiss, and the Department opposed, relying on MDL documents demonstrating that the Sacklers took actions affecting the State of Utah. See Order on Motion to Dismiss of the Sackler Respondents, at 6 (July 15, 2019). The Utah Third Judicial District Court upheld the exercise of jurisdiction as to Dr. Richard Sackler, Richard Sack/er and Kathe Sack/er v. Utah Division of Consumer Protection, Case No. 190905862, Mem. Decision and Order (Oct. 10, 2019), immediately prior to this Court's October 11, 2019 preliminary injunction."*

    e. See ¶ 38. *"The State of Rhode Island amended its lawsuit against Purdue, C.A. No.: PC2018-4555 (Super. Ct. Providence Cty.), to name Dr. Richard Sackler as a defendant on November 16, 2018. The defendants, including Purdue and Dr. Richard Sackler moved to dismiss the amended complaint on January 15, 2019, including on personal jurisdiction grounds in the case of Dr. Sackler. The Rhode Island Superior Court upheld the claims and the exercise of personal jurisdiction in an August 16, 2019 decision. Decision, at 13."*

    f. See ¶ 39 (footnotes omitted). *"In April 2019, Rhode Island noticed the depositions of Mortimer D.A. Sackler and Jonathan Sackler and on April 17, 2019 moved to compel these depositions. The State's briefing on this motion relied on MDL discovery, including evidence of Jonathan Sackler's involvement in efforts to commercialize patents for addiction treatment while Purdue publicly minimized addiction risks and Mortimer D.A. Sackler's involvement in efforts by Purdue to launder promotional messages through the non-profit American Pain Foundation. The State prevailed on its motions to compel the Jonathan Sackler deposition in August 2019, State of Rhode Island v. In Re Subpoena and Jonathan Sack/er, Docket NO. FST CV 19-6042349 (Super. Ct. StamfordNorwalk Jud. Dist. Aug. 27, 2019); and Mortimer D.A. Sackler deposition State of Rhode Island v. Mortimer D.A. Sack/er, Sup. Ct. N.Y. Cty. Order, Doc. No. 71, June 24, 2020. These depositions did not take place, however, owing to the Bankruptcy filing and this Court's stay, and Jonathan Sackler's death in July 2020."*

    g. See ¶ 40. *"These State complaints naming Sackler family members relied on MDL documents extensively, and the knowledge individual family members would be*

*subject to suit and have to give deposition testimony likely contributed to the settlement."*

7. Declaration of Jonathan Greville White filed by Jasmine Ball on behalf of Beacon Company, ECF No. 3451.

   a. See ¶ 18. *"As described above, the Beacon Trust owns Side A's share of Purdue. Since 2018, certain governmental and private plaintiffs have named as defendants (among others) four beneficiaries of the General Trusts and of certain of the Family Trusts who served on Purdue's Board (Ilene Sackler, Kathe Sackler, Mortimer D.A. Sackler, and Theresa Sackler, collectively, the "Side A Former Directors"). I understand that there are currently approximately 2,600 suits against Purdue regarding its prescription opioid marketing practices and approximately 750 suits against the Side A Former Directors. These claims are seeking billions, if not trillions, of dollars in damages. In addition, the Estate has asserted that it could bring claims, styled as fraudulent conveyance or otherwise, to recover at least $10 billion in distributions from Purdue to entities for the benefit of the Sackler families (approximately half of which was for the purpose of paying taxes on Purdue's income)."*

   b. See ¶ 21. *"As fiduciaries, the Trustee Directors, acting on behalf of the Trustees, can make the significant commitments described in the prior paragraph if and only if, having addressed any conflicting interest, they consider, reasonably and having taken all relevant matters into account, that to do so is in the best interests of the beneficiaries. The Trustees consider that their entry into the settlement agreement is in the best interest of the beneficiaries if, and only if, it provides releases that provide for global finality for the Trusts, beneficiaries and related parties. Global finality means that risks of litigation related to the subject matter of the Shareholder Releases will be eliminated, once and for all so that:*

      - *The beneficiaries, Trusts and other entities for the benefit of Side A – including the 30 beneficiaries and future descendants of Dr. Mortimer Sackler – will no longer the subject of the Purdue-related claims that seek billions of dollars (if not more) in damages.*

      - *The Trusts will no longer have to expend millions of dollars in trust assets each month on fees for lawyers and advisors to defend the litigation;*

      - *The beneficiaries (among others) will no longer have to endure the burdens and intrusion resulting from being named as defendants in countless litigation."*

8. Complaint for Injunctive Relief, Adv. Proc. No. 19-08289, ECF No. 1.

   a. See ¶ 17. *"The Debtors have been named in more than 2,625 lawsuits filed throughout the state and federal court systems. The lawsuits—i.e., the Pending*

*Actions—generally allege that the Debtors acted improperly in the marketing and sale of opioid medications, and seek monetary damages based on public nuisance, consumer protection laws, unjust enrichment, false claims acts, and similar claims. Although some of the proceedings also seek injunctive relief against the Debtors, requests for such relief are ancillary to the monetary claims in the Governmental Actions—which overwhelmingly allege past misconduct."*

b. See ¶ 18. *"The vast majority of the Pending Actions—over 85% by number—involve governmental entities as plaintiffs. Approximately 2,200 of the actions have been consolidated in a multidistrict litigation pending in the United States District Court for the Northern District of Ohio. There are also actions pending against the Debtors and Related Parties in state courts around the country, as well as in Puerto Rico. The state court actions include those asserted by the attorneys general of 46 states; these are not part of the MDL."*

c. See ¶ 19. *"The Debtors and Related Parties also face actions in state and federal courts brought by private parties that assert various claims for personal injury, wrongful death, and economic damages (the "Private Actions"). While these actions have without question been automatically stayed as against the Debtors, certain of the Private Actions also assert claims against the Related Parties, who are not Debtors."*

d. See ¶ 21. *"Substantially all of the Pending Actions name Purdue Pharma as a defendant, and the vast majority also name PPI and the Purdue Frederick Company, Inc. A growing number of the Pending Actions name as defendants other Debtors and/or other Related Parties."*

e. See Exhibit B (list of actions subject to the preliminary injunction).

9. Order Pursuant to 11 U.S.C. § 105(a) Granting, in part, Motion for a Preliminary Injunction, Purdue Pharma L.P. v. Commonw. Of Mass., Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. Oct. 11, 2019), Adv. Dkt. ECF No 82.[1]

  a. See p. 4 (footnotes omitted). *"ORDERED, that the Governmental Defendants and the Private Defendants are prohibited and enjoined from (i) the commencement or continuation of their active judicial, administrative, or other actions or proceedings against the Debtors and/or Related Parties that were or could have been commenced before the commencement of the case under this title against the Debtors and/or the Related Parties arising from or in any way relating to the Debtors' prescription opioid business, including the actions reflected in the attached Exhibit A and Exhibit*

---

[1] This Order has been extended through and including entry of the Confirmation Order and the expiration of the stay of such Confirmation Order pursuant to Federal Rule of Bankruptcy Procedure 3020(e), and there is another hearing on the matter scheduled for October 14, 2021, *see* ECF No. 89, ECF No. 105, ECF No. 115, ECF No. 126, ECF No. 132, ECF No. 139, ECF No. 145, ECF No. 168, ECF No. 175, ECF No. 185, ECF No. 190, ECF No. 194, ECF No. 208, ECF No. 214, ECF No. 219, ECF No. 241, ECF No. 254, ECF No. 264, ECF No. 274, ECF No. 286, ECF No. 287.

> *B, as well as (ii) from commencing or continuing any other actions against the Debtors or Related Parties alleging substantially similar facts or causes of action as those alleged in actions reflected in the attached Exhibit A and Exhibit B, in each case through and including Wednesday, November 6, 2019. The preliminary injunction period may be extended by further order of the Court."*

10. Letter from Michael Julian, ECF No. 442.

    a. See p. 1 *"[O]ur system of justice demands that the allegations against the Sackler family be fully and fairly litigated in a public and open trial, that they be judged by an impartial jury, and that they be held accountable to those they have harmed."*

11. Pro Se Letter from Michael Wilford Normille, III, ECF No. 2966.

    a. See p. 1. *"[I] am a personal injury claimant with a suit against Purdue Pharma, and, hopefully, the Sackler family, if I can locate a good lawyer in a short time, but have been advised that a deal with the government has made them protected from liability.")*

    b. See p. 1. *"That's not called a fine, it's a donation with a lot of zeroes in it that sounds like a great deal to those who don't regularly see such numbers, in lieu of punitive damages."*

    c. See p. 2. *". . . I feel that certification at the currently proposed levels of compensation are clearly and woefully, inadequate."*

12. Objection to the Plan filed by D. Thomas Page, ECF No. 3368.

    a. See p. 1. *"My [objections] are numerous. 1) Not received a copy of the Plan. 2) Shareholder List or the response by Sackler Family. 3) Voting Ballot."*

13. Objection to Plan filed by Mary Butler-Fink, ECF No. 3235.

    a. See p. 2. *"Judge Drain, I'm pleading with you to not let the Sacklers gain immunity from criminal charges or any future lawsuits against them."*

14. Objection to Consider Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization filed by Joyce Villnave, ECF No. 3292.

    a. See p. 2. *"What is corporate responsibility? . . . . Should those who made the decision to ignore the collateral damages of their lies be allowed to live as though they merely bent a few rules."*

    b. See p. 2. *"Thank you, Judge Drain, for allowing me to voice my dissent."*

15. Objection to Debtors' Plan of Reorganization, filed by Kelvin X. Singleton, ECF No. 3125.

    a. See p. 3 *"[ ] the amount estimated on Page III of the Disclosure Statement of $3,500 and $48,000 is not enough recovery monies for those who suffered harm or death."*

16. Pro Se Letter from Les Burress, ECF No. 3028.

    a. See p. 1. *"To increase the payout for creditors which currently, at best a paltry 48,000 dollars . . . ."*

17. Objection to Confirmation of Plan filed on behalf of the Farash Family by Barbara Farash, ECF No. 3404.

    a. See p. 1. *"It is apparent from listening to the past several months of hearings, the voting package information, reading various documents on Prime Clerk's website and other public information, that most of the financial benefits from the Plan, (if confirmed by the Court) will be paid to attorneys, large corporation Creditors, various States, Counties, other government agencies Creditors and possible Debtor's employees, senior executives and future board members as retention compensation. The enormous group of individuals and their respective families harmed and or killed by the Debtors opioid products is the largest group burdened with the severe emotional, psychological, physical, painful after-math for the balance of their lives. This group should receive larger compensation than the above-mentioned Corporate and Governmental entities."*

    b. See p. 3. *"Yet, again, individual injured Creditors will be required to prepare the same huge package of information and evidence previously submitted with the initial claim submitted prior to July 30, 2020. I personal went through a huge amount of administrative time and expense (paper, printer wear & tear, duplicating, technical difficulties, messengering), exhausting and emotional aspect of gathering, preparing, organizing, requesting medical files for me and deceased family members, (an extremely difficult process in California given HIPPA laws), preparing clear evidenced based files, (some evidence dating as far back as the l990's), preparing claim applications, correspondences, and lastly overnighting approximately 5 pounds of paper for three claims. From my understanding, the Plan, once confirmed by the Court, will emotionally, physically, psychological, burden each individual Creditor by incurring, yet again, excessive time, energy and expense completing and submitting additional claim forms and evidence previous submitted."*

    c. See p. 3. *"Another item of concern was the process of voting for the plan. It was a "take-it or "leave-it" process with little thought to individual creditors fair and deserved compensation. Generally, it forced individuals who found the plan to be non-transparent or unfair to vote yes in order to continue to the next process."*

18. 8/12/21 Tr. (testimony of Chief Financial Officer Lowne).

    a. See p. 110. *"Q: And would it be possible for an average opioid victim based on publicly available information to identify all of these assets and individuals that are getting released?" "A: I would presume if I'm not, they wouldn't be able to, no."*

19. 8/18/21 Tr. (testimony of Dr. Richard Sackler).

    a. See p. 133. *"Q: Have you read the language of the release? A: It is an extremely dense document. I've read a page or two and realized that it would take me an enormous amount of time to fully understand. That's all I've read."*

20. 9/13/21 Tr. (statement of Ellen Isaacs).

    a. See pgs. 144-45. *"The Sackler Family is hiding behind the corporation named Purdue Pharma. The Sacklers have been continually and systematically using the already broken justice system through their attorneys with perpetual manipulation fraud for decades. They've used these tactics at the minimum since the inception of OxyContin."*

    b. See pgs. 148-49. *"It's unconscionable for the governing members of Purdue Pharma, the Sackler Family, to believe that $4.3 billion over nine years is going to be adequate compensation to relieve the pressure valve and the mental health pandemic that is rippling like a pebble in a pond across the entire nation. No one should forget that from 2016 to 2018, the government paid out over $650 billion for services, and there has been little to no relief with the numbers of deaths and hospital admissions soaring."*

    c. See p. 149. *"This brings me to millions of people that have viable claims against Purdue Pharma and were not effectively notified. There were millions of OxyContin prescriptions written since the very first prescription and administrations during trial studies. I personally would have never known this lawsuit was going on had I not been on a social networking platform in a bereaved parents' group."*

    d. See p. 150. *"In my travels, many have asked how they can participate in this legal action, and it was passed the filing deadline. These people had no idea these proceedings were happening. There were millions of loving humans that have not received their due process to file claims in this very proceeding."*

    e. See p. 152. *"Your Honor, for this Court to permit such wide-reaching third-party relief is creating a precedent for every big pharma corporation to do the same as the Sacklers, who are manipulating and defrauding our government at the expense of the life, liberty, property, and due process of the American people. It will also permit every single corporation to do the same, anyone will be permitted to tell the corporation, behave unscrupulously, harm the public, and walk away by declaring bankruptcy."*

    f. See p. 153. *"The victims are getting the least compensation in this agreement. The claimants' voices were not permitted to be heard in these proceedings . . . ."*

g. See pgs. 155-56. *"Although Kathe Sackler would like to confuse the Court by reminding everyone on camera, the company pled guilty, and not the individuals. I would like to remind this Court that the Sacklers are Purdue Pharma. They are one in the same. The corporation is a piece of paper. The corporation does not have hundreds of investors to attack. It is one family, and one family alone. And it has had controlling interest, deceived the public and our government to create a mental health crisis of pandemic proportions. They were the decisionmakers that created the wave of death, dismemberment, and personal injury, and mental anguish to millions."*

Dated: New York, New York
October 8, 2021

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: */s/ Linda A. Riffkin*
Linda A. Riffkin, Assistant United States Trustee

| | |
|---|---|
| RAMONA D. ELLIOTT | WILLIAM K. HARRINGTON |
| Deputy Director/General Counsel | United States Trustee, Region 2 |
| P. MATTHEW SUTKO | LINDA A. RIFFKIN |
| Associate General Counsel | Assistant United States Trustee |
| BETH A. LEVENE | PAUL K. SCHWARTZBERG |
| SUMI K. SAKATA | BENJAMIN J. HIGGINS |
| Trial Attorneys | Trial Attorneys |
| | |
| Department of Justice | Department of Justice |
| Executive Office for United States Trustees | Office of the United States Trustee |
| 441 G Street, N.W., Suite 6150 | 201 Varick Street, Room 1006 |
| Washington, DC  20530 | New York, NY  10014 |
| (202) 307-1399 | (212) 510-0500 |
| Fax:  (202) 307-2397 | Fax:  (212) 668-2361 |