

**U.S. Department of Justice**
Office of the United States Trustee
*Southern District of New York*

U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY  10014
Phone: (212) 510-0500

October 8, 2021

**By ECF**
The Honorable Robert D. Drain
United States Bankruptcy Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4140

    Re:   *In re Purdue Pharma L.P., et al.*, No. 19-23649 (RDD)

Dear Judge Drain:

    The United States Trustee for Region 2 ("UST"), in accordance with Local Rule 7007-1 and Your Honor's individual rules, respectfully requests a pre-motion conference in advance of filing a motion for a protective order to quash a deposition notice (the "Notice") served on the UST by the Personal Injury Ad Hoc Group ("PI Group") dated September 29, 2021.[1] The UST respectfully requests leave to exceed the Court's four-page limit for this request.

    The Notice should be quashed because the PI Group improperly seeks information that is irrelevant to the stay pending appeal, seeks to invade matters protected by the attorney-client and deliberative process privileges and the attorney work-product doctrine, and seeks to use the Notice to harass the UST.[2] The UST and PI Group met and conferred on October 4, 2021, but

---

[1] Although the UST has not raised the PI Group's standing to seek discovery in connection with the UST's motion for a stay pending appeal as the subpoena fails on other grounds, the UST reserves his right to do so in the future. The PI Group is not a party to the United States Trustee's appeal because it was neither a plan proponent nor a party to the Shareholder Settlement Agreement to be entered into by and among the Debtors and the Shareholder Payment Parties (as defined in the Plan) that will provide for the payment of funds to the Master Disbursement Trust under the Plan ("Shareholder Settlement Agreement").  *See* ECF No. 3711, p. 43. The Debtors were named as appellees because the Debtors are the sole proponents of the Plan.  The Sackler Family groups were named as appellees because they are parties to the Shareholder Settlement Agreement

[2] Additionally, although the UST has not raised the PI Group's failure to comply with applicable federal regulations that govern the production of witnesses by the Department of Justice in federal cases wherein the United States is a party, the UST reserves his right to do so in the future.  *See* 28 C.F.R. § 16.21, *et seq*.  To facilitate the Department's

have not been able to resolve their dispute.

**Role of the UST.** The Notice and positions expressed by counsel for the PI Group in the meet-and-confer fundamentally misconstrue the role of the UST in these bankruptcy cases. By statute, the UST is entrusted with supervising chapter 11 cases, including by monitoring and making filings related to chapter 11 plans. *See* 28 U.S.C. § 586; *id*. § 586(a)(3)(C). The UST is also permitted to "raise and [] appear and be heard on any issue in any case or proceeding" under the Bankruptcy Code. 11 U.S.C. § 307. It does not represent the interests of the United States as creditor. Here, the UST formally objected to the plan, appealed the Court's order confirming the plan, and has moved for a stay pending appeal.

In his objection to confirmation and the appeal now at issue, the UST is acting—as Congress intended—as the "bankruptcy watch-dog[]," H.R. Rep. No. 95-595 at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049, and fulfilling his "responsibility to represent and protect the public interest," *Adams v. Zarnel (In re Zarnel)*, 691 F.3d 156, 162 (2d Cir. 2010), by seeking to protect the constitutional rights of small stakeholders and the public interest. The UST need not show a pecuniary interest in a matter to appeal. *See, e.g.*, *In re Columbia Gas Sys. Inc.*, 33 F.3d 294, 296 (3d Cir. 1994) (so holding, and citing examples).

**Procedural history.** On September 15, the UST moved for a stay of the effectiveness of the plan pending appeal. Dkt. No. 3778. After the Court entered the confirmation order, the UST filed an amended notice of appeal and amended stay motion. Dkt. Nos. 3799, 3801. No party has yet responded to this motion. As of the time of this letter, the parties continue to discuss a schedule for briefing in connection with the stay hearing, which will be held November 9.

**Deposition notice.** On September 29, the PI Group sent the Notice, addressed to the UST pursuant to Federal Rule of Civil Procedure 30(b)(6). The Notice states that "the U.S. Trustee must designate one or more persons to testify on behalf of the U.S. Trustee with regard to all matters known or reasonably available to the U.S. Trustee on each of the [following] topics," Notice at 2:

1.  The alleged irreparable injury to the United States if a stay of one or more of the Court's Orders is not granted, as articulated in Section I.B of the Stay Motion (pp. 32-36).
2.  The United States' willingness to post a bond or otherwise compensate the Ad Hoc Group, the Personal Injury Victims, or the Debtors' estates for any harm resulting from a stay of one or more of the Orders pending appeal.

---

consideration of a request for oral testimony, the regulations mandate the production of "an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished." 28 C.F.R. § 16.23(c). Here, the PI Group refused to comply—even after the UST brought the requirement to its attention. The Supreme Court has specifically recognized the authority of agency heads to restrict testimony of their subordinates through internal regulation. *See U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *Boske v. Comingore*, 177 U.S. 459 (1900).

3. The United States' analysis, if any, of the potential harm to other parties-in-interest in the Chapter 11 Cases if a stay pending appeal of one or more of the Orders is granted.
4. Effect of vacatur of the Confirmation Order on the DOJ Settlement.
5. Effect of vacatur of the Confirmation Order on treatment of the United States' Claims.
6. Communications with "victims" regarding the Stay Motion or which inform the statements on pages 3, 7, 21, 22-27, 33-34, and 36 of the Stay Motion.

*Id.* Exh. A.

**Basis for protective order.** Under Federal Rule of Civil Procedure 26(c), applicable to the UST's stay motion by Federal Rule of Bankruptcy Procedure 9014, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See, e.g., Rouviere v. DePuy Orthopaedics, Inc.*, No. 18 Civ. 4814 (LJL)(SDA), 2020 WL 2999229, at *2 (S.D.N.Y. June 3, 2020) (granting a protective order in part for proposed Rule 30(b)(6) deposition).

The proper scope of discovery (if any) here is governed by the factual issues that are relevant to the substantive legal standard in this specific contested matter—the stay pending appeal. *See* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."). Here, the contested matter is whether a stay pending appeal is warranted. As the UST's brief explains, in addressing the stay motion the Court must weigh four factors: whether the movant will likely succeed on the merits on appeal; whether the movant will suffer irreparable injury if the stay is denied; whether issuance of the stay will substantially injure the other parties interested in the proceeding; and where the public interest lies. *See* USTP Br. at 14 (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

**Topic 1: Testimony about the "alleged irreparable injury to the United States" absent a stay.** The UST is seeking the stay and demonstrating relevant irreparable harm is part of his burden. But the harm that the UST must show is not irreparable injury "to the United States." As discussed above, the UST does not represent the United States as creditor, and his brief did not argue that the United States Government as creditor would be harmed absent a stay. Instead, the UST argues that individual Purdue creditors would be harmed absent a stay, including an individual creditor who filed a letter with the Court, and individuals who have sued the Sacklers (or who could have done so absent the Confirmation Order and the multiple preliminary injunctions). UST Br. 33-34.

Whether the UST has met his burden of demonstrating irreparable injury will turn on whether the facts and arguments he submits to the Court satisfy the applicable standard. But it is not appropriate to seek the mental impressions of UST attorneys about the "alleged irreparable harm to the United States" or to the public. This request improperly seeks the legal work product and mental impressions of attorneys and should be denied. The brief and any supporting materials to be offered by the UST speak for themselves and do not require the deposition of the

3

attorneys offering those materials. Thus, while nominally styled as a Rule 30(b)(6) notice asking the UST to produce fact witnesses on this topic, the personnel of the UST who worked on the motion and litigate the UST's position are all lawyers. The Notice essentially seeks discovery from government attorneys that addresses legal positions or strategy, not facts.

**Topic 2: Testimony regarding a bond.** As discussed during the parties' meet and confer, Federal Rule of Bankruptcy Procedure 8007(d) provides that "[a] bond or other security is not required when an appeal is taken by the United States, its officer, or its agency or by direction of any department of the federal government." "Discovery" on this topic has no relevance to the stay motion.

**Topic 3: The "United States' analysis" of the potential harm to other parties-in-interest if a stay pending appeal is granted.** Topic 3 is far afield of any inquiry relevant to the stay motion. In deciding the motion, the Court will evaluate and balance competing harms. It will not evaluate any party's beliefs or analysis. In other words, the basis for deciding the stay will be the legal arguments and factual evidence that parties advance in court—not the processes, methods, motives, or reasons underlying them.

To the extent the request seeks the UST's ultimate legal position about the relative weight of harms as relevant to the stay motion, that is set forth in the UST's brief and will be presented at the hearing.[3] Moreover, the UST's "analysis" plainly includes information protected by the attorney-client and deliberative-process privileges and work product doctrine, which is not discoverable. Fed. R. Civ. P. 26(b)(1).

**Topics 4 and 5: Testimony about the "[e]ffect of vacatur of the Confirmation Order" on the DOJ Settlement and the treatment of the United States' claims.** Topics 4 and 5 are simply irrelevant in evaluating whether a stay pending appeal should be granted. *First*, the stay motion does not seek vacatur of the confirmation order—it seeks a stay of that order while an appeal is heard. Although a successful appeal might result in vacatur of the confirmation order, the relevant questions for a stay pending appeal concern potential harm *from the stay itself*, not from a successful appeal. For example, in *Nat'l Day Laborer Org. Network v. ICE*, the district court stayed its ruling pending appeal in part because, given that the court of appeals had granted a motion to expedite the appeal, the harm to appellees flowing from a stay pending appeal was "mitigated." 827 F. Supp. 2d 242, 261 (S.D.N.Y. 2011). It would make no sense to deny a stay pending appeal because the appellant might *prevail* on appeal.

---

[3] Permitting discovery regarding the UST's motives for his actions would also contravene a long line of cases holding that the motivations of government decisionmakers are irrelevant, and discovery of them is heavily disfavored. *See, e.g.*, *Lederman v. N.Y. City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013). Such discovery is both legally irrelevant and burdensome on agencies and therefore improper. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977) (emphasizing that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government"); *United States v. Morgan*, 313 U.S. 409, 422 (1941) (it is "not the function of [a] court to probe the mental processes" of agency decisionmakers"). Consistent with these cases, a bankruptcy court recently granted the UST a protective order against a Rule 30(b)(6) deposition notice and held that "UST's motivation to seek this relief . . . is not at issue." *See, e.g.*, *In re Hogan*, 625 B.R. 134, 139 (Bankr. D.S.C. 2020).

*Second*, compounding the irrelevance, the proposed deposition topics distort the role of the UST. The UST has no role in advocating for the claims of federal agencies and has not done so in this case. Specifically, the UST was not a party to the DOJ Settlement and had no role in negotiating or advocating for approval of the settlement. Like any other component of the federal government, the UST is entitled to a presumption that his official duties have been properly discharged. *See, e.g., United States v. Chem. Found., Inc.*, 272 U.S. 1, 15 (1926). Baseless speculation to the contrary cannot form the factual basis for a discovery request.

Accordingly, a deposition of the UST on these topics is irrelevant, improperly calls for legal analysis by attorneys of the UST and should be quashed.

**Topic 6: Communications with victims regarding the stay motion.** UST has the burden of proof in his stay motion. Any evidence UST relies on in support of his motion either is in the factual record in this case or is subject to judicial notice. If the evidence adduced is sufficient to meet UST's burden of proof, then the stay should be granted. But it is improper to seek information about *how* UST prepared his motion papers, as this would reveal the UST's strategy without shedding light on any of the facts relevant to the stay factors. It is therefore both irrelevant and privileged. And even if those objections were overcome, it would still be wholly disproportionate to the needs of the case, given the many appropriate means by which the PI Group can obtain information on the specific views of, and injuries to, individual PI claimants—for example, by communicating with its own clients.

We thank the Court for its consideration of this matter.

Respectfully submitted,

WILLIAM K. HARRINGTON
United States Trustee for Region 2

By: /s/ *Linda A. Riffkin*
    Linda A. Riffkin
    Assistant United States Trustee

| | |
|---|---|
| RAMONA D. ELLIOTT | |
| Deputy Director/General Counsel | WILLIAM K. HARRINGTON |
| P. MATTHEW SUTKO | United States Trustee, Region 2 |
| Associate General Counsel | LINDA A. RIFFKIN |
| BETH A. LEVENE | Assistant United States Trustee |
| SUMI K. SAKATA | PAUL K. SCHWARTZBERG |
| WENDY COX | BENJAMIN J. HIGGINS |
| Trial Attorneys | Trial Attorneys |
| | |
| Department of Justice | Department of Justice |
| Executive Office for United States Trustees | Office of the United States Trustee |
| 441 G Street, N.W., Suite 6150 | 201 Varick Street, Room 1006 |
| Washington, DC  20530 | New York, NY  10014 |
| | (212) 510-0500 |