## Exhibit C

**Engagement Letter Addendum**

# CORNERSTONE RESEARCH

Two Embarcadero Center, 20th Floor
San Francisco, CA  94111
Tel 415.229.8100
Fax 415.229.8199
www.cornerstone.com

October 1, 2021

Debbie Feinstein, Esq.
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743

Re:    *In re: Purdue Pharma L.P., et al.*, Case No 19-23649 (RDD)

Dear Debbie:

On January 14, 2020, Cornerstone Research, Inc. ("Cornerstone Research") entered into an engagement letter agreement ("Agreement") with Davis Polk & Wardwell LLP ("Davis Polk") in connection with the above-referenced matter (the "Matter").  Davis Polk retained Cornerstone Research on behalf of Davis Polk's client, Purdue Pharma L.P. ("Purdue").  A copy of the Agreement is attached as Exhibit A hereto.

Purdue is represented by Arnold & Porter Kaye Scholer LLP ("Arnold & Porter") in connection with antitrust matters with respect to an opioid product (the "Antitrust Matter").  Purdue has instructed Arnold & Porter to retain Cornerstone Research as a consultant in connection with the Antitrust Matter on behalf of Purdue.

By this letter addendum to the Agreement ("Addendum"), Cornerstone Research, Arnold & Porter, and Purdue agree that the Antitrust Matter is added to the Agreement, and that, with respect to the Antitrust Matter, Arnold & Porter will have all of the same rights and obligations assigned to Davis Polk in the Agreement.  In accordance with the Agreement, Purdue, and not Arnold & Porter or Davis Polk, will be responsible for the payment of Cornerstone Research's fees and expenses in connection with the Antitrust Matter.

Communications concerning the Antitrust Matter, including notifications required by the Agreement concerning the Antitrust Matter, will be sent to you at Arnold & Porter at the following address:

> Debbie Feinstein, Esq.
> Arnold & Porter Kaye Scholer LLP
> 601 Massachusetts Ave, NW
> Washington, DC 20001-3743
> Phone: (202) 942-5000
> Debbie.Feinstein@arnoldporter.com

Other than the Antitrust Matter and Arnold & Porter being added to the Agreement as set forth herein, all other terms in the Agreement remain the same.

Arnold & Porter is executing this Addendum on behalf of itself and Purdue.  Arnold & Porter represents and warrants that Purdue is aware of the terms of this Addendum and of Arnold & Porter's retention of Cornerstone Research.  By executing below, the parties represent and warrant that they have authority to enter into and to sign this Addendum on behalf of the parties for which they are signing.

Boston
Chicago
London
Los Angeles
New York
San Francisco
Silicon Valley
Washington DC

If this Addendum meets with your approval, please indicate your acceptance by signing below and emailing this document back to me.  If you have any questions, I would be pleased to discuss them with you.

Regards,

Celeste C. Saravia
Vice President

CCS/top

Enclosure

**Arnold & Porter Kaye Scholer LLP, on
behalf of itself and Purdue Pharma L.P.**

By: _____

Print Name:___Debbie Feinstein_____

Title:___Partner_____

Date:__10/04/2021_____

# Exhibit A

CORNERSTONE RESEARCH

699 Boylston Street
Boston, MA 02116
Tel 617.927.3000
Fax 617.927.3100
www.cornerstone.com

January 14, 2020

Frances E. Bivens, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

> **Re:** ***In re: Purdue Pharma L.P., et al.*, Case No 19-23649 (RDD)**

Dear Frances:

This engagement letter agreement ("Agreement") confirms that Davis Polk & Wardwell LLP ("Davis Polk") has retained Cornerstone Research as a consultant in connection with the above-referenced matter ("Matter") on behalf of Davis Polk's client, Purdue Pharma L.P. ("Purdue"). Purdue will be responsible for the payment of Cornerstone Research's fees and expenses. This Agreement outlines the terms and conditions of the engagement.

Davis Polk and Purdue understand that, at this time, Cornerstone Research has reached no opinions in this Matter, and cannot represent or guarantee any opinion in advance. Any opinions that we develop during the course of our work will reflect our independent, professional judgment.

## Terms and Conditions of Engagement

1. **Scope of Work** – The scope of work covered by this Agreement will include quantitative analysis regarding the valuation of claims brought against Purdue by claimants including, but not limited to, hospitals, insurers and other third party payors, ratepayers, personal injury claimants, NAS claimants, governmental claimants, and Native American tribes and other matters as may be determined by Davis Polk and Cornerstone Research, and, if applicable, any expert being supported by Cornerstone Research.

   These consulting services may include, but are not limited to, supporting external and/or internal experts, and providing advice, expert testimony, expert reports, analyses, opinions, and/or conclusions, and any other consulting services Davis Polk may request Cornerstone Research provide in conjunction with this Matter, without need for a separate or additional engagement letter.

   So that Cornerstone Research can provide complete services to Davis Polk and/or Purdue, communications between Davis Polk and/or Purdue and any expert being supported by Cornerstone Research will always include Cornerstone Research, and Davis Polk will promptly advise Cornerstone Research of any rulings in the Matter concerning Cornerstone Research and/or any expert being supported by Cornerstone Research.

2. **Support of External Experts** – Cornerstone Research is frequently asked to support external experts in connection with the matters on which we are engaged as consultants. External experts are typically retained, and sometimes bill, separately from Cornerstone Research. External experts are not Cornerstone Research

Boston
Chicago
London
Los Angeles
New York
San Francisco
Silicon Valley
Washington DC

employees, set their own hourly rates, and are responsible for determining their own estimates and for the actual fees and expenses they incur. Some external experts receive compensation from Cornerstone Research based on its collected staff billings on matters where the external expert is supported by Cornerstone Research. This compensation is wholly unrelated to, and is in no way contingent on, the opinions offered by the expert or on the outcome of any case on which the expert works. The fees Cornerstone Research charges a client on an engagement do not depend on whether an expert retained on the case receives compensation from Cornerstone Research.

3.  **Fees and Expenses; Payment** –

A.  Cornerstone Research will submit itemized and detailed monthly billing statements, and will request payment of fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules for the United States Bankruptcy Court for the Southern District of New York ("**Local Rules**") and any relevant administrative orders. Payment of amounts due under such billing statements will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow. Cornerstone Research acknowledges that payment of fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of us and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing initial and final fee applications.

B.  Cornerstone Research will bill for its services in accordance with its current billing rate schedule. Cornerstone Research updates its standard billing rates once a year in January. An individual's rate may increase during the year due to promotion or a change in seniority.

C.  As a professional courtesy for some external experts whom Cornerstone Research supports, Cornerstone Research may append the expert's invoices to Cornerstone Research's own invoices. In these cases, the expert's invoiced amount will appear as an expense item on Cornerstone Research's invoices, and the Payment terms in this Agreement shall apply equally to the expert's invoices.

D.  The full amount due shall be payable on the terms provided herein regardless of the nature of Cornerstone Research's findings, the outcome of this proceeding, and regardless of the availability of any insurance for such payments, or success or failure in obtaining reimbursement for such payments from any insurance. Cornerstone Research prepares its bills in accordance with this Agreement and does not anticipate discounting its bills at a later date.

4.  **Estimate** – Any estimate that Cornerstone Research may provide of anticipated fees for services is Cornerstone Research's best estimate based on the information available at the time. Cornerstone Research will endeavor to work within such guidelines. Davis Polk and Purdue recognize that factors may arise that will change the scope of Cornerstone Research's work. As a result, the original estimate may no longer apply. Under no circumstances shall an estimate be deemed a maximum fee or fixed price. Estimates do not include external expert fees unless explicitly stated.

5.    **Termination** – This engagement may be terminated at any time by either party by giving written notice to the other party at least 7 days before the effective date of termination. At Cornerstone Research's sole discretion, and without liability to Purdue and Davis Polk, Cornerstone Research may suspend work on this engagement, in whole or in part, if any invoice or any portion of any invoice is not paid within 60 days of the date on the invoice. Purdue and Davis Polk understand that this means, if the account is delinquent, Cornerstone Research may cease all work and, as a result, work in progress (including making people available for deposition and trial and completing written reports) will be halted and may never be completed. Cornerstone Research's decision to continue working despite a delinquency shall not constitute a waiver of its right to suspend work, in whole or in part, at any time if the delinquency continues or recurs in the future. Cornerstone Research's decision to continue work irrespective of any delinquency shall also not be deemed as waiver of any breach or of its rights under this Agreement.

Cornerstone Research may also terminate its work if it believes that Davis Polk or Purdue is requesting that it take actions or positions that it believes to be improper, or is not reasonably cooperating with Cornerstone Research, including failure to provide requested information.

Upon termination, Purdue will be responsible for payment of invoices for fees and expenses incurred through the date of termination.

6.    **Conflict Check** – Cornerstone Research has undertaken a reasonable review of its records to determine Cornerstone Research's direct professional relationships with persons or entities identified by Davis Polk as parties to the Matter when the conflict check is performed and concluded that no conflict exists that would, in Cornerstone Research's opinion, prevent it from accepting and performing this engagement.

It is possible that some of Cornerstone Research's past, present, or future clients may have disputes with, and others matters relating to, Purdue prior to, during the course of, and subsequent to this engagement, that would not, in Cornerstone Research's opinion, prevent it from accepting and performing this engagement. Davis Polk and Purdue agree that, except as otherwise provided herein, as a condition of this engagement, Purdue may not use Cornerstone Research's engagement in this Matter as a basis to seek to disqualify Cornerstone Research from those past or present matters, nor to prevent Cornerstone Research from being engaged in future matters that are adverse to Purdue, or by parties whose interests may be adverse to, or inconsistent with, Purdue's interests. Cornerstone Research will not be required to advise Davis Polk or Purdue of any such engagements. Consistent with its internal practices and this Agreement, Cornerstone Research will protect the confidentiality of information provided by Davis Polk and Purdue.

7.    **Document Disposition** – Davis Polk or Purdue agree to instruct Cornerstone Research by or at the close of this engagement regarding the appropriate disposition of documents that were produced by the parties to the litigation and are in Cornerstone Research's possession. Pursuant to such instructions, Cornerstone Research will store, discard, or return the documents. If no instructions are provided, these documents will be retained pursuant to Cornerstone Research's Records Retention Policy.

8.    **Confidentiality** – It is Cornerstone Research's policy to treat all documents and information received from Purdue or Davis Polk during an engagement as confidential

("Confidential Client Information").  Cornerstone Research agrees to take reasonable steps to protect the confidentiality of Confidential Client Information.  This obligation will not cover documents and information that (a) Cornerstone Research has developed independently without the use of Confidential Client Information; (b) are or become part of the public domain (other than as a result of a breach by Cornerstone Research of its obligation under this paragraph); (c) are already known to Cornerstone Research at the time it receives them; (d) are given to Cornerstone Research by a third party not known to have a confidentiality agreement with Purdue or Davis Polk; or (e) are legally required to be disclosed.  Cornerstone Research will make reasonable efforts to inform Purdue or Davis Polk promptly of any subpoena or order to produce unless it is legally prohibited from doing so, and Cornerstone Research will not interfere with legal remedies Purdue or Davis Polk may pursue to prevent or limit disclosure.  If Cornerstone Research is required to respond to a subpoena or other order arising out of or relating to the Matter or this Agreement, including by preparing responses to requests for documents, producing documents, or providing testimony, Purdue will reimburse Cornerstone Research for all associated costs, including, without limitation, reasonable attorney's fees, fees for Cornerstone Research personnel at their standard hourly rates, and Cornerstone Research's in-house administrative expenses.

9.  **Limitation of Liability** – Purdue and Davis Polk agree that they shall not hold Cornerstone Research liable or responsible for any claims, liabilities, damages or expenses arising out of, or relating to, the Matter or this Agreement, except to the extent that any of the foregoing results solely from the negligence or bad faith conduct of Cornerstone Research.  Cornerstone Research's liability to Davis Polk or Purdue, whether in tort, contract, or otherwise, shall not exceed the amounts actually paid by Purdue pursuant to this Agreement.  In no event will the parties be liable to each other for consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense relating to this engagement.

10.  **Indemnification** – To the fullest extent permitted by law, Purdue agrees to indemnify, defend, and hold harmless Cornerstone Research and its directors, officers, employees, and agents (collectively, the "Indemnitees" and individually an "Indemnitee") from any losses, liabilities, claims, demands, costs, expenses, or damages (including but not limited to reasonable legal fees and expenses, and disbursements) of whatsoever nature, suffered or incurred by Indemnitee(s) and arising as a result of any actual or threatened claim, proceeding, civil, criminal, or administrative action, inquiry, suit, or legal action, of any kind, instituted against Indemnitee(s) arising out of, or relating to, the Matter or this Agreement.  The foregoing shall not apply to losses, liabilities, claims, demands, costs, expenses, or damages based solely on the gross negligence or willful misconduct of Indemnitee(s).

11.  **Dispute Resolution** – Any controversy, dispute, or claim arising out of, in connection with, or relating to the interpretation, performance or breach of this Agreement, including any claim based on contract, tort or statute, will be resolved at the request of any party to this Agreement by confidential, final and binding arbitration, administered by and in accordance with the then existing Rules of Practice and Procedure of Judicial Arbitration & Mediation Services, Inc. (JAMS) and judgment upon any award rendered by the

arbitrator(s) may be entered by any State or Federal Court having jurisdiction thereof. Any such arbitration shall take place exclusively in Boston, Massachusetts.

12. **Governing Law** – This Agreement shall be construed in accordance with the domestic laws of the Commonwealth of Massachusetts, without regard to that State's conflict of law principles.

13. **Survival** – All provisions of this Agreement shall survive the expiration or termination of the Matter and/or this Agreement.

14. **Entire Agreement** – This Agreement, together with any exhibits attached hereto, constitutes the entire agreement between the parties with respect to the Matter.  If Purdue and/or Davis Polk have provided Cornerstone Research with billing guidelines, and/or other guidelines that specifically apply to expert services firms, any such guidelines must be agreed to by Cornerstone Research and appended to this Agreement.  If any such guidelines conflict with this Agreement in any way, this Agreement controls. Cornerstone Research will not be bound by any guidelines provided to it after the parties have executed this Agreement unless its consent has been expressly given.

15. **Authority** – If Davis Polk is executing this Agreement on behalf of Purdue, Davis Polk represents and warrants that Purdue is aware of the terms of this Agreement and of Davis Polk's retention of Cornerstone Research.  By executing below, the parties represent and warrant that they have authority to enter into and to sign this Agreement on behalf of the parties for which they are signing.  This Agreement may be signed in counterparts, each one of which is considered an original, but all of which constitutes one and the same instrument.

16. **Deemed Acceptance** – If either Davis Polk or Purdue should request that Cornerstone Research commence work or otherwise provide assistance before executing this Agreement, that request shall be deemed acceptance of and agreement to each and all of the terms contained herein, irrespective of when, if ever, this Agreement is actually executed.

[Remainder of page left intentionally blank]

If this Agreement meets with your approval, please indicate your acceptance by signing below and mailing this document back to me.  If you have any questions, I would be pleased to discuss them with you.

Regards,

Sally D. Woodhouse
Vice President

SDW/top

Enclosure

| **Purdue Pharma L.P.** | **Davis Polk & Wardwell LLP** |
|---|---|
| By:_____ | By:_____ |
| Print Name:_____ | Print Name:_____ |
| Title:_____ | Title:_____ |

If this Agreement meets with your approval, please indicate your acceptance by signing below and mailing this document back to me.  If you have any questions, I would be pleased to discuss them with you.

Regards,


Sally D. Woodhouse
Vice President
SDW/top
Enclosure


**Purdue**

By: _____

Print Name: _Richard W. Silbert_

Title: _V.P., Chief Legal Strategist_

**Davis Polk & Wardwell**

By: _____

Print Name: _____

Title: _____

If this Agreement meets with your approval, please indicate your acceptance by signing below and mailing this document back to me.  If you have any questions, I would be pleased to discuss them with you.

Regards,


Sally D. Woodhouse
Vice President

SDW/top

Enclosure


| **Purdue** | | **Davis Polk & Wardwell** |
|---|---|---|
| By:_____ | | By:_/s/ Frances E. Bivens_____ |
| Print Name:_____ | | Print Name: Frances E. Bivens_____ |
| Title:_____ | | Title: Partner_____ |