# Exhibit B

**Fourth Supplemental Powell Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 |
| Debtors.[1] | (Jointly Administered) |

**FOURTH SUPPLEMENTAL DECLARATION OF THOMAS O. POWELL IN SUPPORT OF APPLICATION OF DEBTORS FOR AUTHORITY TO SUPPLEMENT RETENTION AND EMPLOYMENT OF CORNERSTONE RESEARCH FOR ANTITRUST CONSULTING SERVICES EFFECTIVE OCTOBER 1, 2021**

I, Thomas O. Powell, hereby declare that the following statements are true and correct to the best of my knowledge after due inquiry as described herein:

1. I am the Associate General Counsel of the consulting firm of Cornerstone Research, Inc. ("**Cornerstone**"), which maintains offices at 699 Boylston Street, Boston, MA, 02116. I am an attorney admitted to practice law in the State of California. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. This declaration (the "**Declaration**") is made in support of the *Application of Debtors for Authority to Supplement Retention and Employment of Cornerstone Research for Antitrust Consulting Services Effective October 1, 2021* (the "**Supplemental Application**").[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the Supplemental Application.

This Declaration is also submitted as the statement required pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

### Cornerstone's Initial Retention Application

3. On May 13, 2020, the Debtors filed the Initial Retention Application, which sought approval of Cornerstone's retention and employment in these bankruptcy cases to provide the Initial Services, and to otherwise approve the terms and conditions of the Engagement Letter. The Initial Retention Order was entered by the Court on June 11, 2020.

4. As set forth in the Initial Retention Application and the Engagement Letter, the Debtors retained Cornerstone to provide Initial Services, including: quantitative analysis regarding the valuation of claims brought against the Debtors by claimants including, but not limited to, hospitals, insurers and other third party payors, ratepayers, personal injury claimants, NAS claimants, governmental claimants, and Native American tribes.

### Proposed Expanded Scope of Cornerstone's Plan Related Services

5. By the Supplemental Application, the Debtors seek to expand the scope of Cornerstone's employment and retention to allow Cornerstone to provide the Supplemental Services set forth in the Engagement Letter Addendum: quantitative and qualitative analysis related to the relevant market in which the Antitrust Matter should be analyzed and whether Purdue has market power in that relevant market, and quantitative and qualitative analysis of the competitive effects, if any, from the conduct at issue in the Antitrust Matter.

6. A true and correct copy of the Engagement Letter Addendum is attached to the Supplemental Application as **Exhibit C**.

7. If the Debtors request Cornerstone to perform additional services in the future not contemplated by the Engagement Letter Addendum, the Debtors and Cornerstone will mutually

agree in advance upon such services and fees for those services in writing in a new engagement letter, which will be subject to the Court's review upon proper application.

8.  I have informed the Debtors' management that, subject to Court approval of the Supplemental Application, Cornerstone is willing to perform the Supplemental Services.

### Cornerstone's Qualifications and the Need for Cornerstone's Services

9.  I understand that the Debtors are submitting the Supplemental Application because of the need to retain qualified antitrust consultants to assist them with certain critical tasks associated with the Antitrust Matter.

10. Cornerstone professionals have extensive experience in delivering services of this type. Cornerstone professionals have extensive experience analyzing issues related to market definition, market power and competitive effects across a wide range of industries, including pharmaceuticals. Cornerstone professionals have conducted extensive research on pharmaceutical markets and have a deep understanding of the institutions and regulations that govern pharmaceutical competition.

11. Due to Cornerstone's experience and knowledge in the areas for which the Supplemental Services will be provided, as well as their long-standing relationship with the Debtors, I believe that Cornerstone has the resources and experience necessary to perform the Supplemental Services.

12. As such, I believe that Cornerstone is well qualified and uniquely able to represent the Debtors with respect to the Supplemental Services pursuant to section 327(a) of the Bankruptcy Code.

### Cornerstone's Disinterestedness

13. In connection with the Initial Retention Application, I, or someone working under my supervision, reviewed any client connections to the Debtors' chapter 11 cases to determine

3

whether Cornerstone has an adverse interest to the Debtors' estates. In particular, Cornerstone ran each of the categories listed on Schedule 1 to the Initial Powell Declaration through its firm-wide conflicts system. Cornerstone does not represent, or have any other connection with, any of the parties within the categories listed on Schedule 1, subject to the disclosures set forth on Schedule 2 to the Initial Powell Declaration, which is incorporated herein by reference.

14. I believe that none of the connections disclosed on Schedule 2 to the Initial Powell Declaration have or will affect Cornerstone's representation of the Debtors in matters requiring the Cornerstone Services. None of Cornerstone's representations of these parties comprises a material component of Cornerstone's practice, nor does Cornerstone currently represent any such parties in any matter adverse to the Debtors.

15. In addition to the disclosures on Schedule 2 to the Initial Declaration, as a consulting firm employing approximately 530 consultants with a large consulting practice, Cornerstone has previously represented, currently represents, and may in the future represent entities that are claimants or interest holders of the Debtors in matters unrelated to the Debtors' chapter 11 cases. Cornerstone has not, and will not, represent any party besides the Debtors in these chapter 11 cases.

16. To the best of my knowledge, information and belief, neither I, nor any other professional of Cornerstone is related to the bankruptcy judge assigned to the Debtors' chapter 11 cases, any bankruptcy judge for the Southern District of New York, or to any employee of the Office of the United States Trustee for the Southern District of New York.

17. Cornerstone is not aware of any outstanding amounts owed for professional services rendered to the Debtors prior to the Petition Date. Additionally, Cornerstone is not aware of any amounts paid by the Debtors to Cornerstone in the 90 days prior to the Petition Date. As

4

part of the Initial Retention Application, Cornerstone agreed to waive any and all currently outstanding amounts owed for professional services rendered to the Debtors prior to the Petition Date.

18.     Based upon the information available to me, Cornerstone neither represents nor holds an interest adverse to the interests of the Debtors or their estates with respect to the matters on which Cornerstone is to be employed. To the extent Cornerstone discovers any connection with any interested party or enters into any new relationship with any interested party, Cornerstone will promptly supplement its disclosures to the Court.

### Cornerstone's Compensation

19.     The hourly billing rates for Cornerstone professionals expected to spend significant time on the engagement are set forth below.[3]

| Name | Title | 2021 Rate |
|---|---|---|
| Celeste Saravia | Vice President | $850 |
| Zoya Marriott | Vice President | $845 |

20.     In addition to the hourly billing rates set forth herein, Cornerstone customarily charges its clients for all reimbursable expenses incurred, including photocopying charges, messengers, courier mail, overtime, overtime meals, late night transportation, travel, lodging, meal charges for business meetings, postage, printing, transcripts, filing fees, computer research, and similar items.

21.     As set forth in the Initial Powell Declaration, the Debtors understand that Cornerstone will apply to the Court for allowance of compensation and reimbursement of expenses for all professional services performed and expenses incurred after the Petition Date in accordance with General Order M-412 (*Order Establishing Procedures for Monthly Compensation and*

---

[3] Cornerstone's hourly rates are subject to change from time to time in the regular course of Cornerstone's business.

5

*Reimbursement of Expenses of Professionals*, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (collectively, the "**Fee Guidelines**"), the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

22. Neither Cornerstone nor any partner or associate thereof, has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Debtors' chapter 11 cases, other than as permitted by the Bankruptcy Code. Cornerstone has agreed not to share compensation received in connection with this case with any other person.

23. Cornerstone's rates and policies are consistent with Cornerstone's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.

24. I also believe that Cornerstone's rates and policies are reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Cornerstone's substantial experience with respect to the Supplemental Services, and (d) the nature and scope of work to be performed by Cornerstone in these chapter 11 cases.

### No Duplication of Services

25. I understand that the Debtors have retained and may retain additional professionals during the term of their engagement and Cornerstone agrees to work cooperatively with such professionals to avoid any duplication of services.

6

**Additional Fee Guidelines Disclosures**

26. In addition, in accordance and in response to the request for additional information set forth in paragraph D.1 of the Fee Guidelines:

   a. Cornerstone did not agree to any variations from, or alternatives to, Cornerstone's customary billing arrangements for this engagement

   b. None of Cornerstone's professionals included in this engagement varied or will vary their rate based on the geographic location of these chapter 11 bankruptcy cases.

   c. Cornerstone will provide such information as the Debtors request or require for them to prepare and submit budget and staffing plans required under the Fee Guidelines.

   d. Cornerstone will use its best efforts to avoid duplicating services rendered by the Debtors' other retained professionals.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 11th day of October, 2021.

/s/ *Thomas O. Powell*
Thomas O. Powell
Associate General Counsel
Cornerstone Research