Kevin C. Maclay, Esq. (admitted *pro hac vice*)
Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*)
James P. Wehner, Esq.
Shamara R. James, Esq.
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW, Suite 1100
Washington, DC 20005

*Counsel for the Multi-State Governmental Entities Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**OPPOSITION OF THE MULTI-STATE GOVERNMENTAL ENTITIES GROUP
TO THE MOTIONS TO CERTIFY DIRECT APPEALS TO THE SECOND CIRCUIT**

The Multi-State Governmental Entities Group ("**MSGE Group**"), by and through its undersigned counsel, hereby opposes the motions of the United States Trustee,[2] nine appealing

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] *United States Trustee's Memorandum of Law in Support of Motion to Certify Direct Appeal to the Court of Appeals Under 28 U.S.C. § 158(d)*, Oct. 1, 2021 (ECF No. 3868) ("**UST Motion**").

DOC# 3613072

States and the District of Columbia,[3] and certain Canadian municipality and First Nation creditors[4] (collectively, "**Movants**") for certification of their appeals directly to the United States Court of Appeals for the Second Circuit under 28 U.S.C. § 158(d)(2)(A) ("**Certification Motions**"). For the reasons explained below, the Certification Motions should be denied.

## PRELIMINARY STATEMENT

1.  Movants are asking this Court to certify their appeals directly to the Second Circuit from this Court's order confirming the *Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated September 2, 2021 (ECF No. 3726) ("**Plan**").[5] The U.S. Trustee also seeks direct certification of its appeal from this Court's order authorizing the initial funding of the trusts established under the Plan.[6] To obtain certification, Movants must establish that one of the four following grounds is satisfied:

    (1)  the judgment or order appealed from "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States";

    (2)  the judgment or order appealed from "involves a question of law" that "involves a matter of public importance";

    (3)  the judgment or order appealed from "involves a question of law requiring resolution of conflicting decisions"; or

---

[3] *The Appealing States' Motion for Certification Pursuant to 28 U.S.C. § 158(d)(2)(A)*, Oct. 1, 2021 (ECF No. 3871) ("**App. States Motion**"); *California's Request for Certification of Direct Appeal to the Court of Appeals and Joinder to the Appealing States' Motion for Certification Under 28 U.S.C. § 158(d)(2)(A)*, Oct. 1, 2021 (ECF No. 3874) ("**Cal. Motion**"). The District of Columbia and the nine States that have filed Certification Motions are hereinafter referred to as the "**Movant States**".

[4] *See Joinder of Certain Canadian Municipality and First Nations Creditors and Appellants, In Support of the Motions by the Office of the United States Trustee and the Appealing States for Certification of a Consolidated and Expedited Direct Appeal to the Court of Appeals for the Second Circuit*, Oct. 7, 2021 (ECF No. 3913).

[5] *See* Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors, Sept. 17, 2021 (ECF No. 3787) ("**Confirmation Order**").

[6] *See* Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and TopCo, (II) Directing Prime Clerk LLC to Release Certain Protected Information, and (III) Granting Other Related Relief, Sept. 15, 2021 (ECF No. 3773).

- 2 -

  (4) a direct appeal "may materially advance the progress of the case or proceeding in which the appeal is taken[.]"

28 U.S.C. § 158(d)(2)(A)(i)-(iii).

  2. For the reasons explained below, Movants have not satisfied any of these four grounds. As a threshold matter, when it comes to third-party releases, the central focus of Movants' appeals, there already is a "controlling decision" in the form of the Second Circuit's *Metromedia* ruling. Moreover, Movants have not identified any pure "question of law" suitable for certification. Instead, the questions they identify are mixed questions of fact and law that cannot be certified for direct appeal under § 158(d).

  3. Movants have also failed to pinpoint a "question of law" of such public importance that resolution of the question would advance the cause of jurisprudence to an extraordinary degree. Although the Debtors' chapter 11 cases are significant and high-profile, third-party releases in chapter 11 plans are well-known in bankruptcy jurisprudence and have been addressed in numerous cases, and therefore a Second Circuit decision addressing them will not advance the cause of jurisprudence to a degree that is not usually the case.

  4. Furthermore, Movants have failed to identify a "question of law" that is the subject of conflicting decisions; the *Aegean Marine* and *SunEdison* cases that are cited were decided on their own particular facts and do not clash with this Court's confirmation decision. Finally, a direct appeal to the Second Circuit will not "materially advance the progress" of *this case*, which has essentially concluded with confirmation of the Plan. Movants fail to substantiate their bare assertions that the Second Circuit would expedite a direct appeal (or would even grant a direct appeal to begin with), and the District Court has already signaled that it will put Movants' appeals on a fast track. For all the reasons set forth herein, the Certification Motions should be denied.

- 3 -

# ARGUMENT

## I. Movants Fail to Identify Pure Questions of Law as to Which There Are No Controlling Decisions

5.  Certification is warranted if the movant shows that the judgment, order, or decree appealed from "involves a *question of law* as to which there is no *controlling decision* of the court of appeals for the circuit or of the Supreme Court of the United States[.]" 28 U.S.C. § 158(d)(2)(A)(i) (emphasis added). As a threshold matter, as to Movants' central focus on appeal—*i.e.*, the third-party releases contained in the Plan—controlling Second Circuit decisions apply. In *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992), the Second Circuit stated that "a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtors' reorganization plan." *Id*. at 293. Later, in *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005), the Second Circuit acknowledged that "[c]ourts have approved nondebtor releases when:  the estate received substantial consideration, the enjoined claims were 'channeled' to a settlement fund rather than extinguished, the enjoined claims would indirectly impact the debtor's reorganization 'by way of indemnity or contribution,' and the plan otherwise provided for the full payment of the enjoined claims." *Id*. at 142 (citations omitted).

6.  It does not matter whether the Second Circuit's statement in *Metromedia* can be characterized as *dictum*, because the decisional law, including that of the Second Circuit, views it as controlling precedent when it comes to third-party releases. In *In re Bernard L. Madoff Investment Securities LLC*, 740 F.3d 81 (2d Cir. 2014), the Second Circuit stated that, in *Metromedia*, "we *held* that a bankruptcy court could permit the nonconsensual release of creditors' claims against third parties upon a finding of 'truly unusual circumstances' that 'render the release terms important to [the] success of the [reorganization plan].'" *Id*. at 93 n.12 (emphasis added).

The view of the lower courts in the Second Circuit is the same.  *See, e.g., In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 728 (Bankr. S.D.N.Y. 2019) (referring to "the approach that *Metromedia* **commands** me to take" (emphasis added)); *In re SunEdison, Inc.*, 576 B.R. 453, 457 (Bankr. S.D.N.Y. 2017) (finding that proposed release "did not satisfy the **requirements** of *Metromedia*" (emphasis added)); *In re Charter Commc'ns*, 419 B.R. 221, 257-58 (Bankr. S.D.N.Y. 2009) ("The Third Party Releases, under the circumstances presented, satisfy the **requirements** for such releases in the Second Circuit, and are accordingly approved." (emphasis added)).

7.     The U.S. Trustee asserts that certification is satisfied because neither the Second Circuit nor Supreme Court has ruled on whether "the Due Process Clause permits a bankruptcy court to non-consensually and permanently extinguish non-debtors' direct causes of action against other non-debtors without compensation or consent and without a hearing on their claims."[7]  This assertion lacks merit because the issue, as framed by the U.S. Trustee, is not a pure "question of law"; rather, it is a mixed question of law and fact that turns on the particular facts of this case, such as the extensive and far-reaching noticing program conducted by the Debtors.  As this Court noted in its confirmation ruling, "[t]he issue of what process is due requires a court to ask whether the notice was reasonably calculated *under the circumstances* to apprise interested parties of the pendency of the plan's proposed release and afford them an opportunity to present their objections."[8]  "[M]ixed questions" implicating "the particular circumstances of this case . . . are not pure legal questions warranting direct certification."  *In re Am. Home Mortgage Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (citing *Weber v. United States Trustee*, 484 F.3d 154, 158 (2d Cir.

---

[7]   UST Motion at 16.
[8]   Modified Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter 11 Plan at 114, Sept. 17, 2021 (ECF No. 3786) ("**Modified Bench Ruling**") (emphasis added).

2007)); *see also 15375 Memorial Corp.*, 2008 WL 2698678, at *1 (D. Del. July 3, 2008) (declining certification of appeal involving fact-intensive questions).

8. Even if the U.S. Trustee's due process issue were a pure question of law, there are controlling decisions that govern the question, namely, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016).[9] In addition, this Court cited, *inter alia*, the Second Circuit's decision in *MacArthur v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988), as the basis for its conclusion that notice of the proposed releases "was more than sufficient for due process purposes."[10]

9. Furthermore, the issue framed by the U.S. Trustee makes assertions that are neither reflective of, or compatible with, the facts of these chapter 11 cases and this Court's confirmation decision. For example, the U.S. Trustee asserts that the releases are extinguishing claims "without compensation," which ignores the fact that the releases were granted in exchange for, *inter alia*, settlement payments from the Sacklers totaling more than $4.3 billion. The U.S. Trustee also asserts that the releases are extinguishing "direct causes of action against . . . non-debtors."[11] This assertion ignores the fact that, in order to be released under section 10.7(b) of the Plan, "any conduct, omission or liability of *any Debtor* or *any Estate* [must be] the legal cause [of] or . . . otherwise a legally relevant factor" to the claim. Plan § 10.7(b) (emphasis added).[12] Thus, the third-party claims being released under section 10.7(b) are not entirely "direct" since they must have a connection with the Debtors or their estates. Issues asserting "facts that do not completely reflect a court's findings cannot form the basis for certification to the [court of appeals]." *In re*

---

[9]  Modified Bench Ruling at 114 (citing *Mullane* and *Motors Liquidation*).
[10] *Id*. at 115.
[11] UST Motion at 16.
[12] *Id*. at 131.

- 6 -

*Millennium Lab Holdings II, LLC*, 543 B.R. 703, 710 (Bankr. D. Del. 2016); *see also In re 22 Saulsbury, LLC*, No. 14-12381-MFW, 2015 WL 661396, at *3 (D. Del. Feb. 13, 2015) (denying certification where appellant's legal question was based on incorrect assessment of bankruptcy court's decision); *Am. Home Mortgage Inv. Corp.*, 408 B.R. at 43 (denying certification where "numerous issues" were "not directly linked to the Bankruptcy Court decision").

10. The U.S. Trustee asserts that another "open" issue is whether bankruptcy courts have constitutional authority to approve releases that "extinguish independent claims" against nondebtors and whether "such releases" fall within the power granted by the Constitution's Bankruptcy Clause. But the U.S. Supreme Court has already rendered a "controlling decision" to determine whether a bankruptcy court has constitutional authority to render a dispositive ruling. In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court provided a disjunctive test for determining the bankruptcy courts' constitutional authority to adjudicate claims: a bankruptcy court cannot enter a final order unless either the action at issue "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 499. The *Stern* case is the "controlling decision" for determining whether a bankruptcy court is proceeding within constitutional bounds. And the analysis requires applying the *Stern* test to the facts and circumstances of a case, which means that no question of law is presented. For both reasons, direct certification is not available here.

11. Moreover, the U.S. Trustee's framing of the issue as involving releases that "extinguish independent claims" mischaracterizes this Court's confirmation decision and the releases contained in section 10.7(b) of the Plan. As noted above, to be released under section 10.7(b), "any conduct, omission or liability of *any Debtor* or *any Estate* [must be] the legal cause [of] or . . . otherwise a legally relevant factor" to the claim, which means that the claims being

released are not wholly "independent" of the Debtors. Plan § 10.7(b) (emphasis added). Accordingly, this issue is not appropriate for certification.

12. The Movant States assert that there is no decision from the Supreme Court or the Second Circuit on whether a chapter 11 plan can release the States' "police power claims" or "police power actions."[13] But the Movant States do not point to any provision of the Bankruptcy Code or other legal principle that exempts so-called "police power" claims from a third-party release. Indeed, as this Court noted, "there is no [police power] bar or exception under the Bankruptcy Code."[14] Thus, to decide whether "police power" claims are incapable of being released, a reviewing court would have to move beyond the mere "police power" label and review the evidence in the record of the lawsuits filed by the States against the Sacklers or other nondebtors prepetition, the types of legal theories asserted in those lawsuits, and the evidence used to support those theories. The issue of "police power claims" is not a pure question of law, but rather is a mixed question of law and fact, because the "police power" label itself imports a host of factual predicates necessary to establish what "police power claims" precisely are and why they should be treated differently than any other unsecured claim being released. Because the Movant States have not identified a question of law that is not reliant on the facts of these cases, they have failed to show a basis for certification.

13. The Movant States highlight the "novelty of issues in these cases"[15] as a basis for certification but fail to explain precisely what those issues are and whether they are pure questions of law. Indeed, the Movant States have failed to provide a list of the legal questions to be certified

---

[13] App. States Motion at 3; Cal. Motion at 2.
[14] Modified Bench Ruling at 149.
[15] App. States Motion at 4.

- 8 -

on direct appeal, in violation of Bankruptcy Rule 8006(f)(2)(B). On that basis alone, their Certification Motions should be denied.

## II. Movants Fail to Identify a Legal Question of "Public Importance" That, if Resolved on Direct Appeal, Would Advance the Cause of Jurisprudence to an Extraordinary Degree

14. Movants stress that the Debtors' chapter 11 cases are large and high-profile and thus are matters of "public importance" that require certification to the Second Circuit.[16] In making these arguments, Movants misconstrue the "public importance" prong of § 158(d)(2)(A), which courts have interpreted narrowly. *See In re Nortel Networks Corp.*, No. 09-10138, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010) (stating that courts have "interpreted the 'public importance' prong . . . narrowly"). The "public importance" prong is satisfied when the appeal "involves a *legal question* the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Mark IV Indus., Inc. v. N.M. Env't Dep't*, 452 B.R. 385, 388–89 (S.D.N.Y. 2011) (emphasis added and footnote omitted); *accord Nortel Networks Corp.*, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010); *In re Am. Home Mortgage Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009); *In re General Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009). In other words, it is not enough for the bankruptcy case to have "public importance"; there must instead be a "question of law" of such public importance that its resolution "will advance the cause of jurisprudence to a degree that is not usually the case."

15. For example, the *General Motors* bankruptcy was a high-profile case of public import. As Judge Gerber noted, "many people would agree that GM's *well-being* is a matter of public importance; that's one of the reasons why the U.S. Treasury and EDC put billions of dollars at risk to keep GM alive." *General Motors Corp.*, 409 B.R. at 28. But that was not sufficient to

---

[16] UST Motion at 20-24; App. States Motion at 2; Cal. Motion at 2.

certify a direct appeal to the Second Circuit because "what the statute requires is that 'the judgment, order, or decree involves *a question of law*' that 'involves a matter of public importance.'" *Id*. (quoting 28 U.S.C. § 158(d)(2)(A)(i)). And, in Judge Gerber's view, the question of law to be appealed—whether "successor liability can be applied in section 363 sales"—was "a matter of statutory interpretation and common law analysis" that the Second Circuit previously addressed in the *Chrysler* case (*id*. at 28-29); as a result, it was "not a matter of public importance," and Judge Gerber denied certification.

16. As in *General Motors*, Movants fail to identify a *question of law* that is of such public importance that its resolution will advance the cause of jurisprudence to an extraordinary degree. Their appeals challenge the third-party releases contained in the Plan and Confirmation Order. But third-party releases have been well-known in bankruptcy law for years, if not decades, and have been granted in a number of chapter 11 cases. *See, e.g.*, *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992); *In re Stearns Holdings, LLC*, 607 B.R. 781, 790 (Bankr. S.D.N.Y. 2019); *In re Sabine Oil & Gas Corp.*, 555 B.R. 180 (Bankr. S.D.N.Y. 2016); *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 269 (Bankr. S.D.N.Y. 2014); *In re Crabtree & Evelyn, Ltd.*, No. 09-14267 (BRL), 2010 WL 3638369, at *7 (Bankr. S.D.N.Y. Jan. 14. 2010). As in *General Motors*, Movants try to make issues pertaining to the releases "matters of constitutional dimension." 409 B.R. at 28. But, like the successor-liability issue in *General Motors*, the issues and objections pertaining to the third-party releases are, at bottom, "a matter of statutory interpretation and common law analysis" involving, *inter alia*, application of §§ 105(a), 524(e), and 1123(b)(6). And the Second Circuit has previously addressed third-party releases in the *Metromedia* case. Accordingly, the "public importance" element of § 158(d)(2)(A) has not been satisfied.

### III. Movants Have Not Shown Any Pure "Question of Law" That Is the Subject of "Conflicting Decisions"

17. Certification is warranted if the movant shows that judgment, order, or decree appealed from "involves a *question of law* requiring resolution of *conflicting decisions*." 28 U.S.C. § 158(d)(2)(A)(ii) (emphasis added). California and the U.S. Trustee assert that there are conflicting decisions within the Southern District of New York over third-party releases and this conflict supplies a basis for certifying direct appeals. In particular, the U.S. Trustee argues that this Court's confirmation ruling parted ways with the *SunEdison* and *Aegean Marine* cases, which, according to the U.S. Trustee, "held that the bankruptcy court lacks subject matter or personal jurisdiction to enter the requested third-party release."[17] California also points to *Aegean Marine* as a decision allegedly in conflict with this Court's ruling on jurisdiction.[18] The assertions of California and the U.S. Trustee lack merit because the courts in *SunEdison* and *Aegean Marine* did not make sweeping pronouncements about bankruptcy courts not having jurisdiction to approve third-party releases in all cases. In *Aegean Marine*, the court addressed jurisdictional hurdles that were among the "issues" that "ought to illustrate just how extraordinary a thing it is for us to impose involuntary releases and why, as commanded by the Second Circuit in *Metromedia*, we should do so only in those extraordinary cases where a particular release is essential and integral to the reorganization itself." 599 B.R. at 726. The court in *Aegean Marine* ultimately declined to approve the proposed releases based on facts that were specific to that case. *See id*. at 727-28.[19] Similarly, in *SunEdison*, the court found that the debtors had "failed to sustain

---

[17] UST Motion at 25 (citing *In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717 (Bankr. S.D.N.Y. 2019) and *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017)).

[18] Cal. Motion at 2.

[19] Moreover, in its bench ruling, this Court noted that *Aegean Marine* decision acknowledges that a third-party release is justified where there is "a huge overlap between claims that [a debtor] is making against the parent . . . [and] the parent did not want to settle the claims made by [the debtor] unless the overlapping

- 11 -

their burden of proving that the Court has subject matter jurisdiction to approve the Release *in its current form*." 576 B.R. at 463 (emphasis added). In other words, jurisdiction was lacking based on the particular "form" of the release, not because bankruptcy courts lack jurisdiction to approve releases in every case.

18. The statement in *SunEdison* underscores the point made in *Millennium Lab Holdings* that a court's jurisdiction does not present a pure question of law. "Rather, it is an application of facts to well-settled law." *Millennium Lab Holdings*, 543 B.R. at 709. Additionally, it is not enough for Movants to merely point to "conflicting decisions"; to obtain certification, the "conflicting decisions" must be over a pure "question of law." *See* 28 U.S.C. § 158(d)(2)(A)(ii). For the reasons explained above, California and the U.S. Trustee have failed to show that jurisdiction presents a pure "question of law" and that the *Aegean Marine* and *SunEdison* cases, which were decided on their own facts, are actually in conflict with this Court's confirmation ruling.

19. The U.S. Trustee points to a *Texas Law Review* article that purports to note the "divergence of holdings within the Southern District of New York."[20] But the U.S. Trustee does not explain whether those holdings address pure questions of law. Moreover, merely pointing to divergent holdings is not sufficient to obtain certification. The Second Circuit has explained that the conflicting decisions must "have created confusion" or "uncertainty in the bankruptcy courts." *Weber*, 484 F.3d at 161. The U.S. Trustee has failed to explain whether or how any of these divergent holdings has "created confusion" and "uncertainty" on questions of law pertaining to

---

third-party claims were also barred." Modified Bench Ruling at 112 n.7 (quoting *Aegean Marine*, 599 B.R. at 727). *Aegean Marine* therefore does not stand for the blanket rejection of third-party releases.

[20] UST Motion at 25 (citing Adam J. Levitin, *Purdue's Poison Pill: The Breakdown of Chapter 11's Checks and Balances*, 100 Tex. L. Rev. (2021)).

- 12 -

third-party releases. In this respect, the U.S. Trustee has not met his burden as movant. *See In re Genter*, No. 19-cv-01951-E, 2020 WL 3129637, at *4 (N.D. Tex. June 12, 2020) (denying certification where appellants had not met their burden of demonstrating a ground for certification under 28 U.S.C. § 158(d)(2)(A)); *Faulkner v. Kornman*, 2012 WL 293230, at *4 (Bankr. S.D. Tex. Jan. 30, 2012) (finding "conclusory statement" insufficient to meet appellant's burden for certification). For the reasons noted above, the arguments for certifying direct appeals based on "conflicting decisions" are unavailing.

IV. **Direct Appeals to the Second Circuit Will Not Advance These Chapter 11 Cases, Which Have Essentially Concluded with Confirmation of the Plan**

20. Movants fail to demonstrate that direct appeals to the Second Circuit would "materially advance the progress of *the case* . . . in which the appeal is taken." 28 U.S.C § 158(d)(2)(A)(iii) (emphasis added). As a threshold matter, the Debtors' chapter 11 cases have essentially concluded with confirmation of the Plan, so there is no further "progress" here that requires advancement. *See Millennium Lab Holdings II, LLC*, 543 B.R. at 709. "This is not the case of an interlocutory appeal where a prompt ruling by the Court of Appeals will advance the ongoing litigation in the Bankruptcy Court." *In re Johns-Manville Corp.*, 449 B.R. 31, 34 (S.D.N.Y. 2011). If anything, Movants' appeals seek to *undo* the hard-won progress achieved in these chapter 11 cases—namely, confirmation of the Plan—and the motions for a stay pending appeal seek to prevent the Plan from becoming effective. That is not progress.

21. California asserts that the progress of these cases will be materially advanced because the Second Circuit will render a "prompt, determinative ruling."[21] The U.S. Trustee similarly argues that the Second Circuit "is more likely to render a decision expeditiously[.]"[22]

---

[21] Cal. Motion at 2.
[22] UST Motion at 26.

- 13 -

But California and the U.S. Trustee point to no evidence to substantiate these bold claims. Moreover, there is reason to believe that the District Court would hear and decide these appeals more quickly. First, the Second Circuit has recognized that "district courts tend to resolve bankruptcy appeals faster than the court of appeals[.]" *Weber*, 484 F.3d at 160. Second, the District Court in Movants' appeals has already signaled that it intends to move the appeals expeditiously. In a recent order, the District Court stated: "It occurs to me that we should be able to get this appeal briefed swiftly . . . . I see no reason why we cannot rely on the briefs [filed in the Bankruptcy Court] below for [the third-party release] issue or supplement them with short additional briefs that address relevant aspects of Judge Drain's decision."[23] "Doing so," said the District Court, "would tee up the issue in which everyone is interested in very short order."[24] Despite their bald assertions, Movants cannot find any similar statements emanating from the Second Circuit.

22. The Movant States assert that direct appeals to the Second Circuit would reduce the time that a stay pending appeal would be in effect.[25] But this argument assumes that the Second Circuit would rapidly dispose of the appeals, which, as noted above, is without foundation.

23. The U.S. Trustee argues that certification is required because the losing party in the District Court "is virtually certain" to appeal to the Second Circuit "given the important and contentious issues at stake."[26] The Movant States assert that they "might very well fold up their tents" if the Second Circuit were to rule against them, something they would not do if the District

---

[23] Order Scheduling Conference at 2, *In re Purdue Pharma Bankruptcy Appeals*, No. 21-cv-7532 (CM) (ECF No. 13), annexed hereto as **Exhibit 1**.
[24] *Id*.
[25] App. States Motion at 5.
[26] UST Motion at 27.

Court were to do so, which also signals the inevitability of a Second Circuit appeal.[27]  These arguments are unavailing.  The near certainty that an appeal will end up before the circuit court of appeals "is not a basis on which to certify the order."  *Millennium Lab Holdings II, LLC*, 543 B.R. at 716-17 (citations omitted); *see also In re Fisker Auto. Holdings, Inc.*, No. 14-CV-99 (GMS), 2014 WL 576370, at *4 n.3 (D. Del. Feb. 12, 2014) (rejecting "presumably inevitable path" of appeal to the circuit court of appeals as a basis for certification); *In re Am. Hous. Found.*, No. 09-20232-RLJ-11, 2013 WL 3808096, at *2 (Bankr. N.D. Tex. July 22, 2013) (stating that "threat" of certain appeal "can be raised on any appeal" and is not sufficient for certification).

24.    Finally, the U.S. Trustee contends that allowing its appeals to proceed to the Second Circuit will "be more efficient and enable faster appellate resolution," presumably because there would be only one level of appellate review rather than two.[28]  But that argument "can be made in every case where there is an appeal involving a final judgment of the Bankruptcy Court."  *Johns-Manville*, 449 B.R. at 34.  And, if the argument were enough to obtain certification, it "would eliminate appeals to the District Court, contrary to the statement by the Court of Appeals that the normal appellate process should proceed so that the Court of Appeals is provided with the views of the District Court to aid in the fair decision of the appeal."  *Id*. (citing *Weber*, 484 F.3d at 160).  Accordingly, the U.S. Trustee's argument should be rejected.

[*Remainder of page intentionally left blank.*]

---

[27]  App. States Motion at 5 (quoting *Weber*, 484 F.3d at 158).
[28]  UST Motion at 27.

## CONCLUSION

For all the reasons explained above, Movants have failed to demonstrate any basis for certification under 28 U.S.C. § 158(d)(2)(A). Accordingly, the Certification Motions should be denied.

Dated: October 13, 2021                    Respectfully submitted,

*/s/ James P. Wehner*
Kevin C. Maclay, Esq. (admitted *pro hac vice*)
Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*)
James P. Wehner, Esq.
Shamara R. James, Esq.
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Tel: (202) 862-5000
Fax: (202) 429-3301
kmaclay@capdale.com
jliesemer@capdale.com
tphillips@capdale.com
sjames@capdale.com

*Counsel for the Multi-State Governmental Entities Group*