DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DEBTORS' OMNIBUS OBJECTION TO MOTIONS FOR
CERTIFICATION OF A DIRECT APPEAL TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT PURSUANT TO 28 U.S.C. § 158(D)**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Table of Contents

PRELIMINARY STATEMENT ................................................................................. 2

ARGUMENT ......................................................................................................... 5

    I.   A Direct Appeal Is Not Appropriate Under 28 U.S.C. § 158(d)(2)(B)(i)........................ 5

        A.   There Are Controlling Decisions Regarding the Issues Raised on Appeal ................6

        B.   The Appeals Do Not Raise a Question of Law Involving a Matter of Public Importance ...................................................................................................18

        C.   The Appeals Do Not Raise A Question of Law Subject to Conflicting Decisions in the Second Circuit ...............................................................19

        D.   A Direct Appeal Will Not Materially Advance the Progress of These Chapter 11 Cases......................................................................................................21

    II.   A Direct Appeal Is Not Warranted Under 28 U.S.C. § 158(d)(2)(B)(ii) ......................... 22

CONCLUSION ................................................................................................... 22

## TABLE OF AUTHORITIES

### CASES

PAGE(S)

*In re Aegean Marine Petrol. Network, Inc.*,
    599 B.R. 717 (Bankr. S.D.N.Y. 2019) .................................................................. 20

*In re A.H. Robins Co., Inc.*,
    880 F.2d 694 (4th Cir. 1989) ....................................................................... 14, 15

*In re Airadigm Commc'ns, Inc.*,
    519 F.3d 640 (7th Cir. 2008) ........................................................................10, 14

*In re Am. Home Mortg. Inv. Corp.*,
    408 B.R. 42 (Bankr. D. Del. 2009) ..................................................................... 17

*In re Bernard L. Madoff Inv. Sec. LLC*,
    740 F.3d 81 (2d Cir. 2014) ........................................................................8, 9, 12

*In re BGI, Inc.*,
    504 B.R. 754 (S.D.N.Y. 2014) ............................................................................. 5

*Cal. Dep't of Toxic Substances Control v. Exide Holdings, Inc.  (In re Exide Holdings, Inc.)*,
    No. 20-11157, 2021 WL 3145612 (Bankr. D. Del. July 26, 2021) ....................... 10

*In re Dow Corning Corp.*,
    280 F.3d 648 (6th Cir. 2002) ....................................................................... 14, 15

*Deutsche Bank A.G. v. Metromedia Fiber Network, Inc.  (In re Metromedia Fiber Network, Inc.)*,
    416 F.3d 136 (2d Cir. 2005) ........................................................................ *passim*

*In re Drexel Burnham Lambert Grp.*,
    960 F.2d 285 (2d Cir. 1992) ............................................................................ 6, 7

*In re Enron Corp.*,
    No. 01-16034 (AJG), 2006 WL 1030413 (Bankr. S.D.N.Y. Apr. 10, 2006) ........... 5

*In re Gen Motors Corp.*,
    409 B.R. 24 (Bankr. S.D.N.Y. 2009) ........................................................... *passim*

*In re Genco Shipping & Trading Ltd*,
    513 B.R. 233 (Bankr. S.D.N.Y. 2014) ................................................................. 9

*In re Glob. Indus. Techs., Inc.*,
    645 F.3d 201 (3d Cir. 2011) ....................................................................... 14, 15

iii

*In re Goody's Fam. Clothing, Inc.*,
   No. CIV.A. 09-409 (RMB), 2009 WL 2355705 (D. Del. July 30, 2009) ............................ 10

*In re Johns-Manville Corp.*,
   517 F.3d 52 (2d Cir. 2008) ..................................................................... 11

*In re Johns-Manville Corp.*,
   600 F.3d 135 (2d Cir. 2010) .................................................................... 11

*In re Kirwan Offices S.A.R.L.*,
   592 B.R. 489 (S.D.N.Y. 2018) ............................................................... 9, 16

*In re Ladder 3 Corp.*,
   No. 17-CV-04733 (NG), 2018 WL 2298349 (E.D.N.Y. Mar. 28, 2018) ........................ 3, 11

*In re Lehman Bros.*,
   Nos. 13 Civ. 5381(DLC), 13 Civ. 5964(DLC), 2013 WL 5272937
   (S.D.N.Y. Sept. 18, 2013) ............................................................... *passim*

*Macarthur Co. v. Johns-Manville Corp.*,
   837 F.2d 89 (2d Cir. 1988) ...................................................................... 6

*Mark IV Indus., Inc. v. New Mexico. Env't Dep't*,
   452 B.R. 385 (S.D.N.Y. 2011) .............................................................. 5, 17

*In re Millennium Lab Holdings II, LLC*,
   543 B.R. 703 (Bankr. D. Del. 2016) ................................................ 8, 12, 13, 18

*In re Millennium Lab Holdings II, LLC.*,
   945 F.3d 126 (3d Cir. 2019) .............................................................. 14, 15, 16

*Monarch Life Ins. Co. v. Ropes & Gray* ,
   65 F.3d 973 (1st Cir. 1995) ............................................................... 14, 15

*Nat'l Heritage Found., Inc. v. Highbourne Found.*,
   760 F.3d 344 (4th Cir. 2014) .............................................................. 14, 15

*In re Pulp Finish 1 Co.*,
   No. 12-13774 (SMB), 2014 Bankr. LEXIS 189 (Bankr. S.D.N.Y. Jan. 16, 2014) .................. 5

*Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*
   676 F.3d 45 (2d Cir. 2012) ..................................................................... 12

*In re Residential Capital, LLC*,
   508 B.R. 838 (Bankr. S.D.N.Y. 2014) ............................................................ 9

*Railway Lab. Executives' Ass'n v. Gibbons*,
   455 U.S. 457 (1982) .......................................................................... 16

*In re Sabine Oil & Gas Corp.*,
   551 B.R. 132 (Bankr. S.D.N.Y. 2016) .................................................... 5, 18, 19

iv

*In re Seaside Eng'g & Surveying, Inc.*,
    780 F.3d 1070 (11th Cir. 2015) ........................................................................ 14, 15

*In re Springfield Hosp., Inc.*,
    618 B.R. 109 (Bankr. D. Vt. 2020) ........................................................................ 18

*Stern v. Marshall*,
    564 U.S. 462 (2011) ........................................................................ 16

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
    262 F.3d 134 (2d Cir. 2001) ........................................................................ 11

*In re SunEdison, Inc.*,
    576 B.R. 453 (Bankr. S.D.N.Y. 2017) ........................................................................ 20

*In re Tribune Co.*,
    477 B.R. 465 (Bankr. D. Del. 2012) ........................................................................ 17

*Weber v. United States*,
    484 F.3d 154 (2d Cir. 2007) ........................................................................ *passim*

*Zewdie v. PNC Bank, N.A.*,
    No. PJM 15-2167, 2015 WL 6007410 (D. Md. Oct. 9, 2015) ........................................................................ 5

### STATUTES & RULES

11 U.S.C. § 106 ........................................................................ 10

28 U.S.C. § 105(a) ........................................................................ 6

28 U.S.C. § 158(d) ........................................................................ *passim*

Fed. R. Bankr. P. 9019 ........................................................................ 11

Purdue Pharma L.P. ("**PPLP**") and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**Purdue**") respectfully submit this omnibus objection to the *United States Trustee's Memorandum of Law in Support of Motion to Certify Direct Appeal to the Court of Appeals Under 28 U.S.C. § 158(d)* (Oct. 1, 2021) [Dkt. No 3868] (the "**UST Motion**"); *The Appealing States' Motion for Certification Pursuant to 28 U.S.C. § 158(d)(2)(A)* (Oct. 1, 2021) [Dkt. No. 3871] (the "**Appealing States Motion**"); *California's Request for Certification of Direct Appeal to the Court of Appeals and Joinder to the Appealing States' Motion for Certification Under 28 U.S.C. § 158(d)(2)(A)* (Oct. 1, 2021) [Dkt. No. 3874] (the "**California Motion**"); and the *Joinder of Certain Canadian Municipality and First Nations Creditors and Appellants, In Support of the Motions by the Office of the United States Trustee and the Appealing States for Certification of a Consolidated and Expedited Direct Appeal to the Court of Appeals for the Second Circuit* (October 7, 2021) [Dkt. No. 3913] (the "**CMFN Motion**," and together with the UST Motion, the Appealing States Motion, and the California Motion, the "**Certification Motions**"), all of which seek a direct appeal to the United States Court of Appeals for the Second Circuit of their appeals[1] of this Court's Confirmation Order [Dkt. No. 3787] approving the Debtors' twelfth amended plan of reorganization (the "**Plan**").[2] The U.S. Trustee also seeks certification for direct appeal of this Court's *Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust, and*

---

[1] The appeals that are the subject of the Certification Motions were filed by the United States Trustee ("**U.S. Trustee**"), the States of Washington, Delaware, Maryland, Oregon, Rhode Island, Vermont, Connecticut, and the District of Columbia (collectively, the "**Appealing States**"), the State of California, and the Canadian Municipality and First Nations Creditors (collectively, the "**CMFN**," and together with the U.S. Trustee, the Appealing States, and California, the "**Movants**").

[2] All capitalized terms not defined herein shall have the meaning ascribed to such terms in the Plan.  (*See* Plan § 1.1.)  Docket numbers refer to Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.), unless otherwise specified.

1

*TopCo (II) Directing Prime Clerk LLC to Release Certain Protected Information, and (III)*

*Granting Other Related Relief* (Sept. 15, 2021) [Dkt. No. 3773] (the "**Advance Order**").   In

support of this omnibus objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.        Through the Certification Motions, the Movants seek to short-circuit the normal

appellate process, leapfrog the district court, and proceed directly to the Second Circuit with their

meritless appeals of the Confirmation Order.  In doing so, the Movants urge this Court to do

something that appears, after exhaustive research, to have <u>never</u> been done in Second Circuit

history:  certify a confirmation order for direct appeal.  The exceedingly fact-bound

Confirmation Order in this case resolves a myriad of fact-intensive legal disputes based upon six

full days of evidentiary presentation encompassing no fewer than 41 fact and expert witnesses,

and more than two full days of oral argument focused on the application of those facts to the law.

And, of course, the hearing itself was the culmination of two years of extensive discovery. This

Court should decline the Movants' invitation to depart from the established appellate procedure

and should instead permit the appeals to proceed before the district court (McMahon, J.).  The

district court is already actively engaged, has already read extensive relevant case law and is

familiar with the issues, and is poised to resolve the appeals expeditiously.  Oral argument before

Judge McMahon is set for November 30, and she may well rule on the appeals before the Second

Circuit even has decided whether to accept the appeals should this Court certify a direct appeal

(let alone schedule expedited briefing, hold oral argument, and then rule on the merits).   The

district court route—seemingly used in every confirmation appeal ever filed in this Circuit—is

moving fast, which will greatly benefit all parties.

2.        None of the circumstances that call for a direct appeal are present here.  First,

there <u>is</u> long-established controlling authority in the Second Circuit governing the central

question raised in the Movants' appeals:  Does a bankruptcy court have the authority, in

extraordinary circumstances, to nonconsensually release and enjoin civil claims held by third

parties against parties related to the debtors as part of the debtors' chapter 11 plan of

reorganization?  The answer is yes, where, as here, the factual circumstances so warrant.

*Deutsche Bank A.G. v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,

416 F.3d 136, 142-43 (2d. Cir. 2005) ("*Metromedia*").  That has been the answer for decades.

As this Court succinctly put it, "[t]his isn't new stuff . . . .  [P]eople have been ruling on [it] . . .

since the '80s."  (Aug. 9, 2021 Pre-Trial Tr. at 104:10-13.)  No amount of artful drafting of the

questions presented alters the reality that the core legal issue is, in fact, far less interesting than

the Movants' rhetoric tries to make it.  The only thing that is remarkable here is Movants'

baseless claim that there is no "controlling decision" of the Second Circuit on these issues.  To

the extent there is no controlling decision addressing on all fours the precise <u>arguments</u> raised by

some of the Movants, "that is so, not because the legal question is open, but because no one has

made such . . . obviously flawed argument[s]."  *In re Ladder 3 Corp.*, No. 17-cv-04733 (NG),

2018 WL 2298349, at *3 (E.D.N.Y. Mar. 28, 2018).

       3.      Second, although the life-saving abatement programs contemplated by the Plan

are of great importance to the Debtors' creditors and others, there is no <u>question of law</u> the

resolution of which is a matter of "public importance."  Where, as here, "the Circuit has already

decided the bottom line . . . deciding it again is not a matter of public importance."  *In re Gen.

Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009).

       4.      Third, there is no split of authority in the Second Circuit as to the permissibility of

third-party releases in a plan of reorganization.  *Metromedia* and other authority govern the issue

and supply the relevant rule of decision.  That different lower courts applying that rule reached

different conclusions on the particular facts of their particular cases assuredly does not constitute

a conflict and is to be expected.  Just as surely, that a small minority of Circuits have concluded

that third-party releases are not permissible under any circumstance has no bearing whatsoever

on whether a direct appeal is appropriate in <u>this</u> Circuit.  *In re Gen. Motors Corp.*, 409 B.R. at

28.

       5.      Finally, contrary to the Movants' claims, a direct appeal of the Confirmation

Order would not materially advance the progress of these chapter 11 cases.  Quite the contrary,

which helps explain why it does not appear to have ever before happened.  "Courts of appeals

benefit immensely from reviewing the efforts of the district court to resolve [bankruptcy]

questions," and direct appeal is "not necessarily compatible with [the] ultimate objective—

answering questions wisely and well."  *Weber v.  United States*, 484 F.3d 154, 160 (2d Cir.

2007).  The Second Circuit itself has opined that "district courts tend to resolve bankruptcy

appeals faster than the courts of appeals," and thus "the cost in speed of permitting district court

review will likely be small."  *Id.*  That is certainly the case here, where the district court is

familiar with these chapter 11 cases (having already resolved an appeal taken from this Court's

preliminary injunction order), well versed with the principle legal issues (having grappled with

issues concerning third-party releases in other appeals), has set an expedited briefing schedule

with respect to the appeals that will conclude before Thanksgiving, will hold oral argument on

November 30, and intends to rule expeditiously thereafter.  Proceeding before the district court

first will ensure that the parties receive an appellate decision as fast as practicable—and likely

months before the Second Circuit would have ruled.  That certain Movants have professed an

intention to ultimately appeal to the Second Circuit or even the Supreme Court if not successful

in the district court simply does not matter.  "If the mere expectation of advancement to a circuit

court was sufficient to establish material advancement, Section 158(d)(2)(A) would effectively eliminate the district court from the bankruptcy review process altogether." *In re Lehman Brothers, Inc.*, Nos. 13 Civ. 5381 (DLC), 13 Civ. 5964 (DLC), 2013 WL 5272937, at *5 (S.D.N.Y. Sept. 18, 2013).

6.      For all the foregoing reasons, and those that follow, the Movants' request for direct certification should be denied.

## ARGUMENT

7.      The Certification Motions should be denied because the criteria enumerated under 28 U.S.C. § 158(d)(2)(A) are not satisfied.  Moreover, because a majority of the appellees do not support direct appeal, certification is also not warranted under 28 U.S.C. § 158(d)(2)(B)(ii).

## I.     A Direct Appeal Is Not Appropriate Under 28 U.S.C. § 158(d)(2)(B)(i)

8.      Direct certification of an appeal is a "procedural remedy reserved for <u>exceptional circumstances in which guidance of the circuit court of appeals is necessary</u>." *See Zewdie v. PNC Bank, N.A.*, No. PJM 15-2167, 2015 WL 6007410, at *1 (D. Md. Oct. 9, 2015) (emphasis added); *See e.g.*, *In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 142 (S.D.N.Y. 2016) (denying certification); *In re BGI, Inc.*, 504 B.R. 754, 770 (S.D.N.Y. 2014) (denying motion to certify a direct appeal of the confirmation order); *In re Pulp Finish 1 Co.*, No. 12-13774 (SMB), 2014 Bankr. LEXIS 189, at *4 (Bankr. S.D.N.Y. Jan. 16, 2014) (noting denial of motion to certify a direct appeal); *Mark IV Indus., Inc. v. New Mexico Env't Dept.*, 452 B.R. 385, 391 (S.D.N.Y. 2011) (denying motion to certify direct appeal); *In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 1030413 (Bankr. S.D.N.Y. Apr. 10, 2006) (same).  Section 158(d)(2) authorizes a bankruptcy court to certify a direct appeal only in four narrow circumstances:  (1) the order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States"; (2) the order involves a question of law

that "involves a matter of public importance"; (3) the order "involves a question of law requiring

resolution of conflicting decisions"; or (4) "an immediate appeal from [the order] may materially

advance the progress of the case or proceeding in which the appeal is taken."  28 U.S.C.

§ 158(d)(2)(A), (B)(i).  The Movants have not established a single one of those circumstances

here.

### A.    There Are Controlling Decisions Regarding the Issues Raised on Appeal

9.      First, the core legal question presented by the appeals is one on which there is

indisputably a "controlling decision" in the Second Circuit.  Accordingly, certification under the

first prong of 28 U.S.C. § 158(d)(2)(A)(i) is not appropriate.

10.      The Movants' principal contention in support of certification under this prong is

seemingly that there is a dearth of Second Circuit guidance on the availability of nonconsensual

third-party releases under the circumstances of these cases.  (Appealing States Mot. ¶ 3; *see also*

UST Mot. at 18-19 ("[T]he Court of Appeals has yet to address directly the bankruptcy court's

statutory or equitable authority to issue [the third-party] releases.").  But, as observed above, the

availability of third-party releases in bankruptcy—and the circumstances under which those

release may be approved—are issues that have been settled in this Circuit for decades.

11.      The Second Circuit has long held that a bankruptcy court "may enjoin a creditor

from suing a third-party provided the injunction plays an important part in the debtor's

reorganization."  *Metromedia*, 416 F.3d at 141; *In re Drexel Burnham Lambert Grp., Inc.*, 960

F.2d 285, 293 (2d Cir. 1992) ("*Drexel*") (holding that "[i]n bankruptcy cases, a court may enjoin

a creditor from suing a third-party, provided the injunction plays an important part in the debtor's

reorganization plan"); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93-94 (2d Cir.

1988) (holding that section 105(a) "has been construed liberally to enjoin suits that might impede

the reorganization process" and affirming injunction of third-party claims against non-debtor

6

insurers). The Circuit has also provided express guidance regarding the circumstances that may

qualify as sufficiently "important" to support such releases. In *Drexel*, for example, the Court of

Appeals upheld a third-party release and injunction as important to the Plan where a

"[s]ettlement [a]greement [was] unquestionably an essential element of the [Debtor's] ultimate

reorganization" and the injunction, in turn, was "a key component of the [s]ettlement

[a]greement." 960 F.2d at 293. In *Metromedia*, the Second Circuit identified a number of

circumstances where third-party releases may be appropriate, including where (1) the estate

received substantial consideration; (2) the enjoined claims were channeled to a settlement trust

rather than extinguished; (3) the enjoined claims would directly impact the debtor's

reorganization by way of indemnity or contribution; or (4) the plan otherwise provided for the

full payment of the enjoined claims. *Metromedia*, 416 F.3d at 142 (collecting cases). The Court,

however, emphasized that the inquiry is "not a matter of factors and prongs." *Id.* 141-42.

Rather, the touchstone of the inquiry is a determination that "unusual" or "unique"

circumstances" exist that "render the release terms important to the success of the Plan"—an

inquiry that necessarily turns on the facts and circumstances of the case at hand. *Id.* at 143.

     12.     On the basis of the overwhelming evidence adduced at confirmation,[3] this Court

correctly held that the third-party releases contained in the Debtors' plan of reorganization—

which were significantly and repeatedly narrowed at the Court's direction—were absolutely

essential to the Debtors' reorganization. (Modified Bench Ruling ("**MBR**") at 131-36.) The

---

[3] *See, e.g.*, Guard Decl. ¶ 67 (Aug. 5, 2021), Dkt. No. 3446 ("Without the availability of the Sackler assets, compromise between the Non-Federal Public Claimants and the Private Claimants would have not been possible."); Confr. Hr'g Tr. 115:1-5, 143:14-144:10 (Atkinson) (Aug. 16, 2021), Dkt. No. 3581 ("The UCC believes, with conviction, that the terms of the plan represent the only viable conclusion for the Chapter 11 cases . . ."); Mediators' Rep. ¶ 12 (Sept. 23, 2020), Dkt. No. 1716 (conditioning intra-creditor agreements on participation of the Sacklers in the Debtors' reorganization).

Plan's conformity to the fact-intensive considerations and standards of *Metromedia* is far from a "pure question[] of law" that might readily lend itself to resolution by direct certification to the Circuit. *See Weber*, 484 F.3d at 158 ("Legislative history confirms that Congress intended [the direct certification provisions] to facilitate our provision of guidance on <u>pure questions of law</u>." (emphasis added)). Indeed, "[a]pplication of long-standing, settled law to the facts of a particular case is not a basis for direct certification." *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 708-09 (Bankr. D. Del. 2016) (declining to certify any of six enumerated third-party release issues for direct appeal under the first prong of section 158(d)(2)(a)).

13.    The Movants do not meaningfully contest any of this, nor could they reasonably do so.[4] They instead point to a series of legal and factual arguments—virtually all of which were raised, carefully considered, and rejected at confirmation—that they say distinguish *Metromedia* and render this case one of "first impression" that necessitates direct review. (*E.g.*, UST Mot. at 20.) Each is meritless.

14.    As an initial matter, the Movants advance the surprising claim that *Metromedia* should be ignored because its holding regarding the availability of nonconsensual releases is non-binding "dicta" (Appealing States Mot. ¶ 3) or because the case was "decided . . . on other grounds." (UST Mot. at 19 (arguing that "the court of appeals has yet to address directly the bankruptcy court's statutory or equitable authority to issue these releases" because *Metromedia*

---

[4] The Appealing States claim that during a colloquy at oral argument this Court supposedly "recognized" that "there is no decision . . . that 'controls' under the unique and unprecedented circumstances of this case." (Appealing States Mot. ¶ 5 (citing Aug. 23, 2021 Hr'g Tr. 217:23-24.) That is false. In the referenced exchange, this Court was merely <u>restating</u> its understanding of the Appellants' (flawed) "police power" argument, as the full quotation (omitted by the Appellants) makes crystal clear. (Aug. 23, 2021 Hr'g Tr. 217:15-24 ("<u>And I do understand your point</u>, but we're just coming back to the same point every time, which is that <u>you believe</u> every state needs to agree to this, and perhaps every governmental entity. . . . and that's really what it comes down to . . . because there's really not a whole lot of on-point, directly on-point, precedent on that issue." (emphasis added).)

declined to remand the case based on equitable mootness)).  That argument is frivolous.  The Second Circuit itself describes *Metromedia* as holding that nonconsensual third-party releases are authorized in appropriate circumstances.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 93 n. 12 (2d Cir. 2014) ("In *In re Metromedia Fiber Network, Inc.*, we held that a bankruptcy court could permit the nonconsensual release of creditors' claims against third parties upon a finding of 'truly unusual circumstances' that 'render the release terms important to [the] success of the [underlying bankruptcy reorganization plan].'") (emphasis added).  Bankruptcy and district courts have faithfully applied *Metromedia's* holding for years, and not one has ever suggested that it constitutes nonbinding dicta.[5]

15.    Next, the Appealing States contend that direct certification is appropriate because the Second Circuit has not yet expressly rejected their argument that so-called civil police power claims for money damages cannot be released pursuant to a plan of reorganization.  (Appealing States Mot. ¶ 3.)  That the Appealing States intend to urge the Court of Appeals to craft a bespoke exception to *Metromedia* from whole cloth does not justify direct review.  As this Court correctly held—and as the Movants have all but conceded elsewhere—"there is no [police power] bar or exception under the Bankruptcy Code." (MBR at 149; *see also* Mot. of the State of Wash. & Conn. for a Stay Pending Appeal ¶ 64 (Sept. 19, 2021), Dkt. No. 3789 ("To be sure, the Bankruptcy Code does not expressly provide that third-party releases may not be imposed on police power clams. . . .").)  Indeed, bankruptcy courts have, in appropriate circumstances, confirmed plans enjoining governmental units from pursuing claims against third parties for money damages as part of a plan of reorganization—including as recently as July of this year.

---

[5] *See, e.g.*, *In re Kirwan Offices S.a.R.L.*, 592 B.R. 489, 509-12 (S.D.N.Y. 2018); *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 269-70 (Bankr. S.D.N.Y. 2014); *In re Residential Capital, LLC*, 508 B.R. 838, 849 (Bankr. S.D.N.Y. 2014).

This also is not novel.  *See, e.g.*, *Cal. Dep't of Toxic Substances Control v. Exide Holdings, Inc.*

*(In re Exide Holdings Inc.)*, No. 20-11157, 2021 WL 3145612, at *8 (Bankr. D. Del. July 6,

2021) (affirming order confirming plan of reorganization that embodied multi-state global

resolution and released monetary claims of environmental agencies against debtor-polluter and

third parties over California's objection); *see also In re Airadigm Commc'ns*, 519 F.3d 640, 655-

58 (7th Cir. 2008) (holding that third-party release of claims applied to FCC).  The Appealing

States have not identified a single case—anywhere, ever—even underlining supporting their position, let

alone endorsing it.[6]

16.    The Appealing States' arguments for certification under this prong appear instead

to rely on "numerous" (and largely unidentified) "additional reasons" that this case is "novel,"

including "bedrock principles of federalism."  (Appealing States Mot. ¶ 4 (citing, among other

things, U.S. CONST. Amend. X).)  The Appealing States, however, cannot transmute their

disagreement with *Metromedia* into an open question of law simply by invoking vague notions

of federalism or their status as "governmental units," factors that simply have no relevance under

the governing standards.  Indeed, courts have routinely rejected similar attempts by litigants—

exactly as here—to self-servingly draft their question presented around an established governing

rule to try to secure direct certification.  *See In re Goody's Fam. Clothing, Inc.*, No. CIV.A. 09-

409 (RMB), 2009 WL 2355705, at *2 (D. Del. July 30, 2009) ("The [c]ourt need not conclude

that this case presents a question of first impression merely because [appellants] have innovated

---

[6] For similar reasons, the CMFN's suggestion that the Foreign Sovereign Immunities Act
("**FSIA**") bars the third-party releases contemplated under the Plan is entirely without merit
because it cites to no authority that even suggests that the FSIA has any applicability in this
context.  (CMFN Mot. ¶ 27.)  In any event, its attempts to craft an exception to *Metromedia* or
the abrogation of sovereign immunity with respect to "governmental units" under Section 106,
11 U.S.C. § 106 (abrogating sovereign immunity of "governmental units," which is defined to
include foreign states), do not warrant direct certification.

a novel argument . . . ."); *In re Ladder 3 Corp.*, No. 17-CV-04733 (NG), 2018 WL 2298349, at

*3 (E.D.N.Y. Mar. 28, 2018) (rejecting movant's attempt "to artificially transform a simple

application of Rule 9019(a) into a novel legal question" and observing that although "there [was]

no controlling decision addressing the precise question . . . that is so not because the legal

question is open, but because no one has made such an obviously flawed argument"); *In re

Weber*, 484 F.3d at 160 n.5 (citing *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262

F.3d 134, 140 (2d Cir. 2001) ("A novel legal question will not compel immediate [direct appeal]

review unless it is of fundamental importance to the development of the law [ ] and it is likely to

escape effective review after entry of final judgment.")).  The Appealing States attempts here

should likewise be rejected.  They have claims for <u>money damages</u> arising out of conduct that

ended years ago—just like all of the hundreds of thousands of other opioid-related general

unsecured claims.  That is it.  There is simply no justification (legal, policy, or otherwise) to

permit a governmental entity, no matter how small or what its motives are, to block an

overwhelmingly supported restructuring that complies with *Metromedia*, *Drexel*,

*Johns-Manville*, and many other cases.  That is particularly so here, where 97% of the 4,924

Non-Federal Domestic Governmental Claimants that voted did so in support of the Plan—likely

the highest number of governmental voters and acceptances in the history of chapter 11.

17.    The Appealing States also appear to contend that certification is warranted

because "the Second Circuit's decisions in *Manville III* and *Manville IV* suggests this court may

have lacked jurisdiction to enjoin direct third-party claims against non-debtors (Appealing States

Mot. ¶ 4 (citing *In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008) ("*Manville III*"),

*vacated on other grounds*, 557 U.S. 137 (2009) *and reinstated as modified on other grounds on

remand*, *In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010) ("*Manville IV*").)

11

The Appealing States, however, entirely ignore the Second Circuit's subsequent decision in *In re Quigley*, which makes clear that bankruptcy courts have the jurisdiction to permanently enjoin claims against third parties if litigation of those claims would have a direct impact on the *res* of the bankruptcy estate. *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45, 57 (2d Cir. 2012) (holding that, notwithstanding *Manville III and IV*'s discussion of derivative liability, "the touchstone for bankruptcy jurisdiction remains whether its outcome might have any 'conceivable effect' on the bankruptcy estate"); *see, e.g.*, *Metromedia*, 416 F.3d at 142; *Madoff Inv. Sec.*, 740 F.3d at 92-93. And here, this Court found that the Plan's third-party releases of claims against Shareholder Released Parties—which claims are limited to those for which the conduct, omission, or liability of a Debtor is a "legal cause" or "legally relevant factor" (Plan §10.7(b))—could have a "conceivable effect" on the Estates for many fact-based reasons. These include through potential indemnification and contribution, diminution of shared insurance policies, continued involvement by the reorganized Debtors—for years—in thousands of lawsuits, and negative consequences on the Debtors' ability to pursue the Estates' own closely related, overlapping claims against the Shareholder Released Parties.[7] (MBR at 111.) This fact-bound ruling does not and cannot provide a basis for direct certification. *See In re Millennium Lab Holdings*, 543 B.R. at 709 (declining to certify the "related to" jurisdiction question with

---

[7] *See, e.g.*, Proofs of Claim Nos. 137527 (Estate of Raymond Sackler), 137453 (Estate of Jonathan Sackler), 137590 (Richard Sackler), 137599 (Estate of Beverly Sackler), 137706 (Kathe Sackler), 115353 (Peter Boer), 137749 (Stephen A. Ives), and 115110 (Paulo Costa) (asserting claims for indemnification and contribution); DelConte Decl. ¶¶ 35-36, 38-39, 42-43 (Aug. 5, 2021), Dkt. No. 3456, (stating that applicable insurance policies have liability limits in the "billions of dollars"); Aug. 16, 2021 Conf. Hr'g Tr. 70:8-71:19 (Conroy) (discussing actions taken by the governmental plaintiffs' lawyers to amend complaints against the Debtors to name members of the Sackler Families); Dubel Decl. ¶¶ 21-35 (Aug. 5, 2021), Dkt. No. 3433 (discussing Special Committee's investigation of potential claims against the Sacklers, including intentional fraudulent transfer, constructive fraudulent transfer, breaches of fiduciary duty, unjust enrichment, and veil-piercing").

respect to third-party releases because it was "not a pure matter of law" but rather "an application of facts to well-settled law").

18.    The U.S. Trustee, for its part, purports to identify no fewer than five questions that supposedly warrant direct review under the first prong of section 158(d)(2)(A).  (*See* UST Mot. at 12.)  Each of these "questions presented," however, merely recasts the central issue on appeal in different terms or seeks to collaterally attack the Second Circuit's decision in *Metromedia*.  Regardless, the bottom line is the same:  direct certification of the appeals is not justified.

19.    For example, the U.S. Trustee's second and fifth "questions presented"—whether the court "erred by concluding that the Bankruptcy Code authorizes nonconsensual non-debtor releases" and "whether the Court correctly construed Second Circuit decisions to permit nonconsensual non-debtor releases"—are definitively answered by *Metromedia* itself.

20.    The U.S. Trustee also claims that certification is warranted because neither the Second Circuit nor the Supreme Court has addressed the "pure legal issue" of whether "the Due Process Clause permits a bankruptcy court to nonconsensually and permanently extinguish non-debtors' direct causes of action against other non-debtors without compensation or consent and without a hearing on their claims."  (UST Mot. at 16.)  This argument is fundamentally and fatally flawed.  First, it is not a "pure legal issue."  Whether the extensive notice and process provided in advance of confirmation was sufficient is inherently factual—as shown by the U.S. Trustee's brief, which assumes (and invents) facts that do not accurately reflect the Court's rulings.  *See In re Millennium Lab Holdings, Inc.*, 543 B.R. at 710 ("[A]ssumption of facts that do not completely reflect a court's findings cannot form the basis of certification.").  Second, the notion that creditors are not receiving value in exchange for the third-party releases provided in

the Plan—yet another invented fact—is false.  The releases are the linchpin of the entire

shareholder settlement and thus the shareholders' $4.325 billion contribution to the estates.   The

shareholders' contribution is the most significant cash funding source of the Plan's distributions

to creditors.  As multiple witnesses testified at the confirmation hearing, without this substantial

contribution, the Plan would collapse, as would all of the intercreditor settlements, many of

which were expressly conditioned—including by some of these very Movants—on the Sackler

settlement.[8]   Third, and most importantly, the U.S. Trustee's contention that third-party releases

contravene due process because they deprive claimants of the opportunity to litigate their claims

to conclusion on the merits or settle those claims voluntarily is nothing more than a wholesale

attack on governing Second Circuit law (and, for that matter, the law of the First, Third, Fourth,

Sixth, Seventh, and Eleventh Circuits).[9]  If the holders of released claims must always have the

merits of their causes of action heard and determined by a court, then bankruptcy courts have no

power to impose nonconsensual releases of such claims, notwithstanding the unambiguous

holdings of seven Circuit courts to the contrary.  The Debtors are not aware of a single case that

---

[8] *See supra* ¶ 12; *see also* Confr. Hr'g, Tr. 137:12-23 (Gotto) (Aug. 13, 2021), Dkt. No. 3602 (explaining that the distributions' dedication to abatement and the public good for which the distribution money could be spent was at the core of the Shareholder Settlement negotiations); Confr. Hr'g Tr. 115:1-5, 143:14-144:10 (Atkinson) (Aug. 16, 2021), Dkt. No. 3581 (" . . . . confirmation [of] the plan will ensure that funds are distributed promptly to begin to compensate victims and . . .  abate the opiate crisis that continues to grip this country.")

[9] *See Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 984-85 (1st Cir. 1995); *Metromedia*, 416 F.3d at 141-42; *In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126, 137-40 (3d Cir. 2019), *cert. denied sub nom. ISL Loan Tr. v. Millennium Lab Holdings II, LLC*, 140 S. Ct. 2805 (2020); *Nat'l Heritage Found., Inc. v. Highbourne Found.*, 760 F.3d 344, 350 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 961 (2015); *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 700-02 (4th Cir. 1989); *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656-58 (6th Cir. 2002); *Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 519 F.3d 640, 655-58 (7th Cir. 2008); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1076-79 (11th Cir. 2015); *see also In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011).

has concluded that such releases violate due process, and the U.S. Trustee cites none.  *Compare to Metromedia*, 416 F.3d at 141-43.[10]  Under the U.S. Trustee's view, <u>dozens</u> of lower courts across the country and <u>seven</u> Circuit Courts of Appeals have been violating the Due Process Clause for decades, all while the Supreme Court has repeatedly declined to review.[11]  The Due Process Clause of the Fifth Amendment of the United States Constitution, of course, is not new—it is 230 years old (having been ratified in 1791) and has undoubtedly been well known to the judges of the Second Circuit and each of the six other Circuits that have for decades permit third-party releases, each and every time they have upheld a third-party release.[12]  The U.S. Trustee's position has no merit.

21.    Finally, the U.S. Trustee asserts that direct certification is warranted because the "question remains open in this circuit as to whether bankruptcy courts . . . can constitutionally extinguish independent claims held by non-debtors against non-debtors."  (UST Mot. at 17.)

---

[10] To the extent that the U.S. Trustee is arguing that certification of a direct appeal to the Second Circuit is warranted because certain legislation has been proposed in Congress to restrict or eliminate the use of third-party releases in chapter 11 cases (UST Mot. at 24), that is irrelevant to the question of whether certification of the Appeals is appropriate here.

[11] *See, e.g.*, *In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126, 137-40 (3d Cir. 2019), *cert. denied sub nom. ISL Loan Tr. v. Millennium Lab Holdings II, LLC*, 140 S. Ct. 2805 (2020); *Nat'l Heritage Found., Inc. v. Highbourne Found.*, 760 F.3d 344, 350 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 961 (2015).

[12] *See Monarch,* 65 F.3d 973 (1st Cir. 1995) (204 years since ratification); *Metromedia*, 416 F.3d 136 (2d Cir. 2005)) (214 years since ratification ); *In re Millennium Lab Holdings II*, 945 F.3d 126 (3d Cir. 2019) (228 years since ratification); *Nat'l Heritage Found.*, 760 F.3d 344 (4th Cir. 2014) (223 years since ratification); *In re A.H. Robins Co.*, 880 F.2d 694 (4th Cir. 1989) (198 years since ratification); *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002) (211 years since ratification); *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640 (7th Cir. 2008) (218 years since ratification); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070 (11th Cir. 2015) (224 years since ratification); *see also In re Glob. Indus. Techs., Inc.*, 645 F.3d 201 (3d Cir. 2011) (220 years since ratification).  Moreover, adequate notice and the opportunity to be heard are core principles underlying the Bankruptcy Code, *see* 11 U.S.C. § 1109(b)) and Rules, *see* Fed R. Bankr. P. 2002, which all of these Circuits also were no doubt aware.

More specifically, the U.S. Trustee argues that Article III judges lack constitutional authority to enter a final order on the plan continuing nonconsensual third-party releases. But the bounds of a bankruptcy court's constitutional authority were delineated in *Stern v. Marshall*, 564 U.S. 462 (2011), which sets forth a disjunctive test for considering bankruptcy courts' constitutional authority to adjudicate claims: a bankruptcy court cannot enter a final order unless either the action at issue "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 499. *Stern* supplies the rule of decision in the Second Circuit. And as this Court found, the third-party releases in the Plan are a "fundamentally central aspect of [the] chapter 11 case's adjustment of the debtor/creditor relationship," and, thus, the matter is "constitutionally core" under *Stern*. (MBR at 116-17); *see also In re Kirwan Offs. S.a.r.l.*, 592 B.R. 489, 512 (S.D.N.Y. 2018), *aff'd sub nom. In re Kirwan Offs. S.a.R.L.*, 792 F. App'x 99 (2d Cir. 2019) ("[B]ankruptcy court thus possess[] the inherent constitutional adjudicatory authority to include the exculpation and injunction clauses in [the debtor's] confirmed reorganization plan."); *In re Millennium Lab Holdings*, 945 F.3d at 137 (in appeal from confirmation of plan containing nonconsensual third-party releases, holding that "[t]he Bankruptcy Court indisputably had 'core' statutory authority to confirm the plan").[13]

22.     In the end, the Movants struggle mightily to resist but effectively concede that their arguments for certification can be distilled to the contention that there is no precedent on all factual fours with this case. (*See, e.g.*, Appealing States Mot. ¶ 3 ("[T]he Second Circuit has

---

[13] The U.S. Trustee's argument that the third-party releases are improper because they exceed the scope of the Bankruptcy Clause (UST Mot. at 18) has no basis in law. At bottom, this argument merely questions whether the third-party claims are sufficiently "related to" these cases—in other words, a challenge to this Court's subject matter jurisdiction, which fails for the reasons already stated. And, the authority cited by the U.S. Trustee does not find any differently— indeed, it acknowledges that "the subject of bankruptcies is incapable of final definition." *Railway Lab. Executives' Ass'n v. Gibbons*, 455 U.S. 457, 458 (1982).

never approved the non-consensual release of a police power action <u>in circumstances such as these</u>.") (emphasis added).)  That each case is necessarily unique, however, cannot and does not support direct certification, because if it did direct review would be required in every case.  *See In re Millennium Labs.*, 542 B.R. at 710 ("[T]o treat these [i]ssues as questions of law suggests that there are separate legal standards for any given factual scenario rather than one legal standard applied to the facts of a particular case. The [litigants] have cited no authority for such a proposition.").  For this reason, and for the reasons set forth above, certification under section 158(d)(2)(A)'s first prong is not warranted.  *See In re Lehman Bros. Inc.*, No. 13 Civ. 5381 (DLC), 2013 WL 5272937, at *3 (S.D.N.Y. Sept. 18, 2013) (denying certification of appeal concerning whether appellant qualified as "customer" under SIPA because "the Second Circuit ha[d] addressed the central issue of this appeal—the criteria for 'customer' status as defined by SIPA—on several occasions"); *Mark IV Indus., Inc.*, 452 B.R. at 389 (denying certification of order holding that environmental cleanup obligation was not "a dischargeable 'claim' under the Bankruptcy Code" because Second Circuit had supplied the governing "inquiry" controlling decision setting out standard);  *In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) (finding that "[t]he issue concerning how th[e] [c]ourt measured materiality [was] not a pure legal issue . . . [and was] not appropriate for direct appeal"); *In re Am. Home Mortgage Inv. Corp.*, 408 B.R. 42, 44 (Bankr. D. Del. 2009) (holding that "those issues that are specifically linked to the [b]ankruptcy [c]ourt's decision [were] . . . mixed questions that implicate[d] the particular circumstances of th[e] case, and as such, they [were] not pure legal questions warranting direct certification").

17

**B.     The Appeals Do Not Raise a <u>Question of Law</u> Involving a Matter of Public Importance**

23.     These chapter 11 cases are among the most complex in history, and the life-saving abatement programs that will be funded by the Plan are undoubtedly of great importance.  The focus of the second prong of Section 158(d)(2), however, is on the <u>legal questions</u> presented by the Appeals and whether resolution of those questions will "advance the cause of jurisprudence to a degree that is usually not the case."  *In re Sabine Oil & Gas Corp.*, 551 B.R. at 140 (citing *Mark IV Indus.*, 452 B.R. at 388-89); *In re General Motors,* 409 B.R. at 28 (observing that, while "many people . . . agree[d] that GM's <u>well-being</u> [was] a matter of public importance[,] . . . what the statute requires is that 'the judgment, order, or decree involve[] a question of law' that 'involves a matter of public importance'") (emphasis in original).  Even where the broader public may be affected, where a question of law has already been decided by the Second Circuit, "deciding it again is not a matter of public importance."  *In re Gen. Motors*, 409 B.R. at 28.[14]

24.     The fact that the appeals involve the approval of nonconsensual third-party releases of civil claims against people who exited the Debtors well before the Petition Date (UST Mot. at 20-24; Appealing States Mot. ¶ 2) does not elevate them to ones that involve a <u>legal</u> question that is a matter of public importance under this criterion, particularly given the decades of established governing case law.  Indeed, courts already have specifically ruled on the very question and concluded that the authorization of nonconsensual third-party releases is not in itself a legal question of "public importance."  *See In re Millennium Lab Holdings*, 543 BR at

---

[14] The case Movants cite for the "public importance" prong, *In re Springfield Hosp., Inc.*, 618 B.R. 109, 118 (Bankr. D. Vt. 2020) (UST Mot. at 26), demonstrates precisely why that criterion is not met here.  In *Springfield Hospital*, the bankruptcy court concluded that a novel question of law that affected health care services in the midst of a global pandemic, and concerned the paycheck protection program under the newly passed CARES Act, *id.* at 118, was a question of public importance.  That is decidedly different from the appeals here, which concern application of settled Second Circuit law to the complex facts of this case.  *See supra* Section I.A.

716 ("While the issue of third-party releases is in no way inconsequential and is unqualifiedly important to the parties in this matter, a review of the case law reveals that the proffered reason do not justify circumventing the normal appeals process.") (highlighting *Lehman*, 2013 WL 5272937, at *5).[15]  Neither does the "unparalleled volume of high-profile media coverage of this case" (Appealing States Mot. ¶ 2), nor the fact that the Plan contemplates "the allocation and distribution of billions of dollars in resources" convert these appeals into ones that require direct review, *id.  See, e.g.*, *In re Sabine Oil & Gas Corp.*, 551 B.R. at 141 (denying certification requests because, among other things, the fact that "th[e] dispute ha[d] received substantial news coverage or because the oil and gas midstream industry [was] watching th[e] case closely . . . d[id] not render it a matter of 'public importance' that meets the standard for direct certification").[16]

### C.    The Appeals Do Not Raise A Question of Law Subject to Conflicting Decisions in the Second Circuit

25.    The U.S. Trustee and California claim that certification is also warranted because "even within this district, bankruptcy courts have reached sharply divergent conclusions

---

[15] It should not pass without mention that the U.S. Trustee has again proffered an inaccurate and revisionist history of these bankruptcy cases.  (UST Mot. at 20-24.)  Nowhere in that recitation does the U.S. Trustee so much as acknowledge the overwhelming support for the Plan among the Debtors' creditors who voted on the Plan (including 97 percent of Non-Federal Domestic Governmental Claimants).  And nowhere in that recitation does the U.S. Trustee acknowledge that the third-party releases were critical to obtaining a value-maximizing Plan and preventing these chapter 11 cases from devolving into a value destructive maelstrom where creditors fought each other for ever-diminishing value.

[16] The U.S. Trustee's attempt to elevate the questions raised by its appeal to constitutional dimensions on behalf of unidentified parties also is not sufficient to demonstrate a "matter of public importance" warranting direct review.  *See In re Gen. Motors Corp.*, 409 B.R. at 28 (explaining that, even where a question "is hardly a trivial issue as a matter of bankruptcy law and policy," where the question is "ultimately a matter of statutory interpretation and common law analysis," it is not a matter of public importance notwithstanding "litigants [attempts] to elevate their state law rights to sue additional parties to matters of constitutional dimension").

regarding the permissibility of involuntary third-party releases." (UST Br. at 25; California Mot. at 2.)[17]  That would be surprising if true because there is controlling Second Circuit authority on the question.  Unsurprisingly, it is not true.  The two cases cited by U.S. Trustee and California for the proposition each recognize that *Metromedia* authorizes third-party releases, but determined, on the particular facts of those cases, that the plan proponents had not demonstrated that the releases challenged in those cases were integral to the respective plans of reorganization. *See In re Aegean Marine Petro. Network, Inc.*, 599 B.R. 717, 722, 726 (Bankr. S.D.N.Y. 2019) (recognizing that the Second Circuit has held that "bankruptcy courts have the power to impose involuntarily releases," stating that those releases should only be imposed "where a particular release is essential and integral to the reorganization itself," and holding on the facts of the case and evidence presented that the court could not approve the requested releases); *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017) (recognizing *Metromedia* as controlling the question but determining that the particular release, in its then-present form, was not appropriate under that standard).[18]  There is simply no conflict that could justify certification here.  *See In re Lehman Bros. Inc.*, 2013 WL 5272937, at *4 (denying certification where "purported 'conflicts" in the case law regarding the definition of "customer" under repurchase agreements raised questions of fact, the "exploration of each . . . would benefit from allowing the 'case[] to percolate through the normal channels' of a district court's examination of the particular facts of the case under the controlling law") (quoting *Weber,* 484 F.3d at 160).

---

[17] The Appealing States indicate in a footnote that the "conflicting decisions" criteria under Section 158(d)(2)(A)(ii) "furnishes an alternative ground for certification" but make no argument under this criterion, instead arguing that "subsections (i) and (iii) are more applicable." (Appealing States Mot. ¶ 1 n.1.)

[18] The U.S. Trustee also cites to an as-yet-unpublished law review article and a student note for the proposition that a conflict exists, but these papers simply rely on *In re Aegean Marine* and *In re Sun Edison, Inc.* for that mistaken claim.  (UST Br. at 25.)

**D.    A Direct Appeal Will Not Materially Advance the Progress of These Chapter 11 Cases**

26.    Finally, certification of a direct appeal to the Second Circuit would not, as the Movants claim, materially advance the progress of these chapter 11 cases, particularly because the order appealed from is the Confirmation Order.  Indeed, a direct appeal is not always or even often consonant with the Second Circuit's ultimate objective—"answering questions wisely and well." *Weber*, 484 F.3d at 158.  That is especially true where, as here, the resolution is "heavily dependent on the particular facts of a case." *Weber*, 484 F.3d at 158.  And, even if the speed were the goal (and it is not), "district courts tend to resolve bankruptcy appeals faster than the courts of appeals" and, thus, "the cost in speed of permitting district court review will likely be small." *Weber*, 484 F.3d at 160.

27.    Judge McMahon has been assigned the appeals of the Confirmation Order and has already made clear that she intends to "move as quickly as possible—consistent, of course, with getting the law right." *See* Order Scheduling Conference, at 2 (Oct. 6, 2021), *In re: Purdue Pharma L.P. (State of Wash. v. Purdue Pharma L.P.)*, No. 21-07532 (CM), ECF No. 13).  To that end, at a status conference held on October 12, Judge McMahon ordered that briefing conclude by November 19 and that oral argument be held on November 30.  The district court also made clear that it is already very hard at work and plans to rule quickly.  Hewing to normal appellate procedure here will ensure that the parties receive an appellate decision as soon as possible—perhaps before the Circuit would even determine to accept an appeal in the event it were certified by this Court—let alone then agree to expedited briefing, hold oral argument, and rule.[19]  In addition, a thoughtful and well-reasoned opinion from the district court is likely to

---

[19] In the precedent cases the Debtors have located, it has taken the Second Circuit anywhere from one to three months to simply determine to accept a direct appeal. *See, e.g.*, *Sallie Mae, Incorporated v. Homaidan*, No. 20-1090 (2d Cir.) (3.4 months); *In re Motors Liquidation*

facilitate the Second Circuit's own consideration of the matter and very well may result in a faster appellate process at the Circuit.[20] For all these reasons, the Movants' request to certify their appeals on the basis that such certification would materially progress these cases should be rejected.[21]

## II.    A Direct Appeal Is Not Warranted Under 28 U.S.C. § 158(d)(2)(B)(ii)

28.    The Certification Motions also do not meet the requirements for certification under Section 158(d)(2)(B)(ii) because a majority of the appellees to do not support direct review.

**CONCLUSION**

29.    For all of the foregoing reasons, the Debtors respectfully submit that the criteria for direct certification are not met by the questions raised in the appeals. Accordingly, the Certification Motions should be denied.

---

*Company*, No. 15-1958 (2d Cir.) (2.7 months); *Am. Airlines, Inc. v. U.S. Bank Trust Nat'l Assoc. (In re AMR, Inc.)*, No. 13-716 (2d Cir.) (1 month); *In re Clinton Nurseries, Inc.*, No. 19-4067 (2d Cir.) (4.2 months); *In re CIT Group, Inc.*, No. 12-1271 (2d Cir.) (1 month); *In re Madoff*, No. 10-974 (2d Cir.) (2.3 months); *In re Barnet*, No. 13-612 (2d Cir.) (2.4 months); *Sensenich v. PHH Mortgage Corp. (In re Gravel)*, No. 19-2903 (2d Cir.) (3.7 months); *In re Springfield Hosp., Inc.*, No. 20-2884 (2d Cir.) (2.8 months); *Gunsalus v. County of Ontario*, No. 20-2314 (2d Cir.) (4.1 months).

[20] To the extent that the Appealing States insist that they will not be prepared to "fold up their tents" until the Appeals have received Circuit-level review (Appealing States Mot. ¶ 6), that is not a sufficient reason to certify the appeal.  "[I]f the mere expectation of advancement to a circuit court was sufficient to establish material advancement, Section 158(d)(2)(A) would effectively eliminate the district court from the bankruptcy review process altogether."  *In re Lehman Bros. Inc.*, 2013 WL 5272937, at *5.

[21] The U.S. Trustee separately seeks direct certification of its appeal of the Advance Order but has not even tried to establish that the Advance Order meets the requirements of section 158(d). For this reason, the request should be denied.

Dated:    October 13, 2021
         New York, New York

DAVIS POLK & WARDWELL LLP

By:    */s/ Marshall S. Huebner*
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:    (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Gerard X. McCarthy

*Counsel to the Debtors
and Debtors in Possession*