KRAMER LEVIN NAFTALIS
& FRANKEL LLP
Kenneth H. Eckstein
Rachael Ringer
David E. Blabey Jr.
Joseph A. Shifer
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100

GILBERT LLP
Scott D. Gilbert (admitted *pro hac vice*)
Craig Litherland (admitted *pro hac vice*)
Kami E. Quinn (admitted *pro hac vice*)
100 New York Ave, NW, Suite 700
Washington, D.C. 20005
Telephone: (202) 772-2200

BROWN RUDNICK LLP
David J. Molton
Steven D. Pohl
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800

OTTERBOURG P.C.
Melanie L. Cyganowski
Jennifer S. Feeney
230 Park Avenue
New York, NY 10169
Telephone: (212) 661-9100

*Attorneys for the Ad Hoc Committee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
|   |   |
|---|---|
| In re: | : Chapter 11 |
|   | : |
| PURDUE PHARMA L.P., *et al.*, | : Case No. 19-23649 (RDD) |
|   | : |
| Debtors. | : (Jointly Administered) |
|   | : |
------------------------------------------------------------------ X

**AD HOC COMMITTEE'S OMNIBUS OBJECTION TO**
**MOTIONS FOR CERTIFICATION UNDER 28 U.S.C. § 158(d)(2)(A)**

## TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................1

Objection.......................................................................................................................4

I.  The Appeals Do Not Involve a Legal Question for Which There is No Controlling
Precedent...............................................................................................................5

II.  Direct Certification is not Necessary to the Advancement of Jurisprudence and
does not Raise a Question of Pure Law ..............................................................7

A.  Advancement of Jurisprudence....................................................................8

B.  Mixed Question of Law and Fact................................................................11

III.  A Direct Appeal Will Not Materially Advance These Cases ...........................12

Conclusion ................................................................................................................14

The Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**Ad Hoc Committee**") hereby submits this omnibus objection (the "**Objection**") to (i) *United States Trustee's Memorandum of Law in Support of Motion to Certify Direct Appeal to the Court of Appeals Under 28 U.S.C. § 158(d)* (the "**U.S. Trustee's Motion**") [Dkt. No. 3868] filed by the U.S. Trustee, (ii) *the Appealing States' Motion for Certification Pursuant to 28 U.S.C. § 158(d)(2)(A)* (the "**Appealing States' Motion**") [Dkt. No. 3871] filed by the States of Washington, Connecticut, Delaware, Maryland, Oregon, Rhode Island and Vermont and the District of Columbia (the "**Appealing States**"); and (iii) *California's Request for Certification of Direct Appeal to the Court of Appeals and Joinder to the Appealing States' Motion for Certification Under 28 U.S.C. § 158(d)(2)(A)* ("**California's Certification Request**" and with the Appealing States' Motion and the U.S. Trustee's Motion, the "**Certification Motions**") [Dkt. No. 3874] filed by the State of California ("**California**" and with the Appealing States and the U.S. Trustee, the "**Movants**").

## **Preliminary Statement**

1.      The Court should not certify these appeals as meeting the criteria for direct review by the Second Circuit.  The Second Circuit has already provided the fundamental legal guidance that is required to answer the issues presented, and the only question to be resolved on appeal (and it is not a particularly close one) is whether those rules were properly applied by this Court.

2.      Two main authorities largely control the outcome of these cases (among a host of other supportive case law):  the Second Circuit's decisions in *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005) ("*Metromedia*") and *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45 (2d Cir. 2012) ("*Quigley*").  In *Metromedia*, the Second Circuit held that nonconsensual

third-party releases are appropriate in the rare situations where "truly unusual circumstances render the release terms important to success of the plan." *Metromedia*, 416 F.3d at 143.  In *Quigley*, the court held that bankruptcy jurisdiction is appropriate over "third-party non-debtor claims that directly affect the *res* of the bankruptcy estate." *Quigley*, 676 F.3d at 53 (citation omitted).

3.       The Court faithfully applied each of those holdings here.  It evaluated the third-party releases that are at the heart of the appeals (the "**Shareholder Releases**") under the standard required by *Metromedia*, and concluded that the standard had been met.  The Court looked to the standards set forth in *Quigley* and other Second Circuit precedent and determined, after a careful factual review and a substantial narrowing of the releases at issue, that it had jurisdiction to approve them.  *Court's Modified Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter 11 Plan* (the "**Bench Ruling**"), at 103-58 [Dkt. No. 3786].  While the facts of these cases are surely unprecedented – and, indeed, that is precisely why the cases can be said to be "unique," for purposes of the *Metromedia* standard – the law is well established.  And review of the application of settled law to new facts is unquestionably *not* what direct appeal is designed to accomplish.

4.       The Appellants strive mightily to create legal ambiguity where there is none, positing a variety of subsidiary issues that the Second Circuit was not asked to consider in *Metromedia* or other cases.  But arguments that the Second Circuit did not consider do not provide a basis for claiming that the law is unsettled.  The Second Circuit laid down a blanket rule; exceptions to it may or may not develop over time, but the rule, for now, is the rule.

5.       In the absence of any real claim of novelty, the Appellants turn next to the "public importance" prong of the certification standard.  These cases are assuredly important.  But the question is not whether the cases are important, but rather whether the *legal issues* presented for

review are of public importance.  In 2005, when *Metromedia* was decided, the legal issues themselves may have been important.  But now, a decade-and-a-half later, the standard for the grant of a third-party release in the Second Circuit is of no public importance for the simple reason that it is well-settled.  As Judge Gerber astutely observed in *General Motors*, in addressing an issue that had been decided only one month earlier in *Chrysler*, "deciding it again is not a matter of public importance."  *In re General Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009).

6.    Finally, and perhaps most importantly, direct certification will not advance the progress of these cases, but in fact will stall or divert that progress, at great expense to creditors. Even if the Court were to certify the appeals for direct review by the Second Circuit, the Second Circuit must still decide to accept the case, a decision that would likewise require briefing.  The parties could be left waiting, for an unknown amount of time, for the Second Circuit to exercise (or decline to exercise) its discretion in accepting a direct appeal – and only then would a schedule for briefing on the merits be set.  In sum, it is no exaggeration that a determination on the merits of the appeal from the Second Circuit could drag well into 2022.  By contrast, Judge McMahon has already set oral argument on the merits of the appeal for November 30, 2021, and should be in a position to rule on the appeal on or before the end of the year.

7.    As stated at a recent status conference before the District Court, the Appellees are unanimously supportive of appellate review prior to the occurrence of the effective date under the Plan.  Relegating this appellate review to the uncertainty of the Second Circuit's schedule, however, is unlikely to advance these cases when compared to the speed with which the District Court is prepared to act.  For these reasons, the Motions should be denied.

**Objection**

8.      Direct certification is extraordinary relief that should be granted only in limited

circumstances.  Certification is appropriate only if:

> (i) the judgment, order, or decree involves a question of law as to which
> there is no controlling decision of the court of appeals for the circuit or of
> the Supreme Court of the United States, or involves a matter of public
> importance;

> (ii) the judgment, order, or decree involves a question of law requiring
> resolution of conflicting decisions; or

> (iii) an immediate appeal from the judgment, order, or decree may
> materially advance the progress of the case or proceeding in which the
> appeal is taken.

28 U.S.C. § 158(d)(2)(A).[1]

9.      The Movants satisfy none of these prongs.  As discussed below, the object of the

Appeals – the Court's Bench Ruling – is solidly grounded in controlling precedent in the Second

Circuit.  Further, the Movants confuse "public importance" as used in the statute with public

significance.  Although these cases are significant for a myriad of reasons, not the least of which

is the implementation and funding of nationwide opioid abatement programs, the legal issues are

well-settled.  Finally, the Movants halfheartedly argue that direct certification will advance these

cases.  However, given recent developments before the District Court – including the District

Court's setting of an expedited briefing schedule that will lead to oral argument on November 30

---

[1] Even where a lower court certifies an appeal for direct review, it is within the discretion of the Circuit Court whether to accept the direct appeal.  The Second Circuit has been reticent in granting direct certification, as "[p]ermitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law."  *Weber v. United States Tr.*, 484 F.3d 154, 160 (2d Cir. 2007*); see also Official Comm. of Unsecured Creditors v. Sabine Oil & Gas Corp. (In re Sabine Oil & Gas Corp.)*, Nos. 16-cv-2561, 16-cv-6054, 2016 U.S. Dist. LEXIS 147710, at *7 (S.D.N.Y. Oct. 24, 2016) *(* "[T]he Court of Appeals for the Second Circuit has instructed that bankruptcy cases should not leapfrog the district court in the appeals process, but instead that they should normally percolate through the District Court before proceeding to the Court of Appeals." (internal quotations omitted)).

– there is no question that denying direct certification rather than subject the appeal to the slow moving Second Circuit docket, will be far more beneficial to the advancement of these cases.

## I.    The Appeals Do Not Involve a Legal Question for Which There is No Controlling Precedent

10.    In arguing that the "controlling precedent" prong of 28 U.S.C. § 158(d)(2)(A)(i) is met, the U.S. Trustee contends, principally, that no appellate court has resolved its Due Process and Bankruptcy Clause objections to the third party releases. The appealing States, for their part, contend that there is no controlling authority authorizing the release of so-called "police power claims." The Movants also contest the Court's jurisdiction to enter the Shareholder Releases. Each of these arguments are without merit.

11.    Non-consensual third-party releases have been authorized in the Second Circuit for at least thirty years. The Second Circuit approved of such releases in *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992), and reaffirmed the bankruptcy courts' authority to enter them – and set forth the governing standard – with its subsequent decision in *Metromedia*. Nor is the Second Circuit an outlier in this regard. As noted in the Bench Ruling, a "clear majority" of Circuits approve of third-party releases in appropriate circumstances. Bench Ruling at 118.

12.    Remarkably, *Metromedia* is cited only a single time in the briefs of the U.S. Trustee and the Appealing States. *See* U.S. Trustee's Mot. at 19; Appealing States' Mot.at 4. The U.S. Trustee goes so far as to dismiss it as "dicta," notwithstanding the alleged dicta's citation in dozens of cases, including subsequent Second Circuit cases. *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 93 n.12 (2d Cir. 2014) (noting that *Metromedia* established the standard for approval of nonconsensual third-party releases in the Second Circuit).

13.     The U.S. Trustee believes, instead, that the propriety of the releases in this case are governed by vaguely articulated Constitutional principles.  *See* U.S. Trustee's Mot. at 15-18.  The U.S. Trustee's constitutional arguments are clearly wrong.  Among other things, on the subject of due process, the U.S. Trustee effectively ignores the substantial narrowing of the releases.  As the Court observed:  "Under the amended plan, it is now clear…that only holders of claims against the Debtors are being deemed to grant the shareholder release, and it is equally clear…that holders of such claims received due process notice…."  Bench Ruling at 113.[2]  But in any event, the U.S. Trustee's arguments provide no basis for disregarding *Metromedia*.  They are, at best, arguments it can seek to advance on appeal in the vain hope of overruling *Metromedia*.  A desire to overrule controlling precedent is not, however, an enumerated ground under 28 U.S.C. § 158(d).[3]

14.     The Appealing States take a similar tack to the U.S. Trustee, suggesting that there is no controlling precedent not because of the absence of a general rule, but because the Second Circuit has never addressed the ability to release a specific type of claim:  police power claims.  Appealing States' Mot. at 3.  But as stated above, the *Metromedia* rule admits of no exceptions for particular types of claims.  The appealing states may seek to contend on appeal that such an exception should be created, but at present there is none, and the *Metromedia* rule controls.

---

[2]  The Court's meticulous review of the factual predicates for approving the Shareholder Release is also instructive in addressing the Movants' argument that nonconsensual third-party releases are the subject of conflicting opinions among the lower courts in the Second Circuit.  The U.S. Trustee cites to *In re Aegean Marine Petroleum Network* 599, B.R. 717 (Bankr. S.D.N.Y. 2019) and *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017.  In fact, both of those cases explicitly recognized the controlling precedent in the Second Circuit, but declined to grant approval of the release on the facts of the case.  *See Aegean*, 599 B.R. at 727 ("The teaching of *Metromedia* is that releases should be given only when they are an important part of a reorganization.); *SunEdison*, 576 B.R at 463 ("[T]he Debtors have failed to demonstrate that the third party releases are appropriate under *Metromedia*.").

[3] Nor is there any reason to believe that a court will overrule *Metromedia*.  The Supreme Court has repeatedly declined to accept certiorari in similar circumstances, denying, as recently as 2020, a petition for review of a Third Circuit decision approving a non-consensual third-party release.  *See In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019), *cert. denied*, 140 S.Ct. 2805 (2020); *see also SE Prop. Holdings, LLC v. Seaside Eng'g & Surveying, Inc. (In re Seaside Eng'g & Surveying, Inc.)*, 780 F.3d 1070 (11th Cir. 2015), *cert. denied*, 577 U.S. 823 (2015).

15.     Finally, the Movants contend that the Court lacked jurisdiction to enter the third party releases.  *See, e.g.*, Appealing States' Mot. at 4.  But again, the Second Circuit has issued clear guidance on the scope of a Bankruptcy Court's jurisdiction to enter a third party release.  As the Court noted, "[t]he Second Circuit has extensively dealt with bankruptcy jurisdiction over actions to stay or prevent the assertion of third-party claims in bankruptcy cases."  Bench Ruling at 107.  The rule, reiterated and discussed at length in *Quigley*, is that "[b]ankruptcy jurisdiction is appropriate over third-party non-debtor claims that directly affect the *res* of the bankruptcy estate."  *Quigley*, 676 F.3d at 53 (citation omitted).  *Quigley*'s guidance provides the rule of decision here, and the only question is whether the Court, on the facts presented, correctly applied the law.  It surely did, but even if it did not, there can be no real dispute as to the governing legal standard.

## II.     Direct Certification is not Necessary to the Advancement of Jurisprudence and does not Raise a Question of Pure Law

16.     28 U.S.C. § 158(d)(2)(A)(i) provides for direct certification where the appeal "involves a matter of public importance."  The term "public importance" is not defined in the statute, but courts are unanimous in requiring something beyond the notoriety of the underlying case.  As stated by Collier, "[t]he bar for certification under this standard should be set high.  A 'matter of public importance' should transcend the litigants and involve a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case."  *See* 1 Collier on Bankruptcy ¶ 5.06[4][b] (16th ed. 2019); *see also Gen. Motors Corp.*, 409 B.R. at 28 ("Certainly, many people would agree that GM's *well-being* is a matter of public importance; that's one of the reasons why the U.S. Treasury and EDC put billions of dollars at risk

to keep GM alive.  But what the statute requires is that the judgment, order, or decree involves *a question of law.*" (citations omitted, emphasis in the original)).

17.     Although these cases are unquestionably of great importance to the millions of individuals who have suffered through the opioid crisis and to the communities in which they live, the inquiry for direct certification is far more antiseptic – whether the appeal is important from a jurisprudential perspective.   As such, direct certification is inappropriate under the "public importance" prong where a ruling from the court of appeals is not necessary to advance jurisprudence or where the court of appeals must review the lower court's factual findings.  As discussed above, the legal standards implicated by the appeals are subject to controlling Second Circuit precedent.  Moreover, in accordance with the fact-intensive standard required under these precedents, the Court undertook an exhaustive review of the record in approving the Shareholder Releases as part of the Plan.  Thus, the Court should decline to grant direct certification under the "public importance" prong of 28 U.S.C. § 158(d)(2)(A)(i).

### A.    *Advancement of Jurisprudence*

18.     As correctly stated by the Movants, it is widely recognized that "[p]ublic importance exists when the matter on appeal transcends the litigants and involves a *legal question* the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Mark IV Indus. Inc., v. N.M. Env't Dep't*, 452 B.R. 385, 388-89 (S.D.N.Y. 2011) (emphasis added) (citing *Am. Home Mortg. Inv. Corp. v. Lehman Bros. Inc. (In re Am. Home Mortg. Inv. Corp.*), 408 B.R. 42, 44 (D. Del. 2009)); *see also Travelers Indem. Co. v. Common Law Settlement Counsel (In re Johns-Manville Corp.)*, 449 B.R. 31, 34 (S.D.N.Y. 2011).

19.     However, in their Certification Motions the Movants conflate the importance of the opioid crisis with the jurisprudential importance of the issues on appeal.  For example, the U.S.

Trustee refers extensively to the human and monetary cost of the opioid crisis as evidence of "public importance." *See* U.S. Trustee's Mot. at 21-22.[4]  The Appealing States assert that it is "self-evident" that the appeal is a matter of public importance, in light of the billions of dollars at stake, the complex corporate structure of the entities reorganizing, and the Plan's non-consensual releases.  These conclusory statements fail to carry the Movants' burden to demonstrate that a direct appeal will "advance the cause of jurisprudence to a degree that is usually not the case." *Mark IV Indus. Inc.*, at 388-89.

20.    The Movants also seek to rely on the number of pending lawsuits against the Sacklers and the number of objectors to the Shareholder Releases, *see* U.S. Trustee's Mot. at 23, and the media coverage these cases have received.  *See* Appealing States' Mot. at 3.  These issues plainly do not "transcend the litigants," but instead concern the very specific circumstances of these cases that do not affect those not involved in these matters.  The only authority discussed by the Movants in support of a finding of "public importance" is *Springfield Hospital, Inc. v. Carranza (In re Springfield Hospital, Inc.)*, 618 B.R. 109, 118 (Bankr. D. Vt. 2020)).  In that case, the bankruptcy court recognized that "[s]imply because a matter is important to certain members of the public does not render it a matter of 'public importance' that meets the standard for direct certification." *Id.* at 117.  The court determined that a ruling from the Second Circuit on the issue of whether a debtor was eligible for the Payroll Protection Program was matter of public importance because it implicated "essential health care providers in their service area that play a crucial role in combatting Covid-19, and . . . two of the largest employers in their region." *Id.* at

---

[4] The U.S. Trustee also states that direct certification is necessary to combat "the Sackler Family's attempt to misuse the bankruptcy system to avoid future liability" raises long-standing problems inherent in the use of non-debtor releases in chapter 11 plans.  U.S. Trustee's Mot. at 30.  This argument is facially one that focuses on the litigants rather transcends them.

118.   This determination was done in the early months of the Covid-19 pandemic when access to the Payroll Protection Program was critical to the continued operation of a hospital and "the community's vital interest in continued access to health care services during a pandemic." *Id.* Here, the *legal* issues raised by the Movants do not rise to such a level.

21.    Indeed, to the extent that abatement of the opioid crisis constitutes "public importance" under the ambit of direct certification, this factor militates *against* granting the Certification Motions.   The "public" has overwhelmingly voted in support of the Plan. Implementation of the Plan will facilitate the transfer of billions of dollars from the Sackler family to opioid abatement programs as well to compensate the direct victims of the crisis.   Success on appeal will undo the Shareholder Settlement, reset these cases to day one, and all but ensure years of continued litigation before any recovery is received by the public and the victims of the opioid crisis.   For this reasons, courts have declined to consider public importance purely as a question of dollars or public attention.   *See Mark IV Indus. Inc.*, 452 B.R. at 390 (declining to find dischargeability of environmental cleanup obligations as publicly important).

22.    At issue in the appeal, then, from the perspective of 28 U.S.C. § 158, is not the solution to a public health crisis, but the Movants' desire to have the Second Circuit revisit its ruling in *Metromedia* that permits non-consensual third-party releases in extremely limited circumstances and only after a painstaking finding of appropriate facts by a bankruptcy court.[5]  *See*

---

[5] The U.S. Trustee also argues that an increasing number of chapter 11 plans contain "some form of involuntary third-party release."  U.S. Trustee Mot. at 23.  However, other courts confronted with similar arguments have declined to find a basis for certification.  *See e.g.*, *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 43-44 (D. Del. 2009) (denying motion for direct certification despite argument that appeal could implicate future bankruptcy filings and global markets); *and In re Aerogroup Int'l Inc.*, 2020 U.S. Dist. LEXIS 25927, at *15, 16 (declining to certify a direct appeal notwithstanding the argument by the appellant that similar § 363 sales are routine and that clarification on the legal standard would benefit other litigants).

*In re General Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009) (holding that in light of a

controlling circuit decision "deciding [the issue] again is not a matter of public importance").

### B.      Mixed Question of Law and Fact

23.      Additionally, mixed questions of law and fact generally do not constitute a matter

of public importance." *Polk 33 Lending, LLC v. THL Corp. Fin., Inc. (In re Aerogroup Int'l Inc.)*,

C.A. No. 19-648 (MN), 2020 U.S. Dist. LEXIS 25927, at *14 (D. Del. Feb. 14, 2020); *see also*

*Jaffe v. Samsung Elecs. Co. (In re Qimonda AG)*, 470 B.R. 374, at 385 (E.D. Va. 2012). This

Court's rulings on the issues raised in the appeals constitute mixed questions of law and fact that

cannot constitute matters of public importance for the purpose of direct certification. *In re Am.*

*Home Mortg. Inv. Corp.*, 408 B.R. at 44 (citing *Weber v. United States Tr.*, 484 F.3d 154, 158 (2d

Cir. 2007). As observed by the Second Circuit:

> Congress believed direct appeal would be most appropriate where we are
> called upon to resolve a question of law not heavily dependent on the
> particular facts of a case, because such questions can often be decided based
> on an incomplete or ambiguous record.

*Weber*, 484 F.3d at 158. *See In re Gen. Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009)

("Certainly, many people would agree that GM's *well-being* is a matter of public importance; that's

one of the reasons why the U.S. Treasury and EDC put billions of dollars at risk to keep GM alive.

But what the statute requires is that the judgment, order, or decree involves *a question of law*.")

(citations omitted, emphasis in the original).

24.      Although the Movants may attempt to cast their issue on appeal as one of a question

of pure law, i.e., whether the Shareholder Release may release state police power claims (in the

case of the Appealing States) or whether the Shareholder Release extinguishes "direct non-debtor

claims against other non-debtors without compensation or consent and without the opportunity to

be heard" (in the case of the U.S. Trustee) (U.S. Trustee's Mot. at 15), these issues will require the Second Circuit to undertake a review of the exhaustive fact finding conducted by the Court.

25.     Before granting a third-party release, *Metromedia* requires a court to make factual findings that "truly unusual circumstances render the release terms important to success of the plan" in approving nonconsensual third-party releases. *Metromedia*, 416 F.3d at 143. The Court's findings in this regard were extensive, covering, among other things, the interrelated nature of the Plan settlements, the overwhelming creditor support for the releases, the complexity and extent of the litigation, the magnitude of the consideration provided, and the infeasibility and disastrous consequences of other alternatives. *See, e.g.*, *Findings of Fact, Conclusions of Law, and Order Confirming Twelfth Amended Jointed Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [Dkt. No. 3787] at 27-31.

26.     The record evidence supporting the Court's conclusions is even more voluminous. Multiple witnesses testified at great length (and with little meaningful cross-examination) as to the negotiation of the releases and their importance and necessity to the success of the Plan. Further, the Court's rulings rested upon the sound application of those facts to the law, *see* Bench Ruling at 112-57, including with respect to issues of due process, notice, bankruptcy court authority, jurisdiction, and asserted sovereign police powers. Accordingly, direct certification to the Second Circuit is inappropriate.

### III.    A Direct Appeal Will Not Materially Advance These Cases

27.     28 U.S.C. § 158(d)(2)(A)(iii) provides for direct certification where "an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken." In the Certification Motions, the Movants appear to

confuse advancement of their appeal with the advancement of these bankruptcy cases.[6]  However,

advancement of an appeal is irrelevant in determining whether direct certification is appropriate –

direct certification will almost always materially advance an appeal.  Instead, "certification may

be sought under section 158(d)(2)(A)(iii) on the ground that an immediate appeal will advance the

progress of the ***bankruptcy*** case itself." 1 Collier on Bankruptcy ¶ 5.06[4][d] (16th ed. 2019)

(emphasis in original).

28.    Here, the District Court stands ready to rule expeditiously on the issues raised on

appeal, having emphasized at an October 12 status conference that she is "going to move this

thing."  At that conference, Judge McMahon set an expedited briefing schedule that will culminate

in oral argument on the merits on November 30, 2021.  A direct appeal to the Second Circuit has

no such certainty.  If this Court were to certify the appeals, briefing on certification would then

move to the Second Circuit.  The Second Circuit would then decide, on its own schedule, whether

or not to take the case – and only then would briefing on the merits begin.  There is no sure way

of predicting how this timeline would play out, but one thing appears certain:  there is no possibility

that the Second Circuit will hear argument on the merits on anything like the expedited timeframe

that Judge McMahon has set.  Moreover, certification now, after Judge McMahon has set a briefing

schedule, can only lead to duplication.  Judge McMahon made clear that briefing will proceed

before her unless and until the Second Circuit accepts a direct appeal, giving rise to the prospect

that briefing before the District Court could be well advanced, if not complete, only to have the

---

[6] *See* Appealing States' Mot. at 5 ("Many appellants, including many of the States, have sought a stay pending appeal predicated upon their undertaking to seek a resolution of the appeal as promptly as possible.  A direct appeal will significantly reduce the period of time such a stay would need to be in effect."); U.S. Trustee's Mot. at 26 ("The importance of affording relief to victims of the opioid crisis and implementation of additional abatement measures weighs in favor of direct review because clear guidance from the Circuit will allow all parties to structure a resolution to furnish relief while allowing the countless (and uncounted) victims who—without their consent—will have their claims against non-debtors forever barred to be granted meaningful review of their rights.").

Second Circuit whisk the case away.  This sort of "ping-ponging" between the courts "would only serve to delay resolution of that appeal, not advance the litigation." *Sabine,* 2016 U.S. Dist. LEXIS 147710, at *7.[7]

29.      Accordingly, given the speed with which the District Court is prepared to move, and the Second Circuit's own observation that "district courts tend to resolve bankruptcy appeals faster than the courts of appeals . . .the cost in speed of permitting district court review will likely be small," certification for direct appeal will not materially advance these cases.  *Weber*, 416 F.3d at 160.

### Conclusion

WHEREFORE, for the foregoing reasons, the Ad Hoc Committee respectfully requests that the Court deny the Certification Motions.

---

[7] In addition, given the number of issues on appeal, direct certification is unlikely to materially advance these cases. Although the Movants attempt to cast their appeals as raising discrete issues suitable for direct certification, in fact, there are a number of issues on appeal, including the Court's finding under the various subsections of section 1129 of the Bankruptcy Code.

.

Dated:  October 13, 2021                          Respectfully submitted,

                                                  /s/ *Kenneth H. Eckstein*
                                                  Kenneth H. Eckstein
                                                  Rachael Ringer
                                                  David E. Blabey Jr.
                                                  Joseph A. Shifer
                                                  KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                                  1177 Avenue of the Americas
                                                  New York, NY 10036
                                                  Telephone: (212) 715-9100
                                                  Email: keckstein@kramerlevin.com
                                                          rringer@kramerlevin.com
                                                          dblabey@kramerlevin.com
                                                          jshifer@kramerlevin.com

                                                  Scott D. Gilbert (admitted *pro hac vice*)
                                                  Craig Litherland (admitted *pro hac vice*)
                                                  Kami E. Quinn (admitted *pro hac vice*)
                                                  GILBERT LLP
                                                  100 New York Ave, NW, Suite 700
                                                  Washington, D.C. 20005
                                                  Telephone: (202) 772-2200
                                                  Email: gilberts@gilberlegal.com
                                                          litherlandc@gilbertlegal.com
                                                          quinnk@gilbertlegal.com

                                                  David J. Molton
                                                  Steven D. Pohl
                                                  BROWN RUDNICK LLP
                                                  7 Times Square
                                                  New York, NY 10036
                                                  Telephone: (212) 209-4800
                                                  Email: dmolton@brownrudnick.com
                                                          spohl@brownrudnick.com

                                                  Melanie L. Cyganowski
                                                  Jennifer S. Feeney
                                                  OTTERBOURG P.C.
                                                  230 Park Avenue
                                                  New York, NY 10169
                                                  Telephone: (212) 661-9100
                                                  Email: mcyganowski@otterbourg.com
                                                          jfeeney@otterbourg.com

                                                  *Attorneys for the Ad Hoc Committee*