**TARTER KRINSKY & DROGIN**
*Counsel for Ad Hoc Committee of NAS Children*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

## APPLICATION OF THE AD HOC COMMITTEE OF NAS CHILDREN FOR COMPENSATION PURSUANT TO SECTION 5.8(g) OF THE TWELFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PURDUE PHARMA L.P., ET AL. AND SECTION 1129(a)(4) OF THE BANKRUPTCY CODE

The Ad Hoc Committee of NAS Children (the "**NAS Committee**"), through its counsel,

Tarter Krinsky & Drogin LLP, hereby submits its application (this "**Application**") for

compensation for professional services rendered in the amount of $500,000.00 (the "**NAS PI Trust**

**Fees**") pursuant to: (a) *Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue*

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors shall include their affiliates and other entities under their control. The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Pharma L.P. and its Affiliated Debtors* (the "**Plan**")[2] [Docket No. 3726]; (b) *PI Trust Agreement*

(the "**PI Trust Agreement**") [Docket No. 3187, Ex. L]; (c) *NAS PI TDP* (the "**NAS PI TDP**", and

collectively with the PI Trust Agreement, the "**NAS PI Trust Documents**") [Docket No. 3665,

Ex. J]; (d) *Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended*

*Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* (the

"**Confirmation Order**" and collectively with the Plan and the NAS PI Trust Documents, the

"**NAS Fee Documents**") [Docket No. 3787]; and (e) section 1129(a)(4) of title 11 of the United

States Code (the "**Bankruptcy Code**").   In support of this Application, the NAS Committee

submits: (i) the declaration of Harold D. Israel (the "**Israel Declaration**," attached hereto as

Exhibit A); and (ii) the declaration of Scott R. Bickford (the "**Bickford Declaration**," attached

hereto as Exhibit B), both of which are incorporated herein by reference.   In further support of this

Application, the NAS Committee respectfully states as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the Southern District of New York (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core

proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.      The Debtors' Bankruptcy Cases and NAS PI Trust Fees**

3.      On September 15, 2019 (the "**Petition Date**"), the above-captioned debtors and

debtors-in-possession (the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code.

---

[2]      Capitalized terms used but not defined herein shall have the meaning given to such term in the Plan.

4.      On September 2, 2021, the Debtors filed the most recent version of the Plan.  On

September 17, 2021, the Court entered the Confirmation Order.

5.      Pursuant to the NAS Fee Documents, the NAS Committee is entitled to payment

of $500,000.00 in attorneys' fees.  Specifically, section 5.8(g) of the Plan provides, with respect

to the NAS Committee:

> **PI Claimant Costs and Expenses**. The Creditor Trustee of the PI
> Trust shall pay or reimburse, as applicable, the compensation, costs
> and fees of professionals that represented or advised the Ad Hoc
> Group of Individual Victims and the NAS Committee in connection
> with the Chapter 11 Cases, as and to the extent provided in the PI
> Trust Agreement and subject to Bankruptcy Court approval of such
> compensation, costs and fees as provided in the Confirmation Order.

Plan at ¶ 5.8(g).

6.      Further, the PI Trust Agreement provides that:

> The amount of the PI Trust Assets available to make settlement
> payments to Holders of Allowed PI Channeled Claims shall be
> subject to deductions for the Trust Expenses and other fees and
> expenses, including, but not limited to, (a) the Common Benefit
> Escrow/Common Benefit Fund assessments described in Section
> 2.8 hereof, and (b) the amount of fees and expenses of (i) the
> Trustee, (ii) the Claims Administrator, (iii) the Delaware Trustee,
> (iv) the Financial Advisor, (v) the Oversight Committee, (vi) the PI
> LRP Administrator, (vii) the professionals that have represented or
> advised and/or are representing or advising (A) the Ad Hoc Group
> of Individual Victims in connection with the Chapter 11 Cases and
> (B) the NAS Committee in connection with the Chapter 11 Cases,
> subject to the limitations set forth below, (viii) other employees of
> the PI Trust, and (ix) outside legal, financial, accounting,
> investment, auditing, forecasting, expert, and other consultants,
> advisors, and agents as the business of the PI Trust requires to carry
> out the terms of the PI Trust, the TDPs, the LRP Agreement, and
> this Trust Agreement. To the extent such fees and expenses were
> incurred prior to the Effective Date and were not paid by the PI
> Trust, the Trustee is authorized to pay or reimburse such fees and
> expenses from the PI Trust Assets as Trust Expenses…
> Notwithstanding anything herein to the contrary, (i) ***the amount of
> fees and expenses payable by the PI Trust to the professionals that***

> ***have represented or are representing the NAS Committee shall not
> exceed $500,000 in the aggregate*** …

<u>PI Trust Agreement</u> at § 2.7 (emphasis added).

7.      At the confirmation hearing, the Court ruled that it shall have oversight over the

NAS Committee's fees pursuant to section 1129(a)(4) of the Bankruptcy Code.  With respect to

attorneys' fees, the Confirmation Order provides:

> Professionals that are required to seek payment or reimbursement
> under Section 5.8(g) or (h) of the Plan of their compensation, costs
> and/or fees shall file with the Bankruptcy Court an application for
> approval of such compensation, costs and/or fees as "reasonable"
> under section 1129(a)(4) of the Bankruptcy Code (A) *first*, not later
> than thirty (30) days following the Confirmation Date, with respect
> to compensation, costs and/or fees incurred during the period prior
> to August 12, 2021 (the first day of the Confirmation Hearing), and
> (B) *second*, not later than thirty (30) days following the Effective
> Date, with respect to compensation, costs and/or fees incurred
> during the period of August 12, 2021 through and including the
> Effective Date. Such applications shall not be deemed an application
> for reasonable compensation for actual, necessary services by such
> professionals or reimbursement for actual, necessary expenses to be
> paid from the Estates, and neither section 330 of the Bankruptcy
> Code nor any of the Bankruptcy Rules, guidelines from the office of
> the U.S. Trustee, or other rules or guidelines applicable to fee
> applications shall apply. Each such application shall set forth the
> amount of compensation, costs and/or fees sought, provide a
> narrative basis for such compensation, costs and/or fees, and attach,
> as applicable, supporting documentation. A single application may
> cover one or more professionals that represented or advised an ad
> hoc group.

<u>Confirmation Order</u> at ¶ 6(b).

8.      The NAS Committee hereby submits this Application for the approval of the NAS

PI Trust Fees.

**B.      The Extraordinary Services Provided by the NAS Committee with respect to the NAS PI Trust Documents**

9.      As set forth in the uncontroverted and uncontested *Declaration of Scott R. Bickford, Esq. in Support of the Ad Hoc Committee of NAS Children's Reply to the United States Trustee's Objection to the Fee Settlements included in the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* (the "**Bickford Fee Declaration**") [Docket No. 3398],[3] the NAS Committee provided extensive services on behalf of its clients in connection with the Debtors' Chapter 11 Cases, including, for purposes of this Application, participating in numerous mediation sessions, the drafting of the NAS Fee Documents, and the confirmation hearing when it achieved the first of its kind distribution for the NAS Children.[4]

10.      As a preliminary matter, the NAS PI Trust Fees included in the PI Trust Agreement are substantially less than the fees the NAS Committee incurred to achieve the compromise (the "**PI-NAS Compromise**") that led to the creation of the NAS PI Claim subclass, including the $45 million to be distributed solely to the holders of NAS PI Claims pursuant to the separate NAS PI TDP (which resulted from the NAS Committee's zealous advocacy and perseverance), significantly improving the distribution to the NAS Children.[5]  Bickford Fee Decl. at ¶ 25.  Instead,

---

[3]      The Bickford Fee Declaration (which was entered into evidence during the confirmation hearing (see In re Purdue Pharma, L.P., Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.), August 17, 2021 Hr'g. Tr. at 164:5-25, 165:1-5 (admitting the Bickford Fee Declaration into evidence)) and the *Ad Hoc Committee of NAS Children's Reply to the United States Trustee's Objection to the Fee Settlements included in the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* (the "NAS Reply to UST Plan Objection") [Docket No. 3397] are fully incorporated herein by reference.

[4]      For the avoidance of doubt, this Application does not seek compensation for services provided by the NAS Committee in connection with the negotiating, preparing, and drafting of the NAS Monitoring Trust Documents described in the Bickford Fee Declaration or as counsel to two members of the Official Committee of Unsecured Creditors.

[5]      This fee equates to approximately 1% of the total consideration being provided to the NAS Children -- well below what is typically paid for the type of services that the NAS Committee provided to the NAS Children prior to and during the Debtors' cases.

the amount of the NAS PI Trust Fees were the byproduct of difficult negotiations with the Ad Hoc Committee of Individual Victims (the "**PI Ad Hoc**"). Id. at ¶ 22. A summary of the services provided by NAS Committee in connection with the NAS Fee Documents are as follows:

### i.    Mediation

11.     Pursuant to the *Order Appointing Mediators* (the "**Mediation Order**") [Docket No. 895], the NAS Committee was designated as a "Mediation Party." In its role as a Mediation Party, the NAS Committee and its advisors spent hundreds, if not thousands, of hours preparing for and attending numerous mediation sessions. See Bickford Fee Decl. at ¶ 22. The NAS Committee's participation was twofold – seeking funding for an NAS abatement plan to assist those who are often beyond the reach of governmental entities and negotiating compensation for the NAS personal injury victims. Id. These efforts resulted in the NAS PI Trust Documents (as well as the NAS Monitoring Trust Documents).

12.     The NAS Committee's initial focus was to educate the Mediators (as defined in the Mediation Order) and the Mediation Parties about NAS and injuries caused by in utero opioid exposure and the need for the NAS abatement plan. Id. at ¶ 23. The NAS Committee, with the assistance of its experts:

    a.  Prepared videos and other presentation materials;

    b.  Developed an extensive library of medical and scientific research, government legislation, policies, and programs pertaining to NAS;

    c.  Reviewed a substantial number of scientific journal articles on the topics of NAS, treatment of NAS, and maternal substance abuse during pregnancy and at the time of childbirth;

    d.  Researched genetic predispositions to addiction in addition to the long-term effects of opioid use, including changes in behavior and neural function as well as mitochondrial abnormalities;

    e.  Scoured the scientific literature for information pertaining to specific opioid medications and their effects on human health and bodily function; and

      f.   Researched scientific literature analyzing the treatment of opioid addiction and NAS. This research was not limited to contemporary scientific literature; rather, literature available at the time pharmaceutical companies began distributing opioid medications was also reviewed.

<u>Id.</u>

        ii.      **Disclosure Statement Objection and NAS Reply to UST Objection**

13.     On April 26, 2021, the NAS Committee filed its *Limited Objection to the Disclosure Statement and Solicitation Procedures Motion* [Docket No. 2746] (the "**NAS DS Objection**"), in which the NAS Committee advocated for, among other things, a separate class for the NAS Children, with a separate pool of money for the NAS Children, and a separate TDP for the NAS Children (all of which were achieved in the Plan).

14.     Despite participating in countless mediation sessions, until May, 2021, the NAS Committee was unable to achieve any meaningful progress in its efforts to provide a recovery for the NAS Children.  <u>See</u> <u>Bickford Fee Decl.</u> at ¶ 25.  Prior to the PI-NAS Compromise, the NAS Committee proposed numerous proposals (including TDPs) to the mediators and the PI Ad Hoc, none of which were acceptable, as evidenced by the *Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P. and its Affiliated Debtors* filed on March 15, 2021 [Docket No. 2487], the *First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P. and its Affiliated Debtors* filed on April 23, 2021 [Docket No. 2731], and the *Second Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P. and its Affiliated Debtors* filed on May 7, 2021 [Docket No. 2823].  The vast majority of NAS Children would not have received a distribution under the complex scoring grid described in the disclosure statement accompanying each of the first three versions of the plan and any NAS Children that did qualify would have mostly likely received the lowest gross distribution, $3,500.  <u>See</u> <u>Bickford Fee Decl.</u> at ¶ 25.

15. The NAS Committee was left with little choice but to file the NAS DS Objection to highlight the disparity of treatment between the opioid use disorder victims and the NAS Children.

16. The NAS Committee, as evidenced by the *Third Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P. and its Affiliated Debtors* [Docket No. 2904] (the "**Third Amended Plan**"), filed on May 24, 2021 (after the commencement of the Disclosure Statement hearing), was able to achieve each of its primary objectives. The NAS Committee thus withdrew the NAS DS Objection that same day. See Docket No. 2903.

17. In summary, the PI-NAS Compromise forged by the NAS Committee was among the hardest fought, most contentious negotiations among the private claimants during the case, evidenced by the fact that it was not agreed to until the filing of the Third Amended Plan.

18. Thereafter, on July 19, 2021, the United States Trustee filed its *Objection of United States Trustee to Sixth Amended Joint Chapter 11 Plan of Purdue Pharma, L.P. and its Affiliated Debtors* (the "**UST Objection**") [Docket No. 3256], which included an objection to the NAS PI Trust Fees.

19. In response, the NAS Committee prepared and filed the NAS Reply to UST Plan Objection, indicating support for the Plan and justifying the proposed fees to be paid under the NAS Fee Documents.

### iii. The NAS PI Trust Documents

20. The NAS Committee drafted and revised numerous versions of the PI Trust Agreement, the PI TDP (prior to the PI-NAS Compromise) and NAS PI TDP and met countless times with the PI Ad Hoc to negotiate the PI Trust Agreement and, prior to the PI-NAS Compromise, the PI TDP. It also drafted and negotiated the NAS PI TDP.

21.     Under the confirmed Plan and NAS PI Trust Documents, all NAS Children who have been diagnosed with NAS by a licensed medical provider are entitled to a recovery under the Plan.  See Disclosure Statement at p. 11.  Those satisfying this comparatively light burden are expected to be allocated approximately a gross $7,000 per claimant, before deductions and holdbacks for costs, fees, and expenses (instead of nothing or, potentially, $3,500 before the same deductions under the first three versions of the plan).  Id.

> #### iv.     **Attending Hearings to Approve Disclosure Statement and Confirmation Hearing**.

22.     In connection with the NAS Fee Documents, NAS Committee attorneys attended numerous hearings to approve the Disclosure Statement.  The NAS Committee's support and cooperation with respect to the Disclosure Statement played a significant part in the confirmation process.

23.     Further, NAS Committee counsel attended the confirmation hearings in order to ensure that its constituents were represented and that its rights were not infringed upon.

> #### v.     **NAS Fee Request**

24.     The NAS Committee is seeking payment of its fees as follows:

| FIRM | AMOUNT |
|---|---|
| Levenfeld Pearlstein, LLC | $250,000.00 |
| Martzell, Bickford & Centola | $250,000.00 |
| **TOTAL** | **$500,000.00** |

## RELIEF REQUESTED

25.     Pursuant to the Application, the NAS Committee requests approval of the NAS PI Trust Fees under section 5.8 of the Plan and section 1129(a)(4) of the Bankruptcy Code, as required by the Confirmation Order.

## BASIS FOR RELIEF

26.    Section 1129(a)(4) of the Bankruptcy Code provides that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4).

27.    "The requirements under [section] 1129(a)(4) are two-fold.  First, there must be disclosure.  Second, the court must approve of the reasonableness of payments." In re J. Reg. Co., 407 B.R. 520, 537 (Bankr. S.D.N.Y. 2009) (quoting 7 Collier on Bankruptcy at ¶ 1129.03[4]). Section 1129(a)(4) of the Bankruptcy Code "has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval by a bankruptcy court for reasonableness."  In re Sabine Oil & Gas Corp., 555 B.R. 180, 313 (Bankr. S.D.N.Y. 2016).

28.    Moreover, this section "is designed to insure compliance with the policies of the Code that: (1) the bankruptcy court should police the awarding of fees in title 11 cases and (2) holders of claims and interests should have the benefit of such information as might affect the claimants' decision to accept or reject the plan."  In re Future Energy Corp., 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988).

29.    As one court in this district has noted,

> the issue of reasonableness will clearly vary from case to case and, among other things, will hinge to some degree upon who makes the payments at issue, who receives those payments, and whether the payments are made from assets of the estate. In the typical case, payments that are not payable from, or reimbursable by, the bankruptcy estate should not engender anything like the judicial scrutiny devoted to those that are payable out of the bankruptcy

> estate ... Bankruptcy courts ... should be chary about succumbing to
> the exhortations litigants to turn 1129(a)(4) into a mandate for an
> expensive and unnecessary inquiry.

J. Reg. Co., 407 B.R. at 537–38 (quoting Mabey v. Southwestern Elec. Power Co. (In re Cajun

Elec. Power Coop., Inc.), 150 F.3d 503, 517 (5th Cir.1998).

30.     Few courts have determined "reasonableness" under the open-ended language of

section 1129(a)(4) of the Bankruptcy Code.  However, courts in the Second Circuit generally use

the "lodestar" method in determining whether fees are reasonable.  In re Relativity Fashion, LLC,

565 B.R. 50, 67 (Bankr. S.D.N.Y. 2017).  "The lodestar method evaluates the reasonableness of

an attorney fee by considering the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate."  Id. (internal quotation omitted).  Moreover, "the fact that

the fees were incurred to increase one's share of the pie, or some other private agenda, in the

absence of more, is insufficient by itself to make a creditor group's fees unreasonable."  In re

Adelphia Commc'ns Corp., 441 B.R. 6, 19 (Bankr. S.D.N.Y. 2010).  The Court also indicated that

the lodestar method should be used when evaluating the NAS PI Trust Fees.  See In re Purdue

Pharma, L.P., Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.), August 27, 2021 Hr'g. Tr. at

75:19-24 ("It's really just a loadstar, you know, looking at the hours.  If you did really good work,

but it turns out that the hours were five times as much than a normal firm would make to do that

good work, then that's a problem. On the other hand, you get a gold star if it's actually one-half the

time.").

31.     Given the foregoing, and in light of the services provided by NAS Committee

counsel, the NAS Committee submits that the NAS PI Trust Fees are reasonable based on the

circumstances of these Chapter 11 Cases.

## THE SERVICES PROVIDED BY NAS COMMITTEE COUNSEL SATISFY
## <u>SECTION 1129(a)(4) OF THE BANKRUPTCY CODE</u>

32.     Section 1129(a)(4) of the Bankruptcy Code first requires that the fees requested be disclosed to all creditors.  The NAS PI Trust Fees were disclosed extensively throughout the Disclosure Statement, the document intended to give creditors an overview of the Plan provisions.  See <u>Disclosure Statement</u> at pp. 10-11, 107, 119, 124, 191, 229, 235-37.  These fees were also disclosed by the Debtors in numerous places in the Plan and PI Trust Agreement.  Thus, the NAS PI Trust Fees meet the disclosure requirements of section 1129(a)(4).

33.     Section 1129(a)(4) of the Bankruptcy Code next requires that the fees sought be "reasonable."  11 U.S.C. § 1129(a)(4).  The NAS PI Trust Fees are reasonable based on the nature and extent of the services rendered, the size and complexity of these Chapter 11 Cases, the time, labor, and special expertise brought to bear on the issues resolved and other related factors.  During the Debtors' Chapter 11 Cases, the professional services performed by the NAS Committee were necessary and appropriate to protect the rights of the NAS Children, were in the best interests of the NAS Children, and were performed in an expeditious and efficient manner.  Accordingly, the NAS Committee submits that the NAS PI Trust Fees sought herein are reasonable within the meaning of section 1129(a)(4) of the Bankruptcy Code.

34.     As an initial matter, the reasonableness of the NAS Committee's fees, among others, were clearly and unambiguously acknowledged by Kenneth R Feinberg ("**<u>Mediator Feinberg</u>**") in his uncontroverted *Mediator's Report* (the "**<u>Final Mediator's Report</u>**") [Docket No. 3339] filed on July 28, 2021.  See <u>Final Mediator's Report</u> at ¶ 26 ("The fee settlements documented in the Plan are fair, reasonable, appropriate, and should be deemed to be an integral part of the Plan").

35.      Mediator Feinberg further concluded that the NAS PI Trust Fees were the result of "negotiations [that] covered many months, involved numerous creative and complicated proposals" and "are an integral and non-severable part of the overall settlements on allocation among public and private claimants."  Final Mediator's Report at ¶¶ 19, 21; see also Disclosure Statement at p. 20.

36.      To achieve the PI-NAS Compromise took thousands of hours of attorney and expert time, including with respect to: (a) attending mediation sessions; (b) drafting and negotiating of the NAS PI Trust Documents; (c) drafting the NAS DS Objection and the NAS Reply to UST Plan Objection; and (d) attending hearings to approve the Disclosure Statement and to confirm the Plan. See, e.g., Bickford Fee Decl. at ¶ 24.

37.      Moreover, as set forth in the declarations filed with this Application and below, the actual fees incurred by the NAS Committee exceeded the NAS Trust PI Fees with respect to the NAS PI Trust Documents.

38.      The following is summary of services rendered during the Chapter 11 Cases by each firm seeking compensation pursuant to this Application.  It is not intended to be a detailed description of the work performed, but rather to highlight certain of those areas in which services were rendered to the NAS Committee.

**A.      Levenfeld Pearlstein, LLC**

39.      Levenfeld Pearlstein, LLC ("**LP**") served as the NAS Committee's general bankruptcy counsel.  Israel Declaration at ¶ 3.  In connection with the Debtors' Chapter 11 Cases, LP was instrumental in negotiating, reviewing, and revising numerous documents related to the NAS PI Trust Documents, the Plan, and the Confirmation Order.  In addition, LP drafted the NAS DS Objection and NAS Reply to UST Plan Objection.  LP also prepared for and attended numerous

mediation sessions.  Id.  Lastly, LP attended hearings on the Disclosure Statement and confirmation of the Plan.

40.    For services rendered on behalf of the NAS Committee, LP is seeking compensation in the amount of $250,000.00. Although LP kept detailed time records for its Purdue common benefit work, LP did not originally separate its time by task (i.e. LP did not foresee the need to separate its time related to the NAS Monitoring Trust Agreement from its time spent related to the NAS PI Trust Documents). Id. at ¶ 4.  In connection with this Application, LP reviewed its time records and determined that it spent at least 784.1 total hours at a blended rate of $743.06 attending mediation sessions related to NAS personal injuries, drafting the NAS DS Objection and the NAS Reply to UST Plan Objection, reviewing and negotiating the terms of the NAS PI Trust Documents, the Plan and the Confirmation Order and attending numerous hearings related to the Disclosure Statement and confirmation of the Plan.  Id. at ¶ 5.   In connection with these services, LP incurred a total of not less than $582,712.75 in fees related to the NAS Fee Documents (significantly more than the $250,000 LP is requesting in this Application), broken down by category as follows:

| CATEGORY | MINIMUM NUMBER OF HOURS | BLENDED HOURLY RATE | MINIMUM TOTAL FEES |
|---|---|---|---|
| Preparing for and attending mediation sessions related to NAS personal injuries | 127.5 | $781.34 | $99,660.00 |
| Negotiating, reviewing, and revising numerous documents related to the to the NAS PI Documents, the Plan and the Confirmation Order | 254.10 | $814.57 | $206,981.50 |
| Drafting the NAS DS Objection and NAS Reply to UST Plan Objection | 328.2 | $672.10 | $220,618.25 |

| | | | |
|---|---|---|---|
| Attending hearings to approve the Disclosure Statement and confirm the Plan | 74.3 | $746.34 | $55,453.00 |
| **TOTAL** | **784.1** | **$743.06** | **$582,712.75** |

Id.

41.     The fees sought herein are billed at rates accepted by the NAS Committee and are comparable to similarly-situated professionals with similar experience and skill.  Id. at ¶ 6.  The foregoing does not include time and expenses related to the NAS Monitoring Trust or any other tasks described in the Bickford Fee Declaration.  Id. at ¶ 7.  Further, LP's actual hours spent on the above tasks likely exceed the amount set forth on the above chart.  Id. at ¶ 8.

42.     For the foregoing reasons, LP's fees incurred representing the NAS Committee are reasonable and should be approved pursuant to section 1129(a)(4) of the Bankruptcy Code and the Confirmation Order.

### B.  Martzell, Bickford & Centola

43.     Martzell, Bickford & Centola ("**MBC**") served as lead litigation counsel to the NAS Committee.  Bickford Declaration at ¶ 3.  In connection with the Debtors' Chapter 11 Cases, MBC was instrumental in drafting numerous documents related to the Plan and the NAS PI Trust Documents, in addition to preparing for and attending numerous mediation sessions and presenting to the Mediation Parties.  Id.

44.     For services rendered on behalf of the NAS Committee, MBC is seeking compensation in the amount of $250,000.00.  Although MBC kept detailed time records for its Purdue common benefit work, MBC did not originally separate its time by task (*i.e.* MBC did not foresee the need to separate its time related to the NAS Monitoring Trust Agreement from its time spent related to the NAS PI Trust Documents).  Id. at ¶ 4.  However, for purposes of this Application, MBC reviewed its time records and, in connection with attending mediation sessions

related to NAS personal injuries, preparing and negotiating the terms of the NAS PI Trust Documents, reviewing and revising the NAS DS Objection and NAS Reply to UST Plan Objection, and attending numerous hearings related to the Disclosure Statement and confirmation of the Plan, MBC billed a total of not less than 1,222 hours for $694,000.00 in fees (significantly more than the $250,000 MBC is requesting in this Application) at a blended rate of $567.92. Id. at ¶ 5.

45.     The fees sought herein are billed at rates customarily employed by MBC and generally accepted by MBC's clients. Id. at ¶ 6. The foregoing does not include time and expenses related to the NAS Monitoring Trust or any other tasks described in the Bickford Fee Declaration. Id. at ¶ 7. Further, MBC's actual hours spent on the above tasks likely exceed the amount set forth on the above chart. Id. at ¶ 8.

46.     For the foregoing reasons, MBC's fees incurred representing the NAS Committee are reasonable and should be approved pursuant to section 1129(a)(4) of the Bankruptcy Code and the Confirmation Order.

47.     Accordingly, the NAS PI Trust Fees are reasonable and should be awarded in connection with the NAS Fee Documents.

**RESERVATION OF RIGHTS**

48.     Although every effort has been made to include all fees and expenses incurred during the Chapter 11 Cases, some fees and expenses may not be included in this Application due to delays caused in connection with accounting and processing of such time and expenses, or otherwise missing time that should have been included in the above-referenced categories. Accordingly, the NAS Committee reserves the right to further supplement this Application to include additional fees incurred during the Chapter 11 Cases, but not included herein. In addition,

the NAS Committee and its counsel further reserve the right to supplement or provide any documentation reasonably requested by the Court or the U.S. Trustee, in any manner or fashion that may be required.

## NO PRIOR REQUEST

49.     No prior request for the relief sought in this Application has been made to this or any other court.

## CONCLUSION

50.     The services rendered by NAS Committee counsel during the Chapter 11 Cases were reasonable within the meaning of section 1129(a)(4) of the Bankruptcy Code and this Application complies with the requirements of the Confirmation Order.  Accordingly, the NAS Committee requests that the Court approves the Application.

**WHEREFORE**, the NAS Committee respectfully requests that the Court enter an Order: (a) granting final allowance and payment of the NAS PI Trust Fees in the amount of $500,000.00; (b) authorizing and directing the payment of the NAS PI Trust Fees pursuant to the NAS Fee Documents; and (c) granting such other and further relief as may be proper.

Dated: October 18, 2021
New York, New York

**TARTER KRINSKY & DROGIN LLP**
*Counsel for Ad Hoc Committee of NAS Children*

By:      /s/Scott S. Markowitz

Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.

Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

**MARTZELL, BICKFORD & CENTOLA**
Scott R. Bickford (LA 1165)
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
sbickford@mbfirm.com
srd@mbfirm.com
usdcndoh@mbfirm.com

**LEVENFELD PEARLSTEIN, LLC**
Harold D. Israel
2 North LaSalle St., Suite 1300
Chicago, Illinois 60602
Telephone: 312-346-8380
Facsimile: 312-346-8434
hisrael@lplegal.com

## EXHIBIT A

Israel Declaration

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**DECLARATION OF HAROLD D. ISRAEL IN SUPPORT OF APPLICATION OF THE
AD HOC COMMITTEE OF NAS CHILDREN FOR COMPENSATION PURSUANT TO
SECTION 5.8(g) OF THE TWELFTH AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS**

I, Harold D. Israel, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury
as follows:

1.       I am a partner at Levenfeld Pearlstein, LLC ("**LP**"), which maintains an office for
the practice of law at 2 North LaSalle Street, Suite 1300, Chicago, Illinois 60602. I am an attorney,
duly admitted and in good standing to practice law in the State of Illinois and the United States
District Court for the Northern District of Illinois, among other federal courts. Unless otherwise
stated, I have personal knowledge of the facts stated in this declaration.

2.       I have reviewed the *Application of the Ad Hoc Committee of NAS Children for
Compensation Pursuant to Section 5.8(g) of the Twelfth Amended Joint Chapter 11 Plan of*

---

[1]       The Debtors in these cases, along with the last four digits of each Debtor's registration number in the
applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC
Pharma Inc. (4014). The Debtors shall include their affiliates and other entities under their control. The Debtors'
corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* (the "<u>Application</u>").[2]  To the best of my knowledge, information, and belief, the statements contained in the Application related to LP are true and correct.

3.      LP served as the NAS Committee's general bankruptcy counsel.  In connection with the Debtors' Chapter 11 Cases, LP was instrumental in negotiating, reviewing, and revising numerous documents related to the NAS PI Trust Documents, the Plan, and the Confirmation Order.  In addition, LP drafted the NAS DS Objection and NAS Reply to UST Plan Objection.  LP also prepared for and attended numerous mediation sessions.   Lastly, LP attended hearings on the Disclosure Statement and confirmation of the Plan.

4.      For services rendered on behalf of the NAS Committee, LP is seeking compensation in the amount of $250,000.00.  Although LP kept detailed time records for its Purdue common benefit work, LP did not originally separate its time by task (*i.e.* LP did not foresee the need to separate its time related to the NAS Monitoring Trust Agreement from its time spent related to the NAS PI Trust Documents).

5.      In connection with this Application, LP reviewed its time records and determined that it spent at least 784.1 total hours at a blended rate of $743.06 attending mediation sessions related to NAS personal injuries, drafting the NAS DS Objection and the NAS Reply to UST Plan Objection, reviewing and negotiating the terms of the NAS PI Trust Documents, the Plan and the Confirmation Order and attending numerous hearings related to the Disclosure Statement and confirmation of the Plan.  In connection with these services, LP incurred a total of not less than $582,712.75 in fees related to the NAS Fee Documents (significantly more than the $250,000 LP is requesting in this Application), broken down by category as follows:

---

[2]        Capitalized terms used but not defined herein shall have the meaning given to such term in the Application.

| CATEGORY | MINIMUM NUMBER OF HOURS | BLENDED HOURLY RATE | MINIMUM TOTAL FEES |
|---|---|---|---|
| Preparing for and attending mediation sessions related to NAS personal injuries | 127.5 | $781.34 | $99,660.00 |
| Negotiating, reviewing, and revising the terms of the NAS PI Trust Documents, the Plan and the Confirmation Order | 254.10 | $814.57 | $206,981.50 |
| Drafting the NAS DS Objection and NAS Reply to UST Plan Objection | 328.2 | $672.10 | $220,618.25 |
| Attending hearings to approve the Disclosure Statement and confirm the Plan | 74.3 | $746.34 | $55,453.00 |
| **TOTAL** | **784.1** | **$743.06** | **$582,712.75** |

6.      The fees sought herein are billed at rates accepted by the NAS Committee and are comparable to similarly-situated professionals with similar experience and skill.

7.      The foregoing does not include time and expenses related to the NAS Monitoring Trust or any other tasks described in the Bickford Fee Declaration.

8.      LP's actual hours spent on the above tasks likely exceed the amount set forth on the above chart.

I certify under penalty of perjury under the laws of the United States that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: October 18, 2021                          Respectfully submitted,

                                                 /s/ Harold D. Israel
                                                 Harold D. Israel

**EXHIBIT B**

Bickford Declaration

{Client/085978/1/02513827.DOCX;1 }

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**DECLARATION OF SCOTT R. BICKFORD IN SUPPORT OF APPLICATION OF THE
AD HOC COMMITTEE OF NAS CHILDREN FOR COMPENSATION PURSUANT TO
SECTION 5.8(g) OF THE TWELFTH AMENDED JOINT CHAPTER 11 PLAN OF
<u>REORGANIZATION OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS</u>**

I, Scott R. Bickford, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury

as follows:

1.      I am a partner at Martzell, Bickford & Centola ("**MBC**"), which maintains an office

for the practice of law at 338 Lafayette Street New Orleans, LA 70130.  I am an attorney, duly

admitted and in good standing to practice law in the States of Louisiana, Texas, and Colorado and

the United States District Courts for the Eastern, Western, and Middle Districts of Louisiana,

among other federal courts.  Unless otherwise stated, I have personal knowledge of the facts stated

in this declaration.

2.      I have reviewed the *Application of the Ad Hoc Committee of NAS Children for*

*Compensation Pursuant to Section 5.8(g) of the Twelfth Amended Joint Chapter 11 Plan of*

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors shall include their affiliates and other entities under their control. The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

{Client/085978/1/02513827.DOCX;1 }

*Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* (the "**Application**").[2]  To the best of my knowledge, information, and belief, the statements contained in the Application related to MBC are true and correct.

3.      MBC served as lead litigation counsel to the NAS Committee.  In connection with the Debtors' Chapter 11 Cases, MBC was instrumental in drafting numerous documents related to the Plan and the NAS PI Trust Documents, in addition to preparing for and attending numerous mediation sessions and presenting to the Mediation Parties.

4.      For services rendered on behalf of the NAS Committee, MBC is seeking compensation in the amount of $250,000.00.  Although MBC kept detailed time records for its Purdue common benefit work, MBC did not originally separate its time by task (*i.e.* MBC did not foresee the need to separate its time related to the NAS Monitoring Trust Agreement from its time spent related to the NAS PI Trust Documents).

5.      However, for purposes of this Application, MBC reviewed its time records and, in connection with attending mediation sessions related to NAS personal injuries, preparing and negotiating the terms of the NAS PI Trust Documents, reviewing and revising the NAS DS Objection and NAS Reply to UST Plan Objection, and attending numerous hearings related to the Disclosure Statement and confirmation hearings, MBC billed a total of not less than 1,222 hours for $694,000.00 in fees (significantly more than the $250,000 MBC is requesting in this Application) at a blended rate of $567.92.

6.      The fees sought herein are billed at rates customarily employed by MBC and generally accepted by MBC's clients.

---

[2]      Capitalized terms used but not defined herein shall have the meaning given to such term in the Application.

7.      The foregoing does not include time and expenses related to the NAS Monitoring Trust or any other tasks described in the Bickford Fee Declaration.

8.      MBC's actual hours spent on the above tasks likely exceed the amount set forth on the above chart.

I certify under penalty of perjury under the laws of the United States that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: October 18, 2021                                    Respectfully submitted,

                                                          /s/ Scott R. Bickford
                                                          Scott R. Bickford