Sander L. Esserman, Esq.
Peter C. D'Apice, Esq.
STUTZMAN, BROMBERG, ESSERMAN &
   PLIFKA, A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Tel:    214-969-4900
Fax:    214-969-4999
esserman@sbep-law.com
dapice@sbep-law.com
*Counsel to the Native
American Tribe Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., et al.,<br>Debtors.[1] | Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |

### JOINDER OF NATIVE AMERICAN TRIBE GROUP
### TO AD HOC COMMITTEE'S OBJECTION TO STAY MOTIONS

The Native American Tribe Group incorporates herein and joins the Objection of the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants ("**AHC**") to the Motions for a Stay Pending Appeal.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

A grant of a stay would work particularized harm on Tribal governments because it threatens to delay the flow of funds from this bankruptcy to Native American Tribes across the country—funds which are necessary for Tribes to more effectively address the opioid epidemic which has had disproportionate impact on Tribal communities.

1,	The Native American Tribe Group is defined in the Plan as follows:

> "**Native American Tribe Group**" means the group consisting of the Muscogee (Creek) Nation, a member of the Ad Hoc Committee, the Cheyenne & Arapaho Tribes, an ex officio member of the Creditors' Committee, and other Tribes represented by various counsel from the Tribal Leadership Committee and the MDL Plaintiffs' Executive Committee.

Twelfth Amended Joint Chapter 11 Plan of Reorganization, Dkt. No. 3726 (Sept. 2, 2021) at 21. The Tribal Leadership Committee ("**TLC**") referenced in this definition was designated by the court in *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio) to coordinate the interests of all federally recognized Native American Tribal governments with cases in the MDL proceeding, including with regard to global resolution of opioid-related claims against the MDL Defendants, including the Debtor here. The TLC serves the interests of the 418 federally recognized Native American Tribal governments and 17 inter-tribal organizations with litigation pending before the MDL court. This represents over 70% of the 574 federally recognized Tribes in the United States and an estimated 85% of all Tribal citizens.

2.	The Native American population has suffered some of the worst consequences of the opioid epidemic of *any* population in the country. Indeed, American Indians suffer the *highest* per capita rate of opioid overdoses.[2] American Indians and Alaska Natives had the

---

[2] National Congress of American Indians Policy Research Center, *Reflecting on a Crisis Curbing Opioid Abuse in Communities* (Oct. 2016), http://www.ncai.org/policy-research-center/research-data/prc-publications/Opioid_Brief.pdf.

highest drug overdose death rates in 2015 and the largest percentage increase in the number of deaths over time from 1999-2015 compared to other racial and ethnic groups."[3]

3. Tribal governments across the United States have had to spend considerable tribal funds to cover the costs of the opioid crisis, including increased costs for health care, social services, child welfare, law enforcement and other governmental services that Tribal governments provide to their members. Tribes expend significant funds, in particular, to provide health care services to their members and communities; in the case of larger Tribes, these costs can amount to tens of millions of dollars each year. The burden of paying for these increased costs due to the opioid crisis has diverted scarce tribal funds from other needs, and has imposed severe financial burdens on Tribal governments (just as it has on state and local governments). And like those other governments, Tribes bear and will continue to bear significant costs related to abatement of the opioid addiction problem in their reservation communities.

4. For the foregoing reasons, there is an urgency in Indian country for funding from the Purdue bankruptcy estate to start flowing to Tribes in order to alleviate the pressing financial burden on Tribal governments caused by the opioid epidemic, and to provide an influx of new resources for meeting the ongoing needs for the health care and other governmental services that are required to abate the opioid epidemic on reservations across the country. The need for these funds to start flowing to Tribal communities as soon as possible is reflected in the fact that over 96 percent of the Native American Tribes who voted on the restructuring plan cast a vote in

---

[3] Statement by RADM Michael E. Toedt, MD, FAAFP, "Opioids in Indian Country: Beyond the Crisis to Healing the Community," March 14, 2018 Hearing Before the U.S. Senate Committee on Indian Affairs, *see* https://www.ihs.gov/sites/newsroom/themes/responsive2017/display_objects/documents/testimony/115/115th-Mar-14-2018.pdf

favor of the plan.  *Final Declaration of Christina Pullo,* Dkt. No. 3372 (Aug. 2, 2021) at Exh. A (Class 5 claims).

5.  The Plan provides for an "Effective Date" payment of $50 million to the Tribal Abatement Fund Trust ("**TAFT**") that is being established to distribute funding from the bankruptcy estate to the Tribes.  Plan at 13 (definition of "Initial Tribe Trust Distribution").  It is anticipated that substantially all of these funds will promptly flow to Tribal governments after receipt by the TAFT, thus providing Tribes with significant immediate resources to support abatement and remediation services for Tribal members suffering from opioid addiction, and for their families.

5.  Granting the stay requested by movants threatens to delay the payment of these funds to TAFT, and thus to the Tribal governments, for an uncertain but potentially extended period of time.  There is no question that any such delay in the flow of funds to Tribes will result in a commensurate delay in the ability of Tribes to provide health care to Tribal members suffering from opioid addiction, as well as to provide appropriate therapies and treatments, supportive social services and other abatement measures necessary to address the ongoing opioid crisis in Indian country.  Any such delay will result in a direct harm to Tribal members.

For the foregoing reasons, the Native American Tribal Group joins the Objection of the Ad Hoc Committee of Consenting Governments to the stay motions.

Respectfully submitted,

STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, A PROFESSIONAL CORPORATION

By: */s/ Sander L. Esserman*
Sander L. Esserman (admitted *pro hac vice*)
State Bar No. 06671500
Peter C. D'Apice
State Bar No. 05377783

169515-1

2323 Bryan Street, Suite 2200
Dallas, Texas 75201-2689
(214) 969-4986
(214) 969-4999 (facsimile)
esserman@sbep-law.com
dapice@sbep-law.com

Steven J. Skikos
Jane E. Joseph
SKIKOS, CRAWFORD, SKIKOS & JOSEPH LLP
One Sansome Street, Suite 2830
San Francisco, CA 94104
Telephone: (415) 546-7300
sskikos@skikos.com
jjoseph@skikos.com

T. Roe Frazer II
Frazer PLC
30 Burton Hills Blvd.
Suite 450
Nashville TN 37215
Telephone: (615) 647-6464
roe@frazer.law

Geoffrey D. Strommer
Caroline P. Mayhew
HOBBS, STRAUS, DEAN & WALKER LLP
215 SW Washington Street
Suite 200
Portland, OR 97204
Telephone: (503) 242-1745
gstrommer@hobbsstraus.com
cmayhew@hobbsstraus.com

Archie C. Lamb, Jr.
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Telephone: (850) 435-7068
alamb@levinlaw.com

Tara D. Sutton
ROBINS KAPLAN LLP
800 LaSalle Avenue
Suite 2800

Minneapolis, MN 55402
Telephone: (612) 349-8500
TSutton@RobinsKaplan.com

Donald J. Simon
Lloyd B. Miller
SONOSKY CHAMBERS SACHSE
ENDRESON & PERRY, LLP
1425 K Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 682-0240
dsimon@sonosky.com
lloyd@sonosky.net

**COUNSEL TO THE NATIVE AMERICAN TRIBE GROUP**

169515-1