**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| Purdue Pharma L.P., *et al.*, [1] | ) | Case No. 19-23649 (RDD) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

### THE AD HOC GROUP OF INDIVIDUAL VICTIMS'
### (I) OBJECTION TO THE UNITED STATES TRUSTEE'S AND
### CERTAIN PUBLIC CREDITORS' MOTIONS FOR STAY
### PENDING APPEAL AND (II) JOINDER IN THE OPPOSITION
### OF THE OFFICIAL COMMITTEE OF UNSECURED
### CREDITORS TO MOTIONS FOR STAY PENDING APPEAL

WHITE & CASE LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131
Tel.: (305) 371-2700
Fax: (305) 358-5744
Thomas E Lauria (admitted *pro hac vice*)
Laura L. Femino (admitted *pro hac vice*)

1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 819-8200
Fax: (212) 354-8113
J. Christopher Shore
Michele J. Meises
Alice Tsier
Amanda J. Wong

ASK LLP
60 East 42nd Street, 46th Floor
New York, New York 10165
Tel.: (212) 267-7342
Fax: (212) 918-3427
Edward E. Neiger
Jennifer A. Christian

*Co-Counsel for Ad Hoc Group of Individual*
*Victims of Purdue Pharma L.P., et al.*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 4

I.    The U.S. Trustee Cannot Exempt Other Parties from the Bond Requirement
      by Motioning on Their Behalf............................................................................... 4

II.   The Balance of Harms Mandates Denying the Movants' Motions for Stay
      Absent a Bond ...................................................................................................... 8

      A.    There Is No Evidence of Harm to the Movants if the Motions for Stay Are Denied ...... 8

      B.    Imposition of a Stay Would Irreparably Harm Personal Injury Victims ...................... 13

      C.    The Balance of Harms Precludes a Stay Absent a Bond................................................. 16

CONCLUSION...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACC Bondholder Group v. Adelphia Commc'ns. Corp. (In re Adelphia Commc'ns. Corp.)*,
    361 B.R. 337 (S.D.N.Y. 2007)................................................................................6, 12

*Alvenus Shipping Co., Ltd. v Delta Petroleum (U.S.A.) Ltd.*,
    876 F. Supp. 482 (S.D.N.Y. 1994)............................................................................16

*City of Akron v. Akron Thermal, Ltd. P'ship (In re Akron Thermal, Ltd. P'ship)*,
    414 B.R. 193 (N.D. Ohio 2009).................................................................................17

*Clonus Assocs. v. Dreamworks, LLC*,
    417 F. Supp.2d 248 (S.D.N.Y. 2005).........................................................................10

*In re Delphi Corp., et al.*,
    Case No. 05-4481 (RDD) (Bankr. S.D.N.Y. June 16, 2009)
    ...................................................................................................................................15

*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc.*
    *(In re Metromedia Fiber Network, Inc.)*,
    416 F.3d 136 (2d Cir. 2005).......................................................................................12

*In re Diaz*,
    No. 6:02-bk-05591-ABB,
    2011 Bankr. LEXIS 215 (Bankr. M.D. Fla. Jan. 25, 2011) .....................................17

*In re Ditech Holding Corp.*,
    Case No. 19-10412 (JLG), 2021 Bankr. LEXIS 1 (Bankr. S.D.N.Y. Jan. 2, 2021) ...............12

*In re Energy Future Holdings Corp. et al.*,
    Case. No. 14-10979 (CSS) (Bankr. D. Del. June 16, 2016) ....................................15

*In re EP Energy Corp., et al.*,
    Case No. 19-35654 (MI) (Bankr. S.D. Tex. March 24, 2020)
    ...................................................................................................................................15

*In re F.G. Metals, Inc.*,
    390 B.R. 467 (Bankr. M.D. Fla. 2008) .....................................................................14

*Fraterfood Serv. v. DDR Del Sol, LLC (In re Fraterfood Serv.)*,
    Nos. 14-00002 BKT, 15-00011 BKT,
    2015 Bankr. LEXIS 3081 (Bankr. D.P.R. Sept. 11, 2015) ......................................14

*Geiger v. Cook Invs. NW, SPNY, LLC (In re Cook Invs. NW, SPNWY, LLC)*,
    Case No. 17-5516 BHS,
    2017 U.S. Dist. LEXIS 136129 (W.D. Wash. Aug. 24, 2017) .................................................6

*Innovative Health Sys., Inc. v. City of White Plains*,
    117 F.3d 37 (2d Cir. 1997)....................................................................................................16

*Khan v. Addy's BBQ LLC*,
    419 F. Supp.3d 538 (E.D.N.Y. 2019) ...................................................................................10

*Lightfoot v. Walker*,
    797 F.2d 505 (7th Cir. 1986) ...............................................................................................17

*Luckert v. Dodge County*,
    No. 8:07CV5010, 2011 U.S. Dist. LEXIS 160167 (D. Neb. Jan. 11, 2011) ..........................17

*Note Buyers, Inc. v. Cooler (In re Cooler)*,
    Nos. 98-02856-W, -80162-W,
    1999 Bankr. LEXIS 2052 (Bankr. D.S.C. June 29, 1999)......................................................6

*Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*,
    Civ. A. No. 15-1533, 2018 U.S. Dist. LEXIS 132204 (E.D. La. Aug. 7, 2018) ......................7

*In re Public Serv. Co.*,
    116 B.R. 347 (Bankr. D.N.H. 1990) .....................................................................................15

*In re Quigley Co.*,
    391 B.R. 695 (Bankr. S.D.N.Y. 2008)....................................................................................5

*In re Retail Grp., Inc.*,
    No. 20-33113-KRH,
    2021 Bankr. LEXIS 1455 (Bankr. E.D. Va. May 28, 2021)........................................6, 10, 11

*In re Scrub Island Dev. Grp. Ltd.*,
    523 B.R. 862 (Bankr. M.D. Fla. 2015) ................................................................................16

*Stern v. Shulkin*,
    Case No. 18-CV-71, 2019 U.S. Dist. LEXIS 217183 (N.D.N.Y. Dec. 18, 2019)...................10

*Tripp v. Ariz. Bd. of Regents*,
    Case No. C20144811, 2018 Ariz. Super. LEXIS 1107 (Super. Ct. June 4, 2018) .................17

*In re Windstream Holdings, Inc.*,
    Nos. 20 CV 4276 (VB), 20 CV5440 (VB), 20 CV 5529 (VB),
    2020 U.S. Dist. LEXIS 137183 (S.D.N.Y. Aug. 3, 2020).....................................................13

*In re Yellowstone Mt. Club, LLC*,
    Case No. 08-61570-11, 2009 Bankr. LEXIS 4625 (Bankr. D. Mont. July 16, 2009) .............16

*In re 29 Brooklyn Ave. LLC*,
     No. 12-40279-CEC, 2015 Bankr. LEXIS 4192 (Bankr. E.D.N.Y. Dec. 11, 2015) ................14

## RULES AND STATUTES

Fed. R. Bankr. P. 8007 ........................................................................................................ passim

11 U.S.C. § 1141 ....................................................................................................................12

## MISCELLANEOUS

*The Appeal of Direct Appeal – Use of the New 28 U.S.C. § 158(d)(2)*
     84 Am. Bankr. L.J. 145, 147 (2010) ..........................................................................15

*The Appellate Structure Regularized: The NBRC's Proposal*
     102 Dick. L. Rev 839 (1998) ......................................................................................15

*ESSAY: Power, Authority, and Precedent in Interpreting the Bankruptcy Code*
     41 UCLA L. Rev. 1063, 1092-1093 (1994) ...............................................................15

The Ad Hoc Group of Individual Victims (the "Ad Hoc Group") of Purdue Pharma L.P., *et al.* (the "Debtors" or "Purdue"), by and through its undersigned co-counsel, submits this objection in response to the motions of (i) the office of the United States Trustee (the "U.S. Trustee"), (ii) the States of Washington and Connecticut, (iii) the State of Maryland, (the States of Washington, Connecticut and Maryland, collectively, the "Moving States"); (iv) certain Canadian Municipality Creditors and Appellants and Certain Canadian First Nations Creditors (the "Canadian Municipalities," and together with the U.S. Trustee and the Moving States, the "Movants") for a stay pending the appeal (the "Stay Motions") [ECF Nos. 3972 (the "U.S. Trustee Mot."), 3789 (the "WA and CT Mot."), 3845 (the "MD Mot."), and 3873 (the "Canadian Municipalities Mot.")] of, as applicable, (a) the *Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated Debtors* [ECF No. 3787] (the "Confirmation Order"), and (b) the *Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information, and (III) Granting Other Related Relief* [ECF No. 3773] (the "Advances Order").

## PRELIMINARY STATEMENT

1.    The Ad Hoc Group comprises 60,000 individuals who were all injured by direct exposure to the Debtors' opioids products.  All have filed claims in the Chapter 11 Cases.[2]  The Ad Hoc Group includes citizens of the Moving States, as well as citizens from places among the 38 States and 4933 municipalities, tribes, cities, and counties that voted in favor of the Plan. Together, those individuals make up over half of those who filed personal injury claims in the

---

[2] Capitalized terms used and not defined have the meanings ascribed to them in the *Twelfth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated Debtors* [ECF No. 3726] (the "Plan").

Chapter 11 Cases (the "Personal Injury Victims") and approximately 50% of the total voting creditor body.

2.       As a group, Personal Injury Victims voted overwhelmingly in favor of the Plan, with less than 4% of the estimated class voting "No."  That striking level of support is not surprising in that the Plan—negotiated intensely for over a year—provides hundreds of millions of dollars for payments directly to Personal Injury Victims and billions of dollars for critical programs to abate the opioid crisis.  It also provides the public with access to Purdue and Sackler family documents that lay bare not only the actions of Purdue and the Sackler Family Members, but also the actions of any enablers—both within the government and outside of it.  The Plan thus provides unparalleled transparency as to how Purdue could operate as it did for over a decade after pleading guilty to federal and state crimes.  While the Plan does not (and no plan ever could) fully compensate Personal Injury Victims for their injuries, the Ad Hoc Group believes that post-confirmation efforts should now prioritize placing money into the hands of Personal Injury Victims and communities in need of abatement as quickly as possible.

3.       In spite of the overwhelming support for the Plan expressed in the voting process and the harm accruing every day that distributions under the Plan are delayed, the Movants have appealed the Confirmation Order and seek to stay implementation of the Plan pending appeal. They have done so with eyes wide open to the fact that their efforts, if successful, will delay critical cash distributions and may create a situation in which Personal Injury Victims may never receive any distribution at all.  The Movants also proceed without offering any improvement in the treatment of claims or any assurance that the Plan's complex, interwoven settlements can ever be reassembled.

4.      Given these facts, the Ad Hoc Group is highly troubled that the United States government and a handful of states are seeking to sabotage a global settlement that has the support of the class of Personal Injury Victims as well as 38 states and 4933 cities, municipalities, and tribes.  Most troubling is that they purport do so in the guise of protecting opioid victims and the public interest.

5.      The Ad Hoc Group will not repeat the arguments that the Official Committee of Unsecured Creditors or Debtors have made in response to the Stay Motions.  The Ad Hoc Group joins the *Opposition of the Official Committee of Unsecured Creditors to Motions for Stay Pending Appeal* [ECF No. 4006] and agrees for the reasons stated by the Debtors, the UCC, and other objecting parties that the Movants have failed to meet their burden on the elements for a stay under Federal Rule of Bankruptcy Procedure 8007.

6.      Here, the Ad Hoc Group will address three specific issues from the unique perspective of Personal Injury Victims: (1) the U.S. Trustee's attempt to speak for, and indeed bring a Stay Motion on behalf of, parties who are speaking for themselves in these proceedings, including the Moving States and individuals within the Ad Hoc Group; (2) the U.S. Trustee's failure to submit any evidence establishing what harm the U.S. Trustee (or the public interest it purports to represent) will suffer as the result of a stay; and (3) the contrasting undisputed harm that individual victims will suffer, as well as the further harm they risk suffering, if a stay pending appeal is imposed.

7.      If this Court is inclined to grant a stay—and the Ad Hoc Group urges it not to—the Ad Hoc Group submits that the only way to justify such a stay is to balance the harms by conditioning that stay on the provision of a bond by one or more Movants.  Because the U.S. Trustee (1) argues that it cannot be required to post a bond and (2) cannot show irreparable harm

to the U.S. Trustee (and cannot assert harms to the states in order to help the Moving States skirt the bond requirement), this Court should at a minimum deny the U.S. Trustee's Motion.  Should this Court grant the Stay Motion of one or more Moving States, such a stay should be conditioned upon a bond to compensate Personal Injury Victims for the costs imposed by a delay in the effective date of the Plan during the stay period.

## ARGUMENT

**I.    The U.S. Trustee Cannot Exempt Other Parties from the Bond Requirement by Motioning on Their Behalf**

8.    In its Stay Motion, the U.S. Trustee purports to speak for a number of other parties to these proceedings, including (1) *pro se* parties who have appeared and are speaking for themselves; (2) parties who are themselves appellants in the pending appeals; and (3) members of the Ad Hoc Group.  *See, e.g.,* U.S. Trustee Mot. at 23 (arguing on behalf of "Releasing Parties"); 26 (arguing on behalf of "victims of the opioid crisis"); 34 (advocating on the behalf of "individual stakeholders" who have appeared before the Bankruptcy Court).

9.    None of these parties has authorized the U.S. Trustee to speak on their behalf. Indeed, members of the Ad Hoc Group have authorized the *Ad Hoc Group* to speak on their behalf, and the Ad Hoc Group (1) supports the Plan (including the Sackler releases) and (2) opposes the stay requested.[3]  The U.S. Trustee cannot supplant these parties' own expressed views with what the U.S. Trustee thinks they must really believe under the guise of advocating for the "public interest."

---

[3] The Ad Hoc Group members include not only Personal Injury Victims who voted in favor of the Plan, but also Personal Injury Victims who voted against the Plan, as well as Personal Injury Victims who chose not to vote at all. Of the roughly 70,000 Personal Injury Victims who filed proofs of claim against the Debtors but did not vote on the Plan (claimants for whom the U.S. Trustee purports to speak), about half or approximately 35,000 are members of the Ad Hoc Group. *See Final Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulations of Ballots Cast on the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [ECF No. 3372].

10.     That the U.S. Trustee misrepresents the views of these other parties is clear from its failure to provide any evidence whatsoever in support of the position of the "countless individuals" for whom it purports to speak.  U.S. Trustee Mot. at 3.  The Ad Hoc Group has asked the U.S. Trustee in multiple meet-and-confers whether it spoke to Personal Injury Victims before filing its Stay Motion, and the U.S. Trustee has refused to answer.[4]  The record is devoid of any evidence on this topic, and the U.S. Trustee has stated to this Court twice that it does not intend to submit any.  *See, e.g.*, *Letter for Pre-Motion Conference in Advance of Motion to Quash Deposition Notice* at 5 [ECF No. 3921] ("Any evidence [the U.S. Trustee] relies on in support of his motion either is in the factual record in this case or is subject to judicial notice."); Oct. 14, 2021 H'rg Tr. at 220:13-18 (U.S. Trustee confirming it would submit no further evidence in support of its motion to stay).  The U.S. Trustee should not be permitted to speak on behalf of individuals whom it cannot even identify.[5]

11.     Similarly, the U.S. Trustee should not be permitted to advocate on behalf of the states appealing the Confirmation Order (the "Appealing States") where those states are already speaking for themselves in the appeals and in this stay dispute.[6]  *In re Quigley Co.*, 391 B.R. 695, 702 (Bankr. S.D.N.Y. 2008) (confirming that a litigant in bankruptcy proceedings "'must assert

---

[4] The U.S. Trustee and the Ad Hoc Group met and conferred over the phone on October 4, 2021 and October 19, 2021.

[5] Challenged with this evidentiary failure in meet-and-confers with the Ad Hoc Group, the U.S. Trustee revised its brief in support of stay and attempted to add support to its assertions by citing to docket filings by individual claimants who expressed dissatisfaction with the Chapter 11 Cases.  *Redline Second Amended Memorandum of Law in Support of United States Trustee's Amended Expedited Motion for a Stay of Confirmation Order and Related Orders Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007* at 34 [ECF No. 3973].  These parties are precisely those parties **already speaking for themselves** and whose views the U.S. Trustee may not summarize or supplant with its own.  As to those parties for whom the U.S. Trustee purports to speak who do not appear on the docket, there is zero evidence on the record as to their claims, rights, and views on this matter.

[6] *See Amended Notice of Appeal of State of Washington* [ECF No. 3812]; *Amended Notice of Appeal of State of Connecticut* [ECF No. 3818]; *Motion of the States of Washington and Connecticut for a Stay Pending Appeal* [ECF No. 3789]; *Notice of Appeal of State of Maryland* [ECF No. 3839] and *State of Maryland Motion for Stay Pending Appeal* [ECF No. 3845]; *Notice of Appeal of State of California* [ECF No. 3813]; *Notice of Appeal of State of Delaware* [ECF No. 3851]; *Notice of Appeal of State of Rhode Island and Providence Plantations* [ECF No. 3832]; *Notice of Appeal of State of Oregon* [ECF No. 3853]; *Notice of Appeal of State of Vermont* [ECF No. 3849].

his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests

of third parties'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975) for the proposition that "third

parties themselves usually will be the best proponents of their own rights").  The Appealing States

are permitted to motion for a stay on the basis of harms that may be befall the Appealing States

absent a stay, and the U.S. Trustee is permitted to advocate for its own position on the basis of

harms that may befall the U.S. Trustee absent a stay.  A movant for a stay may not argue on the

basis of harms that may befall other parties.  *ACC Bondholder Group v. Adelphia Commc'ns.

Corp. (In re Adelphia Commc'ns. Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (courts consider

"whether the *movant* will suffer irreparable injury absent a stay" when determining whether to

issue a stay pending appeal under Federal Rule of Bankruptcy Procedure 8005) (emphasis added).

The U.S. Trustee is not an exception to this rule.  *See, e.g., In re Retail Grp., Inc.,* No. 20-33113-

KRH, 2021 Bankr. LEXIS 1455, at *42 (Bankr. E.D. Va. May 28, 2021) (denying U.S. Trustee's

stay motion where U.S. Trustee failed to show irreparable harm to U.S. Trustee); *Geiger v. Cook

Invs. NW, SPNY, LLC (In re Cook Invs. NW, SPNWY, LLC)*, Case No. 17-5516 BHS, 2017 U.S.

Dist. LEXIS 136129, at *12, 16 (W.D. Wash. Aug. 24, 2017) (denying U.S. Trustee motion to stay

pending appeal where "the [U.S.] Trustee . . . failed to show that staying confirmation of a plan . .

. would cause irreparable harm to the [U.S.] Trustee"); *Note Buyers, Inc. v. Cooler (In re Cooler)*,

Nos. 98-02856-W, 98-80162-W, 1999 Bankr. LEXIS 2052, at *7-8 (Bankr. D.S.C. June 29, 1999)

(denying U.S. Trustee's stay motion where "the [U.S.] Trustee will not be irreparably injured if its

motion for stay is denied").

12.    Even if individual victims or individual states *had* appointed the U.S. Trustee to

bring a Stay Motion for them (and there is no evidence that any have), allowing the U.S. Trustee

to advocate on behalf of these parties would perversely allow those parties to circumvent an

important protection that accompanies stays: namely, the bond requirement under Federal Rule of Bankruptcy Procedure 8007. The U.S. Trustee asserts that it is not required to issue a bond when taking an appeal.[7] If the U.S. Trustee were allowed to seek a stay on behalf of other parties to the proceeding—such as the states, or individual victims who have filed objections on the dockets in the Chapter 11 Cases—doing so would confer upon those other parties the right to seek a stay with no bond, even though a bond <u>would be</u> required if those other parties brought the motion themselves. Courts do not permit this circumvention. *See, e.g., Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, Civ. A. No. 15-1533, 2018 U.S. Dist. LEXIS 132204, at *9-10 (E.D. La. Aug. 7, 2018) (rejecting the argument of the Housing Authority of New Orleans that it was not required to post a bond for a stay pending appeal under Federal Rule of Civil Procedure 62(e) because it was directed to appeal by a federal agency, and holding that "other courts have reiterated what should be clear: the exception is limited to the United States and its agencies") (citing *MACTEC, Inc. v. Bechtel Jacobs Co., LLC*, No. 3:05-CV-340, 2008 U.S. Dist. LEXIS 52965, at *2-5 (E.D. Tenn. July 10, 2008) (holding that the Federal Rule of Civil Procedure 62(e) exception did not apply to appellant because it was not a federal government entity, even though it alleged it was directed by the Department of Energy to appeal)). Thus, while the U.S. Trustee contends that it "is acting as the congressionally designated bankruptcy watch-dog" . . . and "fulfilling [its] responsibilities to represent and protect the public interest," U.S. Trustee Mot. at 33, it may not confer its own supposed exemption from the bond requirement upon any party it chooses by arguing irreparable harm to that party under the umbrella of the "public interest."

---

[7] The Ad Hoc Group joins in the argument of the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants that under Federal Rule of Bankruptcy Procedure 8007, this Court may indeed require a bond from the U.S. Trustee. *See Ad Hoc Committee's Objection to Stay Motions* at ¶¶ 43-46 [ECF No. 4002].

II.     **The Balance of Harms Mandates Denying the Movants' Motions for Stay Absent a Bond**

    A.     **There Is No Evidence of Harm to the Movants if the Motions for Stay Are Denied**

13.     The U.S. Trustee spends much of its brief arguing the merits of its appeal to establish its likelihood of success (and in doing so mischaracterizes what the Plan actually does with Sackler Claims).[8]  *See generally* U.S. Trustee Mot. at 16-32. When it comes to irreparable harm, however, the U.S. Trustee has little to say.  It asserts only the following three forms of irreparable harm: (1) that the individual stakeholders who filed letters or objections on the docket "will have their causes of action extinguished without their knowing and informed consent and in many cases without notice"; (2) that the Plan "erodes the public's confidence in the bankruptcy system by giving the appearance that individuals . . . can use the bankruptcy system to evade responsibility . . . without filing bankruptcy themselves"; and (3) the "loss of appellate rights" due to equitable mootness.  U.S. Trustee Mot. at 34-35.[9]

14.     The first alleged harm: The individual stakeholders who filed letters or objections before this Court clearly had notice, due process, and an opportunity to be heard in this Court—as

---

[8] To mistakenly assert that the Plan pays no value to Sackler claims, U.S. Trustee Mot. at 22-26, the U.S. Trustee cites to only the first half of the following Plan provision describing the payment of value to PI Claims against the Debtors and to associated PI Channeled Claims against the Sacklers (or other Shareholder Released Parties): "Distributions hereunder are determined only with consideration to a Non-NAS PI Claim held against the Debtors, and not to any associated Non-NAS PI Channeled Claim against a non-Debtor party. ***However, any Distribution to a Non-NAS PI Claimant on account of his/her Non-NAS PI Claim is deemed to be a distribution in satisfaction of all Non-NAS PI Channeled Claims held by such Non-NAS PI Claimant with respect to the injuries that are the subject of his/her Non-NAS PI Claim.***"  ECF No. 3787 at 333 (Non-NAS PI TDP § 2(b)(ii)) (emphasis added); *see also* ECF No. 392 (NAS PI TDP § 2(b)(ii)) (same language for NAS claims); *see* U.S. Trustee Mot. at 22 (selectively quoting only the first half of this language).  The Plan ***does*** pay value on account of Sackler claims.  What is more, the allocation of value as between a Purdue claim and an associated Sackler claim reflects the financial reality of the Plan: namely, that the majority of value being distributed to victims came <u>from the Sacklers</u> to resolve <u>Sackler claims</u>.

[9] The U.S. Trustee's half-hearted argument that it need not show irreparable harm at all because the opioid crisis "implicates important public interests" fails spectacularly.  *See* U.S. Trustee Mot. at 32-33 (arguing that "the injury and public interest factors merge" when "the government is a party" (as the U.S. Trustee is to all bankruptcy proceedings)) and then, rather than arguing that the public interest lies <u>in favor of a stay</u> (as opposed to against it), arguing instead the patently obvious notion that the Chapter 11 Cases have attracted a lot of attention and thereby "implicate" the public interest.

evidenced by their very participation in these proceedings.  Indeed, of the eighteen docket filings

cited by the U.S. Trustee as evidence of those who did not receive notice of these proceedings,

U.S. Trustee Mot. at 34, almost none complain of notice issues, eleven admit to having already

filed a claim in these cases,[10] and over half do not even express discontent with the Sackler

releases.[11]

15.     To the extent the U.S. Trustee meant to extend this argument to victims who did

not participate in these proceedings, the Ad Hoc Group refers the Court to its own findings and

conclusions as to the extent and constitutionality of the Debtors' noticing program.  *See Modified

Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter 11 Plan* (the

"Modified Bench Ruling") at 4-8 [ECF No. 3786] (discussing Debtors' noticing program and

concluding that "the Debtors' notice of the confirmation hearing and the proposed releases in the

plan was sufficient and indeed unprecedentedly broad").

16.     Insofar as the U.S. Trustee premises its notice argument on the existence of non-

derivative Sackler claims—that is, claims against the Sacklers that are released under the Plan but

do not derive from corresponding or derivative claims against Purdue—the Ad Hoc Group has

invited the U.S. Trustee in multiple meet-and-confers to identify any such claims, and the U.S.

Trustee has been unable to do so.[12]  The U.S. Trustee also represented to the Court that it would

present no evidence as what these claims actually are.  Oct. 14, 2021 H'rg Tr. at 220:13-18 (The

Court: "[T]he only real issue is whether you are going to present factual testimony, and I don't

believe you are, as to what those claims are.  If you're not, then this is a nonissue.  They're not

going to take discovery of you."  Mr. Higgins: "Correct.").  As the only Sackler claims released

---

[10] *See* ECF Nos. 3028, 3125, 3271, 3404, 3357, 3575, 3582, 3677, 3742.

[11] *See* ECF Nos. 442, 443, 2210, 2966, 3028, 3125, 3271, 3292, 3357, 3368, 3404, 3575, 3582.

[12] *See supra* n.4.

under the Plan are those that are **both** "based on or relating to, or . . . arising from" the Debtors, the Estates, or the Chapter 11 Cases, **and also** "as to which any conduct, omission or liability of any Debtor or any Estate is the legal cause or is otherwise a legally relevant factor," the Ad Hoc Group fails to see how any claim could meet this definition and be held by a person with no claims against Purdue. Mere conjecture that such claims might exist cannot establish irreparable harm. *Khan v. Addy's BBQ LLC*, 419 F. Supp.3d 538, 562 (E.D.N.Y. 2019) (holding that "plaintiff's conclusory and unsupported assertions . . . without more, are insufficient to satisfy his burden of showing that irreparable harm would be likely in the absence of a preliminary injunction") (collecting cases); *Clonus Assocs. v. Dreamworks, LLC*, 417 F. Supp.2d 248, 254, 257 (S.D.N.Y. 2005) (denying motion for preliminary injunction where "[p]laintiff's arguments about irreparable harm [were] limited to conclusory assertions"); *Stern v. Shulkin*, Case No. 18-CV-71 (MAD/TWD), 2019 U.S. Dist. LEXIS 217183, at *14-15 (N.D.N.Y. Dec. 18, 2019) (finding that "unsupported claims" and "conclusory allegations of injury" were insufficient to establish irreparable harm).

17.    Indeed, one bankruptcy court said exactly this on parallel facts in recent chapter 11 proceedings in the Eastern District of Virginia. *In re Retail Grp., Inc.*, Case No. 20-33113-KRH, 2021 Bankr. LEXIS 1455, at *31-32 (E.D. Va. May 28, 2021). In that case, the U.S. Trustee sought a stay pending appeal of certain provisions in the debtors' confirmation order under Federal Rule of Bankruptcy Procedure 8007. The Bankruptcy Court for the Eastern District of Virginia denied the motion on, among other grounds, the failure of the U.S. Trustee to specifically identify the "parties" who it claimed would be harmed as a result of those provisions. In that case, as in this one, the U.S. Trustee argued that "parties who unknowingly and unintentionally released their causes of action by failing to opt-out will be irreparably harmed should the statute of limitations

applicable to their cause of action expire during the pendency of the appeal." *Id.* at *31. The Bankruptcy Court for the Eastern District of Virginia found that "this conclusory sentence is entirely speculative and, as such, the [U.S.] Trustee has not met his burden to prove irreparable harm." *Id.* That court added:

> The [U.S.] Trustee readily conceded at the [h]earing that he is unaware whether any such unknown third parties exist and whether any such claims exist, and further admitted that it is entirely possible that no such claims exist. The [U.S.] Trustee argued instead that irreparable harm may be speculative in this instance for 'the common-sense reason that unknown third parties are unaware that their right to bring state and federal law claims against other non-debtor parties are extinguished under the [d]ebtors' chapter 11 plan.' . . . . The Court rejects this unsupported assertion. The second factor [of the standard for a preliminary injunction] clearly requires the [U.S.] Trustee show irreparable harm if a stay is not granted. No single party has come forward or been otherwise identified as being harmed. Furthermore, even if such a party could be identified, the [U.S.] Trustee has failed to show 'irreparable' harm, as required by this factor.

*Id.* That court also noted that it had retained jurisdiction to interpret and enforce the terms of its confirmation order, that "[a]n adversely affected party could seek relief from the [c]onfirmation [o]rder in this [c]ourt on grounds such as excusable neglect if the notice the party was given proves to have been actually deficient," and it was "[t]hus . . . unclear how any alleged 'harm' would be 'irreparable.'" *Id.* at *32.

18.     The same opportunity to seek relief, of course, is available in these proceedings. *See* Plan § 11.1 (retention of jurisdiction); NAS PI TDP § 3 n.6 (allowing for late-filed claims where good cause exists); Non-NAS PI TDP § 3 n.5 (same). Indeed, when a handful of claimants came forward and reported that they had not received notice of these proceedings or otherwise established excusable neglect, this Court granted them leave to file a late proof of claim. *See, e.g.*, ECF Nos. 3042, 3597, 3598, 3772, 3959.

19.     Finally, as to the purported extinguishment of claims without consent, that is fundamental to the bankruptcy process: plans are binding on dissenting creditors.  *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG), 2021 Bankr. LEXIS 1, at *14 (Bankr. S.D.N.Y. Jan. 2, 2021) ("It is well-established that once confirmed, a debtor's reorganization plan binds the debtor and all creditors, regardless of whether the creditor has accepted the plan, provided that the creditor has 'been given notice sufficient to satisfy due process.'") (citing *DePippo v. Kmart Corp.*, 335 B.R. 290, 295 (S.D.N.Y. 2005) (quoting *Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02 Civ. 9629 (NRB), 2003 U.S. Dist. LEXIS 9802, at *7 (S.D.N.Y. June 9, 2003))); *see also* 11 U.S.C. § 1141(a) (providing that provisions of a confirmed plan bind the debtor and any creditor, regardless of whether that creditor accepted the plan).

20.     The second alleged harm*:* The U.S. Trustee's second alleged harm—the "erosion" of public confidence in the bankruptcy process when the public sees that a party can get a release without being a debtor—is merely the definition of a third-party release.  Third-party releases are permitted in the Second Circuit.  *See Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141 (2d Cir. 2005) ("[I]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan.") (citing to *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992)).

21.     The third alleged harm: The U.S. Trustee cites to *Adelphia* for the proposition that equitable mootness constitutes irreparable harm.  U.S. Trustee Mot. at 35 (citing *ACC Bondholder Group v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, 361 B.R. 337, 349 (S.D.N.Y. Jan. 24, 2007)).  But *Adelphia* itself acknowledged that "a majority of courts have held

that a risk of mootness, standing alone, does not constitute irreparable harm," and this Court, re-considering *Adelphia* again just last year, departed from that decision and joined with "other courts in [the Second Circuit]" in holding that "merely invoking equitable mootness . . . —a risk that is present in any post-confirmation appeal of a chapter 11 plan—is not sufficient to demonstrate irreparable harm." *In re Windstream Holdings, Inc.*, Nos. 20 CV 4276 (VB), 20 CV5440 (VB), 20 CV 5529 (VB), 2020 U.S. Dist. LEXIS 137183, at *7 (S.D.N.Y. Aug. 3, 2020) (quoting *In re Calpine Corp.*, Case No. 05-60200 (BRL), 2008 Bankr. LEXIS 217, at *13 (Bankr. S.D.N.Y. Jan. 24, 2008) (denying stay pending appeal despite risk that movants would lose their right to appeal on account of equitable mootness)).

### B.    Imposition of a Stay Would Irreparably Harm Personal Injury Victims

22.    In contrast to the theoretical harms to hypothetical persons that the U.S. Trustee seeks to protect, there can be zero doubt that actual creditors with actual claims will be harmed by a stay.

23.    The first harm is immediate, certain, and undisputed by the Movants: delay of distributions to Personal Injury Victims for several months (at minimum), as well as delay of abatement funds to opioid-impacted communities that include individual victims. *See* U.S. Trustee Mot. At 36 (acknowledging the importance of affording relief to victims of the opioid crisis and the possibility that a stay would delay those distributions); MD Mot. at 18-20 (conceding that a stay will delay distributions to victims); WA and CT Mot. ¶ 53 (same); Canadian Municipalities Mot. ¶¶ 32, 45 (conceding the "describable harm" of "the delay of an appellate proceeding"). For the recipients of these much-needed funds, the delay in receiving thousands of dollars costs more than just the time-value of money (although it costs that, too): it costs lives. *See, e.g.,* MD Mot. at 2 (describing the opioid epidemic as "a national public health crisis that continues to addict

millions and adds approximately 1,000 Americans lives each week to the more than 600,000 lives opioids overdoses have already taken"); Canadian Municipalities Mot. ¶ 32 ("[H]uman beings die each day from causes directly or indirectly linked to the Debtors, without abatement").

24.    Even absent these extraordinary facts, *any* delay in an estate's administration and distribution to creditors constitutes a substantial harm warranting denial of stay. *See In re 29 Brooklyn Ave. LLC*, No. 12-40279-CEC, 2015 Bankr. LEXIS 4192, at *5 (Bankr. E.D.N.Y. Dec. 11, 2015) ("The delay caused to creditors receiving their payments is a significant harm in warranting denial of a stay" pending appeal under Federal Rule of Bankruptcy Procedure 8007); *Fraterfood Serv. v. DDR Del Sol, LLC (In re Fraterfood Serv.)*, Nos. 14-00002 BKT, 15-00011 BKT, 2015 Bankr. LEXIS 3081, at *6 (Bankr. D.P.R. Sept. 11, 2015) ("[D]elay caused to creditors receiving their payment is also a significant harm warranting denial of a stay."); *In re F.G. Metals, Inc.*, 390 B.R. 467, 478 (Bankr. M.D. Fla. 2008) ("Significant delay in the administration of an estate . . . generally satisfies the criterion of harm to other parties.") (collecting cases).

25.    The second harm here is more attenuated but potentially more devastating – i.e., the risk that the Plan is never consummated on account of delay caused by the stay even though the Confirmation Order is affirmed in all respects.  As the Debtors have noted, the Plan is a complex document negotiated over the course of years and comprising over fourteen settlements between all variety of public and private stakeholders.  Aug. 23, 2021 Hr'g Tr. at 39:16-19 ("Mr. Huebner: The Plan is a tightly woven tapestry of no fewer than 14 incredibly complex and totally mutually dependent sets of settlements among tens of thousands of the Debtors' creditors . . . .").  As the appeals process stretches on—and there is a very real possibility that the appeal will take longer than a year[13]—the risk increases that an intervening event will upset the negotiated deal.

---

[13] While the Ad Hoc Group hopes that an appeal will proceed as quickly as possible, there is simply no guarantee that it will.  The delay of a confirmation order until resolution of an appeal is often substantial, and can take more than a

This Court and others have seen multiple complex cases in which confirmed plans were never able to go effective due to events not contemplated at the time of confirmation. *See, e.g., Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* at 8-9, *In re Energy Future Holdings Corp. et al.*, Case. No. 14-10979 (CSS) (Bankr. D. Del. June 16, 2016), [ECF No. 8753] (describing confirmed plan as null and void after parties failed to obtain regulatory approvals, plan investment agreement was terminated, and plan support was withdrawn); *Supplement to First Amended Disclosure Statement With Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as Modified)* at S-iv-S-viii, *In re Delphi Corp., et al.*, Case No. 05-4481 (RDD) (Bankr. S.D.N.Y. June 16, 2009), [ECF No. 17031] (describing termination of investment agreement underpinning confirmed plan and subsequent modified plan providing for sale of business and substantially reduced creditor recoveries); *Order Vacating Order Confirming Plan* at 2, *In re EP Energy Corp., et al.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. March 24, 2020), [ECF No. 1103] (vacating confirmation order due to plan's failure to become effective after plan investor withdrew support).

26.    While a stay is not certain to thwart the Plan, the mere risk of such a catastrophic event constitutes irreparable harm that must be addressed in the Court's stay calculation. *See In re Public Serv. Co.*, 116 B.R. 347, 350 (Bankr. D.N.H. 1990) (denying stay because, *inter alia*, a stay "would jeopardize the $1.5 billion in [bank] financing which is currently being negotiated and which makes [the] plan possible" and there was "no assurance that financing of that magnitude

---

year. *The Appellate Structure Regularized: The NBRC's Proposal*, 102 Dick. L. Rev 839 (1998); *The Appeal of Direct Appeal – Use of the New 28 U.S.C. § 158(d)(2)*, 84 Am. Bankr. L.J. 145, 147 (2010); *ESSAY: Power, Authority, and Precedent in Interpreting the Bankruptcy Code*, 41 UCLA L. Rev. 1063, 1092-1093 (1994).

would again be available"); *In re Yellowstone Mt. Club, LLC*, Case No. 08-61570-11, 2009 Bankr. LEXIS 4625, at *11, *15 (Bankr. D. Mont. July 16, 2009) (denying stay where delay to consummation of that plan could cause plan's failure to the detriment of creditors and the public); *In re Scrub Island Dev. Grp. Ltd.*, 523 B.R. 862, 878-879 (Bankr. M.D. Fla. 2015) (denying stay where delay could cause plan failure and noting that movant had "been attempting to thwart the [d]ebtors' efforts to reorganize" throughout the case and that a stay would accomplish the movant's "goal all along: preventing the [d]ebtors from successfully reorganizing").

27.     In the event of Plan failure, Personal Injury Victims could lose the $700 million to $750 million in value that they are currently allocated under the Plan.  Because the U.S. Trustee takes the position that it is not required to post a bond, and could take the position that it is not required to pay damages as a result,[14] there is serious risk that the victims could go uncompensated for this loss even if they win on appeal.  That is irreparable harm.  *Alvenus Shipping Co., Ltd. v Delta Petroleum (U.S.A.) Ltd.*, 876 F. Supp. 482, 487 (S.D.N.Y. 1994) (money damages constitute irreparable harm when judgment may go unsatisfied); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 43-44 (2d Cir. 1997) (death, illness or disability constitutes irreparable harm).

### C.     The Balance of Harms Precludes a Stay Absent a Bond

28.     Given the harms set forth above, the Court should deny the U.S. Trustee's motion outright.  It has alleged no harm to itself, it has conceded that Personal Injury Victims will be harmed, its arguments with respect to public interest are misplaced, and if it convinces this Court that it cannot be required to post a bond, the U.S. Trustee can appeal with impunity while injuring further the very victims on whose behalf it purports to speak.  As to the other Movants, any stay

---

[14] The Ad Hoc Group invites the U.S. Trustee to commit now that, if it obtains its stay with no bond, it is still obligated to compensate victims for all losses if the U.S. Trustee ultimately loses on appeal.  The Ad Hoc Group reserves all rights with respect to any such dispute.

should be conditioned on requiring that Movant to post a bond that would compensate Personal Injury Victims for (1) the daily accruing harm of delay and (2) the catastrophic risk of loss of their entire entitlement under the Plan.[15]

29.     Thus, if this Court were inclined to grant any stay (and the Ad Hoc Group believes that it should not), it should grant the Stay Motion of a Movant (1) who can show actual harm <u>to that Movant</u> (and the U.S. Trustee cannot) and (2) whom it can require to post a bond (and the U.S. Trustee claims it cannot require a bond of the U.S. Trustee).  Courts evaluate multiple motions for stays of the same appeal separately, and can independently require bonds of some parties and not others.  *See, e.g.*, *Luckert v. Dodge County*, No. 8:07CV5010, 2011 U.S. Dist. LEXIS 160167, at *5-6 (D. Neb. Jan. 11, 2011) (granting county's motion to stay without bond but conditioning individual defendants' motion to stay on the posting of a bond); *Tripp v. Ariz. Bd. of Regents*, Case No. C20144811, 2018 Ariz. Super. LEXIS 1107, at *2 (Super. Ct. June 4, 2018) (requiring a nongovernmental party to pose a $12 million *supersedeas* bond amount if and when it were to join the appeal of the state government, who was not required to post a bond); *In re Oil Spill by "Amoco Cadiz" off Coast*, 744 F. Supp. 848, 850-851 (N.D. Ill. 1990) (granting two of the appellants' motions for stay while denying a third appellant's motion to stay).  Because the U.S. Trustee will benefit from a stay issued on another Movant's motion, this approach readily permits denial of the U.S. Trustee's own Stay Motion.

---

[15] Contrary to the Moving States' claims, they are not exempt from the requirement to post a bond.  *See* WA and CT Mot. at 38-39.  Indeed, while requiring a state to post a supersedeas bond to guarantee a judgment pending appeal has not been considered in the Second Circuit, other circuits have in fact found that courts have the authority to require state governments to post a bond pending appeal.  *See, e.g., Lightfoot v. Walker*, 797 F.2d 505 (7th Cir. 1986) (finding that the court may require the state to post a supersedeas bond in cases requiring a guarantee that judgment on appeal will be paid if affirmed).  Indeed, federal courts have rejected requests of state governments and similar municipalities to file stays pending appeal *absent* bonds, especially where such movants fail to provide evidence that they could pay an eventual judgment.  *See, e.g., In re Diaz*, No. 6:02-bk-05591-ABB, 2011 Bankr. LEXIS 215, at *2 (Bankr. M.D. Fla. Jan. 25, 2011); *City of Akron v. Akron Thermal, Ltd. P'ship (In re Akron Thermal, Ltd. P'ship)*, 414 B.R. 193, 200 (N.D. Ohio 2009).

## **CONCLUSION**

For these reasons, the Ad Hoc Group respectfully requests that the Court deny the Stay

Motions or, in the alternative, deny the U.S. Trustee's Stay Motion and require the Moving States

to post a bond as a condition of any stay.

Dated: October 22, 2021
New York, New York

WHITE & CASE LLP

By: /s/ J. Christopher Shore

J. Christopher Shore
Michele J. Meises
Alice Tsier
Amanda J. Wong
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 819-8200
Fax: (305) 358-5744
cshore@whitecase.com
michele.meises@whitecase.com
alice.tsier@whitecase.com
amanda.wong@whitecase.com

Thomas E Lauria (admitted *pro hac vice*)
Laura L. Femino (admitted *pro hac vice*)
Southeast Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131
Tel.: (305) 371-2700
Fax: (305) 358-5744
tlauria@whitecase.com
laura.femino@whitecase.com

-and-

ASK LLP
Edward E. Neiger
Jennifer A. Christian
60 East 42nd Street, 46th Floor
New York, New York 10165
Tel.: (212) 267-7342
Fax: (212) 918-3427
eneiger@askllp.com
jchristian@askllp.com

*Co-Counsel for Ad Hoc Group of Individual
Victims of Purdue Pharma L.P., et al.*