**Reply Date and Time: November 1, 2021, at 2:00 p.m. (prevailing Eastern Time)**

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
Allen J. Underwood II, Esq.
e-mail: aunderwood@litedepalma.com
*Counsel to Certain Canadian Municipal Creditors and Appellants*
*and Certain Canadian First Nation Creditors and Appellants.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | |
| | : | |
| PURDUE PHARMA L.P., *et al.* | : | Chapter 11 |
| | : | |
| | : | Case No. 19-23649 (RDD) |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

———————————————————————

**REPLY OF CERTAIN CANADIAN MUNICIPALITY CREDITORS AND
APPELLANTS AND CERTAIN CANADIAN FIRST NATIONS CREDITORS AND
APPELLANTS IN SUPPORT OF THEIR MOTION FOR THE GRANTING BY THE
BANKRUPTCY COURT OF A STAY PENDING APPEALS, JOINDER TO THE STAY
MOTIONS OF THE OFFICE OF THE UNITED STATES TRUSTEE AND THE STATE
OF MARYLAND, AND GRANTING RELATED RELIEF**

**TO:   THE HONORABLE ROBERT D. DRAIN,
         UNITED STATES BANKRUPTCY JUDGE:**

The above referenced Certain Canadian Municipality Creditors and Appellants and Certain

Canadian First Nations Creditors and Appellants in these proceedings (collectively, the "**CMFN**")

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors shall include their affiliates and other entities under their control. The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

hereby file this *Reply* ("**Reply**") in support of their *Motion for the Granting by the Bankruptcy Court of a Stay Pending Appeals, Joinder to the Stay Motions of the Office of the United States Trustee and the State of Maryland, and Granting Related Relief* (the "**Motion**").   In support of their Motion and on Reply, the CMFN respectfully state as follows:

1.      By their Motion, pursuant to Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 8007 and 9013, the CMFN seek a Stay of the Confirmation Order and Related Orders Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007. The Motion seeks a stay pending the CMFN's respective appeals of the Court's September 1, 2021 oral ruling, and the subsequent September 17, 2021 *Modified Bench Ruling on Request for the Confirmation of the Eleventh Amended Joint Chapter 11 Plan* (CM/ECF Bankruptcy Docket Entry 3786) and the *Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* (CM/ECF Bankruptcy Docket Entry 3787).

2.      In hundreds of pages of argument, the opponents to the stay Motion each essentially cover the four criteria requisite for the issuance of a stay by this Court.[2] They also address issues as to the relative need for a supersedeas bond.

3.      As to a principal issue, timing, what is clear is that it would be very difficult for the CMFN to appropriately "time" an application for a stay according to the Debtors' and other interested parties' standards.  The CMFN have done their best to timely bring this issue before the

---

[2] "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal, and (4) the public interests that may be affected." *Country Squire Assocs. of Carle Place L.P. v. Rochester Community Savings Bank (In re Country Squire Assocs. of Carle Place, L.P.)*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)); *accord In re Sabine Oil & Gas Corp.*, 2016 WL 4203551, at *1 (S.D.N.Y. Aug. 9, 2016).

Court – the complexity (but not impossibility) in crafting a workable result should not be an impediment to relief.  Moreover, the parties have discussed a consensual solution to stay related issues.  The material terms of which changed as recently as yesterday.

4.      The fundamental prerequisite for the issuance of a *Rule* 8007 stay is a showing of probable irreparable harm – which is neither remote, nor speculative and is actual and imminent. *In re Calpine Corp.*, 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008).

5.      As to this first prerequisite, the CMFN raised their initial objection to the Plan in this matter in July, 2021 – and that objection contained the very same legal arguments that have now been presented to the District Court on appeal of the Confirmation Order. (*See*, District Court Appeal, Case No. 21-07532-CM, Appellants Brief, Docket Entry 98).  This matter is not one of a creditor who has manufactured issues for appeal – but is one where the issues have been consistently raised by the CMFN since their first plan objection.

6.      The CMFN's appellate brief lays out in detail why Canadian issues on appeal are distinct from those of the other Appellants. The appellate brief further lays out the Canadians fundamental argument throughout – that whether as municipalities or tribes, the CMFN are entitled to sovereign immunity from the non-consensual, non-debtor, third party releases invoked by the Plan.[3]

---

[3] I.      The Plan's release of Appellants' claims against non- debtors must be invalidated
    A.      The bankruptcy court exceeded its jurisdiction over the Debtors' estate by forcing the Canadian Appellants to release their claims against the Shareholder Released Parties
    B.      Forcing the releases on the Canadian Appellants violates their sovereign immunity.
        1.      The releases impose liability that is personal to the Canadian Appellants' in a manner that violates their sovereign immunity.
        2.      The Canadian Appellants' sovereign immunity is neither abrogated nor waived.
    C.      The bankruptcy court's assertion of jurisdiction over the Canadian Appellants does not comport with their rights as foreign defendants.
    D.      The Canadian Appellants do not receive adequate consideration in exchange for the releases to Justify their imposition.
II.      The Plan's inequitable treatment of the Canadian Appellants' claims must also be corrected.

7.      The Brief clarifies that the "carve-out" contained in the Plan – allegedly preserving Canadian assets for Canadian creditors, is simply improper given that Shareholder Released Parties sat on multiple Debtor and non-debtor boards, making enterprise wide decisions across entities and IAC's, making it difficult if not impossible for Canadian creditors to ascertain the scope of the release – and giving rise to the possibility that Shareholder Released Parties, acting for non-debtors (US, Canadian or otherwise), with impact or direction on and to Purdue Canada, Canadian assets, and Canadian claims, are released from claims that otherwise would be maintainable under Canadian law.

8.      As described in the CMFN Appellate Brief, the non-consensual, non-debtor third party releases contained in the Plan, notwithstanding even the Canadian carve-put language, deprive the CMFN (and perhaps all Canadians) of claims as to non-debtor Shareholder Released Parties under the Canadian Competition Act RSC 1985, c C-34.

> "Further, while the Canadian Appellants' claims under the Competition Act concern actions by the Shareholder Released Parties conducted through both the Debtors and Sackler non-Debtor entities, they are not derivative claims either. These Competition Act claims are plainly covered under the releases because they concern the Debtor. But they are not "derivative" claims belonging to the estate because they do not "arise from harm done to the estate"—*In re Tronox*, 855 F.3d at 100—but rather harm done to Canadian citizens, including Purdue Canada. Nor do they "seek relief" against the Shareholder Released Parties for "push[ing] the Debtors into bankruptcy," *id*.—but instead seek relief for pushing more OxyContin in Canada, by increasing the sales of Purdue Canada—a Canadian entity that is not part of any insolvency proceeding and is not among the Debtors. Equally barred, and similarly not derivative, are the fraudulent-transfer actions that the Canadian Appellants might raise—or a Canadian trustee might raise on their behalf. They seek recovery for harm done to Purdue Canada, by draining it of assets that would otherwise be recoverable for Canadian creditors."

CMFN Appellate Brief at page 25.

9.      The CMFN Appeal is obviously proceeding on an expedited basis before the District Court – with the genuine intent of minimizing any and all harm.  As this Court well understands,

the Appeals will be argued on November 30, 2021.  This is a circumstance that is now clear, but was not the case at the time the Motion herein was filed.  Presumably a decision on the Appeal will be rendred quickly – but that timing is obviously one that is not susceptible to estimation.

10.    The CMFN believe, as borne out by their arguments to the District Court, that the Appeal has a strong likelihood of success on the merits. However, the Appeal is not the only time related factor this Court must consider.  At present, a contested hearing before Justice Conway in the CCAA on Canadian Recognition of the Plan Confirmation Order is pending and returnable on December 1, 2021.  As with the Appeal, it is impossible to estimate when the matter of recognition will be decided.  The CMFN's Factum to the CCAA is currently due November 5, 2021.

11.    It is not clear whether a CCAA determination not to recognize the Plan Confirmation Order, or to modify it as to the terms of Shareholder Releases, impacts the settlements that underly the Plan, and thereby, the likelihood of Plan effectiveness. As is made clear in the CMFN's appellate briefing before the District Court, just as there is an issue of whether non-consensual, non-debtor, third party releases can be effected under this Plan against foreign sovereigns, so too must Canada make its own determination, under its own law, as to the ultimate scope of these releases. The questions before the District Court, and the CCAA, are of international significance.

12.    In effect, by seeking a stay of the Plan Confirmation Order, what the CMFN seek is to protect Canadian interests as to a loss of rights and claims, resulting in otherwise unrecoverable damages.  This is specifically the risk of the overbroad non-consensual, non-debtor, third party releases in this matter.  It is also the risk of the classification of the CMFN claims in an unsecured class, outside of a trust class. The District Court for the Southern District of New York, in funding such otherwise unrecoverable deprivation to be the irreparable harm basis for a preliminary injunction, stated: ".   .   . at least three circuits have held that unrecoverable damages may be irreparable harm, without reference to the amount of the loss." *Regeneron Pharms., Inc. v. United*

*States HHS*, 510 F. Supp. 3d 29, 39, 2020 U.S. Dist. LEXIS 245158, 11-12, 2020 WL 7778037,

*citing Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp*., 715 F.3d 1268, 1289 (11th Cir.

2013) ("In the context of preliminary injunctions, numerous courts have held that the inability to

recover monetary damages because of sovereign immunity renders the harm suffered

irreparable."); *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir.

2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as

sovereign immunity constitutes irreparable injury."); *Iowa Utilities Bd. v. FCC*, 109 F.3d 418, 426

(8th Cir. 1996) ("The threat of unrecoverable economic loss . . . does qualify as irreparable

harm.").

13.    Here, the irreparable harm extends even further than mere unrecoverable monetary

damages, because of the non-monetary abatement relief provided for to similarly situated US

creditors, but not the CMFN.

14.    In its Opposition to the Motion, among other things, the Unsecured Creditors

Committee refers to a fact that should put a point on the CMFN's argument here:

> "From 2008 to 2017, the federal government collected $4 billion in tax revenue
> from distributions that Purdue made to the Sacklers (not even counting another
> $634 million received directly from Purdue in 2007)."

What that fact illustrates is the remarkable size of distributions to the Sacklers, from "Purdue." The

clear issue for the CMFN is that the releases contained in the Plan deprive Canadian Courts of the

separate review and potential recovery of those distributions, to the extent made out of Purdue

Canada, at the direction of Shareholder Released Parties, for the benefit of the very same

Shareholder Released Parties – whether opioid related – or not.  That cannot be so, and that is

evidence on behalf of the CMFN of irreparable harm of the kind sufficient to warrant the

imposition of a stay pending appeal under *Country Squire; Hirschfeld* and *In re Sabine Oil & Gas

Corp.*, cited at footnote 2 herein.

15.    It is admitted that all victims – whether in the US or Canada, may bear some form of harm resulting from the issuance of a stay.  To submit Declarations to that effect proves nothing.  This is the nature of a court's difficult determinations regarding injunctive relief.  If there were no harms, there would be no need for balancing.  Bus to the balancing of the harms here, what is obvious is that the harms worked upon the CMFN exceed the harms worked on similarly situated US creditors – principally because the CMFN are being deprived of avenues of financial recovery otherwise reserved to them under Canadian law, and abatement programs to which only similarly situated US creditors can avail themselves. This should be focal point of this Court's balancing of harms.

16.    The public interest related to the Appeals, and the matter generally, ultimately relates to many issues.  The public interest is not served by denying a stay in the within matter, given that the Appeal is proceeding expeditiously, and given the enormous weight of the matter.  Finality and international confidence in the US legal process is of the utmost importance.  Of course all careful practitioners counsel all creditors, whether they are domestic vendors, international lenders or foreign sovereigns, as to the effects of filing proofs of claim.  The issue here is that the scope of releases may have an undeniable chilling effect on international participation in US bankruptcy proceedings – and this is an important issue that requires resolution.  In the case at bar, the CMFN are pure creditors, not subject to any Debtor claim or counterclaim.  The cost to the US bankruptcy system may be high, where such creditors, for instance, are subject to Debtor claims and counterclaims, if such creditors are effectively discouraged from availing themselves of the jurisdiction, at an early stage in the case, due to the risks of non-consensual, non-debtor, third party releases being imposed.

17.    Finally, as to the issue posed by certain objectors as to the need for a supersedeas bond under *Rule* 8007, the argument horribly conflates the purpose and history of appeal bonds.

This is not the circumstance of an unpaid judgment against the CMFN pending appeal. This is the circumstance of the CMFN's rights under Canadian and US law being impacted by non-debtor, third party, non-consensual releases being imposed upon these creditors.

18.     Typically, a bond is required where "there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment . . . and where posting adequate security is practicable." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760, 205 U.S. App. D.C. 47 (D.C. Cir. 1980); *FDIC v. Ann-High Assocs.,* 1997 U.S. App. LEXIS 35547, 129 F.3d 113 (2nd Cir. 1997). If employing discretion to excuse the requirement of a bond, courts should consider whether an unsecured stay would "unduly endanger the judgment creditor's interest in ultimate recovery." *Id.* at 760-61. In the case at bar, the Debtors hold no judgment against the CMFN, and no counterclaim. The imposition of a supersedeas bond under the circumstances is totally unwarranted, and would be indicative that, in fact, something was taken from the CMFN by way of the releases – and that such taking did not comport with the jurisdiction of the Court..

## Conclusion

19.    In conclusion, the CMFN believe they have met the standard for issuance of a stay pending appeal.

Dated: November 1, 2021                    Respectfully submitted,

/s/ Allen J. Underwood, II
**LITE DEPALMA GREENBERG**
**& AFANADOR, LLC**
Allen J. Underwood II, Esq.
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
e-mail: aunderwood@litedepalma.com

*Counsel to Certain Canadian Municipal*
*Creditors and Appellants and Certain*
*Canadian First Nation Creditors and*
*Appellants*