DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OBJECTION TO LAMONT BROUSSARD'S**
**MOTION TO FILE PROOF OF CLAIM AFTER CLAIMS BAR DATE**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") submit this objection to the *Motion to File*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Proof of Claim After Claims Bar Date* [Dkt. No. 3893] (the "**Motion**") filed by LaMont Broussard ("**Mr. Broussard**") and respectfully state as follows:

1. Mr. Broussard requests that this Court extend the bar date as to him to allow him to file a late proof of claim. (Mot. at 1.) He indicates that he is "currently in inpatient treatment for opioid addiction," which he sought after losing "close family relations" because of his addiction to opioids and then heroin. (*Id.*) In the first proof of claim attached to the Motion, Mr. Broussard also indicates that he has been in and out of prison since 2004 "due to [his] opioid addiction." (*Id.* at 5.)

2. To date, the Debtors, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), and the Ad Hoc Group of Individual Victims (the "**PI Group**"), with the approval of this Court, have agreed to allow the filing of fifteen[2] late proofs of claim. Each of those late claim motions were filed by personal injury claimants who made sufficient individualized assertions regarding the reason for the untimely filing. (*See* Dkt. Nos. 1661, 1664, 2057, 2086, 2069, 2071, 2088, 2193, 2211, 2458, 2834, 3058, 3342, 3526 & 3764.) Indeed, thirteen of the late claims previously allowed by this Court and the two additional late claims proposed to be allowed were filed by incarcerated individuals with limited information and resources leading up to and following the bar date due to their incarceration and the attendant restrictions caused by the COVID-19 pandemic. (*See* Dkt. Nos. 1664, 2057, 2086, 2069, 2071, 2088, 2193, 2458, 2834, 3058, 3342, 3526, 3764, 3894, 3895.) The remaining two late claims were filed by (i) an individual who missed to deadline to file her proof claim by four

---

[2] The Debtors filed contemporaneously herewith the Notice of Proposed Order Granting Late Claim Motions, which will be heard on November 18, 2021 and proposes to allow two additional late claims (s*ee, e.g.*, Dkt. Nos. 3894, 3895), bringing the total to seventeen.

days due to issues with mail during the COVID-19 pandemic, and (ii) an individual who was unable to timely file her claim because she was undergoing medical treatment.  (*See* Dkt. Nos. 1661 & 2211.)  Each of the prior late claim motions provided a justifiable reason for the delay such that the Debtors, Creditors' Committee, and PI Group agreed to allow the claims as timely, and this Court found good and sufficient cause for granting the requested extensions.³  The same is not true of the Motion.  Accordingly, although the Debtors are sympathetic to Mr. Broussard's circumstances, they must object to the Motion.

        3.      Mr. Broussard's request does not satisfy this Circuit's strict application of the "excusable neglect" standard set forth in Federal Rule of Bankruptcy Procedure 9006(b)(1) for a late-claimant to file a claim after the bar date.  Courts have discretion to allow a late proof of claim only upon motion of a late-claimant showing "excusable neglect."  Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'").  The burden of meeting the *Pioneer* test for excusable neglect, however, falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" ***and*** that the neglect was "excusable."  *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010).  A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's

---

³ For the avoidance of doubt, the two additional late claims that the Debtors have proposed be allowed (*see, e.g.*, Dkt. Nos. 3894, 3895) have not yet been allowed by the Court.

omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

4. The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11.) Put simply, courts rarely extend the bar date for late-claimants, and Mr. Broussard's request for relief does little to meet the hard line drawn by the Second Circuit.

5. As an initial matter, with respect to the most important factor—the reason for the delay—it is unclear from the Motion why Mr. Broussard could not file a proof of claim before the bar date. Although Mr. Broussard indicates that he is "<u>currently</u> in inpatient treatment for opioid addiction" (Mot. at 1 (emphasis added)), he does not allege that he was in inpatient treatment prior to the bar date. Nor does he allege that this inpatient treatment or his unspecified

amount of time in prison (Mot. at 5) prevented him from timely filing a proof in claim. This defect alone is sufficient to deny the Motion. *In re DPH Holdings*, 434 B.R. at 83. In a letter dated October 27, 2021, the Debtors requested additional information concerning when Mr. Broussard entered inpatient treatment for opioid addiction and/or at what times he was in prison. To date, the Debtors have not received a response and, thus, must object to the Motion and request that the Court deny the Motion without prejudice.

6.  While the Debtors do not have any reason to believe that Mr. Broussard has not made his late request in good faith, both of the remaining *Pioneer* factors also weigh against Mr. Broussard. *First*, allowing Mr. Broussard's claim only would encourage other latecomers wishing to assert claims against the Debtors related to their opioid use to file claims in order to take part in distributions from the Debtors' estates, to the prejudice and detriment of both the Debtors and, more importantly, their creditors. *See, e.g.*, *In re Enron,* 419 F.3d at 132 (finding that bankruptcy court properly considered "the opening of the 'floodgates' to similar claims" and "the number of *potential* claimants who might have been prompted to file late claims in the wake of a ruling in [the movant]'s favor" in denying late claim motion); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *In re Nutri\*Bevco, Inc.*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990) ("Bar dates protect not only the debtor's interests, but creditors' interests as well [because they] establish[] a date by which the plan proponent can determine which liabilities will be asserted against the estate."); *see also* Jan. 24, 2020 Omnibus Hr'g Tr. 64: 8-12 ("[T]he rationale[] here for having a bar date . . . is perhaps more important in this case than

5

some other cases" because it is imperative to know "who individuals are who say they have a material claim.")

7. *Second*, the delay is substantial and will adversely impact these proceedings. Indeed, Mr. Broussard filed his proof of claim along with his Motion approximately a week and a half after this Court entered the order confirming the Debtors' plan on September 17, 2021 [Dkt. No. 3787], and nearly fourteen months after the bar date. The Debtors' plan was negotiated, developed, solicited, voted on, and approved by the Debtors' creditors and this Court with the understanding of potential recoveries based on the number of timely filed personal injury claims. Deeming Mr. Broussard's claim as timely without sufficient information as to the reason why he could not comply with the filing deadline—with its potential for opening the floodgates to a substantial number of additional similarly-situated personal injury claims—would result in attendant costs and delay to the final administration of these cases, and dilute the potential recoveries of those personal injury claimants who filed timely claims and, thus, are entitled to seek distributions from the personal injury trust under the Debtors' plan. *In re Enron*, 419 F.3d at 128 ("[C]ourts generally consider the degree to which . . . the delay may disrupt the judicial administration of the case.") (citation and quotations omitted).

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion without prejudice.

[*Remainder of page intentionally left blank*]

Dated: November 11, 2021
      New York, New York

*/s/ James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors*
*and Debtors in Possession*