**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649** |
| Debtors.[1] | **(Jointly Administered)** |

**COVERSHEET TO FIRST INTERIM FEE APPLICATION OF
GRANT THORNTON LLP FOR ALLOWANCE OF: (I) COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED FOR RETENTION AS
CONSULTANTS TO DEBTORS FOR SERVICES RELATED TO THE PLAN
FOR THE PERIOD JANUARY 20, 2021 TO SEPTEMBER 30, 2021; AND
(II) PAYMENTS FOR SERVICES PERFORMED IN THE ORDINARY
COURSE OF DEBTORS' BUSINESS THROUGH SEPTEMBER 30, 2021**

In accordance with Rule 2016-1 of the Local Rules of Bankruptcy Procedure, incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases* [General Order M-447], among other guidelines (the "**Local Guidelines**") and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Grant Thornton LLP ("**Grant Thornton**"), as tax and valuation consultants for Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submits this summary (this "**Summary**") of: (i) fees and expenses sought as actual and necessary in the fee

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1

application to which this Summary is attached (the "**Application**") for certain tax and valuation services that Grant Thornton provided to the Debtors relating specifically to the Debtors' plan of reorganization (as described in further detail in the Application, the "**Plan Services**") for the period of January 20, 2021 through September 30, 2021 (the "**Fee Period**"); and (ii) payments made to Grant Thornton on account of other tax related services provided to the Debtors by Grant Thornton in the ordinary course of Debtors' business (as described in further detail in the Application, the "**OCB Tax Services**") that accrued during the Fee Period.

*General Information*

| | |
|---|---|
| **Name of Applicant:** | Grant Thornton |
| **Authorized to Provide Professional Services to:** | Debtors |
| **Dates of Orders Approving Retention for Plan Services:** | April 28, 2021 (*nunc pro tunc* to January 20, 2021) and September 28, 2021 (for supplemental services provided effective September 1, 2021) |

*Summary of Fees and Expenses Requested for the Fee Period For Plan Related Services For Which Grant Thornton was Retained*

| | |
|---|---|
| **Time Period Covered for Plan Services for this Application:** | January 20, 2021 through September 30, 2021 |
| **Total Compensation Requested for Plan Related Services:** | $192,710.50 |
| **Total Expenses Requested:** | $34,703.49 |
| **Total Compensation and Expenses Requested:** | $227,413.99 |
| **Total Compensation and Expenses Previously Paid or Waiting Payment Through Prior Monthly Fee Statements ("MFS"):** | $188,871.89 |
| **20% Holdback That Remains to be Paid:** | $38,542.10 |

| | |
|---|---|
| *Summary of Rates and Other Related Information for the Fee Period* | |
| **Blended Rate in This Application for All Timekeepers:** | $575.30 |
| **Number of Professionals Included in This Application:** | 36 |
| **Difference Between Fees Budgeted and Compensation Sought for This Fee Period:** | N/A |
| **Number of Professionals Billing Fewer Than 15 Hours During This Fee Period:**[2] | 32 |
| **Increase in Rates Since Date of Retention:** | N/A |
| *Summary of Other Fees and Expenses Paid To Grant Thornton During the Fee Period for OCB Tax Services that Grant Thornton Provided to Debtors Prior to Its Retention, and Continues to Provide, in the Ordinary Course Business* | |
| **Time Period Covered for OCB Tax Services for this Application:** | September 15, 2019 through September 30, 2021 |
| **Total Compensation Related to OCB Tax Services for this Application:** | $277,299.97[3] |

This is a(n):   ____ monthly   _x_ interim   ___ final application

---

[2] *See infra* at para. 20 and fn.6 for a discussion regarding Grant Thornton's use of specialized professionals to address discrete issues for Plan Services rendered to Debtors in order to minimize fees incurred.

[3] $201,948.90 of this $277,299.97 amount was paid in the ordinary course of business by Debtors before Grant Thornton began filing monthly fee statements in accordance with the order approving its retention. Moreover, out of an abundance of caution and to ensure full disclosure, all payments made to Grant Thornton for OCB Tax Services provided to Debtors in the ordinary course of business by Grant Thornton have been disclosed in Grant Thornton's monthly fee statements filed with the Court.

3

**Summary of Prior Monthly Fee Statements for Plan Services**

| Period Covered | Monthly Fee Application Totals | | Total Monthly Amounts Requested | | Total Paid or to be Paid by 12/15/2021 | Total Remaining Unpaid Balance |
|---|---|---|---|---|---|---|
| | Fees (100%) | Expenses (100%) | Fees (80%) | Expenses (100%) | | |
| 1/20/21 to 6/30/21 [ECF No. 3326] ("**1st MFS**") | $48,926.50 | $16,040.00 | $39,141.20 | $16,040.00 | $55,181.20 | $9,785.30 |
| 7/1/21 to 7/31/21 [ECF No. 3738] ("**2nd MFS**") | $9,643.00 | $3,877.50 | $7,714.40 | $3,877.50 | $11,591.90 | $1,928.60 |
| 8/1/21 to 9/30/21 [ECF No. 4019] ("**3rd MFS**")[4] | $134,141.00 | $14,785.99 | $107,312.80 | $14,785.99 | $122,098.79 | $26,828.20 |
| **TOTALS** | **$192,710.50** | **$34,703.49** | **$154,168.40** | **$34,703.49** | **$188,871.89** | **$38,542.10** |

**Summary of Payments Made for OCB Tax Services**

| Applicable MFS | Amounts in MFS | Total Paid or To Be Paid Before 12/15/2021 |
|---|---|---|
| Amounts Invoiced and Paid for OCB Tax Services Prior to Grant Thornton's 1st MFS | N/A | $201,948.90 |
| 1st MFS | $0.00 | $0.00 |
| 2nd MFS | $18,361.85 | $18,361.85 |
| 3rd MFS | $56,989.22 | $56,989.22 |
| **TOTAL** | | **$277,299.97** |

---

[4] The objection deadline for the 3rd MFS was November 8, 2021. No objection was filed and Grant Thornton expects that the Debtors will timely pay all amounts sought in the 3rd MFS in their next billing cycle before the hearing on this Application.

4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649** |
| **Debtors.** | **(Jointly Administered)** |

**FIRST INTERIM FEE APPLICATION OF GRANT THORNTON LLP FOR: (I) ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR RETENTION AS CONSULTANTS TO DEBTORS FOR SERVICES RELATED TO THE PLAN FOR THE PERIOD JANUARY 20, 2021 TO SEPTEMBER 30, 2021; AND (II) DISCLOSURE OF PAYMENTS FOR SERVICES PERFORMED IN THE ORDINARY COURSE OF DEBTORS' BUSINESS THROUGH SEPTEMBER 30, 2021**

Pursuant to sections 327, 330 and 331 of chapter 11 of title 11 of the United States Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, the *Order Authorizing the Retention and Employment of Grant Thornton LLP as Tax Restructuring Consultants for the Debtors Nunc Pro Tunc to January 20, 2021* [ECF No. 2760] (the "**Initial Retention Order**"), the *Order Authorizing the Supplemental Retention and Employment of Grant Thornton LLP by the Debtors for Tax Analysis and Valuation Services Effective September 1, 2021* [ECF No. 3831] (the "**Supplemental Retention Order**"),[5] and the Interim Compensation Order, Grant Thornton submits this *First Interim Fee Application of Grant Thornton LLP for Allowance of: (I) Compensation and Reimbursement of Expenses Incurred for Retention as Consultants to Debtors for Services Related to the Plan for the Period January 20, 2021 through September 30, 2021; and (II) Payments for Services Performed in the Ordinary Course of Debtors' Business through September 30, 2021* (this "**Application**").

---

[5] Copies of the Initial Retention Order and the Supplemental Retention Order are attached hereto as **Exhibit B**.

5

By this Application, Grant Thornton seeks approval and allowance of its compensation and reimbursement of expenses for Plan Services rendered to Debtors by Grant Thornton during the Fee Period in the total amount of $227,413.99, comprised of: (i) reasonable compensation in the amount of $192,710.50 for actual, necessary Plan Services that Grant Thornton incurred during the Fee Period; and (ii) reimbursement in the amount of $34,703.49 for actual, reasonable and necessary expenses incurred by Grant Thornton during the Fee Period. Grant Thornton further seeks an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates will be $38,542.10.

By this Application, Grant Thornton also seeks approval and allowance of compensation and expenses paid to Grant Thornton for tax related services provided to the Debtors in the ordinary course of the Debtors' business which, through September 30, 2021, totals $277,299.97. Because of Grant Thornton's retention in these bankruptcy cases by order entered April 28, 2021, out of an abundance of caution and for purposes of full disclosure, Grant Thornton is including in this Application (and has included in its monthly fee statements filed since its retention) the amounts accrued and paid to Grant Thornton in the ordinary course of business relating to the OCB Tax Services through September 30, 2021.

## JURISDICTION

1.  The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. The Chapter 11 Cases

3. On September 15, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 18, 2019, the Court entered an order [ECF No. 59] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No entity has requested the appointment of a trustee or examiner in these chapter 11 cases. On September 27, 2019, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 131].

4. A description of the Debtors' business, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to facilitate effective administration of these chapter 11 cases are set forth in the Debtors' Informational Brief [ECF No.17].

5. On November 21, 2019, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

### B. The Debtors' Retention of Grant Thornton

#### 1. *OCB Tax Services Provided by Grant Thornton in the Ordinary Course of Debtors' Business*

6. Prior to September 15, 2019 (the "**Petition Date**"), the Debtors engaged Grant Thornton to provide tax-related services pursuant to the terms and conditions of that certain master agreement, dated June 1, 2018 (the "**MSA**"), and other related statements of work executed in connection therewith.

7

7.  As previously disclosed in Grant Thornton's retention applications [ECF Nos. 2636 & 3761] and previous monthly fee statements [ECF Nos. 3738 & 4019], the Debtors retained Grant Thornton after the Petition Date to continue to provide certain tax-related services to assist the Debtors in the ordinary course of their business operations (the "**OCB Tax Services**"), which work consisted of the following services:

   a. <u>Sales and Use Tax Compliance Services</u>: On August 11, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Sales and Use Tax Return Preparation Services*, pursuant to which Grant Thornton was retained to assist the Debtors with the generation of sales, use and other transactional tax returns by providing tax return compliance services. That August 11, 2020 statement of work was subsequently replaced and superseded by that certain *Statement of Work for Sales and Use Tax Return Preparation Services*, dated March 2, 2021.

   b. <u>2020 Tax Preparation Services</u>: On December 7, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Tax Compliance Services*, pursuant to which Grant Thornton was retained to prepare the Debtors' federal and state tax returns, including extension calculations and estimated tax payments, for the 2020 taxable year.

   c. <u>Global Mobility Services</u>: On June 18, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Global Mobility Services*, pursuant to which Grant Thornton was retained to provide tax compliance and consulting services for disclosures, review and execution related to United States and United Kingdom tax returns for the years 2015 through 2019. Such

services included, among other things: (i) discovery of over-reporting of income; (ii) consultation on the approach to amendments; (iii) preparation of adjusted compensation figures for necessary years; (iv) preparation of tax equalization settlements for necessary years; (v) discussions on processes and filings with the Debtors and David Lundie; and (vi) assistance with responses to IRS and HMRC notices. On April 15, 2021, the Debtors and Grant Thornton entered into that certain *Statement of Work for GMS Compliance Services*, pursuant to which Grant Thornton's engagement to provide Global Mobility Services was extended to the 2020 and 2021 tax years.

8. Because the OCB Tax Services were being provided in the ordinary course of the Debtors' business and were unrelated to the administration of the bankruptcy cases, Grant Thornton understood that it was not necessary for it to be retained in these bankruptcy cases and that payment on account of such OCB Tax Services would be paid consistent with past practices and in the ordinary course of the Debtors' ongoing business operations. Thus, prior to approval of Grant Thornton's retention with respect to the Plan Services (as further described below), the OCB Tax Services, including the billing and payment process, were not subject to the Interim Compensation Order or other fee procedures applicable to professionals retained in these bankruptcy cases.

### 2. *Plan Services For Which Grant Thornton Was Retained*

9. In January 2021, the Debtors requested that Grant Thornton provide additional tax structuring services that directly related to the development of the Debtors' chapter 11 plan of reorganization in these bankruptcy cases (the "**Plan**").[6] As a result of this requested expansion in

---

[6] These tax structuring services included: (a) assisting the Debtors' management in analyzing the income tax consequences to the Debtors with respect to transactions between the Debtors and the new entity

9

the scope of work being provided, on or about January 20, 2021, Grant Thornton and the Debtors entered into that certain *Statement of Work for Tax Structuring Services* (the "**Tax Structuring Plan-Related SOW**").

10. After Grant Thornton conducted an extensive conflicts check to support its retention application, on April 13, 2021, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Grant Thornton LLP as Tax Structuring Consultants to the Debtors Nunc Pro Tunc to January 20, 2021* [ECF No. 2636] (the "**Retention Application**"), and the Court entered the Initial Retention Order on April 28, 2021.

11. In August 2021, Debtors requested that Grant Thornton further expand the scope of its retention and provide additional services related to their Plan confirmation efforts. Specifically, Debtors and Grant Thornton entered into the *Statement of Work for Advisory Services*, dated August 25, 2021 (the "**Valuation Services Plan-Related SOW**"), pursuant to which Grant Thornton was retained, subject to Court approval, to provide valuation advisory service to Debtors relating to the Plan and the formation of the Newco as provided therein. Debtors and Grant Thornton also entered into the *Statement of Work for Employment Tax Services & State Corporate Income/Franchise Tax Nexus Analysis Services*, dated August 26, 2021 (the "**Tax Analysis Plan-Related SOW**"), pursuant to which Grant Thornton was retained, subject to Court approval, to provide tax analysis for certain employment and other tax issues relating to the Plan and formation of the Newco as provided therein.

---

("**Newco**") anticipated to be created in the bankruptcy reorganization; (b) consulting with Debtors and its legal counsel regarding the federal and state income tax implications of transactions required by the Court (as proposed by Debtors' legal counsel) effectuating the bankruptcy reorganization; (c) assisting Debtors' management in determining the federal income tax basis in the assets of the Newco and its affiliates immediately following the bankruptcy reorganization; and (d) assisting in modeling future U.S. federal and state income tax cash tax liabilities for Newco following emergence from bankruptcy.

10

12. On September 10, 2021, Debtors filed the *Application of Debtors for Authority to Supplement Retention and Employment of Grant Thornton LLP for Tax Analysis and Valuation Services Effective September 1, 2021* [ECF No. 3761], and the Court entered the Supplemental Retention Order on September 28, 2021.

13. Pursuant to the Initial Retention Order and the Supplemental Retention Order, compensation and reimbursement for the services provided under the Tax Structuring Plan-Related SOW, the Valuation Services Plan-Related SOW and the Tax Analysis Plan-Related SOW (collectively, the "**Plan Services**") are subject to, and must be in compliance with, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court for allowance of monthly, interim and final fee applications.

## COMPENSATION PAID AND ITS SOURCES

14. All Plan Services during the Fee Period for which compensation is requested by Grant Thornton were performed for or on behalf of the Debtors. Additionally, Grant Thornton has not received any payment or promises of payment from any source other than the Debtors for services rendered or to be rendered in any capacity whatsoever in connection with matters covered by this Fee Application.

15. These professional services were rendered by Grant Thornton staff.

16. To the extent that billable time or disbursement charges for services rendered or expenses incurred relate to the Fee Period, but were not processed prior to the preparation of this Fee Application, Grant Thornton reserves the right to request compensation for such services and reimbursement of such expenses in a future fee application.

11

17.   A certification confirming Grant Thornton's compliance with the Fee Guidelines is annexed hereto as **Exhibit A**.

## SUMMARY OF REQUESTED COMPENSATION

18.   During the Fee Period, Grant Thornton's professionals expended a total of 271.9 hours in connection with providing necessary Plan Services.  Grant Thornton has been able to efficiently provide services by utilizing the expertise of professionals to effectively advise the Debtors regarding discrete issues and ensuring that the level of seniority is commensurate with the assignment.

19.   Grant Thornton has been retained to provide Plan Services to Debtors that consist of three (3) separate projects for which Grant Thornton charges, all or in part, based on hourly rates: (i) Tax Structuring Services, (ii) Employee Tax Services, and (iii) Valuation Services.  Each of these discrete projects requires distinct skills and experience, and thus, requires separate teams.

20.   Moreover, Grant Thornton is able to minimize the amount in fees it incurs by using highly specialized professionals knowledgeable in distinct areas of complex tax issues to address specific issues as they arise.  Accordingly, during the course of providing Tax Structuring Services, Grant Thornton was requested to address certain specific matters related to Puerto Rico taxes, state income taxes, sales and use taxes, employment taxes, timing of certain deductions, and certain other specialty matters.  Each of these matters required a specialty tax professional to help address. Grant Thornton responded to each of these requests in an efficient manner and typically expended less than 15 hours in addressing each specific request.[7]

---

[7] The Employee Tax Services and Valuation Services began only in the last month of the Fee Period, and will require additional work going forward.  Thus, Grant Thornton anticipates that certain individuals providing these services below 15 hours during the Fee Period will incur more than 15 hours over the total project.

12

21.     Grant Thornton, in connection with Plan Services rendered on behalf of the Debtors, respectfully requests allowance of reasonable compensation of such services in the total amount of $192,710.50 and reimbursement of actual and necessary expenses incurred in the amount of $34,703.49, for an aggregate total of $227,413.99 for the Fee Period.

22.     Because the Debtors have, or are expected to have, paid Grant Thornton $188,871.89 of the requested allowed amount pursuant to the Interim Compensation Order, Grant Thornton also seeks an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates will be $38,542.10.

23.     Annexed hereto as **Exhibit C** is a list of Grant Thornton professionals and paraprofessionals, their position with the firm, the hourly rate charged for their services, the number of hours worked on this matter, and other pertinent information. **Exhibit D** annexed hereto is a list of the various categories and the total fees and total hours expended by subject matter category.

24.     **Exhibit E** attached hereto are the detailed records of the Plan Services provided by Grant Thornton for this Fee Period, organized by categories. These detailed time records also were appended to Grant Thornton's monthly fee statements.

25.     Grant Thornton is engaged in ongoing discussions with the Debtors regarding budgeting and staffing issues. Annexed hereto as **Exhibit F** is Grant Thornton's staffing plan in connection with services rendered to the Debtors.

## SUMMARY OF SERVICES RENDERED

26.     During the Fee Period, Grant Thornton provided extensive and critical professional advice and other services, involving complex, novel issues involved in resolving the disparate

interests of the diverse stakeholder groups in these chapter 11 cases. The following is a summary of the significant services provided to the Debtors in each of the billing categories. The following summary of services rendered during the Fee Period is not intended to be a detailed description of the work performed. Rather, it merely highlights certain billing project categories in which services were rendered by Grant Thornton, as well as identifies some of the issues Grant Thornton was required to address. Detailed descriptions of the day-to-day services provided by Grant Thornton and the time expended performing such services in each project billing category are attached hereto as **Exhibit E**.

| Categories for Tax Structuring Services: | Total Hours | Total Fees | Description |
|---|---|---|---|
| Engagement Management | 14.9 | $8,862.50 | This category includes activities associated with preparing information necessary to complete the retention applications for Grant Thornton, including analysis of the interested parties list and preparation of the disclosure exhibit to include in the retention application. This category also included time spent preparing materials for the MFS's. |
| Exit Structure Analysis | 48.55 | $31,737.25 | This category included activities associated with assessing income tax consequences of the potential plan structure, including liquidation of potential entities, maintaining employer identification numbers, etc. |
| Tax Modeling | 61.9 | $35,081.50 | This category included activities associated with modeling the future tax projections related to the Debtors' post-emergence structure. |
| **Category for Valuation Services:** | **Total Hours** | **Total Fees** | **Description** |
| Fresh Start | 104.95 | $54,624.50 | This category includes activities associated with valuation for fresh start accounting for financial reporting purposes. |
| Tax | 5.1 | $3,056.00 | This category includes activities associated with modeling and valuation of legal entities for tax purposes. |

14

| Categories for Employee Tax Services | Total Hours | Total Fees | Description |
|---|---|---|---|
| Payroll Tax Support (Hourly Fees) | 36.5 | $23,061.25 | This category included activities associated with preparation of state and local payroll tax registration, weekly calls with the Purdue payroll team, update and closure forms, coordination with Ceridian, etc. |
| Preparation of Matrix and Successorship Memos (Fixed Fee) | N/A | $36,287.50 | This category includes activities associated with preparation of payroll tax matrix and successorship memos, etc. |

27. Grant Thornton respectfully submits that the Plan Services that it has rendered on behalf of the Debtors during the Fee Period were necessary and appropriate and have directly contributed to the effective administration of these cases, including the successful confirmation of the Plan.

### ACTUAL AND NECESSARY EXPENSES

28. As set forth in **Exhibit G** hereto, Grant Thornton has incurred or disbursed $34,703.49 in expenses in providing professional services to the Debtors during the Fee Period. These expense amounts are intended to cover Grant Thornton's direct expenses which are not incorporated into the hourly billing rates. Only clients for whom the services are actually used are separately charged for such services.

29. Grant Thornton has made every effort to minimize its expenses in the Chapter 11 Cases. The actual expenses incurred in providing professional services to the Debtors were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors.

30. In connection with Grant Thornton's retention in these bankruptcy cases Grant Thornton utilized its own outside bankruptcy counsel to assist Grant Thornton with its retention and fee approval procedures. Pursuant to the Initial Retention Order:

"Grant Thornton's reimbursable expenses may include the reasonable and necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges of Grant

> Thornton's external legal counsel (without the need for such legal counsel to be retained as a professional in the chapter 11 cases); provided, that, if Grant Thornton seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Grant Thornton's own applications, both interim and final, and these invoices and time records shall be subject to the approval of the *[sic]* Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code."

Initial Retention Order, ¶ 4. In accordance with the Initial Retention Order, **Exhibit G** also includes the invoices and supporting time records for Grant Thornton's outside legal counsel that constitute the reasonable and necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges incurred by Grant Thornton in connection with utilizing such external legal counsel.

### **GRANT THORNTON'S REQUESTED COMPENSATION SHOULD BE ALLOWED**

31.  Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code provides that a court may award a professional compensation for actual necessary services rendered and reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a) (1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and value of such services, taking into account all relevant factors, including-
>
> (a) the time spent on such services;
>
> (b) the rates charged for such services;
>
> (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(e) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

32. The foregoing professional services were performed by Grant Thornton in an efficient manner, were necessary and appropriate to the administration of the Chapter 11 Cases, and were in the best interests of the Debtors, their estates, and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved. As required by the U.S. Trustee guidelines, annexed hereto as **Exhibit H** is a chart setting forth the comparative blended rates of the professionals who rendered services with a corresponding comparison of rates for Grant Thornton professionals not involved in these Chapter 11 Cases.

## DISCLOSURE AND ALLOWANCE OF COMPENSATION FOR OCB TAX SERVICES

33. Attached as **Exhibit I** are invoices for the total amount of reasonable compensation for actual, necessary OCB Tax Services that Grant Thornton incurred covering the Fee Period. Copies of these invoices also were previously attached to the applicable MFS. In light of Grant Thornton's retention in these bankruptcy cases by order entered April 28, 2021, out of an abundance of caution and for purposes of full disclosure, Grant Thornton are including the amounts paid to Grant Thornton on account of the OCB Tax Services through the end of the Fee Period.

## NOTICE

34. The Debtors will provide notice of this Application in accordance with the Interim Compensation Order. Grant Thornton submits that no other or further notice be given.

**WHEREFORE**, Grant Thornton, in connection with services rendered on behalf of the Debtors, respectfully requests: (i) allowance of compensation and reimbursement of expenses for Plan Services rendered to Debtors by Grant Thornton during the Fee Period in the total amount of $227,413.99, comprised of: (a) reasonable compensation in the amount of $192,710.50 for actual, necessary Plan Services that Grant Thornton incurred during the Fee Period, and (b) reimbursement in the amount of $34,703.49 for actual, reasonable and necessary expenses incurred by Grant Thornton during the Fee Period; (ii) an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates will be $38,542.10; (iii) allowance of compensation and expenses paid to Grant Thornton for tax related services provided to the Debtors in the ordinary course of the Debtors' business which, through September 30, 2021, totals $277,299.97; and (iv) such other and further relief as the Court deems appropriate.

November 11, 2021
New York, NY

**GRANT THORNTON LLP**

_/s/ Raymond Werth_

Raymond Werth
Partner, Grant Thornton LLP
757 Third Ave., 9th Floor
New York, NY 10017
Telephone: (212) 599-0100