## **EXHIBIT A**

## **CERTIFICATION OF RAYMOND WERTH**

**CERTIFICATION**

I, Raymond Werth, hereby certify as follows:

1. I am a Partner of the firm of Grant Thornton LLP ("**Grant Thornton**"). I am duly authorized to execute this certification on behalf of Grant Thornton.

2. I submit this certification in support of the *First Interim Fee Application of Grant Thornton LLP for: (I) Allowance of Compensation and Reimbursement of Expenses Incurred for Retention as Consultants to Debtors for Services Related to the Plan for the Period January 20, 2021 through September 30, 2021; and (II) Disclosure of Payments for Services Performed in the Ordinary Course of Debtors' Business through September 30, 2021* (the "**Application**"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Application.

3. I am familiar with the work performed on behalf of the Debtors as set forth in the Application.

4. I have personally reviewed the information contained in the Application to certify to certain matters addressed in the Interim Compensation Order, Rule 2016-1 of the Local Rules of Bankruptcy Procedure, incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases* [General Order M-447, among other guidelines (the "**Local Guidelines**"), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**"). and .

5. To the best of my knowledge, information and belief formed after reasonable inquiry of Grant Thornton's accounting personnel and staff, I believe the contents of the Application to be true and correct in all material respects and that the Application materially complies with the mandatory guidelines set forth in the Fee Guidelines except as otherwise indicated in the Application.

6. The following is my response, on behalf of Grant Thornton, to the questions identified in the UST Guidelines:

a. **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms of services pertaining to this engagement that were provided during the application period? If so, please explain.

   **Answer**: Yes. Grant Thornton agreed to reduce its standard hourly rates for the Plan Services, which discounts ranged from 25% to 55% depending on the services provided. In addition, Grant Thornton's standard hourly tax rates were increased in August 2021 in the normal course of business, but Grant Thornton did not apply those customary rate increases to professionals working on matters in these cases.

b. **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

   **Answer**: Grant Thornton has provided the Debtors with the actual amount of fees incurred on a monthly basis and engages in on-going discussions with the Debtors regarding fees and expenses generally, but did not prepare an itemized budget for the Fee Period.

c. **Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

   **Answer**: No.

d. **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

   **Answer**: No.

e. **Question:** Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

   **Answer**: No.

f. **Question**: If the fee application includes any rate increases since retention: (i) did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: Grant Thornton's standard hourly tax rates were increased in August 2021 in the normal course of business, but Grant Thornton did not apply those customary rate increases to professionals working on matters in these cases. One professional, Mr. Brian Angstadt, was promoted to Managing Director effective September 1, 2021, and as such, the hourly rate charged on and after September 1, 2021 for his time was reflective of this new position, which is the agreed upon, reduced rate for that level for this engagement.

November 11, 2021  
New York, NY

**GRANT THORNTON LLP**

_____

Raymond Werth  
Partner, Grant Thornton LLP  
757 Third Ave., 9th Floor  
New York, NY 10017  
Telephone: (212) 599-0100