1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8

9         Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   300 Quarropas Street, Room 248

14                   White Plains, NY 10601

15

16                   November 9, 2021

17                   10:20 AM

18

19

20

21    B E F O R E :

22    HON ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  ART

Page 2

1   HEARING re Order signed on 11/3/2021 Establishing Procedures

2   for Remote Hearing on Motions for Stay Pending Appeal with

3   hearing to be held on 11/9/2021 at 10:00 AM at

4   Videoconference (ZoomGove) (RDD)

5

6   HEARING re Notice of Agenda / Agenda for November 9, 2021

7   Hearing

8

9   HEARING re Motion for Stay Pending Appeal / Memorandum of

10  Law In Support of United States Trustees Expedited Motion

11  for a Stay of Confirmation Order and Related Orders Pending

12  Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007

13  (related document(s)3777, 3776) filed by Linda Rifkin on

14  behalf of United States Trustee. (ECF #3778)

15

16  HEARING re Objection to Motion / Ad Hoc Committee's

17  Objection to Stay Motions (related document(s)3801, 3873,

18  3972, 3789, 3778, 3803, 3845) filed by Kenneth H. Eckstein

19  on behalf of Ad Hoc Committee of Governmental and Other

20  Contingent Litigation Claimants. (ECF #4002)

21

22  HEARING re Opposition Tribal Group Joinder in Opposition to

23  Stay Motions filed by Peter D'Apice on behalf of Certain

24  Native American Tribes and Others (ECF #4003)

25

1   HEARING re Opposition of the Official Committee of Unsecured

2   Creditors to Motions for Stay Pending Appeal (related

3   document(s) 3801, 3873, 3789, 3845) filed by Ira S.

4   Dizengoff on behalf of The Official Committee of Unsecured

5   Creditors of Purdue Pharma L.P., et al. (ECF #4006)

6

7   HEARING re Opposition The Ad Hoc Committee of NAS Children's

8   Joinder to Opposition of the Official Committee of Unsecured

9   Creditors to Motions for Stay Pending Appeal (related

10  document(s)4006) filed by Harold D. Israel on behalf of Ad

11  Hoc Committee of NAS Babies. (ECF #4009)

12

13  HEARING re Opposition Joinder of the Private Insurance

14  Ratepayers to Opposition of the Official Committee of

15  Unsecured Creditors to Motions for Stay Pending Appeal

16  (related document(s)3801, 3873, 3789, 3845) filed by

17  Nicholas F. Kajon on behalf of Eric, Hestrup, et al.

18  (ECF #4010)

19

20  HEARING re Opposition /Joinder (related document(s)4006)

21  filed by Lauren Guth Barnes on behalf of Blue Cross Blue

22  Shield Association. (ECF #4011)

23

24

25

Page 4

1    HEARING re Objection to Motion /The Ad Hoc Group of

2    Individual Victims' (I) Objection to the United States

3    Trustee's and Certain Public Creditors' Motion for Stay

4    Pending Appeal and (II) Joinder in the Opposition of the

5    Official Committee of Unsecured Creditors to Motions for

6    Stay Pending Appeal (related document(s)3873, 3972, 3789,

7    3845) filed by J. Christopher Shore on behalf of Ad Hoc

8    Group of Individual Victims of Purdue Pharma L.P.

9    (ECF #4012)

10

11   HEARING re Memorandum of Law/Debtors' Memorandum of Law in

12   Opposition to the Motions for Stays of the Confirmation

13   Order and the Advance Order Pending Appeal (related .

14   document(s)3801, 3873, 3972, 3890, 3789, 3778, 3860, 3845)

15   filed by Marshall Scott Huebner on behalf of Purdue Pharma

16   L.P. (ECF #4014)

17

18   HEARING re Opposition of the MSGE Group to the Motions to

19   Stay Pending Appeal (related document(s)3801, 3873, 3890,

20   3789, 3860, 3845) filed by Kevin C. Maclay on behalf

21   of Multi-State Governmental Entities Group. (ECF #4016)

22   Opposition - Joinder to the Opposition of the Official

23   Committee of Unsecured Creditors to Motions for Stay Pending

24   Appeal (related document(s)4006) filed by Michael Patrick

25   O'Neil on behalf of Ad Hoc Group of Hospitals. (ECF #4017)

Page 5

1   HEARING re Reply to Motion Reply in Support of United States

2   Trustee's Motion for a Stay of Confirmation Order and

3   Related Orders Pending Appeal Pursuant to Federal Rule of

4   Bankruptcy Procedure 8007 (related document(s)3801, 3972,

5   3778) filed by Paul Kenan Schwartzberg on behalf of United

6   States Trustee. (ECF #4050)

7

8   Related Documents:

9   Order signed on 9/15/2021 Granting Motion (I) Authorizing

10  the Debtors to Fund Establishment of the Creditor Trusts,

11  the Master Disbursement Trust and Topco, (II) Directing

12  Prime Clerk LLC to Release Certain Protected Information,

13  and (III) Granting Other Related Relief (Related Doc# 3484).

14  (ECF #3773)

15

16  HEARING re Motion to Shorten Time United States Trustees Ex

17  Parte Motion For An Order Shortening Notice And Scheduling

18  Hearing With Respect To The United States Trustees Expedited

19  Motion For A Stay Of Confirmation Order And Related Orders

20  Pending Appeal Pursuant To Federal Rule Of Bankruptcy

21  Procedure 8007 (related document(s)3 778) filed by Linda

22  Riffkin on behalf of United States Trustee.(ECF #3779)

23

24

25

Page 6

1    HEARING re Modified Bench Ruling On For Confirmation Of

2    Eleventh Amended Joint Chapter 11 Plan Signed on 9/17/2021.

3    (ECF #3786)

4

5    HEARING re Findings Of Fact, Conclusions Of Law, And Order

6    Confirming The Twelfth Amended Joint Chapter 11 Plan Of

7    Reorganization Of Purdue Pharma L.P. And Its Affiliated

8    Debtors Signed On 9/17/2021 (related document(s)3726).

9    (ECF #3787)

10

11    HEARING re Amended Motion for Stay Pending Appeal/ Amended

12    Memorandum of Law In Support Of United States Trustee's

13    Expedited Motion For A Stay Of Confirmation Order And

14    Related Orders Pending Appeal Pursuant To Federal Rule Of

15    Bankruptcy Procedure 8007 (related document(s)3799, 3777,

16    3776, 3778, 3779) filed by Linda Riffkin on behalf of United

17    States Trustee. (ECF #3801)

18

19    HEARING re Motion to Stay/ Memorandum of Law in Support of

20    United States Trustee's Expedited Motion to Extend the

21    Automatic Stay of the Confirmation Order and for a Limited

22    Stay of the Related Orders Pending Resolution of His

23    Expedited Motion for a Stay Pending Appeal (related

24    document(s)3786, 3787, 3773) filed by Linda Riffkin on

25    behalf of United States Trustee. (ECF #3803)

Page 7

1    HEARING re Motion to Shorten Time I United States Trustees

2    Ex Parte Motion for an Order Shortening Notice and

3    Scheduling Hearing with Respect to the United States

4    Trustee's Expedited Motion to Extend the Automatic Stay of

5    the Confirmation Order and for a Limited Stay of the Related

6    Orders Pending Resolution of His Expedited Motion for a

7    Stay Pending Appeal (related document(s)3803) filed by Linda

8    Riffkin on behalf of United States Trustee. (ECF #3804)

9

10   HEARING re Statement/ Notice of Listen-Only Dial-in for

11   Status and Scheduling Conference (related document(s)3779)

12   filed by Eli J. Vonnegut on behalf of Purdue Pharma L.P.

13   (ECF #3838)

14

15   HEARING re Motion for Stay Pending Appeal / Second Amended

16   Memorandum Of Law In Support Of United States Trustees

17   Amended Expedited Motion For A Stay Of Confirmation

18   Order And Related Orders Pending Appeal Pursuant To Federal

19   Rule Of Bankruptcy Procedure 8007 (related document(s)3801,

20   3778) filed by Brian S. Masumoto on behalf of United States

21   Trustee. (ECF #3972)

22

23

24

25

Page 8

1   HEARING re Motion for Stay Pending Appeal/ Blackline Second

2   Amended Memorandum Of Law In Support Of United States

3   Trustees Amended Expedited Motion For A Stay Of Confirmation

4   Order And Related Orders Pending Appeal Pursuant To Federal

5   Rule Of Bankruptcy Procedure 8007 (related document(s)3972)

6   filed by Brian S. Masumoto on behalf of United States

7   Trustee. (ECF #3973)

8

9   HEARING re Objection to Motion / Ad Hoc Committee's

10  Objection to Stay Motions (related document(s)3801, 3873,

11  3972, 3789, 3778, 3803, 3845) filed by Kenneth H. Eckstein

12  on behalf of Ad Hoc Committee of Governmental and Other

13  Contingent Litigation Claimants. (ECF #4002)

14

15  HEARING re Declaration of Cheryl Juaire in Support of the

16  Opposition of the Official Committee of Unsecured Creditors

17  to Motions for Stay Pending Appeal (related document(s)4006)

18  filed by Ira S. Dizengoff on behalf of The Official

19  Committee of Unsecured Creditors of Purdue Pharma L.P., et

20  al. (ECF #4007)

21

22

23

24

25

Page 9

1    HEARING re Declaration of Kara Trainor in Support of the

2    Opposition of the Official Committee of Unsecured Creditors

3    to Motions for Stay Pending Appeal (related document(s)4006)

4    filed by Ira S. Dizengoff on behalf of The Official

5    Committee of Unsecured Creditors of Purdue Pharma L.P., et

6    al. (ECF #4008)

7

8    HEARING re Motion to Allow/ Debtors' Motion for Leave to

9    Exceed the Page Limit in Filing Memorandum of Law in

10   Opposition to the Motions for Stays of the Confirmation

11   Order and the Advance Order Pending Appeal filed by Marc

12   Joseph Tobak on behalf of Purdue Pharma L.P. (ECF #4013)

13

14   HEARING re Declaration of Jesse DelConte (related

15   document(s)4014) filed by Marshall Scott Huebner on behalf

16   of Purdue Pharma L.P. (ECF #4015)

17

18   HEARING re Opposition of the MSGE Group to the Motions to

19   Stay Pending Appeal (related document(s)3801, 3873, 3890,

20   3789, 3860, 3845) filed by Kevin C. Maclay on behalf

21   of Multi-State Governmental Entities Group. (ECF #4016)

22

23

24

25

1   HEARING re Amended Statement Supplemental Designation of

2   Record in Rebuttal and in Support of United States Trustee's

3   Second Amended Expedited Motion for a Stay of Confirmation

4   Order and Related Orders Pending Appeal Pursuant to Federal

5   Rule of Bankruptcy Procedure 8007 (related document(s)3972)

6   filed by Paul Kenan Schwartzberg on behalf of United States

7   Trustee. (ECF #4043)

8

9   HEARING re Motion to Allow Motion to Exceed Page Limit in

10  Filing Reply in Support of United States Trustee's Motion

11  for a Stay of Confirmation Order and Related Orders Pending

12  Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007

13  filed by Paul Kenan Schwartzberg on behalf of United States

14  Trustee. (ECF #4049)

15

16  HEARING re Motion for Stay Pending Appeal (related

17  document(s)3786, 3787, 3773) filed by Matthew J. Gold on

18  behalf of State of Washington.(ECF #3789)

19

20  Responses Received:

21  Objection to Motion/ Ad Hoc Committee's Objection to Stay

22  Motions (related document(s)3801, 3873, 3972, 3789, 3778,

23  3803, 3845) filed by Kenneth H. Eckstein on behalf of Ad Hoc

24  Committee of Governmental and Other Contingent Litigation

25  Claimants. (ECF #4002)

1

2    HEARING re Opposition Tribal Group Joinder in Opposition to

3    Stay Motions filed by Peter D'Apice on behalf of Certain

4    Native American Tribes and Others. (ECF #4003)

5

6    HEARING re Opposition of the Official Committee of Unsecured

7    Creditors to Motions for Stay Pending Appeal (related

8    document(s)3801, 3873, 3789, 3845) filed by Ira S. Dizengoff

9    on behalf of The Official Committee of Unsecured Creditors

10   of Purdue Pharma L.P., et al.(ECF #4006)

11

12   HEARING re Opposition The Ad Hoc Committee of NAS Children's

13   Joinder to Opposition of the Official Committee of Unsecured

14   Creditors to Motions for Stay Pending Appeal (related

15   document(s)4006) filed by Harold D. Israel on behalf of Ad

16   Hoc Committee of NAS Babies. (ECF #4009)

17

18   HEARING re Opposition Joinder of the Private Insurance

19   Ratepayers to Opposition of the Official Committee of

20   Unsecured Creditors to Motions for Stay Pending Appeal

21   (related document(s)3801, 3873, 3789, 3845) filed by

22   Nicholas F. Kajon on behalf of Eric Hestrup, et al.

23   (ECF #4010)

24

25

Page 12

1   HEARING re Opposition /Joinder (related document(s)4006)

2   filed by Lauren Guth Barnes on behalf of Blue Cross Blue

3   Shield Association. (ECF #4011)

4

5   HEARING re Objection to Motion /The Ad Hoc Group of

6   Individual Victims' (I) Objection to the United States

7   Trustee's and Certain Public Creditors' Motion for Stay

8   Pending Appeal and (II) Joinder in the Opposition of the

9   Official Committee of Unsecured Creditors to Motions for

10  Stay Pending Appeal (related document(s)3873, 3972, 3789,

11  3845) filed by J. Christopher Shore on behalf of Ad Hoc

12  Group of Individual Victims of Purdue Pharma L.P.

13  (ECF #4012)

14

15  HEARING re Memorandum of Law/ Debtors' Memorandum of Law in

16  Opposition to the Motions for Stays of the Confirmation

17  Order and the Advance Order Pending Appeal (related

18  document(s)3801, 3873, 3972, 3890, 3789, 3778, 3860, 3845)

19  filed by Marshall Scott Huebner on behalf of Purdue Pharma

20  L.P. (ECF #4014)

21

22  HEARING re Opposition of the MSGE Group to the Motions to

23  Stay Pending Appeal (related document(s)3801, 3873, 3890,

24  3789, 3860, 3845) filed by Kevin C. Maclay on behalf

25  of Multi-State Governmental Entities Group. (ECF #4016)

1   HEARING re Opposition - Joinder to the Opposition of the

2   Official Committee of Unsecured Creditors to Motions for

3   Stay Pending Appeal (related document(s)4006) filed by

4   Michael Patrick O'Neil on behalf of Ad Hoc Group of

5   Hospitals. (ECF #4017)

6

7   Related Documents:

8   Modified Bench Ruling On Confirmation Of Eleventh Amended

9   Joint Chapter 11 Plan Signed on 9/17/2021. (ECF #3786)

10

11  HEARING re Findings Of Fact, Conclusions Of Law, And Order

12  Confirming The Twelfth Amended Joint Chapter 11 Plan Of

13  Reorganization Of Purdue Pharma L.P. And Its Affiliated

14  Debtors Signed On 9/17/2021 (related document(s)3726).

15  (ECF #3787)

16

17  HEARING re Objection to Motion/ Ad Hoc Committee's Objection

18  to Stay Motions (related document(s)3801, 3873, 3972, 3789,

19  3778, 3803, 3845) filed by Kenneth H. Eckstein on behalf of

20  Ad Hoc Committee of Governmental and Other Contingent

21  Litigation Claimants. (ECF #4002)

22

23

24

25

Page 14

1   HEARING re Objection to Motion I Ad Hoc Committee's

2   Objection to Stay Motions (related document(s)3801, 3873,

3   3972, 3789, 3778, 3803, 3845) filed by Kenneth H. Eckstein I

4   on behalf of Ad Hoc Committee of Governmental and Other

5   Contingent Litigation Claimants. (ECF #4002)

6

7   HEARING re Declaration of Cheryl Juaire in Support of the

8   Opposition of the Official Committee of Unsecured Creditors

9   to Motions for Stay Pending Appeal (related document(s)4006)

10   filed by Ira S. Dizengoff on behalf of The Official

11   Committee of Unsecured Creditors of Purdue Pharma L.P., et

12   al. (ECF #4007)

13

14   HEARING re Declaration of Kara Trainor in Support of the

15   Opposition of the Official Committee of Unsecured Creditors

16   to Motions for Stay Pending Appeal (related document(s)4006)

17   filed by Ira S. Dizengoff on behalf of The Official

18   Committee of Unsecured Creditors of Purdue Pharma L.P., et

19   al. (ECF #4008)

20

21   HEARING re Motion to Allow/ Debtors' Motion for Leave to

22   Exceed the Page Limit in Filing Memorandum of Law in

23   Opposition to the Motions for Stays of the Confirmation

24   Order and the Advance Order Pending Appeal filed by Marc

25   Joseph Tabak on behalf of Purdue Pharma L.P. (ECF #4013)

1    HEARING re Declaration of Jesse DelConte (related

2    document(s)4014) filed by Marshall Scott. Huebner on behalf

3    of Purdue Pharma L.P. (ECF #4015)

4

5    HEARING re Opposition of the MSGE Group to the Motions to

6    Stay Pending Appeal (related document(s)3801, 3873, 3890,

7    3789, 3860, 3845) filed by Kevin C. Maclay on behalf of

8    Multi-State Governmental Entities Group. (ECF #4016)

9

10   HEARING re Reply to Motion Reply in Further Support of

11   Motion of the States of Washington and Connecticut for a

12   Stay Pending Appeal filed by Matthew J. Gold on behalf of

13   State of Washington. (ECF #4051)

14

15   HEARING re Motion for Stay Pending Appeal of Confirmation

16   and Trust Advances Orders filed by Brian Edmunds on behalf

17   of State Of Maryland. (ECF #3845)

18

19   Responses Received:

20   Objection to Motion/ Ad Hoc Committee's Objection to Stay

21   Motions (related document(s)3801, 3873, 3972, 3789, 3778,

22   3803, 3845) filed by Kenneth H. Eckstein on behalf of Ad Hoc

23   Committee of Governmental and Other Contingent Litigation

24   Claimants. (ECF #4002)

25

Page 16

1     HEARING re Opposition Tribal Group Joinder in Opposition to

2     Stay Motions filed by Peter D'Apice on behalf of Certain

3     Native American Tribes and Others. (ECF #4003)

4

5     HEARING re Opposition of the Official Committee of Unsecured

6     Creditors to Motions for Stay Pending Appeal (related

7     document(s)3801, 3873, 3789, 3845) filed by Ira S. Dizengoff

8     on behalf of The Official Committee of Unsecured Creditors

9     of Purdue Pharma L.P., et al. (ECF #4006)

10

11    HEARING re Opposition The Ad Hoc Committee of NAS Children's

12    Joinder to Opposition of the Official Committee of Unsecured

13    Creditors to Motions for Stay Pending Appeal (related

14    document(s)4006) filed by Harold D. Israel on behalf of Ad

15    Hoc Committee of NAS Babies. (ECF #4009)

16

17    HEARING re Opposition Joinder of the Private Insurance

18    Ratepayers to Opposition of the Official Committee of

19    Unsecured Creditors to Motions for Stay Pending Appeal

20    (related document(s)3801, 3873, 3789, 3845) filed by

21    Nicholas F. Kajon on behalf of Eric Hestrup, et al.

22    (ECF #4010)

23

24

25

1   HEARING re Opposition /Joinder (related document(s)4006)

2   filed by Lauren Guth Barnes on behalf of Blue Cross Blue

3   Shield Association. (ECF #4011)

4

5   HEARING re Objection to Motion /The Ad Hoc Group of

6   Individual Victims' (I) Objection to the United States

7   Trustee's and Certain Public Creditors' Motion for Stay

8   Pending Appeal and (II) Joinder in the Opposition of the

9   Official Committee of Unsecured Creditors to Motions for

10  Stay Pending Appeal (related document(s)3873, 3972, 3789,

11  3845) filed by J. Christopher Shore on behalf of Ad Hoc

12  Group of Individual Victims of Purdue Pharma L.P.

13  (ECF #4012)

14

15  HEARING re Memorandum of Law/ Debtors' Memorandum of Law in

16  Opposition to the Motions for Stays of the Confirmation

17  Order and the Advance Order Pending Appeal (related

18  document(s)3801, 3873, 3972, 3890, 3789, 3778, 3860, 3845)

19  filed by Marshall Scott Huebner on behalf of Purdue Pharma

20  L.P. (ECF #4014)

21

22  HEARING re Opposition of the MSGE Group to the Motions to

23  Stay Pending Appeal (related document(s)3801, 3873, 3890,

24  3789, 3860, 3845) filed by Kevin C. Maclay on behalf

25  of Multi-State Governmental Entities Group. (ECF #4016)

Page 18

1    HEARING re Opposition - Joinder to the Opposition of the

2    Official Committee of Unsecured Creditors to Motions for

3    Stay Pending Appeal (related document(s)4006) filed by

4    Michael Patrick O'Neil on behalf of Ad Hoc Group of

5    Hospitals. (ECF #4017)

6

7    HEARING re Reply to Motion for a Stay of Confirmation and

8    Trust Advances Orders Pending ;I Appeal (related

9    document(s)3801, 3973, 3873, 3972, 3789, 3778, 3860, 3803,

10   3845) filed by Brian Edmunds on behalf of State Of Maryland.

11   (ECF #4048)

12

13   HEARING re Related Documents:

14   Order signed on 9/15/2021 Granting Motion (I) Authorizing

15   the Debtors to Fund Establishment of the Creditor Trusts,

16   the Master Disbursement Trust and Topco, (II) Directing

17   Prime Clerk LLC to Release Certain Protected Information,

18   and (III) Granting Other elated Relief (Related Doc# 3484).

19   (ECF #3773)

20

21   HEARING re Modified Bench Ruling On For Confirmation Of

22   Eleventh Amended Joint Chapter 11 Plan Signed on 9/17/2021.

23   (ECF #3786)

24

25

```
 1    HEARING re Findings Of Fact, Conclusions Of Law, And Order

 2    Confirming The Twelfth Amended Joint Chapter 11 Plan Of

 3    Reorganization Of Purdue Pharma L.P. And Its Affiliated

 4    Debtors Signed On 9/17/2021 (related document(s)3726).

 5    (ECF #3787)

 6

 7    HEARING re Objection to Motion I Ad Hoc Committee's

 8    Objection to Stay Motions (related document(s)3801, 3873,

 9    3972, 3789, 3778, 3803, 3845) filed by Kenneth H. Eckstein

10    on behalf of Ad Hoc Committee of Governmental and Other

11    Contingent Litigation Claimants. (ECF #4002)

12

13    HEARING re Declaration of Cheryl Juaire in Support of the

14    Opposition of the Official Committee of Unsecured Creditors

15    to Motions for Stay Pending Appeal (related document(s)4006)

16    filed by Ira S. Dizengoff on behalf of The Official

17    Committee of Unsecured Creditors of Purdue Pharma L.P., et

18    al. (ECF #4007)

19

20    HEARING re Declaration of Kara Trainor in Support of the

21    Opposition of the Official Committee of Unsecured Creditors

22    to Motions for Stay Pending Appeal (related document(s)4006)

23    filed by Ira S. Dizengoff on behalf of The Official

24    Committee of Unsecured Creditors of Purdue Pharma L.P., et

25    al. (ECF #4008)
```

Page 20

1    HEARING re Motion to Allow/ Debtors' Motion for Leave to

2    Exceed the Page Limit in Filing Memorandum of Law in

3    Opposition to the Motions for Stays of the Confirmation

4    Order and the Advance Order Pending Appeal filed by Marc

5    Joseph Tabak on behalf of Purdue Pharma L.P. (ECF #4013)

6

7    HEARING re Declaration of Jesse Del Conte ( related

8    document( s )4014) filed by Marshall Scott Huebner on behalf

9    of Purdue Pharma L.P. (ECF #4015)

10

11   HEARING re Opposition of the MSGE Group to the Motions to

12   Stay Pending Appeal (related document(s)3801, 3873, 3890,

13   3789, 3860, 3845) filed by Kevin C. Maclay on behalf of

14   Multi-State Governmental Entities Group. (ECF #4016)

15

16   HEARING re Motion for Stay Pending Appeal (related

17   document(s)3810, 3847) filed by Ronald Bass Sr. (ECF #3860)

18

19   HEARING re Responses Received:

20   Objection to Motion/ Ad Hoc Committee's Objection to Stay

21   Motions (related document(s)3801, 3873, 3972, 3789, 3778,

22   3803, 3845) filed by Kenneth H. Eckstein on behalf of Ad Hoc

23   Committee of Governmental and Other Contingent Litigation

24   Claimants. (ECF #4002)

25

Page 21

1      HEARING re Opposition Tribal Group Joinder in Opposition to

2      Stay Motions filed by Peter D'Apice on behalf of Certain

3      Native American Tribes and Others. (ECF #4003)

4

5      HEARING re Opposition of the Official Committee of Unsecured

6      Creditors to Motions for Stay Pending Appeal (related

7      document(s)3801, 3873, 3789, 3845) filed by Ira S. Dizengoff

8      on behalf of The Official Committee of Unsecured Creditors

9      of Purdue Pharma L.P., et al. (ECF #4006)

10

11     HEARING re Opposition The Ad Hoc Committee of NAS Children's

12     Joinder to Opposition of the Official Committee of Unsecured

13     Creditors to Motions for Stay Pending Appeal (related

14     document(s)4006) filed by Harold D. Israel on behalf of Ad

15     Hoc Committee of NAS Babies. (ECF #4009)

16

17     HEARING re Opposition Joinder of the Private Insurance

18     Ratepayers to Opposition of the Official Committee of

19     Unsecured Creditors to Motions for Stay Pending Appeal

20     (related document(s)3801, 3873, 3789, 3845) filed by

21     Nicholas F. Kajon on behalf of Eric Hestrup, et al.

22     (ECF #4010)

23

24

25

Page 22

```
 1    HEARING re Opposition /Joinder (related document(s)4006)
 2    filed by Lauren Guth Barnes on behalf of Blue Cross Blue
 3    Shield Association. (ECF #4011)
 4
 5    HEARING re Objection to Motion /The Ad Hoc Group of
 6    Individual Victims' (I) Objection to the United States
 7    Trustee's and Certain Public Creditors' Motion for Stay
 8    Pending Appeal and (II) Joinder in the Opposition of the
 9    Official Committee of Unsecured Creditors to Motions for
10    Stay Pending Appeal (related document(s)3873, 3972, 3789,
11    3845) filed by J. Christopher Shore on behalf of Ad Hoc
12    Group of Individual Victims of Purdue Pharma L.P.
13    (ECF #4012)
14
15    HEARING re Memorandum of Law/ Debtors' Memorandum of Law in
16    Opposition to the Motions for Stays of the Confirmation
17    Order and the Advance Order Pending Appeal (related
18    document(s)3801, 3873, 3972, 3890, 3789, 3778, 3860, 3845)
19    filed by Marshall Scott Huebner on behalf of Purdue Pharma
20    L.P. (ECF #4014)
21
22    HEARING re Opposition of the MSGE Group to the Motions to
23    Stay Pending Appeal (related document(s)3801, 3873, 3890,
24    3789, 3860, 3845) filed by Kevin C. Maclay on behalf
25    of Multi-State Governmental Entities Group. (ECF #4016)
```

Page 23

1    HEARING re Opposition - Joinder to the Opposition of the

2    Official Committee of Unsecured Creditors to Motions for

3    Stay Pending Appeal (related document(s)4006) filed by

4    Michael Patrick O'Neil on behalf of Ad Hoc Group of

5    Hospitals. (ECF #4017)

6

7    HEARING re Related Documents:

8    Modified Bench Ruling On Confirmation Of Eleventh Amended

9    Joint Chapter 11 Plan Signed on 9/17/2021.

10   (ECF #3786)

11

12   HEARING re Findings Of Fact, Conclusions Of Law, And Order

13   Confirming The Twelfth Amended Joint Chapter 11 Plan Of

14   Reorganization Of Purdue Pharma L.P. And Its Affiliated

15   Debtors Signed On 9/17/2021 (related document(s)3726).

16   (ECF #3787)

17

18   HEARING re Objection to Motion/ Ad Hoc Committee's Objection

19   to Stay Motions (related document(s)3801, 3873, 3972, 3789,

20   3778, 3803, 3845) filed by Kenneth H. Eckstein on behalf of

21   Ad Hoc Committee of Governmental and Other Contingent

22   Litigation Claimants. (ECF #4002)

23

24

25

Page 24

1   HEARING re Objection to Motion I Ad Hoc Committee's

2   Objection to Stay Motions (related document(s)3801, 3873,

3   3972, 3789, 3778, 3803, 3845) filed by Kenneth H. Eckstein

4   on behalf of Ad Hoc Committee of Governmental and Other

5   Contingent Litigation Claimants. (ECF #4002)

6

7   HEARING re Declaration of Cheryl Juaire in Support of the

8   Opposition of the Official Committee of Unsecured Creditors

9   to Motions for Stay Pending Appeal (related document(s)4006)

10  filed by Ira S. Dizengoff on behalf of The Official

11  Committee of Unsecured Creditors of Purdue Pharma L.P., et

12  al. (ECF #4007)

13

14  HEARING re Declaration of Kara Trainor in Support of the

15  Opposition of the Official Committee of Unsecured Creditors

16  to Motions for Stay Pending Appeal (related document(s)4006)

17  filed by Ira S. Dizengoff on behalf of The Official

18  Committee of Unsecured Creditors of Purdue Pharma L.P., et

19  al. (ECF #4008)

20

21  HEARING re Motion to Allow/ Debtors' Motion for Leave to

22  Exceed the Page Limit in Filing Memorandum of Law in

23  Opposition to the Motions for Stays of the Confirmation

24  Order and the Advance Order Pending Appeal filed by Marc

25  Joseph Tabak on behalf of Purdue Pharma L.P. (ECF #4013)

1    HEARING re Declaration of Jesse DelConte (related

2    document(s)4014) filed by Marshall Scott Huebner on behalf

3    of Purdue Pharma L.P. (ECF #4015)

4

5    HEARING re Opposition of the MSGE Group to the Motions to

6    Stay Pending Appeal (related document(s)3801, 3873, 3890,

7    3789, 3860, 3845) filed by Kevin C. Maclay on behalf of

8    Multi-State Governmental Entities Group. (ECF #4016)

9

10   HEARING re Motion for Stay Pending Appeal filed by Allen J.

11   Underwood on behalf of Certain Canadian Municipality

12   Creditors and Canadian First Nation Creditors (ECF #3873)

13

14   Responses Received:

15   Objection to Motion/ Ad Hoc Committee's Objection to Stay

16   Motions (related document(s)3801, 3873, 3972, 3789, 3778,

17   3803, 3845) filed by Kenneth H. Eckstein on behalf of Ad Hoc

18   Committee of Governmental and Other Contingent Litigation

19   Claimants. (ECF #4002)

20

21   HEARING re Opposition Tribal Group Joinder in Opposition to

22   Stay Motions filed by Peter D'Apice on behalf of Certain

23   Native American Tribes and Others. (ECF #4003)

24

25

```
 1    HEARING re Opposition of the Official Committee of Unsecured

 2    Creditors to Motions for Stay Pending Appeal (related

 3    document(s)3801, 3873, 3789, 3845) filed by Ira S. Dizengoff

 4    on behalf of The Official Committee of Unsecured Creditors

 5    of Purdue Pharma L.P., et al. (ECF #4006)

 6

 7    HEARING re Opposition The Ad Hoc Committee of NAS Children's

 8    Joinder to Opposition of the Official Committee of Unsecured

 9    Creditors to Motions for Stay Pending Appeal (related

10    document(s)4006) filed by Harold D. Israel on behalf of Ad

11    Hoc Committee of NAS Babies. (ECF #4009)

12

13    HEARING re Opposition Joinder of the Private Insurance

14    Ratepayers to Opposition of the Official Committee of

15    Unsecured Creditors to Motions for Stay Pending Appeal

16    (related document(s)3801, 3873, 3789, 3845) filed by

17    Nicholas F. Kajon on behalf of Eric Hestrup, et al.

18    (ECF #4010)

19

20    HEARING re Opposition /Joinder (related document(s)4006)

21    filed by Lauren Guth Barnes on behalf of Blue Cross Blue

22    Shield Association. (ECF #4011)

23

24

25
```

Page 27

```
 1    HEARING re Objection to Motion /The Ad Hoc Group of

 2    Individual Victims' (I) Objection to the United States

 3    Trustee's and Certain Public Creditors' Motion for Stay

 4    Pending Appeal and (II) Joinder in the Opposition of the

 5    Official Committee of Unsecured Creditors to Motions for

 6    Stay Pending Appeal (related document(s)3873, 3972, 3789,

 7    3845) filed by J. Christopher Shore on behalf of Ad Hoc

 8    Group of Individual Victims of Purdue Pharma L.P.

 9    (ECF #4012)

10

11    HEARING re Memorandum of Law/ Debtors' Memorandum of Law in

12    Opposition to the Motions for Stays of the Confirmation

13    Order and the Advance Order Pending Appeal (related

14    document(s)3801, 3873, 3972, 3890, 3789, 3778, 3860, 3845)

15    filed by Marshall Scott Huebner on behalf of Purdue Pharma

16    L.P. (ECF #4014)

17

18    HEARING re Opposition of the MSGE Group to the Motions to

19    Stay Pending Appeal (related document(s)3801, 3873, 3890,

20    3789, 3860, 3845) filed by Kevin C. Maclay on behalf of

21    Multi-State Governmental Entities Group. (ECF #4016)

22

23

24

25
```

Page 28

1    HEARING re Opposition - Joinder to the Opposition of the

2    Official Committee of Unsecured Creditors to Motions for

3    Stay Pending Appeal (related document(s)4006) filed by

4    Michael Patrick O'Neil on behalf of Ad Hoc Group of

5    Hospitals. (ECF #4017)

6

7    HEARING re Reply to Motion Reply in Support of United States

8    Trustee's Motion for a Stay of Confirmation Order and

9    Related Orders Pending Appeal Pursuant to Federal Rule of

10   Bankruptcy Procedure 8007 (related document(s)3801, 3972,

11   3778) filed by Paul Kenan Schwartzberg on behalf of United

12   States Trustee. (ECF #4050)

13

14   Related Documents:

15   Modified Bench Ruling On Confirmation Of Eleventh Amended

16   Joint Chapter 11 Plan Signed on 9/17/2021.

17   (ECF #3786)

18

19   HEARING re Findings Of Fact, Conclusions Of Law, And Order

20   Confirming The Twelfth Amended Joint Chapter 11 Plan Of

21   Reorganization Of Purdue Pharma L.P. And Its Affiliated

22   Debtors Signed On 9/17/2021 (related document(s)3726).

23   (ECF #3787)

24

25

Page 29

1    HEARING re Objection to Motion/ Ad Hoc Conm1ittee's

2    Objection to Stay Motions (related document(s)3801, 3873,

3    3972, 3789, 3778, 3803, 3845) filed by Kenneth H. Eckstein

4    on behalf of Ad Hoc Committee of Governmental and Other

5    Contingent Litigation Claimants. (ECF #4002)

6

7    HEARING re Objection to Motion/ Ad Hoc Committee's Objection

8    to Stay Motions (related document(s)3801, 3873, 3972, 3789,

9    3778, 3803, 3845) filed by Kenneth H. Eckstein on behalf of

10   Ad Hoc Committee of Governmental and Other Contingent

11   Litigation Claimants. (ECF #4002)

12

13   HEARING re Declaration of Cheryl Juaire in Support of the

14   Opposition of the Official Committee of Unsecured Creditors

15   to Motions for Stay Pending Appeal (related document(s)4006)

16   filed by Ira S. Dizengoff on behalf of The Official

17   Committee of Unsecured Creditors of Purdue Pharma L.P., et

18   al. (ECF #4007)

19

20   HEARING re Declaration of Kara Trainor in Support of the

21   Opposition of the Official Committee of Unsecured Creditors

22   to Motions for Stay Pending Appeal (related document(s)4006)

23   filed by Ira S. Dizengoff on behalf of The Official

24   Committee of Unsecured Creditors of Purdue Pharma L.P., et

25   al. (ECF #4008)

Page 30

1    HEARING re Motion to Allow/ Debtors' Motion for Leave to

2    Exceed the Page Limit in Filing Memorandum of Law in

3    Opposition to the Motions for Stays of the Confirmation

4    Order and the Advance Order Pending Appeal filed by Marc

5    Joseph Tobak on behalf of Purdue Pharma L.P. (ECF #4013)

6

7    HEARING re Declaration of Jesse DelConte (related

8    document(s)4014) filed by Marshall Scott Huebner on behalf

9    of Purdue Pharma L.P. (ECF #4015)

10

11   HEARING re Opposition of the MSGE Group to the Motions to

12   Stay Pending Appeal (related document(s)3801, 3873, 3890,

13   3789, 3860, 3845) filed by Kevin C. Maclay on behalf of

14   Multi-State Governmental Entities Group. (ECF #4016)

15

16   HEARING re Motion for Stay Pending Appeal filed by Ellen

17   Isaacs (ECF #3890)

18

19   HEARING re Responses Received:

20   Objection to Motion/ Ad Hoc Committee's Objection to Stay

21   Motions (related document(s)3801, 3873, 3972, 3789, 3778,

22   3803, 3845) filed by Kenneth H. Eckstein on behalf of Ad Hoc

23   Committee of Governmental and Other Contingent Litigation

24   Claimants. (ECF #4002)

25

1   HEARING re Opposition Tribal Group Joinder in Opposition to

2   Stay Motions filed by Peter D'Apice on behalf of Certain

3   Native American Tribes and Others. (ECF #4003)

4

5   HEARING re Opposition of the Official Committee of Unsecured

6   Creditors to Motions for Stay Pending Appeal (related

7   document(s)3801, 3873, 3789, 3845) filed by Ira S. Dizengoff

8   on behalf of The Official Committee of Unsecured Creditors

9   of Purdue Pharma L.P., et al. (ECF #4006)

10

11  HEARING re Opposition The Ad Hoc Committee of NAS Children's

12  Joinder to Opposition of the Official Committee of Unsecured

13  Creditors to Motions for Stay Pending Appeal (related

14  document(s)4006) filed by Harold D. Israel on behalf of Ad

15  Hoc Committee of NAS Babies. (ECF #4009)

16

17  HEARING re Opposition Joinder of the Private Insurance

18  Ratepayers to Opposition of the Official Committee of

19  Unsecured Creditors to Motions for Stay Pending Appeal

20  (related document(s)3801, 3873, 3789, 3845) filed by

21  Nicholas F. Kajon on behalf of Eric Hestrup, et al.

22  (ECF #4010)

23

24

25

1    HEARING re Opposition /Joinder (related document(s)4006)

2    filed by Lauren Guth Barnes on behalf of Blue Cross Blue

3    Shield Association. (ECF #4011)

4

5    HEARING re Objection to Motion /The Ad Hoc Group of

6    Individual Victims' (I) Objection to the United States

7    Trustee's and Certain Public Creditors' Motion for Stay

8    Pending Appeal and (II) Joinder in the Opposition of the

9    Official Committee of Unsecured Creditors to Motions for

10   Stay Pending Appeal (related document(s)3873, 3972, 3789,

11   3845) filed by J. Christopher Shore on behalf of Ad Hoc

12   Group of Individual Victims of Purdue Pharma L.P.

13   (ECF #4012)

14

15   HEARING re Memorandum of Law / Debtors' Memorandum of Law in

16   Opposition to the Motions for Stays of the Confirmation

17   Order and the Advance Order Pending Appeal (related

18   document(s)3801, 3873, 3972, 3890, 3789, 3778, 3860, 3845)

19   filed by Marshall Scott Huebner on behalf of Purdue Pharma

20   L.P. (ECF #4014)

21

22   HEARING re Opposition of the MSGE Group to the Motions to

23   Stay Pending Appeal (related document(s)3801, 3873, 3890,

24   3789, 3860, 3845) filed by Kevin C. Maclay on behalf

25   of Multi-State Governmental Entities Group. (ECF #4016)

Page 33

1    HEARING re Opposition - Joinder to the Opposition of the

2    Official Committee of Unsecured Creditors to Motions for

3    Stay Pending Appeal (related document(s)4006) filed by

4    Michael Patrick O'Neil on behalf of Ad Hoc Group of

5    Hospitals. (ECF #4017)

6

7    Related Documents:

8    Modified Bench Ruling On Confirmation Of Eleventh Amended

9    Joint Chapter 11 Plan Signed on 9/17/2021.

10   (ECF #3786)

11

12   HEARING re Findings Of Fact, Conclusions Of Law, And Order

13   Confirming The Twelfth Amended Joint Chapter 11 Plan Of

14   Reorganization Of Purdue Pharma L.P. And Its Affiliated

15   Debtors Signed On 9/17/2021 (related document(s)3726).

16   (ECF #3787)

17

18   HEARING re Objection to Motion/ Ad Hoc Committee's Objection

19   to Stay Motions (related document(s)3801, 3873, 3972, 3789,

20   3778, 3803, 3845) filed by Kenneth H. Eckstein on behalf of

21   Ad Hoc Committee of Governmental and Other Contingent

22   Litigation Claimants. (ECF #4002)

23

24

25

Page 34

1    HEARING re Objection to Motion/ Ad Hoc Committee's Objection

2    to Stay Motions (related document(s)3801, 3873, 3972, 3789,

3    3778, 3803, 3845) filed by Kenneth H. Eckstein on behalf of

4    Ad Hoc Committee of Governmental and Other Contingent

5    Litigation Claimants. (ECF #4002)

6

7    HEARING re Declaration of Cheryl Juaire in Support of the

8    Opposition of the Official Committee of Unsecured Creditors

9    to Motions for Stay Pending Appeal (related document(s)4006)

10   filed by Ira S. Dizengoff on behalf of The Official

11   Committee of Unsecured Creditors of Purdue Pharma L.P., et

12   al. (ECF #4007)

13

14   HEARING re Declaration of Kara Trainor in Support of the

15   Opposition of the Official Committee of Unsecured Creditors

16   to Motions for Stay Pending Appeal (related document(s)4006)

17   filed by Ira S. Dizengoff on behalf of The Official

18   Committee of Unsecured Creditors of Purdue Pharma L.P., et

19   al. (ECF #4008)

20

21   HEARING re Motion to Allow/ Debtors' Motion for Leave to

22   Exceed the Page Limit in Filing Memorandum of Law in

23   Opposition to the Motions for Stays of the Confirmation

24   Order and the Advance Order Pending Appeal filed by Marc

25   Joseph Tabak on behalf of Purdue Pharma L.P. (ECF #4013)

Page 35

1    HEARING re Declaration of Jesse DelConte (related

2    document(s)4014) filed by Marshall Scott Huebner on behalf

3    of Purdue Pharma L.P. (ECF #4015)

4

5    HEARING re Opposition of the MSGE Group to the Motions to

6    Stay Pending Appeal (related document(s)3801, 3873, 3890,

7    3789, 3860, 3845) filed by Kevin C. Maclay on behalf of

8    Multi-State Governmental Entities Group. (ECF #4016)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 36

1   A P P E A R A N C E S :

2

3   UNITED STATES DEPARTMENT OF JUSTICE

4        Attorneys for the U.S. Trustee

5        201 Varick Street, Suite 1006

6        New York, NY 10014

7

8   BY:  BENJAMIN HIGGINS (TELEPHONICALLY)

9        BETH LEVINE (TELEPHONICALLY)

10

11   MILBANK, TWEED, HADLEY & MCCLOY LLP

12        Attorneys for the Raymond Sackler Family

13        55 Hudson Yards

14        New York, NY 10001

15

16   BY:  GERARD UZZI (TELEPHONICALLY)

17

18   DEBEVOISE & PLIMPTON

19        Attorneys for the Mortimer Sackler Family

20        919 Third Avenue

21        New York, NY 10022

22

23   BY:  MAURA KATHLEEN MONAGHAN (TELEPHONICALLY)

24

25

1   OFFICE OF THE ATTORNEY GENERAL - STATE OF MARYLAND

2        Attorney for State of Maryland

3        200 Saint Paul Place

4        Baltimore, MD 20852

5

6   BY:  BRIAN EDMUNDS (TELEPHONICALLY)

7

8   KRAMER LEVIN NAFTALIS FRANKEL LLP

9        Attorneys for the Ad Hoc Committee

10       1177 Avenue of the Americas

11       New York, NY 10036

12

13   BY:  JONATHAN M. WAGNER (TELEPHONICALLY)

14

15   DAVIS POLK WARDWELL LLP

16       Attorney for Debtors

17       450 Lexington Avenue

18       New York, NY 10017

19

20   BY:  BENJAMIN S. KAMINETZKY (TELEPHONICALLY)

21

22

23

24

25

Page 38

1    WHITE & CASE LLP

2         Attorneys for Ad Hoc Group of Individual Victims

3         1221 Avenue of the Americas

4         New York, NY 10020

5

6    BY:  J. CHRISTOPHER SHORE (TELEPHONICALLY)

7

8    KLEINBERG, KAPLAN, WOLFF COHEN, P.C.

9         Attorneys for the State of Washington

10        500 Fifth Avenue

11        New York, NY 10110

12

13   BY:  MATTHEW J. GOLD (TELEPHONICALLY)

14

15   LITE DEPALMA GREENBERG & AFANADOR

16        Attorneys for Certain Canadian Municipality Creditors

17        and Canadian First Nation Creditors

18        570 Broad Street

19        Newark, NJ 07102

20

21   BY:  ALLEN J. UNDERWOOD III (TELEPHONICALLY)

22

23

24

25

Page 39

1    PULLMAN COMLEY, LLC

2         Attorney on behalf of State of Connecticut

3         850 Main Street

4         Bridgeport, CT 06604

5

6    BY:  IRVE J. GOLDMAN (TELEPHONICALLY)

7

8    AKIN GUMP STRAUSS HAUER & FELD LLP

9         Attorneys for Official Committee of Unsecured Creditors

10        One Bryant Park

11        New York, New York 10036

12

13   BY:  MITCHELL HURLEY (TELEPHONICALLY)

14        ARIK PREIS (TELEPHONICALLY)

15

16   FLORIDA OFFICE OF THE ATTORNEY GENERAL

17        Attorneys for the Ad Hoc Committee

18        PL-01 The Capitol

19        Tallahassee, FL 32399

20

21   BY:  JOHN GUARD (TELEPHONICALLY)

22

23

24

25

Page 40

```
 1   SOUTHERN DISTRICT OF NEW YORK

 2        86 Chambers Street, 3rd Floor

 3        New York, New York 10007

 4

 5   BY:  LARRY FOGELMAN (TELEPHONICALLY)

 6

 7   CAPLIN DRYSDALE

 8        Attorneys for Multi-State Governmental Entities Group

 9        One Thomas Circle, NW

10        Washington, DC 20005

11

12   BY:  JEFFREY J. LIESEMER (TELEPHONICALLY)

13

14   RONALD BASS, SR.

15   CHERYL JUAIRE

16   KARA TRAINOR

17   COLIN JORGENSEN

18

19   ALSO PRESENT TELEPHONICALLY:

20

21   JILL S. ABRAMS

22   ROXANA ALEALI

23   MICHAEL ATKINSON

24   JASMINE BALL

25   BROOKS BARKER
```

Page 41

```
 1   KATHRYN BENEDICT

 2   SCOTT R. BICKFORD

 3   DAVID E. BLABEY

 4   SARA BRAUNER

 5   JULIUS CHEN

 6   DYLAN CONSLA

 7   MARIO D'ANGELO

 8   JESSE DELACONTE

 9   MARIA ECKE

10   KENNETH H. ECKSTEIN

11   BERNARD ARDAVAN ESKANDARI

12   LAURA FEMINO

13   MAGALI GIDDENS

14   MARSHALL SCOTT HUEBNER

15   MITCHELL HURLEY

16   ELLEN ISAACS

17   HAROLD D. ISRAEL

18   EVAN C. JONES

19   GREGORY JOSEPH

20   MARC KESSELMAN

21   DARREN S. KLEIN

22   ALEXANDER LEES

23   BETH ANN LEVENE

24   MARA LEVENTHAL

25   DANIELLE J. LEVINE
```

```
 1   KEVIN C. MACLAY

 2   BRIAN S. MASUMOTO

 3   GERARD MCCARTHY

 4   JAMES I. MCCLAMMY

 5   HUGH M. MCDONALD

 6   SHANNON M. MCNULTY

 7   MICHELE MEISES

 8   AISLING MURRAY

 9   EDWARD E. NEIGER

10   MICHAEL PATRICK O'NEIL

11   RACHEL OBALDO

12   KATHERINE PORTER

13   LINDA RIFKIN

14   RACHAEL RINGER

15   CHRISTOPHER ROBERTSON

16   JEFFREY J. ROSEN

17   ELIZABETH SCHLECKER

18   PAUL KENAN SCHWARTZBERG

19   LUCAS H. SELF

20   MICHAEL C. SHEPHERD

21   MARC F. SKAPOF

22   LAURA SMITH

23   KATE SOMERS

24   CLAUDIA Z. SPRINGER

25   ETHAN STERN ERIC STODOLA
```

1    JACQUELYN SWANNER

2    JEROME TAPLEY

3    MARC JOSEPH TOBAK

4    ESTHER TOWNES

5    ANDREW M. TROOP

6    ALICE TSIER

7    MELISSA L. VAN ECK

8    ANDREW D. VELEZ-RIVERA

9    ELI J. VONNEGUT

10   JORDAN A. WEBER

11   THEODORE WELLS

12   LAUREN S. ZABEL

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 44

1          P R O C E E D I N G S

2          THE COURT:  Okay, good morning.  This is Judge

3    Drain.  We're here in In re Purdue Pharma, L.P., et al on

4    the hearing on motions for a stay pending appeal of the

5    Court's confirmation order, as well as the Court's, what

6    I'll refer to as implementation procedures order filed by

7    the United States Trustee, the States of Washington,

8    Connecticut, and California, certain Canadian creditors, Ms.

9    Ellen Isaacs, and Mr. Ronald Bass.

10          So I believe I've reviewed all of the relevant

11   pleadings on these motions, including the various objections

12   and the replies and the declarations submitted in support of

13   the objections.

14          I'll also note my order dated November 3, 2021

15   establishing procedures for this remote hearing, which is

16   being held entirely remotely.  For those participating in

17   the hearing as a movant or objectant by Zoom for Government

18   and, otherwise, by telephone.

19          So I'm happy to proceed with the motions, unless

20   there's been any development on them, which I had encouraged

21   the last time the parties were before me as a way

22   potentially to resolve these motions.

23          MR. HIGGINS:  Your Honor, this is Ben Higgins for

24   the U.S. Trustee.  I'm joined today by my colleague, Beth

25   Levine from the U.S. Trustee's Washington office, and she'll

Page 45

1    be handling the oral argument for the U.S. Trustee.

2           We had two housekeeping issues to flag for Your

3    Honor, but we don't have a resolution of the stay motions,

4    to answer Your Honor's question directly.

5           THE COURT:  All right, very well.  On the

6    housekeeping, the request to exceed page limits on various

7    pleadings?

8           MR. HIGGINS:  That is the first item, yes, Your

9    Honor.

10          THE COURT:  Okay.  And the Debtors made such a

11   motion too.  I'll grant both of those motions.

12          MR. HIGGINS:  Thank you, Your Honor.

13          The second housekeeping issue, as we previewed for

14   Your Honor at the October 14 status conference, we did file

15   a amended memorandum of law at Docket No. 3972 with specific

16   citations to documents.

17          And we also, as we discussed at the October 14

18   hearing, we filed two designations at Docket Nos. 3918 and

19   4043, identifying specific documents that are either in the

20   record and that we're asking the Court to take judicial

21   notice of.  We haven't received any objections, but if we

22   did, I know Your Honor raised a couple of questions at the

23   last status conference.

24          So to the extent I can clarify anything or address

25   any questions, I'm happy to do that, Your Honor.

1          THE COURT:  I think you reduced the list to

2    address my concerns, which were that you were seeking that I

3    take judicial notice of matters that were not appropriate to

4    take judicial notice of, namely press accounts and the like,

5    correct?

6          MR. HIGGINS:  Well, just to be clear, Your Honor,

7    the second designation was actually a supplement to the

8    first designation, so we were still asking you to take

9    judicial notice of what we listed in the first designation.

10   And I can clarify what we're seeking it for, Your Honor, and

11   you can determine if it's appropriate or not.  You know,

12   we're happy to live with your decision on that.

13         THE COURT:  Okay.  Why don't you do that.

14         MR. HIGGINS:  Sure, Your Honor.

15         So I believe the items that you raised issues

16   with, we listed some pending legislation, as well as the

17   records of some of congressional hearings concerning the

18   validity of third-party releases.

19         And we're asking you to take judicial notice

20   merely for the fact that the validity of third-party

21   releases is an issue of public interest and they're publicly

22   available documents, and we're simply asking you to take

23   judicial notice of the fact these materials exist.  That's

24   the limit of it and we're willing to live with Your Honor's

25   decision either way, but that's the request, Your Honor.

Page 47

1              THE COURT:  Okay.  Do any of the objectors have a

2    view on this?

3              MR. KAMINETZKY:  Not quite sure about judicial for

4    what purpose he's offering them judicial notice.  Your Honor

5    is welcome to notice that.

6              THE COURT:  Okay.

7              MR. KAMINETZKY:  The rest of -- what I saw most of

8    what's been submitted are various pleadings from this case,

9    we don't have a problem with that.

10             THE COURT:  Right, and I have no problem with

11   those pleadings or with pleadings filed in other courts, as

12   long as they're not being -- sought to be admitted for the

13   truth of the pleadings as opposed to just the fact that

14   these are pleadings that have been filed.

15             MR. HIGGINS:  And that's correct.

16             MR. KAMINETZKY:  With respect to newspaper

17   accounts, I'm not sure what the point is.  Is it for

18   evidentiary purposes?  I'm just struggling to understand

19   what exactly the request of the Court is before we made an

20   objection or not.

21             MR. HIGGINS:  Sure.  I'm not sure there are any

22   newspaper accounts, Your Honor.

23             THE COURT:  I don't think there are at this point,

24   and maybe there never were.  I thought I saw one that you

25   had submitted, although they were included, I believe, in

1    the record of the hearing.

2           I will take judicial notice of the bill and the

3    hearing for the fact that they took place, not for anything

4    as far as the hearing is concerned that any other

5    evidentiary purpose or for which they might be asserted.

6           MR. HIGGINS:  Thank you, Your Honor.  Those are

7    the housekeeping issues from the U.S. Trustee's perspective.

8           THE COURT:  Okay, very well.

9           MR. EDMUNDS:  Your Honor, Brian Edmunds for

10   Maryland.  I don't -- it may be helpful if I address a

11   threshold issue from our reply first.  I think the Court

12   will probably want to hear what everyone has to say anyway.

13          But logically, the one issue which is the effect

14   of the District Court's decision on the Trustee's and

15   Canadian entities' motion for a stay in that Court limits, I

16   think, what is before the Court today.

17          Because there's a clear ruling, an unappealed

18   ruling, a ruling, in fact, that the appellees acquiesced

19   from the District Court that holds that there's a likelihood

20   of success on the merits and that the issue raised by the

21   Trustee, which is the issue of equitable mootness, raises

22   when the Debtors or appellees are actually doing something

23   that the balance of hardships would tip decidedly in the

24   Trustee's and the Canadian entities' favor.

25          And so, there's a finding, and there's a finding

Page 49

1    that in the end denies those parties' motion for a stay

2    because the District Court found that there's nothing going

3    on right now.  But you found that without prejudice to the

4    states making motions and to the U.S. Trustee coming forward

5    with evidence that something is happening now.  So it's

6    without prejudice to that showing or to those showings, and

7    she does not decide the states' motions, which had not been

8    formally brought before her.

9              But to the extent she rules on that equitable

10   mootness issue and addresses the likelihood of success on

11   the merits is raised in the other parties' motions before

12   that Court, those findings are her decision.  And I'm not

13   sure that, you know, there's any -- they could have

14   appealed, but I think that they become law of the case in

15   light of the fact that they haven't.

16             And they've, in fact, filed a stipulation in the

17   District Court essentially doing -- purporting to comply

18   with the conditions that the District Court placed in its

19   denial of the stay, so that issue, I think, is the threshold

20   matter.

21             And I understand the Court is likely to hear

22   everybody, but just as a logical matter, it seemed important

23   to raise that first.

24             THE COURT:  I'm looking for my copy --

25             MR. EDMUNDS:  Your Honor, if it's helpful --

```
 1              THE COURT:  I'm looking for that copy of that

 2      order.  This was an issue that really was, if anything,

 3      touched on in a reply, so you've caught me a little bit

 4      unprepared on this, Mr. Edmunds, but I want to get out the

 5      order.

 6              MR. EDMUNDS:  I'm sorry, Your Honor.  I mean, we

 7      filed our motion before we were in the District Court.

 8              THE COURT:  I know.

 9              MR. EDMUNDS:  But if you need the opinion --

10              THE COURT:  I'm not faulting you for not raising

11      it when you did then, but I want to make sure I have Judge

12      McMahon's order in front of me, which I am leafing through.

13      Well, here it is.  I found it.

14              MR. EDMUNDS:  I think it might be attached to our

15      reply as an exhibit.  If it's helpful, Your Honor, I think

16      the relevant language --

17              THE COURT:  No.  I'm reading -- let me read it --

18              MR. EDMUNDS:  Okay.

19              THE COURT:  -- as to the points that you're

20      specifically raising.

21              MR. EDMUNDS:  Sure.

22              THE COURT:  Well, again, I've just reread it.  And

23      on the two points that you've raised, Mr. Edmunds, that you

24      say would be law of the case, the first one is whether the

25      merits prong has been satisfied.  And there, Judge McMahon
```

Page 51

1    says, "In this case, Debtors conceded at oral argument on

2    October 12 the existence of sufficiently serious questions

3    going to the merits to make them a fair ground for

4    litigation."

5            The other point that you raised, however, as far

6    as the possibility of equitable mootness is in the context

7    of the balance of hardship and not as to a finding as to

8    whether equitable mootness has risen above the level of

9    speculation.

10           So I think it's a little more -- maybe I didn't

11   hear you clearly enough, but I think it's a little more

12   complicated than you stated.  I think that issue of

13   irreparable harm and its relation to equitable mootness and

14   the issue of the balance of the harms and its relation to

15   equitable mootness are not exactly the same issue.  And

16   secondly, I think they're both quite context specific as far

17   as the record before the Court.

18           The case law seems to be uniform that the risk of

19   equitable mootness -- and of course, that's an evaluation

20   that the Court needs to make and that clearly is not law of

21   the case as far as Judge McMahon's order -- standing alone

22   or vel non is not irreparable harm or arguably harm but

23   needs to be taken into account with other factors.

24           So it seems to me that the record before me is

25   important still on that point.

Page 52

1              If the objectors are arguing that the risk of

2    equitable mootness just isn't to be taken into account, I

3    completely agree with you; in fact, I wouldn't need Judge

4    McMahon's ruling because it is to be taken into account.

5    But I don't think it's dispositive on this point, given the

6    different record before her and before me.

7              So I think the thing we should probably focus on,

8    although I'm happy to hear you more on this, is the effect

9    of the Debtors' concession.  I mean, both -- not both -- all

10   parties have spent a considerable amount of time,

11   notwithstanding that concession, arguing the merits of the

12   appeal, both in the motions themselves, which again I

13   repeat, were made before the hearing before Judge McMahon,

14   but also in the replies.

15             So I was going to suggest to the parties that they

16   spend the vast bulk of their time not addressing the merits,

17   but rather, addressing the other three factors and the bond

18   issues.  But why don't I hear from the objectors on the

19   merits point in the first case as to whether their

20   concession should be viewed as a concession for this hearing

21   as well.

22             MR. EDMUNDS:  Sure, Your Honor.  Let me just --

23   you've read it the same way, I think, we have, which is that

24   there is a fact issue on the balance of hardships and that

25   the question of whether, you know, the possibility of

Page 53

1   equitable mootness vel non is a, you know, irreparable harm

2   question, is decided by her and that equitable mootness

3   could pose irreparable harm, but the fact issues are still

4   left open as to what's happening now.

5          So I think -- I'm not saying -- I wasn't saying

6   anything different and I think that we've read it the same

7   way.

8          THE COURT:  Well, maybe with one qualification,

9   Mr. Edmunds.  Based on my review of the case law, and I

10  don't think Judge McMahon is saying anything different, the

11  weight to be given to the risk of equitable mootness

12  constitute two ways: first, the way that we clearly agree

13  on, which is the Court needs to evaluate how likely it is

14  that something would become equitably moot; the second is

15  whether -- and this second point is very closely tied to the

16  first point -- I think the more likely it is that something

17  becomes equitably moot, the less important it is to

18  establish something in addition to the risk of mootness.

19         And nevertheless, I do think that is a second

20  inquiry because I believe all the courts, including the

21  Adelphia court and St. Johnsbury Trucking court have said

22  standing alone, the risk of equitable mootness isn't enough.

23  But what needs to be shown, in addition to that, can be any

24  one of the other factors, it seems to me.  It can be the

25  seriousness of the issues on appeal; it can be the issue of

Page 54

1      whether a reversal as appear at victory.

2              You know, there are all sorts of things that can

3      affect that extra something that I think all the courts

4      recognize you need to have in addition to just the risk of

5      equitable mootness.  And again, that can be merely the

6      seriousness of the issues on appeal, and also, the courts'

7      assessment of the likelihood of success on appeal.  If

8      something really does seem to be maybe not a frivolous

9      appeal, but a real long shot, then the risk of mootness

10     really doesn't seem to be something that courts care about.

11             So I think I may go back again to the question,

12     which is the -- my recommendation was that we not spend a

13     lot of time on the merits of the appeal, showing of the

14     substantial possibility of success, and really only as it

15     pertains to the other three issues.

16             So Mr. Kamenetzky's on the screen.  I know there

17     are other objectors too, but I'll look to you on that point.

18     You're on mute.

19             MR. KAMINETZKY:  Your Honor, good morning.

20     Benjamin Kaminetzky of Davis Polk for the Debtors.

21             I could just address the effect of Judge McMahon's

22     order, the kind of contention by Maryland that there's some

23     sort of law of the case or issue preclusion because I think

24     that's just completely inherently wrong.  If you want, I can

25     go further, but I just think it's important that we address

Page 55

1    that upfront because Mr. Edmunds suggested something that

2    just, it's just completely and utterly false.  If I could

3    get two minutes on that.

4            And then, you know, I assume you'd want them to go

5    first on the other factors.  And I agree that spending a lot

6    of time on probability of success on the merits, which is

7    devolved into another oral argument that you've heard for

8    hours now, are so -- on the point, just Mr. Edmunds point.

9    Again, it's just a blatant mischaracterization of Judge

10   McMahon's decision and what happened.  So let me just give

11   you some context.

12           The U.S. Trustee filed an emergency stay motion

13   before the District Court on the evening of Friday, October

14   8th.  After entering a TRO based on the U.S. Trustee's

15   breathless suggestion that something could be happening over

16   the weekend, Judge McMahon heard that motion the very next

17   business day without a single brief from the Debtors or any

18   other party.

19           We had no opportunity -- the Debtors and the plan

20   proponents had no opportunity to put in any evidence at the

21   hearing.  All the District Court had was the brief that the

22   U.S. Trustee filed in connection with its Friday night

23   emergency motion, had no evidence from anyone else, no

24   briefs from anyone else.  They didn't even have the

25   confirmation hearing transcripts or anything.

Page 56

1           What Judge McMahon focused on at this emergency

2    hearing that was held, you know, that Tuesday, which was the

3    next business day, was -- and the Debtors and the plan

4    proponents didn't present any argument whatsoever on the

5    likelihood of success of the appeal.  The focus was solely

6    on whether the movant's evidence might suffer harm in the

7    interim period between that day and today when Your Honor

8    will be hearing the stay motion.

9           All of that notwithstanding, the District Court

10   denied the U.S. Trustee's stay motion the next business day,

11   as she concluded that the movants had not identified any

12   concrete harm that will arise between now and November 9

13   when Judge Drain is scheduled to consider the various stay

14   motions.  That's on Page 12 of her decision.

15          Now, the notion --

16          THE COURT:  Okay, so could I just interrupt you?

17   So you're basically saying that your concession that Judge

18   McMahon's decision refers to was really just a concession

19   for purposes of that hearing because you were focusing on

20   the --

21          MR. KAMINETZKY:  It wasn't even that.  Judge

22   McMahon misheard.  She didn't have the transcript.  What Mr.

23   Huebner said is even if we give them all three other

24   factors, they nevertheless lose because there's no harm.

25   There was a hypothetical which he misheard.  We corrected

Page 57

1    her in a subsequent filing and said, no, we've reviewed the

2    transcript.  It was one of these even if they're right that

3    there are substantial issues, there's no harm because

4    nothing would happen between now and November 9, so it was

5    kind of in that context.

6             And Judge McMahon, as you said, there was a

7    concession, but there actually wasn't; it wasn't in the

8    context of an even if they could prove all three other

9    factors, they certainly can prove imminent harm.  And again,

10   we corrected her on the record.  We sent a letter

11   identifying and pointing that out in the transcript.

12            But more important, the law is very clear what

13   collateral estoppel means and it doesn't mean.  And, I mean,

14   Second Circuit law here is well developed:  Collateral

15   estoppel only applies if the identical issue was decided in

16   the prior proceeding.  And none of the issues, Your Honor,

17   none of the issues before the Court today was actually

18   decided by Judge McMahon.

19            Again, what she was focused on, based on the U.S.

20   Trustee's emergency motion, is do I need to do something now

21   before the November 9 hearing before Judge Drain, and she

22   said no, but that was the entire focus of the hearing.  And

23   as Your Honor knows, nothing could possibly have happened

24   because the sentencing needs to happen and the effective

25   date and all that.

1           So there was absolutely no ruling whatsoever on

2      the balance of harm with respect to an indefinite stay,

3      which the movants are seeking, or even any sort of stay

4      beyond November 9.

5           There's also -- you know, we talked about that

6      there wasn't a concession.  There's also collateral estoppel

7      only applies where there's a full and fair opportunity to

8      litigate the relevant issues in the first proceeding, and

9      I'm quoting from Central Hudson Gas & Electric Company, 56

10     F.3d 359 at 368.  Obviously, when on an emergency motion

11     filed on Friday night when we're imminent on Tuesday

12     morning, was obviously not a full and fair opportunity to

13     litigate.  So even if it was the same issue, they still

14     don't get collateral estoppel because the Judge only heard

15     one side; there was no ability to submit evidence.

16          And finally, Your Honor, it's blackletter law that

17     collateral estoppel only applies where there was a final

18     judgment on the merits.  And to say this again, this was a

19     decision on a TRO on a stay motion, not a final judgment on

20     the merits, and it cannot give rise to collateral estoppel.

21          And, of course, neither the two cases that

22     Maryland cites in its brief has anything remotely to do with

23     the preclusive effect of a decision on emergency stay

24     motion.  They both involve prior actions that were litigated

25     to a final judgment on the merits.  In the PCH case that

Page 59

1    they cite, there was a final and binding decision on the

2    merits and affirmed on appeal that the relationship between

3    parties was a joint venture and the Court found that that

4    was law of the case.  And in the other case they cite, the

5    Central Hudson case, there was a trial and a judgment and

6    that's when the Court held that there was a collateral

7    estoppel.

8            So, I mean, I think it speaks volumes that the

9    actual movants before the District Court didn't even dare

10   make this argument that there's some collateral estoppel

11   effect of Judge McMahon's decision.  And I see why now

12   people are -- I mean, it's clear why now, because this is

13   such a, quite frankly, bizarre argument that somehow on a

14   TRO emergency motion that there's some sort of binding

15   decision that's law of the case that prevents Your Honor

16   from making his own determination I think is just completely

17   and utterly wrong.

18           And I'll stop now because I don't want to, again,

19   step on anyone's toes.

20           THE COURT:  Okay, all right.  Well, I think you've

21   addressed the point I really wanted you to address, which is

22   what sort of concession was referred to in that order, and I

23   think I have the context here in any event.  I don't believe

24   it was a concession, other than for purposes of that

25   argument and not for purposes of this argument.

Page 60

1          Although that being said, it appears to me that

2     the parties should primarily focus on the other three

3     factors for obtaining a stay pending appeal and assume that

4     I've reviewed their arguments with respect to the

5     substantial possibility of success on the merits and still

6     remain fully aware of how I addressed those issues in my

7     decision.

8          MR. EDMUNDS:  Your Honor, may I respond briefly?

9          THE COURT:  Well, I don't think there's -- I think

10    I've already given my view on this, and I don't think

11    there's any other thing to say on it.  I mean, I'm not sure

12    there's anything more to be said on it really, unless you

13    say that somehow that they did concede for all time.

14         MR. EDMUNDS:  I don't think it matters whether

15    it's a concession.  I think the District Court made a ruling

16    on the issue, and it made a determination as to likelihood

17    of success on the merits and it said that it was not going

18    to allow the appeal to come equitably mooted.

19         THE COURT:  Clearly, the order doesn't say that.

20    It says the Debtors concede, and the only issue is whether

21    they conceded for purposes of that argument or for all time,

22    and I'm satisfied that they did not concede for all time

23    because I can't imagine they would in that context.  There's

24    no ruling on the likelihood of the merits, no discussion on

25    the likelihood of the merits here.

Page 61

1          MR. EDMUNDS:  But I would just say we respectfully

2   disagree, reading the entire opinion that she didn't.  But I

3   understand Your Honor's ruling.

4          THE COURT:  Okay.

5          MR. EDMUNDS:  I don't need to say more I guess.

6          THE COURT:  Okay.

7          MR. EDMUNDS:  All right.  Thank you, Your Honor.

8          THE COURT:  All right.  Okay, so I do have a

9   suggestion for structuring this argument beyond what I've

10  already said, which is I want the parties to focus on what

11  sort of stay they are seeking in terms of duration and

12  activity, and also address it in the light of Bankruptcy

13  Rule 8025.

14          The parties -- the U.S. Trustee has thrown out

15  different alternatives, which includes a stay that would be

16  ordered by me for a relatively brief period after the

17  District Court's ruling.

18          It's not clear to me whether the three states have

19  limited their request for a stay in any way or whether

20  they're seeking a stay by me that would go through

21  ultimately a final order, which could conceivably be either

22  denial of certiorari or a ruling by the Supreme Court.

23          And I think this is important in the context again

24  of Bankruptcy Rule 8025, which is titled, Stay of a District

25  Court -- or BAP, but the focus here's on the District Court

Page 62

1   of course -- Judgment, which states in (a):  "Unless the

2   District Court orders otherwise, its judgment is stayed for

3   14 days after entry."  And I'll also note in that regard (c)

4   of Rule 8025, which says that if the District Court enters a

5   judgment affirming an order of judgment or a decree of the

6   Bankruptcy Court, a stay of the District Court's judgment

7   automatically stays the Bankruptcy Court's order, judgment,

8   or decree for the duration of the appellate stay.

9          And then Rule 8025(b) states, is headed for a stay

10  pending appeal to the Court of Appeals and states in (1) in

11  general:  "When a party's motion and notice to all other

12  parties to the appeal, the District Court may stay its

13  judgment pending an appeal to the Court of Appeals."  In

14  (2), it says, "Time limit.  The stay must not exceed 30 days

15  after the judgment is entered, except for cause shown," and

16  then it says, "Stay continued if before a stay expires.  The

17  party who obtained the stay appeals to Court of Appeals, the

18  stay continues until final disposition by the Court of

19  Appeals."

20         And then finally, (d) states:  "This rule does not

21  limit the power of the Court of Appeals or any of its judges

22  to do the following, including: a stay; stay proceedings

23  while an appeal is pending; suspending, modifying, restore,

24  vacating, or granting a stay while an appeal is pending; or

25  issue any order appropriate to preserve the status quo or

Page 63

1    the effectiveness of any judgment to be entered."

2            So clearly, appeals from Bankruptcy Court orders

3    should generally and ordinarily be, where there's a motion

4    seeking a stay, that motion should be brought first in the

5    Bankruptcy Court, and courts regularly deny such motions if

6    they are not brought first in the Bankruptcy Court unless

7    there's a legitimate reason to do so.  But 8007 pertains to

8    a motion for a stay of a judgment, order, or decree of the

9    Bankruptcy Court pending appeal.

10           So I have a serious concern that any request for a

11   stay pending appeal beyond the District Court's ruling is

12   not really properly before me or it shouldn't be decided by

13   me -- maybe that's a better way to phrase it -- given Rule

14   8025.

15           So let me first ask, is anyone looking for relief

16   beyond a stay up to the time that the District Court rules?

17           MS. LEVINE:  Your Honor, this is Beth Levine for

18   the United States Trustee.

19           We have asked for relief beyond that.  We think,

20   as we argued in our papers, that this Court has the

21   authority, both under Rule 8007 and its inherent authority

22   to control its docket, to stay its own orders, to enter a

23   stay pending a conclusion of the appellate process, so we

24   have asked for that full relief of a stay pending the

25   conclusion of the appellate process or, in the alternative,

Page 64

1    pending the District Court's decision.  So we have asked for

2    that additional relief.

3               THE COURT:  Right.  Although I don't think you

4    addressed Rule 8025 or the case law interpreting it.

5               MS. LEVINE:  Your Honor, I think we addressed the

6    language if 8025, which is different.  You know, Rule 8007

7    does not have the limiting language that refers to the

8    duration of the stay that Rule 8025 does.  8025 refers to

9    the District Court's stay of another court, the Bankruptcy

10   Court's order, which I think is a somewhat different thing

11   than a Bankruptcy Court staying its own order, and that

12   you've got that discretion to stay your own order pending

13   the appeals.

14               Certainly, you've got the discretion to determine

15   how long that stay should be, but we are asking for that

16   stay for the full duration of the appellate process, with

17   the alternative request for a stay at least until the

18   District Court has made its decision.

19               THE COURT:  Okay.

20               MS. LEVINE:  Your Honor, would you like me to

21   proceed with our motion now or to hear from others on that

22   at this point?

23               THE COURT:  Well, let me just make sure, as far as

24   the three states are concerned, are you looking for a stay

25   through the entire course of any appellate process?

1          MR. EDMUNDS:  Maryland is, Your Honor, and we'd

2     agree with what Ms. Levine just argued.

3          THE COURT:  Okay.

4          MR. GOLD:  Your Honor, Matthew Gold from Kleinberg

5     Kaplan representing State of Washington and Connecticut.

6          We agree with what Ms. Levine said, our original

7     requests, so that there was no question was for the broader

8     stay.  But our alternative position minimum, if you would,

9     is that we have a stay that preserves the status quo and

10    leaves the positions intact so that it can be decided by the

11    District Court or any higher Court when the issue gets put

12    to them.

13         THE COURT:  Okay.

14         MR. ESKANDARI:  Bernie Eskandari on behalf of

15    California, Your Honor.  I may have misheard at the

16    beginning of the hearing, you included California with --

17         THE COURT:  No.  If I did, it was a mistake.

18         MR. ESKANDARI:  Thank you.

19         THE COURT:  It's just Washington and Connecticut

20    and Maryland.  Sorry to give you a heart attack there.

21         MR. GOLDMAN:  Your Honor, if I may add -- Irv

22    Goldman, Pullman & Comley, for the State of Connecticut.

23         Just to note, Bankruptcy Rule 8007 does embrace

24    motions not only to the Bankruptcy Court but to the District

25    Court, so I would contend it does contemplate a stay pending

Page 66

1    appeal through the Circuit.  And there's no limiting

2    language in Bankruptcy Rule 8000(a)(1)(A) as to what is

3    meant by pending appeal, so it's open ended.  I would just

4    add that point.

5              THE COURT:  Okay.  Well, I will note that there

6    are a number of decisions that rule otherwise, including In

7    re Russo, 2017 B.R. Lexis 544 at 5-6 (Bankr. C.D. Cal, Feb.

8    27, 2017), In re VCR I, LLC 2019 B.R. Lexis 3376 at 27

9    (Bankr. S.D. Miss., Oct. 28, 2019), and In re Schupbach

10   Investments, LLC 2016 B.R. Lexis 836 at 5-6 (Bankr. D.

11   Kans., March 17, 2016), In re Howell-Robinson, 2008 WL

12   5076975 at 2 (Bankr. D.D.C. July 30, 2008), and Culwell v.

13   Texas Equipment Co. (In re Texas Equipment Co.) 283 B.R.

14   222, 230-31 (Bankr. N.D. Texas 2002).

15             I will note that Judge Roman in this District left

16   the issue open in Credit One Bank, N.A. v. Anderson (In re

17   Anderson) 560 B.R. 84, 88 (S.D.N.Y. 2016).  Although rather

18   than the Bankruptcy Court decide the motion, which was made

19   to him, in the alternative under either 8007 or 8025, he

20   decided the motion himself under 8025 after his ruling and

21   denied the motion on the merits for a stay.

22             But I think it's important, and I believe it's

23   consistent actually with Judge McMahon's approach, for the

24   parties to focus on the two alternative forms of stay that

25   the parties are seeking here: their preferred one, which is

Page 67

1    through the entire appellate process, and alternatively,

2    through the District Court's ruling.

3         Because the determination of the issues and, in

4    particular, the three factors other than on the merits, to

5    my mind, could be quite different depending on whether it's

6    a stay through the District Court's ruling or a stay through

7    either denial of cert or a ruling by the Supreme Court,

8    which obviously would take a significantly longer amount of

9    time.

10        And on the merits issue, obviously a trial judge

11   that is faced with a request for a stay pending appeal is

12   always in the awkward position of evaluating the merits of

13   the trial judge's own opinion -- that isn't a problem for

14   the District Judge -- and makes that review, I think, much

15   more, in some ways at least, if on a psychological basis,

16   more meaningful.

17        So I really do want the parties to focus on those

18   two different durations for a stay, and so, you should

19   address your arguments accordingly.

20        So I don't know if you decided who was going to go

21   first, whether it's Ms. Levine or counsel for one of the

22   three states, but one of you should go ahead.

23        MS. LEVINE:  Your Honor, I'm ready to proceed.

24   Thank you.  This is Beth Levine again with the Department of

25   Justice for the United States Trustee.

Page 68

1          I'll save my introductory remarks.  You know why

2    we're here.  I will skip over much on the likelihood of

3    success on your direction.

4          I wanted to say one thing, which is that Judge

5    McMahon in Footnote 4 on Page 10 of her decision, you know,

6    said that she considered it obvious that there are serious

7    questions going to the merits and making the fair ground for

8    litigation.  We think that is true.

9          You know, certainly, we don't expect you to agree

10   that you've erred.  We know you disagree with our legal

11   position.  But we think there are very serious questions and

12   that they merit appellate review and that the denial of that

13   appellate review, if there were a dismissal based on

14   equitable mootness, would be irreparable harm.

15         And it's not just the denial of appellate review

16   vel non itself; it's because you have claims here that are

17   being eliminated without consent that would be permanently

18   irreparably gone without that appellate review.

19         THE COURT:  Well, can we focus on that for a

20   second?  First, you went -- and I'm responsible for this

21   since I told the parties not to focus substantially on the

22   merits -- you went very quickly from that to the issue of

23   irreparable harm.

24         And I just -- I want to be upfront with everyone.

25   It seems to me that there are, in fact, issues going to the

1    merits that are somewhere between, you know, a mere

2    possibility of success and a probability of success.  I

3    think many of the issues raised by the U.S. Trustee and the

4    three states do not fall into that category; that, in fact,

5    they are unlikely to prevail on appeal.  Those go to the

6    524(e) point, the due process point, and their assessment of

7    the merits of the settlement.

8            But I agree that the issue of a release of third-

9    party claims is, in every instance, a serious issue that

10   requires a Court to sift through complicated legal and

11   factual considerations.  And the limits, in particular, on

12   what types of claims that would belong to a third party,

13   i.e., not the Debtors' estate, that can be appropriately,

14   legally enjoined requires serious parsing of the case law

15   and is certainly something that even the Second Circuit case

16   law recognizes as an issue where the lower court can get it

17   wrong, as was the case in Metromedia and Carter and other

18   decisions which recognize the underlying principle that the

19   Court has power to enjoin third-party claims.  But drawing

20   the line as to what claims can be enjoined and what can't is

21   something that courts can well disagree on.

22           So on that point -- unlike on the due process, the

23   jurisdictional points, the 524 point, frankly, even the

24   state sovereignty point, all of which I think are unlikely

25   to prevail on appeal -- this issue as to how released claims

Page 70

1    are to be cabined is, I believe, one that does satisfy the

2    requirement to show a strong showing of likelihood to

3    succeed on the merits, such that there's a fair ground for

4    litigation.

5            Although again, as recognized, for example, by

6    Judge Chapman in In re Sabine Oil & Gas Corp., 551 B.R. 132,

7    143 (Bankr. S.D.N.Y. 2016), the focus on the degree of

8    likelihood of success is tempered by the balance of the

9    harms or the Court's assessment of the balance of the harms.

10           So I suppose the objectors can try to persuade me

11   to the contrary, but I think that I want to turn then to the

12   irreparable harm point that you were starting to make.  And

13   the argument you made is that the people and governmental

14   entities that objected to the release or injunction would

15   lose their rights if a stay was not granted.

16           And again, this goes to my direction to you all to

17   focus on the two different times for the stay.  I confess

18   I'm having a hard time seeing how that would be the case if

19   the stay were granted or not granted either way through the

20   date of the District Court's ruling with the additional 14

21   days that are added on under Rule 8025.

22           And further, I'm having a hard time, although

23   maybe not as hard, with the argument that equitable mootness

24   really would occur here if a stay were not granted through

25   the date of the entire appellate process.  I guess that

Page 71

1     depends, in some measure, upon whether the plan is

2     substantially consummated.

3              But as far as the release is concerned, the

4     majority of the payments by the released parties, as you

5     yourself point out, occurs substantially down the road, and

6     under the plan, they have a credit only for what they've

7     paid in the interim.

8              So it seems to me under either scenario too broad

9     to say that these people who the U.S. Trustee says that he's

10    speaking on behalf of would lose their rights.  They would

11    only lose it if there's equitable mootness, right?

12             MS. LEVINE:  Your Honor, that is the primary

13    concern, that is if there is equitable mootness and there's

14    not a review on the merits, they would lose their rights

15    that would otherwise --

16             THE COURT:  Well, there's no other concern, right?

17    I mean, it's just based on equitable mootness, nothing else.

18             MS. LEVINE:  Your Honor, I think there's also a

19    concern about what's going to happen in the interim is, you

20    know, defendants' move to dismiss based on these releases,

21    for example.  As noted in our brief and one of the cases

22    that's pending, one of the defense had suggested that the

23    releases apply.  This was prior to the Court's decision, so

24    it was a different context.  But we don't know how that

25    would play out and whether cases would be dismissed with

Page 72

1    prejudice in the intervening time, so I think there is that

2    risk.  But our primary concern is the equitable mootness

3    risk that would make it irreparable if there's no longer a

4    possibility of review on the merits.

5              THE COURT:  So there are -- but that wouldn't

6    really happen until the effective date of the plan, right?

7              MS. LEVINE:  Your Honor, it's my understanding

8    that the releases become effective on the effective date.

9              THE COURT:  Right.

10             MS. LEVINE:  So what we want to avoid happening --

11   but if the appeals dismissed without a review on the merits,

12   that effective date is going to come and go, and the Debtors

13   have --

14             THE COURT:  But I'm asking you to focus on that if

15   and how likely that's to happen.

16             MS. LEVINE:  Yes, Your Honor.  So focusing first

17   on the timing of the District Court's decision, Your Honor.

18   Under the plan -- well, first of all, they've argued that

19   it's not just the effective date that may cause equitable

20   mootness.  They have very specifically preserved their

21   rights to argue that the criminal sentencing, which will

22   happen before the effective date, can be a basis for

23   equitable mootness.

24             THE COURT:  What do we think about that?  I mean,

25   that's under a separate plea agreement; that's not under the

Page 73

1    plan.

2            MS. LEVINE:  Your Honor, it obviously raises a

3    concern because they've indicated they're going to argue it.

4    But our concern is also, you know, they've said nothing else

5    that's happening before the effective date can constitute

6    equitable mootness, and we've got two concerns about that,

7    Your Honor.  One is, as we've stated, you know, their

8    stipulation about that doesn't bind the Second Circuit, it

9    doesn't bind other parties.

10           We've had other parties that haven't signed the

11   stipulation that have filed oppositions to motions to stay.

12   We've asked multiple times what's happening.  We haven't

13   gotten a response.  So we don't know what's going on that

14   someone else might look to and say, you know, is the basis

15   of an equitable mootness argument.

16           But the other thing we're concerned about, Your

17   Honor, is --

18           THE COURT:  But how could any of those things --

19   I'm sorry to interrupt you.  But how could any of those

20   things be substantial consummation?

21           MS. LEVINE:  Your Honor, I don't think there'll be

22   substantial consummation, but under Second Circuit law, the

23   test is a substantial or comprehensive change in

24   circumstances.  And, you know, clearly, the Debtors think

25   that something can happen before substantial consummation

1    that would support equitable mootness because they said they

2    might argue that based on sentencing.

3            And the concern, Your Honor, is it may be that,

4    you know, they have said they've structured this so that

5    they have time between the confirmation and the sentencing

6    to get certain things done, that they want to get certain

7    things done before they are sentenced.  We don't have

8    clarity on what those things are.

9            But we don't know, you know, what pre-effective

10   date activity is going to open the door to sentencing or

11   pre-effective date activity they're going to say is well,

12   you know, say it's transferring assets to NewCo.

13   Transferring assets to NewCo on its own, they might say,

14   well, that can be undone.  But then after we get past

15   sentencing, we don't know what their argument is.  Is it

16   going to be that well, now that it's been sentenced, that

17   asset transfer can't be undone?

18           So we don't really know how these things interplay

19   together, which makes us very concerned about when, you

20   know, not just the effective date, but also the sentencing.

21   And also what else is happening and how those things work

22   together so that if we get past sentencing, they're going to

23   come back and say, oh, well, you know, this other pre-

24   effective date activity on its own could be reversed, but

25   now it can be undone.  Now that bell cannot be unrung.

Page 75

1             And so, for all these reasons, we have concerns

2      about these other activities.

3             THE COURT:  But look, the presumption of equitable

4      mootness, which is when their five-step case in the Second

5      Circuit case law comes into effect, is where the plan has

6      been substantially consummated.  Generally, courts focus on

7      the distributions under the plan as that, or transfers to be

8      made under the plan that cannot be unwound.

9             So far, I'm just hearing sort of vague fears, as

10     opposed to anything that actually would give rise to any

11     real risk at all of equitable mootness.

12            MS. LEVINE:  Your Honor, we think it's a

13     substantial risk because of what the Debtors have said

14     regarding the impact of sentencing, but we also think that

15     the dates here --

16            THE COURT:  Let me -- I mean, Judge Kaplan dealt

17     with this head on in the St. Johnsbury case.  He says to

18     begin with, the government's failure to concede that its

19     appeal would be moot absent a stay does not help those

20     opposing the motion any more than the opponents' failure to

21     concede that the appeal would not be so moot it harms them.

22            Mootness is a doctrine grounded in constitutional

23     considerations designed to limit courts to the resolution of

24     actual controversies, although I think the case law has

25     moved on since then and the focus is really, for equitable

Page 76

1      mootness purposes, on the finality of bankruptcy plans.

2              And then he says the parties through additional

3      proceeding, therefore, cannot determine even by agreement

4      whether a case is moot; that is for the Court.

5              But again, we're talking about equitable mootness.

6      I don't think there's any argument that there would be

7      constitutional mootness here, absent probably well after the

8      effective date.  But as far as equitable mootness is

9      concerned, I'm just not seeing it.

10              I mean, again, the case law in the Second Circuit

11     focuses on the five-step test where a plan has been

12     substantially consummated.  Other circuits focus on simply

13     whether third parties' expectations, i.e., parties who are

14     not parties to the appeal or on either side of the contested

15     issues, would be so harmed that the Court would not exercise

16     what it otherwise has, which is an unflagging duty to

17     exercise its jurisdiction.  And I just...  I mean, how would

18     you undermine the plan my invoking equitable mootness for

19     things that were done before substantial consummation?  It

20     just seems like a contradiction in terms.

21              MS. LEVINE:  Your Honor, as I think the St.

22     Johnsbury case pointed out, we're in a difficult position.

23     We don't want to argue against ourselves.  We don't think

24     equipment mootness would or should apply --

25              THE COURT:  No, you don't have to --

Page 77

1          MS. LEVINE:  -- but the Debtors --

2          THE COURT:  I'm not asking you to argue against

3     yourselves.  But I just don't...  But I think here you need

4     to show me that this harm is not just conjectural.

5          MS. LEVINE:  Your Honor, the reason we think it's

6     more conjectural is based on what the Debtors have said

7     regarding what they're going to argue about equitable

8     mootness, and they've pinned it, not just to the effective

9     date, but to the sentencing date, which under the plan could

10    be as early as November 1st, which is the day after our

11    argument in the District Court, with the effective date

12    really soon after that, as early as December 8th, a week

13    later.

14          So, you know, talking about the timing and the

15    proposals that they have offered, you know, we think

16    certainly we should at the very least get a stay until the

17    District Court's decision to make sure those dates don't

18    come and go before the District Court has a chance to rule.

19    We are going at --

20          THE COURT:  Let me focus on that point.  If it is

21    clear that the District Court is going to rule before

22    substantial consummation of the plan, before the effective

23    date, why is a stay needed?  Why should the Debtors and the

24    other parties who are in support of the plan be precluded

25    from laying the groundwork in case the conditions to the

Page 78

1      effective date do occur, such as setting up new boards,

2      setting up the trusts, et cetera?

3              I raised this point, you know, the first time that

4      a stay was asked on an emergency basis, and I'm still having

5      a hard time seeing how that works.  And frankly, if one

6      looks at Judge McMahon's order, which I'm not doing, but

7      it's as much in support for that view also, that there

8      really doesn't seem to be anything that's really going to

9      really run the risk of equitable mootness until after the

10     effective date, which it appears, at least, would occur

11     after Judge McMahon's ruling.

12             Now, I think you acknowledged that the stay you're

13     seeking would have to be a stay of everything, but could

14     just be a stay of the effective date, right?  Or at least it

15     doesn't have to be a stay of everything?  I don't want to

16     put words in your mouth.  You didn't agree with this to the

17     other point.  You didn't agree that it could just be a stay

18     of the effective date.  But I think you did agree that the

19     stay of the confirmation order would not have to be a stay

20     of all of the order in order for there to be no risk of

21     equitable mootness, right?

22             MS. LEVINE:  Your Honor, in our motion we talked

23     about one specific thing, because one of the opponents had

24     raised a concern about secreting assets.  And you know, we

25     tried to have this conversation with the Debtors just to

Page 79

1    find out what are the specific things that you would want

2    exempted from a stay.  And we didn't get an answer to that

3    question.

4           So if there was a question of other specific

5    things, those are things we would have to take under

6    consideration or have authority to agree to any other

7    specific thing than what we put in our brief.

8           But you know, we understand that Judge McMahon is

9    moving very, very quickly.  We're all moving as quickly as

10   we can to get the appeal decided quickly.  But there's no

11   guarantee that she is going to decide before a date certain,

12   particularly when these states are approaching in December.

13          THE COURT:  So that would argue just for staying

14   the effective date until after her ruling, not staying

15   everything else that the Debtor would be doing to prepare

16   for the effective date, which isn't really --

17          MS. LEVINE:  Well, Your Honor --

18          THE COURT:  -- which isn't really under the

19   confirmation order anyway, because the confirmation order

20   doesn't really contemplate any material transactions before

21   the effective date, I think.  Right?  None have been

22   identified.

23          MS. LEVINE:  Your Honor, the way to stay the

24   effective date is to stay the confirmation order, because

25   those are the transactions that lead up to getting to the

1     effective date and --

2              THE COURT:  Let me ask --

3              MS. LEVINE:  -- lead up to getting to the

4     sentencing.

5              THE COURT:  Let me ask you the question different.

6     What transactions out of the ordinary course do you believe

7     they confirmation order authorizes now before the effective

8     date?

9              MS. LEVINE:  Your Honor, the confirmation order

10    grants a broad authorization to engage in the transactions

11    that they need to implement the plan.  And part of the

12    problem is we're in the dark on exactly what they're doing.

13    We want to maintain the status quo because equitable

14    mootness is an existential threat to our appeal.  And

15    maintaining the status quo is the only way to protect

16    against that risk of equitable mootness.  You know, it's --

17             THE COURT:  Do you have any case that stands for

18    that proposition?

19             MS. LEVINE:  I'm sorry, which --

20             THE COURT:  That any risk --

21             MS. LEVINE:  -- that equitable mootness is --

22             THE COURT:  -- any risk of equitable mootness is

23    enough?  In fact, most of the cases say just the opposite of

24    that.  It has to be a real risk, coupled with other things,

25    or at least something else.  Now, maybe that something else

Page 81

1    here may simply be the significance of ruling on the merits

2    of the appeal.

3              But it would still seem to me that if you had --

4    and this is repeated in numerous rulings -- there's one by

5    Judge Briccetti in U.S. Bank National Association v.

6    Windstream Holdings, Inc., 2020 U.S. District LEXIS 137183.

7    Merely invoking equitable mootness as the Appellants have

8    done here -- a risk that is present in any post-confirmation

9    appeal of a Chapter 11 plan -- is not sufficient to

10   demonstrate irreparable harm.  If the Court were to credit

11   this kind of argument for every such request, it would be

12   forced to review nearly every bankruptcy appeal on an

13   expedited basis and, of course, grant the motion if some

14   other factor were established.  And he cites there In Re

15   Calpine Corp., 2008 Bankr. LEXIS 217 (Bankr. S.D.N.Y. Jan.

16   24, 2008).

17             But there are lots of courts that say that.  That

18   you can't just say there's a risk of equitable mootness and

19   then get a stay pending appeal.  You have to actually focus

20   on what that risk is and how real it is, and then see how

21   it's tied into the other factors.

22             And I'm still not seeing it as far as between now

23   and a date within a reasonable time after Judge McMahon's

24   ruling, which I think the drafters of the rule have said is

25   at a minimum 14 days.  And that would be just a stay of the

Page 82

1   effective date.  I mean, there's no discussion about how

2   this plan could be substantially consummated before then.

3          And even then, there's the issue of who are the

4   people who are harmed by a continued appeal?  And if we're

5   focusing just on the Sacklers, I don't think that's the type

6   of harm for the shareholder released parties; that's the

7   type of harm that the courts recognize is a basis for

8   equitable mootness, because they're in the heart of the

9   issues that are on appeal.  There would have to be other

10  third parties, legitimate parties who aren't in the dispute

11  who were being harmed.

12          MS. LEVINE:  Your Honor, you know, this sort of

13  goes back a little bit to where I started, where we think

14  the harm is the complete elimination of claims that becomes

15  unreviewable if the appeals are equitably moot.

16          THE COURT:  All right.  I think we've covered --

17          MS. LEVINE:  And --

18          THE COURT:  -- this point, because again, I don't

19  think you really answered my question on how it becomes

20  unreviewable.  I just don't -- I don't see it here.  I don't

21  think you carried your burden of proof on that point, at

22  least through the date of Judge McMahon's ruling and the

23  rule stay that goes into effect.  And then parties can ask

24  her if she thinks there's a basis for a further stay in the

25  Second Circuit.  And they will have had the benefit of

Page 83

1    looking at the issue besides equitable mootness that you're

2    focusing on, which is the importance of the merits, and can

3    weigh those themselves.

4         I just -- I don't -- the release isn't going to be

5    effective until the effective date.  So to lose the release

6    doesn't happen until the effective date.

7         MS. LEVINE:  And Your Honor, we think it's --

8    we're asking for a stay, you know, and in the alternative,

9    at least a stay through the District Court's decision, to

10   make sure those dates don't pass, to make sure that we can

11   this appeal heard on the merits.  We think that's critically

12   important.  We think it raises really important issues that

13   should be heard on the merits.

14        THE COURT:  All right.  Well, again, I can

15   understand that argument as far as a stay of the effective

16   date.  I'm still not seeing it as far as a stay of other

17   actions, which would not be -- I don't believe -- authorized

18   before the effective date.  And I've already ruled, and I

19   continue to believe, that the advance order is clearly not a

20   basis for equitable mootness.  I mean, it's just -- that

21   would be -- for a doctrine which is already under legitimate

22   attack, to rule that that order is a basis for equitable

23   mootness is just -- I can't imagine it.  I mean, I think

24   that's a frivolous argument.  I really can't -- it's just

25   inconceivable.

Page 84

```
 1              MS. LEVINE:  Your Honor, I appreciate your views

 2    on that.  You know, it's our concern that Second Circuit's

 3    not bound, and our hands are tied a little bit because we're

 4    in the dark about what the Debtors are actually doing.  We

 5    have asked them --

 6              THE COURT:  All right.  Well, I'll --

 7              MS. LEVINE:  -- multiple times.

 8              THE COURT:  -- ask the Debtors.

 9              MS. LEVINE:  We haven't gotten an answer.

10              THE COURT:  I'll ask the Debtors what they believe

11    they're authorized to do before the effective date to lead

12    to the argument that the plan is substantially consummated

13    and, therefore, it would be inequitable for third parties,

14    not the parties who have the benefit of the release, that

15    you are appealing, in essence.  That's the harm you're

16    trying to address is your dispute over the legitimacy of the

17    third-party release.  And I think I do have a -- just

18    because I...  Look, the cases are reported for a reason.

19    The lower courts follow them.

20              So, you know, one reads Charter, one reads

21    Windstream, one reads the Chateaugay case, and Metromedia.

22    I mean, these are MPM Silicones.  These are published

23    opinions by the Second Circuit where they lay out when

24    something will be found to be equitably moot.  And it is an

25    equitable doctrine, and so the facts matter.
```

Page 85

1          But, you know, I think actually the trial courts

2     have been given the job generally to find the facts in light

3     of the case law, and I just can't imagine that the facts

4     before me, up at least until the effective date, would lead

5     the Second Circuit to find that the appeal was rendered

6     equitably moot.

7          It's just -- there's no effective date, there's no

8     substantial consummation, there's no sale that's happening

9     before the effective date, there's no other transaction.

10    And it just -- it doesn't fit even within the actually

11    fairly pro-equitable mootness case law in the circuit, which

12    focuses on the heavy showing someone has to make against

13    equitable mootness when a plan has been substantially

14    consummated.  This plan isn't even effective, so it's hard

15    to believe that it could be substantially consummated.

16         Anyway, so why don't we move on to the balance of

17    hardships and public policy.

18         MS. LEVINE:  Your Honor, so on the balance of

19    hardships, the opposing parties have rested primarily upon a

20    harm from delay.  No one questions the importance of

21    providing relief to those who have suffered from the opioid

22    crisis.  In our view, that supports a stay.  Those who

23    oppose the plan have also suffered from the opioid crisis.

24    They have equally pressing interests and abatement and

25    compensation, but they would have their claims eliminated

1    entirely by the plan, not just delayed.

2           And we don't agree that a stay would cause

3    significant delay in the context of this case, which has

4    been pending for over two years, with litigation against

5    Purdue and the Sackler Family that began before that, where

6    the appeal is being expedited at a very rapid pace before

7    the District Court.  The argument on that appeal is in just

8    three weeks.  And, of course, if it went to the Second

9    Circuit, we would seek to expedite it there as well.

10          The United States Trustee is the watchdog, the

11   congressionally appointed watchdog, acting in the public

12   interest to try and make sure bankruptcy is not abused.

13   We're advocating -- we understand you disagree -- but to

14   ensure that the plan does not transgress the Constitution or

15   the Code, and we think there's a public interest in having

16   these issues heard on the merits regarding these third-party

17   releases, and having, you know, the appellate courts provide

18   more clarity on the limits of when they're allowed and when

19   they're not allowed.

20          The Debtors and their allies have relied a lot on

21   the creditors' support for the plan suggests that a stay

22   would be against the public interest.  The creditors'

23   support for the plan is not the same thing as the public

24   interest.  It just reflects the interest of the creditors

25   that voted in favor of the plan.

Page 87

1          There is a significant public interest in

2    vindicating the rights of the minority and preventing the

3    will of the majority from going unchecked by appellate

4    review.  And we think that permanent elimination of the

5    claims against the consent of the people who did not want to

6    release these claims outweighs that marginal delay, which,

7    again, we think -- particularly focusing in on the District

8    Court decision -- is relatively minimal.

9          THE COURT:  Well, let's not focus on the District

10   Court decision for the moment.  Let's focus on when you

11   believe that -- when do you believe that a final decision

12   here would be made?  And I'm assuming that's through the

13   Supreme Court process.

14         MS. LEVINE:  Yes.  If this were to go -- if

15   someone were to petition for certiorari, it would be to the

16   Supreme Court for process, and of course, if the Supreme

17   Court granted cert, that would certainly reflect that these

18   are significant issues that were review.

19         THE COURT:  So have you projected how long that

20   would take, that process?  Are we talking 2024?

21         MS. LEVINE:  Your Honor, I don't know the answer

22   to that.

23         THE COURT:  Isn't that important to figure out?

24         MS. LEVINE:  I don't know that there's any way to

25   predict with any kind of certainty how quickly the courts

Page 88

1    will go, other than we've committed to expediting these

2    appeals.  And you know, that's shown through our actions

3    with how quickly we are moving in the District Court.

4            THE COURT:  Well, does that apply to the Supreme

5    Court, though?  They don't take expedited appeals like this,

6    do they?

7            MS. LEVINE:  Yeah, I don't know exactly what the

8    process is, Your Honor, but I don't think that the

9    expediting works in the same way in the Supreme Court.  So I

10   don't have an answer for how long that would be.  But, Your

11   Honor, we do think that these issues are important and that,

12   you know, a delay from the stay is outweighed by the

13   elimination of these rights.  And that that would be an

14   irreparable injury for these claims to be eliminated

15   entirely, without a full review on the merits.

16           THE COURT:  And as far as the individuals' rights

17   are concerned, you assert them -- that they would be

18   asserted by individual under state consumer protection laws?

19           MS. LEVINE:  Some of this -- well, some of the

20   individual claims are under state consumer protection laws,

21   Your Honor.  Some are under common law.  I'm not sure I

22   quite caught your question.

23           THE COURT:  I'm just trying to figure out what the

24   claims that you're looking to protect are, as far as

25   individuals' claims.

Page 89

1              MS. LEVINE:  Direct claims, based on the

2      individual non-debtor conduct for their own misconduct,

3      breaching a duty directly to the Plaintiffs, such as the

4      cases that -- the complaints that we cited in our brief,

5      which allege claims under state consumer protection

6      statutes, common law fraud, negligence, RICO.  There's a

7      number of claims that have been asserted along those lines

8      that allege direct participation and direct liability, based

9      on the individual Defendants' own misconduct.

10             THE COURT:  Okay.  And that misconduct would be

11     misconduct in being an officer or director or shareholder of

12     the Debtors?

13             MS. LEVINE:  In the cases that we've cited, yes.

14     I believe the individual defendants were in those roles.

15     But the allegations are that they'd reached -- is not just a

16     sort of veiled piercing, breach of fiduciary duty,

17     imputation of the company's conduct, but that the

18     individuals had breached their own duty and engaged in their

19     own misconduct, making them directly liable to the

20     Plaintiffs.

21             THE COURT:  Have you found any of those cases or

22     any evidence from the confirmation hearing that shows that

23     those allegations don't substantially or entirely overlap

24     with the showing that would be necessary for piercing the

25     corporate veil or other causes of action that the Debtors

Page 90

1    would have?

2         MS. LEVINE:  Your Honor, the factual allegations

3    may overlap, but I mean, I think this gets to where we

4    disagree with what the proper scope of the non-debtor

5    releases are, and that is something that we think should --

6    is an important issue that should be reviewed, and one of

7    the reasons why we're seeking a stay pending appeal.

8         You know, when Metromedia talked about the cases

9    that have -- the rare cases that have allowed these

10   releases, they were in circumstances that were more limited.

11   They were in class actions, like Drexel, which is this is

12   not -- are aware they were, you know, more surely derivative

13   claims, such as fraudulent -- you know, claims that were

14   duplicate fraudulent transfer claims, like in Madoff or

15   Tronox or in Manville I, where it was directly against the

16   asset of the estate, and that in the claim was a secondary

17   insured that was derivative of the primary insureds' claim,

18   the debtor was the primary insured.

19        So we think that question of whether overlapping

20   factual allegations is enough to put this within the scope

21   of a non-debtor release and whether that's the appropriate

22   scope is an important question, as a question that should be

23   addressed on appellate review.

24        THE COURT:  Well, no, I've already said I believe

25   that's correct.  I'm just trying to figure out here -- and

Page 91

1    this is in a different context; this is balancing the harms

2    -- the right of someone to pursue, which on the facts are

3    duplicate claims or overlapping claims, is so strong,

4    particularly when they would receive a recovery, at least

5    which was found under the plan, they wouldn't receive at all

6    without the settlement, is enough to override the harm

7    caused by the delay.

8              MS. LEVINE:  Your Honor, we think there is harm

9    here.  The claims directly against the Sacklers or other

10   non-debtors were never valued.  And there's a harm to having

11   the choice of whether to settle --

12             THE COURT:  I actually did value them.

13             MS. LEVINE:  -- or proofs of that claim are not --

14             THE COURT:  I don't know why --

15             MS. LEVINE:  -- taken away from you.

16             THE COURT:  I don't know why you say that.  I

17   actually did value them in the aggregate.  And I considered

18   those complaints.  And I said, given the battle of the

19   century that would ensue, the settlement was fair.  The U.S.

20   Trustee took no discovery on those issues and didn't make

21   any case on them.  Some of the objecting states did, and I'm

22   sure Judge McMahon will read carefully the witness testimony

23   on those points.

24             But I have to say, I am having a hard time seeing

25   how those claims, which really are overlapping claims as far

1    as I can tell -- and I did the best I could to cabin the

2    release to make it clear that they would not expand beyond

3    that -- that the people that you're looking out for would

4    get any recovery whatsoever in the context where the

5    settlement was not in place and there would be a litigation

6    free-for-all.

7              Again, you have the United States getting it

8    superpriority claim.  You have individual states litigating

9    their claims.  And then that's up against a class action

10   lawyer or two or three, back in the MDL, where there already

11   was, by the substantial private side in the MDL, a

12   settlement for a lesser amount, namely $3 billion.

13             So I'm just having a hard time seeing, other than

14   the intellectual desire to clarify this issue one way or the

15   other, how the people who would object to the release of

16   their claims are harmed more than the people who would be

17   receiving the benefit of the plan distributions.

18             MS. LEVINE:  Your Honor, I think we have a

19   disagreement about what the evidence shows about that.  But

20   there's also a harm from having that choice taken away, and

21   what we view of a violation of due process rights to be

22   forced into a settlement that one does not agree to.

23             THE COURT:  Well, the parties you're speaking on

24   behalf of certainly had notice of the confirmation hearing

25   and the right to hire a lawyer to make that very argument,

Page 93

1   which is a lot easier to make than hiring a lawyer to

2   compete against 48 states and the Debtors and the lawyers

3   and their clients who make up the Ad Hoc Committee of

4   Personal Injury Claimants.

5           If they're not prepared even to hire a lawyer to

6   fight the plan, how do you assume that they're going to even

7   undertake the litigation that you want to preserve for them?

8           MS. LEVINE:  Your Honor, the premise that there

9   was adequate notice, again, you know, we disagree with.

10  That's part of our objection.  And we know you disagree.

11  And this is part of the reason why we think this needs

12  appellate review.

13          And you know, there are parties who have filed

14  claims that would be precluded.  We think we've shown that.

15  There are numerous cases listed in the preliminary

16  injunction.

17          THE COURT:  But they haven't objected to the plan.

18  And you're not going to represent --

19          MS. LEVINE:  Mr. Hartman has.

20          THE COURT:  You're not going to represent them in

21  the litigation, right?

22          MS. LEVINE:  No, Your Honor.  And of course, the

23  United States Trustee is here not representing individuals,

24  but representing the public interest in making sure that the

25  bankruptcy system isn't abused.  But we think, you know, you

Page 94

1    can still look to that harm, the due process harm to people

2    who are having claims eliminated, and to the public interest

3    in having these significant important issues addressed on

4    appeal as part of your harms balancing in addressing a stay

5    pending appeal.

6              THE COURT:  Okay.

7              MS. LEVINE:  Your Honor, I don't know if you have

8    further questions.  You know, we've made our case in our

9    briefs.  Obviously, we have some disagreements, but we would

10   stand on a request for a stay pending appeal.  And I will,

11   if you have no further questions, cede the floor to some of

12   the other movants.

13             THE COURT:  Okay.

14             MR. GOLD:  Good morning, Your Honor.  Matthew

15   Gold, from Kleinberg Kaplan, representing the State of

16   Washington.  Can you hear me?

17             THE COURT:  Yes.

18             MR. GOLD:  May I proceed?

19             THE COURT:  And see you too.  Yes.  You can go

20   ahead.

21             MR. GOLD:  Thank you, Your Honor.  First, I just

22   would like to touch on -- because I think it's an important

23   point in context of the questions that Your Honor has raised

24   -- the attempts that were made to try to resolve this matter

25   prior to this hearing.

1            I think the key point, which Your Honor said in

2      framing the question for us, was that it would be my wish

3      that the schedule for the appeal is a reasonable one and

4      does not run the risk of causing Norma's harm to creditors.

5      I'm not going to quote every word you said, but the key

6      point was, with a second potential look at the Appellate

7      Court as to whether any further stay is necessary.

8            And I think that that is the point here where,

9      with what we -- what I described earlier as our fallback

10     position, that we are seeking to have a stay consistent with

11     Rule 8025 that would at least take the process through a

12     decision from the District Court, and then give a period of

13     time for a higher court to decide whether to further extend

14     the stay.  The --

15            THE COURT:  Can I represent you on that point, Mr.

16     Gold?

17            MR. GOLD:  Sure.

18            THE COURT:  When talking to the U.S. Trustee's

19     counsel, I made a distinction between a stay of the

20     effective date, or the occurrence of the effective date

21     under the order, which would be a specific condition to the

22     effective date in the order and in the plan, and a stay of

23     the order in its entirety.  And it seemed to me that the

24     latter might be warranted, but not the former.  I mean --

25            MR. GOLD:  Well --

1           THE COURT:  -- the other way around.  That the

2     latter would not be warranted, but the former might be.

3           MR. GOLD:  I think that a proper consideration of

4     that question, Your Honor, requires a consideration of the

5     effect of sentencing.  And that is the -- and that is

6     something that may not -- that is clearly contemplated under

7     the confirmation order, although it may not be completely

8     clear how it -- whether it arises under the plan or under a

9     separate stipulation.

10          But the connection, Your Honor -- and I think the

11    Debtor has been very clear about this -- is that they are

12    going to press that once sentencing has occurred, they will

13    be suffering immense harms if they are not permitted to then

14    consummate the plan and to enter into the transactions under

15    the plan.  And so that, therefore, to enable there to be a

16    meaningful stay of the consummation of the plan, as Your

17    Honor has posited, there needs to be a delay of the

18    sentencing as well.

19          If the Debtors can posit -- now, right now I'm

20    positing what their argument is going to be, and I realize

21    that that's a somewhat shaky limb to be on, but that's

22    pretty much where I understand their position is going to

23    be, so that to prevent the possibility of a shipwreck or

24    major harms occurring if there is sentencing and not a --

25    and they can't consummate the plan, we need to have a delay

Page 97

1    in the sentencing.

2            If the sentencing is delayed and concurrent with

3    that a stay of the effective date of the plan, we believe

4    then Your Honor's analysis is correct, that that should be

5    sufficient to maintain the status quo and prevent there

6    being a substantial consummation that would be the predicate

7    for an equitable mootness argument.

8            Now, even there, we're at a slight disadvantage

9    because, as the U.S. Trustee has said, we don't know exactly

10   what the Debtors would be doing and it would be a lot

11   cleaner for us to accept this, if the Debtors would

12   straightforwardly say, we agree with you; nothing else that

13   is happening here would create a predicate for equitable

14   mootness, along the lines of the assurances they gave to the

15   parties in connection with the advance order, so that we

16   would have a basis of knowing that there wasn't something

17   going on that we're not aware of and that in our saying we

18   don't think there's a problem, someone plays a gotcha game

19   and says, yes, they weren't aware of this and that happened.

20           But based on our assessment, what we're aware of

21   being contemplated, that's the one critical point that we

22   have to add.  There has to be a delay in sentencing and then

23   a delay in the effective date of the plan, which would

24   happen together because the effective date of the plan can't

25   occur without sentencing in the first instance.

1           And so the reason we were unable to reach any kind

2      of resolution with the Debtors in trying to resolve this

3      short of having this lengthy hearing today was that they

4      insisted that any resolution we reached with them had to

5      include a date certain for the sentencing to occur.

6           And so that's why we've been unable to reach an

7      assessment with them, because they kept including the

8      sentencing, reserving their right to argue that the

9      occurrence of the sentencing would create an equitable

10     mootness problem, either by itself or because of what would

11     be entailed afterwards.  They didn't get to that level of

12     specificity.  But that's why we tie those two things

13     together.

14          THE COURT:  Okay.  And I appreciate that I may be

15     asking you to say things that are contrary to your later

16     argument that sentencing wouldn't render the plan moot.  And

17     all I can say is that you wouldn't be held to those things

18     in the future, and I'm sure the Debtors have thought of them

19     to.

20          So I'm having a hard time seeing how the

21     sentencing could create equitable mootness.  I mean, it's

22     part of a plea agreement.  It's scheduled in front of a

23     different judge.  I guess I could enjoin --

24          MR. GOLD:  Oh --

25          THE COURT:  -- the Debtors from seeking it.  But

Page 99

1    the agreement has this provision that they're supposed to go

2    get sentenced.

3            MR. GOLD:  Well, Your Honor, as I understand it --

4    and again, this will be something that the Debtors are

5    saying this is argument that they're going to make.

6            THE COURT:  Right.

7            MR. GOLD:  And if they say before the Court now

8    that they would not make this argument, that might be a lot

9    cleaner.  But as I understand it, their position is going to

10   be that once sentencing occurs, they are no longer able to

11   operate as the companies that are currently constituted.

12   That because they will be sentenced, they will be unable to

13   sell product, to receive Medicare, or contributions and

14   other things.  And that therefore, they will be threatened

15   with an immediate shutdown, a corporate catastrophe, unless

16   they are able to go ahead with the restructurings that are

17   contemplated under the plan, and so then that's why those

18   two will be tied together.

19           Now, I should say that, Your Honor, we would love

20   nothing more than to engage with the Debtors and to say is

21   there a way to allow this to go forward, to allow some

22   corporate restructuring to take place, to allow some

23   payments to go to the victims of Purdue and the Sacklers

24   that are supposed to be receiving payments under the plan.

25           We're not trying to -- that's not our goal, to

Page 100

1    prevent those types of assistance from happening.  And if

2    there is a way for the parties to on one hand permit some of

3    these things to go forward, while on the other hand

4    preserving the right of appeal, we are very -- we have

5    always been open to having that discussion of trying to make

6    propositions along those lines to the parties.  Or perhaps

7    something along the lines of the emergency relief fund that

8    was proposed during the case, but that did not occur.

9    Something like that that could perhaps take place to allow

10   parties to get relief.

11            What we perceive is that the parties who have

12   refused to engage with us on this point are doing so because

13   they want to be able to hold up the possibility of relief as

14   their ticket to getting an equitable mootness that would

15   preclude further appeals.

16            So if there is a way of managing to separate these

17   things through stipulation, or an order, or something that

18   allows some of these things to occur -- and I think Your

19   Honor is right that perhaps they are not at all necessarily

20   as abstract principles linked, but we believe that -- our

21   understanding is that the way this plan has been drafted and

22   that this plan has been put together -- and this is a plan

23   that has been drafted and put together with a clear strategy

24   of preserving it through equitable mootness -- that the

25   effort has been made to tie these things together so that

1    they could not be disentangled, and so that starting down

2    this road would necessarily create the predicates for

3    equitable mootness.  And that starts with the sentencing and

4    then pulls in the restructuring and then the other matters

5    that occur there.

6             I will just note then with respect to the timing,

7    the plea agreement took place, I'm going to say, in October

8    or so of 2020, and was held in abeyance for a period of time

9    to allow further proceedings before this Court, confirmation

10   and other such things.  The Debtors then, for reasons that

11   are at least opaque to us, put in a further delay for them

12   to do certain preparations prior to the sentencing

13   occurring.

14            So it's pretty clear to us that the sentencing,

15   which we are not asking to be undone but can be held in

16   abeyance while the issues under the plan receive proper

17   appellate review, and so holding those matters off, the

18   Debtor has managed to stay in this presentencing period for

19   over a year now and contemplated further staying.

20            So we believe that the most effective and simplest

21   way to preserve the status quo is to have, as Your Honor

22   said, a stay that includes the effective date plus the

23   sentencing to avoid the shipwreck scenario.  Or in the

24   alternative, we're perfectly -- we are desirous of trying to

25   come up with a better way to allow some benefits to go

Page 102

1    through, if it will not -- if the parties can agree that

2    doing that will not equitably moot an appeal.

3         But so far, we have not received serious

4    engagements on that.  And apparently, the parties prefer to

5    try to use the very real need of these victims to receive

6    money as a kind of hostage situation where they can't get

7    their money unless our appeals are irrevocably denied

8    through (indiscernible) risk.

9         THE COURT:  Okay.

10        MR. GOLD:  I will not -- I will move on, then,

11   Your Honor.  I will not touch on the merits particularly,

12   because as I think Your Honor said, we agree that the

13   standard is sufficiently flexible, that we've made enough of

14   a showing with the merits of the appeals that we wish to put

15   forward, to satisfy the test in the Second Circuit.  And we

16   concede that we have to meet several factors of the prongs,

17   and it's not simply enough to have succeeded on one of them.

18   But we believe that we've made a sufficient showing on those

19   to move on to the other prongs as well.

20        I would just note that the irreparable harm that

21   we will suffer here is the deprivation of the rights of the

22   moving states to bring their independent actions under state

23   law against the Sacklers.  And that the potential loss of

24   those claims is certainly real enough to satisfy any

25   requirements that it not simply be mere equitable mootness,

Page 103

1    but equitable mootness plus a consequence, that that's the

2    consequence here.

3         And then there are other cases also raised in the

4    briefs that we believe are also compelling, that says that

5    any time a state is prevented from enforcing its laws, it

6    has also suffered an irreparable harm.  Those two together,

7    we believe, certainly satisfy the requirement that there be

8    a form of irreparable harm shown here.

9         I will then turn, if Your Honor doesn't have

10   questions, to the question of the balancing of the harms,

11   which is the next factor here.

12        It feels to us that an awful lot of the arguments

13   that the stay opponents have put forward basically can be

14   described from the movie, "Blazing Saddles", where the

15   sheriff who finds himself in a difficult spot -- played by

16   Cleavon Little -- points a gun at his own head and manages

17   to convince the parties that the threat to himself that he

18   is posing are sufficient to allow him to be extricated from

19   that position.  And the reason I mention that here is

20   because the harms that the stay opponents are positing here

21   are ones that they are themselves creating to a large

22   extent.

23        So first, as I've touched on already, is the

24   question of the sentencing.  I believe their argument is

25   going to be that if sentencing occurs, but they can't

Page 104

1   proceed, they will suffer harm.  Well, the simple answer is

2   for them to seek to defer sentencing until the appeals have

3   run their course.

4           Second, we have these arguments that the Sacklers

5   have the right to terminate the agreement if a stay is

6   entered.  And I find this an outrageous suggestion, Your

7   Honor.  I will note that during the hearing that took place

8   on October 14th on certification of a direct appeal, there

9   was another issue regarding a Sackler termination right.

10          Mr. Huebner stated emphatically to this Court that

11  of course he had a waiver of that Sackler termination right,

12  and that he would not be coming into the court without

13  having a waiver of that termination right in his pocket.

14  And the reason for that was self-evident.  How could one

15  think that Purdue would put in jeopardy the Sackler

16  settlement agreement, the centerpiece of the plan?  But that

17  is what Purdue is arguing right here.  That they granted the

18  Sackler a walk right.

19          I will note that this walk right was slipped into

20  the agreement at literally the last moment, while the

21  confirmation trial was proceeding, after the evidentiary

22  portion of the confirmation trial had closed, after all the

23  testimony about how wonderful a settlement this was had

24  already been placed on the record.

25          And I will also note that Purdue did not consider

Page 105

1   this walk right to be significant enough to advise the Court

2   and other parties, oh, by the way, we've posted an amended

3   Sackler settlement agreement, and it happens to contain a

4   provision that will allow the Sacklers to terminate this if

5   there's a stay pending appeal, which a possibility of

6   request for a stay was clearly contemplated by everyone.

7           So, now, how could this be?  How is it possible

8   that all the tremendous lawyers representing the stay

9   opponents voluntarily put in jeopardy the centerpiece of the

10  plan?  Not because they were confident that there would be

11  no appeal, nor that there would not be a motion for a stay

12  pending appeal.  It has to be that they could not seriously

13  expect that the Sacklers would spurn all the benefits that

14  they get under this plan and actually exercise this right,

15  and rather, because they intended to use this provision as a

16  means to bludgeon the courts into denying a stay.  And we

17  submit that that should not be permitted here.

18          Second argument that they put forward relates to

19  the attorneys' fees that they themselves are incurring and

20  will incur during the period of the stay.  We believe this

21  is also an outrageous point.  If they seriously believed

22  that the size of the fees that they generate were causing

23  harms to victims of Purdue and the Sacklers, they ought to

24  be finding ways to limit their fees.

25          To start with, it was not necessary for seven

1   oppositions to the stay motions filed by seven different

2   parties to be filed.  They could've coordinated a single

3   filing.  I know this could be done because the states

4   routinely coordinate to present fewer filings to Your Honor.

5        More to the point, steps could've been taken

6   during the case to curtail the amount of professional fees

7   during the case, or to curtail the amount of fees that will

8   be charged post-confirmation.  But no.  The only way in

9   which the stay opponents suggest that fees ought to be

10  controlled is by denying this stay to the Appellants.  And

11  we submit that that is too transparent to take seriously.

12       Then we reach what I believe is the far more

13  serious concern, which is the delay in relief going to the

14  victims of Purdue and the Sacklers.  I just note that this

15  is not a new problem.  This is a problem that's been

16  weighing on everyone through the over two years that this

17  case has been pending.  This did not suddenly become a

18  problem.  The victims of Purdue and the Sacklers needed help

19  two years ago when the cases were filed.  But that undoubted

20  need was subordinated to the legal process of this case.

21       The plan opponents could have during the case

22  established the emergency relief fund to provide faster

23  relief to the victims.  But they didn't.  Now, we are in a

24  post-confirmation pre-effective date period.  There was the

25  famous 82-day period before the plan could go effective,

Page 107

1    which was put in there, as we understand it, for the

2    convenience of the Debtors to allow them a deliberate period

3    of time to undertake certain corporate transactions.

4          If the harm to the parties of not getting their

5    money sooner was a serious possibility, that period of time

6    could've been shortened as well, but it wasn't.  The only

7    time when this delay apparently becomes intolerable is when

8    it's used as a means to curtail the stay that we're

9    requesting and the preservation of our appellate rights.

10         The appealing states -- and especially in this

11   context, where we are asking for a stay -- goes through the

12   time of the anticipated ruling of the District Court, plus a

13   meaningful period of time to take the issue to a higher

14   court.  The incremental harm to those parties that will

15   occur during this relatively imitated period is far less of

16   a kind of all the terrible delays that they've had to suffer

17   through the case and does not provide an independent basis

18   for denying a limited stay through this time period.

19         THE COURT:  Well, I'm having a hard time following

20   that point, Mr. Gold.  I mean, it's still harm, and I think

21   that the real issue is how great a harm is it in comparison

22   --

23         MR. GOLD:  I agree, Your Honor.

24         THE COURT:  -- to the countervailing harm of

25   giving the Appellants the opportunity to try to vindicate

Page 108

1     their rights on appeal.

2           MR. GOLD:  I completely agree, Your Honor.  And

3     it's a complicated issue because this is apples and oranges,

4     if I may say.  The harms that we have here are different in

5     type, difficult to quantify, and so the Court has to engage

6     in the kind of balancing.  I'm just suggesting that the harm

7     here will not -- we're not disputing that it really occurs,

8     but this harm is one that the parties have lived with

9     throughout the case because there were important legal

10    principles or other things that were taking place.  And

11    we're suggesting that it does not outweigh here the

12    preservation of our appellate rights.

13          THE COURT:  Well, again, that may be the case

14    through a relatively short period after what would normally

15    be the effective date, because distributions in some measure

16    would be made into the trust, but not out of the trust, for

17    a period after the effective date.  But the longer you go,

18    the more the delay really counts, because there comes a

19    point when (indiscernible) claims start being liquidated and

20    the NOAT procedures are established, and at that point, the

21    money really does start going out.

22          MR. GOLD:  Well, I --

23          THE COURT:  Have your clients and the Debtors

24    talked about when that point is likely to be?

25          MR. GOLD:  Well, as I said, Your Honor, what we

Page 109

1    have attempted to do with the Debtors is to find a way to --

2    and again, using the model that was engaged with the trust

3    advance motion to have the parties agree to allow various

4    steps to take place, including the ones that Your Honor has

5    listed -- and we have had, I have to say, little engagement

6    or appetite for engagement from the Debtors or the other

7    parties in terms of being able to parse.

8            I do agree that part of the benefit of having the

9    stay be limited to the period of time that we've discussed

10   in terms of getting us to the next level is that we can

11   analyze more concretely what steps are going to occur,

12   rather than looking at and allowing the next courts to be

13   able to focus on what issues would be arising then, and what

14   could be concretely happening then, and weighing that

15   against the harms that might occur.

16           It is certainly for the purposes of the District

17   Court's ruling, that by all evidence, Judge McMahon is

18   keenly aware of the importance of having a decision done

19   quickly.  And frankly, again, the other benefit is that

20   because she was aware of this, she was able to insist on a

21   briefing schedule to enable that all to work.

22           And if we are going to the next court, should that

23   be necessary, then, again, the Second Circuit could be in a

24   position to condition a stay upon an expedited briefing

25   schedule before the Second Circuit, which no lower court

Page 110

```
1    could meaningfully be in a position to impose on the Second

2    Circuit, which they could do themselves.

3              So we posit that the harm for this period of time

4    is not sufficient to outweigh the importance of the

5    appellate rights that are being preserved, and that the

6    issue may have to be revisited by another court with its own

7    timetable in place and depending on where the matters stand

8    at that point.

9              And as I said, we are more than willing to try to

10   work with these parties to find a way to allow transactions

11   to occur, to allow even payments to go to needy parties, if

12   there can be a way to structure that to not affect the

13   appellate rights.

14             So now I turn Your Honor to the public interest

15   component of the process.  We submit that it is manifestly

16   in the public interest that this plan be fully tested on

17   appeal, not -- the Debtors seem to sometimes have the

18   position that the only appeal that is meaningful here is

19   appeal to the District Court.  This case could have been in

20   front of the Second Circuit already, had the Debtors agreed

21   to certification of a direct appeal.  But they chose not to.

22             THE COURT:  Well, the Circuit would have had to

23   have taken it too.

24             MR. GOLD:  That's true, Your Honor.  I'm just

25   saying that the Debtor -- that we didn't reach that point.
```

Page 111

1    And part of the reason why we didn't reach that point was

2    that the Debtors at that hearing insisted that it was

3    important that we go to the full process of first review

4    from the Bankruptcy Court, and then review from the Court of

5    Appeals.

6              And so we want to -- now that we are on that path,

7    we want to make sure that all levels of appeal are preserved

8    and not booted out through equitable mootness.  And we

9    submit that that is manifestly in the public interest, and

10   that it is against the public interest that parties be

11   permitted to design plans to create equitable mootness

12   factors in them as a means of avoiding review.  I mean, Your

13   Honor, I can state that I received emails today of CLA

14   programs that are already being designed and marketed to

15   teach bankruptcy lawyers how to design plans that provide

16   non-consensual releases and that can be protected by

17   equitable mootness.  The community and the country as a

18   whole is watching this, and it is critical --

19             THE COURT:  Equitable mootness --

20             MR. GOLD:  -- that this is --

21             THE COURT:  -- has been an issue in the -- at the

22   circuit level for decades.

23             MAN:  I understand, Your Honor.

24             THE COURT:  And somewhat inexplicably to me the

25   Supreme Court turned down cert this last term on two cases

Page 112

1     that could've resolved that issue.  That has nothing to do

2     with this plan at all.  And it would seem to me that as we

3     just discussed, the public interest in avoiding harm,

4     tangible harm, to the victims increases with time.  And

5     you're just ignoring that when you talk about the public

6     interest.

7              And again, it's well-recognized that one issue,

8     one element of the public interest, is the finality of

9     reorganizations.  So I think it's much more complicated than

10    you're saying here, but I also think that what you're

11    arguing for now is well beyond what you had been arguing

12    for, which is some form of a stay through a ruling by the

13    District Court.  Because now you're talking about staying

14    matters through a determination by the Supreme Court, which

15    could be in 2024.  And --

16             MR. GOLD:  Allow me to clarify, Your Honor,

17    because I understand why you might have thought that, but

18    that's not what I meant to say.  The -- I think we have been

19    candid that we will -- that we intend to seek stays that go

20    on to the higher levels.  What I am now suggesting to Your

21    Honor is that the stay that we would be obtaining from Your

22    Honor would preserve our ability to seek further stays from

23    higher courts --

24             THE COURT:  Okay.  Fine.

25             MR. GOLD:  -- and that --

1           THE COURT:  Then I -- that's fine.  So we're

2    really -- I think -- look, here, the public interest point

3    very much dovetails with the balance of harms, as far as I

4    can see.  The parties here have agreed on the form of the

5    distribution of the money under this plan and have touted it

6    as something that is a single achievement.  When I say the

7    parties here, I mean both the appellees and the appellants.

8           So what we're talking about here is a dispute

9    between the appellants and the appellees on whether more

10   money can be obtained through this process because that's

11   what we're talking about.  We're talking about more money,

12   and whether that warrants additional delay.  And to me that

13   just goes back to the balancing of the harms.

14           MR. GOLD:  Well, Your Honor, the -- I would just

15   clarify a few points of what you have stated.  I do agree

16   that the appealing states participated in the design of many

17   features of the plan, and that we do believe that a lot of

18   those features of the plan are salutary and are ones that we

19   agreed to together.  But that was always -- those were

20   always being negotiated based on the predicate that other

21   issues, principally the releases, could also be

22   satisfactorily resolved, and unfortunately, they were not.

23           The -- I will also note that the issues that arise

24   vis-a-vis the Sacklers, are not solely issues relating to

25   the amount of money that can be paid.  Although that is

Page 114

1    certainly an important component of it, but there are other

2    issues regarding, for instance, the Sackler agreement to

3    have their name taken off of various institutions, about the

4    scope of the -- of when documents can be available in the

5    document depository -- or repository and other things that

6    are not, that take this case beyond a mere matter of money.

7            And I again state that the appealing states are

8    highly anxious to try to find ways to reduce the burdens on

9    the ones that Your Honor has identified rather than to hold

10   them hostage as a means of avoiding appellate

11   (indiscernible) important question.  Because we -- because

12   all of these are -- all the things that Your Honor stated

13   are matters of public concern.  But where you have a --

14   where you have what as Your Honor has identified as non-

15   frivolous, serious questions regarding the permissible scope

16   of a -- of releases granted pursuant to a confirmation

17   order, having those issues clarified on appeal we submit is

18   a compelling public interest, notwithstanding the other

19   matters that Your Honor has identified.

20           THE COURT:  Well, those other matters are, I

21   think, pretty eloquently laid out in the declarations of Ms.

22   Juaire.  I'm hoping I'm pronouncing that right, J-U-A-I-R-E,

23   and Ms. Trainor, T-R-A-I-N-O-R.

24           MR. GOLD:  Your Honor, I will --

25           THE COURT:  I guess I've heard you and I

Page 115

1   appreciate what you've said, Mr. Gold, about the State's

2   willingness to work with the appellees on intermediate steps

3   that minimize that countervailing harm that they detail.

4   I guess the point that I need to press is, are the

5   three states prepared to accept some risk of equitable

6   mootness as part of those steps.  The U.S. Trustee

7   apparently takes the position that it's not, which seems

8   rather bizarre to me and contrary to the case law.  But I

9   don't know whether what you're offering here is just couched

10   by saying of course we can't take a risk of equitable

11   mootness, or is it willing to take some risk?

12   MR. GOLD:  Well, Your Honor, our -- we -- first,

13   we are agreeing to accept some -- our issue is not -- our

14   view is not identical to the U.S. Trustee, which as you've

15   obviously seen from the briefing that has been submitted.

16   We have not taken a separate appeal from the advance order.

17   We're not pursuing that.  We are accepting that.

18   While there is in theory some risk of equitable

19   mootness from that, we don't consider it to be a significant

20   enough one that we are pursuing that.  And so we are

21   exercising some judgment in terms of what risks of equitable

22   mootness we are willing to take and which not.

23   We also recognize that the framework that was

24   adopted with respect to the trust advance order had a -- and

25   in fact, also the structure that Judge McMahon adopted with

Page 116

1   respect to her ruling involved having the various parties to

2   the appeal stipulate that they were not going to use these

3   matters as the basis for an argument for equitable mootness.

4   Now, we recognize that that is not bulletproof, that it's --

5            THE COURT:  No, I actually think it is.

6            MR. GOLD:  And the higher court could --

7            THE COURT:  I --

8            MR. GOLD:  The higher court could make its own

9   determination --

10           THE COURT:  Yeah, I --

11           MR. GOLD:  -- but again, we --

12           THE COURT:  -- think it is pretty bulletproof.  I

13  mean, again, my quote from Judge Kaplan was focusing on

14  constitutional mootness, which is really a different issue

15  --

16           MR. GOLD:  Yes.

17           THE COURT:  -- as opposed to equitable mootness.

18  It would seem to me very hard for anyone to rule that it was

19  equitable to hold something as causing mootness when the

20  very party that would benefit from that had stipulated that

21  it wouldn't.  That would seem --

22           MR. GOLD:  Right.

23           THE COURT:  -- at the height of not being

24  equitable.

25           MR. GOLD:  Your Honor, I have said very much the

Page 117

1    same in my analysis of that question, although it's more

2    meaningful coming from Your Honor than it is from a mere

3    lawyer.  The point I'm making is that if we -- so, if the

4    parties -- what we have been proposing was that the parties

5    stipulate that they would not seek to use the steps that we

6    are suggesting that we would be willing to negotiate with

7    them as the basis for an equitable mootness argument.

8            And while that is not nearly as bullet proof in

9    the context of payments going to parties as it is in the

10   context of establishing trusts or other such matters, we are

11   certainly willing to seriously consider taking the risk that

12   some other party might raise those things, notwithstanding

13   the party's stipulation.  But we think that having the

14   parties stipulate to that would go a long way to allow that

15   to occur.

16           That's far from the situation where if we say

17   we're willing to allow certain things to go forward knowing

18   that the other parties, like say with the sentencing where

19   the Debtors have said let there be no mistake.  When

20   sentencing occurs, we are going to insist that that has

21   equitable mootness concerns.  That's a very different

22   analysis for us than something where the Debtors have

23   stipulated that they are not going to raise equitable

24   mootness.

25           So if the -- all I'm suggesting is that if these

Page 118

1    parties -- if their principal concern is in getting aid to

2    the victims, then they should be willing to work with us to

3    waive equitable mootness arguments and allow the payments to

4    go forward.  If on the other hand --

5              THE COURT:  No, that's fine.  I understand your

6    point.  Okay?

7              MR. GOLD:  Okay, Your Honor.  The -- Mr. Goldman

8    is going to be addressing the issues regarding the

9    declarations that have been submitted, so I will not further

10   extend this hearing by stating them myself.  And the --

11   unless Your Honor has any questions, I don't think --

12             THE COURT:  Well --

13             MR. GOLD:  -- there's anything --

14             THE COURT:  -- are one of you going to address the

15   bond issue?

16             MR. GOLD:  I can do that, Your Honor.  The -- we

17   submit that this case is governed by the plain language of

18   the rule that says a bond or other security is not required

19   when an appeal is taken by the United States, its officer,

20   its agency, or by direction of any department of the federal

21   government.

22             And we have here the -- that is our circumstance.

23   We are dealing with appeals that have been simultaneously or

24   substantially simultaneously filed by the U.S. Trustee,

25   which fits the category of the United States, its officer

1    agency, and by the states.  We are raising substantially

2    similar issues, or I would say that the U.S. Trustee has

3    issued a broad panoply of issues that include the issues

4    that we are raising on our appeal, and that based on that,

5    no bond can be required on this consolidated appeal.

6          Certainly if the -- if no bond is applied or a

7    stay is granted for the U.S. Trustee, there should be no

8    bond for -- because the same stay will be in effect, and

9    it's the same stay that will be protecting the U.S. as well

10   as the states.

11         We also -- I don't have much to add to our

12   argument that there are other cases that recognize an

13   analogy between sovereign states and the U.S., although the

14   rule does not specifically mention them, and that therefore

15   finds it inappropriate to impose bonds on the states by

16   analogy.  But that's -- though we finally -- we would simply

17   submit that the cases that the stay opponents founded were

18   -- had nothing to do with our circumstances, had to do with

19   bonds being required of non-government actors, and provide

20   no illumination on what the Court should be doing.

21         THE COURT:  So what do you make of the committee

22   notes to Rule 8007(c) and (d), the 2014 committee notes,

23   which state that (c) and (d) retain the provisions of the

24   former rule to condition the granting of relief on the

25   posting of a bond by the Appellant except when that party is

Page 120

1    a federal government entity?

2            MR. GOLD:  Well, Your Honor, I will make two

3    points here.  I think that that -- first, I would say that

4    that comment is not directed to the circumstance where there

5    are simultaneous appeals by multiple parties, and that the

6    -- I would secondly point out that there is substantial case

7    law saying that what the Court should be looking at is the

8    language of the rule itself rather than the committee notes

9    that provide distinctions that were not included in the

10   language of the rule itself, and that because the U.S.

11   Trustee is entitled to an unbonded appeal here, it --

12   there's -- there should be no bond.  There'll be no point in

13   having an additional bond when it's the same appeal.

14           THE COURT:  So the general rationale for exempting

15   the United States from the bonding requirement is that most

16   judgments, and this is consistent with 28 U.S.C. 24

17   something -- the U.S. Trustee cites it -- is that the United

18   States is good for it because it's a judgment against the

19   United States, and the United States is always good for it.

20           Your interpretation of this rule would mean that

21   if there was a judgment against the United States and

22   against third parties, the third parties would have the

23   benefit of the United States being good for its portion of

24   it, and that they would have -- they could just have a free

25   ride on that, and the Plaintiff should take the risk?

Page 121

1              MR. GOLD:  Well, Your Honor, I'm not sure what the

2    judgment would --

3              THE COURT:  No, I'm just talking about --

4              MR. GOLD:  -- would be --

5              THE COURT:  -- your interpretation of the rule,

6    which would include, I think, that scenario, which doesn't

7    seem to me to be a -- an interpretation that Congress would

8    want.

9              MR. GOLD:  Well, Your Honor, when -- since we are

10   dealing here with states, and I don't believe that there's

11   any serious issue regarding collectability --

12             THE COURT:  Actually, Judge Posner thought there

13   was in Lightfoot v. Walker, 797 F.2d 505 and 506 through 07

14   (7th Cir. 1986).  So, anyway.  But I guess there is the

15   issue as to what we've just been talking about is the

16   balance of the harms, and that balance may become

17   significantly greater as time goes on.  Before then, the

18   Debtors have attempted to quantify that in the DelConte

19   declaration.

20             But I'm not sure -- well, it's really a question

21   for the Debtors as to the delay by three months, what does

22   that mean?  But I think what it means is it's more on the

23   back end than the front end where there's significant loss.

24   But I don't think there's any doubt that the cost for a

25   lengthy delay of, you know, several months to a year or two

Page 122

1    really is dramatic here in terms of dollars and cents.  So

2    it would seem to me that, as time goes by, the need for a

3    bond grows dramatically to offset the vindication or not of

4    the Appellant's right on appeal.

5              MR. GOLD:  Well, Your Honor, I guess that gets

6    back to the point that we discussed before why it may make

7    more sense to have Your Honor stay -- take us through the

8    relative short term when the costs are relatively contained

9    and lower and allow a later court that -- a higher court

10   that can have a better sense of how long it will be taking

11   on the appeal resolve that issue.

12             THE COURT:  Okay.

13             MR. GOLD:  Thank you, Your Honor.  I have nothing

14   further to add at this point.  I may have rebuttal points

15   after the Debtors or another party's presentation.

16             THE COURT:  Okay.

17             MR. GOLDMAN:  Your Honor, Irve Goldman, Pullman

18   and Comley for the State of Connecticut.  May I be up next?

19             THE COURT:  Yes, that's fine.

20             MR. GOLDMAN:  Thank you, Your Honor.  I first

21   wanted to just for Connecticut adopt the arguments that we

22   made by Mr. Gold for Washington and affirm that, you know,

23   the principal form of relief that we are seeking at this

24   point is our fallback, or what was previously described as a

25   fallback position.

Page 123

1          We are looking for a stay until 14 days after

2   Judge McMahon issues her ruling, which I would note may very

3   well come after December 8th, which is what the Debtors

4   described as the earliest point when the effective date can

5   occur, which is seven days after the 75th day after the date

6   of the confirmation order.

7          And it seems unlikely that it will come after that

8   date because we have oral argument, as Your Honor knows, on

9   November 30th, and Judge McMahon has advised us that she

10  starts a two-defendant criminal trial on December 7th.  So

11  that would give her less than a week to get out what I would

12  anticipate is a very complex decision.  So we would project

13  that it would likely come after that trial has concluded.

14  But I just want to circle --

15          THE COURT:  What's on trial?  It's oral argument.

16  Oh, the criminal trial.

17          MR. GOLDMAN:  Yes, correct, Your Honor.

18          THE COURT:  Well --

19          MR. GOLDMAN:  That's what we were advised.

20          THE COURT:  Okay.

21          MR. GOLDMAN:  And if I could just circle back for

22  a moment to this apprehension that we have of equitable

23  mootness based on the Debtor's indication that they'll argue

24  the criminal sentencing will, you know, be the fulcrum for

25  that in a stipulation that was filed with the District Court

Page 124

1    on October 20th that dealt with their commitment not to

2    argue that anything pursuant to the advance order or in the

3    preparatory stages leading up to the effective date, they

4    would not argue with the basis for equitable mootness.

5           It carved out in paragraph 2 the following

6    provision.  The stipulation does not address the criminal

7    sentencing of Perdue or the effect or consequences of such

8    sentencing on these or other appeals.  So currently, they

9    have signaled the intention to argue that, and I think the

10   stay of the confirmation order would be the most effective

11   way to prevent that from happening.

12          The reason I say that is because the plea

13   agreement itself provides that the parties, meaning Perdue

14   and USDOJ will agree to request that the sentencing hearing

15   take place no earlier than 75 days following the date of

16   confirmation.  This contemplates a joint request.  And so

17   that if there is a stay of the confirmation order, there

18   would be no reason for any party of the Debtors or the

19   United States to request a scheduling of the sentencing

20   hearing for the very reason that the Debtors have argued

21   that if they are sentenced and thereby become a convicted

22   felon, that would put their continued operation at jeopardy.

23          So I think the most effective way to deal with

24   that would be to stay the order.  And I think Mr. Gold also

25   touched on this as part of the calculus of determining

Page 125

1   whether there was irreparable harm.  We contend the Court

2   should not only consider the risk of equitable mootness, but

3   the consequences that would ensue to the states if their

4   causes of action are eliminated, which is unquestionably

5   their property, not property of the estate.  And in an

6   equitable mootness scenario, that property will have been

7   taken away without appellate review of whether the taking

8   was proper.

9       I know Your Honor has concluded that the states

10  will likely do better or will do better financially under

11  the plan than they would if they were permitted to go

12  against the Sacklers and other third parties.  But that does

13  not account for the character of these release police power

14  claims as a deterrent to future wrongdoers and simply

15  assumes incorrectly that their value is purely financial.

16      Now, if I can turn to the balance of the harms,

17  and specifically the declarations that have been submitted

18  by the various parties.  As Your Honor is aware, we've made

19  some discreet, detailed objections to the admissibility of

20  some portion of the declarations, and which of course must

21  follow the Rules of Evidence.  Everyone's trying to

22  establish a record here, and so applying the Rules of

23  Evidence is important in this context.

24      And under the Rules, the testimony offered by a

25  declaration has to be based on personal knowledge, not

1    hearsay.  The sufficiency of personal knowledge has to be

2    established by what is in the declaration.  It can't contain

3    conclusory statements or arguments.  It has to set forth

4    specific facts.  And to the extent a lay opinion is offered,

5    it has to be based on the declarant's own person knowledge

6    and must not be based on specialized knowledge.  And all the

7    declarations, to one degree or another, fails to satisfy one

8    or more of those requirements.

9           Mr. DelConte's declaration, for example, talks

10   about operational risk to the Debtors.  He first says that

11   the State could result in delay in bringing about public

12   initiatives to market.  He says "could".  He doesn't say

13   what initiatives are being planned to go to market during

14   the period of any stay, no facts establishing what his

15   personal knowledge of what the initiatives are.  He's

16   obviously not a member of Perdue's public initiative group.

17          Granted, he is a financial advisor for the

18   company, but I think here he is being used as a type of all-

19   purpose as an expert for all things Perdue.  And I don't

20   think that he can be used to just say in a conclusory

21   fashion some unspecified initiatives will be delayed during

22   a period of the stay we're requesting.  In part four of the

23   declaration --

24          THE COURT:  Well, they would certainly be delayed

25   if the Debtors weren't able to engage in any business, right

Page 127

1    because of the criminal plea?

2            MR. GOLDMAN:  Well, if they pled -- correct.  If

3    they were a convicted felon, according to the Debtors, that

4    would restrict -- eventually, maybe not automatically as I'm

5    told, but eventually it would lead to the termination of

6    their licenses and the ability to do business unless the

7    properties could be transferred to NewCo at that point.

8            But as I had indicated, Your Honor, if Your Honor

9    stays the order for the period we're requesting, it is

10   highly unlikely that that criminal sentencing will take

11   place during the period of that stay.  And again, those

12   unspecified initiatives that he says aren't -- will be

13   delayed --

14           THE COURT:  That's not really an evidentiary

15   objection.  You're just objecting to the fact that it

16   doesn't say very much, and I get that.  I understand that,

17   but that's not an evidentiary objection.

18           MR. GOLDMAN:  Then I'll move on, Your Honor, to

19   what I think is an evidentiary objection.  It's part 4 of

20   the declaration, which is a recitation of what Mr. DelConte

21   believes could be the operational risks if the stay is

22   granted.  Based on how upset the employees, vendors, and

23   customers would be if there was a delay occasioned by the

24   stay, clearly that's based on what he was told the Debtors

25   told their customers, vendors, and employees.

Page 128

1            And certainly, Mr. DelConte is not competent to

2    testify as to how other parties, namely the customers,

3    vendors, and employees, would react to a stay of limited

4    duration, particularly when they have certainly hung in

5    there and not walked away during the two-plus years that

6    this case is undergoing Chapter 11.  There's certainly no

7    basis for believing that now suddenly that the -- whether a

8    confirmation order has been appealed, that they wouldn't

9    tolerate a few additional months of delay.

10            In fact, if anything, there was greater

11    uncertainty in terms of what would happen with the --

12            THE COURT:  Mr. Goldman, can I interrupt you?  Are

13    you testifying now --

14            MR. GOLDMAN:  Certainly.

15            THE COURT:  -- or are you making argument based on

16    your assessment of how people think?

17            MR. GOLDMAN:  Well, that is argument, Your Honor.

18            THE COURT:  And that's how I would treat this.

19            MR. GOLDMAN:  And --

20            THE COURT:  This is his prediction based on his

21    knowledge of the Debtor's business of what would happen.

22    Not what will happen, but his prediction.

23            MR. GOLDMAN:  Well, again, I think that that -- he

24    wasn't offered as an expert, and I think he is testifying

25    based on what he was told.  And --

Page 129

```
 1              THE COURT:  Well, that's what you're saying too.
 2       I'm just saying it's a prediction.
 3              MR. GOLDMAN:  Well, Your Honor, I'm not offering
 4       my argument as testimony yet, but he is.
 5              THE COURT:  Well, only for this --
 6              MR. GOLDMAN:  So --
 7              THE COURT:  -- I will treat only for that purpose
 8       is what he reasonably believes based on his knowledge of the
 9       company.
10              MR. GOLDMAN:  Let me move on to Mr. Gard.  And in
11       paragraph 3, again, this really goes over what Mr. DelConte
12       testified to, and that it's his belief that a delay, though
13       materially, would give us Perdue's residual value and
14       talking about the uncertainty of the bankruptcy process.
15       Again, he -- this is lay opinion.  It's not supported by
16       facts establishing it's within his personal knowledge.
17              And this is in the province of experts to say what
18       Perdue's residual value might be given the uncertainty and
19       delay of -- and stay of the limited duration that we're
20       requesting.  And in paragraphs 14 and 16, he offers the
21       prediction that as a result of the delayed distributions
22       during the stay, it's quite possible that additional
23       Americans will die, and then suggest that a stay will allow
24       Americans to needlessly die, who would not have died but for
25       a stay.
```

1          Now, this is obvious argument as well and not

2    fact.  I mean, evidence of widespread death as a result of

3    stay of limited duration has got to be based --

4          THE COURT:  Well, again --

5          MR. GOLDMAN:  -- on more than --

6          THE COURT:  -- it depends on what the length of

7    the stay is.  I just -- look, on your first point, the only

8    example that he gives for the effect of a stay is if the

9    plea goes forward without the plan being implemented.  And

10   to me that is a meaningful effect.  To the extent he's

11   talking about other effects on keeping senior employees, I

12   agree with you.

13         I don't think he's really -- unlike Mr. DelConte,

14   he's not really in a position, you know, other than anyone

15   else or different than anyone else to talk about that point.

16   But on the plea point, I understand his point.

17         And then, look, the testimony is based upon I

18   think an undisputed fact that roughly 200 opioid-related

19   overdose deaths occur, and that those deaths have been

20   increasing at remarkable percentage rates over the last

21   couple of years.  And I think he and -- he is perfectly

22   positioned to discuss that point given his job, which he's

23   required to assess how best to deal with that issue for his

24   state.

25         And I take, again, his prediction that at some

1      point -- and he doesn't really say when that point is, but

2      at some point, a stay can lead to additional deaths if it

3      results in a meaningful delay of funds.  I don't see how

4      anyone could dispute that.

5              MR. GOLDMAN:  Your Honor, I do -- the point I'm

6      trying to make here is that Mr. Gar and the other

7      declarations are trying to draw a causal connection here

8      then because distributions will be delayed, that will result

9      in grievous harm.  And there just -- that really is in the

10     province of experts.

11             What will happen, they haven't said the amount of

12     funds that are going to be delayed.  What would otherwise be

13     disbursed and used by the various constituents --

14             THE COURT:  The record is --

15             MR. GOLDMAN:  -- during period of --

16             THE COURT:  The record is crystal clear that every

17     dollar counts because there is no surplus.  If that weren't

18     the case, then your client's lawsuits are meaningless.  This

19     is a really strange exercise, Mr. Goldman, I have to say.

20             MR. GOLDMAN:  Well, I make --

21             THE COURT:  And I guess --

22             MR. GOLDMAN:  -- they're --

23             THE COURT:  -- what you're saying is your clients

24     really don't think this money counts?

25             MR. GOLDMAN:  No, that is not --

Page 132

1           THE COURT:  Is that what you're --

2           MR. GOLDMAN:  -- what I'm saying, Your Honor.

3           THE COURT:  -- ultimately saying here in terms of

4    saving lives and addressing the opioid crisis?

5           MR. GOLDMAN:  No, it is not, and I would

6    acknowledge that it certainly does count.  The point I'm

7    trying to make is that they are trying to translate that

8    into grievous harm based on not knowing what the amount is

9    going to be disbursed during this limited duration and for

10   what purposes.

11          THE COURT:  But he wasn't responding to just a

12   limited duration.  The motion sought a stay through the

13   entire appeal process through the Supreme Court.  So these

14   declarations address through the end of 2023 and through the

15   end of 2024.  I agree with you.  If you're looking for or if

16   I'm considering a shorter injunction, then this information,

17   although still meaningful because if anyone dies, that

18   pretty important.

19          MR. GOLDMAN:  Yes.

20          THE COURT:  Plus all of the other societal harms

21   that flow from not having the funding start.  But if the

22   funding isn't really going to start in any event until --

23   let's pick a date.  And I'm not talking about the effective

24   date now, I'm talking about when funding would actually

25   start.  Let's say that's January 1, then your point is a

Page 133

1    point on argument, not an evidentiary point, which is that

2    this declaration doesn't say that there's any harm

3    specifically before January 1 because it doesn't establish

4    that the funding would start then -- before then.

5              MR. GOLDMAN:  Well, that is what my argument is

6    directed to.

7              THE COURT:  All right, but --

8              MR. GOLDMAN:  -- Your Honor.  I understand --

9              THE COURT:  -- I don't think that's an evidentiary

10   point.  I think that's an argument.  That's a point you can

11   make in argument.

12             MR. GOLDMAN:  Very well, Your Honor.  I'll -- I

13   will move on.  And I would echo what Mr. Gold had said is

14   that even beyond that date, we would welcome any sort of

15   interim measures for disbursing funds for abatement and

16   other purposes, similar to the ERF.  An ERF2, if you will --

17             THE COURT:  Well, the ERF didn't happen --

18             MR. GOLDMAN:  -- and could even be --

19             THE COURT:  -- so but I take your statement now

20   seriously.

21             MR. GOLDMAN:  Thank you, Your Honor.

22             THE COURT:  Okay.

23             MR. GOLDMAN:  I was just going to make the point

24   it could be implemented pursuant to 363(b) and not pursuant

25   to the plan to remove any idea that it would be -- cause

Page 134

1    equitable moot.

2         THE COURT:  Okay.

3         MR. GOLDMAN:  Just moving onto the declarations

4    that the UCC submitted, I think we -- from the two members

5    who have experienced firsthand the devastating effects of

6    the opioid epidemic, I think that, you know, it has to be

7    acknowledged that of all the people who have a right to

8    express an opinion on what will occur due to the opioid

9    epidemic if a stay is issued, is these two people.

10        However, that does not make certain parts of their

11   declarations admissible, which is really what we have the

12   objection to.  I think, you know, they have to be given all

13   the solicitudes for the personal loss they've suffered and

14   admiration for what they have turned that into in terms of

15   positive giveback.  And I hope the objections or challenges

16   to certain portions of their declarations will be taken in

17   that vein.  They're simply technical in nature in terms of

18   establishing what record is made on these proceedings.

19        THE COURT:  Well, again, I mean, I think you're

20   objecting to one of the declarants saying that various forms

21   of treatment have stopped over the last year or the last

22   several months for want of funding.  And asking me to draw

23   an inference that, under the plan, similar occurrences

24   wouldn't -- would be prevented in the future, I think she --

25   again, I think that the witness can make a prediction of

Page 135

 1    that.  You know, take it for what it's worth.

 2          She's much closer in my mind to the facts that she

 3    outlines than just someone who isn't looking at it from the

 4    outside.  But ultimately, I think it's the same point, which

 5    is it depends on when the funds start flowing and what can

 6    only make an educated prediction, which is certainly what

 7    the members of the UCC, including these two people, did and

 8    are doing.  So that's how I treat those types of statements.

 9          MR. GOLDMAN:  I would just reiterate the point,

10    Your Honor.  There is going to be evidence that there is

11    incalculable loss, which is the way it's phrased in one of

12    the declarations.  And I really think it should be the

13    province of expert testimony.  It is based on some

14    specialized knowledge as to a prediction of what is going to

15    occur and (indiscernible).

16          THE COURT:  Well, but again, I -- look, I guess it

17    depends on what you mean by the term "incalculable".  You

18    could certainly calculate the monetary costs of someone

19    dying and their relatives having to take care of their

20    children.  But it is perfectly legitimate to say that

21    actually isn't calculable.  It may be calculable for

22    purposes of posting a bond, but I don't think these two

23    declarations are submitted for that purpose, for determining

24    what the amount of a bond would be.

25          I think they're submitted for the point, which I

Page 136

1    view as one that is adequately supported, that where you

2    have this number of deaths due to opioid overdoses occurring

3    on a daily basis, and you have insufficient funds as

4    acknowledged by all of the lawsuits, including by the State

5    of Washington and the State of Connecticut, that the more

6    money you have, the fewer people will die.  I mean, I don't

7    see how you can dispute that.

8            And maybe it's one person.  Maybe it's 100, but to

9    me that's incalculable, and it's -- it pretty -- I think it

10   does offset in terms of the balance of the harms, someone's

11   right to pursue their appellate rights to the Supreme Court

12   where the Supreme Court has denied certiorari on these

13   various issues multiple times in the last decade.  So again,

14   that applies primarily, if not entirely -- and I'll hear the

15   Debtors on this, of course, and the other parties, including

16   the UCC's counsel, to the request for an injunction through

17   the entire appellate process.

18           It may not apply in a meaningful way to an

19   injunction through a ruling by the District Court where it's

20   not clear to me that money would be flowing in any event

21   during that period as opposed to personal injury claims

22   being liquidated, as opposed to the 14 days when the

23   abatement procedures after the effective date are supposed

24   to be submitted, etc.

25           But I just -- I don't understand how in one breath

Page 137

1   the State Attorneys General of Connecticut, Washington, and

2   Maryland can say that their rights to decide for themselves

3   how to pursue monetary claims against the released parties

4   are of critical importance without focusing on the

5   consequences of the delay caused by the -- that right.

6           MR. GOLDMAN:  Well, Your Honor, it's one of the

7   reasons why we did restrict and scale back the request

8   that's before you now.

9           THE COURT:  Okay.  But I'm not going to --

10          MR. GOLDMAN:  Which is a --

11          THE COURT:  I'm not going to exclude anything in

12   these two declarations other than, again, where obviously

13   the declarant is making a prediction or stating her view as

14   to the cause of something.  It's not for the truth, but

15   rather for her evaluation of that cause or prediction, which

16   is what people who serve on unsecured Creditors' committee,

17   including this one, that net 200 times and over 700 separate

18   communications does.

19          MR. GOLDMAN:  So except, Your Honor, that is all I

20   have.

21          THE COURT:  Okay.  All right.

22          MR. EDMUNDS:  Your Honor, if I --

23          THE COURT:  Go --

24          MR. EDMUNDS:  This is the --

25          THE COURT:  Why don't you go ahead, Mr. Edmunds --

Page 138

1          MR. EDMUNDS:  Oh, I'm sorry.  Go ahead.

2          THE COURT:  -- and then I'll hear from Mr.

3    Underwood?

4          MR. EDMUNDS:  Okay.  I just -- I -- thank you,

5    Your Honor.  I will just try to hit on some points that go

6    to the second part of my argument that haven't been said so

7    far to try to make it quicker.  But I think that one issue

8    that's been identified is the critical importance of the

9    sentencing that it may have in creating a possibility of

10   equitable mootness.  And people have talked about already

11   and argued that there is a chance there, including from some

12   of the effects of the sentencing upon the Debtors, that may

13   produce the grounds for equitable mootness may create

14   irreparable harm.

15          But there's one other thing that people haven't

16   talked about yet, and that -- and I am not an expert, but I

17   have some experience with the difficulty of changing a

18   sentence once it's imposed.  There are constitutional,

19   statutory, and federal criminal procedures, doctrines and

20   issues that arise that may make it hard to undo a sentencing

21   once it's in place.  And I think that that may be one of the

22   sources for the Debtor's clearly apparent position that, you

23   know, that they will not agree that this -- to any

24   stipulation against the equitable mootness of the effect of

25   the sentencing of Perdue in the District of New Jersey.

Page 139

1           I think that that's a huge issue that happens

2    before the effective date that could be significant in its

3    effects.  And I don't pretend to know everything about it.

4    I don't know the criminal doctrines.

5           THE COURT:  Let's just move on.  Okay.  You raised

6    the point, but there's no reason talking about it further if

7    that's the extent of your knowledge.  So we should move on.

8           MR. EDMUNDS:  Well, I think -- I mean, I think,

9    you know, the basics of it, the due process clause, the

10   double jeopardy clause, Federal Rule 35, and certain

11   provisions of the U.S. Code do place limits on it.  I think

12   that that's -- I mean, in part, it's hard to anticipate

13   where that will go in advance, and everybody has that same

14   difficulty.  So I think that's an issue there, and I think

15   others have talked about the immediate effect on Perdue and

16   its business.

17          The -- our -- moving on, our motion raised other

18   issues of irreparable harm that are not related to -- and we

19   did not rely on the possibility of equitable mootness.  We

20   talked about in our original motion in September, the cost

21   to the estate of going forward with a plan that may be

22   altered or reversed on appeal.  And part of that was related

23   to the trust advances issues, but it's also related to the

24   fact that if you look at the fee statements that are coming

25   in, a whole lot of money is being spent on attorneys' fees

Page 140

```
 1     from the estate to reimburse the pursuit of the plan, things

 2     that may --

 3               THE COURT:  Mr. Edmunds, I've never seen that as a

 4     basis for irreparable harm to an Appellant.  Ever.  And --

 5               MR. EDMUNDS:  I think that the --

 6               THE COURT:  -- frankly, it goes to the assessment

 7     of merits.  So I guess to me, that just doesn't make sense,

 8     that argument.

 9               MR. EDMUNDS:  I mean, I -- the point I would make,

10     Your Honor, is that if potentially millions in fees are

11     expended from the estate in pursuit of implementing the

12     plan, that's money that the estate doesn't get back.  It may

13     not -- in fact, I'm -- I agree it would not equitably moot

14     an appeal, but --

15               THE COURT:  It's not anything of an equitable

16     mootness.

17               MR. EDMUNDS:  But it is still irreparable harm.

18               THE COURT:  It's not a basis for irreparable harm.

19     It's not -- cite me one case on that point.

20               MR. EDMUNDS:  We really don't have a case, Your

21     Honor.  It's just --

22               THE COURT:  Then please move on.

23               MR. EDMUNDS:  -- logical that if the estate --

24               THE COURT:  That is not a basis for irreparable

25     harm.  It just isn't.
```

1          MR. EDMUNDS:  All right.  I will move on.  The

2     other irreparable harm that exists, though, is I think the

3     possibility of implementing the plan and changing

4     relationships, and then you're having to roll it back if

5     it's changed or if it's reversed.

6          THE COURT:  Is that another word for mootness.

7          MR. EDMUNDS:  No.

8          THE COURT:  No?

9          MR. EDMUNDS:  I don't think it is, Your Honor.  I

10    think that there are things that the Court has ruled, and

11    Debtors have stipulated that don't constitute irreparable

12    harm that are happening -- or that don't constitute a ground

13    for equitable mootness that are happening right now that do

14    constitute a potential irreparable harm.  How significant

15    they are --

16         THE COURT:  Like what?

17         MR. EDMUNDS:  -- is I think --

18         THE COURT:  What are you talking about?

19         MR. EDMUNDS:  They are, to the best of my

20    understanding, going about forming structures, registering.

21    I understand that there is regulatory activity that is

22    involved on the sort of licensing side.  They are -- and

23    they're continuing their operations, moving forward with

24    operations amid uncertainty.  And there's been a lot of, I

25    guess, question in the papers of whether there's evidence of

Page 142

1     the effects of that uncertainty on the business.

2              But I would point out that these are the very

3     things that they use to justify their first day motions.

4     And the -- in docket number 3, the declaration of John Lowne

5     changing things --

6              THE COURT:  So can I interrupt --

7              MR. EDMUNDS:  -- changing their cash management --

8              THE COURT:  -- you?  So is --

9              MR. EDMUNDS:  -- systems.

10             THE COURT:  Is the State of Maryland not amenable

11    unlike the State of Washington and the State of Connecticut

12    to permitting new code to be formed, for example?  The types

13    of stipulations that Mr. Gold and Mr. Goldman were referring

14    to.

15             MR. EDMUNDS:  I think I'd have to -- we are

16    amenable to some form of agreement, but I think I would have

17    to look at the precise contours of that and make an

18    evaluation as to how serious it was.  So not as I sit here

19    today, I don't think I can agree to that without some sort

20    of detail about what it is.

21             You know, it -- there are risks and there are

22    harms inherent in anything that happens, and I think it

23    requires sort of a precise evaluation as to whether we would

24    agree to that.  And I'm just not -- I don't even know

25    exactly what the requirements or what the permissions would

Page 143

1    be.

2              THE COURT:  Well, the general concept would be

3    that -- and I believe Mr. Gold laid this out -- that the

4    appellees would not argue equitable mootness based upon a

5    transfer of the Debtor's business as provided for under the

6    plan to NewCo and making the initial distribution under the

7    plan.  Either under the plan or in the form of a 363 motion.

8              MR. EDMUNDS:  Your Honor, I mean, I think that the

9    -- things that significant, there may be ways you could --

10   nuances that you can remove from it, but I think that things

11   that significant carry with them the possibility of

12   irreparable harm.  Both from the possibility of mootness and

13   from the sheer fact that you might be unwinding, which

14   independent of equitable mootness will cause some amount of

15   loss.  And it may not add up to the amount of loss that

16   would --

17             THE COURT:  Let me make sure I understand --

18             MR. EDMUNDS:  -- could be substantial

19   consummations.

20             THE COURT:  -- this.  You lost below, right?  You

21   lost.  You're now seeking a stay pending appeal, and yet

22   you're arguing that if you win, which is an "if", the cost

23   of unwinding itself is irreparable harm?  That's really what

24   you're saying?

25             MR. EDMUNDS:  I think that there are costs

1    associated with going forward now, both to the estate and to

2    everyone else, that warrant consideration as part of the

3    balance of hardships that --

4              THE COURT:  So you're saying irreparable harm

5    would --

6              MR. EDMUNDS:  -- you know, that the Court has to

7    undertake.

8              THE COURT:  You're saying irreparable harm is

9    literally proceeding with the order itself.

10             MR. EDMUNDS:  I think -- again, I would have to

11   look at the details of the --

12             THE COURT:  Mr. Edmunds --

13             MR. EDMUNDS:  -- specific exceptions.

14             THE COURT:  -- look, do you have anything more to

15   say on any --

16             MR. EDMUNDS:  Yeah, that's usually --

17             THE COURT:  Do you have anything more to say --

18             MR. EDMUNDS:  I do.

19             THE COURT:  -- on this point or any other point?

20             MR. EDMUNDS:  I do, Your Honor.  I mean --

21             THE COURT:  All right.

22             MR. EDMUNDS:  -- I will try to move on from it,

23   but let -- but I would say -- I would note that the very

24   hardships that I'm talking about are written throughout

25   their first-day motions and in the declarations that they

Page 145

1    submitted in support of that.  They talk about changing

2    structure and changing organization and changing management.

3              THE COURT:  But that's before they won, and your

4    state is appealing it.  It's a big difference, so move on.

5    Honestly.

6              MR. EDMUNDS:  I think the hardships --

7              THE COURT:  You know, this wasn't made in your

8    objection.

9              MR. EDMUNDS:  -- as a matter of fact, so --

10             THE COURT:  This wasn't made in your motion or

11   your reply, and if it was, it would've just been devastated.

12   So move on.  This is just silly.

13             MR. EDMUNDS:  It was -- just to be clear, Your

14   Honor, it was in our motion.  And we did not rely on

15   equitable mootness, but I will move on.

16             I would also just talk briefly about the issue of

17   the irreparable harm that the appellees raised, the

18   objectors raised.  I think the Court is correct that we all

19   see it as getting more money for the abatement, for the

20   opioid crisis, and to address the opioid crisis is

21   important.  But there are other trades that are made in

22   pursuit of this plan that I think make it hard for them to

23   establish that the harm that they suggest will occur will

24   actually occur from a short stay --

25             THE COURT:  Okay.  We covered --

1          MR. EDMUNDS:  -- to the appellate process.

2          THE COURT:  We covered this, Mr. Edmunds.  I -- we

3   -- we've covered this point.  And in fact, I generally

4   agreed with the other -- with your colleagues on this.  So I

5   don't think we need to go over this again.

6          MR. EDMUNDS:  Well, I'd just say that there is the

7   deterrence effect and there are the other, I think, benefits

8   from doing more, that the State of Maryland at least sees

9   from proceeding to do more to enforce its laws.  And I think

10  that those have sort of a canceling effect on, you know, any

11  hardship that -- concrete hardship that could be raised by

12  the other parties.

13         So with that, I will -- I think those are the

14  critical points, and I'll rely on others for their previous

15  arguments.

16         THE COURT:  Okay.  Thank you.

17         MR. BASS:  Judge Drain, this is Mr. Bass, Ronald

18  Bass.  May I come in?

19         THE COURT:  Well, I -- someone was actually in the

20  queue before you.  Let's do Mr. Underwood first.

21         MR. BASS:  Oh, okay.

22         THE COURT:  And then we'll -- I'll hear from you.

23         MR. BASS:  Okay.  Okay.

24         MR. UNDERWOOD:  Thank you, Your Honor.  Allen

25  Underwood, on behalf of Canadian municipalities -- certain

Page 147

1    Canadian municipalities and First Nation creditors.

2           Very briefly, I'd like to again adopt the

3    positions of Connecticut and Washington as stated here and

4    in their papers.  I think what's very important and what

5    we've emphasized throughout this case is that the Canadian

6    municipalities and First Nations are a little different than

7    the states with regard to certain legal issues.  And that

8    has an impact on, A, what Judge McMahon is deciding but it

9    also has an impact on the irreparable harm issue that we're

10   -- I think we're discussing.  There's no question that the

11   Canadian municipalities have read direct claims against non-

12   debtor, shareholder released parties.

13          THE COURT:  I think there's a substantial

14   question, and that's what I found in my ruling.

15          MR. UNDERWOOD:  I believe under Canadian law, they

16   have claims under the Competition Act, that -- it's a fairly

17   broad act that enables direct claims against -- and this is

18   I guess a fundamental problem, Judge, is that we've got a

19   corporate structure that has parallel ownership.

20          It's not -- it's not like a typical subsidiary

21   relationship.  One -- is controlling multiple --

22   corporations.  In effect, the shareholder -- whether through

23   non-debtor entities that are U.S. entities or direct action

24   on boards -- are controlling those entities.  And under

25   Canadian law, there's a basis for direct claim against those

Page 148

1    parties.

2            Obviously the problem or the question or the

3    interpretation of the plan and whether or not the release as

4    granted occupies the territory fully -- that's the

5    structural problem -- the appeal is we believe meritorious.

6    And ultimately -- irreparable harm which is that ultimately

7    these Canadian creditors stand to lose the claims they may

8    have against U.S. non-debtor entities or U.S. released

9    shareholders -- confirmed plan.

10            It's a structural problem.  It's a structural

11   problem that the debtors and the Sacklers created when they

12   created their corporate structure.  That's all it is.  I

13   wish I could change it.

14            THE COURT:  Well, all I will note is I don't think

15   you addressed this legal argument on the nature of the

16   Canadian creditors' claims anywhere in your motion.

17            MR. UNDERWOOD:  I actually believe that there is a

18   reference.

19            THE COURT:  Where is it?

20            MR. UNDERWOOD:  Within -- certainly within my

21   reply.  I actually quote a portion of the brief.  I think --

22   let me pull up the page that referenced this issue.  It's

23   cited in the reply, Your Honor.  And it's more than alluded

24   to in the actual motion.

25            And to remind you, Your Honor, the motion was

Page 149

1     actually filed in advance of the briefing before the

2     district court.  So I believe if we look at, yeah, Page 4,

3     Paragraph 8.

4              THE COURT:  Okay.  I see it.

5              MR. UNDERWOOD:  So there is a colorable basis for

6     a claim by my clients against non-debtor, third-party

7     released parties.  And irreparable harm, as we cited in the

8     reply and I think in the moving papers, is the loss of that

9     financial claim or right.

10             So that's a principal question that I think in the

11    first instance you're looking for which is what is the

12    irreparable injury in the absence of a stay.  And that is

13    obviously the concern.

14             I think in terms of the resolution of the matter,

15    I think Your Honor is very thoughtful on this question of a

16    longer stay versus a shorter stay, a stay through finality

17    versus a stay more or less governed by a Rule 8025.  And

18    certainly I think that the Canadian appellants take the

19    position that a stay 14 days -- through 14 days after the

20    rendering of the district court decision is more than

21    adequate at this time.

22             But I do think it is a thoughtful question by Your

23    Honor because honestly the circumstance where a trial court

24    would be looking at whether or not to stay its own decision

25    for longer than any determination that might be made by an

Page 150

1    appellate court would be a circumstance where the trial

2    court recognized that there's some aspect, be it

3    constitutional or structural, in the plan that would be

4    jeopardized were it not stayed, meaning that there's

5    something about it that deserves finality.  And I would

6    leave that question to Your Honor's best judgment.

7         But I would also repeat that in terms of the stay,

8    the lesser of the two alternatives that Your Honor described

9    is certainly -- is certainly acceptable to the First

10   Nations, without waiving whatever Your Honor might decide

11   about a longer or a larger stay.

12        I think there's a fundamental interesting question

13   with regard to the sentencing and the plea agreement, and it

14   is a problem.  And I think in terms of it, I've read the

15   plea agreement many times.  I see it as little more than a

16   financial settlement, and that's what we do in this court.

17   And ultimately I'm not aware of due process issues that

18   would bar a stay through the date of sentencing with regard

19   to the defendants.

20        I think it makes a huge amount of sense because

21   whether or not the sentencing gives rise to equitable

22   mootness is going to impact what may happen subsequent to

23   the appellate process because obviously you've got your

24   superpriority claim that may come into effect if for any

25   reason the terms of the plan are modified such that -- you

Page 151

```
 1    know, such that the plea is -- the plan isn't funded.  So

 2    that would be the concern.

 3           So although certainly the Canadian First Nations

 4    agree that the lesser of the two stays that Your Honor had

 5    explained would be sufficient here, I would request that the

 6    Court be mindful of the fact that the sentencing will have a

 7    material impact on this case and, depending upon the results

 8    of the appellate process, it may completely impact whether

 9    or not the assets of the debtor can be liquidated and how,

10    if it came to that -- I don't think anybody wants it to come

11    to that, but if it did, the fact that the sentencing had

12    gone forward might be a problem if it's not a basis for

13    equitable mootness.

14           So ultimately, Your Honor, I mean, I think that's,

15    you know, by in large the points that I wanted to make or

16    things that perhaps I wanted to highlight from our concern.

17    Ultimately I think the harm that we have here is an

18    interesting circumstance of -- so effectively the IACs are

19    non-debtor parties.

20           Those are the assets that in part, over time, will

21    fund the trust in the United States.  My clients are

22    presently stayed from pursuing those assets.  Whether or not

23    that remains to be the case will be the subject I suppose --

24    and the determination before the CCAA court in Canada which

25    is pending for December 1.  And that's another example.
```

Page 152

1           I'm not sure if it's irreparable harm.  But it is

2     an instance of another intervening deadline with regard to

3     an international matter where it might be worth the

4     consideration of the Court of the fact that a stay here

5     would probably relieve that Canadian court of a difficult

6     decision.  And maybe I'm wrong.  I don't know.  But that

7     would be my take on it.

8           So, but ultimately I think the debtor has

9     ultimately the benefit of these IAC assets.  These are

10    assets that ultimately my clients would be seeking to

11    recover from if they're permitted to do so by way of appeal

12    or before the CCAA court.

13          And I'm making this argument with reference to the

14    bond issue because, first of all, I'm not aware of the

15    debtor having an affirmative claim against the CMFN.

16    Frankly if they're sovereigns, there's a question of whether

17    or not there would be an applicable need for a pond under

18    that circumstance.

19          But ultimately what's interesting is that it's

20    arguable that the debtors in fact have a lien on Canadian

21    assets by virtue of the settlement such that I would say

22    whether or not Your Honor finds a need for posting of a bond

23    by any other appellate creditor here, ultimately because of

24    the fact that these Canadian assets are dedicated under the

25    existing plan and settlement and trust to the debtor, that I

Page 153

1    think there's a strong argument that the debtor is protected

2    and there should be no need for an appellate bond with

3    regard to the Canadian creditors here.  That's all I have to

4    say --

5              THE COURT:  I'm sorry.  What Canadian assets are

6    you referring to?

7              MR. UNDERWOOD:  Purdue Canada.  At a bare minimum,

8    Purdue Canada because it's dedicated to -- you know, to sale

9    and contribution to the debtor.  I can't -- I can't speak,

10   and don't want to speak directly to the extent to which

11   Purdue Canada has been securitized pursuant to those

12   settlement agreements.  But it may have been.

13             THE COURT:  But the bond would be to protect

14   against the damage, if any, caused by the delay or any other

15   factor that the stay would occasion.  So it would be

16   something beyond what the debtors already have.

17             MR. UNDERWOOD:  Right.  But that's presuming that

18   there is -- I think the argument would be that -- and I do

19   think there's some case law to this effect, that, in effect,

20   the debtors already have a form of a lien.  I agree --

21             THE COURT:  But it's not a lien on your clients'

22   assets.  It's their own assets.

23             MR. UNDERWOOD:  It's not --

24             THE COURT:  They already have it.  They already --

25   no, but they already have it.  The bond would be to bond

Page 154

1    against damage that your clients would cause.

2         MR. UNDERWOOD:  Right.  I would -- I would differ.

3    But thank you, Your Honor.  I appreciate your --

4         THE COURT:  Well, I mean, that was the result in

5    the Adelphia case.  Okay.  Just 361 B.R. 337, S.D.N.Y.

6    (2007).  Excuse me.  Okay.  Thank you, Mr. Underwood.

7         MR. UNDERWOOD:  Thank you, Your Honor.

8         THE COURT:  Okay.  Mr. Bass, are you still there?

9         MR. BASS:  Yes.  I'm here.  I'm here, Your Honor.

10        THE COURT:  Okay.  All right.

11        MR. BASS:  Well, I also filed a motion for a stay.

12   Go ahead.  What were you saying?  I apologize.

13        THE COURT:  No.  I can hear you fine.

14        MR. BASS:  Oh, okay.  I had filed a motion for a

15   stay, and I have gotten an order from Judge McMahon to have

16   my briefing on the 19th.  So I asked her an extension of

17   time.  So I'm asking you wait until she hear my motion -- I

18   mean my brief, then we can proceed.  So that's what I'm

19   waiting for, her order of an extension of time.

20        THE COURT:  Okay.  Well --

21        MR. BASS:  Besides -- one more thing.  And I'm

22   trying to get that merged.  The cases that I have in the

23   bankruptcy court with the Mallinckrodt to merge it with this

24   here so she can handle both of them -- both of them, both of

25   the cases.

Page 155

1          THE COURT:  All right.  Okay.  Anything else?

2          MR. BASS:  No.  I'm just waiting for -- you know,

3     grant me the -- that order to stay as well as adopt the

4     position --

5          THE COURT:  I'm sorry.  I heard you through, "As

6     well as you adopt," and then I couldn't hear the rest.

7          MR. BASS:  No.  I said adopt the position of

8     Lauren (ph), the attorney, the female attorney who came on,

9     I said I am adopting -- I am adopting her position.

10         THE COURT:  Okay.

11         MR. BASS:  -- against the shareholders and, you

12    know --

13         THE COURT:  Okay.  All right.  Well, on your first

14    point, the briefing schedule set by Judge McMahon on your

15    appeal of the confirmation order is not the subject of a --

16    it's not something that I can stay.  It's not my order, and

17    it's not really covered by the bankruptcy rules.  That's

18    something you'll have to take up with her --

19         MR. BASS:  Right.

20         THE COURT:  -- whether you get an extension or

21    not.  So that's not really an appropriate subject for a stay

22    that I would be considering.

23         MR. BASS:  Okay.

24         THE COURT:  And the same goes for your desire to

25    have the district court consider together your appeal of the

Page 156

1  confirmation order and the other litigation that was the

2  subject of your motion that I heard back in mid-October.

3            MR. BASS:  Right.

4            THE COURT:  And I denied that motion in an order

5  entered on October 15th that's at Docket Number 3958.

6            MR. BASS:  Right.

7            THE COURT:  But again, if any of that litigation

8  is to be consolidated with your appeal, that's really up to

9  Judge McMahon.  It's not -- it's not something that I could

10  rule on.

11            MR. BASS:  Oh, all right.

12            THE COURT:  Okay.  Okay.  I think the only movant

13  that I haven't heard from is Ms. Isaacs, who adopted the

14  motion filed by the State of Washington, and of course we've

15  heard the State of Washington and the State of Connecticut

16  at length.  So I don't know if you have anything further,

17  Ms. Isaacs, to say.  No?  All right.

18            It's quarter to 2:00.  We've obviously been going

19  for a long time.  I'm going to take a break for lunch, and

20  be back at 2:30, at which point I'll hear from the

21  objectants and, if warranted, brief rebuttal.  And then I'll

22  give you my ruling.

23            (Recess)

24            THE COURT:  Okay.  Good afternoon.  We're back on

25  the record In re Purdue Pharma, LP, et al, and the motions

1   by various parties, various Appellants, for a stay pending

2   appeal of my confirmation order in the so-called advance

3   order or preparations order.  And we're turning to the

4   objectors at this point.

5             MR. KAMINETZKY:  Good afternoon, Your Honor.

6   Benjamin Kaminetzky, of Davis Polk, for the Debtors.  I see

7   Ms. Isaacs is on the line.

8             THE COURT:  Okay.

9             MR. KAMINETZKY:  Do you want to --

10            THE COURT:  Well, I had asked whether Ms. --

11  before we broke, I had asked Ms. Isaacs whether she wanted

12  to add anything to her motion, which adopted the motion by

13  the State of Connecticut and the State of Washington and

14  didn't get a response.  So, Ms. Isaac, I don't know if you

15  have anything more to add to what you filed?  You're on

16  moot.

17            MS. ISAACS:  I'm sorry.  Thank you for taking the

18  time to hear me this afternoon.  I understand you called me

19  before lunch break.

20            THE COURT:  Yes.

21            MS. ISAACS:  There's been multiple emails going

22  back and forth.  I am having a great deal of difficulty with

23  the Clerk's office in getting the Zoom links and getting

24  onto Zoom.  As for anything to be added at this time, I

25  stand with the Trustees and all of the states that are in

Page 158

1    disagreement with what's going on with the appeal.  And

2    that's all I have.

3              THE COURT:  Okay.  Thank you.  All right.  So I'll

4    hear briefly from the objectants and, again, I read the

5    objections and all the other pleadings.  I would like to

6    focus again primarily, I think at this point, on the shorter

7    term stay, the alternative request by the movants for a stay

8    through the ruling by the District Court of some or all of

9    the confirmation order, or perhaps just the effective date.

10             I also note that I have a number of declarations,

11   which we've already discussed during the discussion of

12   Connecticut and Washington's motion.  I don't know if you

13   want to -- I mean, different people have put up these

14   different witnesses, but I don't know if you want to deal

15   with those first or you have a time when you want to

16   introduce those declarations.  I leave that up to the

17   objectors also.

18             MR. KAMINETZKY:  Thank you, Your Honor.  Again,

19   Mr. Kaminetzky, of Davis Polk, for the Debtors.  So I guess

20   I could move for the admission of Mr. DelConte's

21   declaration, just to get that over with at this point.  I

22   could address --

23             THE COURT:  Okay.

24             MR. KAMINETZKY:  It sounds like the Court has

25   already ruled on, I guess it was the motion to exclude that

Page 159

1    testimony.  I'm happy to respond to the points you've made -

2    -

3              THE COURT:  No, I --

4              MR. KAMINETZKY:  -- but it's sounds like we've

5    done that already.

6              THE COURT:  I did.  I ruled on that.  So is Mr.

7    DelConte available?

8              MR. KAMINETZKY:  Yes, Your Honor.  He's here.

9              THE COURT:  Okay.  Can you put him on the screen?

10             MR. KAMINETZKY:  Yes.  I'm told any second now.

11             THE COURT:  Okay.

12             MR. KAMINETZKY:  You know, he was in his -- I'm

13   sorry.

14             THE COURT:  Okay.  Can you hear me, Mr. DelConte?

15             MR. DELCONTE:  I can.  Can you hear me?

16             THE COURT:  Yes, I can.  Thank you.  And see you

17   as well.

18             MR. DELCONTE:  Can you hear me?

19             THE COURT:  Yes.

20             MR. DELCONTE:  Okay.

21             THE COURT:  And I can see you too.  So, Mr.

22   DelConte, you submitted a declaration intended to be your

23   direct testimony in connection with the objection to the

24   stay motions.  It's dated October 22, 2021.  Would you raise

25   your right hand, please?  Do you swear to tell the truth,

Page 160

1    the whole truth, and nothing but the truth, so help you God?

2             MR. DELCONTE:  I do.

3             THE COURT:  Okay.  And it's D-E-L-C-O-N-T-E, J-E-

4    S-S-E?

5             MR. DELCONTE:  That's correct.

6             THE COURT:  Okay.  So, Mr. DelConte, as I said,

7    you submitted a declaration in connection with these matters

8    on October 22, 2021.  Sitting here today, November 9th,

9    knowing that it would be your direct testimony, is there

10   anything in it that you wish to change?

11            MR. DELCONTE:  No, sir.

12            THE COURT:  Okay.  Does anyone want to cross-

13   examine Mr. DelConte on his declaration?  And again, I've

14   limited that declaration to the extent that I ruled so in

15   the colloquy with Mr. Goldman.  Okay.  Mr. DelConte, I had a

16   question for you.  Do you have your declaration there?

17            MR. DELCONTE:  I do.

18            THE COURT:  Okay.  In your declaration, you

19   discuss the timing of payments under the plan and describe

20   them in Paragraphs 7 through 9 and 12 through 21, and also

21   payments to fund the NewCo under the plan in Paragraph 22.

22   And then in Paragraph 26, 27 and 28, you do that present

23   value calculation based on your assessment of the delay in

24   distributions that would result from a stay of three months

25   through 6, 9, 12, 18 and 24 months.  Do you see that there?

Page 161

1              MR. DELCONTE:  Yes, I do.

2              THE COURT:  Okay.  My question is, assume for the

3      moment a stay through the date of a ruling by the District

4      Court of the effective date of the plan, and then tack on 14

5      days to that.  So assume that would be sometime, let's just

6      say, in the third or fourth week of December.  Obviously,

7      I'm making a prediction on how the District Court might

8      rule.  The court might rule later than that; might rule

9      earlier than that.  When you say three months, what are you

10     tracking off of as the effective date?

11             MR. DELCONTE:  I'm tracking off of the end of the

12     year, which a good proxy for when, you know, I think the

13     earliest that we could potentially emerge would be.  So a

14     three-month delay in this case would be delaying emergence

15     from December 31st to the end of March.

16             THE COURT:  Okay.  And --

17             MR. DELCONTE:  2022.

18             THE COURT:  I got it.  And the distributions that

19     would be -- that you track as coming in on the effective

20     date for that period, are any of those distributions to the

21     end-users of the money, or are those distributions to the

22     trust and to NewCo?

23             MR. DELCONTE:  Yeah, those distributions that

24     we're tracking, and these are the distributions to -- both

25     the Federal government and the creditors are in public

Page 162

1   trusts.  Those are just the timing of those payments --

2              THE COURT:  So there would be a distribution to

3   the Federal government --

4              MR. DELCONTE:  -- to those trusts, not -- we

5   haven't taken into account any -- yeah, I mean, there's the

6   $225 million payment to DOJ and there's a $25 million

7   payment to other Federal entities, in addition to the

8   trusts; $600-some-odd million would be distributed to the

9   creditor of the public trusts.  And we're tracking the

10  payments to those trusts.  We haven't done anything to take

11  into account payments from those trusts ultimately to the

12  end-users.

13             THE COURT:  Okay.  All right.  Then is there some

14  amount that would also go to fund NewCo, or is that just

15  there already, in essence?

16             MR. DELCONTE:  Yeah, I mean, that money is

17  currently sitting at OldCo or PPLP, and at emergence, $200

18  million of that would go to NewCo.  As far as the harms that

19  we've looked at here, we've only been looking at harm as it

20  relates to the distributions that would ultimately go to

21  either the Federal government or the various trusts.  We

22  haven't taken into account anything that the (sound drops)

23  distributed to NewCo.

24             THE COURT:  Okay.  All right.  Those are my only

25  questions.  Thank you.  I don't know if you have any

Page 163

1    redirect on that, Mr. Kaminetzky?  No?

2              MR. KAMINETZKY:  I do not, Your Honor.  Sorry.

3              THE COURT:  Okay.  Your testimony is complete, Mr.

4    DelConte.  You can go off screen now.

5              MR. DELCONTE:  Okay.  Thank you very much.

6              (Declaration of Jesse DelConte Admitted Into

7    Evidence)

8              MR. KAMINETZKY:  Okay, Your Honor.  Shall I

9    proceed?

10             THE COURT:  Yes.

11             MR. KAMINETZKY:  Okay.  Again, Benjamin

12   Kaminetzky, of Davis Polk, for the Debtors.  So, Your Honor,

13   I'm going to take your guidance, of course, and at first

14   I'll focus on what we'll call the short-term period between,

15   let's call it, now and the District Court's ruling.

16             And Your Honor, what we've done is we've provided

17   and have been willing to provide complete protection to the

18   movants against all risk of equitable mootness in the near

19   term, which would allow for Judge McMahon to decide the

20   pending appeals on the merits and would have eliminated the

21   need for today's hearing, but we're already here.  And all

22   that we ask for is an escape hatch for the movants to

23   renotice the motion in a proper forum if there's any risk

24   that mootness were to arise in the future in a situation

25   that we quite frankly don't expect to happen.

Page 164

1            And this is exactly what Your Honor suggested we

2    do, which was to try to "hit the sweet spot," based on a

3    reasonable prediction of when the District Court might rule.

4    So let's be crystal clear on where we are right now and what

5    it is that the movants have refused to accept.

6            The Debtors and the other plan proponents have now

7    made the following six unilateral concessions in writing,

8    signed, which provides everything the movants can get out of

9    this hearing.  Now, Your Honor noted that the movants need

10   to show harm, not just conjecture -- I wrote those words

11   down -- but we have eliminated even conjecture.  What do I

12   mean by that?

13           Every single party that intends to present

14   arguments or evidence to the District Court on appeal.  That

15   includes the Debtors, the UCC, the AHC, the MSGE, the NAS

16   group.  Both sides of the Sackler Family have stipulated in

17   writing to you, to the District Court, that they will never

18   argue before any court that the appeals of the confirmation

19   orders have been rendered equitably moot by the actions

20   taken in advance of the effective date in furtherance of the

21   plan, pursuant to both the confirmation order and the

22   advance order.  Okay?

23           This agreement is set forth in stipulation and was

24   filed on October 20th on the District Court's docket.  The

25   Debtors have agreed that the effective date will not occur

Page 165

1    until the earlier of seven days following a decision by the

2    District Court on the appeals and December 30th.  In

3    addition, Sir, the Debtors have the --

4              THE COURT:  Can I --

5              MR. KAMINETZKY:  Sorry.

6              THE COURT:  Can I just stop you there?  So, on the

7    stipulation, the movants have said that you've carved out

8    arguing equitable mootness with respect to the sentencing

9    and its effects.

10             MR. KAMINETZKY:  Yes.  And that's -- we test in

11   the next point, Your Honor.

12             THE COURT:  Okay.

13             MR. KAMINETZKY:  We have agreed that we will not

14   request that the criminal sentencing take place before

15   December 20th.  Now, under the plan, as Your Honor knows,

16   the sentencing hearing could otherwise occur as of December

17   1st.  But let's just pause for a second on that, just so

18   it's clear.

19             The plea and sentencing is pursuant to a separate

20   agreement with the DOJ, not the plan and confirmation.

21   There was some confusion about that, but that's not

22   something that's addressed under the plan.  That's something

23   we agreed to to the DOJ.  But lest you think we're hiding

24   anything, we've also agreed that we'll file a notice on the

25   docket -- and obviously, it will be on the New Jersey

Page 166

1    court's docket -- when the criminal sentencing hearing is

2    scheduled.

3            And lest you think we're hiding anything and not

4    being transparent, the sentencing hearing has not been

5    scheduled, and suffice it to say that scheduling a

6    sentencing hearing in a U.S. District Court can take several

7    weeks.  And we haven't asked -- we haven't reached out yet

8    to schedule that sentencing hearing.

9            So isn't something that could happen in the dead

10   of night without any notice.  This is a sentencing hearing

11   in a very public case.  There'll be plenty of notice.  And

12   we've agreed already in writing that the earliest it

13   possibly could occur is December 20th.  But again, that date

14   -- we haven't even reached out to obtain a sentencing date.

15   And when I say we, I mean we and/or the DOJ.

16           THE COURT:  Well --

17           MR. KAMINETZKY:  Okay.  So that's number --

18           THE COURT:  Okay.  Why don't --

19           MR. KAMINETZKY:  -- four.  The --

20           THE COURT:  Why don't you go through all the

21   points, and I'll come back to questions I have.

22           MR. KAMINETZKY:  Okay, good.  Number four, the

23   Debtors will provide no less than 14-days' notice of the

24   actual effective date.  And that was something Judge McMahon

25   asked us to do, and we obviously have agreed to do it.  I

Page 167

1    already talked about that we'll file on the docket when the

2    criminal sentencing has been scheduled.

3            And finally, the plan opponents agree that the

4    movants may renew their stay motions or file a new motion as

5    of the earlier of the District Court's decision on appeal

6    and December 15th.

7            So these concessions provide the movants complete

8    protection from the risk of equitable mootness until

9    December 20th at the earliest and would either allow the

10   District Court to decide the appeals on the merits, or if

11   contrary to everyone's expectation, Judge McMahon's ruling

12   is delayed, tee up the stay motions at a later point in

13   time, before any risk of mootness becomes imminent.

14           We've built everything in so that the two things

15   that could possibly render -- you know, arguably render

16   anything equitably moot, we've built into the stipulation

17   that we've provided, protection that they could come back to

18   court and make any -- renew this motion.

19           So there's literally -- I mean, the only harm that

20   they could articulate --

21           THE COURT:  Well --

22           MR. KAMINETZKY:  -- in the short-term stay or in

23   the short-term period is the equitable mootness, and we have

24   taken it off the table.

25           THE COURT:  So could I explore that for a minute

Page 168

1    or two?

2              MR. KAMINETZKY:  Please.

3              THE COURT:  I expect you heard me initially having

4    some doubt as to how the sentencing, when it occurs,

5    arguably give rise to equitable mootness.  And I was told

6    one thing, and perhaps two.  First I was told that if the

7    sentencing occurs, there will be tremendous pressure to go

8    effective at that point, because the Debtors, as opposed to

9    NewCo, which only exists under the plan if the plan goes

10   effective, would not be able to continue on in their

11   business.  What is your response to that?

12             MR. KAMINETZKY:  That might very well be the case.

13             THE COURT:  Okay.

14             MR. KAMINETZKY:  That the -- again, it's not

15   necessarily two seconds later, but there's certainly a risk

16   of that.

17             THE COURT:  Well, how --

18             MR. KAMINETZKY:  And that is why we're not --

19             THE COURT:  How soon afterwards does that happen?

20             MR. KAMINETZKY:  Well, I'm not sure.  I don't

21   think it's necessarily up to us.

22             THE COURT:  Okay.

23             MR. KAMINETZKY:  I'm not the expert in this area.

24   But I'm not here to argue that the sentencing isn't a very

25   big deal.  I'm here saying that there's no risk that that

1    could happen under the stipulation that we've provided, or

2    are willing to provide, or have provided to the other side

3    without giving them an opportunity to come back and get a

4    stay, if necessary.

5              Obviously, if we're in that position and Judge

6    McMahon hasn't ruled yet, we'll take that into account and

7    most likely extend that date.  We're not --

8              THE COURT:  Well --

9              MR. KAMINETZKY:  -- here trying --

10             THE COURT:  I'm sorry.  What is the harm to the

11   Debtors and the other Appellees of delaying the sentencing,

12   or having the Debtors request a sentencing hearing date that

13   would be, say, at the end of December?  Is there some

14   difference between December 20 and December 31, or...?

15             MR. KAMINETZKY:  No, there's no -- if you want

16   another 10 -- put it to December 31, we're happy to do this.

17   The issue here, Your Honor, is we all are expecting -- and

18   if you were at Judge McMahon's hearing, we heard it -- she

19   put this -- what she called a "rocket docket."  We all

20   expect her to rule promptly.

21             The only risk we are protecting -- you know, why

22   can't I just get up and say we'll give them -- you know,

23   we'll stipulate until Judge McMahon's ruling.  In all likely

24   circumstances, that's what we're doing.  We just feel as

25   fiduciaries, you know, who knows what could happen.  So we

Page 170

1    want some outside date that if Judge McMahon, for whatever

2    reason, doesn't rule by then, we could come back to you or,

3    you know, we could see where we are.

4            We just can't right now say, you know, we'll wait

5    until Judge McMahon's ruling.  Although, you know, that's

6    where we all expect to be.  Judge McMahon, again, she's

7    scheduled oral arguments November 30th.  Right after doing

8    that, she said, "And I have a criminal trial starting on

9    December 7th."  The implication of that, I thought, was that

10   she's going to try to rule very promptly.  And that's why

11   we've set the dates the way they are, December 20th,

12   December 30th.

13           But, you know, those are all -- and that's why we

14   just want the back-up drop-dead date.  But again, we all

15   expect -- and the purpose of the stipulation is to give them

16   comfort that nothing will happen until Judge McMahon rules,

17   both the effective date and the sentencing.

18           THE COURT:  So, can we --

19           MR. KAMINETZKY:  And once we've -- Your Honor,

20   this is -- I'm sorry.

21           THE COURT:  The proposal is, as you've repeated

22   just now, that the agreement is that the effective date

23   would not occur until the earlier of the District Court's

24   ruling or December 30, which places the onus on the movants

25   to seek a ruling within the 14-day notice period that you've

Page 171

1    agreed to, assuming that a ruling isn't forthcoming by

2    December 30, right?  That's really what you --

3               MR. KAMINETZKY:  Right, that's --

4               THE COURT:  That's what you're suggesting.

5               MR. KAMINETZKY:  Yes, because -- and again, the

6    burden is on -- let's just -- I'm not asking for a favor,

7    Your Honor.

8               THE COURT:  Right.

9               MR. KAMINETZKY:  The burden is on them.  Like, a

10   stay isn't the natural state of being.  A stay is

11   extraordinary, and they have a burden.  Their only burden,

12   the only harm that they could talk about -- and again, we're

13   limiting this to the interim period as equitable mootness.

14   We have taken it off the table until, you know, Judge

15   McMahon rules, for all intents and purposes.  We think we're

16   done, then.

17            And again, if there's an issue or, the only thing

18   that we've added is a -- you know, let's say something

19   happens and Judge McMahon doesn't rule, yes, the burden

20   would be on them.  But that's fair because we don't expect

21   that to happen and they can't -- sitting here today, they

22   can't meet their burden.

23            First of all, equitable mootness alone shouldn't

24   count.  But even assuming it does, and even -- and we heard

25   Your Honor loud and clear, that Your Honor wants meaningful

Page 172

1     appellate review.  So do I.  We've given them meaningful

2     appellate review until Judge McMahon rules.

3              And at that point in time, Your Honor -- and I

4     could go through the case law; Your Honor already did it --

5     basically, that's all you could give them at this hearing,

6     because under the vast majority of rule, with the exception

7     of a single case that the U.S. Trustee found, is that Your

8     Honor's kind of jurisdiction, or Your Honor's ability to

9     impose a stay, or Your Honor's stay dissolves after the

10    District Court rules.

11             So we're giving them, with one exception, until

12    Judge McMahon rules.  With the safety valve that the Debtors

13    need and as plan fiduciary needs, is if something goes

14    sideways and for some reason Judge McMahon hasn't ruled, we

15    could come back to you at that time.

16             THE COURT:  Are there other actions...?  Let's say

17    I just stayed the effective date and not the plan itself --

18    I mean, the confirmation order itself; I stayed one of the

19    conditions to the effective date, which would -- until the

20    District Court ruled or December 30, whatever was earlier --

21    are there steps that would involve either -- let me just

22    turn to the applicable section -- the transfer of material

23    assets under the plan or distributions to creditors before

24    then --

25             MR. KAMINETZKY:  No, no, no.

Page 173

 1              THE COURT:  -- i.e. substantial consummation?

 2              MR. KAMINETZKY:  No, no and no.  What we're doing

 3   now, as we've always said, we're setting up trusts, paying

 4   professionals, seeking regulatory approvals.  There's no

 5   transfer of assets until the effective date.  We're setting

 6   up for that effective date when the transfers actually

 7   occur.  That's why it was giving ice in winter to say that -

 8   - you know, for us to make clear and stipulate again and

 9   again and again that we won't make any equitable mootness

10   argument with respect to any actions pursuant to advance

11   this order pertaining to the confirmation order, you know,

12   with a sentencing that we talked about otherwise.

13              THE COURT:  And --

14              MR. KAMINETZKY:  So the answer is --

15              THE COURT:  And that's all part of you and the

16   Other Appellees' stipulation, that those sorts of things --

17              MR. KAMINETZKY:  Stipulated to it --

18              THE COURT:  Would not --

19              MR. KAMINETZKY:  -- filed it on the docket.

20              THE COURT:  You would not argue equitable mootness

21   based on those sorts of things?

22              MR. KAMINETZKY:  Absolutely.  That's black and

23   white.  We've said it.  It's filed upon the docket in the

24   District Court, and we sent a signed version of it to the

25   other side as well and to Your Honor.

Page 174

1          Again, Your Honor, it may be a -- for us, it's an

2      important point.  If we remove the equitable mootness risk,

3      which is the only risk or the only harm that they've

4      identified, they are not entitled even to the short-term

5      stay, period.  And we've done that.

6          And we've taken into account anything that they've

7      identified, including, obviously, the effective date and the

8      sentencing, by giving them comfort that we won't seek

9      sentencing before December 20th.  If you want us to move

10     that to December 31st, we're happy to do that as well.

11         But again, we don't control the sentencing.  The

12     District Court does.  All we can say is we won't seek to

13     schedule it until then.  But again, all that we're looking

14     for is some sort of safety valve that we think won't be

15     necessary, because we think Judge McMahon is -- she's

16     indicated that she realizes how exigent this is.

17         THE COURT:  So I just want to make sure.

18     Originally, I think you said that you would request that the

19     current sentencing will not take place before December 8,

20     but then you said December 20.

21         MR. KAMINETZKY:  No, it's December -- we've agreed

22     not to...  I'm sorry.  We've agreed not to seek to have the

23     sentencing hearing occur before December 20th.  That's in

24     the current stipulation that we had sent over.

25         THE COURT:  Okay.  And --

Page 175

1              MR. KAMINETZKY:  December 8th was the earliest.

2      Just the dates are a little -- December 1st was the --

3              THE COURT:  That was the earliest that it could

4      happen.

5              MR. KAMINETZKY:  It could happen.  Exactly.  As

6      opposed to -- but this in a further agreement.  But we're

7      happy to -- there's nothing written in stone about December

8      (indiscernible).  But all we're trying to do is give Judge

9      McMahon time that she needs to rule without any risk of

10     equitable mootness between now and then.  And once we've

11     done that, they have what they need, all the harm that

12     they've identified has been dealt with, and we should be

13     done.  It's really as simple as that.

14             THE COURT:  Okay.  Well, why don't I hear from

15     counsel for the U.S. Trustee on this point.

16             MR. KAMINETZKY:  Okay.  All right.  I'll be back.

17             MS. LEVINE:  Your Honor, my video takes just a

18     second.

19             THE COURT:  No, that's fine, Ms. Levine.

20             MS. LEVINE:  I'll go ahead and start.  I don't

21     know what's going on with my video.  It'll come up soon.

22             But, Your Honor, I think what I've heard is that

23     there is an agreement that there should not be equitable

24     mootness, at least before the District Court rules.  And

25     where there is a difference of opinion is what would cause

Page 176

1    that to happen.  And you know, with respect to the

2    stipulation that they've sent, it's really unclear to us.

3    You know, that was an offer that they had sent, which we did

4    not agree to for various reasons, including that it

5    purported to limit our ability to seek stay relief.

6              And we're, again -- you the concern here is

7    sentencing, which as you've heard, they do intend to argue

8    sentencing will constitute equitable mootness, and we don't

9    know what -- they've offered to have that, I guess, as early

10   -- no earlier than December 20th.  That's part of the

11   stipulation, but it's attached to conditions that would

12   limit when we could seek further state relief.  That would

13   prevent us from going back to court until December 15th,

14   just five days before then.

15             THE COURT:  Well, let's say it's December 30th

16   instead, so you have a full 14 days.

17             MS. LEVINE:  Your Honor, we were willing to

18   discuss a stipulation in the context of trying to get to a

19   consensual resolution --

20             THE COURT:  No, no.  I'm just --

21             MS. LEVINE:  -- and we weren't --

22             THE COURT:  -- focusing on the merits.  I'm trying

23   to figure out what's the harm in that, in what has just been

24   proposed with the change that the sentencing also would

25   occur no earlier than December 30.  So you pretty much know

1   that the 14 days to renew the stay motion would be in mid-

2   December, if there hasn't been a ruling by them.  And you'd

3   tea that up before the 30th.

4            MS. LEVINE:  Your Honor, our concern is twofold.

5   You know, one is making sure that we get a ruling before

6   that day comes, with plenty of time to seek a further stay.

7   You know, I know you disagree about this, but we do have

8   concerns about the other activities that are going on.  And

9   the only way to ensure that someone doesn't come in and say

10  those other activities don't cause equitable mootness is a

11  stay.  And the only sure way to ensure that they're not

12  going to request a sentencing date that then ends up falling

13  before a ruling by the District Court is a stay of the

14  confirmation order.  That's the only sure way we know of.

15           THE COURT:  I don't understand -- I guess --

16           MS. LEVINE:  And the --

17           THE COURT:  You're saying because there's an

18  outside date for the effective date, which would be December

19  30 in the proposal, right?

20           MS. LEVINE:  Well, it's the sentencing, Your

21  Honor, that they say that they're going to --

22           THE COURT:  Well, both dates.  But December 30

23  could be a date before the District Court rules.

24           MS. LEVINE:  It could be, yes.  And that would

25  undermine sort of the whole project, which is to make sure

Page 178

```
 1    we're getting a ruling before there is --

 2              THE COURT:  But the U.S. Trustee was making

 3    emergency motions for a stay while I was still on the bench

 4    ruling on the plan.  The U.S. Trustee is perfectly capable

 5    of making this motion.  In fact, it's already done so, and

 6    we've already had a hearing on it.  So it wouldn't seem to

 7    me that hard when you have 14-days' notice to do it.

 8              MS. LEVINE:  We certainly could go back to the

 9    Court if we have to go back to the Court, Your Honor.  We

10    don't see the harm in entering the stay now, though, to

11    prevent that additional motion practice, which will cost

12    everyone resources, you know, particularly if the stay is

13    less than what we are asking for, but is just through the

14    date of the District Court decision.

15              THE COURT:  That's all you're going to get.

16              MS. LEVINE:  You know, that --

17              THE COURT:  You're not going to get any more than

18    that, Ms. Levine.  So I don't think you should worry about

19    giving up anything on this point.

20              MS. LEVINE:  I got that impression, Your Honor.

21              THE COURT:  Okay.

22              MS. LEVINE:  So, you know, what we're talking

23    about balancing is, you know, that short amount of time,

24    that short amount of delay, to ensure that the District

25    Court is able to rule on the merits, which I think --
```

1           THE COURT:  All right.  So let me just ask Mr. --

2           MS. LEVINE:  -- everybody agrees on this is

3    something that should happen.

4           THE COURT:  -- Mr. Kaminetzky.  Your concern is

5    really just if something happens that is unexpected, that

6    delays Judge McMahon from ruling, right?  I mean, that's

7    really why you've put this earlier of District Court ruling

8    or December 30, right?

9           MR. KAMINETZKY:  Exactly.  We did --

10          THE COURT:  So --

11          MR. KAMINETZKY:  -- I mean, again --

12          THE COURT:  I mean, if that happens -- I mean, I

13   don't what it would be.  Maybe, you know...  I don't know

14   what happens.  But I think what Ms. Levine is saying is why

15   can't the Debtors come back to me and say it's a port for us

16   to have the effective date go forward now?

17          MR. KAMINETZKY:  The answer is, Your Honor, just

18   that's not what the law is.  The law --

19          THE COURT:  Because it --

20          MR. KAMINETZKY:  -- isn't that --

21          THE COURT:  It would shift the burden.  You're

22   saying it would shift the burden.

23          MR. KAMINETZKY:  It shifts the burden.  Yeah, the

24   burden is on them to show -- and I'm now quoting from the

25   Calpine case, how it has to be neither remote nor

Page 180

1    speculative, but actual and imminent.  There is no harm.

2              THE COURT:  Okay.

3              MR. KAMINETZKY:  The only harm they've articulated

4    is equitable mootness, and we've taken that off the table.

5    They are not entitled to a stay.  We've written it in blood

6    seven or eight times that we've eliminated any risk to them.

7    And if the unexpected happens, I'm fine with -- you know,

8    December 15th they could file their new motion.  We'll wait

9    until December -- the earliest sentencing date is December

10   31st, which means that the effective date -- the earliest

11   one has to be seven days later.  They have all the time in

12   the world if the risk becomes actual and imminent.  But it

13   isn't, because we've agreed to take that off the table.

14             THE COURT:  So when -- I'm just trying to figure

15   out how the 14-days' notice of the effective date would tie

16   into a December 30 sentencing date and a December 30 end

17   date to the voluntary stay.  When would you give that

18   notice?

19             I guess you'd get -- can I interrupt you?  I guess

20   what you would do -- correct me if I'm wrong -- is you would

21   fairly soon, I suppose, reach out to the District Court in

22   New Jersey and say, can you give us a sentencing hearing

23   sometime between December 30 and the next available date

24   thereafter.  Right?  So you know when that would be?  And

25   then you would -- then you would --

Page 181

1           MR. KAMINETZKY:  Yes, Your Honor.  We can't --

2           THE COURT:  And then you would say in your --

3           MR. KAMINETZKY:  We can't go --

4           THE COURT:  Then you would say in your notice,

5    we're giving you more than 14-days' notice.  We're giving

6    you a notice that we plan to go effective whatever date is

7    after that sentencing hearing that you have to go effective?

8    Or would it be the date of the sentencing hearing?

9           MR. KAMINETZKY:  Well, it's both, Your Honor.  We

10   would give them notice of the sentencing hearing when it's

11   scheduled.  And obviously, it hasn't been scheduled yet.

12   So, you know -- and Your Honor knows how busy District

13   Courts are.  So we'd give them immediate notice of that.

14   They'll then know for sure that we can't go effective until

15   after that date.  The earliest is seven days after that date

16   under the plan.  And then they have plenty of notice of both

17   the sentencing hearing, which won't happen overnight, as

18   well as the effective date that will happen there after.

19           THE COURT:  So is the sentencing hearing date,

20   though, the key date, because the puzzle really does

21   arguably change -- that's the missing piece of the puzzle as

22   far as mootness is concerned?  So really, the notice of the

23   effective date is less important than the noticing of the

24   sentence date?

25           MR. KAMINETZKY:  Correct.  And I mean, perhaps,

1    yes, maybe perhaps, but the answer is they're going to have

2    plenty of notice of the sentencing date.  And there's a

3    reason we're not playing games, Your Honor.  We're not ready

4    to be sentenced yet.  We still have work to do that's --

5               THE COURT:  Right.  Well, so --

6               MR. KAMINETZKY:  -- you know, to get ready for

7    this --

8               THE COURT:  So I could require that you provide

9    not only 14-days' notice of the actual effective date, but

10   also 14-days' notice of the sentencing date.

11              MR. KAMINETZKY:  I have no problem with that.  I

12   mean, again, it's in the District Court's discretion.  But

13   like --

14              THE COURT:  No, I mean -- but I --

15              MR. KAMINETZKY:  -- no problem here.

16              THE COURT:  I'm assuming the District Court will

17   give you at least 14-days' notice, right?

18              MR. KAMINETZKY:  I certainly expect that to be the

19   case.  I think it would be quite -- in a public case like

20   this, for a company like Purdue to be sentenced, I assume

21   the District Court will give plenty of notice to everyone,

22   including the public.  So there's nothing happening here in

23   secret.  This isn't the type of, you know, equitable

24   mootness that you're scared that wires will be sent out in

25   the middle of the  night.  This is the most public events

Page 183

1    that you could imagine is the sentencing of Purdue Pharma in

2    a United States District Court.

3            And again, Your Honor, we're happy to -- I can

4    repeat this -- we're all thinking -- you know, we all think

5    that Judge McMahon, when she indicated in reading between

6    the lines that she's going to rule quickly, so setting

7    December 30th and January 7th is really not a problem.  We

8    just feel we need the protection of some outside date, just

9    in case who knows what.

10           THE COURT:  Okay.  All right.

11           MR. KAMINETZKY:  And Your Honor, Ms. Levine came

12   back to these, you know, mysterious other things that are

13   happening.  But we've already dealt with those mysterious

14   other things that are happening.  How many times does Your

15   Honor have to rule that there's just simply no equitable

16   mootness possibility there?  And again, we've stipulated it,

17   and every plan proponent has stipulated that we will never,

18   ever, ever make the argument that that would be to equitable

19   mootness, any of those activities.

20           THE COURT:  Okay.  All right.  Does any other

21   movant have anything to say on these points?  Any other stay

22   movant?

23           MR. GOLD:  Your Honor, Matthew Gold.  Can you hear

24   me?

25           THE COURT:  Yes.

Page 184

1            MR. GOLD:  Just a couple of brief observations,

2     Your Honor.  The first is it seems to me, given the

3     construct of the Debtors' (indiscernible) that there would

4     be no additional burden on the Debtor, and it would make

5     perfect sense for them to provide us with substantially

6     immediate notice a time when a request is made of the

7     District Court for sentencing to occur, rather than saying

8     send a date and -- I mean, if they're making a request to

9     the District Court, they should be able to tell everyone

10    that they have done so right then and there, or

11    substantially (sound drops) thereafter, regardless of when

12    that occurs.

13            The second thing is that I still find in the

14    Debtors' proposal a subtle rewriting of Rule 8025, which

15    Your Honor discussed earlier, which provides for a two-week

16    stay following the ruling of the District Court, rather than

17    --

18            THE COURT:  That still applies.  That still

19    applies.  This is just -- this just takes you up to the

20    District Court ruling.

21            MR. GOLD:  I understand.  I just... It just

22    seems, to us, cleanest when not creating confusion to say

23    that whatever Your Honor grants would be coterminous with

24    the stay that comes from under Rule 8025, rather than having

25    to have anyone puzzle out what happens if one stay applies -

Page 185

1    - ends earlier, and another stay does not.

2              THE COURT:  Well, to me, the way to do that is to

3    say it's...  First of all, the Debtors are not proposing a

4    stay here.  They're proposing a stipulation that would

5    obviate the need for a stay.  And that at that point, you

6    know, you have the District Court ruling.  And then 8025

7    comes into play.

8              MR. GOLD:  Okay.  Well, the Debtors' stipulation

9    did not contain anything that said that it was not -- it was

10   possible we were concerned in reading it that it might be

11   intended to be a derogation of whatever rights --

12             THE COURT:  No.

13             MR. GOLD:  -- under 8025 --

14             THE COURT:  I understand, but I don't --

15             MR. GOLD:  -- and not --

16             THE COURT:  Well, no one even mentioned 8025, but

17   I understand that point.  But I think that that would be

18   clear from my ruling here.

19             MR. GOLD:  Okay.  And Your Honor, I mean, the only

20   other thing which I will suggest is it's hard for me to

21   believe that anyone wants to be deliberately setting a

22   deadline that runs to New Years Eve, or immediately, giving

23   a few days after that, if parties are going to be having to

24   run in for emergency applications would make a certain

25   amount of sense, given that the Debtors have conceded that a

Page 186

1    few days here or there is not going to make a meaningful

2    difference in this context.

3            Other than that, I have nothing to add on this

4    point, Your Honor.

5            THE COURT:  Okay.

6            MR. GOLDMAN:  Your Honor, may I just add one

7    additional point?  Irv Goldman, Pullman & Comley, for the

8    State of Connecticut.

9            THE COURT:  Sure.

10           MR. GOLDMAN:  I think Your Honor hit directly on

11   the head that the important date here, especially if the

12   District Court has ruled by December 30, is the criminal

13   sentencing date.  Although they've agreed to postpone asking

14   for that to be held to December 30 or December 31, if it

15   does actually fall on that date, I think it does make it --

16   and this follows up on Mr. Gold's point -- somewhat of a

17   difficulty in trying to get an emergency stay motion over

18   the holiday season, running up to December 30th.  So I think

19   it does, for that reason, make (sound drops) sense to have

20   that pushed out so we're not running into the holidays.

21           THE COURT:  Well, I'm assuming you would make it -

22   - you would file it and get a date a couple weeks before

23   then.  But I understand the hearing time.  Understand that

24   point, I don't think any court is particularly excited to

25   have a hearing, although I think it would probably be

Page 187

1    shorter than this one, on the New Year's Eve.

2            MR. GOLDMAN:  Yes.  That's all I had, Your Honor.

3            THE COURT:  Okay.  All right.  Okay, so, look, I

4    think obviously there is a lot more that the objectors want

5    to get in the record for this hearing.  But I do think that

6    the Debtors' proposal, with some tweaking, really does make

7    a lot of sense in the interim, particularly given Mr.

8    DelConte's testimony that the money itself wouldn't be

9    flowing even to the trusts until the beginning of 2022, and

10   wouldn't thereafter, at least for a while, be going out --

11   at least for a couple of weeks -- be going out to third

12   parties in the form of the abatement payments.  And probably

13   a little bit longer for the personal injury claimants, which

14   is the offsetting harm that the objectors have highlighted,

15   and rightfully so.

16           So, why don't I throw out -- and people can be

17   thinking about this while I hear the rest of the argument --

18   that the Court's ruling would be to deny the stay request,

19   on the conditions that the effective date not occur until

20   the earlier of the issuance of the District Court's ruling

21   and January 7th.  That the Debtors will not seek a

22   sentencing hearing to occur any earlier than January 7th,

23   and that they will provide notice, not only of when that

24   hearing is scheduled, but also their request for one to the

25   Appellants.  And that the movants may renew their stay

Page 188

1    motion on at least 14-days' notice.  And of course, that

2    would also be accompanied by the stipulation that's been

3    signed that the Appellees will not argue that any of the

4    other actions that would be taken leading up to either the

5    District Court ruling or January 7 would serve as a basis

6    for equitable mootness.

7                So you all can mull that over, but I don't know if

8    you want to go into additional argument, Mr. Kaminetzky, or

9    does that conclude your argument?  In which case, I'll hear

10   from the other objectants.  I think you're on mute still.

11               MR. KAMINETZKY:  I am on mute.  I have a double

12   mute because I don't trust just one mute.  But here's --

13   well, Your Honor, we have -- if Your Honor wants me to

14   address the longer stay, if that's still on the table, then

15   I have a lot to say about that in terms of irreparable harm

16   and the other prongs.  If not, then I'll save that for,

17   hopefully, never.  But it's really up to you.

18               We do have a -- you know, we have a lot to say on

19   the three-hour argument that the other side had on

20   irreparable harm and the balances of harms and public policy

21   and bond and all of that.  So, Your Honor, I don't want to

22   do something that you're not -- you don't want us to do, but

23   we're happy to make that record or not make that record.

24               THE COURT:  Well, unfortunately, where I know

25   where I'm coming out, at least some of the movants, not all

Page 189

1    of them, really are, I think, still actively pursuing as an

2    alternative the stay through the conclusion of the appellate

3    process.  So I think we should, albeit maybe so as to

4    preserve the record, at least get in the witness

5    declarations and hear brief argument on the irreparable harm

6    and balance of the harms and public policy points for, or

7    with respect to, movants' request for a stay beyond the

8    dates that I have posited, which again would be the earlier

9    to occur of the District Court's ruling and January 7th,

10   although that wouldn't be a stay.  That would be a denial of

11   the motion on the conditions that these agreements be made

12   by the Appellees.

13            MR. WAGNER:  Your Honor, Jonathan Wagner, from

14   Kramer Levin, on the issue of the declarants -- on behalf of

15   the Ad Hoc Committee.  Our declarant, Mr. Guard, has to

16   leave by 4:00 --

17            THE COURT:  Okay.

18            MR. WAGNER:  -- to pick up his son.

19            THE COURT:  Okay.

20            MR. WAGNER:  So can we swear him in now and have

21   him attest to his declaration?

22            THE COURT:  Yes, that's fine.

23            MR. WAGNER:  That's fine.

24            THE COURT:  And I see him there on the screen.

25   So, Mr. Guard, would you raise your right hand, please?  Do

Page 190

1    you swear or affirm to tell the truth, the whole truth, and

2    nothing but the truth, so help you God?

3                    MR. GUARD:  I do.

4                    THE COURT:  Thank you.  And it's John M. G-U-A-R-

5    D?

6                    MR. GUARD:  Yes, sir.

7                    THE COURT:  Okay.  So, Mr. Guard, you submitted a

8    declaration intended to be your direct testimony on these

9    motions for stay pending appeal.  It's dated October 22,

10   2021.  Knowing again that it would be your direct testimony,

11   is there anything in it sitting here on November 9 that you

12   want to change?

13                   MR. GUARD:  No, Your Honor.

14                   THE COURT:  Okay.  Does anyone want to cross-

15   examine Mr. Guard?  Okay.  I have reviewed Mr. Guard's

16   declaration.  I believe it's quite clear.  I have, in part,

17   limited it, as I ruled in my colloquy with Mr. Goldman, in

18   light of Connecticut and Washington's objection to its

19   admissibility.  But otherwise, I'll admit it now.  It's just

20   direct testimony.  So, you can sign off, Mr. Guard.

21                   MR. GUARD:  Thank you, Your Honor.

22                   THE COURT:  Okay.

23                   (Declaration of John M. Guard Admitted Into

24   Evidence)

25                   THE COURT:  I think other objectors also submitted

Page 191

1    declarations that they may want to move the admission of

2    now.  Mr. Jorgensen and the Committee's two witnesses, Ms.

3    Juaire and Ms. Trainor.

4         MR. HURLEY:  Your Honor, if I may, it's Mitch

5    Hurley, on behalf of the Official Committee of Unsecured

6    Creditors.

7         THE COURT:  Okay.

8         MR. HURLEY:  Your Honor, my colleague, Arik Preis,

9    is going to argue the objection to the stay motion on behalf

10   of the UCC.  I'm taking the virtual podium here only to

11   offer into evidence the declarations of Ms. Juaire and Ms.

12   Trainor.

13        Both witnesses are members of the UCC, who have

14   dedicated countless uncompensated hours to these cases.

15   Both agreed during the course of the cases to cease their

16   ordinarily outspoken public advocacy relating to Purdue.

17   Both have suffered unthinkable personal loss as a result of

18   the opioid epidemic.  And both have responded by devoting

19   virtually all of their time helping others (indiscernible)

20   community.

21        As such, the ICC submits these witnesses have

22   unique knowledge and insights in matters of great relevance

23   to the exercise the Court is undertaking on the stay motion,

24   and that those insights should be a part of the record.

25        The states of Washington and Connecticut were

Page 192

1    alone in objecting to admission of the declarations of Ms.

2    Juaire and Ms. Trainor, and then only with respect to

3    several discrete statements included in those declarations.

4         My understanding is that the Court already has

5    overruled the objections of Washington and Connecticut, as

6    explained in more detail by the Court earlier in these

7    proceedings today.  And I therefore will not address further

8    those objections, unless Your Honor has questions for me.

9    And both of the witnesses are present and available to

10   affirm their declarations, if Your Honor wishes.

11        THE COURT:  Just to be clear, I didn't completely

12   overrule the two states' objections.  I granted them to the

13   extent that I found that each declarant was predicting or

14   offering a rationale for the exact effect of the delay of

15   payments under the plan and/or stating their belief as to

16   why certain sources of abatement have shut down over the

17   last several months.

18        I admit them for predictions by a reasonably

19   informed person who has dedicated, as you said,

20   substantially all of their time to these types of issues,

21   and who have in each case involved them to a significant

22   degree in understanding and interacting with others like

23   them, who have devoted themselves as well to abatement of

24   the opioid crisis.

25        So, why don't we start with Ms. Juaire?  She can

Page 193

1    go on the screen.  Okay.  Would you raise your right hand,

2    please?  Do you swear or affirm to tell the truth, the whole

3    truth, and nothing but the truth, so help you God?

4              MS. JUAIRE:  I do.

5              THE COURT:  And it's Cheryl, C-H-E-R-Y-L, Juaire,

6    J-U-A-I-R-E?

7              MS. JUAIRE:  Yes.

8              THE COURT:  Okay.  Ms. Juaire, you submitted a

9    declaration in connections with these motions for a stay

10   pending appeal that was intended to be your direct

11   testimony.  It's dated October 21, 2021.  Sitting here today

12   on November 9, is there anything in it that you would wish

13   to change?

14             MS. JUAIRE:  No.

15             THE COURT:  Okay.  Does anyone want to cross-

16   examine Ms. Juaire?  Okay.

17             I have read the declaration and I don't have any

18   questions on it.  It's quite clear to me, and I will admit

19   it as Ms. Juaire's direct testimony subject to the

20   limitation on admission that I previously articulated.

21             So thank you, Ms. Juaire, and you can sign off at

22   this point.

23             MS. JUAIRE:  Thank you.

24             THE COURT:  Okay.  And then can we bring Ms.

25   Trainor on the screen?  Good afternoon.  Would you raise

Page 194

1    your right hand, please?  Do you swear or affirm to tell the

2    truth, the whole truth, and nothing but the truth, so help

3    you God?

4            MS. TRAINOR:  I do.

5            THE COURT:  Okay.  And it's K-A-R-A T-R-A-I-N-O-R?

6            MS. TRAINOR:  Yes.

7            THE COURT:  And Ms. Trainor, you submitted a

8    declaration in connection with this set of motions for a

9    stay pending appeal.  It's dated October 21, 2021, and it's

10   intended to be your direct testimony.

11           Sitting here today on November 9, is there

12   anything in it that you wish to change?

13           MS. TRAINOR:  No.

14           THE COURT:  Okay.  Does anyone want to cross-

15   examine Ms. Trainor on her declaration?  Okay.

16           And again, I've reviewed it and I found it to be

17   quite clear and subject to the limitation on admissibility

18   that I previously noted, I will admit it as Ms. Trainor's

19   direct testimony.  I don't have any questions of her, so

20   thank you and you can sign off, ma'am.

21           MS. TRAINOR:  Thank you.

22           THE COURT:  Okay.

23           MAN 1:  Thank you, Your Honor.

24           THE COURT:  Okay.  I think there were two other

25   declarations, one by Mr. Jorgensen and then one that came

Page 195

1    out very recently, which may or may not be necessary given

2    my ruling on the objections to admissibility by the State of

3    Connecticut and the State of Washington, but I think that's

4    Mr. Jorgensen.  And a declaration by another official from

5    Arkansas, which I'm looking for and can't find at the moment

6    -- here it is, I have it -- Mr. Lane.

7             MR. LIESEMER:  Yes, Your Honor.  This is Jeffrey

8    Liesemer on behalf of the multi-state governmental entities

9    group.  We had filed the declaration of Mr. Jorgensen, and

10   if we could proceed, I can see if we can bring him up.

11            THE COURT:  Yes.  If you could pull him on the

12   screen, that'd be fine.

13            MR. LIESEMER:  And while we are waiting for Mr.

14   Jorgensen to appear, I just did want to remind Your Honor

15   that Washington and Connecticut had raised certain

16   evidentiary objections to the declaration of Mr. Jorgensen,

17   similar to the other declarants.

18            And we filed the declaration of Mr. Kirk Lane

19   yesterday to respond to the narrow point that was raised by

20   the two states, and Mr. Lane's declaration is at Docket

21   4075.

22            THE COURT:  Okay, right.  I have it here now.

23   Okay.  I see Mr. Jorgensen now.  Would you raise your right

24   hand, please?  Do you swear or affirm to tell the truth, the

25   whole truth, and nothing but the truth, so help you God?

```
 1              MR. JORGENSEN:  I do.

 2              THE COURT:  And it's Colin, C-O-L-I-N, Jorgensen,

 3     J-O-R-G-E-N-S-E-N?

 4              MR. JORGENSEN:  Yes, Your Honor.

 5              THE COURT:  Okay.  So, Mr. Jorgensen, you

 6     submitted in connection with the motions for stay pending

 7     appeal.  It's dated October 20, 2021.  It's intended to be

 8     your direct testimony in support of the multi-state

 9     governmental entities group in opposition to those motions.

10              Knowing that and sitting here today on November

11     9th, is there anything in it that you would wish to change?

12              MR. JORGENSEN:  One thing, Your Honor, an update.

13              THE COURT:  Okay.

14              MR. JORGENSEN:  In Paragraph 12 on Page 5-6 of my

15     affidavit, I cite the number 515 drug overdose deaths in

16     Arkansas for 2020.

17              THE COURT:  Right.

18              MR. JORGENSEN:  And since I wrote and signed the

19     declaration, I've learned that the updated final number is

20     547 overdose deaths in Arkansas in 2020.

21              THE COURT:  Okay.

22              MR. JORGENSEN:  I can source that for you if you

23     want.

24              THE COURT:  I think you should do that for you,

25     yes.
```

Page 197

1          MR. JORGENSEN:  Okay.  So I found that number on

2     the Arkansas Drug Director's website, which is

3     artakeback.org.  There's a news button you can push.  And

4     when you go into that, it's the most recent post on the

5     website is from October 28th, just less than two weeks ago,

6     and that article, the last sentence in that articles cites

7     the number 547 drug overdose deaths in Arkansas in 2020.

8          When I saw that, I knew that must mean they have

9     arrived at a final number, and I reached out to Kirk Lane,

10    who is the Arkansas Drug Director, and I asked him to source

11    that for me.  And he sent me several reports from the

12    Arkansas Department of Health, which maintains these final

13    numbers and death certificates and things.

14          And I reviewed the reports and saw that they

15    consistently all cited the number 547 as the number for

16    overdose deaths in Arkansas in 2020.

17          THE COURT:  Okay.

18          MR. JORGENSEN:  It doesn't change much in

19    substance for my affidavit.  It's just the more accurate

20    number now with that update.

21          THE COURT:  Okay, thank you.  Does anyone want to

22    cross-examine Mr. Jorgensen on his declaration?  Okay.

23          Again, I've reviewed his declaration carefully.

24    It, like other declarations that I've already admitted into

25    evidence, cites the CDC estimates for drug overdose deaths

Page 198

1    in 2020, and also as we've just heard, focuses on the State

2    of Arkansas for that sad statistic.

3             I will admit Mr. Jorgensen's declaration, subject

4    to admitting Mr. Lane's declaration, and the limitations

5    generally as to any assumptions as to other parties' actions

6    that would derive from third parties as being only Mr.

7    Jorgensen's analysis or prediction.

8             But I will note that his task here, I believe,

9    qualifies him to make such predictions and analyses, given

10   his role on behalf of the AAC; that is the Association of

11   Arkansas Counties.

12            So you can sign off Mr. Jorgensen.

13            MR. JORGENSEN:   Thank you, Your Honor.

14            THE COURT:  Okay.  And then can we pull up Mr.

15   Lane?

16            MR. LIESEMER:  Your Honor, Mr. Lane's declaration

17   goes to a very narrow point.  Washington and Connecticut had

18   asserted that the document that is attached to Mr.

19   Jorgensen's declaration as Exhibit 1 did not fall under the

20   public records exception to the rule against hearsay.  We

21   provide Mr. Lane's declaration to give assurance that it

22   does meet the public records exception.  And so, he's not

23   speaking to any of the four prongs regarding the motion to

24   stay, so it's a very narrow point.

25            If Your Honor does not need Mr. Lane's declaration

Page 199

1    to admit all of Mr. Jorgensen's declaration, including the

2    exhibit, then I think we can dispense with that.  We do not,

3    because of the narrow issue, we do not have Mr. Lane on

4    standby.

5               THE COURT:  Okay.  All right, well, let me ask Mr.

6    Goldman and Mr. Gold.  Having seen Mr. Lane's declaration,

7    would you still challenge the admission of the report that's

8    attached as Exhibit 1 to his declaration, the Naloxone Saves

9    Program report?

10              MR. GOLDMAN:  Your Honor, Irv Goldman.  No, no

11   objection.

12              THE COURT:  So I will admit Mr. Lane's declaration

13   for that purpose.

14              Okay.  I think those are all the witnesses, so I'm

15   happy to go back now for brief oral argument by the

16   objectants, although again, I've reviewed the pleadings.

17              MR. LIESEMER:  Your Honor, I'll just be very brief

18   and turn it over then to the other plan proponent objectors.

19              Let me just say two things: one is with respect

20   to, you know, your tentative rulings or what have you.

21   That's all fine, except for -- I'm just a civil litigator

22   that plays in Bankruptcy Court from time to time.

23              I am told that Your Honor's suggestion or

24   requirement that we provide notice of even a request for

25   sentencing, that is something that perhaps we should not

Page 200

1    agree to, given that this is an agreement between the U.S.

2    Attorney's Office and the Debtors, and we're not sure how

3    the U.S. Attorney's Office would feel about that; number

4    one.

5           Number two.  If we're talking about just a request

6    for sentencing and not the sentencing date itself, we'll be

7    getting in front of the U.S. District Court.  I mean, if

8    we're calling up the clerk of the court and asking for a

9    sentencing date and that somehow triggers a requirement to

10   tell the world that we've done so, that seems like kind of

11   stepping on the toes of the New Jersey District Court.

12          And finally and most importantly, Your Honor, is

13   I'm told that the sentencing schedule is going to be

14   scheduled plenty in advance of any hearing, reporting

15   likely, you know, 30-45 days.  I can't guarantee because I

16   don't have the judge's calendar.  But this again isn't

17   something that happens overnight; this is something that the

18   public is going to be invited to.

19          So we believe that, you know, giving notice as

20   soon as it's scheduled will give plenty of time for anyone

21   to do whatever they feel they need to do to protect their

22   rights.

23          THE COURT:  Okay.

24          MR. LIESEMER:  And then on the balance of harms,

25   we'll rely on Mr. DelConte's declaration and the extensive

Page 201

```
 1    discussion of the cataclysmic harms that could occur to the

 2    Debtors should this thing delay the -- should confirmation

 3    be -- sorry -- emergence be delayed for any significant

 4    period of time.

 5              But I will turn it over to the various creditors'

 6    group to make the principal argument with respect to the

 7    balance of harm, the public interest, as well as the bond

 8    issue.

 9              THE COURT:  Okay.

10              MR. PREIS:  Good afternoon, Your Honor.  This is

11    Arik Preis from Akin Gump Strauss Hauer & Feld on behalf of

12    the Official Committee.  Can you hear me?  Are there any

13    issues?

14              THE COURT:  I can hear you and see you fine.

15              MR. PREIS:  Okay.

16              THE COURT:  Although you seem to be inside a

17    filing cabinet.  I don't know, it looks -- I'm worried for

18    you, but that's okay.  Now I see you're in a conference

19    room.

20              MR. PREIS:  So I want to do this, if it's okay, I

21    want to address my oral argument first and then, hopefully,

22    that will inform my response to your proposal from a little

23    while ago about how you would propose resolving the issue

24    through a stipulation.

25              Can I proceed in that manner?
```

Page 202

1          THE COURT:  Sure.

2          MR. PREIS:  Okay.  And I'm going to, if I've

3     hesitated, it's because I want to try to speak through some

4     things, and so, it may take me a second to (sound glitch)

5     over.

6          In general, obviously, the Official Committee

7     vehemently opposed the movant's request.  We actually spent

8     quite a bit of time with them trying to avoid this hearing

9     because we thought the offer we gave them gave them the

10    functional (sound glitch) of what they were asking.

11         They insisted on having the hearing.  And lest any

12    of us forget, I won't belabor this, but during the course of

13    this hearing, approximately 30 people have died due to

14    opioid overdose.  But notwithstanding our views regarding,

15    you know, the impropriety of this hearing, we must do what

16    we can to protect the interests of the 630,000 claimants who

17    are waiting to receive their money, that roughly 96 percent

18    of voting claimants who voted in support of the plan and

19    then 10 ad hoc groups who all expressed support and objected

20    to the stay motion.

21         So I'm going to pensively just address harm to the

22    movants and then the public interest.

23         On harm to the movants, I'm not going to address

24    equitable mootness; you addressed that already.  The only

25    real other argument that the movants made is that the three

Page 203

1   state attorney generals argue that if a stay is not granted,

2   their ability to enforce their police power will be

3   irreparably harmed.

4        That's misguided for two reasons.  First, it needs

5   to be repeated that there's absolutely nothing, has been

6   nothing, and will never be anything that stops anyone from

7   criminally prosecuting any of the Debtors receiving the

8   relief.  Attorneys general and those that can bring the

9   criminal prosecution has had this (sound glitch) for more

10  than -- forever, and they've been investigating the Sacklers

11  for more than three years, and they had the right to gain

12  access to every piece of evidence the UCC and the NCSP

13  uncovered in one of the most thorough investigations ever in

14  the history of bankruptcy.  If they thought they had a

15  viable criminal case, they would have brought.

16       Instead, they've gone out of their way to confuse

17  people, including their citizens, by blaming Your Honor for

18  issuing an order that gives permanent immunity to the

19  Sacklers, which they therefore cry -- used to cry

20  irreparable harm.

21       General Tong ordered on September 20th that the

22  Bankruptcy Court's ruling let the Sacklers off the hook by

23  affording them permanent immunity from lawsuit that would

24  hold them accountable for the damage they've caused.

25       General Ferguson in Washington ordered on

Page 204

1    September 2nd, the confirmation order let the Sacklers off

2    the hook by granting them permanent immunity from lawsuits

3    in exchange for (sound glitch) profits they made from the

4    opioid epidemic.

5              In fact, they well know that this is the

6    creditors' plan.  If the states and municipalities that

7    drives the public (sound glitch), the NAS, the third-party

8    payers, the ratepayers, the hospitals who all overwhelmingly

9    voted in favor of the plan.  They know this, but it's easier

10   for them to blame Your Honor and this Court.

11             Second, it cannot be the case that these three

12   AGs' ability to enforce (sound glitch) is irreparably

13   harmed, while the ability of no other attorney general

14   across the United States is similarly  harmed.  Indeed, we

15   actually are forgetting that there are five other state

16   attorneys generals who are vigorously appealing the

17   confirmation order and the District of Columbia which have

18   not joined in the request for a stay.  They all looked at

19   the facts and circumstances of the case and determined

20   there's no irreparable harm to the citizens of their state

21   if the plan is permitted to be effective without a stay.

22             Said another way, 94 percent of the AGs

23   representing 95 percent of the population chose to follow

24   the whim of 96 percent of the voters.  So why is every

25   single creditor, other than three AGs, not seeking an

Page 205

1   extraordinary remedy of a stay?  Obviously, the answer is

2   the irreparable harm.

3           A lot has been written about this.  Your Honor

4   said you read the papers.  I'm not going to belabor some of

5   this, but I just want to note a few things.

6           You mentioned the CDC estimates.  You mentioned

7   how they've gone up in the past year.  The simple answer is

8   they're losing the fight in the opioid epidemic.  But the

9   daily deaths, approximately 204, are opioid (sound glitch).

10          There are currently more than 1.6 million

11  Americans estimated to be suffering from OUD.  By some

12  estimates, the annual cost of dealing with the opioid

13  epidemic is $78 billion.  Each day that funds are held back,

14  there are real-world and life-and-death consequences.

15  Abatement programs go unfunded, overdose reversal medicine

16  does not get distributed, community centers are not (sound

17  glitch).  I could go on and on and on.

18          The point is, as Your Honor said earlier, every

19  day and every dollar makes a difference.

20          The three AGs and the U.S. Trustee are unswayed.

21  They give three responses.  First, they argue that they're

22  working hard to get their appeals heard quickly, so a little

23  delay is tolerable.  Second, they argue that the cases have

24  been delayed for two years by the UCC, among others, and

25  therefore, a few more months isn't going to matter in the

Page 206

1    big picture or a few days.  They argue the new National

2    Opioid Settlement that's bringing in lots of money, and

3    therefore, not getting money from the Sacklers isn't as bad

4    as it may seem.

5            These are dangerous arguments.  Let's start with

6    the first one.  No delay is tolerable.

7            The attorney general from the State of Missouri

8    recently stated that the number of opioid overdose deaths is

9    like a plane going down every day, a month, a year.  As Miss

10   Juaire and Miss Trainor explained in their declarations,

11   they see the devastation every day.

12           Indeed, our office has fielded more than 500

13   calls, letters, and emails from victims over the past two

14   years and returned each one.  We've listened to their

15   stories, we've grieved with them, we've attempted to explain

16   the injustice being done.

17           Indeed, yesterday, just as an example, I took a

18   call from Robert Bernhoff, a resident of the State of

19   Washington, who was in a 2009 ski accident, was prescribed

20   Oxi and was on it for three years and it changed and ruined

21   his life.  Now why do I mention him?  It turns out he was a

22   fifth grade teacher in 2006 for Attorney General Ferguson's

23   niece, and he asked that I note his unhappiness and the

24   State of Washington's attempt to (sound glitch) distribution

25   of funds.

1          If the U.S. Trustee and the attorney generals get

2     their wish and we're stayed for even six months, and

3     assuming that that's all it is, there will be 36,000 more

4     deaths; that's 1 percent of the population of the State of

5     Connecticut.

6          As Mr. Guard said in his declaration, it's

7     unconscionable that the remote chance that some (sound

8     glitch) creditor could recover some money from the Sacklers

9     on some distant day or that some known creditors could

10    receive additional money after years of litigation could

11    justify the additional death of a single American; Paragraph

12    14 of his declaration.

13         The second argument that the movants make is that

14    the case has already been delayed for two years by the UCC,

15    among others, and therefore, incremental delay should be on

16    us and shouldn't be a big deal.  We don't believe those

17    arguments even merit a response, but I just want to point

18    out a few things.

19         First, the UCC has done virtually everything in

20    its power since the day it was appointed to move (sound

21    glitch) out for abatement and victim compensation.  We all

22    know what happened with the ERF.  We saw the potential that

23    this looks to be a long case, and we tried very hard to get

24    money out to community organizations two years ago.

25         Everyone knows, now in hindsight, look at how

Page 208

1    important that money could have been if the DOJ, among

2    others, was one of the biggest opponents to the ERF.

3            Second, I won't go through everything that's

4    happened over the course of the last two years.  But to be

5    clear, there was six months of mediation, of which three

6    months was just public and public negotiations and three

7    months of public and private negotiations, six months of

8    mediation with the Sacklers, another three or four months to

9    document the deal, and the elongated confirmation hearing.

10           All that has occurred with the movants sitting

11   there and watching and being part of every little piece of

12   it.  I'm not criticizing them, but they couldn't say that

13   the past two years, because the case has lasted two years,

14   that in some way that another few days isn't going to make a

15   difference.

16           The movants' third rationale, and admittedly only

17   Generals Tong and Ferguson make this harmfully misleading

18   argument, is that there's money from other sources coming

19   in, and so the Purdue money -- not getting the Purdue money

20   now is tolerable.  Specifically, AGs Tong and Ferguson

21   trumpet the National Opioid Settlement with three

22   distributors and Johnson & Johnson, 26 billion over 15

23   years.  Without a doubt, the UCC applauds these efforts,

24   although ironically, the State of Washington hasn't agreed

25   to it.

1           But what the AGs don't say in their papers, and

2      indeed, they haven't said publicly in anything we can find,

3      is that not one dollar of the 26 billion goes to private

4      side claimants.  That's not an accident.

5           But why am I raising that here?  Washington and

6      Connecticut makes such a big deal about the NOS in their

7      papers, and they say that the money is coming in, but they

8      don't say that 1.4 billion of the Purdue money goes to

9      claimants who are getting zero from the National Opioid

10     Settlement.  It's something they don't want to admit.

11          Moreover, it's just innate to say that an (sound

12     glitch) claimant because they're getting money from the NOS

13     and tolerate some delay in getting the Purdue money.  The

14     cost of the opioid crisis is $78 billion a year.

15          As Your Honor said on August 23rd and during the

16     confirmation hearing, it just seems really boneheaded to say

17     this 4.25 billion won't pay off from all the opioid (sound

18     glitch), you shouldn't take it.

19          With that, Your Honor, I'll turn to the public

20     interest program.

21          The U.S. Trustee states that the co-op with the

22     U.S. Trustee and the public interest are, "one in the same"

23     because the government's interest is the public interest.

24     The U.S. Trustee further states that when the government is

25     the movant, the public interest and irreparable injury fact

Page 210

1   (sound glitch), despite through a number of cases for that

2   proposition.

3           Let me respond in four ways.  First, not one case

4   that the U.S. Trustee cite stands for the proposition that

5   when the U.S. Trustee is the movant that the federal

6   government's interest is the one being implicated for

7   confirmation over (sound glitch).

8           Knowing this, in its appellate papers, the U.S.

9   Trustee has started referring to itself as the government,

10  as opposed to the Office of the United States Trustee.

11  We're not disputing that the U.S. Trustee's website says

12  that it's a component arm of the DOJ.  But perhaps the U.S.

13  Trustee has not cited any cases where the U.S. -- because

14  the U.S. Trustee is never a creditor.  And therefore, it's

15  role as a so-called (indiscernible) doesn't merit its

16  interest being equated with the public for the purpose of

17  this analysis.

18          In other words, no one with the (sound glitch) to

19  say that such an extraordinary remedy that should only be

20  granted in the most narrow of circumstances.  Perhaps courts

21  should be wary of holding up the will of actual creditors

22  for the desires of a non-creditor.

23          Second, under the facts and circumstances of this

24  case in particular, it's inexplicable that the U.S. Trustee

25  is taking the position that its interest are those of the

Page 211

1   government.  To be clear, there are other federal government

2   interests in this case, and not one of them has brought a

3   motion for a stay pending appeal.

4          Even the DOJ, who is unimaginably -- imaginably

5   filed amicus briefs all but appealing the confirmation order

6   and objecting to confirmation has not asked (sound glitch)

7   pending appeal.  The DOJ settled its civil claims for 225

8   million.  They settled their criminal claims for 225

9   million.  They settled their unsecured claims for 65

10  million.  The various governmental agencies settled their

11  issues with Purdue and other private side claimants and

12  public side claimants by taking 4 percent of the amount that

13  was going to go to PIs and taking and transferring it to

14  themselves.

15         So the case where every governmental entity that

16  is a creditor has already settled with Purdue and the

17  Sacklers and the other plaintiffs is either getting money on

18  the effective date or has already received such money.  It's

19  pretty difficult to believe that the U.S. Trustee, which is

20  not a creditor, nor does it act in any interest other than

21  what it perceives to be others' interest, to take the

22  position its acting as the government.

23         Third, (sound glitch) for one moment that the U.S.

24  Trustee could credibly argue that their interests are those

25  of the government.  In that instance, the question is, is

Page 212

1   the government's interest really coterminous with the public

2   interest in this case.  Let's consider the following

3   factors.

4           First, between 2008 and 2017, the Sackler's family

5   took approximately 11 billion out (sound glitch).  Of this

6   amount, 4 billion went straight to the federal government in

7   the form of taxes.  That makes the federal government not

8   only the biggest recipient of Sackler money in the last 13

9   years, but the transferee of an alleged fraudulent

10  conveyance.  Yet, the federal government has not once

11  offered to make this money available for opioid abatement

12  for victims of (sound glitch).

13          Second, the DOJ settled their civil differences

14  with the Sackler family in 2020 in return for a cash payment

15  of 225 million.  They received the money.  They refused to

16  agree that the money would be earmarked for opioid abatement

17  and compensation or in ERF.

18          Third, they settled their criminal claims against

19  Purdue in 2020 in return for 225 million and an unsecured

20  claim of 25 million.  Unlike every single other opioid

21  claimant in the case under the plan, the DOJ refused to

22  agree that their money would be used for abatement or victim

23  compensation.

24          Fourth, in 2007, in return they received -- they

25  settled their differences with Purdue in return for 634

Page 213

 1    million, none of which was earmarked for abatement or victim

 2    compensation, and Purdue's agreement to comply with the CIA

 3    for five years.  The terms of the CIA are publicly

 4    available.  To be clear, Purdue was required to maintain a

 5    reporting to the federal government.  During those five

 6    years, Purdue generated the most money they did and took out

 7    the most money out of Purdue during the 2008 to 2012 period.

 8         Yet, after all public and private companies, they

 9    were done with mediation, the federal government, through

10    its agency, entered to negotiate and demanded and took 25

11    million for personal injury claim and transferred that to

12    federal agencies.  The DOJ's settlement with Purdue contains

13    a clause (sound glitch) under certain conditions, one of

14    which will occur if the U.S. Trustee prevails in its appeal,

15    the DOJ (sound glitch) a $2 billion priority claim ahead of

16    all the other opioid claimants.

17         So again, not only if their appeal wins do the

18    claimants not get anything, but the DOJ takes all of it.

19    (sound glitch) negotiations of the ERF, the DOJ argued

20    vigorously against the ERF.  During the UCC's investigation

21    of the Sacklers, the DOJ refused to insert itself on the

22    claims (sound glitch) in any discovery dispute regarding the

23    documents uncovered in the DOJ's investigation.

24         In other words, when given the chance to help the

25    public by joining forces with the UCC and the (sound

Page 214

1    glitch), the DOJ didn't do anything.

2            And perhaps most egregiously, the U.S. Trustee

3    argues that the due process rights of PIs have been violated

4    because of the imposition of the non-consenting third-party

5    releases.  Unbelievably, the U.S. Trustee went out and tried

6    to recruit personal injury victims who will join their

7    brief; apparently, their first foray into speaking to

8    personal injury victims in this case.

9            Yet, nowhere in their papers did they explain the

10   reality that if they are successful in their appeal, it's

11   almost certain that every single one of the Debtors' 140,000

12   personal injury victims will receive close to zero, if not

13   zero, in their own litigation.

14           Fourth, the Official Committee contends the public

15   interest in this case overwhelmingly supports denying the

16   stay for the reasons of the irreparable harm that I

17   mentioned earlier, the overwhelming support of the voters,

18   the overwhelming support of the ad hoc group.

19           Indeed, I think it's fair to say that there's

20   never been a case where the public interest is so

21   overwhelmingly opposed to the (sound drops).

22           Your Honor, with that, I'd like to address the

23   proposal that you made about 15 minutes ago.

24           THE COURT:  Okay.

25           MR. PREIS:  If I understood your proposal earlier,

Page 215

1   Your Honor said that it'll be -- a condition to the

2   effective date is that it will be the earlier of January 7th

3   and the District Court ruling; is that correct?  Do I have

4   that right?

5            THE COURT:  Well, first, I have not -- this

6   proposal does not contemplate the entry of a stay.  What it

7   contemplates is the denial of the stay motions without

8   prejudice to the future right to bring them on the

9   conditions of the denial and that it lays out the

10  conditions.

11           And the first condition is, in fact, that the

12  appellees would agree that the effective date would not

13  occur until the District Court's ruling and January 7.

14           MR. PREIS:  So if I understand that correctly and

15  if the Debtors are not permitted to seek a sentencing

16  hearing earlier than January 7th, which was I believe

17  another condition, then it's possible if, as we all heard

18  Judge McMahon say that she -- you know, she has a trial

19  coming up on December 7th, and we kind of read between the

20  lines that Her Honor may rule before that.

21           Then between, let's call it December 7th and

22  January 7th -- now actually, it's really January 14th

23  because we can't go into (sound glitch) until seven days

24  after the criminal sentencing, you would be delaying (sound

25  glitch), but because by those terms.  Is that correct?  I

Page 216

1    want to understand if that's what you meant.

2            THE COURT:  Well, yes, correct.  And that's

3    primarily to give the movants the opportunity to renew their

4    motion.

5            MR. PREIS:  Again, (sound glitch) that will be 37

6    days -- I'm sorry -- 30 days, 37 because (crosstalk).

7            THE COURT:  Well, except that under Rule 8025,

8    unless Judge McMahon shortened it, there would be 14 days

9    added on to the December 7th date, so you'd be at December

10   21.

11           MR. PREIS:  Right.  Which is I think why in the

12   original proposal, we get offered December 20th, which I

13   understand was not December 21.  The only reason I'm raising

14   this is because part of our argument, the irreparable harm

15   (sound glitch).  And I know Mr. Kaminetzky said, you know,

16   being December 20th to December 30th is okay.  And then, you

17   know, there was some discussion about the holidays, so let's

18   move it to January 7.

19           In effect, we've now elongated almost more than

20   half a month before -- if it turns out that Judge McMahon

21   actually rules by December 7 and we're able to get a

22   sentencing hearing by December 20th, we will move their

23   effective date by 17 or 18 days at the very least.  And

24   again, from our perspective, every day matters.

25           THE COURT:  Well, except -- let me address that

Page 217

1    because, again, I fully accept that there is almost

2    immeasurable harm in not getting the plan distributions to

3    PI claimants and to the state and governmental entities for

4    the purpose of abatement, and the other entities, the Indian

5    tribes and the hospitals and the like.

6           But based on my understanding of the plan and Mr.

7    DelConte's testimony, the money wouldn't actually go to them

8    until sometime after the effective date and probably weeks

9    after the effective date.

10          So I think that the real issue where the balancing

11   of the harms comes into play or the real time comes into

12   play is where the movants would seek a stay after the

13   District Court's ruling, pending appeal to the Second

14   Circuit.

15          MR. PREIS:  I don't dispute your reading of Mr.

16   DelConte's declaration.  But isn't what all you've done is

17   just move the same period back (sound glitch).

18          THE COURT:  I did.  I moved it a week from the end

19   of the year to January 7th, and that's basically because --

20   or arguably two weeks from December 21 to January 7, and

21   that's basically because I have some concerns about imposing

22   a hearing date on Judge McMahon around New Year's Eve or

23   around the Christmas holiday, so that's the only reason.

24          And it didn't seem to me, given the testimony,

25   that the delivery of the distributions beyond the trusts

Page 218

1   would happen any slower because of that.

2          MR. PREIS:  I'm sorry, that wasn't my point.  I'm

3   sorry.

4          What I was trying to say is if all you've done is

5   move the initial distribution date back from December 21 to

6   January 14th or whatever it is, then that same period,

7   between the time the money first goes to the trust and the

8   money goes out, that same increment just gets added whenever

9   the money first goes out (sound glitch).

10          So that delay, that lag from the time the money

11   goes to the trust to the time it actually goes out, that

12   occurs no matter when the money (sound glitch) mid-January,

13   then you have a delay of (sound drops).

14          So the fact that there's -- you understand what

15   I'm saying or am I not making myself clear?

16          THE COURT:  No, I do.  I understand.  For example,

17   the 14 days for the states to deliver their final NOAT

18   allocation would start running from the effective date,

19   which would be those 14 days later.  I do see that.

20          MR. PREIS:  Yes, that was my point.  And that's

21   why when I said every day mattered, so it is actually by

22   moving everything back 17 days, it has a real effect.  So

23   anyways, that was my first point.

24          My second point is --

25          THE COURT:  Well, could I interrupt you for a

1    second?  I guess for mootness purposes, it doesn't really

2    help to change it to the distribution date, as opposed to

3    the effective date because the effective date is also the

4    date when you transfer it to the trusts and set up NewCo,

5    the benefit company.

6            So I'm thinking out loud, but I think you may have

7    offered a solution of just making it the distribution date,

8    but I don't think that works for mootness purposes.

9            MR. PREIS:  Yeah.

10           THE COURT:  Okay.

11           MR. PREIS:  The second point, and I know Mr.

12   Kaminetzky raised this, this idea of having to give public

13   notice of when the Debtors even request the notice.

14           THE COURT:  No, I understand.  I understand that

15   point.  I don't think that really helps very much in any

16   event.  I mean, the key thing is when the District Court

17   schedules it.

18           MR. PREIS:  Correct, yes.

19           THE COURT:  Right.

20           MR. PREIS:  Okay, that was it.  Okay, that was it,

21   Your Honor.  That's all I had.  Thank you.

22           THE COURT:  Okay.

23           MR. FOGELMAN:  Your Honor, may I briefly respond

24   to Mr. Preis's, frankly, outrageous accusations against the

25   government?

Page 220

1          THE COURT:  I think you have a right to do that,

2     Mr. Fogelman.

3          MR. FOGELMAN:  Your Honor, I just want to say

4     about everything Mr. Preis said was a mischaracterization or

5     just absolutely blatantly untrue.  That time, Your Honor, is

6     all entirely irrelevant as to whether a stay should be

7     granted.

8          And, you know, I'm happy to go into everything one

9     by one if Your Honor would like.  Again, I don't think any

10    of this is even relevant, but just to give one brief

11    example.  The government, you know, submitted a letter to

12    the Court at Mr. Preis's urging, when the government first

13    was in settlement negotiations with the Sacklers and Mr.

14    Preis raised the issue about providing those funds toward

15    abatement.

16         And we clearly explained to the Court on the

17    record that the government is constrained in how it can

18    respond by the Miscellaneous Receipts Act.  And that, in any

19    event, while we couldn't direct those monies towards an

20    abatement fund, you know, the largest recipients of civil

21    recoveries are federal health care agencies that provide

22    billions of dollars towards opioid use disorder treatment.

23         So for Mr. Arik to stand up there and make the

24    statements he made is absolutely outrageous, Your Honor, and

25    completely irrelevant.

Page 221

1            I'm not going to -- sorry.

2            THE COURT:  Anyway, I think it is largely

3     irrelevant.  The only way it is relevant or the remarks

4     about the role of the federal government in the case and in

5     history of prior settlement really goes to what the U.S.

6     Trustee's public interest argument is.

7            And in that sense, I think the U.S. Trustee has

8     been clear, in front of me at least, that it's not focusing

9     on anything other than its party in interest right as a

10    watchdog over the bankruptcy system, not on the other

11    interests of the federal government.

12           And on that point, Mr. Preis is basically just

13    saying that, you know, the watchdog is, in his view, barking

14    at the wrong person.  But I think we should just cut it off

15    at this point.

16           MR. FOGELMAN:  Thank you, Your Honor.

17           THE COURT:  Okay.  Should I hear from the ad hoc

18    group of states and other plaintiffs?

19           MR. WAGNER:  Yes, Your Honor.  Jonathan Wagner

20    from Kramer Levin Naftalis & Frankel, representing the ad

21    hoc committee of governmental and other contingent

22    litigation claimants.  Can you hear me?

23           THE COURT:  Yes.

24           MR. WAGNER:  I'll make some introductory remarks

25    and then address the issues of irreparable harm, balance of

Page 222

1    hardship, and public policy.  And I'll address a long-term

2    stay and short-term stay, and I'll try not to repeat the

3    arguments that have been made today.

4           It's important to remember that the committee

5    represents dozens of governmental agencies and entities.

6    And despite the handful of state objections and the U.S.

7    Trustee's objection, far more government entities support

8    the plan and oppose a stay than seek a stay; it's really far

9    more.

10          And there's a super-majority of states who support

11   the plan and 97 percent of the non-federal domestic

12   governmental entities who voted on the plan voted in favor

13   and there's a good reason for that and Your Honor has

14   recognized that in the confirmation decision.  The sooner

15   the money is allowed to be spent on abatement, the better

16   the citizens of those states and those supporting states and

17   local governments will be.

18          And despite suggestions to the contrary, the

19   dissenting states, their citizens will benefit as well.

20   They'll get their fair share of the monetary recovery, and

21   they'll get non-monetary benefits as well.

22          So let me now turn to irreparable harm, balance of

23   hardships, and public interest.  In terms of a long-term

24   stay, that issue has been addressed in Mr. Guard's

25   declaration, which Your Honor I know has read and read

Page 223

1   carefully, and it's been addressed in the other declarations

2   as well.

3            And just to sum up at Paragraph 16 of his

4   declaration, "The abatement plan is designed to save lives,

5   and any delay in funding the abatement plan will thwart that

6   critical goal."  And between now and June, there's close a

7   billion dollars that's supposed to be allocated with respect

8   to abatement.  That's a serious amount of money.

9            In terms of a short-term stay, I make three

10  points.  Most of the points on the short-term stay have been

11  made already, including with respect to equitable mootness -

12  - that's clearly off the table -- the mechanics of the

13  sentencing, and also the suggestion that somehow the Court

14  can cherry pick the settlement here and have it rejigger.

15  This was a settlement that was really a herculean task to

16  achieve, and it was carefully constructed and can't easily

17  be pulled apart.

18           The three points I want to make on the short-term

19  stay are as follows.  First, burden matters, and here the

20  burden is squarely on the movants, and they have not

21  satisfied their burden.

22           Second, a stay, even a short-term stay, creates a

23  cloud and to give one -- and an unnecessary cloud.  And just

24  to give one example, the committee has been interviewing

25  potential board members for the MDT, the NOAT, and for

Page 224

1    NewCo.  And I think it's not a stretch to say that the more

2    there's a delay in the effective date of the plan, the more

3    the candidates -- some of them are very prominent people --

4    may be reluctant to sign on.

5            And then the final point I want to make with

6    respect to the short-term stay is that the Court has to

7    exercise its equitable powers sparingly.  That's, in many

8    cases, just give you a couple, United States against Veres,

9    1989 U.S. District Lexis 7069 at *17, "A court should

10   exercise its equitable powers sparingly."  And the same

11   point is made in many bankruptcy cases, In re Rix 2015 B.R.

12   Lexis 3988 at *6.

13           And in light of the safeguards that have been

14   offered here, it would be an improper exercise of the

15   Court's equitable powers to grant a stay.

16           The last point I want to make, and I hope this

17   isn't a point that Your Honor has to address, is the bond.

18   I don't think Your Honor needs to get into the issue of

19   whether the U.S. Trustee needs to post a bond because the

20   states do.  And Your Honor made the point, citing the

21   advisory committee language and other opponents of the stay

22   have cited the cases, that made clear that the states can't

23   piggyback on any rules that might apply to the U.S. Trustee.

24           That's all I have, Your Honor, unless you have any

25   questions.

Page 225

1          THE COURT:  Okay.  Well, I guess -- look, what

2     I've been considering is not a stay, but an order denying

3     the motion on conditions, so that would obviate the need to

4     deal with a bond.  And, you know, I don't think that your

5     side of the issue would prefer a stay with a bond to that,

6     right?

7          MR. WAGNER:  Certainly not.

8          THE COURT:  Okay, all right.  Thank you.

9          MR. WAGNER:  Thank you.

10          THE COURT:  I'm also assuming, because I would

11     also, if I were to grant a stay, condition it on the ongoing

12     commitment as the appellants have already committed, to

13     pursue all appellant relief on an expedited basis.  But I'm

14     assuming they will continue to do that based on their

15     statements and their understand of the importance of

16     resolving these issues promptly.

17          MR. LIESEMER:  Your Honor, may I be heard very

18     briefly?

19          THE COURT:  Sure.

20          MR. LIESEMER:  Jeffrey Liesemer on behalf of the

21     MSGE Group.

22          Your Honor, when Judge McMahon ruled on the United

23     States Trustee's emergency motion for a stay before she

24     denied it without prejudice and she did so on the condition

25     that the appellees, which included the MSGE Group, enter

Page 226

1    into a stipulation saying that all of the preparatory

2    actions under the advance order are not a basis for invoking

3    equitable mootness.  She ordered the Debtors to impose a 14-

4    day advance notice requirement on any effective date, and

5    she also said that the appeals would proceed on a rocket

6    docket.

7              And on that basis with those guardrails in place,

8    Judge McMahon said that the U.S. Trustee's speculation about

9    the possibility of equitable mootness did not rise to the

10   level of irreparable harm, and I would submit that it's the

11   same today.  There really hasn't been any material change.

12   The movants haven't identified anything that changes the

13   situation from the time that Judge McMahon has ruled.

14             And in addition to that, we have the Debtor, who

15   has offered up even additional guardrails, and Your Honor is

16   now contemplating guardrails as well insofar as denying the

17   stay motions with conditions.

18             So no showing with respect to irreparable harm and

19   specifically equitable mootness has been made, and I think

20   the motions can be safety denied on that basis, subject to

21   the guardrails, which Judge McMahon found to be sufficient

22   as is.

23             With respect to a longer-term stay, we share Your

24   Honor's concerns that that would clash with Rule 8025 and

25   essentially read Rule 8025 out of the bankruptcy rules.  And

Page 227

1   so, therefore, if there were a stay in place if they did

2   make their showing, then it would have to be limited up

3   through the District Court's ruling.

4           And with respect to the other elements, with

5   respect to balance of harms and the public interest and the

6   bond in the event that there would be an unlimited stay to

7   allow the appellate avenues to be exhausted, we simply stand

8   on our papers and on Colin Jorgensen's declaration.

9           Your Honor understands the point as time

10  progresses, the financial and human toll increases, and that

11  puts a big weight against any stay.  And with respect to

12  public interest, there is public interest in settlements and

13  the finality of reorganizations and, above all, finding one

14  way to resolve this public health crisis.

15          So we join the other opponents in opposing any

16  stay pending appeal.  Thank you.

17          THE COURT:  Thank you.

18          MR. SHORE:  Your Honor, Chris Shore from White &

19  Case on behalf of the ad hoc group of individual victims.

20          I want to -- and I've been feverishly kind of

21  working on my notes to address what I think is the issue

22  here, both respect the long-term stay, short-term stay, and

23  the idea of a denial of motions with conditions.

24          Let me start here.  Look, we tried to address the

25  issue outside of Court with respect to essentially a denial

Page 228

1    of the stay without conditions.  The appellants refused, so

2    now we have two pending motions with two separate requests:

3    one is a pending motion for a stay through the District

4    Court decision plus 14 days, and another is a request from

5    the U.S. Trustee for a stay through all appeals.

6            I think you need to deny both of those on the

7    merits with findings and conclusion.  And you ask, why can't

8    I just do this simply if we prevail at the District Court on

9    the appeal, and we think we will -- we wouldn't be here

10   fighting this and have fought for the plan if we didn't

11   think we will -- there is going to be another hearing.

12   Whether that is in the end of December or the beginning of

13   January, someone's bringing a motion in front of Judge

14   McMahon for the big stay, the one that nobody can control,

15   which is the time between when the Second Circuit appeal

16   gets docketed and when the Second Circuit rules.

17           So there is a fact of a hearing coming up.  And as

18   one of the very creditor constituencies who isn't either

19   funded by taxpayers or by the estate, we simply can't have

20   10-hour hearings all the time on these subjects without

21   getting work-product which can be used in subsequent

22   hearings.

23           So my request is that we actually make use of the

24   evidentiary record that's here, not just throw this to Judge

25   McMahon to deal with with her busy docket and to have a

1    whole other hearing, evidentiary hearing, which she may not

2    even have the time for given the announcement of what her

3    schedule is.

4              So let me turn to the merits on why you should

5    deny the stay and what the specific findings I'm talking

6    about.  Let me just address very briefly the likelihood of

7    success because no one touched on this.  I'll only say this:

8    The order that was presented to you reflected what the

9    Debtors conceded, not what anybody else did.  We all became

10   appellants after that hearing, or at least we became

11   appellants after that hearing over the objection of the U.S.

12   Trustee and we all joined the argument.  So that's a

13   technical argument that you can get rid of.

14             I want to focus on only one event:  The day that

15   the Debtors are ready to consummate their plan but can't

16   because of some existing stay or the existence of some

17   conditions and how we protect the individuals, just the

18   individuals, from the harms accrue from that day forward.  I

19   think those harms accrue whether the stay is short or

20   whether the stay is long, and I want to address an issue

21   that Mr. Preis raised on that (sound glitch).

22             Let me start here.  You know that at the beginning

23   of the hearing that (sound glitch) rules are set up so that

24   (sound glitch) did this.  It's not, I don't think, because

25   the Bankruptcy Court is likely to agree or disagree that its

Page 230

1    own findings are subject to appeal or not, but rather

2    because the Bankruptcy Court is in the best position,

3    understanding who the parties are, what they're looking for,

4    what they're promising, and what the harms are in the event

5    there is or is not a stay.

6           So even if Judge McMahon were to rule before an

7    available exit and contemplate a further stay, this Court's

8    view of what (sound glitch) stay, that is a stay that would

9    exist through a Second Circuit ruling or a cert denial may

10   prove critical to her own analysis, which is likely have to

11   be conducted on a short notice brief period if and when that

12   (sound drops).

13          As to the harm calculus here, as we pointed out in

14   our objection, it's not a one-size-fit-all analysis.  Each

15   applicant must make its own case based upon its own harmed

16   balanced against the harms to the others and the public.

17          The U.S. Trustee is in a different position than

18   the states.  First, they allege no harms to themselves.

19   They have no economic (sound glitch) in the outcome of this

20   (sound drops).  Two, the U.S. Trustee's claim, I think as

21   part of the public interest prong, is that there's a

22   societal harm of the erosion of constitutional rights of

23   individuals who allegedly have direct claims against the

24   Sacklers, which are being released for no compensation.

25          I'm not going to repeat arguments I made at the

Page 231

 1    last hearing regarding this no compensation argument.  I'll

 2    just say that the intention is both counterfactual in light

 3    of the TEPs and inflammatory.  But their whole analysis

 4    centers on the harm to these hypothetical individual Sackler

 5    claimants.

 6            Now, as we pointed out in our objection, we

 7    represent probably the bulk of individuals who would

 8    otherwise have the right to bring claims against the

 9    Sacklers in light of the fact that 35,000 of our group

10    didn't vote on the plan and several hundred voted no.

11            But I think the U.S. Trustee misses the mark when

12    they attack our group for what seems to be a criticism that

13    we do not speak for every victim.  We have never purported

14    to speak for every victim.  We've only purported to speak

15    for our group, and we have spoken, sometimes in a loud

16    voice, on behalf of those who've authorized us.

17            In contrast, not one victim has authorized or come

18    forward in support of the U.S. Trustee's motion for a stay.

19    And the important part here is not the authorization piece;

20    it's the lack of identification of the individuals who may

21    be harmed and a quantification of that harm.

22            At the last hearing, Your Honor spoke directly to

23    the U.S. Trustee about trauma and what you viewed as the

24    narrow window that it provides for direct claims against

25    non-debtor fiduciaries and shareholders.  The time for them

Page 232

1    to come forward with proof of harm was now.  What followed

2    was not proof, but an attempt to cite to complaints that

3    allege claims squarely within (indiscernible) and Madoff.

4           There was a reference today to the Hartman

5    pleading, which they did not include.  I don't know how they

6    expect Your Honor to make the analysis that everyone of

7    these circuit court says is you need to look at the

8    substance of the claim, not the label, to determine whether

9    they are derivative claims or individual claims.  I've

10   reviewed the complaints.  They are all classic-looking

11   derivative claim.  You can't just say something is a

12   consumer rights claim when, in fact, it is just dressed up

13   as a breach of fiduciary duty claim by directors and

14   officers.

15          So this is a stay hearing where they are supposed

16   to come forward with evidence.  Just saying that someone has

17   alleged it in a complaint does not quantify the harm of

18   denying that.  There is no articulation -- these claims are

19   worth $30, these claims are worth $100, these claims are

20   worth a billion dollars.  There is none of that in the U.S.

21   Trustee's application.

22          So what we are left with on their application in

23   the harm calculus is on the one side, the constitutional

24   rights of unidentified individuals with unquantified claims

25   that are hypothetically, but not proven, to be non-

Page 233

1    derivative, all of which can be asserted and against and

2    recovered from the TADPs that will be funded by the

3    Sacklers.  That's what their harm is.

4           Balanced against that and what the remainder of my

5    analysis focuses on and the real harms of real individuals

6    that accrue the moment the Debtors are ready to consummate

7    the plan, which could be December 14th, it could be January

8    6th, whatever, were contemplating that they won't be able to

9    do that because there is a pending order of court, whether

10   written as a stay or a denial of a stay with conditions.

11          And let me pause here because people are just

12   getting it wrong with respect to the harms.  There are two

13   harm prongs and two things to be balanced.  The applicant on

14   a stay needs to prove irreparable harm to them.  They also

15   need to prove the lack of any harm to individuals.  It's

16   their burden.  And we're not talking about irreparable harm

17   because people aren't focusing on, and I think Your Honor

18   was alluding to it, what a bond means.

19          The bond is the source of recovery for people who

20   were harmed by the imposition of a stay.  None of these

21   applicants have come forward and said regardless of whether

22   there's a bond, you can feel free to sue me if I turn out to

23   be wrong and I lose on appeal after a three-month delay.

24   That's not how bonds work.

25          Now, as to the harm for the individuals, which

Page 234

1   need to be protected, some of those harms are mathematically

2   certain.  Under the plan, the personal injury victims don't

3   ride with the ups and downs of the Debtor.  We get a fixed

4   (sound drops).  Whether the plan is funded in December 2021,

5   January 2022, January 2023, or some other time, the fund and

6   this plan remains in place, the amount paid stays the same,

7   which means there is a certain loss of the time value of

8   money.

9           And to amplify what Mr. Preis said, with respect

10  to the individuals, once the trusts get funded, then the

11  notices -- remember, we had the hearing on the advanced

12  payments so that we can get the notices out immediately --

13  the notices go out.  In addition, all the expenses, the

14  frontloaded expenses of the trust, can get paid.  Then as

15  soon as someone gets a form, they can check a quick pay and

16  it can go back and we can start the distribution process.

17          So if the plan is delayed 14 days, the initiation

18  of that process starts 14 days later, the first payment that

19  goes out is 14 days after that.  So there is a demonstrable

20  harm in any stay of the effective date of the plan beyond

21  the date that the Debtors are ready to go forward.

22          There are also mathematically certain but

23  unquantifiable fees of just the cost of continuing in the

24  bankruptcy case.  The advantage of an effective date is

25  people can go pencils down with respect to issues that are

Page 235

1   ongoing in the case.  And again, we are not a state funded

2   or taxpayer funded, my participation in hearings like this

3   is just coming out of creditor recoveries.

4           I won't touch, because Mr. Preis did it so well,

5   the harm in delaying abatement funds.  But in a world in

6   which a stay is in place for only 14 days, the Debtors are

7   told cool it 14 days and 10 -- let's leave aside debts

8   payment -- 10 new injuries occur, who's paying for that?

9   Why is it the Debtors responsibility?  They wanted to start

10  the process of getting money out to people.  The applicants

11  came forward and said, hold your horses, I've got

12  hypothetical rights that need to be protected here in the

13  interest of (sound glitch) and 10 new injuries occurred, the

14  United States Trustee is not stepping forward and saying

15  don't worry, we'll take care of those people.

16          But the real risk here, and which nobody is

17  articulated and which I think Your Honor needs to tell to

18  Judge McMahon, is the risk to the deal.  Right?  Now let me

19  start -- I'm still trying to wrap my head around a public

20  use of the plea bonds, a little example, but the personal

21  injury victims are not holding a gun to anybody.  We have no

22  power over this situation.  And unless and until the Debtors

23  are ready to consummate this plan and the Sacklers are

24  willing to fund, we're not getting anything.  We can't

25  compel anybody to do anything.

Page 236

1           And as to the risks of harm, the Court has a

2     detailed exhaustive record of the difficulties they faced

3     getting to consensus in these cases, the hard fought triumph

4     of the deal coming together, especially for victims, through

5     direct cash payments and the use of essentially all but the

6     U.S. Government's money for abatement.

7           This Court, not the District Court or the Second

8     Circuit, is in the best position to understand and

9     articulate the risks to Debtors, that it should articulate I

10    believe in findings and conclusions, when their effective

11    date gets stayed.

12          And the risk is what happens if something stops

13    the effective date of the plan.  First, if this deal were to

14    fall apart prior to an affirmance, right?  We get in a

15    situation where someone delivers a termination of the deal,

16    right, and then we find out we were right all along.  And

17    were this case to liquidate, there's unopposed evidence that

18    everybody gets nothing.  The liquidation analysis results in

19    a zero for individuals.

20          That's not hypothetical.  Remember Mr. Preis said

21    to you with respect to the super-priority admin claim, the

22    U.S. Government has not committed that in the event that the

23    confirmation is -- or sorry -- the plan does not go

24    effective, they won't set forth their super-priority

25    administrative claim.  In other words, there is a real

Page 237

1    possibility if this deal doesn't get to closure that all of

2    the money goes to the United States.  Does anybody really

3    want to be responsible for that?

4            The Court's also in a unique position to

5    understand what basis what a big case like this puts forward

6    in terms of harms, the potential harms, to a deal in an

7    uncertain period.  First, plans face market risks.  During

8    this case, the Dow had its second biggest percentage drop

9    ever.  Is anybody really committing that if the Dow goes up

10   30 percent that we're all going to let the Sacklers walk

11   away with that additional bounty, or if the Dow goes down 30

12   percent, the Sacklers are still going to be willing and able

13   to fund?

14           Plans face regulatory risk, right.  I mean, those

15   risks in all fields that occurred or what they're talking

16   about there, let's get the Sacklers out of jail for free

17   deal, regulations change and what was possible at one point

18   in time may not be possible later.  Again, is that really

19   going to happen between December 14th and January 7th?

20   Probably not, though not certain.  But if we're talking

21   about informing Judge McMahon of what could happen between

22   January and August, that matters.

23           Plans face legislative risks.  Nobody here, by the

24   way, none of the appellants here is committing that they

25   would not be pursuing any legislation that could have an

Page 238

1    impact on this case.

2           Plans face political risk, especially in this case

3    in which half the creditor body are elected officials.  The

4    notions that come or others will all stay in the deal as

5    their political landscape changes is not certain.

6           And as Your Honor noted during the confirmation

7    hearing, this settlement is around a shifting landscape of

8    judicial precedent that exists, all of which at any given

9    time will empower somebody who cut the deal to say they got

10   a bad deal and somebody else to say they got a good deal.

11          Obviously, the risks increase over time.  But

12   nobody is promising anything if they are wrong in the law

13   and it takes long enough for us to prove that to the

14   Appellate Court that the plan falls apart and we have to

15   start over.  Nobody is assuring that a plan which is

16   consummatable on December 14 will still be consummatable on

17   January 14th.

18          So how does this play out?  Again, I think the

19   U.S. Trustee, given their role, statutory role, and the

20   absence of any direct harm to them and the fact that they're

21   purporting to speak on behalf of individuals and have yet to

22   articulate who they're speaking for, what their claims are,

23   and what they're worth should have their application denied

24   on the merits with prejudice right now with specific

25   findings about their lack of proof, with one caveat.

Page 239

1        They've taken the position that they have zero

2    responsibility to post the bond.  I don't need to get into

3    that argument at this late date.  They have zero economic

4    responsibility if they're right.

5        So deny their motion.  But they can be clear,

6    nothing prevents the U.S. Trustee from piggybacking off a

7    stay that is awarded to some other party, and nothing

8    prevents the U.S. Trustee from volunteering to post a bond

9    to protect for a month.

10        So what does a bond look like with respect to the

11    other applicants?  I don't think any stay is necessary.  I

12    think a denial of the stay with conditions isn't necessary.

13    But we have no objection to this Court giving Judge McMahon

14    until January 7th to rule.

15        But if the Debtors are ready to consummate before

16    January 7th, they should provide a notice, everybody, 14

17    days that we're ready to consummate.  And that will give the

18    applicants the opportunity to post a bond in that window if

19    they want to have a stay or they can go to Judge McMahon if

20    they're riding on her stay, that is your stay is requiring

21    and she still hasn't ruled, that gives them an opportunity

22    to raise that with (sound drops).

23        Even with respect to this short bump, right.

24    That's our only source of recovery for both catastrophe and

25    the mathematically certain funds that accrue.  We shouldn't

1    equate an opportunity for a meaningful appellate review with

2    a free opportunity for appellate review.  And I tend to that

3    that if and when the states are forced into a position of

4    having to post a bond, they'll think long and hard about

5    their pursuit of further appellate relief beyond Judge

6    McMahon.

7            To form an amount, I'm not -- I can't quite figure

8    out how best to create the right dynamic for that.  But it

9    seems to me that if the Court set a per diem or a bond for

10   the period between the time the Debtors are ready to rule

11   and when Judge McMahon are ready to exit and when Judge

12   McMahon rules, that will precipitate a discussion with Judge

13   McMahon about when she is able to rule.  And it will allow a

14   ready calculation.  If she says I can't do it by the 7th, I

15   can do it by January 30th, that's 23 days of per diem

16   (indiscernible).  And I tend to think, as I said, that

17   sparks a conversation about how this is going to proceed

18   forward.

19           As to the larger bond, I guess if Your Honor is

20   not contemplating extending beyond the time that's necessary

21   for her to rule, it still, as I said, provides context if

22   you were to provide findings and conclusions that there are

23   real harms, demonstrable harms, and the manifest risk of

24   catastrophic harms that need to be protected with a bond.

25   Again, subject to upward or downward revision by Judge

Page 241

1   McMahon and subject to what other parties use.  But we're

2   talking about (indiscernible) in the hundreds of millions of

3   dollars or billions.  Because if the risk were to manifest

4   itself, something comes out that causes somebody to walk

5   away from this deal and we end up in a liquidation scenario,

6   nobody wants to wear the risk of having stopped a plan which

7   would have provided (indiscernible) to people and that

8   turned out to be legal, but nonetheless was frustrated

9   because there was an open-ended stay in place.

10          Not one of the states has come forward and say

11  they didn't have the wherewithal to post a bond.  And again,

12  a bond only sets the outside amount of the damages which get

13  compensated.  If it turns out that they have to post a $500

14  million bond and only a million dollars is proven to be the

15  actual damages, so be it.  Then only a million dollars gets

16  compensated out of that.  But we don't set a bond based upon

17  a hope that the debtors will be able to consummate in this

18  fixed 12-month window that the Second Circuit is going to

19  need to be able to issue what we all hope will be a ruling

20  which sets forth in chapter and verse exactly what the rules

21  are with respect to non-debtor reliefs.

22          The last point on these conditions.  Conditions

23  run both ways.  And this is why I think that the denial with

24  conditions on the Debtor which you are raising now is a bit

25  fraught.  Conditions run both ways, right?  The appellants

Page 242

1   here will be taking an opportunity of having an additional

2   14 days to do whatever they're going to do.  Are they

3   allowed to legislate in that period?  Are they allowed to

4   exercise their police powers in that period?  Are they, as

5   Mr. Kaminetzky hinted to, able to stand in front of the

6   district court in New Jersey and argue that the Court should

7   adjourn that hearing?  Right?  Which would be the setup date

8   for how this goes forward.  Are they required to commit to

9   move quickly as well?  Are they free to argue in front of

10  the Second Circuit that they really need 90 days to file a

11  (indiscernible).

12          I just think lifting it and saying a denial with

13  conditions opens up a whole debate about what they're

14  allowed to do that I think (indiscernible) with a denial of

15  these motions on the merits or -- or if they want a stay, a

16  stay with an interim bond requirement, that is a shot bond

17  requirement and an understanding going forward of what that

18  stay -- that bond is going to look like if we are getting a

19  ruling, you know, at the end of December or the beginning of

20  January.

21          THE COURT:  Okay.

22          MR. SHORE:  And other than that unless Your Honor

23  has any questions, that's all I have.

24          THE COURT:  Okay.

25          MR. ISRAEL:  Good afternoon, Your Honor.  Harold

Page 243

1   Israel on behalf of the NAS Committee.  May I be heard very

2   briefly?

3           THE COURT:  Sure.

4           MR. ISRAEL:  Thank you, Your Honor.  The NAS

5   Committee, another entity that is not funded by the

6   taxpayers, represents the most innocent victims of the

7   opioid crisis, the NAS children, will focus its argument

8   exclusively on the irreparable harm and the public interest

9   in light of Mr. Shore and Mr. Preis' arguments which they

10  adopt.

11          The appellants in this case have made clear that

12  they will go to the ends of the earth to prevent the plan

13  from becoming effective.  In the meantime, the opioid crisis

14  rages across the country.

15          A stay will mean, ironically, that the Sacklers

16  will retain all of their money, except of course what they

17  have to pay the professionals, while compensation to the NAS

18  children and the other personal injury victims will be

19  delayed indefinitely if not forever.  There will also be a

20  delay of billions of dollars of abatement funds that would

21  otherwise be used to combat the opioid crisis and a delay in

22  making vital documents available to the public through the

23  document repository.

24          For what reason?  So that the appellants can exact

25  vengeance on the Sacklers without any regard to whether

1   there will be any corresponding benefit to the personal

2   injury victims, including the NAS children, of the opioid

3   crisis.

4           To be clear, the NAS Committee had hoped for a far

5   larger settlement.  However, the plan, including the

6   settlement and the third-party releases and the

7   corresponding public interest must be viewed in reality.

8   The NAS class voted overwhelmingly in favor of the plan, and

9   Kara Trainor, a parent of an NAS child, outlined in great

10  detail in her declaration why she supports the plan,

11  notwithstanding her personal situation.  The appellants

12  ignore this massive support of both the voters and Ms.

13  Trainor in their pleadings.

14          Simply put, a stay of the confirmation order

15  delays implementation of what could be lifesaving programs

16  for opioid victims, current and future, and compensation for

17  some of the neediest people in the country.  For what?  So

18  perhaps the U.S. Government can get an additional $2 billion

19  at the expense of all other claimants, a result worse than

20  the tobacco litigation?  Or so three states or five states

21  can make life miserable for the Sacklers by litigating

22  against them for the foreseeable future, resulting in no

23  compensation to the NAS children and the other opioid use

24  victims and allowing the Sacklers to retain billions of

25  dollars that would otherwise go for abatement?  Who wins in

Page 245

1      this case?

2           Vengeance is not a purpose of the Bankruptcy Code

3      and will not compensate the NAS children or the other opioid

4      victims, will not fund research and other abatement

5      strategies, will not make millions of opioid-related

6      research documents available to the public domain.  It will,

7      however, allow the Sacklers to retain more of their wealth

8      than they would under the plan.  It cannot be said that such

9      a result is in the public interest.  Thank you, Your Honor.

10          THE COURT:  Okay, thank you.

11          I don't know if any other objectant wants to

12     speak.  I forgot to ask Mr. Kaminetzky if he could update me

13     on the termination right that was addressed in the pleadings

14     and in Mr. Gold's argument.

15          It seems to me that, at least with respect to the

16     type of relief I am contemplating, it's highly unlikely that

17     that termination right would be exercised.  But I'd like

18     your thoughts on where it stands, whether it's been waived

19     through the date that you've proposed and the like.

20          MR. KAMINETZKY:  Apologies, Your Honor, for that

21     dramatic camera movement.

22          The answer is I don't -- we have not had that

23     discussion.  Maybe you should ask the Sackler.  This is

24     something that was heavily negotiated and it's in there,

25     it's part of the agreement.  I would suspect that it won't

1  be a problem given the short term that we're talking about.

2  But kind of following up, I mean, it's in there, and it's

3  their right to waive it or not.

4          Unlike the previous way that we talked about

5  before when it came to the direct certification, I don't

6  have an answer sitting here whether or not they'd waive, but

7  I certainly hope that they would.

8          Maybe it's time to mention just to underscore --

9  and maybe this is the appropriate time in the changing

10  landscape.  During this hearing, actually, the Oklahoma

11  Supreme Court reversed the J&J judgment, saying that public

12  nuisance statute doesn't apply in this are to legally-

13  manufactured products.  And this comes on the heels of the

14  California decision earlier this week going the same way.

15          But let me just leave it at that.  And, you know,

16  I assume you could direct this to the Sacklers.

17          THE COURT:  Okay.  Well, do I have the two sides

18  of the Sacklers' counsel on the call?

19          MR. UZZI:  Your Honor, it's Gerard Uzzi of

20  Millbank on behalf of the Raymond Sackler Family.

21          THE COURT:  Afternoon.

22          MR. UZZI:  As it relates to -- go ahead, Your

23  Honor, I'm sorry.

24          THE COURT:  I was going to say, first of all, I'm

25  not sure whether the denial of these motions as I've posited

Page 247

1    it would trigger the termination right.  But assuming it

2    did, would that brief extension be something that your

3    clients would be prepared to assert as a termination right?

4              MR. UZZI:  Well, Your Honor, just before I get to

5    that, just to check a box.  As it relates to what Mr.

6    Kaminetzky raised on the issue of certification, that has

7    been waive.  I think, frankly, we had formally memorialized

8    it (indiscernible).

9              THE COURT:  Right.

10              MR. UZZI:  As it relates to -- I think the

11    termination right you're referring to now is that three

12    months after confirmation date -- there has not been a

13    request made of our clients to waive that.  So I'm not in a

14    position today to say (indiscernible) specifically on that

15    issue.  And right now we are anticipating at least that the

16    court is going to rule before then, the district court is

17    going to rule before that time.

18              Your Honor, I don't want to speculate as to if and

19    when I do consult with my client as to what they'll say

20    other than to say we've come this far, Your Honor.  There is

21    certainly not a desire to abandon this at this point.

22              THE COURT:  Okay, thank you.

23              Ms. Monaghan, I know you represent the other side

24    of the Sackler family.

25              MS. MONAGHAN:  Correct, Your Honor.  On behalf of

Page 248

1    the so-called Side A of the family, we are in the same

2    position as Mr. Uzzi is in that no request was made of us

3    for a waiver.  That said, we're not looking to walk away

4    from the settlement in any regard.  I just haven't actually

5    gotten instruction from my clients on the questions they

6    have put to us.

7              THE COURT:  Okay, thanks.  Okay.  I said that I

8    would be willing to hear a brief rebuttal, but I really want

9    this to be very brief, not a rehash of arguments that have

10   previously been made, if anyone wants to speak in rebuttal.

11             MS. LEVINE:  Your Honor, this is Beth Levine.  My

12   computer is going very slowly right now, so hopefully we'll

13   get video in a second.  I did just want to speak briefly.  I

14   will try not to repeat anything.  I wanted to address a

15   couple of things that have been raised that I think are

16   inaccurate.

17             You know, there was a suggestion that it is

18   somehow improper for us to seek a hearing because while we

19   tried to negotiate a consensual resolution, it didn't work.

20   And we did as part of that effort suggest why don't you give

21   us -- you know, if you've got a list of things you have

22   exempted from the stay, tells what they are.  And, you know,

23   it didn't work.

24             THE COURT:  I am not blaming either side for the

25   fact of this hearing.  I had the opportunity after the

Page 249

1    appellees sent me an email requesting a chambers conference

2    to meet and see if a settlement could be obtained.  And I

3    just concluded it was of more benefit to have a full record.

4          MS. LEVINE:  Thank you, Your Honor.  There were

5    suggestions or allegations that the United States Trustee is

6    taking the position it's taking because it's trying to get

7    the, you know, $2 billion.  And that is just an absolutely

8    baseless allegation.  I think if Your Honor wanted to hear

9    more about that, Mr. Fogelman could address it.  But I think

10   it's enough to say that that's baseless.  We've taken this

11   position on the non-debtor releases the whole time.  It's

12   not just some way to try and get back that money.

13         With respect to the United States Trustee's role,

14   I think you've recognized in your comment that, you know, we

15   are not representing the government in its creditor role,

16   but we are representing the government in the government

17   interests.  We obviously have a disagreement on where the

18   public interest is.  You know, we've talked about the harm.

19   I don't want to repeat myself but, you know, we don't

20   represent individual victims, White & Case doesn't represent

21   individual victims.  They've acknowledged they don't

22   represent anyone.  There are individuals who have come

23   forward and objected.  There have been over 200,000 people

24   who voted no.  So we've cited some of those examples.  Ms.

25   Isaacs, for example, Mr. Hartman.  And we did include the

Page 250

1   complaints in our request for judicial notice, including Mr.

2   Hartman's complaint.

3          With respect to the suggestion that we might

4   voluntarily post a bond, we don't have the authority to do

5   that, so we think that's just not a factor to be considered.

6          THE COURT:  Well, I would consider it in the sense

7   of it's a factor to consider in balancing the harms.  Not as

8   something that I could require, but the absence of one may

9   make it harder to balance the harms in your client's favor.

10         MS. LEVINE:  I do think it's interesting with

11  respect to this question of the termination right.  There

12  are two questions.  One is just as a factual matter; my

13  understanding is that termination right doesn't come into

14  play if there has been a delay because of licensing delays.

15  And we don't know what the status is, but we think it's

16  interesting that the Debtor's proposed the stipulation

17  without checking on that.  But we don't think, as we put in

18  our papers, that that is likely to happen.  And it does not

19  sound like it is based on what's been said here today.

20         Lastly, you know, obviously we are here on our

21  motion.  We're asking for a stay at least until the district

22  court's decision.  But with respect to the order it sounds

23  like you are considering, you made a comment that I wanted

24  to clarify, which is whether you're suggesting you would

25  enter or include in your order a limit on the ability to

Page 251

1   seek a stay from the district court.

2           THE COURT:  No, I don't remember saying that.

3           MS. LEVINE:  Okay.  Then I may just have not heard

4   that correctly.

5           THE COURT:  It's just the opposite.  You would

6   have the ability to seek a stay from the district court

7   after you get the notice.

8           MS. LEVINE:  Your Honor, it's been a long day.  I

9   don't want to repeat what we've said.  Obviously we disagree

10  with a lot of what the stay movants had said, but we will at

11  this point stand on our papers and I will cede the floor to

12  any other movants who had something to add.

13          THE COURT:  Okay.

14          MR. EDMUNDS:  Your Honor, if I may just for less

15  than a minute.  Brian Edmunds for the State of Maryland.  I

16  would just point out some of the overarching themes that

17  have been presented to you, that we are a state and we are

18  charged with protecting our public and believe that we are

19  doing that in appealing.  And I think that some of the

20  arguments that would give to us the status of essentially a

21  private creditor are what requires us to appeal.  I think

22  that it's our job, and we do this, to protect.  And we are

23  spending money now on the opioid crisis on trying to abate

24  it.  And I think that our -- I think it's important to

25  remember that and recognize that, that we wouldn't be doing

Page 252

1    this and pursuing an appeal if we didn't think that we were

2    serving the public.  And that's all I have, Your Honor.

3              THE COURT:  Okay.

4              MR. GOLD:  Your Honor, Matthew Gold, Kleinberg

5    Kaplan.  Can you hear me?

6              THE COURT:  Yes.

7               MR. GOLD:  Thank you.  Your Honor, I too will be

8    very brief.  First, I just want to note that the argument

9    that Mr. Preis made, and we've heard this several times

10   about how criminal liability is not being affected by this,

11   is a total red herring.  No one has ever contended the

12   criminal liability was implicated by this, but that's not at

13   all the point.  The states have a significant statutory

14   scheme that involves both criminal and civil penalties for

15   which to go against wrongdoers.  And among other things,

16   there are different burdens of proof.  And that's why the

17   states have both criminal and civil laws that play in this

18   area.

19              And it's not for Mr. Preis or the Debtors to say

20   you have your criminal remedies, that's enough, you don't

21   need those other ones, in the first instance.  And secondly,

22   for us to be pointing out that the result of this settlement

23   and this plan is to give the Sacklers complete immunity of

24   their opioid-related obligations on the civil side does not

25   mean that we're implying that it has anything to do with the

Page 253

1    criminal liability.  And it's valuable enough that the

2    Sacklers have been insisting on it.  So I think that's just

3    simply a matter of misdirection.

4              Second, I just want to note Mr. Shore, after

5    making a statement about how we needed to not engage in

6    speculation and to needed concrete matters, engaged in a 10

7    to 15-minute series of speculations and hypotheticals about

8    various risks without evidence about them occurring, but

9    simply as speculation that this might happen and that might

10   happen as risks involved of Court's resolution.  We submit

11   that those are not germane for these purposes and have no

12   demonstrated basis other than just speculation.

13             Third, I just want to note that this morning, I

14   stated for the record, and not for the first time, that

15   states are extremely willing to try to find a way to

16   mitigate the harms to parties and allow the appeals to

17   proceed.  I heard not a whisper, complete crickets from all

18   the objecting parties with respect to engaging with us on

19   that point.  And we can't do it by ourselves.

20             THE COURT:  I know you can't do it by yourself,

21   but you can't do it without Maryland and the U.S. Trustee,

22   too.  And they're not willing to do that.  So, I mean, it's

23   good for your two clients, but it would be a waste of time

24   if they are not prepared to do it.  And I took away from

25   their candid comments that they aren't.

Page 254

1           MR. GOLD:  Okay.  We will review the issue with

2      them, Your Honor.

3           THE COURT:  Okay.

4           MR. GOLD:  Thank you for that comment.

5           THE COURT:  If they were, that would be great.

6      But that's not the record before me.

7           MR. GOLD:  Okay.  Thank you, Your Honor.  I have

8      no further comments.

9           THE COURT:  Okay.  All right.  I have before me

10     three motions for a stay pending appeal, a first day motion

11     by the United States Trustee for a stay pending appeal of

12     two orders, the Court's order confirming the Twelfth Amended

13     Chapter 11 Plan in these cases, and secondly, the Court's

14     so-called Advance Order permitting the Debtors to take

15     certain procedural steps and spend a relatively modest

16     amount of money to be more ready to effectuate the

17     transaction under the plan if and when the effective date

18     occurs.

19          The other two motions are first by the states of

20     Washington and Connecticut, and second by the State of

21     Maryland, which seek a stay pending appeal over the

22     confirmation order.

23          Three other appellants have joined in one or the

24     other of those motions, and in respect of one of them have

25     supplemented the joinder to some extent.  So Mr. Bass has

1   joined in the other motions, although it is clear to me both

2   from his filing and his remarks today that his focus really

3   was not on a stay pending appeal of the confirmation order -

4   - he hasn't joined in or appealed the advance order -- but

5   rather to have the briefing schedule and hearing schedule

6   with respect to his appeal delayed by the district court.

7   And I have explained to him that that really is a decision

8   for the district court to make.

9           I also have a motion and a joinder by certain

10  Canadian Creditors, Municipality, and First Nations

11  Claimants that has joined in the other motions, although I

12  don't believe that they have appealed the advance order.

13  And that they primarily focus, if not exclusively focus on

14  the issues raised by the states.  And I have Ms. Isaacs'

15  motion, which literally adopts the State of Washington and

16  the State of California -- I'm sorry, the State of

17  Connecticut's motion.

18          When I address the State of Washington and the

19  State of Connecticut's motion, I will also be addressing,

20  therefore, Ms. Isaacs' motion.  And similarly, when I

21  address the first three motions that I mentioned, I will be

22  addressing the Canadian claimants' motion except when I

23  briefly address their unique issues on the prong in the

24  standard for evaluating motions for a stay pending appeal,

25  focusing on the need for a strong showing that the movant is

Page 256

1    likely to succeed on the merits of the appeal.

2            The movants have the burden of proof with respect

3    to their motions for the stay pending appeal, and that has

4    been characterized as a heavy one.  And the grant of a stay

5    pending appeal has been characterized as extraordinary

6    relief.  See In re General Motors Corp., 409 B.R. 24 (Bankr.

7    S.D.N.Y. 2009 with regard to the first point, and In re

8    Sabine Oil & Gas Corporation, 551 B.R. 132, 142 (Bankr.

9    S.D.N.Y 2016) on the second point.

10            The grant of a stay pending appeal is an exercise

11    of judicial discretion dependent on the circumstances of a

12    particular case, id Sabine Oil, 548 B.R. 681 and In re

13    General Motors, 409 B.R. 30.  They are, again, treated as an

14    exception, not the rule, and are granted only in limited

15    circumstances, In re Brown, 2020 WL 3264057, at *5 (Bankr.

16    S.D.N.Y. June 10, 2020).

17            To satisfy its burden to obtain a stay pending

18    appeal, the movant needs to establish a proper balance in

19    its favor of the following four factors; whether the movant

20    has made a strong showing that it is likely to succeed on

21    the merits, whether the movant will be irreparably injured

22    absent a stay, whether a stay will substantially injure the

23    other parties interested in the proceeding, sometimes

24    referred to as the assessment of the balance of harms, and

25    four, where the public interest lies.  See Nken v. Holder,

Page 257

1   556 U.S. 418, 434 (2009) and Kelly v. Honeywell Int'l, Inc.,

2   933 F.3d 173, 188-184 (2d Cir. 2019).

3          The Honeywell case is an important gloss on the

4   first factor requiring a strong showing that the movant is

5   likely to succeed on the merits of the underlying appeal by

6   its focus on the need for that showing to show a fair ground

7   for litigation.  A number of courts have phrased this as a

8   showing regarding the success on appeal somewhere between

9   possible and probable.  Again, see Brown, 2020 WL 3264057 *7

10  and Sabine Oil, 548 B.R. 683, 684, which also notes in Judge

11  Chapman's opinion that the probability of success that must

12  be demonstrated can be viewed as inversely proportional to

13  the amount of irreparable injury that the movant will suffer

14  absent of the stay.  In other words, more of one excuse is

15  less of the other, id at 684.

16          I will briefly address the first prong, which,

17  along with the prong of a showing of irreparable harm, are

18  the two factors that are viewed as most critical in the

19  analysis, Nken v. Holder, 556 U.S. 434.  See also Uniformed

20  Fire Officers Association v. De Blasio, 973 F.3d 41-48 (2d

21  Cir. 2020).

22          This analysis of the merits by the court that

23  issued the order upon which the appeal is based is one that

24  places that court in the position of looking at its ruling

25  objectively as one would from the outside to see whether

Page 258

1    there are fair grounds for litigation of the appeal.  And

2    depending on the strength, or lack thereof, of a showing of

3    irreparable harm, perhaps more than that to warrant a stay.

4         Obviously the Court's determination of the issues

5    before it that are the subject of the movants' appeals was

6    carefully undertaken by me after a lengthy trial and set

7    forth in a 155-page written memorandum of decision.  The

8    issues on appeal I believe do not all warrant a finding of a

9    strong showing likely to succeed on the merits or of likely

10   success on the merits somewhere between possible and

11   probable.  Again, recognizing the sliding scale for this --

12   for purposes of this stay pending appeal determination.

13        Certain of the issues raised I believe are clear

14   under applicable Second Circuit law and a real stretch by

15   the appellants.  Those include the so-called due process

16   argument, the so-called 524(e) argument, the analysis of the

17   merits of the settlement, and the argument that the Second

18   Circuit should change its law from how it is currently

19   articulated.

20        As far as the due process argument is concerned,

21   the United States Trustee has argued that the plan, with its

22   injunction of certain third-party direct claims against the

23   released parties, violates the due process clause by taking

24   those claims without the right to a hearing and a trial,

25   citing and relying on large measure upon Ortiz v. Fibreboard

1    Corp., 527 U.S. 815 (1999).

2              As far as the notice point is concerned, I made

3    extensive factual findings as to the notice that was

4    provided and was received by those who are creditors of the

5    Debtors.  I will note my view that the plan itself and the

6    underlying claims that have been identified by the U.S.

7    Trustee apply to release or enjoin direct third-party claims

8    that overlap with in a highly meaningful way claims of the

9    Debtors or against the Debtors.  And therefore, such notice

10   would be sufficient.  I will note further that there is no

11   absolute right to a trial beyond the trial that the court

12   held as to the bona fides of the settlement with its right

13   to object, which was preceded by a right to vote on the plan

14   and to object to the plan generally, including the

15   classification scheme set forth in the plan.

16             That scheme and the right to vote and the review

17   by the bankruptcy court clearly distinguishes the bankruptcy

18   process as recognized by the Second Circuit that would

19   encompass certain types of releases of third-party claims

20   from the fact pattern and concerns raised by the Supreme

21   Court in Ortiz, where there was a concern that those that

22   would be bound by a non-opt-out settlement were not

23   adequately represented because of conflicts of interest,

24   where there was no vote, and no plan process including the

25   right to object to classification and voting, and ultimately

Page 260

1    the court's review of the proposed settlement in that

2    context.

3              The Supreme Court largely recognized this fact in

4    Ortiz itself, recognizing that its general view as to due

5    process was qualified by a special remedial scheme, quoting

6    Martin v. Wilks, 490 U.S. 755, 762, Note 2 (1989), which

7    specifically referenced the bankruptcy legislative scheme.

8              I believe the bench ruling sufficiently dealt with

9    the inapplicability of the 524(e) argument, including citing

10   well-reasoned opinions by other circuit courts on it.

11             As a factual matter, I will note that the U.S.

12   Trustee took no discovery in connection with the

13   confirmation hearing or generally in the case as a whole and

14   largely played the role of a kibitzer on the evidence during

15   the trial, offering no witnesses of its own.  And to the

16   extent it does, or the U.S. Trustee does object to the

17   analysis of the merits of the settlement, I find it highly

18   unlikely that that analysis would prevail on appeal.

19             As far as the moving states' arguments on the

20   merits that overlap with the ones that I just raised, I

21   won't address them again.  But I will note that I believe I

22   comprehensively dealt with their classification arguments

23   and their voting arguments and that the evidence in my

24   analysis of recoveries under 1129(a)(7) clearly establishes

25   that the plan would satisfy the best interest test even if

Page 261

1    one considered the rights that they were being required to

2    give up to pursue third-party claims against the released

3    parties, although that was an alternative holding.

4           The U.S. Trustee's and the states' other

5    arguments, however, I believe if there was a strong showing

6    of irreparable harm, would satisfy the first prong of their

7    burden of proof.  The U.S. Trustee is clearly wrong that

8    personal injury claimants and other creditors are receiving

9    nothing on account of their third-party claims against the

10   released parties.  It is clear that it is the settlement of

11   those third-party claims that enables the entire plan and

12   the distributions under the plan, without which they would

13   receive in my view as I found based on the analysis of the

14   evidence, including the rights of the United States in the

15   DOJ settlement to a super-priority claim and the limited

16   recoveries that they would have in the free-for-all

17   litigation that would ensue, literally no recovery.

18          The plan treats personal injury claims as

19   receiving a distribution based on the liquidation of the

20   underlying claim against the Debtor.  That does not mean

21   that the personal injury claimants are not receiving value

22   on account of their third-party claims, but it reflects I

23   believe that their third-party claims are overlapping, and

24   though entitling them perhaps to a direct recover as opposed

25   to a recovery through the Debtor, viewed as derivative

Page 262

1    claims under the analysis by the circuit in the Tronox case

2    as well as by other courts that have distinguished claims

3    that may be direct but are asserted because of harm to all

4    of a debtor's creditors as opposed to individual creditors

5    as discussed in the Tronox case, which is referenced and

6    discussed at some length in my opinion.  See also the

7    discussion in Deutsche Oel & Gas S.A. v. Energy Capital

8    Partners Mezzanine Opportunities Fund A, LP, U.S. Dist.

9    LEXIS 181000 (S.D.N.Y. September 20, 2020), and In re CIL

10   Limited, 2018 Bankr. LEXIS 354 (Bankr. S.D.N.Y. February 9,

11   2018).

12           As I also noted in the memorandum in support of

13   the order, the circuit has now made it clear,

14   notwithstanding the citation by the U.S. Trustee of Johns

15   Manville Corp. v. Chubb Indemnity Insurance Company, 606

16   F.2d 135, 153-154 (2d. Cir. 2010), that the evaluation is

17   only in respect of in rem claims.  As stated and discussed

18   at length in the Quigley case, the Court's power extends to

19   in personam claims as long as the factors laid out by the

20   Circuit are satisfied after a searching inquiry by the

21   Court.

22           However, those factors have been the subject of

23   different analyses over the years as to what is properly

24   subject to an injunction of a direct third-party claim.  And

25   I believe that it is that issue, i.e. how those claims are

Page 263

1    cabined between the clear instance where they should not be

2    enjoined as discussed in the Manville III opinion, and where

3    they should be.

4              I have tried to narrow those so that it does

5    reflect in the plan that such claims are only those where

6    there is a substantial or an entire overlap.  And I believe

7    that the factual record of the claims that the U.S. Trustee

8    purports to be protecting reflects just that overlap, i.e. a

9    lack of direct fraud as opposed to allegations of extensive

10   control over an enterprise that itself engaged in fraud or

11   other violations of consumer law which would apply to all

12   creditors, to protect all creditors of the debtors.

13             While I believe there is less of a fair ground for

14   litigation on the second point which is raised only by the

15   moving states, namely that notwithstanding there being any

16   specific protection for them in the Bankruptcy Code, their

17   status as a governmental entity takes them out of the reach

18   of this particular plan injunction.  Notwithstanding that,

19   the injunction at this point given the creditors' other

20   agreements applies just to the creditors' right to pursue

21   monetary claims against the third parties.

22             The state creditors have argued that the deterrent

23   effect of pursuing those claims is a valid governmental

24   interest, which to some extent it is.  But I believe that it

25   is going far too far to state that that interest requires

Page 264

1   them to decide whether there would be a trial or not of such

2   claims where they overlap with the claims against the

3   Debtor's estate and by the Debtor's estate, as I believe

4   they are cabined under the plan.

5            I will note that the moving states have at times

6   argued that that public interest extends to their right to

7   take discovery and engage in a trial, but I will also note

8   that they have touted in this motion the benefits of the so-

9   called national settlement in the multi-district litigation

10  in which two of the three of them are parties where there

11  has been no trial by them, and I believe far less discovery

12  that occurred in this case, that they would have and did

13  have direct access to.  But with that also I believe that

14  that package of issues is an issue for consideration

15  appropriately under the first prong of the test for

16  obtaining a stay pending appeal.

17           The other most critical factor is whether the

18  movant will be irreparably injured absent the stay.  For all

19  intents and purpose, although the movants have each

20  attempted to argue other injuries, the injury that they

21  posit as an irreparable injury is the risk that during the

22  course of their appeals, the plan would be so far

23  consummated that the appeals would become equitably moot.

24           The equitable mootness doctrine is at one level

25  fairly well established in the Second Circuit, although

Page 265

1    throughout the country there is a wide variation on how

2    courts look at it.  I say at one level because the courts

3    have also made it clear that, "The doctrine is deployed in a

4    pragmatic and flexible fashion and must be responsive to the

5    specific factors presented in a particular case ultimately

6    to focus on as a prudential matter whether a court should

7    dismiss a bankruptcy appeal when even though effective

8    relief could conceivably be fashioned, implementation of

9    that relief would be inequitable."  See Beeman v. BGI

10   Creditors' Liquidating Trust (In re BGI, Inc.), 772 F.3d

11   102, 107-08 (2d Cir. 2014) and GLM DWF Inc. v. Windstream

12   Holdings Inc. (In re Windstream Holdings Inc.), 838 Fed.

13   Appx. 634 (2d Cir. Feb. 18, 2021.  Where a plan has been

14   substantially consummated, the circuit presumes that an

15   appeal is equitably moot.  And in that circumstance, a party

16   seeking to overcome that presumption may do so only by

17   demonstrating that five factors are met.  But that of course

18   is only where, again, a plan has been substantially

19   consummated under the Bankruptcy Code, id In re Windstream

20   Holdings Ind., 838 Fed. Appx. 634, 636.

21         The course by a vast majority have held that the

22   possibility of equitable mootness standing alone does not

23   constitute irreparable harm.  Rather, it is a form of

24   prejudice which with some other consideration can constitute

25   equitable harm.  Again, taking into account the equitable

Page 266

1    nature of the request for relief, i.e. the stay pending

2    appeal, it would seem to me that that other factor can be

3    any one of the three other factors, i.e. the very importance

4    and seriousness of the appeal on the merits and the harm or

5    lack of harm to other parties and/or the public interest,

6    which includes both a sense of the importance of the

7    finality of bankruptcy plans where they are complicated and

8    involve delicately-negotiated and extensively-reviewed

9    compromises as against the public interest in literally

10   getting an appeal right beyond the trial court

11   determination.  See for example the discussion of this topic

12   in In Re Adelphia Communications Corp., 361 B.R. 337, 347-

13   348 (S.D.N.Y. 2007) and In re St. Johnsbury Trucking

14   Company, 185 B.R. 687 (S.D.N.Y. 1995), both of which cases

15   considered some balancing of the other factors in addition

16   to the risk of equitable mootness.

17           And on the other side of the equation, the

18   discussion in In re Windstream Holdings Ind., 2020 U.S.

19   Dist. LEXIS 167183 (S.D.N.Y. August 3, 2020) where the

20   district court makes the clearly correct point that merely

21   invoking equitable mootness as the appellants have done

22   here, a risk that is present in any post-confirmation appeal

23   of a Chapter 11 plan, is not sufficient on its own to

24   demonstrate irreparable harm.  That's id at Page 7 quoting

25   In re Calpine Corp., 2008 Bankr. LEXIS 217 (Bankr. S.D.N.Y.

Page 267

1    January 24, 2018).  See also In re W.R. Grace & Company, 475

2    B.R. 34 -- I'm sorry, I have the wrong cite.  It's at Pages

3    207 through 08 (D. Del. 2012), affirmed 729 F.3d 332 (3rd

4    Cir. 2013).

5              In the cases where courts have taken seriously the

6    risk of equitable mootness, they have either, as in the

7    Adelphia case, had grave doubts about the merits of the

8    appeal and believe that they needed to be addressed, or the

9    harm to the other parties was offset by the need for an

10   appeal where there was other irreparable harm besides

11   mootness that would occur if the appeal were not heard.

12             As for the mootness issue as irreparable harm and

13   irreparable harm in general, the allegation of irreparable

14   harm and the showing of it must be neither remote nor

15   speculative, but actual and imminent.  The possibility of

16   irreparable harm is too lenient.  Nken v. Holder, 556 U.S.

17   434-435 and In re Sabine Oil & Gas Corp., 551 B.R. 143.

18             Here, the appellants are in two different camps as

19   far as the relief that they are seeking from me.  The U.S.

20   Trustee has clearly asked for a stay pending appeal

21   throughout all of the appeals, i.e. through potentially

22   determination of its appeal by the Supreme Court.  It has a

23   fallback position in which it asks for a stay through the

24   district court determination on the appeal plus some

25   additional time.

Page 268

1           The moving states I think are much more focused on

2    a short-term stay.  And based on their remarks during oral

3    argument, I believe they would confine their motion to such

4    a request.

5           As I stated during oral argument, and I won't

6    repeat the cases that I cited, it seems to me that

7    Bankruptcy Rule 8025 effectively limits the bankruptcy

8    court's ability to issue a stay pending appeal of a district

9    court's order.  The provisions of Rule 8007 and Rule 8025 do

10   not entirely mesh, as noted by the district court in Credit

11   One Bank N.A. v. Anderson (In re Anderson), 560 B.R. 84, 88

12   (S.D.N.Y. 2016).  But as I've previously cited, there are

13   plenty of cases where bankruptcy courts have limited their

14   stays because of Rule 8025 up to the date of the district

15   court's ruling.

16          I believe that is appropriate here not only

17   because of Rule 8025, but also because of the distinctly

18   different factual considerations underlying a request for a

19   stay pending appeal in these appeals and in these cases for

20   a stay pending appeal through the district court's ruling

21   and a stay thereafter.

22          The district court has made it clear that it is on

23   a fast track to determining the appeal, which it will hear

24   oral argument on at the end of November and may well rule on

25   by the end of the first week of December.  Moreover, the

Page 269

1    appellees have stipulated and will be prepared to add to

2    that stipulation based on the record at oral argument that

3    they will not cause the effective date to occur, that is the

4    effective date of the plan, until the earlier of the

5    district court's ruling, which under Rule 8025 and results

6    in, unless the district court orders otherwise, a 14-day

7    stay and December 31.

8         They have also stipulated that they will not argue

9    equitable mootness to a subsequent appellate court, whether

10   that's the Second Circuit or the Supreme Court based on

11   actions taken prior to the effective date of the plan,

12   including in respect of the advance order.

13        Based on my review of the plan in addition to that

14   stipulation, it is highly unlikely that the plan would

15   permit any actions to be taken prior to the effective date

16   that would come anywhere close to the types of transactions

17   that give rise to equitable mootness under the law of the

18   Second Circuit.  That includes coming anywhere close to

19   achieving substantial consummation of the plan under the

20   Bankruptcy Code.

21        The appellees have further stipulated that they

22   will give the appellants, including the movants, 14 days'

23   notice of their actual efforts to cause the effective date

24   to occur, of the actual effective date that is, or the

25   projected effective date.

Page 270

1           Finally, they have stated -- and again, this would

2     be a condition for my order -- that they would render the

3     movant's equitable mootness arguments moot by agreeing that

4     the hearing on the sentencing of the debtors under the DOJ

5     settlement agreement, that that hearing would be no earlier

6     than December 31, which it is clear is the actual date that

7     will be one where there is ample notice, clearly more than

8     14 days' notice, to the appellants, including the moving

9     parties here.

10          Given all of the foregoing and the burden of proof

11    as to irreparable harm that the movants have, I conclude

12    that they have not established irreparable harm with respect

13    to a stay which I believe is the only appropriate stay that

14    I could grant, which is to the date of the district court

15    ruling and a reasonable outside date wherein there would be

16    sufficient notice for the movants to renew a stay motion in

17    the district court.

18          The Debtors have suggested December 31 for that

19    outside date, and it has been suggested to me by the movants

20    that that date, being New Year's Eve and during the holiday

21    season, may place an undue burden on the district court in

22    scheduling a stay hearing, and to a lesser extent a burden

23    on the parties.  However, again, it appears more likely to

24    me, although of course this is entirely up to the district

25    court, that the district court will rule before December 31.

Page 271

1    And I believe that the scheduling issue can be dealt with by

2    saying the earlier of the district court's ruling and

3    December 31 or such later date.  I'm sorry, subject to the

4    district court's calendar.  So if the district court is not

5    available at or around December 31 to hear a potential

6    renewed stay motion depending on the district court's ruling

7    and when that occurs, then it would be the later date for

8    the district court to hold the hearing.

9            Clearly, the parties here have already prepared

10   their stay motions.  Indeed, the U.S. Trustee prepared four

11   of them, which are all in my pleading binder.  And we have

12   had an extensive record for this hearing.  I believe under

13   those circumstances it's not a burden for them if the

14   district court can schedule a stay hearing if they decide to

15   make a stay motion after the district court's ruling by the

16   outside date of December 31 if the district court had not

17   ruled by then.

18           Otherwise, the appellate process would be governed

19   by Rule 8025.  And accordingly, I believe that a key element

20   on the conditions that I just stated for the movants

21   prevailing on the request for a stay pending appeal has not

22   been met.

23           I will also address, however, the last two prongs

24   that the movants would have to show, namely that there is no

25   substantial injury to other parties interested in the

Page 272

1    proceeding and where the public's interest lies.

2          As far as there being no substantial harm to other

3    parties interested, the record here is clear and I believe,

4    frankly, uncontroverted that there is to the contrary

5    substantial harm to the Debtor's creditors, the vast

6    majority of whom have either not objected to the plan and/or

7    voted in favor of the plan affirmatively in each instance,

8    the vast majority that is.

9          After the Debtors are ready to have the effective

10   date of the plan occur, and it appears to me that that would

11   not be realistically before December 31, although perhaps a

12   week before they could be ready, after that date when they

13   are ready, every day that they do not implement the

14   effective date which starts the process of liquidating

15   personal injury claims and making distributions on them and

16   making the initial distributions for abatement purposes

17   seriously causes harm to the creditors.  It is clear to me

18   that the personal injury creditors bargained for a rapid

19   payout, which is reflected not only in their bargaining for

20   a fixed, upfront sum of several hundred million dollars, but

21   also the procedures they've adopted for consistent with due

22   process and the burden of proof a streamlined option to

23   liquidate one's proof of claim.

24         Similarly, the roughly up to a billion dollars

25   minus the funds going to the personal injury creditors would

Page 273

1    be going out shortly after the effective date through 2023

2    for abatement purposes, as well as the $225 million payment

3    to the United States, which although not specifically

4    earmarked for abatement purposes, United States has

5    represented the vast majority of which will go to hospitals

6    and other care facilities.  This is amply testified to by

7    Mr. Guard as far as the payments are concerned at Paragraphs

8    9 through 13 of his declaration as well as at Paragraphs 7

9    through 9 and 12 through 21 and in the summary at Paragraph

10   25 of Mr. DelConte's declaration.  That declaration also

11   address in Paragraph 22 and 23 the funding of Newco and

12   setting it up as a public benefit company to focus on

13   developing products at a reasonable price to combat the

14   opioid crisis.

15          As Mr. Guard eloquently summarized, many states

16   have been litigating these issues since, well -- I'll quote

17   him, because it's actually quite telling -- for as long as

18   five years before the commencement of the bankruptcy case in

19   addition to the two years of this bankruptcy case.  I

20   believe that that length of time was necessary to satisfy

21   the due process Iridium and Metromedia factors as well as to

22   negotiate the intricate intercreditor deals in the plan.

23   The additional time of a stay pending appeal after the

24   district court's ruling is necessary only to have further

25   appeals.  There is nothing else that would hold up the

Page 274

1       payment of the money.

2               As Ms. Juaire and Ms. Trainor eloquently have

3       testified, that payment is, if made, to be put to use both

4       for the immediate needs of the individual victims and for

5       abatement purposes at a time when every dollar counts.  And

6       as time passes, the problem only gets worse.

7               As testified to by Mr. Guard and Mr. Jorgenson,

8       opioid deaths have been increasing over the last two years

9       at a very disturbing level, roughly 30 percent nationally,

10      such that in the last year of March to March, roughly 200

11      opioid-related overdose deaths occur each day.

12              I agree with the states of Washington and

13      Connecticut that if the parties could all agree that those

14      initial distributions could be made and the parties who are

15      appealing would take the risk on equitable mootness with

16      regard to those distributions, that would be all to the

17      good.  But the U.S. Trustee and the State of Maryland do not

18      seem to be prepared to agree to such a resolution to get

19      money out promptly.

20              So on the one hand, we have that clear, tangible

21      harm.  On the other hand, post the date when the Debtors

22      would be ready to go effective, which, again, would be at

23      the end of this year, we have tangible harm as described in

24      the Juaire, Trainor, Guard and Jorgenson declarations,

25      contrasted with the legitimate but non-economic harm of

1    having extra layers of appeal.

2            The public interest factor in some respects

3    dovetails with the foregoing analysis.  The U.S. Trustee

4    states that it is protecting the interests of those who did

5    not object to the plan but did not affirmatively accept it

6    and those who did object to the plan.  It has not, however,

7    provided any information to me that would indicate that

8    those parties would effectively be able to pursue their

9    claims against the released parties to recover anything and

10   would not -- and in addition would not recover any amounts

11   from the Debtors.

12           The vindication of that public policy, i.e.

13   protecting the minority, at some point -- and I believe that

14   point comes soon after the Debtors are ready for the

15   effective date, although maybe with enough time to have an

16   expedited appeal to the circuit depending on the seriousness

17   of the issues on appeal -- is sufficient to carry the day on

18   the public policy point.  But those issues can be addressed

19   by the district court if there is a motion for a stay after

20   its ruling.

21           In light of its assessment of all four factors,

22   including the first factor, the likelihood of success on

23   appeal, and with the benefit of this record which, again, is

24   extensive with extensive evidence offered by the party that

25   doesn't have the burden of proof on this issue, the

Page 276

1    objectants, with no evidence offered for what I'll refer to

2    as the longer stay issue of the balance of harms by the

3    movants.

4         The other public interest factor I have been told

5    is the deterrence factor.  I will note, however, that at

6    some point the public's desire to get paid may well outpace

7    that deterrence factor, particularly where, again, the issue

8    is one simply of a fight over money and the movants can

9    simply not close their eyes to the fact that their

10   litigation alternatives are ones where they already with

11   regard to other defendants that they have pursued have

12   resulted in settlements rather than trials and where the

13   effect of a lengthy stay would prevent the release of the

14   document repository which can be used not only by the public

15   and academics, but also to actually fight the remaining

16   trials and litigation that's pending against other parties.

17        Counsel for the Ad Hoc Committee of Personal

18   Injury Claimants has suggested that I require at this point

19   the posting of a bond by the states and the non U.S. Trustee

20   appellants.  Of course the posting of a bond to protect the

21   appellees from the adverse effects of a stay is the norm

22   rather than the exception.  And even where the Court has

23   believed that there are not just possible but quite probable

24   issues on the merits, it has required the posting of a bond,

25   and a substantial bond pending appeal.  See In re Adelphia

Page 277

1    Communications Corp., 361 B.R. 337.

2           The U.S. Trustee I believe correctly points out

3    that Rule 8007(d) exempts the federal government from a bond

4    requirement.  And while that language is not entirely clear,

5    I believe that that is the case.  However, that does not

6    help the U.S. Trustee on the issue of the harm to other

7    parties or the balancing of the harms since it offers

8    nothing in return for the risk that it will have been wrong

9    and have pursued a lengthy appeal process that results in

10   the substantial delay of payments that literally save lives

11   and families.

12          8007(d) says nothing about any other entity,

13   including any other governmental entity being exempt from

14   the bond requirements.  And in fact, there is meaningful

15   caselaw on that point or under the analogous Federal Rule of

16   Civil Procedure 62.  The fact that state courts don't impose

17   a bond on other states I believe is irrelevant, as noted by

18   more than one of the objectors.  A federal statute including

19   the Bankruptcy Code as interpreted by the bankruptcy courts

20   will defeat a state's interest in enforcing its law and in

21   protecting appellees if in fact it obtains a stay.  The

22   basic principle was set forth in Butner v. United States,

23   440 U.S. 45, 48 (1979).  And, in fact, in other cases bonds

24   have been imposed on states.  I cited one of those during

25   oral argument, Lightfoot v. Walker 797 F.2d 505 (7th Cir.

Page 278

1   1986), a decision by Judge Posner.  See also Cayuga Indian

2   Nation of New York v. Pataki, 188 F. Supp. 2d 223 (S.D.N.Y

3   2002) and PAO Tatneft v. Ukraine, 2021 U.S. Dist. LEXIS

4   102179, 6-7 (D.D.C. June 1, 2021).  That latter decision

5   also is authority for requiring the Canadian entities to

6   post a bond.

7          Again, I do not believe a bond is required with

8   respect to the order that I will grant, which denies the

9   stay request.  But I am denying the U.S. Trustee's request

10  for a broader stay, i.e. one that would last through the

11  entire appellate process because it is not posting a bond.

12  And I would deny a similar request by the movant states

13  because they have not offered to post a bond where it is

14  clear that there would be substantial harm to third parties

15  occasioned by delay after the date when the Debtors have

16  acknowledged they will, and only by that date, be ready to

17  go effective with their plan.

18          Counsel for the Ad Hoc Committee of Personal

19  Injury Claimants has also suggested that I oppose additional

20  reciprocal conditions on my not granting the motion,

21  reciprocal to the conditions that I am imposing on the

22  debtors and the other plan proponents.  They would basically

23  go to any efforts by the movants to delay emergence other

24  than of course through the appellate process.  That would

25  include continuing their commitment to an expedited

Page 279

1    appellate process, not seeking to adjourn the sentencing

2    hearing before the district court in New Jersey and the

3    like.

4            I am not prepared to impose those conditions.

5    However, I will reserve the appellee's right to revisit

6    those conditions if such delaying tactics are undertaken.   I

7    don't believe they will be because I believe they are

8    antithetical to the stated goals of the movants to expedite

9    the appeal process and get money out to claimants.  But if

10   that proves not to be the case, then I will lift the

11   conditions that I am imposing as a quid pro quo to my not

12   granting the stay motions.

13           I noted that the Canadian claimants' motion

14   essentially rides along on the mootness point with the other

15   three motions that I have described.  On the merits point,

16   it addresses arguments unique to the Canadian claimants

17   based on their assertions that they are sovereign entities

18   and therefore that their rights cannot be constrained.  I

19   have clearly disagreed with that in my confirmation ruling.

20           I will also note that the objections to the

21   Canadian claimants' points on this argument are well taken.

22   Canadian claimants, not all of them, but Canadian claimants

23   in their group have filed proofs of claim in these cases on

24   behalf of all of the claimants, which would subject them to

25   the court's jurisdiction.  Moreover, the claimants' rights

Page 280

1    are not specifically protected under the Bankruptcy Code.

2    They fall into the waiver of sovereign immunity for

3    governmental entities.

4           And again, I believe that the comprehensive

5    bankruptcy scheme recognized by not only Ortiz but also

6    Butner and the circuit in Manville IV, 606 F.3d 135, all

7    contemplate that those types of rights can be constrained by

8    the Court even where they pertain to or limit the ability to

9    pursue claims that are direct claims, at least where those

10   direct claims overlap with claims assertable by all

11   creditors and based on actions that are primarily actions

12   through the Debtors.

13          So I will look for an order consistent with my

14   ruling.  I will not require a notice of when the Debtors are

15   asking for a hearing date, but only a notice of the hearing

16   date (indiscernible) the hearing date.  I will not extend

17   the outer date for their condition beyond December 31, but

18   that will be subject to the district court's schedule,

19   obviously tying into the commitment that has already been

20   given by the appellees of a 14-day notice of the actual

21   effective date, which is all tied to giving the movants time

22   to renew their motion for appeal -- I'm sorry, for a stay

23   pending appeal, excuse me.

24          All right, are there any questions on what the

25   order should say?

Page 281

1          MR. FOGELMAN:  Your Honor, this is Larry Fogelman

2     on behalf of the United States.  May I make one comment?

3          THE COURT:  Okay.

4          MR. FOGELMAN:  It's really -- it's just a

5     clarification of one of the comments that Your Honor made.

6     While it's true that almost all of our civil recoveries for

7     the federal healthcare agencies that do help treat opioid

8     use disorder, I just -- and that includes the $225 million

9     from the Sackler settlement which will be a civil claim.

10    And that was addressed in the letter that we filed with the

11    Court.  I just want to clarify that the $225 million asset

12    forfeiture recovery under the plea agreement, that's

13    required by statute to go to the asset forfeiture fund

14    (indiscernible).  I think Your Honor had said that the asset

15    forfeiture amount goes to the federal healthcare agencies.

16    So I just wanted to make that clarification for the Court.

17         THE COURT:  Okay.  Thank you.

18         MR. FOGELMAN:  Thank you.

19         THE COURT:  All right.  So are there any questions

20    on the order?  No?

21         MR. KAMINETZKY:  We will do our best, Your Honor.

22    I think we understand.

23         THE COURT:  I don't want the parties to spend an

24    enormous amount of time negotiating this order.  If there is

25    a disagreement about what the parties think I said, you

Page 282

1    should promptly send me the alternative proposed orders with

2    the second one blacklined to show the changes and I'll enter

3    the one that I believe is consistent with my ruling.

4              MR. KAMINETZKY:  We will do so, Your Honor.

5              THE COURT:  Okay, very well.  Thank you.

6              (Whereupon these proceedings were concluded at

7    6:32 PM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 283

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 12, 2021

[& - 20th]                                                                                      Page 1

| **&** |
| --- |

**&**   36:11,18 38:1
38:15 39:8 58:9
65:22 70:6 186:7
201:11 208:22
221:20 227:18
249:20 256:8
262:7 267:1,17

| **0** |
| --- |

**01**   39:18
**06604**   39:4
**07**   121:13
**07102**   38:19
**08**   265:11 267:3

| **1** |
| --- |

**1**   62:10 66:2
132:25 133:3
151:25 194:23
198:19 199:8
207:4 278:4
**1.4**   209:8
**1.6**   205:10
**10**   68:5 169:16
202:19 228:20
235:7,8,13 253:6
256:16
**100**   136:8 232:19
**10001**   36:14
**10007**   40:3
**10014**   36:6
**10017**   37:18
**10020**   38:4
**10022**   36:21
**10036**   37:11 39:11
**1006**   36:5
**10110**   38:11
**102**   265:11
**102179**   278:4
**10601**   1:14
**107**   265:11
**10:00**   2:3

**10:20**   1:17
**11**   6:2,6 13:9,12
18:22 19:2 23:9
23:13 28:16,20
33:9,13 81:9
128:6 212:5
254:13 266:23
**11/3/2021**   2:1
**11/9/2021**   2:3
**1129**   260:24
**11501**   283:23
**1177**   37:10
**12**   51:2 56:14
160:20,25 196:14
241:18 273:9
283:25
**12151**   283:7
**1221**   38:3
**13**   212:8 273:8
**132**   70:6 256:8
**135**   262:16 280:6
**137183**   81:6
**14**   45:14,17 62:3
70:20 81:25 123:1
129:20 136:22
149:19,19 161:4
166:23 170:25
176:16 177:1
178:7 180:15
181:5 182:9,10,17
188:1 207:12
216:8 218:17,19
226:3 228:4
234:17,18,19
235:6,7 238:16
239:16 242:2
269:6,22 270:8
280:20
**140,000**   214:11
**142**   256:8
**143**   70:7 267:17
**14th**   104:8 215:22
218:6 233:7

**237:19 238:17**
**15**   208:22 214:23
253:7
**153-154**   262:16
**155**   258:7
**15th**   156:5 167:6
176:13 180:8
**16**   129:20 223:3
**167183**   266:19
**17**   66:11 216:23
218:22 224:9
**173**   257:2
**18**   160:25 216:23
265:13
**181000**   262:9
**185**   266:14
**188**   278:2
**188-184**   257:2
**19-23649**   1:3
**1979**   277:23
**1986**   121:14 278:1
**1989**   224:9 260:6
**1995**   266:14
**1999**   259:1
**19th**   154:16
**1st**   77:10 165:17
175:2

| **2** |
| --- |

**2**   62:14 66:12
124:5 213:15
244:18 249:7
260:6
**20**   169:14 174:20
196:7 262:9
**200**   37:3 130:18
137:17 162:17
274:10
**200,000**   249:23
**20005**   40:10
**2002**   66:14 278:3
**2006**   206:22
**2007**   154:6 212:24
266:13

**2008**   66:11,12
81:15,16 212:4
213:7 266:25
**2009**   206:19 256:7
257:1
**201**   36:5
**2010**   262:16
**2012**   213:7 267:3
**2013**   267:4
**2014**   119:22
265:11
**2015**   224:11
**2016**   66:10,11,17
70:7 256:9 268:12
**2017**   66:7,8 212:4
**2018**   262:10,11
267:1
**2019**   66:8,9 257:2
**2020**   81:6 101:8
196:16,20 197:7
197:16 198:1
212:14,19 256:15
256:16 257:9,21
262:9 266:18,19
**2021**   1:16 2:6
44:14 159:24
160:8 190:10
193:11 194:9
196:7 234:4
265:13 278:3,4
283:25
**2022**   161:17 187:9
234:5
**2023**   132:14 234:5
273:1
**2024**   87:20 112:15
132:15
**204**   205:9
**207**   267:3
**20852**   37:4
**20th**   124:1 164:24
165:15 166:13
167:9 170:11

174:9,23 176:10
203:21 216:12,16
216:22
**21**   160:20 193:11
194:9 216:10,13
217:20 218:5
273:9
**217**   81:15 266:25
**22**   159:24 160:8
160:21 190:9
273:11
**222**   66:14
**223**   278:2
**225**   162:6 211:7,8
212:15,19 273:2
281:8,11
**23**   240:15 273:11
**230-31**   66:14
**23rd**   209:15
**24**   81:16 120:16
160:25 256:6
267:1
**248**   1:13
**25**   162:6 212:20
213:10 273:10
**26**   160:22 208:22
209:3
**27**   66:8,8 160:22
**28**   66:9 120:16
160:22
**283**   66:13
**28th**   197:5
**2:00**   156:18
**2:30**   156:20
**2d**   257:2,20
262:16 265:11,13
278:2
**2nd**   204:1

**3**

**3**   5:21 44:14 92:12
129:11 142:4
266:19

**30**   62:14 66:12
170:24 171:2
172:20 176:25
177:19,22 179:8
180:16,16,23
186:12,14 202:13
216:6 232:19
237:10,11 256:13
274:9
**30-45**   200:15
**300**   1:13 283:22
**30th**   123:9 165:2
170:7,12 176:15
177:3 183:7
186:18 216:16
240:15
**31**   169:14,16
186:14 269:7
270:6,18,25 271:3
271:5,16 272:11
280:17
**31st**   161:15
174:10 180:10
**32399**   39:19
**3264057**   256:15
257:9
**330**   283:21
**332**   267:3
**337**   154:5 266:12
277:1
**3376**   66:8
**34**   267:2
**347**   266:12
**348**   266:13
**3484**   5:13 18:18
**35**   139:10
**35,000**   231:9
**354**   262:10
**359**   58:10
**36,000**   207:3
**361**   154:5 266:12
277:1

**363**   133:24 143:7
**368**   58:10
**37**   216:5,6
**3726**   6:8 13:14
19:4 23:15 28:22
33:15
**3773**   5:14 6:24
10:17 18:19
**3776**   2:13 6:16
**3777**   2:13 6:15
**3778**   2:14,18 4:14
5:5 6:16 7:20 8:11
10:22 12:18 13:19
14:3 15:21 17:18
18:9 19:9 20:21
22:18 23:20 24:3
25:16 27:14 28:11
29:3,9 30:21
32:18 33:20 34:3
**3779**   5:22 6:16
7:11
**3786**   6:3,24 10:17
13:9 18:23 23:10
28:17 33:10
**3787**   6:9,24 10:17
13:15 19:5 23:16
28:23 33:16
**3789**   2:18 3:3,16
4:6,14,20 8:11
9:20 10:18,22
11:8,21 12:10,18
12:24 13:18 14:3
15:7,21 16:7,20
17:10,18,24 18:9
19:9 20:13,21
21:7,20 22:10,18
22:24 23:19 24:3
25:7,16 26:3,16
27:6,14,20 29:3,8
30:13,21 31:7,20
32:10,18,24 33:19
34:2 35:7

**3799**   6:15
**3801**   2:17 3:3,16
4:14,19 5:4 6:17
7:19 8:10 9:19
10:22 11:8,21
12:18,23 13:18
14:2 15:6,21 16:7
16:20 17:18,23
18:9 19:8 20:12
20:21 21:7,20
22:18,23 23:19
24:2 25:6,16 26:3
26:16 27:14,19
28:10 29:2,8
30:12,21 31:7,20
32:18,23 33:19
34:2 35:6
**3803**   2:18 6:25 7:7
8:11 10:23 13:19
14:3 15:22 18:9
19:9 20:22 23:20
24:3 25:17 29:3,9
30:22 33:20 34:3
**3804**   7:8
**3810**   20:17
**3838**   7:13
**3845**   2:18 3:3,16
4:7,14,20 8:11
9:20 10:23 11:8
11:21 12:11,18,24
13:19 14:3 15:7
15:17,22 16:7,20
17:11,18,24 18:10
19:9 20:13,22
21:7,20 22:11,18
22:24 23:20 24:3
25:7,17 26:3,16
27:7,14,20 29:3,9
30:13,22 31:7,20
32:11,18,24 33:20
34:3 35:7
**3847**   20:17

**3860** 4:14,20 9:20
  12:18,24 15:7
  17:18,24 18:9
  20:13,17 22:18,24
  25:7 27:14,20
  30:13 32:18,24
  35:7
**3873** 2:17 3:3,16
  4:6,14,19 8:10
  9:19 10:22 11:8
  11:21 12:10,18,23
  13:18 14:2 15:6
  15:21 16:7,20
  17:10,18,23 18:9
  19:8 20:12,21
  21:7,20 22:10,18
  22:23 23:19 24:2
  25:6,12,16 26:3
  26:16 27:6,14,19
  29:2,8 30:12,21
  31:7,20 32:10,18
  32:23 33:19 34:2
  35:6
**3890** 4:14,19 9:19
  12:18,23 15:6
  17:18,23 20:12
  22:18,23 25:6
  27:14,19 30:12,17
  32:18,23 35:6
**3918** 45:18
**3958** 156:5
**3972** 2:18 4:6,14
  5:4 7:21 8:5,11
  10:5,22 12:10,18
  13:18 14:3 15:21
  17:10,18 18:9
  19:9 20:21 22:10
  22:18 23:19 24:3
  25:16 27:6,14
  28:10 29:3,8
  30:21 32:10,18
  33:19 34:2 45:15

**3973** 8:7 18:9
**3988** 224:12
**3rd** 40:2 267:3

## 4

**4** 68:5 127:19
  149:2 211:12
  212:6
**4.25** 209:17
**4002** 2:20 8:13
  10:25 13:21 14:5
  15:24 19:11 20:24
  23:22 24:5 25:19
  29:5,11 30:24
  33:22 34:5
**4003** 2:24 11:4
  16:3 21:3 25:23
  31:3
**4006** 3:5,10,20
  4:24 8:17 9:3
  11:10,15 12:1
  13:3 14:9,16 16:9
  16:14 17:1 18:3
  19:15,22 21:9,14
  22:1 23:3 24:9,16
  26:5,10,20 28:3
  29:15,22 31:9,14
  32:1 33:3 34:9,16
**4007** 8:20 14:12
  19:18 24:12 29:18
  34:12
**4008** 9:6 14:19
  19:25 24:19 29:25
  34:19
**4009** 3:11 11:16
  16:15 21:15 26:11
  31:15
**4010** 3:18 11:23
  16:22 21:22 26:18
  31:22
**4011** 3:22 12:3
  17:3 22:3 26:22
  32:3

**4012** 4:9 12:13
  17:13 22:13 27:9
  32:13
**4013** 9:12 14:25
  20:5 24:25 30:5
  34:25
**4014** 4:16 9:15
  12:20 15:2 17:20
  20:8 22:20 25:2
  27:16 30:8 32:20
  35:2
**4015** 9:16 15:3
  20:9 25:3 30:9
  35:3
**4016** 4:21 9:21
  12:25 15:8 17:25
  20:14 22:25 25:8
  27:21 30:14 32:25
  35:8
**4017** 4:25 13:5
  18:5 23:5 28:5
  33:5
**4043** 10:7 45:19
**4048** 18:11
**4049** 10:14
**4050** 5:6 28:12
**4051** 15:13
**4075** 195:21
**409** 256:6,13
**41-48** 257:20
**418** 257:1
**434** 257:1,19
**434-435** 267:17
**440** 277:23
**45** 277:23
**450** 37:17
**475** 267:1
**48** 93:2 277:23
**490** 260:6
**4:00** 189:16

## 5

**5** 256:15
**5-6** 66:7,10
  196:14
**500** 38:10 206:12
  241:13
**505** 121:13 277:25
**506** 121:13
**5076975** 66:12
**515** 196:15
**524** 69:6,23
  258:16 260:9
**527** 259:1
**544** 66:7
**547** 196:20 197:7
  197:15
**548** 256:12 257:10
**55** 36:13
**551** 70:6 256:8
  267:17
**556** 257:1,19
  267:16
**56** 58:9
**560** 66:17 268:11
**570** 38:18

## 6

**6** 160:25 224:12
**6-7** 278:4
**600** 162:8
**606** 262:15 280:6
**62** 277:16
**630,000** 202:16
**634** 212:25 265:13
  265:20
**636** 265:20
**65** 211:9
**681** 256:12
**683** 257:10
**684** 257:10,15
**687** 266:14
**6:32** 282:7
**6th** 233:8

**7**

**7** 160:20 188:5
215:13 216:18,21
217:20 257:9
260:24 266:24
273:8
**700** 137:17
**7069** 224:9
**729** 267:3
**75** 124:15
**755** 260:6
**75th** 123:5
**762** 260:6
**772** 265:10
**778** 5:21
**78** 205:13 209:14
**797** 121:13 277:25
**7th** 121:14 123:10
170:9 183:7
187:21,22 189:9
215:2,16,19,21,22
216:9 217:19
237:19 239:14,16
240:14 277:25

**8**

**8** 149:3 174:19
**8000** 66:2
**8007** 2:12 5:4,21
6:15 7:19 8:5 10:5
10:12 28:10 63:7
63:21 64:6 65:23
66:19 119:22
268:9 277:3,12
**8025** 61:13,24
62:4,9 63:14 64:4
64:6,8,8 66:19,20
70:21 95:11
149:17 184:14,24
185:6,13,16 216:7
226:24,25 268:7,9
268:14,17 269:5
271:19

**815** 259:1
**82** 106:25
**836** 66:10
**838** 265:12,20
**84** 66:17 268:11
**850** 39:3
**86** 40:2
**88** 66:17 268:11
**8th** 55:14 77:12
123:3 175:1

**9**

**9** 1:16 2:6 28:16
56:12 57:4,21
58:4 160:20,25
190:11 193:12
194:11 262:10
273:8,9
**9/15/2021** 5:9
18:14
**9/17/2021** 6:2,8
13:9,14 18:22
19:4 23:9,15
28:22 33:9,15
**90** 242:10
**919** 36:20
**933** 257:2
**94** 204:22
**95** 204:23
**96** 202:17 204:24
**97** 222:11
**973** 257:20
**9th** 160:8 196:11

**a**

**aac** 198:10
**abandon** 247:21
**abate** 251:23
**abatement** 85:24
133:15 136:23
145:19 187:12
192:16,23 205:15
207:21 212:11,16
212:22 213:1
217:4 220:15,20

222:15 223:4,5,8
235:5 236:6
243:20 244:25
245:4 272:16
273:2,4 274:5
**abeyance** 101:8
101:16
**ability** 58:15
112:22 127:6
172:8 176:5 203:2
204:12,13 250:25
251:6 268:8 280:8
**able** 99:10,16
100:13 109:7,13
109:20 126:25
168:10 178:25
184:9 216:21
233:8 237:12
240:13 241:17,19
242:5 275:8
**abrams** 40:21
**absence** 149:12
238:20 250:8
**absent** 75:19 76:7
256:22 257:14
264:18
**absolute** 259:11
**absolutely** 58:1
173:22 203:5
220:5,24 249:7
**abstract** 100:20
**abused** 86:12
93:25
**academics** 276:15
**accept** 97:11
115:5,13 164:5
217:1 275:5
**acceptable** 150:9
**accepting** 115:17
**access** 203:12
264:13
**accident** 206:19
209:4

**accompanied**
188:2
**account** 51:23
52:2,4 125:13
162:5,11,22 169:6
174:6 261:9,22
265:25
**accountable**
203:24
**accounts** 46:4
47:17,22
**accrue** 229:18,19
233:6 239:25
**accurate** 197:19
283:4
**accusations**
219:24
**achieve** 223:16
**achievement**
113:6
**achieving** 269:19
**acknowledge**
132:6
**acknowledged**
78:12 134:7 136:4
249:21 278:16
**acquiesced** 48:18
**act** 147:16,17
211:20 220:18
**acting** 86:11
211:22
**action** 89:25 92:9
125:4 147:23
**actions** 58:24
83:17 88:2 90:11
102:22 164:19
172:16 173:10
188:4 198:5 226:2
269:11,15 280:11
280:11
**actively** 189:1
**activities** 75:2
177:8,10 183:19

[activity - agencies]                                                          Page 5

**activity** 61:12
74:10,11,24
141:21
**actors** 119:19
**actual** 59:9 75:24
148:24 166:24
180:1,12 182:9
210:21 241:15
267:15 269:23,24
270:6 280:20
**ad** 2:16,19 3:7,10
4:1,7,25 8:9,12
10:21,23 11:12,15
12:5,11 13:4,17
13:20 14:1,4
15:20,22 16:11,14
17:5,11 18:4 19:7
19:10 20:20,22
21:11,14 22:5,11
23:4,18,21 24:1,4
25:15,17 26:7,10
27:1,7 28:4 29:1,4
29:7,10 30:20,22
31:11,14 32:5,11
33:4,18,21 34:1,4
37:9 38:2 39:17
93:3 189:15
202:19 214:18
221:17,20 227:19
276:17 278:18
**add** 65:21 66:4
97:22 119:11
122:14 143:15
157:12,15 186:3,6
251:12 269:1
**added** 70:21
157:24 171:18
216:9 218:8
**addition** 53:18,23
54:4 162:7 165:3
226:14 234:13
266:15 269:13
273:19 275:10

**additional** 64:2
70:20 76:2 113:12
120:13 128:9
129:22 131:2
178:11 184:4
186:7 188:8
207:10,11 226:15
237:11 242:1
244:18 267:25
273:23 278:19
**address** 45:24
46:2 48:10 54:21
54:25 59:21 61:12
67:19 84:16
118:14 124:6
132:14 145:20
158:22 188:14
192:7 201:21
202:21,23 214:22
216:25 221:25
222:1 224:17
227:21,24 229:6
229:20 248:14
249:9 255:18,21
255:23 257:16
260:21 271:23
273:11
**addressed** 59:21
60:6 64:4,5 90:23
94:3 148:15
165:22 202:24
222:24 223:1
245:13 267:8
275:18 281:10
**addresses** 49:10
279:16
**addressing** 52:16
52:17 94:4 118:8
132:4 255:19,22
**adelphia** 53:21
154:5 266:12
267:7 276:25

**adequate** 93:9
149:21
**adequately** 136:1
259:23
**adjourn** 242:7
279:1
**admin** 236:21
**administrative**
236:25
**admiration**
134:14
**admissibility**
125:19 190:19
194:17 195:2
**admissible** 134:11
**admission** 158:20
191:1 192:1
193:20 199:7
**admit** 190:19
192:18 193:18
194:18 198:3
199:1,12 209:10
**admitted** 47:12
163:6 190:23
197:24
**admittedly**
208:16
**admitting** 198:4
**adopt** 122:21
147:2 155:3,6,7
243:10
**adopted** 115:24
115:25 156:13
157:12 272:21
**adopting** 155:9,9
**adopts** 255:15
**advance** 4:13 9:11
12:17 14:24 17:17
20:4 22:17 24:24
27:13 30:4 32:17
34:24 83:19 97:15
109:3 115:16,24
124:2 139:13

149:1 157:2
164:20,22 173:10
200:14 226:2,4
254:14 255:4,12
269:12
**advanced** 234:11
**advances** 15:16
18:8 139:23
**advantage** 234:24
**adverse** 276:21
**advise** 105:1
**advised** 123:9,19
**advisor** 126:17
**advisory** 224:21
**advocacy** 191:16
**advocating** 86:13
**afanador** 38:15
**affect** 54:3 110:12
**affidavit** 196:15
197:19
**affiliated** 6:7
13:13 19:3 23:14
28:21 33:14
**affirm** 122:22
190:1 192:10
193:2 194:1
195:24
**affirmance**
236:14
**affirmative**
152:15
**affirmatively**
272:7 275:5
**affirmed** 59:2
267:3
**affirming** 62:5
**affording** 203:23
**afternoon** 156:24
157:5,18 193:25
201:10 242:25
246:21
**agencies** 211:10
213:12 220:21

222:5 281:7,15
**agency** 118:20
119:1 213:10
**agenda** 2:6,6
**aggregate** 91:17
**ago** 106:19 197:5
201:23 207:24
214:23
**agree** 52:3 53:12
55:5 65:2,6 68:9
69:8 78:16,17,18
79:6 86:2 92:22
97:12 102:1,12
107:23 108:2
109:3,8 113:15
124:14 130:12
132:15 138:23
140:13 142:19,24
151:4 153:20
167:3 176:4 200:1
212:16,22 215:12
229:25 274:12,13
274:18
**agreed** 110:20
113:4,19 146:4
164:25 165:13,23
165:24 166:12,25
171:1 174:21,22
180:13 186:13
191:15 208:24
**agreeing** 115:13
270:3
**agreement** 72:25
76:3 98:22 99:1
101:7 104:5,16,20
105:3 114:2
124:13 142:16
150:13,15 164:23
165:20 170:22
175:6,23 200:1
213:2 245:25
270:5 281:12

**agreements**
153:12 189:11
263:20
**agrees** 179:2
**ags** 204:12,22,25
205:20 208:20
209:1
**ahc** 164:15
**ahead** 67:22 94:20
99:16 137:25
138:1 154:12
175:20 213:15
246:22
**aid** 118:1
**aisling** 42:8
**akin** 39:8 201:11
**al** 3:5,17 8:20 9:6
11:10,22 14:12,19
16:9,21 19:18,25
21:9,21 24:12,19
26:5,17 29:18,25
31:9,21 34:12,19
44:3 156:25
**albeit** 189:3
**aleali** 40:22
**alexander** 41:22
**alice** 43:6
**allegation** 249:8
267:13
**allegations** 89:15
89:23 90:2,20
249:5 263:9
**allege** 89:5,8
230:18 232:3
**alleged** 212:9
232:17
**allegedly** 230:23
**allen** 25:10 38:21
146:24
**allies** 86:20
**allocated** 223:7
**allocation** 218:18

**allow** 9:8 10:9
14:21 20:1 24:21
30:1 34:21 60:18
99:21,21,22 100:9
101:9,25 103:18
105:4 107:2 109:3
110:10,11 112:16
117:14,17 118:3
122:9 129:23
163:19 167:9
227:7 240:13
245:7 253:16
**allowed** 86:18,19
90:9 222:15 242:3
242:3,14
**allowing** 109:12
244:24
**allows** 100:18
**alluded** 148:23
**alluding** 233:18
**altered** 139:22
**alternative** 63:25
64:17 65:8 66:19
66:24 83:8 101:24
158:7 189:2 261:3
282:1
**alternatively** 67:1
**alternatives** 61:15
150:8 276:10
**amenable** 142:10
142:16
**amended** 6:2,6,11
6:11 7:15,17 8:2,3
10:1,3 13:8,12
18:22 19:2 23:8
23:13 28:15,20
33:8,13 45:15
105:2 254:12
**american** 2:24
11:4 16:3 21:3
25:23 31:3 207:11
**americans** 129:23
129:24 205:11

**americas** 37:10
38:3
**amicus** 211:5
**amid** 141:24
**amount** 52:10
67:8 92:12 106:6
106:7 113:25
131:11 132:8
135:24 143:14,15
150:20 162:14
178:23,24 185:25
211:12 212:6
223:8 234:6 240:7
241:12 254:16
257:13 281:15,24
**amounts** 275:10
**ample** 270:7
**amplify** 234:9
**amply** 273:6
**analogous** 277:15
**analogy** 119:13,16
**analyses** 198:9
262:23
**analysis** 97:4
117:1,22 198:7
210:17 230:10,14
231:3 232:6 233:5
236:18 257:19,22
258:16 260:17,18
260:24 261:13
262:1 275:3
**analyze** 109:11
**anderson** 66:16
66:17 268:11,11
**andrew** 43:5,8
**ann** 41:23
**announcement**
229:2
**annual** 205:12
**answer** 45:4 79:2
84:9 87:21 88:10
104:1 173:14
179:17 182:1

[answer - application]                                                      Page 7

205:1,7 245:22
246:6
**answered** 82:19
**anticipate** 123:12
139:12
**anticipated**
107:12
**anticipating**
247:15
**antithetical** 279:8
**anxious** 114:8
**anybody** 151:10
229:9 235:21,25
237:2,9
**anyone's** 59:19
**anyway** 48:12
79:19 85:16
121:14 221:2
**anyways** 218:23
**apart** 223:17
236:14 238:14
**apologies** 245:20
**apologize** 154:12
**apparent** 138:22
**apparently** 102:4
107:7 115:7 214:7
**appeal** 2:2,9,12
3:2,9,15 4:4,6,13
4:19,24 5:3,20
6:11,14,23 7:7,15
7:18 8:1,4,17 9:3
9:11,19 10:4,12
10:16 11:7,14,20
12:8,10,17,23
13:3 14:9,16,24
15:6,12,15 16:6
16:13,19 17:8,10
17:17,23 18:3,8
19:15,22 20:4,12
20:16 21:6,13,19
22:8,10,17,23
23:3 24:9,16,24
25:6,10 26:2,9,15

27:4,6,13,19 28:3
28:9 29:15,22
30:4,12,16 31:6
31:13,19 32:8,10
32:17,23 33:3
34:9,16,24 35:6
44:4 52:12 53:25
54:6,7,9,13 56:5
59:2 60:3,18
62:10,12,13,23,24
63:9,11 66:1,3
67:11 69:5,25
75:19,21 76:14
79:10 80:14 81:2
81:9,12,19 82:4,9
83:11 85:5 86:6,7
90:7 94:4,5,10
95:3 100:4 102:2
104:8 105:5,11,12
108:1 110:17,18
110:19,21 111:7
114:17 115:16
116:2 118:19
119:4,5 120:11,13
122:4,11 132:13
139:22 140:14
143:21 148:5
152:11 155:15,25
156:8 157:2 158:1
164:14 167:5
190:9 193:10
194:9 196:7 211:3
211:7 213:14,17
214:10 217:13
227:16 228:9,15
230:1 233:23
251:21 252:1
254:10,11,21
255:3,6,24 256:1
256:3,5,10,18
257:5,8,23 258:1
258:8,12 260:18
264:16 265:7,15

266:2,4,10,22
267:8,10,11,20,22
267:24 268:8,19
268:20,23 271:21
273:23 275:1,16
275:17,23 276:25
277:9 279:9
280:22,23
**appealed** 49:14
128:8 255:4,12
**appealing** 84:15
107:10 113:16
114:7 145:4
204:16 211:5
251:19 274:15
**appeals** 62:10,13
62:17,17,19,21
63:2 64:13 72:11
82:15 88:2,5
100:15 102:7,14
104:2 111:5
118:23 120:5
124:8 163:20
164:18 165:2
167:10 205:22
226:5 228:5
253:16 258:5
264:22,23 267:21
268:19 273:25
**appear** 54:1
195:14
**appears** 60:1
78:10 270:23
272:10
**appellant** 119:25
140:4 225:13
**appellant's** 122:4
**appellants** 81:7
106:10 107:25
113:7,9 149:18
157:1 187:25
225:12 228:1
229:10,11 237:24

241:25 243:11,24
244:11 254:23
258:15 266:21
267:18 269:22
270:8 276:20
**appellate** 62:8
63:23,25 64:16,25
67:1 68:12,13,15
68:18 70:25 86:17
87:3 90:23 93:12
95:6 101:17 107:9
108:12 110:5,13
114:10 125:7
136:11,17 146:1
150:1,23 151:8
152:23 153:2
172:1,2 189:2
210:8 227:7
238:14 240:1,2,5
269:9 271:18
278:11,24 279:1
**appellees** 48:18
48:22 113:7,9
115:2 143:4
145:17 169:11
173:16 188:3
189:12 215:12
225:25 249:1
269:1,21 276:21
277:21 280:20
**appellee's** 279:5
**appetite** 109:6
**applauds** 208:23
**apples** 108:3
**applicable** 152:17
172:22 258:14
**applicant** 230:15
233:13
**applicants** 233:21
235:10 239:11,18
**application**
232:21,22 238:23

applications
185:24
applied   119:6
applies   57:15 58:7
58:17 136:14
184:18,19,25
263:20
apply   71:23 76:24
88:4 136:18
224:23 246:12
259:7 263:11
applying   125:22
appointed   86:11
207:20
appreciate   84:1
98:14 115:1 154:3
apprehension
123:22
approach   66:23
approaching
79:12
appropriate   46:3
46:11 62:25 90:21
155:21 246:9
268:16 270:13
appropriately
69:13 264:15
approvals   173:4
approximately
202:13 205:9
212:5
appx   265:13,20
ardavan   41:11
area   168:23
252:18
aren't   253:25
arguable   152:20
arguably   51:22
167:15 168:5
181:21 217:20
argue   72:21 73:3
74:2 76:23 77:2,7
79:13 98:8 123:23

124:2,4,9 143:4
164:18 168:24
173:20 176:7
188:3 191:9 203:1
205:21,23 206:1
211:24 242:6,9
264:20 269:8
argued   63:20 65:2
72:18 124:20
138:11 213:19
258:21 263:22
264:6
argues   214:3
arguing   52:1,11
104:17 112:11,11
143:22 165:8
argument   45:1
51:1 55:7 56:4
59:10,13,25,25
60:21 61:9 70:13
70:23 73:15 74:15
76:6 77:11 81:11
83:15,24 84:12
86:7 92:25 96:20
97:7 98:16 99:5,8
103:24 105:18
116:3 117:7
119:12 123:8,15
128:15,17 129:4
130:1 133:1,5,10
133:11 138:6
140:8 148:15
152:13 153:1,18
173:10 183:18
187:17 188:8,9,19
189:5 199:15
201:6,21 202:25
207:13 208:18
216:14 221:6
229:12,13 231:1
239:3 243:7
245:14 252:8
258:16,16,17,20

260:9 268:3,5,24
269:2 277:25
279:21
arguments   60:4
67:19 103:12
104:4 118:3
122:21 126:3
146:15 164:14
170:7 206:5
207:17 222:3
230:25 243:9
248:9 251:20
260:19,22,23
261:5 270:3
279:16
arik   39:14 191:8
201:11 220:23
arises   96:8
arising   109:13
arkansas   195:5
196:16,20 197:2,7
197:10,12,16
198:2,11
arm   210:12
arrived   197:9
art   1:25
artakeback.org.
197:3
article   197:6
articles   197:6
articulate   167:20
236:9,9 238:22
articulated   180:3
193:20 235:17
258:19
articulation
232:18
aside   235:7
asked   63:19,24
64:1 73:12 78:4
84:5 154:16
157:10,11 166:7
166:25 197:10

206:23 211:6
267:20
asking   45:20 46:8
46:19,22 64:15
72:14 77:2 83:8
98:15 101:15
107:11 134:22
154:17 171:6
178:13 186:13
200:8 202:10
250:21 280:15
asks   267:23
aspect   150:2
assert   88:17 247:3
assertable   280:10
asserted   48:5
88:18 89:7 198:18
233:1 262:3
assertions   279:17
assess   130:23
assessment   54:7
69:6 70:9 97:20
98:7 128:16 140:6
160:23 256:24
275:21
asset   74:17 90:16
281:11,13,14
assets   74:12,13
78:24 151:9,20,22
152:9,10,21,24
153:5,22,22
172:23 173:5
assistance   100:1
associated   144:1
association   3:22
12:3 17:3 22:3
26:22 32:3 81:5
198:10 257:20
assume   55:4 60:3
93:6 161:2,5
182:20 246:16
assumes   125:15

**assuming**  87:12
171:1,24 182:16
186:21 207:3
225:10,14 247:1
**assumptions**
198:5
**assurance**  198:21
**assurances**  97:14
**assuring**  238:15
**atkinson**  40:23
**attached**  50:14
176:11 198:18
199:8
**attack**  65:20
83:22 231:12
**attempt**  206:24
232:2
**attempted**  109:1
121:18 206:15
264:20
**attempts**  94:24
**attest**  189:21
**attorney**  37:1,2
37:16 39:2,16
155:8,8 203:1
204:13 206:7,22
207:1
**attorney's**  200:2,3
**attorneys**  36:4,12
36:19 37:9 38:2,9
38:16 39:9,17
40:8 105:19 137:1
139:25 203:8
204:16
**august**  209:15
237:22 266:19
**authority**  63:21
63:21 79:6 250:4
278:5
**authorization**
80:10 231:19
**authorized**  83:17
84:11 231:16,17

**authorizes**  80:7
**authorizing**  5:9
18:14
**automatic**  6:21
7:4
**automatically**
62:7 127:4
**available**  46:22
114:4 159:7
180:23 192:9
212:11 213:4
230:7 243:22
245:6 271:5
**avenue**  36:20
37:10,17 38:3,10
**avenues**  227:7
**avoid**  72:10
101:23 202:8
**avoiding**  111:12
112:3 114:10
**awarded**  239:7
**aware**  60:6 90:12
97:17,19,20
109:18,20 125:18
150:17 152:14
**awful**  103:12
**awkward**  67:12

**b**

**b**  1:21 62:9
133:24
**b.r.**  66:7,8,10,13
66:17 70:6 154:5
224:11 256:6,8,12
256:13 257:10
266:12,14 267:2
267:17 268:11
277:1
**babies**  3:11 11:16
16:15 21:15 26:11
31:15
**back**  54:11 74:23
82:13 92:10
113:13 121:23

122:6 123:21
137:7 140:12
141:4 156:2,20,24
157:22 166:21
167:17 169:3
170:2,14 172:15
175:16 176:13
178:8,9 179:15
183:12 199:15
205:13 217:17
218:5,22 234:16
249:12
**bad**  206:3 238:10
**balance**  48:23
51:7,14 52:24
58:2 70:8,9 85:16
85:18 113:3
121:16,16 125:16
136:10 144:3
189:6 200:24
201:7 221:25
222:22 227:5
250:9 256:18,24
276:2
**balanced**  230:16
233:4,13
**balances**  188:20
**balancing**  91:1
94:4 103:10 108:6
113:13 178:23
217:10 250:7
266:15 277:7
**ball**  40:24
**baltimore**  37:4
**bank**  66:16 81:5
268:11
**bankr**  66:7,9,10
66:12,14 70:7
81:15,15 256:6,8
256:15 262:10,10
266:25,25
**bankruptcy**  1:1
1:12,23 2:12 5:4

5:20 6:15 7:19 8:5
10:5,12 28:10
61:12,24 62:6,7
63:2,5,6,9 64:9,11
65:23,24 66:2,18
76:1 81:12 86:12
93:25 111:4,15
129:14 154:23
155:17 199:22
203:14,22 221:10
224:11 226:25
229:25 230:2
234:24 245:2
259:17,17 260:7
263:16 265:7,19
266:7 268:7,7,13
269:20 273:18,19
277:19,19 280:1,5
**bap**  61:25
**bar**  150:18
**bare**  153:7
**bargained**  272:18
**bargaining**
272:19
**barker**  40:25
**barking**  221:13
**barnes**  3:21 12:2
17:2 22:2 26:21
32:2
**based**  53:9 55:14
57:19 68:13 71:17
71:20 74:2 77:6
89:1,8 97:20
113:20 119:4
123:23 125:25
126:5,6 127:22,24
128:15,20,25
129:8 130:3,17
132:8 135:13
143:4 160:23
164:2 173:21
217:6 225:14
230:15 241:16

250:19 257:23
261:13,19 268:2
269:2,10,13
279:17 280:11
**baseless** 249:8,10
**basic** 277:22
**basically** 56:17
103:13 172:5
217:19,21 221:12
278:22
**basics** 139:9
**basis** 67:15 72:22
73:14 78:4 81:13
82:7,24 83:20,22
97:16 107:17
116:3 117:7 124:4
128:7 136:3 140:4
140:18,24 147:25
149:5 151:12
188:5 225:13
226:2,7,20 237:5
253:12
**bass** 20:17 40:14
44:9 146:17,17,18
146:21,23 154:8,9
154:11,14,21
155:2,7,11,19,23
156:3,6,11 254:25
**battle** 91:18
**becoming** 243:13
**beeman** 265:9
**began** 86:5
**beginning** 65:16
187:9 228:12
229:22 242:19
**behalf** 2:14,19,23
3:4,10,17,21 4:7
4:15,20,25 5:5,22
6:16,25 7:8,12,20
8:6,12,18 9:4,12
9:15,20 10:6,13
10:18,23 11:3,9
11:15,22 12:2,11

12:19,24 13:4,19
14:4,10,17,25
15:2,7,12,16,22
16:2,8,14,21 17:2
17:11,19,24 18:4
18:10 19:10,16,23
20:5,8,13,22 21:2
21:8,14,21 22:2
22:11,19,24 23:4
23:20 24:4,10,17
24:25 25:2,7,11
25:17,22 26:4,10
26:17,21 27:7,15
27:20 28:4,11
29:4,9,16,23 30:5
30:8,13,22 31:2,8
31:14,21 32:2,11
32:19,24 33:4,20
34:3,10,17,25
35:2,7 39:2 65:14
71:10 92:24
146:25 189:14
191:5,9 195:8
198:10 201:11
225:20 227:19
231:16 238:21
243:1 246:20
247:25 279:24
281:2
**belabor** 202:12
205:4
**belief** 129:12
192:15
**believe** 44:10
46:15 47:25 53:20
59:23 66:22 70:1
80:6 83:17,19
84:10 85:15 87:11
87:11 89:14 90:24
97:3 100:20
101:20 102:18
103:4,7,24 105:20
106:12 113:17

121:10 143:3
147:15 148:5,17
149:2 185:21
190:16 198:8
200:19 207:16
211:19 215:16
236:10 251:18
255:12 258:8,13
260:8,21 261:5,23
262:25 263:6,13
263:24 264:3,11
264:13 267:8
268:3,16 270:13
271:1,12,19 272:3
273:20 275:13
277:2,5,17 278:7
279:7,7 280:4
282:3
**believed** 105:21
276:23
**believes** 127:21
129:8
**believing** 128:7
**bell** 74:25
**belong** 69:12
**ben** 44:23
**bench** 6:1 13:8
18:21 23:8 28:15
33:8 178:3 260:8
**benedict** 41:1
**benefit** 82:25
84:14 92:17 109:8
109:19 116:20
120:23 152:9
219:5 222:19
244:1 249:3
273:12 275:23
**benefits** 101:25
105:13 146:7
222:21 264:8
**benjamin** 36:8
37:20 54:20 157:6
163:11

**bernard** 41:11
**bernhoff** 206:18
**bernie** 65:14
**best** 92:1 130:23
141:19 150:6
230:2 236:8 240:8
260:25 281:21
**beth** 36:9 41:23
44:24 63:17 67:24
248:11
**better** 63:13
101:25 122:10
125:10,10 222:15
**beyond** 58:4 61:9
63:11,16,19 92:2
112:11 114:6
133:14 153:16
189:7 217:25
234:20 240:5,20
259:11 266:10
280:17
**bgi** 265:9,10
**bickford** 41:2
**big** 145:4 168:25
206:1 207:16
209:6 227:11
228:14 237:5
**biggest** 208:2
212:8 237:8
**bill** 48:2
**billion** 92:12
205:13 208:22
209:3,8,14,17
212:5,6 213:15
223:7 232:20
244:18 249:7
272:24
**billions** 220:22
241:3 243:20
244:24
**bind** 73:8,9
**binder** 271:11

**binding** 59:1,14
**bit** 50:3 82:13
  84:3 187:13 202:8
  241:24
**bizarre** 59:13
  115:8
**blabey** 41:3
**black** 173:22
**blackletter** 58:16
**blackline** 8:1
**blacklined** 282:2
**blame** 204:10
**blaming** 203:17
  248:24
**blasio** 257:20
**blatant** 55:9
**blatantly** 220:5
**blazing** 103:14
**blood** 180:5
**bludgeon** 105:16
**blue** 3:21,21 12:2
  12:2 17:2,2 22:2,2
  26:21,21 32:2,2
**board** 223:25
**boards** 78:1
  147:24
**body** 238:3
**bona** 259:12
**bond** 52:17
  118:15,18 119:5,6
  119:8,25 120:12
  120:13 122:3
  135:22,24 152:14
  152:22 153:2,13
  153:25,25 188:21
  201:7 224:17,19
  225:4,5 227:6
  233:18,19,22
  239:2,8,10,18
  240:4,9,19,24
  241:11,12,14,16
  242:16,16,18
  250:4 276:19,20

276:24,25 277:3
  277:14,17 278:6,7
  278:11,13
**bonding** 120:15
**bonds** 119:15,19
  233:24 235:20
  277:23
**boneheaded**
  209:16
**booted** 111:8
**bound** 84:3
  259:22
**bounty** 237:11
**box** 247:5
**brauner** 41:4
**breach** 89:16
  232:13
**breached** 89:18
**breaching** 89:3
**break** 156:19
  157:19
**breath** 136:25
**breathless** 55:15
**brian** 7:20 8:6
  15:16 18:10 37:6
  42:2 48:9 251:15
**briccetti** 81:5
**bridgeport** 39:4
**brief** 55:17,21
  58:22 61:16 71:21
  79:7 89:4 148:21
  154:18 156:21
  184:1 189:5
  199:15,17 214:7
  220:10 230:11
  247:2 248:8,9
  252:8
**briefing** 109:21
  109:24 115:15
  149:1 154:16
  155:14 255:5
**briefly** 60:8
  145:16 147:2

158:4 219:23
  225:18 229:6
  243:2 248:13
  255:23 257:16
**briefs** 55:24 94:9
  103:4 211:5
**bring** 102:22
  193:24 195:10
  203:8 215:8 231:8
**bringing** 126:11
  206:2 228:13
**broad** 38:18 71:8
  80:10 119:3
  147:17
**broader** 65:7
  278:10
**broke** 157:11
**brooks** 40:25
**brought** 49:8 63:4
  63:6 203:15 211:2
**brown** 256:15
  257:9
**bryant** 39:10
**built** 167:14,16
**bulk** 52:16 231:7
**bullet** 117:8
**bulletproof** 116:4
  116:12
**bump** 239:23
**burden** 82:21
  171:6,9,11,11,19
  171:22 179:21,22
  179:23,24 184:4
  223:19,20,21
  233:16 256:2,17
  261:7 270:10,21
  270:22 271:13
  272:22 275:25
**burdens** 114:8
  252:16
**business** 55:17
  56:3,10 126:25
  127:6 128:21

139:16 142:1
  143:5 168:11
**busy** 181:12
  228:25
**butner** 277:22
  280:6
**button** 197:3

**c**

**c** 4:20 9:20 12:24
  15:7 17:24 20:13
  22:24 25:7 27:20
  30:13 32:24 35:7
  36:1 41:18 42:1
  42:20 44:1 62:3
  119:22,23 160:3
  193:5 196:2 283:1
  283:1
**c.d.** 66:7
**cabin** 92:1
**cabined** 70:1
  263:1 264:4
**cabinet** 201:17
**cal** 66:7
**calculable** 135:21
  135:21
**calculate** 135:18
**calculation**
  160:23 240:14
**calculus** 124:25
  230:13 232:23
**calendar** 200:16
  271:4
**california** 44:8
  65:15,16 246:14
  255:16
**call** 163:14,15
  206:18 215:21
  246:18
**called** 157:2,18
  169:19 210:15
  248:1 254:14
  258:15,16 264:9

calling 200:8
calls 206:13
calpine 81:15
  179:25 266:25
camera 245:21
camps 267:18
canada 151:24
  153:7,8,11
canadian 25:11
  25:12 38:16,17
  44:8 48:15,24
  146:25 147:1,5,11
  147:15,25 148:7
  148:16 149:18
  151:3 152:5,20,24
  153:3,5 255:10,22
  278:5 279:13,16
  279:21,22,22
canceling 146:10
candid 112:19
  253:25
candidates 224:3
can't 240:7,14
  253:19,20,21
capable 178:4
capital 262:7
capitol 39:18
caplin 40:7
care 54:10 135:19
  220:21 235:15
  273:6
carefully 91:22
  197:23 223:1,16
  258:6
carried 82:21
carry 143:11
  275:17
carter 69:17
carved 124:5
  165:7
case 1:3 38:1 47:8
  49:14 50:24 51:1
  51:18,21 52:19

53:9 54:23 58:25
59:4,4,5,15 64:4
69:14,15,17 70:18
75:4,5,17,24 76:4
76:10,22 77:25
80:17 84:21 85:3
85:11 86:3 91:21
94:8 100:8 106:6
106:7,17,20,21
107:17 108:9,13
110:19 114:6
115:8 118:17
120:6 128:6
131:18 140:19,20
147:5 151:7,23
153:19 154:5
161:14 166:11
168:12 172:4,7
179:25 182:19,19
183:9 188:9
192:21 203:15
204:11,19 207:14
207:23 208:13
210:3,24 211:2,15
212:2,21 214:8,15
214:20 221:4
227:19 230:15
234:24 235:1
236:17 237:5,8
238:1,2 243:11
245:1 249:20
256:12 257:3
260:13 262:1,5,18
264:12 265:5
267:7 273:18,19
277:5 279:10
caselaw 277:15
cases 58:21 71:21
71:25 80:23 84:18
89:4,13,21 90:8,9
93:15 103:3
106:19 111:25
119:12,17 154:22

154:25 191:14,15
205:23 210:1,13
224:8,11,22 236:3
254:13 266:14
267:5 268:6,13,19
277:23 279:23
cash 142:7 212:14
  236:5
cataclysmic 201:1
catastrophe 99:15
  239:24
catastrophic
  240:24
category 69:4
  118:25
caught 50:3 88:22
causal 131:7
cause 62:15 72:19
  86:2 133:25
  137:14,15 143:14
  154:1 175:25
  177:10 269:3,23
caused 91:7 137:5
  153:14 203:24
causes 89:25
  125:4 241:4
  272:17
causing 95:4
  105:22 116:19
caveat 238:25
cayuga 278:1
ccaa 151:24
  152:12
cdc 197:25 205:6
cease 191:15
cede 94:11 251:11
centerpiece
  104:16 105:9
centers 205:16
  231:4
central 58:9 59:5
cents 122:1

century 91:19
cert 67:7 87:17
  111:25 230:9
certain 2:23 4:3
  5:12 11:3 12:7
  16:2 17:7 18:17
  21:2 22:7 25:11
  25:22 27:3 31:2
  32:7 38:16 44:8
  74:6,6 79:11 98:5
  101:12 107:3
  117:17 134:10,16
  139:10 146:25
  147:7 185:24
  192:16 195:15
  213:13 214:11
  234:2,7,22 237:20
  238:5 239:25
  254:15 255:9
  258:13,22 259:19
certainly 57:9
  64:14 68:9 69:15
  77:16 87:17 92:24
  102:24 103:7
  109:16 114:1
  117:11 119:6
  126:24 128:1,4,6
  128:14 132:6
  135:6,18 148:20
  149:18 150:9,9
  151:3 168:15
  178:8 182:18
  225:7 246:7
  247:21
certainty 87:25
certificates
  197:13
certification
  104:8 110:21
  246:5 247:6
certified 283:3
certiorari 61:22
  87:15 136:12

cetera 78:2
challenge 199:7
challenges 134:15
chambers 40:2
  249:1
chance 77:18
  138:11 207:7
  213:24
change 73:23
  148:13 160:10
  176:24 181:21
  190:12 193:13
  194:12 196:11
  197:18 219:2
  226:11 237:17
  258:18
changed 141:5
  206:20
changes 226:12
  238:5 282:2
changing 138:17
  141:3 142:5,7
  145:1,2,2 246:9
chapman 70:6
chapman's
  257:11
chapter 6:2,6 13:9
  13:12 18:22 19:2
  23:9,13 28:16,20
  33:9,13 81:9
  128:6 241:20
  254:13 266:23
character 125:13
characterized
  256:4,5
charged 106:8
  251:18
charter 84:20
chateaugay 84:21
check 234:15
  247:5
checking 250:17

chen 41:5
cherry 223:14
cheryl 8:15 14:7
  19:13 24:7 29:13
  34:7 40:15 193:5
child 244:9
children 135:20
  243:7,18 244:2,23
  245:3
children's 3:7
  11:12 16:11 21:11
  26:7 31:11
choice 91:11
  92:20
chose 110:21
  204:23
chris 227:18
christmas 217:23
christopher 4:7
  12:11 17:11 22:11
  27:7 32:11 38:6
  42:15
chubb 262:15
cia 213:2,3
cil 262:9
cir 121:14 257:2
  257:21 262:16
  265:11,13 267:4
  277:25
circle 40:9 123:14
  123:21
circuit 57:14 66:1
  69:15 73:8,22
  75:5 76:10 82:25
  84:23 85:5,11
  86:9 102:15
  109:23,25 110:2
  110:20,22 111:22
  217:14 228:15,16
  230:9 232:7 236:8
  241:18 242:10
  258:14,18 259:18
  260:10 262:1,13

262:20 264:25
  265:14 269:10,18
  275:16 280:6
circuit's 84:2
circuits 76:12
circumstance
  118:22 120:4
  149:23 150:1
  151:18 152:18
  265:15
circumstances
  73:24 90:10
  119:18 169:24
  204:19 210:20,23
  256:11,15 271:13
citation 262:14
citations 45:16
cite 59:1,4 140:19
  196:15 210:4
  232:2 267:2
cited 89:4,13
  148:23 149:7
  197:15 210:13
  224:22 249:24
  268:6,12 277:24
cites 58:22 81:14
  120:17 197:6,25
citing 224:20
  258:25 260:9
citizens 203:17
  204:20 222:16,19
civil 199:21 211:7
  212:13 220:20
  252:14,17,24
  277:16 281:6,9
cla 111:13
claim 90:16,17
  91:13 92:8 147:25
  149:6,9 150:24
  152:15 212:20
  213:11,15 230:20
  232:8,11,12,13
  236:21,25 261:15

261:20 262:24
  272:23 279:23
  281:9
claimant 209:12
  212:21
claimants 2:20
  8:13 10:25 13:21
  14:5 15:24 19:11
  20:24 23:22 24:5
  25:19 29:5,11
  30:24 33:22 34:5
  93:4 187:13
  202:16,18 209:4,9
  211:11,12 213:16
  213:18 217:3
  221:22 231:5
  244:19 255:11
  261:8,21 276:18
  278:19 279:9,16
  279:22,22,24
claimants' 255:22
  279:13,21,25
claims 68:16 69:9
  69:12,19,20,25
  82:14 85:25 87:5
  87:6 88:14,20,24
  88:25 89:1,5,7
  90:13,13,14 91:3
  91:3,9,25,25 92:9
  92:16 93:14 94:2
  102:24 108:19
  125:14 136:21
  137:3 147:11,16
  147:17 148:7,16
  211:7,8,9 212:18
  213:22 230:23
  231:8,24 232:3,9
  232:9,18,19,19,24
  238:22 258:22,24
  259:6,7,8,19
  261:2,9,11,18,22
  261:23 262:1,2,17
  262:19,25 263:5,7

[claims - committee]                                                          Page 14

263:21,23 264:2,2
272:15 275:9
280:9,9,10,10
**clarification**
281:5,16
**clarified** 114:17
**clarify** 45:24
46:10 92:14
112:16 113:15
250:24 281:11
**clarity** 74:8 86:18
**clash** 226:24
**class** 90:11 92:9
244:8
**classic** 232:10
**classification**
259:15,25 260:22
**claudia** 42:24
**clause** 139:9,10
213:13 258:23
**cleaner** 97:11
99:9
**cleanest** 184:22
**clear** 46:6 48:17
57:12 59:12 61:18
77:21 92:2 96:8
96:11 100:23
101:14 131:16
136:20 145:13
164:4 165:18
171:25 173:8
185:18 190:16
192:11 193:18
194:17 208:5
211:1 213:4
218:15 221:8
224:22 239:5
243:11 244:4
255:1 258:13
261:10 262:13
263:1 265:3
268:22 270:6
272:3,17 274:20

277:4 278:14
**clearly** 51:11,20
53:12 60:19 63:2
73:24 83:19 96:6
105:6 127:24
138:22 220:16
223:12 259:17
260:24 261:7
266:20 267:20
270:7 271:9
279:19
**cleavon** 103:16
**clerk** 5:12 18:17
200:8
**clerk's** 157:23
**client** 247:19
**client's** 131:18
**clients** 93:3
108:23 131:23
149:6 151:21
152:10 153:21
154:1 247:3,13
248:5 253:23
**client's** 250:9
**close** 214:12 223:6
269:16,18 276:9
**closed** 104:22
**closely** 53:15
**closer** 135:2
**closure** 237:1
**cloud** 223:23,23
**cmfn** 152:15
**code** 86:15 139:11
142:12 245:2
263:16 265:19
269:20 277:19
280:1
**cohen** 38:8
**colin** 40:17 196:2
227:8
**collateral** 57:13
57:14 58:6,14,17
58:20 59:6,10

**colleague** 44:24
191:8
**colleagues** 146:4
**collectability**
121:11
**colloquy** 160:15
190:17
**colorable** 149:5
**columbia** 204:17
**combat** 243:21
273:13
**come** 60:18 72:12
74:23 77:18
101:25 123:3,7,13
146:18 150:24
151:10 166:21
167:17 169:3
170:2 172:15
175:21 177:9
179:15 231:17
232:1,16 233:21
238:4 241:10
247:20 249:22
250:13 269:16
**comes** 75:5
108:18 177:6
184:24 185:7
217:11,11 241:4
246:13 275:14
**comfort** 170:16
174:8
**coming** 49:4
104:12 117:2
139:24 161:19
188:25 208:18
209:7 215:19
228:17 235:3
236:4 269:18
**comley** 39:1 65:22
122:18 186:7
**commencement**
273:18

**comment** 120:4
249:14 250:23
254:4 281:2
**comments** 253:25
254:8 281:5
**commit** 242:8
**commitment**
124:1 225:12
278:25 280:19
**committed** 88:1
225:12 236:22
**committee** 2:19
3:1,4,7,8,11,14
4:5,23 8:12,16,19
9:2,5 10:24 11:6,9
11:12,13,16,19
12:9 13:2,20 14:4
14:8,11,15,18
15:23 16:5,8,11
16:12,15,18 17:9
18:2 19:10,14,17
19:21,24 20:23
21:5,8,11,12,15
21:18 22:9 23:2
23:21 24:4,8,11
24:15,18 25:18
26:1,4,7,8,11,14
27:5 28:2 29:4,10
29:14,17,21,24
30:23 31:5,8,11
31:12,15,18 32:9
33:2,21 34:4,8,11
34:15,18 37:9
39:9,17 93:3
119:21,22 120:8
137:16 189:15
191:5 201:12
202:6 214:14
221:21 222:4
223:24 224:21
243:1,5 244:4
276:17 278:18

committee's  8:9
10:21 13:17 14:1
15:20 19:7 20:20
23:18 24:1 25:15
29:7 30:20 33:18
34:1 191:2
committee's  2:16
committing  237:9
237:24
common  88:21
89:6
communications
137:18 266:12
277:1
community
111:17 191:20
205:16 207:24
companies  99:11
213:8
company  58:9
126:18 129:9
182:20 219:5
262:15 266:14
267:1 273:12
company's  89:17
comparison
107:21
compel  235:25
compelling  103:4
114:18
compensate  245:3
compensated
241:13,16
compensation
85:25 207:21
212:17,23 213:2
230:24 231:1
243:17 244:16,23
compete  93:2
competent  128:1
competition
147:16

complaint  232:17
250:2
complaints  89:4
91:18 232:2,10
250:1
complete  82:14
163:3,17 167:7
252:23 253:17
completely  52:3
54:24 55:2 59:16
96:7 108:2 151:8
192:11 220:25
complex  123:12
complicated
51:12 69:10 108:3
112:9 266:7
comply  49:17
213:2
component
110:15 114:1
210:12
comprehensive
73:23 280:4
comprehensively
260:22
compromises
266:9
computer  248:12
concede  60:13,20
60:22 75:18,21
102:16
conceded  51:1
60:21 185:25
229:9
conceivably  61:21
265:8
concept  143:2
concern  63:10
71:13,16,19 72:2
73:3,4 74:3 78:24
84:2 106:13
114:13 118:1
149:13 151:2,16

176:6 177:4 179:4
259:21
concerned  48:4
64:24 71:3 73:16
74:19 76:9 88:17
181:22 185:10
258:20 259:2
273:7
concerning  46:17
concerns  46:2
73:6 75:1 117:21
177:8 217:21
226:24 259:20
concession  52:9
52:11,20,20 56:17
56:18 57:7 58:6
59:22,24 60:15
concessions  164:7
167:7
conclude  188:9
270:11
concluded  56:11
123:13 125:9
249:3 282:6
conclusion  63:23
63:25 189:2 228:7
conclusions  6:5
13:11 19:1 23:12
28:19 33:12
236:10 240:22
conclusory  126:3
126:20
concrete  56:12
146:11 253:6
concretely  109:11
109:14
concurrent  97:2
condition  95:21
109:24 119:24
215:1,11,17
225:11,24 270:2
280:17

conditions  49:18
77:25 172:19
176:11 187:19
189:11 213:13
215:9,10 225:3
226:17 227:23
228:1 229:17
233:10 239:12
241:22,22,24,25
242:13 271:20
278:20,21 279:4,6
279:11
conduct  89:2,17
conducted  230:11
conference  7:11
45:14,23 201:18
249:1
confess  70:17
confident  105:10
confine  268:3
confirmation  2:11
4:12 5:2,19 6:1,13
6:21 7:5,17 8:3
9:10 10:3,11
12:16 13:8 14:23
15:15 17:16 18:7
18:21 20:3 22:16
23:8 24:23 27:12
28:8,15 30:3
32:16 33:8 34:23
44:5 55:25 74:5
78:19 79:19,19,24
80:7,9 81:8 89:22
92:24 96:7 101:9
104:21,22 106:8
106:24 114:16
123:6 124:10,16
124:17 128:8
155:15 156:1
157:2 158:9
164:18,21 165:20
172:18 173:11
177:14 201:2

204:1,17 208:9
209:16 210:7
211:5,6 222:14
236:23 238:6
244:14 247:12
254:22 255:3
260:13 266:22
279:19
**confirmed** 148:9
**confirming** 6:6
13:12 19:2 23:13
28:20 33:13
254:12
**conflicts** 259:23
**confuse** 203:16
**confusion** 165:21
184:22
**congress** 121:7
**congressional**
46:17
**congressionally**
86:11
**conjectural** 77:4,6
**conjecture** 164:10
164:11
**conm1ittee's** 29:1
**connecticut** 15:11
39:2 44:8 65:5,19
65:22 122:18,21
136:5 137:1
142:11 147:3
156:15 157:13
158:12 186:8
190:18 191:25
192:5 195:3,15
198:17 207:5
209:6 254:20
274:13
**connecticut's**
255:17,19
**connection** 55:22
96:10 97:15 131:7
159:23 160:7

194:8 196:6
260:12
**connections** 193:9
**consensual**
111:16 176:19
248:19
**consensus** 236:3
**consent** 68:17
87:5
**consenting** 214:4
**consequence**
103:1,2
**consequences**
124:7 125:3 137:5
205:14
**consider** 56:13
104:25 115:19
117:11 125:2
155:25 212:2
250:6,7
**considerable**
52:10
**consideration**
79:6 96:3,4 144:2
152:4 264:14
265:24
**considerations**
69:11 75:23
268:18
**considered** 68:6
91:17 250:5 261:1
266:15
**considering**
132:16 155:22
225:2 250:23
**consistent** 66:23
95:10 120:16
272:21 280:13
282:3
**consistently**
197:15
**consla** 41:6

**consolidated**
119:5 156:8
**constituencies**
228:18
**constituents**
131:13
**constitute** 53:12
73:5 141:11,12,14
176:8 265:23,24
**constituted** 99:11
**constitution** 86:14
**constitutional**
75:22 76:7 116:14
138:18 150:3
230:22 232:23
**constrained**
220:17 279:18
280:7
**construct** 184:3
**constructed**
223:16
**consult** 247:19
**consumer** 88:18
88:20 89:5 232:12
263:11
**consummatable**
238:16,16
**consummate**
96:14,25 229:15
233:6 235:23
239:15,17 241:17
**consummated**
71:2 75:6 76:12
82:2 84:12 85:14
85:15 264:23
265:14,19
**consummation**
73:20,22,25 76:19
77:22 85:8 96:16
97:6 173:1 269:19
**consummations**
143:19

**contain** 105:3
126:2 185:9
**contained** 122:8
**contains** 213:12
**conte** 20:7
**contemplate**
65:25 79:20 215:6
230:7 280:7
**contemplated**
96:6 97:21 99:17
101:19 105:6
**contemplates**
124:16 215:7
**contemplating**
226:16 233:8
240:20 245:16
**contend** 65:25
125:1
**contended** 252:11
**contends** 214:14
**contention** 54:22
**contested** 76:14
**context** 51:6,16
55:11 57:5,8
59:23 60:23 61:23
71:24 86:3 91:1
92:4 94:23 107:11
117:9,10 125:23
176:18 186:2
240:21 260:2
**contingent** 2:20
8:13 10:24 13:20
14:5 15:23 19:11
20:23 23:21 24:5
25:18 29:5,10
30:23 33:21 34:4
221:21
**continue** 83:19
168:10 225:14
**continued** 62:16
82:4 124:22
**continues** 62:18

**continuing** 141:23
234:23 278:25
**contours** 142:17
**contradiction**
76:20
**contrary** 70:11
98:15 115:8
167:11 222:18
272:4
**contrast** 231:17
**contrasted** 274:25
**contribution**
153:9
**contributions**
99:13
**control** 63:22
174:11 228:14
263:10
**controlled** 106:10
**controlling**
147:21,24
**controversies**
75:24
**convenience**
107:2
**conversation**
78:25 240:17
**conveyance**
212:10
**convicted** 124:21
127:3
**convince** 103:17
**cool** 235:7
**coordinate** 106:4
**coordinated**
106:2
**copy** 49:24 50:1
**corp** 70:6 81:15
256:6 259:1
262:15 266:12,25
267:17 277:1
**corporate** 89:25
99:15,22 107:3

147:19 148:12
**corporation** 256:8
**corporations**
147:22
**correct** 46:5 47:15
90:25 97:4 123:17
127:2 145:18
160:5 180:20
181:25 215:3,25
216:2 219:18
247:25 266:20
**corrected** 56:25
57:10
**correctly** 215:14
251:4 277:2
**corresponding**
244:1,7
**cost** 121:24
139:20 143:22
178:11 205:12
209:14 234:23
**costs** 122:8 135:18
143:25
**coterminous**
184:23 212:1
**couched** 115:9
**could've** 106:2,5
107:6 112:1
**counsel** 67:21
95:19 136:16
175:15 246:18
276:17 278:18
**count** 132:6
171:24
**counterfactual**
231:2
**countervailing**
107:24 115:3
**counties** 198:11
**countless** 191:14
**country** 111:17
243:14 244:17
265:1 283:21

**counts** 108:18
131:17,24 274:5
**couple** 45:22
130:21 184:1
186:22 187:11
224:8 248:15
**coupled** 80:24
**course** 51:19
58:21 62:1 64:25
80:6 81:13 86:8
87:16 93:22 104:3
104:11 115:10
125:20 136:15
156:14 163:13
188:1 191:15
202:12 208:4
243:16 264:22
265:17,21 270:24
276:20 278:24
**court** 1:1,12 44:2
45:5,10,20 46:1
46:13 47:1,6,10
47:19,23 48:8,11
48:15,16,19 49:2
49:12,17,18,21,24
50:1,7,8,10,17,19
50:22 51:17,20
53:8,13,21,21
55:13,21 56:9,16
57:17 59:3,6,9,20
60:9,15,19 61:4,6
61:8,22,25,25
62:2,4,6,10,12,13
62:17,18,21 63:2
63:5,6,9,16,20
64:3,9,11,18,19
64:23 65:3,11,11
65:13,17,19,24,25
66:5,18 67:7
68:19 69:10,16,19
71:16 72:5,9,14
72:24 73:18 75:3
75:16 76:4,15,25

77:2,11,18,20,21
79:13,18 80:2,5
80:17,20,22 81:10
82:16,18 83:14
84:6,8,10 86:7
87:8,9,10,13,16
87:17,19,23 88:3
88:4,5,9,16,23
89:10,21 90:24
91:12,14,16 92:23
93:17,20 94:6,13
94:17,19 95:7,12
95:13,15,18 96:1
98:14,25 99:6,7
101:9 102:9
104:10,12 105:1
107:12,14,19,24
108:5,13,23
109:22,25 110:6
110:19,22 111:4,4
111:19,21,24,25
112:13,14,24
113:1 114:20,25
116:5,6,7,8,10,12
116:17,23 118:5
118:12,14 119:20
119:21 120:7,14
121:3,5,12 122:9
122:9,12,16,19
123:15,18,20,25
125:1 126:24
127:14 128:12,15
128:18,20 129:1,5
129:7 130:4,6
131:14,16,21,23
132:1,3,11,13,20
133:7,9,17,19,22
134:2,19 135:16
136:11,12,19
137:9,11,21,23,25
138:2 139:5 140:3
140:6,15,18,22,24
141:6,8,10,16,18

142:6,8,10 143:2
143:17,20 144:4,6
144:8,12,14,17,19
144:21 145:3,7,10
145:18,25 146:2
146:16,19,22
147:13 148:14,19
149:2,4,20,23
150:1,2,16 151:6
151:24 152:4,5,12
153:5,13,21,24
154:4,8,10,13,20
154:23 155:1,5,10
155:13,20,24,25
156:4,7,12,24
157:8,10,20 158:3
158:8,23,24 159:3
159:6,9,11,14,16
159:19,21 160:3,6
160:12,18 161:2,4
161:7,8,16,18
162:2,13,24 163:3
163:10 164:3,14
164:17,18 165:2,4
165:6,12 166:6,16
166:18,20 167:10
167:18,21,25
168:3,13,17,19,22
169:8,10 170:18
170:21 171:4,8
172:10,16,20
173:1,13,15,18,20
173:24 174:12,17
174:25 175:3,14
175:19,24 176:13
176:15,20,22
177:13,15,17,22
177:23 178:2,9,9
178:14,15,17,21
178:25 179:1,4,7
179:10,12,19,21
180:2,14,21 181:2
181:4,19 182:5,8

182:14,16,16,21
183:2,10,20,25
184:7,9,16,18,20
185:2,6,12,14,16
186:5,9,12,21,24
187:3 188:5,24
189:17,19,22,24
190:4,7,14,22,25
191:7,23 192:4,6
192:11 193:5,8,15
193:24 194:5,7,14
194:22,24 195:11
195:22 196:2,5,13
196:17,21,24
197:17,21 198:14
199:5,12,22 200:7
200:8,11,23 201:9
201:14,16 202:1
204:10 214:24
215:3,5 216:2,7
216:25 217:18
218:16,25 219:10
219:14,16,19,22
220:1,12,16 221:2
221:17,23 223:13
224:6,9 225:1,8
225:10,19 227:17
227:25 228:4,8
229:25 230:2
232:7 233:9 236:1
236:7,7 238:14
239:13 240:9
242:6,6,21,24
243:3 245:10
246:11,17,21,24
247:9,16,16,22
248:7,24 250:6
251:1,2,5,6,13
252:3,6 253:20
254:3,5,9 255:6,8
257:22,24 259:11
259:17,21 260:3
262:21 265:6

266:10,20 267:22
267:24 268:10,22
269:6,9,10 270:14
270:17,21,25,25
271:4,8,14,16
275:19 276:22
279:2 280:8 281:3
281:11,16,17,19
281:23 282:5
**court's**  44:5,5
48:14 61:17 62:6
62:7 63:11 64:1,9
64:10 67:2,6 70:9
70:20 71:23 72:17
77:17 83:9 109:17
163:15 164:24
166:1 167:5
170:23 182:12
187:18,20 189:9
203:22 215:13
217:13 224:15
227:3 230:7 237:4
**courts**  47:11
53:20 54:3,6,10
63:5 69:21 75:6
75:23 81:17 82:7
84:19 85:1 86:17
87:25 105:16
109:12 112:23
181:13 210:20
257:7 260:10
262:2 265:2,2
267:5 268:13
277:16,19
**court's**  250:22
253:10 254:12,13
258:4 260:1
262:18 268:8,9,15
268:20 269:5
271:2,4,6,15
273:24 279:25
280:18

**covered**  82:16
145:25 146:2,3
155:17
**create**  97:13 98:9
98:21 101:2
111:11 138:13
240:8
**created**  148:11,12
**creates**  223:22
**creating**  103:21
138:9 184:22
**credibly**  211:24
**credit**  66:16 71:6
81:10 268:10
**creditor**  5:10
18:15 152:23
162:9 204:25
207:8 210:14,22
211:16,20 228:18
235:3 238:3
249:15 251:21
**creditors**  3:2,5,9
3:15 4:3,5,23 8:16
8:19 9:2,5 11:7,9
11:14,20 12:7,9
13:2 14:8,11,15
14:18 16:6,8,13
16:19 17:7,9 18:2
19:14,17,21,24
21:6,8,13,19 22:7
22:9 23:2 24:8,11
24:15,18 25:12,12
26:2,4,9,15 27:3,5
28:2 29:14,17,21
29:24 31:6,8,13
31:19 32:7,9 33:2
34:8,11,15,18
38:16,17 39:9
44:8 86:21,22,24
95:4 137:16 147:1
148:7,16 153:3
161:25 172:23
191:6 201:5 204:6

207:9 210:21
255:10 259:4
261:8 262:4,4
263:12,12,22
272:5,17,18,25
280:11
**creditors'** 263:19
263:20 265:10
**crickets** 253:17
**criminal** 72:21
123:10,16,24
124:6 127:1,10
138:19 139:4
165:14 166:1
167:2 170:8
186:12 203:9,15
211:8 212:18
215:24 252:10,12
252:14,17,20
253:1
**criminally** 203:7
**crisis** 85:22,23
132:4 145:20,20
192:24 209:14
227:14 243:7,13
243:21 244:3
251:23 273:14
**critical** 97:21
111:18 137:4
138:8 146:14
223:6 230:10
257:18 264:17
**critically** 83:11
**criticism** 231:12
**criticizing** 208:12
**cross** 3:21 12:2
17:2 22:2 26:21
32:2 160:12
190:14 193:15
194:14 197:22
**crosstalk** 216:6
**cry** 203:19,19

**crystal** 131:16
164:4
**ct** 39:4
**culwell** 66:12
**current** 174:19,24
244:16
**currently** 99:11
124:8 162:17
205:10 258:18
**curtail** 106:6,7
107:8
**customers** 127:23
127:25 128:2
**cut** 221:14 238:9

**d**

**d** 1:22 3:10 11:15
16:14 21:14 26:10
31:14 41:17 43:8
44:1 62:20 66:10
119:22,23 160:3
190:5 267:3 277:3
277:12
**d'apice** 11:3 16:2
21:2 25:22 31:2
**d.d.c.** 66:12 278:4
**daily** 136:3 205:9
**damage** 153:14
154:1 203:24
**damages** 241:12
241:15
**dangerous** 206:5
**danielle** 41:25
**dare** 59:9
**dark** 80:12 84:4
**darren** 41:21
**date** 57:25 70:20
70:25 72:6,8,12
72:19,22 73:5
74:10,11,20,24
76:8 77:9,9,11,23
78:1,10,14,18
79:11,14,16,21,24
80:1,8 81:23 82:1

82:22 83:5,6,16
83:18 84:11 85:4
85:7,9 95:20,20
95:22 97:3,23,24
98:5 101:22
106:24 108:15,17
123:4,5,8 124:3
124:15 132:23,24
133:14 136:23
139:2 150:18
158:9 161:3,4,10
161:20 164:20,25
166:13,14,24
169:7,12 170:1,14
170:17,22 172:17
172:19 173:5,6
174:7 177:12,18
177:18,23 178:14
179:16 180:9,10
180:15,16,17,23
181:6,8,15,15,18
181:19,20,23,24
182:2,9,10 183:8
184:8 186:11,13
186:15,22 187:19
200:6,9 211:18
215:2,12 216:9,23
217:8,9,22 218:5
218:18 219:2,3,3
219:4,7 224:2
226:4 234:20,21
234:24 236:11,13
239:3 242:7
245:19 247:12
254:17 268:14
269:3,4,11,15,23
269:24,25 270:6
270:14,15,19,20
271:3,7,16 272:10
272:12,14 273:1
274:21 275:15
278:15,16 280:15
280:16,16,17,21

283:25
**dated** 44:14
159:24 190:9
193:11 194:9
196:7
**dates** 75:15 77:17
83:10 170:11
175:2 177:22
189:8
**david** 41:3
**davis** 37:15 54:20
157:6 158:19
163:12
**day** 55:17 56:3,7
56:10 77:10
106:25 123:5
142:3 144:25
170:25 177:6
205:13,19 206:9
206:11 207:9,20
216:24 218:21
226:4 229:14,18
251:8 254:10
269:6 272:13
274:11 275:17
280:20
**days** 62:3,14
70:21 81:25 123:1
123:5 124:15
136:22 149:19,19
161:5 165:1
166:23 176:14,16
177:1 178:7
180:11,15 181:5
181:15 182:9,10
182:17 185:23
186:1 188:1
200:15 206:1
208:14 215:23
216:6,6,8,23
218:17,19,22
228:4 234:17,18
234:19 235:6,7

239:17 240:15
242:2,10
**days'** 269:22
270:8
**dc** 40:10
**de** 257:20
**dead** 166:9 170:14
**deadline** 152:2
185:22
**deal** 124:23
130:23 157:22
158:14 168:25
207:16 208:9
209:6 225:4
228:25 235:18
236:4,13,15 237:1
237:6,17 238:4,9
238:10,10 241:5
**dealing** 118:23
121:10 205:12
**deals** 273:22
**dealt** 75:16 124:1
175:12 183:13
260:8,22 271:1
**death** 130:2
197:13 205:14
207:11
**deaths** 130:19,19
131:2 136:2
196:15,20 197:7
197:16,25 205:9
206:8 207:4 274:8
274:11
**debate** 242:13
**debevoise** 36:18
**debtor** 1:9 79:15
89:2 90:4,18,21
96:11 101:18
110:25 147:12,23
148:8 149:6 151:9
151:19 152:8,15
152:25 153:1,9
184:4 226:14

231:25 234:3
241:21,24 249:11
261:20,25
**debtor's** 123:23
128:21 138:22
143:5
**debtors** 4:11 5:10
6:8 9:8 12:15
13:14 14:21 17:15
18:15 19:4 20:1
22:15 23:15 24:21
27:11 28:22 30:1
32:15 33:15 34:21
37:16 45:10 48:22
51:1 52:9 54:20
55:17,19 56:3
60:20 69:13 72:12
73:24 75:13 77:1
77:6,23 78:25
84:4,8,10 86:20
89:12,25 91:10
93:2 96:19 97:10
97:11 98:2,18,25
99:4,20 101:10
107:2 108:23
109:1,6 110:17,20
111:2 117:19,22
121:18,21 122:15
123:3 124:18,20
126:10,25 127:3
127:24 136:15
138:12 141:11
148:11 152:20
153:16,20 157:6
158:19 163:12
164:6,15,25 165:3
166:23 168:8
169:11,12 172:12
179:15 184:3,14
185:3,8,25 187:6
187:21 200:2
201:2 203:7
214:11 215:15

219:13 226:3
229:9,15 233:6
234:21 235:6,9,22
236:9 239:15
240:10 241:17
252:19 254:14
259:5,9,9 263:12
270:4,18 272:9
274:21 275:11,14
278:15,22 280:12
280:14
**debtor's** 250:16
262:4 264:3,3
272:5
**debts** 235:7
**decade** 136:13
**decades** 111:22
**december** 77:12
79:12 123:3,10
151:25 161:6,15
165:2,15,16
166:13 167:6,9
169:13,14,14,16
170:9,11,12,24
171:2 172:20
174:9,10,19,20,21
174:23 175:1,2,7
176:10,13,15,25
177:2,18,22 179:8
180:8,9,9,16,16
180:23 183:7
186:12,14,14,18
215:19,21 216:9,9
216:12,13,16,16
216:21,22 217:20
218:5 228:12
233:7 234:4
237:19 238:16
242:19 268:25
269:7 270:6,18,25
271:3,5,16 272:11
280:17

**decide** 49:7 66:18
79:11 95:13 137:2
150:10 163:19
167:10 264:1
271:14
**decided** 53:2
57:15,18 63:12
65:10 66:20 67:20
79:10
**decidedly** 48:23
**deciding** 147:8
**decision** 46:12,25
48:14 49:12 55:10
56:14,18 58:19,23
59:1,11,15 60:7
64:1,18 68:5
71:23 72:17 77:17
83:9 87:8,10,11
95:12 109:18
123:12 149:20,24
152:6 165:1 167:5
178:14 222:14
228:4 246:14
250:22 255:7
258:7 278:1,4
**decisions** 66:6
69:18
**declarant** 137:13
189:15 192:13
**declarant's** 126:5
**declarants** 134:20
189:14 195:17
**declaration** 8:15
9:1,14 14:7,14
15:1 19:13,20
20:7 24:7,14 25:1
29:13,20 30:7
34:7,14 35:1
121:19 125:25
126:2,9,23 127:20
133:2 142:4
158:21 159:22
160:7,13,14,16,18

163:6 189:21
190:8,16,23 193:9
193:17 194:8,15
195:4,9,16,18,20
196:19 197:22,23
198:3,4,16,19,21
198:25 199:1,6,8
199:12 200:25
207:6,12 217:16
222:25 223:4
227:8 244:10
273:8,10,10
**declarations**
44:12 114:21
118:9 125:17,20
126:7 131:7
132:14 134:3,11
134:16 135:12,23
137:12 144:25
158:10,16 189:5
191:1,11 192:1,3
192:10 194:25
197:24 206:10
223:1 274:24
**decree** 62:5,8 63:8
**dedicated** 152:24
153:8 191:14
192:19
**defeat** 277:20
**defendant** 123:10
**defendants** 71:20
89:9,14 150:19
276:11
**defense** 71:22
**defer** 104:2
**degree** 70:7 126:7
192:22
**del** 20:7 267:3
**delaconte** 41:8
**delay** 85:20 86:3
87:6 88:12 91:7
96:17,25 97:22,23
101:11 106:13

107:7 108:18
113:12 121:21,25
126:11 127:23
128:9 129:12,19
131:3 137:5
153:14 160:23
161:14 178:24
192:14 201:2
205:23 206:6
207:15 209:13
218:10,13 223:5
224:2 233:23
243:20,21 250:14
277:10 278:15,23
**delayed** 86:1 97:2
126:21,24 127:13
129:21 131:8,12
167:12 201:3
205:24 207:14
234:17 243:19
255:6
**delaying** 161:14
169:11 215:24
235:5 279:6
**delays** 107:16
179:6 244:15
250:14
**delconte** 9:14 15:1
25:1 30:7 35:1
121:18 127:20
128:1 129:11
130:13 159:7,14
159:15,18,20,22
160:2,5,6,11,13
160:15,17 161:1
161:11,17,23
162:4,16 163:4,5
163:6
**delconte's** 126:9
158:20 187:8
200:25 217:7,16
**delconte's** 273:10

**deliberate** 107:2
**deliberately**
185:21
**delicately** 266:8
**deliver** 218:17
**delivers** 236:15
**delivery** 217:25
**demanded** 213:10
**demonstrable**
234:19 240:23
**demonstrate**
81:10 266:24
**demonstrated**
253:12 257:12
**demonstrating**
265:17
**denial** 49:19
61:22 67:7 68:12
68:15 189:10
215:7,9 227:23,25
230:9 233:10
239:12 241:23
242:12,14 246:25
**denied** 56:10
66:21 102:7
136:12 156:4
225:24 226:20
238:23
**denies** 49:1 278:8
**deny** 63:5 187:18
228:6 229:5 239:5
278:12
**denying** 105:16
106:10 107:18
214:15 225:2
226:16 232:18
278:9
**depalma** 38:15
**department** 36:3
67:24 118:20
197:12
**dependent** 256:11

**depending** 67:5
110:7 151:7 258:2
271:6 275:16
**depends** 71:1
130:6 135:5,17
**deployed** 265:3
**depository** 114:5
**deprivation**
102:21
**derivative** 90:12
90:17 232:9,11
233:1 261:25
**derive** 198:6
**derogation**
185:11
**describe** 160:19
**described** 95:9
103:14 122:24
123:4 150:8
274:23 279:15
**deserves** 150:5
**design** 111:11,15
113:16
**designation** 10:1
46:7,8,9
**designations**
45:18
**designed** 75:23
111:14 223:4
**desire** 92:14
155:24 247:21
276:6
**desires** 210:22
**desirous** 101:24
**despite** 210:1
222:6,18
**detail** 115:3
142:20 192:6
244:10
**detailed** 125:19
236:2
**details** 144:11

determination
  59:16 60:16 67:3
  112:14 116:9
  149:25 151:24
  258:4,12 266:11
  267:22,24
determine  46:11
  64:14 76:3 232:8
determined
  204:19
determining
  124:25 135:23
  268:23
deterrence  146:7
  276:5,7
deterrent  125:14
  263:22
deutsche  262:7
devastated  145:11
devastating  134:5
devastation
  206:11
developed  57:14
developing
  273:13
development
  44:20
devolved  55:7
devoted  192:23
devoting  191:18
dial  7:10
didn't  241:11
  248:19,23 252:1
die  129:23,24
  136:6
died  129:24
  202:13
diem  240:9,15
dies  132:17
differ  154:2
difference  145:4
  169:14 175:25
  186:2 205:19

208:15
differences
  212:13,25
different  52:6
  53:6,10 61:15
  64:6,10 67:5,18
  70:17 71:24 80:5
  91:1 98:23 106:1
  108:4 116:14
  117:21 130:15
  147:6 158:13,14
  230:17 252:16
  262:23 267:18
  268:18
difficult  76:22
  103:15 108:5
  152:5 211:19
difficulties  236:2
difficulty  138:17
  139:14 157:22
  186:17
direct  89:1,8,8
  104:8 110:21
  147:11,17,23,25
  159:23 160:9
  190:8,10,20
  193:10,19 194:10
  194:19 196:8
  220:19 230:23
  231:24 236:5
  238:20 246:5,16
  258:22 259:7
  261:24 262:3,24
  263:9 264:13
  280:9,10
directed  120:4
  133:6
directing  5:11
  18:16
direction  68:3
  70:16 118:20
directly  45:4 89:3
  89:19 90:15 91:9

153:10 186:10
  231:22
director  89:11
  197:10
director's  197:2
directors  232:13
disadvantage
  97:8
disagree  61:2
  68:10 69:21 86:13
  90:4 93:9,10
  177:7 229:25
  251:9
disagreed  279:19
disagreement
  92:19 158:1
  249:17 281:25
disagreements
  94:9
disbursed  131:13
  132:9
disbursement
  5:11 18:16
disbursing  133:15
discovery  91:20
  213:22 260:12
  264:7,11
discreet  125:19
discrete  192:3
discretion  64:12
  64:14 182:12
  256:11
discuss  130:22
  160:19 176:18
discussed  45:17
  109:9 112:3 122:6
  158:11 184:15
  262:5,6,17 263:2
discussing  147:10
discussion  60:24
  82:1 100:5 158:11
  201:1 216:17
  240:12 245:23

262:7 266:11,18
disentangled
  101:1
dismiss  71:20
  265:7
dismissal  68:13
dismissed  71:25
  72:11
disorder  220:22
  281:8
dispense  199:2
disposition  62:18
dispositive  52:5
dispute  82:10
  84:16 113:8 131:4
  136:7 213:22
  217:15
disputing  108:7
  210:11
dissenting  222:19
dissolves  172:9
dist  262:8 266:19
  278:3
distant  207:9
distinction  95:19
distinctions  120:9
distinctly  268:17
distinguished
  262:2
distinguishes
  259:17
distributed  162:8
  162:23 205:16
distribution  113:5
  143:6 162:2
  206:24 218:5
  219:2,7 234:16
  261:19
distributions  75:7
  92:17 108:15
  129:21 131:8
  160:24 161:18,20
  161:21,23,24

[distributions - dramatically]                                              Page 23

162:20 172:23
217:2,25 261:12
272:15,16 274:14
274:16
**distributors**
208:22
**district**   1:2 40:1
48:14,19 49:2,17
49:18 50:7 55:13
55:21 56:9 59:9
60:15 61:17,24,25
62:2,4,6,12 63:11
63:16 64:1,9,18
65:11,24 66:15
67:2,6,14 70:20
72:17 77:11,17,18
77:21 81:6 83:9
86:7 87:7,9 88:3
95:12 107:12
109:16 110:19
112:13 123:25
136:19 138:25
149:2,20 155:25
158:8 161:3,7
163:15 164:3,14
164:17,24 165:2
166:6 167:5,10
170:23 172:10,20
173:24 174:12
175:24 177:13,23
178:14,24 179:7
180:21 181:12
182:12,16,21
183:2 184:7,9,16
184:20 185:6
186:12 187:20
188:5 189:9 200:7
200:11 204:17
215:3,13 217:13
219:16 224:9
227:3 228:3,8
236:7 242:6
247:16 250:21

251:1,6 255:6,8
264:9 266:20
267:24 268:8,10
268:14,20,22
269:5,6 270:14,17
270:21,24,25
271:2,4,4,6,8,14
271:15,16 273:24
275:19 279:2
280:18
**disturbing**   274:9
**dizengoff**   3:4 8:18
9:4 11:8 14:10,17
16:7 19:16,23
21:7 24:10,17
26:3 29:16,23
31:7 34:10,17
**doc**   5:13 18:18
**docket**   45:15,18
63:22 142:4 156:5
164:24 165:25
166:1 167:1
169:19 173:19,23
195:20 226:6
228:25
**docketed**   228:16
**doctrine**   75:22
83:21 84:25
264:24 265:3
**doctrines**   138:19
139:4
**document**   2:13,17
3:3,10,16,20 4:6
4:14,19,24 5:4,21
6:8,15,24 7:7,11
7:19 8:5,10,17 9:3
9:15,19 10:5,17
10:22 11:8,15,21
12:1,10,18,23
13:3,14,18 14:2,9
14:16 15:2,6,21
16:7,14,20 17:1
17:10,18,23 18:3

18:9 19:4,8,15,22
20:8,12,17,21
21:7,14,20 22:1
22:10,18,23 23:3
23:15,19 24:2,9
24:16 25:2,6,16
26:3,10,16,20
27:6,14,19 28:3
28:10,22 29:2,8
29:15,22 30:8,12
30:21 31:7,14,20
32:1,10,18,23
33:3,15,19 34:2,9
34:16 35:2,6
114:5 198:18
208:9 243:23
276:14
**documents**   5:8
13:7 18:13 23:7
28:14 33:7 45:16
45:19 46:22 114:4
213:23 243:22
245:6
**doesn't**   131:1
246:12 249:20
250:13 275:25
**doing**   48:22 49:17
78:6 79:15 80:12
84:4 97:10 100:12
102:2 119:20
135:8 146:8
169:24 170:7
173:2 251:19,25
**doj**   162:6 165:20
165:23 166:15
208:1 210:12
211:4,7 212:13,21
213:15,18,19,21
214:1 261:15
270:4
**doj's**   213:12,23
**dollar**   131:17
205:19 209:3

274:5
**dollars**   122:1
220:22 223:7
232:20 241:3,14
241:15 243:20
244:25 272:20,24
**domain**   245:6
**domestic**   222:11
**don't**   76:23,25
82:5,20 83:17
146:5 148:14
151:10 152:6
153:10 156:16
177:15 241:16
245:11,22 246:5
247:18 248:20
249:19,19,21
250:4,15,17 251:2
251:9 252:20
255:12 277:16
279:7 281:23
**door**   74:10
**double**   139:10
188:11
**doubt**   121:24
168:4 208:23
**doubts**   267:7
**dovetails**   113:3
275:3
**dow**   237:8,9,11
**downs**   234:3
**downward**   240:25
**dozens**   222:5
**drafted**   100:21,23
**drafters**   81:24
**drain**   1:22 44:3
56:13 57:21
146:17
**dramatic**   122:1
245:21
**dramatically**
122:3

| | | | |
|---|---|---|---|
| **draw** 131:7 | 260:9 283:1 | 23:10,16,22 24:5 | **educated** 135:6 |
| 134:22 | **earlier** 95:9 | 24:12,19,25 25:3 | **edward** 42:9 |
| **drawing** 69:19 | 124:15 161:9 | 25:8,12,19,23 | **effect** 48:13 52:8 |
| **dressed** 232:12 | 165:1 167:5 | 26:5,11,18,22 | 54:21 58:23 59:11 |
| **drexel** 90:11 | 170:23 172:20 | 27:9,16,21 28:5 | 75:5 82:23 96:5 |
| **drives** 204:7 | 176:10,25 179:7 | 28:12,17,23 29:5 | 119:8 124:7 130:8 |
| **drop** 170:14 237:8 | 184:15 185:1 | 29:11,18,25 30:5 | 130:10 138:24 |
| **drops** 162:22 | 187:20,22 189:8 | 30:9,14,17,24 | 139:1 146:7,10 |
| 184:11 186:19 | 192:6 205:18 | 31:3,9,15,22 32:3 | 147:22 150:24 |
| 214:21 218:13 | 214:17,25 215:2 | 32:13,20,25 33:5 | 153:19,19 192:14 |
| 230:12,20 234:4 | 215:16 246:14 | 33:10,16,22 34:5 | 216:19 218:22 |
| 239:22 | 269:4 270:5 271:2 | 34:12,19,25 35:3 | 263:23 276:13 |
| **drug** 196:15 197:2 | **earliest** 123:4 | 35:8 | **effective** 57:24 |
| 197:7,10,25 | 161:13 166:12 | **echo** 133:13 | 72:6,8,8,12,19,22 |
| **drysdale** 40:7 | 167:9 175:1,3 | **eck** 43:7 | 73:5 74:9,11,20 |
| **due** 69:6,22 92:21 | 180:9,10 181:15 | **ecke** 41:9 | 74:24 76:8 77:8 |
| 94:1 134:8 136:2 | **early** 77:10,12 | **eckstein** 2:18 8:11 | 77:11,22 78:1,10 |
| 139:9 150:17 | 176:9 | 10:23 13:19 14:3 | 78:14,18 79:14,16 |
| 202:13 214:3 | **earmarked** | 15:22 19:9 20:22 | 79:21,24 80:1,7 |
| 258:15,20,23 | 212:16 213:1 | 23:20 24:3 25:17 | 82:1 83:5,5,6,15 |
| 260:4 272:21 | 273:4 | 29:3,9 30:22 | 83:18 84:11 85:4 |
| 273:21 | **earth** 243:12 | 33:20 34:3 41:10 | 85:7,9,14 95:20 |
| **duplicate** 90:14 | **easier** 93:1 204:9 | **economic** 230:19 | 95:20,22 97:3,23 |
| 91:3 | **easily** 223:16 | 239:3 274:25 | 97:24 101:20,22 |
| **duration** 61:11 | **ecf** 2:14,20,24 3:5 | **ecro** 1:25 | 106:24,25 108:15 |
| 62:8 64:8,16 | 3:11,18,22 4:9,16 | **edmunds** 15:16 | 108:17 123:4 |
| 128:4 129:19 | 4:21,25 5:6,14,22 | 18:10 37:6 48:9,9 | 124:3,10,23 |
| 130:3 132:9,12 | 6:3,9,17,25 7:8,13 | 49:25 50:4,6,9,14 | 132:23 136:23 |
| **durations** 67:18 | 7:21 8:7,13,20 9:6 | 50:18,21,23 52:22 | 139:2 158:9 161:4 |
| **duty** 76:16 89:3 | 9:12,16,21 10:7 | 53:9 55:1,8 60:8 | 161:10,19 164:20 |
| 89:16,18 232:13 | 10:14,18,25 11:4 | 60:14 61:1,5,7 | 164:25 166:24 |
| **dwf** 265:11 | 11:10,16,23 12:3 | 65:1 137:22,24,25 | 168:8,10 170:17 |
| **dying** 135:19 | 12:13,20,25 13:5 | 138:1,4 139:8 | 170:22 172:17,19 |
| **dylan** 41:6 | 13:9,15,21 14:5 | 140:3,5,9,17,20 | 173:5,6 174:7 |
| **dynamic** 240:8 | 14:12,19,25 15:3 | 140:23 141:1,7,9 | 177:18 179:16 |
| **d'angelo** 41:7 | 15:8,13,17,24 | 141:17,19 142:7,9 | 180:10,15 181:6,7 |
| **d'apice** 2:23 | 16:3,9,15,22 17:3 | 142:15 143:8,18 | 181:14,18,23 |
| **e** | 17:13,20,25 18:5 | 143:25 144:6,10 | 182:9 187:19 |
| **e** 1:21,21 36:1,1 | 18:11,19,23 19:5 | 144:12,13,16,18 | 204:21 211:18 |
| 41:3 42:9 44:1,1 | 19:11,18,25 20:5 | 144:20,22 145:6,9 | 215:2,12 216:23 |
| 69:6 114:22 160:3 | 20:9,14,17,24 | 145:13 146:1,2,6 | 217:8,9 218:18 |
| 160:3,3,4 193:5,6 | 21:3,9,15,22 22:3 | 251:14,15 | 219:3,3 224:2 |
| 196:3,3 258:16 | 22:13,20,25 23:5 | | 226:4 234:20,24 |

236:10,13,24
243:13 254:17
265:7 269:3,4,11
269:15,23,24,25
272:9,14 273:1
274:22 275:15
278:17 280:21
**effectively** 151:18
268:7 275:8
**effectiveness** 63:1
**effects** 130:11
134:5 138:12
139:3 142:1 165:9
276:21
**effectuate** 254:16
**effort** 100:25
248:20
**efforts** 208:23
269:23 278:23
**egregiously** 214:2
**eight** 180:6
**either** 45:19 46:25
61:21 66:19 67:7
70:19 71:8 76:14
98:10 143:7
162:21 167:9
172:21 188:4
211:17 228:18
248:24 267:6
272:6
**elated** 18:18
**elected** 238:3
**electric** 58:9
**element** 112:8
271:19
**elements** 227:4
**eleventh** 6:2 13:8
18:22 23:8 28:15
33:8
**eli** 7:12 43:9
**eliminated** 68:17
85:25 88:14 94:2
125:4 163:20

164:11 180:6
**elimination** 82:14
87:4 88:13
**elizabeth** 42:17
**ellen** 30:16 41:16
44:9
**elongated** 208:9
216:19
**eloquently** 114:21
273:15 274:2
**email** 249:1
**emails** 111:13
157:21 206:13
**embrace** 65:23
**emerge** 161:13
**emergence** 161:14
162:17 201:3
278:23
**emergency** 55:12
55:23 56:1 57:20
58:10,23 59:14
78:4 100:7 106:22
178:3 185:24
186:17 225:23
**emphasized** 147:5
**emphatically**
104:10
**employees** 127:22
127:25 128:3
130:11
**empower** 238:9
**enable** 96:15
109:21
**enables** 147:17
261:11
**encompass** 259:19
**encouraged** 44:20
**ended** 66:3 241:9
**ends** 177:12 185:1
243:12
**energy** 262:7
**enforce** 146:9
203:2 204:12

**enforcing** 103:5
277:20
**engage** 80:10
99:20 100:12
108:5 126:25
253:5 264:7
**engaged** 89:18
109:2 253:6
263:10
**engagement** 109:5
109:6
**engagements**
102:4
**engaging** 253:18
**enjoin** 69:19
98:23 259:7
**enjoined** 69:14,20
263:2
**enormous** 281:24
**ensue** 91:19 125:3
261:17
**ensure** 86:14
177:9,11 178:24
**entailed** 98:11
**enter** 63:22 96:14
225:25 250:25
282:2
**entered** 62:15
63:1 104:6 156:5
213:10
**entering** 55:14
178:10
**enterprise** 263:10
**enters** 62:4
**entire** 57:22 61:2
64:25 67:1 70:25
132:13 136:17
261:11 263:6
278:11
**entirely** 44:16
86:1 88:15 89:23
136:14 220:6
268:10 270:24

277:4
**entirety** 95:23
**entities** 4:21 9:21
12:25 15:8 17:25
20:14 22:25 25:8
27:21 30:14 32:25
35:8 40:8 48:15
48:24 70:14
147:23,23,24
148:8 162:7 195:8
196:9 217:3,4
222:5,7,12 278:5
279:17 280:3
**entitled** 120:11
174:4 180:5
**entitling** 261:24
**entity** 120:1
211:15 243:5
263:17 277:12,13
**entry** 62:3 215:6
**epidemic** 134:6,9
191:18 204:4
205:8,13
**equally** 85:24
**equate** 240:1
**equated** 210:16
**equation** 266:17
**equipment** 66:13
66:13 76:24
**equitable** 48:21
49:9 51:6,8,13,15
51:19 52:2 53:1,2
53:11,22 54:5
68:14 70:23 71:11
71:13,17 72:2,19
72:23 73:6,15
74:1 75:3,11,25
76:5,8,18 77:7
78:9,21 80:13,16
80:21,22 81:7,18
82:8 83:1,20,22
84:25 85:11,13
97:7,13 98:9,21

100:14,24 101:3
102:25 103:1
111:8,11,17,19
115:5,10,18,21
116:3,17,19,24
117:7,21,23 118:3
123:22 124:4
125:2,6 134:1
138:10,13,24
139:19 140:15
141:13 143:4,14
145:15 150:21
151:13 163:18
165:8 167:8,23
168:5 171:13,23
173:9,20 174:2
175:10,23 176:8
177:10 180:4
182:23 183:15,18
188:6 202:24
223:11 224:7,10
224:15 226:3,9,19
264:24 265:22,25
265:25 266:16,21
267:6 269:9,17
270:3 274:15
equitably 53:14
53:17 60:18 82:15
84:24 85:6 102:2
140:13 164:19
167:16 264:23
265:15
erf 133:16,17
207:22 208:2
212:17 213:19,20
erf2 133:16
eric 3:17 11:22
16:21 21:21 26:17
31:21 42:25
erosion 230:22
erred 68:10
escape 163:22

eskandari 41:11
65:14,14,18
especially 107:10
186:11 236:4
238:2
essence 84:15
162:15
essentially 49:17
226:25 227:25
236:5 251:20
279:14
establish 53:18
125:22 133:3
145:23 256:18
established 81:14
106:22 108:20
126:2 264:25
270:12
establishes 260:24
establishing 2:1
44:15 117:10
126:14 129:16
134:18
establishment
5:10 18:15
estate 69:13 90:16
125:5 139:21
140:1,11,12,23
144:1 228:19
264:3,3
esther 43:4
estimated 205:11
estimates 197:25
205:6,12
estoppel 57:13,15
58:6,14,17,20
59:7,10
et 3:5,17 8:19 9:5
11:10,22 14:11,18
16:9,21 19:17,24
21:9,21 24:11,18
26:5,17 29:17,24
31:9,21 34:11,18

44:3 78:2 156:25
ethan 42:25
evaluate 53:13
evaluating 67:12
255:24
evaluation 51:19
137:15 142:18,23
262:16
evan 41:18
eve 185:22 187:1
217:22 270:20
evening 55:13
event 59:23
132:22 136:20
219:16 220:19
227:6 229:14
230:4 236:22
events 182:25
eventually 127:4
127:5
everybody 49:22
139:13 179:2
236:18 239:16
everyone's 125:21
167:11
evidence 49:5
55:20,23 56:6
58:15 89:22 92:19
109:17 125:21,23
130:2 135:10
141:25 163:7
164:14 190:24
191:11 197:25
203:12 232:16
236:17 253:8
260:14,23 261:14
275:24 276:1
evident 104:14
evidentiary 47:18
48:5 104:21
127:14,17,19
133:1,9 195:16
228:24 229:1

ex 5:16 7:2
exact 192:14
243:24
exactly 47:19
51:15 80:12 88:7
97:9 142:25 164:1
175:5 179:9
241:20
examine 160:13
190:15 193:16
194:15 197:22
example 70:5
71:21 126:9 130:8
142:12 151:25
206:17 218:16
220:11 223:24
235:20 249:25
266:11
examples 249:24
exceed 9:9 10:9
14:22 20:2 24:22
30:2 34:22 45:6
62:14
exception 172:6
172:11 198:20,22
256:14 276:22
exceptions 144:13
exchange 204:3
excited 186:24
exclude 137:11
158:25
exclusively 243:8
255:13
excuse 154:6
257:14 280:23
exempt 277:13
exempted 79:2
248:22
exempting 120:14
exempts 277:3
exercise 76:15,17
105:14 131:19
191:23 224:7,10

224:14 242:4
256:10
**exercised** 245:17
**exercising** 115:21
**exhausted** 227:7
**exhaustive** 236:2
**exhibit** 50:15
198:19 199:2,8
**exigent** 174:16
**exist** 46:23 230:9
**existence** 51:2
229:16
**existential** 80:14
**existing** 152:25
229:16
**exists** 141:2 168:9
238:8
**exit** 230:7 240:11
**expand** 92:2
**expect** 68:9
105:13 163:25
168:3 169:20
170:6,15 171:20
182:18 232:6
**expectation**
167:11
**expectations**
76:13
**expecting** 169:17
**expedite** 86:9
279:8
**expedited** 2:10
5:18 6:13,20,23
7:4,6,17 8:3 10:3
81:13 86:6 88:5
109:24 225:13
275:16 278:25
**expediting** 88:1,9
**expended** 140:11
**expense** 244:19
**expenses** 234:13
234:14

**experience** 138:17
**experienced**
134:5
**expert** 126:19
128:24 135:13
138:16 168:23
**experts** 129:17
131:10
**expires** 62:16
**explain** 206:15
214:9
**explained** 151:5
192:6 206:10
220:16 255:7
**explore** 167:25
**express** 134:8
**expressed** 202:19
**extend** 6:20 7:4
95:13 118:10
169:7 280:16
**extending** 240:20
**extends** 262:18
264:6
**extension** 154:16
154:19 155:20
247:2
**extensive** 200:25
259:3 263:9
271:12 275:24,24
**extensively** 266:8
**extent** 45:24 49:9
103:22 126:4
130:10 139:7
153:10 160:14
192:13 254:25
260:16 263:24
270:22
**extra** 54:3 275:1
**extraordinary**
171:11 205:1
210:19 256:5
**extremely** 253:15

**extricated** 103:18
**eyes** 276:9

**f**

**f** 1:21 3:17 11:22
16:21 21:21 26:17
31:21 42:21 278:2
283:1
**f.2d** 121:13
262:16 277:25
**f.3d** 58:10 257:2
257:20 265:10
267:3 280:6
**face** 237:7,14,23
238:2
**faced** 67:11 236:2
**facilities** 273:6
**fact** 6:5 13:11
19:1 23:12 28:19
33:12 46:20,23
47:13 48:3,18
49:15,16 52:3,24
53:3 68:25 69:4
80:23 115:25
127:15 128:10
130:2,18 139:24
140:13 143:13
145:9 146:3 151:6
151:11 152:4,20
152:24 178:5
204:5 209:25
215:11 218:14
228:17 231:9
232:12 238:20
248:25 259:20
260:3 276:9
277:14,16,21,23
**factor** 81:14
103:11 153:15
250:5,7 257:4
264:17 266:2
275:2,22 276:4,5
276:7

**factors** 51:23
52:17 53:24 55:5
56:24 57:9 60:3
67:4 81:21 102:16
111:12 212:3
256:19 257:18
262:19,22 265:5
265:17 266:3,15
273:21 275:21
**facts** 84:25 85:2,3
91:2 126:4,14
129:16 135:2
204:19 210:23
**factual** 69:11 90:2
90:20 250:12
259:3 260:11
263:7 268:18
**fails** 126:7
**failure** 75:18,20
**fair** 51:3 58:7,12
68:7 70:3 91:19
171:20 214:19
222:20 257:6
258:1 263:13
**fairly** 85:11
147:16 180:21
264:25
**fall** 69:4 186:15
198:19 236:14
280:2
**fallback** 95:9
122:24,25 267:23
**falling** 177:12
**falls** 238:14
**false** 55:2
**families** 277:11
**family** 36:12,19
86:5 164:16 212:4
212:14 246:20
247:24 248:1
**famous** 106:25
**far** 48:4 51:5,16
51:21 64:23 71:3

75:9 76:8 81:22
83:15,16 88:16,24
91:25 102:3
106:12 107:15
113:3 117:16
138:7 162:18
181:22 222:7,8
244:4 247:20
258:20 259:2
260:19 263:25,25
264:11,22 267:19
272:2 273:7
**fashion** 126:21
265:4
**fashioned** 265:8
**fast** 268:23
**faster** 106:22
**faulting** 50:10
**favor** 48:24 86:25
171:6 204:9
222:12 244:8
250:9 256:19
272:7
**fears** 75:9
**features** 113:17
113:18
**feb** 66:7 265:13
**february** 262:10
**fed** 265:12,20
**federal** 2:12 5:3
5:20 6:14 7:18 8:4
10:4,12 28:9
118:20 120:1
138:19 139:10
161:25 162:3,7,21
210:5 211:1 212:6
212:7,10 213:5,9
213:12 220:21
221:4,11 222:11
277:3,15,18 281:7
281:15
**fee** 139:24

**feel** 169:24 183:8
200:3,21 233:22
**feels** 103:12
**fees** 105:19,22,24
106:6,7,9 139:25
140:10 234:23
**feld** 39:8 201:11
**felon** 124:22
127:3
**female** 155:8
**femino** 41:12
**ferguson** 203:25
208:17,20
**ferguson's** 206:22
**feverishly** 227:20
**fewer** 106:4 136:6
**fibreboard**
258:25
**fides** 259:12
**fiduciaries** 169:25
231:25
**fiduciary** 89:16
172:13 232:13
**fielded** 206:12
**fields** 237:15
**fifth** 38:10 206:22
**fight** 93:6 205:8
276:8,15
**fighting** 228:10
**figure** 87:23 88:23
90:25 176:23
180:14 240:7
**file** 45:14 165:24
167:1,4 180:8
186:22 242:10
**filed** 2:13,18,23
3:3,10,16,21 4:7
4:15,20,24 5:5,21
6:16,24 7:7,12,20
8:6,11,18 9:4,11
9:15,20 10:6,13
10:17,23 11:3,8
11:15,21 12:2,11

12:19,24 13:3,19
14:3,10,17,24
15:2,7,12,16,22
16:2,7,14,20 17:2
17:11,19,24 18:3
18:10 19:9,16,23
20:4,8,13,17,22
21:2,7,14,20 22:2
22:11,19,24 23:3
23:20 24:3,10,17
24:24 25:2,7,10
25:17,22 26:3,10
26:16,21 27:7,15
27:20 28:3,11
29:3,9,16,23 30:4
30:8,13,16,22
31:2,7,14,20 32:2
32:11,19,24 33:3
33:20 34:3,10,17
34:24 35:2,7 44:6
45:18 47:11,14
49:16 50:7 55:12
55:22 58:11 73:11
93:13 106:1,2,19
118:24 123:25
149:1 154:11,14
156:14 157:15
164:24 173:19,23
195:9,18 211:5
279:23 281:10
**filing** 9:9 10:10
14:22 20:2 24:22
30:2 34:22 57:1
106:3 201:17
255:2
**filings** 106:4
**final** 58:17,19,25
59:1 61:21 62:18
87:11 196:19
197:9,12 218:17
224:5
**finality** 76:1 112:8
149:16 150:5

227:13 266:7
**finally** 58:16
62:20 119:16
167:3 200:12
270:1
**financial** 125:15
126:17 149:9
150:16 227:10
**financially** 125:10
**find** 79:1 85:2,5
104:6 109:1
110:10 114:8
184:13 195:5
209:2 236:16
253:15 260:17
**finding** 48:25,25
51:7 105:24
227:13 258:8
**findings** 6:5 13:11
19:1 23:12 28:19
33:12 49:12 228:7
229:5 230:1
236:10 238:25
240:22 259:3
**finds** 103:15
119:15 152:22
**fine** 112:24 113:1
118:5 122:19
154:13 175:19
180:7 189:22,23
195:12 199:21
201:14
**fire** 257:20
**first** 25:12 38:17
45:8 46:8,9 48:11
49:23 50:24 52:19
53:12,16 55:5
58:8 63:4,6,15
67:21 68:20 72:16
72:18 78:3 94:21
97:25 103:23
111:3 115:12
120:3 122:20

126:10 130:7
142:3 144:25
146:20 147:1,6
149:11 150:9
151:3 152:14
155:13 158:15
163:13 168:6
171:23 184:2
185:3 201:21
203:4 205:21
206:6 207:19
210:3 212:4 214:7
215:5,11 218:7,9
218:23 220:12
223:19 230:18
234:18 236:13
237:7 246:24
252:8,21 253:14
254:10,19 255:10
255:21 256:7
257:4,16 261:6
264:15 268:25
275:22
**firsthand** 134:5
**fit** 85:10 230:14
**fits** 118:25
**five** 75:4 76:11
176:14 204:15
213:3,5 244:20
265:17 273:18
**fixed** 234:3
241:18 272:20
**fl** 39:19
**flag** 45:2
**flexible** 102:13
265:4
**floor** 40:2 94:11
251:11
**florida** 39:16
**flow** 132:21
**flowing** 135:5
136:20 187:9

**focus** 52:7 56:5
57:22 60:2 61:10
61:25 66:24 67:17
68:19,21 70:7,17
72:14 75:6,25
76:12 77:20 81:19
87:9,10 109:13
158:6 163:14
229:14 243:7
255:2,13,13 257:6
265:6 273:12
**focused** 56:1
57:19 268:1
**focuses** 76:11
85:12 198:1 233:5
**focusing** 56:19
72:16 82:5 83:2
87:7 116:13 137:4
176:22 221:8
233:17 255:25
**fogelman** 40:5
219:23 220:2,3
221:16 249:9
281:1,1,4,18
**follow** 84:19
125:21 204:23
**followed** 232:1
**following** 62:22
107:19 124:5,15
164:7 165:1
184:16 212:2
246:2 256:19
**follows** 186:16
223:19
**footnote** 68:5
**foray** 214:7
**forced** 81:12
92:22 240:3
**forces** 213:25
**foregoing** 270:10
275:3 283:3
**foreseeable**
244:22

**forever** 203:10
243:19
**forfeiture** 281:12
281:13,15
**forget** 202:12
**forgetting** 204:15
**forgot** 245:12
**form** 103:8
112:12 113:4
122:23 142:16
143:7 153:20
187:12 212:7
234:15 240:7
265:23
**formally** 49:8
247:7
**formed** 142:12
**former** 95:24 96:2
119:24
**forming** 141:20
**forms** 66:24
134:20
**forth** 126:3
157:22 164:23
236:24 241:20
258:7 259:15
277:22
**forthcoming**
171:1
**forum** 163:23
**forward** 49:4
99:21 100:3
102:15 103:13
105:18 117:17
118:4 130:9
139:21 141:23
144:1 151:12
179:16 229:18
231:18 232:1,16
233:21 234:21
235:11,14 237:5
240:18 241:10
242:8,17 249:23

**fought** 228:10
236:3
**found** 49:2,3
50:13 59:3 84:24
89:21 91:5 147:14
172:7 192:13
194:16 197:1
226:21 261:13
**founded** 119:17
**four** 126:22
166:19,22 198:23
208:8 210:3
256:19,25 271:10
275:21
**fourth** 161:6
212:24 214:14
**framework**
115:23
**framing** 95:2
**frankel** 37:8
221:20
**frankly** 59:13
69:23 78:5 109:19
140:6 152:16
163:25 219:24
247:7 272:4
**fraud** 89:6 263:9
263:10
**fraudulent** 90:13
90:14 212:9
**fraught** 241:25
**free** 92:6 120:24
233:22 237:16
240:2 242:9
261:16
**friday** 55:13,22
58:11
**frivolous** 54:8
83:24 114:15
**front** 50:12 98:22
110:20 121:23
200:7 221:8
228:13 242:5,9

**frontloaded**
234:14
**frustrated** 241:8
**fulcrum** 123:24
**full** 58:7,12 63:24
64:16 88:15 111:3
176:16 249:3
**fully** 60:6 110:16
148:4 217:1
**functional** 202:10
**fund** 5:10 18:15
100:7 106:22
151:21 160:21
162:14 220:20
234:5 235:24
237:13 245:4
262:8 281:13
**fundamental**
147:18 150:12
**funded** 151:1
228:19 233:2
234:4,10 235:1,2
243:5
**funding** 132:21,22
132:24 133:4
134:22 223:5
273:11
**funds** 131:3,12
133:15 135:5
136:3 205:13
206:25 220:14
235:5 239:25
243:20 272:25
**further** 15:10
54:25 70:22 82:24
94:8,11 95:7,13
100:15 101:9,11
101:19 112:22
118:9 122:14
139:6 156:16
175:6 176:12
177:6 192:7
209:24 230:7

240:5 254:8
259:10 269:21
273:24
**furtherance**
164:20
**future** 98:18
125:14 134:24
163:24 215:8
244:16,22

**g**

**g** 44:1 190:4 196:3
**gain** 203:11
**game** 97:18
**games** 182:3
**gar** 131:6
**gard** 129:10
**gas** 58:9 70:6
256:8 262:7
267:17
**general** 37:1
39:16 62:11
120:14 137:1
143:2 202:6 203:8
203:21,25 204:13
206:7,22 256:6,13
260:4 267:13
**generally** 63:3
75:6 85:2 146:3
198:5 259:14
260:13
**generals** 203:1
204:16 207:1
208:17
**generate** 105:22
**generated** 213:6
**gerard** 36:16 42:3
246:19
**germane** 253:11
**getting** 79:25 80:3
92:7 100:14 107:4
109:10 118:1
145:19 157:23,23
178:1 200:7 206:3

208:19 209:9,12
209:13 211:17
217:2 228:21
233:12 235:10,24
236:3 242:18
266:10
**giddens** 41:13
**give** 55:10 56:23
58:20 65:20 75:10
95:12 123:11
129:13 156:22
168:5 169:22
170:15 172:5
175:8 180:17,22
181:10,13 182:17
182:21 198:21
200:20 205:21
216:3 219:12
220:10 223:23,24
224:8 239:17
248:20 251:20
252:23 261:2
269:17,22
**giveback** 134:15
**given** 52:5 53:11
60:10 63:13 85:2
91:18 129:18
130:22 134:12
172:1 184:2
185:25 187:7
195:1 198:9 200:1
213:24 217:24
229:2 238:8,19
246:1 263:19
270:10 280:20
**gives** 130:8
150:21 203:18
239:21
**giving** 107:25
169:3 172:11
173:7 174:8
178:19 181:5,5
185:22 200:19

239:13 280:21
**glitch** 202:4,10
203:9 204:3,7,12
205:9,17 206:24
207:8,21 209:12
209:18 210:1,7,18
211:6,23 212:5,12
213:13,15,19,22
214:1 215:23,25
216:5,15 217:17
218:9,12 229:21
229:23,24 230:8
230:19 235:13
**glm** 265:11
**gloss** 257:3
**go** 54:11,25 55:4
61:20 67:20,22
69:5 72:12 77:18
87:14 88:1 94:19
99:1,16,21,23
100:3 101:25
106:25 108:17
110:11 111:3
112:19 117:14,17
118:4 125:11
126:13 137:23,25
138:1,5 139:13
146:5 154:12
162:14,18,20
163:4 166:20
168:7 172:4
175:20 178:8,9
179:16 181:3,6,7
181:14 188:8
193:1 197:4
199:15 205:15,17
208:3 211:13
215:23 217:7
220:8 234:13,16
234:21,25 236:23
239:19 243:12
244:25 246:22
252:15 273:5

274:22 278:17,23
281:13
**goal** 99:25 223:6
**goals** 279:8
**god** 160:1 190:2
193:3 194:3
195:25
**goes** 70:16 82:13
82:23 107:11
113:13 121:17
122:2 129:11
130:9 140:6
155:24 168:9
172:13 198:17
209:3,8 218:7,8,9
218:11,11 221:5
234:19 237:2,9,11
242:8 281:15
**going** 49:2 51:3
52:15 60:17 67:20
68:7,25 71:19
72:12 73:3,13
74:10,11,16,22
77:7,19,21 78:8
79:11 83:4 87:3
93:6,18,20 95:5
96:12,20,22 97:17
99:5,9 101:7
103:25 106:13
108:21 109:11,22
116:2 117:9,20,23
118:8,14 131:12
132:9,22 133:23
135:10,14 137:9
137:11 139:21
141:20 144:1
150:22 156:18,19
157:21 158:1
163:13 170:10
175:21 176:13
177:8,12,21
178:15,17 182:1
183:6 185:23

186:1 187:10,11
191:9 200:13,18
202:2,21,23 205:4
205:25 206:9
208:14 211:13
221:1 228:11
230:25 237:10,12
237:19 240:17
241:18 242:2,17
242:18 246:14,24
247:16,17 248:12
263:25 272:25
273:1
**gold** 10:17 15:12
38:13 65:4,4
94:14,15,18,21
95:16,17,25 96:3
98:24 99:3,7
102:10 107:20,23
108:2,22,25
110:24 111:20
112:16,25 113:14
114:24 115:1,12
116:6,8,11,16,22
116:25 118:7,13
118:16 120:2
121:1,4,9 122:5
122:13,22 124:24
133:13 142:13
143:3 183:23,23
184:1,21 185:8,13
185:15,19 199:6
252:4,4,7 254:1,4
254:7
**gold's** 186:16
**goldman** 39:6
65:21,22 118:7
122:17,17,20
123:17,19,21
127:2,18 128:12
128:14,17,19,23
129:3,6,10 130:5
131:5,15,19,20,22

131:25 132:2,5,19
133:5,8,12,18,21
133:23 134:3
135:9 137:6,10,19
142:13 160:15
186:6,7,10 187:2
190:17 199:6,10
199:10
**gold's** 245:14
**good** 44:2 54:19
94:14 120:18,19
120:23 156:24
157:5 161:12
166:22 193:25
201:10 222:13
238:10 242:25
253:23 274:17
**gotcha** 97:18
**gotten** 73:13 84:9
154:15 248:5
**governed** 118:17
149:17 271:18
**government** 44:17
118:21 119:19
120:1 161:25
162:3,21 209:24
210:9 211:1,1,22
211:25 212:6,7,10
213:5,9 219:25
220:11,12,17
221:4,11 222:7
236:22 244:18
249:15,16,16
277:3
**government's**
75:18 209:23
210:6 212:1 236:6
**governmental**
2:19 4:21 8:12
9:21 10:24 12:25
13:20 14:4 15:8
15:23 17:25 19:10
20:14,23 22:25

23:21 24:4 25:8
25:18 27:21 29:4
29:10 30:14,23
32:25 33:21 34:4
35:8 40:8 70:13
195:8 196:9
211:10,15 217:3
221:21 222:5,12
263:17,23 277:13
280:3
**governments**
222:17
**grace** 267:1
**grade** 206:22
**grant** 45:11 81:13
155:3 224:15
225:11 256:4,10
270:14 278:8
**granted** 70:15,19
70:19,24 87:17
104:17 114:16
119:7 126:17
127:22 148:4
192:12 203:1
210:20 220:7
256:14
**granting** 5:9,13
18:14,18 62:24
119:24 204:2
278:20 279:12
**grants** 80:10
184:23
**grave** 267:7
**great** 107:21
157:22 191:22
244:9 254:5
**greater** 121:17
128:10
**greenberg** 38:15
**gregory** 41:19
**grieved** 206:15
**grievous** 131:9
132:8

**ground**   51:3 68:7
70:3 141:12 257:6
263:13
**grounded**   75:22
**grounds**   138:13
258:1
**groundwork**
77:25
**group**   2:22 4:1,8
4:18,21,25 9:18
9:21 11:2 12:5,12
12:22,25 13:4
15:5,8 16:1 17:5
17:12,22,25 18:4
20:11,14 21:1
22:5,12,22,25
23:4 25:5,8,21
27:1,8,18,21 28:4
30:11,14 31:1
32:5,12,22,25
33:4 35:5,8 38:2
40:8 126:16
164:16 195:9
196:9 201:6
214:18 221:18
225:21,25 227:19
231:9,12,15
279:23
**groups**   202:19
**grows**   122:3
**guarantee**   79:11
200:15
**guard**   39:21
189:15,25 190:3,6
190:7,13,15,20,21
190:23 207:6
273:7,15 274:7,24
**guard's**   190:15
222:24
**guardrails**   226:7
226:15,16,21
**guess**   61:5 70:25
98:23 114:25

115:4 121:14
122:5 131:21
135:16 140:7
141:25 147:18
158:19,25 176:9
177:15 180:19,19
219:1 225:1
240:19
**guidance**   163:13
**gump**   39:8 201:11
**gun**   103:16
235:21
**guth**   3:21 12:2
17:2 22:2 26:21
32:2

## h

**h**   2:18 8:11 10:23
13:19 14:3 15:22
19:9 20:22 23:20
24:3 25:17 29:3,9
30:22 33:20 34:3
41:10 42:19 193:5
**hadley**   36:11
**half**   216:20 238:3
**hand**   100:2,3
118:4 159:25
189:25 193:1
194:1 195:24
274:20,21
**handful**   222:6
**handle**   154:24
**handling**   45:1
**hands**   84:3
**happen**   57:4,24
71:19 72:6,15,22
73:25 83:6 97:24
128:11,21,22
131:11 133:17
150:22 163:25
166:9 168:19
169:1,25 170:16
171:21 175:4,5
176:1 179:3

181:17,18 218:1
237:19,21 250:18
253:9,10
**happened**   55:10
57:23 97:19
207:22 208:4
**happening**   49:5
53:4 55:15 72:10
73:5,12 74:21
85:8 97:13 100:1
109:14 124:11
141:12,13 182:22
183:13,14
**happens**   105:3
139:1 142:22
171:19 179:5,12
179:14 180:7
184:25 200:17
236:12
**happy**   44:19
45:25 46:12 52:8
159:1 169:16
174:10 175:7
183:3 188:23
199:15 220:8
**hard**   70:18,22,23
78:5 85:14 91:24
92:13 98:20
107:19 116:18
138:20 139:12
145:22 178:7
185:20 205:22
207:23 236:3
240:4
**harder**   250:9
**hardship**   51:7
146:11,11 222:1
**hardships**   48:23
52:24 85:17,19
144:3,24 145:6
222:23
**harm**   51:13,22,22
53:1,3 56:6,12,24

57:3,9 58:2 68:14
68:23 70:12 77:4
81:10 82:6,7,14
84:15 85:20 91:6
91:8,10 92:20
94:1,1 95:4
102:20 103:6,8
104:1 107:4,14,20
107:21,24 108:6,8
110:3 112:3,4
115:3 125:1 131:9
132:8 133:2
138:14 139:18
140:4,17,18,25
141:2,12,14
143:12,23 144:4,8
145:17,23 147:9
148:6 149:7
151:17 152:1
162:19 164:10
167:19 169:10
171:12 174:3
175:11 176:23
178:10 180:1,3
187:14 188:15,20
189:5 201:7
202:21,23 203:20
204:20 205:2
214:16 216:14
217:2 221:25
222:22 226:10,18
230:13,22 231:4
231:21 232:1,17
232:23 233:3,13
233:14,15,16,25
234:20 235:5
236:1 238:20
243:8 249:18
257:17 258:3
261:6 262:3
265:23,25 266:4,5
266:24 267:9,10
267:12,13,14,16

270:11,12 272:2,5
272:17 274:21,23
274:25 277:6
278:14
**harmed** 76:15
82:4,11 92:16
203:3 204:13,14
230:15 231:21
233:20
**harmfully** 208:17
**harms** 51:14 70:9
70:9 75:21 91:1
94:4 96:13,24
103:10,20 105:23
108:4 109:15
113:3,13 121:16
125:16 132:20
136:10 142:22
162:18 188:20
189:6 200:24
201:1 217:11
227:5 229:18,19
230:4,16,18 233:5
233:12 234:1
237:6,6 240:23,23
240:24 250:7,9
253:16 256:24
276:2 277:7
**harold** 3:10 11:15
16:14 21:14 26:10
31:14 41:17
242:25
**hartman** 93:19
232:4 249:25
**hartman's** 250:2
**hasn't** 255:4
**hatch** 163:22
**hauer** 39:8 201:11
**haven't** 248:4
**head** 75:17 103:16
186:11 235:19
**headed** 62:9

**health** 197:12
220:21 227:14
**healthcare** 281:7
281:15
**hear** 48:12 49:21
51:11 52:8,18
64:21 94:16
136:14 138:2
146:22 154:13,17
155:6 156:20
157:18 158:4
159:14,15,18
175:14 183:23
187:17 188:9
189:5 201:12,14
221:17,22 248:8
249:8 252:5
268:23 271:5
**heard** 55:7,16
58:14 83:11,13
86:16 114:25
155:5 156:2,13,15
168:3 169:18
171:24 175:22
176:7 198:1
205:22 215:17
225:17 243:1
251:3 252:9
253:17 267:11
**hearing** 2:1,2,3,6
2:7,9,16,22 3:1,7
3:13,20 4:1,11,18
5:1,16,18 6:1,5,11
6:19 7:1,3,10,15
8:1,9,15 9:1,8,14
9:18 10:1,9,16
11:2,6,12,18 12:1
12:5,15,22 13:1
13:11,17 14:1,7
14:14,21 15:1,5
15:10,15 16:1,5
16:11,17 17:1,5
17:15,22 18:1,7

18:13,21 19:1,7
19:13,20 20:1,7
20:11,16,19 21:1
21:5,11,17 22:1,5
22:15,22 23:1,7
23:12,18 24:1,7
24:14,21 25:1,5
25:10,21 26:1,7
26:13,20 27:1,11
27:18 28:1,7,19
29:1,7,13,20 30:1
30:7,11,16,19
31:1,5,11,17 32:1
32:5,15,22 33:1
33:12,18 34:1,7
34:14,21 35:1,5
44:4,15,17 45:18
48:1,3,4 52:13,20
55:21,25 56:2,8
56:19 57:21,22
65:16 75:9 89:22
92:24 94:25 98:3
104:7 111:2
118:10 124:14,20
163:21 164:9
165:16 166:1,4,6
166:8,10 169:12
169:18 172:5
174:23 178:6
180:22 181:7,8,10
181:17,19 186:23
186:25 187:5,22
187:24 200:14
202:8,11,13,15
208:9 209:16
215:16 216:22
217:22 228:11,17
229:1,1,10,11,23
231:1,22 232:15
234:11 238:7
242:7 246:10
248:18,25 255:5
258:24 260:13

270:4,5,22 271:8
271:12,14 279:2
280:15,15,16
**hearings** 46:17
228:20,22 235:2
**hearsay** 126:1
198:20
**heart** 65:20 82:8
**heavily** 245:24
**heavy** 85:12 256:4
**heels** 246:13
**height** 116:23
**held** 2:3 44:16
56:2 59:6 98:17
101:8,15 186:14
205:13 259:12
265:21
**help** 75:19 106:18
160:1 190:2 193:3
194:2 195:25
213:24 219:2
277:6 281:7
**helpful** 48:10
49:25 50:15
**helping** 191:19
**helps** 219:15
**herculean** 223:15
**herring** 252:11
**hesitated** 202:3
**hestrup** 3:17
11:22 16:21 21:21
26:17 31:21
**hiding** 165:23
166:3
**higgins** 36:8 44:23
44:23 45:8,12
46:6,14 47:15,21
48:6
**higher** 65:11
95:13 107:13
112:20,23 116:6,8
122:9

**highlight** 151:16
**highlighted**
  187:14
**highly** 114:8
  127:10 245:16
  259:8 260:17
  269:14
**hindsight** 207:25
**hinted** 242:5
**hire** 92:25 93:5
**hiring** 93:1
**history** 203:14
  221:5
**hit** 138:5 164:2
  186:10
**hoc** 2:16,19 3:7,11
  4:1,7,25 8:9,12
  10:21,23 11:12,16
  12:5,11 13:4,17
  13:20 14:1,4
  15:20,22 16:11,15
  17:5,11 18:4 19:7
  19:10 20:20,22
  21:11,15 22:5,11
  23:4,18,21 24:1,4
  25:15,17 26:7,11
  27:1,7 28:4 29:1,4
  29:7,10 30:20,22
  31:11,15 32:5,11
  33:4,18,21 34:1,4
  37:9 38:2 39:17
  93:3 189:15
  202:19 214:18
  221:17,21 227:19
  276:17 278:18
**hold** 100:13 114:9
  116:19 203:24
  235:11 271:8
  273:25
**holder** 256:25
  257:19 267:16
**holding** 101:17
  210:21 235:21

261:3
**holdings** 81:6
  265:12,12,20
  266:18
**holds** 48:19
**holiday** 186:18
  217:23 270:20
**holidays** 186:20
  216:17
**hon** 1:22
**honestly** 145:5
  149:23
**honeywell** 257:1,3
**honor** 44:23 45:3
  45:9,12,14,22,25
  46:6,10,14,25
  47:4,22 48:6,9
  49:25 50:6,15
  52:22 54:19 56:7
  57:16,23 58:16
  59:15 60:8 61:7
  63:17 64:5,20
  65:1,4,15,21
  67:23 71:12,18
  72:7,16,17 73:2,7
  73:17,21 74:3
  75:12 76:21 77:5
  78:22 79:17,23
  80:9 82:12 83:7
  84:1 85:18 87:21
  88:8,11,21 90:2
  91:8 92:18 93:8
  93:22 94:7,14,21
  94:23 95:1 96:4
  96:10,17 99:3,19
  100:19 101:21
  102:11,12 103:9
  104:7 106:4
  107:23 108:2,25
  109:4 110:14,24
  111:13,23 112:16
  112:21,22 113:14
  114:9,12,14,19,24

115:12 116:25
  117:2 118:7,11,16
  120:2 121:1,9
  122:5,7,13,17,20
  123:8,17 125:9,18
  127:8,8,18 128:17
  129:3 131:5 132:2
  133:8,12,21
  135:10 137:6,19
  137:22 138:5
  140:10,21 141:9
  143:8 144:20
  145:14 146:24
  148:23,25 149:15
  149:23 150:8,10
  151:4,14 152:22
  154:3,7,9 157:5
  158:18 159:8
  163:2,8,12,16
  164:1,9 165:11,15
  169:17 170:19
  171:7,25,25 172:3
  172:4 173:25
  174:1 175:17,22
  176:17 177:4,21
  178:9,20 179:17
  181:1,9,12 182:3
  183:3,11,15,23
  184:2,15,23
  185:19 186:4,6,10
  187:2 188:13,13
  188:21 189:13
  190:13,21 191:4,8
  192:8,10 194:23
  195:7,14 196:4,12
  198:13,16,25
  199:10,17 200:12
  201:10 203:17
  204:10 205:3,18
  209:15,19 214:22
  215:1,20 219:21
  219:23 220:3,5,9
  220:24 221:16,19

222:13,25 224:17
  224:18,20,24
  225:17,22 226:15
  227:9,18 231:22
  232:6 233:17
  235:17 238:6
  240:19 242:22,25
  243:4 245:9,20
  246:19,23 247:4
  247:18,20,25
  248:11 249:4,8
  251:8,14 252:2,4
  252:7 254:2,7
  281:1,5,14,21
  282:4
**honor's** 45:4
  46:24 61:3 97:4
  150:6 172:8,8,9
  199:23 226:24
**hook** 203:22
  204:2
**hope** 134:15
  224:16 241:17,19
  246:7
**hoped** 244:4
**hopefully** 188:17
  201:21 248:12
**hoping** 114:22
**horses** 235:11
**hospitals** 4:25
  13:5 18:5 23:5
  28:5 33:5 204:8
  217:5 273:5
**hostage** 102:6
  114:10
**hour** 188:19
  228:20
**hours** 55:8 191:14
**housekeeping**
  45:2,6,13 48:7
**howell** 66:11
**hudson** 36:13
  58:9 59:5

huebner 4:15 9:15
12:19 15:2 17:19
20:8 22:19 25:2
27:15 30:8 32:19
35:2 41:14 56:23
104:10
huge 139:1 150:20
hugh 42:5
human 227:10
hundred 231:10
272:20
hundreds 241:2
hung 128:4
hurley 39:13
41:15 191:4,5,8
hyde 35:25 283:3
283:8
hypothetical
56:25 231:4
235:12 236:20
hypothetically
232:25
hypotheticals
253:7

**i**

i.e. 69:13 76:13
173:1 262:25
263:8 266:1,3
267:21 275:12
278:10
iac 152:9
iacs 151:18
icc 191:21
ice 173:7
idea 133:25
219:12 227:23
identical 57:15
115:14
identification
231:20
identified 56:11
79:22 114:9,14,19
138:8 174:4,7

175:12 226:12
259:6
identifying 45:19
57:11
ignore 244:12
ignoring 112:5
ii 4:4 5:11 12:8
17:8 18:16 22:8
27:4 32:8
iii 5:13 18:18
38:21 263:2
illumination
119:20
imaginably 211:4
imagine 60:23
83:23 85:3 183:1
imitated 107:15
immeasurable
217:2
immediate 99:15
139:15 181:13
184:6 274:4
immediately
185:22 234:12
immense 96:13
imminent 57:9
58:11 167:13
180:1,12 267:15
immunity 203:18
203:23 204:2
252:23 280:2
impact 75:14
147:8,9 150:22
151:7,8 238:1
implement 80:11
272:13
implementation
44:6 244:15 265:8
implemented
130:9 133:24
implementing
140:11 141:3

implicated 210:6
252:12
implication 170:9
implying 252:25
importance 83:2
85:20 109:18
110:4 137:4 138:8
225:15 266:3,6
important 49:22
51:25 53:17 54:25
57:12 61:23 66:22
83:12,12 87:23
88:11 90:6,22
94:3,22 108:9
111:3 114:1,11
125:23 132:18
145:21 147:4
174:2 181:23
186:11 208:1
222:4 231:19
251:24 257:3
importantly
200:12
impose 110:1
119:15 172:9
226:3 277:16
279:4
imposed 138:18
277:24
imposing 217:21
278:21 279:11
imposition 214:4
233:20
impression
178:20
improper 224:14
248:18
impropriety
202:15
imputation 89:17
inaccurate 248:16
inapplicability
260:9

inappropriate
119:15
incalculable
135:11,17 136:9
include 98:5
119:3 121:6 232:5
249:25 250:25
258:15 278:25
included 47:25
65:16 120:9 192:3
225:25
includes 61:15
101:22 164:15
266:6 269:18
281:8
including 44:11
53:20 62:22 66:6
98:7 109:4 135:7
136:4,15 137:17
138:11 174:7
176:4 182:22
199:1 203:17
223:11 244:2,5
250:1 259:14,24
260:9 261:14
269:12,22 270:8
275:22 277:13,18
inconceivable
83:25
incorrectly
125:15
increase 238:11
increases 112:4
227:10
increasing 130:20
274:8
increment 218:8
incremental
107:14 207:15
incur 105:20
incurring 105:19
ind 265:20 266:18

indefinite  58:2
indefinitely
  243:19
indemnity  262:15
independent
  102:22 107:17
  143:14
indian  217:4
  278:1
indicate  275:7
indicated  73:3
  127:8 174:16
  183:5
indication  123:23
indiscernible
  102:8 108:19
  114:11 135:15
  175:8 184:3
  191:19 210:15
  232:3 240:16
  241:2,7 242:11,14
  247:8,14 280:16
  281:14
individual  4:2,8
  12:6,12 17:6,12
  22:6,12 27:2,8
  32:6,12 38:2
  88:18,20 89:2,9
  89:14 92:8 227:19
  231:4 232:9
  249:20,21 262:4
  274:4
individuals  88:16
  88:25 89:18 93:23
  229:17,18 230:23
  231:7,20 232:24
  233:5,15,25
  234:10 236:19
  238:21 249:22
inequitable  84:13
  265:9
inexplicable
  210:24

inexplicably
  111:24
inference  134:23
inflammatory
  231:3
inform  201:22
information  5:12
  18:17 132:16
  275:7
informed  192:19
informing  237:21
inherent  63:21
  142:22
inherently  54:24
initial  143:6 218:5
  272:16 274:14
initially  168:3
initiation  234:17
initiative  126:16
initiatives  126:12
  126:13,15,21
  127:12
injunction  70:14
  93:16 132:16
  136:16,19 258:22
  262:24 263:18,19
injure  256:22
injured  256:21
  264:18
injuries  235:8,13
  264:20
injury  88:14 93:4
  136:21 149:12
  187:13 209:25
  213:11 214:6,8,12
  234:2 235:21
  243:18 244:2
  257:13 261:8,18
  261:21 264:20,21
  271:25 272:15,18
  272:25 276:18
  278:19

injustice  206:16
innate  209:11
innocent  243:6
inquiry  53:20
  262:20
insert  213:21
inside  201:16
insights  191:22,24
insist  109:20
  117:20
insisted  98:4
  111:2 202:11
insisting  253:2
insofar  226:16
instance  69:9
  97:25 114:2
  149:11 152:2
  211:25 252:21
  263:1 272:7
institutions  114:3
instruction  248:5
insufficient  136:3
insurance  3:13
  11:18 16:17 21:17
  26:13 31:17
  262:15
insured  90:17,18
insureds  90:17
int'l  257:1
intact  65:10
intellectual  92:14
intend  112:19
  176:7
intended  105:15
  159:22 185:11
  190:8 193:10
  194:10 196:7
intends  164:13
intention  124:9
  231:2
intents  171:15
  264:19

interacting
  192:22
intercreditor
  273:22
interest  46:21
  86:12,15,22,24,24
  87:1 93:24 94:2
  110:14,16 111:9
  111:10 112:3,6,8
  113:2 114:18
  201:7 202:22
  209:20,22,23,23
  209:25 210:6,16
  210:25 211:20,21
  212:1,2 214:15,20
  221:6,9 222:23
  227:5,12,12
  230:21 235:13
  243:8 244:7 245:9
  249:18 256:25
  259:23 260:25
  263:24,25 264:6
  266:5,9 272:1
  275:2 276:4
  277:20
interested  256:23
  271:25 272:3
interesting  150:12
  151:18 152:19
  250:10,16
interests  85:24
  202:16 211:2,24
  221:11 249:17
  275:4
interim  56:7 71:7
  71:19 133:15
  171:13 187:7
  242:16
intermediate
  115:2
international
  152:3

interplay 74:18
interpretation
120:20 121:5,7
148:3
interpreted
277:19
interpreting 64:4
interrupt 56:16
73:19 128:12
142:6 180:19
218:25
intervening 72:1
152:2
interviewing
223:24
intolerable 107:7
intricate 273:22
introduce 158:16
introductory 68:1
221:24
inversely 257:12
investigating
203:10
investigation
213:20,23
investigations
203:13
investments 66:10
invited 200:18
invoking 76:18
81:7 226:2 266:21
involve 58:24
172:21 266:8
involved 116:1
141:22 192:21
253:10
involves 252:14
ira 3:3 8:18 9:4
11:8 14:10,17
16:7 19:16,23
21:7 24:10,17
26:3 29:16,23
31:7 34:10,17

iridium 273:21
ironically 208:24
243:15
irrelevant 220:6
220:25 221:3
277:17
irreparable 51:13
51:22 53:1,3
68:14,23 70:12
72:3 81:10 88:14
102:20 103:6,8
125:1 138:14
139:18 140:4,17
140:18,24 141:2
141:11,14 143:12
143:23 144:4,8
145:17 147:9
148:6 149:7,12
152:1 188:15,20
189:5 203:20
204:20 205:2
209:25 214:16
216:14 221:25
222:22 226:10,18
233:14,16 243:8
257:13,17 258:3
261:6 264:21
265:23 266:24
267:10,12,13,13
267:16 270:11,12
irreparably 68:18
203:3 204:12
256:21 264:18
irrevocably 102:7
irv 65:21 186:7
199:10
irve 39:6 122:17
isaac 157:14
isaacs 30:17 41:16
44:9 156:13,17
157:7,11,17,21
249:25

isaacs' 255:14,20
israel 3:10 11:15
16:14 21:14 26:10
31:14 41:17
242:25 243:1,4
issuance 187:20
issue 45:13 46:21
48:11,13,20,21
49:10,19 50:2
51:12,14,15 52:24
53:25 54:23 57:15
58:13 60:16,20
62:25 65:11 66:16
69:9,16,25 82:3
83:1 90:6 92:14
104:9 107:13,21
108:3 110:6
111:21 112:1,7
115:13 116:14
118:15 121:11,15
122:11 130:23
138:7 139:1,14
145:16 147:9
148:22 152:14
169:17 171:17
189:14 199:3
201:8,23 217:10
220:14 222:24
224:18 225:5
227:21,25 229:20
241:19 247:6,15
254:1 262:25
264:14 267:12
268:8 271:1
275:25 276:2,7
277:6
issued 119:3
134:9 257:23
issues 45:2 46:15
48:7 52:18 53:3
53:25 54:6,15
57:3,16,17 58:8

60:6 67:3 68:25
69:3 76:15 82:9
83:12 86:16 87:18
88:11 91:20 94:3
101:16 109:13
113:21,23,24
114:2,17 118:8
119:2,3,3 123:2
136:13 138:20
139:18,23 147:7
150:17 192:20
201:13 211:11
221:25 225:16
234:25 255:14,23
258:4,8,13 264:14
273:16 275:17,18
276:24
issuing 203:18
it'll 175:21 215:1
item 45:8
items 46:15
it's 245:16,18,24
245:25 246:2,2,8
246:19 249:6,6,10
249:11 250:7,10
250:15 251:5,8,22
251:24 252:19
253:1,22 267:2
271:13 273:17
281:4,4,6
iv 280:6
i'd 245:17
i'll 273:16 276:1
282:2
i'm 240:7 246:23
246:24 247:13
255:16 267:2
271:3 280:22
i've 246:25 268:12

j

j 4:7 7:12 10:17
12:11 15:12 17:11
22:11 25:10 27:7

32:11 38:6,13,21
39:6 40:12 41:25
42:16 43:9 114:22
160:3 193:6 196:3
**j&j** 246:11
**jacquelyn** 43:1
**jail** 237:16
**james** 42:4
**jan** 81:15
**january** 132:25
133:3 183:7
187:21,22 188:5
189:9 215:2,13,16
215:22,22 216:18
217:19,20 218:6
218:12 228:13
233:7 234:5,5
237:19,22 238:17
239:14,16 240:15
242:20 267:1
**jasmine** 40:24
**jeffrey** 40:12
42:16 195:7
225:20
**jeopardized** 150:4
**jeopardy** 104:15
105:9 124:22
139:10
**jerome** 43:2
**jersey** 138:25
165:25 180:22
200:11 242:6
279:2
**jesse** 9:14 15:1
20:7 25:1 30:7
35:1 41:8 163:6
**jill** 40:21
**job** 85:2 130:22
251:22
**john** 39:21 142:4
190:4,23
**johns** 262:14

**johnsbury** 53:21
75:17 76:22
266:13
**johnson** 208:22
208:22
**join** 214:6 227:15
**joinder** 2:22 3:8
3:13,20 4:4,22
11:2,13,18 12:1,8
13:1 16:1,12,17
17:1,8 18:1 21:1
21:12,17 22:1,8
23:1 25:21 26:8
26:13,20 27:4
28:1 31:1,12,17
32:1,8 33:1
254:25 255:9
**joined** 44:24
204:18 229:12
254:23 255:1,4,11
**joining** 213:25
**joint** 6:2,6 13:9,12
18:22 19:2 23:9
23:13 28:16,20
33:9,13 59:3
124:16
**jonathan** 37:13
189:13 221:19
**jones** 41:18
**jordan** 43:10
**jorgensen** 40:17
191:2 194:25
195:4,9,14,16,23
196:1,2,4,5,12,14
196:18,22 197:1
197:18,22 198:12
198:13
**jorgensen's** 198:3
198:7,19 199:1
227:8
**jorgenson** 274:7
274:24

**joseph** 9:12 14:25
20:5 24:25 30:5
34:25 41:19 43:3
**juaire** 8:15 14:7
19:13 24:7 29:13
34:7 40:15 114:22
191:3,11 192:2,25
193:4,5,7,8,14,16
193:21,23 206:10
274:2,24
**juaire's** 193:19
**judge** 1:23 44:2
50:11,25 51:21
52:3,13 53:10
54:21 55:9,16
56:1,13,17,21
57:6,18,21 58:14
59:11 66:15,23
67:10,14 68:4
70:6 75:16 78:6
78:11 79:8 81:5
81:23 82:22 91:22
98:23 109:17
115:25 116:13
121:12 123:2,9
146:17 147:8,18
154:15 155:14
156:9 163:19
166:24 167:11
169:5,18,23 170:1
170:5,6,16 171:14
171:19 172:2,12
172:14 174:15
175:8 179:6 183:5
215:18 216:8,20
217:22 225:22
226:8,13,21
228:13,24 230:6
235:18 237:21
239:13,19 240:5
240:11,11,12,25
257:10 278:1

**judge's** 67:13
200:16
**judges** 62:21
**judgment** 58:18
58:19,25 59:5
62:1,2,5,5,6,7,13
62:15 63:1,8
115:21 120:18,21
121:2 150:6
246:11
**judgments** 120:16
**judicial** 45:20
46:3,4,9,19,23
47:3,4 48:2 238:8
250:1 256:11
**julius** 41:5
**july** 66:12
**june** 223:6 256:16
278:4
**jurisdiction** 76:17
172:8 279:25
**jurisdictional**
69:23
**justice** 36:3 67:25
**justify** 142:3
207:11

### k

**k** 194:5
**kajon** 3:17 11:22
16:21 21:21 26:17
31:21
**kamenetzky's**
54:16
**kaminetzky** 37:20
47:3,7,16 54:19
54:20 56:21 157:5
157:6,9 158:18,19
158:24 159:4,8,10
159:12 163:1,2,8
163:11,12 165:5
165:10,13 166:17
166:19,22 167:22
168:2,12,14,18,20

[kaminetzky - largely]                                                    Page 39

168:23 169:9,15
170:19 171:3,5,9
172:25 173:2,14
173:17,19,22
174:21 175:1,5,16
179:4,9,11,17,20
179:23 180:3
181:1,3,9,25
182:6,11,15,18
183:11 188:8,11
216:15 219:12
242:5 245:12,20
247:6 281:21
282:4
**kans**  66:11
**kaplan**  38:8 65:5
75:16 94:15
116:13 252:5
**kara**  9:1 14:14
19:20 24:14 29:20
34:14 40:16 244:9
**kate**  42:23
**katherine**  42:12
**kathleen**  36:23
**kathryn**  41:1
**keenly**  109:18
**keeping**  130:11
**kelly**  257:1
**kenan**  5:5 10:6,13
28:11 42:18
**kenneth**  2:18 8:11
10:23 13:19 14:3
15:22 19:9 20:22
23:20 24:3 25:17
29:3,9 30:22
33:20 34:3 41:10
**kept**  98:7
**kesselman**  41:20
**kevin**  4:20 9:20
12:24 15:7 17:24
20:13 22:24 25:7
27:20 30:13 32:24
35:7 42:1

**key**  95:1,5 181:20
219:16 271:19
**kibitzer**  260:14
**kind**  54:22 57:5
81:11 87:25 98:1
102:6 107:16
108:6 172:8
200:10 215:19
227:20 246:2
**kirk**  195:18 197:9
**klein**  41:21
**kleinberg**  38:8
65:4 94:15 252:4
**knew**  197:8
**know**  45:22 46:11
49:13 50:8 52:25
53:1 54:2,16 55:4
56:2 58:5 64:6
67:20 68:1,5,9,10
69:1 71:20,24
73:4,7,13,14,24
74:4,9,9,12,15,18
74:20,23 77:14,15
78:3,24 79:8
80:16 82:12 83:8
84:2,20 85:1
86:17 87:21,24
88:2,7,12 90:8,12
90:13 91:14,16
93:9,10,13,25
94:7,8 97:9 106:3
115:9 121:25
122:22 123:24
125:9 130:14
134:6,12 135:1
138:23 139:3,4,9
142:21,24 144:6
145:7 146:10
151:1,15 152:6
153:8 155:2,12
156:16 157:14
158:12,14 159:12
161:12 162:25

167:15 169:21,22
169:25 170:3,4,5
170:13 171:14,18
173:8,11 175:21
176:1,3,9,25
177:5,7,7,14
178:12,16,22,23
179:13,13 180:7
180:24 181:12,14
182:6,23 183:4,12
185:6 188:7,18,24
199:20 200:15,19
201:17 202:15
204:5,9 207:22
215:18 216:15,15
216:17 219:11
220:8,11,20
221:13 222:25
225:4 229:22
232:5 242:19
245:11 246:15
247:23 248:17,21
248:22 249:7,14
249:18,19 250:15
250:20 253:20
**knowing**  97:16
117:17 132:8
160:9 190:10
196:10 210:8
**knowledge**  125:25
126:1,5,6,15
128:21 129:8,16
135:14 139:7
191:22
**known**  207:9
**knows**  57:23
123:8 165:15
169:25 181:12
183:9 207:25
**kramer**  37:8
189:14 221:20

**l**

**l**  43:7 160:3 193:5
196:2
**l.p.**  1:7 3:5 4:8,16
6:7 7:12 8:19 9:5
9:12,16 11:10
12:12,20 13:13
14:11,18,25 15:3
16:9 17:12,20
19:3,17,24 20:5,9
21:9 22:12,20
23:14 24:11,18,25
25:3 26:5 27:8,16
28:21 29:17,24
30:5,9 31:9 32:12
32:20 33:14 34:11
34:18,25 35:3
44:3
**l7/2021**  28:16
**label**  232:8
**lack**  231:20
233:15 238:25
258:2 263:9 266:5
**lag**  218:10
**laid**  114:21 143:3
262:19
**landscape**  238:5,7
246:10
**lane**  195:6,18
197:9 198:15
199:3
**lane's**  195:20
198:4,16,21,25
199:6,12
**language**  50:16
64:6,7 66:2
118:17 120:8,10
224:21 277:4
**large**  103:21
151:15 258:25
**largely**  221:2
260:3,14

**larger** 150:11
240:19 244:5
**largest** 220:20
**larry** 40:5 281:1
**lasted** 208:13
**lastly** 250:20
**late** 239:3
**laura** 41:12 42:22
**lauren** 3:21 12:2
17:2 22:2 26:21
32:2 43:12 155:8
**law** 2:10 4:11,11
6:5,12,19 7:16 8:2
9:9 12:15,15
13:11 14:22 17:15
17:15 19:1 20:2
22:15,15 23:12
24:22 27:11,11
28:19 30:2 32:15
32:15 33:12 34:22
45:15 49:14 50:24
51:18,20 53:9
54:23 57:12,14
58:16 59:4,15
64:4 69:14,16
73:22 75:5,24
76:10 85:3,11
88:21 89:6 102:23
115:8 120:7
147:15,25 153:19
172:4 179:18,18
238:12 258:14,18
263:11 269:17
277:20
**laws** 88:18,20
103:5 146:9
252:17
**lawsuit** 203:23
**lawsuits** 131:18
136:4 204:2
**lawyer** 92:10,25
93:1,5 117:3

**lawyers** 93:2
105:8 111:15
**lay** 84:23 126:4
129:15
**layers** 275:1
**laying** 77:25
**lays** 215:9
**lead** 79:25 80:3
84:11 85:4 127:5
131:2
**leading** 124:3
188:4
**leafing** 50:12
**learned** 196:19
**leave** 9:8 14:21
20:1 24:21 30:1
34:21 150:6
158:16 189:16
235:7 246:15
**leaves** 65:10
**ledanski** 35:25
283:3,8
**lees** 41:22
**left** 53:4 66:15
232:22
**legal** 68:10 69:10
106:20 108:9
147:7 148:15
241:8 283:20
**legally** 69:14
246:12
**legislate** 242:3
**legislation** 46:16
237:25
**legislative** 237:23
260:7
**legitimacy** 84:16
**legitimate** 63:7
82:10 83:21
135:20 274:25
**length** 130:6
156:16 262:6,18
273:20

**lengthy** 98:3
121:25 258:6
276:13 277:9
**lenient** 267:16
**lesser** 92:12 150:8
151:4 270:22
**lest** 165:23 166:3
202:11
**letter** 57:10
220:11 281:10
**letters** 206:13
**level** 51:8 98:11
109:10 111:22
226:10 264:24
265:2 274:9
**levels** 111:7
112:20
**levene** 41:23
**leventhal** 41:24
**levin** 37:8 189:14
221:20
**levine** 36:9 41:25
44:25 63:17,17
64:5,20 65:2,6
67:21,23,24 71:12
71:18 72:7,10,16
73:2,21 75:12
76:21 77:1,5
78:22 79:17,23
80:3,9,19,21
82:12,17 83:7
84:1,7,9 85:18
87:14,21,24 88:7
88:19 89:1,13
90:2 91:8,13,15
92:18 93:8,19,22
94:7 175:17,19,20
176:17,21 177:4
177:16,20,24
178:8,16,18,20,22
179:2,14 183:11
248:11,11 249:4
250:10 251:3,8

**lexington** 37:17
**lexis** 66:7,8,10
81:6,15 224:9,12
262:9,10 266:19
266:25 278:3
**liability** 89:8
252:10,12 253:1
**liable** 89:19
**licenses** 127:6
**licensing** 141:22
250:14
**lien** 152:20 153:20
153:21
**lies** 256:25 272:1
**liesemer** 40:12
195:7,8,13 198:16
199:17 200:24
225:17,20,20
**life** 205:14 206:21
244:21
**lifesaving** 244:15
**lift** 279:10
**lifting** 242:12
**light** 49:15 61:12
85:2 190:18
224:13 231:2,9
243:9 275:21
**lightfoot** 121:13
277:25
**likelihood** 48:19
49:10 54:7 56:5
60:16,24,25 68:2
70:2,8 229:6
275:22
**limb** 96:21
**limit** 9:9 10:9
14:22 20:2 24:22
30:2 34:22 46:24
62:14,21 75:23
105:24 176:5,12
250:25 280:8
**limitation** 193:20
194:17

**limitations** 198:4
**limited** 6:21 7:5
  61:19 90:10
  107:18 109:9
  128:3 129:19
  130:3 132:9,12
  160:14 190:17
  227:2 256:14
  261:15 262:10
  268:13
**limiting** 64:7 66:1
  171:13
**limits** 45:6 48:15
  69:11 86:18
  139:11 268:7
**linda** 2:13 5:21
  6:16,24 7:7 42:13
**line** 69:20 157:7
**lines** 89:7 97:14
  100:6,7 183:6
  215:20
**linked** 100:20
**links** 157:23
**liquidate** 236:17
  272:23
**liquidated** 108:19
  136:22 151:9
**liquidating**
  265:10 272:14
**liquidation**
  236:18 241:5
  261:19
**list** 46:1 248:21
**listed** 46:9,16
  93:15 109:5
**listen** 7:10
**listened** 206:14
**lite** 38:15
**literally** 104:20
  144:9 167:19
  255:15 261:17
  266:9 277:10

**litigate** 58:8,13
**litigated** 58:24
**litigating** 92:8
  244:21 273:16
**litigation** 2:20
  8:13 10:24 13:21
  14:5 15:23 19:11
  20:23 23:22 24:5
  25:18 29:5,11
  30:23 33:22 34:5
  51:4 68:8 70:4
  86:4 92:5 93:7,21
  156:1,7 207:10
  214:13 221:22
  244:20 257:7
  258:1 261:17
  263:14 264:9
  276:10,16
**litigator** 199:21
**little** 50:3 51:10
  51:11 82:13 84:3
  103:16 109:5
  147:6 150:15
  175:2 187:13
  201:22 205:22
  208:11 235:20
**live** 46:12,24
**lived** 108:8
**lives** 132:4 223:4
  277:10
**llc** 5:12 18:17 39:1
  66:8,10
**llp** 36:11 37:8,15
  38:1 39:8
**local** 222:17
**logical** 49:22
  140:23
**logically** 48:13
**long** 47:12 54:9
  64:15 87:19 88:10
  117:14 122:10
  156:19 207:23
  222:1,23 227:22

229:20 238:13
  240:4 251:8
  262:19 273:17
**longer** 67:8 72:3
  99:10 108:17
  149:16,25 150:11
  187:13 188:14
  226:23 276:2
**look** 54:17 73:14
  75:3 84:18 94:1
  95:6 113:2 130:7
  130:17 135:16
  139:24 142:17
  144:11,14 149:2
  187:3 207:25
  225:1 227:24
  232:7 239:10
  242:18 265:2
  280:13
**looked** 162:19
  204:18
**looking** 49:24
  50:1 63:15 64:24
  83:1 88:24 92:3
  109:12 120:7
  123:1 132:15
  135:3 149:11,24
  162:19 174:13
  195:5 230:3
  232:10 248:3
  257:24
**looks** 78:6 201:17
  207:23
**lose** 56:24 70:15
  71:10,11,14 83:5
  148:7 233:23
**losing** 205:8
**loss** 102:23 121:23
  134:13 135:11
  143:15,15 149:8
  191:17 234:7
**lost** 143:20,21

**lot** 54:13 55:5
  86:20 93:1 97:10
  99:8 103:12
  113:17 139:25
  141:24 187:4,7
  188:15,18 205:3
  251:10
**lots** 81:17 206:2
**loud** 171:25 219:6
  231:15
**love** 99:19
**lower** 69:16 84:19
  109:25 122:9
**lowne** 142:4
**lp** 156:25 262:8
**lucas** 42:19
**lunch** 156:19
  157:19

---
**m**
---

**m** 37:13 42:5,6
  43:5 190:4,23
**ma'am** 194:20
**maclay** 4:20 9:20
  12:24 15:7 17:24
  20:13 22:24 25:7
  27:20 30:13 32:24
  35:7 42:1
**madoff** 90:14
  232:3
**magali** 41:13
**main** 39:3
**maintain** 80:13
  97:5 213:4
**maintaining**
  80:15
**maintains** 197:12
**major** 96:24
**majority** 71:4
  87:3 172:6 222:10
  265:21 272:6,8
  273:5
**making** 49:4
  59:16 68:7 89:19

93:24 117:3
128:15 137:13
143:6 152:13
161:7 177:5 178:2
178:5 184:8
218:15 219:7
243:22 253:5
272:15,16
**mallinckrodt**
154:23
**man** 111:23
194:23
**managed** 101:18
**management**
142:7 145:2
**manages** 103:16
**managing** 100:16
**manifest** 240:23
241:3
**manifestly** 110:15
111:9
**manner** 201:25
**manufactured**
246:13
**manville** 90:15
262:15 263:2
280:6
**mara** 41:24
**marc** 9:11 14:24
20:4 24:24 30:4
34:24 41:20 42:21
43:3
**march** 66:11
161:15 274:10,10
**marginal** 87:6
**maria** 41:9
**mario** 41:7
**mark** 231:11
**market** 126:12,13
237:7
**marketed** 111:14
**marshall** 4:15
9:15 12:19 15:2

17:19 20:8 22:19
25:2 27:15 30:8
32:19 35:2 41:14
**martin** 260:6
**maryland** 15:17
18:10 37:1,2
48:10 54:22 58:22
65:1,20 137:2
142:10 146:8
251:15 253:21
254:21 274:17
**massive** 244:12
**master** 5:11 18:16
**masumoto** 7:20
8:6 42:2
**material** 79:20
151:7 172:22
226:11
**materially** 129:13
**materials** 46:23
**mathematically**
234:1,22 239:25
**matter** 1:5 49:20
49:22 84:25 94:24
114:6 145:9
149:14 152:3
205:25 218:12
250:12 253:3
260:11 265:6
**mattered** 218:21
**matters** 46:3
60:14 101:4,17
110:7 112:14
114:13,19,20
116:3 117:10
160:7 191:22
216:24 223:19
237:22 253:6
**matthew** 10:17
15:12 38:13 65:4
94:14 183:23
252:4

**maura** 36:23
**mccarthy** 42:3
**mcclammy** 42:4
**mccloy** 36:11
**mcdonald** 42:5
**mcmahon** 50:25
52:13 53:10 55:16
56:1,22 57:6,18
68:5 79:8 91:22
109:17 115:25
123:2,9 147:8
154:15 155:14
156:9 163:19
166:24 169:6
170:1,6,16 171:15
171:19 172:2,12
172:14 174:15
175:9 179:6 183:5
215:18 216:8,20
217:22 225:22
226:8,13,21
228:14,25 230:6
235:18 237:21
239:13,19 240:6
240:11,12,13
241:1
**mcmahon's** 50:12
51:21 52:4 54:21
55:10 56:18 59:11
66:23 78:6,11
81:23 82:22
167:11 169:18,23
170:5
**mcnulty** 42:6
**md** 37:4
**mdl** 92:10,11
**mdt** 223:25
**mean** 50:6 52:9
57:13,13 59:8,12
60:11 71:17 72:24
75:16 76:10,17
82:1 83:20,23
84:22 90:3 95:24

98:21 107:20
111:12 113:7
116:13 120:20
121:22 130:2
134:19 135:17
136:6 139:8,12
140:9 143:8
144:20 151:14
154:4,18 158:13
162:5,16 164:12
166:15 167:19
172:18 179:6,11
179:12,12 181:25
182:12,14 184:8
185:19 197:8
200:7 219:16
237:14 243:15
246:2 252:25
253:22 261:20
**meaning** 124:13
150:4
**meaningful** 67:16
96:16 107:13
110:18 117:2
130:10 131:3
132:17 136:18
171:25 172:1
186:1 240:1 259:8
277:14
**meaningfully**
110:1
**meaningless**
131:18
**means** 57:13
105:16 107:8
111:12 114:10
121:22 180:10
233:18 234:7
**meant** 66:3
112:18 216:1
**measure** 71:1
108:15 258:25

measures 133:15
mechanics 223:12
mediation 208:5,8
  213:9
medicare 99:13
medicine 205:15
meet 102:16
  171:22 198:22
  249:2
meises 42:7
melissa 43:7
member 126:16
members 134:4
  135:7 191:13
  223:25
memorandum 2:9
  4:11,11 6:12,19
  7:16 8:2 9:9 12:15
  12:15 14:22 17:15
  17:15 20:2 22:15
  22:15 24:22 27:11
  27:11 30:2 32:15
  32:15 34:22 45:15
  258:7 262:12
memorialized
  247:7
mention 103:19
  119:14 206:21
  246:8
mentioned 185:16
  205:6,6 214:17
  255:21
mere 69:1 102:25
  114:6 117:2
merely 46:20 54:5
  81:7 266:20
merge 154:23
merged 154:22
merit 68:12
  207:17 210:15
meritorious 148:5
merits 48:20
  49:11 50:25 51:3

52:11,16,19 54:13
  55:6 58:18,20,25
  59:2 60:5,17,24
  60:25 66:21 67:4
  67:10,12 68:7,22
  69:1,7 70:3 71:14
  72:4,11 81:1 83:2
  83:11,13 86:16
  88:15 102:11,14
  140:7 163:20
  167:10 176:22
  178:25 228:7
  229:4 238:24
  242:15 256:1,21
  257:5,22 258:9,10
  258:17 260:17,20
  266:4 267:7
  276:24 279:15
mesh 268:10
met 265:17
  271:22
metromedia
  69:17 84:21 90:8
  273:21
mezzanine 262:8
michael 4:24 13:4
  18:4 23:4 28:4
  33:4 40:23 42:10
  42:20
michele 42:7
mid 156:2 177:1
  218:12
middle 182:25
milbank 36:11
millbank 246:20
million 162:6,6,8
  162:18 205:10
  211:8,9,10 212:15
  212:19,20 213:1
  213:11 241:14,14
  241:15 272:20
  273:2 281:8,11

millions 140:10
  241:2 245:5
mind 67:5 135:2
mindful 151:6
mineola 283:23
minimal 87:8
minimize 115:3
minimum 65:8
  81:25 153:7
minority 87:2
  275:13
minus 272:25
minute 167:25
  251:15 253:7
minutes 55:3
  214:23
miscellaneous
  220:18
mischaracteriza...
  55:9 220:4
misconduct 89:2
  89:9,10,11,19
misdirection
  253:3
miserable 244:21
misguided 203:4
misheard 56:22
  56:25 65:15
misleading 208:17
misses 231:11
missing 181:21
missouri 206:7
mistake 65:17
  117:19
mitch 191:4
mitchell 39:13
  41:15
mitigate 253:16
model 109:2
modest 254:15
modified 6:1 13:8
  18:21 23:8 28:15
  33:8 150:25

modifying 62:23
moment 87:10
  104:20 123:22
  161:3 195:5
  211:23 233:6
monaghan 36:23
  247:23,25
monetary 135:18
  137:3 222:20,21
  263:21
money 102:6,7
  107:5 108:21
  113:5,10,11,25
  114:6 131:24
  136:6,20 139:25
  140:12 145:19
  161:21 162:16
  187:8 202:17
  206:2,3 207:8,10
  207:24 208:1,18
  208:19,19 209:7,8
  209:12,13 211:17
  211:18 212:8,11
  212:15,16,22
  213:6,7 217:7
  218:7,8,9,10,12
  222:15 223:8
  234:8 235:10
  236:6 237:2
  243:16 249:12
  251:23 254:16
  274:1,19 276:8
  279:9
monies 220:19
month 161:14
  206:9 216:20
  233:23 239:9
  241:18
months 121:21,25
  128:9 134:22
  160:24,25 161:9
  192:17 205:25
  207:2 208:5,6,7,7

208:8 247:12

**moot**   53:14,17
75:19,21 76:4
82:15 84:24 85:6
98:16 102:2 134:1
140:13 157:16
164:19 167:16
264:23 265:15
270:3

**mooted**   60:18

**mootness**   48:21
49:10 51:6,8,13
51:15,19 52:2
53:1,2,11,18,22
54:5,9 68:14
70:23 71:11,13,17
72:2,20,23 73:6
73:15 74:1 75:4
75:11,22 76:1,5,7
76:8,18,24 77:8
78:9,21 80:14,16
80:21,22 81:7,18
82:8 83:1,20,23
85:11,13 97:7,14
98:10,21 100:14
100:24 101:3
102:25 103:1
111:8,11,17,19
115:6,11,19,22
116:3,14,17,19
117:7,21,24 118:3
123:23 124:4
125:2,6 138:10,13
138:24 139:19
140:16 141:6,13
143:4,12,14
145:15 150:22
151:13 163:18,24
165:8 167:8,13,23
168:5 171:13,23
173:9,20 174:2
175:10,24 176:8
177:10 180:4

181:22 182:24
183:16,19 188:6
202:24 219:1,8
223:11 226:3,9,19
264:24 265:22
266:16,21 267:6
267:11,12 269:9
269:17 270:3
274:15 279:14

**morning**   44:2
54:19 58:12 94:14
253:13

**mortimer**   36:19

**motion**   2:9,10,16
4:1,3 5:1,2,9,16
5:17,19 6:11,13
6:19,20,23 7:1,2,4
7:6,15,17 8:1,3,9
9:8,8 10:3,9,9,10
10:16,21 12:5,7
13:17 14:1,21,21
15:10,11,15,20
17:5,7 18:7,14
19:7 20:1,1,16,20
22:5,7 23:18 24:1
24:21,21 25:10,15
27:1,3 28:7,8 29:1
29:7 30:1,1,16,20
32:5,7 33:18 34:1
34:21,21 45:11
48:15 49:1 50:7
55:12,16,23 56:8
56:10 57:20 58:10
58:19,24 59:14
62:11 63:3,4,8
64:21 66:18,20,21
75:20 78:22 81:13
105:11 109:3
132:12 139:17,20
143:7 145:10,14
148:16,24,25
154:11,14,17
156:2,4,14 157:12

157:12 158:12,25
163:23 167:4,18
177:1 178:5,11
180:8 186:17
188:1 189:11
191:9,23 198:23
202:20 211:3
216:4 225:3,23
228:3,13 231:18
239:5 250:21
254:10 255:9,15
255:17,19,20,22
264:8 268:3
270:16 271:6,15
275:19 278:20
279:13 280:22

**motions**   2:2,17,23
3:2,9,15 4:5,12,18
4:23 8:10,17 9:3
9:10,18 10:22
11:3,7,14,20 12:9
12:16,22 13:2,18
14:2,9,16,23 15:5
15:21 16:2,6,13
16:19 17:9,16,22
18:2 19:8,15,22
20:3,11,21 21:2,6
21:13,19 22:9,16
22:22 23:2,19
24:2,9,16,23 25:5
25:16,22 26:2,9
26:15 27:5,12,18
28:2 29:2,8,15,22
30:3,11,21 31:2,6
31:13,19 32:9,16
32:22 33:2,19
34:2,9,16,23 35:5
44:4,11,19,22
45:3,11 49:4,7,11
52:12 56:14 63:5
65:24 73:11 106:1
142:3 144:25
156:25 159:24

167:4,12 178:3
190:9 193:9 194:8
196:6,9 215:7
226:17,20 227:23
228:2 242:15
246:25 254:10,19
254:24 255:1,11
255:21,24 256:3
271:10 279:12,15

**motors**   256:6,13

**mouth**   78:16

**movant**   44:17
156:12 183:21,22
209:25 210:5
255:23 256:18,19
256:21 257:4,13
264:18 278:12

**movant's**   56:6
202:7

**movants**   56:11
58:3 59:9 94:12
158:7 163:18,22
164:5,8,9 165:7
167:4,7 170:24
187:25 188:25
189:7 202:22,23
202:25 207:13
208:10,16 216:3
217:12 223:20
226:12 251:10,12
256:2 264:19
269:22 270:11,16
270:19 271:20,24
276:3,8 278:23
279:8 280:21

**movants'**   258:5

**movant's**   270:3

**move**   71:20 85:16
102:10,19 127:18
129:10 133:13
139:5,7 140:22
141:1 144:22
145:4,12,15

158:20 174:9
191:1 207:20
216:18,22 217:17
218:5 242:9
**moved** 75:25
217:18
**movement** 245:21
**movie** 103:14
**moving** 79:9,9
88:3 102:22 134:3
139:17 141:23
149:8 218:22
260:19 263:15
264:5 268:1 270:8
**mpm** 84:22
**msge** 4:18 9:18
12:22 15:5 17:22
20:11 22:22 25:5
27:18 30:11 32:22
35:5 164:15
225:21,25
**mull** 188:7
**multi** 4:21 9:21
12:25 15:8 17:25
20:14 22:25 25:8
27:21 30:14 32:25
35:8 40:8 195:8
196:8 264:9
**multiple** 73:12
84:7 120:5 136:13
147:21 157:21
**municipalities**
146:25 147:1,6,11
204:6
**municipality**
25:11 38:16
255:10
**murray** 42:8
**mute** 54:18
188:10,11,12,12
**mysterious**
183:12,13

**n**

**n** 36:1 44:1
114:23 160:3
194:5 196:2,3,3
283:1
**n.a.** 66:16 268:11
**n.d.** 66:14
**naftalis** 37:8
221:20
**naloxone** 199:8
**name** 114:3
**narrow** 195:19
198:17,24 199:3
210:20 231:24
263:4
**nas** 3:7,11 11:12
11:16 16:11,15
21:11,15 26:7,11
31:11,15 164:15
204:7 243:1,4,7
243:17 244:2,4,8
244:9,23 245:3
**nation** 25:12
38:17 147:1 278:2
**national** 81:5
206:1 208:21
209:9 264:9
**nationally** 274:9
**nations** 147:6
150:10 151:3
255:10
**native** 2:24 11:4
16:3 21:3 25:23
31:3
**natural** 171:10
**nature** 134:17
148:15 266:1
**ncsp** 203:12
**near** 163:18
**nearly** 81:12
117:8
**necessarily**
100:19 101:2

168:15,21
**necessary** 89:24
95:7 105:25
109:23 169:4
174:15 195:1
239:11,12 240:20
273:20,24
**need** 50:9 52:3
54:4 57:20 61:5
77:3 80:11 96:25
102:5 106:20
115:4 122:2 146:5
152:17,22 153:2
163:21 164:9
172:13 175:11
183:8 185:5
198:25 200:21
225:3 228:6 232:7
233:15 234:1
235:12 239:2
240:24 241:19
242:10 252:21
255:25 257:6
267:9
**needed** 77:23
106:18 253:5,6
267:8
**neediest** 244:17
**needlessly** 129:24
**needs** 51:20,23
53:13,23 57:24
93:11 96:17
172:13 175:9
203:4 224:18,19
233:14 235:17
256:18 274:4
**needy** 110:11
**negligence** 89:6
**negotiate** 117:6
213:10 248:19
273:22
**negotiated** 113:20
245:24 266:8

**negotiating**
281:24
**negotiations**
208:6,7 213:19
220:13
**neiger** 42:9
**neither** 58:21
179:25 267:14
**net** 137:17
**never** 47:24 91:10
140:3 164:17
183:17 188:17
203:6 210:14
214:20 231:13
**nevertheless**
53:19 56:12
**new** 1:2 36:6,14
36:21 37:11,18
38:4,11 39:11,11
40:1,3,3 78:1
106:15 138:25
142:12 165:25
167:4 180:8,22
185:22 187:1
200:11 206:1
217:22 235:8,13
242:6 270:20
278:2 279:2
**newark** 38:19
**newco** 74:12,13
127:7 143:6
160:21 161:22
162:14,18,23
168:9 219:4 224:1
273:11
**news** 197:3
**newspaper** 47:16
47:22
**nicholas** 3:17
11:22 16:21 21:21
26:17 31:21
**niece** 206:23

night 55:22 58:11
166:10 182:25
nj 38:19
nken 256:25
257:19 267:16
noat 108:20
218:17 223:25
non 51:22 53:1
68:16 89:2 90:4
90:21 91:10
111:16 114:14
119:19 147:11,23
148:8 149:6
151:19 210:22
214:4 222:11,21
231:25 232:25
241:21 249:11
259:22 274:25
276:19
norm 276:21
norma's 95:4
normally 108:14
nos 45:18 209:6
209:12
note 44:14 62:3
65:23 66:5,15
101:6 102:20
104:7,19,25
106:14 113:23
123:2 144:23
148:14 158:10
198:8 205:5
206:23 252:8
253:4,13 259:5,10
260:6,11,21 264:5
264:7 276:5
279:20
noted 71:21 164:9
194:18 238:6
262:12 268:10
277:17 279:13
notes 119:22,22
120:8 227:21

257:10
notice 2:6 5:17
7:2,10 45:21 46:3
46:4,9,19,23 47:4
47:5 48:2 62:11
92:24 93:9 165:24
166:10,11,23
170:25 178:7
180:15,18 181:4,5
181:6,10,13,16,22
182:2,9,10,17,21
184:6 187:23
188:1 199:24
200:19 219:13,13
226:4 230:11
239:16 250:1
251:7 259:2,3,9
269:23 270:7,8,16
280:14,15,20
notices 234:11,12
234:13
noticing 181:23
notion 56:15
notions 238:4
notwithstanding
52:11 56:9 114:18
117:12 202:14
244:11 262:14
263:15,18
november 1:16
2:6 44:14 56:12
57:4,21 58:4
77:10 123:9 160:8
170:7 190:11
193:12 194:11
196:10 268:24
283:25
nuances 143:10
nuisance 246:12
number 66:6 89:7
136:2 142:4 156:5
158:10 166:17,22
196:15,19 197:1,7

197:9,15,15,20
200:3,5 206:8
210:1 257:7
numbers 197:13
numerous 81:4
93:15
nw 40:9
ny 1:14 36:6,14,21
37:11,18 38:4,11
283:23

## o

o 1:21 44:1 114:23
160:3 194:5 196:2
196:3 283:1
o'neil 4:25 13:4
18:4 23:4 28:4
33:4
obaldo 42:11
object 92:15
259:13,14,25
260:16 275:5,6
objectant 44:17
245:11
objectants 156:21
158:4 188:10
199:16 276:1
objected 70:14
93:17 202:19
249:23 272:6
objecting 91:21
127:15 134:20
192:1 211:6
253:18
objection 2:16,17
4:1,2 8:9,10 10:21
10:21 12:5,6
13:17,17 14:1,2
15:20,20 17:5,6
19:7,8 20:20,20
22:5,6 23:18,18
24:1,2 25:15,15
27:1,2 29:1,2,7,7
30:20,20 32:5,6

33:18,18 34:1,1
47:20 93:10
127:15,17,19
134:12 145:8
159:23 190:18
191:9 199:11
222:7 229:11
230:14 231:6
239:13
objections 44:11
44:13 45:21
125:19 134:15
158:5 192:5,8,12
195:2,16 222:6
279:20
objectively
257:25
objectors 47:1
52:1,18 54:17
70:10 145:18
157:4 158:17
187:4,14 190:25
199:18 277:18
obligations
252:24
observations
184:1
obtain 166:14
256:17
obtained 62:17
113:10 249:2
obtaining 60:3
112:21 264:16
obtains 277:21
obviate 185:5
225:3
obvious 68:6
130:1
obviously 58:10
58:12 67:8,10
73:2 94:9 115:15
126:16 137:12
148:2 149:13

150:23 156:18
161:6 165:25
166:25 169:5
174:7 181:11
187:4 202:6 205:1
238:11 249:17
250:20 251:9
258:4 280:19
**occasion** 153:15
**occasioned**
127:23 278:15
**occupies** 148:4
**occur** 70:24 78:1
78:10 97:25 98:5
100:8,18 101:5
107:15 109:11,15
110:11 117:15
123:5 130:19
134:8 135:15
145:23,24 164:25
165:16 166:13
170:23 173:7
174:23 176:25
184:7 187:19,22
189:9 201:1
213:14 215:13
235:8 267:11
269:3,24 272:10
274:11
**occurred** 96:12
208:10 235:13
237:15 264:12
**occurrence** 95:20
98:9
**occurrences**
134:23
**occurring** 96:24
101:13 136:2
253:8
**occurs** 71:5 99:10
103:25 108:7
117:20 168:4,7
184:12 218:12

254:18 271:7
**oct** 66:9
**october** 45:14,17
51:2 55:13 101:7
104:8 124:1 156:2
156:5 159:24
160:8 164:24
190:9 193:11
194:9 196:7 197:5
**odd** 162:8
**oel** 262:7
**offer** 176:3 191:11
202:9
**offered** 77:15
125:24 126:4
128:24 176:9
212:11 216:12
219:7 224:14
226:15 275:24
276:1 278:13
**offering** 47:4
115:9 129:3
192:14 260:15
**offers** 129:20
277:7
**office** 37:1 39:16
44:25 157:23
200:2,3 206:12
210:10
**officer** 89:11
118:19,25
**officers** 232:14
257:20
**official** 3:1,4,8,14
4:5,22 8:16,18 9:2
9:4 11:6,9,13,19
12:9 13:2 14:8,10
14:15,17 16:5,8
16:12,18 17:9
18:2 19:14,16,21
19:23 21:5,8,12
21:18 22:9 23:2
24:8,10,15,17

26:1,4,8,14 27:5
28:2 29:14,16,21
29:23 31:5,8,12
31:18 32:9 33:2
34:8,10,15,17
39:9 191:5 195:4
201:12 202:6
214:14
**officials** 238:3
**offset** 122:3
136:10 267:9
**offsetting** 187:14
**oh** 74:23 98:24
105:2 123:16
138:1 146:21
154:14 156:11
**oil** 70:6 256:8,12
257:10 267:17
**okay** 44:2 45:10
46:13 47:1,6 48:8
50:18 56:16 59:20
61:4,6,8 64:19
65:3,13 66:5
89:10 94:6,13
98:14 102:9
112:24 118:6,7
122:12,16 123:20
133:22 134:2
137:9,21 138:4
139:5 145:25
146:16,21,23,23
149:4 154:5,6,8
154:10,14,20
155:1,10,13,23
156:12,12,24
157:8 158:3,23
159:9,11,14,20
160:3,6,12,15,18
161:2,16 162:13
162:24 163:3,5,8
163:11 164:22
165:12 166:17,18
166:22 168:13,22

174:25 175:14,16
178:21 180:2
183:10,20 185:8
185:19 186:5
187:3,3 189:17,19
190:7,14,15,22
191:7 193:1,8,15
193:16,24 194:5
194:14,15,22,24
195:22,23 196:5
196:13,21 197:1
197:17,21,22
198:14 199:5,14
200:23 201:9,15
201:18,20 202:2
214:24 216:16
219:10,20,20,22
221:17 225:1,8
242:21,24 245:10
246:17 247:22
248:7,7 251:3,13
252:3 254:1,3,7,9
281:3,17 282:5
**oklahoma** 246:10
**old** 283:21
**oldco** 162:17
**once** 96:12 99:10
138:18,21 170:19
175:10 212:10
234:10
**ones** 103:21 109:4
113:18 114:9
252:21 260:20
276:10
**one's** 272:23
**ongoing** 225:11
235:1
**onus** 170:24
**op** 209:21
**opaque** 101:11
**open** 53:4 66:3,16
74:10 100:5 241:9

opens 242:13
operate 99:11
operation 124:22
operational
  126:10 127:21
operations 141:23
  141:24
opinion 50:9 61:2
  67:13 126:4
  129:15 134:8
  175:25 257:11
  262:6 263:2
opinions 84:23
  260:10
opioid 85:21,23
  130:18 132:4
  134:6,8 136:2
  145:20,20 191:18
  192:24 202:14
  204:4 205:8,9,12
  206:2,8 208:21
  209:9,14,17
  212:11,16,20
  213:16 220:22
  243:7,13,21 244:2
  244:16,23 245:3,5
  251:23 252:24
  273:14 274:8,11
  281:7
opponents 75:20
  78:23 103:13,20
  105:9 106:9,21
  119:17 167:3
  208:2 224:21
  227:15
opportunities
  262:8
opportunity
  55:19,20 58:7,12
  107:25 169:3
  216:3 239:18,21
  240:1,2 242:1
  248:25

oppose 85:23
  222:8 278:19
opposed 47:13
  75:10 116:17
  136:21,22 168:8
  175:6 202:7
  210:10 214:21
  219:2 261:24
  262:4 263:9
opposing 75:20
  85:19 227:15
opposite 80:23
  251:5
opposition 2:22
  2:22 3:1,7,8,13,14
  3:20 4:4,12,18,22
  4:22 8:16 9:2,10
  9:18 11:2,2,6,12
  11:13,18,19 12:1
  12:8,16,22 13:1,1
  14:8,15,23 15:5
  16:1,1,5,11,12,17
  16:18 17:1,8,16
  17:22 18:1,1
  19:14,21 20:3,11
  21:1,1,5,11,12,17
  21:18 22:1,8,16
  22:22 23:1,1 24:8
  24:15,23 25:5,21
  25:21 26:1,7,8,13
  26:14,20 27:4,12
  27:18 28:1,1
  29:14,21 30:3,11
  31:1,1,5,11,12,17
  31:18 32:1,8,16
  32:22 33:1,1 34:8
  34:15,23 35:5
  196:9
oppositions 73:11
  106:1
opt 259:22
option 272:22

oral 45:1 51:1
  55:7 123:8,15
  170:7 199:15
  201:21 268:2,5,24
  269:2 277:25
oranges 108:3
order 2:1,11 4:13
  4:13 5:2,9,17,19
  6:5,13,21 7:2,5,18
  8:4 9:11,11 10:4
  10:11 12:17,17
  13:11 14:24,24
  17:17,17 18:14
  19:1 20:4,4 22:17
  22:17 23:12 24:24
  24:24 27:13,13
  28:8,19 30:4,4
  32:17,17 33:12
  34:24,24 44:5,6
  44:14 50:2,5,12
  51:21 54:22 59:22
  60:19 61:21 62:5
  62:7,25 63:8
  64:10,11,12 78:6
  78:19,20,20 79:19
  79:19,24 80:7,9
  83:19,22 95:21,22
  95:23 96:7 97:15
  100:17 114:17
  115:16,24 123:6
  124:2,10,17,24
  127:9 128:8 144:9
  154:15,19 155:3
  155:15,16 156:1,4
  157:2,3,3 158:9
  164:21,22 172:18
  173:11,11 177:14
  203:18 204:1,17
  211:5 225:2 226:2
  229:8 233:9
  244:14 250:22,25
  254:12,14,22
  255:3,4,12 257:23

262:13 268:9
  269:12 270:2
  278:8 280:13,25
  281:20,24
ordered 61:16
  203:21,25 226:3
orders 2:11 5:3,19
  6:14,22 7:6,18 8:4
  10:4,11 15:16
  18:8 28:9 62:2
  63:2,22 164:19
  254:12 269:6
  282:1
ordinarily 63:3
  191:16
ordinary 80:6
organization
  145:2
organizations
  207:24
original 65:6
  139:20 216:12
originally 174:18
ortiz 258:25
  259:21 260:4
  280:5
oud 205:11
ought 105:23
  106:9
outcome 230:19
outer 280:17
outlined 244:9
outlines 135:3
outpace 276:6
outrageous 104:6
  105:21 219:24
  220:24
outside 135:4
  170:1 177:18
  183:8 227:25
  241:12 257:25
  270:15,19 271:16

outspoken 191:16
outweigh 108:11
  110:4
outweighed 88:12
outweighs 87:6
overarching
  251:16
overcome 265:16
overdose 130:19
  196:15,20 197:7
  197:16,25 202:14
  205:15 206:8
  274:11
overdoses 136:2
overlap 89:23
  90:3 259:8 260:20
  263:6,8 264:2
  280:10
overlapping
  90:19 91:3,25
  261:23
overnight 181:17
  200:17
override 91:6
overrule 192:12
overruled 192:5
overwhelming
  214:17,18
overwhelmingly
  204:8 214:15,21
  244:8
ownership 147:19
oxi 206:20
o'neil 42:10

**p**

p 36:1,1 44:1
p.c. 38:8
pace 86:6
package 264:14
page 9:9 10:9
  14:22 20:2 24:22
  30:2 34:22 45:6
  56:14 68:5 148:22

149:2 196:14
  258:7 266:24
pages 267:2
paid 71:7 113:25
  234:6,14 276:6
panoply 119:3
pao 278:3
papers 63:20
  141:25 147:4
  149:8 205:4 209:1
  209:7 210:8 214:9
  227:8 250:18
  251:11
paragraph 124:5
  129:11 149:3
  160:21,22 196:14
  207:11 223:3
  273:9,11
paragraphs
  129:20 160:20
  273:7,8
parallel 147:19
parent 244:9
park 39:10
parse 109:7
parsing 69:14
part 80:11 93:10
  93:11 94:4 98:22
  109:8 111:1 115:6
  124:25 126:22
  127:19 138:6
  139:12,22 144:2
  151:20 173:15
  176:10 190:16
  191:24 208:11
  216:14 230:21
  231:19 245:25
  248:20
parte 5:17 7:2
participated
  113:16
participating
  44:16

participation 89:8
  235:2
particular 67:4
  69:11 210:24
  256:12 263:18
  265:5
particularly
  79:12 87:7 91:4
  102:11 128:4
  178:12 186:24
  187:7 276:7
parties 44:21 49:1
  49:11 52:10,15
  59:3 60:2 61:10
  61:14 62:12 66:24
  66:25 67:17 68:21
  71:4 73:9,10 76:2
  76:13,13,14 77:24
  82:6,10,10,23
  84:13,14 85:19
  92:23 93:13 97:15
  100:2,6,10,11
  102:1,4 103:17
  105:2 106:2 107:4
  107:14 108:8
  109:3,7 110:10,11
  111:10 113:4,7
  116:1 117:4,4,9
  117:14,18 118:1
  120:5,22,22
  124:13 125:12,18
  128:2 136:15
  137:3 146:12
  147:12 148:1
  149:7 151:19
  157:1 185:23
  187:12 198:5,6
  230:3 241:1
  253:16,18 256:23
  258:23 261:3,10
  263:21 264:10
  266:5 267:9 270:9
  270:23 271:9,25

272:3 274:13,14
  275:8,9 276:16
  277:7 278:14
  281:23,25
partners 262:8
parts 134:10
party 46:18,20
  55:18 62:17 69:9
  69:12,19 84:17
  86:16 116:20
  117:12 119:25
  124:18 149:6
  164:13 204:7
  214:4 221:9 239:7
  244:6 258:22
  259:7,19 261:2,9
  261:11,22,23
  262:24 265:15
  275:24
party's 62:11
  117:13 122:15
pass 83:10
passes 274:6
pataki 278:2
path 111:6
patrick 4:24 13:4
  18:4 23:4 28:4
  33:4 42:10
pattern 259:20
paul 5:5 10:6,13
  28:11 37:3 42:18
pause 165:17
  233:11
pay 209:17 234:15
  243:17
payers 204:8
paying 173:3
  235:8
payment 162:6,7
  212:14 234:18
  235:8 273:2 274:1
  274:3

**payments** 71:4
99:23,24 110:11
117:9 118:3
160:19,21 162:1
162:10,11 187:12
192:15 234:12
236:5 273:7
277:10
**payout** 272:19
**pch** 58:25
**penalties** 252:14
**pencils** 234:25
**pending** 2:2,9,11
3:2,9,15 4:4,6,13
4:19,23 5:3,20
6:11,14,22,23 7:6
7:7,15,18 8:1,4,17
9:3,11,19 10:4,11
10:16 11:7,14,20
12:8,10,17,23
13:3 14:9,16,24
15:6,12,15 16:6
16:13,19 17:8,10
17:17,23 18:3,8
19:15,22 20:4,12
20:16 21:6,13,19
22:8,10,17,23
23:3 24:9,16,24
25:6,10 26:2,9,15
27:4,6,13,19 28:3
28:9 29:15,22
30:4,12,16 31:6
31:13,19 32:8,10
32:17,23 33:3
34:9,16,24 35:6
44:4 46:16 60:3
62:10,13,23,24
63:9,11,23,24
64:1,12 65:25
66:3 67:11 71:22
81:19 86:4 90:7
94:5,10 105:5,12
106:17 143:21

151:25 157:1
163:20 190:9
193:10 194:9
196:6 211:3,7
217:13 227:16
228:2,3 233:9
254:10,11,21
255:3,24 256:3,5
256:10,17 258:12
264:16 266:1
267:20 268:8,19
268:20 271:21
273:23 276:16,25
280:23
**pensively** 202:21
**people** 59:12
70:13 71:9 82:4
87:5 92:3,15,16
94:1 128:16 134:7
134:9 135:7 136:6
137:16 138:10,15
158:13 187:16
202:13 203:17
224:3 233:11,17
233:19 234:25
235:10,15 241:7
244:17 249:23
**perceive** 100:11
**perceives** 211:21
**percent** 202:17
204:22,23,24
207:4 211:12
222:11 237:10,12
274:9
**percentage**
130:20 237:8
**perdue** 124:7,13
126:19 138:25
139:15
**perdue's** 126:16
129:13,18
**perfect** 184:5

**perfectly** 101:24
130:21 135:20
178:4
**period** 56:7 61:16
95:12 101:8,18
105:20 106:24,25
107:2,5,13,15,18
108:14,17 109:9
110:3 126:14,22
127:9,11 131:15
136:21 161:20
163:14 167:23
170:25 171:13
174:5 201:4 213:7
217:17 218:6
230:11 237:7
240:10 242:3,4
**permanent** 87:4
203:18,23 204:2
**permanently**
68:17
**permissible**
114:15
**permissions**
142:25
**permit** 100:2
269:15
**permitted** 96:13
105:17 111:11
125:11 152:11
204:21 215:15
**permitting** 142:12
254:14
**person** 126:5
136:8 192:19
221:14
**personal** 93:4
125:25 126:1,15
129:16 134:13
136:21 187:13
191:17 213:11
214:6,8,12 234:2
235:20 243:18

244:1,11 261:8,18
261:21 272:15,18
272:25 276:17
278:18
**personam** 262:19
**perspective** 48:7
216:24
**persuade** 70:10
**pertain** 280:8
**pertaining** 173:11
**pertains** 54:15
63:7
**peter** 2:23 11:3
16:2 21:2 25:22
31:2
**petition** 87:15
**ph** 155:8
**pharma** 1:7 3:5
4:8,15 6:7 7:12
8:19 9:5,12,16
11:10 12:12,19
13:13 14:11,18,25
15:3 16:9 17:12
17:19 19:3,17,24
20:5,9 21:9 22:12
22:19 23:14 24:11
24:18,25 25:3
26:5 27:8,15
28:21 29:17,24
30:5,9 31:9 32:12
32:19 33:14 34:11
34:18,25 35:3
44:3 156:25 183:1
**phrase** 63:13
**phrased** 135:11
257:7
**pi** 217:3
**pick** 132:23
189:18 223:14
**picture** 206:1
**piece** 181:21
203:12 208:11
231:19

**piercing** 89:16,24
**piggyback** 224:23
**piggybacking**
  239:6
**pinned** 77:8
**pis** 211:13 214:3
**pl** 39:18
**place** 37:3 48:3
  92:5 99:22 100:9
  101:7 104:7
  108:10 109:4
  110:7 124:15
  127:11 138:21
  139:11 165:14
  174:19 226:7
  227:1 234:6 235:6
  241:9 270:21
**placed** 49:18
  104:24
**places** 170:24
  257:24
**plain** 118:17
**plains** 1:14
**plaintiff** 120:25
**plaintiffs** 89:3,20
  211:17 221:18
**plan** 6:2,6 13:9,12
  18:22 19:2 23:9
  23:13 28:16,20
  33:9,13 55:19
  56:3 71:1,6 72:6
  72:18 73:1 75:5,7
  75:8 76:11,18
  77:9,22,24 80:11
  81:9 82:2 84:12
  85:13,14,23 86:1
  86:14,21,23,25
  91:5 92:17 93:6
  93:17 95:22 96:8
  96:14,15,16,25
  97:3,23,24 98:16
  99:17,24 100:21
  100:22,22 101:16

104:16 105:10,14
106:21,25 110:16
112:2 113:5,17,18
125:11 130:9
133:25 134:23
139:21 140:1,12
141:3 143:6,7,7
145:22 148:3,9
150:3,25 151:1
152:25 160:19,21
161:4 164:6,21
165:15,20,22
167:3 168:9,9
172:13,17,23
178:4 181:6,16
183:17 192:15
199:18 202:18
204:6,9,21 212:21
217:2,6 222:8,11
222:12 223:4,5
224:2 228:10
229:15 231:10
233:7 234:2,4,6
234:17,20 235:23
236:13,23 238:14
238:15 241:6
243:12 244:5,8,10
245:8 252:23
254:13,17 258:21
259:5,13,14,15,24
260:25 261:11,12
261:18 263:5,18
264:4,22 265:13
265:18 266:23
269:4,11,13,14,19
272:6,7,10 273:22
275:5,6 278:17,22
**plane** 206:9
**planned** 126:13
**plans** 76:1 111:11
  111:15 237:7,14
  237:23 238:2
  266:7

**play** 71:25 185:7
  217:11,12 238:18
  250:14 252:17
**played** 103:15
  260:14
**playing** 182:3
**plays** 97:18
  199:22
**plea** 72:25 98:22
  101:7 124:12
  127:1 130:9,16
  150:13,15 151:1
  165:19 235:20
  281:12
**pleading** 232:5
  271:11
**pleadings** 44:11
  45:7 47:8,11,11
  47:13,14 158:5
  199:16 244:13
  245:13
**please** 140:22
  159:25 168:2
  189:25 193:2
  194:1 195:24
**pled** 127:2
**plenty** 166:11
  177:6 181:16
  182:2,21 200:14
  200:20 268:13
**plimpton** 36:18
**plus** 101:22 103:1
  107:12 128:5
  132:20 228:4
  267:24
**pm** 282:7
**pocket** 104:13
**podium** 191:10
**point** 47:17,23
  51:5,25 52:5,19
  53:15,16 54:17
  55:8,8 59:21
  64:22 66:4 69:6,6

69:22,23,24 70:12
71:5 77:20 78:3
78:17 82:18,21
94:23 95:1,6,8,15
97:21 100:12
105:21 106:5
107:20 108:19,20
108:24 110:8,25
111:1 113:2 115:4
117:3 118:6 120:6
120:12 122:6,14
122:24 123:4
127:7 130:7,15,16
130:16,22 131:1,1
131:2,5 132:6,25
133:1,1,10,10,23
135:4,9,25 139:6
140:9,19 142:2
144:19,19 146:3
155:14 156:20
157:4 158:6,21
165:11 167:12
168:8 172:3 174:2
175:15 178:19
185:5,17 186:4,7
186:16,24 193:22
195:19 198:17,24
205:18 207:17
218:2,20,23,24
219:11,15 221:12
221:15 224:5,11
224:16,17,20
227:9 237:17
241:22 247:21
251:11,16 252:13
253:19 256:7,9
259:2 263:14,19
266:20 275:13,14
275:18 276:6,18
277:15 279:14,15
**pointed** 76:22
  230:13 231:6

pointing 57:11
  252:22
points 50:19,23
  69:23 91:23
  103:16 113:15
  120:3 122:14
  138:5 146:14
  151:15 159:1
  166:21 183:21
  189:6 223:10,10
  223:18 277:2
  279:21
police 125:13
  203:2 242:4
policy 85:17
  188:20 189:6
  222:1 275:12,18
political 238:2,5
polk 37:15 54:20
  157:6 158:19
  163:12
pond 152:17
population
  204:23 207:4
port 179:15
porter 42:12
portion 104:22
  120:23 125:20
  148:21
portions 134:16
pose 53:3
posing 103:18
posit 96:19 110:3
  264:21
posited 96:17
  189:8 246:25
positing 96:20
  103:20
position 65:8
  67:12 68:11 76:22
  95:10 96:22 99:9
  103:19 109:24
  110:1,18 115:7

122:25 130:14
138:22 149:19
155:4,7,9 169:5
210:25 211:22
230:2,17 236:8
237:4 239:1 240:3
247:14 248:2
249:6,11 257:24
267:23
positioned 130:22
positions 65:10
  147:3
positive 134:15
posner 121:12
  278:1
possibility 51:6
  52:25 54:14 60:5
  69:2 72:4 96:23
  100:13 105:5
  107:5 138:9
  139:19 141:3
  143:11,12 183:16
  226:9 237:1
  265:22 267:15
possible 105:7
  129:22 185:10
  215:17 237:17,18
  257:9 258:10
  276:23
possibly 57:23
  166:13 167:15
post 81:8 106:8,24
  197:4 224:19
  239:2,8,18 240:4
  241:11,13 250:4
  266:22 274:21
  278:6,13
posted 105:2
posting 119:25
  135:22 152:22
  276:19,20,24
  278:11

postpone 186:13
potential 95:6
  102:23 141:14
  207:22 223:25
  237:6 271:5
potentially 44:22
  140:10 161:13
  267:21
power 62:21
  69:19 125:13
  203:2 207:20
  235:22 262:18
powers 224:7,10
  224:15 242:4
pplp 162:17
practice 178:11
pragmatic 265:4
pre 74:9,11,23
  106:24
preceded 259:13
precedent 238:8
precipitate
  240:12
precise 142:17,23
preclude 100:15
precluded 77:24
  93:14
preclusion 54:23
preclusive 58:23
predicate 97:6,13
  113:20
predicates 101:2
predict 87:25
predicting 192:13
prediction 128:20
  128:22 129:2,21
  130:25 134:25
  135:6,14 137:13
  137:15 161:7
  164:3 198:7
predictions
  192:18 198:9

prefer 102:4
  225:5
preferred 66:25
preis 39:14 191:8
  201:10,11,15,20
  202:2 214:25
  215:14 216:5,11
  217:15 218:2,20
  219:9,11,18,20
  220:4,14 221:12
  229:21 234:9
  235:4 236:20
  252:9,19
preis's 219:24
  220:12
preis' 243:9
prejudice 49:3,6
  72:1 215:8 225:24
  238:24 265:24
preliminary
  93:15
premise 93:8
preparations
  101:12 157:3
preparatory
  124:3 226:1
prepare 79:15
prepared 93:5
  115:5 247:3
  253:24 269:1
  271:9,10 274:18
  279:4
prescribed 206:19
present 40:19
  56:4 81:8 106:4
  160:22 164:13
  192:9 266:22
presentation
  122:15
presented 229:8
  251:17 265:5
presentencing
  101:18

presently  151:22
preservation
  107:9 108:12
preserve  62:25
  93:7 101:21
  112:22 189:4
preserved  72:20
  110:5 111:7
preserves  65:9
preserving  100:4
  100:24
press  46:4 96:12
  115:4
pressing  85:24
pressure  168:7
presumes  265:14
presuming  153:17
presumption  75:3
  265:16
pretend  139:3
pretty  96:22
  101:14 114:21
  116:12 132:18
  136:9 176:25
  211:19
prevail  69:5,25
  228:8 260:18
prevailing  271:21
prevails  213:14
prevent  96:23
  97:5 100:1 124:11
  176:13 178:11
  243:12 276:13
prevented  103:5
  134:24
preventing  87:2
prevents  59:15
  239:6,8
previewed  45:13
previous  146:14
  246:4
previously  122:24
  193:20 194:18

248:10 268:12
price  273:13
primarily  60:2
  85:19 136:14
  158:6 216:3
  255:13 280:11
primary  71:12
  72:2 90:17,18
prime  5:12 18:17
principal  118:1
  122:23 149:10
  201:6
principally
  113:21
principle  69:18
  277:22
principles  100:20
  108:10
prior  57:16 58:24
  71:23 94:25
  101:12 221:5
  236:14 269:11,15
priority  213:15
  236:21,24 261:15
private  3:13 11:18
  16:17 21:17 26:13
  31:17 92:11 208:7
  209:3 211:11
  213:8 251:21
pro  85:11 279:11
probability  55:6
  69:2 257:11
probable  257:9
  258:11 276:23
probably  48:12
  52:7 76:7 152:5
  186:25 187:12
  217:8 231:7
  237:20
problem  47:9,10
  67:13 80:12 97:18
  98:10 106:15,15
  106:18 147:18

148:2,5,10,11
  150:14 151:12
  182:11,15 183:7
  246:1 274:6
procedural
  254:15
procedure  2:12
  5:4,21 6:15 7:19
  8:5 10:5,12 28:10
  277:16
procedures  2:1
  44:6,15 108:20
  136:23 138:19
  272:21
proceed  44:19
  64:21 67:23 94:18
  104:1 154:18
  163:9 195:10
  201:25 226:5
  240:17 253:17
proceeding  57:16
  58:8 76:3 104:21
  144:9 146:9
  256:23 272:1
proceedings
  62:22 101:9
  134:18 192:7
  282:6 283:1
process  63:23,25
  64:16,25 67:1
  69:6,22 70:25
  87:13,16,20 88:8
  92:21 94:1 95:11
  106:20 110:15
  111:3 113:10
  129:14 132:13
  136:17 139:9
  146:1 150:17,23
  151:8 189:3 214:3
  234:16,18 235:10
  258:15,20,23
  259:18,24 260:5
  271:18 272:14,22

273:21 277:9
  278:11,24 279:1,9
produce  138:13
product  99:13
  228:21
products  246:13
  273:13
professional
  106:6
professionals
  173:4 243:17
profits  204:3
program  199:9
  209:20
programs  111:14
  205:15 244:15
progresses  227:10
project  123:12
  177:25
projected  87:19
  269:25
prominent  224:3
promising  230:4
  238:12
promptly  169:20
  170:10 225:16
  274:19 282:1
prong  50:25
  230:21 255:23
  257:16,17 261:6
  264:15
prongs  102:16,19
  188:16 198:23
  233:13 271:23
pronouncing
  114:22
proof  82:21 117:8
  232:1,2 238:25
  252:16 256:2
  261:7 270:10
  272:22,23 275:25
proofs  91:13
  279:23

proper   90:4 96:3
  101:16 125:8
  163:23 256:18
properly   63:12
  262:23
properties   127:7
property   125:5,5
  125:6
proponent   183:17
  199:18
proponents   55:20
  56:4 164:6 278:22
proportional
  257:12
proposal   170:21
  177:19 184:14
  187:6 201:22
  214:23,25 215:6
  216:12
proposals   77:15
propose   201:23
proposed   100:8
  176:24 245:19
  250:16 260:1
  282:1
proposing   117:4
  185:3,4
proposition   80:18
  210:2,4
propositions
  100:6
prosecuting   203:7
prosecution   203:9
protect   80:15
  88:24 153:13
  200:21 202:16
  229:17 239:9
  251:22 263:12
  276:20
protected   5:12
  18:17 111:16
  153:1 234:1
  235:12 240:24

280:1
protecting   119:9
  169:21 251:18
  263:8 275:4,13
  277:21
protection   88:18
  88:20 89:5 163:17
  167:8,17 183:8
  263:16
prove   57:8,9
  230:10 233:14,15
  238:13
proven   232:25
  241:14
proves   279:10
provide   86:17
  106:22 107:17
  111:15 119:19
  120:9 163:17
  166:23 167:7
  169:2 182:8 184:5
  187:23 198:21
  199:24 220:21
  239:16 240:22
provided   143:5
  163:16 167:17
  169:1,2 241:7
  259:4 275:7
provides   124:13
  164:8 184:15
  231:24 240:21
providing   85:21
  220:14
province   129:17
  131:10 135:13
provision   99:1
  105:4,15 124:6
provisions   119:23
  139:11 268:9
proxy   161:12
prudential   265:6
psychological
  67:15

public   4:3 12:7
  17:7 22:7 27:3
  32:7 46:21 85:17
  86:11,15,22,23
  87:1 93:24 94:2
  110:14,16 111:9
  111:10 112:3,5,8
  113:2 114:13,18
  126:11,16 161:25
  162:9 166:11
  182:19,22,25
  188:20 189:6
  191:16 198:20,22
  200:18 201:7
  202:22 204:7
  208:6,6,7 209:19
  209:22,23,25
  210:16 211:12
  212:1 213:8,25
  214:14,20 219:12
  221:6 222:1,23
  227:5,12,12,14
  230:16,21 235:19
  243:8,22 244:7
  245:6,9 246:11
  249:18 251:18
  252:2 256:25
  264:6 266:5,9
  273:12 275:2,12
  275:18 276:4,14
publicly   46:21
  209:2 213:3
public's   272:1
  276:6
published   84:22
pull   148:22
  195:11 198:14
pulled   223:17
pullman   39:1
  65:22 122:17
  186:7
pulls   101:4

purdue   1:7 3:5
  4:8,15 6:7 7:12
  8:19 9:5,12,16
  11:10 12:12,19
  13:13 14:11,18,25
  15:3 16:9 17:12
  17:19 19:3,17,24
  20:5,9 21:9 22:12
  22:19 23:14 24:11
  24:18,25 25:3
  26:5 27:8,15
  28:21 29:17,24
  30:5,9 31:9 32:12
  32:19 33:14 34:11
  34:18,25 35:3
  44:3 86:5 99:23
  104:15,17,25
  105:23 106:14,18
  153:7,8,11 156:25
  182:20 183:1
  191:16 208:19,19
  209:8,13 211:11
  211:16 212:19,25
  213:4,6,7,12
purdue's   213:2
purely   125:15
purported   176:5
  231:13,14
purporting   49:17
  238:21
purports   263:8
purpose   47:4 48:5
  126:19 129:7
  135:23 170:15
  199:13 210:16
  217:4 245:2
  264:19
purposes   47:18
  56:19 59:24,25
  60:21 76:1 109:16
  132:10 133:16
  135:22 171:15
  219:1,8 253:11

258:12 272:16
273:2,4 274:5
**pursuant** 2:12 5:3
5:20 6:14 7:18 8:4
10:4,12 28:9
114:16 124:2
133:24,24 153:11
164:21 165:19
173:10
**pursue** 91:2
136:11 137:3
225:13 261:2
263:20 275:8
280:9
**pursued** 276:11
277:9
**pursuing** 115:17
115:20 151:22
189:1 237:25
252:1 263:23
**pursuit** 140:1,11
145:22 240:5
**push** 197:3
**pushed** 186:20
**put** 55:20 65:11
78:16 79:7 90:20
100:22,23 101:11
102:14 103:13
104:15 105:9,18
107:1 124:22
158:13 159:9
169:16,19 179:7
244:14 248:6
250:17 274:3
**puts** 227:11 237:5
**puzzle** 181:20,21
184:25

**q**

**qualification** 53:8
**qualified** 260:5
**qualifies** 198:9
**quantification**
231:21

**quantify** 108:5
121:18 232:17
**quarropas** 1:13
**quarter** 156:18
**question** 45:4
52:25 53:2 54:11
65:7 79:3,4 80:5
82:19 88:22 90:19
90:22,22 95:2
96:4 103:10,24
114:11 117:1
121:20 141:25
147:10,14 148:2
149:10,15,22
150:6,12 152:16
160:16 161:2
211:25 250:11
**questions** 45:22
45:25 51:2 68:7
68:11 85:20 94:8
94:11,23 103:10
114:15 118:11
162:25 166:21
192:8 193:18
194:19 224:25
242:23 248:5
250:12 280:24
281:19
**queue** 146:20
**quick** 234:15
**quicker** 138:7
**quickly** 68:22
79:9,9,10 87:25
88:3 109:19 183:6
205:22 242:9
**quid** 279:11
**quigley** 262:18
**quite** 47:3 51:16
59:13 67:5 88:22
129:22 163:25
182:19 190:16
193:18 194:17
202:8 240:7

273:17 276:23
**quo** 62:25 65:9
80:13,15 97:5
101:21 279:11
**quote** 95:5 116:13
148:21 273:16
**quoting** 58:9
179:24 260:5
266:24

**r**

**r** 1:21 36:1 41:2
44:1 114:22,23,23
190:4 193:5,6
194:5,5,5 196:3
283:1
**rachael** 42:14
**rachel** 42:11
**rages** 243:14
**raise** 49:23 117:12
117:23 159:24
189:25 193:1,25
195:23 239:22
**raised** 45:22
46:15 48:20 49:11
50:23 51:5 69:3
78:3,24 94:23
103:3 139:5,17
145:17,18 146:11
195:15,19 219:12
220:14 229:21
247:6 248:15
255:14 258:13
259:20 260:20
263:14
**raises** 48:21 73:2
83:12
**raising** 50:10,20
119:1,4 209:5
216:13 241:24
**rapid** 86:6 272:18
**rare** 90:9
**ratepayers** 3:14
11:19 16:18 21:18

26:14 31:18 204:8
**rates** 130:20
**rationale** 120:14
192:14 208:16
**raymond** 36:12
246:20
**rdd** 1:3 2:4
**reach** 98:1,6
106:12 110:25
111:1 180:21
263:17
**reached** 89:15
98:4 166:7,14
197:9
**react** 128:3
**read** 50:17 52:23
53:6 91:22 147:11
150:14 158:4
193:17 205:4
215:19 222:25,25
226:25
**reading** 50:17
61:2 183:5 185:10
217:15
**reads** 84:20,20,21
**ready** 67:23 182:3
182:6 229:15
233:6 234:21
235:23 239:15,17
240:10,11,14
254:16 272:9,12
272:13 274:22
275:14 278:16
**real** 54:9 75:11
80:24 81:20 102:5
102:24 107:21
202:25 205:14
217:10,11 218:22
233:5,5 235:16
236:25 240:23
258:14
**realistically**
272:11

**reality** 214:10
  244:7
**realize** 96:20
**realizes** 174:16
**really** 50:2 54:8
  54:10,14 56:18
  59:21 60:12 63:12
  67:17 70:24 72:6
  74:18 75:25 77:12
  78:8,8,9 79:16,18
  79:20 82:19 83:12
  83:24 91:25 108:7
  108:18,21 113:2
  116:14 121:20
  122:1 127:14
  129:11 130:13,14
  131:1,9,19,24
  132:22 134:11
  135:12 140:20
  143:23 155:17,21
  156:8 171:2
  175:13 176:2
  179:5,7 181:20,22
  183:7 187:6
  188:17 189:1
  209:16 212:1
  215:22 219:1,15
  221:5 222:8
  223:15 226:11
  237:2,9,18 242:10
  248:8 255:2,7
  281:4
**reason** 63:7 77:5
  84:18 93:11 98:1
  103:19 104:14
  111:1 124:12,18
  124:20 139:6
  150:25 170:2
  172:14 182:3
  186:19 216:13
  217:23 222:13
  243:24

**reasonable** 81:23
  95:3 164:3 270:15
  273:13
**reasonably** 129:8
  192:18
**reasoned** 260:10
**reasons** 75:1 90:7
  101:10 137:7
  176:4 203:4
  214:16
**rebuttal** 10:2
  122:14 156:21
  248:8,10
**receipts** 220:18
**receive** 91:4,5
  99:13 101:16
  102:5 202:17
  207:10 214:12
  261:13
**received** 10:20
  15:19 20:19 25:14
  30:19 45:21 102:3
  111:13 211:18
  212:15,24 259:4
**receiving** 92:17
  99:24 203:7 261:8
  261:19,21
**recess** 156:23
**recipient** 212:8
**recipients** 220:20
**reciprocal** 278:20
  278:21
**recitation** 127:20
**recognize** 54:4
  69:18 82:7 115:23
  116:4 119:12
  251:25
**recognized** 70:5
  112:7 150:2
  222:14 249:14
  259:18 260:3
  280:5

**recognizes** 69:16
**recognizing**
  258:11 260:4
**recommendation**
  54:12
**record** 10:2 45:20
  48:1 51:17,24
  52:6 57:10 104:24
  125:22 131:14,16
  134:18 156:25
  187:5 188:23,23
  189:4 191:24
  220:17 228:24
  236:2 249:3
  253:14 254:6
  263:7 269:2
  271:12 272:3
  275:23 283:4
**records** 46:17
  198:20,22
**recover** 152:11
  207:8 261:24
  275:9,10
**recovered** 233:2
**recoveries** 220:21
  235:3 260:24
  261:16 281:6
**recovery** 91:4
  92:4 222:20
  233:19 239:24
  261:17,25 281:12
**recruit** 214:6
**red** 252:11
**redirect** 163:1
**reduce** 114:8
**reduced** 46:1
**refer** 44:6 276:1
**reference** 148:18
  152:13 232:4
**referenced** 148:22
  260:7 262:5
**referred** 59:22
  256:24

**referring** 142:13
  153:6 210:9
  247:11
**refers** 56:18 64:7
  64:8
**reflect** 87:17
  263:5
**reflected** 229:8
  272:19
**reflects** 86:24
  261:22 263:8
**refused** 100:12
  164:5 212:15,21
  213:21 228:1
**regard** 62:3 147:7
  150:13,18 152:2
  153:3 243:25
  248:4 256:7
  274:16 276:11
**regarding** 75:14
  77:7 86:16 104:9
  114:2,15 118:8
  121:11 198:23
  202:14 213:22
  231:1 257:8
**regardless** 184:11
  233:21
**registering**
  141:20
**regularly** 63:5
**regulations**
  237:17
**regulatory** 141:21
  173:4 237:14
**rehash** 248:9
**reimburse** 140:1
**reiterate** 135:9
**rejigger** 223:14
**related** 2:11,13,17
  3:2,9,16,20 4:6,13
  4:19,24 5:3,4,8,13
  5:13,19,21 6:8,14
  6:15,22,23 7:5,7

7:11,18,19 8:4,5
8:10,17 9:3,14,19
10:4,5,11,16,22
11:7,14,21 12:1
12:10,17,23 13:3
13:7,14,18 14:2,9
14:16 15:1,6,21
16:6,13,20 17:1
17:10,17,23 18:3
18:8,13,18 19:4,8
19:15,22 20:7,12
20:16,21 21:6,13
21:20 22:1,10,17
22:23 23:3,7,15
23:19 24:2,9,16
25:1,6,16 26:2,9
26:16,20 27:6,13
27:19 28:3,9,10
28:14,22 29:2,8
29:15,22 30:7,12
30:21 31:6,13,20
32:1,10,17,23
33:3,7,15,19 34:2
34:9,16 35:1,6
130:18 139:18,22
139:23 245:5
252:24 274:11
**relates** 105:18
162:20 246:22
247:5,10
**relating** 113:24
191:16
**relation** 51:13,14
**relationship** 59:2
147:21
**relationships**
141:4
**relative** 122:8
**relatively** 61:16
87:8 107:15
108:14 122:8
254:15

**relatives** 135:19
**release** 5:12 18:17
69:8 70:14 71:3
83:4,5 84:14,17
87:6 90:21 92:2
92:15 125:13
148:3 259:7
276:13
**released** 69:25
71:4 82:6 137:3
147:12 148:8
149:7 230:24
258:23 261:2,10
275:9
**releases** 46:18,21
71:20,23 72:8
86:17 90:5,10
111:16 113:21
114:16 214:5
244:6 249:11
259:19
**relevance** 191:22
**relevant** 44:10
50:16 58:8 220:10
221:3
**relied** 86:20
**relief** 5:13 18:18
63:15,19,24 64:2
85:21 100:7,10,13
106:13,22,23
119:24 122:23
176:5,12 203:8
225:13 240:5
245:16 256:6
265:8,9 266:1
267:19
**reliefs** 241:21
**relieve** 152:5
**reluctant** 224:4
**rely** 139:19
145:14 146:14
200:25

**relying** 258:25
**rem** 262:17
**remain** 60:6
**remainder** 233:4
**remaining** 276:15
**remains** 151:23
234:6
**remarkable**
130:20
**remarks** 68:1
221:3,24 255:2
268:2
**remedial** 260:5
**remedies** 252:20
**remedy** 205:1
210:19
**remember** 222:4
234:11 236:20
251:2,25
**remind** 148:25
195:14
**remote** 2:2 44:15
179:25 207:7
267:14
**remotely** 44:16
58:22
**remove** 133:25
143:10 174:2
**render** 98:16
167:15,15 270:2
**rendered** 85:5
164:19
**rendering** 149:20
**renew** 167:4,18
177:1 187:25
216:3 270:16
280:22
**renewed** 271:6
**renotice** 163:23
**reorganization**
6:7 13:13 19:3
23:14 28:21 33:14

**reorganizations**
112:9 227:13
**repeat** 52:13
150:7 183:4 222:2
230:25 248:14
249:19 251:9
268:6
**repeated** 81:4
170:21 203:5
**replies** 44:12
52:14
**reply** 5:1,1 10:10
15:10,10 18:7
28:7,7 48:11 50:3
50:15 145:11
148:21,23 149:8
**report** 199:7,9
**reported** 84:18
**reporting** 200:14
213:5
**reports** 197:11,14
**repository** 114:5
243:23 276:14
**represent** 93:18
93:20 95:15 231:7
247:23 249:20,20
249:22
**represented**
259:23 273:5
**representing** 65:5
93:23,24 94:15
105:8 204:23
221:20 249:15,16
**represents** 222:5
243:6
**request** 45:6
46:25 47:19 61:19
63:10 64:17 67:11
81:11 94:10 105:6
124:14,16,19
136:16 137:7
151:5 158:7
165:14 169:12

174:18 177:12
184:6,8 187:18,24
189:7 199:24
200:5 202:7
204:18 219:13
228:4,23 247:13
248:2 250:1 266:1
268:4,18 271:21
278:9,9,12
**requesting** 107:9
126:22 127:9
129:20 249:1
**requests** 65:7
228:2
**require** 182:8
250:8 276:18
280:14
**required** 118:18
119:5,19 130:23
213:4 242:8 261:1
276:24 278:7
281:13
**requirement** 70:2
103:7 120:15
199:24 200:9
226:4 242:16,17
277:4
**requirements**
102:25 126:8
142:25 277:14
**requires** 69:10,14
96:4 142:23
251:21 263:25
**requiring** 239:20
257:4 278:5
**reread** 50:22
**research** 245:4,6
**reserve** 279:5
**reserving** 98:8
**resident** 206:18
**residual** 129:13
129:18

**resolution** 6:22
7:6 45:3 75:23
98:2,4 149:14
176:19 248:19
253:10 274:18
**resolve** 44:22
94:24 98:2 122:11
227:14
**resolved** 112:1
113:22
**resolving** 201:23
225:16
**resources** 178:12
**respect** 5:18 7:3
47:16 58:2 60:4
101:6 115:24
116:1 165:8
173:10 176:1
189:7 192:2
199:19 201:6
223:7,11 224:6
226:18,23 227:4,5
227:11,22,25
233:12 234:9,25
236:21 239:10,23
241:21 245:15
249:13 250:3,11
250:22 253:18
254:24 255:6
256:2 262:17
269:12 270:12
278:8
**respectfully** 61:1
**respects** 275:2
**respond** 60:8
159:1 195:19
210:3 219:23
220:18
**responded** 191:18
**responding**
132:11
**response** 73:13
157:14 168:11

201:22 207:17
**responses** 10:20
15:19 20:19 25:14
30:19 205:21
**responsibility**
235:9 239:2,4
**responsible** 68:20
237:3
**responsive** 265:4
**rest** 47:7 155:6
187:17
**rested** 85:19
**restore** 62:23
**restrict** 127:4
137:7
**restructuring**
99:22 101:4
**restructurings**
99:16
**result** 126:11
129:21 130:2
131:8 154:4
160:24 191:17
244:19 245:9
252:22
**resulted** 276:12
**resulting** 244:22
**results** 131:3
151:7 236:18
269:5 277:9
**retain** 119:23
243:16 244:24
245:7
**return** 212:14,19
212:24,25 277:8
**returned** 206:14
**reversal** 54:1
205:15
**reversed** 74:24
139:22 141:5
246:11
**review** 53:9 67:14
68:12,13,15,18

71:14 72:4,11
81:12 87:4,18
88:15 90:23 93:12
101:17 111:3,4,12
125:7 172:1,2
240:1,2 254:1
259:16 260:1
269:13
**reviewed** 44:10
57:1 60:4 90:6
190:15 194:16
197:14,23 199:16
232:10 266:8
**revision** 240:25
**revisit** 279:5
**revisited** 110:6
**rewriting** 184:14
**rico** 89:6
**rid** 229:13
**ride** 120:25 234:3
**rides** 279:14
**riding** 239:20
**riffkin** 5:22 6:16
6:24 7:8
**rifkin** 2:13 42:13
**right** 45:5 47:10
49:3 57:2 59:20
61:7,8 64:3 71:11
71:16 72:6,9
78:14,21 79:21
82:16 83:14 84:6
91:2 92:25 93:21
96:19 98:8 99:6
100:4,19 104:5,9
104:11,13,17,18
104:19 105:1,14
114:22 116:22
122:4 126:25
133:7 134:7
136:11 137:5,21
141:1,13 143:20
144:21 149:9
153:17 154:2,10

155:1,13,19 156:3
156:6,11,17 158:3
159:25 162:13,24
164:4 170:4,7
171:2,3,8 175:16
177:19 179:1,6,8
180:24 182:5,17
183:10,20 184:10
187:3 189:25
193:1 194:1
195:22,23 196:17
199:5 203:11
215:4,8 216:11
219:19 220:1
221:9 225:6,8
231:8 235:18
236:14,16,16
237:14 238:24
239:4,23 240:8
241:25 242:7
245:13,17 246:3
247:1,3,9,11,15
248:12 250:11,13
254:9 258:24
259:11,12,13,16
259:25 263:20
264:6 266:10
279:5 280:24
281:19
**rightfully** 187:15
**rights** 70:15 71:10
71:14 72:21 87:2
88:13,16 92:21
102:21 107:9
108:1,12 110:5,13
136:11 137:2
185:11 200:22
214:3 230:22
232:12,24 235:12
261:1,14 279:18
279:25 280:7
**ringer** 42:14

**rise** 58:20 75:10
150:21 168:5
226:9 269:17
**risen** 51:8
**risk** 51:18 52:1
53:11,18,22 54:4
54:9 72:2,3 75:11
75:13 78:9,20
80:16,20,22,24
81:8,18,20 95:4
102:8 115:5,10,11
115:18 117:11
120:25 125:2
126:10 163:18,23
167:8,13 168:15
168:25 169:21
174:2,3 175:9
180:6,12 235:16
235:18 236:12
237:14 238:2
240:23 241:3,6
264:21 266:16,22
267:6 274:15
277:8
**risks** 115:21
127:21 142:21
236:1,9 237:7,15
237:23 238:11
253:8,10
**rivera** 43:8
**rix** 224:11
**road** 71:5 101:2
283:21
**robert** 1:22
206:18
**robertson** 42:15
**robinson** 66:11
**rocket** 169:19
226:5
**role** 198:10
210:15 221:4
238:19,19 249:13
249:15 260:14

**roles** 89:14
**roll** 141:4
**roman** 66:15
**ronald** 20:17
40:14 44:9 146:17
**room** 1:13 201:19
**rosen** 42:16
**roughly** 130:18
202:17 272:21
274:9,10
**routinely** 106:4
**roxana** 40:22
**ruined** 206:20
**rule** 2:12 5:3,20
6:14 7:19 8:5 10:5
10:12 28:9 61:13
61:24 62:4,9,20
63:13,21 64:4,6,8
65:23 66:2,6
70:21 77:18,21
81:24 82:23 83:22
95:11 116:18
118:18 119:14,22
119:24 120:8,10
120:20 121:5
139:10 149:17
156:10 161:8,8,8
164:3 169:20
170:2,10 171:19
172:6 175:9
178:25 183:6,15
184:14,24 198:20
215:20 216:7
226:24,25 230:6
239:14 240:10,13
240:21 247:16,17
256:14 268:7,9,9
268:14,17,24
269:5 270:25
271:19 277:3,15
**ruled** 83:18
141:10 158:25
159:6 160:14

169:6 172:14,20
186:12 190:17
225:22 226:13
239:21 271:17
**rules** 49:9 63:16
125:21,22,24
155:17 170:16
171:15 172:2,10
172:12 175:24
177:23 216:21
224:23 226:25
228:16 229:23
240:12 241:20
**ruling** 6:1 13:8
18:21 23:8 28:15
33:8 48:17,18,18
52:4 58:1 60:15
60:24 61:3,17,22
63:11 66:20 67:2
67:6,7 70:20
78:11 79:14 81:1
81:24 82:22
107:12 109:17
112:12 116:1
123:2 136:19
147:14 156:22
158:8 161:3
163:15 167:11
169:23 170:5,24
170:25 171:1
177:2,5,13 178:1
178:4 179:6,7
184:16,20 185:6
185:18 187:18,20
188:5 189:9 195:2
203:22 215:3,13
217:13 227:3
230:9 241:19
242:19 257:24
260:8 268:15,20
269:5 270:15
271:2,6,15 273:24
275:20 279:19

280:14 282:3
**rulings**  81:4
   199:20
**run**  78:9 95:4
   104:3 185:24
   241:23,25
**running**  186:18
   186:20 218:18
**runs**  185:22
**russo**  66:7

**s**

**s**  2:13,17 3:3,3,10
   3:16,20 4:6,14,19
   4:24 5:4,21 6:8,15
   6:24 7:7,11,19,20
   8:5,6,10,17,18 9:3
   9:4,15,19 10:5,17
   10:22 11:8,8,15
   11:21 12:1,10,18
   12:23 13:3,14,18
   14:2,9,10,16,17
   15:2,6,21 16:7,7
   16:14,20 17:1,10
   17:18,23 18:3,9
   19:4,8,15,16,22
   19:23 20:8,12,17
   20:21 21:7,7,14
   21:20 22:1,10,18
   22:23 23:3,15,19
   24:2,9,10,16,17
   25:2,6,16 26:3,3
   26:10,16,20 27:6
   27:14,19 28:3,10
   28:22 29:2,8,15
   29:16,22,23 30:8
   30:12,21 31:7,7
   31:14,20 32:1,10
   32:18,23 33:3,15
   33:19 34:2,9,10
   34:16,17 35:2,6
   36:1 37:20 40:21
   41:21 42:2 43:12
   44:1 160:4,4

196:3
**s.a.**  262:7
**s.d.**  66:9
**s.d.n.y**  256:9
   278:2
**s.d.n.y.**  66:17 70:7
   81:15 154:5 256:7
   256:16 262:9,10
   266:13,14,19,25
   268:12
**sabine**  70:6 256:8
   256:12 257:10
   267:17
**sackler**  36:12,19
   86:5 104:9,11,15
   104:18 105:3
   114:2 164:16
   212:8,14 231:4
   245:23 246:20
   247:24 281:9
**sackler's**  212:4
**sacklers**  82:5 91:9
   99:23 102:23
   104:4 105:4,13,23
   106:14,18 113:24
   125:12 148:11
   203:10,19,22
   204:1 206:3 207:8
   208:8 211:17
   213:21 220:13
   230:24 231:9
   233:3 235:23
   237:10,12,16
   243:15,25 244:21
   244:24 245:7
   246:16 252:23
   253:2
**sacklers'**  246:18
**sad**  198:2
**saddles**  103:14
**safeguards**
   224:13

**safety**  172:12
   174:14 226:20
**saint**  37:3
**sale**  85:8 153:8
**salutary**  113:18
**sara**  41:4
**satisfactorily**
   113:22
**satisfied**  50:25
   60:22 223:21
   262:20
**satisfy**  70:1
   102:15,24 103:7
   126:7 256:17
   260:25 261:6
   273:20
**save**  68:1 188:16
   223:4 277:10
**saves**  199:8
**saving**  132:4
**saw**  47:7,24 197:8
   197:14 207:22
**saying**  53:5,5,10
   56:17 97:17 99:5
   110:25 112:10
   115:10 120:7
   129:1,2 131:23
   132:2,3 134:20
   143:24 144:4,8
   154:12 168:25
   177:17 179:14,22
   184:7 218:15
   221:13 226:1
   232:16 235:14
   242:12 246:11
   251:2 271:2
**says**  51:1 60:20
   62:4,14,16 71:9
   75:17 76:2 97:19
   103:4 118:18
   126:10,12 127:12
   210:11 232:7
   240:14 277:12

**scale**  137:7 258:11
**scared**  182:24
**scenario**  71:8
   101:23 121:6
   125:6 241:5
**schedule**  95:3
   109:21,25 155:14
   166:8 174:13
   200:13 229:3
   255:5,5 271:14
   280:18
**scheduled**  56:13
   98:22 166:2,5
   167:2 170:7
   181:11,11 187:24
   200:14,20
**schedules**  219:17
**scheduling**  5:17
   7:3,11 124:19
   166:5 270:22
   271:1
**scheme**  252:14
   259:15,16 260:5,7
   280:5
**schlecker**  42:17
**schupbach**  66:9
**schwartzberg**  5:5
   10:6,13 28:11
   42:18
**scope**  90:4,20,22
   114:4,15
**scott**  4:15 9:15
   12:19 15:2 17:19
   20:8 22:19 25:2
   27:15 30:8 32:19
   35:2 41:2,14
**screen**  54:16
   159:9 163:4
   189:24 193:1,25
   195:12
**searching**  262:20
**season**  186:18
   270:21

**second**   7:15 8:1
10:3 45:13 46:7
53:14,15,19 57:14
68:20 69:15 73:8
73:22 75:4 76:10
82:25 84:2,23
85:5 86:8 95:6
102:15 104:4
105:18 109:23,25
110:1,20 138:6
159:10 165:17
175:18 184:13
202:4 204:11
205:23 207:13
208:3 210:23
212:13 217:13
218:24 219:1,11
223:22 228:15,16
230:9 236:7 237:8
241:18 242:10
248:13 253:4
254:20 256:9
258:14,17 259:18
263:14 264:25
269:10,18 282:2
**secondary**   90:16
**secondly**   51:16
120:6 252:21
254:13
**seconds**   168:15
**secret**   182:23
**secreting**   78:24
**section**   172:22
**securitized**
153:11
**security**   118:18
**see**   59:11 81:20
82:20 94:19 113:4
131:3 136:7
145:19 149:4
150:15 157:6
159:16,21 160:25
170:3 178:10

189:24 195:10,23
201:14,18 206:11
218:19 249:2
256:6,25 257:9,19
257:25 262:6
265:9 266:11
267:1 276:25
278:1
**seeing**   70:18 76:9
78:5 81:22 83:16
91:24 92:13 98:20
**seek**   86:9 104:2
112:19,22 117:5
170:25 174:8,12
174:22 176:5,12
177:6 187:21
215:15 217:12
222:8 248:18
251:1,6 254:21
**seeking**   46:2,10
58:3 61:11,20
63:4 66:25 78:13
90:7 95:10 98:25
122:23 143:21
152:10 173:4
204:25 265:16
267:19 279:1
**seen**   115:15 140:3
199:6
**sees**   146:8
**self**   42:19 104:14
**sell**   99:13
**send**   184:8 282:1
**senior**   130:11
**sense**   122:7,10
140:7 150:20
184:5 185:25
186:19 187:7
221:7 250:6 266:6
**sent**   57:10 173:24
174:24 176:2,3
182:24 197:11
249:1

**sentence**   138:18
181:24 197:6
**sentenced**   74:7,16
99:2,12 124:21
182:4,20
**sentencing**   57:24
72:21 74:2,5,10
74:15,20,22 75:14
77:9 80:4 96:5,12
96:18,24 97:1,2
97:22,25 98:5,8,9
98:16,21 99:10
101:3,12,14,23
103:24,25 104:2
117:18,20 123:24
124:7,8,14,19
127:10 138:9,12
138:20,25 150:13
150:18,21 151:6
151:11 165:8,14
165:16,19 166:1,4
166:6,8,10,14
167:2 168:4,7,24
169:11,12 170:17
173:12 174:8,9,11
174:19,23 176:7,8
176:24 177:12,20
180:9,16,22 181:7
181:8,10,17,19
182:2,10 183:1
184:7 186:13
187:22 199:25
200:6,6,9,13
215:15,24 216:22
223:13 270:4
279:1
**separate**   72:25
96:9 100:16
115:16 137:17
165:19 228:2
**september**   139:20
203:21 204:1
262:9

**series**   253:7
**serious**   51:2 63:10
68:6,11 69:9,14
102:3 106:13
107:5 114:15
121:11 142:18
223:8
**seriously**   105:12
105:21 106:11
117:11 133:20
267:5 272:17
**seriousness**   53:25
54:6 266:4 275:16
**serve**   137:16
188:5
**serving**   252:2
**set**   126:3 155:14
164:23 170:11
194:8 219:4
229:23 236:24
240:9 241:16
258:6 259:15
277:22
**sets**   241:12,20
**setting**   78:1,2
173:3,5 183:6
185:21 273:12
**settle**   91:11
**settled**   211:7,8,9
211:10,16 212:13
212:18,25
**settlement**   69:7
91:6,19 92:5,12
92:22 104:16,23
105:3 150:16
152:21,25 153:12
206:2 208:21
209:10 213:12
220:13 221:5
223:14,15 238:7
244:5,6 248:4
249:2 252:22
258:17 259:12,22

260:1,17 261:10
261:15 264:9
270:5 281:9
**settlements**
227:12 276:12
**setup** 242:7
**seven** 105:25
106:1 123:5 165:1
180:6,11 181:15
215:23
**shaky** 96:21
**shannon** 42:6
**share** 222:20
226:23
**shareholder** 82:6
89:11 147:12,22
**shareholders**
148:9 155:11
231:25
**she'll** 44:25
**sheer** 143:13
**shepherd** 42:20
**sheriff** 103:15
**shield** 3:22 12:3
17:3 22:3 26:22
32:3
**shift** 179:21,22
**shifting** 238:7
**shifts** 179:23
**shipwreck** 96:23
101:23
**shore** 4:7 12:11
17:11 22:11 27:7
32:11 38:6 227:18
227:18 242:22
243:9 253:4
**short** 98:3 108:14
122:8 145:24
163:14 167:22,23
174:4 178:23,24
222:2 223:9,10,18
223:22 224:6
227:22 229:19

230:11 239:23
246:1 268:2
**shorten** 5:16 7:1
**shortened** 107:6
216:8
**shortening** 5:17
7:2
**shorter** 132:16
149:16 158:6
187:1
**shortly** 273:1
**shot** 54:9 242:16
**show** 70:2 77:4
164:10 179:24
257:6 271:24
282:2
**showing** 49:6
54:13 70:2 85:12
89:24 102:14,18
226:18 227:2
255:25 256:20
257:4,6,8,17
258:2,9 261:5
267:14
**showings** 49:6
**shown** 53:23
62:15 88:2 93:14
103:8
**shows** 89:22 92:19
**shut** 192:16
**shutdown** 99:15
**side** 58:15 76:14
92:11 141:22
169:2 173:25
188:19 209:4
211:11,12 225:5
232:23 247:23
248:1,24 252:24
266:17
**sides** 164:16
246:17
**sideways** 172:14

**sift** 69:10
**sign** 190:20
193:21 194:20
198:12 224:4
**signaled** 124:9
**signature** 283:7
**signed** 2:1 5:9 6:2
6:8 13:9,14 18:14
18:22 19:4 23:9
23:15 28:16,22
33:9,15 73:10
164:8 173:24
188:3 196:18
**significance** 81:1
**significant** 86:3
87:1,18 94:3
105:1 115:19
121:23 139:2
141:14 143:9,11
192:21 201:3
252:13
**significantly** 67:8
121:17
**silicones** 84:22
**silly** 145:12
**similar** 119:2
133:16 134:23
195:17 278:12
**similarly** 204:14
255:20 272:24
**simple** 104:1
175:13 205:7
**simplest** 101:20
**simply** 46:22
76:12 81:1 102:17
102:25 119:16
125:14 134:17
183:15 227:7
228:8,19 244:14
253:3,9 276:8,9
**simultaneous**
120:5

**simultaneously**
118:23,24
**single** 55:17 106:2
113:6 164:13
172:7 204:25
207:11 212:20
214:11
**sir** 160:11 165:3
190:6
**sit** 142:18
**sitting** 160:8
162:17 171:21
190:11 193:11
194:11 196:10
208:10 246:6
**situation** 102:6
117:16 163:24
226:13 235:22
236:15 244:11
**six** 164:7 207:2
208:5,7
**size** 105:22 230:14
**skapof** 42:21
**ski** 206:19
**skip** 68:2
**sliding** 258:11
**slight** 97:8
**slipped** 104:19
**slower** 218:1
**slowly** 248:12
**smith** 42:22
**societal** 132:20
230:22
**solely** 56:5 113:24
**solicitudes** 134:13
**solution** 219:7
**solutions** 283:20
**somebody** 238:9
238:10 241:4
**someone's** 136:10
228:13
**somers** 42:23

**somewhat**  64:10
96:21 111:24
186:16
**son**  189:18
**sonya**  35:25 283:3
283:8
**soon**  77:12 168:19
175:21 180:21
200:20 234:15
275:14
**sooner**  107:5
222:14
**sorry**  50:6 65:20
73:19 80:19 138:1
153:5 155:5
157:17 159:13
163:2 165:5
169:10 170:20
174:22 201:3
216:6 218:2,3
221:1 236:23
246:23 255:16
267:2 271:3
280:22
**sort**  54:23 58:3
59:14,22 61:11
75:9 82:12 89:16
133:14 141:22
142:19,23 146:10
174:14 177:25
**sorts**  54:2 173:16
173:21
**sought**  47:12
132:12
**sound**  162:22
184:11 186:19
202:4,10 203:9
204:3,7,12 205:9
205:16 206:24
207:7,20 209:11
209:17 210:1,7,18
211:6,23 212:5,12
213:13,15,19,22

213:25 214:21
215:23,24 216:5
216:15 217:17
218:9,12,13
229:21,23,24
230:8,12,19,20
234:4 235:13
239:22 250:19
**sounds**  158:24
159:4 250:22
**source**  196:22
197:10 233:19
239:24
**sources**  138:22
192:16 208:18
**southern**  1:2 40:1
**sovereign**  119:13
279:17 280:2
**sovereigns**  152:16
**sovereignty**  69:24
**sparingly**  224:7
224:10
**sparks**  240:17
**speak**  153:9,10
202:3 231:13,14
231:14 238:21
245:12 248:10,13
**speaking**  71:10
92:23 198:23
214:7 238:22
**speaks**  59:8
**special**  260:5
**specialized**  126:6
135:14
**specific**  45:15,19
51:16 78:23 79:1
79:4,7 95:21
126:4 144:13
229:5 238:24
263:16 265:5
**specifically**  50:20
72:20 119:14
125:17 133:3

208:20 226:19
247:14 260:7
273:3 280:1
**specificity**  98:12
**speculate**  247:18
**speculation**  51:9
226:8 253:6,9,12
**speculations**
253:7
**speculative**  180:1
267:15
**spend**  52:16 54:12
254:15 281:23
**spending**  55:5
251:23
**spent**  52:10
139:25 202:7
222:15
**spoke**  231:22
**spoken**  231:15
**spot**  103:15 164:2
**springer**  42:24
**spurn**  105:13
**squarely**  223:20
232:3
**sr**  20:17 40:14
**st**  53:21 75:17
76:21 266:13
**stages**  124:3
**stand**  94:10 110:7
148:7 157:25
220:23 227:7
242:5 251:11
**standard**  102:13
255:24
**standby**  199:4
**standing**  51:21
53:22 265:22
**stands**  80:17
210:4 245:18
**start**  105:25
108:19,21 132:21
132:22,25 133:4

135:5 175:20
192:25 206:5
218:18 227:24
229:22 234:16
235:9,19 238:15
**started**  82:13
210:9
**starting**  70:12
101:1 170:8
**starts**  101:3
123:10 234:18
272:14
**state**  4:21 9:21
10:18 12:25 15:8
15:13,17 17:25
18:10 20:14 22:25
25:8 27:21 30:14
32:25 35:8 37:1,2
38:9 39:2 40:8
65:5,22 69:24
88:18,20 89:5
94:15 102:22
103:5 111:13
114:7 119:23
122:18 126:11
130:24 136:4,5
137:1 142:10,11
142:11 145:4
146:8 156:14,15
156:15 157:13,13
171:10 176:12
186:8 195:2,3,8
196:8 198:1 203:1
204:15,20 206:7
206:18,24 207:4
208:24 217:3
222:6 235:1
251:15,17 254:20
255:15,16,16,18
255:19 263:22,25
274:17 277:16
**state's**  115:1

[stated - stay]                                                                    Page 64

**stated**   51:12 73:7
   104:10 113:15
   114:12 147:3
   206:8 253:14
   262:17 268:5
   270:1 271:20
   279:8
**statement**   7:10
   10:1 133:19 253:5
**statements**   126:3
   135:8 139:24
   192:3 220:24
   225:15
**states**   1:1,12 2:10
   2:14 4:2 5:1,6,16
   5:18,22 6:12,17
   6:20,25 7:1,3,8,16
   7:20 8:2,6 10:2,6
   10:10,13 12:6
   15:11 17:6 22:6
   27:2 28:7,12 32:6
   36:3 44:7,7 49:4,7
   61:18 62:1,9,10
   62:20 63:18 64:24
   67:22,25 69:4
   79:12 86:10 91:21
   92:7,8 93:2,23
   102:22 106:3
   107:10 113:16
   114:7 115:5
   118:19,25 119:1
   119:10,13,15
   120:15,18,19,19
   120:21,23 121:10
   124:19 125:3,9
   147:7 151:21
   157:25 183:2
   191:25 192:12
   195:20 204:6,14
   209:21,24 210:10
   218:17 221:18
   222:10,16,16,19
   224:8,20,22

225:23 230:18
235:14 237:2
240:3 241:10
244:20,20 249:5
249:13 252:13,17
253:15 254:11,19
255:14 258:21
261:14 263:15
264:5 268:1 273:3
273:4,15 274:12
275:4 276:19
277:17,22,24
278:12 281:2
**states'**   260:19
   261:4
**state's**   277:20
**stating**   118:10
   137:13 192:15
**statistic**   198:2
**status**   7:11 45:14
   45:23 62:25 65:9
   80:13,15 97:5
   101:21 250:15
   251:20 263:17
**statute**   246:12
   277:18 281:13
**statutes**   89:6
**statutory**   138:19
   238:19 252:13
**stay**   2:2,9,11,17
   2:23 3:2,9,15 4:3
   4:6,19,23 5:2,19
   6:11,13,19,21,22
   6:23 7:4,5,7,15,17
   8:1,3,10,17 9:3,19
   10:3,11,16,21
   11:3,7,14,20 12:7
   12:10,23 13:3,18
   14:2,9,16 15:6,12
   15:15,20 16:2,6
   16:13,19 17:7,10
   17:23 18:3,7 19:8
   19:15,22 20:12,16

20:20 21:2,6,13
21:19 22:7,10,23
23:3,19 24:2,9,16
25:6,10,15,22
26:2,9,15 27:3,6
27:19 28:3,8 29:2
29:8,15,22 30:12
30:16,20 31:2,6
31:13,19 32:7,10
32:23 33:3,19
34:2,9,16 35:6
44:4 45:3 48:15
49:1,19 55:12
56:8,10,13 58:2,3
58:19,23 60:3
61:11,15,19,20,24
62:6,8,9,12,14,16
62:16,17,18,22,22
62:24 63:4,8,11
63:16,22,23,24
64:8,9,12,15,16
64:17,24 65:8,9
65:25 66:21,24
67:6,6,11,18
70:15,17,19,24
73:11 75:19 77:16
77:23 78:4,12,13
78:14,15,17,19,19
79:2,23,24 81:19
81:25 82:23,24
83:8,9,15,16
85:22 86:2,21
88:12 90:7 94:4
94:10 95:7,10,14
95:19,22 96:16
97:3 101:18,22
103:13,20 104:5
105:5,6,8,11,16
105:20 106:1,9,10
107:8,11,18 109:9
109:24 112:12,21
119:7,8,9,17
122:7 123:1

124:10,17,24
126:14,22 127:11
127:21,24 128:3
129:19,22,23,25
130:3,7,8 131:2
132:12 134:9
143:21 145:24
149:12,16,16,16
149:17,19,24
150:7,11,18 152:4
153:15 154:11,15
155:3,16,21 157:1
158:7,7 159:24
160:24 161:3
167:4,12,22 169:4
171:10,10 172:9,9
174:5 176:5 177:1
177:6,11,13 178:3
178:10,12 180:5
180:17 183:21
184:16,24,25
185:1,4,5 186:17
187:18,25 188:14
189:2,7,10 190:9
191:9,23 193:9
194:9 196:6
198:24 202:20
203:1 204:18,21
205:1 211:3
214:16 215:6,7
217:12 220:6
222:2,2,8,8,24
223:9,10,19,22,22
224:6,15,21 225:2
225:5,11,23
226:17,23 227:1,6
227:11,16,22,22
228:1,3,5,14
229:5,16,19,20
230:5,7,8,8
231:18 232:15
233:10,10,14,20
234:20 235:6

[stay - suffered]                                                    Page 65

238:4 239:7,11,12
239:19,20,20
241:9 242:15,16
242:18 243:15
244:14 248:22
250:21 251:1,6,10
254:10,11,21
255:3,24 256:3,4
256:10,17,22,22
257:14 258:3,12
264:16,18 266:1
267:20,23 268:2,8
268:19,20,21
269:7 270:13,13
270:16,22 271:6
271:10,14,15,21
273:23 275:19
276:2,13,21
277:21 278:9,10
279:12 280:22
**stayed**  62:2 150:4
  151:22 172:17,18
  207:2 236:11
**staying**  64:11
  79:13,14 101:19
  112:13
**stays**  4:12 9:10
  12:16 14:23 17:16
  20:3 22:16 24:23
  27:12 30:3 32:16
  34:23 62:7 112:19
  112:22 127:9
  151:4 234:6
  268:14
**step**  59:19 75:4
  76:11
**stepping**  200:11
  235:14
**steps**  106:5 109:4
  109:11 115:2,6
  117:5 172:21
  254:15

**stern**  42:25
**stipulate**  116:2
  117:5,14 169:23
  173:8
**stipulated**  116:20
  117:23 141:11
  164:16 173:17
  183:16,17 269:1,8
  269:21
**stipulation**  49:16
  73:8,11 96:9
  100:17 117:13
  123:25 124:6
  138:24 164:23
  165:7 167:16
  169:1 170:15
  173:16 174:24
  176:2,11,18 185:4
  185:8 188:2
  201:24 226:1
  250:16 269:2,14
**stipulations**
  142:13
**stodola**  42:25
**stone**  175:7
**stop**  59:18 165:6
**stopped**  134:21
  241:6
**stops**  203:6
  236:12
**stories**  206:15
**straight**  212:6
**straightforwardly**
  97:12
**strange**  131:19
**strategies**  245:5
**strategy**  100:23
**strauss**  39:8
  201:11
**streamlined**
  272:22
**street**  1:13 36:5
  38:18 39:3 40:2

**strength**  258:2
**stretch**  224:1
  258:14
**strong**  70:2 91:3
  153:1 255:25
  256:20 257:4
  258:9 261:5
**structural**  148:5
  148:10,10 150:3
**structure**  110:12
  115:25 145:2
  147:19 148:12
**structured**  74:4
**structures**  141:20
**structuring**  61:9
**struggling**  47:18
**subject**  151:23
  155:15,21 156:2
  193:19 194:17
  198:3 226:20
  230:1 240:25
  241:1 258:5
  262:22,24 271:3
  279:24 280:18
**subjects**  228:20
**submit**  58:15
  105:17 106:11
  110:15 111:9
  114:17 118:17
  119:17 226:10
  253:10
**submits**  191:21
**submitted**  44:12
  47:8,25 115:15
  118:9 125:17
  134:4 135:23,25
  136:24 145:1
  159:22 160:7
  190:7,25 193:8
  194:7 196:6
  220:11
**subordinated**
  106:20

**subsequent**  57:1
  150:22 228:21
  269:9
**subsidiary**  147:20
**substance**  197:19
  232:8
**substantial**  54:14
  57:3 60:5 73:20
  73:22,23,25 75:13
  76:19 77:22 85:8
  92:11 97:6 120:6
  143:18 147:13
  173:1 263:6
  269:19 271:25
  272:2,5 276:25
  277:10 278:14
**substantially**
  68:21 71:2,5 75:6
  76:12 82:2 84:12
  85:13,15 89:23
  118:24 119:1
  184:5,11 192:20
  256:22 265:14,18
**subtle**  184:14
**succeed**  70:3
  256:1,20 257:5
  258:9
**succeeded**  102:17
**success**  48:20
  49:10 54:7,14
  55:6 56:5 60:5,17
  68:3 69:2,2 70:8
  229:7 257:8,11
  258:10 275:22
**successful**  214:10
**suddenly**  106:17
  128:7
**sue**  233:22
**suffer**  56:6 102:21
  104:1 107:16
  257:13
**suffered**  85:21,23
  103:6 134:13

191:17
suffering 96:13
205:11
suffice 166:5
sufficiency 126:1
sufficient 81:9
97:5 102:18
103:18 110:4
151:5 226:21
259:10 266:23
270:16 275:17
sufficiently 51:2
102:13 260:8
suggest 52:15
106:9 129:23
145:23 185:20
248:20
suggested 55:1
71:22 164:1
270:18,19 276:18
278:19
suggesting 108:6
108:11 112:20
117:6,25 171:4
250:24
suggestion 55:15
61:9 104:6 199:23
223:13 248:17
250:3
suggestions
222:18 249:5
suggests 86:21
suite 36:5 283:22
sum 223:3 272:20
summarized
273:15
summary 273:9
super 222:10
236:21,24 261:15
superpriority
92:8 150:24
supp 278:2

supplement 46:7
supplemental
10:1
supplemented
254:25
support 2:10 5:1
6:12,19 7:16 8:2
8:15 9:1 10:2,10
14:7,14 15:10
19:13,20 24:7,14
28:7 29:13,20
34:7,14 44:12
74:1 77:24 78:7
86:21,23 145:1
196:8 202:18,19
214:17,18 222:7
222:10 231:18
244:12 262:12
supported 129:15
136:1
supporting
222:16
supports 85:22
214:15 244:10
suppose 70:10
151:23 180:21
supposed 99:1,24
136:23 223:7
232:15
supreme 61:22
67:7 87:13,16,16
88:4,9 111:25
112:14 132:13
136:11,12 246:11
259:20 260:3
267:22 269:10
sure 46:14 47:3
47:17,21,21 49:13
50:11,21 52:22
60:11 64:23 77:17
83:10,10 86:12
88:21 91:22 93:24
95:17 98:18 111:7

121:1,20 143:17
152:1 168:20
174:17 177:5,11
177:14,25 181:14
186:9 200:2 202:1
225:19 243:3
246:25
surely 90:12
surplus 131:17
suspect 245:25
suspending 62:23
swanner 43:1
swear 159:25
189:20 190:1
193:2 194:1
195:24
sweet 164:2
system 93:25
221:10
systems 142:9

**t**

t 114:23 160:3
194:5 283:1,1
tabak 14:25 20:5
24:25 34:25
table 167:24
171:14 180:4,13
188:14 223:12
tack 161:4
tactics 279:6
tadps 233:2
take 45:20 46:3,4
46:8,19,22 48:2
67:8 79:5 87:20
88:5 95:11 99:22
100:9 106:11
107:13 109:4
114:6 115:10,11
115:22 120:25
122:7 124:15
127:10 130:25
133:19 135:1,19
149:18 152:7

155:18 156:19
162:10 163:13
165:14 166:6
169:6 174:19
180:13 202:4
209:18 211:21
235:15 254:14
264:7 274:15
taken 51:23 52:2
52:4 91:15 92:20
106:5 110:23
114:3 115:16
118:19 125:7
134:16 162:5,22
164:20 167:24
171:14 174:6
180:4 188:4 239:1
249:10 267:5
269:11,15 279:21
takes 115:7
175:17 184:19
213:18 238:13
263:17
talk 112:5 130:15
145:1,16 171:12
talked 58:5 78:22
90:8 108:24
138:10,16 139:15
139:20 167:1
173:12 246:4
249:18
talking 76:5 77:14
87:20 95:18
112:13 113:8,11
113:11 121:3,15
129:14 130:11
132:23,24 139:6
141:18 144:24
178:22 200:5
229:5 233:16
237:15,20 241:2
246:1

talks 126:9
tallahassee 39:19
tangible 112:4
  274:20,23
tapley 43:2
task 198:8 223:15
tatneft 278:3
taxes 212:7
taxpayer 235:2
taxpayers 228:19
  243:6
tea 177:3
teach 111:15
teacher 206:22
technical 134:17
  229:13
tee 167:12
telephone 44:18
telephonically
  36:8,9,16,23 37:6
  37:13,20 38:6,13
  38:21 39:6,13,14
  39:21 40:5,12,19
tell 92:1 159:25
  184:9 190:1 193:2
  194:1 195:24
  200:10 235:17
telling 273:17
tells 248:22
tempered 70:8
tend 240:2,16
tentative 199:20
teps 231:3
term 111:25 122:8
  135:17 158:7
  163:14,19 167:22
  167:23 174:4
  222:1,2,23 223:9
  223:10,18,22
  224:6 226:23
  227:22,22 246:1
  268:2

terminate 104:5
  105:4
termination 104:9
  104:11,13 127:5
  236:15 245:13,17
  247:1,3,11 250:11
  250:13
terms 61:11 76:20
  109:7,10 115:21
  122:1 128:11
  132:3 134:14,17
  136:10 149:14
  150:7,14,25
  188:15 213:3
  215:25 222:23
  223:9 237:6
terrible 107:16
territory 148:4
test 73:23 76:11
  102:15 165:10
  260:25 264:15
tested 110:16
testified 129:12
  273:6 274:3,7
testify 128:2
testifying 128:13
  128:24
testimony 91:22
  104:23 125:24
  129:4 130:17
  135:13 159:1,23
  160:9 163:3 187:8
  190:8,10,20
  193:11,19 194:10
  194:19 196:8
  217:7,24
texas 66:13,13,14
thank 45:12 48:6
  61:7 65:18 67:24
  94:21 122:13,20
  133:21 138:4
  146:16,24 154:3,6
  154:7 157:17

158:3,18 159:16
  162:25 163:5
  190:4,21 193:21
  193:23 194:20,21
  194:23 197:21
  198:13 219:21
  221:16 225:8,9
  227:16,17 243:4
  245:9,10 247:22
  249:4 252:7 254:4
  254:7 281:17,18
  282:5
thanks 248:7
that'd 195:12
that's 240:15,20
  242:23 249:10
  250:5 252:2,12,16
  252:20 253:2
  254:6 266:24
  269:10 276:16
  281:12
themes 251:16
theodore 43:11
theory 115:18
thereof 258:2
they'd 246:6
they'll 247:19
they're 242:2,13
  253:22
they've 249:21
  272:21
thing 52:7 60:11
  64:10 68:4 73:16
  78:23 79:7 86:23
  138:15 154:21
  168:6 171:17
  184:13 185:20
  196:12 201:2
  219:16
things 54:2 73:18
  73:20 74:6,7,8,18
  74:21 76:19 79:1
  79:5,5 80:24

98:12,15,17 99:14
  100:3,17,18,25
  101:10 108:10
  114:5,12 117:12
  117:17 126:19
  140:1 141:10
  142:3,5 143:9,10
  151:16 167:14
  173:16,21 183:12
  183:14 197:13
  199:19 202:4
  205:5 207:18
  233:13 248:15,21
  252:15
think 46:1 47:23
  48:11,16 49:14,19
  50:14,15 51:10,11
  51:12,16 52:5,7
  52:23 53:5,6,10
  53:16,19 54:3,11
  54:23,25 59:8,16
  59:20,23 60:9,9
  60:10,14,15 61:23
  63:19 64:3,5,10
  66:22 67:14 68:8
  68:11 69:3,24
  70:11 71:18 72:1
  72:24 73:21,24
  75:12,14,24 76:6
  76:21,23 77:3,5
  77:15 78:12,18
  79:21 81:24 82:5
  82:13,16,19,21
  83:7,11,12,23
  84:17 85:1 86:15
  87:4,7 88:8,11
  90:3,5,19 91:8
  92:18 93:11,14,25
  94:22 95:1,8 96:3
  96:10 97:18
  100:18 102:12
  104:15 107:20
  112:9,10,18 113:2

114:21 116:5,12
117:13 118:11
120:3 121:6,22,24
124:9,23,24
126:18,20 127:19
128:16,23,24
130:13,18,21
131:24 133:9,10
134:4,6,12,19,24
134:25 135:4,12
135:22,25 136:9
138:7,21 139:1,8
139:8,11,14,14
140:5 141:2,9,10
141:17 142:15,16
142:19,22 143:8
143:10,25 144:10
145:6,18,22 146:5
146:7,9,13 147:4
147:10,13 148:14
148:21 149:8,10
149:14,15,18,22
150:12,14,20
151:10,14,17
152:8 153:1,18,19
156:12 158:6
161:12 165:23
166:3 168:21
171:15 174:14,15
174:18 175:22
178:18,25 179:14
182:19 183:4
185:17 186:10,15
186:18,24,25
187:4,5 188:10
189:1,3 190:25
194:24 195:3
196:24 199:2,14
214:19 216:11
217:10 219:6,8,15
220:1,9 221:2,7
221:14 224:1,18
225:4 226:19

227:21 228:6,9,11
229:19,24 230:20
231:11 233:17
235:17 238:18
239:11,12 240:4
240:16 241:23
242:12,14 247:7
247:10 248:15
249:8,9,14 250:5
250:10,15,17
251:19,21,24,24
252:1 253:2 268:1
281:14,22,25
**thinking** 183:4
187:17 219:6
**thinks** 82:24
**third** 36:20 46:18
46:20 69:8,12,19
76:13 82:10 84:13
84:17 86:16
120:22,22 125:12
149:6 161:6
187:11 198:6
204:7 208:16
211:23 212:18
214:4 244:6
253:13 258:22
259:7,19 261:2,9
261:11,22,23
262:24 263:21
278:14
**thomas** 40:9
**thorough** 203:13
**thought** 47:24
98:18 112:17
121:12 170:9
202:9 203:14
**thoughtful** 149:15
149:22
**thoughts** 245:18
**threat** 80:14
103:17

**threatened** 99:14
**three** 52:17 54:15
56:23 57:8 60:2
61:18 64:24 67:4
67:22 69:4 86:8
92:10 115:5
121:21 160:24
161:9,14 188:19
202:25 203:11
204:11,25 205:20
205:21 206:20
208:5,6,8,21
223:9,18 233:23
244:20 247:11
254:10,23 255:21
264:10 266:3
279:15
**threshold** 48:11
49:19
**throw** 187:16
228:24
**thrown** 61:14
**thwart** 223:5
**ticket** 100:14
**tie** 98:12 100:25
180:15
**tied** 53:15 81:21
84:3 99:18 280:21
**time** 5:16 7:1
44:21 52:10,16
54:13 55:6 60:13
60:21,22 62:14
63:16 67:9 70:18
70:22 72:1 74:5
78:3,5 81:23
91:24 92:13 95:13
98:20 101:8 103:5
107:3,5,7,12,13
107:18,19 109:9
110:3 112:4
121:17 122:2
149:21 151:20
154:17,19 156:19

157:18,24 158:15
167:13 172:3,15
175:9 177:6
178:23 180:11
184:6 186:23
191:19 192:20
199:22,22 200:20
201:4 202:8
217:11 218:7,10
218:11 220:5
226:13 227:9
228:15,20 229:2
231:25 234:5,7
237:18 238:9,11
240:10,20 246:8,9
247:17 249:11
253:14,23 267:25
273:20,23 274:5,6
275:15 280:21
281:24
**times** 70:17 73:12
84:7 136:13
137:17 150:15
180:6 183:14
252:9 264:5
**timetable** 110:7
**timing** 72:17
77:14 101:6
160:19 162:1
**tip** 48:23
**titled** 61:24
**tobacco** 244:20
**tobak** 9:12 30:5
43:3
**today** 44:24 48:16
56:7 57:17 98:3
111:13 142:19
160:8 171:21
192:7 193:11
194:11 196:10
222:3 226:11
232:4 247:14
250:19 255:2

today's 163:21
toes 59:19 200:11
told 68:21 127:5
  127:24,25 128:25
  159:10 168:5,6
  199:23 200:13
  235:7 276:4
tolerable 205:23
  206:6 208:20
tolerate 128:9
  209:13
toll 227:10
tong 203:21
  208:17,20
topco 5:11 18:16
topic 266:11
total 252:11
touch 94:22
  102:11 235:4
touched 50:3
  103:23 124:25
  229:7
touted 113:5
  264:8
townes 43:4
track 161:19
  268:23
tracking 161:10
  161:11,24 162:9
trades 145:21
trainor 9:1 14:14
  19:20 24:14 29:20
  34:14 40:16
  114:23 191:3,12
  192:2 193:25
  194:4,6,7,13,15
  194:21 206:10
  244:9,13 274:2,24
trainor's 194:18
transaction 85:9
  254:17
transactions
  79:20,25 80:6,10

96:14 107:3
110:10 269:16
transcribed 35:25
transcript 56:22
  57:2,11 283:4
transcripts 55:25
transfer 74:17
  90:14 143:5
  172:22 173:5
  219:4
transferee 212:9
transferred 127:7
  213:11
transferring
  74:12,13 211:13
transfers 75:7
  173:6
transgress 86:14
translate 132:7
transparent
  106:11 166:4
trauma 231:23
treat 128:18 129:7
  135:8 281:7
treated 256:13
treatment 134:21
  220:22
treats 261:18
tremendous 105:8
  168:7
trial 59:5 67:10
  67:13 85:1 104:21
  104:22 123:10,13
  123:15,16 149:23
  150:1 170:8
  215:18 258:6,24
  259:11,11 260:15
  264:1,7,11 266:10
trials 276:12,16
tribal 2:22 11:2
  16:1 21:1 25:21
  31:1

tribes 2:24 11:4
  16:3 21:3 25:23
  31:3 217:5
tried 78:25 207:23
  214:5 227:24
  248:19 263:4
trigger 247:1
triggers 200:9
triumph 236:3
tro 55:14 58:19
  59:14
tronox 90:15
  262:1,5
troop 43:5
trucking 53:21
  266:13
true 68:8 110:24
  281:6 283:4
trumpet 208:21
trust 5:11 15:16
  18:8,16 108:16,16
  109:2 115:24
  139:23 151:21
  152:25 161:22
  188:12 218:7,11
  234:14 265:10
trustee 2:14 5:6
  5:22 6:17,25 7:8
  7:21 8:7 10:7,14
  28:12 36:4 44:7
  44:24 45:1 48:21
  49:4 55:12,22
  61:14 63:18 67:25
  69:3 71:9 86:10
  91:20 93:23 97:9
  115:6,14 118:24
  119:2,7 120:11,17
  172:7 175:15
  178:2,4 205:20
  207:1 209:21,22
  209:24 210:4,5,9
  210:10,13,14,24
  211:19,24 213:14

214:2,5 221:7
224:19,23 228:5
229:12 230:17
231:11,23 235:14
238:19 239:6,8
249:5 253:21
254:11 258:21
259:7 260:12,16
261:7 262:14
263:7 267:20
271:10 274:17
275:3 276:19
277:2,6
trustee's 4:3 5:2
  6:12,20 7:4 10:2
  10:10 12:7 17:7
  22:7 27:3 28:8
  32:7 44:25 48:7
  48:14,24 55:14
  56:10 57:20 95:18
  210:11 221:6
  222:7 225:23
  226:8 230:20
  231:18 232:21
trustees 2:10 5:16
  5:18 7:1,16 8:3
  157:25
trustee's 249:13
  261:4 278:9
trusts 5:10 18:15
  78:2 117:10 162:1
  162:4,8,9,10,11
  162:21 173:3
  187:9 217:25
  219:4 234:10
truth 47:13
  137:14 159:25
  160:1,1 190:1,1,2
  193:2,3,3 194:2,2
  194:2 195:24,25
  195:25
try 70:10 86:12
  94:24 102:5

107:25 110:9
114:8 138:5,7
144:22 164:2
170:10 202:3
222:2 248:14
249:12 253:15
**trying** 84:16
88:23 90:25 98:2
99:25 100:5
101:24 125:21
131:6,7 132:7,7
154:22 169:9
175:8 176:18,22
180:14 186:17
202:8 218:4
235:19 249:6
251:23
**tsier** 43:6
**tuesday** 56:2
58:11
**turn** 70:11 103:9
110:14 125:16
172:22 199:18
201:5 209:19
222:22 229:4
233:22
**turned** 111:25
134:14 241:8
**turning** 157:3
**turns** 206:21
216:20 241:13
**tweaking** 187:6
**tweed** 36:11
**twelfth** 6:6 13:12
19:2 23:13 28:20
33:13 254:12
**two** 45:2,18 50:23
53:12 55:3 58:21
66:24 67:18 70:17
73:6 86:4 92:10
98:12 99:18 103:6
106:16,19 111:25
120:2 121:25

123:10 128:5
134:4,9 135:7,22
137:12 150:8
151:4 167:14
168:1,6,15 184:15
191:2 192:12
194:24 195:20
197:5 199:19
200:5 203:4
205:24 206:13
207:14,24 208:4
208:13,13 217:20
228:2,2 230:20
233:12,13 246:17
250:12 253:23
254:12,19 257:18
264:10 267:18
271:23 273:19
274:8
**twofold** 177:4
**tying** 280:19
**type** 82:5,7 108:5
126:18 182:23
245:16
**types** 69:12 100:1
135:8 142:12
192:20 259:19
269:16 280:7
**typical** 147:20

**u**

**u** 114:22 190:4
193:6
**u.s.** 1:23 36:4
44:24,25 45:1
48:7 49:4 55:12
55:14,22 56:10
57:19 61:14 69:3
71:9 81:5,6 91:19
95:18 97:9 115:6
115:14 118:24
119:2,7,9,13
120:10,17 139:11
147:23 148:8,8

166:6 172:7
175:15 178:2,4
200:1,3,7 205:20
207:1 209:21,22
209:24 210:4,5,8
210:11,12,13,14
210:24 211:19,23
213:14 214:2,5
221:5,7 222:6
224:9,19,23 226:8
228:5 229:11
230:17,20 231:11
231:18,23 232:20
236:6,22 238:19
239:6,8 244:18
253:21 257:1,19
259:1,6 260:6,11
260:16 261:4,7
262:8,14 263:7
266:18 267:16,19
271:10 274:17
275:3 276:19
277:2,6,23 278:3
278:9
**u.s.c.** 120:16
**ucc** 134:4 135:7
164:15 191:10,13
203:12 205:24
207:14,19 208:23
213:25
**ucc's** 136:16
213:20
**ukraine** 278:3
**ultimately** 61:21
132:3 135:4 148:6
148:6 150:17
151:14,17 152:8,9
152:10,19,23
162:11,20 259:25
265:5
**unable** 98:1,6
99:12

**unappealed** 48:17
**unbelievably**
214:5
**unbonded** 120:11
**uncertain** 237:7
**uncertainty**
128:11 129:14,18
141:24 142:1
**unchecked** 87:3
**unclear** 176:2
**uncompensated**
191:14
**unconscionable**
207:7
**uncontroverted**
272:4
**uncovered** 203:13
213:23
**undergoing** 128:6
**underlying** 69:18
257:5 259:6
261:20 268:18
**undermine** 76:18
177:25
**underscore** 246:8
**understand** 47:18
49:21 61:3 79:8
83:15 86:13 96:22
99:3,9 107:1
111:23 112:17
118:5 127:16
130:16 133:8
136:25 141:21
143:17 157:18
177:15 184:21
185:14,17 186:23
186:23 215:14
216:1,13 218:14
218:16 219:14,14
225:15 236:8
237:5 281:22
**understanding**
72:7 100:21

141:20 192:4,22
217:6 230:3
242:17 250:13
**understands**
227:9
**understood**
214:25
**undertake** 93:7
107:3 144:7
**undertaken** 258:6
279:6
**undertaking**
191:23
**underwood** 25:11
38:21 138:3
146:20,24,25
147:15 148:17,20
149:5 153:7,17,23
154:2,6,7
**undisputed**
130:18
**undo** 138:20
**undone** 74:14,17
74:25 101:15
**undoubted**
106:19
**undue** 270:21
**unexpected** 179:5
180:7
**unflagging** 76:16
**unfortunately**
113:22 188:24
**unfunded** 205:15
**unhappiness**
206:23
**unidentified**
232:24
**uniform** 51:18
**uniformed** 257:19
**unilateral** 164:7
**unimaginably**
211:4

**unique** 191:22
237:4 255:23
279:16
**united** 1:1,12 2:10
2:14 4:2 5:1,5,16
5:18,22 6:12,16
6:20,25 7:1,3,8,16
7:20 8:2,6 10:2,6
10:10,13 12:6
17:6 22:6 27:2
28:7,11 32:6 36:3
44:7 63:18 67:25
86:10 92:7 93:23
118:19,25 120:15
120:17,19,19,21
120:23 124:19
151:21 183:2
204:14 210:10
224:8 225:22
235:14 237:2
249:5,13 254:11
258:21 261:14
273:3,4 277:22
281:2
**unlimited** 227:6
**unnecessary**
223:23
**unopposed**
236:17
**unprepared** 50:4
**unquantifiable**
234:23
**unquantified**
232:24
**unquestionably**
125:4
**unreviewable**
82:15,20
**unrung** 74:25
**unsecured** 3:1,4,8
3:15 4:5,23 8:16
8:19 9:2,5 11:6,9
11:13,20 12:9

13:2 14:8,11,15
14:18 16:5,8,12
16:19 17:9 18:2
19:14,17,21,24
21:5,8,12,19 22:9
23:2 24:8,11,15
24:18 26:1,4,8,15
27:5 28:2 29:14
29:17,21,24 31:5
31:8,12,19 32:9
33:2 34:8,11,15
34:18 39:9 137:16
191:5 211:9
212:19
**unspecified**
126:21 127:12
**unswayed** 205:20
**unthinkable**
191:17
**untrue** 220:5
**unwinding** 143:13
143:23
**unwound** 75:8
**update** 196:12
197:20 245:12
**updated** 196:19
**upfront** 55:1
68:24 272:20
**ups** 234:3
**upset** 127:22
**upward** 240:25
**urging** 220:12
**usdoj** 124:14
**use** 102:5 105:15
116:2 117:5 142:3
220:22 228:23
235:20 236:5
241:1 244:23
274:3 281:8
**users** 161:21
162:12
**usually** 144:16

**utterly** 55:2 59:17
**uzzi** 36:16 246:19
246:19,22 247:4
247:10 248:2

**v**

**v** 66:12,16 81:5
121:13 256:25
257:1,19,20
258:25 260:6
262:7,15 265:9,11
267:16 268:11
277:22,25 278:2,3
**vacating** 62:24
**vague** 75:9
**valid** 263:23
**validity** 46:18,20
**valuable** 253:1
**value** 91:12,17
125:15 129:13,18
160:23 234:7
261:21
**valued** 91:10
**valve** 172:12
174:14
**van** 43:7
**variation** 265:1
**varick** 36:5
**various** 44:11
45:6 47:8 56:13
109:3 114:3 116:1
125:18 131:13
134:20 136:13
157:1,1 162:21
176:4 201:5
211:10 253:8
**vast** 52:16 172:6
265:21 272:5,8
273:5
**vcr** 66:8
**vehemently** 202:7
**veil** 89:25
**veiled** 89:16

| | | **w** | 216:1 220:3 |

vein 134:17
vel 51:22 53:1
  68:16
velez 43:8
vendors 127:22
  127:25 128:3
vengeance 243:25
  245:2
venture 59:3
veres 224:8
veritext 283:20
verse 241:20
version 173:24
versus 149:16,17
viable 203:15
victim 207:21
  212:22 213:1
  231:13,14,17
victims 4:2,8 12:6
  12:12 17:6,12
  22:6,12 27:2,8
  32:6,12 38:2
  99:23 102:5
  105:23 106:14,18
  106:23 112:4
  118:2 206:13
  212:12 214:6,8,12
  227:19 234:2
  235:21 236:4
  243:6,18 244:2,16
  244:24 245:4
  249:20,21 274:4
victory 54:1
video 175:17,21
  248:13
videoconference
  2:4
view 47:2 60:10
  78:7 85:22 92:21
  115:14 136:1
  137:13 221:13
  230:8 259:5 260:4
  261:13

viewed 52:20
  231:23 244:7
  257:12,18 261:25
views 84:1 202:14
vigorously 204:16
  213:20
vindicate 107:25
vindicating 87:2
vindication 122:3
  275:12
violated 214:3
violates 258:23
violation 92:21
violations 263:11
virtual 191:10
virtually 191:19
  207:19
virtue 152:21
vis 113:24,24
vital 243:22
voice 231:16
volumes 59:8
voluntarily 105:9
  250:4
voluntary 180:17
volunteering
  239:8
vonnegut 7:12
  43:9
vote 231:10
  259:13,16,24
voted 86:25
  202:18 204:9
  222:12,12 231:10
  244:8 249:24
  272:7
voters 204:24
  214:17 244:12
voting 202:18
  259:25 260:23

**w**

w.r. 267:1
wagner 37:13
  189:13,13,18,20
  189:23 221:19,19
  221:24 225:7,9
wait 154:17 170:4
  180:8
waiting 154:19
  155:2 195:13
  202:17
waive 118:3 246:3
  246:6 247:7,13
waived 245:18
waiver 104:11,13
  248:3 280:2
waiving 150:10
walk 104:18,19
  105:1 237:10
  241:4 248:3
walked 128:5
walker 121:13
  277:25
want 48:12 50:4
  50:11 54:24 55:4
  59:18 61:10 67:17
  68:24 70:11 72:10
  74:6 76:23 78:15
  79:1 80:13 87:5
  93:7 100:13 111:6
  111:7 121:8
  123:14 134:22
  153:10 157:9
  158:13,14,15
  160:12 169:15
  170:1,14 174:9,17
  187:4 188:8,21,22
  190:12,14 191:1
  193:15 194:14
  195:14 196:23
  197:21 201:20,21
  202:3 205:5
  207:17 209:10

216:1 220:3
223:18 224:5,16
227:20 229:14,20
237:3 239:19
242:15 247:18
248:8,13 249:19
251:9 252:8 253:4
253:13 281:11,23
wanted 59:21
  68:4 122:21
  151:15,16 157:11
  235:9 248:14
  249:8 250:23
  281:16
wants 151:10
  171:25 185:21
  188:13 241:6
  245:11 248:10
wardwell 37:15
warrant 144:2
  258:3,8
warranted 95:24
  96:2 156:21
warrants 113:12
wary 210:21
washington 10:18
  15:11,13 38:9
  40:10 44:7,25
  65:5,19 94:16
  122:22 136:5
  137:1 142:11
  147:3 156:14,15
  157:13 191:25
  192:5 195:3,15
  198:17 203:25
  206:19 208:24
  209:5 254:20
  255:15,18 274:12
washington's
  158:12 190:18
  206:24
waste 253:23

watchdog  86:10
86:11 221:10,13
watching  111:18
208:11
way  44:21 46:25
52:23 53:7,12
61:19 63:13 70:19
79:23 80:15 87:24
88:9 92:14 96:1
99:21 100:2,16,21
101:21,25 105:2
106:8 109:1
110:10,12 117:14
124:11,23 135:11
136:18 152:11
170:11 177:9,11
177:14 185:2
203:16 204:22
208:14 221:3
246:4,14 249:12
253:15 259:8
ways  53:12 67:15
105:24 114:8
143:9 210:3
241:23,25
we've  53:6 57:1
73:6,7,10,12
82:16 88:1 89:13
93:14 94:8 98:6
102:13,18 105:2
109:9 121:15
125:18 146:3
147:5,18 156:14
156:18 158:11
159:4 162:19,19
163:16,16 165:24
166:12 167:14,16
167:17 169:1
170:11,19 171:18
172:1 173:3,23
174:5,6,21,22
175:10 178:6

180:4,5,6,13
183:13,16 198:1
200:10 206:14,15
206:15 216:19
231:14
wealth  245:7
wear  241:6
weber  43:10
website  197:2,5
210:11
week  77:12
123:11 161:6
184:15 217:18
246:14 268:25
272:12
weekend  55:16
weeks  86:8 166:7
186:22 187:11
197:5 217:8,20
weigh  83:3
weighing  106:16
109:14
weight  53:11
227:11
welcome  47:5
133:14
wells  43:11
went  68:20,22
86:8 212:6 214:5
we'll  248:12
we're  241:1 246:1
248:3 250:21
252:25
we've  247:20
249:10,18,24
251:9 252:9
whatsoever  56:4
58:1 92:4
what's  250:19
wherewithal
241:11
whim  204:24

whisper  253:17
white  1:14 38:1
173:23 227:18
249:20
who've  231:16
wide  265:1
widespread  130:2
wilks  260:6
willing  46:24
110:9 115:11,22
117:6,11,17 118:2
163:17 169:2
176:17 235:24
237:12 248:8
253:15,22
willingness  115:2
win  143:22
window  231:24
239:18 241:18
windstream  81:6
84:21 265:11,12
265:19 266:18
wins  213:17
244:25
winter  173:7
wires  182:24
wish  95:2 102:14
148:13 160:10
193:12 194:12
196:11 207:2
wishes  192:10
witness  91:22
134:25 189:4
witnesses  158:14
191:2,13,21 192:9
199:14 260:15
wl  66:11 256:15
257:9
wolff  38:8
won  145:3
wonderful  104:23
won't  245:25
260:21 268:5

word  95:5 141:6
words  78:16
164:10 210:18
213:24 236:25
257:14
work  74:21
109:21 110:10
115:2 118:2 182:4
228:21 233:24
248:19,23
working  205:22
227:21
works  78:5 88:9
219:8
world  180:12
200:10 205:14
235:5
worried  201:17
worry  178:18
235:15
worse  244:19
274:6
worth  135:1 152:3
232:19,19,20
238:23
would've  145:11
wouldn't  251:25
wrap  235:19
writing  164:7,17
166:12
written  144:24
175:7 180:5 205:3
233:10 258:7
wrong  54:24
59:17 69:17 152:6
180:20 221:14
233:12,23 238:12
261:7 267:2 277:8
wrongdoers
125:14 252:15
wrote  164:10
196:18

**[x - zoomgove]**                                                    Page 74

| x |
| --- |
| **x**   1:4,10 |
| **y** |
| **y**   193:5 |
| **yards**   36:13 |
| **yeah**   88:7 116:10 |
| 144:16 149:2 |
| 161:23 162:5,16 |
| 179:23 219:9 |
| **year**   101:19 |
| 121:25 134:21 |
| 161:12 205:7 |
| 206:9 209:14 |
| 217:19 274:10,23 |
| **year's**   187:1 |
| 217:22 |
| **years**   86:4 106:16 |
| 106:19 128:5 |
| 130:21 185:22 |
| 203:11 205:24 |
| 206:14,20 207:10 |
| 207:14,24 208:4 |
| 208:13,13,23 |
| 212:9 213:3,6 |
| 262:23 273:18,19 |
| 274:8 |
| **year's**   270:20 |
| **yesterday**   195:19 |
| 206:17 |
| **york**   1:2 36:6,14 |
| 36:21 37:11,18 |
| 38:4,11 39:11,11 |
| 40:1,3,3 278:2 |
| **you're**   247:11 |
| 250:24 |
| **you've**   245:19 |
| 248:21 249:14 |
| **z** |
| **z**   42:24 |
| **zabel**   43:12 |
| **zero**   209:9 214:12 |
| 214:13 236:19 |

239:1,3
**zoom**   44:17
157:23,24
**zoomgove**   2:4