Page 1



1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 19-23649-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   PURDUE PHARMA L.P.,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    November 18, 2021

17                    10:12 AM

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  UNKNOWN

Page 2

1    HEARING re Notice of Agenda for November 18, 2021 Hearing

2    Motion to Approve /Debtors Motion to Approve Payment or

3    Reimbursement of Certain Fees and Expenses of the

4    Non-Consenting States Group, the Ad Hoc Committee and the

5    MSGE Group Pursuant to Sections 363(b) and 105(a) of the

6    Bankruptcy Code and Bankruptcy Rule 6004 (ECF #3986)

7    Related Document:

8    Statement /The Official Committee of Unsecured Creditors'

9    Statement in Respect of Debtors' Motion to Approve

10   Payment or Reimbursement of Certain Fees and Expenses of the

11   Non-Consenting States Group, the Ad Hoc Committee and the

12   MSGE Group (related document(s)3986) filed by Ira S.

13   Dizengoff on behalf of The Official Committee of Unsecured

14   Creditors of Purdue Pharma L.P., et al. (ECF #4094)

15

16   HEARING re Application for Interim Professional Compensation

17   (Application for Approval of Payment of Compensation, Fees

18   and Costs) for Binder & Schwartz LLP, Special Counsel,

19   period: 3/11/2021 to 8/11/2021, fee:$272,325.97,

20   expenses: $367.05. filed by Binder & Schwartz LLP.

21   (ECF #3962)

22

23

24

25

Page 3

1    HEARING re Notice of Hearing Regarding Late Claim Motions

2    (related document(s)3893, 3897, 3895, 3894)

3    Motion to File Proof of Claim After Claims Bar Date filed by

4    Jonathan Maae (ECF #3894)

5

6    HEARING re Motion to File Proof of Claim After Claims Bar

7    Date filed by Geoffrey Carpenter (ECF #3895)

8

9    HEARING re Motion to File Proof of Claim After Claims Bar

10   Date filed by Lamont Broussart (ECF #3893)

11

12   HEARING re Objection to Motion / Debtors Objection to Lamont

13   Broussards Motion to File Proof of Claim after Claims Bar

14   Date (related document(s)3893) (ECF #4100)

15

16   HEARING re Motion to File Proof of Claim After Claims Bar

17   Date filed by Don W. Hardin (ECF #3897)

18

19   HEARING re Objection to Motion / Debtors Objection to Don

20   Hardins Motion to File Proof of Claim after Claims Bar Date

21   (related document(s)3897) (ECF #4099)

22

23   HEARING re Letter / Requesting Payment Filed by Stephanie

24   Lubinski. (ECF #3723)

25

Page 4

1    HEARING re Objection / Debtors Objection to Stephanie

2    Lubinskis Motion for Payment of Claim (related

3    document(s)3723) (ECF #4102)

4    Related Document:

5    Motion to Authorize / Requesting Payment (ADMINITRATIVE

6    ENTRY) (related document(s)3723) filed by

7    Stephanie Lubinski (ECF #3990)

8

9    HEARING re Motion to Authorize \Motion for Clarification

10   filed by Ellen Isaacs. (ECF #3864)

11

12   HEARING re Objection to Motion / Debtors Objection to Ellen

13   Isaacs Motion for Clarification (related document(s)3864)

14   (ECF #4101)

15   Related Documents:

16   NOTICE OF RESCHEDULING HEARING FROM OCTOBER 14, 2021 TO

17   NOVEMBER 18, 2021 - Re:

18   Motion for Clarification with hearing to be held on

19   11/18/2021 at 10:00 AM at Videoconference (ZoomGov)

20   (RDD) (related document(s)3864). (ECF #3896)

21

22

23

24

25

1  HEARING re Notice of Adjournment of Hearing / Notice of

2  Rescheduling Hearing Regarding Motion for Clarification

3  (related document(s)3864) filed by James I. McClammy on

4  behalf of Purdue Pharma L.P.. with hearing to be held on

5  11/18/2021 at 10:00 AM (ECF #3916)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Sonya Ledanski Hyde

Page 6

1    A P P E A R A N C E S :

2

3    DAVIS POLK & WARDWELL LLP

4         Attorneys for the Debtors

5         450 Lexington Avenue

6         New York, NY 10017

7

8    BY:  ELI J. VONNEGUT

9         ESTHER TOWNES

10        JACQUELINE KNUDSON

11        JAMES I. MCCLAMMY

12

13   PILLSBURY WINTHROP SHAW PITTMAN LLP

14        Attorneys for the Non-Consenting State Group

15        31 West 52nd Street

16        New York, NY 10019

17

18   BY:  ANDREW TROOP

19

20   Binder Schwartz LLP

21        Attorneys for Public School District Creditors

22        366 Madison Avenue

23        New York, NY 10017

24

25   BY:  ERIC FISHER

1   ELLEN ISAACS, Pro Se

2   DON W. HARDIN, Pro Se

3   STEPHANIE LUBINSKI, Pro Se

4

5   ALSO PRESENT TELEPHONICALLY:

6   ROXANA ALEALI

7   ANDREW VINCENT ALFANO

8   MICHAEL ATKINSON

9   YVETTE AUSTIN SMITH

10  JASMINE BALL

11  BROOKS BARKER

12  KATHRYN BENEDICT

13  DAVID E. BLABEY

14  SARA BRAUNER

15  DYLAN CONSLA

16  ASHLEY CRAWFORD

17  HEATHER M. CROCKETT

18  MARIO D'ANGELO

19  KEVIN DAVIS

20  JESSE DELACONTE

21  IRA DIZENGOFF

22  CLINT DOCKEN

23  MARIA ECKE

24  KENNETH H. ECKSTEIN

25  BRIAN EDMUNDS

1   BERNARD ARDAVAN ESTANDARI

2   MATTHEW FARRELL

3   ERIC B. FISHER

4   LAWRENCE FOGELMAN

5   ANNELYSE GAINS

6   CAROLINE GANGE

7   MAGALI GIDDENS

8   MICHAEL GOLDSTEIN

9   JAMES GREEN, JR.

10   STEPHEN HESSLER

11   WILLIAM HRYCAY

12   MARSHALL SCOTT HUEBNER

13   MITCHELL HURLEY

14   FRED HYDE

15   HAROLD D. ISRAEL

16   EVAN M. JONES

17   GREGORY JOSEPH

18   MARC KESSELMAN

19   DARREN S. KLEIN

20   ANN LANGLEY

21   ALEXANDER LEES

22   MARA LEVENTHAL

23   JEFFREY LIESEMER

24   STEPHANIE M. LUBINSKI

25   KEVAN MACLAY

```
 1   BRIAN S. MASUMOTO

 2   CLAYTON MATHESON

 3   GEARD MCCARTHY

 4   HUGH M. MCDONALD

 5   SHANNON M. MCNULTY

 6   NATHANIEL MILLER

 7   MAURA KATHLEEN MONAGHAN

 8   AMANDA MORALES

 9   MICHAEL PATRICK O'NEIL

10   SUSAN OUSTERMAN

11   ARIK PREIS

12   LINDA RIFFKIN

13   RACHAEL RINGER

14   CHRISTOPHER ROBERTSON

15   JEFFREY J. ROSEN

16   COREY WILLIAM ROUSH

17   ELIZABETH SCHLECKER

18   PAUL KENAN SCHWARTZBERG

19   ELIZABETH SCOTT

20   LUCAS H. SELF

21   MARC F. SKAPOF

22   ARTEM SKOROSTENSKY

23   LAURA SMITH

24   KATE SOMERS

25   CLAUDIA Z. SPRINGER
```

1   KATHERINE STADLER

2   HOWARD STEEL

3   ETHAN STERN

4   ERIC STODOLA

5   JACQUELYN SWANNER

6   MARC JOSEPH TOBAK

7   ALLEN J. UNDERWOOD

8   GERARD UZZI

9   JORDAN A. WEBER

10  THEODORE WELLS

11  DENNIS WINDSCHEFFEL

12  LAUREN S. ZABEL

13  IRVE GOLDMAN

14  RICHARD ARCHER

15  TZERINA DIZON

16  LOWELL W. FINSON

17  MICHAEL D. GOFORTH

18  UDAY GORREPATI

19  TAYLOR HARRISON

20  M. NATASHA LABOVITZ

21  SIDNEY P. LEVINSON

22  MARCIA R. MEOLI

23  NICHOLAS PREY

24  JACOB W. STAHL

25  VINCE SULIVAN

1    WENDY WEINBERG

2    KATIE M. WHITE

3    MARY JO WHITE

4    HAROLD WILLIFORD

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          THE COURT:  Okay, good morning.  This is Judge

3   Drain.  We're here in In re. Purdue Pharma, L.P., et al.

4          The matters on today's calendar are being held

5   completely remotely primarily by Zoom for Government unless

6   someone doesn't have access to a screen, in which case, they

7   are participating by telephone.

8          I have the agenda for today's hearing, and I'm

9   happy to go down in the order of the agenda, which has been

10   submitted by the Debtors' counsel.

11          MR. VONNEGUT:  Thank you, Your Honor.  Good

12   morning.  For the record, I'm Eli Vonnegut of Davis Polk &

13   Wardwell on behalf of the Debtors.  Can you hear me, Your

14   Honor?

15          THE COURT:  Yes.  I hear you fine.

16          MR. VONNEGUT:  Thank you very much.  The first

17   item on the agenda today is the Debtors' motion for

18   authority to pay or reimburse the fees and expenses of the

19   Non-Consent State Group, the Ad Hoc Committee, and the MSGE

20   Group.  This motion was filed on October 19, Docket Entry

21   3986.

22          Your Honor, the motion is unopposed, so I would

23   propose to just very briefly just describe the basics and

24   then happy to address any questions that Your Honor may

25   have.

Page 13

1          THE COURT:  Okay.

2          MR. VONNEGUT:  Okay.  So, Your Honor, this motion

3     is carrying out effectively the agreement that we reported

4     to Your Honor on August 13 that was agreed in conjunction

5     with confirmation of the plan to cover the fees of the Non-

6     Consenting State Group that were incurred through the end of

7     the mediation leading to the final form of the plan.

8          Some of those fees were shared across the Non-

9     Consenting State Group and the Ad Hoc Committee.  And

10    lastly, in conjunction with discussions around this motion,

11    we also collectively agreed to pay certain fees incurred by

12    the Multi-State Governmental Entities Group as part of the

13    bankruptcy proceeding as well.

14         All told, the fees that are subject to this motion

15    include approximately $7.5 million incurred by Pillsbury

16    Winthrop, just shy of $70,000 by NERA Economic Consulting,

17    $4 million for the Brattle Group, and just over $50,000 for

18    Dr. Fred Hyde and those fees were all either purely Non-

19    Consenting States Group or shared between the Non-Consenting

20    States and the Ad Hoc Committee of Supporting Creditors.

21    And lastly, for the MSGE, we have $58,900 for Seitz, Van

22    Ogtrop & Green, and $648,000 for Godrey & Kahn.

23         Your Honor, briefly, all of these fees were

24    incurred in furtherance of the largely consensual resolution

25    brought to the Court.  We maintain that payment of these

Page 14

1      fees is beneficial to the estates and helpful in pushing

2      these cases towards a successful conclusion.

3              We've received some questions from Your Honor's

4      chambers looking for unredacted copies of invoices.  I

5      believe that those have now been submitted to chambers.  And

6      so, unless Your Honor has any questions for me or any of the

7      other professionals that are the subject of this motion, we

8      would respectfully ask that the Court grant the motion and

9      authorize payment of these fees.

10             THE COURT:  Okay.  I want to make sure I

11     understand the context for this motion.  The plan itself

12     didn't provide for these fees to be allowed and paid, right?

13             MR. VONNEGUT:  That's correct, Your Honor.

14             THE COURT:  Okay.  And as far as the plan is

15     concerned, and this is highlighted in the Unsecured

16     Creditors' Committee's statement in support of this motion,

17     the payments are coming out of the distributions that would

18     otherwise go to the governmental entities, correct?

19             MR. VONNEGUT:  That's correct, Your Honor.  The

20     governmental entities under the plan are the residual

21     claimants.  And so, effectively, anything paid out of

22     general estate funds ultimately comes out of their plan

23     distributions.

24             THE COURT:  So it's not reducing amounts that

25     would be paid to personal injury creditors under the plan.

1           MR. VONNEGUT:  No, it will not impact recoveries

2    of non-governmental creditors.

3           THE COURT:  And I don't believe that this

4    agreement was part of the mediated settlement with the non-

5    consenting -- with the 15 non-consenting states, correct?

6           MR. VONNEGUT:  It was agreed to --

7           THE COURT:  The settlement negotiated with the

8    help of Judge Chapman as a mediator.

9           MR. VONNEGUT:  Correct, Your Honor.  It was not a

10   formal component of that agreement.  It was agreed to in

11   that context effectively.

12          THE COURT:  What does that mean?

13          MR. VONNEGUT:  It was agreed to in connection with

14   the support of the Non-Consenting States Group or the plan,

15   but it was after the conclusion of the mediation.

16          THE COURT:  So they had already agreed to support

17   the plan, and this was agreed afterwards?  I see Mr. Troop

18   there.  He may be better able to answer that question than

19   you.

20          MR. TROOP:  Good morning, Your Honor.  Andrew

21   Troop for the Non-Consenting State Group.

22          It had always been part of the discussions from

23   the first days of this (indiscernible) and resolutions we

24   reached, we would be reimbursed.  The oddity of the mediated

25   settlement was that it was not, as you know, unanimous on

Page 16

1    the part of the Non-Consenting State Group.  And as a

2    result, those discussions extended beyond the time that that

3    mediation concluded, you know, with the understandable

4    questions, which fees would be covered, again, for what

5    period of time.  And those details were worked out to cover

6    all fees and expenses incurred by government (indiscernible)

7    through the end of mediation.

8              THE COURT:  Okay.  All right.  I mean, the reason

9    I'm asking this is the authority cited for this motion is

10   Section 363(b) of the Bankruptcy Code, and I agree with the

11   motion that there is authority under Section 363(b) in the

12   right circumstances to approve payment of fees.

13             And I guess the best discussion of that is by

14   former District Judge Mukasey in U.S. Trustee v. Bethlehem

15   Steel Corp., 2003 U.S. District Lexis 12909 (S.D.N.Y. 2003).

16   It's also recognized by another district judge in In re.

17   Enron Corp, 335 B.R. 22 at Page 29 (S.D.N.Y. 2005).

18             The issue I have here is that in those cases and

19   generally where payment of fees is allowed under 363(b)

20   instead of under a different section of the code, the

21   payments are agreed early in the case to facilitate a

22   critical creditor's ability to interact with the debtor

23   and/or other parties in interest in a well-represented way.

24             For example, in Bethlehem Steel, it was payment of

25   the union's fees.  The union was the main creditor, and its

1    involvement in the case was critical to any restructuring of

2    Bethlehem Steel.  And it was on that basis that I recognize

3    the payment of the Ad Hoc Committee Group in this case.

4            This is a little different in that the agreement

5    comes at the end of the case, and I was asking the questions

6    I was asking to see whether and in what context it was

7    agreed to.

8            It would seem to me that if it comes at the end of

9    the case, normally, one would focus on the standard in

10   Section 503(b)(3)(D) of 503(b)(4).  And to some extent and,

11   in fact, to a very large extent, the motion also sets forth

12   facts to satisfy that standard, i.e. the work done by the

13   Non-Consenting States Group and the professionals that it

14   would be covered by this application, covered tasks that it

15   would appear to me did make a substantial contribution to

16   the case, which is the standard under 503(b)(3) and (4).

17           And that included obviously work by a critical

18   group of creditors in terms of coming up with a coordinated

19   process to perform due diligence, which was channeled

20   through primarily Mr. Troop's firm with also some financial

21   experts who recovered.

22           The due diligence also covered not just the

23   inquiry into the claims and causes of action and assets of

24   the released parties, the Sacklers and others, but also the

25   nature of the claims generally by the public and private

Page 18

1    entities and then thereafter, the allocation negotiations

2    with public and private entities, and the allocation among

3    public entities of the amount allocated to them as a result

4    of those mediations.  And then finally, the development of

5    the proposed uses -- well, categories of uses for abatement

6    purposes by public entities under the plan.

7            So it seems to me the proper lens here really

8    should be to review this under Section 503(b), unless I'm

9    missing something.

10           MR. VONNEGUT:  No, Your Honor.  Frankly, and you

11   just covered the various and extensive contributions made to

12   the case by all of these groups, the NCSG, the Ad Hoc

13   Committee, the MSG Group that I was about to run through

14   that we do think warrant the payment of these fees under

15   either standard.

16           And there is, you know, to a certain degree, I

17   think it's correct to say that, as Mr. Troop said, there was

18   always an expectation that this would be a component of the

19   agreement.  But you are correct, of course, that there was

20   not an agreement very early in the case to pay these fees.

21   And so, frankly, we do think either analytical framework

22   works and that the contributions made by these parties were

23   more in payment by the underwriters then.

24           THE COURT:  Well, I mean, one of the reasons I

25   asked about an agreement is that the law is also clear that

Page 19

```
 1    an agreement to pay fees doesn't satisfy the test under

 2    503(b)(3) and (b)(4) if it's just to buy off someone that's

 3    a pest.

 4           Now, the Non-Consenting States Group very actively

 5    participated in these cases, often objected to relief that

 6    the Debtors and/or the Committee or both were seeking.  But

 7    having presided over these cases for two years, I do not

 8    view them as a pest.

 9           And I guess moreover and more importantly, it

10    doesn't appear from what you represented to me and simply

11    from the timetable of events here and, most importantly, the

12    agreement reached as a result of Judge Chapman's mediation

13    with the majority of the non-consenting states in her

14    mediator's report that the payment of these fees was an

15    element of that agreement; something to buy off, in other

16    words, 15 states.

17           The amount, frankly, isn't -- although it's, in

18    terms of dollars, significant amount, it's not the type of

19    amount that, frankly, I would imagine would succeed in

20    buying off 15 state AGs, many of whom who've spent the last

21    several years actively litigating in the opioid litigations

22    around the country, including against Purdue, but I just

23    wanted that context.

24           MR. VONNEGUT:  Yes, that's all correct, Your

25    Honor.
```

```
 1              THE COURT:  All right.  So there have been no

 2     written objections to this motion.  I received an email this

 3     morning from Ms. Isaacs in which she states that she has

 4     objected to it.  And I've gone through the docket, Ms.

 5     Isaacs; I didn't see an objection to this motion.  I did

 6     see, again, your motion that is on today's calendar, which,

 7     among other things, seeks an order enjoining all payments by

 8     Purdue and I think any agreements for payments by Purdue.

 9              And so, I think in that broad sense, one could

10     view that pleading as an objection to the motion, but it

11     isn't really to this motion, but I did want to note that for

12     the record.

13              MS. ISAACS:  Your Honor, that is correct, and I

14     have filed an objection.  And I am having a great deal of

15     difficulty with the clerk's office getting these objections

16     in and getting information processed properly, getting links

17     and everything else to these proceedings.

18              THE COURT:  What objection did you file?  You

19     objected to this motion?

20              MS. ISAACS:  I've objected -- yeah, I've been

21     objecting.  I've been sending stuff in.  Nobody can find

22     documents.

23              THE COURT:  No, no.  Ms. Isaacs, our clerk's

24     office is superb, all right?

25              MS. ISAACS:  No, they're not because four times in
```

Page 21

1    a row, I didn't get the link.

2             THE COURT:  Well, I disagree with you on that,

3    ma'am, seriously.  And they take letters that are hard to

4    decipher as far as what they're seeking relief on, so I'm

5    going to ask you a specific question.

6             This motion is --

7             MS. ISAACS:  Your Honor, if I can have a second

8    while you're looking.

9             THE COURT:  I'm sorry.  I'm looking at the date.

10            MS. ISAACS:  I would like you to look --

11            THE COURT:  Excuse me, ma'am.

12            MS. ISAACS:  I don't want you to take things

13   personal.  I want you to understand.

14            THE COURT:  I'm trying to figure out what you have

15   actually filed an objection to.  This motion was dated

16   October 19, 2021.  Did you object to this motion with regard

17   to this relief?

18            MS. ISAACS:  Yes.  I sent documents in through the

19   portal, and I've been chasing down documents through your

20   office and through Judge McMahon's office.  People can't

21   find things.  The pro so department can't find things.

22   NYLAC doesn't know what to do.  Nobody knows what to do in

23   this case.  It's very frustrating.

24            THE COURT:  What was the basis -- what was the

25   basis for your objection to this motion?

1           MS. ISAACS:  The basis to my objection to the

2     motion is that it's out of order.  We cannot continue to

3     keep bleeding all the money out of this case, and there's

4     not going to be anything left for anybody when it's all said

5     and done.

6           THE COURT:  And you wrote that in a written

7     motion.

8           MS. ISAACS:  Yes, I did.

9           THE COURT:  You're making a representation to me

10    now, Ms. Isaacs.  We will track it down.

11          MS. ISAACS:  Yes, I am.

12          THE COURT:  I would like you to email me to my

13    chambers how you sent it in, all right, and I will track it

14    down.

15          MS. ISAACS:  I will.  Okay, thank you very much.

16          THE COURT:  All right.

17          MS. ISAACS:  I appreciate that.

18          THE COURT:  Now, this motion does not provide for

19    the immediate payment of this money.  It authorizes the

20    payment as part of the effectiveness of the plan.  It is not

21    money that would go to personal injury claimants.  The

22    states would be spending this money themselves.  In fact,

23    the motion recites that almost all of it has already been

24    spent by the states; they would be reimbursed for it.  And

25    therefore, it does not appear to me to be reducing the

Page 23

1    recovery by the estates to pay this money.  It just evens it

2    out.

3              So I don't see, as far as what you've represented

4    to me as the basis for the objection here, a basis.  Someone

5    had to do this work, and they are not going to do it for

6    free, and it was work that was actually done in a

7    coordinated basis to coordinate 25 states through

8    essentially one law firm and one financial expert.

9              So I'm going to overrule that objection.  I do

10   want you to send it to me to chambers.  And you're

11   representing to me that you actually tried to have this

12   filed.  When did you try to have it filed?

13             MS. ISAACS:  I think it was the beginning of

14   November.  I have to go back and check through my computer.

15             THE COURT:  Okay, very well.  Well, we will try to

16   straighten that out.  When you email it to me, tell me who

17   you sent it to, okay?

18             MS. ISAACS:  Okay, I will.

19             THE COURT:  All right.  Okay.

20             MS. ISAACS:  Thank you.

21             THE COURT:  All right.  So I will grant this

22   motion.

23             MR. TROOP:  Your Honor, I'm sorry to interrupt

24   you.  But just to be clear, you said something, and I just

25   want the record to be clear.

Page 24

1            THE COURT:  Right.

2            MR. TROOP:  That the payment of the funds under

3    this motion is not contingent on the effective date, but it

4    is to be paid in the ordinary course.  The impact fees,

5    however, as Mr. Vonnegut described, that comes out of the

6    contingent.

7            THE COURT:  All right.  I will make it contingent

8    on the effective date though.  I think that's appropriate

9    here.

10           MR. TROOP:  Okay, thank you.

11           THE COURT:  So I'll ask the Debtors to submit the

12   order granting the motion with that one change.  I've

13   reviewed the time entries.  I reviewed most of the redacted

14   time entries that were submitted this morning, and they

15   don't cover time that would not properly be compensable.

16           I also note that the states negotiated, apparently

17   across the board, 15 percent discount.  And, frankly, the

18   time spent given the role of the professionals was

19   reasonable to begin with.  But any concerns that I would

20   have about excessive time and the like are taken into

21   account by the 15 percent discount.

22           All right.  The next matter on the calendar wasn't

23   a matter that was dealt with as part of the plan and my

24   confirmation ruling and order, which is the compensation of

25   Binder & Schwartz, which is also listed as on the agenda as

Page 25

1    uncontested.

2            Binder & Schwartz was counsel to the Public School

3    District claimants.  The plan had originally provided that

4    their fees would be paid.  I ruled at the confirmation

5    hearing that I didn't have a sufficient record to determine

6    whether those fees were reasonable under Section 1129(a)(4)

7    of the Bankruptcy Code and established a process for the

8    firm to submit its time and expenses so I can make that

9    determination.

10           It's done that and I've reviewed the time and

11   expense records.  Again, this application, I believe, was

12   not opposed by any filing, and I have a certificate of no

13   objection submitted by the firm.  This would be a payment

14   that would come out of the distribution, as I understand it,

15   in respect of the school districts.

16           Again, I've reviewed the time stated.  There's

17   also a 15 percent discount negotiated by this firm.  And

18   given that 15 percent discount and the firm's rates, which

19   are lower than I think is probably market in this district,

20   I'm prepared to grant the application under 1129(a)(4).

21           So I'm going to ask counsel to submit an order on

22   that basis.

23           MR. FISHER:  Eric Fisher from Binder & Schwartz.

24   Thank you very much, Your Honor.

25           THE COURT:  Okay.  And I think you should use the

1    standard form of fee order that we use in this district,

2    which has a Schedule A and B attached to it, even though

3    this is under 1129(a)(4) instead of under Section 330 of the

4    Code.

5            MR. FISHER:  We will do that, Your Honor.

6            THE COURT:  All right.  So, Mr. Vonnegut, I think

7    the next matter on the calendar is a motion by Jonathan

8    Maae, which is a pro se motion that the clerk docketed and

9    noticed for a hearing.  And as I understand it, this motion

10   is unopposed.

11           MR. VONNEGUT:  That's correct, Your Honor, and

12   this motion will be addressed by my colleagues, Ms. Townes.

13           THE COURT:  Okay.

14           MS. TOWNES:  Good morning, Your Honor.  For the

15   record, this is Esther Townes of Davis Polk & Wardwell on

16   behalf of the Debtors.  Can you hear me clearly?

17           THE COURT:  I can hear you fine.  Thanks.

18           MS. TOWNES:  So I'll also be handling the next

19   motion that's on the agenda, which is the late claim motion

20   by Geoffrey Carpenter.  So Mr. Maae's late claim motion is

21   at Docket No. 3894 and Mr. Carpenter's late claim motion is

22   at Docket No. 3895.

23           We've carefully reviewed both of these motions and

24   the (indiscernible) the individualized assertions that the

25   make.  The Debtors believe that there's a colorable basis

Page 27

1    for granting the motions under the Pioneer factors.  So as

2    we've done in the past, we consulted with the Creditors'

3    Committee, as well as the Ad Hoc Committee of Individual

4    Victims regarding those assertions and they consented to the

5    relief that we're requesting in the proposed order that was

6    filed at Docket No. 4098-1.

7            And this is consistent with the prior orders that

8    we've submitted to the Court for late claim motions, and so,

9    we would respectfully request that it be entered.

10           THE COURT:  Okay.  All right.  I don't know if I

11   have Mr. Maae or Mr. Carpenter on the phone.  This hearing

12   was noticed by a notice dated October 7.  I've reviewed both

13   of the handwritten letters that were submitted to the Court.

14           Mr. Maae relates that he is homeless and has been

15   homeless during the time when he would have needed to file a

16   timely proof of claim.  Mr. Carpenter relates that he's been

17   incarcerated in Washington State and under constant lockdown

18   since the start of the pandemic.

19           Under those circumstances, I agree with the

20   Debtors and the parties that they consulted with, including

21   the Creditors' Committee that the reason for the late filing

22   of these two proofs of claim was outside of the claimant's

23   control and that, therefore, the neglect is excusable for

24   purposes of Rule 9006 and the case law under it.

25           So I'll grant each of these motions.  I'll ask the

1    Debtors' counsel to submit an order doing that on both of

2    them.

3              MS. TOWNES:  Thank you, Your Honor.

4              THE COURT:  All right.  The next matter on the

5    calendar is another handwritten motion submitted by Lamont

6    Broussard for leave to file a late proof of claim.  I don't

7    know if Mr. Broussard is on the phone or on Zoom.  Again,

8    this was noticed for a hearing by a notice dated October 7,

9    2021.  Okay.  I don't think he is.

10             Who is handling this on behalf of the Debtors?

11             MS. KNUDSON:  Good morning, Your Honor.  For the

12   record, this is Jacqueline Knudson of Davis Polk & Wardwell

13   on behalf of the Debtors, and I'll be handling this motion.

14   Can you hear me clearly?

15             THE COURT:  Yes, I can.

16             MS. KNUDSON:  Thank you, Your Honor.  As set forth

17   in our objection to Mr. Broussard's late claim motion, Mr.

18   Broussard has simply not provided sufficient information for

19   the Debtors to determine whether the request satisfies the

20   excusable neglect standard set forth in Federal Rules of

21   Bankruptcy Procedure 9006 and the so-called Pioneer factors.

22             Accordingly, although the Debtors are sympathetic

23   to Mr. Broussard and his circumstances, we must object to

24   the motion and request that the Court deny the motion

25   without prejudice.

1          With respect to the most important factor, the

2     reason for the delay, it's unclear from the motion why Mr.

3     Broussard was unable to file a proof of claim before the bar

4     date.  Although he notes in his motion that he is currently

5     in in-patient treatment, he has not alleged that he was in

6     in-patient treatment prior to and leading up to the July 30,

7     2020 bar date, nor did he allege that the in-patient

8     treatment or an unspecified amount of time in prison he

9     referenced in his proof of claim prevented him from timely

10    filing the claim.

11          Moreover, the Debtors believe that allowing Mr.

12    Broussard's claim would encourage other latecomers seeking

13    to assert claims against the Debtors related to opioid use

14    to file claims which would prejudice the Debtors and, more

15    importantly, the Debtors' creditors.

16          THE COURT:  Okay.

17          MS. KNUDSON:  Finally, the (sound glitch) figure

18    was substantial.  Mr. Broussard filed his motion (sound

19    glitch).

20          THE COURT:  We lost the audio there, Ms. Knudson.

21          MS. KNUDSON:  Your Honor, can you hear me?

22          THE COURT:  I can hear you now, yes.

23          MS. KNUDSON:  Can you hear me?

24          THE COURT:  Yes.

25          MS. KNUDSON:  Thank you, Your Honor.

```
 1                THE COURT:  All right.  Well, now I can't hear
 2    you.
 3                MS. KNUDSON:  So with respect (sound glitch).  Can
 4    you hear me now, Your Honor?
 5                THE COURT:  Yes.
 6                MS. KNUDSON:  Okay.  Apologies, Your Honor.  I'm
 7    not sure where exactly you lost me.
 8                THE COURT:  Well, you were noting that the motion
 9    was filed at the end of the September, so that the delay was
10    over a year since the bar date.
11                MS. KNUDSON:  That's correct, Your Honor.  So
12    nearly 14 months after the bar date is when he filed his
13    motion and proof of claim.
14                So just given all of these factors, coupled with
15    the potential to open the floodgates to other personal
16    injury claimants, we do not think he has met the Pioneer
17    standard.  And for these reasons, we would respectfully
18    request that the Court deny the motion without prejudice.
19                THE COURT:  When you say without prejudice, I'm
20    assuming but I just want to confirm this, that if Mr.
21    Broussard is able to, in a timely fashion, provide evidence
22    that during the relevant period leading up to the bar date
23    and thereafter, he was unlikely to get notice of the bar
24    date for reasons like Mr. Carpenter or the number of other
25    people who the Debtors have agreed to permit a late claim to
```

1   be filed, the Debtors would consider potentially permitting

2   the claim to be filed late?

3           MS. KNUDSON:  That's correct, Your Honor.  We did

4   reach out to Mr. Broussard in a letter requesting additional

5   information, but we have not heard back, which is why we

6   objected to the motion and request that it be denied without

7   prejudice, so that if he can, in fact, provide additional

8   information, then we would consider that in the context of

9   excusable neglect standard.

10          THE COURT:  Okay.  All right.  I have a motion

11  before me that was filed on September 27, 2021 by Lamont

12  Broussard for leave to file a proof of claim in these cases

13  late; that is, after the claims bar date, which was July 30,

14  2020, as extended from the original bar date of June 30,

15  2020.

16          The policy behind a bar date in a bankruptcy case

17  serves the important purpose of enabling the parties in

18  interest to ascertain with reasonable promptness the

19  identity of those making claims against the estate and the

20  general amount of the claims, a necessary step in achieving

21  a goal of a successful reorganization.  In re Calpine Corp.,

22  2007 U.S. District Lexis 86514 at Pages 14-15 (S.D.N.Y. Nov.

23  21, 2007).

24          The enforcement of a bar date, therefore, allows

25  the Debtor-in-possession and other parties in interest to

1    evaluate the claims against the estate in a negotiated plan

2    that relates to the claims filed.  In re Drexel Burnham

3    Lambert Group, Inc., 148 B.R. 1002, 1008-10 (Bankr. S.D.N.Y.

4    1993).

5           Allowing late filed claims, especially after a

6    plan has been confirmed, subjects the Debtor to prejudice

7    because the settlements upon which the plan is premised

8    would then have new data, namely additional claims, that

9    weren't taken into account as part of the negotiation.  It

10   also potentially alters the distribution to creditors who

11   relies on the disclosed distribution when considering the

12   request for confirmation.  Id.  In other words, in

13   bankruptcy, dates really do matter.

14          Nevertheless, Bankruptcy Rule 9006(b)(1) permits a

15   claimant to file a late proof of claim if the failure to

16   submit a timely proof of claim was due to "excusable

17   neglect."  The burden of proving excusable neglect is on the

18   claimant seeking to extend the bar date.  In re R.H. Macy &

19   Co., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993).

20          The Supreme Court has developed a two-step test

21   for determining whether a claim filed after the bar date was

22   due to excusable neglect.  In Pioneer Investment Services

23   Co. v. Brunswick Associates Ltd Partnership, 507 U.S. 380

24   (1993).

25          First, the movant must show that its failure to

Page 33

1   file a timely claim constituted neglect, as opposed to

2   willfulness or a knowing omission, neglect generally being

3   attributed to a movant's inadvertence, mistake, or

4   carelessness.  Id at 387-88.

5           After establishing neglect, the movant must show

6   by a preponderance of the evidence that the neglect was

7   excusable.  That analysis is to be undertaken on a case-by-

8   case basis, that is based on the particular facts of the

9   case, although the Court is to be guided by and make the

10  determination balancing the following factors: (1) the

11  danger of prejudice to the Debtor; (2) the length of the

12  delay and whether or not it would impact the case; (3) the

13  reason for the delay, in particular whether the delay was

14  within the control of the movant; and (4) whether the movant

15  acted in good faith.  Id at 395.  See also, In re DPH

16  Holdings, Corp., 434 B.R. 77, 82 (S.D.N.Y. 2010).

17          Inadvertence, ignorance of the rules, or mistakes

18  construing the rules do not usually constitute excusable

19  neglect.  Midland Cogeneration Venture L.P. v Enron Corp.

20  (In re Enron Corp.), 419 F.3d 115, 126 (2d Cir. 2005).  In

21  that case, the Second Circuit, in upholding a lower court

22  determination that a late filed proof of claim would not be

23  deemed timely filed, stated:

24          "We have taken a hard line in applying the Pioneer

25  test.  In a typical case, three of the Pioneer factors --

Page 34

1   the length of the delay, the danger of prejudice, and the

2   movant's good faith -- usually weigh in favor of the party

3   seeking the extension.  We noted, though, that we and other

4   circuits have focused on the third factor, the reason for

5   the delay, including whether it was within the reasonable

6   control of the movant, and we cautioned that the equities

7   will rarely, if ever, fails a party who fails to follow the

8   clear dictates of the court rule, and that where the rule is

9   entirely clear, we continue to expect that a party claiming

10  excusable neglect will, in the ordinary course, lose under

11  the Pioneer test."  Midland 419 F.3d at 122, 323.  See also,

12  In re Ditech Holding Corp., 2021 B.R. Lexis 2085 at Page 16

13  (Bankr. S.D.N.Y. Aug. 4, 2021) and In re Musicland Holding

14  Corp., 2006 B.R. Lexis 3315 at Pages 10-11 (Bankr. S.D.N.Y.

15  2006).

16       Here, as the Debtors have noted, Mr. Broussard

17  does not set forth sufficient facts to carry his burden of

18  proof as to the reason for the delay and whether it was or

19  was not within his control.

20       In addition, unlike the ordinary case, the delay

21  here was quite significant, over a year, between the bar

22  date and Mr. Broussard's motion.  And finally, because we

23  are at this stage in the case, post-confirmation of a plan,

24  there is prejudice to the Debtors and their creditors in

25  allowing late claims.  That is recognized even where the

Page 35

1    amount of an individual claim is relatively modest, as is

2    the case here, although the amount of the claim asserted is

3    $500,000.  See, for example, Lehman Bros. Holdings Inc., 433

4    B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010).

5         The fact that a plan has been confirmed is not

6    dispositive on this issue, but it is a factor that the Court

7    should take into account, again, as recognized by the

8    Midland case at Page 129.

9         So given the record before me, I conclude that Mr.

10   Broussard has not carried his burden of proof and that the

11   motion should be denied.  I will deny it without prejudice,

12   though.  If he is able to provide sufficient evidence to

13   show that during the actual period at issue, the filing was

14   of a timely claim was not reasonably within his control, my

15   ruling is subject to reconsideration.  Again, assuming that

16   that evidence is brought forth promptly given the other

17   factors that I've already addressed.

18        So I'll ask the Debtors' counsel to submit an

19   order denying the motion on that basis.

20        MS. KNUDSON:  Thank you, Your Honor.  We'll do

21   that.

22        THE COURT:  The next matter on the calendar is Mr.

23   Hardin's motion, also for leave to file a proof of claim

24   late after the bar date.

25        The Debtors have objected to it and Mr. Hardin has

Page 36

1    responded with a filing, actually two filings: one from

2    September 23 and a more recent one in response to the

3    Debtors' objection, both of which I've read.

4            And I see you there, Mr. Hardin if you want to

5    just state your name for the record.

6            MR. HARDIN:  Had to unmute.  Thank you, sir.  My

7    name is Don Hardin.  Can you hear me?

8            THE COURT:  Yes, I can.

9            MR. HARDIN:  Thank you, sir.

10           THE COURT:  Okay.  So I know you were listening

11   carefully to the last hearing.  And as I said, I've read the

12   Debtors' objection and your response to it, as well as, of

13   course, the motion.

14           I assure you that I did not read your motion as

15   any sort of disrespect to the Court.  I think in your

16   response, you had some concern that that might have been the

17   case, but that was not the case.

18           The focus, though, as I noted during the last

19   ruling, was -- of the Debtors' objection was on what is the

20   basis for the claim having been filed late and whether it

21   was within your control or not to file it earlier or on

22   time.

23           MR. HARDIN:  Is that a question, sir?

24           THE COURT:  Well, I have what you have in the

25   pleadings.  I don't know if you want to supplement that with

Page 37

1    anything for me.

2              MR. HARDIN:  Well, sir, I'm not proud to say,

3    after the Twin Towers went down, I kind of stopped the news

4    and newspapers and things.  And I really wasn't up to date

5    on any of this stuff up until this summer when someone asked

6    me about it -- I don't remember who -- and it just came in

7    my face recently.

8              THE COURT:  Well, when did you learn about the bar

9    date?

10             MR. HARDIN:  Just probably the end of this summer

11   when I first started talking to, I guess it was Prime.  I'm

12   not sure, but I wish I would have gotten some mail or email

13   or information about this serious contact to me.

14             THE COURT:  Right.  When did you learn about

15   Purdue's Chapter 11 case, it's bankruptcy case.

16             MR. HARDIN:  Everything, like I said, is basically

17   towards the end of this summer when I first started the

18   paperwork.

19             THE COURT:  Okay.  And then you looked it up

20   somewhere and then contacted either the Debtors' lawyers or

21   Prime Clerk or someone to learn about the claims process?

22             MR. HARDIN:  Yes, sir.  I was told that it was way

23   too late, and I was also told to go ahead and submit a claim

24   to see what would happen or something like that.  So I don't

25   have a lawyer.  I don't understand a lot of this court

Page 38

```
 1   stuff, to be honest with you, but I'm just leaving it in

 2   your hands and what God has to say about it.

 3            So thank you for at least giving me the chance to

 4   be heard.

 5            THE COURT:  Okay.  Do the Debtors have any

 6   response on this?

 7            MS. KNUDSON:  Yes, Your Honor.  This is Jacqueline

 8   Knudson again from Davis Polk & Wardwell on behalf of the

 9   Debtors.  Can you hear me more clearly now?

10            THE COURT:  Yes.  There's a little bit of

11   background noise, but I can hear you.

12            MS. KNUDSON:  Thank you, Your Honor.  Your Honor,

13   as we set forth in our objection, we do believe the request

14   here does not satisfy the Pioneer factors and the excusable

15   neglect standard.

16            We did note in our motion that this is very

17   different from some of the late claims that this Court has

18   allowed as timely.  And each of those prior late claims had

19   set forth individualized assertions and provided a

20   justifiable reason, something outside of the individual's

21   control for the untimely filing.

22            And as we noted in our objection, Your Honor,

23   other than Mr. Hardin noting that he was preoccupied with

24   getting his next prescription, we don't think Mr. Hardin has

25   provided any reason for his delay, which is over 14 months
```

Page 39

1     after the bar date.  We also would note that we believe the

2     bar date program was extensive and did reach over 98 percent

3     of creditors over eight times.

4                  So with that, Your Honor, I think we will stand on

5     our papers, but would respectfully request that the Court

6     deny the motion.

7                  THE COURT:  Okay.  I'm going to hold the motion

8     for now.  I note that Mr. Hardin has prepared, and I think

9     filed his proof of claim, which is quite detailed.  I'm

10    holding it because, unlike Mr. Broussard, he has given me

11    additional information as to why he didn't file his claim on

12    a timely basis, which is basically that he doesn't pay

13    attention to media.  That may or may not ultimately be a

14    sufficient excuse.

15                 Obviously, the delay here is significant, as I

16    noted with regard to the last matter, Mr. Broussard's

17    motion.  In fact, the motion here is filed even a little

18    later than Mr. Broussard's on October 6, 2021.

19                 On the other hand, as I said, he has given me some

20    additional information on the excuse.  And in addition, it's

21    not clear to me at this point whether there will be

22    significant other requests for late claims.

23                 I will note that there is a, I believe,

24    appropriate cutoff date in the rule and in the statute for

25    late claims, which would be the effective date of the plan.

Page 40

1    See In re St. James Mechanical, Inc., 434 B.R. 54, 61

2    (Bankr. E.D.N.Y. 2010) at 61-62 actually.  And if it turns

3    out that the granting of Mr. Hardin's motion would be, in

4    essence, law of the case for lots of other motions, then I

5    won't grant it.  But if, frankly, very few people or no

6    other people apply, then I will grant it.

7            So I will ask the Debtors to hold off on an order

8    on this.  I'll take it under advisement and see what the

9    status is of other motions to file late claims, if there are

10   others in the future and whether they unfortunately fall

11   into the fact pattern that Mr. Hardin has laid out for me

12   and if and when the effective date occurs.

13           You need to update me, Ms. Knudson.  And again, if

14   there are a small number or no additional motions that fall

15   into this fact pattern, I'm likely to grant Mr. Hardin's

16   motion.  If there are many of them, then I'll probably deny

17   it.

18           MS. KNUDSON:  Thank you, Your Honor.

19           THE COURT:  Okay.  I hope that was clear, Mr.

20   Hardin.

21           MR. HARDIN:  Thank you, sir.  I appreciate your

22   time and consideration.  Very nice.

23           THE COURT:  If I do grant the motion, my taking it

24   under advisement for this period won't delay any

25   distribution to you because there's that second process to

Page 41

```
 1     process your claim.  It's on file, so you can pursue that

 2     process if I do grant your motion, along with everybody

 3     else.

 4               MR. HARDIN:  I'm sorry, sir, but I really didn't

 5     understand a whole lot of what you just said.

 6               THE COURT:  Under the plan, there's a set of

 7     procedures for the Personal Injury Trust that's funded under

 8     the plan with, in essence, the first dollars out, to review

 9     all of the claims like yours for personal injury to

10     determine whether they should be allowed or not.

11               There's a whole mechanism in the plan for whether

12     you ask for a prompt review, which trades off a streamline

13     review for an assured lower payment, if it's allowed, versus

14     a slower review that may or may not result in a higher

15     payment, but all of that review starts no earlier than the

16     effective date of the plan.

17               So I'm delaying my ruling on your motion until

18     that same date, the effective date on the plan, so any

19     distribution to you is not going to be delayed by my taking

20     your motion under advisement.

21               MR. HARDIN:  Okay.  Thank you, sir.  I wish I

22     could understand better, but...

23               THE COURT:  Well, you should get --

24               MR. HARDIN:  Does the court or does Prime advise

25     me as to what my next step would be, other than what you
```

Page 42

1    just told me?

2            THE COURT:  I think probably the best thing for

3    you to do, because I understand you don't have a lawyer, is

4    to reach out to the lawyers for the Official Unsecured

5    Creditors Committee, and they can point you to the documents

6    that will show you the process for getting your claim

7    allowed.

8            MR. HARDIN:  Okay.  And who is that again?

9            THE COURT:  Well, they're on the docket of the

10   case.  It's the law firm Akin Gump.

11           MR. HARDIN:  Oh yes.

12           THE COURT:  And they represent the Official

13   Unsecured Creditors' Committee.  But again, those processes

14   only apply for people whose claims are allowed.  Yours is

15   not currently allowed because it was filed late.  But if I

16   do grant your motion, then you go into that process, so to

17   understand that process, you could reach out to them.

18           MR. HARDIN:  That's great.  I appreciate it,

19   Judge.  Should I stay on for the remainder of the meeting?

20           THE COURT:  No, you don't need to stay on.  You

21   can sign off.

22           MR. HARDIN:  Okay.  Thank you very much.  God

23   bless you all.  See you later.  Bye-bye.

24           THE COURT:  Okay.  The next matter on the calendar

25   is Ms. Lubinski's motion for, I gather, immediate payment of

Page 43

1    her claim.  And I see Ms. Lubinski there on the screen.

2              MS. LUBINSKI:  Yes.  Hello, Your Honor.

3              THE COURT:  Good morning.  I've read that motion

4    and the Debtors' objection to it.  Again, I've read both of

5    those matters.  I've dealt with this issue before in the

6    context of other similar motions in the case, but I'm happy

7    to hear brief oral argument on it if people want to say more

8    than what they've said in their filed papers.

9              MS. LUBINSKI:  Sure.  I appreciate that.  My name

10   is Stephanie Lubinski, and our life was completely altered

11   (sound glitch) due to the prescription of OxyContin to my

12   husband, Troy Lubinski, which is actually his birthday

13   today.  It was 25 years of uncertainties and desperations

14   for him to overcome this medication.

15             On September 22nd of 2020, he committed suicide.

16   The medication that was given to him totally changed him.

17   He was given 40 pills a day to take, and that was not

18   enough.  We had to file bankruptcy, we lost our home, we

19   lost many personal items that he had to sell.  It was 25

20   years of not a life that we chose.

21             Our monies -- that we were blue collar workers.

22   He was a firefighter and I worked for a union, and all of

23   our monies went to pay for the Sackler family to have the

24   life, the opulent life they had.

25             My husband's life is no more special than all the

Page 44

1   other victims, and you just see all these names that are

2   paid out to lawyers and people.  I can't afford a lawyer.  I

3   cannot understand most of the things that are happening.

4   All I know is what this drug has done to our family and many

5   others.

6          I have stage 4 cancer now.  I've taken care of my

7   husband for those 25 years getting him through all of that.

8   And in the end, he's gone because there was no help for him

9   from what that caused, and now I have no one to take care of

10  me and I don't have time to sit and wait and try to get some

11  justice.  And I don't even want the money to come out of the

12  claimants' money; I want it to come from them, the Sackler

13  family because they are not suffering at all, and it's just

14  not fair.  We didn't choose this; it was pushed upon us, and

15  I just would really like some consideration for us victims.

16         And I appreciate your time, Your Honor.  Thank

17  you.

18         THE COURT:  Okay, thank you.

19         MR. McCLAMMY:  Good morning, Your Honor.  Jim

20  McClammy of Davis Polk & Wardwell on behalf of the Debtors.

21         Just briefly, Your Honor.  As you noted in our

22  papers, this motion filed by Ms. Lubinski and others like

23  it, you know, the Debtors have viewed with great sympathy,

24  and I can't even imagine how hard it is to experience what

25  Ms. Lubinski's gone through or to be able to share that with

Page 45

1    us here today, but I did want to at least note that for the

2    record.

3            Otherwise, Your Honor, as this Court has addressed

4    before, the bankruptcy system doesn't allow for the payments

5    requested in the form that Ms. Lubinski has requested here,

6    and we stand on what we've put in our papers for purposes of

7    our objection.

8            THE COURT:  Okay.  All right.  Miss Lubinski, I

9    remember you and your letter well.  I read it from the bench

10   to the parties in the case --

11           MS. LUBINSKI:  Thank you.

12           THE COURT: -- to urge them at a time when there

13   was no agreement on a plan to agree to get to the point

14   where money could flow to people like yourself and to abate,

15   to the extent one can, the opioid crisis.

16           I also tried very hard at the beginning of this

17   case, as did many of the people in this case, including the

18   Creditors' Committee and the Debtors, to have an emergency

19   fund, which was really unheard of in bankruptcy law, at the

20   start of the case to go out before a plan.

21           Because it was so unusual to have a fund like

22   that, $200/$250 million, you really needed almost complete

23   agreement to let it happen and there wasn't from certain key

24   parties in the case.  And it wasn't from the Sacklers; it

25   was from creditors in the case who opposed it.

1          So the only way that you normally have payments to

2     creditors in a bankruptcy case is through a plan when the

3     plan goes effective, and that's because there are so many

4     creditors, you can't pick and choose who you pay.

5          And that's where we are now.  A plan has been

6     confirmed; it's currently on appeal.  Promptly after it goes

7     effective, and that requires there not being a stay in place

8     and, of course, it requires the appeal being granted -- and

9     I don't know whether that will happen or not -- that's when

10    the distribution process starts for everyone.

11         And as much as I would like to get money to people

12    now, I don't have the power to do that.  It only would

13    happen under the plan, or if the plan's not confirmed, some

14    other plan that's negotiated in the future, so I can't grant

15    your motion.

16         The Debtors are not objecting to your claim;

17    they're just objecting to having a payment to you now, as

18    opposed to through the plan.

19         MS. LUBINSKI:  Okay.

20         THE COURT:  So I will ask the Debtors to prepare

21    an order that denies the motion.

22         MR. McCLAMMY:  We will do that, Your Honor.

23         THE COURT:  Okay, thank you.

24         MS. LUBINSKI:  Thank you.

25         THE COURT:  Okay.  All right.  The last matter on

Page 47

1    the calendar is Ms. Isaacs' motion, which is captioned,

2    motion for clarification; it's dated September 30.  And in

3    it, Ms. Isaacs seeks various forms of relief, in part, to

4    correct what Ms. Isaacs believes is an incorrect record with

5    regard to an earlier motion that she filed on August 17.

6            And then, in addition, "to refute any

7    distributions of any assets at all to any individual,

8    entity, organization, corporation, attorney, or otherwise

9    until the Appellate Court renders their decision, along with

10   the recall of any and all funds previously ordered to be

11   paid."  Second, "refute the sale of any equipment or

12   entities of Purdue Pharma, subsidiaries and/or any company

13   under the umbrella of the Purdue Pharma/Sacklers various

14   trusts in the U.S. and around the world."

15           And then last, "request the immediate

16   investigation by a third party into the bankruptcy

17   proceedings, including but not limited to the transfer of

18   all funds between all the parties involved in these

19   proceedings."

20           I also have the Debtors' objection to that motion.

21           So again, I've reviewed those pleadings.  And I've

22   also received in the last couple of days, in addition to the

23   email that I mentioned that I got this morning, an email

24   from Ms. Isaacs from a couple of days ago in which she

25   states that -- well, it wasn't clear to me, frankly.  But I

Page 48

```
 1    believe she states that I haven't ruled on something that

 2    she had submitted and that she's having difficulty obtaining

 3    pro bono counsel.

 4           So I'll address that email also, Ms. Isaacs,

 5    before we're done today, but my focus is on this motion.

 6    And again, with respect to the motion, I've read the

 7    pleadings, but I'm happy to hear brief oral argument on it.

 8           MS. ISAACS:  Thank you, Your Honor.  I'm a little

 9    emotional after hearing the last woman.  I'm really sorry.

10    My heart goes out to Miss Lubinski.  I'm really sorry for

11    your pain and sorrow.

12           Again, here we go, just like last time we did

13    this, and I got upset in the beginning.

14           If everybody -- and I wrote it down, so I don't

15    get off the trail.  If everyone could please listen

16    carefully so you can all get a clear understanding of what

17    is truly going on within these proceedings and all judicial

18    proceedings across the nation, I'd appreciate you.

19           An act to regulate the time and manner of

20    administering certain oaths first law passed in the United

21    States Congress after the ratification of the U.S.

22    Constitution.  It was signed by President George Washington

23    on June 1st, 1789.  Since that very time, every law that has

24    been effectuated has been based upon prior procedures that

25    became law and case precedence that paved the way for a new
```

1    law.

2          Now the attorneys have so many cases to muster

3    through looking for loopholes to proceed with cases to prove

4    their point of intent, and here is why the courts have the

5    authority to make decisions based upon antiquated laws that

6    no longer serve the people in today's socio-economic

7    environment.  All the laws in our country have been made up

8    by those in power would agree, reading all the documents for

9    any procedure and any case law is irrelevant when one really

10   looks at how every case in the legal justice system and law

11   books were made up by the past happenings that were put into

12   the law book.

13         It is time we look to the future to see how

14   damaging all of the past laws have created the allowance of

15   the Presidential declaration of the current national public

16   health and safety emergency.  It is time to once again pause

17   and go back to proceeding with caution, that as a society do

18   not continue to contribute to the public health and safety

19   emergency.

20         The CDC reported two days ago that there were over

21   100,000 deaths in the past year.  For every loved one,

22   there's mothers, fathers, siblings, children, aunts, uncles,

23   cousins, friends, and colleagues that are grieving and

24   tearing the families apart.  These casualties behind the

25   deaths are suffering from mental and physical disease due to

Page 50

1    the stress due to the laws that were made up by the

2    government and the attorneys that made those laws through

3    the use of the government, stress that is creating somatic

4    symptoms that is causing the medical community to be

5    overladed with patients and staff that have no idea how to

6    treat those in mourning for those that have passed on and

7    continue to pass on at an unprecedented rate.

8           Your Honor, once again, I did not receive service

9    by the Debtors of their objections.  I suspected they filed

10   their objection and began hunting for it.  I have not been

11   able to find the Prime Clerk docket; it has been down for

12   nearly a week, and I cannot afford the Pacer account for

13   access to documents, which is discriminatory to a disabled

14   party that is trying to participate in this case.

15          Notwithstanding Ben Higgins of the Trustee's

16   office was kind enough to forward the order for my review

17   late yesterday, and I thank you.  But it did not give me

18   enough time to prepare an oral argument for you today.  I'm

19   doing the best that I can.

20          First off, I'm not even going to speak to all the

21   rules and the cases the Debtors cited, as they are all made

22   up since 1789, many of which contradict one another.  I have

23   had more than my share of countless conversations with

24   attorneys, law clerks, and various court menus and NYLAC,

25   and everyone says they do not know what is going on in this

Page 51

1    case.

2              We have never had such a case of this capacity

3    ever in the U.S. history where a family wishes to claim

4    bankruptcy based on a piece of paper that says they are a

5    corporation and the family is 100 percent owner of the

6    corporation, Purdue Pharma, who has/is killing hundreds of

7    thousands of living humans.  That's the claim

8    (indiscernible) with the criminal prosecution equitable

9    mootness from these proceedings.

10             What happens to the bankruptcy proceedings if the

11   Sacklers are rightfully arrested for their white collar

12   crimes?  I am quite certain all payments will stop, drug

13   dealers' assets gets seized immediately.  Although all of

14   this can change at any moment the Sacklers decide to pull a

15   hissy fit again and David Sackler threatens to pull the

16   settlement altogether one more time.

17             Why are these white collar criminals calling the

18   shots?  Notwithstanding moving all the money around and

19   paying out these grandiose fees to attorneys and consultants

20   and everyone else that has their hands in the cookie jars

21   only to be nothing left in the end.  There will not be a

22   dime for the claimants or the state coffers.  The attorneys

23   and consultants will be the only ones to get paid as they

24   are billing monthly to make sure they can proceed in this

25   charade.

Page 52

```
 1              Now I will speak to the timeline of events in the
 2    Debtors' objection.  The Debtors assert the last date to
 3    file an objection to the settlement was July 18, 2021,
 4    according to the made-up, antiquated bankruptcy laws.  Let
 5    me remind this Court, I had to fire my attorney
 6    (indiscernible) August of 2021 because they, like the UCC,
 7    are not protecting individual claimants that have been
 8    grossly harmed by Purdue Pharma, the Sackler family, and
 9    these puppet masters with the FDA have created the public
10    health and safety emergency.
11              This Court is still accepting their claims to the
12    improprieties in this action, special consideration to be
13    given for the fact that I had to step forward on behalf of
14    my son, Patrick Brian (indiscernible), myself, the American
15    people.
16              I filed in a timely fashion (indiscernible)
17    immediately following the determination by counsel for his
18    misconduct.  Had my counsel done his job, none of this would
19    be going on.  Again, the Debtors are filing the Fourteenth
20    Amendment of the made-up constitution, specifically due
21    process, is recorded via Zoom by Your Honor that I did not
22    file in a timely fashion.  And then upon a relook of the
23    dates, you corrected yourself; yet, the Debtors prepared
24    denial (indiscernible) filing in the untimely as e-signed by
25    Your Honor.
```

1    This is how the legal justice system falls back on

2    previous rulings that are incorrect and made up through the

3    past centuries and creates a domino effect of damage to the

4    public.

5    Because of all the incongruencies in this case and

6    all the moving pieces, it's imperative that a third party be

7    involved and provide full transparency on everything that's

8    transpired in this case.  This case involves the most

9    egregious and heinous crimes against humanity in America and

10   must have an oversight committee that is objective, not the

11   UCC made up of bad actors with vested interest that are now

12   also claiming bankruptcy, like Blue Cross/Blue Shield and

13   CVS.

14   All the continual nonsense of this party and that

15   party hast not met the burden of proof or test of past laws

16   that were made up means nothing.  Loving humans are

17   continuing to die at a vast rate and grief is rippling like

18   a pebble in a pond and to a mental health pandemic of our

19   nation.  All of the consenting states and the Debtors'

20   attorneys should have their licenses revoked.  They're all

21   putting profits in their pockets over saving human lives is

22   absolutely unconscionable and inhumane.

23   Note Paragraph 3 of the Debtors' objection speaks

24   to there must be a mistake.  The order prepared and signed

25   by this Court was a grievous mistake.  Please watch the

Page 54

1   replay of the Zoom recording before reading off your

2   prepared ruling you've brought into the courtroom this

3   morning.

4          Note Paragraph 4 alludes that on the September 13,

5   2021, omnibus hearing, I had the ability to object to

6   payments being made to the four executives.  That motion

7   occurred prior to this Court recognizing me as a pro se

8   litigant and hearing my motion.

9          At that time, I did not proceed to give integrity

10  or morality to (indiscernible) in that matter, since I was

11  unaware that said motion was on the docket.  I was surprised

12  and did not get my objection raised to the Court three days

13  prior to the hearing, as required by the antiquated made-up

14  laws of procedure.  I was still playing catchup from Sean

15  Hannigan dropping the ball.

16         Everything that's gone on in the legal justice

17  system since George Washington has set society up for

18  failure and to make the elite more powerful and the wealthy

19  wealthier as the layperson who has no knowledge of the law

20  tries to navigate their way through seeing justice for the

21  American people, nor can a layperson like myself who's on

22  disability do so, and disability that is derived directly

23  from the Sacklers.

24         The confirmation of the bankruptcy is setting

25  another made-up case precedence that will be disastrous.

Page 55

1    The unconstitutionality of these proceedings onto the

2    victims, the widespread (indiscernible) as referred by

3    releases is setting a vehicle in motion for big pharma

4    corporations, every big pharma corporation to do the same,

5    such as Mallinckrodt that's already in process and others.

6              Should this continue, no one will ever be held

7    accountable for the heinous crimes against humanity that are

8    fracturing the very fabric of the families in America

9    because we'll have a new case precedence that's been made

10   up.

11             The Sacklers did --

12             THE COURT:  Ms. Issacs, I'm going to interrupt you

13   now.  I really -- I'm dealing with the motion.

14             MS. ISAACS:  I'm almost done.  I'm almost done.

15             THE COURT:  All right.

16             MS. ISAACS:  I really am.  Please, Your Honor, I'm

17   almost done.  This is very heartbreaking.  There is no love

18   involved in this.

19             The Sacklers justice, this lack of justice, this

20   Court and the attorneys' malfeasance are to the people is

21   why they're dying and being permanently harmed.  The

22   (indiscernible) white collar crimes (indiscernible) press

23   statement that white collar crimes are not tolerated, DOJ

24   will be taking action.  I'm patiently waiting for Miss

25   (indiscernible) to honor her word.

1          Now I've been watching and listening carefully at

2     the beginning of the September omnibus hearing.  Your Honor

3     came into the courtroom with a notebook of prepared

4     decisions to read after the oral arguments phase, and it was

5     based upon the paperwork submitted.  When I actually

6     represented myself, a 45-minute oral argument, the issues

7     raised were not addressed.  Rather, we all heard about your

8     20-year history on the bench and how you could have been in

9     private practice and (indiscernible).

10          Judge, you had it all wrong, along with reading

11    off of your previously prepared ruling.  This is all wrong.

12    Why even have oral arguments when decisions are made prior

13    to hearing?  It's all ridiculous and paving the way for more

14    corporations to hide out in bankruptcy to avoid

15    accountability.

16          And it's the truth -- it's not truth or justice.

17    The Sackler family has strongarmed this Court and

18    perpetually lied to DOJ and FDA, who permitted the Sacklers

19    to use officials to pay off if they avoid prosecutions since

20    the (indiscernible).

21          The Sacklers' proposal of $4.3 billion over nine

22    years is going to be blown through as these proceedings that

23    elevate the Supreme Court and possibly a World Court.  Why a

24    World Court?  Because Richard Sackler is so addicted to

25    money that the Sacklers (indiscernible) countries; hence,

Page 57

1    the poisoning of loving humans around the globe.  It has

2    already been identified that he's already paid out to

3    attorneys and consultants to date exceed $1 billion.

4         Why are the attorneys and consultants not being

5    paid out over nine years?  They're not dire of being harmed.

6    The dam must be closed to stop loving humans with feelings

7    and emotions are dying and previous (indiscernible) to a

8    halt.  Not one more payment should be made and everyone

9    should be brought to an equal playing field and practice

10   love.  Everything is now on Zoom.  This includes everyone's

11   behaviors in the courtroom.

12        It's just everyone tread lightly as all eyes are

13   on this case and "Dopesick" has aired on national television

14   and the cat is out of the bag as to how addicted the

15   Sacklers are to money.  Richard Sackler is so busy trying to

16   create an empire (indiscernible) and that of Arthur Sackler

17   at the expense of everyone's mental health due to the death

18   (indiscernible) family's involved in 50 states and Puerto

19   Rico, including all of the participants in these

20   proceedings, the attorneys and consultants and everybody is

21   being affected.

22        Richard Sackler continued to smear peoples'

23   reputations and create widespread stigma saying it was the

24   abuser's fault.  I argued Richard Sackler is an addict, a

25   bully, an abuser, and a fraudulent manipulator and to people

Page 58

1    and our government.  How does everyone sleep at night?

2          I respectfully request the order be corrected to

3    reflect the truth of the timely filing and third-party

4    investigation and object to any and all payments going

5    forward until this matter reaches a final conclusion, albeit

6    the Appellate Court and Supreme Court or a World Court.

7          I am not interested in hearing about all the

8    integrated procedures and case laws.  Times have

9    progressively changed and the legal justice system needs an

10   entire overhaul.  If this to proceed, the DOJ might has well

11   shred the Declaration of Independence, the Constitution only

12   causing every law (indiscernible) legal document in the

13   trash; just start over before everyone becomes extinct.

14          It's time for someone to stand up to Richard

15   Sackler and the Sackler family and their entire team once

16   and for all.  You still have the opportunity to be on the

17   right side of history and stop this façade before an

18   uprising occurs across our nation as families across the

19   land are angry.

20          Thank you, Your Honor.

21          THE COURT:  Okay.  All right.  Do the Debtors have

22   any response?

23          MR. McCLAMMY:  Very briefly, Your Honor.  I think

24   as Your Honor has noted on prior occasions as we've heard

25   from Ms. Lubinski and as we've now heard from Ms. Isaacs,

Page 59

```
 1    you know, we all I think really understand that the impacts
 2    of what we were addressing with these cases have been
 3    unbelievably difficult and unbelievably personal.
 4          And as we think Your Honor knows, the Debtors
 5    approached these cases really in a way that's unprecedented
 6    and was able to get consensus around a plan of
 7    reorganization that had at its focus putting the money that
 8    would be available through the plan of reorganization for
 9    abatement and to compensate victims.
10          I believe, as we set out in our papers, there has
11    not been a basis set out for either reconsideration, to the
12    extent the motion can be construed as a motion for
13    reconsideration.  And to the extent that there a request
14    with respect to the payments or, you know, what perhaps
15    could be construed as appointment of an examiner, we believe
16    that there's no basis set out in the papers there based on
17    the record that the Court has gone through, including at
18    confirmation.
19          And for those reasons, Your Honor, and as we
20    stated in our papers, we would ask the Court to deny the
21    motion.
22          THE COURT:  Okay.  All right.  Again, I have
23    before me a motion by Ellen Isaacs that's dated September
24    30, 2021.  It's captioned a motion for clarification, and in
25    it, Ms. Isaacs various forms of relief, the first of which
```

Page 60

1    was, "An immediate correction to the denial of an earlier

2    motion of hers dated and filed -- well, dated July 18 and

3    filed -- I'm sorry, excuse me --  -- dated August 16 and

4    filed August 17, 2021.

5            And then, in addition, seeking other forms of

6    relief that were actually quite similar to the relief sought

7    in that motion, that August 17, 2021 motion; namely,

8    injunctions of distributions and an investigation of the

9    bankruptcy case while everything remains frozen.

10           I appreciate that Ms. Isaacs is pro se.  I also

11   appreciate that she has had terrible tragedies in her life.

12   But at the same time, I need to address her motion in the

13   context that it must be put in under the Bankruptcy Code and

14   Bankruptcy Rules.

15           I'll address first the request for clarification

16   of the record.  I entered an order on June 3, 2021 approving

17   the Debtors' disclosure statement for their Chapter 11 plan,

18   and that also set forth a schedule for the Court's

19   consideration of the Debtors' request for confirmation of

20   that plan that laid out in some detail as the Debtors has

21   already previously proposed, and as far as the preparation

22   for the disclosure statement hearing had been approved by

23   this Court going up to the start of the confirmation

24   hearing.

25           It was clear that there were likely to be multiple

1    objections to confirmation of the plan and a need for an

2    orderly discovery process, as well as a briefing process,

3    related to the Debtors' request for confirmation and those

4    anticipated objections.  Therefore, the order laid out a

5    timetable for filing objections to confirmation, discovery

6    related to the confirmation request, and those objections

7    and the filing of replies to the objections.

8           As the parties worked through their discovery

9    process, that confirmation procedures order was modified

10   three times through a July 30th modification, but the

11   objection deadline for filing objections to confirmation of

12   the plan had already been set and that deadline was July 19,

13   2021.

14          I agreed and the Debtors agreed to take certain

15   objections a few days after that, in light of their efforts

16   to resolve as many objections as they could before they were

17   filed.  But obviously to prepare for a confirmation hearing,

18   one needs an objection deadline so that all the parties can

19   focus on the issues that are to be heard at that hearing.

20          The confirmation hearing itself started on August

21   12, 2021 and continued for several days.  It was an

22   evidentiary hearing, which again, of course, required

23   extensive preparation, which the parties who had filed

24   objections and were primarily going to be involved in that

25   hearing undertook.

Page 62

1          On August 17, well into the course of the

2     confirmation hearing, Ms. Isaacs filed what was captioned as

3     an emergency request for immediate injunction and hearing

4     for due process, production for evidentiary documents, and

5     other relief.  It's a fairly lengthy pleading, but on the

6     page preceding the signature line, it sought:

7               (1) an immediate injunction stopping the above-

8     captioned bankruptcy proceedings based on the text of the

9     emergency request, which appears at Docket No. 3587.  It's

10    clear that that included or requested an injunction and

11    cessation of the confirmation hearing itself in midstream

12    and, indeed, referred to testimony during that hearing;

13              Second, it sought all medical examiner reports

14    collected by a third party for every accident overdose and

15    homicide by drug since the first prescription of OxyContin.

16    Upon review of opioid related cases, the surviving family

17    members are to be notified of these proceedings to determine

18    if they have a valid claim, followed by continual relief for

19    the families due to Purdue Pharma's devastation to the

20    families and friends across our nation, much like a fund

21    developed for the families after 9/11;

22              (3) a full-blown investigation of overdoses by

23    Valium and Librium since the first prescriptions;

24              (4) release to the public of all the discovery,

25    evidentiary, interrogatories, video fees, pictures, emails,

Page 63

1    taped conversations that the Court is holding/obtaining;

2           (5) allow sufficient time for the ballots to be

3    returned regarding the bankruptcy only;

4           (6) a full-blown investigation into Janet Woodcock

5    DEA's involvement with approving OxyContin and other manmade

6    synthetic drugs purporting to relief pain, see Vioxx;

7           (7) all votes for each state to be recounted.

8    Should a state AG have voted against the will of the people

9    for their specific state, they are to be immediately removed

10   from office;

11          (8) seizure of all Purdue Pharma, the Sacklers'

12   assets and holdings, including Mundi pharmaceutical;

13          (9) the U.S. AG and UN to oversee the entire

14   bankruptcy proceedings and criminal prosecution;

15          (10) starting with the Constitutional law, the

16   precedence's, and all the other reasons stated above require

17   an immediate injunction entered immediately and a hearing

18   should be granted as soon as possible for myself, Ellen

19   Isaacs, and we the people.

20          Being in the middle of the confirmation hearing, I

21   determined not to enjoin the hearing and, instead, scheduled

22   the hearing on the foregoing request to be held after the

23   conclusion of that hearing, and it was held on September 13,

24   2021.

25          At that hearing, Ms. Isaacs stated many of the

Page 64

1    things that she has stated today, and it was clear to me

2    asked that I reconsider my bench ruling, which I was in the

3    process of turning into a modified memorandum of decision.

4    As stated at Page 160 of the transcript, please refer this

5    case -- this was Ms. Isaacs speaking:

6              "Please refer this case to the Justice Department

7    for criminal prosecution, overrule the corporate and

8    bankruptcy laws, and escalation to a World Court to stop the

9    Sacklers from conducting business in the pharmaceutical

10   industry worldwide.  Based on the facts of fraud, I

11   respectfully request on behalf of myself and the American

12   people that Your Honor reverse course and reconsider the

13   bench ruling for confirmation and enter an order denying

14   this settlement agreement in its entirety."

15             Ms. Isaacs subsequently filed a timely appeal of

16   the confirmation order that was entered September 17 and a

17   motion on October 5, 2021 for a stay of that order pending

18   appeal.

19             I, at the conclusion of the September 13, gave Ms.

20   Isaacs my bench ruling on her emergency motion, which Ms.

21   Isaacs, you should understand, it was not written in

22   advance.  I do not write my rulings in advance.  I didn't

23   write my bench ruling in advance.  I do, however, come

24   prepared with memos setting forth the law and the pleadings

25   that the parties have filed, as I would hope every judge

Page 65

```
 1    would, since preparation is a key to being an effective

 2    judge.

 3               And it was based upon my understanding of your

 4    remarks, as well as your motion, and the objectors remarks

 5    and the objection to your motion that led to my ruling.

 6               Your objection to the plan -- I'm sorry -- your

 7    emergency motion was, in fact, filed in the middle of the

 8    confirmation hearing, and I was not going to enjoin the

 9    confirmation hearing on that basis.  I don't believe,

10    therefore, there's anything to correct in the record on that

11    point.

12               And I treated your motion, since the only thing it

13    would properly be construed as, as a motion for

14    reconsideration of my bench ruling, and gave you my reasons

15    why I would not reconsider that ruling.  In my order dated

16    September 15, 2021, I went through them in even more detail.

17               The emergency motion did not set forth a basis for

18    reconsideration under any of the grounds set forth in

19    Bankruptcy Rule 9023 or 9024.

20               As far as the other relief that has been sought,

21    I've considered your request for a stay of all activity in

22    the case pending the appeal and ruled on that previously.

23    The issue of a stay undoubtedly will come up again if the

24    appeal is denied; it will not come up obviously if the

25    appeal is granted.
```

Page 66

1          But that issue is no longer before me, nor is your

2     request for other relief insofar as it pertains to matters

3     that are on appeal to the District Court.  I don't have

4     jurisdiction over those issues anymore given that they are

5     before the District Court on appeal, so I will deny the

6     motion in its entirety.

7          I'll ask the Debtors to submit an order to that

8     effect.

9          MR. TROOP:  We'll do that, Your Honor.  And to the

10    extent Ms. Isaacs has mentioned that there may have been an

11    issue with (indiscernible) and access, I just wanted to note

12    for the record that we will also be looking into that.

13          THE COURT:  Where should they send pleadings, Ms.

14    Isaacs?

15          MS. ISAACS:  To Ryansopc@gmail.com.  Thank you.

16          THE COURT:  Okay, very well.  I think that

17    concludes today's calendar.

18          (Whereupon these proceedings were concluded at

19    11:53 AM)

20

21

22

23

24

25

```
 1                     I N D E X

 2

 3                       RULINGS

 4                                        Page      Line

 5

 6   Debtors' motion for authority to pay or reimburse the fees

 7   and expenses of the Non-Consent State Group, the Ad Hoc

 8   Committee, and the MSGE Group Granted      23        21

 9

10   Binder & Schwartz Compensation

11   Motion Granted                            25        20

12

13   Late Claim Motions by Carpenter/Maae

14   Granted                                   27        25

15

16

17

18

19

20

21

22

23

24

25
```

Page 68

1              C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7    *signature*

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 22, 2021

[& - 77]                                                                              Page 1

| & |
|---|
| **&**   2:18,20 6:3 12:12 13:22,22 24:25 25:2,23 26:15 28:12 32:18 38:8 44:20 67:10 |

| 1 |
|---|
| **1**   32:14 33:10 57:3 62:7 |
| **10**   63:15 |
| **10-11**   34:14 |
| **100**   51:5 |
| **100,000**   49:21 |
| **10017**   6:6,23 |
| **10019**   6:16 |
| **1002**   32:3 |
| **1008-10**   32:3 |
| **105**   2:5 |
| **10601**   1:14 |
| **10:00**   4:19 5:5 |
| **10:12**   1:17 |
| **11**   37:15 60:17 |
| **11/18/2021**   4:19 5:5 |
| **1129**   25:6,20 26:3 |
| **113**   35:4 |
| **115**   33:20 |
| **11501**   68:23 |
| **11:53**   66:19 |
| **12**   61:21 |
| **120-21**   35:4 |
| **12151**   68:7 |
| **122**   34:11 |
| **126**   33:20 |
| **129**   35:8 |
| **12909**   16:15 |
| **13**   13:4 54:4 63:23 64:19 |
| **14**   4:16 30:12 38:25 |
| **14-15**   31:22 |
| **148**   32:3 |

| 15 |
|---|
| **15**   15:5 19:16,20 24:17,21 25:17,18 65:16 |
| **16**   34:12 60:3 |
| **160**   64:4 |
| **161**   32:19 |
| **17**   47:5 60:4,7 62:1 64:16 |
| **1789**   48:23 50:22 |
| **18**   1:16 2:1 4:17 52:3 60:2 |
| **19**   12:20 21:16 61:12 |
| **19-23649**   1:3 |
| **1993**   32:4,19,24 |
| **1st**   48:23 |

| 2 |
|---|
| **2**   33:11 |
| **20**   56:8 67:11 |
| **200**   45:22 |
| **2003**   16:15,15 |
| **2005**   16:17 33:20 |
| **2006**   34:14,15 |
| **2007**   31:22,23 |
| **2010**   33:16 35:4 40:2 |
| **2020**   29:7 31:14 31:15 43:15 |
| **2021**   1:16 2:1 4:16 4:17 21:16 28:9 31:11 34:12,13 39:18 52:3,6 54:5 59:24 60:4,7,16 61:13,21 63:24 64:17 65:16 68:25 |
| **2085**   34:12 |
| **21**   31:23 67:8 |
| **22**   16:17 68:25 |
| **22nd**   43:15 |
| **23**   36:2 67:8 |
| **248**   1:13 |
| **25**   23:7 43:13,19 44:7 67:11,14 |

| 250 |
|---|
| **250**   45:22 |
| **27**   31:11 67:14 |
| **272,325.97**   2:19 |
| **29**   16:17 |
| **2d**   33:20 |

| 3 |
|---|
| **3**   17:10,16 19:2 33:12 53:23 60:16 62:22 |
| **3/11/2021**   2:19 |
| **30**   29:6 31:13,14 47:2 59:24 |
| **300**   1:13 68:22 |
| **30th**   61:10 |
| **31**   6:15 |
| **323**   34:11 |
| **330**   26:3 68:21 |
| **3315**   34:14 |
| **335**   16:17 |
| **355**   32:19 |
| **3587**   62:9 |
| **360**   32:19 |
| **363**   2:5 16:10,11 16:19 |
| **366**   6:22 |
| **367.05.**   2:20 |
| **3723**   3:24 4:3,6 |
| **380**   32:23 |
| **3864**   4:10,13,20 5:3 |
| **387-88**   33:4 |
| **3893**   3:2,10,14 |
| **3894**   3:2,4 26:21 |
| **3895**   3:2,7 26:22 |
| **3896**   4:20 |
| **3897**   3:2,17,21 |
| **3916**   5:5 |
| **395**   33:15 |
| **3962**   2:21 |
| **3986**   2:6,12 12:21 |
| **3990**   4:7 |

| 4 |
|---|
| **4**   13:17 17:10,16 19:2 25:6,20 26:3 33:14 34:13 44:6 54:4 62:24 |
| **4.3**   56:21 |
| **40**   43:17 |
| **4094**   2:14 |
| **4098-1**   27:6 |
| **4099**   3:21 |
| **4100**   3:14 |
| **4101**   4:14 |
| **4102**   4:3 |
| **419**   33:20 34:11 |
| **433**   35:3 |
| **434**   33:16 40:1 |
| **45**   56:6 |
| **450**   6:5 |

| 5 |
|---|
| **5**   63:2 64:17 |
| **50**   57:18 |
| **50,000**   13:17 |
| **500,000**   35:3 |
| **503**   17:10,10,16 18:8 19:2 |
| **507**   32:23 |
| **52nd**   6:15 |
| **54**   40:1 |
| **58,900**   13:21 |

| 6 |
|---|
| **6**   39:18 63:4 |
| **6004**   2:6 |
| **61**   40:1 |
| **61-62**   40:2 |
| **648,000**   13:22 |

| 7 |
|---|
| **7**   27:12 28:8 63:7 |
| **7.5**   13:15 |
| **70,000**   13:16 |
| **77**   33:16 |

**8**

**8**  63:11
**8/11/2021**  2:19
**82**  33:16
**86514**  31:22

**9**

**9**  63:13
**9/11**  62:21
**9006**  27:24 28:21
  32:14
**9023**  65:19
**9024**  65:19
**98**  39:2

**a**

abate  45:14
abatement  18:5
  59:9
ability  16:22 54:5
able  15:18 30:21
  35:12 44:25 50:11
  59:6
absolutely  53:22
abuser  57:25
abuser's  57:24
accepting  52:11
access  12:6 50:13
  66:11
accident  62:14
account  24:21
  32:9 35:7 50:12
accountability
  56:15
accountable  55:7
accurate  68:4
achieving  31:20
act  48:19
acted  33:15
action  17:23
  52:12 55:24
actively  19:4,21
activity  65:21

actors  53:11
actual  35:13
ad  2:4,11 12:19
  13:9,20 17:3
  18:12 27:3 67:7
addict  57:24
addicted  56:24
  57:14
addition  34:20
  39:20 47:6,22
  60:5
additional  31:4,7
  32:8 39:11,20
  40:14
address  12:24
  48:4 60:12,15
addressed  26:12
  35:17 45:3 56:7
addressing  59:2
adjournment  5:1
administering
  48:20
adminitrative  4:5
advance  64:22,22
  64:23
advise  41:24
advisement  40:8
  40:24 41:20
afford  44:2 50:12
ag  63:8,13
agenda  2:1 12:8,9
  12:17 24:25 26:19
ago  47:24 49:20
agree  16:10 27:19
  45:13 49:8
agreed  13:4,11
  15:6,10,13,16,17
  16:21 17:7 30:25
  61:14,14
agreement  13:3
  15:4,10 17:4
  18:19,20,25 19:1
  19:12,15 45:13,23

64:14
agreements  20:8
ags  19:20
ahead  37:23
aired  57:13
akin  42:10
al  2:14 12:3
albeit  58:5
aleali  7:6
alexander  8:21
alfano  7:7
allege  29:7
alleged  29:5
allen  10:7
allocated  18:3
allocation  18:1,2
allow  45:4 63:2
allowance  49:14
allowed  14:12
  16:19 38:18 41:10
  41:13 42:7,14,15
allowing  29:11
  32:5 34:25
allows  31:24
alludes  54:4
altered  43:10
alters  32:10
altogether  51:16
amanda  9:8
amendment  52:20
america  53:9 55:8
american  52:14
  54:21 64:11
amount  18:3
  19:17,18,19 29:8
  31:20 35:1,2
amounts  14:24
analysis  33:7
analytical  18:21
andrew  6:18 7:7
  15:20
angry  58:19

ann  8:20
annelyse  8:5
answer  15:18
anticipated  61:4
antiquated  49:5
  52:4 54:13
anybody  22:4
anymore  66:4
apart  49:24
apologies  30:6
apparently  24:16
appeal  46:6,8
  64:15,18 65:22,24
  65:25 66:3,5
appear  17:15
  19:10 22:25
appears  62:9
appellate  47:9
  58:6
application  2:16
  2:17 17:14 25:11
  25:20
apply  40:6 42:14
applying  33:24
appointment
  59:15
appreciate  22:17
  40:21 42:18 43:9
  44:16 48:18 60:10
  60:11
approached  59:5
appropriate  24:8
  39:24
approval  2:17
approve  2:2,2,9
  16:12
approved  60:22
approving  60:16
  63:5
approximately
  13:15
archer  10:14

**ardavan** 8:1
**argued** 57:24
**argument** 43:7
  48:7 50:18 56:6
**arguments** 56:4
  56:12
**arik** 9:11
**arrested** 51:11
**artem** 9:22
**arthur** 57:16
**ascertain** 31:18
**ashley** 7:16
**asked** 18:25 37:5
  64:2
**asking** 16:9 17:5,6
**assert** 29:13 52:2
**asserted** 35:2
**assertions** 26:24
  27:4 38:19
**assets** 17:23 47:7
  51:13 63:12
**associates** 32:23
**assuming** 30:20
  35:15
**assure** 36:14
**assured** 41:13
**atkinson** 7:8
**attached** 26:2
**attention** 39:13
**attorney** 47:8
  52:5
**attorneys** 6:4,14
  6:21 49:2 50:2,24
  51:19,22 53:20
  55:20 57:3,4,20
**attributed** 33:3
**audio** 29:20
**aug** 34:13
**august** 13:4 47:5
  52:6 60:3,4,7
  61:20 62:1
**aunts** 49:22

**austin** 7:9
**authority** 12:18
  16:9,11 49:5 67:6
**authorize** 4:5,9
  14:9
**authorizes** 22:19
**available** 59:8
**avenue** 6:5,22
**avoid** 56:14,19

**b**

**b** 1:21 2:5 8:3
  16:10,11,19 17:10
  17:10,16 18:8
  19:2,2 26:2 32:14
**b.r.** 16:17 32:3,19
  33:16 34:12,14
  35:4 40:1
**back** 23:14 31:5
  49:17 53:1
**background**
  38:11
**bad** 53:11
**bag** 57:14
**balancing** 33:10
**ball** 7:10 54:15
**ballots** 63:2
**bankr** 32:3,19
  34:13,14 35:4
  40:2
**bankruptcy** 1:1
  1:12,23 2:6,6
  13:13 16:10 25:7
  28:21 31:16 32:13
  32:14 37:15 43:18
  45:4,19 46:2
  47:16 51:4,10
  52:4 53:12 54:24
  56:14 60:9,13,14
  62:8 63:3,14 64:8
  65:19
**bar** 3:3,6,9,13,16
  3:20 29:3,7 30:10
  30:12,22,23 31:13

31:14,16,24 32:18
  32:21 34:21 35:24
  37:8 39:1,2
**barker** 7:11
**based** 33:8 48:24
  49:5 51:4 56:5
  59:16 62:8 64:10
  65:3
**basically** 37:16
  39:12
**basics** 12:23
**basis** 17:2 21:24
  21:25 22:1 23:4,4
  23:7 25:22 26:25
  33:8 35:19 36:20
  39:12 59:11,16
  65:9,17
**began** 50:10
**beginning** 23:13
  45:16 48:13 56:2
**behalf** 2:13 5:4
  12:13 26:16 28:10
  28:13 38:8 44:20
  52:13 64:11
**behaviors** 57:11
**believe** 14:5 15:3
  25:11 26:25 29:11
  38:13 39:1,23
  48:1 59:10,15
  65:9
**believes** 47:4
**ben** 50:15
**bench** 45:9 56:8
  64:2,13,20,23
  65:14
**benedict** 7:12
**beneficial** 14:1
**bernard** 8:1
**best** 16:13 42:2
  50:19
**bethlehem** 16:14
  16:24 17:2

**better** 15:18 41:22
**beyond** 16:2
**big** 55:3,4
**billing** 51:24
**billion** 56:21 57:3
**binder** 2:18,20
  6:20 24:25 25:2
  25:23 67:10
**birthday** 43:12
**bit** 38:10
**blabey** 7:13
**bleeding** 22:3
**bless** 42:23
**blown** 56:22
  62:22 63:4
**blue** 43:21 53:12
  53:12
**board** 24:17
**bono** 48:3
**book** 49:12
**books** 49:11
**brattle** 13:17
**brauner** 7:14
**brian** 7:25 9:1
  52:14
**brief** 43:7 48:7
**briefing** 61:2
**briefly** 12:23
  13:23 44:21 58:23
**broad** 20:9
**brooks** 7:11
**bros** 35:3
**brought** 13:25
  35:16 54:2 57:9
**broussard** 28:6,7
  28:18,23 29:3,18
  30:21 31:4,12
  34:16 35:10 39:10
**broussard's** 28:17
  29:12 34:22 39:16
  39:18
**broussards** 3:13

**broussart** 3:10
**brunswick** 32:23
**bully** 57:25
**burden** 32:17
    34:17 35:10 53:15
**burnham** 32:2
**business** 64:9
**busy** 57:15
**buy** 19:2,15
**buying** 19:20
**bye** 42:23,23

**c**

**c** 6:1 12:1 68:1,1
**calendar** 12:4
    20:6 24:22 26:7
    28:5 35:22 42:24
    47:1 66:17
**called** 28:21
**calling** 51:17
**calpine** 31:21
**cancer** 44:6
**capacity** 51:2
**captioned** 47:1
    59:24 62:2,8
**care** 44:6,9
**carefully** 26:23
    36:11 48:16 56:1
**carelessness** 33:4
**caroline** 8:6
**carpenter** 3:7
    26:20 27:11,16
    30:24 67:13
**carpenter's** 26:21
**carried** 35:10
**carry** 34:17
**carrying** 13:3
**case** 1:3 12:6
    16:21 17:1,3,5,9
    17:16 18:12,20
    21:23 22:3 27:24
    31:16 33:7,8,9,12
    33:21,25 34:20,23
    35:2,8 36:17,17

37:15,15 40:4
42:10 43:6 45:10
45:17,17,20,24,25
46:2 48:25 49:9
49:10 50:14 51:1
51:2 53:5,8,8
54:25 55:9 57:13
58:8 60:9 64:5,6
65:22
**cases** 14:2 16:18
    19:5,7 31:12 49:2
    49:3 50:21 59:2,5
    62:16
**casualties** 49:24
**cat** 57:14
**catchup** 54:14
**categories** 18:5
**caused** 44:9
**causes** 17:23
**causing** 50:4
    58:12
**caution** 49:17
**cautioned** 34:6
**cdc** 49:20
**centuries** 53:3
**certain** 2:3,10
    13:11 18:16 45:23
    48:20 51:12 61:14
**certificate** 25:12
**certified** 68:3
**cessation** 62:11
**chambers** 14:4,5
    22:13 23:10
**chance** 38:3
**change** 24:12
    51:14
**changed** 43:16
    58:9
**channeled** 17:19
**chapman** 15:8
**chapman's** 19:12
**chapter** 37:15
    60:17

**charade** 51:25
**chasing** 21:19
**check** 23:14
**children** 49:22
**choose** 44:14 46:4
**chose** 43:20
**christopher** 9:14
**cir** 33:20
**circuit** 33:21
**circuits** 34:4
**circumstances**
    16:12 27:19 28:23
**cited** 16:9 50:21
**claim** 3:1,3,6,9,13
    3:16,20 4:2 26:19
    26:20,21 27:8,16
    27:22 28:6,17
    29:3,9,10,12
    30:13,25 31:2,12
    32:15,16,21 33:1
    33:22 35:1,2,14
    35:23 36:20 37:23
    39:9,11 41:1 42:6
    43:1 46:16 51:3,7
    62:18 67:13
**claimant** 32:15,18
**claimant's** 27:22
**claimants** 14:21
    22:21 25:3 30:16
    44:12 51:22 52:7
**claiming** 34:9
    53:12
**claims** 3:3,6,9,13
    3:16,20 17:23,25
    29:13,14 31:13,19
    31:20 32:1,2,5,8
    34:25 37:21 38:17
    38:18 39:22,25
    40:9 41:9 42:14
    52:11
**clarification** 4:9
    4:13,18 5:2 47:2
    59:24 60:15

**claudia** 9:25
**clayton** 9:2
**clear** 18:25 23:24
    23:25 34:8,9
    39:21 40:19 47:25
    48:16 60:25 62:10
    64:1
**clearly** 26:16
    28:14 38:9
**clerk** 26:8 37:21
    50:11
**clerk's** 20:15,23
**clerks** 50:24
**clint** 7:22
**closed** 57:6
**code** 2:6 16:10,20
    25:7 26:4 60:13
**coffers** 51:22
**cogeneration**
    33:19
**collar** 43:21 51:11
    51:17 55:22,23
**colleagues** 26:12
    49:23
**collected** 62:14
**collectively** 13:11
**colorable** 26:25
**come** 25:14 44:11
    44:12 64:23 65:23
    65:24
**comes** 14:22 17:5
    17:8 24:5
**coming** 14:17
    17:18
**committed** 43:15
**committee** 2:4,8
    2:11,13 12:19
    13:9,20 17:3
    18:13 19:6 27:3,3
    27:21 42:5,13
    45:18 53:10 67:8
**committee's** 14:16

[community - cover]                                                        Page 5

community 50:4
company 47:12
compensable
  24:15
compensate 59:9
compensation
  2:16,17 24:24
  67:10
complete 45:22
completely 12:5
  43:10
component 15:10
  18:18
computer 23:14
concern 36:16
concerned 14:15
concerns 24:19
conclude 35:9
concluded 16:3
  66:18
concludes 66:17
conclusion 14:2
  15:15 58:5 63:23
  64:19
conducting 64:9
confirm 30:20
confirmation 13:5
  24:24 25:4 32:12
  34:23 54:24 59:18
  60:19,23 61:1,3,5
  61:6,9,11,17,20
  62:2,11 63:20
  64:13,16 65:8,9
confirmed 32:6
  35:5 46:6,13
congress 48:21
conjunction 13:4
  13:10
connection 15:13
consensual 13:24
consensus 59:6
consent 12:19
  67:7

consented 27:4
consenting 2:4,11
  6:14 13:6,9,19,19
  15:5,5,14,21 16:1
  17:13 19:4,13
  53:19
consider 31:1,8
consideration
  40:22 44:15 52:12
  60:19
considered 65:21
considering 32:11
consistent 27:7
consla 7:15
constant 27:17
constitute 33:18
constituted 33:1
constitution 48:22
  52:20 58:11
constitutional
  63:15
construed 59:12
  59:15 65:13
construing 33:18
consultants 51:19
  51:23 57:3,4,20
consulted 27:2,20
consulting 13:16
contact 37:13
contacted 37:20
context 14:11
  15:11 17:6 19:23
  31:8 43:6 60:13
contingent 24:3,6
  24:7
continual 53:14
  62:18
continue 22:2
  34:9 49:18 50:7
  55:6
continued 57:22
  61:21

continuing 53:17
contradict 50:22
contribute 49:18
contribution
  17:15
contributions
  18:11,22
control 27:23
  33:14 34:6,19
  35:14 36:21 38:21
conversations
  50:23 63:1
cookie 51:20
coordinate 23:7
coordinated
  17:18 23:7
copies 14:4
corey 9:16
corp 16:15,17
  31:21 33:16,19,20
  34:12,14
corporate 64:7
corporation 47:8
  51:5,6 55:4
corporations 55:4
  56:14
correct 14:13,18
  14:19 15:5,9
  18:17,19 19:24
  20:13 26:11 30:11
  31:3 47:4 65:10
corrected 52:23
  58:2
correction 60:1
costs 2:18
counsel 2:18
  12:10 25:2,21
  28:1 35:18 48:3
  52:17,18
countless 50:23
countries 56:25
country 19:22
  49:7 68:21

couple 47:22,24
coupled 30:14
course 18:19 24:4
  34:10 36:13 46:8
  61:22 62:1 64:12
court 1:1,12 12:2
  12:15 13:1,25
  14:8,10,14,24
  15:3,7,12,16 16:8
  18:24 20:1,18,23
  21:2,9,11,14,24
  22:6,9,12,16,18
  23:15,19,21 24:1
  24:7,11 25:25
  26:6,13,17 27:8
  27:10,13 28:4,15
  28:24 29:16,20,22
  29:24 30:1,5,8,18
  30:19 31:10 32:20
  33:9,21 34:8 35:6
  35:22 36:8,10,15
  36:24 37:8,14,19
  37:25 38:5,10,17
  39:5,7 40:19,23
  41:6,23,24 42:2,9
  42:12,20,24 43:3
  44:18 45:3,8,12
  46:20,23,25 47:9
  50:24 52:5,11
  53:25 54:7,12
  55:12,15,20 56:17
  56:23,23,24 58:6
  58:6,6,21 59:17
  59:20,22 60:23
  63:1 64:8 66:3,5
  66:13,16
court's 60:18
courtroom 54:2
  56:3 57:11
courts 49:4
cousins 49:23
cover 13:5 16:5
  24:15

covered 16:4
17:14,14,22 18:11
crawford 7:16
create 57:16,23
created 49:14
52:9
creates 53:3
creating 50:3
creditor 16:25
creditor's 16:22
creditors 2:8,14
6:21 13:20 14:16
14:25 15:2 17:18
27:2,21 29:15
32:10 34:24 39:3
42:5,13 45:18,25
46:2,4
crimes 51:12 53:9
55:7,22,23
criminal 51:8
63:14 64:7
criminals 51:17
crisis 45:15
critical 16:22 17:1
17:17
crockett 7:17
cross 53:12
current 49:15
currently 29:4
42:15 46:6
cutoff 39:24
cvs 53:13

**d**

d 1:22 8:15 10:17
12:1 17:10 67:1
dam 57:6
damage 53:3
damaging 49:14
danger 33:11 34:1
darren 8:19
data 32:8
date 3:3,7,10,14
3:17,20 21:9 24:3

24:8 29:4,7 30:10
30:12,22,24 31:13
31:14,16,24 32:18
32:21 34:22 35:24
37:4,9 39:1,2,24
39:25 40:12 41:16
41:18,18 52:2
57:3 68:25
dated 21:15 27:12
28:8 47:2 59:23
60:2,2,3 65:15
dates 32:13 52:23
david 7:13 51:15
davis 6:3 7:19
12:12 26:15 28:12
38:8 44:20
day 43:17
days 15:23 47:22
47:24 49:20 54:12
61:15,21
dea's 63:5
deadline 61:11,12
61:18
deal 20:14
dealers 51:13
dealing 55:13
dealt 24:23 43:5
death 57:17
deaths 49:21,25
debtor 1:9 16:22
31:25 32:6 33:11
debtors 2:2,9 3:12
3:19 4:1,12 6:4
12:10,13,17 19:6
24:11 26:16,25
27:20 28:1,10,13
28:19,22 29:11,13
29:14,15 30:25
31:1 34:16,24
35:18,25 36:3,12
36:19 37:20 38:5
38:9 40:7 43:4
44:20,23 45:18

46:16,20 47:20
50:9,21 52:2,2,19
52:23 53:19,23
58:21 59:4 60:17
60:19,20 61:3,14
66:7 67:6
decide 51:14
decipher 21:4
decision 47:9 64:3
decisions 49:5
56:4,12
declaration 49:15
58:11
deemed 33:23
degree 18:16
delaconte 7:20
delay 29:2 30:9
33:12,13,13 34:1
34:5,18,20 38:25
39:15 40:24
delayed 41:19
delaying 41:17
denial 52:24 60:1
denied 31:6 35:11
65:24
denies 46:21
dennis 10:11
deny 28:24 30:18
35:11 39:6 40:16
59:20 66:5
denying 35:19
64:13
department 21:21
64:6
derived 54:22
describe 12:23
described 24:5
desperations
43:13
detail 60:20 65:16
detailed 39:9
details 16:5

determination
25:9 33:10,22
52:17
determine 25:5
28:19 41:10 62:17
determined 63:21
determining
32:21
devastation 62:19
developed 32:20
62:21
development 18:4
dictates 34:8
die 53:17
different 16:20
17:4 38:17
difficult 59:3
difficulty 20:15
48:2
diligence 17:19,22
dime 51:22
dire 57:5
directly 54:22
disability 54:22
54:22
disabled 50:13
disagree 21:2
disastrous 54:25
disclosed 32:11
disclosure 60:17
60:22
discount 24:17,21
25:17,18
discovery 61:2,5,8
62:24
discriminatory
50:13
discussion 16:13
discussions 13:10
15:22 16:2
disease 49:25
dispositive 35:6

[disrespect - excuse]                                                    Page 7

disrespect 36:15
distribution 25:14
  32:10,11 40:25
  41:19 46:10
distributions
  14:17,23 47:7
  60:8
district 1:2 6:21
  16:14,15,16 25:3
  25:19 26:1 31:22
  66:3,5
districts 25:15
ditech 34:12
dizengoff 2:13
  7:21
dizon 10:15
docken 7:22
docket 12:20 20:4
  26:21,22 27:6
  42:9 50:11 54:11
  62:9
docketed 26:8
document 2:7,12
  3:2,14,21 4:3,4,6
  4:13,20 5:3 58:12
documents 4:15
  20:22 21:18,19
  42:5 49:8 50:13
  62:4
doing 28:1 50:19
doj 55:23 56:18
  58:10
dollars 19:18 41:8
domino 53:3
don 3:17,19 7:2
  36:7
dopesick 57:13
dph 33:15
dr 13:18
drain 1:22 12:3
drexel 32:2
dropping 54:15

drug 44:4 51:12
  62:15
drugs 63:6
due 17:19,22
  32:16,22 43:11
  49:25 50:1 52:20
  57:17 62:4,19
dying 55:21 57:7
dylan 7:15
d'angelo 7:18

**e**

e 1:21,21 6:1,1
  7:13 12:1,1 52:24
  67:1 68:1
e.d.n.y. 40:2
earlier 36:21
  41:15 47:5 60:1
early 16:21 18:20
ecf 2:6,14,21 3:4,7
  3:10,14,17,21,24
  4:3,7,10,14,20 5:5
ecke 7:23
eckstein 7:24
economic 13:16
  49:6
ecro 1:25
edmunds 7:25
effect 53:3 66:8
effective 24:3,8
  39:25 40:12 41:16
  41:18 46:3,7 65:1
effectively 13:3
  14:21 15:11
effectiveness
  22:20
effectuated 48:24
efforts 61:15
egregious 53:9
eight 39:3
either 13:18 18:15
  18:21 37:20 59:11
element 19:15

elevate 56:23
eli 6:8 12:12
elite 54:18
elizabeth 9:17,19
ellen 4:10,12 7:1
  59:23 63:18
email 20:2 22:12
  23:16 37:12 47:23
  47:23 48:4
emails 62:25
emergency 45:18
  49:16,19 52:10
  62:3,9 64:20 65:7
  65:17
emotional 48:9
emotions 57:7
empire 57:16
enabling 31:17
encourage 29:12
enforcement
  31:24
enjoin 63:21 65:8
enjoining 20:7
enron 16:17 33:19
  33:20
enter 64:13
entered 27:9
  60:16 63:17 64:16
entire 58:10,15
  63:13
entirely 34:9
entirety 64:14
  66:6
entities 13:12
  14:18,20 18:1,2,3
  18:6 47:12
entity 47:8
entries 24:13,14
entry 4:6 12:20
environment 49:7
equal 57:9
equipment 47:11

equitable 51:8
equities 34:6
eric 6:25 8:3 10:4
  25:23
escalation 64:8
especially 32:5
essence 40:4 41:8
essentially 23:8
established 25:7
establishing 33:5
estandari 8:1
estate 14:22 31:19
  32:1
estates 14:1 23:1
esther 6:9 26:15
et 2:14 12:3
ethan 10:3
evaluate 32:1
evan 8:16
evens 23:1
events 19:11 52:1
everybody 41:2
  48:14 57:20
everyone's 57:10
  57:17
evidence 30:21
  33:6 35:12,16
evidentiary 61:22
  62:4,25
exactly 30:7
examiner 59:15
  62:13
example 16:24
  35:3
exceed 57:3
excessive 24:20
excusable 27:23
  28:20 31:9 32:16
  32:17,22 33:7,18
  34:10 38:14
excuse 21:11
  39:14,20 60:3

executives 54:6
expect 34:9
expectation 18:18
expense 25:11
  57:17
expenses 2:3,10
  2:20 12:18 16:6
  25:8 67:7
experience 44:24
expert 23:8
experts 17:21
extend 32:18
extended 16:2
  31:14
extension 34:3
extensive 18:11
  39:2 61:23
extent 17:10,11
  45:15 59:12,13
  66:10
extinct 58:13
eyes 57:12

**f**

f 1:21 9:21 68:1
f.3d 33:20 34:11
fabric 55:8
face 37:7
facilitate 16:21
fact 17:11 22:22
  31:7 35:5 39:17
  40:11,15 52:13
  65:7
factor 29:1 34:4
  35:6
factors 27:1 28:21
  30:14 33:10,25
  35:17 38:14
facts 17:12 33:8
  34:17 64:10
fails 34:7,7
failure 32:15,25
  54:18

fair 44:14
fairly 62:5
faith 33:15 34:2
fall 40:10,14
falls 53:1
families 49:24
  55:8 58:18 62:19
  62:20,21
family 43:23 44:4
  44:13 51:3,5 52:8
  56:17 58:15 62:16
family's 57:18
far 14:14 21:4
  23:3 60:21 65:20
farrell 8:2
fashion 30:21
  52:16,22
fathers 49:22
fault 57:24
favor 34:2
façade 58:17
fda 52:9 56:18
federal 28:20
fee 2:19 26:1
feelings 57:6
fees 2:3,10,17
  12:18 13:5,8,11
  13:14,18,23 14:1
  14:9,12 16:4,6,12
  16:19,25 18:14,20
  19:1,14 24:4 25:4
  25:6 51:19 62:25
  67:6
field 57:9
figure 21:14 29:17
file 3:3,6,9,13,16
  3:20 20:18 27:15
  28:6 29:3,14
  31:12 32:15 33:1
  35:23 36:21 39:11
  40:9 41:1 43:18
  52:3,22

filed 2:12,20 3:3,7
  3:10,17,23 4:6,10
  5:3 12:20 20:14
  21:15 23:12,12
  27:6 29:18 30:9
  30:12 31:1,2,11
  32:2,5,21 33:22
  33:23 36:20 39:9
  39:17 42:15 43:8
  44:22 47:5 50:9
  52:16 60:2,3,4
  61:17,23 62:2
  64:15,25 65:7
filing 25:12 27:21
  29:10 35:13 36:1
  38:21 52:19,24
  58:3 61:5,7,11
filings 36:1
final 13:7 58:5
finally 18:4 29:17
  34:22
financial 17:20
  23:8
find 20:21 21:21
  21:21 50:11
fine 12:15 26:17
finson 10:16
fire 52:5
firefighter 43:22
firm 17:20 23:8
  25:8,13,17 42:10
firm's 25:18
first 12:16 15:23
  32:25 37:11,17
  41:8 48:20 50:20
  59:25 60:15 62:15
  62:23
fisher 6:25 8:3
  25:23,23 26:5
fit 51:15
floodgates 30:15
flow 45:14

focus 17:9 36:18
  48:5 59:7 61:19
focused 34:4
fogelman 8:4
follow 34:7
followed 62:18
following 33:10
  52:17
foregoing 63:22
  68:3
form 13:7 26:1
  45:5
formal 15:10
former 16:14
forms 47:3 59:25
  60:5
forth 17:11 28:16
  28:20 34:17 35:16
  38:13,19 60:18
  64:24 65:17,18
forward 50:16
  52:13 58:5
four 20:25 54:6
fourteenth 52:19
fracturing 55:8
framework 18:21
frankly 18:10,21
  19:17,19 24:17
  40:5 47:25
fraud 64:10
fraudulent 57:25
fred 8:14 13:18
free 23:6
friends 49:23
  62:20
frozen 60:9
frustrating 21:23
full 53:7 62:22
  63:4
fund 45:19,21
  62:20
funded 41:7

[funds - hoc]                                                                    Page 9

**funds** 14:22 24:2
  47:10,18
**furtherance** 13:24
**future** 40:10
  46:14 49:13

**g**

**g** 12:1
**gains** 8:5
**gange** 8:6
**gather** 42:25
**geard** 9:3
**general** 14:22
  31:20
**generally** 16:19
  17:25 33:2
**geoffrey** 3:7 26:20
**george** 48:22
  54:17
**gerard** 10:8
**getting** 20:15,16
  20:16 38:24 42:6
  44:7
**giddens** 8:7
**give** 50:17 54:9
**given** 24:18 25:18
  30:14 35:9,16
  39:10,19 43:16,17
  52:13 66:4
**giving** 38:3
**glitch** 29:17,19
  30:3 43:11
**globe** 57:1
**gmail.com.** 66:15
**go** 12:9 14:18
  22:21 23:14 37:23
  42:16 45:20 48:12
  49:17
**goal** 31:21
**god** 38:2 42:22
**godrey** 13:22
**goes** 46:3,6 48:10
**goforth** 10:17

**going** 21:5 22:4
  23:5,9 25:21 39:7
  41:19 48:17 50:20
  50:25 52:19 55:12
  56:22 58:4 60:23
  61:24 65:8
**goldman** 10:13
**goldstein** 8:8
**good** 12:2,11
  15:20 26:14 28:11
  33:15 34:2 43:3
  44:19
**gorrepati** 10:18
**gotten** 37:12
**government** 12:5
  16:6 50:2,3 58:1
**governmental**
  13:12 14:18,20
  15:2
**grandiose** 51:19
**grant** 14:8 23:21
  25:20 27:25 40:5
  40:6,15,23 41:2
  42:16 46:14
**granted** 46:8
  63:18 65:25 67:8
  67:11,14
**granting** 24:12
  27:1 40:3
**great** 20:14 42:18
  44:23
**green** 8:9 13:22
**gregory** 8:17
**grief** 53:17
**grieving** 49:23
**grievous** 53:25
**grossly** 52:8
**grounds** 65:18
**group** 2:4,5,11,12
  6:14 12:19,20
  13:6,9,12,17,19
  15:14,21 16:1
  17:3,13,18 18:13

19:4 32:3 67:7,8
**groups** 18:12
**guess** 16:13 19:9
  37:11
**guided** 33:9
**gump** 42:10

**h**

**h** 7:24 9:20
**halt** 57:8
**hand** 39:19
**handling** 26:18
  28:10,13
**hands** 38:2 51:20
**handwritten**
  27:13 28:5
**hannigan** 54:15
**happen** 37:24
  45:23 46:9,13
**happening** 44:3
**happenings** 49:11
**happens** 51:10
**happy** 12:9,24
  43:6 48:7
**hard** 21:3 33:24
  44:24 45:16
**hardin** 3:17 7:2
  35:25 36:4,6,7,9
  36:23 37:2,10,16
  37:22 38:23,24
  39:8 40:11,20,21
  41:4,21,24 42:8
  42:11,18,22
**hardin's** 35:23
  40:3,15
**hardins** 3:20
**harmed** 52:8
  55:21 57:5
**harold** 8:15 11:4
**harrison** 10:19
**hast** 53:15
**health** 49:16,18
  52:10 53:18 57:17

**hear** 12:13,15
  26:16,17 28:14
  29:21,22,23 30:1
  30:4 36:7 38:9,11
  43:7 48:7
**heard** 31:5 38:4
  56:7 58:24,25
  61:19
**hearing** 2:1,1,16
  3:1,1,6,9,12,16,19
  3:23 4:1,9,12,16
  4:18 5:1,1,2,4
  12:8 25:5 26:9
  27:11 28:8 36:11
  48:9 54:5,8,13
  56:2,13 58:7
  60:22,24 61:17,19
  61:20,22,25 62:2
  62:3,11,12 63:17
  63:20,21,22,23,25
  65:8,9
**heart** 48:10
**heartbreaking**
  55:17
**heather** 7:17
**heinous** 53:9 55:7
**held** 4:18 5:4 12:4
  55:6 63:22,23
**hello** 43:2
**help** 15:8 44:8
**helpful** 14:1
**hessler** 8:10
**hide** 56:14
**higgins** 50:15
**higher** 41:14
**highlighted** 14:15
**hissy** 51:15
**history** 51:3 56:8
  58:17
**hoc** 2:4,11 12:19
  13:9,20 17:3
  18:12 27:3 67:7

**hold** 39:7 40:7
**holding** 34:12,13
  39:10 63:1
**holdings** 33:16
  35:3 63:12
**home** 43:18
**homeless** 27:14,15
**homicide** 62:15
**hon** 1:22
**honest** 38:1
**honor** 12:11,14,22
  12:24 13:2,4,23
  14:6,13,19 15:9
  15:20 18:10 19:25
  20:13 21:7 23:23
  25:24 26:5,11,14
  28:3,11,16 29:21
  29:25 30:4,6,11
  31:3 35:20 38:7
  38:12,12,22 39:4
  40:18 43:2 44:16
  44:19,21 45:3
  46:22 48:8 50:8
  52:21,25 55:16,25
  56:2 58:20,23,24
  59:4,19 64:12
  66:9
**honor's** 14:3
**hope** 40:19 64:25
**howard** 10:2
**hrycay** 8:11
**huebner** 8:12
**hugh** 9:4
**human** 53:21
**humanity** 53:9
  55:7
**humans** 51:7
  53:16 57:1,6
**hundreds** 51:6
**hunting** 50:10
**hurley** 8:13
**husband** 43:12
  44:7

**husband's** 43:25
**hyde** 5:25 8:14
  13:18 68:3,8

### i

**i.e.** 17:12
**idea** 50:5
**identified** 57:2
**identity** 31:19
**ignorance** 33:17
**imagine** 19:19
  44:24
**immediate** 22:19
  42:25 47:15 60:1
  62:3,7 63:17
**immediately**
  51:13 52:17 63:9
  63:17
**impact** 15:1 24:4
  33:12
**impacts** 59:1
**imperative** 53:6
**important** 29:1
  31:17
**importantly** 19:9
  19:11 29:15
**improprieties**
  52:12
**inadvertence** 33:3
  33:17
**incarcerated**
  27:17
**include** 13:15
**included** 17:17
  62:10
**includes** 57:10
**including** 19:22
  27:20 34:5 45:17
  47:17 57:19 59:17
  63:12
**incongruencies**
  53:5
**incorrect** 47:4
  53:2

**incurred** 13:6,11
  13:15,24 16:6
**independence**
  58:11
**indiscernible**
  15:23 16:6 26:24
  51:8 52:6,14,16
  52:24 54:10 55:2
  55:22,22,25 56:9
  56:20,25 57:7,16
  57:18 58:12 66:11
**individual** 27:3
  35:1 47:7 52:7
**individual's** 38:20
**individualized**
  26:24 38:19
**industry** 64:10
**information** 20:16
  28:18 31:5,8
  37:13 39:11,20
**inhumane** 53:22
**injunction** 62:3,7
  62:10 63:17
**injunctions** 60:8
**injury** 14:25
  22:21 30:16 41:7
  41:9
**inquiry** 17:23
**insofar** 66:2
**integrated** 58:8
**integrity** 54:9
**intent** 49:4
**interact** 16:22
**interest** 16:23
  31:18,25 53:11
**interested** 58:7
**interim** 2:16
**interrogatories**
  62:25
**interrupt** 23:23
  55:12
**investigation**
  47:16 58:4 60:8

  62:22 63:4
**investment** 32:22
**invoices** 14:4
**involved** 47:18
  53:7 55:18 57:18
  61:24
**involvement** 17:1
  63:5
**involves** 53:8
**ira** 2:12 7:21
**irrelevant** 49:9
**irve** 10:13
**isaacs** 4:10,13 7:1
  20:3,5,13,20,23
  20:25 21:7,10,12
  21:18 22:1,8,10
  22:11,15,17 23:13
  23:18,20 47:1,3,4
  47:24 48:4,8
  55:14,16 58:25
  59:23,25 60:10
  62:2 63:19,25
  64:5,15,20,21
  66:10,14,15
**israel** 8:15
**issacs** 55:12
**issue** 16:18 35:6
  35:13 43:5 65:23
  66:1,11
**issues** 56:6 61:19
  66:4
**item** 12:17
**items** 43:19
**i'm** 25:20

### j

**j** 6:8 9:15 10:7
**jacob** 10:24
**jacqueline** 6:10
  28:12 38:7
**jacquelyn** 10:5
**james** 5:3 6:11 8:9
  40:1

janet 63:4
jars 51:20
jasmine 7:10
jeffrey 8:23 9:15
jesse 7:20
jim 44:19
jo 11:3
job 52:18
jonathan 3:4 26:7
jones 8:16
jordan 10:9
joseph 8:17 10:6
jr 8:9
judge 1:23 12:2
  15:8 16:14,16
  19:12 21:20 42:19
  56:10 64:25 65:2
judicial 48:17
july 29:6 31:13
  52:3 60:2 61:10
  61:12
june 31:14 48:23
  60:16
jurisdiction 66:4
justice 44:11
  49:10 53:1 54:16
  54:20 55:19,19
  56:16 58:9 64:6
justifiable 38:20

**k**

kahn 13:22
kate 9:24
katherine 10:1
kathleen 9:7
kathryn 7:12
katie 11:2
keep 22:3
kenan 9:18
kenneth 7:24
kesselman 8:18
kevan 8:25
kevin 7:19

key 45:23 65:1
killing 51:6
kind 37:3 50:16
klein 8:19
know 15:25 16:3
  18:16 21:22 27:10
  28:7 36:10,25
  44:4,23 46:9
  50:25 59:1,14
knowing 33:2
knowledge 54:19
knows 21:22 59:4
knudson 6:10
  28:11,12,16 29:17
  29:20,21,23,25
  30:3,6,11 31:3
  35:20 38:7,8,12
  40:13,18

**l**

l.p. 1:7 2:14 12:3
  33:19
l.p.. 5:4
labovitz 10:20
lack 55:19
laid 40:11 60:20
  61:4
lambert 32:3
lamont 3:10,12
  28:5 31:11
land 58:19
langley 8:20
large 17:11
largely 13:24
lastly 13:10,21
late 3:1 26:19,20
  26:21 27:8,21
  28:6,17 30:25
  31:2,13 32:5,15
  33:22 34:25 35:24
  36:20 37:23 38:17
  38:18 39:22,25
  40:9 42:15 50:17
  67:13

latecomers 29:12
laura 9:23
lauren 10:12
law 18:25 23:8
  27:24 40:4 42:10
  45:19 48:20,23,25
  49:1,9,10,12
  50:24 54:19 58:12
  63:15 64:24
lawrence 8:4
laws 49:5,7,14
  50:1,2 52:4 53:15
  54:14 58:8 64:8
lawyer 37:25 42:3
  44:2
lawyers 37:20
  42:4 44:2
layperson 54:19
  54:21
leading 13:7 29:6
  30:22
learn 37:8,14,21
leave 28:6 31:12
  35:23
leaving 38:1
led 65:5
ledanski 5:25 68:3
  68:8
lees 8:21
left 22:4 51:21
legal 49:10 53:1
  54:16 58:9,12
  68:20
lehman 35:3
length 33:11 34:1
lengthy 62:5
lens 18:7
letter 3:23 31:4
  45:9
letters 21:3 27:13
leventhal 8:22
levinson 10:21

lexington 6:5
lexis 16:15 31:22
  34:12,14
librium 62:23
licenses 53:20
lied 56:18
liesemer 8:23
life 43:10,20,24,24
  43:25 60:11
light 61:15
lightly 57:12
limited 47:17
linda 9:12
line 33:24 62:6
  67:4
link 21:1
links 20:16
listed 24:25
listen 48:15
listening 36:10
  56:1
litigant 54:8
litigating 19:21
litigations 19:21
little 17:4 38:10
  39:17 48:8
lives 53:21
living 51:7
llp 2:18,20 6:3,13
  6:20
lockdown 27:17
longer 49:6 66:1
look 21:10 49:13
looked 37:19
looking 14:4 21:8
  21:9 49:3 66:12
looks 49:10
loopholes 49:3
lose 34:10
lost 29:20 30:7
  43:18,19
lot 37:25 41:5

[lots - motion]                                                          Page 12

**lots** 40:4
**love** 55:17 57:10
**loved** 49:21
**loving** 53:16 57:1
  57:6
**lowell** 10:16
**lower** 25:19 33:21
  41:13
**lubinski** 3:24 4:7
  7:3 8:24 43:1,2,9
  43:10,12 44:22
  45:5,8,11 46:19
  46:24 48:10 58:25
**lubinski's** 42:25
  44:25
**lubinskis** 4:2
**lucas** 9:20

**m**

**m** 7:17 8:16,24
  9:4,5 10:20 11:2
**ma'am** 21:3,11
**maae** 3:4 26:8
  27:11,14 67:13
**maae's** 26:20
**maclay** 8:25
**macy** 32:18
**madison** 6:22
**magali** 8:7
**mail** 37:12
**main** 16:25
**maintain** 13:25
**majority** 19:13
**making** 22:9
  31:19
**malfeasance**
  55:20
**mallinckrodt** 55:5
**manipulator**
  57:25
**manmade** 63:5
**manner** 48:19
**mara** 8:22

**marc** 8:18 9:21
  10:6
**marcia** 10:22
**maria** 7:23
**mario** 7:18
**market** 25:19
**marshall** 8:12
**mary** 11:3
**masters** 52:9
**masumoto** 9:1
**matheson** 9:2
**matter** 1:5 24:22
  24:23 26:7 28:4
  32:13 35:22 39:16
  42:24 46:25 54:10
  58:5
**matters** 12:4 43:5
  66:2
**matthew** 8:2
**maura** 9:7
**mccarthy** 9:3
**mcclammy** 5:3
  6:11 44:19,20
  46:22 58:23
**mcdonald** 9:4
**mcmahon's** 21:20
**mcnulty** 9:5
**mean** 15:12 16:8
  18:24
**means** 53:16
**mechanical** 40:1
**mechanism** 41:11
**media** 39:13
**mediated** 15:4,24
**mediation** 13:7
  15:15 16:3,7
  19:12
**mediations** 18:4
**mediator** 15:8
**mediator's** 19:14
**medical** 50:4
  62:13

**medication** 43:14
  43:16
**meeting** 42:19
**members** 62:17
**memorandum**
  64:3
**memos** 64:24
**mental** 49:25
  53:18 57:17
**mentioned** 47:23
  66:10
**menus** 50:24
**meoli** 10:22
**met** 30:16 53:15
**michael** 7:8 8:8
  9:9 10:17
**middle** 63:20 65:7
**midland** 33:19
  34:11 35:8
**midstream** 62:11
**miller** 9:6
**million** 13:15,17
  45:22
**mineola** 68:23
**minute** 56:6
**misconduct** 52:18
**missing** 18:9
**mistake** 33:3
  53:24,25
**mistakes** 33:17
**mitchell** 8:13
**modest** 35:1
**modification**
  61:10
**modified** 61:9
  64:3
**moment** 51:14
**monaghan** 9:7
**money** 22:3,19,21
  22:22 23:1 44:11
  44:12 45:14 46:11
  51:18 56:25 57:15
  59:7

**monies** 43:21,23
**monthly** 51:24
**months** 30:12
  38:25
**mootness** 51:9
**morales** 9:8
**morality** 54:10
**morning** 12:2,12
  15:20 20:3 24:14
  26:14 28:11 43:3
  44:19 47:23 54:3
**mothers** 49:22
**motion** 2:2,2,9 3:3
  3:6,9,12,13,16,19
  3:20 4:2,5,9,9,12
  4:13,18 5:2 12:17
  12:20,22 13:2,10
  13:14 14:7,8,11
  14:16 16:9,11
  17:11 20:2,5,6,10
  20:11,19 21:6,15
  21:16,25 22:2,7
  22:18,23 23:22
  24:3,12 26:7,8,9
  26:12,19,19,20,21
  28:5,13,17,24,24
  29:2,4,18 30:8,13
  30:18 31:6,10
  34:22 35:11,19,23
  36:13,14 38:16
  39:6,7,17,17 40:3
  40:16,23 41:2,17
  41:20 42:16,25
  43:3 44:22 46:15
  46:21 47:1,2,5,20
  48:5,6 54:6,8,11
  55:3,13 59:12,12
  59:21,23,24 60:2
  60:7,7,12 64:17
  64:20 65:4,5,7,12
  65:13,17 66:6
  67:6,11

motions   3:1 26:23
27:1,8,25 40:4,9
40:14 43:6 67:13
mourning   50:6
movant   32:25
33:5,14,14 34:6
movant's   33:3
34:2
moving   51:18
53:6
msg   18:13
msge   2:5,12 12:19
13:21 67:8
mukasey   16:14
multi   13:12
multiple   60:25
mundi   63:12
musicland   34:13
muster   49:2

**n**

n   6:1 12:1 67:1
68:1
name   36:5,7 43:9
names   44:1
natasha   10:20
nathaniel   9:6
nation   48:18
53:19 58:18 62:20
national   49:15
57:13
nature   17:25
navigate   54:20
ncsg   18:12
nearly   30:12
50:12
necessary   31:20
need   40:13 42:20
60:12 61:1
needed   27:15
45:22
needs   58:9 61:18
neglect   27:23
28:20 31:9 32:17

32:17,22 33:1,2,5
33:6,19 34:10
38:15
negotiated   15:7
24:16 25:17 32:1
46:14
negotiation   32:9
negotiations   18:1
nera   13:16
never   51:2
nevertheless
32:14
new   1:2 6:6,16,23
32:8 48:25 55:9
news   37:3
newspapers   37:4
nice   40:22
nicholas   10:23
night   58:1
nine   56:21 57:5
noise   38:11
non   2:4,11 6:14
12:19 13:5,8,18
13:19 15:2,4,5,14
15:21 16:1 17:13
19:4,13 67:7
nonsense   53:14
normally   17:9
46:1
note   20:11 24:16
38:16 39:1,8,23
45:1 53:23 54:4
66:11
notebook   56:3
noted   34:3,16
36:18 38:22 39:16
44:21 58:24
notes   29:4
notice   2:1 3:1
4:16 5:1,1 27:12
28:8 30:23
noticed   26:9
27:12 28:8

notified   62:17
noting   30:8 38:23
notwithstanding
50:15 51:18
nov   31:22
november   1:16
2:1 4:17 23:14
68:25
number   30:24
40:14
ny   1:14 6:6,16,23
68:23
nylac   21:22 50:24

**o**

o   1:21 12:1 68:1
oaths   48:20
object   21:16
28:23 54:5 58:4
objected   19:5
20:4,19,20 31:6
35:25
objecting   20:21
46:16,17
objection   3:12,12
3:19,19 4:1,1,12
4:12 20:5,10,14
20:18 21:15,25
22:1 23:4,9 25:13
28:17 36:3,12,19
38:13,22 43:4
45:7 47:20 50:10
52:2,3 53:23
54:12 61:11,18
65:5,6
objections   20:2,15
50:9 61:1,4,5,6,7
61:11,15,16,24
objective   53:10
objectors   65:4
obtaining   48:2
63:1
obviously   17:17
39:15 61:17 65:24

occasions   58:24
occurred   54:7
occurs   40:12
58:18
october   4:16
12:20 21:16 27:12
28:8 39:18 64:17
oddity   15:24
office   20:15,24
21:20,20 50:16
63:10
official   2:8,13
42:4,12
officials   56:19
ogtrop   13:22
oh   42:11
okay   12:2 13:1,2
14:10,14 16:8
22:15 23:15,17,18
23:19 24:10 25:25
26:13 27:10 28:9
29:16 30:6 31:10
36:10 37:19 38:5
39:7 40:19 41:21
42:8,22,24 44:18
45:8 46:19,23,25
58:21 59:22 66:16
old   68:21
omission   33:2
omnibus   54:5
56:2
once   49:16 50:8
58:15
ones   51:23
open   30:15
opioid   19:21
29:13 45:15 62:16
opportunity
58:16
opposed   25:12
33:1 45:25 46:18
opulent   43:24

oral  43:7 48:7
  50:18 56:4,6,12
order  12:9 20:7
  22:2 24:12,24
  25:21 26:1 27:5
  28:1 35:19 40:7
  46:21 50:16 53:24
  58:2 60:16 61:4,9
  64:13,16,17 65:15
  66:7
ordered  47:10
orderly  61:2
orders  27:7
ordinary  24:4
  34:10,20
organization  47:8
original  31:14
originally  25:3
ousterman  9:10
outside  27:22
  38:20
overcome  43:14
overdose  62:14
overdoses  62:22
overhaul  58:10
overladed  50:5
overrule  23:9
  64:7
oversee  63:13
oversight  53:10
owner  51:5
oxycontin  43:11
  62:15 63:5
o'neil  9:9

**p**

p  6:1,1 10:21 12:1
pacer  50:12
page  16:17 34:12
  35:8 62:6 64:4
  67:4
pages  31:22 34:14
paid  14:12,21,25
  24:4 25:4 44:2

47:11 51:23 57:2
  57:5
pain  48:11 63:6
pandemic  27:18
  53:18
paper  51:4
papers  39:5 43:8
  44:22 45:6 59:10
  59:16,20
paperwork  37:18
  56:5
paragraph  53:23
  54:4
part  13:12 15:4
  15:22 16:1 22:20
  24:23 32:9 47:3
participants
  57:19
participate  50:14
participated  19:5
participating  12:7
particular  33:8,13
parties  16:23
  17:24 18:22 27:20
  31:17,25 45:10,24
  47:18 61:8,18,23
  64:25
partnership  32:23
party  34:2,7,9
  47:16 50:14 53:6
  53:14,15 58:3
  62:14
pass  50:7
passed  48:20 50:6
patient  29:5,6,7
patiently  55:24
patients  50:5
patrick  9:9 52:14
pattern  40:11,15
paul  9:18
pause  49:16
paved  48:25

paving  56:13
pay  12:18 13:11
  18:20 19:1 23:1
  39:12 43:23 46:4
  56:19 67:6
paying  51:19
payment  2:2,10
  2:17 3:23 4:2,5
  13:25 14:9 16:12
  16:19,24 17:3
  18:14,23 19:14
  22:19,20 24:2
  25:13 41:13,15
  42:25 46:17 57:8
payments  14:17
  16:21 20:7,8 45:4
  46:1 51:12 54:6
  58:4 59:14
pebble  53:18
pending  64:17
  65:22
people  21:20
  30:25 40:5,6
  42:14 43:7 44:2
  45:14,17 46:11
  49:6 52:15 54:21
  55:20 57:25 63:8
  63:19 64:12
peoples  57:22
percent  24:17,21
  25:17,18 39:2
  51:5
perform  17:19
period  2:19 16:5
  30:22 35:13 40:24
permanently
  55:21
permit  30:25
permits  32:14
permitted  56:18
permitting  31:1
perpetually  56:18

personal  14:25
  21:13 22:21 30:15
  41:7,9 43:19 59:3
pertains  66:2
pest  19:3,8
pharma  1:7 2:14
  5:4 12:3 47:12,13
  51:6 52:8 55:3,4
  63:11
pharma's  62:19
pharmaceutical
  63:12 64:9
phase  56:4
phone  27:11 28:7
physical  49:25
pick  46:4
pictures  62:25
piece  51:4
pieces  53:6
pills  43:17
pillsbury  6:13
  13:15
pioneer  27:1
  28:21 30:16 32:22
  33:24,25 34:11
  38:14
pittman  6:13
place  46:7
plains  1:14
plan  13:5,7 14:11
  14:14,20,22,25
  15:14,17 18:6
  22:20 24:23 25:3
  32:1,6,7 34:23
  35:5 39:25 41:6,8
  41:11,16,18 45:13
  45:20 46:2,3,5,13
  46:14,18 59:6,8
  60:17,20 61:1,12
  65:6
plan's  46:13
playing  54:14
  57:9

[pleading - question]                                                                    Page 15

**pleading**  20:10
  62:5
**pleadings**  36:25
  47:21 48:7 64:24
  66:13
**please**  48:15
  53:25 55:16 64:4
  64:6
**pockets**  53:21
**point**  39:21 42:5
  45:13 49:4 65:11
**poisoning**  57:1
**policy**  31:16
**polk**  6:3 12:12
  26:15 28:12 38:8
  44:20
**pond**  53:18
**portal**  21:19
**possession**  31:25
**possible**  63:18
**possibly**  56:23
**post**  34:23
**potential**  30:15
**potentially**  31:1
  32:10
**power**  46:12 49:8
**powerful**  54:18
**practice**  56:9 57:9
**precedence**  48:25
  54:25 55:9
**precedence's**
  63:16
**preceding**  62:6
**preis**  9:11
**prejudice**  28:25
  29:14 30:18,19
  31:7 32:6 33:11
  34:1,24 35:11
**premised**  32:7
**preoccupied**
  38:23
**preparation**
  60:21 61:23 65:1

**prepare**  46:20
  50:18 61:17
**prepared**  25:20
  39:8 52:23 53:24
  54:2 56:3,11
  64:24
**preponderance**
  33:6
**prescription**
  38:24 43:11 62:15
**prescriptions**
  62:23
**present**  7:5
**presided**  19:7
**president**  48:22
**presidential**  49:15
**press**  55:22
**prevented**  29:9
**previous**  53:2
  57:7
**previously**  47:10
  56:11 60:21 65:22
**prey**  10:23
**primarily**  12:5
  17:20 61:24
**prime**  37:11,21
  41:24 50:11
**prior**  27:7 29:6
  38:18 48:24 54:7
  54:13 56:12 58:24
**prison**  29:8
**private**  17:25 18:2
  56:9
**pro**  7:1,2,3 21:21
  26:8 48:3 54:7
  60:10
**probably**  25:19
  37:10 40:16 42:2
**procedure**  28:21
  49:9 54:14
**procedures**  41:7
  48:24 58:8 61:9

**proceed**  49:3
  51:24 54:9 58:10
**proceeding**  13:13
  49:17
**proceedings**
  20:17 47:17,19
  48:17,18 51:9,10
  55:1 56:22 57:20
  62:8,17 63:14
  66:18 68:4
**process**  17:19
  25:7 37:21 40:25
  41:1,2 42:6,16,17
  46:10 52:21 55:5
  61:2,2,9 62:4 64:3
**processed**  20:16
**processes**  42:13
**production**  62:4
**professional**  2:16
**professionals**  14:7
  17:13 24:18
**profits**  53:21
**program**  39:2
**progressively**
  58:9
**prompt**  41:12
**promptly**  35:16
  46:6
**promptness**  31:18
**proof**  3:3,6,9,13
  3:16,20 27:16
  28:6 29:3,9 30:13
  31:12 32:15,16
  33:22 34:18 35:10
  35:23 39:9 53:15
**proofs**  27:22
**proper**  18:7
**properly**  20:16
  24:15 65:13
**proposal**  56:21
**propose**  12:23
**proposed**  18:5
  27:5 60:21

**prosecution**  51:8
  63:14 64:7
**prosecutions**
  56:19
**protecting**  52:7
**proud**  37:2
**prove**  49:3
**provide**  14:12
  22:18 30:21 31:7
  35:12 53:7
**provided**  25:3
  28:18 38:19,25
**proving**  32:17
**public**  6:21 17:25
  18:2,3,6 25:2
  49:15,18 52:9
  53:4 62:24
**puerto**  57:18
**pull**  51:14,15
**puppet**  52:9
**purdue**  1:7 2:14
  5:4 12:3 19:22
  20:8,8 47:12,13
  51:6 52:8 62:19
  63:11
**purdue's**  37:15
**purely**  13:18
**purporting**  63:6
**purpose**  31:17
**purposes**  18:6
  27:24 45:6
**pursuant**  2:5
**pursue**  41:1
**pushed**  44:14
**pushing**  14:1
**put**  45:6 49:11
  60:13
**putting**  53:21
  59:7

q

**quarropas**  1:13
**question**  15:18
  21:5 36:23

questions 12:24 14:3,6 16:4 17:5
quite 34:21 39:9 51:12 60:6

**r**

r 1:21 6:1 10:22 12:1 68:1
r.h. 32:18
rachael 9:13
raised 54:12 56:7
rarely 34:7
rate 50:7 53:17
rates 25:18
ratification 48:21
rdd 1:3 4:20
reach 31:4 39:2 42:4,17
reached 15:24 19:12
reaches 58:5
read 36:3,11,14 43:3,4 45:9 48:6 56:4
reading 49:8 54:1 56:10
really 18:7 20:11 32:13 37:4 41:4 44:15 45:19,22 48:9,10 49:9 55:13,16 59:1,5
reason 16:8 27:21 29:2 33:13 34:4 34:18 38:20,25
reasonable 24:19 25:6 31:18 34:5
reasonably 35:14
reasons 18:24 30:17,24 59:19 63:16 65:14
recall 47:10
receive 50:8
received 14:3 20:2 47:22

recites 22:23
recognize 17:2
recognized 16:16 34:25 35:7
recognizing 54:7
reconsider 64:2 64:12 65:15
reconsideration 35:15 59:11,13 65:14,18
record 12:12 20:12 23:25 25:5 26:15 28:12 35:9 36:5 45:2 47:4 59:17 60:16 65:10 66:12 68:4
recorded 52:21
recording 54:1
records 25:11
recounted 63:7
recovered 17:21
recoveries 15:1
recovery 23:1
redacted 24:13
reducing 14:24 22:25
refer 64:4,6
referenced 29:9
referred 55:2 62:12
reflect 58:3
refute 47:6,11
regard 21:16 39:16 47:5
regarding 3:1 5:2 27:4 63:3
regulate 48:19
reimburse 12:18 67:6
reimbursed 15:24 22:24
reimbursement 2:3,10

related 2:7,12 3:2 3:14,21 4:2,4,6,13 4:15,20 5:3 29:13 61:3,6 62:16
relates 27:14,16 32:2
relatively 35:1
release 62:24
released 17:24
releases 55:3
relevant 30:22
relief 19:5 21:4,17 27:5 47:3 59:25 60:6,6,6 62:5,18 63:6 65:20 66:2
relies 32:11
relook 52:22
remainder 42:19
remains 60:9
remarks 65:4,4
remember 37:6 45:9
remind 52:5
remotely 12:5
removed 63:9
renders 47:9
reorganization 31:21 59:7,8
replay 54:1
replies 61:7
report 19:14
reported 13:3 49:20
reports 62:13
represent 42:12
representation 22:9
represented 16:23 19:10 23:3 56:6
representing 23:11
reputations 57:23

request 27:9 28:19,24 30:18 31:6 32:12 38:13 39:5 47:15 58:2 59:13 60:15,19 61:3,6 62:3,9 63:22 64:11 65:21 66:2
requested 45:5,5 62:10
requesting 3:23 4:5 27:5 31:4
requests 39:22
require 63:16
required 54:13 61:22
requires 46:7,8
rescheduling 4:16 5:2
residual 14:20
resolution 13:24
resolutions 15:23
resolve 61:16
respect 2:9 25:15 29:1 30:3 48:6 59:14
respectfully 14:8 27:9 30:17 39:5 58:2 64:11
responded 36:1
response 36:2,12 36:16 38:6 58:22
restructuring 17:1
result 16:2 18:3 19:12 41:14
returned 63:3
reverse 64:12
review 18:8 41:8 41:12,13,14,15 50:16 62:16
reviewed 24:13,13 25:10,16 26:23

27:12 47:21
**revoked** 53:20
**richard** 10:14
    56:24 57:15,22,24
    58:14
**rico** 57:19
**ridiculous** 56:13
**riffkin** 9:12
**right** 14:12 16:8
    16:12 20:1,24
    22:13,16 23:19,21
    24:1,7,22 26:6
    27:10 28:4 30:1
    31:10 37:14 45:8
    46:25 55:15 58:17
    58:21 59:22
**rightfully** 51:11
**ringer** 9:13
**rippling** 53:17
**road** 68:21
**robert** 1:22
**robertson** 9:14
**role** 24:18
**room** 1:13
**rosen** 9:15
**roush** 9:16
**row** 21:1
**roxana** 7:6
**rule** 2:6 27:24
    32:14 34:8,8
    39:24 65:19
**ruled** 25:4 48:1
    65:22
**rules** 28:20 33:17
    33:18 50:21 60:14
**ruling** 24:24
    35:15 36:19 41:17
    54:2 56:11 64:2
    64:13,20,23 65:5
    65:14,15
**rulings** 53:2 64:22
    67:3

**run** 18:13
**ryansopc** 66:15

**s**

**s** 2:12,12 3:2,14
    3:21 4:3,6,13,20
    5:3 6:1 8:19 9:1
    10:12 12:1
**s.d.n.y.** 16:15,17
    31:22 32:3,19
    33:16 34:13,14
    35:4
**sackler** 43:23
    44:12 51:15 52:8
    56:17,24 57:15,16
    57:22,24 58:15,15
**sacklers** 17:24
    45:24 47:13 51:11
    51:14 54:23 55:11
    55:19 56:18,21,25
    57:15 63:11 64:9
**safety** 49:16,18
    52:10
**sale** 47:11
**sara** 7:14
**satisfies** 28:19
**satisfy** 17:12 19:1
    38:14
**saving** 53:21
**saying** 57:23
**says** 50:25 51:4
**schedule** 26:2
    60:18
**scheduled** 63:21
**schlecker** 9:17
**school** 6:21 25:2
    25:15
**schwartz** 2:18,20
    6:20 24:25 25:2
    25:23 67:10
**schwartzberg**
    9:18
**scott** 8:12 9:19

**screen** 12:6 43:1
**se** 7:1,2,3 26:8
    54:7 60:10
**sean** 54:14
**second** 21:7 33:21
    40:25 47:11 62:13
**section** 16:10,11
    16:20 17:10 18:8
    25:6 26:3
**sections** 2:5
**see** 15:17 17:6
    20:5,6 23:3 33:15
    34:11 35:3 36:4
    37:24 40:1,8
    42:23 43:1 44:1
    49:13 63:6
**seeing** 54:20
**seeking** 19:6 21:4
    29:12 32:18 34:3
    60:5
**seeks** 20:7 47:3
**seitz** 13:21
**seized** 51:13
**seizure** 63:11
**self** 9:20
**sell** 43:19
**send** 23:10 66:13
**sending** 20:21
**sense** 20:9
**sent** 21:18 22:13
    23:17
**september** 30:9
    31:11 36:2 43:15
    47:2 54:4 56:2
    59:23 63:23 64:16
    64:19 65:16
**serious** 37:13
**seriously** 21:3
**serve** 49:6
**serves** 31:17
**service** 50:8
**services** 32:22

**set** 28:16,20 34:17
    38:13,19 41:6
    54:17 59:10,11,16
    60:18 61:12 65:17
    65:18
**sets** 17:11
**setting** 54:24 55:3
    64:24
**settlement** 15:4,7
    15:25 51:16 52:3
    64:14
**settlements** 32:7
**shannon** 9:5
**share** 44:25 50:23
**shared** 13:8,19
**shaw** 6:13
**shield** 53:12
**shots** 51:18
**show** 32:25 33:5
    35:13 42:6
**shred** 58:11
**shy** 13:16
**siblings** 49:22
**side** 58:17
**sidney** 10:21
**sign** 42:21
**signature** 62:6
    68:7
**signed** 48:22
    52:24 53:24
**significant** 19:18
    34:21 39:15,22
**similar** 43:6 60:6
**simply** 19:10
    28:18
**sir** 36:6,9,23 37:2
    37:22 40:21 41:4
    41:21
**sit** 44:10
**skapof** 9:21
**skorostensky** 9:22
**sleep** 58:1

slower 41:14
small 40:14
smear 57:22
smith 7:9 9:23
society 49:17
  54:17
socio 49:6
solutions 68:20
somatic 50:3
somers 9:24
son 52:14
sonya 5:25 68:3,8
soon 63:18
sorrow 48:11
sorry 21:9 23:23
  41:4 48:9,10 60:3
  65:6
sort 36:15
sought 60:6 62:6
  62:13 65:20
sound 29:17,18
  30:3 43:11
southern 1:2
speak 50:20 52:1
speaking 64:5
speaks 53:23
special 2:18 43:25
  52:12
specific 21:5 63:9
specifically 52:20
spending 22:22
spent 19:20 22:24
  24:18
springer 9:25
st 40:1
stadler 10:1
staff 50:5
stage 34:23 44:6
stahl 10:24
stand 39:4 45:6
  58:14
standard 17:9,12
  17:16 18:15 26:1

28:20 30:17 31:9
  38:15
start 27:18 45:20
  58:13 60:23
started 37:11,17
  61:20
starting 63:15
starts 41:15 46:10
state 6:14 12:19
  13:6,9,12 15:21
  16:1 19:20 27:17
  36:5 51:22 63:7,8
  63:9 67:7
stated 25:16 33:23
  59:20 63:16,25
  64:1,4
statement 2:8,9
  14:16 55:23 60:17
  60:22
states 1:1,12 2:4
  2:11 13:19,20
  15:5,14 17:13
  19:4,13,16 20:3
  22:22,24 23:7
  24:16 47:25 48:1
  48:21 53:19 57:18
status 40:9
statute 39:24
stay 42:19,20 46:7
  64:17 65:21,23
steel 10:2 16:15
  16:24 17:2
step 31:20 32:20
  41:25 52:13
stephanie 3:23 4:1
  4:7 7:3 8:24 43:10
stephen 8:10
stern 10:3
stigma 57:23
stodola 10:4
stop 51:12 57:6
  58:17 64:8

stopped 37:3
stopping 62:7
straighten 23:16
streamline 41:12
street 1:13 6:15
stress 50:1,3
strongarmed
  56:17
stuff 20:21 37:5
  38:1
subject 13:14 14:7
  35:15
subjects 32:6
submit 24:11 25:8
  25:21 28:1 32:16
  35:18 37:23 66:7
submitted 12:10
  14:5 24:14 25:13
  27:8,13 28:5 48:2
  56:5
subsequently
  64:15
subsidiaries 47:12
substantial 17:15
  29:18
succeed 19:19
successful 14:2
  31:21
suffering 44:13
  49:25
sufficient 25:5
  28:18 34:17 35:12
  39:14 63:2
suicide 43:15
suite 68:22
sulivan 10:25
summer 37:5,10
  37:17
superb 20:24
supplement 36:25
support 14:16
  15:14,16

supporting 13:20
supreme 32:20
  56:23 58:6
sure 14:10 30:7
  37:12 43:9 51:24
surprised 54:11
surviving 62:16
susan 9:10
suspected 50:9
swanner 10:5
sympathetic
  28:22
sympathy 44:23
symptoms 50:4
synthetic 63:6
system 45:4 49:10
  53:1 54:17 58:9

t

t 68:1,1
take 21:3,12 35:7
  40:8 43:17 44:9
  61:14
taken 24:20 32:9
  33:24 44:6
talking 37:11
taped 63:1
tasks 17:14
taylor 10:19
team 58:15
tearing 49:24
telephone 12:7
telephonically 7:5
television 57:13
tell 23:16
terms 17:18 19:18
terrible 60:11
test 19:1 32:20
  33:25 34:11 53:15
testimony 62:12
text 62:8
thank 12:11,16
  22:15 23:20 24:10
  25:24 28:3,16

29:25 35:20 36:6
36:9 38:3,12
40:18,21 41:21
42:22 44:16,18
45:11 46:23,24
48:8 50:17 58:20
66:15
**thanks** 26:17
**theodore** 10:10
**thing** 42:2 65:12
**things** 20:7 21:12
21:21,21 37:4
44:3 64:1
**think** 18:14,17,21
20:8,9 23:13 24:8
25:19,25 26:6
28:9 30:16 36:15
38:24 39:4,8 42:2
58:23 59:1,4
66:16
**third** 34:4 47:16
53:6 58:3 62:14
**thousands** 51:7
**threatens** 51:15
**three** 33:25 54:12
61:10
**time** 16:2,5 24:13
24:14,15,18,20
25:8,10,16 27:15
29:8 36:22 40:22
44:10,16 45:12
48:12,19,23 49:13
49:16 50:18 51:16
54:9 58:14 60:12
63:2
**timeline** 52:1
**timely** 27:16 29:9
30:21 32:16 33:1
33:23 35:14 38:18
39:12 52:16,22
58:3 64:15
**times** 20:25 39:3
58:8 61:10

**timetable** 19:11
61:5
**tobak** 10:6
**today** 12:17 43:13
45:1 48:5 50:18
64:1
**today's** 12:4,8
20:6 49:6 66:17
**told** 13:14 37:22
37:23 42:1
**tolerated** 55:23
**totally** 43:16
**towers** 37:3
**townes** 6:9 26:12
26:14,15,18 28:3
**track** 22:10,13
**trades** 41:12
**tragedies** 60:11
**trail** 48:15
**transcribed** 5:25
**transcript** 64:4
68:4
**transfer** 47:17
**transparency**
53:7
**transpired** 53:8
**trash** 58:13
**tread** 57:12
**treat** 50:6
**treated** 65:12
**treatment** 29:5,6
29:8
**tried** 23:11 45:16
**tries** 54:20
**troop** 6:18 15:17
15:20,21 18:17
23:23 24:2,10
66:9
**troop's** 17:20
**troy** 43:12
**true** 68:4
**truly** 48:17

**trust** 41:7
**trustee** 16:14
**trustee's** 50:15
**trusts** 47:14
**truth** 56:16,16
58:3
**try** 23:12,15 44:10
**trying** 21:14
50:14 57:15
**turning** 64:3
**turns** 40:2
**twin** 37:3
**two** 19:7 27:22
32:20 36:1 49:20
**type** 19:18
**typical** 33:25
**tzerina** 10:15

**u**

**u.s.** 1:23 16:14,15
31:22 32:23 47:14
48:21 51:3 63:13
**ucc** 52:6 53:11
**uday** 10:18
**ultimately** 14:22
39:13
**umbrella** 47:13
**un** 63:13
**unable** 29:3
**unanimous** 15:25
**unaware** 54:11
**unbelievably** 59:3
59:3
**uncertainties**
43:13
**unclear** 29:2
**uncles** 49:22
**unconscionable**
53:22
**unconstitutional...**
55:1
**uncontested** 25:1
**understand** 14:11
21:13 25:14 26:9

37:25 41:5,22
42:3,17 44:3 59:1
64:21
**understandable**
16:3
**understanding**
48:16 65:3
**undertaken** 33:7
**undertook** 61:25
**underwood** 10:7
**underwriters**
18:23
**undoubtedly**
65:23
**unfortunately**
40:10
**unheard** 45:19
**union** 16:25 43:22
**union's** 16:25
**united** 1:1,12
48:20
**unknown** 1:25
**unmute** 36:6
**unopposed** 12:22
26:10
**unprecedented**
50:7 59:5
**unredacted** 14:4
**unsecured** 2:8,13
14:15 42:4,13
**unspecified** 29:8
**untimely** 38:21
52:24
**unusual** 45:21
**update** 40:13
**upholding** 33:21
**uprising** 58:18
**upset** 48:13
**urge** 45:12
**use** 25:25 26:1
29:13 50:3 56:19
**uses** 18:5,5

| | | |
|---|---|---|
| **usually** 33:18 34:2 | 45:1 | **woman** 48:9 |
| **uzzi** 10:8 | **wanted** 19:23 | **woodcock** 63:4 |
| **v** | 66:11 | **word** 55:25 |
| | **wardwell** 6:3 | **words** 19:16 |
| **v** 16:14 32:23 | 12:13 26:15 28:12 | 32:12 |
| 33:19 | 38:8 44:20 | **work** 17:12,17 |
| **valid** 62:18 | **warrant** 18:14 | 23:5,6 |
| **valium** 62:23 | **washington** 27:17 | **worked** 16:5 |
| **van** 13:21 | 48:22 54:17 | 43:22 61:8 |
| **various** 18:11 | **watch** 53:25 | **workers** 43:21 |
| 47:3,13 50:24 | **watching** 56:1 | **works** 18:22 |
| 59:25 | **way** 16:23 37:22 | **world** 47:14 56:23 |
| **vast** 53:17 | 46:1 48:25 54:20 | 56:24 58:6 64:8 |
| **vehicle** 55:3 | 56:13 59:5 | **worldwide** 64:10 |
| **venture** 33:19 | **we've** 14:3 26:23 | **write** 64:22,23 |
| **veritext** 68:20 | 27:2,8 45:6 58:24 | **written** 20:2 22:6 |
| **versus** 41:13 | 58:25 | 64:21 |
| **vested** 53:11 | **wealthier** 54:19 | **wrong** 56:10,11 |
| **victims** 27:4 44:1 | **wealthy** 54:18 | **wrote** 22:6 48:14 |
| 44:15 55:2 59:9 | **weber** 10:9 | **x** |
| **video** 62:25 | **week** 50:12 | |
| **videoconference** | **weigh** 34:2 | **x** 1:4,10 67:1 |
| 4:19 | **weinberg** 11:1 | **y** |
| **view** 19:8 20:10 | **wells** 10:10 | |
| **viewed** 44:23 | **wendy** 11:1 | **yeah** 20:20 |
| **vince** 10:25 | **went** 37:3 43:23 | **year** 30:10 34:21 |
| **vincent** 7:7 | 65:16 | 49:21 56:8 |
| **vioxx** 63:6 | **west** 6:15 | **years** 19:7,21 |
| **vonnegut** 6:8 | **white** 1:14 11:2,3 | 43:13,20 44:7 |
| 12:11,12,16 13:2 | 51:11,17 55:22,23 | 56:22 57:5 |
| 14:13,19 15:1,6,9 | **who've** 19:20 | **yesterday** 50:17 |
| 15:13 18:10 19:24 | **widespread** 55:2 | **york** 1:2 6:6,16,23 |
| 24:5 26:6,11 | 57:23 | **yvette** 7:9 |
| **voted** 63:8 | **willfulness** 33:2 | **z** |
| **votes** 63:7 | **william** 8:11 9:16 | |
| **w** | **williford** 11:4 | **z** 9:25 |
| | **windscheffel** | **zabel** 10:12 |
| **w** 3:17 7:2 10:16 | 10:11 | **zoom** 12:5 28:7 |
| 10:24 | **winthrop** 6:13 | 52:21 54:1 57:10 |
| **wait** 44:10 | 13:16 | **zoomgov** 4:19 |
| **waiting** 55:24 | **wish** 37:12 41:21 | |
| **want** 14:10 20:11 | **wishes** 51:3 | |
| 21:12,13 23:10,25 | | |
| 30:20 36:4,25 | | |
| 43:7 44:11,12 | | |