DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OMNIBUS OBJECTION TO MOTIONS
TO FILE PROOFS OF CLAIM AFTER CLAIMS BAR DATE
FILED BY ROBERT CAULK AND LAMERE WILMER-WILLIAMSON**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors**") submit this omnibus objection in response to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

the *Motion to File Proof of Claim After Claims Bar Date* [Dkt. No. 4072] (the "**Caulk Motion**") filed by Robert Caulk ("**Mr. Caulk**") and the *Motion to File Proof of Claim After Claims Bar Date* [Dkt. No. 4073] (the "**Wilmer-Williamson Motion**," and with the Caulk Motion, the "**Motions**") filed by Lamere Wilmer-Williamson ("**Mr. Wilmer-Williamson**," and with Mr. Caulk, the "**Movants**") and respectfully state as follows:

1. The Movants, both incarcerated individuals, request that this Court extend the bar date as to them to allow them to file late proofs of claim. (Caulk Mot. at 2; Wilmer-Williamson Mot. at 1.) Mr. Caulk asserts that he "was addicted to opioids and street drugs" and "can prove [he was] prescribed the pills [that led to his] addiction." (Caulk Mot. at 2.) He further asserts that "the science and medical findings [that] establish the toxicity and actual addictive nature of the pills [were] withheld," and that "with [his] claim[ he] intend[s] to have the Department of Justice . . . review [his] sentence." (*Id.*) Mr. Wilmer-Williamson notes that his "claim is based upon addiction leading to incarceration" and that "the science and medical issues support[]" his claim. (Wilmer-Williamson Mot. at 2.) He also notes that he is attempting to have the state "verify [that he was] prescribed opioids over a long period of time." (*Id.* at 1.) In addition to the request that this Court extend the bar date as to him, Mr. Caulk also requests that this Court require additional notice for "incarcerated [individuals] who can clearly demonstrate addiction to opioids." (Caulk Mot. at 2.) Although the Debtors are sympathetic to the Movants' circumstances, for the reasons discussed below, the Motions should be denied.

2. To date, the Debtors, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), and the Ad Hoc Group of Individual Victims (the "**PI Group**"), with the approval of this Court, have agreed to allow the filing of seventeen late proofs of claim—fifteen of which were filed by incarcerated individuals like the Movants. (*See* Dkt. Nos. 1661,

1664, 2057, 2069, 2071, 2086, 2088, 2193, 2211, 2458, 2834, 3058, 3342, 3526, 3764, 3894, & 3895.)  However, unlike the Movants, the prior incarcerated individuals who sought relief from this Court made sufficient individualized assertions regarding the reason for the untimely filing, alleging that they had limited information and resources leading up to and following the bar date due to their incarceration and the attendant restrictions caused by the COVID-19 pandemic.  (*See* Dkt. Nos. 1664, 2057, 2069, 2071, 2086, 2088, 2193, 2458, 2834, 3058, 3342, 3526, 3764, 3894, & 3895.)  The remaining two late claims allowed by this Court were filed by (i) an individual who missed to deadline to file her proof claim by four days due to issues with mail during the COVID-19 pandemic, and (ii) an individual who was unable to timely file her claim because she was undergoing medical treatment.  (*See* Dkt. Nos. 1661 & 2211.)  Accordingly, each of the prior late claim motions provided a justifiable reason for the delay such that the Debtors, Creditors' Committee, and PI Group agreed to allow the claims as timely, and this Court found good and sufficient cause for granting the requested extensions.  The same is not true of the Motions.

3.     The Movants' requests to file proofs of claim after the bar date do not satisfy this Circuit's strict application of the "excusable neglect" standard set forth in Federal Rule of Bankruptcy Procedure 9006(b)(1).  Courts have discretion to allow a late proof of claim only upon motion of a late-claimant showing "excusable neglect." Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'").  The burden of meeting the *Pioneer* test for excusable neglect, however, falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir.

3

2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" *and* that the neglect was "excusable." *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010). A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

4.  The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11.) Put simply, courts rarely extend the bar date for late-claimants, and the Movants' requests for relief do little to meet the hard line drawn by the Second Circuit.

4

5. As an initial matter, with respect to the most important factor—the reason for the delay—the Movants provide no reason why they could not file proofs of claim prior to the July 30, 2020 bar date. Although both Movants are currently incarcerated (Caulk Mot. at 2; Wilmer Williamson Mot. at 2), neither alleges they were incarcerated prior to the bar date. Similarly, neither Movant alleges that their incarceration prevented them from timely filing a proof of claim. This defect alone is sufficient to deny the Motions. *In re DPH Holdings*, 434 B.R. at 83. In letters dated December 2, 2021, the Debtors requested that the Movants provide additional information concerning the reason for the delay in filing a proof of claim. To date, the Debtors have not received responses.

6. While the Debtors do not have any reason to believe that the Movants have not made their late claim requests in good faith, both of the remaining *Pioneer* factors also weigh against the Movants. *First*, allowing the Movants' claims only would encourage other latecomers wishing to assert claims against the Debtors related to their opioid use to file claims in order to take part in distributions from the Debtors' estates, to the prejudice and detriment of both the Debtors and, more importantly, their creditors. *See, e.g.*, *In re Enron,* 419 F.3d at 132 (finding that bankruptcy court properly considered "the opening of the 'floodgates' to similar claims" and "the number of *potential* claimants who might have been prompted to file late claims in the wake of a ruling in [the movant]'s favor" in denying late claim motion); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990) ("Bar dates protect not only the debtor's interests, but creditors' interests as well [because they] establish[] a date by which the plan

5

proponent can determine which liabilities will be asserted against the estate."); *see also* Jan. 24, 2020 Omnibus Hr'g Tr. 64: 8-12 ("[T]he rationale[] here for having a bar date . . . is perhaps more important in this case than some other cases" because it is imperative to know "who individuals are who say they have a material claim.")

7.  *Second*, the delay is substantial and could adversely impact these proceedings. Indeed, the Movants seek to file proofs of claim over six weeks after this Court entered the order confirming the Debtors' plan on September 17, 2021 [Dkt. No. 3787] (the "**Confirmation Order**"), and over fifteen months after the bar date. The Debtors' plan was negotiated, developed, solicited, voted on, and approved by the Debtors' creditors and this Court with the understanding of potential recoveries based on the number of timely filed personal injury claims. Allowing the Movants' claims as timely without a justifiable reason as to why they could not comply with the filing deadline—with the potential for opening the floodgates to a substantial number of additional similarly-situated personal injury claims—could result in attendant costs and delay to the final administration of these cases, and dilute the potential recoveries of those personal injury claimants who filed timely claims and, thus, are entitled to seek distributions from the personal injury trust under the Debtors' plan. *In re Enron*, 419 F.3d at 128 ("[C]ourts generally consider the degree to which...the delay may disrupt the judicial administration of the case.") (citation and quotations omitted). Accordingly, with respect to the request to file late proofs of claim, the Debtors request that the Court deny the Motions without prejudice so that the Movants may promptly submit evidence describing the reason for the delay and demonstrating that filing a timely claim was outside of the Movants' control.

8.  Mr. Caulk's request that additional notice be provided to incarcerated individuals who can demonstrate opioid addiction (Caulk Mot. at 2) should also be denied. *First*, as this

Court has noted, the notice provided in these chapter 11 cases has been "extraordinary." (*See* June 3, 2020 Hr'g Tr. 89:4.) Indeed, the Debtors successfully provided notice of the bar date to an estimated 98% of all adults in the United States over the age of 18 with an average frequency of message exposure of eight times, and an estimated 86% of all adults in Canada over the age of 18 with an average frequency of message exposure of four times, using virtually every form of modern media, including direct mailings, television, radio, magazines and newspapers, billboards, online display advertisements, internet search terms, digital video and social media campaigns, and press releases. (*See Third Supplemental Declaration of Jeanne C. Finegan* ¶¶ 5-12 (Aug. 5, 2021), Dkt. No. 3404.) *Second,* this Court has already considered and rejected a similar request for additional notice. (*See* Objection to Plan & Confirmation ¶¶ 3, 5 (July 19, 2021), Dkt. No. 3271 (alleging that the "Debtors did not provide constitutionally adequate notice to potential claimants, particularly those potential claimants incarcerated in [s]tate prisons" and requesting that "additional constructive, if not actual, notice [be provide] to opioid use disorder victims").) In denying the request, the Court noted that although "it is possible that because of prison regulations . . . prisoners may not have received the same high level of notice of these cases," the "notice program was in large part effective in reaching prisons and groups known to work with people who are in prison and suffering from opioid use disorder or other adverse effects of opioids." (Modified Bench Ruling, at 6 (Sept. 17, 2021), Dkt. No. 3786.) Moreover, as this Court has noted and as described above, "the Debtors, including in the plan's personal injury trust procedures, have shown a willingness to consider requests to assert and prove [late claims] based on evidence of prisoners' unique circumstances that may have restricted notice to them." (*Id.* at 6-7.) Accordingly, because "[n]otice of the [bar date] provided . . . was reasonable and appropriate, and provided due, proper, adequate, timely, and sufficient notice of

the [bar date] and the procedures for filing proofs of claim," and given that the Debtors and the Debtors' plan provide a mechanism to consider and allow late claims, additional notice is unnecessary and the request should be denied. (*See* Confirmation Order ¶ RR.(a).)

For the reasons set forth above, the Debtors respectfully request that the Court deny the Motions without prejudice to the extent they seek permission to file late proofs of claim so that the Movants may promptly submit evidence describing the reason for the delay and demonstrating that filing a timely claim was outside of the Movants' control, and deny the Caulk Motion to the extent it seeks to have additional notice provided to incarcerated individuals.

Dated:  December 9, 2021
      New York, New York

                                        */s/ James I. McClammy*
                                        DAVIS POLK & WARDWELL LLP
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Telephone: (212) 450-4000
                                        Facsimile: (212) 701-5800
                                        Marshall S. Huebner
                                        Benjamin S. Kaminetzky
                                        James I. McClammy
                                        Eli J. Vonnegut

                                        *Counsel to the Debtors*
                                        *and Debtors in Possession*