Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                 United States Bankruptcy Court

12                 Tele/Video Proceedings

13                 300 Quarropas Street, Room 248

14                 White Plains, NY 10601

15

16                 October 14, 2021

17                 10:16 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: A. VARGAS

1    HEARING re Notice of Agenda / Agenda for October 14, 2021

2    Hearing and Pre-Hearing Conference

3

4    HEARING re Motion to File Proof of Claim after Claims Bar

5    Date filed by Emanuel Thirkill (ECF #3764)

6

7    HEARING re Motion to File Proof of Claim after Claims Bar

8    Date filed by Howard Adelglass (ECF #3840)

9

10   HEARING re Letter / Support for Debtor's Motion to File

11   Proof of Claim after Claims Bar Date (related document(s)

12   3840) filed by Howard Adelglass (ECF #3885)

13

14   HEARING re Objection /Debtors' Objection to Motion to File

15   Proof of Claim after Claims Bar Date (related document(s)

16   3885, 3840) filed by James I. McClammy on behalf of Purdue

17   Pharma L.P. (ECF #3911)

18

19   HEARING re Motion to Allow/Letter - Derivative and

20   Fraudulent Conveyance filed by Ronald Bass, Sr. (ECF #3619)

21

22   HEARING re Objection to Motion for the Joint Administration

23   of Claims of Ronald Bass, Sr. (related document(s) 3619

24   (filed by Valerie A. Hamilton on behalf of State of New

25   Jersey (ECF #3905)

                                                            Page 3

1    HEARING re Objection / Debtors' Omnibus Objection to Ronald

2    Bass's Derivative and Fraudulent Conveyance Motion and

3    Supporting Letter (related document(s) 3619, 3721) filed by

4    James I. McClammy on behalf of Purdue Pharma L.P. (ECF

5    #3910)

6

7    HEARING re Related Document: Letter to Judge Drain in

8    support of the hearing for the month of October 2021 re:

9    claim 89590 (related document(s) 3619) filed by Ronald Bass,

10   Sr. (ECF #3721)

11

12   HEARING re Certification of Direct Appeal to Court of

13   Appeals/ United States Trustees Memorandum of Law in Support

14   of Motion to Certify Direct Appeal to the Court of Appeals

15   under 28 USC § 158(d) (related document(s) 3799, 3777) filed

16   by Linda Riffkin on behalf of United States Trustee (ECF

17   #3868)

18

19   HEARING re Responses Received: Opposition to Motions to

20   Certify Direct Appeals to the Second Circuit (related

21   document(s) 3686, 3874, 3871) filed by James P. Wehner, Jr.

22   on behalf of Multi-State Governmental Entities Group (ECF

23   #3932)

24

25

1   HEARING re Objection/Debtors Omnibus Objection to Motions

2   for Certification of a Direct Appeal to the United States

3   Court of Appeals for the Second Circuit Pursuant to 28 USC

4   158(D) (related document(s) 3686, 3874, 3871, 3913)(ECF

5   #3933)

6

7   HEARING re Objection/Joinder of the Ad Hoc Group of

8   Individual Victims' to Debtors' Omnibus Objection to Motions

9   for Certification of a Direct Appeal to the United States

10  Court of Appeals for the Second Circuit Pursuant to 28 USC §

11  158(D) and Statement of Non-Consent to Certification

12  (related document(s) 3868, 3874, 3933, 3871, 3913) filed by

13  J. Christopher Shore on behalf of Ad Hoc Group of Individual

14  Victims of Purdue Pharma L.P. (ECF #3934)

15

16  HEARING re Opposition of the Official Committee of Unsecured

17  Creditors to Motions to Certify Direct Appeal (related

18  document(s) 3868, 3874, 3871, 3913) filed by Ira S.

19  Dizengoff on behalf of The Official Committee of Unsecured

20  Creditors of Purdue Pharma L.P., et al. (ECF #3935)

21

22  HEARING re Opposition to of The Official Committee of

23  Unsecured Creditors of Purdue Pharma L.P., et al. (ECF

24  #3935)

25

Page 5

1    HEARING re Objection / Ad Hoc Committee's Omnibus Objection

2    to Motions for Certification Under 27 U.S.C. § 158(d)(2)(A)

3    (related document(s)3868, 3874, 3871) filed by Kenneth H.

4    Eckstein on behalf of Ad Hoc Committee of Governmental and

5    Other Contingent Litigation Claimants.   (ECF #3936)

6

7    HEARING re Related Documents: Motion to Shorten Time /

8    United States Trustee's Ex Parte Motion for an Order

9    Shortening Notice and Scheduling Hearing with Respect to the

10   United States Trustee's Motion to Certify Direct Appeal to

11   the Court of Appeals under 28 USC § 158(d) (related

12   document(s)3868) filed by Linda Riffkin on behalf of United

13   States Trustee (ECF #3869)

14

15   HEARING re Notice of Hearing / Notice of Hearing on United

16   States Trustee's (1) Expedited Motion for an Order

17   Certifying Direct Appeal to the United States Court of

18   Appeals for the Second Circuit Under 28 USC § 158(D) and

19   (II) Motion for an Order Shortening Notice and Scheduling

20   Hearing with Respect to the United States Trustee's Motion

21   to Certify Direct Appeal to the Court of Appeals Under 28

22   USC § 158(d) (related document(s) 3868, 3869) filed by Linda

23   Riffkin on behalf of United States Trustee. (ECF #3870)

24

25

Page 6

1    HEARING re Notice of Hearing / Amended Notice of Hearing on

2    United States Trustees (I) Expedited Motion for an Order

3    Certifying Direct Appeal to the United States Court of

4    Appeals for the Second Circuit Under 28 USC 158(D) and (II)

5    Motion for an Order Shortening Notice and Scheduling Hearing

6    with Respect to the United States Trustees Motion to Certify

7    Direct Appeal to the Court of Appeals Under 28 USC 158(d)

8    (related document(s)3870) (ECF #3875)

9

10   HEARING re Appealing States' Motion for Certification.

11   Certification of Direct Appeal to Court of Appeals the

12   Appealing States' Motion for Certification Pursuant to 28

13   USC § 158(d)(2) (A) filed by Matthew J. Gold on behalf of

14   State of Washington.   (ECF #3871)

15

16   HEARING re Responses Received: Opposition to Motions to

17   Certify Direct Appeals to the Second Circuit (related

18   document(s)3868, 3874, 3871) filed by James P. Wehner Jr. on

19   behalf of Multi-State Governmental Entities Group.  (ECF

20   #3932)

21

22

23

24

25

Page 7

1    HEARING re Objection / Debtors Omnibus Objection to Motions

2    for Certification of a Direct Appeal to the United States

3    Court of Appeals for the Second Circuit Pursuant to 28

4    U.S.C. 158(D) (related document(s)3686, 3874, 3871,

5    3913)(ECF #3933)

6

7    HEARING re Objection / Joinder of the Ad Hoc Group of

8    individual Victims' to Debtors' Omnibus Objection to Motions

9    for Certification of a Direct Appeal to the United States

10   Court of Appeals for the Second Circuit Pursuant to 28

11   U.S.C. § 158(0) and Statement of Non-Consent to

12   Certification (related document(s) 3868, 3874, 3933, 3871,

13   3913) filed by J. Christopher Shore on behalf of Ad Hoc

14   Group of Individual Victims of Purdue Pharma L.P. (ECF

15   #3934)

16

17   HEARING re Opposition of the Official Committee of Unsecured

18   Creditors to Motions to Certify Direct Appeal (related

19   document(s)3868, 3874, 3871, 3913) filed by Ira S. Dizengoff

20   on behalf of The Official Committee of Unsecured Creditors

21   of Purdue Pharma L.P., et al. (ECF #3935)

22

23

24

25

Page 8

1    HEARING re Objection / Ad Hoc Committee's Omnibus Objection

2    to Motions for Certification Under 27 U.S.C. § 158(d)(2)(A)

3    (related document(s)3868, 3874, 3871) filed by Kenneth H.

4    Eckstein on behalf of Ad Hoc Committee of Governmental and

5    Other Contingent Litigation Claimants.  (ECF #3936)

6

7    HEARING re Motion to Shorten Time - The State of

8    Washington's Ex Parte Motion for an Order Shortening Notice

9    and Scheduling Hearing with Respect to the Appealing States'

10   Motion for Certification Pursuant to 28 U.S.C. §

11   158(d)(2)(A) filed by Matthew J. Gold on behalf of State of

12   Washington.  (ECF #3872)

13

14   HEARING re Amended Notice of Hearing on {I) Appealing

15   States' Motion for Certification Pursuant to 28 U.S.C. §

16   158(d)(2)(A) and (II) The State of Washington's Ex Parte

17   Motion for an Order Shortening Notice and Scheduling Hearing

18   with Respect to The Appealing States' Motion for

19   Certification Pursuant to 28 U.S.C. § 158(d)(2)(A) filed by

20   Matthew J. Gold on behalf of State of Washington.  (ECF

21   #3881)

22

23

24

25

1   HEARING re State of California Direct Appeal and Joinder.

2   Certification of Direct Appeal to Court of Appeals and

3   Joinder to the Appealing States' Motion for Certification

4   Under 28 U.S.C. § 158(d)(2)(A) filed by Bernard Ardavan

5   Eskandari on behalf of The People of the State of

6   California.  (ECF #3874)

7

8   HEARING re Responses Received: Opposition to Motions to

9   Certify Direct Appeals to the Second Circuit (related

10  document(s)3868, 3874, 3871) filed by James P. Wehner Jr. on

11  behalf of Multi-State Governmental Entities Group.  (ECF

12  #3932)

13

14  HEARING re Objection / Debtors Omnibus Objection to Motions

15  for Certification of a Direct Appeal to the United States

16  Court of Appeals for the Second Circuit Pursuant to 28

17  U.S.C. 158(0) (related document(s)3686, 3874, 3871,

18  3913)(ECF #3933)

19

20

21

22

23

24

25

Page 10

1    HEARING re Objection/ Joinder of the Ad Hoc Group of

2    Individual Victims' to Debtors' Omnibus Objection to Motions

3    for Certification of a Direct Appeal to the United States

4    Court of Appeals for the Second Circuit Pursuant to 28

5    U.S.C. § 158(D) and Statement of Non-Consent to

6    Certification (related document(s)3868, 3874, 3933, 3871,

7    3913) filed by J. Christopher Shore on behalf of Ad Hoc

8    Group of Individual Victims of Purdue Pharma L.P. (ECF

9    #3934)

10

11   HEARING re Opposition of the Official Committee of Unsecured

12   Creditors to Motions to Certify Direct Appeal (related

13   document(s) 3868, 3874, 3871, 3913) filed by Ira S.

14   Dizengoff on behalf of The Official Committee of Unsecured

15   Creditors of Purdue Pharma L.P., et al. (ECF #3935)

16

17   HEARING re Objection / Ad Hoc Committee's Omnibus Objection

18   to Motions for Certification Under 27 U.S.C. § 158(d)(2)(A)

19   (related document(s)3868, 3874, 3871) filed by Kenneth H.

20   Eckstein on behalf of Ad Hoc Committee of Governmental and

21   Other Contingent Litigation Claimants.  (ECF #3936)

22

23

24

25

Page 11

1   HEARING re Statement and Joinder of Certain Canadian

2   Municipality and First Nations Creditors and Appellants, In

3   Support of the Motions by the Office of the United States

4   Trustee and the Appealing States for Certification of a

5   Consolidated and Expedited Direct Appeal to the Court of

6   Appeals for the Second Circuit (related document(s)3868,

7   3874, 3871) filed by Allen J. Underwood on behalf of Certain

8   Canadian Municipality Creditors and Canadian First Nation

9   Creditors.  (ECF #3913)

10

11  HEARING re Responses Received: Opposition to Motions to

12  Certify Direct Appeals to the Second Circuit (related

13  document(s) 3868, 3874, 3871) filed by James P. Wehner Jr.

14  on behalf of Multi-State Governmental Entities Group.  (ECF

15  #3932)

16

17  HEARING re Objection / Debtors Omnibus Objection to Motions

18  for Certification of a Direct Appeal to the United States

19  Court of Appeals for the Second Circuit Pursuant to 28

20  U.S.C. 158(0) (related document(s) 3686, 3874, 3871,

21  3913)(ECF #3933)

22

23

24

25

Page 12

1    HEARING re Objection / Joinder of the Ad Hoc Group of

2    Individual Victims' to Debtors' Omnibus Objection to Motions

3    for Certification of a Direct Appeal to the United States

4    Court of Appeals for the Second Circuit Pursuant to 28

5    U.S.C. § 158(D) and Statement of Non-Consent to

6    Certification (related document(s) 3868, 3874, 3933, 3871,

7    3913) filed by J. Christopher Shore on behalf of Ad Hoc

8    Group of Individual Victims of Purdue Pharma L.P. (ECF

9    #3934)

10

11   HEARING re Opposition of the Official Committee of Unsecured

12   Creditors to Motions to Certify Direct Appeal (related

13   document(s) 3868, 3874, 3871, 3913) filed by Ira S.

14   Dizengoff on behalf of The Official Committee of Unsecured

15   Creditors of Purdue Pharma L.P., et al. (ECF #3935)

16

17   HEARING re Objection / Ad Hoc Committee's Omnibus Objection

18   to Motions for Certification Under 27 U.S.C. § 158(d)(2)(A)

19   (related document(s)3868, 3874, 3871) filed by Kenneth H.

20   Eckstein on behalf of Ad Hoc Committee of Governmental and

21   Other Contingent Litigation Claimants.  (ECF #3936)

22

23

24

25

Page 13

1    HEARING re United States Trustee's Motion for Stay Pending

2    Appeal / Memorandum of Law in Support of United States

3    Trustees Expedited Motion for A Stay Of Confirmation Order

4    And Related Orders Pending Appeal Pursuant To Federal Rule

5    Of Bankruptcy Procedure 8007 (related document(s)3777, 3776)

6    filed by Linda Riffkin on behalf of United States Trustee.

7    (ECF #3778)

8

9    HEARING re Related Documents: Order signed on 9/15/2021

10   Granting Motion (I) Authorizing the Debtors to Fund

11   Establishment of the Creditor Trusts, the Master

12   Disbursement Trust and Topco, (II) Directing Prime Clerk LLC

13   to Release Certain Protected Information, and (ill) Granting

14   Other Related Relief (Related Doc # 3484) (ECF #3773)

15

16   HEARING re Motion for Stay Pending Appeal / Memorandum of

17   Law in Support of United States Trustees Expedited Motion

18   for A Stay of Confirmation Order and Related Orders Pending

19   Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007

20   (related document(s)3777, 3776) filed by Linda Riffkin on

21   behalf of United States Trustee. (ECF #3778)

22

23

24

25

Page 14

1   HEARING re Motion to Shorten Time United States Trustees Ex

2   Parte Motion for An Order Shortening Notice and Scheduling

3   Hearing with Respect to The United States Trustees Expedited

4   Motion for A Stay Of Confirmation Order And Related Orders

5   Pending Appeal Pursuant To Federal Rule Of Bankruptcy

6   Procedure 8007 (related document(s) 3778) filed by Linda

7   Riffkin on behalf of United States Trustee. (ECF #3779)

8

9   HEARING re Modified Bench Ruling on For Confirmation of

10   Eleventh Amended Joint Chapter 11 Plan Signed on 9/17/2021.

11   (ECF #3786)

12

13   HEARING re Findings of Fact, Conclusions of Law, And Order

14   Confirming the Twelfth Amended Joint Chapter 11 Plan of

15   Reorganization Of Purdue Pharma L.P. and its Affiliated

16   Debtors Signed On 9/17/2021 (related document(s)3726). (ECF

17   #3787)

18

19   HEARING re Amended Motion for Stay Pending Appeal / Amended

20   Memorandum of Law in Support of United States Trustee's

21   Expedited Motion for A Stay Of Confirmation Order And

22   Related Orders Pending Appeal Pursuant To Federal Rule Of

23   Bankruptcy Procedure 8007 (related document(s)3799, 3777,

24   3776, 3778, 3779) filed by Linda Riffkin on behalf of United

25   States Trustee. (ECF #3801)

Page 15

1    HEARING re Motion to Stay / Memorandum of Law in Support of

2    United States Trustee's Expedited Motion to Extend the

3    Automatic Stay of the Confirmation Order and for a Limited

4    Stay of the Related Orders Pending Resolution of His

5    Expedited Motion for a Stay Pending Appeal (related

6    document(s)3786, 3787, 3773) filed by Linda Riffkin on

7    behalf of United States Trustee.  (ECF #3803)

8

9    HEARING re Motion to Shorten Time / United States Trustees

10   Ex Parte Motion for an Order Shortening Notice and

11   Scheduling Hearing with Respect to the United States

12   Trustee's Expedited Motion to Extend the Automatic Stay of

13   the Confirmation Order and for a Limited Stay of the Related

14   Orders Pending Resolution of His Expedited Motion for a Stay

15   Pending Appeal (related document(s)3803) filed by Linda

16   Riffkin on behalf of United States Trustee.  (ECF #3804)

17

18   HEARING re Statement / Notice of Listen-Only Dial-in for

19   Status and Scheduling Conference (related document(s)3779)

20   filed by Eli J. Vonnegut on behalf of Purdue Pharma L.P.

21   (ECF #3838)

22

23   HEARING re Washington and Connecticut States Stay Motion.

24   Motion for Stay Pending Appeal (related document(s)3786,

25   3787, 3773) filed by Matthew J. Gold on behalf of State of

Page 16

1    Washington.   (ECF #3789)

2

3    HEARING re Related Documents: Modified Bench Ruling On For

4    Confirmation Of Eleventh Amended Joint Chapter 11 Plan

5    Signed on 9/17/2021. (ECF #3786)

6    HEARING re Findings of Fact, Conclusions of Law, And Order

7    Confirming The Twelfth Amended Joint Chapter 11 Plan Of

8    Reorganization Of Purdue Pharma L.P. And Its Affiliated

9    Debtors Signed On 9/17/2021 (related document(s)3726).   (ECF

10   #3787)

11

12   HEARING re Motion for Stay Pending Appeal of Confirmation

13   and Trust Advances Orders filed by Brian Edmunds on behalf

14   of State of Maryland. (ECF #3845)

15

16   HEARING re Related Documents: Order signed on 9/15/2021

17   Granting Motion (I) Authorizing the Debtors to Fund

18   Establishment of the Creditor Trusts, the Master

19   Disbursement Trust and Topco, (II) Directing Prime Clerk LLC

20   to Release Certain Protected Information, and (III) Granting

21   Other Related Relief (Related Doc# 3484).   (ECF #3773)

22

23   HEARING re Modified Bench Ruling on For Confirmation Of

24   Eleventh Amended Joint Chapter 11 Plan Signed on

25   9/17/2021.(ECF #3786)

1   HEARING re Findings of Fact, Conclusions Of Law, And Order

2   Confirming The Twelfth Amended Joint Chapter 11 Plan Of

3   Reorganization Of Purdue Pharma L.P. And Its Affiliated

4   Debtors Signed On 9/17/2021 (related document(s)3726). (ECF

5   #3787)

6

7   HEARING re Motion for Stay Pending Appeal (related

8   document(s)3810, 3847) filed by Ronald Bass Sr. (ECF #3860)

9

10  HEARING re Related Documents: Order signed on 9/15/2021

11  Granting Motion (I) Authorizing the Debtors to Fund

12  Establishment of the Creditor Trusts, the Master

13  Disbursement Trust and Topco, (II) Directing Prime Clerk LLC

14  to Release Certain Protected Information, and (III) Granting

15  Other Related Relief (Related Doc# 3484).  (ECF #3773)

16

17  HEARING re Modified Bench Ruling on For Confirmation Of

18  Eleventh Amended Joint Chapter 11 Plan Signed on

19  9/17/2021.(ECF #3786)

20

21  HEARING re Findings of Fact, Conclusions of Law, and Order

22  Confirming the Twelfth Amended Joint Chapter 11 Plan of

23  Reorganization of Purdue Pharma L.P. and Its Affiliated

24  Debtors Signed On 9/17/2021 (related document(s)3726).  (ECF

25  #3787)

Page 18

1   HEARING re Motion for Stay Pending Appeal filed by Allen J.

2   Underwood on behalf of Certain Canadian Municipality

3   Creditors and Canadian First Nation Creditors (ECF #3873)

4   HEARING re Related Documents: Order signed on 9/15/2021

5   Granting Motion (I) Authorizing the Debtors to Fund

6   Establishment of the Creditor Trusts, the Master

7   Disbursement Trust and Topco, (II) Directing Prime Clerk LLC

8   to Release Certain Protected Information, and (III) Granting

9   Other Related Relief (Related Doc# 3484).   (ECF #3773)

10

11   HEARING re Modified Bench Ruling on For Confirmation of

12   Eleventh Amended Joint Chapter 11 Plan Signed on

13   9/17/2021.(ECF #3786)

14   HEARING re Findings of Fact, Conclusions of Law, and Order

15   Confirming the Twelfth Amended Joint Chapter 11 Plan of

16   Reorganization of Purdue Pharma L.P. and Its Affiliated

17   Debtors Signed On 9/17/2021 (related document(s)3726).   (ECF

18   #3787)

19

20   HEARING re Motion for Stay Pending Appeal filed by Ellen

21   Isaacs (ECF #3890)

22

23

24

25

Page 19

1   HEARING re Related Documents: Order signed on 9/15/2021

2   Granting Motion (I) Authorizing the Debtors to Fund

3   Establishment of the Creditor Trusts, the Master

4   Disbursement Trust and Topco, (II) Directing Prime Clerk LLC

5   to Release Certain Protected Information, and (III) Granting

6   Other Related Relief (Related Doc# 3484).  (ECF #3773)

7

8   HEARING re Modified Bench Ruling on For Confirmation of

9   Eleventh Amended Joint Chapter 11 Plan Signed on

10  9/17/2021.(ECF #3786)

11

12  HEARING re Findings Of Fact, Conclusions Of Law, And Order

13  Confirming The Twelfth Amended Joint Chapter 11 Plan Of

14  Reorganization Of Purdue Pharma L.P. And Its Affiliated

15  Debtors Signed On 9/17/2021 (related document(s)3726). (ECF

16  #3787)

17

18

19

20

21

22

23

24

25  Transcribed by:  Sonya Ledanski Hyde

Page 20

1    A P P E A R A N C E S :

2

3    DAVIS POLK WARDWELL LLP

4          Attorneys for Debtors

5          450 Lexington Avenue

6          New York, NY 10017

7

8    BY:  MARSHALL SCOTT HUEBNER (TELEPHONICALLY)

9          ESTHER TOWNES (TELEPHONICALLY)

10         JAMES I. MCCLAMMY (TELEPHONICALLY)

11         MARC JOSEPH TOBAK (TELEPHONICALLY)

12         BENJAMIN S. KAMINETZKY (TELEPHONICALLY)

13

14   UNITED STATES DEPARTMENT OF JUSTICE

15         Attorneys for the U.S. Trustee

16         201 Varick Street, Suite 1006

17         New York, NY 10014

18

19   BY:  BENJAMIN J. HIGGINS (TELEPHONICALLY)

20

21

22

23

24

25

Page 21

1    UNITED STATES DEPARTMENT OF JUSTICE

2         Attorneys for the U.S. Trustee

3         441 G Street, NW, Suite 6150

4         Washington, DC 20530

5

6    BY:  NAN ROBERTS EITEL (TELEPHONICALLY)

7

8    OFFICE OF THE ATTORNEY GENERAL OF NJ

9         Attorneys for the State of New Jersey

10        25 Market Street

11        Trenton, NJ 08625-0106

12

13   BY:  VALERIE A. HAMILTON ((TELEPHONICALLY)

14

15   PULLMAN COMLEY, LLC

16        Attorneys for the State of Connecticut

17        850 Main Street

18        Bridgeport, CT 06604

19

20   BY:  IRVE J. GOLDMAN (TELEPHONICALLY)

21

22

23

24

25

Page 22

1   OFFICE OF THE ATTORNEY GENERAL – STATE OF MARYLAND

2        Attorneys for the State of Maryland

3        200 Saint Paul Place

4        Baltimore, MD 20852

5

6   BY:  BRIAN EDMUNDS (TELEPHONICALLY)

7

8   KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.

9        Attorneys for the State of Washington

10       500 Fifth Avenue

11       New York, NY 10110

12

13  BY:  MATTHEW J. GOLD (TELEPHONICALLY)

14

15  LITE DEPALMA GREENBERG & AFANADOR

16       Attorneys for Certain Canadian Municipality Creditors

17       and Canadian First Nation Creditors

18       570 Broad Street, Suite 1201

19       Newark, NJ 07102

20

21  BY:  ALLEN J. UNDERWOOD (TELEPHONICALLY)

22

23

24

25

Page 23

1    AKIN GUMP STRAUSS HAUER & FELD

2         Attorneys for the Official Committee of Unsecured

3         Creditors

4         One Bryant Park

5         Bank of America Tower

6         New York, NY 10036-6745

7

8    BY:  ARIK PREIS (TELEPHONICALLY)

9         MITCHELL HURLEY (TELEPHONICALLY)

10

11   KRAMER LEVIN NAFTALIS FRANKEL LLP

12        Attorneys for the Ad Hoc Committee of Government and

13        Other Contingent Litigation Claimants

14        1177 Avenue of the Americas

15        New York, NY 10036

16

17   BY:  DAVID E. BLABEY (TELEPHONICALLY)

18

19   CAPLIN & DRYSDALE

20        Attorneys for Multi-State Governmental Entities Group

21        600 Lexington Avenue, 21st Floor

22        New York, NY 10022

23

24   BY:  JEFFREY LIESEMER (TELEPHONICALLY)

25

**Page 24**

```
 1   WHITE & CASE LLP

 2        Attorneys for Ad Hoc Group of Individual Victims

 3        1221 Avenue of the Americas

 4        New York, NY 10020-1095

 5

 6   BY:  J. CHRISTOPHER SHORE (TELEPHONICALLY)

 7

 8   ALSO PRESENT TELEPHONICALLY:

 9   DR. HOWARD ADELGLASS, Pro Se

10   RONALD BASS, SR., Pro Se

11   ELLEN ISAACS, Pro Se

12   AMANDA MORALES, Pro Se

13   JILL S ABRAMS

14   ROXANA ALEALI

15   ANNE ANDREWS

16   MICHAEL ATKINSON

17   JASMINE BALL

18   BROOKS BARKER

19   KATHRYN BENEDICT

20   SARA BRAUNER

21   JULIUS CHEN

22   DYLAN CONSLA

23   MARIO D'ANGELO

24   HEATHER M. CROCKETT

25   CLINT DOCKEN
```

 1   STEPHANIE EBERHARDT

 2   MARIA ECKE

 3   KENNETH H. ECKSTEIN

 4   BERNARD ARDAVAN ESKANDARI

 5   MATHEW FARRELL

 6   LAURA FEMINO

 7   LAWRENCE FOGELMAN

 8   MAGALI GIDDENS

 9   JEFFREY R. GLEIT

10   SEAN T HIGGINS

11   ELISA HYDER

12   HAROLD D. ISRAEL

13   EVAN M. JONES

14   GREGORY JOSEPH

15   MARC KESSELMAN

16   DARREN S. KLEIN

17   ANN LANGLEY

18   ALEXANDER LEES

19   BETH ANN LEVENE

20   MARA LEVENTHAL

21   KEVIN MACLAY

22   BRIAN S. MASUMOTO

23   PATRICK C. MAXCY

24   SHANNON M MCNULTY

25   MICHELE MEISES

1    NATHANIEL MILLER

2    MAURA KATHLEEN MONAGHAN

3    MICHAEL PATRICK O'NEIL

4    THOMAS ROBINSON O'NEILL

5    RACHEL R OBALDO

6    SUSAN OUSTERMAN

7    KATHERINE PORTER

8    MICHELE PUIGGARI

9    LINDA RIFFKIN

10    RACHAEL RINGER

11    CHRISTOPHER ROBERTSON

12    JEFFREY J. ROSEN

13    ELIZABETH SCHLECKER

14    PAUL KENAN SCHWARTZBERG

15    LUCAS H SELF

16    J. CHRISTOPHER SHORE

17    MARC F. SKAPOF

18    D. RYAN R SLAUGH

19    KATE SOMERS

20    CLAUDIA Z. SPRINGER

21    ERIC STODOLA

22    ANDREW M. TROOP

23    ALICE TSIER

24    GERARD UZZI

25    MELISSA L. VAN ECK

Page 27

1   ANDREW D. VELEZ-RIVERA

2   ELI J. VONNEGUT

3   ALLISON H. WEISS

4   THEODORE WELLS

5   LAUREN S. ZABEL

6   JAMIE ZEEVI

7   VINCE SULLIVAN

8   NADINE A ALBENZE-SMITH

9   JOSEPH BRANDT

10   ROBERT G. BURNS

11   TZERINA DIZON

12   MATTHEW FITZSIMMONS

13   CAROLINE GANGE

14   UDAY GORREPATI

15   TAYLOR HARRISON

16   JEREMY C. HILL

17   DIETRICH KNAUTH

18   ANN KRAMER

19   M. NATASHA LABOVITZ

20   NICOLE A LEONARD

21   KAREN LEUNG

22   SIDNEY P. LEVINSON

23   THOMAS MAHLUM

24   NICHOLAS PREY

25   EVAN ROMANOFF

Page 28

1   JOSEPH A. SHIFER

2   RICHARD SHORE

3   SARAH SRADERS

4   JACOB W. STAHL

5   MAHALAXMI SUBRAMANIAN

6   VINCE SULLIVAN

7   WENDY WEINBERG

8   ANNIE WELLS

9   KATIE M WHITE

10   MARY JO WHITE

11   HAROLD WILLIFORD

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  All right, good morning.  This is

3    Judge Drain.  We are here in In re Purdue Pharma L.P., et al

4    for the October Omnibus hearing.  I have the agenda for this

5    hearing, and I am happy to go down it in order.

6          I will note that I'm a little late getting on the

7    bench because I have received and reviewed District Judge

8    McMahon's memorandum and order denying without prejudice the

9    United States Trustee's emergency motion for a stay pending

10   appeal.  The agenda includes at the end of the calendar a

11   pre-hearing conference on this Court's determination of the

12   U.S. Trustee's motion for a stay pending appeal and other

13   similar motions.

14         So, again, I'm going to go down the agenda in the

15   order of the agenda.  And the first matter on the calendar

16   is a motion -- I'm deeming it a motion as the Debtor's did

17   by filing a notice, and a notice of opposed order resolving

18   it, of Emanuel Thirkill.  Is Mr. Thirkill on the phone?  No.

19   All right.

20         I don't know who is handling this from the

21   Debtor's side.

22         MR. HUEBNER:  Your Honor, good morning.  For the

23   record, Marshall Huebner of Davis Polk.  I believe that the

24   first matter is being held by Ms. Esther Townes.

25         THE COURT:  Okay.

Page 30

1          MR. HUEBNER:  I'll turn the podium over to her.

2          THE COURT:  I see Ms. Townes on the screen.

3          MS. TOWNES:  Good morning, Your Honor.

4          THE COURT:  Good morning.

5          MS. TOWNES:  For the record, this is Esther Townes

6     with Davis Polk & Wardwell on behalf of the Debtor.  Can you

7     hear me clearly?

8          THE COURT:  Yes, I can.  Thanks.

9          MS. TOWNES:  So Mr. Thirkill's late claim motion

10    is at Docket Number 3764.  And based on (indiscernible) Mr.

11    Thirkill's motion, the Debtor (indiscernible) granting his

12    request (indiscernible) Pioneer factors.  In addition, the

13    Debtor has consulted with the UCC and the Ad Hoc Group

14    (indiscernible) individual victims regarding

15    (indiscernible).

16          So on that basis, the Debtors (indiscernible) at

17    Docket Number 3901.  And that (indiscernible).

18          THE COURT:  Okay.  You were cutting in and out a

19    little bit, Ms. Townes.  But I think the record is clear

20    that the Debtors consent to the motion for relief to file a

21    late claim under Bankruptcy Rule 9006 and the case law

22    interpreting it.  And, in fact, the Debtors then provided

23    notice of their proposed order on October 6th, which would

24    grant the motion without prejudice of course to any party's

25    rights with regard to the underlying merits of the claim.

Page 31

1    That notice is unopposed, and the Debtors have also

2    represented that the Official Unsecured Creditors' Committee

3    does not oppose the granting of the motion.  Does anyone

4    else have anything to say on this motion?  Okay.

5            I will grant the motion.  The standard to permit a

6    late claim to be filed under Bankruptcy Rule 9006 and the

7    case law interpreting it, including Pioneer Investment

8    Services Company v. Brunswick Associates Limited

9    Partnership, 507 U.S. 380, 395 (1993) and In re Enron Corp.,

10   419 F.3d 115, 122 (2d Cir. 2005) is a fairly exacting one,

11   particularly with regard to Circuit has described as the

12   most important factor to consider, which is whether the

13   filing of the late claim in a timely manner was within the

14   reasonable control of the movant, i.e. the excuse for the

15   late filing.

16           The scrutiny paid to request to file late claims

17   is heightened when there has been a lengthy delay between

18   the bar date and the request to file a late claim and also

19   where a plan in reliance on in part the claims that were

20   timely filed has been negotiated and confirmed.  Both of

21   those facts apply here, as does the fact that there was

22   substantially extended notice of the bar date, particularly

23   for personal injury claims.

24           Nevertheless, Mr. Thirkill asserts that he was

25   subject to COVID-19 restrictions as well as confinement.

Page 32

1    And I think the Debtors could reasonably infer because of

2    that, his filing a late claim was outside of his reasonable

3    control.

4           In any event, the focus will be on the merits of

5    the claim, which is fully preserved and not on this issue,

6    which would have cost a fair amount of money to resolve as

7    far as whether it was within or not within his control.

8           So you can email the order granting the motion and

9    reserving all other rights to chambers and it will be

10   entered.

11          MS. TOWNES:  Will do, Your Honor.  Thank you.

12          THE COURT:  Okay.  The next matter on the calendar

13   is a motion that actually does not seek specifically leave

14   to file a late claim under Bankruptcy Rule 9006 and Pioneer

15   and Enron but has been taken by the Court to seek that

16   relief given that the movant, Howard Adelglass, has not

17   filed a timely claim.  And in a letter to the Court dated

18   September 23, 2021 seeks to have a claim considered against

19   the Debtors.

20          So I see Mr. Adelglass on the screen.  This motion

21   was objected to by the Debtors.  I have reviewed it.  But,

22   Mr. Adelglass, I don't know if you have anything more to say

23   on the request to file the claim late.

24          MR. ADELGLASS:  Well, I am a doctor, and I was

25   targeted by Purdue.  And I didn't find out about McKinsey's

Page 33

1    involvement with Purdue until a few weeks ago.  And

2    basically because of my targeting by Purdue, it caused me --

3    I write opioids.  I am a doctor.  I bought all their

4    propaganda.  And then I was arrested for doing my job and

5    writing prescriptions for patients that lost their doctors.

6    A number of patients lost their doctors because they were

7    arrested.  And when I took them on, I got arrested.  And so

8    I basically -- my life is over because of this whole thing.

9              THE COURT:  When did that happen, Dr. Adelglass?

10   When were you arrested?

11             MR. ADELGLASS:  November 18th.

12             THE COURT:  Of this year?

13             MR. ADELGLASS:  Yes.

14             THE COURT:  Well, because your letter is dated

15   September 23, 2021.

16             MR. ADELGLASS:  Right.  Basically I didn't

17   understand how McKinsey was involved with this.  And when I

18   read the article in Times that they admitted that they

19   helped Purdue target doctors by basically propaganda and

20   making the doctors give more -- write more prescriptions to

21   Purdue and make Purdue more profitable.  I only found that

22   out about a month ago.

23             THE COURT:  When did you first understand that you

24   were under investigation?

25             MR. ADELGLASS:  I basically -- in 2018 they took

Page 34

1    my files from my office.  But when I spoke to my attorneys

2    at that time, they said I'm just a person of interest and

3    I'm not under -- there is no investigation started.  That's

4    what I was told.  And then one day I woke up and the police

5    were in my -- the FBI, DA, everyone was in my apartment.

6              THE COURT:  Okay.  All right.  Do you have

7    anything more to say on the motion?

8              MR. ADELGLASS:  Just that, you know, the

9    oxycontin, the labeling that says it's not addictive, all

10   the propaganda used to make me want to prescribe this.  And

11   the other doctors are in the same situation as me.  I

12   basically took on a number of patients that were on high

13   dose opioids when their doctors were arrested, and they were

14   going into withdrawal and suffering.  I took them on, and

15   then I got arrested.

16             THE COURT:  And when did you take them on?

17             MR. ADELGLASS:  2018, right before I was -- right

18   before they came to my office and took my files.

19             THE COURT:  Okay, all right.  Very well.  All

20   right.

21             I have reviewed the Debtor's objection as well,

22   but I'm happy to hear from the Debtor's counsel on this.

23             MR. MCCLAMMY:  All right.  Good morning, Your

24   Honor.  Jim McClammy of Davis Polk & Wardwell on behalf of

25   the Debtors.  Am I being able to be heard okay?

Page 35

1              THE COURT:  Yes.

2              MR. MCCLAMMY:  Thank you.  Your Honor, we do stand

3     on our papers.  I will not respond to the statement of the

4     history of how things transpired that Dr. Adelglass has set

5     up here.  I think the record of these cases is clear as to

6     the Debtor's position with respect to how we are going about

7     addressing the merits of claims such as those.

8              I will say, however, that this presentation and

9     this motion, to the extent it can be construed as a motion,

10    is very different from the others that we've seen.  It

11    appears to us, having heard argument today, that the

12    allegations do relate back to a pre-petition hearing, that

13    Dr. Adelglass was well aware of his connections with Purdue

14    and, you know, potential claims against Purdue.

15             As Your Honor has noted, the notice of the

16    pendency of these cases and the bar date has been extensive

17    and perhaps even unprecedented.  And we do not see any basis

18    set out in either the motion papers or the presentation

19    today to argue for excusable neglect or delay here.  And the

20    prejudice we think would be immense in these cases if we

21    were to start to open the floodgates to prescribers just

22    coming out now and, you know, without any explanation of the

23    reasons for the delay.

24             So for the reasons set forth in the papers and

25    just now, we would respectfully request that this motion be

Page 36

1    denied.

2         THE COURT:  Okay.  Does anyone else have anything

3    to say on the motion?  All right.

4         I have before me what I deem to be a motion.  It's

5    dated September 23, 2021.  I will note that it was preceded

6    by a September 2, 2021 letter to the Court that really did

7    not seek any specific relief.  We got this letter on or

8    around the 23rd.  It also does not seek any specific relief

9    other than recognition of the claim that is asserted in it,

10   which is for millions of dollars, $2.5 million in

11   compensation.  The bar date in this case was several months

12   ago for filing proofs of claim.

13        Nevertheless, the bankruptcy rules and Rule 9006

14   permit a claim to be filed late on the basis of excusable

15   neglect.  That requires a two-step analysis, i.e. first,

16   whether there was neglect caused by inadvertence, mistake,

17   or carelessness, or by intervening circumstances beyond the

18   parties' control as opposed to an intentional act.  And then

19   second, that the neglect was excusable.  See In re DPH

20   Holdings Corp., 434 B.R. 77, 82 (S.D.N.Y. 2010).

21        The Supreme Court interpreted such a request in

22   Pioneer Investment Services Company v. Brunswick Associates

23   Limited Partnership, 507 U.S. 380 (1993) and there noted

24   that the determination of excusable neglect is an equitable

25   one considering all the circumstances, including "One, the

Page 37

1   danger of prejudice to the Debtor; two, the length of the

2   delay and its potential impact on judicial proceedings;

3   three, the reason for the delay, including whether it was

4   within the reasonable control of the movant; and four,

5   whether the movant acted in good faith," id at 395.

6        The Second Circuit in applying that test has noted

7   that it takes a hard line with respect to the test because

8   the equities will rarely if ever favor a party who fails to

9   follow the clear dictates of a court rule, or in this case,

10  a court order setting a time limit.  And that's where the

11  rule is entirely clear.  Courts expect that a party claiming

12  excusable neglect will in the ordinary course lose under the

13  Pioneer test, In re Enron Corp., 419 F.3d 115, 122-23 (2d.

14  Cir. 2005).  That occurs based on the most important factor

15  where no excuse for the claim being filed late or an

16  unreasonable excuse for the claim being filed late is

17  asserted.  The other factors in the Second Circuit listed in

18  the Pioneer case generally then apply where there are closed

19  questions.

20        The movant has the burden of proving excusable

21  neglect, id at 121 quoting Jones v. Chemetron Corp., 212

22  F.3d 199, (3d Cir. 2000).  Here, the letter itself stated no

23  basis for why the claim was filed several months late, and

24  it appears to me based on the movant's statements at oral

25  argument that he was aware or reasonably aware of the

Page 38

1     alleged basis for his claim as far back as 2018.  Even his

2     acknowledgment that he was under investigation at least at

3     that time for the improper prescription of oxycontin and

4     that he had taken over, according to him, patients who had

5     previously been treated by doctors who were either under

6     investigation or themselves had been arrested for the

7     improper prescription of oxycontin, which to my mind would

8     have put him on notice as to his current theory that he was

9     misled by the Debtors to prescribe the drug.

10            So the primary factor not being established under

11    the Pioneer test, namely whether the delay had some form or

12    excuse or not, that would be sufficient to deny the motion

13    here.

14            In addition, however, there have been several

15    months since the bar date was established.  It was a lengthy

16    bar date.  And since the bar date was established, the Court

17    has confirmed the Debtor's Chapter 11 plan, which is

18    premised upon complex interlocking settlements among

19    different types of claimants, including personal injury

20    claimants, hospitals, and governmental entities, among

21    others, that allocate the Debtor's value among those

22    different groups of claimants.  To open the door at this

23    point to this type of claim would be prejudicial not only to

24    the Debtors, but also to those parties who negotiated that

25    plan.

```
 1              So that factor as well applies, as does the length

 2    of delay.  The factor being prejudice, as well as the length

 3    of delay, in addition to whether the filing of the claim

 4    late was within the reasonable control of the movant.  So I

 5    will deny the motion for those reasons.

 6              The Debtor should email an order consistent with

 7    that ruling to chambers.

 8              MR. MCCLAMMY:  Thank you, Your Honor.  We will do

 9    that.

10              THE COURT:  Okay, thank you.

11              MR. ADELGLASS:  Judge, Judge, can I talk?

12              THE COURT:  No.  I have ruled, sir.

13              MR. ADELGLASS:  Okay.

14              THE COURT:  The next matter on the calendar is

15    another pro se matter by Ronald Bass, a motion by Mr. Bass

16    in which he seeks to join as a necessary party various

17    parties involved in litigation in New Jersey state court

18    that he has brought against the State of New Jersey,

19    Department of Treasury, Gerold Christopher, the chief of New

20    Jersey Bureau of Securities, the State of New Jersey's

21    Attorney General's Office, retirement pension plans, all

22    public entities, employees, and private entities of the

23    State of New Jersey, and others, including other parties

24    besides certain of the debtors who are either manufacturers

25    or distributors of opioid drugs.
```

1          The motion also seeks -- I'll just read it.  "An

2     order for the United States Trustee, Division of the U.S.

3     Department of Justice, to file derivative claims to protect

4     my claims against fraudulent conveyance," and apparently

5     also a -- either underneath that heading or under a separate

6     heading, a request to avoid and stop payouts under the plan

7     to the State of New Jersey, et al.

8          The motion has been objected to by the State of

9     New Jersey as well as the Debtors.  I have reviewed the

10     pleadings on this, but I am happy to hear a brief oral

11     argument.

12          MR. BASS:  Your Honor, this is Ronald

13     (indiscernible).

14          THE COURT:  I cannot hear you clearly.  Can you

15     get closer to your receiver or your microphone.

16          MR. BASS:  Yes.  I am here.  Can you hear me now?

17          THE COURT:  Yes.

18          MR. BASS:  Yes.  This is Ronald Bass.  Also, this

19     is consistent with my tagalong claim I filed with the United

20     States Judicial Panel who (indiscernible) that I should try

21     to reach alternatives in the bankruptcy court --

22          THE COURT:  You mean in the multidistrict

23     litigation in Ohio?

24          MR. BASS:  I did a tag along with this claim also

25     and I stated that.

1              THE COURT: Right.

2              MR. BASS:  And they stated that (indiscernible)

3     says that the (indiscernible) alternative transfer to a

4     minimum whatever if any (indiscernible).

5              THE COURT:  I'm sorry, sir.  You're fading in and

6     out, and I'm just having a hard time hearing you.  Are you

7     on the phone?

8              MR. BASS:  Yes.  I sent the -- yes, I am on the

9     phone.  Can you hear me?

10             THE COURT:  Yes.  But you're going to have to --

11             MR. BASS:  I'm on the phone.

12             THE COURT:  I hate to say this, but you're going

13    to have to stay close to the receiver so that you don't fade

14    in and out.

15             MR. BASS:  Okay.  But I sent a copy of the order

16    from the judicial panel, the multidistrict litigation panel.

17    I sent you a copy of that, a courtesy copy, as well as one

18    for the clerk.  And they made reference that after you

19    (indiscernible) should be referred to.  Although the state

20    denied it, but I am appealing it to the district court.

21             What was your finding?

22             THE COURT:  I'm sorry?

23             MR. BASS:  I said did you -- what was your

24    findings in --

25             THE COURT:  Well, I haven't ruled yet.  I am

1   waiting to hear from the parties.  I've read the pleadings.

2   And you are correct, you have also sought to have your

3   action included in the multidistrict litigation pertaining

4   to opioids that's pending in the district court in Ohio,

5   although I understand that that was turned down.  But --

6           MR. BASS:  They denied it.

7           THE COURT:  And I also understand that you and a

8   family member have filed a proof of claim in these

9   bankruptcy cases against these debtors.

10          MR. BASS:  Right.  And also (indiscernible).

11          THE COURT:  Right.  Okay.

12          MR. BASS:  Right.  So --

13          THE COURT:  But that is not before me, sir.  This

14  is not -- my case is not a multidistrict case and it's not

15  governed by the rules that pertain to multidistrict

16  litigation.

17          MR. BASS:  Okay.  But back to the (indiscernible)

18  the state  (indiscernible) the government (indiscernible).

19          THE COURT:  You know, sir, it's just -- I

20  apologize.  I have your pleading.  I just can hear every

21  other word.  It's not going to come through with the court

22  reporter.

23          I don't know if either the State of New Jersey or

24  the Debtors have anything to add to their pleadings.

25  Otherwise, I am prepared to give my ruling based on the

Page 43

1    pleadings before me.

2            MS. HAMILTON:  Your Honor, we'll stand on our

3    pleadings.

4            THE COURT:  Could you just state your name for the

5    record, ma'am?

6            MS. HAMILTON:  Valerie Hamilton on behalf of the

7    State of New Jersey.

8            THE COURT:  Okay.

9            MR. MCCLAMMY:  And Jim McClammy, Davis Polk, on

10   behalf of the Debtors.  We will also stand on our pleadings,

11   Your Honor.

12           THE COURT:  Okay.  All right.  I will give my

13   ruling, then.

14           Mr. Bass, as I noted, seeks two forms of relief,

15   one of which may be in two parts.  The first is that these

16   Chapter 11 cases involving the Purdue debtors and the other

17   defendants in his pending litigation in the Superior Court

18   of New Jersey, Essex County, be jointly administered.  In

19   essence I gather taken away from the administration by the

20   New Jersey court.  And as far as the claims asserted to the

21   New Jersey court against the non-debtor entities, most of

22   which are officials of the state of New Jersey, but in

23   addition include other defendants engaged in the production

24   or distribution of opioid products.

25           That litigation has proceeded for some time

Page 44

1    independently of these bankruptcy cases and has resulted in

2    the grant of two motions to dismiss the original complaint

3    and the amended complaint, although they were without

4    prejudice.  And as I understand it, a further amended

5    complaint has been filed in that litigation.

6           The rubric under which Mr. Bass seeks this relief

7    is Bankruptcy Rule 7019, which provides that Federal Rule of

8    Civil Procedure 19 applies in adversary proceedings except

9    that if an entity joined as a party raises the defense that

10   the Court lacks jurisdiction over the subject matter of the

11   defense is sustained, the Court shall dismiss such entity

12   from the adversary proceedings.  Rule 19 of the Federal

13   Rules of Civil Procedure sets forth when a party is required

14   to be joined to a civil action.

15          The objections to the applicability of Bankruptcy

16   Rule 7019 here are twofold.  First, they assert that Rule

17   7019 does not apply because these cases and Mr. Bass' claims

18   in these cases, and he filed proofs of claim timely, are not

19   adversary proceedings as specified in the rule.

20          Bankruptcy Rule 9014(c), which incorporates

21   specific Part 7 rules of the Bankruptcy Rules, does not

22   incorporate Rule 7019, leaving it up to the court whether it

23   wishes to do so in the particular facts and circumstances.

24          Secondly, the objections contend, as recognized by

25   Rule 7019 they can, that the court lacks subject matter

Page 45

1    jurisdiction over the causes of action asserted in the New

2    Jersey court complaint against the non-debtor parties.  And

3    of course the causes of action against the debtor parties

4    are stayed and will be governed by the Chapter 11 plan.

5            Both of those objections are meritorious and would

6    require the denial of the motion.  There is really no

7    procedural basis to consolidate and jointly administer

8    either of the Debtor's cases or the Bass claims in these

9    cases with the litigation pending in New Jersey, which

10   raises totally if issues unrelated to the claims against

11   these debtors except only in terms of the potential for

12   providing some context for the assertions in the third

13   proposed amended complaint.

14           In addition, the Court would not have jurisdiction

15   over those causes of action, i.e. the causes of action in

16   the New Jersey court against the non-debtor parties which

17   are not covered under 28 U.S.C. 1334.  Those causes of

18   action neither relies under the Bankruptcy Code or in a

19   bankruptcy case, nor are they related to this bankruptcy

20   case in that they do not have a conceivable effect on the

21   case or the debtor's estates.  They assert causes of action

22   against the non-debtor parties, based on my review of the

23   complaint, on a theory that the New Jersey actors

24   discriminated against Mr. Bass by excluding him from various

25   essential services for the participation and programs,

Page 46

1    activities, or services offered by the State of New Jersey

2    public and private entities that received federal funding to

3    provide healthcare benefits based upon his alleged

4    disability arising from drug addiction.

5            The complaint also asserts claims against the

6    State of New Jersey or entities within the rubric of the

7    State of New Jersey based on their asserted investments in

8    the Debtors --

9            MR. BASS:  Excuse me, Judge --

10           THE COURT:  -- which are not in fact -- just is

11   not in fact the case.  They have not invested in the

12   Debtors.  The Debtor's shareholder structure is clear, or

13   ownership structure is clear, and it does not include any

14   such investments.

15           So there really is not subject matter jurisdiction

16   to have this Court take on the determination of the

17   litigation in New Jersey.  The Court will of course retain

18   jurisdiction over the claims filed in these Chapter 11 cases

19   by Mr. Bass, but only those claims.

20           Secondly, as I noted, the motion seeks -- I am

21   interpreting injunctive relief in two respects that may be

22   related.  One is to have the United States Trustee file a

23   derivative claim to protect his claim against fraudulent

24   conveyance under Section 548 of the Bankruptcy Code and to

25   have this Court and the U.S. Trustee avoid and stop payments

Page 47

1    I gather under the plan to the State of New Jersey.  There

2    really is no basis for such an injunction either in terms of

3    the operation of the statute, which puts the fraudulent

4    transfer cause of action within the estate and therefore the

5    control of the Debtor's estate barring the grant of

6    derivative standing, the basis for which has not been shown

7    here, or what I take to be the request for a pre-judgement

8    attachment of distributions to the State of New Jersey based

9    on the alleged right to do so premised upon the underlying

10   complaint filed in the New Jersey court.  There really is no

11   basis for any such pre-judgement attachment.  Moreover, it

12   really should not be sought in this Court, even if there

13   were such a basis.  It should be sought from the Court where

14   the claim that is pending that is the basis for the alleged

15   attachment.

16           That's not an encouragement to do so.  It is only

17   an observation that this Court really would not have

18   jurisdiction over such an asserted remedy.  Moreover, based

19   upon the Court's consideration of the complaint that has

20   been filed, it would appear that there would be no

21   likelihood of success on the merits with respect to such an

22   injunction in any event given what I've already identified

23   as a fatal flaw in the complaint, which is an assertion that

24   somehow the State of New Jersey or New Jersey entities have

25   an ownership interest in these debtors, which is flatly

Page 48

1    contradicted by the record before me.

2           So I will deny the motion.  I don't know whether

3    either of the objectors has already prepared a draft order.

4    If not, I will ask the Debtors to prepare an order denying

5    the motion for the reasons stated on the record.  You should

6    email a copy to Ms. Hamilton, Mr. McClammy, and to Mr. Bass

7    when you email it in to chambers.

8           MR. MCCLAMMY:  We can do that.  Thank you, Your

9    Honor.

10          MS. HAMILTON:  Thank you, Your Honor.

11          THE COURT:  Okay.  Thank you.

12          MR. BASS:  Judge, before (indiscernible).

13          THE COURT:  Okay.

14          MR. BASS:  Can you hear me?

15          THE COURT:  I really can't, Mr. Bass.  You're

16   coming in and out.  And I'm sorry for that.  I can generally

17   hear people on these calls, but it's just not working right

18   now.

19          But in any event, I've ruled on this based on the

20   papers.

21          MR. BASS:  Okay, I've got that.  I'd just like to

22   have a copy of the state's motion, their opposition.

23          THE COURT:  Well, it's on the docket.  So you can

24   get it off the docket.  I'm sure Ms. Hamilton -- I trust she

25   served you with it.  But she can send you a copy in any

1    event.

2              MS. HAMILTON:  I did, Your Honor.  I'm happy to

3    send another.

4              THE COURT:  Okay.

5              MR. BASS:  I appreciate it.

6              THE COURT:  Okay, very well.

7              MR. BASS:  Thank you.

8              THE COURT:  All right.  The next matter on the

9    calendar is a motion by the United States Trustee for direct

10   certification of its appeal of the Court's order confirming

11   the Chapter 11 plan as well as, although this is barely

12   addressed in the motion, the Court's subsequent order

13   authorizing certain preliminary steps to prepare for the

14   plan going effective.  That motion has been joined in by

15   what I'll refer to as the appealing states, that is those

16   states who have also appealed the confirmation order.  And

17   in addition, by what we have been referring to as the

18   Canadian creditors, that is certain Canadian municipality

19   and first nations claimants.

20             I reviewed those pleadings as well as the

21   responses that were filed yesterday by the Debtors, the

22   multi-state governmental entities group, the joinder in the

23   debtor's pleading by the Ad Hoc Group of Individual Victims,

24   the ad hoc committees, that is the Ad Hoc Committee of

25   Governmental Entities and the Official Committee of

Page 50

1    Unsecured Creditors.

2            I appreciate that in addition to the motions, the

3    U.S. Trustee sought an expedited hearing on the motions

4    which has not been opposed.  And, frankly, I'm not even sure

5    that such a motion is necessary or was necessary given that

6    we were here on October 14th and the motion was filed on

7    October 1.  But I gather no one opposes the request for

8    expedited treatment.  Is that correct?  Okay.

9            So I will grant that motion.

10           MS. ISAACS:  Your Honor, this is Ellen Isaacs

11   (indiscernible).  I would like to say something, please, to

12   Your Honor.

13           THE COURT:  Well --

14           MS. ISAACS:  You keep addressing (indiscernible)

15   attorneys only --

16           THE COURT:  Ms. Isaacs, I don't believe -- Ms.

17   Isaacs, I don't believe you have taken a position on this

18   motion.  So I --

19           MS. ISAACS:  Okay.  What I have a position on,

20   Your Honor, and I'd like for you to please hear me -- it's

21   that you --

22           THE COURT:  No.  I'm not going to hear -- I'm only

23   going to hear the matters that are before me on this motion.

24           MS. ISAACS:  This has to do with this motion.

25           THE COURT:  Well, then I will hear you when there

Page 51

1    is appropriate time for it.  All right?  Not right now.

2               MS. ISAACS:  Okay.  I will patiently wait.

3               THE COURT:  Yes.

4               MS. ISAACS:  Thank you.

5               THE COURT:  Okay.  All right.  So I have read the

6    pleadings on this and I'm happy to hear brief oral argument.

7               MS. EITEL:  Good morning, Your Honor.  This is Nan

8    Eitel for the United States Trustee, appearing for the U.S.

9    Trustee.

10              THE COURT:  Good morning.

11              MS. EITEL:  First, Your Honor, Section 158(d)

12   provides four independent criteria warranting certification

13   of a directed review and appeal to the circuit court.  And

14   although the U.S. Trustee satisfies all four of those gates,

15   it need only satisfy one.  And if one is satisfied,

16   certification for direct review is mandatory and there is no

17   discretion.

18              I think it's important to note that the merits of

19   the United States Trustee's appeal are not before the Court

20   today and the Court need not find that the appeal itself

21   would be meritorious, though of course we believe that it

22   should be.

23              Second, Your Honor, before turning to the argument

24   on the four criteria and why each is satisfied here, it's

25   important to note how puzzling the Debtor's opposition is to

Page 52

1    direct certification.  It seems at odds with everything that

2    the Debtors have said for two years about the need for

3    expedition in completing this case and to get money out for

4    the abatement programs and the creditors.

5            Over and over again, Mr. Huebner and his

6    colleagues sit at the podium talking about the need to go

7    more quickly.  And we agree, and as a result proposed the

8    most aggressive of the briefing schedules at the district

9    court on the merits and also seek direct review as a result.

10           The opposition is also perplexing, Your Honor,

11   because in the shareholder agreement that was approved as

12   part of the plan of reorganization at 2.09 obligates the

13   Debtors and the Sackler family not only to agree to direct

14   certification, but also to seek it.  Specifically the

15   language refers to the NDT -- and the agreement defines the

16   NDT to be the Debtors until the plan goes effective -- shall

17   promptly request that all appellants and appellees

18   (indiscernible) consent, that the appeal be certified for

19   direct appeal.  If the consent cannot be promptly obtained,

20   the NDT, the Debtors, shall promptly make a motion to the

21   bankruptcy court under 28 U.S. Code § 158(d)(2)(B)(i)

22   requesting that the appeal be certified.

23           And I think it is this Court's expectation based

24   on comments at earlier hearings, both at the confirmation

25   proceeding and thereafter, that every appellant should be

Page 53

1    seeking expedited review.  And I think he said

2    (indiscernible) that we would get it.

3            And there's also a fallacy in the oppositions

4    about the delay, Your Honor.  Seeking direct certification

5    has no effect and no delay on the district court appeal.

6    The matters will go forward on a parallel path and not a

7    sequential path.  So there is a distinct possibility that,

8    given how quickly Judge McMahon tends to act, that the

9    District Court will outrun the Second Circuit.  But the

10   Second Circuit.  But the Second Circuit could also just take

11   the appeal and adopt for expedited briefing schedule as its

12   own, which would make (indiscernible) sense.

13           THE COURT:  Well, can I interrupt you on that?

14   The Debtors have asserted, as has the Committee as something

15   I should take into account, although frankly the circuit

16   itself has been clear that simply expedition is not a factor

17   in its determination to take an appeal, that a request for a

18   direct appeal can add significant time to the appeal

19   process.  Do you have a view on that or any information on

20   that point?

21           MS. EITEL:  Your Honor, the only reason I'm

22   bringing up the issue of delay is because it's been argued

23   by the Debtors and not by the United States Trustee and by

24   the Committee.  I mean, they are correct that there are four

25   factors about whether there's controlling precedent, whether

Page 54

1    it's a matter of public importance, or whether it resolved

2    the case.  But speed is not one of the criteria either way -

3    -

4            THE COURT:  All right.  So why are we arguing this

5    point?  Unless for PR.  Which I don't appreciate.  I

6    understand the point that you just made; speed alone is not

7    a factor.

8            MS. EITEL:  It's just simply that the Debtors have

9    represented to the Court that somehow the U.S. Trustee is

10   delaying the matter, and that's simply wrong as a factual

11   matter.

12           THE COURT:  Well, I don't view that.  I don't

13   think you're trying to delay the matter.

14           MS. EITEL:  Thank you, Your Honor.  I'll just move

15   on.

16           THE COURT:  Okay.

17           MS. EITEL:  And one additional point before

18   getting to the criteria.

19           In the Committee's opposition in Footnote 3, it

20   was puzzling for different reasons, for the failure to not

21   understand DOJ authorities.  They were shocked that the UST

22   announced that the solicitor general had authorized the U.S.

23   Trustee to file a motion for direct certification to the

24   Second Circuit and deemed this somehow nefarious.  But, Your

25   Honor, rudimentary research and consultation with an

Page 55

1     appellate lawyer would have led them to 28 CFR --

2              THE COURT:  Again, it's not really an issue before

3     me.  I don't -- again, you are correct.  The merits of the

4     appeals are not part of what's before me on this issue, on

5     your motion and the joinders by the appealing states.  And

6     similarly, whether any of those states or the U.S. Trustee

7     are somehow acting in a way that the appellees don't like is

8     not really before me, either.

9              MS. EITEL:  That's fine, Your Honor.  If I just

10    may conclude by saying it's mandated by the Code of Federal

11    Regulations (indiscernible) nothing nefarious to be gained,

12    only the solicitor general can approve.

13             THE COURT:  Okay.

14             MS. EITEL:  Let's turn now to why we're here,

15    which is the four criteria.

16             The first criteria, is there a legal question with

17    no controlling precedent from either the circuit or the

18    Supreme Court.  And Judge McMahon agrees with the U.S.

19    Trustee.  As she said in court on Tuesday, "As far as I can

20    tell, this is a pure question of law.  About as pure a

21    question of law as you can get.  The core issue is whether

22    this is constitutional or whether this is statutorily

23    authorized.  Simply because this case is complicated,

24    unwieldy, involving lots of issues and parties doesn't make

25    the issue of third-party releases anything other than a

Page 56

1   legal question.

2        Moreover, the standard is, is there no controlling

3   precedent either from the Supreme Court or the Second

4   Circuit.  The Supreme Court has never decided the issue of

5   the due process nature and implications of a non-consensual

6   non-debtor release.  And that alone is sufficient to

7   establish that certification is warranted and required.

8        But if we want to look at precedent within the

9   Second Circuit, we need only compare or contrast the

10  Debtor's statements on this issue to conclude the Second

11  Circuit has not squarely addressed the issues presented by

12  this appeal.

13        In the opposition, the Debtor said, "Third party

14  release in bankruptcy and the circumstances under which

15  those releases may be approved are issues that have been

16  settled in the circuit for decades."

17        In contrast, on June 16th, Debtors and other

18  opponents wrote to Judge McMahon seeking a joint tribunal

19  for confirmation.  And I quote, "While Your Honor and the

20  Third Circuit have recently held that bankruptcy courts may

21  issue a final order confirming a plan providing for third-

22  party releases," and citing the cases, "The Second Circuit

23  has yet not squarely addressed these issues."  We need not

24  go further than the Debtor's admission in the June letter.

25  The Second Circuit has not squarely addressed the issues

Page 57

1    presented by the Purdue releases.

2           Next, Your Honor, in discussion about what the

3    case law was within the Second Circuit, I think people were

4    shocked that the U.S. Trustee argued that Metromedia did not

5    hold anything about third party releases because it was

6    dismissed for equitable movements.  So the entire discussion

7    there is dicta.  Admittedly, it's dicta that has been

8    followed and adhered to and discussed at length by multiple

9    opinions with the Second Circuit.  But at the end of the

10   day, it's not a holding, it's dicta.  Metromedia didn't

11   answer or address the due process question presented here,

12   either.

13          With respect to due process, the Debtors

14   repeatedly refer to all of the notice and the publicity that

15   was given to provide due process with respect to this case.

16   But when they do that, they are wrongly conflating the issue

17   of due process with respect to Purdue's creditors or their

18   claims against Purdue and their participation in Purdue's

19   bankruptcy.  The objection goes to great lengths to

20   (indiscernible) process.  But that's a red herring because

21   we don't challenge the adequacy of the notice

22   (indiscernible) creditors, only about the due process

23   related to the Sacklers.

24          The Debtor has also suggested that the United

25   States Trustee wasn't getting facts about not receiving

Page 58

1    value for claims under the plans for the third-party

2    releases.  But, Your Honor, that's straight from the plan

3    itself and it's cited and quoted in our motion papers where

4    it says, "Payment is only made for claims held against the

5    Debtors and not against non-debtor parties."

6              Debtors do get one thing right about the UST

7    position on releases, that bankruptcy courts do not have the

8    power or the constitutional authority to impose non-

9    consensual releases of such claims of non-debtors versus

10   non-debtors.

11             The Debtor also says that we're saying the courts

12   of appeals have been violating due process for decades.  I

13   would simply note that in a related context until the

14   Supreme Court decided Stern v. Marshall, bankruptcy courts

15   were routinely exceeding constitutional authority until one

16   litigant challenged that notion all the way to the Supreme

17   Court.  So it's not unheard of for issues to be assumed that

18   they are okay until they are not and decided by the Supreme

19   Court.

20             Speaking of Stern, Your Honor, every opponent here

21   today previously wrote to Judge McMahon in that same June

22   16th letter asking for the reference to be withdrawn in two

23   discrete matters because there are stern issues related to

24   the third-party releases, which is also part of United

25   States Trustee's appeal.  I quote, "In order to eliminate

Page 59

1    any doubt concerning the finality of any order confirming

2    the plan, the Debtors respectfully request that Your Honor

3    consider presiding as a joint tribunal only on two discrete

4    issues; the plan's treatment of personal injury claimants

5    and the imposition of non-consensual third-party releases."

6           This to me seems an admission of there is a

7    possible constitutional infirmity in this Court's authority.

8    And again, that alone should warrant taking up appeal.

9           The Second Circuit, simply put, has not considered

10   the issue of due process.  One cannot read the past decade

11   or two of Supreme Court decisions on bankruptcy matters as

12   anything of an endorsement of expansive equitable powers or

13   creative solutions outside the lines.  Jevic, Law v. Siegel,

14   ASARCO, RadLAX, Stern, (indiscernible), there are

15           others, in every one of those cases, bankruptcy

16   practitioners were surprised to find the narrow view and the

17   narrow holding of the bankruptcy court's authority and

18   power.

19           So the United States Trustee satisfies Matter 1.

20   It's a legal question on which there is no Supreme Court

21   precedent and there is a division of opinions.

22           One need only --

23           THE COURT:  Well, wait, wait.  Where is division

24   of opinion in the Second Circuit?

25           MS. EITEL:  That's not the standard, Your Honor.

Page 60

1  It's within the Second Circuit.  It's not that the Second

2  Circuit has contradicted itself.  That wouldn't make any

3  sense.

4          THE COURT:  But no, within the Second Circuit.

5  I'm not saying at the Second Circuit.  I'm saying within the

6  Second Circuit.

7          MS. EITEL:  For example, Aegean Marine as --

8          THE COURT:  Let's read Aegean Marine.  I've been

9  hearing about Aegean Marine for quite a while now.  I

10  addressed it in my opinion.  Let's read it together.  All

11  right?  And let's read SunEdison together.  Do you have it

12  there, ma'am?

13          MS. EITEL:  I do not have it in front of me.  It's

14  on my computer.  But I am familiar where the Court talked

15  about the participation trophies.

16          Your Honor, the point is that there are -- there

17  are different --

18          THE COURT:  No, this is important.  Because you

19  and at least one legal professor who doesn't know how to

20  read a case -- I'm not saying you don't, I'm saying he

21  doesn't -- have miscited this case.  Something that a first-

22  year law student can understand.  So let's read it.  All

23  right?

24          It cites Metromedia.  It relies on Metromedia.

25  Does it not?

Page 61

1            MS. EITEL:  It does.  It does, Your Honor.

2            THE COURT:  And Judge Wiles says, "The governing

3    case law," that's a quote, "The governing case law requires

4    me to consider not only the contributions made by the

5    proposed releases, but also the particular claims that are

6    to be released."  He recognizes that there is governing case

7    law, having cited it.  Metromedia.  He also cites

8    Residential Capital and Johns Manville and then says I don't

9    have any of those facts before me here.

10           Let's go to SunEdison.  All right?

11           Oh, by the way, Judge Wiles also, I think you'll

12   have to recognize, does impose a non-consensual release as

13   far as an exculpation is concerned, does he not?

14           MS. EITEL:  He does, (indiscernible) --

15           THE COURT:  All right.  All right.  So I guess

16   he's following something.  I guess he follows some

17   jurisdiction.

18           And then as far as SunEdison is concerned, Judge

19   Bernstein says that he does not believe that the facts here

20   support under Metromedia the grant of the injunction,

21   although he finds that the court does have jurisdiction to

22   enjoin.

23           So, you know, it's one thing to say that people

24   discuss the extent of this case law, it's really another to

25   say that these are holdings that say that there is no such

Page 62

 1   case law.  And I think --

 2          MS. EITEL:  Your Honor --

 3          THE COURT:  -- one needs to be very clear on that

 4   point.

 5          MS. EITEL:  Your Honor, I think reasonable minds

 6   can differ with respect to the vast range of case law even

 7   within the Second Circuit at the bankruptcy court level.

 8   And I understand that --

 9          THE COURT:  Well, you cited two cases.  And I've

10   just gone through them again.  And while they raise concerns

11   about the extent of releases, they do so in the context of

12   or the rubric of the Metromedia factors and Johns Manville

13   and the many cases that have actually imposed third party

14   releases and injunctions in the Second Circuit.

15          MS. EITEL:  And there are many cases that have

16   not.  And --

17          THE COURT:  Where?  In the Second -- where in the

18   Second Circuit that have not recognized the power to do so?

19   Name me one.

20          MS. EITEL:  Your Honor, if -- there are multiple

21   cases where it may be in the context of particular facts,

22   but Metromedia has not -- does not decide the issue.  As you

23   said yourself --

24          THE COURT:  So the reference to governing case law

25   in both of those opinions was just sort of thrown out there?

Page 63

1    You actually think that Judge Wiles, if the facts would have

2    in his view have fit within Metromedia would have said oh,

3    well, I'm not going to follow that?

4            MS. EITEL:  Your Honor --

5            THE COURT:  That really would be extraordinary.

6    That really would be a basis for a direct appeal, would it

7    not?

8            MS. EITEL:  Your Honor, I return to what you

9    yourself said about reading the case as a first-year law

10   student.  You go to law school, and you get the primer and

11   you're told what's the holding and what's the dicta.  And I

12   think for anyone to go in and say that Metromedia held

13   anything about a third-party release is not reading the case

14   carefully.

15           That said, I understand very well that Metromedia

16   has taken on a life of its own and that is deemed

17   controlling case law within the Second Circuit.  But a clear

18   and careful reading of Metromedia would show otherwise.  But

19   we can ignore all that, Your Honor.  And I understand that

20   you have a different view with respect to there is conflict

21   within the circuit.  It really doesn't matter because the

22   bottom line is there is no Supreme Court decision on the

23   constitutional authority or the due process rights on third-

24   party releases.  The Supreme Court has never decided the

25   issue.

Page 64

1          THE COURT:  I'm sorry, are you saying that

2     (d)(2)(A)(1) applies if there is controlling authority in

3     the circuit but not at the Supreme Court?  Is that how you

4     interpret that section?

5          MS. EITEL:  Yes.  It's an or, Your Honor.  If

6     there is no controlling authority at the Second or the

7     Supreme Court.  And there is none at the Supreme Court.

8     It's not and, it's or.  It's disjunctive.  It's one or the

9     other.

10         THE COURT:  Do you have any cases that support

11    that or commentators?

12         MS. EITEL:  Other than that the word or is

13    disjunctive, I haven't gone to look for them.  I'd be happy

14    to provide a supplemental briefing on the topic.

15         THE COURT:  So you're basically saying that

16    whenever the Supreme Court hasn't ruled on t bankruptcy

17    issue, even if the circuits have and even though the

18    legislative history, which the Weeber case relies on

19    heavily, focuses on getting these opinions up at the circuit

20    level, that we have to force the circuit to do work on any

21    case when the Supreme Court hasn't ruled?

22         MS. EITEL:  If there's no controlling precedent,

23    Your Honor, and it's a pure legal issue.  That's not a

24    particularly common occurrence, as the Debtors themselves

25    point out.

1          So we can move on to -- there's four gates.  And

2     the United States Trustee submits that we've satisfied gate

3     one.

4          THE COURT:  Okay.

5          MS. EITEL:  The second gate is a matter of public

6     importance.  I think Your Honor and the Debtors have said

7     there has never been a case like this.  And the issues

8     transcend the case.  And I understand that the issue is not

9     in the context of Purdue Pharma, it's the issue of third

10    party release.  They're important in the bankruptcy context,

11    and they are made increasingly frequent use of.  And it is

12    very important with respect to how the public interacts.

13         I think the Court is aware of in particular this

14    case, one of the matters that has most, it had the public

15    pro se litigants engaging with the Court, is about the

16    third-party release.  It's very important to the public

17    about what authority a Court has to issue a third-party

18    release.

19         Moreover, Congress itself has not one, not two,

20    not three, but four pieces of legislation pending on the

21    authority to issue a third-party release in bankruptcy.

22    Whether one agrees with that is right or wrong, it simply

23    suggests that it's a high-profile matter that is very

24    important to the public.

25         It would be disingenuous in the context of this

Page 66

1    case to pretend that there is not an extreme degree of

2    public (indiscernible) on this legal issue given the impact

3    of Purdue Pharma and the Sackler family's conduct here.

4    It's a public health crisis.  It's been very traceable to

5    the conduct of the Sackler family who is being released.

6         And, Your Honor, here if the Sackler family

7    members had filed for individual bankruptcy relief, under

8    Section 523, they couldn't get the kind of release that

9    they're getting now.  They're getting a more generous

10   treatment than (indiscernible) unfortunate debtor would ever

11   be afforded in an individual case.  Claims for things like

12   fraud are being discharged when a debtor could not get that

13   under 523.

14        Your Honor, this simply hasn't been decided

15   before.  Third-party releases are very important to the

16   public interest whose rights are being affected and

17   basically given up as participation trophies, as Judge Wiles

18   said in Aegean Marine, and it needs to be decided by the

19   Circuit Court of Appeals both whether there is a due process

20   issue with non-consensual, non-debtor releases, and whether

21   there is a Stern issue with non-consensual, non-debtor

22   releases.

23        The third gate is is there a question of law

24   requiring resolution in conflicting decisions within the

25   Circuit.  Your Honor, I think we just went through all of

Page 67

1    those with respect to Aegean Marine, SunEdison, and this

2    case.  And the result may well be different depending on

3    what district you go to, what state you go, and which

4    particular courtroom you go to.

5              THE COURT:  Let's just cover that now.  All right?

6    Is Connecticut in the Second Circuit?

7              MS. EITEL:  Yes, Your Honor

8              THE COURT:  Yes.  All right?

9              MS. EITEL:  I mean, yes.  Yes.

10             THE COURT:  So what in earth are you talking

11   about?  I want you to come clean on this.  What are you

12   talking about when you make that assertion innuendo?

13             MS. EITEL:  Judge, I am making no innuendo, nor

14   assertion --

15             THE COURT:  You're not?  Good.

16             MS. EITEL:  I'm not.  And --

17             THE COURT:  Then I think you should retract your

18   statement.

19             MS. EITEL:  Your Honor, it's simply that there are

20   differing understandings of the extent of the authority that

21   courts have to do this.

22             THE COURT:  In the Second Circuit?  You have not

23   cited me one case for that.  Not one.

24             MS. EITEL:  Your Honor -- okay, Your Honor.

25   Chassix Holdings, for example.  That's a fairly unique case

Page 68

1    where the issue of impairment and the right to vote.  So a

2    class that was deemed not to be impaired and deemed to

3    consent to the plan was being forced to get a third-party

4    release.  And the Court came and said --

5                THE COURT:  Right.

6                MS. EITEL:  -- you know what?  That --

7                THE COURT:  Yes.  Every court in this circuit

8    would rule the same way.  I have ruled that way multiple

9    times before and after Chassix.

10               MS. EITEL:  But other courts, Your Honor, have

11   not.

12               THE COURT:  Which ones in this circuit?

13               MS. EITEL:  Your Honor, I don't have a laundry

14   list of --

15               THE COURT:  You don't.  You're just throwing this

16   stuff out there.  And it's -- you're right; it is important.

17   And if you are casting aspersions on the integrity of any

18   judge, any bankruptcy judge in this circuit, you'd better be

19   prepared to say why.

20               MS. EITEL:  Your Honor, I have cast no aspersions,

21   and nor do I --

22               THE COURT:  You don't?  Are you going on record to

23   say that?

24               MS. EITEL:  Yes, Your Honor.  No aspersions in the

25   --

1          THE COURT:  Because it was suggested to me about

2   two minutes ago that you were when you referred to --

3          MS. EITEL:  No, Your Honor.

4          THE COURT:  -- particular judges and particular

5   states.

6          MS. EITEL:  Your Honor, Your Honor, you are

7   misinterpreting my argument, and I apologize for that, for

8   not being more clear.

9          THE COURT:  All right.  Well, you don't have any

10  facts apparently to back it up.  So let's just move on from

11  that point.

12         MS. EITEL:  Your Honor, I would just simply

13  conclude with that there is not uniformity within the

14  courts.  And --

15         THE COURT:  Where?  Which courts?

16         MS. EITEL:  Your Honor, we just talked about

17  Aegean Marine, we've talked about SunEdison --

18         THE COURT:  All right.

19         MS. EITEL:  -- and we've talked about --

20         THE COURT:  Those are your two cases.  And I've

21  already read those cases.  And I know exactly what they say.

22         MS. EITEL:  We've talked about Chassix Holdings.

23         THE COURT:  And I think, frankly, if Judge Wiles

24  had had this case, you would have been shocked if he had

25  ruled differently.  Because this case is not Aegean Marine.

Page 70

1            MS. EITEL:  Your Honor, just to conclude this

2      third point, I want to be very clear.  I am not casting

3      aspersions on the integrity of this Court, any other court,

4      or any other judge.  Reasonable minds can differ over these

5      issues, which is why we take appeals and why we make legal

6      argument and why judges may reach different conclusions in

7      different matters.  And because there have been dissimilar

8      conclusions on similar facts, a fact that I know you

9      disagree with, suggests that it is more important than ever

10     that this get back to the Second Circuit for the due process

11     and Stern issue squarely presented to the Second Circuit for

12     decision.  It's not a matter of integrity; it's a matter of

13     a question of law and that we need to get the law settled on

14     these important matters.

15            Finally, Your Honor, the fourth criteria is an

16     immediate appeal may materially advance the progress of the

17     case.

18            The response of the Debtor, and that I think lead

19     the Committee awry, is that we need to go to the district

20     court because it will benefit (indiscernible) at the

21     district court.  This case is a little different than the

22     garden variety bankruptcy case where ordinary district court

23     review likely offer some additional benefit.  But these

24     issues have been thoroughly briefed, fairly contested over a

25     lengthy confirmation hearing, and the subject of much

Page 71

1    discussion and reflection by Your Honor in issuing your

2    opinion.  There is no need to stop at the district court.

3            But that said, it's not going to delay the case by

4    going to the Second Circuit because I don't think anyone

5    thinks for a second that this case is going anywhere but the

6    Second Circuit.  It's just simply a matter of time.

7            THE COURT:  But the case law is clear that that

8    fact isn't a basis for a direct appeal.  Right?  The fact

9    that parties are going to go eventually to the circuit is

10   not a basis to grant a direct appeal.

11           MS. EITEL:  Well, no.  But the -- we discussed at

12   the beginning about the expedition.  But if it may

13   materially advance the progress of the case.  Clearly this

14   can materially advance the progress of the case because it's

15   different than saying a need for speed versus it's going to

16   advance the case.  The case is going to the Second Circuit -

17   -

18           THE COURT:  No, but the case law on that point is

19   consistent, as is the commentary.  The fact that it's going

20   to the circuit eventually is not a basis for certification

21   of direct appeal.

22           MS. EITEL:  Well, that may be particularly true.

23   But what I'm explaining, Your Honor, is that this has been

24   very well briefed and very well argued at the bankruptcy

25   court level.  It's being given a level of treatment and

Page 72

1    discussion that is unlike, I think the Court would perhaps

2    agree, your garden variety Chapter 11 bankruptcy case.  This

3    isn't Mom and Joe's pizza shop where there --

4            THE COURT:  There was a lot of sophisticated

5    briefing in Sabine.  There was a lot of sophisticated

6    briefing in GM.

7            MS. EITEL:  And GM (indiscernible) once, if I

8    recall correctly, on expedited briefing.  And the Second

9    Circuit decided very, very quickly in that case.  I think it

10   was only the second time where the matter was not certified

11   if I recall correctly.  I think GM did go up quickly in the

12   second circuit (indiscernible) particular to that case.  And

13   also that that this was a matter of public importance, much

14   like this one.

15           Your Honor, just to conclude, there are four gates

16   for certification.  The United States Trustee only has to

17   satisfy one.  Here, Judge McMahon said it best this week.

18   She would -- that appellants for their part raise important

19   questions under the Constitution, the Bankruptcy Code, and

20   Second Circuit law.  The importance of having those issues

21   considered and decided on appeal cannot be understated.  And

22   we would add, Your Honor --

23           THE COURT:  Well, I agree with that completely.

24           MS. EITEL:  -- oh appeal -- on appeal by --

25           THE COURT:  But that's in the -- but no, that's in

Page 73

1   the context of a motion for a stay.

2           MS. EITEL:  Correct, Your Honor.

3           THE COURT:  Not in certifying an appeal to the

4   Court of Appeals.  Is that your concern?  I sort of want to

5   cut to the chase on this last point.  I think the last

6   point, although I don't believe this is how the case law

7   treats it, I think you're arguing that we'll get a faster

8   result if there is a direct appeal.  And in any event, Judge

9   McMahon can continue on with the appellate process as the

10  statute permits pending the determination by the Circuit

11  whether it wants to accept a direct appeal.  That's what

12  you're -- I mean, that's really what you're saying, right?

13          MS. EITEL:  Your Honor, yes.  We are pursuing two

14  parallel paths.  And as I've said earlier, Judge McMahon may

15  outrun the Second Circuit for the certification.

16          THE COURT:  Right.  Although I do have some real -

17  - I do have some real concern.  Judge McMahon is a terrific

18  judge, and no one can say I think that there's any judge in

19  the Southern District who is more independent.  But

20  presiding over an appeal like this, knowing that at any

21  moment the circuit could take it from you, isn't that kind

22  of like playing an exhibition baseball game or football game

23  or basketball game?  You know, a preseason game.  You know,

24  there's nothing more important than the matter before you.

25  But if you believe it's going to be taken away potentially

Page 74

1    at any moment, I wonder whether that's what the circuit

2    really wants.

3              MS. EITEL:  Your Honor, Judge McMahon expressed no

4    concern with that.  She is well aware of the request for

5    direct certification, and she mentioned it multiple times on

6    Tuesday.  And she said two things in particular.  She said

7    if the Second Circuit takes the case, they can keep my

8    expedited briefing schedule and maybe they'll ask me to sit

9    by designation.  She had no concerns whatsoever with the

10   idea of putting in this work and having the case taken away.

11   And I agree, she has done a tremendous job of, just this

12   week alone, turning around very quickly some decisions on

13   the important issues with respect to who appellees are, who

14   needs to intervene in the appeal, and what needs to happen

15   with respect to the motion for stay.  But Judge McMahon

16   herself said they can take it; they can take my schedule.

17   And if they want me, I'll go sit with them there, too.

18             And we would simply say that this is a case that

19   satisfies four criteria for --

20             THE COURT:  I'm sorry, I still want to explore

21   that last point a little bit.  This is a question for all of

22   the parties.  Have any of you -- I'm not saying you should,

23   I just wonder if you have.  Have any of you gotten any sense

24   from the Court of Appeals as to when they would consider

25   accepting a direct appeal and their ability to hear it on an

Page 75

1    expedited basis.

2            MS. EITEL:  Your Honor, we would have no ability

3    to do that because we haven't filed anything with the Second

4    Circuit.  I think that you can look at -- there is a range

5    of options.  In General Motors, they acted incredibly

6    quickly given the public importance there.  In other cases,

7    they can sometimes take months to decide.  There is no

8    indication one way or another what it is that causes them to

9    act with expedition on accepting the direct review.  And it

10   may be at the end of the day, Your Honor, that we'll get a

11   decision on the merits out of Judge McMahon before the

12   Second Circuit decides to take the appeal and it just goes

13   up in the ordinary course.  But we're trying to pursue two

14   parallel paths to --

15           THE COURT:  Do you have any sense as to whether

16   the request for acceptance of a direct appeal will

17   accelerate in any way the determination, or are those two

18   separate panels that would handle it?

19           MS. EITEL:  Your Honor, I don't know the answer to

20   that question in terms of you say, like, accelerate the

21   consideration once they take the direct certification?

22           THE COURT:  Right.

23           MS. EITEL:  It's up to the panel whether they

24   would take the expedited briefing schedule.  And we would --

25   just as we proposed at the district court, United States

Page 76

1    Trustee would propose a very aggressive expedited briefing

2    schedule.  And we actually think Judge McMahon's solution

3    was a good one, that if they take it before she has heard

4    oral argument on November 30th, that they could just accept

5    her briefing schedule.

6            THE COURT:  I guess the last point I raise is --

7    and this comes through strongly in the Weeber case.  The

8    Circuit has been clear -- and this is consistent with

9    jurisprudence generally and the structure of the federal

10   courts -- that the circuits benefit from the analysis of the

11   lower courts by the lower courts, particularly where there

12   is an extensive record.  And obviously Judge McMahon has

13   tried scores of cases.  She can evaluate a record really,

14   really well.  Obviously the Court of Appeal can, too.  But,

15   again, they have said Congress emphasized the importance of

16   our expeditious resolution of bankruptcy cases, but it did

17   not wish us to privilege speed over other goals.  Indeed,

18   speed is not necessarily compatible with our ultimate

19   objective.  Answering questions wisely and well in many

20   cases involving unsettled areas of bankruptcy law reviewed

21   by the district court would be most helpful.  Courts of

22   appeal benefit immensely from reviewing the efforts of the

23   district court to resolve such questions.  Citing Supreme

24   Court as well as Justice Cardozo, explained that the common

25   law process goes inch by inch.

Page 77

1              So the court of appeals doesn't get a lot of

2     bankruptcy cases.  Congress was judicious in Section 158(d)

3     in changing that.  It chose not to have direct appeals in

4     most cases.  And the district courts do get more of these

5     cases.  Judge McMahon has a lot of experience with them.

6     You know?

7              MS. EITEL:  Your Honor, there is no --

8              THE COURT:  She has granted injunctions, she has

9     denied injunctions, she has narrowed injunctions.  She has

10    thought about these issues for years.  And there are times -

11    - I picked on a law professor earlier, now I'll give law

12    professors some kudos.  In a recent case where there was a

13    direct appeal, the Gravel case, a bunch of law professors

14    said no, you missed the boat.  You should reconsider this.

15    There wasn't an intervening district judge to have addressed

16    nuances that might have been missed by the bankruptcy court

17    or at least put those nuances in a context where the court

18    of appeals could weigh differing views, or maybe the same

19    view.

20             So ultimately here, although it's two different

21    things -- there is the certification and then there is the

22    acceptance -- the lower courts when asked to certify direct

23    appeal are really trying to understand what Congress wanted

24    and what the Circuit views Congress wanted in Section 158.

25             MS. EITEL:  Your Honor, may I respond?

1           THE COURT:  Yes.

2           MS. EITEL:  And I would agree, it's probably a

3    universe of 99 percent of the cases that are not appropriate

4    for direct review.  The cases that don't get a fully

5    developed record and cases that don't have full necessarily

6    engagement.  I understand the Sabine decision was a case

7    like that.  But there is a tremendous discussion and

8    development of the record and consideration of this issue

9    from this Court such that the intermediate appeal is of much

10   limited -- much less utility than it would be in a typical

11   bankruptcy case.

12          And I would finally make this point, Your Honor.

13   The Second Circuit may or may not take it, but we need to be

14   able to flip the switch.  We need this Court's authorization

15   for us to go ask for that relief, to go to the Second

16   Circuit.  And that's all we're asking, Your Honor.

17          The Second Circuit may agree with you.  The Second

18   Circuit may say, United States Trustee, no, we want to hear

19   from Judge McMahon.  And the Second Circuit could tell us

20   that.  But I think it would be better for the Second Circuit

21   to tell us they don't want to hear from Judge McMahon than

22   for us to guess that they don't to hear from Judge McMahon.

23          THE COURT:  Okay.  I guess the last point I wanted

24   to say is that if the parties seeking a direct appeal have

25   the concern that somehow if that isn't granted, their rights

Page 79

1     to a stay pending appeal would be adversely affected, they

2     shouldn't have that concern.  That's really a -- that's not

3     -- I think they're two very different issues.

4             MS. EITEL:  I appreciate --

5             THE COURT:  So if their concern is that they want

6     to make sure that the Second Circuit gets to hear this issue

7     if they seek it to be heard on an expedited basis, I think

8     that concern is not going to be borne out, whether there is

9     a direct appeal or not a direct appeal.

10            MS. EITEL:  Thank you, Your Honor.  That's

11    reassuring in the sense that I turn back to where we started

12    today, which is the Debtors have been worried about getting

13    out of bankruptcy.  And we are happy to do everything

14    possible to get this case to a conclusion and whatever the

15    best path is.  I think it would be helpful to hear from the

16    Second Circuit to know do they want to hear it first or do

17    they want to wait.  And that's simply the opportunity the

18    United States Trustee is asking for.  We believe that any

19    more of the criteria would warrant the entering of the

20    relief and lets let the Second Circuit decide if they want

21    to accept the appeal.

22            THE COURT: Okay.

23            MS. EITEL:  Thank you, Your Honor.

24            THE COURT:  Thank you.  I don't know if any of the

25    joinder parties want to add to that.

1          MR. EDMUNDS:  Your Honor, Brian Edmunds for the

2     State of Maryland.  May I just quickly make a few points?  I

3     don't think you need to hear the whole argument again, and I

4     rely on the papers for most of it.

5          But in response to Your Honor's questions that you

6     asked during the U.S. Trustee's argument, there is no doubt

7     that there is a concern with speed here.  Our state has some

8     respectful disagreement with some of the terms of the plan.

9     But I think that everyone here is benefitted by the decision

10    being reviewed and review being completed as quickly as

11    possible.  We just have some concerns with the issues that

12    we raise on appeal.

13          The fourth factor under Section 158 talks about

14    whether an immediate appeal will materially advance the

15    progress of the case.  That's the factor.  And if that's

16    satisfied, that's one reason to certify.

17          I have read the case law and I agree with the

18    Court's conclusion that speed or the fact that it's going to

19    the Second Circuit are not grounds in their own right.  But

20    the importance of this case and the importance of I think

21    the case generally, meaning in the constitutional sense of

22    the case, the facts and the public health warrant parties

23    doing everything possible to move this as quickly as they

24    can.  And direct review could potentially help that.

25          THE COURT:  Well, I'm asking the same question,

Page 81

1    Mr. Edmunds, that I asked the U.S. Trustee's counsel.  The

2    Debtors and the Committee suggest that there's actually a

3    meaningful potential for delay by giving the circuit not

4    one, but two questions, i.e. do they want to accept the

5    direct appeal which has its own life, and then secondly, do

6    they want to -- you know, when they will rule on the merits

7    of the appeal.

8              Do you have any sense of how that first question,

9    how long it will take to be decided?

10             MR. EDMUNDS:  Your Honor, I think what is true is

11   that it can vary.  It could be that the Second Circuit

12   decides to issue a decision, as it's done in a few other

13   cases, on the standard for granting a direct appeal.  And

14   that might make it take longer because it will issue a

15   published opinion.  But I think in the run-of-the-mill

16   ordinary circumstance, the certification would be presented

17   to a motions panel which would decide the matter very

18   quickly.  Again, it's up to the Second Circuit and it's

19   entirely -- it's difficult to foresee.  But based on my

20   experience at least not in this context exactly, but in

21   similar interlocutory appeal type issues from district

22   courts, it can rule quickly.

23             In any case though, whether it does or it doesn't,

24   there is a schedule before Judge McMahon, and it's going to

25   conclude with argument on November 30th, after which I think

Page 82

1    we can expect she'll issue a prompt decision based on what

2    she has indicated.  And if it takes the Second Circuit

3    longer, that will moot the issue I think.  If there is a

4    final determination by Judge McMahon in, say, December, then

5    there will be no more need for direct appeal and there will

6    be no need for the Second Circuit to consider it.  But if we

7    can advance it a little bit more quickly, I think that it's

8    something that we should do for a lot of the reasons that

9    have been raised in opposition to the motions for the stay.

10   I mean, everyone benefits from getting this resolved

11   correctly and quickly.  And those two things are important.

12   But I think that a lot of what the Court has questioned are

13   reasonable things to think about.  But those are questions

14   that Second Circuit motions panel can answer and has

15   discretion under Rule 2 of the Federal Rules of Appellate

16   Procedure and under the Second Circuit Internal Operating

17   Procedures to decide quickly if it feels -- if the judges of

18   that panel decide that it needs to be done.

19          And I think given the importance of the case,

20   which I know the Court has recognized, and given the

21   seriousness and all of the things that ride on the case and

22   the outcome, I think that that's something that Second

23   Circuit can determine for itself one way or the other.  The

24   factors are present, and they warrant, if the Second Circuit

25   decides to do so, a direct appeal.

Page 83

1          So I think -- I hope that that answers all of the

2    Court's questions.  That's really all I want to do, is sort

3    of be helpful on that.  I think if the Court will allow,

4    I'll just rest on the papers and others' arguments for the

5    rest.

6          THE COURT:  Okay.  That's fine, Mr. Edmunds.

7    Thank you.

8          MR. EDMUNDS:  Thank you.

9          MR. GOLD:  Good morning, Your Honor.  Matthew

10   Gold, Kleinberg Kaplan Wilk & Cohen.

11         THE COURT:  Good morning.

12         MR. GOLD:  Can you hear me, and may I be heard?

13         THE COURT:  Yes.

14         MR. GOLD:  Thank you, Your Honor.  First, I just

15   want to note so that the record is clear that while Your

16   Honor has referred to us as joinder parties, we did file our

17   own independent motion.  And that motion was made jointly by

18   Washington, Connecticut, Delaware, Maryland, Oregon, Rhode

19   Island, Vermont, and the District of Columbia.

20         Today we are appearing on behalf of Washington,

21   Delaware, Rhode Island, Vermont, District of Columbia, and

22   Oregon with respect to this motion.

23         I will not repeat what has been said before in

24   argument, Your Honor.  The one point that I would like to

25   particularly elaborate is one of the mandatory prongs, which

Page 84

1    is is this a matter of public importance.  The statute

2    states that as a disjunctive, and we believe that that is

3    the simplest standard to satisfy here.

4            The appealing parties are states.  The plan would

5    strip these states of important rights.  This is a matter of

6    huge importance to the millions of residents of these states

7    and to their elected officials.

8            To be clear, the issues in this case are important

9    to all of the citizens and inhabitants of the states, not

10   nearly those who might have been considered or claimants in

11   the case.  And those are parties that even the Debtor, the

12   UCC, other parties who claim to be fiduciaries for creditors

13   in the case, do not represent the citizens and inhabitants

14   of these states that are interested in having their laws

15   properly enforced and not about letting those who fought

16   those law buy their way out of justice.

17           Now, I understand that reasonable minds can differ

18   about whether that is the effect of Your Honor's ruling.

19   But to say that these are not fair issues of dispute that

20   have not been raised by the parties and that will not have

21   to be decided through an appeal and that these are therefore

22   not matters of huge public importance, I don't see how that

23   case can be made.

24           I will just briefly comment on what Mr. Edmunds

25   said before.  I think he's right.  I have enormous respect

Page 85

1     for the panels of the Second Circuit that would hear issues

2     on a stay or whether it would take a case that has been

3     certified.  I believe that in a case of this magnitude, of

4     this public importance, with all the great lawyering that

5     all the parties are bringing to bear that there is

6     relatively low chance that this case will slip between the

7     cracks and somehow not be addressed by those parties either

8     to take the case or not take the case.  And the chance that

9     it will languish seems to me to be remote.  I would submit

10    it is remote.

11          And so, Your Honor, we do echo the call that Your

12    Honor has to service the gatekeeper to certify that, yes,

13    this is a matter of public importance.  And then the Circuit

14    Court can decide the Weeber factors that Your Honor

15    mentioned about whether in a matter of public importance it

16    still would rather hear from a lower court or not, or it can

17    take those matters into consideration.

18          And other than that, Your Honor -- well, the only

19    other thing I will add just because it has not been

20    mentioned before, the Debtors and objecting parties are now

21    claiming oh my goodness, there are so many facts in this

22    case.  We had a nine-day trial.  This is not inherently a

23    (indiscernible) dispute even though in the runup to the

24    confirmation hearing they argued many times that they had

25    gone for papers and that our arguments were essentially

1    legal ones.  We think that, yes, there are some facts at

2    play here, but those are not disputed facts.  I suppose it's

3    a fact that the appealing states are states.  It is a fact

4    in some sense that the actions that are being taken from

5    them are police powers.  But Your Honor has already

6    determined that these are police powers.  We know that these

7    are states.  And so the essential facts that bring this case

8    to a matter of public importance and that undergird the

9    legal nature are not in dispute.  Accordingly, Your Honor,

10   we submit that certification should be granted here.

11          THE COURT:  Okay.  Thank you.

12          MR. GOLDMAN:  Good morning, Your Honor.  Irve

13   Goldman, Pullman & Comley, for the State of Connecticut and

14   the other states that mentioned by Mr. Gold.  May I have a

15   brief period for commentary here?

16          THE COURT:  Okay.

17          MR. GOLDMAN:  I just want to put some finer points

18   why we believe there is no controlling decision in the

19   Second Circuit on the questions of law that have been

20   presented.  And that takes me first to the Metromedia

21   decision where the parties' and the Court's focus has been

22   during this hearing.

23          I think we all understand that as defined by

24   Black's Law Dictionary, a holding is a court's determination

25   of a matter of law pivotal to its decision.  It's

Page 87

1    interesting to note, on the other hand, what the Second

2    Circuit considers to be the highest order of dictum, and

3    that is judicial dictum, which is defined in U.S. v. Bell,

4    524 F.2d 206, as where a higher court is providing a

5    construction of law to guide the future conduct inferior

6    courts.  And even in that situation, it held that judicial

7    dictum is not binding on the court and therefore not binding

8    precedent.  So at most I think we can say that Metromedia's

9    discussion of non-consensual third-party releases is

10   judicial dictum and therefore it is not a controlling

11   decision on non-consensual third-party release in general,

12   let alone when they're used to release the police power

13   claims of state governments.

14        Even the dicta in Metromedia leaves wide open

15   questions on whether third-party releases are permissible.

16   For example, whoever decides or even provides guidance on

17   when a non-debtor release steps over the line into what it

18   calls (indiscernible) of the bankruptcy process.

19        And it's significant that in the last paragraph of

20   its discussion about third-party releases, the Circuit

21   rejected the appellee's argument because the appealing

22   creditors received distribution under the plan from the

23   third party.  They had no right to complain about the non-

24   debtor release.  And it reasoned that the appealing

25   creditor's plan distribution was on account of their claims

Page 88

1    against the debtor, not on account of their claims against

2    the non-debtor.  That was at Page 143 of the decision.  And

3    so it is here the distributions the states are receiving on

4    account of their claims against Purdue, not the Sacklers.

5    And that question was left open in Metromedia expressly in

6    the last paragraph that I just mentioned.

7             I think it's an even clearer case for

8    certification when you consider there is on Second Circuit

9    decision on the question of whether state governments can be

10   forced to release their police power claims against non-

11   debtor third parties via a third-party release.

12            At Page 141 of Your Honor's modified bench ruling,

13   you recognized that for many of the governmental objectors'

14   causes of action against shareholder-released parties, the

15   police power exception would apply.

16            But in deciding that those claims could be taken

17   away involuntarily by the third-party release here, Your

18   Honor did not cite any controlling Second Circuit decisions,

19   but decisions from other jurisdictions that police power

20   claims can be enjoined and that Congress's power under the

21   bankruptcy (indiscernible) of the Constitution overrides

22   police and regulatory power or state sovereignty.  There is

23   simply no controlling Second Circuit decision on those

24   points of law, or certainly Your Honor would have cited

25   them.

Page 89

1          There is also an open question in the Second

2    Circuit as to whether the bankruptcy court has core

3    jurisdiction and the Constitutional authority

4    (indiscernible) the third-party release.  I recognize that

5    Judge McMahon considered those issues (indiscernible).  But

6    there still is no controlling decision in the Circuit --

7    from the Circuit, rather, on those points.  And, indeed, the

8    only circuit to have resolved them was the Third Circuit in

9    (indiscernible).

10          THE COURT:  Well, but Mr. Goldman, I think when

11   you read the cases applying 158(d)(2)(A)(i), they recognize,

12   as one would have to, that it is incredibly rare, and you

13   would never be asking for a direct appeal in any event, if

14   you had a case exactly on point.  And that's not how they

15   define a controlling decision.  They define a controlling

16   decision as really controlling law, which may be supplied by

17   combining holdings from multiple cases.  And there have been

18   no more number of opinions written since Stern v. Marshall I

19   think in the appellate area on Stern v. Marshall.  And I

20   just -- I think to define controlling law that narrowly

21   would again open the door in a way that neither the statute

22   nor the circuit has said it should be opened.

23          Similarly, courts have said that it doesn't

24   warrant certification for direct appeal where someone says

25   there is not a decision that has adopted your position

Page 90

1    that's open.  I mean, I just think there are plenty of

2    course that say that.  Novel arguments do not make

3    controlling precedent any less so.

4            So the statute has narrow exceptions for police

5    power.  And it just seems to me that to put it into

6    (d)(2)(A)(i) as opposed to maybe one of the other

7    provisions, maybe the last one, is going to open the door

8    where courts almost uniformly have closed it.

9            I mean, there has been litigation in the Second

10   Circuit over third-party releases and injunctions since the

11   1980s.  And it's not like the wave of certifications when

12   (indiscernible) came out to interpret the new provisions of

13   (indiscernible), as Colliers predicts would happen every

14   time the Bankruptcy Code is amended in a meaningful way.

15           So I guess I would push back a little on what

16   you're saying.  I understand these issues are important.

17   And I also understand I believe they will get to the Second

18   Circuit.  It's just, again, whether it warrants a direct

19   appeal that's really what's before me.

20           MR. GOLDMAN:  I hear what you're saying, Your

21   Honor, but I think that could leave us falling into the

22   public importance category given the proliferation of third-

23   party releases and the constitutionality after Sterns v.

24   Marshall.

25           I think there is also a compelling issue based on

Page 91

1    the Jevic decision which holds that Section 105 can't be

2    used when there is a (indiscernible) statutes such as 249,

3    which allows the court to dismiss a case and (indiscernible)

4    certain provisions for cause, which it held was not

5    sufficiently implemented in that case.

6              And here there is a similar issue with Sections

7    1123(a) and (b)(6).  They are very vague statutes, but they

8    are being relied upon here as a means to say that third-

9    party releases are permissible under the Code.  And I think

10   there is an equivalence there to what the Court held in

11   Jevic.  And so I think for that additional reason, a direct

12   appeal is supported.

13             I think, finally, I would just conclude with

14   observing that as the U.S. Trustee pointed out, the factor

15   settlement agreement mandates that the debtors would move

16   themselves to direct certification.  So obviously the

17   Debtors and the Sacklers considered any challenge to the

18   third-party release to be suitable for a direct appeal.  Why

19   they've changed course now I would submit is perplexing and

20   they should be held to their position as stated in that

21   settlement agreement which Your Honor approved stating that

22   there would be no amendment notwithstanding anything to the

23   contrary.

24             THE COURT:  Well, that's a fair point.  And,

25   frankly, I don't think either your objection or the U.S.

1    Trustees raised it, but you are raising it now, and I will

2    take that into account.

3            MR. GOLDMAN:  Thank you, Your Honor.  That

4    concludes my remarks.

5            THE COURT:  Okay.

6            MR. GOLD:  Your Honor, Matthew Gold.  I just want

7    to briefly mention that our objection did mention the

8    Sackler settlement that this was contrary to and that the

9    Debtors (indiscernible).

10           THE COURT:  Okay.  Mr. Underwood, are you going to

11   speak?

12           MR. UNDERWOOD:  Yes, Your Honor, if I may.  Good

13   morning.  Allen Underwood on behalf of certain Canadian

14   municipality, first nation creditors and appellants.

15   (indiscernible) this matter, I think it's apparent appeals

16   (indiscernible) process and jurisdictional issues related

17   (indiscernible) authority of non-Article III judges over

18   both U.S. sovereigns and foreign sovereign and release --

19   held release claims as to them by debtors.  (indiscernible)

20   take that.

21           I want to pull back to 28 U.S.C. 158.  I'm going

22   to lower my volume here, Your Honor, because I hear that

23   there's feedback.  I don't know why.

24           The provision that I am interested in with regard

25   to 28 U.S.C. 158 is that the immediate appeal to the circuit

Page 93

1      they materially advance the progress of the case.

2                First of all, this is a direct appeal that is

3      desired by a number of -- a substantial number of different

4      governmental entities.  We now know that there is --

5      virtually no time is going to be lot by pursuing this appeal

6      to the Circuit.  And the language that I want to focus on

7      within this provision is "advance the progress of the case".

8      And believe it or not, I actually believe that the direct

9      appeal has a basis to advance, materially advance the

10     progress of this case.  Because as we sit here today,

11     although we have a confirmed plan, it is subject to appeal,

12     and it remains pending effective date and consummation.

13                There are some open issues I believe with regard

14     to this case and whether or not it may be consummated

15     ultimately at or near the effective date.

16                The first issue that I raise is one which was

17     raised in our papers, which is that the plan itself right

18     now is pending a motion for recognition in Canada.  Now I

19     will cut to the chase.  And certainly I -- at the risk of

20     quoting Your Honor, I believe you said on the record that at

21     the time of the decision, you did not believe whether or not

22     this case was recognized in Canada would effect Newco.

23                And when I went back and read that, I tend to

24     actually agree with that statement.  What I don't know is

25     whether or not recognition in Canada materially impacts

Page 94

1    whether the claim can be funded through the trusts in

2    Jersey.  And that is an issue that was certainly the subject

3    of significant examination and documentation at trial.

4         As it stands right now, the motion for recognition

5    by the foreign representative of the Debtors is opposed by

6    the Canadian municipalities and first nations.  The hearing

7    is scheduled for November 9th, 2021 in Ontario, Toronto

8    before Judge Conway.

9         At this point, we can at least presume that the

10   district court will provide us a decision by November 30th.

11   I can't predict whether or not the --

12        THE COURT:  Well, I don't know if Judge McMahon is

13   going to rule from the bench.  I don't think we should

14   assume that necessarily.

15        MR. UNDERWOOD:  -- (indiscernible) to carry that

16   pending matter to a date after the appeal before the

17   district court is decided on November 30th, or perhaps to a

18   later date when the circuit makes a decision, if that is

19   that path which Your Honor recommends and which the circuit

20   accepts.

21        I personally think that given the multi-party

22   dispute here and the likelihood that whatever the case may

23   be with regard to a district court decision, some party is

24   likely to take a higher appeal beyond the district court,

25   which is going to further delay that -- potentially further

Page 95

1    delay that recognition proceeding.

2            I think it's material to this that over the last

3    two weeks, I have openly -- twice openly requested of the

4    Debtors information as to whether or not they have sought,

5    the Debtors or the Sacklers in fact, have actually sought

6    the determinization of the court in Jersey as to whether or

7    not they can fund the plan as it exists today.  I have also

8    asked how long they would anticipate it taking for a

9    decision to be rendered by the Jersey courts.  And I have

10   also asked if they have not sought that determination, when

11   they intend to (indiscernible).  I have received no response

12   to those questions which I brought to the Debtors twice,

13   copied on all parties in this case.

14           And I bring those questions to the Debtor because

15   I think it's a fundamental issue about this with reference

16   to progress, material progress in this case.  And if they

17   cannot tell me that that application has been made and that

18   the (indiscernible) would approve the plan as confirmed, I

19   don't believe the plan can be funded.  And that's a

20   fundamental program.  And I think that is almost a sick joke

21   in the sense that we are arguing here about delay when that

22   delay could ultimately be immaterial if plan funding cannot

23   occur because of any number of different circumstances here.

24   And one of those potential circumstances could be a failure

25   in modification and recognition in Canada.  So that is my

Page 96

```
 1    first point, Your Honor, effectively that appealing to the

 2    Circuit may actually advance and (indiscernible) progress of

 3    the case vis-à-vis a determination that may be critical to

 4    plan funding.  I have asked, I don't have a response of

 5    whether or not it is critical to plan funding.

 6            With regard to the other issue that I would like

 7    to address, Your Honor, in terms of the -- in terms of the

 8    Debtor's arguments with regard to the Canadian first nations

 9    and municipalities appeals, they have yet still -- they have

10    made multiple pleadings to cite a case that states that the

11    Foreign Sovereign Immunities Act is not the exclusive path

12    for obtaining affirmative jurisdiction over a foreign

13    sovereign.

14            The Debtor has never effectively tried to suggest

15    that there is an exception to the Foreign Sovereign

16    Immunities Act that applies.  And there are fairly clear

17    exceptions set forth in the statute.  And there is

18    significant case law about this.  In terms of that fact that

19    what the Second Circuit's position on all of this is, I

20    would say that the exclusive mechanism for obtaining

21    jurisdiction over foreign sovereigns is through the Foreign

22    Sovereign Immunities Act.  And the citation of that is

23    Kirschenbaum v. 650 Fifth Avenue and Related Properties, 830

24    F.3d 107, 122 (2d Cir. 2016).  And the quotation is, "The

25    FSI provides the exclusive basis for obtaining subject
```

Page 97

1    matter jurisdiction over a foreign state."

2           Now, at the outset of this, I said that there are

3    jurisdictional constitutional issues related to these

4    appeals.  And I think that that suggests that that provision

5    from Kirschenbaum when read with reference to 1334 suggests

6    that there if in fact a subject matter jurisdictional issue

7    that should be handled by an appellate court.

8           And so on that, Your Honor, I think additionally

9    with respect to Section 106 of the Code, there is no

10   question that 106 of the Bankruptcy Code does not apply to

11   U.S. tribal sovereigns.  And I think it is more than

12   arguable that it does not apply to foreign tribal

13   sovereigns.  But there is obviously a basis here, Your

14   Honor, for a good faith appeal to the district court.  And

15   it is our belief that when we look at the good faith basis

16   of appeal, the weight of the appeal, the weight of the case

17   and the fact that determining these issues may actually

18   materially (indiscernible) the progress of this case, that

19   the request for certification, respectfully, should be

20   granted.

21          And I appreciate Your Honor's exceptional

22   dedication to this case.  Thank you.

23          MR. HUEBNER:  Your Honor, Marshall Huebner of

24   Davis Polk.  I see that Ms. Isaacs has her screen on.  I

25   don't know if she -- I believe she had said before she wants

Page 98

1    to be heard on this motion.  I assume that she is on the

2    side of the appellants.  And so before the Debtors begin to

3    respond to the incredible array of brand-new things we heard

4    today that were not in anybody's papers, as well as what was

5    in the papers, I want to extend Ms. Isaacs the courtesy of

6    speaking first if she would like to.

7              THE COURT:  Okay, Ms. Isaacs?  Did -- I don't

8    think you filed a motion seeking direct appeal, so I'm not

9    sure I agree with Mr. Huebner.  I am not sure what position

10   you want to take on this motion or whether there is a basis

11   to take any position.

12             MS. ISAACS:  Your Honor, you are incorrect.  I did

13   file an appeal.  And I've --

14             THE COURT:  No, I know you filed an appeal.  I

15   know you filed an appeal.  But this is a separate issue.

16             MS. ISAACS:  Okay.  And I have -- let me talk,

17   Your Honor.  Because you keep interrupting everybody that

18   has spoken today.  And I would appreciate your time and

19   effort in this, please.

20             THE COURT:  Well, again, I have a question.  And

21   you may think it's unfair, but I need to structure this

22   argument.  I don't think you filed a motion seeking a direct

23   appeal.  Right?

24             MS. ISAACS:  This is because I was not advised of

25   anything that's been going on.  I have not been given due

1   process or service in anything that's been going on since I

2   fired my attorney and came pro se into these proceedings.

3   Nobody, not Huebner, nobody has sent me anything.  Give

4   minutes before these proceedings, I had to work with Ms. Li

5   to get the link to these hearings.  They're unfair and

6   unjust and they're not impartial to the American people.

7   And this needs to stop.

8           THE COURT:  Okay.  I'm going to cut you off,

9   ma'am.  If you haven't filed a motion before me, I'm not

10  going to hear this.  I'm sorry.  You have your right to

11  appeal, you have appealed.  I will hear you on the stay

12  issues, but not on this motion.  All right?

13          MS. ISAACS:  Your Honor --

14          THE COURT:  No, that's it.

15          MS. ISAACS:  Your behavior --

16          THE COURT:  I'm -- no.  I'm sorry, ma'am.  I am

17  not going to hear this.  This is not a pulpit for anyone who

18  wants to speak.  This is a particular motion where people

19  take positions on the motion on the time allotted and not

20  just randomly saying I haven't received due process.

21          So I will hear the objectors.

22          MS. ISAACS:  Your Honor, it's incorrect that

23  (indiscernible) in the middle of us having a --

24          THE COURT:  We're going to cut if off.  I'm sorry.

25  You can come back on.  We will put you back on when we get

Page 100

1        to the pretrial conference on the motions for stay.  If you

2        were in the courtroom, the marshal --

3                    MS. ISAACS:  Please have them stop --

4                    THE COURT:  If you were in the courtroom, the CSO

5        would take you out, Ms. Isaacs.  This is a courtroom, and I

6        am not going to delay this on this basis.  You don't have

7        standing on this motion, which is a discrete and narrow

8        legal issue.

9                    MR. HUEBNER:  Your Honor, for the record, Marshall

10       Huebner of Davis Polk for the Debtors.

11                   First, with respect to Ms. Isaacs, Your Honor,

12       just to help her and all the pro se claimants who I do

13       believe have gone to extraordinary lengths to try to

14       facilitate access, there are three -- there's totally free

15       instant access to the docket 24 hours a day, seven days a

16       week for all parties on the Prime Clerk website.  I believe

17       that the hearing information is posted on those as well.

18       It's not actually our obligation to serve all of the

19       hundreds of thousands of parties individually for every

20       single motion.  These aren't even our motions.  This is

21       actually someone else's motion to which we are objecting.

22       And I just want to be clear, as an objector to someone

23       else's motion, the motion that we have to tell every

24       claimant in the case about the motion is just not a burden

25       that could fairly be put on us.

Page 101

1          Your Honor, as I said a few minutes ago, a

2    dizzying array of brand-new things that were in nobody's

3    papers, both cases and alleged facts, which are wrong, and

4    the like were told to you.  And so I am going to be I think,

5    with apologies, a little bit less organized than I try to be

6    just because I was essentially hit with a brand-new set of

7    arguments that nobody ever made.

8          And there are great answers to all of them, Your

9    Honor, and I will get to all of them, including your factual

10   question as to which parties were guessing at the answers,

11   and they were wrong.  And I have facts that I think will

12   probably be helpful to the Court.

13         Your Honor, let me begin off-script before I do

14   anything else about the U.S. Trustee's repeated citations to

15   Judge McMahon.

16         So, Your Honor, let me sort of express where we

17   are procedurally.  We obviously have enormous respect for

18   Judge McMahon and are delighted to be before her.  And we

19   are gratified that she actually adopted our proposed

20   schedule for the briefing of the appeal because we want it

21   briefed and heard before we emerge.  And that is an

22   extremely important point.

23         But, you know, for U.S. Trustee to cite Judge

24   McMahon's views expressed at a scheduling conference needs

25   context.  The irony is the U.S. Trustee talks again and

Page 102

1   again and again about due process, ironically, for people

2   who we don't believe exist, which are people with claims

3   against the Sacklers who don't have claims against Purdue.

4   And even if they did exist, those claims are not being

5   released under the plan.

6           But, Your Honor, here's what was before Judge

7   McMahon, and then I'm going to move on from this very

8   quickly.  Despite knowing weeks ago that this Court was not

9   going to enter a bridge order, the United States Trustee

10  waited until last Friday evening, the business day before

11  the district court's scheduling conference, to hit us with

12  that total surprise 25-page emergency stay motion at the end

13  of the page limit, after Judge McMahon issued an order that

14  said no more letters because they had previously filed

15  letters seeking relief, which we took to mean no more

16  pleadings.

17          The only document before Judge McMahon at a

18  scheduling conference held on Tuesday was a U.S. Trustee

19  pleading that on every single page misstates the facts and

20  misstates the law.

21          THE COURT:  But, Mr. Huebner, we seem to be going

22  a little far afield of what's before me.  I don't know where

23  this is headed.

24          MR. HUEBNER:  So, Your Honor, it's headed to

25  whether it's a pure question of law or not.  They were

Page 103

1    suggesting to, and in fact quoting from her that she has

2    already decided that these are pure legal issues.  And

3    that's just completely false.

4          So let me just move on, Your Honor.  That was

5    actually all I was going to say, which is there was a

6    scheduling conference where they had papers that they

7    ambushed us with that nobody else had time to respond to.

8    And Judge McMahon, based only on that, expressed some views.

9    That's not really relevant to today.

10         So let me just move right to the heart of the

11   matters.

12         Your Honor, Ms. Gold quite correctly began by

13   noting who was on the one side of this very important

14   contested matter.  So let's take a minute and talk about who

15   was on the other side.

16         It has been confirmed to us that the Ad Hoc Group

17   of Hospitals, the Rate Payer Mediation Group, the third-

18   party (indiscernible) participants, and the Ad Hoc Group of

19   Public Schools have formally advised the UCC that they

20   support all the arguments (indiscernible) UCC.

21         So on our side of the V as it were, Your Honor,

22   you have the Debtors, the UCC, the AHC, which as you know,

23   represents multiples of the number of states of the

24   objectors and appellants as well as many others in the NDL

25   (indiscernible), the Multi-State Entities Group, the

Page 104

1    personal injury claimants, the actual victims in this case

2    that others are somehow claiming to speak for, the NAS Ad

3    Hoc Group, the pediatric victims that others are claiming to

4    speak for, the hospitals, the public schools, the third

5    party payers, and the rate payers.

6            And so on one side, Your Honor, we have every

7    organized group in the entire case who have voted

8    overwhelmingly in favor of the plan.  And on the other side,

9    we have approximately one on-thousandth, a little bit more

10   than that, of one percent of the creditors in this case,

11   about ten out of 614,000.

12           So, Your Honor, let's just go right to the

13   statute.  Because you just heard a lot of oral argument.

14   And the most remarkable thing is that not one person cited

15   one case to you that actually addressed 158.  And that's

16   because every single case that has addressed 158 on each of

17   the prongs is fatal on its face to the (indiscernible).

18           And why is that so?  It's so important, Your

19   Honor, because you insisted that it be so.  You did not

20   break new ground in confirming the plan.  In fact, you

21   refused to.  And you told the parties at multiple junctures

22   during the confirmation hearing, I am not going to prove the

23   current form of the releases because they will be reversed

24   because they don't satisfy Metromedia.  If you don't fix

25   them, I'm not confirming the plan.

Page 105

1           And not only did you do it all through the

2    confirmation hearing.  Even after we thought that we fixed

3    them about four times, you still were not satisfied.  And

4    you said not there yet.  And in your actual ruling, you

5    pushed the releases even farther, well and unquestionably

6    within the scope of Metromedia.  A lot more on that in a few

7    minutes.  No new ground, no new law.

8           The second major assertion -- and just to say it

9    in plain English before I start citing case after case after

10   case -- is that the essential claim of the states is that

11   they are asserting claims for money damages and they want an

12   exemption from well-established law, Citing no cases and no

13   statute.  They say merely because we are a government, won't

14   you please exempt us from existing law.

15          Now, that may or may not happen someday, and I

16   think it's totally unsupported by anything.  I also think it

17   happens to be terrible social policy.  But that's a

18   different issue.  But asking to be exempted from decades of

19   well-established law, there is not world in which any court

20   has ever found that that is anything other than a failed

21   argument under 158.

22          In fact, the case law on 158 is quite clear that

23   novel and unsupported arguments attacking circuit law, which

24   is what the constitutional arguments do, or seeking to evade

25   it, which is what the supposed please give me an exemption

Page 106

1    police power does, does not satisfy 158.  Many people have

2    tried this before, which is why our brief is full cases.

3    And they've all failed.

4           But, Your Honor, it's so telling.  I would ask you

5    when you have a moment to just look at the very line of the

6    U.S. Trustee's brief, the first sentence of their

7    preliminary statement.  Because it says it all, and it's the

8    ultimate tell.  The U.S. Trustee says that the appeal in

9    this case will resolve, and I quote, "The circumstances, if

10   any, under which Chapter 11 bankruptcy may extinguish non-

11   debtors' direct claims against other non-debtors."  That's

12   how the U.S. Trustee described in their opening sentence the

13   question on appeal; are third-party releases inherently

14   legal?

15          But, Your Honor, that's the exact question that

16   was answered both very long ago and then again and again by

17   controlling Second Circuit authority.  I mean, you know,

18   these quotations to Metromedia, I don't know if they think

19   they're only going to read their sort of cherry-picked

20   quotes from it.  So let's talk about what it actually says.

21          "We have previously held that in bankruptcy cases,

22   a court may enjoin a creditor from suing a third party

23   provided the injunction plays an important part in the

24   debtor's reorganization plan."  Citing Drexel, which goes

25   back to 1992.  So they are reaffirming their previous

Page 107

1    holding.

2            And I'm so glad that Mr. Goldman pointed you to

3    the last page before they (indiscernible).  Because I have

4    all the cases, and I have all the right things circled.  And

5    what the Second Circuit actually did after going through the

6    factors that we all use, even though it's not the question

7    of factors, is it said but in this case, there was no

8    evidence about the necessity of the releases.  And in this

9    case, it was not proven that these were unusual

10   circumstances.  And therefore, merely paying some money into

11   the estate doesn't justify you getting a release.  We could

12   not possibly agree more and had about a hundred pages of

13   briefing on how the Metromedia holding and factors were

14   satisfied.

15           So as Your Honor has said to them again and again,

16   and they're just not listening, this has been the law in the

17   circuit for decades.  Going back to Drexel, cited by

18   Metromedia as a holding, and to Johns Manville, which

19   addresses these circumstances.

20           Your Honor, when you strip away all the adjectives

21   and all the adverbs, they don't have nouns or verbs, because

22   this case is a straightforward application of Metromedia and

23   multipole, multiple predecessor and successor, which we'll

24   talk about in a few minutes, cases.

25           We respect the fact that the appellants think

1    Metromedia should be overruled.  They are welcome to appeal.

2    We respect the fact that they think that you misapplied it

3    based on the facts of this case.  They are welcome to

4    appeal.  We understand that they are seeking a brand-new

5    exemption from existing law.  They are welcome to seek that

6    from the circuit court.  But that's not what 158 does.

7         In fact, as the cases say, let's talk about Zewdie

8    v. PNC Bank, 2015 WL 6007410.  158 is reserved for,

9    "exceptional circumstances in which the guidance of the

10   circuit court of appeals is necessary."

11        And, Your Honor, you've cited -- I don't know if

12   it's Weber or Weeber.  The Second Circuit has told us,

13   "Direct appeal is most appropriate where it, the court, is

14   called upon to resolve a question of law not heavily

15   dependent on the particular facts of a case."  Weber, 484

16   F.3d 158.  Every ruling made by this Court after days of

17   testimony and thousands of pages of sworn evidence was

18   supported.  And you tied it to the facts of this case. Which

19   is why, despite looking for weeks, we have not found any

20   confirmation order ever in the history of the Second Circuit

21   certified for direct appeal.  Because as I will explain in a

22   few minutes -- citing cases to you, not making stuff up --

23   there are very obvious reasons why that is so.

24        So let's begin with prong one; is there

25   controlling circuit authority?  So let me begin with the

Page 109

1    U.S. Trustee's brand-new argument.  Not in anybody's papers.

2    I'm not sure when it came to them, but obviously we will

3    deal with things as they arise, that somehow it's

4    disjunctive and you have to have both a supreme court ruling

5    and a circuit court ruling.

6          THE COURT:  You don't need to cover that.  That

7    just doesn't make sense.  I mean, to give someone -- I mean,

8    remember, 1158(d)(2) is mandatory.  It says shall.  So the

9    idea of bankruptcy courts all around the country certifying

10   direct appeals to the courts of appeals whenever there is no

11   supreme court case on record is just -- it's nonsensical.

12   So let's just move on from that.

13         MR. HUEBNER:  And, Your Honor, I'll leave it

14   except to say there is a reason no court has ever even

15   suggested that, because it would write the circuit court

16   right out of the statute.  Because if you need a supreme

17   court, which obviously governs all of us, what's the point

18   of having it be or the circuit court.  So it just -- again,

19   I have four arguments.  I'll leave them aside if Your Honor

20   views it.

21         So now let's talk about whether Metromedia is

22   actually law or dicta.  Your Honor, 16 years ago when

23   Metromedia was handed down, it was not a new ruling.  It was

24   just another ruling in a line.  Manville was in 1988,

25   reaffirmed in the nineties.  Drexel was in 1992.  But don't

1    take my word for it.  As I quoted before, Your Honor, the

2    Second Circuit itself said we have previously held that.

3    And then it quotes Drexel, "for the legality in appropriate

4    circumstances of third-party releases," 416 F.3d 141,

5    quoting Drexel, 960 F.2d 293.

6            But of course Metromedia is not the last Second

7    Circuit decision, it's the middle one.  Because it was

8    reaffirmed twice at the circuit level since 2005.  In re

9    Bernie Madoff Investment Securities LLC, 740 F.3d 81, 93,

10   Note 12.  And Pfizer, Inc. v. Angelos (In re Quigley Co.),

11   676 F.3d 45, 57.  It there cannot be possibly be gainsaid

12   that these cases don't trigger 158(d)(1), which involves a

13   "question of law as to which there is no controlling

14   decision of the circuit court or the supreme court."

15           But, Your Honor, let me take a detour.  Because I

16   do want to say it one last time, and then I'm not going to

17   say it again.  Had the sixth or seventh or eighth amended

18   plan where the release were arguably much edgier -- and we

19   were prepared to defend them, but they were unquestionably

20   broader and edgier -- still been in the plan, the question

21   of whether this Court went beyond the contours of Metromedia

22   might actually make today a hearing where there was fair

23   things to say on both sides.  But Your Honor refused to do

24   that.  And you said it again and again, I'm just not doing

25   it.

Page 111

1          So, Your Honor, if you look on Page 20 of the U.S.

2     Trustee's brief, as they're just fighting yesterday's war,

3     they allege that no controlling law exists because the

4     existing cases do not authorize "release of non-debtors'

5     direct claims of other non-debtors that are independent of

6     the debtor's own claims and property."  That profound

7     misperception or misrepresentation has no relevance because

8     there are no such totally independent claims released here.

9          Rather, Your Honor found expressly that that was

10    not the case.  What Madoff tells us is that "The touchstone

11    for bankruptcy jurisdiction over a non-debtor claim remains

12    whether its outcome might have a conceivable effect on the

13    bankruptcy estate."  Madoff at Page 88, quoting Quigley.

14    Those are the claims being released here.

15         Your Honor specifically limited the releases of

16    the Sacklers to claims for which the "conduct, omission, or

17    liability of a debtor is a legal cause of legally relevant

18    factor."  And Your Honor as a trier of fact found as a

19    matter of fact that the release claims against the Sacklers

20    have a direct impact on the estates and their property.

21         As you said in the bench ruling at Page 111, "I

22    conclude that the third-party claims that are covered by the

23    shareholder release under the plan, as I will further narrow

24    that release in this ruling, directly affect the

25    (indiscernible) of the debtor's estates, including insurance

1    rights, the shareholder release parties' rights to

2    indemnification and contribution, and the debtor's ability

3    to pursue the estate's own closely-related, indeed

4    fundamentally overlapping claims.  And thus, the bankruptcy

5    subject matter jurisdiction to impose a third-party release

6    and injunction under the plan exists."

7            And, Your Honor, in the confirmation order at Page

8    30, you further found that the debtor's continued

9    unavoidable involvement in potentially thousands of lawsuits

10   against the Sacklers that are clearly all about the debtor's

11   prior alleged or actual misconduct -- they admitted to

12   multiple crimes -- unquestionably would implicate

13   (indiscernible) debtors.

14           So with their first argument that it's not dicta,

15   I mean, they're basically trying to overrule the Second

16   Circuit, which has made it clear multiple times that it is a

17   holding.  Which is of course why if you were to ask them

18   what case ever anywhere in the world has ever said that

19   Metromedia is dicta, the answer is none.  Because not only

20   did they say in Metromedia that it was a holding, they did

21   it later in Madoff where they said, and I quote, "In In re

22   Metromedia Fiber Network Inc., we held that a bankruptcy

23   court could permit the non-consensual release of creditors'

24   claims against third parties upon a finding of truly unusual

25   circumstances that render the release terms important to the

Page 113

1    success of --" they use different words, but the underlying

2    bankruptcy plan.

3           So now let's talk about other cases.  And then I'm

4    going to move on to point two.  Judge Wiles in Aegean

5    Marine, which is a fabulous case for us in every way, says

6    that Metromedia commands -- his words, "Metromedia commands"

7    that third-party release may be granted in appropriate

8    circumstances.

9           In SunEdison, Judge Bernstein said Metromedia sets

10   the "requirements" for the third-party release, as does

11   Judge Peck in Charter Communications.  Yet other cases so

12   holding, including Kirwan, Oneida, ResCap and

13   (indiscernible), are laid out in Paragraph 9 of the UCC's

14   brief.

15          So if the movants are right that Metromedia is

16   somehow dicta, it's going to be a pretty shocking piece of

17   news to the Second Circuit, which has said three times it's

18   not, and to every single court in this district ever to have

19   addressed Metromedia and said the contrary.

20          Point number two, Your Honor.  And this is where

21   the "police power" comes in.  So first of all, no one has

22   ever said that all of the states' claims for money damages

23   for past conduct are police power claims.  Quite the

24   contrary.  When we filed our injunction, one of our

25   rationales was even with an individual complaint by a state,

Page 114

1    there could be some that are clearly police power, some that

2    might be police power, and some that we don't believe are

3    police power.  And the parsing what was literally thousands

4    and thousands of individual accounts was unneeded and

5    impossible.  But I don't think there was ever a ruling that

6    the state's claims for money damages for past conduct are

7    all police power.  But it doesn't matter at all.  Because

8    their next argument is that the fact that there is no

9    settled Second Circuit decision on whether every

10   governmental entity presumably in the world gets an

11   exemption from established law has already been ruled on

12   under 158 by cases on analogous types of arguments.

13            So let's call a spade a spade.  What the movants

14   seek is a brand-new, plucked from thin air, bespoke

15   exception to Metromedia.  They want to add a new factor that

16   says unless you are a government, in which case this doesn't

17   apply.

18            Leaving aside that this would leave any

19   governmental entity, no matter how large or small, no matter

20   how legitimate or illegitimate, no matter how unreasonable

21   their demands were.  If there were 80,000 governmental

22   entities to one, that one set, I'm not doing a deal unless

23   you do X, Y, or Z because I have the power to stop this

24   plan.  That's the rule of law they are looking for.  And

25   it's not a surprise that they have exactly zero -- zero

Page 115

1    cases, zero statutes, zero anything supporting their request

2    to be exempt from existing law.

3              But what we do have, Your Honor, is multiple

4    cases.  So when you say, hey, I wish this were different for

5    me, you lose.  In Paragraph 16 of our brief, the cases are

6    there.  An attempt to seek a novel exception or loss on

7    well-settled law does not justify direct appeal.

8              In In re Goody's Family Clothing, 209 WL 2355705

9    at Page 2, the Court held, "The court need not conclude that

10   this case presents a question of first impression merely

11   because appellants have innovated a novel argument."

12             In In re Ladder 3, 2018 WL 22998349, the district

13   court rejected the movant's attempt to artificially

14   transform a simple application of 9019 into a legal question

15   and said, "There is no controlling decision addressing the

16   precise question...  That's not because the legal question

17   is open, but because no one has made such an obviously

18   flawed argument."

19             With respect to Mr. Underwood's arguments, Your

20   Honor, first of all, he filed a joinder six days after the

21   deadline for the motions.  If my memory is right, he's not

22   even allowed to make separate arguments that were not in the

23   main motions.  All of this stuff about Jersey law honestly,

24   it just has no relevance today.  We are all moving rapidly

25   and assiduously towards being able to close when allowed to

Page 116

1   do so.

2           Again, I shouldn't have to address any of this

3   because this is all an ambush and improper under a joinder,

4   but on a motion that already was moving on shortened time.

5   But for the avoidance of doubt, Your Honor, his foreign

6   sovereign immunities claims were exactly what agreed to

7   confirmation, and Your Honor dealt with them completely and

8   definitively.  No case has ever held that 106 does not mean

9   exactly what it says on its face, which is that sovereign

10  immunity is abrogated when you participate in a case.  So

11  I'm going to leave Mr. Underwood sort of, you know, riffing

12  on his joinder on that motion to shorten time at that.

13          Point three, Your Honor.  I only have to say the

14  sentence, but then I'm going to use a lot of case law.

15  Arguments that Metromedia was wrongly decided, and the

16  appellants believe it's going to be overturned either by the

17  Second Circuit itself or by the Supreme Court has been held

18  by many courts to not remotely trigger 158.  Because 158 is

19  about the lack of controlling circuit decision.  It's not

20  about displeasure with circuit decisions.  And what they're

21  doing is they're expressing their displeasure that the law

22  in the Second Circuit and six other circuits is what it is.

23  And if some day they are granted cert, they are absolutely

24  welcome under our legal system to advance that argument to

25  the supreme court.  But what they are not allowed to do is

Page 117

1    pretend that it justifies 158.

2         So let's talk about that.  So first of all, let's

3    just leave aside the audacity and hail Mary cubed aspect of

4    the appellants actually saying the Second Circuit got this

5    wrong five times, six other circuits got it wrong multiple

6    times, and that dozens of courts have been violating the

7    constitution literally for decades and only these appellants

8    have figured that out.  Because even if they're right, that

9    goes in their cert petition.  It's a dead loser under 158.

10        So first let's talk about -- and now I'm going to

11   tie back to the sort of attempted weaponization of Judge

12   McMahon, which I think was extremely inappropriate after the

13   ambush the U.S. Trustee pulled on many more governments who

14   are on our side than, frankly, are on theirs.  It's just not

15   a pure legal issue at all.  The question of whether due

16   process was provided hinges in no small part on the notice

17   and opportunity to be heard.  That is an inherently and

18   intensely factual issue that turns on the notice provided, a

19   subject on which there was extraordinarily extensive

20   testimony, unrebutted, uncontroverted, and mostly

21   unchallenged at multiple hearings before confirmation.

22        And, Your Honor, you made detailed, factual

23   findings, including about the notice of the third-party

24   release claims.  I think we all remember -- I think it was

25   Mr. McClammy holding up the print ads and the internet ads

Page 118

1   and the plain English posters and the links to more

2   sophisticated notice and the ways that we spent literally

3   tens of millions of dollars.  We spent more on trying to

4   give every American notice, with billions of hits, than most

5   bankruptcy cases involve.  And this Court ruled on the

6   facts.

7            Page 115 to 116, "As far as the record before me

8   is concerned, notice of the confirmation hearing and the

9   plan's proposed third-party claims release satisfied due

10  process."   Bench ruling at Page 113.

11           "Under the amended plan, it is now clear...that

12  only holders of claims against the debtors are being deemed

13  to grant the shareholder release, and it is equally clear

14  that...that holders of such claims receive due process

15  notice."

16           Second, Your Honor.  If the movants were correct

17  in their claim that the third-party releases inherently and

18  forever violate due process because they're always illegal,

19  that means that 50 courts, including seven courts of appeal

20  have all been violating the constitution.

21           Your Honor, for the avoidance of doubt, the due

22  process laws of the Fifth Amendment is 230 years old.  I

23  think it is a reasonable assumption that the seven circuits,

24  including the Second Circuit, knew about the existence of

25  the Constitution of the United States of America and the due

Page 119

1    process clause as they ruled again and again that under

2    appropriate circumstances third-party releases are

3    appropriate.

4         Finally, Your Honor, Section 158's requirement of

5    no controlling circuit precedence becomes both a farce and a

6    nullity if you can satisfy it by saying, well, there is

7    controlling precedent, but it's wrong.  Then there's no test

8    at all because all you have to do is say I think the circuit

9    got it wrong --

10        THE COURT:  I actually don't think they're really

11   -- I don't think they've really been pursuing that argument.

12   I mean, I don't get that in the motions.  But...

13        MR. HUEBNER:  Okay.  I'll leave it at that.  If

14   you don't even view it as the argument, I don't need to

15   spend more time doing battle with it.

16        So, Your Honor, let me keep rolling then.  We're

17   sort of about to start factor number two.  So the question

18   on factor number two is what they are calling the public

19   importance factor.  And again, it's just beyond telling that

20   you heard a lot of oral argument, and you asked a lot of

21   questions, and no one actually cited to you the many cases

22   that we all agree are the governing or relevant cases

23   because they are fatal to their claim.

24        So let me be very clear so there is no

25   misunderstanding.  I have said probably more than any lawyer

Page 120

1    in this case, because I am at the podium the most, for worse

2    or for better, that these cases and the plan are without any

3    possible doubt extraordinarily important.  That's why we're

4    all so passionate, because the plan has the ability to

5    ameliorate, improve, and hopefully even save many lives,

6    holding thousands or tens of thousands to abatement programs

7    it is almost ready to begin funding with billions of

8    dollars.

9           But that's not the test under 158.  It's not of

10   the case is of things that are important, and it's not even

11   whether the appeal's outcome is important.  What courts have

12   held -- first let's talk about the standard.  So all the

13   relevant courts have held that the -- and I'll just quote

14   it, courts "interpret the public importance prong narrowly."

15   See In re Nortel Networks Corp., 2010 WL 1172642 at 2, Jaffe

16   v. Samsung, 470 B.R. 374.  Because it's easy for lots of

17   cases to say big case, important case, famous case.  Right?

18   That's not the standard.

19           Jude Scheindlin in Mark IV Industries v. New

20   Mexico, 452 B.R. 385, 388-389 explained, and I quote,

21   "Public importance exists when the matter on appeal

22   transcends the litigant and involves a legal question, the

23   resolution of which will advance the cause of jurisprudence

24   to a degree that is not usually the case."  That holding has

25   been applied in every case that has articulated the

Page 121

1    standard.  Sabine, 551 B.R. 140; American Home Mortgage 408

2    B.R. 42; Springfield Hospital, 618 B.R. 109.  And we'll get

3    to Springfield Hospital in a few minutes.  We are delighted

4    they cited that case, because it actually proves, like all

5    the other cases that actually ruled on 158, why they lose.

6         And we all agree that this is the standard.  The

7    U.S. Trustee put it at Page 20 of their brief, California

8    put it at Page 2 of their brief.  It's not the importance of

9    the case or how it affects people, it's whether there is an

10   open legal question whose resolution by a circuit will

11   advance the cause of jurisprudence.

12        Your Honor, let's look at General Motors.  Because

13   we were told a lot of things about it that were just flatly

14   not true.  Because it's incredibly instructive.  So, Your

15   Honor, you've asked the question during the case, which is

16   what was the timing of the Second Circuit in General Motors.

17   Davis Polk might have gotten it wrong, but is sure hope not,

18   because we went and got you your answer.

19        The petition for direct appeal was filed on June

20   18th, 2015.  It was granted 83 days later.  That's just the

21   petition on the 9th of August.  The ultimate opinion was

22   rendered 391 days after the petition for direct appeal was

23   filed on July 13th, 2016.  So, I don't know, maybe we've got

24   something wrong, but I don't think so.

25        Your Honor, the General Motors 158 opinion is

Page 122

```
 1    incredibly relevant and deadly on point.  And it shows you

 2    why they lose under prong two.  We cited, Your Honor, in

 3    Paragraph 23 of our brief and the MSGE discusses it at

 4    length in Paragraph 14 of the brief.  Almost exactly as

 5    here, the GM objectors asked Judge Gerber to certify

 6    (indiscernible).  Many of us were involved in the auto cases

 7    around the clock at that time.  It is no exaggeration to say

 8    that the survival of the U.S. auto industry was at stake and

 9    the livelihoods and pensions and medical benefits for

10    hundreds of thousands of people as well as tens of billions

11    of dollars of U.S. and Canadian taxpayer funds.

12          But Judge Gerber correctly and un-controversially

13    distinguished between the importance of the case and of GM

14    from the "question of law presented".  And here's what's

15    just so important about the case.  He concluded that the

16    legal question was not a matter of public importance that

17    merited direct appeal because "Many people would agree that

18    GM's wellbeing is a matter of public importance."  But then

19    he went on to say the legal question was not an issue of,

20    quote, public importance because it had already -- sorry,

21    that's not a quote.  Because exactly as here, the issue had

22    already been decided by the circuit.  And quote -- this is a

23    quote, "Deciding it again was not a matter of public

24    importance."

25          The final attempt by the movants, Your Honor, to
```

Page 123

1    shoehorn themselves into public importance where they just

2    don't fit, is an argument that the third-party releases

3    themselves are an important issue.  But again, they're

4    simply attempting to attack existing circuit law.  What the

5    158 prong two cases say, there has to be an open question

6    below the circuit level on which new circuit law guidance is

7    needed to advance jurisprudence.  Having the Second Circuit

8    overrule itself cannot possibly meet that standard.  That's

9    not new guidance on an unresolved issue.

10         And in Millennium, by the way, just to get even

11   more focused, Judge Silverstein specifically concluded that

12   the legality of non-consensual third-party release in

13   bankruptcy cases is not a legal issue of public importance

14   under this prong despite being exactly as here,

15   "unqualifiably important to parties".  Millennium Lab

16   Holdings II, LLC, 543 B.R. 703, 716.  So we have case after

17   case saying you lose public importance if the circuit has

18   already ruled.  Or even on cases saying that this exact

19   issue doesn't satisfy the process.

20         So, Your Honor, let's look at Springfield

21   Hospital, which sort of is their only case on public

22   importance.  Because there too, they just seem to keep

23   forgetting that you read every case if you read them all

24   cover to cover, and you actually understand what they

25   actually say.

Page 124

1          What happened in Springfield Hospital is that

2     COVID happened, and the CARES Act was passed, and PPP was

3     put in.  And there was a novel question that had not been

4     answered by the Second Circuit about whether or not Chapter

5     11 debtors were eligible or ineligible for healthcare

6     programs under the CARES Act.  That's a perfect potential

7     use of 158, new statues, new issue, never been ruled on.

8     You know, one side argue, well, but it's about to sunset.

9     The other side said no, we're in a terrible national crisis,

10    it might get extended, people need to know whether debtors

11    can get PPP CARES Act funds or not.  In that case, which,

12    again, it's all right there in black and white, agreed that

13    the public importance prong under 158(d)(2) is a high bar

14    for certification.  And like all the other cases, they cite

15    Mark IV, Sabine, and Millennium for the demanding standard

16    they don't come close to meeting.  And Jaffe v. Samsung,

17    which they quote for the proposition, and I quote, "There is

18    no question that 158(d)(2) should be involved only in narrow

19    circumstances," id at 117, quoting Jaffe.

20          So, Your Honor, these cases are very, very

21    important.  But that just is not relevant at the end of the

22    day to 158(d)(2) by which many courts have ruled.

23          Prong three, Your Honor.  Do these cases require

24    reconciliation of conflicting authority?  I'm going to cut

25    this short because I think that Your Honor already basically

Page 125

1    did exactly what I was going to do.  And to be candid, it's

2    actually very dispiriting to me to see a division of the

3    Department of Justice in a major state represent what cases

4    do and don't say to a federal court in ways that are just

5    unsupportable.  Interestingly enough, even the appealing

6    states, who don't hold many punches back, couldn't bring

7    themselves to advance this argument.  They dropped a

8    footnote that just says in like five words, you know, maybe

9    prong two, footnotes one.  You know, no explanation, no

10   color.

11          The notion that there is an intra-circuit conflict

12   within the Second Circuit is just completely and totally not

13   credible.  They cite a grand total of two cases.  Do those

14   cases conflict with one another?  No.  Do they say they

15   conflict with one another?  No.  Do they say I think Judge

16   Wiles got it wrong, I respectfully disagree with Judge

17   Bernstein?  No.  Did they refuse to apply Metromedia?  No.

18   What did they actually do?  Judge Wiles said, "As commanded

19   by the Second Circuit in Metromedia," and then went on to

20   say you can impose third-party releases in appropriate

21   circumstances.  He definitely took issue, and I agree with

22   him passionately and completely, that people -- some people,

23   not us -- have started to treat third-party releases as "no

24   big deal" and they don't present evidence.  And in that

25   case, there was no evidence that if the release claims were

Page 126

1    not released, that would undermine the restructuring.

2         Here, we had about a thousand pages of

3    declarations and days of trial that there could be no

4    restructuring without these releases in large part because

5    of the other dozens of intercreditor deals in which these

6    very movants insisted in Phase 1 mediation that there be a

7    Sackler settlement or else there was not public-private

8    deal.

9         So in our case, which probably had the most

10   intensive trial on third-party releases ever, not only was

11   it proved beyond (indiscernible) that the claims would,

12   quote, undermine the plan if they weren't settled, but there

13   would be no plan.  It would be obliterated.

14        Then of course there is SunEdison.  Somehow -- and

15   again, you asked them for the quote.  Of course there is

16   none because it's just totally a misrepresentation of the

17   case.  SunEdison, like Aegean Marine, simply applied

18   Metromedia to the facts before it.  That's what trial courts

19   do.  They take the law, and they say you give me the facts,

20   let's look at the law, and then I rule.

21        And not only that, but in SunEdison, after finding

22   that they failed to justify any conceivable effect on the

23   estate, the judge even said if you want to submit a modified

24   form of release that does come within Metromedia, go ahead.

25   You simply did it before the ruling and said if you don't

Page 127

1    fix these, I'm not ruling at all.  And then they were fixed.

2    So the notion that there is an intra-circuit dispute based

3    on the only two cases any party cites, both of which agree

4    with each other and actually reach very similar conclusions

5    in applying Metromedia to their facts is really shockingly

6    unsupported as a claim.

7              Finally, Your Honor, there is the question of

8    whether a direct appeal will "materially advance the

9    progress of these cases".  Here also, Your Honor, it's

10   amazing to me that someone can get up and make a legal

11   argument to a court and not cite a single case where case

12   after case has interpreted and addressed this prong.  So

13   let's actually go to the law.

14             Their first claim that we want to end up at the

15   Second Circuit so you should let us -- or beyond.  And I'm

16   going to talk about that in a few minutes.  But they

17   certainly don't intend to stop based on everything they have

18   said so far, including on Tuesday.

19             Their first argument is we'd like to go to the

20   Second Circuit eventually, so let us go there first and

21   won't that save some time.  We'll talk in a few minutes

22   about whether it will save time, because it most assuredly

23   will not.  The argument loses the minute the question is

24   articulated.  As Judge (indiscernible) ruled in Manville,

25   and I quote, "If valid, the argument would eliminate appeals

Page 128

1    to the district court, contrary to the statement by the

2    court of appeals that the normal appellate process should

3    proceed so that the court of appeals is provided with the

4    views of the district court to aid in the fair decision of

5    the appeal."

6         Citing Weeber, Your Honor, exactly as you did, 484

7    F.3d 160.  "Congress was aware of the dangers of retrying

8    the district court in the appeals process and probably

9    recognized the salutary effects of allowing some cases to

10   percolate through normal channels."  Manville, 449 B.R. 31,

11   34 (S.D.N.Y. 2011).

12        Then there is the Lehman case, which addresses

13   their argument and dispenses with it.  In Lehman as well,

14   the movants have apparent aspirations to take the case to

15   the Second Circuit and beyond.  And the Lehman court said

16   that this would, and I quote, "If the mere expectation of

17   advancement to a circuit court was sufficient to establish

18   material advancement, Section 158(d)(2)(A) would effectively

19   eliminate the district court from the bankruptcy review

20   process altogether."  In re Lehman Brothers Inc., 2013 WL

21   5272937 *5.

22        But then, Your Honor, let's pretend for a minute -

23   - let's just pretend that the law says I think I can go

24   faster if I just skip the district court so would you let me

25   just go faster, it definitely does not say that.  Not even

Page 129

1    close.  But even if it did, they still would lose.  Because

2    given where we already are, there is no question that direct

3    certification would still be appealed down probably by

4    months and impose terrible, utterly avoidable costs and harm

5    on all parties.

6            As Your Honor knows, Judge McMahon has been

7    assigned the appeals.  In her words, she put the appeal on a

8    "Rocket docket".  Appellate briefing is commencing on

9    October 22nd, concluding on November 19th.  Oral argument is

10   scheduled for November 30th, and she intends to rule

11   expeditiously thereafter.

12           The U.S. Trustee basically admitted -- I think she

13   said it three times -- that there is a distinct possibly,

14   it's very likely that Judge McMahon will already have ruled

15   before the Second Circuit even decides whether or not to

16   take the case, let alone then having a second round where we

17   ask for expedited briefing and then having briefing, and

18   then schedule an oral argument, and then having oral

19   argument, and then waiting for a three-judge panel to

20   coordinate and rule.  Any argument that the Second Circuit

21   is going to get us to a decision on the merits on the appeal

22   faster than what looks to be early to mid-December is

23   completely, completely not credible.

24           And that's why Judge Toto found that thinking

25   you're going to move faster by just skipping a step -- and

Page 130

1    the Second Circuit in Weeber said not happening.  Which is

2    why, Your Honor, it's very likely that this helps explain

3    why no confirmation order to our knowledge has ever been

4    directly certified.

5              THE COURT:  So the statute says in 158(d)(2)(D)

6    that the appeal at the district court level proceeds until

7    the circuit court takes the -- if it decides to take the

8    certification.  So the U.S. Trustee says well, then we can

9    have the best of both worlds.  Judge McMahon, who is I think

10   probably not likely to lay down her pen, would keep working.

11   And then the circuit would be that much faster along because

12   there would be a request for a direct appeal.

13             I understand your argument about, well, we can't

14   set up precedent that just says if speed is important, then

15   it always goes to the circuit.  But what is your response to

16   the U.S. Trustee's point that you can have the best of both

17   worlds?

18             MR. HUEBNER:  Sure.  Your Honor, it's not actually

19   the best of both worlds at all.  The best of both worlds is

20   for the existing appeal to be argued as if it were an

21   existing appeal.  And then there is a decision of a district

22   court that requires no special extraordinary extra round of

23   decision-making under a statute that is supposed to be

24   invoked very rarely under extraordinary circumstances.

25             I think there is a very good argument -- I try not

Page 131

1   to make stuff up on the podium, but I think there's a very

2   good argument that we actually get to the Second Circuit

3   faster if we actually have a normal appeal and it is ruled

4   on with extraordinary speed which Judge McMahon is being

5   remarkable about.  And then we all go together if that's

6   where we are.

7           Look at the facts I gave you in GM, Your Honor.

8   It took them 83 days just to rule on direct certification.

9   They will already have well before them I would think based

10  on what Judge McMahon has said so far in appellate decision

11  -- and by the way, Your Honor, I'll give you another great

12  answer which is totally different.  One of the appellant's

13  ground for appeal, which we actually think is frivolous, is

14  the Stern v. Marshall issue, which is that you need an

15  Article III judge and not an Article I judge.

16          Here's another great reason.  Because skipping the

17  district court harmed the case grievously if that argument

18  is found to be meritorious.  Because if the Second Circuit

19  finds that, they have to remand it for further proceedings.

20  If the District Court finds it under amending standing order

21  of reference, M10-468, S.D.N.Y 2012, they are actually

22  allowed, I think it's a directive maybe, to treat any

23  rulings of this court as proposed findings about conclusions

24  of law.  And so actually if one of the arguments they love,

25  and we don't put stock in, that they're actually right, then

Page 132

1    it's a fact that we get resolved (indiscernible) the

2    district court because there is no remand.  The district

3    court can (indiscernible) and the circuit court cannot

4    (indiscernible).  So that's just one of many reasons.

5              But again, Your Honor, the burden is not on the

6    respondent.  The burden is on the movant to be granted

7    extraordinary relief available in only rare circumstances.

8    And they have the burden of proving that these cases would

9    proceed much faster, and the just have nothing except we'd

10   like to skip the district court because we'd like to go to

11   the circuit eventually, so why not go there first.  And

12   there is a reason that no case has ever allowed that,

13   because all the other three prongs of 158 become a joke if

14   you can merely say I'd like to move fast.  This is not

15   inefficient.  And they're asking the Second Circuit to now

16   potentially start ruling on an innumerable number -- I guess

17   kind of a numerable number -- on some unknown but very high

18   number of direct certification motions.

19             And there is a reason no case has ever held this,

20   because it's wrong and because it would make a complete hash

21   of the actual requirements of 158, which are simply not

22   satisfied.  I mean, I think at the end of the day it's kind

23   of that simple.

24             Your Honor, I guess there are a couple of other

25   things that were said that -- so let me just pause for a

Page 133

1    minute, Your Honor.  Does that answer your question?

2              THE COURT:  Yeah, I guess so.  I think the phrase

3    leaves a lot, I think, a fair amount to interpret.  But you

4    needed to read it in the light of the other provisions,

5    158(d).

6              In the hospital case, I actually think that the

7    district court ruled again quite on the PPP issue before it

8    ever got to the circuit.  And I think it died there.  So

9    clearly a direct appeal certification doesn't stop an

10   appellate process.  Some judges might conceivably put less

11   into it than they would if they knew they were going to have

12   to make a decision, but I don't think Judge McMahon would be

13   one of those judges.

14             But I guess the issue is that these points will be

15   raised in the future.  And I guess any deviation from the

16   general logic of the statute has to be pretty well thought

17   out.

18             MR. HUEBNER:  Your Honor, I would say one other

19   thing.  Your point that there is a canon of construction

20   statues for -- you know, designed to be read harmoniously to

21   give effect to each provision, right?  I mean, the first

22   three prongs would really almost be erased if any time you

23   just thought you could move faster and --

24             THE COURT:  No, I understand.  So I guess the

25   answer to your question is I think you should move on to the

Page 134

1    point which, I stand correct, was raised in the last

2    paragraph of the state's motion.  I don't think in the U.S.

3    Trustee's motion, about the Sackler settlement agreement --

4              MR. HUEBNER:  Sure.

5              THE COURT:  -- and whether this litigation is

6    somehow a breach of that agreement.

7              MR. HUEBNER:  So, Your Honor, the answer is, as

8    you might imagine, we are aware of what our settlement

9    agreement says.  So let me explain it as follows.

10             The agreement was obviously negotiated and was I

11   believe filed on the docket well before the confirmation

12   hearing was underway, and certainly well before Your Honor

13   issued a great amount of guidance during the hearing and

14   great amount of further guidance in connection with the

15   ruling, including at the ruling itself, including directing

16   us not to change it.

17             The ethos of that provision without any question

18   is in fact getting to an appeal because, frankly, we have

19   never had a problem with them.  And that's the other great

20   sort of unstated untruth, that somehow we are desperately

21   trying to avoid a layer of appellate review.  That's wrong.

22   And that's why the U.S. Trustee's puzzlement is puzzling,

23   because we made our views quite clear.

24             We agree and in fact support -- who cares what we

25   think?  We're just lawyers for the Debtors.  But so that

Page 135

1   there is no confusion, we fully agree with and support the

2   views of both this Court and Judge McMahon that this plan is

3   not getting mooted until Judge McMahon rules.  Period, end

4   of story.

5           But that's because she already told us, which is

6   why it's so terrific, that she understands the tremendous

7   harm involved here in delay.  The fact that like a half of

8   one percent of the creditors are trying to stop one of the

9   most complicated and overwhelmingly consensual plans in

10  history.  Let's not forget, Your Honor, that 4,924

11  governments voted on the plan.

12          THE COURT:  Okay.  But let me -- do you have the

13  agreement of the people that need to agree on the settlement

14  agreement?

15          MR. HUEBNER:  We do, Your Honor.  I was about to

16  get there, Your Honor.  So while kind of a waiver under the

17  document is unquestionably something in favor of the debtors

18  -- and clearly the court -- I can't imagine them to rule the

19  Sacklers are not allowed to waive any provisions that are

20  not in the state's best interest. You know, we are not

21  amending it because you told us you don't want to see it

22  amended again, this final document.  But the answer is

23  absolutely.  We of course would not be here today litigating

24  ourselves into a breach of the settlement agreement.  It

25  goes without saying that in light of the Court's ruling,

1    which we did not know until September 1st, and the way you

2    ruled and the extraordinary use of the factual record, we

3    don't think direct certification is legally appropriate.  We

4    don't think 158 is satisfied.  We think it's an improper

5    abuse of a statute and we think it's not in the estate's

6    best interest because we have a judge who will rule and tell

7    us whether she shares your view or not that this plan was

8    entirely lawful.  So the expedition provisions nobody wants

9    to move away from.  We want this on a rocket docket, and we

10   were delighted that Judge McMahon adopted our briefing

11   schedule.  We do have a waiver of the obligation to pursue a

12   direct appeal because it is wrong to do so and no longer

13   makes sense.

14          THE COURT:  So you are representing that you do

15   have a waiver from the Sacklers of that provision?

16          MR. HUEBNER:  Your Honor, the notion that I would

17   be here today asking you to enter a ruling that would then

18   breach the settlement agreement (indiscernible) piece of the

19   plan, obviously it goes without saying that is not right,

20   could never be right, et cetera.  Of course we have a

21   waiver.

22          THE COURT:  Okay.

23          MR. HUEBNER:  And so, you know, that's why the

24   U.S. Trustee's puzzlement is -- I'm not sure what they are

25   puzzled about.  We have a schedule before a fantastic judge

Page 137

1   who understands the seriousness of these issues.  What we

2   don't want to do is be GM, where we end up with a direct

3   certification and we wait 391 days for a ruling.  I'm not

4   going to elaborate the consequences, the fee burn, the delay

5   in abatement, the delay in paying victims.  You know, you've

6   heard views from many parties enough times about the

7   extraordinary pain and cost and harm of delay.  So it's not

8   puzzling at all.

9          We have a court, the proper court, the court that

10  hears 99.9 percent of bankruptcy appeals and 100 percent of

11  confirmation appeals in decades of the Second Circuit.  And

12  that's the court we should go to.  And as we hope when that

13  court rules and Your Honor's, you know, six-and-a-half-hour

14  ruling is upheld on appeal, we will be ready to start

15  (indiscernible) and improving and saving lives with the

16  billions of dollars that 99 percent of the stakeholders,

17  every voting class, and 80 percent of the states themselves,

18  and almost all the voting creditors in the estates of the

19  objecting states believe is the right outcome.  So we have

20  only one goal.

21          THE COURT:  All right.

22          MR. HUEBNER: So, Your Honor, unless the Court has

23  any questions, that's all I have.  I know that there are a

24  few other parties on our side who have different things to

25  say, but I think we're actually (indiscernible).  But I'm

1   happy to rest on our papers, which I think were, you know,

2   hopefully complete and apprehensible on any issues that I

3   did not hit.

4            THE COURT:  Okay, thank you.

5            MR. HUEBNER:  Mr. Preis?

6            MR. BLABEY:  Good afternoon, Your Honor.  Can you

7   hear me okay?

8            THE COURT:  Well, I have someone else on the

9   screen I think.

10            MR. BLABEY:  All right, you can go ahead.  Arik,

11   you can go ahead.

12            THE COURT:  Mr. Blabey, did you want to go ahead?

13   I think Mr. Preis is frozen for a second.

14            MR. BLABEY:  Yes, I can go ahead.  Can you hear me

15   okay, Your Honor?

16            THE COURT:  Yes.

17            MR. BLABEY:  David Blabey from Kramer Levin

18   Naftalis & Frankel on behalf of the Ad Hoc Committee of

19   Governmental and Other Contingent Litigation Claimants.

20            Your Honor, we also submitted an opposition to the

21   request for certification.  I think Mr. Huebner has covered

22   all the arguments against certification in a lot of detail,

23   so I will be very brief.

24            I think it's important to respond, as Mr. Huebner

25   did, just to one or two points raised by the United States

Page 139

1    Trustee.

2            At the outset of their argument, the United States

3    Trustee had argued that the Debtor's position on

4    certification was puzzling since the Debtors and other

5    parties have previously stated that they are in favor of

6    moving these cases along.  And I want to be clear that no

7    one is more concerned with an expedited emergence and with

8    the desire to begin abating the opioid crisis than the Ad

9    Hoc Committee is.

10           But the reason why we oppose the motions is

11   because we have concluded, along with the Debtors and the

12   Committee, that going through the district court represents

13   the best chance and the fastest possible emergency while

14   also accommodating the desire for appellate review.

15           Your Honor mentioned at the September 30th hearing

16   that those two interests have to be balanced and that there

17   is a sweet spot that can be achieved between then.  And we

18   think that going through the district court is the best way

19   to hit that sweet spot.

20           I also wanted to just respond to the argument made

21   by the United States Trustee that the issues on appeal here

22   involve pure questions of law.  As Mr. Huebner noted, Judge

23   McMahon's commentary on that was made after she had only

24   received briefing from the United States Trustee.  And I

25   think that it's clear from the case law, including

1   Metromedia itself, that these issues are not purely legal

2   issues.  Metromedia says that before granting a third-party

3   release, the bankruptcy court must make "specific factual

4   findings".  And of course that's what the Court did here in

5   some detail.

6        So I think unless the U.S. Trustee is suggesting

7   that they don't actually disagree with the Court's findings

8   under Metromedia, then the appeals obviously involve

9   questions of fact.

10       And I think with that, Your Honor, I won't belabor

11  or repeat the points that Mr. Huebner did.  But for the

12  reasons he has stated today and set forth in our brief, we

13  would also urge the Court to deny the motions.  Thank you.

14       THE COURT:  Okay, thank you.

15       MR. PREIS:  Good morning, Your Honor.  Can you

16  hear me?

17       THE COURT:  Yes, I can.  I can see you, too.

18       Okay, great.  Good morning, Your Honor.  Arik

19  Preis, Akin Gump Strauss Hauer & Feld on behalf of the

20  Official Committee of Unsecured Creditors.

21       Please tell me if at any point you can't hear me,

22  because this is the first time we're trying this.  Okay?

23       THE COURT:  Okay.

24       MR. PREIS:  By agreement, Mr. Huebner argued most

25  if not all of the motion on behalf of the parties that are

Page 141

1    objecting to the motion.  I rise now only to address the

2    fourth point, which is whether the appeal will advance the

3    progress of the case, a point that you've been talking about

4    a little bit.

5              As Mr. Huebner stated and as the case law clearly

6    states -- for instance, see Johns Manville, 449 B.R. 34, if

7    this provision were to simply mean that bypassing the

8    district court and going to an appellate court would be

9    faster than having to go to the district court first, by

10   definition every case would be certified to the appellate

11   courts and there would never be any appeal to the district

12   court.  We talked about that.

13             But that's of course not the case and not the

14   correct way to look at the statute.  Rather, as Mr. Huebner

15   pointed out and we point out in our papers, one must look at

16   the facts and circumstances and whether bypassing second

17   circuit would materially advance the progress of the case,

18   not the progress of the appeal.  And the facts of this case

19   in particular weigh heavily against direct certification.

20             Mr. Huebner already addressed the five or six most

21   important points here but let me just restate them before I

22   get to the main point.  First, the district court has

23   already given us a very fast schedule and said basically

24   it's going to render its oral -- going to hear oral argument

25   in 46 days.

Page 142

1           Second, there are fact-specific issues that the

2     appellants have sought to raise which will be reviewed by

3     the district court.  And you've also talked about those

4     earlier.

5           Third, there is a jurisdictional issue that the

6     Appellants have raised, and which Mr. Huebner mentioned,

7     which if they are successful at the Second Circuit, will

8     result in going back to the District Court to cure it and

9     then back up to the Second Circuit.

10          Fourth, sitting here today, we don't know if the

11    Second Circuit would even accept certification.

12          Fifth, even if the Second Circuit accepts

13    certification, there is no assurance that they are going to

14    accept Judge McMahon's schedule or that they're going to

15    move in anywhere close to the alacrity of Judge McMahon.

16          Sixth, and something people kind of just passed

17    over, is if we go on the dual path that the Office of the

18    United States Trustee is recommending, we will have to --

19    they will brief in front of the Second Circuit a motion to

20    expedite or to certify, we will respond.  They may have to

21    respond.  We will then have oral argument, and then the

22    Second Circuit will make its decision.  And if the Second

23    Circuit makes its decision right before Judge McMahon makes

24    her decision, then we will have wasted the estate's time and

25    money over the last month-and-a-half, where we already have

Page 143

1    a district court ready to make a ruling on a very quick

2    schedule.

3           However, I did not just get up to echo a lot of

4    what Mr. Huebner has said or to lay some additional points.

5    Simply stated, everyone here talks about the need for speed

6    in this case.  But the Office of the United States Trustee

7    wants this Court and all parties to take the risk that going

8    to the Second Circuit will not result in more expeditious

9    review in going to the Second Circuit -- in going to the

10   district court.

11          Putting aside that we believe that the case law is

12   squarely against them, taking that risk will result in more

13   delay and more time between now and the effective date.

14          And the appellants implicitly are downplaying the

15   slowdown of a few weeks or maybe a month or two.  That's the

16   point I want to talk about, as it goes to the harm that will

17   occur if there is a slowdown in these cases.  In other

18   words, that the cases are not advanced.

19          Yesterday, the CDC issued a press release stating

20   that the number of overdose deaths in the United States rose

21   in the 12 months ending March 2021 as compared to the 12

22   months ending December 2020.  In sheer numbers,

23   approximately 96,000 people died of overdose deaths in the

24   United States in the 12 months ending March 2021, of which

25   approximately 72,000 were opioid overdose deaths.

Page 144

1          Moreover -- and here is the significant part --

2     while opioid overdose deaths accounted for 71.1 percent of

3     all overdose deaths in the 12 months ending December 2020,

4     in contrast, opioid overdose deaths accounted for 75.2

5     percent of all overdose deaths in the 12 months ending March

6     2021.  In other words, opioid overdose deaths constituted

7     almost 90 percent of the increase, while only being 75

8     percent of the overdose -- of all overdose deaths.  Said

9     another way, we are losing the fight against the opioid

10    epidemic.

11          But the facts don't end there.  There are some

12    other examples.  Approximately 1,000 of 15,000 addiction

13    treatment centers have closed in the last 18 months.  54

14    percent of addiction treatment centers have closed programs,

15    and 65 percent have been forced to turn away patients due to

16    constraints placed upon them by COVID.  39 percent of

17    treatment organizations believe they could survive six

18    months or less as of September 2020, despite 52 percent of

19    such organizations reporting an increase in demand for --

20          THE COURT:  Okay.  I'm going to cut you off

21    though, Mr. Preis.  I know the following.  I believe that

22    the disagreement here is not over the need to respond

23    promptly as soon as possible to the opioid crisis, but

24    rather a difference of opinion on the interpretation of the

25    statute and how it would be implemented.  And I don't think

Page 145

1    the U.S. Trustee or any of the appealing states disagrees

2    with you that getting money out promptly is extremely

3    important.

4          They assert that they need to balance that with

5    their view as stated on appeal that the plan isn't the

6    proper way to do that.  And that's really an issue for

7    appeal and an issue for consideration when one hears motions

8    for a stay pending appeal.  But I don't think as far as this

9    motion before me is concerned there is a disagreement as to

10   the goal, which is to get a prompt appellate review.  I

11   think it's really just about, A, whether the statute permits

12   what the movants want, and B, as a subset of that, whether

13   the movants are right that if the statute in its last prong

14   focuses on speed of appellate review, that a direct appeal

15   will result in that determination.

16         So I'm going to cut that part short.  I know it's

17   incredibly important.  I think it's more important for a

18   hearing on a motion for a stay pending appeal though.

19         MR. PREIS:  Understood, Your Honor.  And I will

20   then cut it short.  I will just say the following.  Everyone

21   again talks about the speed.  But the movants effectively

22   want all of us to take the risk that they are right.  That's

23   the point here, and that's what I was going to get to.  And

24   with that, Your Honor, I have nothing further.

25         THE COURT:  Okay, thank you.

1          MR. LIESEMER:  Your Honor, may I be heard?

2          THE COURT:  Sure, go ahead.

3          MR. LIESEMER:  Jeffrey Liesemer, Caplin &

4    Drysdale, on behalf of the multi-state governmental entities

5    group.  We also put in an opposition to direct

6    certification.  A lot of ground has been covered this

7    afternoon with respect -- on the plan supporter side, so I'm

8    going to be very brief.

9          Your Honor asked the parties -- I took it as all

10   parties -- whether we had any signal from the Second Circuit

11   that they would move expeditiously.  And my client group is

12   not aware of anything from the Second Circuit, and we all

13   know that Judge McMahon has set a full day oral argument for

14   November 30th.  She is keenly aware of the significance of

15   this case and the importance of timing.  And we have -- the

16   case has been -- the appeal before Judge McMahon has been

17   set on a fast track.

18         And the other point I wanted to make, Your Honor,

19   is that I think it's been established here that when Your

20   Honor rendered the bench ruling and confirmed the plan, Your

21   Honor wasn't writing on a blank slate.  When Your Honor

22   approached the third party release, Your Honor applied

23   Metromedia.  When Your Honor dealt with due process, Your

24   Honor cited and relied on Mullane and Motors Liquidation.

25   When Your Honor dealt with jurisdiction, Your Honor

Page 147

1    interpreted Quigley.  These are all Second Circuit and

2    Supreme Court cases, they are all controlling decisions, and

3    therefore, we don't believe that the movants have satisfied

4    the controlling decision prong or any of the other prongs

5    for the reasons stated in our opposition and what's been

6    said on the plan supporter side.  Thank you.

7            THE COURT:  Okay, thank you.  And I did -- because

8    I read the other objections, I read your objection, and I

9    thought it was quite focused and clear, so thank you.

10           MR. LIESEMER:  Thank you, Your Honor.

11           MR. SHORE:  Your Honor, this is Chris Shore.  May

12   I be heard briefly?

13           THE COURT:  Yes.

14           MR. SHORE:  Thank you, Your Honor.  Chris Shore

15   from White & Case on behalf of the Ad Hoc Group of

16   Individual Victims.  I have one observation and one

17   clarification of the record.

18           Clearly there is a narrative that's attempting to

19   be created, both in the papers filed in court and in the

20   press coverage of this and everything else that what Your

21   Honor did in this case was some extraordinary change of law.

22   And I think the direct certification motion is another

23   effort on the (indiscernible) to try to turn the

24   confirmation order, which Mr. Huebner has pointed out is

25   straight down the middle of existing law right now and turn

Page 148

1    it into something extraordinary.  And that's not helpful to

2    the process at this point.

3              And in order to make that point, you heard a

4    number of people wear the mantle of either a government

5    regulator or a government to say that they're out there

6    protecting the constitutional rights of their citizens which

7    are being deprived.  That is not able to be squared with the

8    legal position they're taking and what happens in bankruptcy

9    court.

10              Their legal position is the third-party releases

11   are unconstitutional and depriving due process of citizens

12   or are not authorized by the statue.  If that were truly the

13   case and they truly believe that, you would see the U.S.

14   Trustee objecting to every third party release.  You would

15   see states intervening in bankruptcy cases, at confirmation,

16   to object to a third-party release of their citizens' claim.

17   That doesn't happen.  This isn't about them protecting

18   constitutional rights or parties, it's their attempt to use

19   those constitutional rights to create a narrative that what

20   you did here is so extraordinary that this will be one of

21   the one in ten thousand (indiscernible) that gets directly

22   certified under the statue.  And I think it's fair game for

23   Your Honor to take judicial notice (indiscernible) that you

24   don't have the United States Trustee objecting to every

25   third-party release either because it violates individual's

Page 149

1    constitutional rights, or it is (indiscernible).  And you

2    don't have states appearing every time there is a third-

3    party release to advance the position that their citizens

4    are being deprived of their (indiscernible).

5           Now, with respect to the clarification, the U.S.

6    Trustee has repeated in this Court and elsewhere that -- and

7    it sounds good -- it's not just that constitutional rights

8    are being violated, people's property is being taken away

9    without compensation.  And you heard that today, that people

10   have Sackler claims and you, Your Honor, entered an order

11   which takes those claims away without compensation.

12          First -- and this is a point that the first words

13   out of Judge McMahon's mouth in questioning the United

14   States Trustee is what claims are we talking about.

15   Identify for me a claim that exists against the Sacklers

16   that is being released under the plan that is not either

17   duplicative of a claim against the estates, or is it an

18   estate claim itself?  The U.S. Trustee was unable to do it

19   then.  They are still unable to do it now.  I keep asking

20   them to identify (indiscernible) hearing if it goes forward

21   when we try to balance (indiscernible).

22          But from our perspective, this is a policy point

23   over hypothetical claims that they say are being released.

24   But it is not true to say that the claims are being released

25   without compensation.

Page 150

1           Counsel for the United States Trustee cited the

2    plan supplement to support her argument that says the plan

3    requires that nobody get paid (indiscernible) Sacklers.

4    That, again, sounds good, but not correct.  I'll just cite

5    to Section 2(b)(1) of the non-NAS, the TDP.  It says, and

6    this is an important word, "Claims will not be determined

7    based upon (indiscernible)."  But the fact that the --

8    right?  It doesn't say that you're not getting paid for it.

9    I just says when you're trying to calculate what

10   distributions will be under the TDP, it is without regard to

11   who caused the harm.

12           The fact that the determination of payouts is made

13   agnostic to where the harm comes from is not the same as

14   saying that the funds that are put there by the Sacklers are

15   not in payment in part for the Sackler claim.  The

16   confirmation record is clear that the release of direct

17   claims against the Sacklers related to opioid use and the

18   release of the -- or the channeling of the claims against

19   the Debtors, was a sine qua non of the Sackler's agreement

20   to pay.

21           So it is incorrect, and from a third-party

22   perspective sensationally incorrect to say that the way the

23   plan works, and the confirmation order works, is that people

24   who have claims against the Sacklers are having those claims

25   taken away without compensation.  It's just that all of the

Page 151

1    compensation comes through the TDP, at least for the

2    individuals.  And that in the determination of the payouts,

3    there is not going to be a specific allocation between

4    whether it was Mortimer Sackler who did it or Purdue who did

5    it, which of course is completely appropriate if we want to

6    get (indiscernible).

7              So that's all I have, Your Honor, unless you have

8    any --

9              THE COURT:  Okay, thank you.

10             MR. HUEBNER:  Your Honor, with huge apologies, Mr.

11   Shore, I actually missed a page of my notes.  I just want to

12   take ten more seconds on that.  Because the TDPs are

13   actually very clear.  And in fact, Section 2(b)(2) of both

14   the adult and the NAS expressly state that any distribution

15   is deemed to be in satisfaction of essentially -- I'm not

16   going to read the whole language, it's a little bit techy.

17   But on both your claims against the Sacklers and your claims

18   against Purdue for exactly this reason.  In other words,

19   there absolutely is compensation.  We all know that the

20   funding to pay the TDPs is coming because of the public-

21   private splits, because of the Sackler fund.  But again, all

22   of the states, including the appellants and movants, require

23   in Phase I mediation, and they know it.  The money is only

24   coming in and only being split and only going to people with

25   claims against the Sacklers because there is a settlement

Page 152

1    with the Sacklers that provides for the billions of dollars.

2    And they also know that, as this Court insisted, releases

3    are inextricably tied to claims against Purdue also.  You

4    have to hold a claim against Purdue, be the holder of a

5    claim to do that.

6         Your Honor, two other very quick points.  Number

7    one, I've got more data for you, because I know it's very

8    important to you.  We think that the average time based on

9    what we saw just to get the first step from the Second

10   Circuit on direct certification is about three months.  And

11   then when you add in briefing, oral argument, and ruling,

12   unsurprisingly, you get to the GM outcome where the first

13   step was about three months, but then in the end it was

14   obviously over a year until they ruled.  It's just not

15   knowable because at each step there's unknown -- not total

16   uncertainty about delay, but it is months and months I think

17   is probably the best anybody could say.

18        Number two, Your Honor --

19        THE COURT:  Could I ask, regardless of how Judge

20   McMahon would rule, would the appellants -- I'm sorry, would

21   the appellees -- and the appellants have already said they

22   would do this -- would the appellees promptly seek expedited

23   review?

24        MR. HUEBNER:  So, Your Honor, I clearly can't

25   speak on the fly alone at home for what all the appellees

```
1    would do.  I mean, I just can't.  Obviously I could never do

2    that.  I don't ever misrepresent things.

3           From our perspective fundamentally, as Mr. Shore

4    said, we think your decision is actually right down the

5    middle of the fairway.  We expect it to be affirmed by Judge

6    McMahon.  We certainly hope it will be.

7           And, Your Honor, in that respect, I do need to

8    take one thing that's of critical importance to me.  We were

9    all wearing masks before Judge McMahon.  And, frankly,

10   things were a little bit muffled.  There is one thing in

11   Judge McMahon's ruling where she said the Debtors have

12   conceded that there is a substantial question going to the

13   merits.  To be clear, we don't believe we made any such

14   concession, because we don't believe that to be true.

15          THE COURT:  I'm sorry, I didn't pose my question

16   correctly.  I'm not asking you to waive rights with respect

17   to arguments where you are seeking a stay pending appeal.

18   Take that out of the picture.  Assume you have whatever

19   rights you have on that.

20          MR. HUEBNER:  Okay, understood.

21          THE COURT:  What I'm asking is different, which is

22   if there is an appeal and I guess a stay is granted, would

23   the Debtors, along with the appellants, seek expedited

24   relief from the circuit court?

25          MR. HUEBNER:  Yes.  So, Your Honor, it's sort of
```

Page 154

1    like a triple advisory opinion.  Right?  There is a November

2    9th stay hearing we haven't had yet.  But we intend both to

3    put on evidence, as is our right, and put the movants to

4    their evidence.

5              There is an opinion of Judge McMahon we have not

6    seen yet, and we don't know what it's going to say.  And so,

7    you know, if the fundamental question is, you know -- and

8    I'll make it even more stark than you posed it.  Do you

9    agree to continue to be stayed and not emerge as long as

10   anybody wants to keep going?

11             THE COURT:  No, no.  I'm not asking that.  I'm

12   just asking will the Debtors, if there is an appeal, seek

13   expedited treatment of it?

14             MR. HUEBNER:  Well, we wouldn't be the appellant.

15   So I guess the question --

16             THE COURT:  Well, you might be.  You might be.

17   She might rule against you and in favor -- so, again, I'm

18   not asking you anything about a stay.  I'm not asking you to

19   waive any rights in respect to the stay.  I'm just saying if

20   it's before the circuit court, I'd like to have an idea as

21   to whether, as the appellants have said, you would seek

22   expedited treatment without any waiver on stay rights.

23             MR. HUEBNER:  Understood, Your Honor.  Here's what

24   I would say.  I have a client.  This is not a simple

25   question.  And, frankly, without knowing what Judge

Page 155

1    McMahon's ruling says in either direction -- because you're

2    right, I don't even know if I'm the appellee or the

3    appellant.  So to represent today on October X that on

4    December X I pledge today to do X or Y, I'm just not sure

5    that it's a question that I can answer, let alone that I

6    would be doing it given I may have been exposed to COVID and

7    I'm completely alone in my apartment right now.  And I would

8    be doing it by guessing of what answer my client would like

9    me to give.

10               But, Your Honor, one last point on prong four,

11   which I actually thought was in some ways the easiest of the

12   four prongs.  The case law says -- and I forgot to give you

13   this answer before -- that circuit courts are greatly helped

14   by district courts --

15               THE COURT:  Right.

16               MR. HUEBNER:  -- passing on things first.

17               THE COURT:  Right.

18               MR. HUEBNER:  And so since we know she's going to

19   pass on it first to a virtual one hundred percent certainty

20   before they would ever get to it, probably before they even

21   decide whether they're willing to get to it, the notion that

22   things should proceed in the ordinary course and that

23   extraordinary relief on which the cases all go against them

24   seems to us to be definitively the better view.  So I

25   apologize.  But one extra point I didn't make.

1          And on the Jersey issue, Your Honor, which Mr.

2    Underwood, in violation of (indiscernible) Paragraph 39,

3    raised totally -- not even in the papers.  Just to give Your

4    Honor more comfort that we're not a bunch of idiots on our

5    end, the motion we understand from the A side of the family

6    was timely made to the Jersey court.  I believe the hearing

7    was held on October 1st, and we have no reason to believe

8    that we would not be timely ready to emerge.  So I'm not

9    really sure why that has any relevance.  I'm not sure why he

10   was allowed to ask us random deposition questions in the

11   middle of a hearing that he's not even a movant on.  But the

12   answer is the right answer.  And hopefully that gives the

13   Court comfort that we all sort of know what we're doing,

14   trying to bring this thing to an ability to help the

15   American people.

16          So, Your Honor, with that, I'm going to for sure

17   go back on mute unless the Court has any questions for me.

18          THE COURT:  Okay.  Thank you.  All right.  We've

19   been at this for a while.  I'll hear very brief response

20   from the movants.  Maybe we should start with Ms. Eitel from

21   the U.S. Trustee.

22          MS. EITEL:  Thank you, Your Honor.  I appreciate

23   the time, and I will be brief.  I want to hit just quickly

24   five or six points that have been addressed in the arguments

25   today.

1            The first is maybe not -- the other parties have

2     raised, but it's an issue have concern.  Section 2.9 in the

3     shareholder settlement agreement.  If you recall, during the

4     confirmation hearing, the United States Trustee expressed

5     concern that the document had not been signed and that under

6     the agreement itself, it was subject to being amended post-

7     confirmation.  And the Court said once I sign the

8     confirmation order, that's it.  That's the shareholder

9     settlement agreement.

10            So based on what Mr. Huebner said today, it sounds

11     like -- I mean, a waiver is nothing but an amendment by

12     another name.  So I think we need to get some clarity on

13     that, when exactly was that shareholder agreement amended.

14     Was it amended after confirmation?  And if so, is that a

15     violation of a confirmation order?  I don't know because we

16     don't know when it happened.

17            THE COURT:  I mean, that provision is there so

18     that the estate is not worse off, that the terms --

19            MS. EITEL:  I understand --

20            THE COURT:  It's not to protect the Sacklers.  So

21     I think there is a difference between our waiver and

22     amendment.

23            MS. EITEL:  Your Honor, fair enough.  I will move

24     on.  But I just wanted to raise it because this was an issue

25     of confirmation about the malleable shareholder settlement

Page 158

1    agreement.

2         THE COURT:  Okay.

3         MS. EITEL:  Secondly, Mr. Huebner never addressed

4    what we raised about his letters to Judge McMahon.  He told

5    Judge McMahon on June 16th the Second Circuit had never

6    squarely addressed these issues, and yet he argued to the --

7         THE COURT:  I understand that point.  But

8    ultimately I have to make this decision, not Mr. Huebner.

9         MS. EITEL:  Understood, Your Honor.  And here's

10   what I would say.  I can't frame it --

11        THE COURT:  And, by the way, Judge McMahon didn't

12   grant that request.  And as she says in her letter, that's

13   after talking with me.  So there's no estoppel here.

14        MS. EITEL:  Oh, I understand, Your Honor.  But

15   it's just it's interesting that the position in the summer

16   was it's not clearly addressed today, it's decades-old, cite

17   it, and there's not a problem.

18        But here's the legal issue, Your Honor --

19        MR. HUEBNER:  Your Honor, I'm happy to --

20        THE COURT:  Look, this is a real side point.  So

21   let's move on from it.

22        MS. EITEL:  So here's the critical point.  Can a

23   bankruptcy court extinguish claims of one non-debtor against

24   another non-debtor consistent with due process?  That's

25   never been considered or decided by the Second Circuit, and

Page 159

1    that's the pure legal issue here.  It's not dependent upon

2    the facts other than the fact that one may be a non-debtor

3    and the other is a non-debtor.  But the rest of it is a red

4    herring.

5              Your Honor, third, Mr. Huebner said these people,

6    these claims don't exist.  And I have two responses for that

7    --

8              THE COURT:  Actually, you know what?  I'm not even

9    sure that's right.  I think GM, the Motor Liquidation case,

10   actually addresses that point.  Because there was a specific

11   free and clear order, and they were focusing on what claims

12   were covered by that and what due process was involved.  And

13   that involved a determination of notice.

14             MS. EITEL:  But that was respect to 363.  It

15   wasn't --

16             THE COURT:  But it's --

17             MS. EITEL:  But that's a statutory provision that

18   allows that to be done.  There is no statutory

19   (indiscernible) entirely different.

20             THE COURT:  But the point is the due process

21   point, not the underlying source.  That's covered by the

22   Manville-Drexel-Metromedia line of cases.  You are mixing

23   apples and oranges there I think.

24             MS. EITEL:  Your Honor, I would just beg to

25   differ.  But I know the day is long, and I've said my piece

Page 160

1    on Manville, Drexel, and Metromedia, et cetera.  But I would

2    simply say this.  The third point is Mr. Huebner says these

3    people and these claims don't even exist.  Well, if that's

4    the case, then it's really just a hypothetical release and

5    it's ineffectual.  Strike the provision, appeal over,

6    problem solved.  And secondly, I would note that in Aegean

7    Marine, Judge Wiles spent an entire paragraph talking about

8    I'm often asked to give these releases just to protect

9    people from nuisance claims.  And he declined to do so and

10   said that would be highly inappropriate to do so.

11         So, you know, the Debtors can't have it both ways.

12   Either the Sackler family paid money to get released from

13   something that was a real threat and harm that they were

14   worried about or there's nothing that's being released as

15   Mr. Huebner would say so there should be no release.  I

16   mean, there's --

17         THE COURT:  But clearly -- look, there are claims

18   asserted by the 48 states and the District of Columbia and

19   governmental entities.  Some of them are police power

20   claims, I think.  Some of them are not, I think.  I have a

21   much harder time -- and I think this is all that -- I don't

22   think was Mr. Huebner.  I think it was Mr. Shore --

23   understanding the basis for individual claimant's claims

24   against the Sacklers.  And this is really fundamentally a

25   question of bankruptcy law.

Page 161

1          Interestingly, I asked that the parties address it

2    at the disclosure statement hearing because the U.S. Trustee

3    actually raised an issue as to what types of claim and the

4    basis for it would be covered by the proposed release at

5    that time.  And I cited then -- because I thought everyone

6    should understand it and address and I'm going to cite it

7    now, although, it hasn't been addressed all this time and I

8    think it's important.

9          The second circuit has discussed the issue at

10   length as to the basis for claims by individuals against the

11   owners of companies based on the actions that they take as

12   owners or their ownership.  It is discussed at length in in

13   Re Tronox Inc., 855 f3d 84 99-107 2nd Circ 2007.  Of course

14   it goes back a lot farther that that in time and the Tronox

15   court discusses this case as well as many others.  St. Paul

16   Fire and Marine Insurance Company v PepsiCo, Inc., 884 f2d

17   688 2nd Circ 1989.

18          So I think the only point that is being made here,

19   and unfortunately, it's not really being made for my benefit

20   but because I think people are being tired of pillar over it

21   in the press which is a shame because people shouldn't care

22   about those things, is that it really isn't that easy -- in

23   fact, it's exceedingly difficult -- for an individual to

24   assert this type of claim on his or her own behalf because

25   the case law is pretty clear that in most cases, it's a

Page 162

1    claim that belongs to the Debtor's estate.  So that's the

2    only point that I think Mr. Shore was making and I think you

3    better be prepared with an answer for that question when we

4    get to the hearing on stays pending appeal as to who --

5    whose interests you're representing.

6             I would raise that, and I think we will eventually

7    get to it -- the pre-trial conference -- on this point, but

8    it's an important point.  But it's not important for this

9    issue.

10            MS. EITEL:  Your Honor, (indiscernible).  I just

11   make one point before I move on to the final which is, this

12   is way in which this case is extraordinary.  The Sackler

13   family is directly --

14            THE COURT:  Ma'am, the law is what it is.  The

15   circuit has spoken on this issue repeatedly and I think the

16   people who claim that they were poisoned by environmental

17   contamination in Tronox would not put themselves second to

18   anybody by Kerr-McGee --

19            MS. EITEL:  And I'm not suggesting that --

20            THE COURT:  -- so let's just move off of this

21   point.  It's really irrelevant to this issue.

22            MS. EITEL:  Certainly, Your Honor.  I was --

23            THE COURT:  It is apparently not irrelevant to the

24   press but then again, they don't read the cases.  You do, so

25   I expect you to address those cases when we get to the

1    issues of stay pending appeal.  They do not necessarily

2    apply to the states.  It's a different consideration.

3              MS. EITEL:  Understood, Your Honor.  Moving on to

4    the next point which, Mr. Huebner said that it was very

5    clear there would be no (indiscernible) in this or wouldn't

6    be mooted until there was a ruling by Judge McMahon, and the

7    subtext of that, Your Honor, is that what about the second

8    circuit?  And --

9              THE COURT:  I understand that issue, too, but

10   that's a stay issue, too, Ms. Eitel.  It's an important

11   point, but I don't think it's an issue -- it's a peripheral

12   issue for this hearing.  It's very important for the stay

13   hearing.

14             MS. EITEL:  Understood, Your Honor, I just wanted

15   to point it out that we did not get the -- an answer.  And

16   let me just simply close with, the four standards -- there

17   are -- as I mentioned, only one needs to be satisfied.  A

18   lot of the argument today was directed towards somehow that

19   this is going to slow the case down or make it more

20   difficult.  And I reiterate and urge that, these are

21   parallel paths, and it may be that the second circuit does

22   not accept the appeal once its board certifies it, but we

23   should give them that opportunity in a case of this

24   consequence, with a case with a discrete, legal,

25   constitutional issue that has never been squarely presented

Page 164

1    to them before and see if the second circuit is interested

2    in ruling in the first instance.  We may or may not get

3    there before Judge McMahon rules.  We'll see.

4            Your Honor, I have no further remarks to offer,

5    and I thank you for your time.

6            THE COURT:  Okay.  Thank you.

7            MR. EDMUNDS:  Your Honor, if I may --

8            MR. GOLDMAN:  -- be heard?

9            THE COURT:  Yes, but I think Mr. Edmunds was

10   first.

11           MR. GOLDMAN:  Oh.  I will yield to Mr. Edmunds.

12           THE COURT: Okay.

13           MR. EDMUNDS:  Thank you, Mr. Goldman.  Just very

14   briefly, Your Honor.  Brian Edmunds for the State of

15   Maryland.

16           You've heard, you know, exhaustive arguments on a

17   bunch of grounds that, you know -- over anything the

18   appellees could think of, that they raised.  And

19   essentially, it's like this.  Do not certify under this

20   provision that allows for expedition because that will

21   actually make the course of this case go slower, and I don't

22   think there's any basis for that.  But the second circuit

23   has the power to expedite it.  It has the power to turn it

24   down.

25           The essential thing here is that the factors are

Page 165

1    met and there may be other important cases, but if this case

2    is not one of those cases, what is?  And this is a

3    quintessential case for direct appeal.  The Court has

4    already recognized the important decisions that the Court

5    had to make -- the novelty of the issues that aren't

6    directly controlled by any precedent.  There is applicable

7    precedent to be sure, but there's no decision of the second

8    circuit that has dealt with these precise issues or issues

9    of their importance in this context before.

10           And to the argument that somehow allowing direct

11   appeal will slow these proceedings down -- there's just no

12   answer.  The statute is enacted to allow for the appeal

13   because it will speed it up, and if the second circuit

14   decides not to do that, it will, one -- Mr. Huebner just

15   offered a three-month average.  I have no reason to disagree

16   with that.  I think it can happen much faster if the second

17   circuit wants to.  But there will be a decision from Judge

18   McMahon by then.

19           So what we're really arguing is not related to the

20   provision that exists that allows the appeal to be sped up.

21   And it's telling also that Mr. Huebner could not commit,

22   once it gets to the second circuit, to moving expeditiously

23   through the second circuit.  We intend to do that under

24   federal rule of appellate procedure 2.  We want a decision

25   as quickly as we can, and you've heard all the states at the

Page 166

1    last hearing say that that is what they want.  That is what

2    we are seeking.

3         I cannot interpret what Mr. Huebner and others

4    said today as anything other than an attempt, in the end, to

5    take an appeal that warrants certification and ultimately

6    delay or potentially delay its resolution when it could be

7    resolved faster.

8         THE COURT:  Well, I think to be fair, it's not a

9    question of delay.  I think it's a question of wanting to

10   preserve arguments against a request for a stay pending

11   appeal.  I think all sides here want to have the most

12   expeditious emergence from bankruptcy possible except you

13   all want to have it through the entire appellate process as

14   expeditiously as possible and they are preserving their

15   arguments to have -- to say, one appeal is enough.  Please -

16   - Judge Drain, please, Judge McMahon, please, second

17   circuit, deny a future request for a stay.

18        I really don't think, having heard Mr. Price, for

19   example, that anyone is looking to delay anything.  They

20   just have a different view as to balancing a need for speed

21   versus preserving rights for a full appellate process.

22        MR. EDMUNDS:  Well, Your Honor, the -- but the

23   only -- whatever party's intent think, you know, it's

24   critical that we move as quickly as possible.  To not take

25   advantage of law that allows us to move faster because it

1  might not work out that way doesn't seem to be the way to

2  get to that end.

3          THE COURT:  There's merit to what you say, Mr.

4  Edmunds.  On the other hand, I actually don't think that's

5  what the statute contemplates, and the case law doesn't say

6  that either.  I mean, otherwise, you'd always have -- you'd

7  always go direct appeal and there were people in Congress

8  that wanted that, but that's not what ended up in the

9  statute.  But you guys on both of this issue have addressed

10  that point, I think, sufficiently.

11          MR. EDMUNDS:  Thank you, Your Honor.

12          THE COURT:  Okay.

13          MR. GOLDMAN:  Your Honor, is --

14          MS. MORALES:  Can I ask a question?

15          THE COURT:  I'm sorry.  Mr. Goldman's speaking at

16  this point.

17          MR. GOLDMAN:  Thank you, Your Honor.  I just --

18  I'll be very brief.  I first want to thank Your Honor for

19  recognizing remembering the state's claims.  There were a

20  number of complaints that were made part of the record.

21  Connecticut's on of them.  I know there were a number of

22  other states that had claims -- pending claims -- against

23  the Sacklers under their unfair trade practices acts and so

24  certainly, they are detrimentally affected by the third-

25  party releases.  And the question now is, as Your Honor

Page 168

1     rightly pointed out, to the individual claimants.

2             But moving on to one argument made by Mr. Huebner,

3     I thought I heard him suggest that the state's argument that

4     it's impermissible for third-party releases to capture

5     police power claims, you know, was somehow contrived or

6     designed as a novel argument to argue for direct review.

7     But that argument appeared throughout the objections I know

8     of at least of Connecticut, Maryland, and the District of

9     Columbia as well as Washington and Oregon based on concepts

10    of federalism and the principle that the bankruptcy code

11    doesn't displace state's claims that implicate the public

12    health, safety, and welfare, and that is a point of law on

13    which there is no controlling laws -- the back and forth on

14    -- in the principal argument.  And that's the only point in

15    response that I want to make.

16            THE COURT:  Okay.  Thank you.

17            MR. GOLDMAN:  Thank you, Your Honor.

18            MR. GOLD:  Your Honor, Matthew Gold, on behalf of

19    the parties identified previously.

20            THE COURT:  Right.

21            MR. GOLD:  Can you hear, and may I be heard?

22            THE COURT:  Yes.

23            MR. GOLD:  Thank you, Your Honor.  I, too, will be

24    brief.  First, I think Your Honor recognizes this, but I do

25    want to make it clear that the United States Trustee and the

Page 169

1    appealing states, while the relief we've sought is

2    essentially identical on this motion, that the U.S. Trustee

3    has raised on appeal issues that are in many ways broader

4    than the ones that the states are asserting.  And so many of

5    the arguments that have been heard before regarding and

6    essentially deal with the merits seem to apply to the issues

7    that the U.S. Trustee is raising on appeal but not

8    necessarily to the states' issues which as I said are more

9    narrow and really mainly focused on the non-Debtor --

10   nonconsensual releases being imposed on state police power

11   actions.

12        Second --

13        THE COURT:  But Mr. Gold, where does that lead?  I

14   mean, I -- one could logically infer from that that you're

15   suggesting that I certify a direct appeal of the states'

16   appeals and not the U.S. Trustee's and then we could be

17   having appeals in two different forums?  That doesn't make

18   sense, right?

19        MR. GOLD:  No, I am not -- it does not make sense

20   and I'm suggesting (indiscernible).

21        THE COURT:  Okay.

22        MR. GOLD:  I believe that the U.S. Trustee appeals

23   include the appeals that are being raised by the states --

24        THE COURT:  Right.

25        MR. GOLD:  -- and so that therefore, it would one

Page 170

1    certification of a whole set of appeals which have been

2    consolidated on to the district court docket because they're

3    all appeals from the same order.

4                THE COURT:  So even if there are a bunch of

5    appeals in front of a district judge and a lot of them don't

6    satisfy 28 U.S.C. 158(d)(2), they get to ride along with

7    those that do?

8                MR. GOLD:  Well, Your Honor, that's an interesting

9    question and I understand that -- and I would say this.  I

10   mean, I think the important point is that we have raised

11   issues that we believe unambiguously do satisfy the

12   standard.  If the Court wants to parse and say that some

13   other issues do not and shouldn't be tagged along and aren't

14   subject to that, that's fine.  But it's very common for many

15   issues to be raised and I don't understand the -- that the

16   standard under the statutes has to be that every issue

17   that's been raised has to fall within this rubric.

18                If there has to be a winnowing, I understand that,

19   but that should not preclude issues that -- where it's valid

20   for this to be done and where certification should be done

21   to not be certified because there may be other issues in the

22   case.

23                THE COURT:  Okay.

24                MR. GOLD:  The -- I will just briefly note that

25   Mr. Huebner went on at length and it is his -- and I trust

Page 171

1     Your Honor understands that this attorney argument to a

2     claim that we are seeking an exemption from the law.  We

3     have never said we seek an exemption from the law.  We are

4     saying that we are dealing with a circumstance that neither

5     the second circuit nor any of the other cases, frankly,

6     dealing with nonconsensual third-party releases have

7     addressed.  I think that the key word that Mr. Huebner used

8     repeatedly was "zero" and I think that that word very aptly

9     applies to the number of cases that have ruled either way on

10    whether nonconsensual third-party releases, as recognized by

11    some decisions, can be applied where the claimants are

12    states exercising their police powers.

13            Now, we can argue about whether -- the Debtor's

14    position is, well, a case saying that a bond holder can have

15    their claim released is the same as a state exercising their

16    police powers, so we have decisions in the record and that's

17    fair for argument.  That's what parties do.  But to say that

18    there's a controlling decision on that point, we maintain,

19    is a vast overstatement of how the law lays which -- and

20    that -- we believe that even we know that Your Honor

21    rejected our views in the ruling, I think you recognized as

22    you're going through it that the issues on these were more

23    difficult and less easy to come to than some of the issues

24    that were placed before Your Honor.

25            I will also add that the statements in front of

Page 172

```
 1   Judge McMahon -- and this was just two days ago, and I'm
 2   really surprised to hear this argument about this being --
 3   that this appeal involves legal issues -- was not simply a
 4   matter of Judge McMahon reading the U.S. Trustee's papers
 5   and riffing on them.  The -- Judge McMahon very clearly
 6   addressed the entire courtroom and said, it appears to me
 7   that the issues on this appeal are entirely legal in nature,
 8   and she was looking at that point not merely for purposes of
 9   the stay motion but also for setting a briefing schedule in
10   terms of how the issues were going to be raised and how
11   extensive of reliance on the record there was going to be.
12           So she said to the courtroom, does anyone disagree
13   that these issues are legal in nature.  Crickets.  Complete
14   silence.  Zero comments from any of the parties who are now
15   coming up and saying, oh, no, no, no.  This appeal involves
16   massive factual issues.  This appeal is -- there's no way
17   this appeal can be heard without all --
18           THE COURT:  But, Mr. Gold, I mean, I -- first of
19   all, I don't have the transcript.  I wasn't there,
20   obviously.  And I guess the comments that you're making, and
21   that Mr. Huebner made go to the Court's interpretation of
22   the first factor that when it says, "the judgment involves a
23   question of law," they say a pure question of law.
24           But frankly, the due process issue is a factual
25   issue.  Judge McMahon doesn't have to a fact-finder on that
```

Page 173

1    issue, but it is -- there is a factual element to the issue.

2    It wasn't really contested by your clients, I don't believe,

3    as far as due process is concerned.  So I guess understand

4    both of your points, but ultimately, not having been there

5    and not having the transcript, it's just not clear to me

6    whether this is helpful on this point.

7                MR. GOLD:  Okay.  Fair enough, Your Honor.  I

8    won't --

9                THE COURT:  And ultimately, it is more relevant as

10   far as some of the other issues which maybe she's not

11   addressing in that remark since the focus of the U.S.

12   Trustee was on the releases and Stern versus Marshall, et

13   cetera, and jurisdiction and the like.  Those are primarily

14   pure legal issues.  I understand that point.

15               There are some other issues that aren't

16   necessarily.  For example, the merits of the settlement --

17   the Court's assessments of the settlement; the Court's

18   assessment of 1129(a)(7), those types of issues.  So I'm

19   reluctant on a number of grounds to go off on this argument

20   you're making, a), because I wasn't there.  I don't have the

21   transcript. B), I don't know what was really being

22   considered by Judge McMahon; and c), because I think that

23   for some of the points, I think there are basic legal

24   issues, but that's not dispositive for the question either

25   before me.  And for other ones, I think they're mixed issues

Page 174

1    of law and fact.  So I guess enough said on that point.

2           MR. GOLD:  Yes, Your Honor.  The -- I will respond

3    briefly to a comment that Mr. Shore made which I believe is

4    simply a mischaracterization of the states' position.  The

5    states have been I think very clear that the states act in

6    the court in their capacity as states in upholding the

7    rights and wellbeing of their citizens.  That is not the

8    same as saying that those citizens have standing on their

9    own power to raise these claims.  In fact, it's the opposite

10   -- is the states who come in and can assert arguments in

11   order to protect their citizens.  That is why the states do

12   not come and effect on private citizens.  They have a

13   release imposed upon them because that's a separate issue.

14          This -- what we are talking about here is the

15   instances where the states, seeking to protect their

16   citizenry through their police powers, attempt to act and

17   are now being deprived.  And that is a -- really a narrower

18   question that the one that (indiscernible).

19          Your Honor, I have nothing further to add

20   (indiscernible).  Thank you.

21          THE COURT:  Okay.  Very well.

22          MR UNDERWOOD:  Your Honor, (indiscernible)

23          THE COURT:  Is someone -- I'm sorry.  Someone has

24   been wanting to ask a question and since we're done with the

25   response by the movants, I think I'll let you do that.  Oh,

Page 175

1    I'm sorry.  I didn't see you, Mr. Underwood.  I didn't know

2    that you were going to respond.  Ms. Morales, why don't you

3    ask your question and then we can go to Mr. Underwood.

4         MS. MORALES:  Okay.  I have a question about -- so

5    when I filed my summary judgment, the response wasn't --

6    they didn't respond with -- they just objected, and I don't

7    understand.  Is that the answer I get?  (indiscernible) like

8    they didn't respond to (indiscernible) they just objected

9    and (indiscernible) I guess I don't understand if that's the

10   final answer of their response.  I mean --

11        THE COURT:  Okay.  Ms. Morales, I don't -- I'm not

12   quite sure which matter you're talking about.

13        MS. MORALES:  Oh, okay.  So I filed a summary --

14        THE COURT:  No, no.  I don't need you to explain

15   it to me.  It's not on the calendar for today.

16        MS. MORALES:  Okay, sorry.

17        THE COURT:  It's not what I prepared on.

18        MS. MORALES:  Oh, okay.

19        THE COURT:  It's not what any of the parties on

20   the phone, on Zoom, prepared on.  So I can't answer your

21   question.

22        MS. MORALES:  Yeah.  But is --

23        THE COURT:  It's not what we should be doing here.

24        MS. MORALES:  Okay.  If I don't --

25        THE COURT:  Okay.  So you can raise it separately.

Page 176

1   You can file some sort of pleading if you want.  You can ask

2   the Debtors, but I -- we can't do it here at this point.

3   Mr. Underwood.

4           MR. UNDERWOOD:  Yes, Your Honor, very briefly.

5   The Trustee's -- the Trustee filed a motion to certify on

6   October 1st.  We filed our joinder on October 7th.  I'm not

7   aware of any reason that the joinder shouldn't be heard.

8           Secondly, with regard to this question that has

9   been asked now three times, we still don't have an answer, I

10  don't believe, that was an effective answer to whether or

11  not plan funding can occur here.  I don't think that's

12  material on terms of all the issues that we're addressing.

13          THE COURT:  I don't understand how possibly it's

14  relevant at this point, Mr. Underwood, so let's move on.  It

15  just isn't --

16          MR. UNDERWOOD:  All right.

17          THE COURT:  -- to this issue before me.

18          MR. UNDERWOOD:  I mean, in terms of certification.

19          THE COURT:  No.  It's not relevant.

20          MR. UNDERWOOD:  Okay.  Would you suggest or think

21  that it's relevant with regard to the stay hearing that is -

22  -

23          THE COURT:  We'll get to that if we ever get to it

24  today.

25          MR. UNDERWOOD:  Okay.  I appreciate it.  Thank

Page 177

1    you, Your Honor.

2              THE COURT:  Okay.

3              MR. UNDERWOOD:  I would only just add that I think

4    that the Debtor's reading of Section 106 is remarkably

5    facile considering --

6              THE COURT:  Mr. Underwood, your client filed

7    proofs of claim in this case, right?

8              MR. UNDERWOOD:  Correct, Your Honor.

9              THE COURT:  You wanted the Court to decide how

10   your clients would get paid under a plan, I assume, right?

11             MR. UNDERWOOD:  Correct.

12             THE COURT:  All right.  That's enough from me.

13             MR. UNDERWOOD:  Thank you, Your Honor.

14             MR. HUEBNER:  So, Your Honor -- two -- literally,

15   ten seconds.  Number one, the number is not zero at all.  I

16   guess Mr. Gold missed paragraph 15 of our brief where we

17   cite a seventh circuit case applying the third-party

18   releases to the FCC and a Delaware case applying it the

19   states.  Those are right there in black and white, Paradigm

20   and Exxon.  I won't read the pin sites.

21             With respect to Mr. Underwood, he should check the

22   CMO, paragraph 39, which bars joinder parties from making

23   arguments not in the movant's papers precisely for this

24   reason.  Filing a joinder a few days before a hearing that

25   we never saw and making new arguments is a form of ambush

Page 178

1   barred by the rules of this court.  There is a limit to how

2   many things we can be fairly asked to respond to with no

3   notice on an ambush basis.  At some point, rules have to be

4   followed.

5           THE COURT:  Okay.  I guess, so that Mr. Goldman

6   won't feel compelled to respond, I think all of those cases

7   are outside of the circuit, right, Mr. Huebner?

8           MR. HUEBNER:  They are, Your Honor.  His claim was

9   that no case has ever applied to third-party releases to

10  governmental entities.

11          THE COURT:  Oh, yes.

12          MR. HUEBNER:  And that is a false statement.

13          THE COURT:  Well, no.  I understand and he thinks

14  he's really -- as he should, at least -- confining it to the

15  statute that's in front of me today.

16          MR. HUEBNER:  Correct, Your Honor.  And that's our

17  point.  We don't have to prove a negative.  We're not seeing

18  extraordinary relief.  They're trying to get an exemption

19  from existing law and there's just no justification for it.

20  And the two cases that have ruled on it have gone the other

21  way and that's all I have to say.

22          THE COURT:  Okay.  All right.  Thank you.  All

23  right.  I'm going to take a brief break.  I mean, literally

24  brief, like five minutes.  So I'll be back at twenty after.

25          AUTOMATED VOICE:  Recording stopped.

1           THE COURT:  Okay.  I'm sorry.  Thanks.  Okay.

2   Good afternoon, everyone.  This is Judge Drain.  We're

3   resuming in In re Purdue Pharma, LP, et al.

4           I have before me two motions that each seek the

5   Court's certification of a direct appeal, the Court's order

6   confirming the Debtor's Chapter 11 plan to the second

7   circuit.  They are by the United States Trustee and by the

8   so-called appealing states.  I have a joinder in the U.S.

9   Trustee's motion by a Canadian municipality and certain

10  Canadian First Nations.

11          The U.S. Trustee's motion also seeks, albeit very

12  briefly and without any real attempt to address the issues

13  raised in it, direct certification of its appeal from my

14  order dated September 15, 2021, that authorized the Debtors

15  to take certain preliminary steps to be administratively

16  ready to go effective on their plan when the conditions to

17  the effective date occur.  Although the Canadian parties

18  joined in the U.S. Trustee's motion, obviously, that is not

19  an issue for them, and it was not raised by the several

20  appealing states.

21          The authority for a certification of a direct

22  appeal to the circuit court, i.e., bypassing the district

23  court in the normal order of appellate practice, is set

24  forth in 28 U.S.C. Section 158(d)(2).  Subsection B of that

25  section states that if the -- any of the conditions for

Page 180

1    certifying a direct appeal set forth in subparagraph A are

2    met, the Court shall make the certification described in

3    that subparagraph, i.e., this is not a matter of the Court's

4    exercise of discretion, although, of course, the district

5    court exercises some discretion in interpreting the statute

6    as applies to the appeals or appeal at issue.

7            The Congress set forth that the Court shall

8    certify a direct appeal if, (i), the judgment order or

9    decrees involves a question of laws to which there is no

10   controlling decision of the court of appeals for the circuit

11   or of the Supreme Court of the United States or involves a

12   matter of public importance.  There's a common between

13   "United States" and the word "or."  There's no comma between

14   the word "circuit" and the word "or" of the Supreme Court of

15   the United States in that subsection.

16           The Court shall also certify a direct appeal under

17   ii of this section if the judgment order or decree involves

18   a question of law requiring resolution of conflicting

19   decisions; or, (iii), an immediate appeal from the judgment

20   order or decree may materially advance the progress of the

21   case or proceeding in which the appeal is taken.

22           It is clear from the statute that while the court

23   where the appeal sits and for purposes of bankruptcy rule

24   8006 and 8002 and 28 U.S.C. Section 158(c)(2), it sits with

25   me for the purposes of these motions given the timing of the

Page 181

1    orders which are subject to the appeal, the Court, as is

2    appropriate, has no power to compel the circuit court to

3    take the certification.  That determination is up to the

4    circuit court in the exercise of its discretion.  See,

5    generally, Weber, W-E-B-E-R, v United State Trustee, 484 f3d

6    154 2nd circ 2007.

7            This provision of the judicial a code was enacted

8    in 2005 as part of the BPACPA amendments and has been the

9    subject of substantial case law since then, not only at the

10   bankruptcy court level, but also at the district court level

11   since many of the requests for direct appeal have been made

12   at the district court level, as well as at the circuit

13   level.  The Court takes primary guidance in resolving these

14   motions which are opposed by the Debtors, the creditors

15   committee, the ad hoc committee of governmental entities,

16   the multistate governmental entities group, and the ad hoc

17   committee of personal injury claimants, all of whom have an

18   interest as appellees in respect of the appeals from the

19   circuit's decision in the Weber case.  In that case, the

20   circuit took guidance, first and foremost, from the language

21   of the statute; secondly, from the legislative history,

22   setting for the reasons why Congress passed the statute; and

23   in jurisprudential considerations.

24           I want to emphasize the latter point.  The parties

25   on either sides of these motions are passionate in their

Page 182

1    articulations of their positions generally in these cases.

2    At times, it has seemed to me that on the narrow issues

3    before me in these motions that passion is not particularly

4    apt and should be saved for arguments on the merits of the

5    appeals and/or motions for stay pending appeal.  The Court's

6    determination of the motion before me today, as is

7    appropriate since they're under the judicial code, 28

8    U.S.C., that is, really do go to considerations of

9    jurisprudence and the proper functioning of the trial and

10   appellate courts.

11        As much as the parties' strong feelings on the

12   underlying merits of their appeals and the opposition to

13   those appeals may be, they generally share similar goals

14   here and more importantly, perhaps, the Court's

15   determination here is guided not by issues regarding the

16   merits of the appeals or even the merits of motions for

17   stays pending appeal, but rather, the jurisprudential

18   concerns set forth in the statute and the case law.  And I

19   am quite aware of the precedential effect of an opinion,

20   tempting as that might be, that would go contrary to the

21   precedent and the jurisdictional framework of this

22   particular statutory provision solely because of my desire

23   to expedite the case, not to limit the issues in the case

24   but simple to move it to a rapid conclusion.

25        Ironically, I think all of the parties here share

Page 183

1    with me the desire to move these cases to a rapid

2    conclusion.  They disagree over what is the best means to do

3    that as it pertains to these motions, and I will address

4    those concerns.  But, ultimately, my ruling here, I believe,

5    must be guided first and foremost by the language of the

6    statute and these cases interpreting it and not by the

7    parties or perhaps ever my own strong feeling that corners

8    could be cut here within the language of the statute in

9    favor of expedition.

10          The second circuit has given considerable

11   guidance, as I said, in the Weaver case as to how to

12   approach these types of motions.  Now, I recognize that in

13   the case they were determining whether to accept a

14   certification of a direct appeal, but they talk about the

15   statute generally which clearly goes to the three

16   subsections that would lead a Court to direct a notice of

17   certification since the reflect Congress's intent.  As the

18   circuit states, the focus of the statute is explicit on

19   appeals that raise controlling questions of law, concern

20   matters of public importance, and arise under circumstances

21   where a prompt determinative ruling might avoid needless

22   litigation.  That's at 484 f3d 158.

23          The circuit goes on to say, "the legislative

24   history confirms that Congress intended this provision to

25   facilitate our provision of guidance on, quote -- I'll

Page 184

1    highlight this, rather -- pure questions of law."  Among the

2    reasons for the direct appeal amendment was widespread

3    unhappiness at the paucity of settled bankruptcy law

4    precedent.  The House report that accompanied the BPACPA

5    emphasized that "decisions rendered by a district court as

6    well as bankruptcy appellate panel are generally not binding

7    and lack stare decisis value."  The circuit then goes on to

8    cite the House reports setting forth that view.  It then

9    says, "indeed, Congress believed direct appeal would be most

10   appropriate when we are called upon to resolve a question of

11   law not heavily dependent on the particular facts of the

12   case because such questions can often be decided based on an

13   incomplete or ambiguous record."  Eliding, again, citations

14   to the legislative history, the court continues, "when a

15   discrete controlling decision or question of law is at

16   stake, we may be able to settle the matter relatively

17   promptly."

18          The court then turns to the last prong of Section

19   158(d)(2)(a), namely, "an immediate appeal from the judgment

20   order or decree may materially advance the progress of the

21   case or proceeding in which the appeal is taken."  And

22   states -- and this is still at page 158 -- "the legislative

23   history also confirms that direct appeal may be appropriate

24   where a judgment of this court would materially advance the

25   progress of the case.  For instance, where a bankruptcy

Page 185

1    court has made a ruling which if correct will essentially

2    determine the result of future litigation.  The parties

3    adversely affected by the ruling might very well fold up

4    their tents if convinced that the ruling has the approval of

5    the court of appeals but will not give up until that becomes

6    clear.  When that ruling is manifestly correct or manifestly

7    erroneous, the parties would profit from its immediate

8    review in this court."

9             I think it is fair to say that what the court was

10   addressing there and what many courts and the leading

11   treatise on bankruptcy have noted also with regard to the

12   third prong, i.e., materially advancing the progress of the

13   case or proceeding, is a focus on the case not the appeal

14   itself, not the speed of the appeal, but the conduct of the

15   case, and accordingly, have applied that section where it

16   has been applied to interlocutory appeals or appeals that

17   for purposes of the bankruptcy courts jurisprudence on what

18   constitutes a final order will determine the direction of a

19   case, i.e., a gatekeeping issue for how the parties will

20   then proceed to negotiate a plan and the like.  I take this

21   in part also from the court's following analysis in Weaver

22   where it focuses on interlocutory appeals and mandamus as

23   well as the discussion in I Collier at Bankruptcy, paragraph

24   5.06(d), 16th ed. 2021.

25             The circuit noted in the Weaver case, however,

Page 186

1    that Congress carefully limited the circumstances for a

2    direct appeal while introducing the possibility of the right

3    in Section 158(d)(2)(a).  At paragraph 160 of the opinion,

4    the circuit states, "nevertheless, although the Congress

5    emphasized the importance of our expeditious resolution of

6    bankruptcy cases, it did not wish us to privilege speed over

7    other goals.  Indeed, speed in not necessarily compatible

8    with our ultimate objective:  Answering questions wisely and

9    well.  In many cases involving unsettled areas of bankruptcy

10   law, where viewed by the district court, would be most

11   helpful.  Courts of appeals benefit immensely from reviewing

12   the efforts of a district court to resolve such questions.

13   Permitting direct appeal too readily might impeded the

14   development a coherent body of bankruptcy case law."

15           I'll skip certain citations and then go on the

16   rest of the quote:  "Moreover, since district courts tend to

17   resolve bankruptcy appeals faster that courts of appeals" --

18   citations omitted -- "and because this court has relaxed the

19   meaning of finality in bankruptcy cases, the cost of speed

20   of permitting district court review will likely" -- I'm

21   sorry -- "the cost in speed of permitting district court

22   review will likely be small."

23           The court went on the state twice that,

24   "therefore, in exercising its discretion whether to take a

25   direct certification it would most -- in most cases -- adopt

Page 187

1    the latter path of allowing some cases to percolate through

2    normal channels," id., and also id., at 161.

3           That view is to the caution with which courts

4    should approach a request to certify a direct appeal is born

5    out in the case law where the courts have held that direct

6    certification of an appeal is a procedural remedy reserved

7    for exceptional circumstances in which guidance of the

8    circuit courts of appeals is necessary.  See, for example,

9    In re Sabine Oil and Gas Corp., 551 B.R. 132 142 SDNY 2016

10   and In re BGI, Inc., 504 B.R. 754 770 SDNY 2014.  And I'm

11   sorry, the Sabine case is a bankruptcy SDNY 2016 cite.

12          The movants have contended that each of the three

13   subsections is independently met under Section 158(d)(2)(a)

14   and correctly noted that they can move ahead and must

15   certify a direct appeal where any one of them is met.  See,

16   for example, Homaidin, H-0-M-A-I-D-I-N, v Sallie Mae, S-A-L-

17   L-I-E, M-A-E, 2020 U.S. District LEXIS 177 126 EDNY February

18   25, 2020, where all of the parties agreed that there was no

19   controlling case from the Supreme Court or the second

20   circuit on the issue before it -- an important issue --

21   involving the interpretation of the non-dischargability of

22   obligations to repay funds received as an educational

23   benefit, scholarship, or stipend.  The objectants argue to

24   the contrary that none of the subsections of 28 U.S.C.

25   158(2)(a) have been satisfied.

Page 188

1              The case law is clear and consistent with the

2      Weaver case that only pure questions of law, not mixed

3      questions of law and fact with some exceptions where the

4      record is crystal clear and it's primarily not exclusively a

5      legal question, are the types of issues covered by both

6      subsections, I and II, of the statute.  Again, see Weaver

7      484 f3d at 158 and In re American Home Mortgage Investment

8      Corp., 408 B.R. 4244 D Delaware 2009.

9              In addition, the courts have addressed at length

10     whether a question of law for purposes of this provision is

11     one "as to which there is no controlling decision of the

12     court of appeals for the circuit or of the Supreme Court of

13     the United States."

14             I will note that the U.S. Trustee made for the

15     first time at oral argument the argument that there need not

16     be a controlling decision -- I'm sorry -- that there may

17     need to be -- excuse me -- there may be a controlling

18     decision at the circuit level, but if there is not one at

19     the Supreme Court level, then subsection I is satisfied.  I

20     thoroughly disagree with that argument.  The United States

21     Supreme Court rules in a good year on one or two bankruptcy

22     matters, deny certiorari on scores of them, and the notion

23     that circuit law would not be controlling and instead, the

24     path of direct certification should be one aimed at the

25     United States Supreme Court appears to me to be completely

Page 189

1   inconsistent with the statute's purpose and in addition, is

2   inconsistent with the statute's plain meaning.  It wouldn't

3   reference the court of appeals for the circuit, i.e., in

4   this case, the second circuit, if controlling law at the

5   court of appeals level would be irrelevant to the

6   determination as was argued at appeal -- I'm sorry -- at

7   oral argument by the U.S. Trustee.

8           As far as what is controlling law for purposes of

9   subsection 2(a)(i), the courts have recognized that this may

10  be supplied by combining holdings from multiple cases, but

11  it is nevertheless law at the circuit level or if there's no

12  law at the circuit level, at the Supreme Court level which

13  admits no ambiguity in resolving the issue of pure law

14  because that's the first element of the requirement in (i).

15  See, In re Gravel 2019 Bankruptcy LEXIS 2576 at page 13;

16  Bankruptcy D Vermont August 12, 2019; and In re Millennium

17  Lab Holding, II, LLC, 543 B.R. 703 708 Bankruptcy D Delaware

18  2016.

19          Again, one is governed by the clear direction from

20  the Weaver case that the statute works where there is

21  discrete controlling question of law at stake that can be

22  decided without focusing on an extensive factual record.

23  The courts have dealt with arguments that try to find a

24  niche outside of controlling precedent and generally have

25  been wary of such arguments.  As noted by such courts, novel

Page 190

1    arguments do not make controlling precedent any less so.

2    See In re Ladder Number 3 Corp., 2018 WL 2298349 EDNY March

3    28, 2018; and In re Goody's Family Clothing 2009 U.S.

4    District LEXIS 67011 at page 5 D Delaware July 30, 2009.

5            As also noted by the district court for the

6    District of Delaware, direct certification is not warranted

7    where a movant was not arguing the absence of controlling

8    law but was arguing the absence of a decision that adopted

9    its position, In re Comex Holdings, LLC, 534 B.R. 606 611 D

10   Delaware 2015.  See also In re Fisker Automotive Holdings,

11   Inc., 2014 U.S. District LEXIS 17689 at page 12, note 3, D

12   Delaware, February 12, 2014.

13           The reason for this approach I think was made

14   clear by Judger Gerber in In re General Motors, Corp., 409

15   B.R. 24 Bankruptcy SDNY 2009 where the court emphasized that

16   the statute, no matter how important the matter be to a

17   particular case, does not in this provision require direct

18   certification where the circuit would be only deciding again

19   what it had previously decided in prior cases.  The focus

20   instead is on where the circuit would be asked to make new

21   law and the context of that, again, is purely a legal

22   question.

23           As the editors of Colliers note, most of the

24   requests for certification involving important matters of

25   statutory -- involve important matter of statutory

1   interpretation where there is a new statute, either the

2   amendment to a bankruptcy code provision or a separate

3   statute that requires interpretation for purposes of the

4   bankruptcy court's exercise of its jurisdiction over the

5   case as was the case in Springfield Hospital v Carranza, In

6   re Springfield Hospital, Inc., 618 B.R. 109 bankruptcy D

7   Vermont 2020; see I Collier on bankruptcy, paragraph

8   5.06(a).

9           Finally, as far as Section 158(2)(a)(i) is

10  concerned, Congress, as a separate basis under that

11  provision, if the matter involves -- or the appeal involves

12  -- a matter of public importance.  Again, the courts have

13  spent substantial time construing that provision and also

14  can be said to have construed it narrowly.  Under the case

15  law, a matter of public importance for purposes of this

16  section is a legal question that will advance the cause of

17  jurisprudence to a degree that is usually not the case if

18  decided by the circuit.  Mark IV Industries, Inc., v The

19  Mexico Environmental Department, 452 B.R. 385 388-89 SDNY

20  2011; In re American Home Mortgage Investments Corp., 408

21  B.R. 44; In re Nortel Networks Corp., 2010 Bankruptcy LEXIS

22  812 bankruptcy D Delaware March 9, 2010; and In re General

23  Motors, Corp., 409 B.R. at 28.

24          The court in that decision, which I've already

25  cited, was obviously presiding over a substantial business,

Page 192

1    and the effect of its decision would affect literally tens

2    of thousands of people.  In addition, parties raised

3    constitutional issues.  Nevertheless, the court determined

4    that a direct appeal was not warranted since guidance on

5    those issues in a controlling way for purposes of the

6    statute existed.  See also, In re Sabine Oil and Gas, Corp.,

7    551 B.R. at 40.

8             Having heard the parties' arguments and obviously

9    being quite familiar with the issues on appeal, I believe

10   that the movants have not satisfied their burden under

11   Section 158(2)(a)(i), either on the first aspect of that

12   provision, i.e., the no controlling decision point, or the

13   alternative aspect of that provision, i.e., involves a

14   matter of public importance.  The court's decision that is

15   the subject of the appeal of the confirmation order

16   addressed at length the substantial case law at the circuit

17   level governing each of the issues on appeal that are

18   highlighted for purposes of these motions.  It addressed the

19   controlling decisions on the court's jurisdiction, namely

20   Celotex and Quigley -- that is, the Supreme Court's Celotex

21   opinion and the second circuit's opinion in In re Quigley,

22   676 f3d 45 2d circ 2015.

23            It addressed the Stern v Marshall issues which,

24   though directly addressed on point in this circuit by the

25   circuit court, have been the subject of extensive general

Page 193

1    rulings by the circuit and the Supreme Court in multiple

2    opinions which, at best, the circuit would be asked to

3    refine the application of that case law to the particular

4    facts of this case not a pure question of law for purposes

5    of how that term is viewed in this provision.

6            The court also addressed the due process issues

7    which obviously are governed by Moline v Hanover at the

8    Supreme Court level and the second circuit's Motors

9    Liquidation case which I believe are controlling decision,

10   either at the Supreme Court level or, where there is a

11   decision at the second circuit level, at that level.  In

12   addition, and as I noted in my ruling that's on appeal, the

13   applicability of due process concerns is substantially fact-

14   based and does not present a pure issue of law, I believe,

15   although, it is one that, I believe, is subject to rather

16   rapid review, given the record before the Court and the

17   ultimate ruling by the Court.

18           The appealing states have argued that no second

19   circuit opinion of Supreme Court opinion exists applying or

20   construing the issue of a course of third-party claims

21   release to states who are asserting, at least in part, their

22   police power rights or their police power.  I agree with

23   that assertion, albeit, that there are certainly decisions

24   in other circuits that address that point, although

25   primarily implicitly.

Page 194

1             I do not believe, however, that that lack of a

2     decision directly on point is a factor that should require

3     me to certify a direct appeal.  The bankruptcy code itself

4     addresses the limitations of the bankruptcy power in

5     response to the police power of governmental entities and

6     otherwise, does not cabin it.  And I believe that,

7     therefore, this argument, while certainly a perfectly

8     appropriate argument for appeal as it was perfectly

9     appropriate to make before me, falls into the category of

10    arguments that were addressed in, for example, Goody's

11    Family Clothing and Comex Holdings that I previously cited.

12            In addition, the question is not a pure question

13    of law, I believe, given that the nature of the police power

14    that is being asserted at this point was addressed as a

15    factual matter by the Court in the decision and order that

16    is the subject of the appeal.  It may well be that some

17    types of police power, for example, would not be subject to

18    a mandatory release and injunction, as opposed to the types

19    of police power that are asserted or were asserted before me

20    and now are being asserted on appeal.  Again, therefore, one

21    does not see where the guidance from the circuit bypassing

22    the district court's analysis of the record below would be

23    required under the statute.

24            The movants equate the issue of public importance

25    for jurisprudential purposes and controlling decision.  At

Page 195

1    times that is helpful but at times that is not.  Clearly,

2    something is of public importance if the law is not clear,

3    and that law will come up again and again.  That's obviously

4    where guidance is warranted, as discussed in the Weber case,

5    from the circuit.  On the other hand, the topic of coerced

6    third-party claims releases in bankruptcy cases, while it

7    does come up often in bankruptcy cases, is the subject of

8    controlling decisions -- the plural -- in the second circuit

9    and that controlling case law, further, requires the Court

10   to make a detailed factual analysis which is, of course,

11   what I tried to do in my ruling that's now the subject of

12   appeal as required by the second circuit in the Metromedia

13   case and the cases that follow it.

14         So it appears to me that as the courts have

15   cabined the phrase "matter of public importance" to apply to

16   jurisprudential guidance, beyond that, in the normal

17   appellate process, this is not a matter of public

18   importance, because, again, it as Judge Gerber held in the

19   GM case, it's not a matter of public importance for purposes

20   of this statute, that the court decide again the type of

21   issue that it has decided in the past.

22         The motions, therefore, do not satisfy the first

23   prong of Section 158(2)(a) nor do they satisfy the second

24   prong, i.e., that judgment order or decree involves a

25   question of law requiring resolution of conflicting

1    decisions.  The case law is almost uniform, and this is

2    certainly consistent with the reading of the statute as a

3    whole, that the case law referred to in this section is case

4    law within the circuit below the circuit level.  Obviously,

5    given subsection (i) which focuses on controlling decisions

6    in the circuit, the fact that there is conflicting case law

7    outside of the circuit cannot be what Congress intended to

8    acquire a direct appeal of an issue that is not the subject

9    of conflicting decisions within the circuit.  Again, see I

10   Collier on bankruptcy, paragraph 5.06(c) as well as In re

11   General Motors Corp, 409 B.R. 24.

12          Here there is no conflicting case law within this

13   circuit on the issues that are up for appeal.  The two cases

14   cited by the U.S. Trustee clearly recognize the requirement

15   that any trial court must follow when dealing with these

16   issues.  To follow the Second Circuit's case law, including

17   the Metromedia case, they found in that -- in each of those

18   cases that the Second Circuit's requirements were not

19   satisfied and therefore denied the relief.  But that is not

20   a conflict.

21          Indeed, one would be shocked if a court in the

22   Second Circuit, which includes all the states in the Second

23   Circuit, including the state of Connecticut where the

24   Debtors are headquartered, would not follow the circuit law

25   as set forth in the Johns Manville, Drexel, and Metromedia

1    opinions as well as In re Quigley, following Metromedia,

2    that discusses the requirements in the Second Circuit for

3    the imposition of a third-party claims release in a

4    bankruptcy case.

5            That case law, as noted by Judge Wiles in In re

6    Aegean Marine Petroleum Network Inc., 599 717, 728 (Bankr.

7    S.D.N.Y. 2019) is governing -- the governing case law

8    requires me to consider, et cetera, et cetera the factors in

9    Metromedia.  Indeed, in that case, Judge Wiles found a basis

10   for a third-party release and exculpation that anyone who is

11   a lawyer would cite this opinion as being controlling case

12   law, and that includes law professors, must either be

13   wearing blinders or simply intending to misrepresent the law

14   in the Second Circuit.

15           Similarly, In re SunEdison, Inc., 576 B.R. 453

16   (Bankr. S.D.N.Y. 2017) does not stand, as has been asserted

17   by the U.S. Trustee, for the proposition that Metromedia is

18   not controlling in this circuit and that the bankruptcy

19   courts in this circuit can chart their own paths without

20   following it.

21           Indeed, Judge Bernstein in that cases at pages 461

22   through 62 analyzed how Metromedia would apply and found

23   that it did not apply to the releases at issue, although he

24   did find that he had jurisdiction if the plan was amended to

25   comply with Metromedia id est 462.  So I conclude that the

Page 198

1    second prong, or the second alternative basis for certifying

2    a direct appeal, namely that set forth in Section 158(a)(ii)

3    does not apply here either.

4           Finally, the parties rely on the third prong,

5    namely (iii) "an immediate appeal from the judgment order or

6    decree may materially advance the progress of the case or

7    proceeding in which the appeal is taken."  This provision

8    too is a subject of considerable interpretation and again

9    should be read in the context of the entire section of the

10   judicial code.

11          The courts have been clear about the following.

12   First, consistent again with the Weber case, which I

13   previously quoted, the mere fact that leapfrogging the

14   district court in the appellate chain might expedite a final

15   determination is not what Congress had in mind in this

16   provision.  If that were the case, one would intuitively

17   think that it would always apply.  See In re Johns-Manville

18   Corp.) 449 B.R. 31, 34 (S.D.N.Y. 2011).  See also 1 Collier

19   on Bankruptcy Paragraph 6[d]and In re Fisker Automotive

20   Holdings Inc. 2014 U.S. Dist. LEXIS 17689 at Page 12.

21          The section by its plain terms refers to advancing

22   the case, not advancing the appeal.  One, I suppose, could

23   construe the cases being advanced by having a final

24   determination, but I think Congress chose that word

25   carefully as opposed to simply setting up a prong that would

Page 199

1    obviate the careful consideration of the other two, except

2    where one would need to engage in speculation as to how fast

3    an appellate court might rule, something I don't believe

4    Congress really wanted the lower courts to engage in.

5         The courts have also made it clear that the fact

6    that parties on a near-certain basis will want to eventually

7    take their appeal to the circuit is not a basis for direct

8    certification.  See, for example, In re Lehman Brothers 013

9    WL 5272937 (S.D.N.Y. Sept. 18, 2013) and In re Millennium

10   Lab Holdings II LLC 543 B.R. 703 716-17 (Bkrtcy.D.Del.

11   2016).

12        I guess I can conceive of a situation, for

13   example, where the district judge that drew an appeal of a

14   matter that warranted expedited determination and could not

15   decide it because, for example, she was about to conduct a

16   three-month jury trial.  A court might take into account

17   this provision and say under these circumstances, rather

18   than stay the matter or, alternatively, not stay it and risk

19   that there be no appellate review because of the doctrine of

20   equitable mootness would certify a direct appeal.

21        I believe that concern clearly does not apply

22   here.  District Judge McMahon, who has the appeals, has

23   already set an expedited briefing schedule where she will

24   hear oral argument on November 3 -- 30, excuse me, bearing

25   out the Weber court's observation that normally appeals

Page 200

1    through the district court through the circuit move faster.

2            The U.S. Trustee has pointed out that under 28

3    U.S.C. Section 158(2)(d), my certifying a direct appeal

4    would not stop or preclude Judge McMahon from deciding the

5    appeal before, and that is true.  I believe it is also true,

6    knowing Judge McMahon's character and work ethic, that I do

7    not believe her knowing that I had certified a direct appeal

8    would cause her to put her pen down.

9            And I understand that if she ruled, and I expect

10   she will soon after the appellate argument on November 30th,

11   i.e. sometime in December, the parties could go to the

12   circuit and say, "We're withdrawing our request that you

13   accept a direct appeal," and instead request that you too

14   seek expedited treatment -- or grant expedited treatment.

15   However, the two-track process would create an extra around

16   of decision making, including at the circuit level, extra

17   briefing and oral argument, and create its own docket, which

18   the record before me, I think, establishes at least that

19   that docket would have its own life and take its own time.

20           In addition, and this is a more important

21   consideration, one of the issues raised on appeal, which I

22   decided in favor of the Debtor's on, is that consistent with

23   the Third Circuit holding and district court level holding

24   in the Third Circuit and in the Second Circuit, and

25   bankruptcy court holding in the Section Circuit, the Court

Page 201

1    has the power to issue a final order confirming a plan as a

2    fundamental aspect of the adjustment of debtor-creditor

3    relations under the Supreme Court Stern v. Marshall case

4    law.

5            Long ago, before that case law become much more

6    clarified, including at the supreme court level, the

7    district court entered an amended standing order that among

8    other things gave the district court the power to treat a

9    bankruptcy judge's determination, which the bankruptcy judge

10   believed could be a final order as proposed findings of fact

11   and conclusions of law, which of course Stern v. Marshall

12   would permit.  With the appeal in front of Judge McMahon,

13   that can happen if it were certified directly to the

14   circuit, and the circuit took it and determined that I was

15   wrong on the Stern v. Marshall point and disagreed with the

16   Third Circuit in the Millennium II case, an extra step

17   involving proposed findings of fact and conclusions of law

18   would have to be taken, in all likelihood by the district

19   court, although perhaps by this Court on remand, ultimately.

20   That would waste time.

21           There are arguments to be made on both sides on

22   that issue, but that issue, I believe, ultimately under

23   these facts is not what Congress in Section 158(2)(a)(iii) I

24   believe meant the Court to focus on, i.e. the speed of the

25   appeal process, unless in extreme situations that I've

Page 202

1     already mentioned.  It meant to focus on the case and

2     activity within the case so that the case could proceed to

3     its conclusion with legal issues defined along the way that

4     are gatekeeping issues.  So I conclude that the movants have

5     not shown that a third prong of Section 158(d)(ii) has been

6     satisfied either.

7           Again, I do not view this determination as one

8     that requires a lot of heat or passion.  It's a

9     jurisprudential issue where the precedents are important and

10    where the courts have consistently held, and the Second

11    Circuit has consistently focused the courts on holding that

12    the Court should be careful in reading the statute broadly

13    and rather should issue a direct certification in only rare

14    instances, as I've previously outlined.

15          So I will ask the Debtors to submit an order

16    consistent with that ruling denying the motion.  Needless to

17    say, the request for directive appeal of my September 15,

18    2021 order also does not meet the requirements of the

19    statute in any respect for the reasons that I've outlined.

20    There really was no attempt to do so by the U.S. Trustee.

21    And frankly, I think the only reason for it is the U.S.

22    Trustee's hope that the appeals would go forward together

23    because of its concern, or his concern, about mootness

24    issues, which really are more appropriately dealt with when

25    courts consider motions for stay pending appeal.

Page 203

1           So let's turn to the last matter on the agenda,

2     which is the pretrial conference that the Court previously

3     scheduled in our first conference on September 30 regarding

4     the motions for stay pending appeal filed by various parties

5     in interest, some of whom were not parties to the motion

6     that I've just decided because I noted at the beginning of

7     this morning's calendar, I've had a chance to review Judge

8     McMahon's order from the 13th of this month denying without

9     prejudice the United States Trustee's emergency motion for a

10    stay pending appeal.

11          I'm not sure that motion when she granted the TRO

12    actually advised Judge McMahon that the parties were already

13    going to be appearing on that issue before me on November

14    9th.  But in any event, Judge McMahon denied the motion

15    without prejudice on the conditions stated in her order,

16    which I fully agree with and hope I had already signaled to

17    the parties they should agree with so that the November 9

18    hearing can move forward, as I think Congress contemplated

19    in the 8,000 rules of the bankruptcy rules.

20          So I left this matter with the parties hoping that

21    we wouldn't need to have a long conferences when we were

22    last here at the end of September, and I think the only

23    issues that really were going to come up, if at all, applied

24    to whether parties would be offering witnesses, or which

25    parties would be offering witnesses, and which discovery

1   would take place in advance of the November 9 hearing.  I

2   have received a motion to quash deposition notices that was

3   made by the U.S. Trustee.  I've deferred to conference on

4   that as well as briefing on the stay motion because it

5   seemed like the parties might be able to resolve it,

6   particularly in light of the imminent -- then-imminent

7   ruling by Judge McMahon.

8           So let me open the floor up to those who have

9   sought a stay pending appeal and the parties on the other

10  side, and ask, have you at this point agreed who is putting

11  together witnesses -- who is going to be putting on

12  witnesses, and if so, to a discovery schedule?

13          MAN 1:  Your Honor, if I may, I was going to turn

14  the podium over for Davis Polk to Mr. Kaminetzky.  There

15  actually is some good news to report on some schedule

16  issues, which is great, and then some uncertainty on others.

17          Your Honor, just for the record, you are

18  completely correct.  The U.S. Trustee's motion did not

19  advise the district court at all about November 9th or other

20  things, but we'll leave that aside.

21          So I will put myself on mute and turn over to Mr.

22  Kaminetzky, if that's okay with the Court.

23          THE COURT:  Okay.  That's fine.  So why don't you

24  -- why don't the parties tell me what they've agreed on

25  first?

Page 205

1              MR. KAMINETZKY:  This is Ben Kaminetzky at Davis

2     Polk.  I'm actually going to send it to Mr. Tobak

3     (indiscernible) from the creditors' committee who has been

4     dealing with (indiscernible).

5              THE COURT:  All right.

6              MR. TOBAK:  This is Marc Tobak.  I believe Mr.

7     Hurley will be presenting on the schedule.

8              THE COURT:  Okay.  I think you're going to have to

9     get a little closer to the microphone, Mr. Tobak, and maybe

10    speak a little slower just so we can pick you up.

11             MR. TOBAK:  Sorry about that.  This is Marc Tobak,

12    Davis Polk.  I believe Mr. Hurley from Akin Gump who

13    represents the committee will actually be presenting on the

14    agreed schedule.

15             THE COURT:  Okay.  So why don't I hear from the

16    Committee's counsel then?  Unless I put him to sleep with my

17    ruling, or her.

18             MR. HURLEY:  Yes, good afternoon, Your Honor.

19             THE COURT:  Oh, there he is.  Okay.

20             MR. HURLEY:  Your Honor, apologies --

21             THE COURT:  That's fine.

22             MR. HURLEY:  -- for the delay.  Our camera was

23    turned off, we think, by the Court.  And we've been

24    (indiscernible) --

25             THE COURT:  All right.

Page 206

1          MR. HURLEY:  -- back online.

2          THE COURT:  Okay.

3          MR. HURLEY:  So here we are.

4          MAN 1:  Hey, Mitch.  There are two Akin Gump lines

5    that are not muted, and I think they're interfering with

6    each other, so you should probably mute one of them.

7    There's a Mitch line and then --

8          MR. HURLEY:  My apologies again, Your Honor.  So

9    yeah, Mitch Hurley with Akin Gump Strauss Hauer Feld on

10   behalf of the official committee.  Your Honor, can you hear

11   me?

12         THE COURT:  Yes.

13         MR. HURLEY:  My apologies, Your Honor.  Can you

14   hear me?

15         THE COURT:  Yes, and see you.

16         MR. HURLEY:  So regarding the motion to be heard

17   by the Court on November 9th, certain parties have reached

18   an agreement on the schedule (indiscernible).  Before I read

19   onto the record what that is, I want to make clear for the

20   record --

21         THE COURT:  I'm sorry.  Now I'm not hearing you.

22   You're going to have to get closer to the mic.  You're very

23   hard to hear.

24         MAN 1:  Yeah.  Hey, Mitch.  There's a second Akin

25   Gump line in addition to yours that's not muted.  I think

1    that's the problem.  There's someone called Akin Gump New

2    York 2, which is a separate box.  Maybe you have two mics

3    going.

4             MR. HURLEY:  Yeah.  What's going on in is we

5    originally had a camera set up, and I think the Court

6    actually shut that camera down, so we can't access that or

7    control it at all.

8             THE COURT:  Well, can we turn off that other mic?

9    Can we mute -- can we turn off that mic?  No?  Okay.

10            MR. HURLEY:  If you turn it on, actually, then I

11   can shut the computer off and just (indiscernible).

12            THE COURT:  Can you turn on the other camera, the

13   other Akin Gump --

14            CLERK:  (Indiscernible) camera.  I don't know what

15   happened.

16            THE COURT:  I'm being told there was only one

17   camera.

18            CLERK:  One camera online.

19            MR. HURLEY:  Can you hear me okay?

20            THE COURT:  Yeah.  You just have to move closer to

21   your microphone.

22            MR. HURLEY:  Okay.  So before I just -- before I

23   read onto the record what the agreement is, I want to make

24   clear who the parties are who have agreed to it.

25            So on the movant's side, the agreeing parties are

Page 208

1    the states of Washington, Connecticut, and Maryland, plus

2    the U.S. Trustee, and the (indiscernible).

3              On the non-movant's side, the agreeing parties --

4              THE COURT:  So that's everyone, right, who has

5    made a motion for stay pending appeal?

6              Now you've just -- now we can't hear you at all.

7              MR. HURLEY:  (Indiscernible).  On the non-movant

8    side, the agreeing parties are the Debtors, the UCC, Ad Hoc

9    Committee of Governmental and other (indiscernible), and the

10   Ad Hoc Group of Individual Victims, plus the Ad Hoc Group

11   (indiscernible).

12             THE COURT:  Okay.

13             MR. HURLEY:  (Indiscernible).

14             THE COURT:  So is there anyone, again, who is

15   going to be active on these motions for stay pending appeal

16   that has not agreed?

17             MR. HURLEY:  Not that I'm aware of, Your Honor.

18             THE COURT:  Okay.  All right.

19             MR. HURLEY:  I will put the agreement on the

20   record now.  The agreement is the deadline for opposition to

21   the motion of stay, the (indiscernible) witness declarations

22   (indiscernible) is October 22nd.

23             THE COURT:  October 22nd?

24             MR. HURLEY:  Correct.

25             THE COURT:  Okay.

Page 209

1            MR. HURLEY:  The deadline for the movants to

2     provide opposing rebuttal witness declarations, again if

3     any, October 29th.  And the deadline for (indiscernible) on

4     the stay motions, including objections to witness

5     declarations, again if any, is November 1st, no later than

6     2:00 p.m. on November 1st.  To the extent that depositions

7     are required, witnesses will be made available at a

8     (indiscernible) prior to the November 9th hearing so that no

9     party is prejudiced.

10            Were you able to hear that okay, Your Honor?

11            THE COURT:  I can't hear that last part, no.

12            MR. HURLEY:  To the extent that depositions are

13     required, witnesses will be made available at a significant

14     time in advance of the hearing so that no party is

15     prejudiced.

16            THE COURT:  Okay.

17            MR. HURLEY:  And that's the agreement.

18            THE COURT:  All right.  So is it fair to say that

19     the parties don't know yet what witnesses they're going to

20     call because they have time to still think about that?

21            MR. HURLEY:  So certain of the non-movants have

22     identified witnesses that they intend to call and to provide

23     declarations to the Court.  The movants have reserved their

24     rate.  They may put in declarations.  They may not.  They've

25     also reserved their right (indiscernible) declarations

1    (indiscernible).

2            THE COURT:  Okay.  And that's understandable.

3    They want to see what your witnesses say.

4            MR. HURLEY:  I believe that's right, Your Honor.

5            THE COURT:  Okay.  All right.  So it's

6    contemplated that this may be an evidentiary hearing with

7    live witness testimony, in which case someone should have

8    marked up an order for that purpose, similar to the order

9    that applied for the confirmation hearing, you know, an

10   electronic remote hearing order.

11           MR. HIGGINS:  Your Honor, this is Ben Higgins for

12   the U.S. Trustee.  May I be heard?

13           THE COURT:  Yes.

14           MR. HIGGINS:  Thank you, Your Honor.  I know it's

15   been a long hearing.  I just have a couple points to address

16   on this regard.

17           First, I want to correct what Mr. Huebner said.

18   Our emergency motion did reference the November 9th hearing

19   on the opening page and again on Page 13, so I want to make

20   sure the record is clear about that.

21           Second, the U.S. Trustee is okay with the proposed

22   schedule, but we do want to emphasize that there is already

23   an extensive evidentiary record after a multiday trial, and

24   we don't think a second extensive trial is appropriate or

25   necessary for the Court to decide the motions for a stay

1    pending appeal, and that is now especially true in light of

2    Judge McMahon's ruling yesterday, which we think is at least

3    persuasive authority for this Court when it ultimately rules

4    on the stay issue.

5              And as Your Honor is aware, it's not unusual for

6    parties to simply move orally for a stay pending appeal

7    after a Court's ruling, but here when Your Honor issued a

8    conditional bench ruling at the trial's convulsion, we felt

9    it was both prudent and necessary for the sake of a clear

10   record to take the time to actually read the transcript of

11   Your Honor's decision and to file a written motion.

12             And to the question of witnesses, we have filed a

13   designation identifying the various documents in the

14   extensive record that we support that -- we believe support

15   any factual assertions in our briefs, so we don't intend to

16   put on any affirmative witnesses.

17             We do intend to file very shortly an amended brief

18   that simply adds the specific citations to those designated

19   portions of the record.  We do reserve the right to put on

20   rebuttal witnesses, but we're hoping that won't be

21   necessary.

22             But as Judge McMahon made clear in her ruling

23   yesterday, and Your Honor made clear back on September 30th,

24   these appeals should be determined on their merits.  In

25   light of those statements from both the bankruptcy court and

Page 212

1    now the district court, we believe it should be clear that

2    the parties can all save some time here by simply agreeing

3    to a stay pending appeal as Your Honor suggested back on

4    September 30th.  But if necessary, we're prepared to go

5    forward with the proposed schedule and with the November 9th

6    hearing.

7            With regard to the motion to quash that Your Honor

8    mentioned, I won't get into the merits.  As you've noted, we

9    have filed a premotion letter.  We believe the notice is

10   inappropriate and that it seeks irrelevant information, and

11   the mental impressions and strategy of the attorneys

12   representing the U.S. Trustee, and we look forward to that

13   conference with Your Honor if we can't work that out with

14   the PI group.

15           And the last point, Your Honor, which is a little

16   bit off track, but it is related to the scheduling, is that

17   we have asked the Debtors to provide status reports

18   disclosing what they are actually doing to prepare for the

19   sentencing date and the effective date.  And we aren't

20   looking for anything elaborate, but to the extent there is

21   not a stay, which will be the case when Judge McMahon's TRO

22   is dissolved, we think there should be some visibility for

23   the Court and the parties to see what actions are actually

24   taking place so we can have some assurance that they are

25   truly just administrative or administerial in nature.  So

Page 213

1    the Debtors haven't responded to this request, Your Honor,

2    but to the extent there is no stay in place, we would -- we

3    would ask the Court to direct them to provide some type of

4    regular status report in that regard.

5            I have nothing further, Your Honor, unless you

6    have questions about any of that.

7            THE COURT:  I --

8            MR. SHORE:  Your Honor, I'm happy to respond in

9    part to Mr. Higgins (indiscernible).

10           THE COURT:  Let me -- let me hear first, I guess,

11   from Mr. Edmunds, and then I'll address -- I'll let people

12   address each of their comments.

13           MR. EDMUNDS:  Thank you, Your Honor.  Just first

14   an update.  Yesterday, the State of Maryland was served with

15   a deposition subpoena and document requests, and I think

16   that we are still in the process of talking that over with

17   the UCC, which served the requests (indiscernible).

18           THE COURT:  You cut out for some reason, Mr.

19   Edmunds.  I can't hear you.  Can anyone else hear him?

20           MR. EDMUNDS:  -- can't hear you.

21           THE COURT:  Now I can.

22           MR. EDMUNDS:  Now, I can.

23           THE COURT:  Now I can hear you.

24           MR. EDMUNDS:  Okay.  Yeah.  I can hear you too

25   now.

1          In any case, we are going to work through that

2     with UCC, but we have a preliminary position to all of this

3     similar to the Trustee's, which is that discovery certainly

4     shouldn't be necessary in this case in light of the record

5     that Your Honor already has.

6          I think you're familiar with the plan and what it

7     does, and you've heard extensive evidence on the need for

8     the plan and issues that relate to what the plan does in

9     helping with the problem that is the opioid crisis and what

10    is at stake here.  I think that that was also to what the

11    confirmation hearing was about.  And it might warrant under

12    Rule 9017, which incorporates Federal Rule of Civil

13    Procedure 43(C), a standard where it's in the Court's

14    discretion what it needs to hear outside the record, and

15    it's largely a standard of what will assist the Court in

16    resolving the stay motions, and I think that the Court

17    likely knows all that it needs to know from the record it's

18    already received without the added burden on both the

19    estate, and the parties, and the Court, all three, of

20    hearing evidence and entertaining motions on discovery,

21    especially over issues that the Court has been hearing about

22    and is well versed in after two years of litigation. The

23    issues of irreparable harm, which is the justification for

24    the discovery, are -- ought to be readily apparent to the

25    Court.  As Your Honor said in considering the motion that

Page 215

1    you just decided, that people are largely on the same page

2    about the need for speed.  The question is legal issues.

3              THE COURT:  Okay.

4              MR. EDMUNDS:  And issues on appeal.  So think as

5    far as -- especially as far as discovery goes, will 9017 and

6    its incarnation of 43(C) -- would -- I guess the issue is

7    whether the Court really needs that, and I think that the

8    Court has heard a lot and may not need that added cost,

9    burden, and expense, and use of judicial resources.

10             THE COURT:  Okay.  Was the discovery sought -- was

11   the discovery sought from the State of Maryland of a witness

12   that you intended to call, or more along the lines of what

13   was sought for the U.S. Trustee?

14             MR. EDMUNDS:  I think it's along the lines of what

15   was sought for the Trustee.  It's the 30(b)(6) notice for

16   designee related to what the state's understanding of the

17   claim and its consequences are.

18             THE COURT:  All right.

19             MR. EDMUNDS:  And I would just say that we're not

20   -- we are not -- we're not planning on putting in a

21   declaration.  We, like the U.S. Trustee, will shortly file a

22   sort of annotated version of our motion with the record -- a

23   voluminous record that supports it.  But you know, I think

24   that we do have to -- depending on how the discussions go --

25   need to rethink that, depending on how the Court feels about

Page 216

1   whether it needs to hear a lot of evidence, and whether

2   discovery is necessary.

3           THE COURT:  Okay.

4           MR. SHORE:  Your Honor (indiscernible) briefly

5   make a suggestion?  Can Your Honor hear me?

6           THE COURT:  If you get closer like -- yes, but

7   only if you get closer.

8           MR. SHORE:  Okay.  All right.  As Mr. Edmunds

9   correctly pointed out, the meet-and-confer process between

10  the UCC and Maryland has begun, hasn't been completed.  The

11  declaration that we're talking about haven't been served

12  yet.  I think it would make sense and would be a more

13  orderly process if parties have an opportunity after the

14  declarations are served to meet and confer, see if they can

15  reach an agreement about (indiscernible).  If they can't

16  reach an agreement about (indiscernible) and the role of

17  discovery, at that time come back to Your Honor and ask Your

18  Honor to absolve whatever dispute there may be, but perhaps

19  there won't be a dispute.  To raise it now, we think is

20  premature because the process has not had a chance to work

21  itself out.

22          THE COURT:  Okay.

23          MR. SHORE:  Your Honor, if I could

24  (indiscernible).

25          THE COURT:  Well, I could give you some guidance,

Page 217

1   but I understand both your points.

2           MR. SHORE:  Okay.  It's -- the deposition is for,

3   I believe, October 19th, and it will require -- you know, it

4   will --

5           THE COURT:  Okay.

6           MR. SHORE:  -- detract from our other efforts.

7           THE COURT:  All right.  All right.  Does any -- I

8   thought I heard someone else wanting to speak, but maybe I

9   missed it.  No?  Okay.

10          Hearing no one --

11          MR. SHORE:  Sorry, Your Honor.  Yeah.  Sorry.  I'm

12  just - there we go.  Chris Shore -- Chris Shore from White &

13  Case on behalf of the Ad Hoc Group.  Let me -- let me just

14  address with respect to the U.S. Trustee and actually just

15  ask for an augment because I think we're getting there.

16          We had sent out our notice and then had a meet-

17  and-confer and asked them to stipulate to some issues.  It

18  sounds like two of the issues we asked them to stipulate,

19  they've clarified in their letter now.  That is that the

20  United States Trustee as the movant is not claiming that the

21  United States Trustee or the federal government is being

22  harmed.

23          We've addressed the issue of whether they're

24  willing to post the bond or otherwise put something on the

25  table if they're wrong.  I think they've answered that one

Page 218

1    and said definitively they are not willing to put anything

2    on the table in the event that the confirmation order is

3    stayed and then later affirmed.

4           The third question was around what Your Honor laid

5    out before, which is the identification of the claims that

6    they are asserting, that is when we -- we talk about the

7    obvious claims that are being frustrated by the victims

8    versus the claims of the parties whose Sackler claims are

9    being released, contrary to their constitutional rights.  I

10   wanted an identification of that.

11          What Counsel just said is they're not putting on a

12   witness or putting in anything other than the confirmation

13   hearing.  I'm almost certain there was nothing in the

14   confirmation record which identified claims of individuals,

15   so as long as that's the case, I don't think I need

16   discovery on that topic.  It leaves only one last issue, and

17   maybe we could get guidance from Your Honor.

18          Depending on how one reads the DOJ settlement, the

19   super priority administrative claim comes into existence at

20   the later of, and it says, "confirmation of the plan and the

21   sentencing."  What we really don't want is a situation where

22   there were a sentencing hearing and then, having nothing to

23   do with an appeal, the Debtors can't consulate this plan.

24   There is some intervening event.  We just wanted to make

25   sure that the government was not going to take the position

Page 219

1    that because the plan was confirmed but not consummated,

2    their super priority administrative expense claim came into

3    existence.

4              Now, based upon the look that Your Honor is giving

5    me, I can see that you wouldn't be reading the order that

6    way.  And if I could just get confirmation from the United

7    States Trustee that they're not going to be asserting that,

8    the (indiscernible).

9              THE COURT:  But I don't -- one of the reasons I

10   was puzzled is I don't think that's the U.S. Trustee's

11   issue.  I think that's the Department of Justice's issue.

12   And I know the U.S. Trustee is in the Department of Justice,

13   but I think -- correct me if I'm wrong, Mr. Higgins, but I

14   think that's something you need to be talking to Mr.

15   Fogelman about.

16             MR. HIGGINS:  Your Honor, that's exactly right.

17   The U.S. Trustee, you know, we don't have, you know,

18   authority over what happens with the, you know, the

19   Department's position on the administrative priority claim.

20   And I would also like to address what Mr. Shore said about

21   Issue Number 3, if I could very briefly, Your Honor.

22             THE COURT:  Well, on that point, I think what your

23   -- your argument is -- you're going to make a legal argument

24   on that point, right?

25             MR. HIGGINS:  Yes, but also, Your Honor, I think

Page 220

1    the plan is clear on its face, that it releases the claims

2    of non-Debtors against the Sacklers, and there are more than

3    2,000 individual person injured -- personal injury claimants

4    that voted against the plan.  That's on the record.  A few

5    objected.  That's on the record.  More than 71,000 personal

6    injury victims did not vote on the plan at all.  None of

7    these parties consented to release their claims against non-

8    Debtors.  The plan is clear on its face that the rights of

9    these parties to sue the Sacklers, their causes of action

10   are terminated --

11             THE COURT:  No, no.  That's fine.

12             MR. HIGGINS:  -- under the plan.

13             THE COURT:  I think the only -- the only real

14   issue is whether you are going to present factual testimony,

15   and I don't believe you are, as to what those claims are.

16   If you're not, then this is a nonissue.  They're not going

17   to take discovery of you.

18             MR. HIGGINS:  Correct.

19             MR. SHORE:  I just want to make sure that when

20   we're balancing the arms, the Court can assess --

21             THE COURT:  Right.

22             MR. SHORE:  -- I have real claims that are getting

23   paid or not getting paid.  And on the other side, I have

24   claims that have been asserted but not articulated in any

25   manner that allows you to understand the risks on the other

Page 221

1    (indiscernible).

2           MR. HIGGINS:  And Your Honor, this is really an

3    issue for November 9th, but I mean, the way the Sacklers

4    fought tooth and nail for the releasees by the non-Debtors

5    without consent, I mean, I think it makes clear that they

6    were pretty concerned (indiscernible) --

7           THE COURT:  I don't want to get into legal

8    argument.  We're just talking about the evidence, and I do

9    have the designation of record in support of amended

10   memorandum of law from the U.S. Trustee, and I have a couple

11   of comments on it.  But it's clear to me that you're not

12   looking to introduce a case on behalf of one of those

13   people, even a hypothetical case, right?

14          MR. HIGGINS:  I don't think that's the case, Your

15   Honor.

16          THE COURT:  Okay.

17          MR. HIGGINS:  I mean, if -- we would reserve our

18   right to put in rebuttal evidence if there's something that

19   their declarant says on that type of topic, but --

20          THE COURT:  To me, it's largely a legal issue --

21          MR. HIGGINS:  -- we're not expecting to --

22          THE COURT:  -- which I already identified to your

23   colleague earlier today.

24          MR. HIGGINS:  Okay.  Thank you, Your Honor.

25          MR. SHORE:  So if I might, Your Honor, can I ask -

Page 222

1    - technically, our letter has been extended to 6:00 tonight.

2    Let me -- if I could talked to the U.S. Trustee and see if

3    we can't just work with that in a manner that --

4              THE COURT:  Yeah.  It sounds to me that --

5              MR. SHORE:  -- my guess is --

6              THE COURT:  It sounds to me that this is -- that

7    this discovery is not going to go forward.  You just have to

8    get something in writing, and I'll grant that extension.

9              MR. SHORE:  Thank you, Your Honor.

10             THE COURT:  And I don't know what the other

11   discovery that's being sought is, and I agree with Mr.

12   Hurley that it makes sense for the parties to speak first

13   before raising the issue with me.

14             But I tend to agree with both Mr. Edmunds and Mr.

15   Higgins that this shouldn't be a big litigation festival.  I

16   mean, I really think that the movants themselves aren't

17   looking to do that.  And I understand that there are

18   balancing of harms issues that the objectors may want to

19   submit evidence on, and the movants are certainly entitled

20   to take discovery on that, and cross examine, and the like.

21   But there's a lot already in the record.  And if the parties

22   are largely intending to stay with that record, then I would

23   recommend that the parties -- all the parties do that.

24             In that regard, I do have a problem with some of

25   the items in the U.S. Trustee's designation of record in

Page 223

 1    support of its motion.  A number of these things are not

 2    evidence, Mr. Higgins.  And I'm not quite sure what the

 3    purpose is of them.  I mean, that would include, for

 4    example, six objections to the plan that were filed after

 5    the objection deadline, and most of which were filed after I

 6    ruled.  So I mean, that just doesn't -- you know, I don't

 7    think you need it.  I don't think that helps your case any,

 8    and I would hope that the parties will agree on the

 9    methodology that you and Mr. Edmunds outlined, which is, you

10    know, filling in your brief with cites to the record.  But

11    obviously those cites need to be evidence.  They can't be,

12    you know, some -- and that includes a hearing in Congress.

13    That's not evidence, particular one that --

14            MR. HIGGINS:  Sure, Your Honor.

15            THE COURT:  -- was scheduled apparently to

16    highlight the testimony of someone who had a live issue

17    before me, I think in part to influence me outside of the

18    courtroom, which I find truly outrageous.  So it's not

19    evidence, but you guys can work that out.  I'm sure you're

20    able to resolve that.

21            And I reiterate that while this hearing is

22    important, it seems to me, given the schedule that Judge

23    McMahon has outlined, and her understanding of already the

24    balance between the public interest and irreparable harm,

25    and of course she will have dealt with the merits, that --

Page 224

1   before, I believe, the plan would ever go effective, the

2   parties seriously consider what judges in these situations

3   fairly often do where there is an expedited appeal, reaching

4   an agreement to have a stay in place for a brief period

5   after a ruling by Judge McMahon on the merits of the appeal

6   that gives her the opportunity, and you, to have the type of

7   hearing before her that you were planning to have in front

8   of me on the 9th.  I think you all should seriously consider

9   that.  She will have had the benefits then of full briefing

10  on the merits and can certainly analyze that prong, and it

11  would obviate the need for two hearings.

12          Now, you may want to set some record here, and I

13  don't know whether the U.S. Trustee still wants to pursue

14  the stay on the September 15 order.  I think I should have a

15  hearing on that, although I think you know where Judge

16  McMahon is on that, and I think you can assume that's where

17  I am on that.

18          So I am sympathetic to the statements by Mr.

19  Higgins and Mr. Edmunds that perhaps the parties can

20  stipulate that by agreeing to a stay, say for 10 days or 10

21  business days or 10 days after the issuance of Judge

22  McMahon's ruling, the parties will not hold that agreement

23  against anyone as far as any future requests for a stay, but

24  that would apply so that you don't have to have two hearings

25  and spend the money that could otherwise be going to

Page 225

1    victims, one way or another.

2           So that's not a ruling, of course, but it's a

3    suggestion and a fairly strong one.  I suppose you all play

4    this out not just in my court but in the court of public

5    opinion, but frankly, that's not a court, and I think that

6    it's just a foolish exercise to do that.  But I will hear

7    you all if you don't reach that type of agreement, and you

8    may want to set out the record so that you can have it, and

9    that's fine with me.  And that's also acceptable to me, but

10   I would not be averse to that type of agreement either.

11          So I don't know if anyone has anything more to say

12   on the pretrial conference, prehearing conference.  No?

13          MR. SHORE:  Your Honor, nothing on the pretrial

14   conference, but I've got one other issue to address today.

15          THE COURT:  Okay.

16          MR. SHORE:  Under the confirmation order, the

17   1129(a)(4) applications are due Monday would be -- which

18   would put it as a setting on the November 18th omnibus.  I

19   can't do that date.  Do you want me just to -- do you want

20   to move it to the December and move out the deadline?

21          THE COURT:  Yeah.  I think we should move it.  I

22   mean, you're still working.  Among other things, I'd have to

23   have two hearings.  I'm trying not to have two hearings on a

24   lot of different things.

25          MR. SHORE:  Right.  So if we could -- if we could

Page 226

1    just provisionally then set it for the December 16th omnibus

2    --

3             THE COURT:  That's fine.

4             MR. SHORE:  -- and have the papers come in no

5    later than December 2nd, and then we'll at least have had --

6    you know, we'll have certainly a, I hope, a ruling from

7    Judge McMahon before that hearing would --

8             THE COURT:  That's fine.  You can tell Ms. Li that

9    I agreed to that.  And I don't know whether the school

10   district has that same issue or not.  I guess they're not

11   really involved in the appeal process, so I guess they could

12   go forward on the --

13            MR. SHORE:  Thank you, Your Honor.

14            THE COURT:  -- on the other date.

15            Okay.  All right.  So hearing nothing more on the

16   pretrial conference, that concludes today's hearings.

17            (Whereupon these proceedings were concluded at

18   4:07 PM)

19

20

21

22

23

24

25

Page 227

1                           I N D E X

2

3                            RULINGS

4                                           Page        Line

5    Motion to File Proof of Claim after Claims

6    Bar Date filed by Emanuel Thirkill

7    (ECF #3764) Granted                    30          5

8

9    Motion to File Proof of Claim after Claims

10   Bar Date filed by Howard Adelglass

11   (ECF #3840) Denied                     38          5

12

13   Motion to Allow/Letter - Derivative and

14   Fraudulent Conveyance filed by Ronald Bass,

15   Sr. (ECF #3619) Denied                 48          2

16

17   Certification of Direct Appeal to Court of

18   Appeals / United States Trustees Memorandum

19   Of Law In Support Of Motion To Certify

20   Direct Appeal To The Court Of Appeals Under

21   28 U.S.C. § 158(d) [ECF No. 3868] Granted  50      9

22

23

24

25

Page 228

1                          **I N D E X**

2

3                           RULINGS

4                                            Page        Line

5    Joinder of Certain Canadian Municipality

6    and First Nations Creditors and Appellants,

7    in Support of the 5 Motions by the Office

8    of the United States Trustee and the

9    Appealing States for Certification of a

10   Consolidated and Expedited Direct Appeal

11   to the Court of Appeals for the Second

12   Circuit [ECF No. 3913] Denied              202         16

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 229

1    26

2                                                        Page 229

3    1                    C E R T I F I C A T I O N

4    2

5    3        I, Sonya Ledanski Hyde, certified that the foregoing

6    4    transcript is a true and accurate record of the proceedings.

7    5

8    6

9    7

10   8    Sonya Ledanski Hyde

11   9

12   10

13   11

14   12

15   13

16   14

17   15

18   16

19   17

20   18

21   19

22   20   Veritext Legal Solutions

23   21   330 Old Country Road

24   22   Suite 300

     23   Mineola, NY 11501

25   24

     25   Date:  October 16, 2021

[& - 2005]                                                                                          Page 1

## &

**&**   22:8,15 23:1,19
24:1 30:6 34:24
83:10 86:13
138:18 140:19
146:3 147:15
217:12

## 0

**0**   7:11 9:17 11:20
187:16
**013**   199:8
**06604**   21:18
**07102**   22:19
**08625-0106**   21:11

## 1

**1**   5:16 50:7 59:19
64:2 110:12 126:6
150:5 198:18
204:13 206:4,24
229:3
**1,000**   144:12
**10**   224:20,20,21
229:12
**100**   137:10
**10014**   20:17
**10017**   20:6
**10020-1095**   24:4
**10022**   23:22
**10036**   23:15
**10036-6745**   23:6
**1006**   20:16
**10110**   22:11
**105**   91:1
**106**   97:9,10 116:8
177:4
**10601**   1:14
**107**   96:24
**109**   121:2 191:6
**10:16**   1:17
**11**   14:10,14 16:4,7
16:24 17:2,18,22
18:12,15 19:9,13

**38**:17 43:16 45:4
46:18 49:11 72:2
106:10 124:5
179:6 229:13
**111**   111:21
**1123**   91:7
**1129**   173:18
225:17
**113**   118:10
**115**   31:10 37:13
118:7
**11501**   229:24
**1158**   109:8
**116**   118:7
**117**   124:19
**1172642**   120:15
**1177**   23:14
**12**   110:10 143:21
143:21,24 144:3,5
189:16 190:11,12
198:20 229:14
**1201**   22:18
**121**   37:21
**12151**   229:9
**122**   31:10 96:24
**122-23**   37:13
**1221**   24:3
**126**   187:17
**13**   189:15 210:19
229:15
**132**   187:9
**1334**   45:17 97:5
**13th**   121:23 203:8
**14**   1:16 2:1 122:4
229:16
**140**   121:1
**141**   88:12 110:4
**142**   187:9
**143**   88:2
**14th**   50:6
**15**   177:16 179:14
202:17 224:14
229:17

**15,000**   144:12
**154**   181:6
**158**   3:15 4:11 5:2
5:11,18,22 6:4,7
6:13 7:4,11 8:2,11
8:16,19 9:4,17
10:5,18 11:20
12:5,18 51:11
52:21 77:2,24
80:13 89:11 92:21
92:25 104:15,16
105:21,22 106:1
108:6,8,16 110:12
114:12 116:18,18
117:1,9 120:9
121:5,25 123:5
124:7,13,18,22
128:18 130:5
132:13,21 133:5
136:4 170:6
179:24 180:24
183:22 184:19,22
186:3 187:13,25
188:7 191:9
192:11 195:23
198:2 200:3
201:23 202:5
227:21
**158's**   119:4
**16**   109:22 115:5
228:12 229:18,25
**160**   128:7 186:3
**161**   187:2
**16th**   56:17 58:22
158:5 185:24
226:1
**17**   229:19
**17689**   190:11
198:20
**177**   187:17
**18**   144:13 199:9
229:20

**18th**   33:11 121:20
225:18
**19**   31:25 44:8,12
229:21
**19-23649**   1:3
**1980s**   90:11
**1988**   109:24
**1989**   161:17
**199**   37:22
**1992**   106:25
109:25
**1993**   31:9 36:23
**19th**   129:9 217:3
**1st**   136:1 156:7
176:6 209:5,6

## 2

**2**   5:2 6:13 8:2,11
8:16,19 9:4 10:18
12:18 36:6 52:21
64:2 82:15 89:11
90:6 109:8 115:9
120:15 121:8
124:13,18,22
128:18 130:5
150:5 151:13,13
165:24 170:6
179:24 180:24
184:19 186:3
187:13,25 189:9
191:9 192:11
195:23 200:3
201:23 207:2
227:15 229:4
**2,000**   220:3
**2.09**   52:12
**2.5**   36:10
**2.9**   157:2
**20**   111:1 121:7
229:22
**200**   22:3
**2000**   37:22
**2005**   31:10 37:14
110:8 181:8

**2007**   161:13 181:6
**2009**   188:8 190:3
190:4,15
**201**   20:16
**2010**   36:20 120:15
191:21,22
**2011**   128:11
191:20 198:18
**2012**   131:21
**2013**   128:20 199:9
**2014**   187:10
190:11,12 198:20
**2015**   108:8 121:20
190:10 192:22
**2016**   96:24 121:23
187:9,11 189:18
199:11
**2017**   197:16
**2018**   33:25 34:17
38:1 115:12 190:2
190:3
**2019**   189:15,16
197:7
**202**   228:12
**2020**   143:22 144:3
144:18 187:17,18
191:7
**2021**   1:16 2:1 3:8
32:18 33:15 36:5
36:6 94:7 143:21
143:24 144:6
179:14 185:24
202:18 229:25
**20530**   21:4
**206**   87:4
**20852**   22:4
**209**   115:8
**21**   229:23
**212**   37:21
**21st**   23:21
**22**   229:24
**229**   229:2

**2298349**   190:2
**22998349**   115:12
**22nd**   129:9
208:22,23
**23**   32:18 33:15
36:5 122:3 229:24
**230**   118:22
**2355705**   115:8
**23rd**   36:8
**24**   100:15 190:15
196:11 229:25
**248**   1:13
**249**   91:2
**25**   21:10 102:12
187:18 229:25
**2576**   189:15
**26**   229:1
**27**   5:2 8:2 10:18
12:18
**28**   3:15 4:3,10
5:11,18,21 6:4,7
6:12 7:3,10 8:10
8:15,19 9:4,16
10:4 11:19 12:4
45:17 52:21 55:1
92:21,25 170:6
179:24 180:24
182:7 187:24
190:3 191:23
200:2 227:21
**293**   110:5
**29th**   209:3
**2:00**   209:6
**2d**   31:10 37:13
96:24 192:22
**2nd**   161:13,17
181:6 226:5

**3**

**3**   54:19 115:12
190:2,11 199:24
219:21 229:5
**30**   112:8 190:4
199:24 203:3

**215**:15 227:7
**300**   1:13 229:24
**30th**   76:4 81:25
94:10,17 129:10
139:15 146:14
200:10 211:23
212:4
**31**   128:10 198:18
**330**   229:23
**34**   128:11 141:6
198:18
**3484**   13:14 16:21
17:15 18:9 19:6
**3619**   2:20,23 3:3,9
227:15
**363**   159:14
**3686**   3:21 4:4 7:4
9:17 11:20
**3721**   3:3,10
**3726**   14:16 16:9
17:4,24 18:17
19:15
**374**   120:16
**3764**   2:5 30:10
227:7
**3773**   13:14 15:6
15:25 16:21 17:15
18:9 19:6
**3776**   13:5,20
14:24
**3777**   3:15 13:5,20
14:23
**3778**   13:7,21 14:6
14:24
**3779**   14:7,24
15:19
**3786**   14:11 15:6
15:24 16:5,25
17:19 18:13 19:10
**3787**   14:17 15:6
15:25 16:10 17:5
17:25 18:18 19:16

**3789**   16:1
**3799**   3:15 14:23
**38**   227:11
**380**   31:9 36:23
**3801**   14:25
**3803**   15:7,15
**3804**   15:16
**3810**   17:8
**3838**   15:21
**3840**   2:8,12,16
227:11
**3845**   16:14
**3847**   17:8
**385**   120:20 191:19
**3860**   17:8
**3868**   3:17 4:12,18
5:3,12,22 6:18
7:12,19 8:3 9:10
10:6,13,19 11:6
11:13 12:6,13,19
227:21
**3869**   5:13,22
**3870**   5:23 6:8
**3871**   3:21 4:4,12
4:18 5:3 6:14,18
7:4,12,19 8:3 9:10
9:17 10:6,13,19
11:7,13,20 12:6
12:13,19
**3872**   8:12
**3873**   18:3
**3874**   3:21 4:4,12
4:18 5:3 6:18 7:4
7:12,19 8:3 9:6,10
9:17 10:6,13,19
11:7,13,20 12:6
12:13,19
**3875**   6:8
**388-389**   120:20
**388-89**   191:19
**3881**   8:21
**3885**   2:12,16

**3890**  18:21
**39**  144:16 156:2 177:22
**3901**  30:17
**3905**  2:25
**391**  121:22 137:3
**3910**  3:5
**3911**  2:17
**3913**  4:4,12,18 7:5 7:13,19 9:18 10:7 10:13 11:9,21 12:7,13 228:12
**3932**  3:23 6:20 9:12 11:15
**3933**  4:5,12 7:5,12 9:18 10:6 11:21 12:6
**3934**  4:14 7:15 10:9 12:9
**3935**  4:20,24 7:21 10:15 12:15
**3936**  5:5 8:5 10:21 12:21
**395**  31:9 37:5
**3d**  37:22

**4**

**4**  225:17 229:6
**4,924**  135:10
**40**  192:7
**408**  121:1 188:8 191:20
**409**  190:14 191:23 196:11
**416**  110:4
**419**  31:10 37:13
**42**  121:2
**4244**  188:8
**43**  214:13 215:6
**434**  36:20
**44**  191:21
**441**  21:3
**449**  128:10 141:6 198:18

**45**  110:11 192:22
**450**  20:5
**452**  120:20 191:19
**453**  197:15
**46**  141:25
**461**  197:21
**462**  197:25
**470**  120:16
**48**  160:18 227:15
**484**  108:15 128:6 181:5 183:22 188:7
**4:07**  226:18

**5**

**5**  128:21 190:4 227:7,11 228:7 229:7
**5.06**  185:24 191:8 196:10
**50**  118:19 227:21
**500**  22:10
**504**  187:10
**507**  31:9 36:23
**52**  144:18
**523**  66:8,13
**524**  87:4
**5272937**  128:21 199:9
**534**  190:9
**54**  144:13
**543**  123:16 189:17 199:10
**548**  46:24
**551**  121:1 187:9 192:7
**57**  110:11
**570**  22:18
**576**  197:15
**599**  197:6

**6**

**6**  91:7 198:19 215:15 229:8

**600**  23:21
**6007410**  108:8
**606**  190:9
**611**  190:9
**614,000**  104:11
**6150**  21:3
**618**  121:2 191:6
**62**  197:22
**65**  144:15
**650**  96:23
**67011**  190:4
**676**  110:11 192:22
**688**  161:17
**6:00**  222:1
**6th**  30:23

**7**

**7**  44:21 173:18 229:9
**7019**  44:7,16,17 44:22,25
**703**  123:16 189:17 199:10
**708**  189:17
**71,000**  220:5
**71.1**  144:2
**716**  123:16
**716-17**  199:10
**717**  197:6
**72,000**  143:25
**728**  197:6
**740**  110:9
**75**  144:7
**75.2**  144:4
**754**  187:10
**77**  36:20
**770**  187:10
**7th**  176:6

**8**

**8**  229:10
**8,000**  203:19
**80**  137:17
**80,000**  114:21

**8002**  180:24
**8006**  180:24
**8007**  13:5,19 14:6 14:23
**81**  110:9
**812**  191:22
**82**  36:20
**83**  121:20 131:8
**830**  96:23
**84**  161:13
**850**  21:17
**855**  161:13
**88**  111:13
**884**  161:16
**89590**  3:9

**9**

**9**  113:13 191:22 203:17 204:1 227:21 229:11
**9/15/2021**  13:9 16:16 17:10 18:4 19:1
**9/17/2021**  14:10 14:16 16:5,9,25 17:4,19,24 18:13 18:17 19:10,15
**90**  144:7
**9006**  30:21 31:6 32:14 36:13
**9014**  44:20
**9017**  214:12 215:5
**9019**  115:14
**93**  110:9
**96,000**  143:23
**960**  110:5
**99**  78:3 137:16
**99-107**  161:13
**99.9**  137:10
**9th**  94:7 121:21 154:2 203:14 204:19 206:17 209:8 210:18 212:5 221:3 224:8

**a**

abatement  52:4
  120:6 137:5
abating  139:8
ability  74:25 75:2
  112:2 120:4
  156:14
able  34:25 78:14
  115:25 148:7
  184:16 204:5
  209:10 223:20
abrams  24:13
abrogated  116:10
absence  190:7,8
absolutely  116:23
  135:23 151:19
absolve  216:18
abuse  136:5
accelerate  75:17
  75:20
accept  73:11 76:4
  79:21 81:4 142:11
  142:14 163:22
  183:13 200:13
acceptable  225:9
acceptance  75:16
  77:22
accepting  74:25
  75:9
accepts  94:20
  142:12
access  100:14,15
  207:6
accommodating
  139:14
accompanied
  184:4
account  53:15
  87:25 88:1,4 92:2
  199:16
accounted  144:2,4
accounts  114:4

accurate  229:6
achieved  139:17
acknowledgment
  38:2
acquire  196:8
act  36:18 53:8
  75:9 96:11,16,22
  124:2,6,11 174:5
  174:16
acted  37:5 75:5
acting  55:7
action  42:3 44:14
  45:1,3,15,15,18
  45:21 47:4 88:14
  220:9
actions  86:4
  161:11 169:11
  212:23
active  208:15
activities  46:1
activity  202:2
actors  45:23
acts  167:23
actual  104:1
  105:4 112:11
  132:21
ad  4:7,13 5:1,4
  7:7,13 8:1,4 10:1
  10:7,17,20 12:1,7
  12:17,20 23:12
  24:2 30:13 49:23
  49:24,24 103:16
  103:18 104:2
  138:18 139:8
  147:15 181:15,16
  208:8,10,10
  217:13
add  42:24 53:18
  72:22 79:25 85:19
  114:15 152:11
  171:25 174:19
  177:3

added  214:18
  215:8
addiction  46:4
  144:12,14
addictive  34:9
addition  30:12
  38:14 39:3 43:23
  45:14 49:17 50:2
  188:9 189:1 192:2
  193:12 194:12
  200:20 206:25
additional  54:17
  70:23 91:11 143:4
additionally  97:8
address  57:11
  96:7 116:2 141:1
  161:1,6 162:25
  179:12 183:3
  193:24 210:15
  213:11,12 217:14
  219:20 225:14
addressed  49:12
  56:11,23,25 60:10
  77:15 85:7 104:15
  104:16 113:19
  127:12 141:20
  156:24 158:3,6,16
  161:7 167:9 171:7
  172:6 188:9
  192:16,18,23,24
  193:6 194:10,14
  217:23
addresses  107:19
  128:12 159:10
  194:4
addressing  35:7
  50:14 115:15
  173:11 176:12
  185:10
adds  211:18
adelglass  2:8,12
  24:9 32:16,20,22
  32:24 33:9,11,13

33:16,25 34:8,17
  35:4,13 39:11,13
  227:10
adequacy  57:21
adhered  57:8
adjectives  107:20
adjustment  201:2
administer  45:7
administered
  43:18
administerial
  212:25
administration
  2:22 43:19
administrative
  212:25 218:19
  219:2,19
administratively
  179:15
admission  56:24
  59:6
admits  189:13
admitted  33:18
  112:11 129:12
admittedly  57:7
adopt  53:11
  186:25
adopted  89:25
  101:19 136:10
  190:8
ads  117:25,25
adult  151:14
advance  70:16
  71:13,14,16 80:14
  82:7 93:1,7,9,9
  96:2 116:24
  120:23 121:11
  123:7 125:7 127:8
  141:2,17 149:3
  180:20 184:20,24
  191:16 198:6
  204:1 209:14

advanced  143:18 198:23
advancement 128:17,18
advances  16:13
advancing  185:12 198:21,22
advantage  166:25
adverbs  107:21
adversary  44:8,12 44:19
adversely  79:1 185:3
advise  204:19
advised  98:24 103:19 203:12
advisory  154:1
aegean  60:7,8,9 66:18 67:1 69:17 69:25 113:4 126:17 160:6 197:6
afanador  22:15
affect  111:24 192:1
affiliated  14:15 16:8 17:3,23 18:16 19:14
affirmative  96:12 211:16
affirmed  153:5 218:3
afforded  66:11
afield  102:22
afternoon  138:6 146:7 179:2 205:18
agenda  2:1,1 29:4 29:10,14,15 203:1
aggressive  52:8 76:1
agnostic  150:13

ago  33:1,22 36:12 69:2 101:1 102:8 106:16 109:22 172:1 201:5
agree  52:7,13 72:2,23 74:11 78:2,17 80:17 93:24 98:9 107:12 119:22 121:6 122:17 125:21 127:3 134:24 135:1,13 154:9 193:22 203:16,17 222:11,14 223:8
agreed  116:6 124:12 187:18 204:10,24 205:14 207:24 208:16 226:9
agreeing  207:25 208:3,8 212:2 224:20
agreement  52:11 52:15 91:15,21 134:3,6,9,10 135:13,14,24 136:18 140:24 150:19 157:3,6,9 157:13 158:1 206:18 207:23 208:19,20 209:17 216:15,16 224:4 224:22 225:7,10
agrees  55:18 65:22
ahc  103:22
ahead  126:24 138:10,11,12,14 146:2 187:14
aid  128:4
aimed  188:24
air  114:14

akin  23:1 140:19 205:12 206:4,9,24 207:1,13
al  4:20,23 7:21 10:15 12:15 29:3 40:7 179:3
alacrity  142:15
albeit  179:11 193:23
albenze  27:8
aleali  24:14
alexander  25:18
alice  26:23
allegations  35:12
allege  111:3
alleged  38:1 46:3 47:9,14 101:3 112:11
allen  11:7 18:1 22:21 92:13
allison  27:3
allocate  38:21
allocation  151:3
allotted  99:19
allow  2:19 83:3 165:12 227:13
allowed  115:22,25 116:25 131:22 132:12 135:19 156:10
allowing  128:9 165:10 187:1
allows  91:3 159:18 164:20 165:20 166:25 220:25
alternative  41:3 192:13 198:1
alternatively  199:18
alternatives  40:21
altogether  128:20

amanda  24:12
amazing  127:10
ambiguity  189:13
ambiguous  184:13
ambush  116:3 117:13 177:25 178:3
ambushed  103:7
ameliorate  120:5
amended  6:1 8:14 14:10,14,19,19 16:4,7,24 17:2,18 17:22 18:12,15 19:9,13 44:3,4 45:13 90:14 110:17 118:11 135:22 157:6,13 157:14 197:24 201:7 211:17 221:9
amending  131:20 135:21
amendment  91:22 118:22 157:11,22 184:2 191:2
amendments  181:8
america  23:5 118:25
american  99:6 118:4 121:1 156:15 188:7 191:20
americas  23:14 24:3
amount  32:6 133:3 134:13,14
analogous  114:12
analysis  36:15 76:10 185:21 194:22 195:10

**analyze**  224:10
**analyzed**  197:22
**andrew**  26:22
  27:1
**andrews**  24:15
**angelos**  110:10
**ann**  25:17,19
  27:18
**anne**  24:15
**annie**  28:8
**annotated**  215:22
**announced**  54:22
**answer**  57:11
  75:19 82:14
  112:19 121:18
  131:12 133:1,25
  134:7 135:22
  155:5,8,13 156:12
  156:12 162:3
  163:15 165:12
  175:7,10,20 176:9
  176:10
**answered**  106:16
  124:4 217:25
**answering**  76:19
  186:8
**answers**  83:1
  101:8,10
**anticipate**  95:8
**anybody**  152:17
  154:10 162:18
**anybody's**  98:4
  109:1
**apartment**  34:5
  155:7
**apologies**  101:5
  151:10 205:20
  206:8,13
**apologize**  42:20
  69:7 155:25
**apparent**  92:15
  128:14 214:24

**apparently**  40:4
  69:10 162:23
  223:15
**appeal**  3:12,14
  4:2,9,17 5:10,17
  5:21 6:3,7,11 7:2
  7:9,18 9:1,2,15
  10:3,12 11:5,18
  12:3,12 13:2,4,16
  13:19 14:5,19,22
  15:5,15,24 16:12
  17:7 18:1,20
  29:10,12 49:10
  51:13,19,20 52:18
  52:19,22 53:5,11
  53:17,18,18 56:12
  58:25 59:8 63:6
  70:16 71:8,10,21
  72:21,24,24 73:3
  73:8,11,20 74:14
  74:25 75:12,16
  76:14,22 77:13,23
  78:9,24 79:1,9,9
  79:21 80:12,14
  81:5,7,13,21 82:5
  82:25 84:21 89:13
  89:24 90:19 91:12
  91:18 92:25 93:2
  93:5,9,11 94:16
  94:24 97:14,16,16
  98:8,13,14,15,23
  99:11 101:20
  106:8,13 108:1,4
  108:13,21 115:7
  118:19 120:21
  121:19,22 122:17
  127:8 128:5 129:7
  129:21 130:6,12
  130:20,21 131:3
  131:13 133:9
  134:18 136:12
  137:14 139:21
  141:2,11,18 145:5

  145:7,8,14,18
  146:16 153:17,22
  154:12 160:5
  162:4 163:1,22
  165:3,11,12,20
  166:5,11,15 167:7
  169:3,7,15 172:3
  172:7,15,16,17
  179:5,13,22 180:1
  180:6,8,16,19,21
  180:23 181:1,11
  182:5,17 183:14
  184:2,9,19,21,23
  185:13,14 186:2
  186:13 187:4,6,15
  189:6 191:11
  192:4,9,15,17
  193:12 194:3,8,16
  194:20 195:12
  196:8,13 198:2,5
  198:7,22 199:7,13
  199:20 200:3,5,7
  200:13,21 201:12
  201:25 202:17,25
  203:4,10 204:9
  208:5,15 211:1,6
  212:3 215:4
  218:23 224:3,5
  226:11 227:17,20
  228:10
**appealed**  49:16
  99:11 129:3
**appealing**  6:10,12
  8:9,14,18 9:3 11:4
  41:20 49:15 55:5
  84:4 86:3 87:21
  87:24 96:1 125:5
  145:1 169:1 179:8
  179:20 193:18
  228:9
**appeals**  3:13,14
  3:20 4:3,10 5:11
  5:18,21 6:4,7,11

  6:17 7:3,10 9:2,9
  9:16 10:4 11:6,12
  11:19 12:4 55:4
  58:12 66:19 70:5
  73:4 74:24 77:1,3
  77:18 92:15 96:9
  97:4 108:10
  109:10,10 127:25
  128:2,3,8 129:7
  137:10,11 140:8
  169:16,17,22,23
  170:1,3,5 180:6
  180:10 181:18
  182:5,12,13,16
  183:19 185:5,16
  185:16,22 186:11
  186:17,17 187:8
  188:12 189:3,5
  199:22,25 202:22
  211:24 227:18,20
  228:11
**appeal's**  120:11
**appear**  47:20
**appeared**  168:7
**appearing**  51:8
  83:20 149:2
  203:13
**appears**  35:11
  37:24 172:6
  188:25 195:14
**appellant**  52:25
  154:14 155:3
**appellants**  11:2
  52:17 72:18 92:14
  98:2 103:24
  107:25 115:11
  116:16 117:4,7
  142:2,6 143:14
  151:22 152:20,21
  153:23 154:21
  228:6
**appellant's**
  131:12

appellate 55:1
73:9 82:15 89:19
97:7 128:2 129:8
131:10 133:10
134:21 139:14
141:8,10 145:10
145:14 165:24
166:13,21 179:23
182:10 184:6
195:17 198:14
199:3,19 200:10
appellee 155:2
appellees 52:17
55:7 74:13 152:21
152:22,25 164:18
181:18
appellee's 87:21
apples 159:23
applicability
44:15 193:13
applicable 165:6
application 95:17
107:22 115:14
193:3
applications
225:17
applied 120:25
126:17 146:22
171:11 178:9
185:15,16 203:23
210:9
applies 39:1 44:8
64:2 96:16 171:9
180:6
apply 31:21 37:18
44:17 88:15 97:10
97:12 114:17
125:17 163:2
169:6 195:15
197:22,23 198:3
198:17 199:21
224:24

applying 37:6
89:11 127:5
177:17,18 193:19
appreciate 49:5
50:2 54:5 79:4
97:21 98:18
156:22 176:25
apprehensible
138:2
approach 183:12
187:4 190:13
approached
146:22
appropriate 51:1
78:3 108:13 110:3
113:7 119:2,3
125:20 136:3
151:5 181:2 182:7
184:10,23 194:8,9
210:24
appropriately
202:24
approval 185:4
approve 55:12
95:18
approved 52:11
56:15 91:21
approximately
104:9 143:23,25
144:12
apt 182:4
aptly 171:8
ardavan 9:4 25:4
area 89:19
areas 76:20 186:9
aren't 100:20
arguable 97:12
arguably 110:18
argue 35:19 124:8
168:6 171:13
187:23
argued 53:22 57:4
71:24 85:24

130:20 139:3
140:24 158:6
189:6 193:18
arguing 54:4 73:7
95:21 165:19
190:7,8
argument 35:11
37:25 40:11 51:6
51:23 69:7 70:6
76:4 80:3,6 81:25
83:24 87:21 98:22
104:13 105:21
109:1 112:14
114:8 115:11,18
116:24 119:11,14
119:20 123:2
125:7 127:11,19
127:23,25 128:13
129:9,18,19,20
130:13,25 131:2
131:17 139:2,20
141:24 142:21
146:13 150:2
152:11 163:18
165:10 168:2,3,6
168:7,14 171:1,17
172:2 173:19
188:15,15,20
189:7 194:7,8
199:24 200:10,17
219:23,23 221:8
arguments 83:4
85:25 90:2 96:8
101:7 103:20
105:23,24 109:19
114:12 115:19,22
116:15 131:24
138:22 153:17
156:24 164:16
166:10,15 169:5
174:10 177:23,25
182:4 189:23,25
190:1 192:8

194:10 201:21
arik 23:8 138:10
140:18
arising 46:4
arms 220:20
array 98:3 101:2
arrested 33:4,7,7
33:10 34:13,15
38:6
article 33:18
92:17 131:15,15
articulated
120:25 127:24
220:24
articulations
182:1
artificially 115:13
asarco 59:14
aside 109:19
114:18 117:3
143:11 204:20
asked 77:22 80:6
81:1 95:8,10 96:4
119:20 121:15
122:5 126:15
146:9 160:8 161:1
176:9 178:2
190:20 193:2
212:17 217:17,18
asking 58:22
78:16 79:18 80:25
89:13 105:18
132:15 136:17
149:19 153:16,21
154:11,12,18,18
aspect 117:3
192:11,13 201:2
aspersions 68:17
68:20,24 70:3
aspirations
128:14
assert 44:16 45:21
145:4 161:24

174:10
**asserted**   36:9
  37:17 43:20 45:1
  46:7 47:18 53:14
  160:18 194:14,19
  194:19,20 197:16
  220:24
**asserting**   105:11
  169:4 193:21
  218:6 219:7
**assertion**   47:23
  67:12,14 105:8
  193:23
**assertions**   45:12
  211:15
**asserts**   31:24 46:5
**assess**   220:20
**assessment**
  173:18
**assessments**
  173:17
**assiduously**
  115:25
**assigned**   129:7
**assist**   214:15
**associates**   31:8
  36:22
**assume**   94:14
  98:1 153:18
  177:10 224:16
**assumed**   58:17
**assumption**
  118:23
**assurance**   142:13
  212:24
**assuredly**   127:22
**atkinson**   24:16
**attachment**   47:8
  47:11,15
**attack**   123:4
**attacking**   105:23
**attempt**   115:6,13
  122:25 148:18

166:4 174:16
  179:12 202:20
**attempted**   117:11
**attempting**   123:4
  147:18
**attorney**   21:8
  22:1 39:21 99:2
  171:1
**attorneys**   20:4,15
  21:2,9,16 22:2,9
  22:16 23:2,12,20
  24:2 34:1 50:15
  212:11
**audacity**   117:3
**augment**   217:15
**august**   121:21
  189:16
**authorities**   54:21
**authority**   58:8,15
  59:7,17 63:23
  64:2,6 65:17,21
  67:20 89:3 92:17
  106:17 108:25
  124:24 179:21
  211:3 219:18
**authorization**
  78:14
**authorize**   111:4
**authorized**   54:22
  55:23 148:12
  179:14
**authorizing**   13:10
  16:17 17:11 18:5
  19:2 49:13
**auto**   122:6,8
**automated**   178:25
**automatic**   15:3,12
**automotive**
  190:10 198:19
**available**   132:7
  209:7,13
**avenue**   20:5 22:10
  23:14,21 24:3

96:23
**average**   152:8
  165:15
**averse**   225:10
**avoid**   40:6 46:25
  134:21 183:21
**avoidable**   129:4
**avoidance**   116:5
  118:21
**aware**   35:13
  37:25,25 65:13
  74:4 128:7 134:8
  146:12,14 176:7
  182:19 208:17
  211:5
**awry**   70:19

**b**

**b**   1:21 52:21 91:7
  145:12 150:5
  151:13 173:21
  179:24 181:5
  215:15
**b.r.**   36:20 120:16
  120:20 121:1,2,2
  123:16 128:10
  141:6 187:9,10
  188:8 189:17
  190:9,15 191:6,19
  191:21,23 192:7
  196:11 197:15
  198:18 199:10
**back**   35:12 38:1
  42:17 69:10 70:10
  79:11 90:15 92:21
  93:23 99:25,25
  106:25 107:17
  117:11 125:6
  142:8,9 156:17
  161:14 168:13
  178:24 206:1
  211:23 212:3
  216:17

**balance**   145:4
  149:21 223:24
**balanced**   139:16
**balancing**   166:20
  220:20 222:18
**ball**   24:17
**baltimore**   22:4
**bank**   23:5 108:8
**bankr**   197:6,16
**bankruptcy**   1:1
  1:11,23 13:5,19
  14:5,23 30:21
  31:6 32:14 36:13
  40:21 42:9 44:1,7
  44:15,20,21 45:18
  45:19,19 46:24
  52:21 56:14,20
  57:19 58:7,14
  59:11,15,17 62:7
  64:16 65:10,21
  66:7 68:18 70:22
  71:24 72:2,19
  76:16,20 77:2,16
  78:11 79:13 87:18
  88:21 89:2 90:14
  97:10 106:10,21
  109:9 111:11,13
  112:4,22 113:2
  118:5 123:13
  128:19 137:10
  140:3 148:8,15
  158:23 160:25
  166:12 168:10
  180:23 181:10
  184:3,6,25 185:11
  185:17,23 186:6,9
  186:14,17,19
  187:11 188:21
  189:15,16,17
  190:15 191:2,4,6
  191:7,21,22 194:3
  194:4 195:6,7
  196:10 197:4,18

198:19 200:25
201:9,9 203:19
211:25
**bar**  2:4,7,11,15
31:18,22 35:16
36:11 38:15,16,16
124:13 227:6,10
**barely**  49:11
**barker**  24:18
**barred**  178:1
**barring**  47:5
**bars**  177:22
**baseball**  73:22
**based**  30:10 37:14
37:24 42:25 45:22
46:3,7 47:8,18
48:19 52:23 81:19
82:1 90:25 103:8
108:3 127:2,17
131:9 150:7 152:8
157:10 161:11
168:9 184:12
193:14 219:4
**basic**  173:23
**basically**  33:2,8
33:16,19,25 34:12
64:15 66:17
112:15 124:25
129:12 141:23
**basis**  30:16 35:17
36:14 37:23 38:1
45:7 47:2,6,11,13
47:14 63:6 71:8
71:10,20 75:1
79:7 93:9 96:25
97:13,15 98:10
100:6 160:23
161:4,10 164:22
178:3 191:10
197:9 198:1 199:6
199:7
**basketball**  73:23

**bass**  2:20,23 3:9
17:8 24:10 39:15
39:15 40:12,16,18
40:18,24 41:2,8
41:11,15,23 42:6
42:10,12,17 43:14
44:6 45:8,24 46:9
46:19 48:6,12,14
48:15,21 49:5,7
227:14
**bass's**  3:2
**bass'**  44:17
**battle**  119:15
**bear**  85:5
**bearing**  199:24
**beg**  159:24
**began**  103:12
**beginning**  71:12
203:6
**begun**  216:10
**behalf**  2:16,24 3:4
3:16,22 4:13,19
5:4,12,23 6:13,19
7:13,20 8:4,11,20
9:5,11 10:7,14,20
11:7,14 12:7,14
12:20 13:6,21
14:7,24 15:7,16
15:20,25 16:13
18:2 30:6 34:24
43:6,10 83:20
92:13 138:18
140:19,25 146:4
147:15 161:24
168:18 206:10
217:13 221:12
**behavior**  99:15
**belabor**  140:10
**belief**  97:15
**believe**  29:23
50:16,17 51:21
61:19 73:6,25
79:18 84:2 85:3

86:18 90:17 93:8
93:8,13,20,21
95:19 97:25
100:13,16 102:2
114:2 116:16
134:11 137:19
143:11 144:17,21
147:3 148:13
153:13,14 156:6,7
169:22 170:11
171:20 173:2
174:3 176:10
183:4 192:9 193:9
193:14,15 194:1,6
194:13 199:3,21
200:5,7 201:22,24
205:6,12 210:4
211:14 212:1,9
217:3 220:15
224:1
**believed**  184:9
201:10
**bell**  87:3
**belongs**  162:1
**ben**  205:1 210:11
**bench**  14:9 16:3
16:23 17:17 18:11
19:8 29:7 88:12
94:13 111:21
118:10 146:20
211:8
**benedict**  24:19
**benefit**  70:20,23
76:10,22 161:19
186:11 187:23
**benefits**  46:3
82:10 122:9 224:9
**benefitted**  80:9
**benjamin**  20:12
20:19
**bernard**  9:4 25:4
**bernie**  110:9

**bernstein**  61:19
113:9 125:17
197:21
**bespoke**  114:14
**best**  72:17 79:15
130:9,16,19,19
135:20 136:6
139:13,18 152:17
183:2 193:2
**beth**  25:19
**better**  68:18 78:20
120:2 155:24
162:3
**beyond**  36:17
94:24 110:21
119:19 126:11
127:15 128:15
195:16
**bgi**  187:10
**big**  120:17 125:24
222:15
**billions**  118:4
120:7 122:10
137:16 152:1
**binding**  87:7,7
184:6
**bit**  30:19 74:21
82:7 101:5 104:9
141:4 151:16
153:10 212:16
**bkrtcy.d.del.**
199:10
**blabey**  23:17
138:6,10,12,14,17
138:17
**black**  124:12
177:19
**black's**  86:24
**blank**  146:21
**blinders**  197:13
**board**  163:22
**boat**  77:14

| | | **c** | |
|---|---|---|---|

**body** 186:14
**bond** 171:14
  217:24
**born** 187:4
**borne** 79:8
**bottom** 63:22
**bought** 33:3
**box** 207:2
**bpacpa** 181:8
  184:4
**brand** 98:3 101:2
  101:6 108:4 109:1
  114:14
**brandt** 27:9
**brauner** 24:20
**breach** 134:6
  135:24 136:18
**break** 104:20
  178:23
**brian** 16:13 22:6
  25:22 80:1 164:14
**bridge** 102:9
**bridgeport** 21:18
**brief** 40:10 51:6
  86:15 106:2,6
  111:2 113:14
  115:5 121:7,8
  122:3,4 138:23
  140:12 142:19
  146:8 156:19,23
  167:18 168:24
  177:16 178:23,24
  211:17 223:10
  224:4
**briefed** 70:24
  71:24 101:21
**briefing** 52:8
  53:11 64:14 72:5
  72:6,8 74:8 75:24
  76:1,5 101:20
  107:13 129:8,17
  129:17 136:10
  139:24 152:11

172:9 199:23
200:17 204:4
224:9
**briefly** 84:24 92:7
  147:12 164:14
  170:24 174:3
  176:4 179:12
  216:4 219:21
**briefs** 211:15
**bring** 86:7 95:14
  125:6 156:14
**bringing** 53:22
  85:5
**broad** 22:18
**broader** 110:20
  169:3
**broadly** 202:12
**brooks** 24:18
**brothers** 128:20
  199:8
**brought** 39:18
  95:12
**brunswick** 31:8
  36:22
**bryant** 23:4
**bunch** 77:13
  156:4 164:17
  170:4
**burden** 37:20
  100:24 132:5,6,8
  192:10 214:18
  215:9
**bureau** 39:20
**burn** 137:4
**burns** 27:10
**business** 102:10
  191:25 224:21
**buy** 84:16
**bypassing** 141:7
  141:16 179:22
  194:21

**c** 20:1 25:23 27:16
  29:1 44:20 173:22
  180:24 196:10
  214:13 215:6
  229:3,3
**cabin** 194:6
**cabined** 195:15
**calculate** 150:9
**calendar** 29:10,15
  32:12 39:14 49:9
  175:15 203:7
**california** 9:1,6
  121:7
**call** 85:11 114:13
  209:20,22 215:12
**called** 108:14
  179:8 184:10
  207:1
**calling** 119:18
**calls** 48:17 87:18
**camera** 205:22
  207:5,6,12,14,17
  207:18
**canada** 93:18,22
  93:25 95:25
**canadian** 11:1,8,8
  18:2,3 22:16,17
  49:18,18 92:13
  94:6 96:8 122:11
  179:9,10,17 228:5
**candid** 125:1
**canon** 133:19
**can't** 48:15 91:1
  94:11 130:13
  135:18 140:21
  152:24 153:1
  158:10
**capacity** 174:6
**capital** 61:8
**caplin** 23:19
  146:3

**capture** 168:4
**cardozo** 76:24
**care** 161:21
**careful** 63:18
  199:1 202:12
**carefully** 63:14
  186:1 198:25
**carelessness**
  36:17
**cares** 124:2,6,11
  134:24
**caroline** 27:13
**carranza** 191:5
**carry** 94:15
**case** 1:3 24:1
  30:21 31:7 36:11
  37:9,18 42:14,14
  45:19,20,21 46:11
  52:3 54:2 55:23
  57:3,15 60:20,21
  61:3,3,6,24 62:1,6
  62:24 63:9,13,17
  64:18,21 65:7,8
  65:14 66:1,11
  67:2,23,25 69:24
  69:25 70:17,21,22
  71:3,5,7,13,14,16
  71:16,18 72:2,9
  72:12 73:6 74:7
  74:10,18 76:7
  77:12,13 78:6,11
  79:14 80:15,17,20
  80:21,22 81:23
  82:19,21 84:8,11
  84:13,23 85:2,3,6
  85:8,8,22 86:7
  88:7 89:14 91:3,5
  93:1,7,10,14,22
  94:22 95:13,16
  96:3,10,18 97:16
  97:18,22 100:24
  104:1,7,10,15,16
  105:9,9,10,22

106:9 107:7,9,22
108:3,15,18
109:11 111:10
112:18 113:5
114:16 115:10
116:8,10,14 120:1
120:10,17,17,17
120:24,25 121:4,9
121:15 122:13,15
123:16,17,21,23
124:11 125:25
126:9,17 127:11
127:11,12 128:12
128:14 129:16
131:17 132:12,19
133:6 139:25
141:3,5,10,13,17
141:18 143:6,11
146:15,16 147:15
147:21 148:13
155:12 159:9
160:4 161:15,25
162:12 163:19,23
163:24 164:21
165:1,3 167:5
170:22 171:14
177:7,17,18 178:9
180:21 181:9,19
181:19 182:18,23
182:23 183:11,13
184:12,21,25
185:13,13,15,19
185:25 186:14
187:5,11,19 188:1
188:2 189:4,20
190:17 191:5,5,14
191:17 192:16
193:3,4,9 195:4,9
195:13,19 196:1,3
196:3,6,12,16,17
197:4,5,7,9,11
198:6,12,16,22
201:3,5,16 202:1

202:2,2 210:7
212:21 214:1,4
217:13 218:15
221:12,13,14
223:7
**cases** 35:5,16,20
42:9 43:16 44:1
44:17,18 45:8,9
46:18 56:22 59:15
62:9,13,15,21
64:10 69:20,21
75:6 76:13,16,20
77:2,4,5 78:3,4,5
81:13 89:11,17
101:3 105:12
106:2,21 107:4,24
108:7,22 110:12
111:4 113:3,11
114:12 115:1,4,5
118:5 119:21,22
120:2,17 121:5
122:6 123:5,13,18
124:14,20,23
125:3,13,14 127:3
127:9 128:9 132:8
139:6 143:17,18
147:2 148:15
155:23 159:22
161:25 162:24,25
165:1,2 171:5,9
178:6,20 182:1
183:1,6 186:6,9
186:19,25 187:1
189:10 190:19
195:6,7,13 196:13
196:18 197:21
198:23
**cast** 68:20
**casting** 68:17 70:2
**category** 90:22
194:9
**cause** 47:4 91:4
111:17 120:23

121:11 191:16
200:8
**caused** 33:2 36:16
150:11
**causes** 45:1,3,15
45:15,17,21 75:8
88:14 220:9
**caution** 187:3
**cdc** 143:19
**celotex** 192:20,20
**centers** 144:13,14
**cert** 116:23 117:9
**certain** 11:1,7
13:13 16:20 17:14
18:2,8 19:5 22:16
39:24 49:13,18
91:4 92:13 179:9
179:15 186:15
199:6 206:17
209:21 218:13
228:5
**certainly** 88:24
93:19 94:2 127:17
134:12 153:6
162:22 167:24
193:23 194:7
196:2 214:3
222:19 224:10
226:6
**certainty** 155:19
**certification** 3:12
4:2,9,11 5:2 6:10
6:11,12 7:2,9,12
8:2,10,15,19 9:2,3
9:15 10:3,6,18
11:4,18 12:3,6,18
49:10 51:12,16
52:1,14 53:4
54:23 56:7 71:20
72:16 73:15 74:5
75:21 77:21 81:16
86:10 88:8 89:24
91:16 97:19

124:14 129:3
130:8 131:8
132:18 133:9
136:3 137:3
138:21,22 139:4
141:19 142:11,13
146:6 147:22
152:10 166:5
170:1,20 176:18
179:5,13,21 180:2
181:3 183:14,17
186:25 187:6
188:24 190:6,18
190:24 199:8
202:13 227:17
228:9
**certifications**
90:11
**certified** 52:18,22
72:10 85:3 108:21
130:4 141:10
148:22 170:21
200:7 201:13
229:5
**certifies** 163:22
**certify** 3:14,20
4:17 5:10,21 6:6
6:17 7:18 9:9
10:12 11:12 12:12
77:22 80:16 85:12
122:5 142:20
164:19 169:15
176:5 180:8,16
187:4,15 194:3
199:20 227:19
**certifying** 5:17
6:3 73:3 109:9
180:1 198:1 200:3
**certiorari** 188:22
**cetera** 136:20
160:1 173:13
197:8,8

cfr  55:1
chain  198:14
challenge  57:21
  91:17
challenged  58:16
chambers  32:9
  39:7 48:7
chance  85:6,8
  139:13 203:7
  216:20
change  134:16
  147:21
changed  91:19
changing  77:3
channeling
  150:18
channels  128:10
  187:2
chapter  14:10,14
  16:4,7,24 17:2,18
  17:22 18:12,15
  19:9,13 38:17
  43:16 45:4 46:18
  49:11 72:2 106:10
  124:4 179:6
character  200:6
chart  197:19
charter  113:11
chase  73:5 93:19
chassix  67:25 68:9
  69:22
check  177:21
chemetron  37:21
chen  24:21
cherry  106:19
chief  39:19
chose  77:3 198:24
chris  147:11,14
  217:12,12
christopher  4:13
  7:13 10:7 12:7
  24:6 26:11,16
  39:19

cir  31:10 37:14,22
  96:24
circ  161:13,17
  181:6 192:22
circled  107:4
circuit  3:20 4:3,10
  5:18 6:4,17 7:3,10
  9:9,16 10:4 11:6
  11:12,19 12:4
  31:11 37:6,17
  51:13 53:9,10,10
  53:15 54:24 55:17
  56:4,9,11,16,20
  56:22,25 57:3,9
  59:9,24 60:1,2,4,5
  60:6 62:7,14,18
  63:17,21 64:3,19
  64:20 66:19,25
  67:6,22 68:7,12
  68:18 70:10,11
  71:4,6,9,16,20
  72:9,12,20 73:10
  73:15,21 74:1,7
  75:4,12 76:8
  77:24 78:13,16,17
  78:18,19,20 79:6
  79:16,20 80:19
  81:3,11,18 82:2,6
  82:14,16,23,24
  85:1,13 86:19
  87:2,20 88:8,18
  88:23 89:2,6,7,8,8
  89:22 90:10,18
  92:25 93:6 94:18
  94:19 96:2 105:23
  106:17 107:5,17
  108:6,10,12,20,25
  109:5,15,18 110:2
  110:7,8,14 112:16
  113:17 114:9
  116:17,19,20,22
  117:4 118:24
  119:5,8 121:10,16

122:22 123:4,6,6
  123:7,17 124:4
  125:11,12,19
  127:2,15,20
  128:15,17 129:15
  129:20 130:1,7,11
  130:15 131:2,18
  132:3,11,15 133:8
  137:11 141:17
  142:7,9,11,12,19
  142:22,23 143:8,9
  146:10,12 147:1
  152:10 153:24
  154:20 155:13
  158:5,25 161:9
  162:15 163:8,21
  164:1,22 165:8,13
  165:17,22,23
  166:17 171:5
  177:17 178:7
  179:7,22 180:10
  180:14 181:2,4,12
  181:20 183:10,18
  183:23 184:7
  185:25 186:4
  187:8,20 188:12
  188:18,23 189:3,4
  189:11,12 190:18
  190:20 191:18
  192:16,24,25
  193:1,2,11,19
  194:21 195:5,8,12
  196:4,4,6,7,9,13
  196:22,23,24
  197:2,14,18,19
  199:7 200:1,12,16
  200:23,24,24,25
  201:14,14,16
  202:11 228:12
circuit's  181:19
  192:21 193:8
  196:16,18

circuits  64:17
  76:10 116:22
  117:5 118:23
  193:24
circuit's  96:19
circumstance
  81:16 171:4
circumstances
  36:17,25 44:23
  56:14 95:23,24
  106:9 107:10,19
  108:9 110:4
  112:25 113:8
  119:2 124:19
  125:21 130:24
  132:7 141:16
  183:20 186:1
  187:7 199:17
citation  96:22
citations  101:14
  184:13 186:15,18
  211:18
cite  88:18 96:10
  101:23 124:14
  125:13 127:11
  150:4 158:16
  161:6 177:17
  184:8 187:11
  197:11
cited  58:3 61:7
  62:9 67:23 88:24
  104:14 107:17
  108:11 119:21
  121:4 122:2
  146:24 150:1
  161:5 191:25
  194:11 196:14
cites  60:24 61:7
  127:3 223:10,11
citing  56:22 76:23
  105:9,12 106:24
  108:22 128:6

citizenry 174:16
citizens 84:9,13
148:6,11 149:3
174:7,8,11,12
citizens' 148:16
civil 44:8,13,14
214:12
claim 2:4,7,11,15
3:9 30:9,21,25
31:6,13,18 32:2,5
32:14,17,18,23
36:9,12,14 37:15
37:16,23 38:1,23
39:3 40:19,24
42:8 44:18 46:23
46:23 47:14 84:12
94:1 105:10
111:11 118:17
119:23 127:6,14
148:16 149:15,17
149:18 150:15
152:4,5 161:3,24
162:1,16 171:2,15
177:7 178:8
215:17 218:19
219:2,19 227:5,9
claimant 100:24
claimant's 160:23
claimants 5:5 8:5
10:21 12:21 23:13
38:19,20,22 49:19
59:4 84:10 100:12
104:1 138:19
168:1 171:11
181:17 220:3
claiming 37:11
85:21 104:2,3
217:20
claims 2:4,7,11,15
2:23 31:16,19,23
35:7,14 40:3,4
43:20 44:17 45:8
45:10 46:5,18,19

57:18 58:1,4,9
61:5 66:11 87:13
87:25 88:1,4,10
88:16,20 92:19
102:2,3,4 105:11
106:11 111:5,6,8
111:14,16,19,22
112:4,24 113:22
113:23 114:6
116:6 117:24
118:9,12,14
125:25 126:11
149:10,11,14,23
149:24 150:6,17
150:18,24,24
151:17,17,25
152:3 158:23
159:6,11 160:3,9
160:17,20,23
161:10 167:19,22
167:22 168:5,11
174:9 193:20
195:6 197:3 218:5
218:7,8,8,14
220:1,7,15,22,24
227:5,9
clarification
147:17 149:5
clarified 201:6
217:19
clarity 157:12
class 68:2 137:17
claudia 26:20
clause 119:1
clean 67:11
clear 30:19 35:5
37:9,11 46:12,13
53:16 62:3 63:17
69:8 70:2 71:7
76:8 83:15 84:8
96:16 100:22
105:22 112:16
118:11,13 119:24

134:23 139:6,25
147:9 150:16
151:13 153:13
159:11 161:25
163:5 168:25
173:5 174:5
180:22 185:6
188:1,4 189:19
190:14 195:2
198:11 199:5
206:19 207:24
210:20 211:9,22
211:23 212:1
220:1,8 221:5,11
clearer 88:7
clearly 30:7 40:14
71:13 112:10
114:1 133:9
135:18 141:5
147:18 152:24
158:16 160:17
172:5 183:15
195:1 196:14
199:21
clerk 13:12 16:19
17:13 18:7 19:4
41:18 100:16
207:14,18
client 146:11
154:24 155:8
177:6
clients 173:2
177:10
clint 24:25
clock 122:7
close 41:13 115:25
124:16 129:1
142:15 163:16
closed 37:18 90:8
144:13,14
closely 112:3
closer 40:15 205:9
206:22 207:20

216:6,7
clothing 115:8
190:3 194:11
cmo 177:22
code 45:18 46:24
52:21 55:10 72:19
90:14 91:9 97:9
97:10 168:10
181:7 182:7 191:2
194:3 198:10
coerced 195:5
cohen 22:8 83:10
coherent 186:14
colleague 221:23
colleagues 52:6
collier 185:23
191:7 196:10
198:18
colliers 90:13
190:23
color 125:10
columbia 83:19
83:21 160:18
168:9
combining 89:17
189:10
come 42:21 67:11
99:25 124:16
126:24 171:23
174:10,12 195:3,7
203:23 216:17
226:4
comes 76:7
113:21 150:13
151:1 218:19
comex 190:9
194:11
comfort 156:4,13
coming 35:22
48:16 151:20,24
172:15
comley 21:15
86:13

comma   180:13
commanded
   125:18
commands   113:6
   113:6
commencing
   129:8
comment   84:24
   174:3
commentary
   71:19 86:15
   139:23
commentators
   64:11
comments   52:24
   172:14,20 213:12
   221:11
commit   165:21
committee   4:16
   4:19,22 5:4 7:17
   7:20 8:4 10:11,14
   10:20 12:11,14,20
   23:2,12 31:2
   49:24,25 53:14,24
   70:19 81:2 138:18
   139:9,12 140:20
   181:15,15,17
   205:3,13 206:10
   208:9
committee's   5:1
   8:1 10:17 12:17
   205:16
committees   49:24
committee's
   54:19
common   64:24
   76:24 170:14
   180:12
communications
   113:11
companies   161:11
company   31:8
   36:22 161:16

compare   56:9
compared   143:21
compatible   76:18
   186:7
compel   181:2
compelled   178:6
compelling   90:25
compensation
   36:11 149:9,11,25
   150:25 151:1,19
complain   87:23
complaint   44:2,3
   44:5 45:2,13,23
   46:5 47:10,19,23
   113:25
complaints
   167:20
complete   132:20
   138:2 172:13
completed   80:10
   216:10
completely   72:23
   103:3 116:7
   125:12,22 129:23
   129:23 151:5
   155:7 188:25
   204:18
completing   52:3
complex   38:18
complicated
   55:23 135:9
comply   197:25
computer   60:14
   207:11
conceded   153:12
conceivable   45:20
   111:12 126:22
conceivably
   133:10
conceive   199:12
concepts   168:9
concern   73:4,17
   74:4 78:25 79:2,5

79:8 80:7 157:2,5
   183:19 199:21
   202:23,23
concerned   61:13
   61:18 118:8 139:7
   145:9 173:3
   191:10 221:6
concerning   59:1
concerns   62:10
   74:9 80:11 182:18
   183:4 193:13
concession   153:14
conclude   55:10
   56:10 69:13 70:1
   72:15 81:25 91:13
   111:22 115:9
   197:25 202:4
concluded   122:15
   123:11 139:11
   226:17
concludes   92:4
   226:16
concluding   129:9
conclusion   79:14
   80:18 182:24
   183:2 202:3
conclusions   14:13
   16:6 17:1,21
   18:14 19:12 70:6
   70:8 127:4 131:23
   201:11,17
conditional   211:8
conditions   179:16
   179:25 203:15
conduct   66:3,5
   87:5 111:16
   113:23 114:6
   185:14 199:15
confer   216:9,14
   217:17
conference   2:2
   15:19 29:11 100:1
   101:24 102:11,18

103:6 162:7 203:2
   203:3 204:3
   212:13 225:12,12
   225:14 226:16
conferences
   203:21
confinement
   31:25
confining   178:14
confirmation   13:3
   13:18 14:4,9,21
   15:3,13 16:4,12
   16:23 17:17 18:11
   19:8 49:16 52:24
   56:19 70:25 85:24
   104:22 105:2
   108:20 112:7
   116:7 117:21
   118:8 130:3
   134:11 137:11
   147:24 148:15
   150:16,23 157:4,7
   157:8,14,15,25
   192:15 210:9
   214:11 218:2,12
   218:14,20 219:6
   225:16
confirmed   31:20
   38:17 93:11 95:18
   103:16 146:20
   219:1
confirming   14:14
   16:7 17:2,22
   18:15 19:13 49:10
   56:21 59:1 104:20
   104:25 179:6
   201:1
confirms   183:24
   184:23
conflating   57:16
conflict   63:20
   125:11,14,15
   196:20

[conflicting - copy]

**conflicting** 66:24 124:24 180:18 195:25 196:6,9,12
**confusion** 135:1
**congress** 65:19 76:15 77:2,23,24 128:7 167:7 180:7 181:22 183:24 184:9 186:1,4 191:10 196:7 198:15,24 199:4 201:23 203:18 223:12
**congress's** 183:17
**congress's** 88:20
**connecticut** 15:23 21:16 67:6 83:18 86:13 168:8 196:23 208:1
**connecticut's** 167:21
**connection** 134:14
**connections** 35:13
**consensual** 56:5 58:9 59:5 61:12 66:20,21 87:9,11 112:23 123:12 135:9
**consent** 4:11 7:11 10:5 12:5 30:20 52:18,19 68:3 221:5
**consented** 220:7
**consequence** 163:24
**consequences** 137:4 215:17
**consider** 31:12 59:3 61:4 74:24 82:6 88:8 197:8 202:25 224:2,8

**considerable** 183:10 198:8
**consideration** 47:19 75:21 78:8 85:17 145:7 163:2 199:1 200:21
**considerations** 181:23 182:8
**considered** 32:18 59:9 72:21 84:10 89:5 91:17 158:25 173:22
**considering** 36:25 177:5 214:25
**considers** 87:2
**consistent** 39:6 40:19 71:19 76:8 158:24 188:1 196:2 198:12 200:22 202:16
**consistently** 202:10,11
**consla** 24:22
**consolidate** 45:7
**consolidated** 11:5 170:2 228:10
**constituted** 144:6
**constitutes** 185:18
**constitution** 72:19 88:21 117:7 118:20,25
**constitutional** 55:22 58:8,15 59:7 63:23 80:21 89:3 97:3 105:24 148:6,18,19 149:1 149:7 163:25 192:3 218:9
**constitutionality** 90:23
**constraints** 144:16

**construction** 87:5 133:19
**construe** 198:23
**construed** 35:9 191:14
**construing** 191:13 193:20
**consulate** 218:23
**consultation** 54:25
**consulted** 30:13
**consummated** 93:14 219:1
**consummation** 93:12
**contamination** 162:17
**contemplated** 203:18 210:6
**contemplates** 167:5
**contend** 44:24
**contended** 187:12
**contested** 70:24 103:14 173:2
**context** 45:12 58:13 62:11,21 65:9,10,25 73:1 77:17 81:20 101:25 165:9 190:21 198:9
**contingent** 5:5 8:5 10:21 12:21 23:13 138:19
**continue** 73:9 154:9
**continued** 112:8
**continues** 184:14
**contours** 110:21
**contradicted** 48:1 60:2
**contrary** 91:23 92:8 113:19,24

**128:1 182:20 187:24 218:9
**contrast** 56:9,17 144:4
**contribution** 112:2
**contributions** 61:4
**contrived** 168:5
**control** 31:14 32:3 32:7 36:18 37:4 39:4 47:5 207:7
**controlled** 165:6
**controlling** 53:25 55:17 56:2 63:17 64:2,6,22 86:18 87:10 88:18,23 89:6,15,15,16,20 90:3 106:17 108:25 110:13 111:3 115:15 116:19 119:5,7 147:2,4 168:13 171:18 180:10 183:19 184:15 187:19 188:11,16 188:17,23 189:4,8 189:21,24 190:1,7 192:5,12,19 193:9 194:25 195:8,9 196:5 197:11,18
**controversially** 122:12
**conveyance** 2:20 3:2 40:4 46:24 227:14
**convinced** 185:4
**convulsion** 211:8
**conway** 94:8
**coordinate** 129:20
**copied** 95:13
**copy** 41:15,17,17 48:6,22,25

**core** 55:21 89:2
**corners** 183:7
**corp** 31:9 36:20
  37:13,21 120:15
  187:9 188:8 190:2
  190:14 191:20,21
  191:23 192:6
  196:11 198:18
**correct** 42:2 50:8
  53:24 55:3 73:2
  118:16 134:1
  141:14 150:4
  177:8,11 178:16
  185:1,6 204:18
  208:24 210:17
  219:13 220:18
**correctly** 72:8,11
  82:11 103:12
  122:12 153:16
  187:14 216:9
**cost** 32:6 137:7
  186:19,21 215:8
**costs** 129:4
**couldn't** 66:8
  125:6
**counsel** 34:22
  81:1 150:1 205:16
  218:11
**country** 109:9
  229:23
**county** 43:18
**couple** 132:24
  210:15 221:10
**course** 30:24
  37:12 45:3 46:17
  51:21 75:13 90:2
  91:19 110:6
  112:17 126:14,15
  135:23 136:20
  140:4 141:13
  151:5 155:22
  161:13 164:21
  180:4 193:20

195:10 201:11
223:25 225:2
**court** 1:1,11 3:12
  3:14 4:3,10 5:11
  5:17,21 6:3,7,11
  7:3,10 9:2,16 10:4
  11:5,19 12:4 29:2
  29:25 30:2,4,8,18
  32:12,15,17 33:9
  33:12,14,23 34:6
  34:16,19 35:1
  36:2,6,21 37:9,10
  38:16 39:10,12,14
  39:17 40:14,17,21
  40:22 41:1,5,10
  41:12,20,22,25
  42:4,7,11,13,19
  42:21 43:4,8,12
  43:17,20,21 44:10
  44:11,22,25 45:2
  45:14,16 46:10,16
  46:17,25 47:10,12
  47:13,17 48:11,13
  48:15,23 49:4,6,8
  50:13,16,22,25
  51:3,5,10,13,19
  51:20 52:9,21
  53:5,9,13 54:4,9
  54:12,16 55:2,13
  55:18,19 56:3,4
  58:14,17,19 59:11
  59:20,23 60:4,8
  60:14,18 61:2,15
  61:21 62:3,7,9,17
  62:24 63:5,22,24
  64:1,3,7,7,10,15
  64:16,21 65:4,13
  65:15,17 66:19
  67:5,8,10,15,17
  67:22 68:4,5,7,7
  68:12,15,22 69:1
  69:4,9,15,18,20
  69:23 70:3,3,20

70:21,22 71:2,7
71:18,25 72:1,4
72:23,25 73:3,4
73:16 74:20,24
75:15,22,25 76:6
76:14,21,23,24
77:1,8,16,17 78:1
78:9,23 79:5,22
79:24 80:25 82:12
82:20 83:3,6,11
83:13 85:14,16
86:11,16 87:4,7
89:2,10 91:3,10
91:24 92:5,10
94:10,12,17,23,24
95:6 97:7,14 98:7
98:14,20 99:8,14
99:16,24 100:4
101:12 102:8,21
105:19 106:22
108:6,10,13,16
109:4,5,6,11,14
109:15,17,18
110:14,14,21
112:23 113:18
115:9,9,13 116:17
116:25 118:5
119:10 125:4
127:11 128:1,2,3
128:4,8,15,17,19
128:24 130:5,6,7
130:22 131:17,20
131:23 132:2,3,3
132:10 133:2,7,24
134:5 135:2,12,18
136:14,22 137:9,9
137:9,12,13,21,22
138:4,8,12,16
139:12,18 140:3,4
140:13,14,17,23
141:8,8,9,12,22
142:3,8 143:1,7
143:10 144:20

145:25 146:2
147:2,7,13,19
148:9 149:6 151:9
152:2,19 153:15
153:21,24 154:11
154:16,20 155:15
155:17 156:6,13
156:17,18 157:7
157:17,20 158:2,7
158:11,20,23
159:8,16,20
160:17 161:15
162:14,20,23
163:9 164:6,9,12
165:3,4 166:8
167:3,12,15
168:16,20,22
169:13,21,24
170:2,4,12,23
172:18 173:9
174:6,21,23
175:11,14,17,19
175:23,25 176:13
176:17,19,23
177:2,6,9,9,12
178:1,5,11,13,22
179:1,22,23 180:2
180:5,7,10,11,14
180:16,22 181:1,2
181:4,10,10,12,13
183:16 184:5,14
184:18,24 185:1,5
185:8,9 186:10,12
186:18,20,21,23
187:19 188:12,12
188:19,21,25
189:3,5,12 190:5
190:15 191:24
192:3,25 193:1,6
193:8,10,16,17,19
194:15 195:9,20
196:15,21 198:14
199:3,16 200:1,23

200:25,25 201:3,6
201:7,8,19,19,24
202:12 203:2
204:19,22,23
205:5,8,15,19,21
205:23,25 206:2
206:12,15,17,21
207:5,8,12,16,20
208:4,12,14,18,23
208:25 209:11,16
209:18,23 210:2,5
210:13,25 211:3
211:25 212:1,23
213:3,7,10,18,21
213:23 214:15,16
214:19,21,25
215:3,7,8,10,18
215:25 216:3,6,22
216:25 217:5,7
219:9,22 220:11
220:13,20,21
221:7,16,20,22
222:4,6,10 223:15
225:4,4,5,15,21
226:3,8,14 227:17
227:20 228:11
**court's** 172:21
173:17,17 179:5,5
180:3 182:5,14
185:21 191:4
192:14,19,20
194:22 199:25
211:7 214:13
**courtesy** 41:17
98:5
**courtroom** 67:4
100:2,4,5 172:6
172:12 223:18
**courts** 37:11
56:20 58:7,11,14
67:21 68:10 69:14
69:15 76:10,11,11
76:21 77:4,22

81:22 87:6 89:23
90:8 95:9 109:9
109:10 116:18
117:6 118:19,19
120:11,13,14
124:22 126:18
141:11 155:13,14
182:10 185:10,17
186:11,16,17
187:3,5,8 188:9
189:9,23,25
191:12 195:14
197:19 198:11
199:4,5 202:10,11
202:25
**court's** 29:11
47:19 49:10,12
52:23 59:7,17
78:14 80:18 83:2
86:21,24 102:11
135:25 140:7
**cover** 67:5 109:6
123:24,24
**coverage** 147:20
**covered** 45:17
111:22 138:21
146:6 159:12,21
161:4 188:5
**covid** 31:25 124:2
144:16 155:6
**cracks** 85:7
**create** 148:19
200:15,17
**created** 147:19
**creative** 59:13
**credible** 125:13
129:23
**creditor** 13:11
16:18 17:12 18:6
19:3 106:22 201:2
**creditors** 4:17,20
4:23 7:18,20
10:12,15 11:2,8,9

12:12,15 18:3,3
22:16,17 23:3
49:18 50:1 52:4
57:17,22 84:12
87:22 92:14
104:10 135:8
137:18 140:20
181:14 205:3
228:6
**creditors'** 31:2
112:23
**creditor's** 87:25
**crickets** 172:13
**crimes** 112:12
**crisis** 66:4 124:9
139:8 144:23
214:9
**criteria** 51:12,24
54:2,18 55:15,16
70:15 74:19 79:19
**critical** 96:3,5
153:8 158:22
166:24
**crockett** 24:24
**cross** 222:20
**crystal** 188:4
**cso** 100:4
**ct** 21:18
**cubed** 117:3
**cure** 142:8
**current** 38:8
104:23
**cut** 73:5 93:19
99:8,24 124:24
144:20 145:16,20
183:8 213:18
**cutting** 30:18

**d**

**d** 1:22 3:15 4:4,11
5:2,11,18,22 6:4,7
6:13 7:4 8:2,11,16
8:19 9:4 10:5,18
12:5,18 25:12

26:18 27:1 29:1
51:11 52:21 64:2
77:2 89:11 90:6
109:8 110:12
124:13,18,22
128:18 130:5,5
133:5 170:6
179:24 184:19
185:24 186:3
187:13,16 188:8
189:16,17 190:4,9
190:11 191:6,22
198:19 200:3
202:5 227:1,21
228:1
**d'angelo** 24:23
**da** 34:5
**damages** 105:11
113:22 114:6
**danger** 37:1
**dangers** 128:7
**darren** 25:16
**data** 152:7
**date** 2:5,8,11,15
31:18,22 35:16
36:11 38:15,16,16
93:12,15 94:16,18
143:13 179:17
212:19,19 225:19
226:14 227:6,10
229:25
**dated** 32:17 33:14
36:5 179:14
**david** 23:17
138:17
**davis** 20:3 29:23
30:6 34:24 43:9
97:24 100:10
121:17 204:14
205:1,12
**day** 34:4 57:10
75:10 85:22
100:15 102:10

116:23 124:22
132:22 146:13
159:25
**days**  100:15
108:16 115:20
121:20,22 126:3
131:8 137:3
141:25 172:1
177:24 224:20,21
224:21
**dc**  21:4
**dead**  117:9
**deadline**  115:21
208:20 209:1,3
223:5 225:20
**deadly**  122:1
**deal**  109:3 114:22
125:24 126:8
169:6
**dealing**  171:4,6
196:15 205:4
**deals**  126:5
**dealt**  116:7
146:23,25 165:8
189:23 202:24
223:25
**deaths**  143:20,23
143:25 144:2,3,4
144:5,6,8
**debtor**  1:9 30:6
30:11,13 37:1
39:6 43:21 45:2,3
45:16,22 56:6,13
57:24 58:5,11
66:10,12,20,21
70:18 84:11 87:17
87:24 88:1,2,11
95:14 96:14
111:11,17 158:23
158:24 159:2,3
169:9 201:2
**debtor's**  2:10
162:1 171:13

177:4 179:6
200:22
**debtors**  2:14 3:1
4:1,8 7:1,8 9:14
10:2 11:17 12:2
13:10 14:16 16:9
16:17 17:4,11,24
18:5,17 19:2,15
20:4 30:16,20,22
31:1 32:1,19,21
34:25 38:9,24
39:24 40:9 42:9
42:24 43:10,16
45:11 46:8,12
47:25 48:4 49:21
52:2,13,16,20
53:14,23 54:8
56:17 57:13 58:5
58:6,9,10 59:2
64:24 65:6 79:12
81:2 85:20 91:15
91:17 92:9,19
94:5 95:4,5,12
98:2 100:10
103:22 106:11
111:5 112:13
118:12 124:5,10
134:25 135:17
139:4,11 150:19
153:11,23 154:12
160:11 176:2
179:14 181:14
196:24 202:15
208:8 212:17
213:1 218:23
220:2,8 221:4
**debtors'**  106:11
111:4
**debtor's**  29:16,21
34:21,22 35:6
38:17,21 45:8,21
46:12 47:5 49:23
51:25 56:10,24

96:8 106:24 111:6
111:25 112:2,8,10
139:3
**decade**  59:10
**decades**  56:16
58:12 105:18
107:17 117:7
137:11 158:16
**december**  82:4
129:22 143:22
144:3 155:4
200:11 225:20
226:1,5
**decide**  62:22 75:7
79:20 81:17 82:17
82:18 85:14
155:21 177:9
195:20 199:15
210:25
**decided**  56:4
58:14,18 63:24
66:14,18 72:9,21
81:9 84:21 94:17
103:2 116:15
122:22 158:25
184:12 189:22
190:19 191:18
195:21 200:22
203:6 215:1
**decides**  75:12
81:12 82:25 87:16
129:15 130:7
165:14
**deciding**  88:16
122:23 190:18
200:4
**decision**  63:22
70:12 75:11 78:6
80:9 81:12 82:1
86:18,21,25 87:11
88:2,9,23 89:6,15
89:16,25 91:1
93:21 94:10,18,23

95:9 110:7,14
114:9 115:15
116:19 128:4
129:21 130:21,23
131:10 133:12
142:22,23,24
147:4 153:4 158:8
165:7,17,24
171:18 180:10
181:19 184:15
188:11,16,18
190:8 191:24
192:1,12,14 193:9
193:11 194:2,15
194:25 200:16
211:11
**decisions**  59:11
66:24 74:12 88:18
88:19 116:20
147:2 165:4
171:11,16 180:19
184:5 192:19
193:23 195:8
196:1,5,9
**decisis**  184:7
**declarant**  221:19
**declaration**
215:21 216:11
**declarations**
126:3 208:21
209:2,5,23,24,25
216:14
**declined**  160:9
**decree**  180:17,20
184:20 195:24
198:6
**decrees**  180:9
**dedication**  97:22
**deem**  36:4
**deemed**  54:24
63:16 68:2,2
118:12 151:15

deeming 29:16
defend 110:19
defendants 43:17
  43:23
defense 44:9,11
deferred 204:3
define 89:15,15
  89:20
defined 86:23
  87:3 202:3
defines 52:15
definitely 125:21
  128:25
definition 141:10
definitively 116:8
  155:24 218:1
degree 66:1
  120:24 191:17
delaware 83:18
  83:21 177:18
  188:8 189:17
  190:4,6,10,12
  191:22
delay 31:17 35:19
  35:23 37:2,3
  38:11 39:2,3 53:4
  53:5,22 54:13
  71:3 81:3 94:25
  95:1,21,22 100:6
  135:7 137:4,5,7
  143:13 152:16
  166:6,6,9,19
  205:22
delaying 54:10
delighted 101:18
  121:3 136:10
demand 144:19
demanding
  124:15
demands 114:21
denial 45:6
denied 36:1 41:20
  42:6 77:9 196:19

203:14 227:11,15
  228:12
deny 38:12 39:5
  48:2 140:13
  166:17 188:22
denying 29:8 48:4
  202:16 203:8
depalma 22:15
department 20:14
  21:1 39:19 40:3
  125:3 191:19
  219:11,12
department's
  219:19
dependent 108:15
  159:1 184:11
depending 67:2
  215:24,25 218:18
deposition 156:10
  204:2 213:15
  217:2
depositions 209:6
  209:12
deprived 148:7
  149:4 174:17
depriving 148:11
derivative 2:19
  3:2 40:3 46:23
  47:6 227:13
described 31:11
  106:12 180:2
designated 211:18
designation 74:9
  211:13 221:9
  222:25
designed 133:20
  168:6
designee 215:16
desire 139:8,14
  182:22 183:1
desired 93:3
desperately
  134:20

despite 102:8
  108:19 123:14
  144:18
detail 138:22
  140:5
detailed 117:22
  195:10
determination
  29:11 36:24 46:16
  53:17 73:10 75:17
  82:4 86:24 95:10
  96:3 145:15
  150:12 151:2
  159:13 181:3
  182:6,15 189:6
  198:15,24 199:14
  201:9 202:7
determinative
  183:21
determine 82:23
  185:2,18
determined 86:6
  150:6 192:3
  201:14 211:24
determining
  97:17 183:13
determinization
  95:6
detour 110:15
detract 217:6
detrimentally
  167:24
developed 78:5
development 78:8
  186:14
deviation 133:15
dial 15:18
dicta 57:7,7,10
  63:11 87:14
  109:22 112:14,19
  113:16
dictates 37:9

dictionary 86:24
dictum 87:2,3,7
  87:10
didn't 32:25
  33:16 57:10
  153:15 155:25
  158:11
died 133:8 143:23
dietrich 27:17
differ 62:6 70:4
  84:17 159:25
difference 144:24
  157:21
different 35:10
  38:19,22 54:20
  60:17 63:20 67:2
  70:6,7,21 71:15
  77:20 79:3 93:3
  95:23 105:18
  113:1 115:4
  131:12 137:24
  153:21 159:19
  163:2 166:20
  169:17 225:24
differently 69:25
differing 67:20
  77:18
difficult 81:19
  161:23 163:20
  171:23
direct 3:12,14,20
  4:2,9,17 5:10,17
  5:21 6:3,7,11,17
  7:2,9,18 9:1,2,9
  9:15 10:3,12 11:5
  11:12,18 12:3,12
  49:9 51:16 52:1,9
  52:13,19 53:4,18
  54:23 63:6 71:8
  71:10,21 73:8,11
  74:5,25 75:9,16
  75:21 77:3,13,22
  78:4,24 79:9,9

80:24 81:5,13
82:5,25 89:13,24
90:18 91:11,16,18
93:2,8 98:8,22
106:11 108:13,21
109:10 111:5,20
115:7 121:19,22
122:17 127:8
129:2 130:12
131:8 132:18
133:9 136:3,12
137:2 141:19
145:14 146:5
147:22 150:16
152:10 165:3,10
167:7 168:6
169:15 179:5,13
179:21 180:1,8,16
181:11 183:14,16
184:2,9,23 186:2
186:13,25 187:4,5
187:15 188:24
190:6,17 192:4
194:3 196:8 198:2
199:7,20 200:3,7
200:13 202:13
213:3 227:17,20
228:10
**directed** 51:13
163:18
**directing** 13:12
16:19 17:13 18:7
19:4 134:15
**direction** 155:1
185:18 189:19
**directive** 131:22
202:17
**directly** 111:24
130:4 148:21
162:13 165:6
192:24 194:2
201:13

**disability** 46:4
**disagree** 70:9
125:16 140:7
165:15 172:12
183:2 188:20
**disagreed** 201:15
**disagreement**
80:8 144:22 145:9
**disagrees** 145:1
**disbursement**
13:12 16:19 17:13
18:7 19:4
**dischargability**
187:21
**discharged** 66:12
**disclosing** 212:18
**disclosure** 161:2
**discovery** 203:25
204:12 214:3,20
214:24 215:5,10
215:11 216:2,17
218:16 220:17
222:7,11,20
**discrete** 58:23
59:3 100:7 163:24
184:15 189:21
**discretion** 51:17
82:15 180:4,5
181:4 186:24
214:14
**discriminated**
45:24
**discuss** 61:24
**discussed** 57:8
71:11 161:9,12
195:4
**discusses** 122:3
161:15 197:2
**discussion** 57:2,6
71:1 72:1 78:7
87:9,20 185:23
**discussions**
215:24

**disingenuous**
65:25
**disjunctive** 64:8
64:13 84:2 109:4
**dismiss** 44:2,11
91:3
**dismissed** 57:6
**dispenses** 128:13
**dispiriting** 125:2
**displace** 168:11
**displeasure**
116:20,21
**dispositive** 173:24
**dispute** 84:19
85:23 86:9 94:22
127:2 216:18,19
**disputed** 86:2
**dissimilar** 70:7
**dissolved** 212:22
**dist** 198:20
**distinct** 53:7
129:13
**distinguished**
122:13
**distribution** 43:24
87:22,25 151:14
**distributions** 47:8
88:3 150:10
**distributors** 39:25
**district** 1:2 29:7
41:20 42:4 52:8
53:5,9 67:3 70:19
70:21,22 71:2
73:19 75:25 76:21
76:23 77:4,15
81:21 83:19,21
94:10,17,23,24
97:14 102:11
113:18 115:12
128:1,4,8,19,24
130:6,21 131:17
131:20 132:2,2,10
133:7 139:12,18

141:8,9,11,22
142:3,8 143:1,10
155:14 160:18
168:8 170:2,5
179:22 180:4
181:10,12 184:5
186:10,12,16,20
186:21 187:17
190:4,5,6,11
194:22 198:14
199:13,22 200:1
200:23 201:7,8,18
204:19 212:1
226:10
**division** 40:2
59:21,23 125:2
**dizengoff** 4:19
7:19 10:14 12:14
**dizon** 27:11
**dizzying** 101:2
**doc** 13:14 16:21
17:15 18:9 19:6
**docken** 24:25
**docket** 30:10,17
48:23,24 100:15
129:8 134:11
136:9 170:2
200:17,19
**doctor** 32:24 33:3
**doctors** 33:5,6,19
33:20 34:11,13
38:5
**doctrine** 199:19
**document** 2:11,15
2:23 3:3,7,9,15,21
4:4,12,18 5:3,12
5:22 6:8,18 7:4,12
7:19 8:3 9:10,17
10:6,13,19 11:6
11:13,20 12:6,13
12:19 13:5,20
14:6,16,23 15:6
15:15,19,24 16:9

17:4,8,24 18:17
19:15 102:17
135:17,22 157:5
213:15
**documentation**
94:3
**documents** 5:7
13:9 16:3,16
17:10 18:4 19:1
211:13
**doesn't** 55:24
60:19,21 63:21
77:1 81:23 89:23
107:11 109:7
114:7,16 123:19
133:9 148:17
150:8
**doing** 33:4 80:23
110:24 114:22
116:21 119:15
155:6,8 156:13
175:23 212:18
**doj** 54:21 218:18
**dollars** 36:10
118:3 120:8
122:11 137:16
152:1
**don't** 29:20 32:22
41:13 42:23 48:2
50:16,17 54:5,12
54:12 55:3,7
57:21 60:20 61:8
68:13,15,22 69:9
71:4 73:6 75:19
78:4,5,21,22
79:24 80:3 84:22
91:25 92:23 93:24
94:12,13 95:19
96:4 97:25 98:7
98:22 100:6 102:2
102:3,22 104:24
104:24 106:18
107:21 108:11

109:6,25 110:12
114:2,5 119:10,11
119:12,14,14
121:23,24 123:2
124:16 125:4,6,24
126:25 127:17
131:25 133:12
134:2 135:21
136:3,4 137:2
140:7 142:10
144:11,25 145:8
147:3 148:24
149:2 153:2,13,14
154:6 155:2
157:15,16 159:6
160:3
**door** 38:22 89:21
90:7
**dose** 34:13
**doubt** 59:1 80:6
116:5 118:21
120:3
**downplaying**
143:14
**dozens** 117:6
126:5
**dph** 36:19
**dr** 24:9 33:9 35:4
35:13
**draft** 48:3
**drain** 1:22 3:7
29:3 166:16 179:2
**drew** 199:13
**drexel** 106:24
107:17 109:25
110:3,5 159:22
160:1 196:25
**dropped** 125:7
**drug** 38:9 46:4
**drugs** 39:25
**drysdale** 23:19
146:4

**dual** 142:17
**due** 56:5 57:11,13
57:15,17,22 58:12
59:10 63:23 66:19
70:10 98:25 99:20
102:1 117:15
118:9,14,18,21,25
144:15 146:23
148:11 158:24
159:12,20 172:24
173:3 193:6,13
225:17
**duplicative**
149:17
**dylan** 24:22

**e**

**e** 1:21,21 20:1,1
23:17 29:1,1
181:5,5 187:17,17
227:1 228:1 229:3
**earlier** 52:24
73:14 77:11 142:4
221:23
**early** 129:22
**earth** 67:10
**easiest** 155:11
**easy** 120:16
161:22 171:23
**eberhardt** 25:1
**ecf** 2:5,8,12,17,20
2:25 3:4,10,16,22
4:4,14,20,23 5:5
5:13,23 6:8,14,19
7:5,14,21 8:5,12
8:20 9:6,11,18
10:8,15,21 11:9
11:14,21 12:8,15
12:21 13:7,14,21
14:7,11,16,25
15:7,16,21 16:1,5
16:9,14,21,25
17:4,8,15,19,24
18:3,9,13,17,21

19:6,10,15 227:7
227:11,15,21
228:12
**echo** 85:11 143:3
**eck** 26:25
**ecke** 25:2
**eckstein** 5:4 8:4
10:20 12:20 25:3
**ecro** 1:25
**ed** 185:24
**edgier** 110:18,20
**editors** 190:23
**edmunds** 16:13
22:6 80:1,1 81:1
81:10 83:6,8
84:24 164:7,9,11
164:13,14 166:22
167:4,11 213:11
213:13,19,20,22
213:24 215:4,14
215:19 216:8
222:14 223:9
224:19
**edny** 187:17 190:2
**educational**
187:22
**effect** 45:20 53:5
84:18 93:22
111:12 126:22
133:21 174:12
182:19 192:1
**effective** 49:14
52:16 93:12,15
143:13 176:10
179:16,17 212:19
224:1
**effectively** 96:1,14
128:18 145:21
**effects** 128:9
**effort** 98:19
147:23
**efforts** 76:22
186:12 217:6

eighth 110:17
eitel 21:6 51:7,8
  51:11 53:21 54:8
  54:14,17 55:9,14
  59:25 60:7,13
  61:1,14 62:2,5,15
  62:20 63:4,8 64:5
  64:12,22 65:5
  67:7,9,13,16,19
  67:24 68:6,10,13
  68:20,24 69:3,6
  69:12,16,19,22
  70:1 71:11,22
  72:7,24 73:2,13
  74:3 75:2,19,23
  77:7,25 78:2 79:4
  79:10,23 156:20
  156:22 157:19,23
  158:3,9,14,22
  159:14,17,24
  162:10,19,22
  163:3,10,14
either 35:18 38:5
  39:24 40:5 42:23
  45:8 47:2 48:3
  54:2 55:8,17 56:3
  57:12 85:7 91:25
  116:16 148:4,25
  149:16 155:1
  160:12 167:6
  171:9 173:24
  181:25 191:1
  192:11 193:10
  197:12 198:3
  202:6 225:10
elaborate 83:25
  137:4 212:20
elected 84:7
electronic 210:10
element 173:1
  189:14
eleventh 14:10
  16:4,24 17:18

18:12 19:9
eli 15:20 27:2
eliding 184:13
eligible 124:5
eliminate 58:25
  127:25 128:19
elisa 25:11
elizabeth 26:13
ellen 18:20 24:11
  50:10
else's 100:21,23
email 32:8 39:6
  48:6,7
emanuel 2:5
  29:18 227:6
emerge 101:21
  154:9 156:8
emergence 139:7
  166:12
emergency 29:9
  102:12 139:13
  203:9 210:18
emphasize 181:24
  210:22
emphasized 76:15
  184:5 186:5
  190:15
employees 39:22
enacted 165:12
  181:7
encouragement
  47:16
ended 167:8
endorsement
  59:12
enforced 84:15
engage 199:2,4
engaged 43:23
engagement 78:6
engaging 65:15
english 105:9
  118:1

enjoin 61:22
  106:22
enjoined 88:20
enormous 84:25
  101:17
enron 31:9 32:15
  37:13
enter 102:9
  136:17
entered 32:10
  149:10 201:7
entering 79:19
entertaining
  214:20
entire 57:6 104:7
  160:7 166:13
  172:6 198:9
entirely 37:11
  81:19 136:8
  159:19 172:7
entities 3:22 6:19
  9:11 11:14 23:20
  38:20 39:22,22
  43:21 46:2,6
  47:24 49:22,25
  93:4 103:25
  114:22 146:4
  160:19 178:10
  181:15,16 194:5
entitled 222:19
entity 44:9,11
  114:10,19
environmental
  162:16 191:19
epidemic 144:10
equally 118:13
equate 194:24
equitable 36:24
  57:6 59:12 199:20
equities 37:8
equivalence 91:10
erased 133:22

enjoin 61:22
eric 26:21
erroneous 185:7
eskandari 9:5
  25:4
especially 211:1
  214:21 215:5
essence 43:19
essential 45:25
  86:7 105:10
  164:25
essentially 85:25
  101:6 151:15
  164:19 169:2,6
  185:1
essex 43:18
est 197:25
establish 56:7
  128:17
established 38:10
  38:15,16 105:12
  105:19 114:11
  146:19
establishes 200:18
establishment
  13:11 16:18 17:12
  18:6 19:3
estate 47:4,5
  107:11 111:13
  126:23 149:18
  157:18 162:1
  214:19
estates 45:21
  111:20,25 137:18
  149:17
estate's 112:3
  136:5 142:24
esther 20:9 29:24
  30:5
estoppel 158:13
et 4:20,23 7:21
  10:15 12:15 29:3
  40:7 136:20 160:1
  173:12 179:3

197:8,8
ethic 200:6
ethos 134:17
evade 105:24
evaluate 76:13
evan 25:13 27:25
evening 102:10
event 32:4 47:22
48:19 49:1 73:8
89:13 203:14
218:2,24
eventually 71:9
71:20 127:20
132:11 162:6
199:6
everybody 98:17
evidence 107:8
108:17 125:24,25
154:3,4 214:7,20
216:1 221:8,18
222:19 223:2,11
223:13,19
evidentiary 210:6
210:23
ex 5:8 8:8,16 14:1
15:10
exact 106:15
123:18
exacting 31:10
exactly 69:21
81:20 89:14
114:25 116:6,9
122:4,21 123:14
125:1 128:6
151:18 157:13
219:16
exaggeration
122:7
examination 94:3
examine 222:20
example 60:7
67:25 87:16
166:19 173:16

187:8,16 194:10
194:17 199:8,13
199:15 223:4
examples 144:12
exceeding 58:15
exceedingly
161:23
exception 88:15
96:15 114:15
115:6
exceptional 97:21
108:9 187:7
exceptions 90:4
96:17 188:3
excluding 45:24
exclusive 96:11,20
96:25
exclusively 188:4
exculpation 61:13
197:10
excusable 35:19
36:14,19,24 37:12
37:20
excuse 31:14
37:15,16 38:12
46:9 188:17
199:24
exempt 105:14
115:2
exempted 105:18
exemption 105:12
105:25 108:5
114:11 171:2,3
178:18
exercise 180:4
181:4 191:4 225:6
exercises 180:5
exercising 171:12
171:15 186:24
exhaustive 164:16
exhibition 73:22
exist 102:2,4
159:6 160:3

existed 192:6
existence 118:24
218:19 219:3
existing 105:14
108:5 111:4 115:2
123:4 130:20,21
147:25 178:19
exists 95:7 111:3
112:6 120:21
149:15 165:20
193:19
expansive 59:12
expect 37:11 82:1
153:5 162:25
200:9
expectation 52:23
128:16
expecting 221:21
expedite 142:20
164:23 182:23
198:14
expedited 5:16
6:2 11:5 13:3,17
14:3,21 15:2,5,12
15:14 50:3,8 53:1
53:11 72:8 74:8
75:1,24 76:1 79:7
129:17 139:7
152:22 153:23
154:13,22 199:14
199:23 200:14,14
224:3 228:10
expedition 52:3
53:16 71:12 75:9
136:8 164:20
183:9
expeditious 76:16
143:8 166:12
186:5
expeditiously
129:11 146:11
165:22 166:14

expense 215:9
219:2
experience 77:5
81:20
explain 108:21
130:2 134:9
175:14
explained 76:24
120:20
explaining 71:23
explanation 35:22
125:9
explicit 183:18
explore 74:20
exposed 155:6
express 101:16
expressed 74:3
101:24 103:8
157:4
expressing 116:21
expressly 88:5
111:9 151:14
extend 15:2,12
98:5
extended 31:22
124:10 222:1
extension 222:8
extensive 35:16
76:12 117:19
172:11 189:22
192:25 210:23,24
211:14 214:7
extent 35:9 61:24
62:11 67:20 209:6
209:12 212:20
213:2
extinguish 106:10
158:23
extra 130:22
155:25 200:15,16
201:16
extraordinarily
117:19 120:3

**extraordinary**
63:5 100:13
130:22,24 131:4
132:7 136:2 137:7
147:21 148:1,20
155:23 162:12
178:18
**extreme** 66:1
201:25
**extremely** 101:22
117:12 145:2
**exxon** 177:20

**f**

**f** 1:21 26:17 229:3
**f.2d** 87:4 110:5
**f.3d** 31:10 37:13
37:22 96:24
108:16 110:4,9,11
128:7
**f2d** 161:16
**f3d** 161:13 181:5
183:22 188:7
192:22
**fabulous** 113:5
**face** 104:17 116:9
220:1,8
**facile** 177:5
**facilitate** 100:14
183:25
**fact** 14:13 16:6
17:1,21 18:14
19:12 30:22 31:21
46:10,11 70:8
71:8,8,19 80:18
86:3,3 95:5 96:18
97:6,17 103:1
104:20 105:22
107:25 108:2,7
111:18,19 114:8
132:1 134:18,24
135:7 140:9 142:1
150:7,12 151:13
159:2 161:23

172:25 174:1,9
188:3 193:13
196:6 198:13
199:5 201:10,17
**factor** 31:12 37:14
38:10 39:1,2
53:16 54:7 80:13
80:15 91:14
111:18 114:15
119:17,18,19
172:22 194:2
**factors** 30:12
37:17 53:25 62:12
82:24 85:14 107:6
107:7,13 164:25
197:8
**facts** 31:21 44:23
57:25 61:9,19
62:21 63:1 69:10
70:8 80:22 85:21
86:1,2,7 101:3,11
102:19 108:3,15
108:18 118:6
126:18,19 127:5
131:7 141:16,18
144:11 159:2
184:11 193:4
201:23
**factual** 54:10
101:9 117:18,22
136:2 140:3
172:16,24 173:1
189:22 194:15
195:10 211:15
220:14
**fade** 41:13
**fading** 41:5
**failed** 105:20
106:3 126:22
**fails** 37:8
**failure** 54:20
95:24

**fair** 32:6 84:19
91:24 110:22
128:4 133:3
148:22 157:23
166:8 171:17
173:7 185:9
209:18
**fairly** 31:10 67:25
70:24 96:16
100:25 178:2
224:3 225:3
**fairway** 153:5
**faith** 37:5 97:14
97:15
**fall** 170:17
**fallacy** 53:3
**falling** 90:21
**falls** 194:9
**false** 103:3 178:12
**familiar** 60:14
192:9 214:6
**family** 42:8 52:13
66:5,6 115:8
156:5 160:12
162:13 190:3
194:11
**family's** 66:3
**famous** 120:17
**fantastic** 136:25
**far** 32:7 38:1
43:20 55:19 61:13
61:18 102:22
118:7 127:18
131:10 145:8
173:3,10 189:8
191:9 215:5,5
224:23
**farce** 119:5
**farrell** 25:5
**farther** 105:5
161:14
**fast** 132:14 141:23
146:17 199:2

**faster** 73:7 128:24
128:25 129:22,25
130:11 131:3
132:9 133:23
141:9 165:16
166:7,25 186:17
200:1
**fastest** 139:13
**fatal** 47:23 104:17
119:23
**favor** 37:8 104:8
135:17 139:5
154:17 183:9
200:22
**fbi** 34:5
**fcc** 177:18
**february** 187:17
190:12
**federal** 13:4,19
14:5,22 44:7,12
46:2 55:10 76:9
82:15 125:4
165:24 214:12
217:21
**federalism** 168:10
**fee** 137:4
**feedback** 92:23
**feel** 178:6
**feeling** 183:7
**feelings** 182:11
**feels** 82:17 215:25
**feld** 23:1 140:19
206:9
**felt** 211:8
**femino** 25:6
**festival** 222:15
**fiber** 112:22
**fiduciaries** 84:12
**fifth** 22:10 96:23
118:22 142:12
**fight** 144:9
**fighting** 111:2

figured  117:8
file  2:4,7,10,14
  30:20 31:16,18
  32:14,23 40:3
  46:22 54:23 83:16
  98:13 176:1
  211:11,17 215:21
  227:5,9
filed  2:5,8,12,16
  2:20,24 3:3,9,15
  3:21 4:12,18 5:3
  5:12,22 6:13,18
  7:13,19 8:3,11,19
  9:4,10 10:7,13,19
  11:7,13 12:7,13
  12:19 13:6,20
  14:6,24 15:6,15
  15:20,25 16:13
  17:8 18:1,20 31:6
  31:20 32:17 36:14
  37:15,16,23 40:19
  42:8 44:5,18
  46:18 47:10,20
  49:21 50:6 66:7
  75:3 98:8,14,15
  98:22 99:9 102:14
  113:24 115:20
  121:19,23 134:11
  147:19 175:5,13
  176:5,6 177:6
  203:4 211:12
  212:9 223:4,5
  227:6,10,14
files  34:1,18
filing  29:17 31:13
  31:15 32:2 36:12
  39:3 177:24
filling  223:10
final  56:21 82:4
  122:25 135:22
  162:11 175:10
  185:18 198:14,23
  201:1,10

finality  59:1
  186:19
finally  70:15
  78:12 91:13 119:4
  127:7 191:9 198:4
find  32:25 51:20
  59:16 189:23
  197:24 223:18
finder  172:25
finding  41:21
  112:24 126:21
findings  14:13
  16:6 17:1,21
  18:14 19:12 41:24
  117:23 131:23
  140:4,7 201:10,17
finds  61:21
  131:19,20
fine  55:9 83:6
  170:14 204:23
  205:21 220:11
  225:9 226:3,8
finer  86:17
fire  161:16
fired  99:2
first  11:2,8 18:3
  22:17 29:15,24
  33:23 36:15 43:15
  44:16 49:19 51:11
  55:16 60:21 63:9
  79:16 81:8 83:14
  86:20 92:14 93:2
  93:16 94:6 96:1,8
  98:6 100:11 106:6
  112:14 113:21
  115:10,20 117:2
  117:10 120:12
  127:14,19,20
  132:11 133:21
  140:22 141:9,22
  149:12,12 152:9
  152:12 155:16,19
  157:1 164:2,10

167:18 168:24
  172:18,22 179:10
  181:20 183:5
  188:15 189:14
  192:11 195:22
  198:12 203:3
  204:25 210:17
  213:10,13 222:12
  228:6
fisker  190:10
  198:19
fit  63:2 123:2
fitzsimmons
  27:12
five  117:5 125:8
  141:20 156:24
  178:24
fix  104:24 127:1
fixed  105:2 127:1
flatly  47:25
  121:13
flaw  47:23
flawed  115:18
flip  78:14
floodgates  35:21
floor  23:21 204:8
fly  152:25
focus  32:4 86:21
  93:6 173:11
  183:18 185:13
  190:19 201:24
  202:1
focused  123:11
  147:9 169:9
  202:11
focuses  64:19
  145:14 185:22
  196:5
focusing  159:11
  189:22
fogelman  25:7
  219:15

fold  185:3
follow  37:9 63:3
  195:13 196:15,16
  196:24
followed  57:8
  178:4
following  61:16
  144:21 145:20
  185:21 197:1,20
  198:11
follows  61:16
  134:9
foolish  225:6
football  73:22
footnote  54:19
  125:8
footnotes  125:9
force  64:20
forced  68:3 88:10
  144:15
foregoing  229:5
foreign  92:18 94:5
  96:11,12,15,21,21
  97:1,12 116:5
foremost  181:20
  183:5
foresee  81:19
forever  118:18
forget  135:10
forgetting  123:23
forgot  155:12
form  38:11
  104:23 126:24
  177:25
formally  103:19
forms  43:14
forth  35:24 44:13
  96:17 140:12
  168:13 179:24
  180:1,7 182:18
  184:8 196:25
  198:2

forums 169:17
forward 53:6
  149:20 202:22
  203:18 212:5,12
  222:7 226:12
fought 84:15
  221:4
found 33:21
  105:20 108:19
  111:9,18 112:8
  129:24 131:18
  196:17 197:9,22
four 37:4 51:12
  51:14,24 53:24
  55:15 65:1,20
  72:15 74:19 105:3
  109:19 155:10,12
  163:16
fourth 70:15
  80:13 141:2
  142:10
frame 158:10
framework
  182:21
frankel 23:11
  138:18
frankly 50:4
  53:15 69:23 91:25
  117:14 134:18
  153:9 154:25
  171:5 172:24
  202:21 225:5
fraud 66:12
fraudulent 2:20
  3:2 40:4 46:23
  47:3 227:14
free 100:14
  159:11
frequent 65:11
friday 102:10
frivolous 131:13
front 60:13
  142:19 170:5

171:25 178:15
  201:12 224:7
frozen 138:13
frustrated 218:7
fsi 96:25
full 78:5 106:2
  146:13 166:21
  224:9
fully 32:5 78:4
  135:1 203:16
functioning 182:9
fund 13:10 16:17
  17:11 18:5 19:2
  95:7 151:21
fundamental
  95:15,20 154:7
  201:2
fundamentally
  112:4 153:3
  160:24
funded 94:1 95:19
funding 46:2
  95:22 96:4,5
  120:7 151:20
  176:11
funds 122:11
  124:11 150:14
  187:22
further 44:4
  56:24 94:25,25
  111:23 112:8
  131:19 134:14
  145:24 164:4
  174:19 195:9
  213:5
future 87:5
  133:15 166:17
  185:2 224:23

**g**

g 21:3 27:10 29:1
gained 55:11
gainsaid 110:11

game 73:22,22,23
  73:23 148:22
gange 27:13
garden 70:22 72:2
gas 187:9 192:6
gate 65:2,5 66:23
gatekeeper 85:12
gatekeeping
  185:19 202:4
gates 51:14 65:1
  72:15
gather 43:19 47:1
  50:7
general 21:8 22:1
  54:22 55:12 75:5
  87:11 121:12,16
  121:25 133:16
  190:14 191:22
  192:25 196:11
generally 37:18
  48:16 76:9 80:21
  181:5 182:1,13
  183:15 184:6
  189:24
general's 39:21
generous 66:9
gerard 26:24
gerber 122:5,12
  190:14 195:18
gerold 39:19
getting 29:6 54:18
  57:25 64:19 66:9
  66:9 79:12 82:10
  107:11 134:18
  135:3 145:2 150:8
  217:15 220:22,23
giddens 25:8
give 33:20 42:25
  43:12 77:11 99:3
  105:25 109:7
  118:4 126:19
  131:11 133:21
  155:9,12 156:3

160:8 163:23
  185:5 216:25
given 32:16 47:22
  50:5 53:8 57:15
  66:2,17 71:25
  75:6 82:19,20
  90:22 94:21 98:25
  129:2 141:23
  155:6 180:25
  183:10 193:16
  194:13 196:5
  223:22
gives 156:12
  224:6
giving 81:3 219:4
glad 107:2
gleit 25:9
gm 72:6,7,11
  122:5,13 131:7
  137:2 152:12
  159:9 195:19
gm's 122:18
go 29:5,14 52:6
  53:6 56:24 61:10
  63:10,12 67:3,3,4
  70:19 71:9 72:11
  74:17 78:15,15
  104:12 126:24
  127:13,19,20
  128:23,25 131:5
  132:10,11 137:12
  138:10,11,12,14
  141:9 142:17
  146:2 155:23
  156:17 164:21
  167:7 172:21
  173:19 175:3
  179:16 182:8,20
  186:15 200:11
  202:22 212:4
  215:24 217:12
  222:7 224:1
  226:12

goal   137:20
   145:10
goals   76:17
   182:13 186:7
goes   52:16 57:19
   75:12 76:25
   106:24 117:9
   130:15 135:25
   136:19 143:16
   149:20 161:14
   183:15,23 184:7
   215:5
going   29:14 34:14
   35:6 41:10,12
   42:21 49:14 50:22
   50:23 63:3 68:22
   71:3,4,5,9,15,16
   71:19 73:25 79:8
   80:18 81:24 90:7
   92:10,21 93:5
   94:13,25 98:25
   99:1,8,10,17,24
   100:6 101:4 102:7
   102:9,21 103:5
   104:22 106:19
   107:5,17 110:16
   113:4,16 116:11
   116:14,16 117:10
   124:24 125:1
   127:16 129:21,25
   133:11 137:4
   139:12,18 141:8
   141:24,24 142:8
   142:13,14 143:7,9
   143:9 144:20
   145:16,23 146:8
   151:3,16,24
   153:12 154:6,10
   155:18 156:16
   161:6 163:19
   171:22 172:10,11
   175:2 178:23
   203:13,23 204:11

204:13 205:2,8
   206:22 207:3,4
   208:15 209:19
   214:1 218:25
   219:7,23 220:14
   220:16 222:7
   224:25
gold   6:13 8:11,20
   15:25 22:13 83:9
   83:10,12,14 86:14
   92:6,6 103:12
   168:18,18,21,23
   169:13,19,22,25
   170:8,24 172:18
   173:7 174:2
   177:16
goldman   21:20
   86:12,13,17 89:10
   90:20 92:3 107:2
   164:8,11,13
   167:13,17 168:17
   178:5
goldman's   167:15
good   29:2,22 30:3
   30:4 34:23 37:5
   51:7,10 67:15
   76:3 83:9,11
   86:12 92:12 97:14
   97:15 130:25
   131:2 138:6
   140:15,18 149:7
   150:4 179:2
   188:21 204:15
   205:18
goodness   85:21
goody's   190:3
   194:10
goody's   115:8
gorrepati   27:14
gotten   74:23
   121:17
governed   42:15
   45:4 189:19 193:7

governing   61:2,3
   61:6 62:24 119:22
   192:17 197:7,7
government   23:12
   42:18 105:13
   114:16 148:4,5
   217:21 218:25
governmental
   3:22 5:4 6:19 8:4
   9:11 10:20 11:14
   12:20 23:20 38:20
   49:22,25 88:13
   93:4 114:10,19,21
   138:19 146:4
   160:19 178:10
   181:15,16 194:5
   208:9
governments
   87:13 88:9 117:13
   135:11
governs   109:17
grand   125:13
grant   30:24 31:5
   44:2 47:5 50:9
   61:20 71:10
   118:13 158:12
   200:14 222:8
granted   77:8
   78:25 86:10 97:20
   113:7 116:23
   121:20 132:6
   153:22 203:11
   227:7,21
granting   13:10,13
   16:17,20 17:11,14
   18:5,8 19:2,5
   30:11 31:3 32:8
   81:13 140:2
gratified   101:19
gravel   77:13
   189:15
great   57:19 85:4
   101:8 131:11,16

134:13,14,19
   140:18 204:16
greatly   155:13
greenberg   22:15
gregory   25:14
grievously   131:17
ground   104:20
   105:7 131:13
   146:6
grounds   80:19
   164:17 173:19
group   3:22 4:7,13
   6:19 7:7,14 9:11
   10:1,8 11:14 12:1
   12:8 23:20 24:2
   30:13 49:22,23
   103:16,17,18,25
   104:3,7 146:5,11
   147:15 181:16
   208:10,10 212:14
   217:13
groups   38:22
guess   61:15,16
   76:6 78:22,23
   90:15 132:16,24
   133:2,14,15,24
   153:22 154:15
   172:20 173:3
   174:1 175:9
   177:16 178:5
   199:12 213:10
   215:6 222:5
   226:10,11
guessing   101:10
   155:8
guidance   87:16
   108:9 123:6,9
   134:13,14 181:13
   181:20 183:11,25
   187:7 192:4
   194:21 195:4,16
   216:25 218:17

[guide - here's]                                                                                      Page 28

guide  87:5
guided  182:15
   183:5
gump  23:1 140:19
   205:12 206:4,9,25
   207:1,13
guys  167:9 223:19

**h**

h  5:3 8:3 10:19
   12:19 25:3 26:15
   27:3 187:16
hail  117:3
half  135:7 137:13
   142:25
hamilton  2:24
   21:13 43:2,6,6
   48:6,10,24 49:2
hand  87:1 167:4
   195:5
handed  109:23
handle  75:18
handled  97:7
handling  29:20
hanover  193:7
happen  33:9
   74:14 90:13
   105:15 148:17
   165:16 201:13
happened  124:1,2
   157:16 207:15
happening  130:1
happens  105:17
   148:8 219:18
happy  29:5 34:22
   40:10 49:2 51:6
   64:13 79:13 138:1
   158:19 213:8
hard  37:7 41:6
   206:23
harder  160:21
harm  129:4 135:7
   137:7 143:16
   150:11,13 160:13

214:23 223:24
harmed  131:17
   217:22
harmoniously
   133:20
harms  222:18
harold  25:12
   28:11
harrison  27:15
hash  132:20
hasn't  64:16,21
   66:14
hate  41:12
hauer  23:1 140:19
   206:9
haven't  41:25
   64:13 75:3 99:9
   99:20 154:2
headed  102:23,24
heading  40:5,6
headquartered
   196:24
health  66:4 80:22
   168:12
healthcare  46:3
   124:5
hear  30:7 34:22
   40:10,14,16 41:9
   42:1,20 48:14,17
   50:20,22,23,25
   51:6 74:25 78:18
   78:21,22 79:6,15
   79:16 80:3 83:12
   85:1,16 90:20
   92:22 99:10,11,17
   99:21 138:7,14
   140:16,21 141:24
   156:19 168:21
   172:2 199:24
   205:15 206:10,14
   206:23 207:19
   208:6 209:10,11
   213:10,19,19,20

213:23,24 214:14
   216:1,5 225:6
heard  34:25 35:11
   76:3 79:7 83:12
   98:1,3 101:21
   104:13 117:17
   119:20 137:6
   146:1 147:12
   148:3 149:9 164:8
   164:16 165:25
   166:18 168:3,21
   169:5 172:17
   176:7 192:8
   206:16 210:12
   214:7 215:8 217:8
hearing  2:1,2,2,4
   2:7,10,14,19,22
   3:1,7,8,12,19 4:1
   4:7,16,22 5:1,7,9
   5:15,15,15,20 6:1
   6:1,1,5,10,16 7:1
   7:7,17 8:1,7,9,14
   8:14,17 9:1,8,14
   10:1,11,17 11:1
   11:11,17 12:1,11
   12:17 13:1,9,16
   14:1,3,9,13,19
   15:1,9,11,18,23
   16:3,6,12,16,23
   17:1,7,10,17,21
   18:1,4,11,14,20
   19:1,8,12 29:4,5
   29:11 35:12 41:6
   50:3 60:9 70:25
   85:24 86:22 94:6
   100:17 104:22
   105:2 110:22
   118:8 134:12,13
   139:15 145:18
   149:20 154:2
   156:6,11 157:4
   161:2 162:4
   163:12,13 166:1

176:21 177:24
   203:18 204:1
   206:21 209:8,14
   210:6,9,10,15,18
   212:6 214:11,20
   214:21 217:10
   218:13,22 223:12
   223:21 224:7,15
   226:7,15
hearings  52:24
   99:5 117:21
   224:11,24 225:23
   225:23 226:16
hears  137:10
   145:7
heart  103:10
heat  202:8
heather  24:24
heavily  64:19
   108:14 141:19
   184:11
heightened  31:17
held  29:24 56:20
   58:4 63:12 87:6
   91:4,10,20 92:19
   102:18 106:21
   110:2 112:22
   115:9 116:8,17
   120:12,13 132:19
   156:7 187:5
   195:18 202:10
help  80:24 100:12
   156:14
helped  33:19
   155:13
helpful  76:21
   79:15 83:3 101:12
   148:1 173:6
   186:11 195:1
helping  214:9
helps  130:2 223:7
here's  102:6
   122:14 154:23

[here's - hospital]                                                                           Page 29

158:9,18,22
**herring** 57:20
159:4
**hey** 115:4 206:4
206:24
**he's** 61:16 84:25
115:21 156:11
**higgins** 20:19
25:10 210:11,11
210:14 213:9
219:13,16,25
220:12,18 221:2
221:14,17,21,24
222:15 223:2,14
224:19
**high** 34:12 65:23
124:13 132:17
**higher** 87:4 94:24
**highest** 87:2
**highlight** 184:1
223:16
**highlighted**
192:18
**highly** 160:10
**hill** 27:16
**hinges** 117:16
**history** 35:4 64:18
108:20 135:10
181:21 183:24
184:14,23
**hit** 101:6 102:11
138:3 139:19
156:23
**hits** 118:4
**hoc** 4:7,13 5:1,4
7:7,13 8:1,4 10:1
10:7,17,20 12:1,7
12:17,20 23:12
24:2 30:13 49:23
49:24,24 103:16
103:18 104:3
138:18 139:9
147:15 181:15,16

208:8,10,10
217:13
**hold** 57:5 125:6
152:4 224:22
**holder** 152:4
171:14
**holders** 118:12,14
**holding** 57:10
59:17 63:11 86:24
107:1,13,18
112:17,20 113:12
117:25 120:6,24
189:17 200:23,23
200:25 202:11
**holdings** 36:20
61:25 67:25 69:22
89:17 123:16
189:10 190:9,10
194:11 198:20
199:10
**holds** 91:1
**homaidin** 187:16
**home** 121:1
152:25 188:7
191:20
**hon** 1:22
**honestly** 115:23
**honor** 29:22 30:3
32:11 34:24 35:2
35:15 39:8 40:12
43:2,11 48:9,10
49:2 50:10,12,20
51:7,11,23 52:10
53:4,21 54:14,25
55:9 56:19 57:2
58:2,20 59:2,25
60:16 61:1 62:2,5
62:20 63:4,8,19
64:5,23 65:6 66:6
66:14,25 67:7,19
67:24,24 68:10,13
68:20,24 69:3,6,6
69:12,16 70:1,15

71:1,23 72:15,22
73:2,13 74:3 75:2
75:10,19 77:7,25
78:12,16 79:10,23
80:1 81:10 83:9
83:14,16,24 85:11
85:12,14,18 86:5
86:9,12 88:18,24
90:21 91:21 92:3
92:6,12,22 93:20
94:19 96:1,7 97:8
97:14,23 98:12,17
99:13,22 100:9,11
101:1,9,13,16
102:6,24 103:4,12
103:21 104:6,12
104:19 106:4,15
107:15,20 108:11
109:13,19,22
110:1,15,23 111:1
111:9,15,18 112:7
113:20 115:3,20
116:5,7,13 117:22
118:16,21 119:4
119:16 121:12,15
121:25 122:2,25
123:20 124:20,23
124:25 127:7,9
128:6,22 129:6
130:2,18 131:7,11
132:5,24 133:1,18
134:7,12 135:10
135:15,16 136:16
137:22 138:6,15
138:20 139:15
140:10,15,18
145:19,24 146:1,9
146:18,20,21,21
146:22,23,24,25
146:25 147:10,11
147:14,21 148:23
149:10 151:7,10
152:6,18,24 153:7

153:25 154:23
155:10 156:1,4,16
156:22 157:23
158:9,14,18,19
159:5,24 162:10
162:22 163:3,7,14
164:4,7,14 166:22
167:11,13,17,18
167:25 168:17,18
168:23,24 170:8
171:1,20,24 173:7
174:2,19,22 176:4
177:1,8,13,14
178:8,16 204:13
204:17 205:18,20
206:8,10,13
208:17 209:10
210:4,11,14 211:5
211:7,23 212:3,7
212:13,15 213:1,5
213:8,13 214:5,25
216:4,5,17,18,23
217:11 218:4,17
219:4,16,21,25
221:2,15,24,25
222:9 223:14
225:13 226:13
**honor's** 211:11
**honor's** 80:5
84:18 88:12 97:21
137:13
**hope** 83:1 121:17
137:12 153:6
202:22 203:16
223:8 226:6
**hopefully** 120:5
138:2 156:12
**hoping** 203:20
211:20
**hospital** 121:2,3
123:21 124:1
133:6 191:5,6

hospitals 38:20
  103:17 104:4
hour 137:13
hours 100:15
house 184:4,8
howard 2:8,12
  24:9 32:16 227:10
huebner 20:8
  29:22,23 30:1
  52:5 97:23,23
  98:9 99:3 100:9
  100:10 102:21,24
  109:13 119:13
  130:18 133:18
  134:4,7 135:15
  136:16,23 137:22
  138:5,21,24
  139:22 140:11,24
  141:5,14,20 142:6
  143:4 147:24
  151:10 152:24
  153:20,25 154:14
  154:23 155:16,18
  157:10 158:3,8,19
  159:5 160:2,15,22
  163:4 165:14,21
  166:3 168:2
  170:25 171:7
  172:21 177:14
  178:7,8,12,16
  210:17
huge 84:6,22
  151:10
hundred 107:12
  155:19
hundreds 100:19
  122:10
hurley 23:9 205:7
  205:12,18,20,22
  206:1,3,8,9,13,16
  207:4,10,19,22
  208:7,13,17,19,24
  209:1,12,17,21

210:4 222:12
hyde 19:25 229:5
  229:10
hyder 25:11
hypothetical
  149:23 160:4
  221:13

**i**

i.e. 31:14 36:15
  45:15 81:4 179:22
  180:3 185:12,19
  189:3 192:12,13
  195:24 200:11
  201:24
idea 74:10 109:9
  154:20
identical 169:2
identification
  218:5,10
identified 47:22
  168:19 209:22
  218:14 221:22
identify 149:15,20
identifying
  211:13
idiots 156:4
ignore 63:19
ii 5:19 6:4 8:16
  13:12 16:19 17:13
  18:7 19:4 123:16
  180:17 188:6
  189:17 198:2
  199:10 201:16
  202:5
iii 16:20 17:14
  18:8 19:5 92:17
  131:15 180:19
  198:5 201:23
illegal 118:18
illegitimate
  114:20
imagine 134:8
  135:18

immaterial 95:22
immediate 70:16
  80:14 92:25
  180:19 184:19
  185:7 198:5
immense 35:20
immensely 76:22
  186:11
imminent 204:6,6
immunities 96:11
  96:16,22 116:6
immunity 116:10
impact 37:2 66:2
  111:20
impacts 93:25
impaired 68:2
impairment 68:1
impartial 99:6
impeded 186:13
impermissible
  168:4
implemented 91:5
  144:25
implicate 112:12
  168:11
implications 56:5
implicitly 143:14
  193:25
importance 54:1
  65:6 72:13,20
  75:6 76:15 80:20
  80:20 82:19 84:1
  84:6,22 85:4,13
  85:15 86:8 90:22
  119:19 120:14,21
  121:8 122:13,16
  122:18,20,24
  123:1,13,17,22
  124:13 146:15
  153:8 165:9
  180:12 183:20
  186:5 191:12,15
  192:14 194:24

195:2,15,18,19
important 31:12
  37:14 51:18,25
  60:18 65:10,12,16
  65:24 66:15 68:16
  70:9,14 72:18
  73:24 74:13 82:11
  84:5,8 90:16
  101:22 103:13
  104:18 106:23
  112:25 120:3,10
  120:11,17 122:15
  123:3,15 124:21
  130:14 138:24
  141:21 145:3,17
  145:17 150:6
  152:8 161:8 162:8
  162:8 163:10,12
  165:1,4 170:10
  187:20 190:16,24
  190:25 200:20
  202:9 223:22
importantly
  182:14
impose 58:8 61:12
  112:5 125:20
  129:4
imposed 62:13
  169:10 174:13
imposition 59:5
  197:3
impossible 114:5
impression
  115:10
impressions
  212:11
improper 38:3,7
  116:3 136:4
improve 120:5
improving 137:15
inadvertence
  36:16

inappropriate
  117:12 160:10
  212:10
incarnation  215:6
inch  76:25,25
include  43:23
  46:13 169:23
  223:3
included  42:3
includes  29:10
  196:22 197:12
  223:12
including  31:7
  36:25 37:3 38:19
  39:23 101:9
  111:25 113:12
  117:23 118:19,24
  127:18 134:15,15
  139:25 151:22
  196:16,23 200:16
  201:6 209:4
incomplete
  184:13
inconsistent  189:1
  189:2
incorporate  44:22
incorporates
  44:20 214:12
incorrect  98:12
  99:22 150:21,22
increase  144:7,19
increasingly
  65:11
incredible  98:3
incredibly  75:5
  89:12 121:14
  122:1 145:17
indemnification
  112:2
independent
  51:12 73:19 83:17
  111:5,8

independently
  44:1 187:13
indicated  82:2
indication  75:8
indiscernible
  30:10,11,12,14,15
  30:16,17 40:13,20
  41:2,3,4,19 42:10
  42:17,18,18 48:12
  50:11,14 52:18
  53:2,12 55:11
  57:20,22 59:14
  61:14 66:2,10
  70:20 72:7,12
  85:23 87:18 88:21
  89:4,5,9 90:12,13
  91:2,3 92:9,15,16
  92:17,19 94:15
  95:11,18 96:2
  97:18 99:23
  103:18,20,25
  104:17 107:3
  111:25 112:13
  113:13 122:6
  126:11 127:24
  132:1,3,4 136:18
  137:15,25 147:23
  148:21,23 149:1,4
  149:20,21 150:3,7
  151:6 156:2
  159:19 162:10
  163:5 169:20
  174:18,20,22
  175:7,8,9 205:3,4
  205:24 206:18
  207:11,14 208:2,7
  208:9,11,13,21,22
  209:3,8,25 210:1
  213:9,17 216:4,15
  216:16,24 219:8
  221:1,6
individual  4:8,13
  7:8,14 10:2,8 12:2

12:8 24:2 30:14
  49:23 66:7,11
  113:25 114:4
  147:16 160:23
  161:23 168:1
  208:10 220:3
individually
  100:19
individuals  151:2
  161:10 218:14
individual's
  148:25
industries  120:19
  191:18
industry  122:8
ineffectual  160:5
inefficient  132:15
ineligible  124:5
inextricably
  152:3
infer  32:1 169:14
inferior  87:5
infirmity  59:7
influence  223:17
information  13:13
  16:20 17:14 18:8
  19:5 53:19 95:4
  100:17 212:10
inhabitants  84:9
  84:13
inherently  85:22
  106:13 117:17
  118:17
injunction  47:2
  47:22 61:20
  106:23 112:6
  113:24 194:18
injunctions  62:14
  77:8,9,9 90:10
injunctive  46:21
injured  220:3
injury  31:23
  38:19 59:4 104:1

181:17 220:3,6
innovated  115:11
innuendo  67:12
  67:13
innumerable
  132:16
insisted  104:19
  126:6 152:2
instance  141:6
  164:2 184:25
instances  174:15
  202:14
instant  100:15
instructive  121:14
insurance  111:25
  161:16
integrity  68:17
  70:3,12
intend  95:11
  127:17 154:2
  165:23 209:22
  211:15,17
intended  183:24
  196:7 215:12
intending  197:13
  222:22
intends  129:10
intensely  117:18
intensive  126:10
intent  166:23
  183:17
intentional  36:18
interacts  65:12
intercreditor
  126:5
interest  34:2
  47:25 66:16
  135:20 136:6
  181:18 203:5
  223:24
interested  84:14
  92:24 164:1

**interesting** 87:1
158:15 170:8
**interestingly**
125:5 161:1
**interests** 139:16
162:5
**interfering** 206:5
**interlocking**
38:18
**interlocutory**
81:21 185:16,22
**intermediate** 78:9
**internal** 82:16
**internet** 117:25
**interpret** 64:4
90:12 120:14
133:3 166:3
**interpretation**
144:24 172:21
187:21 191:1,3
198:8
**interpreted** 36:21
127:12 147:1
**interpreting**
30:22 31:7 46:21
180:5 183:6
**interrupt** 53:13
**interrupting**
98:17
**intervene** 74:14
**intervening** 36:17
77:15 148:15
218:24
**intra** 125:11
127:2
**introduce** 221:12
**introducing** 186:2
**intuitively** 198:16
**invested** 46:11
**investigation**
33:24 34:3 38:2,6
**investment** 31:7
36:22 110:9 188:7

**investments** 46:7
46:14 191:20
**invoked** 130:24
**involuntarily**
88:17
**involve** 118:5
139:22 140:8
190:25
**involved** 33:17
39:17 122:6
124:18 135:7
159:12,13 226:11
**involvement** 33:1
112:9
**involves** 110:12
120:22 172:3,15
172:22 180:9,11
180:17 191:11,11
192:13 195:24
**involving** 43:16
55:24 76:20 186:9
187:21 190:24
201:17
**ira** 4:18 7:19
10:13 12:13
**ironically** 102:1
182:25
**irony** 101:25
**irrelevant** 162:21
162:23 189:5
212:10
**irreparable**
214:23 223:24
**irve** 21:20 86:12
**isaacs** 18:21 24:11
50:10,10,14,16,17
50:19,24 51:2,4
97:24 98:5,7,12
98:16,24 99:13,15
99:22 100:3,5,11
**island** 83:19,21
**isn't** 71:8 72:3
73:21 78:25 145:5

148:17
**israel** 25:12
**issuance** 224:21
**issue** 32:5 53:22
55:2,4,21,25 56:4
56:10,21 57:16
59:10 62:22 63:25
64:17,23 65:8,9
65:17,21 66:2,20
66:21 68:1 70:11
78:8 79:6 81:12
81:14 82:1,3
90:25 91:6 93:16
94:2 95:15 96:6
97:6 98:15 100:8
105:18 117:15,18
122:19,21 123:3,9
123:13,19 124:7
125:21 131:14
133:7,14 142:5
145:6,7 156:1
157:2,24 158:18
159:1 161:3,9
162:9,15,21 163:9
163:10,11,12,25
167:9 170:16
172:24,25 173:1,1
174:13 176:17
179:19 180:6
185:19 187:20,20
189:13 193:14,20
194:24 195:21
196:8 197:23
201:1,22,22 202:9
202:13 203:13
211:4 215:6
217:23 218:16
219:11,11,21
220:14 221:3,20
222:13 223:16
225:14 226:10
**issued** 102:13
134:13 143:19

211:7
**issues** 45:10 55:24
56:11,15,23,25
58:17,23 59:4
65:7 70:5,24
72:20 74:13 77:10
79:3 80:11 81:21
84:8,19 85:1 89:5
90:16 92:16 93:13
97:3,17 99:12
103:2 137:1 138:2
139:21 140:1,2
142:1 158:6 163:1
165:5,8,8 169:3,6
169:8 170:11,13
170:15,19,21
171:22,23 172:3,7
172:10,13,16
173:10,14,15,18
173:24,25 176:12
179:12 182:2,15
182:23 188:5
192:3,5,9,17,23
193:6 196:13,16
200:21 202:3,4,24
203:23 204:16
214:8,21,23 215:2
215:4 217:17,18
222:18
**issuing** 71:1
**items** 222:25
**it's** 34:9 36:4
42:14,19,21 48:17
48:23 50:20 51:18
51:24 53:22 54:1
54:8 55:2,10 57:7
57:10,10 58:3,17
59:20 60:1,1,13
61:23,24 64:5,8,8
64:8,8,23 65:9,16
65:23 66:4,4
67:19 68:16 70:12
70:12 71:3,6,14

71:15,19,25 73:25
75:23 77:20 78:2
80:18 81:12,18,18
81:19,24 82:7
86:2,25 87:19
88:7 90:11,18
92:15 95:2,15
98:21 99:22
102:24,25 104:18
105:16 106:4,7
107:6 108:12
109:3,11 110:7
112:14 113:16,17
114:25 116:16,19
117:9,14 119:7,19
120:9,10,16 121:8
121:9,14 124:8
125:1 126:16
127:9 129:14
130:2,18 131:22
132:20,22 135:6
136:4,5 137:7
138:24 139:25
141:24 145:11,16
145:17 146:19
148:18,22 149:7
150:25 151:16
152:7,14 153:25
154:6,20 155:5
157:2,20 158:15
158:15,16,16
159:1,16 160:4,5
**iv** 120:19 124:15
191:18
**i'd** 48:21 50:20
64:13 132:14
154:20
**i'll** 30:1 40:1
49:15 54:14 74:17
77:11 83:4 109:13
109:19 119:13
120:13 131:11
150:4 154:8

156:19
**i'm** 29:6,14,16
34:2,3,22 41:5,6
41:11,22 48:16,24
49:2 50:4,22,22
51:6 53:21 60:5,5
60:20,20 63:3
64:1 67:16 71:23
74:20,22 80:25
92:21 98:8 99:8,9
99:10,16,16,24
102:7 104:25
107:2 109:2
110:16,24 113:3
114:22 116:11,14
117:10 124:24
127:1,15 136:24
137:3,25 144:20
145:16 146:7
151:15 152:20
153:15,16,21
154:11,11,17,18
154:19 155:2,4,7
156:8,9,16 158:19
159:8 160:8
**i've** 42:1 47:22
48:19,21 60:8
62:9 69:20 73:14
98:13 152:7
159:25

___
**j**
___

**j** 4:13 6:13 7:13
8:11,20 10:7 11:7
12:7 15:20,25
18:1 20:19 21:20
22:13,21 24:6
26:12,16 27:2
**jacob** 28:4
**jaffe** 120:15
124:16,19
**james** 2:16 3:4,21
6:18 9:10 11:13
20:10

**jamie** 27:6
**jasmine** 24:17
**jeffrey** 23:24 25:9
26:12 146:3
**jeremy** 27:16
**jersey** 2:25 21:9
39:17,18,20,23
40:7,9 42:23 43:7
43:18,20,21,22
45:2,9,16,23 46:1
46:6,7,17 47:1,8
47:10,24,24 94:2
95:6,9 115:23
156:1,6
**jersey's** 39:20
**jevic** 59:13 91:1
91:11
**jill** 24:13
**jim** 34:24 43:9
**jo** 28:10
**job** 33:4 74:11
**joe's** 72:3
**johns** 61:8 62:12
107:18 141:6
196:25 198:17
**join** 39:16
**joinder** 4:7 7:7
9:1,3 10:1 11:1
12:1 49:22 79:25
83:16 115:20
116:3,12 176:6,7
177:22,24 179:8
228:5
**joinders** 55:5
**joined** 44:9,14
49:14 179:18
**joint** 2:22 14:10
14:14 16:4,7,24
17:2,18,22 18:12
18:15 19:9,13
56:18 59:3
**jointly** 43:18 45:7
83:17

**joke** 95:20 132:13
**jones** 25:13 37:21
**joseph** 20:11
25:14 27:9 28:1
**jr** 3:21 6:18 9:10
11:13
**jude** 120:19
**judge** 1:23 3:7
29:3,7 39:11,11
46:9 48:12 53:8
55:18 56:18 58:21
61:2,11,18 63:1
66:17 67:13 68:18
68:18 69:23 70:4
72:17 73:8,14,17
73:18,18 74:3,15
75:11 76:2,12
77:5,15 78:19,21
78:22 81:24 82:4
89:5 94:8,12
101:15,18,23
102:6,13,17 103:8
113:4,9,11 117:11
122:5,12 123:11
125:15,16,18
126:23 127:24
129:6,14,19,24
130:9 131:4,10,15
131:15 133:12
135:2,3 136:6,10
136:25 139:22
142:14,15,23
146:13,16 149:13
152:19 153:5,9,11
154:5,25 158:4,5
158:11 160:7
163:6 164:3
165:17 166:16,16
170:5 172:1,4,5
172:25 173:22
179:2 195:18
197:5,9,21 199:13
199:22 200:4,6

201:9,12 203:7,12
203:14 204:7
211:2,22 212:21
223:22 224:5,15
224:21 226:7
**judge's** 201:9
**judgement** 47:7
47:11
**judger** 190:14
**judges** 69:4 70:6
82:17 92:17
133:10,13 224:2
**judgment** 172:22
175:5 180:8,17,19
184:19,24 195:24
198:5
**judicial** 37:2
40:20 41:16 87:3
87:6,10 148:23
181:7 182:7
198:10 215:9
**judicious** 77:2
**julius** 24:21
**july** 121:23 190:4
**junctures** 104:21
**june** 56:17,24
58:21 121:19
158:5
**jurisdiction** 44:10
45:1,14 46:15,18
47:18 61:17,21
89:3 96:12,21
97:1 111:11 112:5
146:25 173:13
191:4 192:19
197:24
**jurisdictional**
92:16 97:3,6
142:5 182:21
**jurisdictions**
88:19
**jurisprudence**
76:9 120:23

121:11 123:7
182:9 185:17
191:17
**jurisprudential**
181:23 182:17
194:25 195:16
202:9
**jury** 199:16
**justice** 20:14 21:1
40:3 76:24 84:16
125:3 219:12
**justice's** 219:11
**justification**
178:19 214:23
**justifies** 117:1
**justify** 107:11
115:7 126:22

## k

**kaminetzky** 20:12
204:14,22 205:1,1
**kaplan** 22:8 83:10
**karen** 27:21
**kate** 26:19
**katherine** 26:7
**kathleen** 26:2
**kathryn** 24:19
**katie** 28:9
**keenly** 146:14
**keep** 50:14 74:7
98:17 119:16
123:22 130:10
149:19 154:10
**kenan** 26:14
**kenneth** 5:3 8:3
10:19 12:19 25:3
**kerr** 162:18
**kesselman** 25:15
**kevin** 25:21
**key** 171:7
**kind** 66:8 73:21
132:17,22 135:16
142:16

**kirschenbaum**
96:23 97:5
**kirwan** 113:12
**klein** 25:16
**kleinberg** 22:8
83:10
**knauth** 27:17
**knew** 118:24
133:11
**know** 29:20 32:22
34:8 35:14,22
42:19,23 48:2
60:19 61:23 68:6
69:21 70:8 73:23
73:23 75:19 77:6
79:16,24 81:6
82:20 86:6 92:23
93:4,24 94:12
97:25 98:14,15
101:23 102:22
103:22 106:17,18
108:11 116:11
121:23 124:8,10
125:8,9 133:20
135:20 136:1,23
137:5,13,23 138:1
142:10 144:21
145:16 146:13
151:19,23 152:2,7
154:6,7,7 155:2
155:18 156:13
157:15,16 159:8
159:25 160:11
164:16,17 166:23
167:21 168:5,7
171:20 173:21
175:1 207:14
209:19 210:9,14
214:17 215:23
217:3 219:12,17
219:17,18 222:10
223:6,10,12
224:13,15 225:11

226:6,9
**knowable** 152:15
**knowing** 73:20
102:8 154:25
200:6,7
**knowledge** 130:3
**knows** 129:6
214:17
**kramer** 23:11
27:18 138:17
**kudos** 77:12

## l

**l** 26:25 187:16,17
**l.p.** 1:7 2:17 3:1
4:14,20,23 7:14
7:21 10:8,15 12:8
12:15 14:15 15:20
16:8 17:3,23
18:16 19:14 29:3
**l58** 4:4
**lab** 123:15 189:17
199:10
**labeling** 34:9
**labovitz** 27:19
**lack** 116:19 184:7
194:1
**lacks** 44:10,25
**ladder** 115:12
190:2
**laid** 113:13 218:4
**langley** 25:17
**language** 52:15
93:6 151:16
181:20 183:5,8
**languish** 85:9
**large** 114:19
126:4
**largely** 214:15
215:1 221:20
222:22
**late** 29:6 30:9,21
31:6,13,15,16,18
32:2,14,23 36:14

37:15,16,23 39:4
**laundry** 68:13
**laura** 25:6
**lauren** 27:5
**law** 3:13 13:2,17
14:13,20 15:1
16:6 17:1,21
18:14 19:12 30:21
31:7 55:20,21
57:3 59:13 60:22
61:3,3,7,24 62:1,6
62:24 63:9,10,17
66:23 70:13,13
71:7,18 72:20
73:6 76:20,25
77:11,11,13 80:17
84:16 86:19,24,25
87:5 88:24 89:16
89:20 96:18
102:20,25 105:7
105:12,14,19,22
105:23 107:16
108:5,14 109:22
110:13 111:3
114:11,24 115:2,7
115:23 116:14,21
122:14 123:4,6
126:19,20 127:13
128:23 131:24
139:22,25 141:5
143:11 147:21,25
155:12 160:25
161:25 162:14
166:25 167:5
168:12 171:2,3,19
172:23,23 174:1
178:19 180:18
181:9 182:18
183:19 184:1,3,11
184:15 186:10,14
187:5 188:1,2,3
188:10,23 189:4,8
189:11,12,13,21

190:8,21 191:15
192:16 193:3,4,14
194:13 195:2,3,9
195:25 196:1,3,4
196:6,12,16,24
197:5,7,12,12,13
201:4,5,11,17
221:10 227:19
**lawful** 136:8
**lawrence** 25:7
**laws** 84:14 118:22
168:13 180:9
**lawsuits** 112:9
**lawyer** 55:1
119:25 197:11
**lawyering** 85:4
**lawyers** 134:25
**lay** 130:10 143:4
**layer** 134:21
**lays** 171:19
**lead** 70:18 169:13
183:16
**leading** 185:10
**leapfrogging**
198:13
**leave** 32:13 90:21
109:13,19 114:18
116:11 117:3
119:13 204:20
**leaves** 87:14 133:3
218:16
**leaving** 44:22
114:18
**led** 55:1
**ledanski** 19:25
229:5,10
**lees** 25:18
**left** 88:5 203:20
**legal** 55:16 56:1
59:20 60:19 64:23
66:2 70:5 86:1,9
100:8 103:2
106:14 111:17

115:14,16 116:24
117:15 120:22
121:10 122:16,19
123:13 127:10
140:1 148:8,10
158:18 159:1
163:24 172:3,7,13
173:14,23 188:5
190:21 191:16
202:3 215:2
219:23 221:7,20
229:22
**legality** 110:3
123:12
**legally** 111:17
136:3
**legislation** 65:20
**legislative** 64:18
181:21 183:23
184:14,22
**legitimate** 114:20
**lehman** 128:12,13
128:15,20 199:8
**length** 37:1 39:1,2
57:8 122:4 161:10
161:12 170:25
188:9 192:16
**lengths** 57:19
100:13
**lengthy** 31:17
38:15 70:25
**leonard** 27:20
**letter** 2:10,19 3:3
3:7 32:17 33:14
36:6,7 37:22
56:24 58:22
158:12 212:9
217:19 222:1
227:13
**letters** 102:14,15
158:4
**letting** 84:15

**let's** 55:14 60:8,10
60:11,22 61:10
67:5 69:10 103:14
104:12 106:20
108:7,24 109:12
109:21 113:3
114:13 117:2,2,10
120:12 121:12
123:20 126:20
127:13 128:22,23
135:10 158:21
**leung** 27:21
**level** 62:7 64:20
71:25,25 110:8
123:6 130:6
181:10,10,12,13
188:18,19 189:5
189:11,12,12
192:17 193:8,10
193:11,11 196:4
200:16,23 201:6
**levene** 25:19
**leventhal** 25:20
**levin** 23:11 138:17
**levinson** 27:22
**lexington** 20:5
23:21
**lexis** 187:17
189:15 190:4,11
191:21 198:20
**li** 99:4 226:8
**liability** 111:17
**liesemer** 23:24
146:1,3,3 147:10
**life** 33:8 63:16
81:5 200:19
**light** 133:4 135:25
204:6 211:1,25
214:4
**likelihood** 47:21
94:22 201:18
**limit** 37:10 102:13
178:1 182:23

**limitations** 194:4
**limited** 15:3,13
  31:8 36:23 78:10
  111:15 186:1
**linda** 3:16 5:12,22
  13:6,20 14:6,24
  15:6,15 26:9
**line** 37:7 63:22
  87:17 106:5
  109:24 159:22
  206:7,25 227:4
  228:4
**lines** 59:13 206:4
  215:12,14
**link** 99:5
**links** 118:1
**liquidation**
  146:24 159:9
  193:9
**list** 68:14
**listed** 37:17
**listen** 15:18
**listening** 107:16
**lite** 22:15
**literally** 114:3
  117:7 118:2
  177:14 178:23
  192:1
**litigant** 58:16
  120:22
**litigants** 65:15
**litigating** 135:23
**litigation** 5:5 8:5
  10:21 12:21 23:13
  39:17 40:23 41:16
  42:3,16 43:17,25
  44:5 45:9 46:17
  90:9 134:5 138:19
  183:22 185:2
  214:22 222:15
**little** 29:6 30:19
  70:21 74:21 82:7
  90:15 101:5

102:22 104:9
  141:4 151:16
  153:10 205:9,10
  212:15
**live** 210:7 223:16
**livelihoods** 122:9
**lives** 120:5 137:15
**llc** 13:12 16:19
  17:13 18:7 19:4
  21:15 110:9
  123:16 189:17
  190:9 199:10
**llp** 20:3 23:11
  24:1
**logic** 133:16
**logically** 169:14
**long** 81:9 95:8
  106:16 154:9
  159:25 201:5
  203:21 210:15
  218:15
**longer** 81:14 82:3
  136:12
**look** 56:8 64:13
  75:4 97:15 106:5
  111:1 121:12
  123:20 126:20
  131:7 141:14,15
  158:20 160:17
  212:12 219:4
**looking** 108:19
  114:24 166:19
  172:8 212:20
  221:12 222:17
**looks** 129:22
**lose** 37:12 115:5
  121:5 122:2
  123:17 129:1
**loser** 117:9
**loses** 127:23
**losing** 144:9
**loss** 115:6

**lost** 33:5,6
**lot** 72:4,5 77:1,5
  82:8,12 93:5
  104:13 105:6
  116:14 119:20,20
  121:13 133:3
  138:22 143:3
  146:6 161:14
  163:18 170:5
  202:8 215:8 216:1
  222:21 225:24
**lots** 55:24 120:16
**love** 131:24
**low** 85:6
**lower** 76:11,11
  77:22 85:16 92:22
  199:4
**lp** 179:3
**lucas** 26:15

## m

**m** 24:24 25:13,24
  26:22 27:19 28:9
  187:16,17
**m10-468** 131:21
**ma'am** 162:14
**maclay** 25:21
**madoff** 110:9
  111:10,13 112:21
**mae** 187:16
**magali** 25:8
**magnitude** 85:3
**mahalaxmi** 28:5
**mahlum** 27:23
**main** 21:17
  115:23 141:22
**maintain** 171:18
**major** 105:8
  125:3
**making** 33:20
  67:13 108:22
  130:23 162:2
  172:20 173:20
  177:22,25 200:16

**malleable** 157:25
**man** 204:13 206:4
  206:24
**mandamus**
  185:22
**mandated** 55:10
**mandates** 91:15
**mandatory** 51:16
  83:25 109:8
  194:18
**manifestly** 185:6
  185:6
**manner** 31:13
  220:25 222:3
**mantle** 148:4
**manufacturers**
  39:24
**manville** 61:8
  62:12 107:18
  109:24 127:24
  128:10 141:6
  159:22 160:1
  196:25 198:17
**mara** 25:20
**marc** 20:11 25:15
  26:17 205:6,11
**march** 143:21,24
  144:5 190:2
  191:22
**maria** 25:2
**marine** 60:7,8,9
  66:18 67:1 69:17
  69:25 113:5
  126:17 160:7
  161:16 197:6
**mario** 24:23
**mark** 120:19
  124:15 191:18
**marked** 210:8
**market** 21:10
**marshal** 100:2
**marshall** 20:8
  29:23 58:14 89:18

[marshall - methodology]                                              Page 37

89:19 90:24 97:23
100:9 131:14
173:12 192:23
201:3,11,15
**mary** 28:10 117:3
**maryland** 16:14
22:1,2 80:2 83:18
164:15 168:8
208:1 213:14
215:11 216:10
**masks** 153:9
**massive** 172:16
**master** 13:11
16:18 17:12 18:6
19:3
**masumoto** 25:22
**material** 95:2,16
128:18 176:12
**materially** 70:16
71:13,14 80:14
93:1,9,25 97:18
127:8 141:17
180:20 184:20,24
185:12 198:6
**mathew** 25:5
**matter** 1:5 29:15
29:24 32:12 39:14
39:15 44:10,25
46:15 49:8 54:1
54:10,11,13 59:19
63:21 65:5,23
70:12,12 71:6
72:10,13 73:24
81:17 84:1,5
85:13,15 86:8,25
92:15 94:16 97:1
97:6 103:14
111:19 112:5
114:7,19,19,20
120:21 122:16,18
122:23 172:4
175:12 180:3,12
184:16 190:16,16

190:25 191:11,12
191:15 192:14
194:15 195:15,17
195:19 199:14,18
203:1,20
**matters** 50:23
53:6 58:23 59:11
65:14 70:7,14
84:22 85:17
103:11 183:20
188:22 190:24
**matthew** 6:13
8:11,20 15:25
22:13 27:12 83:9
92:6 168:18
**maura** 26:2
**maxcy** 25:23
**ma'am** 43:5 60:12
99:9,16
**mcclammy** 2:16
3:4 20:10 34:23
34:24 35:2 39:8
43:9,9 48:6,8
117:25
**mcgee** 162:18
**mckinsey** 33:17
**mckinsey's** 32:25
**mcmahon** 53:8
55:18 56:18 58:21
72:17 73:9,14,17
74:3,15 75:11
76:12 77:5 78:19
78:21,22 81:24
82:4 89:5 94:12
101:15,18 102:7
102:13,17 103:8
117:12 129:6,14
130:9 131:4,10
133:12 135:2,3
136:10 142:15,23
146:13,16 152:20
153:6,9 154:5
158:4,5,11 163:6

164:3 165:18
166:16 172:1,4,5
172:25 173:22
199:22 200:4
201:12 203:12,14
204:7 211:22
223:23 224:5,16
226:7
**mcmahon's** 200:6
203:8 211:2
212:21 224:22
**mcmahon's** 29:8
76:2 101:24
139:23 142:14
149:13 153:11
155:1
**mcnulty** 25:24
**md** 22:4
**mean** 40:22 53:24
67:9 73:12 82:10
90:1,9 102:15
106:17 109:7,7
112:15 116:8
119:12 132:22
133:21 141:7
153:1 157:11,17
160:16 167:6
169:14 170:10
172:18 175:10
176:18 178:23
221:3,5,17 222:16
223:3,6 225:22
**meaning** 80:21
186:19 189:2
**meaningful** 81:3
90:14
**means** 91:8
118:19 183:2
**meant** 201:24
202:1
**mechanism** 96:20
**mediation** 103:17
126:6 151:23

**medical** 122:9
**meet** 123:8 202:18
216:9,14 217:16
**meeting** 124:16
**meises** 25:25
**melissa** 26:25
**member** 42:8
**members** 66:7
**memorandum**
3:13 13:2,16
14:20 15:1 29:8
221:10 227:18
**memory** 115:21
**mental** 212:11
**mention** 92:7,7
**mentioned** 74:5
85:15,20 86:14
88:6 139:15 142:6
163:17 202:1
212:8
**mere** 128:16
198:13
**merely** 105:13
107:10 115:10
132:14 172:8
**merit** 167:3
**merited** 122:17
**meritorious** 45:5
51:21 131:18
**merits** 30:25 32:4
35:7 47:21 51:18
52:9 55:3 75:11
81:6 129:21
153:13 169:6
173:16 182:4,12
182:16,16 211:24
212:8 223:25
224:5,10
**met** 165:1 180:2
187:13,15
**methodology**
223:9

**metromedia** 57:4
57:10 60:24,24
61:7,20 62:12,22
63:2,12,15,18
86:20 87:14 88:5
104:24 105:6
106:18 107:13,18
107:22 108:1
109:21,23 110:6
110:21 112:19,20
112:22 113:6,6,9
113:15,19 114:15
116:15 125:17,19
126:18,24 127:5
140:1,2,8 146:23
159:22 160:1
195:12 196:17,25
197:1,9,17,22,25
**metromedia's**
87:8
**mexico** 120:20
191:19
**mic** 206:22 207:8
207:9
**michael** 24:16
26:3
**michele** 25:25
26:8
**microphone** 40:15
205:9 207:21
**mics** 207:2
**mid** 129:22
**middle** 99:23
110:7 147:25
153:5 156:11
**mill** 81:15
**millennium**
123:10,15 124:15
189:16 199:9
201:16
**miller** 26:1
**million** 36:10

**millions** 36:10
84:6 118:3
**mind** 38:7 198:15
**minds** 62:5 70:4
84:17
**mineola** 229:24
**minimum** 41:4
**minute** 103:14
127:23 128:22
133:1
**minutes** 69:2 99:4
101:1 105:7
107:24 108:22
121:3 127:16,21
178:24
**misapplied** 108:2
**mischaracteriza...**
174:4
**miscited** 60:21
**misconduct**
112:11
**misinterpreting**
69:7
**misled** 38:9
**misperception**
111:7
**misrepresent**
153:2 197:13
**misrepresentation**
111:7 126:16
**missed** 77:14,16
151:11 177:16
217:9
**misstates** 102:19
102:20
**mistake** 36:16
**misunderstanding**
119:25
**mitch** 206:4,7,9
206:24
**mitchell** 23:9
**mixed** 173:25
188:2

**mixing** 159:22
**modification**
95:25
**modified** 14:9
16:3,23 17:17
18:11 19:8 88:12
126:23
**moline** 193:7
**mom** 72:3
**moment** 73:21
74:1 106:5
**monaghan** 26:2
**monday** 225:17
**money** 32:6 52:3
105:11 107:10
113:22 114:6
142:25 145:2
151:23 160:12
224:25
**month** 3:8 33:22
142:25 143:15
165:15 199:16
203:8
**months** 36:11
37:23 38:15 75:7
129:4 143:21,22
143:24 144:3,5,13
144:18 152:10,13
152:16,16
**moot** 82:3
**mooted** 135:3
163:6
**mootness** 199:20
202:23
**morales** 24:12
167:14 175:2,4,11
175:13,16,18,22
175:24
**morning** 29:2,22
30:3,4 34:23 51:7
51:10 83:9,11
86:12 92:13
140:15,18

**morning's** 203:7
**mortgage** 121:1
188:7 191:20
**mortimer** 151:4
**motion** 2:4,7,10
2:14,19,22 3:2,14
5:7,8,10,16,19,20
6:2,5,6,10,12 8:7
8:8,10,15,17,18
9:3 13:1,3,10,16
13:17 14:1,2,4,19
14:21 15:1,2,5,9
15:10,12,14,23,24
16:12,17 17:7,11
18:1,5,20 19:2
29:9,12,16,16
30:9,11,20,24
31:3,4,5 32:8,13
32:20 34:7 35:9,9
35:18,25 36:3,4
38:12 39:5,15
40:1,8 45:6 46:20
48:2,5,22 49:9,12
49:14 50:5,6,9,18
50:23,24 52:20
54:23 55:5 58:3
73:1 74:15 83:17
83:17,22 93:18
94:4 98:1,8,10,22
99:9,12,18,19
100:7,20,21,23,23
100:24 102:12
116:4,12 134:2,3
140:25 141:1
142:19 145:9,18
147:22 156:5
169:2 172:9 176:5
179:9,11,18 182:6
202:16 203:5,9,11
203:14 204:2,4,18
206:16 208:5,21
210:18 211:11
212:7 214:25

215:22 223:1
227:5,9,13,19
**motions** 3:19 4:1
4:8,17 5:2 6:16
7:1,8,18 8:2 9:8
9:14 10:2,12,18
11:3,11,17 12:2
12:12,18 29:13
44:2 50:2,3 81:17
82:9,14 100:1,20
115:21,23 119:12
132:18 139:10
140:13 145:7
179:4 180:25
181:14,25 182:3,5
182:16 183:3,12
192:18 195:22
202:25 203:4
208:15 209:4
210:25 214:16,20
228:7
**motor** 159:9
**motors** 75:5
121:12,16,25
146:24 190:14
191:23 193:8
196:11
**mouth** 149:13
**movant** 31:14
32:16 37:4,5,20
39:4 132:6 156:11
190:7 208:7
217:20
**movant's** 177:23
207:25 208:3
**movants** 113:15
114:13 118:16
122:25 126:6
128:14 145:12,13
145:21 147:3
151:22 154:3
156:20 174:25
187:12 192:10

194:24 202:4
209:1,21,23
222:16,19
**movant's** 37:24
115:13
**move** 54:14 65:1
69:10 80:23 91:15
102:7 103:4,10
109:12 113:4
129:25 132:14
133:23,25 136:9
142:15 146:11
157:23 158:21
162:11,20 166:24
166:25 176:14
182:24 183:1
187:14 200:1
203:18 207:20
211:6 225:20,20
225:21
**movements** 57:6
**moving** 115:24
116:4 139:6 163:3
165:22 168:2
**msge** 122:3
**muffled** 153:10
**mullane** 146:24
**multi** 3:22 6:19
9:11 11:14 23:20
49:22 94:21
103:25 146:4
**multiday** 210:23
**multidistrict**
40:22 41:16 42:3
42:14,15
**multiple** 57:8
62:20 68:8 74:5
89:17 96:10
104:21 107:23
112:12,16 115:3
117:5,21 189:10
193:1

**multiples** 103:23
**multipole** 107:23
**multistate** 181:16
**municipalities**
94:6 96:9
**municipality** 11:2
11:8 18:2 22:16
49:18 92:14 179:9
228:5
**mute** 156:17
204:21 206:6
207:9
**muted** 206:5,25

### n

**n** 20:1 29:1
187:16 227:1
228:1 229:3
**nadine** 27:8
**naftalis** 23:11
138:18
**nail** 221:4
**name** 43:4 62:19
157:12
**nan** 21:6 51:7
**narrative** 147:18
148:19
**narrow** 59:16,17
90:4 100:7 111:23
124:18 169:9
182:2
**narrowed** 77:9
**narrower** 174:17
**narrowly** 89:20
120:14 191:14
**nas** 104:2 150:5
151:14
**natasha** 27:19
**nathaniel** 26:1
**nation** 11:8 18:3
22:17 92:14
**national** 124:9
**nations** 11:2
49:19 94:6 96:8

179:10 228:6
**nature** 56:5 86:9
172:7,13 194:13
212:25
**ndl** 103:24
**ndt** 52:15,16,20
**near** 93:15 199:6
**nearly** 84:10
**necessarily** 76:18
78:5 94:14 163:1
169:8 173:16
186:7
**necessary** 39:16
50:5,5 108:10
187:8 210:25
211:9,21 212:4
214:4 216:2
**necessity** 107:8
**need** 51:15,20
52:2,6 56:9,23
59:22 70:13,19
71:2,15 78:13,14
80:3 82:5,6 98:21
109:6,16 115:9
119:14 124:10
131:14 135:13
143:5 144:22
145:4 153:7
157:12 166:20
175:14 188:15,17
199:2 203:21
214:7 215:2,8,25
218:15 219:14
223:7,11 224:11
**needed** 123:7
133:4
**needless** 183:21
202:16
**needs** 62:3 66:18
74:14,14 82:18
99:7 101:24
163:17 214:14,17
215:7 216:1

nefarious  54:24
  55:11
negative  178:17
neglect  35:19
  36:15,16,19,24
  37:12,21
negotiate  185:20
negotiated  31:20
  38:24 134:10
neither  45:18
  89:21 171:4
network  112:22
  197:6
networks  120:15
  191:21
never  56:4 63:24
  65:7 89:13 96:14
  124:7 134:19
  136:20 141:11
  153:1 158:3,5,25
  163:25 171:3
  177:25
nevertheless
  31:24 36:13 186:4
  189:11 192:3
new  1:2 2:24 20:6
  20:17 21:9 22:11
  23:6,15,22 24:4
  39:17,18,19,20,23
  40:7,9 42:23 43:7
  43:18,20,21,22
  45:1,9,16,23 46:1
  46:6,7,17 47:1,8
  47:10,24,24 90:12
  98:3 101:2,6
  104:20 105:7,7
  108:4 109:1,23
  114:14,15 120:19
  123:6,9 124:7,7
  177:25 190:20
  191:1 207:1
newark  22:19

newco  93:22
news  113:17
  204:15
niche  189:24
nicholas  27:24
nicole  27:20
nine  85:22
nineties  109:25
nj  21:8,11 22:19
nobody's  101:2
non  4:11 7:11
  10:5 12:5 43:21
  45:2,16,22 56:5,6
  58:5,8,9,10 59:5
  61:12 66:20,20,21
  66:21 87:9,11,17
  87:23 88:2,10
  92:17 106:10,11
  111:4,5,11 112:23
  123:12 150:5,19
  158:23,24 159:2,3
  169:9 187:21
  208:3,7 209:21
  220:2,7 221:4
nonconsensual
  169:10 171:6,10
nonissue  220:16
nonsensical
  109:11
normal  128:2,10
  131:3 179:23
  187:2 195:16
normally  199:25
nortel  120:15
  191:21
note  29:6 36:5
  51:18,25 58:13
  83:15 87:1 110:10
  160:6 170:24
  188:14 190:11,23
noted  35:15 36:23
  37:6 43:14 46:20
  139:22 185:11,25

187:14 189:25
  190:5 193:12
  197:5 203:6 212:8
notes  151:11
notice  2:1 5:9,15
  5:15,19 6:1,1,5
  8:8,14,17 14:2
  15:10,18 29:17,17
  30:23 31:1,22
  35:15 38:8 57:14
  57:21 117:16,18
  117:23 118:2,4,8
  118:15 148:23
  159:13 178:3
  183:16 212:9
  215:15 217:16
notices  204:2
noting  103:13
notion  58:16
  125:11 127:2
  136:16 155:21
  188:22
notwithstanding
  91:22
nouns  107:21
novel  90:2 105:23
  115:6,11 124:3
  168:6 189:25
novelty  165:5
november  33:11
  76:4 81:25 94:7
  94:10,17 129:9,10
  146:14 154:1
  199:24 200:10
  203:13,17 204:1
  204:19 206:17
  209:5,6,8 210:18
  212:5 221:3
  225:18
nuances  77:16,17
nuisance  160:9
nullity  119:6

number  30:10,17
  33:6 34:12 89:18
  93:3,3 95:23
  103:23 113:20
  119:17,18 132:16
  132:17,18 143:20
  148:4 152:6,18
  167:20,21 171:9
  173:19 177:15,15
  190:2 219:21
  223:1
numbers  143:22
numerable  132:17
nw  21:3
ny  1:14 20:6,17
  22:11 23:6,15,22
  24:4 229:24

──────── o ────────

o  1:21 29:1 229:3
o'neil  26:3
o'neill  26:4
obaldo  26:5
object  148:16
objectants  187:23
objected  32:21
  40:8 175:6,8
  220:5
objecting  85:20
  100:21 137:19
  141:1 148:14,24
objection  2:14,14
  2:22 3:1,1 4:1,1,7
  4:8 5:1,1 7:1,1,7,8
  8:1,1 9:14,14 10:1
  10:2,17,17 11:17
  11:17 12:1,2,17
  12:17 34:21 57:19
  91:25 92:7 147:8
  223:5
objections  44:15
  44:24 45:5 147:8
  168:7 209:4 223:4

**objective** 76:19
186:8
**objector** 100:22
**objectors** 48:3
99:21 103:24
122:5 222:18
**objectors'** 88:13
**obligates** 52:12
**obligation** 100:18
136:11
**obligations**
187:22
**obliterated**
126:13
**observation** 47:17
147:16 199:25
**observing** 91:14
**obtained** 52:19
**obtaining** 96:12
96:20,25
**obviate** 199:1
224:11
**obvious** 108:23
218:7
**obviously** 76:12
76:14 91:16 97:13
101:17 109:2,17
115:17 134:10
136:19 140:8
152:14 153:1
172:20 179:18
191:25 192:8
193:7 195:3 196:4
223:11
**occur** 95:23
143:17 176:11
179:17
**occurrence** 64:24
**occurs** 37:14
**october** 1:16 2:1
3:8 29:4 30:23
50:6,7 129:9
155:3 156:7 176:6

176:6 208:22,23
209:3 217:3
229:25
**odds** 52:1
**offer** 70:23 164:4
**offered** 46:1
165:15
**offering** 203:24
203:25
**office** 11:3 21:8
22:1 34:1,18
39:21 142:17
143:6 228:7
**official** 4:16,19,22
7:17,20 10:11,14
12:11,14 23:2
31:2 49:25 140:20
206:10
**officials** 43:22
84:7
**oh** 61:11 63:2
72:24 85:21
158:14 164:11
172:15 174:25
175:13,18 178:11
205:19
**ohio** 40:23 42:4
**oil** 187:9 192:6
**okay** 29:25 30:18
31:4 32:12 34:6
34:19,25 36:2
39:10,13 41:15
42:11,17 43:8,12
48:11,13,21 49:4
49:6 50:8,19 51:2
51:5 54:16 55:13
58:18 65:4 67:24
78:23 79:22 83:6
86:11,16 92:5,10
98:7,16 99:8
119:13 135:12
136:22 138:4,7,15
140:14,18,22,23

144:20 145:25
147:7 151:9
153:20 156:18
158:2 164:6,12
167:12 168:16
169:21 170:23
173:7 174:21
175:4,11,13,16,18
175:24,25 176:20
176:25 177:2
178:5,22 179:1,1
204:22,23 205:8
205:15,19 206:2
207:9,19,22
208:12,18,25
209:10,16 210:2,5
210:21 213:24
215:3,10 216:3,8
216:22 217:2,5,9
221:16,24 225:15
226:15
**old** 118:22 158:16
229:23
**omission** 111:16
**omitted** 186:18
**omnibus** 3:1 4:1,8
5:1 7:1,8 8:1 9:14
10:2,17 11:17
12:2,17 29:4
225:18 226:1
**once** 72:7 75:21
157:7 163:22
165:22
**oneida** 113:12
**ones** 68:12 86:1
169:4 173:25
**online** 206:1
207:18
**ontario** 94:7
**open** 35:21 38:22
87:14 88:5 89:1
89:21 90:1,7
93:13 115:17

121:10 123:5
204:8
**opened** 89:22
**opening** 106:12
210:19
**openly** 95:3,3
**operating** 82:16
**operation** 47:3
**opinion** 59:24
60:10 71:2 81:15
121:21,25 144:24
154:1,5 182:19
186:3 192:21,21
193:19,19 197:11
225:5
**opinions** 57:9
59:21 62:25 64:19
89:18 193:2 197:1
**opioid** 39:25
43:24 139:8
143:25 144:2,4,6
144:9,23 150:17
214:9
**opioids** 33:3 34:13
42:4
**opponent** 58:20
**opponents** 56:18
**opportunity**
79:17 117:17
163:23 216:13
224:6
**oppose** 31:3
139:10
**opposed** 29:17
36:18 50:4 90:6
94:5 181:14
194:18 198:25
**opposes** 50:7
**opposing** 209:2
**opposite** 174:9
**opposition** 3:19
4:16,22 6:16 7:17
9:8 10:11 11:11

12:11 48:22 51:25
52:10 54:19 56:13
82:9 138:20 146:5
147:5 182:12
208:20
**oppositions** 53:3
**options** 75:5
**oral** 37:24 40:10
51:6 76:4 104:13
119:20 129:9,18
129:18 141:24,24
142:21 146:13
152:11 188:15
189:7 199:24
200:17
**orally** 211:6
**oranges** 159:23
**order** 5:8,16,19
6:2,5 8:8,17 13:3
13:9,18 14:2,4,13
14:21 15:3,10,13
16:6,16 17:1,10
17:21 18:4,14
19:1,12 29:5,8,15
29:17 30:23 32:8
37:10 39:6 40:2
41:15 48:3,4
49:10,12,16 56:21
58:25 59:1 87:2
102:9,13 108:20
112:7 130:3
131:20 147:24
148:3 149:10
150:23 157:8,15
159:11 170:3
174:11 179:5,14
179:23 180:8,17
180:20 184:20
185:18 192:15
194:15 195:24
198:5 201:1,7,10
202:15,18 203:8
203:15 210:8,8,10

218:2 219:5
224:14 225:16
**orderly** 216:13
**orders** 13:4,18
14:4,22 15:4,14
16:13 181:1
**ordinary** 37:12
70:22 75:13 81:16
155:22
**oregon** 83:18,22
168:9
**organizations**
144:17,19
**organized** 101:5
104:7
**original** 44:2
**originally** 207:5
**others'** 83:4
**ought** 214:24
**ousterman** 26:6
**outcome** 82:22
111:12 120:11
137:19 152:12
**outlined** 202:14
202:19 223:9,23
**outrageous**
223:18
**outrun** 53:9 73:15
**outset** 97:2 139:2
**outside** 32:2 59:13
178:7 189:24
196:7 214:14
223:17
**overdose** 143:20
143:23,25 144:2,3
144:4,5,6,8,8
**overlapping**
112:4
**overrides** 88:21
**overrule** 112:15
123:8
**overruled** 108:1

**overstatement**
171:19
**overturned**
116:16
**overwhelmingly**
104:8 135:9
**owners** 161:11,12
**ownership** 46:13
47:25 161:12
**oxycontin** 34:9
38:3,7

| **p** |

**p** 3:21 6:18 9:10
11:13 20:1,1
27:22 29:1
**p.c.** 22:8
**p.m.** 209:6
**page** 88:2,12
102:12,13,19
107:3 111:1,13,21
112:7 115:9 118:7
118:10 121:7,8
151:11 184:22
189:15 190:4,11
198:20 210:19,19
215:1 227:4 228:4
229:2
**pages** 107:12
108:17 126:2
197:21
**paid** 31:16 150:3
150:8 160:12
177:10 220:23,23
**pain** 137:7
**panel** 40:20 41:16
41:16 75:23 81:17
82:14,18 129:19
184:6
**panels** 75:18 85:1
**papers** 35:3,18,24
48:20 58:3 80:4
83:4 85:25 93:17
98:4,5 101:3

103:6 109:1 138:1
141:15 147:19
156:3 172:4
177:23 226:4
**paradigm** 177:19
**paragraph** 87:19
88:6 113:13 115:5
122:3,4 134:2
156:2 160:7
177:16,22 185:23
186:3 191:7
196:10 198:19
**parallel** 53:6
73:14 75:14
163:21
**park** 23:4
**parse** 170:12
**parsing** 114:3
**part** 31:19 44:21
52:12 55:4 58:24
72:18 106:23
117:16 126:4
144:1 145:16
150:15 167:20
181:8 185:21
193:21 209:11
213:9 223:17
**parte** 5:8 8:8,16
14:2 15:10
**participants**
103:18
**participate**
116:10
**participation**
45:25 57:18 60:15
66:17
**particular** 44:23
61:5 62:21 65:13
67:4 69:4,4 72:12
74:6 99:18 108:15
141:19 182:22
184:11 190:17
193:3 223:13

**particularly**
31:11,22 64:24
71:22 76:11 83:25
182:3 204:6
**parties**  38:24
39:17,23 42:1
45:2,3,16,22
55:24 58:5 71:9
74:22 78:24 79:25
80:22 83:16 84:4
84:11,12,20 85:5
85:7,20 88:11,14
95:13 100:16,19
101:10 104:21
112:24 123:15
129:5 137:6,24
139:5 140:25
143:7 146:9,10
148:18 157:1
161:1 168:19
171:17 172:14
175:19 177:22
179:17 181:24
182:11,25 183:7
185:2,7,19 187:18
192:2,8 198:4
199:6 200:11
203:4,5,12,17,20
203:24,25 204:5,9
204:24 206:17
207:24,25 208:3,8
209:19 211:6
212:2,23 214:19
216:13 218:8
220:7,9 222:12,21
222:23,23 223:8
224:2,19,22
**parties'**  36:18
86:21 112:1
**partnership**  31:9
36:23
**parts**  43:15

**party**  37:8,11
39:16 44:9,13
55:25 56:13,22
57:5 58:1,24 59:5
62:13 63:13,24
65:10,16,17,21
66:15 68:3 87:9
87:11,15,20,23
88:11,17 89:4
90:10,23 91:9,18
94:21,23 103:18
104:5 106:13,22
110:4 111:22
112:5 113:7,10
117:23 118:9,17
119:2 123:2,12
125:20,23 126:10
127:3 140:2
146:22 148:10,14
148:16,25 149:3
150:21 167:25
168:4 171:6,10
177:17 178:9
193:20 195:6
197:3,10 209:9,14
**party's**  166:23
**party's**  30:24
**pass**  155:19
**passed**  124:2
142:16 181:22
**passing**  155:16
**passion**  182:3
202:8
**passionate**  120:4
181:25
**passionately**
125:22
**path**  53:6,7 79:15
94:19 96:11
142:17 187:1
188:24
**paths**  73:14 75:14
163:21 197:19

**patiently**  51:2
**patients**  33:5,6
34:12 38:4 144:15
**patrick**  25:23
26:3
**paucity**  184:3
**paul**  22:3 26:14
161:15
**pause**  132:25
**pay**  150:20 151:20
**payer**  103:17
**payers**  104:5,5
**paying**  107:10
137:5
**payment**  58:4
150:15
**payments**  46:25
**payouts**  40:6
150:12 151:2
**peck**  113:11
**pediatric**  104:3
**pen**  130:10 200:8
**pendency**  35:16
**pending**  13:1,4,16
13:18 14:5,19,22
15:4,5,14,15,24
16:12 17:7 18:1
18:20 29:9,12
42:4 43:17 45:9
47:14 65:20 73:10
79:1 93:12,18
94:16 145:8,18
153:17 162:4
163:1 166:10
167:22 182:5,17
202:25 203:4,10
204:9 208:5,15
211:1,6 212:3
**pension**  39:21
**pensions**  122:9
**people**  9:5 48:17
57:3 61:23 99:6
99:18 102:1,2

106:1 121:9
122:10,17 124:10
125:22,22 135:13
142:16 143:23
148:4 149:9
150:23 151:24
156:15 159:5
160:3,9 161:20,21
162:16 167:7
192:2 213:11
215:1 221:13
**people's**  149:8
**pepsico**  161:16
**percent**  78:3
104:10 135:8
137:10,10,16,17
144:2,5,7,8,14,15
144:16,18 155:19
**percolate**  128:10
187:1
**perfect**  124:6
**perfectly**  194:7,8
**period**  86:15
135:3 224:4
**peripheral**  163:11
**permissible**  87:15
91:9
**permit**  31:5 36:14
112:23 201:12
**permits**  73:10
145:11
**permitting**  186:13
186:20,21
**perplexing**  52:10
91:19
**person**  34:2
104:14 220:3
**personal**  31:23
38:19 59:4 104:1
181:17 220:3,5
**personally**  94:21
**perspective**
149:22 150:22

153:3
persuasive 211:3
pertain 42:15
pertaining 42:3
pertains 183:3
petition 35:12
117:9 121:19,21
121:22
petroleum 197:6
pfizer 110:10
pharma 1:7 2:17
3:4 4:14,20,23
7:14,21 10:8,15
12:8,15 14:15
15:20 16:8 17:3
17:23 18:16 19:14
29:3 65:9 66:3
179:3
phase 126:6
151:23
phone 29:18 41:7
41:9,11 175:20
phrase 133:2
195:15
pi 212:14
pick 205:10
picked 77:11
106:19
picture 153:18
piece 113:16
136:18 159:25
pieces 65:20
pillar 161:20
pin 177:20
pioneer 30:12
31:7 32:14 36:22
37:13,18 38:11
pivotal 86:25
pizza 72:3
place 22:3 204:1
212:24 213:2
224:4

placed 144:16
171:24
plain 105:9 118:1
189:2 198:21
plains 1:14
plan 14:10,14
16:4,7,24 17:2,18
17:22 18:12,15
19:9,13 31:19
38:17,25 40:6
45:4 47:1 49:11
49:14 52:12,16
56:21 58:2 59:2
68:3 80:8 84:4
87:22,25 93:11,17
95:7,18,19,22
96:4,5 102:5
104:8,20,25
106:24 110:18,20
111:23 112:6
113:2 114:24
118:11 120:2,4
126:12,13 135:2
135:11 136:7,19
145:5 146:7,20
147:6 149:16
150:2,2,23 176:11
177:10 179:6,16
185:20 197:24
201:1 214:6,8,8
218:20,23 219:1
220:1,4,6,8,12
223:4 224:1
planning 215:20
224:7
plans 39:21 58:1
135:9
plan's 59:4 118:9
play 86:2 225:3
playing 73:22
plays 106:23
pleading 42:20
49:23 102:19

176:1
pleadings 40:10
42:1,24 43:1,3,10
49:20 51:6 96:10
102:16
please 50:11,20
98:19 100:3
105:14,25 140:21
166:15,16,16
pledge 155:4
plenty 90:1
plucked 114:14
plural 195:8
plus 208:1,10
pm 226:18
pnc 108:8
podium 30:1 52:6
120:1 131:1
204:14
point 38:23 53:20
54:5,6,17 60:16
62:4 64:25 69:11
70:2 71:18 73:5,6
74:21 76:6 78:12
78:23 83:24 89:14
91:24 94:9 96:1
101:22 109:17
113:4,20 116:13
122:1 130:16
133:19 134:1
140:21 141:2,3,15
141:22 143:16
145:23 146:18
148:2,3 149:12,22
155:10,25 158:7
158:20,22 159:10
159:20,21 160:2
161:18 162:2,7,8
162:11,21 163:4
163:11,15 167:10
167:16 168:12,14
170:10 171:18
172:8 173:6,14

174:1 176:2,14
178:3,17 181:24
192:12,24 193:24
194:2,14 201:15
204:10 212:15
219:22,24
pointed 91:14
107:2 141:15
147:24 168:1
200:2 216:9
points 80:2 86:17
88:24 89:7 133:14
138:25 140:11
141:21 143:4
152:6 156:24
173:4,23 210:15
217:1
poisoned 162:16
police 34:4 86:5,6
87:12 88:10,15,19
88:22 90:4 106:1
113:21,23 114:1,2
114:3,7 160:19
168:5 169:10
171:12,16 174:16
193:22,22 194:5
194:13,17,19
policy 105:17
149:22
polk 20:3 29:23
30:6 34:24 43:9
97:24 100:10
121:17 204:14
205:2,12
porter 26:7
portions 211:19
pose 153:15
posed 154:8
position 35:6
50:17,19 58:7
89:25 91:20 96:19
98:9,11 139:3
148:8,10 149:3

158:15 171:14
174:4 190:9 214:2
218:25 219:19
**positions**  99:19
182:1
**possibility**  53:7
186:2
**possible**  59:7
79:14 80:11,23
120:3 139:13
144:23 166:12,14
166:24
**possibly**  107:12
110:11 123:8
129:13 176:13
**post**  157:6 217:24
**posted**  100:17
**posters**  118:1
**potential**  35:14
37:2 45:11 81:3
95:24 124:6
**potentially**  73:25
80:24 94:25 112:9
132:16 166:6
**power**  58:8 59:18
62:18 87:12 88:10
88:15,19,20,22
90:5 106:1 113:21
113:23 114:1,2,3
114:7,23 160:19
164:23,23 168:5
169:10 174:9
181:2 193:22,22
194:4,5,13,17,19
201:1,8
**powers**  59:12 86:5
86:6 171:12,16
174:16
**ppp**  124:2,11
133:7
**pr**  54:5
**practice**  179:23

**practices**  167:23
**practitioners**
59:16
**pre**  2:2 29:11
35:12 47:7,11
162:7
**preceded**  36:5
**precedence**  119:5
**precedent**  53:25
55:17 56:3,8
59:21 64:22 87:8
90:3 119:7 130:14
165:6,7 182:21
184:4 189:24
190:1
**precedential**
182:19
**precedents**  202:9
**precise**  115:16
165:8
**precisely**  177:23
**preclude**  170:19
200:4
**predecessor**
107:23
**predict**  94:11
**predicts**  90:13
**prehearing**
225:12
**preis**  23:8 138:5
138:13 140:15,19
140:24 144:21
145:19
**prejudice**  29:8
30:24 35:20 37:1
39:2 44:4 203:9
203:15
**prejudiced**  209:9
209:15
**prejudicial**  38:23
**preliminary**
49:13 106:7
179:15 214:2

**premature**  216:20
**premised**  38:18
47:9
**premotion**  212:9
**prepare**  48:4
49:13 212:18
**prepared**  42:25
48:3 68:19 110:19
162:3 175:17,20
212:4
**prescribe**  34:10
38:9
**prescribers**  35:21
**prescription**  38:3
38:7
**prescriptions**
33:5,20
**preseason**  73:23
**present**  24:8
82:24 125:24
193:14 220:14
**presentation**  35:8
35:18
**presented**  56:11
57:1,11 70:11
81:16 86:20
122:14 163:25
**presenting**  205:7
205:13
**presents**  115:10
**preserve**  166:10
**preserved**  32:5
**preserving**  166:14
166:21
**presiding**  59:3
73:20 191:25
**press**  143:19
147:20 161:21
162:24
**presumably**
114:10
**presume**  94:9

**pretend**  66:1
117:1 128:22,23
**pretrial**  100:1
203:2 225:12,13
226:16
**pretty**  113:16
133:16 161:25
221:6
**previous**  106:25
**previously**  38:5
58:21 102:14
106:21 110:2
139:5 168:19
190:19 194:11
198:13 202:14
203:2
**prey**  27:24
**price**  166:18
**primarily**  173:13
188:4 193:25
**primary**  38:10
181:13
**prime**  13:12 16:19
17:13 18:7 19:4
100:16
**primer**  63:10
**principal**  168:14
**principle**  168:10
**print**  117:25
**prior**  112:11
190:19 209:8
**priority**  218:19
219:2,19
**private**  39:22 46:2
126:7 151:21
174:12
**privilege**  76:17
186:6
**pro**  24:9,10,11,12
39:15 65:15 99:2
100:12
**probably**  78:2
101:12 119:25

126:9 128:8 129:3
130:10 152:17
155:20 206:6
**problem**  134:19
158:17 160:6
207:1 214:9
222:24
**procedural**  45:7
187:6
**procedurally**
101:17
**procedure**  13:5
13:19 14:6,23
44:8,13 82:16
165:24 214:13
**procedures**  82:17
**proceed**  128:3
132:9 155:22
185:20 202:2
**proceeded**  43:25
**proceeding**  52:25
95:1 180:21
184:21 185:13
198:7
**proceedings**  1:12
37:2 44:8,12,19
99:2,4 131:19
165:11 226:17
229:6
**proceeds**  130:6
**process**  53:19
56:5 57:11,13,15
57:17,20,22 58:12
59:10 63:23 66:19
70:10 73:9 76:25
87:18 92:16 99:1
99:20 102:1
117:16 118:10,14
118:18,22 119:1
123:19 128:2,8,20
133:10 146:23
148:2,11 158:24
159:12,20 166:13

166:21 172:24
173:3 193:6,13
195:17 200:15
201:25 213:16
216:9,13,20
226:11
**production**  43:23
**products**  43:24
**professor**  60:19
77:11
**professors**  77:12
77:13 197:12
**profile**  65:23
**profit**  185:7
**profitable**  33:21
**profound**  111:6
**program**  95:20
**programs**  45:25
52:4 120:6 124:6
144:14
**progress**  70:16
71:13,14 80:15
93:1,7,10 95:16
95:16 96:2 97:18
127:9 141:3,17,18
180:20 184:20,25
185:12 198:6
**proliferation**
90:2
**prompt**  82:1
145:10 183:21
**promptly**  52:17
52:19,20 144:23
145:2 152:22
184:17
**prong**  108:24
120:14 122:2
123:5,14 124:13
124:23 125:9
127:12 145:13
147:4 155:10
184:18 185:12
195:23,24 198:1,4

198:25 202:5
224:10
**prongs**  83:25
104:17 132:13
133:22 147:4
155:12
**proof**  2:4,7,11,15
42:8 227:5,9
**proofs**  36:12
44:18 177:7
**propaganda**  33:4
33:19 34:10
**proper**  137:9
145:6 182:9
**properly**  84:15
**properties**  96:23
**property**  111:6,20
149:8
**propose**  76:1
**proposed**  30:23
45:13 52:7 61:5
75:25 101:19
118:9 131:23
161:4 201:10,17
210:21 212:5
**proposition**
124:17 197:17
**protect**  40:3 46:23
157:20 160:8
174:11,15
**protected**  13:13
16:20 17:14 18:8
19:5
**protecting**  148:6
148:17
**prove**  104:22
178:17
**proved**  126:11
**proven**  107:9
**proves**  121:4
**provide**  46:3
57:15 64:14 94:10
209:2,22 212:17

213:3
**provided**  30:22
106:23 117:16,18
128:3
**provides**  44:7
51:12 87:16 96:25
152:1
**providing**  45:12
56:21 87:4
**proving**  37:20
132:8
**provision**  92:24
93:7 97:4 133:21
134:17 136:15
141:7 157:17
159:17 160:5
164:20 165:20
181:7 182:22
183:24,25 188:10
190:17 191:2,11
191:13 192:12,13
193:5 198:7,16
199:17
**provisionally**
226:1
**provisions**  90:7
90:12 91:4 133:24
135:19 136:8
**prudent**  211:9
**public**  39:22 46:2
54:1 65:5,12,14
65:16,24 66:2,4
66:16 72:13 75:6
80:22 84:1,22
85:4,13,15 86:8
90:22 103:19
104:4 119:18
120:14,21 122:16
122:18,20,23
123:1,13,17,21
124:13 126:7
151:20 168:11
180:12 183:20

191:12,15 192:14
194:24 195:2,15
195:17,19 223:24
225:4
**publicity** 57:14
**published** 81:15
**puiggari** 26:8
**pull** 92:21
**pulled** 117:13
**pullman** 21:15
86:13
**pulpit** 99:17
**punches** 125:6
**purdue** 1:7 2:16
3:4 4:14,20,23
7:14,21 10:8,15
12:8,15 14:15
15:20 16:8 17:3
17:23 18:16 19:14
29:3 32:25 33:1,2
33:19,21,21 35:13
35:14 43:16 57:1
57:18 65:9 66:3
88:4 102:3 151:4
151:18 152:3,4
179:3
**purdue's** 57:17,18
**pure** 55:20,20
64:23 102:25
103:2 117:15
139:22 159:1
172:23 173:14
184:1 188:2
189:13 193:4,14
194:12
**purely** 140:1
190:21
**purpose** 189:1
210:8 223:3
**purposes** 172:8
180:23,25 185:17
188:10 189:8
191:3,15 192:5,18

193:4 194:25
195:19
**pursuant** 4:3,10
6:12 7:3,10 8:10
8:15,19 9:16 10:4
11:19 12:4 13:4
13:19 14:5,22
**pursue** 75:13
112:3 136:11
224:13
**pursuing** 73:13
93:5 119:11
**push** 90:15
**pushed** 105:5
**put** 38:8 59:9
77:17 86:17 90:5
99:25 100:25
121:7,8 124:3
129:7 131:25
133:10 146:5
150:14 154:3,3
162:17 200:8
204:21 205:16
208:19 209:24
211:16,19 217:24
218:1 221:18
225:18
**puts** 47:3
**putting** 74:10
143:11 204:10,11
215:20 218:11,12
**puzzled** 136:25
219:10
**puzzlement**
134:22 136:24
**puzzling** 51:25
54:20 134:22
137:8 139:4

**q**

**qua** 150:19
**quarropas** 1:13
**quash** 204:2 212:7

**question** 55:16,20
55:21 56:1 57:11
59:20 66:23 70:13
74:21 75:20 80:25
81:8 88:5,9 89:1
97:10 98:20
101:10 102:25
106:13,15 107:6
108:14 110:13,20
115:10,14,16,16
117:15 119:17
120:22 121:10,15
122:14,16,19
123:5 124:3,18
127:7,23 129:2
133:1,25 134:17
153:12,15 154:7
154:15,25 155:5
160:25 162:3
166:9,9 167:14,25
170:9 172:23,23
173:24 174:18,24
175:3,4,21 176:8
180:9,18 184:10
184:15 188:5,10
189:21 190:22
191:16 193:4
194:12,12 195:25
211:12 215:2
218:4
**questioned** 82:12
**questioning**
149:13
**questions** 37:19
72:19 76:19,23
80:5 81:4 82:13
83:2 86:19 87:15
95:12,14 119:21
137:23 139:22
140:9 156:10,17
183:19 184:1,12
186:8,12 188:2,3
213:6

**quick** 143:1 152:6
**quickly** 52:7 53:8
72:9,11 74:12
75:6 80:2,10,23
81:18,22 82:7,11
82:17 102:8
156:23 165:25
166:24
**quigley** 110:10
111:13 147:1
192:20,21 197:1
**quintessential**
165:3
**quite** 60:9 103:12
105:22 113:23
133:7 134:23
147:9 175:12
182:19 192:9
223:2
**quotation** 96:24
**quotations** 106:18
**quote** 56:19 58:25
61:3 106:9 112:21
120:13,20 122:20
122:21,22,23
124:17,17 126:12
126:15 127:25
128:16 183:25
186:16
**quoted** 58:3 110:1
198:13
**quotes** 106:20
110:3
**quoting** 37:21
93:20 103:1 110:5
111:13 124:19

**r**

**r** 1:21 20:1 25:9
26:5,18 29:1
181:5 229:3
**rachael** 26:10
**rachel** 26:5

**radlax** 59:14
**raise** 62:10 72:18
  76:6 80:12 93:16
  142:2 157:24
  162:6 174:9
  175:25 183:19
  216:19
**raised** 82:9 84:20
  92:1 93:17 133:15
  134:1 138:25
  142:6 156:3 157:2
  158:4 161:3
  164:18 169:3,23
  170:10,15,17
  172:10 179:13,19
  192:2 200:21
**raises** 44:9 45:10
**raising** 92:1 169:7
  222:13
**random** 156:10
**randomly** 99:20
**range** 62:6 75:4
**rapid** 182:24
  183:1 193:16
**rapidly** 115:24
**rare** 89:12 132:7
  202:13
**rarely** 37:8
  130:24
**rate** 103:17 104:5
  209:24
**rationales** 113:25
**rdd** 1:3
**reach** 40:21 70:6
  127:4 216:15,16
  225:7
**reached** 206:17
**reaching** 224:3
**read** 33:18 40:1
  42:1 51:5 59:10
  60:8,10,11,20,22
  69:21 80:17 89:11
  93:23 97:5 106:19

123:23,23 133:4
133:20 147:8,8
151:16 162:24
177:20 198:9
206:18 207:23
211:10
**readily** 186:13
  214:24
**reading** 63:9,13
  63:18 172:4 177:4
  196:2 202:12
  219:5
**reads** 218:18
**ready** 120:7
  137:14 143:1
  156:8 179:16
**reaffirmed** 109:25
  110:8
**reaffirming**
  106:25
**real** 73:16,17
  158:20 160:13
  179:12 220:13,22
**really** 36:6 45:6
  46:15 47:2,10,12
  47:17 48:15 55:2
  55:8 61:24 63:5,6
  63:21 73:12 74:2
  76:13,14 77:23
  79:2 83:2 89:16
  90:19 103:9
  119:10,11 127:5
  133:22 145:6,11
  156:9 160:4,24
  161:19,22 162:21
  165:19 166:18
  169:9 172:2 173:2
  173:21 174:17
  178:14 182:8
  199:4 202:20,24
  203:23 215:7
  218:21 221:2
  222:16 226:11

**reason** 37:3 53:21
  80:16 91:11
  109:14 131:16
  132:12,19 139:10
  151:18 156:7
  165:15 176:7
  177:24 190:13
  202:21 213:18
**reasonable** 31:14
  32:2 37:4 39:4
  62:5 70:4 82:13
  84:17 118:23
**reasonably** 32:1
  37:25
**reasoned** 87:24
**reasons** 35:23,24
  39:5 48:5 54:20
  82:8 108:23 132:4
  140:12 147:5
  181:22 184:2
  202:19 219:9
**reassuring** 79:11
**rebuttal** 209:2
  211:20 221:18
**recall** 72:8,11
  157:3
**receive** 118:14
**received** 3:19 6:16
  9:8 11:11 29:7
  46:2 87:22 95:11
  99:20 139:24
  187:22 204:2
  214:18
**receiver** 40:15
  41:13
**receiving** 57:25
  88:3
**recognition** 36:9
  93:18,25 94:4
  95:1,25
**recognize** 61:12
  89:4,11 183:12
  196:14

**recognized** 44:24
  62:18 82:20 88:13
  93:22 128:9 165:4
  171:10,21 189:9
**recognizes** 61:6
  168:24
**recognizing**
  167:19
**recommend**
  222:23
**recommending**
  142:18
**recommends**
  94:19
**reconciliation**
  124:24
**reconsider** 77:14
**record** 29:23 30:5
  30:19 35:5 43:5
  48:1,5 68:22
  76:12,13 78:5,8
  83:15 93:20 100:9
  109:11 118:7
  136:2 147:17
  150:16 167:20
  171:16 172:11
  184:13 188:4
  189:22 193:16
  194:22 200:18
  204:17 206:19,20
  207:23 208:20
  210:20,23 211:10
  211:14,19 214:4
  214:14,17 215:22
  215:23 218:14
  220:4,5 221:9
  222:21,22,25
  223:10 224:12
  225:8 229:6
**recording** 178:25
**red** 57:20 159:3
**refer** 49:15 57:14

**reference** 41:18 58:22 62:24 95:15 97:5 131:21 189:3 210:18
**referred** 41:19 69:2 83:16 196:3
**referring** 49:17
**refers** 52:15 198:21
**refine** 193:3
**reflect** 183:17
**reflection** 71:1
**refuse** 125:17
**refused** 104:21 110:23
**regard** 30:25 31:11 92:24 93:13 94:23 96:6,8 150:10 176:8,21 185:11 210:16 212:7 213:4 222:24
**regarding** 30:14 169:5 182:15 203:3 206:16
**regardless** 152:19
**regular** 213:4
**regulations** 55:11
**regulator** 148:5
**regulatory** 88:22
**reiterate** 163:20 223:21
**rejected** 87:21 115:13 171:21
**relate** 35:12 214:8
**related** 2:11,15,23 3:3,7,9,15,20 4:4 4:12,17 5:3,7,11 5:22 6:8,17 7:4,12 7:18 8:3 9:9,17 10:6,12,19 11:6 11:12,20 12:6,12 12:19 13:4,5,9,14

13:14,18,20 14:4 14:6,16,22,23 15:4,5,13,15,19 15:24 16:3,9,16 16:21,21 17:4,7 17:10,15,15,24 18:4,9,9,17 19:1,6 19:6,15 45:19 46:22 57:23 58:13 58:23 92:16 96:23 97:3 112:3 150:17 165:19 212:16 215:16
**relations** 201:3
**relatively** 85:6 184:16
**relaxed** 186:18
**release** 13:13 16:20 17:14 18:8 19:5 56:6,14 61:12 63:13 65:10 65:16,18,21 66:8 68:4 87:11,12,17 87:24 88:10,11,17 89:4 91:18 92:18 92:19 107:11 110:18 111:4,19 111:23,24 112:1,5 112:23,25 113:7 113:10 117:24 118:9,13 123:12 125:25 126:24 140:3 143:19 146:22 148:14,16 148:25 149:3 150:16,18 160:4 160:15 161:4 174:13 193:21 194:18 197:3,10 220:7
**released** 61:6 66:5 88:14 102:5 111:8 111:14 126:1

149:16,23,24 160:12,14 171:15 218:9
**releasees** 221:4
**releases** 55:25 56:15,22 57:1,5 58:2,7,9,24 59:5 61:5 62:11,14 63:24 66:15,20,22 87:9,15,20 90:10 90:23 91:9 104:23 105:5 106:13 107:8 110:4 111:15 118:17 119:2 123:2 125:20,23 126:4 126:10 148:10 152:2 160:8 167:25 168:4 169:10 171:6,10 173:12 177:18 178:9 195:6 197:23 220:1
**relevance** 111:7 115:24 156:9
**relevant** 103:9 111:17 119:22 120:13 122:1 124:21 173:9 176:14,19,21
**reliance** 31:19 172:11
**relied** 91:8 146:24
**relief** 13:14 16:21 17:15 18:9 19:6 30:20 32:16 36:7 36:8 43:14 44:6 46:21 66:7 78:15 79:20 102:15 132:7 153:24 155:23 169:1 178:18 196:19

**relies** 45:18 60:24 64:18
**reluctant** 173:19
**rely** 80:4 198:4
**remains** 93:12 111:11
**remand** 131:19 132:2 201:19
**remark** 173:11
**remarkable** 104:14 131:5
**remarkably** 177:4
**remarks** 92:4 164:4
**remedy** 47:18 187:6
**remember** 109:8 117:24
**remembering** 167:19
**remote** 85:9,10 210:10
**remotely** 116:18
**render** 112:25 141:24
**rendered** 95:9 121:22 146:20 184:5
**reorganization** 14:15 16:8 17:3 17:23 18:16 19:14 52:12 106:24
**repay** 187:22
**repeat** 83:23 140:11
**repeated** 101:14 149:6
**repeatedly** 57:14 162:15 171:8
**report** 184:4 204:15 213:4
**reporter** 42:22

reporting 144:19
reports 184:8
212:17
represent 84:13
125:3 155:3
representative
94:5
represented 31:2
54:9
representing
136:14 162:5
212:12
represents 103:23
139:12 205:13
request 30:12
31:16,18 32:23
35:25 36:21 40:6
47:7 50:7 52:17
53:17 59:2 74:4
75:16 97:19 115:1
130:12 138:21
158:12 166:10,17
187:4 200:12,13
202:17 213:1
requested 95:3
requesting 52:22
requests 181:11
190:24 213:15,17
224:23
require 45:6
124:23 151:22
190:17 194:2
217:3
required 44:13
56:7 194:23
195:12 209:7,13
requirement
119:4 189:14
196:14
requirements
113:10 132:21
196:18 197:2
202:18

requires 36:15
61:3 130:22 150:3
191:3 195:9 197:8
202:8
requiring 66:24
180:18 195:25
rescap 113:12
research 54:25
reserve 211:19
221:17
reserved 108:8
187:6 209:23,25
reserving 32:9
residential 61:8
residents 84:6
resolution 15:4,14
66:24 76:16
120:23 121:10
166:6 180:18
186:5 195:25
resolve 32:6 76:23
106:9 108:14
184:10 186:12,17
204:5 223:20
resolved 54:1
82:10 89:8 132:1
166:7
resolving 29:17
181:13 189:13
214:16
resources 215:9
respect 5:9,20 6:6
8:9,18 14:3 15:11
35:6 37:7 47:21
57:13,15,17 62:6
63:20 65:12 67:1
74:13,15 83:22
84:25 97:9 100:11
101:17 107:25
108:2 115:19
146:7 149:5 153:7
153:16 154:19
159:14 177:21

181:18 202:19
217:14
respectful 80:8
respectfully 35:25
59:2 97:19 125:16
respects 46:21
respond 35:3
77:25 98:3 103:7
138:24 139:20
142:20,21 144:22
174:2 175:2,6,8
178:2,6 213:8
responded 213:1
respondent 132:6
response 70:18
80:5 95:11 96:4
130:15 156:19
168:15 174:25
175:5,10 194:5
responses 3:19
6:16 9:8 11:11
49:21 159:6
rest 83:4,5 138:1
159:3 186:16
restate 141:21
restrictions 31:25
restructuring
126:1,4
result 52:7,9 67:2
73:8 142:8 143:8
143:12 145:15
185:2
resulted 44:1
resuming 179:3
retain 46:17
rethink 215:25
retirement 39:21
retract 67:17
retrying 128:7
return 63:8
reversed 104:23
review 45:22
51:13,16 52:9

53:1 70:23 75:9
78:4 80:10,24
128:19 134:21
139:14 143:9
145:10,14 152:23
168:6 185:8
186:20,22 193:16
199:19 203:7
reviewed 29:7
32:21 34:21 40:9
49:20 76:20 80:10
142:2
reviewing 76:22
186:11
rhode 83:18,21
richard 28:2
ride 82:21 170:6
riffing 116:11
172:5
riffkin 3:16 5:12
5:23 13:6,20 14:7
14:24 15:6,16
26:9
right 29:2,19
33:16 34:6,17,17
34:19,20,23 36:3
41:1 42:10,11,12
43:12 47:9 48:17
49:8 51:1,1,5 54:4
58:6 60:11,23
61:10,15,15 65:22
67:5,8 68:1,5,16
69:9,18 71:8
73:12,16 75:22
80:19 84:25 87:23
93:17 94:4 98:23
99:10,12 103:10
104:12 107:4
109:16 113:15
115:21 117:8
120:17 124:12
131:25 133:21
136:19,20 137:19

137:21 138:10
142:23 145:13,22
147:25 150:8
153:4 154:1,3
155:2,7,15,17
156:12,18 159:9
168:20 169:18,24
176:16 177:7,10
177:12,19 178:7
178:22,23 186:2
205:5,25 208:4,18
209:18,25 210:4,5
211:19 215:18
216:8 217:7,7
219:16,24 220:21
221:13,18 225:25
226:15
**rightly** 168:1
**rights** 30:25 32:9
63:23 66:16 78:25
84:5 112:1,1
148:6,18,19 149:1
149:7 153:16,19
154:19,22 166:21
174:7 193:22
218:9 220:8
**ringer** 26:10
**rise** 141:1
**risk** 93:19 143:7
143:12 145:22
199:18
**risks** 220:25
**rivera** 27:1
**road** 229:23
**robert** 1:22 27:10
**roberts** 21:6
**robertson** 26:11
**robinson** 26:4
**rocket** 129:8
136:9
**role** 216:16
**rolling** 119:16

**romanoff** 27:25
**ronald** 2:20,23
3:1,9 17:8 24:10
39:15 40:12,18
227:14
**room** 1:13
**rose** 143:20
**rosen** 26:12
**round** 129:16
130:22
**routinely** 58:15
**roxana** 24:14
**rubric** 44:6 46:6
62:12 170:17
**rudimentary**
54:25
**rule** 13:4,19 14:5
14:22 30:21 31:6
32:14 36:13 37:9
37:11 44:7,7,12
44:16,16,19,20,22
44:25 68:8 81:6
81:22 82:15 94:13
114:24 126:20
129:10,20 131:8
135:18 136:6
152:20 154:17
165:24 180:23
199:3 214:12,12
**ruled** 39:12 41:25
48:19 64:16,21
68:8 69:25 114:11
118:5 119:1 121:5
123:18 124:7,22
127:24 129:14
131:3 133:7 136:2
152:14 171:9
178:20 200:9
223:6
**rules** 36:13 42:15
44:13,21,21 82:15
135:3 137:13
164:3 178:1,3

188:21 203:19,19
211:3
**ruling** 14:9 16:3
16:23 17:17 18:11
19:8 39:7 42:25
43:13 84:18 88:12
105:4 108:16
109:4,5,23,24
111:21,24 114:5
118:10 126:25
127:1 132:16
134:15,15 135:25
136:17 137:3,14
143:1 146:20
152:11 153:11
155:1 163:6 164:2
171:21 183:4,21
185:1,3,4,6
193:12,17 195:11
202:16 204:7
205:17 211:2,7,8
211:22 224:5,22
225:2 226:6
**rulings** 131:23
193:1 227:3 228:3
**run** 81:15
**runup** 85:23
**ryan** 26:18

**s**

**s** 2:11,15,23 3:3,9
3:15,21 4:4,12,18
4:18 5:3,12,22 6:8
6:18 7:4,12,19,19
8:3 9:10,17 10:6
10:13,13,19 11:6
11:13,20 12:6,13
12:13,19 13:5,20
14:6,16,23 15:6
15:15,19,24 16:9
17:4,8,24 18:17
19:15 20:1,12
24:13 25:16,22
27:5 29:1 187:16

**s.d.n.y** 131:21
**s.d.n.y.** 36:20
128:11 197:7,16
198:18 199:9
**sabine** 72:5 78:6
121:1 124:15
187:9,11 192:6
**sackler** 52:13 66:3
66:5,6 92:8 126:7
134:3 149:10
150:15 151:4,21
160:12 162:12
218:8
**sacklers** 57:23
88:4 91:17 95:5
102:3 111:16,19
112:10 135:19
136:15 149:15
150:3,14,17,24
151:17,25 152:1
157:20 160:24
167:23 220:2,9
221:3
**sackler's** 150:19
**safety** 168:12
**saint** 22:3
**sake** 211:9
**sallie** 187:16
**salutary** 128:9
**samsung** 120:16
124:16
**sara** 24:20
**sarah** 28:3
**satisfaction**
151:15
**satisfied** 51:15,24
65:2 80:16 105:3
107:14 118:9
132:22 136:4
147:3 163:17
187:25 188:19
192:10 196:19
202:6

satisfies  51:14
59:19 74:19
satisfy  51:15
72:17 84:3 104:24
106:1 119:6
123:19 170:6,11
195:22,23
save  120:5 127:21
127:22 212:2
saved  182:4
saving  137:15
saw  152:9 177:25
saying  55:10
58:11 60:5,5,20
60:20 64:1,15
71:15 73:12 74:22
90:16,20 99:20
117:4 119:6
123:17,18 135:25
136:19 150:14
154:19 171:4,14
172:15 174:8
says  34:9 41:3
58:4,11 61:2,8,19
89:24 106:7,8,20
109:8 113:5
114:16 116:9
125:8 128:23
130:5,8,14 134:9
140:2 150:2,5,9
155:1,12 158:12
160:2 172:22
184:9 218:20
221:19
schedule  53:11
74:8,16 75:24
76:2,5 81:24
101:20 129:18
136:11,25 141:23
142:14 143:2
172:9 199:23
204:12,15 205:7
205:14 206:18

210:22 212:5
223:22
scheduled  94:7
129:10 203:3
223:15
schedules  52:8
scheduling  5:9,19
6:5 8:9,17 14:2
15:11,19 101:24
102:11,18 103:6
212:16
scheindlin  120:19
schlecker  26:13
scholarship
187:23
school  63:10
226:9
schools  103:19
104:4
schwartzberg
26:14
scope  105:6
scores  76:13
188:22
scott  20:8
screen  30:2 32:20
97:24 138:9
script  101:13
scrutiny  31:16
sdny  187:9,10,11
190:15 191:19
se  24:9,10,11,12
39:15 65:15 99:2
100:12
sean  25:10
second  3:20 4:3
4:10 5:18 6:4,17
7:3,10 9:9,16 10:4
11:6,12,19 12:4
36:19 37:6,17
51:23 53:9,10,10
54:24 56:3,9,10
56:22,25 57:3,9

59:9,24 60:1,1,4,5
60:6 62:7,14,17
62:18 63:17 64:6
65:5 67:6,22
70:10,11 71:4,5,6
71:16 72:8,10,12
72:20 73:15 74:7
75:3,12 78:13,15
78:17,17,19,20
79:6,16,20 80:19
81:11,18 82:2,6
82:14,16,22,24
85:1 86:19 87:1
88:8,18,23 89:1
90:9,17 96:19
105:8 106:17
107:5 108:12,20
110:2,6 112:15
113:17 114:9
116:17,22 117:4
118:16,24 121:16
123:7 124:4
125:12,19 127:15
127:20 128:15
129:15,16,20
130:1 131:2,18
132:15 137:11
138:13 141:16
142:1,7,9,11,12
142:19,22,22
143:8,9 146:10,12
147:1 152:9 158:5
158:25 161:9
162:17 163:7,21
164:1,22 165:7,13
165:16,22,23
166:16 169:12
171:5 179:6
183:10 187:19
189:4 192:21
193:8,11,18 195:8
195:12,23 196:16
196:18,22,22

197:2,14 198:1,1
200:24 202:10
206:24 210:21,24
228:11
secondly  44:24
46:20 81:5 158:3
160:6 176:8
181:21
seconds  151:12
177:15
section  46:24
51:11 64:4 66:8
77:2,24 80:13
91:1 97:9 119:4
128:18 150:5
151:13 157:2
177:4 179:24,25
180:17,24 184:18
185:15 186:3
187:13 191:9,16
192:11 195:23
196:3 198:2,9,21
200:3,25 201:23
202:5
sections  91:6
securities  39:20
110:9
see  30:2 32:20
35:17 36:19 84:22
97:24 120:15
125:2 135:21
140:17 141:6
148:13,15 164:1,3
175:1 181:4 187:8
187:15 188:6
189:15 190:2,10
191:7 192:6
194:21 196:9
198:17,18 199:8
206:15 210:3
212:23 216:14
219:5 222:2

seeing 178:17
seek 32:13,15
  36:7,8 52:9,14
  79:7 108:5 114:14
  115:6 152:22
  153:23 154:12,21
  171:3 179:4
  200:14
seeking 53:1,4
  56:18 78:24 98:8
  98:22 102:15
  105:24 108:4
  153:17 166:2
  171:2 174:15
seeks 32:18 39:16
  40:1 43:14 44:6
  46:20 179:11
  212:10
seen 35:10 154:6
self 26:15
send 48:25 49:3
  205:2
sensationally
  150:22
sense 53:12 60:3
  74:23 75:15 79:11
  80:21 81:8 86:4
  95:21 109:7
  136:13 169:18,19
  216:12 222:12
sent 41:8,15,17
  99:3 217:16
sentence 106:6,12
  116:14
sentencing 212:19
  218:21,22
separate 40:5
  75:18 98:15
  115:22 174:13
  191:2,10 207:2
separately 175:25
sept 199:9

september 32:18
  33:15 36:5,6
  136:1 139:15
  144:18 179:14
  202:17 203:3,22
  211:23 212:4
  224:14
sequential 53:7
seriously 224:2,8
seriousness 82:21
  137:1
serve 100:18
served 48:25
  213:14,17 216:11
  216:14
service 85:12 99:1
services 31:8
  36:22 45:25 46:1
set 35:4,18,24
  96:17 101:6
  114:22 130:14
  140:12 146:13,17
  170:1 179:23
  180:1,7 182:18
  196:25 198:2
  199:23 207:5
  224:12 225:8
  226:1
sets 44:13 113:9
setting 37:10
  172:9 181:22
  184:8 198:25
  225:18
settle 184:16
settled 56:16
  70:13 114:9 115:7
  126:12 184:3
settlement 91:15
  91:21 92:8 126:7
  134:3,8 135:13,24
  136:18 151:25
  157:3,9,25 173:16
  173:17 218:18

settlements 38:18
seven 100:15
  118:19,23
seventh 110:17
  177:17
shame 161:21
shannon 25:24
share 182:13,25
shareholder
  46:12 52:11 88:14
  111:23 112:1
  118:13 157:3,8,13
  157:25
shares 136:7
sheer 143:22
she'll 82:1
she's 155:18
shifer 28:1
shocked 54:21
  57:4 69:24 196:21
shocking 113:16
shockingly 127:5
shoehorn 123:1
shop 72:3
shore 4:13 7:13
  10:7 12:7 24:6
  26:16 28:2 147:11
  147:11,14,14
  151:11 153:3
  160:22 162:2
  174:3 213:8 216:4
  216:8,23 217:2,6
  217:11,12,12
  219:20 220:19,22
  221:25 222:5,9
  225:13,16,25
  226:4,13
short 124:25
  145:16,20
shorten 5:7 8:7
  14:1 15:9 116:12
shortened 116:4

shortening 5:9,19
  6:5 8:8,17 14:2
  15:10
shortly 211:17
  215:21
shouldn't 79:2
  116:2
show 63:18
shown 47:6 202:5
shows 122:1
shut 207:6,11
sick 95:20
side 29:21 98:2
  103:13,15,21
  104:6,8 117:14
  124:8,9 137:24
  146:7 147:6 156:5
  158:20 204:10
  207:25 208:3,8
  220:23
sides 110:23
  166:11 181:25
  201:21
sidney 27:22
siegel 59:13
sign 157:7
signal 146:10
signaled 203:16
signature 229:9
signed 13:9 14:10
  14:16 16:5,9,16
  16:24 17:4,10,18
  17:24 18:4,12,17
  19:1,9,15 157:5
significance
  146:14
significant 53:18
  87:19 94:3 96:18
  144:1 209:13
silence 172:14
silverstein 123:11
similar 29:13 70:8
  81:21 91:6 127:4

182:13 210:8
214:3
**similarly** 55:6
89:23 197:15
**simple** 115:14
132:23 154:24
182:24
**simplest** 84:3
**simply** 53:16 54:8
54:10 55:23 58:13
59:9 65:22 66:14
67:19 69:12 71:6
74:18 79:17 88:23
123:4 126:17,25
132:21 141:7
143:5 160:2
163:16 172:3
174:4 197:13
198:25 211:6,18
212:2
**sine** 150:19
**single** 100:20
102:19 104:16
113:18 127:11
**sir** 39:12 41:5
42:13,19
**sit** 52:6 74:8,17
93:10
**sites** 177:20
**sits** 180:23,24
**sitting** 142:10
**situation** 34:11
87:6 199:12
218:21
**situations** 201:25
224:2
**six** 115:20 116:22
117:5 137:13
141:20 144:17
156:24 223:4
**sixth** 110:17
142:16

**skapof** 26:17
**skip** 128:24
132:10 186:15
**skipping** 129:25
131:16
**slate** 146:21
**slaugh** 26:18
**sleep** 205:16
**slip** 85:6
**slow** 163:19
165:11
**slowdown** 143:15
143:17
**slower** 164:21
205:10
**small** 114:19
117:16 186:22
**smith** 27:8
**social** 105:17
**solely** 182:22
**solicitor** 54:22
55:12
**solution** 76:2
**solutions** 59:13
229:22
**solved** 160:6
**someday** 105:15
**somers** 26:19
**sonya** 19:25 229:5
229:10
**soon** 144:23
200:10
**sophisticated** 72:4
72:5 118:2
**sorry** 41:5,22
48:16 64:1 74:20
99:10,16,24
122:20 152:20
153:15 167:15
174:23 175:1,16
179:1 186:21
187:11 188:16
189:6 205:11

206:21 217:11,11
**sort** 62:25 73:4
83:2 101:16
106:19 116:11
117:11 119:17
123:21 134:20
153:25 156:13
176:1 215:22
**sought** 42:2 47:12
47:13 50:3 95:4,5
95:10 142:2 169:1
204:9 215:10,11
215:13,15 222:11
**sounds** 149:7
150:4 157:10
217:18 222:4,6
**source** 159:21
**southern** 1:2
73:19
**sovereign** 92:18
96:11,13,15,22
116:6,9
**sovereigns** 92:18
96:21 97:11,13
**sovereignty** 88:22
**spade** 114:13,13
**speak** 92:11 99:18
104:2,4 152:25
205:10 217:8
222:12
**speaking** 58:20
98:6 167:15
**special** 130:22
**specific** 36:7,8
44:21 140:3 142:1
151:3 159:10
211:18
**specifically** 32:13
52:14 111:15
123:11
**specified** 44:19
**speculation** 199:2

**sped** 165:20
**speed** 54:2,6
71:15 76:17,18
80:7,18 130:14
131:4 143:5
145:14,21 165:13
166:20 185:14
186:6,7,19,21
201:24 215:2
**spend** 119:15
224:25
**spent** 118:2,3
160:7 191:13
**split** 151:24
**splits** 151:21
**spoke** 34:1
**spoken** 98:18
162:15
**spot** 139:17,19
**springer** 26:20
**springfield** 121:2
121:3 123:20
124:1 191:5,6
**squared** 148:7
**squarely** 56:11,23
56:25 70:11
143:12 158:6
163:25
**sr** 2:20,23 3:10
17:8 24:10 227:15
**sraders** 28:3
**st** 161:15
**stahl** 28:4
**stake** 122:8
184:16 189:21
214:10
**stakeholders**
137:16
**stand** 35:2 43:2
43:10 134:1
197:16
**standard** 31:5
56:2 59:25 81:13

84:3 120:12,18
121:1,6 123:8
124:15 170:12,16
214:13,15
**standards** 163:16
**standing** 47:6
100:7 131:20
174:8 201:7
**stands** 94:4
**stare** 184:7
**stark** 154:8
**start** 35:21 105:9
119:17 132:16
137:14 156:20
**started** 34:3 79:11
125:23
**state** 2:24 3:22
6:14,19 8:7,11,16
8:20 9:1,5,11
11:14 15:25 16:14
21:9,16 22:1,2,9
23:20 39:17,18,20
39:23 40:7,8
41:19 42:18,23
43:4,7,22 46:1,6,7
47:1,8,24 49:22
67:3 80:2,7 86:13
87:13 88:9,22
97:1 103:25
113:25 125:3
146:4 151:14
164:14 169:10
171:15 181:5
186:23 196:23
213:14 215:11
**state's** 167:19
168:3,11 215:16
**stated** 37:22 40:25
41:2 48:5 91:20
139:5 140:12
141:5 143:5 145:5
147:5 203:15

**statement** 4:11
7:11 10:5 11:1
12:5 15:18 35:3
67:18 93:24 106:7
128:1 161:2
178:12
**statements** 37:24
56:10 171:25
211:25 224:18
**states** 1:1,11 3:13
3:16 4:2,9 5:8,10
5:13,16,17,20,23
6:2,3,6,10,12 7:2
7:9 8:9,15,18 9:3
9:15 10:3 11:3,4
11:18 12:3 13:1,2
13:6,17,21 14:1,3
14:7,20,25 15:2,7
15:9,11,16,23
20:14 21:1 29:9
40:2,20 46:22
49:9,15,16 51:8
51:19 53:23 55:5
55:6 57:25 58:25
59:19 65:2 69:5
72:16 75:25 78:18
79:18 84:2,4,5,6,9
84:14 86:3,3,7,14
88:3 96:10 102:9
103:23 105:10
118:25 125:6
137:17,19 138:25
139:2,21,24 141:6
142:18 143:6,20
143:24 145:1
148:15,24 149:2
149:14 150:1
151:22 157:4
160:18 163:2
165:25 167:22
168:25 169:1,4,8
169:15,23 171:12
174:4,5,5,6,10,11

174:15 177:19
179:7,8,20,25
180:11,13,15
183:18 184:22
186:4 188:13,20
188:25 193:18,21
196:22 203:9
208:1 217:20,21
219:7 227:18
228:8,9
**states'** 113:22
**state's** 48:22
114:6 134:2
135:20
**stating** 91:21
143:19
**statue** 148:12,22
**statues** 124:7
133:20
**status** 15:19
212:17 213:4
**statute** 47:3 73:10
84:1 89:21 90:4
96:17 104:13
105:13 109:16
130:5,23 133:16
136:5 141:14
144:25 145:11,13
165:12 167:5,9
178:15 180:5,22
181:21,22 182:18
183:6,8,15,18
188:6 189:20
190:16 191:1,3
192:6 194:23
195:20 196:2
202:12,19
**statute's** 189:1,2
**statutes** 91:2,7
115:1 170:16
**statutorily** 55:22
**statutory** 159:17
159:18 182:22

190:25,25
**stay** 13:1,3,16,18
14:4,19,21 15:1,3
15:4,5,12,13,14
15:23,24 16:12
17:7 18:1,20 29:9
29:12 41:13 73:1
74:15 79:1 82:9
85:2 99:11 100:1
102:12 145:8,18
153:17,22 154:2
154:18,19,22
163:1,10,12
166:10,17 172:9
176:21 182:5
199:18,18 202:25
203:4,10 204:4,9
208:5,15,21 209:4
210:25 211:4,6
212:3,21 213:2
214:16 222:22
224:4,14,20,23
**stayed** 45:4 154:9
218:3
**stays** 162:4
182:17
**step** 36:15 129:25
152:9,13,15
201:16
**stephanie** 25:1
**steps** 49:13 87:17
179:15
**stern** 58:14,20,23
59:14 66:21 70:11
89:18,19 131:14
173:12 192:23
201:3,11,15
**sterns** 90:23
**stipend** 187:23
**stipulate** 217:17
217:18 224:20
**stock** 131:25

stodola 26:21
stop 40:6 46:25
71:2 99:7 100:3
114:23 127:17
133:9 135:8 200:4
stopped 178:25
story 135:4
straight 58:2
147:25
straightforward
107:22
strategy 212:11
strauss 23:1
140:19 206:9
street 1:13 20:16
21:3,10,17 22:18
strike 160:5
strip 84:5 107:20
strong 182:11
183:7 225:3
strongly 76:7
structure 46:12
46:13 76:9 98:21
student 60:22
63:10
stuff 68:16 108:22
115:23 131:1
subject 31:25
44:10,25 46:15
70:25 93:11 94:2
96:25 97:6 112:5
117:19 157:6
170:14 181:1,9
192:15,25 193:15
194:16,17 195:7
195:11 196:8
198:8
submit 85:9 86:10
91:19 126:23
202:15 222:19
submits 65:2
submitted 138:20

subparagraph
180:1,3
subpoena 213:15
subramanian
28:5
subsection 179:24
180:15 188:19
189:9 196:5
subsections
183:16 187:13,24
188:6
subsequent 49:12
subset 145:12
substantial 93:3
153:12 181:9
191:13,25 192:16
substantially
31:22 193:13
subtext 163:7
success 47:21
113:1
successful 142:7
successor 107:23
sue 220:9
suffering 34:14
sufficient 38:12
56:6 128:17
sufficiently 91:5
167:10
suggest 81:2
96:14 168:3
176:20
suggested 57:24
69:1 109:15 212:3
suggesting 103:1
140:6 162:19
169:15,20
suggestion 216:5
225:3
suggests 65:23
70:9 97:4,5
suing 106:22

suitable 91:18
suite 20:16 21:3
22:18 229:24
sullivan 27:7 28:6
summary 175:5
175:13
summer 158:15
sunedison 60:11
61:10,18 67:1
69:17 113:9
126:14,17,21
197:15
sunset 124:8
super 218:19
219:2
superior 43:17
supplement 150:2
supplemental
64:14
supplied 89:16
189:10
support 2:10 3:8
3:13 11:3 13:2,17
14:20 15:1 61:20
64:10 103:20
134:24 135:1
150:2 211:14,14
221:9 223:1
227:19 228:7
supported 91:12
108:18
supporter 146:7
147:6
supporting 3:3
115:1
supports 215:23
suppose 86:2
198:22 225:3
supposed 105:25
130:23
supreme 36:21
55:18 56:3,4
58:14,16,18 59:11

59:20 63:22,24
64:3,7,7,16,21
76:23 109:4,11,16
110:14 116:17,25
147:2 180:11,14
187:19 188:12,19
188:21,25 189:12
192:20 193:1,8,10
193:19 201:3,6
sure 48:24 50:4
79:6 98:9,9 109:2
121:17 130:18
134:4 136:24
146:2 155:4 156:9
156:9,16 159:9
165:7 175:12
203:11 210:20
218:25 220:19
223:2,14,19
surprise 102:12
114:25
surprised 59:16
172:2
survival 122:8
survive 144:17
susan 26:6
sustained 44:11
sweet 139:17,19
switch 78:14
sworn 108:17
sympathetic
224:18
system 116:24

t

t 25:10 64:16
229:3,3
table 217:25
218:2
tag 40:24
tagalong 40:19
tagged 170:13
take 34:16 46:16
47:7 53:10,15,17

70:5 73:21 74:16
74:16 75:7,12,21
75:24 76:3 78:13
81:9,14 85:2,8,8
85:17 92:2,20
94:24 98:10,11
99:19 100:5
103:14 110:1,15
126:19 128:14
129:16 130:7
143:7 145:22
148:23 151:12
153:8,18 161:11
166:5,24 178:23
179:15 181:3
185:20 186:24
199:7,16 200:19
204:1 211:10
218:25 220:17
222:20
**taken** 32:15 38:4
43:19 50:17 63:16
73:25 74:10 86:4
88:16 149:8
150:25 180:21
184:21 198:7
201:18
**takes** 37:7 74:7
82:2 86:20 130:7
149:11 181:13
**talk** 39:11 98:16
103:14 106:20
107:24 108:7
109:21 113:3
117:2,10 120:12
127:16,21 143:16
183:14 218:6
**talked** 60:14
69:16,17,19,22
141:12 142:3
222:2
**talking** 52:6 67:10
67:12 141:3

149:14 158:13
160:7 174:14
175:12 213:16
216:11 219:14
221:8
**talks** 80:13 101:25
143:5 145:21
**target** 33:19
**targeted** 32:25
**targeting** 33:2
**taxpayer** 122:11
**taylor** 27:15
**tdp** 150:5,10
151:1
**tdps** 151:12,20
**technically** 222:1
**techy** 151:16
**tele** 1:12
**telephonically**
20:8,9,10,11,12
20:19 21:6,13,20
22:6,13,21 23:8,9
23:17,24 24:6,8
**tell** 55:20 78:19
78:21 95:17
100:23 106:8
136:6 140:21
204:24 226:8
**telling** 106:4
119:19 165:21
**tells** 111:10
**tempting** 182:20
**ten** 104:11 148:21
151:12 177:15
**tend** 93:23 186:16
222:14
**tends** 53:8
**tens** 118:3 120:6
122:10 192:1
**tents** 185:4
**term** 193:5
**terminated**
220:10

**terms** 45:11 47:2
75:20 80:8 96:7,7
96:18 112:25
157:18 172:10
176:12,18 198:21
**terrible** 105:17
124:9 129:4
**terrific** 73:17
135:6
**test** 37:6,7,13
38:11 119:7 120:9
**testimony** 108:17
117:20 210:7
220:14 223:16
**thank** 32:11 35:2
39:8,10 48:8,10
48:11 49:7 51:4
54:14 79:10,23,24
83:7,8,14 86:11
92:3 97:22 138:4
140:13,14 145:25
147:6,7,9,10,14
151:9 156:18,22
164:5,6,13 167:11
167:17,18 168:16
168:17,23 174:20
176:25 177:13
178:22 210:14
213:13 221:24
222:9 226:13
**thanks** 30:8 179:1
**that's** 34:3 37:10
42:4 47:16 54:10
55:9 57:20 58:2
59:25 61:3 64:23
67:25 72:25,25
73:11,12 74:1
78:16 79:2,2,10
79:17 80:15,15,16
82:22 83:2,6
89:14 90:1,19
91:24 95:19 98:25
99:1,14 103:3,9

104:15 105:17
106:11,15 108:6
114:24 115:16
120:3,9,18 121:20
122:21 123:8
124:6 126:18
129:24 131:5
132:4 134:19,21
134:22 135:5
136:23 137:12,23
140:4 141:13
143:15 145:6,22
145:23 147:18
148:1 151:7 153:8
157:8,8 158:12,24
159:1,9,17,21
160:3
**theirs** 117:14
**theodore** 27:4
**theory** 38:8 45:23
**there's** 53:3,25
64:22 65:1 73:18
73:24 81:2 92:23
100:14 119:7
131:1 152:15
158:13,17
**they'll** 74:8
**they're** 65:10 66:9
66:9 79:3 87:12
99:5,6 106:19
107:16 111:2
112:15 116:20,21
117:8 118:18
119:10 123:3
131:25 132:15
142:14 148:5,8
155:21
**they've** 91:19
106:3 119:11
**thin** 114:14
**thing** 33:8 58:6
61:23 85:19
104:14 133:19

153:8,10 156:14
164:25

**things** 35:4 66:11
74:6 77:21 82:11
82:13,21 98:3
101:2 107:4 109:3
110:23 120:10
121:13 132:25
137:24 153:2,10
155:16,22 161:22
178:2 201:8
204:20 223:1
225:22,24

**think** 30:19 32:1
35:5,20 51:18
52:23 53:1 54:13
57:3 61:11 62:1,5
63:1,12 65:6,13
66:25 67:17 69:23
70:18 71:4 72:1,9
72:11 73:5,7,18
75:4 76:2 78:20
79:3,7,15 80:3,9
80:20 81:10,15,25
82:3,7,12,13,19
82:22 83:1,3
84:25 86:1,23
87:8 88:7 89:10
89:19,20 90:1,21
90:25 91:9,11,13
91:25 92:15 94:13
94:21 95:2,15,20
97:4,8,11 98:8,21
98:22 101:4,11
105:16,16 106:18
107:25 108:2
114:5 117:12,24
117:24 118:23
119:8,10,11
121:24 124:25
125:15 128:23
129:12 130:9,25
131:1,9,13,22

132:22 133:2,3,6
133:8,12,25 134:2
134:25 136:3,4,4
136:5 137:25
138:1,9,13,21,24
139:18,25 140:6
140:10 144:25
145:8,11,17
146:19 147:22
148:22 152:8,16
153:4 157:12,21
159:9,23 160:20
160:20,21,22,22
161:8,18,20 162:2
162:2,6,15 163:11
164:9,18,22
165:16 166:8,9,11
166:18,23 167:4
167:10 168:24
170:10 171:7,8,21
173:22,23,25
174:5,25 176:11
176:20 177:3
178:6 182:25
185:9 190:13
198:17,24 200:18
202:21 203:18,22
205:8,23 206:5,25
207:5 209:20
210:24 211:2
212:22 213:15
214:6,10,16 215:4
215:7,14,23
216:12,19 217:15
217:25 218:15
219:10,11,13,14
219:22,25 220:13
221:5,14 222:16
223:7,7,17 224:8
224:14,15,16
225:5,21

**thinking** 129:24

**thinks** 71:5
178:13

**third** 45:12 55:25
56:13,20,21 57:5
58:1,24 59:5
62:13 63:13,23
65:9,16,17,21
66:15,23 68:3
70:2 87:9,11,15
87:20,23 88:11,11
88:17 89:4,8
90:10,22 91:8,18
103:17 104:4
106:13,22 110:4
111:22 112:5,24
113:7,10 117:23
118:9,17 119:2
123:2,12 125:20
125:23 126:10
140:2 142:5
146:22 148:10,14
148:16,25 149:2
150:21 159:5
160:2 167:24
168:4 171:6,10
177:17 178:9
185:12 193:20
195:6 197:3,10
198:4 200:23,24
201:16 202:5
218:4

**thirkill** 2:5 29:18
29:18 31:24 227:6

**thirkill's** 30:9,11

**thomas** 26:4
27:23

**thoroughly** 70:24
188:20

**thought** 77:10
105:2 133:16,23
147:9 155:11
161:5 168:3 217:8

**thousand** 126:2
148:21

**thousands** 100:19
108:17 112:9
114:3,4 120:6,6
122:10 192:2

**thousandth** 104:9

**threat** 160:13

**three** 37:3 65:2
100:14 113:17
116:13 124:23
129:13,19 132:13
133:22 152:10,13
165:15 176:9
183:15 187:12
199:16 214:19

**throwing** 68:15

**thrown** 62:25

**tie** 117:11

**tied** 108:18 152:3

**time** 5:7 8:7 14:1
15:9 34:2 37:10
38:3 41:6 43:25
51:1 53:18 71:6
72:10 90:14 93:5
93:21 98:18 99:19
103:7 110:16
116:4,12 119:15
122:7 127:21,22
133:2 140:22
142:24 143:13
149:2 152:8
156:23 160:21
161:5,7,14 164:5
188:15 191:13
200:19 201:20
209:14,20 211:10
212:2 216:17

**timely** 31:13,20
32:17 44:18 156:6
156:8

**times** 33:18 68:9
74:5 77:10 85:24

105:3 112:16
113:17 117:5,6
129:13 137:6
176:9 182:2 195:1
195:1
**timing** 121:16
146:15 180:25
**tired** 161:20
**tobak** 20:11 205:2
205:6,6,9,11,11
**today** 35:11,19
51:20 58:21 79:12
83:20 93:10 95:7
98:4,18 103:9
110:22 115:24
135:23 136:17
140:12 142:10
149:9 155:3,4
156:25 157:10
158:16 163:18
166:4 175:15
176:24 178:15
182:6 221:23
225:14
**today's** 226:16
**told** 34:4 63:11
101:4 104:21
108:12 121:13
135:5,21 158:4
207:16
**tonight** 222:1
**tooth** 221:4
**topco** 13:12 16:19
17:13 18:7 19:4
**topic** 64:14 195:5
218:16 221:19
**toronto** 94:7
**total** 102:12
125:13 152:15
**totally** 45:10
100:14 105:16
111:8 125:12
126:16 131:12

156:3
**toto** 129:24
**touchstone**
111:10
**tower** 23:5
**townes** 20:9 29:24
30:2,3,5,5,9,19
32:11
**traceable** 66:4
**track** 146:17
200:15 212:16
**trade** 167:23
**transcend** 65:8
**transcends**
120:22
**transcribed** 19:25
**transcript** 172:19
173:5,21 211:10
229:6
**transfer** 41:3 47:4
**transform** 115:14
**transpired** 35:4
**treasury** 39:19
**treat** 125:23
131:22 201:8
**treated** 38:5
**treatise** 185:11
**treatment** 50:8
59:4 66:10 71:25
144:13,14,17
154:13,22 200:14
200:14
**treats** 73:7
**tremendous** 74:11
78:7 135:6
**trenton** 21:11
**trial** 85:22 94:3
126:3,10,18 162:7
182:9 196:15
199:16 210:23,24
**trial's** 211:8
**tribal** 97:11,12

**tribunal** 56:18
59:3
**tried** 76:13 96:14
106:2 195:11
**trier** 111:18
**trigger** 110:12
116:18
**triple** 154:1
**tro** 203:11 212:21
**tronox** 161:13,14
162:17
**troop** 26:22
**trophies** 60:15
66:17
**true** 71:22 81:10
121:14 149:24
153:14 200:5,5
211:1 229:6
**truly** 112:24
148:12,13 212:25
223:18
**trust** 13:12 16:13
16:19 17:13 18:7
19:4 48:24 170:25
**trustee** 3:16 5:13
5:23 11:4 13:6,21
14:7,25 15:7,16
20:15 21:2 40:2
46:22,25 49:9
50:3 51:8,9,14
53:23 54:9,23
55:6,19 57:4,25
59:19 65:2 72:16
76:1 78:18 79:18
91:14 101:23,25
102:9,18 106:8,12
117:13 121:7
129:12 130:8
139:1,3,21,24
140:6 142:18
143:6 145:1
148:14,24 149:6
149:14,18 150:1

156:21 157:4
161:2 168:25
169:2,7,22 173:12
176:5 179:7 181:5
188:14 189:7
196:14 197:17
200:2 202:20
204:3 208:2
210:12,21 212:12
215:13,15,21
217:14,20,21
219:7,12,17
221:10 222:2
224:13 228:8
**trustee's** 5:8,10
5:16,20 13:1
14:20 15:2,12
169:16 172:4
176:5 179:9,11,18
202:22 203:9
204:18 214:3
219:10 222:25
**trustees** 3:13 6:2
6:6 13:3,17 14:1,3
15:9 92:1 227:18
**trustee's** 29:9,12
51:19 58:25 80:6
81:1 101:14 106:6
109:1 111:2
130:16 134:3,22
136:24
**trusts** 13:11 16:18
17:12 18:6 19:3
94:1
**try** 40:20 100:13
101:5 130:25
147:23 149:21
189:23
**trying** 54:13
75:13 77:23
112:15 118:3
134:21 135:8
140:22 150:9

156:14 178:18
225:23
**tsier**  26:23
**tuesday**  55:19
74:6 102:18
127:18
**turn**  30:1 55:14
79:11 144:15
147:23,25 164:23
203:1 204:13,21
207:8,9,10,12
**turned**  42:5
205:23
**turning**  51:23
74:12
**turns**  117:18
184:18
**twelfth**  14:14 16:7
17:2,22 18:15
19:13
**twenty**  178:24
**twice**  95:3,12
110:8 186:23
**two**  36:15 37:1
43:14,15 44:2
46:21 52:2 58:22
59:3,11 62:9
65:19 69:2,20
73:13 74:6 75:13
75:17 77:20 79:3
81:4 82:11 95:3
113:4,20 119:17
119:18 122:2
123:5 125:9,13
127:3 138:25
139:16 143:15
152:6,18 159:6
169:17 172:1
177:14 178:20
179:4 188:21
196:13 199:1
200:15 206:4
207:2 214:22

217:18 224:11,24
225:23,23
**twofold**  44:16
**type**  38:23 81:21
161:24 195:20
213:3 221:19
224:6 225:7,10
**types**  38:19
114:12 161:3
173:18 183:12
188:5 194:17,18
**typical**  78:10
**tzerina**  27:11

**u**

**u.s.**  1:23 20:15
21:2 29:12 31:9
36:23 40:2 46:25
50:3 51:8,14
52:21 54:9,22
55:6,18 57:4 80:6
81:1 87:3 91:14
91:25 92:18 97:11
101:14,23,25
102:18 106:6,8,12
109:1 111:1
117:13 121:7
122:8,11 129:12
130:8,16 134:2,22
136:24 140:6
145:1 148:13
149:5,18 156:21
161:2 169:2,7,16
169:22 172:4
173:11 179:8,11
179:18 187:17
188:14 189:7
190:3,11 196:14
197:17 198:20
200:2 202:20,21
204:3,18 208:2
210:12,21 212:12
215:13,21 217:14
219:10,12,17

221:10 222:2,25
224:13
**u.s.c.**  5:2 7:4,11
8:2,10,15,19 9:4
9:17 10:5,18
11:20 12:5,18
45:17 92:21,25
170:6 179:24
180:24 182:8
187:24 200:3
227:21
**ucc**  30:13 84:12
103:19,20,22
208:8 213:17
214:2 216:10
**ucc's**  113:13
**uday**  27:14
**ultimate**  76:18
106:8 121:21
186:8 193:17
**ultimately**  77:20
93:15 95:22 158:8
166:5 173:4,9
183:4 201:19,22
211:3
**un**  122:12
**unable**  149:18,19
**unambiguously**
170:11
**unavoidable**
112:9
**uncertainty**
152:16 204:16
**unchallenged**
117:21
**unconstitutional**
148:11
**uncontroverted**
117:20
**undergird**  86:8
**underlying**  30:25
47:9 113:1 159:21
182:12

**undermine**  126:1
126:12
**underneath**  40:5
**understand**  33:17
33:23 42:5,7 44:4
54:6,21 60:22
62:8 63:15,19
65:8 77:23 78:6
84:17 86:23 90:16
90:17 108:4
123:24 130:13
133:24 156:5
157:19 158:7,14
161:6 163:9 170:9
170:15,18 173:3
173:14 175:7,9
176:13 178:13
200:9 217:1
220:25 222:17
**understandable**
210:2
**understanding**
160:23 215:16
223:23
**understandings**
67:20
**understands**
135:6 137:1 171:1
**understated**
72:21
**understood**
145:19 153:20
154:23 158:9
163:3,14
**underway**  134:12
**underwood**  11:7
18:2 22:21 92:10
92:12,13 94:15
116:11 156:2
174:22 175:1,3
176:3,4,14,16,18
176:20,25 177:3,6
177:8,11,13,21

**underwood's**
115:19
**unfair** 98:21 99:5
167:23
**unfortunate**
66:10
**unfortunately**
161:19
**unhappiness**
184:3
**unheard** 58:17
**uniform** 196:1
**uniformity** 69:13
**uniformly** 90:8
**unique** 67:25
**united** 1:1,11 3:13
3:16 4:2,9 5:8,10
5:12,15,17,20,23
6:2,3,6 7:2,9 9:15
10:3 11:3,18 12:3
13:1,2,6,17,21
14:1,3,7,20,24
15:2,7,9,11,16
20:14 21:1 29:9
40:2,19 46:22
49:9 51:8,19
53:23 57:24 58:24
59:19 65:2 72:16
75:25 78:18 79:18
102:9 118:25
138:25 139:2,21
139:24 142:18
143:6,20,24
148:24 149:13
150:1 157:4
168:25 179:7
180:11,13,15
181:5 188:13,20
188:25 203:9
217:20,21 219:6
227:18 228:8
**universe** 78:3

**unjust** 99:6
**unknown** 132:17
152:15
**unneeded** 114:4
**unopposed** 31:1
**unprecedented**
35:17
**unqualifiably**
123:15
**unquestionably**
105:5 110:19
112:12 135:17
**unreasonable**
37:16 114:20
**unrebutted**
117:20
**unrelated** 45:10
**unresolved** 123:9
**unsecured** 4:16
4:19,23 7:17,20
10:11,14 12:11,14
23:2 31:2 50:1
140:20
**unsettled** 76:20
186:9
**unstated** 134:20
**unsupportable**
125:5
**unsupported**
105:16,23 127:6
**unsurprisingly**
152:12
**untruth** 134:20
**unusual** 107:9
112:24 211:5
**unwieldy** 55:24
**update** 213:14
**upheld** 137:14
**upholding** 174:6
**urge** 140:13
163:20
**usc** 3:15 4:3,10
5:11,18,22 6:4,7

6:13
**use** 65:11 107:6
113:1 116:14
124:7 136:2
148:18 150:17
215:9
**ust** 54:21 58:6
**usually** 120:24
191:17
**utility** 78:10
**utterly** 129:4
**uzzi** 26:24

**v**

**v** 31:8 36:22 37:21
58:14 59:13 87:3
89:18,19 90:23
96:23 103:21
108:8 110:10
120:16,19 124:16
131:14 161:16
181:5 187:16
191:5,18 192:23
193:7 201:3,11,15
**vague** 91:7
**valerie** 2:24 21:13
43:6
**valid** 127:25
170:19
**value** 38:21 58:1
184:7
**van** 26:25
**vargas** 1:25
**varick** 20:16
**variety** 70:22 72:2
**various** 39:16
45:24 203:4
211:13
**vary** 81:11
**vast** 62:6 171:19
**velez** 27:1
**verbs** 107:21
**veritext** 229:22

**vermont** 83:19,21
189:16 191:7
**versed** 214:22
**version** 215:22
**versus** 58:9 71:15
166:21 173:12
218:8
**victims** 4:8,14 7:8
7:14 10:2,8 12:2,8
24:2 30:14 49:23
104:1,3 137:5
147:16 208:10
218:7 220:6 225:1
**video** 1:12
**view** 53:19 54:12
59:16 63:2,20
77:19 119:14
136:7 145:5
155:24 166:20
184:8 187:3 202:7
**viewed** 186:10
193:5
**views** 77:18,24
101:24 103:8
109:20 128:4
134:23 135:2
137:6 171:21
**vince** 27:7 28:6
**violate** 118:18
**violated** 149:8
**violates** 148:25
**violating** 58:12
117:6 118:20
**violation** 156:2
157:15
**virtual** 155:19
**virtually** 93:5
**vis** 96:3,3
**visibility** 212:22
**voice** 178:25
**volume** 92:22
**voluminous**
215:23

[vonnegut - wilk]                                                                    Page 62

**vonnegut** 15:20
27:2
**vote** 68:1 220:6
**voted** 104:7
135:11 220:4
**voting** 137:17,18

**w**

**w** 28:4 181:5
**wait** 51:2 59:23
59:23 79:17 137:3
**waited** 102:10
**waiting** 42:1
129:19
**waive** 135:19
153:16 154:19
**waiver** 135:16
136:11,15,21
154:22 157:11,21
**want** 34:10 56:8
67:11 70:2 73:4
74:17,20 78:18,21
79:5,16,17,20,25
81:4,6 83:2,15
86:17 92:6,21
93:6 98:5,10
100:22 101:20
105:11 110:16
114:15 126:23
127:14 135:21
136:9 137:2
138:12 139:6
143:16 145:12,22
151:5,11 156:23
165:24 166:1,11
166:13 167:18
168:15,25 176:1
181:24 199:6
206:19 207:23
210:3,17,19,22
218:21 220:19
221:7 222:18
224:12 225:8,19
225:19

**wanted** 77:23,24
78:23 139:20
146:18 157:24
163:14 167:8
177:9 199:4
218:10,24
**wanting** 166:9
174:24 217:8
**wants** 73:11 74:2
97:25 99:18 136:8
143:7 154:10
165:17 170:12
224:13
**war** 111:2
**wardwell** 20:3
30:6 34:24
**warrant** 59:8
79:19 80:22 82:24
89:24 214:11
**warranted** 56:7
190:6 192:4 195:4
199:14
**warranting** 51:12
**warrants** 90:18
166:5
**wary** 189:25
**washington** 6:14
8:12,20 15:23
16:1 21:4 22:9
83:18,20 168:9
208:1
**washington's** 8:8
8:16
**wasn't** 57:25
77:15 146:21
159:15
**waste** 201:20
**wasted** 142:24
**wave** 90:11
**way** 54:2 55:7
58:16 61:11 68:8
68:8 75:8,17
82:23 84:16 89:21

90:14 113:5
123:10 131:11
136:1 139:18
141:14 144:9
145:6 150:22
158:11 162:12
167:1,1 171:9
172:16 178:21
192:5 202:3 219:6
221:3 225:1
**ways** 118:2 125:4
155:11 160:11
169:3
**we've** 169:1
205:23 217:23
**weaponization**
117:11
**wear** 148:4
**wearing** 153:9
197:13
**weaver** 183:11
185:21,25 188:2,6
189:20
**weber** 108:12,15
181:5,19 195:4
198:12 199:25
**website** 100:16
**weeber** 64:18 76:7
85:14 108:12
128:6 130:1
**week** 72:17 74:12
100:16
**weeks** 33:1 95:3
102:8 108:19
143:15
**wehner** 3:21 6:18
9:10 11:13
**weigh** 77:18
141:19
**weight** 97:16,16
**weinberg** 28:7
**weiss** 27:3

**welcome** 108:1,3
108:5 116:24
**welfare** 168:12
**wellbeing** 122:18
174:7
**wells** 27:4 28:8
**wendy** 28:7
**went** 66:25 93:23
110:21 121:18
122:19 125:19
170:25 186:23
**weren't** 126:12
**we'd** 127:19 132:9
132:10
**we'll** 43:2 73:7
75:10 107:23
121:2 127:21
**we're** 55:14 58:11
75:13 78:16 99:24
119:16 120:3
124:9 134:25
137:25 140:22
156:4,13
**we've** 35:10 65:2
69:17,19,22
121:23 156:18
**whatsoever** 74:9
**what's** 55:4 63:11
63:11 90:19
102:22 109:17
122:14 147:5
**white** 1:14 24:1
28:9,10 124:12
147:15 177:19
217:12
**wide** 87:14
**widespread** 184:2
**wiles** 61:2,11 63:1
66:17 69:23 113:4
125:16,18 160:7
197:5,9
**wilk** 83:10

**williford** 28:11
**willing** 155:21
  217:24 218:1
**winnowing**
  170:18
**wisely** 76:19
  186:8
**wish** 76:17 115:4
  186:6
**wishes** 44:23
**withdrawal** 34:14
**withdrawing**
  200:12
**withdrawn** 58:22
**witness** 208:21
  209:2,4 210:7
  215:11 218:12
**witnesses** 203:24
  203:25 204:11,12
  209:7,13,19,22
  210:3 211:12,16
  211:20
**wl** 108:8 115:8,12
  120:15 128:20
  190:2 199:9
**woke** 34:4
**wolff** 22:8
**wonder** 74:1,23
**won't** 105:13
  127:21 140:10
**word** 42:21 64:12
  110:1 150:6 171:7
  171:8 180:13,14
  180:14 198:24
**words** 113:1,6
  125:8 129:7
  143:18 144:6
  149:12 151:18
**work** 64:20 74:10
  99:4 167:1 200:6
  212:13 214:1
  216:20 222:3
  223:19

**working** 48:17
  130:10 225:22
**works** 150:23,23
  189:20
**world** 105:19
  112:18 114:10
**worlds** 130:9,17
  130:19,19
**worried** 79:12
  160:14
**worse** 120:1
  157:18
**wouldn't** 60:2
  154:14
**write** 33:3,20
  109:15
**writing** 33:5
  146:21 222:8
**written** 89:18
  211:11
**wrong** 54:10
  65:22 101:3,11
  117:5,5 119:7,9
  121:17,24 125:16
  132:20 134:21
  136:12 201:15
  217:25 219:13
**wrongly** 57:16
  116:15
**wrote** 56:18 58:21

                    **x**

**x** 1:4,10 114:23
  155:3,4,4 227:1
  228:1

                    **y**

**y** 114:23 155:4
**yeah** 133:2 175:22
  206:9,24 207:4,20
  213:24 217:11
  222:4 225:21
**year** 33:12 60:22
  63:9 152:14
  188:21

**years** 52:2 77:10
  109:22 118:22
  214:22
**yesterday** 49:21
  143:19 211:2,23
  213:14
**yesterday's** 111:2
**yield** 164:11
**york** 1:2 20:6,17
  22:11 23:6,15,22
  24:4 207:2
**you'd** 68:18
**you'll** 61:11
**you're** 41:5,10,12
  48:15 54:13 63:11
  64:15 67:15 68:15
  68:16 73:7,12,12
  90:16,20 129:25
  150:8,9 155:1
**you've** 108:11
  121:15 137:5
  141:3 142:3

                    **z**

**z** 26:20 114:23
**zabel** 27:5
**zeevi** 27:6
**zero** 114:25,25
  115:1,1 171:8
  172:14 177:15
**zewdie** 108:7
**zoom** 175:20

                    **à**

**à** 96:3