Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   300 Quarropas Street, Room 248

14                   White Plains, NY 10601

15

16                   December 16, 2021

17                   10:06 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  UNKNOWN

Page 2

1    HEARING re Notice of Agenda / Agenda for December 16, 2021

2    Hearing (ECF #4223)

3

4    HEARING re Objection /Motion to Object to Payments for all

5    parties and other relief filed by Ellen Isaacs. (ECF #3963)

6    Notice of Objection /Motion to Object to Payments for all

7    parties and other relief with hearing to be held on

8    12/16/2021 at 10:00 AM at Videoconference (ZoomGov) (RDD)

9    (related document(s)3963). (ECF #3964)

10

11   HEARING re Notice of Hearing Regarding Motion to Object to

12   Payments for all Parties and Other Relief Filed by Ellen

13   Isaacs (related document(s)3963) filed by James I. McClammy

14   on behalf of Purdue Pharma L.P.. with hearing to be held

15   on 12/16/2021 at 10:00 AM (ECF #3968).

16

17   HEARING re Objection / Debtors' Objection to Ellen Isaacs'

18   Motion to Object to Payments for all Parties and Other

19   Relief (related document(s)3963) filed by James I. McClammy

20   on behalf of Purdue Pharma L.P. (ECF #4212)

21

22   HEARING re Motion to File Proof of Claim After Claims Bar

23   Date filed by Robert P. Caulk with hearing to be held on

24   12/16/2021 at 10:00 AM at Videoconference (ZoomGov) (RDD

25   (ECF #4072)

1    HEARING re Objection / Debtors' Omnibus Objection to Motions

2    to File Proofs of Claim after Claims Bar Date Filed By

3    Robert Caulk and Lamere Wilmer-Williamson (related

4    document(s)4073, 4072) filed by James I. McClammy on

5    behalf of Purdue Pharma L.P. (ECF #4213)

6

7    HEARING re Motion to File Proof of Claim After Claims Bar

8    Date filed by Lamere Wilmer with hearing to be held on

9    12/16/2021 at 10:00 AM at Videoconference (ZoomGov)

10   (RDD)(ECF #4073)

11

12   HEARING re Objection / Debtors' Omnibus Objection to Motions

13   to File Proofs of Claim after Claims Bar Date Filed By

14   Robert Caulk and Lamere Wilmer-Williamson (related

15   document(s)4073, 4072) filed by James I. McClammy on

16   behalf of Purdue Pharma L.P. (ECF #4213)

17

18   HEARING re Notice of Hearing of Sixth Interim Fee filed by

19   Eli J. Vonnegut on behalf of Purdue Pharma L.P.. with

20   hearing to be held on 12/16/2021 at 10:00 AM at

21   Videoconference (ZoomGov) (RDD) Objections due by 12/9/2021

22   (ECF #4150)

23

24   HEARING re Application for Interim Professional Compensation

25   / Sixth Interim Fee Application of Dechert LLP, as 327(e)

Page 4

1   Special Counsel, for Compensation for Professional Services

2   Rendered and Reimbursement of Actual and Necessary Expenses

3   Incurred During the Period June 1, 2021 Through September

4   30, 2021 for Dechert LLP, Debtor's Attorney, period:

5   6/1/2021 to 9/30/2021, fee:$2,843,056.28, expenses:

6   $20,560.42. filed by Dechert LLP.

7   (Vasser, Shmuel) (ECF #4117)

8

9   HEARING re Sixth Application for Interim Professional

10  Compensation for Arnold & Porter Kaye Scholer LLP, Debtor's

11  Attorney, period: 6/1/2021 to 9/30/2021, fee:$849,323.89,

12  expenses: $0.00. filed by Arnold & Porter Kaye

13  Scholer LLP. (Boccanfuso, Anthony) (ECF #4116)

14

15  HEARING re Application for Interim Professional Compensation

16  Sixth Interim Application of Davis Polk & Wardwell LLP for

17  Compensation for Services Rendered and Reimbursement of

18  Expenses Incurred as Counsel to the Debtors and

19  Debtors in Possession for the Period of June 1, 2021 Through

20  September 30, 2021 for Davis Polk & Wardwell

21  LLP, Debtor's Attorney, period: 6/1/2021 to 9/30/2021,

22  fee:$38,805,548.0, expenses: $433,221.43. filed by Davis

23  Polk & Wardwell LLP. (Attachments: # 1 Exhibit A -

24  Certification of Compliance with Fee Guidelines # 2

25  Exhibit B - Retention Order # 3 Exhibit C - Professional and

1   Paraprofessional Fees for Fee Period # 4 Exhibit D -

2   Fees by Project Category for Fee Period # 5 Exhibit E -

3   Budget and Staffing Plan for Fee Period # 6 Exhibit F -

4   Expense Summary # 7 Exhibit G - Customary and Comparable

5   Compensation Disclosures for the Fee Period)

6   (Huebner, Marshall) (ECF #4119)

7

8   HEARING re Application for Interim Professional Compensation

9   /Jones Day's Sixth Interim Application For Allowance of

10   Compensation For Services Rendered and Reimbursement of

11   Actual and Necessary Expenses Incurred During

12   Retention Period From June 1, 2021 Through September 30,

13   2021 for Jones Day, Special Counsel, period:

14   6/1/2021 to 9/30/2021, fee:$1,151,574.20, expenses:

15   $91,270.27. filed by Jones Day. (ECF #4123)

16

17   HEARING re Application for Interim Professional Compensation

18   / Sixth Joint Interim Fee Application of KPMG LLP as Tax

19   Consultant to the Debtors and the Official Committee of

20   Unsecured Creditors for Allowance of Compensation for

21   Services Rendered and Reimbursement of Expenses for the

22   Period from June 1, 2021 through September 30, 2021

23   for Purdue Pharma L.P., Consultant, period: 6/1/2021 to

24   9/30/2021, fee:$24,223.10, expenses: $0.00. filed by

25   Purdue Pharma L.P. (ECF #3995)

1    HEARING re Application for Interim Professional Compensation

2    / Sixth Interim Fee Application of Ernst & Young LLP for

3    Compensation and Reimbursement of Expenses Incurred as

4    Auditors and Providers of Other Professional

5    Services for the Debtors for the Period from June 1, 2021

6    Through September 30, 2021 for Ernst & Young LLP,

7    Auditor, period: 6/1/2021 to 9/30/2021, fee:$58000.00,

8    expenses: $1177.50. filed by Ernst & Young LLP.

9    (ECF #4114)

10

11   HEARING re Application for Interim Professional Compensation

12   / Sixth Interim Fee Application of AlixPartners, LLP

13   Financial Advisor for the Chapter 11 Debtors, for Allowance

14   of Compensation for Professional Services

15   Rendered and Reimbursement of Expenses for the Period June

16   1, 2021 Through September 30, 2021 for

17   AlixPartners, LLP, Other Professional, period: 6/1/2021 to

18   9/30/2021, fee:$4,009,435.00, expenses: $194,217.02.

19   filed by AlixPartners, LLP. (Attachments: # 1 Exhibit A -

20   Detailed Description of AlixPartners' Fees and Hours

21   by Matter Category During the Sixth Interim Period # 2

22   Exhibit B - Summary and Detailed Description of

23   AlixPartners' Expenses During Sixth Interim Period # 3

24   Exhibit C - Certification of Lisa Donahue) (ECF #4120)

25

1    HEARING re Third Application for Interim Professional

2    Compensation of Prime Clerk LLC, as Administrative Advisor

3    to the Debtors, for Services Rendered and Reimbursement of

4    Expenses for the Period from June 1, 2021 through

5    September 30, 2021 for Prime Clerk LLC, Other Professional,

6    period: 7/1/2021 to 9/30/2021, fee:$623646.43,

7    expenses: $273.50. filed by Prime Clerk LLC. (ECF #4115)

8

9    HEARING re Sixth Application for Interim Professional

10   Compensation Sixth Interim Fee Application Of Skadden, Arps,

11   Slate, Meagher & Flom LLP For Compensation For Services

12   Rendered And Reimbursement Of Expenses As Special

13   Counsel To The Debtors For The Period From June 1, 2021

14   Through And Including September 30, 2021 for Skadden, Arps,

15   Slate, Meagher & Flom LLP, Debtor's Attorney, period:

16   6/1/2021 to 9/30/2021, fee:$3,436,000.65, expenses:

17   $126,312.25. filed by Skadden, Arps, Slate, Meagher & Flom

18   LLP. (ECF #4141)

19

20   HEARING re Application for Interim Professional Compensation

21   / Sixth Interim Application of Kramer Levin Naftalis &

22   Frankel LLP, as Co-Counsel to the Ad Hoc Committee of

23   Governmental and Other Contingent Litigation

24   Claimants, for Allowance of Compensation for Professional

25   Services Rendered and for Reimbursement of Actual

Page 8

1   and Necessary Expenses Incurred for the Period from June 1,

2   2021 through September 30, 2021 for Kramer Levin

3   Naftalis & Frankel LLP, Other Professional, period: 6/1/2021

4   to 9/30/2021, fee:$5,651,625.50, expenses: $61,624.84. filed

5   by Kramer Levin Naftalis & Frankel LLP. (ECF #4142)

6

7   HEARING re Application for Interim Professional Compensation

8   / Sixth Interim Fee Application of PJT Partners LP as

9   Investment Banker to the Debtors and Debtors-In-Possession

10  for Allowance of Compensation for Services Rendered and for

11  the Reimbursement of All Actual and Necessary Expenses

12  Incurred for the Period of June 1, 2021 for PJT Partners LP,

13  Other Professional, period: 6/1/2021 to 9/30/2021,

14  fee:$900,000.00, expenses: $3,567.77. filed by PJT Partners

15  LP. (Attachments: # 1 Appendix A # 2 Appendix B # 3 Appendix

16  C) (ECF #4124)

17

18  HEARING re Application for Interim Professional Compensation

19  / Fifth Interim Application of Cornerstone Research for

20  Compensation for Services Rendered and Reimbursement of

21  Expenses Incurred as Consultant to the Debtors for

22  the Period from June 1, 2021 Through September 30, 2021 for

23  Cornerstone Research, Consultant, period:

24  6/1/2021 to 9/30/2021, fee:$443,116.50, expenses: $40.20.

25  filed by Cornerstone Research. (Attachments: # 1

1   Exhibit A - Certification of Compliance with Fee Guidelines

2   # 2 Exhibit B - Retention Order # 3 Exhibit C -

3   Professional and Paraprofessional Fees for Fee Period # 4

4   Exhibit D - Fes by Category for Fee Period # 5 Exhibit

5   E - Staffing Plan for Fee Period # 6 Exhibit F - Expense

6   Summary # 7 Exhibit G - Customary and Comparable

7   Compensation Disclosures for the Fee Period) (ECF #4122)

8   First Application for Interim Professional Compensation for

9   Jeffrey R. Gleit, Special Counsel, period: 8/1/2021 to

10   9/30/2021, fee:$467761.50, expenses: $285.95. filed by

11   Jeffrey R. Gleit. (ECF #4113)

12

13   HEARING re Application for Interim Professional Compensation

14   / First Interim Fee Application of Grant Thronton LLP for

15   Allowance of: (I) Compensation and Reimbursement of Expenses

16   Incurred for Retention as Consultants to Debtors for

17   Services Related to the Plan for the Period January 20, 2021

18   to September 30, 2021; and (II) Payments for Services

19   Performed in the Ordinary Course of Debtors' Business

20   Through September 30, 2021 for Grant Thornton LLP,

21   Consultant, period: 1/20/2021 to 9/30/2021, fee:$192,710.50,

22   expenses: $34,703.49. filed by Grant Thornton LLP.

23   (Attachments: # 1 Exhibit A - Certification of Raymond Werth

24   # 2 Exhibit B - Initial Retention Order and the Supplemental

25   Retention Order # 3 Exhibit C - Summary of Hourly Plan

1   Services by Professional # 4 Exhibit D - Summary of Plan

2   Services by Category # 5 Exhibit Detailed Time Entries for

3   Plan Services by Category # 6 Exhibit F - Staffing Plan # 7

4   Exhibit G - Summary of Out of Pocket Expenses and

5   Supporting Invoices # 8 Exhibit H - Customary Comparable

6   Compensation Disclosures for the Fee Period # 9

7   Exhibit I - Summary and Supporting Invoices for OCB Tax

8   Services) (ECF #4121)

9

10   HEARING re Sixth Application for Interim Professional

11   Compensation /Sixth Interim Fee Application of Brown Rudnick

12   LLP as Co-Counsel to the Ad Hoc Committee of Governmental

13   and Other Contingent Litigation Claimants for

14   Services and Reimbursement of Expenses Incurred for the

15   Period of June 1, 2021 through September 30, 2021

16   (Attachments: Exhibit A-F) for Brown Rudnick LLP, Other

17   Professional, period: 6/1/2021 to 9/30/2021,

18   fee:$3,325,679.50, expenses: $12,918.34. filed by Brown

19   Rudnick LLP. (ECF #4126)

20

21   HEARING re Application for Interim Professional Compensation

22   / Sixth Interim Fee Application of FTI Consulting, Inc. for

23   Compensation Earned and Expenses Incurred for the Period

24   from June 1, 2021 through September 30, 2021 for

25   FTI Consulting, Inc., Other Professional, period: 6/1/2021

1   to 9/30/2021, fee:$1,264,175.50, expenses: $156.75.

2   filed by FTI Consulting, Inc. (ECF #4129)

3

4   HEARING re Application for Interim Professional Compensation

5   / Application of Otterbourg P.C. as Co-Counsel to the Ad Hoc

6   Committee of Governmental and Other Contingent Claimants for

7   Sixth Interim Allowance of Compensation for Services

8   Rendered and Reimbursement of Expenses Incurred from June 1,

9   2021 Through and Including September 30, 2021 for Otterbourg

10  P.C., Other Professional, period: 6/1/2021 to 9/30/2021,

11  fee:$601,312.00, expenses: $47.49. filed by Otterbourg P.C.

12  (ECF #4127)

13

14  HEARING re Application for Interim Professional Compensation

15  / Sixth Interim Application for Allowance of Compensation

16  for Services Rendered and Reimbursement of Expenses Incurred

17  by Gilbert LLP as Co-Counsel to the Ad Hoc Committee of

18  Governmental and Other Contingent Litigation Claimants for

19  the Period June 1, 2021 through September 30, 2021 for

20  Gilbert LLP, Other Professional, period: 6/1/2021 to

21  9/30/2021, fee:$2,766,720.00, expenses: $56,440.83. filed by

22  Gilbert LLP. (ECF #4128)

23

24  HEARING re Application for Interim Professional Compensation

25  / Sixth Interim Application of Kramer Levin Naftalis &

Page 12

1    Frankel LLP, as Co-Counsel to the Ad Hoc Committee of

2    Governmental and Other Contingent Litigation Claimants, for

3    Allowance of Compensation for Professional Services Rendered

4    and for Reimbursement of Actual and Necessary Expenses

5    Incurred for the Period from June 1, 2021 through September

6    30, 2021 for Kramer Levin Naftalis & Frankel LLP, Other

7    Professional, period: 6/1/2021 to 9/30/2021,

8    fee:$5,651,625.50, expenses: $61,624.84. filed by Kramer

9    Levin Naftalis & Frankel LLP. (ECF #4142)

10

11   HEARING re Application for Interim Professional Compensation

12   / Fifth Interim Fee Application of Houlihan Lokey Capital,

13   Inc., Investment Banker and Co-Financial Advisor to the Ad

14   Hoc Committee, for Compensation and

15   Reimbursement of Expenses for the Period from June 1, 2021

16   through September 30, 2021 for Houlihan Lokey

17   Capital, Inc., Other Professional, period: 6/1/2021 to

18   9/30/2021, fee:$800,000.00, expenses: $3,223.71. filed by

19   Houlihan Lokey Capital, Inc. (ECF #4132)

20

21   HEARING re Interim Application for Interim Professional

22   Compensation / Second Interim Application of Caplin &

23   Drysdale, Chartered, for Allowance of Compensation and

24   Reimbursement of Expenses With Respect to Services Rendered

25   as Counsel to the Multi-State Governmental Entities Group

1    for the Period Commencing June 1, 2021, through

2    September 30, 2021 for Multi-State Governmental Entities

3    Group, Other Professional, period: 6/1/2021 to

4    9/30/2021, fee:$1,709,854.00, expenses: $26,355.44. filed by

5    Multi-State Governmental Entities Group. (Maclay,

6    Kevin) (ECF #4145)

7

8    HEARING re Fifth Application for Interim Professional

9    Compensation -- Fifth Interim Application of Bielli &

10   Klauder, LLC for Compensation for Services Rendered and

11   Reimbursement of Expenses Incurred as Counsel to the Fee

12   Examiner, David M. Klauder, Esquire, for the Period from

13   June 1, 2021 through September 30, 2021 -- for Bielli

14   & Klauder, LLC, Other Professional, period: 6/1/2021 to

15   9/30/2021, fee:$220,000.00, expenses: $. filed by Bielli

16   & Klauder, LLC. (Bielli, Thomas) (ECF #4118)

17

18   HEARING re Application for Interim Professional Compensation

19   as an Ordinary Course Professional for Compensation for

20   Services Rendered in Excess of the Tier 1 OCP Cap for Reed

21   Smith LLP, Other Professional, period: 5/1/2021 to

22   8/31/2021, fee:$485,527.25, expenses: $0.00. filed by Reed

23   Smith LLP. (Attachments: # 1 Exhibit A # 2 Exhibit

24   B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) (Breene, Paul)

25   (ECF #4090)

1    HEARING re Notice of Hearing on the Application of Reed

2    Smith LLP as an Ordinary Course Professional for

3    Compensation for Services Rendered in Excess of the Tier 1

4    OCP CAP for the Period from May 1, 2021 through August 31,

5    2021 (related document(s)4090) filed by Paul E. Breene on

6    behalf of Reed Smith LLP. (ECF #4091)

7

8    HEARING re Certificate of No Objection Pursuant to LR 9075-2

9    CERTIFICATE OF NO OBJECTION UNDER 28 U.S.C. § 1746 REGARDING

10   THE APPLICATION OF REED SMITH LLP AS AN ORDINARY COURSE

11   PROFESSIONAL FOR COMPENSATION FOR SERVICES RENDERED IN

12   EXCESS OF THE TIER 1 OCP CAP FOR THE PERIOD FROM MAY 1,2021

13   THROUGH AUGUST 31, 2021 (related document(s)4090) Filed

14   by Paul E. Breene on behalf of Purdue Pharma L.P.

15   (ECF #4218)

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   DAVIS POLK & WARDWELL LLP

 4        Attorneys for the Debtor

 5        450 Lexington Avenue

 6        New York, NY 10017

 7

 8   BY:  MARSHALL S. HUEBNER (TELEPHONICALLY)

 9        JACQUELYN SWANNER KNUDSON (TELEPHONICALLY)

10

11   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

12        Attorneys for Skadden Arps Slate Meagher Flom LLP

13        4 Times Square

14        New York, NY 10036

15

16   BY:  ANTHONY W. CLARK (TELEPHONICALLY)

17

18   ALSO PRESENT TELEPHONICALLY:

19

20   JUSTIN R. ALBERTO

21   ROXANA ALEALI

22   ANDREW VINCENT ALFANO

23   MICHAEL ATKINSON

24   JASMINE BALL

25   BROOKS BARKER
```

1   KATHRYN BENEDICT

2   THOMAS D. BIELLI

3   SHEILA BIRNBAUM

4   DAVID E. BLABEY

5   SARA BRAUNER

6   GABRIEL BRUNSWICK

7   GERARD CICERO

8   ANTHONY W. CLARK

9   HAYDEN COLEMAN

10   DYLAN CONSLA

11   MARIO D'ANGELO

12   SCOTT DAVISON

13   KEVIN DAVIS

14   JESSE DELACONTE

15   CLINT DOCKEN

16   MARIA ECKE

17   KENNETH H. ECKSTEIN

18   BRIAN EDMUNDS

19   BERNARD ARDAVAN ESKANDARI

20   MATTHEW FARRELL

21   JENNIFER S. FEENEY

22   LAWRENCE FOGELMAN

23   CAROLINE GANGE

24   MAGALI GIDDENS

25   JEFFREY R. GLEIT

1    SARAH HARBUCK

2    MITCHELL HURLEY

3    ELLEN ISAACS

4    HAROLD D. ISRAEL

5    EVAN M. JONES

6    GREGORY JOSEPH

7    BENJAMIN S. KAMINETZKY

8    MARC KESSELMAN

9    DAVID KLAUDER

10   DARREN S. KLEIN

11   ANNA KORDAS

12   ANN KRAMER

13   IAN S. LANDSBERG

14   ANN LANGLEY

15   ALEXANDER LEES

16   MARA LEVENTHAL

17   JEFFREY LIESEMER

18   KEVIN MACLAY

19   GERARD MCCARTHY

20   JAMES I. MCCLAMMY

21   SHANNON M. MCNULTY

22   NATHANIEL MILLER

23   MAURA KATHLEEN MONAGHAN

24   AISLING MURRAY

25   ENRIQUE NIEVES

Page 18

1    MICHAEL PATRICK O'NEIL

2    SUSAN OUSTERMAN

3    STEVEN POHL

4    ARIK PREIS

5    KAMI ELIZABETH QUINN

6    LINDA RIFFKIN

7    RACHAEL RINGER

8    CHRISTOPHER ROBERTSON

9    JEFFREY J. ROSEN

10   HEATHER SAYDAH

11   ELIZABETH SCHLECKER

12   PAUL KENAN SCHWARTZBERG

13   LUCAS H. SELF

14   J. CHRISTOPHER SHORE

15   MARC F. SKAPOF

16   LAURA SMITH

17   KATE SOMERS

18   ROBIN SPIGEL

19   ETHAN STERN

20   ERIC STODOLA

21   MARC JOSEPH TOBAK

22   ESTHER TOWNES

23   ALICE TSIER

24   ALLEN J. UNDERWOOD

25   GERARD UZZI

1    SHMUEL VASSER

2    MICHAEL J. VENDITTO

3    ELI J. VONNEGUT

4    JORDAN A. WEBER

5    JAMES P. WEHNER

6    ALLISON H. WEISS

7    THEODORE WELLS

8    IRVE GOLDMAN

9    RICHARD ARCHER

10   TZERINA DIZON

11   LOWELL W. FINSON

12   MICHAEL D. GOFORTH

13   UDAY GORREPATI

14   BRIAN HANSEN

15   M. NATASHA LABOVITZ

16   KAREN LEUNG

17   SIDNEY P. LEVINSON

18   MICHELE MEISES

19   MARCIA R. MEOLI

20   NICHOLAS PREY

21   JACOB W. STAHL

22   VINCE SULLIVAN

23   WENDY WEINBERG

24   KATIE M. WHITE

25   MARY JO WHITE

1   HAROLD WILLIFORD

2   CARTER YOUNG

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE COURT:  Okay.  Good morning.  This is Judge

3    Drain.  We're here in In Re Purdue Pharma LP et al. on a

4    regular monthly omnibus calendar.

5           I have the agenda for today's hearing submitted

6    and filed by counsel for the Debtors and I'm prepared to go

7    down that agenda in order.

8           MR. HUEBNER:  Thank you very much, Your Honor.

9    Can I be heard clearly?

10          THE COURT:  Yes.

11          MR. HUEBNER:  Okay.  For the record, Your Honor,

12   Marshall Huebner on behalf of the Debtors.

13          There are three contested matters that we put on.

14   The first will be handled in just a moment by my colleague

15   Jacquelyn Knudson.  There are obviously uncontested matters

16   and I'll be reporting when we get to that, but resolutions

17   have been reached with the fee examiner on every single

18   application, which hopefully will be very good news to the

19   Court.  One other just precatory note, as the Court may or

20   may not be aware, in a ruling that Judge McMahon handed down

21   on a subsidiary issue raised on appeal last week, she did

22   indicate that her decision would be forthcoming this week.

23   So given that it is Thursday, we, of course, have no idea

24   what the content of that decision will be and the timing

25   could change, there is at least a nontrivial possibility or

1    more that decision will be handed down either today or

2    tomorrow.  And obviously, we will have to figure out where

3    we go from there based on that ruling.

4            We don't really have anything else in the way of

5    sort of an omnibus or status report.  So unless the Court

6    has questions for me, I will turn the virtual podium over to

7    Ms. Knudson.

8            THE COURT:  Okay, very well.  Thank you.

9            MS. KNUDSON:  Good morning, Your Honor.  For the

10   record, Jacquelyn Knudson of Davis Polk and Wardell on

11   behalf of the Debtors.  Can I be heard clearly?

12           THE COURT:  Yes.

13           MS. KNUDSON:  Thank you, Your Honor.  So the first

14   item on the agenda is Ms. Isaacs motion to object -- motion

15   to object to payments for all parties and other relief,

16   which is at Docket No. 3963.  I will turn the podium over to

17   Ms. Isaacs.  I believe she is on, if she would like to be

18   heard first as the movant.

19           THE COURT:  Okay.  I have reviewed this motion and

20   the Debtors objection to it.  I actually don't need oral

21   argument on the motion.  The motion seeks relief that has

22   already been sought at least once, and in some cases twice,

23   from this Court.  Moreover, most, if not all, of the relief

24   sought goes to issues that are presently on appeal,

25   including an appeal by the movant here, Ms. Isaacs.  To the

Page 23

1    extent that the motion seeks relief from prior -- those

2    prior orders of the Court, the first of which was entered on

3    September 15, 2021, and the second of which was entered on

4    November 22, 2021, the motion requests relief under either

5    Bankruptcy Rule 9023, incorporating Federal Rule of Civil

6    Procedure 59, or Bankruptcy Rule 9024, incorporating Federal

7    Rule of Civil Procedure 60(b).

8            The Court, by Local Rule 9023-1 and 9023 -- I'm

9    sorry, 9023-1, would only hear oral argument if the Court

10   specifically orders that the matter be reargued orally.  See

11   also In Re Terrestar -- T-E-R-R-E-S-T-A-R -- Corporation,

12   2016 WL 197621, Bankruptcy SDNY January 15, 2016.  Those

13   prior orders as I noted quite clearly, especially the

14   November, 22, 2021 order, dealt with requests for

15   essentially the same relief sought in this motion, which was

16   filed October 13, 2021 which Ms. Isaacs objects to any and

17   all payments or compensation to anyone in these proceedings

18   until the claimants and all victims across the nation

19   receive proper due process, reasonable and just compensation

20   for the wrongful deaths and effective financial compensation

21   to provide adequate mental and physical health care services

22   life.  That's the caption of the motion.

23           The motion seeks seven forms of relief which were

24   also sought in the motion filed October 1, 2021, dated

25   September 30, 2021, that I dealt with in the November 22,

Page 24

1    2021 order denying that motion.  And much of the same

2    relief, as far as an injunction of all payments and all

3    activity in the case was sought, in addition in Ms. Isaacs

4    motion for an immediate injunction and hearing for due

5    process, production, and evidentiary documents and other

6    relief dated August 16, 2021, and filed August 17, 2021,

7    which I denied in an order dated September 15, 2021.  I've

8    already given the reasons for those denials in prior bench

9    rulings and the motion here does not satisfy the

10   requirements of either Rule 59 or Rule 60 for relief from

11   those orders to the extent that I'm not divested of

12   jurisdiction by the pending appeal of the confirmation

13   order.

14            The burden of proof on a movant for relief under

15   Rules 59 or 60 is exceptional in that such relief is viewed

16   as extraordinary relief and not a substitute for an appeal.

17   See, for example, US v. International Brotherhood of

18   Teamsters, 247 F.3d. 370, 391 (2d Cir. 2001) and Nemaizer -

19   N-E-M-A-I-Z-E-R - v. Baker, 793 F.2d 58, 61, (2d Cir. 1986).

20            The Rule 59 motion to the extent -- I'm treating

21   as a Rule 59 motion, and again, Ms. Isaacs is pro se, so it

22   doesn't actually specify in the motion the basis, the legal

23   basis for the relief under Rule 59, but I couched it

24   potentially as one -- did not point to controlling decisions

25   or data that the Court overlooked in its prior rulings.  See

Page 25

1    In Re Kirwan Offices S.A.R.L., 792 Fed Appx 99, 104 (2d Cir.

2    2019) citing Tonga -- I'm sorry -- Analytical Survey, Inc.

3    v. Tonga Partners, LP, 684 F.3d 36, 52 (2d Cir. 2012),

4    including not only for that proposition but also for the

5    proposition that a motion for reconsideration is not a

6    vehicle for presenting the Court -- or presenting the case

7    under new theories or otherwise taking a second bite at the

8    apple.

9           Similarly, the motion does not satisfy any of the

10   six enumerated grounds for relief under Rule 60 of the

11   Federal Rules of Civil Procedure, again not citing any newly

12   discovered evidence and really seeking to reargue points

13   that the Court already considered.  See generally In Re

14   Terrestar Corp, 2016 WL 19762 (Bankruptcy SDNY January 15,

15   2016).

16          Again, I'm ruling on the papers here because the

17   papers are clear on these points and I've already dealt with

18   these matters.  And as I noted, under the local rules, a

19   hearing should be scheduled for oral argument on this only

20   if the Court so directs and I didn't direct this.  It's

21   possible the clerk's office put it on the agenda not

22   understanding the nature of these motions.  But in any

23   event, a hearing is not necessary.  Again, see In Re

24   Prudential Lines, Inc., 170 BR 222 (Bankruptcy SDNY 1994)

25   and Local Rule 9023-1.

1          Moreover, as I noted, as set forth in the

2    Prudential Lines case, it's well established that a pending

3    appeal divests the lower court of its control over matters

4    on the appeal, 170 BR at 243 and the case is cited therein

5    including Marrese v. American Academy of Orthopedic

6    Surgeons, 470 US 373 (1985).  This is also clear under

7    Bankruptcy Rule 8008 and 8007, which the latter rule

8    pertains to requests for stays pending appeal.

9          At this point, the Court already having ruled on

10   requests for stay pending appeal and the District Court also

11   having ruled, if there is to be any further stay, and one

12   can read this motion as requesting a stay as set forth in

13   the initial paragraphs of the motion, that should be

14   determined by the District Court on proper motion to the

15   District Court, presumably if the District Court does not

16   reverse or remand the appeal presently before it.

17          So I'll ask the Debtors to submit an order denying

18   the motion of those two alternative grounds.

19          MS. ISAACS:  Your Honor, may I ask a question

20   please?

21          THE COURT:  Sure.

22          MS. ISAACS:  If I haven't met the heavy burden of

23   proof to save humanity, what else is there?

24          THE COURT:  I can't begin to answer that question,

25   Ms. Issacs, other than pointing to the law that I've already

1   cited to.

2           MS. ISAACS:  Then I have a second question.

3           THE COURT:  You have that -- Ms. Isaacs, you have

4   that issue on appeal and I can't, under the procedural and

5   jurisdictional limitations, given that you have issue on

6   appeal, decide it.  It's on appeal.  I've also ruled on the

7   aspects of your motion that arguably don't cover the plan

8   that's on appeal.  So --

9           MS. ISAACS:  So then I have a second question,

10  Your Honor.  This is outside the scope of anything we've

11  ever seen in all of humanity and there are no laws that can

12  govern what's going on.  So where does anybody turn from

13  there because no attorney or attorney general knows what to

14  do in this matter.

15          THE COURT:  Well, I think they would differ with

16  you, ma'am and we'll leave it at that.  And if you don't

17  believe the laws apply, then I don't know why you're filing

18  in court.

19          MS. ISAACS:  Because justice needs to be served,

20  Your Honor.

21          THE COURT:  All right, very well.  I'm going to

22  move onto the next two matters on the agenda, both of which

23  seek leaves to file proofs of claim after the bar date that

24  was established in this case.

25          The first is a motion by Robert Caulk, C-A-U-L-K.

Page 28

1    And the second is a motion by Lamere Wilmer-Williamson.  The

2    Debtors objected to both of those motions in a joint

3    objection, which I have reviewed, as well as, of course, the

4    two motions.

5           I don't know, is either Mr. Caulk or Lamere

6    Wilmer-Williamson on the phone?  Okay.  Ms. Knudson, have

7    there been any further developments on these motions?

8           MS. KNUDSON:  No, Your Honor, there is not.  We

9    did, on December 2nd, send out letters to both of the

10   movants requesting additional information because as of now,

11   we do not think with the information provided that they have

12   met the excusable neglect standards set forth in Bankruptcy

13   Rule 9006 and the so-called Pioneer Factors.  We have not

14   received responses from the movants and they have not

15   provided additional information.

16          Because of that, we request the Court to deny the

17   motions without prejudice so that the movants can properly

18   submit evidence describing the reason for the delay and

19   demonstrating that timely filing of claim was outside of

20   their control.  As Your Honor is aware, that is the most

21   important factor, most important Pioneer factor, that being

22   the reason for the delay.  And in the short motions provided

23   by both of the movants, neither of them have provided any

24   reason why they could not timely file a proof of claim.

25          The Debtors do acknowledge that both of the

1   movants are incarcerated, however, their papers do not state

2   they were incarcerated prior to the July 30, 2020 bar date.

3   Nor do they allege that their incarcerate prevented them

4   from timely filing a proof of claim.

5          The other thing that we would note, Your Honor, is

6   that the delay here has been substantial with the motion

7   filed over 15 months after the bar date and over six weeks

8   after this Court confirmed the Debtor's plan.

9          So with respect to the request to file late

10  claims, we would request the Court deny the motions without

11  prejudice.

12         Mr. Caulk's motion, as I'm sure you know, also

13  requested additional relief and that relief being that we

14  provide additional notice to incarcerated individuals that

15  can demonstrate opioid addiction.  We believe this request

16  should also be denied.  The motion provided -- the notice

17  provided in these cases has been extraordinary.  Moreover,

18  as the Debtors have shown, we have been willing to consider

19  and allow late claims based on individualized assertions and

20  the Debtors' Plan provides mechanisms to do the same.  So

21  with respect to that relief, we would request that be denied

22  as well.

23         THE COURT:  Okay.  I'm sorry.  You said that

24  letter was sent to each of the movants on December 2nd or

25  3rd?  I want to make sure I heard that correctly.

Page 30

1            MS. KNUDSON:  Yes, Your Honor, December 2nd.

2            THE COURT:  Okay.  And how did they get notice of

3    today's hearing?

4            MS. KNUDSON:  In that same letter, we let them

5    know their motions would be heard on December 16th at 10

6    a.m.

7            THE COURT:  Okay.  All right.  Okay, I, as I've

8    said, have two motions before me for leave to file a claim

9    late after the July 30, 2020, bar date set in this case for

10   filing claims, each of which has been objected to by the

11   Debtors, although the Debtors' objection states that the

12   Debtors are amenable to receiving additional information

13   regarding the circumstances behind the late filing of both

14   claims.

15           The first motion on the calendar is a motion by

16   Robert Caulk, C-A-U-L-K, and the second is a motion by

17   Lamere Wilmer-Williamson.  Both movants are pro se and both

18   motions, which are in the same handwriting, are dated

19   October 31, 2021, well over a year after the bar date was

20   set in these cases, again, that bar date being July 30,

21   2020.

22           I will also note that the Court entered an order

23   confirming the Chapter 11 Plan in these cases on September

24   17, 2021, approximately six weeks before both of these

25   motions were made.

1          Each motion states that the movant is incarcerated

2     and each motion states that the claimant believes that the

3     claimant has a claim based on the addictive nature of the

4     Debtors' product, which I'm assuming refers to Oxy-Contin

5     and the growing science establishing toxicity of that

6     product.

7          Mr. Caulk's motion also makes a general request to

8     extend notice, additional notice to people who are

9     incarcerated.  Importantly, neither motion states a specific

10    set of facts as to why the movant would not have been able

11    to file a timely request or a motion earlier than October

12    31, such as, for example, the unusual lockdowns that

13    occurred during the COVID epidemic at times that would

14    prevent people who are incarcerated from obtaining mailed

15    notices or being in common areas to see broadcasts or listen

16    to broadcasts, which is an important omission and as the

17    Debtors' objection points out, distinguishes these motions

18    from prior motions that the Court has granted largely in

19    number by those who were incarcerated, but which showed that

20    they had not, during the period when there was notice of the

21    bar date, been able to obtain such notice.

22          The burden of proof in a motion like these, which

23    are governed by Bankruptcy Rule 9006(b)(1) which provides

24    for an extension of the deadline to file a proof of claim if

25    the familiar to submit the claim timely was due to excusable

1    neglect and the Supreme Court's case, Pioneer Investment

2    Services Company v. Brunswick Associates Limited

3    Partnership, 507 US 380 (1993), which interpreted that rule

4    and the term "excusable neglect" and provided factors for

5    the Court to analyze on a case-by-base basis.  See also

6    Midland Cogeneration Venture, LP v. Enron Corp (In Re Enron

7    Corp) 419 F.3d 115, 121 (2d Cir. 2005) as to the burden of

8    proof.

9            Before turning to an analysis of those factors,

10   it's important to note that as recently stated by the Third

11   Circuit "dates matter in bankruptcy.  For Creditors, none is

12   more important than the bar date, a deadline set by the

13   bankruptcy court for them to file claims against or request

14   for payment from the debtor.  The bar date interacts with

15   the Chapter 11 Plan of reorganization., LS v. Westinghouse

16   Electric Company, 11 F.4th 221, 226 (3d Cir. 2021).

17           Thus the bar date serves the important purpose of

18   enabling the parties and interests to ascertain with

19   reasonable promptness the identity of those making claims

20   against the estate and the general amount of the claims, a

21   necessary step in achieving the goal of successful

22   reorganization, In Re Calpine Corp, 2007 US District Lexis

23   86514, Pages 14 through 15 (SDNY November 21, 2007).  See

24   also In Re Asia Global Crossing Limited, 324 BR 503, 508,

25   (Bankruptcy SDNY 2005).

Page 33

1          Allowing late final claims, especially after a

2     Debtors' Plan is confirmed, subjects the Debtor to prejudice

3     because -- to additional prejudice because it would have to

4     renegotiate any settlements reached in contemplation of the

5     known claims against the estate, In Re Drexel Burnham

6     Lambert Group, Inc., 148 BR 1002, 1008-10 (Bankruptcy SDNY

7     1993).

8          The Supreme Court in the Pioneer case that I

9     previously cited developed a two-step test for determining

10    whether a claim filed after the bar date was due to

11    excusable neglect and, therefore, should be recognized by

12    the Court.  First the movant must show that its failure to

13    file a timely claim constituted neglect as opposed to

14    willfulness or a knowing omission.  Neglect generally being

15    attributed to a movant's inadvertent mistake or

16    carelessness, 507 US, 387-88.  After establishing neglect,

17    the Court needs to decide whether that neglect was

18    excusable.  That analysis is to be undertaken on a case-by-

19    case basis that is based on the particular facts of the

20    case, although the Court is to be guided by and make the

21    determination balancing the following factors: 1) the danger

22    of prejudice to the Debtor, 2) the length of the delay and

23    whether or not it would impact the case, 3) the reason for

24    the delay, in particular, whether the delay was within the

25    control of the movant, and 4) whether the movant acted in

1    good faith.   ID at 395.

2              However, inadvertence, ignorance of the rules or

3    mistakes construing the rules do not usually constitute

4    excusable neglect, In Re Enron Corp 419 F.3d 126.

5              In that decision, the court stated -- that is the

6    Second Circuit stated -- we have taken a hard line in

7    applying the Pioneer test.   In a typical case, three of the

8    Pioneer factors: the length of the delay, the danger of

9    prejudice, and the movant's good faith, usually weigh in

10   favor of the party seeking the extension.   We noted, though,

11   that we and other circuits have focused on the third factor,

12   the reason for the delay, including whether it was within

13   the reasonable control of the movant.   And we caution that

14   the equities will rarely, if ever, favor a party who fails

15   to follow the clear dictates of the court rule and that

16   where the rule is entirely clear, we continue to expect that

17   a party claiming excusable neglect will, in the ordinary

18   course, lose under the Pioneer test, ID at 366-67, internal

19   quotations and citations omitted.   See also In Re DPH

20   Holdings Corp, 434 BR 77, 82 (SDNY 2010) and In Re Musicland

21   Holding Corp, 2006 Bankruptcy Lexis 3315 at Pages 10-11,

22   (Bankruptcy SDNY 2006).

23              Here, as I've noted, the reason for the delay is

24   not detailed here and the inference that I'm being asked to

25   make by these pleadings that the mere incarceration of these

Page 35

1   two movants is enough of a reason for their delay is too

2   much of a stretch given the extensive notice that was

3   provided and the fact that many incarcerated people did, in

4   fact, file proofs of claim in this case.  More factual

5   background would need to be submitted to establish that the

6   reason for the delay was not within the reasonable control

7   of either of the movants.

8          Here, also, the delay is quite lengthy.  The

9   courts have generally recognized that delay between the bar

10  date and the filing of the claim or the motion in excess of

11  a year is significant.  See, for example, In Re Enron

12  Creditors Recovery Corp, 370 BR 90, 103 (Bankruptcy SDNY

13  2007), which was a 15-month delay, similar to this one and

14  In Re Cable & Wireless USA, Inc., 338 BR 609, 616,

15  (Bankruptcy D. Delaware 2006), where a one-year delay was

16  significant.

17         Moreover, if one permitted simply the fact of

18  incarceration to justify the late filing of a claim, I

19  believe that would, in fact, open the door to too great a

20  number of other claims being filed late, a factor that

21  courts have often cited as establishing prejudice against

22  the debtor and the creditors who have relied on the bar date

23  to flag the claims against the estate, see, again, In Re DPH

24  Holdings, 434, BR at 82 and In Re Lehman Brothers Holding

25  Inc., 433 BR 113, 120-21(Bankruptcy SDNY 2014).

1            Finally, as I noted, these motions were filed six

2      weeks after the order confirming the Debtors' Plan was

3      entered.  And that fact also is important here as I

4      previously noted, allowing claims after the plan was filed

5      would be additional prejudice given that the plan was

6      negotiated and confirmed in large part on an assumption

7      regarding the allowable claims against the Debtor's estate

8      in additional to In Re Drexel Burnham Lambert Group Inc,

9      which I previously cited, 148 BR, 1008-10, see In Re Enron

10     Corp, 419 F.3d at 128, and DPH Holdings 434 BR at 82.

11            So, for those reasons, I'll deny both motions'

12     request to file the claim late.  I'm not going to

13     specifically say it's denied without prejudice, however, the

14     movants can seek relief from this order base on new facts

15     if, for some reason, such relief is warranted under Rule 59

16     or Rule 60.

17            That leaves me to the portion of the motion that

18     seeks additional notice for incarcerated people.  The Court,

19     as I noted, entered the bar date order in the late spring of

20     2020.  It provided for extensive, in fact, unprecedented

21     notice, including procedures specifically geared to reach

22     incarcerated people.  It has obviously been more than a year

23     since that ordered was entered, so I should consider this

24     request in the motion as a request for relieve under Federal

25     Rule of Civil Procedure 60(b), but it doesn't satisfy the

1    test for such relief, which is extraordinary relief, that

2    the motion fails to set forth facts in its support in

3    establishing any of the factors laid out in 60(b), i.e.

4    mistake and inadvertent surprise, or excusable neglect,

5    newly discovered evidence that with reasonable diligence

6    could not have been discovered in time to move for a new

7    trial, fraud, misrepresentation or misconduct by an opposing

8    party in respect of obtaining the order, that the judgment

9    itself is void, that the judgment has been satisfied,

10   released, or discharged.  It is based on earlier judgment

11   that has bene reversed or vacated or applying it

12   prospectively is no longer equitable, or seeks any other

13   reason that justifies relief.  Again, none of those factors

14   is laid out or supported here to sustain the high burden of

15   a Rule 60 motion.  See generally In Re Terrestar Corp, 2016

16   WL 197621 at Page 3 (Bankruptcy SDNY January 15, 2016) and

17   the cases cited therein.

18            So I will ask Ms. Knudson to email an order --

19   separate orders, on both of these motions denying the relief

20   requested.

21            MS. KNUDSON:  Thank you, Your Honor, will do so.

22            THE COURT:  Okay.  Thank you.

23            MR. HUEBNER:  Your Honor, that brings us to the

24   uncontested portion of the agenda as I alluded to briefly at

25   the beginning.  I'm happy to report that the fee examiner

1   has reached resolutions on everything on this part of the

2   agenda.  There are two different subgroups.  On is, in

3   essence, the holdbacks for the quarterly fee applications

4   that has been in the quarterly period through must of 2021.

5   The second is an application for Reed Smith, which began the

6   case as an ordinary course professional, but because, as the

7   Court knows, insurance matters are very material and a very

8   serious asset of the estate, they exceeded the ordinary

9   course caps and therefore, pursuant to the procedures

10   approved by the Court over two years ago, we needed to move

11   separately for the payments in excess of the cap.  There as

12   well, the fee examiner essentially treated that application

13   as one that required review, went through it, you know,

14   raised questions, as I think he did with all professionals,

15   and ultimately reached an accommodation as we had done on

16   each of the prior quarterly holdback hearings.

17           Davis Polk is pretty much done and I think the

18   Court can have in an hour or two or three with a single

19   omnibus order that clearly reflects the reductions agreed to

20   and the net amounts to be paid to all of the UCC

21   professionals, MSGE professionals, Ad Hoc Committee

22   professionals and Debtor professionals as the Court, of

23   course, knows, the Debtors agreed in various settlements and

24   motions over the course of the cases to pay the fees of a

25   large subset of our Creditor world and so that's what many

Page 39

1     of these applications are for, with the balance being the

2     Debtors.

3              So, unless the Court has any questions, we would

4     proport to send that in.  The one request I guess I would

5     make on behalf of everybody is that it is obviously

6     important for accounting and recognition and other purposes,

7     you know, for people to be tried to be paid well before

8     year-end for things that were well into 2021.  So, the Court

9     would be able to potentially enter the order if that meets

10    the Court's please and the Court has no further question,

11    that would obviously facilitate that result, especially in

12    the upcoming holiday season, you know, vacations and the

13    like on the client's side.

14             THE COURT:  Okay.  I do have a couple of

15    questions.  First, when you say that each of these

16    applications reflects the -- or the relief being sought in

17    respect to each of these applications reflects agreements

18    between the applicant the fee examiner, or the review of the

19    fee examiner, are those agreements already in the

20    applications or are there further adjustments from what was

21    in the applications?

22             MR. HUEBNER:  Apologizes, Your Honor, if I was not

23    clear.  Those are not yet visible to the Court.  Those are

24    agreements that were reached in the last several days as the

25    fee examiner has been working through them furiously to, you

1    know, finish out his conversations with each professional.

2    So, as I think as has been the case each quarter, we'll have

3    an omnibus order that shows the amount of reduction for each

4    firm off of the applications that are presently in front of

5    the Court.  So, while many firms, certainly Davis Polk

6    included, took material voluntary sort of self-done

7    reductions prior to even filing the applications, there are

8    further reductions agreed to with the fee examiner that

9    would be reflected in the omnibus grid order that we would

10   submit to the Court later today.

11              THE COURT:  Okay.  All right.  I have some

12   specific questions too and I may need to hear from the fee

13   examiner or his counsel on this as to whether those issues

14   were taken into account in the negotiations or that led up

15   to the agreed reductions.

16              So I'll go through those first and then I have a

17   couple of other observations to make.

18              First, the Jones Day applications, which is

19   primarily IP and patent litigation, there's a fairly large

20   expense, over $87,000, for "consultant fees."  I don't

21   really have any background or support for what that is and I

22   don't know whether the fee examiner looked at that and was

23   satisfied that that was an appropriate expense.

24              MR. KLAUDER:  Good morning, Your Honor.  David

25   Klauder, the fee examiner.  Can you hear me okay?

Page 41

```
 1                THE COURT:  Yes.

 2                MR. KLAUDER:  Good morning.  A pleasure to be in

 3      front of you.  That was a specific expense that we asked for

 4      and requested backup for and Jones Day did provide us the

 5      invoice and the explanations with respect to that.  My

 6      understanding is that's a consultant related to some IP work

 7      they were doing.  So we did get the specific backup for

 8      that.

 9                THE COURT:  Okay.  And you were satisfied that was

10      a legitimate expense?

11                MR. KLAUDER:  Yes.

12                THE COURT:  Okay.  I had a somewhat similar

13      question about an expense on the Skadden Arps application,

14      $120,000 expense for "secondment" of Skadden attorney.  Did

15      you look at that one?

16                MR. KLAUDER:  We did look at that one.  That

17      actually has come up in previous applications and I can

18      leave it to Skadden to sort of explain what that is if Your

19      Honor is looking for a little bit more explanation.  We did

20      ask for backup and we did get the backup and we were

21      satisfied with the backup and the explanation for that

22      expense.

23                THE COURT:  Well I think I do need to understand.

24      I have no idea what means actually, so I should either hear

25      from you or from someone on Skadden on that one.
```

1          MR. CLARK:  Your Honor, it's Tony Clark from

2     Skadden Arps.  My understanding is that at the request of

3     the client, the Debtors, Purdue, one of our associates has

4     been on secondment assignment for longer than this interim

5     application period.  I can't tell you exactly what it was,

6     but as much as six or eight months.  And the agreement was

7     that we would keep him on our payroll at a much higher rate

8     and be reimbursed $30,000 a month which does not cover all

9     of our costs for the services of that particular associate

10    who is still there.

11         THE COURT:  Okay.  So he's essentially working

12    full time as an inhouse legal person although still on

13    Skadden's payroll?

14         MR. CLARK:  That's my understanding, yes, Your

15    Honor.

16         THE COURT:  Okay.  All right.  Thank you.  There's

17    a similar -- you can get the theme of these questions.

18    There's a similar expense item -- I'm not sure whether this

19    is -- well, on the Akin Gump application, there is a 107,000

20    plus expense billed as "Professional fees, legal."  I wasn't

21    sure what that was and wanted to know whether the examiner

22    looked at that one.

23         MR. KLAUDER:  Your Honor, that is something we did

24    look at and got the backup for.  I'm trying to -- perhaps

25    Akin Gump can pop in to give you a little bit more

1   explanation.  I'll check my records to give you some, but I

2   know we specifically requested that and received that backup

3   and were satisfied with that.

4               THE COURT:  Okay.

5               MS. BRAUNER:  Good morning, Your Honor.  Sara

6   Brauner, Akin Gump, on behalf of the Committee.  That is

7   correct.  We did, in fact, provide the backup.  It relates

8   exclusively to Trust Point, which is a document and

9   discovery vendor and hosting vendor that we had worked with

10  over the course of the investigation, and it relates to not

11  only document storage, but also certain machine learning to

12  conduct initial levels of document review.

13              THE COURT:  Okay.  All right.  That's fine.  Thank

14  you.  And then last on these types of comments, for Gilbert,

15  there is an expense item for "Contracted Professional Fees"

16  of $45,000 and change.  Is that a similar document company

17  or is that something else?  I don't know if anyone is on for

18  Gilbert or if the fee examiner's counsel can shed some light

19  on that one.

20              MR. KLAUDER:  Your Honor, I'm sorry.  We did --

21  I'm just pulling up my report on that.  This was for a -- I

22  guess Gilbert, on behalf of the AHC, this was an expert

23  witness that the used at the confirmation hearing.

24              THE COURT:  Okay.

25              MR. KLAUDER:  And now that I'm looking, I did get

Page 44

1    the specific invoice for that particular person, the

2    billings that were incorporated in the application and as a

3    result of that explanation and the backup, I was satisfied.

4             THE COURT:  All right.  So it's the expert

5    witness's fee and it's consistent with the fee agreement

6    that was disclosed by the expert witness.

7             MR. KLAUDER:  Right, yes.

8             THE COURT:  All right, thanks.  Okay.  Those are

9    my specific questions.

10            Obviously, these fee applications involve a lot of

11   professional services for a lot of money.  At the same time,

12   this period in these cases was one that called for a

13   significant amount of sophisticated professional services

14   and those services were not limited to the issues in the

15   bankruptcy case, which were many, but also complex

16   representations involving the Debtors' underlying

17   businesses, which are heavily regulated and involve both

18   past and present regulatory issues as well as intellectual

19   property and patent-related services.

20            The standard for reviewing fee applications is

21   largely set forth in Section 330 of the Code and is then the

22   subject of a fair amount of case law as well, which focuses

23   largely on Congress's decision to provide for compensation

24   in bankruptcy cases based on the value of the professional

25   services in the market, so that if the retention has been

1    authorized by the Court with prior disclosure of the

2    professional's compensation, one generally presumes that the

3    staffing and other practical decisions made by those

4    professionals have been made in good faith in view of the

5    attorney's legal and ethical responsibilities.

6           However, just as the market has competitive

7    pricing considerations that force non-bankruptcy

8    professionals to review their bills for charges that should

9    be reduced, the state compensated professionals need to

10   exercise billing judgment and if they've not done so, the

11   Court should do so when reviewing their fee applications.

12          In doing that, and given the experience of

13   bankruptcy courts in reviewing many fee applications, which

14   is recognized by the Circuits, bankruptcy courts enjoy wide

15   discretion in determining reasonable fee awards.

16          Here, in addition to my own review, it's clear

17   there has been review by the Court-appointed fee examiner.

18   What I don't have is what the actual reductions are and that

19   leaves me in a bit of a bind.  I'm being asked to simply

20   accept the agreements reached with the fee examiner.  Those

21   agreements may be perfectly appropriate.  I have no reason

22   to think they aren't, but I have my own separate obligation

23   to review the fees.

24          On the other hand, however, these are all interim

25   applications by firms as a whole that because of their

1   expertise and quality, have the ability to pay money back if

2   for some reason I think on a final basis that should happen.

3   So weighing all of that, I will review the proposed order

4   and the proposed agreements in the context of interim

5   applications only and decide whether, even on an interim

6   basis, there should be further reductions or, instead, I

7   should enter the order.

8        As far as the case authority, in addition to

9   Section 330, I was quoting in large part from In Re Cenargo

10   International PLC, 294 BR 571 (Bankruptcy SDNY 2003) and the

11   cases cited therein.

12        So I think what I will say only here beyond what

13   I've already said is that I assume that the fee examiner if

14   focusing on these issues, but I want to make sure that that

15   is the case and fully reserve my ability, if it wasn't the

16   case, to focus on them at the time of final fee applications

17   for the whole case.  They primarily go, if not exclusively,

18   to issues of potential duplication.  And that flows in a

19   couple of ways.  First, with the Debtors professionals, it's

20   conceivable to me that a fair amount of the work done by

21   Dechert could overlap with work undertaken by Davis Polk.

22   And I hope and trust that the fee examiner has looked into

23   that issue and confirmed satisfactorily that there were

24   clear lines of authority and communication so that

25   duplication would be avoided.

1          Secondly, I somewhat more confident on this

2    because I think it's more subject to discreet task billing,

3    but the Debtors do have at least a couple of firms, Jones

4    Day and Arnold and Porter, working intellectual property

5    matters and I want to make sure that there isn't duplication

6    of effort there.

7          It is also conceivable to me that some of the

8    Skadden work related to "bankruptcy related litigation"

9    might be unnecessarily duplicative work by either the

10   Debtors' main counsel, Davis Polk, or Dechert.

11         Similar concerns arise with respect to the law

12   firms for the Ad Hoc Committee of governmental and other

13   contingent litigation claimants' counsel.  And again, my

14   focus here is avoiding unnecessary duplication.

15         And then separate from that, and yet an important

16   issue, is the need to focus on duplication within the firm.

17   For example, is it really necessary for Attorneys X, Y, and

18   Z in addition to Attorneys A, B, and C to attend the

19   confirmation hearing?  These are things I assume that Mr.

20   Herner is focused on with his professionals but I'm going to

21   make sure of that, which is why I'm raising that again.  And

22   obviously, it's not just limited to the confirmation, but

23   that's just an example.

24         Lastly, and again, as Mr. Huebner said, we're in a

25   bit of a holding pattern here awaiting the District Court's

Page 48

1    ruling on the appeals from the confirmation order, I want to

2    focus on the following.

3              A number of the financial advisors here depending

4    on how that ruling goes, should be considering, and their

5    clients should be considering with them, whether there

6    should be a reduction of their services going forward.

7    That's primarily important for people or firms that are

8    being compensated on a monthly basis, a monthly fee basis,

9    but generally speaking, at a certain stage in a Chapter 11

10   case, while the financial professionals are really important

11   at earlier stages, their work drops off.

12             So those are my observations.  I don't know if

13   anyone has anything further to say on them, but, again, my

14   inclination is in all likelihood, that I will grant these

15   applications as revised subject to my review of course of

16   the discounts that have been agreed to and importantly, the

17   reservation that all of the applications, as well as all the

18   prior applications, are subject to review at the time of

19   final fee applications.

20             MR. HUEBNER:  Your Honor, it's Marshall Huebner.

21   Thank you from this end.  Just two quick notes since it's

22   not really a today issue based on Your Honor's reflections.

23   One is by deciding to have the 41-witness trial that we had

24   with all of the primary witnesses going in with their direct

25   testimony by declaration, to be clear, Your Honor actually

Page 49

1   saved the estate tens of millions of dollars and shortened

2   the trial by probably weeks because if we had 41 witnesses

3   each giving direct testimony, that type of work to actually

4   try to keep costs down is something that we are all keeping

5   our eye on.

6          I'm guessing we will work harder in subsequent

7   applications to make the lack of duplication and the

8   client's oversight of that yet more to the Court.  For

9   example, having done this case largely full time for almost

10  four years, I'm not sure I've ever been on a single

11  conference call with Jones Day or Arnold and Porter to show

12  you how completely different the pipes are, but I know

13  that's not always visible to the Court.  The same is

14  actually true in a transposed way, now that I might be on

15  calls with them, with respect to very clear divisions of

16  responsibility between firms like Dechert who are litigation

17  counsel and Davis Polk.  So we will work harder to make

18  those lines more clear both to the fee examiner and to the

19  Court, but those are things that the client is very focused

20  on and actually works hard to ensure that frankly, we're not

21  ever having two people do the same thing because that's just

22  not acceptable.

23          So I just wanted to give the Court comfort that

24  these are things that the client is managing and many of us

25  have been thoughtful about and the like.

1          THE COURT:  Okay.  Thank you.  All right, and

2     look, Mr. Herner is a very serious person, as are his

3     professionals.  So I, like the US Trustee, take some real

4     comfort in that and in his review, and in addition to the

5     fact the U.S. Trustee has not raised objections to any of

6     these fee applications.  So I'm really flagging issues just

7     for the future and I'll leave it at that.

8          MR. HUEBNER:  Thank you, Your Honor.  I assume

9     that covers the Reed Smith application as well, though style

10    has a different procedure approach, also we'll have an

11    agreed reduction.

12         THE COURT:  Right.  I reviewed each of the

13    applications including that one and including some of the

14    small ones like for tax services and the like.  So my

15    remarks cover that.

16         MR. HUEBNER:  Understood, Your Honor.

17         THE COURT:  Okay.  So unless there's anything

18    else, I think that concludes the hearing today.

19         MR. HUEBNER:  It does, Your Honor.  Nothing

20    further from the Debtors.

21         THE COURT:  Thank you.

22         MR. KLAUDER:  Thank you, Your Honor.

23         (Whereupon these proceedings were concluded at

24    11:07:38 AM)

25

1                          I N D E X

2

3                          RULINGS

4                                          Page      Line

5    Motion: Object to payments denied      26        17

6    Motion: Leave to file late claim denied  36      11

7    Motion: Additional notice for

8    Incarcerated people denied              37        19

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 52

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 17, 2021