

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

11

12                  United States Bankruptcy Court

13                  300 Quarropas Street, Room 248

14                  White Plains, NY 10601

15

16                  January 12, 2022

17                  10:06 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

Page 2

1    HEARING re Amended Agenda for January 12, 2022 Hearing filed

2    by Eli J. Vonnegut on behalf of Purdue Pharma L.P.

3    (ECF #4280)

4

5    HEARING re Notice of Hearing Regarding Late Claim Motion

6    [Brittany N. Johnson] (related document(s)4156) (ECF #4165)

7    Motion to File Proof of Claim After Claims Bar Date filed by

8    Brittany N. Johnson (ECF #4156)

9

10   HEARING re Notice of Hearing Regarding Late Claim Motion

11   [Shannie Jenkins] (related document(s)4219) (ECF #4220)

12

13   HEARING re Motion to File Proof of Claim After Claims Bar

14   Date filed by Shannie Jenkins (ECF #4219)

15

16   HEARING re Notice of Hearing regarding Motion to Allow Filed

17   by Personal Injury Claimant (related document(s)4030) filed

18   by James I. McClammy on behalf of Purdue Pharma L.P.

19   (ECF #4045)

20

21   HEARING re Objection to Motion / Debtors' Objection to

22   Personal Injury Claimant's Motion to Allow (related

23   document(s)4030) filed by James I. McClammy on behalf of

24   Purdue Pharma L.P. (ECF #4270)

25   Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   DAVIS POLK WARDWELL LLP

4        Attorney for Debtors

5        450 Lexington Avenue

6        New York, NY 10017

7

8   BY:  JACQUELYN KNUDSON (TELEPHONICALLY)

9

10  JANET LEE OSTERLOH, Pro Se

11  SHANNIE JENKINS, Pro Se

12

13  ALSO PRESENT TELEPHONICALLY:

14

15  JILL S. ABRAMS

16  ROXANA ALEALI

17  MICHAEL ATKINSON

18  JASMINE BALL

19  BROOKS BARKER

20  KATHRYN BENEDICT

21  DAVID E. BLABEY

22  SARA BRAUNER

23  DYLAN CONSLA

24  MARIO D'ANGELO

25  KEVIN DAVIS

Page 4

1   JESSE DELACONTE

2   MARIA ECKE

3   KENNETH H. ECKSTEIN

4   BRIAN EDMUNDS

5   BERNARD ARDAVAN ESKANDARI

6   LAWRENCE FOGELMAN

7   CAROLINE GANGE

8   MAGALI GIDDENS

9   MARSHALL SCOTT HUEBNER

10   MITCHELL HURLEY

11   ELLEN ISAACS

12   HAROLD D. ISRAEL

13   SHANNETTE L. JENKINS

14   GREGORY JOSEPH

15   BENJAMIN S. KAMINETZKY

16   MARC KESSELMAN

17   DARREN S. KLEIN

18   ANN LANGLEY

19   ALEXANDER LEES

20   MARA LEVENTHAL

21   JEFFREY A. LIESEMER

22   KEVIN C. MACLAY

23   GERARD MCCARTHY

24   JAMES I. MCCLAMMY

25   SHANNON M. MCNULTY

1   NATHANIEL MILLER

2   MAURA KATHLEEN MONAGHAN

3   AISLING MURRAY

4   GEORGE O'CONNOR

5   MICHAEL PATRICK O'NEIL

6   ARIK PREIS

7   LINDA RIFFKIN

8   RACHAEL RINGER

9   CHRISTOPHER ROBERTSON

10  JEFFREY J. ROSEN

11  ELIZABETH SCHLECKER

12  PAUL KENAN SCHWARTZBERG

13  LUCAS H. SELF

14  MARC F. SKAPOF

15  LAURA SMITH

16  KATE SOMERS

17  ETHAN STERN

18  ERIC STRODOLA

19  JACQUELYN SWANNER

20  MARC JOSEPH TOBAK

21  ESTHER TOWNES

22  ALLEN JOSEPH UNDERWOOD

23  GERARD UZZI

24  ELI J. VONNEGUT

25  THEODORE WELLS

1   IRVE GOLDMAN

2   LOWELL W. FINSON

3   MATTHEW FITZSIMMONS

4   MICHAEL D. GOFORTH

5   UDAY GORREPATI

6   TAYLOR HARRISON

7   BRITTANY NICHOLE JOHNSON-STAVIG

8   NICHOLAS PREY

9   VINCE SULLIVAN

10  KATIE M. WHITE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2          THE COURT:  Okay, good morning.  This is Judge

3    Drain.  We are here in In re Purdue Pharma L.P., et al.  The

4    matters on the calendar today are being heard remotely,

5    primarily by Zoom unless someone doesn't have access to a

6    screen, in which case they are appearing by phone.

7          I have the amended agenda for today's hearings and

8    I will go down that agenda in order.  I will note that the

9    agenda was amended to reflect that yesterday I entered an

10   order on a matter that had been on the agenda, which was a

11   motion by Maria Ecke for immediate payment of her claims in

12   these cases and for disqualification.  So that is not being

13   heard today since I've already ruled on it.

14         So, again, I'll go down the calendar in order.

15   The first two matters on the calendar as I understand it are

16   uncontested.  I'll take them in order.

17         First, in re Johnson, Brittany Johnson.  All

18   right, I'm not sure Ms. Johnson is on.  But the Debtors have

19   not filed an objection to the motion, which is to allow her

20   claim to be filed late, that is after the bar date in these

21   cases.  I think I have counsel for the Debtors on.

22         Can you just explain to me the process by which

23   you reach that determination, i.e. not to object to the

24   motion?  This is one of probably now about 18 or 19 of these

25   types of motions.  Most of them have been unopposed because

Page 8

1  various valid reasons were given as to why the claim was

2  filed late.  The ones that have been opposed and that I

3  denied didn't set forth any such reasons.

4           MS. KNUDSON:  Yes, Your Honor.  Good morning.  For

5  the record, Jaqueline KNUDSON of Davis Polk & Wardwell.  Can

6  I be heard clearly?

7           THE COURT:  Yes.  Yeah.

8           MS. KNUDSON:  Thank you, Your Honor.  So just very

9  briefly.  After review and consultation with the Ad Hoc

10 Group of Individual Victims as well as the Creditors'

11 Committee and based on my review of the individualized

12 assertions in the motion, the Debtors believe that there is

13 at least a colorable basis for granting the requested

14 extension.

15          With respect to Ms. Johnson, she asserts that she

16 has been dealing with debilitating PTSD since the death of

17 her fiancée and that as a result, she shut down any

18 correspondence or anything related to Purdue or opioid

19 related, which in turn caused her delay.

20          Although acknowledging that the excusable neglect

21 standard is a fairly high bar, again, after consulting with

22 the Ad Hoc Group of Individual Victims and the Creditors'

23 Committee, we believe that it arguably rises to the level of

24 excusable neglect.  Accordingly, the Debtors would request

25 that the proposed order granting the late claim motion at

Page 9

1   Docket 4268, which is consistent with prior orders submitted

2   for late claim motions, be entered.

3           THE COURT:  Okay.

4           MS. KNUDSON:  I'm happy to answer any questions

5   you may have.

6           THE COURT:  No, that's fine.  I appreciate the

7   extra information.

8           So I will grant the motion, which is unopposed,

9   and I will not second-guess the creditors' and the Debtor's

10  analysis of it.  I've read the motion and I believe in light

11  of the record before me, including the lack of objections,

12  the Claimant has satisfied the test under Rule 9006 and the

13  Pioneer case.  So you can email that order to chambers.

14          MS. KNUDSON:  Thank you, Your Honor.  We will do

15  that.

16          THE COURT:  Okay.  The next matter on the calendar

17  is a motion by Shannie -- I hope I'm pronouncing that right

18  -- maybe it's Shannie -- Jenkins for leave to --

19          MS. JENKINS:  That is correct.

20          THE COURT:  -- for leave to file a late claim.

21  This is also unopposed.  And I have reviewed the motion.

22  Let me -- and I see you there, Ms. Jenkins.  Good morning.

23          MS. JENKINS:  Good morning.

24          THE COURT:  I see -- I have reviewed the motion,

25  and I appreciate you've been dealing with your grandson, and

Page 10

1    the circumstances are obviously quite serious.

2            Let me just ask you, Ms. KNUDSON, did you go

3    through the same process of discussing this motion with the

4    Ad Hoc Group of Personal Injury Claimants and the Committee?

5            MS. KNUDSON:  Yes, Your Honor.  We consulted with

6    both the Ad Hoc Group of Individual Victims as well as the

7    Creditors' Committee, and they agreed that the motion should

8    be granted.

9            THE COURT:  Okay, all right.  Given what you just

10   told me, given that the motion is unopposed, and given my

11   review of the motion, I will grant it under the

12   circumstances.  I think Ms. Jenkins has satisfied Rule 9006

13   and Pioneer's excusable neglect standard.

14           So, Ms. Knudson, you can email the order granting

15   the motion to chambers.

16           MS. KNUDSON:  Yes, Your Honor, thank you.

17           THE COURT:  Okay, thank you.

18           MS. JENKINS:  And I thank you, Your Honor.

19           THE COURT:  Okay, very well.  All right.

20           And then the last matter on the calendar is a

21   motion that was actually filed anonymously on the docket for

22   allowance of a timely-filed personal injury claim.  And it

23   has been objected to by the Debtors.  I don't know whether

24   the Claimant is prepared to identify himself or herself on

25   the record and argue in support of the motion.  Let me ask

1       that question first.

2                MS. OSTERLOH:  Hi, I am here, Your Honor.

3                THE COURT:  Okay.  And I see you there, ma'am.  So

4       it's Janet Osterloh, O-s-t-e-r-l-o-h?

5                MS. OSTERLOH:  Correct.

6                THE COURT:  Okay, very well.  Thank you.  And this

7       is -- Ms. Osterloh, I appreciate you representing yourself

8       here, that you are pro se.  And I've taken that into account

9       in considering this motion.

10               It's somewhat of an unusual motion in that it asks

11      for allowance of the claim, but also recognizes I believe

12      that the Claimant, Ms. Osterloh, believes that under

13      applicable state law, which would govern the claim, the

14      claim is time-barred; that is that it arose at a time where

15      the applicable statute of limitations would have run before

16      the assertion of the claim.  So even though the statute of

17      limitations is normally a defense to a claim, this motion

18      seeks to put that defense front and center and challenge it.

19      And I believe it challenges it on two grounds.  One is that

20      it violates --

21               MS. OSTERLOH:  My constitutional rights.

22               THE COURT:  The due process clause under the

23      Fourteenth Amendment of the U.S. Constitution.  And

24      secondly, violates the Wisconsin State Constitution under

25      Article 1, Section 9 of the Wisconsin Constitution.

Page 12

1          Secondly, it's asserted that Ms. Osterloh seeks,

2     "to rule in my favor for equitable tolling" and to waive

3     Section 2255, statute of limitations, quote, due to the

4     extraordinary circumstances" of the State of Wisconsin's

5     governmental interference under the statute of limitations

6     that's cited, hence prohibiting the Claimant from filing a

7     lawsuit against the entities responsible.

8          So I hope I have summarized that correctly, Ms.

9     Osterloh.  Is that right?  Are those the two grounds that

10    you are seeking the ruling here?

11         MS. OSTERLOH:  Yes.  One, that it violates my

12    constitutional rights, not only at the federal scale, but

13    also the State of Wisconsin.

14         I did file my claim in a timely manner with

15    evidence, documents, everything else.  And although this

16    statute affects Wisconsin residents, I don't believe that it

17    should affect what's going on in New York, basically.

18         What else can I say?  I wrote this letter to you,

19    Judge Drain, to explain to you why I hadn't taken action

20    sooner than when claims were requested to be filed.  Because

21    of the statute, I did check into lawsuits, things like that

22    with local attorneys here, and I have been blocked ever

23    since the beginning, ever since my dad passed away in 2011.

24    So that's why I wrote the letter to you.  And which it moved

25    me so much that I decided to make it a motion.  I am very

Page 13

1  passionate about what happened to my father.  That's why I

2  am here.  I am the executor of his estate.  And he was never

3  able to fight for himself because of his addition to

4  opioids.  Luckily, I am not addicted to opioids and never

5  was.  So I am here to give him a voice now that he can no

6  longer speak for himself.

7          THE COURT:  Right.  Okay.  Thank you.  And let me

8  just make sure the record is clear on this.  When you say

9  you filed the claim timely, you did file it in the

10 bankruptcy case before the bar date.

11         MS. OSTERLOH:  Yes, I did.

12         THE COURT:  But the issue is whether the claim

13 itself can be allowed under applicable law, which would be

14 the law of Wisconsin.  And that's where the statute of

15 limitations comes in.

16         In other words, there really were two deadlines

17 here.  There was the deadline to assert in a way that would

18 satisfy the Wisconsin statute of limitations, the claim, and

19 then there's the deadline that the bankruptcy law imposes,

20 which was the bar date.  And we are focusing on that first

21 point.

22         MS. OSTERLOH:  Correct.

23         THE COURT:  I have read the Debtor's objection,

24 and I'll note a couple of -- really three sort of

25 gatekeeping issues that I have with this, Ms. Osterloh.

Page 14

1           The first is that your motion asks that I find a

2    statute of the Wisconsin Legislature unconstitutional,

3    either under the Wisconsin Constitution or the U.S.

4    Constitution.  I don't think you served the Attorney General

5    of Wisconsin, right, on that.  And I think you probably

6    needed to.

7           Secondly, in this case, these Chapter 11 cases

8    that is, there have been a huge number of claims filed just

9    of personal injury claims.  It's well over 100,000 claims.

10   And the claims allowance process, the claims review process

11   hasn't started.

12           MS. OSTERLOH:  Correct.

13           THE COURT:  Instead, the parties focused on a plan

14   that would allocate value to the different types of

15   claimants that have asserted claims in these cases, which

16   include people like yourself that have asserted claims

17   either on behalf of an estate or someone who is asserting

18   them on behalf of themselves for personal injury or other

19   claims stemming from --

20           MS. OSTERLOH:  Right.

21           THE COURT:  -- a person's use of the Debtor's

22   products.

23           Then there's a huge number of claims asserted by

24   states and other governmental entities, and then also other

25   private claimants for economic loss.  And because of the

Page 15

1   great number of those claims and the great dollar amount of

2   those claims, the parties in the cases focused on a plan

3   that would allocate the value in the estates among the

4   claimants.  And having determined that allocation, the plan

5   also set up a mechanism for a streamlined way to consider

6   the allowance of personal injury claims.  And I'm using that

7   term broadly, but I think you understand what I mean.

8   Claims like yours.

9           MS. OSTERLOH:  I do understand.  I don't mean to

10  interrupt you, Your Honor, but the objection was to my

11  original motion to have you rule on my paper as far as

12  equitable tolling and things like that.

13          THE COURT:  No, I understand.  But what I'm

14  reluctant to get into at this point in these cases is the

15  individual merits of individual claims.  And that's because

16  it really isn't -- it isn't efficient and it doesn't lead to

17  any immediate result.

18          MS. OSTERLOH:  Correct.

19          THE COURT:  The timely filing of your claim in the

20  bankruptcy case crystallized whatever rights you have.  They

21  are preserved.

22          MS. OSTERLOH:  Okay.

23          THE COURT:  And there's not going to be any

24  immediate payout because of a determination of your claim at

25  this point.

Page 16

1           MS. OSTERLOH:  No, I understand that, Your Honor.

2    I don't mean to disrespect or interrupt.  I understand that,

3    and I understand that this is moving into arbitration from

4    what I understand.  So it's not that I want payment

5    immediately --

6           THE COURT:  I know you don't.  But what I'm saying

7    is I don't want to open the floodgates to a lot of people

8    like yourself making motions to have their claims allowed.

9    It is possible -- in fact, it's conceivable -- that if the

10   Debtors are unable to confirm a plan like the plan that has

11   been filed, there would be no recovery by personal injury

12   claimants, in which case, litigating these issues now is a

13   terrible waste of money and time because it would be all for

14   nothing.

15          On the other hand, it's I hope much more

16   conceivable that a plan will be confirmed that sets aside a

17   large amount of money in the aggregate for claims like yours

18   with a streamlined procedure that's much less expensive to

19   make payouts so that the cost of considering the allowance

20   of the claims is reduced.

21          And so I have a serious issue as to whether I

22   should be even hearing this motion at this time.  Because I

23   don't want to open the gates to doing this for a lot of

24   other people, too.

25          And related to that, it's a subset of that point,

Page 17

1    which is you've raised the specific issues that I've stated,

2    i.e. the constitutionality of the statute of limitations and

3    whether there is any equitable tolling of it.

4             MS. OSTERLOH:  Correct.

5             THE COURT:  But you've asked for the allowance of

6    the claim.  And the claim -- I don't know what the amount is

7    for.  But I don't know if there are any other defenses to

8    it.  I don't know whether there's any defenses to the

9    amount.

10            So normally when courts consider a request for

11   relief, they don't do it piecemeal.  They do it all at once.

12   So all the issues are dealt with, which would include not

13   only the statute of limitations issue, but also any other

14   defenses that the debtor's estates, which are really the

15   creditors, the other creditors who are competing with you on

16   this pie that -- you know, the available assets to pay the

17   creditors would have.

18            So, you know, I don't know what the amount of the

19   claim is for, for example.  Can you tell me that?

20            MS. OSTERLOH:  I would rather not reveal that,

21   knowing that the motion was to be known as confidential.

22            THE COURT:  All right.  But what I'm saying is,

23   you know, if it was for -- well, Ms. Ecke, who I ruled on

24   yesterday, asserted a claim for $242 million.  Obviously the

25   other creditors are going to object to that amount, even if

1    they ultimately believe that the claim itself should be

2    allowed in some amount.  So if your claim is like that or,

3    you know, some very large amount, that's an issue.  So I am

4    really hesitant to rule on this for that reason.

5            Lastly -- lastly -- and I'll say this finally too

6    besides the two procedural issues that I just raised.  The

7    issue of the constitutionality of a statute under either --

8            MS. OSTERLOH:  Yes.

9            THE COURT:  -- the U.S. Constitution or a state

10   constitution is one that can's just be raised in federal

11   court by saying that the statute is unconstitutional.

12           MS. OSTERLOH:  I understand.

13           THE COURT:  A reason has to be given for it.

14           MS. OSTERLOH:  Right.

15           THE COURT:  And this motion doesn't really give a

16   reason.  It just says it's unconstitutional.  And I can tell

17   you that both at the federal level interpreting the

18   Fourteenth Amendment and at the State of Wisconsin level,

19   interpreting with the Wisconsin Constitution, the same

20   provision that you have cited, and the Fourteenth Amendment,

21   the highest court, the Supreme Court of the U.S. and the

22   Wisconsin Supreme Court, have been very loathe to find a

23   statute of limitations unconstitutional.

24           In a case called Block v. North Dakota, 461 U.S.

25   273 --

Page 19

1              MS. OSTERLOH:  Yes.

2              THE COURT:  -- the U.S. Supreme Court said a

3      constitutional claim, even if the underlying claim is one

4      for the violation of the U.S. Constitution, can become time-

5      barred by a statute of limitations, just as any other claim

6      can.  That's at Page 292 of that decision, which was from

7      that case.  And that's been reiterated by the Supreme Court

8      in United States v. Clintwood Elkhorn Mining Co., 553 U.S.

9      1, 8 (2008).

10             And again, I don't have -- you haven't really

11     given me a reason why this particular statute of limitations

12     violates the Fourteenth Amendment.  But even if it's

13     asserted that your underlying right -- which it's possible

14     is a constitutional right to pursue the claim -- the Supreme

15     Court has said the Fourteenth Amendment would -- claims

16     under the due process clause themselves can be time-barred.

17             And then the Wisconsin Supreme Court considered a

18     statute of limitations on medical malpractice in Aicher v.

19     Wisconsin Patients Compensation Fund, 237 Wis. 2d 99, 613

20     N.W.2d 849, Supreme Court of Wisconsin, 2000, and upheld

21     that statute of limitations over an argument that it was

22     unconstitutional under both the Wisconsin Constitution and

23     the U.S. Constitution.  And it said in doing that, that

24     statues are presumptively constitutional.  The court

25     indulges every presumption to sustain the law if at all

Page 20

```
1    possible.  And if any doubt exists about a statute's

2    constitutionality, we must resolve that doubt in favor of

3    constitutionality.  That's at Page 111.

4           And it then went through the statute of

5    limitations there at issue, which was not a basic statute of

6    limitations, which says, you know, you have three years to

7    bring a lawsuit.  The provision they were focusing on was a

8    separate provision of the statute, which said that your time

9    to bring the lawsuit if you didn't know about it, a so-

10   called statute of repose, was also limited by a somewhat

11   longer statute, but not that long.

12          MS. OSTERLOH:  Right.

13          THE COURT:  And it was asserted by the plaintiff

14   that they didn't know about -- they still didn't know about

15   it by the time that statute ran.  And even there, the Court

16   held that applying the rational basis test that they

17   outlined, that statue was constitutional under the Wisconsin

18   Constitution.  It's a five-part test.  It requires a fairly

19   detailed analysis, but with the presumption that I noted

20   earlier.  And it similarly considered whether that statute

21   was unconstitutional under the Fourteenth Amendment, and

22   determined that it wasn't.  I'm sorry, that it was

23   constitutional, that it wasn't unconstitutional.

24          So -- but in doing so, it had to analyze the facts

25   really carefully.  And your motion doesn't give me those
```

Page 21

1    facts.  It just basically says it's unconstitutional under

2    Wisconsin and U.S. Constitution.  And given my other

3    reservations about hearing this and not having those facts -

4    - in fact, I'm not even sure the statues you cite is the

5    applicable statute of limitations, because it appears to

6    apply to medical malpractice actions.  It may be that

7    instead the wrongful death statute in Wisconsin is

8    applicable, which also has a three-year statute of

9    limitations.  But, again, I just don't have the facts to

10   make this determination, even if it was really appropriate

11   to do so at this time in these cases.

12           And similarly, I don't have facts as to tolling,

13   either, equitable tolling, except that you've said that it

14   was tolled because of the statute of limitations.  But

15   that's not really a basis for equitable tolling.

16           Generally when equitable tolling exists, it's

17   where a potential defendant, in this case the Debtors, keep

18   you in the dark about whether your claim exists, or they

19   make you a promise that it doesn't matter that the clock is

20   running, you know, you have plenty of time, those sorts of

21   things.  But that's not asserted.

22           So my inclination here is not to decide this at

23   this time.  I have told you why I think if I were to decide

24   it, you have an uphill fight based on the cases I've cited.

25   But I don't really have the facts to finally rule on that,

Page 22

1   and I don't think it's -- I don't want to set the process

2   precedent in these cases to start deciding pieces of the

3   puzzle of individual claims, because it's just -- it's too

4   early to do that.

5            MS. OSTERLOH:  I understand.

6            THE COURT:  Okay.  And I don't fault you for

7   bringing the motion.  I mean, I want to be clear about that.

8   But I'm trying to explain to you why I'm not inclined to

9   grant it at this point.

10           If a plan like the plan that was on the table that

11  I confirmed and that was reversed is confirmed in these

12  cases, there will be a process for you to submit -- to have

13  your claim be considered.

14           MS. OSTERLOH:  Okay.

15           THE COURT:  And I'm sure these points will be

16  addressed during that process.  But it will be a lot faster

17  and it will be comprehensive as opposed to piecemeal here.

18  And, again, I don't really have the record before me today

19  to decide this request.  So my inclination is to adjourn

20  this without date, and it will be decided at the time when

21  claims generally are being considered for allowance in these

22  cases.

23           MS. OSTERLOH:  I understand.

24           THE COURT:  Okay.  All right.  So I will ask our

25  clerk's office just to make a notation on the docket beside

Page 23

1    your motion to say that.

2            MS. OSTERLOH:  Okay.

3            THE COURT:  So that when it comes up again, people

4    can go back and see that that's how I dealt with this.

5            MS. OSTERLOH:  Okay.  Will I be receiving some

6    kind of notice from the Court pertaining to --

7            THE COURT:  Well, that's a good question.  I mean,

8    you have a claim on file.

9            MS. OSTERLOH:  Yes.

10           THE COURT:  Again, if a plan like the plan that I

11   confirmed and that was reversed actually gets confirmed, you

12   will get a notice under those claims procedures --

13           MS. OSTERLOH:  Okay.

14           THE COURT:  -- as to when, you know -- there will

15   be forms sent to you.  You'll have a right to choose a fast

16   track allowance process or a more slow process.  If that

17   type of plan isn't confirmed, you will get a notice at some

18   point.  It could be anything, such as a Chapter 7 trustee

19   sending you a notice saying I object to your claim.  Or it

20   could be a different plan with a plan administrator sending

21   you a notice.  But, yeah, your claim, because it's filed and

22   not objected to under the bankruptcy rules, is presumptively

23   valid.

24           MS. OSTERLOH:  Okay.

25           THE COURT:  The Debtor or the Debtor's successor

Page 24

1    under a plan or whatever would have to object to the claim,

2    and you would have to get the notice of that objection.

3                MS. OSTERLOH:  Oh, I'm sure they will.

4                THE COURT:  Well, probably so given the statute of

5    limitations issue.  Okay.  All right.

6                Very well, that concludes today's agenda.  So I'm

7    going to sign off at this point.  Thank you.

8                MS. OSTERLOH:  Thank you, Judge.

9                THE COURT:  Okay.

10               (Whereupon these proceedings were concluded at 0

11   10:38 AM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 25

1                                I N D E X

2

3                              RULINGS

4                                          Page        Line

5

6    Johnson late claim motion granted      9           8

7    Jenkins motion granted                10          11

8    Osterloh motion adjourned             22           9

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 26

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  January 13, 2022