UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br><br>                  Debtors. | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>(Jointly Administered) |

## MEDIATOR'S THIRD INTERIM REPORT

Pursuant to paragraph 1 of the *Order Appointing the Honorable Shelley C. Chapman as Mediator*, dated January 3, 2022 [ECF No. 4260] (the "Appointment Order"), the Court appointed the Honorable Shelley C. Chapman as mediator (the "Mediator") to conduct a mediation (the "Mediation") between the Nine,[1] on the one hand, and the representatives of the Covered Parties, on the other hand (the Nine and the Covered Parties being the "Mediation Parties"), with respect to modifications of the Plan. By order dated January 13, 2022 [ECF No. 4286], the Court extended the Mediation to February 1, 2022. On January 31, 2022, the Mediator filed her Interim Report [ECF No. 4316], requesting an extension of the Termination Date to February 7, 2022. By order dated February 1, 2022 [ECF No. 4319], the Court extended the Termination Date to February 7, 2022. On February 8, the Mediator filed her Second Interim Report [ECF No. 4338], requesting an extension of the Termination Date to February 16, 2022. By order dated February 8, 2022 [ECF No. 4339], the Court extended the Termination Date to February 16, 2022.

The Mediator respectfully submits this Third Interim Report in accordance with the terms of the *Order Establishing the Terms and Conditions of Mediation Before the Honorable Shelley*

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Mediation Terms and Conditions Order (defined below).

#95489052v2

*C. Chapman*, dated January 3, 2022 [ECF No. 4261] (the "<u>Mediation Terms and Conditions Order</u>").

### Statement of Mediator

1.  As set forth in more detail in the Mediator's Interim Report and Second Interim Report, each of which is incorporated herein by reference, between January 3, 2022 and January 25, 2022, the Mediator conducted approximately 100 telephonic meetings with the Nine and the Covered Parties. The Mediator spoke both with counsel to the Covered Parties and directly with individual members of the Raymond Sackler family and Mortimer Sackler family (collectively, the "<u>Sackler Families</u>"). The Mediator also held dozens of calls with staff of the Nine and spoke directly on dozens of occasions to certain Attorneys General of the Nine. In addition, the Mediator held dozens of telephonic meetings with certain Additional Parties, including the Debtors, counsel to the Debtors, counsel to the Official Committee of Unsecured Creditors, counsel to the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, counsel to the former Non-Consenting States[2] other than the Nine, and counsel to the Multi-State Governmental Entities Group. The Mediator exchanged hundreds of emails with the aforementioned parties. In accordance with a strict COVID protocol, an in-person Mediation was conducted on January 25, 2022 (from approximately 8:30 a.m. until approximately 10:00 p.m.) and on January 26, 2022 (from approximately 8:30 a.m. until approximately 9:00 p.m.), with additional discussions between and among the Mediator and the Covered Parties continuing through the night of January 26, 2022.

2.  After the conclusion of the in-person Mediation, between January 27, 2022 and February 7, 2022, the Mediator conducted upwards of 150 telephonic meetings with the Nine and

---

[2] As defined in the *Mediator's Report* [ECF No. 3119] filed on July 7, 2021.

the Covered Parties, which meetings totaled approximately 110 hours of Mediation sessions. During this period of time, the Mediator exchanged dozens of emails with certain of the Additional Parties identified in paragraph 1 hereof.

3. After the Court's extension of the Termination Date of the Mediation to February 16, 2022, the Mediator formally designated certain Additional Parties pursuant to the Mediation Terms and Conditions Order, which parties are as follows: (i) the States of Colorado, Florida, Massachusetts, New York, North Carolina, Pennsylvania, Tennessee, and Texas; (ii) counsel for the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (only in their capacity as counsel to Florida, Texas, and Tennessee); and (iii) counsel for the Official Committee of Unsecured Creditors. Each of these Additional Parties confirmed in writing to the Mediator that (a) it agreed to be bound by all of the confidentiality and protective order provisions of the Mediation Terms and Conditions Order and (b) to the extent such Additional Party is a member of any ad hoc group, such Additional Party would not disclose any confidential information received by it in the Mediation to any other members of its group not designated as Additional Parties.

4. Between February 8, 2022 and February 16, 2022, the Mediator conducted dozens of telephonic and Zoom meetings between and among the Nine. The Mediator also participated in countless email exchanges and telephone calls with the Debtors, counsel to the Debtors, the Covered Parties, and the Additional Parties to keep them appropriately apprised of the status of the Mediation. In total, the Mediator devoted approximately 55 hours of time to Mediation sessions during this period.

5. On February 9, 2022, the Mediator contacted the Court, copying all Mediation Parties, to seek clarification with respect to the Mediation Terms and Conditions Order. Specifically, the Mediator asked the following questions: (i) is the Mediator authorized to share

the position of a Mediation Party, with that Mediation Party's consent, with Additional Parties to the Mediation who have agreed to abide by the Protective Order, and (ii) is the Mediator authorized to disclose a Mediation Party's position (again with its consent) in interim or final mediation reports? Copying all Mediation Parties, the Court provided a written response to the questions posed by the Mediator. Should the Court grant the Mediator's request set forth in paragraph 9 hereof, the Mediator requests that the clarifications provided by the Court be specifically incorporated into the order entered by the Court.

6. Additional conclusions and disclosures permitted under or required by paragraph 14 of the Mediation Terms and Conditions Order will follow in one or more subsequent reports issued by the Mediator, including the Mediator's conclusions as to whether participants in the Mediation acted in good faith.

## Current Status of Mediation

7. The Mediator's prior reports have noted substantial progress made among the parties. To elaborate on the nature of that progress, the Sackler Families have authorized the Mediator to disclose the following summary of the economic terms of a settlement proposal made by them to the Nine (the "Sackler Settlement Proposal"). After two days of in-person Mediation and additional discussions and negotiations, the Sackler Families made a proposal that included $1.175 billion in total committed cash and up to an additional $500 million of cash consideration contingent on the net proceeds of IAC[3] sales. This package is comprised of (i) $1 billion of incremental cash payable, over 18 years, to the MDT (as defined in the Plan) and to a newly-established supplemental opioid abatement fund to be administered by the Nine (the "SOAF") on a schedule set forth in the Sackler Settlement Proposal, (ii) $175 million of incremental cash paid to the MDT at emergence in lieu of any obligations under the Plan relating to certain Sackler family foundations, and (iii) 90% of the amount by which Net Proceeds from

IAC sales exceed $4.3 billion, up to a total of $500 million of additional incremental cash to the MDT. All such funds would be used exclusively for abatement of the opioid crisis, including support and services for survivors, victims, and their families. Upon consummation of a Plan incorporating this Sackler Settlement Proposal, the Sackler Families would be paying, in total, not less than $5.5 billion and up to $6 billion. The Sackler Settlement Proposal also contains a number of significant non-economic terms. This proposal is conditioned on, *inter alia*, acceptance by all of the Nine.

8. Paragraph 14 of the Mediation Terms and Conditions Order obligates the Mediator to report whether and to what extent the Mediation was successful. At present, the Sackler Settlement Proposal has been accepted by a supermajority of the Nine, subject to applicable conditions as set forth in the Sackler Settlement Proposal. To date, the unanimous acceptance required by the Sackler Settlement Proposal has not been achieved.

9. A number of Mediation Parties and Additional Parties have requested that the Mediator continue working with the Mediation Parties and the Additional Parties, either to achieve unanimous acceptance of the Sackler Settlement Proposal and/or, in parallel, to explore other settlement structures not dependent on unanimous support. Especially in light of the issues that remain unresolved, the Mediator is willing to do so, and thus respectfully requests a further extension of the Termination Date, *nunc pro tunc* to 5:00 p.m. on February 16, 2022, to February 28, 2022 at 8:00 p.m. EST.

Dated:   New York, New York
         February 18, 2022

                                    /s/ Shelley C. Chapman
                                    HONORABLE SHELLEY C. CHAPMAN

---

[3] As defined in the Twelfth Amended Chapter 11 Plan, dated September 2, 2022 [ECF No. 3726] (the "Plan").