Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-rdd

4    Adv. Case No. 19-08289-rrd

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    PURDUE PHARMA, L.P.,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   PURDUE PHARMA, L.P., et al,

13               Plaintiff,

14          v.

15   COMMONWEALTH OF MASSACHUSETTS, et al,

16               Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19               United States Bankruptcy Court

20               300 Quarropas Street, Room 248

21               White Plains, NY 10601

22

23               February 17, 2022

24               10:12 a.m.

25

1    B E F O R E :

2    HON ROBERT D. DRAIN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:    UNKNOWN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   Notice of Agenda / Amended Agenda for February 17, 2022

2   Hearing (ECF #4364)

3

4   Notice of Hearing Regarding Late Claim Motion (related

5   document(s)4231, 4230) filed by Eli J. Vonnegut on

6   behalf of Purdue Pharma L.P. with hearing to be held on

7   2/17/2022 at 10:00 AM at Videoconference (ZoomGov)

8   (RDD) Objections due by 2/10/2022 (ECF #4232)

9

10   HEARING re: Motion to File Proof of Claim After Claims Bar

11   Date filed by Eddie Ray Hall with hearing to be held on

12   2/17/2022 at 10:00 AM at Videoconference (ZoomGov) (RDD).

13   (ECF #4230)

14

15   Letter received on 1/21/2022; re: Claim (related

16   document(s)4230) Filed by Eddie Ray Hall. with hearing to be

17   held on 2/17/2022 at 10:00 AM at Videoconference (ZoomGov)

18   (RDD) (ECF #4310)

19

20   HEARING re: Motion to Extend Time /Motion for Extension

21   Debtors of Bar Date and Clarity, re: claim 628425 filed by

22   Larry Dale Evjene with hearing to be held on 2/17/2022 at

23   10:00 AM at Videoconference (ZoomGov) (RDD). (ECF

24   #4231)

25

Page 4

1   Related Document:

2   Amended Motion to File Proof of Claim After Claims Bar Date

3   (related Document 4231)(ECF #4295)

4

5   HEARING re: Notice of Hearing Regarding Late Claim Motion

6   [David Mullen] (related document(s)4262) filed by James I.

7   McClammy on behalf of Purdue Pharma L.P. with hearing to be

8   held on 2/17/2022 at 10:00 AM at Videoconference (ZoomGov)

9   (RDD) Objections due by 2/10/2022 (ECF #4272)

10

11   HEARING re: Motion to File Proof of Claim after Claims Bar

12   Date filed by David Mullen with hearing to be held on

13   2/17/2022 at 10:00 AM at Videoconference (ZoomGov)(RDD)(ECF

14   #4262)

15

16   Adversary proceeding: 19-08289-rdd Purdue Pharma L.P. et al

17   v. Commonwealth of Massachusetts et al

18   HEARING re: Motion to Extend Time / Motion to Extend the

19   Preliminary Injunction filed by Benjamin S. Kaminetzky on

20   behalf of Avrio Health L.P., Purdue Pharma Inc., Purdue

21   Pharma L.P., Purdue Pharma Manufacturing L.P., Purdue Pharma

22   of Puerto Rico, Purdue Pharmaceutical Products L.P., Purdue

23   Pharmaceuticals L.P., Purdue Transdermal Technologies L.P.,

24   Rhodes Pharmaceuticals L.P., Rhodes Technologies with

25   hearing to be held on 2/17/2022 at 10:00 AM at

1    Videoconference (ZoomGov) (RDD) Responses due by 2/10/2022

2    (ECF #324)

3

4    Adversary proceeding: 19-08289-rdd Purdue Pharma L.P. et al

5    v. Commonwealth of Massachusetts et al

6    HEARING re: Memorandum of Law in Support of Motion to Extend

7    the Preliminary Injunction (related document(s)324) filed by

8    Benjamin S. Kaminetzky on behalf of Avrio Health L.P.,

9    Purdue Pharma Inc., Purdue Pharma L.P., Purdue Pharma

10   Manufacturing L.P., Purdue Pharma of Puerto Rico, Purdue

11   Pharmaceutical Products L.P., Purdue Pharmaceuticals L.P.,

12   Purdue Transdermal Technologies L.P., Rhodes Pharmaceuticals

13   L.P., Rhodes Technologies. Objections due by 2/10/2022,

14   Reply due by 2/15/2022 (ECF #325)

15

16   Adversary proceeding: 19-08289-rdd Purdue Pharma L.P. et al

17   v. Commonwealth of Massachusetts et al

18   HEARING re: Statement /Plaintiffs' Executive Committee's

19   Statement in Response to Debtors' Motion to Extend the

20   Preliminary Injunction (related document(s)324) filed by

21   David Molton on behalf of Plaintiffs' Executive Committee.

22   (ECF #329)

23

24

25

Page 6

1   Notice of Hearing Regarding Challenge Letter filed by Donald

2   Creadore on behalf of Ad Hoc Committee of NAS Babies. (ECF

3   #4335)

4

5   Letter in Support of Document Designation Filed by Cyrus

6   Mehri on behalf of Public School Districts. (ECF #4362)

7

8   Letter /The Official Committee of Unsecured Creditors'

9   Letter Regarding 2.17.22 Hearing on NAS AHC Confidentiality

10   Challenge Filed by Ira S. Dizengoff on behalf of The

11   Official Committee of Unsecured Creditors of Purdue Pharma

12   L.P., et al. (ECF #4363)

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   DAVIS, POLK & WARDWELL, LLP

 4        Attorneys for the Debtors

 5        450 Lexington Avenue

 6        New York, NY 10017

 7

 8   BY:  JACQUELYN KNUDSON (TELEPHONICALLY)

 9        MARSHALL SCOTT HUEBNER (TELEPHONICALLY)

10        JAMES I. MCCLAMMY (TELEPHONICALLY)

11

12   CREADORE LAW FIRM, PC

13        Attorneys for NAS Group

14        450 Seventh Avenue, Suite 1408

15        New York, NY 10123

16

17   BY:  DONALD E. CREADORE (TELEPHONICALLY)

18

19   ALSO PRESENT TELEPHONICALLY:

20   RONALD BASS, PRO SE

21   VITALY PINKUSOV, PRO SE

22   ROBERT BONSIGNORE

23   BERNARD ARDAVAN ESKANDARI

24   MATTHEW J. GOLD

25   IRVE GOLDMAN
```

1   EVAN M. JONES

2   MICHELE MEISES

3   EDWARD E. NEIGER

4   MICHAEL PATRICK O'NEIL

5   STEVEN POHL

6   PAUL KENAN SCHWARTZBERG

7   J. CHRISTOPHER SHORE

8   ALICE TSIER

9   ALLEN J. UNDERWOOD

10   ROXANA ALEALI

11   RICHARD ARCHER

12   MICHAEL ATKINSON

13   JASMINE BALL

14   BROOKS BARKER

15   KATHRYN BENEDICT

16   DAVID E. BLABEY

17   SARA BRAUNER

18   JULIUS CHEN

19   DANIEL CONNOLLY

20   DYLAN CONSLA

21   KEVIN DAVIS

22   MARIA ECKE, PRO SE

23   KENNETH H. ECKSTEIN

24   GILLIAN FEINER

25   LAWRENCE FOGELMAN

1   CAROLINE GANGE

2   JERRY B. GERMANY

3   MAGALI GIDDENS

4   EDDIE RAY HALL

5   MITCHELL HURLEY

6   ELLEN ISAACS, PRO SE

7   HAROLD D. ISRAEL

8   GREGORY JOSEPH

9   BENJAMIN S. KAMINETZKY

10   MARC KESSELMAN

11   DARREN S. KLEIN

12   ANN LANGLEY

13   ALEXANDER LEES

14   MARA LEVENTHAL

15   JEFFREY A. LIESEMER

16   EDAN LISOVICZ

17   KEVIN C. MACLAY

18   BRIAN S. MASUMOTO

19   GERARD MCCARTHY

20   SHANNON M. MCNULTY

21   CYRUS MEHRI

22   NATHANIEL MILLER

23   MAURA KATHLEEN MONAGHAN

24   AISLING MURRAY

25   GEORGE O'CONNOR

Page 10

1   PHYLLIS POLLOCK

2   KATHERINE PORTER

3   ARIK PREIS

4   RACHAEL RINGER

5   CHRISTOPHER ROBERTSON

6   JEFFREY J. ROSEN

7   JEREMY W RYAN

8   ELIZABETH SCHLECKER

9   LUCAS H. SELF

10  MARC F. SKAPOF

11  LAURA SMITH

12  JOSEPH SORKIN

13  ETHAN STERN

14  ERIC STODOLOA

15  JEROME TAPLEY

16  MARK A. TATE

17  KEVIN WAYNE THOMPSON

18  MARC JOSEPH TOBAK

19  ESTHER TOWNES

20  GERARD UZZI

21  MELISSA L. VAN ECK

22  ELI J. VONNEGUT

23  JORDAN A. WEBER

24  THEODORE WELLS

25  LOUIS PAGOT

1  EMMA J. SOUSA

2  BRIANNA B. BILTER

3  UDAY GORREPATI

4  TAYLOR HARRISON

5  PATRICK HOLOHAN

6  WENDY KANE

7  MIKE LEGGE

8  VINCE SULLIVAN

9  KATIE M. WHITE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    P R O C E E D I N G S

            THE COURT:  Okay, good morning.  This is Judge

Drain.  We're here in re: Purdue Pharma L.P. et al.  This

hearing is being held remotely, primarily by Zoom unless

someone doesn't have access to a screen, in which case they

are appearing by telephone.  I have the amended Agenda for

this morning's Omnibus Hearing.  It was amended, I think,

just to reflect the filing of two documents overnight -- let

me make sure -- with respect to the last matter on the

Agenda.  And I'll go down the Agenda, in order this morning.

            So, there are two uncontested matters that are

first up for this morning but let me call them even though

they are uncontested.  The first one is a Motion by Eddie

Ray Hall to have his claim filed after the Claims Bar Date.

There are similar motions that are also listed as

uncontested by Larry Dale Evjene and David Mullen.  So, I

had an email from the Department of Corrections in

Page 13

18  Washington State that Mr. Hall and Mr. Evjene would not be

19  able to appear because of COVID lockdown restrictions, but

20  let me just ask, is Mr. Hall present?  Okay, is anyone

21  handling this for the Debtors?

22  MS. KNUDSON:  Yes, Your Honor.  Good morning.  For

23  the record, Jacquelyn Knudson of Davis Polk and Wardwell on

24  Behalf of the Debtors.  Can I be heard clearly?

25  THE COURT:  Yes.

Page 13

1   MS. KNUDSON:  Thank you, Your Honor.  I'll be

2   handling the first three Agenda items, which, as you noted

3   are the uncontested Late Claim Motions and I plan to just

4   address those together very briefly.  We have careful

5   reviewed the Motions and based on the individualized

6   assertions in the Motions, the Debtors believe there is a

7   colorable basis for granting the requested extensions under

8   the Pioneer factors.  Each Movant is incarcerated and has

9   alleged in the Motion that COVID-19 restrictions at the

10  facilities and our postal service delays contributed to the

11  untimely filing.  As we've done in the past, we consulted

12  with the Creditors' Committee and the Ad Hoc Group of

13  Individual Victims regarding the assertions in the Motions

Page 14

14   and both have consented to the relief requested.

15           Accordingly, the Debtors requested that the

16   proposed Orders submitted at Docket No. 4343, which is

17   consistent with prior Orders we've submitted for Late Claim

18   Motions be entered.  I'm happy to answer any questions Your

19   Honor may have.

20           THE COURT:  Okay.  Let me just confirm that no-one

21   else has anything to say on either -- on any of these three

22   Motions, the Motion by Mr. Hall and Mr. Evjene or Mr.

23   Mullen.  Okay, I have reviewed each of the Motions and I

24   agree that there's a basis, as stated by the Debtor's

25   counsel without any opposition by the Committee or the P.I.

Page 15

1   group or any others to grant the Motions to permit the

2   claims to be filed late given the averments in the Motions

3   that each of these men had limited access to either the

4   media or Bar Date dates because of restrictions imposed on

5   them while incarcerated.

6           My one issue here is for Mr. Hall.  It's not clear

7   to me that he's actually filed a claim.  Could you double

8   check to see whether he has, in fact, filed a claim?  If he

9   has, it's fine, that standard Order works.  If he hasn't, I

10  think you need to set a date for him to file a claim.

11          MS. KNUDSON:  Sure.  Yes, sir.  And I can confirm

12  that he has filed a claim that was received by the Clerk.

13  Yes, Your Honor.

14          THE COURT:  All right, fine.  So, makes it easier.

15  Then you can submit the standard Order granting the Motion

16  on an opposed basis for each of the three Motions.

17          MS. KNUDSON:  Thank you, Your Honor.  We will do

18  that.  I will now turn the podium over to my colleague, Mr.

19  Huebner, for the next Agenda item.

20          THE COURT:  Okay, very well.

21          MR. HUEBNER:  Good morning, Your Honor.  For the

22  record, Marshall Scott Huebner with Davis Polk.  I hope that

23  the Court and all parties are well.  The next item upon the

24  Agenda, Your Honor, is our request for a two-week extension

25  of the injunction in its current form.  It currently is due

1    to expire today, and we are asking for an extension until

2    March 2nd.  As the Court knows, the most recent interim

3    Mediator's Report outspeaks of substantial progress in the

4    mediation for material enhancements in the transaction that

5    was originally embodied or most recently embodied formerly

6    in the Plan for Organization that is currently up on the

7    (indiscernible).  The mediation, Your Honor, pursuant to the

8    most recent Order that this Court entered, was due to expire

9    yesterday at 5 p.m.

10          The mediator authorized me, this morning, to

11   advise the Court and the parties, as follows, that a

12   Mediator's Reporter is likely to be filed tomorrow.  It

13   could be tonight, but more likely tomorrow.  That she will

14   communicate in that report, her recommendations for a path

15   forward, including potentially additional or a continuation

16   of mediation.  And so there will be a report coming.

17   Obviously, with last night, obviously having happened quite

18   recently and a lot going on, the report will hit the docket,

19   I think, certainly no later than tomorrow.

20          But again, Your Honor, for today's purposes, it's

21   actually very straightforward.  Today's Motion is

22   uncontested.  It has the support of various parties and the

23   lack of objection of other parties.  There was one statement

24   filed on the docket, which is not an objection, which I'm

25   not going to address unless necessary.  I think the fact

Page 17

1    that we have 13 mutual organized creditor groups in the

2    case, not one of which has objected and we have all of the

3    mediation parties, not one of whom has objected, speaks

4    volumes in the fact that right now, allowing the parties to

5    focus exclusively on this mediation, whereas per the last

6    report, very substantial progress was made on very material

7    enhancements to the transaction for the benefit of all

8    Creditors is the first, second, third and fourth priority.

9    There are, of course, other things going on in the

10   background as, you know, moving forward with the appeal,

11   it's really one of the more important things we are doing to

12   be sure.  But in no circumstance is it the only thing that

13   is going on, and many conversations are happening among many

14   parties on a variety of topics.  Of that, I think the Court

15   and all parties can be quite sure.

16          So, I don't really feel the need, Your Honor,

17   unless there are questions or comments from the Court, to

18   say any more.  It is a two-week, essentially, puddle-jumper

19   and it is uncontested and supported by the key parties.  And

20   I would just leave it at that for the sake of having this

21   hearing be as brief and efficient as possible.

22          THE COURT:  Okay.  I think you misspoke about one

23   thing, Mr. Huebner.  You said that the Motion seeks an

24   extension of the Preliminary Injunction through March 2nd.

25   I read it as seeking it through March 3rd.

1              MR. HUEBNER:  Oh, Your Honor.  I'm sorry, I

2     misspoke.  It is, of course, March 3rd and I apologize for

3     that.

4              THE COURT:  Okay.  All right.  The -- I see two

5     people on the screen.  The first is Ronald Bass.  He

6     actually filed a document on -- or provided it to the Court

7     on February 9th and then amended it the next day, February

8     10th and I'll focus on that matter.  The document originally

9     provided to the Court contained a number of exhibits that

10    had personally identifying information and other information

11    that our Clerk's office was concerned shouldn't be filed on

12    the docket and informed Mr. Bass of that and I believe he

13    revised it in light of that.  The September 10th -- I'm

14    sorry, February 10th document is titled, Amended Letter

15    Motion Opposing the Injunction to Stay for Third Parties

16    Non-Debtors Release.  I've reviewed this document and I'll

17    note that Mr. Bass is appearing pro se.  And I'm going to

18    ask you, Mr. Bass, if you can just tell me what it is that

19    you are seeking here?  Because I think I understand it, but

20    it's not entirely clear to me, but I'd like to give you the

21    chance to explain it to me.  You're on mute, sir.  You're on

22    mute, Mr. Bass.

23             MR. BASS:  Can you hear me now?

24             THE COURT:  Yeah, now I can, yes.

25             MR. BASS:  Okay.  My concern is that -- are -- is

1    exempted for what Objector is requesting does it cover the

2    State of New Jersey?  I need to know the many actions or

3    claims that I am filing against the State of New Jersey

4    that's similar to the situation with the Purdue Pharma.

5              THE COURT:  No.  The answer is no.

6              MR. BASS:  And that covers (indiscernible) I

7    mentioned in my Motion and paperwork.

8              THE COURT:  As I understood it from reviewing the

9    document that you filed, you have raised arguments in other

10   courts.

11             MR. BASS:  You're right.

12             THE COURT:  Like, in the multi-district litigation

13   in Ohio, in New Jersey itself --

14             MR. BASS:  Right.

15             THE COURT:  That you were wronged by either the

16   State of New Jersey or courts or officials in New Jersey.

17             MR. BASS:  Right.

18             THE COURT:  The Preliminary Injunction does not

19   include as a party covered by the Injunction or protected by

20   the Injunction, the State of New Jersey.

21             MR. BASS:  Okay, that's the answer that I was

22   looking for.

23             THE COURT:  Okay.  All right.  I thought that was

24   it.  I just wanted to make sure and --

25             MR. BASS:  Right.

```
1              THE COURT:  -- again, I don't think there's any

2    Order that needs to say that it just -- you know, the actual

3    Injunction doesn't cover it.  And I want to be clear, and I

4    think you understand this, by saying that I'm not saying

5    anything about the merits of your claims or anyone's

6    defenses.  I'm just saying that this Injunction doesn't

7    preclude you from pursuing them against the State of New

8    Jersey or officials in New Jersey.

9              MR. BASS:  Okay.  Well, that's what I'm trying to

10   get an understanding of.

11             THE COURT:  Okay.

12             MR. BASS:  Yeah.  That's the thing that was

13   bothering me.

14             THE COURT:  Okay.  Very well.

15             MR. BASS:  All right.  Thank you.

16             THE COURT:  Okay.  And then I see Mr. Pinkusov

17   also on the screen.  He sent, I believe, an email to court

18   yesterday stating that he generally opposed -- well, why

19   don't I let you say it, Mr. Pinkusov.  There's no reason for

20   me to summarize it.

21             MR. PINKUSOV:  Good morning, Your Honor.  I'm here

22   purely to see the proceedings and everything that I was

23   going to say is said in my letter and I stand by that.

24             THE COURT:  Okay, that's fine.  Very well.  All

25   right.  Does anyone have anything further to say on the
```

Page 21

1    Motion to Extend the Preliminary Injunction through March

2    3rd?

3              MR. BASS:  Yes, one more thing.  Yes, Judge, one

4    more thing.  How can I get a copy of that second

5    (indiscernible) conversation that you had with me?

6              THE COURT:  I'm sorry?  That section of what?

7              MR. BASS:  From the conversation that you had with

8    me about my Motion.

9              THE COURT:  There'll be a transcript of this

10   hearing that will eventually be filed on the docket.  It's

11   probably not going to be that long before it's filed since

12   it's a fairly short hearing.  So, you should just check the

13   docket for it.

14             MR. BASS:  Oh, okay then.  Thanks again.

15             MR. HUEBNER:  And Your Honor, we're happy, as a

16   courtesy, to excerpt the relevant provisions of the

17   transcript (indiscernible) to Mr. Bass when they do become

18   available, which may make it easier for him to get it more

19   quickly.  So, once it's public and we have it, we will

20   certainly excerpt it and send it on.

21             THE COURT:  Okay.

22             MR. BASS:  Thank you.  You'll send it

23   (indiscernible)?

24             MR. HUEBNER:  Yeah, we'll excerpt the section for

25   you, sir, and send them to you in an email, along with a

Page 22

1    copy of the full transcript since you have the Judge's

2    quotes in the email.  But not that it matters because the

3    Judge has spoken, but the Debtors certainly share the view

4    that the Injunction that we requested does not cover your

5    suits against New Jersey officials and your federal district

6    court.  So, we'll send you that as a courtesy.

7              Your Honor, I don't think there's anything further

8    on the Injunction, and then I think that brings us to our

9    last and final --

10             THE COURT:  I have to give you my ruling, Mr.

11   Huebner.

12             MR. HUEBNER:  Oh, apologies, Your Honor.

13             THE COURT:  I had a Motion that was filed earlier

14   this month for an extension of the Preliminary Injunction

15   that's been in effect in these cases for some time now.

16   There is a lengthy bench ruling and lengthy District Court

17   opinion laying out the standards and caselaw for such an

18   injunction.  I'm not going to repeat that here in light of

19   the fact that the Motion is unopposed.  I believe that, as

20   far as the facts are concerned, the factual records, such as

21   it is, supports the entry of an Order further extending the

22   Injunction through March 3, 2022.  The purpose of the last

23   two Orders Extending the Preliminary Injunction have been to

24   permit the mediation between the so-called, Sackler parties,

25   and the so-called nine Appellants comprising eight states

Page 23

1    and the District of Columbia, who successfully appealed the

2    Confirmation Order and who are now the Appellees in an

3    appeal by the Debtors joined in by various parties on these

4    cases at the Second Circuit.

5            Those Appellants or those nine governmental

6    entities expressed, following the entry of the District

7    Court's decision and Order, an interest in mediating their

8    disputes with the Sacklers, and accordingly, I appointed my

9    colleague, Judge Chapman as mediator, to conduct such a

10   mediation.  The Sacklers also being willing to do so.  I

11   have had two reports by Judge Chapman, each of which

12   reflected her belief, which I have no reason to doubt that

13   she has come very close to a resolution in that mediation

14   that would materially increase the amounts that would be

15   paid by the Sacklers in settlement of claims against them by

16   the Debtors and third parties and other non-monetary

17   consideration, as well.

18           It's clear to me that there's been no announcement

19   of a conclusion of the mediation, either one that was

20   stating that the mediation is successful or one that it was

21   partially successful or one that it was not successful.  On

22   the other hand, it appears also clear to me that, as far as

23   a successful reorganization of these Debtors is concerned,

24   the key parties in interest in the case who are closest to

25   the mediation, and I will note in that regard that Judge

Page 24

1    Chapman obtained clarification that she could add additional

2    parties as part of the Mediation Order and enable them to

3    communication with each other.  So, those parties, I believe

4    are also informed of the status of the mediation.  The key

5    parties in interest in the case believe that, in any event,

6    extending the injunction through March 3rd will (a) enable

7    the mediation to succeed with a reasonable prospect of

8    success, (b) if it does succeed, enable the parties to

9    consider further steps to take in the case and (c) that if

10   it doesn't succeed, to formulate a position as to the next

11   steps in this case, including whether the Injunction should

12   remain in effect.  This case is too significant to too many

13   people and government entities and other parties in interest

14   to be taking knee jerk actions in light of a process that is

15   still unfolding, as Judge Chapman has previously related to

16   the Court, a material prospect of success.  So, I conclude

17   that that limited extra time, i.e. through March 3rd, is

18   warranted here under the caselaw that I previously cited.

19   So, I will enter the Order that was proposed, which follows

20   the format of prior Orders in the case, but merely updates

21   the extension of the Injunction through March 3rd.

22        MR. HUEBNER:  Thank you very much, Your Honor, and

23   obviously, at the early March hearing we will all know a lot

24   more about where things are and, as we said in the Motion we

25   filed last night, we reserve the right to change the relief

Page 25

1    requested based on circumstances that are developing.  We

2    are constantly interacting with our major stakeholders and

3    trying to figure out the best way forward and hopefully, you

4    know, for everyone involved, the mediation will yield its

5    desperately desired fruit of the materially enhanced yield

6    that can be used to improve and save many lives and we'll

7    have to figure out what direction we go on based on its

8    outcome.  Thank you for the ruling, Your Honor.

9            MR. HUEBNER:  That brings us to the final matter,

10   which is, in fact, contested.  The only contested matter on

11   for today, which is the Ad Hoc Committee of

12   (indiscernible)'s Challenge Letter.  (indiscernible) handled

13   by Mr. McClammy, and so, I don't know who is kicking off

14   that final matter, but I know it's not me, so I will click

15   off my camera and microphone and see who (indiscernible).

16           THE COURT:  Okay.  Very well.  Thank you.  This

17   dispute arises in the context of the Third Amended

18   Protective Order entered by the Court after considerable

19   negotiation by the parties involved on November 12, 2020.

20   The Protective Order deals with and facilitates discovery

21   produced to the parties of interest in these cases and sets

22   forth both limitations on the use of information provided in

23   that discovery, which I've noted often has been extremely

24   extensive discovery, and a mechanism for challenging

25   designations or redactions with respect to discovery

Page 26

1   material under the Order if a receiving party believes that

2   discovery material at issue is not properly designated as

3   protected information under the Order, which is set forth in

4   Paragraph 65 of the Protective Order.  The context of this

5   dispute is that it arose, I believe, in late November of

6   last year with an exchange of correspondence consistent with

7   Paragraph 65 in December and importantly before District

8   judgment is ruling on Plan confirmation that was

9   supplemented by filings this month after I told the parties

10  to schedule a hearing.

11          It's clear to me that the Debtors and the other

12  party to this dispute have worked hard together to resolve

13  disputes over the production and use of information and the

14  parties may have been doing so since then.  Those parties,

15  in addition to the Debtors being the NAS Children Ad Hoc

16  Committee or the NAS AHC.  So, let me ask you first, have

17  there been any further developments on this dispute?

18          MR. CREADORE:  Your Honor, good morning.  This is

19  Don Creadore of the Creadore Law Firm, P.C. speaking on

20  behalf of the NAS Group and in response to your question,

21  there has been no direct communications with me and my

22  group, but I do understand there had been some efforts in

23  the background and (indiscernible) to try to strike a

24  resolution.  But unfortunately, I have not, as I want to

25  repeat, been contacted by the Debtors to try to move the

Page 27

1   matter forward.  And we have always left open the

2   opportunity to have and engage in that discussion to do so,

3   if only to avoid this type of proceeding.

4        THE COURT:  Okay.  All right.  Is that your

5   understanding too, Mr. McClammy on behalf of the Debtors?

6        MR. MCCLAMMY:  Yes.  Thank you, Your Honor.  We've

7   had continuing discussions, including with Mr. Preis from

8   Akin Gump to try to see if a resolution could be brokered

9   and, I think, you know, if it weren't for concerns about the

10  process, we might be there.  If it were limited to just a

11  certain defined core set of documents without concerns for

12  opening the door to these requests coming in from lots of

13  different parties.  So, while we remain hopeful that there

14  could be something that we could discuss to get there, we

15  just haven't been able to bridge that gap yet.

16       THE COURT:  Okay.  Well, I think the point you

17  raised is worth focusing on.  I understand that concern,

18  i.e., this case has an unusually large number of groups

19  that, under the Protective Order, had access to, again,

20  literally millions of documents and hundreds of millions --

21  almost a hundred million pages.  And as the letter that I

22  received from Mr. Preis last night states, the use of that

23  material, as well as other material, was specifically

24  addressed in the Chapter 11 Plan with a public document

25  depository and negotiation of what would be in it, which

1  resolved disputes over in large measure piecemeal requests

2  for relief from the Protective Order or disputes under the

3  Protective Order.

4        And I understand the concern about opening up in

5  some sort of policy way, the door to all sorts of people

6  asking to be relieved from the Protective Order so that the

7  Debtors would then be forced to litigated all of those

8  issues at considerable expense.  And before then, dealing

9  with the process of reviewing, in even greater detail, the

10 designations under the Protective Order.  On the other hand,

11 I have just this one request in front of me.  And if it can

12 be a very limited request and the Debtors, perhaps with the

13 input of the Committee, can see their way to seeing,

14 specifically, a reason to exceed to it with perhaps

15 limitations on how the information is to be used, I'm not

16 sure it does open the floodgates.  I mean, in my review of

17 the caselaw, the analysis of a special request is pretty

18 particularized.  I mean, it's pretty request specific and a

19 lot depends on the Court's sense of whether the requestor

20 really does have a strong basis for the information, on the

21 one hand and whether the party resisting the request, on the

22 other, has over-designated and the like.  So, I wouldn't get

23 too hung up on the "opening the floodgates" point.  I think

24 it's really a specific analysis of each case.

25

1           And I'll say one other thing in researching this

2    issue, the overall standard for purposes of Rule 26C in the

3    Second Circuit has not been set by the Circuit.  The Circuit

4    has ruled clearly on certain issues, such as, I believe it

5    is now clear that, in the Second Circuit there is no

6    presumption in favor of public access to this type of

7    material.

8           But what it has not ruled on is the extent of the

9    burden to show cause under Rule 26 and the Courts, as they

10   themselves have acknowledged at the District Court level,

11   have taken different approaches to that burden to show

12   cause.

13          I must say, I find quite persuasive a recent

14   opinion by Judge Underhill, Haidon v. Town of Bloomfield,

15   2021 U.S. Dist. LEXIS 137498 (D. Conn. Jul. 23, 2021), which

16   I think is a very scholarly and logical analysis of what

17   good cause means under Rule 26(c).

18          But he notes that there is a split in the Circuit

19   as to what that showing needs to be and I think cites as a

20   leading case for the contrary view, In Re: Parmalat

21   Securities Litigation 258 FRD 236 (2009).  Although the

22   nature of the order in that case, even if you would agree

23   with the opinion, which Judge Underhill doesn't, is quite

24   different than the order here, in that even if something was

25   not designated as confidential, it would still be precluded

Page 30

1     from being used in other litigation.

2              So, I am reluctant, I guess, with today's level of

3     briefing and the fact that this is not an evidentiary

4     hearing, to actual rule on this issue, particularly since I

5     think I made it clear to you that I don't believe you would

6     necessarily open any floodgates if you agreed on some

7     targeted release of this information for a specific use,

8     which to me, hasn't yet been identified.  I mean, I have a

9     lot of questions on both sides as to the use that this

10    information would be put to if it were released, as well as

11    the Debtors' reasons, other than the floodgate reason for

12    not disclosing it.

13             But, I mean, I have cited to me, for example,

14    cases that rely on the Agent Orange case, which has been

15    overruled by the Circuit on the presumption.  I just don't

16    think the briefing is sufficient for an issue of this

17    magnitude and with this potential level of floodgates.  If

18    we're going to force the floodgates issue, in other words,

19    and get a ruling from me, I want to make sure I have a full

20    record and full briefing on it because they're important

21    points and they should (indiscernible).

22             MAN:  Your Honor, may I address the Court?

23             THE COURT:  Well, let me just -- let me just say

24    one more thing.  One issue that has not been briefed that is

25    also, I think, one that goes to what the nature of cause is

Page 31

1    here, and again, I want to view that dispute among the

2    District Courts hasn't been fully briefed either.  But the

3    other issue is this, there is a Protective Order here,

4    parties have relied on it.

5              There was extensive discovery here without what

6    would otherwise have been, I believe, protracted a difficult

7    fight, so would discovery and delay because of it.  And the

8    Order itself provides, in Paragraph 65, just that, "A

9    receiving party may challenge a designation with respect to

10   discovery material that is or would be discoverable.  If a

11   receiving party believes that discovery material is not

12   properly designated as protective information, such

13   receiving party will identify --", etc. etc. etc.

14             So, my question is, are we fighting here about

15   whether, in fact, it fits within the definition of

16   "confidential information" in Paragraph 8, which is broad

17   and includes, besides the personal information in I and II,

18   which, I'm sure the two parties would agree would not be

19   produced.  Also, in VI, "Research, technical, commercial,

20   financial, banking or investment information the protecting

21   party has maintained as confidential."

22             So, if the issue is, under this Order, all you

23   could do, if you're objecting under 65 is contest whether

24   something is research, technical, commercial, financial,

25   banking or investment information the protecting party has

Page 32

1   maintained as confidential, that's a pretty easy evidentiary

2   determination.  Was it protected as confidential or not?

3   Was it kept confidential?

4          On the other hand, if, as I think, the NAS

5   Committee is saying, the issue is whether, not only that,

6   but also whether it should be maintained as confidential,

7   that's a very different determination.  And no-one's really

8   briefed that issue in the context of the caselaw.  I do have

9   cases that interpret various orders and sometimes courts

10  take comfort that they're not curtailing discovery because

11  the order still has protections within it that would apply.

12         There are other times when courts open it up, but

13  you know, the Supreme Court in the Seattle case said,

14  there's no public right, including under the First

15  Amendment, to override 26C.  The Second Circuit in the

16  Street.com case and the McAllister case, that is cited and

17  construed, took the same view, more specifically.

18         So, I think I need more briefing, but I also think

19  that given what I've seen of the documents which were

20  produced in camera, as per the Paragraph 65, this isn't

21  necessarily a floodgates issue if you just say 1-2-3 of

22  these can be produced in the following way for the NAS

23  Committee to use.

24         So, I would like to adjourn this so you can have

25  that discussion and provide the further briefing on those

Page 33

1   two issues, the proper extent or definition of cause under

2   26C, particularly where, this is the second issue, there's

3   an extent Protective Order that's been in place for two

4   years that is worded like this one.  So, I'm throwing that

5   out.

6           I know you all have probably prepared oral

7   argument for me today, but that's just where I am at this

8   point.

9           MR. MCCLAMMY:  Understood, Your Honor.  Jim

10  McClammy with David Polk on behalf of the Debtors.  I think

11  that that makes sense.  I think it may make sense for us to

12  find the time to convene again with the folks from the NAS

13  Committee, the UCC and Mr. Murray on behalf of the schools,

14  see if we can reach some agreement, as Your Honor, suggests,

15  on targeted relief for a specific use and then if, not we

16  can submit additional briefing to Your Honor for an ultimate

17  resolution.

18          THE COURT:  Okay.  All right.

19          MR. CREADON:  Your Honor, this is Don Creadon on

20  behalf of the NAS Group, and we will follow the Court's

21  directions.  When we get off this call today, we will be

22  making a call over to the Debtors to try to arrange to move

23  the matter forward and to have an open, frank and hopefully

24  constructive discussion and perhaps come to some type of

25  resolution and not have to appeal before you, Judge, again

1    in this matter on this particular --

2            THE COURT:  That's the type of discussion I want.

3    So, I'll adjourn this, whether it's to the next one or the

4    one after that I think depends on what you all discuss as

5    far as the briefing schedule.

6            MR. HUEBNER:  Thank you, Your Honor.

7            MR. CREADON:  Thank you, Your Honor.

8    THE COURT:  Okay.  Thank you.  All right, so that, I

9    believe, concludes this morning's hearing.

10

11           (Whereupon these proceedings were concluded at

12   10:57 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  C E R T I F I C A T I O N

 2

 3       I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  February 18, 2022
```