Hearing Date and Time: March 9, 2022 at 1:00 p.m. (prevailing Eastern Time)
Objection Date and Time: March 8, 2022 at 7:00 p.m. (prevailing Eastern Time)
Reply Date and Time: March 9, 2022 at 11:00 a.m. (prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF HEARING REGARDING MOTION OF DEBTORS PURSUANT TO 11
U.S.C. § 105(a) AND 363(b) FOR ENTRY OF AN ORDER AUTHORIZING AND
APPROVING SETTLEMENT TERM SHEET**

**PLEASE TAKE NOTICE** that on March 3, 2022, the above-captioned debtors and

debtors in possession in these proceedings (collectively, the "**Debtors**") filed the *Motion of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Debtors Pursuant to 11 U.S.C. § 105 and 363(B) for Entry of an Order Authorizing and Approving Settlement Term Sheet* (the "**Motion**"). A hearing on the Motion will be held on **March 9, 2022 at 1:00 p.m. (prevailing Eastern Time)** (the "**Hearing**") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "**Bankruptcy Court**"), or at such other time as the Bankruptcy Court may determine.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or a later hearing. The Debtors will file an agenda before the Hearing, which may modify or supplement the motions to be heard at the Hearing.

PLEASE TAKE FURTHER NOTICE that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted **via Zoom for Government**® so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court.[2]

PLEASE TAKE FURTHER NOTICE that parties wishing to **participate in** the Hearing are required to register their appearance by 4:00 p.m. (prevailing Eastern Time) the day before the Hearing at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy

---

[2] A copy of General Order M-543 can be obtained by visiting http://www.nysb.uscourts.gov/news/court-operations-under-exigent-circumstances-created-covid-19.

Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed

with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including

attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which

can be found at http://www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-

ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to

Chambers), in accordance with the customary practices of the Bankruptcy Court and General

Order M-399, to the extent applicable, and shall be served in accordance with the *Second

Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures*

entered on November 18, 2019 [ECF No. 498], so as to be filed and received no later than **March

8, 2022 at 7:00 p.m. (prevailing Eastern Time)** (the "**Objection Deadline**"). Any replies shall

be filed by **March 9, 2022 at 11:00 a.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted upon default; *provided* that

objecting parties shall attend the Hearing via Zoom for Government so long as General Order M-

543 is in effect or unless otherwise ordered by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served

with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the

Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion,

which order may be entered without further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that copies of the Motion may

be obtained free of charge by visiting the website of Prime Clerk LLC at

https://restructuring.primeclerk.com/purduepharma.    You may also obtain copies of any

3

pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

Dated:    March 3, 2022
          New York, New York

                                       DAVIS POLK & WARDWELL LLP

                                       By:  */s/ Eli J. Vonnegut*
                                       DAVIS POLK & WARDWELL LLP
                                       450 Lexington Avenue
                                       New York, New York 10017
                                       Telephone: (212) 450-4000
                                       Facsimile:  (212) 701-5800
                                       Marshall S. Huebner
                                       Benjamin S. Kaminetzky
                                       Eli J. Vonnegut
                                       Christopher S. Robertson

                                       *Counsel to the Debtors*
                                       *and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 105(a) AND 363(b)
FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING SETTLEMENT
TERM SHEET**

Purdue Pharma L.P. ("**PPLP**") and its affiliated debtors in the above-captioned chapter

11 cases (the "**Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**"), file

this motion (the "**Motion**") seeking entry of an order, substantially in the form attached hereto as

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Exhibit A** (the "**Order**"), in furtherance of the agreement set forth in the proposed settlement term sheet (the "**Term Sheet**")[2] attached hereto as **Exhibit B** among (i) certain Sackler family members and trusts (the "**Sackler Mediation Parties**"), (ii) the Eight States and the District of Columbia that appealed the Confirmation Order (as defined in the Term Sheet and herein, the "**Nine**") and (iii) the Debtors that was negotiated in mediation (the "**Mediation**") before The Honorable Shelley C. Chapman (the "**Mediator**").  In further support of this Motion, the Debtors respectfully represent as follows:

**Preliminary Statement**[3]

1.      On January 3, 2022, this Court ordered the Nine and the Sackler Mediation Parties back to mediation to explore settlement of the Nine's objections to the Plan in light of the December 16, 2021 decision (the "**District Court Decision**")  of the United States District Court for the Southern District of New York ("**District Court**") vacating the Confirmation Order.  The Mediation has been a notable success. With the critical assistance of the Mediator, the Nine and the Sackler Mediation Parties have reached an agreement, memorialized in the Term Sheet, that secures an additional $1.175 billion in guaranteed payments, up to $500 million in contingent payments, and several material and meaningful noneconomic concessions from the Sackler Mediation Parties contingent on the approval of this Court and consummation of the Plan.  Under

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Term Sheet, the *Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* (the "**Plan**"), the *Order Appointing the Honorable Shelley C. Chapman as Mediator*, dated January 3, 2022 [ECF No. 4260] (the "**Appointment Order**") or the *Order Establishing the Terms and Conditions of Mediation Before the Honorable Shelley C. Chapman*, dated January 3, 2022 [ECF No. 4261] (the "**Mediation Terms and Conditions Order**"), as applicable.

[3] The description of the Term Sheet set forth in this Motion is qualified in its entirety by reference to the Term Sheet attached hereto as **Exhibit B**.

2

the settlement reached, the Nine will not oppose the appeal of the District Court Decision currently being prosecuted by the Debtors and the many other supporters of the Plan, given that authorization to consummate the Plan is necessary for implementation of the settlement contemplated by the Term Sheet.

2.     Under the Term Sheet, the Sackler Mediation Parties would commit to pay an additional (i) $723,111,111.13, with potential further payments of up to an additional $500 million from the net proceeds of the sale of the IACs, to the Master Disbursement Trust (to be distributed pursuant to the Plan to abate the opioid crisis), (ii) $175 million to the Master Disbursement Trust on the Effective Date in lieu of the requirements with respect to the Foundations provided for in the Plan, also enhancing Plan distributions to abate the opioid crisis, and (iii) $276,888,888.87, which will similarly be devoted exclusively to opioid-related abatement, including support and services for survivors, victims and their families, to a supplemental opioid abatement fund (the "**SOAF**") established, structured, and administered by the Nine (and also benefiting New Hampshire), in each case following consummation of the Plan and on the schedule and terms described in more detail in the Term Sheet.  The Sackler Mediation Parties have also agreed to material and meaningful non-monetary terms and concessions and the Debtors have agreed to further supplement the Public Document Repository described in the Plan.

3.     These $1.175–$1.675 billion in Sackler commitments are in addition to the $4.325 billion to be paid under the current Shareholder Settlement Agreement (and substitute for their current commitment to replace the controlling members of Foundations having at least $175 million in assets).  As a result, the aggregate payments by the Sackler Mediation Parties would total $5.5 to $6.0 billion, with all creditors receiving the same or better recoveries than under the

current Plan.  $5.5 billion is approximately 97% of the total amount of all non-tax cash distributions that Purdue made to the Sacklers since January 1, 2008, nearly 12 years prior to the Petition Date.  *See Declaration of Richard A. Collura* [ECF No. 3410] Appendix A (*Cash Transfers of Value Analysis*) at 11.

4.      There are also material non-financial terms.  The Sackler Mediation Parties have agreed to allow any institution or organization in the United States to remove the Sackler name from physical facilities and academic, medical, and cultural programs, scholarships, endowments, and the like, subject to certain conditions regarding the procedure for announcing such removal set forth in the Term Sheet.  The Sackler Mediation Parties have also agreed that a spokesperson will issue the statement annexed to the Term Sheet as Attachment C on their behalf, which includes an expression that they "sincerely regret that OxyContin, a prescription medicine that continues to help people suffering from chronic pain, unexpectedly became part of an opioid crisis that has brought grief and loss to far too many families and communities." For their part, the Debtors have agreed to supplement the Public Document Repository with additional privileged materials, including additional material related to lobbying, public relations, compliance and prior advice from certain parties related to marketing.

5.      In addition, the final report of the Mediator strongly recommends and requests, while stating that the Mediator is of course aware that the conduct of the hearing on this Motion is entirely in the Court's discretion, that the Court set aside substantial time during the hearing on this Motion to hear from personal injury victims (including those who have lost loved ones, as well as children born with NAS and/or their parents/guardians), selected pursuant to such process as the Court finds appropriate, as representatives of those affected by the opioid crisis, and that at

least one member of the Side A and Side B branches of the Sackler Families also attend the full hearing by Zoom. The Mediator further recommends that no other participant in the hearing on this Motion, including the members of the Sackler Families in attendance, be expected or permitted to respond to or comment on the statements made by such individuals. The Debtors strongly support this recommendation and accordingly request that the Court grant the Mediator's request.

6.      Under the Term Sheet, each member of the Nine will agree to withdraw its opposition to the appeal of the District Court Decision (the "**Appeal**") currently being prosecuted by the Debtors and the other Plan supporters, and (along with New Hampshire) to consensually grant the releases provided under the Plan upon its effectiveness. Accordingly, the Plan will no longer be opposed by any state in the country and no release will be imposed on any state over its objection.

7.      The deadline for the Nine to file their appellees' briefs in the Appeal is March 11, 2022. It is critical that the Term Sheet be approved before that time, which is why the Debtors—constrained by court-ordered confidentiality until a final settlement was reached—have filed this Motion on shortened notice, something they have very rarely done in these Cases.

8.      This extraordinary achievement offers the best chance to preserve—and in fact materially increase—the provision of billions of dollars of value and to dedicate that value to desperately needed opioid abatement efforts as soon as possible. Effectuating the agreements

5

reflected in the Term Sheet is profoundly in the best interest of the estates and the American people. The Debtors respectfully request that the Court approve the Motion.

## Relief Requested

9.      By this Motion, and pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request entry of an Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to take any actions that may be necessary or desirable in furtherance of the agreement reflected in the Term Sheet attached hereto as **Exhibit B** among the Covered Parties, the Nine and the Debtors, and to pay or reimburse certain reasonable and documented fees and expenses of outside counsel of the Nine as contemplated by the Term Sheet in accordance with the procedures with respect to authorization of payment of the fees and expenses of the professionals of the Debtors and the Creditors' Committee set forth in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**").

## Jurisdiction and Venue

10.     The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Bankruptcy Rule 7008, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

11.    Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## General Background

12.    On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary Case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 27, 2019, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors.  No trustee has been appointed in these Cases.

13.    These Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court in each of the Cases.

14.    Additional information regarding the Debtors and the Debtors' Plan can be found in the *Modified Bench Ruling* [ECF No. 3786] (the "**Modified Bench Ruling**"), the Confirmation Order, and the record of the hearing regarding confirmation of the Plan (the "**Confirmation Hearing**"), which the Debtors hereby incorporate by reference.

## The Appeals

15.    On September 17, 2021, this Court issued the Confirmation Order confirming the Plan, an integral component of which was the agreement reached among the Debtors' creditors and the Sackler Mediation Parties (the "**Shareholder Settlement**")—reached following three separate mediations before highly capable mediators—that provided for (among other things) $4.325 billion in aggregate settlement payments to be funded by the Sackler families and be

7

distributed pursuant to the Plan and the replacement of the controlling members of Foundations with at least $175 million in assets.

16.     The Nine, among other parties, appealed the Confirmation Order to the District Court.  On December 16, 2021 the District Court issued the District Court Decision vacating the Confirmation Order.

17.     Upon motion by the Debtors and other Plan proponents, the District Court certified the District Court Decision for immediate appeal to the United States Court of Appeals for the Second Circuit (the "**Second Circuit**").  The Second Circuit granted the petitions for leave to appeal and requests to expedite the appeals, setting the following briefing schedule: (i) appellants' briefs due by February 11, 2022, (ii) appellees' briefs due by March 11, 2022, (iii) reply briefs due by March 24, 2022, (iv) appendices and final briefs due by March 28, 2022, and (v) oral argument to be scheduled for the week of April 25, 2022, or as soon thereafter as practicable.

## The Mediation

18.     On January 3, 2022, this Court entered the Appointment Order [ECF No. 4260] and the Mediation Terms and Conditions Order [ECF No. 4261].  On January 13, 2022, this Court entered an order [ECF No. 4286] initially extending the Termination Date of the mediation to and including February 1, 2022.

19.     On January 31, 2022, the Mediator filed the *Mediator's Interim Report* [ECF No. 4316], which noted that the Mediation to such date had included approximately 100 telephonic meetings that had been held with the Nine and the Covered Parties, as well as dozens of additional telephonic meetings, including with staff of the Nine, certain Attorneys General of the Nine, and certain other parties, including the Debtors and counsel to various ad hoc groups. As further

detailed in such report, the Mediator conducted an in-person Mediation on January 25, 2022 (from approximately 8:30 a.m. until approximately 10:00 p.m.), and on January 26, 2022 (from approximately 8:30 a.m. until approximately 9:00 p.m.), with additional discussions continuing thereafter.  By order dated February 1, 2022 [ECF No. 4319], the Court further extended the Termination Date of the mediation to February 7, 2022 at 11:59 p.m.

20.    On February 8, 2022, the Mediator filed the *Mediator's Second Interim Report* [ECF No. 4338], detailing, among other efforts, upwards of 150 telephonic meetings with the Nine and the Covered Parties, and extensive negotiations undertaken by certain Attorneys General and staff of the Nine, as well as the Covered Parties.  By order dated February 8, 2022 [ECF No. 4339], the Court further extended the Termination Date of the mediation to February 16, 2022 at 5:00 p.m.

21.    On February 18, 2022, the Mediator filed the *Mediator's Third Interim Report* [ECF No. 4369], stating that the Mediator designated certain Additional Parties and detailing dozens of telephonic and Zoom meetings between and among the Nine as well as countless email exchanges and telephone calls between and among these parties.  Such report also stated that the Sackler Families had authorized disclosure that they had made a settlement proposal that included "$1.175 billion in total committed cash and up to an additional $500 million of cash consideration contingent on the net proceeds of IAC sales."  By order dated February 18, 2022 [ECF No. 4370], the Court further extended the Termination Date of the mediation to February 28, 2022 at 8:00 p.m.

22.    On March 2, 2022, the Mediator filed the *Mediator's Notice of Extension of Mediation* Sine Die [ECF No. 4403], stating that pursuant to Paragraph 2 of the Mediation Terms

and Conditions Order, the Mediator has determined to extend and has extended the Termination

Date sine die.

23.      On March 3, 2022, the Mediator filed the *Mediator's Fourth Interim Report*, which

stated, among other things, that the Mediation Parties had reached agreement on the Term Sheet,

a copy of which is attached thereto.

## The Term Sheet

24.      The Term Sheet provides that the Sackler Mediation Parties will pay an additional

(i) $723,111,111.13 to the MDT on the schedule attached to the Term Sheet, (ii) up to an

additional $500 million, consisting of 90% of the amount by which specified net proceeds from

the sale of the IACs exceed $4.3 billion, to the MDT, (iii) $175 million to the MDT on the

Effective Date in lieu of the requirements with respect to the Foundations under the Plan, and (iv)

$276,888,888.87 to the SOAF, with the allocation of the SOAF funds as set forth in the Term

Sheet.  The schedule on which such payments are due, ranging from the Effective Date through

June 30, 2039, and which payments are due from Sackler family A-Side Payment Parties and

which payments are due from the Sackler family B-Side Payment Parties, are set forth on

Attachment A to the Term Sheet.

25.      The Sackler Mediation Parties have also agreed, upon occurrence of the Effective

Date of the Plan, to allow any institution or organization in the United States to remove the Sackler

name from physical facilities and academic, medical, and cultural programs, scholarships,

endowments, and the like, subject to certain conditions including that any statements issued by

the institution in connection with or substantially concurrent with such renaming will not

disparage the Sacklers (while providing that such condition will not restrict any academic or similar work at such institution or organization).

26.     The Term Sheet makes clear that the Nine may cite any unsealed or public trial testimony or Sackler public statements, including any expressions of regret, by members of the Sackler families, including when announcing the settlement, and provides that the statement annexed to the Term Sheet as Attachment C will be issued by a spokesperson for the Sackler families within two days of filing of a Mediator's report indicating acceptance of the Term Sheet.

27.     The Term Sheet also provides that certain additional privileged materials, including additional material related to lobbying, public relations, compliance and prior advice from certain parties related to marketing, which is specified on Attachment B to the Term Sheet, will be provided by the Debtors to the Public Document Repository.

28.     Under the Term Sheet, the Nine agree to take a variety of actions indicating their non-objection to the Appeal at the Second Circuit and non-pursuit of their appeal of the Confirmation Order, subject to a carve-out allowing for amicus briefs only at the merits stage in the Supreme Court should the Supreme Court grant certiorari with respect to the Appeal. Importantly, it is critical that these provisions become effective prior to March 11, 2022, which is the deadline for the Nine to file appellees' briefs with the Second Circuit.

29.     In order to implement the agreement provided for in the Term Sheet (and of course all conditioned entirely on one or more orders from the District Court for the Southern District of New York or the Court of Appeals for the Second Circuit allowing for consummation of the Plan), the Shareholder Settlement Agreement will be revised to reflect the additional MDT payments and non-economic terms provided for therein, and a new direct settlement agreement among the

11

Sacklers and the Nine (the "**Direct Settlement Agreement**") will be entered into with respect to the payments by the Sacklers to the SOAF. The MDT and SOAF will enter into customary intercreditor arrangements that will provide that SOAF is secured on a *pari passu* basis with MDT and that in the event that any of the payments under the Direct Settlement Agreement set forth on Attachment A to the Term Sheet are not made when due, SOAF (as governed by an intercreditor agreement) will have the same enforcement rights on account of such payments as would be available to the MDT on account of missed payments under the Shareholder Settlement Agreement.   The covenants in favor of the MDT in the existing Shareholder Settlement Agreement will not change, other than to allow for the Direct Settlement Agreement (and will not be incorporated into the Direct Settlement Agreement).[4]

30.     The Term Sheet also contemplates that the Debtors will pay or reimburse certain reasonable and documented fees and expenses of outside counsel of the Nine, subject to approval by this Court and compliance with the procedures with respect to authorization of payment of the fees and expenses of the professionals of the Debtors and the Creditors' Committee set forth in the Interim Compensation Order.  The Debtors agree to pay or reimburse the reasonable and documented fees and expenses of outside counsel of the Nine in the Cases (including any adversary proceedings, and any appeals thereunder) (the "**Specified Payments**"), in each case accrued through the date of entry of the Order and thereafter in furtherance of the agreements set

---

[4] The Proposed Order authorizes the Debtors to (i) revise the Shareholder Settlement Agreement as needed to provide for the incremental payments agreed to by the Sackler Mediation Parties under the Term Sheet and allow for the Direct Settlement Agreement, (ii) provide the additional documents specified in the Term Sheet to the Public Document Repository once established and (iii) take such other steps as may be necessary or desirable in furtherance of the agreements reflected in the Term Sheet and this Order and finds that the agreements reflected in the Term Sheet are in the best interests of the Debtors, their estates, creditors and all parties in interest and do not contravene any prior orders of the Court in these Cases or any provision of the Bankruptcy Code.

forth in the Term Sheet. These payments and reimbursements, which total less than $4 million in the aggregate as of the date hereof, are in addition to, and distinct from, any payments to which States or their professionals may be entitled under section 5.8 of the Plan, which shall be without duplication of any amounts approved and paid pursuant to the relief requested by this Motion.

### Basis for Relief Requested

31.     The Debtors' decision to seek authorization to effectuate the agreement in the Term Sheet, including the authority to pay or reimburse the Specified Payments, is a sound exercise of their business judgment under section 363(b) of the Bankruptcy Code.   Section 363(b)(1) of the Bankruptcy Code empowers the Court to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, the Second Circuit requires a debtor to show that the decision to use the property outside of the ordinary course of business was based on the debtor's sound business judgment in light of "all salient factors" relating to the bankruptcy case.  *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *see also In re Hostess Brands, Inc.*, 2013 WL 82914, at *4 (Bankr. S.D.N.Y. Jan. 7, 2013) (RDD) (noting that, *inter alia*, motions to authorize the "sale of property outside the ordinary course," involve "the exercise, as a final call, of the bankruptcy judge's judgment as to the propriety of the action to be taken") (citing *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir.1993)); *In re MF Global Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) ("Although not

specified by section 363, the Second Circuit requires that transactions under section 363 be based on the sound business judgment of the debtor or trustee.").

32.     The relief sought herein is also well within the Court's equitable powers.  Section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."   11 U.S.C. § 105(a).  As the Second Circuit has explained, section 105(a) of the Bankruptcy Code "grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."  *Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) (internal citations omitted).  Further, "[a] bankruptcy court has equitable authority under § 105(a) 'to assure the orderly conduct of the reorganization proceedings.'"  *Kagan v. Saint Vincents Catholic Med. Ctrs. (In re Saint Vincents Catholic Med. Ctrs.)*, 581 Fed. App'x 41, 43 (2d Cir. 2014) (citing *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985)).

33.     The Court determined that the Shareholder Settlement is "in the best interests of the Debtors, their estates, and the Holders of Claims and Interests" and is "fair, equitable, reasonable" on the basis of the extensive record of the confirmation hearing and these chapter 11 cases.  *See* Confirmation Order ¶ KK(c); *see generally Modified Bench Ruling* [ECF No. 3786] at 71-103.  That conclusion has not been disturbed on appeal, and no further approval of the Shareholder Settlement is necessary or is being requested herein.  However, implementation of the resolution provided for in the Term Sheet is predicated upon consummation of the Plan—which requires that the District Court Decision no longer bar consummation of the Plan.  The Debtors therefore seek authorization to enter into the agreements contemplated under the Term

Sheet and to take any other actions that may be necessary or desirable to effectuate the settlement encompassed in the Term Sheet in advance of restoration of authorization to consummate the Plan. Of course, none of this will be relevant or of any effect unless the Court of Appeals for the Second Circuit or the District Court, as applicable, issue orders or rulings allowing the consummation of the Plan as materially enhanced by the Term Sheet.

34.    The resolution provided for in the Term Sheet is manifestly in the best interest of the Debtors, their Estates, and all of their stakeholders. The benefits are myriad and all in favor of the estates. First, the Term Sheet provides for substantial additional payments from the Sackler Mediation Parties that would materially increase the value of the Debtors' estates and the amount of funds that will be dedicated to opioid abatement. Under that resolution, there will be no change to the amount or payment schedule for the amounts to be paid under the Shareholder Settlement Agreement that the Court has already approved. All of the incremental payments that the Sackler Mediation Parties have agreed to under the Term Sheet are in addition to the previously agreed settlement payments. Term Sheet at 1. Second, the Term Sheet does not relieve the Sackler Mediation Parties of any obligations under the existing Shareholder Settlement (except with respect to the obligations concerning the Foundations under the Plan, in lieu of which $175 million will be paid in cash to the MDT on the Effective Date and represents an improvement to the Plan as it eliminates the contingency of obtaining IRS and other approvals, which in turn, will permit consummation of the Plan and the deployment of abatement resources immediately upon satisfaction of all other conditions). Id; see Plan at Section 5.7(l), 12.3(c). Third, the Debtors have agreed to supplement the Public Document Repository, which this Court has described as an important feature of the Plan that would "guide legislatures and regulators" in the future, with

15

specified additional documents.  Term Sheet at 2 & Attachment B; Modified Bench Ruling at 156.  The contemplated expansion of the scope of documents to be provided does not require Court approval.  <u>Fourth</u>, the Term Sheet will resolve a number of objections to the Plan and Shareholder Settlement, which will increase the likelihood of the effectiveness of the Plan and an expeditious resolution of these Cases.  *See* Term Sheet at 3-4.  <u>Fifth</u>, the non-economic concessions by the Sacklers are of great importance to many parties in the cases.

35.    Authorization to take actions in furtherance of an agreement that resolves the issues that this Court directed the parties to address in Mediation and that provides very significant additional value to the Estates, falls well within the Court's broad equitable powers under Section 105(a) of the Bankruptcy Code as an appropriate order in furtherance of the prior order authorizing the Mediation and for purposes of assuring the orderly and efficient conduct of the reorganization proceedings.

36.    Furthermore, a sound business purpose clearly exists for the Debtors' agreement to pay or reimburse the Specified Payments.  The Nine have facilitated, and are making ongoing efforts to finalize and implement, the settlement reflected in the Term Sheet, which would bring significant additional value into the Debtors' estates.  This Court and other courts have approved the payment of professional fees of unsecured creditors pursuant to section 363(b) under similar circumstances.  *See, e.g., In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Dec. 2, 2019) [ECF No. 553] (approving payment of certain fees and expenses of the Ad Hoc Committee); *Id.* [ECF No. 2695] (approving the payment of certain fees and expenses of the MSGE Group); *Id.* [ECF No. 4184] (approving the payment of certain fees and expenses of the Non-Consenting States Group, the Ad Hoc Committee, and the MSGE Group); *In re AMR Corp.*,

16

No. 11-15463 (SHL) (Bankr. S.D.N.Y. Sept. 21, 2012) [ECF No. 4652] (approving payment of an ad hoc group of unsecured creditors' professional fees pursuant to a fee letter approved under section 363(b)); *In re ASARCO, L.L.C.*, 650 F.3d 593 (5th Cir. 2011) (affirming the ruling of the district court and bankruptcy court to approve payment of bidders' due diligence and work fees requested pursuant to section 363); *U.S. Trustee v. Bethlehem Steel Corp.*, Case No. 02 Civ. 2854 (MBM), 2003 WL 21738964, at *10 (S.D.N.Y. July 28, 2003) (affirming bankruptcy court's approval of reimbursement of creditors' counsel's costs and expenses pursuant to sections 363(b) and 105(a)).

37.    The Debtors respectfully submit that this Court authorize the Debtors to take any actions that may be necessary or desirable in furtherance of the agreement reflected in the Term Sheet pursuant to Bankruptcy Code sections 105(a) and 363(b)(1), including the payment or reimbursement of the Specified Payments.

## Notice

38.    Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498] and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any other person or entity with a particularized interest in the subject matter of this Motion (the "**Notice Parties**").  The Debtors respectfully submit that, in view of the facts and circumstances, such notice is sufficient and no further notice is required. Moreover, on March 1, 2022, the Debtors provided the then current copy of this motion to counsel the UCC, AHC, and former members of

the Non-Consenting States Group other than the Nine, all of whom had become Additional

Mediation Parties.

## **No Previous Request**

39.     No previous request for the relief sought herein has been made by the Debtors to

this or any other court.


WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief

requested herein and such further relief as the Court may deem just and appropriate.


Dated:    March 3, 2022
          New York, New York


                              DAVIS POLK & WARDWELL LLP

                              By:   */s/ Eli J. Vonnegut*_____
                              DAVIS POLK & WARDWELL LLP
                              450 Lexington Avenue
                              New York, New York 10017
                              Telephone: (212) 450-4000
                              Facsimile:  (212) 701-5800
                              Marshall S. Huebner
                              Benjamin S. Kaminetzky
                              Eli J. Vonnegut
                              Christopher S. Robertson

                              *Counsel to the Debtors*
                              *and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

### ORDER PURSUANT TO 11 U.S.C. § 105 AND 363(B)
### AUTHORIZING AND APPROVING SETTLEMENT TERM SHEET

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"), for entry of an order, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") approving the agreement set forth in Term Sheet attached to the Motion as **Exhibit B**, as more fully set forth in the Motion; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

been adequate and appropriate under the circumstances, and it appearing that no other or further

notice need be provided; and the Court having reviewed the Motion; and the Court having held a

hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and the

Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein; and the Court having determined that

the relief requested is in the best interests of the Debtors, their estates, creditors and all parties in

interest; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor,

      **IT IS HEREBY ORDERED THAT**:

      1.      The Motion is granted as provided herein.

      2.      The Court finds that the agreements reflected in the Term Sheet are in the best

interests of the Debtors, their estates, creditors and all parties in interest, and that such

agreements do not contravene any prior orders of the Court in these Cases or any provision of the

Bankruptcy Code and that the actions taken by members of the Sackler families and the Nine or

their related parties in accordance with the Term Sheet are taken in connection with the Chapter

11 Cases for purposes of Section 10.7 of the Plan.

      3.      Pursuant to section 105(a) and 363(b) of the Bankruptcy Code, and in all events

effective only upon the entry of one or more orders by the Court of Appeals for the Second

Circuit or the United States District Court for the Southern District of New York permitting the

consummation of the Plan as enhanced by the Term Sheet, the Debtors are authorized to (i)

revise the Shareholder Settlement Agreement as needed to provide for the incremental payments

agreed to by the Sackler Mediation Parties under the Term Sheet and allow for the Direct

Settlement Agreement, (ii) provide the additional documents specified in the Term Sheet to the

Public Document Repository once established and (iii) take such other steps as may be necessary or desirable in furtherance of the agreement reflected in the Term Sheet and this Order.

4.      The Debtors' agreement to pay or reimburse the Specified Payments upon consummation of the Plan as enhanced by the Term Sheet is approved and the Debtors are authorized to make such payments at such time in accordance with the terms and conditions of the Term Sheet and this Order.  The authorization of the Debtors to make such payments shall be subject, *mutatis mutandis*, to the procedures with respect to authorization of payment of the fees and expenses of the professionals of the Debtors and the Creditors' Committee set forth in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (as may be modified or amended by any subsequent order of the Court with respect thereto, the "**Interim Compensation Order**") including, for the avoidance of doubt, the filing of Monthly Fee Statements and Applications (in each case as defined in the Interim Compensation Order), Interim Fee Hearings (as defined in the Interim Compensation Order), the expiration of the Objection Deadline (as defined in the Interim Compensation Order) or resolution of any Objections (as defined in the Interim Compensation Order) with respect to each Monthly Fee Statement, and the 20% holdback with respect to fees until further order of the Court; *provided* that the standard for authorization of payment of the attorneys' fees and expenses of each of the Nine shall be whether such fees and expenses are (a) reasonable and documented and (b) reimbursable under the Term Sheet; *provided further* that, for the avoidance of doubt, the attorneys of the Nine shall not be considered retained professionals of the Debtors or Creditors' Committee and the retention of the attorneys of the Nine shall not be required to satisfy the standards for retention set forth in sections 327-328 or 1103 of the Bankruptcy Code.

4

5.      The Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation and enforcement of this Order, including the

Term Sheet and the definitive documents to be entered into pursuant thereto (including the Direct

Settlement Agreement).

Dated: _____, 2022
            New York, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Term Sheet**

**SETTLEMENT PROPOSAL[1]**

| Incremental Economic Consideration and Accommodations | 1) On the terms and schedule set forth on **Attachment A** hereto, $1 billion in incremental cash shall be paid by the Sackler family members or trusts as follows: |
|---|---|
| |    a) $112,236,111.11 is allocated to California, of which amount California elects that $21,222,222.22 shall be paid to the SOAF (defined below) and allocated to California, with the remainder to be paid to the Master Disbursement Trust as additional consideration under the Shareholder Settlement Agreement. |
| |    b) $785,652,777.78 is allocated collectively to Connecticut, Delaware, Maryland, Oregon, Rhode Island, Vermont, and the District of Columbia, of which amount $148,555,555.54 will be paid to the SOAF ($21,222,222.22 allocated to each of Connecticut, Delaware, Maryland, Oregon, Rhode Island, Vermont, and the District of Columbia) with the remainder to be paid to the Master Disbursement Trust as additional consideration under the Shareholder Settlement Agreement. |
| |    c) $93,111,111.11 is allocated to Washington, which elects to retain control of such full amount through the SOAF. |
| |    d) $14,000,000 is allocated and will be paid to New Hampshire (which is not a party hereto but has confirmed its support for this agreement) from the SOAF. |
| |    e) Cumulatively, (i) $723,111,111.13 in incremental cash consideration shall be paid to the Master Disbursement Trust as additional consideration under the Shareholder Settlement Agreement and (ii) $276,888,888.87 shall be paid by the Sackler family members or trusts directly to a fund established, structured, and administered by the Nine[2] (the "Supplemental Opioid Abatement Fund" or "SOAF") on the terms and schedule set forth on Attachment A hereto and otherwise on the same payment terms as under the Shareholder Settlement Agreement. Of the first $200,000,000 paid to the SOAF, 95.5% will be allocated equally among the Nine, and 4.5% will be allocated to New Hampshire. Funds in the SOAF shall be devoted exclusively to opioid-related abatement, including support and services for survivors, victims and their families and each member of the Nine shall have the right to direct allocation of the SOAF funds for such purposes in the amounts and as set forth on **Attachment D** hereto. |
| | 2) The Nine acknowledge and confirm that the Sackler family members and trusts had no role in determining the allocation of settlement consideration between the SOAF and the Master Disbursement Trust or the allocation of the SOAF funds among the Nine or to any other State as set forth in this Term Sheet. |
| | 3) In addition, (i) $175 million in incremental cash shall be paid by the Sackler family members or trusts under the Shareholder Settlement Agreement to the Master Disbursement Trust on the Effective Date in lieu of any obligations relating to the Foundations, including appointment of the Continuing Foundation Members as members of the Foundations and (ii) as further incremental cash consideration under the Shareholder Settlement Agreement, the Sackler family members or trusts shall pay to the Master Disbursement Trust, up to a maximum of $500 million, 90% of the amount by which aggregate Net Proceeds (without giving effect to the deduction of Unapplied Advanced Contributions) with respect to all IAC Payment Parties exceeds $4.3 billion. |
| | 4) All amounts paid to the Master Disbursement Trust will be further distributed in accordance with the terms of the Plan. |
| | 5) The Direct Settlement Agreement (hereinafter defined) shall benefit from, and be *pari passu* with, the same collateral applicable to the existing Shareholder Settlement Agreement. In the event that any of the payments under the Direct Settlement Agreement set forth on |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [ECF No. 3726] (the "Plan") or the Shareholder Settlement Agreement attached as Exhibit AA to the *Notice of Filing of Seventeenth Plan Supplement Pursuant to the Eleventh Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [ECF No. 3711].

[2] The "Nine" means the eight states and the District of Columbia that appealed the Bankruptcy Court's order confirming the Plan.

|  |  |
|---|---|
|  | **Attachment A** hereto are not made when due, SOAF will have the same enforcement rights on account of such payments as would be available to the Master Disbursement Trust on account of missed payments under the existing Shareholder Settlement Agreement. |
|  | 6) There shall not be additional covenants or changes to the credit support arrangements related to the existing Shareholder Settlement Agreement as a result of the additional payments described above. |
|  | 7) The Sacklers shall procure all necessary corporate and judicial approvals to authorize the applicable Sackler payment parties to enter into the Direct Settlement Agreement and the modified Shareholder Settlement Agreement and all ancillary arrangements and shall execute and deliver these Agreements to the other Term Sheet Parties as soon as is reasonably practicable or as otherwise expressly provided herein. |
|  | 8) This Term Sheet summarizes the principal terms of the settlement among the parties. |
|  | 9) Notwithstanding anything herein to the contrary, no legally binding obligations will be created unless and until (i) the Direct Settlement Agreement shall be in agreed execution form and the Nine and the Sackler family shall be satisfied with the proposed  procedures, mechanics and remedies for any signature pages not theretofor delivered, and (ii) court authorization (as set forth below) has been obtained, in each case on or before March 10, 2022. This term sheet and any documents implementing the agreements set forth in this term sheet shall be governed in all respects by the laws of New York, *provided* that matters internal to each member of the Nine shall be governed by the laws of such member's jurisdiction. |
|  | 10) Upon and after acceptance of this Settlement Proposal by all of the Term Sheet Parties, the Term Sheet Parties shall immediately commence and pursue the negotiation of the definitive agreements documenting and implementing the Direct Settlement Agreement (the "Definitive Documents") in good faith. |
|  | 11) As part of this settlement, and subject to it becoming effective and not terminated, the Nine will agree they will not seek incremental settlement consideration from the Sackler family members or trusts in excess of the foregoing amounts or to directly or indirectly support any party in seeking any such incremental consideration. |
| **Naming Rights** | 1) The Sackler family (including Sackler family foundations) will agree upon occurrence of the Effective Date of the Plan to allow any institution or organization in the United States to remove the Sackler name from (i) physical facilities and (ii) academic, medical, and cultural programs, scholarships, endowments, and the like, provided that:<br>a) The institution provides the Sackler family with 45 days' confidential notice of its intention to remove the Sackler name;<br>b) The removal of the Sackler name would be disclosed or announced by any such institution (if the institution in its discretion determines such an announcement is necessary) in a statement that indicates that the removal of the Sackler name is pursuant to an agreement reached in the Mediation in the Purdue bankruptcy case; and<br>c) Any statements issued by the institution in connection with or substantially concurrent with such renaming will not disparage the Sacklers, *provided* that such prohibition shall not restrict any academic or similar work at such institution or organization.<br>d) These name removal rights are in addition to, and do not limit, any rights that the institution or organization otherwise has. |
| **Additional Terms** | 1) The Debtors have agreed to supplement the Public Document Repository as described on **Attachment B** hereto.<br>2) The Debtors shall promptly file a motion seeking the entry of the Approval Order (as defined below).  Among other things, the Approval Order shall authorize the payment of the reasonable and documented attorneys' fees of each of the Nine in the Purdue bankruptcy case (including any adversary proceedings, and any appeals thereunder), accrued to the date of the entry of the Approval Order and thereafter in furtherance of the agreements set forth herein, in each case subject to compliance with procedures applicable to the fees and expenses of the Ad Hoc Committee. |

| | |
|---|---|
| **Statement** | 1) Nothing in this Settlement Proposal shall restrict the ability of the Nine to cite any unsealed or public trial testimony or public statements, including any expressions of regret, by members of the Sackler families.<br><br>2) No later than two days after the filing with the Bankruptcy Court of a Mediator's Report that indicates the acceptance by the Nine of the terms of this Settlement Proposal, a statement in the form of **Attachment C** hereto will be issued by a spokesperson for the Sackler families. It is expressly understood that such statement is not an admission of any wrongdoing or liability and that the Sackler families reaffirm that they have always acted lawfully. |
| **Acceptance/ Effectiveness** | 1) By the deadline communicated by the Mediator, each of the Nine, Sackler Side A and Sackler Side B (collectively, the "Term Sheet Parties") and the Debtors shall write independently and directly only to the Mediator by email, c/o Jamie Eisen at Jamie_Eisen@nysb.uscourts.gov, indicating whether it accepts the Settlement Proposal.[3]<br><br>2) The effectiveness of the agreement is subject to the condition precedent of the entry of an order by the Bankruptcy Court (the "Approval Order") that provides necessary approvals of this settlement, and all documents contemplated hereunder, including a finding that the Direct Settlement Agreement does not contravene any provision of the Bankruptcy Code.<br><br>3) "Acceptance" by a member of the Nine, or by the Sacklers, as the case may be, shall constitute an agreement by such Term Sheet Party to promptly engage in good faith negotiations of the Definitive Documents.<br><br>4) Each of the Term Sheet Parties agrees to support the entry of the Approval Order and to defend it against any appeal therefrom.<br><br>5) The Debtors agree to seek the entry of the Approval Order, to support the settlement and related transactions contemplated hereunder, to participate in the negotiation of the Definitive Documents, and to seek the support of the other parties appealing the District Court's decision for the settlement and related transactions contemplated hereunder and to defend the Approval Order against any appeal therefrom.<br><br>6) Upon the effectiveness of this settlement and subject to the settlement not having been terminated, each Member of the Nine agrees: (i) that all issues raised in the Nine's appeals of the Bankruptcy Court's order confirming the Plan have been resolved by this settlement and that each of them consents to and grants the releases to be provided under the terms of the Plan upon the effectiveness thereof; (ii) that after the filing of a joint notice by the Nine and the Debtors advising the Court of Appeals for the Second Circuit that the Nine's non-opposition to the Appeal is contingent upon the terms of this settlement and subject to potential termination if the Approval Order is reversed by a final non-appealable order of a court of competent jurisdiction and that the parties will not argue in such circumstance that by failing to file briefs or present arguments that the Nine no longer have standing as appellees, it will not file any brief with or present any argument to the Second Circuit panel hearing the appeal of the District Court's Decision and Order issued on December 16, 2021 currently being prosecuted by the Debtors and the other supporters of the Plan (the "Appeal") or in any en banc proceeding or panel rehearing that may subsequently take place in the Second Circuit in the Appeal; (iii) that if the Appeal is decided in the Debtors' favor, it will not (a) file a party or amicus curiae brief at the petition stage in the Supreme Court of the United States, asking that court to grant certiorari with respect to the Appeal or (b) file a party brief at the merits stage in the Supreme Court should the Supreme Court grant certiorari with respect to the Appeal; (iv) that it will not object to the continuation of the Preliminary Injunction through a |

---

[3] Each party's acceptance of the Settlement Proposal shall be conditioned on (i) acceptance of the Settlement Proposal by all members of the Nine, Sackler Side A and Sackler Side B, (ii) the allocation of the funds in the SOAF set forth in Attachment D and (iii) that none of the Nine shall have received from the Sackler family or trusts or the Debtors actual or promised consideration not provided for hereunder or under the Plan.

ruling by the Court of Appeals for the Second Circuit on the Appeal and (v) to execute any other documentation and make any court filings reasonably necessary to implement any of the foregoing agreements.

7) The Nine shall be permitted to file a motion with the Court of Appeals for the Second Circuit to excuse the filing of appellate briefs by the current deadline of March 11, 2022 or thereafter and/or a statement (separate from the joint notice provided for herein) as has been agreed by the parties consistent with this Term Sheet explaining that the Nine are foregoing the filing of appellate briefs in connection with this settlement, which motion and/or statement  shall not   seek, suggest, or otherwise support any modification of the current Appeal schedule.

8) Subject to the Approval Order becoming final and non-appealable, each Member of the Nine will, upon the conclusion of the Appeal resulting in reversal or vacatur of the District Court's Decision and Order on Appeal issued on December 16, 2021, promptly file a notice and/or motion withdrawing and requesting dismissal of its appeal to the District Court of the Bankruptcy Court's order confirming the Plan.

9) If certiorari has been granted by the United States Supreme Court, members of the Nine may file amicus curiae briefs at the merits stage in the Supreme Court with respect to the Appeal, provided that such brief shall note that said member of the Nine withdrew its objections to the Plan in connection with this settlement and is not subject to a non-consensual release under the Plan.

10) For the avoidance of doubt, the agreement will not include the requirement to file any other pleadings or present argument in support or in favor of the Plan, and nothing in this agreement limits the ability of the Nine to write, to speak, or to participate fully in any judicial or other proceeding unrelated to Purdue or the Sacklers other than as expressly prohibited by this settlement.

11) If any payments or consideration or amounts allocated to any of the Nine under this Settlement Proposal cannot be effectuated because the Approval Order is reversed by a final order of a court of competent jurisdiction, the Sackler family members or trusts shall instead pay such consideration pursuant to one or more alternative mechanisms acceptable to each of the Nine in their sole discretion, that are permitted by or not inconsistent with such final order and also consistent with any subsequent governing court orders (which mechanism may include, without limitation, consent or stipulated judgments satisfactory to the Sackler family members or trusts and in favor of the Nine to be filed in the courts of their respective jurisdictions, with the form of such judgments to be attached to the Definitive Documents on or before the Effective Date of the Plan), provided that all such funds shall continue to be used for opioid-related abatement, including support and services for survivors, victims and their families, and provided further that such alternative mechanisms shall not be adverse to the Sackler family members or trusts as compared to the mechanisms set forth herein (it being agreed and understood that modest additional administrative or similar burdens, including the provision of consent or stipulated judgments satisfactory to the Sackler Family members or trusts as referenced above or a redirection of payments consistent with the allocation set forth herein, shall not be considered adverse). Each member of the Nine shall have the right to terminate the Agreement on and after a period of seven business days (or a shorter period if the full seven-day period would be unduly prejudicial) if the Nine after good faith consultation with one another do not identify and agree upon any such alternative mechanisms.

12) Each of the Nine and New Hampshire will voluntarily consent to grant the releases to be provided by it under the terms of the Plan as currently formulated in Section 10.7 thereof upon the effectiveness of the Plan as modified by this settlement and will therefore be voluntarily bound thereby.  Each of the Nine and New Hampshire fully reserves its right to object to and litigate non-consensual third-party releases in all other bankruptcy cases.

13) Any Plan supporter that has agreed to support the transactions contemplated by this Term Sheet may note in its briefs in the Appeal that, subject to the conditions hereof, the Nine and New Hampshire do not object to, and will consensually be bound to, the releases contained in the Plan. However, any Plan supporter that notes in its briefs in the Appeal that the Nine and New Hampshire are not objecting to, or are being consensually bound to, the releases

|  | contained in the Plan must note that such consent is not an indication that the Nine or New Hampshire agree with the legality of the Plan or of the non-consensual third party releases included in the Plan. |
|  | 14) The Debtors will advise the Court of Appeals for the Second Circuit that: (a) all states have agreed to be consensually bound by the third party releases in the Plan; (b) that the appeal therefore no longer presents the question of whether claims brought by states against third parties can be non-consensually released in bankruptcy, either generally or under the facts of this case; and (c) and that therefore the following portions of the identified briefs are withdrawn as moot: Section III.B. of the Debtors' page proof brief at pgs. 79-84 and Section III.B. of the Mortimer-side Initial Covered Sackler Persons page proof brief at pgs. 63-67. |
| **Implementation** | 1) The Shareholder Settlement Agreement shall be amended to reflect the additional Master Disbursement Trust payments and non-economic terms herein, and a new settlement agreement (the "Direct Settlement Agreement") among the Term Sheet Parties shall be entered into to reflect the payments to the SOAF, together with customary intercreditor arrangements between the Master Disbursement Trust and SOAF that shall provide that SOAF is pari passu with the Master Disbursement Trust, in each case subject to receipt by the Mediator of acceptances by Sackler Side A, Sackler Side B, the Debtors, and all of the members of the Nine, with consummation of the Shareholder Settlement Agreement so modified and the Direct Settlement Agreement contingent upon entry of the Approval Order by the Bankruptcy Court[4] and consummation of the Plan. <br> 2) Other than as provided in the provision beginning "If any payments" above, this agreement shall be void and have no effect on the rights of the parties if the settlement described herein or consummation of the Plan is barred by a final, non-appealable order of a court of competent jurisdiction, if a court of competent jurisdiction determines in a final, non-appealable order that any essential element of the settlement (including, without limitation, the Direct Settlement Agreement) or the Plan is invalid, or if the Plan otherwise becomes incapable of being consummated. <br> 3) The parties acknowledge and agree that upon the Effective Date of the Plan all parties are bound by the terms thereof unless the confirmation order is subsequently vacated. |

---

[4] Any order or definitive documents effectuating the terms of this Settlement Proposal shall provide that the actions taken by members of the Sackler family or trust or their related parties in accordance with the terms of this Settlement Proposal are taken in connection with the Chapter 11 Cases for purposes of Section 10.7 of the Plan.

**Attachment A**

| Payment Date[56] | Payment Amount to Master Disbursement Trust | Direct Payment Amount to SOAF |
|---|---|---|
| Effective Date | $175 million | $25 million |
| Second Funding Deadline | $0.00 | $25 million |
| Third Funding Deadline | $0.00 | $25 million |
| Fourth Funding Deadline | $0.00 | $25 million |
| Fifth Funding Deadline | $0.00 | $0.00 |
| Sixth Funding Deadline | $0.00 | $0.00 |
| Seventh Funding Deadline | $0.00 | $0.00 |
| Eighth Funding Deadline | $0.00 | $0.00 |
| Ninth Funding Deadline | $0.00 | $0.00 |
| Tenth Funding Deadline | $0.00 | $0.00 |
| 6/30/2031 | $80 million | $20 million |
| 6/30/2032 | $80 million | $20 million |
| 6/30/2033 | $80 million | $20 million |
| 6/30/2034 | $80 million | $20 million |
| 6/30/2035 | $80 million | $20 million |
| 6/30/2036 | $80,777,777.78 | $19,222,222.22 |
| 6/30/2037 | $80,777,777.78 | $19,222,222.22 |
| 6/30/2038 | $80,777,777.78 | $19,222,222.22 |
| 6/30/2039 | $80,777,777.78 | $19,222,222.22 |

---

[5] The Funding Deadlines are set forth in Section 2.01(b)(i) of the Shareholder Settlement Agreement and are subject to adjustment pursuant to Section 2.01(b)(ii) thereof.

[6] The $175 million of incremental amounts paid in lieu of appointment of the Continuing Foundation Members as the sole members of the Foundations shall be funded $62.5 million by the Sackler family A-Side Payment Parties and $112.5 million by the Sackler family B-Side Payment Parties. The first $400 million chronologically of all other incremental amounts shall be funded 50% by the Sackler family A-Side Payment Parties and 50% by the Sackler family B-Side Payment Parties. Other incremental amounts above $575 million in the aggregate shall be funded exclusively by the Sackler family B-Side Payment Parties.

**Attachment B**

## Agreed Amendments to the Debtors' Privilege Waiver Section of Plan

**(1)**  <u>**Lobbying**</u>

Revised subsection (I) – Legal advice regarding advocacy before the United States Congress or a state legislative branch with respect to (i) any opioid product sold by Purdue, including OxyContin; and (ii) any public policies regarding the availability and accessibility of opioid products.

**(2)**  <u>**Public Relations**</u>

New Subsection – Legal advice provided to Purdue's public relations department regarding the promotion, sales, or distribution of Purdue's opioid products, including but not limited to their safety, efficacy, addictive properties, or availability of opioid products.

**(3)**  <u>**Compliance**</u>

Legal advice to the Compliance department regarding the organizational structure of the Compliance Department, including its processes for implementing order monitoring systems, suspicious order monitoring programs, and abuse deterrence and detection programs.

<u>**Subsection (ii)(B)**</u>

Documents created before February 2018 reflecting legal review and advice with respect to recommendations received from McKinsey & Company, Razorfish, and Publicis, related to the sale and marketing of opioids.

**Attachment C**

**Sackler Family Statement**

The Sackler families are pleased to have reached a settlement with additional states that will allow very substantial additional resources to reach people and communities in need. The families have consistently affirmed that settlement is by far the best way to help solve a serious and complex public health crisis.  While the families have acted lawfully in all respects, they sincerely regret that OxyContin, a prescription medicine that continues to help people suffering from chronic pain, unexpectedly became part of an opioid crisis that has brought grief and loss to far too many families and communities.

**Attachment D**

**Allocation of SOAF**

Attachment D

Allocation of SOAF

| Payment Date | Direct Payment Amount to SOAF | CA | CT | DE | MD | OR | RI | VT | WA | DC | NH | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Effective Date | $25,000,000.00 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $ 1,125,000.00 | $25,000,000 |
| Second Funding Deadline | $25,000,000.00 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $ 1,125,000.00 | $25,000,000 |
| Third Funding Deadline | $25,000,000.00 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $ 1,125,000.00 | $25,000,000 |
| Fourth Funding Deadline | $25,000,000.00 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $2,652,777.78 | $ 1,125,000.00 | $25,000,000 |
| Fifth Funding Deadline | $0.00 | | | | | | | | | | | |
| Sixth Funding Deadline | $0.00 | | | | | | | | | | | |
| Seventh Funding Deadline | $0.00 | | | | | | | | | | | |
| Eighth Funding Deadline | $0.00 | | | | | | | | | | | |
| Ninth Funding Deadline | $0.00 | | | | | | | | | | | |
| Tenth Funding Deadline | $0.00 | | | | | | | | | | | |
| 6/30/2031 | $20,000,000.00 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $ 900,000.00 | $20,000,000 |
| 6/30/2032 | $20,000,000.00 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $ 900,000.00 | $20,000,000 |
| 6/30/2033 | $20,000,000.00 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $ 900,000.00 | $20,000,000 |
| 6/30/2034 | $20,000,000.00 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $ 900,000.00 | $20,000,000 |
| 6/30/2035 | $20,000,000.00 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $2,122,222.22 | $ 900,000.00 | $20,000,000 |
| 6/30/2036 | $19,222,222.22 | | | | | | | | $17,972,222.22 | | $ 1,250,000.00 | $19,222,222 |
| 6/30/2037 | $19,222,222.22 | | | | | | | | $17,972,222.22 | | $ 1,250,000.00 | $19,222,222 |
| 6/30/2038 | $19,222,222.22 | | | | | | | | $17,972,222.22 | | $ 1,250,000.00 | $19,222,222 |
| 6/30/2039 | $19,222,222.22 | | | | | | | | $17,972,222.22 | | $ 1,250,000.00 | $19,222,222 |
| Total | | $21,222,222.22 | $21,222,222.22 | $21,222,222.22 | $21,222,222.22 | $21,222,222.22 | $21,222,222.22 | $21,222,222.22 | $93,111,111.10 | $21,222,222.22 | $14,000,000.00 | $276,888,889 |