Hearing Date: March 9, 2022 at 1:00 p.m.
Objection Deadline: March 8, 2022 at 7:00 p.m.

CARTER LEDYARD & MILBURN LLP
Aaron R. Cahn
Leonardo Trivigno
Carter Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Bankruptcy@clm.com

*Attorneys for the State of West Virginia, ex. rel. Patrick Morrisey, Attorney General*

-and-

PATRICK MORRISEY, ATTORNEY GENERAL
STATE OF WEST VIRGINIA
Ann L. Haight, Deputy Attorney General
Abby G. Cunningham, Assistant Attorney General
Laurel K. Lackey, Assistant Attorney General (admitted *pro hac vice*)
The Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Ann.L.Haight@wvago.gov
Laurel.K.Lackey@wvago.gov
Abby.G.Cunningham@wvago.gov

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                                         :   Case No. 19-23649 (RDD)
                                                               :
                                                               :   Chapter 11
PURDUE PHARMA, L.P., et al.,[1]                                :
                                                               :   Jointly Administered
          Debtors.                                             :

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals

1

      _____x

# **STATE OF WEST VIRGINIA'S OBJECTION TO DEBTORS' MOTION TO APPROVE SETTLEMENT TERM SHEET AND JOINDER TO OBJECTION BY THE STATE OF FLORIDA**

The State of West Virginia, *ex. rel.* Patrick Morrisey, Attorney General ("West Virginia"), hereby objects to the Motion of Debtors Pursuant to 11 U.S.C. § 105(a) and 363(b) for Entry of an Order Authorizing and Approving Settlement Term Sheet (ECF No. 4410) (the "Motion"), joins in the Objection filed by the State Florida (ECF No. 4413) and states as follows:

## **INTRODUCTION**

1. Consistently during the course of this case, filed almost two and a half years ago, West Virginia has made clear its position the method of allocation of proceeds to the various state governments is its primary concern. As West Virginia has consistently argued, a fair allocation scheme must account for the intensity of the opioid addiction crisis in each of the states and must give each state the funds necessary to support meaningful remediation efforts in partnership with its local governments.

2. Following the confirmation last September of the much-amended plan and the subsequent reversal of the confirmation order by the District Court, nine of the objecting states (now known as "The Nine") participated in intensive mediation efforts before Bankruptcy Judge Shelley Chapman.[2] The mediation, whose results were unveiled on March 3, 2022, achieved many

---

L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] West Virginia objected to confirmation but on a different ground than did the Nine, did not participate in the appeal, and so was not a party to the mediation, which by order of this court was limited to actual appellant states.

laudable goals, not the least of which was an overall increase of the contribution from the Sackler family of more than 1 billion dollars.

3. Despite this progress, the Nine (together with New Hampshire, which was recently added as a mediation party without any apparent basis, inasmuch as it did not appeal the confirmation order) apparently decided to reward themselves for their efforts by carving out a special slush fund in which only they would participate. This fund, the Supplemental Opioid Addiction Fund or "SOAF," would distribute the oddly-specific amount of $276,888,888.87, representing more than 25% of the increased contribution, to the Nine plus New Hampshire, with more than 33% of SOAF going to the State of Washington alone.[3] No explanation is provided as to how this stipend could be justified under any of the allocation formulas that have been negotiated, let alone adopted, during and even prior to the commencement of this case. Accordingly, the conclusion is inescapable that the revised Plan (as it will presumably be amended to include the settlement now before the Court) will not be proposed in good faith as required by 11 U.S.C. §1129(a)(3), and, as explained in more detail by the Objection filed by the State of Florida, fails to provide the "same treatment" to all members of the affected class (Class 4) as required by 11 U.S.C. §1123(a)(4).

4. West Virginia's objection to the Plan that was eventually confirmed by this Court noted that the original allocation scheme, which came to be known as the Denver Plan, was highly population-centric and failed to sufficiently account for the intensity measures that had been identified by West Virginia's experts. West Virginia offered an alternative, an intensity-based formula, and argued that the failure to utilize a formula specifically designed to relieve the greatest

---

[3] Although no explanation is provided as to how the parties arrived at this unusual amount, the Court may take judicial notice of the fact that lawyers are taught early in their careers that specific amounts always inspire greater belief in their legitimacy than do round numbers.

3

11048458.2

amount of suffering possible evidenced a lack of good faith on the part of the Plan proponents and the other parties who negotiated the formula.

5. In the same objection, West Virginia argued that the Plan violated the equality of treatment requirement of 11 U.S.C. 1123(a)(4) since, although the same formula was concededly applied to all members of class 4 (except of course for California, which had refused to participate in the separate 1% "intensity fund"), the clear bias in favor of the larger-population states to ensure that they received the lion's share of the pool violated that standard.

6. This Court rejected all West Virginia's objections except for its attack on the refusal of California to participate in the 1% intensity fund. The Court found that this refusal violated the equality of treatment standard of 1123(a)(4) (*see, Modified Bench Ruling* filed September 17, 2021, ECF No. 3786, at page 54), and California eventually consented to participate by diverting 1% of its distributions otherwise payable to it under the plan to that fund.

7. Now, however, the current proposed settlement unquestionably violates both these standard elements of Chapter 11. There is no explanation in the motion of the reason for the special treatment of the Nine plus New Hampshire, nor does a possible explanation come readily to mind – other than the desire of the Nine to enrich themselves in a way not made available to the other states or any other parties. It does not bear citation to conclude that this provision, when eventually incorporated in an amended plan, will violate both the good faith and equality of treatment standards.

8. And in fact it is significant that, once again, we find California leading the way in the cash grab. Having initially refused even to earmark 1% of its distribution to the unreasonably small "intensity fund" – until this court signaled that it would rule that failure would violate the

equality of treatment standard – it has now used its position as one of the negotiators of the new settlement to enrich itself even further by tens of millions of dollars in the slush fund.

9. West Virginia appreciates that the Nine expended and will continue to expend considerable sums in the District Court appeals and the mediation, as well as the ongoing activity in the Second Circuit Court of Appeals. In a normal circumstance, one would expect those parties to apply for reimbursement of their expenses as having contributed to the enhancement of the estate and recoveries for all creditors under 11 U.S.C. 503(b)(4). But expensive as those efforts have been, as will be seen below, they do not amount to anything remotely resembling the $276 million figure that they will reap under this agreement. And in fact, there is no disclosure whatsoever in the Motion of the basis for calculating the $276 million slush fund.

10. In any event, it is clear that the slush fund is not meant to compensate the Nine for their efforts, since they are separately being reimbursed through a mysterious device called "Specified Payments." According to paragraph 30 of the Motion, the Specified Payments – defined as "the reasonable and documented fees and expenses of outside counsel of the Nine in the Cases (including any adversary proceedings, and any appeals thereunder)" amount to less than $4 million.

## CONCLUSION

As noted, West Virginia joins the State of Florida in its well-crafted and thorough objection. Nevertheless, West Virginia observes that at least as to the core issue – the manifest unfairness and preferential treatment of ten members of Class 4 to the exclusion of all others – no lengthy legal analysis is needed. Accordingly, this objection is short because it does not need to be otherwise.

Dated: March 4, 2022

11048458.2

New York, New York

        CARTER LEDYARD & MILBURN LLP

         s/Aaron R. Cahn
        Aaron R. Cahn
        Leonardo Trivigno
        Carter Ledyard & Milburn LLP
        *Attorneys for the State of West Virginia, ex. rel.*
        *Patrick Morrisey, Attorney General*
        2 Wall Street
        New York, NY 10005
        Telephone: (212) 732-3200
        Fax: (212) 732-3232
        Bankruptcy@clm.com

          -and-

        PATRICK MORRISEY, ATTORNEY GENERAL
        STATE OF WEST VIRGINIA
        Ann L. Haight, Deputy Attorney General
        Abby G. Cunningham, Assistant Attorney General
        Laurel K. Lackey, Assistant Attorney General
        (admitted *pro hac vice*)
        The Office of the West Virginia Attorney General
        P.O. Box 1789
        Charleston, WV 25326
        Ann.L.Haight@wvago.gov
        Laurel.K.Lackey@wvago.gov
        Abby.G.Cunningham@wvago.gov

11048458.2