FRANK OZMENT ATTORNEY AT LAW, LLC
Box 501, 217 Country Club Park
Mountain Brook, Alabama 35213
T:  205.413.9973
J. Franklin Ozment

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | } | |
| | } | |
| **PURDUE PHARMA, LLP,** *et al,*[1] | } | **Bankruptcy Case No.** |
| | } | **19-23649 (RDD)** |
| | } | **Chapter 11** |
| **Debtors.** | } | **Jointly Administered** |
| | } | |

**OBJECTION BY CREDITORS CREIGHTON BLOYD, STACEY BRIDGES, AND CHARLES FITCH TO DEBTORS' MOTION TO AUTHORIZE AND APPROVE SETTLEMENT TERM SHEET**

**COME NOW** Creighton Bloyd, Stacey Bridges, and Charles Fitch, who are Creditors and Parties-In-Interest in these cases (hereinafter referred to collectively as "Individual Creditors[2]"), by and through the undersigned attorney, and object to the *Motion of Debtors Pursuant to 11 U.S.C. § 105(a) and 363(b) for Entry of an Order Authorizing and Approving Settlement Term Sheet* [ECF No. 4410] which was filed on March 4, 2022, and as grounds therefor state:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] While the claims of Bridges, Bloyd, and Fitch were classified as unsecured, a motion to subordinate the claims of the United States has been filed, based on the fact that the United States agreed to treat the claims of Debtor's victims as unsecured in violation of the Mandatory Victim Restitution Act. The Court has not ruled on the motion to subordinate.  It is respectfully submitted that a lack of standing is not a bar to these objections.

1

1.      Subsequent to the entry of this Honorable Court's Order confirming the Debtors' Plan of Reorganization [ECF 3787], multiple parties appealed that Order.

2.      Ultimately, at least eight States and the District of Columbia were able to convince the Court to permit various parties to enter into mediation with the Debtors.

3.      During mediation, the eight States and the District of Columbia persuaded the Sackler Family to pay (or cause others to pay) additional monies to resolve claims against them.

4.      While the additional payments could have easily benefitted all creditors, the eight States and the District of Columbia, together with the Debtor, propose that the additional money benefit only the eight States and the District of Columbia.

5.      Creighton Bloyd, Stacey Bridges, and Charles Fitch (the "Individual Creditors"), by and through their undersigned counsel, object to the terms that are the subject of the petition before the Court and humbly request the Court to condition approval of the terms on their being modified as provided herein.

6.      While the claims of Bridges, Bloyd, and Fitch were classified as unsecured, a motion to subordinate the claims of the United States has been filed, based on the fact that the United States agreed to treat the claims of Debtor's victims as unsecured in violation of the Mandatory Victim Restitution Act. The Court has not

ruled on the motion to subordinate. It is respectfully submitted that a lack of standing is not a bar to these objections.

6.  The cornerstone of the reorganization plan originally approved by this Court was the abatement of the current opioid crisis, the origin of which stemmed chiefly from the manufacture, marketing and sale of synthetic opioids.

7.  The most difficult part of the opioid crisis to solve is ongoing addiction. As long as victims of opioid use disorder (OUD) remain in active addiction, the crime, the overdose deaths, and the suffering associated with the opioid crisis persist.

8.  Victims of OUD can and often do overcome the disease with the right treatment, which often requires medicine, and always requires counseling.

9.  This Court has before it thousands of people who are currently suffering OUD. They have filed claims. If the United States had respected their rights under the Mandatory Victim Restitution Act when Purdue agreed to plead guilty to crimes in the United States District Court for the Northern District of New Jersey, these claimants would have been secured creditors.

10. Claimants suffering OUD (in contrast to those who survive deceased victims of OUD) fall into two categories: those who are in active recovery and those who are not. Those who are in active recovery may be further divided into those whose treatment is covered by third party payors (e.g., Medicaid or private insurers) and those who must pay for their recovery themselves. Common sense indicates that

persons who must pay for their own treatments out of pocket face escalated risks of relapse: if they lose the ability to pay for treatment, their risks of relapse sharply increase.

11.   If the money earmarked for the eight States and the District of Columbia were devoted to subsidizing treatment for claimants suffering OUD, the corresponding decrease in crime, death, and other costs attendant with the opioid crisis would decrease commensurately for all States. Any disparity in benefits on a State by State level would reflect the concentration of claimants within the particular States (i.e., subsidizing medical treatment of claimants would confer a greater benefit on States with higher concentrations of claimants in active recovery).  This would avoid the problems presented by the Debtors' current term sheet, which openly favors some creditors over others in the same class.

12.   Subsidizing OUD treatments for claimants is not impractical. See Doc. No. 4344 (Letter to Judge Chapman).

WHEREFORE, the Individual Creditors Bridges, Bloyd, and Fitch pray this Court will deny the motion to approve the settlement terms or, in the alternative, approve the motion on the condition that the terms be modified to subsidize the medical treatment of claimants, so as to avoid any otherwise unlawful disparities in distributions among the State creditors.

Respectfully submitted,

*Frank Ozment*
Attorney For Bridges, Bloyd and Fitch
Alabama State Bar 7203-n73j

Frank Ozment Attorney At Law, LLC
Box 501 217 Country Club Park
Mountain Brook, AL 35213
205.413.9973

### *Certificate of Service*

I hereby certify that I have filed this document with the Court by using the CM/ECF filing system, which system causes the electronic service on counsel of record.

*Frank Ozment*
Of Counsel