UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Hearing Date:  March 9, 2022**
**Hearing Time:  1:00 P.M.**

------------------------------------------------------- x
                                :
In re                             :         Chapter 11
                                  :
PURDUE PHARMA L.P., *et al.*,      :         Case No. 19-23649 (RDD)
                                  :
                    Debtors.    :         Jointly Administered
                                  :
------------------------------------------------------- x

## UNITED STATES TRUSTEE'S OPPOSITION AND RESERVATION OF RIGHTS TO DEBTORS' MOTION FOR AN ORDER AUTHORIZING AND APPROVING SETTLEMENT TERM SHEET

TO:   **THE HONORABLE ROBERT D. DRAIN,**
       **UNITED STATES BANKRUPTCY JUDGE:**

      William K. Harrington, the United States Trustee for Region 2 (the "United States

Trustee"), hereby submits this opposition and reservation of rights (the "Response") to Debtors'

Motion (the "Motion") for an Order Authorizing and Approving Settlement Term Sheet (the

"Term Sheet").  ECF Doc. No. 4410.  In support thereof, the United States Trustee respectfully

states:

### SUMMARY OF ARGUMENT[1]

      No one would dispute that more money to abate the opioid crisis that was allegedly

fueled by Debtors and their Sackler Family owners is a good thing.  Under the Term Sheet, a

portion of the additional proposed payments from the Sackler Family will fund a new trust for

the exclusive benefit of the Nine and New Hampshire, and the remainder shall be paid to all the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them below or in the Motion or Term Sheet.

States in accordance with the Plan. The Term Sheet doubles the payout term for funds from 9 to 18 years. And the Term Sheet also includes a new statement from the Sackler Family, still maintaining Oxycontin "continues to help people" and that it "*unexpectedly* became part of an opioid crisis . . . ." Motion, Attachment C (emphasis added).[2]

Regardless, the Motion should be denied for multiple reasons.

As a threshold matter, this Court lacks jurisdiction to grant the requested relief because once a notice of appeal is filed, the bankruptcy court is divested of jurisdiction over those matters involved in the appeal. The vacated Plan is at the heart of the appeal—and at the heart of the Term Sheet. Unless and until a higher court remands the matter, this Court has no jurisdiction over how the vacated Plan might be amended.

Moreover, the district court's decision vacating the Confirmation Order because of the lack of statutory authority for the non-consensual third-party releases controls the path going forward. The parties to the mediation, rather than proposing a new plan conforming to the law, leave unchanged section 10.7 of the vacated Plan—the illegal Sackler Family third-party releases imposed on victims without their consent. Thus, the mediation did not solve the most significant impediment to confirmation: the unlawfulness of section 10.7's releases that bind other creditors without their consent. Debtors' request that this Court enter an order finding that the Term Sheet does "not contravene any prior orders of the Court in these Cases or any provision of the

---

[2] Purdue's executives have been making similar statements for more than two decades, while the scourge of Oxycontin continued: "We are more distressed than anyone at hearing that our product, which is providing so much relief to so many people, is being abused." *Oxycontin: Its Use and Abuse, Hearing before the Subcommittee on Oversight and Investigations of the H. Comm. on Energy and Commerce*, 107th Congress 41 (2001) (Statement of Michael Friedman, Exec. V.P. and Chief Operating Office, Purdue Pharma, L.P.).

Bankruptcy Code" contradicts the district court's ruling that the releases are not authorized by the Bankruptcy Code, a ruling that is law of the case and that this Court may not disregard.

If the Court addresses the Motion now, it should still be denied. The Term Sheet contemplates that Debtors make material modifications to the vacated Plan and the incorporated Shareholder Settlement, contingent upon a higher court reinstating the vacated Plan. But the Term Sheet leaves the illegal Sackler Family release intact—and fails to make the one change most necessary to make the vacated Plan confirmable as a matter of law. Moreover, the Term Sheet requires that any new or modified plan create an entirely new and exclusive $277 million fund set aside for the Nine (and New Hampshire) that is at odds with the allocation formula previously voted on by the States and approved in the vacated Plan. Not only would this be a material modification to the vacated Plan, requiring re-solicitation and re-voting, it would "contravene" 11 U.S.C. § 1123(a)(4) by providing disparate treatment to creditors in Class 4, the States, without the disfavored States' consent.

As of March 7, 2022, and shown on the chart below, more than twenty States have objected to the Term Sheet and Motion, including their disparate treatment within class 4, while several pro se and other claimants have objected as well.

| ECF No. | Party |
|---|---|
| 4413 | The State of Florida |
| 4417 | The State of West Virginia |
| 4418 | The State of Indiana |
| 4433 | The State of Louisiana |
| 4435 | The State of Nebraska |
| 4437 | The State of Ohio |
| 4440 | The State of Alaska |
| 4441 | Ellen Isaacs |
| 4443 | The State of Montana |

| 4445 | The State of North Dakota |
|------|---------------------------|
| 4447 | The State of Arkansas |
| 4459 | The State of South Carolina |
| 4451 | The State of Kansas |
| 4453 | The State of Arizona |
| 4455 | Certain Claimants Defined in Objection |
| 4456 | Maria Ecke |
| 4458 | The Commonwealth of Kentucky |
| 4461 | The State of Georgia |
| 4462 | The State of Tennessee |
| 4464 | The State of Utah |
| 4465 | The State of Texas |
| 4467 | The State of Mississippi |
| 4469 | The State of Missouri |
| 4471 | Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants |
| 4472 | The State of Alabama |
| 4473 | Creighton Bloyd, Stacey Bridges, and Charles Fitch |
| 4474 | Tribal Leadership Committee |
| 4478 | The Commonwealth of Puerto Rico |
| 4480 | The Territory of American Samoa |

The Term Sheet also provides for Debtors to pay legal fees for the Nine incurred during the case. The Term Sheet thus does not comply with section 503(b) of the Bankruptcy Code, which is the exclusive avenue for the payment of these type of administrative expenses and requires that the Nine file an application with the Court and meet their evidentiary burden for proving a "substantial contribution" in these cases.

The Court should deny the requested relief because of the multiple legal infirmities in Debtors' Motion, including this Court's lack of authority or jurisdiction to approve relief contingent on the outcome of Debtors' appeal and directly at odds with the district court's decision on appeal.

Lastly, the United States Trustee reserves all rights, including in the pending appeal. Section 10.7 of the vacated Plan, which the district court held unlawfully imposed the Sackler Family third-party releases on creditors without their consent, remains unchanged. As a result, the Term Sheet does nothing to cure the statutory and constitutional infirmities raised in the United States Trustee's objections to confirmation.

## BACKGROUND

1.     Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code on September 15, 2019 (the "Petition Date").

2.     Debtors are pharmaceutical companies that manufacture, sell, or distribute, among other products, extended-release, long-acting opioid pain medications. *See* First Day Brief, ECF No. 17 at 1.

3.     Debtors are wholly owned by a non-debtor, Pharmaceutical Research Associates LP ("PRA"). *Id*. at 16. PRA is owned by two entities, each of which is ultimately owned by various trusts for the benefit of Debtors' ultimate owners, members of the Raymond Sackler family and Mortimer Sackler family (collectively, the "Sackler Family"). *Id.*

4.     No member of the Sackler Family is a debtor in these cases.

5.     On June 3, 2021, the Court approved Debtors' Disclosure Statement over the objection of various parties, including the United States Trustee. ECF No. 2988.

6.     The original plan and its subsequent iterations, including several filed during and after the confirmation hearing, were based on an initial prepetition settlement framework reached among Debtors, the Sackler Family (and related entities), and certain plaintiff constituencies. Under the Twelfth Amended Joint Plan of Reorganization (the "Plan" or "vacated Plan"), ECF

No. 3726, Debtors' existing shareholders (all of whom are ultimately owned or controlled by Sackler Family members) would pay in the aggregate more than $4.3 billion to various trusts to be established under the Plan. Disclosure Statement at 2. The payments were to be made over no fewer than nine years (ten years if certain payments are made ahead of schedule). *Id.* at 153. Section 10.7 of the Plan also contained extremely broad release and injunction provisions benefitting the extended members of the Sackler Family and hundreds of parties associated with the Sackler Family. *Id.* at 22 (the "third-party releases," the "Sackler Family releases," or the "non-debtor, non-consensual releases").

7.      On July 19, 2021, the United States Trustee objected to the Plan (Sixth Amended) on several bases, including that the third-party releases were illegal non-consensual non-debtor releases violating both the Bankruptcy Code and the U.S. Constitution. ECF No. 3256.

8.      The six-day Plan confirmation hearing commenced on August 9, 2021, and during the hearing, Debtors amended the Plan several times. The United States Trustee renewed his objections to the Plan after amendments, arguing that the third-party releases remained illegal and that the Plan could not be confirmed as a result. ECF Nos. 3676, 3710.

9.      On September 1, 2021, the Court ruled from the bench and confirmed Debtors' Plan contingent on certain changes being made. Those changes were made in a Twelfth Amended Plan filed the next day. The Court thus overruled the United States Trustee's objection to confirmation. On September 17, 2021, the Court entered an Order confirming Debtors' Plan of Reorganization. ECF No. 3787 (the "Confirmation Order").

10.     The United States Trustee and the Attorneys General of eight states and the District of Columbia (the "Nine" as defined in the Term Sheet) appealed the Confirmation Order

to the district court (along with certain pro se litigants and Canadian governmental entities), alleging that the Plan and specifically the third-party releases violated both the Constitution and the Bankruptcy Code.

11.      On December 16, 2021, the district court ruled in favor of appellants, holding that the Bankruptcy Code does "not confer on any court the power to approve the release of non-derivative third-party claims against non-debtors, including specifically the Section 10.7 Shareholder Release that is under attack on this appeal." *In re Purdue Pharma, LP*, 635 B.R. 26, 90 (S.D.N.Y. 2021). The district court vacated the Confirmation Order, *id.* at 118, and thus there is no confirmed Plan.

12.      Debtors appealed to the Court of Appeals for the Second Circuit ("Second Circuit"), where the matter remains pending. Appellee briefs are due on March 11, 2022.

13.      While the appeal has been pending at the Second Circuit, Debtors, the Sackler Family, and the Nine have been engaged in court-ordered mediation (the "mediation parties"), presumably to craft a new plan that would comply with the law as articulated by the district court on appeal. Neither the United States Trustee nor the 41 states that previously settled with Debtors and the Sackler Family were part of the mediation.

14.      On March 3, 2022, the mediation parties announced that they had agreed to a Term Sheet outlining a settlement, and Debtors thereafter filed the Motion to Approve on extremely short notice, with objections due on March 8 and hearing set for March 9. The proffered justification for the shortened time is that "it is critical that these provisions [in the Term Sheet providing the Nine will not oppose Debtors' appeal] become effective prior to March

11, 2022, which is the deadline for the Nine to file appellees' briefs with the Second Circuit."
Motion, ¶ 28.

15.     The Term Sheet does not propose a new plan, although it does require certain
modifications to the vacated Plan, and it is contingent upon the vacated Plan being reinstated by
a higher court.[3]  The Term Sheet does not modify section 10.7 of the vacated Plan, which
provides for the Sackler Family releases that the district court ruled were not authorized by the
Bankruptcy Code.

**LAW AND ARGUMENT**

**I.     This Court Has No Jurisdiction Over the Vacated Plan While the Appeal
is Pending**

Debtors ask for relief contingent upon the district court's ruling being reversed on appeal
or otherwise vacated:  the settlement reflected in the Term Sheet is "conditioned entirely on one
or more orders from the District Court for the Southern District of New York or the Court of
Appeals for the Second Circuit allowing for consummation of the Plan . . . ."  Motion, ¶ 29.  That
is, if the Court orders the relief, it will be "effective only upon the entry of one or more orders by
the Court of Appeals for the Second Circuit or the United States District Court for the Southern
District of New York permitting the consummation of the Plan as enhanced by the Term Sheet
. . . ."  Proposed Order, ¶ 3.  And the Term Sheet expressly requires modification of the vacated
Plan (or proposal of a new plan that includes the illegal Sackler Family releases).  *See, e.g.,*
Motion, Ex. B at "Acceptance/Effectiveness" ¶ 12 ("Each of the Nine and New Hampshire will

---

[3] Motion, Ex. B at "Acceptance/Effectiveness" ¶ 12 ("Each of the Nine and New Hampshire will
voluntarily consent to grant the releases to be provided by it under the terms of the Plan as
currently formulated in Section 10.7 thereof upon the effectiveness of *the Plan as modified by
this settlement* and will therefore be voluntarily bound thereby.") (emphasis added).

voluntarily consent to grant the releases to be provided by it under the terms of the Plan as currently formulated in Section 10.7 thereof upon the effectiveness of *the Plan as modified by this settlement* and will therefore be voluntarily bound thereby.") (emphasis added).

But this Court has no jurisdiction over any matter related to the vacated Plan that is pending before the Second Circuit. The "filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379, (1985) (citation omitted). This rule applies with equal force to appeals from bankruptcy court orders. *Hagel v. Drummond* (*In re Hagel*), 184 B.R. 793, 798 (B.A.P. 9th Cir. 1995) (citation omitted); *accord In re Millennium Glob. Emerging Credit Master Fund Ltd*., 471 B.R. 342, 348 (Bankr. S.D.N.Y. 2012) (citing *Asbestosis Claimants v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re Prudential Lines, Inc*.), 170 B.R. 222, 243 (S.D.N.Y. 1994)). Once a matter is on appeal, "a lower court may take no action which interferes with the appeal process or with the jurisdiction of the appellate court." *Prudential Lines*, 170 B.R. at 243 (citations omitted). As a result, the Court cannot grant the requested relief, which requires modifying the vacated Plan that is pending before the Second Circuit, and the Motion should be denied for this reason.

## II.    This Court May Not Approve a "Term Sheet," Much Less an Actual Settlement Agreement or Modified Plan, that Includes Non-Consensual Non-Debtor Releases for the Sackler Family

Although the Term Sheet proposes modifications to the vacated Plan, it leaves unchanged section 10.7 of the vacated Plan—the illegal Sackler Family third-party releases imposed on creditors without their consent. As a result, the Term Sheet does not cure the statutory and constitutional infirmities raised in the United States Trustee's objections to confirmation,

including the lack of statutory authority for the non-consensual third-party releases that caused

the district court on appeal to vacate this Court's Confirmation Order. *In re Purdue Pharma, LP*,

635 B.R. 26, 60 (S.D.N.Y. 2021).

In ruling on the appeal, Judge McMahon conducted an exhaustive review of Second

Circuit cases addressing releases as well as a detailed analysis of various Bankruptcy Code

sections invoked to justify the Sackler Family releases.  The district court concluded that the

Second Circuit's only definitive statement about statutory authority for third-party releases was

that section 105(a), "standing alone, does not confer such [statutory] authority [for non-debtor

releases] on the bankruptcy court outside the asbestos context."  *Id.*  The district court then ruled

that none of the Bankruptcy Code sections relied upon by this Court authorizes non-consensual

releases between non-debtors:

> [E]ach of the cited sections [1123(a)(5) and (b)(6) and 1129], like Section 105(a),
> confers on the Bankruptcy Court only the power to enter orders that carry out
> other, substantive provisions of the Bankruptcy Code. None of them creates any
> substantive right; neither do they create some sort of "residual authority" that
> authorizes the action taken by the Bankruptcy Court.

*Id.* at 62.  And this decision is now law of the case and remains so unless and until the Second

Circuit decides otherwise.  *See Pepper v. United States*, 562 U.S. 476, 506-07 (2011) (citing

*Arizona v. Cali*fornia, 460 U.S. 605, 618 (1983) ("the [law of the case] doctrine posits that when

a court decides upon a rule of law, that decision should continue to govern the same issues in

subsequent stages in the same case.")).

Notwithstanding the district court's decision, Debtors ask this Court to enter an order

finding that the Term Sheet does "not contravene any prior orders of the Court in these Cases or

any provision of the Bankruptcy Code."  This is prohibited by the law of the case doctrine

10

because the relief Debtors seek is irreconcilable with the district court's ruling that the Sackler

Family releases are not authorized by the Bankruptcy Code.  The parties may not ignore, and a

lower court may not disregard, the law of the case established by a higher court on appeal.  *See*

*Shovlin v. Klaas* (*In re Klaas)*, 548 B.R. 414, 421, n.32 (Bankr. W.D. Pa. 2016) ("The Court is

aware that the District Court's opinion in *Shovlin* has been appealed, but unless and until the

Third Circuit reverses the District Court's ruling (and, by implication, this Court's holding), the

doctrine of law of the case continues to apply.").  The Motion should be denied for this

additional reason.

### III.    If the Court Were to Address the Merits, There Are Several Additional Reasons To Reject the Motion

#### A.    The Term Sheet Proposes Material Modifications to the Vacated Plan Regarding the Allocation of Funds Among the States that Violate Section 1123(a)(4) by Providing Disparate Treatment

Unlike the vacated Plan, which followed an agreed formula for allocation of funds among

the States that provided equal treatment for each class member, the Term Sheet proposes to

create an exclusive additional fund just for the Nine (and New Hampshire), even though the Nine

and every other state are members of the same class (4).  But section 1123(a)(4) of the

Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a

particular class, unless the holder of a particular claim or interest agrees to a less favorable

treatment of such particular claim or interest."  11 U.S.C. § 1123(a)(4).  "Equality of treatment

requires that all class members receive equal value and pay the same consideration in exchange

for their distributions."  *In re Breitburn Energy Partners LP*, 582 B.R. 321, 358 (Bankr.

S.D.N.Y. 2018) (citation omitted).  Although section 1123(a)(4) does not require equality of

result, it does require that all claimants in a class "have the same opportunity" to recover.  *In re*

*Republic Airways Holdings Inc.*, 565 B.R. 710, 728, n.13 (Bankr. S.D.N.Y. 2017) (citation

omitted).  Here, the Nine (and New Hampshire) are being afforded an opportunity that the

remaining States are not, and as a result, more than twenty of the disfavored States have objected

and stated that they do not consent to less favorable treatment.  *See* chart, *supra*, pp 3-4.  Thus,

the Term Sheet's proposed modification of the vacated Plan violates this confirmation

requirement—and contrary to the proposed order, contravenes a provision of the Bankruptcy

Code.  Approval should be denied for this reason as well.

> **B.    This Court is Being Asked to Confirm (Albeit on a Contingent
> Basis) a Revised Plan Without Having the Actual Revised Plan or
> a Disclosure Statement Describing the Proposed Material Changes
> to the Plan**

Debtors have failed to prepare and file the modified plan required by the Term Sheet,

which refers to the "Plan as modified by this settlement . . . ."  Motion, Ex. B at

"Acceptance/Effectiveness" ¶ 12.  At most, they have provided only an outline in the Term

Sheet, as a stand-alone agreement divorced from the plan confirmation process.  This Court is

being asked to confirm—on a contingent basis—a revised plan or a new plan without actually

having the plan itself (much less a disclosure statement).[4]  This does not satisfy the robust

---

[4] Contrast this case with that of *In re Retail Group, Inc.*, where the district court on appeal
similarly reversed the bankruptcy court's plan confirmation order based on impermissible non-
consensual releases for non-debtors and overly broad exculpation provisions.  *Patterson v.
Mahwah Bergen Retail Group, Inc.* (*In re Retail Group, Inc.*), No. 21-167, 2022 WL 135398, at
*41 (E.D. Va. Jan. 13, 2022).  As explained by the bankruptcy court on remand, the district court
"directed the Debtors to strike the third-party release contained in Article VIII.F of the Plan (the
"Third-Party Release") and modify the exculpation provision contained in Article VIII.G of the
Plan (the "Exculpation Provision") in a manner consistent with the Remand Opinion and seek re-
confirmation of the Plan as so modified."  ECF No. 2611, p. 2.  Debtors did exactly that, and the
bankruptcy court confirmed the plan as modified by the Remand Opinion on March 3, 2022,
without the need for the debtors to file a new plan and disclosure statement.  *Id.*

disclosure, solicitation, voting, and objection process contemplated by the Code and the Rules

for plan confirmation. Debtors effectively rely on sections 105 and 363 to approve the Term

Sheet as a way around chapter 11's disclosure and confirmation requirements.

      Although Debtors call this a "settlement," it is either a plan modification governed by the

rules applicable to plan modification,[5] or it is a new plan (incorporating illegal provisions)

subject to chapter 11's robust requirements for confirmation. But a plan modification titled as a

settlement remains a plan modification subject to section 1127: "[A] plan modification that

allegedly provides greater economic benefits for the estate and its creditors remains a plan

modification governed by § 1127—not a settlement to be reviewed under Rule 9019." *SCH*

*Corp. v. CFI Class Action Claimants*, 597 F. App'x 143, 148-49 (3d Cir. 2015) (holding that

"turning a five-year plan into an eight-year plan [by a settlement] constitutes a modification of

the plan itself"). Moreover, a settlement that is at odds with a confirmed plan may not be

approved outside of the plan modification process prescribed by section 1127.

"[I]mplementation of the proposed settlement would violate the Plan. In the absence of Plan

modification, there is no legal basis for such action and, consequently, no authority for judicial

approval of the proposed settlement agreement." *Ad Hoc Comm. of CTA Bondholders v. Cont'l*

*Airlines, Inc. (In re Cont'l Airlines)*, No. 93-252-SLR, 1994 WL 828457, at *5 (D. Del. June 8,

---

[5] Because of the odd procedural posture of the Motion and the requested relief—seeking to resurrect but also to modify a previously confirmed but now vacated Plan on which creditors voted—it is not entirely clear whether 11 U.S.C. § 1127(a) (before confirmation) or (b) (after confirmation before substantial consummation) governs the anticipated modification here or whether a modified plan must be filed before that determination can be made.

1994).[6]

But even if Debtors had filed an actual modified plan, they would still be required to comply with section 1125's disclosure requirements. 11 U.S.C. § 1127(c) ("The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified."). Although the recoveries to States other than the Nine (and New Hampshire) remain the same as under the vacated Plan, the Term Sheet nevertheless proposes to materially alter the allocations among the states under the vacated Plan. Not every modification requires a new disclosure statement and re-solicitation, but if the modification substantially changes the plan's terms, a new disclosure statement is required. *U.S. v. Frontier Airlines, Inc. (In re Frontier Airlines, Inc.),* 93 B.R. 1014, 1023 (Bankr. D. Colo. 1988) ("If the [plan] modification adversely affects the interests of a creditor who has previously accepted the plan, in more than a purely ministerial de minimis manner, that creditor should have the opportunity to reconsider and change his or her vote.") (footnote omitted). Moreover, the "severity of the modification need not be such as would motivate a claimant to change their vote—only that they would be apt to reconsider acceptance." *In re Am. Solar King Corp.,* 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988).

---

[6] The Term Sheet also proposes that the Shareholder Settlement, incorporated into the vacated Plan, be amended, but the Motion is internally contradictory on the issue. The Motion says that "no further approval of the Shareholder Settlement is necessary or being requested herein." Mtn. at 14. But the Motion seeks authorization to revise the Shareholder Settlement, Mtn. at 12 n.4, which the Confirmation Order said was only subject to non-substantive changes. Confirmation Order at 53. Based on both the Confirmation Order and section 1127, it seems that any amendment to the Shareholder Settlement would need to be approved by the Court, notwithstanding Debtors' contradictory statements otherwise.

### C.    Plan Payment of Non-Retained Attorneys' Fees Do Not Comply with Section 503(b)(3-4)

Like section 5.8 of the vacated Plan, the Term Sheet would pay legal fees for the Nine without any of them establishing that they made a substantial contribution to the case and without the Court's ability to review and approve the fee requests under the appropriate statutory standards.[7]    Thus, the Term Sheet does not comply with section 503(b)(4) of the Bankruptcy Code, which specifically addresses reimbursement to creditors of professional fee expenses for services incurred during the case and is the exclusive avenue for the payment of these type of administrative expenses.    *See Davis v. Elliot Mgmt. Corp. (In re Lehman Bros. Holdings, Inc.),* 508 B.R. 283, 289 (S.D.N.Y. 2014).    A court cannot approve a plan provision "that is merely a backdoor to administrative expenses."    *See id.* at 293.    *See also* 11 U.S.C. § 1123(b)(6) (plans may "include any appropriate provision not inconsistent with the applicable provisions of" the Bankruptcy Code).    Because "[t]he Bankruptcy Code is meant to be a 'comprehensive federal scheme . . . to govern' the bankruptcy process," *Lehman*, 508 B.R. at 294 (citation omitted), that "federal scheme cannot remain comprehensive if interested parties . . . in each case are free to tweak the law to fit their preferences."    *Id.* (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)).    If the Nine seek payment of such fees, they must file an application with the Court and meet their evidentiary burden for proving a "substantial contribution" in these cases pursuant to section 503(b)(3)(D).

---

[7] The United States Trustee objected to a similar provision in the vacated Plan providing for the payment of certain creditors' legal fees without a requirement that they comply with section 503(b)(3) and (4), and the Court overruled the objection.

15

**CONCLUSION**

WHEREFORE, the United States Trustee respectfully requests that the Court deny the

Motion, sustain the United States Trustee's objection, and grant all other relief that is just and

appropriate.

Dated: New York, New York
       March 8, 2022

                                        Respectfully submitted,

                                        WILLIAM K. HARRINGTON
                                        UNITED STATES TRUSTEE, Region 2


                                        By: */s/ Paul K. Schwartzberg*
                                        Paul K. Schwartzberg, Trial Attorney
                                        Department of Justice
                                        201 Varick Street, Room 1006
                                        New York, New York 10014
                                        Tel. (212) 510-0500

16