Kevin C. Maclay, Esq. (admitted *pro hac vice*)
Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*)
Todd E. Phillips, Esq.
George M. O'Connor, Esq. (admitted *pro hac vice*)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW, Suite 1100
Washington, DC 20005

*Counsel for the Multi-State
 Governmental Entities Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**RESPONSE OF THE MULTI-STATE GOVERNMENTAL ENTITIES GROUP
TO DEBTORS' MOTION TO APPROVE SETTLEMENT TERM SHEET**

The Multi-State Governmental Entities Group ("**MSGE Group**"), by and through its undersigned counsel, hereby submits this response to the Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Entry of an Order Authorizing and Approving Settlement Term Sheet [ECF No. 4410] ("**Motion**"), stating as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## BACKGROUND

1.     On September 15, 2019 ("**Petition Date**"), the Debtors commenced their reorganization cases under chapter 11 of the Bankruptcy Code ("**Chapter 11 Cases**").

2.     The MSGE Group consists of approximately 1,300 cities, counties, tribal nations, hospital districts, independent school districts, and other local governmental entities collectively representing a constituency of more than 60 million individuals across 37 states and territories of the United States.  Many members of the MSGE Group filed prebankruptcy lawsuits against the Debtors for their role in fostering the opioid crisis.

3.     On March 4, 2020, this Court appointed Messrs. Layn Phillips and Kenneth Feinberg as co-mediators to conduct mediation in these Chapter 11 Cases and directed the Debtors, the MSGE Group, and various ad hoc committees and groups to participate in mediation over myriad issues relating to allocation of estate assets.  *See* Order Appointing Mediators [ECF No. 895].  On September 30, 2020, this Court entered the Order Expanding Scope of Mediation [ECF No. 1756] further extending the period and scope of the mediators' appointment to encompass potential causes of action held by the Debtors' estates against the Sacklers.

4.     As part of the mediations, the governmental creditors agreed to a National Opioid Abatement Trust ("**NOAT**") that would serve as the mechanism for distributing abatement funds to state governments and communities in need.  *See* Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors at 26-29 [ECF No 2983].  The allocation of abatement funds would be governed by the NOAT's Trust Distribution Procedures ("**NOAT TDP**"), which, *inter alia*, provides mechanisms for localities to receive funding for opioid abatement and includes certain protections for local governments with respect to such funding.  *See* NOAT TDP §§ 5-6 [ECF No. 3232].  As reflected in the NOAT TDP,

the majority of funds going to governmental entities under the plan are going to local governments,

which is consistent with both the harms suffered by those localities and their citizens and with the

fact that local governments are at the front lines of the opioid epidemic and are best positioned to

abate the resulting harms.

5.      On September 17, 2021, this Court confirmed the Debtors' Twelfth Amended Joint

Plan of Reorganization ("**Plan**").[2]  In its September 17, 2021 Modified Bench Ruling on Request

for Confirmation of Eleventh Amended Joint Chapter 11 Plan ("**Modified Bench Ruling**"), this

Court noted the extraordinary level of consensus achieved among the parties supporting the Plan

that was reflected in, *inter alia*, the NOAT TDP, stating:

> [T]he abatement initiatives [in the Plan] reflect heavy input by all of the states and
> non-state governmental entities.  Again, to have reached agreement on these
> abatement metrics and mechanisms is an incredible achievement given the strong
> views that various parties have about what types of abatement are proper.

Modified Bench Ruling at 64-65 [ECF No. 3786].

6.      Eight state governments and the District of Columbia (collectively, the "**Nine**"),[3]

along with other parties in interest, appealed from the Confirmation Order to the District Court.

On December 16, 2021, the District Court vacated the Confirmation Order.  *In re Purdue Pharma,*

*L.P.*, 635 B.R. 26 (S.D.N.Y. 2021).

7.      On January 3, 2022, this Court entered the Order Appointing the Honorable Shelley

C. Chapman as Mediator [ECF No. 4260] and the Order Establishing the Terms and Conditions of

Mediation Before the Honorable Shelley C. Chapman [ECF No. 4261].  The MSGE Group was

---

[2]      *See* Findings of Fact, Concls. of L., & Order Conf. 12th Am. J. Ch. 11 Plan ("**Confirmation
Order**") [ECF No. 3787].

[3]      The eight States include California, Connecticut, Delaware, Maryland, New Hampshire,
Rhode Island, Vermont, and Washington.  Motion at 29 [ECF No. 4410].

not formally made a party to this mediation, although counsel for the MSGE Group did subsequently meet with the Mediator, and also had discussions with various other parties.

8.     On March 3, 2022, the Mediator filed the Mediator's Fourth Interim Report, describing and including the term sheet that is the subject of the Motion ("**Settlement Term Sheet**") [ECF No. 4409]; Motion Ex. B.  The Settlement Term Sheet provides, *inter alia*, for potentially more than $1.5 billion of additional funds to be made available to governmental entities for abatement of the opioid crisis.

## DISCUSSION

9.     As an initial matter, it is important to note the important, and positive, milestone that the Settlement Term Sheet represents.  First, it represents a significant additional financial contribution to help bolster all states, as well as all local governments—who are on the front lines of the opioid crisis.  The increased financial contribution of potentially over a billion and a half dollars is substantial, and would make a measurable difference to affected communities that are trying to save lives.  No one, including any state or other governmental entity, is made any worse off by the Settlement Term Sheet, which includes only *additional* funding and other supplemental and beneficial non-economic terms.

10.     Moreover, the Settlement Term Sheet has the potential to turn the primary objectors to the Plan into supporters, and thereby potentially expedite resolution of the pending appeals, which would itself be of enormous benefit to all affected victims and creditors.[4]  Further delay in abating the opioid crisis serves no one's interests.

_____

[4]   The MSGE Group disagrees with Florida's argument that this Court lacks jurisdiction to grant the relief sought in the Motion.  *See* The State of Florida's Objection to Motion of Debtors Pursuant to 11 U.S.C. § 105(a) and 363(b) for Entry of an Order Authorizing and Approving Settlement Term Sheet at 7-8 [ECF No. 4413].  The Motion merely seeks this Court's approval of the Settlement Term Sheet, which will enable the Debtors and other parties to move forward with

11.    Finally, the incredible complexities of this case, including the vast harm that has

been caused that far outstrips the available funds, the many interconnected parties, related political

sensibilities, and other non-economic hot-button issues make Judge Chapman's accomplishment

in helping the parties reach the agreement embodied in the Settlement Term Sheet all the more

remarkable.  The Settlement Term Sheet should be celebrated as a major accomplishment.

12.    That is not to say that the Settlement Term Sheet is perfect.  The MSGE Group has

reviewed and understands the concerns expressed by other groups, and is sympathetic to those

concerns. To the extent that the Nine are willing to address those concerns in the context of the

Settlement Term Sheet, that would be the best outcome here, and the MSGE Group supports that

outcome if it can be achieved.

13.    But it is also important to not let the perfect be the enemy of the good, in the event

that the Nine are unwilling to amend the Settlement Term Sheet sufficiently to fully address those

legitimate concerns.  The stakes here are too high to let this case devolve into a game of "chicken,"

with the all of its attendant risks to all parties.  There is not a single party that has been made worse

off by Settlement Term Sheet, and at the end of the day, it should be approved in a way that moves

this case forward in a positive direction, that does not risk the substantial additional funds that have

been pledged for opioid abatement, that does not risk the substantial non-economic terms also

agreed to, and that does not result in substantial additional delay in abating the harms caused by

the opioid crisis.

---

documenting the settlement contemplated in the Settlement Term Sheet and permit the Nine to
discontinue their active involvement in the Second Circuit appeal while the settlement is being
documented and finalized.  Accordingly, the Motion does not interfere with the matter currently
before the Second Circuit, so the Court has jurisdiction to grant the relief requested in the Motion.

14.     This process has already dragged on for far too long.  All parties need to work together to avoid the wasteful catastrophe that could result from the rejection of the Settlement Term Sheet.

15.     Specifically, the MSGE Group notes that approximately a quarter of the funds received as part of the supplemental consideration received in the Settlement Term Sheet are going to the supplemental opioid abatement fund ("**SOAF**"), while the rest are going to the Master Distribution Trust  ("**MDT**") and ultimately through the MDT to the NOAT and NOAT TDP.  The NOAT TDP [ECF No. 3232] was the product of thousands of hours of deliberation and negotiation among the parties for more than a year, including the first two court-ordered mediations.  *See* Modified Bench Ruling at 68-71 [ECF No. 3786].  The MSGE Group, as the only governmental consent party in these Chapter 11 Cases composed of solely non-state governmental entities (i.e. local governments), was charged by its constituents with attempting to ensure, among other things, that localities on the front lines of the opioid crisis would be afforded the opportunity to decide how to put abatement funds to best use within their communities and that historically underserved communities would be allocated their rightful share of abatement funds that would be distributed by the NOAT.

16.     But the MSGE Group understands that the funds going to the SOAF set forth in the Settlement Term Sheet both will be used for abatement, and will be handled consistently with the provisions of the previously-negotiated NOAT, including the provisions and protections for local governments included in sections 5 and 6 of the NOAT TDP that were foundational to the MSGE Group's support of the Plan.  These include procedural requirements to achieve a "Statewide Abatement Agreement" between States and localities and default distribution procedures to be used if a State and its local governments are unable to agree to a Statewide Abatement Agreement.

*See* NOAT TDP § 5, at 8-10 [ECF No. 3232].  These default protections for local governments range from community block grants, to the requirement to establish a local "Government Participation Mechanism" for statewide abatement allocation, and include the requirement of a fair "Regional Apportionment" of funds to all local governments within a state.  *See id.* §§ 5-6, at 4-13 [ECF No. 3232].

17.    Accordingly, subject to confirmation by the Nine that the MSGE Group's understanding is correct, the MSGE Group does not believe that the existence of the SOAF is a sufficient basis to deny approval of the Settlement Term Sheet.

## **CONCLUSION**

The Court should grant the Motion and approve the Settlement Term Sheet, with whatever improvements as can be reasonably achieved without scuttling the underlying settlements, so as to protect the important gains set forth therein and so as to clear the path to begin abating the opioid crisis as soon as possible.

Dated:  March 8, 2022                              Respectfully submitted,

_/s/ Kevin C. Maclay_
Kevin C. Maclay, Esq. (admitted _pro hac vice_)
Jeffrey A. Liesemer, Esq. (admitted _pro hac vice_)
Todd E. Phillips, Esq.
George M. O'Connor, Esq. (admitted _pro hac vice_)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Tel: (202) 862-5000
Fax: (202) 429-3301
kmaclay@capdale.com
jliesemer@capdale.com
tphillips@capdale.com
goconnor@capdale.com

_Counsel for the Multi-State_
_Governmental Entities Group_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 8th day of March 2022, I caused a copy of the foregoing to be served via ECF on all parties; and by electronic mail and by first-class mail, postage prepaid, on the following persons:

| | |
|---|---|
| **Ronald Bass, Sr. (*pro se*)**<br>450 Little Place<br>Apt. 53 N.<br>Plainfield, NJ 07060 | **Andrew Ecke (*pro se*)**<br>18 Meadowlark Rd.<br>West Simsbury, CT 06092 |
| **Maria Ecke (*pro se*)**<br>8 Glenbrook Dr.<br>West Simsbury, CT 06092 | **Richard Ecke (*pro se*)**<br>18 Meadowlark Rd.<br>West Simsbury, CT 06092 |
| **Ellen Issacs(*pro se*)**<br>P.O. Box 6553<br>Delray Beach, FL 33482 | |

*/s/ George M. O'Connor*
George M. O'Connor
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W., Suite 1100
Washington, D.C.  20005
Tel: (202) 862-5000
Fax: (202) 429-3301
goconnor@capdale.com