| | | |
|---|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | | **Hearing Date: March 10, 2022** |
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br><br>Debtors. | : : : : : : : | Chapter 11<br><br>Case No. 19-23649 (RDD)<br><br>Jointly Administered |

**LIMITED OBJECTION OF CERTAIN CANADIAN MUNICIPAL AND FIRST NATION CREDITORS TO THE MOTION ON SHORTENED NOTICE FOR A BANKRUPTCY COURT ORDER APPROVING A TERM SHEET AMONG THE SACKLERS, NINE STATES AND THE DISTRICT OF COLUMBIA**

**TO:  THE HONORABLE ROBERT D. DRAIN,**
**        UNITED STATES BANKRUPTCY JUDGE:**

For their limited objection and reservation of rights (the "Limited Objection") to the Debtors' Motion on Shortened Notice For a Bankruptcy Court Order Approving a Term Sheet Among The Sacklers, Nine States and the District of Columbia (the "Motion"), the certain Canadian Municipal and First Nation Creditors (the "CMFN") respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The CMFN were neither invited nor permitted to participate in the confidential settlement negotiations between the Sacklers (who are Appellants in matters pending before the Second Circuit) and the "Nine" (who are Appellees in the matters pending before the Second Circuit) that resulted in the Term Sheet ("Term Sheet") that has been presented to this Court on Motion on Shortened Notice for entry of a Bankruptcy Court Order approving same.

2. As such, the CMFN's entire knowledge of the process outlined by the Term Sheet is derived solely from the Debtors' Motion, the Term Sheet itself, and information gleaned from publicly filed Mediator reports.

1

3. The CMFN are also Appellees, and Cross Appellants, in the expedited Second Circuit matters, wherein all Appellees and Cross-Appellants briefs are due on Friday, March 11, 2022.

4. However laudable (and in some respects it is laudable) the result embodied in the Term Sheet may be, this Court, the CMFN and other creditors herein have been provided insufficient information by the Debtors, the Sacklers and the "Nine" to reasonably evaluate the effects and ramifications of a $1.6 billion dollar settlement not only with respect to the Debtors Twelfth Amended Plan (vacated by the District Court but subject to the Second Circuit Appeal), but also with respect to how the Terms Sheet will ultimately be embodied by written agreement, incorporated into the Twelfth Amended Plan or any other Plan, and most glaringly, funded.

5. Because only a Term Sheet, and no actual draft settlement documents have been presented to the Court, given the pending Appeals and the potential proximity of some form of Plan confirmation, not to mention the exceptional amounts described in the Term Sheet, it is asking a great deal of this Court to approve, and Creditors to take on faith, the skeletal provisions outlined on shortened notice, in the Term Sheet.

6. Under the Twelfth Amended Plan, the CMFN are not beneficiaries of the MDT or the NOAT. As such, increases in funding to same, or for that matter separately as to the "Nine" as described in the Term Sheet, do not apparently improve the CMFN's potential recovery in this case, unlike every other beneficiary of the MDT and NOAT.

7. Yet the primary concern for the CMFN lies in the lack of detail with respect to the funding of the Terms Sheet by the Sacklers through the sale of their IAC entities.

8. Only the Debtors' Application in Support of the Motion actually hints at where the funding for this Term Sheet will come from. The Debtors' Application at paragraph 24 states:

> "The Term Sheet provides that the Sackler Mediation Parties will pay an additional (i) $723,111,111.13 to the MDT on the schedule attached to the Term Sheet, (ii) **up to an additional $500 million, consisting of 90% of the amount by which specified net proceeds from the sale of the IACs exceed $4.3 billion, to the MDT,** (iii) $175 million to the MDT on the Effective Date in lieu of the requirements with respect to the Foundations under the Plan, and (iv) $276,888,888.87 to the SOAF, with the allocation of the SOAF funds as set forth in the Term Sheet." [Emphasis Added].

9. With reference to the above language, where emphasis was added, the Term Sheet does not actually indicate what or which "specified net proceeds" of IAC sales are committed to funding the Term Sheet. In fact, unlike what one would normally expect in a billion dollar term sheet, the Term Sheet goes into almost no detail with respect to funding.

10. In the Shareholder Settlement Agreement, "Purdue Canada" is defined as Bard Pharmaceuticals (1990) Inc., Elvium Life Sciences GP Inc., Elvium Life Sciences Limited Partnership, Elvium ULC, Purdue Frederick Inc. (Canada), Purdue Pharma, (Canada), Purdue Pharma Inc. (Canada), and Purdue Pharma ULC. (Main Case. CM/ECF Np. 3711)

11. All Purdue Canada entities are listed as IACs in the Shareholder Settlement Agreement (*Id.*).

12. Equally material, the Purdue Canada entities are also "Canadian Associated Entities" as defined with respect to the Recognition Order entered before the CCAA in Canada in the foreign non-main proceeding.

13. The CMFN's concern is that the Term Sheet may seek to further leverage Canadian IAC assets for the benefit of the US MDT and NOAT, to which the CMFN are not beneficiaries, and to the detriment of Canadian claims against Canadian assets in Canada.

14. The Terms Sheet is in effect almost entirely a settlement between two non-debtor groups (the Sacklers and their assets, and the Nine and their claims), for which the Debtors seek bankruptcy court imprimatur and blessing. This blessing, if given, should not be given without

3

full and clear disclosure of all agreements, documents and terms for the benefit of all parties in interest.

15. Full disclosure is material because the Sacklers have during this Chapter 11 matter permitted Debtor to restrict certain of their assets by allowing the Sackler Canadian IAC assets to be subject to restrictions before the CCAA in Canada.

16. According to the Debtors' Foreign Representatives' Canadian filings, the principal and initial reason for same was to protect the value of these assets from litigation during the pendency of this US case - ostensibly for the benefit of all creditors in this case. The price of that protection should be a two way street. More to the point, it appears that there is a risk in the Term Sheet of Canadian IAC assets being disproportionately directed to fund the Term Sheet, to the further detriment of the CMFN, who at least under the Twelfth Amended Plan are not even receiving benefit under the MDT or the NOAT, much less the SOAF.

17. Because of the lack of clarity with reference to this additional funding from the IACs, it is unclear whether the Purdue Canada IACs are to be employed in whole or in part to fund additional contributions under the Term Sheet.

18. There is as well a question of whether these Purdue Canada IAC Assets are subject to the CCAA proceeding, and in particular the Canadian Court's Recognition of the Related Party Stay. This stay is a creature of Canadian law, not the US stay or injunction. The CMFN posit that without clarity as to the extent to which Canadian IACs are subject the Term Sheet, the Term Sheet may violate the Related Party Stay Order in Canada, which states:

> "NO PROCEEDINGS AGAINST THE RELATED PARTIES 4. THIS COURT ORDERS that, subject to further Order of this Court on a motion brought in accordance with paragraph 7 of this Order, no proceeding (including any counterclaims, cross-claims and third party claims) or enforcement process shall be commenced or continued in any court or tribunal in Canada against the Related Persons, the U.S. Associated Entities or the Canadian Associated Entities, or their

4

current and future assets, undertakings and properties of every nature and kind whatsoever in Canada, including all proceeds thereof, in respect of any Opioid Claim prior to expiry of the injunction contained in the Preliminary Injunction Order or similar Order of the Bankruptcy Court, which may be extended from time to time (the "Related Party Stay Period"), and the Canadian Actions currently under way against or in respect of any of the Related Persons, the U.S. Associated Entities or the Canadian Associated Entities are hereby stayed and suspended pending further Order of this Court."

and

"NO EXERCISE OF RIGHTS OR REMEDIES AGAINST THE RELATED PARTIES 5. THIS COURT ORDERS that during the Related Party Stay Period, all rights and remedies of any Person against the Related Persons, the U.S. Associated Entities or the Canadian Associated Entities in respect of any Opioid Claim, are hereby stayed and suspended except with leave of this Court, provided that nothing in this Order shall (a) prevent the assertion of or the exercise of rights and remedies outside of Canada, (b) empower any of the Related Persons, the U.S. Associated Entities or the Canadian Associated Entities to carry on any business in Canada which they are not lawfully entitled to carry on, (c) affect such investigations or proceedings by a regulatory body as are permitted by section 11.1 of the CCAA, (d) prevent the filing of any registration to preserve or perfect a security interest, (e) prevent the registration of a claim for lien, or (f) affect or abrogate the automatic stay as to the Chapter 11 Debtors under section 362 of title 11 of the United States Code or the stay of proceedings in effect pursuant to the Supplemental Order."

Court File No.: CV-19-627656-00CL ONTARIO SUPERIOR COURT OF JUSTICE (COMMERCIAL LIST), Related Party Stay Recognition Order entered December 30, 2019.

19. It is difficult to argue that using the sale proceeds of Canadian IACs to further fund the US Plan, in addition to the extent such assets have already been committed, does not ultimately diminish not only the rights and claims of Canadian creditors like the CMFN and Toronto in the Chapter 11, but just as importantly, their rights to pursue claims against non-debtor Purdue Canada assets in Canada post confirmation.

20. If the Terms Sheet seeks to apply even greater amounts from the sale of Canadian IACs to the MDT, NOAT and SOAF, this is a material disadvantage to Canadian creditors in Canada, and before this Court, and both, and a material change to the terms of the already disputed

(and vacated, and appealed) Twelfth Amended Plan.

21. The approval of the Term Sheet, to the extent that it involves in any way the further proceeds of Canadian IACs, is a material modification of the terms of the Twelfth Amended Plan, should the vacation of that Plan be reversed on Appeal.

22. This Limited Objection presents far from insurmountable problems with respect to the Term Sheet, and the Motion. To cure these issues, the Debtors, the Sacklers and the Nine should be required to disclose whether and to what extent the assets of the Purdue Canada IACs will be dedicated to funding the Terms Sheet. Moreover, if and to the extent such disclosure reveals that Purdue Canada IAC assets will be dedicated upon sale to funding of the obligations under the Term Sheet, then same works a material modification of the Twelfth Amended Plan as to multiple Canadian creditors, and as such the Debtors should be required by any Order approving the Term Sheet to re-solicit the Plan in the event the Debtors and the Sacklers are successful on the current Appeal. As much has been suggested by other Objectors hereto.

Dated: March 8, 2022

Respectfully submitted,

/s/ Allen J. Underwood, II
**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Allen J. Underwood II, Esq.
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
e-mail: aunderwood@litedepalma.com