AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**SUMMARY COVER SHEET TO THE SEVENTH INTERIM FEE APPLICATION OF
AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.*,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF
OCTOBER 1, 2021 THROUGH AND INCLUDING JANUARY 31, 2022**

In accordance with the Local Bankruptcy Rules for the Southern District of New York,

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of

Unsecured Creditors of Purdue Pharma L.P. and its affiliated debtors and debtors in possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

submits this summary (the "Summary") of fees and expenses sought as actual, reasonable and

necessary in the fee application to which the Summary is attached (the "Application")[2] for the

period from October 1, 2021 through and including January 31, 2022 (the "Compensation

Period").

Akin Gump submits the Application as its seventh interim fee application in accordance

with the *Order Establishing Procedures for Interim Compensation and Reimbursement of

Expenses for Retained Professionals*, dated November 21, 2019 [ECF No. 529] (the "Interim

Compensation Order").

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors of Purdue Pharma L.P., *et al.* |
| Petition Date: | September 15, 2019 |
| Retention Date: | November 21, 2019, *nunc pro tunc* to September 26, 2019 |
| Prior Applications: | 6 |
| **Summary of Fees and Expenses Sought in this Application** | |
| Time Period Covered by this Application: | October 1, 2021 through and including January 31, 2022 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $7,503,658.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $173,260.89 |
| Total Compensation and Expenses Requested for the Compensation Period: | $7,676,919.39 |

---

[2] Capitalized terms used but not defined in the Summary shall have the meanings ascribed to such terms in the Application.

| *Summary of Past Requests for Compensation and Prior Payments* | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $81,782,697.04[3] |
| Total Expenses Approved by Interim Order to Date: | $4,013,035.94 |
| Total Allowed Compensation Paid to Date: | $81,782,697.04 |
| Total Allowed Expenses Paid to Date: | $4,013,035.94 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees for the period from October 1, 2021 through and including January 31, 2022):[4] | $6,002,926.80 |
| Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation | $173,260.89 |

---

[3] On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements. Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner, and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020. On September 2, 2020, the Court entered an order [ECF No. 1649] allowing the fees and expenses requested by Akin Gump in the Second Interim Fee Application in the total amount of $17,644,573.70, reflecting a fee reduction of $154,951.00 proposed by the Fee Examiner and agreed to by Akin Gump. On December 16, 2020, the Court entered an order [ECF No. 2144] allowing the fees and expenses requested by Akin Gump in the Third Interim Fee Application in the total amount of $23,354,168.98, reflecting a fee reduction of $104,373.25 and an expense reduction of $12,528.06 proposed by the Fee Examiner and agreed to by Akin Gump. On April 22, 2021, the Court entered an order [ECF No. 2698] allowing the fees and expenses requested by Akin Gump in the Fourth Interim Fee Application in the total amount of $17,613,290.00, reflecting a fee reduction of $69,671.00 and an expense reduction of $447.98 proposed by the Fee Examiner and agreed to by Akin Gump. On August 18, 2021, the Court entered an order [ECF No. 3603] allowing the fees and expenses requested by Akin Gump in the Fifth Interim Fee Application in the total amount of $8,809,645.85, reflecting a fee reduction of $58,043.46 and an expense reduction of $487.42 proposed by the Fee Examiner and agreed to by Akin Gump. On December 21, 2021, the Court entered an order [ECF No. 4240] allowing the fees and expenses requested by Akin Gump in the Sixth Interim Fee Application in the total amount of $6,879,230.65, reflecting a fee reduction of $36,011.00 and an expense reduction of $146.06 proposed by the Fee Examiner and agreed to by Akin Gump. The "Total Compensation Approved by Interim Order to Date" ($81,782,697.04) reflects the aforementioned reductions.

[4] As of the date of this Application, Akin Gump has filed monthly fee statements for each month comprising the Compensation Period. Pursuant to the Interim Compensation Order, Akin Gump has not yet received compensation for any fees or reimbursement of any expenses for the Twenty-Seventh and Twenty-Eighth Monthly Fee Statements. Akin Gump anticipates that it will receive 80% of the fees requested and 100% of the expenses requested in its Twenty-Seventh and Twenty-Eighth Monthly Fee Statements before the hearing on this Application. If such fees and expenses are paid as anticipated, as of the date of the hearing on this Application: (i) the total compensation sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $6,002,926.80; (ii) the total expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $173,260.89; (iii) the total compensation and expenses sought in this Application already paid pursuant to the Interim Compensation Order but not yet allowed will be $6,176,187.69; and (iv) the total compensation and expenses sought in this Application not yet paid will be $1,500,731.70.

| | |
|---|---|
| Order But Not Yet Allowed (100% of Expenses for the period from October 1, 2021 through and including January 31, 2022): | |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $6,176,187.69 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $1,500,731.70 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $467,723.82[5] |

### Summary of Rates and Other Related Information for the Compensation Period

| | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $1,141.27 |
| Blended Rate in this Application for All Timekeepers: | $1,074.95 |
| Number of Timekeepers Included in this Application: | 57 (45 attorneys; 12 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 8 |

---

[5] Prior to filing its Monthly Fee Statements for the Compensation Period, Akin Gump voluntarily reduced its fees by the aggregate amount of $465,824.50 and reduced its expenses by $1,899.32 to comply with section F of the *General Order M-447, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013. In the Chapter 11 Cases to date, Akin Gump has reduced its fees by the aggregate amount of $9,289,240.64, which amount includes, in addition to the above voluntary amount for the Compensation Period: (i) $362,267.00 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the First Interim Fee Period; (ii) a $123,722.43 fee reduction for the First Interim Fee Period pursuant to an agreement with the Fee Examiner; (iii) $866,524.00 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Second Interim Fee Period; (iv) a $154,951.00 fee reduction for the Second Interim Fee Period pursuant to an agreement with the Fee Examiner; (v) $4,059,658.00 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Third Interim Fee Period; (vi) a $104,373.25 fee reduction for the Third Interim Fee Period pursuant to an agreement with the Fee Examiner; (vii) $1,688,788.00 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Fourth Interim Fee Period; (viii) a $69,671.00 fee reduction for the Fourth Interim Fee Period pursuant to an agreement with the Fee Examiner; (vii) $654,520.50 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Fifth Interim Fee Period; (viii) a $58,043.46 fee reduction for the Fifth Interim Fee Period pursuant to an agreement with the Fee Examiner; (ix) $644,886.50 of voluntary fee reductions applied prior to the filing of each Monthly Fee Statement for the Sixth Interim Fee Period; and (viii) a $36,011.00 fee reduction for the Sixth Interim Fee Period pursuant to an agreement with the Fee Examiner. Akin Gump does not and will not seek payment of the foregoing fees and expenses in this Application or any other application. For the avoidance of doubt, the foregoing voluntary reductions are not based on any determination that such fees are not appropriate or compensable.

Increase in Rates Since Date of Retention:        3[6]

Interim or Final Application:        Interim

---

[6] Akin Gump increased its rates on January 1, 2020, January 1, 2021 and January 1, 2022 consistent with its customary practice and as disclosed in the Akin Retention Application, the *Fourth Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP, Nunc Pro Tunc, to September 26, 2019*, dated December 17, 2020 [ECF No. 2151] and the *Seventh Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P., et al. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP, Nunc Pro Tunc, to September 26, 2019*, dated December 21, 2021 [ECF No. 4245].

## SUMMARY OF MONTHLY FEE STATEMENTS IN THE COMPENSATION PERIOD

| Docket Number | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid | Total Unpaid |
|---|---|---|---|---|---|---|
| 4325 | 10/1/21 – 10/31/21 | $1,619,612.50 | $53,628.69 | $1,295,690.00 | $53,628.69 | $323,922.50 |
| 4381 | 11/1/21 – 11/30/21 | $1,658,199.00 | $26,673.59 | $1,326,559.20 | $26,673.59 | $331,639.80 |
| 4421 | 12/1/21 – 12/31/21 | $1,388,115.00 | $28,970.78 | $0.00 | $0.00 | $1,417,085.78 |
| 4533 | 1/1/22 – 1/31/22 | $2,837,732.00 | $63,987.83 | $0.00 | $0.00 | $2,901,719.83 |
| **Totals:** | | **$7,503,658.50** | **$173,260.89** | **$2,622,249.20** | **$80,302.28** | **$4,974,367.91** |

Summary of Any Objections to Monthly Fee Statements: None

Compensation and Expenses Sought in This Application Not Yet Paid: $7,676,919.39

vi

## COMPENSATION BY PROFESSIONAL
## OCTOBER 1, 2021 THROUGH AND INCLUDING JANUARY 31, 2022

| Partners | Department | Office | Year of Admission | 2021 Rate | 2022 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | NY | 2011 | $1,265.00 | $1,400.00 | 448.0 | $584,864.00 |
| Dean Chapman | Litigation | NY | 2011 | $1,265.00 | $1,400.00 | 76.5 | $101,605.50 |
| Julius Chen | Litigation | DC | 2010 | $1,075.00 | $1,185.00 | 427.1 | $468,559.50 |
| Ashley Crawford | Litigation | SF | 2003 | $1,135.00 | $1,265.00 | 75.8 | $91,961.00 |
| Olivier De Moor | Tax | NY | 2009 | $1,235.00 | N/A | 7.5 | $9,262.50 |
| Ira Dizengoff | Financial Restructuring | NY | 1992 | $1,655.00 | $1,775.00 | 6.3 | $11,014.50 |
| Mitchell Hurley | Litigation | NY | 1997 | $1,655.00 | $1,775.00 | 583.0 | $982,673.00 |
| Howard Jacobson | Tax | DC | 1979 | $1,310.00 | N/A | 7.3 | $9,563.00 |
| Eli Miller | Corporate | NY | 2009 | $1,135.00 | $1,245.00 | 114.6 | $130,940.00 |
| Arik Preis | Financial Restructuring | NY | 2001 | $1,655.00 | $1,775.00 | 411.4 | $699,131.00 |
| Joseph Sorkin | Litigation | NY | 2001 | $1,425.00 | $1,565.00 | 225.5 | $339,369.50 |
| Scott Welkis | Corporate | NY | 1997 | $1,450.00 | N/A | 72.4 | $104,980.00 |
| Justin Williams | Litigation | LO | 1993 | N/A | $1,525.00 | 9.5 | $14,487.50 |
| Sara Brauner | Financial Restructuring | NY | 2011 | $1,265.00 | $1,400.00 | 448.0 | $584,864.00 |
| Dean Chapman | Litigation | NY | 2011 | $1,265.00 | $1,400.00 | 76.5 | $101,605.50 |
| Julius Chen | Litigation | DC | 2010 | $1,075.00 | $1,185.00 | 427.1 | $468,559.50 |
| Ashley Crawford | Litigation | SF | 2003 | $1,135.00 | $1,265.00 | 75.8 | $91,961.00 |
| Olivier De Moor | Tax | NY | 2009 | $1,235.00 | N/A | 7.5 | $9,262.50 |
| Ira Dizengoff | Financial Restructuring | NY | 1992 | $1,655.00 | $1,775.00 | 6.3 | $11,014.50 |
| Mitchell Hurley | Litigation | NY | 1997 | $1,655.00 | $1,775.00 | 583.0 | $982,673.00 |
| Howard Jacobson | Tax | DC | 1979 | $1,310.00 | N/A | 7.3 | $9,563.00 |
| **Partner Total:** | | | | | | **2,464.9** | **$3,548,411.00** |

| Senior Counsel & Counsel | Department | Office | Year of Admission | 2021 Rate | 2022 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| David Giller | Litigation | NY | 2015 | $1,005.00 | $1,115.00 | 53.4 | $54,272.00 |
| Elizabeth Harris | Tax | NY | 1987 | $1,125.00 | $1,215.00 | 22.8 | $27,207.00 |
| Jeffrey Latov | Litigation | NY | 2017 | N/A | $1,095.00 | 34.5 | $37,777.50 |
| Edan Lisovicz | Financial Restructuring | NY | 2014 | $1,045.00 | $1,190.00 | 291.3 | $316,646.50 |

| Matthew Lloyd | Litigation | DA | 2012 | $980.00 | $1,085.00 | 15.2 | $15,767.50 |
|---|---|---|---|---|---|---|---|
| Anthony Loring | Financial Restructuring | NY | 2016 | $1,010.00 | N/A | 6.2 | $6,262.00 |
| Kristen Loveland | Litigation | DC | 2019 | $870.00 | $990.00 | 88.3 | $87,417.00 |
| Erin Parlar | Litigation | NY | 2015 | $1,005.00 | $1,190.00 | 518.1 | $553,195.00 |
| Katherine Porter | Litigation | NY | 2011 | $1,145.00 | $1,240.00 | 456.4 | $539,250.50 |
| James Salwen | Financial Restructuring | NY | 2017 | $895.00 | $1,095.00 | 156.2 | $171,039.00 |
| M. Todd Tuten | Public Law and Policy | DC | N/A | $1,095.00 | $1,185.00 | 16.1 | $18,322.50 |
| Katie Tongalson | Litigation | NY | 2017 | $940.00 | $1,055.00 | 13.5 | $14,242.50 |
| Dennis Windscheffel | Litigation | SA | 2004 | $1,020.00 | $1,105.00 | 172.1 | $179,613.50 |
| **Senior Counsel & Counsel Total:** | | | | | | **1,844.1** | **$2,021,012.50** |

| **Associates** | **Department** | **Office** | **Year of Admission** | **2021 Rate** | **2022 Rate** | **Total Hours Billed** | **Total Compensation** |
|---|---|---|---|---|---|---|---|
| Brooks Barker | Financial Restructuring | NY | 2018 | $895.00 | $1,045.00 | 373.3 | $352,163.50 |
| Megi Belegu | Litigation | NY | 2020 | $695.00 | $840.00 | 99.4 | $74,404.50 |
| Alan Carrillo | Financial Restructuring | DA | 2018 | $735.00 | $880.00 | 105.0 | $81,815.00 |
| Richard Cochrane | Litigation | DA | 2019 | N/A | $775.00 | 25.8 | $19,995.00 |
| Evan Frohman | Litigation | NY | 2021 | N/A | $755.00 | 73.7 | $55,643.50 |
| Madison Gafford | Litigation | DA | 2020 | $555.00 | $690.00 | 134.8 | $80,025.00 |
| Hayley High | Litigation | DA | 2019 | $625.00 | $775.00 | 78.7 | $51,362.50 |
| Patrick Glackin | Litigation | NY | 2019 | $770.00 | $925.00 | 267.5 | $232,573.00 |
| Jillian Kulikowski | Litigation | NY | 2019 | $770.00 | $925.00 | 154.1 | $128,406.50 |
| Kristen Loveland | Litigation | DC | 2019 | $870.00 | N/A | 127.8 | $111,186.00 |
| Joseph Lumley | Corporate | NY | 2020 | $855.00 | N/A | 18.0 | $15,390.00 |
| McKenzie Miller | Litigation | DC | 2020 | $625.00 | $775.00 | 23.6 | $16,415.00 |
| Thomas Napoli | Litigation | NY | N/A | N/A | $670.00 | 26.6 | $17,822.00 |
| Adam Parkins | Litigation | LO | 2021 | N/A | $670.00 | 17.1 | $11,457.00 |
| Jennifer Poon | Litigation | NY | 2016 | $940.00 | N/A | 9.3 | $8,742.00 |
| James Salwen | Financial Restructuring | NY | 2017 | $895.00 | N/A | 354.8 | $317,546.00 |
| Conor Tomalty | Litigation | HO | 2020 | $555.00 | $690.00 | 40.8 | $25,371.00 |
| Izabelle Tully | Litigation | NY | 2020 | $695.00 | N/A | 6.5 | $4,517.50 |

| Kaila Zaharis | Financial Restructuring | NY | N/A | $650.00 | $710.00 | 101.1 | $69,243.00 |
|---|---|---|---|---|---|---|---|
| **Associate Total:** | | | | | | **2,037.9** | **$1,674,078.00** |

| Staff Attorneys & Paraprofessionals | Department | Office | Year of Admission | 2021 Rate | 2022 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Frank Castro | Paralegal, Litigation | SF | N/A | $370.00 | N/A | 5.0 | $1,850.00 |
| Daniel Chau | EDiscovery | NY | N/A | $390.00 | $420.00 | 68.9 | $27,723.00 |
| Adria Hicks | Paralegal, Litigation | DC | N/A | N/A | $400.00 | 48.1 | $19,240.00 |
| Amy Laaraj | Paralegal, Litigation | NY | N/A | $370.00 | $400.00 | 50.3 | $19,253.00 |
| Melanie Langford | Paralegal Intellectual Property | SA | N/A | $275.00 | $300.00 | 53.8 | $15,970.00 |
| Dagmara Krasa | Paralegal, Financial Restructuring | NY | N/A | $440.00 | $475.00 | 290.2 | $130,565.00 |
| Kelsey Robins | Paralegal, Financial Restructuring | NY | N/A | $245.00 | N/A | 7.7 | $1,886.50 |
| Risa Slavin | Paralegal, Litigation | LC | N/A | $410.00 | N/A | 10.1 | $4,141.00 |
| Camille Schoonmaker | Paralegal, Litigation | DC | N/A | $230.00 | N/A | 21.6 | $4,968.00 |
| Doris Yen | Research & Information Services | PH | N/A | N/A | $325.00 | 6.1 | $1,982.50 |
| Karen Woodhouse | Practice Attorney, Litigation | NY | 2003 | $420.00 | $450.00 | 65.1 | $29,295.00 |
| Melodie Young | Practice Attorney, Litigation | NY | 2003 | N/A | $490.00 | 6.7 | $3,283.00 |
| **Staff Attorney & Paraprofessional Total:** | | | | | | **633.6** | **$260,157.00** |
| **Total Hours / Fees Incurred:** | | | | | | **6,980.50** | **$7,503,658.50** |

## COMPENSATION BY PROJECT CATEGORY
## <u>OCTOBER 1, 2021 THROUGH AND INCLUDING JANUARY 31, 2022</u>

| Task Code | Matter | Total Hours Billed | Total Value ($) |
|---|---|---|---|
| 2 | Case Administration | 99.9 | $48,502.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 206.1 | $182,500.50 |
| 4 | Analysis of Other Professional Fee Applications/Reports | 35.9 | $29,706.50 |
| 6 | Retention of Professionals | 4.7 | $5,619.50 |
| 7 | Creditor Committee Matters/Meetings (including 341 meetings) | 385.7 | $428,363.50 |
| 8 | Hearings and Court Matters/Court Preparation | 476.2 | $619,277.50 |
| 12 | Claims Analysis/Claims Objections (incl. Motions for Class Proofs of Claim) | 17.5 | $18,554.50 |
| 13 | Prepetition Transactions (incl. all Sackler transactions/ distributions) | 1,029.5 | $1,019,959.00 |
| 14 | Insurance Issues | 334.0 | $330,534.50 |
| 16 | Automatic Stay Issues | 2.4 | $2,258.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 27.9 | $33,225.00 |
| 18 | Tax Issues | 16.6 | $20,781.00 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 344.2 | $237,867.00 |
| 22 | Disclosure Statement/ Solicitation/ Plan/ Confirmation | 3,998.0 | $4,524,467.00 |
| 25 | Travel Time | 1.9 | $2,042.50 |
| **Total Hours / Fees Incurred:** | | **6,980.5** | **$7,503,658.50** |

x

**EXPENSE SUMMARY**
**OCTOBER 1, 2021 THROUGH AND INCLUDING JANUARY 31, 2022**

| Disbursement Activity | Amount ($) |
|---|---|
| Computerized Legal Research - Lexis - In Contract 30% Discount | $22,434.49 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $116,760.17 |
| Computerized Legal Research - Westlaw - Out of contract | $10.66 |
| Computerized Legal Research - Courtlink- In Contract 50% Discount | $4,988.35 |
| Computerized Legal Research - Other | $3,447.50 |
| Courier Service/Messenger Service - Off Site | $2,154.04 |
| Duplication - In House | $1,294.70 |
| Color Copy | $0.00 |
| Filing Fees | $2,730.00 |
| Imaging/Computerized Litigation Support | $9,927.08 |
| Meals - Overtime | $213.74 |
| Meals - Business | $92.00 |
| Meals (100%) | $220.00 |
| Overtime - Admin Staff | $237.67 |
| Postage | $289.37 |
| Professional Fees - Legal | $1,827.81 |
| Research | $15.32 |
| Reference Material | $188.28 |
| Transcripts | $3,729.82 |
| Travel - Ground Transportation | $1,325.70 |
| Travel - Lodging (Hotel, Apt, Other) | $414.81 |
| Travel - Train Fare | $532.76 |
| Local Transportation - Overtime | $426.62 |
| **Total Expenses Incurred:** | **$173,260.89** |

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

**SEVENTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.*, FOR
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD OF
OCTOBER 1, 2021 THROUGH AND INCLUDING JANUARY 31, 2022**

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Purdue Pharma, L.P. and its affiliated debtors and

debtors in possession (collectively, the "Debtors"), hereby submits its seventh application (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable
jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal
Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium
Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp.
(4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue
Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805),
Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes
Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC
Pharma Inc. (4014).

"Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York

(the "Local Bankruptcy Rules"), requesting interim allowance of compensation for services

rendered to the Committee for the period of October 1, 2021 through and including January 31,

2022 (the "Compensation Period") and for reimbursement of expenses incurred in connection

therewith.[2]  In support of this Application, Akin Gump submits the declaration of Arik Preis, a

partner at Akin Gump, which is attached hereto as **Exhibit A** and incorporated by reference into

this Application.  In further support of this Application, Akin Gump respectfully states as follows.

## **INTRODUCTION**

1.      By this Application, Akin Gump seeks: (i) interim allowance of compensation for

the professional services rendered by Akin Gump during the Compensation Period in the amount

of $7,503,658.50, representing 6346.9 hours of professional services and 633.6 hours of

paraprofessional and other non-legal services; and (ii) reimbursement of actual and necessary

expenses incurred by Akin Gump during the Compensation Period in the amount of $173,260.89.

2.      This Application has been prepared in accordance with the applicable provisions of

the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Establishing*

*Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals*,

dated November 21, 2019 [ECF No. 529] (the "Interim Compensation Order"), the Amended

Guidelines for Fees and Disbursements for Professionals in the Southern District of New York

(June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local

---

[2] Capitalized terms used but not otherwise defined in this Application shall have the meanings ascribed to such terms in the *Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated September 2, 2021 [ECF No. 3726] (the "Plan").

Guidelines") and the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases*, 78 Fed. Reg. 36248, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Committee has been given the opportunity to review this Application and the Chair (as defined below) has approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. Approval of this Application is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

A.      **The Debtors' Chapter 11 Cases**

7.      On September 15, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On September 26, 2019 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors*, dated

September 27, 2019 [ECF No. 131]. The Committee currently comprises eight members and three *ex officio* members.[3]

## B.    Retention of Akin Gump

9.    On the Formation Date, the Committee selected Akin Gump as its legal counsel. On November 5, 2019, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Purdue Pharma L.P. to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Counsel,* Nunc Pro Tunc *to September 26, 2019* [ECF No. 421] (the "Akin Retention Application"), which was granted by an order of this Court dated November 21, 2019 [ECF No. 522] (the "Akin Retention Order").[4]

10.    The Akin Retention Order authorizes the Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to September 26, 2019, all as contemplated by the Akin Retention Application. The Akin Retention Order further authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

---

[3] The Committee currently comprises the following members: (i) The Blue Cross and Blue Shield Association (the "Chair"); (ii) CVS Caremark Part D Services L.L.C. and CaremarkPCS Health L.L.C.; (iii) Cheryl Juaire; (iv) Kara Trainor; (v) LTS Lohmann Therapy Systems Corporation; (vi) Pension Benefit Guaranty Corporation; (vii) Walter Lee Salmons; and (viii) West Boca Medical Center, plus three *ex officio* members, Cameron County, Texas on behalf of the MSGE Group, the Cheyenne and Arapaho Tribes, on behalf of certain Native American Tribes and Native American-affiliated creditors, and Thornton Township High School District 205, on behalf of certain public school districts.

[4] The Committee selected Bayard, P.A ("Bayard") to serve as its "efficiency" counsel, Province, Inc. ("Province") to serve as its financial advisor, Jefferies LLC ("Jefferies") to serve as its investment banker, Kurtzman Carson Consultants LLC ("KCC") to serve as its information agent, KPMG LLP ("KPMG") to serve as joint tax consultant to the Committee and the Debtors and Bedell Cristin Jersey Partnership ("Bedell Cristin") to serve as special foreign counsel on September 29, 2019, October 1, 2019 and October 4, 2019, November 1, 2019, December 23, 2019, and February 27, 2020, respectively. Orders authorizing the retention of Bayard [ECF No. 523], Province [ECF No. 524], Jefferies [ECF No. 526], KCC [ECF No. 527] were entered on November 21, 2019, and orders authorizing the retention of KPMG and Bedell Cristin were entered on February 24, 2020 [ECF No. 867] and June 26, 2020 [ECF No. 1310], respectively. As disclosed in the *Notice of Change of Firm and Substitution of Counsel*, dated March 6, 2020 [ECF No. 900], Justin Alberto, who was serving as the primary attorney for the Committee at Bayard, resigned as a director at Bayard and became a member of the law firm of Cole Schotz P.C. ("Cole Schotz"). The Court entered an order authorizing the Committee's retention of Cole Schotz [ECF No. 1084] on April 24, 2020.

**C.      Appointment of Fee Examiner**

11.      On April 8, 2020, the Court entered the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 105(a) and Modifying Interim Compensation Procedures for Certain Professionals Employed Pursuant to 11 U.S.C. § 327*, dated April 8, 2020 [ECF No. 1023] appointing David M. Klauder, Esq. as fee examiner (the "Fee Examiner").  On May 26, 2020, the Court authorized the retention of Bielli & Klauder, LLC as counsel to the Fee Examiner.  *See Order Authorizing the Retention and Employment of Bielli & Klauder, LLC as Counsel to the Fee Examiner,* Nunc Pro Tunc *to the Appointment Date*, dated May 26, 2020 [ECF No. 1182].

**D.      Monthly Fee Statements**

12.      On January 10, 2020, Akin Gump filed and served the *First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of September 26, 2019 Through October 31, 2019*, dated January 10, 2020 [ECF No. 736] (the "First Monthly Fee Statement"),[5] pursuant to which Akin Gump sought payment of (i) $2,139,642.40 (80% of $2,674,553.00) as compensation for professional services rendered and (ii) $44,481.58 for reimbursement of expenses.  Akin Gump did not receive any objections to its First Monthly Fee Statement and received payment in respect thereof on February 10, 2020.

13.      On February 7, 2020, Akin Gump filed and served the *Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2019 Through November 30, 2019*, dated February 7, 2020 [ECF No. 812]

---

[5] A copy of the First Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzIzMjY4&id2=0.

(the "Second Monthly Fee Statement"),[6] pursuant to which Akin Gump sought payment of (i) 1,758,302.40 (80% of $2,197,878.00) as compensation for professional services rendered and (ii) $28,963.85 for reimbursement of expenses. Akin Gump did not receive any objections to the Second Monthly Fee Statement and received payment in respect thereof on March 2, 2020.

14. On March 10, 2020, Akin Gump filed and served the *Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2019 Through December 31, 2019* [ECF No. 904] (the "Third Monthly Fee Statement"),[7] pursuant to which Akin Gump sought payment of (i) $1,491,816.00 (80% of $1,864,770.00) as compensation for professional services rendered and (ii) $23,812.68 for reimbursement of expenses. Akin Gump did not receive any objections to the Third Monthly Fee Statement and received payment in respect thereof on March 30, 2020.

15. On March 13, 2020, Akin Gump filed and served the *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 Through January 31, 2019* [ECF No. 926] (the "Fourth Monthly Fee Statement"),[8] pursuant to which Akin Gump sought payment of (i) $2,480,835.20 (80% of $3,101,044.00) as compensation for professional services rendered and (ii) $68,475.18 for reimbursement of expenses. Akin Gump did not receive any objections to the Fourth Monthly Fee Statement and received payment in respect thereof on April 2, 2020.

---

[6] A copy of the Second Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzI4MTk2&id2=0.

[7] A copy of the Third Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM2OTgz&id2=0.

[8] A copy of the Fourth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4MzE3&id2=0.

16.     On March 16, 2020, Akin Gump filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al*., for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of September 26, 2019 Through and Including January 31, 2020* [ECF No. 947] (the "First Interim Fee Application"),[9] pursuant to which Akin Gump sought allowance of (i) $9,838,245.00 as compensation for professional services rendered and (ii) $165,733.29 for reimbursement of expenses.  On May 15, 2020, the Court entered an order [ECF No. 1159] allowing the fees and expenses requested by Akin Gump in the First Interim Fee Application, but deferring payment of all unpaid amounts[10] pending review by the Fee Examiner of the First through Fourth Monthly Fee Statements.  Following such review, Akin Gump agreed to certain reductions proposed by the Fee Examiner and on June 26, 2020, the Court entered an order [ECF No. 1306] authorizing and directing payment of $1,841,909.25 of the $1,967,649.00 held back amount, which amount was received on July 6, 2020.

17.     On April 29, 2020, Akin Gump filed and served the *Fifth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of February 1, 2020 Through February 29, 2020* [ECF No. 1105] (the "Fifth Monthly Fee Statement"),[11] pursuant to which Akin Gump sought payment of (i) $2,612,236.40 (80% of $3,265,295.50) as compensation for professional services rendered and (ii) $51,460.31 for reimbursement of

---

[9] A copy of the First Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzM4Nzk0&id2=0.
[10] Pursuant to Paragraph 2(vi) of the Interim Compensation Order, the payment received by Akin Gump for compensation allowed in connection with the First through Fourth Monthly Fee Statements was subject to a 20% holdback.
[11] A copy of the Fifth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MzcyNzgx&id2=0.

expenses. Akin Gump did not receive any objections to the Fifth Monthly Fee Statement and received payment in respect thereof on May 18, 2020.

18.     On May 18, 2020, Akin Gump filed and served the *Sixth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2020 Through March 31, 2020* [ECF No. 1165] (the "Sixth Monthly Fee Statement"),[12] pursuant to which Akin Gump sought payment of (i) $3,918,530.40 (80% of $4,898,163.00) as compensation for professional services rendered and (ii) $52,477.20 for reimbursement of expenses. Akin Gump did not receive any objections to the Sixth Monthly Fee Statement and received payment in respect thereof on June 8, 2020.

19.     On June 15, 2020, Akin Gump filed and served the *Seventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of April 1, 2020 Through April 30, 2020* [ECF No. 1276 ] (the "Seventh Monthly Fee Statement"),[13] pursuant to which Akin Gump sought payment of (i) $4,270,396.80 (80% of $5,337,996.00) as compensation for professional services rendered and (ii) $65,548.73 for reimbursement of expenses. Akin Gump did not receive any objections to the Seventh Monthly Fee Statement and received payment in respect thereof on July 6, 2020.

20.     On July 14, 2020, Akin Gump filed and served the *Eighth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of May 1,*

---

[12] A copy of the Sixth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=Mzk4MjYx&id2=0.

[13] A copy of the Seventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDIzNTky&id2=0.

*2020 Through May 31, 2020* [ECF No. 1382] (the "Eighth Monthly Fee Statement"),[14] pursuant to which Akin Gump sought payment of (i) $3,249,619.60 (80% of $4,062,024.50) as compensation for professional services rendered and (ii) $66,559.50 for reimbursement of expenses. Akin Gump did not receive any objections to the Eighth Monthly Fee Statement and received payment in respect thereof on July 28, 2020.

21.    On July 17, 2020, Akin Gump filed and served the *Second Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al., *for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of February 1, 2020 Through and Including May 31, 2020* [ECF No. 1441] (the "Second Interim Fee Application"),[15] pursuant to which Akin Gump sought allowance of (i) $17,563,479.00 as compensation for professional services rendered and (ii) $236,045.74 for reimbursement of expenses. Following discussions with the Fee Examiner, Akin Gump agreed to a voluntary reduction of $154,951.00 in the fees requested pursuant to the Second Interim Fee Application, and the Court entered an order granting the Second Interim Fee Application, including the agreed reduction, on September 2, 2020. *See Omnibus Order Granting Second Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [ECF No. 1649].

22.    On August 11, 2020, Akin Gump filed and served the *Ninth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of June 1,*

---

[14] A copy of the Eighth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDc1OTk3&id2=0.

[15] A copy of the Second Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NDgyNTY1&id2=0.

*2020 Through June 30, 2020* [ECF No. 1559] (the "Ninth Monthly Fee Statement"),[16] pursuant to which Akin Gump sought payment of (i) $3,599,723.20 (80% of $4,499,654.00) as compensation for professional services rendered and (ii) $128,348.37 for reimbursement of expenses. Akin Gump did not receive any objections to the Ninth Monthly Fee Statement and received payment in respect thereof on August 31, 2020.

23.    On September 16, 2020, Akin Gump filed and served the *Tenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of July 1, 2020 Through July 31, 2020* [ECF No. 1696] (the "Tenth Monthly Fee Statement),[17] pursuant to which Akin Gump sought payment of (i) $3,926,677.60 (80% of $4,908,347.00) as compensation for professional services rendered and (ii) $124,849.29 for reimbursement of expenses. Akin Gump did not receive any objections to the Tenth Monthly Fee Statement and received payment in respect thereof on October 8, 2020.

24.    On October 29, 2020, Akin Gump filed and served the *Eleventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of August 1, 2020 Through August 31, 2020* [ECF No. 1870] (the "Eleventh Monthly Fee Statement),[18] pursuant to which Akin Gump sought payment of (i) $4,599,810.80 (80% of $5,749,763.50) as compensation for professional services rendered and (ii) $646,665.40 for

---

[16] A copy of the Ninth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: [https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=NTc0MDc1&id2=0].

[17] A copy of the Tenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTA3MTAwNQ==&id2=0.

[18] A copy of the Eleventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExMTUyNA==&id2=0.

reimbursement of expenses. Akin Gump did not receive any objections to the Eleventh Monthly

Fee Statement and received payment in respect thereof on November 19, 2020.

25.    On November 11, 2020, Akin Gump filed and served the *Twelfth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of September 1, 2020 Through September 30, 2020* [ECF No. 1696] (the "Twelfth Monthly

Fee Statement),[19] pursuant to which Akin Gump sought payment of (i) $5,564,074.40 (80% of

$6,955,093.00) as compensation for professional services rendered and (ii) $458,349.73 for

reimbursement of expenses. Akin Gump did not receive any objections to the Twelfth Monthly

Fee Statement and received payment in respect thereof on December 7, 2020.

26.    On November 16, 2020, Akin Gump filed and served the *Third Interim Fee*

*Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of*

*Unsecured Creditors of Purdue Pharma L.P.,* et al.*, for Allowance of Compensation for Services*

*Rendered and Reimbursement of Expenses for the Period of June 1, 2020 Through and Including*

*September 30, 2020* [ECF No. 1983] (the "Third Interim Fee Application"),[20] pursuant to which

Akin Gump sought allowance of (i) $22,112,857.50 as compensation for professional services

rendered and (ii) $1,358,212.79 for reimbursement of expenses. Following discussions with the

Fee Examiner, Akin Gump agreed to a voluntary reduction of $104,373.25 in the fees and

$12,528.06 in the expenses requested pursuant to the Third Interim Fee Application, and the Court

entered an order granting the Third Interim Fee Application, including the agreed reductions, on

December 16, 2020. *See Omnibus Order Granting Third Interim Fee Applications of Professionals*

---

[19] A copy of the Twelfth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExNDU0Mg==&id2=0.

[20] A copy of the Third Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTExNjM5OA==&id2=0.

*for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [ECF No. 2144].

27.     On January 11, 2021, Akin Gump filed and served the *Thirteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of October 1, 2020 Through October 31, 2020* [ECF No. 2245] (the "Thirteenth Monthly Fee Statement")[21] pursuant to which Akin Gump sought payment of (i) 5,402,867.60 (80% of $6,753,584.50) as compensation for professional services rendered and (ii) $475,392.29 for reimbursement of expenses.  Akin Gump did not receive any objections to the Thirteenth Monthly Fee Statement and received payment in respect thereof on January 28, 2021.

28.     On January 28, 2021, Akin Gump filed and served the *Fourteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2020 Through November 30, 2020* [ECF No. 2330] (the "Fourteenth Monthly Fee Statement")[22] pursuant to which Akin Gump sought payment of (i) $3,610,640.80 (80% of $4,513,301.00) as compensation for professional services rendered and (ii) $441,183.42 for reimbursement of expenses.  Akin Gump did not receive any objections to the Fourteenth Monthly Fee Statement and received payment in respect thereof on February 18, 2021.

29.     On February 22, 2021, Akin Gump filed and served the *Fifteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

---

[21] A copy of the Thirteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTEzNzU4MA==&id2=0.

[22] A copy of the Fourteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE0MDQzOA==&id2=0.

*Period of December 1, 2020 Through December 31, 2020* [ECF No. 2407] (the "Fifteenth Monthly

Fee Statement")[23] pursuant to which Akin Gump sought payment of (i) $2,320,454.40 (80% of

$2,900,568.00) as compensation for professional services rendered and (ii) $350,047.89 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Fifteenth Monthly

Fee Statement and received payment in respect thereof on March 11, 2021.

30.    On March 12, 2021, Akin Gump filed and served the *Sixteenth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of January 1, 2021 Through January 31, 2021* [ECF No. 2473] (the "Sixteenth Monthly

Fee Statement")[24] pursuant to which Akin Gump sought payment of (i) $2,812,406.00 (80% of

$3,515,507.50) as compensation for professional services rendered and (ii) $390,403.14 for

reimbursement of expenses.  Akin Gump did not receive any objections to the Sixteenth Monthly

Fee Statement and received payment in respect thereof on April 1, 2021.

31.    On March 17, 2021, Akin Gump filed and served the *Fourth Interim Fee*

*Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of*

*Unsecured Creditors of Purdue Pharma L.P.,* et al., *for Allowance of Compensation for Services*

*Rendered and Reimbursement of Expenses for the Period of October 1, 2020 Through and*

*Including January 31, 2021* [ECF No. 2516] (the "Fourth Interim Fee Application"),[25] pursuant to

which Akin Gump sought allowance of (i) $17,682,961.00 as compensation for professional

services rendered and (ii) $1,657,026.74 for reimbursement of expenses.  Following discussions

---

[23] A copy of the Fifteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE3MjQ4Mw==&id2=0.

[24] A copy of the Sixteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE5NTgyNw==&id2=0.

[25] A copy of the Fourth Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTE5NzI5OQ==&id2=-1.

with the Fee Examiner, Akin Gump agreed to a voluntary reduction of $69,671.00 in the fees and $447.98 in the expenses requested pursuant to the Fourth Interim Fee Application, and the Court entered an order granting the Fourth Interim Fee Application, including the agreed reductions, on April 22, 2021. *See Omnibus Order Granting Fourth Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [ECF No. 2698].

32.     On May 3, 2021, Akin Gump filed and served the *Seventeenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of February 1, 2021 Through February 28, 2021* [ECF No. 2796] (the "Seventeenth Monthly Fee Statement"),[26] pursuant to which Akin Gump sought payment of (i) $1,981,484.80 (80% of $2,476,856.00) as compensation for professional services rendered and (ii) $286,755.59 for reimbursement of expenses.  Akin Gump did not receive any objections to the Seventeenth Monthly Fee Statement and received payment in respect thereof on May 27, 2021.

33.     On June 4, 2021, Akin Gump filed and served the *Eighteenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2021 Through March 31, 2021* [ECF No. 2994] (the "Eighteenth Monthly Fee Statement"),[27] pursuant to which Akin Gump sought payment of (i) $1,895,239.60 (80% of $2,369,049.50) as compensation for professional services rendered and (ii) $10,426.23 for

---

[26] A copy of the Seventeenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTIxMjE5NA==&id2=-1.

[27] A copy of the Eighteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTIyMzA5OQ==&id2=-1.

reimbursement of expenses. Akin Gump did not receive any objections to the Eighteenth Monthly

Fee Statement and received payment in respect thereof on June 24, 2021.

34.     On June 29, 2021, Akin Gump filed and served the *Nineteenth Monthly Fee
Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and
Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the
Period of April 1, 2021 Through April 30, 2021* [ECF No. 3081] (the "Nineteenth Monthly Fee
Statement"),[28] pursuant to which Akin Gump sought payment of (i) $1,534,428.00 (80% of
$1,918,035.00) as compensation for professional services rendered and (ii) $121,982.54 for
reimbursement of expenses. Akin Gump did not receive any objections to the Nineteenth Monthly
Fee Statement and received payment in respect thereof on August 5, 2021.

35.     On July 14, 2021, Akin Gump filed and served the *Twentieth Monthly Fee
Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and
Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the
Period of May 1, 2021 Through May 31, 2021* [ECF No. 3174] (the "Twentieth Monthly Fee
Statement," and together with the First through Nineteenth Monthly Fee Statements, the "Monthly
Fee Statements"),[29] pursuant to which Akin Gump sought payment of (i) $1,300,513.60 (80% of
$1,625,642.00) as compensation for professional services rendered and (ii) $59,429.87 for
reimbursement of expenses. Akin Gump did not receive any objections to the Twentieth Monthly
Fee Statement and received payment in respect thereof on August 23, 2021.

36.     On July 15, 2021, Akin Gump filed and served the *Fifth Interim Fee Application of
Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured*

---

[28] A copy of the Nineteenth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at:
https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTI0MTEyNg==&id2=-1.

[29] A copy of the Twentieth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at:
https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTI2MDU4Mg==&id2=-1.

*Creditors of Purdue Pharma L.P.,* et al.*, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of February 1, 2021 Through and Including June May 31, 2021* [ECF No. 3212] (the "Fifth Interim Fee Application"),[30] pursuant to which Akin Gump sought allowance of (i) $8,389,582.50 as compensation for professional services rendered and (ii) $478,594.23 for reimbursement of expenses.  Following discussions with the Fee Examiner, Akin Gump agreed to a voluntary reduction of $58,043.46 in the fees and $487.42 in the expenses requested pursuant to the Fifth Interim Fee Application, and the Court entered an order granting the Fifth Interim Fee Application, including the agreed reductions, on August 18, 2021. *See Omnibus Order Granting Fifth Interim Fee Applications of Professionals for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses* [ECF No. 3603].

37.    On September 24, 2021, Akin Gump filed and served the *Twenty-First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of June 1, 2021 Through June 30, 2021* [ECF No. 3820] (the "Twenty-First Monthly Fee Statement"),[31] pursuant to which Akin Gump sought payment of (i) $1,319,258.00 (80% of $1,649,072.50) as compensation for professional services rendered and (ii) $60,631.55 for reimbursement of expenses.  Akin Gump did not receive any objections to the Twenty-First Monthly Fee Statement and received payment in respect thereof on October 14, 2021.

38.    On October 18, 2021, Akin Gump filed and served the *Twenty-Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

---

[30] A copy of the Fifth Interim Fee Application can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTI2MjExNw==&id2=-1.

[31] A copy of the Twenty-First Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTI5MzI1Ng==&id2=-1.

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of July 1, 2021 Through July 31, 2021* [ECF No. 3976] (the "Twenty-Second Monthly Fee Statement"),[32] pursuant to which Akin Gump sought payment of (i) $1,730,807.20 (80% of $2,163,509.00) as compensation for professional services rendered and (ii) $64,503.00 for reimbursement of expenses. Akin Gump did not receive any objections to the Twenty-Second Monthly Fee Statement and received payment in respect thereof on November 22, 2021.

39.     On November 8, 2021, Akin Gump filed and served the *Twenty-Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of August 1, 2021 Through August 31, 2021* [ECF No. 4076] (the "Twenty-Third Monthly Fee Statement"),[33] pursuant to which Akin Gump sought payment of (i) $1,311,753.20 (80% of $1,639,691.50) as compensation for professional services rendered and (ii) $26,086.22 for reimbursement of expenses. Akin Gump did not receive any objections to the Twenty-Third Monthly Fee Statement and received payment in respect thereof on November 26, 2021.

40.     On November 12, 2021, Akin Gump filed and served the *Twenty-Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of September 1, 2021 Through September 30, 2021* [ECF No. 4106] (the "Twenty-Fourth Monthly Fee Statement"),[34] pursuant to which Akin Gump sought payment of (i) $1,033,670.80 (80% of $1,292,088.50) as compensation for professional services rendered and (ii) $19,805.44

---

[32] A copy of the Twenty-Second Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTMwMDIwNw==&id2 =-1.

[33] A copy of the Twenty-Third Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTMwNTU1MA==&id2=-1.

[34] A copy of the Twenty-Fourth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTMwNjkzMg==&id2=-1.

for reimbursement of expenses.  Akin Gump did not receive any objections to the Twenty-Fourth

Monthly Fee Statement and received payment in respect thereof on December 2, 2021.

41.     On November 15, 2021, Akin Gump filed and served the *Sixth Interim Fee*

*Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of*

*Unsecured Creditors of Purdue Pharma L.P.,* et al*., for Allowance of Compensation for Services*

*Rendered and Reimbursement of Expenses for the Period of June 1, 2021 Through and Including*

*September 30, 2021* [ECF No. 4133] (the "Sixth Interim Fee Application"),[35] pursuant to which

Akin Gump sought allowance of (i) $6,744,361.50 as compensation for professional services

rendered and (ii) $171,026.21 for reimbursement of expenses.  Following discussions with the Fee

Examiner, Akin Gump agreed to a voluntary reduction of $36,011.00 in the fees and $146.06 in

the expenses requested pursuant to the Sixth Interim Fee Application, and the Court entered an

order granting the Sixth Interim Fee Application, including the agreed reductions, on December

21, 2021.  *See Omnibus Order Granting Sixth Interim Fee Applications of Professionals for*

*Allowance and Payment of Compensation for Professional Services Rendered and for*

*Reimbursement of Actual and Necessary Expenses* [ECF No. 4240].

42.     On February 1, 2022, Akin Gump filed and served the *Twenty-Fifth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of October 1, 2021 Through October 31, 2021* [ECF No. 4325] (the "Twenty-Fifth Monthly

Fee Statement"),[36] pursuant to which Akin Gump sought payment of (i) $1,295,690.00 (80% of

$1,619,612.50) as compensation for professional services rendered and (ii) $53,628.69 for

---

[35] A copy of the Sixth Interim Fee Application can be accessed on the docket or on the Debtors' case website at:
https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTMwODA1OA==&id2=-1.

[36] A copy of the Twenty-Fifth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website
at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTMxODI0Mw==&id2=-1.

reimbursement of expenses. Akin Gump did not receive any objections to the Twenty-Fifth Monthly Fee Statement and received payment in respect thereof on March 17, 2022.

43.     On February 22, 2022, Akin Gump filed and served the *Twenty-Sixth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2021 Through November 30, 2021* [ECF No. 4381] (the "Twenty-Sixth Monthly Fee Statement"),[37] pursuant to which Akin Gump sought payment of (i) $1,326,559.20 (80% of $1,658,199.00) as compensation for professional services rendered and (ii) $26,673.59 for reimbursement of expenses. Akin Gump did not receive any objections to the Twenty-Sixth Monthly Fee Statement and received payment in respect thereof on March 17, 2022.

44.     On March 4, 2022, Akin Gump filed and served the *Twenty-Seventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2021 Through December 31, 2021* [ECF No. 4421] (the "Twenty-Seventh Monthly Fee Statement"),[38] pursuant to which Akin Gump sought payment of (i) $1,110,492.00 (80% of $1,388,115.00) as compensation for professional services rendered and (ii) $28,970.78 for reimbursement of expenses. As of the date hereof, Akin Gump has not received any objections to the Twenty-Seventh Monthly Fee Statement or any payments in respect thereof.

45.     On March 16, 2022 Akin Gump filed and served the *Twenty-Eighth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

---

[37] A copy of the Twenty-Sixth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTMyMTYwOQ==&id2=-1.

[38] A copy of the Twenty-Seventh Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTMyMzM3Nw==&id2=-1.

*Period of January 1, 2022 Through January 31, 2022* [ECF No. 4533] (the "Twenty-Eighth Monthly Fee Statement," and together with the First through Twenty-Eighth Monthly Fee Statements, the "Monthly Fee Statements"),[39] pursuant to which Akin Gump sought payment of (i) $2,270,185.60 (80% of $2,837,732.00) as compensation for professional services rendered and (ii) $63,987.83 for reimbursement of expenses.  As of the date hereof, Akin Gump has not received any objections to the Twenty-Eighth Monthly Fee Statement or any payments in respect thereof.

## SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

46.     By this Application, Akin Gump requests allowance of interim compensation for professional services rendered to the Committee during the Compensation Period in the amount of $7,503,658.50 and expense reimbursements of $173,260.89.  During the Compensation Period, Akin Gump professionals and paraprofessionals expended a total of 6,980.5 hours for which compensation is sought.

47.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

---

[39] A copy of the Twenty-Eighth Monthly Fee Statement can be accessed on the docket or on the Debtors' case website at: https://restructuring.primeclerk.com/purduepharma/Home-DownloadPDF?id1=MTMyNDU2Nw==&id2=-1.

48.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with its representation of the Committee in the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code against budgeted fees and hours is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services for the Committee during the Compensation Period have been filed and served with the Monthly Fee Statements in accordance with the Interim Compensation Order.

49.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

50.     Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

**SUMMARY OF SERVICES PERFORMED BY
AKIN GUMP DURING THE COMPENSATION PERIOD**

51.     The services provided by Akin Gump during the Compensation Period were actual and necessary for the administration of the Chapter 11 Cases, performed at the request of the Committee and commensurate with the complexity and significance of the matter.  Moreover, the nature of the issues in the Chapter 11 Cases and the need to act or respond to such issues on an expedited basis in furtherance of the Committee's objectives and the interests of the Debtors' unsecured creditors required the expenditure of significant time by Akin Gump professionals and paraprofessionals from numerous legal disciplines during the Compensation Period.

52.     The following is a summary of the professional services rendered by Akin Gump during the Compensation Period.  This summary is organized in accordance with Akin Gump's

internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee

Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services

performed in the category that most closely related to the services provided.  The below does not

include summaries for certain task codes for which a *de minimis* amount of time was billed during

the Compensation Period.

53.     Moreover, the following summary of services rendered during the Compensation

Period is not intended to be a detailed description of the work performed.  Rather, it merely is an

attempt to highlight certain of those areas in which services were rendered to the Committee, as

well as to identify some of the matters and issues that Akin Gump was required to address during

the Compensation Period.

**A.     General Case Administration (Task Code 2)**

| Total Hours | Fees |
|---|---|
| 99.9 | $48,502.50 |

54.     This  category  includes  time  spent  by  Akin  Gump  professionals  and

paraprofessionals performing various general administrative tasks necessary to the Committee's

involvement in the Chapter 11 Cases, including among other things: (i) maintaining distribution

lists; (ii) monitoring the docket for the Chapter 11 Cases and related proceedings and appeals to

track filings and to remain apprised of critical dates; (iii) ensuring that the appropriate parties and

professionals are notified of filed documents, relevant objection and response deadlines, hearing

dates and other critical dates; (iv) updating internal case calendars with key dates and deadlines;

(v) communicating with the members of the Committee, the Debtors' advisors and other parties in

interest regarding general case administration and related matters; and (vi) performing other

necessary general administrative tasks.

55.     During the Compensation Period, Akin Gump was in close contact with counsel to the Debtors and other relevant parties in interest on a regular basis to discuss when various motions and applications would be filed and the information the Committee would require to analyze each motion or application properly and in a timely manner.   Akin Gump also consulted with the Committee's other professionals on a regular basis with respect to documents and other information received from the Debtors, their representatives and other parties in interest.   In addition, Akin Gump professionals and paraprofessionals monitored the docket for the Chapter 11 Cases and related proceedings and appeals to remain apprised of all critical matters.   For each significant filing, Akin Gump professionals and paraprofessionals worked to ensure that the appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any other critical matters related thereto.   Due to Akin Gump's experience counseling official committees of unsecured creditors, Akin Gump believes it was able to address all issues relating to case administration that have arisen during the pendency of the Chapter 11 Cases in an effective and efficient manner.

**B.     Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
| --- | --- |
| 206.1 | $182,500.50 |

56.     This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the preparation of Akin Gump's monthly fee statements and fee applications.   During the Compensation Period, these efforts included ensuring that the schedules attached to the Twenty-Second, Twenty-Third, Twenty-Fourth, Twenty-Fifth, Twenty-Sixth and Twenty-Seventh Monthly Fee Statements complied with the Fee Guidelines, and that such schedules did not contain information that was privileged, confidential or subject to attorney work product protection.   Akin Gump professionals and paraprofessionals also prepared, filed and

served the Twenty-Second, Twenty-Third, Twenty-Fourth and Twenty-Fifth Monthly Fee Statements, as well as the Sixth Interim Fee Application.  To minimize costs in connection with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Monthly Fee Statements and schedules for the Sixth Interim Fee Application, thereby limiting the time spent by professionals on the review of fees, where reasonably practicable.

**C.    Analysis of Other Professionals' Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
|---|---|
| 35.9 | $29,706.50 |

57.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing monthly fee statements submitted to the Court by other estate-compensated professionals.  Akin Gump reviewed such fee statements to ensure that such professionals operated in accordance with their individual mandates and sought reasonable compensation and reimbursement of expenses in connection with their roles in the Chapter 11 Cases.  This category also includes time spent assisting the Committee's other professionals in reviewing, finalizing and filing their respective monthly fee statements and interim fee applications.

58.    In addition, Akin Gump professionals spent time during the Compensation Period reviewing and analyzing the *Debtors' Motion to Approve Payment or Reimbursement of Certain Fees and Expenses of the Non-Consenting States Group, the Ad Hoc Committee and the MSGE Group Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6005*, dated October 19, 2021 [ECF No. 3986] (the "Fee Motion"), by which the Debtors sought entry of an order authorizing them to pay and reimburse certain reasonable and documented fees and expenses of the Ad Hoc Group of Non-Consenting States (the "Non-Consenting States Group"), the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "Ad Hoc

Committee") and the Multi-State Governmental Entities Group (the "MSGE Group").  After
analyzing and discussing the Debtors' requested relief and issues relating thereto with the
Committee and participating in discussions regarding the fees and expenses requested by the Non-
Consenting States Group, Akin Gump professionals prepared and filed a statement informing the
Court that the Committee supported the proposed payment of the fees and expenses requested by
the Non-Consenting States Group and did not object to the proposed payment of certain fees and
expenses of the Ad Hoc Committee and the MSGE Group.  *See The Official Committee of
Unsecured Creditors' Statement in Respect of Debtors' Motion to Approve Payment or
Reimbursement of Certain Fees and Expenses of the Non-Consenting States Group, the Ad Hoc
Committee and the MSGE Group*, dated November 11, 2021 [ECF No. 4094].  The Court granted
the Fee Motion on November 30, 2021.  *See Order Granting Debtors' Motion to Approve Payment
or Reimbursement of Certain Fees and Expenses of the Non-Consenting States Group, the Ad Hoc
Committee, and the MSGE Group* [ECF No. 4185].

**D.    Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
| --- | --- |
| 385.7 | $428,363.50 |

59.    This category includes time spent by Akin Gump professionals and
paraprofessionals: (i) preparing for and participating in meetings and conference calls with the
Committee as a whole or with individual members of the Committee, including bi-weekly
conference calls with the full Committee; (ii) communicating with the Committee's other advisors
on a day-to-day basis regarding pending matters and case strategy; (iii) participating in meetings
and calls with various parties in interest on the Committee's behalf; (iv) responding to numerous
daily inquiries from individual creditors regarding various issues arising in connection with
Chapter 11 Cases, including reviewing and responding to numerous letters from incarcerated

claimants, and coordinating with counsel to the Debtors in connection therewith as appropriate; (v) providing Committee members with summaries and updates regarding Court filings and relevant response deadlines, hearing dates and any other critical matters related thereto; and (vi) attending to other general Committee matters.

60.    The Committee continued to play a very active[40] role in the Chapter 11 Cases during the Compensation Period.  Akin Gump, together with the Committee's other advisors, held no fewer than 16 telephonic meetings with the full Committee, in addition to numerous telephonic conferences with individual Committee members and subcommittees.  Prior to each biweekly telephonic meeting with the full Committee, Akin Gump professionals reviewed pending matters, prepared an agenda describing issues requiring the Committee's attention and coordinated with the Committee's other advisors regarding such matters.  In addition, Akin Gump professionals prepared and/or assisted the Committee's other advisors in preparing detailed memoranda and presentations for the Committee addressing pertinent matters in the Chapter 11 Cases.  During such meetings, Akin Gump assisted the Committee in fulfilling its statutory duty to exercise informed judgment regarding the various issues arising in the Chapter 11 Cases and formulating positions with respect to significant matters.  Akin Gump also sent daily email updates to the Committee to ensure the Committee remained apprised of relevant matters.

61.    Akin Gump professionals and paraprofessionals devoted a significant number of hours to these tasks during the Compensation Period to ensure that the Committee was prepared to make informed decisions with respect to significant case issues.  Although such tasks do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated

---

[40] *See, e.g.,* Transcript of June 3, 2020 Hearing 95:3–5 (THE COURT: "You have an ***active***, well-informed and diligent official creditors committee that represents everyone.") (emphasis added); Transcript of September 30, 2020 Hearing 83:12–13 (THE COURT: "We have had an extremely active and well represented and thoughtful official Creditors' Committee.").

the Committee's participation in the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

62.    Importantly, this category also includes time spent by Akin Gump professionals, on behalf of the Committee, responding to inquiries from unsecured creditors in order to fulfill the Committee's responsibility under Bankruptcy Code section 1102(b)(3) to "provide access to information for creditors . . . not appointed to the [Official C]ommittee." At the beginning of the Chapter 11 Cases, the Court entered the *Order Clarifying the Official Committee's Requirement to Provide Access to Confidential or Privileged Information and Approving a Protocol Regarding Creditor Requests for Information*, dated December 23, 2019 [ECF No. 699], which authorized the Committee to establish a website at which creditors can receive information regarding the status of the Chapter 11 Cases (among other things). The Committee's website, which is maintained by KCC, makes general information about the Chapter 11 Cases available to creditors, including information regarding case developments, key contact information and a detailed case calendar addressing upcoming hearings and other critical events. Akin Gump professionals, in coordination with KCC, posted relevant updates and materials on the Committee's website, including detailed case calendars, information regarding significant case developments and key contact information.

63.    Due to the high-profile nature of the Chapter 11 Cases, Akin Gump professionals fielded a very high volume of inquiries from creditors, including frequent inquiries from many of the more than 130,000 personal injury victims that filed claims against the Debtors. Akin Gump professionals devoted a significant amount of time to communicating with such claimants, including numerous incarcerated individuals, in order to inform them of the many significant developments that occurred during the Compensation Period, the impact of such developments on

the anticipated timeline of the Chapter 11 Cases and the status of their claims. Since the beginning of the Chapter 11 Cases, Akin Gump professionals have communicated, often on multiple occasions, with more than 500 personal injury claimants, including more than 150 personal injury claimants during the Compensation Period.

### E.    Hearings and Court Matters/Meetings (Task Code 8)

| Total Hours | Fees |
|---|---|
| 476.2 | $619,277.50 |

64.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with court hearings and status conferences held during the Compensation Period, including the hearings before the United States District Court for the Southern District of New York (the "District Court") in connection with the appeals (the "District Court Appeals") taken by certain parties (the "Confirmation Appellants")[41] of the Court's bench ruling[42] and order[43] confirming the Plan. Specifically, Akin Gump professionals and paraprofessionals prepared for and participated in each of the six hearings before the Court and the two hearings before the District Court during the Compensation Period, and coordinated with the advisors to the Debtors and the various creditor groups participating in the District Court Appeals in support of the Plan and the Confirmation Order (collectively, the "Supporting Claimants") as

---

[41] The Confirmation Appellants are: (i) the U.S. Trustee; (ii) the States of California, Connecticut, Delaware, Maryland, Oregon, Rhode Island, Vermont and Washington and the District of Columbia; (iii) representatives of certain Canadian municipalities and First Nations creditors (collectively, the "CMFN Appellants"); and (iv) three *pro se* individuals, Ronald Bass, Maria Ecke and Ellen Isaacs.

[42] *See Modified Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter 11 Plan*, dated September 17, 2021 [ECF No. 3786] (the "Modified Bench Ruling").

[43] *See Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated September 17, 2021 [ECF No. 3787] (the "Confirmation Order"). In addition, the U.S. Trustee appealed the *Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information, and (III) Granting Other Related Relief*, dated September 15, 2021 [ECF No. 3773].

necessary.[44]  Prior to each hearing or status conference, Akin Gump professionals, together with the Committee's other advisors, reviewed and analyzed all relevant issues, motions and applications filed with the Court, including any objections and responses thereto, discussed with the relief requested with the advisors to the Debtors and other parties in interest and, as necessary, asserted the Committee's positions at such hearings and status conferences.  In addition, following each hearing or status conference, Akin Gump professionals provided the Committee with summaries and analyses of the results thereof, either in written form or telephonically during the next Committee meeting.

65.    In particular, Akin Gump professionals spent significant time during the Compensation Period preparing for and attending (i) the October 14, 2021 hearing on the motions filed by certain Confirmation Appellants seeking certification of a direct appeal to the United States Court of Appeals for the Second Circuit (the "Second Circuit") of the Confirmation Order,[45] (ii) the November 9, 2021 hearing on the motions filed by the U.S. Trustee, the States of Washington, Connecticut and Maryland, the CMFN Appellants, and *pro se* claimants Ronald Bass and Ellen Isaacs requesting a stay of the Confirmation Order pending appeal[46] and (iii) the October

---

[44] The Supporting Claimants are: (i) the Ad Hoc Committee; (ii) the MSGE Group; (iii) the Ad Hoc Group of Individual Victims; (iv) the Ad Hoc Group of Hospitals; and (v) the Ad Hoc Committee of NAS Children.

[45] *See United States Trustee's Memorandum of Law in Support of Motion to Certify Direct Appeal to the Court of Appeals Under 28 U.S.C. § 158(d)*, dated October 1, 2021 [ECF No. 3868]; (ii) *The Appealing States' Motion for Certification Pursuant to 28 U.S.C. § 158(d)(2)(A)* , dated October 1, 2021 [ECF No. 3871]; (iii) *California's Request for Certification of Direct Appeal to the Court of Appeals and Joinder to the Appealing States' Motion for Certification Under 28 U.S.C. § 158(d)(2)(A)*, dated October 1, 2021 [ECF No. 3874]; and (iv) *Joinder of Certain Municipality and First Nations Creditors and Appellants, in Support of the Motions by the Office of the United States Trustee and the Appealing States for Certification of a Consolidated and Expedited Direct Appeal to the Court of Appeals for the Second Circuit*, dated October 7, 2021 [ECF No. 3913] (collectively, the "Direct Certification Motions").

[46] *See Memorandum of Law In Support of United States Trustee's Expedited Motion for a Stay of Confirmation Order and Related Orders Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8007*, dated September 15, 2021 [ECF No. 3778]; *Motion of the States of Washington and Connecticut for a Stay Pending Appeal*, dated September 19, 2021 [ECF No. 3789]; *Motion for Stay Pending Appeal of Confirmation and Trust Advances Orders*, dated September 29, 2021 [ECF No. 3845]; *Motion for Stay Pending Appeal*, dated December 1, 2021 [ECF No. 3860]; *Motion for Stay Pending Appeal filed by Allen J. Underwood on behalf of Certain Canadian Municipality Creditors and Canadian First Nation Creditors*, dated December 1, 2021 [ECF No. 3873]; *Motion of Ellen Isaacs,*

12, 2021 hearing before the District Court on the *Emergency Motion of Appellant William K. Harrington, United States Trustee for a Stay Pending Appeal*, Case No. 7:21-cv-07966-CM (S.D.N.Y. Oct. 8, 2021) [ECF No. 19] (the "UST Stay Motion" and, together with the Bankruptcy Court Stay Motions, the "Stay Motions").

66.     In connection with the foregoing, Akin Gump professionals communicated with the advisors to the Debtors and the Supporting Claimants regarding the appropriate response and strategy in respect of the Direct Certification Motions and the Stay Motions and prepared oral argument regarding the same. Akin Gump professionals also worked with Committee members Cheryl Juaire and Kara Trainor to prepare their declarations in support of the Committee's opposition to the Stay Motions and prepared Ms. Juaire and Ms. Trainor to testify at the hearing on such motions, to the extent necessary.

67.     With respect to the hearing on the merits of the District Court Appeals, Akin Gump professionals spent significant time during the Compensation Period preparing for and participating in oral argument, which was held on November 30, 2021. Among other things, Akin Gump professionals (i) researched and analyzed all relevant issues raised in the District Court Appeals, (ii) discussed and coordinated strategy and responses to the positions taken by the Confirmation Appellants with the advisors to the Debtors and the Supporting Claimants and (iii) conducted research and analysis in connection with preparation of oral argument in support of the Committee's position, including in response to the District Court's *Questions for Oral Argument*, No. 7:21-cv-7532-CM [ECF No. 280] (S.D.N.Y. Nov. 26, 2021).

**F.      General Claims Analysis/Claims Objections (Task Code 12)**

---

*Deceased Patrick Ryan Wroblewski & the American People for a Stay Pending Appeal*, dated December 6, 2021 [ECF No. 3890] (the "Bankruptcy Court Stay Motions").

| Total Hours | Fees |
|---|---|
| 17.5 | $18,554.50 |

68.     This category includes time spent by Akin Gump professionals in connection with the vast universe of claims against the Debtors, including without limitation contingent litigation claims by personal injury victims, hospitals, insurance ratepayers, third-party payors, health plans, states, municipalities, the United States, Native American tribes and children born with neonatal abstinence syndrome ("NAS").  In particular, Akin Gump professionals spent time during the Compensation Period addressing various motions filed by *pro se* claimants seeking leave to have personal injury proofs of claim that were filed after the claims bar date deemed timely.[47]  Akin Gump professionals reviewed each Late Claim Motion, discussed the basis for the relief requested therein with the advisors to the Debtors and the Ad Hoc Group of Individual Victims and communicated its position on such motions to the parties.

**G.    Prepetition Transactions (Task Code 13)**

| Total Hours | Fees |
|---|---|
| 1,029.5 | $1,019,959.00 |

---

[47] *See Motion to File Proof of Claim After Claims Bar Date*, filed by Emanuel Thirkill on August 24, 2021 [ECF No. 3764]; *Letter Requesting Payment*, filed by Stephanie Lubinski on September 1, 2021 [ECF No. 3723]; *Motion of Howard Adelglass to File a Proof of Claim after Claims Bar Date,* dated September 29, 2021 [ECF No. 3840]; *Motion to File Proof of Claim after Claims Bar Date*, filed by LaMont Broussard on September 27, 2021 [ECF No. 3893]; *Motion to File Claim after Claims Bar Date*, filed by Johnathan Maae on September 27, 2021 [ECF No. 3894]; *Motion to File Claim after Claims Bar Date*, filed by Geoffrey Carpenter on September 27, 2021 [ECF No. 3895]; *Motion to File Proof of Claim after Claims Bar Date*, filed by Don W. Hardin on October 6, 2021 [ECF No. 3897]; *Motion to File Proof of Claim after Claims Bar Date*, filed by Robert P. Caulk on November 3, 2021 [ECF No. 4072]; *Motion to File Proof of Claim After Claims Bar Date*, filed by Lamere Wilmer-Williamson on November 5, 2021 [ECF No. 4073]; *Motion to File Proof of Claim After Claims Bar Date*, filed by Brittany N. Johnson on November 17, 2021 [ECF No. 4156]; *Motions to File Claim after Claims Bar Date*, filed by Shannie Jenkins on November 29, 2021 [ECF No. 4219]; *Motion to Extend Time*, filed by Larry Dale Evjene on December 10, 2021 [ECF No. 4231]; *Motion to File Proof of Claim After Claims Bar Date*, filed by Eddie Ray Hall on December 17, 2021 [ECF No. 4230]; *Motion to File Proof of Claim After Claims Bar Date*, filed by Wayne Miller on December 28, 2021 [ECF No. 4294]; *Motion to File Proof of Claim After Claims Bar Date*, filed by David Mullen on January 3, 2022 [ECF No. 4262]; *Motion to File Proof of Claim After Claims Bar Date*, filed by Devin A. Pratt on January 3, 2022 [ECF No. 4275]; *Motion to Accept the Personal Injury Claim No. 628554 for the Estate of David Jonathan Ecke*, dated January 1, 2022 [ECF No. 4297] (collectively, the "Late Claim Motions").

69.     This category includes time spent by Akin Gump professionals and paraprofessionals investigating and evaluating potential estate causes of action, including those against the Sacklers and certain affiliated entities, arising from prepetition transfers of value or the incurrence of obligations from the Debtors to other entities, as well as numerous other potential causes of action arising out of prepetition conduct and transactions.  Throughout the pendency of these Chapter 11 Cases, such efforts involved extensive legal research with respect to identifying and analyzing potential causes of action, as well as potential defenses to such causes of action.

70.     During the Compensation Period, Akin Gump professionals worked with the Committee's other advisors on a variety of tasks related to its investigation of potential estate claims, including but not limited to researching, drafting, revising and refining legal and factual analyses related to the merits of the estate claims and any potential defenses thereto.  Akin Gump professionals also conducted extensive research and analysis and prepared work product related to potential processes and procedures for asserting and pursuing the estate claims, as and when needed.

71.     The above efforts, which remain ongoing, were undertaken in recognition of the possibility that the ultimate resolution of the remaining District Court Appeals and the subsequent appeals of the District Court Decision to the Second Circuit (the "Second Circuit Appeals" and, together with the District Court Appeals, the "Appeals") could render the settlement with the Sacklers contemplated by the Plan unsalvageable, thereby necessitating litigation against the Sacklers and related parties in order to monetize the estate claims.  Although the Committee believes the District Court's decision vacating the Confirmation Order[48] was wrongly decided and will be reversed by the Second Circuit, the District Court Decision has heightened the need to

---

[48] *See Decision and Order on Appeal*, Case No. 7:21-cv-7532-CM [ECF No. 280] (S.D.N.Y. Dec. 16, 2021) (the "District Court Decision").

ensure that the Debtors' estates are prepared to commence and pursue litigation regarding the estate claims, including measures necessary to ensure recovery on such claims, as and when necessary.[49]

## H.    Insurance Issues (Task Code 14)

| Total Hours | Fees |
|:---:|:---:|
| 334.0 | $330,534.50 |

72.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the Committee's ongoing investigation into the scope, value and limitations of the Debtors' various insurance policies.  During the Compensation Period, Akin Gump professionals continued performing comprehensive analyses regarding the potential availability of insurance coverage for opioid-related claims against the Debtors, including under the Debtors' directors and officers, general liability and products liability insurance policies.

73.    Specifically, Akin Gump professionals spent significant time addressing various issues arising in connection with the adversary proceeding against the Debtors' insurers commenced by the Debtors, the Ad Hoc Committee and the Committee on January 29, 2021, captioned *Purdue Pharma L.P. v. AIG Specialty Insurance Company (f/k/a American International Specialty Lines Insurance Company)*, Adv. Pro. No. 21-7005 (Bankr. S.D.N.Y. 2021) (the "Insurance Adversary Proceeding").  Among other things, Akin Gump professionals worked with the advisors to the Debtors and the Ad Hoc Committee on the identification, exchange and coordination of discovery related to the Insurance Adversary Proceeding and participated in meet

---

[49] Following the end of the Compensation Period, the Court authorized the Debtors to enter into a term sheet reflecting a supplemental settlement (the "Supplemental Shareholder Settlement") among the District of Columbia and the eight states that appealed the Confirmation Order (collectively, the "Nine") and the Sackler family, pursuant to which the Nine agreed to withdraw their opposition to the Second Circuit Appeals in exchange for, among other things, additional contributions from the Sackler family incremental to their contribution under the Plan and Shareholder Settlement Agreement.  *See Order Pursuant to 11 U.S.C. §§ 105 and 363(b) Authorizing and Approving Settlement Term Sheet*, dated March 10, 2022 [ECF No. 4503].  Because consummation of the Supplemental Shareholder Settlement remains contingent on a decision from the Second Circuit reversing the District Court Decision and upholding the Confirmation Order, the Committee's efforts to prepare to pursue the estate claims, to the extent necessary, remain ongoing.

and confer conferences with counsel to the Debtors' insurers, including with respect to scheduling, discovery and potential stipulations. Akin Gump professionals also coordinated closely with the advisors to the Debtors and the Ad Hoc Committee to analyze and refine the parties' strategy in connection with the Insurance Adversary Proceeding and provided the Committee with updates and analyses in connection with the foregoing.

## I.    Adversary Proceedings (Task Code 17)

| Total Hours | Fees |
|:---:|:---:|
| 27.9 | $33,225.00 |

74.    This category includes time spent by Akin Gump professionals in connection with the adversary proceeding commenced by the Debtors on September 18, 2019, captioned *Purdue Pharma L.P. v. Commonwealth of Massachusetts*, Adv. Pro. No. 19-8289 (Bankr. S.D.N.Y. 2019) and matters relating to the *Order Pursuant to 11 U.S.C. § 105(a) Granting, in Part, Motion for a Preliminary Injunction, dated October 11, 2019* [Adv. Pro. No. 19-8289, ECF No. 82] (as amended, the "<u>Preliminary Injunction</u>"), which stayed all litigation against the Debtors, the Sacklers and certain related parties for an initial period of 180 days and was subsequently extended on numerous occasions, including an extension granted on September 2, 2021, which extended the Preliminary Injunction through and including the entry of the Confirmation Order and the expiration of the stay of such Confirmation Order pursuant to Bankruptcy Rule 3020(e). *See Twenty-First Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* [Adv. Pro. No. 19-8289, ECF No. 287]. On September 17, 2021, the Court entered the Confirmation Order, paragraph 56(a) of which provided that the Preliminary Injunction would remain in force through the effective date of the Plan.

75.    Following the District Court Decision vacating the Confirmation Order, the Debtors, the Committee and other key creditor constituencies discussed the prospect of a limited

extension of the Preliminary Injunction given that no prior order of the Court addressed the status

of the Preliminary Injunction in the event the Confirmation Order is vacated and the Plan is unable

to go into effective.  Ultimately, the Debtors determined to request an extension of the Preliminary

Injunction through and including February 1, 2022, which relief was requested on an expedited

basis due to the December 30, 2021 termination of the stay of the District Court Decision pursuant

to Bankruptcy Rule 8025(a).  Akin Gump professionals communicated with the Committee and

the advisors to the Debtors and key creditor constituencies regarding various considerations related

to the proposed extension, including its duration, and reviewed and analyzed the objections filed

in opposition to thereto.[50]  In light of the risk of irreparable harm that resuming the litigations

enjoined by the Preliminary Injunction would pose to the Debtors' reorganization efforts, the

Committee determined to support the requested extension, which the Court granted on December

30, 2021.  *See Twenty-Third Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for*

*a Preliminary Injunction* [Adv. Pro. No. 19-8289, ECF No. 282].

76.    Thereafter, in light of the progress that was being made in the mediation (the

"Mediation") among the Nine and the Sackler family before the Honorable Shelly C. Chapman

(the "Mediator"), the Debtors sought an additional limited extension of the Preliminary Injunction

through and including February 17, 2022.[51]  After discussing the basis for such extension with the

Committee, the Debtors and their key creditor constituencies—including reviewing and analyzing

the objections filed in connection therewith—the Committee determined to support the proposed

extension to allow the Mediation to continue to progress and to ensure that the status quo was

---

[50] *See Limited Opposition of Certain Canadian Municipal Creditors and Certain Canadian First Nations Creditors to Debtors Motion to Extend the Preliminary Injunction*, dated December 28, 2021 [Adv. Pro. No. 19-8289, ECF No. 307]; *Opposition of the States of Washington and Connecticut to Purdue's Motion to Extend the Preliminary Injunction*, dated December 28, 2021 [Adv. Pro. No. 19-8289, ECF No. 309].

[51] *See Motion to Extend the Preliminary Injunction*, dated January 18, 2022 [Adv. Pro. No. 19-8289, ECF No. 317].

maintained while the appeals of the District Court Decision before the Second Circuit proceed on an expedited basis. Ultimately, the Court granted the Debtors' requested extension of the Preliminary Injunction shortly after the end of the Compensation Period. *See Twenty-Fourth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated February 1, 2022 [Adv. Pro. No. 19-8289, ECF No. 323].[52]

**J.    Tax Issues (Task Code 18)**

| Total Hours | Fees |
|:---:|:---:|
| 16.6 | $20,781.00 |

77.    This category includes time spent by Akin Gump tax professionals reviewing, analyzing and communicating with the advisors to the Debtors, the Ad Hoc Committee, the Sacklers and the IACs regarding tax issues arising in connection with proposed structures for implementing the Plan and the proposed settlement agreement with the Sackler family and certain related entities (the "Shareholder Settlement Agreement"). Specifically, Akin Gump tax professionals analyzed, negotiated and commented on the various tax-related provisions of the Plan and related documents, including agreements governing the Creditor Trusts and their interaction with the Master Disbursement Trust and the restructuring steps for asset transfers, as well as the tax-related provisions of the Shareholder Settlement Agreement and numerous associated agreements, including tax matters agreements, credit support agreements and associated annexes, exhibits and other documents. In connection with the foregoing, Akin Gump tax professionals coordinated with other members of the Akin Gump team, the Committee's other

---

[52] Following the end of the Compensation Period, the Debtors sought and obtained two additional, limited extensions of the Preliminary Injunction, the latter of which extended the Preliminary Injunction to March 23, 2022. *See Twenty-Fifth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated February 17, 2022 [Adv. Pro. No. 19-8289, ECF No. 333]; *Twenty-Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, dated March 2, 2021 [Adv. Pro. No. 19-8289, ECF No. 338]. On March 10, 2022, the Debtors filed a motion seeking a further extension of the Preliminary Injunction to May 2, 2022. *See Motion to Extend the Preliminary Injunction*, dated March 10, 2022 [Adv. Pro. No. 19-8289, ECF No. 344].

professionals and the tax professionals for the Debtors and key creditor constituencies to ensure all tax issues are addressed in a manner consistent with the Plan and the Shareholder Settlement Agreement.

**K.      Interaction/Review of Other Opioid Companies and Cases (Task Code 20)**

| Total Hours | Fees |
|---|---|
| 344.2 | $237,867.00 |

78.      This category includes time spent by Akin Gump professionals reviewing and analyzing developments in various opioid litigations pending throughout the country, including reports in news articles and academic publications, to assess the potential impact of such matters on the Chapter 11 Cases.  Given the wide-ranging nature of the opioid crisis and the numerous repeat players involved in litigation and/or settlement discussions with multiple defendants in numerous jurisdictions and throughout the nation, tracking and ensuring that the Committee remains informed with respect to significant opioid-related developments has been critical to the Committee's advisors' ability to assess issues of vital importance to these cases, including assessment of the various litigation claims against the Debtors and the Sacklers, and issues related to intercreditor allocation disputes and potential alternative settlement and plan structures.

**L.      Disclosure Statement/Solicitation/Plan/Confirmation (Task Code 22)**

| Total Hours | Fees |
|---|---|
| 3,998.0 | $4,524,467.00 |

79.      This category includes significant time spent by Akin Gump professionals and paraprofessionals researching, analyzing, negotiating and performing diligence in respect of numerous complex issues relating to the Plan, the Shareholder Settlement Agreement and related documents, the Appeals, the Mediation and potential alternatives to the Plan.

**a.      The Appeals**

80.     Akin Gump professionals were required to spend significant time during the Compensation Period addressing various issues arising out of or related to the Appeals, including analyzing, researching and drafting substantial pleadings on behalf of the Committee in connection with: (i) the Stay Motions; (ii) the Direct Certification Motions; and (iii) the Committee's merit briefs addressing the issues raised on appeal before the District Court and the Second Circuit.  At the beginning of the Compensation Period, Akin Gump professionals reviewed the Direct Certification Motions filed by certain Confirmation Appellants, researched and analyzed the issues raised therein and consulted with Committee and the advisors to the Debtors and the Supporting Claimants regarding the potential costs and benefits of proceeding before the Second Circuit as opposed to the District Court and for purposes of coordinating the parties' strategy.  Based on the foregoing—including, in particular, the typically months-long process required to certify a discretionary direct appeal to the Second Circuit—the Committee, the Debtors and the Supporting Claimants concluded that proceeding in the District Court (which had readily agreed to expedite the District Court Appeals) provided the best chance for the Plan to be consummated as soon as possible so that desperately needed value from the Debtors' estates could be distributed to creditors.  Accordingly, the Committee determined to oppose the Direct Certification Motions, and after further coordination and discussion with the Debtors and the Supporting Claimants, Akin Gump professionals prepared and filed a brief in opposition to such motions expressing the Committee's views. *See Opposition of the Official Committee of Unsecured Creditors to Motions to Certify Direct Appeal*, dated October 13, 2021 [ECF No. 3935].  Following a contested hearing on October 14, 2021, the Court denied the Direct Certification Motions.  *See Order Denying Motions for Certification of a Direct Appeal to the United States Court of Appeals for the Second Circuit Pursuant to 28 U.S.C. § 158(d)*, dated October 15, 2021 [ECF No. 3956].

81.     Akin Gump professionals and paraprofessionals were also required to expend significant time during the Compensation Period in connection with the Stay Motions, which requested a stay of the Confirmation Order and related orders during the pendency of the Appeals. The Committee believed strongly that any stay of the Confirmation Order was not appropriate and that the Stay Movants had failed to meet their high burden for obtaining a stay, particularly in light of the significant and irreparable harm that the Debtors' creditors—an overwhelming majority of whom supported the Plan—would suffer in the event the Plan were unable to be consummated during the pendency of the appeals.  Accordingly, Akin Gump professionals, in conjunction with the Committee's other professionals, spent significant time preparing and filing an opposition to the Stay Motions, including researching and analyzing various issues arising in connection with therewith and discussing such issues with the Committee and the advisors to the Debtors and the Supporting Claimants to ensure a coordinated response. *See Opposition of the Official Committee of Unsecured Creditors to Motions for Stay Pending Appeal*, dated October 22, 2021, dated October 22, 2021 [ECF No. 4006].  Akin Gump professionals also worked to prepare the declarations of Committee members Cheryl Juaire and Kara Trainor in support of the Committee's opposition,[53] each of which provided a first-hand account of the devastating harm that would result from a stay of the Confirmation Order that would further delay the distribution of life-saving abatement funds.

82.     While the initial Stay Motions were still pending before the Court, the U.S. Trustee filed the UST Stay Motion on an expedited basis in the District Court, by which the U.S. Trustee requested a stay of the Confirmation Order, the Modified Bench Ruling and the Court's order

---

[53] *See Declaration of Cheryl Juaire in Support of the Opposition of the Official Committee of Unsecured Creditors to Motions for Stay Pending Appeal*, dated October 22, 2021 [ECF No. 4007]; *Declaration of Kara Trainor in Support of the Opposition of the Official Committee of Unsecured Creditors to Motions for Stay Pending Appeal*, dated October 22, 2021 [ECF No. 4008].

authorizing the Debtors to advance approximately $6.9 million to certain creditor trusts established under the Plan prior to the effective date of the Plan.[54]  Despite the procedural deficiencies of the UST Stay Motion, the filing of the motion just four days before a scheduled status conference before the District Court required Akin Gump professionals to consult with the Committee and the advisors to the Debtors and the Supporting Claimants on an urgent basis to address the motion.  Ultimately, the District Court denied the UST Stay Motion but conditioned such denial on the filing of a joint stipulation reflecting the parties' agreement that none of the Debtors, the Committee or the Supporting Claimants would ever argue to any court that the appeals were rendered moot by actions undertaken pursuant to the Advance Funding Order.  *See Memorandum and Order Denying Without Prejudice the United States Trustee's Emergency Motion for a Stay Pending Appeal*, No. 7:21-cv-7969 (S.D.N.Y. Oct. 13, 2021) [ECF No. 48] (the "Stay Denial Order").  Akin Gump professionals worked with the parties to negotiate agreed language for such stipulation, which was filed on October 15, 2021.  *See Stipulation*, No. 7:21-cv-7969-CM [ECF No. 52] (S.D.N.Y. Oct. 15, 2021).

83.    Almost immediately thereafter, Akin Gump professionals reviewed the U.S. Trustee's subsequent motion for clarification of the Stay Denial Order,[55] by which the U.S. Trustee requested that the District Court enter an order (i) clarifying that it intended the stipulation on which its Stay Denial Order was conditioned to cover *all* actions taken in furtherance of Plan consummation—not just those taken pursuant to the Advance Funding Order; and (ii) requiring

---

[54] *Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information, and (III) Granting Other Related Relief*, dated September 15, 2021 [ECF No. 3773] (the "Advance Funding Order").

[55] *See United States Trustee's Motion for Clarification of the Memorandum and Order Denying Without Prejudice the United States Trustee's Emergency Motion for a Stay Pending Appeal*, No. 7:21-cv-7969-CM (S.D.N.Y. Oct. 15, 2021) [ECF No. 53] (the "UST Clarification Motion"); *Memorandum of Law in Support of the United States Trustee's Motion for Clarification of the Memorandum and Order Denying Without Prejudice the United States Trustee's Emergency Motion for a Stay Pending Appeal*, No. 7:21-cv-7969-CM (S.D.N.Y. Oct. 15, 2021) [ECF No. 54]

the Debtors to provide the District Court with weekly written accounting of any activities taken by the Debtors in furtherance of carrying out the Plan until the District Court issued its decision regarding the District Court Appeals.  Akin Gump professionals then worked with the advisors to the Debtors and the Supporting Claimants to prepare a joint opposition to such motion.[56]  On October 18, 2021, the District Court entered an order correcting the Stay Denial Order to reflect that the stipulation on which its Stay Denial Order was conditioned should cover all actions taken in furtherance of Plan consummation pursuant to the Advance Funding Order and the Confirmation Order, but denying the other relief requested in the UST Clarification Motion.  *See Order Correcting Prior Decision*, No. 7:21-cv-7969 (S.D.N.Y. October 18, 2021) [ECF No. 57]. Thereafter, Akin Gump Professionals negotiated and finalized an amended stipulation[57] pursuant to the District Court's order correcting its prior decision and order.

84.    This category also includes significant work undertaken by Akin Gump professionals and paraprofessionals during the Compensation Period to address the merits of the various issues raised in the Appeals.  Specifically, Akin Gump professionals and paraprofessionals carefully tracked, reviewed and analyzed all filings before the District Court and communicated extensively by phone or email with the Committee and the advisors to the Debtors and the Supporting Claimants to discuss all relevant issues and strategic considerations.  Akin Gump professionals also conducted extensive research and analysis in connection with preparing the Committee's substantial appellate brief urging the District Court to affirm the Confirmation Order, as well as well as a supplemental brief on certain issues raised by the District Court at oral

---

[56] *See Opposition of the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, the Multi-State Governmental Entities Group, the Ad Hoc Group of Individual Victims, and the Ad Hoc Committee of NAS Children to the United States Trustee's Purported Motion for Clarification*, No. 7:21-cv-7969-CM [ECF No. 55] (S.D.N.Y. Oct. 17, 2021)

[57] *Amended Stipulation*, No. 7:21-cv-7969-CM [ECF No. 58] (S.D.N.Y. Oct. 20, 2021).

argument. *See Brief of Appellee the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al., No. 7:21-cv-7532-CM (S.D.N.Y. Nov. 15, 2021) [ECF No. 162]; *Supplemental Brief of Appellee the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al., No. 7:21-cv-7532-CM (S.D.N.Y. Dec. 6, 2021) [ECF No. 248].

85.      After the District Court issued its decision vacating the Confirmation Order on the basis that there is no authority in the Bankruptcy Code or authorize for a bankruptcy court to approve nonconsensual third-party releases, Akin Gump professionals closely reviewed and analyzed the decision, conducted research and prepared analyses regarding its holdings and discussed such decision and the appropriate response with the Committee and other key parties. Following such discussions, the Committee, the Debtors and the Supporting Claimants agreed that the District Court Decision was wrongly decided and inconsistent with binding Second Circuit precedent and therefore determined to seek interlocutory appeals to the Second Circuit on an expedited basis, while simultaneously pursuing discussions regarding the possibility of potential alternative Plan or settlement structures consistent with the District Court Decision.

86.      Akin Gump professionals expended significant time in connection with the Second Circuit Appeals, including, among other things: (i) preparing a joinder to the Debtors' motion for an order certifying an interlocutory appeal to the Second Circuit;[58] (ii) researching, preparing and filing a petition to the Second Circuit requesting interlocutory review;[59] (iii) conducting research and preparing analyses regarding various issues raised by the District Court Decision; (iv) communicating and coordinating with the advisors to the Debtors and the Supporting Claimants

---

[58] *See Joinder of the Official Committee of Unsecured Creditors in Support of Debtors' Motion to Certify an Appeal Pursuant to 28 U.S.C. § 1292(b) of this Court's December 16, 2021 Order Vacating the Bankruptcy Court's Confirmation of the Debtors' Chapter 11 Plan of Reorganization,* No. 7:21-cv-7532-CM (S.D.N.Y. Jan. 6, 2022) [ECF No. 299]

[59] *See Petition of the Official Committee of Unsecured Creditors for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b),* No. 22-85 (2d Cir. Jan. 18, 2022) [ECF No. 20]

regarding such issues and appellate strategy; and (v) beginning substantial work in connection with the Committee's opening appellate brief, which was filed shortly after the end of the Compensation Period.[60]

### b.    Shareholder Settlement Agreement and Related Documentation

87.    Additionally, this category includes time spent by Akin Gump professionals in connection with analyzing and negotiating proposed changes to the documentation that will bind certain members of the Sackler family and certain affiliated trusts and entities to make the cash payments that will fund the various settlements with public and private creditors embodied in the Plan (in the event the Plan or a modified plan incorporating the Shareholder Settlement Agreement is ultimately consummated).  Among other things, Akin Gump professionals reviewed, analyzed and negotiated collateral arrangements related to pledges of various assets to secure the Sacklers' and related parties' payment obligations under the Shareholder Settlement Agreement.  Akin Gump professionals also assumed responsibility for coordinating numerous matters among various creditor consistencies and professionals in connection with such documentation, including preparing, reviewing and analyzing certain summary and process-related materials and checklists.

88.    Akin Gump professionals also devoted significant time and attention to analyzing certain restructuring transactions proposed by the advisors to the Sacklers in respect of certain entities and trusts indirectly holding IAC interests intended to constitute collateral to secure payment obligations under the Shareholder Settlement Agreement, including communicating with the advisors to the Debtors and the Ad Hoc Committee regarding such proposed transactions.  Akin Gump professionals also participated in numerous discussions internally and with counsel for

---

[60] *See Page Proof Brief of Appellant the Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, et al., No. 22-110 (2d Cir. Feb. 15, 2022) [ECF No. 20].

various creditor constituencies and the Debtors regarding the implications of the Appeals process and certain Appeals issues on relevant provisions of the Shareholder Settlement Agreement.

### c.    Mediation and Potential Plan Alternatives

89.    Finally, Akin Gump professionals spent a significant amount of time during the Compensation Period analyzing and engaging in discussions with the Debtors and their key stakeholders regarding various potential outcomes of the Appeals and the Mediation. Specifically, in light of the significant uncertainty created by the District Court Decision, Akin Gump professionals engaged in extensive analysis and discussions related to the current posture of the Chapter 11 Cases and identifying and evaluating potential paths forward under different scenarios, including: (i) engaging in discussions with the Supporting Claimants and other parties regarding their positions in respect of the Plan and the numerous interdependent settlements contained therein during the pendency of the Appeals; (ii) analyzing the viability and desirability of potential alternative plans of reorganization containing structures consistent with the District Court Decision, including conducting research and preparing analyses regarding the confirmability of various proposed Plan and settlement structure alternatives that would not require the consent of all claimants; (iii) assessing options for monetizing the Estate Claims in connection with such potential alternatives; (iv) analyzing the value likely to be available to claimants under various proposed alternative plan and settlement structures; (v) formulating and proposing potential Plan and settlement structure alternatives based on the foregoing analyses and assessments; and (vi) engaging in discussions with the Debtors and key creditor constituencies regarding the viability of numerous Plan and settlement structure alternatives, as well as the circumstances that may exist under various potential outcomes of the Appeals and the Mediation.

90.     In light of the significant progress that was being made among the Nine and the Sackler family towards an agreement that would provide substantial additional consideration for abatement of the opioid crisis incremental to the $4.325 billion contribution from the Sacklers contemplated under the Plan and the Shareholder Settlement Agreement, the Mediator requested two extensions of the Mediation during the Compensation Period, which the Court granted.  *See Order Extending Termination Date Under the Terms and Conditions of Mediation Before the Honorable Shelly C. Chapman*, dated January 13, 2022 [ECF No. 4286]; *Order Further Extending Termination Date Under the Terms and Conditions of Mediation Before the Honorable Shelly C. Chapman*, dated February 1, 2022 [ECF No. 4319].  Akin Gump professionals engaged in extensive discussions with the advisors to the Debtors and their key creditor constituencies regarding possible Mediation outcomes and options for potential paths forward and held numerous calls with the full Committee and individual Committee members to ensure the Committee remained apprised of key developments in connection with the foregoing.  As noted, following the end of the Compensation Period, the Mediator announced the Supplemental Shareholder Settlement, pursuant to which the Nine agreed to withdraw their opposition to the Second Circuit Appeals in exchange for an additional contribution from the Sackler family, $898 million to $1.398 billion of which would go to the Debtors' estates and $276.9 million of which would go to a supplemental opioid abatement fund to be established for the benefit of the Nine and the State of New Hampshire, as well as other consideration.  *See Mediator's Fourth Interim Report*, dated March 3, 2022 [ECF No. 4409].

## **ACTUAL AND NECESSARY DISBURSEMENTS**

91.     Akin Gump seeks allowance of reimbursement in the amount of $173,260.89 for expenses incurred during the Compensation Period in the course of providing professional services

to the Committee. Akin Gump's disbursement policies pass through all out of pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine. For example, as it relates to computerized research, Akin Gump believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain. Other reimbursable expenses (whether the service is performed by Akin Gump in-house or through a third party vendor) include, but are not limited to, long-distance calls, overtime meals, deliveries, court costs, transcript fees, discovery and temporary legal staffing services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

92.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See* 11 U.S.C. § 330(a)(1). In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

93.     The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation to continue to attract qualified and competent

46

bankruptcy practitioners to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citations and internal quotation marks omitted).

94.    In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)). The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A*., 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr. S.D. N.Y. 1991). The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1298–99 (5th Cir. 1977) have been adopted by most courts.[61]  *See In re Nine Assocs., Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212–13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*, 403 Fed. Appx. 626, 629 (2d Cir.

---

[61] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson*, with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by Congress. *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 127 F.3d 1398, 1403 (11th Cir. 1997).

2010) (summary order); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 330.03[9] (Lawrence P. King

ed., 16th ed. 2016) (describing *First Colonial* and *Johnson* as the "leading cases to be considered

in determining a reasonable allowance of compensation").

95.    Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

    a.   <u>Time and Labor Required</u>.  Akin Gump billed a total of 6,346.9 hours of professional services and 633.6 hours of paraprofessional and other non-legal services during the Compensation Period.  As evidenced by this Application, Akin Gump professionals and paraprofessionals worked diligently and efficiently without unnecessary duplication of efforts throughout the Compensation Period.  This is especially clear when considering the nature and complexity of the issues that arose in the Chapter 11 Cases during the Compensation Period.  In particular, the Compensation Period involved many material matters and issues that required a favorable resolution for the Debtors' estates and unsecured creditors, including, among other things, matters and issues arising in connection with the Appeals, the Stay Motions, the Direct Certification Motions and the Shareholder Settlement Agreement.  Akin Gump's representation of the Committee has required it to balance the need to provide quality services with the need to act quickly and represent the Committee in an effective, efficient and timely manner.  Akin Gump submits that the hours spent were reasonable given the size and complexity of the Chapter 11 Cases, the significant—and often urgent—legal and business issues raised and the numerous pleadings filed in the Chapter 11 Cases.

    b.   <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable attorneys to research, analyze and provide advice on difficult and complex bankruptcy, litigation, corporate, tax, trusts and estates, insurance and other issues.  As further described herein, Akin Gump's teams of skilled practitioners assisted the Committee in analyzing, among other things, novel and/or difficult questions in connection with, among other things, the Appeals, the Stay Motions, the Shareholder Settlement Agreement, the Insurance Adversary Proceeding, various tax-related issues and the Committee's investigation and analysis of potential estate claims.

    c.   <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of complex issues has contributed to the administration of the Chapter 11 Cases and benefited the Debtors' estates and unsecured creditors.  Due to the nature and complexity of the legal issues presented by the Chapter 11 Cases, Akin Gump was required to

exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, tax and corporate transaction matters. Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d.   <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>. Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e.   <u>Customary Fee</u>. The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable nonbankruptcy matters. Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required. The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here. Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.   <u>Whether the Fee Is Fixed or Contingent</u>. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Committee in the Chapter 11 Cases.

g.   <u>Time Limitations Imposed by the Client or Other Circumstances</u>. As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines. For example, Akin Gump and the Committee's other advisors were faced with limited time in which to formulate an approach to numerous key matters, including various critical issues arising in connection with the Plan and potential alternatives, the Appeals, the Stay Motions, the District Court Decision and the Shareholder Settlement Agreement, often while simultaneously pursuing consensual resolutions of such matters. The tremendous efforts of Akin Gump professionals and paraprofessionals in completing this work under compressed

49

timelines permitted the Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.  <u>Amount Involved and Results Obtained</u>.  Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in preserving potential sources of recovery for the benefit of unsecured creditors.  In particular, Akin Gump's efforts in connection with, among other things, the Appeals, the Shareholder Settlement Agreement and the Committee's investigation and analysis of potential estate claims have been instrumental in preserving value for the benefit of all creditor constituencies.  Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.  <u>Experience, Reputation and Ability of Attorneys</u>.  Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.  During the Compensation Period, Akin Gump solicited the skill and expertise of its professionals and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.  Akin Gump professionals have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Mallinckrodt plc*, *In re Sears Holdings Corp.*, *In re Insys Therapeutics, Inc.*, *In re PG&E Corp.*, *In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*, *In re Avaya Inc.*, *In re Chassix Holdings, Inc.*, *In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC*, *In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC*, *In re Eastman Kodak Company*, *In re Cal Dive International, Inc.*, *In re Washington Mutual Inc.*, *In re NII Holdings, Inc.*, *In re MPM Silicones, LLC*, *In re Overseas Shipholding Group, Inc.*, *In re QCE Finance LLC*, *In re Residential Capital, LLC*, *In re Solutia, Inc.*, *In re WorldCom, Inc.*, *In re XO Communications, Inc.*, *In re Tower Automotive LLC*, *In re VeraSun Energy Corp.* and many others.  Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.  <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

      k.   <u>Nature and Length of Professional Relationship</u>.  Akin Gump has been rendering professional services to the Committee since it was selected as counsel to the Committee on September 26, 2019.

96.     For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Committee and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

97.     No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

## ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

98.     The following is provided in response to the request for additional information set forth in ¶ C.5 of the U.S. Trustee Guidelines.

**Question**:    Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Response:    No.

**Question**:    If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    Not applicable.

**Question**:  Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:  No.

**Question**:  Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

Response:  Yes.  During the Compensation Period, 126.6 hours and $117,457.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:  Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:  See above.

**Question**:  If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:  Akin Gump disclosed to the Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2020 in the Akin Retention Application, to which the Committee agreed.  On December 17, 2020 and December 21, 2021 Akin Gump filed notices disclosing to the Committee and other parties in interest that its hourly rates would be adjusted, in accordance with its customary practice, effective as of January 1, 2021 and January 1, 2022.  *See Fourth Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P.,* et al. *to Retain and Employ Akin Gump Strauss Hauer & Feld LLP,* Nunc Pro Tunc*, to September 26, 2019*, dated December 17, 2020 [ECF No. 2151]; *Seventh Supplemental Declaration of Arik Preis in Support of the Application of the Official Committee of Unsecured Creditors of Purdue Pharma, L.P.,* et al. *to Retain and Employ Akin Gump Strauss Hauer & Feld LLP,* Nunc Pro Tunc*, to September 26, 2019*, dated December 21, 2021 [ECF No. 4245].

## **RESERVATION OF RIGHTS**

To the extent that there are services rendered or expenses incurred that relate to the Compensation Period but were not processed prior to the preparation of the Application, Akin

Gump reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

[*The remainder of this page has been left blank intentionally.*]

## **CONCLUSION**

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $7,503,658.50 and expense reimbursement in the amount of $173,260.89; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
      March 17, 2022

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  */s/ Arik Preis*
Ira S. Dizengoff
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com
elisovicz@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, L.P.,* et al.

## <u>EXHIBIT A</u>

**CERTIFICATION OF ARIK PREIS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

|  |  |
|---|---|
| In re: | : | Chapter 11 |
|  | : |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
|  | : |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |

---------------------------------------------------------------

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE SEVENTH INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PURDUE PHARMA L.P., *ET AL.*, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF OCTOBER 1, 2021 THROUGH AND INCLUDING JANUARY 31, 2022**

I, Arik Preis, hereby certify that:

1.      I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of the above captioned Debtors.  Akin Gump is counsel to the Official Committee of Unsecured Creditors of Purdue Pharma, L.P. and its affiliated debtors and debtors in possession (collectively, the "Debtors").

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

    a.      I have read the Application;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc.  (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

b.      to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

c.      the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

d.      in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Committee are each being provided with a copy of the Application.

Dated: New York, New York          By: */s/  Arik Preis*_____
      March 17, 2022                   Arik Preis

## EXHIBIT B

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
| --- | --- | --- |
| Category of Timekeeper | Billed by Non-FR Timekeepers for Preceding Year[1] | Billed in this Application |
| Partner | $1,170.37 | $1,439.58 |
| Senior Counsel & Counsel | $902.75 | $1,095.56 |
| Associate | $656.98 | $821.47 |
| Paraprofessional | $320.39 | $410.60 |
| All Timekeepers Aggregated | $888.60 | $1,074.95 |

---

[1] Consistent with U.S. Trustee Guidelines, this column discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (*i.e.*, New York and Washington, D.C.), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month period ending January 31, 2022.

## **EXHIBIT C**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Partners | Department | Office | Year of Admission | 2021 Rate | 2022 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Sara Brauner | Financial Restructuring | NY | 2011 | $1,265.00 | $1,400.00 | 448.0 | $584,864.00 |
| Dean Chapman | Litigation | NY | 2011 | $1,265.00 | $1,400.00 | 76.5 | $101,605.50 |
| Julius Chen | Litigation | DC | 2010 | $1,075.00 | $1,185.00 | 427.1 | $468,559.50 |
| Ashley Crawford | Litigation | SF | 2003 | $1,135.00 | $1,265.00 | 75.8 | $91,961.00 |
| Olivier De Moor | Tax | NY | 2009 | $1,235.00 | N/A | 7.5 | $9,262.50 |
| Ira Dizengoff | Financial Restructuring | NY | 1992 | $1,655.00 | $1,775.00 | 6.3 | $11,014.50 |
| Mitchell Hurley | Litigation | NY | 1997 | $1,655.00 | $1,775.00 | 583.0 | $982,673.00 |
| Howard Jacobson | Tax | DC | 1979 | $1,310.00 | N/A | 7.3 | $9,563.00 |
| Eli Miller | Corporate | NY | 2009 | $1,135.00 | $1,245.00 | 114.6 | $130,940.00 |
| Arik Preis | Financial Restructuring | NY | 2001 | $1,655.00 | $1,775.00 | 411.4 | $699,131.00 |
| Joseph Sorkin | Litigation | NY | 2001 | $1,425.00 | $1,565.00 | 225.5 | $339,369.50 |
| Scott Welkis | Corporate | NY | 1997 | $1,450.00 | N/A | 72.4 | $104,980.00 |
| Justin Williams | Litigation | LO | 1993 | N/A | $1,525.00 | 9.5 | $14,487.50 |
| Sara Brauner | Financial Restructuring | NY | 2011 | $1,265.00 | $1,400.00 | 448.0 | $584,864.00 |
| Dean Chapman | Litigation | NY | 2011 | $1,265.00 | $1,400.00 | 76.5 | $101,605.50 |
| Julius Chen | Litigation | DC | 2010 | $1,075.00 | $1,185.00 | 427.1 | $468,559.50 |
| Ashley Crawford | Litigation | SF | 2003 | $1,135.00 | $1,265.00 | 75.8 | $91,961.00 |
| Olivier De Moor | Tax | NY | 2009 | $1,235.00 | N/A | 7.5 | $9,262.50 |
| Ira Dizengoff | Financial Restructuring | NY | 1992 | $1,655.00 | $1,775.00 | 6.3 | $11,014.50 |
| Mitchell Hurley | Litigation | NY | 1997 | $1,655.00 | $1,775.00 | 583.0 | $982,673.00 |
| Howard Jacobson | Tax | DC | 1979 | $1,310.00 | N/A | 7.3 | $9,563.00 |
| **Partner Total:** | | | | | | **2,464.9** | **$3,548,411.00** |
| **Senior Counsel & Counsel** | **Department** | **Office** | **Year of Admission** | **2021 Rate** | **2022 Rate** | **Total Hours Billed** | **Total Compensation** |
| David Giller | Litigation | NY | 2015 | $1,005.00 | $1,115.00 | 53.4 | $54,272.00 |
| Elizabeth Harris | Tax | NY | 1987 | $1,125.00 | $1,215.00 | 22.8 | $27,207.00 |
| Jeffrey Latov | Litigation | NY | 2017 | N/A | $1,095.00 | 34.5 | $37,777.50 |
| Edan Lisovicz | Financial Restructuring | NY | 2014 | $1,045.00 | $1,190.00 | 291.3 | $316,646.50 |
| Matthew Lloyd | Litigation | DA | 2012 | $980.00 | $1,085.00 | 15.2 | $15,767.00 |
| Anthony Loring | Financial Restructuring | NY | 2016 | $1,010.00 | N/A | 6.2 | $6,262.00 |
| Kristen Loveland | Litigation | DC | 2019 | $870.00 | $990.00 | 88.3 | $87,417.00 |
| Erin Parlar | Litigation | NY | 2015 | $1,005.00 | $1,190.00 | 518.1 | $553,195.00 |

| Katherine Porter | Litigation | NY | 2011 | $1,145.00 | $1,240.00 | 456.4 | $539,250.50 |
|---|---|---|---|---|---|---|---|
| James Salwen | Financial Restructuring | NY | 2017 | $895.00 | $1,095.00 | 156.2 | $171,039.00 |
| M. Todd Tuten | Public Law and Policy | DC | N/A | $1,095.00 | $1,185.00 | 16.1 | $18,322.50 |
| Katie Tongalson | Litigation | NY | 2017 | $940.00 | $1,055.00 | 13.5 | $14,242.50 |
| Dennis Windscheffel | Litigation | SA | 2004 | $1,020.00 | $1,105.00 | 172.1 | $179,613.50 |
| **Senior Counsel & Counsel Total:** | | | | | | **1,844.1** | **$2,021,012.50** |

| Associates | Department | Office | Year of Admission | 2021 Rate | 2022 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Brooks Barker | Financial Restructuring | NY | 2018 | $895.00 | $1,045.00 | 373.3 | $352,163.50 |
| Megi Belegu | Litigation | NY | 2020 | $695.00 | $840.00 | 99.4 | $74,404.50 |
| Alan Carrillo | Financial Restructuring | DA | 2018 | $735.00 | $880.00 | 105.0 | $81,815.00 |
| Richard Cochrane | Litigation | DA | 2019 | N/A | $775.00 | 25.8 | $19,995.00 |
| Evan Frohman | Litigation | NY | 2021 | N/A | $755.00 | 73.7 | $55,643.50 |
| Madison Gafford | Litigation | DA | 2020 | $555.00 | $690.00 | 134.8 | $80,025.00 |
| Hayley High | Litigation | DA | 2019 | $625.00 | $775.00 | 78.7 | $51,362.50 |
| Patrick Glackin | Litigation | NY | 2019 | $770.00 | $925.00 | 267.5 | $232,573.00 |
| Jillian Kulikowski | Litigation | NY | 2019 | $770.00 | $925.00 | 154.1 | $128,406.50 |
| Kristen Loveland | Litigation | DC | 2019 | $870.00 | N/A | 127.8 | $111,186.00 |
| Joseph Lumley | Corporate | NY | 2020 | $855.00 | N/A | 18.0 | $15,390.00 |
| McKenzie Miller | Litigation | DC | 2020 | $625.00 | $775.00 | 23.6 | $16,415.00 |
| Thomas Napoli | Litigation | NY | N/A | N/A | $670.00 | 26.6 | $17,822.00 |
| Adam Parkins | Litigation | LO | 2021 | N/A | $670.00 | 17.1 | $11,457.00 |
| Jennifer Poon | Litigation | NY | 2016 | $940.00 | N/A | 9.3 | $8,742.00 |
| James Salwen | Financial Restructuring | NY | 2017 | $895.00 | N/A | 354.8 | $317,546.00 |
| Conor Tomalty | Litigation | HO | 2020 | $555.00 | $690.00 | 40.8 | $25,371.00 |
| Izabelle Tully | Litigation | NY | 2020 | $695.00 | N/A | 6.5 | $4,517.50 |
| Kaila Zaharis | Financial Restructuring | NY | N/A | $650.00 | $710.00 | 101.1 | $69,243.00 |
| **Associate Total:** | | | | | | **2,037.9** | **$1,674,078.00** |

| Staff Attorneys & Paraprofessionals | Department | Office | Year of Admission | 2021 Rate | 2022 Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|---|
| Frank Castro | Paralegal, Litigation | SF | N/A | $370.00 | N/A | 5.0 | $1,850.00 |

| Daniel Chau | EDiscovery | NY | N/A | $390.00 | $420.00 | 68.9 | $27,723.00 |
|---|---|---|---|---|---|---|---|
| Adria Hicks | Litigation | DC | N/A | N/A | $400.00 | 48.1 | $19,240.00 |
| Amy Laaraj | Paralegal, Litigation | NY | N/A | $370.00 | $400.00 | 50.3 | $19,253.00 |
| Melanie Langford | Paralegal Intellectual Property | SA | N/A | $275.00 | $300.00 | 53.8 | $15,970.00 |
| Dagmara Krasa | Paralegal, Financial Restructuring | NY | N/A | $440.00 | $475.00 | 290.2 | $130,565.00 |
| Kelsey Robins | Paralegal, Financial Restructuring | NY | N/A | $245.00 | N/A | 7.7 | $1,886.50 |
| Risa Slavin | Paralegal, Litigation | LC | N/A | $410.00 | N/A | 10.1 | $4,141.00 |
| Camille Schoonmaker | Paralegal, Litigation | DC | N/A | $230.00 | N/A | 21.6 | $4,968.00 |
| Doris Yen | Research & Information Services | PH | N/A | N/A | $325.00 | 6.1 | $1,982.50 |
| Karen Woodhouse | Practice Attorney, Litigation | NY | 2003 | $420.00 | $450.00 | 65.1 | $29,295.00 |
| Melodie Young | Practice Attorney, Litigation | NY | 2003 | N/A | $490.00 | 6.7 | $3,283.00 |
| **Staff Attorney & Paraprofessional Total:** | | | | | | **633.6** | **$260,157.00** |
| **Total Hours / Fees Incurred:** | | | | | | **6,980.50** | **$7,503,658.50** |

## **EXHIBIT D**

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | Case Administration | 50–150 | $25,000–$75,000 | 99.9 | $48,502.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 150–250 | $135,000–$225,000 | 206.1 | $182,500.50 |
| 4 | Analysis of Other Professional Fee Applications/Reports | 25–75 | $20,625–$61,875 | 35.9 | $29,706.50 |
| 6 | Retention of Professionals | 0–15 | $0–$18,000 | 4.7 | $5,619.50 |
| 7 | Creditor Committee Matters/Meetings (including 341 meetings) | 300–600 | $330,000–$660,000 | 385.7 | $428,363.50 |
| 8 | Hearings and Court Matters/Court Preparation | 400–700 | $520,000–$910,000 | 476.2 | $619,277.50 |
| 12 | Claims Analysis/Claims Objections (incl. Motions for Class Proofs of Claim) | 0–50 | $0–$55,000 | 17.5 | $18,554.50 |
| 13 | Prepetition Transactions (incl. all Sackler transactions/ distributions) | 500–1,250 | $500,000–$1,250,000 | 1029.5 | $1,019,959.00 |
| 14 | Insurance Issues | 250–500 | $250,000–$500,000 | 334.0 | $330,534.50 |
| 16 | Automatic Stay Issues | 0–25 | $0–$23,750 | 2.4 | $2,258.00 |
| 17 | Adversary Proceedings (including Preliminary Injunction Motion) | 25–75 | $30,000–$90,000 | 27.9 | $33,225.00 |
| 18 | Tax Issues | 10–25 | $12,500–$31,250 | 16.6 | $20,781.00 |
| 20 | Interaction with/Review of Other Opioid Companies and Cases | 200–400 | $140,000–$280,000 | 344.2 | $237,867.00 |
| 22 | Disclosure Statement/ Solicitation/ Plan/ Confirmation | 3500–5,000 | $4,025,000–$5,750,000 | 3998.0 | $4,524,467.00 |
| 25 | Travel Time | 0–15 | $0–$16,500 | 1.9 | $2,042.50 |
| **TOTAL:** | | **5,410–9,130** | **$5,988,125–$9,946,375** | **6980.5** | **$7,503,658.50** |

**<u>EXHIBIT E</u>**

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount ($) |
| --- | ---: |
| Computerized Legal Research - Lexis - In Contract 30% Discount | $22,434.49 |
| Computerized Legal Research - Westlaw - In Contract 30% Discount | $116,760.17 |
| Computerized Legal Research - Westlaw - Out of contract | $10.66 |
| Computerized Legal Research - Courtlink- In Contract 50% Discount | $4,988.35 |
| Computerized Legal Research - Other | $3,447.50 |
| Courier Service/Messenger Service - Off Site | $2,154.04 |
| Duplication - In House | $1,294.70 |
| Filing Fees | $2,730.00 |
| Imaging/Computerized Litigation Support | $9,927.08 |
| Meals - Overtime | $213.74 |
| Meals - Business | $92.00 |
| Meals (100%) | $220.00 |
| Overtime - Admin Staff | $237.67 |
| Postage | $289.37 |
| Professional Fees - Legal | $1,827.81 |
| Research | $15.32 |
| Reference Material | $188.28 |
| Transcripts | $3,729.82 |
| Travel - Ground Transportation | $1,325.70 |
| Travel - Lodging (Hotel, Apt, Other) | $414.81 |
| Travel - Train Fare | $532.76 |
| Local Transportation - Overtime | $426.62 |
| **Total Expenses Incurred:** | **$173,260.89** |

**<u>EXHIBIT F</u>**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 15 | $1,450.00 |
| Senior Counsel and Counsel | 15 | $1,125.00 |
| Associate | 20 | $850.00 |
| Staff Attorneys and Paraprofessionals | 10 | $400.00 |