DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OMNIBUS OBJECTION TO MOTIONS
TO FILE PROOFS OF CLAIM AFTER CLAIMS BAR DATE
FILED BY STEVEN MALTMAN AND TIMOTHY MAXWELL**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") submit this omnibus objection in response to the motions to file proofs of claim after the claims bar date filed by Steven Maltman ("**Mr.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Maltman") (Mar. 9, 2022) [Dkt. No. 4497] (the "**Maltman Motion**") and Timothy Maxwell ("**Mr. Maxwell**," and, with Mr. Maltman, the "**Movants**") (Mar. 9, 2022) [Dkt. No. 4498] (the "**Maxwell Motion**," and, with the Maltman Motion, the "**Motions**") and respectfully state as follows:

1. The Movants, both incarcerated individuals, request that this Court extend the bar date as to them to allow them to file late proofs of claim. (Maltman Mot. at 1; Maxwell Mot. at 1.) Mr. Maltman states that he did not file his proof of claim until nineteen[2] months after the extended general bar date because "[t]he [g]lobal [p]andemic has slowed and[] even halted life due to the nationwide lockdown" and "[his] ability to communicate and correspond has become hinder[e]d and also come to a standstill at time"—all of which "was out of [his] control." (Maltman Mot. at 2.) Mr. Maltman also asserts that "at the time [he] tried to acquire the required claim documents[,] the United States Postal Service ["**USPS**"] was lacking in funds and due to that the affected states [were] informed mail would be late for outgoing and incoming . . . at the same time and several months prior to and after the [C]ourt['s] new 'Bar Date.'" (*Id.* at 2-3.) Mr. Maltman further states that he is currently incarcerated, and has been since February 20, 2021, and that no "[p]ublications are allowed except for *USA Today* and that has to be purchased from an outside vend[o]r." (*Id.* at 3.) Mr. Maxwell makes substantially the same allegations regarding the global pandemic, the USPS delays, and the lack of free publications at his place of incarceration, except that he sent a request for claim forms in December 2021, received acknowledgment about the filing of his claim in or about February 2022, and has been

---

[2] Although the Maltman Motion indicates that Mr. Maltman filed his proof of claim nineteen months after the bar date, the records of the Debtors' claims and noticing agent, Prime Clerk LLC ("**Prime Clerk**"), indicate that it received Mr. Maltman's proof of claim on December 17, 2021, which is nearly seventeen months after the bar date.

2

incarcerated since approximately December 2020. (*See* Maxwell Mot. at 2-3.) Although the Debtors are sympathetic to the Movants' circumstances, for the reasons discussed below, the Motions should be denied.

2. To date, the Debtors, the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"), and the Ad Hoc Group of Individual Victims (the "**PI Group**"), with the approval of this Court, have agreed to allow the filing of twenty-four late proofs of claim. (*See* Dkt. Nos. 1661, 1664, 2057, 2069, 2071, 2086, 2088, 2193, 2211, 2458, 2834, 3058, 3342, 3526, 3764, 3894, 3895, 4156, 4219, 4230, 4231, 4262, 4275, 4294.) However, unlike the Movants, the prior individuals who sought relief from this Court made sufficient individualized assertions regarding the reason for the untimely filing, including incarcerated individuals who alleged that they received limited information and resources leading up to and following the bar date due to their *then current* incarceration and the attendant restrictions caused by the COVID-19 pandemic. (*See* Dkt. Nos. 1664, 2057, 2069, 2071, 2086, 2088, 2193, 2458, 2834, 3058, 3342, 3526, 3764, 3894, 3895, 4230, 4231, 4262, 4275, 4294.) Accordingly, each of the prior late claim motions filed by incarcerated individuals provided a justifiable reason for the delay such that the Debtors, Creditors' Committee, and PI Group agreed to allow the claims as timely, and this Court found good and sufficient cause for granting the requested extensions. The same is not true of the Motions.

3. The Movants' requests to file proofs of claim after the bar date do not satisfy this Circuit's strict application of the "excusable neglect" standard set forth in Federal Rule of Bankruptcy Procedure 9006(b)(1). Courts have discretion to allow a late proof of claim only upon motion of a late-claimant showing "excusable neglect." Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule

9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'"). The burden of meeting the *Pioneer* test for excusable neglect, however, falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" ***and*** that the neglect was "excusable." *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010). A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

4. The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the

4

request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11.)  Put simply, courts rarely extend the bar date for late-claimants, and the Movants' requests for relief do little to meet the hard line drawn by the Second Circuit.

5. With respect to the most important factor—the reason for the delay—the Movants do not provide a sufficient reason why they could not file proofs of claim prior to the July 30, 2020 bar date. As an initial matter, incarceration, in itself, is not sufficient to justify the filing of a late claim. *See, e.g.*, *In re Motors Liquidation Co.*, 599 B.R. 706, 716 (S.D.N.Y. 2019) (noting that neither mistake of law nor incarceration constitutes "excusable neglect"). However, based on the individualized assertions in the Motions, it is clear that neither of the Movants were incarcerated during the time leading up to and immediately after the bar date. Indeed, Mr. Maltman and Mr. Maxwell were incarcerated between five and seven months *after* the extended general bar date. (*See* Maltman Mot. at 3; Maxwell Mot. at 3.) For this reason, the Movants' general references to the global pandemic and delays in the USPS fall well short of providing a reason for the delay in filing claims during the many months prior to their incarcerations. Beyond their later-in-time incarcerations and the otherwise universally-applicable circumstances caused by the global pandemic, the Movants provide no basis why they could not file a proof of claim before the bar date—like the over 120,000 personal injury claimants who were able to do so (*see* Pullo Decl., ¶ 8 (Aug. 2, 2021), Dkt. No. 3372)—until nearly seventeen months after the bar date. This defect alone is sufficient to deny the Motions. *In re DPH Holdings*, 434 B.R. at 83.

6. While the Debtors do not have any reason to believe that the Movants have not made their late claim requests in good faith, both of the remaining *Pioneer* factors also weigh

against the Movants. *First*, allowing the Movants' claims only would encourage other latecomers wishing to assert claims against the Debtors related to their opioid use to file claims based on similarly deficient allegations in order to take part in distributions from the Debtors' estates, to the prejudice and detriment of both the Debtors and, more importantly, their creditors. *See, e.g.*, *In re Enron,* 419 F.3d at 132 (finding that bankruptcy court properly considered "the opening of the 'floodgates' to similar claims" and "the number of *potential* claimants who might have been prompted to file late claims in the wake of a ruling in [the movant]'s favor" in denying late claim motion); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *In re Nutri\*Bevco, Inc.*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990) ("Bar dates protect not only the debtor's interests, but creditors' interests as well [because they] establish[] a date by which the plan proponent can determine which liabilities will be asserted against the estate."); *see also* Jan. 24, 2020 Omnibus Hr'g Tr. 64: 8-12 ("[T]he rationale[] here for having a bar date . . . is perhaps more important in this case than some other cases" because it is imperative to know "who individuals are who say they have a material claim.").

7.      *Second*, the delay is substantial and could adversely impact these proceedings. Indeed, the Movants seek to file proofs of claim over seventeen months after the bar date. The Debtors' plan was negotiated, developed, solicited, voted on, and approved by the Debtors' creditors and this Court with the understanding of potential recoveries based on the number of timely filed personal injury claims. Allowing the Movants' claims as timely without a justifiable reason as to why they could not comply with the filing deadline—with the potential for opening the floodgates to a substantial number of additional similarly-situated personal injury claims—

6

could result in attendant costs and delay to the final administration of these cases, and dilute the potential recoveries of those personal injury claimants who filed timely claims. *In re Enron*, 419 F.3d at 128 ("[C]ourts generally consider the degree to which...the delay may disrupt the judicial administration of the case.") (citation and quotations omitted).

8. The Debtors have consulted with counsel to the Creditors' Committee and the PI Group, and neither the Creditors' Committee nor the PI Group object to the position taken by the Debtors herein. Accordingly, for the reasons set forth above, the Debtors respectfully request that the Court deny the Motions.

Dated:  April 20, 2022
        New York, New York

*/s/ James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*