## Exhibit B

**Ronan Declaration**

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue

New York, New York 10017

Telephone: (212) 450-4000

Facsimile: (212) 701-5800

Marshall S. Huebner

James I. McClammy

Eli J. Vonnegut

Darren S. Klein

Dylan A. Consla

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.**[1] | **(Jointly Administered)** |

### DECLARATION OF TERRENCE RONAN IN SUPPORT OF THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING IMPLEMENTATION OF 2022 KEY EMPLOYEE INCENTIVE PLAN AND 2022 KEY EMPLOYEE RETENTION PLAN

I, Terrence Ronan, being fully sworn, hereby declare that the following is true to the best

of my knowledge, information and belief:

1.      I am an Executive Vice President and the Chief Financial Officer of Purdue

Pharma L.P. ("**PPLP**" and, collectively with each of the other above-captioned debtors,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

the "**Debtors**," the "**Company**" or "**Purdue**").  I was employed by Purdue as Vice President of

Finance on December 1, 2021 and became Executive Vice President and Chief Financial Officer

on January 24, 2022.  I have 30 years of finance experience in banking as well as corporate

positions at the C-Suite level.  Most recently I served as Executive Vice President and Chief

Financial Officer of Atlantic Power Corporation, a publicly traded independent power producer,

from 2012 until its sale in 2021.  I am familiar with the day-to-day operations, business and

financial affairs of the Debtors.

2.    I submit this declaration (this "**Declaration**") in further support of the *Motion of

Debtors for Entry of an Order Authorizing Implementation of 2022 Key Employee Incentive Plan

and 2022 Key Employee Retention Plan* (the "**Motion**").[2]  I am authorized to submit this

Declaration on behalf of the Debtors.

3.    Except as otherwise indicated, all facts set forth in this Declaration are based upon

my personal knowledge, my review of relevant documents, information provided to me by other

employees of the Company and WTW, or my opinion based upon experience, knowledge and

information concerning the operations of the Debtors and the pharmaceutical industry as a whole.

If called upon to testify, I would testify competently to the facts set forth in this Declaration.

### The Proposed 2022 Compensation Plans

4.    As has been done in each of the prior two years, the Debtors now propose the

adoption of an annual key employee incentive plan (the "**2022 KEIP**") and key employee retention

plan (the "**2022 KERP**" and, together with the 2022 KEIP, the "**2022 Compensation Plans**").

The 2022 Compensation Plans, like the longstanding and Court-approved programs on which they

are based, address two priorities: first, the need to pay competitive compensation to motivate the

---

[2] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Motion.

Company's workforce and minimize attrition, and second, the need to tailor compensation practices to present circumstances—in particular, the current phase and trajectory of these Chapter 11 Cases, including the ongoing appeal of the District Court Decision.

5.      The 2022 KEIP, like its predecessor programs, includes an annual, incentive-based award payable in 2022 and 2023.  The 2022 KEIP also provides for an incentive-based, long-term grant payable in 2023 and subject to clawback through March 2025.

6.      The 2022 KERP, like its predecessor programs, includes an annual retention award payable in 2022 and 2023.  The 2022 KERP also provides for a long-term retention grant payable in 2023, subject to clawback through March 2025, and additional targeted retention payments for certain employees.

7.      The Compensation Committee and the Debtors' senior management team have again worked closely with WTW to develop the 2022 Compensation Plans and benchmark their cost against the market.

8.      The Debtors' employees continue to bear incremental burdens.  Continuing attrition has left the remaining employees to shoulder heightened workloads, operating a complex pharmaceutical business in the midst of these contentious, difficult Chapter 11 Cases.  The Company maintains lean operations, and in the face of broader challenges throughout the labor market, the Debtors have struggled to fill open positions.  Indeed, eighteen positions have opened at the Company year to date, joining five positions that opened but were not filled in 2021.  Of these twenty-three positions, eleven remain unfilled, and the twelve filled positions remained vacant, on average, for more than eighty-eight days.[3]

---

[3] Unless otherwise indicated, the employment data referenced herein are current as of April 22, 2022.

9.      The 2022 Compensation Plans substantially replicate the Company's prior annual programs and remain consistent with the Debtors' historical compensation practices.  I believe that departing from past practice would make it much more difficult for the Debtors to retain employees who are necessary to maintain business operations.  I believe that the 2022 Compensation Plans are reasonably tailored and necessary to realize the Debtors' objective of a successful emergence from chapter 11.

### **The Proposed 2022 KEIP**

*The 2022 KEIP Participants*

10.     The proposed 2022 KEIP would apply to (i) the Debtors' president and chief executive officer (the "**CEO**") and (ii) the Debtors' executive vice president, general counsel and secretary (the "**General Counsel**" and, together with the CEO, the "**2022 KEIP Participants**"). I will not be participating in either of the 2022 Compensation Plans, in accordance with the terms of my employment agreement.

11.     The expertise, skills and institutional knowledge of the 2022 KEIP Participants remain essential to guiding the Debtors through the ongoing, novel restructuring and to maximizing the value of the Debtors' estates.  The 2022 KEIP Participants continue to perform essential functions for the Debtors, including providing critical management and legal services, and are responsible for helping determine the Debtors' strategic plan and facilitating the achievement of the Debtors' goals.  Their workloads remain elevated, both as a result of the prolongation of these Chapter 11 Cases and attrition throughout the Company (including among Purdue's senior management team).  Moreover, I believe that their leadership has been particularly critical this year in supporting employee morale following the District Court Decision and in shepherding the Company through an additional round of intense, difficult mediation that resulted

in an agreement that is anticipated to deliver substantial additional value to stakeholders.  Because
the 2022 KEIP Participants continue to make extraordinary efforts to maximize the value of the
Debtors' businesses and shepherd the Company through its restructuring, the Compensation
Committee, the Board and the Debtors' senior management team believe that appropriately
incentivizing the two 2022 KEIP Participants is necessary to ensure optimal recoveries for all
stakeholders.

12.     Neither 2022 KEIP Participant will be eligible to participate in the proposed 2022
KERP (including the 2022 Targeted Retention Awards, as defined below), and the purpose of the
proposed 2022 KEIP is to incentivize the 2022 KEIP Participants.

***The 2022 KEIP Structure***

13.     Each 2022 KEIP Participant will receive (i) an annual award (the "**2022 KEIP
Annual Award**") and (ii) a long-term incentive compensation grant (the "**2022 KEIP Long-Term
Award**"), which are collectively designed to replicate the Debtors' historical compensation
practices and renew the Company's prior, Court-approved programs, subject to material reductions
negotiated in 2020 and carried forward ever since.  The 2022 KEIP Annual Award and 2022 KEIP
Long-Term Award have target values, which are also their maximum values, set forth in **<u>Table 1</u>**
below.  All payments under the 2022 KEIP will be tied to the Debtors' achievement of corporate
objectives (as discussed in more detail below, the "**2022 Performance Metrics**") at threshold or
target performance levels, as applicable, with straight-line interpolation to be used if actual
performance falls between those amounts.  The 2022 KEIP Participants will not receive any
payments under the 2022 KEIP should the Company fail to achieve the 2022 Performance Metrics
at the threshold level.  The maximum cost of the 2022 KEIP is approximately $5.4 million.

**TABLE 1**

| 2022 KEIP Participant | Target 2022 KEIP Annual Award | Target 2022 KEIP Long-Term Award | Total Target 2022 KEIP Award |
|---|---|---|---|
| President and Chief Executive Officer | $2,277,100 | $775,067 | $3,052,167 |
| Executive Vice President, General Counsel and Secretary | $1,826,100 | $491,825 | $2,317,925 |
| **Total** | **$4,103,200** | **$1,266,892** | **$5,370,092** |

14.    Subject to achievement of the 2022 Performance Metrics at a threshold level, and subject to each 2022 KEIP Participant's continued employment through the payment date (other than as provided below), the 2022 KEIP Annual Award will be paid as follows: (i) 25% on the Company's regular payroll date on or immediately following October 1, 2022, subject to clawback of the full amount paid if the 2022 KEIP Participant resigns or is terminated for any reason other than by the Debtors without cause prior to March 15, 2023, and (ii) 75% on the Company's regular payroll date on or immediately following March 15, 2023.  The first payment will assume target-level performance, and the second payment will include a true-up, if needed, including a potential clawback of any amount that would not have otherwise been paid if target performance is not met. A termination of employment by the Debtors without cause after September 30, 2022 will trigger acceleration at the target value, likewise subject to clawback if performance is later scored below target (such clawback to occur by March 15, 2023).  In the event of a termination of employment by the Debtors without cause on or prior to September 30, 2022, no payment will be due.

15.    Consistent with Purdue's longstanding compensation practices, each 2022 KEIP Participant will also receive a 2022 KEIP Long-Term Award, which is designed to mimic the

economic structure of the LTRP grant that the participant otherwise would have received in 2022.[4]

In connection with seeking approval of the long-term incentive compensation grant component of

the 2020 key employee incentive plan, the Debtors agreed to a 52.25% aggregate reduction from

historical practice and to subject the award to acceleration upon emergence.  That discount was

carried forward for the long-term incentive compensation grant component of the following year's

key employee incentive plan (the "**2021 KEIP Long-Term Award**") while switching to a nearer-

term payment date, subject to a clawback through the historical payment date, rather than

acceleration upon emergence.  The discount, and structure, of the 2021 KEIP Long-Term Award

is reflected once again in the 2022 KEIP Long-Term Award.  Payment will be made on the

Company's regular payroll date on or immediately following March 15, 2023, subject to clawback

if the 2022 KEIP Participant resigns or is terminated for any reason other than by the Debtors

without cause prior to March 2025.  As with the 2022 KEIP Annual Award, termination of

employment without cause after September 30, 2022 will accelerate the 2022 KEIP Long-Term

Award at target, subject to clawback for any amount that would not otherwise have been paid if

target performance is not met.  Payouts will be tied to the same 2022 Performance Metrics that

apply to the 2022 KEIP Annual Award and therefore will depend solely on the Company's

performance in 2022.[5]

---

[4] The 2022 KEIP Long-Term Award is intended to replicate the Company's prepetition Long-Term Results Plan, which provided for incentive grants that would accrue and be payable over a three-year performance period.  Last year, in connection with seeking stakeholder approval of the Debtors' compensation programs, Purdue agreed to pay its long-term award in June 2022, subject to clawback through the date the payments would otherwise have been made in 2024.  The Debtors now seek to carry forward this structure and payment timing, with an award payable in 2023 and subject to clawback through the date on which payments would otherwise have been made in 2025.

[5] As it has in each of the prior two performance periods, the Compensation Committee determined that it was in the best interest of the Debtors to apply only the 2022 Performance Metrics, rather than performance metrics for a three-year period, to pay under the 2022 KEIP Long-Term Awards, given that the Debtors are anticipated to emerge well before the completion of the typical three-year performance period for long-term awards.

*The 2022 Performance Metrics*

16.     Consistent with its longstanding practice of approving performance metrics early in each calendar year, the Compensation Committee set the 2022 Performance Metrics in the first quarter of 2022, with guidance from WTW and following consultation with the UCC, AHC and MSGE, although the weighting of the metrics and scoring methodology for one metric was not approved until early in the second quarter of 2022 to allow, I am informed, additional time for creditor consultation.

17.     The 2022 Performance Metrics are based on the same three strategic pillars that have long defined the Debtors' corporate objectives: value creation (representing 50% of the 2022 Performance Metrics), innovation and efficiency (40% of the 2022 Performance Metrics), and people and culture (10% of the 2022 Performance Metrics).  The 2022 Performance Metrics are ambitious, with threshold targets that are difficult to achieve both individually and when considered in the aggregate, and will require the 2022 KEIP Participants' diligent and committed efforts.  The 2022 Performance Metrics set by the Compensation Committee are challenging, require extensive achievement and present a meaningful risk of not being met at the threshold level required for payment.  Consultation with the UCC, AHC and MSGE—who reviewed the 2022 Performance Metrics in the context of diligence materials provided by the Debtors in response to creditor requests, along with confidential information about the Debtors' budget and operations already available to these groups—resulted in certain changes to the initially proposed 2022 Performance Metrics.  Accordingly, the 2022 Performance Metrics are the product of both the same rigorous internal process that the Debtors have used in past years and consultation with highly informed and sophisticated members of the Debtors' key creditor constituencies.  The 2022

KEIP Participants have been focused on driving the Debtors to meet these goals, and they will
need to apply substantial efforts to achieve their targets throughout the rest of this year.

18.    The value creation strategic pillar measures and rewards the long-term success of
the Debtors' business based on certain nonfinancial operational goals, such as meeting certain
deadlines with respect to the Company's testing and development of non-opioid products,
including overdose treatment products.    **Table 2** below sets forth the operational and
developmental goals that the Compensation Committee approved as key to the long-term success
of the Debtors' business.

**TABLE 2**

| Value Creation Metrics | Target Date | % of Value Creation | % of 2022 Performance Metrics |
|---|---|---|---|
| − Implement Company initiatives to ensure the Company operates efficiently and sustainably so as to maximize net value generated to abate the opioid crisis. | | 50.0% | 25.0% |
| **Public Health Initiatives[6]** | | | |
| − Make the Nalmefene vial commercially available | End of Q2 2022 | 27.5% | 13.75% |
| − File the ANDA for the Nalmefene pre-filled syringe | End of Q4 2022 | | |
| − Submit FDA regulatory filing to support an increase in specification for the naloxone degradant in buprenorphine/naloxone sublingual tablets (generic Suboxone) | End of Q2 2022 | | |
| − Complete and achieve bioequivalence for OTC Naloxone | End of Q1 2022 | | |

---

[6] All medications referred to in this section are potential treatments for opioid overdose.

| Progressing the Pipeline | | | |
|---|---|---|---|
| – Initiate clinical studies of Sunobinop | End of Q2 2022 | 17.5% | 8.75% |
| – Complete Proof of Concept pharmacokinetic study for KL-01401 (epinephrine oral mucosal film) | End of Q4 2022 | | |
| Rhodes Associates L.P. ("RALP") and Progressing the Generic Pipeline | | | |
| – Scopolamine TDS – Submit ANDA | End of Q2 2022 | 5.0% | 2.5% |
| – Lisdexamfetamine Capsules – Complete bioequivalence and stability studies | End of Q2 2022 | | |
| – Formoterol Inhalation Solution – Submit response to FDA Complete Response Letter | End of Q2 2022 | | |
| **Total** | | **100.0%** | **50.0%** |

19.





20.     This redacted metric reflects confidential commercial information that consists of specific near-term commercial priorities and opportunities.  Such information is maintained confidentially by the Debtors and has been provided solely to the Board and senior management as well as, subject to the *Third Amended Protective Order* [ECF No. 1935], the creditors that have consultation rights with respect to the 2022 Performance Metrics.  If this information were to be disclosed publicly, I believe that it would likely advantage the Debtors' competitors by providing them with insight into the Debtors' strategic priorities or otherwise negatively impact the Debtors' business.

21.     The innovation and efficiency strategic pillar captures key financial and operational goals, including important business metrics such as operating profit and net sales.  **Table 3** below sets forth the financial and operational goals that the Compensation Committee and the Debtors' senior management team have identified as key to the Company's long-term business success. This year, the metric focused on properly positioning the Company for emergence from

bankruptcy has been moved to the innovation and efficiency strategic pillar with an increased

weighting, given the importance of this process to maximizing the value of the enterprise for the

benefit of all its stakeholders and the challenges faced in preparing to emerge promptly on an

uncertain timeframe.

**TABLE 3**

| Innovation and Efficiency Metrics | Target | % of Innovation and Efficiency | % of 2022 Performance Metrics |
|---|---|---|---|
| – Consolidated Total Business Operating Profit | $96 million | 55.0% | 22.0% |
| – Avrio Net Sales[7] | $105.5 million | 20.0% | 8.0% |
| – Rhodes (RALP) Operating Loss | ($39 million) | 5.0% | 2.0% |
| – Position the Company for emergence from bankruptcy when authorization is granted by updating as necessary the established process to transfer licenses, make product label changes, transfer government contracts, ensure the orderly transfer of payroll and benefits and implement orderly transfer of intellectual property, as well as preparing to take, at the appropriate time, pre-emergence actions that must occur within a specific time period of the anticipated date of the Company's emergence from bankruptcy, and ensure operational readiness to implement such initiatives. | | 20.0% | 8.0% |
| **Total** | | **100.0%** | **40.0%** |

22.     Finally, nurturing the Debtors' human resources and organizational culture has

been, and will remain, critical to keeping the Debtors on the path to emergence and beyond.  To

that end, the Debtors' people and culture strategic pillar metrics include (a) implementing, by the

end of the third quarter, priority initiatives identified through an employee feedback program and

(b) strengthening the sustainability and accountability of the Company's commitment to diversity,

equity, inclusion and belonging by (i) completing foundational and people leader training by the

---

[7] Avrio Health L.P. is a wholly owned subsidiary of the Debtors that produces over-the-counter consumer health products, including Betadine (a wound care product), Colace (a stool softener), Senokot (a laxative) and SlowMag Mg (a magnesium supplement).

end of the second quarter and (ii) progressing the three established employee resource groups

("**ERGs**") and supporting other colleague-requested ERGs as needed by the end of the year.[8]

These metrics will be reviewed holistically and will count for 10% of the Company's score under

the 2022 Performance Metrics.

***Importance of the 2022 KEIP***

23.      The Compensation Committee and the Debtors' senior management team strongly

believe that maintaining compensation in line with historical practice and competitive with the

market is critical to the Debtors' ability to incentivize senior leadership to complete a value-

maximizing restructuring and emerge from bankruptcy.   The 2022 KEIP is consistent with the

Debtors' historical compensation practices, although lower in amount given the continuation of

concessions first agreed to in 2020, while the challenges faced by the 2022 KEIP Participants

remain elevated as they continue to navigate these protracted Chapter 11 Cases and work toward

emergence.   Though the cost of the 2022 KEIP as a percentage of revenue has risen year-over-

year, this increase is primarily attributable to the Debtors' decreased revenue throughout the

duration of these Chapter 11 Cases.   For each 2022 KEIP Participant, the total cost of the proposed

2022 KEIP Annual Award carries forward the annual award component of last year's program,

subject only to modest and typical year-over-year merit increases.

24.      I understand the LTRP has long been a crucial component of the Debtors' overall

compensation strategy.   The Compensation Committee and the Debtors' senior management team

continue to believe that granting long-term awards, payable in 2023 and subject to clawback

---

[8] ERGs are voluntary, self-initiated groups of colleagues who believe in or share common interests, backgrounds, goals and/or characteristics.  Any employee who does not identify as a member of a particular ERG is invited to attend as an ally—one who does not share a common characteristic but who wants to actively support, promote or advance a culture of inclusion.

through March 2025, to the 2022 KEIP Participants as part of the 2022 KEIP is necessary, appropriate and consistent with the Debtors' historical compensation practices. The proposed amount of the 2022 KEIP Long-Term Awards once more reflects concessions agreed to in 2020 and carried forward last year, subject only to normal and modest annual merit increases. The loss of these long-term grants without substitution would represent a significant decrease in overall compensation, which could jeopardize the Debtors' ability to incentivize the 2022 KEIP Participants and strengthen the long-term value of the enterprise.

25.    I understand that the CEO's compensation remains below median when compared to chief executive officers at peer, non-debtor pharmaceutical companies, while the CEO continues to play a vital role in maximizing the value of the Debtors' estates for the benefit of their stakeholders through his stewardship of the Debtors during the many challenges presented by these Chapter 11 Cases.

26.    I also understand that, as in years past, the General Counsel's compensation remains above-market when compared to general counsel at peer, non-debtor pharmaceutical companies. But I understand it has long been—and indeed it still is—the Debtors' business judgment that Purdue requires a general counsel with significantly greater expertise and experience than is typical, particularly in light of the enormous complexities of these Chapter 11 Cases, which are entirely in addition to the usual complex legal issues attendant to running a diversified pharmaceutical business. The Compensation Committee and the Debtors' senior management team continue to believe that the General Counsel's compensation is appropriate and reasonable, given the immense challenges he faces in his role with the Debtors and in light of his past experience and expertise and the other opportunities available to an individual with his qualifications.

14

## The Proposed 2022 KERP

### *The 2022 KERP Participants*

27.    The Debtors seek authorization to implement the 2022 KERP for virtually all incentive-eligible employees other than the 2022 KEIP Participants (the "**2022 KERP Participants**").[9] The 2022 KERP Participants have undertaken significant efforts to maintain the value of the Debtors' business—including during the unique environment of the ongoing COVID-19 pandemic and over the course of these protracted Chapter 11 Cases—and enable the Debtors' progress toward a successful restructuring. They have performed these tasks under significant stresses, including reduced employee headcount and a very competitive market for talent to replace departing employees. Nevertheless, the 2022 KERP Participants continue to deliver extraordinary business results, for which the Debtors must pay market compensation. Approximately 483 employees will participate in the 2022 KERP, of which eighteen will be vice president or higher and 465 will be middle management, professional employees and support and technical staff, which include scientific researchers as well as regulatory, compliance, quality and manufacturing personnel.[10] Neither 2022 KEIP Participant is eligible to participate in the 2022 KERP. No 2022 KERP Participant meets any of the criteria for being an insider as set forth in the Motion.

### *The 2022 KERP Structure*

28.    Each 2022 KERP Participant will receive (i) an amount equal to the 2022 KERP Participant's target AIP (the "**2022 KERP Annual Award**") and, (ii) where eligible, a long-term

---

[9] I understand that a small number of employees either previously did not participate in the AIP and therefore will not participate in the 2022 KERP or currently are not eligible to participate in the 2022 KERP.

[10] In instances where the separation of existing 2022 KERP Participants from the Debtors results in newly hired employees taking on their roles or responsibilities—or if the Debtors hire employees to fill currently vacant, non-insider positions—the 2022 KERP would allow the Debtors to include such newly hired employees as 2022 KERP Participants. The number of 2022 KERP Participants shown above excludes one non-insider employee whom the Company has identified as a 2022 Targeted Retention Awards recipient but who is not otherwise eligible to participate in the AIP or LTRP.

incentive compensation grant payable in 2023 (subject to clawback through March 2025) (the "**2022 KERP Long-Term Award**"). Certain 2022 KERP Participants will receive additional, targeted retention payments (the "**2022 Targeted Retention Awards**"). The Debtors also propose to accelerate certain outstanding, Court-approved long-term awards currently scheduled to be paid in March 2023, subject to clawback through the date payment otherwise would have been made in March 2023.

29.    The 2022 KERP Annual Award is equal to the target amount of the AIP award that each participant would historically have received, including modest, ordinary course merit increases. The 2022 KERP Annual Award is not subject to performance criteria, in order to provide the 2022 KERP Participants with greater certainty about their compensation. The Compensation Committee and the Debtors' senior management team expect this structure to help retain 2022 KERP Participants under what remain challenging and uncertain conditions.

30.    The 2022 KERP Annual Award will be paid (i) 50% on the Company's regular payroll date on or immediately following October 1, 2022 and (ii) 50% on the Company's regular payroll date on or immediately following March 15, 2023. Other than for hourly employees, the first payment of the 2022 KERP Annual Award is subject to clawback if the 2022 KERP Participant resigns or is terminated for any reason other than by the Debtors without cause prior to March 15, 2023. Outstanding amounts under the 2022 KERP Annual Award will accelerate in the event that a 2022 KERP Participant's employment is terminated by the Debtors without cause after September 30, 2022. The total aggregate payment under the 2022 KERP Annual Award is approximately $15.5 million.

31.    Consistent with past practice, certain 2022 KERP Participants will receive a 2022 KERP Long-Term Award that substantially replicates the long-term grants awarded under the

Debtors' prior, Court-approved programs and mimics the economic structure of the LTRP grant
that otherwise would have been granted to each eligible 2022 KERP Participant under Purdue's
longstanding compensation practices. The amount of such grant will equal 60% of the target LTRP
grant that otherwise would have been granted, reflecting a discount to past practice negotiated in
2020 and carried forward ever since, subject only to modest, ordinary course annual base salary
increases, promotions and other changes to the employee population. The 2022 KERP Long-Term
Award will not be subject to performance metrics.

32.     Payments due under the 2022 KERP Long-Term Awards will be made on the
Company's regular payroll date on or immediately following March 15, 2023, subject to clawback
(other than for hourly employees) if the 2022 KERP Participant resigns or is terminated for any
reason other than by the Debtors without cause prior to March 2025. Outstanding amounts will
accelerate in the event of a termination of employment after September 30, 2022 by the Debtors
without cause. The aggregate total cost of these 2022 KERP Long-Term Awards for all 2022
KERP Participants is approximately $5.7 million.

33.     In addition, the Debtors have previously used targeted retention awards, including
in each year since the commencement of these Chapter 11 Cases, to preserve and maximize the
value of the Debtors' estates. Though the Debtors have continued to see attrition with these
programs in place, the support for the efficacy of these targeted retention awards is clear: attrition
among targeted retention recipients was approximately 5.7% in 2021, compared to approximately
11% in the broader Purdue population. The Debtors therefore seek approval of the 2022 Targeted
Retention Awards in an aggregate amount of up to $7,200,000, which is the same amount that the

Court authorized last year.[11]  However, this year, the Debtors propose that $0.78 million of such amount consist of supplemental capacity that the Debtors may deploy to respond to changing business conditions, but only after consultation with the UCC, AHC and MSGE, which will provide the Debtors with greater flexibility while cabining that flexibility by subjecting any amount spent thereunder to creditor consultation.  The 2022 Targeted Retention Awards will renew the Debtors' previous award programs and allow the Debtors to continue the practice of making targeted retention payments to an identified group of key employees.[12]  The Debtors will again endeavor to use only as much of such capacity as is necessary to retain key employees, with a goal of maximizing the value of the Debtors' estates.

34.    The 2022 Targeted Retention Awards will be paid (a) 25% on the Company's regular payroll date on or immediately following December 30, 2022, (b) 25% on the Company's regular payroll date on or immediately following March 30, 2023 and (c) 50% on the Company's regular payroll date on or immediately following June 30, 2023.[13]  The 2022 Targeted Retention Awards are subject to clawback if the recipient resigns or is terminated for any reason other than by the Debtors without cause before September 30, 2023, and outstanding amounts due will accelerate upon a recipient's termination by the Debtors without cause after September 30, 2022.

---

[11] Though the targeted retention component of last year's key employee retention plan approved by this Court authorized the Company to spend up to $7.2 million thereunder, I understand that the Debtors' senior management team, in an effort to carefully manage estate resources, ultimately awarded only $5.1 million under the program.  This restraint, however, was predicated on the assumption at the time that the Debtors would be emerging from chapter 11 in the near term.  Thus, it is the Compensation Committee's and the Debtors' senior management team's business judgment that an aggregate amount of $7.2 million remains the appropriate size for this year's proposed 2022 Targeted Retention Awards.

[12] The Debtors' management team has identified the employees most likely to require targeted retention payments over the course of this next year.  As business needs fluctuate, some variation in the targeted retention population may occur, though in no event will (a) the aggregate dollar amount of the 2022 Targeted Retention Awards exceed $7,200,000 or (b) any insider receive such an award.

[13] Timing with respect to supplemental capacity may be adjusted in response to applicable business conditions.

*Importance of the 2022 KERP*

35.    The Compensation Committee and the Debtors' senior management team believe that the 2022 KERP is commercially appropriate and reasonable.  The challenges of operating in chapter 11, combined with the challenges particular to Purdue's unique situation, present the 2022 KERP Participants with an ongoing, extraordinary burden.  Unless the Debtors provide the workforce with appropriate, market compensation, there is a very real risk that employees will depart for other opportunities.  Indeed, even with the Company's prior programs in place, attrition has remained high, with nineteen resignations thus far in 2022 alone, which represents a year-to-date annualized voluntary turnover rate of 12.7%.  As the Debtors have suffered attrition, the workload on the remaining employees has only increased.  Additional defections among the Debtors' workforce could significantly hamper operations and possibly jeopardize the Debtors' timely emergence.  Accordingly, the Company is seeking Court approval to renew the annual compensation programs now to provide non-insider employees with certainty regarding their compensation arrangements for this year.  Moreover, the Debtors continue to endure significant hiring obstacles (in the face of a broadly difficult and competitive market for talent); eighteen headcount positions have opened year to date, joining five positions that opened but were not filled in 2021.  Eleven of these positions are unfilled, and it remains extremely unlikely that the Debtors will be able to find sufficient, if any, qualified replacements during this critical moment in these Chapter 11 Cases.  If not for the Company's prior annual compensation programs, the Compensation Committee and the Debtors' senior management team believe that the attrition rate would have been significantly higher.  Failure to implement the 2022 KERP could have a devastating effect on the Debtors' ability to retain the individuals needed to maintain business operations and deliver a successful emergence from these Chapter 11 Cases for all stakeholders.

36.    The 2022 KERP Annual Award is consistent with the Debtors' historical compensation practices.  The 2022 KERP Annual Award substantially replicates the Company's prepetition and Court-approved annual award programs, subject only to modest, ordinary course annual merit increases.  Subjecting the first payment to clawback through March 15, 2023 provides a powerful retentive element and mimics the historical payment timing of the Company's prepetition AIP.  Similarly, the 2022 KERP Long-Term Award substantially replicates the Debtors' longstanding long-term grant program and carries forward the steep discount to past practice that this Court first approved in 2020 (subject to modest, ordinary course year-over-year increases).  Additionally, management selected the 2022 KERP Participants most likely to require 2022 Targeted Retention Awards through a careful review of employee roles and job functions in order to identify the roles that are particularly critical to preserving and maximizing the value of the Debtors' estates.  The aggregate amount of the 2022 Targeted Retention Awards is consistent with the aggregate amount of prior Court-approved targeted retention programs, which have proven effective at mitigating attrition among selected critical employees.

***Change in Timing of Payment of 2020 KERP Long-Term Awards***

37.    In 2020, the Debtors initially sought Court approval to (a) grant approximately $10.2 million in new long-term awards payable to participants in March 2023 (the "**2020 KERP LTRP Grant**") and (b) pay certain awards that had already been granted under the Company's prepetition LTRP that included approximately $0.82 million payable in March 2023 (which amount has been reduced from the originally approved approximately $1.15 million by resignations in the interim) (the "**Prepetition Long-Term Awards**" and, together with the 2020 KERP LTRP Grant, the "**2020 KERP Long-Term Awards**").  As the Court knows, following negotiations with creditors, the Debtors modified the 2020 KERP Long-Term Awards by

(a) providing for acceleration upon emergence and (b) reducing the aggregate amount of the 2020 KERP LTRP Grant to $6.12 million (of which approximately $5.00 million remains outstanding), a 40% discount to past practice.

38.    When the 2020 KERP Long-Term Awards were proposed and approved, emergence was expected to occur in approximately the second half of 2021.  The Debtors viewed the 40% discount as reasonable under the circumstances because, by linking payment with emergence, participants were expected to receive their 2020 KERP Long-Term Awards significantly sooner than they otherwise would have.  Emergence was on schedule to occur only modestly later than anticipated until the District Court Decision shifted this calculus.  Now, emergence will not occur until the summer of 2022 at the earliest, and potentially significantly later.  This means that, absent the proposed change, payment of the 2020 KERP Long-Term Awards may be subject to little or no acceleration despite a significant discount of the payment amounts that reflects a material anticipated acceleration.

39.    Accordingly, the Compensation Committee and the Debtors' senior management team believe that accelerating the March 2023 payment of the 2020 KERP Long-Term Awards to June 2022, subject to a clawback through the original payment date of March 2023, will better align the payment schedule with the initial expectations of all parties and best serve the Debtors from an employee morale and retention perspective.  No further discount is appropriate in connection with the proposed accelerated payment date given that the 2020 KERP Long-Term Awards were already discounted to reflect an anticipated payment date approximately a year earlier than the date sought in this Motion and that the clawback date will maintain the retention effect of these awards through the original payment date.  The total amount proposed to be accelerated is approximately $5.82 million to ninety-seven participants, an average payment of

$60,000 per participant. For the avoidance of doubt, this proposed change will not affect the compensation of any participant in the 2020 KEIP; only non-insider employees will receive accelerated payments.

### Conclusion

40.    I believe that the 2022 Compensation Plans are crucial to the Debtors' business operations during the pendency of these Chapter 11 Cases, as they will maintain employee morale, dedication, confidence and cooperation and maximize the Debtors' ability to reorganize successfully. These annual programs are necessary to provide Purdue's workforce with market compensation, to motivate employees to achieve demanding corporate objectives, and to ensure that key employees remain in their positions. Preserving and maximizing the value of these estates by appropriately compensating the Debtors' employees is particularly important at this juncture, as the Debtors prepare to exit chapter 11 and put the Company's assets to work abating the opioid crisis. Providing appropriate, market compensation to the Debtors' employees has become all the more important in the wake of the District Court Decision, which upset the expectations regarding the Company's expected near-term emergence from chapter 11. I believe that the failure to authorize the 2022 Compensation Plans would irreparably impair the Debtors' relationships with employees, adversely impact the Debtors' ability to deliver superior products and services, and needlessly hinder the Debtors' restructuring efforts.

41.    In sum, I believe that the relief requested in the Motion is necessary to avoid irreparable harm to the Debtors and constitutes a critical element in maximizing the value of the Debtors' business.

*[Remainder of Page Intentionally Left Blank]*

42.    I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed:   April 27, 2022

By:   */s/ Terrence Ronan*
       Terrence Ronan
       Executive Vice President and Chief
       Financial Officer
       Purdue Pharma L.P.