DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

# DEBTORS' AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT OMNIBUS OBJECTION TO MOTIONS TO FILE PROOFS OF CLAIM AFTER CLAIMS BAR DATE

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") and the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") submit this joint omnibus objection in response to the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

motions to file proofs of claim after the claims bar date and associated supplemental statements filed by Michael T. O'Brien ("**Mr. O'Brien**") [Dkt. Nos. 4580, 4651] (the "**O'Brien Motion**" and the "**O'Brien Statement**," respectively), James Roland Sprayberry ("**Mr. Sprayberry**") [Dkt. No. 4618] (the "**Sprayberry Motion**"), Otis William Dahman ("**Mr. Dahman**") [Dkt. Nos. 4619, 4644] (the "**Dahman Motion**" and the "**Dahman Statement**," respectively), Christopher Allan Freeman ("**Mr. Freeman**") [Dkt. Nos. 4620, 4643] (the "**Freeman Motion**" and the "**Freeman Statement**," respectively), Anthony Kristopher Olson ("**Mr. Olson**") [Dkt. Nos. 4583, 4652] (the "**Olson Motion**" and the "**Olson Statement**," respectively), Trever James Olsen ("**Mr. Olsen**") [Dkt. No. 4645] (the "**Olsen Motion**"), and Nickolas Colbert ("**Mr. Colbert**" and, with Mr. O'Brien, Mr. Sprayberry, and Mr. Dahman, Mr. Freeman, Mr. Olson, and Mr. Olsen, the "**Movants**") [Dkt. No. 4678] (the "**Colbert Motion**," and, with the O'Brien Motion, O'Brien Statement, Sprayberry Motion, Dahman Motion, Dahman Statement, Freeman Motion, Freeman Statement, Olson Motion, Olson Statement, Olsen Motion, and Colbert Motion, the "**Motions**"), and respectfully state as follows:

1. The Movants, all incarcerated individuals, request that this Court extend the bar date as to them to allow them to file late proofs of claim.[2] (O'Brien Mot. at 1; Sprayberry Mot. at 1; Dahman Mot. at 1; Freeman Mot. at 1; Olson Mot. at 1; Olsen Mot. at 1; Colbert Mot. at 1.) Mr. O'Brien asserts that "[t]he global [p]andemic has slowed and halted [his] life" and that "[d]ue to the nationwide lockdown, [his] ability to communicate and correspond has become hinder[e]d and also come to a standstill at time"—all of which "was beyond [his] control." (O'Brien Stmt. at 1.) He also asserts that "[a]t the time [he] tried to acquire the required claim documents, the United States Postal Service ["**USPS**"] was lacking in funds" and because of this,

---

[2] Each of the Movants filed a proof of claim between September 2021 and April 2022.

2

"the affected states [were] informed[] mail would be late for outgoing and incoming . . . at the same time and several months prior to and after the [C]ourt[']s new 'Bar Date.'" (*Id.* at 1-2.) Mr. O'Brien further asserts that he is "currently incarcerated and [has] been since 11/20"—presumably, November of 2020—"only receive[s] two hours of time out of [his] cell a day," and has no access to "publications . . . except for *USA Today*[,]" which "has to be purchased from an outside vendor." (*Id.* at 3.) Mr. Dahman, Mr. Freeman, Mr. Olson, Mr. Olsen, and Mr. Colbert make substantially the same allegations regarding the global pandemic, the USPS delays, limited time out of their cells, and lack of free publications at their places of incarceration, except that Mr. Dahman and Mr. Freeman assert that they have been incarcerated "since 5-20-2020," Mr. Olson "since November 2019," Mr. Olsen "since [October 20]19," and Mr. Colbert "since 2019." (*See* Dahman Stmt. at 1-2; Freeman Stmt. at 1-2; Olson Stmt. at 1-2; Olsen Mot. at 1-2; Colbert Mot. at 1-2.) Mr. Sprayberry asserts that "due to Covid-19, [he] has been [quarantined]" and without "access to the internet, law library[, and] visit[or]s." (Sprayberry Mot. at 1.) Although the Debtors and Creditors' Committee are sympathetic to the Movants' circumstances, for the reasons discussed below, and absent any further information being provided by the Movants, the Motions should be denied.

2.  To date, the Debtors, Creditors' Committee, and Ad Hoc Group of Individual Victims (the "**PI Group**"), with the approval of this Court, have agreed to allow the filing of twenty-seven late proofs of claim. (*See* Dkt. Nos. 1661, 1664, 2057, 2069, 2071, 2086, 2088, 2193, 2211, 2458, 2834, 3058, 3342, 3526, 3764, 3894, 3895, 4156, 4219, 4230, 4231, 4262, 4275, 4294, 4415, 4481, 4525.) The prior individuals who sought relief from this Court made sufficient individualized assertions regarding the reason for the untimely filing, including incarcerated individuals who alleged that they received limited information and resources

leading up to and following the bar date due to their *then current* incarceration and the attendant restrictions caused by the COVID-19 pandemic. (*See* Dkt. Nos. 1664, 2057, 2069, 2071, 2086, 2088, 2193, 2458, 2834, 3058, 3342, 3526, 3764, 3894, 3895, 4230, 4231, 4262, 4275, 4294, 4415.) Accordingly, each of these prior late claim motions filed by incarcerated individuals provided a justifiable reason for the delay such that the Debtors, Creditors' Committee, and PI Group agreed to allow the claims as timely, and this Court found good and sufficient cause for granting the requested extensions. Absent any further information being provided by the Movants, the same is not true of the Motions.

3.      Based on the information provided by the Movants, the Movants' requests to file proofs of claim after the bar date do not satisfy this Circuit's strict application of the "excusable neglect" standard set forth in Federal Rule of Bankruptcy Procedure 9006(b)(1). Courts have discretion to allow a late proof of claim only upon motion of a late-claimant showing "excusable neglect." Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'"). The burden of meeting the *Pioneer* test for excusable neglect, however, falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" ***and*** that the neglect was "excusable." *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010). A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger

of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

4.    The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11.) Put simply, courts rarely extend the bar date for late-claimants, and based on the information provided by the Movants, the Movants' requests for relief do little to meet the hard line drawn by the Second Circuit.

5.    With respect to the most important factor—the reason for the delay—the Movants do not provide a sufficient reason why they could not file proofs of claim prior to the July 30, 2020 bar date. As an initial matter, incarceration, in itself, is not sufficient to justify the filing of a late claim. *See, e.g.*, *In re Motors Liquidation Co.*, 599 B.R. 706, 716 (S.D.N.Y. 2019) (noting that neither mistake of law nor incarceration constitutes "excusable neglect").

However, and more fundamentally, based on the assertions in the O'Brien Statement, it is clear that he was not incarcerated during the time leading up to and immediately after the bar date. (*See* O'Brien Stmt. at 2.) Indeed, Mr. O'Brien was incarcerated approximately four months *after* the extended general bar date. (*Id.*) Similarly, Mr. Dahman and Mr. Freeman were not incarcerated until several months after the Debtors began providing robust notice of the bar date and of the need to file a proof of claim on February 24, 2020. (*See* Dahman Stmt. at 2; Freeman Stmt. at 2; *Third Suppl. Finegan Decl.* ¶ 7 (Aug. 5, 2021), Dkt. No. 3403 ("**Finegan Decl.**").) And, while Mr. Olson, Mr. Olsen, and Mr. Colbert assert in their Motions that they have been incarcerated since 2019, based on information obtained from the Washington State Penitentiary[3] where these Movants are currently or were at one time incarcerated, the Debtors and Creditors' Committee understand that each of these Movants were either not incarcerated in the Washington State Penitentiary during the bar date period at all or only incarcerated in the Washington State Penitentiary for a portion of the bar date period.[4] In particular, Mr. Olson was released from the Washington State Penitentiary in October 2017 and returned in August 2021, Mr. Olsen was released from the Washington State Penitentiary in September 2019 and returned to the Washington State Penitentiary on July 1, 2020, and Mr. Colbert was not incarcerated in the Washington State Penitentiary until September 2021. Accordingly, Mr. Olson and Mr. Colbert, like Mr. O'Brien, appear to have had the full benefit of the bar date period *prior to their*

---

[3] For purposes of this objection, the term "Washington State Penitentiary" is used for any or all of the Washington State Penitentiary, the Washington Corrections Center, or any other penitentiary or corrections center or similar institution in the state of Washington.

[4] The Creditors' Committee's diligence focused on Washington State Penitentiary because that is where Mr. Olson, Mr. Olsen, and Mr. Colbert are currently incarcerated. Mr. Olson, Mr. Olsen, and Mr. Colbert have not provided information on any other facility in which they may have been incarcerated during the bar date period that the Creditor's Committee could verify.

*incarcerations in the Washington State Penitentiary* to file a proof of claim. Moreover, although each of Mr. Dahman, Mr. Freeman, and Mr. Olsen were incarcerated for a portion of the bar date period, either starting May 20, 2020 (*see* Dahman Stmt. at 2; Freeman Stmt. at 2) or July 1, 2020, by those times, all of the Debtors' television and radio commercial had aired, all of the Debtors' billboards had been posted for at least a month, and press releases, earned media outreach, Google and Bing keyword search terms, online display advertisements, social media advertisements, and certain print advertisements had been operational for at least three months. (*See* Finegan Decl. ¶¶ 7-12). With respect to Mr. Sprayberry, although he asserts that he is currently incarcerated, he does not allege that he was incarcerated during the time leading up to the bar date. (*See* Sprayberry Mot. at 1.) For these reasons, the Movants' general references to the global pandemic and delays in the USPS fall well short of providing a reason for the delay in filing claims during the months prior to their incarcerations. Beyond their later-in-time incarcerations and the otherwise universally-applicable circumstances caused by the global pandemic, the Movants provide no basis why they could not file a proof of claim before the bar date—like the over 120,000 personal injury claimants who were able to do so (*see* Pullo Decl. ¶ 8 (Aug. 2, 2021), Dkt. No. 3372)—until between fourteen and twenty-one months after the bar date. This defect alone is sufficient to deny the Motions. *In re DPH Holdings*, 434 B.R. at 83.

6. While neither the Debtors nor the Creditors' Committee have any reason to believe that the Movants have not made their late claim requests in good faith,[5] both of the remaining *Pioneer* factors also weigh against the Movants. *First*, allowing the Movants' claims only would encourage other latecomers wishing to assert claims against the Debtors related to

---

[5] The information provided to the Creditors' Committee by the Washington State Penitentiary appears to contradict the assertions made by Mr. Olson, Mr. Olsen, and Mr. Colbert in their Motions regarding the timing of their incarcerations.

7

their opioid use to file claims based on similarly deficient allegations in order to take part in distributions from the Debtors' estates, to the prejudice and detriment of both the Debtors and, more importantly, their creditors. *See, e.g.*, *In re Enron,* 419 F.3d at 132 (finding that bankruptcy court properly considered "the opening of the 'floodgates' to similar claims" and "the number of *potential* claimants who might have been prompted to file late claims in the wake of a ruling in [the movant]'s favor" in denying late claim motion); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *In re Nutri\*Bevco, Inc.*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990) ("Bar dates protect not only the debtor's interests, but creditors' interests as well [because they] establish[] a date by which the plan proponent can determine which liabilities will be asserted against the estate."); *see also* Jan. 24, 2020 Omnibus Hr'g Tr. 64: 8-12 ("[T]he rationale[] here for having a bar date . . . is perhaps more important in this case than some other cases" because it is imperative to know "who individuals are who say they have a material claim."); Apr. 27, 2022 Omnibus Hr'g Tr. 31:23-32:5 ("[O]bviously bar dates in bankruptcy cases . . . are really important because [they] enable[] people to know what the universe of claimants is, and [they] help[] them to negotiate a plan that allocates value . . . and set[] the playing field on the claims side as to what people can rely on.").

7. *Second*, the delay is substantial and could adversely impact these proceedings. Indeed, the Movants seek to file proofs of claim between fourteen and twenty-one months after the bar date. The Debtors' plan was negotiated, developed, solicited, voted on, and approved by the Debtors' creditors and this Court with the understanding of potential recoveries based on the number of timely filed personal injury claims. Moreover, as the Court noted at the April

8

omnibus hearing, "[t]he case is at a really important sort of dividing point depending on how the Circuit Court rules on the plan that's in place." (Apr. 27, 2022 Omnibus Hr'g Tr. 36:21-23, 37:9-15.) Allowing the Movants' claims as timely without a justifiable reason as to why they could not comply with the filing deadline—with the potential for opening the floodgates to a substantial number of additional similarly-situated personal injury claims—could result in attendant costs and delay to the final administration of these cases, and dilute the potential recoveries of those personal injury claimants who filed timely claims. *In re Enron*, 419 F.3d at 128 ("[C]ourts generally consider the degree to which . . . the delay may disrupt the judicial administration of the case.") (citation and quotations omitted).

8. Notwithstanding the above, however, the Debtors and the Creditors' Committee only obtained information from the Washington State Penitentiary. To the extent that any Movant wishes to provide information of incarceration in another state during the relevant time period, the Movant should be permitted to re-bring an appropriate motion and the Debtors, the Creditors' Committee, and the PI Group will review it at that time.

9. Accordingly, for the reasons set forth above, the Debtors and Creditors' Committee respectfully request that the Court deny the Motions.

*[Remainder of page intentionally left blank]*

Dated: May 11, 2022
New York, New York

By: /s/ *Arik Preis*
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Arik Preis
Mitchell Hurley
Sara L. Brauner

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.

By: /s/ *James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors and Debtors in Possession*