**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649** |
| **Debtors.**[1] | **(Jointly Administered)** |

**COVERSHEET TO THIRD INTERIM FEE APPLICATION OF
GRANT THORNTON LLP FOR ALLOWANCE OF: (I) COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED FOR RETENTION AS
CONSULTANTS TO DEBTORS FOR SERVICES RELATED TO THE PLAN
FOR THE PERIOD FEBRUARY 1, 2022 TO APRIL 30, 2022; AND
(II) PAYMENTS FOR SERVICES PERFORMED IN THE ORDINARY
COURSE OF DEBTORS' BUSINESS THROUGH APRIL 30, 2022**

In accordance with Rule 2016-1 of the Local Rules of Bankruptcy Procedure, incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases* [General Order M-447], among other guidelines (the "**Local Guidelines**") and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Grant Thornton LLP ("**Grant Thornton**"), as tax and valuation consultants for Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submits this summary (this "**Summary**") of: (i) fees and expenses sought as actual and necessary in the fee

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

application to which this Summary is attached (the "**Application**") for certain tax and valuation services that Grant Thornton provided to the Debtors relating specifically to the Debtors' plan of reorganization (as described in further detail in the Application, the "**Plan Services**") for the period of February 1, 2022 through April 30, 2022 (the "**Fee Period**"); and (ii) payments made to Grant Thornton on account of other tax related services provided to the Debtors by Grant Thornton in the ordinary course of the Debtors' business (as described in further detail in the Application, the "**OCB Tax Services**") that accrued during the Fee Period.

### *General Information*

| | |
|---|---|
| **Name of Applicant:** | Grant Thornton |
| **Authorized to Provide Professional Services to:** | Debtors |
| **Dates of Orders Approving Retention for Plan Services:** | April 28, 2021 (*nunc pro tunc* to January 20, 2021) and September 28, 2021 (for supplemental services provided effective September 1, 2021) |

### *Summary of Fees and Expenses Requested for the Fee Period for Plan Services Provided by Grant Thornton per Retention Orders*

| | |
|---|---|
| **Time Period Covered for Plan Services for this Application:** | February 1, 2022 through April 30, 2022 |
| **Total Compensation Requested for Plan Related Services During Fee Period:** | $121,041.00 |
| **Total Expenses Requested During Fee Period:** | $28,692.50 |
| **Total Compensation and Expenses Requested During Fee Period:** | $149,733.50 |
| **Total Compensation and Expenses During Fee Period Previously Paid or Waiting Payment Through Prior Monthly Fee Statements ("MFS") (80% of Fees/100% Expenses):** | $125,525.30 |
| **20% Holdback That Remains to be Paid:** | $24,208.20 |

**Summary of Other Fees and Expenses Paid to Grant Thornton During the Fee Period for OCB Tax Services that Grant Thornton Provided to the Debtors in the Ordinary Course Business**

| | |
|---|---|
| **Time Period Covered for OCB Tax Services for this Application:** | February 1, 2022 through April 30, 2022 |
| **Total Compensation Related to OCB Tax Services for this Application:** | $218,175.10 |

**Summary of Past Requests for Compensation and Prior Payments for Prior Fee Period(s)**

| | |
|---|---|
| **Total Compensation Approved to Date for Plan Services [ECF No. 4237, "First Interim Fee Application Order" and ECF No. 4716, "Second Interim Fee Application Order"]:** | $770,868.30 |
| **Total Expenses Approved to Date by First Interim Fee Application Order and Second Interim Fee Application Order:** | $63,754.84 |
| **Total Compensation Approved to Date for OCB Tax Services by First Interim Fee Application Order and Second Interim Fee Application Order:** | $315,430.47 |
| **Total Allowed Compensation Paid to Date for Plan Services, Expenses and OCB Tax Services:[2]** | $1,150,053.61 |

---

[2] Grant Thornton has not yet received payment of the holdback amounts authorized in the Second Interim Fee Application Order, although such payment is expected to be made prior to the hearing on this Application.

| | |
|---|---|
| ***Summary of Rates and Other Related Information for the Fee Period*** | |

| | |
|---|---|
| **Blended Rate in This Application for All Timekeepers:** | $441.11 |
| **Number of Professionals Included in This Application:** | 17 |
| **Difference Between Fees Budgeted and Compensation Sought for This Fee Period:** | N/A |
| **Number of Professionals Billing Fewer Than 15 Hours During This Fee Period:[3]** | 11 for this Fee Period, but only 5 of which have billed less than 15 hours during the entire project |
| **Increase in Rates Since Last Interim Fee Application:** | None |

This is a(n): _____ monthly   _x_ interim   _____ final application

---

[3] *See* discussion *infra* at ¶ 20 regarding Grant Thornton's use of specialized professionals to address discrete issues for Plan Services rendered to the Debtors in order to minimize fees incurred. Moreover, when combined with hours spent over the entire project, Grant Thornton expects that the number of professionals billing less than 15 hours will be significantly less, which, as noted above, drops the total from 11 to only 5 here.

**Summary of Monthly Fee Statements for this Fee Period (2/1/22-4/30/22)**

| Period Covered | Monthly Fee Application Totals | | Total Monthly Amounts Requested | | Total Paid or to be Paid by 6/15/2022[4] | 20% Holdback Remaining To Be Paid |
|---|---|---|---|---|---|---|
| | Fees (100%) | Expenses (100%) | Fees (80%) | Expenses (100%) | | |
| 2/1/22 to 2/28/22 [ECF No. 4623] ("6th MFS") | $72,401.50 | $9,295.00 | $57,921.20 | $9,295.00 | $67,216.20 | $14,480.30 |
| 3/1/22 to 3/31/22 [ECF No. 4743] ("7th MFS") | $46,914.50 | $15,355.00 | $37,531.60 | $15,355.00 | $52,886.60 | $9,382.90 |
| 4/1/22 to 4/30/22 [ECF No. 4773] ("8th MFS") | $1,725.00 | $4,042.50 | $1,380.00 | $4,042.50 | $5,422.50 | $345.00 |
| **TOTALS** | **$121,041.00** | **$28,692.50** | **$96,832.80** | **$28,692.50** | **$125,525.30** | **$24,208.20** |

**Summary of Payments Made for OCB Tax Services for this Fee Period**

| Applicable MFS | Amounts in MFS | Total Paid or To Be Paid Before 6/15/2022 |
|---|---|---|
| 6th MFS | $105,181.20 | $105,181.20 |
| 7th MFS | $49,135.00 | $49,135.00 |
| 8th MFS | $63,858.90 | $63,858.90 |
| **TOTAL** | | **$218,175.10** |

---

[4] Grant Thornton's records do not show any receipt of payment on account of the 6th MFS, which was filed and served on April 1, 2021 and no objections were received.  Moreover, Grant Thornton filed its 7th MFS (for March services) on May 6, 2022 and its 8th MFS (for April services) on May 12, 2022.  The deadlines to object to the 7th MFS is May 20, 2022, and to the 8th MFS is May 26, 2022.  To the extent that there are no objections to the requested payments, Grant Thornton expects that the payments set forth therein will be made prior to the hearing on this Application.  To the extent that Grant Thornton does not receive any payments on account of the 6th MFS, 7th MFS or 8th MFS prior to the hearing on this Application, Grant Thornton reserves all rights to modify the anticipated payments disclosed herein and to request that such payments be made as part of this Application.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649** |
| **Debtors.** | **(Jointly Administered)** |

**THIRD INTERIM FEE APPLICATION OF GRANT THORNTON LLP FOR:
(I) ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES INCURRED FOR RETENTION AS CONSULTANTS TO
DEBTORS FOR SERVICES RELATED TO THE PLAN FOR THE PERIOD
FEBRUARY 1, 2022 TO APRIL 30, 2022; AND (II) DISCLOSURE OF PAYMENTS FOR
SERVICES PERFORMED IN THE ORDINARY COURSE OF DEBTORS'
BUSINESS THROUGH APRIL 30, 2022**

Pursuant to sections 327, 330 and 331 of chapter 11 of title 11 of the United States Code,
Rule 2016 of the Federal Rules of Bankruptcy Procedure, Rule 2016-1 of the Local Bankruptcy
Rules for the United States Bankruptcy Court for the Southern District of New York, the *Order
Authorizing the Retention and Employment of Grant Thornton LLP as Tax Restructuring
Consultants for the Debtors Nunc Pro Tunc to January 20, 2021* [ECF No. 2760] (the "**Initial
Retention Order**"), the *Order Authorizing the Supplemental Retention and Employment of Grant
Thornton LLP by the Debtors for Tax Analysis and Valuation Services Effective September 1, 2021*
[ECF No. 3831] (the "**Supplemental Retention Order**"),[5] and the Interim Compensation Order,
Grant Thornton submits this *Third Interim Fee Application of Grant Thornton LLP for Allowance
of: (I) Compensation and Reimbursement of Expenses Incurred for Retention as Consultants to
Debtors for Services Related to the Plan for the Period February 1, 2022 through April 30, 2022;
and (II) Payments for Services Performed in the Ordinary Course of Debtors' Business through
April 30, 2022* (this "**Application**").

---

[5] Copies of the Initial Retention Order and the Supplemental Retention Order are attached hereto as **Exhibit
B**.

By this Application, Grant Thornton seeks approval and allowance of its compensation and reimbursement of expenses for Plan Services rendered to the Debtors by Grant Thornton during the Fee Period in the total amount of $149,733.50, comprised of: (i) reasonable compensation in the amount of $121,041.00 for actual, necessary Plan Services that Grant Thornton incurred during the Fee Period; and (ii) reimbursement in the amount of $28,692.50 for actual, reasonable and necessary expenses incurred by Grant Thornton during the Fee Period.  Grant Thornton further seeks an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates will be $24,208.20.

By this Application, Grant Thornton also seeks approval and allowance of compensation and expenses paid to Grant Thornton for tax related services provided to the Debtors in the ordinary course of the Debtors' business which, for the Fee Period, totals $218,175.10.  Because of Grant Thornton's retention in these bankruptcy cases by order entered April 28, 2021, out of an abundance of caution and for purposes of full disclosure, Grant Thornton is including in this Application (and has included in its 6th MFS, 7th MFS and 8th MFS) the amounts accrued and paid to Grant Thornton in the ordinary course of business relating to the OCB Tax Services from February 1, 2022 through April 30, 2022.

## JURISDICTION

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.    The Chapter 11 Cases

3.      On September 15, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 18, 2019, the Court entered an order [ECF No. 59] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.  On September 27, 2019, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**UCC**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 131].

4.      A description of the Debtors' business, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to facilitate effective administration of these chapter 11 cases are set forth in the Debtors' Informational Brief [ECF No.17].

5.      On November 21, 2019, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

### B.    The Debtors' Retention of Grant Thornton

#### 1.    *OCB Tax Services Provided by Grant Thornton in the Ordinary Course of the Debtors' Business*

6.      Prior to September 15, 2019 (the "**Petition Date**"), the Debtors engaged Grant Thornton to provide tax-related services pursuant to the terms and conditions of that certain master agreement, dated June 1, 2018 (the "**MSA**"), and other related statements of work executed in connection therewith.

7.      As previously disclosed in Grant Thornton's retention applications [ECF Nos. 2636 & 3761] and previous monthly fee statements [ECF Nos. 3738, 4019, 4345, 4416, 4623, 4743 & 4773] , the Debtors retained Grant Thornton after the Petition Date to continue to provide certain tax-related services to assist the Debtors in the ordinary course of their business operations (the "**OCB Tax Services**"), which work consisted of the following services:

a.  <u>Sales and Use Tax Compliance Services</u>: On August 11, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Sales and Use Tax Return Preparation Services*, pursuant to which Grant Thornton was retained to assist the Debtors with the generation of sales, use and other transactional tax returns by providing tax return compliance services. That August 11, 2020 statement of work was subsequently replaced and superseded by that certain *Statement of Work for Sales and Use Tax Return Preparation Services*, dated March 2, 2021.

b.  <u>2020 and 2021 Tax Preparation Services</u>:  On December 7, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Tax Compliance Services*, pursuant to which Grant Thornton was retained to prepare the Debtors' federal and state tax returns, including extension calculations and estimated tax payments, for the 2020 taxable year.  On January 20, 2022, the Debtors and Grant Thornton entered into a new *Statement of Work for Tax Compliance Services*, pursuant to which Grant Thornton was retained to prepare the Debtors' federal and state tax returns, including extension calculations and estimated tax payments, for the 2021 taxable year.  On February 17, 2022, out of an abundance of caution and for purposes of full

disclosure, Grant Thornton filed with the Court the "*Second Supplemental Declaration of Raymond Werth Disclosing Debtors' Retention of Grant Thornton LLP in the Ordinary Course of Business to Provide Continued Tax Compliance Services for the 2021 Tax Year*" [ECF No. 4365].

    c.   <u>Global Mobility Services</u>:  On June 18, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Global Mobility Services*, pursuant to which Grant Thornton was retained to provide tax compliance and consulting services for disclosures, review and execution related to United States and United Kingdom tax returns for the years 2015 through 2019.  Such services included, among other things: (i) discovery of over-reporting of income; (ii) consultation on the approach to amendments; (iii) preparation of adjusted compensation figures for necessary years; (iv) preparation of tax equalization settlements for necessary years; (v) discussions on processes and filings with the Debtors and David Lundie; and (vi) assistance with responses to IRS and HMRC notices.  On April 15, 2021, the Debtors and Grant Thornton entered into that certain *Statement of Work for GMS Compliance Services*, pursuant to which Grant Thornton's engagement to provide Global Mobility Services was extended to the 2020 and 2021 tax years.

8.    Because the OCB Tax Services were being provided in the ordinary course of the Debtors' business and were unrelated to the administration of the bankruptcy cases, Grant Thornton understood that it was not necessary for it to be retained in these bankruptcy cases and that payment on account of such OCB Tax Services would be paid consistent with past practices and in the ordinary course of the Debtors' ongoing business operations.  Thus, prior to approval

of Grant Thornton's retention with respect to the Plan Services (as further described below), the OCB Tax Services, including the billing and payment process, were not subject to the Interim Compensation Order or other fee procedures applicable to professionals retained in these bankruptcy cases.

## 2.    *Plan Services For Which Grant Thornton Was Retained*

9.    In January 2021, the Debtors requested that Grant Thornton provide additional tax structuring services that directly related to the development of the Debtors' chapter 11 plan of reorganization in these bankruptcy cases (the "**Plan**").[6] As a result of this requested expansion in the scope of work being provided, on or about January 20, 2021, Grant Thornton and the Debtors entered into that certain *Statement of Work for Tax Structuring Services* (the "**Tax Structuring Plan-Related SOW**").

10.    After Grant Thornton conducted an extensive conflict check to support its retention application, on April 13, 2021, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Grant Thornton LLP as Tax Structuring Consultants to the Debtors Nunc Pro Tunc to January 20, 2021* [ECF No. 2636], and the Court entered the Initial Retention Order on April 28, 2021.

11.    In August 2021, the Debtors requested that Grant Thornton further expand the scope of its retention and provide additional services related to their Plan confirmation efforts. Specifically, the Debtors and Grant Thornton entered into the *Statement of Work for Advisory*

---

[6] These tax structuring services included: (a) assisting the Debtors' management in analyzing the income tax consequences to the Debtors with respect to transactions between the Debtors and the new entity ("**Newco**") anticipated to be created in the bankruptcy reorganization; (b) consulting with Debtors and its legal counsel regarding the federal and state income tax implications of transactions required by the Court (as proposed by the Debtors' legal counsel) effectuating the bankruptcy reorganization; (c) assisting the Debtors' management in determining the federal income tax basis in the assets of the Newco and its affiliates immediately following the bankruptcy reorganization; and (d) assisting in modeling future U.S. federal and state income tax cash tax liabilities for Newco following emergence from bankruptcy.

*Services*, dated August 25, 2021 (the "**Valuation Services Plan-Related SOW**"), pursuant to which Grant Thornton was retained, subject to Court approval, to provide valuation advisory service to the Debtors relating to the Plan and the formation of the Newco as provided therein. The Debtors and Grant Thornton also entered into the *Statement of Work for Employment Tax Services & State Corporate Income/Franchise Tax Nexus Analysis Services*, dated August 26, 2021 (the "**Tax Analysis Plan-Related SOW**"), pursuant to which Grant Thornton was retained, subject to Court approval, to provide tax analysis for certain employment and other tax issues relating to the Plan and formation of the Newco as provided therein.

12.     On September 10, 2021, the Debtors filed the *Application of Debtors for Authority to Supplement Retention and Employment of Grant Thornton LLP for Tax Analysis and Valuation Services Effective September 1, 2021* [ECF No. 3761], and the Court entered the Supplemental Retention Order on September 28, 2021.

13.     Pursuant to the Initial Retention Order and the Supplemental Retention Order, compensation and reimbursement for the services provided under the Tax Structuring Plan-Related SOW, the Valuation Services Plan-Related SOW and the Tax Analysis Plan-Related SOW (collectively, the "**Plan Services**") are subject to, and must be in compliance with, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court for allowance of monthly, interim and final fee applications.

## COMPLIANCE WITH FEE GUIDELINES

14.     All Plan Services during the Fee Period for which compensation is requested by Grant Thornton were performed for or on behalf of the Debtors.  Additionally, Grant Thornton has not received any payment or promises of payment from any source other than the Debtors for

services rendered or to be rendered in any capacity whatsoever in connection with matters covered by this Fee Application.

15.    These professional services were rendered by Grant Thornton staff.

16.    To the extent that billable time or disbursement charges for services rendered or expenses incurred relate to the Fee Period, but were not processed prior to the preparation of this Fee Application, Grant Thornton reserves the right to request  compensation for such services and reimbursement of such expenses in a future fee application.

17.    A certification confirming Grant Thornton's compliance with the Fee Guidelines is annexed hereto as **Exhibit A**.

## SUMMARY OF REQUESTED COMPENSATION

18.    During the Fee Period, Grant Thornton's professionals expended a total of **274.4 hours** in connection with providing necessary Plan Services.  Grant Thornton has been able to efficiently provide services by utilizing the expertise of professionals to effectively advise the Debtors regarding discrete issues and ensuring that the level of seniority is commensurate with the assignment.

19.     Grant Thornton has been retained to provide Plan Services to the Debtors that consist of three (3) separate projects for which Grant Thornton charges, all or in part, based on hourly rates: (i) Tax Structuring Services, (ii) Employee Tax Services, and (iii) Valuation Services. Each of these discrete projects requires distinct skills and experience, and thus, requires separate teams.

20.    Moreover, Grant Thornton is able to minimize the amount in fees it incurs by using highly specialized professionals knowledgeable in distinct areas of complex tax issues to address specific issues as they arise.  Accordingly, during the course of providing Tax Structuring Services,

Grant Thornton was requested to address certain specific matters related to Puerto Rico taxes, state income taxes, sales and use taxes, employment taxes, timing of certain deductions, and certain other specialty matters. Each of these matters required a specialty tax professional to help address. Grant Thornton responded to each of these requests in an efficient manner and typically expended less than 15 hours in addressing each specific request. Moreover, Grant Thornton anticipates that certain individuals providing services below 15 hours during the Fee Period will incur more than 15 hours over the total project.

21.     Grant Thornton, in connection with Plan Services rendered on behalf of the Debtors, respectfully requests allowance of reasonable compensation of such services in the total amount of $121,041.00 and reimbursement of actual and necessary expenses incurred in the amount of $28,692.50, for an aggregate total of $149,733.50 for the Fee Period.

22.     Because the Debtors have, or are expected to have, paid Grant Thornton $125,525.30 of the requested allowed amount pursuant to the Interim Compensation Order, Grant Thornton also seeks an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates will be $24,208.20.

23.     Annexed hereto as **<u>Exhibit C</u>** is a list of Grant Thornton professionals and paraprofessionals, their position with the firm, the hourly rate charged for their services, the number of hours worked on this matter, and other pertinent information. **<u>Exhibit D</u>** annexed hereto is a list of the various project billing categories and the total fees and total hours expended in each project billing category.

24.     **Exhibit E** attached hereto are the detailed records of the Plan Services provided by Grant Thornton for this Fee Period, organized by categories.  These detailed time records also were previously appended to Grant Thornton's 6th MFS, 7th MFS and 8th MFS.

25.     Grant Thornton is engaged in ongoing discussions with the Debtors regarding budgeting and staffing issues. Annexed hereto as **Exhibit F** is Grant Thornton's staffing plan in connection with services rendered to the Debtors.

## SUMMARY OF SERVICES RENDERED

26.     During the Fee Period, Grant Thornton provided extensive and critical professional advice and other services, involving complex, novel issues involved in resolving the disparate interests of the diverse stakeholder groups in these chapter 11 cases.  The following is a summary of the significant services provided to the Debtors in each of the project billing categories.  The following summary of services rendered during the Fee Period is not intended to be a detailed description of the work performed.  Rather, it merely highlights certain billing project categories in which services were rendered by Grant Thornton, as well as identifies some of the issues Grant Thornton was required to address. Detailed descriptions of the day-to-day services provided by Grant Thornton and the time expended performing such services in each project billing category are attached hereto as **Exhibit E**.

| Categories for Tax Structuring Services: | Total Hours | Total Fees | Description |
|---|---|---|---|
| Exit Structure Analysis | 2.0 | $1,530.00 | This category included activities associated with assessing income tax consequences of the potential plan structure, including liquidation of potential entities, maintaining employer identification numbers, etc. |

| Category for Valuation Services: | | | |
|---|---|---|---|
| Fresh Start | 206.5 | $86,786.00 | This category included activities associated with valuation for fresh start accounting for financial reporting purposes. |
| Tax | 45.4 | $19,236.00 | This category included activities associated with modeling and valuation of legal entities for tax purposes. |
| **Categories for Employee Tax Services** | | | |
| Payroll Tax Support (Hourly Fees) | 20.5 | $13,489.00 | This category included activities associated with preparation of state and local payroll tax registration, weekly calls with the Purdue payroll team, update and closure forms, coordination with Ceridian, etc. |
| **TOTAL** | **274.4** | **$121,041.00** | |

27.    Grant Thornton respectfully submits that the Plan Services that it has rendered on behalf of the Debtors during the Fee Period were necessary and appropriate and have directly contributed to the effective administration of these cases, including the successful confirmation of the Plan.

## ACTUAL AND NECESSARY EXPENSES

28.    As set forth in **Exhibit G** hereto, Grant Thornton has incurred or disbursed $28,692.50 in expenses in providing professional services to the Debtors during the Fee Period. These expense amounts are intended to cover Grant Thornton's direct expenses which are not incorporated into the hourly billing rates.  Only clients for whom the services are actually used are separately charged for such services.

29.    Grant Thornton has made every effort to minimize its expenses in the chapter 11 cases. The actual expenses incurred in providing professional services to the Debtors were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors.

30.     In connection with Grant Thornton's retention in these bankruptcy cases, Grant Thornton utilized its own outside bankruptcy counsel to assist Grant Thornton with its retention and fee approval procedures.  Pursuant to the Initial Retention Order:

> "Grant Thornton's reimbursable expenses may include the reasonable and necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges of Grant Thornton's external legal counsel (without the need for such legal counsel to be retained as a professional in the chapter 11 cases); provided, that, if Grant Thornton seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Grant Thornton's own applications, both interim and final, and these invoices and time records shall be subject to the approval of the *[sic]* Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code."

Initial Retention Order, ¶ 4.  In accordance with the Initial Retention Order, **Exhibit G** also includes the invoices and supporting time records for Grant Thornton's outside legal counsel that constitute the reasonable and necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges incurred by Grant Thornton in connection with utilizing such external legal counsel.

## GRANT THORNTON'S REQUESTED COMPENSATION SHOULD BE ALLOWED

31.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional compensation for actual necessary services rendered and reimbursement for actual, necessary expenses.  11 U.S.C. § 330(a) (1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and value of such services, taking into account all relevant factors, including-

(a)   the time spent on such services;

(b)   the rates charged for such services;

(c)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(e)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

32.    The foregoing professional services were performed by Grant Thornton in an efficient manner, were necessary and appropriate to the administration of the chapter 11 cases, and were in the best interests of the Debtors, their estates, and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved.  As required by the U.S. Trustee guidelines, annexed hereto as **Exhibit H** is a chart setting forth the comparative rates of the professionals who rendered services in these chapter 11 cases during the Fee Period with a corresponding comparison of the standard rates for Grant Thornton professionals not involved in these chapter 11 cases.

## DISCLOSURE AND ALLOWANCE OF COMPENSATION FOR OCB TAX SERVICES

33.    Attached as **<u>Exhibit I</u>** are invoices for the total amount of reasonable compensation for actual, necessary OCB Tax Services that Grant Thornton incurred covering the Fee Period. Copies of these invoices also were previously attached to the applicable MFS.  In light of Grant Thornton's retention in these bankruptcy cases by order entered April 28, 2021, out of an abundance of caution and for purposes of full disclosure, Grant Thornton is including the amounts paid to Grant Thornton on account of the OCB Tax Services during the Fee Period.

## <u>NOTICE</u>

34.    The Debtors will provide notice of this Application in accordance with the Interim Compensation Order.  Grant Thornton submits that no other or further notice be given.

**WHEREFORE**, Grant Thornton, in connection with services rendered on behalf of the Debtors, respectfully requests: (i) allowance of compensation and reimbursement of expenses for Plan Services rendered to the Debtors by Grant Thornton during the Fee Period in the total amount of $149,733.50, comprised of: (a) reasonable compensation in the amount of $121,041.00 for actual, necessary Plan Services that Grant Thornton incurred during the Fee Period, and (b) reimbursement in the amount of $28,692.50 for actual, reasonable and necessary expenses incurred by Grant Thornton during the Fee Period; (ii) an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates will be $24,208.20; (iii) allowance of compensation and expenses paid to Grant Thornton for tax related services provided to the Debtors in the ordinary course of the Debtors' business which, through April 30, 2022, totals $218,175.10; and (iv) such other and further relief as the Court deems appropriate.

May 13, 2022
New York, NY

                                  **GRANT THORNTON LLP**

Raymond Werth
Partner, Grant Thornton LLP
757 Third Ave., 9th Floor
New York, NY 10017
Telephone:  (212) 599-0100

# EXHIBIT A

## CERTIFICATION OF RAYMOND WERTH

## <u>CERTIFICATION</u>

I, Raymond Werth, hereby certify as follows:

1.      I am a Partner of the firm of Grant Thornton LLP ("**Grant Thornton**").  I am duly authorized to execute this certification on behalf of Grant Thornton.

2.      I submit this certification in support of the *Third Interim Fee Application of Grant Thornton LLP for: (I) Allowance of Compensation and Reimbursement of Expenses Incurred for Retention as Consultants to Debtors for Services Related to the Plan for the Period February 1, 2022 through April 30, 2022; and (II) Disclosure of Payments for Services Performed in the Ordinary Course of Debtors' Business through April 30, 2022* (the "**Application**").  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Application.

3.      I am familiar with the work performed on behalf of the Debtors as set forth in the Application.

4.      I have personally reviewed the information contained in the Application to certify to certain matters addressed in the Interim Compensation Order, Rule 2016-1 of the Local Rules of Bankruptcy Procedure, incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases* [General Order M-447, among other guidelines (the "**Local Guidelines**")], and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**").

5.      To the best of my knowledge, information and belief formed after reasonable inquiry of Grant Thornton's accounting personnel and staff, I believe the contents of the Application to be true and correct in all material respects and that the Application materially complies with the mandatory guidelines set forth in the Fee Guidelines except as otherwise indicated in the Application.

6.      The following is my response, on behalf of Grant Thornton, to the questions identified in the UST Guidelines:

a.  **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms of services pertaining to this engagement that were provided during the application period? If so, please explain.

> **Answer**: Yes.  Grant Thornton agreed to reduce its standard hourly rates for the Plan Services, which discounts ranged from 25% to 55% depending on the services provided.  In addition, Grant Thornton's standard hourly tax rates were increased in August 2021 in the normal course of business, but Grant Thornton did not apply those customary rate increases to professionals working on matters in these cases.

b.  **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

> **Answer**: Grant Thornton has provided the Debtors with the actual amount of fees incurred on a monthly basis and engages in on-going discussions with the Debtors regarding fees and expenses generally, but did not prepare an itemized budget for the Fee Period.

c.  **Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

> **Answer**: No.

d.  **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

> **Answer**: No.

e.  **Question:** Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

> **Answer**: No.

f. **Question**: If the fee application includes any rate increases since retention: (i) did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

> **Answer**: Grant Thornton's standard hourly tax rates were increased in August 2021 in the normal course of business, but Grant Thornton did not apply those customary rate increases to professionals working on matters in these cases. One professional, Mr. Brian Angstadt, was promoted to Managing Director effective September 1, 2021, and as such, the hourly rate charged on and after September 1, 2021 for his time was reflective of this new position, which is the agreed upon, reduced rate for that level for this engagement.

May 13, 2022
New York, NY

**GRANT THORNTON LLP**

Raymond Werth
Partner, Grant Thornton LLP
757 Third Ave., 9th Floor
New York, NY 10017
Telephone: (212) 599-0100

**<u>EXHIBIT B</u>**

**INITIAL RETENTION ORDER AND THE SUPPLEMENTAL RETENTION ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-19-23649 (RDD)** |
| **Debtors.** [1] | **(Jointly Administered)** |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GRANT THORNTON LLP AS TAX RESTRUCTURING CONSULTANTS FOR THE DEBTORS *NUNC PRO TUNC* TO JANUARY 20, 2021

Upon the application, by notice of presentment dated April 13, 2021 (the "**Application**"),[2] of Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order authorizing the Debtors to retain Grant Thornton as consultant to the Debtors with respect to the Grant Thornton Services, effective *nunc pro tunc* to January 20, 2021, all as more fully set forth in the Application; and upon the declaration of Raymond Werth, a tax partner of Grant Thornton, attached to the Application as **Exhibit C**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Application.

(the "**Werth Declaration**") and the declaration of Jon Lowne, attached to the Application as

**Exhibit D** (the "**Lowne Declaration**")**;** and this Court having jurisdiction to consider the

Application and the relief requested therein in accordance with 28 U.S.C. §§ 157)(a)-(b) and

1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and there being due and sufficient notice of the Application and the opportunity

for a hearing thereon; and there being no objections to the requested relief; and no additional ntoce

or a hearing being required; and it appearing that Grant Thornton does not hold or represent and

adverse interest to the Debtors or the estates, that it is disinterested under section 101(14) of the

Bankruptcy Code, and that its retention to perform the Grant Thornton Services is necessary and

in the best interests of the estates; and good and sufficient cause appearing, it is hereby

### ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to retain Grant Thornton as tax restructuring

consultants to the Debtors with respect to the Grant Thornton Services, effective as of January 20,

2021, and Grant Thornton is authorized to perform the Grant Thornton Services described in the

Application and the Engagement Agreement.

3.      Grant Thornton shall file fee applications for allowance of its compensation

and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with

this Court in accordance with 11 U.S.C. §§ 330 and 331, as the case may be, and the applicable

Bankruptcy Rules, Local Rules, and fee and expense guidelines and orders of this Court.

4.      Grant Thornton's reimbursable expenses may include the reasonable an

necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges of Grant

Thornton's external legal counsel (without the need for such legal counsel to be retained as a professional in the chapter 11 cases); provided, that, if Grant Thornton seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Grant Thornton's own applications, both interim and final, and these invoices and time records shall be subject to the approval of the this Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

5.      Grant Thornton shall provide reasonable notice to the Debtors, the U.S. Trustee and any statutory committee appointed in these chapter 11 cases before implementing any increases in the rates set forth in the Application for professionals providing the Grant Thornton Services.

6.      The indemnification provisions in the Grant Thornton Engagement Letter, including the MSA are hereby modified and restated in their entirety as follows:

(a)     All requests by Grant Thornton for payment of indemnity pursuant to the MSA shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure payment of such indemnity conforms to the terms of the MSA and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Grant Thornton be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

(b)    In the event that Grant Thornton seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Grant Thornton for payment of indemnity pursuant to the MSA, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Grant Thornton's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and

3

without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and

7.      The limitation of liability section in paragraph 2 of the Attachment A to the MSA is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

8.      Notwithstanding anything in the Application or the Engagement Agreement to the contrary, if Grant Thornton terminates this engagement by giving written notice to PPLP, Grant Thornton shall remain entitled to any fees accrued but not yet paid prior to such termination, subject to Court approval of (a) such termination and (b) any fees accrued and not yet paid under the Fee Guidelines, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

9.      Before implementing any increases in Grant Thornton's rates, as set forth in the Engagement Agreement, for any individual retained by Grant Thornton and providing services in these cases, Grant Thornton shall file a supplemental declaration with the Court and provide ten business days' notice to the Debtors, the United States Trustee and any official committee. The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase(s). All parties in interest retain all rights to object to any rate increase on all grounds, including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code.

10.     Notwithstanding anything in the Application or the Engagement Agreement to the contrary, during the pendency of these chapter 11 cases, this Court retains exclusive jurisdiction with respect to any matters, claims, rights or disputes arising out of and/or pertaining

to Grant Thornton's engagement and the implementation of this Order until such jurisdiction is relinquished.

11.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these Chapter 11 Cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of the Chapter 11 Cases to cases under chapter 7.

12.     Notice of the Application as provided therein is good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are satisfied by such notice.

13.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Application.

15.     In the event of any inconsistency between the Application, the Engagement Agreement and this Order, the terms of this Order shall govern.

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:    April 28, 2021
          White Plains, New York


                    _/s/Robert D. Drain_____
                    THE HONORABLE ROBERT D. DRAIN
                    UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-19-23649 (RDD)** |
| Debtors. [1] | **(Jointly Administered)** |

## ORDER AUTHORIZING THE SUPPLEMENTAL RETENTION AND EMPLOYMENT OF GRANT THORNTON LLP BY THE DEBTORS FOR TAX ANALYSIS AND VALUATION SERVICES EFFECTIVE SEPTEMBER 1, 2021

Upon the supplemental application, dated September 10, 2021 [ECF No. 3761] (the "**Supplemental Application**"),[2] of Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order authorizing the Debtors to supplement the retention of Grant Thornton as consultant to the Debtors with respect to the Supplemental Services, effective September 1, 2021, all as more fully set forth in the Supplemental Application; and upon the declaration of Raymond Werth, a tax partner of Grant

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Supplemental Application.

Thornton, attached to the Supplemental Application as **Exhibit 2** (the "**First Supplemental Werth Declaration**"), and this Court having jurisdiction to consider the Supplemental Application and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Supplemental Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Supplemental Application having been provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances; and there being no objections to the Supplemental Application; it appearing that no other or further notice or a hearing is required; and the Court having considered the Initial Retention Application and all exhibits attached thereto, the First Supplemental Werth Declaration filed with the Supplemental Application; and the Court having determined Grant Thornton does not hold or represent an adverse interest to the Debtors or their estates, that it is disinterested under 11 U.S.C. § 101(14), and that the relief sought in the Supplemental Application is necessary and in the best interests of the Debtors, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Supplemental Application establish just cause for the relief granted herein;  now, therefore,

#### IT IS HEREBY ORDERED THAT:

1.      The Supplemental Application is granted as set forth herein.

2.      The Debtors are authorized to supplement the retention and employment of Grant Thornton as valuation and tax analysis consultants to the Debtors with respect to the Supplemental Services, effective September 1, 2021, and Grant Thornton is authorized to perform the Supplemental Services described in the Supplemental Application and the Supplemental SOWs.

3.    Grant Thornton shall file fee applications for allowance of its compensation and reimbursement of its expenses with respect to Supplemental Services rendered in these chapter 11 cases with this Court in accordance with 11 U.S.C. §§ 330 and 331, as the case may be, and the applicable Bankruptcy Rules, Local Rules, and fee and expense guidelines and orders of this Court and during these cases shall be compensated and reimbursed for such Services only upon an order of this Court granting a proper application therefor.

4.    Notwithstanding the entry of this Order, the terms and conditions of the Initial Retention Order and all related agreements approved thereunder shall remain in full force and effect and shall apply to the Supplemental Services except as otherwise expressly set forth herein.

5.    The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these chapter 11 cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of the chapter 11 cases to cases under chapter 7.

6.    Notice of the Supplemental Application as provided therein is good and sufficient notice of such Supplemental Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are satisfied by such notice.

7.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8.    The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Supplemental Application.

9.    In the event of any inconsistency between the Supplemental Application or the Supplemental SOWs and this Order, the terms of this Order, including this Order's incorporation of sections 330 and 331 of the Bankruptcy Code, shall govern.

10.     This Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and enforcement of this Order.


Dated:    September 27, 2021
          White Plains, New York


*/s/Robert D. Drain*
_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**SUMMARY OF HOURS BILLED FOR PLAN SERVICES BY PROFESSIONAL**
**(for Hourly Rate Services)**

| Name | Title | Hourly Rate | Total Hours Billed | Total Compensation | Total Combined Hours Billed To Date |
|---|---|---|---|---|---|
| Angstadt, Brian | Managing Director | $765.00 | 2.0 | $1,530.00 | 75.5 |
| Arazi, Albert | Senior Manager | $650.00 | 2.1 | $1,365.00 | 3.7 |
| Arnett, Allen | Managing Director | $720.00 | 4.7 | $3,384.00 | 28.6 |
| Bellovin, Hal | Managing Director | $765.00 | 12.0 | $9,180.00 | 62.45 |
| Caiazzo, Mary | Senior Associate | $460.00 | 2.4 | $1,104.00 | 13.45 |
| Cherkasov, Marc | Associate | $270.00 | 37.8 | $10,206.00 | 83.6 |
| Cho, Sylvia | Principal | $720.00 | 8.1 | $5,832.00 | 57.25 |
| Garg, Ritwik | Associate | $270.00 | 2.4 | $648.00 | 2.4 |
| Gilmore, John | Director | $590.00 | 0.5 | $295.00 | 68.2 |
| Katz, Alex | Manager | $500.00 | 1.0 | $500.00 | 1.0 |
| Klemowits, Keith | Managing Director | $720.00 | 0.5 | $360.00 | 19.9 |
| Koester, Jill | Associate | $270.00 | 22.1 | $5,967.00 | 61.1 |
| Kohnle, Anka | Manager | $500.00 | 26.1 | $13,050.00 | 104.5 |
| Kolbus, Brianna | Senior Associate | $400.00 | 29.3 | $11,720.00 | 166.7 |
| Miller, Alli | Senior Associate | $400.00 | 56.4 | $22,560.00 | 188.9 |
| Sanders, Matthew | Manager | $500.00 | 63.0 | $31,500.00 | 227.15 |
| Sharma, Komal | Senior Associate | $460.00 | 4.0 | $1,840.00 | 4.0 |
| **TOTAL** | | | **274.4** | **$121,041.00** | |

## EXHIBIT D

### SUMMARY OF PLAN SERVICES BY CATEGORY
#### (For Fee Period February 1, 2022 through April 30, 2022)

| Project Category for Tax Structuring Services | Total Hours | Total Fees |
|---|---|---|
| Exit Structure Analysis | 2.0 | $1,530.00 |
| **Total** | **2.0** | **$1,530.00** |

| Project Category for Valuation Services | Total Hours | Total Fees |
|---|---|---|
| Fresh Start | 206.5 | $86,786.00 |
| Tax | 45.4 | $19,236.00 |
| **Total** | **251.9** | **$106,022.00** |

| Project Category for Employee Tax Services | Total Hours | Total Fees |
|---|---|---|
| Payroll Tax Support (Hourly Fees) | 20.5 | $13,489.00 |
| **Total** | **20.5** | **$13,489.00** |

| TOTALS BY PROJECT | Total Hours | Total Fees |
|---|---|---|
| Totals for Tax Structuring Services | 2.0 | $1,530.00 |
| Totals for Valuation Services | 251.9 | $106,022.00 |
| Totals for Employee Tax Services | 20.5 | $13,489.00 |
| **Total** | **274.4** | **$121,041.00** |

**EXHIBIT E**

**DETAILED TIME ENTRIES FOR PLAN SERVICES BY CATEGORY**

*Tax Structuring Services: Exit Structure Analysis*

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | DETAILED DESCRIPTION |
|---|---|---|---|---|---|---|
| Angstadt, Brian | Managing Director | 4/20/2022 | 0.50 | $765.00 | $382.50 | Exit Structure Analysis - External discussion with T Matlock and L Altus (Davis Polk) regarding status and tax matters agreement |
| Angstadt, Brian | Managing Director | 4/27/2022 | 1.50 | $765.00 | $1,147.50 | Exit Structure Analysis - reviewing Selected Tax Matters Agreement |
| **TOTAL** | | | **2.00** | | **$1,530.00** | |

*Valuation Services: Fresh Start*

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Koester, Jillian | Associate | 2/1/2022 | 0.70 | $270.00 | $189.00 | Organized the model and valuation schedules to consolidate all the intangible asset values by asset category. |
| Kolbus, Brianna | Senior Associate | 2/1/2022 | 0.80 | $400.00 | $320.00 | Evaluated the preliminary valuation results for the assembled workforce valuation and key assumptions used in the valuation. |
| Sanders, Matthew | Manager | 2/1/2022 | 0.80 | $500.00 | $400.00 | Prepared the finalized 4th quarter fee application for submission to the court. |
| Sanders, Matthew | Manager | 2/2/2022 | 0.50 | $500.00 | $250.00 | Purdue internal status call to discuss next steps and outstanding items with A. Miller, T. Gilmore, K. Klemowits, M. Cherkasov, B. Kolbus, and A. Kohnle. |
| Kohnle, Ann-Katrin | Manager | 2/2/2022 | 0.50 | $500.00 | $250.00 | Purdue internal status call to discuss next steps and outstanding items with M. Sanders, T. Gilmore, K. Klemowits, M. Cherkasov, A. Miller, and B. Kolbus. |
| Koester, Jillian | Associate | 2/2/2022 | 1.60 | $270.00 | $432.00 | Updated the assembled workforce valuation models to reconcile consolidated values by legal entity. |
| Cherkasov, Marc | Associate | 2/2/2022 | 0.50 | $270.00 | $135.00 | Purdue internal status call to discuss next steps and outstanding items with M. Sanders, K. Klemowits, A. Kohnle, T. Gilmore, A. Miller, and B. Kolbus. |
| Gilmore, John | Director | 2/2/2022 | 0.50 | $590.00 | $295.00 | Purdue internal status call to discuss next steps and outstanding items with M. Sanders, K. Klemowits, A. Kohnle, M. Cherkasov, A. Miller, and B. Kolbus. |
| Klemowits, Keith | Managing Director | 2/2/2022 | 0.50 | $720.00 | $360.00 | Purdue internal status call to discuss next steps and outstanding items with M. Sanders, T. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | Gilmore, A. Kohnle, M. Cherkasov, A. Miller, and B. Kolbus. |
| Kolbus, Brianna | Senior Associate | 2/2/2022 | 0.50 | $400.00 | $200.00 | Purdue internal status call to discuss next steps and outstanding items with M. Sanders, T. Gilmore, K. Klemowits, M. Cherkasov, A. Miller, and A. Kohnle. |
| Miller, Allison | Senior Associate | 2/2/2022 | 0.50 | $400.00 | $200.00 | Purdue internal status call to discuss next steps and outstanding items with M. Sanders, T. Gilmore, K. Klemowits, M. Cherkasov, B. Kolbus, and A. Kohnle. |
| Koester, Jillian | Associate | 2/3/2022 | 0.60 | $270.00 | $162.00 | Organized the assembled workforce valuation schedules to link to appropriate contributory asset charge schedules throughout the intangible asset models. |
| Kolbus, Brianna | Senior Associate | 2/3/2022 | 0.90 | $400.00 | $360.00 | Analyzed certain inputs and assumptions related to the contributory assets charges utilized in the CMP intangible asset models. |
| Kolbus, Brianna | Senior Associate | 2/4/2022 | 0.90 | $400.00 | $360.00 | Refined certain assumptions and inputs related to the contributory asset charges for the PPLP and Rhodes intangible assets. |
| Kolbus, Brianna | Senior Associate | 2/4/2022 | 1.00 | $400.00 | $400.00 | Call to discuss the status of the CMP and inventory valuation models and assess next steps to consolidate the intangibles assets with the overall analysis to prepare client deliverable with M. Sanders and M. Cherkasov. |
| Cherkasov, Marc | Associate | 2/4/2022 | 1.70 | $270.00 | $459.00 | Refined assumptions and inputs related to the  currently marketed products modeling and analysis |
| Cherkasov, Marc | Associate | 2/4/2022 | 1.00 | $270.00 | $270.00 | Call to discuss the status of the CMP and inventory valuation models and assess next steps to consolidate the intangibles assets with the overall analysis to |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | prepare client deliverable with M. Sanders and B. Kolbus. |
| Cherkasov, Marc | Associate | 2/4/2022 | 1.80 | $270.00 | $486.00 | Organized the inventory valuation models by product to link to the corresponding CMP intangible asset valuation models. |
| Sanders, Matthew | Manager | 2/4/2022 | 1.00 | $500.00 | $500.00 | Call to discuss the status of the CMP and inventory valuation models and assess next steps to consolidate the intangibles assets with the overall analysis to prepare client deliverable with B. Kolbus and M. Cherkasov. |
| Cherkasov, Marc | Associate | 2/7/2022 | 1.60 | $270.00 | $432.00 | Updated the CMP intangible assets and inventory models to reflect revised cash allocation assumptions. |
| Cherkasov, Marc | Associate | 2/7/2022 | 1.40 | $270.00 | $378.00 | Evaluated the impact of the revised cash flow allocations for R&D and sales and marketing expenses in the CMP and inventory models. |
| Cherkasov, Marc | Associate | 2/8/2022 | 0.80 | $270.00 | $216.00 | Analyzed the remaining useful life and adjusted certain assumptions for the Currently Marketed Products intangible asset valuations. |
| Cherkasov, Marc | Associate | 2/8/2022 | 1.70 | $270.00 | $459.00 | Assessed cash flow life assigned to the Avrio OTC branded products based on additional information provided by management. |
| Cherkasov, Marc | Associate | 2/8/2022 | 1.80 | $270.00 | $486.00 | Analyzed the inventory valuation models to assess the primary drivers behind the indicated values and step-up. |
| Cherkasov, Marc | Associate | 2/8/2022 | 1.50 | $270.00 | $405.00 | Working session to discuss projected financial data and evaluate preliminary value indications for marketed products intangibles and inputs/assumptions driving value with M. Sanders, A. Miller, J. Koester, and A. Kohnle |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Kohnle, Ann-Katrin | Manager | 2/8/2022 | 0.50 | $500.00 | $250.00 | Bi-Weekly status call with T. Ronan, E. Nowakowski, and M. Sanders. |
| Kohnle, Ann-Katrin | Manager | 2/8/2022 | 1.50 | $500.00 | $750.00 | Working session to discuss projected financial data and evaluate preliminary value indications for marketed products intangibles and inputs/assumptions driving value with M. Sanders, A. Miller, J. Koester, and M. Cherkasov |
| Kolbus, Brianna | Senior Associate | 2/8/2022 | 1.80 | $400.00 | $720.00 | Updated the inventory and banded opioid CMP valuation models based on feedback related to cash flow reconciliation for PPLP. |
| Miller, Allison | Senior Associate | 2/8/2022 | 2.20 | $400.00 | $880.00 | Developed the valuation analysis of Oxycontin supply agreement and Noramco agreement. |
| Miller, Allison | Senior Associate | 2/8/2022 | 1.50 | $400.00 | $600.00 | Working session to discuss projected financial data and evaluate preliminary value indications for marketed products intangibles and inputs/assumptions driving value with M. Sanders, J. Koester, M. Cherkasov, and A. Kohnle. |
| Koester, Jillian | Associate | 2/8/2022 | 1.50 | $270.00 | $405.00 | Working session to discuss projected financial data and evaluate preliminary value indications for marketed products intangibles and inputs/assumptions driving value with M. Sanders, A. Miller, M. Cherkasov, and A. Kohnle. |
| Sanders, Matthew | Manager | 2/8/2022 | 0.50 | $500.00 | $250.00 | Bi-Weekly status call with T. Ronan, E. Nowakowski, and A. Kohnle. |
| Sanders, Matthew | Manager | 2/8/2022 | 1.50 | $500.00 | $750.00 | Working session to discuss projected financial data and evaluate preliminary value indications for marketed products intangibles and inputs/assumptions driving value |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | with A. Miller, J. Koester, M. Cherkasov, and A. Kohnle. |
| Sanders, Matthew | Manager | 2/9/2022 | 2.60 | $500.00 | $1,300.00 | Refined certain assumptions and inputs related to the branded opioid currently marketed products model. |
| Miller, Allison | Senior Associate | 2/9/2022 | 2.80 | $400.00 | $1,120.00 | Evaluated the Currently Marketed Products and IPR&D asset valuation schedules to for quality review and ensured mathematical accuracy. |
| Koester, Jillian | Associate | 2/9/2022 | 2.10 | $270.00 | $567.00 | Created schedules to calculate the tax depreciation expenses related to the fixed assets. |
| Cherkasov, Marc | Associate | 2/9/2022 | 1.40 | $270.00 | $378.00 | Revised certain cash flow assumptions for the Oxycontin CMP intangible asset related to additional expenses attributable to PHI. |
| Kolbus, Brianna | Senior Associate | 2/10/2022 | 2.10 | $400.00 | $840.00 | Organized the inventory and CMP valuation models to ensure formatting and footnotes were updated to accurately reflect the assumptions utilized in the analysis prior to internal review discussion. |
| Miller, Allison | Senior Associate | 2/10/2022 | 2.10 | $400.00 | $840.00 | Created customer relationships valuation schedule for the distributor relationships intangible asset related to Avrio. |
| Kolbus, Brianna | Senior Associate | 2/11/2022 | 1.10 | $400.00 | $440.00 | Working session to evaluate the impact of revised assumptions related to the inventory valuation and ensure assumptions are consistent across all intangible assets with M. Sanders, M. Cherkasov, A. Kohnle, and A. Miller. |
| Kolbus, Brianna | Senior Associate | 2/11/2022 | 0.50 | $400.00 | $200.00 | Internal status call to discuss outstanding items and next steps to provide draft deliverable with M. Sanders, A. Miller, and A. Kohnle. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Cherkasov, Marc | Associate | 2/11/2022 | 1.10 | $270.00 | $297.00 | Working session to evaluate the impact of revised assumptions related to the inventory valuation and ensure assumptions are consistent across all intangible assets with M. Sanders, A. Kohnle, B. Kolbus, and A. Miller. |
| Miller, Allison | Senior Associate | 2/11/2022 | 2.30 | $400.00 | $920.00 | Updated intangible asset valuation schedules based on feedback from internal working session. |
| Miller, Allison | Senior Associate | 2/11/2022 | 1.10 | $400.00 | $440.00 | Working session to evaluate the impact of revised assumptions related to the inventory valuation and ensure assumptions are consistent across all intangible assets with M. Sanders, M. Cherkasov, A. Kohnle, and B. Kolbus. |
| Miller, Allison | Senior Associate | 2/11/2022 | 0.90 | $400.00 | $360.00 | Call with A. Kohnle to assess preliminary results of the valuations for the IPR&D assets as well as royalty agreements. |
| Miller, Allison | Senior Associate | 2/11/2022 | 0.50 | $400.00 | $200.00 | Internal status call to discuss outstanding items and next steps to provide draft deliverable with M. Sanders, B. Kolbus, and A. Kohnle. |
| Kohnle, Ann-Katrin | Manager | 2/11/2022 | 1.10 | $500.00 | $550.00 | Working session to evaluate the impact of revised assumptions related to the inventory valuation and ensure assumptions are consistent across all intangible assets with M. Sanders, M. Cherkasov, B. Kolbus, and A. Miller. |
| Kohnle, Ann-Katrin | Manager | 2/11/2022 | 0.90 | $500.00 | $450.00 | Call with A. Miller to assess preliminary results of the valuations for the IPR&D assets as well as royalty agreements |
| Kohnle, Ann-Katrin | Manager | 2/11/2022 | 0.50 | $500.00 | $250.00 | Internal status call to discuss outstanding items and next steps to provide draft deliverable with |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | M. Sanders, A. Miller, and B. Kolbus. |
| Sanders, Matthew | Manager | 2/11/2022 | 1.10 | $500.00 | $550.00 | Working session to evaluate the impact of revised assumptions related to the inventory valuation and ensure assumptions are consistent across all intangible assets with M. Cherkasov, A. Kohnle, B. Kolbus, and A. Miller. |
| Sanders, Matthew | Manager | 2/11/2022 | 0.50 | $500.00 | $250.00 | Internal status call to discuss outstanding items and next steps to provide draft deliverable with A. Miller, B. Kolbus, and A. Kohnle. |
| Kohnle, Ann-Katrin | Manager | 2/14/2022 | 0.40 | $500.00 | $200.00 | Analyzed the cash flows associated with each of the intangible assets to reconcile with consolidated projections and ensure all cash flows are being captured in the appropriate intangible asset values. |
| Miller, Allison | Senior Associate | 2/14/2022 | 1.70 | $400.00 | $680.00 | Evaluated the Currently Marketed Products valuation schedules to ensure revised assumptions and inputs were updated correctly. |
| Miller, Allison | Senior Associate | 2/14/2022 | 2.80 | $400.00 | $1,120.00 | Created a reconciliation to tie out the sum of the discrete cash flows of the intangible assets with the forecast of the consolidated company. |
| Miller, Allison | Senior Associate | 2/14/2022 | 2.90 | $400.00 | $1,160.00 | Analyzed the reconciliation to tie out the sum of the discrete cash flows of the intangible assets with the forecast of the consolidated company. |
| Miller, Allison | Senior Associate | 2/15/2022 | 2.50 | $400.00 | $1,000.00 | Evaluated discrepancies in the reconciliation to tie out the sum of the discrete cash flows of the intangible assets with the forecast of the consolidated company. |
| Kolbus, Brianna | Senior Associate | 2/15/2022 | 1.20 | $400.00 | $480.00 | Analyzed the cash flows utilized in the branded opioid CMP valuation models to reconcile to |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | the updated PPLP forecast file provided. |
| Miller, Allison | Senior Associate | 2/16/2022 | 2.30 | $400.00 | $920.00 | Evaluated the IPR&D asset valuation schedules for quality review and the ensure mathematical accuracy. |
| Kohnle, Ann-Katrin | Manager | 2/16/2022 | 0.50 | $500.00 | $250.00 | Evaluated discrepancies in the intangible asset cash flow reconciliations to determine source of the discrepancies. |
| Kohnle, Ann-Katrin | Manager | 2/18/2022 | 2.40 | $500.00 | $1,200.00 | Organized comments and feedback based on review of the cash flow reconciliation analysis to determine next steps. |
| Miller, Allison | Senior Associate | 2/18/2022 | 1.80 | $400.00 | $720.00 | Refined certain inputs and assumptions related to the IPR&D intangible asset calculation models based on feedback from internal review. |
| Sanders, Matthew | Manager | 2/18/2022 | 1.80 | $500.00 | $900.00 | Assessed cash flows attributable to individual intangible assets to determine discrepancies in reconciliation to source data provided by the company. |
| Cherkasov, Marc | Associate | 2/21/2022 | 0.50 | $270.00 | $135.00 | Discussion regarding key assumptions and project status with GT team (A. Arnett, M. Sanders, and S. Cho) |
| Koester, Jillian | Associate | 2/21/2022 | 0.90 | $270.00 | $243.00 | Assessed individual intangible asset values to reconcile to consolidated values by asset category within the model. |
| Kohnle, Ann-Katrin | Manager | 2/21/2022 | 2.10 | $500.00 | $1,050.00 | Reviewed the consolidated BEV discounted cash flow analysis and IPR&D intangible asset schedules. |
| Kohnle, Ann-Katrin | Manager | 2/21/2022 | 2.60 | $500.00 | $1,300.00 | Analyzed the Noramco supply agreement to assess appropriate methodology to value the underlying intangible asset. |
| Sanders, Matthew | Manager | 2/21/2022 | 0.90 | $500.00 | $450.00 | Assessed the appropriate remaining economic life assumptions used for the Avrio |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | OTC currently market products intangible assets. |
| Sanders, Matthew | Manager | 2/21/2022 | 1.30 | $500.00 | $650.00 | Evaluated the cash flows allocated to each of the intangible assets to determine discrepancies with the consolidated forecast. |
| Sanders, Matthew | Manager | 2/21/2022 | 1.40 | $500.00 | $700.00 | Populated the January 2022 fee application detailed support file. |
| Sanders, Matthew | Manager | 2/21/2022 | 0.50 | $500.00 | $250.00 | Discussion regarding key assumptions and project status with GT team (A. Arnett, M. Cherkasov, and S. Cho) |
| Sanders, Matthew | Manager | 2/22/2022 | 0.70 | $500.00 | $350.00 | Assessed the allocation of certain corporate items to the individual branded opioid CMP intangible assets. |
| Sanders, Matthew | Manager | 2/22/2022 | 1.30 | $500.00 | $650.00 | Reviewed the time entries and corresponding narratives for the January 2022 fee application support file. |
| Sanders, Matthew | Manager | 2/22/2022 | 0.60 | $500.00 | $300.00 | Analyzed the consolidated PPLP forecast and projections for the branded opioids by product to determine the cause of discrepancies in the reconciliation between the two files. |
| Sanders, Matthew | Manager | 2/22/2022 | 0.50 | $500.00 | $250.00 | Call to discuss the discrepancies between the consolidated PPLP and branded opioid forecast files with E. Nowakowski, and GT (A. Miller and B. Kolbus). |
| Kolbus, Brianna | Senior Associate | 2/22/2022 | 0.50 | $400.00 | $200.00 | Call to discuss the discrepancies between the consolidated PPLP and branded opioid forecast files with E. Nowakowski, and GT (M. Sanders and A. Miller). |
| Miller, Allison | Senior Associate | 2/22/2022 | 0.50 | $400.00 | $200.00 | Call to discuss the discrepancies between the consolidated PPLP and branded opioid forecast files with E. Nowakowski, and GT (M. Sanders and B. Kolbus). |
| Kolbus, Brianna | Senior Associate | 2/23/2022 | 0.50 | $400.00 | $200.00 | Call to assess preliminary value indications for the CMP intangibles and discuss next steps |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | with M. Sanders, and M. Cherkasov. |
| Cherkasov, Marc | Associate | 2/23/2022 | 0.50 | $270.00 | $135.00 | Call to assess preliminary value indications for the CMP intangibles and discuss next steps with M. Sanders, and B. Kolbus. |
| Cherkasov, Marc | Associate | 2/23/2022 | 1.70 | $270.00 | $459.00 | Created reconciliation for cash flow allocations to individual CMP intangible assets and consolidated legal entity projections. |
| Cherkasov, Marc | Associate | 2/23/2022 | 1.30 | $270.00 | $351.00 | Updated the inventory valuation models based on internal discussions regarding certain assumptions and inputs. |
| Sanders, Matthew | Manager | 2/23/2022 | 1.80 | $500.00 | $900.00 | Prepared January 2022 fee application support file and corresponding invoice. |
| Sanders, Matthew | Manager | 2/23/2022 | 0.90 | $500.00 | $450.00 | Evaluated the appropriateness of the selected remaining useful life used in the valuation of the Avrio CMP intangible assets based on feedback from the management. |
| Sanders, Matthew | Manager | 2/23/2022 | 0.50 | $500.00 | $250.00 | Call to assess preliminary value indications for the CMP intangibles and discuss next steps with B. Kolbus, and M. Cherkasov. |
| Koester, Jillian | Associate | 2/24/2022 | 2.30 | $270.00 | $621.00 | Evaluated all schedules to be included in the draft deliverable to check for any errors or inconsistencies. |
| Sanders, Matthew | Manager | 2/24/2022 | 0.60 | $500.00 | $300.00 | Assessed the cash flow life applied to the Avrio OTC branded products based on additional information provided by management. |
| Sanders, Matthew | Manager | 2/24/2022 | 1.10 | $500.00 | $550.00 | Analyzed the Currently Marketed Products and inventory valuation models to assess the primary drivers behind the indicated values. |
| Sanders, Matthew | Manager | 2/24/2022 | 0.50 | $500.00 | $250.00 | Call to discuss status of draft deliverable and next steps prior to |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | submitting for internal review with M. Cherkasov and B. Kolbus. |
| Cherkasov, Marc | Associate | 2/24/2022 | 1.70 | $270.00 | $459.00 | Updated the branded opioid Currently Marketed Products models based on revised projected financial data provided by the client. |
| Cherkasov, Marc | Associate | 2/24/2022 | 0.50 | $270.00 | $135.00 | Call to discuss status of draft deliverable and next steps prior to submitting for internal review with M. Sanders and B. Kolbus. |
| Kolbus, Brianna | Senior Associate | 2/24/2022 | 0.20 | $400.00 | $80.00 | Updated the inventory and CMP valuation models based on comments from internal review discussions with the team. |
| Kolbus, Brianna | Senior Associate | 2/24/2022 | 2.90 | $400.00 | $1,160.00 | Organized the preliminary draft schedules for all the CMP intangible assets to be consistent with consolidated deliverable. |
| Kolbus, Brianna | Senior Associate | 2/24/2022 | 2.90 | $400.00 | $1,160.00 | Refined the cash flow life assumptions and expense allocations for the branded opioid CMP valuation. |
| Kolbus, Brianna | Senior Associate | 2/24/2022 | 0.50 | $400.00 | $200.00 | Call to discuss status of draft deliverable and next steps prior to submitting for internal review with M. Sanders and M. Cherkasov. |
| Kolbus, Brianna | Senior Associate | 2/25/2022 | 1.50 | $400.00 | $600.00 | Organized all of the footnotes, schedule references and formatting for the intangible asset valuations to be consistent with the consolidated BEV schedules. |
| Kolbus, Brianna | Senior Associate | 2/25/2022 | 1.50 | $400.00 | $600.00 | Refined all of the footnotes, schedule references and formatting for the intangible asset valuations to be consistent across all intangible asset schedules. |
| Cherkasov, Marc | Associate | 2/25/2022 | 2.60 | $270.00 | $702.00 | Analyzed the consolidated intangible asset values reconciliation to ensure updated CMP values and inputs reconcile with overall analysis. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Cherkasov, Marc | Associate | 2/25/2022 | 1.10 | $270.00 | $297.00 | Discussion regarding intangible asset values with GT team (A. Arnett, M. Sanders, A. Kohnle, A. Miller, S. Cho and J. Koester) |
| Koester, Jillian | Associate | 2/25/2022 | 1.10 | $270.00 | $297.00 | Discussion regarding intangible asset values with GT team (S. Cho, M. Cherkasov, M. Sanders, A. Kohnle, A. Miller, and A. Arnett) |
| Cho, Sylvia | Principal | 2/25/2022 | 1.10 | $720.00 | $792.00 | Discussion regarding intangible asset values with GT team (A. Arnett, M. Sanders, A. Kohnle, A. Miller, M. Cherkasov and J. Koester) |
| Kohnle, Ann-Katrin | Manager | 2/25/2022 | 1.10 | $500.00 | $550.00 | Discussion regarding intangible asset values with GT team (S. Cho, M. Cherkasov, M. Sanders, J. Koester, A. Miller, and A. Arnett) |
| Kohnle, Ann-Katrin | Manager | 2/25/2022 | 1.30 | $500.00 | $650.00 | Assessed the consolidated schedules prepared for the draft deliverable and provided feedback comments to be implemented prior to internal review discussion. |
| Miller, Allison | Senior Associate | 2/25/2022 | 1.10 | $400.00 | $440.00 | Discussion regarding intangible asset values with GT team (S. Cho, M. Cherkasov, M. Sanders, J. Koester, A. Kohnle, and A. Arnett) |
| Sanders, Matthew | Manager | 2/25/2022 | 1.10 | $500.00 | $550.00 | Discussion regarding intangible asset values with GT team (S. Cho, M. Cherkasov, A. Miller, J. Koester, A. Kohnle, and A. Arnett) |
| Sanders, Matthew | Manager | 2/25/2022 | 0.90 | $500.00 | $450.00 | Refined the full draft set of schedules and revised certain inputs and assumptions related to the allocation of corporate expenses and PHI expenses in the Branded Opioid intangible asset models. |
| Sanders, Matthew | Manager | 2/25/2022 | 1.20 | $500.00 | $600.00 | Analyzed the cash flows associated with PHI to determine |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | what expenses should be allocated to the branded opioids Currently Market Products. |
| Sanders, Matthew | Manager | 2/25/2022 | 0.70 | $500.00 | $350.00 | Finalized the January 2022 fee application support file and invoice. |
| Sanders, Matthew | Manager | 2/25/2022 | 2.20 | $500.00 | $1,100.00 | Evaluated the preliminary value conclusions for all intangible assets to assess what is driving indication of negative goodwill in the overall reconciliation of values. |
| Sanders, Matthew | Manager | 2/25/2022 | 1.40 | $500.00 | $700.00 | Evaluated certain cash flow assumptions for the Oxycontin CMP intangible asset to determine what additional expenses related to PHI may be appropriate to allocate to the cash flows. |
| Cho, Sylvia | Principal | 2/28/2022 | 0.30 | $720.00 | $216.00 | Review draft deliverable in preparation of internal discussion regarding asset values and key assumptions. |
| Cho, Sylvia | Principal | 2/28/2022 | 0.90 | $720.00 | $648.00 | Discussion regarding the intangible asset values and key assumptions along with impact on entity indications with GT team (A. Arnett, M. Sanders, A. Kohnle, A. Miller, B. Kolbus, M. Cherkasov) |
| Cherkasov, Marc | Associate | 2/28/2022 | 0.90 | $270.00 | $243.00 | Discussion regarding the intangible asset values and key assumptions along with impact on entity indications with GT team (A. Arnett, M. Sanders, A. Kohnle, A. Miller, B. Kolbus, S. Cho) |
| Kohnle, Ann-Katrin | Manager | 2/28/2022 | 0.90 | $500.00 | $450.00 | Discussion regarding the intangible asset values and key assumptions along with impact on entity indications with GT team (A. Arnett, M. Sanders, M. Cherkasov, A. Miller, B. Kolbus, S. Cho) |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Kolbus, Brianna | Senior Associate | 2/28/2022 | 0.50 | $400.00 | $200.00 | Call to discuss next steps and revisions to be made for certain intangible assets based on internal review comments with M. Sanders, and A. Miller. |
| Kolbus, Brianna | Senior Associate | 2/28/2022 | 0.90 | $400.00 | $360.00 | Discussion regarding the intangible asset values and key assumptions along with impact on entity indications with GT team (A. Arnett, M. Sanders, M. Cherkasov, A. Miller, A. Kohnle, S. Cho) |
| Miller, Allison | Senior Associate | 2/28/2022 | 2.30 | $400.00 | $920.00 | Updated intangible asset schedules based on feedback provided by company management during initial review of the consolidated valuation deliverable. |
| Miller, Allison | Senior Associate | 2/28/2022 | 0.50 | $400.00 | $200.00 | Call to discuss next steps and revisions to be made for certain intangible assets based on internal review comments with M. Sanders, and B. Kolbus. |
| Miller, Allison | Senior Associate | 2/28/2022 | 0.90 | $400.00 | $360.00 | Discussion regarding the intangible asset values and key assumptions along with impact on entity indications with GT team (A. Arnett, M. Sanders, M. Cherkasov, B. Kolbus, A. Kohnle, S. Cho). |
| Miller, Allison | Senior Associate | 2/28/2022 | 2.50 | $400.00 | $1,000.00 | Prepared reconciliation of total tangible and intangible asset values by legal entity with the preliminary tax valuations for the corresponding legal entities. |
| Sanders, Matthew | Manager | 2/28/2022 | 0.90 | $500.00 | $450.00 | Discussion regarding the intangible asset values and key assumptions along with impact on entity indications with GT team (A. Arnett, A. Miller, M. Cherkasov, B. Kolbus, A. Kohnle, S. Cho). |
| Sanders, Matthew | Manager | 2/28/2022 | 0.50 | $500.00 | $250.00 | Call to discuss next steps and revisions to be made for certain |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | intangible assets based on internal review comments with A. Miller, and B. Kolbus. |
| Sanders, Matthew | Manager | 2/28/2022 | 1.30 | $500.00 | $650.00 | Evaluated allocation of sales and promotion expenses for each of the Currently Market Products and legal entities to determine appropriate allocations of the PHI expenses. |
| Sanders, Matthew | Manager | 2/28/2022 | 1.70 | $500.00 | $850.00 | Analyzed the updated branded opioid forecast for exclusivity periods and allocations of legal, PHI and sales and promotional expenses. |
| Sanders, Matthew | Manager | 2/28/2022 | 1.30 | $500.00 | $650.00 | Analyzed the unallocated costs related to Wilson, Rhodes and PHI to determine if the expenses should be allocated to any of the intangible asset cash flows. |
| Miller, Allison | Senior Associate | 3/1/2022 | 1.10 | $400.00 | $440.00 | Organized the summary of preliminary enterprise values of separate legal entities and breakout of intangible assets allocated to the legal entities. |
| Sanders, Matthew | Manager | 3/1/2022 | 2.10 | $500.00 | $1,050.00 | Evaluated the impact of allocating incentive payments and legal expenses to the cash flows of certain branded opioid CMP intangible assets. |
| Kohnle, Ann-Katrin | Manager | 3/2/2022 | 0.50 | $500.00 | $250.00 | External client call with Purdue (E. Nowakowski for expertise related to branded opioid products) and GT(M. Sanders responsible for valuation of branded opioid CMP intangibles) to discuss expected remaining useful lives of the branded opioid CMP and pipeline intangible assets. |
| Kohnle, Ann-Katrin | Manager | 3/2/2022 | 0.50 | $500.00 | $250.00 | External client call to discuss the long term plan for PHI and impact on the consolidated PPLP projections as well as the branded opioid CMP intangible assets |

40

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | with Purdue: E. Ruiz (for expertise related to the PHI liability forecast), and E. Nowakowski (for general knowledge of the PHI and impact on future of opioid related products);  and GT: M. Sanders(responsible for valuation of Oxycontin CMP intangible asset impacted by PHI). |
| Sanders, Matthew | Manager | 3/2/2022 | 0.50 | $500.00 | $250.00 | External client call to discuss the long term plan for PHI and impact on the consolidated PPLP projections as well as the branded opioid CMP intangible assets with Purdue: E. Ruiz (for expertise related to the PHI liability forecast), and E. Nowakowski (for general knowledge of the PHI and impact on future opioid related products); and GT: A. Kohnle(responsible for consolidated enterprise valuation impacted by PHI spend). |
| Sanders, Matthew | Manager | 3/2/2022 | 1.70 | $500.00 | $850.00 | Analyzed the revised branded opioid P&L and COGS support files provided by the client to refine certain assumptions related to the remaining useful life assumptions in the branded products CMP valuation models. |
| Sanders, Matthew | Manager | 3/2/2022 | 0.70 | $500.00 | $350.00 | Analyzed the updated PHI expense detail to determine impact of changes compared to data previously provided with R&D and sales and promotion expense broken out by product category. |
| Sanders, Matthew | Manager | 3/2/2022 | 0.50 | $500.00 | $250.00 | External client call  to discuss expected useful lives of CMP and pipeline intangible assets related to branded opioid products with Purdue (E. Nowakowski for |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | expertise related to branded opioid products) and GT(A. Kohnle responsible for valuation of branded opioid pipeline intangibles). |
| Sanders, Matthew | Manager | 3/2/2022 | 1.90 | $500.00 | $950.00 | Created discount cash flow model to calculate the present value of the projected PHI expense adjustment to apply to the Oxycontin CMP intangible asset. |
| Cho, Sylvia | Principal | 3/3/2022 | 1.10 | $720.00 | $792.00 | Evaluated the preliminary value indications for the currently marketed products intangible assets and corresponding key assumptions for reasonableness logical consistency. |
| Cho, Sylvia | Principal | 3/3/2022 | 0.90 | $720.00 | $648.00 | Reviewed and analysis of draft valuation schedules and initial tax entity level valuations. |
| Cherkasov, Marc | Associate | 3/3/2022 | 0.90 | $270.00 | $243.00 | Evaluated the preliminary value indications for the currently marketed products intangible assets and corresponding key assumptions and drivers of value. |
| Cherkasov, Marc | Associate | 3/3/2022 | 0.60 | $270.00 | $162.00 | Refined the draft valuation schedules for the CMP intangible assets and inventory valuations to submit for internal review. |
| Kohnle, Ann-Katrin | Manager | 3/3/2022 | 1.40 | $500.00 | $700.00 | Analyzed the preliminary reconciliation of intangible and tangible asset values with the over business enterprise value to assess reasonableness of the allocation of value. |
| Kolbus, Brianna | Senior Associate | 3/3/2022 | 1.10 | $400.00 | $440.00 | Evaluated the preliminary value indications for the IPR&D intangible assets to identify the key assumptions and drivers of value. |
| Kolbus, Brianna | Senior Associate | 3/3/2022 | 0.40 | $400.00 | $160.00 | Prepared draft valuation schedules for the IPR&D intangible assets and consolidated business enterprise valuation for internal review. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Sanders, Matthew | Manager | 3/3/2022 | 1.30 | $500.00 | $650.00 | Evaluated the preliminary reconciliation of the CMP intangible assets with the overall allocation of tangible and intangibles asset values to assess the reasonableness of the allocation based on certain risk factors, inputs and assumptions. |
| Sanders, Matthew | Manager | 3/3/2022 | 1.80 | $500.00 | $900.00 | Evaluated the impact of revising the forecast inputs for the branded opioid CMPs based on updated cost allocation data provided by the client. |
| Sanders, Matthew | Manager | 3/3/2022 | 0.20 | $500.00 | $100.00 | Reviewed full set of draft schedules prior to delivering for internal review to ensure assumptions and formatting consistency across all schedules. |
| Cho, Sylvia | Principal | 3/4/2022 | 0.80 | $720.00 | $576.00 | Reviewed and analyzed the revised draft valuation conclusions to assess the reasonableness of the PHI expenses allocation to the OxyContin CMP intangible asset. |
| Cherkasov, Marc | Associate | 3/4/2022 | 2.10 | $270.00 | $567.00 | Updated the valuation models for the currently marketed products intangible assets and inventory based on revised brand opioid forecasts and COGS detail. |
| Katz, Alex | Manager | 3/4/2022 | 1.00 | $500.00 | $500.00 | Performed independent math check and quality control review to ensure mathematical accuracy to advise on reasonableness of the consolidated business enterprise valuation model conclusions. |
| Koester, Jillian | Associate | 3/4/2022 | 1.80 | $270.00 | $486.00 | Refined certain footnotes and formatting items in the enterprise value, IPR&D intangible assets, and branded pipeline intangible asset valuation schedules. |
| Kohnle, Ann-Katrin | Manager | 3/4/2022 | 1.10 | $500.00 | $550.00 | Evaluated the impact of revisions to certain inputs and assumptions based on internal review |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | comments on the preliminary draft schedules. |
| Kolbus, Brianna | Senior Associate | 3/4/2022 | 0.50 | $400.00 | $200.00 | Updated the models for the CMP intangible assets based on review comments provided from internal review of preliminary draft schedules. |
| Sanders, Matthew | Manager | 3/4/2022 | 1.90 | $500.00 | $950.00 | Refined certain assumptions related to discount rates for the intangible assets and assessed the implications to the concluded values through sensitivity analysis of certain discount rate assumptions. |
| Cho, Sylvia | Principal | 3/7/2022 | 1.10 | $720.00 | $792.00 | External client call to discuss high level value conclusions and key inputs related to preliminary draft valuation schedules with Purdue team: (T. Ronan, interim CFO;  J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Arnett, to oversee general valuation methodologies; A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; M. Sanders, to manage valuation of currently marketed products and inventory valuations and consolidation; A. Miller, for valuation issues related to the IPR&D and branded pipeline inputs and assumptions; B. Kolbus, for valuation issues related to the inputs and assumptions used in the Inventory valuations J. Koester, for valuation issues related to the consolidated enterprise valuation; and M. Cherkasov, for valuation |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | issues related to the inputs and assumptions used in the CMP intangible asset valuations) |
| Cherkasov, Marc | Associate | 3/7/2022 | 1.10 | $270.00 | $297.00 | External client call to discuss high level value conclusions and key inputs related to preliminary draft valuation schedules with Purdue team: (T. Ronan, interim CFO;  J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Arnett, to oversee general valuation methodologies; S. Cho, to oversee general valuation methodologies; A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; M. Sanders, to manage valuation of currently marketed products and inventory valuations and consolidation; A. Miller, for valuation issues related to the IPR&D and branded pipeline inputs and assumptions; B. Kolbus, for valuation issues related to the inputs and assumptions used in the Inventory valuations J. Koester, for valuation issues related to the consolidated enterprise valuation; and M. Cherkasov, for valuation issues related to the inputs and assumptions used in the CMP intangible asset valuations) |
| Koester, Jillian | Associate | 3/7/2022 | 1.10 | $270.00 | $297.00 | External client call to discuss high level value conclusions and key inputs related to preliminary draft valuation schedules with Purdue team: (T. Ronan, interim CFO;  J. Lowne, former CFO to facilitate transition; E. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Arnett, to oversee general valuation methodologies; S. Cho, to oversee general valuation methodologies; A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; M. Sanders, to manage valuation of currently marketed products and inventory valuations and consolidation; A. Miller, for valuation issues related to the IPR&D and branded pipeline inputs and assumptions; B. Kolbus, for valuation issues related to the inputs and assumptions used in the Inventory valuations; and M. Cherkasov, for valuation issues related to the inputs and assumptions used in the CMP intangible asset valuations) |
| Kohnle, Ann-Katrin | Manager | 3/7/2022 | 1.10 | $500.00 | $550.00 | External client call to discuss high level value conclusions and key inputs related to preliminary draft valuation schedules with Purdue team: (T. Ronan, interim CFO;  J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Arnett, to oversee general valuation methodologies; S. Cho, to oversee general valuation methodologies; M. Sanders, to manage valuation of currently marketed products and inventory valuations and consolidation; A. Miller, for valuation issues |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | related to the IPR&D and branded pipeline inputs and assumptions; B. Kolbus, for valuation issues related to the inputs and assumptions used in the Inventory valuations J. Koester, for valuation issues related to the consolidated enterprise valuation; and M. Cherkasov, for valuation issues related to the inputs and assumptions used in the CMP intangible asset valuations) |
| Kolbus, Brianna | Senior Associate | 3/7/2022 | 1.10 | $400.00 | $440.00 | External client call to discuss high level value conclusions and key inputs related to preliminary draft valuation schedules with Purdue team: (T. Ronan, interim CFO; J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Arnett, to oversee general valuation methodologies; S. Cho, to oversee general valuation methodologies; A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; M. Sanders, to manage valuation of currently marketed products and inventory valuations and consolidation; A. Miller, for valuation issues related to the IPR&D and branded pipeline inputs and assumptions; J. Koester, for valuation issues related to the consolidated enterprise valuation; and M. Cherkasov, for valuation issues related to the inputs and assumptions used in the CMP intangible asset valuations) |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Miller, Allison | Senior Associate | 3/7/2022 | 1.10 | $400.00 | $440.00 | External client call to discuss high level value conclusions and key inputs related to preliminary draft valuation schedules with Purdue team: (T. Ronan, interim CFO; J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Arnett, to oversee general valuation methodologies; S. Cho, to oversee general valuation methodologies; A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; M. Sanders, to manage valuation of currently marketed products and inventory valuations and consolidation; B. Kolbus, for valuation issues related to the inputs and assumptions used in the Inventory valuations J. Koester, for valuation issues related to the consolidated enterprise valuation; and M. Cherkasov, for valuation issues related to the inputs and assumptions used in the CMP intangible asset valuations) |
| Sanders, Matthew | Manager | 3/7/2022 | 1.60 | $500.00 | $800.00 | Analyzed market data and PJT valuation exit multiples for Avrio business provided by management and compared to the indicated multiples from the current fresh start and tax valuations for Rhodes and Avrio. |
| Sanders, Matthew | Manager | 3/7/2022 | 1.10 | $500.00 | $550.00 | External client call to discuss high level value conclusions and key inputs related to preliminary draft valuation schedules with Purdue team: (T. Ronan, interim CFO; J. Lowne, former CFO to |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Arnett, to oversee general valuation methodologies; S. Cho, to oversee general valuation methodologies; A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; A. Miller, for valuation issues related to the IPR&D and branded pipeline inputs and assumptions; B. Kolbus, for valuation issues related to the inputs and assumptions used in the Inventory valuations J. Koester, for valuation issues related to the consolidated enterprise valuation; and M. Cherkasov, for valuation issues related to the inputs and assumptions used in the CMP intangible asset valuations) |
| Garg, Ritwik | Associate | 3/8/2022 | 2.40 | $270.00 | $648.00 | Performed independent math check and quality control review to ensure mathematical accuracy and logic check to advise on reasonableness of the IPR&D and branded pipeline intangible asset valuation model conclusions. |
| Cherkasov, Marc | Associate | 3/9/2022 | 0.40 | $270.00 | $108.00 | Assessed the necessary adjustments and follow up items required for the fresh start CMP and inventory valuation models based on client feedback along with implications for the legal entity tax valuation considerations. |
| Kohnle, Ann-Katrin | Manager | 3/9/2022 | 0.60 | $500.00 | $300.00 | Assessed the necessary adjustments and follow up items required for the fresh start IPR&D and branded pipeline |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | valuation models based on client feedback along with tax valuation considerations. |
| Miller, Allison | Senior Associate | 3/9/2022 | 0.50 | $400.00 | $200.00 | Assessed the necessary adjustments and follow up items required for the fresh start IPR&D and branded pipeline valuation models based on client feedback along with tax valuation considerations. |
| Sanders, Matthew | Manager | 3/9/2022 | 0.50 | $500.00 | $250.00 | Assessed the necessary adjustments and follow up items required for the fresh start CMP and inventory valuation models based on client feedback along with tax valuation considerations. |
| Cherkasov, Marc | Associate | 3/11/2022 | 0.90 | $270.00 | $243.00 | Updated the currently market products intangible asset models based on review comments from internal review. |
| Koester, Jillian | Associate | 3/11/2022 | 1.50 | $270.00 | $405.00 | Evaluated the CMP intangible asset and inventory valuation models to ensure mathematically accuracy and reasonableness of conclusions based on the revisions made after receiving initial client feedback. |
| Kohnle, Ann-Katrin | Manager | 3/21/2022 | 0.50 | $500.00 | $250.00 | External client call to discuss follow up questions from the client regarding preliminary draft valuation schedules with Purdue team: (J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (M. Sanders, to manage valuation of currently marketed products and inventory valuations and consolidation; and A. Miller, for valuation issues related to the IPR&D and branded pipeline inputs and assumptions). |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Miller, Allison | Senior Associate | 3/21/2022 | 1.60 | $400.00 | $640.00 | Refined the overall enterprise valuation model based on additional commentary provided by the client related to certain language and assumptions that was utilized in the draft schedules. |
| Miller, Allison | Senior Associate | 3/21/2022 | 0.50 | $400.00 | $200.00 | External client call to discuss follow up questions from Purdue regarding preliminary draft valuation schedules with. Purdue team: (J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; and M. Sanders, to manage valuation of currently marketed products and inventory valuations). |
| Sanders, Matthew | Manager | 3/21/2022 | 0.60 | $500.00 | $300.00 | Exported time entries to prepare February 2022 fee application. |
| Sanders, Matthew | Manager | 3/21/2022 | 0.50 | $500.00 | $250.00 | External client call to discuss follow up questions from Purdue regarding preliminary draft valuation schedules with. Purdue team: (J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; and A. Miller, for valuation issues related to the IPR&D and branded pipeline inputs and assumptions). |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Cho, Sylvia | Principal | 3/22/2022 | 0.90 | $720.00 | $648.00 | Reviewed the updated draft schedules to analyze the impact of changes in key assumptions and inputs based on initial review comments provided to the intangible asset valuation team. |
| Sanders, Matthew | Manager | 3/22/2022 | 1.70 | $500.00 | $850.00 | Organized time entry data and support for the February 2022 fee application. |
| Sanders, Matthew | Manager | 3/23/2022 | 2.10 | $500.00 | $1,050.00 | Organized narrative support for the February 2022 fee application file. |
| Sanders, Matthew | Manager | 3/24/2022 | 1.10 | $500.00 | $550.00 | Finalized invoice and support detail for February 2022 fee application. |
| **TOTAL** | | | **206.50** | | **$86,786.00** | |

*Valuation Services: Tax*

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Arnett, Allen | Managing Director | 2/21/2022 | 0.50 | $720.00 | $360.00 | Discussion regarding key assumptions and project status with GT team (M. Sanders, M. Cherkasov, and S. Cho) |
| Arnett, Allen | Managing Director | 2/25/2022 | 1.10 | $720.00 | $792.00 | Discussion regarding intangible asset values with GT team (S. Cho, M. Cherkasov, M. Sanders, A. Kohnle, A. Miller, and J. Koester) |
| Arnett, Allen | Managing Director | 2/28/2022 | 0.90 | $720.00 | $648.00 | Discussion regarding the intangible asset values and key assumptions along with impact on entity indications with GT team (S. Cho, M. Sanders, A. Kohnle, A. Miller, B. Kolbus, M. Cherkasov) |
| Koester, Jillian | Associate | 2/28/2022 | 1.10 | $270.00 | $297.00 | Analyzed the intangible asset valuation models to verify mathematical accuracy and consistency across all schedules. |
| Kolbus, Brianna | Senior Associate | 2/28/2022 | 2.60 | $400.00 | $1,040.00 | Created the valuation models for the legal tax entity valuations for Rhodes, PPLP, and Avrio. |
| Miller, Allison | Senior Associate | 2/28/2022 | 2.60 | $400.00 | $1,040.00 | Created tax valuation schedules for the legal entities associated with the PPLP business segment. |
| Koester, Jillian | Associate | 3/1/2022 | 2.10 | $270.00 | $567.00 | Refined the consolidation of the legal tax entity valuations to reconcile with the concluded intangible asset values applicable to each of the legal entities. |
| Kohnle, Ann-Katrin | Manager | 3/1/2022 | 1.00 | $500.00 | $500.00 | Evaluated the preliminary enterprise values of the individual legal tax entities to reconcile with the consolidated enterprise value and discrete intangible assets allocated to the corresponding entities. |
| Kolbus, Brianna | Senior Associate | 3/1/2022 | 0.90 | $400.00 | $360.00 | Assessed the preliminary enterprise values of the individual legal entities to |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | reconcile to the consolidated enterprise value and discrete intangible assets allocated to the legal entities. |
| Miller, Allison | Senior Associate | 3/1/2022 | 1.90 | $400.00 | $760.00 | Updated the Rhodes legal entity tax valuation model based on client feedback regarding the allocation of certain overhead costs and absorption applicable to the Wilson manufacturing facility. |
| Miller, Allison | Senior Associate | 3/1/2022 | 1.80 | $400.00 | $720.00 | Updated the PPLP legal entity tax valuation model based on feedback from the client regarding certain cash flow adjustments that correspond to PHI expenses and other nonrecurring expenses items. |
| Miller, Allison | Senior Associate | 3/1/2022 | 1.10 | $400.00 | $440.00 | Prepared reconciliation of the preliminary enterprise values of the individual legal entities with the consolidated enterprise value and discrete intangible assets allocated to the legal entities. |
| Miller, Allison | Senior Associate | 3/1/2022 | 1.60 | $400.00 | $640.00 | Refined the Avrio tax valuation model inputs based on client feedback regarding prior valuations that were prepared for the Avrio business. |
| Sanders, Matthew | Manager | 3/1/2022 | 1.00 | $500.00 | $500.00 | Evaluated the preliminary enterprise values of the individual legal entities to reconcile with the consolidated enterprise value and discrete intangible assets allocated to the legal entities. |
| Arnett, Allen | Managing Director | 3/3/2022 | 1.10 | $720.00 | $792.00 | Reviewed the preliminary value indications for the tangible and intangible assets and corresponding key assumptions for reasonableness and logical consistency. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Koester, Jillian | Associate | 3/3/2022 | 1.90 | $270.00 | $513.00 | Evaluated the projected financial data utilized in the tax entity valuation models to ensure consistency with the data utilized to value the intangible assets that would fall under each of the legal tax entities. |
| Kohnle, Ann-Katrin | Manager | 3/3/2022 | 2.20 | $500.00 | $1,100.00 | Organized the financial data utilized to prepare each of the legal entity tax valuations to reconcile with the consolidated financials for the overall company. |
| Arnett, Allen | Managing Director | 3/7/2022 | 1.10 | $720.00 | $792.00 | External client call to discuss high level value conclusions and key inputs related to preliminary draft valuation schedules with Purdue team: (T. Ronan, interim CFO;  J. Lowne, former CFO to facilitate transition; E. Nowakowski, Director of Accounting; and E. Ruiz, Director of Business Development Finance) and GT team: (S. Cho, to oversee general valuation methodologies; A. Kohnle, to manage valuation of IPR&D and branded pipeline intangible assets and consolidated; M. Sanders, to manage valuation of currently marketed products and inventory valuations and consolidation; A. Miller, for valuation issues related to the IPR&D and branded pipeline inputs and assumptions; B. Kolbus, for valuation issues related to the inputs and assumptions used in the Inventory valuations J. Koester, for valuation issues related to the consolidated enterprise valuation; and M. Cherkasov, for valuation issues |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | related to the inputs and assumptions used in the CMP intangible asset valuations) |
| Cho, Sylvia | Principal | 3/9/2022 | 0.50 | $720.00 | $360.00 | Assessed the necessary adjustments and follow up items required for the fresh start valuation models based on client feedback along with tax valuation considerations. |
| Cherkasov, Marc | Associate | 3/11/2022 | 2.10 | $270.00 | $567.00 | Evaluated the status of the Avrio, PPLP, and Rhodes legal tax entity valuation models to determine next steps and outstanding data items needed. |
| Kohnle, Ann-Katrin | Manager | 3/11/2022 | 0.90 | $500.00 | $450.00 | Assessed the status of the valuation models for all legal tax entities being valued and organized data to determine how to allocate responsibilities among the GT team. |
| Miller, Allison | Senior Associate | 3/11/2022 | 1.30 | $400.00 | $520.00 | Analyzed the impact to the Avrio tax valuation model based on revisions that were implement from client feedback regarding prior valuations that were prepared for the Avrio business. |
| Miller, Allison | Senior Associate | 3/11/2022 | 1.50 | $400.00 | $600.00 | Evaluated the impact to the Rhodes legal entity tax valuation model from revisions that were implemented based on management feedback regarding the allocation of certain overhead costs and absorption applicable to the Wilson manufacturing facility. |
| Miller, Allison | Senior Associate | 3/11/2022 | 1.20 | $400.00 | $480.00 | Assessed the impact of revisions made to the PPLP legal entity tax valuation model based on feedback from the client regarding certain cash flow adjustments that correspond to PHI and one time expense items. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Miller, Allison | Senior Associate | 3/11/2022 | 1.10 | $400.00 | $440.00 | Updated the legal entity tax valuation models based on discussions with the client regarding allocation of certain expenses between the PPLP and Rhodes entities. |
| Sanders, Matthew | Manager | 3/11/2022 | 1.20 | $500.00 | $600.00 | Assessed the status of the valuation models for all legal tax entities being valued to organize data and allocate responsibilities to the GT valuation team. |
| Sanders, Matthew | Manager | 3/11/2022 | 1.30 | $500.00 | $650.00 | Evaluated the breakout of the individual legal entity balance sheets and cash flows to be used for the legal entity tax valuations models. |
| Koester, Jillian | Associate | 3/14/2022 | 1.80 | $270.00 | $486.00 | Refined the inputs and assumptions utilized in valuation model for the Wilson legal entity tax valuation. |
| Miller, Allison | Senior Associate | 3/14/2022 | 1.80 | $400.00 | $720.00 | Developed the Wilson legal entity tax valuation models an inputted relevant financial data provided by the client. |
| Cherkasov, Marc | Associate | 3/31/2022 | 2.60 | $270.00 | $702.00 | Created the valuation model for the Transdermal legal entity tax valuation and updated the PPLP and Rhodes cash flows to reflect the adjustments for the Butrans AG royalty agreement. |
| Sanders, Matthew | Manager | 3/31/2022 | 1.60 | $500.00 | $800.00 | Evaluated the impact of the Butrans AG royalty agreement and appropriate treatment of associated royalty payments for the Transdermal legal entity valuation. |
| **TOTAL** | | | **45.40** | | **$19,236.00** | |

### *Employee Tax Services:  Payroll Tax Support (Hourly Fees)*

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Narrative |
|---|---|---|---|---|---|---|
| Bellovin, Hal | Managing Director | 2/14/2022 | 2.50 | $765.00 | $1,912.50 | External call with D Cabral, L Kusinski, S Lemack and Ceridian team |
| Bellovin, Hal | Managing Director | 2/14/2022 | 1.00 | $765.00 | $765.00 | External call to discuss hybrid workforce |
| Caiazzo, Mary Frances | Senior Associate | 2/14/2022 | 0.30 | $460.00 | $138.00 | External call to discuss hybrid workforce |
| Bellovin, Hal | Managing Director | 2/25/2022 | 1.00 | $765.00 | $765.00 | External call to discuss hybrid workforce |
| Arazi, Albert | Senior Manager | 2/25/2022 | 1.00 | $650.00 | $650.00 | External call to discuss hybrid workforce |
| Bellovin, Hal | Managing Director | 2/28/2022 | 2.00 | $765.00 | $1,530.00 | External call with D Cabral, L Kusinski, S Lemack and Ceridian team |
| Caiazzo, Mary Frances | Senior Associate | 3/7/2022 | 0.30 | $460.00 | $138.00 | State withholding guidance on specific employee scenarios |
| Bellovin, Hal | Managing Director | 3/7/2022 | 2.00 | $765.00 | $1,530.00 | External call with D Cabral, L Kusinski, S Lemack and Ceridian team |
| Sharma, Komal | Senior Associate | 3/10/2022 | 2.00 | $460.00 | $920.00 | State withholding guidance on specific employee scenarios |
| Caiazzo, Mary Frances | Senior Associate | 3/10/2022 | 0.50 | $460.00 | $230.00 | State withholding guidance on specific employee scenarios |
| Sharma, Komal | Senior Associate | 3/11/2022 | 2.00 | $460.00 | $920.00 | State withholding guidance on specific employee scenarios |
| Bellovin, Hal | Managing Director | 3/11/2022 | 1.50 | $765.00 | $1,147.50 | External call to discuss hybrid workforce |
| Caiazzo, Mary Frances | Senior Associate | 3/14/2022 | 1.30 | $460.00 | $598.00 | State withholding guidance on specific employee scenarios |
| Arazi, Albert | Senior Manager | 3/15/2022 | 0.80 | $650.00 | $520.00 | State withholding guidance on specific employee scenarios |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Narrative |
|---|---|---|---|---|---|---|
| Bellovin, Hal | Managing Director | 3/28/2022 | 2.00 | $765.00 | $1,530.00 | External call with D Cabral, L Kusinski, S Lemack and Ceridian team |
| Arazi, Albert | Senior Manager | 4/8/2022 | 0.30 | $650.00 | $195.00 | Assistance with payroll tax question |
| TOTAL | | | 20.50 | | $13,489.00 | |

**<u>EXHIBIT F</u>**

**STAFFING PLAN**

Grant Thornton discussed consultant staffing with the Debtors throughout the cases and has supplemented and adjusted its team as necessary to meet the needs of the Debtors under the changing circumstances of these cases.

**<u>EXHIBIT G</u>**

**SUMMARY OF OUT OF POCKET EXPENSES AND SUPPORTING INVOICES**

| <u>CATEGORY</u> | <u>AMOUNT</u> |
|---|---|
| External Legal Counsel<br>(See Attached Supporting Invoices)* | |
| **TOTAL** | **$28,692.50** |

*This amount includes a voluntary reduction of $1,000.



Sklar Kirsh, LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 845-6416 MAIN
accounting@sklarkirsh.com
Tax I.D. 37-1711630

Grant Thornton, LLP
Attn: Chris Stathopoulos
171 N. Clark Street, Suite 200
Chicago, IL  60601
chris.stathopoulos@us.gt.com; Liz.Piechnik@us.gt.com

March 14, 2022

Invoice #48602

Due Upon Receipt

For Professional Services Rendered Through February 28, 2022

---

## Matter: Purdue Pharma - Legal Services

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 02/01/2022 | ISL | Address potential employment issues with new engagement. | 0.40 | $725.00 | $290.00 |
| | KKF | Reviewed new SOW and drafted email to C. Robertson re: strategy for approval of same (0.4).  Drafted email to R. Werth and J. Anderson re legal analysis on disclosure and approval of SOW (0.6). Telephone conference with I. Landsberg re employment issues for new SOW (0.2).  Drafted exhibits for 4th MFS (2.2). | 3.40 | $625.00 | $2,125.00 |
| 02/02/2022 | ISL | Review and address communications regarding issues with statements and compensation. | 0.50 | $725.00 | $362.50 |
| | KKF | Review revised spreadsheets and update 4th MFS (0.8). Drafted email to R. Werth and J. Anderson re process for approving new SOW (0.1). | 0.90 | $625.00 | $562.50 |
| 02/03/2022 | KKF | Analyze backup data from H. Bellovin for 4th MFS (0.4). Telephone conference with H. Bellovin re time submissions for 4th MFS (0.1). | 0.50 | $625.00 | $312.50 |
| 02/07/2022 | KKF | Telephone conference with R. Werth and J. Anderson re: retention issues for new SOW performing 2021 ordinary course tax services. | 0.30 | $625.00 | $187.50 |
| 02/08/2022 | ISL | Review 4th monthly fee application. | 0.40 | $725.00 | $290.00 |
| | KKF | Finalized 4th MFS for final review and signature for R. Werth . | 1.80 | $625.00 | $1,125.00 |
| 02/10/2022 | KKF | Exchanged correspondence with M. Giddens re: filing and service of 4th MFS (0.2).  Drafted emails to T. Nobis and P. Schwartzberger re: 4th MFS (0.1).  Drafted email to S. Blasco and J. Iueno re: instructions and materials for compiling LEDES files (0.4). | 0.70 | $625.00 | $437.50 |
| 02/11/2022 | KKF | Exchanged correspondence with C. McDonald re: breakdown of tasks per invoice for payment by Purdue. | 0.20 | $625.00 | $125.00 |
| 02/15/2022 | ISL | Review declaration and related documents for fee statement. | 0.40 | $725.00 | $290.00 |

Grant Thornton LLP

March 14, 2022

Invoice # 48602

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| | KKF | Prepared requested information from C. McDonald re: breakdown of invoices and detailed time entries from 4th MFS (0.9). Drafted 2nd Supplemental Affidavit of R. Werth re: 2021 Tax Preparation Services (1.3). Drafted email to T. Nobis re: formatting for LEDES files (0.1). | 2.30 | $625.00 | $1,437.50 |
| 02/16/2022 | KKF | Exchanged correspondence with R. Werth and C. Robertson re: revisions to R. Werth declaration (0.4). Revise same per comments received (0.8). Exchanged correspondence with B. Angstadt re: schedule and action items for 2nd interim fee application from C. Robertson (0.5). Prepared chronological time reports for LEDES conversion (0.4). | 2.10 | $625.00 | $1,312.50 |
| 02/25/2022 | KKF | Reviewed docket for pending objections and drafted email to C. McDonald re: status of 4th MFS. | 0.20 | $625.00 | $125.00 |
| 02/28/2022 | KKF | Reviewed invoices and billing support for 5th MFS (0.3). Exchanged correspondence with B. Angstadt re: missing information for 5th MFS and status of payment on 4th MFS (0.2). | 0.50 | $625.00 | $312.50 |

| | | | | | |
|---|---|---|---|---|---|
| | For professional services rendered | | 14.6 hrs | | $9,295.00 |
| SUBTOTAL | | | | | $9,295.00 |
| | Total amount of this bill | | | | $9,295.00 |
| | Previous balance | | | | $6,397.50 |
| | Total Payments and Adjustments | | | | $0.00 |
| | Balance due upon receipt | | | | $15,692.50 |

## Timekeeper Summary

| Name | Initials | Title | Hours | Rate | Amount |
|------|----------|-------|-------|------|--------|
| Ian S. Landsberg | ISL | Partner | 1.70 | $725.00 | $1,232.50 |
| Kelly K. Frazier | KKF | Of Counsel | 12.90 | $625.00 | $8,062.50 |

It is a pleasure working with you. We appreciate your business.



Sklar Kirsh, LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 845-6416 MAIN
accounting@sklarkirsh.com
Tax I.D. 37-1711630

Grant Thornton, LLP                                                                                    April 14, 2022
Attn: Chris Stathopoulos
171 N. Clark Street, Suite 200
Chicago, IL 60601                                                                                      Invoice #49050
chris.stathopoulos@us.gt.com; Liz.Piechnik@us.gt.com
                                                                                                       Due Upon Receipt

For Professional Services Rendered Through March 31, 2022

---

## Matter: Purdue Pharma - Legal Services

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 03/01/2022 | ASB | Discussed fee application process with K. Frazier (0.4). Drafted Fifth Monthly Statement (1.1). | 1.50 | $350.00 | $525.00 |
| | KKF | Drafted email to Grant Thornton billing team re: missing invoices for 5th MFS (0.1). Telephone conference with A. Bender re: preparation of 5th MFS (0.4). Forwarded backup materials for same (0.1). | 0.60 | $625.00 | $375.00 |
| 03/02/2022 | ASB | Drafted Fifth Monthly Fee Statement and exhibits. | 4.00 | $350.00 | $1,400.00 |
| | KKF | Reviewed and revised 5th MFS (1.3). Drafted email to R. Werth re: missing information for MFS and final sign-off before filing (0.1). Drafted email to A. Bender with information for preparation of 2nd interim fee application (0.1). | 1.50 | $625.00 | $937.50 |
| 03/03/2022 | KKF | Reviewed new invoices for 5th MFS and exchanged email with J. Neeley and R. Werth re: same. | 0.20 | $625.00 | $125.00 |
| 03/04/2022 | KKF | Telephone conference with A. Grant re: draft 2nd interim fee application (0.5). Exchanged correspondence with M. Giddens re: filing 5th MFS (0.1). Exchanged correspondence with J. Neeley and R. Werth re: final invoices for 5th MFS (0.1). | 0.70 | $625.00 | $437.50 |
| 03/07/2022 | ASB | Drafted Second Interim Fee Application. | 3.00 | $350.00 | $1,050.00 |
| | KKF | Telephone conference with A. Bender re: preparation of exhibits to 2nd Interim Fee Application (0.2). Drafted emails to R. Werth and B. Angstadt re: information requests to finalize 2nd Interim Fee Application (0.3). Drafted emails to P. Swartzberger, T. Nobis and C. McDonald re: 5th MFS (0.2). | 0.70 | $625.00 | $437.50 |
| 03/08/2022 | ASB | Prepared draft of Second Interim Fee Statement. | 5.50 | $350.00 | $1,925.00 |
| | KKF | Telephone conference with A. Bender re: preparation of exhibits for 2nd Interim Fee Application. | 0.50 | $625.00 | $312.50 |
| 03/11/2022 | ISL | Review and address current fee statement. | 0.40 | $725.00 | $290.00 |
| 03/12/2022 | KKF | Revised Second Interim Fee Application and exhibits. | 5.20 | $625.00 | $3,250.00 |
| 03/14/2022 | ASB | Reviewed final Interim Fee Application and comments. | 0.30 | $350.00 | $105.00 |

Grant Thornton LLP

April 14, 2022

Invoice # 49050

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| | KKF | Reviewed and responded to B. Angstadt re: questions and revisions to 2nd Interim fee application (0.3).  Finalize 2nd interim fee application to submit for filing (0.1). | 0.40 | $625.00 | $250.00 |
| 03/15/2022 | KKF | Exchanged emails with C. Robertson to coordinate filing and notice of same. | 0.20 | $625.00 | $125.00 |
| 03/18/2022 | KKF | Drafted email to R. Werth and B. Angstadt re: timing for fee application and MFS hearings and payments and status of 6th MFS. | 0.20 | $625.00 | $125.00 |
| 03/19/2022 | KKF | Emailed Grant Thornton teams re: 6th MFS. | 0.10 | $625.00 | $62.50 |
| 03/21/2022 | KKF | Reviewed docket for objections and drafted email to C. McDonald re: processing payment for 5th MFS. | 0.10 | $625.00 | $62.50 |
| 03/25/2022 | ASB | Review and begin preparation of the 6th Monthly Fee Statement of Grant Thornton. | 2.90 | $350.00 | $1,015.00 |
| | KKF | Reviewed exhibits and fee information for 6th MFS (0.6).  Revised draft of 6th MFS (0.2). | 0.80 | $625.00 | $500.00 |
| 03/28/2022 | ASB | Continued to prepare Sixth Fee Statement and prepared exhibits. | 2.80 | $350.00 | $980.00 |
| | KKF | Researched discrepancy issue in 4th MFS raised by fee examiner (0.4).  Drafted emails to T. Nobis explaining discrepancy in 4th MFS and updated LEDES file for 5th MFS (0.2). | 0.60 | $625.00 | $375.00 |
| 03/29/2022 | ASB | Revised and updated Sixth Fee Statement. | 3.00 | $350.00 | $1,050.00 |
| | KKF | Reviewed and revised 6th MFS (0.5).  Telephone conference with A. Bender re revisions to 6th MFS (0.2).  Drafted email to A. Bender and X. Angie re missing invoice for GMS work performed (0.1). | 0.80 | $625.00 | $500.00 |
| 03/31/2022 | ASB | Followed up to obtain final invoice for 6th Fee Statement for filing. | 0.40 | $350.00 | $140.00 |

| | | For professional services rendered | 36.4 hrs | | $16,355.00 |
|---|---|---|---|---|---|
| | | SUBTOTAL | | | $16,355.00 |

| | | | |
|---|---|---|---|
| | Less Courtesy Discount | | ($1,000.00) |
| | Total amount of this bill | | $15,355.00 |
| | Previous balance | | $15,692.50 |
| 03/21/2022 | Payment - Thank you, Check # 001087347 | | ($3,620.00) |
| | Total Payments and Adjustments | | ($3,620.00) |
| | Balance due upon receipt | | $27,427.50 |

Grant Thornton LLP
April 14, 2022
Invoice # 49050

## Timekeeper Summary

| Name | Initials | Title | Hours | Rate | Amount |
|------|----------|-------|------:|-----:|-------:|
| Ian S. Landsberg | ISL | Partner | 0.40 | $725.00 | $290.00 |
| Kelly K. Frazier | KKF | Of Counsel | 12.60 | $625.00 | $7,875.00 |
| Amy S. Bender | ASB | Paralegal | 23.40 | $350.00 | $8,190.00 |

It is a pleasure working with you.  We appreciate your business.



Sklar Kirsh, LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 845-6416 MAIN
accounting@sklarkirsh.com
Tax I.D. 37-1711630

Grant Thornton, LLP
Attn: Chris Stathopoulos
171 N. Clark Street, Suite 200
Chicago, IL  60601
chris.stathopoulos@us.gt.com; Liz.Piechnik@us.gt.com

May 11, 2022

Invoice #50009

Due Upon Receipt

For Professional Services Rendered Through April 30, 2022

---

## Matter: Purdue Pharma - Legal Services

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 04/01/2022 | KKF | Revised 6th MFS for filing (0.5).  Drafted emails to C. McDonald, T. Nobis and P. Schwartzberger with filed 6th MFS and LEDES files (0.2). | 0.70 | $625.00 | $437.50 |
| 04/18/2022 | KKF | Reviewed docket for objections to 6th MFS and drafted email to C. McDonald re same. | 0.10 | $625.00 | $62.50 |
| 04/19/2022 | KKF | Analyzed fee examiner report for 2nd interim fee application (0.3).  Drafted email to R. Werth, S. Cho and B. Angstadt re: strategy for addressing fee examiner recommendations (0.3). | 0.60 | $625.00 | $375.00 |
| 04/21/2022 | KKF | Drafted email to R. Werth re: status of response to fee examiner report. | 0.10 | $625.00 | $62.50 |
| 04/22/2022 | KKF | Telephone conference with R. Werth, B. Angstadt and S. Cho re: analysis and response to fee examiner report (0.5).  Drafted email to D. Lauder re: response to expense issues and request for conference (0.2). | 0.70 | $625.00 | $437.50 |
| 04/25/2022 | KKF | Telephone conference with D. Lauder and T. Bielli re: resolution of interim report issues. | 0.20 | $625.00 | $125.00 |
|  | KKF | Drafted email to R. Werth, S. Cho and B. Angstadt re: resolution with fee examiner and advise on future billing descriptions to assist in avoiding further objections (0.2).  Drafted email to I. Landsberg re: status of and materials for preparation on hearing for fee application (0.3). | 0.50 | $625.00 | $312.50 |
| 04/26/2022 | ISL | Review client documents to prepare for hearing on fee application. | 1.20 | $725.00 | $870.00 |
|  | KKF | Drafted email to Davis Polk attorneys to coordinate fee hearing issues. | 0.10 | $625.00 | $62.50 |
| 04/27/2022 | ISL | Review and discuss draft order approving fees. | 0.40 | $725.00 | $290.00 |
|  | ISL | Court appearance in New York Bankruptcy Court for fee application. | 0.70 | $725.00 | $507.50 |
|  | KKF | Monitor hearing on fee applications pending I. Landsberg participation (0.3).  Reviewed and revised omnibus order approving fee applications (0.3).  Exchanged correspondence with D. Consla re: requested changes to omnibus order (0.2). | 0.80 | $625.00 | $500.00 |

Grant Thornton LLP

May 11, 2022

Invoice # 50009

| | | |
|---|---|---|
| For professional services rendered | 6.1 hrs | $4,042.50 |
| SUBTOTAL | | $4,042.50 |
| Total amount of this bill | | $4,042.50 |
| Previous balance | | $27,427.50 |
| 04/18/2022   Payment - Thank you, Check # 001088396 | | ($2,777.50) |
| Total Payments and Adjustments | | ($2,777.50) |
| Balance due upon receipt | | $28,692.50 |

## Timekeeper Summary

| Name | Initials | Title | Hours | Rate | Amount |
|---|---|---|---|---|---|
| Ian S. Landsberg | ISL | Partner | 2.30 | $725.00 | $1,667.50 |
| Kelly K. Frazier | KKF | Of Counsel | 3.80 | $625.00 | $2,375.00 |

It is a pleasure working with you.  We appreciate your business.

## EXHIBIT H

### CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES FOR THE FEE PERIOD[6]

| Tax Structuring Services and Employee Tax Services | | |
|---|---|---|
| **Category of Timekeeper** | **Standard Rates for Professionals at Grant Thornton LLP for the Fee Period[7]** | **Rates in Application** |
| Partner / Managing Director | $950 - $1,145 | $765 |
| Senior Manager / Director | $870 - $1,000 | $650 |
| Manager | $690 - $835 | $570 |
| Senior Associate | $455 - $675 | $460 |
| Associate | $310 - $415 | $280 |

| Valuation Services | | |
|---|---|---|
| **Category of Timekeeper** | **Standard Rates for Professionals at Grant Thornton LLP for the Fee Period[8]** | **Rates in Application** |
| Partner / Managing Director | $875 - $970 | $720 |
| Senior Manager / Director | $775 - $785 | $590 |
| Manager | $620 - $675 | $500 |
| Senior Associate | $450 - $515 | $400 |
| Associate | $330 - $365 | $270 |

---

[1]    Grant Thornton provides Plan Services to the Debtors that involve two (2) different types of distinct business units, *i.e.*, one that provides tax related services and another that provides valuation related services, each with different specialized skills and rates. As such, the information contained in this Exhibit H provides the applicable rates and rate comparisons for each such business unit.

[2]    Rates differ within a level due to the relative experience of the staff and/or whether the applicable staff is part of Grant Thornton's national tax office. In addition, although Grant Thornton's standard hourly tax rates were increased in August in the normal operation of its business, the hourly rates charged by Grant Thornton for professionals working on matters in these cases were not increased, with the exception of one professional who was promoted to Managing Director effective September 1, 2021, and as such, the agreed to hourly rate charged was reflective of this new position.

[3]    Rates differ within a level due to relative experience of the staff.

## EXHIBIT I

### SUMMARY AND SUPPORTING INVOICES FOR OCB TAX SERVICES

The following is a summary of the invoices relating to OCB Tax Services for which Grant Thornton was paid pursuant to the Monthly Fee Statements.  Copies of the actual invoices also are attached.

| GT Invoice No. | Amount | Invoice Date | Service Period | Type of OCB Tax Services | Applicable MFS |
|---|---|---|---|---|---|
| 953928067 | $5,570.00 | 3/10/22 | January 2022 Compliance processed in February 2022; December 2021 Invoice Review Services (for January returns due in February 2022) | Sales and Use Tax Compliance Services | 6th MFS |
| 953917124 | $88,460.00 | 2/18/22 | February 1, 2022 First Installment Payment due date | 2021 Tax Compliance Services | 6th MFS |
| 953939966 | $11,151.20 | 3/31/22 | February 1-28, 2022 | Global Mobility Services | 6th MFS |
| 953942473 | $6,205.00 | 4/7/22 | February 2022 Compliance processed in March 2022; January 2022 Invoice Review Services (for February returns due in March 2022) | Sales and Use Tax Compliance Services | 7th MFS |
| 953937476 | $42,930.00 | 3/25/22 | March 1, 2022 Installment Payment | 2021 Tax Preparation Services | 7th MFS |
| 953959199 | $7,875.00 | 5/10/22 | March 2022 Compliance processed in April 2022; February 2022 Invoice Review Services (for March returns due in April 2022) | Sales and Use Tax Compliance Services | 8th MFS |
| 953937476 | $42,930.00 | 5/9/22 | Final Installment Payment due April 1, 2022 | 2021 Tax Preparation Services | 8th MFS |
| 953960935 | $13,053.90 | 5/12/22 | March 1, 2022 to April 30, 2022 | Global Mobility Services | 8th MFS |
| **TOTAL** | **$218,175.10** | | | | |

**Grant Thornton**

**Grant Thornton LLP**
186 Wood Ave S # 4
Iselin, NJ 08830-2725

T 732.516.5500
F 732.516.5502
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*  Purdue Pharma L.P.
       201 Tresser Boulevard
       Stamford, CT 06901-3431

*Date:*  March 10, 2022

**Bill Number**: 953928067          **Client-Assignment Code:** 0200102-00016

Sales & Use Tax Compliance & Invoice Review
January 2022 Compliance processed in February 2022:                    $          1,910.00

COMPLIANCE TOTAL:                                                                  1,910.00

Review of December's Invoices (60 transactions) filed with January's returns due
in February 2022 (filed on a one-month lag), notices & consulting                  3,660.00

INVOICE REVIEW & CONSULTING TOTAL:                                                 5,570.00


**Total Amount of Bill:**                                                $          5,570.00


*Terms:*  As agreed upon
          Federal ID No. 36-6055558

# Grant Thornton

**Grant Thornton LLP**
757 3rd Avenue #9
New York, NY 10017-2013

T 212.599.0100
F 212.370.4520
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*   Purdue Pharma L.P.
201 Tresser Boulevard
Stamford, CT 06901-3431

*Date:*   February 18, 2022

**Bill Number**: 953917124          **Client-Assignment Code:** 0200102-00019

| | | |
|---|---|---|
| Progress billing for professional services rendered in the preparation of income tax returns for the year ended 12/31/2021 | $ | 81,000.00 |
| Expenses, including an administrative charge of 6% | | 4,860.00 |
| Technology Fee, per the Statement of Work | | 2,600.00 |
| **Total Amount of Bill:** | $ | **88,460.00** |

*Terms:*   As agreed upon
Federal ID No. 36-6055558

**Grant Thornton**

**Grant Thornton LLP**
1100 Peachtree Street
Suite 1200
Atlanta, GA 30309

T 404.330.2000
F 404.475.0107
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*  Purdue Pharma L.P.
201 Tresser Boulevard
Stamford, CT 06901-3431

*Date:*  March 31, 2022

**Bill Number**: 953939966        **Client-Assignment Code:** 0200102-00009
**Client-Assignment Code:** 0200102-00008
**Client-Assignment Code:** 0200102-00021

Professional services rendered.  Please see attached.          $        11,151.20

**Total Amount of Bill:**                                      **$        11,151.20**

*Terms:*  As agreed upon
Federal ID No. 36-6055558

**Purdue Pharma L.P.**

Tax advisory, research, compliance and consulting services including:

| Description | | Amount |
|---|---|---|
| **David Lundie** | | |
| | | |
| **2021 Tax Compliance** | | |
| Progress billing on 2021 Federal Tax Return- 50% | $ | 1,875.00 |
| Progress billing on 2021 NC Tax Return- 50% | $ | 275.00 |
| Progress billing FinCen 114 - Foreign Bank Account Reporting - 50% | $ | 625.00 |
| 2021 Form 1065 including K-1 preparation | $ | 1,950.00 |
| 2021 Form NC D-403 | $ | 500.00 |
| Consulting related to LLC fillings | $ | 445.00 |
| | | |
| **Tax Consulting** | | |
| Additional time incurred  related to tax withholding and Q4 payment advice on David Lundie separation | $ | 3,600.00 |
| Consulting related sale of home exclusion | $ | 1,250.00 |
| | | |
| **Subtotal** | $ | 10,520.00 |
| **Expenses (using the expense factor of 6% )** | $ | 631.20 |
| **Total** | $ | 11,151.20 |

**Grant Thornton**

**Grant Thornton LLP**
186 Wood Ave S # 4
Iselin, NJ 08830-2725

T 732.516.5500
F 732.516.5502
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:* Purdue Pharma L.P.
201 Tresser Boulevard
Stamford, CT 06901-3431

*Date:* April 7, 2022

**Bill Number**: 953942473          **Client-Assignment Code:** 0200102-00016

| | |
|---|---|
| Sales & Use Tax Compliance & Invoice Review | |
| February 2022 Compliance processed in March 2022: | $ 1,910.00 |
| | |
| COMPLIANCE TOTAL: | 1,910.00 |
| | |
| Review of January's Invoices (60 transactions) filed with February's returns due in March 2022 (filed on a one-month lag), notices & consulting: | 4,295.00 |
| | |
| INVOICE REVIEW & CONSULTING TOTAL: | 4,295.00 |
| | |
| **Total Amount of Bill:** | **$ 6,205.00** |

*Terms:* As agreed upon
Federal ID No. 36-6055558

**Grant Thornton**

**Grant Thornton LLP**
757 3rd Avenue #9
New York, NY 10017-2013

T 212.599.0100
F 212.370.4520
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
       201 Tresser Boulevard
       Stamford, CT 06901-3431

*Date:*    March 25, 2022

       **Bill Number**: 953937476       **Client-Assignment Code:** 0200102-00019

Second progress billing for professional services rendered in the preparation of
income tax returns for the year ended 12/31/2021       $    40,500.00

Expenses, including an administrative expense charge of 6%       2,430.00

**Total Amount of Bill:**       **$    42,930.00**

*Terms:*    As agreed upon
       Federal ID No. 36-6055558

**Grant**Thornton

**Grant Thornton LLP**
186 Wood Ave S # 4
Iselin, NJ 08830-2725

T 732.516.5500
F 732.516.5502
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
         201 Tresser Boulevard
         Stamford, CT 06901-3431

*Date:*    May 10, 2022

    **Bill Number**: 953959199        **Client-Assignment Code:** 0200102-00002
                                       **Client-Assignment Code:** 0200102-00016

    Sales & Use Tax Compliance & Invoice Review

    March 2022 Compliance processed in April 2022:              $      1,910.00

    COMPLIANCE TOTAL:                                                  1,910.00

    Review of February's Invoices (60 transactions) filed with March's returns due in
    April 2022 (filed on a one-month lag), notices & consulting          5,965.00

    INVOICE REVIEW & CONSULTING TOTAL:                                  7,875.00

    **Total Amount of Bill:**                                  $      7,875.00

*Terms:*    As agreed upon
            Federal ID No. 36-6055558

## Grant Thornton

**Grant Thornton LLP**
757 3rd Avenue #9
New York, NY 10017-2013

T 212.599.0100
F 212.370.4520
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
         201 Tresser Boulevard
         Stamford, CT 06901-3431

*Date:*  May 9, 2022

         **Bill Number**: 953959070          **Client-Assignment Code:** 0200102-00019

         Final progress billing for professional services rendered in the preparation of
         income tax returns for the year ended 12/31/2021          $      40,500.00

         Expenses, including an administrative expense charge of 6%                 2,430.00

         **Total Amount of Bill:**                                       $      42,930.00

*Terms:*  As agreed upon
          Federal ID No. 36-6055558

**Grant Thornton**

**Grant Thornton LLP**
1100 Peachtree Street
Suite 1200
Atlanta, GA 30309

T 404.330.2000
F 404.475.0107
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
         201 Tresser Boulevard
         Stamford, CT 06901-3431

*Date:*   May 12, 2022

         **Bill Number**: 953960935          **Client-Assignment Code:** 0200102-00009
                                             **Client-Assignment Code:** 0200102-00008
                                             **Client-Assignment Code:** 0200102-00021

         See detail on Page 2:                                          $      13,053.90

         **Total Amount of Bill:**                                      $     **13,053.90**

*Terms:*   As agreed upon
          Federal ID No. 36-6055558

**Purdue Pharma**

Tax advisory, research, compliance and consulting services including:

| Description | | Amount |
|---|---|---|
| **David Lundie** | | |
| **2021 Tax** | | |
| Federal Tax Return | $ | 3,570.00 |
| North Carolina Tax Return | $ | 525.00 |
| Tax Equalization Settlement | $ | 825.00 |
| FinCen 114 - Foreign Bank Account Reporting | $ | 1,250.00 |
| Extension Calculation | $ | 750.00 |
| (Progress Already Billed) | $ | (2,775.00) |
| **Out of scope compliance** | | |
| Conference calls and email correspondence thru April 30th with David regarding tax filings, tax payments and tax equalization settlement with Purdue. | $ | 4,320.00 |
| Research related to claim of right for Federal interest received by David and repaid to Purdue. Time includes calculation of claim of right and communication with David regarding rationale behind repayment. | $ | 2,150.00 |
| **Tax Consulting** | | |
| Time incurred thru April 30th related to reconciliation of tax payments and refunds, including interest and penalties and repayments from David to determine current tax settlement position. | $ | 1,700.00 |

| | | |
|---|---|---|
| **Subtotal** | $ | 12,315.00 |
| **Expenses (using the expense factor of 6% )** | $ | 738.90 |
| **Total** | $ | 13,053.90 |