Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 19-23649-rdd

4   Adv. Case No. 19-08289-rdd

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   PURDUE PHARMA L.P.,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   PURDUE PHARMA L.P., ET AL,

13                Plaintiff,

14          v.

15   COMMONWEALTH OF MASSACHUSETTS, ET AL.,

16                Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19                United States Bankruptcy Court

20                300 Quarropas Street, Room 248

21                White Plains, NY 10601

22

23                April 27, 2022

24                10:06 A.M.

25

1    B E F O R E :

2    HON ROBERT D. DRAIN

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:   UNKNOWN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HEARING re Purdue Pharma L.P. et al v. Commonwealth of

2    Massachusetts et al Motion to Extend Time / Motion to Extend

3    the Preliminary Injunction filed by Benjamin S. Kaminetzky

4    on behalf of Avrio Health L.P., Purdue Pharma Inc., Purdue

5    Pharma L.P., Purdue Pharma Manufacturing L.P., Purdue Pharma

6    of Puerto Rico, Purdue Pharmaceutical Products L.P., Purdue

7    Pharmaceuticals L.P., Purdue Transdermal Technologies L.P.,

8    Rhodes Pharmaceuticals L.P., Rhodes Technologies with

9    hearing to be held on 4/27/2022 at 10:00 AM at

10   Videoconference (ZoomGov) (ECF #353)

11

12   HEARING re Purdue Pharma L.P. et al v. Commonwealth of

13   Massachusetts et al Memorandum of Law in Support of Motion

14   to Extend the Preliminary Injunction (related

15   document(s)353) filed by Benjamin S. Kaminetzky on behalf of

16   Avrio Health L.P., Purdue Pharma Inc., Purdue Pharma L.P.,

17   Purdue Pharma Manufacturing L.P., Purdue Pharma of Puerto

18   Rico, Purdue Pharmaceutical Products L.P., Purdue

19   Pharmaceuticals L.P., Purdue Transdermal Technologies L.P.,

20   Rhodes Pharmaceuticals L.P., Rhodes Technologies. Objections

21   due by 4/20/2022, Reply due by 4/25/2022 (ECF #354)

22

23

24

25

Page 4

1   HEARING re Twenty-Fifth Amended Order signed on signed on

2   2/17/2022 Pursuant to 11 U.S.C. 105(a) Granting Motion for a

3   Preliminary Injunction. Pre-Trial Conference in this

4   adversary proceeding has been Adjourned to 4/27/2022 at

5   10:00 AM at Videoconference (ZoomGov) (RDD) (related

6   document(s)323) (ECF #349)

7

8   HEARING re Motion to File Proof of Claim After Claims Bar

9   Date filed by Tristan Martinez with hearing to be held on

10  4/27/2022 at 10:00 AM at Videoconference (ZoomGov) (ECF

11  #4415)

12

13  HEARING re Notice of Hearing Regarding Late Claim Motion

14  [Tristan Martinez] (related document(s)4415) filed by James

15  I. McClammy on behalf of Purdue Pharma L.P.. with hearing to

16  be held on 4/27/2022 at 10:00 AM at Videoconference

17  (ZoomGov) (ECF #4431)

18

19  HEARING re Statement / Notice of Filing Proposed Order

20  Granting Late Claim Motions [ Tristan Martinez, Marcia

21  Helms,

        Wayne B. Anderson, and George Andrew George Andrew

22  Bratton] (related document(s)4525, 4481, 4520, 4415)

23  filed by James I. McClammy on behalf of Purdue Pharma L.P.

24  (ECF #4682)

25

Page 5

1    HEARING re Motion to File Proof of Claim After Claims Bar

2    Date /Motion for Tolling of Filing Deadline filed by Marcia

3    Helms with hearing to be held on 4/27/2022 at 10:00 AM at

4    Videoconference (ZoomGov) (ECF #4481)

5

6    HEARING re Notice of Hearing Regarding Late Claim Motion

7    (Marcia Helms) (related document(s)4481) filed by James I.

8    McClammy on behalf of Purdue Pharma L.P.. with hearing to be

9    held on 4/27/2022 at 10:00 AM at Videoconference (ZoomGov)

10   (ECF #4496)

11

12   HEARING re Statement / Notice of Filing Proposed Order

13   Granting Late Claim Motions [ Tristan Martinez, Marcia

14   Helms, Wayne B. Anderson, and George Andrew George Andrew

15   Bratton] (related document(s)4525, 4481, 4520, 4415) filed

16   by James I. McClammy on behalf of Purdue Pharma L.P. (ECF

17   #4682)

18

19   HEARING re Motion to File Proof of Claim After Claims Bar

20   Date filed by Wayne B. Anderson with hearing to be held on

21   4/27/2022 at 10:00 AM at Videoconference (ZoomGov) (ECF

22   #4520)

23

24

25

Page 6

1    HEARING re Notice of Hearing Regarding Late Claim Motion

2    (Wayne Anderson) (related document(s)4520) filed by James I.

3    McClammy on behalf of Purdue Pharma L.P.. with hearing to be

4    held on 4/27/2022 at 10:00 AM at Videoconference (ZoomGov)

5    (ECF #4521)

6

7    HEARING re Statement / Notice of Filing Proposed Order

8    Granting Late Claim Motions [ Tristan Martinez, Marcia

9    Helms, Wayne B. Anderson, and George Andrew George Andrew

10   Bratton] (related document(s)4525, 4481, 4520, 4415) filed

11   by James I. McClammy on behalf of Purdue Pharma L.P. (ECF

12   #4682)

13

14   HEARING re Motion to File Proof of Claim After Claims Bar

15   Date filed by George Andrew Bratton with hearing to be held

16   on 4/27/2022 at 10:00 AM at Videoconference (ZoomGov) (ECF

17   #4525)

18

19   HEARING re Notice of Hearing Regarding Late Claim Motion

20   [George Andrew Bratton] (related document(s)4525) filed by

21   James I. McClammy on behalf of Purdue Pharma L.P.. with

22   hearing to be held on 4/27/2022 at 10:00 AM at

23   Videoconference (ZoomGov) (ECF #4526)

24

25

1    HEARING re Statement / Notice of Filing Proposed Order

2    Granting Late Claim Motions [ Tristan Martinez, Marcia

3    Helms, Wayne B. Anderson, and George Andrew George Andrew

4    Bratton] (related document(s)4525, 4481, 4520, 4415) filed

5    by James I. McClammy on behalf of Purdue Pharma L.P. (ECF

6    #4682)

7

8    HEARING re Notice of Hearing / Notice of Seventh Interim Fee

9    Hearing filed by Eli J. Vonnegut on behalf of Purdue Pharma

10   L.P. with hearing to be held on 4/27/2022 at 10:00 AM at

11   Videoconference (ZoomGov) (ECF #4573)

12

13   HEARING re Application for Interim Professional Compensation

14   / Seventh Interim Fee Application of Dechert LLP, as 327(e)

15   Special Counsel, for Compensation for Professional Services

16   Rendered and Reimbursement of Actual and Necessary Expenses

17   Incurred During the Period 10/1/2021 to 1/31/2022,

18   fee:$1,785,557.99, expenses: $24,822.86. filed by Dechert

19   LLP. (ECF #4547)

20

21   HEARING re Seventh Application for Interim Professional

22   Compensation for Arnold & Porter Kaye Scholer LLP, Debtor's

23   Attorney, period: 10/1/2021 to 1/31/2022, fee:$1,094,429.13,

24   expenses: $44,243.00. filed by Arnold & Porter Kaye Scholer

25   LLP. (ECF #4541)

Page 8

1   HEARING re Seventh Application for Interim Professional

2   Compensation for KING & SPALDING LLP, Special Counsel,

3   period: 10/1/2021 to 1/31/2022, fee:$1,118,314.32, expenses:

4   $0.00. filed by Scott I. Davidson, KING & SPALDING LLP. (ECF

5   #4540)

6

7   HEARING re Application for Interim Professional Compensation

8   / Seventh Interim Application of Davis Polk & Wardwell LLP

9   for Compensation for Services Rendered and Reimbursement of

10  Expenses Incurred as Counsel to the Debtors and Debtors in

11  Possession for the Period 10/1/2021 to 1/31/2022, fee:

12  $20,761,663.5, expenses: $325,122.62. filed by Davis Polk &

13  Wardwell LLP. (ECF #4552)

14

15  HEARING re Seventh Application for Interim Professional

16  Compensation /Jones Day's Seventh Interim Application For

17  Allowance of Compensation For Services Rendered and

18  Reimbursement of Actual and Necessary Expenses Incurred

19  During Retention Period 10/1/2021 to 1/31/2022, fee:

20  $1,166,724.81, expenses: $110,609.55. filed by Jones Day.

21  (ECF #4553)

22

23

24

25

Page 9

1    HEARING re Application for Interim Professional Compensation

2    / Seventh Interim Fee Application of AlixPartners, LLP

3    Financial Advisor for the Chapter 11 Debtors, for Allowance

4    of Compensation for Professional Services Rendered and

5    Reimbursement of Expenses for the Period10/1/2021 to

6    1/31/2022, fee:$2,144,867.50, expenses: $317,950.05. filed

7    by AlixPartners, LLP. (ECF #4551)

8

9    HEARING re Fourth Application for Interim Professional

10   Compensation of Prime Clerk LLC, as Administrative Advisor

11   to the Debtors, for Services Rendered and Reimbursement of

12   Expenses for the Period 10/1/2021 to 1/31/2022, fee:

13   $21,592.80, expenses: $0.00. filed by Prime Clerk LLC. (ECF

14   #4545)

15

16   HEARING re Seventh Application for Interim Professional

17   Compensation Seventh Interim Fee Application Of Skadden,

18   Arps, Slate, Meagher & Flom LLP For Compensation For

19   Services Rendered And Reimbursement Of Expenses As Special

20   Counsel To The Debtors For The Period 10/1/2021 to

21   1/31/2022, fee: $1,909,368.90, expenses: $90,000.00. filed

22   by Skadden, Arps, Slate, Meagher & Flom LLP. (ECF #4557)

23

24

25

Page 10

1    HEARING re Application for Interim Professional Compensation

2    / Seventh Interim Fee Application of PJT Partners LP as

3    Investment Banker to the Debtors and Debtors-in Possession

4    for Allowance of Compensation for Services Rendered and for

5    the Reimbursement of all Actual and Necessary Expenses

6    Incurred for the Period 10/1/2021 to 1/31/2022, fee:

7    $900,000.00, expenses: $1,719.45. filed by PJT Partners LP.

8    (ECF #4550)

9

10   HEARING re Application for Interim Professional Compensation

11   / Second Interim Fee Application of Grant Thornton LLP for:

12   (I) Allowance of Compensation and Reimbursement of Expenses

13   Incurred for Retention as Consultants to Debtors for

14   Services Related to the Plan for the Period 10/1/2021 to

15   1/31/2022, fee:$595,038.25, expenses: $29,051.35. filed by

16   Grant Thornton LLP. (ECF #4549)

17

18   HEARING re Seventh Application for Interim Professional

19   Compensation /Seventh Interim Fee Application of Brown

20   Rudnick LLP as Co-Counsel to the Ad Hoc Committee of

21   Governmental and Other Contingent Litigation Claimants for

22   Services and Reimbursement of Expenses incurred for the

23   Period of October 1, 2021 through January 31, 2022 for Brown

24   Rudnick LLP, Other Professional, period: 10/1/2021 to

25   1/31/2022, fee:$1,255,657.0, expenses: $5,000.59. filed by

Page 11

1    Brown Rudnick LLP. (ECF #4554)

2

3    HEARING re Seventh Interim Fee Application of FTI

4    Consulting, Inc. for Compensation Earned and Expenses

5    Incurred for the Period 10/1/2021 to 1/31/2022,

6    fee:$1,131,443.50, expenses: $1,200.04. filed by FTI

7    Consulting, Inc. (ECF #4558)

8

9    HEARING re Application for Interim Professional Compensation

10   / Application of Otterbourg P.C. as Co-Counsel to the Ad Hoc

11   Committee of Governmental and Other Contingent Claimants for

12   Seventh Interim Allowance of Compensation for Services

13   Rendered and Reimbursement of Expenses Incurred, period:

14   10/1/2021 to 1/31/2022, fee:  $255,511.50, expenses:

15   $107.36. filed by Otterbourg P.C. (ECF #4546)

16

17   HEARING re Application for Interim Professional Compensation

18   / Seventh Interim Application for Allowance of Compensation

19   for Services Rendered and Reimbursement of Expenses Incurred

20   by Gilbert LLP as Co-Counsel to the Ad Hoc Committee of

21   Governmental and Other Contingent Litigation Claimants for

22   the Period October 1, 2021 through January 31, 2022 for

23   Gilbert LLP, Other Professional, period: 10/1/2021 to

24   1/31/2022, fee:  $3,141,959.00, expenses: $27,958.47. filed

25   by Gilbert LLP. (ECF #4543)

Page 12

1    HEARING re Application for Interim Professional Compensation

2    / Seventh Interim Application of Kramer Levin Naftalis &

3    Frankel LLP, as Co-Counsel to the Ad Hoc Committee of

4    Governmental and Other Contingent Litigation Claimants, for

5    Allowance of Compensation for Professional Services Rendered

6    and for Reimbursement of Actual and Necessary Expenses

7    Incurred for the Period from October 1, 2021 through January

8    31, 2022 for Kramer Levin Naftalis & Frankel LLP, Other

9    Professional, period: 10/1/2021 to 1/31/2022, fee:

10   $3,832,741.50, expenses: $67,611.02. filed by Kramer Levin

11   Naftalis & Frankel LLP. (ECF #4562)

12

13   HEARING re Application for Interim Professional Compensation

14   / Sixth Interim Fee Application of Houlihan Lokey Capital,

15   Inc., Investment Banker and Co-Financial Advisor to the Ad

16   Hoc Committee, for Compensation and Reimbursement of

17   Expenses for the Period from October 1, 2021 through January

18   31, 2022 for Houlihan Lokey Capital, Inc., Other

19   Professional, period: 10/1/2021 to 1/31/2022, fee:

20   $800,000.00, expenses: $2,683.48. filed by Houlihan Lokey

21   Capital, Inc. (ECF #4556)

22

23

24

25

Page 13

1    HEARING re Sixth Interim Application of Bielli & Klauder,

2    LLC for Compensation for Services Rendered and Reimbursement

3    of Expenses Incurred as Counsel to the Fee Examiner David M.

4    Klauder, Esquire for the period: 10/1/2021 to 1/31/2022,

5    fee:  $220,000.00, expenses: $0.00. filed by Bielli &

6    Klauder, LLC. (ECF #4524)

7

8    HEARING re Motion for Reconsideration, re: Estate of David

9    Jonathan Ecke, claim number No. 628554 filed by Maria Ecke,

10   with hearing to be held on 2/17/2022 at 10:00 AM at

11   Videoconference (ZoomGov) (ECF #4296)

12

13   HEARING re Motion to Allow/Motion for Leave to File Late

14   Claim Under Rule 9006 (Motion to Accept the Personal Injury

15   Claim No. 628554 for the Estate of David Jonathan Ecke)

16   filed by Maria Ecke, with hearing to be held on 2/17/2022 at

17   10:00 AM at Videoconference (ZoomGov) (ECF #4297)

18

19   Notice of Hearing for Motion for Reconsideration, re: Estate

20   of David Jonathan Ecke, claim number No. 628554 AND Motion

21   to Allow/Motion for Leave to File Late Claim Under Rule 9006

22   (Motion to Accept the Personal Injury Claim No. 628554 for

23   the Estate of David Jonathan Ecke) with hearing to be held

24   on 4/27/2022 at 10:00 AM at Videoconference (ZoomGov)(RDD)

25   (related document(s)4297, 4296) (ECF #4358)

Page 14

1    Certificate of Mailing (related document(s) (Related Doc #

2    4358))

3

4    Objection to Motion / Debtors' Omnibus Objection to Maria

5    Ecke's Motions (I) for Reconsideration and (II) to Accept

6    Personal Injury Claim No. 628554 for The Estate of David

7    Jonathan Ecke (related document(s)4297, 4296) filed by James

8    I. McClammy on behalf of Purdue Pharma L.P. (ECF #4680)

9

10   Supplemental Statement/Motion for Reconsideration, re:

11   Estate of David Jonathan Ecke, claim number No.

12   628554; Motion to Accept the Personal Injury Claim No.

13   628554 for the Estate of David Jonathan Ecke (related

14   document(s)4297, 4296) filed by Maria Ecke with hearing to

15   be held on 4/27/2022 at 10:00 AM at Videoconference

16   (ZoomGov) (ECF #4698)

17

18   Supplemental Statement/Amended Supplemental Statement

19   /Motion for Reconsideration, re: Estate of David Jonathan

20   Ecke, claim number No. 628554 ; Motion to Accept the

21   Personal Injury Claim No. 628554 for the Estate of David

22   Jonathan Ecke (related document(s) 4698) and (related

23   document(s)4297, 4296) filed by Maria Ecke. (ECF #4701)

24

25

1    HEARING re Motion to File Proof of Claim After Claims Bar

2    Date filed by Steven J Maltman with hearing to be held on

3    4/27/2022 at 10:00 AM at Videoconference (ZoomGov) (ECF

4    #4497)

5

6    Notice of Hearing Regarding Late Claim Motions (Steven

7    Maltman & Timothy Maxwell) (related document(s)4498, 4497)

8    (ECF #4511)

9

10   Objection to Motion / Debtors' Omnibus Objection to Motions

11   to File Proofs of Claim after Claims Bar Date Filed by

12   Steven Maltman and Timothy Maxwell (related document(s)4498,

13   4497) filed by James I. McClammy on behalf of Purdue Pharma

14   L.P. (ECF #4681)

15

16   HEARING re Motion to File Proof of Claim After Claims Bar

17   Date filed by Timothy Maxwell with hearing to be held on

18   4/27/2022 at 10:00 AM at Videoconference (ZoomGov) (ECF

19   #4498)

20

21   Notice of Hearing Regarding Late Claim Motions (Steven

22   Maltman & Timothy Maxwell) (related document(s)4498, 4497)

23   (ECF #4511)

24

25

```
1    Objection to Motion / Debtors' Omnibus Objection to Motions

2    to File Proofs of Claim after Claims Bar Date Filed by

3    Steven Maltman and Timothy Maxwell (related document(s)4498,

4    4497) filed by James I. McClammy on behalf of Purdue Pharma

5    L.P. (ECF #4681)

6

7    HEARING re Motion to Authorize /Motion of Liquidation Under

8    the Tort Laws Re: Requesting Payment for Claim 6492 filed by

9    Redbow NLN with hearing to be held on 4/27/2022 at 10:00 AM

10   at Videoconference (ZoomGov) (ECF #4529)

11

12   Notice of Hearing Regarding Motion of Liquidation under the

13   Tort Laws (related document(s)4529) filed by James I.

14   McClammy on behalf of Purdue Pharma L.P.. with hearing to be

15   held on 4/27/2022 at 10:00 AM at Videoconference (ZoomGov)

16   (ECF #4596)

17

18   Objection to Motion / Debtors' Objection to Redbow NLN's

19   Motion of Liquidation under the Tort Laws (related

20   document(s)4529) filed by James I. McClammy on behalf of

21   Purdue Pharma L.P. (ECF #4679)

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde
```

1    A P P E A R A N C E S :

2

3    DAVIS POLK WARDWELL LLP

4         Attorney for Debtors

5         450 Lexington Avenue

6         New York, NY 10017

7

8    BY:   MARSHALL SCOTT HUEBNER (TELEPHONICALLY)

9         CHRISTOPHER ROBERTSON (TELEPHONICALLY)

10        JACQUELYN KNUDSON (TELEPHONICALLY)

11        JAMES I. MCCLAMMY (TELEPHONICALLY)

12

13   BIELLI KLAUDER

14        Attorney for Fee Examiner

15        1204 North King Street

16        Wilmington, NY 19801

17

18   BY:   THOMAS BIELLI (TELEPHONICALLY)

19        DAVID KLAUDER (TELEPHONICALLY)

20

21   ALSO PRESENT TELEPHONICALLY:

22   WAYNE B. ANDERSON

23   MARIA ECKE

24   MARCIA HELMS

25

1                    P R O C E E D I N G S

2            THE COURT:  Okay.  Good morning.  This is Judge

3    Drain.  We're here in In re Purdue Pharma LP, et al.  The

4    hearing today is being held remotely primarily by Zoom,

5    unless someone does not have access to a screen in which

6    case they're appearing by telephone.  I have the amended

7    agenda for today's hearing, and I'm happy to go down the

8    agenda in the order set forth on the agenda.

9            MR. HUEBNER:  Good morning, Your Honor.  Can you

10   hear me clearly?

11           THE COURT:  Yes.

12           MR. HUEBNER:  Thank you.  Good morning, Your

13   Honor.  For the record, Marshall Huebner of Davis Polk &

14   Wardwell on behalf of the Debtors.

15           Your Honor, one suggested tweak to the agenda, in

16   looking up at many boxes on the screen, it occurred to me

17   that if we do the fee application in the first part of the

18   section II, we can probably get a lot of people off the

19   phone and a lot of meters off much more quickly.

20           THE COURT:  Okay.

21           MR. HUEBNER:  So the injunction should take a few

22   minutes and then, if it's okay with the Court, we'd actually

23   do Number VI as Number II.

24           THE COURT:  All right.  That's fine.

25           MR. HUEBNER:  Okay.  So Your Honor, for the

Page 19

1    record, Marshall Huebner.

2             The first item up on the agenda is the Motion to

3    Extend the Preliminary Injunction.  I think, as well as all

4    parties, the Second Circuit granted our exact requested very

5    expedited schedule.  Oral argument on the appeal is this

6    Friday at 10 a.m., it's set on the calendar.

7             Based on the expedition and the seriousness with

8    which, of course, the Second Circuit has taken this all to

9    date, we have hope that the ruling will also come in an

10   expedited manner.

11            The injunction is uncontested.  It extends the

12   injunction until 30 days after the Second Circuit rules

13   because, as has always been the case, we will all need to

14   recalibrate and figure out a way forward based on the exact

15   contours of the Second Circuit's ruling.  It does provide,

16   analogous to what has been provided in other motions in this

17   case, an off-ramp.  If for some reason the Second Circuit

18   doesn't rule for an awfully long time and people feel that

19   it's just not appropriate to sit here for an unusually

20   extended period, there is an off-ramp described in the

21   motion and set forth in the order that allows any part on or

22   after July 15 to move a for cause shown on notice to shorten

23   or terminate the injunction.  Happily, as with -- I believe

24   the last we did two or three injunction exceptions -- we

25   finally got the relief that we need, and there are no

Page 20

1    objections at all, and so we ask that this be entered as

2    requested.

3            THE COURT:  Okay.  All right.  I will grant the

4    motion which, as you said, is unopposed.  That grant is

5    consistent with my prior grants of the Debtors' motions for

6    extension of the preliminary injunction pending the Debtors'

7    appeal of the district court's ruling on confirmation to the

8    Second Circuit.  I'm not going to reiterate those rulings

9    today.

10           I'll just note them and state that I'm granting

11   the extension for the same reasons as stated in those prior

12   rulings.  The Second Circuit's determination of appeal is

13   clearly a critical gating item in these cases, and for the

14   reasons that I previously laid out in the prior hearings,

15   the prospects of the Debtors' reorganization would be

16   irreparably damaged if the injunction were lifted now before

17   the Second Circuit's decision.

18           So you can email the proposed order which I've

19   reviewed which includes all the exhibits to chambers.  As I

20   understand it, that order simply updates the extension date

21   and includes the -- a proviso regarding the right to seek to

22   shorten or terminate the injunction if a decision isn't

23   issued by July 15th.

24           MR. HUEBNER:  It does, Your Honor.  Thank you.

25   (indiscernible) the uncontested matters are II through VI.

Page 21

1   As we just discussed, we'll do VI first, which hopefully a

2   lot of these boxes are appearing (indiscernible) the virtual

3   podium to Mr. Robertson (indiscernible) --

4           THE COURT:  Okay.  Very well.

5           MR. ROBERTSON:  Hi.  Good morning, Your Honor.

6   For the record, Christopher Robertson, Davis Polk &

7   Wardless, on behalf of the Debtors.  Can I be heard clearly?

8           THE COURT:  Yes, you can.

9           MR. ROBERTSON:  I'm happy to report that

10  resolutions have been reached with the fee examiner on every

11  single fee application.  In fact, Davis Polk has prepared a

12  form of omnibus order that clearly reflects the agreed

13  reductions and the net amounts to be paid to the CC

14  professionals, ad hoc committee professionals, Debtors'

15  professionals and to the examiner pursuant to the various

16  settlement motions approved over the course of these cases.

17          To be clear, Your Honor, the agreed reductions are

18  further adjustments to the amounts requested in the various

19  fee applications.  To respect the process consistent with

20  past practice in these cases, we would propose to submit the

21  form of order reflecting the proposed reductions to Your

22  Honor following this hearing for your review.

23          I'm happy to address any questions that the Court

24  may have for me.  The fee examiner is present today, as well

25  as our representatives from the various applicants.

```
 1              THE COURT:  Okay.  Let me make sure I heard you

 2     correctly.  The fee applications, the interim fee

 3     applications that I have before me, reflect certain

 4     reductions, in some cases, quite substantial ones.

 5              I think what you just said to me is that in

 6     addition to those, in addition to the reduced fees being

 7     sought in the interim applications, there are further

 8     reductions that have been agreed to.

 9              MR. ROBERTSON:  That's exactly right, Your Honor.

10     So each professional, you know, generally does make certain

11     voluntary reductions.  So we'll place those in the fee

12     applications.

13              After the applications are filed, the fee examiner

14     prepares a report for each one and, you know, each

15     professional has a discussion with the fee examiner and

16     will, you know, agree to further reductions as appropriate.

17     Those further reductions are what will be reflected in the

18     order.  They're not reflected in what was submitted, you

19     know, 45 days ago.

20              THE COURT:  Okay.

21              MR. ROBERTSON:  Very good.

22              THE COURT:  And I think I have counsel for the fee

23     examiner on the line.

24              MR. KLAUDER:  Good morning, Your Honor.  David

25     Klauder, the actual fee examiner.  My counsel, Mr. Bielli,
```

Page 23

```
 1   is on as well.  But I'm happy to answer any question you

 2   have.

 3            THE COURT:  I just want to ask you whether you

 4   agree with what Mr. Robertson said and that the order that

 5   you've reviewed reflects the agreed further reductions for

 6   the interim applications.

 7            MR. KLAUDER:  It does, Your Honor.

 8            THE COURT:  Okay.  So I've gone through these

 9   pretty carefully, these applications, and I say that knowing

10   that the fee examiner and his counsel have gone through them

11   even more carefully and have had the opportunity to discuss

12   them with the applicants.

13            So in light of that and in light of the agreed

14   further reductions, what I'm going to do now is simply

15   address certain issues that I've noted.  If they have

16   already been addressed in the additional voluntary

17   reductions, then they don't need to be addressed further.

18   If they haven't been, I would like the fee examiner to

19   discuss them with the particular professional.  And I think

20   in each case, except maybe one, they can be addressed in the

21   light of the standard holdback that I've been granting here

22   and it would not prevent the grant of the application,

23   although if there's a particular issue that can be

24   identified and resolved, that can be folded into the order

25   that you're going to be submitting.
```

1            Again, you may well have addressed these already,

2    and I don't really need to have a dialogue on them or a

3    colloquy on them either with the fee examiner's counsel or

4    in addition the professional.  But let me just raise them.

5            The Debtors have a number of counsel.  They have

6    primary counsel for the bankruptcy which is Davis Polk.

7    They have counsel that work on intellectual property, patent

8    litigation and the like.  They have counsel that have been

9    involved with primary responsibility for dealing with the

10   Department of Justice and other types of investigations, and

11   it appears clear to me, as I authorized their retention,

12   that those services were discrete enough so that you can

13   avoid duplication of effort except for the relatively modest

14   coordination so that the Debtors' primary counsel knows

15   generally what's going on.

16           I had some concern however that there might well

17   have been some unnecessary duplication of effort with the

18   Dechert professionals and the Debtors related to negotiation

19   of the Chapter 11 plan.  And to some extent, although a

20   lesser extent between them and Arnold & Porter and perhaps

21   Skadden on the document depository.  So that's just

22   something I would like you to, if you haven't looked into,

23   to look into.

24           Again I'm prepared to grant these applications.

25   But these are interim applications and they have -- we've

Page 25

1    contemplated holdbacks and I think the fee examiner, as is

2    appropriate, has been doing a comprehensive review.

3    Obviously one doesn't evaluate a professional in the light

4    of hindsight.  That's not appropriate.  But on the other

5    hand, by doing that comprehensive review, you can get a

6    sense of each counsel's tasks and why they were doing

7    certain things that, at least at first glance, might appear

8    to be overlapping.

9              The second point is a relatively minor one.  At

10   least one of the professionals, again, it's Dechert, but

11   maybe others too, have charged for budgeting, you know, the

12   budgeting that I find useful that is in the U.S. Trustee

13   guidelines.  And unless I'm missing something, I don't think

14   that is something that clients generally pay for.

15             The Congress clearly wanted the Bankruptcy Court

16   to apply billing judgment like a well-informed client would

17   and when considering fee applications under Section 330 and

18   331 of the Bankruptcy Code.  And it seems to me that

19   providing a budget for prospective future services is a

20   planning tool that clients use, and a good one.  But it's

21   not really something that clients pay for.  It's something

22   that's expected.

23             Now if I'm wrong about that, if that's

24   traditionally paid for by clients, then fine.  But to me,

25   that doesn't seem to be something that should be paid for,

Page 26

1    unlike the time for preparing fee applications, which is

2    something that Congress clearly recognized is unique to the

3    Bankruptcy Code, something that clients outside of

4    bankruptcy don't have to prepare.

5         The other comment I had, and I will note that I

6    had it at the last hearing on this too, and the committee's

7    investment banker, Jefferies, took it to heart and agreed to

8    a 50 percent reduction of its monthly fee, its fixed monthly

9    fee in light of that comment which was at least for some of

10   the financial advisors, primarily the investment bankers, it

11   appeared to me that their work would be substantially

12   reduced at this point, actually at the point of the last fee

13   hearing.

14        Obviously the professionals' work generally was

15   not substantially reduced given the appeals and the

16   prolongation of the case.  But investment banker work can be

17   evaluated as to whether that work really was continuing like

18   the lawyers' work did, like the work of Prime Clerk, the

19   work of the consultants for tax purposes and the like, the

20   work for AlixPartners.

21        All of those things, you know, I can see from the

22   time records there's a substantial amount of time, and it's

23   understandable because the case was prolonged.  Where I'm

24   heading to on this is that in looking at the actual hours

25   spent by PGT, the investment banker for the company, and

Page 27

```
 1    what I've just talked about, I think a normal client would

 2    at this point have said to PGT, you know, I understand

 3    you've been retained under 328(a).  I understand you were

 4    providing a monthly service that would be up and down.  But

 5    for these months, it was so clearly down that it's not

 6    something that one would normally anticipate full

 7    compensation for at the full monthly rate.

 8            I looked at the Houlihan application carefully in

 9    that light and it appeared to me that they actually were

10    doing a lot of work and maybe looked at it differently than

11    PGT in that regard.  So those were my comments on the fee

12    applications.

13            MR. KLAUDER:  Okay.  Thank you, Your Honor.  I

14    mean, just as a general point, I think all of those issues

15    were discussed in one way or another with various

16    professionals.  But we'll circle back and make sure that,

17    you know, it's appropriately addressed.

18            THE COURT:  Okay.  I mean, I had a feeling that

19    that would be the case given the sophistication of the fee

20    examiner and his counsel and the sort of obvious nature of

21    the issues I've identified.  But I wanted to get them out on

22    the record in any event.

23            So again, if these issues weren't addressed and

24    can be addressed before the order is submitted, great.  If

25    not, if you're in ongoing discussions, submit the order
```

Page 28

```
1   without that issue.  But the record should reflect that the

2   issue is preserved for a final hearing as well as for the

3   next interim hearing.

4           MR. KLAUDER:  Very well.

5           THE COURT:  Okay.  Thank you.  So I will grant the

6   applications, again, as I've just outlined.  Most of them

7   really did not have any issues whatsoever or had ones that

8   I'm assuming would have been addressed by the fee examiner.

9   So you can email that order to chambers when it's ready.

10          MR. KLAUDER:  Thank you, Your Honor.  We will.

11          THE COURT:  Okay.

12          MR. KLAUDER:  Is it okay if my counsel and I are

13  excused from the remainder of the --

14          THE COURT:  Yes.  Absolutely, and anyone who is on

15  from the various professionals who were on for their fee

16  applications only should be -- should leave at this point as

17  well.

18          MR. KLAUDER:  Thank you.

19          MR. BIELLI:  Thank you, Your Honor.

20          THE COURT:  Okay.

21          MR. ROBERTSON:  I think, Your Honor, I'm going to

22  turn the podium over to my colleague, Jaquelyn Knudson, to

23  handle the remainder of the (indiscernible) on the calendar.

24          THE COURT:  Sure.

25          MS. KNUDSON:  Good morning, Your Honor.  For the
```

Page 29

1    record, Jacquelyn Knudson, of Davis Polk & Wardwell, on

2    behalf of the Debtors.  Can I be heard clearly?

3              THE COURT:  Yes, you can.

4              MS. KNUDSON:  Thank you, Your Honor.  The next

5    four items on the agenda are the uncontested late claim

6    motions filed at Docket Numbers 4415, 4481, 4520 and 4525.

7    I believe at least a few of the movants are on Zoom today

8    and might want to be heard on their motions.

9              But as a preliminary matter, I wanted to note for

10   the Court that after consultation with the Creditors

11   Committee and the Ad Hoc Group of Individual Victims, and

12   based on the individualized assertions in the motions, the

13   Debtors believe that there is a colorable basis for granting

14   each of these requested extensions under the so-called

15   Pioneer factors.

16             I'm happy to walk through the Debtors'

17   individualized assessment of the assertions in each motions

18   as we proceed down the agenda.

19             THE COURT:  Okay.

20             MS. KNUDSON:  First --

21             THE COURT:  Can I just ask you one question that

22   pertains to I think three of these -- of these uncontested

23   motions, which is this.  Has each of these people now filed

24   a claim?  I couldn't really tell.  I saw a claim form from

25   one of them.  But I didn't know whether they each have now

Page 30

1    filed a claim.  If not, I would need to set a date for them

2    to do that.

3            MS. KNUDSON:  Certainly.  So Mr. Martinez, Ms.

4    Helms and Mr. Bratton have all filed proofs of claim.  It's

5    our understanding that Mr. Anderson has not yet filed a

6    proof of claim.  So as Your Honor suggested, we would

7    propose entering some date by which he must file the claim

8    for it to be allowed as timely.

9            THE COURT:  Okay.  All right.  So I have read each

10   of the motions.  Each movant is unrepresented by counsel, is

11   pro se.  I guess the first one is Mr. Martinez, Tristan

12   Martinez.  I don't know, Mr. Martinez, whether you're on the

13   phone for this or on Zoom.  No?  Okay.

14           So this is one that is similar to motions that

15   I've granted in the past on an uncontested basis.  Mr.

16   Martinez was incarcerated when these cases began, and he

17   asserts that he has not received ready access to news media

18   during that period.  And I guess given those assertions and

19   that law of the case so far, the motion's unopposed and

20   specifically not objected to by the Creditors Committee and

21   Ad Hoc Personal Injury Committee.

22           MS. KNUDSON:  That's correct, Your Honor.

23           THE COURT:  Okay.  All right.  I will grant that

24   motion.  I know you had a form of order covering each of

25   these four motions, and that form is fine, although again

Page 31

1    we're going to have to add a date for Mr. Anderson if I

2    grant it as to him.  The next one is Ms. Helms, Marcia

3    Helms.  Ma'am, I don't know if you're on the phone or on the

4    Zoom.

5             MS. HELMS:  Your Honor, I'm present.  I'm having a

6    little bit of trouble dropping on and off.  But I'm present.

7             THE COURT:  Okay.  I can hear you clearly.

8             MS. HELMS:  Okay.

9             THE COURT:  All right.  So, and I can see you now.

10   So Ms. Knudson, what was the -- obviously Ms. Helms is not

11   incarcerated.  What was the basis for the Debtors, the

12   Committees and the Personal Injury Claimants Committees'

13   agreement not to object to this one?

14            MS. KNUDSON:  Yes, Your Honor.  In her motion, she

15   asserts that, among other things, she is a disabled

16   individual who struggles physically and cognitively.  And

17   for those reasons, that delayed her timely filing of her

18   claim.

19            As I've done in the past, we consulted with the

20   Creditors Committee and the Ad Hoc Group of Individual

21   Victims, and all have consented to the relief requested in

22   the motion, that she be allowed to file a timely claim.

23            THE COURT:  Okay.  So obviously bar dates in

24   bankruptcy cases, which is a date by which the -- that's set

25   by order of the Bankruptcy Court by which claims need to be

1    filed are really important because it enables people to know

2    what the universe of claimants is, and it helps them to

3    negotiate a plan that allocates value and sort of sets the

4    playing field on the claims side as to what people can rely

5    on.

6              So let me ask you, Ms. Helms, were you aware of

7    the Purdue case?

8              MS. HELMS:  Not at all.

9              THE COURT:  Okay.  All right, and you didn't

10   receive any notices?

11             MS. HELMS:  Oh, no, sir.  No, sir.

12             THE COURT:  Okay.

13             MS. HELMS:  In fact my suggestion was to why

14   wouldn't they post it in the doctor or at the pharmacy or

15   somewhere where you would see it.  And that was one of my --

16             THE COURT:  Okay.

17             MS. HELMS:  That's what I would do if I were

18   trying to reach people.

19             THE COURT:  So you're not -- I mean, you didn't

20   see any of the advertisements, social media posts?

21             MS. HELMS:  No.  I don't -- I don't go on social

22   media.  My Facebook account is very old.  I don't go on

23   social media, and I didn't see anything on the television

24   about it except at one point in July of 2021, I saw a story

25   on the doctors' abuses in Florida.  And it made me think.

1    So I started to do a little bit of research and Purdue

2    Pharma is -- Perdue here is chicken.  So it was very

3    difficult to find this online.  And when I did finally find

4    it, it's very confusing because it's a Bankruptcy Court.

5    And bankruptcy to me means there's no money.

6            So shortly after I did that research, I found --

7    our home was hit by a tornado on September 4th of 2020, and

8    my life was a mess for quite some time.  So I couldn't find

9    all the records.  And you'll see that I eventually did find

10   so many records and proofs of damage.  In fact, my packet

11   was this thick.  So it took me another three or four months

12   or so to get it to you guys, and then it got lost at the

13   court.  But that's what happened.

14            THE COURT:  Okay.  All right.  I will grant this

15   motion.  The Debtors bear the burden of demonstrating that

16   the claimant received adequate notice of the bar date.

17            In a contested hearing, the Debtors might be able

18   to show that, given the case law that clearly recognizes

19   forms of mass notice where a debtor doesn't actually know of

20   a specific claimant.  But neither the Debtors nor the

21   Unsecured Committee nor the Ad Hoc Personal Injury Claimants

22   Committee want to engage in that litigation over this

23   particular claim.

24            It does appear to me that even though this motion

25   was filed fairly recently, that is the claim itself was

Page 34

1    filed in November and the motion's on for today's calendar,

2    there is an excuse for that which is literally an act of God

3    which is the tornado hitting Ms. Helms' house.  So I'll

4    grant the motion, and you can include her in the order.

5            MS. HELMS:  Thank you, Your Honor.

6            THE COURT:  Okay.

7            MS. KNUDSON:  Thank you, Your Honor.

8            THE COURT:  The next one on the calendar is the

9    motion by Wayne Anderson for leave to file a late claim.

10   Mr. Anderson, are you on the Zoom or on the call?

11           MR. ANDERSON:  I am, sir.

12           THE COURT:  Okay.  Good morning.  So let me ask

13   you the same question I asked Ms. Helms, Mr. Anderson.  Were

14   you -- were you aware of Purdue's bankruptcy any time

15   before, you know, the January/February of 2022?

16           MR. ANDERSON:  I knew a little bit about it, sir.

17   I don't really watch the news.  I'm 75 years old.  I'm a

18   disabled veteran, fully retired from the military.  I was

19   injured in the military, and I was put on oxycodone for over

20   23 years.  And I'm still on it at this time, sir, and it has

21   affected my memory and it's affected many things in my life,

22   including my marriage.

23           The VA is now trying to get me off this medicine.

24   I've been on it for over 23 years, and probably ten years

25   ago they put me through a detox so I could get off this

Page 35

1    stuff and they never did it.

2            THE COURT:  Mr. Anderson, let me be clear.  We're

3    not here today on the merits of your claim.  So you don't

4    have to convince me today that you have a claim against

5    Purdue.

6            My only question is whether you should be able --

7    be allowed to file it late.  And so I just -- again, you say

8    you don't really watch the news.  But I just want -- again,

9    I'm asking this question.  Had you heard of the Purdue

10   bankruptcy at all before, you know, January/February of this

11   year?

12           MR. ANDERSON:  I think what I would say is that I

13   did not know that I could submit a claim, sir.  I had no

14   idea about any of this.  I really did not know.

15           THE COURT:  Can I take it from your answer that

16   you did know about the bankruptcy but not whether you had a

17   claim?  I'm just -- I'm really trying to probe on that

18   issue.  And one of the -- let me explain one of the reasons.

19   you're just one person, and if it were just one person, I

20   might well not care.

21           But when I grant these motions, I set, with a

22   lowercase p, a precedent for future motions.  And because of

23   the importance of the bar date, the timeline here, I'm not

24   allowed to grant them lightly.  And it really comes down to

25   whether someone had notice and whether it was  within their

Page 36

1   reasonable control to file a claim.  So again, I just want -

2   - were you aware of the bankruptcy?

3           MR. ANDERSON:  I think I probably heard about it

4   on the news.  But I had no idea of what my options were.  I

5   really did not, and I feel like at some point, being on this

6   medicine all these years, that someone should have let me

7   know that I had some kind of recourse.  And I never knew

8   that I had any recourse.  And I decided that -- I thought

9   that I should try to see if I could become a part of this

10   claim process because I have suffered tremendously over all

11   these years and --

12           THE COURT:  I don't -- I'm not questioning that at

13   all.  I'm not questioning that.  It's just the timing point

14   that's important at this point.

15           MR. ANDERSON:  I have no media.  I have no media

16   at all.  I'm not a computer guy.  The only reason I'm on

17   here is because of a family member.  Otherwise I would have

18   had no idea how to do this.  I have no computer skills

19   really.  I really don't.

20           THE COURT:  I am going to adjourn this motion.

21   The case is at a really important sort of dividing point

22   depending on how the Circuit Court rules on the plan that's

23   in place.  I want to see whether there are other motions

24   like yours that are coming in.  One of the factors that I

25   need to consider is whether, if I grant a motion like this,

Page 37

1    it would open up the floodgates for more motions.  And I

2    will note there are more motions on today by people other

3    than people who are incarcerated and obviously clearly have

4    limitations on the news they can get.

5         I'm not going to deny your motion today.  But I'm

6    just going to keep it on the calendar.  I've heard

7    everything I think that I need to hear.  I think the key

8    factor is really largely, first, where the case is going.

9    If the Circuit, for example, did not grant the Debtors'

10   appeal, I think there's a good chance that late claims will

11   be considered anyway.  If the Circuit grants the appeal and

12   there's a plan in place, that factor would probably argue

13   against granting this motion.  But again, I also want to see

14   whether there are other people that are filing claims late

15   like this.

16        So Ms. Knudson, I don't know if there's something

17   I missed here that Mr. Anderson didn't tell me.  But I'm

18   concerned that he was aware of the bankruptcy case and

19   simply not knowing one's legal rights is not an excuse for

20   missing a bar date.  The case law is clear on that.

21        MS. KNUDSON:  Yes, Your Honor.  I think Mr.

22   Anderson has stated what was stated in his motion, that

23   being that he was prescribed opioids by the VA for quite

24   some time and that he didn't know --

25        THE COURT:  Right

Page 38

1           MS. KNUDSON:  -- and that he didn't know about

2    submitting a claim due to, in part, his lack of social media

3    and then also his decision not to engage with television and

4    other news outlets.

5           THE COURT:  Right, and that's fine.  If that was

6    the only thing, then I would totally agree with the decision

7    to not oppose this motion.  But being aware of the

8    bankruptcy case is a very important fact here.  And look,

9    there are lots of people, thousands of people, tens of

10   thousands of people whose lives have been upended by use of

11   OxyContin and opiates.  And that generally is not a basis

12   for missing the bar date unless, you know, there's something

13   more than that.  So I'm going to adjourn this matter.

14          MS. KNUDSON:  Yes, Your Honor.

15          THE COURT:  Obviously Mr. Anderson is a very

16   sympathetic person.  He's a veteran, and he was injured

17   while working in the service.  But again this is not about

18   the merits of the underlying claim.  It's about whether it

19   can be filed or not.  So I'll adjourn it and we'll see how

20   the case plays out.

21          One thing I would note to you, Mr. Anderson, is

22   that by adjourning this, you're not losing any time vis-à-

23   vis other claimants.  Under the plan, which is currently on

24   appeal, claims will be fixed in the future, i.e., the trust

25   will go through whether they should be allowed or not.  So

Page 39

1    there won't be distributions on claims like yours for some

2    time.  And clearly the record as far as when this claim --

3    this motion was filed is set.  So the adjournment doesn't

4    prejudice you legally.  It just -- I'm not prepared on this

5    record today to grant it.

6            So one thing that I would ask you to do, and this

7    is -- this is important.  I mentioned this at the start of

8    the hearing.  Unlike the other folks who have moved to have

9    their claim considered even though it's late, you haven't

10   actually filed a proof of claim.  You should do that

11   promptly.  You should get a proof of claim form.

12           The Creditors Committee or the Personal Injury Ad

13   Hoc Committee can point you to how to do that, how to get

14   the form.  You should fill it out and file it, and you

15   should do that by the end of -- by the end of July, okay?

16           MR. ANDERSON:  Yes, sir.

17           THE COURT:  Okay.  Very well.  Thank you.  Okay.

18   The last one of these on the calendar is the motion by

19   George Bratton, George Andrew Bratton, for leave to file a

20   late claim.  Is Mr. Bratton on Zoom or on the telephone?

21   Mr. Bratton?  No?

22           So Ms. Knudson, I confess I had an issue with this

23   one too.  Maybe there's more.  Maybe there's been more of an

24   investigation of this one than is laid out in the motion

25   itself.  Mr. Bratton basically says he's been unable to file

Page 40

1    his claim timely.  Again, the motion was made in March of

2    2022.  The bar date was July of 2020.  Because of the daily

3    effects of opioids, his age and his inability to afford an

4    attorney.  All of the personal injury claimants -- not all

5    of them, but I would say, in all likelihood, the majority of

6    them are hampered in their daily life by the effects of

7    opioids one way or another.

8           So I'm concerned about opening up the gates here

9    if I grant a motion just based on "the daily effects of

10   opioids" on Mr. Bratton.  Now on the other hand, if you or

11   the committee or the PI committee followed up and realized

12   that he's really in bad shape, he couldn't respond to

13   notices, he's been hospitalized, et cetera, I probably would

14   understand.  But this was pretty vague, this statement.

15          MS. KNUDSON:  Yes, Your Honor.  And I'll just

16   briefly say that I think the thing that the Creditors

17   Committee, the Debtors and the PI group focused on with

18   respect to Mr. Bratton's motion are the allegations of his

19   vision problems as well as health and mental problems that

20   allegedly prevented him from timely filing a claim.

21          And so, although as you noted, it is difficult in

22   these cases to draw a line, given the circumstances of this

23   case and acknowledging that the excusable neglect standard

24   is a very high bar to meet, after consulting with the

25   Creditors Committee and the Ad Hoc Group of Individual

Page 41

1   Victims, the Debtors determined that this likely rises to

2   the level of excusable neglect, again because of the mental

3   problems.

4           THE COURT:  Well again, and look, Mr. Bratton's

5   motion doesn't go into that level of detail.  If you and the

6   committee have done that due diligence, I agree with the

7   outcome and will therefore grant the motion.  The motion

8   really didn't lay into -- lay out that level of specificity,

9   and actually for an unrepresented person, really set out a

10  clear, cogent legal pleading.

11          But based on what you've told me as to Mr.

12  Bratton's health and physical condition, I'll grant the

13  motion.

14          MS. KNUDSON:  Thank you, Your Honor.

15          THE COURT:  Okay.

16          MS. KNUDSON:  With that, I'll turn the podium over

17  to my colleague, Mr. McClammy, for the next two agenda items

18  which are two motions brought by Ms. Ecke.

19          THE COURT:  Okay.

20          MR. MCCLAMMY:  Good morning, Your Honor.  For the

21  record, Jim McClammy, of Davis Polk & Wardwell, on behalf of

22  the Debtors.

23          The next two items on the agenda, at Items 7 and

24  8, are filed by Ms. Ecke, a motion for reconsideration and a

25  motion with respect to a late claim filing.  I believe Ms.

Page 42

1    Ecke is on the line, if she would like to be heard -- if

2    she'd like to be heard first.

3            THE COURT:  Okay.  Ms. Ecke, are you on Zoom or on

4    the phone?

5            MS. ECKE:  I am, Your Honor.  But my picture's not

6    showing up.

7            THE COURT:  Okay.  Well, I can -- I can hear you

8    clearly.  So that's fine.  Well, I now have a screenshot but

9    not of you.  But anyway, you can go ahead.  I can hear you

10   clearly.

11           MS. ECKE:  Good morning, Judge Drain.

12           THE COURT:  Good morning.

13           MS. ECKE:  I'm asking to find out what happened to

14   my deceased son, David Jonathan Ecke's Claim Number 628554.

15   I filed this claim late because I never received an order

16   from the Court to allow it.

17           The claim was filed a long time ago, and I spoke

18   to Eric Price, attorney for the Unsecured Creditors

19   Committee, who assured me that he would speak to the Sackler

20   attorneys to approve it because Eric Price had omitted to

21   tell me to file the claim initially.  Perhaps it was lost,

22   as Peter Sotille's Claim Number 16817 was, which was omitted

23   from the district court's paperwork.  But it's added now.

24           Perhaps I need David Jonathan Ecke's claim number

25   628554 to begin a nonprofit entitled a star for David to

Page 43

1    benefit Ukrainians who have been hit by both the Russians

2    and the Purdue Pharma LP which includes Mallinckrodt.

3    Purdue Case Number 19-23646-rdd and Case Number 20-12522-jtd

4    for Mallinckrodt in Delaware are conjoined because both

5    companies are owned by the members of the Sackler family who

6    produced deadly opioids which killed millions of people

7    throughout the world.

8             Ever since the Sacklers robbed me of my son, David

9    Jonathan Ecke, I have been depressed and, at moments, I have

10   time lapses.  Days go into weeks.  Weeks go into months.

11   Months go into years with my very bad depression.  I simply

12   lost track of time and also had trouble with lawyers and

13   statements that they were prolonging the late claim date.

14            I am now stating that my claim was sent in and the

15   Estate of David Jonathan Ecke should legally be able to be

16   included.  When I first filed my claim forms for Purdue

17   Pharma, et al. with the file clerk on April 12, 2020 for

18   Richard Ecke and directly Peter Sotille and myself, Maria

19   Ecke, with the last four digits of our Social Security

20   numbers on the original claim form, the instructional

21   paperwork states, "Creditor, also as referred as you

22   throughout, shall provide information responsive to the

23   questions set forth below.  Creditors may include parents,

24   foster parents and guardians submitting claims on behalf of

25   minors with neonatal abstinence syndrome (NAS).  If they're

Page 44

1    unable to answer certain questions at this time, the absence

2    of an answer by itself will not result in denial of your

3    claim.  You may be asked to provide additional information

4    at a later date.  You may amend or supplement your claim

5    after it is filed."  That's an unquote.

6           The key here is that I, Maria Ecke, an old, white,

7    disabled, divorced woman who has suffered because of this

8    drug with the death of her firstborn son, I am amending my

9    claim as are Richard Ecke, Andrew Ecke and Peter Sotille.

10   Include the future injuries that this Purdue and

11   Mallinckrodt bankruptcy has caused me and others.

12          Part 5 states, "Do you believe you have any other

13   claims against the Debtors based on or involving the

14   Debtors' production, marketing and sale of Purdue opioids

15   that are not based on personal injury?"  My answer should

16   now state yes, due to what's gone on in the Purdue Pharma

17   bankruptcy trial and the Mallinckrodt plc, et al. trial in

18   the U.S. Bankruptcy Courts.

19          In the Southern District of New York, Honorable

20   Judge Drain, your order was entitled, "Finding of Fact,

21   Conclusions of Law and Order Confirming the 12 Joint Chapter

22   11 Plan of Reorganization of Purdue Pharma LP and Its

23   Affiliated Debtors."  The Mallinckrodt PLC restructuring in

24   the Bankruptcy Court in the district of Delaware, Case

25   Number 20-12522-jtd, with Honorable Judge John T. Dorsey,

Page 45

1   the order was entitled, "Finding of Fact, Conclusions of Law

2   and Order Confirming Fourth Amended Joint Plan of

3   Reorganization with Technical Modifications of Mallinckrodt

4   plc and Its Debtor."

5           Both of the cases involved the Sackler family who

6   owns these companies and the cases are very similar because

7   many victims have died due to opioids.  And you can see this

8   is my son right here.  That's who died.  He was an

9   accomplished artist.  Let me show you another picture.  He

10  was an accomplished artist who just wanted to draw plants

11  and do -- become a doctor in botany like my grandmother was.

12  And in addition, I'm an old Ukrainian lady.  Anyway, in this

13  -- okay.

14          In an undated letter, this is the undated letter.

15  Its only postmark is First Class U.S. Postage paid.  It says

16  no date when mailed.  There's no date inside the letter at

17  all.  But yet when Mallinckrodt was confirmed, there's a

18  date postmarked.

19          THE COURT:  I'm sorry.  Ms. Ecke, the first

20  letter, what was that letter?  What was it?

21          MS. ECKE:  That was when you had to vote by, I

22  believe.

23          THE COURT:  But in which case?

24          MS. ECKE:  Amended --

25          THE COURT:  Is it in the Mallinckrodt case?

```
 1              MS. ECKE:  It's in Mallinckrodt case.

 2              THE COURT:  All right.  This is not the

 3    Mallinckrodt case, Ms. Ecke.

 4              MS. ECKE:  I understand that, Your Honor.  But I'm

 5    just stating a fact.

 6              THE COURT:  Well, but I'm going to cut you off at

 7    this point.  I think I understand what's going on in this

 8    motion.  I really didn't entirely before I heard from you.

 9    So I appreciate hearing from you.  I'll come back to you

10    after I hear from the Debtors' lawyer.

11              But -- and you can -- you can respond at that

12    point.  But I'm not going to go on further in the hearing if

13    we're going to be talking about the Mallinckrodt case, which

14    is a different case involving a different company.

15              MS. ECKE:  I understand, Your Honor.  It's just

16    the cases are very similar and --

17              THE COURT:  Well, there are a lot of similar cases

18    in the world, Ms. Ecke.  I can tell you that the Sacklers do

19    not own the Mallinckrodt debtors.  And other than legal

20    issues that are raised in each case, there is no connection

21    between the companies.

22              MS. ECKE:  Who owns that company then?

23              THE COURT:  Not the Sacklers or any of their

24    affiliated entities.

25              MS. ECKE:  But I want to talk about attorneys
```

Page 47

1   later.

2               THE COURT:  All right.  Mr. McClammy, maybe you

3   can help me on this.  It really was not clear to me from

4   this motion, and I appreciate Ms. Ecke is pro se.  The claim

5   that she's talking about here is on behalf of David Jonathan

6   Ecke's estate, Number 628554.  Has that claim been filed?

7               MR. MCCLAMMY:  That claim has been filed, Your

8   Honor.  It was filed late.  But it has been filed.

9               THE COURT:  And when was it filed?

10              MR. MCCLAMMY:  Let me just confirm if there is a

11  date on it.  I'm looking at the claim form now, Your Honor.

12  It was filed in November 2021, Your Honor.

13              THE COURT:  Okay, and there were four claims --

14  I'm sorry, three claims filed by or on behalf of people

15  named Ecke, Maria Ecke's claim, 16810, Richard Robert Ecke,

16  22855 and Andrew Richard Ecke, 23016.  The Debtors also

17  reference a claim filed on behalf of or by Peter Sotille,

18  16817.  Do these claims refer to or are based on the claims

19  of David Jonathan?

20              MR. MCCLAMMY:  Your Honor, it's unclear from

21  looking at them.  For example, if you were to look at Claim

22  Number 16810 and then the late-filed claim at 628554, the

23  language in them is very similar.  The amount sought of $242

24  million is the exact same.  It's unclear to us.  It is

25  possible that the difference is that these are the claims of

Page 48

1    the individuals having suffered the loss of a son or sibling

2    as opposed to a claim on behalf of the estate directly.

3            THE COURT:  Okay.

4            MR. MCCLAMMY:  But that's as best as we are able

5    to discern.  With respect to the relief that Ms. Ecke is

6    seeking, it seemed that it might be threefold between the

7    motion for reconsideration and the late claim motion, the

8    first of which might be reconsideration of the issues with

9    respect to payment on those claims for use of the fund as

10   she states --

11           THE COURT:  Actually I don't think that the motion

12   really raises that point at all, and I've already ruled on

13   that twice.

14           MR. MCCLAMMY:  Exactly.

15           THE COURT:  To the extent it seeks that relief,

16   which I don't think it does, but it's clearly not warranted

17   on the facts set forth in this motion, a motion which at

18   this point would have to be under Rule 60 for

19   reconsideration, would be in respect of orders that I issued

20   in December of 2020 and then again on January 11, 2022, both

21   of which are outside the date for relief under Rule 59.

22           The request for relief under Rule 60(b), which is

23   the federal rule incorporated by Bankruptcy Rule 9024, that

24   permits reconsideration of a prior order is recognized as a

25   request for extraordinary relief invoked only upon a showing

Page 49

1    of exceptional circumstances.  US Bank NA v. Pinnock (In re

2    Pinnock) 833 F. App'x 498, 500, quoting Central Vermont

3    Public Service Corp. v. Herbert, 341 F.3d 186, 190, (2d Cir.

4    2003).

5            One of the grounds for vacating a prior order on

6    reconsideration is excusable neglect which I guess addresses

7    the second possible aspect of the motion.  And I'll hear you

8    on that first.

9            But to the extent that it's based on something

10   other than excusable neglect, namely the catchall provision

11   of Rule 60(b)(6), the law is clear that if the reasons

12   offered for relief from judgment can be considered in one of

13   the more specific clauses of Rule 60(b) such as the

14   excusable neglect provision of 60(b)(1), such reasons will

15   not justify relief under Rule 60(b)(6).  Again see In re

16   Pinnock, 833 F. App'x 498 at 501, quoting United States v.

17   International Brotherhood of Teamsters, 247 F.3d 370, 391-

18   392, (2d Cir. 2001).

19           The Pinnock court goes on to say, "This is true

20   even where the relief sought pursuant to a more specific

21   Rule 60(b) cause is denied."

22           So it really does not appear to me that Ms. Ecke

23   was seeking reconsideration of those two prior orders; one

24   of which is more than a year old so it wouldn't even be

25   covered by Rule 60(b).  But in any event, I'll deal with

Page 50

1    that request to the extent it is such a request when I

2    consider what you've argued is the other basis for the

3    motion which is to have the claim be deemed timely, although

4    it was filed late.

5              MR. MCCLAMMY:  Yes, Your Honor, and on that, we

6    note Ms. Ecke has, on behalf of herself and others, filed

7    timely proofs of claim already in this bankruptcy

8    proceeding.

9              The claim, as we've reviewed it, that is thought

10    to be filed late is very similar in nature to the claims

11    that have been filed timely and to the extent as we're able

12    to see from the papers, if the argument is essentially that

13    Ms. Ecke wasn't aware of this particular claim or type of

14    claim, we do not believe that that meets the Pioneer

15    standard for excusable neglect and given that the

16    involvement here in these cases, the awareness of these

17    bankruptcy proceedings, we do not believe that that standard

18    has been met here.

19              To the extent that Ms. Ecke is requesting just to

20    amend her claim, one of the existing timely filed claims,

21    that can be done without needing kind of leave of court.  We

22    do note however that in suggesting that the claim may be

23    amended, we are not agreeing in any way with the statements

24    that have been made in connection with the filings or the

25    proof of claim with respect to Mallinckrodt, the Sackler

Page 51

1     family or otherwise, only noting that there is a possibility

2     for Ms. Ecke to amend her claim if she sees fit.

3              THE COURT:  Okay.  All right.

4              MS. ECKE:  Your Honor, may I interrupt for a

5     second?

6              THE COURT:  Well, no.  I was going to say -- I was

7     going to ask you if you had anything more to say.  So you're

8     not interrupting.  But go ahead.

9              MS. ECKE:  Yes.  Thank you.  First of all, I am

10    amending Richard Ecke's, David Ecke's and Peter Sotille's

11    claim in addition to myself.

12             THE COURT:  But -- but --

13             MS. ECKE:  And --

14             THE COURT:  Ms. Ecke, this may seem unduly

15    technical to you.  But it really isn't.  I only decide

16    what's before me.

17             MS. ECKE:  Okay.

18             THE COURT:  A motion to amend a claim or for leave

19    to amend a claim is different than the motion that you

20    filed.  I have to look at the claim that you are seeking to

21    amend and then I have to decide, if there's an objection to

22    that motion, whether it is properly viewed as an amendment

23    as opposed to a brand new claim, i.e., were the essential

24    facts set forth in the original claim that was timely filed

25    or instead is this a brand new claim and it just says

Page 52

1    amendment, but it really isn't an amendment.

2              So what is before me really doesn't cover those

3    issues.  I don't have the claims in front of me.  I don't

4    have the claim on behalf of David's estate in front of me

5    because it wasn't the relief that was being sought.  So

6    that's a separate issue.

7              And frankly, the Debtors' lawyers are well versed

8    in that issue.  If one of these claims really can be read as

9    asserting a claim not only on behalf of the claimant, let's

10   just take yours, for example, but also, based on the facts,

11   can be asserted on behalf of, you know, your son's estate,

12   decedent's estate, and maybe you're the estate

13   representative, maybe Richard is, maybe Andrew is, maybe

14   Peter is.  You know, that's a fairly easy call and there

15   probably wouldn't even need to be litigation over it.

16             On the other hand, if those four claims assert

17   claims that are very different than Claim 628554, then it's

18   likely I would not grant that motion.  But that's a whole

19   separate body of case law and factual inquiry.

20             MS. ECKE:  Okay.  May I continue reading?

21             THE COURT:  You can go ahead.  Sure.

22             MS. ECKE:  In an undated letter concerning

23   Mallinckrodt Case Number 20-12522-jtd, Attorney Price

24   writes, "Dear Sir or Madam: Hello, my name is Eric Price and

25   I am one of the leading attorneys representing the Official

Page 53

1    Committee of Opioid-Related Claimants, the OCC, in the

2    Chapter 11 cases of Mallinckrodt PLC and its affiliates,

3    marked MLNK.  The OCC is made up of Kathy Strain, a

4    grandmother and mother of opioid abuse victims; number two,

5    Brendan Berthold, the spouse of a deceased opioid abuse

6    victim; number three, Garrett Hade, an opioid victim; number

7    four, Dr. Michael Masiowski, an emergency room physician,

8    number five, Care Health Centers, a hospital; and number

9    six, Blue Cross Blue Shield.  These six members are

10   dedicated," --

11           THE COURT:  I'm sorry.  Ms. Ecke, I'm going to

12   interrupt you because I -- this is all in your pleading.

13   I've read the pleading.  I've read this reference.  I have a

14   question for you.  I don't understand how this affects your

15   claim or this motion in the Purdue bankruptcy case.

16           MS. ECKE:  To my understanding, Your Honor, when

17   Judge Dorsey confirmed the Mallinckrodt case, he confirmed

18   that no victims other than -- other than the ones that took

19   the drug are allowed claims, and I find that extremely

20   unfair.

21           THE COURT:  But Ms. Ecke, that's not my case.

22   It's not even in this district.  It's in Delaware.

23           MS. ECKE:  I understand.

24           THE COURT:  This has nothing to do with the Purdue

25   case, and I'm going to cut this argument short.  It's just -

```
 1       - it's a waste of time.  I have no power to deal with that

 2       issue in any way.

 3                MS. ECKE:  Well, I don't understand how Eric Price

 4       can give me misinformation.

 5                THE COURT:  A, I don't know whether it's

 6       misinformation or not.  But more importantly, B, he's acting

 7       clearly in that letter that you quoted as council to the

 8       official committee in the Mallinckrodt case, not in this

 9       case.  So again, I have no --

10                MS. ECKE:  Yes, but he --

11                THE COURT:  I have nothing, no power and no -- I

12       have nothing to do with that case.

13                MS. ECKE:  I understand, Your Honor.  The only

14       thing is --

15                THE COURT:  All right.  Then we should move off of

16       this point then.  I'm sorry.  This is like a basic

17       understanding.

18                MS. ECKE:  Well, the only thing is he did say for

19       both cases.  He gave me misinformation.

20                THE COURT:  Well, what information are you relying

21       on for this motion in respect to the Purdue case?

22                MS. ECKE:  Oral conversations between Eric Price

23       and myself.

24                THE COURT:  No.  But what is it?  I don't --

25                MS. ECKE:  He did say that he would ask the
```

Page 55

1   Debtors and he assured me that he would ask the Debtors to

2   approve this.

3           THE COURT:  Well, okay.  I gather that the Debtors

4   have decided not to approve it.

5           MR. MCCLAMMY:  That's correct, Your Honor.  Based

6   on the facts and circumstances as we see them, we simply

7   don't see a basis for allowing the claim as a late claim,

8   and we have, as we always do, consulted with co-counsel for

9   the UCC and the individual victims and understand that they

10  are also supportive of the positions that we're taking

11  today.

12          MS. ECKE:  So I just have a question for the

13  Debtors.  Why is it that if -- first of all, if Judge Drain,

14  you did say that the Sacklers did not own Mallinckrodt.  I

15  beg to differ.  I think you erred because I believe it was

16  Irene Sackler that owned it.  And why was this order

17  confirmed in such an untimely manner?

18          THE COURT:  Which order?

19          MS. ECKE:  And where did the (indiscernible) go --

20          THE COURT:  I'm sorry.  Which order, Ms. Ecke, are

21  you referring to?

22          MS. ECKE:  The Mallinckrodt one.

23          THE COURT:  Okay.

24          MS. ECKE:  But nonetheless it is conjoined because

25  the funds go to that.

Page 56

1           THE COURT:  No.  It is not -- I'm sorry.

2           MS. ECKE:  And I'm wondering where --

3           THE COURT:  Ms. Ecke, I'm not going to hear any

4    more argument about the Mallinckrodt case one way or

5    another.  I'm sorry.

6           MS. ECKE:  I'm sorry.  But I was told by Eric

7    Price that it would be considered and joined, and why is he

8    an attorney on both committees?  That's court prejudice, I

9    feel.

10          THE COURT:  All right.  Do you have anything more

11   to add, Ms. Ecke?

12          MS. ECKE:  Just that part about all third-party

13   claims released and enjoined by the Bankruptcy Court either

14   stems from the bankruptcy itself or would necessarily be

15   resolved in the claims allowance process, not whether the

16   release and the injunction are integral to the restructuring

17   of the debtor/creditor relationship, Page 78 of Docket

18   Number 4246, Decision and Order by Judge McMahon, and Purdue

19   and Mallinckrodt releases are illegal because they purport

20   to override 11 USC 523(a)(7).

21          The Purdue and Mallinckrodt releases are not

22   permitted by the Bankruptcy Code because non-debtor

23   employees of Purdue and Mallinckrodt cannot receive a

24   broader discharge from governmental penalties claims through

25   Mallinckrodt's corporate bankruptcy filing than if they

Page 57

1   would if they filed personal bankruptcy.  Metromedia 1 --

2            THE COURT:  I'm sorry.  Ms. Ecke, I'm going to cut

3   you off here.  This has nothing to do with the merits of

4   your motion.  It's an issue that's up on appeal now --

5            MS. ECKE:  Well, when I talked about Judge --

6            THE COURT:  Excuse me.  Excuse me.  It's an issue

7   that's up on appeal now.  I'm not going to -- because of

8   that, I'm clearly not going to decide that issue now.  So

9   I'm going to give you my ruling.  Enough of this.  I'm

10  sorry.

11           The Courts instruct, and they're wise

12  instructions, to be deferential to pro se litigants because

13  they really don't understand certain things about the

14  Bankruptcy Code.  But I think one can clearly understand

15  that this issue is not an issue also before me.  It is

16  before the Second Circuit and/or before the district court

17  in any appeal in the Mallinckrodt case.  So I'm going to

18  give you my ruling at this point.

19           I have before me a motion that's labeled a motion

20  for reconsideration that is also then supplemented or

21  amended in a motion for reconsideration amended.  They are

22  Dockets 4698 and 4701 by Ms. Maria Ecke.  In this motion, it

23  is not entirely clear what relief Ms. Ecke is seeking.  But

24  the hearing today has I think clarified that relief to some

25  extent.

Page 58

1            In the motion, Ms. Ecke asks, "I am asking to find

2     out what happened to my deceased son, David Jonathan Ecke's

3     Claim Number 628554.  I filed this claim late because I

4     never received an order of the court to allow it."  The

5     claim itself states that -- or there's a motion that says

6     motion to accept personal injury claim 628554 for the Estate

7     of David Jonathan Ecke which states, "Dear Judge Drain: I

8     did not know that I was required to file a proof of injury

9     claim for my son, David Jonathan Ecke, prior to the bar

10    date.  Please accept this claim on behalf of our deceased

11    son.  This will help to start a foundation entitled, "A Star

12    of David," which will bring some warmth to the less

13    fortunate and help the mothers of Hearts of Hope, many of

14    whom lost their children due to opioids."  That's Docket

15    4297.

16            It appears to me that all three of these docket

17    numbers ultimately are seeking leave to have the claim filed

18    on behalf of David's estate, again, Claim Number 628554,

19    deemed timely filed, notwithstanding that it was filed in

20    November of 2021 when the claims bar date in these cases was

21    set for July 30, 2020, i.e., it was filed well over a year

22    late.

23            To the extent the motion seeks any other relief

24    than that, and it's conceivable -- at least the Debtors have

25    conceived that it seeks reconsideration of two orders that I

Page 59

1    issued in these cases, one dated December 16, 2020 and one

2    dated January 11, 2022 denying Ms. Ecke's request for

3    immediate payment of the claims that she actually filed

4    timely, and we'll get to those in a moment, that request

5    would be denied as not meeting the requirements of

6    Bankruptcy Rule 9024 incorporating Federal Rule of Civil

7    Procedure 60(b) for the reasons I've already stated in my

8    prior rulings denying the motion -- the earlier motion for

9    reconsideration and in my ruling today stating that this

10   motion sets forth no basis to reconsider the Court's ruling

11   not to prefer Ms. Ecke on her $242 million claims times four

12   over all of the other thousands of claimants who have filed

13   claims in these cases and are not yet being paid and are

14   waiting for a claims analysis, reconciliation and a balanced

15   process to take place.

16          The motion, that is, at least the motion for

17   reconsideration and the motion for reconsideration amended

18   also has at some length a discussion of a different

19   bankruptcy case, the case of the Mallinckrodt corporation or

20   company which is pending in the Bankruptcy Court for the

21   District of Delaware.

22          And in addition makes arguments in respect of the

23   validity of the third-party claims release approved by the

24   Bankruptcy Court in that case as well as at issue now

25   currently set for oral argument on Friday in the Second

Page 60

1    Circuit with respect to the Debtors' appeal of the district

2    court's ruling on that issue in this case.

3           As I noted during oral argument, I have absolutely

4    no jurisdiction and therefore no power to grant any relief

5    related to the Mallinckrodt case whatsoever, and therefore

6    that aspect of the motion for reconsideration and motion for

7    reconsideration amended is denied to the extent I can even

8    try to understand it, nor do I have the power to rule on the

9    third-party release issue in this case, having already ruled

10   on that issue, having been reversed on appeal and the issue

11   now being further on appeal to the Second Circuit.  Under

12   the divestiture doctrine, I clearly don't have the power to

13   interfere in that process at this point, and so that aspect

14   of the request for relief is also denied.

15          That takes us back to Ms. Ecke's request, as now I

16   fully understand it based on today's record, to have the

17   claim filed on behalf of the Estate of David Jonathan Ecke,

18   Number 628554, deemed timely filed.  The bar date, which

19   again was set for July 30, 2020, and bar dates generally,

20   "are critically important to the administration of a

21   successful Chapter 11 case.  They are not designed merely as

22   a procedural gauntlet but rather serve an integral part of

23   the reorganization process and the efficient administration

24   of bankruptcy cases."

25          MS. ECKE:  Your Honor, may I ask a question?

Page 61

1          THE COURT:  No, ma'am.  I'm still giving you my

2     ruling.  I'm sorry.  I was pausing --

3          MS. ECKE:  Sorry.

4          THE COURT:  -- to make sure I had the correct

5     cite.  See In re Ditech Holding Corp., 2021 Bankr. LEXIS

6     2085 (Bankr. S.D.N.Y. August 4, 2021) *11-12, internal

7     quotations and citations admitted.

8          Bar dates serve the important purpose of enabling

9     the parties in interest to ascertain with reasonable

10    promptness the identity of those making claims against the

11    estate and the general amount of the claims, a necessary

12    step in achieving the goal of successful reorganization.

13    See In re Calpine Corp., 2007 U.S. Dist. LEXIS 86541, *14-

14    15, (S.D.N.Y. November 21, 2007) and In re Drexel Burnham

15    Lambert Group, Inc., 148 B.R. 1002, 1008-10 (Bankr. S.D.N.Y.

16    1993).

17         Allowing late-filed claims, especially after a

18    debtor's plan is confirmed subjects the debtor to prejudice

19    because they would have to renegotiate settlements reached

20    in contemplation of the known claims against the estate.

21    Id.  The applicable rule with respect to the consideration

22    of a request to file a claim late after the bar date in a

23    bankruptcy case is Bankruptcy Rule 9006(b) which permits the

24    filing based upon excusable neglect.

25         The Supreme Court in Pioneer Investment Services

Page 62

1   Company v. Brunswick Associates Limited Partnership, 507 US

2   380 (1993), developed a two-step test for determining

3   whether a claim filed after the bar date was due to

4   excusable neglect and therefore should be permitted to be

5   filed late.

6           First, a movant must show that its failure to file

7   a timely claim constituted neglect as opposed to willfulness

8   or a knowing admission such as a strategic decision for

9   legal purposes, neglect generally being attributable to a

10  movant's inadvertent mistake or carelessness.  Id. at 387-

11  388.

12          After establishing neglect as opposed to

13  willfulness or knowledge of the bar date and the failure to

14  show any unknown basis for neglecting it, the movant must

15  show by a preponderance of the evidence that the neglect was

16  "excusable."  That analysis has to be undertaken on a case-

17  by-case basis; that is, based on the particular facts of the

18  case.

19          Although the Court is to be guided by and make the

20  determination balancing the following factors: a) the danger

21  of prejudice to the debtor, b) the length of the delay and

22  whether or not it would impact the case, c) the reason for

23  the delay, in particular whether the delay was in the

24  control of the movant and d) whether the movant acted in

25  good faith.  Id. at 395.

Page 63

1         However inadvertence, ignorance of the rules or

2    mistakes construing the rules do not usually constitute

3    excusable neglect.  Midland Cogeneration Venture LP v. Enron

4    Corp. (In re Enron Corp.), 419 F.3d 115, 125 (2d Cir. 2005).

5    As is clear from the Pioneer test, the claimant bears the

6    burden of demonstrating excusable neglect in failing to

7    timely file a claim.  Enron, 419 F.3d, at 121.

8         In the Second Circuit as well as in, to my

9    knowledge, the other Circuits, not all of those four factors

10   are weighed equally.  Instead the Second Circuit has "taken

11   a hard line" in applying the Pioneer factors.  The Court

12   held in the Enron case that I previously cited that the

13   third of the Pioneer factors, the reason for the delay and

14   whether it was within the reasonable control of the movant

15   is to be given the most weight in determining whether

16   excusable neglect has been shown.

17        Indeed the Court said in the Enron case the

18   equities will rarely if ever favor a party to who fails to

19   follow the dictates of a court rule and that where the rule

20   is entirely clear, we continue to expect that a party

21   claiming excusable neglect will, in the ordinary course,

22   lose under the Pioneer test.  Id. at 366-367.

23        The Circuit subsequently confirmed that that

24   principle applied with respect to requests to file claims

25   after a bar date in a bankruptcy case.  See generally In re

Page 64

1   Westinghouse Electric Company LLC, 2022 Bankr. LEXIS 391,

2   *19-20 and the cases cited therein.

3           Here Ms. Ecke, who, as I've already noted, has

4   been quite active in this case, filing numerous pleadings,

5   including the motions that I've already referenced that I

6   dealt with in the prior orders that I've noted, timely filed

7   months before the bar date four proofs of claim on behalf of

8   herself, Andrew Ecke, Richard Ecke and Peter Sottile.  It

9   appears clear to me therefore that Ms. Ecke had it well

10  within her ability to file this claim on behalf of David's

11  estate in a timely fashion.

12          The claims were all filed, I believe, in the

13  amount of $242 million.  They appear, at least it's been

14  represented to me -- I've not reviewed them -- to all be

15  based upon the death of David Ecke.  It is possible

16  therefore that Ms. Ecke may be able to amend one of those

17  claims to cover in a claim a claim by his estate and that

18  would fall within the rules as laid out in many cases,

19  including the Enron case, for permitting an amendment to a

20  proof of claim as opposed to filing a new claim on different

21  facts or a materially different legal basis.  But as far as

22  filing this claim late, Ms. Ecke has not shown excusable

23  neglect.

24          In addition to my analysis of the critical factor

25  that I've already given, the claim is well over a year late

Page 65

1    and, given the negotiation of the plan and the confirmation

2    of the plan, which may or may not be revived in some way,

3    shape or form depending on the results of the current

4    appeal, the debtor would be prejudiced by having another

5    standalone proof of claim for $242 million asserted late.

6    Generally speaking, the good faith argument goes in favor of

7    the movant and I find that here.

8           But also generally speaking, the good faith

9    argument is primarily relevant only if the Court finds that

10   the movant did not act in good faith.  I will note further

11   that the ostensible purpose of filing this claim which was

12   to start a foundation in David's name can certainly be

13   fulfilled in respect of any distributions that would be

14   going to the claimants under the claims that have already

15   been filed.

16          So I will deny the motion's request for leave to

17   file a late claim.  That's without prejudice to Ms. Ecke's

18   right to either assert that one of the claims that has

19   already been timely filed encompasses the claim that was

20   filed late or that the claim could be amended, which would

21   require a motion, Ms. Ecke, to encompass that claim on the

22   grounds that the claims as filed basically are consistent

23   with and don't assert a different claim from the claim

24   asserted in 628554.  So I will deny the motion for the

25   reasons that I've stated.

Page 66

1              So the next, and I think last matter, on the

2    calendar is a motion by Steven Maltman.  I'm sorry, by two

3    parties --

4              MS. ECKE:  Excuse me, Your Honor.

5              THE COURT:  -- Steven Maltman and Timothy Maxwell.

6              MS. ECKE:  May I ask a question?

7              THE COURT:  Okay.  Go ahead.

8              MS. ECKE:  In one of the previous hearings, you

9    asked a claimant what was the amount of her claim, and she

10   didn't answer you.  I'm just wondering why --

11             THE COURT:  I actually didn't ask her that

12   question --

13             MS. ECKE:  -- it is being (indiscernible) --

14             THE COURT:  I didn't ask her the amount of the

15   claim.  I had the amount of the claim because she had filed

16   it.

17             MS. ECKE:  Oh, okay.  I don't quite understand

18   what you --

19             THE COURT:  And it wasn't -- it was for

20   considerably less than $242 million.  So I'm going to move

21   on now, Ms. Ecke.

22             MS. ECKE:  Well, okay.  Your ruling was between

23   $3,500 and $48,000 per person.

24             THE COURT:  No.  I'm sorry.  I have not ruled on

25   anything as to the allowance of any claim.

```
 1              MS. ECKE:  I know that.  But it was in your 12th
 2    amended finding of facts --
 3              THE COURT:  Ms. Ecke, I'm sorry.  I'm just going
 4    to move on.  I've given you my ruling now.
 5              MS. ECKE:  Okay.
 6              THE COURT:  I've given you quite a bit of leeway.
 7              MS. ECKE:  Thank you so much.
 8              THE COURT:  It's just not -- this is not -- this
 9    is not --
10              MS. ECKE:  Thank you so much.
11              THE COURT:  -- germane to your motion.
12              MS. ECKE:  Thank you.
13              THE COURT:  Okay.  You're welcome.  So let me turn
14    to the next two matters.  They're very similar.  They I
15    think are following some sort of template.  They're motions
16    by Steven Maltman and Timothy Maxwell for leave to file late
17    claims, which are opposed by the Debtors.  Do I have either
18    Mr. Maltman or Mr. Maxwell on Zoom or on the phone?  No?
19    Okay.  Ms. Knudson, are you handling this one, these two?
20              MS. KNUDSON:  Yes, Your Honor.  Again, for the
21    record, Jacquelyn Knudson, of Davis Polk & Wardwell, on
22    behalf of the Debtors.
23              Just very briefly with respect to these two late
24    claim motions, as set forth in our omnibus objection, the
25    Debtors do not believe that the motions satisfy strict
```

Page 68

1    application of the excusable neglect standard set forth in

2    Bankruptcy Rule 9006 and the so-called Pioneer factors.

3    With respect to the most important factor, the reason for

4    the delay, the movants do not provide a sufficient reason

5    why they could not file proofs of claim prior to the July

6    30, 2020 bar date.  Although both movants are currently

7    incarcerated, as set forth in the motions, neither movant

8    was incarcerated until between five and seven months after

9    the bar date.

10            The remaining allegations set forth in the motions

11    regarding the global pandemic and Postal Service delays are

12    universally applicable circumstances that this Court

13    considered when granting the Debtors' requested 30-day

14    extension of the bar date back in June 2020.

15            Moreover, the Debtors believe that allowing these

16    claims would encourage other latecomers seeking to assert

17    claims against the Debtors related to opioid use to file

18    claims which would ultimately prejudice the Debtors and,

19    more importantly, the Debtors' creditors.

20            Finally the delay here has been substantial with

21    the movants seeking to file claims over 17 months after the

22    bar date.  As set forth in our objection, the Debtors did

23    consult with the Creditors Committee and the Ad Hoc Group of

24    Individual Victims, and neither of those groups objects to

25    the Debtors' position with respect to these late claim

Page 69

1    motions.

2            Accordingly, for these reasons and the reasons set

3    forth in our papers, the Debtors respectfully request that

4    the Court deny the motions.

5            THE COURT:  Okay.  All right.  I will deny each of

6    these motions.  I will incorporate my discussion generally -

7    - of the general standard that I just went through with

8    regard to Ms. Ecke's motion for excusable neglect as

9    supporting the permission of a late-filing proof of claim

10   and the importance of the bar date in a bankruptcy case.

11           Here, the bar date again was July 30, 2020.  That

12   was an extended bar date in light of the COVID pandemic.

13   Importantly, for each of these movants, the movant was

14   incarcerated well after that July 30, 2020 bar date.  Mr.

15   Maltman's pleadings state that he was incarcerated since

16   February 20, 2021, and Mr. Maxwell states that he has been

17   incarcerated for 14 months.  Given the date of his motion,

18   that would mean that he was incarcerated in December 2020 or

19   January 2021, a substantial period in each case after the

20   July 30, 2020 bar date.

21           While the Debtors and other parties in interest

22   have credited the representations of those incarcerated

23   during these cases, that they did not have sufficient notice

24   of the bar date to file a timely claim because of their

25   incarceration and restrictions on access to various forms of

1    media, these two claimants have provided no facts showing

2    that the filing of a timely claim or even one late but

3    before their incarceration was due to factors beyond their

4    reasonable control.

5           Under the Second Circuit case law therefore they

6    would be expected not to prevail on these motions, given the

7    hard line that the Circuit has taken on the third factor in

8    Pioneer, namely whether the filing of the claim in a timely

9    basis was within their reasonable control.

10          The other factors for consideration under the

11   Pioneer and Enron tests do not tilt the balance in favor of

12   the movants over the primary consideration which is that

13   filing a timely claim was within their control.  The length

14   of the delay here is substantial.  These motions -- I'm

15   sorry.  The claims were filed in December of 2021, and the

16   motions were filed in March of 2022.

17          In addition to the delay being substantial, the

18   delay before the incarceration was substantial, seven

19   months.

20          Finally there are two forms of prejudice here.

21   They're related, as I noted in my prior ruling which im

22   incorporating into this ruling.  The fact that a Chapter 11

23   plan was confirmed before the Court's consideration of the

24   motion is generally viewed as prejudice to the debtor or the

25   plan proponent.  The wrinkle here is that the Court's

Page 71

1    confirmation of the plan was reversed.  So that prejudice

2    would exist only if the Debtors were successful in their

3    appeal of that order and an amended plan were confirmed.

4            But in addition, the parties negotiated for

5    approximately a year on the treatment of personal injury

6    claimants such as Mr. Maxwell and Mr. Maltman, and to open

7    the door to claims like these under these circumstances has

8    been recognized under similar facts where substantial

9    negotiations have taken place as being prejudicial to the

10   other parties in interest in the case with the prospect of

11   more potential claimants surfacing late for their claims to

12   be deemed timely filed if I granted these two motions on the

13   facts before me.  Again, see In re Enron Corp., 419 F.3d, at

14   132 and In re Lehman Brothers Holdings, Inc., 433 BR at 113,

15   121 through 21, Bankruptcy SDNY 2010.

16           So I will deny each of these motions.  I think you

17   had an order that covered all three of the motions.  Is that

18   right?

19           MS. KNUDSON:  We submitted one order that -- it

20   has some (indiscernible) but we can --

21           THE COURT:  I thought you had -- I thought you had

22   provided a proposed form of order denying all three.  I'm

23   fine with that form of order --

24           MS. KNUDSON:  Okay.

25           THE COURT:  -- as long as it's treated as a

Page 72

1    separate order, you know, the order says this is deemed a

2    separate order with respect to each motion.

3              MS. KNUDSON:  Okay.

4              THE COURT:  And to the extent Ms. Ecke's motion is

5    in such an order, it should say it's without prejudice to

6    her rights to seek leave to amend any of the filed claims

7    and/or to assert that any of the filed claims cover the late

8    claim.

9              MS. KNUDSON:  Thank you, Your Honor.  We can

10   submit an order to that effect.

11             THE COURT:  Okay.  Very well.  I think that

12   concludes the agenda for today unless I'm missing something.

13             MS. KNUDSON:  Your Honor, there is actually one,

14   one mor e--

15             THE COURT:  Oh, I'm sorry.  There is one more.

16   I'm sorry.  Excuse me.  That's the motion by Redbow NLN for

17   liquidation under the tort laws.  Do I have anyone on the

18   phone on behalf of the claimant or the movant with respect

19   to that motion?

20             Okay.  I've reviewed the motion and the Debtors'

21   objection to it.  Have there been any developments on this

22   motion, Ms. Knudson?

23             MS. KNUDSON:  No, Your Honor.  I would just say

24   very briefly, as we said in the past, the Debtors remain

25   sympathetic to all of those affected by the opioid crisis.

Page 73

1    And as we've shown with our actions, we are committed to

2    moving these cases forward as quickly as possible so that

3    individuals with allowed claims may receive payment in due

4    course pursuant to a plan of reorganization.

5           However we must object to this relief which we

6    understand to be early payment of this claim in full.  And

7    as Your Honor has acknowledged now several times when

8    addressing similar motions brought by other personal injury

9    claimants, this particular relief is neither equitable nor

10   allowed under the Bankruptcy Code, and both the Creditors

11   Committee and the PI group agree with the relief the Debtors

12   seek.

13          With that, Your Honor, we'll rest on our papers

14   and respectfully request that the Court deny the motion.

15          THE COURT:  Okay.  All right.  Again let me just

16   make sure there's no one on the phone or the Zoom on this

17   motion for Redbow NLN.

18          All right.  I have a motion titled, "Motion of

19   Liquidation Under the Tort Laws" by Redbow NLN, pro se.  The

20   motion could be construed, and I think this is what is

21   intended by it, as seeking payment now as well as allowance

22   now and then payment rather of a claim filed in this -- in

23   these Chapter 11 cases by the movant.

24          The motion states two grounds for the requested

25   relief.  The first is that such relief is permitted by and

Page 74

1    in fact required by the Federal Tort Claims Act, 28 USC

2    1291, et seq.  Separate and apart from the fact that the

3    automatic stay is in place for this case, by its own terms,

4    the Federal Tort Claims Act would not apply to this claim

5    which is not a claim against the United States for torts

6    committed by federal employees.  It's a claim asserted

7    against the Debtors.

8            In addition, the motion seeks payment I believe

9    because the claimant is of the belief that with the reversal

10   of the confirmation order, the case should turn to payment

11   of all claimants in a first come, first serve basis.  There

12   are other clearly incorrect factual assumptions in the

13   motion such as statements that, "The Court has already sent

14   some $4.5 billion overseas," and the state claimants have

15   already been paid their claims, both of which obviously are

16   incorrect.

17           The automatic stay is in place in this case.

18   Under the case law, with respect to relief from the

19   automatic stay for an unsecured claim, which this is, the

20   Second Circuit has noted that such relief is extraordinary

21   and usually limited to situations where the claimant is

22   seeking leave from the stay nominally to pursue the debtor

23   but in fact to pursue insurance or simply to liquidate the

24   claim but not collect on it, not to be paid on it except

25   from insurance and such liquidation will not prejudice the

Page 75

1    estate or other parties in interest.  That's set forth in

2    the Second Circuit's seminal In re Sonnax case.

3            Here there are hundreds of thousands of personal

4    injury claims filed, each of which, it is clear to me, the

5    aim of this case has been to resolve and deal with as

6    promptly as practicable, in light of all of the other issues

7    raised by this case and the other types of claims against

8    these Debtors, and as I previously ruled on similar requests

9    earlier in this case, there is no basis at this time to

10   start considering the allowance of and payment of, to the

11   extent allowed, individual proofs of claim on a piecemeal

12   basis.

13           Such a process would unduly favor those who came

14   first with such requests and clearly prejudice everyone else

15   and would be inconsistent with the work done to date to

16   resolve how all of the claims in these cases would be

17   addressed.

18           Again I've noted that these cases are at an

19   inflection point because upon the appeals before the Second

20   Circuit, and pending the outcome of that appeal, obviously

21   this type of relief is premature.  So I will deny the

22   motion.

23           MS. KNUDSON:  Thank you, Your Honor.

24           THE COURT:  So you can submit that order

25   separately to chambers.

Page 76

1              MS. KNUDSON:  Thank you.  We will.

2              THE COURT:  Okay.  That does conclude the agenda

3     for today.  So I will sign off at this point.

4              MAN 1:  Your Honor, may I address the Court?

5              THE COURT:  Is it -- is it on a matter that was on

6     the agenda?

7              MAN 1:  Yes.

8              THE COURT:  What was that?

9              MAN 1:  It was the pleading by a gentleman whose

10    name I don't remember.  But he was a debtor, and Maria Ecke.

11             THE COURT:  No.  I'm sorry.  I've already ruled on

12    those, sir, and I'm not going to reconsider those by someone

13    else.

14             MAN 1:  I appreciate your comments, Your Honor.

15             (Whereupon these proceedings were concluded at

16    11:59 AM)

17

18

19

20

21

22

23

24

25

Page 77

1                                I N D E X

2

3                                 RULINGS

4                                                  Page      Line

5    Motion to Extend Time / Motion to

6    Extend the Preliminary Injunction         18         3

7

8    Expense Fee Applications                  26         5

9

10   Motion to File Proof of Claim After

11   Claims Bar Date filed by Tristan Martinez 28         23

12

13   Motion to File Proof of Claim After

14   Claims Bar Date / Motion for Tolling of

15   Filing Deadline filed by Marcia Helms     31         14

16

17   Motion to File Proof of Claim After

18   Claims Bar Date filed by Wayne B. Anderson 34         20

19

20   Motion to File Proof of Claim After

21   Claims Bar Date filed by George A. Bratton 39         12

22

23   Motion for Reconsideration, re: Estate of

24   David Jonathan Ecke                       58         6

25

Page 78

1                          **I N D E X**

2

3                          RULINGS

4                                               Page        Line

5    Motion to Allow/Motion for Leave to

6    File Late Claim Under Rule 9006            63          16

7

8    Motion to File Proof of Claim After

9    Claims Bar Date filed by Steven J Maltman  69          16

10

11   Motion to File Proof of Claim After

12   Claims Bar Date filed by Timothy Maxwell   69          16

13

14   Motion to Authorize / Motion of Liquidation

15   Under the Tort Laws Re: Requesting

16   Payment for Claim 6492 filed by Redbow NLN  73         21

17

18

19

20

21

22

23

24

25

Page 79

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 3, 2022

[& - 4/20/2022]                                                                                    Page 1

| & |
| --- |
| **&**   7:22,24 8:2,4,8 |
| 8:12 9:18,22 12:2 |
| 12:8,11 13:1,5 |
| 15:7,22 18:13 |
| 21:6 24:20 29:1 |
| 41:21 67:21 |

| 0 |
| --- |
| **0.00.**   8:4 9:13 13:5 |

| 1 |
| --- |
| **1**   10:23 11:22 12:7 |
| 12:17 49:14 57:1 |
| 76:4,7,9,14 |
| **1,094,429.13**   7:23 |
| **1,118,314.32**   8:3 |
| **1,131,443.50**   11:6 |
| **1,166,724.81**   8:20 |
| **1,200.04.**   11:6 |
| **1,255,657.0**   10:25 |
| **1,719.45.**   10:7 |
| **1,785,557.99**   7:18 |
| **1,909,368.90**   9:21 |
| **1/31/2022**   7:17,23 |
| 8:3,11,19 9:6,12 |
| 9:21 10:6,15,25 |
| 11:5,14,24 12:9 |
| 12:19 13:4 |
| **10**   19:6 |
| **10/1/2021**   7:17,23 |
| 8:3,11,19 9:12,20 |
| 10:6,14,24 11:5 |
| 11:14,23 12:9,19 |
| 13:4 |
| **10017**   17:6 |
| **1002**   61:15 |
| **1008-10**   61:15 |
| **105**   4:2 |
| **10601**   1:21 |
| **107.36.**   11:15 |
| **10:00**   1:24 3:9 4:5 |
| 4:10,16 5:3,9,21 |
| 6:4,16,22 7:10 |

13:10,17,24 14:15
15:3,18 16:9,15
**11**   4:2 9:3 24:19
44:22 48:20 53:2
56:20 59:2 60:21
70:22 73:23
**11-12**   61:6
**110,609.55.**   8:20
**113**   71:14
**115**   63:4
**11501**   79:23
**11:59**   76:16
**12**   43:17 44:21
77:21
**1204**   17:15
**121**   63:7 71:15
**12151**   79:7
**125**   63:4
**1291**   74:2
**12th**   67:1
**132**   71:14
**14**   61:13 69:17
77:15
**148**   61:15
**15**   19:22 61:14
**15th**   20:23
**16**   59:1 78:6,9,12
**16810**   47:15,22
**16817**   42:22 47:18
**17**   68:21
**18**   77:6
**186**   49:3
**19-08289**   1:4
**19-20**   64:2
**19-23646**   43:3
**19-23649**   1:3
**190**   49:3
**19801**   17:16
**1993**   61:16 62:2

| 2 |
| --- |
| **2,144,867.50**   9:6 |
| **2,683.48.**   12:20 |

**2/17/2022**   4:2
13:10,16
**20**   69:16 77:18
**20,761,663.5**   8:12
**20-12522**   43:3
44:25 52:23
**2001**   49:18
**2003**   49:4
**2005**   63:4
**2007**   61:13,14
**2010**   71:15
**2020**   33:7 40:2
43:17 48:20 58:21
59:1 60:19 68:6
68:14 69:11,14,18
69:20
**2021**   10:23 11:22
12:7,17 32:24
47:12 58:20 61:5
61:6 69:16,19
70:15
**2022**   1:23 10:23
11:22 12:8,18
34:15 40:2 48:20
59:2 64:1 70:16
79:25
**2085**   61:6
**21**   61:14 71:15
78:16
**21,592.80**   9:13
**220,000.00**   13:5
**22855**   47:16
**23**   34:20,24 77:11
**23016**   47:16
**24,822.86.**   7:18
**242**   47:23 59:11
64:13 65:5 66:20
**247**   49:17
**248**   1:20
**255,511.50**   11:14
**26**   77:8
**27**   1:23

**27,958.47.**   11:24
**28**   74:1 77:11
**29,051.35.**   10:15
**2d**   49:3,18 63:4

| 3 |
| --- |
| **3**   77:6 79:25 |
| **3,141,959.00** |
| 11:24 |
| **3,500**   66:23 |
| **3,832,741.50** |
| 12:10 |
| **30**   19:12 58:21 |
| 60:19 68:6,13 |
| 69:11,14,20 |
| **300**   1:20 79:22 |
| **31**   10:23 11:22 |
| 12:8,18 77:15 |
| **317,950.05.**   9:6 |
| **323**   4:6 |
| **325,122.62.**   8:12 |
| **327**   7:14 |
| **328**   27:3 |
| **330**   25:17 79:21 |
| **331**   25:18 |
| **34**   77:18 |
| **341**   49:3 |
| **349**   4:6 |
| **353**   3:10,15 |
| **354**   3:21 |
| **366-367**   63:22 |
| **370**   49:17 |
| **380**   62:2 |
| **387**   62:10 |
| **388**   62:11 |
| **39**   77:21 |
| **391**   49:17 64:1 |
| **392**   49:18 |
| **395**   62:25 |

| 4 |
| --- |
| **4**   61:6 |
| **4.5**   74:14 |
| **4/20/2022**   3:21 |

**4/25/2022** 3:21
**4/27/2022** 3:9 4:4
4:10,16 5:3,9,21
6:4,16,22 7:10
13:24 14:15 15:3
15:18 16:9,15
**419** 63:4,7 71:13
**4246** 56:18
**4296** 13:11,25
14:7,14,23
**4297** 13:17,25
14:7,14,23 58:15
**433** 71:14
**4358** 13:25 14:2
**44,243.00.** 7:24
**4415** 4:11,14,22
5:15 6:10 7:4 29:6
**4431** 4:17
**4481** 4:22 5:4,7,15
6:10 7:4 29:6
**4496** 5:10
**4497** 15:4,7,13,22
16:4
**4498** 15:7,12,19
15:22 16:3
**45** 22:19
**450** 17:5
**4511** 15:8,23
**4520** 4:22 5:15,22
6:2,10 7:4 29:6
**4521** 6:5
**4524** 13:6
**4525** 4:22 5:15
6:10,17,20 7:4
29:6
**4526** 6:23
**4529** 16:10,13,20
**4540** 8:5
**4541** 7:25
**4543** 11:25
**4545** 9:14
**4546** 11:15

**4547** 7:19
**4549** 10:16
**4550** 10:8
**4551** 9:7
**4552** 8:13
**4553** 8:21
**4554** 11:1
**4556** 12:21
**4557** 9:22
**4558** 11:7
**4562** 12:11
**4573** 7:11
**4596** 16:16
**4679** 16:21
**4680** 14:8
**4681** 15:14 16:5
**4682** 4:24 5:17
6:12 7:6
**4698** 14:16,22
57:22
**4701** 14:23 57:22
**48,000** 66:23
**498** 49:2,16
**4th** 33:7

**5**

**5** 44:12 77:8
**5,000.59.** 10:25
**50** 26:8
**500** 49:2
**501** 49:16
**507** 62:1
**523** 56:20
**58** 77:24
**59** 48:21
**595,038.25** 10:15

**6**

**6** 49:11,15 77:24
**60** 48:18,22 49:11
49:13,14,15,21,25
59:7
**628554** 13:9,15,20
13:22 14:6,12,13
14:20,21 42:14,25

47:6,22 52:17
58:3,6,18 60:18
65:24
**63** 78:6
**6492** 16:8 78:16
**67,611.02.** 12:10
**69** 78:9,12

**7**

**7** 41:23 56:20
**73** 78:16
**75** 34:17
**78** 56:17

**8**

**8** 41:24
**800,000.00** 12:20
**833** 49:2,16
**86541** 61:13

**9**

**90,000.00.** 9:21
**900,000.00** 10:7
**9006** 13:14,21
61:23 68:2 78:6
**9024** 48:23 59:6

**a**

**a.m.** 1:24 19:6
**ability** 64:10
**able** 33:17 35:6
43:15 48:4 50:11
64:16
**absence** 44:1
**absolutely** 28:14
60:3
**abstinence** 43:25
**abuse** 53:4,5
**abuses** 32:25
**accept** 13:14,22
14:5,12,20 58:6
58:10
**access** 18:5 30:17
69:25
**accomplished**
45:9,10

**account** 32:22
**accurate** 79:4
**achieving** 61:12
**acknowledged**
73:7
**acknowledging**
40:23
**act** 34:2 65:10
74:1,4
**acted** 62:24
**acting** 54:6
**actions** 73:1
**active** 64:4
**actual** 7:16 8:18
10:5 12:6 22:25
26:24
**ad** 10:20 11:10,20
12:3,15 21:14
29:11 30:21 31:20
33:21 39:12 40:25
68:23
**add** 31:1 56:11
**added** 42:23
**addition** 22:6,6
24:4 45:12 51:11
59:22 64:24 70:17
71:4 74:8
**additional** 23:16
44:3
**address** 21:23
23:15 76:4
**addressed** 23:16
23:17,20 24:1
27:17,23,24 28:8
75:17
**addresses** 49:6
**addressing** 73:8
**adequate** 33:16
**adjourn** 36:20
38:13,19
**adjourned** 4:4
**adjourning** 38:22

adjournment 39:3
adjustments
  21:18
administration
  60:20,23
administrative
  9:10
admission 62:8
admitted 61:7
adv 1:4
adversary 4:4
advertisements
  32:20
advisor 9:3,10
  12:15
advisors 26:10
affiliated 44:23
  46:24
affiliates 53:2
afford 40:3
age 40:3
agenda 18:7,8,8
  18:15 19:2 29:5
  29:18 41:17,23
  72:12 76:2,6
ago 22:19 34:25
  42:17
agree 22:16 23:4
  38:6 41:6 73:11
agreed 21:12,17
  22:8 23:5,13 26:7
agreeing 50:23
agreement 31:13
ahead 42:9 51:8
  52:21 66:7
aim 75:5
al 1:12,15 3:1,2,12
  3:13 18:3 43:17
  44:17
alixpartners 9:2,7
  26:20
allegations 40:18
  68:10

allegedly 40:20
allocates 32:3
allow 13:13,21
  42:16 58:4 78:5
allowance 8:17
  9:3 10:4,12 11:12
  11:18 12:5 56:15
  66:25 73:21 75:10
allowed 30:8
  31:22 35:7,24
  38:25 53:19 73:3
  73:10 75:11
allowing 55:7
  61:17 68:15
allows 19:21
amend 44:4 50:20
  51:2,18,19,21
  64:16 72:6
amended 4:1
  14:18 18:6 45:2
  45:24 50:23 57:21
  57:21 59:17 60:7
  65:20 67:2 71:3
amending 44:8
  51:10
amendment 51:22
  52:1,1 64:19
amount 26:22
  47:23 61:11 64:13
  66:9,14,15
amounts 21:13,18
analogous 19:16
analysis 59:14
  62:16 64:24
anderson 4:21
  5:14,20 6:2,9 7:3
  17:22 30:5 31:1
  34:9,10,11,13,16
  35:2,12 36:3,15
  37:17,22 38:15,21
  39:16 77:18
andrew 4:21,21
  5:14,14 6:9,9,15

6:20 7:3,3 39:19
  44:9 47:16 52:13
  64:8
answer 23:1 35:15
  44:1,2,15 66:10
anticipate 27:6
anyway 37:11
  42:9 45:12
apart 74:2
app'x 49:2,16
appeal 19:5 20:7
  20:12 37:10,11
  38:24 57:4,7,17
  60:1,10,11 65:4
  71:3 75:20
appeals 26:15
  75:19
appear 25:7 33:24
  49:22 64:13
appeared 26:11
  27:9
appearing 18:6
  21:2
appears 24:11
  58:16 64:9
applicable 61:21
  68:12
applicants 21:25
  23:12
application 7:13
  7:14,21 8:1,7,8,15
  8:16 9:1,2,9,16,17
  10:1,2,10,11,18
  10:19 11:3,9,10
  11:17,18 12:1,2
  12:13,14 13:1
  18:17 21:11 23:22
  27:8 68:1
applications
  21:19 22:2,3,7,12
  22:13 23:6,9
  24:24,25 25:17
  26:1 27:12 28:6

28:16 77:8
applied 63:24
apply 25:16 74:4
applying 63:11
appreciate 46:9
  47:4 76:14
appropriate
  19:19 22:16 25:2
  25:4
appropriately
  27:17
approve 42:20
  55:2,4
approved 21:16
  59:23
approximately
  71:5
april 1:23 43:17
argue 37:12
argued 50:2
argument 19:5
  50:12 53:25 56:4
  59:25 60:3 65:6,9
arguments 59:22
arnold 7:22,24
  24:20
arps 9:18,22
artist 45:9,10
ascertain 61:9
asked 34:13 44:3
  66:9
asking 35:9 42:13
  58:1
asks 58:1
aspect 49:7 60:6
  60:13
assert 52:16 65:18
  65:23 68:16 72:7
asserted 52:11
  65:5,24 74:6
asserting 52:9
assertions 29:12
  29:17 30:18

[asserts - case]                                                      Page 4

**asserts** 30:17
31:15
**assessment** 29:17
**associates** 62:1
**assuming** 28:8
**assumptions**
74:12
**assured** 42:19
55:1
**attorney** 7:23
17:4,14 40:4
42:18 52:23 56:8
**attorneys** 42:20
46:25 52:25
**attributable** 62:9
**august** 61:6
**authorize** 16:7
78:14
**authorized** 24:11
**automatic** 74:3,17
74:19
**avenue** 17:5
**avoid** 24:13
**avrio** 3:4,16
**aware** 32:6 34:14
36:2 37:18 38:7
50:13
**awareness** 50:16
**awfully** 19:18

**b**

**b** 2:1 4:21 5:14,20
6:9 7:3 17:22
48:22 49:11,13,14
49:15,21,25 54:6
59:7 61:23 62:21
77:18
**b.r.** 61:15
**back** 27:16 46:9
60:15 68:14
**bad** 40:12 43:11
**balance** 70:11
**balanced** 59:14

**balancing** 62:20
**bank** 49:1
**banker** 10:3 12:15
26:7,16,25
**bankers** 26:10
**bankr** 61:5,6,15
64:1
**bankruptcy** 1:1
1:19 2:3 24:6
25:15,18 26:3,4
31:24,25 33:4,5
34:14 35:10,16
36:2 37:18 38:8
44:11,17,18,24
48:23 50:7,17
53:15 56:13,14,22
56:25 57:1,14
59:6,19,20,24
60:24 61:23,23
63:25 68:2 69:10
71:15 73:10
**bar** 4:8 5:1,19
6:14 15:1,11,16
16:2 31:23 33:16
35:23 37:20 38:12
40:2,24 58:9,20
60:18,19 61:8,22
62:3,13 63:25
64:7 68:6,9,14,22
69:10,11,12,14,20
69:24 77:11,14,18
77:21 78:9,12
**based** 19:7,14
29:12 40:9 41:11
44:13,15 47:18
49:9 52:10 55:5
60:16 61:24 62:17
64:15
**basic** 54:16
**basically** 39:25
65:22
**basis** 29:13 30:15
31:11 38:11 50:2

55:7 59:10 62:14
62:17 64:21 70:9
74:11 75:9,12
**bear** 33:15
**bears** 63:5
**beg** 55:15
**began** 30:16
**behalf** 3:4,15 4:15
4:23 5:8,16 6:3,11
6:21 7:5,9 14:8
15:13 16:4,14,20
18:14 21:7 29:2
41:21 43:24 47:5
47:14,17 48:2
50:6 52:4,9,11
58:10,18 60:17
64:7,10 67:22
72:18
**belief** 74:9
**believe** 19:23 29:7
29:13 41:25 44:12
45:22 50:14,17
55:15 64:12 67:25
68:15 74:8
**benefit** 43:1
**benjamin** 3:3,15
**berthold** 53:5
**best** 48:4
**beyond** 70:3
**bielli** 13:1,5 17:13
17:18 22:25 28:19
**billing** 25:16
**billion** 74:14
**bit** 31:6 33:1
34:16 67:6
**blue** 53:9,9
**body** 52:19
**botany** 45:11
**boxes** 18:16 21:2
**br** 71:14
**brand** 51:23,25
**bratton** 4:22 5:15
6:10,15,20 7:4

30:4 39:19,19,20
39:21,25 40:10
77:21
**bratton's** 40:18
41:4,12
**brendan** 53:5
**briefly** 40:16
67:23 72:24
**bring** 58:12
**broader** 56:24
**brotherhood**
49:17
**brothers** 71:14
**brought** 41:18
73:8
**brown** 10:19,23
11:1
**brunswick** 62:1
**budget** 25:19
**budgeting** 25:11
25:12
**burden** 33:15
63:6
**burnham** 61:14

**c**

**c** 17:1 18:1 62:22
79:1,1
**calendar** 19:6
28:23 34:1,8 37:6
39:18 66:2
**call** 34:10 52:14
**called** 29:14 68:2
**calpine** 61:13
**capital** 12:14,18
12:21
**care** 35:20 53:8
**carefully** 23:9,11
27:8
**carelessness**
62:10
**case** 1:3,4 18:6
19:13,17 23:20
26:16,23 27:19

30:19 32:7 33:18
36:21 37:8,18,20
38:8,20 40:23
43:3,3 44:24
45:23,25 46:1,3
46:13,14,20 52:19
52:23 53:15,17,21
53:25 54:8,9,12
54:21 56:4 57:17
59:19,19,24 60:2
60:5,9,21 61:23
62:16,17,18,22
63:12,17,25 64:4
64:19 69:10,19
70:5 71:10 74:3
74:10,17,18 75:2
75:5,7,9

**cases** 20:13 21:16
21:20 22:4 30:16
31:24 40:22 45:5
45:6 46:16,17
50:16 53:2 54:19
58:20 59:1,13
60:24 64:2,18
69:23 73:2,23
75:16,18

**catchall** 49:10

**cause** 19:22 49:21

**caused** 44:11

**cc** 21:13

**centers** 53:8

**central** 49:2

**certain** 22:3,10
23:15 25:7 44:1
57:13

**certainly** 30:3
65:12

**certificate** 14:1

**certified** 79:3

**cetera** 40:13

**chambers** 20:19
28:9 75:25

**chance** 37:10

**chapter** 9:3 24:19
44:21 53:2 60:21
70:22 73:23

**charged** 25:11

**chicken** 33:2

**children** 58:14

**christopher** 17:9
21:6

**cir** 49:3,18 63:4

**circle** 27:16

**circuit** 19:4,8,12
19:17 20:8 36:22
37:9,11 57:16
60:1,11 63:8,10
63:23 70:5,7
74:20 75:20

**circuit's** 19:15
20:12,17 75:2

**circuits** 63:9

**circumstances**
40:22 49:1 55:6
68:12 71:7

**citations** 61:7

**cite** 61:5

**cited** 63:12 64:2

**civil** 59:6

**claim** 4:8,13,20
5:1,6,13,19 6:1,8
6:14,19 7:2 13:9
13:14,15,20,21,22
14:6,11,12,20,21
15:1,6,11,16,21
16:2,8 29:5,24,24
30:1,4,6,7 31:18
31:22 33:23,25
34:9 35:3,4,13,17
36:1,10 38:2,18
39:2,9,10,11,20
40:1,20 41:25
42:14,15,17,21,22
42:24 43:13,14,16
43:20 44:3,4,9

47:4,6,7,11,15,17
47:21,22 48:2,7
50:3,7,9,13,14,20
50:22,25 51:2,11
51:18,19,20,23,24
51:25 52:4,9,17
53:15 55:7,7 58:3
58:3,5,6,9,10,17
58:18 60:17 61:22
62:3,7 63:7 64:7
64:10,17,17,20,20
64:22,25 65:5,11
65:17,19,20,21,23
65:23 66:9,15,15
66:25 67:24 68:5
68:25 69:9,24
70:2,8,13 72:8
73:6,22 74:4,5,6
74:19,24 75:11
77:10,13,17,20
78:6,8,11,16

**claimant** 33:16,20
52:9 63:5 66:9
72:18 74:9,21

**claimants** 10:21
11:11,21 12:4
31:12 32:2 33:21
38:23 40:4 53:1
59:12 65:14 70:1
71:6,11 73:9
74:11,14

**claiming** 63:21

**claims** 4:8 5:1,19
6:14 15:1,11,16
16:2 31:25 32:4
37:10,14 38:24
39:1 43:24 44:13
47:13,14,18,18,25
48:9 50:10,20
52:3,8,16,17
53:19 56:13,15,24
58:20 59:3,11,13
59:14,23 61:10,11

61:17,20 63:24
64:12,17 65:14,18
65:22 67:17 68:16
68:17,18,21 70:15
71:7,11 72:6,7
73:3 74:1,4,15
75:4,7,16 77:11
77:14,18,21 78:9
78:12

**clarified** 57:24

**class** 45:15

**clauses** 49:13

**clear** 21:17 24:11
35:2 37:20 41:10
47:3 49:11 57:23
63:5,20 64:9 75:4

**clearly** 18:10
20:13 21:7,12
25:15 26:2 27:5
29:2 31:7 33:18
37:3 39:2 42:8,10
48:16 54:7 57:8
57:14 60:12 74:12
75:14

**clerk** 9:10,13
26:18 43:17

**client** 25:16 27:1

**clients** 25:14,20
25:21,24 26:3

**code** 25:18 26:3
56:22 57:14 73:10

**cogeneration** 63:3

**cogent** 41:10

**cognitively** 31:16

**colleague** 28:22
41:17

**collect** 74:24

**colloquy** 24:3

**colorable** 29:13

**come** 19:9 46:9
74:11

**comes** 35:24

coming 36:24
comment 26:5,9
comments 27:11
  76:14
committed 73:1
  74:6
committee 10:20
  11:11,20 12:3,16
  21:14 29:11 30:20
  30:21 31:20 33:21
  33:22 39:12,13
  40:11,11,17,25
  41:6 42:19 53:1
  54:8 68:23 73:11
committee's 26:6
committees 31:12
  31:12 56:8
commonwealth
  1:15 3:1,12
companies 43:5
  45:6 46:21
company 26:25
  46:14,22 59:20
  62:1 64:1
compensation
  7:13,15,22 8:2,7,9
  8:16,17 9:1,4,10
  9:17,18 10:1,4,10
  10:12,19 11:4,9
  11:12,17,18 12:1
  12:5,13,16 13:2
  27:7
comprehensive
  25:2,5
computer 36:16
  36:18
conceivable 58:24
conceived 58:25
concern 24:16
concerned 37:18
  40:8
concerning 52:22

conclude 76:2
concluded 76:15
concludes 72:12
conclusions 44:21
  45:1
condition 41:12
conference 4:3
confess 39:22
confirm 47:10
confirmation 20:7
  65:1 71:1 74:10
confirmed 45:17
  53:17,17 55:17
  61:18 63:23 70:23
  71:3
confirming 44:21
  45:2
confusing 33:4
congress 25:15
  26:2
conjoined 43:4
  55:24
connection 46:20
  50:24
consented 31:21
consider 36:25
  50:2
considerably
  66:20
consideration
  61:21 70:10,12,23
considered 37:11
  39:9 49:12 56:7
  68:13
considering 25:17
  75:10
consistent 20:5
  21:19 65:22
constitute 63:2
constituted 62:7
construed 73:20
construing 63:2

consult 68:23
consultants 10:13
  26:19
consultation
  29:10
consulted 31:19
  55:8
consulting 11:4,7
  40:24
contemplated
  25:1
contemplation
  61:20
contested 33:17
contingent 10:21
  11:11,21 12:4
continue 52:20
  63:20
continuing 26:17
contours 19:15
control 36:1 62:24
  63:14 70:4,9,13
conversations
  54:22
convince 35:4
coordination
  24:14
corp 49:3 61:5,13
  63:4,4 71:13
corporate 56:25
corporation 59:19
correct 30:22 55:5
  61:4
correctly 22:2
council 54:7
counsel 7:15 8:2
  8:10 9:20 10:20
  11:10,20 12:3
  13:3 22:22,25
  23:10 24:3,5,6,7,8
  24:14 27:20 28:12
  30:10 55:8

counsel's 25:6
country 79:21
course 19:8 21:16
  63:21 73:4
court 1:1,19 18:2
  18:11,20,22,24
  20:3 21:4,8,23
  22:1,20,22 23:3,8
  25:15 27:18 28:5
  28:11,14,20,24
  29:3,10,19,21
  30:9,23 31:7,9,23
  31:25 32:9,12,16
  32:19 33:4,13,14
  34:6,8,12 35:2,15
  36:12,20,22 37:25
  38:5,15 39:17
  41:4,15,19 42:3,7
  42:12,16 44:24
  45:19,23,25 46:2
  46:6,17,23 47:2,9
  47:13 48:3,11,15
  49:19 50:21 51:3
  51:6,12,14,18
  52:21 53:11,21,24
  54:5,11,15,20,24
  55:3,18,20,23
  56:1,3,8,10,13
  57:2,6,16 58:4
  59:20,24 61:1,4
  61:25 62:19 63:11
  63:17,19 65:9
  66:5,7,11,14,19
  66:24 67:3,6,8,11
  67:13 68:12 69:4
  69:5 71:21,25
  72:4,11,15 73:14
  73:15 74:13 75:24
  76:2,4,5,8,11
court's 20:7 42:23
  59:10 60:2 70:23
  70:25

courts 44:18
57:11
cover 52:2 64:17
72:7
covered 49:25
71:17
covering 30:24
covid 69:12
credited 69:22
creditor 43:21
56:17
creditors 29:10
30:20 31:20 39:12
40:16,25 42:18
43:2 68:19,23
73:10
crisis 72:25
critical 20:13
64:24
critically 60:20
cross 53:9
current 65:3
currently 38:23
59:25 68:6
cut 46:6 53:25
57:2

**d**

d 2:2 18:1 62:24
77:1 78:1
daily 40:2,6,9
damage 33:10
damaged 20:16
danger 62:20
date 4:9 5:2,20
6:15 15:2,11,17
16:2 19:9 20:20
30:1,7 31:1,24
33:16 35:23 37:20
38:12 40:2 43:13
44:4 45:16,16,18
47:11 48:21 58:10
58:20 60:18 61:22
62:3,13 63:25

64:7 68:6,9,14,22
69:10,11,12,14,17
69:20,24 75:15
77:11,14,18,21
78:9,12 79:25
dated 59:1,2
dates 31:23 60:19
61:8
david 13:3,8,15
13:20,23 14:6,11
14:13,19,21 17:19
22:24 42:14,24,25
43:8,15 47:5,19
51:10 58:2,7,9,12
60:17 64:15 77:24
david's 52:4 58:18
64:10 65:12
davidson 8:4
davis 8:8,12 17:3
18:13 21:6,11
24:6 29:1 41:21
67:21
day 8:20 68:13
day's 8:16
days 19:12 22:19
43:10
deadline 5:2
77:15
deadly 43:6
deal 49:25 54:1
75:5
dealing 24:9
dealt 64:6
dear 52:24 58:7
death 44:8 64:15
debtor 1:10 33:19
45:4 56:17,22
61:18 62:21 65:4
70:24 74:22 76:10
debtor's 7:22
61:18
debtors 8:10,10
9:3,11,20 10:3,3

10:13 14:4 15:10
16:1,18 17:4
18:14 20:5,6,15
21:7,14 24:5,14
24:18 29:2,13,16
31:11 33:15,17,20
37:9 40:17 41:1
41:22 44:13,14,23
46:10,19 47:16
52:7 55:1,1,3,13
58:24 60:1 67:17
67:22,25 68:13,15
68:17,18,19,22,25
69:3,21 71:2
72:20,24 73:11
74:7 75:8
deceased 42:14
53:5 58:2,10
decedent's 52:12
december 48:20
59:1 69:18 70:15
dechert 7:14,18
24:18 25:10
decide 51:15,21
57:8
decided 36:8 55:4
decision 20:17,22
38:3,6 56:18 62:8
dedicated 53:10
deemed 50:3
58:19 60:18 71:12
72:1
defendants 1:16
deferential 57:12
delaware 43:4
44:24 53:22 59:21
delay 62:21,23,23
63:13 68:4,20
70:14,17,18
delayed 31:17
delays 68:11
demonstrating
33:15 63:6

denial 44:2
denied 49:21 59:5
60:7,14
deny 37:5 65:16
65:24 69:4,5
71:16 73:14 75:21
denying 59:2,8
71:22
department 24:10
depending 36:22
65:3
depository 24:21
depressed 43:9
depression 43:11
described 19:20
designed 60:21
detail 41:5
determination
20:12 62:20
determined 41:1
determining 62:2
63:15
detox 34:25
developed 62:2
developments
72:21
dialogue 24:2
dictates 63:19
died 45:7,8
differ 55:15
difference 47:25
different 46:14,14
51:19 52:17 59:18
64:20,21 65:23
differently 27:10
difficult 33:3
40:21
digits 43:19
diligence 41:6
directly 43:18
48:2
disabled 31:15
34:18 44:7

discern 48:5
discharge 56:24
discrete 24:12
discuss 23:11,19
discussed 21:1
  27:15
discussion 22:15
  59:18 69:6
discussions 27:25
dist 61:13
distributions 39:1
  65:13
district 1:2 20:7
  42:23 44:19,24
  53:22 57:16 59:21
  60:1
ditech 61:5
divestiture 60:12
dividing 36:21
divorced 44:7
doc 14:1
docket 29:6 56:17
  58:14,16
dockets 57:22
doctor 32:14
  45:11
doctors 32:25
doctrine 60:12
document 3:15
  4:6,14,22 5:7,15
  6:2,10,20 7:4
  13:25 14:1,7,14
  14:22,23 15:7,12
  15:22 16:3,13,20
  24:21
doing 25:2,5,6
  27:10
don't 23:17 24:2
  25:13 26:4 30:12
  31:3 32:21,21,22
  34:17 35:3,8
  36:12,19 37:16
  48:11,16 52:3,3

53:14 54:3,5,24
  55:7 57:13 60:12
  65:23 66:17 76:10
door 71:7
dorsey 44:25
  53:17
dr 53:7
drain 2:2 18:3
  42:11 44:20 55:13
  58:7
draw 40:22 45:10
drexel 61:14
dropping 31:6
drug 44:8 53:19
due 3:21,21 38:2
  41:6 44:16 45:7
  58:14 62:3 70:3
  73:3
duplication 24:13
  24:17

**e**

e 2:1,1 7:14 17:1,1
  18:1,1 72:14 77:1
  78:1 79:1
earlier 59:8 75:9
early 73:6
earned 11:4
easy 52:14
ecf 3:10,21 4:6,10
  4:17,24 5:4,10,16
  5:21 6:5,11,16,23
  7:5,11,19,25 8:4
  8:13,21 9:7,13,22
  10:8,16 11:1,7,15
  11:25 12:11,21
  13:6,11,17,25
  14:8,16,23 15:3,8
  15:14,18,23 16:5
  16:10,16,21
ecke 13:9,9,15,16
  13:20,23 14:7,11
  14:13,14,20,22,23
  17:23 41:18,24

42:1,3,5,11,13
  43:9,15,18,19
  44:6,9,9 45:19,21
  45:24 46:1,3,4,15
  46:18,22,25 47:4
  47:15,15,16 48:5
  49:22 50:6,13,19
  51:2,4,9,13,14,17
  52:20,22 53:11,16
  53:21,23 54:3,10
  54:13,18,22,25
  55:12,19,20,22,24
  56:2,3,6,11,12
  57:2,5,22,23 58:1
  58:7,9 59:11
  60:17,25 61:3
  64:3,8,8,9,15,16
  64:22 65:21 66:4
  66:6,8,13,17,21
  66:22 67:1,3,5,7
  67:10,12 76:10
  77:24
ecke's 14:5 42:14
  42:24 47:6,15
  51:10,10 58:2
  59:2 60:15 65:17
  69:8 72:4
ecro 2:5
effect 72:10
effects 40:3,6,9
efficient 60:23
effort 24:13,17
either 24:3 56:13
  65:18 67:17
electric 64:1
eli 7:9
email 20:18 28:9
emergency 53:7
employees 56:23
  74:6
enables 32:1
enabling 61:8

encompass 65:21
encompasses
  65:19
encourage 68:16
engage 33:22 38:3
enjoined 56:13
enron 63:3,4,7,12
  63:17 64:19 70:11
  71:13
entered 20:1
entering 30:7
entirely 46:8
  57:23 63:20
entities 46:24
entitled 42:25
  44:20 45:1 58:11
equally 63:10
equitable 73:9
equities 63:18
eric 42:18,20
  52:24 54:3,22
  56:6
erred 55:15
especially 61:17
esquire 13:4
essential 51:23
essentially 50:12
establishing 62:12
estate 13:8,15,19
  13:23 14:6,11,13
  14:19,21 43:15
  47:6 48:2 52:4,11
  52:12,12 58:6,18
  60:17 61:11,20
  64:11,17 75:1
  77:23
et 1:12,15 3:1,2,12
  3:13 18:3 40:13
  43:17 44:17 74:2
evaluate 25:3
evaluated 26:17
event 27:22 49:25

eventually 33:9
evidence 62:15
exact 19:4,14
  47:24
exactly 22:9 48:14
examiner 13:3
  17:14 21:10,15,24
  22:13,15,23,25
  23:10,18 25:1
  27:20 28:8
examiner's 24:3
example 37:9
  47:21 52:10
exceptional 49:1
exceptions 19:24
excusable 40:23
  41:2 49:6,10,14
  50:15 61:24 62:4
  62:16 63:3,6,16
  63:21 64:22 68:1
  69:8
excuse 34:2 37:19
  57:6,6 66:4 72:16
excused 28:13
exhibits 20:19
exist 71:2
existing 50:20
expect 63:20
expected 25:22
  70:6
expedited 19:5,10
expedition 19:7
expense 77:8
expenses 7:16,18
  7:24 8:3,10,12,18
  8:20 9:5,6,12,13
  9:19,21 10:5,7,12
  10:15,22,25 11:4
  11:6,13,14,19,24
  12:6,10,17,20
  13:3,5
explain 35:18

extend 3:2,2,14
  19:3 77:5,6
extended 19:20
  69:12
extends 19:11
extension 20:6,11
  20:20 68:14
extensions 29:14
extent 24:19,20
  48:15 49:9 50:1
  50:11,19 57:25
  58:23 60:7 72:4
  75:11
extraordinary
  48:25 74:20
extremely 53:19

f

f 2:1 49:2,16 79:1
f.3d 49:3,17 63:4
  63:7 71:13
facebook 32:22
fact 21:11 32:13
  33:10 38:8 44:20
  45:1 46:5 70:22
  74:1,2,23
factor 37:8,12
  64:24 68:3 70:7
factors 29:15
  36:24 62:20 63:9
  63:11,13 68:2
  70:3,10
facts 48:17 51:24
  52:10 55:6 62:17
  64:21 67:2 70:1
  71:8,13
factual 52:19
  74:12
failing 63:6
fails 63:18
failure 62:6,13
fairly 33:25 52:14
faith 62:25 65:6,8
  65:10

fall 64:18
family 36:17 43:5
  45:5 51:1
far 30:19 39:2
  64:21
fashion 64:11
favor 63:18 65:6
  70:11 75:13
february 34:15
  35:10 69:16
federal 48:23 59:6
  74:1,4,6
fee 7:8,14,18,23
  8:3,11,19 9:2,6,12
  9:17,21 10:2,6,11
  10:15,19,25 11:3
  11:6,14,24 12:9
  12:14,19 13:3,5
  17:14 18:17 21:10
  21:11,19,24 22:2
  22:2,11,13,15,22
  22:25 23:10,18
  24:3 25:1,17 26:1
  26:8,9,12 27:11
  27:19 28:8,15
  77:8
feel 19:18 36:5
  56:9
feeling 27:18
fees 22:6
field 32:4
fifth 4:1
figure 19:14
file 4:8 5:1,19
  6:14 13:13,21
  15:1,11,16 16:2
  30:7 31:22 34:9
  35:7 36:1 39:14
  39:19,25 42:21
  43:17 58:8 61:22
  62:6 63:7,24
  64:10 65:17 67:16
  68:5,17,21 69:24

77:10,13,17,20
78:6,8,11
filed 3:3,15 4:9,14
  4:23 5:2,7,15,20
  6:2,10,15,20 7:4,9
  7:18,24 8:4,12,20
  9:6,13,21 10:7,15
  10:25 11:6,15,24
  12:10,20 13:5,9
  13:16 14:7,14,23
  15:2,11,13,17
  16:2,4,8,13,20
  22:13 29:6,23
  30:1,4,5 32:1
  33:25 34:1 38:19
  39:3,10 41:24
  42:15,17 43:16
  44:5 47:6,7,8,8,9
  47:12,14,17,22
  50:4,6,10,11,20
  51:20,24 57:1
  58:3,17,19,19,21
  59:3,12 60:17,18
  61:17 62:3,5 64:6
  64:12 65:15,19,20
  65:22 66:15 70:15
  70:16 71:12 72:6
  72:7 73:22 75:4
  77:11,15,18,21
  78:9,12,16
filing 4:19 5:2,12
  6:7 7:1 31:17
  37:14 40:20 41:25
  56:25 61:24 64:4
  64:20,22 65:11
  69:9 70:2,8,13
  77:15
filings 50:24
fill 39:14
final 28:2
finally 19:25 33:3
  68:20 70:20

financial 9:3
  12:15 26:10
find 25:12 33:3,3
  33:8,9 42:13
  53:19 58:1 65:7
finding 44:20 45:1
  67:2
finds 65:9
fine 18:24 25:24
  30:25 38:5 42:8
  71:23
first 18:17 19:2
  21:1 25:7 29:20
  30:11 37:8 42:2
  43:16 45:15,19
  48:8 49:8 51:9
  55:13 62:6 73:25
  74:11,11 75:14
firstborn 44:8
fit 51:2
five 53:8 68:8
fixed 26:8 38:24
flom 9:18,22
floodgates 37:1
florida 32:25
focused 40:17
folded 23:24
folks 39:8
follow 63:19
followed 40:11
following 21:22
  62:20 67:15
foregoing 79:3
form 21:12,21
  29:24 30:24,25
  39:11,14 43:20
  47:11 65:3 71:22
  71:23
forms 33:19 43:16
  69:25 70:20
forth 18:8 19:21
  43:23 48:17 51:24
  59:10 67:24 68:1

68:7,10,22 69:3
  75:1
fortunate 58:13
forward 19:14
  73:2
foster 43:24
found 33:6
foundation 58:11
  65:12
four 29:5 30:25
  33:11 43:19 47:13
  52:16 53:7 59:11
  63:9 64:7
fourth 9:9 45:2
frankel 12:3,8,11
frankly 52:7
friday 19:6 59:25
front 52:3,4
fti 11:3,6
fulfilled 65:13
full 27:6,7 73:6
fully 34:18 60:16
fund 48:9
funds 55:25
further 21:18
  22:7,16,17 23:5
  23:14,17 46:12
  60:11 65:10
future 25:19
  35:22 38:24 44:10

g

g 18:1
garrett 53:6
gates 40:8
gather 55:3
gating 20:13
gauntlet 60:22
general 27:14
  61:11 69:7
generally 22:10
  24:15 25:14 26:14
  38:11 60:19 62:9
  63:25 65:6,8 69:6

70:24
gentleman 76:9
george 4:21,21
  5:14,14 6:9,9,15
  6:20 7:3,3 39:19
  39:19 77:21
germane 67:11
gilbert 11:20,23
  11:25
give 54:4 57:9,18
given 26:15 27:19
  30:18 33:18 40:22
  50:15 63:15 64:25
  65:1 67:4,6 69:17
  70:6
giving 61:1
glance 25:7
global 68:11
go 18:7 32:21,22
  38:25 41:5 42:9
  43:10,10,11 46:12
  51:8 52:21 55:19
  55:25 66:7
goal 61:12
god 34:2
goes 49:19 65:6
going 20:8 23:14
  23:25 24:15 28:21
  31:1 36:20 37:5,6
  37:8 38:13 46:6,7
  46:12,13 51:6,7
  53:11,25 56:3
  57:2,7,8,9,17
  65:14 66:20 67:3
  76:12
good 18:2,9,12
  21:5 22:21,24
  25:20 28:25 34:12
  37:10 41:20 42:11
  42:12 62:25 65:6
  65:8,10
governmental
  10:21 11:11,21

12:4 56:24
grandmother
  45:11 53:4
grant 10:11,16
  20:3,4 23:22
  24:24 28:5 30:23
  31:2 33:14 34:4
  35:21,24 36:25
  37:9 39:5 40:9
  41:7,12 52:18
  60:4
granted 19:4
  30:15 71:12
granting 4:2,20
  5:13 6:8 7:2 20:10
  23:21 29:13 37:13
  68:13
grants 20:5 37:11
great 27:24
grounds 49:5
  65:22 73:24
group 29:11 31:20
  40:17,25 61:15
  68:23 73:11
groups 68:24
guardians 43:24
guess 30:11,18
  49:6
guided 62:19
guidelines 25:13
guy 36:16
guys 33:12

h

hade 53:6
hampered 40:6
hand 25:5 40:10
  52:16
handle 28:23
handling 67:19
happened 33:13
  42:13 58:2
happily 19:23

happy   18:7 21:9
  21:23 23:1 29:16
hard   63:11 70:7
heading   26:24
health   3:4,16
  40:19 41:12 53:8
hear   18:10 31:7
  37:7 42:7,9 46:10
  49:7 56:3
heard   21:7 22:1
  29:2,8 35:9 36:3
  37:6 42:1,2 46:8
hearing   3:1,9,12
  4:1,8,9,13,13,15
  4:19 5:1,3,6,6,8
  5:12,19,20 6:1,1,3
  6:7,14,15,19,19
  6:22 7:1,8,8,9,10
  7:13,21 8:1,7,15
  9:1,9,16 10:1,10
  10:18 11:3,9,17
  12:1,13 13:1,8,10
  13:13,16,19,23
  14:14 15:1,2,6,16
  15:17,21 16:7,9
  16:12,14 18:4,7
  21:22 26:6,13
  28:2,3 33:17 39:8
  46:9,12 57:24
hearings   20:14
  66:8
heart   26:7
hearts   58:13
held   3:9 4:9,16
  5:3,9,20 6:4,15,22
  7:10 13:10,16,23
  14:15 15:2,17
  16:9,15 18:4
  63:12
hello   52:24
helms   4:21 5:3,7
  5:14 6:9 7:3 17:24
  30:4 31:2,3,5,8,10

32:6,8,11,13,17
  32:21 34:3,5,13
  77:15
help   47:3 58:11
  58:13
helps   32:2
herbert   49:3
hi   21:5
high   40:24
hindsight   25:4
hit   33:7 43:1
hitting   34:3
hoc   10:20 11:10
  11:20 12:3,16
  21:14 29:11 30:21
  31:20 33:21 39:13
  40:25 68:23
holdback   23:21
holdbacks   25:1
holding   61:5
holdings   71:14
home   33:7
hon   2:2
honor   18:9,13,15
  18:25 20:24 21:5
  21:17,22 22:9,24
  23:7 27:13 28:10
  28:19,21,25 29:4
  30:6,22 31:5,14
  34:5,7 37:21
  38:14 40:15 41:14
  41:20 42:5 46:4
  46:15 47:8,11,12
  47:20 50:5 51:4
  53:16 54:13 55:5
  60:25 66:4 67:20
  72:9,13,23 73:7
  73:13 75:23 76:4
  76:14
honorable   44:19
  44:25
hope   19:9 58:13

hopefully   21:1
hospital   53:8
hospitalized
  40:13
houlihan   12:14,18
  12:20 27:8
hours   26:24
house   34:3
huebner   17:8 18:9
  18:12,13,21,25
  19:1 20:24
hundreds   75:3
hyde   16:25 79:3,8

**i**

i.e.   38:24 51:23
  58:21
idea   35:14 36:4,18
identified   23:24
  27:21
identity   61:10
ignorance   63:1
ii   14:5 18:18,23
  20:25
illegal   56:19
immediate   59:3
impact   62:22
importance   35:23
  69:10
important   32:1
  36:14,21 38:8
  39:7 60:20 61:8
  68:3
importantly   54:6
  68:19 69:13
inability   40:3
inadvertence   63:1
inadvertent   62:10
incarcerated
  30:16 31:11 37:3
  68:7,8 69:14,15
  69:17,18,22
incarceration
  69:25 70:3,18

include   34:4
  43:23 44:10
included   43:16
includes   20:19,21
  43:2
including   34:22
  64:5,19
inconsistent   75:15
incorporate   69:6
incorporated
  48:23
incorporating
  59:6 70:22
incorrect   74:12
  74:16
incurred   7:17
  8:10,18 10:6,13
  10:22 11:5,13,19
  12:7 13:3
indiscernible
  20:25 21:2,3
  28:23 55:19 66:13
  71:20
individual   29:11
  31:16,20 40:25
  55:9 68:24 75:11
individualized
  29:12,17
individuals   48:1
  73:3
inflection   75:19
information   43:22
  44:3 54:20
informed   25:16
initially   42:21
injunction   3:3,14
  4:3 18:21 19:3,11
  19:12,23,24 20:6
  20:16,22 56:16
  77:6
injured   34:19
  38:16

injuries  44:10
injury  13:14,22
  14:6,12,21 30:21
  31:12 33:21 39:12
  40:4 44:15 58:6,8
  71:5 73:8 75:4
inquiry  52:19
inside  45:16
instruct  57:11
instructional
  43:20
instructions  57:12
insurance  74:23
  74:25
integral  56:16
  60:22
intellectual  24:7
intended  73:21
interest  61:9
  69:21 71:10 75:1
interfere  60:13
interim  7:8,13,14
  7:21 8:1,7,8,15,16
  9:1,2,9,16,17 10:1
  10:2,10,11,18,19
  11:3,9,12,17,18
  12:1,2,13,14 13:1
  22:2,7 23:6 24:25
  28:3
internal  61:6
international
  49:17
interrupt  51:4
  53:12
interrupting  51:8
investigation
  39:24
investigations
  24:10
investment  10:3
  12:15 26:7,10,16
  26:25 61:25

invoked  48:25
involved  24:9
  45:5
involvement
  50:16
involving  44:13
  46:14
irene  55:16
irreparably  20:16
issue  23:23 28:1,2
  35:18 39:22 52:6
  52:8 54:2 57:4,6,8
  57:15,15 59:24
  60:2,9,10,10
issued  20:23
  48:19 59:1
issues  23:15 27:14
  27:21,23 28:7
  46:20 48:8 52:3
  75:6
item  19:2 20:13
items  29:5 41:17
  41:23,23
i'm  57:2

**j**

j  7:9 15:2 78:9
jacquelyn  17:10
  29:1 67:21
james  4:14,23 5:7
  5:16 6:2,11,21 7:5
  14:7 15:13 16:4
  16:13,20 17:11
january  10:23
  11:22 12:7,17
  34:15 35:10 48:20
  59:2 69:19
jaquelyn  28:22
jefferies  26:7
jim  41:21
john  44:25
joined  56:7
joint  44:21 45:2

jonathan  13:9,15
  13:20,23 14:7,11
  14:13,19,22 42:14
  42:24 43:9,15
  47:5,19 58:2,7,9
  60:17 77:24
jones  8:16,20
jtd  43:3 44:25
  52:23
judge  2:3 18:2
  42:11 44:20,25
  53:17 55:13 56:18
  57:5 58:7
judgment  25:16
  49:12
july  19:22 20:23
  32:24 39:15 40:2
  58:21 60:19 68:5
  69:11,14,20
june  68:14
jurisdiction  60:4
justice  24:10
justify  49:15

**k**

kaminetzky  3:3
  3:15
kathy  53:3
kaye  7:22,24
keep  37:6
key  37:7 44:6
killed  43:6
kind  36:7 50:21
king  8:2,4 17:15
klauder  13:1,4,6
  17:13,19 22:24,25
  23:7 27:13 28:4
  28:10,12,18
knew  34:16 36:7
know  22:10,14,16
  22:19 25:11 26:21
  27:2,17 29:25
  30:12,24 31:3
  32:1 33:19 34:15

35:10,13,14,16
  36:7 37:16,24
  38:1,12 52:11,14
  54:5 58:8 67:1
  72:1
knowing  23:9
  37:19 62:8
knowledge  62:13
  63:9
known  61:20
knows  24:14
knudson  17:10
  28:22,25 29:1,4
  29:20 30:3,22
  31:10,14 34:7
  37:16,21 38:1,14
  39:22 40:15 41:14
  41:16 67:19,20,21
  71:19,24 72:3,9
  72:13,22,23 75:23
  76:1
kramer  12:2,8,10

**l**

l.p.  1:8,12 3:1,4,5
  3:5,6,7,7,8,12,16
  3:16,17,18,19,19
  3:20 4:23 5:16
  6:11 7:5,10 14:8
  15:14 16:5,21
l.p..  4:15 5:8 6:3
  6:21 16:14
labeled  57:19
lack  38:2
lady  45:12
laid  20:14 39:24
  64:18
lambert  61:15
language  47:23
lapses  43:10
largely  37:8
late  4:13,20 5:6,13
  6:1,8,19 7:2 13:13
  13:21 15:6,21

29:5 34:9 35:7
37:10,14 39:9,20
41:25 42:15 43:13
47:8,22 48:7 50:4
50:10 55:7 58:3
58:22 61:17,22
62:5 64:22,25
65:5,17,20 67:16
67:23 68:25 69:9
70:2 71:11 72:7
78:6
**latecomers** 68:16
**law** 3:13 30:19
33:18 37:20 44:21
45:1 49:11 52:19
70:5 74:18
**laws** 16:8,13,19
72:17 73:19 78:15
**lawyer** 46:10
**lawyers** 26:18
43:12 52:7
**lay** 41:8,8
**leading** 52:25
**leave** 13:13,21
28:16 34:9 39:19
50:21 51:18 58:17
65:16 67:16 72:6
74:22 78:5
**ledanski** 16:25
79:3,8
**leeway** 67:6
**legal** 37:19 41:10
46:19 62:9 64:21
79:20
**legally** 39:4 43:15
**lehman** 71:14
**length** 59:18
62:21 70:13
**lesser** 24:20
**letter** 45:14,14,16
45:20,20 52:22
54:7

**level** 41:2,5,8
**levin** 12:2,8,10
**lexington** 17:5
**lexis** 61:5,13 64:1
**life** 33:8 34:21
40:6
**lifted** 20:16
**light** 23:13,13,21
25:3 26:9 27:9
69:12 75:6
**lightly** 35:24
**likelihood** 40:5
**limitations** 37:4
**limited** 62:1 74:21
**line** 22:23 40:22
42:1 63:11 70:7
77:4 78:4
**liquidate** 74:23
**liquidation** 16:7
16:12,19 72:17
73:19 74:25 78:14
**literally** 34:2
**litigants** 57:12
**litigation** 10:21
11:21 12:4 24:8
33:22 52:15
**little** 31:6 33:1
34:16
**lives** 38:10
**llc** 9:10,13 13:2,6
64:1
**llp** 7:14,19,22,25
8:2,4,8,13 9:2,7
9:18,22 10:11,16
10:20,24 11:1,20
11:23,25 12:3,8
12:11 17:3
**lokey** 12:14,18,20
**long** 19:18 42:17
71:25
**look** 24:23 38:8
41:4 47:21 51:20

**looked** 24:22 27:8
27:10
**looking** 18:16
26:24 47:11,21
**lose** 63:22
**losing** 38:22
**loss** 48:1
**lost** 33:12 42:21
43:12 58:14
**lot** 18:18,19 21:2
27:10 46:17
**lots** 38:9
**lowercase** 35:22
**lp** 10:2,7 18:3
43:2 44:22 63:3

**m**

**m** 13:3
**ma'am** 31:3 61:1
**madam** 52:24
**mailed** 45:16
**mailing** 14:1
**majority** 40:5
**making** 61:10
**mallinckrodt** 43:2
43:4 44:11,17,23
45:3,17,25 46:1,3
46:13,19 50:25
52:23 53:2,17
54:8 55:14,22
56:4,19,21,23
57:17 59:19 60:5
**mallinckrodt's**
56:25
**maltman** 15:2,7
15:12,22 16:3
66:2,5 67:16,18
71:6 78:9
**maltman's** 69:15
**man** 76:4,7,9,14
**manner** 19:10
55:17
**manufacturing**
3:5,17

**march** 40:1 70:16
**marcia** 4:20 5:2,7
5:13 6:8 7:2 17:24
31:2 77:15
**maria** 13:9,16
14:4,14,23 17:23
43:18 44:6 47:15
57:22 76:10
**marked** 53:3
**marketing** 44:14
**marriage** 34:22
**marshall** 17:8
18:13 19:1
**martinez** 4:9,14
4:20 5:13 6:8 7:2
30:3,11,12,12,16
77:11
**masiowski** 53:7
**mass** 33:19
**massachusetts**
1:15 3:2,13
**materially** 64:21
**matter** 1:6 29:9
38:13 66:1 76:5
**matters** 20:25
67:14
**maxwell** 15:7,12
15:17,22 16:3
66:5 67:16,18
69:16 71:6 78:12
**mcclammy** 4:15
4:23 5:8,16 6:3,11
6:21 7:5 14:8
15:13 16:4,14,20
17:11 41:17,20,21
47:2,7,10,20 48:4
48:14 50:5 55:5
**mcmahon** 56:18
**meagher** 9:18,22
**mean** 27:14,18
32:19 69:18
**means** 33:5

media 30:17
32:20,22,23 36:15
36:15 38:2 70:1
medicine 34:23
36:6
meet 40:24
meeting 59:5
meets 50:14
member 36:17
members 43:5
53:9
memorandum
3:13
memory 34:21
mental 40:19 41:2
mentioned 39:7
merely 60:21
merits 35:3 38:18
57:3
mess 33:8
met 50:18
meters 18:19
metromedia 57:1
michael 53:7
midland 63:3
military 34:18,19
million 47:24
59:11 64:13 65:5
66:20
millions 43:6
mineola 79:23
minor 25:9
minors 43:25
minutes 18:22
misinformation
54:4,6,19
missed 37:17
missing 25:13
37:20 38:12 72:12
mistake 62:10
mistakes 63:2
mlnk 53:3

modest 24:13
modifications
45:3
moment 59:4
moments 43:9
money 33:5
monthly 26:8,8
27:4,7
months 27:5
33:11 43:10,11
64:7 68:8,21
69:17 70:19
mor 72:14
morning 18:2,9
18:12 21:5 22:24
28:25 34:12 41:20
42:11,12
mother 53:4
mothers 58:13
motion 3:2,2,13
4:2,8,13 5:1,2,6
5:19 6:1,14,19
13:8,13,13,14,19
13:20,21,22 14:4
14:10,12,19,20
15:1,10,16 16:1,7
16:7,12,18,19
19:2,21 20:4
30:24 31:14,22
33:15,24 34:4,9
36:20,25 37:5,13
37:22 38:7 39:3
39:18,24 40:1,9
40:18 41:5,7,7,13
41:24,25 46:8
47:4 48:7,7,11,17
48:17 49:7 50:3
51:18,19,22 52:18
53:15 54:21 57:4
57:19,19,21,22
58:1,5,6,23 59:8,8
59:10,16,16,17
60:6,6 65:21,24

66:2 67:11 69:8
69:17 70:24 72:2
72:4,16,19,20,22
73:14,17,18,18,20
73:24 74:8,13
75:22 77:5,5,10
77:13,14,17,20,23
78:5,5,8,11,14,14
motion's 30:19
34:1 65:16
motions 4:20 5:13
6:8 7:2 14:5 15:6
15:10,21 16:1
19:16 20:5 21:16
29:6,8,12,17,23
30:10,14,25 35:21
35:22 36:23 37:1
37:2 41:18 64:5
67:15,24,25 68:7
68:10 69:1,4,6
70:6,14,16 71:12
71:16,17 73:8
movant 30:10
62:6,14,24,24
63:14 65:7,10
68:7 69:13 72:18
73:23
movant's 62:10
movants 29:7
68:4,6,21 69:13
70:12
move 19:22 54:15
66:20 67:4
moved 39:8
moving 73:2

n

n 17:1 18:1 77:1
78:1 79:1
naftalis 12:2,8,11
name 52:24 65:12
76:10
named 47:15

nas 43:25
nature 27:20
50:10
necessarily 56:14
necessary 7:16
8:18 10:5 12:6
61:11
need 19:13,25
23:17 24:2 30:1
31:25 36:25 37:7
42:24 52:15
needing 50:21
neglect 40:23 41:2
49:6,10,14 50:15
61:24 62:4,7,9,12
62:15 63:3,6,16
63:21 64:23 68:1
69:8
neglecting 62:14
negotiate 32:3
negotiated 71:4
negotiation 24:18
65:1
negotiations 71:9
neither 33:20 68:7
68:24 73:9
neonatal 43:25
net 21:13
never 35:1 36:7
42:15 58:4
new 1:2 17:6
44:19 51:23,25
64:20
news 30:17 34:17
35:8 36:4 37:4
38:4
nln 16:9 72:16
73:17,19 78:16
nln's 16:18
nominally 74:22
non 56:22
nonprofit 42:25

normal  27:1
normally  27:6
north  17:15
note  20:10 26:5
   29:9 37:2 38:21
   50:6,22 65:10
noted  23:15 40:21
   60:3 64:3,6 70:21
   74:20 75:18
notice  4:13,19 5:6
   5:12 6:1,7,19 7:1
   7:8,8 13:19 15:6
   15:21 16:12 19:22
   33:16,19 35:25
   69:23
notices  32:10
   40:13
noting  51:1
notwithstanding
   58:19
november  34:1
   47:12 58:20 61:14
number  13:9,20
   14:11,20 18:23,23
   24:5 42:14,22,24
   43:3,3 44:25 47:6
   47:22 52:23 53:4
   53:6,6,8,8 56:18
   58:3,18 60:18
numbers  29:6
   43:20 58:17
numerous  64:4
ny  1:21 17:6,16
   79:23

**o**

o  2:1 18:1 79:1
object  31:13 73:5
objected  30:20
objection  14:4,4
   15:10,10 16:1,1
   16:18,18 51:21
   67:24 68:22 72:21

objections  3:20
   20:1
objects  68:24
obvious  27:20
obviously  25:3
   26:14 31:10,23
   37:3 38:15 74:15
   75:20
occ  53:1,3
occurred  18:16
october  10:23
   11:22 12:7,17
offered  49:12
official  52:25 54:8
oh  32:11 66:17
   72:15
okay  18:2,20,22
   18:25 20:3 21:4
   22:1,20 23:8
   27:13,18 28:5,11
   28:12,20 29:19
   30:9,13,23 31:7,8
   31:23 32:9,12,16
   33:14 34:6,12
   39:15,17,17 41:15
   41:19 42:3,7
   45:13 47:13 48:3
   51:3,17 52:20
   55:3,23 66:7,17
   66:22 67:5,13,19
   69:5 71:24 72:3
   72:11,20 73:15
   76:2
old  32:22 34:17
   44:6 45:12 49:24
   79:21
omitted  42:20,22
omnibus  14:4
   15:10 16:1 21:12
   67:24
one's  37:19
ones  22:4 28:7
   53:18

ongoing  27:25
online  33:3
open  37:1 71:6
opening  40:8
opiates  38:11
opioid  53:1,4,5,6
   68:17 72:25
opioids  37:23 40:3
   40:7,10 43:6
   44:14 45:7 58:14
opportunity
   23:11
oppose  38:7
opposed  48:2
   51:23 62:7,12
   64:20 67:17
options  36:4
oral  19:5 54:22
   59:25 60:3
order  4:1,19 5:12
   6:7 7:1 18:8 19:21
   20:18,20 21:12,21
   22:18 23:4,24
   27:24,25 28:9
   30:24 31:25 34:4
   42:15 44:20,21
   45:1,2 48:24 49:5
   55:16,18,20 56:18
   58:4 71:3,17,19
   71:22,23 72:1,1,2
   72:5,10 74:10
   75:24
orders  48:19
   49:23 58:25 64:6
ordinary  63:21
original  43:20
   51:24
ostensible  65:11
otterbourg  11:10
   11:15
outcome  41:7
   75:20

outlets  38:4
outlined  28:6
outside  26:3 48:21
overlapping  25:8
override  56:20
overseas  74:14
owned  43:5 55:16
owns  45:6 46:22
oxycodone  34:19
oxycontin  38:11

**p**

p  17:1,1 18:1
   35:22
p.c.  11:10,15
packet  33:10
page  56:17 77:4
   78:4
paid  21:13 25:24
   25:25 45:15 59:13
   74:15,24
pandemic  68:11
   69:12
papers  50:12 69:3
   73:13
paperwork  42:23
   43:21
parents  43:23,24
part  18:17 19:21
   36:9 38:2 44:12
   56:12 60:22
particular  23:19
   23:23 33:23 50:13
   62:17,23 73:9
parties  19:4 61:9
   66:3 69:21 71:4
   71:10 75:1
partners  10:2,7
partnership  62:1
party  56:12 59:23
   60:9 63:18,20
patent  24:7
pausing  61:2

**pay** 25:14,21
**payment** 16:8
  48:9 59:3 73:3,6
  73:21,22 74:8,10
  75:10 78:16
**penalties** 56:24
**pending** 20:6
  59:20 75:20
**people** 18:18
  19:18 29:23 32:1
  32:4,18 37:2,3,14
  38:9,9,10 43:6
  47:14
**percent** 26:8
**perdue** 33:2
**period** 7:17,23 8:3
  8:11,19 9:12,20
  10:6,14,23,24
  11:5,13,22,23
  12:7,9,17,19 13:4
  19:20 30:18 69:19
**period10/1/2021**
  9:5
**permission** 69:9
**permits** 48:24
  61:23
**permitted** 56:22
  62:4 73:25
**permitting** 64:19
**person** 35:19,19
  38:16 41:9 66:23
**personal** 13:14,22
  14:6,12,21 30:21
  31:12 33:21 39:12
  40:4 44:15 57:1
  58:6 71:5 73:8
  75:3
**pertains** 29:22
**peter** 42:22 43:18
  44:9 47:17 51:10
  52:14 64:8
**pgt** 26:25 27:2,11

**pharma** 1:8,12
  3:1,4,5,5,5,12,16
  3:16,17,17 4:15
  4:23 5:8,16 6:3,11
  6:21 7:5,9 14:8
  15:13 16:4,14,21
  18:3 33:2 43:2,17
  44:16,22
**pharmaceutical**
  3:6,18
**pharmaceuticals**
  3:7,8,19,20
**pharmacy** 32:14
**phone** 18:19
  30:13 31:3 42:4
  67:18 72:18 73:16
**physical** 41:12
**physically** 31:16
**physician** 53:7
**pi** 40:11,17 73:11
**picture** 45:9
**picture's** 42:5
**piecemeal** 75:11
**pinnock** 49:1,2,16
  49:19
**pioneer** 29:15
  50:14 61:25 63:5
  63:11,13,22 68:2
  70:8,11
**pjt** 10:2,7
**place** 22:11 36:23
  37:12 59:15 71:9
  74:3,17
**plains** 1:21
**plaintiff** 1:13
**plan** 10:14 24:19
  32:3 36:22 37:12
  38:23 44:22 45:2
  61:18 65:1,2
  70:23,25 71:1,3
  73:4
**planning** 25:20

**plants** 45:10
**playing** 32:4
**plays** 38:20
**plc** 44:17,23 45:4
  53:2
**pleading** 41:10
  53:12,13 76:9
**pleadings** 64:4
  69:15
**please** 58:10
**podium** 21:3
  28:22 41:16
**point** 25:9 26:12
  26:12 27:2,14
  28:16 32:24 36:5
  36:13,14,21 39:13
  46:7,12 48:12,18
  54:16 57:18 60:13
  75:19 76:3
**polk** 8:8,12 17:3
  18:13 21:6,11
  24:6 29:1 41:21
  67:21
**porter** 7:22,24
  24:20
**position** 68:25
**positions** 55:10
**possession** 8:11
  10:3
**possibility** 51:1
**possible** 47:25
  49:7 64:15 73:2
**post** 32:14
**postage** 45:15
**postal** 68:11
**postmark** 45:15
**postmarked** 45:18
**posts** 32:20
**potential** 71:11
**power** 54:1,11
  60:4,8,12
**practicable** 75:6

**practice** 21:20
**pre** 4:3
**precedent** 35:22
**prefer** 59:11
**prejudice** 39:4
  56:8 61:18 62:21
  65:17 68:18 70:20
  70:24 71:1 72:5
  74:25 75:14
**prejudiced** 65:4
**prejudicial** 71:9
**preliminary** 3:3
  3:14 4:3 19:3 20:6
  29:9 77:6
**premature** 75:21
**prepare** 26:4
**prepared** 21:11
  24:24 39:4
**prepares** 22:14
**preparing** 26:1
**preponderance**
  62:15
**prescribed** 37:23
**present** 17:21
  21:24 31:5,6
**preserved** 28:2
**pretty** 23:9 40:14
**prevail** 70:6
**prevent** 23:22
**prevented** 40:20
**previous** 66:8
**previously** 20:14
  63:12 75:8
**price** 42:18,20
  52:23,24 54:3,22
  56:7
**primarily** 18:4
  26:10 65:9
**primary** 24:6,9,14
  70:12
**prime** 9:10,13
  26:18

principle 63:24
prior 20:5,11,14
  48:24 49:5,23
  58:9 59:8 64:6
  68:5 70:21
pro 30:11 47:4
  57:12 73:19
probably 18:18
  34:24 36:3 37:12
  40:13 52:15
probe 35:17
problems 40:19
  40:19 41:3
procedural 60:22
procedure 59:7
proceed 29:18
proceeding 4:4
  50:8
proceedings
  50:17 76:15 79:4
process 21:19
  36:10 56:15 59:15
  60:13,23 75:13
produced 43:6
production 44:14
products 3:6,18
professional 7:13
  7:15,21 8:1,7,15
  9:1,4,9,16 10:1,10
  10:18,24 11:9,17
  11:23 12:1,5,9,13
  12:19 22:10,15
  23:19 24:4 25:3
professionals
  21:14,14,15 24:18
  25:10 26:14 27:16
  28:15
prolongation
  26:16
prolonged 26:23
prolonging 43:13
promptly 39:11
  75:6

promptness 61:10
proof 4:8 5:1,19
  6:14 15:1,16 30:6
  39:10,11 50:25
  58:8 64:20 65:5
  69:9 77:10,13,17
  77:20 78:8,11
proofs 15:11 16:2
  30:4 33:10 50:7
  64:7 68:5 75:11
properly 51:22
property 24:7
proponent 70:25
propose 21:20
  30:7
proposed 4:19
  5:12 6:7 7:1 20:18
  21:21 71:22
prospect 71:10
prospective 25:19
prospects 20:15
provide 19:15
  43:22 44:3 68:4
provided 19:16
  70:1 71:22
providing 25:19
  27:4
provision 49:10
  49:14
proviso 20:21
public 49:3
puerto 3:6,17
purdue 1:8,12 3:1
  3:4,4,5,5,6,6,7,12
  3:16,16,17,17,18
  3:18,19 4:15,23
  5:8,16 6:3,11,21
  7:5,9 14:8 15:13
  16:4,14,21 18:3
  32:7 33:1 35:5,9
  43:2,3,16 44:10
  44:14,16,22 53:15
  53:24 54:21 56:18

56:21,23
purdue's 34:14
purport 56:19
purpose 61:8
  65:11
purposes 26:19
  62:9
pursuant 4:2
  21:15 49:20 73:4
pursue 74:22,23
put 34:19,25

**q**

quarropas 1:20
question 23:1
  29:21 34:13 35:6
  35:9 53:14 55:12
  60:25 66:6,12
questioning 36:12
  36:13
questions 21:23
  43:23 44:1
quickly 18:19
  73:2
quite 22:4 33:8
  37:23 64:4 66:17
  67:6
quotations 61:7
quoted 54:7
quoting 49:2,16

**r**

r 2:1 17:1 18:1
  79:1
raise 24:4
raised 46:20 75:7
raises 48:12
ramp 19:17,20
rarely 63:18
rate 27:7
rdd 1:3,4 4:5
  13:24 43:3
reach 32:18
reached 21:10
  61:19

read 30:9 52:8
  53:13,13
reading 52:20
ready 28:9 30:17
realized 40:11
really 24:2 25:21
  26:17 28:7 29:24
  32:1 34:17 35:8
  35:14,17,24 36:5
  36:19,19,21 37:8
  40:12 41:8,9 46:8
  47:3 48:12 49:22
  51:15 52:1,2,8
  57:13
reason 19:17
  36:16 62:22 63:13
  68:3,4
reasonable 36:1
  61:9 63:14 70:4,9
reasons 20:11,14
  31:17 35:18 49:11
  49:14 59:7 65:25
  69:2,2
recalibrate 19:14
receive 32:10
  56:23 73:3
received 30:17
  33:16 42:15 58:4
recognized 26:2
  48:24 71:8
recognizes 33:18
reconciliation
  59:14
reconsider 59:10
  76:12
reconsideration
  13:8,19 14:5,10
  14:19 41:24 48:7
  48:8,19,24 49:6
  49:23 57:20,21
  58:25 59:9,17,17
  60:6,7 77:23

**record** 18:13 19:1
21:6 27:22 28:1
29:1 39:2,5 41:21
60:16 67:21 79:4
**records** 26:22
33:9,10
**recourse** 36:7,8
**redbow** 16:9,18
72:16 73:17,19
78:16
**reduced** 22:6
26:12,15
**reduction** 26:8
**reductions** 21:13
21:17,21 22:4,8
22:11,16,17 23:5
23:14,17
**refer** 47:18
**reference** 47:17
53:13
**referenced** 64:5
**referred** 43:21
**referring** 55:21
**reflect** 22:3 28:1
**reflected** 22:17,18
**reflecting** 21:21
**reflects** 21:12
23:5
**regard** 27:11 69:8
**regarding** 4:13
5:6 6:1,19 15:6,21
16:12 20:21 68:11
**reimbursement**
7:16 8:9,18 9:5,11
9:19 10:5,12,22
11:13,19 12:6,16
13:2
**reiterate** 20:8
**related** 3:14 4:5
4:14,22 5:7,15 6:2
6:10,20 7:4 10:14
13:25 14:1,1,7,13
14:22,22 15:7,12

15:22 16:3,13,19
24:18 53:1 60:5
68:17 70:21
**relationship**
56:17
**relatively** 24:13
25:9
**release** 56:16
59:23 60:9
**released** 56:13
**releases** 56:19,21
**relevant** 65:9
**relief** 19:25 31:21
48:5,15,21,22,25
49:12,15,20 52:5
57:23,24 58:23
60:4,14 73:5,9,11
73:25,25 74:18,20
75:21
**rely** 32:4
**relying** 54:20
**remain** 72:24
**remainder** 28:13
28:23
**remaining** 68:10
**remember** 76:10
**remotely** 18:4
**rendered** 7:16 8:9
8:17 9:4,11,19
10:4 11:13,19
12:5 13:2
**renegotiate** 61:19
**reorganization**
20:15 44:22 45:3
60:23 61:12 73:4
**reply** 3:21
**report** 21:9 22:14
**representations**
69:22
**representative**
52:13
**representatives**
21:25

**represented** 64:14
**representing**
52:25
**request** 48:22,25
50:1,1 59:2,4
60:14,15 61:22
65:16 69:3 73:14
**requested** 19:4
20:2 21:18 29:14
31:21 68:13 73:24
**requesting** 16:8
50:19 78:15
**requests** 63:24
75:8,14
**require** 65:21
**required** 58:8
74:1
**requirements**
59:5
**research** 33:1,6
**resolutions** 21:10
**resolve** 75:5,16
**resolved** 23:24
56:15
**respect** 21:19
40:18 41:25 48:5
48:9,19 50:25
54:21 59:22 60:1
61:21 63:24 65:13
67:23 68:3,25
72:2,18 74:18
**respectfully** 69:3
73:14
**respond** 40:12
46:11
**responsibility**
24:9
**responsive** 43:22
**rest** 73:13
**restrictions** 69:25
**restructuring**
44:23 56:16

**result** 44:2
**results** 65:3
**retained** 27:3
**retention** 8:19
10:13 24:11
**retired** 34:18
**reversal** 74:9
**reversed** 60:10
71:1
**review** 21:22 25:2
25:5
**reviewed** 20:19
23:5 50:9 64:14
72:20
**revived** 65:2
**rhodes** 3:8,8,20
3:20
**richard** 43:18
44:9 47:15,16
51:10 52:13 64:8
**rico** 3:6,18
**right** 18:24 20:3
20:21 22:9 30:9
30:23 31:9 32:9
33:14 37:25 38:5
45:8 46:2 47:2
51:3 54:15 56:10
65:18 69:5 71:18
73:15,18
**rights** 37:19 72:6
**rises** 41:1
**road** 79:21
**robbed** 43:8
**robert** 2:2 47:15
**robertson** 17:9
21:3,5,6,9 22:9,21
23:4 28:21
**room** 1:20 53:7
**rudnick** 10:20,24
11:1
**rule** 13:14,21
19:18 48:18,21,22
48:23,23 49:11,13

49:15,21,25 59:6
59:6 60:8 61:21
61:23 63:19,19
68:2 78:6
**ruled** 48:12 60:9
66:24 75:8 76:11
**rules** 19:12 36:22
63:1,2 64:18
**ruling** 19:9,15
20:7 57:9,18 59:9
59:10 60:2 61:2
66:22 67:4 70:21
70:22
**rulings** 20:8,12
59:8 77:3 78:3
**russians** 43:1

**s**

**s** 3:3,15,15 4:6,14
4:22 5:7,15 6:2,10
6:20 7:4 13:25
14:1,7,14,22,23
15:7,12,22 16:3
16:13,20 17:1
18:1
**s.d.n.y.** 61:6,14,15
**sackler** 42:19 43:5
45:5 50:25 55:16
**sacklers** 43:8
46:18,23 55:14
**sale** 44:14
**satisfy** 67:25
**saw** 29:24 32:24
**says** 39:25 45:15
51:25 58:5 72:1
**schedule** 19:5
**scholer** 7:22,24
**scott** 8:4 17:8
**screen** 18:5,16
**screenshot** 42:8
**sdny** 71:15
**se** 30:11 47:4
57:12 73:19

**second** 10:11 19:4
19:8,12,15,17
20:8,12,17 25:9
49:7 51:5 57:16
59:25 60:11 63:8
63:10 70:5 74:20
75:2,19
**section** 18:18
25:17
**security** 43:19
**see** 26:21 31:9
32:15,20,23 33:9
36:9,23 37:13
38:19 45:7 49:15
50:12 55:6,7 61:5
61:13 63:25 71:13
**seek** 20:21 72:6
73:12
**seeking** 48:6
49:23 51:20 57:23
58:17 68:16,21
73:21 74:22
**seeks** 48:15 58:23
58:25 74:8
**sees** 51:2
**seminal** 75:2
**sense** 25:6
**sent** 43:14 74:13
**separate** 52:6,19
72:1,2 74:2
**separately** 75:25
**september** 33:7
**seq** 74:2
**seriousness** 19:7
**serve** 60:22 61:8
74:11
**service** 27:4 38:17
49:3 68:11
**services** 7:15 8:9
8:17 9:4,11,19
10:4,14,22 11:12
11:19 12:5 13:2
24:12 25:19 61:25

**set** 18:8 19:6,21
30:1 31:24 35:21
39:3 41:9 43:23
48:17 51:24 58:21
59:25 60:19 67:24
68:1,7,10,22 69:2
75:1
**sets** 32:3 59:10
**settlement** 21:16
**settlements** 61:19
**seven** 68:8 70:18
**seventh** 7:8,14,21
8:1,8,15,16 9:2,16
9:17 10:2,18,19
11:3,12,18 12:2
**shape** 40:12 65:3
**she'd** 42:2
**shield** 53:9
**short** 53:25
**shorten** 19:22
20:22
**shortly** 33:6
**show** 33:18 45:9
62:6,14,15
**showing** 42:6
48:25 70:1
**shown** 19:22
63:16 64:22 73:1
**sibling** 48:1
**side** 32:4
**sign** 76:3
**signature** 79:7
**signed** 4:1,1
**similar** 30:14 45:6
46:16,17 47:23
50:10 67:14 71:8
73:8 75:8
**simply** 20:20
23:14 37:19 43:11
55:6 74:23
**single** 21:11
**sir** 32:11,11 34:11
34:16,20 35:13

39:16 52:24 76:12
**sit** 19:19
**situations** 74:21
**six** 53:9,9
**sixth** 12:14 13:1
**skadden** 9:17,22
24:21
**skills** 36:18
**slate** 9:18,22
**social** 32:20,21,23
38:2 43:19
**solutions** 79:20
**son** 42:14 43:8
44:8 45:8 48:1
58:2,9,11
**son's** 52:11
**sonnax** 75:2
**sonya** 16:25 79:3
79:8
**sophistication**
27:19
**sorry** 45:19 47:14
53:11 54:16 55:20
56:1,5,6 57:2,10
61:2,3 66:2,24
67:3 70:15 72:15
72:16 76:11
**sort** 27:20 32:3
36:21 67:15
**sotille** 43:18 44:9
47:17
**sotille's** 42:22
51:10
**sottile** 64:8
**sought** 22:7 47:23
49:20 52:5
**southern** 1:2
44:19
**spalding** 8:2,4
**speak** 42:19
**speaking** 65:6,8
**special** 7:15 8:2
9:19

specific  33:20 49:13,20
specifically  30:20
specificity  41:8
spent  26:25
spoke  42:17
spouse  53:5
standalone  65:5
standard  23:21 40:23 50:15,17 68:1 69:7
star  42:25 58:11
start  39:7 58:11 65:12 75:10
started  33:1
state  20:10 44:16 69:15 74:14
stated  20:11 37:22 37:22 59:7 65:25
statement  4:19 5:12 6:7 7:1 14:10 14:18,18 40:14
statements  43:13 50:23 74:13
states  1:1,19 43:21 44:12 48:10 49:16 58:5,7 69:16 73:24 74:5
stating  43:14 46:5 59:9
stay  74:3,17,19,22
stems  56:14
step  61:12 62:2
steven  15:2,6,12 15:21 16:3 66:2,5 67:16 78:9
story  32:24
strain  53:3
strategic  62:8
street  1:20 17:15
strict  67:25
struggles  31:16

stuff  35:1
subjects  61:18
submit  21:20 27:25 35:13 72:10 75:24
submitted  22:18 27:24 71:19
submitting  23:25 38:2 43:24
subsequently  63:23
substantial  22:4 26:22 68:20 69:19 70:14,17,18 71:8
substantially  26:11,15
successful  60:21 61:12 71:2
suffered  36:10 44:7 48:1
sufficient  68:4 69:23
suggested  18:15 30:6
suggesting  50:22
suggestion  32:13
suite  79:22
supplement  44:4
supplemental  14:10,18,18
supplemented  57:20
support  3:13
supporting  69:9
supportive  55:10
supreme  61:25
sure  22:1 27:16 28:24 52:21 61:4 73:16
surfacing  71:11
sympathetic  38:16 72:25

syndrome  43:25

t

t  44:25 79:1,1
take  18:21 35:15 52:10 59:15
taken  19:8 63:10 70:7 71:9
takes  60:15
talk  46:25
talked  27:1 57:5
talking  46:13 47:5
tasks  25:6
tax  26:19
teamsters  49:17
technical  45:3 51:15
technologies  3:7,8 3:19,20
telephone  18:6 39:20
telephonically  17:8,9,10,11,18 17:19,21
television  32:23 38:3
tell  29:24 37:17 42:21 46:18
template  67:15
ten  34:24
tens  38:9
terminate  19:23 20:22
terms  74:3
test  62:2 63:5,22
tests  70:11
thank  18:12 20:24 27:13 28:5,10,18 28:19 29:4 34:5,7 39:17 41:14 51:9 67:7,10,12 72:9 75:23 76:1
thick  33:11

thing  38:6,21 39:6 40:16 54:14,18
things  25:7 26:21 31:15 34:21 57:13
think  19:3 22:5,22 23:19 25:1,13 27:1,14 28:21 29:22 32:25 35:12 36:3 37:7,7,10,21 40:16 46:7 48:11 48:16 55:15 57:14 57:24 66:1 67:15 71:16 72:11 73:20
third  56:12 59:23 60:9 63:13 70:7
thomas  17:18
thornton  10:11,16
thought  36:8 50:9 71:21,21
thousands  38:9,10 59:12 75:3
three  19:24 29:22 33:11 47:14 53:6 58:16 71:17,22
threefold  48:6
tilt  70:11
time  3:2 19:18 26:1,22,22 33:8 34:14,20 37:24 38:22 39:2 42:17 43:10,12 44:1 54:1 75:9 77:5
timeline  35:23
timely  30:8 31:17 31:22 40:1,20 50:3,7,11,20 51:24 58:19 59:4 60:18 62:7 63:7 64:6,11 65:19 69:24 70:2,8,13 71:12
times  59:11 73:7

timing 36:13
timothy 15:7,12
  15:17,22 16:3
  66:5 67:16 78:12
titled 73:18
today 18:4 20:9
  21:24 29:7 35:3,4
  37:2,5 39:5 55:11
  57:24 59:9 72:12
  76:3
today's 18:7 34:1
  60:16
told 41:11 56:6
tolling 5:2 77:14
tool 25:20
tornado 33:7 34:3
tort 16:8,13,19
  72:17 73:19 74:1
  74:4 78:15
torts 74:5
totally 38:6
track 43:12
traditionally
  25:24
transcribed 16:25
transcript 79:4
transdermal 3:7
  3:19
treated 71:25
treatment 71:5
tremendously
  36:10
trial 4:3 44:17,17
tristan 4:9,14,20
  5:13 6:8 7:2 30:11
  77:11
trouble 31:6
  43:12
true 49:19 79:4
trust 38:24
trustee 25:12
try 36:9 60:8

trying 32:18
  34:23 35:17
turn 28:22 41:16
  67:13 74:10
tweak 18:15
twenty 4:1
twice 48:13
two 19:24 41:17
  41:18,23 49:23
  53:4 58:25 62:2
  66:2 67:14,19,23
  70:1,20 71:12
  73:24
type 50:13 75:21
types 24:10 75:7

**u**

u.s. 2:3 25:12
  44:18 45:15 61:13
u.s.c. 4:2
ucc 55:9
ukrainian 45:12
ukrainians 43:1
ultimately 58:17
  68:18
unable 39:25 44:1
unclear 47:20,24
uncontested
  19:11 20:25 29:5
  29:22 30:15
undated 45:14,14
  52:22
underlying 38:18
understand 20:20
  27:2,3 40:14 46:4
  46:7,15 53:14,23
  54:3,13 55:9
  57:13,14 60:8,16
  66:17 73:6
understandable
  26:23
understanding
  30:5 53:16 54:17

undertaken 62:16
unduly 51:14
  75:13
unfair 53:20
unique 26:2
united 1:1,19
  49:16 74:5
universally 68:12
universe 32:2
unknown 2:5
  62:14
unnecessary
  24:17
unopposed 20:4
  30:19
unquote 44:5
unrepresented
  30:10 41:9
unsecured 33:21
  42:18 74:19
untimely 55:17
unusually 19:19
updates 20:20
upended 38:10
usc 56:20 74:1
use 25:20 38:10
  48:9 68:17
useful 25:12
usually 63:2 74:21

**v**

v 1:14 3:1,12 49:1
  49:3,16 62:1 63:3
va 34:23 37:23
vacating 49:5
vague 40:14
validity 59:23
value 32:3
various 21:15,18
  21:25 27:15 28:15
  69:25
venture 63:3
veritext 79:20

vermont 49:2
versed 52:7
veteran 34:18
  38:16
vi 18:23 20:25
  21:1
victim 53:6,6
victims 29:11
  31:21 41:1 45:7
  53:4,18 55:9
  68:24
videoconference
  3:10 4:5,10,16 5:4
  5:9,21 6:4,16,23
  7:11 13:11,17,24
  14:15 15:3,18
  16:10,15
viewed 51:22
  70:24
virtual 21:2
vis 38:22,23
vision 40:19
voluntary 22:11
  23:16
vonnegut 7:9
vote 45:21

**w**

waiting 59:14
walk 29:16
want 23:3 29:8
  33:22 35:8 36:1
  36:23 37:13 46:25
wanted 25:15
  27:21 29:9 45:10
wardless 21:7
wardwell 8:8,13
  17:3 18:14 29:1
  41:21 67:21
warmth 58:12
warranted 48:16
waste 54:1
watch 34:17 35:8

**way** 19:14 27:15
40:7 50:23 54:2
56:4 65:2
**wayne** 4:21 5:14
5:20 6:2,9 7:3
17:22 34:9 77:18
**we've** 24:25 50:9
73:1
**weeks** 43:10,10
**weighed** 63:10
**weight** 63:15
**welcome** 67:13
**went** 69:7
**westinghouse**
64:1
**whatsoever** 28:7
60:5
**white** 1:21 44:6
**willfulness** 62:7
62:13
**wilmington** 17:16
**wise** 57:11
**woman** 44:7
**wondering** 56:2
66:10
**work** 24:7 26:11
26:14,16,17,18,18
26:19,20 27:10
75:15
**working** 38:17
**world** 43:7 46:18
**wrinkle** 70:25
**writes** 52:24
**wrong** 25:23

**x**

**x** 1:5,11,17 77:1
78:1

**y**

**year** 35:11 49:24
58:21 64:25 71:5
**years** 34:17,20,24
34:24 36:6,11
43:11

**york** 1:2 17:6
44:19

**z**

**zoom** 18:4 29:7
30:13 31:4 34:10
39:20 42:3 67:18
73:16
**zoomgov** 3:10 4:5
4:10,17 5:4,9,21
6:4,16,23 7:11
13:11,17,24 14:16
15:3,18 16:10,15

**à**

**à** 38:22