DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' AND THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' JOINT RESPONSE TO
MOTIONS TO FILE PROOFS OF CLAIM AFTER CLAIMS BAR DATE**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors**") and the Official Committee of Unsecured

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Creditors (the "**Creditors' Committee**") submit this joint response to the motions to file proofs of claim after the claims bar date by Jeffrey Karl Driver ("**Mr. Driver**") [Dkt. No. 4711] (the "**Driver Motion**") and Douglas C. Gallup ("**Mr. Gallup**" and, with Mr. Driver, the "**Movants**") [Dkt. No. 4728] (the "**Gallup Motion**" and, with the Driver Motion, the "**Motions**"), and respectfully state as follows:

    1.    The Movants, both incarcerated, request that this Court extend the bar date as to them to allow them to file late proofs of claim.[2] (Driver Mot. at 1; Gallup Mot. at 1.) Using the same form of a motion, the Movants assert that "[t]he global [p]andemic has slowed and [even] halted [their] li[ves]" and that "[d]ue to the nationwide lockdown, [their] ability to communicate and correspond has become hinder[e]d and also come to a standstill at times"—all of which "was out of [their] control." (Driver Mot. at 2; Gallup Mot. at 1.) Movants also assert that, "[a]t the time [they] tried to acquire the required claim documents, the United States Postal Service ["**USPS**"] was lacking in funds" and because of this, "the affected states [were] informed[] mail would be late for outgoing and incoming . . . at the same time and several months prior to and after the [C]ourt['s] new 'Bar Date.'" (Driver Mot. at 2-3; Gallup Mot. at 1.) Mr. Driver asserts that he is "currently incarcerated in the Washington State Penitentiary and ha[s] been . . . since October 26[,] 2010." (Driver Mot. at 3.) Mr. Driver further alleges that he has "spent a total of 4 months [i]n quarantine[,] two months in 2020, and another two months at the end of 2021 due to COVID outbreaks in the facility," and that he "only receive[s] 20 minutes a day out of [his] cell to shower and use [the] phone during [q]uarantine[.]" (*Id.*) Mr. Driver further asserts that he is "ignorant to what all is transpiring in the outside world" because "very few publications are allowed" and "*USA Today*[] and *News Tribune* must be purchased from an outside vendor,"

---

[2] Each of the Movants filed a proof of claim in March 2022.

2

which he was unable to do because he is "an indigent inmate". (*Id.*) Mr. Driver indicates that he sent a request for claim forms to the Debtors' claims and noticing agent, Kroll LLC ("**Kroll**") (formerly d/b/a Prime Clerk LLC) "on or [about] January[] 2022." (*Id.*) Mr. Gallup makes substantially similar allegations regarding limited time out of his cell, and lack of free publications but asserts that he has been incarcerated in Washington State "since 2019" and that he requested a claim form from Kroll "on or about the month of February 2022." (Gallup Mot. at 1-2.) After careful consideration, the Debtors and the Creditors' Committee do not oppose to the relief sought in the Motions.

2. Courts have discretion to allow a late proof of claim upon motion of a late-claimant showing "excusable neglect." Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'"). The burden of meeting the *Pioneer* test for excusable neglect falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" and that the neglect was "excusable." *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010). A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In*

*re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

3.  The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11.) Put simply, courts rarely extend the bar date for late-claimants; however, for the reasons set forth below, the Debtors and the Creditors' Committee believe there is a sufficient basis to grant the Motions.

4.  With respect to the most important factor—factor 3, the reason for the delay— diligence performed by counsel to the Creditors' Committee regarding the individualized assertions made in the Motions confirmed that Mr. Driver and Mr. Gallup have been incarcerated in Washington[3] since April 2006 and October 2019, respectively, well before the period during which the Debtors were providing notice of the July 30, 2020 bar date. (*Third Suppl. Decl. of Jeanne C. Finegan* ¶ 7 (Aug. 5, 2021), Dkt. No. 3403 ("**Finegan Decl.**").) Although

---

[3] The Debtors and the Creditors' Committee understand that both Movants were incarcerated at either the Washington Corrections Center or the Washington State Penitentiary at various times during their incarceration in Washington.

4

incarceration, in itself, is not sufficient to justify the filing of a late claim, *see, e.g.*, *In re Motors Liquidation Co.*, 599 B.R. 706, 716 (S.D.N.Y. 2019) (noting that neither mistake of law nor incarceration constitutes "excusable neglect"), both Movants assert that the combination of lockdowns related to the COVID-19 pandemic, postal delays, limited time out of their cells, and no access to newspaper publications contributed to the delay. (Driver Mot. at 1-3; Gallup Mot. at 1-2.)

5.  Although close, *Pioneer* factors one and two—prejudice to the Debtors and impact on the chapter 11 cases due to the length of delay—weigh in favor of allowing these two additional claims as timely. The Debtors and the Creditors' Committee are guided by the Court's remarks at the May omnibus hearing that "we may be reaching th[e] point going forward [where] it may be too late to be filing [] a [late claim] motion even if someone did[] [not] have notice before the bar date back in July of 2020." (May 18, 2022 Omnibus Hr'g Tr. 41:5.) However, the Debtors and the Creditors' Committee believe that allowing these two additional late claims as timely is reasonable in light of late claim motions by similarly-situated movants that were heard in May and allowed as timely, and will not encourage additional latecomers. As an initial matter, the length of the delay in the filing of the Motions—and submission of the related proofs of claim—is similar to (and in some cases shorter than) the delay in the filing of other late claim motions and claims recently allowed as timely and, thus, the equities favor treating the Movants consistently. (*See* Order Granting Late Claim Motions (May 20, 2022), Dkt. No. 4860.) For example, both Movants filed their proofs of claim in March 2022.[4] Similarly, two of the late claim movants who had their motions heard in May and their claims

---

[4] Information in this paragraph regarding the timing of the filing of certain proofs of claims is based on information obtained by the Debtors from the claims register maintained by Kroll.

allowed as timely (*see* Dkt. Nos. 4646, 4653) filed their proofs of claim in March and April of this year. Moreover, although both Motions were noticed for the June omnibus, the Driver Motion—dated April 24, 2022—was filed on April 28, 2022, and the Gallup Motion was filed two business days after the Driver Motion, on May 2, 2022, but is dated April 6, 2022. Likewise, two of the late claim motions from May that were granted are dated April 2, 2022, and April 4, 2022, respectively (*see id.*).

6.    Importantly, no additional latecomers will be able to rely on such similarities regarding the filing of their proofs of claim ***and*** their motions to allow those claims as timely in order to "squeak under the [l]ine" now that we are approaching two years since the July 30, 2020 bar date. (*See* May 18, 2022 Omnibus Hr'g Tr. 41:5-10.) *Cf. In re Enron,* 419 F.3d at 132 (finding that bankruptcy court properly considered "the opening of the 'floodgates' to similar claims" and whether potential claimants would "be[] prompted to file late claims in the wake of a ruling in [the movant]'s favor"); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *see also In re R.C. Diocese of Syracuse, N.Y.*, 638 B.R. 33, 39 (Bankr N.D.N.Y. 2022) (granting late claim motion where "[t]he court, as the gatekeeper, [could] use th[e] [statutory and common law safeguards of Rule 9006(b)(1) and the *Pioneer* factors] to prevent the floodgates from opening and hindering Debtor in its reorganization efforts."). Indeed, a review of the docket confirms that no other late claim motions currently are pending. Accordingly, the impact of an order by the Court allowing these two late claims as timely will not result in opening the floodgates to additional personal injury claimants—which could adversely affect the administration of the Debtors' estates—because such hypothetical

latecomers necessarily are not similarly-situated to the Movants. In fact, to the extent that any additional late claim motions are filed—particularly those based on such "form" submissions as have been filed recently by incarcerated individuals—consideration of the *Pioneer* factors will, in all likelihood, compel the Debtors to object, particularly given that these cases are approaching two years since the July 30, 2020 bar date (*i.e.*, July 30, 2022).

7. Finally, with respect to the last *Pioneer* factor, neither the Debtors nor the Creditors' Committee have any reason to believe that the Movants have not made their late claim requests in good faith.[5]

8. Accordingly, for the reasons set forth above, the Debtors and the Creditors' Committee are not opposed to the relief sought in the Motions, and note that, at the time of the filing of this response, no objections to the Motions have been filed. Moreover, the Debtors and the Creditors' Committee have consulted with counsel to the Ad Hoc Group of Individual Victims (the "**PI Group**"), and understand that the PI Group also does not oppose the relief sought in the Motions. Should the Court decide to grant the Motions, attached hereto as Exhibit A is a proposed order granting the Motions.

[*Remainder of page intentionally left blank*]

---

[5] The information provided to the Creditors' Committee by the Washington State Penitentiary is consistent with the assertions in the Motions regarding the timing of the Movants' incarcerations. Moreover, the information received was inconclusive with respect to whether either Movant had access to the law library at the Washington State Penitentiary during the bar date period.

Dated:  June 8, 2022
      New York, New York

| | |
|---|---|
| By: /s/ *Arik Preis* | By: /s/ *James I. McClammy* |
| AKIN GUMP STRAUSS HAUER & FELD LLP | DAVIS POLK & WARDWELL LLP |
| One Bryant Park | 450 Lexington Avenue |
| New York, NY 10036 | New York, NY 10017 |
| Telephone: (212) 872-1000 | Telephone: (212) 450-4000 |
| Arik Preis | Facsimile: (212) 701-5800 |
| Mitchell Hurley | Marshall S. Huebner |
| Sara L. Brauner | Benjamin S. Kaminetzky |
| | James I. McClammy |
| | Eli J. Vonnegut |
| *Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al. | *Counsel to the Debtors and Debtors in Possession* |