# EXHIBIT 2

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: September 16, 2019 4:43 PM<br>FILING ID: F127A0C412736<br>CASE NUMBER: 2018CV33300 |
| THE STATE OF COLORADO *ex rel.*<br>PHILIP J. WEISER, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>PURDUE PHARMA, L.P., PURDUE PHARMA, INC., RHODES PHARMACEUTICALS, L.P., MNP CONSULTING LIMITED, and RICHARD SACKLER, MORTIMER D.A. SACKLER, JONATHAN SACKLER, KATHE SACKLER, ILENE SACKLER LEFCOURT, BEVERLY SACKLER, THERESA SACKLER, DAVID SACKLER, RUSSELL GASDIA, MARK TIMNEY, CRAIG LANDAU, and JAMES DAVID HADDOX, individually,<br><br>Defendants. | ▲ COURT USE ONLY ▲ |
| Linda Imes, #19PHV5860<br>Christopher Dysard, #19PHV5859<br>SPEARS & IMES LLP<br>51 Madison Avenue<br>New York, New York 10010<br>Telephone: (212) 213-6996<br>Email: limes@spearsimes.com<br>Email: cdysard@spearsimes.com<br><br>T. Markus Funk, #43500<br>PERKINS COIE LLP<br>1900 Sixteenth Street, Suite 1400<br>Denver, Colorado 80202<br>Telephone: (303) 291-2300<br>Email: mfunk@perkinscoie.com<br><br>*Attorneys for Defendant Craig Landau* | Case No. 18CV33300<br><br>Courtroom 275 |

## DEFENDANT CRAIG LANDAU'S MOTION TO DISMISS

Defendant Craig Landau respectfully submits this Motion to Dismiss all claims asserted against him in the State of Colorado's First Amended Complaint ("Complaint" or "FAC"), pursuant to C.R.C.P. 12(b)(2) or 12(b)(5).

## CERTIFICATE OF CONFERRAL

Counsel for Dr. Landau certify, in accordance with C.R.C.P. 121, § 1-15(8), that they have conferred in good faith with counsel for the State about this Motion, and the State opposes the relief sought herein.

## PRELIMINARY STATEMENT

The State's Complaint is built to impress. Its breathtaking length (793 enumerated paragraphs spanning 206 single-spaced pages) and extensive footnotes (which cite many hundreds of documents) aim to convey the appearance, to the Court and the public alike, that the State's claims against each and every Defendant are invulnerable. But there is less than meets the eye.

Among the Defendants newly added to the Complaint is Dr. Craig Landau, who has served as the CEO of Purdue Pharma L.P. and Purdue Pharma, Inc. (collectively, "Purdue") since June 2017. Close analysis of the State's allegations against Dr. Landau – and of the documents that are cited in, and incorporated into, the Complaint – reveals that the claims against him should be dismissed. To begin, due process requires dismissal, as the State has failed to make the requisite showing of personal jurisdiction over Dr. Landau, who has never lived or worked in Colorado. For the most part, the Complaint either resorts to "group pleading" – impermissibly lumping Dr. Landau together with other Defendants – or makes wholly conclusory allegations that he "directed," "controlled," or "sanctioned" others' activities in

Colorado.  Any suit-related conduct that the Complaint does specifically attribute to Dr. Landau has no connection with Colorado, while the only substantive contact he is alleged to have had with Colorado does not relate to the State's claims against him.

Even if Dr. Landau were subject to personal jurisdiction in Colorado, dismissal would still be appropriate.  The State's claims against Dr. Landau sounding in fraud (that is, all claims except a single preferential transfer claim) should be dismissed because the State has failed to plead sufficient facts showing that Dr. Landau actively participated in the deceptive marketing campaign alleged in the Complaint, or that he proximately caused any of the alleged injuries. And the State's preferential transfer claim against Dr. Landau must be dismissed because, after Purdue's filing for bankruptcy on September 15, 2019, any such claim may only be pursued in the bankruptcy proceeding.  In any event, the statute under which that claim is brought – the Colorado Uniform Fraudulent Transfer Act ("CUFTA") – does not apply extraterritorially and, moreover, the State has failed to plead and substantiate essential elements of the claim. Alternatively, the Complaint should be dismissed, with prejudice, because it does not provide fair notice to Dr. Landau of the claims against him under even the basic precepts of Rule 8, much less the heightened pleading standard of Rule 9(b), and further amendments would be futile.

The severity of the opioid crisis in this country is not in dispute.  But long-established legal principles, applicable here no less than in the most commonplace of cases, dictate that the State's claims against Dr. Landau cannot stand.

## **BACKGROUND**

The following background is drawn from the allegations of the Complaint and Dr. Landau's affidavit submitted with this Motion ("Landau Aff.").

In October 1999, Dr. Landau joined Purdue as an Associate Medical Director, working on the company's research and development side.[1]  (Landau Aff. ¶ 10.)  From October 1999 until July 2013, he worked at Purdue's headquarters in Stamford, Connecticut.  (*Id.*; *see also* FAC ¶¶ 23-24[2] (stating that Purdue Pharma L.P. and Purdue Pharma, Inc. each maintains "its principal of place of business in Stamford, Connecticut").)  For "several years" prior to 2013, he served on Purdue's Executive Committee.  (FAC ¶ 28.)  In July 2013, he left Purdue to join Purdue Canada, a separate entity.  (Landau Aff. ¶ 11.)  In September 2013, he became CEO of Purdue Canada.  (*Id.* ¶ 12; FAC ¶ 47.)  He served as CEO of Purdue Canada for almost four years.  (Landau Aff. ¶ 12.)  During his time with Purdue Canada, his office was located in Pickering, Ontario, Canada.  (*Id.*)  In June 2017, he was appointed CEO of Purdue, the position he continues to hold today.  (*Id.* ¶ 13; FAC ¶ 47.)  In that capacity, he is also Chair of the Executive Committee.  (FAC ¶ 28.)

Dr. Landau is a resident, citizen, and domiciliary of Connecticut.  (Landau Aff. ¶ 3; *see also* FAC ¶ 47.)  He has never lived in Colorado.  (Landau Aff. ¶ 3.)  He has never owned, leased, or possessed any real estate located in Colorado.  (*Id.* ¶ 4.)  He has never had any assets secured by property in Colorado.  (*Id.* ¶ 5.)  He has never had any bank or brokerage accounts located in Colorado.  (*Id.* ¶ 6.)  He has never paid or owed income taxes in Colorado.  (*Id.* ¶ 7.)  He has never been registered to vote in Colorado.  (*Id.* ¶ 8.)  He has never been an owner, officer,

---

[1] The Complaint incorrectly states that Dr. Landau joined Purdue in 2000 as an Executive Medical Director.  (FAC ¶ 47.)

[2] The Complaint has two paragraphs numbered 22, and two numbered 23.  The citation here is to the second Paragraph 23.

or employee of any business with its principal place of business or headquarters in Colorado.
(*Id.* ¶ 9.)

The crux of the Complaint is that the sixteen named Defendants, as well as others,
"engage[d] in a years-long deceptive and reckless marketing campaign in Colorado and around
the country" (FAC ¶ 29), and that "Purdue specifically targeted its deceptive and reckless opioid
business at Colorado prescribers, patients, and the public to increase sales of opioids in
Colorado" (*id.* ¶ 30).  Yet the connections alleged in the Complaint between Dr. Landau and
Colorado are vanishingly few.  The Complaint does not allege that Dr. Landau ever physically
came to Colorado to speak with any prescribers, patients, or lawmakers; ever personally
communicated in any way with any prescribers, patients, or lawmakers in Colorado; ever
personally sent any Purdue promotional materials into Colorado; ever personally spoke with any
Purdue salesperson located in Colorado; or, indeed, was ever part of the sales or marketing
departments at Purdue.  The *only* personal contact Dr. Landau is alleged to have had with anyone
in Colorado is his signing, on behalf of Purdue, a contract with a Colorado resident for
unspecified "consulting services to Purdue" – *almost ten years ago*.  (*Id.* ¶ 154.)  Beyond that,
the Complaint cites only a few reports that mention Colorado, which were sent to or from a
group of people that includes Dr. Landau (*id.* ¶¶ 140, 560, 578, 614), and Dr. Landau's receipt of
reports concerning nationwide opioid and diversion data that are distributed widely throughout
the industry, from a service that happens to be located in Colorado (*id.* ¶ 153).[3]

---

[3] As discussed in Section I.D.4 below, the Complaint mischaracterizes certain documents
to suggest a Colorado connection where in fact there is none.

To compensate for the lack of facts demonstrating Dr. Landau's personal conduct in, or personal contacts with, Colorado, the Complaint broadly alleges, without specifying any time frame, that "[a]t the direction of [Purdue's] Board [of Directors], Craig Landau directed and controlled Purdue's business activities, including Purdue's deceptive and reckless marketing and sale of OxyContin and other opioids in Colorado." (*Id.* ¶ 47.) The Complaint also repeatedly attributes conduct and knowledge to, collectively, all "Defendants," "individual Defendants," or the "Executive Committee." And for good measure, the Complaint sweepingly alleges that "[e]ach Defendant acted jointly and in concert with each other named Defendant in committing all acts alleged herein." (*Id.* ¶ 50.)

Dr. Landau was not named as a defendant in the original complaint filed in this action. In the amended Complaint, the State asserts fourteen claims against him: seven claims under the Colorado Consumer Protection Act ("CCPA") (Claims 1-7); public nuisance (Claim 8); negligence (Claim 9); fraudulent misrepresentation (Claim 10); fraudulent concealment (Claim 11); one claim under the Colorado Organized Crime Control Act ("COCCA") (Claim 12); one claim under CUFTA (Claim 20); and civil conspiracy to defraud (Claim 23).

## <u>ARGUMENT</u>

Despite the State's prolix pleading, each of the claims against Dr. Landau should be dismissed, for the reasons set forth below.

## I.    **The Court Lacks Personal Jurisdiction Over Dr. Landau**

Personal jurisdiction is no mere technicality. Because "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power," it is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires*

5

*Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011).  "'[R]estrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation.  They are a consequence of territorial limitations on the power of the respective States.'"  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).  These fundamental limitations, mandated by the Constitution, require dismissal of the State's suit against Dr. Landau pursuant to Rule 12(b)(2).

A.    The State Must Make a Prima Facie Showing of Personal Jurisdiction

The plaintiff bears the burden of demonstrating that personal jurisdiction exists over each defendant.  *See Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1192 (Colo. 2005); *see also Bristol-Myers*, 137 S. Ct. at 1783 (personal jurisdiction requirements "must be met as to each defendant over whom a state court exercises jurisdiction") (internal quotation marks omitted).  Where, as here, a Rule 12(b)(2) motion can be decided on the "documentary evidence," the plaintiff must "demonstrate a prima facie showing of personal jurisdiction."  *Archangel*, 123 P.3d at 1192.  "Documentary evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties."  *Id.*  "A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant."  *Id.*

On this Motion, merely "conclusory" allegations in the Complaint must be disregarded.  *Gognat v. Ellsworth*, 224 P.3d 1039, 1052 (Colo. App. 2009) (finding "conclusory allegation" to be "insufficient to establish personal jurisdiction"); *see also Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (on a Fed. R. Civ. P. 12(b)(2) motion, "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as

true").[4] And the allegations that are not conclusory must be accepted as true only "to the extent they are not contradicted by the defendant's competent evidence." *Archangel*, 123 P.3d at 1192; *see also Consumer Crusade, Inc. v. JD&T Enters., Inc.*, 2006 WL 1748995, at *5 (D. Colo. June 22, 2006) (dismissing for lack of personal jurisdiction, holding that "[t]he court cannot assume [the alleged] facts as true when they are controverted by Defendants' admissible evidence").

In this connection, it bears emphasis that the Complaint cites hundreds of documents, in 741 footnotes. The State presumably takes this unorthodox approach to create the impression that its pleading is supported by an overwhelming amount of evidence. But this approach has consequences: every document cited in the Complaint is incorporated by reference into the pleading and properly considered by the Court on this Motion. *Cf. Gen. Steel Domestic Sales, LLC v. Hogan & Hartson, LLP*, 230 P.3d 1275, 1279 (Colo. App. 2010) (even on a Rule 12(b)(5) motion, a court considers "documents attached to, incorporated by reference in, or otherwise referred to in the complaint"). And if the State's characterization of a particular document is contradicted by the document itself – as is the case here with alarming frequency – the document must control. *See, e.g.*, *Stauffer v. Stegemann*, 165 P.3d 713, 716 (Colo. App. 2006) ("When documents are attached to a complaint, the legal effect of the documents is determined by their

---

[4] The Colorado Supreme Court has observed that "the Colorado Rules of Civil Procedure were modeled almost entirely after the corresponding federal rules, with the principal goal of establishing uniformity between state and federal judicial proceedings in this jurisdiction." *Warne v. Hall*, 373 P.3d 588, 593 (Colo. 2016). Generally, "when the Colorado and Federal Rules of Civil Procedure are essentially identical, case law interpreting the federal rule is persuasive in analysis of the Colorado rule." *Cielo Vista Ranch I, LLC v. Alire*, 433 P.3d 596, 612 (Colo. App. 2018) (internal quotation marks omitted). And, specifically, because "C.R.C.P. 12(b)(2) is virtually identical to its federal counterpart," Colorado state courts look to "federal precedent for guidance" on the "procedure for addressing a 12(b)(2) motion." *Archangel*, 123 P.3d at 1192.

contents rather than by allegations in the complaint.  Further, a trial court is not required to

accept legal conclusions or factual claims at variance with the express terms of documents

attached to the complaint.") (citations omitted); *Fairbrother v. Am. Monument Found., LLC*, 340

F. Supp. 2d 1147, 1153-54 (D. Colo. 2004) (holding that plaintiff failed to make a prima facie

showing of personal jurisdiction where documents attached to complaint undermined plaintiff's

"artfully drafted" allegations); *see also Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*,

2007 WL 438088, at *4 (S.D.N.Y. Feb. 8, 2007) ("[I]f the allegations of a complaint are

contradicted by documents incorporated in the complaint, the documents control and the court

need not accept the allegations of the complaint as true.").

     B.     <u>The Court Must Engage in a Due Process Analysis to Determine Whether
the State Has Demonstrated Personal Jurisdiction Over Dr. Landau</u>

Colorado's long-arm statute, C.R.S. § 13-1-124, has been interpreted to "confer[] the

maximum jurisdiction permitted by the due process clause[s] of the United States and Colorado

constitutions."  *Magill v. Ford Motor Co.*, 379 P.3d 1033, 1037 (Colo. 2016) (internal quotation

marks omitted).  Accordingly, courts must "engage in a constitutional due process analysis to

determine whether a Colorado court has jurisdiction over an out-of-state defendant."  *Id.*

Personal jurisdiction over a non-resident defendant satisfies due process only if the defendant has

sufficient "minimum contacts with [the State] such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice."  *Daimler AG v. Bauman*, 571 U.S.

117, 126 (2014) (internal quotation marks omitted).  This standard may be met by showing either

"general jurisdiction" or "specific jurisdiction."  *Magill*, 379 P.3d at 1037.  As discussed below,

the State fails to make a prima facie showing that this Court has general or specific jurisdiction

over Dr. Landau.

C.    Dr. Landau Is Not Subject to General Jurisdiction in Colorado

A court with general jurisdiction over a defendant "may hear *any* claim against that
defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-
Myers*, 137 S. Ct. at 1780 (emphasis in original).  Plainly, Colorado courts do not have such "all-
purpose" jurisdiction, *id.*, over Dr. Landau.  "For an individual, the paradigm forum for the
exercise of general jurisdiction is the individual's domicile[.]"  *Id.* (internal quotation marks
omitted).  As the Complaint acknowledges, Dr. Landau is a resident of Connecticut.  (FAC ¶ 47.)
He has never lived in Colorado; he has never owned property in Colorado; he has never paid or
owed income taxes in Colorado; he has never registered to vote in Colorado; and he has never
had an office in, or otherwise worked out of, Colorado.  (Landau Aff. ¶¶ 3-13.)  General
jurisdiction over Dr. Landau is indisputably lacking in Colorado.

D.    Dr. Landau Is Not Subject to Specific Jurisdiction in Colorado

1.    Governing legal principles

Specific jurisdiction, in contrast to general jurisdiction, is "case-linked" jurisdiction.
*Bristol-Myers*, 137 S. Ct. at 1780.  Determining whether specific jurisdiction exists over a
particular defendant requires a searching examination of the "relationship among the defendant,
the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation
marks omitted).

To determine whether the defendant has the requisite "minimum contacts" with the forum
State, courts consider "(1) whether the defendant purposefully availed himself of the privilege of
conducting business in the forum state, and (2) whether the litigation arises out of the
defendant's forum-related contacts." *Youngquist Bros. Oil & Gas, Inc. v. Miner*, 390 P.3d 389,

392 (Colo. 2017) (internal quotation marks omitted).  Then, if it is established that the defendant

had the requisite minimum contacts, "these contacts may be considered in light of other factors

to determine whether the assertion of personal jurisdiction would comport with fair play and

substantial justice." *Id.* (internal quotation marks omitted).  "These fairness factors include the

burden on the defendant, the forum state's interest in adjudicating the dispute, and the plaintiff's

interest in obtaining convenient and effective relief." *Id.* (internal quotation marks omitted).

The "purposeful availment" requirement focuses on the conduct of the defendant.  That

is, "the relationship must arise out of contacts that the defendant *himself* creates with the forum

State." *Walden*, 571 U.S. at 284 (internal quotation marks omitted, emphasis in original).

Critically, because "[e]ach defendant's contacts with the forum State must be assessed

individually," "jurisdiction over an employee does not automatically follow from jurisdiction

over the corporation which employs him." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781

n.13 (1984).  Further, "it is the defendant's *actions*, not his expectations, that empower a State's

courts to subject him to judgment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883

(2011) (plurality opinion) (emphasis added); *see also Walden*, 571 U.S. at 285 ("[I]t is the

defendant's conduct that must form the necessary connection with the forum State that is the

basis for its jurisdiction over him.").  And the exercise of specific jurisdiction is precluded when

the defendant's contacts with the forum state are merely "random, fortuitous, or attenuated."

*Walden*, 571 U.S. at 286 (internal quotation marks omitted); *see also Youngquist*, 390 P.3d at

392 ("[S]ingle or occasional acts related to the forum may not be sufficient to establish

jurisdiction if their nature and quality and the circumstances of their commission create only an

attenuated affiliation with the forum.") (internal quotation marks omitted).

The "arising out of" requirement precludes the exercise of specific jurisdiction over a defendant unless "the alleged injury arises out of and is related to" that defendant's contacts with the forum State. *Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC*, 234 P.3d 673, 678 (Colo. 2010); *see also J. McIntyre*, 564 U.S. at 881 (plurality opinion) (a defendant "submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State").

As discussed in detail below, the State has failed to make a prima facie showing of specific jurisdiction over Dr. Landau because it has not demonstrated that he purposefully availed himself of the privilege of conducting business in Colorado, or that the State's claims against him arise out of any contacts he has had with Colorado.

2.    Allegations impermissibly grouping Defendants together

Many of the allegations in the Complaint lump Defendants together, attributing conduct or motivations to one undifferentiated group or another, without any supporting allegations concerning Dr. Landau specifically.

In at least 195 paragraphs, the Complaint refers collectively to "Defendants" (of which there are sixteen); in at least 71 paragraphs, to the "individual Defendants" (of which there are twelve); and in at least 92 paragraphs, to the "Executive Committee" (sometimes naming selected members of the committee, and sometimes not).[5]  Additionally, the Complaint sometimes attributes conduct to "Purdue" in apparent reference not just to one of the entities

---

[5] Appendix 1 hereto lists the paragraphs of the Complaint in which selected terms are used to refer to groups of Defendants, as well as the paragraphs of the Complaint in which Dr. Landau is specifically identified.

bearing that name, but some undefined group of Defendants. (*E.g.*, FAC ¶ 34.) Furthermore, the

Complaint alleges that "*[e]ach Defendant* acted jointly and in concert with each other named

Defendant in committing *all acts alleged herein*." (*Id.* ¶ 50 (emphasis added).) In other words,

even when it seems that the Complaint is singling out a particular Defendant, those allegations

actually extend to the entire group of Defendants. The State leans so heavily on these collective-

pleading devices in an effort to mask severe weaknesses in the evidence against Dr. Landau and

to obscure critical distinctions among the Defendants.

Such group-pleading allegations are insufficient to establish specific jurisdiction over Dr.

Landau. *See, e.g.*, *Goodwin v. Bruggeman-Hatch*, 2014 WL 4243822, at *1 (D. Colo. Aug. 27,

2014) ("Plaintiff's sweeping, undifferentiated references to groups of defendants (or even more

globally to 'defendants' generally) are insufficient to . . . establish personal jurisdiction[.]"); *see

also, e.g.*, *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 195 (E.D.N.Y. 2018) (dismissing

claims against officer for lack of personal jurisdiction where "plaintiff's conclusory and vague

allegations in the amended complaint, which generally refer to 'defendants' in the plural and fail

to describe [the individual defendant's] specific role, if any, in the alleged acts of which plaintiff

complains, are insufficient to demonstrate [his] personal involvement in any of the alleged

misconduct").

3. <u>Conclusory allegations of direction and control</u>

The centerpiece of the State's case against Dr. Landau seems to be the contention that the

conduct of *other* Purdue employees in Colorado should be imputed to Dr. Landau due to his

senior positions at the company. (*See, e.g.*, FAC ¶ 47.) However, while allegations of torts

committed by Purdue employees in Colorado may be sufficient to establish personal jurisdiction over *Purdue*, they are insufficient as a matter of law to establish jurisdiction over *Dr. Landau*.

As noted above, a corporate officer's contacts with the forum must be analyzed independently from the contacts of his employer. *See Keeton*, 465 U.S. at 781 n.13. Thus, the State must do much more than recite the Colorado contacts of others and "simply impute" them to Dr. Landau. *Stewart v. West*, 2018 WL 4257306, at *5 (D. Colo. Sept. 6, 2018). Rather, the State must demonstrate that Dr. Landau was a "primary participant" in activities that deliberately targeted Colorado and are related to the claims in this litigation. *Id.*; *see also Rome v. Reyes*, 401 P.3d 75, 83 (Colo. App. 2017) (individual officers of a company are subject to specific jurisdiction only when they are "primary participants in the wrongdoing giving rise to the court's jurisdiction over the corporation") (internal quotation marks omitted).

The State has utterly failed to make the necessary allegations. The Complaint does not identify any misrepresentation made in Colorado by Dr. Landau; any communication between Dr. Landau and any physician, other prescriber, or patient located in Colorado; any communication between Dr. Landau and any Purdue salesperson located in Colorado; any direction by Dr. Landau to anyone to make any statements in Colorado or to distribute any promotional materials into Colorado, let alone any that were misleading; or any other affirmative act by Dr. Landau purposefully directed into Colorado that gives rise to any of the State's claims against him.

In an effort to plug this gaping hole in the Complaint, the State alleges that "[a]t the direction of the Board, Craig Landau directed and controlled Purdue's business activities, including Purdue's deceptive and reckless marketing and sale of OxyContin and other opioids in

Colorado."  (FAC ¶ 47; *see also id.* ¶¶ 10, 196, 235, 243, 279, 280, 283, 286, 287, 379, 387, 688, 689, 790 (repeating formulaic assertion that conduct was "directed and/or sanctioned by the individual Defendants").)  Notably, that allegation is irreconcilable with the State's contention that "[a]t all relevant times, Defendant members of the Sackler family owned, directed, and controlled Purdue."[6]  (*Id.* ¶ 26; *see also, e.g., id.* ¶ 413 ("[T]he Sacklers intimately controlled, directed, participated in, and/or sanctioned and had the ability to stop all of Defendants' conduct alleged herein."); ¶ 424 ("The Sacklers have always maintained a tight grip on Purdue's operations."); ¶ 431 ("From OxyContin's launch in 1996, the Sacklers . . . were intimately involved in, and directed and controlled, the marketing strategy for promoting opioid treatment generally, and for selling Purdue's opioids specifically."); ¶ 566 ("While the faces around them changed over the years, the Sacklers at all times controlled and directed Purdue and/or participated in, cooperated with, or sanctioned Purdue's conduct.").)  *Cf. McKinley Med., LLC v. Medmarc Cas. Ins. Co.*, 2012 WL 987821, at *5 (D. Colo. Mar. 23, 2012) (on a Fed. R. Civ. P. 12(b)(6) motion, a court "need not accept factual claims that are internally inconsistent") (internal quotation marks omitted).

In any event, the State's allegation that Dr. Landau "directed," "controlled," or "sanctioned" the activities described in the Complaint is entirely conclusory, lacking any factual underpinning whatsoever.  The Complaint does not allege any facts showing that in the years before Dr. Landau became CEO of Purdue in the U.S. (including almost four years in Canada),

---

[6] Indeed, even the State's allegation that Dr. Landau "directed and controlled Purdue's business activities" asserts that he was actually acting "[a]t the direction of the Board."  (FAC ¶ 47.)  Similarly, the Complaint alleges that Purdue's Executive Committee "always act[ed] under the direction and control of the Sacklers."  (*Id.* ¶ 27.)

he had any responsibility for marketing or sales anywhere in the U.S., much less Colorado.  No

such allegation could be truthfully made.  As for Dr. Landau's tenure as CEO in the U.S., the

non-conclusory allegations of the Complaint simply demonstrate, at most, that since June 2017

(when he was appointed CEO) he has served as the head of a multi-level organization with a

*nationwide* presence, and that, in that capacity, he was generally aware of certain aspects of

Purdue's promotional activity relating to opioids on a *nationwide* basis – until all such activity

ceased eight months later, in February 2018 (Landau Aff. ¶ 14) – not that he personally targeted

Colorado in any way.  *See, e.g.*, *Arocho v. Lappin*, 461 F. App'x 714, 718 (10th Cir. 2012)

(plaintiff's showing that defendant's "decisions of general applicability . . . affecting the

provision of medical services" on a "countrywide" basis "is not enough to show that he

purposefully directed his relevant actions at the forum state [Colorado]"); *Lynch v. Olympus Am.,
Inc.*, 2018 WL 5619327, at *8 (D. Colo. Oct. 30, 2018) ("The development of a global or

country-level marketing plan does not rise to the level of a 'substantial connection' that came

about by an action of [defendant] purposefully directed towards Colorado.") (internal quotation

marks and alterations omitted); *see also J. McIntyre*, 564 U.S. at 887 (plurality opinion)

(purposeful availment requirement is not satisfied by "facts [that] may reveal an intent to serve

the U.S. market"); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018)

(purposeful availment requirement is not satisfied by "efforts to exploit a national market that

necessarily included [the forum state]") (internal quotation marks omitted).

Courts routinely reject plaintiffs' efforts to premise specific jurisdiction on similarly

vague and conclusory allegations of direction or control.  *See Hopkins v. Yi*, 2019 WL 3547085,

at *7 (D. Mass. May 31, 2019) ("Purposeful availment is not shown simply by reciting

[defendant's] position as CEO[.]"); *In re Lyman Good Dietary Supplements Litig.*, 2018 WL

3733949, at *8 (S.D.N.Y. Aug. 6, 2018) (dismissing complaint against individual officers for

lack of personal jurisdiction where "allegations assert only that the Individual Defendants had

general authority over their corporations, not that they were the primary actors in the specific

transactions giving rise to this action"); *Grice v. VIM Holdings Grp., LLC*, 280 F. Supp. 3d 258,

279 (D. Mass. 2017) (no personal jurisdiction over corporate officers where plaintiff made only

"conclusory allegations that the defendant controls the corporation") (internal quotation marks

omitted); *Shostack v. Diller*, 2015 WL 5535808, at *5 (S.D.N.Y. Sept. 16, 2015) ("Conclusory

allegations that the corporate officers exercised control over the corporation by virtue of their

title or position within the corporation, or derived some benefit from the corporation's

activities[,] do not suffice; courts routinely grant motions to dismiss for lack of personal

jurisdiction when the plaintiff relies solely on such vague assertions."), *report and*

*recommendation adopted*, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016); *AGV Sports Grp., Inc. v.*

*Protus IP Sols., Inc.*, 2009 WL 1921152, at *7 (D. Md. July 1, 2009) (dismissing complaint

against individual officers for lack of personal jurisdiction because "although Plaintiffs'

Complaint is long on allegations relating to the [individual officers'] corporate involvement in

the affairs of [the corporation,] . . . it is entirely lacking allegations as to how the [officers] were

*individually* responsible for the alleged wrongful conduct") (emphasis in original).

    4. <u>Allegations that do not involve sufficient contacts with Colorado</u>

  Next, the analysis turns to the factual allegations in the Complaint that specifically name

Dr. Landau, which are set out in 59 paragraphs.  (*See* Appendix 1 hereto.)  Almost all of those

allegations do not involve jurisdictionally relevant contacts with Colorado and therefore cannot

possibly serve as the basis for personal jurisdiction over Dr. Landau.  *See Walden*, 571 U.S. at

285 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State

itself[.]").

For example, the Complaint describes numerous internal reports made to the Sacklers by

the Executive Committee (which included, at times, Dr. Landau) concerning Purdue's

nationwide business, performance, and strategy.[7]  But there is no allegation that any of these

communications originated in Colorado or were conveyed to anyone in Colorado.  Even if those

reports addressed Colorado-specific information – and, as to most of them, there is no such

allegation[8] – the mere act of communicating *about* the forum is not a contact *with* the forum

---

[7] *See* FAC ¶¶ 140, 194, 196, 198, 203, 230, 234, 238, 239, 247, 248, 259, 294, 302, 317,
358, 471, 473, 486, 489, 493, 503, 504, 505, 507, 508, 509, 514, 532, 559, 560, 578, 614.
Certain of these allegations are contradicted by either the evidence cited by the State or other
allegations in the Complaint.  For example, **Paragraph 140** alleges that Dr. Landau and others
"tracked" grants and funding to organizations, and cites a 2009 report as an example.  That report
was circulated by an employee in Purdue's Treasury department to a group that did not include
Dr. Landau, and there is no indication in the document that Dr. Landau had any involvement
with this report or the underlying funding decisions.  (*See* Affidavit of Linda Imes dated Sept.
16, 2019 ("Imes Aff."), Ex. 1.)  **Paragraph 203** states that Dr. Landau was on Purdue's
Executive Committee in 2015, but he was CEO of Purdue Canada at the time, and the Complaint
elsewhere states that he was not on the Executive Committee when he was in Canada.  (*See* FAC
¶ 28.)  Likewise, **Paragraph 302** asserts that, "[a]t the end of 2015," Dr. Landau and others
"presented to the Sacklers a 2016 sales strategy," but, as is stated in the same paragraph, Dr.
Landau was in Canada at the time, and the cited document (a Purdue slide deck dated November
30, 2015 and titled "2016 Budget") does not indicate that Dr. Landau played any role in creating
or presenting the "strategy."  Indeed, Dr. Landau's name is absent from the accompanying
agenda.  (Imes Aff., Ex. 2.)

[8] Straining to draw a connection with Colorado, the Complaint misleadingly describes the
contents of several documents.  (FAC ¶¶ 194, 230, 247, 248.)  The allegations in the Complaint
relating to these documents use the phrase "including in Colorado" or some variation, but the
documents themselves either refer only to "the U.S." generally or do not refer to geography at
all.  That is, the references in the Complaint to "Colorado" are the State's *own* added
commentary – making the unremarkable point that Colorado is part of the U.S. – which creates
the misimpression that the documents actually mention Colorado.  (*See, e.g.*, Imes Aff., Ex. 3, at

(much less one out of which any claim arises). *See, e.g.*, *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 7 (D.D.C. 2019) ("There is also no support for the proposition that merely speaking about a forum (or about entities within that forum) . . . can confer specific jurisdiction in the absence of identifiable forum contacts."); *Doe v. Dominque*, 2014 WL 12115954, at *4 (N.D. Ga. Sept. 9, 2014) (the fact that a website has a posting about a Georgia resident "is not a contact with the forum of the State of Georgia").

Several other allegations in the Complaint describe reports or inquiries made by others *to* Dr. Landau. (*See, e.g.*, FAC ¶¶ 345, 348, 491, 495, 497, 501, 514, 519, 524.)[9] Like the allegations concerning reports made by the Executive Committee, these allegations do not evidence any Colorado contacts by Dr. Landau. And they suffer from another fatal defect: they reflect only the activity of others, not Dr. Landau himself. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[T]he unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

---

PDD9316101020.) Likewise, the Complaint alleges that a map in a report to the Board "included OxyContin exposure calls to Poison Centers throughout Colorado" (FAC ¶ 234), but the map at issue actually shows the entire U.S. (Imes Aff., Ex. 4, at PDD8901468108). Elsewhere, the Complaint merges multiple sets of allegations, creating the misimpression that reports to the Board concerning sales force increases included data on Colorado. (FAC ¶¶ 489, 504.) In fact, the updates to the Board concerning sales force increases make no reference to Colorado. (Imes Aff., Ex. 3, at PDD9316101027; *id.*, Ex. 5, at PPLPC012000252793.)

[9] Certain of these allegations are contradicted or undermined by the documents cited in the Complaint. For example, **Paragraph 514** refers to two emails sent by Richard Sackler, but without identifying the recipients; in fact, neither of those emails was sent or copied to Dr. Landau. **Paragraph 524** alleges that Richard Sackler "argued with" certain Purdue employees, including Dr. Landau; but while Dr. Landau was copied on the cited email chain, he did not write a single word in that chain, much less "argue with" anyone. (Imes Aff., Ex. 6.)

Review of the documentary evidence reveals that Paragraphs 346 and 347 of the

Complaint also fall into the category of allegations failing to show any purposeful contact by Dr.

Landau with Colorado.  Those paragraphs relate to an unfavorable report issued by the Institute

for Clinical and Economic Review ("ICER") on May 5, 2017, when Dr. Landau was still CEO of

Purdue Canada.  (*See* FAC ¶ 47 (stating that Dr. Landau was CEO of Purdue Canada from

September 2013 to June 2017).)  The Complaint alleges that Dr. Landau and others "discussed

Purdue's 'robust action plan' to undermine and discredit ICER's report," and that part of this

plan was to "deploy[]" certain individuals to "make supportive public statements" on Purdue's

behalf, including Richard Dart of "Denver-based RADARS [Research Abuse, Diversion and

Addiction-Related Surveillance]."  (*Id*. ¶ 346; *see also id.* ¶ 347 (alleging that Dr. Landau and

others "planned" a communication by Mr. Dart).)  But the cited document, a May 6, 2017 email

(Imes Aff., Ex. 7), does not support these allegations.  Dr. Landau did not "plan[]" or "discuss[]"

anything.  The cited email is from a Purdue employee, Gail Cawkwell, to a large group of

recipients that included Dr. Landau.  (*Id.*)  The email does not mention Dr. Landau – hardly a

surprise, since he was still in Canada – and there is no response from him.  (*Id.*)  Thus, even

accepting as true the Complaint's allegation that Mr. Dart later criticized the ICER report as part

of a plan by others at Purdue (FAC ¶ 347), rather than on Mr. Dart's own accord, nothing about

this episode reflects any contacts by *Dr. Landau* with Colorado.

Relatedly, the Complaint alleges that "even while Craig Landau was President and CEO

of Purdue Canada, he used his RADARS subscription to receive reports on opioid abuse and

diversion to his Purdue (US) email."  (*Id.* ¶ 153.)  According to the Complaint, Purdue

transferred the RADARS system to the Denver Health and Hospital Authority in 2005.  (*Id.*

¶ 152.)  The Complaint acknowledges that RADARS reports are widely "relied upon by national

pharmaceutical and other health care companies" (*id.*), and there is no suggestion that the data in

those reports focused exclusively on Colorado, or that the RADARS system's location in

Colorado somehow impacted that data.  The mere fact that Dr. Landau, like so many others in

the industry, received reports from a group that happened to be located in Colorado is precisely

the type of "fortuitous" contact that cannot possibly support specific jurisdiction.  *See Align*

*Corp. Ltd. v. Allister Mark Boustred*, 421 P.3d 163, 167-68 (Colo. 2017) ("The 'purposeful

availment' requirement precludes personal jurisdiction resulting from random, fortuitous, or

attenuated contacts."); *Bolsa Res., Inc. v. AGC Res., Inc.*, 2011 WL 6370409, at *12 (D. Colo.

Dec. 20, 2011) (where defendant was copied on certain emails from individuals located in

Colorado, holding that "[s]uch passive receipt of communications from others, standing alone, is

not conduct directed at Colorado and is not sufficient to confer jurisdiction").

Another allegation lacking a sufficient connection with Colorado is Paragraph 98, which

states:  "In 2009, the Sacklers directed Purdue's executives, including Craig Landau and David

Haddox, to hire a Director of ePromotion responsible for both branded and unbranded electronic

marketing, including *Partners Against Pain*, directed at health care providers in Colorado and

around the country."[10]  To begin, this allegation is contradicted by the cited document, an April

30, 2009 email from Russell Gasdia.  (Imes Aff., Ex. 8.)  Dr. Landau is not among the recipients

of Mr. Gasdia's email about hiring a Director of ePromotion, and that email does not suggest Dr.

Landau had any role in that hiring.  (*Id.*)  To the contrary, it states that "Mike Innaurato" – in

---

[10] The Complaint alleges that the *Partners Against Pain* campaign was created by
"Purdue's own marketing team" in 1993, years before Dr. Landau joined Purdue.  (FAC ¶ 97.)

Purdue's marketing department – "has board approval for headcount to hire a Director of

ePromotion." (*Id.*)  And a later allegation in the Complaint retreats from the assertion that Dr.

Landau had anything to do with the hiring.  Citing the very same underlying document but now

omitting any mention of Dr. Landau, Paragraph 491 merely alleges:  "[T]he Sacklers told Russell

Gasdia and other Purdue executives to hire a 'Director of ePromotion[.]'" *Cf. McKinley Med.*,

2012 WL 987821, at *5 (on a Fed. R. Civ. P. 12(b)(6) motion, a court "need not accept factual

claims that are internally inconsistent") (internal quotation marks omitted).  In any event,

although Paragraph 98 incants the word "Colorado," there is no cognizable connection with this

state.  Even if the underlying email evidenced Dr. Landau's involvement – and it does not – the

mere act of hiring an employee who, in turn, would be responsible for a Purdue website with a

nationwide, even worldwide, reach is not a cognizable contact by Dr. Landau with Colorado.[11]

The remaining allegations in the Complaint concerning Dr. Landau that lack any

connection with Colorado are:  that Dr. Landau and the Sacklers sought to progress FDA-ordered

pediatric research for reformulated OxyContin in 2011 (FAC ¶ 81); that, in 2011, Dr. Landau

discussed interviewing select Key Opinion Leaders already under contract with Purdue (*id.*

---

[11] In fact, it is not clear that this corporate website would even serve as a sufficient independent basis for specific jurisdiction over *Purdue* – much less over the person who allegedly hired the person who would oversee the website on Purdue's behalf.  *See, e.g.*, *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 917 (10th Cir. 2017) (affirming dismissal of plaintiffs' claims against corporate defendant for lack of personal jurisdiction where "[n]othing about [defendant's] webpage . . . appears deliberately directed at Colorado, either in terms of its content or its intended audience"); *see also Kloth v. S. Christian Univ.*, 320 F. App'x 113, 116 (3d Cir. 2008) (mere existence of a "Web site [that] is accessible to a nationwide (indeed, global) audience" does not satisfy purposeful availment requirement).

¶ 179); and that the Executive Committee, including Dr. Landau, recommended a "New

Approach" in 2017 (*id.* ¶¶ 240-41).

     5.    <u>Allegation lacking any nexus to the State's claims against Dr. Landau</u>

Of the paragraphs that specifically mention Dr. Landau, *just one* alleges that he had any

substantive contact with Colorado.  But because none of the State's claims against Dr. Landau

arise out of that contact, specific jurisdiction is lacking.[12]  *Youngquist*, 390 P.3d at 392 (specific

jurisdiction exists only when "the litigation 'arises out of' the defendant's forum-related

contacts"); *see also Bristol-Myers*, 137 S. Ct. at 1781 (when there is no "connection" between

the forum and the underlying controversy, "specific jurisdiction is lacking regardless of the

extent of a defendant's unconnected activities in the State"); *Archangel*, 123 P.3d at 1198

(affirming dismissal of claims for lack of personal jurisdiction where plaintiff "has failed to raise

an inference that [defendant's] actions giving rise to the litigation create a substantial connection

with Colorado"); *Heffington v. Puleo*, 753 F. App'x 572, 577 (10th Cir. 2018) (affirming

dismissal of claims for lack of personal jurisdiction where plaintiff "does not allege his injuries

stemmed from" defendant's forum-directed activities).

Paragraph 154 of the Complaint alleges that "[i]n November 2009, as a member of the

Executive Committee, Craig Landau, at the direction of the Sacklers, entered into a Master

Consultant Services Agreement on behalf of Purdue with the Denver Health and Hospital

Authority to have RADARS's Executive Director, Richard Dart, provide consulting services to

Purdue," and that this agreement "terminated in 2011."  As this allegation makes clear, it is

---

[12] Most of the allegations discussed in Section I.D.4 above, which fail to demonstrate any
purposeful contacts with Colorado, also lack any nexus with the claims against Dr. Landau.

*Purdue* that is a party to this contract, not Dr. Landau in his personal capacity: he allegedly

signed the document "on behalf of Purdue" "at the direction of the Sacklers." Further, even

regarding the actual parties to contracts (as opposed to their agents), it is well-established that "a

single contract between an out-of-state party and a resident of the forum state, standing alone,

cannot establish sufficient minimum contacts with the forum." *BlueRadios, Inc. v. Datacolor,*

*Inc.*, 2019 WL 1596123, at *6 (D. Colo. Apr. 12, 2019); *see also Bristol-Myers*, 137 S. Ct. at

1783 ("The bare fact that [a non-resident defendant] contracted with a California distributor is

not enough to establish personal jurisdiction in the State."); *Gognat*, 224 P.3d at 1052 ("A

defendant does not subject himself to jurisdiction in the forum state merely by entering into an

agreement with a resident of the forum state."). The Complaint does not specify what

"consulting services" would be provided to Purdue, nor does it even attempt to tie any of those

unspecified "services" to any claim against Dr. Landau or, indeed, to any alleged

misrepresentation made by or to *anyone* in Colorado.[13]

Moreover, Dr. Landau is alleged to have signed the agreement on Purdue's behalf in

*2009*. (FAC ¶ 154.) Premising personal jurisdiction solely on that agreement would not satisfy

the dictates of due process, as it is so remote in time that Dr. Landau could not have reasonably

anticipated being haled into a Colorado court nearly a decade later on the basis of that single

(and highly attenuated) contact. *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1076 (10th

---

[13] The Complaint alleges that Mr. Dart and "Purdue" subsequently "amended and
supplemented" this agreement "in order to continue providing reporting, consulting, lobbying,
and advocacy services to Defendants through at least 2018." (FAC ¶ 154.) However, the
Complaint does not allege that Dr. Landau had any involvement with those later amendments
and supplements, nor does it identify any nexus between those later "services" and any of the
State's claims against Dr. Landau.

Cir. 1995) (non-resident defendant's efforts to solicit plaintiff to explore other relationships was

"so remote that it is of little value to [plaintiff] in its quest for personal jurisdiction," where

solicitation took place during the initial phase of the parties' negotiations and the case related to

a subsequent phase, which was "substantively different and three years later than the first phase

of negotiations"); *see also Fight for Children, Inc. v. Fight Night, Inc.*, 1997 WL 148643, at *2

n.1 (D.D.C. Mar. 26, 1997) (letters mailed three and four years prior to the filing of suit "are too

remote in time, such that [non-resident defendant] could not have reasonably anticipated being

haled into court on the basis of that correspondence").

6.     Allegations concerning injuries in Colorado

Finally, the Complaint alleges that the "Defendants" caused injuries in Colorado.  (*See,

e.g.*, FAC ¶ 54.)  But that allegation is insufficient as a matter of law to establish jurisdiction

over Dr. Landau.  In *Walden*, the Supreme Court unanimously held that the non-resident

defendant's alleged knowledge that the plaintiffs were residents of the forum and would feel

harm there was insufficient to establish specific jurisdiction.  *Walden*, 571 U.S. at 290 ("The

proper question is not where the plaintiff experienced a particular injury or effect but whether the

defendant's conduct connects him to the forum in a meaningful way."); *see also Giduck v.

Niblett*, 408 P.3d 856, 864 (Colo. App. 2014) (affirming Rule 12(b)(2) dismissal of claims,

holding that plaintiffs' claims that harm from the alleged torts was felt in Colorado was

"insufficient to establish minimum contacts by defendants").

\*     \*     \*

In sum, the claims against Dr. Landau should be dismissed pursuant to C.R.C.P. 12(b)(2)

because the State has failed to make a prima facie showing of personal jurisdiction over him.

## II.     The Claims Sounding in Fraud Should Be Dismissed for Failure to State a Claim

Thirteen of the State's claims against Dr. Landau (that is, all but the State's preferential transfer claim[14]) sound in fraud:  they are anchored in the core allegation that "Purdue and the individual Defendants originated, spearheaded, directed, and/or sanctioned a widespread multifaceted deceptive and reckless campaign to market and sell opioids."  (FAC ¶ 4.)  This is true even of the State's negligence claim, which expressly "incorporates . . . by reference all of the allegations against Defendants" in the Complaint (*id.* ¶ 722) and asserts, among other things, that "Defendants" "implement[ed] an aggressive and deceptive branded and unbranded marketing scheme" (*id.* ¶ 724).  All of those claims share common elements under Colorado law that the State has failed to plead as to Dr. Landau.  Accordingly, even if the State had made a prima facie showing of personal jurisdiction over Dr. Landau – and it has not – the Court should dismiss those claims pursuant to C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted.[15]

### A.     Separate Analysis of the Specific Allegations Against Dr. Landau Is Required to Determine Whether the State Has Asserted Plausible Grounds to Support a Claim for Relief Against Him

A complaint must state "a plausible claim for relief" to survive a motion to dismiss. *Warne*, 373 P.3d at 590 (adopting federal "plausibility" standard for evaluating complaints). Under this standard, the complaint must "plead sufficient facts that, if taken as true, suggest

---

[14] The preferential transfer claim is addressed separately in Section III below.

[15] In moving to dismiss under Rule 12(b)(5), Dr. Landau does not concede that the Court has personal jurisdiction over him or waive his personal jurisdiction defense.  *See* C.R.C.P. 12(b) ("No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or with any other motion permitted under this Rule[.]").

plausible grounds to support a claim for relief." *Patterson v. James*, 2018 WL 6545118, at *4

(Colo. App. Dec. 13, 2018). Allegations that are merely "conclusory" are "not at all entitled to

an assumption that they [are] true." *Warne*, 373 P.3d at 596. And "[s]imply asserting a legal

conclusion – bereft of any supporting factual allegations – does not state a plausible claim for

relief." *Ruybalid v. Bd. of Cty. Comm'rs of Cty. of Las Animas Cty.*, 444 P.3d 795, 801 (Colo.

App. 2017), *aff'd*, 442 P.3d 423 (Colo. 2019); *see also Scott v. Scott*, 428 P.3d 626, 632 (Colo.

App. 2018) ("The plausibility standard emphasizes that facts pleaded as legal conclusions (i.e.,

conclusory statements) are not entitled to the assumption that they are true."). Here, the State

has failed to state a claim against Purdue, for all the reasons set forth in Purdue's motion to

dismiss, which Dr. Landau incorporates by reference. But even if that were not so, separate

analysis is required of the specific allegations in the Complaint against *Dr. Landau*. When the

State's conclusory allegations are disregarded – as the law requires – it is clear that the State has

failed to plead sufficient facts suggesting plausible grounds to support any of its fraud-based

claims against Dr. Landau.

      B.      <u>The State Has Failed to Plead Sufficient Facts Showing That
Dr. Landau Actively Participated in Any of the Alleged Misconduct</u>

The liability of corporate officers is governed by principles similar to those that control in

the personal jurisdiction context. *See* Section I.D.3 above. Colorado adheres to the rule that

"officers . . . of a corporation may not be held liable for the torts of a corporation solely by . . .

reason of their office." *Klockner v. Keser*, 488 P.2d 1135, 1137 (Colo. App. 1971); *see generally*

*Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003) ("[A] corporation is always a separate

entity distinct from its officers, directors, or investors."). Rather, under Colorado law, a

corporate officer "may be held personally liable" for acts of the corporation only if he "actively

participated" in those acts himself.  *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1182-83 (10th Cir.

1989); *see also ClearCapital.com, Inc. v. Computershare, Inc.*, 2019 WL 1573300, at *5 (D.

Colo. Apr. 11, 2019) (corporate officer can be held personally liable only if "he personally

participated in the alleged misconduct"); *In re Tinkler*, 311 B.R. 869, 875 (Bankr. D. Colo. 2004)

(corporate officer can be held personally liable only if his "individual actions, as opposed to his

general corporate control, caused the corporation's tortious act"); *Dunbar v. Finegold*, 501 P.2d

144, 146 (Colo. App. 1972) ("Though the evidence supports the finding that [defendant] was an

officer and a director, her personal liability does not arise merely by virtue of her office but must

be the result of her own tortious conduct.").

Accordingly, in assessing whether the Complaint states any claims against Dr. Landau,

the Court must examine not the conduct that is attributable to Purdue, in aggregate, but the

alleged "individual actions" of Dr. Landau.  *Tinkler*, 311 B.R. at 875.  Concerning this critical

distinction between the officer and his employer, the opinion in *Holloway v. Briller, Inc.*, 2016

WL 915752 (D. Colo. Mar. 10, 2016), is instructive.  There, the court dismissed state law

counterclaims against a company's President and its Chief Operating Officer because the

allegations against those individuals did not "plausibly show that [they] knowingly participated

in" the alleged torts.  *Id.* at *8.  The court emphasized the distinction between the corporation

and the individual officers, explaining that although the counterclaim-plaintiff had sufficiently

alleged that the *corporation* had engaged in conduct for which it might be held liable, there was

no "plausible allegation" that the individuals had participated in the alleged torts.  *Id.*

In reaching this conclusion, the *Holloway* court took pains to distinguish the decision in

*Hoang v. Arbess*, 80 P.3d 863 (Colo. App. 2003), a case in which plaintiffs sued both a home-

construction company and its individual officer for damage sustained to the plaintiffs' homes. The *Holloway* court explained that in *Hoang*, the corporation "was essentially a one-man operation" controlled by the individual officer, and "[t]here was evidence that [the individual officer] knew that the homes were being built improperly, and that he participated in or approved of false representations to prospective buyers." *Holloway*, 2016 WL 915752, at *7. In light of these and other "unique and compelling" circumstances, the *Holloway* court warned that "courts should be cautious when asked broadly to apply *Hoang* in other contexts." *Id.*

Any such "unique and compelling" circumstances are entirely absent here. The State has failed to present any plausible allegations that Dr. Landau "actively participated" in any misconduct. *Q.E.R.*, 880 F.2d at 1182-83. Regarding all of the State's fraud-based claims, the Complaint does not identify a single false or misleading statement made by Dr. Landau: there is no non-conclusory allegation that Dr. Landau personally had any relevant communications with a Purdue salesperson or a prescriber, patient, insurer, or lawmaker in Colorado, or personally drafted or approved any allegedly misleading materials that were disseminated to third parties. Moreover, regarding the public nuisance claim, for the reasons set forth in Section VI of Purdue's motion to dismiss, the State fails to plead an actionable public nuisance, much less that Dr. Landau personally played any role in creating such a nuisance. Regarding the negligence claim, for the reasons set forth in Section VII of Purdue's motion and Section II.F of Mark Timney's motion, the State fails to adequately plead the existence of a legal duty, much less that Dr. Landau breached any such duty. Regarding the COCCA claim, for the reasons set forth in Section II.B of Mr. Timney's motion and Section 3 of Russell Gasdia's motion, the Complaint fails to adequately plead the existence of an "enterprise," much less that Dr. Landau actively

participated in any such enterprise.  And regarding the conspiracy claims under both COCCA

and the common law, for the reasons set forth in Sections II.B and II.C of Mr. Timney's motion

and Section 2 of Mr. Gasdia's motion, the Complaint fails to adequately plead the existence of an

unlawful agreement, much less that Dr. Landau entered into any such agreement.[16]

Further, any alleged misconduct of *other* Purdue employees cannot properly be attributed

to Dr. Landau.[17]  *See, e.g.*, *Mellette v. Branch*, 2009 WL 651142, at *8 (D. Colo. Mar. 12, 2009)

(dismissing common law fraud claims against officers of a limited liability company in part

because "[p]laintiffs present no legal authority to show that fraud committed by an agent of a

principal would also somehow attribute vicarious liability to a different agent of the same

principal"); *see generally Meyer v. Holley*, 537 U.S. 280, 286 (2003) ("A corporate employee

typically acts on behalf of the corporation, not its owner or officer.").  Unlike the plaintiffs in

*Hoang*, the State certainly does not – and cannot – allege that Purdue is a one-man operation or

otherwise dominated by Dr. Landau.  Quite the contrary.  (*See, e.g.*, FAC ¶ 26 ("At all relevant

times, Defendant members of the Sackler family owned, directed, and controlled Purdue."); ¶ 47

(alleging that Dr. Landau acted "[a]t the direction of the Board").)

The State's conclusory allegations that Dr. Landau "directed," "controlled," and

"sanctioned" the misconduct of others (*e.g.*, *id.* ¶¶ 47, 218, 790) are insufficient as a matter of

---

[16] Dr. Landau incorporates by reference the sections of other Defendants' motions cited
in this paragraph.

[17] Notably, the Complaint acknowledges that in 2017 – the year that Dr. Landau became
CEO of Purdue – "Purdue's Colorado call notes finally began reflecting a shift toward working
with prescribers to lower patients' dosages, and to take patients off opioid treatment."  (FAC
¶ 304.)

law.  For example, in *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477 (S.D.N.Y. 2017), the court

dismissed a fraudulent inducement claim against a CEO in connection with alleged

misrepresentations made to the plaintiff by his company's employees.  Disregarding the

plaintiff's conclusory assertions that specific actions taken by employees were made at the

CEO's "direction," "with his knowledge and approval," and "part of [his] scheme to defraud [the

plaintiff]," the court held that the complaint failed to adequately plead the CEO's involvement in

the alleged misstatements and omissions.  *Id.* at 493.

Similarly, in *General Steel Domestic Sales, LLC v. Chumley*, 2014 WL 2111107 (D.

Colo. May 20, 2014), the court dismissed copyright infringement and false advertising claims

against a CEO because there were "no specific instances alleged in the Amended Counterclaims

where [the CEO] was expressly claimed to have taken a specific action with respect to any

particular alleged false statement, misrepresentation or false advertisement."  *Id.* at *5.  The court

held that "sweeping allegations" that the CEO "formulates, controls, directs, supervises,

perpetuates, [and] manages" all of the activities of the company, including "its advertising

practices and policies," were conclusory and insufficient to raise a plausible inference that he

"actively participated in or personally directed or actively supervised or approved of or

sanctioned the activity giving rise to [the] claims."  *Id.* at *6 (internal quotation marks omitted);

*see also Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1039 (D. Colo. 2012) (dismissing

tort claims against bank CEO where plaintiff's allegations were "insufficient to show his

personal participation in the alleged torts"); *Drink Grp., Inc. v. Gulfstream Commc'ns, Inc.*,

7 F. Supp. 2d 1009, 1010-11 (N.D. Ill. 1998) (holding that allegations that officers were the

"principal" and "driving force" behind allegedly infringing activities of corporate defendant were

insufficient to state a claim against officers) (internal quotation marks omitted).

In short, the Complaint fails to state a claim against Dr. Landau in his individual capacity

because it does not raise a plausible inference that he actively participated in any misconduct.

C.    The State Has Failed to Plead Sufficient Facts Showing That
      Dr. Landau Proximately Caused Any of the Alleged Injuries

Proximate causation is an essential element of virtually all of the State's claims against

Dr. Landau sounding in fraud. *See People v. Shifrin*, 342 P.3d 506, 522-23 (Colo. App. 2014)

(restitution pursuant to CCPA); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1228 (D.

Colo. 2015) (public nuisance); *Thompson v. State Farm Mut. Auto. Ins. Co.*, 341 F. Supp. 3d

1261, 1267 (D. Colo. 2018) (negligence); *Nelson v. Gas Research Inst.*, 121 P.3d 340, 344 (Colo.

App. 2005) (fraud); *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1140 (D. Colo. 2013)

(COCCA). Those claims fail because the State has not plausibly pled sufficient facts showing

that Dr. Landau was the legal cause of any of the injuries identified in the Complaint.

Proximate cause requires a "direct relation between the injury asserted and the injurious

conduct alleged." *Henson*, 935 F. Supp. 2d at 1140 (internal quotation marks omitted). "A link

that is too remote, purely contingent, or indirect is insufficient." *Id.* (internal quotation marks

and alterations omitted). Where, as here, an alleged harm may have numerous causes, to

"constitute [a] proximate cause, [the] alleged tortious conduct must be a substantial factor in

producing the injury," and if "an event other than the defendant's alleged conduct appears

predominant, the defendant's conduct cannot be a substantial factor." *Phillips*, 84 F. Supp. 3d at

1228 (internal quotation marks omitted). "[I]n some cases, the chain of causation may be so

attenuated that no proximate cause exists as a matter of law." *Boulders at Escalante LLC v.*

*Otten Johnson Robinson Neff & Ragonetti PC*, 412 P.3d 751, 762 (Colo. App. 2015) (internal quotation marks and alterations omitted).  Measured against this standard, the State's allegations concerning Dr. Landau plainly fail to plead proximate cause.

The essence of the State's claims against Purdue is that the company marketed its opioids in a manner that caused physicians to over-prescribe those opioids, in turn causing harm to patients, in turn causing harm to the State.  (*See, e.g.*, FAC ¶ 736.)  As discussed in Sections III and V of Purdue's motion to dismiss, which Dr. Landau incorporates by reference, the causal chain between Purdue and these purported harms breaks at numerous points, including the intervening decisions and conduct of other opioid manufacturers, individual prescribers, and individual patients.  These interceding causes predominate over any conduct that can plausibly be ascribed to Purdue.  *See Ireland v. Jefferson Cty. Sheriff's Dep't*, 193 F. Supp. 2d 1201, 1232 (D. Colo. 2002) (a defendant's conduct will not be considered a "substantial factor" in causing plaintiff's harm "[i]f an event other than the defendant's alleged conduct appears predominant"); *see also N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996) ("Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor.  So too, although no one of the contributing factors may have such a predominant effect, their combined effect may, as it were, so dilute the effects of the actor's negligence as to prevent it from being a substantial factor.") (internal quotation marks omitted).

But even if the State had adequately pled that the conduct of *Purdue* – that is, the collective conduct of Purdue's employees and other agents – was a "substantial factor" in

causing the harms alleged in the Complaint, the chain of causation cannot be extended further to

*Dr. Landau*.  That is a link too far.  As discussed in Section II.B above, the Complaint fails to

plead any facts plausibly showing that Dr. Landau actively participated in any of the misconduct

alleged in the Complaint.  It follows, as a matter of law, that the Complaint does not adequately

plead that Dr. Landau proximately caused any of the alleged harms.

## III.    The Preferential Transfer Claim Against Dr. Landau Should Be Dismissed

The State also asserts a claim against, among others, Dr. Landau, the Sacklers, and

Purdue for preferential transfers in violation of CUFTA, C.R.S. § 38-8-106(2).  (FAC ¶¶ 779-

81.)  That statute provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before
> the transfer was made if the transfer was made to an insider for an antecedent debt,
> the debtor was insolvent at that time, and the insider had reasonable cause to believe
> that the debtor was insolvent.

As discussed below, the State's preference claim against Dr. Landau must be dismissed because

any such claim may only be pursued in the bankruptcy proceeding.  In any event, CUFTA does

not apply extraterritorially and, moreover, the State has failed to plead and substantiate essential

elements of the claim.[18]

A.    The Commencement of Purdue's Bankruptcy Stripped
the State of the Power to Pursue the CUFTA Claim

Purdue filed a bankruptcy petition on September 15, 2019.  It is black-letter law that

"'once a bankruptcy petition is filed, preference actions must be pursued in the bankruptcy

---

[18] Additionally, the State has not established that it qualifies as a "creditor" within the
meaning of CUFTA.  CUFTA defines a creditor as "a person who has a claim" against the
debtor.  C.R.S. § 38-8-102(5).  The State does not have any cognizable claims against Purdue,
for all the reasons set forth in Purdue's motion to dismiss.

proceeding, not outside it, and . . . the power to pursue them is given by the [federal Bankruptcy]

Code *to the trustee, as opposed to a single creditor.*'" *In re Lavenhar*, 2014 WL 4232500, at *4

(D. Colo. Aug. 25, 2014) (emphasis in original, quoting *In re Sweetwater*, 884 F.2d 1323, 1328

(10th Cir. 1989)), *aff'd*, 808 F.3d 794 (10th Cir. 2015).  It follows that the State's CUFTA claim

against Dr. Landau must be dismissed.  *See, e.g.*, *Summers v. Perkins*, 81 P.3d 1141, 1144 (Colo.

App. 2003) (affirming dismissal of creditor's CUFTA claim against transferee "for lack of

standing," where transferee received certain property from the debtor prior to debtor's filing of a

bankruptcy petition).

     B.     Any Transfers from Purdue to Dr. Landau Occurred Outside
               Colorado, and CUFTA Does Not Apply to Extraterritorial Transfers

Even if Purdue's bankruptcy filing did not strip the State of the authority to pursue a

claim against Dr. Landau under CUFTA, that claim should be dismissed because CUFTA does

not apply to extraterritorial transfers.  Although, as discussed below, the Complaint does not

adequately identify the transfers at issue, it is clear that the alleged transferor was Purdue (the

purported "debtor") and the alleged transferee was Dr. Landau (the purported "insider").

Because nothing in the Complaint suggests that any transfer from Purdue (which is located in

Connecticut (FAC ¶¶ 23, 24)) to Dr. Landau (who is a resident of Connecticut (*id.* ¶ 47))

occurred in Colorado, no claim is available under CUFTA.

"Absent language in the statute evidencing a contrary intent, Colorado courts presume

that a statute[] does not have extraterritorial effect." *Airquip, Inc. v. HomeAdvisor, Inc.*, 2017

WL 4222618, at *6 (D. Colo. Sept. 21, 2017) (internal quotation marks omitted).  CUFTA

contains no language indicating that the legislature intended it to apply extraterritorially.  Thus,

CUFTA does not extend to extraterritorial transfers, and, because any transfer at issue here

occurred outside Colorado, the State has no claim against Dr. Landau under CUFTA.  *See UET*

*RR, LLC v. Comis*, 2017 WL 1856508, at *7 (D. Colo. May 9, 2017) (dismissing CUFTA claim

because "[u]nder Colorado law, a statute is presumed not to have extraterritorial effect" and

"[t]he transfers that the plaintiff says violated CUFTA occurred in Michigan, Arkansas, and

Canada"), *aff'd in part, rev'd in part on other grounds*, 739 F. App'x 475 (10th Cir. 2018); *see*

*also Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, 244 F. Supp. 3d 750, 758 (N.D. Ill. 2017)

(dismissing creditor's claims under Illinois Uniform Fraudulent Transfer Act premised on

foreign transactions because "the statute does not apply extraterritorially" and the court "cannot

conclude that the relevant circumstances took place primarily and substantially in Illinois"),

*aff'd*, 885 F.3d 1090 (7th Cir. 2018).

        C.      <u>The State Fails to Plead Sufficient Facts Supporting the Barebones Allegation
That Purdue Was "Insolvent" at the Time of the Transfers at Issue</u>

Even if CUFTA applied, an essential element of the preference claim against Dr. Landau

is that the "debtor" (here, Purdue) was insolvent *at the time of the transfers at issue*.  C.R.S.

§ 38-8-106(2).  The Complaint does not plausibly make this allegation.

To survive a motion to dismiss, a complaint "must allege more than conclusions," and

merely "parrot[ing] the statutory language" does not state a plausible claim for relief.  *Ruybalid*,

444 P.3d at 801.  Here, the Complaint simply repeats language from CUFTA, summarily

asserting that "Purdue was insolvent" at the time of the transfers (FAC ¶¶ 664, 780) – on

"information and belief," no less – without alleging a single supporting fact regarding Purdue's

financial condition at the relevant time.  The Complaint therefore fails to "plead sufficient facts

that, if taken as true, suggest plausible grounds to support a claim for relief."  *Patterson*, 2018

WL 6545118, at *4.

Under CUFTA's definition of insolvency, which is derived from the definition in the

federal Bankruptcy Code, a debtor is insolvent "if the sum of the debtor's debts is greater than all

of the debtor's assets at a fair valuation." C.R.S. § 38-8-103(1); *see also id.*, cmt. 1. When

applying nearly identical definitions of insolvency set out in the federal Bankruptcy Code and

state Uniform Fraudulent Transfer Acts ("UFTAs"),[19] courts have held that a complaint cannot

allege insolvency summarily, but rather "must contain enough factual information to plausibly

show that the debtor's liabilities exceeded assets at the time of the transfers." *In re Licking River*

*Mining, LLC*, 572 B.R. 830, 844 (Bankr. E.D. Ky. 2017) (internal quotation marks omitted)

(interpreting federal Bankruptcy Code); *see also In re Trinsum Grp., Inc.*, 460 B.R. 379, 394

(Bankr. S.D.N.Y. 2011) (interpreting Delaware UFTA, observing that to plead insolvency

sufficiently, "[g]enerally, there must be some sort of financial data or analysis provided so that

the court can infer the company's liabilities exceeded its assets at the time the transfers in

question took place"). Any such "factual information" is entirely absent from the Complaint.

Courts consistently hold that threadbare pleadings of insolvency are insufficient to

survive a motion to dismiss. *See, e.g.*, *Ki-Poong Lee v. So*, 2016 WL 6806247, at *5-6 (Del.

Super. Ct. Nov. 17, 2016) (dismissing creditor's Delaware UFTA claim where creditor made

only "bare bones" allegations of insolvency, "offer[ing] nothing for the Court to look to in

support" of that assertion); *Thimbler, Inc. v. Unique Sols. Design, Ltd.*, 2013 WL 4854514, at *8-

9 (E.D.N.C. Sept. 11, 2013) (creditor insufficiently pled constructive fraudulent transfer claims

---

[19] Two common sources of guidance for courts in interpreting CUFTA are "cases decided
under other states' version of UFTA" and cases interpreting similar provisions of the federal
Bankruptcy Code. *CB Richard Ellis, Inc. v. CLGP, LLC*, 251 P.3d 523, 529 (Colo. App. 2010).

under North Carolina UFTA, where creditor simply alleged that "[u]pon information and belief, at the time of the transfer, [defendant] was failing to pay creditors as its bills became due and was insolvent," and complaint contained "no factual information to plausibly show that [defendant's] liabilities exceeded its assets at the time of the transfer"); *SE Prop. Holdings, LLC v. Braswell*, 2013 WL 4498700, at *5 (S.D. Ala. Aug. 21, 2013) (dismissing creditor's constructive fraudulent transfer claim under Alabama UFTA where "[a]ll plaintiff has done is cut and paste the statutory element [of insolvency] as a conclusory label . . . with no supporting facts").  Critically, the mere fact that the transferor has filed for bankruptcy protection does not demonstrate that the transferor was insolvent at the time of pre-petition transfers.  *See, e.g.*, *In re Island View Crossing II, L.P.*, 2019 WL 2246541, at *12 (Bankr. E.D. Pa. May 23, 2019) (holding that trustee's "boilerplate conclusion that the [t]ransfers were made when the [d]ebtor was insolvent" was "insufficient" to state a claim under Pennsylvania UFTA, noting that it would be "sheer speculation to assume" that the debtor was insolvent at the time of the transfers simply because it filed a chapter 11 petition later).

The State's conclusory pleading of insolvency here, which is merely a boilerplate recitation of the statutory language, is patently insufficient.

> D.    The State Fails to Allege That Dr. Landau Had
>       Reasonable Cause to Believe That Purdue Was Insolvent

Another essential element of the State's preference claim is that the alleged "insider" – here, Dr. Landau – "had reasonable cause to believe that the debtor was insolvent."  C.R.S. § 38-8-106(2).  The State's pleading of this element is even more deficient than its pleading of insolvency:  it does not make *any* allegation – conclusory or otherwise – that Dr. Landau had reasonable cause to believe that Purdue was insolvent, much less state any facts from which such

an inference could reasonably be drawn.  Rather, the Complaint summarily alleges that "*Purdue* . . . had reasonable cause to believe it was insolvent."  (FAC ¶ 780 (emphasis added).)  That is a non sequitur.  Whether the "debtor" itself had reasonable cause to believe it was insolvent is entirely irrelevant; the focus under the statute is exclusively on the insider.  The State has therefore failed to state a claim under CUFTA.  *See, e.g.*, *Trinsum*, 460 B.R. at 394 (dismissing Delaware UFTA claim where, under identical provision, plaintiff "must plead that . . . the Defendants, as insiders, had reasonable cause to believe that the Debtors were insolvent," yet plaintiff failed to "bring forward any facts that the Defendants," who were former company officers, "had reasonable cause to believe that the Debtors were insolvent") (internal quotation marks and alterations omitted).

  E.  The State Fails to Identify the Transfers It Seeks to Avoid

  The State has also failed to specify which transfers it seeks to avoid.  The Complaint broadly asserts that "all transfers of property by Purdue to the Sacklers and to Craig Landau and Mark Timney between 2017 and 2019 were made to insiders for antecedent debts" (FAC ¶ 780) and claims that the State is entitled to "avoid all such transfers" (*id.* ¶ 781).  However, the Complaint does not identify a single transfer that Purdue *actually made* to Dr. Landau.  *See Echostar Satellite, L.L.C. v. Splash Media Partners, L.P.*, 2010 WL 3873282, at *11 (D. Colo. Sept. 29, 2010) (a transfer is "an essential element of [CUFTA] fraudulent transfer claim").

  In the body of the Complaint, the State describes approvals by "Purdue and/or the Sacklers," beginning in January 2018, of:  a retention program for Dr. Landau, a prepayment of certain amounts under that retention program, a salary increase, a revised retention program, and a severance package.  (FAC ¶¶ 660-63.)  But the Complaint does not provide any information

about any actual payments made by Purdue to Dr. Landau "between 2017 and 2019" pursuant to those approvals or otherwise – no dates, no amounts, no categories of payments. (*Id.* ¶ 780.) Without that essential information, Dr. Landau does not have fair notice of the State's claim against him and, among other things, cannot determine which affirmative defenses may be available to him. *See, e.g.*, *In re Licking River Mining, LLC*, 565 B.R. 794, 804 (Bankr. E.D. Ky. 2017) (explaining that "[w]hether a complaint adequately identifies a particular transfer is determined by asking whether the defendant could respond to the claims with appropriate affirmative defenses" and dismissing claims where complaint did not identify any specific fraudulent transfers); *In re Hydrogen, L.L.C.*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010) (finding pleadings to be deficient under Fed. R. Civ. P. 8 where complaint did not provide relevant details as to date, amount, or type of transfer, making it "impossible to identify any specific avoidable transfer" to defendant).

F.    The State's Claim Is Time-Barred to the Extent It Relates to Any Payments Made, or Obligations Incurred, More Than One Year Before the Filing of the Complaint

As noted, the State seeks to avoid transfers from Purdue to Dr. Landau "between 2017 and 2019." (FAC ¶ 780.)  For actions pursuant to the provision under which the State asserts its claim against Dr. Landau, C.R.S. § 38-8-106(2), CUFTA states that "[a] cause of action with respect to a fraudulent transfer . . . is extinguished unless action is brought . . . within one year after the transfer was made or the obligation was incurred." C.R.S. § 38-8-110(1)(c).  Thus, any claim to avoid payments made, or obligations incurred, prior to July 1, 2018 – that is, one year before the date on which the State filed the Complaint – are clearly time-barred. (*See, e.g.*, FAC

¶ 661 (discussing approval of a prepayment to Dr. Landau of certain retainer payments on February 14, 2018); ¶ 662 (discussing Dr. Landau's salary).)

G.    The State Fails to State a Claim to the Extent It Seeks
      to Avoid Payments That Were Not for Antecedent Debts

Finally, CUFTA applies only to transfers "for an antecedent debt." C.R.S. § 38-8-106(2). For a debt to be "antecedent," it must have been "incurred *before* the transfer." *In re Miniscribe Corp.*, 123 B.R. 86, 90 (Bankr. D. Colo. 1991) (emphasis added). In turn, "a debt is incurred when a debtor first becomes legally bound to pay." *In re White River Corp.*, 799 F.2d 631, 632 (10th Cir. 1986). Certain transfers that may be the subject of the State's claim against Dr. Landau indisputably were not for antecedent debts.

For example, the Complaint alleges that a $6 million prepayment of two retention payments to Dr. Landau was "approved" on February 14, 2018. (FAC ¶ 661.) As alleged, there was no legal obligation to pay the retention payments at that time. Therefore, any payments made pursuant to this approval do not constitute transfers for antecedent debts. *See, e.g.*, *In re Hechinger Inv. Co. of Del., Inc.*, 2004 WL 3113718, at *2 (Bankr. D. Del. Dec. 14, 2004) ("It is well established that advance payments are prima facie not preferences because the transfer from the debtor to the creditor is not for or on account of an antecedent debt.").

The same is true of Dr. Landau's salary. (FAC ¶ 662.) Any legal obligation on the part of Purdue to pay Dr. Landau's salary arises at the time of his provision of services as a Purdue employee. It follows that salary payments are payments for current – not antecedent – debts. *See, e.g.*, *Travis v. Kurron Shares of Am., Inc.*, 272 F. Supp. 2d 816, 821 n.1 (D. Minn. 2003) (observing that "[t]he law distinguishes between payment for current debt and antecedent debt" and noting that claims to avoid payments to executives, which "were for compensation for

current and ongoing services," would fail "because those claims were not for antecedent debt");

*In re Labrum & Doak, LLP*, 227 B.R. 383, 387 (Bankr. E.D. Pa. 1998) ("We know of no case

holding that salaries paid to employees as work is performed . . . are transfers subject to

avoidance as preferences.").

The Complaint also alleges that "Purdue and/or the Sacklers" have agreed to make

certain future payments to Dr. Landau, including payments in the event he ceases working at the

company under certain circumstances (FAC ¶¶ 662-63) and retention payments if he remains at

the company (*id.* ¶ 662).  Any obligation to pay severance does not constitute an antecedent debt

because it will arise only if Dr. Landau resigns from Purdue for good reason or is terminated

without cause, with such payment being made simultaneously with the obligation.  *See, e.g.*, *In

re Southmark Corp.*, 62 F.3d 104, 106-07 (5th Cir. 1995) (holding that severance payment debt

was incurred when employee was terminated, rather than when employment contract calling for

severance was executed, and thus transfer of severance payment was "on account of a

simultaneous debt, not an antecedent debt").  The same logic applies to any further retention

payments, for which Purdue's legal obligation to pay will arise simultaneously with the payment,

when Dr. Landau has remained in his role as CEO for the prescribed period.

## IV. Alternatively, the Complaint Should Be Dismissed for Failure to Provide Dr. Landau with Adequate Notice of the Claims Against Him

As discussed above, all of the claims against Dr. Landau should be dismissed either for

lack of personal jurisdiction or for failure to state a claim.  But even if that were not the case, the

Court should dismiss those claims, with prejudice, because the Complaint fails to provide Dr.

Landau with fair notice of the claims against him under even the basic precepts of Rule 8, much

less the heightened pleading standard of Rule 9(b), and further amendments would be futile.

A.     The Complaint Does Not Satisfy the Basic
       Notice-Pleading Requirements of Rule 8

Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing

that the pleader is entitled to relief," and Rule 8(e)(1) directs that "[e]ach averment of a pleading

shall be simple, concise, and direct."  Like its federal counterpart, Rule 8 "serves the important

purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of

the legal claims being asserted."  *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).

Here, the Complaint is neither short nor plain.  In its staggering length alone, the Complaint

violates Rule 8.  *See Aguilar v. Colo. State Governor*, 2015 WL 4743069, at *1 (D. Colo. Aug.

11, 2015) ("Prolix pleadings violate the requirements of Rule 8.").

The burden on Dr. Landau of trying to decipher the Complaint is all the greater because,

as discussed in Section I.D.2 above, the Complaint relies so heavily on the impermissible

practice of group pleading, without specifically tying the allegations to Dr. Landau.  At times,

this approach renders the allegations nonsensical.  For example, although Dr. Landau did not join

Purdue until 1999 (Landau Aff. ¶ 10), by means of group pleading the Complaint attributes

conduct and knowledge to him dating back to 1996.  (*See* FAC ¶ 10 (alleging that the "individual

Defendants" "directed and/or sanctioned" a sales strategy "to support the launch of OxyContin"

in 1996); ¶ 734 (alleging that "Defendants" had the requisite scienter "[f]rom the time that they

launched their flagship opioid, OxyContin" in 1996).)

In *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008), the Tenth Circuit explained that

it was "particularly important" in a case against both an entity (there, a government agency) and

certain employees of that entity, who were sued in their individual capacity, that the complaint

"make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with

42

fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the [entity]." *Id.* at 1250 (emphasis in original). The court found that "the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom" made it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

So too, here. The Complaint asserts claims against Purdue – as well as other entities and individuals – in connection with a deceptive marketing campaign that allegedly began in 1996. (*See* FAC ¶ 673.) As discussed in Section II.B above, a corporate officer may not be held liable solely by reason of his office, but rather is personally liable for the acts of the corporation only if he "actively participated" in those acts himself. *Q.E.R.*, 880 F.2d at 1182-83. Thus, as in *Robbins*, it is crucial that the Complaint "make clear exactly *who* is alleged to have done *what* to *whom*." *Robbins*, 519 F.3d at 1250 (emphasis in original). Yet the Complaint repeatedly blurs the critical distinction between Dr. Landau, Purdue, and the other Defendants. By way of example only, Paragraph 12 of the Complaint lists nine different "misrepresentations" allegedly made by the "Defendants," but the hundreds of paragraphs that follow fail to connect *any* of those alleged misrepresentations to Dr. Landau individually.

The State's extensive use of group pleading is incompatible with Rule 8:

[G]eneral group pleading is not sufficient to present a plausible claim that a particular individual has particular knowledge, a particular motivation, or took a particular action. The fact that one individual had certain knowledge or motivation or took a certain action does not create an assumption or presumption that others in a group with that individual share that knowledge or motivation or took the same action. Group pleading seeks to state a claim against individuals based on such assumptions or presumptions.

*Seni ex rel. Ciber, Inc. v. Peterschmidt*, 2013 WL 1191265, at *3 (D. Colo. Mar. 22, 2013); *see also Matthews v. Bergdorf*, 889 F.3d 1136, 1148 (10th Cir. 2018) ("A complaint that fails to differentiate wrongful acts among multiple defendants, alleging instead multiple violations by unspecified defendants does not provide the fair notice the law requires."); *Baker v. City of Loveland*, 686 F. App'x 619, 621 (10th Cir. 2017) (affirming Rule 8 dismissal of 42-page, 398-paragraph complaint where "allegations appear to lump all of the defendants together, without saying who did what or identifying conduct that would trigger liability"); *Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015) (affirming dismissal where plaintiff "fail[ed] to connect his 60 separate claims to the Complaint's hundreds of factual allegations" and his "multiple collective allegations against the defendants and his corresponding failure to identify each individual defendant's culpable actions only exacerbated this significant deficiency").

The Complaint also violates Rule 8 by resorting to impermissible "shotgun pleading," incorporating in each of the fourteen claims against Dr. Landau – as well as all other claims – "all of the allegations against Defendants in this First Amended Complaint." (FAC ¶¶ 667, 672, 678, 686, 692, 697, 702, 710, 722, 732, 737, 743, 752, 756, 762, 767, 770, 773, 776, 779, 782, 786, 789.) *See, e.g.*, *Jacobs v. Credit Suisse First Boston*, 2011 WL 4537007, at *9 (D. Colo. Sept. 30, 2011) (dismissing complaint and granting defendants' motion for sanctions where, among other things, the complaint "is a classic example of 'shotgun pleading,'" "plac[ing] an inordinate burden on the party responding to that pleading, and on the Court interpreting it, [by] requiring them to parse the narrative repeatedly and attempt to independently extract the particular factual averments that are relevant to each individual claim").

B.    <u>The Complaint Does Not Satisfy the Heightened Pleading Standard of Rule 9(b)</u>

Additionally, the Complaint violates Rule 9(b), which requires that "[i]n all averments of

fraud, the circumstances constituting fraud shall be stated with particularity."  The purpose of

this heightened pleading standard is "to afford defendant fair notice of plaintiff's claims and the

factual ground upon which they are based."  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236

(10th Cir. 2000) (internal quotation marks and alterations omitted).[20]  Rule 9(b) applies to *any*

claim "sounding in fraud," "[r]egardless of the labels that [the plaintiff] has attached."  *State*

*Farm Mut. Auto. Ins. Co. v. Parrish*, 899 P.2d 285, 289 (Colo. App. 1994) (internal quotation

marks omitted).  As noted above, all but one of the State's claims against Dr. Landau sound in

fraud (the lone exception being the preferential treatment claim).[21]  As to those claims, the

Complaint – despite its extreme verbosity – fails to satisfy Rule 9(b).

---

[20] Consistent with their general approach, *see* note 4 above, Colorado courts deem federal
case law interpreting Fed. R. Civ. P. 9(b) to be "highly persuasive" when analyzing C.R.C.P.
9(b) because the pleading standards are "substantively identical."  *Baker v. Wood, Ris & Hames,*
*P.C.*, 364 P.3d 872, 883 (Colo. 2016).

[21] **Claims 1 through 7** are brought under the CCPA.  *See HealthONE of Denver, Inc. v.*
*UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120-21 (D. Colo. 2011) (applying Rule 9(b) to
CCPA claims).  **Claim 8**, the public nuisance claim, sounds in fraud because it expressly
incorporates "all of the allegations against Defendants contained in this First Amended
Complaint" (FAC ¶ 710) and alleges that "Defendants engaged in a deceptive campaign to
market, sell, and distribute opioids generally and Purdue and Rhodes's drugs specifically" (*id.*
¶ 712).  The same is true of **Claim 9**, the negligence claim, which also incorporates "all of the
allegations" of the Complaint (*id.* ¶ 722) and is based on allegations concerning Defendants'
"affirmative conduct in falsely, deceptively, and aggressively marketing and selling opioids
generally and Purdue's drugs specifically" (*id.* ¶ 724).  *See Lynch*, 2018 WL 5619327, at *7
(applying Rule 9(b) to negligent misrepresentation claim where claim "is rife with allegations of
willful misconduct").  **Claims 10, 11, and 23** are all fraud claims.  *See, e.g.*, *State Farm*, 899
P.2d at 289 (applying Rule 9(b) to claims of intentional misrepresentation and civil conspiracy);
*Baker*, 364 P.3d at 883 (fraudulent concealment).  And **Claim 12** is brought under COCCA,
alleging mail and wire fraud predicates.  (FAC ¶ 748.)  *See New Crawford Valley, Ltd. v.*
*Benedict*, 877 P.2d 1363, 1371 (Colo. App. 1993) ("[I]f the 'predicate acts' underlying a

To comply with Rule 9(b), a complaint "must sufficiently specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *State Farm*, 899 P.2d at 288 (internal quotation marks omitted); *accord United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (Fed. R. Civ. P. 9(b) requires "factual allegations regarding the who, what, when, where and how of the alleged claims") (internal quotation marks omitted). Here, the Complaint honors Rule 9(b) in the breach, failing to attribute any specific misrepresentations or deceptive marketing practices to Dr. Landau personally. Instead, the Complaint broadly ascribes 23 years of alleged deceptive marketing practices to Dr. Landau (*e.g.*, FAC ¶¶ 12, 50), improperly relying on undifferentiated allegations against groups of Defendants (*e.g.*, *id.* ¶ 733).

Because group pleading violates even Rule 8 (*see* Section IV.A above), it necessarily violates Rule 9(b).[22] *See Koch*, 203 F.3d at 1237 (allegation violated Rule 9(b) by "fail[ing] to identify any specific Defendant who made these alleged fraudulent misrepresentations or omissions, a particularly important requirement in this case because of the number of individual defendants involved"); *Lynch*, 2018 WL 5619327, at *14 (dismissing intentional and negligent misrepresentation claims under Rule 9(b) because "Plaintiff fails to identify which party is responsible for which misrepresentations, and instead Plaintiff simply asserts this claim against

plaintiff's COCCA claim are fraudulent acts, the circumstances must be pleaded with the particularity required by C.R.C.P. 9(b).").

[22] *See La Force v. Wells Fargo Bank, N.A.*, 2011 WL 7431490, at *6 (D. Colo. Aug. 10, 2011) ("In failing to comply with Rule 8, Plaintiff certainly also fails to assert her allegations in compliance with Rule 9(b)[.]"), *report and recommendation adopted*, 2012 WL 651859 (D. Colo. Feb. 29, 2012).

all Defendants"); *Carrado v. Daimler AG*, 2018 WL 4565562, at *5 (D. Colo. Sept. 24, 2018) (dismissing CCPA claim because allegations that "fail[ed] to distinguish between" defendants "fall short of the specificity requirements of Rule 9(b)"); *Airquip*, 2017 WL 4222618, at *8 ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth.") (internal quotation marks omitted); *Salba Corp. v. X Factor Holdings, LLC*, 2014 WL 4458891, at *4 (D. Colo. Sept. 10, 2014) ("Fraud allegations which lump the four [counterclaim-defendants] together as a group do not satisfy the detailed pleading requirements of Rule 9(b). These allegations do not identify the party making the false statement.").

Nor is this pleading defect cured by the unsubstantiated allegation that Dr. Landau "directed," "controlled," or "sanctioned" the alleged misrepresentations. (*E.g.*, FAC ¶¶ 47, 218, 790.) Where, as here, the plaintiff "merely tacks on conclusory assertions" that the activities at issue "were done 'at [defendant's] direction,' 'as part of [defendant's] scheme to defraud [plaintiff],' and 'with his knowledge and approval'" – on the erroneous theory that the defendant "must bear some personal liability for the acts of the company through his subordinates" because he is a "senior officer" of the company – the plaintiff's allegations "fail to meet the 'plausibility' standard of Rule 8(a), much less the particularity requirement of Rule 9(b)." *PetEdge*, 234 F. Supp. 3d at 493-94; *see also Todd v. Xoom Energy Md., LLC*, 2016 WL 727108, at *10 (D. Md. Feb. 22, 2016) ("[C]onclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b).") (internal quotation marks omitted).

As for Dr. Landau's state of mind, the Complaint similarly makes nothing more than
conclusory allegations.  (*See, e.g.*, FAC ¶ 734 ("Defendants knew that none of the
representations Purdue made about the safety and efficacy of opioid treatment were based on any
reliable scientific evidence.").)  This is insufficient under Rule 9(b).  "Although Rule 9(b)
permits intent, knowledge, or condition of mind to be averred generally, courts have repeatedly
required plaintiffs to plead the circumstances constituting fraud and the factual basis that gives
rise to a strong inference of fraudulent intent."  *United States ex rel. Simpson v. Leprino Foods
Dairy Prods. Co.*, 2018 WL 1375792, at *2 (D. Colo. Mar. 19, 2018).  The Complaint points to
no such factual basis, beyond Dr. Landau's titles at Purdue.  Because the State's "allegations are
conclusory and speculative, and they are not accompanied by a sufficient explanation of the
circumstances constituting a fraud to support an inference of the requisite scienter, as required
under Rule 9(b)," its claims against Dr. Landau should be dismissed.  *Id.* at *3.

C.    Further Amendments Would Be Futile

Many notice-pleading cases involve *pro se* plaintiffs, whose violations of the pleading
rules are the result of inexperience or inattention.  *See, e.g.*, *Hayner v. City & Cty. of Denver*, 749
F. App'x 758, 760 (10th Cir. 2019).  This case is different.  The excessive length, the
indiscriminate lumping-together of Defendants, the mischaracterization of documents, the artful
vagueness as to who did what – these are all features of a pleading that was carefully crafted by a
highly sophisticated litigant over an extended period of time, after reviewing literally millions of
pages of documents.  The very *purpose* of the Complaint is, through the use of these devices, to
obscure the fact that Dr. Landau has not had the requisite minimum contacts with Colorado and
did not actively participate in any of the alleged misconduct.  Under the circumstances, it is

48

reasonable to conclude that this Complaint represents the State's very best effort as to Dr.

Landau.  Accordingly, the pleading violations are cause for dismissal with prejudice.  *See, e.g.*,

*Farrow v. Confer*, 1999 WL 1127645, at *1 (10th Cir. 1999) ("A complaint may be dismissed

[pursuant to Rule 8] with prejudice if allowing further amendments would be futile.").

## **CONCLUSION**

For the foregoing reasons, Defendant Craig Landau respectfully requests that the Court

dismiss, with prejudice, all claims asserted against him in the Complaint.

Dated:  September 16, 2019

Respectfully submitted,

By: *s/ T. Markus Funk*

T. Markus Funk, #43500
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado  80202
Telephone: (303) 291-2300
Email: mfunk@perkinscoie.com

Linda Imes, #19PHV5860
Christopher Dysard, #19PHV5859
SPEARS & IMES LLP
51 Madison Avenue
New York, New York  10010
Telephone: (212) 213-6996
Email: limes@spearsimes.com
Email: cdysard@spearsimes.com

*Attorneys for Craig Landau*

*Attorneys for Craig Landau*

# APPENDIX 1

## Selected Terms Used in First Amended Complaint to Refer to Defendants

| Terms | Paragraphs |
|---|---|
| "Defendants" | 2, 6, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 47, 53, 54, 55, 56, 57, 58, 59, 60, 92, 148, 154, 179, 189, 202, 208, 218, 239, 242, 255, 257, 258, 260, 263, 279, 282, 287, 291, 300, 301, 303, 306, 313, 320, 323, 330, 332, 337, 340, 343, 369, 376, 378, 379, 380, 384, 385, 387, 388, 392, 399, 409, 410, 411, 412, 413, 430, 461, 472, 474, 475, 476, 502, 503, 539, 543, 558, 559, 560, 567, 572, 574, 575, 576, 577, 578, 579, 580, 581, 616, 617, 626, 627, 628, 629, 630, 631, 641, 667, 668, 669, 670, 671, 672, 673, 674, 675, 676, 677, 678, 679, 680, 681, 682, 683, 684, 685, 686, 687, 688, 689, 690, 691, 692, 693, 694, 695, 696, 697, 698, 699, 700, 701, 702, 703, 704, 705, 706, 707, 708, 709, 710, 711, 712, 713, 714, 715, 716, 717, 718, 719, 720, 721, 722, 723, 724, 725, 726, 727, 728, 729, 730, 731, 732, 733, 734, 735, 736, 737, 738, 739, 740, 741, 742, 743, 749, 751, 752, 756, 762, 767, 770, 773, 776, 779, 782, 786, 789, 790, 791 |
| "individual Defendants" | 4, 6, 7, 10, 11, 29, 30, 31, 102, 115, 120, 156, 159, 162, 163, 196, 199, 203, 207, 212, 217, 218, 234, 235, 240, 242, 243, 245, 246, 261, 266, 267, 275, 279, 280, 282, 283, 284, 286, 287, 292, 293, 312, 328, 335, 370, 371, 379, 387, 405, 406, 407, 408, 417, 418, 439, 474, 478, 487, 506, 563, 567, 572, 576, 578, 580, 642, 643, 688, 689, 790 |
| "Executive Committee" | 26, 27, 29, 48, 79, 120, 140, 145, 154, 179, 194, 196, 198, 201, 202, 203, 230, 234, 238, 239, 240, 241, 247, 248, 259, 277, 278, 293, 294, 295, 297, 299, 300, 301, 302, 317, 318, 325, 327, 338, 340, 341, 342, 348, 358, 371, 424, 432, 434, 470, 471, 473, 479, 480, 484, 486, 488, 489, 493, 494, 496, 497, 501, 502, 503, 504, 505, 507, 508, 509, 512, 514, 517, 518, 519, 524, 525, 526, 531, 532, 533, 542, 544, 545, 549, 553, 554, 555, 557, 559, 560, 578 |
| "Craig Landau" | 28, 47, 81, 98, 140, 153, 154, 179, 194, 196, 198, 203, 230, 234, 238, 239, 240, 247, 248, 259, 278, 294, 302, 317, 345, 346, 347, 348, 358, 471, 473, 486, 489, 491, 493, 495, 497, 501, 503, 504, 505, 507, 508, 509, 514, 519, 524, 532, 559, 560, 565, 566, 578, 614, 660, 661, 662, 663, 664 |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of DEFENDANT CRAIG LANDAU'S MOTION TO DISMISS was filed and served via the manner indicated below this 16th day of September 2019 to the following:

| | |
|---|---|
| Philip J. Weiser, Attorney General | (  ) First Class Mail |
| John Feeney-Coyle, #44970 | (  ) Hand Delivery |
|    Acting Deputy Attorney General | (  ) Facsimile |
| 1300 Broadway, 7th Floor | (  ) Overnight Delivery |
| Denver, CO  80203 | (X) Colorado Courts E-Filing |
| T: (720) 508-6000 | (  ) E-Mail |
| Email: John.Feeney-Coyle@coag.gov | |

*Attorneys for Plaintiff*

| | |
|---|---|
| Andrew H. Myers, #34288 | (  ) First Class Mail |
| Tamera D. Westerberg, #29859 | (  ) Hand Delivery |
| WHEELER TRIGG O'DONNELL LLP | (  ) Facsimile |
| 370 Seventeenth Street, Suite 4500 | (  ) Overnight Delivery |
| Denver, CO  80202 | (X) Colorado Courts E-Filing |
| T: (303) 244-1800 | (  ) E-Mail |
| Email: myers@wtotrial.com | |
| Email: westerberg@wtotrial.com | |

*Attorneys for Defendants Purdue Pharma L.P., Purdue Pharma, Inc., and Rhodes Pharmaceuticals, L.P.*

| | |
|---|---|
| Kevin D. Evans, #28218 | (  ) First Class Mail |
| ARMSTRONG TEASDALE LLP | (  ) Hand Delivery |
| 4643 South Ulster Street, Suite 800 | (  ) Facsimile |
| Denver, CO  80237 | (  ) Overnight Delivery |
| T: (720) 200-0613 | (X) Colorado Courts E-Filing |
| Email: kdevans@armstrongteasdale.com | (  ) E-Mail |

*Attorneys for Defendant Mark Timney*

| Joseph Sarles<br>Jordan Alexander<br>John Potter<br>Jocelyn Ma<br>QUINN EMANUEL URQUHART & SULLIVAN LLP<br>866 South Figueroa St., 10th Floor<br>Los Angeles, CA  90017<br>T: (213) 443-3600<br>Email: josephsarles@quinnemanuel.com<br>Email: jordanalexander@quinnemanuel.com<br>Email: johnpotter@quinnemanuel.com<br>Email: jocelynma@quinnemanuel.com | (  ) First Class Mail<br>(  ) Hand Delivery<br>(  ) Facsimile<br>(  ) Overnight Delivery<br>(  ) Colorado Courts E-Filing<br>(X) E-Mail |

*Attorneys for Defendant Mark Timney, admitted pro hac vice*

| Marci G. LaBranche, #32160<br>RIDLEY, MCGREEVY & WINOCUR, P.C.<br>303 16th Street, Suite 200<br>Denver, CO  80202<br>T: (303) 629-9700<br>Email: labranche@ridleylaw.com | (  ) First Class Mail<br>(  ) Hand Delivery<br>(  ) Facsimile<br>(  ) Overnight Delivery<br>(X) Colorado Courts E-Filing<br>(  ) E-Mail |

*Attorneys for Defendant Russell Gasdia*

| Julie B. Porter<br>SALVATORE PRESCOTT & PORTER, PLLC<br>1010 Davis St.<br>Evanston, IL  60201<br>T: (312) 283-5711<br>Email: porter@spplawyers.com | (  ) First Class Mail<br>(  ) Hand Delivery<br>(  ) Facsimile<br>(  ) Overnight Delivery<br>(  ) Colorado Courts E-Filing<br>(X) E-Mail |

*Attorneys for Defendant Russell Gasdia, admitted pro hac vice*

| | |
|---|---|
| Michiko Brown, #33072 | ( ) First Class Mail |
| Daniel Richards, #50457 | ( ) Hand Delivery |
| DAVIS GRAHAM & STUBBS LLP | ( ) Facsimile |
| 1550 17th Street, Suite 500 | ( ) Overnight Delivery |
| Denver, CO  80202 | (X) Colorado Courts E-Filing |
| T: (303) 892-9400 | ( ) E-Mail |
| Email: miko.brown@dgslaw.com | |
| Email: daniel.richards@dgslaw.com | |

*Attorneys for Defendants Richard Sackler,
Mortimer D.A. Sackler, Jonathan Sackler,
Kathe Sackler, Ilene Sackler Lefcourt, Beverly
Sackler, Theresa Sackler, and David Sackler*

| | |
|---|---|
| John A. Hutchings, #10543 | ( ) First Class Mail |
| DILL DILL CARR STONBRAKER & HUTCHINGS PC | ( ) Hand Delivery |
| | ( ) Facsimile |
| 455 Sherman Street, Suite 300 | ( ) Overnight Delivery |
| Denver, CO  80203 | (X) Colorado Courts E-Filing |
| T: (303) 777-3737 | ( ) E-Mail |
| Email: jhutchings@dillanddill.com | |

*Attorneys for Defendant James David Haddox*

| | |
|---|---|
| Adam S. Hoffinger | ( ) First Class Mail |
| Thomas P. DeFranco | ( ) Hand Delivery |
| Aislinn K. Affinito | ( ) Facsimile |
| SCHULTE, ROTH & ZABEL LLP | ( ) Overnight Delivery |
| 901 15th Street, Suite 800 | ( ) Colorado Courts E-Filing |
| Washington, DC  20005 | (X) E-Mail |
| T: (202) 729-7462 | |
| Email: adam.hoffinger@srz.com | |
| Email: thomas.defranco@srz.com | |
| Email: aislinn.affinito@srz.com | |

*Attorneys for Defendant James David
Haddox, pro hac vice pending*

Michael A. Rollin                          (  ) First Class Mail
FOX ROTHSCHILD LLP                         (  ) Hand Delivery
1225 17th Street, Suite 2200               (  ) Facsimile
Denver, CO  80202                          (  ) Overnight Delivery
T: (303) 945-7412                          (X) Colorado Courts E-Filing
Email: mrollin@foxrothschild.com           (  ) E-Mail

*Attorneys for Defendant MNP Consulting
Limited*

                                           s/ *Chin Sue Virnich*
                                           Chin Sue Virnich