DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
James I. McClammy
Eli J. Vonnegut
Darren S. Klein
Dylan A. Consla

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| **Debtors.¹** | **(Jointly Administered)** |

**DEBTORS' REPLY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN
ORDER AUTHORIZING IMPLEMENTATION OF 2022 KEY EMPLOYEE
INCENTIVE PLAN AND 2022 KEY EMPLOYEE RETENTION PLAN**

Purdue Pharma L.P. and its affiliate debtors (collectively, the "**Debtors**," "**Purdue**" or the "**Company**") submit this reply in support of the *Motion of Debtors for Entry of an Order Authorizing Implementation of 2022 Key Employee Incentive Plan and 2022 Key Employee Retention Plan* [ECF No. 4707] (the "**Motion**") and in response to the limited objection [ECF

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

No. 4766] (the "**Objection**") [2] filed by the Ad Hoc Group of Non-Consenting States (the "**Objecting States**"). [3] A proposed supplemental order (the "**Proposed Supplemental Order**") approving the CEO's participation in the 2022 KEIP is attached hereto as **Exhibit A**.

## PRELIMINARY STATEMENT

1. Nearly three years into this complex restructuring, and after ten hearings on employee compensation motions, the Objecting States have filed an Objection that: (1) contains nothing new, (2) ignores and seeks to relitigate multiple prior rulings of this Court, and (3) is heedless of the material risks and costs to all stakeholders of the loss of the Debtors' experienced CEO during a deeply challenging restructuring process.

2. The Objection does not bring evidence remotely sufficient to support its position. It essentially (i) repeats unsubstantiated allegations from a civil complaint filed in July 2019—despite this Court's ruling over two and a half years ago that it "ha[s] that information" and that such allegations present "no impediment" to Dr. Landau's serving as CEO—and (ii) repeatedly (and selectively) cites to the same November 2020 deposition of Dr. Landau that the Objecting States cited to last year.

3. In point of fact, Dr. Landau has skillfully guided the Debtors' business during a prolonged and challenging chapter 11 process. The Debtors' directors—a majority of whom began their service in 2018 and 2019—made the entirely reasonable business decision that Dr. Landau's continued leadership will preserve and maximize estate value. Approval of his participation in the

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[3] The UCC's *Statement in Respect of Motion of Debtors for Entry of an Order Authorizing Implementation of 2022 Key Employee Incentive Plan* [ECF No. 4890] (the "**UCC Statement**") takes no position on the relief sought in the Motion. As this Court and all involved parties know (and the UCC does not suggest to the contrary), the emergency relief fund (the "**ERF**") was not implemented because the various creditor constituencies could not reach agreement on the structure and governance thereof—despite massive and prolonged efforts by many parties including the Debtors, who consistently and strongly supported the ERF and worked to build consensus therefor.

2

2022 KEIP easily satisfies the applicable governing standard—which the Objecting States do not even cite in their Objection. Unsurprisingly, the Objecting States challenge neither the benchmarking of Dr. Landau's proposed pay to market, nor the 2022 Performance Metrics. A disinterested board of directors approved below-market compensation for a well-credentialed and experienced chief executive, subject to achievement of rigorous corporate objectives that were negotiated at arm's length with sophisticated economic stakeholders. The Objection—which also repeats multiple arguments that this Court expressly rejected in prior years—provides no basis to deny the Debtors' motion to pay their CEO incentivizing, market-competitive compensation. Nor can or should the Debtors risk being rendered leaderless at this critical juncture.

## ARGUMENT

4.  This Court has already found that the 2022 KEIP is primarily incentivizing, and thus, approval of the proposed payments to Dr. Landau is governed by section 503(c)(3) of the Bankruptcy Code. *See Order Authorizing the Debtors to Implement 2022 Key Employee Retention Plan and Key Employee Incentive Plan* [ECF No. 4862]; *see also In re Residential Capital, LLC*, 478 B.R. 154, 170 (Bankr. S.D.N.Y. 2013). "Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)." *In re Borders Grp.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011). A debtor satisfies the business judgment standard if it shows that the proposal falls within its "fair and reasonable business judgment" and "thus within the zone of acceptability." *In re Dana Corp.*, 358 B.R. 567, 572 (Bankr. S.D.N.Y. 2006).

5.  The Debtors' inclusion of Dr. Landau as one of only two participants in the 2022 KEIP—which was authorized, as in the past, by the full board of directors of Purdue Pharma Inc.—easily satisfies this standard. As set forth in greater detail in the Motion, the proposed

payments to Dr. Landau simply carry forward the standard, annual incentive compensation program approved by this Court in each of the last two years, including the substantial reductions first agreed to in 2020 (as compared to Dr. Landau's pre-bankruptcy employment contract). *See* Mot. ¶¶ 28, 30. Every dollar the Debtors propose to pay Dr. Landau under the 2022 KEIP depends on the Company's achievement of rigorous performance metrics, and no payments will be made unless the Company achieves those metrics at least at an ambitious, threshold level. *See id.* ¶ 28. The Compensation Committee set the 2022 Performance Metrics following the same process this Court has long held to produce incentivizing corporate targets, made even more rigorous as a result of protracted negotiations with the Company's key economic stakeholders. *See id.* ¶¶ 31, 32. Moreover, Dr. Landau's proposed compensation under the 2022 KEIP—even assuming the Debtors achieve the 2022 Performance Metrics at target—would still fall 14% <u>below</u> the relevant median for chief executives at Purdue's peer, non-debtor pharmaceutical companies. *See id.* ¶ 81. For these reasons, Dr. Landau's participation in the 2022 KEIP should be approved.

6. The Objection takes issue with none of this. It does not challenge the 2022 Performance Metrics. It does not challenge the appropriateness of Dr. Landau's compensation relative to other chief executives. Instead, the Objection, relying on a grab-bag of allegations made in litigation filed more than three years ago, and selective and pruned quotes from a 19-month-old deposition transcript, in essence seeks the removal of Dr. Landau from his position as CEO. The Court should not countenance the Objection's unsubstantiated assertions, nor risk the stability of critically needed senior leadership.

7. The Objection predominantly recycles allegations included in a complaint filed by the State of Colorado (the "**Colorado Complaint**") on or about July 1, 2019, which itself borrowed

4

from the complaint previously filed by the Commonwealth of Massachusetts.[4] The Objecting States cited the same Colorado Complaint in their first challenge to Dr. Landau's compensation in December 2019. *See Statement of the Ad Hoc Group of Non-Consenting States Maintaining its Objection to Purdue's Wage Motion Insofar as it Relates to Purdue CEO Craig Landau* [ECF No. 557] ¶ 8 ("For example, Colorado and Massachusetts allege that Landau is one of the chief architects and beneficiaries of Purdue's illegal marketing campaign."). Indeed, paragraphs 9, 10, 11, 12, 13 and 14 of the Objection are copied and pasted from the Colorado Complaint.[5]

8. The Court was fully aware of these allegations when it approved substantially similar market-based compensation for Dr. Landau on three separate occasions. For example, at the December 2019 hearing regarding approval of Dr. Landau's prepetition compensation package, the Court made clear that it had read the similar complaint filed by Massachusetts, confirmed it therefore already "ha[d] that information," and invited the Objecting States to "take discovery," including "in connection with a confirmation hearing," to determine "whether there's some reason beyond what I read in the complaint" that Dr. Landau should not be compensated for his service to the Debtors. Dec. 4, 2019 Hr'g Tr., 122:21–123:4. The Court held that those allegations—allegations that were similar to those repeated here, essentially without development or elaboration other than using different excerpts from the same late 2020 deposition testimony that the Objecting States cited last year—presented "no impediment to" Dr. Landau's "running this company at this point as the CEO under all the supervision that he's under." *Id.* at 124:2–8.

---

[4] Massachusetts and Colorado were the lone states to name Dr. Landau as a defendant prior to this Court's issuance of the preliminary injunction. *See Commonwealth of Massachusetts v. Purdue Pharma L.P. et al.*, C.A. No. 1884-cv-01808 (BLS2) (Super. Ct. Jan. 31, 2019); *State of Colorado ex rel. Weiser v. Purdue Pharma L.P., et al.*, Case No. 18CV33300 (Denver Cty. Dist. Ct. July 12, 2019).

[5] Paragraph 13 of the Objection even contains a holdover reference to the "Defendants" named in the Colorado Complaint.

5

The Court could hardly have been clearer: the complaint's allegations alone did not "come close to suggesting that there should be some thumb on the scales for Dr. Landau because of past events." *Id.* at 134:15–22 (emphasis added). The Court also directed the Objecting States to "discuss . . . with the debtors first" any "ground swell that [Dr.] Landau isn't the right person" to lead the Company—another of this Court's clear instructions that the Objection disregards. *Id.* at 139:9–15. No such groundswell ever developed, nor were any new facts adduced in the last three years.

9. This Court has also repeatedly found that the Objecting States' "undeveloped concerns as to whether [Dr. Landau] individually has criminal or other liability for the Debtor's misconduct," Jan. 24, 2020 Hr'g Tr., 114:7–9, are already fully addressed by the conditions imposed in prior orders approving his annual incentive compensation.[6] In particular, the Court determined that "an appropriate balance . . . to address such concerns" had "already been struck," given "the claw back provisions and non-secreting agreement that [Dr. Landau] has agreed to abide by in connection with" prior compensation motions. *Id.* at 115:3–8. The Court emphasized:

> I believe it would be wholly inappropriate to . . . send a Debtor into material risk of not having a chief executive officer merely because a complaint has been filed against him or her . . . . And rather that under these facts, the estates should be protected by what Dr. Landau has agreed to, and what's in the order.

*Id.* at 115:9–16. The estates of course remain protected by these same disgorgement and anti-secretion provisions in the Proposed Supplemental Order.

---

[6] *See Second Suppl. Final Order Authorizing (i) Debtors to (a) Pay Certain Prepetition Wages, Salaries, Employee Benefits and Other Compensation and (b) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (ii) Employees and Retirees to Proceed with Outstanding Workers' Compensation Claims and (iii) Financial Institutions to Honor and Process Related Checks and Transfers* [ECF No. 783] ¶ 4; *Suppl. Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* [ECF No. 2002] ¶ 9; *Order Authorizing the Debtors to Implement 2021 Key Employee Incentive Plan* [ECF No. 3770] ¶ 8.

10. The Objecting States again argue that Dr. Landau should not receive incentive compensation because he is the "author" of a "sick" corporate culture at Purdue. *See, e.g.*, Obj. ¶ 24. When the Objecting States made this same argument last year, however, they already had available to them all of the materials they cite this year. *See Non-Consenting States' Limited Objection to Motion of Debtors for Entry of an Order Authorizing Implementation of 2021 Key Employee Incentive Plan* [ECF No. 3625]. It remains true that, as the Court recognized last year, "Dr. Landau became CEO of Purdue in June of 2017, well after the conduct that . . . was the subject of a DOJ investigation and the decades of misconduct referred to in the objection," and "there is considerable evidence in the record that, in fact, under Dr. Landau's leadership," changes to Purdue's culture "have taken place, including the pre-petition termination of the opioid sales force" and "the end of detailing." Sept. 13, 2021 Hr'g Tr., 134:8–11, 138:8–16.[7] The Objecting States have utterly failed on their fourth attempt to explain why it is proper for them to yet again seek to relitigate issues that have already been comprehensively addressed by this Court over the course of many thorough hearings.

11. Finally, the Objecting States repeat the misguided assertion, which this Court expressly overruled last year, that Dr. Landau should not be CEO because he has recused himself from certain inquiries given that he was named as a defendant in the 2019 complaints filed by Colorado and Massachusetts. As this Court expressly ruled on this very issue last September,

> because Dr. Landau was himself named as a defendant in some complaints against Purdue and the Sacklers, pre-petition, albeit that he strongly denies the claims that were asserted against him in that litigation, <u>it would have been improper</u> for him to inject himself into the process of determining who acted properly or improperly at Purdue, who was still an employee there . . . . That role really needs to have been assumed by other parties, whether

---

[7] The letter filed by Dr. Landau's counsel addresses in more detail particular arguments made by the Objecting States. *See* ECF No. 4893.

7

> that would be the Special Committee or outside counsel, as opposed to by Dr. Landau.

Sept. 13, 2021 Hr'g Tr., 139:7–17 (emphasis added).

12. Once more, the Objecting States seek to deny market-competitive compensation without having made "a proper evidentiary record." *Id.* at 140:10–13. Once more, they rely instead on "insinuation," "innuendo" and a "request to prove a negative." *Id.* at 140:13–14. And once more, this Objection, like its predecessors, should be overruled.

## CONCLUSION

WHEREFORE, for the foregoing reasons and the reasons stated in the Motion, the Debtors respectfully request that the Court promptly overrule the Objection and grant the relief requested in the Motion with respect to the 2022 KEIP as to the CEO, in the modified form set forth in the Proposed Supplemental Order.

Dated:   June 13, 2022
         New York, New York

DAVIS POLK & WARDWELL LLP

By:  */s/ Marshall S. Huebner*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
James I. McClammy
Eli J. Vonnegut
Darren S. Klein
Dylan A. Consla

*Counsel to the Debtors
and Debtors in Possession*

8

## Exhibit A

**Proposed Supplemental Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

### SUPPLEMENTAL ORDER AUTHORIZING THE DEBTORS TO IMPLEMENT 2022 KEY EMPLOYEE INCENTIVE PLAN

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these cases (collectively, the "**Debtors**") for entry of an order (this "**Order**") approving and authorizing the 2022 KEIP and 2022 KERP, as more fully set forth in the Motion; and upon the Ronan Declaration and the Gartrell Declaration; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. §§ 157(a), (b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Debtors having agreed to amend the Motion's request for relief with respect to the 2022 KEIP and the 2022 KERP as set

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but otherwise not defined herein will have the meanings set forth in the Motion.

forth in the Debtors' Statement (as defined herein); and the Motion's request for relief (as modified as set forth in the Statement) with respect to the 2022 KERP and the General Counsel's participation in the 2022 KEIP having been granted as set forth in the *Order Authorizing the Debtors to Implement 2022 Key Employee Retention Plan and Key Employee Incentive Plan* [ECF No. 4862]; and upon the objection to the CEO's participation in the 2022 KEIP; and upon the record of the hearing held by the Court on the Motion's amended request for approval of the 2022 KEIP as to the CEO on June 15, 2022 (the "**Hearing**"); and, after due deliberation, the Court having determined that the legal and factual bases set forth in the Motion, as amended by the Statement, and at the Hearing establish good and sufficient cause for the relief granted herein, which relief is in the best interests of the Debtors, their creditors, their estates and all other parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

1. Pursuant to sections 363(b)(1) and 503(c)(3) of the Bankruptcy Code, the Motion is granted as set forth herein.

2. The 2022 KEIP is approved, as set forth in the *Debtors' Statement in Support of Motion of Debtors for Entry of an Order Authorizing Implementation of 2022 Key Employee Incentive Plan and 2022 Key Employee Retention Plan* [ECF No. 4794] (the "**Statement**") and this Order, as to the CEO.

3. The Debtors are authorized, but not directed, to take all actions necessary to implement the 2022 KEIP with respect to the CEO on the terms and conditions set forth in the Motion, but solely as modified by the Statement and this Order, including making any payments pursuant to the terms of the 2022 KEIP as to the CEO (as modified by the Statement).

4. Once earned, the Debtors' obligations to pay amounts that become due and owing under the 2022 KEIP as to the CEO shall constitute administrative expenses pursuant to section 503(b) of the Bankruptcy Code, thereby entitled to priority payment pursuant to section 507(a)(2) of the Bankruptcy Code.

5. Nothing in this Order nor any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

6. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

7. Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any ground, (b) a grant of third-party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' rights to dispute any claim on any ground, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

8. For the avoidance of doubt, to the extent that the CEO is (a) determined by a final order of this Court or any other court of competent jurisdiction to have (x) knowingly participated in any criminal misconduct in connection with his employment with the Debtors or (y) been aware, other than from public sources, of acts or omissions of others that the CEO knew at the time were

3

fraudulent or criminal with respect to the Company's commercial practices in connection with the sale of opioids and failed to report such fraudulent or criminal acts or omissions internally at the Company or to law enforcement authorities at any time during his employment with the Company, or (b) believed by the Company based on reasonable inquiry (including inquiry of its attorneys and advisors), which inquiry shall be completed prior to any payments being made to the CEO, to have met either of the standards in the foregoing clauses (a)(x) or (y), then in either case the CEO shall not be eligible to receive any payments approved by this Order. All parties' rights, if any, to seek disgorgement of payments following the entry of any final order referred to in clause (a) of the foregoing sentence are reserved. The CEO shall not take any action with respect to his compensation under the 2022 KEIP with the intent or material effect of frustrating enforcement of any potential judgment of the Court in these Chapter 11 Cases or any other actions pending against him in any other court or jurisdiction with respect to such amounts.

9. Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, for cause shown, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

10. The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, and no other or further notice of the Motion or the entry of this Order shall be required.

11. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

4

5

12. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

White Plains, New York
Dated: _____, 2022

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE
