Hearing Date: To be Announced
Objection Deadline: To be Announced

**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421
Bruce G. Paulsen
Robert J. Gayda
Catherine V. LoTempio
Paul B. Koepp

*Counsel to Ascent Pharmaceuticals, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**MOTION OF ASCENT PHARMACEUTICALS, INC. FOR LEAVE
TO FILE LATE PROOFS OF CLAIM**

Ascent Pharmaceuticals, Inc. ("Ascent") hereby files this motion (the "Motion") seeking entry of an order substantially in the form of the order attached hereto as **Exhibit A** (the "Proposed Order") granting leave, pursuant to Rules 3003(c)(3) and 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), to file late proofs of claim against Purdue Pharma L.P. ("Purdue")

---

[1] The debtors in these cases (the "Debtors"), along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

and certain corporate affiliates (collectively, the "Purdue Entities"). In support of this Motion, Ascent refers to and incorporates herein the *Declaration of Sudhakar Vidiyala in Support of Motion of Ascent Pharmaceuticals, Inc. for Leave to File Late Proofs of Claim* attached hereto as **Exhibit C** (the "Vidiyala Declaration") and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.　Through this Motion, Ascent, out of an abundance of caution, requests leave to file the proofs of claim attached hereto as **Exhibit B** (the "Proofs of Claim") and have them deemed timely filed. The need to file the Proofs of Claim arose only recently based on Purdue's purported termination of certain contracts. While Ascent has requested that the Debtors stipulate that the Proofs of Claim be considered timely filed, the Debtors denied that request. Accordingly, Ascent filed this Motion.

2.　Ascent seeks to file the Proofs of Claim to preserve the rights and claims it may have under three related and integrated agreements dated March 27, 2019: ████████ ████████████████████████████████████████████████████████████████ ████████ collectively, the "Agreements"). The Agreements were to be assumed under the Debtors' plan of reorganization and would have been go-forward obligations but for the unique trajectory of these bankruptcy cases. Given the previously contemplated treatment of the Agreements, it was not expected that Ascent would have to file a claim. Recently, however, Purdue sought to unilaterally terminate the Agreements through two letters. After the Purdue Entities communicated their position to Ascent, Ascent retained Seward & Kissel LLP to assist in evaluating its rights and remedies under the Agreements as well as how to navigate the unique procedural posture of these bankruptcy cases.

3. Ascent, through counsel, engaged the Debtors in an effort to determine the most streamlined path to resolve the termination dispute. Ascent considered seeking relief from the stay so that it could adjudicate the dispute in the District Court for the District of Delaware (███████████████████████████████████████), but the Debtors would not consent to such relief. Ultimately Ascent decided to seek relief in this Court through an adversary proceeding, which it plans to initiate through the imminent filing of a sealed adversary complaint against the Purdue Entities (the "Complaint"), and to file the instant Motion and Proofs of Claim out of an abundance of caution.

4. To be clear, Ascent does not believe that the filing of a claim is necessary given the unique circumstances of these bankruptcy cases and reserves all of its rights, including the right to assert that Ascent's claims cannot be construed as arising prior to the Petition Date or otherwise being subject to the Bar Date Order (defined below). Ascent, however, seeks to file the Proofs of Claim to ensure it is fully protected from the injury caused by the Debtors' conduct related to the Agreements.

5. The ability to late file a proof of claim is adjudicated under the standard of "excusable neglect," which is clearly satisfied in this case. The delay in filing the Proofs of Claim was not the fault of Ascent, but instead arose when Purdue purported to unilaterally terminate the ███████████████████████████████████████, which was nearly two years after the Bar Date. Since that time, Ascent has acted promptly and in good faith, having sought to deal with these procedural issues consensually with the Debtors. Filing the Proofs of Claim would not prejudice the Debtors. The Debtors' plan contemplated the assumption of the rights and burdens of the Agreements. This is the precise relief that the Complaint seeks, and thus any relief that might be granted comports with the expectations of the Debtors and creditors. It is also possible (if not likely) that the filing

3

of the Proofs of Claim is not necessary. If that is ultimately the case, permitting the filing of the claim has no impact on the Debtors. Notably, the only party that might be prejudiced if Ascent is not allowed to file the Proofs of Claim would be Ascent. In the event that the Court were to award monetary damages based on the Complaint, and the Debtors would argue that such award was barred based on the failure of Ascent to file the Proofs of Claim and pursuant to the terms of the plan, Ascent would be in dire circumstances, with no right to relief to which it is entitled. This would permit the Debtors to use the bankruptcy process as both a sword and a shield—to proactively terminate the ▬▬▬▬▬▬ post-petition, post-bar date, and post-confirmation, and to then argue that the Bar Date Order and the plan bar any claims that Ascent may have.

6.  For the reasons stated herein, Ascent respectfully submits that cause exists for the Court to grant Ascent leave to file the Proofs of Claim and deem them timely filed.

## JURISDICTION AND VENUE

7.  The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

8.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.  The basis for the relief requested herein is Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) and 9006(b)(1).

## BACKGROUND

**I.   The Bankruptcy Cases**

10.  On September 15, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code before this court (the "Chapter 11 Cases").

4

11. The Court established June 30, 2020, as the deadline for each person, entity, governmental unit, and Native American Tribe to file a proof of claim against the Debtors that arose on or prior to the Petition Date [Dkt. No. 800] (the "Bar Date Order"). By order dated June 3, 2020, the deadline was extended to July 30, 2020 [Dkt. No. 1221] (the "Bar Date").

12. On September 2, 2021, the Debtors filed the *Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [Dkt. No. 3726] (the "Plan"), which was confirmed by the Court on September 17, 2021 [Dkt. Nos. 3787, 3786] (the "Confirmation Order").

13. The Confirmation Order was reversed and remanded by the District Court for the Southern District of New York on December 16, 2021 (the "District Court Decision").

14. On January 18, 2022, the Debtors appealed the District Court Decision, which appeal is currently pending before the United States Court of Appeals for the Second Circuit under Case No. 22-110-bk (the "Second Circuit Appeal"). Oral arguments in the Second Circuit Appeal were held on April 29, 2022.

15. On March 3, 2022, while the Second Circuit Appeal was pending, the Debtors filed the *Motion of Debtors Pursuant to 11 U.S.C. § 105(a) and 363(b) for Entry of an Order Authorizing and Approving Settlement Term Sheet* [Dkt. No. 4410], which was approved by the court on March 10, 2022 [Dkt. No. 4503] (the "Settlement"). The Settlement is effective only upon the entry of one or more orders by the Second Circuit or the District Court for the Southern District of New York permitting the consummation of the Plan as enhanced by the terms of the Settlement, which has not occurred as of this filing.

16. Pursuant to Section 8.1 of the Plan, as of and subject to the occurrence of the Plan's effective date (the "Effective Date"), executory contracts to which any Debtor was a party were

deemed assumed by the applicable Debtor and assigned to a newly formed Delaware limited liability company ("NewCo"), subject to certain exceptions not applicable to the Agreements.

## II.    Ascent's Claim

17.    The Purdue Entities and Ascent were parties to two actions (the "Patent Litigation"), filed in 2018 in the United States District Court for the District of Delaware, concerning the validity and enforceability of certain patents held by the Purdue Entities, and whether Ascent infringed on the Purdue Entities' patents by seeking approval from the United States Food and Drug Administration (the "FDA") for its own oxycodone products (the "Ascent Products"). *See* Vidiyala Declaration ¶ 1.

18.    On March 27, 2019, to resolve the Patent Litigation, Ascent and the Purdue Entities entered into three related and integrated agreements: ██████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

████████████████.  *See id.* ¶ 2.

19.    ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

████████████████████████████████████.  *See id.* ¶ 3.

20.    ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

6

██████████████████████████████████████████████████████████████████████

██████. *See id.* ¶ 4.

21.     On January 14, 2022, Purdue asserted that Ascent failed to provide written notice of its ████████████████████████████████ prior to October 1, 2021. Thus, according to Purdue, by its terms, the ████████████████████████ terminated on December 31, 2021.  Ascent responded by letter on January 17, 2022 disputing Purdue's position. *See id.* ¶ 5.

22.     On February 3, 2022, the Purdue Entities reiterated that Ascent breached the ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Purdue then cited the purported ████████████████████████ breach as grounds to terminate the ██████████████████████████████████████. *See id.* ¶ 6.

23.     On February 28, 2022, Ascent provided the Purdue Entities with the █████ ██████████████████████████ following the February 3, 2022 letter. *See id.* ¶ 7.

24.     On April 6, 2022, Purdue allegedly terminated the ████████████████ ████████ by letter based on Ascent's alleged failure to cure the ████████████████ ████████. Purdue also purportedly terminated the ████████████████ based on Ascent's alleged breach of the ██████████████████████ and the alleged failure to cure such breach.  Purdue maintains that the ████████████████ remains in full force and effect. *See id.* ¶ 8.

SK 37894 0001 9550471 v2

25. As more fully explained in the Complaint, Ascent planned to ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ but cannot do so without the rights conveyed to it under the Agreements. *See id.* ¶¶ 9-10.

26. Based on the foregoing, Ascent plans to imminently file the Complaint in this Court, which asserts the following claims, all as more fully set forth therein: (1) declaratory judgment that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ remains in full force and effect, (2) declaratory judgment that the ▓▓▓▓▓▓▓▓▓▓▓▓ remains in full force and effect; (3) breach of contract for wrongful termination of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; and (4) breach of contract for wrongful termination of the ▓▓▓▓▓▓▓▓▓▓▓▓ (the "Claims"). Based on the Claims, Ascent seeks relief and redress, including but not limited to: (A) (i) a declaration that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is in full force and effect; (ii) a declaration that the ▓▓▓▓▓▓▓▓▓▓▓▓ is in full force and effect; (iii) specific performance of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, or in the alternative, monetary damages in an amount to be proven at trial for Purdue's breach of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; and (iv) specific performance of the ▓▓▓▓▓▓▓▓▓▓▓▓, or in the alternative, monetary damages in an amount to be proven at trial for Purdue's breach of the ▓▓▓▓▓▓▓▓▓▓▓▓; plus (B) attorneys' costs and fees (the "Requested Relief").

## RELIEF REQUESTED

27. Given that the Claim arises out of the Debtors' conduct that occurred after the Bar Date, Ascent hereby seeks leave to file its claim pursuant to Rule 9006(b)(1) of the Bankruptcy Rules.

## BASIS FOR RELIEF REQUESTED

28. Bankruptcy Rule 9006(b)(1) provides as follows:

8

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

29. The Supreme Court has made it clear that "excusable neglect" in this context includes not only carelessness by a party, but also intervening circumstances beyond a party's control, as well as a "faultless omission to act." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). This standard is flexible: "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The analysis turns on four factors (the "*Pioneer* Factors"): "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* (citation and footnote omitted). Here, the balance of the *Pioneer* Factors weighs decidedly in favor of granting Ascent leave to file the Proofs of Claim.

**I.     The Delay in Filing the Proofs of Claim Was Outside of Ascent's Control**

30. The Second Circuit has held that the third of the *Pioneer* Factors—the reason for a delay and whether it was in the reasonable control of the movant—is to be given the most weight in determining whether excusable neglect exists. *See Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 n.7 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105 (2004); *see also Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004) (holding that the third factor "predominates[] and the other three are significant only in close cases").

31. This important factor clearly weighs in favor of Ascent, as this was truly a "faultless omission." The Debtors' post-Bar Date conduct is what gave rise to Ascent's prospective claim, and is the sole reason for the necessity of filing. Prior to April 6, 2022, the Agreements were to

9

be assumed under the Plan. Purdue, however, unilaterally terminated the Agreements—more than a year and a half after expiration of the Bar Date and more than six months after entry of the Confirmation Order. Prior to this purported termination, Ascent's "claim" did not exist: Ascent had no basis to believe that the Debtors would allegedly terminate or breach the contracts and give rise to the injury that forms the basis of its claim. It was therefore impossible for Ascent to file a timely proof of claim by the Bar Date or to seek prior leave to file a late proof of claim. Ascent does not bear responsibility for the need to file the Proofs of Claim after the Bar Date or seeking leave to do so now. *See, e.g.*, *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 246 F. Supp. 3d 680, 692 (E.D.N.Y. 2017) ("I cannot think of any scenario more suited to characterization as a 'faultless omission to act,' where equity would dictate leave to file a late proof of claim, than one involving a creditor who lacked sufficient facts to constitute inquiry notice to file a timely proof of claim and only acquired such notice after the pre-petition bar date."); *In re Pettibone Corp.*, 162 B.R. 791, 814 (Bankr. N.D. Ill. 1994) ("[I]ntervening circumstances beyond [the claimant's] control" permitted a late proof of claim where claimant "had no claim capable of timely assertion when the bar date passed."); *Eagle Bus Mfg. v. Rogers*, 62 F.3d 730, 740 (5th Cir. 1995) (finding excusable neglect where "ambiguity existed regarding the need to file" that was partially attributed to the debtors); *In re H.K. Porter Co.*, 156 B.R. 16, 18 (Bankr. W.D. Pa. 1993) ("it is likely that a claimant who files a late proof of claim because his asbestos disease manifested postpetition would be entitled to distribution on the claim since the late filing is clearly excusable"); *In re N.Y. Trap Rock Corp.*, 153 B.R. 642, 647 (Bankr. S.D.N.Y. 1993) ("A strict and inelastic application of the doctrine of excusable neglect in this case would penalize the Board of Supervisors for failing to file a timely CERCLA claim when the existence of the CERCLA claim did not become known until after the bar date had passed.").

**II.    The Debtors Will Not be Prejudiced by Allowing Ascent to File the Proofs of Claim**

32.    "The prejudice factor calls for consideration of the overall negative effect, if any, on a debtor and its estate resulting from allowing a late claim." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.NY. 2010).  While *Pioneer* "gives us little guidance as to what prejudice actually is, . . . the Court must have had more in mind than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims." *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 130 (2d Cir. 2005) (internal quotation marks and citation omitted).

33.    The Debtors face little, if any, harm if the relief sought herein is granted.  First, the narrow controversy that Ascent seeks to resolve through the filing of the Proofs of Claim concerns Purdue's post-Bar Date and post-confirmation conduct related to the Agreements, which were to be assumed under the terms of the Plan.  Thus, the Debtors were already planning to assume the burdens of the Agreements.  The underlying issues relate to ordinary course operating activity of the Debtors, which realistically have no noticeable impact on the Plan or these Chapter 11 Cases.

34.    Given the extraordinary circumstances giving rise to this Motion—where contracts to be assumed were breached by the Debtors post-Bar Date and post-confirmation, but prior to the Effective Date—allowing Ascent to file the Proofs of Claim is also unlikely to open the proverbial floodgates to other late filed claims.  Additionally, as discussed more fully above, if not for the Debtors' post-Bar Date, post-confirmation breach, Ascent would not have needed to file this Motion (which it submits is not necessary under the circumstances).  Thus, equity dictates that the Debtors cannot claim prejudice when their own conduct caused the late filing of the Proofs of Claim.  *See In re Hadden*, 57. B.R. 187, 190 (Bankr. W.D. Wis. 1986) ("[B]ankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts."); *In re Roman Cath. Diocese of Syracuse*, No. 20-30663,

11

2022 Bankr. LEXIS 446, at *10 (Bankr. N.D.N.Y. Feb. 22, 2022) ("As the Supreme Court noted in reviewing excusable neglect under Rule 9006, a Chapter 11 restructuring intends to achieve the twin aims of both reorganization of the debtor while avoiding forfeitures by creditors.").

35. Similarly, allowing Ascent to file the Proofs of Claim will not prejudice creditors in any way, including any creditor's rights or interests under the confirmed Plan. The Agreements were among the agreements to be assumed under the Plan, and thus, like the Debtors, the expectations of creditors will not be disturbed in any way.

36. Conversely, while the foregoing shows that neither the Debtors nor the estates will be prejudiced if Ascent is permitted to file the Proofs of Claim, Ascent would suffer significant prejudice if it is not. Specifically, Ascent could be denied the ability to recover for the injuries it has suffered through the Purdue Entities' post-Bar Date and post-confirmation conduct if the Debtors were to argue that the Plan discharged or enjoined Ascent's claim if leave to file timely claims is not granted. The otherwise absurd result that would allow the Debtors to breach would-be assumed contracts prior to the Effective Date while leaving creditors with no recourse should not be allowed. *Cf. Century Indem. Co. v. NGC Settlement Tr. (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 505 (5th Cir. 2000) ("[The Code] clearly contemplates that a party to an executory contract will receive notice of rejection when it receives a copy of the Disclosure Statement and Plan, giving it a window in which to file a proof of claim for damages." (internal quotation marks and citation omitted)).

### III. The Length of the Delay in Filing the Proofs of Claim is Reasonable, and Ascent has Acted Promptly and in Good Faith

37. Although there is no bright-line test governing the length of delay in filing a proof of claim, "[i]n determining how long is too long, courts generally consider the degree to which, in the context of a particular proceeding, the delay may disrupt the judicial administration of the case.

12

Context is important here." *In re Motors Liquidation Co.*, 619 B.R. 63, 78 (Bankr. S.D.N.Y. 2020). Here, the Proofs of Claim and this Motion were promptly filed after the Debtors conveyed to Ascent their unequivocal intention to terminate the Agreements.

38. Moreover, at all relevant times, Ascent has acted in good faith. Since the Debtors expressed their decision to terminate the relevant Agreements in April, Ascent has engaged with them in good faith to determine the most cost-efficient path forward for all parties. Ascent promptly conferred with the Debtors about their willingness to support a modification of the automatic stay to allow Ascent to commence litigation in Delaware District Court. When the Debtors denied that request, Ascent pivoted to seeking redress through the Complaint. Ascent also requested that the Debtors consent to the relief requested in this Motion so that Ascent would be protected while the adversary proceeding progressed. The Debtors would not agree to deem the Proofs of Claim timely filed, thus necessitating this Motion.

## CONCLUSION

39. Given that the reason for the filing delay was outside of Ascent's control, there is a lack of any interference with the interests of the Debtors' estates or its creditors, and Ascent faces substantial imminent injury, equity weighs decidedly in favor of granting Ascent leave to file the Proofs of Claim.

**WHEREFORE**, Ascent respectfully requests that the Court enter an order substantially in the form of the Proposed Order: (i) authorizing Ascent to file the Proofs of Claim; (ii) deeming the Proofs of Claim timely filed as of the Bar Date; and (iii) granting other relief as the Court deems just and proper.

Dated: June 16, 2022
      New York, New York

**SEWARD & KISSEL LLP**

By: *Bruce G. Paulsen*

13

        Bruce G. Paulsen
        Robert J. Gayda
        Catherine V. LoTempio
        Paul B. Koepp
        One Battery Park Plaza
        New York, NY 10004
        Telephone: (212) 574-1200
        Email:
            paulsen@sewkis.com
            gayda@sewkis.com
            lotempio@sewkis.com
            koepp@sewkis.com

*Counsel to Ascent Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

      I, Robert J. Gayda, hereby certify that on June 16, 2022 a copy of the foregoing Motion was served by the Electronic Case Filing System in the United States Bankruptcy Court for the Southern District of New York and served via electronic mail on the following parties:

**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Marshall S. Huebner, Esq.
Timothy Graulich, Esq.
Eli J. Vonnegut, Esq.
Email: Purdue.noticing@dpw.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Ira S. Dizengoff, Esq.
Arik Preis, Esq.
Mitchell P. Hurley, Esq.
Sara L. Brauner, Esq.
Edan Lisovicz, Esq.
Email: idizengoff@akingump.com
       apreis@akingump.com
       mhurley@akingump.com
       sbrauner@akingump.com
       elisovicz@akingump.com

**COLE SCHOTZ P.C.**
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 651-2006
Justin R. Alberto, Esq.
Email: jalberto@coleschotz.com

**OFFICE OF THE UNITED STATES TRUSTEE**
201 Varick Street, Room 1006
New York, NY 10014
Telephone: (212) 510-0500
Paul Schwartzberg, Esq.
Email: paul.schwartzberg@usdoj.gov

                                                /s/ *Robert J. Gayda*
                                                Robert J. Gayda

SK 37894 0001 9550471 v2