UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> **PURDUE PHARMA L.P.**, *et al.*, <br><br> Debtor.[1] | **Chapter 11** <br><br> **Case No. 19-23649 (RDD)** <br><br> **(Jointly Administered)** |

# TENTH MONITOR REPORT

Comes now, Stephen C. Bullock, as duly contracted Monitor for Purdue Pharma L.P. to report to the Court as follows:

1. This Tenth Monitor Report, and the undersigned's sixth since being appointed on February 18, 2021, is filed as an update to the Ninth Report, filed on May 20, 2022.

2. In the Ninth Report, the Monitor detailed that the Company does not have visibility into downstream customer distribution for a portion of the Company's branded Opioid Products. Specifically, "[d]epending on the product and the month, Pearl determined 35 to 45 percent of the 867 package sales of the Company's branded Opioid Products were 'blinded' between 2018 and June 30, 2021, meaning the Company had no visibility into the product movement beyond the distributor level. Recently, the Company placed that estimate as between 33 and 37 percent." (Ninth Report, Paragraph 175.)

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

3. The lack of visibility into the Company's downstream movement of Branded Opioid Products is because "[f]our large pharmacy chains 'blind' their data, meaning that the manufacturer does not receive any information about the identity or location of the downstream customer that dispensed the Opioid Product to an end user." (Ninth Report, Paragraph 171.)

4. The Ninth Report further explained that "[t]he blinding of the data occurs as a result of the contractual agreement between the distributor and the pharmacy chain." (Ninth Report, Paragraph 172.)

5. Immediately prior to filing the Ninth Report, the Monitor was informed by the Company it discovered that, until 2018, the Company had a contractual agreement with one of the pharmacy chains to receive the blinded data from that pharmacy chain. That contract was not renewed.

6. In the Ninth Report, the Monitor requested "that the Company endeavor to gain visibility into these transactions, including seeking to obtain the pharmacy chains' permission to have their 867 Data unblinded for SOM purposes," and "that the Company report to the Monitor the process undertaken and success of these efforts within 30 days of the filing of this Report. (Ninth Report, Paragraphs 180-181.)

7. The Director of Ethics and Compliance first contacted his SOM counterparts in two of the pharmacy chains on May 12 and May 13, 2022. The Associate Director of Ethics and Compliance first contacted her SOM counterparts in two of the pharmacy chains on May 13 and May 17, 2022. The Director and Associate Director have been engaged with the pharmacy chains in follow-up conversations relating to those requests.

8. The Vice President, Legal Strategy and Public Health Initiatives, has made formal written requests to three of the pharmacy chains, and has also undertaken some follow up.

9. At the Monitor's request, during the week of June 20, the Company's Executive Vice President, General Counsel and Secretary individually contacted each general counsel for three of the four pharmacy chains. He did not reach out to the general counsel for the fourth pharmacy chain because the Company was further along in pursuing access to the 867 data from that pharmacy chain.

10. Through these conversations, the Executive Vice President, General Counsel and Secretary came to believe that one or more of the pharmacy chains do not have a regular practice of granting access to 867 data to manufacturers that would allow visibility into downstream product movement.

11. To date, no agreement has been reached with any of the four pharmacy chains to provide Purdue Pharma blinded 867 data.

12. At the Company's request, and as the Company seeks to gain access to the blinded data, the Monitor is not including the names of the four pharmacy chains in this Report.

13. **The Monitor recommends that the Company, including the Executive Vice President, General Counsel and Secretary, work promptly and in good faith to attempt to reach agreements with the pharmacy chains so that the Company has access to the blinded 867 data for purposes of Suspicious Order Monitoring of downstream customers.**

14. **The Monitor requests that the Company report to the Monitor the actions undertaken and outcome of these further efforts within 30 days of the filing of this Tenth Report.**

\\

The Undersigned Monitor respectfully submits this Tenth Report with the observations and recommendations contained herein.

_____
STEPHEN C. BULLOCK
Monitor