DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.,* | **Case No. 19-23649 (SHL)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DEBTORS' AND THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' JOINT RESPONSE TO
MOTIONS TO FILE PROOFS OF CLAIM AFTER CLAIMS BAR DATE**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors**") and the Official Committee of Unsecured

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Creditors (the "**Creditors' Committee**") submit this joint response to the motions to file proofs of claim after the claims bar date by Seung Han ("**Mr. Han**") [Dkt. No. 4888] (the "**Han Motion**") and Roy Howard Murry ("**Mr. Murry**" and, with Mr. Han, the "**Movants**") [Dkt. No. 4889] (the "**Murry Motion**" and, with the Han Motion, the "**Motions**"), and respectfully state as follows:

1.      The Movants, both incarcerated, request that this Court extend the bar date as to them to allow them to file late proofs of claim.[2]  (Han Mot. at 1; Murry Mot. at 2.)  Mr. Han asserts that "the [p]andemic has made it impossible to meet the bar date," explaining that "[d]ue to COVID 19, [he has] had no access to the law library, [i]nternet [a]ccess, and visits during [his] incarceration since January 2017."  (Han Mot. at 1.)  Similarly, Mr. Murry asserts that he "has been incarcerated since May 30, 2015," and that "isolation from outside information was exacerbated by Covid related lockdowns and law library access denials[, which] beg[an] in March 2020."  (Murry Mot. at 4.)  He also asserts that he "did not learn of the [chapter] 11 proceeding[s] or his status as a possible creditor[] until on or about Oct[ober] 19, 2021," after which he "immediately requested [p]roof of [c]laim[] forms."  (*Id.*)  Mr. Murry further asserts that he was "placed under quarantine lockdowns with no legal material access and very little phone access[] from Dec[ember] 28, 2021 to Jan[uary] 10, 2022 and Jan[uary] 20 until March 04, 2022."  (*Id.* at 5.)

2.      After careful consideration, the Debtors and the Creditors' Committee request that the Court enter the proposed order attached hereto as <u>Exhibit A</u>, holding the Motions in abeyance until the first omnibus hearing held at least 21 days after entry by the Court of a final order

---

[2] Mr. Han filed proofs of claim in May 2022, and Mr. Murry filed proofs of claim in November and December 2021.

approving the Debtors' chapter 11 plan of reorganization, as may be modified.  The Debtors and the Creditors' Committee believe that this approach will allow the Court to make an informed decision on the Motions, based, in part, on the number of similarly-situated late claim movants who have sought to assert late claims (i.e., whether allowing such claims as timely would be akin to "opening the floodgates").

3.    Courts have discretion to allow a late proof of claim upon motion of a late-claimant showing "excusable neglect."  Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'").  The burden of meeting the *Pioneer* test for excusable neglect falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" and that the neglect was "excusable."  *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010).  A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395).  "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases."  *In re DPH Holdings*, 434 B.R. at 83.

4. The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11 (Drain, J.).) Although courts rarely extend the bar date for late-claimants, for the reasons set forth below, the Debtors and the Creditors' Committee believe there is a sufficient basis to defer a decision on the Motions until the universe of such potential late claims can be more finally determined.

5. With respect to the most important factor—factor 3, the reason for the delay—diligence performed by counsel to the Creditors' Committee regarding the individualized assertions made in the Motions confirmed that both Mr. Han and Mr. Murry have been incarcerated in the Washington State Prison system[3] since April 2010 and January 2017, respectively, well before the period during which the Debtors were providing notice of the July 30, 2020 bar date. (*Third Suppl. Decl. of Jeanne C. Finegan* ¶ 4 (Aug. 5, 2021), Dkt. No. 3403 ("**Finegan Decl.**") (noting that the Debtors' noticing efforts began on February 24, 2020, and continued through July 30, 2020).) Although incarceration, in itself, is not sufficient to justify

---

[3] The Debtors and the Creditors' Committee understand that both Movants were incarcerated at either the Washington Corrections Center or the Washington State Penitentiary at various times during their incarceration in Washington.

the filing of a late claim, *see, e.g.*, *In re Motors Liquidation Co.*, 599 B.R. 706, 716 (S.D.N.Y. 2019) (noting that neither mistake of law nor incarceration constitutes "excusable neglect"), both Movants assert that the combination of lockdowns related to the COVID-19 pandemic, limited time out of their cells, and lack of access to information and resources contributed to the delay. (Han Mot. at 1; Murry Mot. at 4-5.)  This Court has previously granted the late claim motions of incarcerated individuals who made similar assertions.  (*See, e.g.*, Dkt. Nos. 4925, 4860, 4714, 4592, 4591, 4590, 4367, 4164, 3772 (Drain, J.).)

6.    Although close, *Pioneer* factors one and two—prejudice to the Debtors and impact on the chapter 11 cases due to the length of delay—also weigh in favor of deferring a decision on the Motions.  The Debtors and the Creditors' Committee are guided by the Court's remarks at the May 2022 omnibus hearing that "we may be reaching th[e] point going forward [where] it may be too late to be filing [] a [late claim] motion even if someone did[] [not] have notice before the bar date back in July of 2020."  (May 18, 2022 Omnibus Hr'g Tr. 41:5 (Drain, J.).)  However, the Debtors and the Creditors' Committee believe that deferring a decision on the Motions until the first omnibus hearing held at least 21 days after entry by the Court of a final order approving the Debtors' chapter 11 plan of reorganization, as may be modified, is reasonable and strikes the right balance between treating all similarly-situated incarcerated movants consistently (*cf*. Modified Bench Ruling on Request for Confirmation of Eleventh Am. Joint Ch. 11 Plan, at 6 (Sept. 17, 2021), Dkt. No. 3786 (holding that "[t]he notice program was in large part effective in reaching prisons . . . [b]ut [noting that] it is possible that because of prison regulations and at times the lack of access to TV, radio and other media, prisoners may not have received the same high level of notice of these cases, the bar date, and the Debtors' request to confirm the plan") (Drain, J.)), and not encouraging additional latecomers.  Moreover, the length

5

of the delay in the filing of the instant Motions—and submission of the related proofs of claim—is not substantially longer than the filing of other late claim motions and claims filed by incarcerated individuals that were recently allowed as timely and, thus, the equities favor treating the Movants consistently. (*See* Order Granting Late Claim Motions (June 27, 2022), Dkt. No. 4925 (Drain, J.)).

7.    Importantly, deferring will allow the Debtors, the Creditors' Committee, and the Court to evaluate whether and to what extent the Court's consideration to allow any additional late claims held by incarcerated individuals as timely has, indeed, "open[d] . . . the 'floodgates' to similar claims" and whether potential claimants were, in fact, "prompted to file late claims in the wake of a ruling in [the movant]'s favor." *In re Enron*, 419 F.3d at 132; *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *see also In re R.C. Diocese of Syracuse, N.Y.*, 638 B.R. 33, 39 (Bankr N.D.N.Y. 2022) (granting late claim motion where "[t]he court, as the gatekeeper, [could] use th[e] [statutory and common law safeguards of Rule 9006(b)(1) and the *Pioneer* factors] to prevent the floodgates from opening and hindering Debtor in its reorganization efforts."). In other words, deferring will allow the Court to utilize its gatekeeping function to ensure that boundless latecomers do not unduly "squeak under the [l]ine" now that it has been over two years since the July 30, 2020 bar date. (*See* May 18, 2022 Omnibus Hr'g Tr. 41:5-10 (Drain, J.).) Deferring consideration of the Motions (and potentially other similar motions filed by incarcerated individuals) also will reduce the costs to the estates by allowing the Debtors and the Creditors Committee to avoid piecemeal consideration of substantially similar motions. *See In Re Motors Liquidation Co.*, 598 B.R. 744, 759 (S.D.N.Y.

2019) (explaining that [t]he mere prospect of litigating additional motions to file post-bar date proofs of claim is enough to prejudice the debtor," and "[t]his fear of rampant late-claims litigation is especially germane in a case like this one where the universe of potential creditors is practically limitless") (citing *In re Keene Corp*., 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995).

8.      Finally, with respect to the last *Pioneer* factor, neither the Debtors nor the Creditors' Committee have any reason to believe that the Movants have not made their late claim requests in good faith.[4]

9.      Accordingly, for the reasons set forth above, the Debtors and the Creditors' Committee request that the Court hold the Motions in abeyance until the first omnibus hearing held at least 21 days after entry by the Court of a final order approving the Debtors' chapter 11 plan of reorganization, as may be modified.  Depending on the number of additional late claim motions filed, and if the Court approves of this process for the Motions, the Debtors reserve their rights to seek the Court's approval of a process whereby future late claim motions filed by similarly-situated movants are held in abeyance and scheduled for resolution at the same time as the Motions.  The Debtors and the Creditors' Committee have consulted with counsel to the Ad Hoc Group of Individual Victims (the "**PI Group**"), and understand that the PI Group does not oppose the relief sought in the proposed order attached hereto as Exhibit A, and as of the time of the filing of this response, no objections to the Motions have been filed.

*[Remainder of page intentionally left blank]*

---

[4] The information provided to the Creditors' Committee by the Washington State Prison system is consistent with the assertions in the Motions regarding the timing of the Movants' incarcerations.

Dated:  August 10, 2022
        New York, New York

By: */s/ Arik Preis*

AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  (212) 872-1000
Arik Preis
Mitchell Hurley
Sara L. Brauner

*Counsel to the Official Committee of
Unsecured Creditors of Purdue Pharma
L.P.,* et al.

By: */s/ James I. McClammy*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors and Debtors in
Possession*