DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OBJECTION TO
MOTION TO RECLASSIFY CLAIM**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**," or "**Purdue**") respectfully

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

represent as follows in opposition to the *Motion to Reclassify Claim* [D.I. No. 4916] (the "**Motion**") filed by a *pro se* personal injury claimant (the "**Movant**"):[2]

1.  In the Motion, the Movant states that she "believes that [her claim] should be reclassified as a Priority Unsecured Claim in order to receive proper restitution due to Purdue Pharma LPs criminal actions, and should not be classified as a General Unsecured Claim." (Mot. at 2.) The Movant submitted her claim "on [her] deceased Father's behalf, due to his severe addiction spanning over ten years to opioid pain medications that included the abuse of Oxycontin." (Mot. at 1.) Although the Debtors remain sympathetic to all of those affected by the opioid crisis, including the Movant and other individual victims and their families, the Debtors must object to the Motion, which should be denied because (i) when properly construed as a late claim motion, it fails to satisfy this Circuit's strict application of Federal Rule of Bankruptcy Procedure 9006(b)(1)'s "excusable neglect" standard; and (ii) it does not meet the more general standard for amending a timely filed proof of claim.

2.  *First*, to the extent that the Movant is seeking—over nineteen months after the July 30, 2020 general bar date in these chapter 11 cases (the "**General Bar Date**")—to amend her proof of claim to assert that her claim is entitled to priority under Section 507(a) of the Bankruptcy Code, her request should be denied because it is untimely. As an initial matter, "[a]mendments to proofs of claim that change the nature of the claim from an unsecured status to a priority status set forth a new claim," and, thus, motions similarly seeking to "reclassify" the priority of claims are treated as motions to file late proofs of claim. *See Waske v. Lehman Bros. Holdings Inc.*, 2021 WL 4523495, at *4 n.8 (S.D.N.Y. Sept. 30, 2021) ("The bankruptcy court

---

[2] Identifying information regarding the Movant and their proof of claim has been anonymized in this Objection, pursuant to paragraph 5 of the Bar Date Order [D.I.. No. 800].

properly analyzed [the motion to reclassify], which sought to dramatically alter the status of the claim, as a request to file a late claim.") (citing *Matter of All. Operating Corp.*, 60 F.3d 1174, 1175 (5th Cir. 1995) ("Amendments to proofs of claim that change the nature of the claim from an unsecured status to a priority status set forth a new claim.")).  Accordingly, the Motion should be construed as one seeking to assert a new proof of claim against the Debtors subject to the General Bar Date, and denied as untimely because the Motion provides no basis for satisfying this Circuit's strict application of the "excusable neglect" standard set forth in Federal Rule of Bankruptcy Procedure 9006(b)(1).

3.     Courts have discretion to allow a late proof of claim only upon motion of a late-claimant showing "excusable neglect."  Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'").  The burden of meeting the *Pioneer* test for excusable neglect, however, falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" ***and*** that the neglect was "excusable."  *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010).  A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the

movant acted in good faith." *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

4. The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11.) Put simply, courts rarely extend the bar date for late-claimants, and based on the information provided in the Motion, the Movant's request for relief does little to meet the hard line drawn by the Second Circuit.

5. With respect to the most important factor—the reason for the delay—the Motion provides no justification for the substantial nineteen-month delay in filing the Motion. To the extent that the Movant attempts to argue that they did not know the basis for reclassification of their claim until a *New York Times* article was published on October 21, 2020 regarding entry of Purdue's plea agreement with the Department of Justice (Mot. at 2), even assuming *arguendo* that is a valid basis for reclassification (and it is not), that does not explain the intervening sixteen month delay in the filing of the Motion, and the Motion provides no reason for that

4

additional delay. The remaining factors also weigh against granting the Motion. While the Debtors have no reason to believe that the Motion was not filed in good faith, the delay here—over nineteen months after the General Bar Date—is substantial. *See, e.g.*, *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) (determining that a fifteen-month delay is substantial). In addition, granting the requested relief would prejudice the Debtors and adversely affect these proceedings. Putting aside the underlying merits, the general unsecured personal injury proof of claim filed by the Movant asserts $150 million in damages, which, although it may represent a small fraction of the over $40 trillion in filed claims,[3] it is "no small amount," especially in light of the comparative value of the Debtors' estates. *In re Enron Corp.*, 419 F.3d at 131-34. Moreover, the Movant's only purported reason for asserting a new priority claim—Purdue's plea agreement—if a valid basis to assert a new claim would apply to virtually all of the Debtors' creditors and, thus, risk opening the floodgates to similar assertions of priority by the over 130,000 other similarly situated personal injury claimants. *In re Enron Corp.*, 419 F.3d at 132-33 (finding that late claim motion was properly denied where the potential claim was "sufficiently large and insufficiently distinguishable from other guaranty-based claims that permitting its late filing would be unduly prejudicial to Enron."); *see also* Pullo Decl. ¶ 8. Finally, the equities do not favor granting the Motion because doing so would upset the bedrock principle of the Bankruptcy Code of treating similarly situated claims similarly. *See* 11 U.S.C.

---

[3] This figure excludes the single proof of claim asserting $100 trillion in damages. *See Final Decl. of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes & Tabulation of Ballots Case on the Fifth Am. Joint Ch. 11 Plan of Reorganization of Purdue Pharma L.P. & its Affiliated Debtors*, ¶ 8 (Aug. 2, 2021), D.I. No. 3372 ("**Pullo Decl.**").

§ 1123(a)(4). Under the Debtors' proposed plan of reorganization (the "**Plan**")[4]—which was negotiated, negotiated, solicited, voted on, and approved with an understanding of potential recoveries based on the number of timely filed personal injury claims—individuals who have filed timely proofs of claim against the Debtors asserting personal injury may seek to recover from the personal injury trust pursuant to trust distribution procedures. (Plan § 4.10(c)(i).) Granting the relief requested in the Motion and permitting the Movant to assert a priority claim unfairly would permit the Movant to jump the line ahead of similarly situated personal injury claimants who filed timely claims. Accordingly, to the extent the Movant is seeking to amend her proof of claim to assert priority status, that request—properly construed as a request to file a new late proof of claim after the General Bar Date—should be denied because the Movant has not satisfied the *Pioneer* factors.

6.    *Second*, even applying the more general standard for amending a proof of claim outside the context of seeking to assert priority status, the request similarly should be denied. Courts will generally allow an amendment to a proof of claim to "relate back to the original filing date if the amendment shares a common nexus of facts with the original proof of claim" as part of an "equitable determination left to the discretion of the bankruptcy court." 4 Collier on Bankr. P. 501.02 (16th Ed. 2022). Equity does not support the Movant's request, and the October 2020 plea agreement does not in any way support the amendment. Nothing in the Movant's original proof of claim provides any indication that her claim should be entitled to priority under any of the categories of priority claims set forth in Section 507(a) of the Bankruptcy Code. Rather, the Movant's claim—like the thousands of other timely filed personal

---

[4] All references to the "Plan" refer to the *Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P and its Affiliated Debtors* [D.I. No. 3726], which is currently on appeal.

injury claims—is based upon personal injury related to the taking of opioid pain medications manufactured by the Debtors, which, to the extent ultimately allowed, would constitute a pre-petition claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtors that arose on or prior to the filing of the chapter 11 petitions on September 15, 2019 (the "**Petition Date**"). The Court found in the order confirming the Plan that the classification of claims pursuant to the Plan was "fair, reasonable, and appropriate" and the Plan classifies such "alleged opioid-related personal injury or other similar opioid-related Cause of Action . . . that arose prior to the Petition Date" as impaired prepetition unsecured claims. (*Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3787] (the "**Confirmation Order**")[5] ¶ 5; *see also* Plan §§ 1.1 (definition of "Non-NAS PI Claim"); 3.2). While the Confirmation Order was vacated and is currently on appeal on other grounds, it was not challenged with respect to the classification of personal injury claims. To the extent that the Movant argues that her proof of claim (or any other personal injury claim filed in these chapter 11 cases) should be elevated to priority status as a result of the October 20, 2020 plea agreement with the Department of Justice, the request should be denied. Entry into the plea agreement was approved by this Court well before claims such as the Movant's were found to be appropriately classified as non-priority claims, and the Movant has offered no reason why the plea agreement changes the appropriateness of that classification. (*See Order Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements Between the Debtors and the United*

---

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the Confirmation Order.

7

*States* [D.I. 2004].)[6] Moreover, as discussed above, the Bankruptcy Code requires that each personal injury claim in the class of personal injury claims—of which the Movant is a part—receive the same treatment. *See* 11 U.S.C. § 1123(a)(4). And, upon effectiveness of the Plan that treatment would be the right to seek recovery from the PI Trust Non-NAS Fund established pursuant thereto. (Plan § 4.10(c)(i).) Accordingly, the Debtors respectfully submit that the equities weigh entirely in favor of denying the Motion.

For the reasons set forth above, the Debtors respectfully request that the Court deny the Motion without prejudice to any rights the Movant has under the Plan with respect to her current claim.

Dated: August 10, 2022
      New York, New York

                                              /s/ *James I. McClammy*
                                              DAVIS POLK & WARDWELL LLP
                                              450 Lexington Avenue
                                              New York, New York 10017
                                              Telephone: (212) 450-4000
                                              Facsimile: (212) 701-5800
                                              Marshall S. Huebner
                                              Benjamin S. Kaminetzky
                                              James I. McClammy
                                              Eli J. Vonnegut

                                              *Counsel to the Debtors*
                                              *and Debtors in Possession*

---

[6] If accepted by the New Jersey District Court following a sentencing hearing, the plea agreement will fully resolve the United States' civil and criminal investigations into the Debtors' past practices related to the production, sale, marketing and distribution of opioid products. *Id.* ¶ 5.