Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-shl

4    Adv. Case No. 19-08289-shl

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    PURDUE PHARMA L.P.,

9

10              Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   PURDUE PHARMA L.P., ET AL,

13                  Plaintiff,

14          v.

15   COMMONWEALTH OF MASSACHUSETTS, ET AL.,

16                  Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18                  United States Bankruptcy Court

19                  300 Quarropas Street

20                  White Plains, NY 10601

21

22                  August 17, 2022

23                  11:12 A.M.

24

25

1    B E F O R E :

2    HON SEAN H. LANE

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO:    UNKNOWN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HEARING re Doc. #4888 Motion To File Proof Of Claim After

2    Claims Bar Date Filed By Seung Han

3

4    HEARING re Doc. #4889 Motion To File Proof Of Claim After

5    Claims Bar Date Filed By Roy Howard Murry

6

7    HEARING re Doc. #4916 Motion To Reclassify Claim Filed By

8    Personal Injury Claimant

9

10   HEARING re 19-08289-shl Doc. #365 Motion To Terminate

11   Temporary Injunction Filed By Fredrick Hill Re: The Purdue

12   Frederick Co.

13

14   HEARING re Doc. #369 Motion To Terminate Temporary

15   Injunction Filed By Fredrick Hill Re: The Purdue Frederick

16   Company

17

18   HEARING re Doc. #370 Motion To Terminate Temporary

19   Injunction Filed By Fredrick Hill Re: Purdue Frederick

20   Company

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

```
1    A P P E A R A N C E S :

2

3    DAVIS POLK WARDWELL, LLP

4         Attorneys for the Debtors

5         450 Lexington Avenue

6         New York, NY 10017

7

8    BY:  JIM MCCLAMMY

9         MARSHALL HUEBNER

10

11   KRAMER LEVIN NAFTAILS FRANKEL, LLP

12        Attorneys for the Ad Hoc Committee

13        1177 Avenue of the Americas

14        New York, NY 10036

15

16   BY:  KENNETH H. ECKSTEIN

17

18   AKIN GUMP STRAUSS HAUER FELD, LLP

19        Attorneys for the Official Committee of Unsecured

20        Creditors

21        One Bryant Park, 44th Floor

22        New York, NY 10036

23

24   BY:  ARIK PREIS

25
```

Page 5

```
1    PULLMAN COMLEY

2        Attorneys for the State of Connecticut

3        850 Main Street

4        Bridgeport, CT 06604

5

6    BY:  IRVE GOLDMAN

7

8    WHITE CASE, LLP

9        Attorneys for the Ad Hoc Group of Individual Victims of

10       Purdue Pharma

11       1221 Avenue of the Americas

12       New York, NY 10020

13

14   BY:  CHRISTOPHER SHORE

15

16   UNITED STATES ATTORNEY'S OFFICE, SDNY

17       Attorneys for the United States

18       86 Chambers Street, 3rd Floor

19       New York, NY 10007

20

21   BY:  PETER ARONOFF

22

23

24

25
```

1    KLEINBERG KAPLAN WOLFF COHEN, PC

2        Attorneys for the State of Washington

3        500 Fifth Avenue

4        New York, NY 10017

5

6    BY:  MATTHEW GOLD

7

8    MILBANK

9        Attorneys for the Raymond Sackler Family

10       55 Hudson Yards

11       New York, NY 10016

12

13    BY:  GERARD UZZI

14

15    CAPLIN DRYSDALE, CHARTERED

16        Attorneys for MSGE Group

17        One Thomas Circle NW, Suite 1100

18        Washington, D.C. 20005

19

20    BY:  JEFFREY LIESEMER

21

22

23

24

25

Page 7

```
 1    DEBEVOISE PLIMPTON, LLP

 2          Attorneys for Beacon Company

 3          919 Third Avenue

 4          New York, NY 10022

 5

 6    BY:  JASMINE BALL

 7

 8    LAW OFFICES OF JANET L. OSTERLOH

 9          Attorneys for the Creditor

10          1727 Pheasant Avenue

11          Twin Lakes, WI 53181

12

13    BY:  JANET L. OSTERLOH

14

15    MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, PC

16          Attorneys for Purdue Pharma Technologies, Inc.

17          One Financial Center

18          Boston, MA 02111

19

20    BY:  JOHN C. DOUGHERTY

21

22

23

24

25
```

```
 1     SEWARD KISSEL, LLP

 2          Attorneys for Ascent Pharmaceuticals, Inc.

 3          1 Battery Park Plaza

 4          New York, NY 10004

 5

 6     BY:  ANDREW MATOTT

 7

 8     ALSO PRESENT:

 9     FREDERICK HILL

10     ELIZABETH SCHLECKER

11     PAUL KENAN SCHWARTZBERG

12     ALLEN J. UNDERWOOD

13     ROXANA ALEALI

14     MICHAEL ATKINSON

15     BROOKS BARKER

16     DAVID E. BLABEY

17     SARA BRAUNER

18     DYLAN CONSLA

19     KEVIN M. DAVIS

20     STEPHANIE EBERHARDT

21     LAWRENCE FOGELMAN

22     JORDAN GAGLIONE

23     CAROLINE GANGE

24     ROBERT GAYDA

25     MAGALI GIDDENS
```

```
 1    SEUNG HAN

 2    MITCHELL HURLEY

 3    GREGORY JOSEPH

 4    BENJAMIN S. KAMINETZKY

 5    MARK KESSELMAN

 6    DARREN S. KLEIN

 7    JACQUELYN KNUDSON

 8    EDAN LISOVICZ

 9    KEVIN M. MACLAY

10    SHANNON M. MCNULTY

11    MICHELE MEISES

12    STEPHEN MILLER

13    MAURA KATHLEEN MONAGHAN

14    ROY H. MURRAY

15    RACHEL R. OBALDO

16    KATHERINE PORTER

17    RACHAEL RINGER

18    CHRISTOPHER ROBERTSON

19    JEFFREY J. ROSEN

20    JAMES SALWEN

21    PAUL KENAN SCHWARTZBERG

22    MARC F. SKAPOF

23    JOSEPH SORKIN

24    MARC JOSEPH TOBAK

25    ESTHER TOWNES
```

1    ELI VONNEGUT

2    JORDAN WEBER

3    DANIEL CONNOLLY

4    ALEXANDER LEES

5    MARA LEVENTHAL

6    ERIC STODOLA

7    THEODORE WELLS, JR.

8    BRIANNA B. BILTER

9    LYNN CROWFOOT

10    KATHERINE GALLE

11    TAYLOR HARRISON

12    KAREN LEUNG

13    GABRIELLE BECKER

14    WILL CHANDLER

15    UDAY GORREPATI

16    ROCHELLE GUITON

17    VINCE SULLIVAN

18

19

20

21

22

23

24

25

```
 1                 P R O C E E D I N G S

 2              THE COURT:  … on the agenda which is set forth in

 3      a written agenda that was filed on the docket, on Docket

 4      Number 5020.  And we'll start today's hearing by getting

 5      appearances, which is the way we normally proceed.  So let

 6      me find out who's here on behalf of the Debtors.

 7              MR. HUEBNER:  Sure.  Good morning, Your Honor.

 8      The hearing is going to be handled by Jim McClammy and Ben

 9      Kaminetzky.  There are different matters on.  This is

10      Marshall Huebner.  And I think that is it for the Debtors

11      and good morning.

12              THE COURT:  All right, thank you very much.  And

13      on behalf of the Committee?

14              MR. PREIS:  Good morning, Your Honor.  Arik Preis

15      from Akin Gump on behalf of the Official Committee of

16      Unsecured Creditors.

17              THE COURT:  All right, good morning.  And on

18      behalf of the United States Trustee's Office?  All right.

19      On behalf of the State of Connecticut?  All right.  On

20      behalf of --

21              MR. GOLDMAN:  Your Honor, excuse me, Your Honor,

22      for the delay, Irve Goldman, Pullman Comley, representing

23      the State of Connecticut.

24              THE COURT:  All right, Good morning.  The

25      technology we use always presents challenges.  So no worries
```

1     about the delay.  And on behalf of the Ad Hoc Group of

2     Individual Victims?

3              MR. SHORE:  Good morning, Your Honor, Chris Shore

4     from White and Case.

5              THE COURT:  Good morning.  And on behalf of

6     various Canadian creditors?  All right.  On behalf of the

7     state of -- well, let me -- on behalf of the Ad Hoc

8     Committee from Kramer Levin.

9              MR. ECKSTEIN:  Your Honor, good morning.  It's

10    Kenneth Eckstein of Kramer Levin on behalf of the Ad Hoc

11    Committee of other states and other municipal entities.

12             THE COURT:  All right.  And on behalf of the

13    United States?

14             MR. ARONOFF:  Yes, Your Honor.  It's Peter Aronoff

15    from the US Attorney's Office, SDNY.

16             THE COURT:  All right, good morning.  On behalf of

17    the State of Washington?

18             MR. GOLD:  Thank you, Your Honor, good morning.

19    Matthew Gold from Kleinberg Kaplan Wolffe and Cohen.

20             THE COURT:  All right.  On behalf of the Raymond

21    Sackler Family.

22             MR. UZZI:  Good morning, Your Honor, Gerard Uzzi

23    of Milbank on behalf of Raymond Sackler family.

24             THE COURT:  All right.  On behalf of MSGE Group?

25             MR. LIESEMER:  Good morning, Your Honor.  This is

Page 13

1    Jeffrey Liesemer on behalf of the MSGE Group.

2              THE COURT:  All right.  I wasn't sure if there was

3    anyone here on behalf of Ascent Pharmaceuticals.  As I

4    signed a stipulation yesterday, I think that adjourned those

5    matters out but just an abundance of caution, anyone here

6    from Ascent Pharmaceuticals?  All right, on behalf of the Ad

7    Hoc Group of Hospitals?  All right, on behalf of the State

8    of Texas?  All right.

9              I know we have a few motions that are on today and

10   I want to make sure to get those appearances.  So there was

11   a motion filed by Roy Howard.  Let me make sure that Mr.

12   Howard is here.  All right.  On behalf -- there was a motion

13   filed by Mr. Han, Seung Han, S E U N G.  I may be

14   mispronouncing that.  Is Mr. Han here?

15             MR. HAN:  Yes, Your Honor, I'm here.

16             THE COURT:  All right.  Good to have you.  Good

17   morning.

18             MR. MCCLAMMY:  Jim McClammy from Davis Polk.  I

19   just want to let you know that I believe Mr. Roy Howard is

20   Roy Howard Murray and I believe he's also on.

21             THE COURT:  Oh, I'm sorry, Mr. Murray, I read part

22   of a line but not the information on the next part of the

23   text.  So let me get your appearance, Mr. Murray.  Make sure

24   you can hear me and I can hear you.

25             MR. MURRAY:  Yes, I can hear you.  Mr. McClammy is

Page 14

1    correct.  Sir name is Murray.  All right.  Good to have you

2    here.  And let me find out what other appearances that we

3    need  that we have not yet received.

4              MS. BALL:  Good morning.  Good morning, Your

5    Honor, you probably don't need this but as just to complete

6    the family, the Mortimer side of the Sackler persons.

7    Jasmine Ball, of Debevoise Plimpton LLP.

8              THE COURT:  All right, Ms. Ball, you're coming in

9    very, very low volume-wise.

10             MS. BALL:  Apologies, Your Honor.  For the

11   Mortimer Sackler, initial covered Sackler persons, but we

12   don't expect to speak.

13             THE COURT:  All right, thank you.  Any other party

14   that wishes to make an appearance at this time?

15             MS. OSTERLOH:  Hello, Your Honor.  This is Janet

16   Osterloh, Movant JO.

17             THE COURT:  All right, good morning.  Any other

18   party?

19             MR. HILL:  Frederick Hill.

20             THE COURT:  All right.  Good morning.  Any other

21   party?

22             MR. DOUGHERTY:  Good morning, Your Honor.  It's

23   John Dougherty from Mintz Levin on behalf of the Purdue

24   Frederick Company, Inc. in the event that were needed for

25   Mr. Hill's motion.

Page 15

1           THE COURT:  All right, good morning.  Anyone else?

2           MR. MATOTT:  Good morning, Judge.  Andrew Matott

3    from Seward Kissel on behalf of Ascent Pharmaceuticals.  I

4    didn't quite get off of mute in time earlier.

5           THE COURT:  All right.  That's fine.  I believe

6    those matters have been adjourned, but I wanted to make sure

7    that we got your appearance if you were here.  All right,

8    anyone else? All right.  With that, Mr. McClammy, I'll turn

9    it over to you as to the agenda.  I do know that in

10   addressing matters today, I think the intent was to have Mr.

11   Murray's matters addressed fairly at the top of the agenda

12   in terms of scheduling.  And you can walk us through the

13   agenda.

14          MR. MCCLAMMY:  Yes, Your Honor.  Thank you very

15   much.  The first two items on the, on the agenda are the

16   late claim motions filed by Mr. Han and Mr. Murray.  The

17   Debtors filed a joint response to both of those motions

18   together with the Creditors Committee.  And essentially

19   where we are with respect to these motions, in light of some

20   of the admonitions from Judge Drain, as we've been reviewing

21   and addressing the late claim motions that have been coming

22   in, is proposing a scenario in which we would adjourn or

23   essentially hold in abeyance these motions until after

24   confirmation of a plan of reorganization, at which point in

25   time we would be able to see whether or not there's been an

Page 16

1    influx of additional claims or whether the, you know, the

2    number of claims that come in remain fairly manageable;

3    we're not opening the floodgates.  We are now essentially

4    two years out from the, from the July, you know, bar date.

5    And our thought was that this would be the most reasonable

6    way to manage the cost of the estate, as well as, you know,

7    allow the opportunity for these claims to, these late claims

8    to be addressed, taking into full consideration what the

9    universe might look like after we've had the chance to see

10   what comes in by the time a plan is confirmed here.

11          I'm happy to walk the Court through the Pioneer

12   Factors and our, and our response if the Court would, if the

13   court would like first.  Otherwise, I did see that, and as

14   the Court is aware, that Mr. Murray and Mr. Han are both on

15   the line.  Happy to hear from them first or answer any

16   questions the Court may have.

17          THE COURT:  All right.  I don't need you to walk

18   through the legal factors at this point, although perhaps

19   we'll get there.  And so I just wanted to convey to Mr.

20   Murray and Mr. Han to the extent that it wasn't already

21   clear from the papers that you filed, the Debtors' filed,

22   the Committee filed, and the statement you just made, I

23   think what the response is, right -- so you filed the

24   motion, Mr. Han and Mr. Murray, seeking certain kinds of

25   relief in the law.  Then people get a chance to file their

Page 17

1    response.  The Debtors and the Committee here did that.  And

2    rather than oppose it, what they said was now is not the

3    time to figure this out, Judge.  And the idea is that the

4    case is still proceeding.  As I think folks know, there's an

5    appeal in the Second Circuit about what should happen with

6    confirmation.  And that there's another factor which is also

7    that there are late claims that are coming in over time, and

8    that it makes sense to wait to see when we get to towards

9    the end of the case to figure out how many late claims we

10   have and, therefore, that factors into how they should be

11   treated and whether they should be granted or not.

12          And so the idea is, I think, that the Debtors and

13   the Committee said right now is not the right time to do

14   this.  So I wanted to make that point as clear as I could

15   just so you understand where we are, what they've suggested

16   that we do.  And I've read your papers, Mr. Han and Mr.

17   Murray.  I've read the papers submitted by the Debtors and

18   the Committee.  And so that's the, that's the suggestion

19   that they've made.  And I can explain in a minute why I

20   think that's a good suggestion and appropriate under the

21   facts that we have here, the circumstances we have here both

22   as a matter of the facts of this case and the applicable

23   law.  But I at least wanted to give you a brief chance to

24   speak if there's something, a question you had about this or

25   something you wanted to clarify, or if you wanted to let me

Page 18

1    know that you oppose this approach that's been suggested by

2    the Debtors and the Committee.  So let me hear first from

3    Mr. Murray and then I'll hear from Mr. Han in a minute.  Mr.

4    Murray.

5              MR. MURRAY:  Yes, Your Honor, thank you.  So I

6    only saw this motion last night.  I understand it, I think.

7    It seems the third Pioneer Factor is the main source of

8    contention.  My issue is that my claims were filed prior to

9    others that have already been granted late acceptance.  For

10   example, Docket Number 4886, that was filed on June 8th.  My

11   motion was docketed June 6th.  And the June 8th Docket, the

12   attachment, which is the Attachment A 4886-1 indicated that

13   the Debtors and the Committee had no problem with proposing

14   an order to grant the motions.  And this is, like I said,

15   it's two days after my motion was filed.  The only reason I

16   waited was the Rule 9018 motion that I filed to secure my

17   legal mail because it was being opened.  That was approved

18   May 18th, the same day that Judge Drain issued this

19   admonition that we "maybe reaching the point going forward

20   where it may be too late to file."

21             So six months prior to that, my initial

22   placeholder claim was filed.  Then I was denied legal access

23   due to COVID lockdowns for essentially, well over two

24   months, several months following.  Once I got access again,

25   I did the research on bankruptcy court law, filed the 9018

1    motion.  And only waited to file the motion for bar date

2    relief until after that was resolved by the Court.  That was

3    filed -- I received the order on the 9018 about May 24th or

4    25th.  And then this motion was mailed the 30th, 31st and

5    then docketed on June 6th.  So I just, I'm not clear what

6    changed other than hitting the two-year line, which I was in

7    before between June 6th, June 8th and the docketing of this

8    -- or the scheduling of this hearing, which I believe was

9    July 8th.

10          So I would, I would just ask for equitable relief

11   to other parties that filed after me and filed their motions

12   about the same time so that I don't have to just wonder

13   whether my claim is going to be accepted and I can proceed

14   in filing it.

15          THE COURT:  All right, thank you very much for

16   that helpful background.  I appreciate it.  And let me hear

17   from Mr. Han.  Oh, Mr. Han, you may be on mute.

18          MR. HAN:  Okay, so I've been locked up

19   incarcerated for six years and I just got released on May

20   25th.  So during the lockdown --

21          THE COURT:  Congratulations.

22          MR. HAN:  Thank you.  I wasn't able to have access

23   to any legal libraries or anything because I was in close

24   custody and in close custody, we're pretty much on 21-hour

25   lockdowns a day.  And due to the COVID, that made it even

Page 20

1      harder for me to have access to go to the legal library.  So

2      it was nearly impossible for me to file these claims when I

3      didn't have access to anything.  And as soon as I was able

4      to file the claims, I did it as soon as I could.  And pretty

5      much when I got released, that's when the file came and

6      that's how this court date was set up.

7                  THE COURT:  All right.  Thank you very much for

8      that information, Mr. Han.  And let me just briefly turn it

9      over to Mr. McClammy if he has any responses or any

10     information he wants to provide about the Debtors' thinking

11     on late claims.

12                 MR. MCCLAMMY:  Thank you, Your Honor.  You know,

13     as with all of these things, we do try to undertake as

14     careful a balancing of the various competing concerns as we

15     possibly can with the information that we are provided at

16     the time.  Some of the information we have now is new to, is

17     new to us and it's the type of thing that can factor into

18     the considerations that we proposed with respect to hearing

19     these after the plan is confirmed.  I think we do -- and I

20     understand Mr. Murray's point and we did point to the fact

21     that other similar motions have been, you know, granted in

22     the past.  And perhaps, if we're not adjourning until after

23     the confirmation, perhaps adjourning for, you know, one

24     additional hearing where we can take into consideration the

25     points raised by Mr. Murray today so that we can make sure

Page 21

1    that we're not setting any undue precedent for the filing of

2    claims.  And Mr. Murray is in one situation where he did

3    file some claims in 2021.  Mr. Han, slightly different in

4    that his claims are filed in 2022.

5            So with each of these, we need to kind of go and

6    get the factual information, the fact that we're hampered

7    substantially in getting that information for folks that are

8    incarcerated, so balancing the time and effort that might be

9    needed, not knowing whether or not this will continue to

10   draw in additional claims in perhaps a number that might be

11   unworkable from a plan perspective, and given the, you know,

12   the Pioneer Factors and how far we are out now from the bar

13   date, I think still counsels in favor of holding these

14   claims in the abeyance.  And we are more than willing to,

15   you know, undertake the effort at the right time to figure

16   out whether or not some of these claims should be, should be

17   allowed.  And I understand, you know, the desire to have

18   some certainty with respect to whether or not we will be

19   moving forward, but based on our discussions with the

20   Unsecured Creditors Committee and others, we believe that

21   this is the right path.

22            THE COURT:  All right.  And let me ask if the

23   Official Committee of Unsecured Creditors has anything they

24   wanted to add?

25            MR. PREIS:  Good morning, Your Honor.  Arik Preis

Page 22

1      from Akin Gump Strauss Hauer Feld, on behalf of the Official

2      Committee.  No, I think we agree with the Debtors.  I think

3      Mr. McClammy started his response by saying in light of some

4      of this information that may I have a bearing on how we deal

5      with these claims after they are held in abeyance, but

6      overall, we think the path right now makes sense.

7                THE COURT:  All right.  All right.  So here's what

8      I, what I can tell you.  So in response to the request that

9      Mr. Murray and Mr. Han have made, the Debtors and the

10     Committee have made the request that the Court enter a

11     proposed order that holds these two motions in abeyance,

12     which is a fancy legal word for just doesn't decide them now

13     and decides them later until a particular date.  The date is

14     not very clear, unless you're a lawyer, and even then, it's

15     not entirely clear.  But the idea is that it's a future date

16     that's at least 21 days after we have an idea of what goes

17     on with the plan of reorganization.  Right?

18               So the plan of reorganization is on appeal right

19     now.  Everybody's waiting for a decision on that.  And that

20     really controls the fate of the case in terms of what

21     happens with the claims.  And so the, so the explanation is

22     the Debtors and the Creditors Committee believe that this

23     approach will allow the Court to make an informed decision

24     on the motions, not only these motions, but frankly, any

25     other motions that seek to file late claims.  Right?  So

Page 23

1    obviously these claims are very important to you, Mr. Murray

2    and Mr. Han, and they should be, and they're important.

3    That's what the bankruptcy is about, trying to figure out a

4    fair and equitable way to deal with claims of creditors in a

5    bankruptcy case.  But, like all cases, you're not the only

6    creditors.  There are other creditors.  And in a case like

7    this, there's a huge number of creditors and we, as you may

8    or may not know in other hearings, there have been other

9    requests for late filed claims, as Mr. Murray, you

10   mentioned, and there may be some in the future.  And so the

11   idea, I think, is to try to deal with them in a way that

12   well, it may at a certain point become more obvious that a

13   claim like yours, Mr. Murray, has factors that make it more

14   appropriate to grant, as opposed to less appropriate, that

15   as you filed something earlier than say somebody else,

16   you're in a similar bucket as to other folks who filed

17   claims at the same time.

18           There are a lot of different factors for a court

19   to consider in in trying to sort through any large number of

20   claims.  So I think the idea and the suggestion is that to

21   hold off so that we can see the universe of claims that we

22   have to deal with at the appropriate time.  And this will

23   allow the Debtors, the Creditors Committee, and frankly,

24   also me, the judge, to make the most informed decision that

25   I can about whether to grant a late filed claim and to what

Page 24

1    extent and what are the principles and reasons for doing so,

2    for granting them or denying them.  And that will also

3    prevent what's often referred to in bankruptcy cases as the

4    floodgates argument, which is that you have -- the basis

5    which you grant a late filed claim may apply to a huge

6    number of other people and then other claims are filed and

7    you really don't have a great process for figuring out how

8    to deal with that avalanche of claims that are filed after

9    the bar date.

10           So I think this approach is appropriate for a

11    couple of reasons.  One is courts have discretion to whether

12    to allow late filed proof of claim.  As has been mentioned,

13    this is equitable inquiry for a court, meaning we look at

14    fairness, fundamental fairness and we look at different

15    factors, Pioneer Factors named every case named Pioneer,

16    which is a Supreme Court case.  The most important, which is

17    the reason for the delay, which both you, Mr. Murray and Mr.

18    Han, have talked about, and so I think the approach here is

19    one that makes a lot of sense for this case.  It does mean

20    that Mr. Murray and Mr. Han, you'll have to wait to

21    ultimately get a conclusion on this and for that, I'm sorry,

22    but it's the most appropriate thing to do in terms of trying

23    to get the case right and deal with all claims as fairly and

24    equitably as I can.

25           And I note that this approach is consistent with

Page 25

1    the approach that Judge Drain, who is the judge who

2    previously in this case has taken in prior circumstances.

3    There was a hearing in April 27th, 2022.  It's on the

4    docket, the transcript at Docket 4845 and on Page 34 through

5    41 of that docket, on that transcript, he talks about

6    holding off on a particular proof of claim based on the fact

7    that there are other late claims that are going to be

8    addressed -- for example, the ones we have here today -- and

9    to try to come up with something that is most efficient and

10   most fair for all involved.

11           So I think that the suggestion that's been made

12   here is entirely consistent with Judge Drain's approach.

13   It's a fair one.  And if you look at that transcript, there

14   was somebody there who was a veteran and who was had

15   different factors than Mr. Murray, you have, and Mr. Han,

16   you have, but again, there are a lot of claims to consider

17   in a case like this.  We're trying to come up with something

18   that's consistent.  If it's not consistent, then frankly

19   it's not fair.  Right?

20           So it makes sense to see the claims that we will

21   have to deal with at one time as we get towards the

22   confirmation of any Chapter 11 plan of reorganization and

23   the effective date.

24           And so for all those reasons, I'm going to hold

25   off ruling on these motions.  We're going to enter an order

Page 26

1    that says that these motions are going to be held in

2    abeyance.  Again, just a fancy way of saying that they're

3    going to be delayed until such time as we deal with all late

4    filed claims together.  And you will get notice of that

5    hearing.  There will be a list that the Debtors and the

6    Committee are going to keep of anybody who falls into these

7    circumstances.  And you're, frankly, not the first claims to

8    sort of be subject to this process.  As the April 27th

9    transcript makes clear, there's another claim, other claims

10   out there that are going to be treated the same way and

11   we'll make sure to get notice to you.  And if for some

12   reason your situation changes where you currently are

13   located, please let the Debtors and/or the Committee know so

14   we can make sure that we get you and send you the

15   information that you need to take a look at when it comes

16   time to address this issue.

17            And so that's my ruling for all the reasons that

18   we've discussed.  The one thing I would ask is there is a

19   proposed order that was submitted by the Debtors and the

20   Committee, and I would just -- how can I put this?  To put

21   it bluntly, I would try to make it as plain language as

22   possible.  These orders in bankruptcy cases are often very

23   technical for lots of good reasons.  And so I would do the

24   best you can to try to make it as clear as possible for

25   anybody who's looking at it, what it means and why it is.

Page 27

1   So, there might be, for example, before we get to this

2   awarded paragraphs, just an explanation of what of, of what

3   the reason is for holding off on this.  I mention that just

4   because I suspect an order like this may be looked at by

5   other folks who are in a similar circumstance, or might have

6   to address this kind of issue in the future.  And so we're

7   trying to get the word out.  But I frankly, I think you can

8   you can pull language that you put in your motion response

9   and stick it in the order.  So, so that would be helpful.

10          And so that's the Court's ruling on these two

11  proposed motions and we're going to hold off on them.  And I

12  appreciate Mr. Murray and Mr. Han, you being on Zoom here to

13  discuss your motions and you'll be hearing from the Court as

14  soon as, and the Debtors and the Committee as soon as we are

15  ready to address these issues.  And I thank you very much

16  for your patience.

17          MR. HAN:  One question, Your Honor.  So where am I

18  able to put the change of address so that I can get the new

19  information that's coming to me?

20          THE COURT:  Sure.  Let me let Mr. McClammy address

21  that so he gets it precisely right.  Mr. McClammy, if you

22  would address that.

23          MR. MCCLAMMY:  Sure, do you have access to the

24  website for the bankruptcy?

25          MR. HAN:  Yes.  The Purdue Pharma website?

1           MR. MCCLAMMY:  Purdue Pharma and then the claims

2    website.  There will be information there.  But in addition,

3    you can find on the Davis Polk website my email, if you look

4    by my last name.

5           MR. HAN:  Yes.

6           MR. MCCLAMMY:  If you send me an email, I can make

7    sure that you get directed to the right place.

8           MR. HAN:  Okay.  All right, thank you.

9           THE COURT:  All right, excellent question.

10   Anything else from Mr. Murray or Mr. Han, any other

11   questions you have?  All right, Mr. Murray.

12          MR. MURRAY:  Your Honor, would you be opposed to

13   me just filing a written reply to this so that it's there

14   waiting for the hearing, whatever happens.

15          THE COURT:  Well, you can do that.  Obviously

16   you're free to file or whatever you'd like.  The one thing I

17   would say is that you will get notice of whatever hearing we

18   have on this issue.  And at that point, there may be some

19   guidance or there may be some further developments in terms

20   of how late filed claims are going to be sort of evaluated

21   and looked at.  But obviously, you have some information

22   that you provided here today and if you want to submit that

23   in a reply, you can file it the way you filed your motion

24   today and that's fine.  And then get on the docket and we'll

25   keep track of that for any future hearing on these issues.

1           MR. MURRAY:  I still think it might be prudent to

2    wait from you're saying.  So I'll just hold off until I get

3    notice of the hearing.

4           THE COURT:  I'll leave it, I'll leave it to you,

5    Mr. Murray.  Either way is fine.  Again, I know sometimes

6    people say I'm ready to do this now.  I'm going to do it

7    now.  I want to do it now and that's perfectly fine and if

8    you want to wait, you can do that.  Either way it's fine.

9    As long as it gets on the docket, we will keep track of it

10   for future hearing.

11          MR. MURRAY:  Okay, thank you, Your Honor.

12          THE COURT:  All right, thank you.  All right,

13   thank you very much.  With that, the Court is going to move

14   on to the next motion.  And again, thank you to Mr. Murray

15   and Mr. Han for being here.  And so, Mr. McClammy.

16          MR. MCCLAMMY:  Thank you, Your Honor.  The next

17   motion on the agenda is the motion to reclassify which was

18   filed in redacted form by the movement with a request to

19   protect their identity.  The movant also filed a reply,

20   which is docketed at Number 5018.  And I believe movant, JO,

21   is present in the virtual courtroom today if Your Honor

22   would like to hear from them first.

23          THE COURT:  All right.  Yeah.  Let me find out who

24   is who is here on behalf of this, of this, to prosecute this

25   motion.  And I have read all the papers and I understand the

Page 30

1     request is one to reclassify the claim.  And as I think the

2     papers filed by the Debtors and the Committee make clear

3     under the law, when you reclassify a claim from unsecured to

4     priority because priority gets paid first, that's considered

5     a claim that if it's after the bar date, that it is a late

6     filed proof of claim.  So it falls under that standard.  And

7     so again, I did read the papers that were filed, but if you

8     want to briefly address anything else that you wanted to

9     mention or highlight, I'm happy to hear from you.

10            MR. MCCLAMMY:  So on our end, Your Honor, I think

11     the papers certainly sufficiently covered it.  The only

12     thing I think I would note is particular focus on, you know,

13     this particular claim and this is not to address the merits

14     of the claim at all, but rather the fact that, you know, the

15     basis that's cited here for having the claim reclassified,

16     the guilty plea, we do not believe given the timing would

17     support the filing of this claim late nor do we believe as a

18     matter of the ultimate merits that would justify anyone in

19     having their claim, that was an unsecured claim, given

20     priority status.  It wouldn't qualify under 507 for being

21     treated with priority.  And for those reasons, we think that

22     the treatment under the plan, should this claim be allowed,

23     is the proper classification for this claim and that it

24     should remain an general unsecured claim and that it should

25     be treated similarly situated claimants in this case.  And

Page 31

1    with that, I think that he would rest.

2              THE COURT:  All right, let me ask if the Claimant

3    wishes to be heard?

4              MS. OSTERLOH:  Yes I do.  Can you hear me?

5              THE COURT:  Yes, I can.  And again, ma'am, I've

6    read everything that you've submitted.  So you don't have to

7    feel the need to explain that all to me.  But certainly if

8    you wanted to add something or highlight something, I'm

9    happy to hear you.

10             MS. OSTERLOH:  Okay.  I do want to add that I feel

11   that the motion to reclassify my claim should not be

12   construed as a late claim motion.  It was filed after the

13   bankruptcy court's general bar date of 7/30/22.  Also, I

14   don't believe that it should be continued as amended, timely

15   file proof of claim.  The reason being is I feel that I had

16   submitted enough evidentiary documentation to prove my claim

17   on behalf of my deceased father.  Also, too, the proof of

18   claim forms that were sent, they didn't give me any other

19   option but to file for general unsecured claims.  So that's

20   just a couple of things that I wanted to point out.  As we

21   know, you know, it's been over two years now.  And I have

22   been waiting, just as everyone else has been waiting.  I'm

23   one of the 10 percent that did claim an amount on my claim

24   because of the evidentiary documents that I had submitted.

25   I feel that if I did not have that type of proof or

1    documentation for evidence, then I more than likely would

2    have been okay with just general unsecured claim instead of

3    priority unsecured claim.  So my classification I feel is

4    different from outlines that are laid out for the general

5    unsecured claims.

6              THE COURT:  All right, thank you very much, ma'am.

7    I appreciate your submissions.  I appreciate you being here.

8    I'm very sorry for the loss of your father.  And you have my

9    condolences.

10             MS. OSTERLOH:  Thank you.

11             THE COURT:  I don't know if there's anything from

12   the Committee?  The response I got from the -- well, I guess

13   it's the Debtors objection, but I'll ask I guess anyway,

14   just to see if the Committee has anything else that it

15   wanted to weigh in on.

16             MR. PREIS:  No, thank you, Your Honor.

17             THE COURT:  All right.  All right.  So given how

18   frequently these issues are going to come up with claims, I

19   prepare in advance to sort of understand the arguments and

20   therefore try to make bench rulings that is rulings, verbal

21   rulings while I sit here on the bench rather than address it

22   at a later time because I know folks are here now.

23             So I'm going to do that now.  In this motion, the

24   Claimant states, as has been explained also here at the

25   hearing, that you believe the claim should be reclassified

1    as a priority unsecured claim to receive proper restitution

2    due to what you talk about is the criminal activities of

3    Purdue Pharma LLP and should be classified as a general

4    unsecured claims.  And as I sort of mentioned earlier,

5    amendments to proofs of claim that change the nature of the

6    claim from an unsecured claim to a priority claim are

7    considered under the law to set forth a new claim.  And so

8    motions seeking to reclassify to a priority claim are

9    treated as a motion to file a claim, file proof of claim.

10   And so -- and occasionally I'm going to cite cases just to

11   explain that I'm following the law that exists.

12           So see Waske, W A S K E, versus Lehman Brothers

13   Holdings, Inc., 2021 W.L. 4523495 at star four, SDNY,

14   September 30th, 2021.  So turning to the late filed proof of

15   claim, courts have discretion to allow those only on a

16   showing of excusable neglect and that standards set forth,

17   the relevant standards in Federal Rule of Bankruptcy

18   Procedure 9006, Subsection B.  And in the Supreme Court's

19   decision, Pioneer Investment Services Company versus

20   Brunswick Associates Limited Partnership, that case is at

21   507 US 380 at 382.  It's a 1993 case.  And as that case and

22   other cases explained the burden of meeting the Pioneer test

23   for excusable neglect, it falls -- it's on the claimant.

24   See the Enron case, In Re Enron, 419 F.3d. 115 at 121, 2nd

25   Circuit 2005.  And so when looking at the Pioneer test, the

Page 34

1    courts look at a variety of factors.  It's an equitable

2    inquiry that is an inquiry about fairness taking into

3    account all the relevant circumstances that are guided by

4    what are, are set forth as factors in the Pioneer case.

5            And those factors, there are a number of them.

6    One is the danger of prejudice to the Debtor.  Two is the

7    length of the delay and its potential impact on judicial

8    proceedings.  Three is the reason for the delay, including

9    whether it was within the reasonable control of the movant.

10   And four is whether the movant acted in good faith.

11           The case law here in the Second Circuit on the

12   Pioneer test makes it clear that it's taken a hard line on

13   the test and that's set forth in the Enron case, 419 F.3d.

14   at Pages 122 to 123, citing a variety of cases.  And the

15   Second Circuit focuses its excusable neglect standard on the

16   third factor, that is the reason for the delay.  And

17   certainly nobody here argues that the Claimant argued --

18   acted in bad faith in any way, shape or form.

19           So in this case, the Court is certainly

20   sympathetic to all those affected by the opioid crisis and

21   obviously the tragedy here is compounded by the loss of the

22   Claimant's father.  But I can't grant this motion given the

23   facts that I have and applicable law for a couple of

24   reasons.

25           So the first deals with the Pioneer factors and

Page 35

1    the most significant of the factors, the reason for the

2    delay.  And there's really no justification in the motion

3    for what, what is a 19-month delay.  And so there's a

4    reference to a New York Times article that's published in

5    October 21st of 2020 that relates Purdue's plea agreement

6    with the Department of Justice, but there's still a 16-month

7    delay after that article and before the filing of the

8    motion.

9            And without a justification for that delay, the

10   Court has no choice but to deny the motion given that the

11   delay here is considered substantial under the law.  It's

12   more than a year.

13           The second reason for my denial is that the reason

14   that's explained for asserting a new priority claim is

15   produced plea agreement.  But if that's about basis to

16   change this claim here for unsecured to priority, that would

17   really apply to virtually all of the Debtors' creditors and

18   risk opening the floodgates to similar assertions of

19   priority based on the guilty plea for the over 130,000

20   similarly situated personal injury claimants.  And for that

21   proposition, I'll again cite the Enron case, 419 F.3d, 132,

22   133.  In that case, the court denied a late filed claim

23   saying that the potential claim was not distinguishable from

24   other claims such that permitting the late filing would open

25   the floodgates and prejudice the estate.

Page 36

1           And so in reaching this decision, the Court notes

2    that there was nothing in the original proof of claim that

3    indicated basis for being a priority claim.  And, in fact,

4    the claim here, like thousands of other personal injury

5    claims, is based on a personal injury related to the taking

6    of opioid pain medications manufactured by the Debtors.  And

7    in the plan of reorganization that's on appeal, that is sort

8    of where we are in the case.  It classifies such opioid-

9    related personal injury claims and other similar cause of

10   action related to that that arose prior to the bankruptcy

11   filing as prepetition unsecured claims.  So the case treats

12   all these claims as unsecured claims.  So that's the other

13   reason for the denial of the motion.

14           And certainly the plan of reorganization and the

15   confirmation order is all on appeal and is subject to

16   whatever ruling the Second Circuit makes on appeal.  But I

17   will note that no one's challenged the classification

18   scheme, that is how you look at the claims that were filed

19   in the case and how they are being treated.  And in

20   particular here, the classification of personal injury

21   claims such as this one is general unsecured claims.

22           So again, ma'am, you have my sympathy.  I

23   appreciate you being here and I appreciate how difficult it

24   must be to talk about all this.  But I thank you for

25   submitting the papers that you did, the motion and the

Page 37

1      reply, and for being here today.  I'm sorry I don't have

2      better news for you.  But again, my job is to apply the law

3      as best I can based on the facts and circumstances of the

4      case that I have in front of me.

5                So with that, that's the Court's ruling on that

6      motion.  With that, I will turn it back over to you, Mr.

7      McClammy, I think to address what's next.

8                MR. MCCLAMMY:  Thank you, Your Honor.  The next

9      motion is the motion to terminate the temporary injunction

10     and that's going to be handled by Mr. Kaminetzky.

11               THE COURT:  All right.  Mr. Kaminetzky.

12               MR. KAMINETZKY:  Hi.  Good morning, Your Honor.

13     For the record, Benjamin Kaminetzky of Davis Polk on behalf

14     of the Debtors.  Mr. Hill filed three related motions

15     related to lifting the preliminary injunction.  Perhaps we

16     should turn the podium over to Mr. Hill before I respond.

17               THE COURT:  All right.  So let me do this just for

18     Mr. Kaminetzky's benefit and Mr. Hills' benefit.  I've read

19     all the papers that have been submitted.  I think I

20     understand the argument, which is that Mr. Hill would like

21     this preliminary injunction to be lifted so that he can

22     pursue his individual claim.  And certainly I understand

23     people's desire for justice and their desire to proceed with

24     those things as soon as they can.  Obviously, his request

25     comes in the backdrop of in the context of this case and the

Page 38

1   large amount of litigation that exists in this case.  And

2   part of, part of a bankruptcy case is to try to deal with

3   those things and people who have lawsuits against the

4   Debtors and to try to deal with them consistently.  So, Mr.

5   Hill, I'm happy to hear from you.  I just want to let you

6   know you don't need to repeat anything that's in your

7   papers.  I've read all the papers, but I'm happy to hear

8   from you briefly if you'd like to highlight something or add

9   something new.  So, Mr. Hill.

10            MR. HILL:  Yes, Your Honor.  Thank you.  Did you

11  say that my case is to terminate the entire injunction or

12  just the injunction based on the Purdue Frederick Company,

13  like my motion states?

14            THE COURT:  Well, it's to, as I understand it, to

15  lift the injunction as to you for what you want to do, which

16  is your lawsuit against that particular entity.

17            MR. HILL:  It's a motion terminate against the

18  Purdue Frederick Company, who actually -- so probably not

19  waste a whole lot of anybody's time -- it's actually a

20  motion to move forward against the 2007 misbranding

21  OxyContin convicted felon, who caused my damages listed in

22  my New Jersey case that's been enjoined because I am a

23  person who was injured from those crimes that they pled

24  guilty to in 2007.  There's a lot of questions of is that

25  the Purdue Frederick Company or is it the Purdue Frederick

Page 39

1       Company, Inc.?  Everything I presented in my papers as far

2       as plea agreements and possible indictments, all list the

3       defendant as the Purdue Frederick Company listed in the case

4       caption showing where the legal entity for defendant would

5       be.  So despite the Debtors' opposition and their claims

6       that no, no that's not true, look over here, I have seen no

7       proof from them other than what I show that the defendant in

8       the 2007 misbranding OxyContin is the Purdue Frederick

9       Company.  No comma, no Inc.  Those are the facts that if you

10      look at, if we, you know, if we went through every exhibit,

11      that's what we'd see.  So my question --

12              THE COURT:  I understand that.  I think there's a

13      discussion in the response that you got and it's on page, I

14      guess its six, if you look at the page numbers at the

15      bottom, talking about that very issue.  And I think and what

16      I've been told and Mr. Kaminetzky can get into it in more

17      detail, is that the preliminary injunction covers this

18      entity.  And the idea is that it's an entity, it's a

19      "related party" subject to the preliminary injunction.  And

20      that's the Purdue Frederick Company, Inc., but it's

21      registered to do business using the alternative name, the

22      Purdue Frederick Company.  And in fact, the complaint cited

23      in the opposition by the Debtors identifies the Purdue

24      Frederick Company, Inc. and variants, the Purdue Frederick

25      Company and Purdue Frederick Company, Inc. as related

Page 40

1    parties.

2              MR. HILL:  Your Honor, may I --

3              THE COURT:  So I think that's the response that

4    that I have is that this entity is covered by this

5    injunction.  And I guess that's what's been presented to me

6    by the other side.

7              MR. HILL:  Your Honor, from what I saw in their

8    objection, I see no proof that the defendant is not the

9    listed defendant on the actual plea agreement and the actual

10   October 6th, 2006, indictment or the Exhibit J letter from

11   their attorney.  It's very clear there's no, there's no

12   question.  The 2007 misbranding OxyContin convicted felon is

13   the Purdue Frederick Company.  And my motion --

14             THE COURT:  And again, I have, I don't think

15   that's quite a fair statement saying that they presented

16   nothing because there's a whole page of explanation on Page

17   6.

18             MR. HILL:  I didn't see anything under Document

19   82.  Can we get to that?  The first thing they list or the

20   second thing is Document 82.  I couldn't find it in the

21   adversarial or the regular case docket.

22             THE COURT:  All right, okay.  Give me a second,

23   Mr. Hill.  What I'm looking at is the Debtors opposition.

24   It's at Docket 372 on the Case 198289 and that's the Purdue

25   Pharma versus Commonwealth of Massachusetts et al. adversary

Page 41

1    proceeding.  And on Page 6 of that pleading, which was filed

2    on August 12, it has, the whole page is an explanation

3    explaining the Debtors view about your argument as to the

4    Purdue Frederick Company being, well --

5              MR. HILL:  Yes, that's their argument.  They

6    present no proof, Your Honor.

7              THE COURT:  The point is what's covered by the

8    preliminary injunction.

9              MR. HILL:  Right.  The people on the related party

10   list.  They are not -- the Purdue Frederick Company is not

11   on that list.  From what I understand --

12             THE COURT:  All right.  I understand your

13   argument.

14             MR. HILL:  Okay.  So can we can we get back to

15   where Docket 82 is?  The whole premise on the fact that what

16   you just said and everything you decided and their Debtors'

17   objection is based on Docket 82 at No. 4.  I'd like to hear

18   from Mr. Kaminetzky what that is.

19             THE COURT:  All right.  So what else would you

20   like to tell me before I hear from Mr. Kaminetzky?  Because

21   I'm not going to go back and forth.  That doesn't really

22   work here in court.  Anything else that you want to address

23   Mr. Hill before I hear from the other side?

24             MR. HILL:  Yes, I would like to know is that the

25   Court's opinion or does the Court rule that -- who does the

Page 42

1      Court find is the 2007 misbranding OxyContin convicted

2      felony?  I guess that's my question.

3              THE COURT:  I understand that's your question.

4      Yes, I understand that.  All right.  So I think at this

5      point it makes sense to hear from Mr. Kaminetzky.

6              MR. KAMINETZKY:  Good afternoon, Your Honor, now

7      that's it afternoon this afternoon.  Again, Benjamin

8      Kaminetkzy of Davis Polk for the Debtors.  So I think Your

9      Honors got this.  There's no great mystery here.  There's

10     Purdue Frederick Company, Inc. doing business as Purdue

11     Frederick Company and unfortunately, from time to time,

12     people insert a comma before the Inc., although officially,

13     as I understand it, there's no comma before the Inc.  But

14     these three entities are one entity.  There is no great

15     mystery, secret, conspiracy or anything else.

16              In the original preliminary injunction complaint

17     that was filed, we attach a chart, a very lengthy chart of

18     all the different actions and all the related parties.  And

19     on that chart, number one related party is Purdue Frederick

20     Company, Inc..  Number three on that chart is Purdue

21     Frederick Company Inc. doing business as the Purdue

22     Frederick Company.  If you work your way down the chart,

23     there's Purdue Frederick Company, Inc. as well.  What we did

24     is we base took the captions of all the cases.  You recall

25     Your Honor, we're talking about 2600 cases that

Page 43

```
 1    (indiscernible) was facing prepetition at a cost of about $2

 2    million of legal fees a week.  And we took all those

 3    captions and we put them in a related parties chart and

 4    Judge Drain after a lengthy hearing rule that all the

 5    actions against all the related parties are enjoined.  And

 6    that included, first and foremost I should say in terms of

 7    related parties, the Purdue Frederick Company in all its

 8    various iterations of Inc., no Inc., comma Inc., et cetera.

 9    There's never been any ambiguity whatsoever with respect to

10    the Purdue Frederick Company that that refers to the same

11    entity.

12            To the extent the comma caused confusion, you

13    know, I apologize, but I only recently learned that our name

14    is Davis Polk and Wardwell LLP, not Davis Polk and Wardwell

15    comma LLP.  So, you know, the mistaken comma from time to

16    time happens.

17            THE COURT:  Am I understand correctly that comma

18    or no comma, both are listed in the related parties chart?

19            MR. KAMINETZKY:  Yeah, comma, no comma, as well as

20    doing business as just Purdue Frederick Company without an

21    Inc.

22            MR. HILL:  They did not provide that chart, Your

23    Honor.

24            THE COURT:  Mr. Hill, I'm hearing from Mr.

25    Kaminetzky and when he's done, I'll ask you if there's
```

Page 44

1      anything else.  I can only hear from one party at a time.

2      That's the way court works.

3              MR. KAMINETZKY:  Yeah, it's just to answer of Mr.

4      Hill, it's -- our complaint was filed with that chart.  So

5      it's the first document in the preliminary injunction

6      adversary proceeding.  And, just, Your Honor --

7              THE COURT:  And I understand that's what cited on

8      Page 6 of your opposition that it cites the complaint,

9      Docket Number 1, Exhibit B, Page 2 and Page 14 that lists

10     the Purdue Frederick Company Inc., no comma and variant

11     Purdue Frederick Company, and variant Purdue Frederick

12     Company, Inc. as related parties.

13             MR. KAMINETZKY:  Exactly, Your Honor.  And just to

14     note that the first order granting the preliminary junction,

15     what the judge did, he defined -- when Judge Drain did --

16     and I'm looking at Pag 2 of that order pursuant to 105

17     granting in part, the motion for preliminary injunction, he

18     defined related parties by just looking at that exhibit,

19     Exhibit B to the complaint, which included, as Your Honor

20     noted once again --

21             THE COURT:  All right.  Can you identify exactly

22     where in the order that is?

23             MR. KAMINETZKY:  In the original order, that's

24     Docket Number 82, on Page 2 of 12.  It was entered on

25     October 11th, 2019.  So it's again Docket Number 82 on the

Page 45

```
 1     second page.  That's how Judge Drain defined related parties

 2     by --

 3               THE COURT:  And I would note, I think, again to

 4     get back to your Page 6 of your opposition, it references

 5     Docket 82, the first order, and then talks about enjoining

 6     cases against related parties as identified in Exhibit B to

 7     the complaint.  Do I have that right?

 8               MR. KAMINETZKY:  That's correct.  And what Judge

 9     Drain subsequently asked us to do is that just to make it

10     easier for folks, could you just, you know, put in a

11     footnote all the related parties, which we happily did in

12     subsequent preliminary injunction orders.  And that's the

13     famous Footnote 2, which, of course, includes Purdue

14     Frederick Company Inc. which is the official name, or the

15     formal name of the company, of the related party.  So that's

16     the explanation, Footnote 2.

17               So, you know, Your Honor, other than the, you

18     know, other than that, I think the motion is very simple.  I

19     mean as Your Honor -- as we've heard, we were facing this

20     litigation tsunami that one couldn't imagine of 2600 cases.

21     And what the preliminary junction did was it stopped the

22     frantic race to the courthouse in every single jurisdiction

23     imaginable, state, federal, administrative courts, et

24     cetera, and said that what we're going to do here is when

25     Your Honor talked about with respect to the last series of
```

Page 46

1      motions, is try to equitably distribute the assets of the

2      estate among the many 100,000 claimants in this case -- we

3      have over 614,000 proofs of claim -- and put a stop to the

4      race to the courthouse.

5              So, Your Honor, there's really no basis for, you

6      know, while we're extraordinarily sympathetic to Mr. Hill,

7      we're also sympathetic to the hundreds and thousands of

8      other alleged victims of the opioid crisis.  And what we

9      want to do here is what's fair and right, is pursue to the

10     plan of reorganization that was mediated and negotiated with

11     representatives from all the --

12             THE COURT:  And just to clarify what I think is

13     pretty straightforward, well, not clarify, confirm what's

14     pretty straight forward is that the 28th amended order and

15     the orders before that, after the first one, all are

16     extending the original injunction that was entered and that

17     we were discussing at Docket 82.

18             MR. KAMINETZKY:  Yes, Your Honor, absolutely.

19     There's nothing more to say other than yes.  So Your Honor,

20     that's the long and short of it.  We can't let one person,

21     as sympathetic as we are, you know, jump the line, have the

22     injunction lifted because that would open -- we've talked

23     about floodgates -- but that would certainly open the

24     floodgates of other victims of the opioid crisis to ask that

25     they too be able to pursue their surgical unique claim.  And

Page 47

1    as Judge McMahon ruled when she affirmed Judge Drain, that

2    would, you know, to lift the junction as to one, would put

3    the Debtors in the same situation.

4            THE COURT:  I've got it.  So Mr. Hill, I've heard

5    from Mr. Kaminetzky and he has walked me through the

6    information on Page 6 of the opposition, which I mentioned

7    to you.  And so I'm happy to hear anything you have in

8    response to that that's new.  You don't need again to repeat

9    arguments that you discussed before.  Mr. Kaminetzky went,

10   so briefly, Mr. Hill.

11           MR. HILL:  Yes.  When Mr. Kaminetzky started

12   talking, he said that the related party listed the Purdue

13   Frederick Company Inc. doing business as Purdue Frederick

14   Company.  That's not the Purdue Frederick company.

15   Secondly, the Purdue Frederick Company is not listed

16   anywhere as a related party.

17           THE COURT:  But he just identified Exhibit B which

18   lists three variations of the name.

19           MR. HILL:  What that does, Your Honor, is that's

20   from one of their, one of their orders and it's listing the

21   people that were sued.  That's not the related party list.

22   That is a running tally in that column that they're calling

23   related parties.

24           THE COURT:  But the order, but the order covers,

25   the order Docket 82, which is what you kept referring to,

1    enjoins cases against related parties as identified in

2    Exhibit B to the complaint.

3            MR. HILL:  Okay.  So if we're going to say that

4    the defendant -- I'm saying my case should be settled

5    pursuant to the 2007 plea agreement as I provided.  I'm

6    saying that that is the Purdue Frederick company.  If you're

7    saying that the Purdue Frederick Company Inc. is a related

8    party, my second motion is then --

9            THE COURT:  That's not what I'm saying.  Mr. Hill,

10   at a certain point, I think we're going around and around

11   repeating ourselves.

12           MR. HILL:  Well, I would just like to seek --

13           THE COURT:  Let me finish.  I'm going to stop.

14   I'm going to let you finish briefly.  I think I understand

15   your argument about the distinction and you did file

16   extensive papers, which I have looked at, at Docket 3369 and

17   elsewhere.  So I think I understand the argument.  So I'll

18   give you a moment to finish up.

19           MR. HILL:  Okay.  The second motion I filed or

20   actually the first motion I filed is against Purdue

21   Frederick Company Inc. under the theory that even though

22   they are listed as a related party, my case should be

23   settled in accordance with the 2007 plea agreement as

24   provided for, as I've provided in many exhibits in my case.

25   So if you're deciding that the Purdue Frederick Company Inc.

Page 49

1    is the related party and the Purdue Frederick Company is the

2    same thing, okay, that's fine.  I'm not Columbo here.  I'm

3    stating that they have to understand my case must be settled

4    as ordered in the 2000 -- July 23rd, 2007, Judge Jones

5    opinion and order specifically states cases like mine that

6    were -- I can prove it, my OxyContin history report proves

7    that I was prescribed it in 2000 at the time the 2007

8    misbranding Oxycontin convicted felon was convicted.

9            THE COURT:  Mr. Hill, nobody is -- this is not a

10   hearing on the merits of your claim.  Nobody is debating

11   that.  This is just a question about the preliminary

12   injunction that was entered in the bankruptcy case to

13   prevent litigation from going forward in other forums and

14   let me just give you a little bit of background.  People

15   don't have a lot of experience with bankruptcy hopefully in

16   life.  And so it's a very different kind of thing.

17           What often happens is there may be a lot of

18   litigation that's going on before a debtor files for

19   bankruptcy.  And the idea is rather than someone's recovery,

20   whatever they get from a debtor being governed by one case

21   versus another case, which is often a function of how

22   quickly they can get their case filed and where their case

23   is pending, it's dealt with in bankruptcy so that similar

24   claims are treated similarly.

25           MR. HILL:  Yes.

1          THE COURT:  And so as a result of that principle,

2     what often happens, and happened here in the context of this

3     preliminary injunction, is to say that we're going to hold

4     off on all the individual litigations that people have

5     pending against the Debtor and related entities so that

6     everybody's claims can be dealt with in a more consistent

7     fair way here in the bankruptcy court.  So no one is

8     challenging and I don't see anything in the papers or

9     anybody said that you don't, you weren't involved in that

10    other case and that there wasn't a guilty plea, and that

11    there's, you know, you have a civil action for money

12    damages, and all that or anything challenging the merits of

13    your claim.  So I just want you to understand that because

14    that's important.  This is really a motion about procedure,

15    which is about what's happening in the bankruptcy case

16    versus what's happening outside of bankruptcy to try to deal

17    with people who have claims in a fair and equal way.  And so

18    I just want you to understand that, because I can understand

19    why that would be -- you think somebody's challenging your

20    claim, the fact that the merits, whether you're right in

21    what you're arguing about as to this company.  That's very

22    upsetting.  And so I understand, I understand that, but

23    that's not what today's hearing is about.  So no one, I'm

24    not, no one's argued anything like that to me.

25              So, what I really have here is a procedural

Page 51

1    question about this preliminary injunction and what it's

2    trying to do in the bankruptcy case for purposes of how

3    claims are treated and uniformly, and that people are not

4    going to be allowed to go pursue their litigations outside

5    of court because we're going to try to pursue something

6    that's consistent claim by claim as we can make it here in

7    the bankruptcy case.  So I just want you to understand what

8    we're doing here and what we're not doing here.

9            MR. HILL:  Your Honor, I thought what we were

10   doing here was hearing my motion because it's pursuant as it

11   says in the title of my motion.  I wanted the motion

12   terminated because it's pursuant to be settled in accordance

13   with the 2007 plea agreement.

14           THE COURT:  I got it.

15           MR. HILL:  I haven't heard you mention that.  And

16   I haven't heard them oppose that.

17           THE COURT:  All right.  Anything else, Mr. Hill?

18           MR. HILL:  Am I wrong, Your Honor?  Did you bring

19   that up?

20           THE COURT:  Mr. Hill, I've said what I've said and

21   I'm going to give a ruling in a minute and I'll explain my

22   reasons for my ruling when I make a ruling.  So, anything

23   else you want to argue briefly?

24           MR. HILL:  I don't see the point, Your Honor.

25           THE COURT:  So --

Page 52

1           MR. HILL:  You don't want to look at any exhibits,

2    right?

3           THE COURT:  Mr. Hill.  Okay, I'm going to ask that

4    Mr. Hill be put on mute.  I'm not here to antagonize you or

5    to have you antagonize me.  We're trying to be civil here.

6    And so, yes, as I start stated when I came on the bench

7    here, I've read all the papers, I have read everything that

8    you've submitted.

9           All right, so the time has come for the Court to

10   make a ruling.  So given all the facts and circumstances

11   here in this case, Mr. Hill's request for relief to modify

12   the preliminary injunction are denied.  So I'll start with a

13   little bit of history.  On April 29th, 2022, the Court

14   entered the 28th amended order extending the preliminary

15   injunction.  And in doing so, found that the prospects of

16   the Debtors' reorganization would be irreparably damaged if

17   the injunction were lifted now before the Second Circuit's

18   decision and pending appeals relating to the Debtors' plan

19   of the organization.  And so that finding and conclusion was

20   stated at the April 27th, 2022, hearing and you can see that

21   in the transcript at Page 20.  And that order was the latest

22   in a series of orders, again, it's the 28th, that was based

23   upon the legal and factual record developed in the case.

24   And this includes evidentiary submissions, a full-day

25   evidentiary hearing, and argument on October 11th, 2019, and

Page 53

1    subsequent hearings over a nearly three-year span in these

2    bankruptcy cases.  On each occasion, and with the

3    overwhelming support of creditors, the Court concluded that

4    the Debtors have a reasonable prospect of a successful

5    reorganization.  And that the preliminary injunction is key

6    to that, that is if the preliminary injunction were allowed

7    to expire, and the massive litigation that existed before

8    the bankruptcy cases were filed, that was allowed to

9    resume., the years of effort in this case would almost

10   certainly be wasted.

11          And that was discussed again at the April 27th,

12   hearing on Page 20, which discussed in March 23rd, 2022,

13   hearing, that transcript, at Page 28,  December 29th, 2021,

14   Hearing, that transcript at Pages 83, 81.

15          And so on each of these occasions, the Court

16   determined that the risk to the Debtors, the estate, and to

17   creditors outweighed any harm that would occur from pausing

18   litigation outside this Court, which was uncoordinated,

19   somewhat chaotic, and basically the classic race to the

20   courthouse that bankruptcies are trying to prevent.  And

21   that, therefore, the public interest and bankruptcy policies

22   of maximizing value and equitable distribution to creditor

23   weighed in favor of the injunctions.  And again, you can

24   look at the April 27th, 2021, hearing transcript, Page 20;

25   March 23rd, 2022, hearing transcript at Page 28; February

Page 54

1   1st, 2022, hearing transcript, Page 21 and 22; and the

2   December 29th, 2021, hearing transcript at Pages 80 and 81.

3          And as a practical matter, nothing has changed

4   since the 28th amended order extending the preliminary

5   injunction was entered.  And nothing's changed that provides

6   a reason to reach a different conclusion now about the

7   preliminary injunction.

8          So Mr. Hill seeks to modify the primary injunction

9   to allow him to prosecute in a state court action against

10  one of the Debtors' related parties, the non-Debtor, the

11  Purdue Frederick Company Inc. or as he refers to it, the

12  Purdue Frederick company.  He sued a number of Debtors and

13  related parties in New Jersey State Court in September of

14  2019, just a few days before the Debtors filed this

15  bankruptcy.  And he sued for injuries that he alleges he

16  suffered on account of taking OxyContin.

17         And, I -- again, today's hearing is not about the

18  merits of those allegations.  He certainly has my sympathy

19  for his circumstances as do other victims in this case.  Mr.

20  Hill, I do note, didn't object to the Debtors' initial

21  motion for a primary injunction.  And he didn't object to

22  any of the subsequent motions to extend it up to today, but

23  now he asked to exclude his claims from the preliminary

24  injunction so he can pursue his state court litigation.

25         But there are several problems with that.  First,

1    granting him an exception to the preliminary junction would

2    open the floodgates to other similarly situated claimants,

3    that is people who are victims of the alleged actions of the

4    Debtors here.  And by risking -- by opening the floodgates

5    to numerous individual lawsuits and allow those to go

6    forward that existed before the bankruptcy, that would risk

7    irreparable harm to the estate.  It would also risk

8    irreparable harm to the creditors who would be subject to a

9    much diminished assets for the Debtors' estate, given the

10   amount of money that would be spent litigating those

11   individual claims one by one by one, something that is

12   commonly referred to in bankruptcy as the litigation burn.

13   And all that would no doubt hopelessly undermine the Debtors

14   reorganization.

15            Secondly, it would be fundamentally unfair to

16   grant the relief here to the many thousands of other

17   predators.  So when the Debtors sought the preliminary

18   injunction, plaintiffs in more than 2600 cases against the

19   Debtors and related parties were, as discussed, racing to

20   prosecute those cases in courthouses across the country.

21   And in each case, they were seeking to maximize their share

22   of any value that they could recover from the Debtors and

23   the related parties.  What the preliminary injunction does

24   is allow that chaotic and fundamentally unfair process to be

25   replaced by a process that seeks to distribute value to the

Page 56

1    public and private creditors with an equitable distribution

2    of recovery among all claimants as best as we can do that.

3            And I note that the Court's opinion here, this is

4    consistent with the rulings that Judge Drain has made.  It's

5    also consistent with the rulings, the observations that

6    Judge McMahon has made.  So, in observing her opinion, in

7    her opinion affirming the preliminary injunction, she noted

8    specifically that "lifting the stay" even for one party

9    "would soon engulf the Debtors and the bankruptcy court in

10   litigation challenging the injunction's application to

11   similar cases."  And that's in Dunaway versus Purdue Pharma,

12   LP, 619 B.R. 38 at 60, SDNY 2020.  So even litigating

13   numerous exceptions to the preliminary injunction would

14   itself harm these estate because you would have an endless

15   churn of litigation here in the bankruptcy court, as

16   potentially up to the entire amount of folks who have

17   litigation outside of bankruptcy court.  The 2600 cases

18   could come in and make their pitch as to why they should be

19   exempted from the preliminary injunction.

20           And all those efforts, all that litigation would

21   risk restarting a value-destructive and chaotic litigation

22   process that existed before the preliminary injunction would

23   issue.  And granting the relief here would jump Mr. Hill in

24   front of more than 130,000 other personal injury claimants,

25   a result that is hard to imagine and is seen as unfair even

Page 57

1    assuming all of the claims that Mr. Hill has are completely

2    on merit.

3           So one last point is worth addressing.  Mr. Hill

4    argues that he should be permitted to pursue the state court

5    action and he makes much of the various names that we've

6    discussed: the Purdue Frederick Company versus the Purdue

7    Frederick Company, Inc., versus the Purdue Frederick Company

8    Inc. with no comma, saying that the entity he wants to sue

9    is not subject to the preliminary injunction.

10          The Court disagrees.  The Purdue Frederick Company

11   Inc. with no comma, is the entity that pled guilty in 200,

12   and is, in fact, an entity subject to the preliminary

13   injunction.  So you can look at the 28th amended order,

14   Docket 356 at Page 2, Note 2, specifically listing that

15   entity.  But the Court also knows the Purdue Frederick

16   Company Inc. is registered to do business using the

17   alternative name of the Purdue Frederick Company.  And that

18   name has been identified from time to time with Inc. or

19   without an Inc.

20          But, in any event, if you go back to the

21   complaint, Docket Number 1, Exhibit B, which lists the

22   related entities, it lists the Purdue Frederick Company

23   Inc., no comma, and then variants of Purdue Frederick

24   Company as well as the Purdue Frederick Company, Inc. as

25   related parties.  It's that list that was used in the first

Page 58

1    order at Docket 82 as referencing what is covered by related

2    entities.  And so it's pretty clear to the Court that the

3    entity that is involved here with Mr. Hill's lawsuit is

4    covered and indeed, one can't think of any reason why it

5    wouldn't be.  So even to the extent that there was a

6    misplaced comma or period somewhere, the whole notion behind

7    the preliminary injunction is to prevent lawsuits outside of

8    bankruptcy court related to harms from OxyContin and related

9    claims to be prevented from going forward while we attempt

10   in bankruptcy court to do the best we can to come up with a

11   plan of reorganization and a path forward that compensates

12   victims for their injuries in a way that is as equal and

13   fair as we can make.  So there there's really no reason why

14   one particular litigation out of the 2600 would be somehow

15   exempted from the preliminary injunction.  That, in fact,

16   makes no sense at all.

17          So I understand how strongly Mr. Hill feels about

18   his claims.  That is entirely understandable.  And certainly

19   we all hope this case progresses forward as quickly as it

20   can so that people can be compensated as is appropriate

21   under the facts here and applicable law, whatever that law

22   is that the Second Circuit determines applies to this case.

23          But in the meantime, it's clear that this primary

24   injunction serves an important purpose to keep the status

25   quo in place, again it's the 28th such order that's entered

Page 59

1    such that it allows the case to continue to have the

2    possibility of offering relief to victims consistent with

3    the plan of reorganization.

4            And so for all those reasons, Mr. Hill's motions

5    are denied.  And I think the order can simply say that the

6    reasons for the denial are set forth on the record of

7    today's hearing rather than having to repeat the reasoning

8    blow by blow.

9            So with that, I believe that concludes the fourth

10   item on the agenda dealing with Mr. Hill's claims and I'll

11   turn it back to the Debtors to address anything else on the

12   agenda.

13           MR. KAMINETZKY:  Your Honor, I think that

14   concludes the agenda of the matters going forward today.

15           THE COURT:  All right, so before we break, I would

16   just like to reiterate one more time.  I think I'm going to

17   do this at every hearing, just better safe than sorry.

18   Folks are all waiting for a decision from the Second Circuit

19   in this case.  And, as I explained at a prior hearing, my

20   intentions to have a status conference promptly after that

21   ruling, not the day after, because I think people need a

22   certain amount of time to read it and digest it, but

23   promptly.  And I mentioned that so that folks don't feel the

24   need, or the compulsion to file some papers immediately

25   seeking immediate relief, seeking to bring the decision to

Page 60

1    my attention.  I'm pretty confident that as soon as the

2    decision is issued, I will know about it just because I will

3    get notice through the official formal channels that the

4    decision has been issued.

5           So I just mentioned that again so that folks

6    understand they don't have to file something in order for me

7    to know that decision has been issued in order to have a

8    right to figure out what to do.  We're going to have a

9    conference.  We will have a process for that.  And I'm just

10   trying to avoid people spending a lot of time feeling that

11   they need to submit something in writing to address things.

12   Everybody will be given a chance to be heard on that when we

13   get to the appropriate time.

14          So that's the only thing I had on my list of

15   things I just want to make clear.  And with that, let me ask

16   if there's anything else from any other party before we

17   adjourn today's hearing?  All right, hearing nothing, the

18   Court is adjourned.  Thank you very much.  Have a good day

19   and be well.

20          (Whereupon these proceedings were concluded at

21   12:34 p.m.)

22

23

24

25

1                        I N D E X

2

3                        RULINGS

4                                        Page        Line

5      Murray Motion                      15          24

6      Han Motion                         25          24

7      JO Motion                          35           9

8      Hill Motion                        59           3

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 62

1              C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature: Sonya M. Ledanski Hyde]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  August 19, 2022