**Presentment Date and Time: October 18, 2022, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Date and Time: October 14, 2022, at 4:00 p.m. (prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (SHL)** |
| Debtors.[1] | **(Jointly Administered)** |

**NOTICE OF PRESENTMENT OF APPLICATION OF DEBTORS**
**FOR AUTHORITY TO SUPPLEMENT RETENTION AND**
**EMPLOYMENT OF GRANT THORNTON LLP FOR BUSINESS ADVISORY**
**SERVICES EFFECTIVE SEPTEMBER 27, 2022**

**PLEASE TAKE NOTICE** that on October 4, 2022, Purdue Pharma L.P. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed the annexed *Application of Debtors for Authority to Supplement*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Retention and Employment of Grant Thornton LLP for Business Advisory Services Effective September 27, 2022* (the "**Second Supplemental Application**").

**PLEASE TAKE FURTHER NOTICE** that, unless a written objection to the Second Supplemental Application is served and filed with proof of service with the Clerk of the Court, and a courtesy copy is delivered to the undersigned and to the chambers of the Honorable Sean H. Lane, so as to be received by **October 14, 2022, at 4:00 p.m. (prevailing Eastern Time)**, there will not be a hearing to consider such Second Supplemental Application, and an order, substantially in the form attached to the Second Supplemental Application as **Exhibit 1** (the "**Proposed Order**"), will be presented for signature by the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on **October 18, 2022 at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that, if a written objection is timely filed and served with respect to the Second Supplemental Application, a hearing (the "**Hearing**") will be held to consider the Second Supplemental Application before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on a date to be announced.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default.

**PLEASE TAKE FURTHER NOTICE** that copies of the Second Supplemental Application may be obtained free of charge by visiting the website of Kroll Restructuring Administration at https://restructuring.ra.kroll.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  October 4, 2022
       New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    By:  */s/ Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 |
| Debtors.[1] | (Jointly Administered) |

### APPLICATION OF DEBTORS FOR AUTHORITY TO SUPPLEMENT RETENTION AND EMPLOYMENT OF GRANT THORNTON LLP FOR BUSINESS ADVISORY SERVICES EFFECTIVE SEPTEMBER 27, 2022

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") hereby represent in support of this application (this "**Second Supplemental Application**") for authority to further supplement the retention and employment of Grant Thornton LLP ("**Grant Thornton**") as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**Jurisdiction and Venue**

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Second Supplemental Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**General Background**

2.      On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in the Debtors' chapter 11 cases. On September 27, 2019 the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered by the Court in each of the chapter 11 cases. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Debtors' Informational Brief* [ECF No. 17].

**Grant Thornton's Prepetition and Postpetition Engagements with the Debtors**

4.      Prior to the Petition Date, since approximately June 2018, the Debtors have engaged Grant Thornton to provide tax-related services to the Debtors pursuant to the terms and conditions of that certain master agreement, dated June 1, 2018, between Grant Thornton and PPLP (the "**Prepetition MSA**"), and other related statements of work executed in connection therewith.

5.      As previously disclosed in the Initial Retention Application and the First Supplemental Application (as those terms are defined below), the Debtors retained Grant Thornton after the Petition Date to continue to provide certain tax-related services to assist the Debtors in the ordinary course of their business operations (collectively, the "**OCB Tax Services**").[2] Because the OCB Tax Services were being provided in the ordinary course of the Debtors' business and were unrelated to the administration of the bankruptcy cases, Grant Thornton understood that it was not necessary for it to be retained in the bankruptcy cases in order to continue to perform the OCB Tax Services, and that payment on account of such OCB Tax Services would be paid consistent with past practices and in the ordinary course of the Debtors' ongoing business operations.

6.      In January 2021, the Debtors requested that Grant Thornton provide tax structuring services that directly related to the development the Debtors' chapter 11 plan of reorganization in these bankruptcy cases (the "**Plan**"). As a result of this requested expanded

---

[2] The OCB Tax Services include, but are not limited to, assisting Debtors with the: (i) generation of sales, use and other transactional tax returns by providing tax return compliance services; (ii) preparation of the Debtors' federal and state tax returns, including extension calculations and estimated tax payments, for the 2020 and 2021 taxable years; and (iii) tax compliance and consulting services for disclosures, review and execution related to United States and United Kingdom tax returns for the years 2015 through 2019.

scope of work, on or about January 20, 2021, Grant Thornton and the Debtors entered into that certain *Statement of Work for Tax Structuring Services*.

7.  On April 13, 2021, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Grant Thornton LLP as Tax Structuring Consultants to the Debtors Nunc Pro Tunc to January 20, 2021* [ECF No. 2636] (the "**Initial Retention Application**"). In support of the Initial Retention Application, the Debtors submitted the declaration of Raymond Werth (the "**Initial Werth Declaration**") (attached as **Exhibit C** to the Initial Retention Application).

8.  As set forth in the Initial Retention Application, the Debtors retained Grant Thornton to provide certain tax structuring services to the Debtors (collectively, the "**Initial Services**"), including: (a) assisting the Debtors' management in analyzing the income tax consequences to the Debtors with respect to transactions between the Debtors and the new entity ("**NewCo**") anticipated to be created in the bankruptcy reorganization; (b) consulting with PPLP and its legal counsel, Davis Polk & Wardell LLP ("**Davis Polk**"), regarding the federal and state income tax implications of transactions required by the Court (transactions as proposed by Davis Polk) effectuating the bankruptcy reorganization; (c) assisting PPLP's management in determining the federal income tax basis in the assets of the NewCo and its affiliates immediately following the bankruptcy reorganization; and (d) assisting in modeling future U.S. federal and state income tax cash tax liabilities for NewCo following emergence from bankruptcy.

9.  On April 28, 2021, the Court entered its *Order Authorizing the Retention and Employment of Grant Thornton LLP as Tax Restructuring Consultants for the Debtors Nunc Pro Tunc to January 20, 2021* [ECF No. 2760] (the "**Initial Retention Order**").

10.     In August 2021, the Debtors requested that Grant Thornton further expand the scope of its retention and provide additional services related to their Plan confirmation efforts. Specifically, the Debtors and Grant Thornton entered into the *Statement of Work for Advisory Services*, dated August 25, 2021, pursuant to which Grant Thornton was retained, subject to Court approval, to provide valuation advisory services to the Debtors relating to the Plan and the formation of the Newco as provided therein, including, without limitation (collectively, the "**Valuation Services**"): (i) estimation of the fair values of certain tangible and intangible assets, as well as certain liabilities of NewCo, including inventory, real and personal property, and intangible assets; (ii) analysis of the components of goodwill (*e.g.*, assembled workforce, etc.); (iii) assisting the Debtors' management in the identification of the legal entities requiring discrete opinions of value for tax purposes; (iv) estimation of the fair market value of the identified legal entities; (v) reconciliation of the enterprise value of NewCo and the identified legal entities; and (vi) preparation of separate narrative reports and exhibits for financial reporting and tax valuation purposes.

11.     The Debtors and Grant Thornton also entered into the *Statement of Work for Employment Tax Services & State Corporate Income/Franchise Tax Nexus Analysis Services*, dated August 26, 2021, pursuant to which Grant Thornton was retained, subject to Court approval, to provide tax analysis for certain employment and other tax issues relating to the Plan and formation of the Newco as provided therein, including, without limitation (collectively, the "**Employee Tax Services**"): (i) various payroll tax considerations with respect to transactions between the Debtors and NewCo, as well as existing entities that will be restructured post-emergence; (ii) conducting a corporate income/franchise tax nexus analysis based on "doing business" criteria and economic presence criteria; (iii) evaluating the scope of multistate sales

and other business activities, office operations and location of employees to evaluate current corporate/franchise tax filing and additional jurisdictional filing requirements for certain subsidiaries.

12. On September 10, 2021, the Debtors filed the *Application of Debtors for Authority to Supplement Retention and Employment of Grant Thornton LLP for Tax Analysis and Valuation Services Effective September 1, 2021* [Docket No. 3761] (the "**First Supplemental Application**"). In support of the First Supplemental Application, the Debtors also submitted the supplemental declaration of Raymond Werth (the "**First Supplemental Werth Declaration**") (attached as **Exhibit C** to the First Supplemental Application).

13. The Court entered the *"Order Authorizing the Supplemental Retention and Employment of Grant Thornton LLP by the Debtors for Tax Analysis and Valuation Services Effective September 1, 2021* [Docket No. 3831] (the "**First Supplemental Retention Order**") on September 28, 2021.

14. On September 27, 2022, the Debtors and Grant Thornton entered into the following agreements (collectively, the "**BAS Agreements**"), pursuant to which Grant Thornton is being retained, subject to Court approval, to provide the Business Advisory Services (defined below): (i) the engagement letter, including "*Attachment A – STANDARD GRANT THORNTON LLP ENGAGEMENT TERMS*" attached thereto; and (ii) the "*Statement of Work (SOW) for Advisory Services*." Copies of the BAS Agreements are attached hereto as **Exhibit 2**.

### Relief Requested

15. By this Second Supplemental Application and pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors

seek entry of an order approving the BAS Agreements and further supplementing the retention and employment of Grant Thornton to include the Business Advisory Services, as defined and more fully described below and in the BAS Agreements, effective September 27, 2022.

16. A proposed form of order granting the relief requested in this Second Supplemental Application is attached hereto as **Exhibit 1** (the "**Proposed Order**"),

17. In support of the relief requested herein, the Debtors submit the "*Third Supplemental Declaration of Raymond Werth in Support of Application of Debtors for Authority to Supplement Retention and Employment of Grant Thornton LLP for Business Advisory Services Effective September 27, 2022*" (the "**Third Supplemental Werth Declaration**"), attached hereto as **Exhibit 3**. The Initial Werth Declaration, the First Supplemental Werth Declaration and the Third Supplemental Werth Declaration are hereinafter collectively referred to as the "**Werth Declarations**."

### Scope of Grant Thornton's Supplemental Business Advisory Services

18. The Debtors seek to expand the scope of Grant Thornton's employment and retention to allow Grant Thornton to provide the business advisory services (collectively, the "**Business Advisory Services**") including, but not limited to:

I.   *Business Advisory Services*

- Meet with management and understand the financial statements
- Discuss with management and understand the business background and accounting processes/procedures
- Read and discuss key reports used to manage the business including key performance indicators
- Understand any related party transactions, as applicable
- Read the external accountant's workpapers (if applicable)
- Analyze EBITDA trends
- Analyze revenue and COGS trends
- Analyze operating expenses
- Analyze the balance sheet including working capital trends

- Analyze report debt and off-balance sheet liabilities

II. *Strategic Operations Advisory and Support*

1. Interdependency Assessment

    a. Inter-dependency Assessment will provide in-depth overview of interdependencies for the following functional areas (as applicable)

| | | |
|---|---|---|
| Finance, Accounting, Tax, Treasury, Audit | IT – Infrastructure<br>IT – Product Development / Apps | Procurement<br>Supply Chain & Logistics |
| Operations<br>Manufacturing | Legal and Regulatory<br>Risk & Compliance | Facilities and Real Estate |
| Customer Service & Support<br>Key Account Management | HR including Payroll, Benefits and Insurance | Others (*e.g.,* Environmental, Health and Safety etc.) |
| Commercial / Strategy<br>Sales and Marketing | Medical Information/Services | |

    b. Analyze functional areas by people, contracts, technology and assets

    c. Build and obtain answers to information request lists

    d. Understand functional area processes, policies, procedures and current state operating model

2. Other Advisory and Support Services (Illustrative)

    a. Standalone Cost Model and One-Time Cost Analysis
        - Identification of standalone and one-time costs and associated allocations. Determine standalone and one-time costs by giving consideration to future run-rate of company.

    b. Current and Future State Operating Model
        - Identify and document the existing scope for processes, policies and procedures by functional area, understand which processes will need to be modified / sunset / re-built for future state. Recommend a future-state operating model for each functional area.

    c. Transition Services Assessment
        - Identify and document the scope of services required for the entity. Determine the cost of services based on underlying effort and recommend the duration in which the services will be provided.

    f. Transition Services Office

- Operationalize service agreements along with cross-billing and invoicing cadence. Conduct planning and provide governance of by function area. Establish a cadence of invoicing and payments with vendors and create monthly invoices. Establish a repository for all documentation required for tracking and sign-off.

### III. *Business Agreement Advisory*

1. <u>Agreement Input</u>

   a. Accounting and financial (non-legal) input on any agreement, focusing on:

      i. Price and price adjustment clauses
      ii. The basis of preparation of the statement(s)
      iii. Accounts procedures and policies
      iv. Financial and accounting representations and warranties
      v. Financial definitions, including working capital and net debt

   b. Review of the accounting dispute resolution clauses

2. <u>Negotiation Support</u>

   a. Preparation of working capital and net debt schedules
   b. Proactive support in establishing the "target working capital"
   c. Commentary on the contentious areas of the price adjustments and preparation of potential arguments and justifications to align these in Debtors'/NewCo's favor
   d. Assistance in agreeing the price adjustment principles

### IV. *Strategy and Commercial Solution on Offerings*

19. Subject to approval of this Second Supplemental Application, Grant Thornton has informed the Debtors that it is willing to serve as the Debtors' business advisory consultant and to perform the Business Advisory Services on matters arising during these chapter 11 cases.

**Grant Thornton's Qualifications and the Need for Grant Thornton's Services**

20. The Debtors submit this Second Supplemental Application because of the need to retain qualified business advisory consultants.

21.     As set forth in the Third Supplemental Werth Declaration, Grant Thornton is the U.S. member of Grant Thornton International Ltd., a global audit, tax, and advisory organization of separate, independent network firms providing services in more than 120 countries. Grant Thornton has approximately 59 offices in the United States. The professionals in Grant Thornton's business advisory practice consist of senior tax, accounting, and other professionals specializing in tax, valuation, financial, business, and strategic advice to enterprises, including distressed enterprises. Grant Thornton has significant qualifications, experience, and extensive knowledge in the fields of business advisory services for large, sophisticated companies, both in and out of chapter 11 bankruptcy.

22.     As further set forth in the Third Supplemental Werth Declaration and described in greater detail above, since approximately June 2018, the Debtors have engaged Grant Thornton to provide tax-related services to the Debtors pursuant to the terms of the Prepetition MSA and other statements of work executed in connection therewith. Since the Petition Date, Grant Thornton has continued to provide the Debtors with the OCB Tax Services. Grant Thornton also was retained in these bankruptcy cases, pursuant to the Initial Retention Order, to provide tax consultation services on behalf of the Debtors' estates directly related to core bankruptcy matters, *i.e.*, tax structuring services related to the Debtors' Plan. The scope of Grant Thornton's employment was subsequently extended to perform the Valuation Services and Employee Tax Services in these chapter 11 cases. Consequently, Grant Thornton is already familiar with the Debtors' business affairs and uniquely qualified to provide the proposed and anticipated Business Advisory Services.

23.     Due to Grant Thornton's experience and knowledge in the areas for which the Business Advisory Services will be provided, as well as their long-standing relationship with the Debtors, Grant Thornton is well qualified and uniquely able to provide such Business Advisory

Services to the Debtors, and as such, expansion of Grant Thornton's retention is in the best interests of the Debtors' estates, creditors, and other parties in interest.

### Grant Thornton's Disinterestedness

24. Grant Thornton has informed the Debtors that, as of the date hereof, except as set forth in the Werth Declarations, (a) Grant Thornton has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in these chapter 11 cases; (b) Grant Thornton does not hold or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) Grant Thornton (i) is not a creditor, equity security holder, or an insider of the Debtors, and (ii) is not or was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the Grant Thornton professionals expected to assist the Debtors in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for the Southern District of New York, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

25. The Debtors have been informed that Grant Thornton will supplement the Werth Declarations in a subsequent declaration filed with the Court if any facts or circumstances are discovered that require additional disclosure.

26. Based on the foregoing, the Debtors believe that Grant Thornton is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

### Grant Thornton's Compensation for the Business Advisory Services[3]

27. Grant Thornton's hourly billing rates for the Business Advisory Services are as follows:

---

[3] Grant Thornton's hourly rates set forth below are subject to change from time to time in the regular course of Grant Thornton's business. Grant Thornton will provide notice to the Debtors, the Office of the U.S Trustee and any statutory committees appointed in the Debtors' chapter 11 cases of any change in Grant

| Level | Hourly Rate |
|---|---|
| Partner / Managing Director | $955 |
| Director | $785 |
| Manager | $675 |
| Senior Associate | $515 |
| Associate | $330 |

28. In addition to the hourly billing rates set forth herein, Grant Thornton customarily charges its clients for direct expenses incurred by Grant Thornton, including, but not limited to, reasonable and customary out-of-pocket expenses for items such as copies, postage, supplies, computer and technology usage, software licensing, research and library databases and similar expense items, as well as the fees and expenses that Grant Thornton's counsel directly bills Grant Thornton in connection with this engagement relating to Grant Thornton's retention and fee applications submitted in the chapter 11 cases.

29. In addition, if Grant Thornton is requested or authorized by PPLP or Davis Polk, or is required by government regulation, subpoena or other legal process, to produce its documents or personnel as witnesses with respect to the Business Advisory Services, so long as Grant Thornton is not a party in the proceeding in which such information is sought, Grant Thornton customarily charges its clients for its professional time and expenses, as well as the fees and expenses of Grant Thornton's counsel, if any, incurred in responding to such requests.

30. As set forth in the Werth Declarations, the Debtors understand that Grant Thornton will apply to the Court for allowance of compensation and reimbursement of expenses for all

---

Thornton's hourly rates. Grant Thornton also will file a notice of any such change in hourly rates with the Court.

services approved pursuant to the Initial Retention Application, the First Supplemental Application, and this Second Supplemental Application in accordance with General Order M-412 (*Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals*, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, dated January 29, 2013 (Morris, C.J.)), and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (collectively, the "**Fee Guidelines**"), the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.[4]

31.  The Debtors respectfully submit that Grant Thornton's rates and policies, as stated herein and in the Third Supplemental Werth Declaration, are reasonable and customary. Grant Thornton's rates and policies are consistent with Grant Thornton's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, Grant Thornton's rates and policies are reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Grant Thornton's substantial experience with respect to Business Advisory Services, and (d) the nature and scope of work to be performed by Grant Thornton in these chapter 11 cases.

---

[4] The OCB Tax Services being provided by Grant Thornton prior to Grant Thornton's retention to perform the Initial Services were billed by Grant Thornton and paid by the Debtors in the ordinary course of business consistent with the Debtors' business practices, and as such were not prepared in accordance with, or otherwise subject to the Fee Guidelines. In light of Grant Thornton's subsequent retention in these bankruptcy cases pursuant to the Initial Retention Order and the First Supplemental Retention Order, out of an abundance of caution and for purposes of full transparency, Grant Thornton has been disclosing, and will continue to disclose, all invoices for OCB Tax Services that Grant Thornton incurs in its monthly fee statements and interim and final fee applications.

32. To the best of the Debtors' knowledge, neither Grant Thornton nor any Grant Thornton professional expected to assist the Debtors with these chapter 11 cases, has received or been promised any compensation for services rendered or to be rendered in any capacity in connection with the Debtors' chapter 11 cases, other than as permitted by the Bankruptcy Code. Grant Thornton has agreed not to share compensation received in connection with the Debtors' chapter 11 cases with any other person.

## No Duplication of Services

33. The Debtors intend that the Business Advisory Services will complement, and not duplicate, the services being rendered by any other professional retained in these chapter 11 cases. Grant Thornton understands that the Debtors have retained and may retain additional professionals during the term of their engagement and agrees to work cooperatively with such professionals to avoid any duplication of services. The Debtors firmly believe that Grant Thornton will provide these necessary services in a cost-effective, efficient, and expert manner.

## The Relief Requested Should Be Granted

34. Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a). Bankruptcy Rule 2014 requires that applications for retention of professionals include, among other things:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor,

>   creditors, any other party in interest, their respective attorneys and
>   accountants, the United States trustee, or any person employed in
>   the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

35. As required by Bankruptcy Rule 2014(a), the above-described facts set forth in this Second Supplemental Application and the information in the Exhibits attached hereto set forth: (a) the specific facts showing the necessity for Grant Thornton's expanded employment; (b) the reasons for the Debtors' selection of Grant Thornton as their business consultant in connection with these chapter 11 cases; (c) the professional services proposed to be provided by Grant Thornton; (d) the arrangement between the Debtors and Grant Thornton with respect to Grant Thornton's compensation, including information on hourly fees and the reasonableness thereof; and (e) to the best of the Debtors' knowledge, the extent of Grant Thornton's connections, if any, to certain parties in interest in these matters.

36. The Debtors respectfully submit that retaining and employing Grant Thornton pursuant to the terms of this Second Supplemental Application is necessary and in the best interests of the Debtors' estates and all parties in interest in these chapter 11 cases. Accordingly, Grant Thornton's retention by the Debtors should be approved.

37. The Debtors also believe that the employment of Grant Thornton effective September 27, 2022 to begin performing the Business Advisory Services is warranted under the circumstances of these chapter 11 cases so that Grant Thornton may be compensated for such services prior to entry of an order approving this Second Supplemental Application. This Second Supplemental Application was promptly filed following the execution of the BAS Agreement and the proposed retention of Grant Thornton for the Business Advisory Services. The Debtors have requested that Grant Thornton immediately begin providing the Business Advisory Services to ensure that the deadlines required by the Debtors to complete the work can be met. Further, no

party-in-interest will be prejudiced by authorizing Grant Thornton to begin the Business Advisory Services a few weeks prior to the entry of the Proposed Order because Grant Thornton will provide valuable services to the Debtors' estates in the interim period.

### Notice

38. Notice of this Second Supplemental Application will be provided to: (a) the entities on the Master Service List (as defined in the Case Management Order and available on the Debtors' case website at https://restructuring.primeclerk.com/purduepharma) and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

39. A copy of this Second Supplemental Application and any order approving it will also be made available on the Debtors' Case Information Website located at https://restructuring.primeclerk.com/purduepharma.  Based on the circumstances surrounding this Second Supplemental Application and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

### No Previous Request

40. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request entry of the Proposed Order and such other and further relief as is just.

October 4, 2022
New York, NY

**PURDUE PHARMA L.P.**
(for itself and on behalf of its affiliates that are debtors and debtors in possession)

*/s/ Terrence Ronan*
Terrence Ronan
Executive Vice President and Chief Financial Officer,
Purdue Pharma L.P.