**Exhibit A**

**Revised Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |

### ORDER APPROVING PROCEDURES FOR (I) THE SALE OF DE MINIMIS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (II) THE ABANDONMENT OF CERTAIN OF THE DEBTORS' PROPERTY

Upon the motion dated September 27, 2022 (the "**Motion**")[2] of Purdue Pharma L.P. ("**PPLP**") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), for authorization to establish procedures (the "**Procedures**") pursuant to (i) sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for the sale of certain *de minimis* assets arguably outside the ordinary course of the Debtors' businesses for a Sale Price of $5,000,000 or less (per transaction, or as otherwise noted herein) (the "**De Minimis Assets**") free and clear of liens, claims, interests, and encumbrances and (ii) sections 105(a) and 554(a) of the Bankruptcy Code and Bankruptcy Rule 6007 for the abandonment of certain of the De Minimis Assets, as more fully described in the Motion; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

§§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The relief requested in the Motion is hereby granted as set forth herein.

2. Subject to applicable federal, state and local public health and safety laws, the Procedures are hereby approved and may be implemented by the Debtors, in their sole discretion, in the Chapter 11 Cases.

3. Local Rule 6004-1 is hereby waived with respect to any sale of De Minimis Assets undertaken pursuant to the Procedures.

4. For purposes of the Procedures, the net benefit estimated to be realized by the Debtors' estates shall constitute the "**Sale Price**." Solely for the purposes of the Procedures and the calculation of the Sale Price, entry into a series of related sales within any given 30-day period between any of the Debtors, on the one hand, and any given counterparty and/or such counterparty's affiliate(s), on the other hand, shall be deemed to be entry into a single sale. The

net benefit is the amount of cash consideration plus the fair market value of non-cash consideration estimated to be received by the Debtors, plus, without duplication, the amount of any liabilities to be assumed by the purchaser (to the extent quantifiable or reasonably estimable, as determined by the Debtors in their sole discretion, upon reasonable consultation with the Official Committee of Unsecured Creditors, the Ad Hoc Committee, and the MSGE (collectively, the "Consultation Parties")), less expenses (which shall not include, for the avoidance of doubt, outside legal counsel fees and expenses) to be incurred in connection with the sale, offsets, or other deductions (to the extent quantifiable or reasonably estimable, as determined by the Debtors in their sole discretion, in reasonable consultation with the Consultation Parties). The Sale Price shall be determined without consideration as to whether the property for sale is free and clear of all liens, claims, interests and encumbrances.

5.  If the Sale Price of a De Minimis Asset is less than or equal to $1,000,000, the Debtors are hereby authorized to sell such De Minimis Assets without further notice to any party or hearing, provided that the Debtors will consult as reasonable with counsel for the Consultation Parties prior to any such sales regarding such non-ordinary course sales from time to time.

6.  If the Sale Price for the sale of a De Minimis Asset that the Debtors believe is arguably outside of the ordinary course of the Debtors' businesses is greater than $1,000,000 and less than or equal to $5,000,000, the following Procedures shall be followed:

   a.  The Debtors shall, following reasonable notice to and consultation with the Committee, the Ad Hoc Committee and the MSGE, file a notice with the Court, substantially in the form attached to the Motion as Exhibit B (the "**Sale Notice**"), specifying (i) the De Minimis Assets to be sold, (ii) the identity of the purchaser, (iii) any commissions to be paid to third parties (such as brokers) and (iv) the Proposed Sale Price.

   b.  The Debtors shall serve the Sale Notice only on the following parties: (i) the U.S. Trustee; (ii) counsel for the Committee, the Ad Hoc Committee and the MSGE (together with the U.S. Trustee, the "**Notice Parties**"); (iii) the counterparties to any agreement or contract to be sold pursuant to the Procedures, and, if a bonded agreement or

3

contract, the surety that issued such bond; (iv) any issuer of any license sought to be sold and if a license in connection with a bond that has been issued, the surety that issued such bond, and (v) any known affected person or entity with a particularized interest in the De Minimis Assets to be sold, including any known creditor asserting a lien, claim, interest, or encumbrance on such De Minimis Assets.

      c.      Parties in interest will have seven days after the service of a Sale Notice (the "**Sale Objection Deadline**") to object to a proposed sale of De Minimis Assets. If any party in interest wishes to object to a proposed sale of De Minimis Assets, such party must (i) file a written objection (each, an "**Objection**") with the Court on or before the Sale Objection Deadline and (ii) serve the Objection on the Debtors and each of the other Notice Parties so that it is actually received by such parties on or before the Sale Objection Deadline. Any such Objection shall identify, with specificity, the basis for such Objection. If an Objection is timely received and filed and cannot be resolved by the Debtors (in their sole discretion, in consultation with the Consultation Parties) and the objecting parties, the De Minimis Asset that is the subject of the Objection will only be sold or transferred upon either submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or upon further order of the Court; *provided*, *however*, that any De Minimis Asset set forth in the Sale Notice that is not the subject of an Objection may be immediately sold in accordance with paragraph (d).

      d.      After the expiration of the Sale Objection Deadline, if no written objections are timely filed and served or if all written objections are resolved by the Debtors and the objecting parties, the Debtors may immediately sell the De Minimis Assets listed in the Sale Notice and take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction and obtain the sale proceeds.

7.      If the Sale Price for the sale of a De Minimis Asset that the Debtors believe is arguably outside of the ordinary course of the Debtors' businesses is greater than $5,000,000, the Debtors shall file a motion with the Court requesting approval of the sale pursuant to section 363 of the Bankruptcy Code, among other applicable provisions.

8.      The Debtors shall be permitted to compensate any broker engaged by the Debtors in connection with any sale or attempted sale of De Minimis Assets; *provided, however,* that if an Objection to the payment of any broker's fees is timely received and filed by the Sale Objection Deadline, then the portion of such broker's fees to which the Objection is directed shall not be paid until such Objection is consensually resolved or until the Court approves such payment. For the avoidance of doubt, the Debtors shall disclose to the Consultation Parties the name of any proposed

4

broker prior to entering into any transaction whereby such broker's fee may come due, and shall provide the Consultation Parties sufficient time to review the identity thereof.

9. The Procedures satisfy section 363(f) of the Bankruptcy Code and any De Minimis Asset sold pursuant to the Procedures shall be free and clear of all liens, claims, interests and encumbrances.

10. Any holder of a lien, claim, interest, or encumbrance on any De Minimis Assets to be sold, with a Sale Price greater than $1,000,000 and less than or equal to $5,000,000, will receive a Sale Notice and will have an opportunity to object to any sale in which they claim an interest. If a holder of a lien, claim, interest, or encumbrance receives the Sale Notice and does not object within the prescribed time period, then such holder will be deemed to have consented to the proposed sale and the property may then be sold free and clear of the holder's interests pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims, interests, or encumbrances to be, at the Debtors' sole discretion, either (a) satisfied from the proceeds of the sale or (b) transferred and attached to the net sale proceeds in the same order of priority that such liens, claims, interests, or encumbrances had on the De Minimis Assets sold.

11. Those who purchase De Minimis Assets in accordance with the Procedures shall be afforded the protections under section 363(m) of the Bankruptcy Code. Nothing herein shall authorize the sale of De Minimis Assets to any insiders (as defined in section 101 of the Bankruptcy Code) nor to any individual who is part of, or to any direct or indirect affiliate of, the Sackler family or any of their direct or indirect affiliates.

12. For De Minimis Assets to be abandoned that the Debtors believe, as calculated within the Debtors' reasonable discretion, have a value of less than or equal to $1,000,000, the Debtors will consult as reasonable with counsel for the Consultation Parties (in advance of any

proposed abandonment) regarding such abandonment and shall serve notice on the person or entity to whom the personal property is to be abandoned and any person or entity known to the Debtors as having an interest in the De Minimis Assets to be abandoned, including any known creditor asserting a lien, claim, interest, or encumbrance on the De Minimis Assets to be abandoned.  Solely for the purposes of the Procedures and the estimation of gross proceeds, entry into a series of related abandonments within any given 30-day period to any given counterparty and/or such counterparty's affiliate(s) shall be deemed a single abandonment.  Such notice shall be served ten business days before such De Minimis Assets are abandoned.

13. For De Minimis Assets to be abandoned that the Debtors believe, as calculated within the Debtors' reasonable discretion, have a value of greater than $1,000,000 and less than or equal to $5,000,000, the following Procedures shall be followed:

    a. The Debtors shall, following reasonable notice to and consultation with the Committee, the Ad Hoc Committee and the MSGE, file a notice with the Court, substantially in the form attached to the Motion as Exhibit C (the "**Abandonment Notice**"), specifying (i) the property to be abandoned, including the projected book value of the assets being abandoned as reflected in the Debtors' books and records, if reasonably ascertainable, (ii) the reason for the abandonment, (iii) the parties known to the Debtors as having an interest in the property to be abandoned, and (iv) the entity to which the personal property is to be abandoned.

    b. The Debtors shall serve the Abandonment Notice only on the following parties: (i) the Notice Parties, (ii) any person or entity known to the Debtors as having an interest in the De Minimis Asset to be abandoned, including any known creditor asserting a lien, claim, interest, or encumbrance on the De Minimis Asset to be abandoned, and (iii) the entity to which the personal property is to be abandoned.

    c. Parties in interest will have seven days after the service of an Abandonment Notice (the "**Abandonment Objection Deadline**") to object to a proposed abandonment of De Minimis Assets. If any party in interest wishes to object to a proposed abandonment of De Minimis Assets, such party must (i) file an Objection with the Court on or before the Abandonment Objection Deadline and (ii) serve the Objection on the Debtors and each of the other Notice Parties so that it is actually received by such parties on or before the Abandonment Objection Deadline. Any such Objection shall identify, with specificity, the basis for such Objection. If an Objection is timely received and filed and cannot be resolved by the Debtors and the objecting parties, the De Minimis Asset that is the subject

6

of the Objection will only be abandoned upon either submission of a consensual form of order resolving the objection as between the Debtors and the objecting party or upon further order of the Court; *provided*, *however*, that any De Minimis Asset set forth in the applicable Abandonment Notice that is not the subject of an Objection may immediately be abandoned in accordance with paragraph (d).

      d.      After the expiration of the Abandonment Objection Deadline, if no written objections are timely filed and served or if all written objections are resolved by the Debtors and the objecting parties, the Debtors may immediately abandon the De Minimis Assets listed in the Abandonment Notice and take any actions and execute any agreements or other documentation that are necessary or desirable to abandon the subject property.

14.      For De Minimis Assets to be abandoned that the Debtors believe, as calculated within the Debtors' reasonable discretion, have a value of greater than $5,000,000, the Debtors shall file a motion with the Court requesting approval of the abandonment pursuant to section 554 of the Bankruptcy Code, among other provisions.

15.      The Debtors shall file with the Court a written report within thirty days after the end of each calendar month (to the extent De Minimis Assets were sold, transferred or abandoned for the relevant month) concerning any sales, transfers or abandonments effectuated during such calendar month, which shall include the names of the purchasing parties or recipient parties, if any, and the types and amounts of the transactions; *provided* that the Debtors shall have no further obligations to provide such monthly reports following confirmation of a chapter 11 plan in the Debtors' chapter 11 cases.

16.      Notwithstanding anything to the contrary in this Order or the Procedures, none of the Debtors' surety bonds issued on behalf of the Debtors by Westchester Fire Insurance Company and/or it past, present or future U.S.-based affiliated sureties (each as a surety in its role as an issuer of bonds, individually and collectively referred to herein as the "**Surety**"), and/or related agreements shall be sold, assigned, or otherwise transferred pursuant to the Procedures except in compliance with the terms of such surety bonds, any related agreements, and/or applicable

7

nonbankruptcy law. Further, to the extent any surety bonds and/or related agreements (and/or any agreements or contracts bonded by the Surety), are proposed to be sold pursuant to the Procedures, in accordance with the above, the Surety will be provided notice of such sale, and the opportunity to object pursuant to the procedures set forth in paragraph 6, no matter the sale price, as well as in connection with any sale described in paragraph 17 hereof.

17.     Notwithstanding the foregoing, sales or transfers of De Minimis Assets under the Procedures that are subject to a valid and perfected lien or set off and/or recoupment rights of any obligee or beneficiary of any surety bond offered on behalf of the Debtors that has been asserted prior to or at the time of the proposed sale of such assets, or of any bonded contract or of any license in connection with which a bond has been issued, shall be subject to the procedures set forth in paragraph 6, no matter the sale price.

18.     Notwithstanding anything to the contrary in this Order or the Procedures, none of the Debtors' insurance policies and/or any agreements related thereto, including, but not limited to, any claims handling service agreements, shall be abandoned, sold, assigned, or otherwise transferred pursuant to any sale or abandonment of the De Minimis Assets under the Procedures except in compliance with the terms of such insurance policies, any related agreements (including, as applicable, any claims handling service agreements), and/or applicable non-bankruptcy law.

19.     The Debtors shall not abandon De Minimis Assets pursuant to the Procedures where the abandonment would pose an environmental hazard or where a serious risk to the public is likely to result. The Debtors shall not sell or abandon any intellectual property, technology or similar De Minimis Assets that would be expected to be used to establish or support any purchaser's opioid business (and the Debtors shall not propose to sell or abandon any De Minimis Assets to any entities that are or have been defendants in the nationwide opioid MDL litigation).

20. Nothing herein shall impair the Debtors' ability to conduct their businesses in the ordinary course of business without seeking approval of the Court.

21. The Procedures satisfy Bankruptcy Rules 2002 and 6007.

22. Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

23. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

24. Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

25. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: White Plains, New York
_____, 2022

                                                HONORABLE SEAN H. LANE
                                                UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

**Notice of Sale**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF SALE OF CERTAIN OF THE DEBTORS' DE MINIMIS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that, on [_],2022, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered the attached order (the "**Order**") granting approval of certain procedures (the "**Procedures**") for (i) the sale of certain assets ("**De Minimis Assets**"), free and clear of all liens, claims and encumbrances (collectively, "**Liens**") and (ii) the abandonment of certain De Minimis Assets [ECF. No. [●]] in the chapter 11 cases of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, unless a written objection ("**Objection**") is filed with the Court and served in the manner provided for in the Order by _____ _____, 2022, the De Minimis Assets listed on Appendix A attached hereto will be sold free and clear of all liens, claims, encumbrances, or interests pursuant to, among other provisions, section 363 of title 11 of the United States Code, in accordance with the Order.

**PLEASE TAKE FURTHER NOTICE** that, if an Objection is timely filed and served in accordance with the Order, the Debtors and the objecting party will use good faith efforts to resolve the Objection. If the Debtors and the objecting party are unable to consensually resolve the Objection, the Debtors shall not proceed with the sale of the De Minimis Assets that are the subject of the Objection pursuant to the Procedures, but may seek Court approval of the proposed transaction.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Dated: [●], 2022
    New York, New York

By: /s/ [DRAFT]
    Eli J. Vonnegut

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**APPENDIX A**

| Asset(s) to be Sold | Name and Address of Purchaser | Proposed Purchase Price and Commissions to Third Parties | Location of Assets to be Sold | Location of Sale (if different than location of Assets) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## **EXHIBIT C**

**Notice of Abandonment**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF ABANDONMENT OF CERTAIN OF THE DEBTORS' DE MINIMIS ASSETS PURSUANT TO SECTION 554(a) OF THE BANKRUPTCY CODE

       **PLEASE TAKE NOTICE** that, on [_], 2022, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered the attached order (the "**Order**") granting approval of certain procedures (the "**Procedures**") for (i) the sale of certain assets ("**De Minimis Assets**"), free and clear of all liens, claims and encumbrances (collectively, "**Liens**") and (ii) the abandonment of certain De Minimis Assets [ECF. No. [●]] in the chapter 11 cases of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**")).

       **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Order, unless a written objection ("**Objection**") is filed with the Court and served in the manner required by the Order by _____ _____, 2022, the De Minimis Assets listed on Appendix A attached hereto will be abandoned pursuant to, among other provisions, section 554(a) of title 11 of the United States Code, in accordance with the Order.

       **PLEASE TAKE FURTHER NOTICE** that, if an Objection is timely filed and served in accordance with the Order, the Debtors and the objecting party will use good faith efforts to resolve the Objection. If the Debtors and the objecting party are unable to consensually resolve the Objection, the Debtors shall not proceed with the abandonment

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

2

of the De Minimis Assets that are the subject of the Objection pursuant to the Procedures, but may seek Court approval of the proposed abandonment.

Dated: [•], 2022
      New York, New York

By:  /s/ [DRAFT]
     Eli J. Vonnegut

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

3

**APPENDIX A**

| Property to be Abandoned | Book Value of Property to be Abandoned | Reason for Abandonment | Known Parties Asserting an Interest in Property Proposed to be Abandoned | Name and Address of Entity to Which Property is to be Abandoned | Location of Property to be Abandoned |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |