DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (SHL)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DEBTORS' AND THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' JOINT RESPONSE TO
MOTION TO FILE PROOF OF CLAIM AFTER CLAIMS BAR DATE**

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

in these proceedings (collectively, the "**Debtors**") and the Official Committee of Unsecured

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Creditors (the "**Creditors' Committee**") submit this joint response to the motion to file a proof of claim after the claims bar date by Edward N. Whitman ("**Mr. Whitman**") [Dkt. No. 5095] (the "**Motion**"), and respectfully state as follows:

1.      Mr. Whitman, previously incarcerated, requests that this Court extend the bar date to allow him to file a late proof of claim.[2] (Mot. at 1.)  Mr. Whitman asserts: "[d]ue [t]o [t]he [p]andemic I have had no access to the law library, visitation and I have no resources at all[,] I have been [i]ncarcerated [t]hrough [t]his pandemic." (*Id.*)  Mr. Whitman further asserts that he "ha[s] been incarcerated through this pandemic" and was only recently released on September 9, 2022. (*Id.*)

2.      After careful consideration, the Debtors and the Creditors' Committee request that the Court enter the proposed order attached hereto as <u>Exhibit A</u>, postponing the Motion until the first omnibus hearing held at least 21 days after entry by the Court of a final order approving the Debtors' chapter 11 plan of reorganization, as may be modified.  The Debtors and the Creditors' Committee believe that this Motion is substantially similar to the prior late claim motions that this Court has postponed [Dkt. No. 5030], and that applying the same approach to this Motion will allow the Court to make an informed decision on the Motion, based, in part, on the number of similarly-situated late claim movants who have sought to assert late claims (i.e., whether allowing such claims as timely would be akin to "opening the floodgates").

3.      Courts have discretion to allow a late proof of claim upon motion of a late-claimant showing "excusable neglect."  Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to

---

[2] Mr. Whitman filed a proof of claim in March 2022.

comply with an earlier deadline 'was the result of excusable neglect'"). The burden of meeting the *Pioneer* test for excusable neglect falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" and that the neglect was "excusable." *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010). A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

4.    The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11 (Drain,

3

J.).)  Although courts rarely extend the bar date for late-claimants, for the reasons set forth

below, the Debtors and the Creditors' Committee believe there is a sufficient basis to defer a

decision on the Motion until the universe of such potential late claims can be more finally

determined.

5.    With respect to the most important factor—factor 3, the reason for the delay—

diligence performed by counsel to the Creditors' Committee regarding the individualized

assertions made in the Motion confirmed that Mr. Whitman was incarcerated in the Washington

State Prison system from November 26, 2019 to September 13, 2022, well before and after the

bar date period. (*Third Suppl. Decl. of Jeanne C. Finegan* ¶ 4 (Aug. 5, 2021), Dkt. No. 3403

("**Finegan Decl.**") (noting that the Debtors' noticing efforts began on February 24, 2020, and

continued through July 30, 2020).)  Although incarceration, in itself, is not sufficient to justify

the filing of a late claim, *see, e.g.*, *In re Motors Liquidation Co.*, 599 B.R. 706, 716 (S.D.N.Y.

2019) (noting that neither mistake of law nor incarceration constitutes "excusable neglect"), Mr.

Whitman asserts that due to the COVID-19 pandemic, he was not permitted visitation or access

to other resources, including the law library.  (Mot. at 1.)  This Court has previously granted the

late claim motions of incarcerated individuals who made similar assertions. (*See, e.g*., Dkt. Nos.

4925, 4860, 4714, 4592, 4591, 4590, 4367, 4164, 3772 (Drain, J.).)

6.    Although close, *Pioneer* factors one and two—prejudice to the Debtors and

impact on the chapter 11 cases due to the length of delay—also weigh in favor of postponing a

decision on the Motion.  The Debtors and the Creditors' Committee are guided by the Court's

remarks at the May 2022 omnibus hearing that "we may be reaching th[e] point going forward

[where] it may be too late to be filing [] a [late claim] motion even if someone did[] [not] have

notice before the bar date back in July of 2020."  (May 18, 2022 Omnibus Hr'g Tr. 41:5 (Drain,

J.).)  However, the Debtors and the Creditors' Committee believe that deferring a decision on the Motion until the first omnibus hearing held at least 21 days after entry by the Court of a final order approving the Debtors' chapter 11 plan of reorganization, as may be modified, is reasonable and strikes the right balance between treating all similarly-situated incarcerated movants consistently (*cf.* Modified Bench Ruling on Request for Confirmation of Eleventh Am. Joint Ch. 11 Plan, at 6 (Sept. 17, 2021), Dkt. No. 3786 (holding that "[t]he notice program was in large part effective in reaching prisons . . . [b]ut [noting that] it is possible that because of prison regulations and at times the lack of access to TV, radio and other media, prisoners may not have received the same high level of notice of these cases, the bar date, and the Debtors' request to confirm the plan") (Drain, J.)), and not encouraging additional latecomers.

7.    Importantly, consistent with this Court's remarks at the August 2022 omnibus hearing, postponing consideration of the Motion "will allow the Debtors, the Creditors Committee, and . . . also [the Court] to make the most informed decision . . . about whether to grant a late filed claim and to what extent and what are the principles and reasons for . . . granting them or denying them."  (Aug 17, 2022 Omnibus Hr'g Tr. 23:22-24:2 (Lane, J.).) In particular, it will allow all to evaluate whether and to what extent the Court's consideration to allow as timely any additional late claims held by incarcerated individuals has, indeed, "open[ed] . . . the 'floodgates' to similar claims" and whether potential claimants were, in fact, "prompted to file late claims in the wake of a ruling in [the movant]'s favor."  *In re Enron,* 419 F.3d at 132; *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *see also In re R.C. Diocese of Syracuse, N.Y.*, 638 B.R. 33, 39 (Bankr. N.D.N.Y. 2022) (granting late claim

motion where "[t]he court, as the gatekeeper, [could] use th[e] [statutory and common law safeguards of Rule 9006(b)(1) and the *Pioneer* factors] to prevent the floodgates from opening and hindering Debtor in its reorganization efforts."). In other words, postponing will allow the Court to utilize its gatekeeping function to ensure that boundless latecomers do not unduly "squeak under the [l]ine" now that it has been over two years since the July 30, 2020 bar date. (*See* May 18, 2022 Omnibus Hr'g Tr. 41:5-10 (Drain, J.).) Postponing consideration of the Motion also will reduce the costs to the estates by allowing the Debtors, the Creditors Committee, and the Court to avoid piecemeal consideration of substantially similar motions. *See In Re Motors Liquidation Co.*, 598 B.R. 744, 759 (S.D.N.Y. 2019) (explaining that [t]he mere prospect of litigating additional motions to file post-bar date proofs of claim is enough to prejudice the debtor," and "[t]his fear of rampant late-claims litigation is especially germane in a case like this one where the universe of potential creditors is practically limitless") (citing *In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995). This Court has recently postponed a decision on two late claim motions filed by similarly situation claimants for these same reasons. (*See* Order Postponing Decision on Late Claim Motions (Aug. 22, 2022), Dkt. No. 5030.)

8.     Finally, with respect to the last *Pioneer* factor, neither the Debtors nor the Creditors' Committee have any reason to believe that Mr. Whitman has not made his late claim request in good faith.[3]

9.     Accordingly, for the reasons set forth above, the Debtors and the Creditors' Committee request that the Court postpone consideration of the Motion until the first omnibus hearing held at least 21 days after entry by the Court of a final order approving the Debtors'

---

[3] The information provided to the Creditors' Committee by the Washington State Prison system is consistent with the assertions in the Motion regarding the timing of Mr. Whitman's incarceration.

chapter 11 plan of reorganization, as may be modified.    The Debtors and the Creditors'

Committee have consulted with counsel to the Ad Hoc Group of Individual Victims (the "**PI**

**Group**") and understand that the PI Group does not oppose the relief sought in the proposed

order attached hereto as <u>Exhibit A</u>, and as of the time of the filing of this response, no objections

to the Motion have been filed.

[*Remainder of page intentionally left blank*]

Dated:  October 18, 2022
        New York, New York

By: /s/ *Arik Preis*
AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  (212) 872-1000
Arik Preis
Mitchell Hurley
Sara L. Brauner

*Counsel to the Official Committee of
Unsecured Creditors of Purdue Pharma
L.P.,* et al.

By: /s/ *James I. McClammy*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors and Debtors in
Possession*