Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-shl

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    PURDUE PHARMA L.P.,

8            Debtor.

9    - - - - - - - - - - - - - - - - - - - - - - - - - x

10   Adv. Case No. 21-07088-shl

11   - - - - - - - - - - - - - - - - - - - - - - - - - x

12   BRIDGES et al.,

13                Plaintiffs,

14           v.

15   PURDUE PHARMA L.P., et al.,

16                Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - x

18   Adv. Case No. 22-07029-shl

19   - - - - - - - - - - - - - - - - - - - - - - - - - x

20   ASCENT PHARMACEUTICALS, INC.,

21                Plaintiff,

22           v.

23   PURDUE PHARMA L.P., et al.,

24                Defendants.

25   - - - - - - - - - - - - - - - - - - - - - - - - - x

Page 2

1                    United States Bankruptcy Court

2                    300 Quarropas Street, Room 248

3                    White Plains, NY 10601

4

5                    October 25, 2022

6                    11:03 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   B E F O R E :

22   HON SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO: A. VARGAS

Page 3

1    HEARING re Omnibus Hearing

2

3    HEARING re Doc. #5100 Motion For Approval Of Procedures For

4    (I) The Sale Of De Minimis Assets Free And Clear Of Liens,

5    Claims, Interests, And Encumbrances And (II) The Abandonment

6    Of Certain Of The Debtors Property

7

8    HEARING re Doc. #5095 Motion To File Proof of Claim After

9    Claims Bar Date Re: Claim 628995 Filed By Edward N. Whitman

10

11    HEARING re Adversary proceeding: 21-07088-shl Bridges et al

12    v. Purdue Pharma L.P. et al Status Conference

13

14    HEARING re Adversary proceeding: 22-07029-shl Ascent

15    Pharmaceuticals, Inc. v. Purdue Pharma L.P. et al

16    Status Conference: (Argument Scheduled On 12/6/2022)

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

```
 1   A P P E A R A N C E S :

 2

 3   DAVIS POLK & WARDWELL LLP

 4        Attorneys for the Debtors

 5        450 Lexington Avenue

 6        New York, NY 10017

 7

 8   BY:  MARSHALL HUEBNER

 9        CHRISTOPHER ROBERTSON

10        ESTHER TOWNES

11        BENJAMIN S. KAMINETZKY

12

13   AKIN GUMP STRAUSS HAUER & FELD LLP

14        Attorneys for the Official Committee

15        One Bryant Park

16        New York, NY 10036

17

18   BY:  ARIK PREIS

19

20   FRANK OZMENT ATTORNEY AT LAW, LLC

21        Attorneys for Stacey Bridges

22        217 Country Club Par, #501

23        Birmingham, NY 35213

24

25   BY:  JAMES FRANKLIN OZMENT
```

```
                                                    Page 5
 1   US ATTORNEY'S OFFICE

 2        Attorney for the United States

 3        86 Chambers Street, 3rd Floor

 4        New York, NY 10007

 5

 6   BY:  LAWRENCE FOGELMAN

 7

 8   SEWARD KISSEL LLP

 9        Attorneys for Ascent Pharmaceuticals, Inc.

10        One Battery Park Plaza

11        New York, NY 10004

12

13   BY:  BRUCE G. PAULSEN

14        ROBERT GAYDA

15

16   MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

17        Attorneys for PF Labs and

18        Purdue Pharma Technologies Inc

19        One Financial Center

20        Boston, MA 02111

21

22   BY:  JOHN C. DOUGHERTY

23

24   ALSO PRESENT TELEPHONICALLY:

25   ROXANA ALEALI
```

Page 6

1   MICHAEL ATKINSON

2   JASMINE BALL

3   KATHRYN BENEDICT

4   DAVID E. BLABEY

5   SARA BRAUNER

6   DANIEL CONNELLY

7   DYLAN CONSLA

8   JABRISKA COTTON

9   KENNETH H. ECKSTEIN

10   CAROLINE GANGE

11   MATTHEW J. GOLD

12   DEUNG HAN

13   MITCHELL HURLEY

14   GREGORY JOSEPH

15   MARC KESSLEMAN

16   DARREN S. KLEIN

17   JOHN W. KLEIN

18   ANN KRAMER

19   ALEXANDER LEES

20   MARA LEVENTHAL

21   JEFFREY A. LIESEMER

22   EDAN LISOVICZ

23   JAMES L. MCCLAMMY

24   CARRIE MCGAHA

25   SHANNON M. MCNULTY

Page 7

1    KEVIN MCKENNEY

2    MICHELE MEISES

3    STEPHEN MILLER

4    MAURA KATHLEEN MONAGHAN

5    GEORGE O'CONNOR

6    MICHAEL PATRICK O'NEIL

7    BRUCE PAULSEN

8    STEVEN S. POHL

9    KATHERINE PORTER

10   RACHAEL RINGER

11   JEFFREY J. ROSEN

12   JAMES SALWEN

13   ALEC SCHWARTZ

14   PAUL KENAN SCHWARTZBERG

15   J. CHRISTOPHER SHORE

16   MARC F. SKAPOF

17   JOSEPH SORKIN

18   ERIC STODOLA

19   MARC JOSEPH TOBAK

20   ALLEN J. UNDERWOOD

21   GERARD UZZI

22   ELI J. VONNEGUT

23   THEODORE WELLS

24   CARRIE LYNN L. MCGAHA

25   PAUL BENJAMIN KOEPP

Page 8

1  CATHERINE V. LOTEMPIO

2  ANDREW MATOTT

3  BROOKS BARKER

4  GABRIELLE BECKER

5  BRIANNA B. BILTER

6  MAGALI GIDDENS

7  UDAY GORREPATI

8  ROCHELLE GUITON

9  PEJMAN J. HAMIDI

10  TAYLOR HARRISON

11  KAREN LEUNG

12  KATHRYN SOMERS

13  KELLY M. WILLIAMS-CORRIGAN

14  CYNTHIA L. ZEEDYK

15

16

17

18

19

20

21

22

23

24

25

Page 9

1                    P R O C E E D I N G S

2              THE COURT:  Good morning.  This is Judge Sean Lane

3     in the United States Bankruptcy Court for the Southern

4     District of New York and we're here for the Purdue Pharma LP

5     Chapter 11 case for a number of matters that are listed in

6     the agenda that's filed on docket and in the amended agenda

7     that was filed on the docket at Docket No. 5192.

8              I, given the length of the list of appearances, I

9     will call out certain folks who I'm pretty sure are here and

10    then I'll ask for other appearances.  If I don't actually

11    call you out, please don't take offense.  It's just I'm

12    trying not to call out multiple pages worth of appearances,

13    many of whom are not actually here to be heard on the record

14    but rather are listening in.

15             So with that, we will start with appearances.  Let

16    me find out who's here on behalf of the Debtors.

17             MR. HUEBNER:  Good morning, Your Honor.  Marshall

18    Huebner of Davis Polk for the Debtors.  Several of my

19    colleagues are on with respect to different matters that are

20    on today's agenda and I'll turn the podium over to them one

21    at a time as appropriate.

22             THE COURT:  All right.  Good morning to you.  And

23    on behalf of the Official Committee?

24             MR. PREIS:  Good morning, Your Honor.  Arik Preis

25    from Akin Gump Strauss Hauer and Feld on behalf of the

1    Official Committee.

2            THE COURT:  All right.  And is there someone here

3    on behalf of Edward Whitman, who's matter is on the agenda

4    for today?  All right, there's no one here for Edward

5    Whitman.  And then let me get appearances for folks who are

6    here for the adversary proceedings, the first of which is

7    the adversary proceeding involving Stacy Bridges as a

8    plaintiff.  Let me find out who's here for the plaintiffs in

9    that case.

10           MR. OZMENT:  Frank Ozment and I am here for Stacey

11   Bridges and Creighton Bloyd and I'm struggling to get my

12   video camera working.

13           THE COURT:  All right.  Sorry for your technical

14   difficulties, but I will say I'm nothing in particular to

15   look at so as long as we can hear you and you can hear us,

16   we will be good to go.  I think you just popped up.

17           All right.  And on behalf of the defendants in

18   that adversary, the United States.

19           MR. FOGELMAN:  Good morning, Your Honor.  Larry

20   Fogelman from the U.S. Attorney's Office for the Southern

21   District of New York on behalf of the United States.

22           THE COURT:  Good morning.  And then there's

23   another adversary proceeding that's on for status conference

24   involving Ascent Pharmaceuticals.  Let me find out who's

25   here on behalf of Ascent.

1            MR. PAULSEN:  Your Honor, Bruce Paulsen from

2     Seward and Kissel.  With me is Robert Gayda.

3            THE COURT:  All right.  Good morning.  So with

4     that, I will turn to the -- open the podium for other folks

5     who want to make an appearance for today's hearing, so let

6     me get those appearances.

7            MR. DOUGHERTY:  Good morning, Your Honor.  It's

8     John Dougherty at Mintz Levin.  In connection with the so-

9     called Ascent adversary proceeding, I represent two non-

10    debtor defendants in that proceeding, so we're here if

11    needed.

12            THE COURT:  All right.  Good morning.   Good to

13    have you.  All right.  Any other appearances?  All right,

14    I'm not hearing any.  I will say, I did notice that there

15    was at least signed up on the appearance sheet Carrie McGaha

16    or McGaha.  Sorry if I'm mispronouncing that who's here for

17    a late filed motion, I think.  I had understood that was

18    adjourned from today.  I only mention it just because I want

19    to make sure somebody isn't appearing for that under the

20    understanding it's going forward when in fact it's been

21    adjourned.  So let me just ask Debtors' counsel, maybe just

22    to confirm that I've got my facts right about the

23    adjournment.

24            MR. McCLAMMY:  Good morning, Your Honor.   Jim

25    McClammy for the Debtors.  That is correct.  That has been

Page 12

1    adjourned to, I believe, the November omnibus hearing.

2              THE COURT:  All right.  And I assume that

3    adjournment was communicated to the other side?

4              MR. McCLAMMY:  Yes.  Yes.  We sent it both by mail

5    and by email.

6              THE COURT:  All right.  So -- and let me ask if

7    there's anyone here for that matter, just in abundance of

8    caution so they don't sit through a lengthy hearing.  All

9    right --

10             MS. McGAHA:  Your Honor --

11             THE COURT:  Yes.

12             MS. McGAHA:  This is Carrie McGaha and I am here.

13   I am just present.  I am not wanting to talk about that.

14   I'm waiting for the November 16th, but I am here just to

15   keep up.

16             THE COURT:  All right.  You're here nonetheless,

17   but you understand that that matter's been adjourned?

18             MS. McGAHA:  Yes, Your Honor.  I do.  Thank you

19   very much.

20             THE COURT:  Okay, great.  Just -- always good to

21   clarify these things in case there's any risk of confusion.

22   All right.  So one last call for any other appearances this

23   morning.  All right.  With that, I will turn it over to

24   Debtors' counsel to walk us through the agenda.  I have the

25   amended agenda in front of me and take it away, counsel.

1          MR. HUEBNER:  So good morning, Your Honor.  We

2    propose to go in order right down the agenda.  Addition, I

3    think Your Honor had some questions on the de minimis asset

4    sales motion so at chambers' request we added it and Mr.

5    Robertson will be prepared to address those, but I think

6    there's one contested matter and two status conferences and

7    that is it.

8          So we're not as good as last month where we

9    canceled the hearing entirely, which is always our

10   preference, to have everything resolved and save everybody

11   burden and the estate the expense of having a hearing at

12   all, but this one hopefully will be relatively

13   straightforward.  So unless Your Honor has any questions for

14   me, I have nothing to report.  We are continuing to

15   (indiscernible) Second Circuit and I will propose to turn it

16   over to Mr. Robertson to assist with the de minimis asset

17   sales.

18          THE COURT:  All right.  Good to see Mr. Robertson.

19   Happy to do that.  And so I'll start off on number one just

20   because I think this was at my request and this is sort of a

21   theme for today, I think.  This kind of de minimis asset

22   sale motion is something that is filed in large cases.  The

23   motion itself looks perfectly fine and appropriate terms of

24   the notices that you're going to provide and how you're

25   going to handle different values and what's going to happen

Page 14

1   if somebody gets notice and objects and who gets notice and

2   all that good stuff.  So the reason I wanted to put it on is

3   just given the posture of the case.

4           One is, this is obviously an unusual case in terms

5   of the number of folks who have a very profound interest in

6   it for lots of good reasons.  And two, given the procedural

7   posture, where we find ourselves, and I just wanted to sort

8   of have a discussion on the record of this rather than deal

9   with it on presentment just so that you could address the

10  question as to the appropriateness of this motion at this

11  time under these particular circumstances in the case.

12          I suspect I have an idea of what you're going to

13  say, but again, I think in the interest of transparency and

14  process, I thought it was appropriate to just have that

15  discussion on the record.

16          MR. ROBERTSON:  Absolutely.  This is, for the

17  record, Christopher Robertson, Davis Polk and Wardwell.  Can

18  I be heard clearly in the Court?

19          THE COURT:  Yeah, please.

20          MR. ROBERTSON:  Great.  So the reason why we're

21  bringing this motion at this time primarily is to address

22  the sale of certain equipment that is currently at the

23  Debtor Rhodes Pharma's location in Coventry, Rhode Island.

24  So you may recall there was formerly an API manufacturing

25  facility that a separate Debtor, Rhodes Tech had up in

Page 15

1    Coventry.  That plan was sold last year.  Rhodes Pharma has

2    maintained a presence in Coventry in a separate building on

3    the same, you know, premises.

4         During the transition activities, during that

5    Rhodes Tech sale, that process is almost over and Rhodes

6    Pharma is now in the process of moving its headquarters and

7    operations down to North Carolina where the Debtors' other

8    operations are.  Some equipment that's up in Rhode Island is

9    not being transferred down to North Carolina.  The value is

10   under a million dollars, about $400,000 worth of equipment.

11        Arguably, because this is a headquarters

12   transition and some operations are being moved, it's not --

13   it might not be ordinary course and sort of given that, we

14   thought it was appropriate to get court approval for the

15   transaction and we thought that doing a procedure motion

16   such as this was the right way to go, one because it allows

17   the company to then divest any other sort of small ancillary

18   equipment or otherwise that's up in Rhode Island that might

19   not be covered by the initial motion or sold to a different

20   party or something like that.

21        That's one.  And then on a go-forward basis, you

22   know, as the company continues to operate in bankruptcy,

23   there may be other small de minimis non-core assets the

24   company wants to, you know, sell in the best interest of the

25   estate.  To the extent those transactions arise, these

Page 16

1    procedures would also allow the company to do that in a

2    streamlined manner, an efficient manner.  I think it was

3    clear in the motion we clarified again in the procedures,

4    the amended procedures we filed on October 10th that these

5    sales are not sales of, you know, the core branded opioid

6    franchise.

7            These are non-core, non-opioid de minimis asset

8    sales or potentially abandonments.  And so for that reason,

9    we thought it was appropriate to bring the motion at this

10   time, understanding that this obviously -- we've been in

11   bankruptcy for a while without this motion, but we think it

12   is helpful at this juncture.

13           THE COURT:  All right.  So as these motions are

14   often, they're really in the interest of efficiency to allow

15   for the disposition of these kinds of assets and from what

16   I'm hearing, it seems pretty clear that regardless of how

17   the appeal is resolved that this kind of motion, these kinds

18   of procedures will be helpful to the estate in any

19   circumstance.

20           MR. ROBERTSON:  That's correct, Your Honor.

21           THE COURT:  All right.  Thank you very much.  I

22   appreciate that.  I thought that's what you were going to

23   say but you provided some additional detail and again, I

24   just think it's helpful to get these things -- have an open

25   discussion about it.  So with that, unless anybody else

Page 17

1    wishes to be heard on the de minimis asset sale motion,

2    which was on for presentment, there were no objections, and

3    again, this was put on the agenda at my request, and thank

4    you for that.  I'm happy to approve that motion and will

5    enter the order.  I didn't have any problem with the order.

6    It looked to be a fairly standard order for this kind of a

7    motion and so with that, I think we can move on to the next

8    matter.

9              MR. HUEBNER:  Your Honor, one small point to make

10   because it actually, it turns out, a thread that's running

11   through several items today.  Obviously, we're all very well

12   aware that we're waiting for the Second Circuit and so in

13   general our philosophy in working with our constituencies on

14   this is that we only bring things to the Court that make

15   sense, essentially whether or not the current plan is going

16   to move forward and so anything that is in connection with

17   implementation of the specific plan that is currently frozen

18   on appeal, obviously, (indiscernible) single thing that

19   appeared on the docket (indiscernible) it was our view,

20   subject to being redirected or corrected, anything that we

21   bring the Court is something that we believe should proceed

22   at this time irrespective of -- or at least progress at this

23   time irrespective of what direction the ultimate

24   reorganization ultimately takes.  We may have hopes and

25   aspirations to a direction but we don't take action based on

1   those hopes and aspirations (indiscernible).

2          THE COURT:  And that makes perfect sense and

3   that's what my assumption was.  Of course, we all know that

4   the words de minimis in a case of this size will strike

5   people in different ways and so that's another reason, just

6   for purposes of the record, I think it's helpful to have a

7   short discussion but thank you for the information.  It is

8   helpful.  And even if it is, I think, fairly well understood

9   by folks who've been involved in the case exactly what you

10  just said, never hurts to put it on the record occasionally

11  from time to time.

12         So all right.  And thank you for -- Mr. Robertson

13  and with that, we can move on to the next matter.

14         MR. HUEBNER:  Your Honor, I think the next matter

15  is the sole contested matter, handled by Ms. Esther Townes

16  and I think she will handle (indiscernible) from the Davis

17  Polk perspective when she completes that number.  Thank you.

18         THE COURT:  All right.  Thank you very much.  Ms.

19  Townes.

20         MS. TOWNES:  Good morning, Your Honor.  This is

21  Esther Townes from Davis Polk on behalf of the Debtors.  Can

22  you hear me all right?

23         THE COURT:  I can hear you just fine.  Thank you

24  so much.

25         MS. TOWNES:  Okay, great.  So the next item on the

Page 19

1    agenda is the late claim motion that was filed by Mr. Edward

2    Whitman who I believe you mentioned earlier did not appear

3    to be on the Zoom today.  The Debtors and the Creditors

4    Committee's position is set out in our joint response at

5    Docket 5183, so I'll be pretty brief, but essentially we

6    believe that Mr. Whitman's last claim motion and the

7    circumstances that he alleged therein are substantially

8    similar to the prior two late claim motions that were on the

9    August omnibus hearing where you deferred a ruling.

10           In particular, based on the assertions that are in

11   the motion regarding Mr. Whitman's incarceration and the

12   lockdowns at the facility in which he was incarcerated

13   related to the COVID-19 pandemic which were confirmed by the

14   UCC through their diligence including lack of access to

15   information, legal library resources, and visitation coupled

16   with the fact that Mr. Whitman filed his proof of claim in

17   March of 2022 which is before one of the motions that was on

18   in August as well as that he filed his late claim motion

19   shortly after he was released from incarceration in

20   September of 2022; based off of all of that, we believe that

21   there may be a colorable basis to grant the motion.

22           But as before, we believe it would be reasonable

23   to defer that ruling until the first omnibus hearing that's

24   held at least 21 days after the court enters the final order

25   on a modified plan to be able to allow the Debtors, the

Page 20

1    Creditors Committee, and of course the Court to be able to

2    make an informed decision at that time now that, you know,

3    we're over two years after the bar date based off of the

4    universe of late claim motions that have been filed at that

5    time.

6            As before, we filed a joint response with the

7    Creditors Committee.  We also consulted with the Ad Hoc

8    Committee of Individual Victims and they indicated that they

9    do not oppose the relief requested and so unless Your Honor

10   has any questions, we would ask that the order that we

11   attached as Exhibit A to the joint response be entered.

12           THE COURT:  All right, thank you very much.  And

13   let me ask one more time if Edward Whitman is on today's

14   Zoom hearing.  All right, he does not appear to be on the

15   Zoom hearing.  Counsel, I think you've very succinctly and

16   very well explained the status of the motion and the reasons

17   for granting the requested relief for purposes of

18   consistency in terms of dealing with these kinds of claims

19   together at the appropriate time so that we can draw one

20   line and deal with these kinds of motions fairly, so I'm

21   happy to grant your request in all respects.

22           I note it is not opposed and it is a very sensible

23   and equitable way to handle this kind of a problem.  So I am

24   happy to enter the kind of proposed order that you request

25   and will do that and will deal with this in the fullness of

Page 21

1    time at the appropriate time.

2             MS. TOWNES:  Great.  Thank you, Your Honor.  With

3    that, I believe for the next agenda item or for the status

4    conference, I'm turning it over to Benjamin Kaminetzky.

5             THE COURT:  All right, and I will just use this

6    opportunity to say I'm always happy to see younger lawyers

7    in these hearings.  I applaud the firm for giving younger

8    lawyers an opportunity and in fact folks have done an

9    excellent job.  So thank you very much.

10            And so with that I think we can segue to the next

11   matter on the agenda, which is the adversary proceeding

12   brought on behalf of Stacey Bridges and Creighton Bloyd and

13   other similarly situated against Purdue Pharma and the

14   United States.  And so this is a status conference.  I did

15   take a look at what appears to be essentially the very

16   stipulations that have been filed to essentially sort of

17   keep us in a holding pattern which is sort of

18   understandable, and I think what I'll do is let me hear from

19   you all to get a sense of where you think things are or

20   where they're going or where they're not going until we get

21   a decision and so I'm not sure who wants to take the

22   laboring oar on this.

23            MR. KAMINETZKY:  I'm happy to give Your Honor the

24   Debtors' perspective.  My name is Benjamin Kaminetzky, Davis

25   Polk.  So I'm happy to start unless you'd like to hear from

Page 22

1    someone else first.

2            THE COURT:  No, that's fine.  It's plaintiff's

3    case, but obviously there's a very large significant context

4    that is very much appropriate to hear from you on, so we'll

5    make sure to hear from everybody before we're said and done,

6    so I have no problem with you kicking it off.

7            MR. KAMINETZKY:  Thank you, Your Honor.  Again,

8    Ben Kaminetzky, Davis Polk, for the Debtors.  So to provide

9    some background, this adversary proceeding seeks to

10   equitably subordinate the United States' claims in this

11   case.  These claims arise from a criminal resolution and

12   civil settlement between the United States Department of

13   Justice and the Debtors, which Judge Drain approved by a

14   Rule 9019 order almost two years ago on November 18th, 2020.

15           Pursuant to that settlement with the DOJ and the

16   Court's Rule 9019 order, the United States is to receive

17   three allowed claims, not subject to subordination.  Again,

18   none of the -- under the terms of the 9019 order, none of

19   the United States' claims stemming from the plea agreement

20   and the civil settlement may be subject to subordination.

21   Now, this resolution, on reaching resolution with the DOJ at

22   that time per the 9019 motion order was a critical milestone

23   in this case, the importance of which cannot be overstated.

24           The Debtors believe that the motions to dismiss

25   the complaint that were filed in this adversary proceeding

Page 23

1    should not await resolution of the Second Circuit appeal.

2    The 9019 order approving the plea agreement and the civil

3    settlement, giving the government unsubordinated claims

4    again approved by Judge Drain after extensive briefing and a

5    full day hearing and not subject to appeal and therefore

6    absolutely final with a capital F, and this adversary

7    proceeding seeking to collaterally (Indiscernible) that

8    final order I -- are entirely independent from the appeal of

9    the confirmation order and the third-party release issue

10   that's on appeal.

11          Whether it's this current plan or some other plan

12   win or lose or draw in the Second Circuit, the DOJ

13   settlement remains a cornerstone to any plan and we believe

14   it is important to remove any (indiscernible) or uncertainty

15   with respect to the status of the United States' claims in

16   this case.  And of course, in the very unlikely event that

17   the Court somehow entertains this meritless collateral

18   attack, the United States may very well take the position

19   that it's not getting the consideration it bargained for and

20   take the position that it could walk away from the plea and

21   settlement agreement, and I shudder to think what then

22   happens for this case.

23          So Your Honor, clarity is important here, to the

24   Debtors, to the government, and indeed to all the

25   constituencies who negotiated with the DOJ settlement as a

```
                                                          Page 24
 1   backdrop and better to get the clarity now so we can hit the

 2   ground running when the Second Circuit rules.

 3           Accordingly, we ask that Your Honor enter the

 4   stipulation that's agreed to by all the parties that we

 5   filed on Thursday.  It's Docket No. 20 which sets forth the

 6   briefing schedule for the motion to dismiss.  I think we

 7   have the opportunity now to get clarity and there's no

 8   reason for us to wait until the Second Circuit rules when

 9   there'll be 101 other things to deal with and certainly

10   having clarity now as to the United States' claim is

11   essential to any discussions that happen following the

12   Second Circuit decision.

13           With that, I'm happy to turn it over to either Mr.

14   Ozment or Mr. Fogelman representing the United States.

15           THE COURT:  All right, and if I am right, I'm just

16   looking at, I think, the sixth stipulation and agreed upon

17   order with deadlines, I think the -- if I remember right,

18   the -- it has the schedule and this is -- I think the

19   stipulation we're talking about has the schedule and then

20   the motion will be heard at a date to be determined by the

21   Court and we can talk about dates, I think, before the

22   hearing is done and I know my courtroom deputy has been

23   talking to folks about deadlines and dates, so -- and that's

24   at Docket 20, so I got it and I guess that means that

25   there's a -- under that, there's a motion due on November
```

Page 25

1    11th and opposition December 23rd and then a reply January

2    27th.  All right.

3           MR. KAMINETZKY:  That's correct, Your Honor.

4    That's what we're -- you know, that's what the parties have

5    agreed to, you know, should Your Honor allow us to go

6    forward with this adversary proceeding at this time.

7           THE COURT:  All right.  Since I've heard from one

8    defendant, I think it probably makes sense to hear from the

9    other defendant before I hear from the plaintiff, so Mr.

10   Fogelman, it's to you.

11          MR. FOGELMAN:  Thank you, Your Honor.  Again,

12   Larry Fogelman on behalf of the United States.  We agree

13   with the Debtors' position that briefing on our anticipated

14   motion to dismiss should go forward now.  We don't think

15   that the plaintiffs have stated a claim on which relief can

16   be granted and I think that's the case irrespective of

17   whatever the Second Circuit may rule.  Happy to engage in

18   further dialog about that, if it would be helpful to the

19   Court.  Otherwise, we do appreciate the Court's

20   consideration of the revised schedule which would give the

21   government until November 11th to submit its motion to

22   dismiss.

23          THE COURT:  All right.  And last but not least,

24   let me hear from plaintiffs' counsel.

25          MR. OZMENT:  Thank you, Your Honor.  This is Frank

Page 26

1   Ozment, Stacey Bridges and Creighton Bloyd.   Number one,

2   before I address the motion immediately at hand, thank you

3   for accommodating the gentleman who was just released.   Most

4   of my practice focuses on representing inmates and it's very

5   difficult for them to file motions.   I'm sorry he couldn't

6   be here.   That was very gracious, and also on the part of

7   the Debtor.

8           With respect to going forward, it sounds like

9   we're in agreement, so I won't comment further on that.   I

10  do what to add two things very briefly.   Number one, it is

11  not our ambition if -- to upset the plan.   We hope that

12  Second Circuit allows the plan to go forward more or less as

13  proposed by the Debtor and as confirmed by Judge Drain.

14          What we're looking for here is subordinating

15  particularly that portion of the United States' claim which

16  is basically being kept by the United States and not being

17  paid out to the states and that would not upset plan going

18  forward.   Of course, of the Second Circuit rules that the

19  plan can't go forward in any form that any of us would

20  recognize as that which was proposed, I suppose, you know

21  anything can happen.

22          So that's where we are.   I'd be glad to -- I will

23  take a little -- make a brief remark regarding

24  characterization of the thing as meritless.   It was Judge

25  Drain himself who commented that somebody would likely

Page 27

1    (indiscernible) equitably subordinate claims

2    (indiscernible).

3            THE COURT:  All right.  Well, I will just for the

4    benefit of all, no one needs to defend the honor of their

5    position here today.  Obviously, you're going to have

6    briefing.  We'll have a spirited discussion and -- but I

7    know how easy it is to slide into those kinds of discussions

8    just with preliminary remarks, so rest assured we will

9    address all that in the fullness of time.

10            I certainly have -- appreciate that everybody's

11   worked together on a schedule and sort of the path forward

12   so that we all are spending more time on what's important

13   which is the merits of the issues and not getting bogged

14   down.  I mention that because we sometimes see the opposite

15   here in Court and it makes cases work a lot less well, so

16   thank you to the parties and counsel for that.

17            Mr. Ozment, anything else?

18            MR. OZMENT:  Nothing further, Your Honor.

19            THE COURT:  All right.  So I will get around to

20   signing the stipulation and proposed order at Docket No. 12

21   but I will so order the record now.  I'm happy to approve it

22   so that everybody knows the marching orders going forward

23   and we will then -- I will put it on my courtroom deputy's

24   radar screen in terms of scheduling.  I will say that she is

25   probably the best person to talk to about scheduling.

Page 28

1    Certainly if you wanted to get a date in -- I think there

2    was a discussion about how far out to go with dates.

3           We were talking about going out through June of

4    next year or just January and February.  Perhaps we split

5    the baby, so to speak, and go out -- you talked to Ms.

6    Ebanks about getting dates in January, February, or March so

7    -- because a case like this tends to be how -- at least how

8    far out you're thinking -- and I will leave you in her

9    capable hands.

10          What I will do is sometimes in cases it's helpful

11   for me to look at the papers before putting something on the

12   calendar, just so I can make sure that giving whatever else

13   I'm doing, I have enough time to give proper consideration

14   to all you've given me, all the wisdom you've given me in

15   the papers.  So don't be panicked if you don't get a date

16   right away.  It probably means I just want to make sure I

17   have enough time when the briefing is done to give it proper

18   consideration and to be prepared for oral argument.

19          But we will make sure to get you on promptly once

20   the briefing is completed and with that, anything else on

21   this particular agenda matter?

22          MR. KAMINETZKY:  NO, Your Honor, thank you.  Just,

23   it's Docket No. 20, two zero, not twelve but --

24          THE COURT:  I misspoke.  I've got it right in

25   front of me, so don't worry, we'll get it entered.

Page 29

```
 1              MR. KAMINETZKY:  And with that, Your Honor, let me

 2    turn the podium over to my partner Jim McClammy who's going

 3    to take the lead with respect to the next adversary

 4    proceeding, the final item on the agenda.

 5              THE COURT:  All right, thank you.

 6              MR. McCLAMMY:  Thank you, Your Honor --

 7              THE COURT:  -- very much and I'll see you all in

 8    the not to distance future in this adversary. So, but moving

 9    on to the ascent pharmaceuticals.

10              MR. OZMENT:  Your Honor, I have nothing further on

11    the docket.  May I be excused?

12              THE COURT:  Absolutely.

13              MR. OZMENT:  Thank you.

14              THE COURT:  Thank you.

15              MR. McCLAMMY:  Thank you, Your Honor.  Again for

16    the record, Jim McClammy of Davis Polk on behalf of the

17    Debtor, representing the Debtor-defendants in the adversary

18    proceeding that's filed.  As Your Honor has seen, counsel

19    for Ascent is present as is counsel for the IACs that are

20    defendants in the action.  We've conferred with all of the

21    parties ion this action, Your Honor, and I believe all are

22    in agreement that it makes sense for this matter to go

23    forward.

24              The issues that are raised are issues that would

25    need to be resolved regardless of how the decision comes out
```

Page 30

1    in the Second Circuit.  The parties had submitted at Docket

2    No. 13 an agreed briefing schedule and have adhered to that

3    agreed briefing schedule and a motion to dismiss.  That

4    motion to dismiss has been filed and now is fully briefed

5    with the reply papers that were filed on Friday, October

6    21st.

7            We've coordinated with Your Honor's chambers to

8    obtain a hearing date on the motion to dismiss of December

9    6, and unless Your Honor has any further questions, I think

10   that would -- we would rest obviously on the merits with

11   respect to the papers and the argument that we'll have on

12   December 6th, but would otherwise respectfully suggest that

13   this matter should indeed go forward and be decided by Your

14   Honor at Your Honor's convenience.

15           THE COURT:  All right.  Yeah, I did see the

16   stipulation and agreed order extending the deadline at

17   Docket 13 and then I think I saw another one that

18   essentially teed up the motion for December 6th.  I have no

19   problem with that date and so I did take a look at the

20   papers including the opposition and the reply just to try to

21   get -- wrap my head around the question that you just

22   addressed which is whether this should wait or not wait and

23   I can understand your position.

24           So let me ask if there's anybody else who wants to

25   weigh in.  You don't have to because it sounds like you have

Page 31

1    conferred and are in agreement, but I wanted to certainly

2    give folks an opportunity if they had something in

3    particular they wanted to add.

4              MR. PAULSEN:  Your Honor, Bruce Paulsen.  We are

5    in agreement from the plaintiffs' side.

6              THE COURT:  All right, thank you very much.

7    Counsel, you are on mute.

8              MR. FOGELMAN:  -- the opportunity to be heard.

9    Thank you, Your Honor.  We have nothing further to add.

10   Just want to go on the record.  The IC defendants agree with

11   what's been outlined here and we look forward to being back

12   in front of you on this matter on the 6th of December.

13             THE COURT:  All right, great.  So that's what

14   we'll do.  Again, I appreciate that you all have

15   communicated and resolved the kinds of things that should

16   get resolved so we can focus on the merits.  It's much

17   appreciated, and so we will have argument on the 6th and all

18   I will say as to the papers is they're all well written and

19   so based on even my first review, it's -- I pretty clearly

20   understand the views of the parties, so thank you for that,

21   and I look forward to chatting with you in more detail about

22   those issues.

23             And so we'll see each other on December 6th.  I

24   will say, I don't know that it applies to this circumstance,

25   but I have been having ongoing conversations with counsel in

Page 32

```
 1    certain circumstances where they think there are particular

 2    matters that benefit from being in person.  Since this is

 3    oral argument, I don't know that that falls into this

 4    category and I know there are cost savings for having

 5    hearings on Zoom and I also know, as we all do too well, the

 6    COVID factor and how that has played out over prior winters.

 7            So I only mention it because I wanted to mention

 8    it at some point during this hearing that if there are

 9    instances where counsel think it's appropriate and helpful

10    to have something in person you should confer with each

11    other and then let me know we're -- if COVID cooperates, I

12    guess that would be a first, we're hoping to have at least

13    sort of hybrid hearings really as soon as we can get past

14    the winter and have some sort of certainty that we're not

15    taking one step forward to take two steps back, because I

16    know certainly in instances where people need to have

17    discussions and negotiate it is helpful to have people in

18    person.

19            But again, I think this seems to be perfectly fine

20    by Zoom, but I just mention it because obviously you know

21    your case better than I do.  So with that said, we'll plan

22    for Zoom unless somebody tells me something to the contrary

23    but I did want to get that sentiment out there, not only for

24    today but for all matters in this case moving forward.  So

25    all right, anything else as to the Ascent Pharmaceutical
```

Page 33

1  adversary proceeding?

2          MR. HUEBNER:  Nothing further on our end, Your

3  Honor.  Thank you.

4          THE COURT:  All right.  Thank you very much.  Be

5  well.  See you in December, and with that, is there anything

6  else that we need to address on the agenda here this morning

7  in this case?

8          MR. HUEBNER:  I believe that concludes our agenda,

9  Your Honor.

10         THE COURT:  All right.  Anything else from any

11 other party before we conclude here this morning?

12         All right.  With that, the Court is in recess.

13 Thank you very much and see you all soon.

14         MR. HUEBNER:  Thank you, Your Honor.

15         (Whereupon these proceedings were concluded at

16 11:42 AM)

17

18

19

20

21

22

23

24

25

Page 34

1                               I N D E X

2

3                                RULINGS

4                                              Page        Line

5    De minimis asset sale motion, approved      17          4

6

7    Motion to defer ruling for Edward Whitman,

8    Granted                                     20          23

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 35

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya M. Ledanski Hyde

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:   October 26, 2022