**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------------X
ALMA, GEORGIA,
BACON COUNTY, GEORGIA,
BLACKSHEAR, GEORGIA,
BRUNSWICK, GEORGIA,
CHATHAM COUNTY, GEORGIA,
DADE COUNTY, GEORGIA,
DEMOREST, GEORGIA,
PIERCE COUNTY, GEORGIA,
POOLER, GEORGIA,
RICHMOND HILL, GEORGIA,

        Plaintiffs,

v.

MCKINSEY & COMPANY, INC., MCKINSEY HOLDINGS, INC., MCKINSEY & COMPANY, INC. UNITED STATES, AND MCKINSEY & COMPANY, INC. WASHINGTON D.C.

        Defendants.
---------------------------------------------------------------------------------X

Case No. _____

## NOTICE OF REMOVAL

Defendants McKinsey & Company, Inc., McKinsey Holdings, Inc., McKinsey & Company, Inc. United States, and McKinsey & Company, Inc. Washington D.C. (the "McKinsey Defendants"), pursuant to 28 U.S.C. §§ 1332, 1334, 1441, 1446, and 1452, remove the above-captioned action ("Action") pending in the Supreme Court of the State of New York, County of New York: Commercial Division, to the United States District Court for the Southern District of New York. The grounds for removal are as follows:

## BACKGROUND

1. On September 27, 2022, Plaintiffs[1], filed a Complaint in the Supreme Court of the State of New York, County of New York: Commercial Division, against the McKinsey Defendants. (Ex. 1, Complaint). McKinsey & Co, Inc. United States, McKinsey & Co., Inc., and McKinsey & Co., Inc. Washington, D.C. were served with the Complaint on October 20, 2022. McKinsey Holdings, Inc. was served with the Complaint on October 17, 2022.

2. In the Complaint, Plaintiffs allege that the McKinsey Defendants advised Purdue Pharma L.P. ("Purdue") how to increase the sales of its opioid products by researching, designing, and implementing marketing and promoting strategies. (*See generally id.* at ¶¶ 20-63; 65-73; 75-90). Despite McKinsey's unique role as an outside consultant, which, unlike Purdue (and other similarly situated defendants in the sprawling opioid litigations across the country), never manufactured, distributed, sold, or prescribed any opioids, Plaintiffs nevertheless assert claims against the McKinsey Defendants for deceptive acts and practices, violations of the Georgia Drug Dealer Liability Act, negligence, negligent misrepresentation, fraud and deceit, and unjust enrichment. (*Id.* at ¶¶ 91-126).

## GROUNDS FOR REMOVAL

### A. Removal Is Proper Based On Diversity of Citizenship

3. Removal is proper under 28 U.S.C. § 1441. This Court has jurisdiction over the Action because (i) there is complete diversity of citizenship between Plaintiffs and the McKinsey Defendants; and (ii) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

4. Diversity of citizenship exists when there is diversity of citizenship between "real and substantial parties to the controversy." *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460

---

[1] Alma, Georgia; Bacon County, Georgia; Blackshear, Georgia; Brunswick, Georgia; Chatham County, Georgia; Dade County, Georgia; Demorest, Georgia; Pierce County, Georgia; Pooler, Georgia and Richmond Hill, Georgia.

(1980); 28 U.S.C. § 1332.  Corporate citizenship is based on every state in which a corporation is incorporated and every state where it has a principal place of business.  28 U.S.C. § 1332.

5. There is a complete diversity of citizenship in the Action because Plaintiffs are Georgia citizens (Compl. ¶ 1), and all defendants are not.

6. Indeed, Plaintiffs acknowledge that:

- McKinsey & Company, Inc. is a New York corporation with its principal place of business in New York.  (Compl. ¶ 5);

- McKinsey Holdings, Inc. is a Delaware corporation with its principal place of business in New York.  (Compl. ¶ 6);

- McKinsey & Company, Inc., United States is a Delaware corporation with its principal office in New York.  (Compl. ¶ 7);

- McKinsey & Company, Inc., Washington, D.C.. is a Delaware corporation with its principal office in New York.  (Compl. ¶ 8).[2]

7. Moreover, the amount in controversy exceeds $75,000.  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  Plaintiffs are clearly seeking amounts exceeding $75,000 as the Complaint seeks compensatory damages, disgorgement, punitive damages, attorneys fees and costs, and pre and post-judgment interest.  *See* Compl. at 29.

---

[2] Because the removal grounds here are not based "solely on the basis of jurisdiction under Section 1332(a)," removal is not precluded under Section 1441(b)(2).

3

B.  **Removal Is Proper Because This Action Is "Related To" Purdue's Bankruptcy Proceedings**

8.  Removal is also proper under 28 U.S.C. §1452(a), which provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district has jurisdiction of such claim or cause of action under section 1334 of this title."

9.  As set forth below, this Court has subject matter jurisdiction under 28 U.S.C. § 1334(b), which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," because the Plaintiffs' claims in this Action are "related to" Purdue's bankruptcy case under title 11 pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Specifically, on September 15, 2019, Purdue filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11. U.S.C. §§ 1101 *et seq.* Purdue's case is being administered in the Bankruptcy Court under chapter 11, Case No. 19-23649-RDD ("Bankruptcy Case"). Purdue's Chapter 11 Voluntary Petition from its Bankruptcy Case is attached hereto as Exhibit 2.[3]

6.  "Related to" jurisdiction is construed broadly. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth."). The test for determining whether a civil proceeding is "related to" a bankruptcy proceeding is whether "the action's outcome might have any conceivable effect on the bankrupt estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018). "If that question is answered

---

[3] A chapter 11 plan of reorganization negotiated earlier this year in the Bankruptcy Case is currently on appeal to the Second Circuit. *See In re: Purdue Pharma LP et al.,* Case No. 22-110.

4

affirmatively, the litigation falls within the 'related to' jurisdiction of the bankruptcy court." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). Put differently, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *SPV*, 882 F.3d at 340 (quoting *Celotex*, 514 U.S. at 308 n.6). "The existence of strong interconnections between the third party action and the bankruptcy" has frequently served as the basis for "related to" jurisdiction, particularly where recovery against a third party depends on a "finding that [debtor] engaged in wrongful conduct." *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 321 (S.D.N.Y. 2003) (listing cases).

7.    As one District Court in the Southern District of New York recently observed when considering the question of bankruptcy jurisdiction over actions filed against parties related to Purdue's manufacturing and sales of opioids:

> "when one tortfeasor files for bankruptcy, any action against their co-tortfeasors for the same conduct falls within the bankruptcy court's 'related to' jurisdiction, since a finding of joint and several liability against the whole group could impact the *res* of the insolvent party's estate. . . That is because a trial on harms alleged to have been caused in whole or in part by the debtor is 'related to' the bankruptcy, whether or not they are named as a defendant, because a judgment implicating the debtor's conduct could conceivably alter the debtor's rights, liability, options, or freedom of action. . . Therefore, 'related to' jurisdiction may extend to litigation against third party non-debtors, because a plaintiff suing non-debtor whose joint tortfeasor has filed for bankruptcy can only proceed on its claims if it establishes that the debtor's misconduct occurred."

*In re Purdue Pharmaceuticals L.P.*, 619 B.R. 38, 50 (S.D.N.Y. 2020) (cleaned up).

8.    Moreover, "[w]here a third party claim may give rise to a potential indemnification or contribution claim against the estate, the third party claim will have a

conceivable effect on the estate . . ." *In re SunEdison, Inc.*, 576 B.R. 453, 462–63 (Bankr. S.D.N.Y. 2017) (collecting cases). "Such a claim arising from third party litigation need not be certain to succeed in order for the bankruptcy court to exercise jurisdiction over the related case; contingent outcomes can satisfy the 'conceivable effects' test, so long as there is a possibility of an effect on the estate." *In re Purdue Pharmaceuticals L.P.*, 619 B.R. at 51 (citing *SPV*, 882 F.3d at 340) (cleaned up).

9. The strong interconnection between the Plaintiffs' claims in this Action and Purdue's Bankruptcy Case is demonstrated by the filing by each of the individual Plaintiffs in this Action of proofs of claim in the Bankruptcy Case (attached hereto as Exhibits 3 to 12) relating to the same alleged conduct and damages sought here. Plaintiffs' proofs of claim collectively total more than 74 million dollars. (*See id.*)

10. In their proofs of claim, Plaintiffs allege that their claims "arise from Purdue's tortious, deceptive, unreasonable, or otherwise unlawful conduct with respect to the marketing, promotion, sale, and/or distribution of prescription opioid products . . ." (*See, e.g.*, Ex. 3, Ex. A at 1). They further allege in their proofs of claim that "Purdue acted on its own, as well as jointly with others, including with other manufacturers, distributors, and dispensers of prescription opioids with respect to the conduct at issue." (*See, e.g., id.* at 1). Plaintiffs assert "all available legal, equitable, and statutory claims against Purdue arising from the foregoing conduct, including without limitation, claims for public and/or private nuisance, unfair and deceptive practices, fraud, negligence, unjust enrichment, false claims and breach of contract, insurance fraud, conspiracy, violation of federal and state RICO laws, and violation of federal and state laws governing the sale, distribution, and anti-diversion requirements for narcotics." (*See, e.g., id.* at 1). Finally, Plaintiffs seek damages

against Purdue including but not limited to "abatement, disgorgement, reimbursement for government expenditures, any and all fines and penalties . . . and such other relief as is just and equitable." (*See, e.g.*, *id.* at 2).

11. Similarly, Plaintiffs' allegations against the McKinsey Defendants in this Action arise strictly from McKinsey's work for Purdue relating to the marketing and sales of opioids manufactured by Purdue. Plaintiffs expressly acknowledge as much in the Complaint, stating: "Plaintiffs bring this action against McKinsey for the consulting services it provided" to "Purdue Pharma L.P. ('Purdue') for more than fifteen years, from 2004 to 2019. . . ." Compl. ¶ 20.

12. Indeed, a substantial portion of the Complaint in this Action contains allegations and background information relating solely to Purdue and the Sackler family. The Complaint expressly mentions Purdue and the Sacklers by name nearly 100 times. (*See, generally id.*). Plaintiffs state Purdue and McKinsey had a "transformational partnership" for over 15 years. (*Id.* at ¶¶ 20, 32-49). Although McKinsey does not manufacture, distribute, or sell opioids, Plaintiffs contend the McKinsey Defendants are liable for an alleged increase in OxyContin sales after Purdue's 2007 guilty plea for misbranding the drug. (*Id.* at ¶ 27-31).

13. All of Plaintiffs' claims in this Action generally discuss the actions of the McKinsey Defendants and Purdue together. More specifically, Plaintiffs refer to the McKinsey Defendants as Purdue's "co-conspirators" and seek to hold them jointly and severally liable with Purdue. (*Id.* at ¶¶ 78-81, 88-90, 102). As part of this claim, Plaintiffs assert that "Purdue's 2020 guilty plea concerns Covered Conduct . . . that directly implicates McKinsey in the conspiracy." (*Id.* at ¶ 79). According to Plaintiffs, the McKinsey

Defendants "formed a common plan with Purdue to commit the tortious acts alleged herein . . .". (*Id.* at ¶ 88). The Plaintiffs contend that the McKinsey Defendants are therefore "jointly and severally liable for the wrongs committed by Purdue within the scope of their common plan." (*Id.* at ¶ 90).

14.  Just like in Purdue's Bankruptcy Case, here, Plaintiffs in this Action seek damages for "costs" relating to "medical care," "additional therapeutic and prescription drug purchases," "treatment, counseling and rehabilitation services," and "treatment of infants," allegedly incurred in connection with Purdue's opioid products. (*Compare, e.g.,* Complaint at 29 *with* Ex. 3, Ex. A at 1-2).

15.  In addition, pursuant to a 2004 indemnification agreement between Purdue and McKinsey, Purdue contractually agreed to indemnify McKinsey for all claims brought by third parties against Purdue and/or McKinsey (including reasonable legal fees) arising out of its services to Purdue.

16.  Accordingly, this Action is related to the Purdue Bankruptcy Case because the Plaintiffs' allegations against the McKinsey Defendants are highly interconnected with the conduct and actions of Purdue. *See In re Purdue Pharmaceuticals L.P.*, 619 B.R. at 49-51; *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. at 321. Plaintiffs seek to hold McKinsey jointly and severally liable with Purdue as Purdue's co-conspirator with respect to Purdue's alleged unlawful opioid sales and marketing. And this is the very same conduct that forms the basis of Plaintiffs' collective $74 million proofs of claim against Purdue, asserting the same theories and types of alleged damages that Plaintiffs now assert here against McKinsey. Resolution of the Plaintiffs' claims against McKinsey may therefore alter Purdue's rights and liabilities as a bankruptcy debtor. *See id.*; *SPV*, 882 F.3d at 340. The Plaintiffs' claims in

8

this Action, if successful, could also give rise to indemnification and/or contribution claims by McKinsey against Purdue and therefore may affect property of Purdue's bankruptcy estate. *See In re Purdue Pharmaceuticals L.P.*, 619 B.R. at 51-55; *In re SunEdison, Inc.*, 576 B.R. at 462–63.

17. For the foregoing reasons, this Action is plainly "related to" Purdue's Bankruptcy Case within the meaning of 28 U.S.C. § 1334(b). Consequently, removal is proper under 28 U.S.C. § 1452(a).

### ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

18. This Notice of Removal is timely filed. The McKinsey Defendants received the Complaint through service on October 17, 2022 and October 20, 2022. Because McKinsey filed the Notice of Removal on November 7, 2022, removal is timely. *See* 28 U.S.C. § 1446(b)(1); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal deadline runs from formal service of summons and complaint).

19. Venue is proper in this Court pursuant to 28 U.S.C. §§ 112(b), 1441(a) because the Supreme Court of the State of New York, County of New York, where the Action is pending, is a state court located within the Southern District of New York.

20. Pursuant to 28 U.S.C. § 1446, a copy of any process, pleadings, and orders served upon McKinsey in the Action have been included with this Notice of Removal.

21. The McKinsey Defendants are providing written notice of the removal of this action to the Plaintiffs and will promptly file a copy of this Notice of Removal with the clerk of the Supreme Court of the State of New York, County of New York.

22.     The McKinsey Defendants reserve all rights, including, but not limited to, defenses and objections as to venue, personal jurisdiction, and service, and the filing of this Notice of Removal is subject to, and without waiver of, any such defenses and objections.

## CONCLUSION

WHEREFORE, the McKinsey Defendants hereby removes this action from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York.

Dated:  New York, New York
        November 7, 2022

Stroock & Stroock & Lavan LLP

/s/ James L. Bernard
James L. Bernard
David M. Cheifetz
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
Tel. (212) 806-5400
Fax (212) 806-6006
jbernard@stroock.com
dcheifetz@stroock.com

*Attorneys for Defendants*
*McKinsey & Company, Inc., McKinsey Holdings, Inc., McKinsey & Company, Inc. United States, and McKinsey & Company, Inc. Washington D.C.*

10