DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Eli J. Vonnegut

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (SHL)** |
| Debtors.[1] | **(Jointly Administered)** |

### DEBTORS' AND THE OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS' JOINT RESPONSE TO
### MOTION TO FILE PROOF OF CLAIM AFTER CLAIMS BAR DATE

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") and the Official Committee of Unsecured

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Creditors (the "**Creditors' Committee**") submit this joint response to the motion to file a proof of claim after the claims bar date by Richard Paiva ("**Mr. Paiva**") [Dkt. No. 5269] (the "**Motion**"), and respectfully state as follows:

1.  Mr. Paiva, currently incarcerated, requests that this Court extend the bar date to allow him to file a late proof of claim.[2] (Mot. at 1.) Mr. Paiva asserts: "I have been incarcerated for the past 13 years, and I had no notice of the Purdue Pharma lawsuit." (*Id.*) Mr. Paiva further asserts that he had "no notice of the case" until "another inmate told me about it." (*Id.*)

2.  After careful consideration, the Debtors and the Creditors' Committee request that the Court enter the proposed order attached hereto as Exhibit A, postponing the Motion until the first omnibus hearing held at least 21 days after entry by the Court of a final order approving the Debtors' chapter 11 plan of reorganization, as may be modified. The Debtors and the Creditors' Committee believe that this Motion is similar to the prior late claim motions that this Court has postponed [Dkt. Nos. 5030, 5199], and that applying the same approach to this Motion will allow the Court to make an informed decision on the Motion, based, in part, on the number of similarly-situated late claim movants who have sought to assert late claims (i.e., whether allowing such claims as timely would be akin to "opening the floodgates").

3.  Courts have discretion to allow a late proof of claim upon motion of a late-claimant showing "excusable neglect." Fed. R. Bankr. P. 9006(b); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993) (noting that Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect'"). The burden of meeting the *Pioneer* test for excusable neglect falls on the claimant, *In re Enron Corp.*, 419 F.3d 115, 121

---

[2] Mr. Paiva has not previously submitted a proof of claim.

2

(2d Cir. 2005) (quoting *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000)), who must prove both "neglect . . . caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control" and that the neglect was "excusable." *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010). A court's determination of whether a late-claimant has demonstrated that the neglect was excusable is an "equitable one, taking account of all relevant circumstances surrounding the party's omission," and guided by the so-called *Pioneer* factors—"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *In re Enron*, 419 F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395). "The Second Circuit focuses its excusable neglect standard on the third factor—the reason for the delay . . . and the other three are significant only in close cases." *In re DPH Holdings*, 434 B.R. at 83.

4.  The Second Circuit has "taken a hard line in applying the *Pioneer* test" because "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule" and, thus, "where the rule is entirely clear, [courts] expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron*, 419 F.3d at 122-23 (quoting *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch,* 540 U.S. 1105 (2004)). This accords with this Court's warning that "unless there's a good reason why the deadline could not be complied with, the request for an extension is normally denied, [especially] when there has been a lengthy [bar date] period, such as provided for here." (June 3, 2020 Bar Date Ext. Mot. Hr'g Tr. 34:7-11 (Drain, J.).) Although courts rarely extend the bar date for late-claimants, for the reasons set forth below, the Debtors and the Creditors' Committee believe there is a sufficient basis to defer a

decision on the Motion until the universe of such potential late claims can be more finally determined.

5.  With respect to the most important factor—factor 3, the reason for the delay—diligence performed by counsel to the Creditors' Committee regarding the individualized assertions made in the Motion confirmed that Mr. Paiva has been incarcerated in Rhode Island since 2009, well before and after the bar date period. (*Third Suppl. Decl. of Jeanne C. Finegan* ¶ 4 (Aug. 5, 2021), Dkt. No. 3403 ("**Finegan Decl.**")) (noting that the Debtors' noticing efforts began on February 24, 2020, and continued through July 30, 2020).)  Mr. Paiva's incarceration, however, in itself, is not sufficient to justify the filing of a late claim, *see, e.g.*, *In re Motors Liquidation Co.*, 599 B.R. 706, 716 (S.D.N.Y. 2019) (noting that neither mistake of law nor incarceration constitutes "excusable neglect"), and Mr. Paiva has not provided any further assertions regarding the reason for the delay.  Given the facts asserted in the Motion, the Debtors and Creditors Committee believe that deferring a decision on the motion is proper in light of Mr. Paiva's lengthy incarceration and in light of the recent late claim motions that this Court has postponed [Dkt. Nos. 5030, 5199].

6.  Although close, *Pioneer* factors one and two—prejudice to the Debtors and impact on the chapter 11 cases due to the length of delay—also weigh in favor of postponing a decision on the Motion.  The Debtors and the Creditors' Committee are guided by the Court's remarks at the May 2022 omnibus hearing that "we may be reaching th[e] point going forward [where] it may be too late to be filing [] a [late claim] motion even if someone did[] [not] have notice before the bar date back in July of 2020."  (May 18, 2022 Omnibus Hr'g Tr. 41:5 (Drain, J.).)  However, the Debtors and the Creditors' Committee believe that deferring a decision on the Motion until the first omnibus hearing held at least 21 days after entry by the Court of a final

4

order approving the Debtors' chapter 11 plan of reorganization, as may be modified, is reasonable and strikes the right balance between treating all similarly-situated incarcerated movants consistently (*cf.* Modified Bench Ruling on Request for Confirmation of Eleventh Am. Joint Ch. 11 Plan, at 6 (Sept. 17, 2021), Dkt. No. 3786 (holding that "[t]he notice program was in large part effective in reaching prisons . . . [b]ut [noting that] it is possible that because of prison regulations and at times the lack of access to TV, radio and other media, prisoners may not have received the same high level of notice of these cases, the bar date, and the Debtors' request to confirm the plan") (Drain, J.)), and not encouraging additional latecomers.

7.  Importantly, consistent with this Court's remarks at the August 2022 omnibus hearing, postponing consideration of the Motion "will allow the Debtors, the Creditors Committee, and . . . also [the Court] to make the most informed decision . . . about whether to grant a late filed claim and to what extent and what are the principles and reasons for . . . granting them or denying them." (Aug 17, 2022 Omnibus Hr'g Tr. 23:22-24:2 (Lane, J.).) In particular, it will allow all to evaluate whether and to what extent the Court's consideration to allow as timely any additional late claims held by incarcerated individuals has, indeed, "open[ed] . . . the 'floodgates' to similar claims" and whether potential claimants were, in fact, "prompted to file late claims in the wake of a ruling in [the movant]'s favor." *In re Enron*, 419 F.3d at 132; *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120-21 (Bankr. S.D.N.Y. 2010) ("[T]he prejudice to the [d]ebtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency."); *see also In re R.C. Diocese of Syracuse, N.Y.*, 638 B.R. 33, 39 (Bankr. N.D.N.Y. 2022) (granting late claim motion where "[t]he court, as the gatekeeper, [could] use th[e] [statutory and common law safeguards of Rule 9006(b)(1) and the *Pioneer* factors] to prevent the floodgates from opening

5

and hindering Debtor in its reorganization efforts."). In other words, postponing will allow the Court to utilize its gatekeeping function to ensure that boundless latecomers do not unduly "squeak under the [l]ine" now that it has been over two years since the July 30, 2020 bar date. (*See* May 18, 2022 Omnibus Hr'g Tr. 41:5-10 (Drain, J.).) Postponing consideration of the Motion also will reduce the costs to the estates by allowing the Debtors, the Creditors Committee, and the Court to avoid piecemeal consideration of substantially similar motions. *See In Re Motors Liquidation Co.*, 598 B.R. 744, 759 (S.D.N.Y. 2019) (explaining that [t]he mere prospect of litigating additional motions to file post-bar date proofs of claim is enough to prejudice the debtor," and "[t]his fear of rampant late-claims litigation is especially germane in a case like this one where the universe of potential creditors is practically limitless") (citing *In re Keene Corp.*, 188 B.R. 903, 913 (Bankr. S.D.N.Y. 1995). This Court has recently postponed a decision on three late claim motions filed by similarly situation claimants for these same reasons. (*See* Order Postponing Decision on Late Claim Motions (Aug. 22, 2022), Dkt. No. 5030; Order Postponing Decision on Late Claim Motions (Oct. 27, 2022), Dkt. No. 5199.)

8.   Finally, with respect to the last *Pioneer* factor, neither the Debtors nor the Creditors' Committee have any reason to believe that Mr. Paiva has not made his late claim request in good faith.[3]

9.   Accordingly, for the reasons set forth above, the Debtors and the Creditors' Committee request that the Court postpone consideration of the Motion until the first omnibus hearing held at least 21 days after entry by the Court of a final order approving the Debtors' chapter 11 plan of reorganization, as may be modified. The Debtors and the Creditors'

---

[3] The information provided to the Creditors' Committee by the Rhode Island Maximum Security Facility is consistent with the assertions in the Motion regarding the timing of Mr. Paiva's incarceration.

6

Committee have consulted with counsel to the Ad Hoc Group of Individual Victims (the "**PI Group**") and understand that the PI Group does not oppose the relief sought in the proposed order attached hereto as <u>Exhibit A</u>, and as of the time of the filing of this response, no objections to the Motion have been filed.

[*Remainder of page intentionally left blank*]

Dated: January 17, 2023
      New York, New York

| | |
|---|---|
| By: /s/ *Arik Preis* | By: /s/ *James I. McClammy* |
| AKIN GUMP STRAUSS HAUER & FELD LLP | DAVIS POLK & WARDWELL LLP |
| One Bryant Park | 450 Lexington Avenue |
| New York, NY 10036 | New York, NY 10017 |
| Telephone: (212) 872-1000 | Telephone: (212) 450-4000 |
| Arik Preis | Facsimile: (212) 701-5800 |
| Mitchell Hurley | Marshall S. Huebner |
| Sara L. Brauner | Benjamin S. Kaminetzky |
| | James I. McClammy |
| | Eli J. Vonnegut |
| *Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al. | *Counsel to the Debtors and Debtors in Possession* |