AKIN GUMP STRAUSS HAUER & FELD LLP
Arik Preis
Mitchell Hurley
Sara L. Brauner
Edan Lisovicz
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
apreis@akingump.com
mhurley@akingump.com
sbrauner@akingump.com
elisovicz@akingump.com

*Counsel to the Official Committee of Unsecured
Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**STATEMENT OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS IN RESPECT OF DEBTORS' MOTION TO
APPROVE BIDDING PROCEDURES FOR SALE OF THE AVRIO ASSETS**

The Official Committee of Unsecured Creditors (the "Official Committee"), appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

this statement (the "Statement") in respect of the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Debtors' Avrio Assets, (B) Approving the Designation of Atlantis Consumer Healthcare Inc., a Wholly Owned Subsidiary of Arcadia Consumer Healthcare Inc., as the Stalking Horse Bidder for the Avrio Assets, (C) Authorizing and Approving Entry Into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Avrio Assets, (F) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (G) Approving Assumption and Assignment Procedures, and (H) Granting Related Relief and (II)(A) Approving Sale of Debtors' Avrio Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief*, dated April 5, 2023 [ECF No. 5533] (the "Motion")[2] and respectfully states as follows.[3]

## STATEMENT

1. By the Motion, the Debtors seek an order from the Court authorizing and approving: (i) certain bidding procedures in connection with the proposed sale (the "Proposed Sale Transaction") of substantially all of the assets in the Debtors' consumer health business conducted by Avrio Health L.P. (the "Avrio Assets"); (ii) the Debtors' entry into that certain asset purchase agreement, dated April 4, 2023, by and among the Debtors, Atlantis Consumer Healthcare Inc. (the "Stalking Horse Bidder") and Arcadia Consumer Healthcare Inc., as guarantor; (iii) certain bid protections in favor of the Stalking Horse Bidder; (iv) the proposed form of notice of the sale of the Avrio Assets and the hearing to approve the Proposed Sale Transaction (the "Sale Hearing");

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
[3] Pursuant to an agreement with the Debtors, the Official Committee is filing this Statement forty-eight hours after the reply deadline.

and (v) procedures for the assumption and assignment of certain contracts and leases and the determination of cure costs in connection with the Proposed Sale Transaction.[4]

2. The Official Committee supports the Debtors' efforts to sell the Avrio Assets, and is pleased with the progress of the bidding process to date. Indeed, the Official Committee supports the sale timeline and is not looking to modify the Debtors' rapid progress to sell the Avrio Assets. The sale of the Avrio Assets, however, represents only a small part of the Chapter 11 Cases. Indeed, had the Debtors' reorganization efforts proceeded as the Debtors and their stakeholders originally planned, the Debtors' plan of reorganization (the "Plan") would have long since gone effective, and the Proposed Sale Transaction would have occurred post-emergence. Instead, notwithstanding entry by this Court of an order and bench ruling confirming the Plan over 19 months ago,[5] the Debtors' emergence from bankruptcy has been delayed by the appeals from the Confirmation Order and the Modified Bench Ruling taken by certain parties to the United States District Court for the Southern District of New York (the "District Court"), the District Court's decision vacating the Confirmation Order and the Modified Bench Ruling,[6] the appeals of the District Court Decision by the Debtors, the Official Committee and other parties supporting the Plan to the United States Court of Appeals for the Second Circuit (the "Second Circuit") and now—following oral argument before the Second Circuit on April 29, 2022—the wait for a ruling from the Second Circuit.

---

[4] The Debtors have requested that the Court schedule the Auction and the Sale Hearing for May 17, 2023 at 10:00 a.m. (ET) and May 23, 2023 at 11:00 a.m. (ET), respectively.

[5] *See Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated September 17, 2021 [ECF No. 3787] (the "Confirmation Order"); *see also Modified Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter 11 Plan,* dated September 17, 2021 [ECF No. 3786] (the "Modified Bench Ruling").

[6] *See Decision and Order on Appeal*, No. 7:21-cv-7532-CM [ECF No. 280] (S.D.N.Y. Dec. 16, 2021) (the "District Court Decision").

3.  Like almost every other party in the Chapter 11 Cases, the Official Committee and its constituents are frustrated and disappointed that the Plan has remained in limbo for the better part of two years following an arduous and years-long process to reach consensus and that such delay, in turn, has deprived creditors of desperately needed—and potentially life-saving—value. This frustration and disappointment is heightened by the fact that the Plan was supported by more than 95% of the more than 114,000 creditors who voted on the Plan and that the primary opposition came from the United States Trustee (the "U.S. Trustee")—an arm of the United States Department of Justice (the "DOJ")—a party with no economic stake in the Chapter 11 Cases, and which has never been harmed by the Debtors or the Sacklers.[7]  Even more egregious, of the Debtors' hundreds of thousands of creditors, the only one to receive any recovery from either the Debtors or the Sacklers in the more than three-and-a-half years since the commencement of the Chapter 11 Cases is the DOJ.[8]  While the U.S. Trustee remains steadfast in opposing the Plan, the actual victims of the Debtors' and the Sacklers' misconduct continue to await compensation for their injuries.

4.  On a daily basis, counsel for the Official Committee fields numerous calls from victims inquiring about the status of the Chapter 11 Cases and when they might receive a recovery. Virtually all of these creditors are incredulous about the delay and cannot comprehend the actions taken by our federal government.  Many of these victims worry they will not live long enough to see a recovery in the Chapter 11 Cases.  Others have expressed concern that they may no longer have access to documents submitted in connection with their claims before the July 2020 bar date by the time the claims administration process finally commences, if it ever does.

---

[7] The only other parties currently opposing the Plan are representatives of certain Canadian municipalities and First Nations creditors and three *pro se* individuals, Ronald Bass, Maria Ecke and Ellen Isaacs.

[8] More than two years ago, the Sacklers paid $225 million to the DOJ in connection with a civil settlement. *See Order Confirming that Payment by the Sackler Families Under Settlement with the United States Department of Justice is Not Prohibited by this Court's Preliminary Injunction*, dated November 18, 2020 [ECF No. 2003].

4

5.  In light of these circumstances, the Official Committee believes the time has long since passed for the parties in the Chapter 11 Cases and this Court to do right by the Debtors' and the Sacklers' victims and require some portion of the proceeds from the Proposed Sale Transaction to be put to use immediately for abatement efforts and victim compensation. To that end, the Official Committee proposes that a portion of the sale proceeds should be used to fund opioid abatement and victim compensation on an expedited basis, as originally contemplated by the now vacated Plan.[9] The Official Committee encourages any competing bidders to ensure their bids both exceed the amount of proceeds contemplated by the Proposed Sale Transaction and provide that a portion of those proceeds be promptly distributed for such abatement and compensation purposes.

6.  Distributions to the Debtors' creditors are needed now, particularly for private-side creditors who have not received any of the proceeds of the numerous non-bankruptcy settlements with various opioid manufacturers, distributors and pharmacies that have netted States and municipalities more than $50 billion in settlement proceeds. News articles are published every day extolling how such opioid settlement proceeds are being put to use[10] by governmental entities.[11] But private-side parties, including the individuals directly harmed by the opioid crisis,

---

[9] The Official Committee has begun discussions with the Debtors on potential ways in which this could be achieved. These discussions are at their nascent stage.

[10] *See, e.g.*, Aneri Pattani, *As States Start to Get Opioid Settlement Cash, Few Are Sharing How They Spend It* (Mar. 30, 2023), https://www.npr.org/sections/health-shots/2023/03/30/1166883204/as-states-start-to-get-opioid-settlement-cash-few-are-sharing-how-they-spend-it#:~:text=Press-,States%20start%20spending%20opioid%20settlement%20cash%20with%20little%20public%20oversight,how%20they%20use%20the%20money ("Since last spring, drugmakers and distributors have sent out about $3 billion in opioid settlement funds to thousands of state and local governments. . . . All told, these companies, along with several large retail pharmacies, will pay more than $50 billion over the next 15 years. That's an enormous amount of money—double NASA's budget and five times the revenue of an NBA season.").

[11] *See, e.g.*, Molly DeVore, *Valpo Spending Opioid Settlement Money on Recovery Care Coordinator* (Apr. 14, 2023), https://www.nwitimes.com/news/local/porter/valparaiso/valpo-spending-opioid-settlement-money-on-recovery-care-coordinator/article_599a2a60-fc89-5fe8-a65e-514a7b59a79b.html; Jared Foretek, *Opioid Settlement Funds Flowing to Prince William County* (Apr. 14, 2023), https://wtop.com/virginia/2023/04/opioid-settlement-funds-flowing-to-prince-william-county/; Conor Hughes, *Greenville Taps Into SC's $360M Opioid Settlement for Overdose Recovery Team* (Apr. 12, 2023), https://www.postandcourier.com/greenville/health/greenville-taps-into-scs-360m-opioid-

5

have yet to receive almost any financial compensation from responsible parties outside of bankruptcy (and the amounts that have been recovered in *Insys*[12] and *Mallinckrodt*[13] are several multiples short of the amounts that are to be distributed in the Chapter 11 Cases). The Debtors, their stakeholders and this Court have the ability to begin to rectify this injustice and should do so now. If not, this travesty will continue as long as the Chapter 11 Cases remain in limbo, with the vast majority of more than $6 billion that could be put to use to abate the opioid crisis and compensate individual claimants continuing to accrue interest in Sackler accounts.

7.    The Official Committee intends to work with the Debtors, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, the Multi-State Governmental Entities Group and, if and as necessary, the Stalking Horse Bidder and any other bidders for the Avrio Assets to discuss and potentially formulate a structure that will allow immediate distributions of sale proceeds to be made upon the closing of the Proposed Sale Transaction. As referenced above, the Official Committee will favor bids that not only provide the highest value for the Debtors' estates, but also facilitate such distributions to the extent possible, and encourages the Debtors and other parties in interest in the Chapter 11 Cases to do the same.

## RESERVATION OF RIGHTS

8.    This Statement is submitted without prejudice to, and with a full reservation of, the Official Committee's rights, claims, defenses and remedies with respect to the Motion and

---

settlement-for-overdose-recovery-team/article_d143799a-d94f-11ed-9c6e-2bb93d4aedaf.html; Keri Brenner, *Marin Gets $800K Annually to Target Overdose Prevention* (Mar. 29, 2023), https://www.marinij.com/2023/03/29/marin-gets-800k-annually-to-target-overdose-prevention/; Shannon Kelly, *Amherst, Surrounding Counties to Receive Additional Opioid Settlement Money* (Mar. 14, 2023), https://newsadvance.com/community/new_era_progress/news/amherst-surrounding-counties-to-receive-additional-opioid-settlement-money/article_24b486f8-c35e-11ed-b43c-93d231dc7e99.html; Mayor's Press Office, *City of Chicago Announces New Initiatives to Combat the Opioid Epidemic Using Funds from Settlements with Pharmaceutical Companies* (Mar. 3, 2023), https://www.chicago.gov/city/en/depts/mayor/press_room/press_releases/2023/march/OpioidEpidemicInitiatives.html.

[12] *In re Insys Therapeutics, Inc.,* et al., No. 19-11292 (KG) (Bankr. D. Del.).

[13] *In re Mallinckrodt plc*, et al., No. 20-12522 (JTD) (Bankr. D. Del.).

6

pleadings filed in response thereto (and the items discussed in such pleadings), including the right to amend, modify or supplement this Statement, to participate in any discovery and be heard at any hearing related to the Motion, and without in any way limiting any other rights of the Official Committee to bring such concerns before the Court on any grounds and in any vehicle as may be appropriate.

| | |
|---|---|
| Dated: New York, New York<br>April 20, 2023 | AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>By: /s/ *Arik Preis*<br>Arik Preis<br>Mitchell Hurley<br>Sara L. Brauner<br>Edan Lisovicz<br>One Bryant Park<br>New York, New York 10036<br>Tel: (212) 872-1000<br>Fax: (212) 872-1002<br>apreis@akingump.com<br>mhurley@akingump.com<br>sbrauner@akingump.com<br>elisovicz@akingump.com<br><br>*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.*, et al. |