**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649 (SHL)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' AVRIO ASSETS, (II) APPROVING THE DESIGNATION OF ATLANTIS CONSUMER HEALTHCARE INC., A WHOLLY OWNED SUBSIDIARY OF ARCADIA CONSUMER HEALTHCARE INC., AS THE STALKING HORSE BIDDER FOR THE AVRIO ASSETS, (III) AUTHORIZING AND APPROVING ENTRY INTO THE STALKING HORSE ASSET PURCHASE AGREEMENT, (IV) APPROVING BID PROTECTIONS, (V) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF DEBTORS' AVRIO ASSETS, (VI) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION, AND SALE HEARING, (VII) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VIII) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**," or "**Purdue**") in the above-captioned chapter 11 cases (the "**Cases**") for entry of an order, pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, 6006-1, 9006-1, and 9013-1,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(I)(a) approving Bidding Procedures for the sale of the Avrio Assets, (b) approving the designation of Atlantis Consumer Healthcare Inc. as the Stalking Horse Bidder for the Avrio Assets, (c) authorizing and approving entry into the Stalking Horse Agreement, (d) approving Bid Protections, (e) scheduling an Auction for, and a hearing to approve, the sale of the Debtors' Avrio Assets, (f) approving the Noticing Procedures, (g) approving the Assumption and Assignment Procedures, and (h) granting related relief, and (II)(a) approving the sale of the Debtors' Avrio Assets free and clear of liens, claims, interests, and encumbrances, (b) authorizing the assumption and assignment of certain Contracts and Leases, and (c) granting related relief, in each case, as more fully described in the Motion; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due, proper, and adequate notice of the Motion under Bankruptcy Rule 6004(a) and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Schnitzler Declaration; and the Court having held a hearing on the Motion, as it pertains to the Bidding Procedures (the "**Bidding Procedures Hearing**"); and the Court having found that the legal and factual bases set forth in the Motion and the Schnitzler Declaration and at the Bidding Procedures Hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion, as it pertains to the Bidding

Procedures, being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Bidding Procedures Hearing, and the proposed entry of the Bidding Procedures Order is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of the Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion, as it pertains to the Bidding Procedures and Bid Protections, has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties.

C.      The Bidding Procedures in the form attached hereto are fair, reasonable, and appropriate, and are designed to maximize recoveries from a sale of the Avrio Assets.

D.      The Bidding Procedures were negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder, and the Stalking Horse Agreement was negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder.  The Stalking Horse Agreement represents the highest or otherwise best offer that the Debtors have received to

date to purchase the Avrio Assets. The process for selection of the Stalking Horse Bidder was fair and appropriate under the circumstances and in the best interests of the Debtors' estates and their stakeholders.

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and, thereby, (i) approve the Bidding Procedures, (ii) approve the designation of the Stalking Horse Bidder, (iii) authorize and approve entry into the Stalking Horse Agreement, (iv) approve the Bid Protections under the terms and conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, (v) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the Bidding Procedures, (vi) approve the Noticing Procedures and the forms of notice, and (vii) approve the Assumption and Assignment Procedures and the forms of relevant notice. Such compelling and sound business justification, which was set forth in the Motion and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

F.      The Bid Protections, as approved by this Order, are fair and reasonable, provide a benefit to the Debtors' estates and stakeholders and represent a prudent exercise of the Debtors' sound business judgment.

G.      If triggered in accordance with the terms of the Stalking Horse Agreement, the payment of the Bid Protections, under this Order and upon the terms and conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, is (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) reasonably tailored to encourage, rather than hamper, bidding for the Avrio Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the

Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Avrio Assets, (iii) of substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein, (iv) reasonable and appropriate, (v) a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Avrio Assets, and (vi) reasonable in relation to the Stalking Horse Bidder's efforts, the magnitude of the Sale Transaction, and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction and commitment of capital in connection therewith.  Without the Bid Protections, the Stalking Horse Bidder is unwilling to be bound under the Stalking Horse Agreement (including, without limitation, the obligation to maintain its committed offer while such offer is subject to higher or better offers, as contemplated by the Bidding Procedures and the Stalking Horse Agreement).

H.      The Stalking Horse Bidder is a third party purchaser and is unrelated to any of the Debtors.  Neither the Stalking Horse Bidder, nor any of its affiliates, subsidiaries, officers, directors, members, partners, or principals, or any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

I.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

J.      The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto and the Potential Assumption and Assignment Notice attached hereto) are reasonably calculated to

provide each Counterparty to the Potential Assigned Contracts with proper notice of (i) the potential assumption and assignment of such Potential Assigned Contracts by the Successful Bidder (including the Stalking Horse Bidder) or any of their known proposed assignees (if different from the Successful Bidder) and (ii) the requirement that each such Counterparty assert any objection to the proposed Cure Costs by the Cure Objection Deadline or otherwise be barred from asserting claims arising from events occurring prior to the effective date of the assumption and assignment of such Potential Assigned Contracts or any later applicable effective date following assumption and assignment of such Potential Assigned Contracts.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Any objections to the Motion or the relief requested therein, as it pertains to the Bidding Procedures and Bid Protections, that have not been adjourned, withdrawn, or resolved are overruled in all respects.

2.      The Bidding Procedures, in substantially the form attached hereto as **<u>Exhibit 1</u>**, are approved and fully incorporated into this Order and the Debtors are authorized, but not directed, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

3.      The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse Agreement is deemed a Qualified Bid.  In the event that no other Qualified Bids are submitted, the Debtors shall deem the Stalking Horse Bidder to be the Successful Bidder, in accordance with the terms and conditions of this Order (including the Bidding Procedures) and the Stalking Horse Agreement.

4.      The Debtors are hereby authorized to enter into the Stalking Horse Agreement, and

the Stalking Horse Agreement, and all other ancillary documents and all terms and conditions

thereof, are hereby approved, subject to the terms and conditions of this Order (including the

Bidding Procedures) and the entry of the Sale Order.

5.      Nothing herein shall prejudice the rights of the Debtors to seek by separate motion,

in the exercise of their sound business judgment and fiduciary duties, in consultation with the

Consultation Parties, the authority to sell assets of the Debtors' estates pursuant to section 363 of

the Bankruptcy Code.

6.      <u>Bid Deadline</u>.  As further described in the Bidding Procedures, the Bid Deadline

shall be at **5:00 p.m. (prevailing Eastern Time) on May 15, 2023**.

7.      <u>Auction</u>.  In the event the Debtors receive, on or before the Bid Deadline, one or

more Qualified Bids in addition to the Stalking Horse Bid, an Auction shall be conducted at the

offices of Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New

York 10001 at **10:00 a.m. (prevailing Eastern Time) on May 17, 2023**, or such later time on

such day or such other place as the Debtors (after consultation with the Consultation Parties) shall

notify all Qualified Bidders (including the Stalking Horse Bidder). The Qualified Bidders,

including the Stalking Horse Bidder, must appear in person through duly-authorized

representatives at the Auction. The Debtors are authorized to conduct the Auction in accordance

with the Bidding Procedures.

8.      If no Qualified Bids are submitted by the Bid Deadline other than the Stalking

Horse Bid, the Debtors will cancel the Auction and seek approval of the transactions contemplated

in the Stalking Horse Bid at the Sale Hearing.  If applicable, as soon as reasonably practicable after

the Bid Deadline, the Debtors shall file and post on the Case Information Website a notice

cancelling the Auction and identifying the Stalking Horse Bid as the Successful Bid.  In no event shall the Consultation Parties have fewer than four days before the Sale Hearing to object to the Successful Bid or to the Stalking Horse Bid, absent consent of the Consultation Parties.

9.      Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Court, the Debtors will not consider bids after the Auction has closed.

10.      The form of Sale Notice attached hereto is hereby approved.

11.      As soon as reasonably practicable after entry of this Order, the Debtors shall serve the Sale Notice by first class or overnight mail upon the following:  (a) the entities on the Master Service List (as defined in the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [D.I. 498] and available on the Debtors' case website at https://restructuring.ra.kroll.com/purduepharma); (b) all Counterparties to Contracts and Leases; (c) the Internal Revenue Service; (d) the Department of Justice; (e) the Food and Drug Administration; (f) the Department of Health and Human Services; (g) any other local, state and federal agencies that have issued licenses or permits to Avrio Health L.P. with respect to the operation and use of the Avrio Assets; (h) all entities known to have expressed an interest to the Debtors in a transaction involving any material portion of the Avrio Assets during the past six (6) months; and (i) any person or entity with a particularized interest in the subject matter of this Motion (collectively, the "**Sale Notice Parties**").  In addition, as soon as reasonably practicable after entry of this Order, the Debtors will (i) publish the Sale Notice in the national edition of the *Wall Street Journal* and (ii) serve the Sale Notice via email (or, in instances where no email address is available, via first class mail) on each party that filed a proof of claim against Avrio Health L.P. in these Cases.

12.     Service of the Sale Notice on the Sale Notice Parties in the manner described in this

Order constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or

further notice is required.

13.     Promptly after the conclusion of the Auction and the selection of the Successful

Bid and Alternate Bid, the Debtors shall file and post on the Case Information Website a notice

identifying such Successful Bid and Alternate Bid with the Court.

14.     <u>Sale Objections</u>.  Objections to the relief sought in the Sale Order must (a) be in

writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with

specificity, the legal and factual bases thereof, (d) be filed with the Court no later than **4:00 p.m.

(prevailing Eastern Time) on May 19, 2023** and (e) be served on (1) counsel to the Debtors, (A)

Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn:

Marshall S. Huebner, Eli J. Vonnegut, Christopher S. Robertson, and Dylan A. Consla, and (B)

Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001,

Attn: Marie L. Gibson and A. Caroline M. Frizzo; (2) counsel to the Consultation Parties,

consisting of (i) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, Bank of

America Tower, One Bryant Park, New York, New York 10036, Attn: Arik Preis and Sara L.

Brauner; (ii) counsel for the Ad Hoc Committee: Kramer Levin Naftalis & Frankel LLP, 1177 6th

Ave, New York, NY 10036, Attn: Kenneth H. Eckstein; and (iii) counsel for the MSGE Group:

Caplin & Drysdale, Chartered, 1 Thomas Cir NW # 1100, Washington, DC 20005, Attn: Kevin

Maclay; (3) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Ave, New

York, New York 10022, Attn: Christopher Marcus, P.C., Constantine N. Skarvelis, P.C., and

Jordan E. Elkin; and (4) the U.S. Trustee (collectively, the "**Objection Notice Parties**").  If a

timely objection is filed and served in accordance with this paragraph, the terms of any Sale

Transaction affected by such objection shall not be approved until the objection is resolved either consensually or by order of the Court.

15.    <u>Sale Hearing</u>.  The Sale Hearing shall be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on **May 23, 2023 at 11:00 a.m. (prevailing Eastern Time)** or such other date and time that the Court may later direct; <u>provided</u>, <u>however</u>, that the Sale Hearing may be adjourned by the Debtors by announcement of the adjournment in open court or on the Court's docket.  Pursuant to **General Order M-543**, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted via Zoom for Government® so long as General Order M-543 is in effect or unless otherwise ordered by the Court.  Parties wishing to appear at, or attend, a hearing conducted via Zoom for Government® videoconference are required to register their appearance by 4:00 p.m. (prevailing Eastern Time) the day before such hearing at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

16.    As soon as reasonably practicable after the completion of the Auction or following the cancellation of the Auction if there are no Qualified Bids other than the Stalking Horse Bid submitted by the Bid Deadline, the Debtors shall file a final form of order approving the Sale Transaction as agreed upon between the Debtors (in consultation with the Consultation Parties) and the Successful Bidder.

17.    <u>Bid Protections</u>.  Pursuant to sections 105, 363, 364, 503, and 507 of the Bankruptcy Code, the Debtors are hereby authorized and directed to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Bidding Procedures and the Stalking Horse Agreement without further order of this Court.

The dollar amounts of the Break-Up Fee and Expense Reimbursement are hereby approved.  The Stalking Horse Bidder shall be entitled to receive the Bid Protections in accordance with the terms and conditions of the Stalking Horse Agreement and the Bidding Procedures.  The Debtors' obligation to pay the Bid Protections shall be the joint and several obligations of the Debtors and shall survive termination of the Stalking Horse Agreement, dismissal or conversion of any of the Cases, and confirmation of any plan of reorganization or liquidation.  The Break-Up Fee and Expense Reimbursement shall be allowed as superpriority administrative expense claims in the Cases under sections 364(c)(1), 503(b), 507(a)(2) and 105(a) of the Bankruptcy Code with priority over any and all administrative expenses of any kind, including those specified under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

18.    _Assumption and Assignment Procedures_.    The assumption and assignment procedures set forth in the Motion (the "**Assumption and Assignment Procedures**") are hereby approved.

19.    As soon as reasonably practicable following entry of this Order, the Debtors shall file with the Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and a list of the Potential Assigned Contracts (the "**Potential Assigned Contracts Schedule**") that specifies (a) each of the Contracts and Leases that potentially could be assumed and assigned in connection with the sale of the Avrio Assets, including the name of each Counterparty and (b) the proposed Cure Cost with respect to each Potential Assigned Contract.

20.    _Potential Assumption and Assignment Notice_.    The Debtors shall, as soon as reasonably practicable after entry of this Order (but in any event, so as to provide sufficient notice such that any required responses from any Counterparties are due prior to the scheduled date of

the Auction as specified in the Bidding Procedures), serve on each relevant Counterparty the Potential Assumption and Assignment Notice, which shall (a) identify the Potential Assigned Contracts, (b) list the Debtors' good faith calculation of the Cure Costs with respect to the Potential Assigned Contracts identified on the Potential Assumption and Assignment Notice, (c) expressly state that assumption or assignment of an Assigned Contract or Assigned Lease is not guaranteed and is subject to Court approval, (d) prominently display the deadline to file an Assumption and Assignment Objection (as hereinafter defined), and (e) prominently display the date, time, and location of the Sale Hearing. The Debtors shall serve on all parties requesting notice pursuant to Bankruptcy Rule 2002, via first class mail, a modified version of the Potential Assumption and Assignment Notice, without the Potential Assigned Contracts Schedule, which will include instructions regarding how to view the Potential Assigned Contracts Schedule on the Case Information Website; provided, that the Debtors shall not be obligated to pursue supplemental service of such Potential Assumption and Assignment Notice with respect to any such notice that is returned to the Debtors as undeliverable so long as the Debtors have confirmed that any such notice was sent to the applicable physical address on file in the Debtors' books and records and no other physical address could be obtained after reasonable diligence.

21.     Objection Deadlines. Any Counterparty may object to the potential or proposed assumption or assignment of its Assigned Contract or Assigned Lease, the Debtors' proposed Cure Costs, if any, or the ability of the Successful Bidder to provide adequate assurance of future performance (an "**Assumption and Assignment Objection**"). All Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes is required to cure defaults under the relevant Assigned

Contract or Assigned Lease, (d) be filed with the Court no later than **17 days from the date of service of the Potential Assumption and Assignment Notice** (the "**Assumption and Assignment Objection Deadline**"), and (e) be served on the Objection Notice Parties.

22.     If following the Auction, the Stalking Horse Bidder is not selected by the Debtors as the Successful Bidder, then the Debtors shall serve the Notice of Auction Results on each Counterparty that received a Potential Assumption and Assignment Notice at the same time as such Notice of Auction Results is filed with the Court and published on the Case Management Website.  Objections of any Counterparty related solely to the identity of and adequate assurance of future performance provided by the Successful Bidder must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, (d) be filed no later than **May 19, 2023 at 4:00 p.m.** (prevailing Eastern Time) and (e) be served on the Objection Notice Parties.

23.     <u>Resolution of Assumption and Assignment Objections</u>.  If a Counterparty files a timely Assumption and Assignment Objection, such objection shall be heard at the Sale Hearing or such later date that the Debtors determine in consultation with the Successful Bidder and the Consultation Parties, and subject to the Court's calendar.  If such objection has not been resolved prior to the closing of the Sale Transaction (whether by an order of the Court or by agreement with the Counterparty), the Successful Bidder may elect, in its sole and absolute discretion, one of the following options:  (a) treat such Counterparty's contract or lease as property excluded from the Avrio Assets (an "**Excluded Contract**" or "**Excluded Lease**", respectively); or (b) temporarily treat the Potential Assigned Contract as an Excluded Contract or Excluded Lease, as applicable (a "**Designated Agreement**"), proceed to the closing of the Sale Transaction with respect to all other Avrio Assets, and determine whether to treat the Designated Agreement as an Assigned Contract

or Assigned Lease, as applicable, or an Excluded Contract or Excluded Lease, as applicable, within ten business days after resolution of such objection (whether by order of the Court or by agreement of the Successful Bidder (which may be the Stalking Horse Bidder), the Counterparty, and the Debtors).

24.     <u>Failure To File Timely Assumption and Assignment Objection</u>.  If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assigned Contract or Assigned Lease. Notwithstanding anything to the contrary in the Assigned Contract or Assigned Lease, or any other document, the Cure Costs set forth in the Potential Assumption and Assignment Notice or the Supplemental Assumption and Assignment Notice (as defined below) shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assigned Contract or Assigned Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, due or to become due, accrued, absolute, contingent, or otherwise, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Assigned Contract or Assigned Lease against the Debtors, the Successful Bidder (including the Stalking Horse Bidder), or the property of any of them.

25.     <u>Modifications and Additions</u>.  Following the conclusion of the Auction, if any, and the selection of the Successful Bidder, the Debtors reserve the right, in accordance with the Stalking Horse Agreement or as otherwise agreed with the Successful Bidder, at any time before the closing of the Sale Transaction, to modify the previously-stated Cure Costs associated with

any Potential Assigned Contract, subject to notice requirements in the Assumption and Assignment Procedures.

26.     In the event that, after the closing of the Sale Transaction, the Debtors or the Successful Bidder identify any contract or lease with respect to the Avrio Assets to which Avrio is a counterparty and that is not a Shared Contract (as defined in the Stalking Horse Agreement), that is not listed on the Potential Assigned Contracts Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assigned Contract or Assigned Lease, as applicable, and the Debtors shall seek to assume and assign such Assigned Contract or Assigned Lease in accordance with the Bidding Procedures, with all additional Cure Costs related to such Assigned Contracts or Assigned Leases to be paid by the Successful Bidder, in accordance with the terms of the Stalking Horse Agreement.

27.     In the event that any such contract or lease is added to the Potential Assigned Contracts Schedule, or previously-stated Cure Costs are modified in accordance with the Assumption and Assignment Procedures, the Debtors will promptly serve a supplemental assumption and assignment notice, by first class mail and subject to the proviso set forth in the last sentence of paragraph 20 above, on the applicable Counterparty (each, a "**Supplemental Assumption and Assignment Notice**").  Each Supplemental Assumption and Assignment Notice will include the same information with respect to the applicable Assigned Contract or Assigned Lease as is required to be included in the Potential Assumption and Assignment Notice.

28.     Any Counterparty listed on a Supplemental Assumption and Assignment Notice whose contract or lease is proposed to be assumed and assigned may object to the proposed assumption or assignment of its Assigned Contract or Assigned Lease, the Debtors' proposed Cure

Costs (to the extent modified from the previously-stated amount), or the ability of the Successful Bidder to provide adequate assurance of future performance (a "**Supplemental Assumption and Assignment Objection**"). All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes is required to cure defaults under the relevant Assigned Contract or Assigned Lease, (d) no later than **17 days from the date of service of such Supplemental Assumption and Assignment Notice,** (i) be filed with the Court and (ii) be served on the Objection Notice Parties. Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the same manner as an Assumption and Assignment Objection.

29.    <u>Reservation of Rights</u>. The inclusion of an Assigned Contract, Assigned Lease, or Cure Costs with respect thereto on a Potential Assumption and Assignment Notice, the Potential Assigned Contracts Schedule, or a Supplemental Assumption and Assignment Notice shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidder (including the Stalking Horse Bidder), or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to each Assigned Contract and Assigned Lease listed on a Potential Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, and the Potential Assigned Contracts Schedule. The Debtors' inclusion of any Assigned Contract or Assigned Lease on the Potential Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, and/or Potential Assigned Contracts Schedule shall not be a guarantee that such Assigned Contract or Assigned Lease ultimately will be assumed or assumed and assigned. Only those Assigned Contracts and Assigned

Leases that are included on a schedule of assumed and assigned contracts attached to a definitive purchase agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) (the "**Final Assigned Contracts Schedule**"), which will be filed on the docket of these Cases and provided to each Counterparty in accordance with paragraphs 18-28 hereof, will be assumed and assigned to the Successful Bidder.

30.    For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in this Order, the Bidding Procedures, or the Motion shall be construed to, in any way amend, impair, prejudice, alter, or otherwise modify the terms of the Stalking Horse Agreement or the Stalking Horse Bidder's rights thereunder.  The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the sale of the Avrio Assets and related matters, including the right to object to the sale of the Avrio Assets or any portion thereof (including the conduct of the Auction and interpretation of the Bidding Procedures).

31.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

32.    This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

33.    Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rules 6004(a), 6004(h), 6006(d), or 9014) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

34.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to (a) deliver any notice provided for in the Stalking Horse Agreement, including, without limitation, a notice terminating the Stalking Horse Agreement, and (b) take any and all actions permitted under the Stalking Horse Agreement in accordance with the terms and conditions thereof.

36.     To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

37.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, or enforcement of this Order.  Such jurisdiction, including, for the avoidance of doubt, the jurisdiction to implement, interpret and enforce the Sale Hearing, the Bidding Procedures, the Stalking Horse Agreement, or the Sale Order, shall continue notwithstanding that the sale of the Avrio Assets may be consummated after the confirmation date of any plan of reorganization of any of the Debtors.

Dated: April 28, 2023
White Plains, New York

                                        */s/ Sean H. Lane*
                                        THE HONORABLE SEAN H. LANE
                                        UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Revised Proposed Bidding Procedures**

## BIDDING PROCEDURES[1]

The bidding procedures set forth below (these "**Bidding Procedures**") detail the process by which Purdue Pharma L.P. and certain of its affiliates, as debtors and debtors in possession (collectively, "**Purdue**" or the "**Debtors**") are authorized by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") to conduct a sale of substantially all of the assets of the Debtors' consumer health business, which is currently conducted by Avrio Health L.P. (collectively, and as further defined in the Stalking Horse Agreement, the "**Avrio Assets**").[2]  A party may participate in the bidding process by submitting a bid for the Avrio Assets.

The Debtors, in consultation with the Consultation Parties, shall determine the highest or otherwise best offer for the sale of the Avrio Assets.

**Any interested bidder should contact, as soon as practicable:**

**PJT PARTNERS LP.[3]**
280 Park Ave Ste 16, New York, NY 10017
Attn.: Jamie O'Connell (oconnell@pjtpartners.com, 212-364-5677)
Rafael Schnitzler (schnitzler@pjtpartners.com, 212-364-3881)
Thomas Melvin (melvin@pjtpartners.com, 212-364-7948)

These Bidding Procedures describe, among other things, (i) the Avrio Assets offered for sale, (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (iii) the conduct of the Auction (as defined below), if necessary, (iv) the selection of the Successful Bidder (as defined below), and (v) the approval by the Bankruptcy Court of the sale of the Avrio Assets to the Successful Bidder.

Throughout the sale process, the Debtors and their advisors will regularly and timely consult with the following parties (collectively, the "**Consultation Parties**"): the official committee of unsecured creditors (the "**Committee**") and its advisors, including Akin Gump Strauss Hauer & Feld LLP, Jefferies LLC, and Province, LLC; the ad hoc committee of governmental and other contingent litigation claimants (the "**Ad Hoc Committee**") and its advisors, including Kramer Levin Naftalis & Frankel LLP, FTI Consulting and Houlihan Lokey

---

[1] To the extent the Bidding Procedures require the Debtors to consult with the Consultation Parties in connection with making a determination or taking any action, the Debtors shall do so in a regular and timely manner prior to making such determination or taking such action (to the extent practicable).  For the avoidance of doubt, unless approved by the Bankruptcy Court, no amendment or other modification to these Bidding Procedures (or otherwise provided herein) shall be made by the Debtors without the consent of the Consultation Parties.

[2] These bidding procedures were approved by the Bankruptcy Court on April 25, 2023 (the "**Bidding Procedures Order**").  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

[3] PJT Partners LP., in its capacity as investment banker to the Debtors, is referred to herein as "**PJT**."

Capital, Inc.; and the Multi-State Governmental Entities Group (the "**MSGE Group**") and its advisors, including Caplin & Drysdale, Chartered.

The Debtors shall not consult with or provide copies of bids regarding any assets to any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for the Avrio Assets pending, or expressed any interest (written or verbal) in bidding for the Avrio Assets; *provided*, *however*, that if such insider or affiliate of the Debtors chooses not to submit any bid, then such party may receive copies of all bids following expiration of the latest possible Bid Deadline (as such Bid Deadline may be extended hereunder). Notwithstanding the foregoing, if a member of the Committee, submits a Qualified Bid (as hereinafter defined), the Committee will maintain its consultation rights as a Consultation Party; provided that the Committee shall exclude such member from any discussions or deliberations regarding a transaction involving the applicable Avrio Assets and shall not provide any confidential information regarding the Avrio Assets or a transaction involving the Avrio Assets to the bidding Committee member. For the avoidance of doubt, in no event will the Sackler family or any of its direct or indirect affiliates, or any of their respective employees, advisors or other representatives have any involvement in the evaluation of bids by the Debtors or any of the Consultation Parties or in the selection by the Debtors of the Successful Bid as provided for herein.

The Debtors selected the bid (the "**Stalking Horse Bid**") submitted by Atlantis Consumer Healthcare Inc. (the "**Stalking Horse Bidder**") as the highest or otherwise best offer for the sale of the Avrio Assets to date following a comprehensive bidding process completed before the filing of these Bidding Procedures. The Stalking Horse Bidder has executed that certain Asset Purchase Agreement, dated April 4, 2023, entered into by and among Avrio Health L.P., as seller, Atlantis Consumer Healthcare Inc., as purchaser, and Arcadia Consumer Healthcare, Inc., as guarantor (as may be amended, supplemented or otherwise modified by the parties thereto in accordance with the terms thereof, and including the disclosure schedules and exhibits attached thereto, the "**Stalking Horse Agreement**") pursuant to which the Stalking Horse Bidder has agreed to purchase the Acquired Assets (as defined in the Stalking Horse Agreement), subject to the terms and conditions set forth therein. Having announced the Stalking Horse Bid, the Debtors will now conduct a subsequent round of open bidding during these Cases intended to obtain the highest or otherwise best offer for the Avrio Assets. The Stalking Horse Bid is subject to higher or otherwise better offers in accordance with the terms and conditions of these Bidding Procedures and the Bidding Procedures Order.

1.    **PARTICIPATION REQUIREMENTS**

(a)    **Interested Parties**

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (other than the Stalking Horse Bidder, which shall be deemed a Potential Bidder and a Qualified Bidder) (each, an "**Interested Party**") must deliver the following items (unless previously delivered) to PJT so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on May 2, 2023:

> i.    an executed confidentiality agreement in form and substance satisfactory to the Debtors; *provided that* Interested Parties that

executed a confidentiality agreement with the Debtors from and after December 2022 relating to the Sale Transaction and the Avrio Assets and which remains in full force and effect will not be required to execute an additional confidentiality agreement to participate in the bidding process;

ii.    a statement and other factual support demonstrating, to the Debtors' satisfaction, in consultation with the Consultation Parties, that the Interested Party has a *bona fide* interest in purchasing the Avrio Assets;

iii.    a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the Bid Deadline (as defined below) by which such due diligence will be completed; and

iv.    sufficient information, as defined by the Debtors, in consultation with the Consultation Parties, to allow the Debtors, in consultation with the Consultation Parties, to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close a sale transaction pursuant to these Bidding Procedures, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in consultation with the Consultation Parties) or, if the Interested Party is an entity formed for the purpose of acquiring the Avrio Assets, (A) current audited financial statements of the equity holder(s) (the "**Sponsor(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in consultation with the Consultation Parties), (B) a written commitment acceptable to the Debtors and their advisors, in consultation with the Consultation Parties, that the Sponsor(s) are responsible for the Interested Party's obligations in connection with the Bidding Process, (C) copies of any documents evidencing any financing commitments necessary to consummate the transaction, and (D) any other evidence the Debtors, in consultation with the Consultation Parties, may reasonably request to evaluate the Interested Party and if applicable, the relevant Sponsor, including with respect to their fitness to participate in the bidding process or ability to timely acquire the Avrio Assets.

If the Debtors, in consultation with the Consultation Parties, determine, after receipt of the items identified above, that an Interested Party has a *bona fide* interest in purchasing the Avrio Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will deliver to such Potential Bidder (a) an electronic copy of the Stalking Horse Agreement and (b) access to the

3

Debtors' confidential electronic data room concerning the Avrio Assets (the "**Data Room**"), which shall include a form of Sale Order (as defined below).

### (b) Due Diligence

Until the Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with due diligence access and additional information, as may be requested by a Potential Bidder, to the extent that the Debtors determine, in consultation with the Consultation Parties, that such requests are reasonable and appropriate under the circumstances. All due diligence requests shall be directed to PJT. The Debtors, with the assistance of PJT, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. To the extent any written due diligence provided to a Potential Bidder has not previously been uploaded to the Data Room, the Debtors will upload such diligence to the Data Room as soon as reasonably practicable.

Unless otherwise determined by the Debtors, the availability of due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder or (ii) the Bidding Process is terminated in accordance with its terms.

## 2. QUALIFIED BIDS

Each offer, solicitation, or proposal by a Potential Bidder (other than the Stalking Horse Bidder) must satisfy each of the following conditions in order for such offer, solicitation, or proposal to be deemed a "**Qualified Bid**" and for such Potential Bidder to be deemed a "**Qualified Bidder**," unless any such conditions that are not satisfied are waived by the Debtors in consultation with the Consultation Parties:

### (a) Bid Deadline

A Potential Bidder who desires to be deemed a Qualified Bidder must deliver to PJT, with copies to (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Marshall S. Huebner, Eli J. Vonnegut, Christopher S. Robertson, and Dylan A. Consla), and (ii) Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001 (Attn: Marie L. Gibson and A. Caroline M. Frizzo), the Required Bid Documents (as defined below) so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on May 15, 2023 (the "**Bid Deadline**"). The Debtors, in consultation with the Consultation Parties, without the need for further Bankruptcy Court approval, may extend the Bid Deadline by a reasonable period of time if the Debtors believe that such extension would further the goal of attaining the highest or otherwise best offer for the Avrio Assets. If the Debtors extend the Bid Deadline, the Debtors will promptly notify all Potential Bidders of such extension.

### (b) Bid Requirements

All bids (other than the Stalking Horse Bid, which has satisfied or is deemed to have satisfied each of the below requirements, and with respect to which the deposit requirements will be governed by the Stalking Horse Agreement), must include the following items (collectively, the "**Required Bid Documents**"):

- a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving the Avrio Assets identified in such offer;

- a duly authorized and executed purchase agreement satisfactory to the Debtors, based on the form of the Stalking Horse Agreement, marked to show any revisions, including, among other things, the purchase price for the Avrio Assets, together with all exhibits and schedules, in each case marked to show those amendments and modifications to the Stalking Horse Agreement and the proposed Sale Order;

- written evidence acceptable to the Debtors, in consultation with the Consultation Parties, demonstrating financial wherewithal, operational ability, and corporate authorization to consummate the proposed transaction, including, without limitation, the payment of any contingent or deferred consideration; and

- written evidence of a firm commitment for financing to consummate the proposed transaction, or other evidence of ability to consummate the proposed transaction, including, without limitation, the payment of any contingent or deferred consideration, without financing, in either case which is satisfactory to the Debtors, in consultation with the Consultation Parties.

A bid will be considered only if the bid:

- identifies the legal name of the purchaser (including any direct or indirect equity holders or other financial backers, and the terms of their respective participation if the purchaser is an entity formed for the purpose of consummating the proposed transaction);

- identifies the Avrio Assets to be purchased and the contracts and leases to be assumed;

- identifies the liabilities of the Debtors to be assumed;

- includes a statement of proposed terms for employees;

- sets forth the consideration for the Avrio Assets to be purchased and the Contracts and Leases to be assumed (the "**Bid Consideration**"); *provided that* the consideration for such Bid provides for (a) a purchase price payable in cash at Closing in an amount at least equal to $387,880,000, which

is the sum of (i) $368,000,000 (*i.e.* the Upfront Consideration under the Stalking Horse Agreement); *plus* (ii) the aggregate amount of the Bid Protections; *plus* (iii) $4,000,000.00 (the consideration in this clause (a), the "**Upfront Consideration**"), and (b) any contingent or deferred consideration in respect of IP (as defined in the Motion) (which may be none, subject to the following proviso); *provided, further*, that the total value to be provided to the Debtors under such Bid shall be at least equal to the Upfront Consideration plus the value of the Contingent IP Consideration under the Stalking Horse Bid, as determined by the Debtors in their reasonable business judgment and in consultation with the Consultation Parties;

- allocates the Bid Consideration among the Avrio Assets and Contracts and Leases to be assumed, and clearly indicates which portion of the Bid Consideration will be paid at Closing and which portion (if any) will be deferred or contingent (and, in the event that a portion is deferred or contingent, clearly indicates when such amount would be due and payable);

- is not conditioned on (i) obtaining financing or (ii) the outcome of unperformed due diligence;

- includes a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the proposed transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors, in consultation with the Consultation Parties, of the ability to obtain such approvals or consents as soon as reasonably practicable, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

- includes a statement by the bidder of the date when it would expect to consummate the transaction and, if such date is not promptly after the Sale Hearing, the reasons therefor;

- expressly states that the bidder agrees to serve as an Alternate Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as hereinafter defined) with respect to the applicable Avrio Assets;

- is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") in an amount equal to ten percent of the Upfront Consideration set forth in connection with such bid (except for the Stalking Horse Bidder, whose cash deposit shall be governed by the Stalking Horse Agreement) (any such deposit, a "**Good Faith Deposit**").  To the extent a Qualified Bid (other than the Stalking Horse Bid) is modified before, during, or after the Auction in any manner that increases the Upfront Consideration contemplated by such Qualified Bid, the Debtors reserve the right, in consultation with the Consultation Parties, to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent of the increased Upfront Consideration;

- sets forth the representatives that are authorized to appear and act on behalf of the bidder in connection with the proposed transaction;

- fully discloses any connection or agreements with the Debtors, any other known Potential Bidder and/or any current or former employee, officer, director, or affiliate of the Debtors or their affiliates;

- indicates that the bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of payment;

- includes evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such contracts and leases;

- indicates whether or not the bidder will assume all cure costs associated with any Contracts and Leases it intends to assume; and

- is received on or before the Bid Deadline (as such deadline may be extended in accordance with these Bidding Procedures) (it being understood that the Debtors can extend such deadline if necessary for a particular bidder to the extent necessary or requested in their reasonable business judgment).

A bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements.  Within one day of the Debtors' receipt of any bid for the Avrio Assets, the Debtors shall provide such bid to the Stalking Horse Bidder and the Consultation Parties; *provided* that **s**uch bid may be withheld from members of the Committee or redacted in accordance with the *Third Amended Protective Order* [D.I. 1935] or to the extent that the Debtors determine, in their reasonable business judgment and in consultation with the advisors to the Consultation Parties, that sharing such bid would be likely to have a negative impact on potential bidding or otherwise be contrary to goal of maximizing value for the Debtors' estates from the sale process. The Debtors shall have the right, in their reasonable business judgment, in a manner consistent with the exercise of their fiduciary duties, and in consultation with the Consultation Parties, to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more of the Required Bid Documents. If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors, in consultation with the Consultation Parties, may provide the bidder with the opportunity to remedy any deficiencies following the Bid Deadline.  If any bid is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bid, and the applicable bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors shall promptly instruct the Deposit Agent to return such bidder's Good Faith Deposit. Notwithstanding the foregoing, the Stalking Horse Bidder shall be deemed a Qualified Bidder and the Stalking Horse Agreement shall be deemed a Qualified Bid for all purposes in connection with these Bidding Procedures, and the Stalking Horse Bidder shall, without any further action, be entitled to participate in any Auction.

All Qualified Bids will be considered by the Debtors; bids other than Qualified Bids will not be considered.  Notwithstanding any other provision of these Bidding Procedures, the Debtors, in consultation with the Consultation Parties, may evaluate bids on any grounds, including, but not limited to, (i) the amount of the purchase price, including non-cash consideration and whether payment of any portion of the purchase price is deferred or contingent, set forth in the bid, (ii) the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, (iii) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit, (iv) the transaction structure and execution risk, including conditions to and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals, (v) the anticipated timing to closing, (vi) the impact on employees and employee claims against the Debtors, (vii) the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, (viii) the impact on trade and other creditors, and (ix) any other factors the Debtors, in consultation with the Consultation Parties, may reasonably deem relevant in their reasonable business judgment and in a manner consistent with their fiduciary duties (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).  For the avoidance of doubt, the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, may be grounds for the Debtors, in consultation with the Consultation Parties, to determine that such bid (i) is not a Qualified Bid or (ii) is not higher or otherwise better than any other Qualified Bid.

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all due diligence regarding the Avrio Assets that are the subject of the Auction prior to making any such bid, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Avrio Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Stalking Horse Bidder, the Stalking Horse Agreement, or, as to any other Successful Bidder, the Asset Purchase Agreement with such Successful Bidder. Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid is required to remain irrevocable (which, as it pertains to the Stalking Horse Bidder, shall be governed by the Stalking Horse Agreement in the event of any inconsistencies with these Bidding Procedures).

## 3.   **BID PROTECTIONS**

Recognizing the Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed transaction set forth in the Stalking Horse Agreement, and the benefit that those efforts provided to all Interested Parties, the Debtors' estates, their creditors, and other parties in interest, the Debtors have agreed that, among other circumstances set forth in the Stalking Horse Agreement, if the Stalking Horse Bidder is not the Successful Bidder or if the Debtors withdraw the motion prior to the entry of a Sale Order approving the Sale Transaction relating to the Avrio Assets, the Debtors will pay to the Stalking Horse Bidder a Break-Up Fee and an Expense Reimbursement. The payment of the Break-Up Fee, which is $11,910,000, and Expense Reimbursement, which shall not exceed $3,970,000, will be governed by the provisions of the Stalking Horse Agreement and the Bidding Procedures Order.

Other than any Bid Protections provided to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreement, no bidder or other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other bidding protection in connection with the submission of a bid for the Avrio Assets.

## 4.   **AUCTION**

In the event that the Debtors receive more than one Qualified Bid for Avrio Assets in addition to the Stalking Horse Bid, the Debtors shall conduct an auction (the "**Auction**") for such Avrio Assets. The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids. The Auction shall be conducted at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001 on May 17, 2023 at 10:00 a.m. (prevailing Eastern Time) or such later time on such day or such other place as the Debtors (in consultation with the Consultation Parties) shall notify all Qualified Bidders (including the Stalking Horse Bidder). The Qualified Bidders, including the Stalking Horse Bidder, must appear in person through duly-authorized representatives at the Auction. If no Qualified Bids for the Avrio Assets are submitted by the Bid Deadline other than

the Stalking Horse Bid, the Debtors will cancel the Auction and seek approval of the transaction contemplated in the Stalking Horse Bid at the Sale Hearing (as defined below).

Only representatives or agents of the Debtors, the Consultation Parties, and Qualified Bidders (and the legal and financial advisors to each of the foregoing) will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any Subsequent Bids at the Auction. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or the sale of the Avrio Assets as described herein, (b) has reviewed, understands, and accepts these Bidding Procedures, (c) has consented to the jurisdiction of the Bankruptcy Court, and (d) intends to consummate its Qualified Bid if it is selected as the Successful Bid.

Prior to the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders with (i) copies of the Qualified Bid that the Debtors believe, in consultation with the Consultation Parties, is the highest or otherwise best offer (the "**Starting Bid**"), (ii) an explanation of how the Debtors value the Starting Bid, and (iii) a list identifying all of the Qualified Bidders. The Debtors shall also provide copies of such Starting Bid (if applicable, marked against the Stalking Horse Bid) to all of the Qualified Bidders (including the Stalking Horse Bidder) and the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules for conducting the Auction (*e.g.*, the amount of time allotted to submit Subsequent Bids), *provided*, *however*, that such rules shall (a) not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Bankruptcy Court entered in connection herewith and (b) be disclosed to all Qualified Bidders.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in consultation with the Consultation Parties, determine that such Subsequent Bid is (i) with respect to the first round, a higher or otherwise better offer than the Starting Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids; *provided*, *however*, that with respect to each round of bidding, any Qualified Bid or Subsequent Bid must provide consideration at least equal to a minimum overbid of $2,000,000 (the "**Minimum Overbid**"). The Debtors reserve the right, in consultation with the Consultation Parties, to announce reductions or increases in the Minimum Overbid (or in valuing such bids) at any time during the Auction. For the avoidance of doubt, in any subsequent round of bidding, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the Bid Protections to be counted toward its bid in such round.

After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in consultation with the Consultation Parties, will determine and announce the bid that they believe to be the highest or otherwise best offer (the "**Leading Bid**"). Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration and consideration payable at closing and deferred or contingent consideration;

*provided*, *however*, that the value for such non-cash consideration or such deferred or contingent consideration shall be determined by the Debtors, in consultation with the Consultation Parties.

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

For the purpose of evaluating Subsequent Bids, the Debtors may, in consultation with the Consultation Parties, require a Qualified Bidder (including the Stalking Horse Bidder) submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to the Debtors, in consultation with the Consultation Parties) demonstrating such Qualified Bidder's ability to close the proposed transaction and pay the full consideration (including, without limitation, any deferred or contingent consideration).

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid, all Subsequent Bids, the Leading Bid, the Alternate Bid (as defined below), and the Successful Bid.

If a Qualified Bidder (other than the Stalking Horse Bidder) increases its bid at the Auction and is the Successful Bidder (as defined below), such bidder must increase its Good Faith Deposit to an amount equal to ten percent of the proposed Upfront Consideration submitted at the Auction within two days after the Auction.

5.    **SELECTION OF SUCCESSFUL BID AND ALTERNATE BID**

Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, shall (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction, (b) determine and identify the highest or otherwise best offer (the "**Successful Bid**"), (c) determine and identify the next highest or otherwise best offer (the "**Alternate Bid**"), and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (i) the identity of the party or parties that submitted the Successful Bid (the "**Successful Bidder**"), (ii) the amount and other material terms of the Successful Bid, (iii) the identity of the party or parties that submitted the Alternate Bid (the "**Alternate Bidder**"), and (iv) the amount and other material terms of the Alternate Bid. Each Qualified Bidder shall agree and be deemed to agree to be the Alternate Bidder if so designated. Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Court, the Debtors will not consider bids after the Auction has closed. As soon as reasonably practicable after the completion of the Auction, the Successful Bidder and the applicable Debtors shall complete and execute all agreements, instruments, and other documents necessary to consummate the applicable sale or other transaction contemplated by the applicable Successful Bid. Promptly following the selection of the Successful Bid and Alternate Bid, the Debtors shall file a notice of the Successful Bid and Alternate Bid with the Bankruptcy Court, together with a proposed order approving the transaction contemplated therein (the "**Sale Order**").

6.    **THE SALE HEARING**

The hearing to consider the proposed Sale Order (the "**Sale Hearing**") will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 1060 on **May 23, 2023 at 11:00 a.m. (prevailing Eastern time)**.  Pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("General Order M-543"), the Hearing will be conducted via Zoom for Government® so long as General Order M-543 is in effect or unless otherwise ordered by the Court.   Parties wishing to appear at, or attend, a hearing conducted via Zoom for Government® videoconference are required to register their appearance by 4:00 p.m. (prevailing Eastern Time) the day before such hearing at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl  The Sale Hearing may be adjourned by the Debtors, in consultation with the Consultation Parties and the Successful Bidder, by an announcement of the adjourned date at a hearing before the Bankruptcy Court or by filing a notice on the Bankruptcy Court's docket.  At the Sale Hearing, the Debtors will seek the Bankruptcy Court's approval of the Successful Bid and, at the Debtors' election, the Alternate Bid.

The Debtors' presentation to the Bankruptcy Court of the Successful Bid and Alternate Bid will not constitute the Debtors' acceptance of such bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court.  Following the Bankruptcy Court's entry of the Sale Order, the Debtors and the Successful Bidder shall proceed to consummate the transaction contemplated by the Successful Bid.  If the Debtors and the Successful Bidder fail to consummate the proposed transaction, then the Debtors shall file a notice with the Bankruptcy Court advising of such failure.  Upon the filing of such notice with the Bankruptcy Court, the Alternate Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate the transaction with the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.  If the failure to consummate the transaction contemplated by the Successful Bid is the result of a breach by the Successful Bidder (the "**Breaching Bidder**") of its asset purchase agreement, the Debtors reserve the right to seek all available remedies from such Breaching Bidder, subject to the terms of the applicable asset purchase agreement.

7.    **RETURN OF GOOD FAITH DEPOSIT**

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Alternate Bidder until the consummation of the transaction contemplated by the Successful Bid or the Alternate Bid, as applicable, in accordance with Section 6 above, except as otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned within four business days after the entry of the Sale Order.  At the closing of the transaction contemplated by the Successful Bid, the Successful Bidder will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon).  All remaining Good Faith Deposits of the Alternate Bidders (and all interest accrued thereon) held by the Deposit Agent will be released by the Deposit Agent four business days after the consummation of the transaction contemplated by the Successful Bid;

*provided*, *however*, that the Deposit Agent will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Bankruptcy Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

Notwithstanding anything herein to the contrary, the terms under which the Stalking Horse Bidder provided a Good Faith Deposit and the terms of its use, release, and return to the Stalking Horse Bidder will be governed by the Stalking Horse Agreement.

**8.    AS IS, WHERE IS**

The sale of the Avrio Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents, or their estates, except as provided in a purchase agreement, as approved by the Bankruptcy Court.

**9.    FREE AND CLEAR OF ANY AND ALL INTERESTS**

Except as otherwise provided in the Stalking Horse Agreement or another Successful Bidder's purchase agreement, all of the Debtors' right, title and interest in and to the Avrio Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Avrio Assets with the same validity and priority as such Interests applied against the Avrio Assets.

**10.    RESERVATION OF RIGHTS**

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right in their reasonable business judgment in a manner consistent with their fiduciary duties, in consultation with the Consultation Parties, to:

- determine which Interested Parties are Potential Bidders;

- determine which bidders are Qualified Bidders;

- determine which bids are Qualified Bids;

- determine which Qualified Bid is the Starting Bid;

- determine which Qualified Bid is the highest or otherwise best offer for the Avrio Assets and which is the next highest or otherwise best offer;

- reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, or (c) contrary to the best interests of the Debtors and their estates;

- impose additional terms and conditions with respect to all Potential Bidders;

- cancel the Auction;

- extend the deadlines set forth herein; and

- modify these Bidding Procedures and implement additional procedural rules that the Debtors determine, in consultation with the Consultation Parties, will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties, in each case, to the extent not materially inconsistent with these Bidding Procedures, the Bidding Procedures Order, and the Stalking Horse Agreement.

The Debtors shall provide notice in writing of any such modification to the Consultation Parties and any Qualified Bidder, including the Stalking Horse Bidder.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel). Accordingly, at any time prior to the Bankruptcy Court's entry of a Sale Order, the Debtors may withdraw the Motion and pursue an alternative transaction, including a plan of reorganization.

Nothing in these Bidding Procedures shall prevent any Interested Party, bidder, Stalking Horse Bidder, or Qualified Bidder from discussing the terms of its bid, the bidding procedures, the auction, or any other item related thereto directly with any of the Consultation Parties. Subject to consent and consultation rights of the Consultation Parties set forth herein, all parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items. All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or decision made by the Debtors as part of these Bidding Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

11.    **RELEVANT DATES**

| | |
|---|---|
| **April 25, 2023 at 11:00 a.m. (prevailing Eastern Time)** | Hearing to consider approval of the Bidding Procedures and entry of the Bidding Procedures Order |
| **April 26, 2023** | Target date for the Debtors to file Potential Assigned Contracts Schedule |
| **May 2, 2023 at 5:00 p.m. (prevailing Eastern Time)** | Potential Bidder deadline |
| **17 days from the date of service of the Potential Assumption and Assignment Notice** | Assumption and Assignment Objection Deadline |
| **May 15, 2023 at 5:00 p.m. (prevailing Eastern Time)** | Bid Deadline |
| **May 17, 2023 at 10:00 a.m. (prevailing Eastern Time)** | Auction (if any) to be held at the offices of Skadden, Arps, Slate, Meagher & Flom LLP |
| **May 17, 2023** | Target date for the Debtors to file with the Court the Notice of Auction Results |
| **May 19, 2023 at 4:00 p.m. (prevailing Eastern Time)** | Deadline to object to the Sale Transaction to the Successful Bidder |
| **May 23, 2023 at 11:00 a.m. (prevailing Eastern Time)** | Hearing to consider approval of the Sale Transaction and entry of the Sale Order |

**Form of Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | ) |
| | ) Case No. 19-23649 (SHL) |
| Debtors.[1] | ) |
| | ) (Jointly Administered) |
| | ) |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on September 15, 2019.

**PLEASE TAKE FURTHER NOTICE** that, on April 4, 2023 in connection with the proposed sale (the "**Sale Transaction**") of substantially all of the assets of the Debtors' consumer health business, which is currently conducted by Avrio Health L.P. (collectively, and as further defined in the Stalking Horse Agreement, the "**Avrio Assets**") to Atlantis Consumer Healthcare Inc. (the "**Stalking Horse Bidder**") or any other successful bidder (a "**Successful Bidder**") subject to an auction process (the "**Auction**"), if any, for the Avrio Assets, the Debtors filed a motion (the "**Bidding Procedures Motion**")[2] with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction (the "**Bidding Procedures**"), (b) payment of the Bid Protections to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Stalking Horse Agreement, (c) the form and manner of notice related to the Sale Transaction, and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2023, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction, and the Debtors'

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion, the Bidding Procedures Order, or the Bidding Procedures, as applicable.

entry into the Stalking Horse Agreement.  All parties interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

## Contact Persons for Parties Interest in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Avrio Assets must comply strictly with the Bidding Procedures.  Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as practicable:**

**PJT PARTNERS LP.[4]**
280 Park Ave Ste 16, New York, NY 10017
Attn.: Jamie O'Connell (oconnell@pjtpartners.com, 212-364-5677)
Rafael Schnitzler (schnitzler@pjtpartners.com, 212-364-3881)
Thomas Melvin (melvin@pjtpartners.com, 212-364-7948)

## Obtaining Additional Information

Copies of the Bidding Procedures Motion and the Bidding Procedures Order, as well as all related exhibits (including the Stalking Horse Agreement and the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' Case Information Website, located at *https://restructuring.ra.kroll.com/purduepharma* or can be requested by email at purduepharmateam@ra.kroll.com.

## Important Dates and Deadlines[5]

1. **Potential Bidder Deadline**.  The deadline for interested parties to furnish information to PJT to be considered a Potential Bidder in accordance with the Bidding Procedures is **May 2, 2023 at 5:00 p.m. (prevailing Eastern Time)**.

2. **Bid Deadline.**  The deadline to submit a Qualified Bid is **May 15, 2023 at 5:00 p.m. (prevailing Eastern Time)**.

3. **Auction.**  In the event that the Debtors timely receive more than one Qualified Bid for Avrio Assets in addition to the Stalking Horse Bid, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an

---

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4] PJT Partners LP., in its capacity as investment banker to the Debtors, is referred to herein as "**PJT**."

[5] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

Auction for the Avrio Assets. The Auction, if one is held, will commence on **May 17, 2023 at 10:00 a.m. (prevailing Eastern Time)**. **(prevailing Eastern Time)** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001.

4. **Auction and Sale Objections Deadline**. The deadline to file an objection with the Court to the Sale Order, the conduct of the Auction, or the Sale Transaction (including objections relating to the Stalking Horse Bidder) (collectively, the "**Sale Objections**") is **May 19, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").

5. **Sale Hearing**. A hearing (the "**Sale Hearing**") to consider the proposed Sale Transaction will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 on **May 23, 2023 at 11:00 a.m. (prevailing Eastern Time)** or such other date as determined by the Court. Pursuant to **General Order M-543**, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted via Zoom for Government® so long as General Order M-543 is in effect or unless otherwise ordered by the Court. Parties wishing to appear at, or attend, a hearing conducted via Zoom for Government® videoconference are required to register their appearance by 4:00 p.m. (prevailing Eastern Time) the day before such hearing at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

## 6. <u>Filing Objections</u>

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (d) be filed with the Court no later than the Sale Objection Deadline, and (e) no later than the Sale Objection Deadline, be served on (1) counsel for the Debtors, (A) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner, Eli J. Vonnegut, Christopher S. Robertson, and Dylan A. Consla, and (B) Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001, Attn: Marie L. Gibson and A. Caroline M. Frizzo; (2) counsel to the Consultation Parties, consisting of (i) counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, Bank of America Tower, One Bryant Park, New York, New York 10036, Attn: Arik Preis and Sara L. Brauner; (ii)counsel to the Ad Hoc Committee: Kramer Levin Naftalis & Frankel LLP, 1177 6th Ave, New York, NY 10036, Attn: Kenneth H. Eckstein; and (iii) counsel for the MSGE Group: Caplin & Drysdale, Chartered, 1 Thomas Cir NW # 1100, Washington, DC 20005, Attn: Kevin Maclay; (3) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Ave, New York, New York 10022, Attn: Christopher Marcus, P.C., Constantine N. Skarvelis, P.C., and Jordan E. Elkin; and (4) the U.S. Trustee

## <u>CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION</u>

*Any party or entity who fails to timely make an objection to the Sale Transaction on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any objection to the Sale Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests*.

## NO SUCCESSOR LIABILITY

*The Debtors are pharmaceutical companies that manufacture, sell, or distribute, among other products, extended-release, long-acting, abuse-deterrent opioid pain medications.  Additional information regarding the Debtors and the events leading up to the Petition Date can be found in the Debtors' Informational Brief filed on September 16, 2019 [D.I. 17].  The proposed Sale Transaction pertains to the assets of Avrio Health L.P., the Debtors' consumer health business, which has not and does not manufacture, sell, or distribute opioid pain medications and related products.  The assets sold in the Sale Transaction will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale Transaction, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale Transaction.  Accordingly, as a result of the Sale Transaction, the Successful Bidder will not be a successor to any of the Debtors by reason of any  theory of law or equity, and the Successful Bidder will have no liability, except as expressly provided a definitive agreement reached between the Debtors and the Successful Bidder, for any liens, claims, encumbrances, and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

[*Remainder of This Page Intentionally Left Blank*]

Dated:   [●], 2023
         New York, New York

DAVIS POLK & WARDWELL LLP

By:   */s/ DRAFT*
        Eli J. Vonnegut

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**Form of Potential Assumption and Assignment Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PURDUE PHARMA L.P., *et al.*, | ) | Case No. 19-23649 (SHL) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

---

     **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on September 15, 2019.

     **PLEASE TAKE FURTHER NOTICE** that, on April 4, 2023, in connection with the proposed sale (the "**Sale Transaction**") of substantially all of the assets of the Debtors' consumer health business, which is currently conducted by Avrio Health L.P. (collectively, and as further defined in the Stalking Horse Agreement, the "**Avrio Assets**") to Atlantis Consumer Healthcare Inc. (the "**Stalking Horse Bidder**") or any other successful bidder (a "**Successful Bidder**") subject to an auction process (the "**Auction**"), if any, for the Avrio Assets, the Debtors filed a motion (the "**Bidding Procedures Motion**")[2] with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the Sale Transaction and the Auction (the "**Bidding Procedures**"), (b) payment of the Bid Protections to the Stalking Horse Bidder in certain instances defined in the Stalking Horse Agreement, (c) the form and manner of notice related to the Sale Transaction, and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion, the Bidding Procedures Order, or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, on [·], 2023, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction, the Auction, and the Assumption and Assignment Procedures.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign to the Successful Bidder the Potential Assigned Contracts.  A schedule listing the Potential Assigned Contracts (the "**Potential Assigned Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website, located at *https://restructuring.ra.kroll.com/purduepharma* or can be requested by email at *purduepharmateam@ra.kroll.com.*  In addition, the "**Cure Costs**," if any, necessary for the assumption and assignment of the Potential Assigned Contracts are set forth on the Potential Assigned Contracts Schedule. *Each Cure Cost listed on the Potential Assigned Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assigned Contract or Assigned Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSIGNED CONTRACT**. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, a Successful Bidder (including the Stalking Horse Bidder) may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Potential Assigned Contracts Schedule as an Assigned Contract or Assigned Lease, as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as applicable), or (ii) to include on the Final Assigned Contracts Schedule any contract or lease listed on the Potential Assigned Contracts Schedule, by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable, (b) in the event that, after the closing of the Sale Transaction, the Debtors or the Successful Bidder identify any contract or lease with respect to the Avrio Assets to which Avrio Health L.P. is a counterparty that is not a Shared Contract (as defined in the Stalking Horse Agreement), and that is not listed on the Potential Assigned Contracts Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assigned Contract or Assigned Lease, as applicable, and the Debtors shall seek to assume and assign such Assigned Contract or Assigned Lease in accordance with the Bidding Procedures, and (c) following the Auction, the Debtors may, in accordance with the Stalking Horse Agreement or the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder, at any time before the closing of the Sale Transaction, modify the previously stated Cure Costs associated with any Potential Assigned Contract.  The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Cure Cost is modified will receive notice thereof and an opportunity to file a Supplemental Assumption and Assignment Objection.  **The assumption and assignment of the Contracts and Leases on the Potential Assigned Contracts Schedule is not guaranteed and is subject to approval by the Court and**

the Debtors' or Successful Bidder's right to remove an Assigned Contract or Assigned Lease from the Final Assigned Contracts Schedule.

## Obtaining Additional Information

Copies of the Bidding Procedures Motion and the Bidding Procedures Order, as well as all related exhibits (including the Stalking Horse Agreement and the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at *https://restructuring.ra.kroll.com/purduepharma* or can be requested by email at purduepharmateam@ra.kroll.com.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assigned Contract or Assigned Lease (an "**Assumption and Assignment Objection**") with respect to the ability of a Successful Bidder to provide adequate assurance of future performance, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes is required to cure defaults under the relevant Assigned Contract or Assigned Lease, (d) by no later than **17 days from the date of service of the Potential Assumption and Assignment Notice** (the "**Assumption and Assignment Objection Deadline**"), (i) be filed with the Court and (ii) be served on (1) counsel to the Debtors, (A) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner, Eli J. Vonnegut, Christopher S. Robertson, and Dylan A. Consla, (B) Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001, Attn: Marie L. Gibson and A. Caroline M. Frizzo; (2) counsel to the Consultation Parties, consisting of (i) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, Bank of America Tower, One Bryant Park, New York, New York 10036, Attn: Arik Preis and Sara L. Brauner; (ii) counsel for the Ad Hoc Committee: Kramer Levin Naftalis & Frankel LLP, 1177 6th Ave, New York, NY 10036, Attn: Kenneth H. Eckstein; and (iii) counsel for the MSGE Group: Caplin & Drysdale, Chartered, 1 Thomas Cir NW # 1100, Washington, DC 20005, Attn: Kevin Maclay; (3) counsel to the Stalking Horse Bidder, Kirkland & Ellis LLP, 601 Lexington Ave, New York, New York 10022, Attn: Christopher Marcus, P.C., Constantine N. Skarvelis, P.C., and Jordan E. Elkin; and (4) the U.S. Trustee (collectively, the "**Objection Notice Parties**").

Pursuant to the Assumption and Assignment Procedures, an Assumption and Assignment Objection relating to proposed Cure Cost (a "**Cure Objection**"), must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes is required to cure defaults under the relevant Assigned Contract or Assigned Lease, and (d) by no later than **17 days from the date of service of the Potential Assumption and Assignment Notice** (the "**Cure Objection Deadline**"), (1) be filed with the Court and (2) be served on the Objection Notice Parties.

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assigned Contract or Assigned Lease by a party whose contract or lease is listed on a Supplemental Assumption and Assignment Notice (a "**Supplemental**

**Assumption and Assignment Objection**") with respect to the ability of a Successful Bidder to provide adequate assurance of future performance or relating to the Cure Costs (to the extent modified from the previously-stated amount) must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) by no later than **17 days from the date of service of such Supplemental Assumption and Assignment Notice,** (1) be filed with the Court and (2) be served on the Objection Notice Parties.

Objections to the Sale Order, the conduct of the Auction or the Sale Transaction (collectively, the "**Sale Objections**"), must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, and (d) by no later than **May 19, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**") be (1) filed with the Court and (2) served on the Objection Notice Parties.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to a contract or lease who fails to timely make an objection to the potential assumption and assignment of such contract or lease on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order, and this Notice (or in the case of a Supplemental Assumption and Assignment Objection, by 14 days from the date of service of such Supplemental Assumption and Assignment Notice) shall be deemed to have consented to the assumption and assignment of such contract or lease, including the Cure Costs (if any), set forth in the Potential Assumption and Assignment Notice or Supplemental Assumption and Assignment Notice, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder (including the Stalking Horse Bidder), or the property of any such parties, relating to the assumption and assignment of such contract or lease, including asserting additional Cure Costs with respect to such contract or lease.  Notwithstanding anything to the contrary in such contract or lease, or any other document, the Cure Costs set forth in the Potential Assumption and Assignment Notice or Supplemental Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assigned Contract or Assigned Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

### Other Important Dates and Deadlines[3]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, Cure Objections, and Supplemental Assumption and Assignment Objections, note the following important dates and deadlines:

1. **Auction.**  In the event that the Debtors timely receive more than one Qualified Bid for Avrio Assets in addition to the Stalking Horse Bid, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Avrio Assets.  The Auction, if one is held, will commence on **May 17, 2023 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001.

2. **Sale Hearing**.  on **May 23, 2023 at 11:00 a.m. (prevailing Eastern time)** before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601. Pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("**General Order M-543**"), the Hearing will be conducted via Zoom for Government® so long as General Order M-543 is in effect or unless otherwise ordered by the Court.  Parties wishing to appear at, or attend, a hearing conducted via Zoom for Government® videoconference are required to register their appearance by 4:00 p.m. (prevailing Eastern Time) the day before such hearing at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl

*[Remainder of This Page Intentionally Left Blank]*

---

[3] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

Dated:   [●], 2023
New York, New York

DAVIS POLK & WARDWELL LLP

By:   */s/ DRAFT*
_____
Eli J. Vonnegut

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*