Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 19-23649-shl

4    Adv. Case No. 19-08288-shl

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    PURDUE PHARMA L.P.,

9

10          Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   BRIDGES et al.,

13                 Plaintiffs,

14          v.

15   PURDUE PHARMA L.P., et al.,

16                 Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19                 United States Bankruptcy Court

20                 300 Quarropas Street, Room 248

21                 White Plains, NY 10601

22

23                 March 21, 2023

24                 11:09 AM

25

1    B E F O R E :

2    HON SEAN H. LANE

3    U.S. BANKRUPTCY JUDGE

4

5    ECRO: ART

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HEARING re OMNIBUS HEARING

2

3    HEARING re Doc. #5501 Notice Of Agenda

4

5    HEARING re Doc. #5425 Application For Interim Professional

6    Compensation Re: Dechert LLP

7

8    HEARING re Doc. #5421 Application For Interim Professional

9    Compensation Re: King & Spalding LLP

10

11   HEARING re Doc. #5422 Application For Interim Professional

12   Compensation Re: Davis Polk & Wardwell

13

14   HEARING re Doc. #5441 Application For Interim Professional

15   Compensation Re: Jones Day

16

17   HEARING re Doc #5412 Application For Interim Professional

18   Compensation Re: Ernst & Young LLP

19

20   HEARING re Doc #5443 Application For Interim Professional

21   Compensation Re: AlixPartners, LLP

22

23   HEARING re Doc #5444 Application For Interim Professional

24   Compensation Re: Skadden, Arps, Slate, Meagher & Flom LLP

25

1    HEARING re Doc #5432 Application For Interim Professional

2    Compensation Re: PIT Partners LP

3

4    HEARING re Doc #5416 Application For Interim Professional

5    Compensation Re: Grant Thornton LLP

6

7    HEARING re Doc. #5423 Application For Interim Professional

8    Compensation Re: Reed Smith LLP

9

10   HEARING re Doc. #5458 Application For Interim Professional

11   Compensation Re: Cornerstone Research

12

13   HEARING re Doc. #5438 Application For Interim Professional

14   Compensation Re: Jefferies LLC

15

16   HEARING re Doc. #5437 Application For Interim Professional

17   Compensation Re: Cole Schotz P.C.

18

19   HEARING re Doc. #5440 Application For Interim Professional

20   Compensation Re: Province, LLC

21

22   HEARING re Doc. #5435 Application For Interim Professional

23   Compensation Re: Akin Gump Strauss Hauer & Feld LLP

24

25

```
 1    HEARING re Doc. #5439 Application For Interim Professional

 2    Compensation Re: Kurtzman Carson Consultants LLC

 3

 4    HEARING re Doc. #5436 Application For Interim Professional

 5    Compensation Re: Bedell Cristin Jersey Partnership

 6

 7    HEARING re Doc. #5431 Application For Interim Professional

 8    Compensation Re: Brown Rudnick LLP

 9

10    HEARING re Doc. #5433 Application For Interim Professional

11    Compensation Re: FTI Consulting, Inc.

12

13    HEARING re Doc. #5429 Application For Interim Professional

14    Compensation Re: Otterbourg P.C.

15    HEARING re Doc. #5428 Application For Interim Professional

16    Compensation Re: Gilbert LLP

17

18    HEARING re Doc. #5434 Application For Interim Professional

19    Compensation Re: Kramer Levin Naftalis & Frardcel LLP, 1

20

21    HEARING re Doc. #5430 Application For Interim Professional

22    Compensation Re: Houlihan Lokey Capital, Inc.

23

24    HEARING re Doc. #5445 Application For Interim Professional

25    Compensation Re: Caplin & Drysdale
```

Page 6

1  HEARING re Doc. #5418 Application For Interim Professional

2  Compensation Re: Kleinberg, Kaplan, Wolff & Cohen, P.C.

3

4  HEARING re Doc. #5427 Application For Interim Professional

5  Compensation Re: Pullman & Comley, LLC

6

7  HEARING re Doc. #5417 Application For Interim Professional

8  Compensation Re: Bielli & Klauder, LLC

9

10  HEARING re Doc. #5447 Notice Of Hearing / Notice Of Tenth

11  Interim Fee Hearing

12

13  HEARING re Doc. #5459 Notice Of Hearing / Supplemental

14  Notice Of Tenth Interim Fee Hearing

15

16  HEARING re Doc. #5474 Motion To Authorize / Motion Of

17  Debtors For Authority To Enter Into Funding Agreement

18

19  HEARING re Doc. #5475 Declaration Of Terrance Ronan In

20  Support Of Motion of Debtors For Authorization To Enter Into

21  Funding Agreement

22

23  HEARING re Adversary proceeding: 21-07088-shl Bridges et al

24  v. Purdue Pharma L.P. et al *** ORAL ARGUMENT REGARDING

25  MOTIONS TO DISMISS ***

1    HEARING re Adversary proceeding: 21-07088-shl Bridges et al

2    v. Purdue Pharma L.P. et al, Doc. #24 United States Of

3    America's Notice Of Hearing Re: Motion To Dismiss Adversary

4    Proceeding (Lawrence Fogelman)

5

6    HEARING re Adversary proceeding: 21-07088-shl Bridges et al

7    v. Purdue Pharma L.P. et al, Doc. #25 United States Of

8    America's Memorandum Of Law Re: Motion To Dismiss Adversary

9    Proceeding (Lawrence Fogelman)

10

11    HEARING re Adversary proceeding: 21-07088-shl Bridges et al

12    v. Purdue Pharma L.P. et al, Doc. #27 Purdue Pharma L.P.'s

13    Motion To Dismiss Adversary Proceeding Filed On Behalf Of

14    Purdue Pharma L.P. (Kaminetzky, Benjamin)

15

16    HEARING re Adversary proceeding: 21-07088-shl Bridges et al

17    v. Purdue Pharma L.P. et al, Doc. #28 Purdue Pharma L.P.'s

18    Memorandum Of Law In Support Of Debtor Defendant's Motion To

19    Dismiss Adversary Complaint (Kaminetzky, Benjamin)

20

21    HEARING re Adversary proceeding: 21-07088-shl Bridges et al

22    v. Purdue Pharma L.P. et al, Doc. #29 Official Committee Of

23    Unsecured Creditors' Joinder To Debtors' Memorandum Of Law

24    In Support Of Motion To Dismiss Adversary Proceeding

25    Complaint (Dizengoff, Ira)

Page 8

1    HEARING re Adversary proceeding: 21-07088-shI Bridges et al

2    v. Purdue Pharma L.P. et al, Doc. #35 Plaintiffs Response To

3    Motion To Dismiss Filed On Behalf Of Creighton Bloyd, Stacey

4    Bridges (Early, Valrey)

5

6    HEARING re Adversary proceeding: 21-07088-shl Bridges et al

7    v. Purdue Pharma L.P. et al, Doc. #36 United States Of

8    America's Reply Memorandum Of Law In Further Support Of The

9    Motion To Dismiss The Adversary Complaint (Fogelman,

10   Lawrence)

11

12   HEARING re Adversary proceeding: 21-07088-shl Bridges et al

13   v. Purdue Pharma L.P. et al, Doc. #37 Purdue Pharma L.P.'s

14   Reply In Further Support Of Motion To Dismiss Adversary

15   Complaint (Kaminetzky, Benjamin)

16

17   HEARING re Adversary proceeding: 21-07088-shl Bridges et al

18   v. Purdue Pharma L.P. et al, Doc. #40 Notice Of Hearing

19   Motion Regarding Motions To Dismiss Adversary Complaint

20    (Marc Tobak)

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   DAVIS POLK WARDWELL, LLP

 4        Attorneys for the Debtors

 5        450 Lexington Avenue

 6        New York, NY 10017

 7

 8   BY:  KATHRYN BENEDICT

 9        BENJAMIN KAMINETZKY

10

11   AKIN GUMP STRAUSS HAUER FELD, LLP

12        Attorneys for the Official Committee of Unsecured

13        Creditors

14        One Bryant Park

15        New York, NY 10036

16

17   BY:  ARIK PRIES

18

19   LITE DEPALMA GREENBERG AFANDAOR, LLC

20        Attorneys for Various Canadian Creditors

21        570 Broad Street, Suite 1201

22        Newark, NJ 07102

23

24   BY:  ALLEN J. UNDERWOOD

25
```

```
1   DAVIS POLK & WARDWELL LLP

2        Attorneys for Debtors/Plaintiffs

3        450 Lexington Avenue

4        New York, NY 10017

5

6   BY:  MARC JOSEPH TOBAK

7

8   LITE DEPALMA GREENBERG AFANADOR, LLC

9        Attorneys for the Plaintiff Creditor

10        570 Broad Street, Suite 1201

11        Newark, NJ 07102

12

13   BY:  ALLEN JOSEPH UNDERWOOD

14

15   ALSO PRESENT TELEPHONICALLY:

16   BROOKS BARKER

17   GABRIELLE BECKER

18   BRIANNA B. BILTER

19   DAVID E. BLABEY

20   JENNIFER BRAGG

21   SARA BRAUNER

22   JULIUS CHEN

23   HAYDEN COLEMAN

24   DANIEL CONNOLY

25   DYLAN CONSLA
```

1    JABRISKA COTTON

2    LYNN CROWFOOT

3    SCOTT DAVIDSON

4    ANTHONY DE LEO

5    KENNETH H. ECKSTEIN

6    LAWRENCE FOGELMAN

7    KELLY K. FRAZIER

8    CAROLINE GANGE

9    MAGALI GIDDENS

10   MATTHEW J. GOLD

11   IRVE GOLDMAN

12   UDAY GORREPATI

13   ROCHELLE GUITON

14   SARAH HARBUCK

15   TAYLOR HARRISON

16   JACOB R. HERZ

17   MARSHALL SCOTT HUEBNER

18   MITCHELL HURLEY

19   AARON JAVIAN

20   GREGORY JOSEPH

21   JASPINDER KANWAL

22   MARC KESSELMAN

23   DAVID KLAUDER

24   SHAUN C. LEE

25   ALEX LEES

1   KAREN LEUNG

2   MARA LEVENTHAL

3   JEFFREY A. LIESEMER

4   EDAN LISOVICZ

5   EMILY MACKAY

6   JENNIFER MADDEN

7   EUNICE MIN

8   KEVIN MCCARTHY

9   MAURA KATHLEEN MONAGHAN

10   GEORGE O'CONNOR

11   JAMES FRANKLIN OZMENT

12   KATHERINE PORTER

13   RACHAEL RINGER

14   CHRISTOPHER ROBERTSON

15   JEFFREY J. ROSEN

16   JASON RUBINSTEIN

17   HEATHER SAYDAH

18   ALEC SCHWARTZ

19   PAUL KENAN SCHWARTZBERG

20   J. CHRISTOPHER SHORE

21   MARC F. SKAPOF

22   JOSEPH SORKIN

23   PETER SPROFERA

24   ROBIN SPIGEL

25   MICHAEL SPINELLI

1    ERIC STODOLA

2    MARC JOSEPH TOBAK

3    GERARD UZZI

4    MELISSA VAN ECK

5    SHMUEL VASSER

6    ELI J. VONNEGUT

7    HEATHER A. WATTERS

8    THEODORE WELLS, JR.

9    FRED WILLUMSON

10   NATHAN YEARY

11   KAILIA ZAHARIS

12   ALEXANDER LEES

13   ERIC STODOLA

14   GERARD UZZI

15

16

17

18

19

20

21

22

23

24

25

1               P R O C E E D I N G S

2               THE COURT:  Good morning.  This is Judge Sean Lane

3     in the United States Bankruptcy Court for the Southern

4     District of New York.  And we are here this morning for an

5     omnibus hearing in the Purdue Pharma LP Chapter 11 case.

6     It's jointly administered.  And we will start, as we always

7     start with these hearings, with appearances.  So let me find

8     out who is here on behalf of the Debtors.

9               MR. HUEBNER:  Good morning, Your Honor.  For the

10    record, Marshall Huebner with Davis Polk on behalf of the

11    Debtors.  Can I be heard clearly by the Court?

12              THE COURT:  You can be heard crystal clear.  Thank

13    you.

14              MR. HUEBNER:  Terrific.  Thank you, Your Honor.

15              THE COURT:  Oh behalf of the Official Committee of

16    Unsecured Creditors?

17              MR. LISOVICZ:  Good morning, Your Honor.  Edan

18    Lisovicz of Akin Gump Strauss Hauer & Feld on behalf of the

19    Committee.

20              THE COURT:  All right.  I know we also have folks

21    here from the adversary proceeding, 21-7088, brought by

22    Stacey Bridges and Creighton Bloyd.  Let me find out who is

23    here on behalf of the plaintiffs in that case.

24              MR. OZMENT:  Your Honor, this is Frank Ozment, and

25    I am here on behalf of Plaintiffs.

Page 15

1          THE COURT:  All right.  And on behalf of

2     Defendants in that case?

3          MR. FOGELMAN:  Good morning, Your Honor.  This is

4     Larry Fogelman from the U.S. Attorney's Office for the

5     Southern District of New York on behalf of the United

6     States.

7          THE COURT:  All right.  Good morning.  And I

8     wasn't sure if there was any particular counsel who is

9     handling the Defendant's Purdue Pharma specifically in that

10    adversary proceeding.

11         MR. TOBAK:  Good morning, Your Honor.  Marc Tobak,

12    Davis Polk & Wardwell LLP.  And I will be handling the

13    adversary proceeding for the Debtors.

14         THE COURT:  All right.  Good morning.  With that,

15    I know there are lots of appearances on the Zoom registry

16    here as is the case whenever we have hearings in this

17    particular matter.  But I'm not sure that there are other

18    folks who intend to speak.  So rather than try to guess and

19    throw out some names here and perhaps hear crickets, I will

20    simply ask if there's any other party that needs to make an

21    appearance at this time for today.

22         MR. KLAUDER:  Good morning, Your Honor.  David

23    Klauder.  I am the court-appointed fee examiner in the case.

24    The fee applications are on.  To the extent that Your Honor

25    wants to hear from me, I may be heard.  Thank you.

1          THE COURT:  All right.  Thank you very much.  Good

2     to have you here.  Anyone else?

3          MR. GOLD:  Good morning, Your Honor.  Matthew Gold

4     from Kleinberg Kaplan Wolff & Cohen.  We are one of several

5     fee applicants.  I don't know whether Your Honor is --

6     hopefully Your Honor will not be needing to speak to us.  It

7     is (indiscernible).  But I did want to make a record that we

8     are on participating if Your Honor has any questions.

9          THE COURT:  All right.  I realize there are a lot

10    of fee applications on for today.  And so here's what I can

11    say to folks.  I don't need all those appearances now.  If,

12    obviously, people need to speak, they can speak.  But then

13    they can make their appearance at that time rather than have

14    everyone enter sort of a protective appearance.  So I think

15    we'll be good that way.  So if you have a fee application on

16    and you don't know of any issues currently, you can keep

17    your powder dry, as Judge Chapman used to like to say.  And

18    if you need to speak, obviously happy to hear from you later

19    in the hearings.

20          Anyone else who needs to make an appearance?  All

21    right.

22          Thank you all for being here.  And with that, I'll

23    turn it over to you, Mr. Huebner, to kick us off.

24          MR. HUEBNER:  Sure.  Your Honor, if I may,

25    obviously, we are always hunting to keep costs and expenses

Page 17

1    down and to minimize unnecessary burden, not a first request

2    without other people having to ask permission, that as soon

3    as the fee applications are done virtually everyone should

4    leave this hearing because I think that's what they're here

5    for except for the very small number of people who are

6    actually necessary for the few remaining agenda items after

7    the fee application.

8              THE COURT:  All right.  That sounds entirely

9    appropriate and wise.  So with that, it sounds like we

10   should go to the fee applications first.  And take it away.

11             MR. HUEBNER:  Sure, Your Honor.  Yeah.  So let me

12   give you an omnibus review, Your Honor.  So obviously you

13   also haven't seen us in a while because our favorite omnibus

14   hearing of all is the one that gets cancelled.  And I think

15   we've achieved that several times in the last two months,

16   which is a good indicator of I think hopefully a properly-

17   done case, including keeping fees down.

18             I'm also happy to announce that it is my

19   understanding the fee examiner has actually reached

20   agreement with all of the professionals as to which the fee

21   examiner has been working and (indiscernible) applications

22   on for today, as we have done since these cases started.  I

23   believe Your Honor was okay with that process the last time

24   we did this, which was your first time.  We do have a single

25   omnibus order for efficiency's sake that reflects --

1   assuming that the Court has no further questions, which

2   obviously is the main event for today that is remaining that

3   reflets the reductions agreed to bilaterally in each case

4   between the fee examiner and each affected professional.

5   And so we obviously could go down every one of them, but it

6   also would be reflected in the form of omnibus order that

7   would show that the further reductions agreed to, for

8   example.

9           Just by way of example in the case of Davis Polk,

10   we had already written off $185,143.50, which was almost

11   eight percent of the application, before we even filed it.

12   Because that's just what we do.  We go through things really

13   carefully.  And if we think for one reason or another we

14   should write stuff off, we do.  We then agreed to an

15   additional set of reductions on top of the 185 of about

16   $15,000, bringing us to a total of over $200,000 and over

17   eight percent.

18           So I don't know if the Court needs more recitation

19   from any professionals, but just indicative.  The fee

20   examiner has always, at least in our case, sent a very

21   thoughtful letter with a variety of questions and requests

22   for further information and some concerns about categories.

23   We have a set of productive exchanges, as we have now had

24   for several years running in this case that should have been

25   over a very long time ago.  But that's not for today.  And

Page 19

1    reached an accommodation that was sensible.

2             So obviously it's the Court's pleasure to talk to

3    us and track as of course the Court sees fit.  But that is

4    all I actually had to say.

5             THE COURT:  All right.  Yes.  So I am perfectly

6    fine with one order.  That seems to be appropriate.  And I

7    have no objection to that.  And so my thought would be to

8    just group the applications for today the same way you group

9    them in the agenda.  There's A through L for Debtor's

10   professionals, N through R for the Official Committee, S

11   through X for Ad Hoc Committee of Governmental and other

12   Contingent Litigation Claimants, Professionals.  Y for the

13   multistate government entities group.  Z and AA for the

14   nine's professionals, and BB for the fee examiner.  And so

15   with the idea that for each of those groups, you'll just

16   open it up for anybody who wishes to be heard, starting with

17   the fee examiner.

18            So I'll take, Mr. Huebner, your comments to be

19   you're starting us off on the Debtor's professionals.  And

20   with that, that's A through L on the agenda, which is filed

21   on the docket of course.  And so I'll turn it over to the

22   fee examiner if there's anything the fee examiner wants to

23   address for the Debtor's professionals.

24            MR. KLAUDER:  Good morning, again, Your Honor.

25   David Klauder.  Nothing specific to address.  Mr. Huebner

Page 20

1    correctly recited the process and the result, at least as

2    specifically as it relates to Davis Polk.  Similar process

3    went through for all the Debtor professionals, and there's

4    full resolution on this tranche of fee applications.

5              THE COURT:  All right.

6              MR. KLAUDER:  So nothing more to add.

7              THE COURT:  All right.  Thank you very much.  And

8    let me ask if there's anyone who does wish to be heard on

9    the applications of debtor's professionals A through L.  And

10   just to be clear, that's Dechert LLP, Arnold & Porter, King

11   & Spalding, Davis Polk, Jones Day, Ernst & Young,

12   AlixPartners, Skadden Arps, PJT Partners, Grant Thornton,

13   Reed Smith, and Cornerstone Research.  And my apologies for

14   truncating folks' names.  I'm sure there's somebody who is

15   further down the list of partners whose name I've left out

16   in some of these firms.  But just for ease of

17   identification.

18              So I'm not hearing any responses, and I didn't see

19   any objections on the docket based on the record before me.

20   And I am happy to approve those interim fee applications

21   that are listed on today's docket as an uncontested matter

22   reflecting the requests made by those professionals and the

23   reductions that either came about before the applications

24   were filed by the professionals including the reductions or

25   the results of conversations with the fee examiner.

Page 21

1          So moving right along to the applications related

2   to the Official Committee.  I'm not sure who is taking the

3   laboring oar on those.

4          MR. LISOVICZ:  Good morning, Your Honor.  Again,

5   Edan Lisovicz of Akin Gump Strauss Hauer & Feld on behalf of

6   the Committee.

7          Similar to what Mr. Huebner said, each of the

8   Committee's professionals I believe all took voluntary

9   reductions to their fees before filing their fee

10  applications with the Court.  And thereafter, we received

11  comprehensive reports from the fee examiner.  And where

12  appropriate, each of the professionals agreed to additional

13  reductions that will be reflected in the proposed order that

14  will be submitted to Your Honor.  Akin Gump, just go give an

15  example, wrote off approximately $130,000 of our fees before

16  we filed any of our fee applications with the court, and

17  then we agreed to write off an additional $18,000 after

18  discussing with the fee examiner.

19         THE COURT:  All right.  Thank you very much.  And

20  I will turn it over to the fee examiner for anything the fee

21  examiner might want to add as to applications M through R,

22  which are Jefferies LLC, Cole Schotz PC, Province LLD, Akin

23  Gump Strauss Hauer &  Feld, Kurtzman Carson Consultants LLC,

24  and Bedell Cristin Jersey Partnership.

25         Anything from the fee examiner?

Page 22

1          MR. KLAUDER:  Nothing further to add.  Thank you,

2    Your Honor.

3          THE COURT:  All right.  Thank you very much.  And

4    let me -- I didn't see any objections filed on the docket,

5    which is why the matter is listed as uncontested.  But I'll

6    open it up to anyone else who wishes to be heard on the

7    Official Committee of Unsecured Creditors professionals, and

8    that is the interim applications on for today.

9          I will let the record reflect that I don't hear

10   any further responses.  And based on the record before me,

11   including having reviewed the interim applications on for

12   today, the Official Committee, and hearing the record of the

13   discussions of the fee examiner, I'm happy to approve the

14   interim applications M through R on the agenda, as have been

15   modified after conversations with the fee examiner.

16         So turning next through applications S through X.

17   Brown Rudnick, FTI Consulting, Otterbourg PC, Gilbert LLP,

18   Kramer Levin Naftalis & Frankel, Houlihan Lokey Capital Inc.

19   These are applications of the Ad Hoc Committee of Government

20   and Other Contingent Litigation Claimant professionals.  I'm

21   not sure who is taking the laboring oar on these.

22         MR. GANGE:  Good morning, Your Honor.  Caroline

23   Gange of Kramer Levin on behalf of the Ad Hoc Committee.

24   Can you hear me clearly?

25         THE COURT:  I can hear you just fine.  Thank you.

Page 23

1           MS. GANGE:  Similar to the Debtors and the

2     Official Committee, members of the Ad Hoc Committee took

3     voluntary reductions prior to filing the interim fee

4     applications.  And certain of the firms have also agreed to

5     additional reductions with the fee examiner which will be

6     reflected in the order to be filed on the docket I believe

7     this afternoon.

8           THE COURT:  All right.  Thank you very much.

9     Anything from the fee examiner on these particular

10    applications?

11          MR. KLAUDER:  Nothing to add.  Thank you, Your

12    Honor.

13          THE COURT:  All right.  Thank you.  And last but

14    not least, I'll turn it over to anyone else who might wish

15    to be heard on these applications listed as S through X on

16    the agenda.

17          All right.  Once again, let the record reflect

18    that I'm not hearing any responses.  And I also note that

19    there are no objections filed on the docket.  So after

20    review of the applications and based on the record of

21    today's hearings, I am happy to approve the interim

22    applications S through X of these particular professionals

23    as modified after their conversations with the fee examiner.

24          And so next up is one application of Caplin &

25    Drysdale for the Multi-State Governmental Entities Group.

Page 24

1    And I'm not sure who is taking the podium for that.

2            MR. LIESEMER:  Good morning, Your Honor.  Jeffrey

3    Liesemer on behalf of Caplin & Drysdale, counsel to the

4    Multi-State Governmental Entities Group.  Can you hear me

5    all right?

6            THE COURT:  I can hear you fine.

7            MR. LIESEMER:  As Your Honor has said, we have

8    filed a fee application.  I am not aware of any issues, but

9    I am available to answer any questions.

10           THE COURT:  All right.  Thank you very much.  I'll

11   turn it over to the fee examiner.

12           MR. KLAUDER:   Your Honor, with respect to Caplin

13   &  Drysdale, no issues.  We had a dialogue with them and

14   worked through the questions I had.  So nothing further to

15   add.  Thank you.

16           THE COURT:  All right.  Thank you.  As I note,

17   there were no objections filed to the application, but I'll

18   turn it over to anyone else who wishes to be heard as the

19   application of Caplin & Drysdale identified as Y on the list

20   of uncontested matter interim fee applications.  Anyone wish

21   to be heard?  All right.

22           Once again, there is no one who wishes to be

23   heard.  And once again, based on the record before me

24   including the application and today's hearing, I am happy to

25   approve the interim fee application has been submitted.

```
 1              So next up is "The Nine's Professionals", which
 2      are applications Z and AA.  First with Kleinberg Kaplan
 3      Wolff & Cohen, and second of Pullman & Comley.  And so I'll
 4      turn the podium to whoever is handling those.
 5              MR. GOLD:  Thank you, Your Honor.  Matthew Gold
 6      from Kleinberg Kaplan Wolff & Cohan.  Can you hear me
 7      clearly?
 8              THE COURT:  I can hear you just fine.  Thank you.
 9              MR. GOLD:  Thank you, Your Honor.  I don't know if
10      I'm taking the lead.  I can say for Kleinberg Kaplan that we
11      had a dialogue with the fee examiner and agreed to a
12      reduction of fees which are reflected in the order that will
13      be presented to Your Honor.  I am aware of no other
14      objections to our application.
15              THE COURT:  All right.  And on behalf of the
16      Pullman firm?
17              MR. GOLDMAN:  Yes.  Good morning, Your Honor.
18      Irve Goldman for Pullman & Comley.  The examiner had some
19      helpful comments about our (indiscernible), which we'll be
20      sensitive to in the future.  But we did not have a
21      recommended reduction, so we are of course satisfied with
22      the allowance of the amount we requested.
23              THE COURT:  All right.  Thank you very much.  And
24      I'll turn it over to the fee examiner for these two
25      applications.
```

Page 26

1           MR. KLAUDER:  Correct, Your Honor.  No issues, or

2    issues that we raised informally were resolved.  So no

3    objection to the approval of those fee applications.

4           THE COURT:  All right.  Thank you very much.  And

5    once again, and last but not least, I'll turn it -- I'll

6    open the floor for anybody who wishes to be heard on these

7    two applications.  All right.  Let the record reflect that

8    there is no one who wishes to be heard.  And, again, the

9    record reflects that is no application of these fees.  So

10   based on the applications that were filed and that I have

11   reviewed and the record of today's hearing, I'm happy to

12   approve these two interim applications.

13           And so last but not least, we get to the

14   application of the fee examiner listed as BB in the agenda.

15   And let me find out who is taking the laboring oar on that.

16           MR. KLAUDER:  Your Honor, David Klauder for the

17   fee examiner.  This is consistent with our previous

18   applications in this case.  There's been no filed

19   objections.  Happy to answer any questions you may have

20   specifically of me.

21           THE COURT:  All right.  Thank you very much.  And

22   I'll just turn it over to Debtor's counsel if there's

23   anything to add or you'd like to say as to the application

24   of the fee examiner.

25           MR. HUEBNER:  Your Honor, definitely not.  I was

Page 27

1    just going to close up this section of the hearing.

2           So I actually would like to upgrade my request to

3    a request assuming that the Court has no further questions

4    that virtually everyone drop off this hearing right now and

5    turn off --

6           THE COURT:  Hold on one second.  I just want to

7    throw it open to the floor if anyone has any comments as to

8    the fee examiner's application.  All right.  Let the record

9    reflect that I'm not hearing any comments.  And again, same

10   ruling based on my review of the application and the record

11   of today's hearing, I'm happy to approve the interim

12   application.

13          And before anybody drops off, I appreciate that

14   folks are here, and I appreciate it turns out we spent a

15   certain amount of time where there was absolutely no

16   objections because you all have done your jobs properly.

17   Obviously in a case of this magnitude, it's important to

18   have process for purposes of everyone understanding how a

19   case like this works and to continue with that.  So thank

20   you for being here.

21          And with that, I would echo the guidance just

22   provided that it's time for everybody who is here for fee

23   applications and who is not here for anything else to leave

24   the virtual room and enjoy the rest of your day.

25          MR. HUEBNER:  Your Honor, one small request from

1    my end.  My favorite number in our fee application was that

2    I only billed 71.1 hours for Purdue in three months, which I

3    used to bill every week, and if often felt like every day.

4    Given that there's a lot going on with Silicon Valley Bank

5    case, whose hearing is in a few hours, would Your Honor mind

6    terribly if I joined those dropping off given --

7              THE COURT:  Not at all.  That's perfectly fine.

8    Thank you very much.

9              MR. HUEBNER:  Okay.

10             THE COURT:  Good to see you.  Be well.

11             MR. HUEBNER:  Thank you, Your Honor.  Have a good

12   day.

13             THE COURT:  Have a good day.

14             All right.  So next up on the agenda I believe is

15   the Funding Agreement Motion.  I'll turn it over to counsel.

16             MR. ROBERTSON:  Thank you, Your Honor.  For the

17   record, Christopher Robertson, Davis Polk & Wardwell, on

18   behalf of the Debtors.  Can I be heard clearly in the

19   courtroom?

20             THE COURT:  Yes, you can.  Thank you very much for

21   asking.

22             MR. ROBERTSON:  Thank you, Your Honor.  Next item

23   on the agenda is the Debtor's motion for authorization to

24   enter into a funding agreement with Harm Reduction

25   Therapeutics, Inc.  The motion was filed at Docket 5474.

Page 29

1    This motion is unopposed.

2            Very briefly, Your Honor, HRT has developed a low-

3    cost intranasal naloxone device which will be called Revive.

4    The relief requested today will support HRT's efforts to

5    make this lifesaving overdose rescue medication available

6    over the counter at a lower price than similar for-profit

7    product hopefully as early as the beginning of 2024.

8    Support for the development of OTC naloxone continues to be

9    a key public health initiative with the goal that I am

10   confident all creditors share, abatement of the opioid

11   crisis and saving lives.

12           The requested $9 million of funding is both modest

13   in context of these cases and will enable HRT to fund scale

14   up for distribution and commercial scale of Revive.

15           As discussed in the motion, the initial $5 million

16   will be due upon the issuance of binding purchase orders for

17   the intranasal delivery devices with the remaining $4

18   million due upon commencement of any factoring of the Revive

19   product by HRT's contract manufacturer.

20           Unless Your Honor has any questions, we

21   respectfully ask that the request be granted.

22           THE COURT:  All right.  Thank you very much.  Is

23   there any party that wishes to be heard as to this motion?

24           All right.  Hearing no response, I am happy to

25   grant the motion.  I appreciate that education provided in

1  the moving papers to give me a sense of this as obviously I

2  am not the judge who originally had this case.  And so I

3  very much appreciate all of that information which certainly

4  injects a note of optimism which is quite welcome.  And so

5  this is good news and I am very happy to approve it.  Thank

6  you very much.

7        MR. ROBERTSON:  Thank you, Your Honor.  At this

8  time, I would turn the podium over to my colleague, Marc

9  Tobak, who will be handling the adversary proceeding.

10        THE COURT:  All right.  So I am happy to do that

11  as well.  So I will turn it over to him.

12        MR. TOBAK:  Good morning, Your Honor.  This is

13  Marc Tobak, Davis Polk & Wardwell, for the Debtor-Defendant,

14  Purdue Pharma LP.  Can I be heard clearly?

15        THE COURT:  You can be heard very clearly.  Thank

16  you.

17        MR. TOBAK:  Perfect.

18        Plaintiff's complaint, Your Honor, is an attempt

19  to use the rare and extraordinary remedy of equitable

20  subordination to collaterally attack a settlement between

21  the Debtors and the United States.  And it should be

22  dismissed with prejudice for two basic and independent

23  reasons.  First, because it's a collateral attack on a final

24  order.  Litigation of course, Your Honor, has a beginning

25  and it has an ending.  And litigation over the Debtor's

Page 31

1    settlements with DOJ should have ended in December 2020 when

2    the time to appeal this court order approving them lapsed

3    and when no appeal was filed.  Plaintiffs are now barred

4    from challenging that 9019 order to which they did not

5    object and to which they did not appeal from.

6         And second, in Plaintiff's own words -- and this

7    is from Page 11 of their opposition brief -- the complaint

8    is a request for equitable subordination about what must be

9    done with the fruits of the Government's prosecution.  And

10   while that is certainly what the complaint is about, it is

11   certainly what equitable subordination under the Code is not

12   about.  Equitable subordination under the Code cannot be

13   used to reorder the priorities of valid claims to achieve an

14   outcome that Plaintiff would like better.  Instead, the

15   Plaintiff must first allege and then later prove that the

16   Government engage in inequitable conduct that worsened

17   Plaintiff's bankruptcy outcomes and that subordination is

18   consistent with the Bankruptcy Code and bankruptcy law.  And

19   Plaintiffs haven't adequately alleged any of those three.

20        Now, before addressing each of these two and

21   independent reasons for dismissal in greater detail, it's

22   important to situate the complaint and the DOJ resolution in

23   the broader scope of these cases.  And it's important to

24   focus on the fact that approval of the DOJ resolution was

25   one of the watershed moments of these bankruptcy cases.  And

Page 32

1   it was such an important step because the United States had

2   asserted truly massive claims against the Debtors; a

3   forfeiture claim of at least three-and-a-half billion

4   dollars, allegedly nondischargeable criminal claims of $6.2

5   billion, and billions more in other criminal and civil fine

6   claims.  Super-priority, nondischargeable claims of that

7   amount could easily have consumed the entire estate and left

8   nothing for other creditors including personal injury

9   claimants such as Plaintiffs.

10          The DOJ resolution announced on October 21st,

11   2020, and the subject of the 9019 motion filed that day

12   provided a global resolution with the DOJ that preserved an

13   unlocked value for Purdue's other creditors.  Pursuant to

14   the plea agreement and to the civil settlement agreement,

15   Purdue agreed, among other things, to plead guilty to three

16   criminal charges, to provide the United States with an

17   allowed super-priority administrative expense claim against

18   PPLP in the amount of $2 billion -- that's the forfeiture

19   judgement claim -- and to provide the United States with

20   $3.544 billion in a criminal fine claim and $2.8 billion in

21   a civil fine claim.

22          Importantly, in exchange, the United States

23   agreed, among other things, to provide a credit, the

24   forfeiture judgement credit, that offsets that forfeiture

25   judgement by up to $1.775 billion dollar for dollar against

Page 33

1    value that was distributed or otherwise conferred by PPLP on

2    account of the claims of tribal, state, and local

3    governments.

4              And what that means, Your Honor, is that of that

5    agreed $2 billion of the super-priority forfeiture claim,

6    the Federal Government effectively agreed that $1.775

7    billion could be redirected to the abatement and the

8    restitution efforts that would be carried out by tribal,

9    state, and local governments.  And those governments in turn

10   agreed under the plan and under the trust distribution

11   procedures established by the plan to dedicate their

12   recoveries to assist communities and individual impacted by

13   the opioid crisis, including, for example, to provide

14   medication-assisted treatment to opioid victims.

15             Now, the United States did not provide for

16   restitution as a component of Purdue's proposed criminal

17   sentence.  And that's because, as stated on Page 4 of the

18   plea agreement, it was believed that restitution was not

19   administratively feasible and would complicate and prolong

20   the sentencing process.  And note the sentencing process is

21   separate of course from this bankruptcy case.

22             What Plaintiffs want now is for the Federal

23   Government to be forced to forego that last $225 million of

24   the forfeiture judgement claim because of their exercise of

25   prosecutorial discretion in the plea agreement.

1          Now, objections to the 9019 motion were due on

2   November 10th, 2020.  And while some objections were filed,

3   Plaintiffs did not object.  They did not object despite

4   having filed their proofs of claim in February and July of

5   2020, many months before the 9019 motion was filed and many

6   months before objections were due.

7          After a nearly all-day hearing, Judge Drain

8   entered the 9019 order on November 18th, 2020.  That had an

9   immediate and profound impact on this case.  As just one

10  example, only a few days later, on November 24th, 2020, PPLP

11  entered a guilty plea.  Now, no party appealed the 9019

12  order, and the order became final and unappealable on

13  December 2nd, 2020.

14          And that brings us to the first reason the

15  complaint should be dismissed; it is an impermissible

16  collateral attack on that final and now unappealable order.

17  And it's a collateral attack because the Plaintiffs seek to

18  nullify central aspects of that order.

19          The order itself not only authorizes entry into

20  the DOJ resolution, it specifically provides that upon entry

21  of a judgement of conviction consistent with the plea

22  agreement, the United States will have the forfeiture

23  judgement claim with "priority over any and all

24  administrative expense claims, and that the allowed claims"

25  -- that's the civil and criminal claims -- "shall be

Page 35

1    unsubordinated and shall not be subject to subordination."

2            So if Plaintiffs received the relief that they

3    request, it would be impossible to carry out those terms of

4    the 9019 order.  Claims that the order decrees will be

5    allowed with either administrative priority or shall be

6    unsubordinated (indiscernible) subordinated and when party

7    asks for relief, it would undo an order that's final, that's

8    a collateral attack.  And it's a bedrock principle of

9    federal procedure that a party that did not object to an

10   order and that did not appeal that order cannot collaterally

11   attack it.

12           And at least twice the Supreme Court has forbidden

13   collateral attacks on final bankruptcy court orders.  And it

14   has done so even when those orders in one case exceeded the

15   subject matter jurisdiction of the bankruptcy court.  And

16   I'm thinking of Travelers Indemnity v. Bailey, 557 U.S. 137,

17   or in another case where the order plainly and undisputedly

18   seemingly violated the Bankruptcy Code.  And that's in

19   United Student Aid Funds v. Espinosa, 559 U.S. 260.

20           So the time to litigate this Court's order ended

21   on December 2, 2020 when the time to appeal expired.

22   Plaintiffs don't appear to dispute that law, but instead

23   argue that the 9019 order is not in fact final, but instead

24   is contingent.  But that's wrong.

25           It's true that the 9019 order provides that

Page 36

1    certain contingencies must happen before the time for the

2    Debtor's performance.  That is to say the plea agreement

3    must be accepted before the Government is provided with all

4    of the claims agreed to in the DOJ resolution.  But that

5    doesn't make the 9019 order anything but final.

6          In fact, we know that because the Second Circuit

7    has held that a 9019 order is a final order even when it

8    authorizes a settlement that requires a second court's

9    approval, just like the plea agreement here must be approved

10   and accepted by the sentencing court.  And that's in Bennett

11   Funding, 439 F.3d 155, 164.  This Court's 9019 order was

12   final when entered, and Plaintiff's attempt to undo it now

13   is a forbidden collateral attack.

14         Now, we could stop here, Your Honor, but I'll turn

15   to that second independent set of reasons that the complaint

16   should be dismissed in case Your Honor reaches those issues.

17   And that's that Plaintiffs failed to state a claim for

18   equitable subordination.

19         Section 510(c) authorizes the Court to subordinate

20   one claim to another under principles of equitable

21   subordination.  And those principles require that Plaintiffs

22   now allege and later prove, one, that the Government engaged

23   in extreme inequitable misconduct; two, that the

24   Government's alleged conduct harmed Plaintiffs and conferred

25   an unfair advantage on the Government; and three, that

Page 37

1    subordination would be consistent with bankruptcy law.  And

2    that's the three-part test articulated in (indiscernible).

3            Now, Plaintiffs fail to allege facts that would

4    supply any one of these three requirements.  Plaintiffs

5    allege that DOJ acted inequitably first by failing to seek

6    restitution as part of the agreed sentence of Purdue in the

7    plea agreement, and second, by being "complicit in the

8    opioid crisis and improperly enriching itself by failing to

9    appropriately regulate and prosecute debtors."

10           It's worth pausing a moment on what Plaintiffs ask

11   that this Court do.  Plaintiffs ask this Court second guess

12   the exercise of prosecutorial and policy discretion by the

13   United States Department of Justice in a plea agreement and

14   then second guess Congress and the executive branch in how

15   they should have how they should have acted differently to

16   regulate debtors.  And all of this would be in derogation of

17   very well-settled doctrines of immunity which we describe at

18   length in our brief.

19           So it's no surprise that Plaintiffs didn't

20   identify a single case in which a bankruptcy court accepted

21   such an invitation to subordinate the United States' claim

22   based on the United States' policy and prosecutorial

23   discretion.  And, respectfully, this Court shouldn't be the

24   first.

25           But moreover, even if Plaintiffs could surmount

Page 38

1    that obstacle, the fact remains that none of the conduct

2    alleged meets the extraordinarily high standard for

3    equitable subordination.  The caselaw establishes an

4    extremely high bar, as Your Honor knows.  The words that the

5    caselaw uses to describe the conduct that meets the standard

6    are "egregious, improper, and wrongful, so gross and

7    egregious as to be tantamount to fraud, misrepresentation,

8    overreaching, or spoliation; conduct that involves moral

9    turpitude, illegality, or breach of a legally-recognized

10   duty."  And that is all from, for example, 80 Nassau

11   Associates, 169 B.R. 832.

12             Nothing Plaintiffs allege comes anywhere close to

13   meeting that extraordinarily high bar.  And you can see that

14   by comparing it to the kind of case that does meet that bar.

15             For example, in Picard v. Magnify, which comes out

16   of the Madoff Ponzi scheme, the defendant allegedly received

17   $120 million out of the Madoff Ponzi scheme and allegedly

18   knew that the Madoff scheme would justify that amount by

19   fabricating falsified and backdated trading records.

20             Or in another example, Judge Drain ordered

21   equitable subordination of claims of a party that Judge

22   Drain concluded violated the automatic stay through "a

23   literally false and intentionally misleading advertising

24   campaign."  And that was in Windstream, 627 B.R. 32.  That's

25   the kind of conduct that's required for equitable

Page 39

1    subordination.  And that's also the kind of conduct that is

2    not alleged in Plaintiff's complaint.

3           Turning to the second prong, injury.  Injury in

4    this context means that the Government's conduct must have

5    harmed the bankruptcy results of other creditors in this

6    case.  But Plaintiffs can't allege that and haven't alleged

7    that here because, as discussed earlier, the United States

8    asserted forfeiture claims and non-dischargeable claims that

9    could have consumed the entire states and left nothing for

10   other creditors.  The DOJ resolution, and in particular the

11   forfeiture judgement credit, greatly enhanced the recoveries

12   of other creditors.  And the plan, through the efforts of

13   parties like the UCC and the Ad Hoc Group and others

14   provides for recoveries to personal injury victims.  So it's

15   no surprise that Plaintiff's subordination claim is not

16   based on the treatment of their personal injury claims in

17   this case.  Instead, it's based on a hypothetical claim, a

18   claim that doesn't exist, and a claim that would only come

19   into being if the United States had obtained a criminal

20   judgement against Purdue before confirmation of a plan if in

21   that hypothetical case the hypothetical sentencing court

22   ordered restitution if that hypothetical order of

23   restitution provided the plaintiffs receive restitution and

24   if in that scenario there was enough money left in the

25   estate and a few enough set of creditors that were the

Page 40

1    beneficiaries of the restitution order that Plaintiffs could

2    recover something from that estate and could recover more

3    than they are scheduled to recover under the plan.  And

4    that's a lot of ifs, Your Honor.  Plaintiffs don't cite any

5    authority, and we aren't aware of any, that holds that an

6    equitable subordination claim can be premised on losing the

7    chance to receive a hypothetical recovery on a hypothetical

8    claim.

9            And finally, subordination would also be

10   inconsistent with the Bankruptcy Code for two reasons.  The

11   first is that the MVRA expressly states that it does not

12   create a cause of action "in favor of any person against the

13   United States."  And that's from 18 U.S.C. 3664(p).  The

14   complaint is an attempt to use equitable subordination to do

15   exactly that; to do in bankruptcy court what could not be

16   done in district court, to sue the United States in,

17   Plaintiff's own words, to obtain the rights that Congress

18   has granted under the MVRA.  It is inconsistent with the

19   Bankruptcy Code to allow Plaintiffs to use equitable

20   subordination to circumvent the procedural limitations on

21   the MVRA.  And second, to end where we began, Plaintiffs in

22   their own words argue that the suit asked that this Court

23   subordinate the Government's claims because it would be

24   better to dedicate funds to medical treatment than put that

25   money in the treasury.  But that's exactly what a bankruptcy

Page 41

1    court cannot do.  As this Court well knows and as the

2    Supreme Court has cautioned, a court is not free to use

3    equitable subrogation to adjust the priorities of valid

4    claims because the court perceives that the outcome, that

5    the recoveries on those claims are inequitable.  And that's

6    from U.S. v. Noland, 517 U.S. 535.  Plaintiff can't

7    subordinate a claim to achieve a result it would like

8    better.  And there's no surprise.  Nothing would be more

9    self-defeating in this case and more potentially inequitable

10   than to risk toppling what the UCC in its pleading describes

11   as a numerous and delicately-balanced intercreditor

12   settlements that allow the plan to provide billions of

13   dollars in abatement and victim compensation and to avoid

14   years of costly and wasteful intercreditor litigation.

15           And unless the Court has any questions for me, I

16   will now cede the podium to Mr. Fogelman from the United

17   States until time for reply.

18           THE COURT:  All right.  Thank you very much.  And

19   I think it makes sense to hear from Mr. Fogelman so all of

20   the movants are heard from, and then I'll hear from the

21   other side.  So, Mr. Fogelman?

22           MR. FOGELMAN:  Good morning, Your Honor.  Can you

23   hear me clearly?

24           THE COURT:  I can hear you just fine.  Thank you.

25           MR. FOGELMAN:  Thank you, Your Honor.  Your Honor,

Page 42

1    I'll be brief.

2           The Plaintiff's complaint should be dismissed

3    because they forfeited their right to raise the allegations

4    that they have raised in their adversary proceeding.  As

5    Debtor's counsel explained, the treatment for the

6    government's claims was resolved nearly three years ago

7    through a 9019 motion that provided how the government's

8    claims would be treated.  The plaintiffs had filed proofs of

9    claim months before that proceeding.  They had ample

10   opportunity if they objected to the treatment of the

11   government's claims to raise those objections in connection

12   with the 9019 motion.  There were multiple objections to the

13   9019 motion, and there was a full-day hearing to address

14   those objections and to argue about the relief provided in

15   the 9019 order that the Court approved.

16          And the Plaintiffs never objected, they did not

17   appear, did not make any arguments at the hearing, they did

18   not file any appeal.  And for those reasons, Your Honor,

19   this case should be dismissed as they forfeited their rights

20   to now come back years later and make these arguments.

21          Beyond that, Your Honor, we are prepared to rest

22   on the submission we made in our brief addressing equitable

23   subordination unless the Court has any questions for us.

24          THE COURT:  All right.  No, that's fine.  Thank

25   you very much.  I appreciate your comments.  And with that,

Page 43

1    I'll turn to the Plaintiffs to hear their argument.

2          MR. OZMENT:  Good morning, Your Honor.  My name is

3    Frank Ozment and I am here for Creighton Bloyd and Stacey

4    Bridges.

5          At the outset, a housekeeping matter.  Your Honor

6    may have noticed that Valrey Early had also entered an

7    appearance for these parties.  Mr. Early is a seasoned

8    bankruptcy practitioner.  Unfortunately, he has been in the

9    hospital.

10          THE COURT:  I'm sorry to hear that.

11          MR. OZMENT:  Well, thank you.  He is well-known

12    and well-loved in the local bankruptcy bar, and I think he's

13    got a good prognosis.

14          But bearing in mind the admonition to plead

15    (indiscernible), I think I'll just go forward on my own in

16    light of the briefs that Val put together.

17          THE COURT:  Yeah.  And I will just stop you to say

18    that obviously oral argument is to highlight various things

19    that are in the briefs and to sort of have a conversation.

20    So I have read all the briefs.  I will read them again after

21    we are done here today, as is my practice.  And so certainly

22    your brief covered the matters well.  And so obviously happy

23    to hear from you.  And again, please pass along my best

24    wishes for a speedy recovery to your colleague.

25          MR. OZMENT:  Thank you.  Speaking first to the

Page 44

1    context that -- Your Honor mentioned that you were

2    relatively new to the case.  I want to give just a word of

3    context to the kind of recovery or restitution that we're

4    looking for here.  It isn't necessarily and is unlikely to

5    be a cash distribution to people who are in recovery.  The

6    Mandatory Victim Restitution Act authorizes subsidies for

7    the medical treatment of victims of crimes that involve

8    fraud, and that's what we're looking for here.

9            When people are in recovery generally speaking,

10   they have a much higher, if not to say dramatically higher,

11   likelihood of recovery if they receive medicine-assisted

12   therapy.  That consists of two components.  One is the

13   actual medicine itself, which is generally methadone,

14   buprenorphine, or naltrexone.  And then that combined with

15   therapy.  And so what we're looking for here is the medical

16   subsidy that would support those kinds of recovery.

17           With respect to the argument that the movants

18   advanced at the outset, we would respectfully submit that

19   the Section 9019 order is not (indiscernible).  And in that

20   respect, I think it's helpful to emphasize one thing that we

21   did not really give much treatment to in our briefs, and

22   that is what Judge McMahon said in her order that dealt with

23   the appeal.  Of course the Government or the U.S. Trustee

24   had raised issues in that appeal and also raised issues not

25   just about the confirmation order, but also about the

Page 45

1    disclosure statement.  And at Footnote 71 of our opinion,

2    Judge McMahon pointed out that she would not take up the

3    argument regarding the disclosure statement because, like

4    everything else connected with the confirmation order, it

5    has fallen by the wayside.

6        We do have a 9019 order that authorized the entry

7    of a plea agreement.  But to the extent that 9019 order may

8    have once served as a bar to recovery, it does no longer in

9    light of the district court --

10        THE COURT:  Well, let me ask you about that.  So

11   the confirmation order was what was appealed.  And this

12   order was not appealed, and there's still an appeal to the

13   Second Circuit and perhaps an appeal that might go even

14   further.  And so clearly there isn't an ultimate resolution

15   yet.  And so -- but the confirmation has been appealed, but

16   this order wasn't.  And so how am I to understand the

17   significance of that?

18        MR. OZMENT:  It's a very important distinction.

19   That's part of what is important to focus on in light of the

20   Bennett Funding case.  Bennett Funding was about whether an

21   order was appealable I think under 1291 to the Appeals

22   Court, 28 U.S.C. 1291.  And it was really holding that, yes,

23   it is.  Even though there are loose ends to be wrapped up,

24   even if some of those loose ends are major, that is a final

25   order for purposes of appeal.  It didn't treat whether the

1    order was res judicata or collaterally estopped.  There are

2    orders every day, particularly in my ordinary field of

3    practice, which is civil rights, that are appealable because

4    they are in some sense final within the (indiscernible)

5    statute conferring jurisdiction or appeal, but they are not

6    res judicata.  And a prominent example of that would be

7    things like qualified immunity.  So if anybody asserts

8    qualified immunity, it's denied, well, they can appeal that

9    even though that's not something that's going to bar anybody

10   (indiscernible) res judicata (indiscernible).

11            Does that answer your question?

12            THE COURT:  Well, yes and no.  So taking what you

13   just said and going from there, so if this is a final order,

14   the 9019 is a final order for purposes of appeal, then it's

15   the law of the case and -- there doesn't seem to be much of

16   a dispute in the papers that granting the relief you request

17   will require that order to be essentially overridden with a

18   different result.  Am I missing something on that?

19            MR. OZMENT:  I wouldn't characterize it quite that

20   way, Your Honor.  Because our request was fairly limited.

21   We are not asking to upset at this stage of the proceedings

22   the impact of the settlement, for example, on the states.

23   What we are saying is that the behavior of the United States

24   was such that we should be equitably subordinated to the

25   amount that is going to be disbursed to them within three

Page 47

1     days of the entry or the approval of the plea agreement.

2               THE COURT:  But doesn't that -- all settlements

3     are a series of back and forth, right?  And so as part of

4     what the United States ended up with in that settlement

5     where it decided to forego a substantial rights that it

6     might otherwise have, it got this certain amount.  And I

7     understand you're not challenging other aspects of the 9019,

8     but a settlement is a bundle of rights.  And this would seem

9     to be like the game Jenga; you're trying to pull one out

10    without toppling over the whole thing.  But clearly this

11    amount of money under your view, which was provided to go to

12    the United States under the settlement would no longer go to

13    the United States under the settlement in the same way.  I

14    mean, that seems pretty clear.  Am I right?

15              MR. OZMENT:  Your Honor, I don't want to avoid

16    your question.  But I would very, very, very humbly and

17    respectfully submit that's not exactly right.  Whether they

18    can withdraw from the settlement is --

19              THE COURT:  Well, they're not trying to withdraw

20    from the settlement.  So withdraw is not the right word.

21    The settlement exists.  Can the settlement stay as is if the

22    relief you're requesting is granted?  And I think the answer

23    is no.  Some parts of it can, but other parts can't.

24              MR. OZMENT:  I think the plea agreement will stand

25    because that's a matter governed by Rule 11 of the Rules of

Page 48

1    Criminal Procedure.  And in the event that, for example, we

2    came in and we said there's something under the law of

3    equitable subordination that requires Purdue to pay twice as

4    much, you know, that's got to be the deal.  Well, in that

5    event, under Rule 11(c), they would have the right to

6    withdraw from the plea agreement.

7            If we come in and we say, look, the United States

8    still -- Purdue is still getting what they're supposed to

9    get out of the deal under the plea agreement.  But, you

10   know, in the bankruptcy court, money will be directed

11   differently.  That's not going to authorize the United

12   States to withdraw from the plea agreement.  And, quite

13   frankly, I think it's unfathomable that they would do so.  I

14   think it would be politically extraordinary for them to take

15   that measure.  So that's my answer as best I can on it.

16           THE COURT:  All right.  Feel free to move along.

17           MR. OZMENT:  Thank you.  With respect to the other

18   arguments regarding the 9019 order as we've talked about and

19   I won't reiterate here at any length, but it does have a lot

20   of pretty serious contingencies in it that would ordinarily

21   in the context of res judicata prohibit an order from having

22   a preclusive effect, even if that order were appealable.

23   And to that end, I think colloquy at the, excuse me, hearing

24   on a 9019 order is instructed because there was a great deal

25   of emphasis on exactly whether the United States would have

Page 49

1   the right to take anything under that deal and only after

2   confirmation.  So that's another link, if you will, to

3   confirmation.

4          With respect to the argument that the movants made

5   regarding law of the case, we would submit that Judge

6   McMahon's remarks are (indiscernible) with respect to what

7   is the standing of orders after the confirmation order was

8   vacated.

9          Going over to the argument regarding immunity and

10  prosecutorial discretion, I don't think immunity or concepts

11  of it here are at all relevant.  If we were, you know, the

12  Inspector General or the Department of Justice and we're

13  looking into, you know, the settlement, then that's a

14  context where immunity would be important.  If we were

15  trying to hold the United States civilly liable in some way

16  --

17          THE COURT:  Well, I would respectfully ask you

18  this question that challenges that premise, which is holding

19  the United States liable is one thing, but saying that a

20  criminal case should take a certain path as opposed to a

21  different path, isn't that another form of challenging

22  prosecutorial discretion?  Or said another way, the

23  Government's right to proceed as the sovereign in handling

24  criminal matters.

25          MR. OZMENT:  And if we were before the Court, as

Page 50

1   parties sometimes do appear before district courts in

2   connection with a plea agreement and objecting to it at the

3   appropriate time, then that would be the question there.

4   We're not here to upset whatever the deal is for the Debtor

5   in the plea agreement.  We're here to say under the plea

6   agreement, you get what you're getting, Purdue, and the

7   United States is getting what it's getting, but here's -- we

8   believe their interest should be subordinated to

9   (indiscernible).  And that gets into the merits of the

10  equitable subordination.  But we're not trying to interfere

11  with at this point the (indiscernible) and U.S. District

12  Court in New Jersey.  Do that we would -- of course then we

13  would have to move for leave for the -- leave for relief

14  from the automatic stay and then enter an appearance there -

15  -

16          THE COURT:  Well, even then you wouldn't be able

17  to -- you wouldn't be able to tell -- you would be able to

18  advocate to that district court what to do, but you wouldn't

19  be able to dictate exactly what the result is.  You would be

20  a party advocating as opposed to being able to tell the

21  government what position it should take.  And, frankly, I

22  have the same concern that -- how do I have the authority to

23  tell the government what position it should take in a

24  criminal matter?

25          MR. OZMENT:  I don't believe -- I don't want you

Page 51

1    to take that position, Your Honor.  Nobody could tell them

2    what to do in a criminal matter.  I do want you to tell them

3    what to do with the money that was received in that matter

4    in this case.

5              THE COURT:  But again, I think that -- how does

6    that not impact the settlement and everything related --

7    well, how does that not impact -- doesn't tell the

8    Government what it's supposed to do in those proceedings.

9    Because the settlement contemplates certain things are going

10   to happen -- I'm sorry, it sounds like it contemplates

11   certain things are going to happen in district court.  And

12   wouldn't this be telling the government what sort of -- a

13   high dive into a glass of water.  You can do something, but

14   you can only do these things because it has to work out this

15   way.

16             MR. OZMENT:  Your Honor, I want to answer your

17   question by focusing on very practical steps that that would

18   involve.  So if Your Honor today, or at some point more

19   likely in the future, held that we were entitled to

20   equitable subordination, for the agreement to fall apart, a

21   settlement agreement to fall apart in a way that would

22   impact the bankruptcy, the United States would have to go

23   back to the district court in New Jersey and say we're not

24   getting $225 million that we anticipated.  That money is

25   going to go toward purposes mandated by the mandatory victim

1    restitution act, and thus we would like to somehow withdraw

2    our support to the guilty plea.

3           Number one, it's difficult to imagine the United

4    States doing that, but let's assume that they did.  Second,

5    I don't know that that would give them the right under Rule

6    11 of the Rules of Criminal Procedure to back out of the

7    plea agreement.  Number three, I think the United States

8    district court judge would still be well within her rights

9    to say, well, Purdue, you can plead guilty and, you know, I

10   can sentence you.  And if the United States doesn't support

11   it, that's fine.  I've already agreed.

12          So I don't think this is -- I don't think

13   (indiscernible) money within the bankruptcy case, if you

14   will, necessarily impacts what is going to transpire in U.S.

15   district court.  And that's what I take to be the keystone

16   of you say unraveling the settlement agreement.

17          And beyond that, I don't know how else I can

18   explain it.  I may be mistaken, but that's how I see it,

19   Your Honor.

20          THE COURT:  All right.  Anything else, Counsel?

21          MR. OZMENT:  Briefly touching on the merits, if

22   you will, of the equitable subordination.  If Your Honor

23   believes that we have not adequately alleged anything

24   regarding the merits of any subordination.  We would ask

25   that it be dismissed without prejudice -- with prejudice but

Page 53

1   (indiscernible) we think we have (indiscernible).

2          We have been -- or the clients have been adversely

3   impacted.  And of course once you get (indiscernible), then

4   you not only get the award, you get a lien for the award.

5   You're a secured creditor.  That's a statutory lien that

6   would ordinarily (indiscernible) preference.  So for that

7   reason alone it seems to me that there's been a fairly

8   significant impact on the rights of the clients in

9   bankruptcy.

10          As far as without precedent, I agree, this is not

11   a matter where there is strong precedent.  I have not found

12   a case where the United States abandoned the victims under

13   the Mandatory Victim Restitution Act on a premise that was

14   factually unsupportable.  And yet in the course of doing so,

15   enriched itself.  And that's what happened here.  There were

16   approximately --

17          THE COURT:  Well, let me ask you about that.

18   That's a consistent theme in your pleadings.

19          MR. OZMENT:  Yes.

20          THE COURT:  But I'm having trouble understanding

21   that word in the context.  If the government was entitled to

22   receive a much higher amount of money and in order for other

23   creditors to receive funds and use those funds for abatement

24   and other purposes, that the government agreed to take a lot

25   less, how that's sort of unjust enrichment here.  It's

Page 54

1    agreeing to take a lot less so that its claim didn't

2    potentially wipe out all recovery in the case.  I guess I'm

3    a little confused about the continual theme of sort of

4    unjust enrichment by the Government here.  So what's your

5    response to that?

6              MR. OZMENT:  My response to this is that Congress,

7    number one, has mandated that victims have this restitution.

8    Number two, if the victims had gotten restitution, then they

9    would have been secured creditors.  And that would have

10   certainly altered the terrain with respect to how things

11   worked out in the case.

12             THE COURT:  But again, to get back to this issue,

13   that then mandates a certain course of conduct and certain

14   set of positions that you're saying the government has to

15   take in the criminal case.

16             MR. OZMENT:  I don't think the government has to

17   take them.  They didn't take them as a matter of fact.  And

18   the question is what are the --

19             THE COURT:  Your -- what you just said was the

20   mandated restitution that you were relying on for your

21   argument makes folks, victims secured creditors.  But that

22   only happens if certain things happen in the criminal case

23   that -- that haven't happened.  And so that would seem to

24   dictate the position that United States would have to take

25   in that criminal case to get to that result.  And that gets

Page 55

1    back to our prosecutorial discretion conversation, doesn't

2    it?

3             MR. OZMENT:  I haven't thought of it that way, and

4    that's not what I mean to urge.  What I mean to say is this,

5    that in light of whatever they did, or in light of what in

6    fact they have done, then the question is what follows.  And

7    what they have done is they have ignored the Mandatory

8    Victim Restitution Act.  Perhaps that was necessary to get a

9    deal.  They have taken other steps in connection with the

10   plea agreement.  They've taken other steps in connection

11   with the settlement agreement.  Now, the question is what

12   happens to the bankruptcy court with the money that would

13   otherwise go to subsidizing medical treatment under the

14   statute.  I think that's about as good as I can answer it,

15   Your Honor.

16            THE COURT:  All right.  Anything else, Counsel?

17            MR. OZMENT:  Nothing further, Your Honor.

18            THE COURT:  All right.  Thank you very much.  And

19   I'll turn to the movants briefly for a targeted reply.

20            MR. TOBAK:  Good morning, Your Honor.  Marc Tobak

21   from Davis Polk & Wardwell for the Debtors.

22            Just four points.  Apologies while I'm attempting

23   to adjust our screen, which isn't cooperating.  Okay.

24            So just four points.  The first is on finality.

25   As Your Honor noted, the fact that an order is final and

Page 56

1    subject to appeal immediately dovetails the question of

2    whether once that time to appeal has run, attacking that

3    order would be a collateral attack because there was res

4    judicata.  And in bankruptcy in particular, the rules for

5    finality are different.

6           As Your Honor knows and as the Supreme Court

7    recently reiterated in their Ritzen Group case, finality is

8    really important in bankruptcy court because a bankruptcy

9    case is built order by order by order.  And just as a party

10   can take an immediate appeal when an order disposes of a

11   discrete element of bankruptcy case, like the 9019 order, on

12   the other hand, when a party doesn't do that, it can't come

13   back later and attack that order collaterally.

14          And in terms of the question of whether there's

15   something so fundamentally wrong with the 9019 order that it

16   could be collaterally attacked or the terms of the

17   settlement, we don't have to look beyond the Espinosa case.

18   I mean, there's an order confirming a plan that discharges

19   student debt without making the required findings in

20   violation of two different provisions of the Bankruptcy

21   Code.  But the problem was that the party that held that

22   debt didn't object.  And when later the parties said that

23   order is void, it violated the law, and the bankruptcy court

24   has a duty to ensure that a plan conform to the Bankruptcy

25   Code, the Supreme Court said it's too bad, it's too late.

Page 57

1    Once the time to appeal runs, if you don't object and if you

2    don't appeal, it's too late.

3              And next let's turn to Judge McMahon.  The

4    confirmation order and the appeal from the confirmation

5    order for that reason didn't say anything about the 9019

6    order.  The 9019 order was final years before the

7    confirmation order was entered and years before the

8    confirmation order was vacated by Judge McMahon's ruling on

9    appeal.

10             The question of what the plan may or may not be in

11   this case is separate from the question of whether the 9019

12   order is final.  And under the current confirmation of the

13   case, the DOJ resolution will be -- ultimately be executed.

14             Now, let's go back to the question about immunity.

15   I will admit I had trouble understanding the point that this

16   isn't about what the Department of Justice ought to have

17   done, because this is exactly what Your Honor is being asked

18   to do, is to sit in judgement of the policy decisions of the

19   Department of Justice.

20             First, it's not that the Department of Justice

21   ignored the MVRA.  We know in the plea agreement that the

22   Department of Justice found that the factual predicates for

23   not seeking restitution were met.  And the question that

24   Plaintiff's counsel has raised is whether the Department of

25   Justice correctly reached that conclusion.

1            But more importantly, the question about the

2      government abandoning victims is even harder for me to

3      understand.  The Government could have taken everything.

4      They agreed to take only $2 billion in forfeiture.  Then 88

5      percent of that amount was redirected to victim compensation

6      and abatement, including medical-assisted therapy that would

7      be carried out by the states.  And it's that conduct,

8      keeping the $225 million and not giving that as well as the

9      other 88 percent of the forfeiture judgement that Plaintiffs

10     argue is equivalent to fraud, to be complicit in the Madoff

11     Ponzi scheme or to sending out fraudulent messages and is

12     the kind of illegal, egregious, gross misconduct that would

13     support equitable subordination.  Because, again, the

14     Government only gave up 88 percent of its super-priority

15     claim.

16            And that I think brings us back to the final

17     point.  Your Honor, I couldn't say it better than a Jenga

18     tower.  The question is what will happen if we take out one

19     of the blocks at the bottom or in the middle of the Jenga

20     tower?  What will happen if the settlement, which was agreed

21     to and entered in the final order before the plan was

22     structured, before the creditors and the debtors and the

23     Sackler families had agreed to the final form of the plan

24     and those settlements.

25            And while Plaintiffs have been willing to

1    speculate about what would happen, the answer is we don't

2    know.  And as fiduciaries, we can't gamble with billions of

3    dollars dedicated to victim compensation and abatement to

4    play a game of check and see what would happen.  And that

5    all sets aside, Your Honor, the fundamental question that

6    there's no legal case for equitable subordination under the

7    Code has been made.

8           And so absent any further questions, the Debtors

9    will rest there.

10          THE COURT:  All right.  Thank you very much.

11          Mr. Fogelman, I believe you have the last word.

12          MR. FOGELMAN:  Thank you, Your Honor.  Nothing

13   further from the Government.

14          THE COURT:  All right.  Thank you.

15          MR. PREIS:  Your Honor?

16          THE COURT:  Yes.

17          MR. PREIS:  Your Honor, it's Arik Preis from Akin

18   Gump Strauss Hauer & Feld on behalf of the Official

19   Committee.

20          We filed a joinder --

21          THE COURT:  yes.

22          MR. PREIS:  -- to the motion to dismiss.

23   Obviously I didn't speak earlier because we're just a

24   joinder.  But if Your Honor would allow us, I'll just make

25   three very brief statements.

Page 60

```
 1              THE COURT:  Well, it's a bit out of order, Mr.

 2   Preis.  I mean -- so if there are points that are somehow

 3   unique to the Committee.  But if they're points on the

 4   argument, I think I've already had two folks argue on behalf

 5   of the folks who filed, the movant.  I have your  joinder.

 6   I am just -- I think your comments would likely start

 7   another round of discussions.  And I think it's been ably

 8   covered by all the advocates here.  But is there something

 9   unique to the Committee that needs to be pointed out?

10              MR. PREIS:  It was covered in our papers, our

11   position.  So if you would prefer we don't -- our position

12   is a little bit unique, but it's covered in our papers.  And

13   so --

14              THE COURT:  Yeah, I have it.  I think you're good.

15   So at this juncture, I would suggest that I take your papers

16   -- as I said, I've read them.  I'll read them again.  And I

17   certainly do understand.  And that's why I phrased my

18   question is there something unique to the Committee.  But if

19   it's been briefed, I've got it, and I think you're good to

20   go.

21              MR. PREIS:  Thank you, Your Honor.

22              THE COURT:  All right.  With that, what I would

23   like to do is schedule a time Monday to provide you all with

24   a bench ruling.  And I am flexible on time.  So my initial

25   thought would be to pick 11:00 on Monday.  But I could also
```

Page 61

1    do it at 2:00.  So if somebody is tied up with something at

2    11:00, we can easily segue to 2:00.  But the first bid and

3    ask is 11:00.  And if that works for folks, we'll stick with

4    that.

5              MR. ROBERTSON:  Your Honor, that works for

6    Debtors.

7              THE COURT:  All right.  Mr. Fogelman?

8              MR. FOGELMAN:  That works for the Government, Your

9    Honor.  Thank you.

10             THE COURT:  All right.  And counsel for the

11   Plaintiffs?

12             MR. OZMENT:  Yes, Your Honor.  That's fine.

13             THE COURT:  All right, great.  So we'll do exactly

14   the same thing.  Everybody will dial in on Zoom.  And it

15   will just be for the purposes of providing a bench ruling on

16   today's motions that were argued.  I would like to thank

17   everybody for their argument and wish you all a very good

18   rest of the day and see you next week.  Thank you.

19             (Whereupon these proceedings were concluded at

20   12:17 PM)

21

22

23

24

25

1                        I N D E X

2

3                        RULINGS

4                                        Page      Line

5    Motion for Authorization to Enter into a

6    Funding Agreement With Harm Reduction

7    Therapeutics, Inc., GRANTED              29        25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 63

1                          C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  March 23, 2023

[& - 71.1]                                                                                    Page 1

**&**

**&**   3:9,12,18,24
4:23 5:19,25
6:2,5,8 10:1
14:18 15:12
16:4 20:10,11
20:11 21:5,23
22:18 23:24
24:3,13,19
25:3,3,6,18
28:17 30:13
55:21 59:18

**0**

**07102**   9:22
10:11

**1**

**1**   5:19
**1.775**   32:25
33:6
**10017**   9:6 10:4
**10036**   9:15
**10601**   1:21
**10th**   34:2
**11**   14:5 31:7
47:25 48:5
52:6
**11501**   63:23
**11:00**   60:25
61:2,3
**11:09**   1:24
**120**   38:17
**1201**   9:21
10:10
**12151**   63:7
**1291**   45:21,22

**12:17**   61:20
**130,000**   21:15
**137**   35:16
**15,000**   18:16
**155**   36:11
**164**   36:11
**169**   38:11
**18**   40:13
**18,000**   21:17
**185**   18:15
**185,143.50**
18:10
**18th**   34:8
**19-08288**   1:4
**19-23649**   1:3

**2**

**2**   32:18 33:5
35:21 58:4
**2.8**   32:20
**200,000**   18:16
**2020**   31:1
32:11 34:2,5,8
34:10,13 35:21
**2023**   1:23
63:25
**2024**   29:7
**21**   1:23
**21-07088**   6:23
7:1,6,11,16,21
8:1,6,12,17
**21-7088**   14:21
**21st**   32:10
**225**   33:23
51:24 58:8
**23**   63:25
**24**   7:2

**248**   1:20
**24th**   34:10
**25**   7:7 62:7
**260**   35:19
**27**   7:12
**28**   7:17 45:22
**29**   7:22 62:7
**2:00**   61:1,2
**2nd**   34:13

**3**

**3.544**   32:20
**300**   1:20 63:22
**32**   38:24
**330**   63:21
**35**   8:2
**36**   8:7
**3664**   40:13
**37**   8:13

**4**

**4**   29:17 33:17
**40**   8:18
**439**   36:11
**450**   9:5 10:3

**5**

**5**   29:15
**510**   36:19
**517**   41:6
**535**   41:6
**5412**   3:17
**5416**   4:4
**5417**   6:7
**5418**   6:1
**5421**   3:8
**5422**   3:11
**5423**   4:7

**5425**   3:5
**5427**   6:4
**5428**   5:15
**5429**   5:13
**5430**   5:21
**5431**   5:7
**5432**   4:1
**5433**   5:10
**5434**   5:18
**5435**   4:22
**5436**   5:4
**5437**   4:16
**5438**   4:13
**5439**   5:1
**5440**   4:19
**5441**   3:14
**5443**   3:20
**5444**   3:23
**5445**   5:24
**5447**   6:10
**5458**   4:10
**5459**   6:13
**5474**   6:16
28:25
**5475**   6:19
**5501**   3:3
**557**   35:16
**559**   35:19
**570**   9:21 10:10

**6**

**6.2**   32:4
**627**   38:24

**7**

**71**   45:1
**71.1**   28:2

| 8 | accommodat... | administrativ... | 32:15,23 33:5 |
|---|---|---|---|
| **80**  38:10 | 19:1 | 33:19 | 33:6,10 36:4 |
| **832**  38:11 | **account**  33:2 | **admit**  57:15 | 37:6 52:11 |
| **88**  58:4,9,14 | **accurate**  63:4 | **admonition** | 53:24 58:4,20 |

**9**

**accommodat...**
19:1
**account**  33:2
**accurate**  63:4
**achieve**  31:13
41:7
**achieved**  17:15
**act**  44:6 52:1
53:13 55:8
**acted**  37:5,15
**action**  40:12
**actual**  44:13
**actually**  17:6
17:19 19:4
27:2
**ad**  19:11 22:19
22:23 23:2
39:13
**add**  20:6 21:21
22:1 23:11
24:15 26:23
**additional**
18:15 21:12,17
23:5
**address**  19:23
19:25 42:13
**addressing**
31:20 42:22
**adequately**
31:19 52:23
**adjust**  41:3
55:23
**administered**
14:6
**administrative**
32:17 34:24
35:5

**8**
**80**  38:10
**832**  38:11
**88**  58:4,9,14

**9**
**9**  29:12
**9019**  31:4
32:11 34:1,5,8
34:11 35:4,23
35:25 36:5,7
36:11 42:7,12
42:13,15 44:19
45:6,7 46:14
47:7 48:18,24
56:11,15 57:5
57:6,11

**a**
**aa**  19:13 25:2
**aaron**  11:19
**abandoned**
53:12
**abandoning**
58:2
**abatement**
29:10 33:7
41:13 53:23
58:6 59:3
**able**  50:16,17
50:17,19,20
**ably**  60:7
**absent**  59:8
**absolutely**
27:15
**accepted**  36:3
36:10 37:20

**administrativ...**
33:19
**admit**  57:15
**admonition**
43:14
**adv**  1:4
**advanced**
44:18
**advantage**
36:25
**adversary**  6:23
7:1,3,6,8,11,13
7:16,19,21,24
8:1,6,9,12,14
8:17,19 14:21
15:10,13 30:9
42:4
**adversely**  53:2
**advertising**
38:23
**advocate**  50:18
**advocates**  60:8
**advocating**
50:20
**afanador**  10:8
**afandaor**  9:19
**affected**  18:4
**afternoon**  23:7
**agenda**  3:3
17:6 19:9,20
22:14 23:16
26:14 28:14,23
**ago**  18:25 42:6
**agree**  53:10
**agreed**  18:3,7
18:14 21:12,17
23:4 25:11

32:15,23 33:5
33:6,10 36:4
37:6 52:11
53:24 58:4,20
58:23
**agreeing**  54:1
**agreement**
6:17,21 17:20
28:15,24 32:14
32:14 33:18,25
34:22 36:2,9
37:7,13 45:7
47:1,24 48:6,9
48:12 50:2,5,6
51:20,21 52:7
52:16 55:10,11
57:21 62:6
**aid**  35:19
**akin**  4:23 9:11
14:18 21:5,14
21:22 59:17
**al**  1:12,15 6:23
6:24 7:1,2,6,7
7:11,12,16,17
7:21,22 8:1,2,6
8:7,12,13,17
8:18
**alec**  12:18
**alex**  11:25
**alexander**
13:12
**alixpartners**
3:21 20:12
**allegations**
42:3
**allege**  31:15
36:22 37:3,5

[allege - assisted]                                                                 Page 3

38:12 39:6
**alleged** 31:19
  36:24 38:2
  39:2,6 52:23
**allegedly** 32:4
  38:16,17
**allen** 9:24
  10:13
**allow** 40:19
  41:12 59:24
**allowance**
  25:22
**allowed** 32:17
  34:24 35:5
**altered** 54:10
**america's** 7:3,8
  8:8
**amount** 25:22
  27:15 32:7,18
  38:18 46:25
  47:6,11 53:22
  58:5
**ample** 42:9
**announce**
  17:18
**announced**
  32:10
**answer** 24:9
  26:19 46:11
  47:22 48:15
  51:16 55:14
  59:1
**anthony** 11:4
**anticipated**
  51:24
**anybody** 19:16
  26:6 27:13

46:7,9
**apart** 51:20,21
**apologies**
  20:13 55:22
**appeal** 31:2,3,5
  35:10,21 42:18
  44:23,24 45:12
  45:13,25 46:5
  46:8,14 56:1,2
  56:10 57:1,2,4
  57:9
**appealable**
  45:21 46:3
  48:22
**appealed** 34:11
  45:11,12,15
**appeals** 45:21
**appear** 35:22
  42:17 50:1
**appearance**
  15:21 16:13,14
  16:20 43:7
  50:14
**appearances**
  14:7 15:15
  16:11
**applicants**
  16:5
**application** 3:5
  3:8,11,14,17
  3:20,23 4:1,4,7
  4:10,13,16,19
  4:22 5:1,4,7,10
  5:13,15,18,21
  5:24 6:1,4,7
  16:15 17:7
  18:11 23:24

24:8,17,19,24
  24:25 25:14
  26:9,14,23
  27:8,10,12
  28:1
**applications**
  15:24 16:10
  17:3,10,21
  19:8 20:4,9,20
  20:23 21:1,10
  21:16,21 22:8
  22:11,14,16,19
  23:4,10,15,20
  23:22 24:20
  25:2,25 26:3,7
  26:10,12,18
  27:23
**appointed**
  15:23
**appreciate**
  27:13,14 29:25
  30:3 42:25
**appropriate**
  17:9 19:6
  21:12 50:3
**appropriately**
  37:9
**approval** 26:3
  31:24 36:9
  47:1
**approve** 20:20
  22:13 23:21
  24:25 26:12
  27:11 30:5
**approved** 36:9
  42:15

**approving**
  31:2
**approximately**
  21:15 53:16
**argue** 35:23
  40:22 42:14
  58:10 60:4
**argued** 61:16
**argument** 6:24
  43:1,18 44:17
  45:3 49:4,9
  54:21 60:4
  61:17
**arguments**
  42:17,20 48:18
**arik** 9:17 59:17
**arnold** 20:10
**arps** 3:24
  20:12
**art** 2:5
**articulated**
  37:2
**aside** 59:5
**asked** 40:22
  57:17
**asking** 28:21
  46:21
**asks** 35:7
**aspects** 34:18
  47:7
**asserted** 32:2
  39:8
**asserts** 46:7
**assist** 33:12
**assisted** 33:14
  44:11 58:6

associates
38:11
assume  52:4
assuming  18:1
27:3
attack  30:20
30:23 34:16,17
35:8,11 36:13
56:3,13
attacked  56:16
attacking  56:2
attacks  35:13
attempt  30:18
36:12 40:14
attempting
55:22
attorney's  15:4
attorneys  9:4
9:12,20 10:2,9
authority  6:17
40:5 50:22
authorization
6:20 28:23
62:5
authorize  6:16
48:11
authorized
45:6
authorizes
34:19 36:8,19
44:6
automatic
38:22 50:14
available  24:9
29:5
avenue  9:5
10:3

avoid  41:13
47:15
award  53:4,4
aware  24:8
25:13 40:5

**b**

b  2:1 10:18
b.r.  38:11,24
back  42:20
47:3 51:23
52:6 54:12
55:1 56:13
57:14 58:16
backdated
38:19
bad  56:25
bailey  35:16
balanced  41:11
bank  28:4
bankruptcy
1:1,19 2:3 14:3
31:17,18,18,25
33:21 35:13,15
35:18 37:1,20
39:5 40:10,15
40:19,25 43:8
43:12 48:10
51:22 52:13
53:9 55:12
56:4,8,8,11,20
56:23,24
bar  38:4,13,14
43:12 45:8
46:9
barker  10:16
barred  31:3

based  20:19
22:10 23:20
24:23 26:10
27:10 37:22
39:16,17
basic  30:22
bb  19:14 26:14
bearing  43:14
becker  10:17
bedell  5:5
21:24
bedrock  35:8
began  40:21
beginning  29:7
30:24
behalf  7:13 8:3
14:8,10,15,18
14:23,25 15:1
15:5 21:5
22:23 24:3
25:15 28:18
59:18 60:4
behavior  46:23
believe  17:23
21:8 23:6
28:14 50:8,25
59:11
believed  33:18
believes  52:23
bench  60:24
61:15
benedict  9:8
beneficiaries
40:1
benjamin  7:14
7:19 8:15 9:9

bennett  36:10
45:20,20
best  43:23
48:15
better  31:14
40:24 41:8
58:17
beyond  42:21
52:17 56:17
bid  61:2
bielli  6:8
bilaterally
18:3
bill  28:3
billed  28:2
billion  32:3,5
32:18,20,20,25
33:5,7 58:4
billions  32:5
41:12 59:2
bilter  10:18
binding  29:16
bit  60:1,12
blabey  10:19
blocks  58:19
bloyd  8:3
14:22 43:3
bottom  58:19
bragg  10:20
branch  37:14
brauner  10:21
breach  38:9
brianna  10:18
bridges  1:12
6:23 7:1,6,11
7:16,21 8:1,4,6
8:12,17 14:22

43:4
**brief** 31:7
37:18 42:1,22
43:22 59:25
**briefed** 60:19
**briefly** 29:2
52:21 55:19
**briefs** 43:16,19
43:20 44:21
**bringing** 18:16
**brings** 34:14
58:16
**broad** 9:21
10:10
**broader** 31:23
**brooks** 10:16
**brought** 14:21
**brown** 5:8
22:17
**bryant** 9:14
**built** 56:9
**bundle** 47:8
**buprenorphine**
44:14
**burden** 17:1

**c**

**c** 9:1 11:24
14:1 36:19
48:5 63:1,1
**called** 29:3
**campaign**
38:24
**canadian** 9:20
**cancelled**
17:14
**capital** 5:22
22:18

**caplin** 5:25
23:24 24:3,12
24:19
**carefully** 18:13
**caroline** 11:8
22:22
**carried** 33:8
58:7
**carry** 35:3
**carson** 5:2
21:23
**case** 1:3,4 14:5
14:23 15:2,16
15:23 17:17
18:3,9,20,24
26:18 27:17,19
28:5 30:2
33:21 34:9
35:14,17 36:16
37:20 38:14
39:6,17,21
41:9 42:19
44:2 45:20
46:15 49:5,20
51:4 52:13
53:12 54:2,11
54:15,22,25
56:7,9,11,17
57:11,13 59:6
**caselaw** 38:3,5
**cases** 17:22
29:13 31:23,25
**cash** 44:5
**categories**
18:22
**cause** 40:12

**cautioned** 41:2
**cede** 41:16
**central** 34:18
**certain** 23:4
27:15 36:1
47:6 49:20
51:9,11 54:13
54:13,22
**certainly** 30:3
31:10,11 43:21
54:10 60:17
**certified** 63:3
**challenges**
49:18
**challenging**
31:4 47:7
49:21
**chance** 40:7
**chapman**
16:17
**chapter** 14:5
**characterize**
46:19
**charges** 32:16
**check** 59:4
**chen** 10:22
**christopher**
12:14,20 28:17
**circuit** 36:6
45:13
**circumvent**
40:20
**cite** 40:4
**civil** 32:5,14,21
34:25 46:3
**civilly** 49:15

**claim** 32:3,17
32:19,20,21
33:5,24 34:4
34:23 36:17,20
37:21 39:15,17
39:18,18 40:6
40:8 41:7 42:9
54:1 58:15
**claimant** 22:20
**claimants**
19:12 32:9
**claims** 31:13
32:2,4,6,6 33:2
34:24,24,25
35:4 36:4
38:21 39:8,8
39:16 40:23
41:4,5 42:6,8
42:11
**clear** 14:12
20:10 47:14
**clearly** 14:11
22:24 25:7
28:18 30:14,15
41:23 45:14
47:10
**clients** 53:2,8
**close** 27:1
38:12
**code** 31:11,12
31:18 35:18
40:10,19 56:21
56:25 59:7
**cohan** 25:6
**cohen** 6:2 16:4
25:3

cole  4:17 21:22
coleman  10:23
collateral
  30:23 34:16,17
  35:8,13 36:13
  56:3
collaterally
  30:20 35:10
  46:1 56:13,16
colleague  30:8
  43:24
colloquy  48:23
combined
  44:14
come  39:18
  42:20 48:7
  56:12
comes  38:12,15
comley  6:5
  25:3,18
commencem...
  29:18
comments
  19:18 25:19
  27:7,9 42:25
  60:6
commercial
  29:14
committee
  7:22 9:12
  14:15,19 19:10
  19:11 21:2,6
  22:7,12,19,23
  23:2,2 59:19
  60:3,9,18
committee's
  21:8

communities
  33:12
comparing
  38:14
compensation
  3:6,9,12,15,18
  3:21,24 4:2,5,8
  4:11,14,17,20
  4:23 5:2,5,8,11
  5:14,16,19,22
  5:25 6:2,5,8
  41:13 58:5
  59:3
complaint  7:19
  7:25 8:9,15,19
  30:18 31:7,10
  31:22 34:15
  36:15 39:2
  40:14 42:2
complicate
  33:19
complicit  37:7
  58:10
component
  33:16
components
  44:12
comprehensive
  21:11
concepts  49:10
concern  50:22
concerns  18:22
concluded
  38:22 61:19
conclusion
  57:25

conduct  31:16
  36:24 38:1,5,8
  38:25 39:1,4
  54:13 58:7
conferred  33:1
  36:24
conferring
  46:5
confident
  29:10
confirmation
  39:20 44:25
  45:4,11,15
  49:2,3,7 57:4,4
  57:7,8,12
confirming
  56:18
conform  56:24
confused  54:3
congress  37:14
  40:17 54:6
connected  45:4
connection
  42:11 50:2
  55:9,10
connoly  10:24
consistent
  26:17 31:18
  34:21 37:1
  53:18
consists  44:12
consla  10:25
consultants  5:2
  21:23
consulting
  5:11 22:17

consumed  32:7
  39:9
contemplates
  51:9,10
context  29:13
  39:4 44:1,3
  48:21 49:14
  53:21
contingencies
  36:1 48:20
contingent
  19:12 22:20
  35:24
continual  54:3
continue  27:19
continues  29:8
contract  29:19
conversation
  43:19 55:1
conversations
  20:25 22:15
  23:23
conviction
  34:21
cooperating
  55:23
cornerstone
  4:11 20:13
correct  26:1
correctly  20:1
  57:25
cost  29:3
costly  41:14
costs  16:25
cotton  11:1
counsel  15:8
  24:3 26:22

28:15 42:5
52:20 55:16
57:24 61:10
**counter** 29:6
**country** 63:21
**course** 19:3,21
25:21 30:24
33:21 44:23
50:12 53:3,14
54:13
**court** 1:1,19
14:2,3,11,12
14:15,20 15:1
15:7,14,23
16:1,9 17:8
18:1,18 19:3,5
20:5,7 21:10
21:16,19 22:3
22:25 23:8,13
24:6,10,16
25:8,15,23
26:4,21 27:3,6
28:7,10,13,20
29:22 30:10,15
31:2 35:12,13
35:15 36:10,19
37:11,11,20,23
39:21 40:15,16
40:22 41:1,1,2
41:2,4,15,18
41:24 42:15,23
42:24 43:10,17
45:9,10,22
46:12 47:2,19
48:10,16 49:17
49:25 50:12,16
50:18 51:5,11

51:23 52:8,15
52:20 53:17,20
54:12,19 55:12
55:16,18 56:6
56:8,23,25
59:10,14,16,21
60:1,14,22
61:7,10,13
**court's** 19:2
35:20 36:8,11
**courtroom**
28:19
**courts** 50:1
**covered** 43:22
60:8,10,12
**create** 40:12
**credit** 32:23,24
39:11
**creditor** 10:9
53:5
**creditors** 7:23
9:13,20 14:16
22:7 29:10
32:8,13 39:5
39:10,12,25
53:23 54:9,21
58:22
**creighton** 8:3
14:22 43:3
**crickets** 15:19
**crimes** 44:7
**criminal** 32:4,5
32:16,20 33:16
34:25 39:19
48:1 49:20,24
50:24 51:2
52:6 54:15,22

54:25
**crisis** 29:11
33:13 37:8
**cristin** 5:5
21:24
**crowfoot** 11:2
**crystal** 14:12
**current** 57:12
**currently**
16:16

**d**

**d** 14:1 62:1
**daniel** 10:24
**date** 63:25
**david** 10:19
11:23 15:22
19:25 26:16
**davidson** 11:3
**davis** 3:12 9:3
10:1 14:10
15:12 18:9
20:2,11 28:17
30:13 55:21
**day** 3:15 20:11
27:24 28:3,12
28:13 32:11
34:7 42:13
46:2 61:18
**days** 34:10
47:1
**de** 11:4
**deal** 48:4,9,24
49:1 50:4 55:9
**dealt** 44:22
**debt** 56:19,22
**debtor** 1:10
7:18 20:3

30:13 50:4
**debtor's** 19:9
19:19,23 20:9
26:22 28:23
30:25 36:2
42:5
**debtors** 6:17
6:20 7:23 9:4
10:2 14:8,11
15:13 23:1
28:18 30:21
32:2 37:9,16
55:21 58:22
59:8 61:6
**december** 31:1
34:13 35:21
**dechert** 3:6
20:10
**decided** 47:5
**decisions** 57:18
**declaration**
6:19
**decrees** 35:4
**dedicate** 33:11
40:24
**dedicated** 59:3
**defeating** 41:9
**defendant**
30:13 38:16
**defendant's**
7:18 15:9
**defendants**
1:16 15:2
**definitely**
26:25
**delicately**
41:11

delivery 29:17
denied 46:8
depalma 9:19
  10:8
department
  37:13 49:12
  57:16,19,20,22
  57:24
derogation
  37:16
describe 37:17
  38:5
describes
  41:10
despite 34:3
detail 31:21
developed 29:2
development
  29:8
device 29:3
devices 29:17
dial 61:14
dialogue 24:13
  25:11
dictate 50:19
  54:24
different 46:18
  49:21 56:5,20
differently
  37:15 48:11
difficult 52:3
directed 48:10
disbursed
  46:25
dischargeable
  39:8

discharges
  56:18
disclosure 45:1
  45:3
discrete 56:11
discretion
  33:25 37:12,23
  49:10,22 55:1
discussed
  29:15 39:7
discussing
  21:18
discussions
  22:13 60:7
dismiss 6:25
  7:3,8,13,19,24
  8:3,9,14,19
  59:22
dismissal
  31:21
dismissed
  30:22 34:15
  36:16 42:2,19
  52:25
disposes 56:10
dispute 35:22
  46:16
distinction
  45:18
distributed
  33:1
distribution
  29:14 33:10
  44:5
district 1:2
  14:4 15:5
  40:16 45:9

50:1,11,18
  51:11,23 52:8
  52:15
dive 51:13
dizengoff 7:25
doc 3:3,5,8,11
  3:14,17,20,23
  4:1,4,7,10,13
  4:16,19,22 5:1
  5:4,7,10,13,15
  5:18,21,24 6:1
  6:4,7,10,13,16
  6:19 7:2,7,12
  7:17,22 8:2,7
  8:13,18
docket 19:21
  20:19,21 22:4
  23:6,19 28:25
doctrines
  37:17
doing 52:4
  53:14
doj 31:1,22,24
  32:10,12 34:20
  36:4 37:5
  39:10 57:13
dollar 32:25,25
dollars 32:4
  41:13 59:3
dovetails 56:1
drain 34:7
  38:20,22
dramatically
  44:10
drop 27:4
dropping 28:6

drops 27:13
dry 16:17
drysdale 5:25
  23:25 24:3,13
  24:19
due 29:16,18
  34:1,6
duty 38:10
  56:24
dylan 10:25

e

e 2:1,1 9:1,1
  10:19 14:1,1
  62:1 63:1
earlier 39:7
  59:23
early 8:4 29:7
  43:6,7
ease 20:16
easily 32:7
  61:2
echo 27:21
eck 13:4
eckstein 11:5
ecro 2:5
edan 12:4
  14:17 21:5
education
  29:25
effect 48:22
effectively 33:6
efficiency's
  17:25
efforts 29:4
  33:8 39:12
egregious 38:6
  38:7 58:12

eight  18:11,17
either  20:23
  35:5
element  56:11
eli  13:6
emily  12:5
emphasis
  48:25
emphasize
  44:20
enable  29:13
ended  31:1
  35:20 47:4
ends  45:23,24
engage  31:16
engaged  36:22
enhanced
  39:11
enjoy  27:24
enriched  53:15
enriching  37:8
enrichment
  53:25 54:4
ensure  56:24
enter  6:17,20
  16:14 28:24
  50:14 62:5
entered  34:8
  34:11 36:12
  43:6 57:7
  58:21
entire  32:7
  39:9
entirely  17:8
entities  19:13
  23:25 24:4

entitled  51:19
  53:21
entry  34:19,20
  45:6 47:1
equitable
  30:19 31:8,11
  31:12 36:18,20
  38:3,21,25
  40:6,14,19
  41:3 42:22
  48:3 50:10
  51:20 52:22
  58:13 59:6
equitably
  46:24
equivalent
  58:10
eric  13:1,13
ernst  3:18
  20:11
espinosa  35:19
  56:17
essentially
  46:17
established
  33:11
establishes
  38:3
estate  32:7
  39:25 40:2
estopped  46:1
et  1:12,15 6:23
  6:24 7:1,2,6,7
  7:11,12,16,17
  7:21,22 8:1,2,6
  8:7,12,13,17
  8:18

eunice  12:7
event  18:2 48:1
  48:5
everybody
  27:22 61:14,17
exactly  40:15
  40:25 47:17
  48:25 50:19
  57:17 61:13
examiner
  15:23 17:19,21
  18:4,20 19:14
  19:17,22,22
  20:25 21:11,18
  21:20,21,25
  22:13,15 23:5
  23:9,23 24:11
  25:11,18,24
  26:14,17,24
examiner's
  27:8
example  18:8,9
  21:15 33:13
  34:10 38:10,15
  38:20 46:6,22
  48:1
exceeded  35:14
except  17:5
exchange
  32:22
exchanges
  18:23
excuse  48:23
executed  57:13
executive
  37:14

exercise  33:24
  37:12
exist  39:18
exists  47:21
expense  32:17
  34:24
expenses  16:25
expired  35:21
explain  52:18
explained  42:5
expressly
  40:11
extent  15:24
  45:7
extraordinarily
  38:2,13
extraordinary
  30:19 48:14
extreme  36:23
extremely  38:4

f

f  2:1 12:21
  63:1
f.3d  36:11
fabricating
  38:19
fact  31:24
  35:23 36:6
  38:1 54:17
  55:6,25
factoring
  29:18
facts  37:3
factual  57:22
factually  53:14
fail  37:3

**failed** 36:17
**failing** 37:5,8
**fairly** 46:20
  53:7
**fall** 51:20,21
**fallen** 45:5
**false** 38:23
**falsified** 38:19
**families** 58:23
**far** 53:10
**favor** 40:12
**favorite** 17:13
  28:1
**feasible** 33:19
**february** 34:4
**federal** 33:6,22
  35:9
**fee** 6:11,14
  15:23,24 16:5
  16:10,15 17:3
  17:7,10,19,20
  18:4,19 19:14
  19:17,22,22
  20:4,20,25
  21:9,11,16,18
  21:20,20,25
  22:13,15 23:3
  23:5,9,23 24:8
  24:11,20,25
  25:11,24 26:3
  26:14,17,24
  27:8,22 28:1
**feel** 48:16
**fees** 17:17 21:9
  21:15 25:12
  26:9

**feld** 4:23 9:11
  14:18 21:5,23
  59:18
**felt** 28:3
**fiduciaries**
  59:2
**field** 46:2
**file** 42:18
**filed** 7:13 8:3
  18:11 19:20
  20:24 21:16
  22:4 23:6,19
  24:8,17 26:10
  26:18 28:25
  31:3 32:11
  34:2,4,5 42:8
  59:20 60:5
**filing** 21:9 23:3
**final** 30:23
  34:12,16 35:7
  35:13,23 36:5
  36:7,12 45:24
  46:4,13,14
  55:25 57:6,12
  58:16,21,23
**finality** 55:24
  56:5,7
**finally** 40:9
**find** 14:7,22
  26:15
**findings** 56:19
**fine** 19:6 22:25
  24:6 25:8 28:7
  32:5,20,21
  41:24 42:24
  52:11 61:12

**firm** 25:16
**firms** 20:16
  23:4
**first** 17:1,10,24
  25:2 30:23
  31:15 34:14
  37:5,24 40:11
  43:25 55:24
  57:20 61:2
**fit** 19:3
**flexible** 60:24
**flom** 3:24
**floor** 26:6 27:7
**focus** 31:24
  45:19
**focusing** 51:17
**fogelman** 7:4,9
  8:9 11:6 15:3,4
  41:16,19,21,22
  41:25 59:11,12
  61:7,8
**folks** 14:20
  15:18 16:11
  20:14 27:14
  54:21 60:4,5
  61:3
**follows** 55:6
**footnote** 45:1
**forbidden**
  35:12 36:13
**forced** 33:23
**forego** 33:23
  47:5
**foregoing** 63:3
**forfeited** 42:3
  42:19

**forfeiture** 32:3
  32:18,24,24
  33:5,24 34:22
  39:8,11 58:4,9
**form** 18:6
  49:21 58:23
**forth** 47:3
**forward** 43:15
**found** 53:11
  57:22
**four** 55:22,24
**frank** 14:24
  43:3
**frankel** 22:18
**franklin** 12:11
**frankly** 48:13
  50:21
**frardcel** 5:19
**fraud** 38:7
  44:8 58:10
**fraudulent**
  58:11
**frazier** 11:7
**fred** 13:9
**free** 41:2 48:16
**fruits** 31:9
**fti** 5:11 22:17
**full** 20:4 42:13
**fund** 29:13
**fundamental**
  59:5
**fundamentally**
  56:15
**funding** 6:17
  6:21 28:15,24
  29:12 36:11
  45:20,20 62:6

**funds** 35:19
40:24 53:23,23
**further** 8:8,14
18:1,7,22
20:15 22:1,10
24:14 27:3
45:14 55:17
59:8,13
**future** 25:20
51:19

**g**

**g** 14:1
**gabrielle** 10:17
**gamble** 59:2
**game** 47:9 59:4
**gange** 11:8
22:22,23 23:1
**general** 49:12
**generally** 44:9
44:13
**george** 12:10
**gerard** 13:3,14
**getting** 48:8
50:6,7,7 51:24
**giddens** 11:9
**gilbert** 5:16
22:17
**give** 17:12
21:14 30:1
44:2,21 52:5
**given** 28:4,6
**giving** 58:8
**glass** 51:13
**global** 32:12
**go** 17:10 18:5
18:12 21:14
43:15 45:13

47:11,12 51:22
51:25 55:13
57:14 60:20
**goal** 29:9
**going** 27:1 28:4
46:9,13,25
48:11 49:9
51:9,11,25
52:14
**gold** 11:10 16:3
16:3 25:5,5,9
**goldman** 11:11
25:17,18
**good** 14:2,9,17
15:3,7,11,14
15:22 16:1,3
16:15 17:16
19:24 21:4
22:22 24:2
25:17 28:10,11
28:13 30:5,12
41:22 43:2,13
55:14,20 60:14
60:19 61:17
**gorrepati**
11:12
**gotten** 54:8
**governed**
47:25
**government**
19:13 22:19
31:16 33:6,23
36:3,22,25
44:23 50:21,23
51:8,12 53:21
53:24 54:4,14
54:16 58:2,3

58:14 59:13
61:8
**government's**
31:9 36:24
39:4 40:23
42:6,7,11
49:23
**governmental**
19:11 23:25
24:4
**governments**
33:3,9,9
**grant** 4:5 20:12
29:25
**granted** 29:21
40:18 47:22
62:7
**granting** 46:16
**great** 48:24
61:13
**greater** 31:21
**greatly** 39:11
**greenberg** 9:19
10:8
**gregory** 11:20
**gross** 38:6
58:12
**group** 19:8,8
19:13 23:25
24:4 39:13
56:7
**groups** 19:15
**guess** 15:18
37:11,14 54:2
**guidance** 27:21
**guilty** 32:15
34:11 52:2,9

**guiton** 11:13
**gump** 4:23
9:11 14:18
21:5,14,23
59:18

**h**

**h** 2:2 11:5
**half** 32:3
**hand** 56:12
**handling** 15:9
15:12 25:4
30:9 49:23
**happen** 36:1
51:10,11 54:22
58:18,20 59:1
59:4
**happened**
53:15 54:23
**happens** 54:22
55:12
**happy** 16:18
17:18 20:20
22:13 23:21
24:24 26:11,19
27:11 29:24
30:5,10 43:22
**harbuck** 11:14
**harder** 58:2
**harm** 28:24
62:6
**harmed** 36:24
39:5
**harrison** 11:15
**hauer** 4:23
9:11 14:18
21:5,23 59:18

| | | | i |
|---|---|---|---|

**hayden** 10:23
**health** 29:9
**hear** 15:19,25
16:18 22:9,24
22:25 24:4,6
25:6,8 41:19
41:20,23,24
43:1,10,23
**heard** 14:11,12
15:25 19:16
20:8 22:6
23:15 24:18,21
24:23 26:6,8
28:18 29:23
30:14,15 41:20
**hearing** 3:1,1,3
3:5,8,11,14,17
3:20,23 4:1,4,7
4:10,13,16,19
4:22 5:1,4,7,10
5:13,15,18,21
5:24 6:1,4,7,10
6:10,11,13,13
6:14,16,19,23
7:1,3,6,11,16
7:21 8:1,6,12
8:17,18 14:5
17:4,14 20:18
22:12 23:18
24:24 26:11
27:1,4,9,11
28:5 29:24
34:7 42:13,17
48:23
**hearings** 14:7
15:16 16:19
23:21

**heather** 12:17
13:7
**held** 36:7 51:19
56:21
**helpful** 25:19
44:20
**herz** 11:16
**high** 38:2,4,13
51:13
**higher** 44:10
44:10 53:22
**highlight** 43:18
**hoc** 19:11
22:19,23 23:2
39:13
**hold** 27:6
49:15
**holding** 45:22
49:18
**holds** 40:5
**hon** 2:2
**honor** 14:9,14
14:17,24 15:3
15:11,22,24
16:3,5,6,8,24
17:11,12,23
19:24 21:4,14
22:2,22 23:12
24:2,7,12 25:5
25:9,13,17
26:1,16,25
27:25 28:5,11
28:16,22 29:2
29:20 30:7,12
30:18,24 33:4
36:14,16 38:4
40:4 41:22,25

41:25 42:18,21
43:2,5 44:1
46:20 47:15
51:1,16,18
52:19,22 55:15
55:17,20,25
56:6 57:17
58:17 59:5,12
59:15,17,24
60:21 61:5,9
61:12
**hopefully** 16:6
17:16 29:7
**hospital** 43:9
**houlihan** 5:22
22:18
**hours** 28:2,5
**housekeeping**
43:5
**hrt** 29:2,13
**hrt's** 29:4,19
**huebner** 11:17
14:9,10,14
16:23,24 17:11
19:18,25 21:7
26:25 27:25
28:9,11
**humbly** 47:16
**hunting** 16:25
**hurley** 11:18
**hyde** 8:25 63:3
63:8
**hypothetical**
39:17,21,21,22
40:7,7

**idea** 19:15
**identification**
20:17
**identified**
24:19
**identify** 37:20
**ifs** 40:4
**ignored** 55:7
57:21
**illegal** 58:12
**illegality** 38:9
**imagine** 52:3
**immediate**
34:9 56:10
**immediately**
56:1
**immunity**
37:17 46:7,8
49:9,10,14
57:14
**impact** 34:9
46:22 51:6,7
51:22 53:8
**impacted**
33:12 53:3
**impacts** 52:14
**impermissible**
34:15
**important**
27:17 31:22,23
32:1 45:18,19
49:14 56:8
**importantly**
32:22 58:1
**impossible**
35:3

**improper** 38:6
**improperly**
  37:8
**including**
  17:17 20:24
  22:11 24:24
  32:8 33:13
  58:6
**inconsistent**
  40:10,18
**indemnity**
  35:16
**independent**
  30:22 31:21
  36:15
**indicative**
  18:19
**indicator**
  17:16
**indiscernible**
  16:7 17:21
  25:19 35:6
  37:2 43:15
  44:19 46:4,10
  46:10 49:6
  50:9,11 52:13
  53:1,1,3,6
**individual**
  33:12
**inequitable**
  31:16 36:23
  41:5,9
**inequitably**
  37:5
**informally**
  26:2

**information**
  18:22 30:3
**initial** 29:15
  60:24
**initiative** 29:9
**injects** 30:4
**injury** 32:8
  39:3,3,14,16
**inspector**
  49:12
**instructed**
  48:24
**intend** 15:18
**intentionally**
  38:23
**intercreditor**
  41:11,14
**interest** 50:8
**interfere** 50:10
**interim** 3:5,8
  3:11,14,17,20
  3:23 4:1,4,7,10
  4:13,16,19,22
  5:1,4,7,10,13
  5:15,18,21,24
  6:1,4,7,11,14
  20:20 22:8,11
  22:14 23:3,21
  24:20,25 26:12
  27:11
**intranasal** 29:3
  29:17
**invitation**
  37:21
**involve** 44:7
  51:18

**involves** 38:8
**ira** 7:25
**irve** 11:11
  25:18
**issuance** 29:16
**issue** 54:12
**issues** 16:16
  24:8,13 26:1,2
  36:16 44:24,24
**item** 28:22
**items** 17:6

**j**

**j** 9:24 11:10
  12:15,20 13:6
**jabriska** 11:1
**jacob** 11:16
**james** 12:11
**jason** 12:16
**jaspinder**
  11:21
**javian** 11:19
**jefferies** 4:14
  21:22
**jeffrey** 12:3,15
  24:2
**jenga** 47:9
  58:17,19
**jennifer** 10:20
  12:6
**jersey** 5:5
  21:24 50:12
  51:23
**jobs** 27:16
**joinder** 7:23
  59:20,24 60:5
**joined** 28:6

**jointly** 14:6
**jones** 3:15
  20:11
**joseph** 10:6,13
  11:20 12:22
  13:2
**jr** 13:8
**judge** 2:3 14:2
  16:17 30:2
  34:7 38:20,21
  44:22 45:2
  49:5 52:8 57:3
  57:8
**judgement**
  32:19,24,25
  33:24 34:21,23
  39:11,20 57:18
  58:9
**judicata** 46:1,6
  46:10 48:21
  56:4
**julius** 10:22
**july** 34:4
**juncture** 60:15
**jurisdiction**
  35:15 46:5
**justice** 37:13
  49:12 57:16,19
  57:20,22,25
**justify** 38:18

**k**

**k** 11:7
**kailia** 13:11
**kaminetzky**
  7:14,19 8:15
  9:9

kanwal  11:21
kaplan  6:2
  16:4 25:2,6,10
karen  12:1
katherine
  12:12
kathleen  12:9
kathryn  9:8
keep  16:16,25
keeping  17:17
  58:8
kelly  11:7
kenan  12:19
kenneth  11:5
kesselman
  11:22
kevin  12:8
key  29:9
keystone  52:15
kick  16:23
kind  38:14,25
  39:1 44:3
  58:12
kinds  44:16
king  3:9 20:10
klauder  6:8
  11:23 15:22,23
  19:24,25 20:6
  22:1 23:11
  24:12 26:1,16
  26:16
kleinberg  6:2
  16:4 25:2,6,10
knew  38:18
know  14:20
  15:15 16:5,16
  18:18 25:9

36:6 48:4,10
49:11,13 52:5
52:9,17 57:21
59:2
known  43:11
knows  38:4
  41:1 56:6
kramer  5:19
  22:18,23
kurtzman  5:2
  21:23

**l**

l  19:9,20 20:9
l.p.  1:8,15 6:24
  7:2,7,12,14,17
  7:22 8:2,7,13
  8:18
l.p.'s  7:12,17
  8:13
laboring  21:3
  22:21 26:15
lane  2:2 14:2
lapsed  31:2
larry  15:4
late  56:25 57:2
law  7:8,18,23
  8:8 31:18
  35:22 37:1
  46:15 48:2
  49:5 56:23
lawrence  7:4,9
  8:10 11:6
lead  25:10
leave  17:4
  27:23 50:13,13
ledanski  8:25
  63:3,8

lee  11:24
lees  11:25
  13:12
left  20:15 32:7
  39:9,24
legal  59:6
  63:20
legally  38:9
length  37:18
  48:19
leo  11:4
letter  18:21
leung  12:1
leventhal  12:2
levin  5:19
  22:18,23
lexington  9:5
  10:3
liable  49:15,19
lien  53:4,5
liesemer  12:3
  24:2,3,7
lifesaving  29:5
light  43:16
  45:9,19 55:5,5
likelihood
  44:11
likely  51:19
  60:6
limitations
  40:20
limited  46:20
line  62:4
link  49:2
lisovicz  12:4
  14:17,18 21:4
  21:5

list  20:15 24:19
listed  20:21
  22:5 23:15
  26:14
lite  9:19 10:8
literally  38:23
litigate  35:20
litigation  19:12
  22:20 30:24,25
  41:14
little  54:3
  60:12
lives  29:11
llc  4:14,20 5:2
  6:5,8 9:19 10:8
  21:22,23
lld  21:22
llp  3:6,9,18,21
  3:24 4:5,8,23
  5:8,16,19 9:3
  9:11 10:1
  15:12 20:10
  22:17
local  33:2,9
  43:12
lokey  5:22
  22:18
long  18:25
longer  45:8
  47:12
look  48:7 56:17
looking  44:4,8
  44:15 49:13
loose  45:23,24
losing  40:6
lot  16:9 28:4
  40:4 48:19

53:24 54:1
**lots** 15:15
**loved** 43:12
**low** 29:2
**lower** 29:6
**lp** 4:2 14:5
30:14
**lynn** 11:2

**m**

**m** 21:21 22:14
**mackay** 12:5
**madden** 12:6
**made** 20:22
42:22 49:4
59:7
**madoff** 38:16
38:17,18 58:10
**magali** 11:9
**magnify** 38:15
**magnitude**
27:17
**main** 18:2
**major** 45:24
**make** 15:20
16:7,13,20
29:5 36:5
42:17,20 59:24
**makes** 41:19
54:21
**making** 56:19
**mandated**
51:25 54:7,20
**mandates**
54:13
**mandatory**
44:6 51:25
53:13 55:7

**manufacturer**
29:19
**mara** 12:2
**marc** 8:20 10:6
11:22 12:21
13:2 15:11
30:8,13 55:20
**march** 1:23
63:25
**marshall** 11:17
14:10
**massive** 32:2
**matter** 1:6
15:17 20:21
22:5 24:20
35:15 43:5
47:25 50:24
51:2,3 53:11
54:17
**matters** 43:22
49:24
**matthew** 11:10
16:3 25:5
**maura** 12:9
**mccarthy** 12:8
**mcmahon**
44:22 45:2
57:3
**mcmahon's**
49:6 57:8
**meagher** 3:24
**mean** 47:14
55:4,4 56:18
60:2
**means** 33:4
39:4

**measure** 48:15
**medical** 40:24
44:7,15 55:13
58:6
**medication**
29:5 33:14
**medicine** 44:11
44:13
**meet** 38:14
**meeting** 38:13
**meets** 38:2,5
**melissa** 13:4
**members** 23:2
**memorandum**
7:8,18,23 8:8
**mentioned**
44:1
**merits** 50:9
52:21,24
**messages** 58:11
**met** 57:23
**methadone**
44:13
**michael** 12:25
**middle** 58:19
**million** 29:12
29:15,18 33:23
38:17 51:24
58:8
**min** 12:7
**mind** 28:5
43:14
**mineola** 63:23
**minimize** 17:1
**misconduct**
36:23 58:12

**misleading**
38:23
**misrepresent...**
38:7
**missing** 46:18
**mistaken** 52:18
**mitchell** 11:18
**modest** 29:12
**modified** 22:15
23:23
**moment** 37:10
**moments** 31:25
**monaghan**
12:9
**monday** 60:23
60:25
**money** 39:24
40:25 47:11
48:10 51:3,24
52:13 53:22
55:12
**months** 17:15
28:2 34:5,6
42:9
**moral** 38:8
**morning** 14:2
14:4,9,17 15:3
15:7,11,14,22
16:3 19:24
21:4 22:22
24:2 25:17
30:12 41:22
43:2 55:20
**motion** 6:16,16
6:20 7:3,8,13
7:18,24 8:3,9
8:14,19 28:15

28:23,25 29:1
29:15,23,25
32:11 34:1,5
42:7,12,13
59:22 62:5
**motions** 6:25
8:19 61:16
**movant** 60:5
**movants** 41:20
44:17 49:4
55:19
**move** 48:16
50:13
**moving** 21:1
30:1
**multi** 23:25
24:4
**multiple** 42:12
**multistate**
19:13
**mvra** 40:11,18
40:21 57:21

**n**

**n** 9:1 14:1
19:10 62:1
63:1
**naftalis** 5:19
22:18
**naloxone** 29:3
29:8
**naltrexone**
44:14
**name** 20:15
43:2
**names** 15:19
20:14

**nassau** 38:10
**nathan** 13:10
**nearly** 34:7
42:6
**necessarily**
44:4 52:14
**necessary** 17:6
55:8
**need** 16:11,12
16:18
**needing** 16:6
**needs** 15:20
16:20 18:18
60:9
**never** 42:16
**new** 1:2 9:6,15
10:4 14:4 15:5
44:2 50:12
51:23
**newark** 9:22
10:11
**news** 30:5
**nine's** 19:14
25:1
**nj** 9:22 10:11
**noland** 41:6
**non** 39:8
**nondischarg...**
32:4,6
**note** 23:18
24:16 30:4
33:20
**noted** 55:25
**notice** 3:3 6:10
6:10,13,14 7:3
8:18

**noticed** 43:6
**november** 34:2
34:8,10
**nullify** 34:18
**number** 17:5
28:1 52:3,7
54:7,8
**numerous**
41:11
**ny** 1:21 9:6,15
10:4 63:23

**o**

**o** 2:1 14:1 63:1
**o'connor** 12:10
**oar** 21:3 22:21
26:15
**object** 31:5
34:3,3 35:9
56:22 57:1
**objected** 42:10
42:16
**objecting** 50:2
**objection** 19:7
26:3
**objections**
20:19 22:4
23:19 24:17
25:14 26:19
27:16 34:1,2,6
42:11,12,14
**obstacle** 38:1
**obtain** 40:17
**obtained** 39:19
**obviously**
16:12,18,25
17:12 18:2,5
19:2 27:17

30:1 43:18,22
59:23
**october** 32:10
**office** 15:4
**official** 7:22
9:12 14:15
19:10 21:2
22:7,12 23:2
59:18
**offsets** 32:24
**oh** 14:15
**okay** 17:23
28:9 55:23
**old** 63:21
**omnibus** 3:1
14:5 17:12,13
17:25 18:6
**once** 23:17
24:22,23 26:5
45:8 53:3 56:2
57:1
**open** 19:16
22:6 26:6 27:7
**opinion** 45:1
**opioid** 29:10
33:13,14 37:8
**opportunity**
42:10
**opposed** 49:20
50:20
**opposition**
31:7
**optimism** 30:4
**oral** 6:24 43:18
**order** 17:25
18:6 19:6
21:13 23:6

25:12 30:24
31:2,4 34:8,12
34:12,16,18,19
35:4,4,7,10,10
35:17,20,23,25
36:5,7,7,11
39:22 40:1
42:15 44:19,22
44:25 45:4,6,7
45:11,12,16,21
45:25 46:1,13
46:14,17 48:18
48:21,22,24
49:7 53:22
55:25 56:3,9,9
56:9,10,11,13
56:15,18,23
57:4,5,6,6,7,8
57:12 58:21
60:1
**ordered** 38:20
  39:22
**orders** 29:16
  35:13,14 46:2
  49:7
**ordinarily**
  48:20 53:6
**ordinary** 46:2
**originally** 30:2
**otc** 29:8
**otterbourg**
  5:14 22:17
**ought** 57:16
**outcome** 31:14
  41:4
**outcomes**
  31:17

**outset** 43:5
  44:18
**overdose** 29:5
**overreaching**
  38:8
**overridden**
  46:17
**own** 31:6 40:17
  40:22 43:15
**ozment** 12:11
  14:24,24 43:2
  43:3,11,25
  45:18 46:19
  47:15,24 48:17
  49:25 50:25
  51:16 52:21
  53:19 54:6,16
  55:3,17 61:12

**p**

**p** 9:1,1 14:1
  40:13
**p.c.** 4:17 5:14
  6:2
**page** 31:7
  33:17 62:4
**papers** 30:1
  46:16 60:10,12
  60:15
**park** 9:14
**part** 37:2,6
  45:19 47:3
**participating**
  16:8
**particular** 15:8
  15:17 23:9,22
  39:10 56:4

**particularly**
  46:2
**parties** 39:13
  43:7 50:1
  56:22
**partners** 4:2
  20:12,15
**partnership**
  5:5 21:24
**parts** 47:23,23
**party** 15:20
  29:23 34:11
  35:6,9 38:21
  50:20 56:9,12
  56:21
**pass** 43:23
**path** 49:20,21
**paul** 12:19
**pausing** 37:10
**pay** 48:3
**pc** 21:22 22:17
**people** 16:12
  17:2,5 44:5,9
**perceives** 41:4
**percent** 18:11
  18:17 58:5,9
  58:14
**perfect** 30:17
**perfectly** 19:5
  28:7
**performance**
  36:2
**permission**
  17:2
**person** 40:12
**personal** 32:8
  39:14,16

**peter** 12:23
**pharma** 1:8,15
  6:24 7:2,7,12
  7:12,14,17,17
  7:22 8:2,7,13
  8:13,18 14:5
  15:9 30:14
**phrased** 60:17
**picard** 38:15
**pick** 60:25
**pit** 4:2
**pjt** 20:12
**plainly** 35:17
**plains** 1:21
**plaintiff** 10:9
  31:14,15 41:6
**plaintiff's**
  30:18 31:6,17
  36:12 39:2,15
  40:17 42:2
  57:24
**plaintiffs** 1:13
  8:2 10:2 14:23
  14:25 31:3,19
  32:9 33:22
  34:3,17 35:2
  35:22 36:17,21
  36:24 37:3,4
  37:10,11,19,25
  38:12 39:6,23
  40:1,4,19,21
  42:8,16 43:1
  58:9,25 61:11
**plan** 33:10,11
  39:12,20 40:3
  41:12 56:18,24
  57:10 58:21,23

| | | | |
|---|---|---|---|
| **play** 59:4 | **ponzi** 38:16,17 | **present** 10:15 | 61:19 63:4 |
| **plea** 32:14 | 58:11 | **presented** | **process** 17:23 |
| 33:18,25 34:11 | **porter** 12:12 | 25:13 | 20:1,2 27:18 |
| 34:21 36:2,9 | 20:10 | **preserved** | 33:20,20 |
| 37:7,13 45:7 | **position** 50:21 | 32:12 | **product** 29:7 |
| 47:1,24 48:6,9 | 50:23 51:1 | **pretty** 47:14 | 29:19 |
| 48:12 50:2,5,5 | 54:24 60:11,11 | 48:20 | **productive** |
| 52:2,7 55:10 | **positions** 54:14 | **previous** 26:17 | 18:23 |
| 57:21 | **potentially** | **price** 29:6 | **professional** |
| **plead** 32:15 | 41:9 54:2 | **pries** 9:17 | 3:5,8,11,14,17 |
| 43:14 52:9 | **powder** 16:17 | **principle** 35:8 | 3:20,23 4:1,4,7 |
| **pleading** 41:10 | **pplp** 32:18 | **principles** | 4:10,13,16,19 |
| **pleadings** | 33:1 34:10 | 36:20,21 | 4:22 5:1,4,7,10 |
| 53:18 | **practical** 51:17 | **prior** 23:3 | 5:13,15,18,21 |
| **please** 43:23 | **practice** 43:21 | **priorities** | 5:24 6:1,4,7 |
| **pleasure** 19:2 | 46:3 | 31:13 41:3 | 18:4 |
| **pm** 61:20 | **practitioner** | **priority** 32:6 | **professionals** |
| **podium** 24:1 | 43:8 | 32:17 33:5 | 17:20 18:19 |
| 25:4 30:8 | **precedent** | 34:23 35:5 | 19:10,12,14,19 |
| 41:16 | 53:10,11 | 58:14 | 19:23 20:3,9 |
| **point** 50:11 | **preclusive** | **problem** 56:21 | 20:22,24 21:8 |
| 51:18 57:15 | 48:22 | **procedural** | 21:12 22:7,20 |
| 58:17 | **predicates** | 40:20 | 23:22 25:1 |
| **pointed** 45:2 | 57:22 | **procedure** 35:9 | **profit** 29:6 |
| 60:9 | **prefer** 60:11 | 48:1 52:6 | **profound** 34:9 |
| **points** 55:22,24 | **preference** | **procedures** | **prognosis** |
| 60:2,3 | 53:6 | 33:11 | 43:13 |
| **policy** 37:12,22 | **preis** 59:15,17 | **proceed** 49:23 | **prohibit** 48:21 |
| 57:18 | 59:17,22 60:2 | **proceeding** | **prolong** 33:19 |
| **politically** | 60:10,21 | 6:23 7:1,4,6,9 | **prominent** |
| 48:14 | **prejudice** | 7:11,13,16,21 | 46:6 |
| **polk** 3:12 9:3 | 30:22 52:25,25 | 7:24 8:1,6,12 | **prong** 39:3 |
| 10:1 14:10 | **premise** 49:18 | 8:17 14:21 | **proofs** 34:4 |
| 15:12 18:9 | 53:13 | 15:10,13 30:9 | 42:8 |
| 20:2,11 28:17 | **premised** 40:6 | 42:4,9 | **properly** 17:16 |
| 30:13 55:21 | **prepared** | **proceedings** | 27:16 |
| | 42:21 | 46:21 51:8 | |

proposed
  21:13 33:16
prosecute   37:9
prosecution
  31:9
prosecutorial
  33:25 37:12,22
  49:10,22 55:1
protective
  16:14
prove   31:15
  36:22
provide   32:16
  32:19,23 33:13
  33:15 41:12
  60:23
provided   27:22
  29:25 32:12
  36:3 39:23
  42:7,14 47:11
provides   34:20
  35:25 39:14
providing
  61:15
province   4:20
  21:22
provisions
  56:20
public   29:9
pull   47:9
pullman   6:5
  25:3,16,18
purchase
  29:16
purdue   1:8,15
  6:24 7:2,7,12
  7:12,14,17,17

7:22 8:2,7,13
  8:13,18 14:5
  15:9 28:2
  30:14 32:15
  37:6 39:20
  48:3,8 50:6
  52:9
purdue's   32:13
  33:16
purposes   27:18
  45:25 46:14
  51:25 53:24
  61:15
pursuant
  32:13
put   40:24
  43:16

        q
qualified   46:7
  46:8
quarropas
  1:20
question   46:11
  47:16 49:18
  50:3 51:17
  54:18 55:6,11
  56:1,14 57:10
  57:11,14,23
  58:1,18 59:5
  60:18
questions   16:8
  18:1,21 24:9
  24:14 26:19
  27:3 29:20
  41:15 42:23
  59:8

quite   30:4
  46:19 48:12

        r
r   2:1 9:1 11:16
  14:1 19:10
  21:21 22:14
  63:1
rachael   12:13
raise   42:3,11
raised   26:2
  42:4 44:24,24
  57:24
rare   30:19
rather   15:18
  16:13
reached   17:19
  19:1 57:25
reaches   36:16
read   43:20,20
  60:16,16
realize   16:9
really   18:12
  44:21 45:22
  56:8
reason   18:13
  34:14 53:7
  57:5
reasons   30:23
  31:21 36:15
  40:10 42:18
receive   39:23
  40:7 44:11
  53:22,23
received   21:10
  35:2 38:16
  51:3

recently   56:7
recitation
  18:18
recited   20:1
recognized
  38:9
recommended
  25:21
record   14:10
  16:7 20:19
  22:9,10,12
  23:17,20 24:23
  26:7,9,11 27:8
  27:10 28:17
  63:4
records   38:19
recover   40:2,2
  40:3
recoveries
  33:12 39:11,14
  41:5
recovery   40:7
  43:24 44:3,5,9
  44:11,16 45:8
  54:2
redirected   33:7
  58:5
reduction
  25:12,21 28:24
  62:6
reductions
  18:3,7,15
  20:23,24 21:9
  21:13 23:3,5
reed   4:8 20:13
reflect   22:9
  23:17 26:7

27:9

**reflected** 18:6
  21:13 23:6
  25:12

**reflecting**
  20:22

**reflects** 17:25
  26:9

**reflets** 18:3

**regarding** 6:24
  8:19 45:3
  48:18 49:5,9
  52:24

**registry** 15:15

**regulate** 37:9
  37:16

**reiterate** 48:19

**reiterated** 56:7

**related** 21:1
  51:6

**relates** 20:2

**relatively** 44:2

**relevant** 49:11

**relief** 29:4 35:2
  35:7 42:14
  46:16 47:22
  50:13

**relying** 54:20

**remaining** 17:6
  18:2 29:17

**remains** 38:1

**remarks** 49:6

**remedy** 30:19

**reorder** 31:13

**reply** 8:8,14
  41:17 55:19

**reports** 21:11

**request** 17:1
  27:2,3,25
  29:21 31:8
  35:3 46:16,20

**requested**
  25:22 29:4,12

**requesting**
  47:22

**requests** 18:21
  20:22

**require** 36:21
  46:17

**required** 38:25
  56:19

**requirements**
  37:4

**requires** 36:8
  48:3

**res** 46:1,6,10
  48:21 56:3

**rescue** 29:5

**research** 4:11
  20:13

**resolution** 20:4
  31:22,24 32:10
  32:12 34:20
  36:4 39:10
  45:14 57:13

**resolved** 26:2
  42:6

**respect** 24:12
  44:17,20 48:17
  49:4,6 54:10

**respectfully**
  29:21 37:23
  44:18 47:17

49:17

**response** 8:2
  29:24 54:5,6

**responses**
  20:18 22:10
  23:18

**rest** 27:24
  42:21 59:9
  61:18

**restitution**
  33:8,16,18
  37:6 39:22,23
  39:23 40:1
  44:3,6 52:1
  53:13 54:7,8
  54:20 55:8
  57:23

**result** 20:1
  41:7 46:18
  50:19 54:25

**results** 20:25
  39:5

**review** 17:12
  23:20 27:10

**reviewed** 22:11
  26:11

**revive** 29:3,14
  29:18

**right** 14:20
  15:1,7,14 16:1
  16:9,21 17:8
  19:5 20:5,7
  21:1,19 22:3
  23:8,13,17
  24:5,10,16,21
  25:15,23 26:4
  26:7,21 27:4,8

28:14 29:22,24
  30:10 41:18
  42:3,24 47:3
  47:14,17,20
  48:5,16 49:1
  49:23 52:5,20
  55:16,18 59:10
  59:14 60:22
  61:7,10,13

**rights** 40:17
  42:19 46:3
  47:5,8 52:8
  53:8

**ringer** 12:13

**risk** 41:10

**ritzen** 56:7

**road** 63:21

**robertson**
  12:14 28:16,17
  28:22 30:7
  61:5

**robin** 12:24

**rochelle** 11:13

**ronan** 6:19

**room** 1:20
  27:24

**rosen** 12:15

**round** 60:7

**rubinstein**
  12:16

**rudnick** 5:8
  22:17

**rule** 47:25 48:5
  52:5

**rules** 47:25
  52:6 56:4

ruling  27:10
  57:8 60:24
  61:15
rulings  62:3
run  56:2
running  18:24
runs  57:1

**s**

s  9:1 14:1
  19:10 22:16
  23:15,22
sackler  58:23
sake  17:25
sara  10:21
sarah  11:14
satisfied  25:21
saving  29:11
saydah  12:17
saying  46:23
  49:19 54:14
scale  29:13,14
scenario  39:24
schedule  60:23
scheduled  40:3
scheme  38:16
  38:17,18 58:11
schotz  4:17
  21:22
schwartz  12:18
schwartzberg
  12:19
scope  31:23
scott  11:3,17
screen  55:23
sean  2:2 14:2
seasoned  43:7

second  25:3
  27:6 31:6 36:6
  36:8,15 37:7
  37:11,14 39:3
  40:21 45:13
  52:4
section  27:1
  36:19 44:19
secured  53:5
  54:9,21
see  20:18 22:4
  28:10 38:13
  52:18 59:4
  61:18
seek  34:17 37:5
seeking  57:23
seem  46:15
  47:8 54:23
seemingly
  35:18
seems  19:6
  47:14 53:7
seen  17:13
sees  19:3
segue  61:2
self  41:9
sending  58:11
sense  30:1
  41:19 46:4
sensible  19:1
sensitive  25:20
sent  18:20
sentence  33:17
  37:6 52:10
sentencing
  33:20,20 36:10
  39:21

separate  33:21
  57:11
series  47:3
serious  48:20
served  45:8
set  18:15,23
  36:15 39:25
  54:14
sets  59:5
settled  37:17
settlement
  30:20 32:14
  36:8 46:22
  47:4,8,12,13
  47:18,20,21,21
  49:13 51:6,9
  51:21 52:16
  55:11 56:17
  58:20
settlements
  31:1 41:12
  47:2 58:24
several  16:4
  17:15 18:24
share  29:10
shaun  11:24
shi  8:1
shl  1:3,4 6:23
  7:1,6,11,16,21
  8:6,12,17
shmuel  13:5
shore  12:20
show  18:7
side  41:21
signature  63:7
significance
  45:17

significant
  53:8
silicon  28:4
similar  20:2
  21:7 23:1 29:6
simply  15:20
single  17:24
  37:20
sit  57:18
situate  31:22
skadden  3:24
  20:12
skapof  12:21
slate  3:24
small  17:5
  27:25
smith  4:8
  20:13
solutions  63:20
somebody
  20:14 61:1
sonya  8:25
  63:3,8
soon  17:2
sorkin  12:22
sorry  43:10
  51:10
sort  16:14
  43:19 51:12
  53:25 54:3
sounds  17:8,9
  51:10
southern  1:2
  14:3 15:5
sovereign
  49:23

spalding  3:9
  20:11
speak  15:18
  16:6,12,12,18
  59:23
speaking  43:25
  44:9
specific  19:25
specifically
  15:9 20:2
  26:20 34:20
speculate  59:1
speedy  43:24
spent  27:14
spigel  12:24
spinelli  12:25
spoliation  38:8
sprofera  12:23
stacey  8:3
  14:22 43:3
stage  46:21
stand  47:24
standard  38:2
  38:5
standing  49:7
start  14:6,7
  60:6
started  17:22
starting  19:16
  19:19
state  23:25
  24:4 33:2,9
  36:17
stated  33:17
statement  45:1
  45:3

statements
  59:25
states  1:1,19
  7:2,7 8:7 14:3
  15:6 30:21
  32:1,16,19,22
  33:15 34:22
  37:13,21,22
  39:7,9,19
  40:11,13,16
  41:17 46:22,23
  47:4,12,13
  48:7,12,25
  49:15,19 50:7
  51:22 52:4,7
  52:10 53:12
  54:24 58:7
statute  46:5
  55:14
statutory  53:5
stay  38:22
  47:21 50:14
step  32:1
steps  51:17
  55:9,10
stick  61:3
stodola  13:1,13
stop  36:14
  43:17
strauss  4:23
  9:11 14:18
  21:5,23 59:18
street  1:20
  9:21 10:10
strong  53:11
structured
  58:22

student  35:19
  56:19
stuff  18:14
subject  32:11
  35:1,15 56:1
submission
  42:22
submit  44:18
  47:17 49:5
submitted
  21:14 24:25
subordinate
  36:19 37:21
  40:23 41:7
subordinated
  35:6 46:24
  50:8
subordination
  30:20 31:8,11
  31:12,17 35:1
  36:18,21 37:1
  38:3,21 39:1
  39:15 40:6,9
  40:14,20 42:23
  48:3 50:10
  51:20 52:22,24
  58:13 59:6
subrogation
  41:3
subsidies  44:6
subsidizing
  55:13
subsidy  44:16
substantial
  47:5
sue  40:16

suggest  60:15
suit  40:22
suite  9:21
  10:10 63:22
super  32:6,17
  33:5 58:14
supplemental
  6:13
supply  37:4
support  6:20
  7:18,24 8:8,14
  29:4,8 44:16
  52:2,10 58:13
supposed  48:8
  51:8
supreme  35:12
  41:2 56:6,25
sure  15:8,17
  16:24 17:11
  20:14 21:2
  22:21 24:1
surmount
  37:25
surprise  37:19
  39:15 41:8

t

t  63:1,1
take  17:10
  19:18 45:2
  48:14 49:1,20
  50:21,23 51:1
  52:15 53:24
  54:1,15,17,17
  54:24 56:10
  58:4,18 60:15
taken  55:9,10
  58:3

talk 19:2
talked 48:18
tantamount
    38:7
targeted 55:19
taylor 11:15
telephonically
    10:15
tell 50:17,20,23
    51:1,2,7
telling 51:12
tenth 6:10,14
terms 35:3
    56:14,16
terrain 54:10
terrance 6:19
terribly 28:6
terrific 14:14
test 37:2
thank 14:12,14
    15:25 16:1,22
    20:7 21:19
    22:1,3,25 23:8
    23:11,13 24:10
    24:15,16 25:5
    25:8,9,23 26:4
    26:21 27:19
    28:8,11,16,20
    28:22 29:22
    30:5,7,15
    41:18,24,25
    42:24 43:11,25
    48:17 55:18
    59:10,12,14
    60:21 61:9,16
    61:18

theme 53:18
    54:3
theodore 13:8
therapeutics
    28:25 62:7
therapy 44:12
    44:15 58:6
thing 44:20
    47:10 49:19
    61:14
things 18:12
    32:15,23 43:18
    46:7 51:9,11
    51:14 54:10,22
think 16:14
    17:4,14,16
    18:13 41:19
    43:12,15 44:20
    45:21 47:22,24
    48:13,14,23
    49:10 51:5
    52:7,12,12
    53:1 54:16
    55:14 58:16
    60:4,6,7,14,19
thinking 35:16
thornton 4:5
    20:12
thought 19:7
    55:3 60:25
thoughtful
    18:21
three 28:2
    31:19 32:3,15
    36:25 37:2,4
    42:6 46:25
    52:7 59:25

throw 15:19
    27:7
tied 61:1
time 15:21
    16:13 17:23,24
    18:25 27:15,22
    30:8 31:2
    35:20,21 36:1
    41:17 50:3
    56:2 57:1
    60:23,24
times 17:15
tobak 8:20
    10:6 13:2
    15:11,11 30:9
    30:12,13,17
    55:20,20
today 15:21
    16:10 17:22
    18:2,25 19:8
    22:8,12 29:4
    43:21 51:18
today's 20:21
    23:21 24:24
    26:11 27:11
    61:16
together 43:16
took 21:8 23:2
top 18:15
toppling 41:10
    47:10
total 18:16
touching 52:21
toward 51:25
tower 58:18,20
track 19:3

trading 38:19
tranche 20:4
transcribed
    8:25
transcript 63:4
transpire
    52:14
travelers 35:16
treasury 40:25
treat 45:25
treated 42:8
treatment
    33:14 39:16
    40:24 42:5,10
    44:7,21 55:13
tribal 33:2,8
trouble 53:20
    57:15
true 35:25 63:4
truly 32:2
truncating
    20:14
trust 33:10
trustee 44:23
try 15:18
trying 47:9,19
    49:15 50:10
turn 16:23
    19:21 21:20
    23:14 24:11,18
    25:4,24 26:5
    26:22 27:5
    28:15 30:8,11
    33:9 36:14
    43:1 55:19
    57:3

[turning - wants]                                                      Page 24

**turning**  22:16
  39:3
**turns**  27:14
**turpitude**  38:9
**twice**  35:12
  48:3
**two**  17:15
  25:24 26:7,12
  30:22 31:20
  36:23 40:10
  44:12 54:8
  56:20 60:4

**u**

**u.s.**  2:3 15:4
  35:16,19 41:6
  41:6 44:23
  50:11 52:14
**u.s.c.**  40:13
  45:22
**ucc**  39:13
  41:10
**uday**  11:12
**ultimate**  45:14
**ultimately**
  57:13
**unappealable**
  34:12,16
**uncontested**
  20:21 22:5
  24:20
**under**  31:11,12
  33:10,10 36:20
  40:3,18 45:21
  47:11,12,13
  48:2,5,9 49:1
  50:5 52:5
  53:12 55:13

57:12 59:6
**understand**
  45:16 47:7
  58:3 60:17
**understanding**
  17:19 27:18
  53:20 57:15
**underwood**
  9:24 10:13
**undisputedly**
  35:17
**undo**  35:7
  36:12
**unfair**  36:25
**unfathomable**
  48:13
**unfortunately**
  43:8
**unique**  60:3,9
  60:12,18
**united**  1:1,19
  7:2,7 8:7 14:3
  15:5 30:21
  32:1,16,19,22
  33:15 34:22
  35:19 37:13,21
  37:22 39:7,19
  40:13,16 41:16
  46:23 47:4,12
  47:13 48:7,11
  48:25 49:15,19
  50:7 51:22
  52:3,7,10
  53:12 54:24
**unjust**  53:25
  54:4

**unlocked**  32:13
**unnecessary**
  17:1
**unopposed**
  29:1
**unraveling**
  52:16
**unsecured**  7:23
  9:12 14:16
  22:7
**unsubordinat...**
  35:1,6
**unsupportable**
  53:14
**upgrade**  27:2
**upset**  46:21
  50:4
**urge**  55:4
**use**  30:19
  40:14,19 41:2
  53:23
**used**  16:17
  28:3 31:13
**uses**  38:5
**uzzi**  13:3,14

**v**

**v**  1:14 6:24 7:2
  7:7,12,17,22
  8:2,7,13,18
  35:16,19 38:15
  41:6
**vacated**  49:8
  57:8
**val**  43:16
**valid**  31:13
  41:3

**valley**  28:4
**valrey**  8:4 43:6
**value**  32:13
  33:1
**van**  13:4
**variety**  18:21
**various**  9:20
  43:18
**vasser**  13:5
**veritext**  63:20
**victim**  41:13
  44:6 51:25
  53:13 55:8
  58:5 59:3
**victims**  33:14
  39:14 44:7
  53:12 54:7,8
  54:21 58:2
**view**  47:11
**violated**  35:18
  38:22 56:23
**violation**  56:20
**virtual**  27:24
**virtually**  17:3
  27:4
**void**  56:23
**voluntary**  21:8
  23:3
**vonnegut**  13:6

**w**

**want**  16:7
  21:21 27:6
  33:22 44:2
  47:15 50:25
  51:2,16
**wants**  15:25
  19:22

| | | |
|---|---|---|
| **wardwell**  3:12 9:3 10:1 15:12 28:17 30:13 55:21 | **withdraw** 47:18,19,20 48:6,12 52:1 | **years**  18:24 41:14 42:6,20 57:6,7 |
| **wasteful**  41:14 | **wolff**  6:2 16:4 25:3,6 | **yeary**  13:10 |
| **water**  51:13 | **word**  44:2 47:20 53:21 59:11 | **york**  1:2 9:6,15 10:4 14:4 15:5 |
| **watershed** 31:25 | **words**  31:6 38:4 40:17,22 | **young**  3:18 20:11 |
| **watters**  13:7 | **work**  51:14 | **z** |
| **way**  16:15 18:9 19:8 46:20 47:13 49:15,22 51:15,21 55:3 | **worked**  24:14 54:11 | **z**  19:13 25:2 |
| **wayside**  45:5 | **working**  17:21 | **zaharis**  13:11 |
| **we've**  17:15 48:18 | **works**  27:19 61:3,5,8 | **zoom**  15:15 61:14 |
| **week**  28:3 61:18 | **worsened** 31:16 | |
| **welcome**  30:4 | **worth**  37:10 | |
| **wells**  13:8 | **wrapped**  45:23 | |
| **went**  20:3 | **write**  18:14 21:17 | |
| **white**  1:21 | **written**  18:10 | |
| **willing**  58:25 | **wrong**  35:24 56:15 | |
| **willumson** 13:9 | **wrongful**  38:6 | |
| **windstream** 38:24 | **wrote**  21:15 | |
| **wipe**  54:2 | **x** | |
| **wise**  17:9 | **x**  1:5,11,17 19:11 22:16 23:15,22 62:1 | |
| **wish**  20:8 23:14 24:20 61:17 | **y** | |
| **wishes**  19:16 22:6 24:18,22 26:6,8 29:23 43:24 | **y**  19:12 24:19 | |
| | **yeah**  17:11 43:17 60:14 | |