**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**ORDER (I) APPROVING SALE OF DEBTORS' AVRIO ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession

(collectively, the "**Debtors**") for entry of an order (this "**Order**") pursuant to sections 105(a), 363,

and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 6004, 6006,

9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules

6004-1 and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"Local Rules"):

    (i)    authorizing and approving the sale (the "**Sale**") of the "Acquired Assets" (as defined in the Agreement), which consist of substantially all of the assets of the Debtors' consumer health business, which is currently conducted by Avrio Health L.P. (collectively, and solely to the extent expressly set forth and defined as an Acquired Asset in the Agreement, the "**Avrio Assets**") to Atlantis Consumer Healthcare Inc. ("**Purchaser**") pursuant to that certain Asset Purchase Agreement,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Bidding Procedures Order, or the Agreement, as applicable.

dated as of April 4, 2023 (attached to the Motion as **Exhibit C**, and as amended from time to time, including all schedules and exhibits thereto, the "**Agreement**"), free and clear of all liens, claims, and encumbrances, to the fullest extent permitted by law and except where the Debtors agreed to transfer, and the Purchaser has expressly agreed to permit or assume, certain encumbrances and certain liabilities of the Debtors (solely to the extent expressly set forth and defined in the Agreement, the "**Permitted Post-Closing Encumbrances**" and the "**Assumed Liabilities**");

(ii)    authorizing the assumption and assignment of the Assigned Contracts; and

(iii)    granting certain related relief;

and this Court having entered an order on April 28, 2023 [D.I. 5570] (the "**Bidding Procedures Order**") approving the Bidding Procedures in connection with the Sale of the Avrio Assets and attached as **Exhibit 1** to the Bidding Procedures Order (the "**Bidding Procedures**"), including, among other things, the proposed form of notice of the Sale Hearing; and the Debtors having determined after an extensive marketing and sale process and the Debtor having received no Qualified Bids by the Bid Deadline, that the Purchaser has submitted the highest or otherwise best bid to purchase the Avrio Assets; and the Debtors having selected the Purchaser as the Successful Bidder in accordance with the Bidding Procedures; and upon due, adequate, and sufficient notice of the Motion, the Agreement, and all other related transactions contemplated thereunder and in this Order (such transactions collectively, the "**Sale**"); and upon the Declaration of  Rafael J. Schnitzler in Support of the Motion (the "**Schnitzler Declaration**"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the Schnitzler Declaration, the Agreement, and all

relief related thereto and other responses thereto; and the Court having held a hearing to consider the relief requested in the Motion (the "**Sale Hearing**"); and there being no objections to the requested relief; and, after due deliberation, the Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested is in the best interests of the Debtors, their estates, creditors and all parties in interest,

**THE COURT HEREBY FINDS THAT:**[3]

## I.    Jurisdiction, Final Order, and Statutory Predicates.

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b).  This Court may enter a final order with respect to the Motion, the Sale, and all related relief, in each case, consistent with Article III of the United States Constitution.  Venue of these Cases and the Motion is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

## II.    Notice.

C.    As further evidenced by the affidavit of service previously filed with the Court [D.I. 5561], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and

---

[3]    These findings and determinations constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

assignment of the Assigned Contracts to be assumed and assigned to the Purchaser pursuant to this Order, the cure payments proposed in respect of each Potential Assigned Contract (each, a "**Cure Cost**"), and all deadlines related thereto, has been provided to all interested parties and entities, including the Notice Parties, in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The aforementioned notices were and are timely, proper, sufficient, appropriate, fair and equitable under the particular circumstances, and reasonably calculated to provide the Notice Parties and all other interested parties with timely and proper notice under the circumstances of these Cases.  No other or further notice with respect to such matters is, or shall be, required.

D.      A reasonable opportunity to object and be heard with respect to the Sale, the Motion, and the relief requested therein, has been afforded to all interested parties.

E.      The disclosures made by the Debtors concerning the Motion, the Agreement, the Bidding Procedures, and the Sale Hearing were good, complete and adequate.

## III.    Business Justification.

F.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for entering into the Agreement, which provides for, among other things, the sale of the Avrio Assets to the Purchaser.  The Debtors have, among other things, determined in their business judgment that, under current circumstances, the benefits of consummating the Sale on the terms and conditions embodied in the Agreement are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

## IV.    Compliance with Bidding Procedures and Bidding Procedures Order

G.      As demonstrated by the Schnitzler Declaration, the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have adequately marketed the Avrio Assets and conducted the sale

4

process in compliance with the Bidding Procedures and the Bidding Procedures Order, and the

sale process was conducted in a noncollusive, fair, and good-faith manner.  The Debtors have

afforded potential purchasers a full and fair opportunity to participate in the bidding process for

the Avrio Assets and to make higher or better offers.  In accordance with the Bidding Procedures

Order, the bid submitted by the Purchaser and memorialized by the Agreement was deemed a

Qualified Bid and the Purchaser was a Qualified Bidder eligible to participate at the Auction.  In

accordance with the Bidding Procedures and the Bidding Procedures Order, the Debtors

determined that the bid submitted by the Purchaser and memorialized by the Agreement is the

highest and otherwise best offer for the Purchased Assets received by the Debtors.

**V.      Sale in Best Interests.**

H.      Approval of the Agreement, the Sale, and all related transactions at this time, and

the actions to be taken by the Debtors and the Purchaser, are appropriate under the circumstances

of these cases and are in the best interests of the Debtors, their estates and creditors, and all other

parties in interest.  The Debtors have demonstrated good, sufficient and sound business reasons

and justifications for the Debtors' performance of their obligations under the Agreement, including

consummation of the Sale.

**VI.     Good Faith of Purchaser.**

I.      The Debtors and the Purchaser have not engaged in any conduct that would cause

or permit the Agreement or the consummation of the Sale to be avoided, or costs or damages to be

imposed, under Bankruptcy Code section 363(n).  The Purchaser has not acted in a collusive

manner with any Person, and the purchase price was not controlled by any agreement among

bidders, all of whom acted in good faith, at arm's length, and in a noncollusive manner.  The

Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser without

collusion, in good faith, and from arm's-length bargaining positions.  Among other things (i) the

Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Avrio Assets; (ii) the Purchaser complied with the provisions of the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order as modified by the Debtors in accordance with the terms of the Bidding Procedures; (iv) all payments to be made by the Purchaser, and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; and (v) no common identity of directors or controlling stockholders exists between the Purchaser, on the one hand, and the Debtors, on the other hand.  The Purchaser is purchasing the Avrio Assets in good faith and for fair and reasonable consideration, and the Purchaser is a good-faith Purchaser within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code).  The Purchaser is therefore entitled to the full rights, benefits, privileges, and protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and nonbankruptcy law.

## VII.   Highest and Best Offer

J.      The Bidding Procedures are reasonable and appropriate and represent the best available method for conducting the sale process in a manner that maximizes value for the benefit of the Debtors' estates.

K.      As demonstrated by the Schnitzler Declaration, the evidence proffered or adduced at the Sale Hearing and the arguments of counsel made on the record at the Sale Hearing, the Debtors' marketing and sales process with respect to the Avrio Assets in accordance with the Bidding Procedures (including the Debtors' stalking horse marketing process with respect to the Avrio Assets and the marketing and auction process set forth in the Bidding Procedures and the Bidding Procedures Order) afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Avrio Assets.  The Debtors conducted a

marketing and auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures and the Bidding Procedures Order.  The Auction was duly noticed and as of the Bid Deadline, no higher or otherwise better offers for the Avrio Assets have been made, and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Avrio Assets.

L.    As demonstrated by the Schnitzler Declaration, the evidence proffered or adduced at the Sale Hearing and the arguments of counsel made on the record at the Sale Hearing, the Sale constitutes the highest and best offer for the Avrio Assets, and the Debtors' determination that the Sale maximizes value for the benefit of the Debtors' estates and constitutes the highest and best offer for the Avrio Assets each constitutes a valid and sound exercise of the Debtors' business judgment and is in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order.  The Agreement provides fair and reasonable terms for the purchase of the Avrio Assets.

M.    Approval of the Motion and the Sale and the prompt consummation of the transactions contemplated thereby will maximize the value of each of the Debtors' estates and are in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

## VIII.  Corporate Authority.

N.    Each applicable Debtor (i) has full requisite corporate or other organizational power and authority to execute, deliver, and perform the Agreement or the Ancillary Documents, and to consummate the Sale contemplated thereby, and such execution, delivery, and performance have been duly and validly authorized by all necessary corporate or other organizational action of each applicable Debtor, (ii) has taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of the

Agreement and the Ancillary Documents and the consummation by the Debtors of the Sale contemplated thereby, including as required by their respective organizational documents, and, upon execution thereof, each such agreement executed by such Debtor will be duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, will constitute a valid and binding obligation of such Debtor.  No government, regulatory, or other consents or approvals, other than those expressly provided for in the Agreement, are required for the execution, delivery, and performance by the Debtors of the Agreement or for the consummation of the Sale contemplated thereby, or to take, or cause to be taken, all such other actions, as may be reasonably necessary to effectuate or evidence the Sale contemplated by the Agreement.

**IX.     No Merger; Purchaser Not an Insider; No Successor Liability.**

O.     The Purchaser is not a "successor" to, a mere continuation of, or alter ego of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Purchaser and the Debtors.  The Purchaser is not holding itself out to the public as a successor to or a continuation of the Debtors or their estates.  The Purchaser is not a successor to any of the Debtors or their estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, succession, merger, or de facto merger of Purchaser and the Debtors.  Immediately prior to the Closing Date, the Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Debtors and the Purchaser.  The transfer of the Avrio Assets to the Purchaser, and the assumption of the Assumed Liabilities by the Purchaser, except as otherwise explicitly set forth in the Agreement, does not, and will not, subject the Purchaser to any liability whatsoever, with respect to the Debtors or the operation of the Debtors' businesses prior to the Closing (including liabilities based on the Debtors' pre-closing ratings by

governmental or quasi-governmental agencies or authorities) or by reason of such transfer, including under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any foreign jurisdiction, based, in whole or in part, directly or indirectly, on any, or any theory of, successor, vicarious, antitrust, environmental, revenue, pension, ERISA, tax, labor (including any WARN Act), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or products liability or law, or other applicable law, rule, or regulation (including filing requirements under any such law, rule, or regulation), or theory of liability, whether legal, equitable, or otherwise (collectively, the "**Successor or Other Liabilities**").  Pursuant to the Agreement, the Purchaser shall have no liability for the Excluded Liabilities.

**X.    No Opioid-Related Liability.**

P.    For the avoidance of doubt, and without limiting the generality of the foregoing Section IX or any other provision of this Sale Order in any respect, the term "**Successor or Other Liabilities**" shall include any and all Liens, Claims, Encumbrances, and other Interests of any kind whatsoever arising under any theory of liability, whether legal, equitable, or otherwise, whether known or unknown, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors' Opioid-Related Activities, Opioid Products, and Pending Opioid Actions (each as defined in the *Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3726] or the *Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 3787]), including, for the avoidance of doubt, the manufacture, marketing, sale, distribution, and all other business activities related to,

interaction with regulators concerning, and involvement in the subject matter of the Opioid-Related Activities, Opioid Products, and Pending Opioid Actions (collectively, the "**Opioid-Related Liabilities**").

## XI.   **Binding and Valid Transfer.**

Q.      The transfer of the Avrio Assets to the Purchaser will be a legal, valid, and effective transfer of the Avrio Assets, and will vest the Purchaser with all right, title, and interest of the Debtors to the Avrio Assets free and clear, to the fullest extent permitted by law, of all Interests (as defined below) (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities), as set forth in the Agreement.  Immediately prior to consummating the Sale, the Avrio Assets constitute property of the Debtors' estates, good title is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code, and the Debtors are the sole and rightful owners of the Avrio Assets.  Upon and following the consummation of the Sale, the Purchaser shall be vested with good and marketable title to the Avrio Assets and shall be the sole and rightful owner of the Avrio Assets.

R.      The Agreement and the Ancillary Documents (as defined in the Agreement) are valid and binding contracts between the Debtors and the Purchaser.  The Agreement and the Ancillary Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction.  As demonstrated by the Schnitzler Declaration, the consideration provided by the Purchaser in respect of the Sale (i) is fair and reasonable, (ii) is the highest and best offer for the Avrio Assets, (iii) will provide a greater recovery for the Debtors' creditors more expeditiously than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state,

territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, and similar laws and acts).  Neither the Debtors nor the Purchaser is entering into the Sale contemplated by the Agreement fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

## XII.   Section 363(f) Is Satisfied.

S.   The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full with respect to each Interest in the Avrio Assets; therefore, the Debtors may sell the Avrio Assets free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities).

T.   The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby if (i) the sale of the Avrio Assets to the Purchaser were not free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever, or (ii) if the Purchaser would, or in the future could, be liable for any of the Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities).  The Purchaser will not consummate the transactions contemplated by the Agreement unless this Court expressly orders that none of the Purchaser, any of the Purchaser's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including, without limitation, the Avrio Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities), including rights or claims

11

based on any Successor or Other Liabilities.  The total consideration to be provided under the Agreement reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Avrio Assets free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever (including, without limitation, any potential Successor or Other Liabilities).

U.      Not transferring the Avrio Assets free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities), including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state, federal, or foreign law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Avrio Assets other than pursuant to a transfer that is free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

V.      The Debtors may sell the Avrio Assets free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests that did not timely object to the Sale or the Motion or withdrew objections to the Sale or the Motion are deemed to have consented to the Sale and the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.  All Interests (except to the extent that such Encumbrances are Permitted Post-Closing Encumbrances or Assumed Liabilities) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  All holders of Interests are adequately protected by having their Interests, if any, in each instance against the Debtors, their

estates, or any of the Avrio Assets attach to the net cash proceeds of the Sale ultimately attributable to the Avrio Assets in which such holder alleges an Interest, in the same order of priority, with the same validity, force, and effect that such Interest had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess thereto.

## XIII.   Cure Costs and Adequate Assurance of Future Performance.

W.      The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.   The assumption and assignment of the Assigned Contracts (i) is necessary to sell the Avrio Assets to the Purchaser, (ii) allows the Debtors to maximize the value of the Avrio Assets, including the Assigned Contracts, (iii) limits the losses suffered by the counterparties to the Assigned Contracts (the "**Counterparties**"), and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Contracts.   For these reasons, the Debtors have exercised sound business judgment in assuming and assigning the Assigned Contracts and such assumption and/or assignment is in the best interests of the Debtors' estates.

X.      Pursuant to section 365(f) of the Bankruptcy Code, each Assigned Contract to be assumed and assigned or assigned, as applicable, under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in such contract prohibiting its assignment or transfer.   No section of any of the Assigned Contracts that would prohibit, restrict, or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Assigned Contracts in connection with the Sale shall have any force or effect.

Y.      Subject to the terms of the Agreement, the Debtors or the Purchaser, as the case may be, have cured or have demonstrated the ability to cure any default under any Assigned Contract with respect to any act or omission that occurred prior to the date of assignment of such Assigned Contract (such date, as applicable to each Assigned Contract, the "**Closing Date**").  The Purchaser's promises to pay the Cure Costs upon the applicable Closing Date and perform the obligations under the Assigned Contracts thereafter shall constitute adequate assurance of their future performance of and under the Assigned Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  Pursuant to the Bidding Procedures Order, all Counterparties that failed to file with the Court and serve on the Assumption and Assignment Objection Notice Parties a timely Assumption and Assignment Objection were forever barred from asserting any such objection with regard to the assumption or assignment of its Assigned Contract or Assigned Lease.  The Court finds that with respect to all such Assigned Contracts, the payment of Cure Costs is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the applicable Debtor to the Purchaser of each of the Assigned Contracts.  To the extent any Assigned Contract is not an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to the Avrio Assets.

**XIV.   Not a Sub Rosa Plan.**

Z.      The Sale does not constitute a sub rosa chapter 11 plan for which approval has been sought without the protection that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of any Debtor's creditors nor impermissibly dictates a liquidating plan for any Debtor.

14

**XV.    Necessity of Order.**

AA.    The Purchaser would not have entered into the Agreement and would not consummate the Sale without all of the relief provided for in this Order.  The consummation of the Sale pursuant to this Order and the Agreement is necessary for the Debtors to maximize the value of their estates and make cash distributions to creditors as swiftly as possible for the benefit of the Debtors, their estates and creditors, and all other parties in interest.

**XVI.    Compelling Circumstances for an Immediate Sale.**

BB.    The Debtors' decision to enter into the Agreement and to consummate the Sale represents an exercise of sound business judgment.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the Agreement and (ii) compelling circumstances for the immediate approval and consummation of the Sale contemplated by the Agreement and the Ancillary Documents outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that the prompt consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and to expedite cash distributions to creditors.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transaction contemplated by this Order.

**XVII.    Final Order.**

CC.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

**THE COURT HEREBY ORDERS THAT:**

I.    **General Provisions.**

1.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

2.    The Motion and the relief requested therein is granted and approved, and the transactions contemplated in the Motion, the Agreement and the Ancillary Documents are approved, in each case as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Order.

3.    All objections to, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the Agreement, each Ancillary Document, the Sale, the entry of this Order, or the relief granted herein, including any objections to Cure Costs or the assumption and/or assignment of any of the Assigned Contracts, that have not been withdrawn, waived, or settled, or that have not otherwise been resolved pursuant to the terms hereof, as announced to the Court at the Sale Hearing, or by stipulation filed with the Court, are hereby denied and overruled on the merits with prejudice.  Those parties who did not timely object to the Motion or the entry of this Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

4.    The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

II.    **Approval of the Agreement.**

5.    The Agreement and the Ancillary Documents, including, in each case, any amendments, supplements, and modifications thereto, and all of the terms and conditions thereof, are hereby approved.

6.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement and the Ancillary Documents, (b) close the Sale as contemplated in the Agreement and this Order, and (c) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Agreement or the Ancillary Documents, including the assumption and assignment to the Purchaser of the Assigned Contracts, in each case without further notice to or order of this Court and including any actions that otherwise would require further approval by the Counterparties, shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, the Ancillary Documents and the Sale.  The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing, any amounts that become payable by the Debtors pursuant to the Agreement or any Ancillary Document, together with other fees and expenses approved by the Court.  Such amounts shall (i) constitute allowed administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code (and in the case of the payment of the Bid Protections to the Stalking Horse Bidder, if applicable, shall constitute superpriority administrative expenses of the Debtors' estates with priority over any and all administrative expenses of any kind, including those specified under sections 503(b)(1) and 507(a)(2) of the

Bankruptcy Code); (ii) be treated with such priority if the Cases convert to cases under chapter 7 of the Bankruptcy Code; and (iii) not be discharged, modified or otherwise affected by any reorganization or liquidation plan for any of the Debtors, except by written agreement with the Purchaser (such agreement to be provided in the Purchaser's sole discretion).

7.      The Agreement, the Ancillary Documents, and this Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of Claims (whether known or unknown) against the Debtors, any holders of Liens (as defined below) or other Interests against, in, or on all or any portion of the Avrio Assets, all counterparties to any executory contract or unexpired lease of the Debtors (including all Counterparties), all agencies (including those that assess liability on entities based on ratings), the Purchaser, and all successors and assigns of each of the foregoing, including, without limitation, any trustee subsequently appointed in these Cases or upon a conversion to chapter 7 under the Bankruptcy Code, and any Person seeking to assert rights on behalf of any of the foregoing or that belong to the Debtors' estates.

**III.    Transfer of the Avrio Assets.**

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors shall transfer the Avrio Assets, including but not limited to, the Assigned Contracts, to the Purchaser in accordance with the terms of the Agreement; such transfer shall constitute a legal, valid, binding, and effective transfer of such Avrio Assets; and the Purchaser shall take title to and possession of such Avrio Assets free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities).  Any and all valid and perfected Interests in the Avrio Assets shall attach solely to the net proceeds of the Sale with the same validity, force, and effect, if any, and in the same order of priority, that they have now as

against the Avrio Assets, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

9.      The transfer of the Avrio Assets to the Purchaser in accordance with the terms of the Agreement will be a legal, valid, enforceable, and effective sale and transfer of the Avrio Assets and the Assumed Liabilities and (i) will vest the Purchaser with all legal, equitable, and beneficial right, title, and interest of the Debtors to the Avrio Assets free and clear of all Interests (other than the Permitted Post-Closing Encumbrances or the Assumed Liabilities) of any kind or nature whatsoever, including without limitation, rights or claims based on any Successor or Other Liabilities, and (ii) will render the Purchaser fully liable for any and all Assumed Liabilities, and assumption of any Assumed Liabilities by the Purchaser shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and shall divest the Debtors of all liability with respect to any Assumed Liabilities.

10.     The transfer of each of the Avrio Assets to the Purchaser will be a legal, valid, and effective transfer of the Avrio Assets, which transfer vests or will vest the Purchaser with all right, title, and interest to the Avrio Assets free and clear of (i) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and Encumbrances (as defined in the Agreement) relating to, accruing, or arising any time prior to the Closing Date (collectively, the "**Liens**"), and (ii) all debts (as that term is defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests or similar interests, conditional sale

or other title retention agreements and other similar impositions, restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, credits, allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, easements, rights of way, encroachments, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims (as defined below) and liens (A) that purport to give to any party a right or option to effect a setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the Avrio Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) (collectively, as defined in this clause (ii), the "**Claims**," and together with the Liens and any other interests of any kind or nature whatsoever, the "**Interests**"), relating to, accruing, or arising any time prior to entry of this Order, with the exception of the Permitted Post-Closing Encumbrances and the Assumed Liabilities.

11. Except as expressly assumed by the Purchaser under the Agreement, the transfer of the Avrio Assets to the Purchaser and the assignment to the Purchaser of the Assigned Contracts will not subject the Purchaser to any liability whatsoever which may become due or owing under

the Assigned Contracts prior to the Closing Date, or by reason of such transfer under the laws of

the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign

jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity,

including any Successor or Other Liabilities.

12.     The Agreement and the Ancillary Documents are valid and binding contracts

between the Debtors and the Purchaser and shall be enforceable pursuant to their terms.  The

Agreement, the Ancillary Documents, the Sale, and the consummation thereof shall be specifically

enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7

or chapter 11 trustee appointed in these Cases, or any converted or successor cases, and shall not

be subject to rejection or avoidance by the foregoing parties or any other Person.  The Agreement

and the Ancillary Documents were not entered into for the purpose of hindering, delaying, or

defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state,

territory, possession, or the District of Columbia, or foreign jurisdiction.  As demonstrated by the

Schnitzler Declaration, the consideration provided by the Purchaser for the Avrio Assets pursuant

to the Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Avrio Assets,

(iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other

practical available alternative, and (iv) constitutes reasonably equivalent value and fair

consideration under the Bankruptcy Code and under the laws of the United States, any state,

territory, possession, or the District of Columbia, and any foreign jurisdiction (including the

Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform

Fraudulent Transfer Act, and similar laws and acts).  Neither the Debtors nor the Purchaser is

entering into the transactions contemplated by the Agreement with any fraudulent or otherwise

improper purpose, including for the purpose of statutory and common-law fraudulent conveyance
and fraudulent transfer claims.

13.    Each and every federal, state, local, and other governmental agency, governmental
department, filing agent, filing officer, title agent, recording agency, secretary of state, federal,
state, and local official, and any other persons and entity who may be required by operation of law,
the duties of their office or contract, to accept, file, register, or otherwise record or release any
documents or instruments or who may be required to report or insure any title in or to the Avrio
Assets, is hereby directed to accept any and all documents and instruments necessary and
appropriate to consummate the Sale contemplated by the Agreement.  Neither the Debtors nor the
Purchaser shall be required to execute or file releases, termination statements, assignments,
consents, or other instruments or documents in order to effectuate, consummate, and implement
the provisions of this Order.  The Purchaser may, but shall not be required to, file a certified copy
of this Order in any filing or recording office in any federal, state, county, or other territory or
jurisdiction in which any of the Debtors is incorporated or has real or personal property, or with
any other appropriate clerk or recorded with any other appropriate recorder, and such filing or
recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the
Interests as set forth in this Order as of the Closing Date.

14.    On the Closing Date, each of the Debtors' creditors is authorized and directed to
execute such documents and take all other actions as may be reasonably necessary to release its
Liens, if any, in the Avrio Assets, as such Liens may otherwise exist.  If any Person that has filed
a financing statement, mortgage, mechanic's lien, *lis penden*s, or other statement, document, or
agreement evidencing an Interest in any portion of the Avrio Assets (other than statements or
documents with respect to Permitted Post-Closing Encumbrances or Assumed Liabilities) shall not

have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or other similar documents necessary for the purpose of documenting the release of all Interests that such Person has in the Avrio Assets, then (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Avrio Assets, (ii) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature in the Avrio Assets, and (iii) the Purchaser may seek in this Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has in the Avrio Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

15.     The Debtors and the Purchaser shall have no obligation to proceed with the Closing until all conditions precedent to its obligations to proceed have been met, satisfied or waived in accordance with the terms of the Agreement.

16.     Unless the Purchaser otherwise consents, all Persons that are in or come into possession of any portion of the Avrio Assets, at any time prior to the Closing Date, are hereby directed to surrender possession of such Avrio Assets to the Purchaser on the Closing Date, or at such time thereafter as the Purchaser may request.  Subject to the terms of this Order, all Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or

interfere with the ability of the Debtors to sell and transfer the Avrio Assets to the Purchaser in accordance with the terms of the Agreement and this Order.

17.    This Order is and shall be binding upon and govern the acts of all Persons (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons or entities) who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the transactions contemplated by the Agreement and this Order.

18.    To the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Avrio Assets, and all such licenses, permits, registrations, and governmental authorizations or approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Avrio Assets on account of the filing or pendency of these Cases or the consummation of the transactions contemplated by the Agreement, including the Sale and the assumption and assignment of the Assigned Contracts. To the extent any license or permit necessary for the operation of the business of the Debtors is determined not to be an executory contract assumable

and assignable under section 365 of the Bankruptcy Code or otherwise transferable to the Purchaser, the Purchaser may apply for and obtain any necessary license or permit promptly and the Debtors are hereby authorized to cooperate with the Purchaser in connection with any such application as the Purchaser deems reasonably necessary or desirable, pursuant to the provisions of the Agreement.

19. Notwithstanding anything to the contrary herein, as of or following the Closing Date, as applicable, the Purchaser shall assume and pay, discharge, perform or otherwise satisfy the Assumed Liabilities, subject to the terms of the Agreement.

**IV. Assumption and Assignment of Assigned Contracts.**

20. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the applicable Debtors' assumption and assignment, to the Purchaser, and the Purchaser's acceptance of, the Assigned Contracts, on the terms set forth in the Agreement, is hereby approved, and the requirements of section 365(b)(1) and 365(f)(2) with respect thereto are hereby found and deemed to be satisfied.

21. The Debtors are hereby authorized and, unless the Debtors and the Purchaser otherwise agree, directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing Date, the Assigned Contracts free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities) and (b) execute and deliver to the Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

22. With respect to the Assigned Contracts, and with respect to the Sale of the Avrio Assets to the Purchaser: (a) the Debtors may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Assigned Contract in

accordance with Section 1.5 of the Agreement and sections 363 and 365 of the Bankruptcy Code, and, to the extent provided in section 365 of the Bankruptcy Code, such assignment may occur notwithstanding and without giving effect to any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, which provisions constitute unenforceable anti-assignment or ipso facto provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment, as applicable, to the Purchaser of each Assigned Contracts have been satisfied; and (d) effective upon the Closing Date, the Assigned Contracts shall be transferred and assigned to, and from and following the Closing Date remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any Assigned Contract that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Purchaser, except as provided in the Agreement.  To the extent any provision in any Assigned Contract assumed and assigned pursuant to this Order (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment or assignment (including, without limitation, any "change of control" provision), or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (A) the commencement of these Cases, (B) the insolvency or financial condition of any of the Debtors at any time before the closing of these Cases, (C) the Debtors' assumption and/or assignment of such Assigned Contract, (D) a change of control or similar occurrence, or (E) the consummation of the Sale, then such provision shall be

deemed modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption and assignment or assignment, to modify, terminate, or declare a breach or default under such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto. With respect to the Sale of the Avrio Assets to the Purchaser, all such provisions constitute unenforceable anti-assignment or ipso facto provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

23.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing Date, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts shall be cured by the Debtors or the Purchaser, as applicable, to the extent set forth in the Agreement and this Order.

24.     All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assigned Contracts have been satisfied. Each of the Assigned Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms as of the Closing Date, subject to any amendments or modifications agreed to between a Counterparty and the Purchaser. Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contract, and each Assigned Contract shall be fully enforceable by the Purchaser in accordance with its respective terms and conditions, except as limited or modified by this Order. To the extent provided in the Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

25.     Upon payment of the Cure Costs pursuant to the terms hereof and the Agreement, and the Debtors' assignment of the Assigned Contracts to the Purchaser under the provisions of this Order, no default or other obligations arising prior to the Closing Date shall exist under any Assigned Contract, and each Counterparty is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Purchaser under such Assigned Contract based on acts or occurrences arising prior to or existing as of the Closing Date, (b) raising or asserting against the Debtors or the Purchaser, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, or (c) taking any other action against the Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract.  Each Counterparty hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Purchaser, or the property of any of them, any default or Claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, and (ii) imposing or charging against Purchaser or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Purchaser of the Assigned Contracts.

26.     Subject to the terms and conditions of the Agreement, and upon the Closing Date, the Debtors shall have: (i) to the extent necessary, cured or provided adequate assurance of cure of, any default existing prior to the date hereof under the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under the Assigned Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(B) of the Bankruptcy Code.

The Debtors' and Purchaser's obligations to pay the Cure Costs under the Agreement and the Purchaser's agreement to perform the obligations under the Assigned Contracts in accordance with the terms of the Agreement shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Counterparties.

27.     To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of an Assigned Contract is deemed to have consented to such assumption and assignment or assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Assigned Contract in accordance with the Bidding Procedures Order, and the Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Any counterparty to a Potential Assigned Contract that may be assumed and assigned to the Purchaser who has not timely filed and served an objection shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Potential Assigned Contract, and such Potential Assigned Contract, if designated as an Assigned Contract in accordance with the terms of the Agreement, shall be deemed assumed by the Debtors and assigned to the Purchaser on the Closing Date pursuant to this Order.

28.     To the extent a Counterparty failed to timely object to the Cure Costs for any Potential Assigned Contract in accordance with the Bidding Procedures, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

29.     The requirements of Bankruptcy Rule 6006(f)(6) are hereby waived, for cause shown, with respect to the Motion and the relief requested therein.

30.     Upon and as of the Closing Date, the Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

31.     The Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Avrio Assets.

32.     From the date of the entry of the Order, the Debtors may, in their sole discretion, settle objections to assumption and assignment of any Potential Assigned Contract, including to proposed Cure Costs, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Cost); *provided* that notice to and consent of the Purchaser shall be required to the extent the Purchaser is liable for such Cure Cost pursuant to the Agreement as modified by this Order.  Unless the Court orders otherwise, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assigned Contract without the necessity of obtaining any further order of the Court.

33.     Notwithstanding anything to the contrary herein, no executory contract or unexpired lease as to which a Counterparty timely files and serves an objection shall be considered an Assigned Contract under this Order unless and until any timely objection to the assumption and

assignment of such executory contract or unexpired lease has been resolved or overruled in accordance with the procedures set forth in the Bidding Procedures Order.

34.    Nothing in this Order, the Motion, or any other notice or any other document is or shall be deemed an admission by the Debtors or the Purchaser that any contract is an executory contract or must be assumed and assigned pursuant to the Agreement or in order to consummate the Sale.

**V.    No Successor Liability; Prohibition of Actions Against the Purchaser.**

35.    The Purchaser is not a "successor" to, continuation of, or alter ego of, any of the Debtors or their estates by reason of any theory of law or equity.  Except with respect to the Permitted Post-Closing Encumbrances and Assumed Liabilities, the Purchaser shall not have, assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtors or their estates, or any of the Debtors' predecessors or Affiliates with respect to the Avrio Assets or otherwise.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Agreement, the Purchaser shall not be liable for any Interests against, or with respect to, the Debtors, their estates, or any of the Debtors' predecessors, or Affiliates, including but not limited to, any Successor or Other Liabilities, including, for the avoidance of doubt, and without limiting the generality of the foregoing, any Opioid-Related Liabilities.  Neither the purchase of the Avrio Assets by the Purchaser nor the fact that the Purchaser is using any of the Avrio Assets previously operated by the Debtors will cause the Purchaser to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Debtors or the Debtors' businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative, or transferee

31

liability, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule, regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, liabilities on account of warranties, intercompany loans, and receivables among the Debtors, and any taxes, arising, accruing, or payable under, out of, in connection with, or in any way relating to the cancellation of debt of the Debtors or their Affiliates, or in any way relating to the operation of any of the Avrio Assets or ratings experience of the Debtors prior to the Closing Date, in each case other than the Permitted Post-Closing Encumbrances and Assumed Liabilities.

36.    Except with respect to Permitted Post-Closing Encumbrances, Assumed Liabilities and to the extent otherwise specifically agreed in the Agreement, the Purchaser shall not have any liability, responsibility, or obligation for any Interests of the Debtors or their estates, including any claims, liabilities, or other obligations related to the Avrio Assets, including, for the avoidance of doubt, and without limiting the generality of the foregoing, any Successor or Other Liabilities and any Opioid-Related Liabilities, which may become due or owing (a) prior to the Closing Date or (b) from and after the Closing Date but which arise out of or relate to any act, omission, circumstance, breach, default, or other event occurring prior to the Closing Date.

37.    Except with respect to Permitted Post-Closing Encumbrances, Assumed Liabilities, or as otherwise specifically set forth in the Agreement, all Persons (including but not limited to,

all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders,

trade creditors, litigation claimants, contract counterparties, customers, landlords, licensors,

employees), and other holders of Interests against or in any of the Debtors or any portion of the

Avrio Assets (whether legal or equitable, secured or unsecured, matured or unmatured, known or

unknown, contingent or noncontingent, liquidated or unliquidated, senior or subordinate, asserted

or unasserted, whether arising prior to or subsequent to the Petition Date, whether imposed by

agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with,

or in any way relating to, the Debtors, the Avrio Assets, the operation of the Debtors' business

prior to the Closing, or the transfer of the Avrio Assets to the Purchaser (including without

limitation any Successor or Other Liabilities (including any Opioid-Related Liabilities) or rights

or claims based thereon) shall be, and hereby are, forever barred, estopped, and permanently

enjoined from asserting, prosecuting, or otherwise pursuing against the Purchaser, any of the

Purchaser's Affiliates or Subsidiaries, or any of their respective officers, directors, partners,

principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor),

professionals, or representatives, successors, or assigns, or their respective assets or properties,

including, without limitation, the Avrio Assets, the Interests of any kind or nature whatsoever such

Person had, has, or may have against or in the Debtors, their estates, officers, directors,

shareholders, or the Avrio Assets, including, without limitation, the following actions: (a)

commencing or continuing in any manner any action or other proceeding, the employment of

process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other

proceeding) against the Purchaser, the Purchaser's Affiliates or Subsidiaries, or any of their

respective officers, directors, partners, principals, direct and indirect shareholders (including, for

the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or

their respective assets or properties, including the Avrio Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, any of the Purchaser's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Avrio Assets; (c) creating, perfecting, or enforcing any Interest against the Purchaser, any of the Purchaser's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Avrio Assets; (d) asserting any setoff, or right of subrogation, of any kind against any obligation due the Purchaser, any of its Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Avrio Assets; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) to the extent prohibited by Section 525 of the Bankruptcy Code, revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Avrio Assets or conduct any of the businesses operated with the Avrio Assets.

38.    Except as provided in the Agreement and without limiting other applicable provisions of this Order, the Purchaser is not, by virtue of the consummation of the Sale, assuming, nor shall it be liable or responsible for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or otherwise)

in any way whatsoever relating to or arising from the Debtors, the Avrio Assets, or the Debtors'

operation of their businesses or use of the Avrio Assets on or prior to the Closing Date or any such

liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or

prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the

Closing Date (in each case, including, without limitation, Successor or Other Liabilities (including

any Opioid-Related Liabilities) and any liabilities that result from, relate to, or arise out of tort or

product liability claims), or any liabilities calculable by reference to the Debtors or their assets or

operations (including, without limitation, by reference to the Debtors' experience or similar

ratings), or relating to continuing conditions existing on or prior to the Closing Date, including

with respect to any of the Debtors' predecessors or Affiliates, which liabilities, debts,

commitments, and obligations are hereby extinguished insofar as they may give rise to Successor

or Other Liability.

**VI.    Other Provisions.**

39.    The consideration provided by the Purchaser to the Debtors pursuant to the

Agreement for the Avrio Assets is fair and reasonable and shall be deemed for all purposes to

constitute reasonably equivalent value, fair value, and fair consideration, including under the

Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Voidable Transactions Act,

Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory,

possession, the District of Columbia, or any foreign jurisdiction.

40.    The transactions contemplated by the Agreement and this Order are undertaken by

the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the

Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the Sale shall not alter, affect, limit, or otherwise impair the

validity of the Sale (including the assumption, assignment, and/or transfer of the Assigned

Contracts), unless such authorization and consummation of the Sale are duly stayed pending such appeal.  The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.  As a good-faith purchaser of the Avrio Assets, the Purchaser has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Purchaser, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

41.    Notwithstanding anything to the contrary herein, the Agreement or the Motion, the Sale shall not be exempt from taxes under section 1146(a) under the Bankruptcy Code.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated under the Agreement.

42.    Notwithstanding anything to the contrary in the Motion, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, the Agreement, any Potential Assigned Contracts Schedule, Potential Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Final Assigned Contracts Schedule and/or any other list of Assigned Contracts and/or Cure Costs, this Order, or any documents relating to any of the foregoing, (a) nothing shall permit or otherwise effectuate a sale, an assignment or any other transfer at this time of (i) any insurance policies that have been issued by ACE American Insurance Company, ACE Property and Casualty Insurance Company, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Executive Risk Indemnity Inc., and/or any of their U.S.-based affiliates, and/or any predecessors and successors of any of the foregoing (collectively, and solely in their capacities as insurers, the "**Chubb Companies**") to or that provide coverage to any

of the Debtors (or their predecessors) at any time and all agreements, documents or instruments relating thereto (collectively, the "**Chubb Insurance Contracts**"), and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts; (b) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance Contracts; and (c) for the avoidance of doubt, the Purchaser is not, and shall not be deemed to be, an insured under any of the Chubb Insurance Contracts; provided, however, that, to the extent any claim with respect to the Avrio Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "**Proceed Turnover**"), provided, further, however, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

43.      Notwithstanding anything to the contrary in the Motion, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Procedures, the Agreement, any Potential Assigned Contracts Schedule, Potential Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Final Assigned Contracts Schedule and/or any other list of Assigned Contracts and/or Cure Costs, this Order, or any documents relating to any of the foregoing (the "**Debtor Documents**"), the rights of  Westchester Fire Insurance Company, and/or any of its U.S.-based affiliated sureties and/or any predecessors and successors of any of the foregoing (individually and collectively, the "**Surety**") against the Debtors in connection with: (i) any surety bonds or related instruments previously or in the future issued and/or executed by the Surety on behalf of any of the Debtors; (ii) any indemnity or indemnity-related agreement, and (iii) any related documents, ((i), (ii), and (iii), collectively, are hereafter referred to as the "**Surety Documents**") are neither affected nor impaired.

44.     Nothing in the Debtor Documents shall constitute, be construed as, or otherwise affect a sale, an assignment or any other transfer of the Surety Documents or use of the Surety Documents for the direct or indirect benefit of the buyer without the express written consent of the Surety.

45.     Notwithstanding any other provision of this Order or the Agreement, no agreement between the Debtors on the one hand, and Oracle America, Inc. ("**Oracle**") on the other hand (the "**Oracle Agreements**"), will be assumed, assigned, or transferred, and no shared or concurrent use of Oracle's products and services by the Purchaser or its affiliates or designees on account of the Oracle Agreements will be authorized except as expressly permitted pursuant to the applicable agreement(s), absent further Court order or Oracle's prior written consent.

46.     For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6004(d) are hereby expressly waived and shall not apply.  Accordingly, the Debtors and Purchaser are authorized and empowered to close the Sale immediately upon entry of this Order.

47.     The failure to include or specifically reference any particular provision of the Agreement or any Ancillary Document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement and the Ancillary Documents be authorized and approved in their entirety.

48.     To the extent that this Order is inconsistent with the Motion, the terms of this Order shall control and govern.  To the extent that there are any inconsistencies between the terms of this Order, on the one hand, and the Agreement or any Ancillary Document, on the other hand, the terms of this Order shall control and govern.  To the extent that this Order is inconsistent with any

prior order or pleading with respect to the Motion in these Cases, the terms of this Order shall govern.  To the extent that any plan of reorganization or liquidation, or any order of any type or kind entered in these Cases or any subsequent chapter 7 case into which these Cases may be converted, conflicts with or derogates from the terms of the applicable Agreement or Ancillary Document or this Order, the terms of the Agreement or any Ancillary Document and this Order shall control and govern to the extent of any such conflict or derogation.  Unless otherwise provided herein, to the extent this Sale Order is inconsistent with the Bidding Procedures Order or any other prior order or pleading in these Cases, or the terms of the Agreement, this Sale Order shall govern.

49.    The Agreement may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of the Court, so long as any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and does not otherwise conflict with this Order.

50.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Agreement and allow the Purchaser to take any and all actions permitted under the Agreement and the Ancillary Documents.

51.    From time to time, as and when requested by the other, the Debtors and the Purchaser, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in

the Purchaser its right, title and interest in and to the Avrio Assets and the Assigned Contracts, subject to the provisions of the applicable Agreement.

52.    The Debtors are hereby authorized and empowered, upon and in connection with the Closing, to change (i) the partnership name of Avrio Health L.P. to a new partnership name to be determined, and (ii) the corresponding reference to such name in the footnote to the caption of these Cases.  The Debtors shall file a notice as soon as reasonably practicable after Closing setting forth such changes, and the change to the case caption footnote shall be deemed effective as of the Closing.

53.    The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Agreement, the Ancillary Documents, and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Avrio Assets to the Purchaser, (b) interpret, implement, and enforce the provisions of this Order, including but not limited to the injunctions and limitations of liability set forth in this Order, (c) decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Avrio Assets and any Assigned Contracts or Assigned Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Interests (other than the Permitted Post-Closing Encumbrances and the Assumed Liabilities), and (d) enter any orders under sections 105, 363, and 365 of the Bankruptcy Code with respect to the Avrio Assets and the Assigned Contracts.  Such

jurisdiction shall, for the avoidance of doubt, continue notwithstanding that the sale of the Avrio

Assets may be consummated after the confirmation date of any plan of reorganization of any of

the Debtors.


Dated: May 30, 2023

*/s/ Sean H. Lane*
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE