## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-23649** |
| Debtors.[1] | **(Jointly Administered)** |

**COVERSHEET TO SIXTH INTERIM FEE APPLICATION OF GRANT THORNTON LLP FOR ALLOWANCE OF: (I) COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR RETENTION AS CONSULTANTS TO DEBTORS FOR SERVICES RELATED TO THE PLAN FOR THE PERIOD JANUARY 1, 2023 TO APRIL 30, 2023; AND (II) PAYMENTS FOR SERVICES PERFORMED IN THE <u>ORDINARY COURSE OF DEBTORS' BUSINESS THROUGH APRIL 30, 2023</u>**

In accordance with Rule 2016-1 of the Local Rules of Bankruptcy Procedure, incorporating the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases* [General Order M-447], among other guidelines (the "**Local Guidelines**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* [ECF No. 529] (the "**Interim Compensation Order**"), Grant Thornton LLP ("**Grant Thornton**"), as tax, valuation and business advisory consultants for Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submits this summary (this "**Summary**") of: (i) fees and expenses sought as actual and necessary in the fee application to which this Summary is attached (the "**Application**") for certain tax, valuation and business advisory services that Grant Thornton provided to the Debtors relating

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

specifically to the Debtors' plan of reorganization and anticipated implementation thereof (as described in further detail in the Application, the "**Plan Services**") for the period of January 1, 2023 through April 30, 2023 (the "**Fee Period**"); and (ii) payments made to Grant Thornton on account of other tax related services provided to the Debtors by Grant Thornton in the ordinary course of the Debtors' business (as described in further detail in the Application, the "**OCB Tax Services**") that accrued during the Fee Period.

### *General Information*

| | |
|---|---|
| **Name of Applicant:** | Grant Thornton LLP |
| **Authorized to Provide Professional Services to:** | Debtors |
| **Dates of Orders Approving Retention for Plan Services:** | **April 28, 2021** (effective January 20, 2021) for tax consulting services [Docket No. 2760]; **September 28, 2021** for employee tax analysis and valuation services (effective September 1, 2021) [Docket No. 3831]; and **October 20, 2022** for business advisory services (effective September 27, 2022) [Docket No. 5188]. The foregoing retentions are for services provided in furtherance of developing and implementing a restructuring in accordance with the Debtors' plan of reorganization ("**Plan**") and administration of the bankruptcy cases (as further identified and defined below, the "**Plan Services**") |

### *Summary of Fees and Expenses Requested for the Fee Period for Plan Services Provided by Grant Thornton per Retention Orders*

| | |
|---|---|
| **Time Period Covered for Plan Services for this Application:** | January 1, 2023 through April 30, 2023 |
| **Total Compensation Requested for Plan Related Services During Fee Period:** | $238,888.50 |
| **Total Expenses Requested During Fee Period:** | $26,793.30 |
| **Total Compensation and Expenses Requested During Fee Period:** | $265,681.80 |

**Total Compensation and Expenses During Fee Period Previously Paid or Waiting Payment Through Prior Monthly Fee Statements ("MFS") (80% of Fees/100% Expenses):**    $217,904.10

**20% Holdback That Remains to be Paid:**    $47,777.70

*Summary of Other Fees and Expenses Paid to Grant Thornton During the Fee Period for OCB Tax Services that Grant Thornton Provided to the Debtors in the Ordinary Course Business*

**Time Period Covered for OCB Tax Services for this Application:**    January 1, 2023 through April 30, 2023

**Total Compensation Related to OCB Tax Services for this Application:**    $225,357.40

*Summary of Past Requests for Compensation and Prior Payments for Prior Fee Period(s)*

**Total Compensation Approved to Date for Plan Services: ECF No. 4237 ("First Interim Fee Order"), ECF No. 4716 ("Second Interim Fee Order"), ECF No. 4927 ("Third Interim Fee Order"), ECF No. 5256 ("Fourth Interim Fee Order") and ECF No. 5416 ("Fifth Interim Fee Order") (collectively, the "Prior Fee Orders"):**    $1,604,451.80

**Total Expenses Approved to Date by the Prior Fee Orders:**    $143,897.54

**Total Compensation Approved to Date for OCB Tax Services by the Prior Fee Orders:**    $607,366.47

**Total Allowed Compensation Paid to Date for Plan Services, Expenses and OCB Tax Services per Prior Fee Orders:**    $2,355,715.81

### Summary of Rates and Other Related Information for the Fee Period

| | |
|---|---|
| **Blended Rate in This Application for All Timekeepers:** | $634.50 |
| **Number of Professionals Included in This Application:** | 11 |
| **Difference Between Fees Budgeted and Compensation Sought for This Fee Period:** | N/A |
| **Number of Professionals Billing Fewer Than 15 Hours During This Fee Period:[2]** | 7 for this Fee Period, but 4 of the 7 have billed more than 15 hours during the entire retention |
| **Increase in Rates Since Last Interim Fee Application:** | None |

This is a(n):  _____  monthly  _x_  interim  ____  final application

---

[2] *See* discussion *infra* at ¶ 21 regarding Grant Thornton's use of specialized professionals to address discrete issues for Plan Services rendered to the Debtors in order to minimize fees incurred. Moreover, when combined with hours spent over the entire project, Grant Thornton expects that the number of professionals billing less than 15 hours will be significantly less, which, as noted above, drops the total from 7 to 3 here.

**Summary of Monthly Fee Statements for this Fee Period (1/1/23-4/30/23)**

| Period Covered | Monthly Fee Application Totals | | Total Monthly Amounts Requested | | Total Paid or to be Paid Prior to Hearing[3] | 20% Holdback Remaining To Be Paid |
|---|---|---|---|---|---|---|
| | Fees (100%) | Expenses (100%) | Fees (80%) | Expenses (100%) | | |
| 1/1/23 to 1/31/23 [ECF No. 5478] ("**17th MFS**")[4] | $72,752.00 | $9,575.00 | $58,201.60 | $9,575.00 | $67,776.60 | $14,550.40 |
| 2/1/23 to 2/28/23 [ECF No. 5535] ("**18th MFS**") | $124,107.50 | $6,425.00 | $99,286.00 | $6,425.00 | $105,711.00 | $24,821.50 |
| 3/1/23 to 3/31/23 [ECF No. 5569] ("**19th MFS**") | $42,029.00 | $8,331.00 | $33,623.20 | $8,331.00 | $41,954.20 | $8,405.80 |
| 4/1/23 to 4/30/23 [ECF No. 5665] ("**20th MFS**") | 0.00 | $2,462.30 | 0.00 | $2,462.30 | $2,462.30 | 0.00 |
| **TOTALS** | **$238,888.50** | **$26,793.30** | **$191,110.80** | **$26,793.30** | **$217,904.10** | **$47,777.70** |

**Summary of Payments Made for OCB Tax Services for this Fee Period**

| Applicable MFS | Amounts in MFS | Total Paid or To Be Paid Prior to Hearing |
|---|---|---|
| 17th MFS | $6,053.00 | $6,053.00 |
| 18th MFS | $107,074.90 | $107,074.90 |
| 19th MFS | $54,435.00 | $54,435.00 |
| 20th MFS | $57,794.50 | $57,794.50 |
| **TOTAL** | **$225,357.40** | **$225,357.40** |

[3] Grant Thornton filed its 20th MFS (for April services) on June 6, 2023, and the deadline to object thereto is July 11, 2023. To the extent that there are no objections to the requested payments, Grant Thornton expects that the payments set forth therein will be made prior to the hearing on this Application. To the extent that Grant Thornton does not receive all payments on account of the 17th MFS, 18th MFS, 19th MFS or 20th MFS prior to the hearing on this Application, Grant Thornton reserves all rights to modify the anticipated payments disclosed herein and to request that such payments be made as part of this Application.

[4] The 17th MFS erroneously added the total amounts owed on account of 80% of fees for Plan Services ($58,201.60), plus 100% expenses ($9,575.00), plus 100% OCB Tax Services ($6,053.00) as $73,835.20 rather than $73,830.20. The Debtors only paid Grant Thornton the correct amount of $73,830.20 in connection with the 17th MFS.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 |
| Debtors. | (Jointly Administered) |

### SIXTH INTERIM FEE APPLICATION OF GRANT THORNTON LLP FOR: (I) ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR RETENTION AS CONSULTANTS TO DEBTORS FOR SERVICES RELATED TO THE PLAN FOR THE PERIOD JANUARY 1, 2023 TO APRIL 30, 2023; AND (II) PAYMENTS FOR SERVICES PERFORMED IN THE ORDINARY COURSE OF DEBTORS' BUSINESS THROUGH APRIL 30, 2023

Pursuant to sections 327, 330 and 331 of chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), Rule 2016-1 of the Local Guidelines, the Interim Compensation Order, the *Order Authorizing the Retention and Employment of Grant Thornton LLP as Tax Restructuring Consultants for the Debtors Nunc Pro Tunc to January 20, 2021* [ECF No. 2760] (the "**Initial Retention Order**"), the *Order Authorizing the Supplemental Retention and Employment of Grant Thornton LLP by the Debtors for Tax Analysis and Valuation Services Effective September 1, 2021* [ECF No. 3831] (the "**Supplemental Retention Order**"), and the *Order Authorizing the Second Supplemental Retention and Employment of Grant Thornton LLP by the Debtors for Business Advisory Services Effective September 27, 2022* [Docket No. 5188] (the "**Second Supplemental Retention Order**"),[5] Grant Thornton submits this Application.

By this Application, Grant Thornton seeks approval and allowance of its compensation and reimbursement of expenses for Plan Services rendered to the Debtors by Grant Thornton during

---

[5] Copies of the Initial Retention Order, the Supplemental Retention Order and the Second Supplemental Retention Order (collectively, the "**Retention Orders**") are attached hereto as **Exhibit B**.

the Fee Period in the total amount of $265,681.80, comprised of: (i) reasonable compensation in

the amount of $238,888.50 for actual, necessary Plan Services that Grant Thornton incurred during

the Fee Period; and (ii) reimbursement in the amount of $26,793.30 for actual, reasonable and

necessary expenses incurred by Grant Thornton during the Fee Period.  Grant Thornton further

seeks an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from

the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates

will be $47,777.70.

By this Application, Grant Thornton also seeks approval and allowance of compensation

and expenses paid to Grant Thornton for OCB Tax Services provided to the Debtors in the ordinary

course of the Debtors' business which, for the Fee Period, totals $225,357.40.  Out of an abundance

of caution and for purposes of full disclosure, Grant Thornton is including in this Application (and

has included in its 17th MFS, 18th MFS, 19th MFS and 20th MFS) the amounts accrued and paid to

Grant Thornton in the ordinary course of business relating to the OCB Tax Services from January

1, 2023 through April 30, 2023.

## JURISDICTION

1.     The United States Bankruptcy Court for the Southern District of New York (the

"**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.     The Chapter 11 Cases

3.     On September 15, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their

business and managing their properties as debtor-in-possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  On September 18, 2019, the Court entered an order [ECF No. 59]

authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases

pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or

examiner in these chapter 11 cases.  On September 27, 2019, the United States Trustee for the

Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code [ECF No. 131].

4.      A description of the Debtors' business, the reasons for commencing the chapter 11

cases, and the relief sought from the Court to facilitate effective administration of these chapter 11

cases are set forth in the Debtors' Informational Brief [ECF No.17].

5.      On November 21, 2019, the Court entered the Interim Compensation Order, which

sets forth the procedures for interim compensation and reimbursement of expenses for all

professionals in these cases.

### B.      The Debtors' Retention of Grant Thornton

#### 1.      *OCB Tax Services Provided by Grant Thornton in the Ordinary Course of the Debtors' Business*

6.      Prior to the Petition Date, the Debtors engaged Grant Thornton to provide tax-

related services pursuant to the terms and conditions of that certain master agreement, dated June

1, 2018 (the "**MSA**"), and other related statements of work executed in connection therewith.

7.      As previously disclosed in Grant Thornton's retention applications [ECF Nos.

2636, 3761 and 5113] and previous monthly fee statements [ECF Nos. 3738, 4019, 4345, 4416,

4623, 4743, 4773, 4932, 5024, 5068, 5114, 5234, 5287, 5338, 5391, 5478, 5535, 5569 and 5665],

the Debtors retained Grant Thornton after the Petition Date to continue to provide certain tax-

related services to assist the Debtors in the ordinary course of their business operations (the "**OCB Tax Services**"), which work consisted of the following services:

a.  Sales and Use Tax Compliance Services:  On August 11, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Sales and Use Tax Return Preparation Services*, pursuant to which Grant Thornton was retained to assist the Debtors with the generation of sales, use and other transactional tax returns by providing tax return compliance services.  That August 11, 2020 statement of work was subsequently replaced and superseded by that certain *Statement of Work for Sales and Use Tax Return Preparation Services*, dated March 2, 2021.

b.  2020 and 2021 Tax Preparation Services: The Debtors and Grant Thornton have entered into the following statements of work for tax compliance services, pursuant to which Grant Thornton was retained to prepare the Debtors' federal and state tax returns, including extension calculations and estimated tax payments: (i) on December 7, 2020 for the 2020 taxable year (which work has been completed); (ii) on January 20, 2022 for the 2021 taxable year (which work has been completed); and (iii) on January 5, 2023 for the 2022 taxable year.

c.  Global Mobility Services:  On June 18, 2020, the Debtors and Grant Thornton entered into that certain *Statement of Work for Global Mobility Services*, pursuant to which Grant Thornton was retained to provide tax compliance and consulting services for disclosures, review and execution related to United States and United Kingdom tax returns for the years 2015 through 2019.  Such

services included, among other things: (i) discovery of over-reporting of income; (ii) consultation on the approach to amendments; (iii) preparation of adjusted compensation figures for necessary years; (iv) preparation of tax equalization settlements for necessary years; (v) discussions on processes and filings with the Debtors and David Lundie; and (vi) assistance with responses to IRS and HMRC notices.  On April 15, 2021, the Debtors and Grant Thornton entered into that certain *Statement of Work for GMS Compliance Services*, pursuant to which Grant Thornton's engagement to provide Global Mobility Services was extended to the 2020 and 2021 tax years. On March 13, 2023, the Debtors and Grant Thornton entered into that certain *Statement of Work for GMS Compliance Services*, pursuant to which Grant Thornton's engagement to provide Global Mobility Services was extended to the 2022 and 2023 tax years.

8.    Because the OCB Tax Services were being provided in the ordinary course of the Debtors' business and were unrelated to the administration of the bankruptcy cases, Grant Thornton understood that it was not necessary for it to be retained in these bankruptcy cases and that payment on account of such OCB Tax Services would be paid consistent with past practices and in the ordinary course of the Debtors' ongoing business operations.  Thus, prior to approval of Grant Thornton's retention with respect to the Plan Services (as further described below), the OCB Tax Services, including the billing and payment process, were not subject to the Interim Compensation Order or other fee procedures applicable to professionals retained in these bankruptcy cases.

## 2. *Plan Services For Which Grant Thornton Was Retained*

9.       In January 2021, the Debtors requested that Grant Thornton provide additional tax structuring services that directly related to the development of the Debtors' chapter 11 plan of reorganization in these bankruptcy cases (the "**Plan**").[6]  As a result of this requested expansion in the scope of work being provided, on or about January 20, 2021, Grant Thornton and the Debtors entered into that certain *Statement of Work for Tax Structuring Services* (the "**Tax Structuring Plan-Related SOW**").

10.      After Grant Thornton conducted an extensive conflict check to support its retention application, on April 13, 2021, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Grant Thornton LLP as Tax Structuring Consultants to the Debtors Nunc Pro Tunc to January 20, 2021* [ECF No. 2636], and the Court entered the Initial Retention Order on April 28, 2021.

11.      In August 2021, the Debtors requested that Grant Thornton further expand the scope of its retention and provide additional services related to their Plan confirmation efforts. Specifically, the Debtors and Grant Thornton entered into the *Statement of Work for Advisory Services*, dated August 25, 2021 (the "**Valuation Services Plan-Related SOW**"), pursuant to which Grant Thornton was retained, subject to Court approval, to provide valuation advisory services to the Debtors relating to the Plan and the formation of the Newco as provided therein. The Debtors and Grant Thornton also entered into the *Statement of Work for Employment Tax*

---

[6] These tax structuring services included: (a) assisting the Debtors' management in analyzing the income tax consequences to the Debtors with respect to transactions between the Debtors and the new entity ("**Newco**") anticipated to be created in the bankruptcy reorganization; (b) consulting with Debtors and its legal counsel regarding the federal and state income tax implications of transactions required by the Court (as proposed by the Debtors' legal counsel) effectuating the bankruptcy reorganization; (c) assisting the Debtors' management in determining the federal income tax basis in the assets of the Newco and its affiliates immediately following the bankruptcy reorganization; and (d) assisting in modeling future U.S. federal and state income tax cash tax liabilities for Newco following emergence from bankruptcy.

*Services & State Corporate Income/Franchise Tax Nexus Analysis Services*, dated August 26, 2021 (the "**Employee Tax Analysis Plan-Related SOW**"), pursuant to which Grant Thornton was retained, subject to Court approval, to provide tax analysis for certain employment and other tax issues relating to the Plan and formation of the Newco as provided therein.

12.     On September 10, 2021, the Debtors filed the *Application of Debtors for Authority to Supplement Retention and Employment of Grant Thornton LLP for Tax Analysis and Valuation Services Effective September 1, 2021* [ECF No. 3761], and the Court entered the Supplemental Retention Order on September 28, 2021.

13.     In or around September 2022, the Debtors requested that Grant Thornton further expand the scope of its retention by providing certain business advisory services to the Debtors. On September 27, 2022, the Debtors and Grant Thornton entered into the following agreements (collectively, the "**BAS Agreements**"): (i) the engagement letter, including *Attachment A – STANDARD GRANT THORNTON LLP ENGAGEMENT TERMS* attached thereto; and (ii) the *Statement of Work (SOW) for Advisory Services*.  On October 4, 2022, the Debtors filed the *Application of Debtors for Authority to Supplement Retention and Employment of Grant Thornton LLP for Business Advisory Services Effective September 27, 2022* [Docket No. 5113], and the Court entered the Second Supplemental Retention Order on October 20, 2022 [Docket No. 5188].

14.     Pursuant to the Retention Orders, compensation and reimbursement for the services provided under the Tax Structuring Plan-Related SOW, the Valuation Services Plan-Related SOW, the Employee Tax Analysis Plan-Related SOW and the BAS Agreements (collectively, the "**Plan Services**") are subject to, and must be in compliance with, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court for allowance of monthly, interim and final fee applications.

## COMPLIANCE WITH FEE GUIDELINES

15.    All Plan Services during the Fee Period for which compensation is requested by Grant Thornton were performed for or on behalf of the Debtors.  Additionally, Grant Thornton has not received any payment or promises of payment from any source other than the Debtors for services rendered or to be rendered in any capacity whatsoever in connection with matters covered by this Fee Application.

16.    These professional services were rendered by Grant Thornton staff.

17.    To the extent that billable time or disbursement charges for services rendered or expenses incurred relate to the Fee Period, but were not processed prior to the preparation of this Fee Application, Grant Thornton reserves the right to request  compensation for such services and reimbursement of such expenses in a future fee application.

18.    A certification confirming Grant Thornton's compliance with the Fee Guidelines is annexed hereto as **Exhibit A**.

## SUMMARY OF REQUESTED COMPENSATION

19.    During the Fee Period, Grant Thornton's professionals expended a total of **376.50 hours** in connection with providing necessary Plan Services.  Grant Thornton has been able to efficiently provide services by utilizing the expertise of professionals to effectively advise the Debtors regarding discrete issues and ensuring that the level of seniority is commensurate with the assignment.

20.     Grant Thornton has been retained to provide Plan Services to the Debtors that consist of four (4) separate projects for which Grant Thornton charges, all or in part, based on hourly rates: (i) tax structuring services, (ii) employee tax services, (iii) valuation services and (iv)

business advisory services.[7]  Each of these discrete projects requires distinct skills and experience, and thus, requires separate teams.

21.     Moreover, Grant Thornton is able to minimize the amount in fees it incurs by using highly specialized professionals knowledgeable in distinct areas of complex tax issues to address specific issues as they arise.  Grant Thornton anticipates that certain individuals providing services below 15 hours during the Fee Period will incur more than 15 hours over the total project.

22.     Grant Thornton, in connection with Plan Services rendered on behalf of the Debtors, respectfully requests allowance of reasonable compensation of such services in the total amount of $238,888.50 and reimbursement of actual and necessary expenses incurred in the amount of $26,793.30, for an aggregate total of $265,681.80 for the Fee Period.

23.     Because the Debtors have, or are expected to have, paid Grant Thornton $217,904.10 of the requested allowed amount pursuant to the Interim Compensation Order, Grant Thornton also seeks an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates will be $47,777.70.

24.     Annexed hereto as **Exhibit C** is a list of Grant Thornton professionals and paraprofessionals, their position with the firm, the hourly rate charged for their services, the number of hours worked on this matter, and other pertinent information.  **Exhibit D** annexed hereto is a list of the various project billing categories and the total fees and total hours expended in each project billing category.

---

[7] No employee tax services or valuation services were performed by Grant Thornton during this Fee Period.

25.   **Exhibit E** attached hereto are the detailed records of the Plan Services provided by Grant Thornton for this Fee Period, organized by categories.  These detailed time records also were previously appended to Grant Thornton's 17th MFS, 18th MFS, 19th MFS and 20th MFS.

26.   Grant Thornton is engaged in ongoing discussions with the Debtors regarding budgeting and staffing issues. Annexed hereto as **Exhibit F** is Grant Thornton's staffing plan in connection with services rendered to the Debtors.

## SUMMARY OF SERVICES RENDERED

27.   During the Fee Period, Grant Thornton provided extensive and critical professional advice and other services, involving complex, novel issues involved in resolving the disparate interests of the diverse stakeholder groups in these chapter 11 cases.  The following is a summary of the significant services provided to the Debtors in each of the project billing categories.  The following summary of services rendered during the Fee Period is not intended to be a detailed description of the work performed.  Rather, it merely highlights certain billing project categories in which services were rendered by Grant Thornton, as well as identifies some of the issues Grant Thornton was required to address. Detailed descriptions of the day-to-day services provided by Grant Thornton and the time expended performing such services in each project billing category are attached hereto as **Exhibit E**.

| Categories for Business Advisory Services: | Total Hours | Total Fees | Description |
|---|---|---|---|
| General Analysis | 352.60 | $224,844.50 | General analysis services as part of the business advisory services relates to the general analysis of the accounting and finance function, management processes, and understanding of EBITDA. |
| Strategic Operations | 13.90 | $7,910.50 | This category includes activities associated with development of a standalone operating cost model and identifying one-time separation costs. |

| Categories for Tax Structuring Services | | | |
|---|---|---|---|
| Exit Structure Analysis | 10.0 | $6,133.50 | This category includes activities associated with assessing income tax consequences of potential plan structure including liquidation of potential entities, maintaining employer identification numbers, etc… |
| **TOTAL** | **376.50** | **$238,888.50** | |

28.     Grant Thornton respectfully submits that the Plan Services that it has rendered on behalf of the Debtors during the Fee Period were necessary and appropriate and have directly contributed to the effective administration of these cases, including the successful confirmation and anticipated implementation of the Plan.

## **ACTUAL AND NECESSARY EXPENSES**

29.     As set forth in **Exhibit G** hereto, Grant Thornton has incurred or disbursed $26,793.30 in expenses in providing professional services to the Debtors during the Fee Period. These expense amounts are intended to cover Grant Thornton's direct expenses which are not incorporated into the hourly billing rates.  Only clients for whom the services are actually used are separately charged for such services.

30.     Grant Thornton has made every effort to minimize its expenses in the chapter 11 cases. The actual expenses incurred in providing professional services to the Debtors were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors.

31.     In connection with Grant Thornton's retention in these bankruptcy cases, Grant Thornton utilized its own outside bankruptcy counsel to assist Grant Thornton with its retention and fee approval procedures.  Pursuant to the Initial Retention Order:

> "Grant Thornton's reimbursable expenses may include the reasonable and necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges of Grant Thornton's external legal counsel (without the need for such legal counsel to be retained as a professional in the chapter 11 cases); provided, that, if Grant Thornton seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the

Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Grant Thornton's own applications, both interim and final, and these invoices and time records shall be subject to the approval of the *[sic]* Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code."

Initial Retention Order, ¶ 4.  In accordance with the Initial Retention Order, **Exhibit G** also includes the invoices and supporting time records for Grant Thornton's outside legal counsel that constitute the reasonable and necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges incurred by Grant Thornton in connection with utilizing such external legal counsel.

## GRANT THORNTON'S REQUESTED COMPENSATION SHOULD BE ALLOWED

32.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional compensation for actual necessary services rendered and reimbursement for actual, necessary expenses.  11 U.S.C. § 330(a) (1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and value of such services, taking into account all relevant factors, including-

(a)  the time spent on such services;

(b)  the rates charged for such services;

(c)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

> (e) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

33.    The foregoing professional services were performed by Grant Thornton in an efficient manner, were necessary and appropriate to the administration of the chapter 11 cases, and were in the best interests of the Debtors, their estates, and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved.  As required by the U.S. Trustee guidelines, annexed hereto as **Exhibit H** is a chart setting forth the comparative rates of the professionals who rendered services in these chapter 11 cases during the Fee Period with a corresponding comparison of the standard rates for Grant Thornton professionals not involved in these chapter 11 cases.

## DISCLOSURE AND ALLOWANCE OF COMPENSATION FOR OCB TAX SERVICES

34.    Attached as **Exhibit I** are invoices for the total amount of reasonable compensation for actual, necessary OCB Tax Services that Grant Thornton incurred covering the Fee Period. Copies of these invoices also were previously attached to the applicable MFS.  In light of Grant Thornton's retention in these bankruptcy cases by order entered April 28, 2021, out of an abundance of caution and for purposes of full disclosure, Grant Thornton is including the amounts paid to Grant Thornton on account of the OCB Tax Services during the Fee Period.

## NOTICE

35.    The Debtors will provide notice of this Application in accordance with the Interim Compensation Order.  Grant Thornton submits that no other or further notice be given.

**WHEREFORE**, Grant Thornton, in connection with services rendered on behalf of the Debtors, respectfully requests: (i) allowance of compensation and reimbursement of expenses for Plan Services rendered to the Debtors by Grant Thornton during the Fee Period in the total amount of $265,681.80, comprised of: (a) reasonable compensation in the amount of $238,888.50 for actual, necessary Plan Services that Grant Thornton incurred during the Fee Period, and (b) reimbursement in the amount of $26,793.30 for actual, reasonable and necessary expenses incurred by Grant Thornton during the Fee Period; (ii) an order authorizing the Debtors to pay Grant Thornton the remaining 20% holdback from the monthly fee statements filed with the Court, which 20% holdback Grant Thornton estimates will be $47,777.70; (iii) allowance of compensation and expenses paid to Grant Thornton for tax related services provided to the Debtors in the ordinary course of the Debtors' business which, during the Fee Period, totals $225,357.40; and (iv) such other and further relief as the Court deems appropriate.

June 6, 2023
New York, NY

**GRANT THORNTON LLP**

Raymond Werth
Partner, Grant Thornton LLP
757 Third Ave., 9th Floor
New York, NY 10017
Telephone:  (212) 599-0100

# <u>EXHIBIT A</u>

## CERTIFICATION OF RAYMOND WERTH

## CERTIFICATION

I, Raymond Werth, hereby certify as follows:

1.      I am a Partner of the firm of Grant Thornton LLP ("**Grant Thornton**").  I am duly authorized to execute this certification on behalf of Grant Thornton.

2.      I submit this certification in support of the *Sixth Interim Fee Application of Grant Thornton LLP for: (I) Allowance of Compensation and Reimbursement of Expenses Incurred for Retention as Consultants to Debtors for Services Related to the Plan for the Period January 1, 2023 through April 30, 2023; and (II) Payments for Services Performed in the Ordinary Course of Debtors' Business through April 30, 2023* (the "**Application**").  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Application.

3.      I am familiar with the work performed on behalf of the Debtors as set forth in the Application.

4.      I have personally reviewed the information contained in the Application to certify to certain matters addressed in the Interim Compensation Order, Rule 2016-1 of the Local Guidelines, and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "**UST Guidelines**," and together with the Local Guidelines, the "**Fee Guidelines**").

5.      To the best of my knowledge, information and belief formed after reasonable inquiry of Grant Thornton's accounting personnel and staff, I believe the contents of the Application to be true and correct in all material respects and that the Application materially complies with the mandatory guidelines set forth in the Fee Guidelines except as otherwise indicated in the Application.

6.      The following is my response, on behalf of Grant Thornton, to the questions identified in the UST Guidelines:

a. **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms of services pertaining to this engagement that were provided during the application period? If so, please explain.

    **Answer**: Yes.  Grant Thornton agreed to reduce its standard hourly rates for certain of the Plan Services, which discounts ranged from 25% to 55% depending on the services provided.  In addition, Grant Thornton's standard hourly rates have been increased from time to time in the normal course of business, but Grant Thornton did not apply those customary rate increases to professionals working on matters in these cases during the Fee Period.

b. **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

    **Answer**: Grant Thornton has provided the Debtors with the actual amount of fees incurred on a monthly basis and engages in on-going discussions with the Debtors regarding fees and expenses generally, but did not prepare an itemized budget for the Fee Period.

c. **Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

    **Answer**: No.

d. **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

    **Answer**: No.

e. **Question:** Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

    **Answer**: Yes.  During the four (4) month Fee Period, Grant Thornton's outside bankruptcy counsel, Sklar Kirsh, LLP, reviewed time records for the business advisory services for confidentiality concerns and conferred with the Debtors' bankruptcy counsel regarding the same for a total of 0.9 hours incurring $603.00 in fees.

f. **Question**: If the fee application includes any rate increases since retention: (i) did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

> **Answer**: Grant Thornton's standard hourly rates have been periodically increased in the normal course of business during its retention in these bankruptcy cases, but Grant Thornton did not apply those customary rate increases to professionals working on matters in these cases. One professional, Mr. Brian Angstadt, was promoted to Managing Director effective September 1, 2021, and as such, the hourly rate charged on and after September 1, 2021 for his time was reflective of this new position, which is the agreed upon, reduced rate for that level for this engagement.

June 6, 2023
New York, NY

**GRANT THORNTON LLP**

Raymond Werth
Partner, Grant Thornton LLP
757 Third Ave., 9th Floor
New York, NY 10017
Telephone:  (212) 599-0100

## EXHIBIT B

**RETENTION ORDERS**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-19-23649 (RDD) |
| Debtors. [1] | (Jointly Administered) |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GRANT THORNTON LLP AS TAX RESTRUCTURING CONSULTANTS FOR THE DEBTORS *NUNC PRO TUNC* TO JANUARY 20, 2021

Upon the application, by notice of presentment dated April 13, 2021 (the "**Application**"),[2] of Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order authorizing the Debtors to retain Grant Thornton as consultant to the Debtors with respect to the Grant Thornton Services, effective *nunc pro tunc* to January 20, 2021, all as more fully set forth in the Application; and upon the declaration of Raymond Werth, a tax partner of Grant Thornton, attached to the Application as __Exhibit C__

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Application.

(the "**Werth Declaration**") and the declaration of Jon Lowne, attached to the Application as

**Exhibit D** (the "**Lowne Declaration**")**;** and this Court having jurisdiction to consider the

Application and the relief requested therein in accordance with 28 U.S.C. §§ 157)(a)-(b) and

1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and there being due and sufficient notice of the Application and the opportunity

for a hearing thereon; and there being no objections to the requested relief; and no additional ntoce

or a hearing being required; and it appearing that Grant Thornton does not hold or represent and

adverse interest to the Debtors or the estates, that it is disinterested under section 101(14) of the

Bankruptcy Code, and that its retention to perform the Grant Thornton Services is necessary and

in the best interests of the estates; and good and sufficient cause appearing, it is hereby

### ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to retain Grant Thornton as tax restructuring

consultants to the Debtors with respect to the Grant Thornton Services, effective as of January 20,

2021, and Grant Thornton is authorized to perform the Grant Thornton Services described in the

Application and the Engagement Agreement.

3.      Grant Thornton shall file fee applications for allowance of its compensation

and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with

this Court in accordance with 11 U.S.C. §§ 330 and 331, as the case may be, and the applicable

Bankruptcy Rules, Local Rules, and fee and expense guidelines and orders of this Court.

4.      Grant Thornton's reimbursable expenses may include the reasonable an

necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges of Grant

Thornton's external legal counsel (without the need for such legal counsel to be retained as a professional in the chapter 11 cases); provided, that, if Grant Thornton seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Grant Thornton's own applications, both interim and final, and these invoices and time records shall be subject to the approval of the this Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

5.      Grant Thornton shall provide reasonable notice to the Debtors, the U.S. Trustee and any statutory committee appointed in these chapter 11 cases before implementing any increases in the rates set forth in the Application for professionals providing the Grant Thornton Services.

6.      The indemnification provisions in the Grant Thornton Engagement Letter, including the MSA are hereby modified and restated in their entirety as follows:

    (a)    All requests by Grant Thornton for payment of indemnity pursuant to the MSA shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure payment of such indemnity conforms to the terms of the MSA and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Grant Thornton be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

(b)    In the event that Grant Thornton seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Grant Thornton for payment of indemnity pursuant to the MSA, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Grant Thornton's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and

3

without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and

7.    The limitation of liability section in paragraph 2 of the Attachment A to the MSA is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

8.    Notwithstanding anything in the Application or the Engagement Agreement to the contrary, if Grant Thornton terminates this engagement by giving written notice to PPLP, Grant Thornton shall remain entitled to any fees accrued but not yet paid prior to such termination, subject to Court approval of (a) such termination and (b) any fees accrued and not yet paid under the Fee Guidelines, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

9.    Before implementing any increases in Grant Thornton's rates, as set forth in the Engagement Agreement, for any individual retained by Grant Thornton and providing services in these cases, Grant Thornton shall file a supplemental declaration with the Court and provide ten business days' notice to the Debtors, the United States Trustee and any official committee. The supplemental declaration shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase(s). All parties in interest retain all rights to object to any rate increase on all grounds, including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code.

10.    Notwithstanding anything in the Application or the Engagement Agreement to the contrary, during the pendency of these chapter 11 cases, this Court retains exclusive jurisdiction with respect to any matters, claims, rights or disputes arising out of and/or pertaining

4

to Grant Thornton's engagement and the implementation of this Order until such jurisdiction is relinquished.

11.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these Chapter 11 Cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of the Chapter 11 Cases to cases under chapter 7.

12.     Notice of the Application as provided therein is good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are satisfied by such notice.

13.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Application.

15.     In the event of any inconsistency between the Application, the Engagement Agreement and this Order, the terms of this Order shall govern.

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated:    April 28, 2021
          White Plains, New York


                              /s/ Robert D. Drain
                              THE HONORABLE ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE

5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.**, *et al.*, | **Case No. 19-19-23649 (RDD)** |
| **Debtors.** [1] | **(Jointly Administered)** |

## ORDER AUTHORIZING THE SUPPLEMENTAL RETENTION AND EMPLOYMENT OF GRANT THORNTON LLP BY THE DEBTORS FOR TAX ANALYSIS AND VALUATION SERVICES EFFECTIVE SEPTEMBER 1, 2021

Upon the supplemental application, dated September 10, 2021 [ECF No. 3761] (the "**Supplemental Application**"),[2] of Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order authorizing the Debtors to supplement the retention of Grant Thornton as consultant to the Debtors with respect to the Supplemental Services, effective September 1, 2021, all as more fully set forth in the Supplemental Application; and upon the declaration of Raymond Werth, a tax partner of Grant

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Supplemental Application.

Thornton, attached to the Supplemental Application as **Exhibit 2** (the "**First Supplemental Werth Declaration**"), and this Court having jurisdiction to consider the Supplemental Application and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Supplemental Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Supplemental Application having been provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances; and there being no objections to the Supplemental Application; it appearing that no other or further notice or a hearing is required; and the Court having considered the Initial Retention Application and all exhibits attached thereto, the First Supplemental Werth Declaration filed with the Supplemental Application; and the Court having determined Grant Thornton does not hold or represent an adverse interest to the Debtors or their estates, that it is disinterested under 11 U.S.C. § 101(14), and that the relief sought in the Supplemental Application is necessary and in the best interests of the Debtors, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Supplemental Application establish just cause for the relief granted herein; now, therefore,

**IT IS HEREBY ORDERED THAT**:

1.      The Supplemental Application is granted as set forth herein.

2.      The Debtors are authorized to supplement the retention and employment of Grant Thornton as valuation and tax analysis consultants to the Debtors with respect to the Supplemental Services, effective September 1, 2021, and Grant Thornton is authorized to perform the Supplemental Services described in the Supplemental Application and the Supplemental SOWs.

3. Grant Thornton shall file fee applications for allowance of its compensation and reimbursement of its expenses with respect to Supplemental Services rendered in these chapter 11 cases with this Court in accordance with 11 U.S.C. §§ 330 and 331, as the case may be, and the applicable Bankruptcy Rules, Local Rules, and fee and expense guidelines and orders of this Court and during these cases shall be compensated and reimbursed for such Services only upon an order of this Court granting a proper application therefor.

4. Notwithstanding the entry of this Order, the terms and conditions of the Initial Retention Order and all related agreements approved thereunder shall remain in full force and effect and shall apply to the Supplemental Services except as otherwise expressly set forth herein.

5. The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these chapter 11 cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of the chapter 11 cases to cases under chapter 7.

6. Notice of the Supplemental Application as provided therein is good and sufficient notice of such Supplemental Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are satisfied by such notice.

7. Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8. The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Supplemental Application.

9. In the event of any inconsistency between the Supplemental Application or the Supplemental SOWs and this Order, the terms of this Order, including this Order's incorporation of sections 330 and 331 of the Bankruptcy Code, shall govern.

10.    This Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and enforcement of this Order.

Dated:    September 27, 2021
          White Plains, New York

*/s/Robert D. Drain*
_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

**PURDUE PHARMA L.P.,** *et al.*,

Debtors. [1]

Chapter 11

Case No. 19-23649 (SHL)

(Jointly Administered)

---

### ORDER AUTHORIZING THE SECOND SUPPLEMENTAL RETENTION AND EMPLOYMENT OF GRANT THORNTON LLP BY THE DEBTORS FOR BUSINESS ADVISORY SERVICES EFFECTIVE SEPTEMBER 27, 2022

Upon the second supplemental application, dated October 4, 2022 [ECF No. 5113] (the "**Second Supplemental Application**"),[2] of Purdue Pharma L.P. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for entry of an order authorizing the Debtors to supplement the retention of Grant Thornton as consultant to the Debtors with respect to the Business Advisory Services, effective September 27, 2022, all as more fully set forth in the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P., Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the Second Supplemental Application.

Second Supplemental Application; and upon the declaration of Raymond Werth, a tax partner of
Grant Thornton, attached to the Second Supplemental Application as **Exhibit 3** (the "**Third
Supplemental Werth Declaration**"), and this Court having jurisdiction to consider the Second
Supplemental Application and the relief requested therein in accordance with 28 U.S.C. §§ 157
and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,
C.J.); and consideration of the Second Supplemental Application and the relief requested therein
being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court
pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Second Supplemental Application
having been provided to the Notice Parties, and such notice having been adequate and appropriate
under the circumstances; and it appearing that no other or further notice need be provided; and
the Court having considered the Initial Retention Application and all exhibits attached thereto, the
First Supplemental Application and all exhibits attached thereto, and the Second Supplemental
Application and all exhibits attached thereto, including the Third Supplemental Werth
Declaration, and the Court having determined that the relief sought in the Second Supplemental
Application is in the best interests of the Debtors, their creditors, and all parties in interest, and
that the legal and factual bases set forth in the Second Supplemental Application establish just
cause for the relief granted herein; and upon all of the proceedings had before the Court and after
due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.    The Second Supplemental Application, including the BAS Agreements
attached thereto, are approved as set forth herein.

2.    The Debtors are authorized to supplement the retention and employment of
Grant Thornton as business consultants to the Debtors with respect to the Business Advisory

Services, effective September 27, 2022, and Grant Thornton is authorized to perform the Business
Advisory Services described in the Second Supplemental Application and the BAS Agreements.

3.      Grant Thornton shall file fee applications for allowance of its compensation
and reimbursement of its expenses with respect to the Business Advisory Services rendered in
these chapter 11 cases with this Court in accordance with 11 U.S.C. §§ 330 and 331, as the case
may be, and the applicable Bankruptcy Rules, Local Rules, and fee and expense guidelines and
orders of this Court.

4.      Grant Thornton's reimbursable expenses may include the reasonable and
necessary actual, documented out-of-pocket costs, fees, disbursements, and other charges of Grant
Thornton's external legal counsel (without the need for such legal counsel to be retained as a
professional in the chapter 11 cases); provided, that, if Grant Thornton seeks reimbursement from
the Debtors for attorneys' fees and expenses pursuant to the BAS Agreements, the invoices and
supporting time records for the attorneys' fees and expenses shall be included in Grant Thornton's
own applications, both interim and final, and these invoices and time records shall be subject to
the approval of the this Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without
regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code,
and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the
Bankruptcy Code.

5.      Before implementing any increases in Grant Thornton's rates, as set forth
in the BAS Agreements, for any individual retained by Grant Thornton and providing services in
these cases, Grant Thornton shall file a supplemental declaration with the Court and provide ten
business days' notice to the Debtors, the U.S. Trustee and any official committee. The
supplemental declaration shall explain the basis for the requested rate increases in accordance with

section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the

rate increase(s).  All parties in interest retain all rights to object to any rate increase on all grounds,

including, but not limited to, the reasonableness standard provided for in section 330 of the

Bankruptcy Code.

6.      Notwithstanding anything in the Second Supplemental Application or the

BAS Agreements to the contrary, the indemnification provisions in the BAS Agreements are

hereby modified and restated in their entirety as follows:

> (a)    All requests by Grant Thornton for payment of indemnity pursuant
> to the BAS Agreements shall be made by means of an application
> (interim or final as the case may be) and shall be subject to review
> by the Court to ensure payment of such indemnity conforms to the
> terms of the BAS Agreements and is reasonable based upon the
> circumstances of the litigation or settlement in respect of which
> indemnity is sought; provided, however, that in no event shall Grant
> Thornton be indemnified in the case of its own bad-faith, self-
> dealing, breach of fiduciary duty (if any), gross negligence or willful
> misconduct; and

> (b)    In the event that Grant Thornton seeks reimbursement from the
> Debtors for reasonable attorneys' fees in connection with a request
> by Grant Thornton for payment of indemnity pursuant to the BAS
> Agreements, as modified by this Order, the invoices and supporting
> time records from such attorneys shall be included in Grant
> Thornton's own application (both interim and final) and such
> invoices and time records shall be subject to the approval of the
> Court under the standards of sections 330 and 331 of the Bankruptcy
> Code without regard to whether such attorney has been retained
> under section 327 of the Bankruptcy Code and without regard to
> whether such attorneys' services satisfy section 330(a)(3)(C) of the
> Bankruptcy Code.

7.      Notwithstanding anything in the Second Supplemental Application or the

BAS Agreements to the contrary, the limitation of liability section in paragraph 3 of the

"*Attachment A – STANDARD GRANT THORNTON LLP ENGAGEMENT TERMS*" to the

engagement letter is deemed to be of no force or effect with respect to the services to be provided

pursuant to this Order.

8.      Notwithstanding anything in the Second Supplemental Application or the BAS Agreements to the contrary, if Grant Thornton terminates the engagement by giving written notice to PPLP, Grant Thornton shall remain entitled to any fees accrued but not yet paid prior to such termination, subject to Court approval of (a) such termination, and (b) any fees accrued and not yet paid under the Fee Guidelines, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

9.      The relief granted herein shall be binding upon any chapter 11 trustee appointed in any of these chapter 11 cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of any of the chapter 11 cases to cases under chapter 7.

10.     Notice of the Second Supplemental Application as provided therein is good and sufficient notice of such Second Supplemental Application and the requirements of Bankruptcy Rule 6004(h) and the Local Rules are satisfied by such notice.

11.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Second Supplemental Application.

13.     In the event of any inconsistency between the Second Supplemental Application and this Order, the terms of this Order shall govern.

14.     Notwithstanding anything in the Second Supplemental Application or the

BAS Agreements to the contrary, during the pendency of these chapter 11 cases, this Court retains

exclusive jurisdiction with respect to any matters, claims, rights or disputes arising out of and/or

pertaining to Grant Thornton's engagement and the implementation of this Order until such

jurisdiction is relinquished.

Dated:    October 20, 2022
          White Plains, New York

                              */s/ Sean H. Lane*
                              THE HONORABLE SEAN H. LANE
                              UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**SUMMARY OF HOURS BILLED FOR PLAN SERVICES BY PROFESSIONAL**
**(for Hourly Rate Services)**

| Name | Title | Hourly Rate | Total Hours Billed | Total Compensation | Total Combined Hours Billed To Date |
|---|---|---|---|---|---|
| Alekseev, Alex | Manager | $675.00 | 4.70 | $3,172.50 | 72.2 |
| Angstadt, Brian | Managing Director | $765.00 | 1.50 | $1,147.50 | 77.0 |
| Barenbaum, Glenn | Partner | $955.00 | 6.40 | $6,112.00 | 17.4 |
| Bauman, Stephan | Partner | $720.00 | 2.20 | $1,584.00 | 2.2 |
| Blessing, Luisa | Senior Associate | $515.00 | 9.20 | $4,738.00 | 195.6 |
| Flynn, Meighan | Senior Associate | $515.00 | 107.90 | $55,568.50 | 391.9 |
| Frederick, Steven | Associate | $330.00 | 27.10 | $8,943.00 | 77.9 |
| Kolleck, Mathias Adam | Senior Associate | $515.00 | 4.60 | $2,369.00 | 4.6 |
| Ruggli, Phillipe | Manager | $540.00 | 6.30 | $3,402.00 | 6.3 |
| Sachdeva, Surbhi | Manager | $675.00 | 93.90 | $63,382.50 | 320.5 |
| Shahkarami, Sean | Director | $785.00 | 112.70 | $88,469.50 | 218.2 |
| **TOTAL** | | | **376.50** | **$238,888.50** | |

## EXHIBIT D

### SUMMARY OF PLAN SERVICES BY CATEGORY
### (For Fee Period January 1, 2023 through April 30, 2023)

| Project Categories for Business Advisory Services | Total | Total Fees |
|---|---|---|
| General Analysis | 352.60 | $224,844.50 |
| Strategic Operations | 13.90 | $7,910.50 |
| **Total** | **366.50** | **$232,755.00** |

| Project Categories for Tax Structuring Services | Total Hours | Total Fees |
|---|---|---|
| Exit Structure Analysis | 10.00 | $6,133.50 |
| **Total** | **10.00** | **$6,133.50** |

| TOTALS BY PROJECT | Total Hours | Total Fees |
|---|---|---|
| Totals for Business Advisory Services | 366.50 | $232,755.00 |
| Totals for Tax Structuring Services | 10.00 | $6,133.50 |
| **Total** | **376.50** | **$238,888.50** |

**EXHIBIT E**

**DETAILED TIME ENTRIES FOR PLAN SERVICES BY CATEGORY**

***Business Advisory Services: General Analysis***

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Barenbaum, Glenn P. | Partner | 1/3/2023 | 0.4 | 955 | 382.00 | Review of cost of goods analysis |
| Flynn, Meighan Patricia | Senior Associate | 1/3/2023 | 1.6 | 515 | 824.00 | Review and update analysis pack schedules for roll-forward period |
| Flynn, Meighan Patricia | Senior Associate | 1/3/2023 | 4.4 | 515 | 2,266.00 | Update and review roll-forward report |
| Frederick, Steven Christopher | Associate | 1/3/2023 | 4.6 | 330 | 1,518.00 | Performed analysis on inventory |
| Sachdeva, Surbhi | Manager | 1/3/2023 | 3.2 | 675 | 2,160.00 | Update of report and apack for feedback comments |
| Sachdeva, Surbhi | Manager | 1/3/2023 | 3.7 | 675 | 2,497.50 | Review and set up of COGS/Inventory analysis |
| Shahkarami, Sean | Director | 1/3/2023 | 3.3 | 785 | 2,590.50 | Update analysis for the normalization of COGS for matching principle |
| Shahkarami, Sean | Director | 1/3/2023 | 2.6 | 785 | 2,041.00 | Review the operational COGS and Inventory reports to quantify impact of adjustment to conform to matching principle. |
| Shahkarami, Sean | Director | 1/3/2023 | 3.1 | 785 | 2,433.50 | Update report for the changes in COGS analysis. |
| Flynn, Meighan Patricia | Senior Associate | 1/4/2023 | 4.1 | 515 | 2,111.50 | Update and review roll-forward report |
| Flynn, Meighan Patricia | Senior Associate | 1/4/2023 | 0.6 | 515 | 309.00 | Call with Sequoia management to discuss report status - team call to prevent redundant calls |
| Flynn, Meighan Patricia | Senior Associate | 1/4/2023 | 0.6 | 515 | 309.00 | Review and update analysis pack schedules for roll-forward period |
| Frederick, Steven Christopher | Associate | 1/4/2023 | 2.3 | 330 | 759.00 | Provide updates to the rollforward analysis |
| Sachdeva, Surbhi | Manager | 1/4/2023 | 3.2 | 675 | 2,160.00 | Apack update and adjustment push through |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Sachdeva, Surbhi | Manager | 1/4/2023 | 0.6 | 675 | 405.00 | Call with Management to walk through updates and questions - team call to prevent redundant calls |
| Sachdeva, Surbhi | Manager | 1/4/2023 | 4.2 | 675 | 2,835.00 | Build up of additional adjustment analysis |
| Shahkarami, Sean | Director | 1/4/2023 | 3.6 | 785 | 2,826.00 | Review updates to changes in Report. |
| Flynn, Meighan Patricia | Senior Associate | 1/5/2023 | 4.3 | 515 | 2,214.50 | Updates and quality review of roll-forward report |
| Flynn, Meighan Patricia | Senior Associate | 1/5/2023 | 0.6 | 515 | 309.00 | Analysis pack updates and quality review |
| Flynn, Meighan Patricia | Senior Associate | 1/5/2023 | 0.6 | 515 | 309.00 | Diligence call with Mr. Darragh regarding cost of goods sold |
| Flynn, Meighan Patricia | Senior Associate | 1/5/2023 | 0.2 | 515 | 103.00 | Review and update analysis pack schedules for roll-forward period |
| Frederick, Steven Christopher | Associate | 1/5/2023 | 2.4 | 330 | 792.00 | Update and quality review report |
| Frederick, Steven Christopher | Associate | 1/5/2023 | 5.8 | 330 | 1,914.00 | Analyzed and reviewed reports |
| Sachdeva, Surbhi | Manager | 1/5/2023 | 2.4 | 675 | 1,620.00 | Updated report and Apack review. update of WC analysis |
| Sachdeva, Surbhi | Manager | 1/5/2023 | 0.6 | 675 | 405.00 | Call with Management to walk-through new adjustment analysis |
| Sachdeva, Surbhi | Manager | 1/5/2023 | 3.2 | 675 | 2,160.00 | External report and Apack |
| Shahkarami, Sean | Director | 1/5/2023 | 2.8 | 785 | 2,198.00 | Updates to COGS adjustment based on feedback from client (Keith Darragh) |
| Shahkarami, Sean | Director | 1/5/2023 | 1.9 | 785 | 1,491.50 | Discussion with client (Keith Darragh) to review and gain feedback on adjustment to COGS methodology. |
| Shahkarami, Sean | Director | 1/5/2023 | 1.3 | 785 | 1,020.50 | Update report based on feedback from client for COGS adjustment. |
| Barenbaum, Glenn P. | Partner | 1/6/2023 | 0.3 | 955 | 286.50 | Review of updated gross margin analysis |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Flynn, Meighan Patricia | Senior Associate | 1/6/2023 | 1.1 | 515 | 566.50 | Update and quality review roll-forward report |
| Sachdeva, Surbhi | Manager | 1/6/2023 | 3.6 | 675 | 2,430.00 | Working capital analysis |
| Sachdeva, Surbhi | Manager | 1/6/2023 | 1.6 | 675 | 1,080.00 | Report review and update |
| Shahkarami, Sean | Director | 1/6/2023 | 2.2 | 785 | 1,727.00 | Finish review of draft report |
| Flynn, Meighan Patricia | Senior Associate | 1/9/2023 | 0.3 | 515 | 154.50 | Quality review of roll-forward analysis pack |
| Flynn, Meighan Patricia | Senior Associate | 1/9/2023 | 0.4 | 515 | 206.00 | Discussion on report status |
| Kolleck, Mathias Adam | Senior Associate | 1/9/2023 | 4.6 | 515 | 2,369.00 | Financial DD Report Review |
| Sachdeva, Surbhi | Manager | 1/9/2023 | 3.3 | 675 | 2,227.50 | Final draft report and apack - qualit check, comments update, and send out |
| Sachdeva, Surbhi | Manager | 1/9/2023 | 0.4 | 675 | 270.00 | Call with Management to discuss product contribution |
| Frederick, Steven Christopher | Associate | 1/10/2023 | 3.6 | 330 | 1,188.00 | Compile updated report |
| Sachdeva, Surbhi | Manager | 1/10/2023 | 0.6 | 675 | 405.00 | Email communication with Management and analysis review |
| Frederick, Steven Christopher | Associate | 1/11/2023 | 2.1 | 330 | 693.00 | Compile updated report |
| Flynn, Meighan Patricia | Senior Associate | 1/12/2023 | 0.4 | 515 | 206.00 | Quality review of roll-forward report |
| Frederick, Steven Christopher | Associate | 1/12/2023 | 6.3 | 330 | 2,079.00 | Review and Analyze the report |
| Flynn, Meighan Patricia | Senior Associate | 1/13/2023 | 0.4 | 515 | 206.00 | Quality review of roll-forward report |
| Flynn, Meighan Patricia | Senior Associate | 1/17/2023 | 0.2 | 515 | 103.00 | Quality review of roll-forward report |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Flynn, Meighan Patricia | Senior Associate | 1/27/2023 | 1.1 | 515 | 566.50 | Roll-forward information request list compilation |
| Flynn, Meighan Patricia | Senior Associate | 1/27/2023 | 4.9 | 515 | 2,523.50 | Roll-forward Dec-22 analysis pack setup |
| Flynn, Meighan Patricia | Senior Associate | 1/27/2023 | 0.2 | 515 | 103.00 | Call with Sequoia Management regarding updated roll-forward analysis |
| Sachdeva, Surbhi | Manager | 1/27/2023 | 2.1 | 675 | 1,417.50 | Dec'22 Roll-forward request list and analysis pack set up and review. |
| Flynn, Meighan Patricia | Senior Associate | 1/30/2023 | 5.9 | 515 | 3,038.50 | Analysis pack roll-forward and set-up |
| Sachdeva, Surbhi | Manager | 1/30/2023 | 1.1 | 675 | 742.50 | Analysis roll-forward information review |
| Flynn, Meighan Patricia | Senior Associate | 1/31/2023 | 3.1 | 515 | 1,596.50 | Analysis pack roll-forward and set-up |
| Flynn, Meighan Patricia | Senior Associate | 1/31/2023 | 1.3 | 515 | 669.50 | Accounts receivable review, analysis and updates |
| Flynn, Meighan Patricia | Senior Associate | 1/31/2023 | 0.9 | 515 | 463.50 | review and analysis of product contribution margin through roll-forward period |
| Flynn, Meighan Patricia | Senior Associate | 1/31/2023 | 2.7 | 515 | 1,390.50 | Review and analysis of revenue through roll-forward period |
| Flynn, Meighan Patricia | Senior Associate | 2/1/2023 | 0.70 | 515 | 360.50 | Review and analysis of payroll detail through roll-forward period (Dec-22) |
| Flynn, Meighan Patricia | Senior Associate | 2/1/2023 | 1.10 | 515 | 566.50 | Review bank statements and update cash proof of revenue through roll-forward period (Dec-22) |
| Flynn, Meighan Patricia | Senior Associate | 2/1/2023 | 1.40 | 515 | 721.00 | Trial balance trend review through Dec-22 (roll-forward period) with a focus on income statement fluctuations and analysis over fluctuations identified |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Flynn, Meighan Patricia | Senior Associate | 2/1/2023 | 1.10 | 515 | 566.50 | Accounts payable agings as of Dec-22 (roll-forward period) review, analysis and updates to databook |
| Flynn, Meighan Patricia | Senior Associate | 2/1/2023 | 1.70 | 515 | 875.50 | Inventory through Dec-22 review, analysis and updates to databook through roll-forward period |
| Flynn, Meighan Patricia | Senior Associate | 2/1/2023 | 0.80 | 515 | 412.00 | Review and update of roll-forward databook for Dec-22 period to ensure calculations and allocations of QoE adjustments are properly updated |
| Sachdeva, Surbhi | Manager | 2/1/2023 | 2.90 | 675 | 1,957.50 | Dec-22 Roll-forward analysis pack updates to QoE and impacted revenue, cost of revenue, and operating expense schedules and subsequent review |
| Flynn, Meighan Patricia | Senior Associate | 2/2/2023 | 2.30 | 515 | 1,184.50 | Review and update of roll-forward databook for Dec-22 period to ensure calculations and allocations of working capital adjustments are properly updated |
| Flynn, Meighan Patricia | Senior Associate | 2/2/2023 | 4.10 | 515 | 2,111.50 | Quality review of databook including QoE and supporting schedules, as well as income statement schedules (revenue, cost of revenue, operating expenses, etc.) |
| Sachdeva, Surbhi | Manager | 2/2/2023 | 3.70 | 675 | 2,497.50 | Review roll-forward databook as of Dec-22 period (specifically, QoE adjustments and impacted schedules) to ensure calculations are properly updated throughout the connected schedules |
| Flynn, Meighan Patricia | Senior Associate | 2/3/2023 | 4.90 | 515 | 2,523.50 | Quality review of databook including QoE and supporting schedules, as well as income statement schedules (revenue, cost of revenue, operating expenses, etc.) |
| Sachdeva, Surbhi | Manager | 2/3/2023 | 5.10 | 675 | 3,442.50 | Review roll-forward databook as of Dec-22 & make updates to QoE analysis as of Dec-22 to |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | incorporate data provided by client |
| Flynn, Meighan Patricia | Senior Associate | 2/6/2023 | 2.40 | 515 | 1,236.00 | Quality review of databook including updates to QoE and supporting schedules, with focus on inventory analysis |
| Flynn, Meighan Patricia | Senior Associate | 2/6/2023 | 1.70 | 515 | 875.50 | Review and update working capital adjustments and schedules through roll-forward period |
| Shahkarami, Sean | Director | 2/6/2023 | 6.30 | 785 | 4,945.50 | Review roll-forward Analysis Pack through December 2022 with a focus on updated QoE and Working Capital / Net Debt schedules |
| Flynn, Meighan Patricia | Senior Associate | 2/7/2023 | 1.40 | 515 | 721.00 | Quality review and update analysis pack based on comments/queries from senior team members |
| Sachdeva, Surbhi | Manager | 2/7/2023 | 3.10 | 675 | 2,092.50 | Quality review of databook including updates to QoE and supporting schedules through Dec-22 |
| Shahkarami, Sean | Director | 2/7/2023 | 3.30 | 785 | 2,590.50 | Investigate the large credit (reserve reversal) in sales return account |
| Shahkarami, Sean | Director | 2/7/2023 | 2.40 | 785 | 1,884.00 | Review changes regarding the reserve reversal and understand technical accounting impacts of the reversal |
| Flynn, Meighan Patricia | Senior Associate | 2/8/2023 | 1.20 | 515 | 618.00 | Quality review and update analysis pack based on comments/queries from senior team members associated with QoE updates |
| Sachdeva, Surbhi | Manager | 2/8/2023 | 2.80 | 675 | 1,890.00 | Update and finalization of QoE roll-forward analysis (through Dec-22) |
| Shahkarami, Sean | Director | 2/8/2023 | 4.20 | 785 | 3,297.00 | Quality control review of analysis pack with focus on the QofE, Working capital, and net debt analyses |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Sachdeva, Surbhi | Manager | 2/9/2023 | 1.70 | 675 | 1,147.50 | Prepare working capital and net debt roll-forward analysis through Dec-22 |
| Sachdeva, Surbhi | Manager | 2/9/2023 | 2.10 | 675 | 1,417.50 | Review and update of working capital and net debt analysis per review comments |
| Shahkarami, Sean | Director | 2/9/2023 | 0.70 | 785 | 549.50 | Call with client (Keith Darragh) to discuss reserve reversal and the impact on the financials |
| Barenbaum, Glenn P. | Partner | 2/10/2023 | 1.10 | 955 | 1,050.50 | Review of working capital and net debt roll-forward analysis and provide comments to team |
| Sachdeva, Surbhi | Manager | 2/10/2023 | 1.10 | 675 | 742.50 | QoE analysis updates per senior team members review, and distribution of analysis |
| Shahkarami, Sean | Director | 2/10/2023 | 2.30 | 785 | 1,805.50 | Walk PPMD through APACK and prepare for delivery to the client |
| Flynn, Meighan Patricia | Senior Associate | 2/14/2023 | 1.70 | 515 | 875.50 | Review of QoE analysis, and supporting schedules in reference to the PwC agenda. |
| Flynn, Meighan Patricia | Senior Associate | 2/14/2023 | 2.60 | 515 | 1,339.00 | Prepare responses to Buyer agenda provided in preparation for Buyer call with PwC. |
| Flynn, Meighan Patricia | Senior Associate | 2/14/2023 | 0.60 | 515 | 309.00 | Call to discuss Dec-22 roll-forward analysis with Management (Mr. Darragh & Mr. Ronan) & PJT. Team meeting to prevent repetitive discussion |
| Sachdeva, Surbhi | Manager | 2/14/2023 | 4.10 | 675 | 2,767.50 | Buyer call agenda response and update of analysis per feedback on management call (w/ Mr. Darragh & Mr. Ronan) |
| Sachdeva, Surbhi | Manager | 2/14/2023 | 0.60 | 675 | 405.00 | Meeting with Management (Mr. Darragh & Mr. Ronan) & PJT to discuss analysis delivered - team meeting to prevent repetitive discussion |
| Shahkarami, Sean | Director | 2/14/2023 | 2.80 | 785 | 2,198.00 | Read and take notes on agenda from potential buyer to prepare for Buyer call |
| Shahkarami, Sean | Director | 2/14/2023 | 0.60 | 785 | 471.00 | Call to discuss rollforward results with Management (Mr. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | Darragh & Mr. Ronan) & PJT, and gather feedback - team call to prevent redundant calls. |
| Flynn, Meighan Patricia | Senior Associate | 2/15/2023 | 0.60 | 515 | 309.00 | Prepare responses to Buyer agenda provided in preparation for Buyer call |
| Sachdeva, Surbhi | Manager | 2/15/2023 | 2.10 | 675 | 1,417.50 | Sell-side discussion preparation work including review of agenda and draft responses |
| Shahkarami, Sean | Director | 2/15/2023 | 4.10 | 785 | 3,218.50 | Review agenda from PwC to prepare for Buyer call. |
| Barenbaum, Glenn P. | Partner | 2/16/2023 | 0.90 | 955 | 859.50 | Prepare and investigate questions from PwC call on Friday 17th |
| Flynn, Meighan Patricia | Senior Associate | 2/16/2023 | 0.90 | 515 | 463.50 | Preparation for buy side call including review of agenda, draft responses & compile questions for senior team members |
| Sachdeva, Surbhi | Manager | 2/16/2023 | 0.70 | 675 | 472.50 | Sell-side call with PwC re: operational diligence preparations, including conversations with Ops team (Alex Alekseev & Luisa Blessing) regarding queries received |
| Sachdeva, Surbhi | Manager | 2/16/2023 | 0.70 | 675 | 472.50 | Sell-side call with PwC operational dilgence preparation work. |
| Sachdeva, Surbhi | Manager | 2/16/2023 | 4.60 | 675 | 3,105.00 | Review of agenda and draft responses, ensuring responses were correct/appropriate. |
| Shahkarami, Sean | Director | 2/16/2023 | 2.20 | 785 | 1,727.00 | Review draft working capital analysis for Roll-Forward period (through Dec-22). |
| Shahkarami, Sean | Director | 2/16/2023 | 1.10 | 785 | 863.50 | Call with Management (Keith Darragh) to discuss/prepare for buyer call with PwC. |
| Shahkarami, Sean | Director | 2/16/2023 | 4.60 | 785 | 3,611.00 | Input/prepare responses to agenda questions from PwC in preparation for Buyer call. |
| Shahkarami, Sean | Director | 2/16/2023 | 1.90 | 785 | 1,491.50 | Review draft net debt analysis for Roll-Forward period. |
| Barenbaum, Glenn P. | Partner | 2/17/2023 | 1.60 | 955 | 1,528.00 | Call with PwC, Management (Keith Darragh & Terrance Ronan), & PJT to discuss |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | Business Advisory Survives GT report - team attendance to prevent repetitive discussion |
| Flynn, Meighan Patricia | Senior Associate | 2/17/2023 | 1.60 | 515 | 824.00 | Buyer call with PwC, PJT and Sequoia management - team attendance to prevent repetitive discussion |
| Flynn, Meighan Patricia | Senior Associate | 2/17/2023 | 0.80 | 515 | 412.00 | Preparation for buyer call with PwC (i.e., review of agenda and draft responses / analysis), Management (Mr. Darragh & Mr. Ronan), and PJT |
| Sachdeva, Surbhi | Manager | 2/17/2023 | 0.40 | 675 | 270.00 | Meeting with Management (Terrance Ronan and Keith Darragh) to discuss shared responses for sell-side discussion |
| Sachdeva, Surbhi | Manager | 2/17/2023 | 1.60 | 675 | 1,080.00 | Sell side call with PwC, Management (Keith Darragh & Terrance Ronan), & PJT to discuss GT databook - team attendance to prevent repetitive discussion |
| Shahkarami, Sean | Director | 2/17/2023 | 1.90 | 785 | 1,491.50 | Review changes to rollforward analysis based on questions from buyer call |
| Shahkarami, Sean | Director | 2/17/2023 | 1.60 | 785 | 1,256.00 | Lead Buyer call with PwC, PJT & Management (Keith Darragh / Terrance Ronan) - team attendance to prevent repetitive discussion |
| Shahkarami, Sean | Director | 2/17/2023 | 2.80 | 785 | 2,198.00 | Distribute responses/prepare team for Buyer call with PwC. |
| Shahkarami, Sean | Director | 2/20/2023 | 2.20 | 785 | 1,727.00 | Give review feedback and comments, and tasks on net debt analysis. |
| Shahkarami, Sean | Director | 2/21/2023 | 2.60 | 785 | 2,041.00 | Reconcile balance sheet accounts to working capital analysis. |
| Shahkarami, Sean | Director | 2/22/2023 | 4.20 | 785 | 3,297.00 | Review agenda for Buyer call from prospective buyer and prepare responses. |
| Flynn, Meighan Patricia | Senior Associate | 2/23/2023 | 4.90 | 515 | 2,523.50 | Internal review, quality check and preparation for buyer call |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Sachdeva, Surbhi | Manager | 2/23/2023 | 4.10 | 675 | 2,767.50 | Work through A&M sell-side agenda and draft responses to queries |
| Shahkarami, Sean | Director | 2/23/2023 | 3.10 | 785 | 2,433.50 | Prepare and study responses to the A&M agenda for upcoming Buyer call. |
| Flynn, Meighan Patricia | Senior Associate | 2/24/2023 | 0.60 | 515 | 309.00 | Preparation for buyer call with PwC. |
| Flynn, Meighan Patricia | Senior Associate | 2/24/2023 | 1.30 | 515 | 669.50 | Quality review and update working capital analysis basis comments from senior team members |
| Sachdeva, Surbhi | Manager | 2/24/2023 | 2.10 | 675 | 1,417.50 | Review and update of the working capital and net debt analysis per feedback from Management (Mr. Darragh) |
| Shahkarami, Sean | Director | 2/24/2023 | 3.30 | 785 | 2,590.50 | Gather, review, edit, and synthesize team's responses to A&M agenda for upcoming Buyer call. |
| Barenbaum, Glenn P. | Partner | 2/27/2023 | 1.60 | 955 | 1,528.00 | Prospective buyer business advisory services call including PJT team & Management representatives (Mr. Darragh / Mr. Ronan) - team call to prevent redundant calls. |
| Flynn, Meighan Patricia | Senior Associate | 2/27/2023 | 1.10 | 515 | 566.50 | Quality review and update working capital and net debt analysis basis comments from senior team members |
| Flynn, Meighan Patricia | Senior Associate | 2/27/2023 | 0.40 | 515 | 206.00 | Review and preparation for A&M buyer call  - team call to prevent redundant calls. |
| Flynn, Meighan Patricia | Senior Associate | 2/27/2023 | 1.60 | 515 | 824.00 | Diligence buyer call with A&M, Management (Keith Darragh & Terrance Ronan) - team call to prevent redundant calls. |
| Sachdeva, Surbhi | Manager | 2/27/2023 | 1.60 | 675 | 1,080.00 | Sell-side A&M call with Management (Keith Darragh & Terrance Ronan) and potential buyer buy-side diligence team - team call to prevent redundant calls. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Sachdeva, Surbhi | Manager | 2/27/2023 | 2.40 | 675 | 1,620.00 | Review and update of the working capital and net debt analysis per feedback from Management |
| Shahkarami, Sean | Director | 2/27/2023 | 2.70 | 785 | 2,119.50 | Detail review of purchase price variance and overhead entangled in inventory for working capital |
| Shahkarami, Sean | Director | 2/28/2023 | 3.60 | 785 | 2,826.00 | Detail review of all working capital adjustments - provide comments/changes. |
| Sachdeva, Surbhi | Manager | 3/1/2023 | 1.60 | 675 | 1,080.00 | Internal quality review and release of working capital and net debt and debt-like items analysis |
| Shahkarami, Sean | Director | 3/1/2023 | 3.10 | 785 | 2,433.50 | Review working capital presentation to Mr. Darragh and PJT and provide comments to team members |
| Flynn, Meighan Patricia | Senior Associate | 3/1/2023 | 0.90 | 515 | 463.50 | Quality review and update working capital analysis and debt/debt-like items based on comments from senior team members |
| Sachdeva, Surbhi | Manager | 3/2/2023 | 0.60 | 675 | 405.00 | Call for working capital and net debt walk through with Keith Darragh and PJT and receive initial comments - team call to prevent redundant calls |
| Sachdeva, Surbhi | Manager | 3/2/2023 | 0.60 | 675 | 405.00 | Review and update of working capital and net debt analysis basis discussion with Mr. Darragh |
| Flynn, Meighan Patricia | Senior Associate | 3/2/2023 | 0.60 | 515 | 309.00 | Call with Mr. Darragh and PJT to discuss working capital and debt/debt-like items analysis and discuss initial comments/concerns - team call to prevent redundant calls |
| Flynn, Meighan Patricia | Senior Associate | 3/2/2023 | 1.60 | 515 | 824.00 | Updates to working capital and net debt analysis including updated bridge to PJT working capital and purchase agreement per discussion with Mr. Darragh |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Shahkarami, Sean | Director | 3/2/2023 | 0.60 | 785 | 471.00 | Call with Keith Darragh and PJT to discuss working capital and net debt/debt-like items analysis - team call to prevent redundant calls |
| Shahkarami, Sean | Director | 3/2/2023 | 2.90 | 785 | 2,276.50 | Obtain and read the purchase agreement terms and accounting principles from PJT analysis, make notes on differences from GT analysis. |
| Shahkarami, Sean | Director | 3/2/2023 | 3.80 | 785 | 2,983.00 | Update working capital and net debt analysis per discussion with Mr. Darragh and the purchase agreement terms per PJT |
| Shahkarami, Sean | Director | 3/2/2023 | 1.30 | 785 | 1,020.50 | Review support provided by Keith Darragh for the gross up to accounts receivable |
| Sachdeva, Surbhi | Manager | 3/3/2023 | 1.20 | 675 | 810.00 | Review and update of working capital bridge to PJT purchase agreement analysis utilizing Mr. Darragh provided information |
| Flynn, Meighan Patricia | Senior Associate | 3/3/2023 | 2.70 | 515 | 1,390.50 | Update working capital analysis, including bridge to purchase agreement working capital, and net debt |
| Sachdeva, Surbhi | Manager | 3/6/2023 | 2.40 | 675 | 1,620.00 | Update and review working capital analysis and bridge to purchase agreement per additional information provided by Keith Darragh |
| Flynn, Meighan Patricia | Senior Associate | 3/6/2023 | 0.90 | 515 | 463.50 | Review and update working capital analysis and bridge GT analysis to purchase agreement working capital |
| Sachdeva, Surbhi | Manager | 3/7/2023 | 1.10 | 675 | 742.50 | Review and update of working capital and net debt analysis with senior leads to discuss the new adjustment for accounts receivable rebalancing and bridge to purchase agreement |
| Flynn, Meighan Patricia | Senior Associate | 3/7/2023 | 2.10 | 515 | 1,081.50 | Updates to working capital and net debt/debt-like items analysis, working capital bridge  to |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | purchase agreement & prepare external copy for distribution |
| Sachdeva, Surbhi | Manager | 3/7/2023 | 0.90 | 675 | 607.50 | Call with Mr. Darragh to discuss working capital and net debt analysis, namely differences between GT analysis and PJT purchase agreement. team call to prevent redundant calls |
| Flynn, Meighan Patricia | Senior Associate | 3/7/2023 | 0.90 | 515 | 463.50 | Call with Mr. Darragh to discuss working capital and net debt analysis and address differences in GT analysis from purchase agreement - team call to prevent redundant calls |
| Shahkarami, Sean | Director | 3/7/2023 | 0.90 | 785 | 706.50 | Call with client to describe key differences between GT analysis and purchase agreement. Call with Keith Darragh, Glenn Barenbaum, Surbhi Sachdeva and Meighan Flynn. Team call to prevent redundant calls. |
| Shahkarami, Sean | Director | 3/8/2023 | 2.80 | 785 | 2,198.00 | Review of purchase agreement and purchase agreement exhibits; provide comments to team for preparation of updated working capital bridge |
| Shahkarami, Sean | Director | 3/8/2023 | 3.40 | 785 | 2,669.00 | Review and update bridge schedule to illustrate differences between purchase agreement and GT working capital analysis. |
| Shahkarami, Sean | Director | 3/8/2023 | 1.30 | 785 | 1,020.50 | Provide revisions to GT working capital and net debt/debt-like items analysis per discussion with Mr. Darragh and PJT and updated financials provided |
| Flynn, Meighan Patricia | Senior Associate | 3/8/2023 | 1.30 | 515 | 669.50 | Review updated financials provided and begin updates to working capital and net analysis / bridge to purchase agreement basis updated information provided |
| Sachdeva, Surbhi | Manager | 3/9/2023 | 1.60 | 675 | 1,080.00 | Review and update of the working capital analysis and bridge from adjusted working |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | capital to purchase agreement working capital basis the information/data provided by Mr. Keith Darragh on 3/8 |
| Shahkarami, Sean | Director | 3/9/2023 | 0.60 | 785 | 471.00 | Call with Mr. Darragh and PJT banking advisors to discuss revised purchase agreements and GT bridge to revised purchase agreement working capital schedule. Team call to prevent redundant calls. |
| Shahkarami, Sean | Director | 3/9/2023 | 3.60 | 785 | 2,826.00 | Revise the workign capital aalysis bridge schedule to illustrate differences from GT working capital analysis to the revised purchase agreement working capital exhibit. |
| Shahkarami, Sean | Director | 3/9/2023 | 3.10 | 785 | 2,433.50 | Review the revised purchase agreement and working capital exhibit in purchase agreement and provide comments to the team |
| Flynn, Meighan Patricia | Senior Associate | 3/9/2023 | 6.90 | 515 | 3,553.50 | Review and update working capital and net debt analysis, including bridge to updated financials & purchase agreement based on comments from senior team members |
| Flynn, Meighan Patricia | Senior Associate | 3/9/2023 | 0.60 | 515 | 309.00 | Call with Keith Darragh & PJT to discuss working capital / net debt analysis & bridge to PJT purchase agreement analysis - team call to prevent redundant calls |
| Sachdeva, Surbhi | Manager | 3/9/2023 | 0.60 | 675 | 405.00 | Call with Keith Darragh and bankers to walk through the updated working capital and net debt analysis and purchase agreement bridge - team call to avoid redundant calls |
| Sachdeva, Surbhi | Manager | 3/9/2023 | 0.40 | 675 | 270.00 | Update net debt for quantified severance and working capital for narrative/row naming convention, create external book |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | and send out to client post call with Mr. Darragh and bankers |
| Flynn, Meighan Patricia | Senior Associate | 3/10/2023 | 6.00 | 515 | 3,090.00 | Review, update, and quality check databook (including working capital / net debt analysis updates) for preparation of external distribution |
| Barenbaum, Glenn P. | Partner | 3/10/2023 | 0.50 | 955 | 477.50 | Conference call with Terrence Ronan and Keith Durragh regarding the elements on the net working capital analysis. Present from GT was Barenbaum and Sean Shahkarami |
| **TOTAL** | | | **366.50** | | **$232,755.00** | |

*__Business Advisory Services: Strategic Operations__*

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Alekseev, Alexey | Experienced Manager | 2/16/2023 | 1.0 | $675.00 | $675.00 | Final review of standalone adjustments information for PwC Questions (Alex, Luisa) |
| Alekseev, Alexey | Experienced Manager | 2/16/2023 | 0.7 | $675.00 | $472.50 | Discussed PwC questions with FDD. Participants: Luisa and Surbhi. |
| Blessing, Luisa | Senior Associate II | 2/16/2023 | 0.8 | $515.00 | $412.00 | Review PwC Financial Discussion Pack and Questions: preparation work including review of agenda and draft responses, ensuring responses were correct/appropriate |
| Blessing, Luisa | Senior Associate II | 2/16/2023 | 0.7 | $515.00 | $360.50 | FDD and opts team coordination of PwC Financial Discussion Pack. Other Participants: Sachdeva, Surbhi and Alekseev, Alex |
| Blessing, Luisa | Senior Associate II | 2/16/2023 | 0.6 | $515.00 | $309.00 | Write up of answers for the operational questions and standalone cost analysis of the PwC Financial Discussion Pack. |
| Blessing, Luisa | Senior Associate II | 2/16/2023 | 0.7 | $515.00 | $360.50 | Review client provided documentation pertaining to PwC questions: allocation methodology tie out details and 2023 budget for all functional areas such as S&P and G&A. |
| Blessing, Luisa | Senior Associate II | 2/16/2023 | 1.0 | $515.00 | $515.00 | Final review of standalone adjustments information for PwC Questions with Alex Alekseev |
| Alekseev, Alexey | Experienced Manager | 2/17/2023 | 1.5 | $675.00 | $1,012.50 | Meeting with 26 other participants: Pwc and buy side team, Investment bank team, GT Operations and FDD team and Purdue Pharma team to discuss PwC Financial Discussion Pack  and discuss any outstanding questions. |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | Attended meeting to respond to PwC Q&A. |
| Blessing, Luisa | Senior Associate II | 2/17/2023 | 1.5 | $515.00 | $772.50 | "Meeting with 26 other participants: Pwc and buy side team, Investment bank team, GT Operations and FDD team and Purdue Pharma team to discuss PwC Financial Discussion Pack and discuss any outstanding questions. Attended meeting support and provide feedback for the standalone ops cost analysis" |
| Alekseev, Alexey | Experienced Manager | 2/24/2023 | 0.5 | $675.00 | $337.50 | Call with Luisa to prepare answers for A&M session on 2/27 by reviewing the standalone adjustments information. |
| Blessing, Luisa | Senior Associate II | 2/24/2023 | 0.5 | $515.00 | $257.50 | Final review of standalone adjustments information for A&M Questions. Participants: Alex and Luisa |
| Blessing, Luisa | Senior Associate II | 2/24/2023 | 1.1 | $515.00 | $566.50 | Write up of answers for the operational questions and standalone cost analysis of the A&M Financial Discussion Pack. |
| Blessing, Luisa | Senior Associate II | 2/24/2023 | 0.7 | $515.00 | $360.50 | Review A&M Quality of Earnings Discussion Agenda and Questions: preparation work including review of agenda and draft responses, ensuring responses were correct/appropriate |
| Alekseev, Alexey | Experienced Manager | 2/27/2023 | 0.5 | $675.00 | $337.50 | Discussion with A&M, GT Ops and FDD, IB and client of the A&M Quality of Earnings Discussion Agenda. Left early after IDA questions were covered. |
| Alekseev, Alexey | Experienced Manager | 2/27/2023 | 0.5 | $675.00 | $337.50 | Discussion with A&M, GT Ops and FDD, IB and client of the A&M Quality of Earnings Discussion Agenda. Left early |

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| | | | | | | after IDA questions were covered. |
| Alekseev, Alexey | Experienced Manager | 2/27/2023 | 0.5 | $675.00 | $337.50 | A&M call preparation work including review of final report and questions from Buyers side team. |
| Blessing, Luisa | Senior Associate II | 2/27/2023 | 1.6 | $515.00 | $824.00 | Discussion with A&M, GT Ops and FDD, IB and client of the A&M Quality of Earnings Discussion Agenda. Attended meeting to support GT Ops standalone cost model questions. |
| **TOTAL** | | | **13.9** | | **$7,910.50** | |

*__Tax Structuring Services -- Exit Structure Analysis__*

| Employee Name | Title | Date of Service | Hours Charged | Hourly Rate | Total Compensation | Detailed Description |
|---|---|---|---|---|---|---|
| Angstadt, Brian | Managing Director | 2/9/2023 | 0.50 | $765.00 | $382.50 | Exit Structure Analysis - Evaluating transfer taxes on potential sale transaction, including Switzerland taxes |
| Angstadt, Brian | Managing Director | 2/10/2023 | 0.50 | $765.00 | $382.50 | Exit Structure Analysis - Evaluating transfer taxes on potential sale transaction, including Switzerland taxes |
| Angstadt, Brian | Managing Director | 2/12/2023 | 0.50 | $765.00 | $382.50 | Exit Structure Analysis - Evaluating transfer taxes on potential sale transaction, including Switzerland taxes |
| Baumann Stephan | Partner | 2/13/2023 | 1.20 | $720.00 | $864.00 | Exit Structure Analysis - Review and comment on Asset Purchase Agreement (APA) |
| Ruggli Philippe | Manager | 2/13/2023 | 2.00 | $540.00 | $1,080.00 | Exit Structure Analysis - Review and comment on Asset Purchase Agreement (APA) |
| Baumann Stephan | Partner | 2/15/2023 | 1.00 | $720.00 | $720.00 | Exit Structure Analysis - Review and comment on Asset Purchase Agreement (APA) |
| Ruggli Philippe | Manager | 2/15/2023 | 4.30 | $540.00 | $2,322.00 | Exit Structure Analysis - Review and comment on Asset Purchase Agreement (APA) |
| TOTAL | | | 10.0 | | $6,133.50 | |

**<u>EXHIBIT F</u>**

**STAFFING PLAN**

Grant Thornton discussed consultant staffing with the Debtors throughout the cases and has supplemented and adjusted its team as necessary to meet the needs of the Debtors under the changing circumstances of these cases.

## EXHIBIT G

**SUMMARY OF OUT OF POCKET EXPENSES AND SUPPORTING INVOICES**

| CATEGORY | AMOUNT |
|---|---|
| External Legal Counsel (See Attached Supporting Invoices)* | $26,793.30 |
| **TOTAL** | **$26,793.30** |



Sklar Kirsh, LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 845-6416 MAIN
accounting@sklarkirsh.com
Tax I.D. 37-1711630

Grant Thornton, LLP
Attn: Chris Stathopoulos
171 N. Clark Street, Suite 200
Chicago, IL 60601
chris.stathopoulos@us.gt.com; Liz.Piechnik@us.gt.com

February 16, 2023

Invoice #54880

Due Upon Receipt

For Professional Services Rendered Through January 31, 2023

Matter: Purdue Pharma - Legal Services

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 01/03/2023 | ASB | Prepared draft of 15th Monthly Fee Statement. | 2.60 | $375.00 | $975.00 |
| | KKF | Drafted email communication to H. Bellovin and M. Caiazzo re: status of invoices for 15th MFS submission. | 0.10 | $670.00 | $67.00 |
| 01/09/2023 | ASB | Revised 15th Monthly Fee Statement for signature and filing. | 0.70 | $375.00 | $262.50 |
| | KKF | Drafted email to R. Werth and C. Stathopoulos re: supplemental disclosures for employment (0.1). Revised 15th MFS (0.3). | 0.40 | $670.00 | $268.00 |
| 01/10/2023 | KKF | Reviewed final 15th MFS to send to D. Consla for filing and service. | 0.20 | $670.00 | $134.00 |
| 01/12/2023 | KKF | Drafted email to Grant Thornton divisions re: timing and deadlines for preparing 16th MFS and next interim fee application. | 0.20 | $670.00 | $134.00 |
| 01/13/2023 | KKF | Exchanged emails with C. McDonald re: status of 14th and 15th MFS (0.1). Drafted emails to T. Nobis and P. Schwartzberger re: 15th MFS filing and LEDES (0.1). Exchanged emails with D. Consla re: filing of 15th MFS and deadlines for next interim fee application (0.1). | 0.30 | $670.00 | $201.00 |
| 01/20/2023 | KKF | Reviewed initial disclosure information and followed up research re: Noramco purchase of Coventry assets (0.5). Telephone conference with S. Cho and J. Anderson re: disclosure information for Rhodes Technology (0.3). | 0.80 | $670.00 | $536.00 |
| 01/23/2023 | ISL | Reviewed details of nondisclosure of potential conflict and way to address it (0.2). Telephone conference with K. Frazier re: Rhodes Technologies disclosure issues (0.2). Telephone conference with clients regarding same (0.4). | 0.80 | $750.00 | $600.00 |
| | KKF | Telephone conference with I. Landsberg re: background and issues for supplemental disclosure re: Rhodes Technologies (0.2). Follow-up telephone conference with C. Stathopoulos, I. Landsberg and J. Anderson re: additional background information re: relationship with Rhodes Technology and disclosure of same (0.4). Reviewed engagement documentation and Coventry sale timeline for disclosure information (0.7). Drafted email to S. Cho re: clarification on services provided in connection with Noramco client (0.4). | 1.70 | $670.00 | $1,139.00 |

Grant Thornton LLP
February 16, 2023
Invoice # 54880

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 01/24/2023 | ASB | Assembled documents and begin drafting 5th Interim Fee Application. | 2.00 | $375.00 | $750.00 |
| | KKF | Exchanged correspondence with A. Bender and GT team re: final bills for preparation of 16th MFS. | 0.20 | $670.00 | $134.00 |
| 01/25/2023 | ASB | Revised 16th Monthly Fee Application for signature (.8); Began drafting 5th Interim Fee Application (3.0). | 3.80 | $375.00 | $1,425.00 |
| | KKF | Revised 4th Werth Statement of Disinterestedness with updated disclosure on Noramco (0.6).  Drafted email to S. Cho and J. Anderson re: same (0.1).  Revised 16th MFS (0.2).  Exchanged correspondence with A. Xi re: final invoice for 16th MFS (0.1).  Drafted email to R. Werth re: final review and signature for 16th MFS (0.1). | 1.10 | $670.00 | $737.00 |
| 01/26/2023 | ASB | Drafted 5th Interim Fee Application. | 4.00 | $375.00 | $1,500.00 |
| | KKF | Revised 4th Werth Statement of Disinterestedness per additional comments from J. Anderson and S. Cho (0.3).  Drafted email to R. Werth to coordinate review and signature for revised Statement of Disinterestedness (0.1). | 0.40 | $670.00 | $268.00 |
| 01/31/2023 | ASB | Finalized 16th Monthly Fee Statement for signature. | 0.20 | $375.00 | $75.00 |
| | KKF | Exchanged emails with R. Werth re: updated disclosures, 16th MFS and signatures on same (0.2).  Prepared email to D. Consla re: redline of disclosure schedule and related declaration and filing for 16th MFS (0.3). | 0.50 | $670.00 | $335.00 |
| | | For professional services rendered | 20.0 hrs | | $9,540.50 |

## Matter: Purdue Pharma - Expenses

| Date | Description | Amount |
|------|-------------|--------|
| 01/04/2023 | Pacer | $35.10 |
| | Total Charges | $35.10 |
| | SUBTOTAL | $9,575.60 |
| | Total amount of this bill | $9,575.60 |
| | Previous balance | $3,532.50 |
| 02/03/2023 | Payment - Thank you, Check # 001099005 | ($3,532.50) |
| | Total Payments and Adjustments | ($3,532.50) |
| | Balance due upon receipt | $9,575.60 |

Grant Thornton LLP
February 16, 2023
Invoice # 54880

## Timekeeper Summary

| Name | Initials | Title | Hours | Rate | Amount |
|------|----------|-------|-------|------|--------|
| Ian S. Landsberg | ISL | Partner | 0.80 | $750.00 | $600.00 |
| Kelly K. Frazier | KKF | Of Counsel | 5.90 | $670.00 | $3,953.00 |
| Amy S. Bender | ASB | Paralegal | 13.30 | $375.00 | $4,987.50 |

It is a pleasure working with you.  We appreciate your business.



SKLAR
KIRSH

Sklar Kirsh, LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 845-6416 MAIN
accounting@sklarkirsh.com
Tax I.D. 37-1711630

Grant Thornton, LLP
Attn: Chris Stathopoulos
171 N. Clark Street, Suite 200
Chicago, IL  60601
chris.stathopoulos@us.gt.com; Liz.Piechnik@us.gt.com

March 9, 2023

Invoice #55465

Due Upon Receipt

For Professional Services Rendered Through February 28, 2023

---

## Matter: Purdue Pharma - Legal Services

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 02/01/2023 | ASB | Prepared and updated 5th Interim Fee App (.6); Prepared chart of all professional who billed time to the matter (3.1); Reviewed and updated Werth certification (.6). | 4.30 | $375.00 | $1,612.50 |
| | KKF | In-person meeting with A. Bender re questions to complete draft of 5th Interim Fee Application (0.2).  Edited draft of 5th Interim Fee Application and related exhibits (0.6). | 0.80 | $670.00 | $536.00 |
| 02/02/2023 | ASB | Finalized Werth Certification and Exhibit A to 5th Interim Fee Application (.8); Continued to prepare chart of all GT timekeepers who have billed time to the matter (1.3). | 2.10 | $375.00 | $787.50 |
| | KKF | Finished revising 5th Interim Fee Application (1.0).  Drafted email to Grant Thornton teams re open issues on 5th Interim Fee Application (0.3).  Telephone conference with G. Barenbaum re revisions to standard rates exhibit (0.1).  Drafted emails to T. Nobis and P. Schwartzberger re 16th monthly fee statement and related LEDES (0.1).  Exchanged correspondence with C. McDonald re payment processing for 15th MFS and status of 16th MFS (0.1).  Revised Werth Certificate, including updated disclosure on time spent reviewing confidentiality provisions in time records (0.7).  Drafted email to R. Werth re updated certification and notable changes thereto for his review (0.2). | 2.50 | $670.00 | $1,675.00 |
| 02/07/2023 | ASB | Finalized Fifth Interim fee application for signature. | 0.80 | $375.00 | $300.00 |
| | KKF | Reviewed finalized 5th interim fee application and forwarded same to R. Werth with correspondence re: final changes and signature to same. | 0.20 | $670.00 | $134.00 |
| 02/08/2023 | ASB | Prepared final 5th Interim Fee application for filing and service. | 0.30 | $375.00 | $112.50 |
| | KKF | Exchanged correspondence with D. Consla and M. Giddens re: filing and hearing on 5th interim fee application. | 0.10 | $670.00 | $67.00 |
| 02/13/2023 | KKF | Reviewed docket for status of fee application filing and exchanged emails with D. Consla and M. Giddens to coordinate filing of same. | 0.20 | $670.00 | $134.00 |

Grant Thornton LLP

March 9, 2023

Invoice # 55465

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 02/14/2023 | KKF | Drafted email to GT team members re: deadline for the 17th MFS and process for disclosure of new, 2023 SOW for ordinary course business services (0.2).  Drafted emails to A. Bender re: updates on information to include in the 17th MFS from client (0.1). | 0.30 | $670.00 | $201.00 |
| 02/21/2023 | KKF | Reviewed email from C. McDonald re outstanding payments and timing and drafted email to Grant Thornton team re same to review and verify in connection with pending interim fee application. | 0.20 | $670.00 | $134.00 |
| 02/22/2023 | ASB | Assembled documents and backup for preparation of 17th Monthly Fee Statement. | 0.40 | $375.00 | $150.00 |
| 02/27/2023 | KKF | Exchanged emails with J. Neeley re: procedures for entering into OCB SOWs (0.2).  Drafted email to B. Angstandt re: coordination for signatory for 17th MFS (0,1). | 0.30 | $670.00 | $201.00 |
| 02/28/2023 | ASB | Finalized 17th Monthly Fee Statement for signature and filing. | 0.30 | $375.00 | $112.50 |
|  | KKF | Reviewed and revised 17th MFS (0.3).  Drafted email to K. Somers re: Davis Polk review of 17th MFS for confidentiality (0.1). | 0.40 | $670.00 | $268.00 |

| | | | | | |
|---|---|---|---|---|---|
| | For professional services rendered | | 13.2 hrs | | $6,425.00 |

SUBTOTAL                                                                                $6,425.00

| | | |
|---|---|---|
| Total amount of this bill | | $6,425.00 |
| Previous balance | | $9,575.60 |
| Total Payments and Adjustments | | $0.00 |
| Balance due upon receipt | | $16,000.60 |

## Timekeeper Summary

| Name | Initials | Title | Hours | Rate | Amount |
|------|----------|-------|-------|------|--------|
| Kelly K. Frazier | KKF | Of Counsel | 5.00 | $670.00 | $3,350.00 |
| Amy S. Bender | ASB | Paralegal | 8.20 | $375.00 | $3,075.00 |

It is a pleasure working with you.  We appreciate your business.



Sklar Kirsh, LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 845-6416 MAIN
accounting@sklarkirsh.com
Tax I.D. 37-1711630

Grant Thornton, LLP
Attn: Chris Stathopoulos
171 N. Clark Street, Suite 200
Chicago, IL  60601
chris.stathopoulos@us.gt.com; Liz.Piechnik@us.gt.com

April 12, 2023

Invoice #56053

Due Upon Receipt

For Professional Services Rendered Through March 31, 2023

---

## Matter: Purdue Pharma - Legal Services

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 03/02/2023 | KKF | Exchanged emails with K. Somers to request and coordinate filing of 17th MFS with Davis Polk. | 0.10 | $670.00 | $67.00 |
| 03/03/2023 | KKF | Drafted emails to T. Nobis, P. Schwartzberger and C. McDonald re: filing of 17th MFS and related LEDES files. | 0.10 | $670.00 | $67.00 |
| 03/07/2023 | ISL | Review and address fee examiner comments and response thereto. | 0.20 | $750.00 | $150.00 |
| | KKF | Reviewed fee examiner letter objection to 5th Interim Fee Application (0.1).  Drafted email to Grant Thornton teams to address issues in letter (0.2). | 0.30 | $670.00 | $201.00 |
| 03/08/2023 | KKF | Telephone conference with G. Barenbaum re: detailed time entries and proposed settlement options regarding 5th Interim Fee Application (0.2).  Exchanged correspondence with C. Robertson and K. Somers re: confidentiality issues with updated time entries (0.1). | 0.30 | $670.00 | $201.00 |
| 03/09/2023 | KKF | Telephone conference with D. Klauder re: fee examiner issues with 5th Interim Fee Application. | 0.20 | $670.00 | $134.00 |
| 03/10/2023 | ISL | Review fee examiner analysis and cost to fight and additional fees unlikely recoverable. | 0.40 | $750.00 | $300.00 |
| | KKF | Reviewed and responded to D. Klauder re: resolution of issues in 5th interim fee application (0.1).  Communicated with R. Werth and G. Barenbaum re: same and authority to settle (0.3). | 0.40 | $670.00 | $268.00 |
| 03/13/2023 | KKF | Telephone conference with C. Stathopoulos re: status of case and open issues on retention and fee applications (0.2).  Exchanged emails with A. Bender and GT teams re: invoices for February time (0.1). | 0.30 | $670.00 | $201.00 |
| 03/14/2023 | KKF | Reviewed and responded to email from A. Xi re: new statement of work for Global Mobility Services and court approval for same. | 0.20 | $670.00 | $134.00 |
| 03/15/2023 | KKF | Drafted supplemental declaration for tax compliance and GMS compliance ordinary course services. | 2.10 | $670.00 | $1,407.00 |

Grant Thornton LLP
April 12, 2023
Invoice # 56053

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 03/17/2023 | KKF | Reviewed docket for objections re: 17th MFS (0.1).  Drafted email to C. McDonald re: no objections to 17th MFS and status of payment thereof (0.1).  Revised Supplemental Werth Declaration re: new SOWs for ordinary course of business tax compliance and GMS compliance (0.2).  Drafted emails to R. Werth, J. Neeley and K. Somer re: filing supplemental declaration (0.2). | 0.60 | $670.00 | $402.00 |
| 03/20/2023 | KKF | Prepared for hearing (1.1).  Reviewed order approving fee application per A. Schwartz request for final signoff (0.3). | 1.40 | $670.00 | $938.00 |
| 03/21/2023 | ASB | Assembled invoices and emails in preparation for 18th fee application. | 0.30 | $375.00 | $112.50 |
|  | KKF | Prepared for hearing (0.3).  Attended hearing on 5th interim fee application (0.6).  Responded to inquiry from B. Angstadt re: tax consulting work bill for Swiss accounting issues (0.2).  Drafted email to Grant Thornton teams re: open items for completion of February MFS (0.1). | 1.20 | $670.00 | $804.00 |
| 03/22/2023 | ASB | Prepared draft of 18th Fee Statement. | 1.20 | $375.00 | $450.00 |
|  | KKF | Reviewed business advisory services entries for confidentiality issues (0.4).  Exchanged emails with A. Schwartz and K. Somers re: confidentiality issues (0.1).   Exchanged emails with S. Shahkarami re: confidentiality review and revisions to same (0.2). | 0.70 | $670.00 | $469.00 |
|  | KKF | Reviewed status of MFS information from Grant Thornton teams (0.2).  Email to A. Bender re: same and coordination of preparation for 18th MFS (0.1).  Reviewed and responded to inquiry from C. McDonald re: payment amount of 17th MFS (0.2). | 0.50 | $670.00 | $335.00 |
| 03/24/2023 | KKF | Exchanged emails with G. Barenbaum and S. Shahkarami re: status of February MFS. | 0.10 | $670.00 | $67.00 |
| 03/27/2023 | KKF | Exchanged emails with M. Ciazzo, A. Xi and A. Bender re: status of outstanding information for 18th MFS (Feb). | 0.10 | $670.00 | $67.00 |
| 03/28/2023 | ASB | Prepared draft of 18th Monthly Fee Statement. | 2.40 | $375.00 | $900.00 |
|  | KKF | Exchanged emails with A. Schwartz and K. Somer re: status of entry of order on interim fee application and timing of payments (0.1).  Responded to email from S. Shahkarami re: status of interim fee approval and timing of outstanding payments (0.2). | 0.30 | $670.00 | $201.00 |
|  | KKF | Reviewed and revised 18th MFS for February based on recent pleadings filed in case. | 0.40 | $670.00 | $268.00 |
| 03/29/2023 | ASB | Assembled final version of 18th Monthly Fee Statement for signature. | 0.50 | $375.00 | $187.50 |

| | | For professional services rendered | 14.3 hrs | | $8,331.00 |
|---|---|---|---|---|---|
| | | SUBTOTAL | | | $8,331.00 |
| | | Total amount of this bill | | | $8,331.00 |

Grant Thornton LLP
April 12, 2023
Invoice # 56053

|  |  |  |
|---|---|---:|
|  | Previous balance | $16,000.60 |
| 04/10/2023 | Payment - Thank you, Check # 001101384 | ($9,575.60) |
| 04/10/2023 | Payment - Thank you, Check # 001101384 | ($6,425.00) |
|  | Total Payments and Adjustments | ($16,000.60) |
|  | Balance due upon receipt | $8,331.00 |

## Timekeeper Summary

| Name | Initials | Title | Hours | Rate | Amount |
|---|---|---|---:|---:|---:|
| Ian S. Landsberg | ISL | Partner | 0.60 | $750.00 | $450.00 |
| Kelly K. Frazier | KKF | Of Counsel | 9.30 | $670.00 | $6,231.00 |
| Amy S. Bender | ASB | Paralegal | 4.40 | $375.00 | $1,650.00 |

It is a pleasure working with you.  We appreciate your business.



Sklar Kirsh, LLP
1880 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 845-6416 MAIN
accounting@sklarkirsh.com
Tax I.D. 37-1711630

Grant Thornton, LLP
Attn: Chris Stathopoulos
171 N. Clark Street, Suite 200
Chicago, IL 60601
chris.stathopoulos@us.gt.com; Liz.Piechnik@us.gt.com

May 15, 2023

Invoice #56638

Due Upon Receipt

For Professional Services Rendered Through April 30, 2023

---

## Matter: Purdue Pharma - Legal Services

| Date | Initials | Description | Hours | Rate | Amount |
|------|----------|-------------|-------|------|--------|
| 04/03/2023 | ASB | Finalized 18th Monthly Fee Statement for filing. | 0.30 | $375.00 | $112.50 |
| | KKF | Exchanged emails with A. Schwartz re: proposed timing of filing of 18th MFS in light of sale issues. | 0.10 | $670.00 | $67.00 |
| 04/05/2023 | KKF | Drafted emails to C. McDonald, P. Schwartzberg and T. Nobis re: LEDES and filing of 18th MFS 0.1). Drafted email to C. Stathopoulos, R. Werth and G. Barrenbaum re: status and timing for 18th MFS and 5th Interim Fee Application order, and anticipated dates for objections and payment (0.2). | 0.30 | $670.00 | $201.00 |
| 04/11/2023 | ASB | Assembled invoices for 19th Monthly Fee Statement (.2). Updated chart of all professionals' fee amounts (1.7). | 1.90 | $375.00 | $712.50 |
| 04/24/2023 | KKF | Exchanged emails with Purdue teams re: status and timing for 19th MFS. | 0.20 | $670.00 | $134.00 |
| 04/27/2023 | ASB | Prepared 19th Monthly Fee application. | 1.60 | $375.00 | $600.00 |
| | KKF | Exchanged correspondence with A. Xi, A. Bender and C. O'Connor re: status of invoices for 19th MFS (0.2). Drafted email to K. Somers and A. Schwartz re: confidentiality review of business advisory services (0.1). Reviewed and revised 19th MFS to send for final signature (0.5). | 0.80 | $670.00 | $536.00 |
| 04/28/2023 | KKF | Exchanged emails with A. Schwartz re: coordinating filing and service of 19th MFS. | 0.10 | $670.00 | $67.00 |
| | | For professional services rendered | 5.3 hrs | | $2,430.00 |

## Matter: Purdue Pharma - Expenses

| Date | Description | Amount |
|------|-------------|--------|
| 03/31/2023 | Pacer - Charges from 01/01/2023 - 03/31/2023 | $32.30 |
| | Total Charges | $32.30 |
| | SUBTOTAL | $2,462.30 |

Grant Thornton LLP

May 15, 2023

Invoice # 56638

|  |  |  |
|---|---|---:|
|  | Total amount of this bill | $2,462.30 |
|  | Previous balance | $8,331.00 |
| 05/11/2023 | Payment - Thank you, Check # 001102657 | ($8,331.00) |
|  | Total Payments and Adjustments | ($8,331.00) |
|  | Balance due upon receipt | $2,462.30 |

## Timekeeper Summary

| Name | Initials | Title | Hours | Rate | Amount |
|---|---|---|---:|---:|---:|
| Kelly K. Frazier | KKF | Of Counsel | 1.50 | $670.00 | $1,005.00 |
| Amy S. Bender | ASB | Paralegal | 3.80 | $375.00 | $1,425.00 |

It is a pleasure working with you.  We appreciate your business.

## EXHIBIT H

### CUSTOMARY AND COMPARABLE COMPENSATION
### DISCLOSURES FOR THE FEE PERIOD[1]

| Tax Structuring Services and Employee Tax Services | | |
|---|---|---|
| **Category of Timekeeper** | **Standard Rates for Professionals at Grant Thornton LLP for the Fee Period[2]** | **Rates in Application** |
| Partner / Managing Director | $950 - $1,145 | $765 |
| Senior Manager / Director | $870 - $1,000 | $650 |
| Manager | $690 - $835 | $570 |
| Senior Associate | $455 - $675 | $460 |
| Associate | $310 - $415 | $280 |

| Valuation Services | | |
|---|---|---|
| **Category of Timekeeper** | **Standard Rates for Professionals at Grant Thornton LLP for the Fee Period[3]** | **Rates in Application** |
| Partner / Managing Director | $875 - $970 | $720 |
| Senior Manager / Director | $775 - $785 | $590 |
| Manager | $620 - $675 | $500 |
| Senior Associate | $450 - $515 | $400 |
| Associate | $330 - $365 | $270 |

| Business Advisory Services | | |
|---|---|---|
| **Category of Timekeeper** | **Standard Rates for Professionals at Grant Thornton LLP for the Fee Period** | **Rates in Application** |
| Partner / Managing Director | $955 | $955 |
| Senior Manager / Director | $785 | $785 |
| Manager | $675 | $675 |
| Senior Associate | $515 | $515 |
| Associate | $330 | $330 |

---

[7]    Grant Thornton provides Plan Services to the Debtors that involve three (3) different types of distinct business units -- *i.e.*, tax related services, valuation related services and business advisory services -- each with different specialized skills and rates. As such, the information contained in this Exhibit H provides the applicable rates and rate comparisons for each such business unit.

[8]    Rates differ within a level due to the relative experience of the staff and/or whether the applicable staff is part of Grant Thornton's national tax office. In addition, although Grant Thornton's standard hourly tax rates were increased in August in the normal operation of its business, the hourly rates charged by Grant Thornton for professionals working on matters in these cases were not increased, with the exception of one professional who was promoted to Managing Director effective September 1, 2021, and as such, the agreed to hourly rate charged was reflective of this new position.

[9]    Rates differ within a level due to relative experience of the staff.

**EXHIBIT I**

**SUMMARY AND SUPPORTING INVOICES FOR OCB TAX SERVICES**

The following is a summary of the invoices relating to OCB Tax Services for which Grant Thornton was paid pursuant to the Monthly Fee Statements.  Copies of the invoices are attached.

| GT Invoice No. | Amount | Invoice Date | Service Period | Type of OCB Tax Services | Applicable MFS |
|---|---|---|---|---|---|
| 954095557 | $6,053.00 | 2/13/2023 | December 2022 Compliance processed in January 2023; Review of November's invoices filed with December's returns due in January 2023 | Sales and Use Tax Compliance Services | 17th MFS |
| 954111589 | $8,502.50 | 3/13/2023 | January 2023 Compliance processed in February 2023; Review of December's invoices filed with January's returns due in February 2023 | Sales and Use Tax Compliance Services | 18th MFS |
| 954099982 | $97,046.00 | 3/15/2023 | Tax Compliance Services for the year ended December 31, 2022 | 2022 Tax Compliance Services | 18th MFS |
| 954123967 | $1,526.40 | 3/31/2023 | Tax advisory, research, compliance and consulting services for February 2023 | Global Mobility Services | 18th MFS |
| 954127493 | $7,265.00 | 4/10/2023 | February 2023 Compliance processed in March 2023; Review of January's invoices filed with February's returns due in March 2023 | Sales and Use Tax Compliance Services | 19th MFS |
| 954139077 | $47,170.00 | 4/27/2023 | Tax Compliance Services for the year ended December 31, 2022 | 2022 Tax Compliance Services | 19th MFS |
| 954146091 | $7,683.00 | 5/12/2023 | March 2023 Compliance processed in April 2023; Review of February's invoices filed with March's returns due in April 2023 | Sales and Use Tax Compliance Services | 20th MFS |
| 954151561 | $47,170.00 | 5/19/2023 | Tax Compliance Services for the year ended December 31, 2022 | 2022 Tax Compliance Services | 20th MFS |
| 954160440 | $2,941.50 | 5/31/2023 | Tax advisory, research, compliance and consulting services for April 2023 | Global Mobility Services | 20th MFS |
| **TOTAL** | **$225,357.40** | | | | |

# Grant Thornton

**Grant Thornton LLP**
186 Wood Ave S # 4
Iselin, NJ 08830-2725

T 732.516.5500
F 732.516.5502
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
         201 Tresser Boulevard
         Stamford, CT 06901-3431

*Date:*    February 13, 2023

**Bill Number**: 954095557          **Client-Assignment Code:** 0200102-00016

Sales & Use Tax Compliance & Invoice Review

December's 2022 Compliance processed in January 2023

Compliance Total                                                    $      2,000.00

Review of November Invoices filed with December returns due in January 2023
(filed on a one-month lag), notices & consulting

Invoice Review & Consulting Total                                          4,053.00

**Total Amount of Bill:**                                           $      6,053.00

*Terms:*    As agreed upon
            Federal ID No. 36-6055558

**Grant Thornton**

Grant Thornton LLP
186 Wood Ave S # 4
Iselin, NJ 08830-2725

T 732.516.5500
F 732.516.5502
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
         201 Tresser Boulevard
         Stamford, CT 06901-3431

*Date:*   March 13, 2023

         **Bill Number**: 954111589          **Client-Assignment Code:** 0200102-00023

         Sales & Use Tax Compliance & Invoice Review
         January 2023 Compliance processed in February 2023

         COMPLIANCE TOTAL                                        $       2,000.00

         Review of December Invoices filed with January returns due in February 2023
         (filed on a one-month lag), notices & consulting

         INVOICE REVIEW & CONSULTING TOTAL                                6,502.50

         **Total Amount of Bill:**                               $       8,502.50

*Terms:*  As agreed upon
          Federal ID No. 36-6055558

# Grant Thornton

**Grant Thornton LLP**
757 3rd Avenue #9
New York, NY 10017-2013

T 212.599.0100
F 212.370.4520
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
201 Tresser Boulevard
Stamford, CT 06901-3431

*Date:*    March 15, 2023

**Bill Number**: 954099982        **Client-Assignment Code:** 0200102-00026

| | | |
|---|---|---|
| Advance fee for tax compliance services for the year ended December 31, 2022 as per the Statement of Work signed January 5, 2023. | $ | 89,100.00 |
| Expenses, including an administrative charge of 6% and a technology fee of $2,600 | | 7,946.00 |
| **Total Amount of Bill:** | $ | **97,046.00** |

*Terms:*    As agreed upon
Federal ID No. 36-6055558

**Grant Thornton**

**Grant Thornton LLP**
1100 Peachtree Street
Suite 1400
Atlanta, GA 30309

T 404.330.2000
F 404.475.0107
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*   Purdue Pharma L.P.
        201 Tresser Boulevard
        Stamford, CT 06901-3431

*Date:*   March 31, 2023

   **Bill Number**: 954123967        **Client-Assignment Code:** 0200102-00021

   Professional services rendered per the detail on page 2          $       1,526.40

   **Total Amount of Bill:**                                         $       **1,526.40**

*Terms:*   As agreed upon
           Federal ID No. 36-6055558

# GrantThornton

**Grant Thornton LLP**
186 Wood Ave S # 4
Iselin, NJ 08830-2725

T 732.516.5500
F 732.516.5502
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*     Purdue Pharma L.P.
          201 Tresser Boulevard
          Stamford, CT 06901-3431

*Date:*   April 10, 2023

          **Bill Number**: 954127493          **Client-Assignment Code:** 0200102-00016


          Sales & Use Tax Compliance & Invoice Review

          February 2023 Compliance processed in March 2023

          COMPLIANCE TOTAL                                              $        2,000.00

          Review of January Invoices filed with February returns due in March 2023 (filed
          on a one-month lag), notices & consulting

          INVOICE REVIEW & CONSULTING TOTAL                                      5,265.00


          **Total Amount of Bill:**                                     $        7,265.00


*Terms:*  As agreed upon
          Federal ID No. 36-6055558

**Grant Thornton**

**Grant Thornton LLP**
757 3rd Avenue #9
New York, NY 10017-2013

T 212.599.0100
F 212.370.4520
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*     Purdue Pharma L.P.
          201 Tresser Boulevard
          Stamford, CT 06901-3431

*Date:*   April 27, 2023

          **Bill Number**: 954139077          **Client-Assignment Code:** 0200102-00026

| | |
|---|---:|
| Progress invoice for tax compliance services for the year ended December 31, 2022 | $    44,500.00 |
| Expenses, including a 6% administrative charge | 2,670.00 |
| **Total Amount of Bill:** | **$    47,170.00** |

*Terms:*  As agreed upon
          Federal ID No. 36-6055558

# Grant Thornton

**Grant Thornton LLP**
186 Wood Ave S # 4
Iselin, NJ 08830-2725

T 732.516.5500
F 732.516.5502
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*   Purdue Pharma L.P.
        201 Tresser Boulevard
        Stamford, CT 06901-3431

*Date:*   May 12, 2023

**Bill Number**: 954146091          **Client-Assignment Code:** 0200102-00016

Sales & Use Tax Compliance & Invoice Review March 2023 Compliance
processed in April 2023:

COMPLIANCE TOTAL:                                           $      2,000.00

Review of February Invoices filed with March returns due in April 2023 (filed on
a one-month lag), notices & consulting:

INVOICE REVIEW & CONSULTING TOTAL:                                 5,683.00

**Total Amount of Bill:**                                   $      7,683.00

*Terms:*   As agreed upon
           Federal ID No. 36-6055558

## Grant Thornton

**Grant Thornton LLP**
757 3rd Avenue #9
New York, NY 10017-2013

T 212.599.0100
F 212.370.4520
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
201 Tresser Boulevard
Stamford, CT 06901-3431

*Date:*    May 19, 2023

**Bill Number**: 954151561          **Client-Assignment Code:** 0200102-00026

| | | |
|---|---|---|
| Invoice for tax compliance services for the year ended December 31, 2022, as per the Statement of Work signed December 12, 2022. | $ | 44,500.00 |
| Expenses, including a 6% administrative charge. | | 2,670.00 |
| **Total Amount of Bill:** | **$** | **47,170.00** |

*Terms:*    As agreed upon
Federal ID No. 36-6055558

**GrantThornton**

**Grant Thornton LLP**
1100 Peachtree Street
Suite 1400
Atlanta, GA 30309

T 404.330.2000
F 404.475.0107
www.GrantThornton.com

This address should be used for correspondence only
For all payments, kindly use remittance instructions below

*To:*    Purdue Pharma L.P.
         201 Tresser Boulevard
         Stamford, CT 06901-3431

*Date:*  May 31, 2023

         **Bill Number**: 954160440    **Client-Assignment Code:** 0200102-00021
                                       **Client-Assignment Code:** 0200102-00022
                                       **Client-Assignment Code:** 0200102-00029
                                       **Client-Assignment Code:** 0200102-00028

         For professional services rendered.  See attached billing detail.    $    2,941.50

         **Total Amount of Bill:**                                            $    **2,941.50**

*Terms:*  As agreed upon
          Federal ID No. 36-6055558