UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

In re:

PURDUE PHARMA L.P., et al.,

Debtors.1

Chapter 11

Case No. 19-23649 (SHL)

(Jointly Administered)

**Order for relief based on the courts error**

**Procedural and facts**

**August 9, 2021** Judge Robert Drain said that the trial over Purdue Pharma's settlement of opioid-related litigation will last up to 11 days. It would begin on August 12, 2021.

**August 16, 2021** hearing for my motion for summary judgement for failure to warn about interactions between OxyContin and antidepressants. None of the evidence was discussed or reviewed and I wasn't allowed to talk about the Merit of my case. The judge said he read the motions and would deny my motion. If the decision was based off evidence like it should have been the defendants have no evidence or legal argument that could justify why they waited until 2016 to warn people about OxyContin interactions with antidepressants causing serotin syndrome and death. The black boxed warning specifically said interactions between citalopram and amitriptyline were cautioned. According to the FDA safety data announcement since 1978 there had been 23 cases of serotonin syndrome between oxycodone and antidepressants. That's 4 decades they knew but waited until 2016 to warn people. This hearing decision was bias because when making it, it wasn't based on any facts or evidence it was completely bias and I was silenced. I was told I could talk about the merits at a later date which never happened. Purdue Pharma provided incomplete argument in their objection to my motion for summary judgement. They avoided discussing the facts and the evidence of the FDA warning label change or any of the undisputed facts. They argued that I misunderstood the points system in this case and the points system was a fair way for all the claimants to receive compensation. This argument had nothing to do with any of the claims in my

motion for summary judgment. Turning it around on me and claiming I was confused about the points system wasn't a reasonable argument and judge Drain himself gave no real explanation on why he sided with them and denied my motion. I never got an explanation on why he didn't allow evidence to be discussed at the hearing either. It was unjustified.

In my summary judgment was undisputed evidence that failure to warn caused my father's death not the opioid crisis. The FDA safety announcement and proof of the change on the warning label was filed with my summary judgment. The defense filed a response that stated

"1. The Movant requests, based on her proof of claim filed in these cases (the

"Claim"),2 that this Court "grant[] summary judgment as a matter of law" because her "situation

with the serotonin syndrome that caused [her] father's death is different and [sh]e should not

have to wait to have restitution." (Mot. at 6). Movant also asserts that "[t]he points system

which claimants will have their claim valued and based off of [does not] include fair

considerations to [her] situation." (Id.)

2. These cases are on the precipice of resolution. Indeed, the hearing on

confirmation of the Debtors' proposed Sixth Amended Joint Chapter 11 Plan of Reorganization

of Purdue Pharma L.P. and Its Affiliated Debtors [Dkt. No. 3185] (the "Plan") is set to begin

just three days from this submission, on Thursday, August 12, 2021. Under the Debtors' Plan

and the PI Trust Distribution Procedures appended as Exhibit I thereto [Dkt. No. 3187] ("Non-

NAS PI TDP"), there will be a fair and equitable mechanism for compensating personal injury

claims such as the Movant's. As noted in their prior objections to motions filed by individuals

similarly seeking early payment in full on their claims (see, e.g., Dkt. Nos. 2116, 2266), although

the Debtors remain sympathetic to all those affected by the opioid crisis, the Bankruptcy Code

does not allow such pre-plan of reorganization payment or settlement of a creditor's claim

outside of certain limited circumstances, none of which are applicable here. As the Court noted

in denying the previous claim payment motions, "the payment in full of the [c]laims but not all

claims similarly situated to the [c]laims before the confirmation and effective date of a chapter

11 plan in these cases would violate the fundamental Bankruptcy Code principles of similar

treatment of similar claims and the resolution and treatment of general unsecured claims under a

chapter 11 plan and is not warranted by any exception to such principles." (See Order Denying

Mot. for Immediate Claim Payment, at 1-2 (Dec. 16, 2020), Dkt. No. 2145; Order Denying

Motions for Immediate Claim Payment & to Lift Automatic Stay, at 1 (Jan. 20, 2021), Dkt. No.

2306.)

Moreover, the Movant's assertion that the points system under the Non-NAS PI

TDP will not provide adequate consideration of her particular situation does not provide a basis

for the relief sought and also appears to be based on a misunderstanding of the procedures.

Under the Non-NAS PI TDP, additional awards above the "Easy Payment" are possible for Non-

NAS PI Claimants who demonstrate death caused by an opioid, such as overdose and

withdrawal, which Movant asserts. (See Non-NAS PI TDP § 8(b) (grid demonstrating multiple

tiers under which "death from an opioid" may fall); Ex. 1, Mot., at 4 (medical autopsy indicating

cause of death as "an overdose of [patient's] prescription medications").)"


At the hearing on 8/16/2021 their oral response was but a few sentences nothing of substance and nothing accurate. They insulted me by saying my case is related to the opioid crisis. There's no evidence that supports the the opioid crisis applies to my case. It's a case of failure to warn about interactions between oxycontin and antidepressants. The FDA safety announcement stated that since 1969 serotonin syndrome was the known effect when opioids and SSRIs were combined. It specifically listed the antidepressants amptripyline and citalopram on the new warning label which were the drugs listed on my father's death certificate and autopsy that caused his death. When this combination happens and a person suffers from serotonin syndrome it's an awful death. The person hallucinates, has anxiety, confusion, fever, sweats and there's other symptoms and that's what happened with my father. He was agitated, anxious, confused and didn't seem right. He was also very paranoid. We assumed he didn't get enough sleep or slept wrong and needed more rest so we suggested he go back to bed and get some rest but later was found unresponsive. We didn't know it was serotonin syndrome at the time because there was no warning on the oxycontin lable that cautioned about the interactions between OxyContin, amptripyline and citalopram. 6 years later they did change the warning label and it was recommended that anyone talking antidepressants start a does of Oxycontin 1/3 or ½ the recommended dosage. The evidence is undisputable and the defendants failed to address this evidence in their written and oral arguments because it's true they just want to avoid accountability. The following few sentences were said at the hearing by the defense

Page 50

1  those are pretty much the issues that I have.  I think
2  that's it.  I'm sorry.
3          THE COURT:  Okay.  Well, there's no reason to be
4  sorry.  And, frankly, your supporting materials were very
5  eloquent.
6          Go ahead.
7          MS. MORALES:  Okay.  I would like to add there was
8  a similar case with Acorn and Pope.  So it was a
9  pharmaceutical company that failed to warn on a prescription
10 label that it would harmfully interact with another drug she
11 was taking, and it also caused serotonin syndrome.  Ms. Pope
12 latched into a coma and suffered permanent cognitive damage
13 from when she was given the drug methyl blue during a 2013
14 surgery.  Two years after her surgery, Acorn had also issued
15 a safety announcement which changed the warning label.  And
16 in that case, the plaintiff was awarded her summary judgment
17 in 2017 -- in 2017, sorry.
18         THE COURT:  Okay.
19         MS. MORALES:  I think that's it.
20         THE COURT:  And you would describe that case in
21 your papers, too.  So do the Debtors have more to say on
22 this, or they content to rely on their objection that was
23 filed?
24         MR. McCLAMMY:  Thank you, Your Honor.  Jim
25 McClammy of DavisPolk for the Debtors.  All we will say,

Page 51

1   similar to Your Honor's reaction, is we're clearly very
2   sympathetic to Ms. Morales' situation and, indeed, all that
3   have suffered loss in the opioids crisis.
4        And then, you know, obviously faced with the many
5   unique individual claims here, and understanding that the
6   Bankruptcy Code is meant to provide a collective process for
7   addressing those claims and the Debtors having
8   plan that they believe is in, you know, the
9   all creditors and the American public more generally, to
10  help abate the opioid crisis, we will rely on our papers,
11  Your Honor.
12        THE COURT: Okay. So, Ms. Morales, I want to be
13  clear in distinguishing between your claim in the case and
14  the context in which it's raised at this point in the case.
15  Those are really two different things.
16        There are about 140,000 people who have filed
17  claims on behalf of themselves or a family member against
18  the Debtors. That's a lot of claims, obviously. The merits
19  of those claims have not yet been determined on a claim-by-
20  claim basis. And generally, there's a very strong principle
21  of bankruptcy law that you don't decide the merits of one
22  claim and provide for its payment before you have a plan
23  that provides how all of those claims will be dealt with.
24  Otherwise, someone would get a leg up on the rest because
25  they --

**August 31, 2021 Purdue Pharma's lawyers reach out** they say they got my proposal to negotiate a settlement and say they will agree to meet with me to discuss a resolution on September 2, 2021. They knew Judge Drain would approve the confirmation plan which he did do on September 1, 2021. He also gave them immunity. So on September 2, 2021 when they meet with me they say they are immune and don't have to resolve anything with me and there's nothing I can do. They say they no longer have intentions of discussing any settlement with me and tell me to be patient and say If I appeal then I'd be the reason that other claimants aren't helped and would not get the money they need. They say I would be holding everyone up and not be selfish. They say that there's an opioid epidemic and I should think about others who need help.

**January 18, 2022** I filed a letter requesting to participate in mediation and never got a response back from the court. In January of 2022 I filed a letter requesting to participate in mediation and that went unanswered.  Judge Drain gave a response to the Request by Canadian First Municipalities and First Nations Creditors and Appellants to Participate in Mediation on 1/12/2022 docket number 4282 my letter to request participation in mediation was docket number 4289 on 1/18/2022. Maria Ecke also requested to participate in mediation and judge Drain ORDER ON MOTIONS TO PARTICIPATE IN MEDIATION to her request on January 21, 2022 docket number 4302. Everyone else got a response back but not me so I took that as a no. Again why I am treated differently than other claimants. The second time my motion was denied for summary judgment was on 10/29/2021 but it came as a surprise because there was no hearing and it wasn't  addressed in court on the record. I got lucky and happened to come across it on the docket otherwise I would not have any knowledge that the judge made this decision.

I just wanted a fair opportunity like everyone else to at least try to present the undisputable evidence and have a chance at being heard but unfortunately that wasn't the case. I never knew courts could decide who they wanted to hear and be bias it was my understanding that the court would allow me to at least speak on the merits of my case and ask questions before making a hasty decision.  The judge said it was premature to seek summary judgment. If discovery was over and the plan was going to be approved a fee weeks after the hearing for my motion for summary judgment I don't  understand when an appropriate time would be. Discovery was over so that confused me.  I don't think this case was handled properly and I really hope this isn't a pattern that the public can expect to see in the courtroom because I was wronged multiple times by the defendants and they had no shame or a defense and got away with it.

**Merit**

**Purdue Pharma Oxycontin failure to warn about interactions with antidepressants**

In 2010 Purdue Pharma made the most money and the most sales. My father died 1/02/2010 and his death was due to negligence and failure to warn. My case is not about the opioid crisis and just because the word overdose in my father's autopsy the defendants should not be allowed to misuse the word by committing facts that support oxycontin combination with SSRIs (antidepressants) greatly increases the risk of overdose. It's not abuse but the combination that creates a higher risk of overdose. This is an undisputed fact.

**Oxycontin changes warning label 6 years after my father's death**

They knew or should have known the risks and failed to warn people.

**Defendants failed to admit or deny failure to warn**

Avoidance to address the main importance for my summary judgement proves that they can't deny the facts but fail to be accountable.

**Bad faith negotiating**

If my case had no merit then the defendants would not have reached out to schedule a zoom meeting to discuss the proposal for settlement of $150,000 which is significantly lower and a fraction of the average settlements for wrongful death on September 2, 2021. They acted on bad faith and said they would wait and changed their minds about resolving my case. All they were really concerned about was if I'd appeal or not. They have abused the Bankruptcy Court, omitted and oppressed the facts for an upper hand, have no argument or defense, have no shame and have knowingly insulted me by claiming my case is part of the opioid epidemic. The court had made an error in siding with the defendants. The plan had not been approved until September 1, 2021 and my hearing was on 8/16/2021 but judge Robert Drain didn't even review the evidence at the hearing and didn't let consider the undisputed facts that should be the root of the justice I am seeking but it wasn't.

**Denied due process** the evidence wasn't questioned or considered at the hearing. I tried to appeal it but there was no hearing for the appeal but Judge Drain made a decision to deny my appeal without a hearing and entered an order denying my request for appeal on 10/29/2022

ORDER DENYING MOTION FOR RELIEF FROM PRIOR ORDER docket number  I filed the cover sheet for direct appeal with the bankruptcy court on 10/15/2021 and it was entered on 10/21/2021. He denied it 8 days later with no hearing.

I filed for summary judgment at the appropriate time after discovery and before the plan was confirmed but was denied consideration of the evidence and facts. Purdue pharma has acted in bad faith when telling me they would negotiate a settlement with me and scheduled a meeting to do so. They have no defense or argument and have caused me more pain and suffering. They have abused the Bankruptcy Code and delayed compensation to a claim that I was not asking a lot and was trying to be more than

reasonable because there are other claimants and I'm trying to be considerate. Punitive damages should be awarded for the actions and for abusing their power and influence to silence me. I was 16 when my dad died and I still needed him for so much. I lost out on having him financially support me and to emotionally guide me as I entered into adulthood. I went to therapy for 3 years and I myself was on antidepressants. I was on a bright path and graduated from high school a year early but after his death didn't do well in college and it forever changed my life. $150,000 was **more** than fair and they said they would consider the proposed settlement but it was in bad faith and a tactic used to delay resolution and cause me more pain and suffering. THERE'S NO DISPUTE ABOUT IF MY CASE HAS MERIT IT'S A MATTER OF IF THEY CAN PLAY THE AVOIDANCE GAME LONG ENOUGH TO UNDERMINE THE LAW AND ACCOUNTABILITY.

Amanda Morales

205 Calle Del Banco

Bernalillo, NM 87004

(505)318-2400

moralesamanda912@gmail.com



*Androgen deficiency*
- Chronic use of opioids may influence the hypothalamic-pituitary-gonadal axis, leading to androgen deficiency that may manifest as low libido, impotence, erectile dysfunction, amenorrhea, or infertility.
- The causal role of opioids in the clinical syndrome of hypogonadism is unknown because the various medical, physical, lifestyle, and psychological stressors that may influence gonadal hormone levels have not been adequately controlled in studies conducted to date.
- Patients presenting with symptoms or signs of androgen deficiency should undergo laboratory evaluation.

*General information*
- Encourage patients to read the information leaflets or Medication Guides that come with their filled prescription(s).
- Report adverse events involving opioids or other medicines to the FDA MedWatch program, using the information in the "Contact FDA" box at the bottom of this page.

**Data Summary**

FDA investigated several safety issues associated with the class of opioid pain medicines:
- Serotonin syndrome
- Adrenal insufficiency
- Androgen deficiency

*Serotonin syndrome*
A search of the FDA Adverse Event Reporting System (FAERS) database for the period January 1, 1969, to June 12, 2013, identified 43 cases of serotonin syndrome in which opioids were used concomitantly with other serotonergic drugs. The review excluded meperidine, tramadol, and tapentadol, which were already labeled for the risk of serotonin syndrome at the time of the review. The most commonly reported opioids associated with serotonin syndrome were fentanyl (n=28), oxycodone (n=7), and methadone (n=5). Other reported opioids included hydromorphone, morphine, alfentanil/remifentanil/sufentanil, hydrocodone, naltrexone, and pentazocine. Although there were no reports of serotonin syndrome with an opioid used alone, five cases reported that serotonin syndrome occurred with the use of two or more opioids concurrently. All of these five cases reported use of fentanyl along with at least one other opioid [oxycodone (n=4), morphine (n=1), hydromorphone (n=1), and hydrocodone (n=1)].

*Adrenal insufficiency*
A search of FAERS for the period January 1, 1969, to February 5, 2014, identified 37 cases of adrenal insufficiency reported with the use of opioids. Twenty-seven cases reported opioid monotherapy, and 10 reported use of more than one opioid at the same time. The most commonly reported opioids associated with adrenal insufficiency were fentanyl (n=10) and oxycodone (n=10), followed by buprenorphine or

**List of Serotonergic Medicines**

| Generic Name | Found in Brand Name(s) |
|---|---|
| **Selective Serotonin Reuptake Inhibitors (SSRIs)** ||
| paroxetine | Paxil, Paxil CR, Pexeva, Brisdelle |
| fluvoxamine | Luvox, Luvox CR |
| fluoxetine | Prozac, Prozac Weekly, Sarafem, Selfemra, Symbyax |
| sertraline | Zoloft |
| citalopram | Celexa |
| escitalopram | Lexapro |
| **Serotonin-Norepinephrine Reuptake Inhibitors (SNRIs)** ||
| venlafaxine | Effexor XR |
| desvenlafaxine | Pristiq, Khedezla |
| duloxetine | Cymbalta |
| milnacipran | Savella |
| **Tricyclic Antidepressants (TCAs)** ||
| amitriptyline | No brand name currently marketed |
| desipramine | Norpramin |
| clomipramine | Anafranil |
| imipramine | Tofranil, Tofranil PM |
| nortriptyline | Pamelor, Aventyl |
| protriptyline | Vivactil |
| doxepin | Zonalon, Silenor |
| trimipramine | Surmontil |
| **Monoamine Oxidase Inhibitors (MAOIs)** ||
| isocarboxazid | Marplan |
| phenelzine | Nardil |
| selegiline | Emsam, Eldepryl, Zelapar |
| tranylcypromine | Parnate |
| **Other Psychiatric Medicines** ||
| amoxapine | No brand name currently marketed |
| maprotiline | No brand name currently marketed |
| nefazodone | No brand name currently marketed |
| trazodone | Oleptro |
| buspirone | No brand name currently marketed |
| vilazodone | Viibryd |
| mirtazapine | Remeron, Remeron Soltab |
| lithium | Lithobid |
| **Migraine Medicines** ||
| almotriptan | Axert |
| frovatriptan | Frova |
| naratriptan | Amerge |

Opioids and serotonin syndrome                                                                         CONFIDENTIAL

## Oxycodone

The PRAC Assessment Report on the PSUR(s) for oxycodone recommended updates to the oxycodone SmPC with information on SS. This recommendation was adopted at the December 2018 meeting [83].

The following information was suggested to be added into section 4.5 of SmPC:

> **4.5. Interaction with other medicinal products and other forms of interaction**
>
> Concomitant administration of oxycodone with serotonin agents, such as a Selective Serotonin Re-uptake Inhibitor (SSRI) or a Serotonin Norepinephrine Re-uptake Inhibitor (SNRI) may cause serotonin toxicity. The symptoms of serotonin toxicity may include mental-status changes (e.g., agitation, hallucinations, coma), autonomic instability (e.g., tachycardia, labile blood pressure, hyperthermia), neuromuscular abnormalities (e.g., hyperreflexia, incoordination, rigidity), and/or gastrointestinal symptoms (e.g., nausea, vomiting, diarrhoea). Oxycodone should be used with caution and the dosage may need to be reduced in patients using these medications.

## Methadone

In 2020, PRAC Assessment report on the methadone PSUR suggested to include interaction with serotonergic medicines. The recommendation was adopted at the January 2020 meeting [84].

An increased body of published literature describing SS in methadone users has also been noted and the role of methadone in these cases cannot be ruled out. Synthetic piperidine opioids such as methadone are weak serotonin reuptake inhibitions which could lead to an increase in serotonin level. Based on this data the following updates to the section 4.5 of the SmPC were suggested:

> **4.5. Interaction with other medicinal products and other forms of interaction**
>
> Serotonergic drugs: Serotonergic syndrome may occur with concomitant administration of methadone with pethidine, monoamine oxidase (MAO) inhibitors and serotonin agents such as Selective Serotonin Re-uptake Inhibitor (SSRI), Serotonin Norepinephrine Re-uptake Inhibitor (SNRI) and tricyclic antidepressants (TCAs). The symptoms of serotonin syndrome may include mental-status changes, autonomic instability, neuromuscular abnormalities, and/or gastrointestinal symptoms.




# Taking certain opioids while on commonly prescribed antidepressants may increase the risk of overdose

Posted on: August 1, 2022; Updated on: August 1, 2022
By Ismaeel Yunusa, **iyunusa@mailbox.sc.edu**

*While doctors prescribe the opioid oxycodone to treat moderate to severe pain after surgeries and injuries, it can also become a common drug of abuse. Professor Ismaeel Yunusa writes for The Conversation on how taking oxycodone at the same time as certain antidepressants can increase the risk of opioid overdose.*

Taking oxycodone at the same time as certain selective serotonin reuptake inhibitors (SSRIs), a commonly prescribed class of antidepressant, can **increase the risk of opioid overdose**, according to a study my colleagues **and I** published.

Doctors prescribe the opioid **oxycodone** to treat moderate to severe pain after surgeries and injuries or certain conditions like cancer. Opioids are also a **common drug of abuse**. In the U.S., over 70% of drug overdose deaths in 2019 involved an opioid.

Because many patients with depression **also experience chronic pain**, opioids are often **coprescribed with antidepressants** like SSRIs. **Prior research** has shown that certain SSRIs, namely fluoxetine (Prozac or Sarafem) and paroxetine (Paxil, Pexeva or Brisdelle), can strongly inhibit a liver enzyme crucial to the proper breakdown of drugs in the body, including oxycodone. The resulting increased concentration of oxycodone in the blood may lead to accidental overdose.

To see whether different types of SSRIs might affect a patient's risk of overdosing on oxycodone, my colleagues and I examined data from three large U.S. health insurance claims databases. We included over 2 million adults who began taking oxycodone while using SSRIs between 2000 and 2020. The average age of the group was around 50, and a little over 72% were women. A little over 30% were taking the SSRIs paroxetine and fluoxetine.

We found that patients taking paroxetine or fluoxetine had a 23% higher risk of overdosing on oxycodone than those using other SSRIs.

**About 30% of patients** with chronic pain experience adverse drug interactions while taking opioids. Other types of drugs have been shown to increase the risk of overdose and other harmful interactions. These include some **muscle relaxants** commonly used to treat pain, **benzodiazepines** commonly used to treat anxiety or poor sleep and some **antipsychotics** commonly used to treat schizophrenia or bipolar disorder. Similarly, in 2019, the Food and Drug Administration required drugmakers to **include new warnings** on using gabapentinoids, a class of drugs commonly used to treat epilepsy and pain, concurrently with opioids and other drugs that suppress the central nervous system. This mandate was due to an increased risk of **dangerously**

### RELATED STORIES
**Improving vaccination processes** »

**Assistant professor of pharmacy Alessandra Porcu explores blue light's effects on the brain** »

**Pharmacy team looks at ways to improve usage of immunization databases** »

**Pharmacy researcher driven to find weapons in the fight against cancer** »

**Many drugs have mirror image chemical structures - while one may be helpful, the other may be harmful** »

### THE CONVERSATION
**Featured in The Conversation**

**The Conversation** brings academic experts together with professional editors to create timely, insightful content for a general audience.

Email Peggy Binette at **peggy@mailbox.sc.edu** if you are interested in sharing your work with a national audience.

UNITED STATES BANKRUPTCY COURT SOUTHERN
DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.**, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-23649 (RDD) |

(Jointly Administered)

### ORDER DENYING MOTION FOR RELIEF FROM PRIOR ORDER

Before the Court is a motion, dated October 15, 2021 [ECF No. 3994] (the "Motion") by Amanda Morales, *pro se*, which the Court has treated as a motion under Fed. R. Bankr. P. 9024 for relief from and vacatur of the Court's Order dated August 18, 2021 [ECF 3591] (the "Prior Order") denying Ms. Morales' prior motion, dated July 14, 2021 and titled "Plaintiffs' Motion for Summary Judgment" [ECF No. 3191] (the "Summary Judgment Motion"). The Summary Judgment Motion sought an order compelling the allowance and immediate payment of Claim No. 619945 (the "Claim") filed in these cases on behalf of Ms. Morales' deceased father and herself. After consideration of the Debtors' objection to the Summary Judgment Motion and Ms. Morales' Affidavit in Support of Summary Judgment [ECF No. 3558] and the record of the hearing held by the Court on the Summary Judgment Motion on August 16, 2021, the Court denied the Summary Judgment Motion in the Prior Order "without prejudice to the merits of the Claim." Id. The Court concluded in the Prior Order that

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034),

Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

> the payment in full of the Claim but not all claims similarly situated to the Claim before the confirmation and effective date of a chapter 11 plan in these cases would be premature and violate the fundamental Bankruptcy Code principles of similar treatment of similar claims and the resolution and treatment of general unsecured claims under a chapter 11 plan and is not warranted by any exception to such principles.

The Motion does not satisfy the requirements for relief from the Prior Order under Fed. R. Bankr. P. 9024, which for purposes of the Motion incorporates Fed. R. Civ. P. 60(b).[1] Rule 60(b) provides that the Court may relieve a party from a final judgment, order or proceeding due to:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The decision whether to grant a motion for relief under Rule 60(b) is within the Court's discretion. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (citing *Montco, Inc. v. Barr (In re*

---

[1] Local Bankruptcy Rule 9023-1, which governs motions for reargument, states that "[n]o oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally." Local Bankruptcy Rule 9023-1(a). The Court concludes that oral argument is neither necessary nor appropriate under the circumstances and has decided the Motion based on the papers.

*Emergency Beacon Corp.)*, 666 F.2d 754, 760 (2d Cir. 1981)). "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). "The burden of proof is on the party seeking relief from judgment." *Id*.

---

"In no circumstances . . . may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion." *Id*. (citing *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009)); *see also Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124, 1127 (S.D.N.Y. 1996) (Rule 60(b) "is not 'a substitute for a timely appeal . . . .'") (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).

The Motion does not satisfy the standard for relief under Rule 60(b). It makes the same general allegations contained in the Summary Judgment Motion, adding only that "Purdue Pharma's objection NEVER addressed the motion they simply said they object in a short 3 page objection and did not deny or acknowledge my argument and at all" [ECF No. 3994]. It does not state facts warranting relief under Rule 60(b)(1), (3), (4), (5) or (6). Nor does the Motion present new evidence that would satisfy the Rule 60(b)(2). The only material new development since the entry of the Prior Order is the entry of an order confirming the Debtors' chapter 11 plan under 11 U.S.C. § 1129. However, by its terms the plan has not yet gone effective. Moreover, the chapter 11 plan sets forth a comprehensive procedure for determining the allowance of, and distributions on account of the tens of thousands of claims like the Claim that is contrary to the immediate relief sought in the Summary Judgment Motion and the Motion. The confirmation of the chapter 11 plan after the entry of the Prior Order therefore does not warrant granting the Motion. Accordingly, it is

ORDERED that the Motion is denied.

Dated: White Plains, New York

October 29, 2021

/s/ Robert D. Drain_____

HON. ROBERT D. DRAIN

UNITED STATES BANKRUPTCY JUDGE

3

**AFFIDAVIT OF SERVICE**

**I declare under penalty of perjury that a copy of this motion was served by [mail] [fax] [electronic transmission] as described above on this 12th ____ day of _____July _____, ___2023_____.**

**Email sent to McClammy, James I. • [james.mcclammy@davispolk.com](mailto:james.mcclammy@davispolk.com)**

**Huebner, Marshall S. • marshall.huebner@davispolk.com**

**Knudson, Jacquelyn Swanner • jacquelyn.swanner@davispolk.com**

___Amanda Morales_____

 **Signature of person who made service**