DAVIS POLK & WARDWELL LLP
450 Lexington Avenue New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*,[1] | Case No. 19-23649 (SHL) |
| Debtors. | (Jointly Administered) |

SIXTH SUPPLEMENTAL DECLARATION OF JAMIE O'CONNELL
IN CONNECTION WITH THE EMPLOYMENT AND RETENTION
OF PJT PARTNERS LP AS INVESTMENT BANKER TO
<u>THE DEBTORS AND DEBTORS IN POSSESSION</u>

I, John James O'Connell III, hereby declare:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

1. I am a Partner in the Restructuring and Special Situations Group at PJT Partners LP ("PJT"). PJT has been engaged as the investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. On November 5, 2019, the Debtors filed the *Debtors' Application to Employ PJT Partners LP as Investment Bankers* Nunc Pro Tunc *to the Petition Date* [Docket No. 430] (the "Application").[2]

3. In connection with the Application, Timothy Coleman submitted his initial declaration (the "Initial Declaration") describing PJT's connections to the Debtors and other potential parties in interest (the "PII"). The Initial Declaration was appended to the Application as Exhibit B.

4. On December 5, 2019, Mr. Coleman submitted his *Supplemental Declaration of Timothy Coleman in Support of the Debtors' Application to Employ PJT Partners LP as Investment Banker* Nunc Pro Tunc *to the Petition Date* [Docket No. 590]. On December 17, 2019, Mr. Coleman submitted his *Amended Supplemental Declaration of Timothy Coleman in Support of the Debtors' Application to Employ PJT Partners LP as Investment Banker* Nunc Pro Tunc *to the Petition Date* [Docket No. 657].

5. On January 9, 2020, this Court entered the *Order Approving the Debtors' Employment of PJT Partners LP as Investment Bankers* Nunc Pro Tunc *to the Petition Date* [Docket No. 728].

6. On September 23, 2020, Mr. Coleman submitted his *Second Supplemental Declaration of Timothy Coleman in Connection with the Employment and Retention of PJT Partners LP as Investment Banker to the Debtors' and Debtors in Possession* Nunc Pro Tunc *to the Petition Date* [Docket No. 1719].

7. On January 29, 2021, Mr. Coleman submitted his *Third Supplemental*

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

*Declaration of Timothy Coleman in Connection with the Employment and Retention of PJT Partners LP as Investment Banker to the Debtors' and Debtors in Possession* Nunc Pro Tunc *to the Petition Date* [Docket No. 2337].

8. On May 4, 2021, I submitted my *Supplemental Declaration of Jamie O'Connell in Connection with the Employment and Retention of PJT Partners LP as Investment Banker to the Debtors and Debtors in Possession* [Docket No. 2803].

9. On October 6, 2021, I submitted my *Second Supplemental Declaration of Jamie O'Connell in Connection with the Employment and Retention of PJT Partners LP as Investment Banker to the Debtors and Debtors in Possession* [Docket No. 3903].

10. On March 16, 2022, I submitted my *Third Supplemental Declaration of Jamie O'Connell in Connection with the Employment and Retention of PJT Partners LP as Investment Banker to the Debtors and Debtors in Possession* [Docket No. 4528].

11. On October 31, 2022, I submitted my *Fourth Supplemental Declaration of Jamie O'Connell in Connection with the Employment and Retention of PJT Partners LP as Investment Banker to the Debtors and Debtors in Possession* [Docket No. 5203].

12. On February 27, 2023, I submitted my *Fifth Supplemental Declaration of Jamie O'Connell in Connection with the Employment and Retention of PJT Partners LP as Investment Banker to the Debtors and Debtors in Possession* [Docket No. 5468].

13. I hereby submit this supplemental declaration to describe the below additional connections of PJT to the PII:

   a. PJT was previously engaged to provide advisory services to AbbVie Inc., one of the PII, in connection with AbbVie Inc.'s acquisition of Allergan plc. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

   b. PJT has been engaged to provide advisory services to AbbieVie Inc., one of the PII, in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

c.     PJT has been engaged to provide financial advisory services to an affiliate of American International Group ("AIG"), one of the PII, in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

d.     An individual with whom PJT has an ongoing consultancy arrangement is a member of the board of directors of an affiliate of AIG, one of the PII. Such consultant is not part of the PJT team representing the Debtors in these chapter 11 cases. This connection is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such connection.

e.     PJT was previously engaged to provide financial advisory services to Albertsons Companies Inc., one of the PII, in connection with a convertible preferred stock sale. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

f.     An individual with whom PJT has an ongoing consultancy arrangement is a consultant to an affiliate of Aspen American Insurance Company ("Aspen"), one of the PII. Such consultant is not part of the PJT team representing the Debtors in these chapter 11 cases. This connection is wholly unrelated to the Debtors and these Chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such connection.

g.     PJT was previously engaged to provide financial advisory services to a group of lenders of a certain company in a confidential matter. The members of such group included an affiliate of Aspen, an affiliate of Fidelity Institutional Asset ("Fidelity") and an affiliate of U.S. Bank Equipment Finance, each of which is a PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

h.     In addition to the above disclosures, with respect to Aspen, which is a PII:

    (i)     PJT and/or an affiliate of PJT have provided in the past and continues to provide financial advisory services to certain of Aspen's affiliates in several confidential matters. In addition, PJT has in the past and continues to provide financial advisory services to several separate companies in connection with confidential matters where one of Aspen's affiliates is an equity holder of such company. PJT has also provided in the past and continues to provide financial advisory services to one of Aspen's affiliates in connection with such entity's investment (as equity and/or debt holder) in certain confidential companies.

    (ii)     PJT has provided in the past and continues to provide financial advisory services to groups of creditors of several separate and unrelated companies in

4

        various confidential matters. The members of such groups have included or currently include an affiliate of Aspen.

    (iii)    PJT has been engaged to provide financial advisory services to Phoenix Services International LLC in connection with its chapter 11 case. An affiliate of Aspen owns the equity of Phoenix Services International LLC.

    (iv)    PJT has been engaged to provide financial advisory services to an affiliate of Aspen in connection with the chapter 11 case of Scandinavian Airlines.

    (v)    An affiliate of PJT was previously engaged to provide financial advisory services to a group of creditors of Swissport International AG in connection with its financial restructuring. The members of such group included an affiliate of Aspen.

    (vi)    PJT was previously engaged to provide financial advisory services to CEC Entertainment in its chapter 11 cases. An affiliate of Aspen owns the equity of CEC Entertainment.

    (vii)    PJT was previously engaged to provide financial advisory services to Constellis in connection with its financial restructuring. An affiliate of Aspen owns the equity of Constellis.

Each of the foregoing engagements is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by any of such engagements.

i.    PJT has been engaged to provide financial advisory services to an ad hoc group of noteholders and the indenture trustee in connection with the chapter 11 case of SVB Financial Group. The members of such group include an affiliate of Bank of America and an affiliate of JPMorgan Chase & Co., each of which is a PII. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

j.    PJT maintains a banking relationship with Charles Schwab & Co., Inc., one of the PII. This connection is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such connection.

k.    PJT has been engaged to provide financial advisory services to a certain company in a confidential matter. An affiliate of Emisar Pharma Services LLC, one of the PII, is a material equity holder of such company. This engagement is wholly unrelated to the Debtors and these Chapter 11 Cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

5

l. PJT was previously engaged to provide financial advisory services to Endo International plc (a/k/a Endo Pharmaceuticals Inc.), one of the PII, in connection with Endo Pharmaceuticals Inc. acquisition of Bio Specifics Technologies Corp. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

m. PJT has been engaged to provide financial advisory services to Endo International plc in connection with its chapter 11 case. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

n. PJT was previously engaged to provide financial advisory services to an ad hoc group of creditors to a company in a confidential matter. The members of such ad hoc group included an affiliate of Fidelity, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

o. PJT was previously engaged to provide financial advisory services to a group of lenders to a company in two separate confidential matters. The members of such group included an affiliate of Fidelity, one of the PII. These engagements were wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagements.

p. PJT was previously engaged to provide financial advisory services to a group of creditors to Denbury Resources in connection with its chapter 11 case. The members of such group included an affiliate of Fidelity, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

q. PJT was previously engaged to provide financial advisory services to a group of creditors of Frontier Communications Corporation in connection with its chapter 11 case. The members of such group included an affiliate of Fidelity, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

r. PJT was previously engaged to provide financial advisory services to a group of lenders to EP Energy Corporation in connection with its chapter 11 case. The members of such group included an affiliate of Fidelity, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

s.  PJT was previously engaged to provide financial advisory services to a group of lenders of a certain company in a confidential matter. The members of such group included an affiliate of Fidelity, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

t.  PJT was previously engaged to provide financial advisory services to an affiliate of Goldman Sachs, one of the PII, in a confidential matter. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

u.  PJT was previously engaged to provide financial advisory services to a certain company in a confidential matter. The owners of such company included an affiliate of Goldman Sachs, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

v.  PJT was previously engaged to provide financial advisory services to an ad hoc committee of creditors to a company in a confidential matter. The members of such ad hoc committee included an affiliate of Goldman Sachs, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

w.  PJT was previously engaged to provide financial advisory services to an ad hoc committee of creditors to Ultra Petroleum Corp. in connection with its chapter 11 case. The members of such group included an affiliate of Goldman Sachs, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

x.  PJT has been engaged to provide advisory services to The Kroger Co., one of the PII, in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

y.  PJT was previously engaged to provide financial advisory services to an affiliate of Mylan Inc., one of the PII, in connection with its merger with Pfizer's Upjohn business to create Viatris Inc. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

z.  PJT was previously engaged to provide financial advisory services to an affiliate of Propharma PV Inc., one of the PII, in a confidential matter. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not

believe that the interests of the Debtors or their estates are adversely affected by this engagement.

aa. PJT has been engaged to provide advisory services to ServiceNow, Inc., one of the PII, in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

bb. PJT was previously engaged to provide financial advisory services to Skillsoft Corporation, one of the PII, in connection with its sale of its SumTotal business. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

cc. PJT was previously engaged to provide financial advisory services to a certain company in a confidential matter. Skillsoft Corporation, one of the PII, was an equity holder in such company. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

dd. PJT has been engaged to provide financial advisory services to an affiliate of the State of California, one of the PII, in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

ee. PJT was previously engaged to provide financial advisory services to an affiliate of Steadfast Insurance Company, one of the PII, in a confidential matter. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

ff. PJT was previously engaged to provide advisory services to a company in a confidential matter. An affiliate of Tenecom Limited (f/k/a Winterthur Swiss Insurance Company), one of the PII, was an equity holder of such company. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

gg. PJT has been engaged to provide financial advisory services to a certain company in a confidential matter. An affiliate of United Healthcare Services Inc., one of the PII, is the equity holder of such company. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

hh. PJT has been engaged to provide advisory services to VMWare, Inc., one of the PII, in a confidential matter. This engagement is wholly unrelated to the Debtors

        and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

ii.     PJT has been engaged to provide advisory services to an affiliate of VMWare, Inc., one of the PII, in two separate confidential matters, one of which is closed. These engagements are wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

jj.     PJT was previously engaged to provide financial advisory services to the administrative agent to certain lenders under a credit agreement with a company in a confidential matter. The lenders included Wells Fargo Bank NA, one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

kk.     An individual with whom PJT has an ongoing consultancy arrangement is a member of the stakeholder advisory committee to an affiliate of Wells Fargo Bank NA, one of the PII. Such consultant is not part of the PJT team representing the Debtors in these chapter 11 cases. This connection is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such connection.

ll.     PJT has been engaged to provide advisory services to an affiliate of Wells Fargo Bank NA, one of the PII, in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

mm.     PJT has been engaged to provide advisory services to an affiliate of West Boca Medical Center, one of the PII, in a confidential matter. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

nn.     PJT was previously engaged to provide financial advisory services to an affiliate of XL Bermuda Ltd. (f/k/a XL Insurance Company Ltd), one of the PII, in a confidential matter. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by such engagement.

oo.     PJT was previously engaged to provide financial advisory services to an ad hoc committee of creditors of a company in a confidential matter. The members of such group included an affiliate of XL Bermuda Ltd. (f/k/a XL Insurance Company Ltd), one of the PII. This engagement was wholly unrelated to the Debtors and these chapter 11 cases, and PJT does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: August 8, 2023
      New York, New York

/s/ *John James O'Connell III*
John James O'Connell III
Partner
PJT Partners LP