DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (SHL)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF PRESENTMENT OF MOTION FOR ENTRY OF AN ORDER
PERMITTING THE MONITOR TO EMPLOY LEGAL CONSULTANT AT THE COST
AND EXPENSE OF THE DEBTORS**

**PLEASE TAKE NOTICE** that on August 28, 2023, Purdue Pharma L.P. and certain of

its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**") filed the *Motion for Entry of an Order Permitting the Monitor to*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Employ Legal Consultant at the Cost and Expense of the Debtors* (the "**Motion**") attached hereto as **<u>Exhibit A</u>**.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors will present the Motion to the Honorable Sean H. Lane, United States Bankruptcy Judge, for approval and signature on **September 11, 2023 at 10 a.m. (prevailing Eastern Time)**.

      **PLEASE TAKE FURTHER NOTICE** that, unless a written objection to the Motion is served and filed with proof of service with the Clerk of the Court, and a courtesy copy is delivered to the undersigned and to the chambers of the Honorable Sean H. Lane, so as to be received by **September 8, 2023 at 4 p.m. (prevailing Eastern Time)**, there will not be a hearing to consider such Motion, and such Motion may be signed and entered by the Court.

      **PLEASE TAKE FURTHER NOTICE** that, if a written objection is timely filed and served with respect to the Motion, a hearing (the "**Hearing**") will be held to consider such Motion before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601, on a date to be announced.

      **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing and a failure to appear may result in relief being granted upon default.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Motion may be obtained free of charge by visiting the Debtors' case website at https://restructuring.ra.kroll.com/purduepharma. You may also obtain copies of any pleadings by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:    August 28, 2023
          New York, New York

DAVIS POLK & WARDWELL LLP

By:    */s/ Eli J. Vonnegut*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Motion**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (SHL)** |
| Debtors.[1] | **(Jointly Administered)** |

### MOTION FOR ENTRY OF AN ORDER PERMITTING THE MONITOR TO EMPLOY LEGAL CONSULTANT AT THE COST AND EXPENSE OF THE DEBTORS

Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession

(collectively, the "**Debtors**") in the above-captioned chapter 11 proceedings (the "**Chapter 11**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Cases"), on behalf of the Monitor[2] in these Chapter 11 Cases, respectfully submit this *Motion for Entry of an Order Permitting the Monitor to Employ Legal Consultant at the Cost and Expense of the Debtors* (the "**Motion**").  In support of this Motion, the Debtors respectfully state as follows:

## Relief Requested

1.     By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), permitting the Monitor to employ Deven McGraw ("**McGraw**"), at the cost and expense of the Debtors, to perform the services described below.

## Jurisdiction and Venue

2.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

3.     Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4.     On September 15, 2019 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "**Bankruptcy Code**").  The Debtors are authorized to operate their

---

[2] On February 18, 2021, the Debtors retained Stephen Bullock, former Montana Governor and former Montana Attorney General, to serve as monitor (the "**Monitor**") to oversee compliance with the Voluntary Injunction described *infra*. Secretary of Agriculture Thomas J. Vilsack previously served as Monitor.

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code. On September 26, 2019, the United States Trustee for the Southern

District of New York (the "**U.S. Trustee**") appointed the official committee of unsecured creditors

(the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [ECF No. 131].

5.      These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule

1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [ECF No. 59] entered

by the Court in each of the Chapter 11 Cases.

6.      Additional information about the Debtors' businesses and the events leading up to

the Petition Date can be found in the *Debtors' Informational Brief* [ECF No. 17].

7.      On September 18, 2019, Purdue Pharma L.P. and certain other of the Debtors filed

the *Motion for a Preliminary Injunction* [Adv. Proc. No. 19-08289, ECF No. 2, 3] (the

"**Preliminary Injunction Motion**"). Among other things, the Preliminary Injunction Motion

sought entry of a voluntary injunction order against the Debtors, enjoining Debtors from, *inter

alia*, promoting opioid products and providing financial support to third parties for the purpose of

promoting opioids or opioid products, subject to enforcement by the Court (the "**Voluntary

Injunction**"). On November 6, 2019, the Court entered the *Second Amended Order Pursuant to

11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction* granting the Preliminary

Injunction Motion, including the Voluntary Injunction, until April 8, 2020 [Adv. Proc. No. 19-

08289, ECF No. 105]. On July 12, 2023, the Court issued the *Thirty-Third Amended Order

Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, extending the

Preliminary Injunction, including the Voluntary Injunction, through and including the date that is

the earlier of (1) the date that an order confirming a plan of reorganization is entered and not

subject to any stay, including the stay pursuant to Bankruptcy Rule 3020(e); and (2) the date 30

days after entry of an opinion or order vacating or reversing the May 30, 2023 judgment of the United States Court of Appeals for the Second Circuit in the appeals consolidated and captioned as *In re Purdue Pharma L.P. et al.*, No. 22-110-bk(L) (the "**Second Circuit Decision**"), provided, however, if the Preliminary Injunction remains in effect pursuant to the Injunction Order on December 15, 2023, any party in interest, for cause shown and upon proper notice, may thereafter move to shorten or terminate the Preliminary Injunction [Adv. Proc. No. 19-08289, ECF No. 432] (as amended from time to time, the "**Injunction Order**").

8.      On May 22, 2023, as required by the Voluntary Injunction, the Monitor filed the *Fourteenth Monitor Report* [ECF No. 5624] (the "**Fourteenth Report**") with the Court, describing actions taken by the Monitor to date to determine compliance with the terms and conditions of the Voluntary Injunction, areas of further inquiry and a set of recommendations.

## Retention of Expert Legal and Consulting Services Provider By the Monitor

9.      The Voluntary Injunction provides that the Monitor "shall have the authority to employ, upon Court approval, at the cost and expense of the Debtors' estates, such consultants, accountants, attorneys, and other representatives and assistants as are necessary to carry out the Monitor's . . . responsibilities."  Voluntary Inj. Part II Section H paragraph 4(b), Adv. Proc. No. 19-08289, ECF No. 432.  By this motion, and in furtherance of the relief granted by the Court under the Injunction Order, the Debtors, on behalf of the Monitor, seek entry of an order permitting the Monitor to retain McGraw to better enable the Monitor to oversee and evaluate the Debtors' compliance with certain aspects of the Voluntary Injunction.  The Debtors are filing this Motion because they seek authorization to pay the fees and expenses of McGraw and because the Monitor has not retained counsel in connection with these Chapter 11 Cases generally.

10.     The Debtors' primary sales channel for prescription products is through wholesalers, who sell these products to retail drugstores, mass merchandisers, pharmacies, hospitals, long-term care and other retail and non-retail institutions in the United States.  These buyers, in turn, dispense these products to patients.  Pursuant to the Voluntary Injunction, the Debtors have agreed to implement an effective monitoring and reporting system that, among other things, includes processes and procedures that "[r]easonably utilize available Downstream Customer Data [i.e., data that the Debtors collect relating to their direct customers' sales to downstream customers] to identify whether a downstream customer poses a material risk of diversion" of the Debtors' products and that "[a]nalyze all information that the Company receives that indicates an unreasonable risk of diversion . . . or an unreasonable potential for diversion activity . . . by a direct customer or downstream customer."  Voluntary Inj. Part II Section G paragraphs 1(b), (c).  As discussed in recent reports of the Monitor, the Debtors receive information regarding individual prescriptions under their contracts with pharmacy benefit managers ("**PBMs**").  However, the Debtors contend that this prescribing information is confidential and can only be used by the Commercial Department for rebate validation purposes, and use of that data for any other purpose, including for Suspicious Order Monitoring ("**SOM**") purposes, is contractually prohibited. Moreover, the Debtors further contend that these contractual prohibitions likely stem from the PBMs' obligations under the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"). In the Fourteenth Report, the Monitor noted that he intended to "seek leave of the Court to contract with counsel or a consultant to further explore whether notice can be provided to the SOM team without violating HIPAA."  The Monitor accordingly proposes to engage McGraw as an independent contractor to assist him with rendering advice in the area of HIPAA, the Department of Health and Human Services ("**HHS**"), and the obligations of

individuals and entities as they relate to HIPAA and HHS, preparing written reports regarding such advice and opinions, and participating in meetings or calls as requested by the Monitor.  McGraw has the necessary expertise as a result of education, training and experience.  The terms of the proposed engagement are set forth in the engagement agreement attached as **Exhibit B** hereto (the "**Engagement Agreement**").

### Debtors' Reservation of Rights

11.    Nothing contained herein or any action taken pursuant to such relief is intended or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder or any other party; or (d) an approval, assumption, adoption or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

### Waiver of Stay Under Bankruptcy Rule 6004(h)

12.    To successfully implement the foregoing, the Debtors request that this Court enter an order providing that the Debtors have established cause to exclude the relief requested herein from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

13.    Notice of this Motion will be provided to (a) the entities on the Master Service List (as defined in the *Second Amended Order Establishing Certain Notice, Case Management, and Administrative Procedures* entered on November 18, 2019 [ECF No. 498] (the "**Case Management Order**") and available on the Debtors' case website at https://restructuring.ra.kroll.com/purduepharma) and (b) any person or entity with a particularized

interest in the subject matter of this motion.  The Debtors respectfully submit that no further notice is required.

## No Prior Request

14.    The Debtors have not previously sought the relief requested herein from the Court or any other court.

WHEREFORE, the Debtors, on behalf of the Monitor, respectfully request that the Court enter the proposed form of order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:    August 28, 2023
          New York, New York

DAVIS POLK & WARDWELL LLP

By:    */s/ Eli J. Vonnegut* _____

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

**PURDUE PHARMA L.P.**, *et al.*,

Debtors.[1]

**Chapter 11**

**Case No. 19-23649 (SHL)**

**(Jointly Administered)**

---

### ORDER PERMITTING THE MONITOR TO EMPLOY LEGAL CONSULTANT AT THE COST AND EXPENSE OF THE DEBTORS

Upon the motion (the "**Motion**")[2] of Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") for entry of an order (this "**Order**") permitting the Monitor to employ Deven McGraw ("**McGraw**"), at the cost and expense of the Debtors, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided to the Notice Parties and the opportunity for a hearing thereon having been provided; and there being no objections to the requested relief; and it appearing that no other or further notice or a hearing is required; and after due deliberation the Court having determined that there is good and sufficient cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest,

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted.

2.      The Monitor is authorized to retain McGraw to assist the Monitor in carrying out its responsibilities under the Voluntary Injunction, as set forth in the Motion, and to render the services described in the Engagement Agreement.

3.      The Debtors are authorized to compensate McGraw in accordance with the terms of the Engagement Agreement upon the receipt by the Debtors of reasonably detailed invoices setting forth the services provided by McGraw to the Monitor, and to reimburse McGraw for all reasonable and necessary expenses they may incur, upon the presentation to the Debtors of appropriate documentation, without the need for McGraw to file fee applications or otherwise seek Court approval for the compensation of their services to the Monitor and reimbursement of expenses; *provided* that McGraw's fees and expenses shall be subject to final approval of the Court.

4.      The contents of the Motion and the notice procedures set forth therein are good and sufficient notice and satisfy the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

2

5.      The Debtors are authorized to take all such actions as are necessary or appropriate to implement the relief granted in this Order.

6.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

White Plains, New York
Dated: _____, 2023

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Engagement Agreement**

Deven McGraw
117 Quay Street
Alexandria, VA 22314

August 3, 2023

VIA EMAIL TO STEVE.BULLOCK@GMAIL.COM

Stephen Bullock
201 East Broadway Street
Suite A
Helena, MT 59601

Dear Mr. Bullock:

This engagement letter agreement ("Agreement") is entered into between Deven McGraw
("Consultant") with a principal place of business at 117 Quay Street, Alexandria, Virginia

and

NEXTCHAPTER, LLC with a principal place of business at 201 East Broadway Street, Suite A,
Helena, MT. 59601 ("Company").

(each herein individually referred to as a "Party" or collectively as the "Parties").

Stephen C. Bullock, Manager-Member of NextChapter, LLC, serves as duly appointed Independent
Monitor ("Monitor") for Purdue Pharma L.P. ("Purdue") pursuant to an Order issued in the Chapter
11 Bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New
York entitled *In re: Purdue Pharma L.P., et al.*, Case No. 19-23649 (RDD). NextChapter, LLC is
entering into the Agreement with Consultant as part of Mr. Bullock's duties and responsibilities as
Monitor.

Consultant is being engaged to render expert legal and consulting services to the Monitor in
connection with certain obligations undertaken by Purdue Pharma as outlined in a voluntary
injunction entered by the court in the matter listed above, as well as outlined in the operating
injunction that would take effect following emergence from bankruptcy (the "Matter"). This
Agreement is effective as of the date of the last signature to this Agreement.

## I. Engagement and Performance

The Company has retained Consultant as an Independent Contractor to render expert and legal
services pertaining to the Monitor's duty to evaluate and report on certain obligations voluntarily
agreed to by Purdue Pharma and may include:

(1) Consulting with and evaluating evidence and information relevant to the Matter, to
render an opinion and advice based on my knowledge and expertise in the area of The

Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Department of Health and Human Services ("HHS"), and the obligations of individuals and entities as relates to HIPAA and HHS;

(2) Preparation of one or more written reports regarding such opinions;

(3) Participation in meetings or calls as requested by the Monitor.

Consultant shall use best efforts to meet all schedules, timetables, and deadlines to which the Parties may set and mutually agree.

Nothing in this Agreement shall be construed to make either Party the joint venturer, partner, employee, or agent of the other. Neither Party shall exercise control over the business or activities of the other.

In undertaking to perform the services hereunder, the Parties agree that Consultant is doing so as an independent contractor and not as an employee of Company or of any entity by which she may be employed. To the extent Consultant is employed by any entity, she may not disclose this Matter to that entity other than the fact that she is acting as a consultant, nor shall Consultant utilize any of such employer's resources in the performance of Consultant's services herein. As an independent contractor, Consultant shall only be entitled to the payments set out in this Agreement and any relevant statement of work hereunder.

Neither Party shall have the power or authority to bind the other Party or to assume or create any obligation or responsibility, express or implied, on the other Party's part or in the other Party's name and neither Party shall represent to any person or entity that either Party has such power or authority to act on behalf of the other Party.

Consultant acknowledges and agrees that the Monitor has explained the nature of the Matter, the relevant parties, and the issues involved in it, and that: (i) Consultant has no conflict of interest in providing any services to the Company either individually or by virtue of any other employment; (ii) Consultant believes that she has the necessary expertise, as a result of her education, training, and experience, and know of no reason why Consultant cannot complete the work described above, including if necessary and agreed by the Parties hereto, and preparing written materials regarding Consultant's opinions; (iii) Consultant can, consistent with her other obligations, devote sufficient time and attention to this Matter to assist the Monitor.

2

## II. Fees and Charges

### (a) General Rates.

The Parties agree that Consultant shall be compensated at the rate of $700 per hour for her work. The Parties agree and acknowledge that Consultant's fee is in no way contingent upon the nature of Consultant's findings or opinions, presentation of these findings or opinions in testimony, or the outcome of any proceeding. Consultant understands that the Company or Monitor will seek reimbursement of any charges that Consultant incurs from the bankruptcy estate and/or Purdue Pharma upon emergence from bankruptcy.

### (b) Other Charges and Expenses.

Consultant shall be entitled to reimbursement for any reasonable and necessary out-of-pocket costs that may incur in connection with this Agreement, subject to the following limitations applicable to travel, if any, in connection with the Matter:

Airfare: Reimbursement at cost for full fare coach tickets for flights.
Hotel: Reimbursement at cost for hotel accommodations totaling $450.00 or less per night.
Meals: Reimbursement at cost for meals totaling $20 or less for breakfast, $45 or less for lunch or dinner.

### (c) Billing Practices.

All bills, which shall include a reasonable description of tasks performed, shall be emailed to the Company/Monitor (at steve.bullock@gmail.com) on or around the first day of each month, commencing on September 1, 2023. The Monitor will review such bills and, absent any issues with the bills warranting further discussion, payment is due 75 days from submission.

## III. Confidentiality

In the course of Consultant's work, the Monitor may supply Consultant with certain confidential information and documents in connection with the Matter. In addition, Consultant may also generate certain confidential documents. All communications and transmission of documents between or among the Company, Monitor and Consultant (and any agents working for or retained by or for any of the foregoing), as well as any information or documents developed by Consultant, in connection with the Matter are solely for the purpose of assisting and advising the Monitor. These communications and documents are or may be subject to privilege or other protections, including, but not limited to, the attorney-client and work product privileges, and must, therefore, be treated with the strictest confidentiality. For the purposes of this paragraph, "documents" shall refer to any correspondence, memoranda, reports, recordings, notes, drafts, data compilations, other writings, drawings, charts, or graphs, including all documents stored electronically.

3

## IV. <u>Conflicts</u>

Consultant agrees that during the term of this engagement, Consultant is not acting as counsel to Purdue Pharma, and there is no attorney-client relationship between Consultant and Purdue Pharma.

## V.    <u>Resolution of Disputes - Mediation and Arbitration</u>

Although the Parties do not expect that differences will arise between the Parties, as lawyers the Parties recognize that disagreements can happen and it is therefore wise to agree upon a procedure for resolving them fairly and expeditiously. Accordingly, other than with respect to any dispute arising during the bankruptcy matter of Purdue Pharma as to which the presiding court has jurisdiction, including with respect to the approval of my fees, disbursements and charges, any dispute arising out of or relating to our rendering professional services to you will first be submitted to private, confidential non-binding mediation with a mediator jointly selected, or failing a joint selection with a mediator selected by the New York office of JAMS.

If resolution through mediation is not achieved, any such dispute will be finally resolved by private, confidential binding arbitration. The arbitration will be conducted before a panel of three arbitrators of whom each party shall select one, and the third shall be selected by the two party selected arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation or enforceability of any of these procedures shall be governed by the Federal Arbitration Act and resolved by the arbitrators. Discovery shall be permitted only to the extent expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery. The arbitration panel shall have no power to award non-monetary or equitable relief or to award damages in the nature of punitive, exemplary, statutory, consequential or other damages in excess of compensatory damages. The arbitrators shall issue a final award in writing as promptly as practicable which shall be binding on each of the Parties. Judgment on an award may be entered in any court having jurisdiction. All information concerning the fact, substance or result of the arbitration shall remain confidential and not disclosed except to the extent necessary to enforce the award or as otherwise required by law. The arbitrators' fees and expenses shall be borne equally by the parties. Each Party shall bear the fees and expenses of its counsel.

DocuSign Envelope ID: B40F249B-7681-441C-BEE2-0FEE662DE9CD

## VI.    Governing Law and Entire Agreement

This Agreement shall be governed by the laws of the State of New York without regard to the principles of conflicts of law. The Parties hereby consent to submit themselves to the personal jurisdiction of the federal or state courts located in the State of New York in any suit, action, or proceeding arising out of or relating to this Agreement.

This Agreement sets forth the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements, arrangements, and understandings, written or oral, relating thereto, including that certain engagement letter agreement, dated July 21, 2023, between Deven McGraw and Stephen Bullock ("Prior Agreement"), which such Prior Agreement, for the avoidance of any doubt, shall hereinafter be rendered null and void. No representation, promise, or inducement has been made by either Party that is not embodied in this Agreement and neither Party shall be bound by or liable for any alleged representation, promise, or inducement not so set forth.

## VII.   Termination

Company may terminate this relationship at any time by giving Consultant written notice, subject to the obligation of paying Consultant according to the terms of this Agreement. Consultant, in turn, may withdraw from the representation upon reasonable notice for any reason, if Consultant determines in her reasonable discretion that termination is permissible under the applicable rules of professional responsibility.

Dated: _____8/6/2023_____

DocuSigned by:

*Deven C McGraw*

509182E2725F4EC...

DEVEN MCGRAW

Dated:__8/6/2023__

NEXTCHAPTER, LLC

5

DocuSign Envelope ID: B40F249B-7681-441C-BEE2-0FEE662DE9CD