UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re

PURDUE PHARMA L.P., *et al.*,

                            Debtors.
-----------------------------------------------------------------x
MARIA ECKE,

                            Appellant,                    **OPINION & ORDER**

        – against –

                                                     No. 22-CV-4134 (CS)

PURDUE PHARMA L.P., *et al.*,

                            Appellees.
-----------------------------------------------------------------x

Appearances:

Maria Ecke
West Simsbury, Connecticut
*Pro Se Appellant*

Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Jacquelyn S. Knudson
Davis Polk & Wardwell LLP
New York, New York
*Counsel for Appellees*

Seibel, J.

       The instant appeal concerns the April 29, 2022 Order, (A. 288-89 (the "April 29

Order")),[1] entered by Judge Robert D. Drain, then of the United States Bankruptcy Court for the

---

[1] Citations with the prefix "A." refer to documents in the Appendix filed by Appellees. (ECF No. 19-1.) Citations with the prefix "Bankr. ECF No." refer to documents filed in the United States Bankruptcy Court for the Southern District of New York under docket number 19-BK-23649.

Southern District of New York, in the chapter 11 bankruptcy proceedings captioned *In re Purdue Pharma L.P., et al.*, No. 19-BK-23649 (Bankr. S.D.N.Y.), that denied Appellant's Motion for Reconsideration, (A. 217 (the "Reconsideration Motion")), Motion to Accept the Personal Injury Claim No. 628554 for the Estate of David Jonathan Ecke, (A. 218 (the "Late Claim Motion")), and Amended Motion for Reconsideration, (A. 280-87 (the "Amended Reconsideration Motion," and together with the Reconsideration Motion and the Late Claim Motion, "Appellant's Motions")), all of which sought leave to file a proof of claim on behalf of the estate of her late son after the applicable bar date for such claims to be filed, (*see* April 29 Order at 1-2). The Bankruptcy Court's Order also denied Appellant's Motions insofar as they sought "reconsideration of . . . prior orders denying requests for immediate allowance and payment of prepetition claims," (*id.* at 2), and relief regarding certain matters then pending before the United States Court of Appeals for the Second Circuit and the United Stated District Court for the District of Delaware, (*id.*).

For the following reasons, the Bankruptcy Court's Order is AFFIRMED.

**I.    BACKGROUND**

I assume the parties' familiarity with the underlying bankruptcy proceedings, and I recite only those facts relevant to the disposition of this matter.[2]

---

[2] Rule 8018 of the Federal Rules of Bankruptcy Procedure requires an appellant to serve and file with her principal brief excerpts of the record as an appendix. *See Vesnic v. O'Toole*, No. 20-CV-1423, 2022 WL 17404784, at *1 n.1 (S.D.N.Y. Dec. 2, 2022). Appellant failed to do so. While the Court is mindful of Appellant's *pro se* status, it notes that it issued several orders detailing Appellant's obligations under the rules and/or directing her to helpful resources. (*See* ECF Nos. 4, 7, 9.) Because Appellant did not file an appendix, the Court will permit the appeal to proceed on the original record. *See* Fed. R. Bankr. P. 8018(e). For ease of reference, however, it will cite to Appellees' Appendix where possible.

2

A. **Appellant's Participation in the Bankruptcy Proceedings**

On September 15, 2019, various U.S.-based Purdue Pharma entities filed for bankruptcy relief (the "Chapter 11 Cases"). (Bankr. ECF No. 1.) Appellant has participated in the Chapter 11 Cases as a litigant since at least 2020 and has filed several motions and letters with the Bankruptcy Court. (*See, e.g.*, A. 84, 91-92, 190, 196; *see also* A. 357 (Judge Drain describing Appellant as having "been quite active in this case").)

On February 3, 2020, the Bankruptcy Court entered an order setting June 30, 2020 as the general bar date for all claimants, including personal injury claimants. (*See* A. 1 (the "Bar Date Order").) The Bar Date Order provided, among other things, that any persons or entities seeking to assert an opioid-related claim for "damages based on personal injury to the claimant or another individual" had to submit their claim on or before 5:00 PM on June 30, 2020. (A. 2-3.) The Bar Date Order contained a personal injury proof of claim form to be used for claims for "personal injury to the claimant or another (for example, deceased, incapacitated, or minor family member)." (A. 36.) On June 3, 2020, the Bankruptcy Court entered an order extending the bar date to July 30, 2020. (A. 70.)

On September 17, 2021, the Bankruptcy Court issued an order detailing findings of fact and conclusions of law, and confirming Appellees' proposed Chapter 11 Plan (the "Plan"), (*see* A. 185), which determined, among other things, that Appellees had provided extensive notice of the bar date to known and potential claimants via a Bar Date Notice Plan that employed a wide array of media including direct mailings, television, radio, print media, billboards, online advertisements, social media, and press releases, (*see* A. 186-87). Those efforts ultimately "reached an estimated 98% of all adults 18 years and older in the United States with an average frequency of message exposure of eight times . . . ." (A. 187.) As a result, Judge Drain

3

"determine[d] that the Notice of the General Bar Date provided, in part, through the Bar Date Notice Plan, was reasonable and appropriate, and provided due, proper, adequate, timely, and sufficient notice of the General Bar Date and the procedures for filing proofs of claim . . . ." (*Id.*) In total, over 614,000 claimants filed proofs of claims, including more than 130,000 personal injury victims. *See In re Purdue Pharma, L.P.*, 635 B.R. 26, 62 (S.D.N.Y. 2021).

On May 26, 2020, Appellant filed four proofs of claim, each in the amount of $242,000,000, on behalf of herself, Andrew Ecke, Richard Ecke, and Peter Sottile, all based on the death of her son, David Jonathan Ecke. (A. 357.) On November 25, 2020, Appellant moved for the immediate payment of those four claims in full. (A. 78.) The Bankruptcy Court denied that motion, stating that immediate payment of Appellant's claims "would violate the fundamental Bankruptcy Code principles of similar treatment of similar claims and the resolution and treatment of general unsecured claims under a chapter 11 plan." (A. 83.)

On December 30, 2020, Appellant filed a letter in which she set forth her displeasure with a potential $3 billion dollar settlement with the Sackler family[3] and requested that Appellees pay the amounts reflected in her four timely filed proofs of claim. (A. 84.) On August 2, 2021, Appellant filed a letter objecting to the Plan. (A. 91.) Appellant again voiced her objections at the Plan's confirmation hearing. (*See* A. 100-08.) On September 17, 2021, the Bankruptcy Court confirmed the Plan over the objections of Appellant and others. (*See* A. 169-184.)

---

[3] Members of the Sackler family owned Appellee Purdue Pharma L.P. and served as directors, executives and officers of the company. *See In re Purdue Pharma L.P.*, 69 F.4th 45, 56, 58 (2d Cir. 2023), *cert. granted sub nom. Harrington v. Purdue Pharma L.P.*, No. 23-124, 2023 WL 5116031 (U.S. Aug. 10, 2023).

4

Appellant filed a Notice of Appeal on October 4, 2021, challenging the Plan's confirmation. (A. 190.)[4]

On November 8, 2021, Appellant filed a motion for disqualification of Judge Drain and immediate payment of her four previously filed claims. (A. 196-202.) Ten days later, on November 18, 2021, Appellant filed an additional proof of claim on behalf of the Estate of David Jonathan Ecke, seeking $242,000,000 in damages (the "Late Claim"). (A. 218.) Appellant filed additional motions on January 21, 2022, including one requesting to participate in mediation involving eight states, the District of Columbia and representatives of the Sackler family, (A. 219), and another again requesting payment of her proofs of claim and that Judge Drain be disqualified, (*see* A. 221-29). Both motions were denied. (*See* A. 230, 235.) On March 7, 2023, Appellant objected to the Debtors' motion to approve a settlement term sheet between certain trusts and members of the Sackler family on the one hand and eight states and the District of Columbia on the other, (A. 237-39), but the Bankruptcy Court approved the settlement term sheet on March 9, 2022, (A. 240-43).

### B. The Relevant Motions and Order on Appeal

On January 20, 2022, Appellant filed the Late Claim Motion, alleging that she "did not know that [she] was required to file a proof of injury claim for [her] son David Jonathan Ecke prior to the bar date," and requesting that the Late Claim be accepted so that she could start a foundation in her deceased son's name. (A. 218.) That same day, she also filed the Reconsideration Motion requesting that the Bankruptcy Court "reconsider adding the Estate of

---

[4] On appeal to the District Court, Judge Colleen McMahon vacated Judge Drain's decision to confirm the Plan. *See In re Purdue Pharma, L.P.*, 635 B.R. 26 (S.D.N.Y. 2021). The Second Circuit reversed, *see In Re Purdue Pharma L.P.*, 69 F.4th 45 (2d Cir. 2023), and the Supreme Court has granted *certiorari*, *see Harrington v. Purdue Pharma L.P.*, No. 23-124, 2023 WL 5116031 (U.S. Aug. 10, 2023).

5

David Jonathan Ecke . . . ." (A. 217.) Several months later, on April 26, 2022, Appellant filed the Amended Reconsideration Motion, "asking to find out what happened to [her] deceased son, David Jonathan Ecke's Claim," and explaining that she "filed this Claim late because [she] never received an order from the Court to allow it." (A. 280.) The Amended Reconsideration Motion also alleged that the third-party releases contemplated by the Plan were illegal under the Bankruptcy Code, (A. 282-83), and raised various arguments concerning the third-party releases at issue in a case called *Mallinckrodt* then pending in the District of Delaware,[5] (A. 280, 282-83). Appellees filed an omnibus objection to the Late Claim Motion and the Reconsideration Motion, (*see* A. 276-78), but did not address the Amended Reconsideration Motion in writing because it was filed six days after the omnibus objection and a day before the hearing on the motions, (A. 280).

On April 27, 2022, Judge Drain held a hearing on, among other things, Appellant's Motions concerning her deceased son's claim, (*see* A. 294-372), noting that all three motions "ultimately [were] seeking to have [the Late Claim] filed on behalf of David's estate . . . deemed timely filed, notwithstanding that . . . it was filed well over a year late," (A. 351:16-22). In evaluating the merits of Appellant's Motions, Judge Drain applied the excusable neglect standard set forth in *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), and concluded that:

- Because all of the claims were filed "in the amount of $242 million" and "based upon the death of David Ecke," it was possible that Appellant "may be able to amend one of those claims to cover . . . a claim by his estate," (A. 357:12-21; *see* A. 358:16-25);

- But Appellant had not shown excusable neglect for untimely filing the Late Claim, as it was "well within her ability to file th[e] [Late Claim] on behalf of [her son's] estate in a timely fashion," given that she "has been quite active in

---

[5] *See generally In re Mallinckrodt plc, et al.*, No. 21-CV-268 (D. Del.).

6

>  this case, filing numerous pleadings," including "timely fil[ing] months before
> the bar date four proofs of claim on behalf of herself [and others]," (A. 357:3-
> 11, 21-23).

Judge Drain also found that the Late Claim was "well over a year late and, given the negotiation of the [P]lan and the confirmation of the [P]lan . . . the debtor would be prejudiced by having another standalone proof of claim for $242 million asserted late," (A. 357:24-358:5.); that insofar as the Motions for Reconsideration sought reconsideration of earlier orders denying Appellant's request for immediate payment of the claims she timely filed, the Motions were denied because they failed to set forth any basis to reconsider the Bankruptcy Court's earlier ruling that there was no ground to prefer Appellant's claims over those of thousands of other claimants, (A. 351:23-352:15; *see* A. 341:15-343:4); and that the Bankruptcy Court had no jurisdiction to consider any arguments concerning the *Mallinckrodt* case, which was pending before a different court, (A. 349:12-350:17, 353:3-8), or the Plan's third-party releases, the validity of which was on appeal to the Second Circuit at the time, (A. 353:8-14).

Judge Drain subsequently issued an Order memorializing his rulings from the April 27 Hearing, (*see* April 29 Order), and the instant appeal followed, (*see* ECF No. 1).

## II.     LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court. "A district court reviews a bankruptcy court's conclusions of law *de novo*, its discretionary decisions for abuse of discretion, and its

7

findings of fact for clear error." *In re Depietto*, No. 20-CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021).[6]

A bankruptcy court's denial of a request to file a late proof of claim is reviewed for abuse of discretion, *see In re Westinghouse Elec. Co. LLC*, No. 22-CV-1739, 2023 WL 2561589, at *3 (S.D.N.Y. Mar. 17, 2023), as is a bankruptcy court's denial of a motion for reconsideration, *Ferreira v. Stern*, No. 22-CV-2182, 2023 WL 2787631, at *6 (E.D.N.Y. Apr. 4, 2023). Under the abuse of discretion standard

> [r]elief from the district court is appropriate only when the bankruptcy court's decision either (i) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (ii) though not necessarily the product of legal error or clearly erroneous factual finding, cannot be located within the range of permissible decisions.

*In re Refco Inc.*, No. 07-CV-10708, 2009 WL 2355808, at *2 (S.D.N.Y. July 29, 2009); *see S.E.C. v. Bankosky*, 716 F.3d 45, 47 (2d Cir. 2013) (reviewing court "will reverse [for abuse of discretion] only if [it] ha[s] a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors."). This standard is "highly deferential," *In re Lehman Bros. Holdings, Inc.*, 435 B.R. 122, 131 (S.D.N.Y. 2010), *aff'd sub nom. Suncal Cmtys. I LLC v. Lehman Com. Paper, Inc.*, 402 F. App'x 634 (2d Cir. 2010), and "[m]atters concerning decisions within the discretion of bankruptcy judges will not be disturbed by the district court unless the district court finds that no reasonable [person] could agree with the bankruptcy judge's decision," *In re Integrated Res., Inc.*, 157 B.R. 66, 72 (S.D.N.Y. 1993); *see In re Enron Corp.*, 419 F.3d 115, 124 (2d Cir. 2005).

---

[6] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes. The Court will send Appellant copies of any unpublished decisions cited in this Opinion and Order.

8

A bankruptcy court's determination that it lacks jurisdiction is a question of law that is reviewed *de novo*. *See In re PB Life & Annuity Co., Ltd.*, No. 22-CV-5122, 2023 WL 4865929, at *3 (S.D.N.Y. July 31, 2023) ("Questions about a bankruptcy court's subject matter jurisdiction . . . are legal questions that are reviewed *de novo*."); *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999) ("The holding of a bankruptcy court . . . that it has jurisdiction is a legal determination which we review *de novo*.).

### B. *Pro Se* Litigants

Submissions by *pro se* litigants are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*). *Pro se* litigants are not, however, "exempt[ed] . . . from compliance with relevant rules of procedural and substantive law," *Braun v. Client Servs.*, 14 F. Supp. 3d 391, 395 (S.D.N.Y. 2014), and are instead "generally . . . required to inform themselves regarding procedural rules and to comply with them," *Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008).

## III. DISCUSSION

Appellant's opening brief, (ECF No. 18 ("Appellant Br.")), directly addresses the Late Claim only in a single paragraph, (*see id.* at 9). Nevertheless, the Court will consider the available record and construe her submissions to make the strongest arguments they suggest, given her *pro se* status.

Appellant primarily argues that the denial of her request to file the Late Claim was an abuse of discretion because she was unaware that she had to file a separate claim on behalf of her son's estate, such that the untimely filing of the Late Claim constituted excusable neglect. (*See*

9

*id.* at 9 ("why is [Appellees' counsel] saying that [the Late Claim], which I did not know that I could start at the same time as my own claim, that the [Late Claim] should not be upheld?"). She notes the trauma opioids have inflicted on individuals who were prescribed such drugs, (*see id.* at 1-2), and the "pain, anguish, [and] grief . . . inflicted [on their family members] by Purdue Pharma and this 'Plan,'" (*id.* at 2), arguing that bankruptcy proceedings have deprived her, and other family members of those who died from opioid use, of due process of law, (*id.* at 1-2).

The Court sympathizes with Appellant's suffering and that of her loved ones. But its role is to apply the law, and that sometimes means that a sympathetic party is not entitled to relief.

### A. The Bankruptcy Court's Application of the *Pioneer* Excusable Neglect Test

"Bar dates are critically important to the administration of a successful chapter 11 case" and "serve as an integral part of the reorganization process" by allowing for "the efficient administration of bankruptcy cases." *In re Ditech Holding Corp.*, No. 19-BK-10412, 2022 WL 1750997, at *9 (Bankr. S.D.N.Y. May. 28, 2022). "Accordingly, bar dates are strictly enforced," *id.* (collecting cases), and filling a proof of claim after the bar date is typically fatal, *see In re Lehman Bros. Holdings, Inc.*, 433 B.R. 113, 122 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (Bankr. S.D.N.Y. 2011). Pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), however, a bankruptcy court may allow a party to file a late proof of claim where the party's failure to timely file "was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1); *see In re Motors Liquidation Co.*, 599 B.R. 706, 715 (S.D.N.Y. 2019).

A court evaluates "all relevant circumstances" when assessing whether a party has shown "excusable neglect," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was

10

within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs.*, 507 U.S. at 394-95. "The Second Circuit has taken a hard line on excusable neglect, finding that . . . the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced." *Curet v. United States*, No. 14-CV-2703, 2017 WL 5897410, at *3 (E.D.N.Y. Nov. 29, 2017). "This hard line approach focuses primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant." *In re Residential Cap. Corp.*, No. 12-BK-12020, 2014 WL 1363368, at *2 (Bankr. S.D.N.Y. Apr. 7, 2014); *see Piña v. United States*, No. 20-CV-1371, 2022 WL 782996, at *4 (S.D.N.Y. Mar. 15, 2022) ("The Second Circuit has emphasized . . . that it is the third factor – the reason for the delay – that predominates, and the other three are significant only in close cases.").

Consistent with such precedent, Judge Drain assessed the reason for the delay, and whether it was within Appellant's reasonable control, as the predominant factor in evaluating her request to file the Late Claim. (*See* A. 356:8-357:23.) He explained that Appellant had "been quite active in this case, filing numerous pleadings . . . [and] timely fil[ing] months before the bar date four proofs of claim," such that it was "well within her ability to file the [Late Claim] in a timely fashion," (A. 357:3-11), and determined that her failure to timely file the Late Claim therefore did not constitute excusable neglect, (A. 357:21-23).

This conclusion falls squarely within the Circuit's "excusable neglect" precedent, which cautions that "the equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule and . . . where the rule is entirely clear . . . a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Enron Corp.*, 419 F.3d at 123.

11

Here, claimants like Appellant received extensive notice of both the bar date and the requirements to timely file a proof of claim, *i.e.*, the relevant court rules. (*See* A. 2-3, 70, 186-87.) Appellant's submissions, including her timely filed proofs of claim, (*see, e.g.*, A. 218, 280, 357), indicate that she was on notice of the bar date, and she does not deny that she got such notice. While she maintains that she was unaware that she could file the Late Claim at the same time as the other proofs of claim she filed prior to the bar date, (*see* Appellant Br. at 9), she offers no reason why she would have thought that a claim on behalf of her late son's estate would have been subject to a different date. In any event, such confusion does not constitute excusable neglect. *See In re Sirgold, Inc.*, No. 16-BK-12963, 2023 WL 3215881, at *4 (Bankr. S.D.N.Y. May 2, 2023) ("[T]he Second Circuit has noted that . . . inadvertence, ignorance of the rules, or mistakes construing the rules are not usually adequate explanations for the delay" and "[w]here a creditor was on notice of the bar date and fails to act, courts generally do not find excusable neglect"); *see also Phillips v. 7912 Merchs. Ins. Grp.*, No. 98-7912, 1999 WL 278526, at *2 (2d Cir. May 4, 1999) (district court abused discretion in granting extension of time on ground that *pro se* litigant was confused as to filing deadline); *Jevo, Inc. v. Cyclone Fitness*, No. 09-CV-2237, 2010 WL 11595237, at *6 (S.D.N.Y. June 2, 2010) ("[E]ven *pro se* litigants must comply with court orders and [procedural rules]."); *Straehle v. Ina Life Ins. Co.*, No. 01-CV-7180, 2005 WL 3388612, at *3 (E.D.N.Y. Dec. 8, 2005) (*pro se* litigant's "garden variety claim of ignorance of the law" insufficient to demonstrate excusable neglect, especially where rules were not ambiguous or confusing and litigant "simply failed to timely make the inquiries necessary to ensure that she understood her rights and obligations").[7]

---

[7] Although unnecessary in light of his determination that Appellant failed to make a sufficient showing as to the "critical" *Pioneer* factor of the reason for the delay, (A. 357:24),

12

In short, nothing contained in Appellant's papers or the record indicates that Judge Drain's determination that Appellant failed to establish excusable neglect as to the Late Claim was so "arbitrary and irrational" that it "cannot be located within the range of permissible decisions." *In re Litas Int'l, Inc.*, No. 04-CV-620, 2004 WL 1488114, at *3 (S.D.N.Y. June 30, 2004).[8]

---

Judge Drain also evaluated the remaining *Pioneer* excusable neglect factors – the danger of prejudice to the debtor, the length of the delay and its impact on the case, and whether the movant acted in good faith, (*see* A. 355:19-25, 357:24-358:15). As to those factors, he noted the risk of prejudice from a new standalone claim for $242 million, given that the Plan had already been negotiated and confirmed, (A. 358:1-5; *see* A. 355:17-20), that the Late Claim had been submitted "well over a year late," (A. 358:25), and that although "the good faith argument goes in favor of the movant," that factor was not particularly relevant, (A. 358:6-10).

These determinations are consistent with Second Circuit precedent applying the relevant *Pioneer* factors. *See, e.g.*, *In re Enron Corp.*, 419 F.3d at 127-28, 131 (upholding bankruptcy court's determinations that six month delay was "substantial" and that late-filed claim prejudiced debtors "because allowing late-filed proof of claims . . . would adversely affect the Debtors' assessment of their liabilities and negatively impact the bankruptcy proceedings"); *In re 199 E. 7th St. LLC*, No. 17-CV-545, 2017 WL 2226592, at *2 (S.D.N.Y. May 19, 2017) (delay of "more than three months" was "significant" enough for length of delay factor to weigh against appellant) (collecting cases); *In re N. New England Tel. Operations, LLC*, No. 14-CV-2187, 2014 WL 3952925, at *12 (S.D.N.Y. Aug. 12, 2014) (determination that good faith factor did not favor either party "clearly does not constitute abuse of discretion" where remaining three *Pioneer* factors weighed against finding of excusable neglect), *aff'd*, 795 F.3d 343 (2d Cir. 2015).

Because the Court can discern no misapplication of *Pioneer* in the additional analysis Judge Drain undertook in an abundance of caution, he did not abuse his discretion. *See In re Schneider*, No. 14-CV-116, 2015 WL 1412364, at *5 (E.D.N.Y. Mar. 26, 2015) (no abuse of discretion where "Bankruptcy Court properly applied the appropriate governing legal standard").

[8] Insofar as Appellant's brief can be read to constitute a request to amend her timely filed proofs of claim, (*see* Appellant Br. at 9 ("If I can't have a separate Claim for the Estate of David Jonathan Ecke then I need to increase my claim by 5 times the original amount")), that request is denied. As Judge Drain observed, the motions at issue sought leave to file a late claim, (*see* A. 353:15-18 (describing Appellant's motions as a "request . . . to have the [Late Claim] deemed timely filed"), rather than leave to amend a timely filed claim, an option that Appellant could have exercised before the Bankruptcy Court but did not, (A. 358:16-25 (denying Appellant's "request for leave to file a late claim," "without prejudice to [Appellant's] right to either assert

13

### B. Equitable Considerations

Because Appellant is *pro se*, and because she does not allege that she was deprived either of notice or an opportunity to be heard, *see generally, e.g.*, *Bongiovanni ex rel. Bongiovanni v. Grubin*, 451 F. App'x 53, 54 (2d Cir. 2011); *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 706-07 (S.D.N.Y. 2012), the Court construes the portions of her brief raising due process concerns based on the interaction of the opioid crisis with the bankruptcy system as an argument that it was inequitable to deny her leave to file the Late Claim after the bar date. (*See, e.g.*, Appellant Br. at 1-2 (alleging that the due process rights of opioid victims and their families have been violated and that many victims have died leaving "family members . . . full of pain, anguish, [and] grief . . . due to Trauma inflicted by Purdue Pharma and this 'Plan'"); *id.* at 1 (quoting U.S. Const. amend. XIV, noting that Appellant's brief seeks redress for "family members [that] are deceased and have been deprived of life, dying every day, or still struggling with their afflictions as my other son does," and stressing that "[t]he bankruptcy proceedings are

---

that one of the claims that has been timely filed encompasses the [Late Claim] or that the claim could be amended, which would require a motion")).

"Generally, a district court reviewing the decision of a bankruptcy court will not consider an issue raised for the first time on appeal." *In re Lyondell Chem. Co.*, 585 B.R. 41, 60 (S.D.N.Y. 2018); *see In re Grubb & Ellis Co.*, 523 B.R. 423, 442 n.12 (S.D.N.Y. 2014) ("[D]istrict courts considering appeals from bankruptcy court refuse to consider arguments that were not properly presented to the bankruptcy court."); *In re Hoti Enters., L.P.*, No. 12-CV-05341, 2012 WL 6720378, at *3 (S.D.N.Y. Dec. 27, 2012) ("Issues not raised before the Bankruptcy Court cannot be made for the first time on appeal to this Court . . . ."), *aff'd*, 549 F. App'x 43 (2d Cir. 2014).

Here, Appellant failed to request leave from the Bankruptcy Court to amend one of her existing proofs of claim to increase the amount sought, either in her Motions or at oral argument. Given that waiver, she cannot request such relief for the first time before this Court. *See Nayyar v. Charles*, No. 19-CV-508, 2020 WL 6484051, at *6 (N.D.N.Y. Nov. 4, 2020) (because *pro se* plaintiff "did not raise this argument with the bankruptcy court, [s]he has waived it on appeal"). I express no opinion as to whether or not she may seek that relief from the Bankruptcy Court at this stage.

14

prohibiting WE THE PEOPLE, the Plaintiffs our due process which is guaranteed by the 14th Amendment of the Constitution"); *id.* at 9 (arguing that the proliferation of opioids caused individuals to suffer severe and permanent physical and emotional injuries, pain and suffering and economic losses, and has required significant expenditures for medical care and treatment).)

The Court acknowledges and is sympathetic to the severe harms wrought by the opioid crisis on Appellant and others. As Judge Polster recently explained in the context of the National Prescription Opiate Multidistrict Litigation, the harm caused by opioids is correctly characterized "as a complex epidemic, an ongoing public health emergency, and a serious crisis with devastating consequences," which "[o]n a national level . . . include addiction and death of hundreds of thousands of adults, children, and even newborns, across all socio-economic strata and every demographic." *In re Nat'l Prescription Opiate Litig.*, 622 F. Supp. 3d 584, 596-97 (N.D. Ohio 2022), *appeal filed*, No. 22-3841 (6th Cir. 2022).

But acknowledging those harms and their scope does not mean that the April 29 Order denying Appellant leave to file the Late Claim was inequitable. To the contrary, as Judge Drain explained, bar dates are "critically important" to the administration of any Chapter 11 case and he could not allow any late-filed claims after the Plan was confirmed absent a showing of excusable neglect as required by the *Pioneer* test, which he articulated and applied to the Late Claim. (A. 353:15-358:25.) In other words, Judge Drain evaluated Appellant's Late Claim using the same excusable neglect test that would be applied to any such claimant, and therefore "[t]he record shows no inequitable treatment that would render the denial of Appellant's late claim filing application abusive of the bankruptcy court's discretion." *In re Motors Liquidation*, 599 B.R. at 717.

15

Accordingly, the Bankruptcy Court did not abuse its discretion in denying Appellant's Motions requesting leave to file the Late Claim.[9]

---

[9] Based on the Court's review of the record, it agrees with Judge Drain's determination that although it was "not entirely clear what relief [Appellant] [was] seeking" via the two motions for reconsideration she submitted in addition to the Late Claim Motion, (A. 350:19-25), those motions ultimately sought "leave to have the [Late Claim] deemed timely filed, notwithstanding that it was filed . . . well over a year late," (A. 350:16-22).

Nevertheless, in an abundance of caution, Judge Drain assessed the remaining forms of relief that Appellant's two motions for reconsideration, (*see* A. 217, 280), may have sought, including the reconsideration of two orders that he issued denying Appellant's request for immediate payment of her timely filed proofs of claim, (A. 351:23-352:15), and arguments as to the validity of third-party releases at issue in the instant Chapter 11 Cases, as well as the *Mallinckrodt* bankruptcy proceedings then pending in Delaware, (A. 345:22-346:15, 349:12-350:4, 353:3-14).

"A motion for reconsideration is an extraordinary remedy," *Allegheny Valve and Coupling Inc. v. H & H Metal Specialty, Inc.*, No. 06-CV-4265, 2011 WL 3475547, at *1 (W.D.N.Y. Aug. 9, 2011), that "should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice," *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Revocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). Judge Drain determined that Appellant's Motions failed to satisfy this high bar because they "set[] forth no basis to reconsider the Court's ruling not to prefer [Appellant] on her $242 million claims times four over all of the other thousands of claimants who have filed claims in these cases and are not yet being paid . . . ." (A, 351:23-352:15.) Appellant's brief similarly sets forth no basis to contest this finding, and therefore the Bankruptcy Court did not abuse its discretion in denying reconsideration relief. *See Rifenburg v. Kijakazi*, No. 20-178, 2022 WL 453426, at *2 (2d Cir. Feb. 15, 2022) (stressing that "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked" and holding that motion for reconsideration was properly denied where appellant "merely reargued issues she had previously raised").

As to Appellant's arguments concerning the validity of third-party releases in the Plan then on appeal to the Second Circuit, or issues involving similar releases in the *Mallinckrodt* bankruptcy proceedings then pending before the United Stated District Court for the District of Delaware, it is well-established that the filing of a notice of appeal divests a bankruptcy court of jurisdiction over all aspects of the case that are on appeal, *see In re Cabrini Med. Ctr.*, No. 09-14398, 2012 WL 2254386, at *10 (S.D.N.Y. June 15, 2012) (collecting cases), *aff'd*, 489 B.R. 7 (Bankr. S.D.N.Y. 2012), and that lower courts in one district have no jurisdiction to rule on the legality of acts undertaken by a judge in a different district, *cf. United States v. Feathers*, No. 14-CR-531, 2016 WL 7337518, at *9 (N.D. Cal. Dec. 19, 2016) ("It is axiomatic that one district court has no jurisdiction to review the decision of another district court.") (collecting cases). Accordingly, Judge Drain properly determined that he had no jurisdiction to take any action related to either the Second Circuit appeal or the *Mallinckrodt* bankruptcy proceedings. (*See* A.

16

### IV.     CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order is AFFIRMED.  The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated:  September 13, 2023
         White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.

---

353:3-14 ("I have absolutely no jurisdiction and therefore no power to grant any relief related to the *Mallinckrodt* case whatsoever, and therefore that aspect [of Appellant's Motions] is denied" and "[u]nder the divestiture doctrine, I clearly don't have the power to interfere in the [Second Circuit appeal concerning the third-party releases] at this point . . . so that aspect of the request for relief is also denied.").)