DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Eric M. Kim

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |

# DEBTORS' STATEMENT IN SUPPORT OF THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR SOLE STANDING TO COMMENCE AND PROSECUTE ESTATE CAUSES OF ACTION

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Purdue Pharma L.P. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") respectfully submit this statement ("**Statement**") in support of the Motion of the Official Committee of Unsecured Creditors for Sole Standing to Commence and Prosecute Estate Causes of Action [ECF No. 6523] (the "**Standing Motion**").

## STATEMENT

On June 27, 2024, the United States Supreme Court held that the Bankruptcy Code does not authorize the nonconsensual third-party releases provided by Section 10.7 of the Plan. *Harrington v. Purdue Pharma L.P.*, No. 23-124, 2024 WL 3187799, at *11 (June 27, 2024) (reversing the May 30, 2023 decision of the United States Court of Appeals for the Second Circuit in *In re Purdue Pharma L.P. et al.*, No. 22-110-bk(L) and remanding to this Court for further proceedings) (the "**Supreme Court Decision**"). In the wake of the Supreme Court Decision, the Debtors believe that deferring any hearing on the Standing Motion until near the end of the mediation period (as defined below, the "**Hearing Date**")[2] will help provide the best prospect for achieving a near-term resolution that will maximize the value of creditor recoveries. While there can be no guarantee that mediation will succeed, the parties' history of success in past mediations in these chapter 11 cases is cause for cautious optimism that the upcoming mediation may prove similarly successful.

But should the Hearing Date approach without a settlement or developments justifying an extension of the Hearing Date (as to which all parties' rights are of course fully reserved) the

---

[2] Subject to the Court's availability, the parties have agreed the hearing will occur 57 days after entry of the Mediation Order (as defined in the Debtors' Motion to Extend the Preliminary Injunction ("**Motion to Extend**") at 2, Adv. Pro. No. 19-23649 [ECF No. 489]), unless it is adjourned by agreement of both the UCC and the Debtors, or further order of the Court.

2

Debtors agree with the Official Committee of Unsecured Creditors (the "**UCC**") that sole standing to prosecute the claims set forth in the draft complaint attached as Exhibit B to the Standing Motion (that was shared with the Debtors prior to the filing of the Standing Motion) against the defendants named therein (the "**Estate Claims**") should be granted to the UCC.  As an initial matter, the Debtors have determined, after careful consideration, that they are not the most appropriate entity to pursue litigation of these Estate Claims.  The Debtors also share the UCC's views that many claims against third parties are far more than merely "colorable," and that, should mediation fail to result in a settlement before the Hearing Date, prosecution of such claims by the UCC is manifestly in the best interests of the estates.  Indeed, the Debtors' claims against third parties are the estates' most valuable assets—they underlay the settlement under which the Sacklers had previously agreed to pay $5.5-6 billion.

Thus, while the Debtors are hopeful that mediation will lead to a consensual resolution of these chapter 11 cases, if it does not result in settlement prior to the Hearing Date, the Debtors submit that the Estate Claims must be prosecuted and that the UCC is the best party to do so.  To that end, the Debtors and the UCC have agreed, after extensive negotiations, to the following schedule (subject, of course, to this Court's approval) for the Standing Motion:

- The objection deadline shall be fifty-one (51) days after this Court enters the Mediation Order (the "**Objection Deadline**");

- The Standing Motion shall be heard (the "**Hearing**") fifty-seven (57) days after entry of the Mediation Order (the "**Hearing Date**") (subject, of course, to the Court's availability, and provided that the Motion to Extend is granted);

- If a risk develops at the hearing on the Standing Motion that the issue of standing will not be resolved and/or that the UCC will not be able to file the Complaint before the expiration of the Preliminary Injunction, the Debtors will move (with the UCC's support) for any necessary extension of the Preliminary Injunction to obviate such risk;

- The Objection Deadline and Hearing Date may be moved to a later date upon agreement of both the Debtors and the UCC (or by order of this Court), but in no

    event shall the Debtors or the UCC request that the Hearing Date occur fewer than three (3) days prior to the expiration of the Preliminary Injunction or that the Objection Deadline be fewer than nine (9) days before the expiration of the Preliminary Injunction; and

- The Debtors' agreement with the UCC shall not be construed as an agreement, and the Debtors will not otherwise be obligated, to act in any manner that the Debtors determine in good faith is inconsistent with their fiduciary duties.[3]

The Debtors' decision to support the Standing Motion is justified for several reasons. The UCC is the only other party in these chapter 11 cases with a fiduciary duty to all unsecured creditors, and the only party empowered by statute. Notice of Appointment of Official Committee of Unsecured Creditors [ECF No. 131]; 11 U.S.C. § 1102(a); *see In re Residential Cap., LLC*, 480 B.R. 550, 559 (Bankr. S.D.N.Y. 2012) ("It is well settled that statutory unsecured creditors committees owe a fiduciary duty to the entire class of creditors represented by such committee and are required to place the collective interest of the class they represent above their own personal stake in the bankruptcy case."). Because the UCC has fiduciary duties that extend to all creditors in these cases, it is likely the only party other than the Debtors that does not have its own third-party claims that may present interests conflicting with the goal of maximizing recoveries on the Estate Claims.

Moreover, the UCC has worked assiduously in furtherance of its duties alongside the Debtors to conduct an exhaustive investigation into the Estate Claims. As detailed in the Standing Motion, the UCC has, over the last several years, reviewed many millions of pages of

---

[3] For the avoidance of doubt, the Standing Motion requests only prosecution authority, not settlement authority—as mandated by both governing law and the agreement between the UCC and the Debtors. *See Smart World Techs., LLC v. Juno Online Services, Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 183 (2d Cir. 2005) ("Rule 9019 grants the debtor-in-possession the sole authority to bring a motion to settle or compromise"). The Debtors will retain full authority to settle the Estate Claims, subject to Court approval on proper notice, both during the pendency of mediation and thereafter. *See* Fed. R. Bankr. Proc. 9019; 11 U.S.C. § 541.

documents produced in discovery and led depositions of the Sacklers and other key witnesses, which helped the estates propose a (now vacated) plan of reorganization that would have delivered $5.5-6 billion in payments and other non-monetary concessions from the Sacklers.

Finally, and critically, the fact that the Debtors agree that the UCC should receive sole standing to prosecute the Estate Claims (subject to appropriate participation and consultation rights of other key stakeholders, as detailed below) is alone sufficient reason for the Court to grant the Standing Motion should it prove necessary to litigate. The law in this circuit is clear that the Debtors (subject to court approval) could have conferred sole or joint standing on the UCC simply by stipulating to that effect. *See Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001), *Glinka v. Murad (In re Housecraft Industries USA, Inc.)*, 310 F.3d 64, 71-72 (2d Cir. 2002). That the UCC is proceeding by motion rather than stipulation does not give rise to any sound basis upon which other parties could second guess the Debtors' decision to support the UCC getting sole prosecutorial standing. That is particularly true where, as here, the decision was the product of extensive discussions and negotiations on virtually every conceivable strategic consideration for how best to maximize recoveries for the estates, including as to the date the Standing Motion should be filed and the schedule for litigating standing (should it unfortunately become necessary). Given the Debtors' agreement, granting standing to prosecute the Estate Claims to the UCC should it prove necessary to litigate is clearly warranted. [4]

---

[4] The Debtors also recognize that it may become necessary or appropriate for the estates to assert additional claims, and that the Special Committee of the Board of Directors of the Debtors may determine that the Debtors are not the best party to prosecute some or all of such additional claims. The Standing Motion thus requests, and the Proposed Order provides, that the UCC be granted standing to prosecute, without the need for further order of the Court, any additional estate claims to which the Debtors, as directed by their Special Committee, consent in writing to (….continued)

There are a few ancillary matters with respect to the prosecution of the Estate Claims that may yet be outstanding. While the Debtors are committed to supporting sole UCC standing regardless of how such matters are resolved, they are worth identifying now. For example, there will likely be further discussions with other parties-in-interest as to whether and to what extent they (like the Debtors and the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**AHC**")) should be afforded appropriate consultation rights with respect to prosecution by the UCC of the Estate Claims, as well as information or access rights with respect to any further discovery taken in connection with the Estate Claims. But the Debtors are confident that consensus on those and any other procedural issues can be reached in the coming weeks, without the need to litigate standing. Indeed, the Debtors, the AHC, and the UCC have already resolved these issues among themselves. If needed, this Court can of course address any remaining issues.

## CONCLUSION

For all the reasons discussed herein, the Debtors respectfully submit this Statement in Support of the Standing Motion, and request that the Court schedule briefing and a hearing on the Standing Motion in accordance with the Debtors' agreement with the UCC (as set forth above and in the Standing Motion).

---

cede prosecutorial standing to the UCC. In any event, the UCC will also retain its rights to seek standing to prosecute estate claims by motion as provided by law.

Dated: July 8, 2024
       New York, New York

By: /s/ *Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Eric M. Kim

*Counsel to the Debtors
and Debtors in Possession*

7