KRAMER LEVIN NAFTALIS
& FRANKEL LLP
Kenneth H. Eckstein
Rachael Ringer
David E. Blabey Jr.
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100

GILBERT LLP
Kami E. Quinn (admitted *pro hac vice*)
700 Pennsylvania Ave., SE
Suite 400
Washington, D.C. 20003
Telephone: (202) 772-2200

BROWN RUDNICK LLP
David J. Molton
Gerard Cicero
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800

OTTERBOURG P.C.
Melanie L. Cyganowski
Jennifer S. Feeney
230 Park Avenue
New York, NY 10169
Telephone: (212) 661-9100

*Attorneys for the Ad Hoc Committee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
In re:                                          :    Chapter 11
                                                :
PURDUE PHARMA L.P., *et al.*,                   :    Case No. 19-23649 (SHL)
                                                :
                    Debtors.                    :    (Jointly Administered)
                                                :
------------------------------------------------------------------X

**AD HOC COMMITTEE'S STATEMENT IN SUPPORT OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS' STANDING MOTION**

The Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**AHC**"), which consists of (i) ten States, (ii) the court-appointed Plaintiffs' Executive Committee ("**PEC**") in the multi-district litigation captioned *In re National Prescription Opiate Litigation*, Case No. 17-md-02804 (N.D. Ohio), (iii) six counties, cities, parishes, or municipalities, and (iv) one federally recognized American Indian Tribe, hereby submits this statement in support of the motion (the "**Standing Motion**") [Dkt. No. 6523] filed by the Official Committee of Unsecured Creditors (the "**UCC**") seeking sole standing to commence and prosecute certain claims

against the Sacklers and their related entities (the "**Estate Claims**") on behalf of the estates of the above-captioned debtors ("**Purdue**" or the "**Debtors**"), and respectfully states as follows:

## STATEMENT

1.      The Supreme Court's reversal of Purdue's chapter 11 plan is a considerable setback to the hundreds of thousands of creditors who have waited years for compensation and justice from Purdue and the Sackler family. In the wake of this disappointing development, the parties must pivot quickly to an alternative path to resolving these cases. To that end, the AHC has worked with the Debtors, the UCC, States, and other parties in interest over the course of several months to develop an approach that the AHC hopes will foster a revised global settlement—or, alternatively, will allow for the speedy confirmation of a litigation "plan B" that (i) preserves the valuable estate claims against the Sacklers and transfers them to a litigation trust, and (ii) allows for the pursuit of the many strong direct creditor claims against the Sacklers, each of which have now been stayed for nearly five years. The Standing Motion and the 60-day Mediation the Debtors are separately proposing are key components of this strategy. Preparations for impending litigation will either catalyze settlement—which remains the AHC's preferred outcome—or be a necessary first step towards obtaining the judgments that Purdue's creditors deserve.

2.      For these reasons, the AHC supports the grant of the Standing Motion on the terms set forth in Exhibit 1. Those terms, relating to cooperation, settlement, and other matters, will ensure efficient litigation of both the Estate Claims *and* the direct claims of States, municipalities, Tribes, and other creditors. In the context of a Mediation that does not result in a settlement prior to the Hearing Date (defined below), agreement on these terms will be especially important. While the UCC will have sole standing to prosecute the Estate Claims, it is the AHC's understanding that many of the non-federal governmental creditors (including those on the AHC) will prosecute their

2

own direct claims as well. The AHC expects to work closely with the advisors to both groups. And, subject to the other terms laid out in Exhibit 1, the AHC's advisors may determine, in their discretion, to consult and coordinate concerning the Estate Claims with a working group comprising both AHC members as well as States that are not part of the AHC. The AHC believes that such coordination will be critical to advancing creditor interests in the myriad of claims against the Sacklers. For this reason, and subject to the terms set forth in Exhibit 1, the AHC has agreed to support the UCC's motion for sole standing to pursue the Estate Claims during the pendency of the chapter 11 cases.

3. The key terms of the AHC's agreement with the UCC, which is embodied in the term sheet attached as **Exhibit 1** (the "**Term Sheet**"), are as follows:[1]

- AHC Support for Standing. The AHC supports the UCC's Standing Motion and has recommended to both its members and to the States at large that they should do the same.

- Consultation and Coordination. The UCC will consult and coordinate with the AHC on a variety of matters relating to prosecution of the Estate Claims (and the AHC will provide "mirror image" coordination and consultation to the UCC concerning the AHC's role as an intervenor in the Estate Claims litigation).

- AHC Intervention. The UCC will support the AHC's right to intervene in any adversary proceedings alleging the Estate Claims. The AHC intends to promptly intervene once any such adversary proceeding is commenced, and to be an active participant in the litigation of the Estate Claims.[2]

- Settlement and Plan. The UCC and AHC agree that:
    o Before the effective date of a Purdue chapter 11 plan, neither the UCC nor the AHC shall file or support a motion proposing a settlement of the Estate Claims other than a settlement that would be effectuated through a chapter 11 plan;

---

[1] This description of the Term Sheet is qualified in its entirety by the terms of the agreement itself, which shall control.

[2] For the avoidance of doubt, the UCC's rights respecting the AHC's planned intervention are to consultation and coordination only; all decisions concerning the AHC's activities as an intervenor shall be made by the AHC in its sole discretion. Likewise, the AHC's rights referenced in the first two bullets above and under Exhibit A to Exhibit 1 are to consultation and coordination only; all decisions concerning the UCC's prosecution of Estate Claims shall be made by the UCC in its sole discretion.

3

- o The order granting the Standing Motion will not (i) convey any rights to any party with respect to settlement of the Estate Claims, or (ii) limit the rights of any party to propose a chapter 11 plan that includes a settlement of the Estate Claims; and

- o To the extent consistent with the UCC's fiduciary duties, the UCC and AHC will, at the appropriate time, reasonably cooperate and coordinate with any appropriate parties-in-interest regarding the proposal and prosecution of a chapter 11 plan that includes transfer of the Estate Claims to a creditor trust for post-effective date prosecution or settlement upon terms reasonably satisfactory to the UCC and AHC.

4. These provisions, and the guardrails they impose, will help to ensure ongoing cooperation and coordination among the UCC and the AHC concerning the development of a chapter 11 plan and the prosecution of the Estate Claims and direct creditor claims both during the pendency of the chapter 11 cases and (if necessary) thereafter.

5. To be clear, the agreement between the AHC and UCC is not intended to preclude the possibility of a consensual resolution of these cases. The parties have agreed to a 60-day Mediation, together with a corresponding extension of the preliminary injunction of claims against the Sacklers (and related tolling). The AHC expects that all parties to the Mediation will work expeditiously and in good faith. The hearing on the Standing Motion will be scheduled near the end of the proposed 60-day Mediation, with objections due on Day 51 and the hearing on Day 57 (as it may be adjourned, the "**Hearing Date**"). It is the parties' shared hope that this schedule, which defers litigation over the Standing Motion, should provide Purdue and its creditors with a credible opportunity to reach a new global settlement with the Sacklers. But if the Mediation does not produce a settlement by the Hearing Date sole standing should be granted to the UCC. In this way, the creditors will have laid the groundwork for a litigation alternative involving prosecution of not just the Estate Claims but also the direct claims of the States, municipalities, Tribes, and other parties.

6. It is in this litigation alternative that many of the provisions of the Term Sheet become most relevant. The cooperation-related terms provide the AHC with an important and necessary role in the conduct of the litigation surrounding the Estate Claims, which will be implemented by its intervention in the litigation (which the UCC has agreed to support) and by close coordination with the UCC and the Debtors. In addition, the AHC intends to work closely with other governmental creditors to ensure they are fully apprised of and involved in the estate litigation. In that regard, the Term Sheet contemplates the AHC may, consistent with the terms of the Protective Order and applicable confidentiality agreements, consult and coordinate with a working group of AHC members and other States and governmental entities concerning the prosecution of the Estate Claims. The Term Sheet thus facilitates broad creditor participation in an efficient and streamlined manner.

7. The settlement and plan-related provisions of the Term Sheet, meanwhile, help to ensure that both the private *and* the public creditors have an appropriate role to play in the ultimate resolution of those claims. Though the UCC is granted sole standing to pursue the Estate Claims, it is not granted settlement authority, and it has agreed to important commitments concerning potential settlements or plans. No exit strategy is predetermined, and all parties reserve their respective rights as the case proceeds. However, as the above should make clear, it is the AHC's hope and expectation that the creditors will work together to swiftly confirm a chapter 11 plan acceptable to the vast majority of them that, absent settlement during the case, transfers the claims to a litigation trust for post-confirmation litigation and/or settlement, allowing an expeditious emergence from bankruptcy.

8. In view of the foregoing, the AHC supports grant of the Standing Motion and recommends that its members and the States do the same.[3] And while the AHC finds it difficult to conceive that the potential defendants will have any legitimate objection to the Standing Motion, the AHC reserves the right to respond to any objections at the appropriate time.

Dated: July 8, 2024                                Respectfully submitted

/s/ *Kenneth H. Eckstein*
Kenneth H. Eckstein
Rachael Ringer
David E. Blabey Jr.
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Email: keckstein@kramerlevin.com
         rringer@kramerlevin.com
         dblabey@kramerlevin.com

David J. Molton
Gerard Cicero
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Email: dmolton@brownrudnick.com
         spohl@brownrudnick.com
         gcicero@brownrudnick.com

Kami E. Quinn (admitted *pro hac vice*)
GILBERT LLP
700 Pennsylvania Ave., SE
Suite 400
Washington, D.C. 20003
Telephone: (202) 772-2200
Email: quinnk@gilbertlegal.com

Melanie L. Cyganowski
Jennifer S. Feeney
OTTERBOURG P.C.

---

[3] While this Statement reflects the position of the AHC, it does not necessarily reflect the views of each individual AHC member, who reserve the right to take their own positions on the Standing Motion.

230 Park Avenue
New York, NY 10169
Telephone: (212) 661-9100
Email: mcyganowski@otterbourg.com
         jfeeney@otterbourg.com

*Attorneys for the Ad Hoc Committee*

# EXHIBIT 1

*In re Purdue Pharma L.P.*
**Terms of UCC-AHC Agreement re: Standing (the "Agreement")**

June 12, 2024

1. Standing.  Subject to the review and reasonable approval of the substantially final version of the standing motion and attachments thereto, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "AHC") will agree to support a motion ("Motion") by the Official Committee of Unsecured Creditors (the "UCC") seeking sole standing to pursue claims (the "Estate Claims") on behalf of the estates of Purdue Pharma L.P. and its affiliated debtors ("Purdue") against the Sacklers and their affiliated entities, advisors, and other related parties and individuals.  The AHC will recommend to all of the States, including each member of the AHC, that they not oppose the Motion.  For the avoidance of doubt, (a) solely for purposes of this Agreement the term "Estate Claims" does not include claims that name the States or other governmental creditors as defendants, and (b) to the extent that the AHC does not provide its agreement to support the Motion, this Agreement shall not be effective.

2. Consultation.  Subject to the foregoing, the UCC agrees that any proposed order granting it standing to pursue the Estate Claims (the "Order") shall include provisions requiring the UCC to cause its counsel to reasonably consult and coordinate in good faith with the AHC through its advisors (the "AHC Advisors") concerning the litigation, on the terms set forth in Exhibit A.  For the avoidance of any doubt, the AHC's rights referenced in this paragraph and under Exhibit A are to consultation and coordination only; all decisions concerning the UCC's prosecution of Estate Claims shall be made by the UCC in its sole discretion.

3. Intervention.  Subject to its review and reasonable approval of the AHC's motion, the UCC will support the AHC's right to intervene in any adversary proceeding commenced by the UCC alleging the Estate Claims.

   a. Any proposed order granting AHC intervention will provide that the AHC shall reasonably coordinate with the UCC through its counsel concerning the AHC's activities as an intervenor, and that the AHC's obligations in that regard are coextensive with the UCC's agreements outlined above.

   b. For the avoidance of any doubt, the UCC's rights under this paragraph are to consultation and coordination only; all decisions concerning its role as intervenor shall be made by the AHC in its sole discretion.

4. Settlement and Plan.  The UCC and the AHC agree that, before the Effective Date of a Purdue chapter 11 plan, neither the UCC nor the AHC shall file or support a motion proposing a settlement of the Estate Claims against the Sacklers and their affiliated entities other than a settlement that would be effectuated through a chapter 11 plan.  Nothing in the Order will (i) convey any rights to any party with respect to settlement of the Estate Claims, or (ii) limit the rights of any party to propose a chapter 11 plan that includes a settlement of the Estate Claims.

   In recognition that a revised settlement of the Estate Claims may not be achieved during the chapter 11 case, and to the extent consistent with the UCC's fiduciary duties, the UCC and AHC will, at the appropriate time, reasonably cooperate and coordinate with any appropriate

parties-in-interest regarding the proposal and prosecution of a chapter 11 plan that includes transfer of the Estate Claims to a creditor trust for post-effective date prosecution or settlement upon terms reasonably satisfactory to the UCC and AHC.

Nothing herein is intended to restrict the AHC, any AHC member, the UCC, or any UCC member from participating in any settlement process or discussions, including mediation.

For the avoidance of doubt, the provisions of this Section 4 are subject in all respects to Section 6 hereof.

5. <u>Jurisdiction</u>.  The Bankruptcy Court shall have the exclusive jurisdiction to resolve any dispute arising from, under, in, or related to this agreement.  In addition, the parties may (but are under no obligation to) name by mutual agreement a neutral to assist in resolving any dispute arising out of or related to Section 2 of this Agreement.  This Agreement represents the good faith agreement of the UCC and the AHC.  In no event shall the UCC, the AHC, or any of either of their respective members (or individual member counsel), representatives, or advisors, be liable in damages for any default under this Agreement.  It is the parties' good faith intention that this Agreement shall not be terminated by either party.

6. <u>UCC Obligations</u>.  The proposed order shall contain the following sentences, and this Agreement shall be governed by the following:

The AHC's rights under this Order are to cooperation and consultation with regard to the Estate Claims, as well as specified rights with regard to intervention and settlement as set forth in the Agreement.  Without modifying the parties' respective consultation obligations under paragraphs 2 and 3 of the Agreement, and for the avoidance of any doubt, all decisions concerning prosecution of the Estate Claims shall be made by the UCC in its sole discretion, consistent with its fiduciary duties, and nothing in this Order or the Agreement shall be construed to prevent the UCC from acting consistent with its fiduciary duties, and all decisions concerning the AHC's activities as an intervenor shall be made by the AHC in its sole discretion.  In addition, the obligations of the UCC under the Agreement and Order shall not require the UCC to act in a manner that, in its good faith determination, is inconsistent with its fiduciary duties.

**Exhibit A**

**[OMITTED]**