**Hearing Date: September 5, 2024 at 2:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline: August 30, 2024 at 4:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: September 3, 2024 at 2:00 p.m. (Prevailing Eastern Time)**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**PURDUE PHARMA L.P., *et al.*,**<br><br>**Debtors.**[1] | **Chapter 11**<br><br>**Case No. 19-23649 (SHL)**<br><br>**(Jointly Administered)** |
| **PURDUE PHARMA L.P., *et al.*,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**COMMONWEALTH OF MASSACHUSETTS, *et al.*,**<br><br>**Defendants.** | **Adv. Pro. No. 19-08289 (SHL)** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO (I) EXTEND THE MEDIATION; (II) EXTEND THE PRELIMINARY INJUNCTION AND ASSOCIATED DEADLINES INCLUDING TOLLING; AND (III) EXTEND SCHEDULE FOR THE STANDING MOTION**

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT AND RELEVANT BACKGROUND ........ 1

ARGUMENT ........ 3

CONCLUSION ........ 7

## TABLE OF AUTHORITIES

PAGE(S)

*In re Purdue Pharms. L.P.*,
619 B.R. 38 (S.D.N.Y. 2020) .......... 2-3, 4, 5-6

*In Re Soundview Elite Ltd.*,
543 B.R. 78 (Bankr. S.D.N.Y 2016) .......... 4

At the instruction of the Mediators, the Debtors respectfully move the Court to enter orders as set forth in the Debtors' *Motion to (I) Extend the Mediation; (II) Extend the Preliminary Injunction and Associated Deadlines Including Tolling; and (III) Extend Schedule for the Standing Motion* (the "**Extension Motion**") being filed contemporaneously herewith, (1) extending Mediation for 18 days, through and including September 27, 2024 to enable its continuation and, hopefully, successful conclusion, as set forth in Exhibit A to the Extension Motion; (2) likewise extending for 18 days the Preliminary Injunction and associated deadlines including for claim tolling as set forth in Exhibit B to Extension Motion to protect and facilitate Mediation (the "**Limited Extension**"); and (3) extending, as set forth in Exhibit C to the Extension Motion, the briefing schedule and hearing date for the Motion of the Official Committee of Unsecured Creditors for Sole Standing to Commence and Prosecute Estate Causes of Action (the "**Standing Motion**"), *In re Purdue Pharma, L.P.*, 19-23649 (Bankr. S.D.N.Y. July 8, 2024) [ECF No. 6523], with a hearing thereon to be held at 2:00 p.m. ET on September 23, 2024.[2]

**PRELIMINARY STATEMENT AND RELEVANT BACKGROUND**

The relief requested herein is necessary to minimize the risk of compromising the significant efforts that the Mediation Parties and the Mediators have expended to date. It is thus unsurprising that many of the key Mediation Parties consent, or have no objection to the relief requested: The Debtors have been authorized to advise the Court that the Official Committee of

[2] "**Mediation**," "**Mediators**," and "**Mediation Parties**" have the meaning ascribed to them in the Order Appointing the Honorable Shelley C. Chapman (Ret.) and Eric D. Green as Co-Mediators and Establishing Terms and Conditions of Mediation (the "**Mediation Order**"), *In re Purdue Pharma L.P.*, No. 19-23649 (SHL) (Bankr. S.D.N.Y. July 7, 2024) [ECF No. 6537]. Otherwise, capitalized terms used but not defined herein have the meaning ascribed to them in the Extension Motion.

Unsecured Creditors (the "**UCC**"), the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**AHC**"), the Multi-State Governmental Entities Group (the "**MSGE**"), and the Sacklers either support or have no objection to the relief requested.

In the weeks since Mediation commenced, the Mediators and many Mediation Parties have been working tirelessly toward a consensual resolution of these cases. The intense engagement of so many and the progress to date validates this Court's finding, in its recent decision to extend the Preliminary Injunction to facilitate Mediation, that "the breathing room provided by the requested injunction is critical to the parties' mediation efforts." July 9, 2024 Hr'g Tr. 92:1-2 [ECF No. 511].[3]

Absent an extension, both Mediation and the Preliminary Injunction will terminate on September 9, 2024. And, absent an extension of the schedule for the Standing Motion, litigation that may divert parties' attention from Mediation will commence in only seven days. Under the current schedule, objections to the Standing Motion are due on August 30, 2024; reply briefs in support are due on September 3, 2024; and the Standing Motion is to be heard on September 5, 2024. The Mediators have therefore requested that the Debtors also seek an extension of the litigation schedule. In that regard, the Debtors request that (1) objections to the Standing Motion be filed on or before September 13, 2024; (2) replies in support be filed on or before September 20, 2024; and (3) the Standing Motion be heard on September 23, 2024 (four days before the requested termination date of the injunction).

The request of the Mediators and the Debtors, as well as this Court's prior rulings, amply demonstrate that all four of the traditional injunction factors weigh heavily in favor of the

[3] ECF numbers reference docket entries in this adversary proceeding unless otherwise noted.

requested short extension. *See In re Purdue Pharms. L.P.*, 619 B.R. 38, 58 (S.D.N.Y. 2020) (listing the four factors) (hereinafter "*Dunaway*"). The likelihood of a successful reorganization is greater than it was on July 9, when the Court first extended the injunction to facilitate mediation. The extensive evidentiary record in this adversary proceeding further demonstrates that a return to the value-destructive litigation maelstrom that prevailed prepetition would irreparably harm the Estates and their creditors, and threaten to derail Mediation during this critical stage. The need to try to successfully conclude Mediation without the "tremendous burden" and risks that resumed litigation would likely impose during this brief, critical period outweighs any speculative harm that would inure during the mere 18 additional days requested herein, and advances the public interest. *See* July 9, 2024 Hr'g Tr. 93:12 [ECF No. 511].[4]

**ARGUMENT**

The bases for the Preliminary Injunction are well-established.[5] The Court initially granted the Preliminary Injunction to, among other reasons, provide a "clear shot at negotiating an overall settlement of what amounts to a multi-party battle." Oct. 11, 2019 Hr'g Tr. 260:25-261:10 [ECF No. 108] (internal quotation marks omitted). That reasoning was reaffirmed most recently at the hearing held on July 9, 2024. There, the Court addressed the relevance of the Preliminary Injunction in light of the Supreme Court Decision, and held that the factual and legal predicates underpinning the relief sought "remain applicable today even if the contents of any

---

[4] Consistent with the initial form of the preliminary injunction order, the Proposed Order permits the government entities from the Ad Hoc Committee, the formerly Non-Consenting States, and the Multi-State Governmental Entities Group (together, the "**Voluntarily Bound Parties**") to voluntarily abide by the injunction for the extended period sought by this Motion, rather than be formally bound.

[5] The Debtors incorporate by reference the arguments they advanced and the extensive evidentiary record developed in prior motions and memoranda in support of extensions and enforcement of the Preliminary Injunction.

plan would be different. And that's because . . . resuming litigation would impose a tremendous burden on the estates that would distract and hamper efforts at a mediated resolution to these cases that preserves value." July 9, 2024 Hr'g Tr. 93:3-14 [ECF No. 511]. As to the four factors:

*First*, while no details can be provided due to Mediation confidentiality, the intense engagement of so many parties and the fact that so many Mediation Parties either support or have no objection to the relief requested, support the legal test for prong one: that reorganization "remain[s] viable and [] the Debtors are substantially more likely to reorganize with the injunction in place." *Dunaway*, 619 B.R. at 59 (internal quotation marks and citations omitted); *In Re Soundview Elite Ltd.*, 543 B.R. 78, 119 (Bankr. S.D.N.Y 2016) ("Courts do not demand certainty of the successful reorganization; they expect only reasonable prospects of such."). Here, both the present circumstances and the "history of these Chapter 11 cases provide[] strong evidence of the [Debtors'] prospects for success." July 9, 2024 Hr'g Tr. 90:24-91:1 [ECF No. 511]. Indeed, in the wake of the Supreme Court Decision, this Court based its assessment of the Debtors' likelihood of successful reorganization on the fact that "[d]uring the history of these cases, while lengthy, the debtors and stakeholders successfully struck in mediation a series of complex and related settlements." *Id.* at 91:2-4. At this point, without divulging any Mediation confidential information, it is a positive sign that negotiations continue, the Mediators have requested an extension of Mediation, and the parties do not object to the requested extension.

*Second*, litigating during the ongoing Mediation could distract the parties and harm the Estates. *E.g.*, Dec. 29, 2021 Hr'g Tr. 80:10-14 [ECF No. 315] (extending the Preliminary Injunction in tandem with entry of a mediation order because restarting litigation would "truly distract the parties [from] their critical task over the next few weeks of negotiating a resolution to

the quandary that these cases are now in"). If the Preliminary Injunction were lifted now, "hundreds if not thousands of independent [lawsuits would] begin again." July 9, 2024 Hr'g Tr. 93:9-10 [ECF No. 511]. Those suits, if recommenced, could "threaten the estate's most valuable asset; that is the estate's claims against the Sacklers." *Id.* at 93:15-16; Feb. 1, 2023 Hr'g Tr. at 31:22-24 [ECF No. 409] (explaining that any creditor suit against the Sacklers could "become the test case for the debtors' claims, making any potential success by the Sacklers an impairment of the debtors' claim"). Near term litigation would "impose a tremendous burden" on the Debtors during a critical juncture of these cases. July 9, 2024 Hr'g Tr. 93:12 [ECF No. 511].

*Third*, the balance of the equities weighs in favor of granting the Limited Extension. The Preliminary Injunction has, since it was first entered, facilitated productive negotiations on billions of dollars of claims and many other issues. Despite the setback of the Supreme Court Decision, Mediation and the breathing room provided by the Preliminary Injunction have together enabled major constituencies to devote focus, resources, and energy to highly complex negotiations. The alternative to a settlement providing equitable distribution of value is likely to be a "chaotic and fundamentally unfair" race to the courthouse—an eventuality that might benefit a small number of creditors, but only at the expense of many others not able to compete effectively in the race. Aug. 17, 2022 Hr'g Tr. 55:24 [ECF No. 381]. On the other hand, maintaining the status quo for a mere 18 additional days would cause no cognizable harm.

*Fourth*, the public interest favors the Limited Extension. The Debtors, the UCC, and so many other key private and governmental parties in these cases remain steadfast in their commitment to developing a plan of reorganization that devotes substantial resources to opioid abatement and victim compensation. Moreover, many parties believe that the best chance for opioid claimants to recover significant value in the shortest amount of time is through global

settlement. Modified Bench Ruling at 90, *In re Purdue Pharma L.P., et al.*, No. 19-23649-RDD (Bankr. S.D.N.Y. Sept. 17, 2021) [ECF No. 3786] (determining that there would "literally be no recovery" for unsecured creditors in a liquidation scenario); *Dunaway*, 619 B.R. at 61 (concluding that without the Preliminary Injunction, "the Sackler Family's current incentives to keep private gains from the opioid trade within the grasp of the federal courts would vanish," which would "reduce the benefits that every other creditor could hope to realize from the bankruptcy"). The Limited Extension will hopefully facilitate an equitable reorganization that will maximize opioid abatement funds and victim compensation, a result clearly in the public interest.

* * *

Finally, as noted above, the Standing Motion is currently scheduled to be heard on September 5, 2024, with objections due in only seven days. Proceeding on that schedule could well (and, in the Debtors' view, would) disrupt Mediation and divert various critical parties' attention and efforts to litigation. To implement the Mediators' request that litigation deadlines be extended, and also allow the same four-day period as presently provided after the standing hearing for the UCC to file its complaint, the Debtors respectfully ask the Court to (1) adjourn the hearing on the Standing Motion to 2:00 p.m. on September 23, 2024; (2) adjourn the deadline to object to the Standing Motion from August 30, 2024 to September 13, 2024; and (3) adjourn the deadline to reply to September 20, 2024. This will ensure that the Standing Motion is still heard four days before the conclusion of the extended Preliminary Injunction period.

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in prior pleadings in support of the Preliminary Injunction, the Debtors (as also requested by the Mediators) respectfully request that this Court enter the Order extending Mediation and the Preliminary Injunction to September 27, 2024, and adjourning the hearing on the Standing Motion and related deadlines as set forth herein.

Dated: August 23, 2024
New York, New York

By: */s/ Marshall S. Huebner*

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors
and Debtors in Possession*