Hearing Date: September 5, 2024 at 2:00 p.m. (Prevailing Eastern Time)
Objection Deadline: August 30, 2024 at 4:00 p.m. (Prevailing Eastern Time)
Reply Deadline: September 3, 2024 at 12:00 p.m. (Prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br> **PURDUE PHARMA L.P.,** *et al.*, <br> Debtors.[1] | Chapter 11 <br> Case No. 19-23649 (SHL) <br> (Jointly Administered) |
| **PURDUE PHARMA L.P.,** *et al.*, <br> Plaintiffs, <br> v. <br> **COMMONWEALTH OF MASSACHUSETTS,** *et al.*, <br> Defendants. | Adv. Pro. No. 19-08289 (SHL) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO (I) EXTEND THE MEDIATION; (II) EXTEND THE PRELIMINARY INJUNCTION AND ASSOCIATED DEADLINES INCLUDING TOLLING; AND (III) EXTEND THE SCHEDULE FOR THE STANDING MOTION**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## PRELIMINARY STATEMENT[2]

The Debtors, their creditors, and other key stakeholders have dedicated thousands of professional hours over the past 55 days to advance negotiations in pursuit of a maximally consensual plan of reorganization. At the recommendation of the court-appointed Mediators and with the consent or non-objection of the key organized creditor groups in these cases, the Debtors seek this 18-day extension of the Mediation and the Preliminary Injunction, as well as an extension of the schedule agreed to by the UCC for a hearing on the UCC's Standing Motion.[3]

The extensive legal and factual record of these cases, and the prospect of achieving a resolution with the broadest possible consensus that would maximize value for creditors, overwhelmingly support the exceedingly modest requested Limited Extension. Against the array of creditors, stakeholders, and Mediators supporting the Limited Extension, the handful of objecting parties[4] stand almost alone. Their objections entirely fail to adduce any reason why trammeling the prospects of a value-maximizing Mediation is preferable—or even sensible—as compared to the 18-day Limited Extension that the Debtors request. Instead, they recycle legal arguments that this Court has rejected as recently as July 9, 2024, and offer only speculation and conjecture directly contrary to this Court's findings.

---

[2] ECF numbers reference docket entries in this adversary proceeding unless otherwise noted.

[3] All capitalized terms used but not defined herein have the meanings ascribed to them in the Debtors' *Memorandum of Law in Support of Motion to (I) Extend the Mediation; (II) Extend the Preliminary Injunction and Associated Deadlines Including Tolling; and (III) Extend Schedule for the Standing Motion* ("**Opening Brief**") [ECF No. 513].

[4] The four non-*pro se* objecting parties (the "**Objecting Parties**") are Nassau County [ECF No. 517] ("**Nassau Objection**"), the City of Toronto joining in Nassau County's objection [ECF No. 519] ("**Toronto Joinder**"), Lac La Ronge Indian Band, and the certain Canadian Municipal and First Nation Creditors joining Nassau County's objection with a limited objection [ECF No. 521] ("**CMFN Objection**"), and the State of Maryland filing a limited objection [ECF No. 522].

It is also puzzling that certain objectors have chosen this moment—when an 18-day extension is at issue—to object to the Preliminary Injunction for the first time. Despite having sued the Sacklers in 2018 and having been subject to the Preliminary Injunction since October 11, 2019, Nassau County chose now to object to the Preliminary Injunction. The City of Toronto's joinder to that objection by the same lawyer is even more perplexing, as the City of Toronto is not a plaintiff in any suit subject to the Preliminary Injunction, and thus likely lacks standing to object at all.

Because the Limited Extension is as modest as it is absolutely essential, and because the Objecting Parties have shown no basis in law or fact to deny the extension, the Court should overrule the objections of the Objecting Parties and grant the Debtors' Motion to Extend.

## ARGUMENT

**I.    This Court's Jurisdiction to Issue and Extend the Preliminary Injunction Is Clear and Undisturbed**

This Court's jurisdiction to temporarily enjoin non-debtor claims against related parties is both settled law and law of the case, reaffirmed at every single stage of the appellate process. This Court has "related to" subject matter jurisdiction under 28 U.S.C. § 1334 extending to third-party claims that "might have any conceivable effect on the bankrupt estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (bankruptcy courts' jurisdiction extends to any claim that "could conceivably have any effect on the estate being administered in bankruptcy" (emphasis and internal citation omitted)). That jurisdiction encompasses "suits between third parties." *SVP Osus*, 882 F.3d at 340 (quoting *Celotex*, 514 U.S. at 307 n.5).

3

Consistent with this settled authority, this Court, the District Court, and the Second Circuit have each held that there is subject matter jurisdiction over the creditor claims against the Sacklers which are subject to the Preliminary Injunction. *In Re Purdue Pharma L.P.*, 69 F.4th 45, 71-72 (2d Cir. 2023); *In re Purdue Pharma, L.P.*, 635 B.R. 26, 83 (S.D.N.Y. 2021); *In re Purdue Pharms. L.P.* ("*Dunaway*"), 619 B.R., 38, 48 (S.D.N.Y. 2020); Modified Bench Ruling at 105-111, *In re Purdue Pharma L.P., et al.*, No. 19-23649-RDD (Bankr. S.D.N.Y. Sept. 17, 2021) [ECF No. 3786]; July 9, 2024 Hr'g Tr. 90:4-11 [ECF No. 511]. Judge McMahon specifically analyzed subject matter jurisdiction in the context of the Preliminary Injunction, and ultimately concluded that any suggestion that a judgment on the claims subject to the Preliminary Injunction would not have a conceivable effect on Purdue's Estates "makes absolutely no sense." *Dunaway*, 619 B.R. at 52. These appellate holdings are now binding law of the case. *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) ("[A] decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.").

## II.    Section 105(a) Authorizes the Court to Enter the Limited Extension

Section 105(a) of the Code confers broad authority on bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It is long-settled law of the Circuit that upon a showing of the four factors necessary for a preliminary injunction, a bankruptcy court may protect its jurisdiction by enjoining for a period a creditor's suit against a non-debtor pursuant to section 105(a). *See Erti v. Paine Webber Jackson & Curtis, Inc.*, 765 F.2d 343, 348 (2d Cir. 1985); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988) (holding that Section 105(a)

4

provides "[a]dditional authority" to enjoin lawsuits "that might impede the reorganization process"); *Lautenberg Found. v. Picard*, 512 F. App'x 18, 19-20 (2d Cir. 2013) ("Section 105(a) is to be 'construed liberally to enjoin suits that might impede the reorganization process'" (quoting *MacArthur Co.*, 837 F.2d at 93)).  That injunctive power predates the Bankruptcy Code itself, flowing from both the predecessor Bankruptcy Act and the traditional authority of a court of equity.  *Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & Pacific Railway Co.*, 294 U.S. 648, 675-77 (1935) (holding that "[t]he power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is [] inherent in a court of bankruptcy, as it is in a duly established court of equity" and is also sourced in the All Writs Act and the predecessor to Section 105(a) of the Bankruptcy Code).

None of the Objecting Parties has adduced <u>any</u> authority that calls into question this Court's power to grant the Limited Extension.  Indeed, Nassau County admits, as it must, that Second Circuit law <u>authorizes</u> enjoining an action that will have adverse consequences on a bankruptcy estate.  (Nassau Objection at 7 (citing *In re Bernard L. Madoff Inv. Sec., LLC*, 512 F. App'x 18, 20 (2d Cir. 2013).)  Instead, certain Objecting Parties, such as Nassau County, argue that the Supreme Court Decision somehow (*sub silentio*) limited the scope of section 105(a) and the injunctive powers of bankruptcy courts.  But that argument is both entirely baseless and was comprehensively rejected by this Court at the July 9 hearing.

The Supreme Court held that section 1123(b)(6) of the Bankruptcy Code does not authorize a release and injunction that, "as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants," *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2088 (2024), (*see* Nassau County Objection at 7 (quoting this statement in *Harrington*).)  But, as this Court noted on July

5

9, nonconsensual third-party releases are "legally distinct" from the Limited Extension sought by the Debtors. July 9, 2024 Hr'g Tr. 95:7. The Limited Extension grounded in section 105(a) simply has no relation to the section 1123(b)(6) releases that the Supreme Court characterized as a "discharge"; every third-party claim subject to the Preliminary Injunction remains pending, and can be prosecuted upon termination of the injunction (if not otherwise consensually resolved). Thus, nothing in the Supreme Court's decision alters the clear and well-settled law that bankruptcy courts have the power to protect their own jurisdiction over disposition of a debtor's assets by preliminarily enjoining actions that could affect the res. *See, e.g.*, *SPV Osus Ltd.*, 882 F.3d at 339-42; *Dunaway*, 619 B.R. at 49; *In re Quigley Co., Inc.*, 676 F.3d 45, 57-58 (2d Cir. 2012); *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 321 (S.D.N.Y. 2003).

The argument some Objecting Parties advance, that provisions relating to a debtor suggest that 105(a) "cannot be read to" enjoin actions against a non-debtor (Maryland Objection at 3), is equally a *non sequitur*.[5] The automatic stay in section 362 and the exceptions thereto, and the injunctive power of bankruptcy courts under section 105(a), are separate, if complementary, powers. Legislative history and precedent make clear that the fact that some actions are not <u>automatically</u> stayed does not limit the power of a bankruptcy court to enjoin such actions using section 105(a) and the traditional powers of equity. This was Congress's expressed intent: "[b]y excepting an act or action from the automatic stay, the [Bankruptcy Code] simply requires that the [debtor] move the court into action, rather than requiring the stayed party to request relief from the stay." *See* H.R. Rep. No. 95-595, at 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6298. Thus, "[t]he effect of [the exceptions in section 362(b)] is not to

---

[5] Maryland's citation to *In re Marshall Paper Co.*, 102 F. 872, 873 (1st Cir. 1900) is puzzling as that case does not address any kind of injunction or stay.

6

make the action immune from injunction. The court has ample other powers to stay actions not covered by the automatic stay. Section 105 . . . grants the power to issue [such an injunction]." *Id.*

### III. The Preliminary Injunction Factors Continue to Weigh in Favor of the Debtors' Requested Extension

The Objecting Parties have utterly failed to rebut the Debtors' clear showing that each of the four factors supporting the Limited Extension is satisfied here. *See* Opening Brief at 4-6. The Debtors' showing is based upon the extensive evidentiary record of these cases and the findings of this Court extending from the most recent hearing of July 9 to the first Preliminary Injunction hearing of October 11, 2019. That compelling factual record is further supported by the fact that both the court-appointed Mediators, the UCC, a statutory fiduciary for all unsecured creditors, and so many other parties, including dozens of state attorneys general, support or do not object to extension of Mediation. Such support is in itself compelling evidence that the Limited Extension should be granted. As the District Court already held in an appeal of the Preliminary Injunction, "the fact that discussions are continuing provides support for the finding that continuing the injunction increases the likelihood of a successful reorganization." *Dunaway*, 619 B.R. at 59 (collecting cases).

Against this overwhelming preponderance of evidence, the Objecting Parties bring absolutely <u>nothing</u> to support their contention that the extension of the injunction is unnecessary or unwarranted. They cite no evidence: not a single line of the weeks of hearing transcripts or a single word of the thousands of exhibits in the record. Rather, Nassau County makes a number of baseless and absurd assertions—unsupported by even their own testimony, let alone a single fact anywhere in the record—that the "Debtors and other creditors" seek to enter into a "collusive plan" for a "nominal settlement" with the Sacklers (Nassau County Objection at 8-9)

7

or that the Sacklers "seek a payoff to delay and hide assets" (*id.* at 10). Nassau County's speculation that any such plan could emerge from a mediation led by the two statutory fiduciaries to the Estates, attorneys general of the overwhelming majority of U.S. states, counsel to thousands of governmental and private claimant creditors, and overseen by two preeminent mediators is unworthy of further comment. That the Objecting Parties would incorrectly suggest that the Limited Extension is for the benefit of the Sacklers represents a profound misunderstanding—or willful mischaracterization—of these proceedings. As this Court and the remaining parties know, the requested Limited Extension is meant to protect the Estates' most valuable assets and facilitate Mediation, which is why virtually all of the relevant parties support it.

Finally, the Objecting Parties barely attempt to argue—let alone show—that the 18-day Limited Extension would somehow impose cognizable harm on them and that such harm is not massively outweighed by the compelling creditor and public interests in continuing the Mediation with the protection of the Injunction.[6] The record demonstrates that lifting the injunction threatens to restart the prepetition litigation maelstrom to distract the parties at a critical juncture in these cases. To its credit, the State of Maryland recognizes that neither it "nor other states and government entities wish to produce the hypothetical situation where recovery by a small number of the Sacklers' creditors obtain relief to the disadvantage of others." (Maryland Objection at 4.) But that is exactly what may happen if the Preliminary Injunction is lifted. July 9, 2024 Hr'g Tr. 93:9-10, 12-13 (finding that lifting the Preliminary Injunction "would mean hundreds if not thousands of independent [lawsuits] begin again" and "impose a

---

[6] The State of Maryland suggests that "federal [ ] agencies" have been stayed from performing their "watchdog roles" (Maryland Objection at 3). This is incorrect, as the Debtors do not seek and have never sought to enjoin any civil action by the United States.

tremendous burden on the estates that would distract and hamper effort at mediated resolution"). The harm to the Estates is also compounded by the fact that creditors, like Nassau County, will attempt to prosecute claims that only the Estates may properly prosecute or settle. Nassau County's untrue assertion that it seeks to prosecute only direct claims (Nassau Objection at 2) is proven false by even the most cursory review of its complaint, which seeks to hold the Sacklers liable for "the distributions they have received, directly or indirectly, from Purdue" (Nassau Objection, Ex. A, ¶ 231) as well as for overseeing the conduct of the Debtors as directors and officers (*see id*. ¶¶ 95-147)—the very core of Estate claims that will be prosecuted by the UCC if the Standing Motion is granted. Indeed, *even were the Preliminary Injunction lifted*, Nassau County would be subject to sanctions for a willful violation of the automatic stay if it proceeded with its current complaint. And while the Objecting Parties assert that litigation will not detract from the Mediation, this Court has already found to the contrary, stating that it could say "with certainty for now [] that I think it is very clear that if parties are going to do this, they need to be single-minded in their focus" and that "[i]f their attention is elsewhere, the odds of success dramatically decrease." July 9, 2024 Hr'g Tr. 62:18-22. That is also the view of the Debtors and many other parties. The purely speculative harm of waiting a mere 18 days cannot outweigh the compelling public interests of fostering a successful mediation among dozens of key parties.

**IV. The *Pro Se* Filings Do Not Counsel Against the Relief the Debtors Seek**

Two *pro se* creditors, Maria Ecke and Ronald Bass, made submissions in response to the Motion to Extend. The Court should overrule these objections and grant the Debtors' requests for relief.

Ms. Ecke submitted a duplicative filing in connection with the Motion to Extend. *In re Purdue Pharma, L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Aug. 28, 2024) [ECF Nos. 6644, 6659] ("**Ecke Objection**"). The Ecke Objection objects to the "postponement of mediation" made by

9

the "Sacklers," misconstruing the Debtors' motion, *see* Opening Brief at 1 [ECF No. 513], and the factual record of these cases, and failing to state a basis for denying the Debtors' requested relief. Likewise, Mr. Bass's two submissions to the Court seek a protective order over medical records he has filed on the docket and otherwise fail to address the Motion to Extend. *In re Purdue Pharma, L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Aug. 29, 2024) [ECF Nos. 6650, 6658].

Because the Debtors have satisfied the legal standard for obtaining a preliminary injunction and the *pro se* filings do not contest that showing, the Court should grant the Debtors' requests for relief. It is with very good reason that it is supported (or not objected to) by so very many who are working night and day to try to find the best available path forward for these cases.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in prior pleadings in support of the Preliminary Injunction, the Debtors respectfully request that this Court overrule the objections made by the Objecting Parties and *pro se* creditors, and enter the Limited Extension as set forth herein.

Dated: September 3, 2024
       New York, New York

By: */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors
and Debtors in Possession*

11