UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**PURDUE PHARMA L.P.**, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>CASE NO. 19-23649 (SHL)<br><br>(Jointly Administered) |

### AMENDED ORDER APPOINTING THE HONORABLE
### SHELLEY C. CHAPMAN (RET.) AND ERIC D. GREEN AS CO-MEDIATORS AND
### ESTABLISHING TERMS AND CONDITIONS OF MEDIATION

Upon the reversal of this Court's order (the "**Confirmation Order**") confirming the Twelfth Amended Chapter 11 Plan (the "**Plan**") (ECF No. 3726)[2] for Purdue Pharma L.P. and its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**," the "**Company**," or "**Purdue**") by the United States Supreme Court and the status conference held by the Court on July 9, 2024, among the Debtors and certain parties in interest, including certain representatives of certain of the Mediation Parties (as defined below), the Court (a) has confirmed that the Debtors and the Mediation Parties each wish to engage immediately in mediation to explore modifications to the Shareholder Settlement (as defined in the Plan) and the Plan in light of the ruling of the United States Supreme Court and (b) after due deliberation has determined an order (this "**Order**") directing the appointment of the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Defined terms not otherwise defined herein shall have the meaning ascribed thereto in the Plan.

Honorable Shelley C. Chapman (Ret.) and Eric D. Green as co-mediators (the "**Co-Mediators**") to conduct a mediation (the "**Mediation**") among the Mediation Parties (defined herein) regarding the Mediation Topic and establishing the terms and conditions of the Mediation is in the interest of the estate and its stakeholders; and the Court having jurisdiction to consider the matters raised pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the relief requested being a core proceeding under 28 U.S.C. § 157(b) that this Court may decide by a final order consistent with Article III of the United States Constitution; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that no other or further notice or a hearing is required; and after due deliberation and good and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

1. Effective immediately, the Court authorizes and appoints the Honorable Shelley C. Chapman (Ret.) and Eric D. Green to serve as Co-Mediators in these chapter 11 cases to conduct a Mediation among representatives of each of the Debtors, the Creditors' Committee, the Ad Hoc Committee, the MSGE Group, the "Covered Parties," consisting of the Initial Covered Sackler Persons and the Additional Covered Sackler Persons (each as defined in the Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties [ECF No. 518]), the Ad Hoc Group of Hospitals, the NAS Committee, the Ad Hoc Group of Individual Victims, the Third-Party Payor Group, the Public School District Claimants, the Ratepayer Mediation Participants, (each as defined in the Plan) and one or more negotiating committee(s) of State Attorneys General (each, an "**AG Committee**" and collectively, the "**Mediation Parties**") that includes one or more States to be identified to the Co-Mediators and the other Mediation Parties.

2. The "Mediation Topic" shall be limited to modifications to the Shareholder Settlement and related portions of the Plan consistent with the ruling of the United States Supreme Court. Any party that participates in the Mediation shall by such participation be deemed to be subject to all of the provisions of this Order.

3. The Debtors are hereby authorized to enter into a mediation engagement agreement with each of Willkie Farr & Gallagher LLP ("**WFG**") and Resolutions, LLC ("**Resolutions**"), the firms that employ each of the Co-Mediators, respectively. The Co-Mediators shall be entitled to compensation for their services (including for preparatory work done prior to the date hereof), as well as reimbursement for reasonable costs. Without further order of the Court, the Debtors, in a sound exercise of their business judgment, shall promptly pay the Co-Mediators' fees and expenses (which may include the provision of services by other legal personnel of WFG and Resolutions, respectively), which fees and expenses shall constitute an administrative expense of the Debtors' estates pursuant to section 503(b) of the Bankruptcy Code. The Mediation Parties shall otherwise each be responsible for their own costs associated with the Mediation, subject to any existing orders of this Court authorizing the Debtors to reimburse such costs, subject to the terms of such orders and in accordance with the applicable provisions of the Bankruptcy Code.

4. The Co-Mediators are authorized to determine the procedures to govern the Mediation, in their sole discretion, so long as such procedures are consistent with the terms of this Order in all material respects. For the avoidance of doubt, the Co-Mediators are authorized to communicate, in their sole discretion, on a confidential basis with the U.S. Department of Justice regarding the Mediation and the Mediation Topic, with or without the Mediation Parties' participation or prior consent and without further order of this Court;

*provided, however*, that the Co-Mediators shall be limited in what they can share with the U.S. Department of Justice in the same manner in which they are limited with any other Mediation Party. The U.S. Department of Justice shall be entitled, without further order of the Court, to participate in appropriate Mediation sessions as an observer, as determined by the Co-Mediators.

5. Unless a resolution has been reached (in the determination of the Co-Mediators), in the Mediation before such time or upon further order of this Court, the Mediation shall terminate on September 27, 2024 at 11:59 p.m. (prevailing Eastern Time) (the "**Termination Date**"). In addition to the good faith participation, engagement and accessibility expected of the Mediation Parties (or, with the consent of the Co-Mediators, their authorized representatives) for the full duration of the Mediation, the Co-Mediators shall select, in their sole discretion, one calendar week where the Mediation Parties selected by them—including principals of appropriate seniority with authority (as selected, in their discretion, by the Co-Mediators)—shall be available for in-person (at a location chosen by the Co-Mediators in their sole discretion) or hybrid (in the Co-Mediators' sole discretion) Mediation sessions. The preceding sentence shall not apply to Attorneys General or their respective offices.

6. Any participant in the Mediation, as a condition to such participation, and without waiver of any position as to its continued propriety or its future modification, shall execute and agree to be bound by the Third Amended Protective Order [ECF No. 1935] (the "**Protective Order**") if not already so bound. The Mediation Parties may receive certain information solely for the purposes of the Mediation, including financial and other information concerning Purdue, the Sacklers, and entities and trusts related to the Sacklers;

notwithstanding any provision in the Protective Order limiting their access, State Attorneys General on the AG Committee(s) and their identified senior staff and counsel, as well as Joseph Rice and Jayne Conroy, Co-Leads of the PEC and the PEC representatives on the AHC, shall have the same access to such mediation information as would their outside counsel.

7. The Co-Mediators shall determine, in their discretion, which Mediation Parties (including as applicable representative subsets of each non-state Mediation Party) shall attend and participate in Mediation sessions. Each AG Committee shall identify its attendees to the Co-Mediators, each of which shall include a representative of appropriate seniority from each State that shall attend and participate in Mediation sessions. For the avoidance of doubt, nothing in this Order seeks to delegate the ultimate decision-making authority on any potential resolution of the Mediation from a particular Mediation Party to a representative subset; *provided*, *however*, that any settlement agreement(s) involving any Mediation Party reached through Mediation shall be subject to the provisions of paragraph 10 hereof. The Co-Mediators, after consultation with the Mediation Parties, may request that each Mediation Party participating in a Mediation session appear or participate with at least one principal with decision-making authority. For the avoidance of doubt, the selection of that principal shall be left in the first instance to the discretion of the applicable Mediation Party; *provided*, *however*, that the Co-Mediators shall have discretion to request participation in the Mediation by such individual or individuals as the Co-Mediators direct other than Attorneys General or their respective offices.

8. Additional parties in interest other than the Mediation Parties (the "**Additional Parties**") may participate voluntarily in the Mediation in response to a request from the Co-

Mediators or further order of this Court. The Co-Mediators may also request that the Court order any Additional Parties to participate in the Mediation. In such event, appropriate notice and a hearing shall be provided. All Additional Parties shall become subject to all of the provisions of this Order and shall agree to be bound by the Protective Order.

9.  Except as provided in paragraphs 8 and 17 hereof, the Co-Mediators shall have no communication with the Court relating to the substance of the Mediation or matters occurring during the Mediation, and the Co-Mediators shall not disclose whether a verbal agreement was reached or a Mediation Party has refused to execute a definitive written settlement agreement. The Co-Mediators shall have no obligation to make written comments or recommendations. Except as provided in paragraph 17 hereof, the Co-Mediators shall not be compelled to testify or disclose any information concerning the Mediation in any forum or proceeding, nor shall any Mediation Party, any Additional Party, or any other party in interest: (a) call or subpoena either of the Co-Mediators as a witness or expert in any proceeding relating to the Mediation, the subject matter of the Mediation, or any thoughts or impressions that the Co-Mediators may have about the Mediation Parties, or their respective positions, in the Mediation, (b) subpoena any notes, documents or other materials prepared by the Co-Mediators in connection with the Mediation, or (c) offer any statements, views or opinions of the Co-Mediators in connection with any proceeding, including, without limitation, any pleading or other submission to any court.

10. Subject to paragraph 7 hereof: (a) no party shall be bound by anything said or done during the Mediation unless a Mediation Party voluntarily agrees to be so bound by a written and signed stipulation or agreement, and (b) the results of the Mediation are non-binding unless the Mediation Parties that agree to be so bound otherwise agree; *provided*,

*however*, that any settlement agreement(s) reached through Mediation reduced to writing and signed shall be as binding against each signatory as those reached through litigation, subject, with respect to the Debtors, to the requirements of section 363(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019, and/or any other provisions of the Bankruptcy Code, as applicable, and this Court will retain jurisdiction to enforce any such settlement agreement(s).

11.    All communications made by and all submissions prepared by a Mediation Party in connection with the Mediation, including but not limited to: (a) discussions among any of the Mediation Parties during the course of the Mediation, including discussions with or in the presence of the Co-Mediators, (b) Mediation statements and any other documents or information provided to the Co-Mediators or the Mediation Parties in the course of the Mediation, and (c) all correspondence, settlement proposals, counterproposals, term sheets, and offers of compromise produced for, as a result of, or in connection with the Mediation (collectively, the "**Settlement Proposals**") shall remain confidential, shall not be made available to the public and, as applicable, shall be subject to the Protective Order; *provided*, *however*, that (i) the party making any Settlement Proposal may disclose such Settlement Proposal publicly or agree to the disclosure of such Settlement Proposal pursuant to a confidentiality agreement or otherwise, and (ii) nothing in this Order limits the ability of any Mediation Party to (x) speak publicly (whether through court pleadings, court statements or otherwise) regarding issues in these cases, provided that doing so does not disclose confidential Mediation exchanges, data or discussions regarding Settlement Proposals (except their own) or responses thereto, or (y) comment on the opioid crisis and those involved in it, these Debtors or these cases, provided that doing so does not, independently of this Order,

violate the Protective Order. The materials described in each of the foregoing clauses (a) through (c): (i) shall be protected from disclosure (and shall not be disclosed) to any other Mediation Party or to any other person or party who is not a Mediation Party (including holders of claims for which the Mediation Party is acting in a representative, agent or trustee capacity to the extent such holders are not themselves Mediation Parties) except in accordance with this Order or an applicable confidentiality agreement, (ii) shall not constitute a waiver of any existing privileges and immunities, (iii) shall not be used for any purpose other than the Mediation, (iv) shall be subject to protection under Rule 408 of the Federal Rules of Evidence and any equivalent or comparable state law, and (v) except for the sole purpose of enforcing in the Court a settlement agreement reached in this Mediation, shall not be admissible for any purpose in any judicial or administrative proceeding. For the avoidance of doubt, if no such settlement agreement is reached, then the foregoing materials shall not be admissible anywhere. The terms of the Protective Order and this Order shall govern any issues with respect to any Mediation Party's disclosure of any Settlement Proposals.

12. The Mediation Parties and their counsel and advisors shall not disclose to any non-party or to any court, including, without limitation, in any pleading or other submission to any court, any such discussion, mediation statement, other document or information, correspondence, resolution, or Settlement Proposal (subject to paragraph 11 hereof) that may be made or provided in connection with the Mediation; *provided*, *however*, that nothing in this Order shall prevent a Mediation Party from sharing with the Co-Mediators, and thereafter disclosing, to the extent not prohibited by a separate confidentiality agreement or the Protective Order, its own Settlement Proposals, any draft pleadings, any potential legal arguments such Mediation Party may raise in the chapter 11 cases, reports of its own experts,

any document produced or obtained in discovery, any information that is, was, or becomes available to a Mediation Party outside of the Mediation, such Mediation Party's own work product or materials, or other pleadings filed or to be filed by such Mediation Party with a court of competent jurisdiction; *provided, further*, that nothing in this Order shall prevent the Co-Mediators from sharing or disclosing the position of a Mediation Party, with such Mediation Party's consent.

13. Notwithstanding anything in this Order to the contrary, nothing in this Order, other than the need to comply with the Protective Order, shall prevent a Mediation Party from disclosing information revealed during the Mediation to the extent such disclosure is required, or as may be required or requested by a governmental or regulatory entity with oversight or other authority over such Mediation Party, that is within the oversight or other authority of such governmental or regulatory entity, or required by statute or court order or other legal or regulatory requirements applicable to such Mediation Party; *provided*, *however*, that if such Mediation Party is requested or required to disclose any such information to any third party or governmental or regulatory authority, such Mediation Party shall, to the extent not legally prohibited, provide the disclosing party with prompt written notice of such requirement prior to any disclosure, and shall furnish only that portion of such information or take only such action as is legally required. For the avoidance of doubt, no Mediation Party shall use its governmental or regulatory authority to require disclosure of documents or communications created for or in the Mediation or seek an order from a court or other tribunal requiring such disclosure, pursuant to the first sentence of this Paragraph 13.

14. To the extent that any Mediation Party is in possession of privileged or confidential documents and/or information provided to such Mediation Party pursuant to the

terms and conditions of the Protective Order, such information may (with the written consent of the party that holds such privilege), but shall not be required to, be disclosed to the Co-Mediators and other Mediation Parties, but shall otherwise remain privileged and confidential. Any Mediation Party may provide documents and/or information to the Co-Mediators that are subject to a privilege or other protection from discovery, including the attorney-client privilege, the work product doctrine, or any other privilege, right, or immunity the parties may be entitled to claim or invoke (the "**Privileged Information**").  By providing the Privileged Information to the Co-Mediators or by consenting in writing to the Co-Mediators providing such Privileged Information to another party, no Mediation Party nor its respective professionals intends to, nor shall, waive, in whole or in part, the attorney-client privilege, the work-product doctrine, or any other privilege, right or immunity that such party may be entitled to claim or invoke with respect to any Privileged Information or otherwise.  Any work product, materials, or information shared or produced by a Mediation Party with the Co-Mediators, including Privileged Information, shall be subject to all applicable mediation privileges and shall not be shared by the Co-Mediators with any person, including any other Mediation Parties, without the consent (which shall be required to be received by the Co-Mediators in written form solely in the case of Privileged Information) of the sharing or producing Mediation Party. Following the Termination Date, all Privileged Information shall be returned to the appropriate Mediation Party or otherwise destroyed by the Co-Mediators, who shall provide notice upon completion of such process to each applicable Mediation Party.

15. Nothing in this Order is intended to, nor shall it, waive, release, compromise, or impair in any way whatsoever, any claims or defenses that a party has or may have,

whether known or unknown, in connection with or relating to acts or omissions that took place prior to entry of this Order.

16. Nothing in this Order is intended to, nor shall it operate as, granting relief from the automatic stay in the chapter 11 cases, or the Preliminary Injunction, as amended from time to time, entered by the Court in the adversary proceeding styled, *Purdue Pharma L.P. et al. v. Commonwealth of Massachusetts et al.*, Adv. Proc. No. 19-08289 (Bankr. S.D.N.Y. Nov. 6, 2019) (RDD) [ECF No. 105].

17. Promptly following the Termination Date, the Co-Mediators shall file a notice with the Court setting forth the following: (a) that the Co-Mediators conducted the Mediation, (b) the names of the participants in the Mediation, (c) whether the participants in the Mediation acted in good faith (and which, if any, did not), and (d) whether and to what extent the Mediation was successful. At any time during the Mediation, the Co-Mediators, in their sole discretion, may also file interim status reports with the Court. The Co-Mediators may also inform the Court of any Mediation Party's refusal to attend, in its entirety, any Mediation session at which such Mediation Party's attendance is required by the Co-Mediators; any such refusal may be considered bad faith by the Co-Mediators in their discretion.

18. The Co-Mediators and any personnel employed by WFG or Resolutions who assist the Co-Mediators with the Mediation shall be immune from claims arising out of acts or omissions incident to their service in the Mediation or in these Chapter 11 Cases. The Co-Mediators may not be compelled to testify or disclose any information concerning the Mediation in any forum or proceeding except as provided in paragraph 17 of this Order.

19. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

20. For the avoidance of doubt, to the extent any part of this Order shall conflict with Local Rule 9019-1 or the General Order, the terms and provisions of this Order shall govern.

21. Notwithstanding the possible applicability of the 14-day stay in Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry, such stay having been waived for cause shown.

22. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:   September 6, 2024
         White Plains, New York

*/s/ Sean H. Lane*
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE