Honorable Sean H. Lane, U.S.B.J.
United States Bankruptcy Court
300 Quarropas Street
White Plains , New York 10601

October 18, 2024

**UNITED STATES BANKRUTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

Chapter 11

Ir re:

Case No. 19-23649 (SHL)

**PURDUE PHARMA L.P., et al.,**

(Jointly Administered)

**Debtors**

    **PLEASE TAKE NOTICE** that Plaintiff/Claimant filed on October 17, 2024 an objection to the mediation and any other motions delaying the decision of the Supreme Court of the United States under the Purdue Pharma, LP, et al., pursuant to Federal Civil Rule, **R. 20(a)(2)(A)** the claims shall be resolved in the United States District Court as Mandate by the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Federal Circuit, consistent with The United States Judicial Panel on Multidistrict Litigation and decision of Judge Robert D. Drain of the United States Bankrupt Court.

    **The Court and Debtors,** have been provided notice of the Supreme Court decision on Purdue Pharma, LP, et al., as well as all other proceeding held above in the United States Courts.

    **Judge Lane,** it would appropriate and legal to refer all my filing with your honor's chambers to the United States District Court, consistent with the non-consensual relief as order by the Supreme Court of The United States.

*Ronald Bass, Sr.*

Ronald Bass, Sr.

(Slip Opinion) OCTOBER TERM, 2023 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HARRINGTON, UNITED STATES TRUSTEE, REGION 2 *v.* PURDUE PHARMA L. P. ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 23–124.   Argued December 4, 2023—Decided June 27, 2024

Between 1999 and 2019, approximately 247,000 people in the United States died from prescription-opioid overdoses. Respondent Purdue Pharma sits at the center of that crisis. Owned and controlled by the Sackler family, Purdue began marketing OxyContin, an opioid prescription pain reliever, in the mid-1990s. After Purdue earned billions of dollars in sales on the drug, in 2007 one of its affiliates pleaded guilty to a federal felony for misbranding OxyContin as a less-addictive, less-abusable alternative to other pain medications. Thousands of lawsuits followed. Fearful that the litigation would eventually impact them directly, the Sacklers initiated a "milking program," withdrawing from Purdue approximately $11 billion—roughly 75% of the firm's total assets—over the next decade.

Those withdrawals left Purdue in a significantly weakened financial state. And in 2019, Purdue filed for Chapter 11 bankruptcy. During that process, the Sacklers proposed to return approximately $4.3 billion to Purdue's bankruptcy estate. In exchange, the Sackers sought a judicial order releasing the family from all opioid-related claims and enjoining victims from bringing such claims against them in the future. The bankruptcy court approved Purdue's proposed reorganization plan, including its provisions concerning the Sackler discharge. But the district court vacated that decision, holding that nothing in the law authorizes bankruptcy courts to extinguish claims against third parties like the Sacklers, without the claimants' consent. A divided panel of the Second Circuit reversed the district court and revived the bankruptcy court's order approving a modified reorganization plan.

*Held*: The bankruptcy code does not authorize a release and injunction

2          HARRINGTON v. PURDUE PHARMA L.P.

Syllabus

that, as part of a plan of reorganization under Chapter 11, effectively seek to discharge claims against a nondebtor without the consent of affected claimants. Pp. 7–19.

(a) When a debtor files for bankruptcy, it "creates an estate" that includes virtually all the debtor's assets. 11 U. S. C. §541(a). Under Chapter 11, the debtor must develop a reorganization plan governing the distribution of the estate's assets and present it to the bankruptcy court for approval. §§1121, 1123, 1129, 1141. A bankruptcy court's order confirming a reorganization plan "discharges the debtor" of certain pre-petition debts. §1141(d)(1)(A). In this case, the Sacklers have not filed for bankruptcy or placed all their assets on the table for distribution to creditors, yet they seek what essentially amounts to a discharge. No provision of the code authorizes that kind of relief. Pp. 7–17.

(1) Section 1123(b) addresses the kinds of provisions that may be included in a Chapter 11 plan. That section contains five specific paragraphs, followed by a catchall provision. The first five paragraphs all concern the debtor's rights and responsibilities, as well as its relationship with its creditors. The catchall provides that a plan "may" also "include any other appropriate provision not inconsistent with the applicable provisions of this title." All agree that the first five paragraphs do not authorize the Sackler discharge. But, according to the plan proponents and the Second Circuit, paragraph (6) broadly permits any term not expressly forbidden by the code so long as a judge deems it "appropriate." Because provisions like the Sackler discharge are not expressly prohibited, they reason, paragraph (6) necessarily permits them. That is not correct. When faced with a catchall phrase like paragraph (6), courts do not necessarily afford it the broadest possible construction it can bear. *Epic Systems Corp.* v. *Lewis*, 584 U. S. 497, 512. Instead, we generally appreciate that the catchall must be interpreted in light of its surrounding context and read to "embrace only objects similar in nature" to the specific examples preceding it. *Ibid.* Here, each of the preceding paragraphs concerns the rights and responsibilities of the debtor; and they authorize a bankruptcy court to adjust claims without consent only to the extent such claims concern the debtor. While paragraph (6) doubtlessly confers additional authorities on a bankruptcy court, it cannot be read under the canon of *ejusdem generis* to endow a bankruptcy court with the "radically different" power to discharge the debts of a nondebtor without the consent of affected claimants. *Epic Systems Corp.*, 584 U. S., at 513. And while the dissent reaches a contrary conclusion, it does so only by elevating its view of the bankruptcy code's purported purpose over the text's clear focus on the debtor. Pp. 7–13.

Cite as: 603 U. S. ____ (2024)    3

Syllabus

(2) The code's statutory scheme further forecloses the Sackler discharge. The code generally reserves discharge for a debtor who places substantially all of their assets on the table. §1141(d)(1)(A); see also §541(a). And, ordinarily, it does not include claims based on "fraud" or those alleging "willful and malicious injury." §§523(a)(2), (4), (6). The Sackler discharge defies these limitations. The Sacklers have not filed for bankruptcy, nor have they placed virtually all their assets on the table for distribution to creditors. Yet, they seek an order discharging a broad sweep of present and future claims against them, including ones for fraud and willful injury. In all of these ways, the Sacklers seek to pay less than the code ordinarily requires and receive more than it normally permits. Contrary to the dissent's suggestion, plan proponents cannot evade these limitations simply by rebranding their discharge a "release." Pp. 13–16.

(3) History offers a final strike against the plan proponents' construction of §1123(b)(6). Pre-code practice, we have said, may sometimes inform the meaning of the code's more "ambiguous" provisions. *RadLAX Gateway Hotel, LLC* v. *Amalgamated Bank*, 566 U. S. 639, 649. And every bankruptcy law cited by the parties and their *amici*—from 1800 until the enactment of the present bankruptcy code in 1978—generally reserved the benefits of discharge to the debtor who offered a "fair and full surrender of [its] property." *Sturges* v. *Crowninshield*, 4 Wheat. 122, 176. Had Congress meant to reshape traditional practice so profoundly in the present bankruptcy code, extending to courts the capacious new power the plan proponents claim, one might have expected it to say so expressly "somewhere in the [c]ode itself." *Dewsnup* v. *Timm*, 502 U. S. 410, 420. Pp. 16–17.

(b) In the end, the plan proponents default to policy. The Sacklers, they say, will not return any funds to Purdue's estate unless the bankruptcy court grants them the sweeping nonconsensual release and injunction they seek. Without the Sackler discharge, they predict, victims will be left without any means of recovery. But the U. S. Trustee disagrees. As he tells it, the potentially massive liability the Sacklers face may induce them to negotiate for *consensual* releases on terms more favorable to all the claimants. In addition, the Trustee warns, a ruling for the Sacklers would provide a roadmap for tortfeasors to misuse the bankruptcy system in future cases. While both sides may have their points, this Court is the wrong audience for such policy disputes. Our only proper task is to interpret and apply the law; and nothing in present law authorizes the Sackler discharge. Pp. 17–19.

(c) Today's decision is a narrow one. Nothing in the opinion should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan. Nor does the Court express a view on what qualifies as a consensual release or

4           HARRINGTON *v.* PURDUE PHARMA L. P.

Syllabus

pass upon a plan that provides for the full satisfaction of claims against a third-party nondebtor. Additionally, because this case involves only a stayed reorganization plan, the Court does not address whether its reading of the bankruptcy code would justify unwinding reorganization plans that have already become effective and been substantially consummated. Confining ourselves to the question presented, the Court holds only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants. Because the Second Circuit held otherwise, its judgment is reversed and the case is remanded for further proceedings consistent with this opinion. P. 19.

69 F. 4th 45, reversed and remanded.

GORSUCH, J., delivered the opinion of the Court, in which THOMAS, ALITO, BARRETT, and JACKSON, JJ., joined. KAVANAUGH, J., filed a dissenting opinion, in which ROBERTS, C. J., and SOTOMAYOR and KAGAN, JJ., joined.

From: Ronald Bass, Sr.
    450 Little Place, Apt. 53
    N. Plainfield, New Jersey 07060
    Email: ronaldbass12345@gmail.com
    (908) 374-9321

**To:** Honorable Sean H. Lane, U.S.B.J.
    **UNITED STATES BANKRUPTCY COURT**
    300 Quarropas Street
    White Plains, New York 10601

**Chapter 11**
**Case No. 19-23649(SHL)**

**(Jointly Administered)**

Dennis F. Dunne, et al.,
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001

Gregory P. Joseph, et al.,
**JOSEPH HAGE AARONSON LLC**
800 Third Avenue, 30th Floor
New York, New York 10022

Gerard H. Uzzi, et al.,
**GHU ASSOCIATES LLC**
One Liberty Plaza
165 Broadway 23rd Floor
New York, New York 10006

Marshall S. Huebner, et al.,
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017

Dear Judge Lane;

    I am respectfully requesting how the case came before the bankruptcy court when it was remanded back to the United States District Court consistent with the Supreme Court's decision and order.

I am also writing to bring to the court's attention the joinders of additional parties in the matter of Harrington, United States Trustee, Region 2 **v.** Purdue Pharma L. P. et al., Case No. 23-124 and United States District Court Leading Case No. 21-cv-7532 and as decided by the United States Court of Appeals for the Federal Circuit confirmed the proper jurisdiction for my opioid related claims and Tort Claims is in Civil Action No. 21-cv-8049(CM) of the United States District Court of the Southern District of New York, New York.

The matter concerns the issues related to opioid manufacturers and the resultant of my addiction and crises that have affected my family under American with Disabilities Act of 1990 and as amended.

The opioid epidemic has had devastating effects, not only on my individual life but also on the judicial abuse of process of targeting me as Title II Public Entities and Title III Private Entities that receives federal funding and contracts.

The manufacturers of these substances have offered pension benefits of investment to the State of New Jersey from State Judiciary branch, teacher unions and others, which financial investment by the State of New Jersey have contributed to widespread addiction, leading to significant health issues, social and economic repercussions, legal problems, employment and public nuisance; In light of these facts of the State of New Jersey investment in the pharmaceutical

Industries, it is imperative that all parties besides the Sackler Family and Purdue Pharma L. P., et al., that have a vested interest or potential claims or claims against other debtors under section 106 of the bankruptcy code related to this issue be join in the litigation, New Jersey position of investment in the opioid

manufacturing is no different than it affect in racist apartheid investment in South Africa harm committed on those native of South Africa.

Permissive joinder is appropriate under Federal Rule of Civil Procedure, R. 20, The issues at hand-ranging from irresponsible marketing practice, which have been resolved by many state creditors through abatement, which is deeply interconnected and affected my legal process in the State of New Jersey conflict of interest with the Law Firm of McCarter & English and affects numerous stakeholders, including the integrity of the federal and state courts and local governments burdened by the consequences of the opioid crisis.

Therefore, I respectfully request that Honorable Judge Lane not allow non-debtors-creditors defendants delay their accountability and liabilities be politically shield for contributing to the opioid crisis and trespass on my civil action and related opioid double damages of transferred intent-qusai criminal family court matter of alleged drug addiction.

*Ronald Bass Sr.,*

Sincerely

Claimant and family

Mr. Bass

# MANDATE

## United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand twenty-three.

Present:
    Jon O. Newman,
    Richard C. Wesley,
    Eunice C. Lee,
        *Circuit Judges.*

---

In Re: Purdue Pharma L.P., Purdue Pharma Inc, Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP, SVC Pharma Inc.,
                *Debtors.*

**ORDER**

Docket Nos. 22-110-bk(L),
22-113-bk(Con), 22-115-bk(Con),
22-116-bk(Con), 22-117-bk(Con),
22-119-bk(Con), 22-121-bk(Con),
22-299-bk(Con), 22-203-bk(XAP)

---

On July 29, 2024, the Supreme Court issued a certified copy of its judgment in this case. *See* Dkt. 1059 (certified judgment); S. Ct. R. 45(3) (governing mandates issued by the high Court). That judgment reversed this Court's previous judgment, 69 F.4th 45 (2d Cir. 2023), and remanded the case for further proceedings consistent with the Supreme Court's June 27, 2024 opinion, 144 S. Ct. 2071 (2024).

IT IS HEREBY ORDERED that this case is remanded to the district court for further proceedings consistent with the Supreme Court's decision.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 09/30/2024

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand twenty-three.

Present:
    Jon O. Newman,
    Richard C. Wesley,
    Eunice C. Lee,
        *Circuit Judges.*

| | |
|---|---|
| In Re: Purdue Pharma L.P., Purdue Pharma Inc, Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP, SVC Pharma Inc., <br><br>          *Debtors.* | **ORDER**<br><br>Docket Nos. 22-110-bk(L), 22-113-bk(Con), 22-115-bk(Con), 22-116-bk(Con), 22-117-bk(Con), 22-119-bk(Con), 22-121-bk(Con), 22-299-bk(Con), 22-203-bk(XAP) |

On July 29, 2024, the Supreme Court issued a certified copy of its judgment in this case. *See* Dkt. 1059 (certified judgment); S. Ct. R. 45(3) (governing mandates issued by the high Court). That judgment reversed this Court's previous judgment, 69 F.4th 45 (2d Cir. 2023), and remanded the case for further proceedings consistent with the Supreme Court's June 27, 2024 opinion, 144 S. Ct. 2071 (2024).

IT IS HEREBY ORDERED that this case is remanded to the district court for further proceedings consistent with the Supreme Court's decision.

                  FOR THE COURT:
                  Catherine O'Hagan Wolfe, Clerk of Court

