UNITED STATES BANRUPCY COURT

SOUTHERN DUSTRICT OF NEW YORK

Purdue Pharma L.P.,st al.                                                                 Chapter 11

PURDUE PHARMA L.P., P.F. LABORATORIES, INC.,

PURDUE PHARMACEUTICALS L.P.,                                 Case No. 19-23649 (RDD)

PURDUE PHARMA TECHNOLOGIES, INC.,

 and RHODES TECHNOLOGIES,

 DEFENDANTS

AMANDA MORALES

PLANTIFF

Plaintiffs Motion for Stay Pending Appeal

In the absence of a stay, the plaintiff will face the dilemma of either taking action on the underlying administrative complaint — which would in all likelihood moot its appeal — or permanently losing exclusive civil enforcement jurisdiction over the case by triggering a private right of action under 52 U.S.C. § 30109(a)(8)(C). Conversely, defendants will face only minimal harm if a stay of the PLANTIFF is conformance period is granted, as the additional time necessary for appellate review will only marginally add to the total duration of this case, which involves due process violations and wrongful death claims that have merit.

And though the Court has already ruled in favor of the opposing party (as is always the case when stays pending appeal are considered), the questions that i seek to argue on appeal are substantial and establish its likelihood of success on the merits. This Court should grant a stay to permit these worthy issues to be considered by

the Supreme Court of the United States. This is an issue of public interest and transparency since the majority of people are unaware of harm Purdue has actually caused because they have shifted attention to the opioid crisis as the primary concern and interests in this case.

## ARGUMENT

### I.    STANDARD OF REVIEW

Section 158(a) of title 28 of the United States Code grants the United States District Courts jurisdiction to hear appeals from interlocutory orders issued by a bankruptcy court at their discretion. 28 U.S.C. § 158(a)(3) (noting that a District Court shall have jurisdiction to hear appeals "from interlocutory orders and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. § 157"). Courts in the Fifth Circuit look to the factors set forth in 28 U.S.C. § 1292, which defines the scope of appellate jurisdiction over interlocutory appeals from the district courts. In re Royce Homes LP, 466 B.R. 81, 93 (S.D. Tex. 2012).

When deciding whether to grant leave to appeal under Bankruptcy Rule 8004, courts consider factors which include whether: "(1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation." Id. (internal citations and quotations omitted). Because each of these factors weighs in favor of leave to appeal, this Court should grant the creditors Motion for Leave to Appeal the Standing and class certification motions.

   1. The Question Involved is One of Law

The first factor courts consider in deciding whether to grant leave to appeal is whether "the question involved is one of law." In re Royce Homes LP, 466 B.R. at 94 (citing In re Gray, 447 B.R. 527, 533 (E.D. Mich. 2011). In the context of an interlocutory appeal, "the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the

record." Id. (citing In re Fairfield Sentry Ltd. Litig., 458 B.R. 665, 673 (S.D.N.Y. 2011)).

Each of the different categories of claims against a debtor in bankruptcy. A plan of reorganization must categorize all claims (other than certain priority claims) into classes for the purposes of voting, receiving distributions under the plan and otherwise generally providing a framework under which the provisions of the plan dealing with classified claims will operate. Claims may be placed in the same class only if they are "substantially similar" to one another. This depends on the nature of the claim (for example, general unsecured claims, priority wage claims, and so on), and not on the on the creditor's characteristics (for example, institutional investors, trade creditors, and so on). All claims within a particular class must be treated the same, unless the holder agrees to less favorable treatment.

Parties are entitled to a jury trial for personal injury or wrongful death claims, which 28 U.S.C. § 157(b)(5) requires be tried in the district court. 28 U.S.C. § 1411. Section 1411 also permits issues arising under § 303 (involuntary filing) to be tried without a jury.

While restructuring of debtor-creditor relations in bankruptcy "may" be a "public right," action that seeks to augment the estate and does not involve creditors' claims to a pro rata distribution of the estate, involves a "private" right. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). *But see RTC v. Pasquariello (In re Pasquariello)*, 16 F.3d 525 (3d Cir. 1994)

A party seeking a stay pending appeal bears the burden of showing such a stay is warranted upon consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Nken v. Holder, 556 U.S. 418, 434 (2009). "When the government is a party, its 'harm and the public interest are one and the same, because the government's interest is the public interest.'"  Ala. Ass'n of Realtors v. U.S. Dep't of Health & Human Servs., 539 F. Supp. 3d 211, 213 (D.D.C. 2021) (quoting Pursuing America's Greatness v. FEC, 831 F.3d 500, 511 (D.C. Cir. 2016)).

Although the precise balance between these four factors remains an open question, "courts in this Circuit have continued to analyze the four factors 'on a sliding scale whereby a strong showing on one factor could make up for a weaker showing on another.'" Id. at 213 (quoting NAACP v. Trump, 321 F. Supp. 3d 143, 146 (D.D.C. 2018)).  Under that framework, a movant may "remedy a lesser showing of likelihood of success on the merits with a strong showing as to the other three factors, provided that the issue on appeal presents a 'serious legal question' on the merits." Cigar Ass'n of Am. v. U.S. Food & Drug Admin., 317 F. Supp. 3d 555, 560 (D.D.C. 2018) (quoting Wash. Metro Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977)).

## PLANTIFF FACES IRREPARABLE HARM IN THE ABSENCE OF A STAY PENDING APPEAL

Irreparable harm is established by a "de facto deprivation of the basic right to appeal," which would be the case here.  Republican Nat'l Comm. v. Pelosi, No. 22-659, 2022 WL 1604670, at *4 (D.D.C. May 20, 2022); Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative, 240 F. Supp. 2d 21, 23 (D.D.C. 2003). If the Court's order is not stayed, I would essentially be put to an untenable choice: conform and give up the right to appeal or give up its jurisdiction over this case. Should I elect to conform to the Court's order despite disagreeing with it, i would effectively lose any opportunity to seek review of that order because its remand proceedings would be governed by the legal standards articulated in the decision. See, e.g., County of Los Angeles v. Shalala, 192 F.3d 1005, 1012 (D.C. Cir. 1999); Maine Med. Ctr. v. Burwell, 841 F.3d 10, 16 (1st Cir. 2016).

  Even if the defendant elected to dismiss the administrative complaint on other grounds, it would have lost its ability to directly raise its arguments in a higher court.  Cf. Citizens for Responsibility & Ethics in Wash. v. FEC, 2022 WL 17578942, at *5 (D.C. Cir. Dec. 12, 2022) (Millett, J., dissenting from denial of rehearing en banc) (criticizing a controlling group of FEC commissioners for purportedly failing to adhere to district court remand order in later case)

At a minimum, that would result in duplicative proceedings as the private right of action advanced in this Court while the Bankruptcy Court proceedings are still pending.

PLANTIFF IS LIKELY TO SUCCEED ON THE MERITS, OR AT LEAST PRESENTS A SERIOUS LEGAL QUESTION

I will not belabor the merits of this case more than is necessary to establish an entitlement to a stay. Procedural due process" concerns the procedures that the government must follow before it deprives an individual of life, liberty, or property. The key questions are: What procedures satisfy due process? And what constitutes "life, liberty, or property"? Thee Court has determined that due process requires, at a minimum: (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal. *Mullane v. Central Hanover Bank* (1950). I have tried to have the merits decided in bankrucpy court by both Judge Robert Drain and Judge Sean Lane but both have decided not to decide my claims on the merits and that has violated my due process rights. Failure to warn about OxyContin interactions with antidepressants is not he same or related to the opioid crisis and isn't related the the other claims in this case. Purdue knew or should have known about this danger because the warning was changed in 2016 and are liable for the death of my father. The FDA safety announcement stated that this interaction that causes serotin syndrome has been known in the medical community since the 1960s, it's not very well known but the information has been published and is accessible had Purdue ensured safety over profit.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Recovery "if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). To prevail on a failure to warn claim, a plaintiff must show that (1) the defendant failed to sufficiently warn, (2) the plaintiff suffered damages, and (3) the defendant's failure to sufficiently warn of the dangers was a proximate cause of the plaintiff's damages. *See, e.g., Little v PPG Industries, Inc.*, 19

Wn.App. 812, 818 n.3 (1978) (approving the Restatement of Torts' recitation of the elements). However, in the context of medical failure to warn claims, the duty of the manufacturer to warn is satisfied if the manufacturer gives adequate warning to the physician who prescribes or implants the product. *Terhune v. A.H. Robins Co.*, 90 Wn.2d 9, 13 (1978).They must also show that her physician would have acted differently had he been given an adequate warning. *See Contreras v. Bos. Sci. Corp.*, No. 2:12-cv-03745, 2016 WL 1436682, at *4 (S.D. W.Va. Apr. 11, 2016). Had the information about the dangers of OxyContin interaction with antidepressants his doctor would have not prescribed him OxyContin due to the fact that he suffered mental illness and the side effects of SS cause agitated delirium on the basis of neuromuscular findings. Drugs that are helpful in one disease are harmful in another disorder. For example, some beta-blockers taken for heart disease or high blood pressure can worsen asthma or make it hard for people with diabetes to tell when their blood sugar is too low and can increase blood glucose levels. Aspirin can increase the risk of complications from peptic ulcers, such as bleeding in the stomach or upper digestive tract.

Purdue has admitted to some of their deceptive practices and actions that were motivated by greed but they still haven't been accountable for all their wrongdoing. Purdue has plead guilty to fraud and conspiracies to defraud the United States and violate the anti-kickback statues. Purdue misbranded OxyContin, false marketing practices and other deceptive actions have been crimes done by Purdue Pharma. Purdue failed to warn about the dangers of OxyContin and antidepressants at the height of the record sales of OxyContin. Their actions harmed and killed people who had no way of knowing this danger but had the information been available to the public and on the label then sales wouldn't have been as successful as it was because 1 in 10 Americans takes an antidepressant so that's 10 percent less of the population that wouldn't have been prescribed OxyContin and would have effected sales and profit. They caused harm to people other than those effected by the opioid crisis and those actions deserve accountability. Public interest is in protecting the rights of civilians and ensuring safety for consumers. Purdue's long history of deception is egregious and avoiding accountability is something that needs to be stopped with full transparency. This case isn't about what's in Purdue Pharma's best interest they have already got away with too much and they have avoided

criminal charges and they can't escape accountability in it's entirety. This case is about the victims and their loss not about what Purdue wants to gain out of this case at their convenience. A confirmation plan approving claims related to the opioid crisis that have been litigated already will not be affected by the claims that have no interests in the abatement program or addiction treatment.

The second legal basis for the Court's power to issue an emergency stay is the All Writs Act. This Act is broader than § 2101(f). Originally codified in 1789, the All Writs Act is a short statute authorizing federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Unlike § 2101(f), the All Writs Act is "broad enough to cover interlocutory judgments or orders," not just final judgments or decrees. The text of the All Writs Act does not mention certiorari. But the Court still requires a certworthiness showing before it grants an emergency stay under the Act.
The Supreme Court's test for a stay pending appeal stems from its per curiam decision in *Hollingsworth v. Perry*. The test has three prongs. *First*, whether the applicant has shown a "'reasonable probability' that [the] Court will grant certiorari." *Second*, whether there is "a 'fair prospect' that the Court [would] reverse the judgment below." *Third*, whether there is a "likelihood" that there would be "irreparable harm" without a stay. In close cases the Court may also consider the public interest and "balance the equities."

This linkage makes sense for stays issued under § 2101(f) because these stays are designed "to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court."

Counsel for the defendants oppose this motion.

## CONCLUSION

For the foregoing reasons, this Court should grant the plaintiffs motion to stay pending appeal.

Respectfully submitted

Amanda Morales

205 Calle Del Banco
Bernalillo, NM 87004
(505) 318-2400
(505) 218-5643
ajlare356@gmail.com