UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (SHL) |
| Debtors. | (Jointly Administered) |

## CO-MEDIATORS' FOURTH INTERIM STATUS REPORT

Pursuant to the *Order Appointing the Honorable Shelley C. Chapman (Ret.) and Eric D. Green as Mediators*, dated July 10, 2024 [ECF No. 6537] (the "Mediation Order"),[1] the Court appointed the Honorable Shelley C. Chapman (Ret.) and Eric D. Green as mediators (the "Co-Mediators") to conduct a mediation (the "Mediation") between and among the Mediation Parties regarding the Mediation Topic. The Co-Mediators respectfully submit this Fourth Interim Status Report in accordance with paragraph 17 of the Mediation Order which provides, in pertinent part, that "[a]t any time during the Mediation, the Co-Mediators, in their sole discretion, may also file interim status reports with the Court."

### Statement of the Co-Mediators

1.  The Co-Mediators submit this Fourth Interim Status Report to provide the Court and the public with additional details regarding the status of the Mediation.

2.  Since the filing of the Co-Mediators' Third Interim Status Report (the "Third Report") on December 19, 2024, a copy which is attached hereto as Exhibit A, material additional progress has been made in the Mediation, both with respect to the resolution of open issues and with respect to the ongoing preparation of definitive documentation, including the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Mediation Order.

Debtors' proposed Thirteenth Amended Chapter 11 Plan (the "Thirteenth Amended Plan") and related disclosure statement.

3. In prior interim status reports, the Co-Mediators had reported to the Court that one of the eight Sackler A Side family groups was not as yet included in the settlement.[2] The Co-Mediators are now pleased to report that this is no longer the case. The eighth Sackler A Side family group has joined the settlement and, as such, the settlement now includes all Sackler A Side and B Side family groups. This development set the stage for various other significant aspects of the Mediation to progress over the past ten days.

4. As previously reported, negotiations between public and private side claimants regarding plan distributions for private-side claimants, including some 140,000 personal injury claims, have also been ongoing. As of today, these negotiations have resulted in proposed settlements with: the Ad Hoc Group of Individual Victims, the NAS Committee, the Ad Hoc Group of Hospitals, the Third-Party Payor Group, and the Emergency Room Physicians/Ratepayer Mediation Participants. Settlement implementation discussions with the Tribal Leadership Committee and negotiations with the Public School District Claimants are continuing.

5. In addition to the monetary settlements outlined above, the relevant Mediation Parties achieved agreement on the structure of the post-emergence Purdue-successor entity. Of substantial importance, the settlement also updates the myriad details relating to the establishment of the document repository created under the Twelfth Amended Chapter 11 Plan[3]

---

[2] As the Court is aware, the Covered Parties are divided into the "A Side," which is comprised of the descendants of Mortimer Sackler, and the "B Side," which is comprised of the descendants of Raymond Sackler. The Sackler A Side is comprised of eight family groups and the Sackler B Side is comprised of two family groups. These family groups include, among others, certain individual Sackler family members, their spouses, descendants, heirs, trusts, and trustees. Certain trusts and trustees are members of more than one family group.

[3] Docket No. 3726.

and further expands the scope of documents to be made available, thereby ensuring that tens of millions of documents produced by the Debtors will be available to the public.

6. In addition to the foregoing very significant developments, the Co-Mediators are also pleased to report that the 50-page detailed term sheet (the "Settlement Term Sheet"), which was nearing final form as of the filing of the Third Report, now reflects proposed agreements on all issues between and among the Sackler Covered Parties, the Debtors, the Ad Hoc Committee, the Creditors' Committee, the AG Committee, the MSGE Group, and the PEC. The Co-Mediators expect the proposed final terms of the Settlement Term Sheet to be made available as soon as practicable to all Mediation Parties for full review and approval; following this process, the material terms of the settlement will be publicly disclosed.

7. These breakthroughs were achieved through the tremendous efforts of the Mediation Parties. In addition to continuing daily engagement and negotiations through calls and Zoom meetings throughout the last month, day and night negotiations took place over three days in New York City last week, resulting in the proposed resolution of virtually all outstanding settlement-related issues with respect to the Settlement Term Sheet. The in-person sessions were attended by approximately 65 people including at least ten members of the AG Committee, as well as counsel and advisors to, and principals from, the Sackler Covered Parties, the Debtors, the Creditors' Committee, the Ad Hoc Committee, the MSGE Group, the PEC, the Ad Hoc Group of Hospitals, the NAS Committee, the Ad Hoc Group of Individual Victims, the Third-Party Payor Group, and the Public School District Claimants. It was not until approximately 10:00 pm on Thursday evening that the last parties left the Mediation session.

8. To be clear, much work remains to be done to transform the various term sheets into fully documented agreements. To that end, work on definitive documentation has

accelerated. The Mediation Parties are now advancing a number of definitive documents, including a plan of reorganization, a master settlement agreement, and individual direct settlement agreements. The 75-page draft of the master settlement agreement (the "MSA"), which is patterned after the master settlement agreement agreed to in connection with the Twelfth Amended Chapter 11 Plan and was previously circulated to certain of the Mediation Parties, continues to be revised. The MSA reflects the terms, structure, and means of implementation of the new settlement; to that end, it contains provisions relating to, *inter alia*, the sale of the IACs (as defined in the MSA), naming rights, and snapback litigation. In addition, the Debtors remain on track to file the Thirteenth Amended Plan and related disclosure statement in the coming weeks.

9. In addition to the foregoing, periodic updates have been provided to the Department of Justice and the United States Trustee regarding the Settlement Term Sheet and related issues; it is expected that in-depth discussions among the Department of Justice, the United States Trustee, and creditor and Debtor representatives will occur over the next several weeks.

10. The Mediation Parties' full engagement and perseverance and patience have made this progress possible. The continuation of the injunction and the absence of the distraction of litigation has been and continues to be critical.

11. The Co-Mediators remain convinced, now more than ever, that the continuation of the preliminary injunction is vital to the ongoing success of these negotiations. The Debtors' creditors continue to benefit greatly from the absence of litigation, which not only would distract them from the hard work of these negotiations but would pit them against each other, precisely when their ability to work together is so critical to the negotiation process. At the risk of

repeating what has been said before, this case is like no other. The sheer number of parties and settlements (including multiple intercreditor settlements) involved; the complexity of the monetary, legal, and practical issues; the need to reconcile the interests of public claimants and private claimants – and, above all, the imperative to create a blueprint for the delivery of billions of dollars to those affected by the opioid crisis – make this case unique, and uniquely challenging.

12. The Co-Mediators greatly appreciate the Mediation Parties' continued focus, energy, and constructive engagement in the Mediation.

Dated: New York, New York
January 20, 2025

/s/ Hon. Shelley C. Chapman (Ret.)
HON. SHELLEY C. CHAPMAN (RET.)
Willkie Farr & Gallagher LLP

/s/ Prof. Eric. D. Green
PROF. ERIC D. GREEN
Resolutions LLC