Hearing Date: February 25, 2025 at 11:00 a.m. (Prevailing Eastern Time)
Mediator's Report Deadline:  February 21, 2025 at 5:00 p.m. (Prevailing Eastern Time)
Objection Deadline: February 24, 2025 at 5:00 p.m. (Prevailing Eastern Time)
Reply Deadline: February 25, 2025 at 9:30 a.m. (Prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |
| **PURDUE PHARMA L.P.**, *et al.*, | |
| Plaintiffs, | Adv. Pro. No. 19-08289 (SHL) |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS**, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO (I) EXTEND THE MEDIATION AND (II) EXTEND THE PRELIMINARY INJUNCTION AND <u>ASSOCIATED DEADLINES INCLUDING TOLLING</u>**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014).  The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ................................................................................................................................ 1

ARGUMENT....................................................................................................................................... 3

    A.  The Debtors Are Likely To Successfully Reorganize ........................................................3

    B.  The Estates Would Be Irreparably Harmed if the Injunction Were Lifted............................5

    C.  The Balance of the Harms and Public Interest Weigh In Favor of Extension........................6

CONCLUSION.................................................................................................................................... 6

## TABLE OF AUTHORITIES

CASES

PAGE(S)

*In re Baldwin-United Corp. Litig.*,
  765 F.2d 343 (2d Cir. 1985) .................................................................................................. 3

*Cont'l Illinois Nat. Bank & Tr. Co. of Chicago v. Chicago, R.I. & P. Ry. Co.*,
  294 U.S. 648 (1935) ............................................................................................................... 3

*Maryland v. Purdue Pharma L.P.*,
  2024 WL 4894349 (S.D.N.Y. Nov. 26, 2024) ....................................................................... 3

## INTRODUCTION

The Debtors respectfully request that the Court extend the Mediation and the Preliminary Injunction through and including March 31, 2025. A 31-day extension is warranted due to continued progress towards documenting the many complex and interlocking agreements between and among several dozen core Mediation parties, and is necessary to allow for filing the contemplated plan and disclosure statement during this period. To further advance documentation of the settlements and agreements reached in Mediation, a three-day, in-person drafting session with the Mediators is scheduled from February 19 through 21, 2025.[2] Each drafting session is scheduled to begin at 9 a.m. and continue into the evening.

Similar "marathon in-person session[s]"[3] have moved the parties closer to successful reorganization of the Debtors, and resulted in many noteworthy, material milestones including:

- Bringing the last Sackler family pod holdout into the proposed settlement (Co-Mediators' Fourth Interim Status Report at ¶ 3, *In re Purdue Pharma L.P.*, No. 19-23649 (Jan. 20, 2025) [ECF No. 7120] ("**Fourth Interim Report**"));

- Proposed settlements with private creditors, including (1) the Ad Hoc Group of Individual Victims, (2) the NAS Committee, (3) the Ad Hoc Group of Hospitals, (4) the Third-Party Payor Group, and (5) the Emergency Room Physicians/Ratepayer Mediation Participants (*id.* at ¶ 4);

- "[A]greement on the structure of the post-emergence Purdue-successor entity" (*id.* at ¶ 5);

- Resolution of "virtually all outstanding settlement-related issues" (*id.* at ¶ 7);

- Circulation of a 75-page proposed Master Settlement Agreement (*id.* at ¶ 8); and

- Advancement towards final form of a "50-page detailed term sheet (the "<u>Settlement Term Sheet</u>") . . . [reflecting] proposed agreements on all issues

---

[2] For the avoidance of doubt, the Mediation Parties have been engaged every day of every week through communications, negotiations, exchanges of drafts, issues lists, ideas, and concepts.

[3] Co-Mediators' Third Interim Status Report at ¶ 3, *In re Purdue Pharma L.P.*, No. 19-23649 (Dec. 19, 2024) [ECF No. 7049] ("**Third Interim Report**").

1

between and among the Sackler Covered Parties, the Debtors, the Ad Hoc Committee; the Creditors' Committee; the AG Committee, the MSGE Group," and others. (*Id.* at ¶ 6.)

Based on the record of success in Mediation in these cases, the Debtors hope and expect that next week's "marathon" in-person drafting session will enable the Debtors thereafter to file a plan of reorganization and disclosure statement on the docket of these cases. Extending the injunction through March 31, 2025 is intended to allow key Mediation parties needed breathing room to progress a plan and disclosure statement without the distraction and contorted incentives created by ongoing all-out litigation. It is also intended to give all stakeholders an opportunity to evaluate the proposed reorganization plan that the Debtors hope and expect to file before the next hearing in March. As this Court noted at the last hearing, "people need to know what benefits the bankruptcy case can bring to them before they decide and . . . are fully informed on whether other options are the best way to proceed." Jan. 24, 2025 Hr'g. Tr. at 21:4-7 [ECF No. 658]. It remains the view of the Debtors and of the Mediators that lifting the Preliminary Injunction and allowing the prepetition litigation chaos to resume now—when so many parties are seemingly so close to agreement on so many issues and documents—would jeopardize the enormous progress made to date and risk the Debtors' prospects of successful reorganization. Because the Preliminary Injunction remains utterly vital to the success of the Debtors' broadly-supported and value-maximizing reorganization, the prospects of which grow ever more viable, the requested extension is warranted.[4]

---

[4] The Debtors expect that the Mediators and creditor constituencies will voice their positions on this Motion the week of the hearing thereon. The Debtors likewise reserve the right to modify the scope of relief requested herein based on developments in Mediation.

2

**ARGUMENT**

This Court's authority to extend the Preliminary Injunction where all four injunction factors are satisfied is well-established. *See Maryland v. Purdue Pharma L.P.*, No. 19-23649, 2024 WL 4894349 at *6-7 (S.D.N.Y. Nov. 26, 2024); *Cont'l Illinois Nat. Bank & Tr. Co. of Chicago v. Chicago, R.I. & P. Ry. Co.*, 294 U.S. 648, 675-76 (1935); *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985). The Debtors accordingly incorporate by reference their extensive prior briefing in support of the Preliminary Injunction, and address only "updates about exactly where we are and exactly what the plan is going forward," as requested by the Court. *See* Dec. 20, 2024 Hr'g Tr. 18:23-19:3 [ECF No. 637] ("I don't need for folks to make the legal arguments that we've heard now five, six times."). For the reasons stated herein, all four preliminary injunction factors weigh strongly in favor of a 31-day extension of the Mediation and Preliminary Injunction.

A. **The Debtors Are Likely To Successfully Reorganize**

The Debtors' prospects of successful reorganization with broad creditor support grow ever stronger, and an extension of the Preliminary Injunction remains essential to ensuring continued progress toward that objective. In the three weeks since the Mediators reported numerous breakthroughs in negotiations (Fourth Interim Report at ¶ 7), the Debtors and their stakeholders have worked to document the exceedingly complex, interlocking proposed settlements and a plan of reorganization, disclosure statement, and related critical documents. Detailed proposed settlements between and among every Sackler family group; the Ad Hoc Group of Individual Victims, the NAS Committee, the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the Emergency Room Physicians/Ratepayer Mediation Participants, the Debtors, the UCC, the Ad Hoc Committee, the AG Committee, the MSGE Group, and others, have been reached and are in drafting and documentation stages. (Fourth Interim Report at ¶¶ 4,

3

6.) That key constituencies are proceeding through and towards the conclusion of the documentation phase at this juncture is ample evidence that the Debtors have strong (and growing yet stronger) prospects of successful reorganization, and that the Preliminary Injunction remains vital.

As counsel to the UCC stated just 18 days ago, "the simple truth is that the grounds to extend the injunction are stronger now than they have ever been." Jan. 24, 2025 Hr'g Tr. 25:20-22 [ECF No. 658]. Over the course of the past 18 days, the Mediation parties have worked to document the complex proposed agreements between and among every Sackler family group, the Debtors, and nearly all organized creditor groups including the UCC and a coalition of states. (Fourth Interim Report at ¶¶ 4, 6.) Given the intricacy of the proposed agreements, however, the parties need additional time for documentation. The Mediators and the key parties have determined that another marathon, in-person Mediation session is warranted next week to advance and hopefully all-but-conclude many of the critical documents necessary to move towards effectuation. The Debtors are optimistic that this Mediation summit will, like the prior in-person Mediation sessions, bring the Debtors substantially closer to filing a plan of reorganization and disclosure statement. That plan will be consistent with *Harrington* and preserve the rights of creditors who wish to retain their direct claims against the Sacklers.

As the Mediators recently noted,

> this case is like no other. The sheer number of parties and settlements (including multiple intercreditor settlements) involved; the complexity of the monetary, legal, and practical issues; the need to reconcile the interests of public claimants and private claimants – and, above all, the imperative to create a blueprint for the delivery of billions of dollars to those affected by the opioid crisis – make this case unique, and uniquely challenging.

(Fourth Interim Report at ¶ 11.) And yet, despite the changed legal landscape, the number of interested parties, and the complexity of the issues to be resolved, the Mediation parties have, in

4

a matter of months, achieved agreements that previously took years. That is a sufficient basis to conclude that the Debtors remain likely to successfully reorganize.

Extending the injunction through March 31 will provide the time needed to advance documentation, with the objective of filing a plan and disclosure statement prior to the next hearing. It will also afford parties an opportunity to assess the forthcoming plan and disclosure statement once they are filed, with the benefit of full information to decide the best way to proceed. Continuation of the Preliminary Injunction therefore is and remains essential to ensuring the Debtors' prospects of successful reorganization on broadly-supported, value-maximizing terms. By contrast, lifting the injunction and reintroducing the distraction and contorted incentives created by ongoing all-out litigation would irreparably harm such prospects.

### B. The Estates Would Be Irreparably Harmed if the Injunction Were Lifted

The Debtors and their Estates would suffer irreparable monetary and non-monetary harms, to the detriment of their creditors, were the Preliminary Injunction lifted now.[5] The extensive record detailing such harms remains equally (if not more) applicable today. The Debtors accordingly incorporate by reference their prior briefing on this issue, as well as this Court's prior rulings. *E.g.*, Jan. 24, 2025 Hr'g Tr. 67:4-68:5 (detailing how the Debtors' reorganization prospects would be harmed absent the injunction, "particularly [] given the precipice that we stand upon, given the agreement that's been reached in principle with the Sacklers").

---

[5] *See, e.g.*, *In re Purdue Pharma L.P.*, 2024 WL 5010712, at *6 (Bankr. S.D.N.Y. Dec. 6, 2024); Oct. 31, 2024 Hr'g Tr. 92:8-18, 95:5-12 [ECF No. 605]; Sept. 23, 2024 Hr'g Tr. 87:4-14, 91:8-93:13 [ECF No. 560]; Sept. 5, 2024 Hr'g Tr. 61:20-62:16 [ECF No. 534]; July 9, 2024 Hr'g Tr. 92:16-93:21 [ECF No. 511].

### C.    The Balance of the Harms and Public Interest Weigh In Favor of Extension

A short extension of the Mediation and Preliminary Injunction is warranted under the balance of the harms and is in the public interest.  The Debtors' proposed plan, which is being developed in Mediation through intensive negotiations with dozens of constituencies, will deliver billions of dollars to state and local governments for opioid abatement and will equitably distribute the Debtors' assets to its creditors—including personal injury victims who have suffered tremendous losses.  Such "collective solution" is plainly preferable to the alternative all-against-all litigation warfare, in which individual creditors could walk away with nothing.  *See, e.g.*, Jan. 24, 2025 Hr'g Tr. 38:4 [ECF No. 658] (*pro se* creditor expressing support for a mediated resolution to these cases).  Indeed, that is evident from the history of support or non-objection to the extension of the Preliminary Injunction from multiple key creditor constituencies—which evinces remarkable alignment on the importance of continuing Mediation with the protections of the Preliminary Injunction to finalize, document, and confirm the Debtors' proposed plan as quickly as possible.  If the past extensions are representative, the extension will be supported or not objected to by a dozen or so organized creditor groups and tens of thousands of governmental and private creditors (including virtually all U.S. states and the UCC), and objected to by fewer than five parties.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in prior papers in support of the Preliminary Injunction, the Debtors respectfully request that this Court enter the orders extending the Mediation and extending the Preliminary Injunction and associated deadlines including for claim tolling as set forth herein.

Dated: February 11, 2025
       New York, New York

By: */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors
and Debtors in Possession*

7