Hearing Date: May 22, 2025 at 11:00 a.m. (Prevailing Eastern Time)
Objection Deadline: May 15, 2025 at 5:00 p.m. (Prevailing Eastern Time)
Reply Deadline: May 20, 2025 at 10:00 a.m. (Prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (SHL) |
| Debtors.[1] | (Jointly Administered) |
| **PURDUE PHARMA L.P.**, *et al.*, | |
| Plaintiffs, | Adv. Pro. No. 19-08289 (SHL) |
| v. | |
| **COMMONWEALTH OF MASSACHUSETTS**, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO (I) EXTEND THE MEDIATION AND (II) EXTEND THE PRELIMINARY INJUNCTION AND ASSOCIATED DEADLINES INCLUDING TOLLING**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

## TABLE OF CONTENTS

PAGE

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    A.    The Debtors Are Likely To Successfully Reorganize ........................................................ 3

    B.    The Estates Would Be Irreparably Harmed if the Injunction Were Lifted ........................ 4

    C.    The Balance of the Harms and Public Interest Weigh In Favor of Extension ................... 5

CONCLUSION ............................................................................................................................... 5

## TABLE OF AUTHORITIES

<u>CASES</u>

PAGE(S)

*In re Calpine Corp.*,
   365 B.R. 401 (S.D.N.Y. 2007) ................................................................................................ 4

*In re Purdue Pharma L.P.*,
   633 B.R. 53 (Bankr. S.D.NY. 2021) ........................................................................................ 3

*In re The 1031 Tax Group, LLC*,
   397 B.R. 670 (Bankr. S.D.N.Y. 2008) ..................................................................................... 4

*In re W.R. Grace & Co.*,
   386 B.R. 17 (Bankr. D. Del. 2008) .......................................................................................... 4

**INTRODUCTION**

The Debtors respectfully request that the Court extend the Mediation and the Preliminary Injunction through and including the earlier of (i) the date that is three business days after approval of the Debtors' Disclosure Statement; or (ii) June 25, 2025.[2]

On March 19, 2025, the Debtors and other mediation parties reached a key milestone in these cases: the filing of an amended draft plan and disclosure statement embodying the many interlocking settlements reached to date in Mediation. Since that time, and under the protections afforded by the Preliminary Injunction, the Debtors and other mediation parties have been working hard toward achieving the next material milestone: completion of distributable drafts of both the Master Settlement Agreement ("**MSA**") and the Governmental Entities Settlement Agreement ("**GESA**"). In addition to documenting the settlement between the Estates and the Sacklers (the MSA), and the direct settlements between the Governmental Entities and the Sacklers (the GESA), each document consists of complicated and delicate inter- and intra-creditor agreements that are all contingent upon the Debtors' plan. After months of intense work by the Debtors, the State AG Negotiating Committee, the AHC, the MSGE group, the UCC, and other creditors, as well as negotiations with the Sacklers, including in-person mediation sessions the week of April 28, 2025, the MSA and GESA are now in sufficiently final form, and the Debtors anticipate that the state election window for the direct settlements with the Sacklers will commence this week. Upon the closing of that window, the parties will know which states intend to settle their direct claims against the Sacklers as part of the global settlement that the parties have reached. Based on the results of the state election, the Debtors and constituencies

---

[2] Because the relevant facts could change between now and the date of the hearing on the relief requested herein, the Debtors reserve the right to modify the requested relief.

representing the overwhelming majority of the Debtors' creditors hope to then be able to proceed to seek approval of a disclosure statement in June, and thereafter, to commence solicitation of votes on the plan of reorganization.

It is essential that the Preliminary Injunction remain in place as the parties revise the plan and disclosure statement to reflect both the carefully negotiated agreements reached in the MSA and GESA, as well as the resolution of various other points that were not finalized as of March 28, 2025, and while the states conduct the state election process. Given the posture of this request, and the immense progress made toward reorganization, it is unsurprising that the relief requested herein is supported by the UCC, the MSGE, and the AHC. The Debtors have also been authorized to advise the Court that the State AG Negotiating Committee will file a statement in support of this Motion prior to the hearing thereon. Extending the Preliminary Injunction during this critical period is broadly supported and will increase the Debtors' likelihood of an ever-closer successful, value-maximizing reorganization.

Allowing the Preliminary Injunction to lapse now would not only undermine settlement negotiations and warp incentives for the states and other creditors, but would also jeopardize the monumental progress that the parties have made to date and materially delay and undermine resolution of these cases. The strength of the arguments in favor of extension of the Preliminary Injunction have only grown as these cases continue to progress toward resolution. Balanced against the incremental delay to creditors' ability to prosecute their direct claims against the Sacklers—a right that is preserved under the Debtors' proposed plan of reorganization for those who so choose—the balance of harms clearly favors extension of the injunction. Because all four preliminary injunction factors are satisfied, the requested extension of the Preliminary Injunction and the Mediation should be granted.

## ARGUMENT[3]

Both the law and the current facts strongly favor the requested extension of the Mediation and Preliminary Injunction. At this juncture, the Debtors have filed a draft plan and disclosure statement, and in the days leading up to the filing of the instant motion, the parties reached agreement on myriad economic and noneconomic settlement terms in the MSA and GESA. This request is carefully calibrated to support the finalization of a revised plan and disclosure statement that are consistent with the MSA and GESA, and to move the Debtors toward a hearing on a disclosure statement—key mile markers on the highway to successful reorganization. As with prior requests, this request has broad creditor support, which provides further evidence that all four preliminary injunction factors strongly weigh in favor of a short extension.

### A.    The Debtors Are Likely To Successfully Reorganize

The achievements made in Mediation following the Supreme Court's decision reversing confirmation of the Debtors' prior plan cannot be overstated. It cannot be seriously disputed that the Debtors continue to demonstrate a reasonable likelihood of successful reorganization, which requires only that "the prospects of reorganization remain viable, and [] the Debtors are substantially more likely to reorganize with the injunction in place." *In re Purdue Pharm. L.P.*, 619 B.R. 38, 59 (S.D.N.Y. 2020) (internal citations and quotation marks omitted).

---

[3] The Debtors incorporate by reference their extensive prior briefing in support of the Preliminary Injunction. Consistent with the Court's instruction, the Debtors address only "updates about exactly where we are and exactly what the plan is going forward." *See* Dec. 20, 2024 Hr'g Tr. 18:23-19:3 [ECF No. 637]. ECF numbers reference docket entries in this adversary proceeding unless otherwise noted.

3

**B.     The Estates Would Be Irreparably Harmed if the Injunction Were Lifted**

Lifting the Preliminary Injunction now, as the parties are actively drafting a revised plan and disclosure statement to reflect the resolution of numerous issues across highly complex and interrelated settlements and as the states are engaging in their direct settlement opt-in period, would "jeopardize the reorganization process" and "threaten to undermine" hard-fought settlements that undergird the Debtors' proposed plan. *In re The 1031 Tax Group, LLC*, 397 B.R. 670, 683-86 (Bankr. S.D.N.Y. 2008) (finding preliminary injunction against third-party claims was warranted "to permit the Court time to consider" various proposed settlements "and a disclosure statement and plan"); *see also In re W.R. Grace & Co.,* 386 B.R. 17, 33 (Bankr. D. Del. 2008) (extending preliminary injunction where "[a]ll the evidence before the court indicates that the parties are working toward plan confirmation and a successful reorganization is likely . . . despite seven years in chapter 11"). Allowing that result is simply incompatible with the law governing section 105(a) injunctions. *See generally In re Calpine Corp.*, 365 B.R. 401, 409 (S.D.N.Y. 2007) (observing preliminary injunctions are appropriate "where the action to be enjoined is one that threatens the reorganization process").

This Court has made extensive findings and rulings detailing the monetary and noneconomic harms to the reorganization and the Estates that would ensue if the Preliminary Injunction were lifted, and the Debtors incorporate those findings by reference. *E.g.*, Jan. 24, 2025 Hr'g Tr. 67:4-68:5 (detailing how the Debtors' reorganization prospects would be irreparably harmed absent the injunction, "particularly [] given the precipice that we stand upon, given the agreement that's been reached in principle with the Sacklers"). After months of intense negotiations with organized creditor groups, the DOJ, and other stakeholders, and with a preliminary disclosure statement and plan on file, successful reorganization grows ever nearer

4

and the harms that would ensue from lifting the preliminary injunction are proportionately greater. This preliminary injunction factor weighs strongly in favor of the requested extension.

### C. The Balance of the Harms and Public Interest Weigh In Favor of Extension

Extension of the Preliminary Injunction and the Mediation to facilitate the next step in this reorganization is also strongly favored by a balancing of the harms and consideration of the public interest. The Debtors' proposed plan will unlock billions of dollars in value to compensate public and private creditors,[4] create additional public benefits in the form of a document repository that will make millions of the Debtors' documents available to the public, and yield other critical noneconomic concessions from the Sacklers. *See* Co-Mediators' Fifth Interim Status Report (the "**Fifth Interim Report**") at ¶ 5, *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Feb. 21, 2025) [ECF No. 7254]. Moreover, governmental entities that represent nearly every person in the United States support the relief requested. That provides clear additional evidence that continuing the Preliminary Injunction serves the public interest. Preservation of these complex interrelated agreements far outweighs any harm from an approximately 30-day delay in creditors' abilities to prosecute their direct claims against the Sacklers.

### CONCLUSION

For the foregoing reasons, and for the reasons set forth in prior papers in support of the Preliminary Injunction, the Debtors respectfully request that this Court enter the proposed orders

---

[4] Just last month, the Debtors took another step toward making such distributions through the approval of a claims administration motion, which will set in motion various mechanics to streamline and accelerate distributions to victims. *See* Order (I) Appointing PI and TPP Claims Administrators; (II) Authorizing the Establishment of Claims Deadlines and Claims Objection Procedures; and (III) Granting Related Relief ("**Claims Administration Order**"), *In re Purdue Pharma L.P.*, No. 19-23649 (Bankr. S.D.N.Y. Apr. 15, 2025) [ECF No. 7382].

extending the Mediation and extending the Preliminary Injunction and associated deadlines, including for claim tolling as set forth herein. The Debtors reserve the right to withdraw or modify this request based upon any events that occur between now and the date of the hearing on this Motion.

Dated: May 8, 2025
New York, New York

By: */s/ Marshall S. Huebner*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
James I. McClammy
Marc J. Tobak
Joshua N. Shinbrot

*Counsel to the Debtors
and Debtors in Possession*