Fredrick Hill, Pro Se

Plaintiff / Creditor #555 listed in 45th Purdue temporary preliminary injunction order

Adv. .Pro. No 19-08289-shl Case No. 19-23649

United States Bankruptcy Court
Southern District Of New York.

_____

In re:                                                    Chapter 11

Purdue Pharma L.P., et al.,                               Case No. 19-23649 (RDD)

          Debtors.                                         (Jointly Administered)


_____


Purdue Pharma L.P., et al.,

                                                          Adv. Pro. No. 19-08289-shl
          Plaintiffs,

V

Commonwealth Of Massachusetts, et al.,

          Defendants.

_____

FREDERICK HILL'S OPPOSITION TO DEBTORS MOTION TO EXTEND PURDUE

TEMPORARY PRELIMINARY INJUNCTION TO JUNE 2025

_____

# Opposition

_____

_____

IF JUDGE LANE DENIES MY PENDING MOTION TO DISMISS THIS BANKRUPTCY CASE, this opposition to Debtors motion to extend the Purdue temporary preliminary injunction asks Judge Lane to at least order that the PURDUE TEMPORARY PRELIMINARY INJUNCTION ORDER is lifted for temporarily stayed lawsuits like my NJ pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 against defendants listed in it that have not filed bankruptcy in this purdue bankruptcy proceeding the day after Judge Lane had plenty of time to consider and review the Debtors desired bankruptcy CHAPTER 11 BANKRUPTCY PLAN and DISCLOSURE STATEMENT, and Judge Lane formally approved the Debtors CHAPTER 11 BANKRUPTCY PLAN and DISCLOSURE STATEMENT so that I can file a motion in NJ SUPERIOR COURT to REINSTATE my temporarily stayed NJ pre-petition lawsuit CAM-L-3693-19 in NJ SUPERIOR COURT against defendants listed in it that have already chosen not to file bankruptcy in this purdue federal agency bankruptcy proceeding.

AND, if Judge Lane doesn't dismiss this purdue bankruptcy proceeding, BECAUSE this purdue bankruptcy Federal agency proceeding and the bankruptcy court's temporary preliminary injunction order CAUSED the (attached EXHIBIT 1B Pg 1, EXHIBIT 1B Pg 2, and EXHIBIT 1B Pg 3 debtors 10-9-2020 DLA PIPER Stephen Matthews NOTICE OF BANKRUPTCY STAY letter to my NJ SUPERIOR COURT JUDGE RODRIGUEZ) and (attached EXHIBIT 1F debtors 10-2-2020 temporary stay letter) that both ultimately caused on 12-11-2020 my NJ pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 to be ORDERED (see attached EXHIBIT 1C 12-11-2020 POLANSKY ORDER) dismissed without prejudice subject to be reinstated by formal motion if the purdue bankruptcy proceeding couldn't fully dispose of all the issues between the parties…….and now this bankruptcy proceeding cannot.

AND, for all these above listed reasons, IF Judge Lane doesn't dismiss this purdue bankruptcy proceeding ….or lift the Purdue temporary preliminary injunction order…..Judge Lane must at least now ORDER that in the very near future, the same day I receive email confirmation that my NO vote was received in the purdue bankruptcy plan (As I am voting NO and executing my RIGHT to vote NO and choosing NOT to settle my NJ pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 against defendants listed in it that have not filed bankruptcy in a bankruptcy proceeding)

My temporarily stayed NJ pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 must be BANKRUPTCY COURT ORDERED no longer temporarily stayed for listed defendants in it that have not filed bankruptcy ONLY!

And Judge Lane must ORDER NONE OF THE NO-LONGER TEMPORARILY STAYED CASES WITH DEFENDANTS THAT HAVE NOT FILED BANKRUPTCY IN THIS PURDUE BANKRUPTCY PROCEEDING will be resolved in the purdue oxycontin bankruptcy proceeding,

AND Judge Lane must ORDER for these cases like mine, that were active cases that the debtors lawyers successfully had temporarily stayed for the last half a DECADE with defendants listed in them that have not filed bankruptcy to be REINSTATED (like my attached EXHIBIT 1C NJ SUPERIOR COURT JUDGE POLANSKY BY 12-11-2020 NEW JERSEY COURT ORDER) AND the Bankruptcy Court or the Debtors or both ….must be ORDERED to re-contact the courts they specifically gave notice to temporarily stay active cases FOR DEFENDANTS THAT HAVE NOT FILED BANKRUPTCY….THE DAY AFTER any  PLAINTIFF/CREDITOR NO VOTE to the upcoming Bankruptcy plan is registered as received, so that THE DEBTORS can notify the specific COURTS by formal motion: that the bankruptcy temporary preliminary injunction order has expired FOR ALL LISTED DEFENDANTS THAT HAVE NOT FILED BANKRUPTCY the day any plaintiff/creditor's no vote to the purdue bankruptcy plan was registered as received,

 AND the Debtors must also be ordered to give formal notice, AND must be ORDERED to formally FILE A MOTION TO REINSTATE to be sent to ALL these Judges/Courts where it's proven fact that the Debtors successfully temporarily stayed these actual active lawsuits.

And this formal notice is ORDERED to also give these affected Judges/Courts proper notice: that for ALL cases against defendants that have not filed bankruptcy, THIS PURDUE BANKRUPTCY PROCEEDING COULDN'T DISPOSE OF ANY ISSUES BETWEEN ANY PLAINTIFF/CREDITOR and DEFENDANTS that have NOT filed bankruptcy after Plaintiff/Creditor NO VOTE to the Purdue bankruptcy plan was registered with the Debtors.

Judge Lane knows from attached EXHIBITS 1C, and EXHIBIT 1C Pg2 that Judge Polansky ordered on attached EXHIBIT 1C 12-11-2020 that my NJ pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 was dismissed without prejudice. (AS A DIRECT RESULT OF DEBTORS EXHIBIT 1B 10-9-2020 LETTER TO MY NJ SUPERIOR COURT…. DESCRIBED BY DEBTORS IN ATTACHED EXHIBIT 1B Pg 3 GIVING NOTICE OF THE PURDUE TEMPORARY PRELIMINARY INJUNCTION ORDER STAY ON MY NJ PREPETITION CONSUMER FRAUD OXYCONTIN PERSONAL INJURY LAWSUIT CAM-L-3693-19 TO NJ SUPERIOR COURT , AND GIVING NOTICE THEY REPRESENT: THE PURDUE FREDERICK COMPANY, AND SEVERAL DEBTORS they call "Purdue")

And, Judge Lane knows…. my New Jersey pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 was ordered to be reinstated by formal motion in New Jersey Superior Court, if I, THE PLAINTIFF, CHOSE NOT TO SETTLE MY NJ LAWSUIT IN A

BANKRUPTCY PROCEEDING WITH ANY DEFENDANTS LISTED IN IT THAT HAVE NOT
FILED BANKRUPTCY

I have executed my RIGHT and I have chosen the Purdue bankruptcy proceedings can NOT
fully dispose of ANY issues between Me the Plaintiff/Creditor and Defendants that have not filed
bankruptcy after Plaintiff/Creditor registered NO VOTE to upcoming Purdue bankruptcy plan
vote.

 And since I WILL have voted NO and chosen not to settle with any defendants that have not
filed bankruptcy in a bankruptcy proceeding…..It is obvious the Purdue bankruptcy preceding
cannot fully dispose of any of the issues between ME the Plaintiff/Creditor —and all of the listed
Defendant parties that have not filed bankruptcy…..meaning that I will be finally able , after
more than half a decade to FILE MY attached FORMAL MOTION TO REINSTATE MY NJ
PRE-PREPETION OXYCONTIN CONSUMER FRAUD PERSONAL INJURY LAWSUIT
CAM-L-3693-19 …BUT only for defendants that have not filed bankruptcy,
And finally RESUME PROSECUTION of my New Jersey lawsuit CAM-L-3693-19 against
defendants listed in it that have not filed bankruptcy and are no longer protected by the Purdue
bankruptcy Court.

It is now time for this purdue bankruptcy proceeding to accept the reality of my and other
plaintiff/creditors upcoming NO vote—-to the soon to be voted on purdue bankruptcy plan. And
start preparing for my NJ SUPERIOR COURT ORDERED formal Motions to REINSTATE my NJ
pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 to be sent to the
(SO FAR INCORRECT AND INCOMPLETE LIST OF THE ACTUAL LAWYERS seen in
EXHIBIT 1G, AND EXHIBIT D, & EXHIBIT F) Lawyers representing the defendants listed in my
NJ pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 that have
not filed bankruptcy in my attached NJ MOTION TO REINSTATE my NJ pre-petition Consumer
Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 only for listed defendants that haven't
filed bankruptcy,  And this bankruptcy court must ORDER the debtors must
immediately/correctly list the lawyers that will represent these defendants (that have not filed
bankruptcy) in my upcoming MOTION TO REINSTATE my NJ lawsuit.

And I object to Debtors motion to extend the Purdue temporary preliminary injunction as Debtor
admits , and described my ABSOLUTE demanded RIGHT to trial outside of Bankruptcy Court
for the Sackler defendants that have not filed bankruptcy in his recent Memorandum of law in
support of his Motion to extend his half a decade long—slow delay of my RIGHT and ability to
prosecute my direct claim/New Jersey personal injury Oxycontin lawsuit CAM-L-3693-19
against the listed Sackler defendants that have not filed bankruptcy and the other non-debtor
defendants that have not filed bankruptcy

The Debtors only mention the Sackler defendants,  but what about the other listed
DEFENDANTS in my NJ pre-petition Consumer Fraud Oxycontin personal injury lawsuit
CAM-L-3693-19 like THE PURDUE FREDERICK COMPANY INC NY corporate ID #3105222,
and all of the ABC 1995-2007 PURDUE PRESIDENTS AND VICE PRESIDENTS 1-10, (like

specifically listed defendants Michael Friedman, Howard R. Udell,  Paul D. Goldenheim, Robin E.  Abrams, Esquire, and Stuart D. Baker), and ABC 1995-2007 PURDUE BOARD OF DIRECTORS 1-20 (as seen in attached EXHIBIT 1G not all 1995-2007 purdue corporate president and vice president officers and board of directors were correctly listed in the bankruptcy proceeding) What about these listed defendants that have NOT filed bankruptcy or have not been correctly listed as a Related Party Defendant subject to the Purdue temporary preliminary injunction order?

Who are the actual lawyers I must send a copy of my NJ SUPERIOR COURT MOTION TO REINSTATE that will represent the above listed defendants that have not filed bankruptcy when my temporarily stayed NJ prepetition consumer fraud OxyContin Personal Injury lawsuit CAM-L-3693-19 is reinstated , immediately after my registered NO VOTE in the Purdue bankruptcy.

As I have seen several declarations (see attached EXHIBIT 1A, EXHIBIT 1B, EXHIBIT 1C, EXHIBIT 1E, EXHIBIT 1F and EXHIBIT 1G from Arik Preis, Hayden Coleman, Jasmine Ball, JC Dougherty,  Gerald McCarthy, Stephen Matthews and others on the purdue docket that completely list different DEFENDANTS and LAWYER'S names, with completely different spelling…or a lawyer's name with no law firm name ,and no address phone number or email.

 THIS MUST NOW BE ADDRESSED So CREDITORS LIKE ME VOTING NO to the new purdue bankruptcy plan know EXACTLY what lawyers I will need to send my MOTION TO REINSTATE in New Jersey Superior Court FOR DEFENDANTS THAT HAVE NOT FILED BANKRUPTCY like my defendants listed below :

THE PURDUE FREDERICK COMPANY INC. legally registered d/b/a THE*PURDUE FREDERICK COMPANY NY corporate ID #3105222?

- MICHAEL FRIEDMAN?

- HOWARD R.  UDELL?

- PAUL D.  GOLDENHEIM?

- STUART D.  BAKER?

- ROBIN E. ABRAMS, ESQUIRE.?

- THE P.F. LABORATORIES, INC.?

Considering my lawsuit has been temporarily stayed for the last half a decade and with the debtors continually telling the court about how they're trying to streamline the process for everyone to get settled quicker… it would definitely help me/and other creditors (after we vote NO to the next purdue bankruptcy plan) to reinstate our temporarily stayed cases against defendants that have not filed bankruptcy………to have the things in this opposition ordered by Judge Lane if he decides not to dismiss this bankruptcy case….. and to have Judge Lane

ORDER that the Debtors must immediately correct and accurately List each LAWYER and his contact info that WILL RECEIVE SERVICE of my attached NJ formal Motion to REINSTATE and REPRESENT THE ABOVE LISTED DEFENDANTS THAT HAVE NOT FILED BANKRUPTCY IN MY NJ PREPETITION CONSUMER FRAUD OXYCONTIN PERSONAL INJURY LAWSUIT CAM-L-3693-19 after I vote NO to the next purdue bankruptcy plan.

# CONCLUSION

_____
_____

If Judge Lane doesn't dismiss this purdue bankruptcy proceeding, This bankruptcy court must not extend the Purdue temporary preliminary injunction order and must allow me to prosecute my NJ pre-petition Consumer Fraud Oxycontin personal injury lawsuit CAM-L-3693-19 against NY corporate ID #30111 and NY corporate ID #3105222 and their 1995-2007 purdue board of directors and 1995-2007 purdue corporate presidents and vice presidents listed by name in my NJ prepetition lawsuit CAM-L-3693-19. I have made several very basic requests in this objection to save the debtors estate time and money , But if Judge Lane refuses any requests I made in this objection I will immediately file a motion asking for the denied requests to be court ordered.

Dated:
May 15th, 2025

_Fredrick Hill, Pro Se_

By: /s/ Fredrick Hill, Pro Se

Fredrick Hill, Pro Se

Certificate of Service
_____

I, Fredrick Hill, Pro Se, hereby certify that on May 15th, 2025 a copy of the foregoing motion
was sent via email to the following parties:

Davis Polk And Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Lawyers for Adv. Pro. No. 19-08289 RDD
Purdue Pharma Bankruptcy

New York Southern District Bankruptcy Court
Docket
White Plains, NY 10601

_Fredrick Hill, Pro Se_

/s/ fredhill

May 15th, 2025
Date

## LIST OF EXHIBITS

**Exhibit 1 - Doc 7308 - Debtors' Filing - March 19, 2025**.....................................................**9**

**Exhibit 1A -  UCC Email - April**..................................................................................**12**

**Exhibit 1B -  Oct 9, 2020 DLA Piper Letters**...............................................................**13**

**Exhibit 1C -**....................................................................................................................**16**

**Exhibit 1D -**....................................................................................................................**18**

**Exhibit 1E -**.....................................................................................................................**19**

**Exhibit 1F -**.....................................................................................................................**20**

**Exhibit 1G -**....................................................................................................................**23**

**Exhibit 2 -  Purdue corporate predecessor company NY ID #30111 merger history**.....**24**

**Exhibit 3 - 2007 Oxycontin Criminal Plea Agreement and Judge Jones's Opinion and Order**......................................................................................................................**66**

**Exhibit 4 - Kaminsky's August 12, 2022 Bankruptcy Filing**............................................**68**

**Exhibit 5 - UCC Doc 6685-2 - Page 11 of 321**...............................................................**69**

**Exhibit 6 - UCC Doc 6685-2 - Page 23 of 321**...............................................................**70**

**Exhibit 7 - UCC Doc 6685-2 - Page 27 of 321**...............................................................**71**

**Exhibit 8 - Purdue Pharma L.P. 1991 Formation Date**...................................................**72**

**Exhibit 9 - Judge McMahon's Doc 148**.........................................................................**73**

**Exhibit 10 - Prescription History Record**.......................................................................**76**

# Exhibit 1 - Doc 7308 - Debtors' Filing - March 19, 2025

- Each individual who served as a CEO, CFO, or General Counsel of Purdue Pharma between 2006 and 2018;

- Notable advisors to Purdue Pharma or the Sackler Families who held positions at Purdue Pharma or affiliates and were assigned a Purdue Pharma email address, such as Stuart Baker, the longtime corporate secretary for and advisor to the Board, and Stephen Ives, an outside advisor and accountant to certain members of the Sackler Families; and

- Specified custodians, who based on their tenure and positions in Purdue Pharma's legal, government affairs, compliance, corporate security, R&D, sales and marketing, and corporate communications functions, were identified as likely to have information relevant to potential estate claims.

The Purdue Pharma documents collected by Davis Polk included, among other things, custodial records, such as emails and other correspondence, as well as shareholder and Board materials and minutes, organization charts, memoranda, presentations, transaction documents, corporate governance documents, financial statements and projections, legal advice, spreadsheets, and litigation-related documents.

The collection included documents produced by Purdue Pharma in certain prior litigations, such as the opioid-related multidistrict litigation pending in the Northern District of Ohio, and certain government investigations, including the then-pending investigation by the DOJ, as well as the electronic files and records collected for purposes of those productions.

Davis Polk searched this enormous database of electronic records innumerable times in the course of conducting its investigation on behalf of the Special Committee and, as part of its review, developed complex search strings containing hundreds of potentially relevant terms designed to identify documents relevant to potential estate claims. These searches initially identified more than 428,000 internal Purdue Pharma documents for higher-priority review. Utilizing a technology-assisted review algorithm to identify and prioritize documents most likely to be relevant to the investigation, Davis Polk and other attorneys reviewed 175,500 of these documents.

Davis Polk also conducted numerous individual targeted searches, as well as smaller and discrete targeted reviews, to probe key events, individuals, and relevant issues as they were identified over the course of the investigation. For example, in connection with the investigation into the circumstances surrounding the formation of Rhodes Pharma, Davis Polk reviewed and analyzed an additional 30,000 internal Purdue Pharma and Rhodes documents.

The topics and issues investigated by Davis Polk included, among other things:

- Purdue Pharma's exposure to civil or criminal liabilities relating to its sale and marketing of OxyContin, and the awareness by members of the Sackler Families of the same;

166

- Purdue Pharma's history of OxyContin-related litigation and government investigations, including its prior settlements with private plaintiffs and with various federal, state, and local government agencies;

- Purdue Pharma's history of litigation relating to its patents for OxyContin and related efforts to preserve patent exclusivity;

- Purdue Pharma's compliance with regulatory and other obligations concerning efforts to monitor potential abuse and diversion of OxyContin;

- Histories of and motivations behind various cash and non-cash transfers of value from Purdue Pharma to or for the benefit of the Sackler Families and Sackler Entities;

- Purdue Pharma's risk of potential insolvency and the consideration of restructuring;

- Purdue Pharma's stated business strategies and objectives, including its efforts relating to research and development, mergers and acquisitions, and other business development initiatives;

- Purdue Pharma's efforts to obtain third-party debt or other sources of capital;

- Purdue Pharma's motivations for pursuing an abuse-deterrent formulation of OxyContin;

- Reactions by senior Purdue Pharma executives and members of the Board to press articles reporting on the national opioid crisis; and

- The extent to which members of the Sackler Families controlled or dominated Purdue Pharma.

Davis Polk also reviewed approximately 760,500 additional internal Purdue Pharma documents in connection with responding to requests for discovery from the Creditors' Committee. Also considered and analyzed were documents identified by the Creditors' Committee and shared with Davis Polk on a common interest basis as relevant to the potential claims.

In addition to its collection and review of internal Purdue Pharma documents, Davis Polk also participated in efforts led primarily by the Creditors' Committee and NCSG to obtain discovery from parties and non-parties in these proceedings, including the Sackler Families, the law firm Norton Rose Fulbright LLP, the IACs, certain financial institutions, and others.[1256] Specifically, on behalf of the Special Committee, Davis Polk participated in over 20 teleconferences between the creditors and Sackler Families and Sackler Entities regarding the

---

[1256] *See supra*, Article III.RQ.

scope of discovery, among other issues.  Davis Polk also participated in over a dozen additional calls and other communications relating to discovery from Norton Rose Fulbright LLP.

Based on the results of these efforts, Davis Polk, on behalf of the Special Committee, conducted numerous individual targeted searches over custodial documents, electronic records, and financial records produced by the parties and non-parties to probe key events, individuals, and relevant issues, as listed above.

Finally, Davis Polk reviewed and analyzed documents relating to Purdue Pharma's long and complex history of opioid-related litigation and legal liability principally arising from its sale and promotion of OxyContin, as well as relevant documents bearing on its long history of patent litigation.  Davis Polk considered and analyzed public and internal documents related to Purdue Pharma's history of litigation and government investigations, including complaints and other court filings, subpoenas, civil investigative demands, plea agreements, settlement documents, and court decisions spanning from early 2001 through the Petition Date.

In all, Davis Polk, and other attorneys working at its direction, reviewed over 960,670 documents, comprising over seven million pages, in connection with its investigation into potential estate claims.

### (iv)   Forensic Analysis of Transfers to or for the Benefit of Sackler Entities

The Special Committee commissioned a sweeping review of transfers of value to or for the benefit of the Sackler Families and Sackler Entities, including to assess potential recoveries by the Debtors from the Sackler Families and Sackler Entities on a variety of legal theories.  In furtherance of the Special Committee's investigation, Davis Polk engaged experts experienced in both forensic accounting and the valuation of pharmaceutical assets to assist Davis Polk by compiling and analyzing data at Purdue Pharma and obtained in discovery from third parties to identify transfers by Purdue Pharma to the Sackler Families and Sackler Entities or commercial dealings with Sackler Entities that might support claims of recoupment by the Debtors, on a variety of legal theories.

In April 2019, Davis Polk engaged AlixPartners to perform a comprehensive forensic review to identify (i) all material cash transfers of value to or for the benefit of the Sackler Families and Sackler Entities and (ii) all material dealings between Purdue Pharma and the Sackler Families and Sackler Entities, in both cases from 2008 through September 2019.

AlixPartners is a preeminent consulting firm that provides forensic accountings, financial analyses, and other professional services.  The AlixPartners team was led by Richard Collura, a Managing Director who specializes in large-scale financial investigations and complex forensic accounting.  Mr. Collura has worked with counsel in representing companies, boards of directors, audit committees, special committees, and creditors' committees in connection with bankruptcy cases and other distressed company situations.  He is a Certified Public Accountant, Certified Fraud Examiner, Certified Insolvency and Restructuring Advisor, and is certified in financial forensics by the American Institute of Certified Public Accountants.  Mr. Collura was assisted in his work by an experienced team of professionals including Certified Public Accountants (CPAs), Certified Fraud Examiners (CFEs), CFA charterholders and Masters of

168

Exhibit 1A -  UCC Email - April



Dear Mr. Hill,

I am writing in response to the various e-mails you have sent to us.

We agree with you that, between May and September 2004, THE PURDUE FREDERICK COMPANY (NY ID: 30111) merged and divided through a series of transactions into THE PURDUE FREDERICK COMPANY INC. (NY ID: 3105222).

We understand that THE PURDUE FREDERICK COMPANY INC. (NY ID: 3105222) is the entity that pled guilty to misbranding OxyContin in 2007.  Purdue

# Exhibit 1B -  Oct 9, 2020 DLA Piper Letters

## EXHIBIT 1B Pg 1



**DLA Piper LLP (US)**
51 John F. Kennedy Parkway
Suite 120
Short Hills, New Jersey 07078-2704
www.dlapiper.com

Stephen C Matthews
stephen.matthews@dlapiper.com
T  973.520.2541
F  9732152602

*Partners responsible for Short Hills Office:*
*Andrew P. Gilbert*

October 9, 2020                                                    OUR FILE NO. 304013-000010
*VIA UPS OVERNIGHT DELIVERY*

Honorable Yolanda C. Rodriguez
Camden County Hall of Justice
101 South 5ᵗʰ Street, 1ˢᵗ Floor
Camden, NJ 08103-4001

**Re:    Frederick Hill v. Purdue Pharma L.P., et al., No. CAM-L-003693-19**

Dear Judge Rodriguez:

    We represent Purdue Pharma, L.P., Purdue Pharma., Inc. and The Purdue Frederick Company (collectively "Purdue") and respectfully submit this letter to update the Court on the status of Purdue's bankruptcy proceeding, which was initiated shortly after the above referenced case was filed.[1]

    On September 15, 2019, Purdue Pharma L.P. commenced a voluntary bankruptcy proceeding under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York; certain of its affiliates, collectively, the "Purdue Debtors"[2] also commenced voluntary bankruptcy proceedings. The bankruptcy case is docketed as *In re Purdue Pharma L.P.*, No. 19-23649. A copy of Purdue Pharma L.P.'s bankruptcy petition is enclosed as **Exhibit A** for your reference.

    Section 362(a) of the Bankruptcy Code provides for an automatic stay of any action or proceeding against each of the Purdue Debtors as of their bankruptcy filings. The automatic stay of Section 362(a) prohibits "all entities" from "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). Any actions taken in violation of the automatic stay, such as filing or serving a motion against the debtors, are void and without effect. *See, e.g., In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003).

---

[1]    Though Purdue recognizes that the Court recently opined regarding service issues relating to at least one Defendant, bankruptcy counsel for the Purdue Debtors, Davis Polk & Wardwell, LLP, is not authorized to accept service on behalf of the Purdue Debtors and does not represent any other party related to the bankruptcy. Purdue thus respectfully submits this letter without waiving any rights or objections, including to improper service and improper venue.

[2]    The twenty-four Purdue Debtors are: Purdue Pharma L.P., Purdue Pharma Inc., Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP, and SVC Pharma Inc.

age 18                                                     Certification to Reinstate
AM-L-3693-19

# EXHIBIT 1B Pg 2



**DLA PIPER**

Honorable Yolanda C. Rodriguez
October 9, 2020
Page Two

        In addition, on September 18, 2019, the Purdue Debtors commenced an adversary proceeding,
No. 19-08289 (RDD), and filed a motion for an order pursuant to 11 U.S.C. § 105(a) and Rule 7065 of the
Federal Rules of Bankruptcy Procedure to enjoin the commencement or continuation of litigation against
the Purdue Debtors and certain related parties. On November 6, 2019, the United States Bankruptcy
Judge presiding over the Purdue Debtors' bankruptcy cases, Judge Robert D. Drain, issued an order
pursuant to 11 U.S.C. § 105(a) enjoining commencement or continuation of litigation against any Debtor
or Related Party, as defined therein, through April 8, 2020. The November 6, 2019 order prohibited and
enjoined the continuation of all actions, including this action, against the following entities named in
Plaintiff's complaint: The Purdue Frederick Company Inc., The P.F. Laboratories Inc., Purdue Holdings
L.P., Rosebay Medical Company L.P., The Beacon Company, PLP Associates Holdings L.P., Richard S.
Sackler, Jonathan D. Sackler, Mortimer D.A. Sackler, Kathe A. Sackler, Ilene Sackler Lefcourt, David A.
Sackler, Beverly Sackler, Theresa Sackler, Estate of Dr. Richard Sackler, Estate of Mortimer Sackler, and
Estate of Raymond Sackler. Judge Drain subsequently extended that order, and on October 1, 2020, the
Court further enjoined litigation against any Debtor or Related Party through March 1, 2021. The
Thirteenth Amended Order is the currently operative order (the "Order"). The Order is enclosed as
**Exhibit B** for your reference. Plaintiff and the above-referenced case are identified as subject to the
Order at line 537 on page 146 of Appendix III to the Order. The Order enjoins the Plaintiff from pursuing
his claims against any of the related parties listed above.

        Purdue recently learned that Plaintiff seeks to advance this matter, including, but not limited to,
seeking default judgments.[3] Plaintiff's filings violate the automatic stay with respect to the Purdue
Debtors and the Order with respect to the related parties listed in the paragraph above. Any relief from
the automatic stay or from the Order must be sought from Judge Drain in the United States Bankruptcy
Court for the Southern District of New York.[4] Purdue reserves all rights to enforce the automatic stay and
the Order as to Plaintiff should he continue to pursue litigation against the Purdue Debtors or the above-
identified related parties.

        Thank you for your consideration of this matter.

Respectfully,

*s/ Stephen C. Matthews*
Stephen C. Matthews

Enclosures

---

[3]     Purdue understands that Plaintiff has also sought certain relief with respect to which oral argument has
been scheduled. Purdue does not intend to appear at any oral argument in light of the automatic stay applicable to
the Purdue Debtors and the Order applicable to the identified related parties, although counsel can be available to
discuss should the Court have any questions.

[4]     Plaintiff also filed multiple proofs of claims in the bankruptcy matter. These claims are currently being
administered and handled in the ordinary course of the bankruptcy proceedings.

CAM-L-3693-19



RE: Specific question
1 message

**EXHIBIT 1B Pg 3**

**McCarthy, Gerard** <gerard.mccarthy@davispolk.com>
To: Fred Hill <fredhill70@gmail.com>
Cc: "Benedict, Kathryn S." <kathryn.benedict@davispolk.com>

Mon, Oct 12, 2020 at 7:0

Dear Mr. Hill,

Attached is an electronic courtesy copy of a letter that I understand Purdue's local litigation counsel sent to the Cou
on Friday regarding your matter.

Regards,

Gerry McCarthy

**Gerard McCarthy**

**Davis Polk & Wardwell** LLP

450 Lexington Avenue | New York, NY 10017

+1 212 450 4696 tel | +1 631 514 5185 mobile

gerard.mccarthy@davispolk.com

Exhibit 1C -





1 message

**McCarthy, Gerard** <gerard.mccarthy@davispolk.com>    **EXHIBIT 1C Pg 2**    Fri, Dec 18, 2020 at 3:01 PM
To: Fred Hill <fredhill70@gmail.com>
Cc: Matthews, Stephen C. <stephen.matthews@dlapiper.com>, Benedict, Kathryn S. <kathryn.benedict@davispolk.com>

Dear Mr. Hill,

Please be advised that, in light of the Court's dismissal without prejudice and subject to reinstatement by
formal motion if the bankruptcy proceedings do not dispose of the issues between the parties, Purdue
Pharma will not be taking further action with respect to this matter.  Should you have any questions about
the bankruptcy process more generally, I encourage you—as I have in the past—to reach out to Sara Brauner
or Arik Preis at Akin Gump, which represents the Official Committee of Unsecured Creditors in the Purdue
Pharma bankruptcy.  They should be able to explain to you how the process works if you have questions.

Regards,

Gerry

**Gerard McCarthy**

**Davis Polk & Wardwell** LLP

450 Lexington Avenue  |  New York, NY 10017

+1 212 450 4696 tel  |  +1 631 514 5185 mobile

gerard.mccarthy@davispolk.com

Exhibit 1D -



**EXHIBIT 1D**

RE: The Purdue Frederick Co. Inc. vs NJ Superior Court Case CAM-L-3693-19 Settlement ▶ Inbox

D    ↩ Dough...  8/1/2022

to me ▼

Thank you Mr. Hill.

On behalf of The Purdue Frederick Company, Inc., we are in receipt of your filing with the bankruptcy court. As you know from Debtor's counsel, we are not authorized to engage with you on the injunction. Nor are we authorized to make any settlement offer to you. We will await the outcome of the August 17 hearing before engaging with you further on this matter. Thank you.

John C. Dougherty

Mintz Levin

Exhibit 1E -



# Exhibit 17 - ASTERISK



Exhibit 1F -



# EXHIBIT 1F pg2

Fredrick Hill                                  2                              October 2, 2020

bankruptcy proceedings. The bankruptcy case is docketed as *In re Purdue Pharma L.P.*, No. 19-23649. A copy of Purdue Pharma L.P.'s bankruptcy petition is enclosed as **Exhibit A** for your reference.

In addition, on September 18, 2019, the Purdue Debtors commenced an adversary proceeding, No. 19-08289 (RDD), and filed a motion for an order pursuant to 11 U.S.C. § 105(a) and Rule 7065 of the Federal Rules of Bankruptcy Procedure to enjoin the commencement or continuation of litigation against the Purdue Debtors and certain related parties (the "**Motion**"). On November 6, 2020, the United States Bankruptcy Judge presiding over the Purdue Debtors' bankruptcy cases, Judge Robert D. Drain (the "**Court**"), issued an order pursuant to 11 U.S.C. § 105(a) enjoining commencement or continuation of litigation against any Purdue Debtor or Related Party, as defined therein, through April 8, 2020. The November 6, 2020 order prohibited and enjoined you from the continuation of the Hill Action against The Purdue Frederick Company Inc., The P.F. Laboratories Inc., Purdue Holdings L.P., Rosebay Medical Company L.P., The Beacon Company. PLP Associates Holdings L.P., Richard S. Sackler, Jonathan D. Sackler, Mortimer D.A. Sackler, Kathe A. Sackler, Ilene Sackler Lefcourt, David A. Sackler, Beverly Sackler, Theresa Sackler, the Estate of Dr. Richard Sackler, the Estate of Mortimer Sackler, and the Estate of Raymond Sackler, each of which is a Related Party within the meaning of the Court's order. On March 30, 2020, the Court extended its order, including as applicable to your continuation of the Hill Action against each relevant Related Party, through October 5, 2020. On October 1, 2020, the Court extended its order, including as applicable to your continuation of the Hill Action against each relevant Related Party, through March 1, 2021. The Thirteenth Amended Order is the currently operative order (the "**Order**"). The Order is enclosed as **Exhibit B** for your reference. You and the Hill Action are identified as subject to the Order at line 537 on page 146 of Appendix III to the Order.

The Requests for Default Judgment name as defendants Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company Inc., The P.F. Laboratories Inc., Purdue Holdings L.P., Rosebay Medical Company L.P., The Beacon Company, PLP Associates Holdings L.P., Richard S. Sackler, Jonathan D. Sackler, Mortimer D.A. Sackler, Kathe A. Sackler, Ilene Sackler Lefcourt, David A. Sackler, Beverly Sackler, Theresa Sackler, the Estate of Dr. Richard Sackler, the Estate of Mortimer Sackler, and the Estate of Raymond Sackler.

Purdue Pharma L.P. and Purdue Pharma Inc. are Purdue Debtors, and thus the filing of each of the Requests for Default Judgment against each of them violates the automatic stay. Section 362(a) of the Bankruptcy Code provides for an automatic stay of litigation against each of the Purdue Debtors as of their bankruptcy filings. The automatic stay prohibits the commencement of any new lawsuits against any of the Purdue Debtors. It also prohibits taking any actions to continue lawsuits against any of the Purdue Debtors, even if that suit was filed before the Purdue Debtors filed for bankruptcy. *See* 11 U.S.C. § 362. Any actions taken in violation of the automatic stay are null and void. Each of the Requests for Default Judgment is therefore void and of no legal effect as against Purdue Pharma L.P. and Purdue Pharma Inc.

In addition, the Requests for Default Judgment also name each of the Related Parties identified in the Hill Action (The Purdue Frederick Company Inc., The P.F. Laboratories Inc.,

Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP, and SVC Pharma Inc.

Page 21
CAM-L-3693-19

Certification to Reinstate

# EXHIBIT 1F pg3

19-08289-shl    Doc 466-9    Filed 03/06/24    Entered 03/06/24 23:42:46    Exhibit 9
Pg 27 of 36

Fredrick Hill                            3                        October 2, 2020

Purdue Holdings L.P., Rosebay Medical Company L.P., The Beacon Company, PLP Associates Holdings L.P., Richard S. Sackler, Jonathan D. Sackler, Mortimer D.A. Sackler, Kathe A. Sackler, Ilene Sackler Lefcourt, David A. Sackler, Beverly Sackler, Theresa Sackler, the Estate of Dr. Richard Sackler, the Estate of Mortimer Sackler, and the Estate of Raymond Sackler). The filing of each of the Requests for Default Judgment against each of such Related Parties violates the terms of the Order.

You can remedy your violations of the automatic stay and of the Order by withdrawing both of your Requests for Default Judgment within five days of the date of this letter. If you do not remedy these violations of the automatic stay and of the Order, the Purdue Debtors reserve all rights to seek remedies for these violations. Please also note that if you take any further actions to prosecute the Hill Action, those actions would constitute new and independent violations of the automatic stay (with respect to Purdue Pharma L.P. and Purdue Pharma Inc.) and of the Order (with respect to The Purdue Frederick Company Inc., The P.F. Laboratories Inc., Purdue Holdings L.P., Rosebay Medical Company L.P., The Beacon Company, PLP Associates Holdings L.P., Richard S. Sackler, Jonathan D. Sackler, Mortimer D.A. Sackler, Kathe A. Sackler, Ilene Sackler Lefcourt, David A. Sackler, Beverly Sackler, Theresa Sackler, the Estate of Dr. Richard Sackler, the Estate of Mortimer Sackler, and the Estate of Raymond Sackler). The Purdue Debtors also reserve all rights to seek remedies for any such future violations of the automatic stay or of the Order.

For additional information, please review the enclosed Exhibits.

For up-to-date information about the bankruptcy proceedings and for free access to all papers filed in the bankruptcy proceedings, please see the website of Prime Clerk LLC at https://restructuring.primeclerk.com/purduepharma/.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

/s/ Gerard X. McCarthy

Gerard X. McCarthy

Enclosures

Exhibit 1G -

**EXHIBIT 1G**

| | |
|---|---|
| TRUST UNDER AGREEMENT DATED THE 13TH DAY OF MARCH 2009 | SACKLER AND ISSUE OF RICHARD S. SACKLER |
| TRUST UNDER AGREEMENT MADE THE 11TH DAT OF MAY 2005 | TRUST UNDER DECLARATION OF TRUST DATED DECEMBER 17M 1991 F/B/O JONATHAN D. SACKLER AND ISSUE OF JONATHAN D. SACKLER |
| TRUST UNDER DECLARATION OF TRUST DATED AUGUST 23, 1988 F/B/O JONATHAN D. SACKLER AND ISSUE OF JONATHAN D. SACKLER | TRUST UNDER DECLARATION OF TRUST NO. 1 DATED NOVEMBER 25, 1996 |
| TRUST UNDER DECLARATION OF TRUST DATED AUGUST 23, 1988 F/B/O RICHARD S. SACKLER AND ISSUE OF RICHARD S. SACKLER | TRUST UNDER DECLARATION OF TRUST NO. 2 DATED NOVEMBER 25, 1996 |
| TRUST UNDER DECLARATION OF TRUST DATED DECEMBER 17, 1991 F/B/O RICHARD S. | VARUS TRUST |
| | VERWALTUNGSGESELLSCHAFT MBH |
| | XPC TRUST |

### Current Directors and Officers

| | |
|---|---|
| BRIANNE WEINGARTEN | MARC L. KESSELMAN |
| CRAIG LANDAU, M.D. | MARGARET FELTZ |
| DONOGH MCGUIRE | MICHAEL RONNING |
| DR. SAJJAN DANIEL | MONICA KWARCINSKI |
| EDWARD BORKOWSKI | PETER BOER |
| F. MARK GERACI | RICHARD W. SILBERT |
| HUSSEIN GINAIMEH | ROXANA ALEALI |
| JOSEPH NORTHINGTON | SAILAJA BHASKAR, PH.D. |
| JULIE DUCHARME | SARAH ROBERTSON |
| KAREN LAUREL | |

### Former Directors and Officers

| | |
|---|---|
| AARON GRAHAM | JAMES DOLAN |
| ALAN BUTCHER | JAMES DOYLE |
| ANTHONY C. SANTOPOLO, M.D. | JEAN-JACQUES CHARBON |
| BENJAMIN OSHLACK | JOHN H. STEWART |
| BERT WEINSTEIN | JONATHAN G. WHITE |
| BRIANNE WEINGARTEN | JUDY LEWENT |
| CARL GRAF | KAREN LAUREL |
| CAROLINE CHOMIAK | KATHLEEN M. SCHADY |
| CHRISTIAN MAZZI | LARRY A. PICKETT, JR. |
| CRAIG LANDAU, M.D. | LOUIS J. DEBONE |
| DANIELLE NELSON | MAGGIE FELTZ |
| DAVID E. LONG | MAHMOUD MAHMOUDIAN |
| DAVID LONG | MARC KESSELMAN |
| DAVID S. FOGEL | MARK ALFONSO |
| DAVID VOLOSIN | MARK CHASIN |
| DENNIS A. MERLO | MARK FLETCHER |
| DON KYLE | MARK TIMNEY |
| ECKHARD MUHLHAUSER | MARTIN GREENE |
| EDWARD ALBRIGHT | MARY E. OGLE |
| EDWARD MURRAY | MICHAEL COLLINS |
| F. MARK GERACI | MICHAEL FRIEDMAN |
| FRED SCHAEFER | MONICA KWARCINSKI, PH.D. |
| FREDERICK A. SEXTON | PAUL D. GOLDENHEIM, M.D. |
| GARY STILES, M.D. | PETER BOER |
| GLENN VAN BUSKIRK | PHILIP J. PALERMO, PH.D. |
| HANS PETER KIRCHGAESSNER | RANDY SHAMBLEN |
| HOLBROOK BUGBEE | RAUL DAMAS |
| HOWARD R. UDELL | RICH FANELLI |

4

| | |
|---|---|
| RICHARD W. SILBERT | SAEED MOTAHARI |
| ROBERT F. KAIKO | SUSIE ROBINSON |
| ROBERT J. KUPPER | TERRENCE RONAN |
| ROBERT REDER | THOMAS L. ANDERSON |
| ROBERT SHAPIRO | TODD BAUMGARTNER, M.D. |
| ROBERT THEBEAU | VINCENT F. MANCINELLI II |
| ROBIN ABRAMS | WILLIAM F. HERLIHY |
| ROGER W. CROSWELL, PH.D. | WILLIAM LOOMIS |
| RONALD BURCH | WILLIAM MALLIN |
| RUSS GASDIA | |

### Banks



## Exhibit 2 -  Purdue corporate predecessor company NY ID #30111 merger history



MAY-07-2004  11:08        STUART D. BAKER N.Y.                212 489 7130    P.02/04

F040507000 846

CSC 45 DRAW DOWN

**CERTIFICATE OF MERGER**

OF

**HYPEROL SALES CORPORATION,
HOSPITAL PROMOTION SERVICE, INC.,
SENOKOT PHARMACEUTICAL PRODUCTS CORP.,
THE G.F. HARVEY COMPANY, INC.,
PURDUE BIOLOGICS, INC. AND
THE PURDUE FREDERICK COMPANY**

INTO

**PHARMACEUTICAL RESEARCH ASSOCIATES, INC.**

_____

**UNDER SECTION 905 OF THE BUSINESS CORPORATION LAW**

_____

The undersigned, Pharmaceutical Research Associates, Inc., a New York

corporation and the surviving corporation pursuant to Section 905 of the Business Corporation

Law of the State of New York, DOES HEREBY CERTIFY:

FIRST:  The names of the corporations to be merged are (i) Hyperol Sales

Corporation, a New York corporation ("HSC"), (ii) Hospital Promotion Service, Inc., a New

York corporation ("HPS"), (iii) Senokot Pharmaceutical Products Corp., a New York corporation

("SPC"), (iv) The G.F Harvey Company, Inc , a New York corporation ("GFH"), and the name

under which GFH was formed is Putnam Hancock Corporation (v) Purdue Biologics, Inc., a

Delaware corporation ("PB"), and the name under which PB was formed is Immuno-Diagnostics,

Inc., and (vi) The Purdue Frederick Company, a New York corporation ("PF"), and the name of

the surviving corporation is Pharmaceutical Research Associates, Inc., a New York corporation

(the "Surviving Corporation").

SECOND:  The number of outstanding shares of HSC is 255 shares of common

stock, without par value, all of which are owned by the Surviving Corporation.

NY2 - 399971.02

The number of outstanding shares of HPS is 10 shares of common stock, without par value, all of which are owned by the Surviving Corporation.

The number of outstanding shares of SPC is 10 shares of common stock, without par value, all of which are owned by the Surviving Corporation.

The number of outstanding shares of GFH is 1,000 shares of common stock, with $100.00 par value, all of which are owned by the Surviving Corporation.

The number of outstanding shares of PB is 100 shares of common stock, with $1.00 par value, all of which are owned by the Surviving Corporation.

The number of outstanding shares of PF is 1,800 shares of common stock, with $100.00 par value, all of which are owned by the Surviving Corporation.

THIRD: Effective upon the filing of a Certificate of Merger merging HSC, HPS, SPC, GFH, PB and PF into the Surviving Corporation by the Department of State of the State of New York and, with respect to PB, compliance with the filing requirements of the State of Delaware, (i) the separate existence of HSC, HPS, SPC, GFH, PB and PF shall cease and the Surviving Corporation shall continue its existence as the surviving corporation, and (ii) the issued shares of HSC, HPS, SPC, GFH, PB and PF shall be cancelled and retired.

FOURTH: The effective date of the merger of HSC, HPS, SPC, GFH, PB, and PF into the Surviving Corporation shall be the date of filing of this Certificate of Merger by the Department of State of the State of New York.

FIFTH: The date when the Certificate of Incorporation of HSC was filed by the Department of State of the State of New York was April 3, 1922. The date when the Certificate of Incorporation of HPS was filed by the Department of State of the State of New York was December 17, 1951. The date when the Certificate of Incorporation of SPC was filed by the



NY1 - 593971 v1

MAY-07-2004  11:08        STUART D. BAKER N.Y.                212 489 7130    P.04/04

Department of State of the State of New York was March 24, 1955. The date when the

Certificate of Incorporation of GFH was filed by the Department of State of the State of New

York was April 23, 1958. The date when the Certificate of Incorporation of PB was filed with

the Secretary of State of the State of Delaware was July 23, 1980, and no Application for

Authority in the State of New York on behalf of PB to transact business as a foreign corporation

in the State of New York was filed by the Department of State of the State of New York. The

date when the Certificate of Incorporation of PF was filed by the Department of State of the State

of New York was June 29, 1911. The date when the Certificate of Incorporation of the

Surviving Corporation was filed by the Department of State of the State of New York was

June 25, 1945.

SIXTH: The Board of Directors of the Surviving Corporation has adopted a Plan

of Merger setting forth the terms and conditions of merging HSC, HPS, SPC, GFH, PB and PF

into the Surviving Corporation. The merger of PB into the Surviving Corporation has been

authorized under the laws of the jurisdiction of incorporation of PB.

IN WITNESS WHEREOF, the undersigned has subscribed this Certificate of

Merger on the 27 day of April, 2004, and hereby affirms the contents as true under the

penalties of perjury.

PHARMACEUTICAL RESEARCH
ASSOCIATES INC.

By _____
Stuart D. Baker
Vice President

3

NY2 - 383971.01



May 4 1966

Certificate of Merger

of

PHYSICIANS PRODUCTS COMPANY, INC., (a Delaware
corporation)

INTO

THE PURDUE FREDERICK COMPANY, (a New York
corporation)

(under Section 904 of the Business Corporation Law)

The undersigned, RAYMOND R. SACKLER and MORTIMER D. SACKLER, being, respectively, the President and Secretary of The Purdue Frederick Company, a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York and being also, respectively, the President and Secretary of Physicians Products Company, Inc., a foreign corporation duly organized and existing under and by virtue of the laws of the State of Delaware, do hereby certify and set forth:

1.  The Purdue Frederick Company, a corporation of the State of New York, owns all of the outstanding shares of the common stock of Physicians Products Company, Inc., a corporation of the State of Delaware, a subsidiary corporation.

2.  The name of the surviving corporation is The Purdue Frederick Company.

3.  The designation and number of outstanding shares of each class of Physicians Products Company, Inc. and the number of such shares of each class owned by The Purdue Frederick Company is as follows:

| Designation of Outstanding Shares | Number of Outstanding Shares | Number of Outstanding Shares owned by Surviving Corporation |
|---|---|---|
| Common | 2,000 | 2,000; |

4.(a) The certificate of incorporation of The Purdue Frederick Company was filed in the Department of State of the State of New York on the 29th day of June, 1911.

(b) Physicians Products Company, Inc. was incorporated under the laws of the State of Delaware on the 19th day of October, 1961 under the name of "Fifty Beta Corporation". The name was changed to Physicians Products Company, Inc. by Certificate of Amendment on December 1, 1961. That this corporation has filed no application for authority to do business in the State of New York.

(c) The laws of the State of Delaware, the State of the subsidiary corporation, permit this type of merger. Physicians Products Company, Inc. has complied with the applicable provisions of the laws of the State of Delaware under which it is incorporated.

5. The effective date of the merger of The Purdue Frederick Company and Physicians Products Company, Inc. shall be the filing date of this certificate in the office of the Secretary of State

6. The merger of The Purdue Frederick Company and Physicians Products Company, Inc. into The Purdue Frederick Company was authorized by the unanimous vote of the respective Boards of Directors of The Purdue Frederick Company and Physicians Products Company, Inc.

IN WITNESS WHEREOF, the undersigned have executed and

- 2 -



signed this certificate this *11* day of April, 1966.

THE PURDUE FREDERICK COMPANY

By _Raymond R. Sackler_
President

_Mortimer D. Sackler_
Secretary

PHYSICIANS PRODUCTS COMPANY, INC.

By _Raymond R. Sackler_
President

_Mortimer D. Sackler_
Secretary

3

STATE OF NEW YORK )
)SS. :
COUNTY OF NEW YORK )

     RAYMOND R. SACKLER, being duly sworn, says that he is the President of The Purdue Frederick Company, one of the corporations named in the within certificate; that he has read the foregoing certificate and knows the contents thereof; and that the same is true to his own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true.

     Deponent further says that the reason this verification is made by deponent and not by The Purdue Frederick Company is because the said The Purdue Frederick Company is a domestic corporation and deponent is an officer thereof, to wit, its President.

*Raymond R Sackler*

Sworn to before me this

     day of April, 1966.

SYLVIE C. WEISS
NOTARY PUBLIC, State of New York
No. 30-4809575
Qualified in Nassau County
Certificate filed in New York County
Term Expires March 30, 196 7



New York State Department of State

Division of Corporations, State Records and Uniform Commercial Code

## COPY REQUEST/CERTIFICATE OF STATUS RECEIPT

FREDRICK HILL
25 STEPHEN DRIVE
GLENDORA NJ 08029

**DATE:**          07/30/2024          TRANSACTION NUMBER:          202407310003134

**ENTITY INFORMATION:**

ENTITY NAME:          THE PURDUE FREDERICK COMPANY
DOS ID:          30111
DATE OF INITIAL DOS FILING:          06/29/1911

| REQUESTED SERVICES: | NUMBER REQUESTED: | FEE: |
|---|---|---|
| UNCERTIFIED COPY($5.00) | 1 | $5.00 |
| CERTIFIED COPY($10.00) | 0 | $0.00 |
| CERTIFICATE OF STATUS - SHORT FORM($25.00) | | $0.00 |
| CERTIFICATE OF STATUS - LONG FORM($25.00) | | $0.00 |
| EXPEDITED HANDLING | | $0.00 |

| TOTAL PAYMENTS RECEIVED: | $5.00 |
|---|---|
| CASH: | $0.00 |
| CHECK/MONEY ORDER: | $0.00 |
| CREDIT CARD: | $5.00 |
| DRAWDOWN ACCOUNT: | $0.00 |
| REFUND DUE: | $0.00 |

| REQUESTED COPY | FILE DATE | FILE NUMBER |
|---|---|---|
| CERTIFICATE OF MERGER | 05/04/1966 | 557322-5 |

DOS-1025 (04/2007)



MAY 10TH

2004 Page 1

- 040510000884

CSC 45
DRAW DOWN

CERTIFICATE OF MERGER

OF

PHARMACUTICAL RESEARCH
ASSOCIATES, INC.

INTO

THE P.F. LABORATORIES, INC.

Section 907 of the Business Corporation Law

RECEIVED
2004 MAY 10 PH12:12

2004 MAY 10 PH 2:16

FILED

Filer:   Chadbourne & Parke LLP
         30 Rockefeller Plaza
         New York, NY  10112
Cust. Ref#622349RMD

DRAWDOWN

LCS
STATE OF NEW YORK
DEPARTMENT OF STATE
FILED MAY 1 0 2004
TAX $ ___
BY: ___ Que ___

5

040510000933

filed 5-10-2004

FROM CHADBOURNE & PARKE    (FRI) 5 6'44 11.13/ST 11 12/NO 4862440100 P 17

04051000884

CSC 45
DRAW DOWN

## CERTIFICATE OF MERGER

### OF

### PHARMACEUTICAL RESEARCH ASSOCIATES, INC.

### INTO

### THE P.F. LABORATORIES, INC.

UNDER SECTION 907 OF THE BUSINESS CORPORATION LAW

The undersigned, The P.F. Laboratories, Inc., a New Jersey corporation and the surviving corporation pursuant to Section 907 of the Business Corporation Law of the State of New York, DOES HEREBY CERTIFY:

FIRST: The names of the corporations to be merged are (i) Pharmaceutical Research Associates, Inc., a New York corporation ("PRA"), and (ii) The P.F. Laboratories, Inc., a New Jersey corporation (the "Surviving Corporation").

SECOND: The number of outstanding shares of PRA is 80 shares of common stock, without par value. The number of outstanding shares of the Surviving Corporation is 1,800 shares of common stock, with $100.00 par value, all of which are owned by PRA.

THIRD: Effective upon the filing of the Certificate of Merger merging PRA into the Surviving Corporation by the Department of State of the State of New York and compliance with the filing requirements of the State of New Jersey, (i) the separate existence of PRA shall cease and the Surviving Corporation shall continue its existence as the surviving corporation, and (ii) the issued shares of the Surviving Corporation shall be cancelled and retired and each of the issued shares of PRA issued and outstanding immediately prior to the merger shall be converted

NY2 · 364013 01

MAY. 7, 2004 5:41PM

into and become one newly issued, fully paid and non-assessable share of the common shares of the Surviving Corporation.

FOURTH: Effective upon the merger, the Surviving Corporation shall issue pro rata to the shareholders of PRA on surrender of any certificates therefor, shares of the Surviving Corporation.

FIFTH: The effective date of the merger of PRA into the Surviving Corporation shall be the date of filing of this Certificate of Merger by the Department of State of the State of New York and compliance with the filing requirements of the State of New Jersey.

SIXTH: This merger is permitted and in compliance with the laws of the State of New Jersey, the jurisdiction of the Surviving Corporation.

SEVENTH: This merger has been approved by the shareholders of PRA in accordance with paragraph (a) of Section 903 of the Business Corporation Law of the State of New York.

EIGHTH: The Surviving Corporation was incorporated in the State of New Jersey on February 18, 1976, and no Application for Authority to do business in the State of New York was filed by the Department of State on behalf of the Surviving Corporation, and the Surviving Corporation will not do business in the State of New York until an application for such authority shall have been filed by the Department of State of New York.

NINTH: The date when the Certificate of Incorporation of PRA was filed by the Department of State of the State of New York was June 25, 1945. The date when the Certificate of Incorporation of the Surviving Corporation was filed with the Secretary of State of the State of New Jersey was February 18, 1976.

2

NY1-234093 01

MAY. / 2004  5.6'44

FROM CHADBOURNE & PARKE    •    (FRI) 5  6'44 11:19/ST 11·12/NO 4862440103 P 19

TENTH:  The Surviving Corporation hereby agrees that it may be served with process in the State of New York in any action or special proceeding for the enforcement of any liability or obligation of PRA or of the Surviving Corporation, previously amenable to suit in the State of New York, and for the enforcement, as provided in the Business Corporation Law of the State of New York, of the right of any shareholders of PRA to receive payment for their shares against the Surviving Corporation.

ELEVENTH:  The Surviving Corporation, subject to the provisions of Section 623 of the Business Corporation Law of the State of New York, will promptly pay to the shareholders of PRA the amount, if any, to which they shall be entitled under the provisions of the Business Corporation Law of the State of New York relating to the right of shareholders to receive payment for their shares,

TWELFTH:  The Surviving Corporation hereby designates the Secretary of State of the State of New York as its agent upon whom process against it may be served in the manner set forth in paragraph (b) of Section 306 of the Business Corporation Law of the State of New York, in any action or special proceeding, and the Secretary of State of the State of New York shall mail a copy of any process against the Surviving Corporation served upon him addressed to the Surviving Corporation as follows: Chadbourne & Parke LLP, Room 3248, 30 Rockefeller Plaza, New York, New York 10112.

THIRTEENTH:  The Surviving Corporation hereby certifies that all fees and taxes (including penalties and interest) administered by the Department of Taxation and Finance of the State of New York which are now due and payable by PRA, have been paid and that a cessation franchise tax report through the anticipated date of the merger has been filed by PRA,



3

NY2 - 194092 02



FROM CHADBOURNE & PARKE                (FRI) 5. 6'44 11:19/ST 11:12/NO 4862440108 P 20

and that the Surviving Corporation will, within 30 days after the filing of this Certificate of Merger, file a final cessation franchise tax report and promptly pay to the Department of Taxation and Finance of the State of New York all fees and taxes (including penalties and interest), if any, due to the Department of Taxation and Finance of the State of New York by PRA.

IN WITNESS WHEREOF, the undersigned has subscribed this Certificate of Merger on the 27 day of April, 2004, and hereby affirms the contents are true under the penalties of perjury.

THE P.F. LABORATORIES, INC.

By _____
Stuart D. Baker
Vice President

NY2 - 294092 02



New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
**COPY REQUEST/CERTIFICATE OF STATUS RECEIPT**

FREDRICK HILL
25 STEPHEN DRIVE
GLENDORA NJ 08029

**DATE:**        07/30/2024        TRANSACTION NUMBER:        202407310003208

**ENTITY INFORMATION:**

**ENTITY NAME:**        THE P.F. LABORATORIES, INC.
**DOS ID:**        3051405
**DATE OF INITIAL DOS FILING:**    05/10/2004

| REQUESTED SERVICES: | NUMBER REQUESTED: | FEE: |
|---|---|---|
| UNCERTIFIED COPY($5.00) | 1 | $5.00 |
| CERTIFIED COPY($10.00) | 0 | $0.00 |
| CERTIFICATE OF STATUS - SHORT FORM($25.00) | | $0.00 |
| CERTIFICATE OF STATUS - LONG FORM($25.00) | | $0.00 |
| EXPEDITED HANDLING | | $0.00 |

| TOTAL PAYMENTS RECEIVED: | $5.00 |
|---|---|
| CASH: | $0.00 |
| CHECK/MONEY ORDER: | $0.00 |
| CREDIT CARD: | $5.00 |
| DRAWDOWN ACCOUNT: | $0.00 |
| REFUND DUE: | $0.00 |

| REQUESTED COPY | FILE DATE | FILE NUMBER |
|---|---|---|
| CERTIFICATE OF MERGER | 05/10/2004 | 040510000884 |

DOS-1025 (04/2007)



EXHIBIT A *CERTIFICATE of DIVISION*
*9-21-2004*

*Page 1*

### PLAN OF DIVISION

#### OF

### THE P.F. LABORATORIES, INC.

---

#### UNDER SECTION 1952 OF THE BUSINESS CORPORATION LAW

---

This Plan of Division (the "Plan"), dated September 20, 2004, is adopted by The P.F. Laboratories, Inc., a Pennsylvania corporation and a New Jersey corporation (the "Dividing Corporation") as follows:

FIRST:  The Dividing Corporation shall be divided into two corporations. The Dividing Corporation shall survive the division.  The other corporation shall be named The Purdue Frederick Company, a Pennsylvania corporation (the "New Corporation").  The Dividing Corporation and the New Corporation are sometimes hereinafter referred to as the "Resulting Corporations".  The terms and conditions of the division, the mode of carrying the same into effect, the manner of dividing the assets and liabilities of the Dividing Corporation between the New Corporation and the Dividing Corporation and all other provisions deemed desirable in connection therewith are set forth in this Plan of Division.

200409 6· 211

SECOND: The corporate existence, registered office in Pennsylvania, Articles of Incorporation and bylaws of the Dividing Corporation shall be unaffected by the division.

THIRD: The Articles of Incorporation of the New Corporation shall be as set forth in Schedule 1 as attached hereto and incorporated herein.

FOURTH: The directors and officers of the Dividing Corporation shall, on the Effective Date, continue to serve as directors and officers of the New Corporation until successors are elected and qualified.

FIFTH: The division shall not affect the issued or outstanding shares of capital stock of the Dividing Corporation and the number of authorized shares of the Dividing Corporation shall be unaffected by the division.

SIXTH: On the Effective Date, each issued and outstanding share of capital stock of the Dividing Corporation shall be divided and converted into one share of capital stock of the Dividing Corporation and one share of the New Corporation.

SEVENTH: On the Effective Date or as promptly thereafter as possible, the Dividing Corporation shall issue to its shareholders certificates of capital stock of the Dividing Corporation and the New Corporation so that each shareholder holds the number of shares into which the shares of the Dividing Corporation shall have been divided and converted as set forth above.

2

NY2 - 461947.01

2004095- 212

EIGHTH:  All shares of capital stock of the Dividing Corporation and the New Corporation so issued shall be deemed to be duly and validly issued, fully paid and nonassessable.

NINTH:  On the Effective Date, the stock transfer books of the Dividing Corporation shall be deemed to be closed and no transfer of shares of the capital stock of the Dividing Corporation shall thereafter be made, effected or consummated until completion of the division.

TENTH:  At the Effective Date, (a) the property, real, personal and mixed, and franchises of the Dividing Corporation and all debts due on whatever account to it or owed by it, including subscriptions for shares and any choses and action belonging to it, shall be deemed without further action to be transferred to and vested in the Resulting Corporations as follows: (i) the property, real, personal and mixed, and franchises of The Purdue Frederick Company, a New York corporation ("PF"), that was merged into Pharmaceutical Research Associates, Inc., a New York corporation ("PRA"), effective May 7, 2004 (the "Merger Date"), presently held by the Dividing Corporation pursuant to the merger of PRA into the Dividing Corporation effective May 10, 2004, and all debts due on whatever account to PF or owed by PF existing at the Merger Date, including subscriptions for shares and any choses in action belonging to PF existing at the Merger Date, shall be deemed without further action to be transferred to, vested in and assessed by the New Corporation as reflected substantially in the Balance Sheet of PF dated as of

3

200409 S- 213

April 30, 2004 attached hereto as Schedule 2, and (ii) all the remaining property, real, personal and mixed, and franchises of the Dividing Corporation and all remaining debts due on whatever account to it or owed by it, including subscriptions for shares and choses in action belonging to it, shall be deemed without further action to remain vested in the Dividing Corporation as reflected substantially in the Balance Sheet of the Dividing Corporation dated as of April 30, 2004 attached hereto as Schedule 3; (b) the title to and interest in any real estate vested by deed, lease or otherwise in the Dividing Corporation shall not revert or be impaired in any way by reason of the division; (c) the Resulting Corporations shall each thenceforth be responsible as separate and distinct corporations only for such liabilities and obligations as each corporation may undertake or incur in its own name and each of the Dividing Corporation and the New Corporation shall be jointly and severally liable for any and all obligations of the Dividing Corporation that have arisen or may arise from May 7, 2004 until and including the Effective Date; (d) any liens on the property of the Dividing Corporation shall not be impaired by the division; (e) any claim existing or action or proceeding pending by or against the Dividing Corporation as of the Effective Date, may be prosecuted to judgment as if the division had not taken place or the Resulting Corporations may be proceeded against or substituted in its place as joint and several obligors on such liability regardless of the foregoing provisions apportioning the liabilities of the Dividing Corporation.

4

NY2 - 401947.01

200409 6 - 214

ELEVENTH: Prior to the Effective Date, the Dividing Corporation shall take all such action that shall be necessary or appropriate in order to effectuate the division. In case at any time after the Effective Date of the division, the New Corporation shall determine that any further conveyance, assignment or other document, or any further action is necessary or desirable to vest in or confirm to the New Corporation full title to all the properties, assets, rights, privileges and franchises divided herein, the officers and directors of the Dividing Corporation, at the expense of the New Corporation, shall execute and deliver all such instruments and take all such actions as the New Corporation may determine to be necessary or desirable in order to accomplish the same, and otherwise to carry out the purposes of this Plan of Division.

TWELFTH: This Plan of Division may be terminated and the division abandoned at any time prior to the Effective Date, whether before or after the approval thereof by the shareholders of the Dividing Corporation. Any such termination shall be without liability on the part of Dividing Corporation, or of its directors, officers or shareholders in connection with this Plan of Division.

THIRTEENTH: The Effective Date shall be upon filing this Plan of Division with the Pennsylvania Department of State.

5

200409 6 · 215

IN WITNESS WHEREOF, the undersigned has subscribed this Plan of Division on the 20th day of September, 2004, and hereby affirms the contents are true under the penalties of perjury.

THE P.F. LABORATORIES, INC.

By _Stuart D. Baker_

Stuart D. Baker
Vice President

6

NY2 - 401947.01

2004087·1319

## The PF Laboratories, Inc. Balance Sheet (Detail - Assets)
## April 30, 2004

| | | | | |
|---|---|---|---|---|
| Total Assets | 112,331 | | Prepaid and other assets | 650 |
| Current Assets | 48,212 | | Prepaid Insurance | 130 |
| Cash and Cash Equivalents | 1,070 | | Prepaid Taxes | 84 |
| Chase Clearing | (1,146) | | Prepaid Other | 432 |
| Spec. P/R 1st Union | 4 | | Exchange Other | 4 |
| Cash 1st Union P/R | 11 | | Long Term Assets | 64,119 |
| Fleet P/R Account II | 5 | | Property and Equipments, Net | 61,044 |
| Employee P/R Exch. | (13) | | Land Imp. - Labor | 5 |
| Petty Cash Norwalk | 1 | | Buildings | 41 |
| Petty Cash Wilson | 1 | | Bldg Ren - Labor | 110 |
| PFL C/O Admin. Svcs | 41 | | Bldg Ren - Materials | 236 |
| Cash - Presentation | 2,168 | | LHI - Labor | 9,301 |
| Flex Reimb SPDG Acct | (2) | | LHI - Materials | 25,248 |
| Accounts Receivable | 36 | | M&E - Installation | 51,847 |
| Discount Reserve | 0 | | M&E - Materials | 5,943 |
| AR Trade | (2) | | M&E - Repl. Parts | 313 |
| AR Foreign | 37 | | M&E - Validation | 265 |
| AR Foreign (Dist) | 1 | | Furn. and Fixtures | 4,511 |
| Due from associated Companies | 36,464 | | PC Equipment | 890 |
| AR Intercompany | 21 | | Computer Equipment | 6,223 |
| Purdue Pharma L.P. | 2,013 | | Data Hand Equip | 11 |
| The Purdue Pharma Co | 16,841 | | R&D Equipment | 1 |
| Mundipharma LLC | 1 | | Computer Softw. Sys. | 3,172 |
| Purdue Wilson NC | 1,675 | | Human Capital Cost | 3,355 |
| Bard BioPharma LP | 2,848 | | New CIP - Labor | 6 |
| Rhodes Technologies | 40 | | Ren. CIP - Labor | 190 |
| Purdue Pharma P.R. | 1 | | Ren. CIP - Material | 884 |
| Purdue Products L.P. | 10,333 | | FAS 121 Reserve | (1,238) |
| Purdue Pharm Prod LP | 2,690 | | AD General | (2,985) |
| Other Receivables | 0 | | AD Building | (179) |
| Gelco Due To/From Am | 0 | | AD Leasehold Imp. | (6,819) |
| Inventories | 9,993 | | AD M&E | (32,819) |
| Inventory Suspense | 583 | | AD F&F | (1,684) |
| Finished Goods Inv. | 203 | | AD PC Equipment | (106) |
| Raw Materials Inv. | 10,923 | | AD Computer HW | (3,807) |
| Pkg. Materials Inv. | 2,989 | | AD Software System | (1,440) |
| Bulk Inventory | 3,954 | | AD Human Capital | (330) |
| Work in Process | 1,221 | | Intangibles | 710 |
| Sample Overhead | 2 | | Prepaid Union Pens. | 710 |
| Maintenance MRO Inv. | 1,554 | | Other Assets | 2,365 |
| MRO Contra Account | (1,554) | | Bid Deposit/Refunds | 77 |
| Inventory Adjustment | 0 | | Pension Asset L/T | 1,887 |
| Allow Inv. Valuation | (943) | | Employee Loans LT | 401 |
| Unsaleable Inventory | (8,939) | | | |

NY2 - 401947.01

200408 7 · 1320

## The PF Laboratories, Inc. (Co 109) - Balance Sheet (Detail - Liabilities)

| | | | |
|---|---|---|---|
| Total Liabilities & Equity | 112,331 | Due to associated Companies | 78,631 |
| Liabilities | 94,650 | Purdue Frederick Co. | 77,825 |
| Current Liabilities | 90,390 | PRA | 5 |
| Accounts Payable | 8,943 | Purdue Neuro Company | 0 |
| Goods/Invoice - Inv. | 2,752 | Purdue Pharma Tech | 173 |
| A/P - Presentation | 2,168 | Terramar Foundation | 1 |
| Accr. Freight | 24 | IAF Corporation | 628 |
| AP Accrued | 3,031 | Long Term Liabilities | 4,260 |
| AP Trade | 968 | Other | 4,260 |
| Accrued Expenses & Taxes | 2,816 | Accr. Union Pension | 1,277 |
| Term Insurance | 1 | Accrued Pension | 386 |
| Accr. Legal Fees | 8 | Accr. FAS 106 | 1,987 |
| State Income Tax WH | 0 | Accr. FAS 112 | 610 |
| State Disability WH | 0 | Equity and Retained Earnings | 17,682 |
| Garn or Assign WH | 1 | Equity | (2,723) |
| Union Dues WH | 0 | Capital Stock - Common | 10 |
| 401K WH | 18 | Capital Stock Common | 10 |
| 401K Loan Repayment | 5 | Minimum Pension Liability | (2,733) |
| Accr. Salaries | 353 | Pension Equity | (2,733) |
| Accr. Fringes | 721 | Retained Earnings | 20,494 |
| Accr. LTIP | 711 | Retained Earnings Previous | |
| Payroll Suspense | (2) | Year | 18,548 |
| Long Term Care With | 2 | Partnership Earnings | 18,548 |
| Accr. Annual Bonus | 1,213 | Partnership Earn Adj | (15,700) |
| Use Tax Payable | 145 | Corporations RE | 15,700 |
| Accr. Franchise Tax | (360) | Retained Earnings - Current | |
| Accr. Medicaid | (0) | Year | 1,856 |

NY2 - 401947.01

2004087-1318

## The Purdue Frederick Company Balance Sheet (Detail - Liabilities)

| | | | |
|---|---|---|---|
| Total Liabilities & Equity | 114,238 | LT Loans | 12,011 |
| Liabilities | 80,020 | Deferred Tax Liability - Long | |
| Current Liabilities | 59,654 | Term | 8,243 |
| Accounts Payable | 565 | Def. Tax Liab. L/T | 8,243 |
| Goods/Invoice - Inv. | 12 | Other | 112 |
| A/P - Presentation | 404 | Int Rate Swap L/T | 112 |
| Accr. Freight | 0 | Equity and Retained Earnings | 34,218 |
| AP Accrued G&A | 25 | Equity | 386 |
| AP Accrued S&P | 101 | Capital Stock - Common | 358 |
| AP Trade | 23 | Capital Stock Common | 195 |
| Accrued Expenses & Taxes | 6,523 | Capital Stock Pref. | 163 |
| Accr. Interest | 314 | Additional Paid In Capital | 28 |
| Accr. Accounting Fee | (25) | Capital Surplus | 28 |
| Accr. Legal Fees | 22 | Retained Earnings | 33,832 |
| Accr. Other | 3,789 | Retained Earnings Previous | |
| Accr. Salaries | 53 | Year | 36,943 |
| Payroll Suspense | (3) | Partnership Earnings | 36,943 |
| Use Tax Payable | 14 | Partnership Earn Adj | (34,573) |
| Accr. Franchise Tax | (841) | Corporations RE | 34,573 |
| Accr. Franch.Tax Pro | 1,193 | Retained Earnings - Current | |
| Accr. Fed Income Tax | 552 | Year | (3,111) |
| Accr. Medicaid | 374 | | |
| Accr. HMO Rebates | 1,163 | | |
| Accr. GPO Adm. Fees | (65) | | |
| Accr. Hospice Rebate | (36) | | |
| Accr. VCB Processing | 55 | | |
| Accr. Coupons | (34) | | |
| Current Portion of long term debt | 916 | | |
| S/T Term Loans | 916 | | |
| Due to associated Companies | 51,650 | | |
| Gray Pharmaceutical | 162 | | |
| Blair Labs Inc. | 2 | | |
| CT Avenue Realty | 865 | | |
| PRA Holdings | 4,909 | | |
| Purdue Pharma L.P. | 32,504 | | |
| The Purdue Pharma Co | 10,181 | | |
| Purdue Associates LP | 2,152 | | |
| Purdue Holdings L.P. | 9 | | |
| Sawwood Land Corp. | 64 | | |
| Terramar Foundation | 84 | | |
| IAF Corporation | 32 | | |
| SVC Pharma L.P. | 600 | | |
| Larre | 6 | | |
| Mundi AG | 0 | | |
| Mundi Int LTD | 73 | | |
| Norpharma | 6 | | |
| Long Term Liabilities | 20,366 | | |
| Notes Payable - Long Term | 12,011 | | |

12

NY2 - 401947.01

2004087·1317

## The Purdue Frederick Company Balance Sheet (Detail – Assets)
### April 30, 2004

| | | | |
|---|---|---|---|
| Total Assets | 114,238 | AR Other | 3,057 |
| Current Assets | 109,723 | AR Outside Processor | 1 |
| Cash and Cash Equivalents | 17,374 | Marketable Security | 28 |
| Cash Concentration | 16,134 | Inventories | 18 |
| Chase Clearing | (404) | Inventory Suspense | 34 |
| Cash Conc. Fleet | 13 | Finished Goods Inv. | 863 |
| Fleet P/R Account II | 5 | Sample Overhead | 0 |
| Fleet Bank Payroll | 61 | Inventory Adjustment | 0 |
| Petty Cash Norwalk | 3 | Allow Inv. Valuation | (16) |
| Petty Cash Manhattan | 2 | Allow for Obs. | (0) |
| Cash - Presentation | 404 | Unsaleable Inventory | (863) |
| Flex. Reimbursement | 460 | Prepaid and other assets | 36 |
| Insurance Clearing | 1,158 | Prepaid Insurance | 5 |
| Net Travel Clearing | 6 | Prepaid Taxes | 47 |
| Flex Reimb SPDG Acct | (466) | Exchange Other | (16) |
| Accounts Receivable | 1,498 | Deferred Taxes (S/T) | 2,310 |
| A/P Refund | 0 | Def. Tax Asset S/T | 2,310 |
| AR ABG | (0) | Long Term Assets | 4,515 |
| AR Trade (Dist) | 1,511 | Property and Equipments, Net | 174 |
| AR Foreign (Dist) | (13) | LHI - Materials | 5,514 |
| Due from associated Companies | 85,402 | M&E - Installation | 12,866 |
| AR Interco (Dist) | 43 | Furn. and Fixtures | 2,385 |
| AR Intercompany | 525 | Computer Equipment | 6,242 |
| The PF Laboratories | 77,825 | Computer Softw. Sys. | 344 |
| PRA | 58 | AD General | (123) |
| Hyperol | 38 | AD Leasehold Imp. | (5,507) |
| Hospital Promo Svcs. | 0 | AD M&E | (12,651) |
| GF Harvey | 81 | AD F&F | (2,312) |
| Immunio Diagnostic | 33 | AD Computer HW | (6,242) |
| Purdue Wilson NC | 36 | AD Software System | (344) |
| Bard BioPharma LP | 118 | Investments Long Term | 3,391 |
| Purdue Neuro Company | 2 | Invest -CT Ave Real. | 3,329 |
| Rhodes Technologies | 353 | Invest -Immunio Diag | 1 |
| Purdue Pharma P.R. | 2 | Invest - Gray | 2 |
| Norwell Land Company | 623 | Invest - PP Co. | 60 |
| Purdue Products L.P. | 380 | Intangibles | |
| Purdue Pharm Prod LP | 1,456 | Prepaid Union Pens. | |
| Purdue Holdings Inc | 0 | Other Assets | 951 |
| Purdue Land Inc. | 7 | Int Rate Swap L/T | 112 |
| Purdue Pharma Tech | 3,711 | Bid Deposit/Refunds | 52 |
| Stockholder Loans | 95 | CSV Officer Life | 2,339 |
| Acorn Foundation | 15 | Loan Officer Life | (1,552) |
| Mundi Australia | 3 | | |
| Other Receivables | 3,086 | | |

HY2 - 401947.01

2005011· 933

## The PF Laboratories, Inc. (Co 109) - Balance Sheet (Detail - Liabilities)

| | | | |
|---|---|---|---|
| Total Liabilities & Equity | 112,331 | Due to associated Companies | 78,631 |
| Liabilities | 94,650 | Purdue Frederick Co. | 77,825 |
| Current Liabilities | 90,390 | PRA | 5 |
| Accounts Payable | 8,943 | Purdue Neuro Company | 0 |
| Goods/Invoice - Inv. | 2,752 | Purdue Pharma Tech | 173 |
| A/P - Presentation | 2,168 | Terramar Foundation | 1 |
| Accr. Freight | 24 | IAF Corporation | 628 |
| AP Accrued | 3,031 | Long Term Liabilities | 4,260 |
| AP Trade | 968 | Other | 4,260 |
| Accrued Expenses & Taxes | 2,816 | Accr. Union Pension | 1,277 |
| Term Insurance | 1 | Accrued Pension | 386 |
| Accr. Legal Fees | 8 | Accr. FAS 106 | 1,987 |
| State Income Tax WH | 0 | Accr. FAS 112 | 610 |
| State Disability WH | 0 | Equity and Retained Earnings | 17,682 |
| Garn or Assign WH | 1 | Equity | (2,723) |
| Union Dues WH | 0 | Capital Stock - Common | 10 |
| 401K WH | 18 | Capital Stock Common | 10 |
| 401K Loan Repayment | 5 | Minimum Pension Liability | (2,733) |
| Accr. Salaries | 353 | Pension Equity | (2,733) |
| Accr. Fringes | 721 | Retained Earnings | 20,404 |
| Accr. LTIP | 711 | Retained Earnings Previous | |
| Payroll Suspense | (2) | Year | 18,548 |
| Long Term Care With | 2 | Partnership Earnings | 18,548 |
| Accr. Annual Bonus | 1,213 | Partnership Earn Adj | (15,700) |
| Use Tax Payable | 145 | Corporations RE | 15,700 |
| Accr. Franchise Tax | (360) | Retained Earnings - Current | |
| Accr. Medicaid | (0) | Year | 1,856 |

NY2 - 408542.01

2005011- 932

SCHEDULE 2

## The PF Laboratories, Inc. Balance Sheet (Detail – Assets)
### April 30, 2004

| | | | |
|---|---|---|---|
| Total Assets | 112,331 | Prepaid and other assets | 650 |
| Current Assets | 48,212 | Prepaid Insurance | 130 |
| Cash and Cash Equivalents | 1,070 | Prepaid Taxes | 84 |
| Chase Clearing | (1,146) | Prepaid Other | 432 |
| Spec. P/R 1st Union | 4 | Exchange Other | 4 |
| Cash 1st Union P/R | 11 | Long Term Assets | 64,319 |
| Fleet P/R Account II | 5 | Property and Equipments, Net | 61,044 |
| Employee P/R Exch. | (13) | Land Imp. - Labor | 5 |
| Petty Cash Norwalk | 1 | Buildings | 41 |
| Petty Cash Wilson | 1 | Bldg Ren - Labor | 110 |
| PFL C/O Admin. Svcs | 41 | Bldg Ren - Materials | 236 |
| Cash - Presentation | 2,168 | LHI - Labor | 9,301 |
| Flex Reimb SPDG Acct | (2) | LHI - Materials | 25,248 |
| Accounts Receivable | 36 | M&E - Installation | 51,847 |
| Discount Reserve | 0 | M&E - Materials | 5,943 |
| AR Trade | (2) | M&E - Repl. Parts | 313 |
| AR Foreign | 37 | M&E - Validation | 265 |
| AR Foreign (Dist) | 1 | Furn. and Fixtures | 4,511 |
| Due from associated Companies | 36,464 | PC Equipment | 890 |
| AR Intercompany | 21 | Computer Equipment | 6,223 |
| Purdue Pharma L.P. | 2,013 | Data Hand Equip | 11 |
| The Purdue Pharma Co | 16,841 | R&D Equipment | 1 |
| Mundipharma LLC | 1 | Computer Softw. Sys. | 3,172 |
| Purdue Wilson NC | 1,675 | Human Capital Cost | 3,355 |
| Bard BioPharma LP | 2,848 | New CIP - Labor | 6 |
| Rhodes Technologies | 40 | Ren. CIP - Labor | 190 |
| Purdue Pharma P.R. | 1 | Ren. CIP - Material | 884 |
| Purdue Products L.P. | 10,333 | FAS 121 Reserve | (1,338) |
| Purdue Pharm Prod LP | 2,690 | AD General | (2,985) |
| Other Receivables | 0 | AD Building | (179) |
| Gelco Due To/From Am | 0 | AD Leasehold Imp. | (6,819) |
| Inventories | 9,993 | AD M&E | (32,819) |
| Inventory Suspense | 583 | AD F&F | (1,684) |
| Finished Goods Inv. | 203 | AD PC Equipment | (106) |
| Raw Materials Inv. | 10,923 | AD Computer HW | (3,807) |
| Pkg. Materials Inv. | 2,989 | AD Software System | (1,440) |
| Bulk Inventory | 3,954 | AD Human Capital | (330) |
| Work in Process | 1,221 | Intangibles | 710 |
| Sample Overhead | 2 | Prepaid Union Pens. | 710 |
| Maintenance MRO Inv. | 1,554 | Other Assets | 2,365 |
| MRO Contra Account | (1,554) | Bid Deposit/Refunds | 77 |
| Inventory Adjustment | 0 | Pension Asset L/T | 1,887 |
| Allow Inv. Valuation | (943) | Employee Loans LT | 401 |
| Unsaleable Inventory | (8,939) | | |

NY2 - 408542.01



040923000699

CERTIFICATE OF MERGER

OF

THE PURDUE FREDERICK COMPANY

INTO

THE PURDUE FREDERICK COMPANY INC.

Section 904  of the Business Corporation Law

CSC 45

Filer:  Chadbourne & Parke LLP
        30 Rockefeller Plaza
        New York, NY  10112
Cust. Ref#894440AJC

DRAWDOWN

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED  SEP. 2 3 2004      SEP 23 2004
TAX $
BY:

FILED
2004 SEP 23  PM 3:13

040923000735



(rel) 9-23-2004 3:13 PM

F040923000699

699

CERTIFICATE OF MERGER

OF

CSC 45    THE PURDUE FREDERICK COMPANY   PA   Enty # 0003249865 Staked 9-21-2004 103 PM

INTO

THE PURDUE FREDERICK COMPANY INC. NY Enty # 3105222 Staked 9-22-2004

UNDER SECTION 904 OF THE BUSINESS CORPORATION LAW

The undersigned, The Purdue Frederick Company Inc., a New York corporation and the surviving corporation and The Purdue Frederick Company, a Pennsylvania corporation and the terminating corporation pursuant to Section 904 of the Business Corporation Law of the State of New York, DO HEREBY CERTIFY:

FIRST:  The Board of Directors of each of the constituent corporations has duly adopted a plan of merger setting forth the terms and conditions of the merger of said corporations.

SECOND:  The name of the constituent corporation which is to be the surviving corporation is The Purdue Frederick Company Inc., a New York corporation, hereinafter referred to as the "Surviving Corporation".

THIRD:  The name of the other constituent corporation, which is being merged into the Surviving Corporation is The Purdue Frederick Company, a Pennsylvania Corporation, hereinafter referred to as the "Terminating Corporation".

FOURTH:  The number of outstanding shares of the Surviving Corporation is 1,000 shares of common stock, with $.01 par value.  The number of outstanding shares of the Terminating Corporation is 1,000 shares of common stock, with $.01 par value.

FIFTH:  The Certificate of Incorporation of the Surviving Corporation upon the effective date of the merger in the jurisdiction of its organization shall be the Certificate of Incorporation of said Surviving Corporation and shall continue in full force and effect until amended and changed in the manner prescribed by the provisions of the Business Corporation Law of the State of New York.

SIXTH:  The date when the Certificate of Incorporation of the Surviving Corporation was filed with the Department of State of the State of New York was September 22, 2004.  The date when the Certificate of Incorporation of the Terminating Corporation was filed by the Department of State of the State of Pennsylvania was September 21, 2004, and no Application for Authority in the State of New York on behalf of the Terminating Corporation to transact business as a foreign corporation in the State of New York was filed by the Department of State of the State of New York. 

SEVENTH:  This merger is permitted and in compliance with the laws of the State of New York, the jurisdiction of the Surviving Corporation and in compliance with the laws of the Commonwealth of Pennsylvania, the jurisdiction of the Terminating Corporation.

EIGHTH:  The merger herein certified was authorized in respect of the Surviving Corporation by the written consent of holders of outstanding shares of the corporation entitled to vote on the plan of merger, having not less than the minimum requisite proportion of votes, which has been given in accordance with Section 615 of the



NY3 - 407921 01

Business Corporation Law of the State of New York. Written notice has been given as and to the extent required by the said Section 615.

NINTH: The merger herein certified was authorized in respect of the Terminating Corporation by the written consent of holders of outstanding shares of the corporation entitled to vote on the plan of merger and has been given as and to the extent required by Section 1766 of the Business Corporation Law of the State of Pennsylvania.

TENTH: The Surviving Corporation shall thereafter cause a copy of this Certificate of Merger, certified by the New York Department of State, to be filed in the Terminating Corporation's county clerk's office.

IN WITNESS WHEREOF, the undersigned has subscribed this Certificate of Merger on the 23rd day of September, 2004, and hereby affirms the contents are true under the penalties of perjury.

THE PURDUE FREDERICK COMPANY INC.

By _____
Stuart D. Baker
Vice President

THE PURDUE FREDERICK COMPANY

By _____
Stuart D. Baker
Vice President



An Official **Pennsylvania** Government Website

EXHIBIT 24

Results: 3

| Filing Information | Initial Filing Date | Status |
|---|---|---|
| THE PURDUE FREDERICK COMPANY (3249865) | 09/21/2004 | Inactive - Withdrawn Consolidated Inactive |
| THE PURDUE FREDERICK COMPANY (5898823) | 07/21/2004 | Inactive - Expired |
| THE PURDUE FREDERICK COMPANY INC. (3250631) *Former Name: THE PURDUE FREDERICK COMPANY INC.* | 09/23/2004 | Active |

200409 4· 323

**PENNSYLVANIA DEPARTMENT OF STATE**
**CORPORATION BUREAU**

Articles/Certificate of Merger
(15 Pa.C.S.)

| | |
|---|---|
| Entity Number | ✓ Domestic Business Corporation (§ 1926) |
| 2 ? 25 6 21 | ___ Domestic Nonprofit Corporation (§ 5926) |
| 3250631 | ___ Limited Partnership (§ 8547) |

Name _____

Address _____

City _____ State _____ Zip Code _____

Document will be returned to the name and address you enter to the left. ⇐

Fee: $150 plus $40 additional for each Party in additional to two

Filed in the Department of State on ____ SEP 2 3 2004

*Pedro A. Cortés*

Secretary of the Commonwealth

In compliance with the requirements of the applicable provisions (relating to articles of merger or consolidation), the undersigned, desiring to effect a merger, hereby state that:

1. The name of the corporation/limited partnership surviving the merger is:
   The Purdue Frederick Company Inc.

2. *Check and complete one of the following:*
   ___ The surviving corporation/limited partnership is a domestic business/nonprofit corporation/limited partnership and the (a) address of its current registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following information to conform to the records of the Department):
   (a) Number and Street          City          State          Zip          County

   (b) Name of Commercial Registered Office Provider                    County
   c/o

   ✓ The surviving corporation/limited partnership is a qualified foreign business/nonprofit corporation /limited partnership incorporated/formed under the laws of New York ____ and the (a) address of its current registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following information to conform to the records of the Department):
   (a) Number and Street          City          State          Zip          County

   (b) Name of Commercial Registered Office Provider                    County
   c/o Corporation Service Company                                      Dauphin

   ___ The surviving corporation/limited partnership is a nonqualified foreign business/nonprofit corporation/limited partnership incorporated/formed under the laws of ____ and the address of its principal office under the laws of such domiciliary jurisdiction is:
   Number and Street          City          State          Zip

2004094 - 324

DSCB:15-1926/5926/8547-2

3. The name and the address of the registered office in this Commonwealth or name of its commercial registered office provider and the county of venue of each other domestic business/nonprofit corporation/limited partnership and qualified foreign business/nonprofit corporation/limited partnership which is a party to the plan of merger are as follows:

| Name | Registered Office Address | Commercial Registered Office Provider | County |
|------|---------------------------|--------------------------------------|--------|
| The Perdue Frederick Company | | | |

4. *Check, and if appropriate complete, one of the following:*

✓ The plan of merger shall be effective upon filing these Articles/Certificates of Merger in the Department of State.

____ The plan of merger shall be effective on: _____ at _____
                                                    Date                    Hour

5. The manner in which the plan of merger was adopted by each domestic corporation/limited partnership is as follows:

| Name | Manner of Adoption |
|------|--------------------|
| The Purdue Frederick Company: | By resolution of the Board of Directors and |
| Unanimous Written Consent of the Shareholders | |

6. *Strike out this paragraph if no foreign corporation/limited partnership is a party to the merger.*
The plan was authorized, adopted or approved, as the case may be, by the foreign business/nonprofit corporation/limited partnership (or each of the foreign business/nonprofit corporations/limited partnerships) party to the plan in accordance with the laws of the jurisdiction in which it is incorporated/organized.

7. *Check, and if appropriate complete, one of the following:*

____ The plan of merger is set forth in full in Exhibit A attached hereto and made a part hereof.

✓ Pursuant to 15 Pa.C.S. § 1901/§ 8547(b) (relating to omission of certain provisions from filed plans) the provisions, if any, of the plan of merger that amend or constitute the operative provisions of the Articles of Incorporation/Certificate of Limited Partnership of the surviving corporation/limited partnership as in effect subsequent to the effective date of the plan are set forth in full in Exhibit A attached hereto and made a party hereof. The full text of the plan of merger is on file at the principal place of business of the surviving corporation/limited partnership, the address of which is.

| c/o Chadbourne & Parke LLP | 30 Rockefeller Plaza NY, | NY | 10112 | New York |
|----------------------------|--------------------------|-----|-------|----------|
| Number and street | City | State | Zip | County |



DSCB: 15-1926/5926/8547-3

200409 4 · 325

IN TESTIMONY WHEREOF, the undersigned corporation/limited partnership has caused these Articles/Certificate of Merger to be signed by a duly authorized officer thereof this

_23rd_ day of _September_ 2004.

The Purdue Frederick Company
_____
Name of Corporation/Limited Partnership
_____
Signature

Vice President
_____
Title

The Purdue Frederick Company Inc.
_____
Name of Corporation/Limited Partnership
_____
Signature

Vice President
_____
Title



New York State Department of State

Division of Corporations, State Records and Uniform Commercial Code

**COPY REQUEST/CERTIFICATE OF STATUS RECEIPT**

FREDRICK HILL
25 STEPHEN DRIVE
GLENDORA NJ 08029

**DATE:**          07/30/2024          TRANSACTION NUMBER:          202407310002915

**ENTITY INFORMATION:**

ENTITY NAME:                    THE PURDUE FREDERICK COMPANY INC.
DOS ID:                         3105222
DATE OF INITIAL DOS FILING:     09/22/2004

| REQUESTED SERVICES: | NUMBER REQUESTED: | FEE: |
|---|---|---|
| UNCERTIFIED COPY($5.00) | 1 | $5.00 |
| CERTIFIED COPY($10.00) | 0 | $0.00 |
| CERTIFICATE OF STATUS - SHORT FORM($25.00) | | $0.00 |
| CERTIFICATE OF STATUS - LONG FORM($25.00) | | $0.00 |
| EXPEDITED HANDLING | | $0.00 |

| TOTAL PAYMENTS RECEIVED: | $5.00 |
|---|---|
| CASH: | $0.00 |
| CHECK/MONEY ORDER: | $0.00 |
| CREDIT CARD: | $5.00 |
| DRAWDOWN ACCOUNT: | $0.00 |
| REFUND DUE: | $0.00 |

| REQUESTED COPY | FILE DATE | FILE NUMBER |
|---|---|---|
| CERTIFICATE OF MERGER | 09/23/2004 | 040923000699 |

DOS-1025 (04/2007)



New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
## COPY REQUEST/CERTIFICATE OF STATUS RECEIPT

FREDRICK HILL
25 STEPHEN DRIVE
GLENDORA NJ 08029

**DATE:**          07/30/2024          TRANSACTION NUMBER:          202407310002779

**ENTITY INFORMATION:**

| | |
|---|---|
| ENTITY NAME: | THE PURDUE FREDERICK COMPANY INC. |
| DOS ID: | 3105222 |
| DATE OF INITIAL DOS FILING: | 09/22/2004 |

**REQUESTED SERVICES:**                    **NUMBER REQUESTED:**      **FEE:**

| | | |
|---|---|---|
| UNCERTIFIED COPY($5.00) | 1 | $5.00 |
| CERTIFIED COPY($10.00) | 0 | $0.00 |
| CERTIFICATE OF STATUS - SHORT FORM($25.00) | | $0.00 |
| CERTIFICATE OF STATUS - LONG FORM($25.00) | | $0.00 |
| EXPEDITED HANDLING | | $0.00 |

| **TOTAL PAYMENTS RECEIVED:** | $5.00 |
|---|---|
| CASH: | $0.00 |
| CHECK/MONEY ORDER: | $0.00 |
| CREDIT CARD: | $5.00 |
| DRAWDOWN ACCOUNT: | $0.00 |
| REFUND DUE: | $0.00 |

**REQUESTED COPY**                    **FILE DATE**      **FILE NUMBER**
CERTIFICATE OF INCORPORATION          09/22/2004       040922000804

DOS-1025 (04/2007)



040922000

CERTIFICATE OF INCORPORATION

OF

THE PURDUE FREDERICK COMPANY INC.

Section 402 of the Business Corporation Law

FILED

2004 SEP 22 PM 2: 51

CSC 45

STATE OF NEW YORK
DEPARTMENT OF STATE

SEP 2 2 2004

FILED
TAX $
BY:

Filer:    Chadbourne & Parke Llp
          30 Rockefeller Plaza
          New York, NY  10112
Cust. Ref#894440Ajc

DRAWDOWN



filed 9-22-2004 251 PM

CSC 45

f

040922000 804

### CERTIFICATE OF INCORPORATION

### OF

### THE PURDUE FREDERICK COMPANY INC.    NY Entry # 3105222 Stucked 9-22

### Under Section 402 of the Business Corporation Law

The undersigned, the sole Incorporator of The Purdue Frederick Company Inc. (the "Corporation"), for the purpose of forming a corporation pursuant to Section 402 of the New York Business Corporation Law of the State of New York, does hereby certify:

FIRST:  The name of the Corporation is The Purdue Frederick Company Inc.

SECOND:  The purposes for which it is formed are to engage in any lawful act or activity for which corporations may be organized under the Business Corporation Law of the State of New York.  It is not formed to engage in any activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

THIRD:  The aggregate number of shares that the Corporation shall have the authority to issue is one thousand (1,000), and the par value of each share is $0.01.

FOURTH:  No owner or holder of a security of the Corporation shall be entitled as a matter of right to purchase or receive any security of the Corporation now or hereafter authorized except as and to the extent that the Board of Directors in its absolute discretion shall so determine.  Any security of the Corporation may be disposed of by the Corporation to such persons and upon such terms as may be specified by the Board of Directors or as may be specified pursuant to authority granted by the Board of Directors.  The word "security" means a

NY2 - 467934 03

SEP. 22. 2004 10:53AM    NO. 3474    P. 2

share of any class, any evidence of indebtedness, any right to purchase or receive any such share or evidence of indebtedness or any instrument convertible into or containing a right to purchase or receive any such share or evidence of indebtedness, or, without limiting the generality of the foregoing, any instrument commonly known at the time as a "security".

FIFTH: The office of the Corporation is to be located in the County of New York, State of New York.

SIXTH: The Secretary of State is designated as the agent of the Corporation upon whom process against the Corporation may be served. The address to which the Secretary of State shall mail a copy of process against the Corporation which may be served upon him is c/o Chadbourne & Parke LLP, 30 Rockefeller Plaza, Rm 3248, New York, New York 10112.

SEVENTH: The name and address of the registered agent of the Corporation are Corporation Service Company, 80 State Street, 6th Floor, Albany, New York 12207-2543 and the registered agent is to be the agent of the Corporation upon whom process against it may be served.

EIGHTH: With respect to any meeting of the Board of Directors of the Corporation the presence of not less than one-third of the entire Board of Directors of the Corporation shall be required to constitute a quorum for the transaction of any and all business of the Board of Directors of the Corporation; provided, however, such quorum must include:

(i)      The presence of (1) if the Class A-1 Director is then in office, (A) the Class A-1 Director and at least one Class A-2 Director or (B) a majority of the Class A-2 Directors, or (2) if the Class A-1 Director has either died, resigned or been removed, a majority of the Class A Directors; and



NY2 - 407934 02

(ii)    The presence of (1) if the Class B-1 Director is then in office, (A) the Class B-1 Director and at least one Class B-2 Director or (B) a majority of the Class B-2 Directors, or (2) if the Class B-1 Director has either died, resigned or been removed, a majority of the Class B Directors; but in the event of a quorum not being present, a lesser number may adjourn the meeting to some future time.

All actions by the Board of Directors of the Corporation shall be approved by the

vote of each class of Directors voting separately, as follows:

(i)    A majority of the Class A Directors present at a meeting of the Board of Directors of the Corporation, and

(ii)    A majority of the Class B Directors present at a meeting of the Board of Directors of the Corporation.

IN WITNESS WHEREOF, I have subscribed this Certificate of Incorporation on the 22nd day of September, 2004, and affirm the contents as true under the penalties of perjury.

Stuart D. Baker
Sole Incorporator
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112

3



| File Date | Cert Code | Document Type | Survivor Result Entity | Constituents | File Numl |
|-----------|-----------|---------------|------------------------|--------------|-----------|
| 09/23/2004 | 06 | CERTIFICATE OF MERGER | THE PURDUE FREDERICK COMPANY INC. | THE PURDUE FREDERICK COMPANY | 0409230 |

Rows per page: 5 ▼        1-1 of 1     ‹    ›



# Department of State
## Division of Corporations

## Entity Merger History

[ Return to Results ]   [ Return to Search ]

**Entity Details** ^

**ENTITY NAME:** THE PURDUE FREDERICK COMPANY INC.

**DOS ID:** 3105222

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:** 402 BCL - BUSINESS

Exhibit 3 - 2007 Oxycontin Criminal Plea Agreement and Judge Jones's Opinion and Order

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:07CR00029 |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| **THE PURDUE FREDERICK** | ) | |
| **COMPANY, INC., ET AL.,** | ) | By:  James P. Jones |
| | ) | Chief United States District Judge |
| Defendants. | ) | |
| | ) | |

    *John L. Brownlee, United States Attorney, Rick A. Mountcastle and Randy Ramseyer, Assistant United States Attorneys, Roanoke, Virginia, for United States; Howard M. Shapiro and Kimberly A. Parker, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for The Purdue Frederick Company, Inc.; Mark F. Pomerantz, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, N.Y., for Michael Freidman; Mary Jo White, Debevoise & Plimpton LLP, New York, N.Y., for Howard R. Udell; and Andrew Good, Good & Cormier, Boston, Massachusetts, for Paul D. Goldenheim.*

    The issue before the court is whether or not to accept the plea agreements in this case.[1]

    The Purdue Frederick Company, Inc. ("Purdue") has pleaded guilty to misbranding OxyContin, a prescription opiod pain medication, with the intent to defraud or mislead, a felony under the federal Food, Drug, and Cosmetic Act.  21 U.S.C.A. §§ 331(a), 333(a)(2) (West 1999).  The individual defendants, Michael

---

[1] This Opinion elaborates on the court's oral opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

UNITED STATES OF AMERICA )
)
v.                                      )          Case No. _____
)
THE PURDUE FREDERICK COMPANY, INC. )

## PLEA AGREEMENT

THE PURDUE FREDERICK COMPANY, INC. ("PURDUE") has entered into a Plea Agreement with the United States of America, by counsel, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). The terms and conditions of this agreement are as follows:

1.    **CHARGE TO WHICH PURDUE IS PLEADING GUILTY AND WAIVER OF RIGHTS**

PURDUE will enter a plea of guilty to Count One of an Information, charging it with the felony of misbranding a drug, with the intent to defraud or mislead, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2). The maximum statutory penalty is a fine of $500,000.00 or twice the gross gain or loss, pursuant to Title 18, United States Code, Sections 3571(c)(3) and 3571(d), plus a period of probation of up to five years, pursuant to Title 18, United States Code, Section 3561(c)(1). In addition, PURDUE's assets may be subject to forfeiture. PURDUE understands that fees may be imposed to pay for probation and that there will be a $400 special assessment, pursuant to Title 18, United States Code, Section 3013(a)(2)(B). PURDUE's attorney has informed it of the nature of the charge and the elements of the charge that must be proved by the United States beyond a reasonable doubt before PURDUE could be found guilty as charged.

PURDUE hereby waives its right to be proceeded against by indictment and consents to the filing of an Information charging it with a violation of Title 21, United States Code, Sections 331(a) and 333(a)(2).

PURDUE acknowledges that PURDUE has had all of its rights explained to it. PURDUE expressly recognizes that, as a corporation, PURDUE may have the following constitutional rights and, that by voluntarily pleading guilty, PURDUE knowingly waives and gives up these valuable constitutional rights:

The right to plead not guilty and persist in that plea.
The right to a speedy and public jury trial.
The right to assistance of counsel at that trial and in any subsequent appeal.
The right to remain silent at trial.
The right to testify at trial.

# Exhibit 4 - Kaminsky's August 12, 2022 Bankruptcy Filing

While the gravamen of Mr. Hill's Second Motion and Amended Second Motion is not entirely clear to the Debtors, Mr. Hill appears to be arguing that "The Purdue Frederick Company" evaded the consequences of the 2007 guilty plea because the caption and signature block of the 2007 plea agreement include an errant comma, identifying the legal entity subject to the plea as "The Purdue Frederick Company, Inc" rather than "The Purdue Frederick Company Inc." (Amended Second Motion [Dkt. No. 370], at 5.) Mr. Hill further argues that he should be permitted to pursue a state court action against "The Purdue Frederick Company" because that entity is not subject to the Preliminary Injunction. (*Id.* at 9.)

Mr. Hill is incorrect. These three names refer to just one legal entity, "The Purdue Frederick Company Inc.," which is the entity that pleaded guilty in 2007 and is the entity that is a Related Party subject to the Preliminary Injunction. (*See* Twenty-Eighth Amended Order [Dkt. No. 356], at 2 n.2 ("The Related Parties are: The Purdue Frederick Company Inc. . . .").) The Purdue Frederick Company Inc. is registered to do business using the alternative name "The Purdue Frederick Company." This company's name has been identified from time to time using a comma before "Inc." or no "Inc." But none of this matters because the Preliminary Injunction on its face applies to "The Purdue Frederick Company Inc." whether a plaintiff sues it in its own name, using its "doing business as" name, or mistakenly using a comma in its name. (First Order [Dkt. No. 82], at 4 (enjoining cases against "Related Parties" identified in Exhibit B to the Complaint); Complaint [Dkt. No. 1], Ex. B, at 2, 14 (identifying "The Purdue Fredrick Company Inc." and variants "The Purdue Fredrick Company" and "The Purdue Frederick Company, Inc." as Related Parties).) There is not, and has never been, any ambiguity that Mr. Hill seeks to sue a Related Party subject to the Preliminary Injunction.

6

For all of the foregoing reasons, the Debtors respectfully request that the Court deny Mr. Hill's Motions to Terminate the Preliminary Injunction.

Dated:    August 12, 2022
              New York, New York

By: */s/ Benjamin S. Kaminetzky*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue

# Exhibit 5 - UCC Doc 6685-2 - Page 11 of 321

that it conspired with others to aid and abet the dispensing of opioids without a legitimate medical purpose and outside the usual course of professional practice in violation of federal law. For these crimes, Purdue agreed to the imposition of a criminal fine in the amount of $3.544 billion, **plus** entry of a forfeiture judgment in the amount of $2 billion, **plus** allowance of a $2.8 billion claim in these chapter 11 cases to resolve civil liability asserted by the U.S. Department of Justice ("DOJ"). Moreover, Purdue specifically admitted that the latest opioid-related criminal misconduct (to which it confessed) dates back at least to *May 2007—the very same month and year that Purdue last pled guilty to criminal marketing of opioids*—and continued into 2017.

5.    Purdue's decades-long crime sprees and other misconduct were carried out at the direction of the Sacklers, with the aid and support of other Defendants. For close to 70 years, Purdue—originally known as Purdue Frederick Company ("Purdue Frederick")—has been beneficially owned by the Sacklers and micromanaged by members of that family. The descendants of Mortimer D. Sackler and Raymond Sackler, respectively, own the company through family trusts.[4] The two branches of the family—which sometimes refer to themselves as "Side A" (the Mortimer side) and "Side B" (the Raymond side)—share ownership of Purdue to this day, and at all relevant times completely dominated and controlled the company. At various times, Purdue had a handful of so-called "outside" directors appointed to the board of directors of the general partner PPI (the "Board") by the Sacklers, but according to the Sacklers themselves, they were "dominated by" the family, acting as mere "soldiers" who could be "march[ed] . . . into a meeting" and relied on to carry out the family's wishes.

6.    The Sacklers were neither passive owners nor typical directors; they disregarded normal corporate practices and acted effectively as "executives, management, board and

---

[4] The Sackler family tree is attached hereto as Exhibit B.

3

shareholders all-in-one" (in the words of one of their closest advisors), dictating all material company activities. The Sacklers exercised such complete control that a leading expert on

## Exhibit 6 - UCC Doc 6685-2 - Page 23 of 321

II.    **Defendants and Other Related Parties**

    A.    **Director Defendants**

        1.    The Side A Director Defendants

31.    Mortimer D. Sackler ("Mortimer Sackler Sr."), the patriarch of "Side A" of the

Sackler family, died on March 24, 2010.  Defendants Farrer & Co. Trust Corporation Limited and

Butterfield Trust (Guernsey) Limited are executors of the Estates of Mortimer D. Sackler, which

are estates consisting of all interests and assets owned by Mortimer Sackler Sr. as of his death.

14

REDACTED

Mortimer Sackler Sr. acquired Purdue Frederick with his brothers Arthur and Raymond R. Sackler

in 1952.[5]  Mortimer Sackler Sr. served on the Board from October 2, 1990 until his death in 2010.

Mortimer Sackler Sr. also served on the board (the "MNP Board") of the entity that controlled the

global Sackler enterprise, MNP Consulting Limited ("MNP"), from the formation of MNP in or

around 1996 until his death.  Mortimer Sackler Sr. also served as a director for at least 11 IACs,

including Napp Pharmaceutical Holdings Ltd. ██████████████████████████████

██████████████████████████████████████  Mortimer Sackler Sr.

attended medical school and was a licensed psychiatrist.

32.    Defendant Theresa E. Sackler ("Theresa Sackler") is Mortimer Sackler Sr.'s widow

and was his third wife.  She was a member of the Board from 1993 through 2018, a member of the

MNP Board from its formation until February 19, 2019, and a member of the board (the "MNC

Board") of MN Consulting LLC ("MNC") from January 17, 2019 until April 15, 2019.[6]  MNC

replaced the role previously occupied by MNP in connection with management of the global

Sackler enterprise.  She also served as a director for at least five IACs, including Napp

Pharmaceutical Group Limited and Napp Pharmaceutical Holdings Ltd.  Upon information and

belief, she currently resides in the United Kingdom and resided in New York, at least part-time,

through 2019.

33.    Defendant Kathe A. Sackler ("Kathe Sackler") is Mortimer Sackler Sr.'s daughter

from his first wife, Muriel.  Kathe Sackler was a member of the Board from 1990 through 2018

and a member of the MNP Board from its formation until February 5, 2019.  She also served as a

## Exhibit 7 - UCC Doc 6685-2 - Page 27 of 321

Group Limited and Napp Pharmaceutical Holdings Ltd.  Until her death in 2019, she resided in Connecticut.  Upon information and belief, the Estate of Beverly Sackler that was not devised under the terms of her will is now property of the Beverly Sackler Revocable Trust.

42.    Defendant Richard Sackler is the son of Raymond Sackler and Beverly Sackler.  He became a member of the Board in 1990 and its co-chair in 2003, which position he retained until he left the Board in 2018.  Richard Sackler also served on the MNP Board from its formation until October 1, 2018.  He also was PPLP's head of research and development from at least 1990 through 1999, its president from 1999 through 2003, and served in other executive roles throughout the business.  Richard Sackler also served as a director for at least five IACs, including Napp Pharmaceutical Group Limited and Napp Pharmaceutical Holdings Ltd.  He currently holds active licenses to practice medicine in New York and Connecticut.  He resides in Florida.

43.    Jonathan D. Sackler ("Jonathan Sackler"), another son of Raymond Sackler and Beverly Sackler, and brother to Richard Sackler, died on June 30, 2020.  Defendant Garrett Lynam is the executor of the Estate of Jonathan D. Sackler, which is an estate consisting of all interests and assets owned by Jonathan Sackler as of his death.  Jonathan Sackler was a member of the Board from 1990 through 2018 and a member of the MNP Board from its formation until September 20, 2018.  Jonathan Sackler also served as a director for at least six IACs, including

## Exhibit 8 - Purdue Pharma L.P. 1991 Formation Date

**ENTITY NAME:** PURDUE PHARMA L.P.

**DOS ID:** 2307842

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** FOREIGN LIMITED PARTNERSHIP

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:** 121-902 LPA - PARTNERSHIP LAW

**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 10/19/1998

**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 10/19/1998

**INACTIVE DATE:**

**FOREIGN FORMATION DATE:** 06/14/1991

**STATEMENT STATUS:**

**COUNTY:** WESTCHESTER

**NEXT STATEMENT DUE DATE:**

**JURISDICTION:** DELAWARE, UNITED STATES

## Exhibit 9 - Judge McMahon's Doc 148

Case 7:21-cv-07585-CM   Document 148   Filed 12/16/21   Page 1 of 142

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/16/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

In re: PURDUE PHARMA, L.P.                          21 cv 7532 (CM) [Master Case]

                                                   [rel: 21 cv 7585 (CM)
———————————————————————— x        21 cv 7961 (CM)
                                                   21 cv 7962 (CM)
This Filing Relates to                             21 cv 7966 (CM)
                                                   21 cv 7969 (CM)
———————————————————————— x        21 cv 8034 (CM)
                                                   21 cv 8042 (CM)
ALL MATTERS                                         21 cv 8049 (CM)
                                                   21 cv 8055 (CM)
                                                   21 cv 8139 (CM)
                                                   21 cv 8258 (CM)
                                                   21 cv 8271 (CM)
                                                   21 cv 8548 (CM)
                                                   21 cv 8557 (CM)
———————————————————————— x        21 cv 8566 (CM)]

### DECISION AND ORDER ON APPEAL

McMahon, J.:

This is an appeal from an order of the United States Bankruptcy Court for the Southern

District of New York ("Bankruptcy Court") (Drain, B.J.), announced from the bench on September

1, 2021, and filed on September 17, 2021, confirming the Plan of Reorganization proposed by

Debtors Purdue Pharma L.P. ("Purdue Pharma") and certain associated companies[1] (the

"Confirmation Order"). Appeal is also taken from two merged and related orders of the Bankruptcy

Court: the June 3, 2021, order approving Purdue's disclosure statement and solicitation materials

(the "Disclosure Order") and the September 15, 2021, order authorizing the implementation of

———————————————————————

[1] Purdue Pharma Inc. ("PPI"), Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue
Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas
Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products
L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul
Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP, and
SVC Pharma Inc. (together, the "Debtors" or "Purdue").

1

certain preliminary aspects of the Plan (the "Advance Order").

Purdue's bankruptcy was occasioned by a health crisis that was, in significant part, of its own making: an explosion of opioid addiction in the United States over the past two decades, which can be traced largely to the over-prescription of highly addictive medications, including, specifically and principally, Purdue's proprietary, OxyContin.

Despite a 2007 Plea Agreement with the United States – in which Purdue admitted that it had falsely marketed OxyContin as non-addictive and had submitted false claims to the federal government for reimbursement of medically unnecessary opioid prescriptions ("2007 Plea Agreement") – Purdue's profits after 2007 were driven almost exclusively by its aggressive marketing of OxyContin. (*See* JX-2094.0047-88; JX-2481). But by 2019, Purdue was facing thousands of lawsuits brought by persons who had become addicted to OxyContin and by the estates of addicts who had overdosed – either on OxyContin itself or on the street drugs (heroin, fentanyl) for which Purdue's product served as a feeder. It also faced new federal, state and local Medicare reimbursement claims and a number of new false marketing claims brought under various state consumer protection laws. Finally, in November 2020, Purdue pled guilty to a criminal Information filed by the Department of Justice ("DOJ") in the United States District Court for the District of New Jersey; in its plea agreement, the company (though not the people through whom the company acted) admitted to substantial deliberate wrongful conduct ("2020 Plea Agreement"). *See USA v. Purdue Pharma L.P.*, No. 2:20-cr-01028.

Engulfed in a veritable tsunami of litigation, Purdue filed for chapter 11 bankruptcy in September 2019. The intent was for a "*Manville*-style" bankruptcy that would resolve both existing and future claims against the company arising from the prescription of OxyContin. The automatic stay brought a stop to civil litigation against Purdue; and a court-ordered stay halted litigation

2

Page 74

2. Purdue Frederick Company, Inc.'s 2007 Plea Agreement and Related Civil Settlements

Also in 2007, Purdue Frederick Company[22] pled guilty to one felony count of misbranding OxyContin, with the intent to defraud or mislead, in violation of 21 U.S.C. §§ 331(a), 333(a)(2). (Dkt. No. 91-4, at App.1268-69; *see* JX-2153–JX-2168); *see* JX-1899. Purdue Frederick's

---

[21] "all . . . present, former, or future masters, insurers, principals, agents, assigns, officers, directors, shareholders, owners, employees, attorneys, representatives. subsidiaries, divisions, affiliates, associated companies, holding companies, partnerships, and joint ventures . . . " (JX-2225).

[22] Purdue Frederick Company is an affiliate of Purdue that manufactures and distributes OxyContin. (Dkt. No. 91-4, at App.1268).

23

President and CEO Michael Friedman, its Executive Vice President and Chief Legal Officer Howard R. Udell, and its Chief Scientific Officer Paul D. Goldenheim, in their capacity as corporate officers, each pled guilty to a misdemeanor charge of misbranding. (Dkt. No. 91-4, at App.1268); *see The Purdue Frederick Company, Inc.,* No. 1:07-cr-00029, at Dkt. Nos. 7-9.

> As part of the Agreed Statement of Facts, the Purdue Frederick Company admitted that:
>
> [b]eginning on or about December 12, 1995, and continuing until on or about June 30, 2001, certain PURDUE supervisors and employees, with the intent to defraud or mislead, marketed and promoted OxyContin as less addictive, less subject to abuse and diversion, and less likely to cause tolerance and withdrawal than other pain medications . . .

(Agreed Statement, at ¶20; *see* Dkt. No. 91-4, at App.1268-1269).

As part of the 2007 Plea Agreement, Purdue Frederick agreed to pay over $600 million dollars in fines and various other payments.[23] (Dkt. No. 91-4, at App.1269; JX-1899, at § 3). This included $160 million to the United States and the states to settle various civil claims that had been asserted by governments – over $100 million to the United States and over $59 million to "Each state that elects to participate in this settlement . . ." (JX-1899, at § 3(b)). In the federal government's settlement agreement, the United States and its various departments agreed to release "*Purdue and its current and former directors, officers, employees, affiliates, owners, predecessors, successors and assigns from any civil or administrative monetary claim the United States has or may have*" under federal statutes creating causes of action for civil damages or penalties, as well as from administrative actions under various federal departments and programs.

# Exhibit 10 - Prescription History Record

| Prescription History | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Claim Number: | ██████████ | | | | | | | |
| Date of Injury: | 6/25/98 | | | | | | | |
| Claims Examiner: | HILL, FRED | | | | | | | |
| Report Date Range: | 06/25/1998 to 02/25/2022 | | | | | | | |
| Report Created Date: | 02/25/2022 14:29 PM ET | | | | | | | |

| Rx# | DOS | NABP | PHARMACY NAME | PRESCRIBER NAME | PRESCRIBER DEA | NDC | MED | CLIENT COST |
|---|---|---|---|---|---|---|---|---|
| 479891 | 3/21/00 | 312839 | CVS PHARMACY #00836 | VILLARE, ANTHONY W MD | AV2364381 | 00228255106 | DICLOFENAC TAB 75MG DR | $77.23 |
| 481295 | 3/30/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 00025542131 | AMBIEN TAB 10MG | $72.36 |
| 481296 | 3/30/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 59011010310 | OXYCONTIN TAB 20MG CR | $77.71 |
| 484777 | 4/22/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 00025542131 | AMBIEN TAB 10MG | $72.36 |
| 484776 | 4/22/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 59011010310 | OXYCONTIN TAB 20MG CR | $77.71 |
| 486677 | 5/5/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 59011010310 | OXYCONTIN TAB 20MG CR | $77.71 |
| 488219 | 5/16/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH C DO | BH1666645 | 00025542131 | AMBIEN TAB 10MG | $139.72 |
| 490022 | 5/31/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 59011010310 | OXYCONTIN TAB 20MG CR | $150.43 |
| 496233 | 7/15/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 00025542131 | AMBIEN TAB 10MG | $72.36 |
| 496234 | 7/15/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 59011010310 | OXYCONTIN TAB 20MG CR | $150.43 |
| 500682 | 8/18/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 00025542131 | AMBIEN TAB 10MG | $72.36 |
| 501686 | 8/26/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 59011010310 | OXYCONTIN TAB 20MG CR | $150.43 |
| 500682 | 9/21/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 00025542131 | AMBIEN TAB 10MG | $75.65 |
| 505024 | 9/21/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 59011010310 | OXYCONTIN TAB 20MG CR | $150.43 |
| 510338 | 10/27/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 00025542131 | AMBIEN TAB 10MG | $75.65 |
| 510339 | 10/27/00 | 312839 | CVS PHARMACY #00836 | HEIST, KENNETH P DO | AH2608719 | 59011010010 | OXYCONTIN TAB 10MG CR | $80.99 |