UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                      Chapter 11

PURDUE PHARMA L.P., *et al*.,                          Case No. 19-23649 (SHL)

                                 Debtors.                         (Jointly Administered)

-----------------------------------------------------------------x

# MEMORANDUM OF DECISION AND ORDER

**A P P E A R A N C E S:**

**AMANDA MORALES**
*Pro se Claimant*
205 Calle Del Banco
Bernalillo, New Mexico 87004
By:     Amanda Morales

**DAVIS POLK & WARDWELL LLP**
*Counsel for Debtors and Debtors in Possession*
450 Lexington Avenue
New York, New York 10017
By:     Marshall S. Huebner, Esq.
        Benjamin S. Kaminetzky, Esq.
        James I. McClammy, Esq.
        Eli J. Vonnegut, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

        Before the Court are two motions and three letters filed by *pro se* claimant Amanda Morales ("Ms. Morales") seeking relief in the Chapter 11 proceedings of Purdue Pharma L.P. and its affiliates (the "Debtors"), including a: (i) motion to take judicial notice [ECF No. 6309] (the "Judicial Notice Motion");[1] (ii) letter regarding the Judicial Notice Motion [ECF No. 7030] (the

---

[1]     Unless otherwise indicated, references in this Memorandum of Decision and Order to docket entries on the Case Management/Electronic Case Files ("ECF") system are to Case No. 19-23649.

"Judicial Notice Letter"); (iii) letter regarding the December 2024 Hearing (as defined below) [ECF No. 7036], as amended [ECF No. 7037] (the "Clarification Letter"); (iv) letter regarding additional evidence to be included in the record [ECF No. 7075] (the "Evidence Letter"); (v) motion for stay of the Class Certification Order (as defined herein) then-pending appeal [ECF No. 7063] (the "Stay Motion"); and (vi) letter objecting to the Debtors' discharge [ECF No. 6245] (the "Objection to Discharge") (collectively, the "Current Motions"). The Debtors submitted an opposition to all the above filings [ECF No. 7239] (the "Debtors' Objection"). For the reasons set forth below, the Court denies the requested relief.

## BACKGROUND

Familiarity with these bankruptcy cases and their history is assumed. *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). Accordingly, the Court will only discuss that history to the extent it is necessary for the pending matters. These cases were filed in 2019 after Debtor Purdue Pharma L.P. faced a wave of litigation for its role in the opioid epidemic. *See id.* at 209. Ms. Morales has participated in these Chapter 11 proceedings since their inception and she has sought, on numerous occasions, to have the merits of her claim against the Debtors adjudicated.[2] Ms. Morales' claim against the Debtors is based upon the death of her father arising from serotonin syndrome following the interaction of OxyContin and antidepressants. *See* Complaint [ECF No. 6148] (the "Motion for Summary Judgment").[3] In connection with her efforts to

---

[2] The Honorable Robert D. Drain presided over these Chapter 11 cases from their filing on September 15, 2019, until July 1, 2022. *See Notice of Case Reassignment From Judge Robert D. Drain to Judge Sean H. Lane* [ECF No. 4937]. Ms. Morales filed her first motion in these proceedings on July 14, 2021. *See Plaintiff's Motion for Summary Judgment* [ECF No. 3191] (the "Motion Requesting Summary Judgment").

[3] Although Ms. Morales labeled this filing a "Complaint," the Court construed this pleading as a motion for summary judgment because no adversary proceeding was ever commenced and the "complaint" was never served on the Debtors with a summons, as required by Federal Rule of Civil Procedure 3. *See* FED. R. CIV. PRO. 3 (explaining the procedure for commencing an action, which starts by the filing of a complaint, followed by "issuance of a summons and its delivery to an officer for service"); *see also* Debtors' Objection at 6–7.

2

adjudicate her claim on the merits, Ms. Morales has filed various motions, objections, and letters, and has been heard at various hearings throughout these proceedings. The Court has frequently explained to Ms. Morales that payment of her claim before the effective date (the "Effective Date") of the Debtors' Chapter 11 plan of reorganization (the "Plan")[4] would violate the fundamental principles of the Bankruptcy Code of similar treatment of claims and the resolution and treatment of general unsecured claims all together under a Chapter 11 plan. *See, e.g.*, *Order Denying Motion for Immediate Claim Payment*, at 1–2 [ECF No. 2145]; *see also Order Denying Motions for Immediate Claim Payment & to Lift Automatic Stay*, at 1 [ECF No. 2306]. Despite the Court's repeated efforts to explain to Ms. Morales that it is not the proper time to adjudicate her claim on the merits, Ms. Morales has continued to file motions, objections, and letters that—while packaged in different forms—ultimately seek the same thing: to adjudicate her individual claim on the merits ahead of the hundreds of thousands of other personal injury claimants in these proceedings. *See* Debtors' Objection, Appendix A for a comprehensive list of the various papers submitted by Ms. Morales in these proceedings; *see also Amended Disclosure Statement for Thirteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* Art. I, § C, ¶ 2 (the "Disclosure Statement") [ECF No. 7609] (explaining that over 614,000 proofs of claims have been filed in these Chapter 11 cases).

The most recent of Ms. Morales' filings, including the Judicial Notice Motion, Judicial Notice Letter, Clarification Letter, Stay Motion, and Evidence Letter, were heard at the February 25, 2025 omnibus hearing (the "February 2025 Hearing"). At the February 2025 Hearing, the Court again explained to Ms. Morales that her claim, while "based on a slightly different set of circumstances [than some other claimants]. . . i[s] still a claim against the Debtor[s]" to be dealt

---

[4]   The Debtors' Plan, as amended, was filed on July 1, 2025. *See Thirteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [ECF No. 7636].

with together with all the hundreds of thousands of other general unsecured claims against the Debtors, as part of the Debtors' proposed Plan, which is scheduled for confirmation in November 2025.  Hr'g Tr., February 25, 2025, at 72:4–73:22, 75:24–76:19, 77:13–24, 79:17–23 [ECF No. 7285].  Put another way, the Court explained that while every claim has its own "individual story," her request for recovery now on her claim is problematic because her claim must be "deal[t] with [together with] all the [other] claims that have been filed" against the Debtors through a plan of reorganization.  *Id.* at 76:2–13.  The Court further made clear that, by waiting for the confirmation hearing on the Debtors' Plan and the related dissemination of the Disclosure Statement, Ms. Morales is not waiving or otherwise giving up any of her rights with respect to her claim.  *See id.* at 87:11–16; *see also* Hr'g Tr., April 10, 2025, at 33:12–37:16 [ECF No. 7385] (explaining to Ms. Morales that the Disclosure Statement deals with adequate information, the Plan deals with, among other things, how different classes of creditors will be treated, and that Ms. Morales is not waiving any of her rights by waiting to object to the Disclosure Statement or Plan, as applicable).  At the conclusion of the February 2025 Hearing, the Court indicated it would take Ms. Morales' most recent filings under advisement and issue a ruling.  *See* Hr'g Tr., February 25, 2025, at 93:17–24.  This is that ruling.

I. **Prior Filings**

Before turning to the Current Motions, it is helpful to provide a brief history of Ms. Morales' prior filings that provide context to the Current Motions.

a. **Motion for Summary Judgment and Related Filings**

In July 2021, Ms. Morales filed a pleading requesting "summary judgment as a matter of law" with respect to her claim against the Debtors because her "situation with the serotonin syndrome that caused [her] father's death is different [from other claimants] and [she] should not have to wait [for] restitution."  Motion Requesting Summary Judgment, at ¶ 15 [ECF No. 3191].

After briefing, Judge Drain denied this motion in an oral ruling, explaining that "[t]here are about 140,000 people who ha[d] filed claims [as of that date]," and it would be inappropriate under "strong principle[s] of bankruptcy law" to decide the merits of Ms. Morales' claim ahead of 140,000 other personal injury claimants. Hr'g Tr., August 16, 2021, at 51:16–52:3 [ECF No. 3581]. Judge Drain advised Ms. Morales that "it would be premature to decide [her] claim now and to have a payment now as opposed to under a plan that deals with all [] claims" and that she could seek recovery on her claim, like all other claimants, by following the procedures set forth in the Debtors' proposed Plan at the appropriate time—i.e., after confirmation and the Effective Date of the Plan. *See id.* at 52:15–18, 54:7–12. On August 18, 2021, Judge Drain issued a written order to that effect, denying the Motion Requesting Summary Judgment. *See Order Denying Motion for Summary Judgment and Payment of Claim* [ECF No. 3591].

In October 2021, Ms. Morales filed a document titled "Motion for Summary Judgment," which was docketed as a motion for reconsideration of Judge Drain's denial of the Motion Requesting Summary Judgment. *See Mot. for Reconsideration* [ECF No. 3994] (the "Motion for Reconsideration"). The Motion for Reconsideration reiterates the same arguments plead in the Motion Requesting Summary Judgment and urges the Court to "hear [her] claim in detail and . . . request[s] a hearing on [her] claim against Purdue Pharma." Mot. for Reconsideration at 4. Judge Drain denied the Motion for Reconsideration finding that it did "not satisfy the standard for relief under Rule 60(b)" and reiterated that the Debtors' prior plan of reorganization was not yet effective, but that it "sets forth a comprehensive procedure for determining the allowance of, and distributions on account of the tens of thousands of claims like [Ms. Morales'] [c]laim that is contrary to the immediate relief sought in" Ms. Morales' motions. *Order Denying Motion for Relief from Prior Order* at 2–3 [ECF No. 4040] ("Order Denying Motion for Reconsideration").

5

### b. Letter Requesting Participation in Mediation

In January 2022, Ms. Morales filed a three-page letter purportedly seeking to participate in the mediation that was then ongoing following the appeal process after the initial plan confirmation in these cases. *See Letter Requesting to Participate in Mediation* [ECF No. 4289] (the "Mediation Letter"). The Mediation Letter explained that Ms. Morales "didn't vote on the confirmation plan and instead filed a motion for summary judgment based on the fact that [her] father's death was not due to addiction . . . ." Mediation Letter at 1. Continuing the pattern in filings made by Ms. Morales, the Mediation Letter urged the Court to allow Ms. Morales to "prove [that her] case is not in the same group [as] others" and sought expedited judgment on the merits of her claim. *Id.* at 2. Judge Drain denied the relief sought in the Mediation Letter because it "d[id] not appear to seek to participate in the mediation directed by the January 3, 2022 Orders but, rather, to request that the allowance of her claim be separately mediated." *Order on Motions to Participate in Mediation* at 1, n. 2 [ECF No. 4302]. The Court reiterated that it would be premature to request to have her claim allowed "which would include mediation regarding the merits of [her] claim[]." *Id.*

### c. Additional Pleadings

In July 2023, Ms. Morales filed an additional letter titled "Order for Relief Based on the Courts Error" that sought the same relief as her Motion Requesting Summary Judgment and Motion for Reconsideration. *See Order for Relief Based on the Courts Error* [ECF No. 5782] (the "July 2023 Letter"). In the July 2023 Letter, Ms. Morales argued that she was "[d]enied due process" because the evidence relating to the underlying merits of her claim against the Debtors "wasn't questioned or considered at the [Initial Confirmation] [H]earing." *Id.* at 7. Given that the July 2023 Letter sought relief from the Court's prior order "based on the court's error," this Court construed it as another motion for reconsideration and denied the requested relief for the

same reasons the prior Motion for Reconsideration was denied.  *See Order Denying Motion for Reconsideration* at 4 [ECF No. 5801].

In February 2024, Ms. Morales filed a "Complaint," which the Court construed as another motion requesting summary judgment.  *See supra* note 3; Mot. for Summary Judgment. Consistent with her prior filings, this Motion for Summary Judgment once again addressed Ms. Morales' claim on behalf of her father regarding serotonin syndrome and sought expedited relief on her claim, arguing that "it's unfair to group [Ms. Morales'] claims with other claimants that are related to addiction when [her] claim[] [is] not related to addiction or abatement."  Mot. for Summary Judgment at ¶ 24.

In addition to pleadings filed to seek immediate recovery on her claim in these cases, Ms. Morales has filed various motions and letters seeking class certification for essentially the same reason advanced in her prior filings: Namely, that her claim against the Debtors is different from other personal injury claimants filed in these proceedings.  *See Motion for Class Certification* [ECF No. 6811] (the "Class Certification Motion"); *Motion to Show Standing* [ECF No. 6813]; *Amended Motion for Class Certification* [ECF No. 6869] (the "Amended Class Certification Motion" and, together with the Class Certification Motion, the "Class Certification Motions"); *Letter re: Best Interest of Creditors Test* [ECF No. 6870]; and the *Letter / Abatement Program* [ECF No. 6876].  On January 1, 2025, the Court issued a written order denying the request for class certification.  *See Order Denying Motions for Class Certification and Related Relief* [ECF No. 7094] (the "Class Certification Order").  In December 2024, Ms. Morales filed an appeal relating to her class certification requests.  *See Notice of Appeal and Statement of Election* [ECF No. 7062] (the "Class Certification Appeal").  On July 25, 2025, the Honorable Cathy Seibel dismissed the Class Certification Appeal.  *See Order of U.S. District Court Judge Cathy Seibel*

7

[ECF No. 7701]; *Memorandum & Opinion in Favor of Purdue Pharma L.P. Against Amanda Morales*, [S.D.N.Y., Case No. 25-cv-00484, ECF No. 18].

## II. Current Motions and Related Filings

### a. Judicial Notice Motion and Judicial Notice Letter

In April 2024, Ms. Morales filed the Judicial Notice Motion, requesting judicial notice pursuant to Federal Rule of Evidence ("FRE") 201 with respect to eight documents that relate to the merits of her underlying claim against the Debtors.[5] *See generally* Judicial Notice Mot. The eight documents reference six websites, including various publications by the Federal Food and Drug Administration ("FDA") such as FDA safety communications, FDA recommendations regarding OxyContin labels, and other articles regarding the potential dangers of combining OxyContin with antidepressants, a copy of a Purdue Pharma plea agreement to the Corporate Integrity Agreement 2007-2012, and a copy of this Court's transcript of the initial confirmation hearing. The Judicial Notice Motion does not seek judicial notice with respect to any specific adjudicative facts within the documents but rather, seeks blanket judicial notice with respect to the documents in their entirety. The Judicial Notice Motion reasserts various arguments that Ms. Morales has previously plead in her various filings, including that her claim is different than all other claimants because "failure to warn" is a "very different negligence case[]" than addiction. *Id.* at 7; *see also* Debtors' Objection at 8. The Judicial Notice Motion was not noticed for a hearing. On December 12, 2024, Ms. Morales filed the Judicial Notice Letter to request a hearing in connection with her request for judicial notice under FRE 201. *See generally* Judicial Notice Letter.

---

[5] The FRE are made applicable to bankruptcy proceedings pursuant to the Federal Rules of Bankruptcy Procedure 9017. *See* FED. R. BANKR. PRO. 9017.

8

### b. Clarification Letter

In December 2024, Ms. Morales filed the Clarification Letter which purports not to seek any affirmative relief. *See* Clarification Letter. Instead, the Clarification Letter seeks to "clarify issues that [Ms. Morales] was trying to discuss with the [C]ourt[.]" *Id.* at 1. It explains that: (i) at the hearing held on December 12, 2024 (the "December 2024 Hearing"), Ms. Morales was not trying to address a 2021 Judge Drain decision, but was "trying to address Purdue Pharma's conduct in acting in bad faith pretending to want to settle just long enough so [she] couldn't appeal" Judge Drain's 2021 order denying her Motion Requesting Summary Judgment; (ii) her Motion for Summary Judgment was "incorrectly" filed by the Clerk of the Court because it should have been labeled as a "complaint"; (iii) her Motion for Reconsideration was "incorrectly" filed by the Clerk of the Court because it should have been labeled as a "direct appeal"; and (iv) the Court, in the No Contact Order—*see supra* footnote 7—stated that Ms. Morales' claim had already been decided when Ms. Morales contends that "[her] claim[] ha[s] never been decided on [its] merits" and still "ha[s] not been decided on the merits." *Id.* at 1, 2–3. Finally, the Clarification Letter complains that the Debtors have not responded to, and the Court has not ruled on, her various filings. *See id.* at 2.

### c. Evidence Letter

Ms. Morales filed the Evidence Letter on January 5, 2025. *See generally* Evidence Letter. The Evidence Letter seeks to introduce various information into the record of these proceedings. *See id.* In particular, Ms. Morales attaches screen shots of two YouTube videos as evidence that (i) her appeal of the Class Certification Order was incorrectly filed as only 6 pages when it should have been 72 pages long; and (ii) her appeal of Judge Drain's order denying the

9

Motion Requesting Summary Judgment was incorrectly docketed as a Motion for Reconsideration. *See id.* at 1–3.

### d. Stay Motion

In December 2024, Ms. Morales filed the Stay Motion seeking to stay the Court's Class Certification Order while her then-pending appeal of the Class Certification Order was being adjudicated because the "[u]nsecured [c]reditors [c]ommittee for the creditors hasn't protected interests of claims unrelated to the opioid crisis." Class Certification Appeal at 1; *see generally* Stay Mot. The Stay Motion again argues that "[f]ailure to warn about OxyContin interactions with antidepressants is not [t]he same or related to the opioid crisis and isn't related to the other claims in this case" and that Ms. Morales' due process rights have been violated by virtue of the Court's failure to prematurely decide her claim on the merits ahead of every other claimant in these proceedings. Stay Mot. at 5. Ms. Morales claims that "irreparable harm" would result if the Class Certification Order was not stayed pending appeal because she would "be put to an untenable choice: conform and give up the right to appeal or give up [] jurisdiction over this case." *Id.* at 4.

### e. Objection to Discharge

In March 2024, Ms. Morales filed the Objection to Discharge that raised the same issues included in Ms. Morales' previous filings. *See generally* Objection to Discharge.[6] For instance, the Objection to Discharge complains that the Debtors "want to group a claim like [hers] together

---

[6] In February 2025, Ms. Morales filed a substantially similar letter objecting to the Debtors' discharge, again raising the same issues included in her previous filings. *See Letter / Motion to Object to Discharabilty of Debt* [ECF No. 7206] (the "Second Objection to Discharge" and, together with the Objection to Discharge, the "Objections to Discharge"). In addition to repeating allegations that her claim is different from all other claims, the Objections to Discharge raise issues regarding the Debtors' potential discharge.

with the opioid crisis . . . and [Ms. Morales] do[es]n't deserve to be told that it's a similar claim related to the opioid crisis when it's not." Objection to Discharge at 9.[7]

## DISCUSSION

Ms. Morales' Current Motions, although packaged in different forms, all seek some form of relief in connection with adjudicating her claim on the merits. As previously explained to her by the Court on numerous occasions, there are hundreds of thousands of personal injury claimants. Unless there is a claim objection, individual claims will not be addressed unless and until there is an objection to those claims or those claims need to be adjudicated in connection with confirmation of the Debtors' proposed Plan of Reorganization.

In bankruptcy, there is a specific process for handling and satisfying claims. *See, e.g.*, FED. R. BANKR. PRO. 3007; 11 U.S.C. § 502; *see also In re Chateaugay Corp.*, 104 B.R. 622, 624–25 (S.D.N.Y. 1989). This process serves a crucial purpose. Namely, the process ensures an orderly and efficient administration of an estate, particularly important in a case of this size with over 600,000 individual claimants. Consistent with these procedures, it is not appropriate to address the merits of individual claims that are uncontested but rather wait to see if there is an objection. If an objection is lodged against Ms. Morales' claim, a hearing will be scheduled, and

---

[7] In response to various communications of Ms. Morales by email to Chambers, the Court issued an order directing Ms. Morales to file an "appropriate pleading in writing"—rather than by emailing the Court directly for relief—"to the extent Ms. Morales is seeking relief before the Court regarding outstanding, meritorious legal issues . . . ." *Order Regarding Contact with Chambers* at 2 [ECF No. 6274] (the "No Contact Order"). Importantly, the No Contact Order directs Ms. Morales to "cease filing . . . *duplicative* requests" regarding "legal issues which have previously been decided . . . ." *Id.* at 1 (emphasis added). Approximately two weeks after the No Contact Order was entered on the docket, on April 12, 2024, Ms. Morales filed a notice of appeal with the Court, followed by an amended notice of appeal. *See Amended Notice of Appeal* [ECF No. 6312] (the "No Contact Order Appeal"). The Debtors moved in the District Court to dismiss the No Contact Order Appeal on the grounds that it was untimely under Federal Rule of Bankruptcy Procedure ("FRBP") 8002 and because the order from which Ms. Morales is appealing is an interlocutory order that is not appealable. *See Motion to Dismiss, Morales v. Purdue Pharma L.P., et al.*, [S.D.N.Y., Case No. 24-cv-02958, ECF No. 31] (the "Motion to Dismiss"). On August 6, 2025, the Honorable Nelson S. Román dismissed the No Contact Order Appeal. *See Opinion & Order Re: Motion to Dismiss*, [S.D.N.Y., Case No. 24-cv-02958, ECF No. 41].

the Court may consider evidence at that time to determine whether and for how much it should be allowed. But as there has been no objection to Ms. Morales' claim as of the date of this ruling,[8] her requests for relief about ways to prove her claim now are premature.

Moreover, to the extent a claimant is unsatisfied with the treatment of his or her claim in a Chapter 11 case such as this one, those concerns should be addressed as part of the confirmation process. That process has already begun. The Disclosure Statement, which governs whether there is adequate information for creditors to understand the Plan, was approved by the Court at hearing held on June 20, 2025. *See Order Approving (I) Disclosure Statement for Thirteenth Amended Chapter 11 Plan, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [ECF No. 7615]. Now that the Disclosure Statement has been approved and disseminated to all parties in interest, individual creditors like Ms. Morales should consider it and the proposed Plan to determine if they are satisfied with the Debtors' proposed treatment of claims like hers. She is entitled to vote yes or no on the Plan and also to file an objection to the Plan if she thinks the proposed Plan is somehow improper. Any objections to the Plan will be heard at the confirmation hearing, which is currently scheduled for November 2025. *See generally* Disclosure Statement Art. I, § C, ¶ 5.

Having explained this central defect in the Current Motions, the Court turns to other issues in each of these pleadings.

---

[8] The Debtors' proposed Plan provides that objections to claims against the Debtors may be prosecuted by the Debtors or any other party in interest prior to the Effective Date of the Plan. *See* Plan Art. VII, § 7.3(a). This is consistent with Bankruptcy Rule 3007, which governs objections to claims. *See* FED. R. BANKR. PRO. 3007.

12

### a. Judicial Notice Motion and Judicial Notice Letter

Ms. Morales' Judicial Notice Motion and Judicial Notice Letter seek to introduce documents that relate to the merits of her underlying claim against the Debtors. As previously explained, it is not appropriate to address the merits of her currently uncontested claim. But even if Ms. Morales' requests were not premature, her request for judicial notice cannot be granted because it does not satisfy the requirements for judicial notice.

FRE 201 provides that a court may take judicial notice of a fact if it "is not subject to reasonable dispute because it . . . is generally known within the . . . jurisdiction[] or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). FRE 201 is limited to adjudicative facts, not documents. *See In re Manning*, 620 B.R. 199, 207 (Bankr. W.D.N.Y. 2020) ("Central to Rule 201 FRE is the notion that federal courts take judicial notice of facts, not documents."). When taking judicial notice of adjudicative facts, courts exercise caution in determining that a fact is beyond controversy because "the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence . . . ." *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 72 (E.D.N.Y. 2016) (citations omitted). It is only appropriate for courts to take judicial notice of facts of "universal knowledge without having such matters established by evidence in the individual case." *See Murray v. Donlan*, 77 A.D.2d 337, 348 n.4 (1980) (citations omitted). Moreover, the Court "can only sensibly take judicial notice of facts relevant to the matters before the court." *Komatsu v. City of New York*, 2021 WL 1590205, at *2 (S.D.N.Y. Apr. 23, 2021) (declining to take judicial notice of documents because they were "irrelevant to any request for reconsideration of" the court's order) (quoting *Anthes v. New York Univ.*, 2018 WL 1737540, at *4 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom.*, *Anthes v. Nelson*, 763 F. App'x 57 (2d Cir. 2019)); *see also Cabrera v. Dream Team Tavern Corp.*, 2016 WL 1627621,

13

at *3 (E.D.N.Y. Apr. 22, 2016) (denying request to take judicial notice because "courts and commentators have required that noticed facts be relevant."). Further, judicial notice cannot be used to establish the truth of the matters asserted. *See, e.g.*, *Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) ("The Second Circuit has made clear that a court may take judicial notice of publicly filed documents, not offered for the truth of the matter asserted . . . .") (internal citations omitted); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Cabrera*, 178 F. Supp. 3d at 73; *In re Manning*, 620 B.R. at 207. Accordingly, a bankruptcy court can take judicial notice of the fact that proofs of claims have been filed but cannot take judicial notice of any of the facts stated or alleged in those documents. *See In re Zetta Jet USA, Inc.*, 624 B.R. 461, 470 (Bankr. C.D. Cal. 2020). The party requesting judicial notice has the burden of persuading the trial judge that the fact is appropriate for judicial notice. *See In re James*, 300 B.R. 890, 894 (Bankr. W.D. Tex. 2003).

      Ms. Morales seeks to have the Court take judicial notice of various documents as a whole that relate to the merits of her underlying claim against the Debtors. This request for judicial notice is problematic for three reasons. First, the documents include facts that are not so "universal[ly] known[]" such that they could be appropriately judicially noticed. *See Murray*, 77 A.D.2d at 348. Indeed, at least two of the websites referenced in the documents—the second and fourth website—have specific disclaimers that the "FDA has issued new information" and that it "may not be the latest [information]"—directing the user to more recent developments in knowledge. *See* FDA, *FDA Drug Safety Communication: FDA warns about serious risks and death when combining opioid pain or cough medicines with benzodiazepines; requires its*

14

*strongest warning*, U.S. FOOD & DRUG ADMIN. (Sept. 20, 2017), https://www.fda.gov/drugs/drug-safety-and-availability/fda-drug-safety-communication-fda-warns-about-serious-risks-and-death-when-combining-opioid-pain-or; FDA, *Highlights of Prescribing Information*, U.S. FOOD & DRUG ADMIN. (Apr. 2010), https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/022272lbl.pdf.

Second, Ms. Morales is not seeking to have any particular facts within the documents judicially noticed. Indeed, Ms. Morales has failed to specifically identify a *single* adjudicative fact contained within the documents for which she requests judicial notice. Rather, Ms. Morales is seeking to have the documents judicially noticed in their entirety. But judicial notice under FRE 201 is limited to adjudicative facts, not entire documents. *See In re Manning*, 620 B.R. at 207.

Third, Ms. Morales is seeking to introduce the documents for their truth in that Ms. Morales is seeking to prove the accuracy of the facts within those documents, or rather, to have the Court make a finding of fact with respect to the truth of the documents. The Court cannot make a finding of fact with respect to the hundreds, potentially thousands, of facts and assertions contained within the documents, all of which might be subject to reasonable dispute if they were properly before the Court. *See* Debtors' Objection at 12; *see also Press*, 685 F. Supp. 3d at 224; *Kramer*, 937 F.2d at 774; *Cabrera*, 178 F. Supp. 3d at 72; *In re Manning*, 620 B.R. at 207.[9]

---

[9] Ms. Morales cites California Evidence Code ("CEC") Section 453 for the proposition that a court must take judicial notice of an adjudicative fact "if a party requests it" and the requesting party gives "adequate notice to the adverse party" and presents "sufficient information to enable the Court to take judicial notice." CEC § 453. However, the CEC is not applicable to these proceedings and the relevant authority here is FRE Section 201. Ms. Morales also cites CEC Section 452 for the proposition that "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States" may be judicially noticed. CEC § 452. Even if California courts have interpreted CEC Section 452 to include "administrative agency records" which may (or may not) encompass some of the documents authored by the FDA, neither the CEC nor California law is applicable to these proceedings.

15

The Court notes, however, that Ms. Morales' request for judicial notice of one of the documents—this Court's transcript of the confirmation hearing for the Debtors' prior plan of reorganization—is unnecessary because that transcript is already a part of the record of these proceedings and is publicly filed on the case docket. *See* Hr'g Tr., August 12, 2021 [ECF No. 3564] (part one of the confirmation hearing for the Debtors' prior plan of reorganization); *see also* Hr'g Tr., August 16, 2021 [ECF No. 3581] (the continued confirmation hearing for the Debtors' prior plan of reorganization).

### b. The Clarification Letter and Evidence Letter

The Clarification Letter and Evidence Letter, although both phrased as attempts to correct purported "errors" by the Court, ultimately seek to introduce information relating to the merits of Ms. Morales' claim, a claim that is not a currently contested matter before the Court. *See* Clarification Letter at 2–3; Evidence Letter at 4 (explaining that her claims have "undisputable evidence" and are "different from other claims"). Since the Clarification Letter and Evidence Letter do not seek judicial notice, nor any other affirmative relief, but rather seek to have the Court determine issues that relate to the underlying merits of Ms. Morales' claim, the Court's inquiry ends here. The Court may consider any evidence in connection with the merits of Ms. Morales' underlying claim if and only if there is an objection to her claim, as discussed above.

### c. The Stay Motion

The Stay Motion seeks to stay the Class Certification Order that was the subject of Ms. Morales' appeal to the United States District Court. As Ms. Morales' appeal of the Class Certification Order was denied by the Honorable Cathy Seibel on July 25, 2025, this request is now moot. *See Order of U.S. District Court Judge Cathy Seibel* [ECF No. 7701].[10]

---

[10]    Ms. Morales has not appealed the denial of the Class Certification Order.

### d. The Objections to Discharge

The text of Ms. Morales' Objection to Discharge raises arguments about the nature of her claim, arguments which are premature for the reasons explained above. But in titling her objection as one to discharge, however, it appears that she is also objecting to the issuance of any discharge in this case. Several other creditors have made a similar request. *See, e.g.*, *Motion for Full-Satisfaction of Claim and Objection to Discharge of Certain Debts by Personal Injury Claims Arising from the Fraud, Negligence, and Willful Misconduct of Debtors, Sackler Family and Affiliates, and the Governmental and Corporate Entities Who Enabled the Opioid Crisis* [ECF No. 7432]; *see also Motion for Full-Satisfaction of Claim and Objection to Discharge of Certain Debts by Personal Injury Claims Arising from the Fraud, Negligence, and Willful Misconduct of Debtors, Sackler Family and Affiliates, and the Governmental and Corporate Entities Who Enabled the Opioid Crisis* [ECF No. 7451]. At a hearing held in these cases on September 17, 2025, the Court raised various requests for relief by other creditors that are still pending in these cases, including requests seeking objections to the Debtors' discharge. It makes sense to address such requests together, to the extent that they seek identical or similar relief. The Court indicated at the September 17, 2025 hearing that it would schedule a pre-trial conference at a date to be determined, or enter an appropriate order, setting forth when these various requests for relief will be addressed by the Court, whether before or after the confirmation hearing on the proposed Plan.

### **CONCLUSION**

For the foregoing reasons, the Court denies all the requested relief in the Current Motions, except to the extent that Ms. Morales seeks to deny a discharge to the Debtors; that request will be addressed together with similar requests at an appropriate time. The Debtors are

17

directed to serve a copy of this Memorandum of Decision and Order on Ms. Morales by email and overnight mail.

    **IT IS SO ORDERED**.

Dated: White Plains, New York
       October 6, 2025

                                         */s/ Sean H. Lane*
                                         UNITED STATES BANKRUPTCY JUDGE