**Appendix A**

**Confirmation Objections Response Chart**

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| 1 | Mayor and City Council of Baltimore's Objection<br><br>[ECF No. 7955] | This objection has been resolved pending the Court's approval of a stipulation submitted by the parties. | |
| | | a) Baltimore contends that "the Plan violates the equal treatment rule of 11 U.S.C. § 1123(a)(4) by discriminating against holders that refuse to grant third-party releases to the Sackler Shareholders." [ECF No. 7955 at 4.] | a) The Plan does not violate the equal treatment rule of 11 U.S.C. § 1123(a)(4) because each class of claims or interests under the Plan receives the same opportunity to recover as every other Claim or Interest in such class. (*See* Conf. Br. ¶¶ 152-155.) |
| | | b) Baltimore contends that "the Plan tries to circumvent the ban in *Harrington* on non-consensual third-party releases by threatening non releasing creditors with discriminatory treatment." [ECF No. 7955 at 4.] | b) The Plan does not unfairly discriminate against non-releasing creditors because no creditor is receiving dissimilar treatment from any other similarly situated creditor. (*See* Conf. Br. ¶¶ 237-240.) |
| | | c) Baltimore contends that the Plan violates the good faith requirement of 11 U.S.C. § 1129(a)(3) because "the Plan is unacceptably tied to payments by the Sackler Shareholders to a subset of the Debtors' creditors—a form of illicit vote-buying." [ECF No. 7955 at 4.] | c) The Plan does not violate the good faith requirement of 11 U.S.C. § 1129(a)(3) because the record is abundantly clear that the Plan is a product of extensive good faith negotiations. (*See* Conf. Br. ¶¶ 188-189.) |
| 2 | Certain Insurers[1]<br><br>[ECF No. 7895] | a) Certain Insurers object to the insurance neutrality provision as improperly altering their contractual rights under their insurance policies with the Debtors in ways not permitted under the | a) This objection should be overruled for the reasons discussed in separate briefing submitted by the Debtors' insurance counsel, as well as for the reasons discussed in the Ad Hoc Committee's Reply to Plan Objections. |

---

[1] The "Certain Insurers" include: (i) National Union Fire Insurance Company of Pittsburgh, Pa.; (ii) Liberty Mutual Insurance Company; (iii) Liberty Mutual Fire Insurance Company; (iv) Liberty Insurance Corporation; (v) Swiss Re Corporate Solutions Elite Insurance Corporation, f/k/a North American Elite Insurance Company; (vi) Aspen American Insurance Company; (vii) The Travelers Indemnity Company; (viii) Gulf Underwriters Insurance Company; and (ix) St. Paul Fire and Marine Insurance Company.

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | Bankruptcy Code." [ECF No. 7895 at ¶¶ 8, 29, 33.] | |
| | | b) Certain Insurers object on the ground that "the Plan contains a nonconsensual third-party release of non-settling insurers' claims against prospective settling insurers, which is impermissible under the Supreme Court's decision in *Harrington*." [ECF No. 7895 at ¶ 12.] | b) This objection should be overruled because the Plan's various releases, including the insurer injunctions, do not run afoul of the Supreme Court Decision for the reasons discussed at length in the Debtors' Confirmation Brief. (S*ee, e.g.*, Conf. Br. ¶¶ 15, 169-173.)  This objection should otherwise be overruled for the reasons discussed in separate briefing submitted by the Debtors' insurance counsel as well as for the reasons in the Ad Hoc Committee's Reply to Plan Objections. |
| 3 | Travelers[2]  [ECF Nos. 7896] | a) Travelers objects on the ground that the Plan "appears to still contain impermissible non-consensual third-party releases that would deprive Travelers of contractual and common law indemnity and other rights against non- Debtor entities[.]"  [ECF No. 7896 at ¶ 2.] | Travelers' objection has been resolved pending anticipated revisions to the Debtors' Plan. |
| | | b) Travelers objects on the ground that the Plan does not explicitly protect state-created contract rights, and contemplates that the Plan, Confirmation Order, or other Orders of the Court can modify prepetition insurance contracts and/or settlement agreements (currently subject to ongoing litigation), or rights and defenses thereunder." [ECF No. 7896 at 2.] | |

---

[2] "Travelers" includes:  (i) The Travelers Indemnity Company; and (ii) Gulf Underwriters Insurance Company; and (iii) St. Paul Fire and Marine Insurance Company.

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| 4 | Joining Insurers[3]<br><br>[ECF No. 7897]<br><br>[Late] | a) Navigators, AGLIC, Steadfast, and XL joined in Certain Insurers Objection to the insurance neutrality provision contained in the Plan. [ECF No. 7897 at ¶ 1]. | a) This objection should be overruled for the reasons discussed in separate briefing submitted by the Debtors' insurance counsel as well as for the reasons discussed in the Ad Hoc Committee's Reply to Plan Objections. |
|   |   | b) Navigators, AGLIC, Steadfast, and XL join in the objection of the Certain Insurers to the Plan's insurance injunction, but seek specific revisions thereto. [ECF No. 7897 at ¶¶ 2-3]. | b) This objection should be overruled for the reasons discussed in separate briefing submitted by the Debtors' insurance counsel as well as for the reasons discussed in the Ad Hoc Committee's Reply to Plan Objections. |
| 5 | Johnson & Johnson<br><br>[ECF No. 7951]<br><br>[Late] | a) Johnson and Johnson filed a reservation of rights pending ongoing discussions and analysis, expressing that it "anticipates consenting to the Plan." [ECF No. 7951 at ¶¶ 2-3 and n.6.] | a) Johnson & Johnson's reservation of rights does not lodge any objection at the Debtors' Plan. Therefore, this is not a Plan objection. |
| 6 | Old Republic Insurance Company ("ORIC")<br><br>[ECF No. 7937]<br><br>[Late] | a) ORIC objects that the Plan "is unclear whether the ORIC Policies are MDT Insurance Policies" and that "Debtors' counsel … indicated … that a decision on whether the ORIC Policies would be designated as MDT Insurance Policies would likely not be made prior to ORIC's objection deadline to the Plan." [ECF No. 7937 at ¶ 3.] | a) This objection should be overruled for the reasons discussed in separate briefing submitted by the Debtors' insurance counsel as well as for the reasons discussed in the Ad Hoc Committee's Reply to Plan Objections. |
| 7 | Amanda Morales<br><br>[ECF. Nos. 6245, 7206, 7299, 7355, 7456, | a) The Plan violates 11 U.S.C. § 1141(d)(6) because it discharges Debtors of fraud-related debts held by a governmental unit. [ECF Nos. 6245 at 5; 7299 at 5; 7355 at 14.] | a) This objection should be overruled for the reasons stated in Debtors' Confirmation Brief. (*See* Conf. Br. ¶¶ 254-255.) Section 1141(d)(6) applies the section 523(a)(2) exception to discharge to debtors that are corporations only with respect to such debts "owed to a domestic |

---

[3] The "Joining Insurers" include: (i) Navigators Specialty Insurance Company ("Navigators"); (ii) American Guarantee and Liability Insurance Company ("AGLIC"); (iii) Steadfast Insurance Company ("Steadfast"); and (iv) XL Insurance America, Inc. ("XL").

3

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | 7818, 7819, 7940] | | governmental unit or a *qui tam* relator, 11 U.S.C. § 1141(d)(6), and Ms. Morales is neither and thus lacks standing to object on this basis. |
| | | b) The Plan violates 11 U.S.C. § 1141(d)(3) because it is a "liquidating plan." [ECF No. 6245 at 5.] | b) This objection should be overruled because the Plan does not provide for the liquidation of all or substantially all of the Estates' property, and the Debtors will continue to engage in business after the Effective Date through the successor company, Knoa, which will be a public benefit company or a company with a similar mission. (*See* Conf. Br. ¶¶ 195-202.) |
| | | c) The Plan violates 11 U.S.C. §§ 523(a) and 727(a) because it discharges nondischargeable claims. [ECF Nos. 7206 at 6-10; 7299 at 6, 10; 7456; 7818 at 6-10; 7819] | c) This objection should be overruled because Section 523 of the Bankruptcy Code only applies to individual debtors, which the Debtors here are not, and Section 727 of the Bankruptcy Code is applicable only in Chapter 7 proceedings, which these cases are not. (*See* Conf. Br. ¶¶ 254-255.) |
| | | d) The Plan attempts to impermissibly alter claimants' property and contract rights in violation of 11 U.S.C. §§ 363 and 365 [ECF No. 7355 at 4-5, 15.] | d) To the extent that this is an objection to confirmation of the Plan, no legal basis is provided, and the objection should be overruled. |
| | | e) The classification scheme set forth in the Plan is improper under 11 U.S.C. § 1122(a) as Ms. Morales argues she is uniquely situated and her claims "are different from other claims" and, if litigated, "the likeliness that they will succeed on the merits is very likely." [ECF No. 7355 at 8-11.] | e) The Plan satisfies the classification requirements of section 1122 for the reasons discussed at length in the Debtors' Confirmation Brief. (*See* Conf. Br. ¶¶ 146-148.) The alleged facts underlying Ms. Morales' claims do not fundamentally alter that they are for opioid-related personal injury. |

4

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | f) Sections 5.20(a) and 6.1(b) of the Plan improperly request findings of good faith for documents other than the Plan in violation of 11 U.S.C. § 1129(a)(3). [ECF No. 7355 at 15-16.] | f) To the extent that this is an objection to confirmation of the Plan, no legal basis is provided, and the objection should be overruled. |
| | | g) Ms. Morales requests that the Court permit creditors to pierce the corporate veil to include Richard Sackler as a judgment debtor in these proceedings. [*See generally* ECF No. 7940.] | g) This objection should be overruled. This is not a valid Plan objection. In any event, claims for piercing the corporate veil belong exclusively to the Debtors, and such claims are presently proposed for settlement by the Estates for the benefit of all of the Debtors' creditors. (*See* Conf. Br. ¶¶ 258-259.) |
| 8 | Bradley W. Kennedy [ECF No. 7596] | a) Among other things, Mr. Kennedy requests to be "se[nt] Disclosure" and to preserve his "voting right." [ECF No. 7596 at 1.] | a) This is not a valid Plan objection. The Debtors provided notice and complied with the solicitation procedures order. Indeed, Mr. Kennedy's filing predates solicitation. |
| 9 | Carrie L. McGaha [ECF Nos. 7432, 7522, 7676, 7683, 7724, 7737] | a) The Plan violates 11 U.S.C. §§ 523(a)(2) and (a)(6) because it discharges nondischargeable claims. [ECF No. 7432 at 5.] | a) This objection should be overruled because 11 U.S.C. § 523(a) does not apply to corporate debtors. (*See* Conf. Br. ¶ 254.) |
| | | b) The Plan violates the Supreme Court Decision because non-debtors must either file for bankruptcy or satisfy claims in full if they wish to avoid civil liability. [ECF No. 7432 at 5-7.] | b) This objection should be overruled because the Plan does not implicate the Supreme Court Decision. As discussed in the Debtors' Confirmation Brief, any claims released as to the Shareholder Released Parties are done so with consent of the releasing party. Ms. McGaha's claims will not be released against those parties unless she has voluntarily opted in to the Plan's Third-Party Releases. (S*ee, e.g.*, Conf. Br. ¶¶ 15, 169-173.) |

5

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | c) It is coercive to require individual victims to pursue their direct claims against non-debtor parties. [ECF No. 7432 at 7.] | c) This is not a valid Plan objection and, in any event, should be overruled. As the Supreme Court Decision makes clear, absent a creditor's consent to resolve its claim against non-debtor parties, the Plan cannot compel the resolution of third-party claims. |
| | | d) Ms. McGaha asserts that her claim is valid and documented, and "should not be discharged, diminished, or erased." [ECF No. 7432 at 7-8.] | d) This Plan objection should be overruled. Insofar as Ms. McGaha refers to her claims against the Estates, those claims will be addressed pursuant to the claim resolution procedures governed by the Plan—which are fair and reasonable for the reasons discussed in the Debtors' Confirmation Brief. (*See* Conf. Br. ¶¶ 13-15, 195-202.) To the extent she refers to her claims against the Shareholder Released Parties, those claims will not be settled or extinguished absent Ms. McGaha's consent. (S*ee, e.g.*, Conf. Br. ¶¶ 15, 169-173.) |
| | | e) The Court must "[h]old a hearing on whether victim claims are being equitably treated under any revised plan." [ECF No. 7432 at 8.] | e) This is not a valid Plan objection. In any event, the intent of the Confirmation Hearing is, among other things, an opportunity for the Court to hear the evidence and determine whether the Plan is equitable and compliant with the Bankruptcy Code. Ms. McGaha, like any other interested creditor, will be entitled to present her objections at the Confirmation Hearing. |
| | | f) The Plan withholds compensation from the PI Trust and diverts those funds to pay for the legal defense of the very parties who caused the harm. [ECF No. 7432 at 4.] | f) As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $865 million under the Plan, and the evidence at confirmation will confirm that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (*See* Conf. Br. ¶¶ 13, 140.) |

6

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | g) The Mediation lacked good faith as those who had previously objected to the plan and voted "no" were not given a meaningful opportunity to participate in a dialogue aimed at achieving consensus. [ECF No. 7522 at 1.] | g) The mediated resolution of these Chapter 11 Cases was fiercely negotiated by the Debtors' key organized creditor constituencies, including representatives of personal injury claimants owing fiduciary duties to creditors like Ms. McGaha, as well as elected or appointed government officials. Moreover, the mediation was overseen by respected, court-appointed mediators. To the extent McGaha objects to the mediation not addressing her claims, that has not purchase, as the mediation was never intended to mediate individual claims. As discussed in the Debtors' Confirmation Brief, both the Plan and the negotiations leading to it were a product of good faith. (*See* Conf. Br. ¶¶ 188-191.) |
| | | h) Certain creditor groups now seek reimbursement for funds expended and should not be prioritized over direct victims or benefit disproportionately. [ECF No. 7522 at 1.] | h) This objection should be overruled. As discussed in Dr. Gowrisankaran's report, the Plan's compensation for funds previously expended in relation to opioid misuse will result in a variety of public benefits. (JX-3330 (Gowrisankaran Expert Report) ¶ 10.) |
| | | i) Ms. McGaha offers what she describes as expert opinion regard negligent packaging and opioid abatement and requests certain relief from the Court, including mandatory unit-dose packaging for all prescription narcotics, tamper-evident, patient-friendly packaging, industry-wide standards for packaging, and a requirement to force existing systems to make changes that include affordable, non-pharmaceutical treatments for pain and disease. [See ECF Nos. 7432 at 9; 7522 at 2-3; see generally ECF Nos. 7676, 7683, 7724, 7737.] | i) This is not a valid Plan objection as the Plan. This Court does not have authority to override the processes by which federal or domestic governmental agencies develop opioid abatement policies. In any event, like any other interested creditor, Ms. McGaha will be entitled to be heard at the Confirmation Hearing. |

7

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| 10 | Charles Moore [ECF Nos. 7660, 7661] | a) Mr. Moore (i) asserts that the time it has taken to receive out of court settlement is excessive; (ii) requests a jury trial; and (iii) asks that the Court to "assign [him] a lawyer or give [him] time to find a lawyer." [ECF No. 7660 at 1-2.] | a) These are not valid Plan objections. In any event, like any other interested creditor, Mr. Moore will be entitled to be heard at the Confirmation Hearing. |
|   |   | b) Mr. Moore alleges that Debtors "violated due process, with 13 amendments, which are excessive, and a bias kangaroo court." [ECF No. 7661 at 1.] | b) Neither the Plan nor the proceedings in these Chapter 11 Cases have denied any party of their due process rights for the reasons discussed in the Debtors' Confirmation Brief. (See Conf. Br. ¶ 261.) And there is no evidence of judicial bias—indeed, Mr. Moore provides no basis for his assertion. |
| 11 | Diane Pike [ECF No. 7536] | a) Ms. Pike objects on grounds that the Plan "only allows less than 10% [of up to $7.4 billion] to the victims of the opioid crisis." [ECF No. 7536 at 1.] | a) As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $865 million under the Plan, and the evidence at confirmation will confirm that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (See Conf. Br. ¶¶ 13, 140.) |
| 12 | Ellen Isaacs [ECF Nos. 7972, 8084, 8085, 8088, 8089] | a) Ms. Isaacs contends that the Sacklers have "continually and systematically abused and manipulated this Court to obtain protection from criminal liability." [ECF No. 7972 at ¶ 1.] | a) This objection should be overruled. As discussed in the Debtors' Confirmation Brief, the Plan neither governs nor forecloses criminal prosecution of any of the Debtors' shareholders. (See Conf. Br. ¶¶ 256-257.) |
|   |   | b) Ms. Isaacs contends that "[t]his case has been in the wrong court," that the Sacklers must contribute more value to Shareholder Settlement Agreement, and objects to allocations under the Plan. [ECF No. 7972 at ¶¶ 2, 19, 23-24.] | b) As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $865 million under the Plan, and the evidence at confirmation will confirm that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (See Conf. Br. ¶¶ 13, 140.) Further, Ms. Isaacs has provided no basis upon which to assert that these Chapter 11 Cases are not appropriate before this Court. |

8

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | c) Ms. Isaacs contends that McKinsey & Company "is also complicit and should be criminally charged" for fraud. [ECF No. 7972 at ¶ 6.] | c) This is not a valid Plan objection. McKinsey & Company is not a debtor in these Chapter 11 Cases and nothing in the Plan forecloses criminal prosecution of any party. (*See* Conf. Br. ¶¶ 256-257.) Nor are civil claims against McKinsey & Company being released under the Plan. |
| | | d) Ms. Isaacs objects to the evidentiary requirements under the Plan because "[c]laimants struggle to obtain documentation because pharmacies and insurers often purge records after 7-10 years." [ECF No. 7972 at ¶ 20.] | d) This objection should be overruled. As discussed at greater length in the Debtors' Confirmation Brief, as opined by Debtors' expert, the trust distribution procedures for personal injury victim claimants are fair, appropriate, and reasonable. (*See* Conf. Br. ¶¶ 13-14, 195-202.) |
| | | e) Ms. Isaacs contends that all funds given to States and Attorneys General "for decades from settlements … should be clawed back and redirected to victims." [ECF No. 7972 at ¶ 22.] | e) This is not a valid Plan objection and should be overruled in any event. No claimant has yet received a distribution under the Plan. |
| | | f) Ms. Isaacs seeks a myriad of relief from the Court, including dismissal of these Chapter 11 Cases, the arrest and criminal prosecution of members of the Sackler Families, the seizure of assets from the Sackler Families, the halting of Purdue's pharmaceutical production, and investigation of the Court and professionals participating in these proceedings. [ECF Nos. 7972 at 5-6; 8084 at 17; 8085 at 6; 8088 at 2-3; 8089 at 3-7.]. | f) This objection should be overruled. As discussed in the Debtors' Confirmation Brief, the Plan neither governs nor forecloses criminal prosecution of any of the Debtors' shareholders. (*See* Conf. Br. ¶¶ 256-257.) Further, as addressed in the Debtors' Confirmation Brief, dismissal of these Chapter 11 Cases is not appropriate, and Ms. Isaacs has provided no basis for such relief. (*See id.* ¶¶ 246-250.) Ms. Isaacs remaining arguments are not proper Plan objections and should be rejected |
| | | g) Ms. Isaacs requests an immediate hearing. [ECF Nos. 8088 at 1, 5; 8089 at 2.] | g) This is not a valid Plan objection. In any event, like any other interested creditor, Ms. Isaacs will be entitled to be heard at the Confirmation Hearing. |

9

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| 13 | Jacqueline Torres Herrera<br><br>[ECF No. 7919] | a) Ms. Torres Herrera requests that she be allowed to preserve her right to file a late claim and/or object to confirmation of the Plan and retain the right to pursue legal action against those responsible. [ECF No. 7919 at 1.] | a) To the extent Ms. Herrera presents an objection to the Plan, it should be overruled. First, like any other interested creditor, Ms. Herrera will be entitled to be heard at the Confirmation Hearing. Second, as discussed in the Debtors' Confirmation Brief, any claims released as to the Shareholder Released Parties are done so with consent of the releasing party. Ms. Herrera's claims will not be released against those parties unless she has voluntarily opted in to the Plan's third-party settlements and releases. (*See* Conf. Br. ¶ 15.) |
| 14 | James Harry Rand<br><br>[ECF No. 7367] | a) Mr. Rand objects to the trust distribution procedures for Personal Injury Victims under the Plan to the extent they require disclosure of medical records. [ECF No. 7367 at 1.] | a) This objection should be overruled because the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $865 million under the Plan, and the evidence at confirmation will confirm that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (*See* Conf. Br. ¶¶ 13, 140.) |
| 15 | Estate of Jane A. Redwood<br><br>[ECF Nos. 7865, 7943, 7944, 7945, 7946, 7947, 7997, 8078, 8132] | a) The Estate of Jane A. Redwood objects to the improper classification of its non-personal injury claim which has foreclosed its ability to vote. [*See generally* ECF No. 7865; 7944; 7945; 7947; 7997; 8078] | a) The Plan satisfies the classification requirements of section 1122 for the reasons discussed at length in the Debtors' Confirmation Brief. (*See* Conf. Br. ¶¶ 146-148.). |
|   |   | b) The Estate of Jane A. Redwood contends that the UCC's failure to classify its claim constitutes a breach of their fiduciary responsibilities. [ECF Nos. 7865 at 2; 7943 at 1.] | b) The Plan satisfies the classification requirements of section 1122 for the reasons discussed at length in the Debtors' Confirmation Brief. (*See* Conf. Br. ¶¶ 146-148.). |
|   |   | c) The Estate of Jane A. Redwood objects to the 2025 Plan's handling of Economic Damage Claims from the 2021 Plan. [ECF Nos. 7946 at 1; 8132 at 3-5.] | c) To the extent that Mr. Redwood objects to classification of economic damage claims, as detailed in the Greenspan Expert Report, the classification is fair and reasonable. (JX-3331 (Greenspan Expert Report) 32-33; Conf. Br. ¶ 254 n.62.) |

10

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| 16 | Joseph Kenney [ECF No. 7535] | a) Mr. Kenney partially styles his submission as an objection to the Plan, though his submission seeks acceptance of claims on behalf of himself and various family members. [*See generally* ECF No. 7535.] | a) This is not a valid Plan objection. To the extent Mr. Kenney purports to object to the Plan, that objection should be overruled. |
| 17 | Laureen Ferrante [ECF Nos. 7420, 7604] | a) Ms. Ferrante argues that the Plan "continues to support the one-sided conspiracy [sic] implemented by the Sackler family and once again fails to acknowledge the damage and help those affected by their greed need for a true chance at recovery." [ECF No. 7420 at 1.] | a) This objection should be overruled. To the extent that this is an objection to adequacy of the amount of the Shareholder Settlement Agreement, partially effectuated under the Plan, it should be overruled. The global settlement confers substantial benefits on creditors, primarily by facilitating the transfer of billions of dollars in value in respect of their claims, both for the purpose of opioid crisis abatement and to compensate qualifying personal injury claimants, and is in the best interest of the estates. (*See* Conf. Br. ¶¶ 72-143.) |
| | | b) Ms. Ferrante asserts that "the Sackler family should be before a criminal court no matter how much money they agree to give up." [ECF No. 7420 at 1.] | b) This objection should be overruled. The Shareholder Releases do not release any criminal claims or provide any criminal immunity. (*See* Conf. Br. ¶¶ 256-257.) |
| | | c) Ms. Ferrante objects to the Plan on grounds that it "giv[es] the States most of the money for them to make the same decisions to utilize the same failed treatments, in the same way." [ECF No. 7604] | c) This objection should be overruled. Insofar as Ms. Ferrante objects to how certain governmental creditors will use their funds received under the Plan or settlement, that is not governed by the Plan and is not a valid Plan objection. To the extent Ms. Ferrante objects to the Plan's treatment of creditors or allocation of funds, she has not identified any relevant provision of the Bankruptcy Code for which the Plan violates—indeed, there is none. |
| 18 | Laurie Danielle Pitts-Tillman | a) Ms. Pitts-Tillman submitted a "conditional vote" on plan; requesting "accounting, disclosure of settlement instruments, [and] trust records | a) This is a reservation of rights and therefore not a Plan objection. Indeed, Ms. Pitts-Tillman was provided all materials submitted to voting |

11

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | [Emailed] | necessary for informed consent" and stating "If I do not receive a cure or response to my conditions before the voting/objection deadline, I will be forced to file a formal objection to confirmation of the plan and reserve all rights accordingly." | creditors through solicitation and subsequently voted in favor of the Plan. |
| 19 | Maria Ecke [ECF Nos. 7289, 7645, 7849, 7915, 7961, 8064, 8096, 8097, 8131] | a) Ms. Ecke requests that Debtors' counsel "confirm who the creditors are in [her] case" and advise whether "the claim for the estate of David Jonathan Ecke has been accepted." Ms. Ecke likewise appears to request information related to the *Endo* litigation. [ECF No. 7289 at 1.] | a) This is not a valid Plan objection. |
| | | b) The Debtors construe Ms. Ecke's submissions as objecting to the trust distribution procedures for Personal Injury Victims under the Plan to the extent they require HIPAA authorization. [ECF Nos. 7645 at 1; 7849 at 1.] | b) As described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $865 million under the Plan, and the evidence at confirmation will confirm that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (*See* Conf. Br. ¶¶ 13, 140.) |
| | | c) Ms. Ecke objects to confirmation of the Plan without stating a basis for such objection. [ECF No. 7915 at 1.] | c) As Ms. Ecke provides no basis for her objection to the Plan, this Plan objection should be overruled. |
| | | d) Ms. Ecke objects to the release of claims against the Debtors and certain other non-debtor parties. [ECF No. 7961 at 1.] | d) This objection should be overruled. First, insofar as Ms. Ecke objects to the discharge of her claims against the Debtors, she states no basis upon which the Plan in improper. For the reasons discussed in the Debtors' Confirmation Brief, the Plan fully complies with the Bankruptcy Code. (*See* Conf. Br. ¶¶ 144-243.) Second, insofar as Ms. Ecke identifies non-debtor parties who are Shareholder Released Parties, Ms. Ecke's claims will not be released against those parties unless she has voluntarily opted in to the Plan's Third-Party Releases. (*See* Conf. Br. ¶ 15.) |

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | e) Ms. Ecke requests an emergency hearing to halt the confirmation. [ECF No. 8064.] | e) This is not a valid Plan objection nor does Ms. Ecke provide a valid basis for such relief. In any event, like any other interested creditor, Ms. Ecke will be entitled to be heard at the Confirmation Hearing. |
| | | f) Ms. Ecke claims that she is being denied constitutional due process under the 5th and 14th Amendments. [ECF Nos. 8096 at 1; 8097 at 1.] | f) Neither the Plan nor the proceedings in these Chapter 11 Cases have denied any party of their due process rights for the reasons discussed in the Debtors' Confirmation Brief. (*See* Conf. Br. ¶ 261.) Indeed, Ms. Ecke provides no basis for her assertion. |
| | | g) Ms. Ecke requests an emergency dismissal of the Chapter 11 Cases. [ECF No. 8131.] | g) As addressed in the Debtors' Confirmation Brief, dismissal of these Chapter 11 Cases is not appropriate, and Ms. Isaacs has provided no basis for such relief. (*See* Conf. Br. ¶¶ 246-250.) |
| 20 | Mary S. Jannotta [ECF No. 7909] | a) Ms. Jannotta contends the Plan violates the good faith requirement of 11 U.S.C. § 1129(a)(3) because NewCo cannot be considered a public benefit company. [ECF No. 7909 at 2.] | a) This objection should be overruled because Ms. Jannotta provides no basis to assert that NewCo (Knoa) will not operate as a public benefit company or entity with a similar mission. The Plan otherwise satisfies the requirements of section 1129(a)(3) for the reasons discussed in the Debtors' Confirmation Brief. (*See* Conf. Br. ¶ 188-191.) |
| | | b) Ms. Jannotta contends the Plan is "fundamental[ly] defect[ive]" because it is "designed to perpetuate profit-driven strategies under the guise of public health." [ECF No. 7909 at 2, 4.] Plan funds should be directed to alternate charities. *Id.* | b) To the extent that this is an objection to confirmation of the Plan, no legal basis is provided, and the objection should be overruled. |
| | | c) Ms. Jannotta contends The Plan is coercive and forces a release of victims' claims against the Sacklers. [ECF No. 7909 at 3, 4.] | c) This objection should be overruled. As discussed in the Debtors' Confirmation Brief, any claims released as to the Shareholder Released Parties are done so with consent of the releasing party. Ms. Jannotta's claims will not be released against those parties unless she has voluntarily opted in to the Plan's Third-Party Releases. (*See* Conf. Br. ¶ 15.) |

13

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | d) Ms. Jannotta contends The Plan has an inequitable distribution scheme in violation of the "fair and equitable" requirement of 11 U.S.C. § 1129(b) because governmental entities do not have to prove individualized harm, but personal injury victims have a much more limited recoveries from a capped trust. [ECF No. 7909 at 3, 4.] | d) This objection should be overruled. For the reasons discussed in the Debtors' Confirmation Brief, the Plan complies with section 1129(b) to the extent it is required to. (*See* Conf. Br. ¶¶ 236-242.) This objection should otherwise be overruled because the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (*See* Conf. Br. ¶¶ 13, 140.) |
| 21 | Pamala Bartz Halashack [ECF 7530] | a) Ms. Halashack objects to "Purdue Pharma being allowed to go bankrupt and not compensating the individuals whose lives became hellish by claiming OxyContin is not addicting and can be dosed every 8 hours for pain." [ECF No. 7530 at 1.] | a) This objection should be overruled. To the extent Ms. Halashack objects to the treatment of holders of Non-NAS PI Claims, more than 99% of the voting creditors in that class have voted in favor of the Plan, and described in the Plan, the PI Trust, which will make distributions to qualified personal injury victims, will receive approximately $865 million under the Plan, and the evidence at confirmation will confirm that the Plan is in the best interests of all creditors in light of the significant risks that individual creditors recover nothing or virtually nothing. (*See* Conf. Br. ¶¶ 13, 140.) |
| 22 | Rosemary Walker [ECF Nos. 7678, 7723, 7771, 7855, 7863, 7885, 8098, 8099, 8108, 8113, 8115] | a) Ms. Walker requests that "Dan Rayfield [the AG of Oregon] be[] put on my case to handle." [ECF No. 7678 at 2.] | a) This is not a valid Plan objection. |
| | | b) Ms. Walker argues that Purdue is ineligible for bankruptcy because Purdue is not an "honest debtor." [ECF No. 7723 at 2.] | b) This objection should be overruled. As discussed at greater length in the Debtors' Confirmation Brief, the Plan is a product of good faith (s*ee* Conf. Br. ¶¶ 188-191) and the Debtors are entitled to a discharge of their debt (s*ee* Conf. Br. ¶ 254). |
| | | c) Ms. Walker requests sanctions claiming evidence of bad faith. [ECF Nos. 7771; 7855 at 3.] | c) This is not a valid Plan objection. |

14

| # | Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|---|
| | | d) Ms. Walker requests that she have her claims officially acknowledged. [ECF Nos. 7885 at 1; 8099 at 1; 8108 at 3; 8113 at 2.] | d) This is not a valid Plan objection. To the extent Ms. Walker seeks to have her late proofs of claim accepted, her request will be considered after confirmation, alongside other late claims motions. |
| | | e) Ms. Walker requests certain relief, including a hearing with the Master Disbursement Trust and halting the Confirmation proceedings due to the U.S. Trustee being furloughed. [ECF Nos. 8098 at 1; 8099 at 1; 8108 at 1.] | e) This is not a valid Plan objection and should be overruled in any event. As discussed at greater length in the Debtors' Confirmation Brief, now is not the appropriate time for individual claim adjudication. (*See* Conf. Br. ¶ 260.) Like all nonconsenting creditors, Ms. Walker's claim will be subject to a fair and reasonable claim resolution process. (*See* Conf. Br. ¶¶ 13, 140.) Further, as is evident in the history of these Cases, the U.S. Trustee has been active in these proceedings, as has the UCC, a constituency owing fiduciary duties to PI Claimants like Ms. Walker. |
| 23 | Tammey Clark [ECF No. 7519] | a) At the time of Disclosure Statement approval, Ms. Clark reserved her right to participate "later" in these proceedings. [ECF No. 7519 at 2.] | a) This is not a Plan objection. In any event, like any other interested creditor, Ms. Clark will be entitled to be heard at the Confirmation Hearing. |
| 24 | Vitaly Pinkusov [ECF Nos. 7597, 7755] | a) Mr. Pinkusov asserts his belief that "there should be a criminal prosecution of all individuals who have been involved in the deceitful marketing of OxyContin." [ECF No. 7597 at 1.] | a) This is not a plan objection. The Shareholder Releases do not release any criminal claims or provide any criminal immunity. (Plan §§ 1.1 (Excluded Claim); 10.6(b); 10.7(b).) |
| | | b) Mr. Pinkusov requests that the court set aside time at the Confirmation Hearing for *pro se* claimants "to challenge the qualifications of the Expert Witnesses." [ECF No. 7755 at 3.] | b) This is not a valid Plan objection. In any event, like any other interested creditor, Mr. Pinkusov will be entitled to be heard at the Confirmation Hearing. |