# UNITED STATES BANRUPCY COURT
# SOUTHERN DISTRICT OF NEW YORK

AMANDA MORALES

*Applicant*

V.

PURDUE PHARMA L.P.,

*Respondents*

Case No. 19-23649.

**APPLICANT MOTION FOR STAY PENDING APPEAL TO VACATE PURDUE  PHARMA'S PLAN PROVISIONS THAT EXTINGUISH <u>ALL </u>OPIOID CLAIMS INCLUDING FAILURE TO  WARN OXYCONTIN INTERACTIONS ANTIDEPRESSANTS CAUSING SEROTONIN  SYNDROME WRONGFUL DEATH CLAIMS UNRELATED TO THE OPIOID CRISIS AND REMAND  WITH INSTRUCTIONS THAT SUCH CLAIMS BE  DECIDED ON THE MERITS**

Amanda Morales Pro Se

205 Calle Del Banco

Bernalillo, NM 87004

(505)318-24000

<u>ajlare356@gmail.com</u>

1

## PARTIES TO THE PROCEEDINGS

### DEFENDANTS

Individual Family Members (Richard Sackler)
Purdue Parent Entities
Purdue Holdings L.P.) PLP
Purdue Pharma Inc.
The assets, businesses and entities owned by the above  (excluding the Debtors).
Any entities or individuals to which any assets of the  above are transferred
Purdue Pharma L.P.

### Debtors' Counsel

Davis Polk & Wardwell LLP
450 Lexington Avenue New
York, NY 10017
https://www.davispolk.com
Phone: 212.450.4000 Fax:
212.701.5800
Marshall Huebner
Huebner, Marshall S.
marshall.huebner@davispolk.com

### PLANTIFF

Amanda Morales
Pro Se
205 Calle Del Banco
Bernalillo, NM 87004
ajlare356@gmail.com
(505)318-2400

Amanda Morales, Pro Se claimant in this case respectfully ask this Court to stay Modified Bench Ruling Confirmation Order entered on 11/20/2025 , pending the disposition of this appeal in district court. Plaintiff respectfully request expedited consideration of this motion.

The following factors are to be considered in determining whether a stay pending appeal is warranted:

(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

This Bankruptcy Court should grant the Plaintiffs' motion to lift the automatic stay because:

1. The Plaintiffs will be unfairly prejudiced if they cannot proceed with trial on the merits. Claims are not part of the core proceedings and should be heard in district court. Bankruptcy Court would deprive the Plaintiffs of the jury trial they requested;

2. Granting the Plaintiffs immediate relief from the automatic stay will promote judicial efficiency.

3. Lifting the stay will not disrupt the Debtor's bankruptcy case;

4. The Plaintiff believes that any debt arising from a judgment in the litigation in the Action is not dischargeable because their claims are based on willful, malicious conduct by Debtor; and fraud

5. As stated below, the Debtor has filed his bankruptcy petition in bad faith, which is an additional basis to grant immediate relief from the automatic stay.

## JURISDICTION AND VENUE

Venue for most litigation related to the bankruptcy case (including non-core proceedings) is proper in the bankruptcy court where the main bankruptcy case is pending. Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2). A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. This Bankruptcy Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 and 157(a). Venue of this Motion is proper in this district pursuant to 28 U.S.C. § 1409(a).

## RELIEF REQUESTED

Pursuant to section 362(d) of the Bankruptcy Code, the Plaintiffs seek relief from the automatic stay to continue the case of Amanda Morales v. Purdue Pharma . The automatic stay, the Plaintiff submits that she would suffer significant prejudice and that her ability to have claims decided on the merits against the Debtor would be jeopardized. Claims should be decided in district court. This case should be heard by a court willing to enforce justice otherwise it sets an example that corporations can get away with harm they have done and not just harm but loss of life is a serious

matter and deserves to be treated with fairness by a court willing to issue relief and justice.


RELEVANT BACKGROUND
The Bankruptcy Filing and the Motion


On September 15, 2019 (the "Petition Date"), each of Purdue Pharma L.P. ("Purdue Pharma" or "PPLP"), its general partner Purdue Pharma Inc. ("PPI"), and Purdue Pharma's wholly owned direct and indirect subsidiaries (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors' chapter 11 cases are being jointly administered under the caption In re Purdue Pharma L.P., Case No. 19-23649 (the "Chapter 11 Cases"). The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

U.S. Supreme Court's ruling in Harrington v. Purdue Pharm. L.P., 603 U.S. 204 (2024) that the Bankruptcy Code does not authorize non-consensual releases of claims held by non-debtors against other non-debtors (i.e., third-party releases). The Third-Party Releases in the Plan will only bind those creditors who elect to grant them. Those creditors will receive additional distributions in exchange for their release of direct claims against the Sackler Parties and other released parties. The Plan does not release or compromise any direct claims against the Sackler Parties or any other non-Debtors held by creditors that elect not to grant third-party releases.

On or immediately after the Effective Date, Purdue Pharma will be dissolved and cease to exist. The Debtors' businesses will be transferred to a newly created company, Knoa Pharma LLC ("NewCo"), which will be wholly owned by an independent entity intended to be treated as an exempt organization under IRC section 501(c)(4) (the "Foundation"). No federal, state, or local governmental entity will own the equity of NewCo or the Foundation. NewCo will be a private company, will be required to operate in a responsible manner (i.e., as the Debtors have been required to since the Petition Date), and will be subject to the same laws and regulations as any other U.S. pharmaceutical company. NewCo will, however, be historic and unique because it will be governed by a charter that will require that it deploy its assets to address the *opioid crisis*.

In the Supreme Court's recent Purdue Pharma decision, the Court held in a 5-4 ruling that the Bankruptcy Code does not authorize any non-consensual third-party releases. This court's ruling "Discharges are generally reserved for debtors who place their assets in the bankruptcy estate, and even then, certain types of claims (like fraud or willful injury) cannot be discharged. The Sacklers, as non-debtors, seek greater protection than the Code typically allows for actual debtors, without meeting the Code's usual requirements."

After the Supreme Court's ruling in this case "The Bankruptcy Code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants"

New Purdue pharma plan clarifies that these releases do not apply to criminal actions, government enforcement, or future misconduct (not related to opioids). Everything else

— nearly all opioid-related civil claims — are released and barred. The Sackler family members receive immunity from civil lawsuits tied to Purdue's opioid

marketing and sales. This does not absolve them of criminal liability, but it blocks further civil claims once the settlement is finalized. The release protects the Sacklers from civil lawsuits but was only granted after they agreed to pay billions. Independent lawsuits against the Sacklers are largely barred, though criminal accountability remains theoretically possible. Judge Sean Lane approved the restructured plan, which includes the Sacklers' payments and the liability release. More than 99% of voting creditors supported the plan, showing broad consensus. Also, the preliminary injunction was extended at the confirmation hearing until the effective date and Purdue doesn't know when that will be so these repeated extensions have pretty much created a permanent injunction protecting Sacklers who are non-debtors from any litigation.

I filed a motion to object to discharge debts, a motion to pierce the corporate veil and include Richard Sackler as a debtor and a motion to object to extend the preliminary injunction. All were denied at the confirmation hearing. I was told my claims would be decided on the merits for years and that never happened and my claims aren't related to the opioid crisis or addiction.

My father died due to Purdue Pharma failure to warn about interactions between OxyContin and antidepressants amitriptyline and citalopram caused serotonin syndrome and were fatal for my father. In 2010 when he died OxyContin didn't warn about this danger but in 2016 the black box warning label was changed. The cause of his death cannot be disputed; the autopsy report says combined action of his medications caused his death.


## CORE AND NON-CORE ISSUES

In bankruptcy, the distinction between **core and non-core issues** (or "proceedings") determines which court has the authority to issue a final decision and the extent of the bankruptcy judge's power. Core proceedings are fundamental to the bankruptcy

process itself and can only exist within a bankruptcy case. Bankruptcy judges have the authority to hear these matters and enter final, binding judgments.

In this case the goal is all about the opioid crisis,  addiction and the abatement program. That's what the majority of money is going towards, most of the money will be used for the opioid crisis. My claims are unrelated to the opioid crisis. My claims should be heard in district court because bankruptcy court is not the proper venue for personal injury or wrongful death claims.

Non-core proceedings are matters that are "related to" the bankruptcy case because they affect the debtor's estate, but they are based on non-bankruptcy law (often state law) and could have existed outside of the bankruptcy filing. In these cases, the bankruptcy judge can hear the issue but generally must submit proposed findings and conclusions to a federal district court judge for a final order, unless all parties consent to the bankruptcy court issuing the final judgment. This distinction is crucial as it affects procedural rules, the path to a final judgment, where a case is litigated, and the right to appeal.

The significant similarity is that a non-core proceeding involves an issue that must be decided before the bankruptcy case can conclude. The bankruptcy judge's decision cannot become a final judgment in a non-core proceeding unless all parties consent (agree). If the parties don't consent, the bankruptcy judge submits proposed findings of fact and conclusions to the district court. Judge Sean Lane won't do that, my due process rights have been violated several times and he's made his intensions very clear and that's to prevent any claims from being decided on the merits, no exceptions regardless of the laws, fairness or justice. He's a bankruptcy judge he is well aware that wrongful death claims aren't within his jurisdiction to have final say on or no say on and just deny without ever inquiring about any facts or allowing it to be heard in his court. He couldn't  possibly ever submit proposed findings to district court because he has said several times no claims will be decided on the merits and

*See generally Land-O-Sun Dairies, Inc. v. Fla. Supermarkets, Inc. (In re Finevest Foods, Inc.)*, 143 B.R. 964 (Bankr. M.D. Fla. 1992) (28 U.S.C. § 157 accords with Art. III of the Constitution); *see Gruntz v. County of Los Angeles*, 202 F.3d 1074, 1080 (9th Cir. 2000)(separation of core and non-core proceedings "creates a distinction between those judicial acts deriving from the plenary Article I bankruptcy power and those subject to general Article III federal court jurisdiction"); *Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272 (2d Cir. 1996) (distinction between core and non-core proceedings is intended to deal with problem of vesting Art. III judicial power in Art. I judges); *Hudgins v. Shah (In re Sys. Eng'g & Energy Mgmt. Assocs., Inc.)*, 252 B.R. 635 (Bankr. E.D. Va. 2000) (discussing importance of "public rights" nature of bankruptcy proceedings to designation of "core" proceedings); *Noonan v. Cellu Tissue Corp. (In re Palmer Trucking Co.)*, 201 B.R. 9 (Bankr. D. Mass. 1996). Although the bankruptcy court is not an Article III court, its jurisdiction is limited by the constitutional standing requirement. *United States v. Amoskeag Bank Shares, Inc. (In re Amoskeag Bank Shares, Inc.)*, 239 B.R. 653, 657 n.3 (D.N.H. 1998).

Modified Bench Ruling Docket No.8270 page 57 judge Sean Lane stated " Objections Related to Classification of Claims

Other objections relate to classification of claims under the Plan.  Certain pro se objectors oppose the Plan's classification scheme, arguing that their claims are fundamentally different from others based on the nature of the injury or the damages sought.  See, e.g., Morales Obj. [ECF. No. 7355 at 8-11]; Redwood Obj. [ECF Nos. 7865, 7944, 7945, 7947, 7997, 8078].  But these distinctions do not meaningfully alter the priority or legal bases of these claims.  Moreover, any attempt to divide the creditor body in the granular way suggested by objectors would result in an unworkably complex classification scheme"

Judge Sean Lane sees no difference between core and non-core issues as it "do not meaningfully alter the priority or legal basis of these claims" and dividing core and

non-core issues would be "unworkably complex" Well it might be complex for Judge Sean Lane because tort litigation isn't something he has authority or expertise to decide on.

## A. Equitable Powers Section 105(a)

The U.S. Supreme Court's rulings limiting the exercise of a bankruptcy court's equitable powers under section 105(a), including: (i) *Law v. Siegel*, 571 U.S. 415, 421 (2014), where the court cautioned that section 105(a) may not be used to "contravene specific statutory provisions"; and (ii) *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464-69 (2017), in which the Court elaborated that a bankruptcy court's equitable discretion is limited not only by the express language of the Bankruptcy Code but also by any reasonable inferences that can be made based upon that language regarding lawmakers' intent.

This court and the debtors have prevented me from due process without justification for years. Congress and the Supreme Court had no intention of allowing corporate discharge if fraud has been committed. Congress didn't intend individual debtors only to be accountable for fraudulent activities. The Supreme Court specifically ruled on this case and the ruling was clear and everyone involved in this case disregarded the ruling by using language exceptions to justify a plan that isn't very different from the one the Supreme Court denied.

The Debtor's Estate Will Not Be Prejudiced By The Relief Requested

The Debtor's estate will not be prejudiced if the stay is lifted. First, permitting the Action to proceed will not harm the Debtor's estate or its creditors because the Plaintiffs' claims against the Debtor's estate must be resolved, and the Bankruptcy Court will retain control Over all the other claims allowance process in the Bankruptcy Case. See In re Robbins, 964 F.2d at 346-47 (concluding that lifting the

automatic stay would not harm the debtor's estate because the bankruptcy court would control matters relating to allowance of claims), In re Wheeler Group, Inc., 75 B.R. 200 (Bankr. S.D. Ohio 1987) ("The liquidation of claims is a necessary step in bringing any bankruptcy case to a conclusion.").

 Second, even if the Debtor will incur litigation costs in connection with the Action, the cost of defending the Action is not a sufficient basis for denying relief from the stay. See Walker v. Wilde (In re Walker), 927 F.2d 1138, 1143 (10th Cir. 1991); In re Santa Clara County Fair Association, Inc., 180 B.R. 564, 566 (9th Cir. BAP 1995).

## Other Factors Weigh In Favor Of Granting The Plaintiffs Immediate Relief From The Automatic Stay

 The Action Relates To Torts Committed In Violation Of state laws and consumer protection laws. Courts generally consider whether the issues in the litigation involve issues of state law such that the expertise of the bankruptcy court is unnecessary. See In re Robbins, 964 F.2d at 345.

## Not a Final Decision under 28 US. C. § 158(d) (1)

Under 28 U.S.C. § 158(d)(1)," in a bankruptcy appeal to the district court 8 or BAP,19 "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) [by district courts] and (b) [by BAPs] of this section."  For a judgment or order to be final, it must be "one which ends the litigation on the merits and leaves nothing for the court to do but execute judgment." The collateral order exception permits appeals of otherwise non-final orders which:

(1)  finally determine claims collateral to and separable from the substance of other claims in the action; (2) cannot be reviewed along with the eventual final judgment because by then effective review will be precluded and rights

conferred will be lost, and (3) are too important to be denied review because they present a serious and unsettled question of law.

As the United States Supreme Court has explained, the "filing of a notice appeal is an event of jurisdictional significance." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982). It confers exclusive jurisdiction on the appellate court while divesting the lower court "of its control over those aspects of the case involved in the appeal." Id. The doctrine of exclusive appellate jurisdiction evolved as a judicially created doctrine designed to maintain the integrity of the appellate process. See, e.g., In re Whispering Pines Estates, Inc., 369 B.R. 752, 757 (B.A.P. 1st Cir. 2007). "This rule applies with equal force to bankruptcy cases" as it does to civil litigation. In re Transtexas Gas Corp., 303 F.3d 571, 579 (5th Cir. 2002).

At least one court, however, has declared that there exists an outer limit to a bankruptcy judge's ability to later enter a written opinion supporting his or her ruling after an appeal has been commenced. In In re Picht, 403 B.R. 707 (10th Cir. B.A.P. 2009), the bankruptcy judge confirmed the debtor's Chapter 13 plan over the lender's objection without providing any supporting findings or conclusions (written or oral) at the time of the judge's entry of the confirmation order. Three weeks after the lender appealed the confirmation order, the bankruptcy judge issued a written opinion in support of his ruling. Although the judge had expressly reserved on the confirmation hearing record his ability to later issue an opinion in support of the order if appealed, the Bankruptcy Appellate Panel (BAP), apparently perturbed by the bankruptcy judge's total failure to issue findings and conclusions as required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52(a)(1), sua spontestruck the bankruptcy judge's opinion from the appellate record, reversed the confirmation order, and remanded with directions to the bankruptcy judge to issue proper findings and conclusions. Chastising the bankruptcy judge, the panel stated: "Judges are obliged to explain the legal and factual bases for their

decisions. Parties and the public should not be left to speculate as to why a judge ruled the way she or he ruled." Id. at 714.

## PLANTIFF'S SUCCESS OF THE MERITS ON APPEAL

### ERROR OF LAW EXCPETION TO DISCHARGE DEBT OBTAINED BY FRAUD  FOR CORPORATE DEBTORS

Modified Bench Ruling 11/20/2025 docket No. 8270 page 59
" e, e.g., Morales Obj. [ECF Nos. 7818, 7819]; McGaha Obj. [ECF Nos. 7432, 7451]. But as pointed out by the Debtors, Section 523 prohibits the discharge of certain debts obtained through actual fraud for "an individual debtor"—not, as is the case here, for corporate debtors.  See 11 U.S.C. § 523(a).  Ms. Morales' invocation of Section 727 of the Bankruptcy Code is likewise inapplicable here because that provision applies to Chapter 7 bankruptcies, and this is a Chapter 11 bankruptcy. See Morales Obj. at 8-9 [ECF No. 7818]  At the confirmation hearing, Ms. Morales cited to a different statutory section in support of the same argument: 11 U.S.C. § 1192.  But Section 1192 is a provision of Subchapter V, a procedure to streamline the Chapter 11 reorganization process for certain small business debtors; as the Debtors do not qualify as a small business, Section 1192 does not apply to these cases.  See Avion Funding, L.L.C. v. GFS Indus., L.L.C. (In re GFS Indus., L.L.C.), 99 F.4th 223, 225-26 (5th Cir. 2024)."

A) **Congress, by enacting the Abuse Prevention and Consumer Protection Act of 2005, in Code §1141(d)(6), had extended [the fraud exception to discharge] to corporate debtors in chapter 11 [cases]."**

The Bankruptcy Abuse Prevention and Consumer Protection Act is a federal reform law that amended the Bankruptcy Code starting in 2005. The purpose was to reduce perceived abuse of the system, ensure that debtors who could

repay a portion of their debts would do so, and create greater accountability and disclosure requirements.

BAPCPA aimed to tighten these practices and create a more structured and transparent system. BAPCPA expanded the categories of debts that cannot be eliminated through bankruptcy. This includes more obligations related to fraud, certain luxury purchases, some cash advances, and specific consumer debts. This benefits creditors because debts tied to fraudulent conduct are harder for debtors to discharge. Creditors have stronger grounds to challenge the discharge of questionable transactions.  Recent debts are scrutinized more closely.

### B) Relevance of Section 727 to a Corporate Debtor

The third condition is key to why Section 727 becomes relevant to a corporate debtor. Section 727(a)(1) of the Bankruptcy Code explicitly states that a court shall grant a discharge *unless* "the debtor is not an individual". Therefore, any corporate or partnership debtor would automatically be denied a discharge under Section 727(a)(1) in a Chapter 7 case.

Section 1141(d) of the House amendment is derived from a comparable provision contained in the Senate amendment. However, section 1141(d)(2) of the House amendment is derived from the House bill as preferable to the Senate amendment. It is necessary for a corporation or partnership undergoing reorganization to be able to present its creditors with a fixed list of liabilities upon which the creditors or third parties can make intelligent decisions. Retaining an exception for discharge with respect to nondischargeable taxes would leave an undesirable uncertainty surrounding reorganizations that is unacceptable. Section 1141(d)(3) is derived from the Senate amendment. Section 1141(d)(4) is likewise derived from the Senate amendment.

### C) Exception in Section 1141(d)(3) where the provisions of Section 727 become relevant to a Chapter 11 corporate debtor.

There is a specific exception in Section 1141(d)(3) where the provisions of Section 727 become relevant to a Chapter 11 case: a corporation will be denied a Chapter 11 discharge if. The plan provides for the **liquidation** of all or substantially all of the

corporation's property. The corporation does not engage in business after the plan is carried out. The corporation would be denied a discharge under Section 727(a) *if* the case had been filed under Chapter 7.

Purdue Pharma is undergoing a **liquidation as part of a confirmed Chapter 11 bankruptcy reorganization plan**. The current Purdue Pharma will cease to exist as a private, for-profit entity. Substantially all of its assets and operations will be used to *create* Knoa Pharma, an *independent company* owned by a newly created foundation. If the Chapter 11 plan is a **liquidating plan** (the corporation sells all or substantially all assets and does not continue in business after the plan is confirmed), it does not receive a discharge for any remaining debts.

Section 1141(d)(3) is designed to prevent trafficking in corporate shells and bankrupt partnerships. *See* H.R. Rep. No. 95-595, 384 (1977); S. Rep. No. 95-989, 130 (1978); *Borsdorf v. Fairchild Aircraft Corp. (In re Fairchild Aircraft Corp.)*, 128 B.R. 976, 982 (Bankr. W.D. Tex. 1991) (stating that "by freighting the [corporate] shell with all the claims, so that any claims or portions of claims not paid by the liquidation will attach to the shell ... [the corporate shell becomes] much less attractive for use in starting up another enterprise"); *Diego v. Zamost (In re Zamost)*, 7 B.R. 859 (Bankr. S.D. Cal. 1980) (explaining that, once a corporation's assets are liquidated, it is not necessary to provide it with a discharge); *accord In re AB Liquidation Corp.*, 2006 WL 6810956, *6 (B.A.P. 9th Cir. Dec. 22, 2006). The prohibition of a discharge for liquidating business entities was not the rule under the former Bankruptcy Act of 1898, as amended. *See* Collier on Bankruptcy ("Collier") ¶ 727(a)(1)[3] (16th ed. 2023) (citing H.R. Rep. No. 95-595, 384 (1977) ("[Section 727(a)(1)] is a change from present law, under which corporations and partnerships may be discharged in liquidation cases, though they rarely are"); S. Rep. No. 95-989, 130 (1978))

To prevent "trafficking in corporate shells," the Bankruptcy Code prohibits any discharge of corporate or partnership debts if the debtor is not an "individual" and, in a chapter 11 case, if the debtor proposes a liquidating chapter 11 plan contemplating the cessation of the debtor's business following confirmation.

The U.S. Bankruptcy Court for the District of Delaware recently addressed this prohibition in *In re Kabbage Inc.*, No. 22-10951 (Bankr. D. Del. Mar. 15, 2023). In an unpublished letter ruling, the court concluded that a plan provision permanently enjoining third parties from suing the debtors, their estates, or a court-appointed "wind-down officer" following confirmation could not be confirmed because it was tantamount to a prohibited discharge of the debts of a liquidating corporation. However, instead of simply denying confirmation, the court exercised its broad equitable powers to confirm the plan, as amended to provide for merely temporary injunctive relief until such time that the debtors' assets had been liquidated.

## §727. Discharge

a) The court shall grant the debtor a discharge, unless-

(1) the debtor is not an individual;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act

8/30/2021 Purdue emailed me claiming they wanted to discuss my settlement proposal and were interested in settling but this was in bad faith. They didn't actually want to settle they did it to prevent me from appealing. I thought they were serious and agreed to the meeting with them but they did this to ensure I didn't have time to appeal. The appeal deadline was the following day so I had no time to appeal.

## §727. Discharge (6) the debtor has refused, in the case-

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

Purdue knows what the Supreme Court's ruling intent was and this court as well as the debtors defy the ruling, word games based off technicalities but essentially is no different than the prior plan. Allowing claimants to only Purdue criminal charges against the Sacklers isn't justice. Criminal cases invokes a higher standard of proof than is required in a purely civil context. As it once read, the only level of proof required for §1104 was "clear and convincing evidence." In contrast, a finding of criminal liability must be made "beyond a reasonable doubt."

The grounds for denying a discharge under Section 727(a) generally relate to debtor misconduct, such as: Transferring or concealing property with intent to defraud creditors. Concealing or destroying financial records. The Sacklers did in fact transfer money for themselves to defraud creditors of the government and individual creditors to avoid and limt accountability in a very calculated strategic move that shows intent of their actions. Making a false oath or account in the bankruptcy case. Failing to explain a loss of assets satisfactorily.

In essence, Section 727 interacts with Chapter 11 to prevent a corporation from liquidating its assets, ceasing business operations, and still receiving a discharge of debts while having committed acts that would bar a discharge in a standard liquidation case Under Section 727(a)(2), a business that files for bankruptcy under Chapter 7 or 11 is not eligible for discharge if the business "with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition." This is what is commonly referred to as a "fraudulent transfer."

### D) 11 U.S. Code § 1141 - Effect of confirmation

(6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt—

(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or **owed to a person** as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute;

*Field v. Mans*, 516 U.S. 59, 69 (1995), which it interpreted as establishing the general principle that creditors are protected by 523(a)(2) only if they rely on the misrepresentations at issue and are damaged by such reliance.

Generally, a corporate debtor can receive a discharge upon confirmation of a Chapter 11 plan. However, Section 1141(d)(3) of the US Bankruptcy Code prevents this discharge if all three of the following conditions are met:

- The plan provides for the liquidation of all or substantially all of the property of the estate.

- The debtor does not engage in business after the plan's consummation.

- The debtor would be denied a discharge under Section 727(a) *if* the case were a Chapter 7 liquidation case.

    All three of the conditions have been met. Purdue is no longer in business and all of Purdue's assets and operations will be used to *create* Knoa Pharma, an *independent company* owned by a newly created foundation. Purdue would be denied a discharge under section 727(a) *if* case were a chapter 7 liquidation case.


## IMPROPER EXTENSION OF PRELIMINARY INJUNCTION

To meet the standard for granting a preliminary injunction, the party seeking the injunction must show (1) there is a likelihood of success on the merits of the case, and (2) the movant will likely suffer irreparable loss unless the injunction is issued. Prior to *Purdue Pharma*, the "likelihood of success" element could be met by showing that the court was likely to confirm a plan including non-consensual releases. The temporary injunction would therefore be appropriate to preserve the status quo until the plan, which would function as a permanent injunction, was confirmed. Now, because permanent, non-consensual third-party release cannot be premised on the likelihood of confirming a plan that includes such a release.

    The probability a party will win the case based on its legal arguments, not just procedural hopes. Debtors can't argue they'll likely win their case *because* the court will eventually confirm a plan that includes a

prohibited release; that's circular reasoning. Now, because permanent, non-consensual third-party release are prohibited, "likelihood of success on the merits" clearly not met. Extending a preliminary injunction during negotiating a settlement is reasonable but negotiating is over the agreements have already been made. If it was in good faith than follow through with what was agreed on but separate lawsuits against the Sacklers are exactly that a separate issue and lawsuits take time so the excuse that it was be overwhelmingly costly to the point that it would effect the Purdue settlement doesn't make sense its like you either intend of fulfilling your obligations with that and have the funds to do it or you don't if there's  possibility of anyone filing any lawsuits against the Sackler family members so the question is if it's in good faith if it has that kind of stipulation attached to it? Lawsuits take time and it wouldn't effect a large amount of money because that could years in court and if the legal fees are costly well that's a choice, they choose to hire the most expensive lawyers that's their preference and they don't have to do that but they make the choice to pay a lot in legal fees. They are not forced to hire the most expensive lawyers to represent them. Their actions are the reason they are in court and when people do harm and wrong to others that's part of the consequences of their actions is paying the price so to really complain that it's costly well again their choices are the reason for all this. The Purdue settlement is a separate issue that they agreed to fund and pay and separate liability is not excused, if they want to use the excuse it would drain the estates well then maybe they will have to end up filing for bankruptcy themselves but everyone knows they have the money they just don't want to move it from the off shore accounts where it's safe and once more that's a choice. All of these choices and yet everyone else suffers because they expect to always get their way? They don't deserve to get their way and avoid accountability.

**The Bankruptcy Plan Improperly Extinguishes Claims Beyond the Opioid Crisis**

Chapter 11 discharge does not authorize blanket immunity for all corporate misconduct. See 11 U.S.C. § 524(e); In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008). Nondebtor releases: Permissible only in rare cases essential to reorganization. In re Metromedia Fiber Network, Inc., 416 F.3d 136 (2d Cir. 2005). Bankruptcy courts lack authority to approve nonconsensual third party releases. Harrington v. Purdue Pharma L.P., 602 U.S. ___ (2024). Extinguishing individualized wrongful death claims denies victims notice and opportunity to be heard. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950). A bankruptcy judge can hear the evidence in a non-core proceeding, but without the parties' consent to a final judgment, the judge's role is limited to submitting proposed findings of fact and conclusions of law to the district court. A district judge then conducts a de novo review (a fresh look at the contested issues) and enters the final order or judgment.

CONFIRMATION PLAN FILED 11/14/2025 [ ECF No. ] PAGE 169 Releases by Debtors of Holders of Claims.

"As of the Effective Date, all Holders of PI Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Causes of Action for any Claim in connection with, or arising out of, (i) the Debtors, as such Entities existed prior to or after the Petition Date (including the Debtors' Opioid-Related Activities, manufacture, marketing and sale of Products, interaction with regulators concerning Opioid-Related Activities or Products, and involvement in the subject matter of the Pending Opioid Actions, and the past, present or future use or misuse of any opioid by

a Releasing Party), (ii)  the Estates or (iii) the Chapter 11 Cases, including, in
each  case, without limitation, any act, conduct, omission, event,  transaction,
occurrence, injury, damage, or continuing  condition in any way relating to
the foregoing."

## Failure-to-Warn Claims Are Distinct and Must Be  Decided on the Merits

Purdue had a duty to warn of drug interactions. See  Wyeth v. Levine, 555
U.S. 555 (2009). These claims arise  from inadequate labeling, not deceptive
opioid marketing.  Wrongful death damages differ from public opioid
abatement funds. See In re Zale Corp., 62 F.3d 746 (5th  Cir. 1995). Jury trial
rights protected under 28 U.S.C. §  157(b)(5).

## Federal Drug Labeling Law and Due Process Require  Adjudication

FDA regulations: Require disclosure of clinically  significant drug
interactions. 21 C.F.R. § 201.57(c)(6)(i).  Parallel state law duties: Not
preempted; manufacturers  can strengthen warnings via FDA's CBE process.
Wyeth  v. Levine, 555 U.S. at 570–71. Due process: Victims must  have notice
and opportunity to litigate. Mullane, 339 U.S.  at 314.Supreme Court
confirmation: Bankruptcy cannot  nullify safety obligations. Harrington v.
Purdue Pharma  L.P., 602 U.S. ___ (2024).

## Public Policy Demands Accountability for Drug Safety

Consumer protection: Tort law complements federal  regulation, uncovering
hazards and incentivizing  disclosure. Wyeth v. Levine, 555 U.S. at 578–79.
Equity  and fairness, families harmed by inadequate warnings  deserve
adjudication. In re Zale Corp., 62 F.3d at 758.  Deterrence: Preserving failure-
to-warn claims deters  future misconduct and ensures accountability.

Congress plays a critical role in demanding accountability. For example, bills like the proposed "FDA Accountability for Public Safety Act" aim to establish additional procedures and oversight for specific types of drugs, such as opioids, requiring the FDA Commissioner to report to Congress if an application is approved against an advisory committee's recommendation. The Government Accountability Office (GAO) also conducts audits and reports on challenges faced by the FDA, such as overseeing the global drug supply chain. Public policy emphasizes the need for transparency. Making clinical trial data and safety information publicly available ensures that companies are accountable to the public and allows the academic community to independently evaluate the evidence.

A business affected with a public interest is subject to regulation by the police power of the state to protect and to promote the general welfare of the community which it serves. Such a designation does not arise from the fact that the business is large, or that the public receives a benefit or enjoyment from its operation. The enterprise, as a result of its integral participation in the life of the community or by the privilege it has been granted by the state to serve the needs of the public, is regulated more strictly by the state than other businesses

In the case of *R (on the application of Chaudhuri) v General Medical Council* the High Court considered whether a public body can revisit and remake a decision it has previously made in circumstances where the public body argued that it did not have the power to do so. Although the case concerns a decision made by the General Medical Council (GMC) in relation to a complaint regarding a doctor's fitness to practise, the broad corrective principle which it outlines will be relevant to any

public body that makes a decision which is later found to have been based on a fundamental error of fact. The judge outlined what he referred to as a 'broad corrective principle' under which public bodies have the inherent or implied power themselves to revisit and revoke any decision vitiated by a fundamental mistake as to the underlying facts upon which the decision in question was predicated

## IRREPARABLE HARM

The harms already been done and it's too late and it is unavoidable. I was 16 when my dad died and it's going to be 16 years that he's been gone in January 2026, for as long as I had him is the same amount of time I've waited for any kind of justice of resolution and the waiting part exceeds the time I had with him.

My parents had me when they were young, my mom was 18 and she went into labor with me on my dads 21st birthday and the next day I was born. I grew up very poor but my family made a lot of sacrifices for me and sent me to private school from kindergarten to eighth grade. I graduated high school a year early, my dad died January 2010 and I graduated in May 2010. After his death I didn't excel academically and my life forever changed. I didn't do well in college because I didn't have my dad's financial support or emotional support. He was going to buy me a car for school and help pay for some of my books and classes but I didn't have him anymore. I struggled and the path I was on changed because I couldn't do well in school, it was too much for me. If you were to have told ambitious 15 year old me that I would clean houses for a living I wouldn't have believed you because the goals I had looked completely different. I wouldn't have thought that I wouldn't have continued with my education. The disappointing part was that I didn't get a college degree like I had always had been determined to accomplish. My dad's death was life changing and I was still a child and I needed him. I couldn't achieve the goals I wanted because emotionally and financially I was broken and couldn't do it. I was a

depressed teenager and suffered because I missed out on a lot of things and became withdrawn. I can't go back in time and that's something I can never get back and the harms already been done and it's ongoing. I continue to wait until I can afford to bury my dads ashes and give him a proper burial. I was selfish and didn't want to bury him but I'm at the point now where I know it would give me peace and other people could visit him and I've kept him so long I cant be selfish forever. It's part of the healing process but I'm stuck waiting for any meaningful justice and accountability. The harm has been done, it's irreversible. His death could have been prevented failure to warn about serotonin syndrome from interactions from OxyContin and antidepressants was put on the warning label 6 years too late in 2016.

## CONCLUSION

Just because a debtor *hopes* to confirm a plan with a broad release for third parties, because those releases are now generally prohibited if not consented to; instead, "likelihood of success" must rest on real legal grounds, not just the possibility of a future confirmed plan with such a release. For the foregoing reasons, Plantiff respectfully request that this Court stay it's November 20, 2025 Modified Bench Ruling Confirmation Plan pending Plantiff's appeal to district court.

Respectfully submitted,

Amanda Morales
205 Calle Del Banco
Bernallilo, NM 87004
(505)318-3400
ajlare356@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 13, 2025 the foregoing Plantiff's Emergency
Motion for Stay Pending Appeal was emailed to Defendants James Mcclammy
james.mcclammy@davispolk.com

Marshall Huebner marshall.huebner@davispolk.com

Townes, Esther C. <esther.townes@davispolk.com>