AKIN GUMP STRAUSS HAUER & FELD LLP
Arik Preis
Sara L. Brauner
Katherine Porter
Theodore James Salwen
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
apreis@akingump.com
sbrauner@akingump.com
kporter@akingump.com
jsalwen@akingump.com

COLE SCHOTZ P.C.
500 Delaware Avenue, Suite 200
Wilmington, Delaware 19801
Tel: (302) 652-3131
Fax: (302) 652-3117
Justin R. Alberto, Esq. (admitted *pro hac vice*)
jalberto@coleschotz.com

*Counsel to the Official Committee of Unsecured Creditors of Purdue Pharma L.P.,* et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (SHL)** |
| **Debtors.**[1] | **Jointly Administered** |

**STATEMENT OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS IN SUPPORT OF THE MOTION OF DEBTORS
PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 9019 AUTHORIZING AND
APPROVING SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND
MCKINSEY & COMPANY, INC.**

The Official Committee of Unsecured Creditors (the "Official Committee") appointed in

the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this statement (the "Statement") in support of the *Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlement Agreement Between the Debtors and McKinsey & Company, Inc.* [ECF No. 9016] (the "9019 Motion").[2]  In support of this Statement, the Official Committee respectfully states as follows.

## STATEMENT

1.      The Official Committee supports the Debtors' entry into the Settlement Agreement with McKinsey & Company Inc. ("McKinsey").  Throughout the Chapter 11 Cases, the Official Committee led an extensive investigation into claims and causes of action that could be asserted for the benefit of the Debtors' estates, against McKinsey—the Debtors' long-time advisor involved in developing some of the Debtors' programs to boost opioid sales, including after the opioid epidemic had taken hold.  Based on that work, the Official Committee drafted a complaint against McKinsey, which the Official Committee was prepared to prosecute to the extent it obtained standing to do so.

2.      Ultimately, however, after months of negotiations and several contentious rounds of mediation, the Debtors, the Official Committee, and other key stakeholders reached an agreement with McKinsey that is set forth in the Settlement Agreement and is supported by groups representing the interests of key case parties.  While the Official Committee believes the claims and causes of action that could be asserted against McKinsey for the benefit of the Debtors' estates are meritorious and highly valuable, litigation would take years to prosecute to completion and the ultimate outcome of any litigation is always somewhat uncertain.  In contrast, the benefits of the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the 9019 Motion or the Eighteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [ECF No. 8233] (as modified, amended or supplemented from time to time, the "Plan"), as applicable.

2

Settlement Agreement are substantial and certain to provide near-term relief to the Debtors' creditors. Accordingly, the Official Committee believes that the settlement with McKinsey is in the best interests of the Debtors' estates and creditors due to the material and immediate benefit it provides to the Debtors' creditors and in light of McKinsey's anticipated defenses and the delays to recovery that would result from pursuing litigation.

3. The Official Committee respectfully submits that the Settlement Agreement easily satisfies the requirements for approval under Bankruptcy Rule 9019 and should be approved.[3]

## I. The Official Committee's Investigation and Draft Complaint

4. The Official Committee led the investigation into claims against McKinsey on behalf of the Debtors' estates. In that regard, the Official Committee analyzed extensive documentation collected from multiple parties throughout the Chapter 11 Cases related to the Debtors' work with McKinsey to boost opioid sales. The Official Committee also sought and obtained additional documents from the Debtors that were specifically related to work that McKinsey had performed. In addition, the Official Committee analyzed claims asserted against McKinsey by other parties, reviewed documents related to McKinsey that were posted on the public opioid-documents database, and scrutinized McKinsey's admissions in connection with its 2024 deferred prosecution agreement with the Department of Justice. In connection with the same,

---

[3] Courts consider whether a proposed settlement should be approved under Bankruptcy Rule 9019 by looking to (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconveniences, and delay; (3) the paramount interest of the creditors; (4) whether other parties in interest affirmatively support the proposed settlement; (5) the nature and breadth of releases to be obtained by officers and directors; (6) whether the competency and experience of counsel support the settlement; and (7) the extent to which the settlement is the product of arm's-length bargaining. *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (approval of a settlement or compromise is appropriate when the compromise is fair, equitable and in the best interests of a debtor's estate).

the Official Committee negotiated tolling agreements throughout the Chapter 11 Cases in order to ensure that the value of the claims against McKinsey was preserved.

5.      Ultimately, following its extensive investigation, the Official Committee prepared a complaint against McKinsey that asserted causes of action that included, among others, claims for aiding and abetting breach of fiduciary duty, breach of contract, indemnification, and fraudulent transfer. The Official Committee was ready to proceed with litigation against McKinsey and prepared a motion to seek standing to prosecute the claims on behalf of the Debtors' estates.

6.      The Official Committee's analysis also included an examination of defenses McKinsey would likely raise in response to any claims asserted on behalf of the Debtors' estates, as well as analysis of recent relevant litigation.[4] Of particular note, McKinsey is currently defending against similar claims asserted by the litigation trustee appointed in the bankruptcy of Endo International plc and its related entities ("*Endo*"), relating to McKinsey's work for Endo to increase opioid sales. In September of 2025, the Bankruptcy Court for the Southern District of New York granted a significant portion of McKinsey's motion to dismiss the claims asserted by the Endo trustee. Among other things, the court in that case found that, as pled, many of the claims against McKinsey would be barred by New York's *Wagoner* doctrine and the *in pari delicto* defense and dismissed the constructive fraudulent transfer claim for failure to plausibly allege a lack of fair consideration or reasonably equivalent value. The indemnification claim in respect of costs Endo incurred related to opioid litigation was the only claim to survive the pleading stage.[5]

7.      The Official Committee believes that the claims against McKinsey on behalf of the Debtors' estates are strong and that the portions of the decision dismissing claims in *Endo* are

---

[4] In addition to analyzing the merits of the claims and defenses, the Official Committee also analyzed arguments that McKinsey raised on other grounds.

[5] *Dundon v. McKinsey & Co., Inc.* (*In re Endo Int'l Plc*), 674 B.R. 349, 425 (Bankr. S.D.N.Y. 2025).

distinguishable.  Nevertheless, the *Endo* decision reflects certain of the risks attendant to any litigation asserting estate claims against McKinsey.

## II.    The Parties Engaged in Multiple Contentious Rounds of Mediation

8.    Starting in August 2025, the Official Committee, the Debtors, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claims (the "AHC"), the negotiating committee of State Attorneys General (the "State Negotiating Committee"), and McKinsey participated in several rounds of mediation before the Honorable Shelley C. Chapman (Ret.).  In the lead up to mediation, the Official Committee spent several months negotiating with McKinsey regarding the terms of settlement discussions between the parties.  The Official Committee also presented McKinsey with a draft of the complaint it had prepared, and continued to revise thereafter.  The mediation was prolonged and contentious.  For a long period of time, the parties remained far apart, and it appeared impossible that any agreement would be reached.  For its part, the Official Committee was prepared to end the tolling period and seek standing to litigate claims against McKinsey in light of the limited progress that was being made over a period of several months.

9.    Under the guidance of the Honorable Shelley C. Chapman (Ret.), the parties reconvened for a final round of mediation in January 2026.  In that final round, the Official Committee and other parties participated in approximately one month of difficult negotiations that finally resulted in an agreement in principle, which agreement was later memorialized in the Settlement Agreement.

### III.  The Settlement Agreement Is in the Best Interests of the Debtors' Estates

10.    Taking into account the risks and delays of litigation and based on the Official Committee's extensive work analyzing claims against McKinsey and potential defenses to those claims, the Official Committee determined to support the Settlement Agreement.

11.    Critically, the settlement with McKinsey will enable prompt and complete distributions to personal injury claimants. Specifically, the Plan gives the PI Trust, in addition to its initial $700 million distribution, a right to payment of an additional $50 million for the benefit of claimants (the "PI Trust Obligation").[6] Although this obligation is not payable out of the proceeds of the Shareholder Settlements until after the second anniversary of the Effective Date, the Plan provides that the PI Trust has a first-priority right to the proceeds of MDT Causes of Action when those proceeds are recovered, up to the $50 million amount due. Monetizing causes of action against McKinsey, which is an important MDT Cause of Action, will enable payment in full of the PI Trust Obligation—a benefit that will flow directly to the holders of PI Claims.

12.    Perhaps in recognition of the benefit that the Settlement Agreement will provide to holders of PI Claims, the 9019 Motion has received virtually no opposition. Indeed, the only response that was filed to the 9019 Motion appears to be more focused on concerns about the medical system overall and use of prescription medication generally—not an objection that the Settlement Agreement fails to meet the standard for approval under Bankruptcy Rule 9019.[7]

---

[6] Plan § 5.2(e)(iv).

[7] Specifically, only one party, Carrie McGaha, has responded to the 9019 Motion. *Response to Settlement with McKinsey & Company, Inc.* [ECF Nos. 9039, 9080, 9095]. Ms. McGaha argues that the "settlement does not resolve . . . ongoing problems" that she identifies about the medical industry and opioid marketing, as she has throughout the case. *Id.* at 3. She notes that "[i]t does not address the known risks in packaging. It does not correct the system that placed patients at risk. It does not ensure that safer practices will be implemented going forward. Instead, it closes a chapter while allowing the same conditions to continue under a different form." *Id.* She also argues that more must be required of McKinsey and directed to the PI Trust. Ms. McGaha does not address the traditional factors under Bankruptcy Rule 9019. Although the Official Committee is sympathetic to Ms. McGaha's concerns, the Debtors' settlement of estate claims against a former consultant is not the appropriate place to address the sort of policy changes Ms. McGaha

13.     The certainty of $125 million in proceeds to fund distributions to creditors—including providing funding to the initial distribution to personal injury victims under the Debtors' confirmed Plan—provides an immediate and material benefit to the Debtors' estates.

## CONCLUSION

14.     For the reasons discussed herein, the Official Committee respectfully joins in the Debtors' request that the 9019 Motion be granted.

Dated:  New York, New York
       April 28, 2026

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ *Arik Preis*
    Arik Preis
    Sara L. Brauner
    Katherine Porter
    Theodore James Salwen
    One Bryant Park
    New York, New York 10036
    Telephone: (212) 872-1000
    Facsimile: (212) 872-1002
    apreis@akingump.com
    sbrauner@akingump.com
    kporter@akingump.com
    jsalwen@akingump.com

COLE SCHOTZ P.C.

Justin R. Alberto
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com

Anthony De Leo
1325 Avenue of the Americas
19th Floor
New York, NY 10019

---

has sought throughout the Chapter 11 Cases and Ms. McGaha does not present any basis to reject a settlement that would bring substantial value to the Debtors' estates.

Telephone: (212) 752-8000
Facsimile: (212) 752-8393

*Counsel to the Official Committee of Unsecured*
*Creditors of Purdue Pharma L.P.,* et al.