**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (SHL)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DECLARATION OF JOHN S. DUBEL**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Pursuant to 28 U.S.C. § 1746, I, John S. Dubel, hereby declare as follows under penalty of perjury:

1.      I am the Chairman of the Special Committee of the Board of Directors of Purdue Pharma Inc. ("**PPI**," collectively, with its affiliated debtors, "**Purdue**" or the "**Debtors**").[1]  PPI is a New York corporation with its principal place of business in Stamford, Connecticut.  I have served as an At-Large Director of PPI since July 2, 2019, and became Chairman of the Special Committee in September 2019.

2.      I am Chief Executive Officer of Dubel & Associates, LLC, a provider of restructuring and turnaround services to underperforming companies.  I founded Dubel & Associates LLC in 1999.  I have over 40 years of experience in Board representation, turnaround management, crisis management, operational restructurings and divestments with respect to distressed companies.  I have served as an independent board member for a number of companies, including Avon Products, Inc., AIG Financial Products Corp., Terraform Labs PTE, Lts., Highland Capital Management, L.P., Alpha Media Holdings LLC, FXI Holdings, the Werner Company, and Fisker Inc.  In addition, I have served as the Chief Executive Officer of SunEdison, a renewable energy development company, Chief Executive Officer of Financial Guaranty Insurance Company (FGIC), a monoline insurance company, among others, and as a partner in Gradient Partners, L.P., a single-strategy distressed hedge fund.  I am a member of the Turnaround Management Association and the American Bankruptcy Institute.  I was conferred

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Fourteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Dkt. No. 7911] (the "**Plan**") and *Disclosure Statement for Thirteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Dkt. No. 7637] (the "**Disclosure Statement**").  Docket numbers reference docket entries in the above-captioned proceeding unless otherwise noted.

the degree of Bachelor of Business Administration by the College of William and Mary in Virginia.

3.      This Declaration constitutes my direct testimony in support of the Debtors' motion to approve their settlement (the "**McKinsey Settlement**") with McKinsey & Company, Inc. ("**McKinsey**").  My testimony is based on my personal knowledge of the facts set forth below.

**I.      The Debtors' Investigation of Potential Claims against McKinsey**

4.      On November 3, 2025, I submitted the *Declaration of John S. Dubel* as my direct testimony in support of the Debtors' Plan of Reorganization (my "**Confirmation Testimony**"). My Confirmation Testimony details the formation of the Debtors' Special Committee and the Special Committee's investigation of claims that could be pursued on behalf of the Debtors' estates.  In the interest of efficiency, I refer the Court to that testimony instead of repeating it here.

5.      The plan of reorganization that the Bankruptcy Court confirmed in September 2021 (the "**2021 Plan**") excluded several parties from the global releases to be provided under that plan.  McKinsey was one such "Excluded Party."  Beginning in September 2021, the Debtors and the UCC entered into tolling and standstill agreements of the applicable statute of limitations in order to preserve the status quo while the Debtors, the UCC, and the AHC continued to investigate and evaluate potential causes of action of the Debtors' estates against McKinsey.

6.      McKinsey remains an "Excluded Party" under the confirmed Plan of Reorganization, meaning that, in the absence of a settlement, the Debtors' potential claims against McKinsey would vest in the MDT on the Effective Date of the confirmed Plan.

2

7.     In August 2025, the Debtors, the UCC, the AHC, the State Negotiating Committee, on the one hand, and McKinsey, on the other, asked Judge Shelley C. Chapman (Ret.) to act as mediator in their ongoing discussions to resolve the Debtors' claims against McKinsey.  Between August 2025 and February 2026, the parties held a number of in-person and Zoom mediation sessions to discuss their respective litigation positions and explore settlement.

**II.     The Proposed McKinsey Settlement is in the Best Interests of the Estates**

8.     On February 5, 2026, I, and other members of the Purdue Board, determined that the McKinsey Settlement is in the best interest of the Debtors' Estates and their creditors.

9.     I and other members of the Board determined that the McKinsey Settlement is fair, equitable, and reasonable.  That conclusion is the result of careful consideration and deliberation.  It is informed by more than six years of the Special Committee's own investigation of claims against, and the risks of litigating the Debtors' potential claims against, the Sackler Families (which share a common factual basis with many of the potential claims against McKinsey), and the Board's consideration of settlements that McKinsey had entered into with state attorneys general, the United States Department of Justice, and a class of political subdivisions.  The Board's decision is also informed by the fact that the UCC, the AHC, and the State Negotiating Committee—the parties with an economic interest in these claims, which would vest in the MDT if they were not settled—all support the McKinsey Settlement.

10.     I believe that the benefits of the McKinsey Settlement outweigh the potential yet uncertain benefits of pursuing litigation against McKinsey, and that the settlement reflects a reasoned judgment as to the trade-off between a guaranteed recovery and the uncertain possibility of a higher recovery through protracted litigation.

3

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2026

/s/ *John S. Dubel*
John S. Dubel

4