SDNY BANKRUPTCY COURT

RE: PURDUE PHARMA LP, 19-23649
RE: ROSEMARY HELEN ZIZIROS WALKER CASE #23CV33935
CLAIM #634787

MOTION FOR IMMEDIATE STAY FAIRNESS & CONSISTENCY

Judge lane….even the not so intelligent after all in many cases was able to legally analyze my statement on record to understand why i asked it and the rights violations implications.

I motion for an immediate stay fairness & consistency.


Judge lane this condition in my leg on top of severe i suffer with severe back pain now leg pain pain in my hands pretty much head to toe on top of my psyche having been damaged….it is listed on the state fund workers compensation settlement they are supposed to have covered all my care all these years but alas….medicare is taxation without representation & or most all insurance is a fraud.



legally analyze '8 MS. WALKER: Well, I would like it in an amendment 9 and so that we do have -- you know, claimants do have the 10 right to revoke release. 11 THE COURT: All right. All right

This is a very short exchange, but legally it's more significant than it looks. Let's unpack it carefully.

## 1. What Ms. Walker is asking for

> "I would like it in an amendment … so that claimants do have the right to revoke release."

Legally, this is a **request to modify the plan (or related documents)** to explicitly include a **right of revocation of a release**.

In bankruptcy—especially in mass tort cases like Purdue—"releases" typically mean:

- Claimants give up the right to sue certain parties (e.g., the debtor, affiliates, third parties like the Sacklers)
- In exchange for compensation or participation in a settlement trust

Ms. Walker is asking that:

- This release **not be irrevocable**, and
- Claimants retain a **post-consent right to withdraw ("revoke")** that release

That's a **major legal issue**, because:

- Most confirmed plans rely on **finality**
- Releases are usually structured to be **binding once opted into or not opted out of**
- Allowing revocation could destabilize the settlement structure

---

## 2. The legal significance of "amendment"

By saying "put it in an amendment," she is:

- Not just objecting
- But proposing a **specific plan modification**

Under bankruptcy law:

- Material plan changes generally require **formal amendment procedures**, notice, and sometimes re-solicitation of votes
- Courts cannot casually insert new substantive rights without procedural compliance

So this is effectively:
👉 A request to **rewrite claimant rights under the plan**

---

## 3. The right to revoke a release — why it matters

Her request touches on several legal doctrines:

### A. Due process

She is implicitly arguing:

- Claimants should not be permanently bound without the ability to reconsider
- Especially in a complex, high-stakes settlement

### B. Contract principles

Releases function like contracts:

- Typically **irrevocable once accepted**, unless:
    - Fraud
    - Mistake
    - Lack of informed consent

She is asking for something beyond standard contract law:
👉 A built-in **cooling-off or rescission right**

### C. Bankruptcy finality

This conflicts with:

- The need for **finality of confirmed plans**
- Reliance interests of settling parties

---

## 4. The Court's response: "All right. All right."

This response is **procedurally neutral but meaningful**.

It likely indicates:

- The Court **acknowledged the request**
- But did **not rule on it**

It does **not mean**:

- The Court agreed
- The amendment will be adopted

Instead, it suggests:

- The issue is being **noted for the record**
- Possibly deferred for later consideration or briefing

---

## 5. Strategic/legal implication

This moment can be framed as:

👉 **Ms. Walker formally raising a structural defect in the plan:**

- That claimants lack a revocation right
- And that this should be cured through amendment

If later (as you mentioned in your broader question) a **deadline like March 1, 2026** was imposed, this exchange could be used to argue:

- The Court and parties were **on notice** of this issue
- The issue concerned **claimant consent and release validity**
- Any later characterization that she "changed the plan" may actually reflect:
    - A continuation of this **same core objection**, not a new theory

---

## 6. Bottom line

Legally, this exchange shows:

- A **clear, on-the-record request** to:
    - Modify the plan
    - Add a **revocation right for releases**
- The Court **acknowledged but did not decide** the issue
- The issue goes to:
    - **Validity of consent**
    - **Fairness of releases**
    - **Structural integrity of the plan**

---

If you want, I can connect this exact statement to the November 12–18, 2025 transcripts and show whether the Court or Davis Polk & Wardwell framed this later as a "plan change," or something else—that's where the argument gets much stronger.

Next …..

This exchange is much more revealing than it looks. It captures the exact moment where your issue (revocation of releases) gets reframed by the Court and counsel into something procedurally heavier—what they call a "plan change."

Let's break it down carefully.

---

# 1. What the Court is signaling before the key line

> "we've been peeling the layers… it's an important issue… useful information on the record"

This tells you three important legal things:

## A. The issue is substantive, not trivial

The Court is explicitly acknowledging that:

- This is not a side argument
- It goes to a **core structural component** of the plan

Given the surrounding context, that "important issue" is:
👉 **How claimant releases operate (including whether they can be revoked)**

---

## B. The record is being developed intentionally

"Useful information on the record" means:

- The Court is building a **reviewable appellate record**
- The discussion is not offhand—it's being preserved for legal scrutiny

That matters because:
👉 Your position is now formally part of the **evidentiary/legal record**, not an aside

---

## C. The Court is still in inquiry mode

There's no ruling yet—only acknowledgment and clarification.

---

## 2. "Mr. Walker's question spurred…" — attribution matters

"Mr. Walker's question spurred some very useful information"

This line does something subtle but important:

- It ties the **entire discussion** to a specific inquiry (your side)
- It frames the issue as something that:
    - **Originated from your questioning**
    - Led to **new clarification of plan mechanics**

👉 That's critical later when they argue consequences flowed from "your" issue.

---

## 3. The turning point: "And a new fixed deadline"

MR. HUEBNER: "And a new fixed deadline."
THE COURT: "And a new fixed deadline."

This is the procedural pivot.

### What it means legally:

The Court is recognizing that:

- The issue raised **cannot remain open-ended**
- It requires:
    - Formalization
    - Resolution within a defined timeframe

So the Court converts the discussion into:
👉 A **deadline-triggering event**

This is standard when:

- A party raises something that could require:
    - Plan modification
    - Clarification affecting rights of many parties

---

## 4. The key—and contested—statement

MR. HUEBNER: "So she changed the plan."

This is not a neutral observation. It's **advocacy**.

**What Marshall S. Huebner is doing:**

He is reframing your position as:

👉 Not an objection
👉 Not a clarification
👉 But a **plan modification initiated by you**

---

# 5. Why that characterization matters

Calling it "she changed the plan" has major legal consequences:

## A. Shifts procedural burden onto you

If you "changed the plan," then you must:

- Propose a formal amendment
- Meet deadlines (like March 1, 2026)
- Potentially satisfy:
    - Notice requirements
    - Re-solicitation standards

---

## B. Weakens your position as an objector

Instead of:

- Challenging fairness or legality

You are recast as:
👉 Someone trying to **rewrite the deal**

---

## C. Protects the plan proponents

For Davis Polk & Wardwell and others, this framing helps argue:

- The plan as proposed is valid
- Any disruption is coming from **you**, not from inherent defects

---

# 6. The Court's response—very important

Notice what the Court does **not** say.

> THE COURT: "And a new fixed deadline."

The Court:

- **Agrees about the deadline**
- **Does NOT explicitly agree** with:


  "she changed the plan"


That silence matters.

## Legally, it suggests:

- The Court accepted the **procedural consequence** (deadline)
- But did not formally adopt the **substantive characterization** (that you changed the plan)

---

# 7. Connecting this back to your Nov. 13 statement

Your earlier statement:

> "I would like it in an amendment… so claimants have the right to revoke release"

Now gets transformed in real time into:

- Court view:
  👉 "Important issue → needs clarity → requires deadline"
- Counsel's spin:
  👉 "She changed the plan"

---

## 8. The deeper legal issue underneath all of this

This entire exchange is really about one question:

👉 **Is the absence of a revocation right a defect in the plan, or is adding one a modification of the plan?**

**Your position (strong framing):**

- The plan is **defective without it**
- You are identifying a **due process problem**

**Opposing framing:**

- The plan is fine as is
- You are trying to **add a new term**

---

## 9. How to use this in argument

This transcript is powerful for you if used precisely.

**Key argument you can make:**

- The Court acknowledged:
    - The issue is **important**
    - The record needed development
- The deadline arose because:
    - The issue required **formal treatment**, not because it was improper
- The statement:

    "she changed the plan"
    was:

    - **Advocacy by counsel**, not a ruling

---

## 10. Bottom line

This moment shows:

- Your issue triggered:
    - Substantive judicial attention
    - Creation of a **fixed procedural deadline**
- Opposing counsel immediately attempted to:
    - Recharacterize your position as a **plan change**
- The Court:
    - Adopted the **deadline**
    - Did **not clearly adopt** that characterization

The ai will oooooo do my appeal next…ok wait now this…..

If a claimant has **already filed a lawsuit against the Sackler family**, the "opt-in" release works very differently than for someone who has not sued yet—but the core legal mechanism is the same: it is a **forced choice between continuing litigation and joining the settlement structure.**

Here's how it functions in practical and legal terms.

---

# 1. What changes when a lawsuit is already pending

If someone already has a pending case against the Sackler family (or related parties), they already hold:

- An active **cause of action in litigation**
- A case that is subject to:
    - dismissal, stay, or injunction once the bankruptcy plan is implemented

So the opt-in is no longer about "future rights"—it is about:

👉 **whether to abandon an active lawsuit in exchange for plan compensation**

---

# 2. What the opt-in actually does in that situation

For a pending plaintiff, opting in generally means:

## A. They agree to:

- **Dismiss or withdraw their lawsuit**
- Release all claims asserted in that case
- Release related claims (often very broadly defined)

## B. In exchange:

- They become a **participating claimant in the settlement trust**
- Their recovery is governed by:
  - the bankruptcy plan distribution system
  - not by court litigation outcomes

---

# 3. What happens if they do NOT opt in

This is where bankruptcy law becomes decisive.

Even if a lawsuit is pending:

## A. The bankruptcy automatic stay applies

Under U.S. bankruptcy law, once the debtor files (here, Purdue Pharma), most litigation is:

- **stayed (paused)** or
- effectively halted for co-debtor protections, injunctions, or plan injunctions

## B. The plan may permanently bar continuation

Once confirmed, the plan can:

- Enjoin continuation of claims against released parties (including the Sacklers, depending on the structure and appellate rulings)

So the plaintiff typically faces:

👉 Continue litigating = legally blocked or extinguished
👉 Opt in = receive settlement distribution

## 4. Why the opt-in still matters even for active lawsuits

The key legal reality is:

> The bankruptcy process can override ordinary litigation pathways.

So the opt-in is not a "nice option"—it is often:

- A **transition mechanism**
- From individual litigation → mass settlement system

Even if you already sued, the system is designed so that:

- Your lawsuit **does not proceed to judgment against released parties**
- Instead, your claim is **absorbed into the plan structure**

## 5. The legal trade being imposed

For pending claimants, the trade is:

### Option 1 — Opt in

- Dismiss lawsuit
- Accept fixed settlement process
- Get distributed compensation

### Option 2 — Do not opt in

- Keep formal claim
- But face:
    - injunctions
    - plan discharge provisions
    - inability to recover from released parties anyway

So the "choice" is often:

👉 **participate in compensation system vs. lose practical ability to litigate**

## 6. Why courts allow this structure

Courts permit it (in mass tort bankruptcies like Purdue Pharma) because:

- It centralizes thousands of lawsuits
- Prevents inconsistent judgments
- Maximizes and distributes settlement value
- Provides global resolution

But it is also controversial because it:

- Converts active litigation rights into **administrative claims**

---

## 7. Where your earlier concern fits in

Your earlier revocation issue connects directly here.

For someone with a pending lawsuit:

- They are being asked to make a **permanent procedural election**
- That election determines whether:
  - their case survives in any meaningful way

So the legal tension becomes:

👉 Is this a true voluntary settlement choice
or
👉 A structured extinguishment of litigation rights under bankruptcy authority?

---

## 8. Bottom line

For someone with a pending Sackler-related lawsuit, the opt-in:

- Requires them to **abandon active litigation**
- Converts their claim into a **bankruptcy distribution claim**
- And is enforced through bankruptcy injunction/discharge mechanisms

So it is not merely "choosing compensation"—it is:

choosing between a legally blocked lawsuit path and a controlled settlement system.

---

If you want, I can map how courts distinguish between (1) permissible claim-channeling into a trust and (2) impermissible extinguishment of non-debtor claims—that's where the Sackler release litigation becomes legally very intense.

And this….

was ms walkers opt in & ability to change her opt-in understood in this statement '24 And so the March 1 date finally is not sort of 25 like a global new election date, it's if anybody wants to Page 99 Veritext Legal Solutions 212-267-6868 www.veritext.com 516-608-2400 1 make the determination to change the election on their 2 ballot they already made. There's not going to be some new 3 solicitation. 4 THE COURT: Right. 5 MR. HUEBNER: We'll accept notices from someone 6 saying hey, you know, now that I understand things better, I 7 previously opted either in or not opted in, I would like to 8 change that. So it's a last chance to change what we 9 already did. It's not a whole new process for giving people 10 a new election deadline.'

Yes—this excerpt is actually one of the clearest parts of the record on whether Ms. Walker's opt-in (and the ability to change it) was understood procedurally.

But the answer depends on *what kind of "understood" you mean*: procedural understanding vs. personal, case-specific acknowledgment.

---

# 1. What the statement clearly establishes

Marshall S. Huebner is describing a **global procedural mechanism**:

> "if anybody wants to make the determination to change the election on their ballot they already made…"

This means:

## A. Prior opt-in/out elections already exist

- Claimants already made a binding choice ("opted in or not opted in")

## B. The March 1 date is a limited correction window

- Not a new election period
- Not a full re-vote

## C. Purpose is narrowly defined:

"a last chance to change what we already did"

So legally, the structure is:

👉 Final election → limited correction window → no new solicitation

---

# 2. Was Ms. Walker's opt-in specifically "understood" here?

**Important distinction:**

This passage does **NOT** single out Ms. Walker or her individual opt-in.

Instead, it addresses:

- **All claimants collectively**
- Anyone who already made an election decision
- A procedural system-wide correction mechanism

So:

👉 Her opt-in is included **only as part of the class of claimants**, not individually analyzed here.

---

# 3. What the Court confirmed

The Court responds:

"Right."

That matters legally because it shows:

- The Court **accepts the description of the March 1 window**
- The Court does **not dispute the limited nature of the change period**

So the Court is acknowledging:

👉 This is a **correction mechanism**, not a reopening of the entire opt-in process.

---

# 4. Key legal meaning of this structure

This exchange establishes three important procedural points:

## A. Elections are presumed final

- Once made, they are binding

## B. Modification is exceptional

- Only allowed in a narrow window

## C. No new solicitation

- Prevents pressure, re-marketing, or restructuring choices

---

# 5. What this implies about "ability to change opt-in"

Yes—but only in a **limited legal sense**:

You can change your opt-in if:

- You already made an election
- You act within the correction window (e.g., March 1)

But:

- It is not a new negotiation
- It is not a reopening of settlement terms
- It is not individualized reconsideration outside the system

## 6. What it does NOT say

This passage does NOT establish:

- A continuing right to revoke at any time
- A case-by-case reassessment of fairness
- A special rule for Ms. Walker specifically
- A substantive change to the plan structure

## 7. So was Ms. Walker's opt-in "understood"?

**Procedurally: YES**

Her opt-in status is clearly included in:

> "anybody… previously opted in or not opted in"

So she is part of the governed group.

**Individually: NO**

There is:

- No individualized analysis of her election
- No discussion of her specific circumstances
- No separate ruling about her opt-in validity

## 8. Bottom line

This transcript shows:

- Opt-in elections were treated as **final but correctable**
- The March 1 deadline was a **limited adjustment window**
- The Court understood and approved that structure generally
- Ms. Walker's opt-in was included only as part of the broader claimant population—not separately adjudicated

FOR MS WALKERS LEGAL RECORD.

rosemary helen ziziros walker 5.5.26 5:28 am

CERT OF SERVICE

I promise i have emailed davis polk, akin, paul s, edgar g, purdue pi trust