PENACHIO MALARA LLP
245 Main Street, Ste. 450
White Plains, NY 10601
(914) 946-2889
apenachio@pmlawllp.com

BY: Anne Penachio

HARRIS ST. LAURENT, LLP
1775 Pennsylvania Avenue, NW, Suite 650
Washington, D.C.
(202) 617-5971
bpollack@hs-law.com

BY: Barry Pollack, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | Chapter 11 |
| **PURDUE PHARMA L.P., et al.** | Case No. 19-23649 (SHL)<br>Jointly Administered |

TO: The Honorable Sean H. Lane
United States Bankruptcy Judge

**RESPONSE OF DR. RICHARD SACKLER AND LIN GAO TO EXPEDITED MOTION TO ENFORCE THE CONFIRMATION ORDER**

Frank S. Vellucci, Daniel S. Connolly and Rory Held, in their capacities as trustees of certain trusts in the B-Side Payment Group 1 (collectively, the "Trustees"), claim that four recent state court filings violate the Confirmation Order (Dkt. No. 8263) and seek relief on that basis. In making this claim, they ignore the provision in the final paragraph of Section 33(a) of the Confirmation Order, which expressly states that no provision of the Confirmation Order shall "be construed to affect any party's rights in the Settlement Stipulation or in the pending litigation that is the subject of the Settlement Stipulation." In addition, the Trustees ignore the explicit reservation of rights in the Master Settlement Agreement, which includes a specific reservation of rights for the Wyoming Sackler intra-family litigation and enforcement of the duties and obligations of the B-Side Family Group 1 trusts to the beneficiaries of those trusts. Further, the Trustees ignore

Section 6 of the Settlement Stipulation, which provides that, in the event of a breach each non-breaching Litigation Party "shall be entitled to exercise and seek all remedies available at law and equity with respect to such breach, including specific performance and the right to seek damages for any and all losses, liabilities, costs and expenses arising out of or related to such breach."

Each of the recently filed state court pleadings at issue relates to intra-family disputes within the Sackler family and the duties and obligations of the trustees of the B-Side Family Group 1 trusts to the beneficiaries of those trusts. None of these filings interferes with the execution of The Eighteenth Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). Indeed, the litigation of such disputes was explicitly reserved and contemplated by the Confirmation Order, the Master Settlement Agreement, and the Settlement Stipulation. There has been no violation of the Confirmation Order and the Trustees are not entitled to any relief.

**BACKGROUND**

The Master Settlement Agreement states as follows:

> Reservation of Rights. The Confirmation Order entered on November 18, 2025 and this Agreement are intended, among other things, to implement the obligations set forth in the Settlement Stipulation Dismissing Proceedings Without Prejudice attached as Exhibit A to the Joint Stipulation of Dismissal Without Prejudice filed on August 1, 2025 on the docket of the Bankruptcy Cases [D.I. 7713] ("Settlement Stipulation"). Consistent with the Confirmation Order (including without limitation paragraph 33(a) thereof, which is incorporated herein by reference), nothing in this Agreement shall extend, broaden, modify or limit any rights, defenses, claims, or positions of any of the parties to the Settlement Stipulation in the litigation that is the subject of the Settlement Stipulation. Nothing herein shall modify or limit the rights of any party under the Settlement Stipulation, nor shall any provision herein be construed to affect any party's rights under the Settlement Stipulation or in the litigation that is the subject of the Settlement Stipulation. Nothing in this Agreement shall be deemed to waive, release, modify, or otherwise affect any rights, remedies, claims, or defenses that any party may have under the Settlement Stipulation, or any rights that any party may have in connection with the litigation underlying the Settlement Stipulation. All such rights are expressly reserved. This Agreement shall not modify, amend, or supersede any provision of the Settlement Stipulation. The duties and obligations of the trustees of the B-Side Family Group 1 trusts to all beneficiaries of the B-Side Family Group 1 trusts are preserved and not waived by any provision herein; provided, however, that nothing herein shall prevent or preclude such trustees from complying in all respects with their fiduciary duties as trustees, including taking all actions necessary to comply with the B-Side Payment Group 1's payment obligations under this Agreement. Notwithstanding anything to the contrary

> herein (including the immediately preceding sentence), nothing in this Section 11.23 shall be construed or implied to excuse any party from its obligation to comply with (or affect any remedy for breach under) this Agreement and any other document delivered pursuant thereto, including the Collateral Documents.

*See* Section 11.23, p. 111. The reservation of rights specifically contemplates and does not waive disputes not resolved in the context of the bankruptcy proceedings. This includes the disputes at issue in the recent state court filings.

The four state court pleadings at issue are: 1) a motion in a Wyoming state court action, Civil Action No. 2025-CV-0019232, by Dr. Richard Sackler, Lin Gao, and their minor child against David Sackler and the Trustees of various family trusts for a remedy of a breach of the stipulation of dismissal in that action ("Breach Motion"); 2) a petition in Wyoming state court, Civil Action No. 2026-CV-0019520, seeking an accounting based on the unexplained apparent dissipation of scores of millions of dollars and the failure to make mandatory income distributions under the terms of the trust ("the Accounting Petition"); 3) a state court filing in Connecticut advising of an action by Lin Gao, individually and as guardian of her two-and-a-half year-old child, to quiet title with respect to their primary residence asserting that David Sackler has improperly induced a trust that holds that residence to transfer it to other trusts and further asserting that David Sackler and the purported trustees have taken action to sell the residence in violation of the beneficiary interests of Ms. Gao and her child under the terms of the trust ("Connecticut Title Action"); and 4) the recording of a *lis pendens* in Connecticut to note the dispute over the competing interests in the property ("*Lis Pendens*").

**ARGUMENT**

As a threshold matter, the Trustees' reliance on the Bankruptcy Court's "exclusive jurisdiction" under paragraph 33(j) of the Confirmation Order is misplaced. Paragraph 33(j) grants this Court exclusive jurisdiction over "all matters arising under, arising out of, or related to the

obligations set forth herein," referring to the Shareholder Settlement Document Undertakings in paragraph 33. The intra-family disputes at issue in the Wyoming litigation involve trust control, fiduciary misconduct, beneficiary rights, and the validity of trust decantings. Those disputes do not "arise under" or "relate to" the obligations set forth in paragraph 33 of the Confirmation Order. They are intra-family disputes over trust administration that are properly adjudicated in state courts of competent jurisdiction. Indeed, paragraph 33(a) itself confirms that nothing therein shall "be construed to affect any party's rights in the Settlement Stipulation or in the pending litigation that is the subject of the Settlement Stipulation." The Settlement Stipulation, in turn, expressly contemplates that these disputes would be resolved in the appropriate state court forum. The Confirmation Order thus affirmatively protects the very rights that Dr. Richard Sackler and Ms. Gao are exercising in the Wyoming and Connecticut actions.

As noted above, the Plan, the Master Settlement Agreement, and the Settlement Stipulation read together explicitly provide for the reservation of rights by Dr. Richard Sackler and Ms. Gao so that they can resolve intra-family disputes among the Sackler family in the appropriate forum. As discussed below, none of these actions violates the Confirmation Order, which specifically preserves the rights of Dr. Richard Sackler and Ms. Gao reserved by them in the Settlement Stipulation.

I. <u>The Breach Motion</u>

The Order Granting Joint Stipulation of Dismissal Without Prejudice (the "Wyoming Stipulation Order") in the Wyoming state court action provides that the parties will not take actions, directly or indirectly, with respect to the Wyoming litigation or any of the facts alleged or causes of action asserted in that action, until fourteen months after the Bankruptcy plan Effective Date (which occurred on May 1, 2026). In violation of the Wyoming Stipulation Order, the defendants

in that case—the very Trustees who now seek enforcement relief from this Court—have taken affirmative, irreversible steps to sell the residence located at 60 Field Point Circle, Greenwich, Connecticut ("60 FPC"), the home where Dr. Richard Sackler resides (and for which he has been paying the upkeep costs for nearly seven years), with his wife, Ms. Gao, and their minor child. Dr. Richard Sackler and Ms. Gao are imminently expecting their second child. The residence is the primary residence of Ms. Gao and the first child and will be the primary residence of the second child.

Not only does an effort to sell 60 FPC violate the Wyoming Stipulation Order, but also there is no need to sell the residence to comply with the Plan. Dr. Richard Sackler's beneficial interest in 60 FPC is pledged as security in support of the Master Settlement Agreement Settlement in this proceeding as part of a "naked pledge," which, in return for the pledge of his assets and assets in which he has an interest as security, assured Dr. Richard Sackler that his property interests would be used to fund the settlement only to the extent that other available assets had been

exhausted without fully funding the settlement. *See* Annex G to the Master Settlement Agreement.[1]

The Trustees cannot invoke the "avoidance of doubt" clause in Paragraph 6 of the Settlement Stipulation, which provides that nothing precludes the Trustees from complying with fiduciary duties, including taking actions "necessary" to satisfy settlement payment obligations, to justify the sale of 60 FPC. That clause is expressly limited to *necessity*. It does not authorize discretionary liquidation of any asset of the Trustees' choosing, particularly not a unique family residence that is itself the subject of the litigation, when other assets are available and already being liquidated to satisfy the settlement payment obligations.

There is no basis for liquidating the property at this time. Dr. Richard Sackler's interest in the proceeds from a sale, just like his interest in the property itself, would be security and available for use only as consistent with the pledge of his interests as security, *i.e.*, to be available to fund the settlement if and only if the settlement cannot otherwise be funded. In any event, Ms. Gao,

---

[1] Section 6.03 of Annex G states: Limitation on Foreclosure. Notwithstanding anything herein or in any Security Document to the contrary, following the occurrence of a Specified Breach with respect to the Applicable Payment Group other than any RSS Specified Breach, the Secured Party shall first exercise remedies against Non-RSS Collateral in order to satisfy the outstanding Secured Obligations and, only to the extent any Secured Obligations remain outstanding following exercise remedies by the Secured Party against the Non-RSS Collateral and the application of the proceeds thereof to the Secured Obligations, the Secured Party may exercise remedies against the Collateral pursuant to this Credit Support Annex, the Settlement Agreement and the Security Documents. Notwithstanding the foregoing, (i) upon the occurrence and during the continuance of any Enforcement Event not arising from a Specified Breach set forth in the immediately preceding sentence, the Secured Party may at any time exercise remedies with respect to the Collateral, and (ii) the provisions of this Section 6.03 shall not apply to any Collateral consisting of IAC Collateral, which shall remain subject to the rights and remedies of the Secured Party set forth in Section 6.01, the Settlement Agreement and the IAC Collateral Documents and the conditions specified therein.

both individually and in her capacity as guardian of her minor child, have independent interests and standing to object to the sale of the property.

More fundamentally, the Breach Action does not interfere in any way with the Plan. The Breach Action merely seeks equitable relief establishing that the defendants in the Wyoming litigation have acted in violation of the Wyoming Stipulation Order and, accordingly, asks that the stay of the Wyoming state litigation be lifted. This is precisely the type of remedy expressly contemplated by Paragraph 6 of the Settlement Stipulation, which provides that upon breach, "the nonbreaching Litigation Party shall be entitled to exercise and seek all remedies available at law and equity with respect to such breach, including specific performance and the right to seek damages for any and all losses, liabilities, costs and expenses arising out of or related to such breach."

Neither a ruling that the defendants in the Wyoming litigation have violated the Wyoming Stipulation Order nor the lifting of the Wyoming stay precludes or impedes funding of the bankruptcy settlement. Neither ruling providing equitable relief would dissipate *any* asset, much less any asset that the Plan or the Master Settlement Agreement envisions would or could currently be used to fund that settlement. The Trustees cannot credibly seek sanctions in this Court for conduct that the Settlement Stipulation itself expressly authorizes.

II. <u>The Accounting Action</u>

The Accounting Action, by definition, cannot interfere with the Plan. It simply asks the Trustee of the various Sackler family trusts to comply with their fiduciary obligations—obligations that are expressly preserved by the Master Settlement Agreement. Section 11.23 of the Master Settlement Agreement states that "[t]he duties and obligations of the trustees of the B-Side Family Group 1 trusts to all beneficiaries of the B-Side Family Group 1 trusts are preserved and not waived

by any provision herein." An accounting that demonstrates whether trust assets have been inappropriately dissipated and remedies for any breach of fiduciary duties and waste of trust assets can only ensure that assets that might otherwise be available to fund the bankruptcy settlement have not been squandered.

Nor would the payment of *mandatory* income distributions by the trust interfere with the Plan. These payments are required to be made to Dr. Richard Sackler pursuant to the terms of the trusts. They are included in his income for tax purposes, yet he has not received the mandatory income distributions, leaving him in a position that he has substantial "phantom income" and no liquidity to meet his tax obligations. Further, as discussed above, there is no basis for using assets of Dr. Richard Sackler to fund the settlement at this time. His assets are pledged as security should they be needed in the future. In any event, even if there were a basis to require Dr. Richard Sackler to use personal assets at this time to fund the settlement, which as explained above there is not, the payment of mandatory income distributions to him would mean the funds were available to pay legitimate expenses and to fund the settlement. The payment of these distributions is not only required by the terms of the trust, but also compliance with this requirement would not, and could not possibly, interfere with the Plan.

## III. The Connecticut Title Action

There is an on-going family dispute between David Sackler and Dr. Richard Sackler. Dr. Richard Sackler contends that David Sackler, and those acting in concert with him, fraudulently coerced him to surrender fiduciary control over family trusts and through the unlawful exercise of a power of appointment, unauthorized trust decantings, and self-dealing have improperly transferred 60 FPC to a different trust and have taken steps to sell it, as part of a vindictive, bad faith effort to subordinate Dr. Richard Sackler's interests to those of David Sackler. Ms. Gao and

her minor child have suffered collateral damage from this effort. They have brought an action to quiet title on 60 FPC to assert their own beneficial interest in the home, their primary residence, independent of Dr. Richard Sackler's interest in that property.

The claim by the Trustees that that the Connecticut Title Action interferes with the Plan is based on two false premises. First, it is based on the premise that because Dr. Richard Sackler has an interest in the property, it can presently be liquidated (ahead of all other assets available for liquidation to fund the settlement) and used (ahead of all other available assets) to fund the settlement. Second, it is based on the premise that Dr. Richard Sackler is the only one who has an interest in the property and therefore neither Ms. Gao nor her minor child deserve to be heard with respect to their own independent interests. Neither premise is correct.

Resolving a dispute over who has legitimate title to the property does not interfere with the Plan. Dr. Richard Sackler's interest in the property is pledged as security, as part of the "naked pledge," and will be available if and when it is needed to fund the settlement, regardless of the outcome of the Connecticut Title Action. There is no basis to claim that the personal home of Dr. Richard Sackler, Ms. Gao, and their minor child must be liquidated to satisfy the Plan when billions of dollars in other available assets could satisfy the Plan first. Instead, the choice to liquidate the home is not a financial necessity but a strategic choice by David Sackler and trustees acting in concert with him to put David Sackler's interests above Dr. Richard Sackler's interest and those of Ms. Gao and their minor child.

Ms. Gao reserved her rights under the Plan, the Master Settlement, and Settlement Stipulation. Ms. Gao, in her individual capacity, has a right to have the dispute resolved and her interest in the property honored. Finally, there can be no argument that Ms. Gao's minor child has given up any of his rights. Ms. Gao, as his guardian, is plainly authorized to file an action on his

behalf. Ms. Gao, individually and on behalf of her minor child, and soon to be born child, have every right to pursue as a right reserved to them under the Plan and Confirmation Order.

IV. The *Lis Pendens*

The *Lis Pendens*, like any *lis pendens*, merely puts the public on notice of the existence of a dispute relating to the title of a property. As set forth above, there is a good faith dispute relating to the 60 FPC. The Trustees cannot possibly be advocating the position that the property should be sold to an unwitting buyer without disclosing to that buyer the existence of a dispute over the title to the property. Such a sale would be fraudulent.

If the Connecticut Court resolves the Connecticut Title Action in favor of David Sackler and against Ms. Gao and her minor child, the *Lis Pendens* will promptly be withdrawn. To the extent that, at that time, the sale of the property is proper under the Plan, the Master Settlement Agreement, and the Settlement Stipulation, it can be sold. If, on the other hand, the Connecticut Title Action is meritorious, the propriety of the sale of the property pursuant to the Plan, the Master Settlement Agreement, and the Settlement Stipulation can be assessed in light of the revised ownership. There is no basis for liquidating the property before the dispute over its title is resolved, much less for failing to disclose the existence of the dispute.

**CONCLUSION**

All parties in the bankruptcy proceeding were well aware when the Master Settlement Agreement was executed that there are intra-family disputes among the Sacklers. This is precisely why each of the key documents executed to effectuate the settlement contain an explicit reservation of rights. The inclusion of such rights in these documents was explicitly envisioned in Section 33(a) of the Confirmation Order. This Court properly determined that its role was to ensure that the Sackler Family as a whole participated in making assets available to fund the settlement.

Conversely, as the Court properly determined, it was not, and is not, this Court's role to referee intra-family disputes. Rather, this is the role of the various state courts that have jurisdiction over those disputes. The litigation of these disputes does not interfere with the Plan; indeed, it was also explicitly envisioned by the Plan. For the foregoing reasons, Dr. Richard Sackler and Lin Gao respectfully request that this Court deny the Trustees' Motion in its entirety, deny the Trustees' request for legal fees and sanctions, and grant such other and further relief as this Court deems just and proper.

Dated: White Plains, NY
May 18, 2026

Respectfully submitted,

/s/ Anne Penachio

Anne Penachio
Penachio Malara LLP
245 Main Street
Suite 450
White Plains, NY 10601
914-946-2889

Barry J. Pollack
HARRIS ST. LAURENT, LLP
1775 Pennsylvania Avenue, NW, Suite 650
Washington, D.C.
(202) 617-5971
bpollack@hs-law.com