UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (SHL) |
| Debtors. [1] | (Jointly Administered) |

## ORDER GRANTING UNOPPOSED LATE CLAIM MOTIONS

Upon the motions of Don W. Hardin [Dkt. No. 3897], Wayne B. Anderson [Dkt. No. 4520], Seung Han [Dkt. No. 4888], Roy Howard Murry [Dkt. No. 4889], Edward N. Whitman [Dkt. No. 5095], Richard Paiva [Dkt. No. 5269], Willard J. Hall [Dkt. No. 5859], Travis Funke [Dkt. No. 7507], Travis Stewart [Dkt. No. 7625], British Moss [Dkt. No. 7643], Eddie M. Vargas, Sr. [Dkt. No. 7694], Michael Walker [Dkt. No. 7792], and Michael C. Stevens [Dkt. No. 8446], (the "**Unopposed Late Claim Motions**") seeking leave to have their person injury proofs of claim (the "**Unopposed Late Claims**") deemed timely filed notwithstanding that the Unopposed Late Claims were not filed before the extended general bar date for claims to be filed in these chapter 11 cases (the "**Extended General Bar Date**");[2] and the Court having jurisdiction to consider the matters raised in the Unopposed Late Claim Motions pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and

---

[1] The Debtors, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Eighteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [Dkt. No. 8233].

consideration of the Unopposed Late Claim Motions and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and, after due and proper notice of the Unopposed Late Claim Motions, there being no objections to the requested relief; and the Plan Administration Trust having consented to the relief sought in the Unopposed Late Claim Motions; and, after due deliberation and for the reasons set forth on the record of the hearing on the Unopposed Late Claim Motions held on May 20, 2026, the court having determined pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) that the movants have established that the Unopposed Late Claim Motions satisfy the excusable neglect standard such that the requested relief should be granted, and good and sufficient cause appearing,

**IT IS HEREBY ORDERED THAT**:

1. The Unopposed Late Claim Motions are granted as set forth therein.

2. The Unopposed Late Claim Motions will be treated as timely filed, and the Plan Administration Trust will not object to the Unopposed Late Claims based on their not having been filed by the Extended General Bar Date. All other potential objections to the Unopposed Late Claims are expressly reserved. **<u>For the avoidance of doubt, each movant is permitted to seek compensation on account of their claims from the PI Trust pursuant to the Purdue PI Trust Distribution Procedures for Non-NAS PI Channeled Claims, which are attached as Exhibit A to this Order[3] and must meet the substantive requirements therein in order to do so.</u>**

---

[3] These procedures were originally filed as Exhibit R to the *Notice of Filing of Second Plan Supplement Pursuant to the Thirteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [Dkt. No. 7877 at 929–40].

3. Except as expressly set forth in this Order, nothing contained herein shall be an admission or waiver of the substantive or procedural rights, remedies, claims, or defenses of any of the parties in these chapter 11 cases, whether at law or equity.

4. The relief provided for herein applies only to the Unopposed Late Claims, and nothing in this Order or the agreement of the parties shall in any way be construed as applying to any other late claim motions, as to which all rights are reserved.

5. The Plan Administration Trust is authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

6. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: June 5, 2026
White Plains, New York

*/s/ Sean H. Lane*
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Non-NAS Personal Injury Trust Procedures**

## EXHIBIT R

**Non-NAS PI TDP**

## PURDUE PI TRUST DISTRIBUTION PROCEDURES
## FOR NON-NAS PI CHANNELED CLAIMS

### § 1.    APPLICABILITY AND SUBMISSION INSTRUCTIONS.

These trust distribution procedures (the "**Non-NAS PI TDP**")[1] set forth the manner in which Non-NAS PI Channeled Claims become eligible for payments from, and shall be discharged by, the PI Trust.[2]

Pursuant to the Plan and the Master TDP, all Non-NAS PI Channeled Claims (as defined in the Plan), including all Non-NAS PI Fully Channeled Claims and Non-NAS PI Channeled Estate Sub-Claims, shall be channeled to, and liability therefor shall be assumed by, the PI Trust as of the Effective Date. As used herein, "**Non-NAS PI Fully Channeled Claims**" shall mean all Non-NAS PI Channeled Claims whose respective Holders consent to the Third-Party Releases through electing to opt in to the Third-Party Releases on their respective Ballot on or before the Voting Deadline,[3] which include (i) such Non-NAS PI Channeled Claims against any Debtor for alleged opioid-related personal injury or other similar opioid-related Causes of Action against any Debtor, and (ii) all Released Claims or Shareholder Released Claims held by Holders of such Non-NAS PI Channeled Claims that are for alleged opioid-related personal injury or other similar opioid-related Causes of Action, in each case, that arose prior to the Petition Date and are not NAS PI Channeled Claims, Third-Party Payor Channeled Claims, or Healthcare Provider Channeled Claims, or held by a Domestic Governmental Entity.

Pursuant to the Plan and the Master TDP, Non-NAS PI Channeled Claims whose respective Holders do not consent to the Third-Party Releases through electing to opt in to the Third-Party Releases on their respective Ballot on or before the Voting Deadline are referred to herein as "**Non-NAS PI Partially Channeled Claims**" to account for (i) the portion of such Claims that are Released Claims or Shareholder Released Direct Claims that such Holders did not consent to release, which shall not be channeled to the PI Trust (and as to which liability shall not be assumed by the PI Trust) as of the Effective Date (the "**Non-NAS PI Non-Channeled Direct Sub-Claims**") and (ii) the portion of such Claims against any Debtor for alleged opioid-related personal injury or other similar opioid-related Causes of Action against any Debtor that arose prior to the Petition Date and are not NAS PI Channeled Claims, Third-Party Payor Channeled Claims, or Healthcare Provider Channeled Claims, or held by a Domestic Governmental Entity, which shall be channeled to the PI Trust (and as to which liability shall be assumed by the PI Trust) as of the Effective Date (together, the "**Non-NAS PI Channeled Estate Sub-Claims**").  Non-NAS PI Fully Channeled Claims and Non-NAS PI Channeled Estate Sub-Claims shall be administered and resolved pursuant to this Non-NAS PI TDP and satisfied solely from the PI Trust Non-NAS Fund or the Class 10(b) Non-Participating Claims Reserves, as applicable, as described in this Non-NAS PI TDP and in the PI Trust Agreement, as applicable.

---

[1]  Capitalized terms used but not defined in this Non-NAS PI TDP shall have the meanings ascribed to such terms in the Thirteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors (as modified, amended, or supplemented from time to time, the "**Plan**") [ECF No. 7636].

[2]  The Non-NAS PI TDP set forth herein shall apply in the same manner to any Sub-Qualified Settlement Fund established in connection with the PI Trust.

[3]  If for any reason the Bankruptcy Court determines that any of the opt-in elections for granting the Third-Party Releases recorded on a Master Ballot for Class 10(b) Non-NAS PI Claims are not valid, the Claims Administrator or the PI Trustee (each as defined below), as applicable, will establish a mechanism for obtaining confirmation from the Holders of those Non-NAS PI Claims that are listed on such Master Ballot that such Holders had in fact elected to grant the Third-Party Releases so that such Holders can continue to be treated in this Non-NAS PI TDP as holding Non-NAS PI Fully Channeled Claims.

Pursuant to the terms of this Non-NAS PI TDP, Allowed Non-NAS PI Channeled Claims shall either be Qualified[4] or Deficient,[5] as applicable, and, in either case, shall be liquidated to determine the respective gross amount of such Claims (an "**Award**").

Holders of Qualified Non-NAS PI Fully Channeled Claims shall be entitled to one hundred percent (100%) of their respective Awards, subject to the PI Trust Deductions and Holdbacks described below, in accordance with this Non-NAS PI TDP. Deficient Non-NAS PI Channeled Claims that are not Substantiated under this Non-NAS PI TDP (and for which the Deficiency is not cured in accordance with this Non-NAS PI TDP) shall not receive an Award pursuant to Section 6(a)-(c) hereof. Pursuant to the terms of this Non-NAS PI TDP, all Non-NAS PI Partially Channeled Claims shall be "Non-Participating"[6] and shall be liquidated to determine what the respective Award would have been had such Claim been a Non-NAS PI Fully Channeled Claim.  Holders of Non-NAS PI Partially Channeled Claims that are Disallowed by a Final Order shall receive no Award on account of such Claims from the Debtors or the PI Trust.  With respect to Non-Participating Non-NAS PI Partially Channeled Claims that would otherwise be Substantiated, (i) each Individual Direct Claim Holdback Amount[7] portion shall be withheld from funding the PI Trust by the Shareholder Released Parties pursuant to the Plan and (ii) each Individual Deficient Claim Holdback Amount[8] portion shall be deposited into the Class 10(b) Non-Participating Claims Reserves subject to the PI Trust Deductions and Holdbacks described below. Upon Allowance of any Non-Participating Non-NAS PI Partially Channeled Claim, such Claim shall either be Qualified or Deficient, as applicable, and, in either case, shall be liquidated to determine the respective Award for such Claim.

**ANY HOLDER OF A NON-NAS PI CHANNELED CLAIM WHO DOES NOT CONSENT TO VOLUNTARILY RELEASE THE SHAREHOLDER RELEASED PARTIES SHALL NOT RECEIVE ITS INDIVIDUAL DIRECT CLAIM HOLDBACK AMOUNT (I.E., 22.1% OF WHAT SUCH HOLDER'S AWARD WOULD HAVE BEEN ON THE EFFECTIVE DATE IF ITS NON-NAS PI CHANNELED CLAIM WERE SUBSTANTIATED AND ALLOWED) FROM THE PI TRUST AS DESCRIBED HEREIN.**

An Award for a Non-NAS PI Fully Channeled Claim liquidated under this Non-NAS PI TDP shall be a gross number subject to the following deductions and holdbacks (the "**Fully Channeled PI Trust**

---

[4]   "**Qualified**" with respect to a Non-NAS PI Channeled Claim refers to a Claim that is Substantiated and entitled to receive an Award under this Non-NAS PI TDP.

[5]   "**Deficient**" or "**Deficiency**" with respect to a Non-NAS PI Channeled Claim refers to a Non-NAS PI Channeled Claim (i) that does not satisfy the requirements of §§ 3-6 of this Non-NAS PI TDP, or (ii) for which a Deficiency was not timely cured under § 7 of this Non-NAS PI TDP.

[6]   "**Non-Participating**" with respect to a Non-NAS PI Channeled Claim refers to a Non-NAS PI Channeled Claim held by a Non Settling Creditor as of the Effective Date until such Non-NAS PI Channeled Claim is either: (i) Allowed in accordance with Sections 7.6 or 7.9 of the Plan, or (ii) Disallowed by Final Order.

[7]   "**Individual Direct Claim Holdback Amount**" means the holdback from funding by the Shareholder Released Parties to the PI Trust as to an individual Holder of a Substantiated Non-NAS PI Partially Channeled Claim in an amount equal to 22.1% of what such Holder's Award would be as of the Effective Date (excluding the $50 million distribution due to the PI Trust pursuant to Section 5.2(e) of the Plan and the PI Trust's reversionary interest in the Special Operating Reserve) if such Claim becomes Allowed.  For the avoidance of doubt, the overall Individual Direct Claim Holdback Amount for Non-NAS PI Partially Channeled Claims will ultimately equal 20.4% of what such Holder's Award will be upon the PI Trust's receiving (a) the $50 million distribution due to the PI Trust pursuant to Section 5.2(e) of the Plan and (b) the PI Trust's reversionary interest in the Special Operating Reserve.

[8]   "**Individual Non-Participating Claim Holdback Amount**" means the holdback and segregation by the PI Trust as to an individual Holder of a Substantiated Non-NAS PI Partially Channeled Claim in an amount equal to 77.9% of what such Holder's Award would be as of the Effective Date (excluding the $50 million distribution due to the PI Trust pursuant to Section 5.2(e) of the Plan and the PI Trust's reversionary interest in the Special Operating Reserve) if such Claim becomes Allowed.  For the avoidance of doubt, the overall Individual Non-Participating Claim Holdback Amount will ultimately equal 79.6% of what such Holder's Award will be upon the PI Trust's receiving (a) the $50 million distribution due to the PI Trust pursuant to Section 5.2(e) of the Plan and (b) the PI Trust's reversionary interest in the Special Operating Reserve.

2

**Deductions and Holdbacks**"): (A) a pro rata share of the operating expenses of the PI Trust; (B) amounts held back under the Lien Resolution Program (the "**LRP Agreement**") to settle liens held by private insurance companies against that Award, if any; (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of federal healthcare programs like Medicare, Tricare, or VA against that Award, <u>if any</u>; (D) a pro rata share of the compensation, costs, and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.9(h) of the Plan; (E) the common benefit assessment required under Section 5.9(d) of the Plan; and (F) the fees and costs of counsel to the Holder of such Non-NAS PI Channeled Claim in the Chapter 11 Cases, if any.[9]  In addition to these Fully Channeled PI Trust Deductions and Holdbacks, an Award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement, including Medicaid.

An Award for a Non-NAS PI Partially Channeled Claim liquidated under this Non-NAS PI TDP shall be a gross number subject to the following deductions and holdbacks (the "**Partially Channeled PI Trust Deductions and Holdbacks**" and together with the Fully Channeled PI Trust Deductions and Holdbacks, the "**PI Trust Deductions and Holdbacks**"): (A) a pro rata share of the operating expenses of the PI Trust; (B) amounts held back under the LRP Agreement to settle liens held by private insurance companies against that Award, if any; (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle liens of federal healthcare programs like Medicare, Tricare, or VA against that Award, <u>if any</u>; and (D) a pro rata share of the compensation, costs, and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.9(h) of the Plan.[10]  For clarity, while the Award for a Non-NAS PI Partially Channeled Claim is a gross number pursuant to this paragraph, the actual calculation of the Individual Non-Participating Claim Holdback Amount and the Individual Direct Claim Holdback Amount shall be net of these Partially Channeled PI Trust Deductions and Holdbacks.  For example, if the Award for a Substantiated Non-NAS PI Partially Channeled Claim would be $100 as of the Effective Date and the Partially Channeled PI Trust Deductions and Holdbacks pursuant to clauses (A)-(D) of this paragraph is $30, the Individual Participating Claim Holdback Amount would be $54.53 (77.9% of $70 net Award) and the Individual Direct Claim Holdback Amount would be $15.47 (22.1% of $70 net Award).

This Non-NAS PI TDP sets forth what forms and qualifying evidence each Holder of a Non-NAS PI Channeled Claim must submit in order to be eligible to receive an Award.   Specifically, the form attached hereto as **Exhibit A** (the "**Non-NAS PI Claim Form**") may be completed online, and evidence in support of a Non-NAS PI Claim can be uploaded online via the PI Trust's website: www.purduepitrust.com (the "**PI Trust Website**").  Completed Non-NAS PI Claim Forms, as well as evidence in support of a Non-NAS PI Channeled Claim, may also be submitted to the PI Trust by sending such forms and evidence by (i) e-mail to purduepitrust@purduepitrust.com, (ii) mail to Purdue PI Trust, P.O. Box 361930, Hoover, Alabama 35236-1930, or (iii) facsimile to 205-716-2364.  Law firm claim batches should be submitted via the Bulk Data and Document Submittal process outlined on the law firm tab of the PI Trust Website.

This Non-NAS PI TDP does not impair any rights under 28 U.S.C. § 157(b)(5) of a Holder of a Non-NAS PI Channeled Claim (i) whose Claim has not been disallowed by the Bankruptcy Court and (ii) who has

---

[9]   If a Holder of a Non-NAS PI Channeled Claim is represented by counsel, then such counsel, rather than the PI Trust, shall be responsible for deducting its fees and expenses from such Holder's Award.

[10]   While (E) the common benefit assessment required under Section 5.9(d) of the Plan; and (F) the fees and costs of counsel to the Holder of such Non-NAS PI Channeled Claim in the Chapter 11 Cases, if any, are used to calculate deductions and holdback amounts for Non-NAS PI Fully Channeled Claims, they are not used to calculate deductions and holdback amounts for Non-NAS Partially Channeled Claims in the first instance.  However, in the event a Non-NAS PI Partially Channeled Claim becomes Allowed, such Claim would be subject, at that time and from its recovery, to (E) the common benefit assessment required under Section 5.9(d) of the Plan; and (F) the fees and costs of counsel to the Holder of such Non-NAS PI Partially Channeled Claim in the Chapter 11 Cases, if any.

3

been determined by the Bankruptcy Court not to have consented to have such Claim administered pursuant to this Non-NAS PI TDP in accordance with the terms hereof.

## § 2.   ALLOCATION OF FUNDS; CLAIMS ADMINISTRATOR.

(a)   Allocations of Funds to the PI Trust and Further Allocations to the PI Trust Non-NAS Fund and the PI Trust NAS Fund.

Under the Plan, on the Effective Date the PI Trust will receive $815,818,195[11] of Effective Date Cash less any amounts paid by the Debtors to the Claims Administrator or otherwise advanced by the Debtors to the NAS Monitoring Trust and PI Trust prior to the Effective Date, subject to (i) the SOR Holdbacks in the total amount of $11,138,195, (ii) amounts distributed directly to the United States under the United States-PI Claimant Medical Expense Claim Settlement, and (iii) the Aggregate Direct Claims Holdback Amount.[12] The PI Trust shall establish a fund to pay Non-NAS PI Channeled Claims (the "**PI Trust Non-NAS Fund**") and a fund to pay NAS PI Channeled Claims (the "**PI Trust NAS Fund**"), and shall allocate the distributions it receives under the Plan as follows, in each case, subject to the holdbacks and reductions set forth above: (i) $48,213,070 received by the PI Trust on the Effective Date to the PI Trust NAS Fund,[13] (ii) $65,848,195 to be paid exclusively to the PI Trust NAS Fund, (iii) 16.2438% of the PI Trust's reversionary interest in the Special Operating Reserve to the PI Trust NAS Fund, and (iv) the remainder to the PI Trust Non-NAS Fund, in each case subject to applicable PI Trust Deductions and Holdbacks.  The Initial Non-NAS PI Distribution will be subject to deductions for (i) the SOR Holdback in the amount of $9,328,930, (ii) any Aggregate Direct Claims Holdback Amount, and (iii) 86.02% of any amounts (A) paid by the Debtors to the Claims Administrator and/or (B) advanced to the PI Trust prior to the Effective Date. Notwithstanding the above, (i) one hundred percent (100%) of any Aggregate Direct Claims Holdback Amount with respect to Non-NAS PI Claims will be allocated to the PI Trust Non-NAS Fund and (ii) one hundred percent (100%) of any Aggregate Direct Claims Holdback with respect to NAS PI Claims will be allocated to the PI Trust NAS Fund.

(b)   Claims Administrator.

(i)   The PI Trust shall be established in accordance with Section 5.8 of the Plan to (1) assume all liability for the PI Channeled Claims, (2) collect  Distributions to the PI Trust, (3) administer and resolve PI Channeled Claims, (4) make Distributions on account of Allowed PI Channeled Claims in accordance with the PI Trust Documents (including this Non-NAS PI TDP), (5) fund the TPP LRP Escrow Account and make payments therefrom to LRP Participating TPPs, in each case, in accordance with and subject to the terms of the LRP Agreement, (6) calculate the Aggregate Direct Claims Holdback Amount and the Aggregate Non-Participating Claims Holdback Amount,[14] (7) establish and fund the Class 10(b)

---

[11]   As described in Exhibits N and Z of the Master Shareholder Settlement Agreement, on the Effective Date, the Individual Non-Participating Claim Holdback Amounts shall be deposited by PRA L.P. directly into the Class 10(b) Non-Participating Claims Reserves held by the PI Trust, subject to the PI Trust Deductions and Holdbacks described below.

[12]   "**Aggregate Direct Claims Holdback Amount**" means the aggregate amount of the Individual Direct Claims Holdback Amounts that are projected as of the Effective Date.  For the avoidance of doubt, Non-NAS PI Channeled Claims that are Disallowed pursuant to the claims resolution process shall not be taken into account in calculating the Aggregate Direct Claims Holdback Amount.  Pursuant to the Plan, the Shareholder Released Parties shall withhold the Aggregate Direct Claims Holdback Amount from funding obligations to the PI Trust and shall contribute such amounts to Litigation Costs.

[13]   $48,213,070 is the sum of (i) 6.43% of $700,000,000 of the Initial PI Trust Distribution Amount, up to an aggregate of $45,000,000 in accordance with the definition of "NAS PI Portion" in the Twelfth Amended Plan and (ii) 6.43% of the $49,970,000 remaining Initial PI Trust Distribution Amount.

[14]   "**Aggregate Non-Participating Claims Holdback Amount**" means the aggregate amount of the Individual Non-Participating Claim Holdback Amounts that are projected as of the Effective Date.  For the avoidance of doubt, Non-NAS PI Channeled

Non-Participating Claims Reserves with the Aggregate Non-Participating Claims Holdback Amount, and (8) carry out such other matters as are set forth in the PI Trust Documents.  The trustee of the PI Trust (the "**PI Trustee**"), Edgar Gentle III, of Gentle, Turner & Benson, LLC, shall serve as the claims administrator (the "**Claims Administrator**") to carry out the duties as set forth in the Plan and the PI Trust Documents.

(ii)     The Claims Administrator shall determine, pursuant to the requirements set forth in this Non-NAS PI TDP, whether the Non-NAS PI Channeled Claims liquidated under §§ 6-9 of this Non-NAS PI TDP are Qualified and Substantiated, regardless of the type of Award sought. The Claims Administrator may investigate any such Non-NAS PI Channeled Claim and may request information from any Holder of a Non-NAS PI Channeled Claim to ensure compliance with the terms outlined in this Non-NAS PI TDP.  For any Holder of a Non-NAS PI Channeled Claim who executes the required HIPAA forms attached hereto as **Exhibit B**, the Claims Administrator also has the power to directly obtain the medical records of such Holder (or its decedent, if applicable) solely for purposes of review in the Claims Administrator's investigation of any such Claim for compliance or for lien resolution, if applicable.  As outlined in § 3 of this Non-NAS PI TDP, it is the responsibility of the Holder of such Non-NAS PI Channeled Claim to obtain and submit proof demonstrating usage of a qualifying prescribed opioid with its Non-NAS PI Claim Form, unless such proof demonstrating usage of a qualifying prescribed opioid, as outlined in § 3 of this Non-NAS PI TDP, was previously provided with the Holder's Proof of Claim that was timely filed in the Debtors' Chapter 11 Cases.

(iii)    The Claims Administrator making any Distribution shall comply with all applicable withholding and reporting requirements imposed by any U.S. federal, state, local, or foreign taxing authority (the "**Taxing Authority**").  Any amounts so withheld and properly remitted to the applicable Taxing Authority shall be deemed to have been distributed to and received by the applicable claimant.  Any party entitled to receive any Cash or other property under this Non-NAS PI TDP shall, upon request, deliver to the Claims Administrator a properly executed IRS Form W-9 or Form W-8, as applicable, and any other forms or documents reasonably requested by such party, to reduce or eliminate any withholding required by any U.S. federal, state, local, or foreign taxing authority.

## § 3.    INITIAL NON-NAS PI CHANNELED CLAIM CLASSIFICATION (QUALIFIED, SUBSTANTIATED, OR DEFICIENT).

For a Non-NAS PI Channeled Claim that is being liquidated pursuant to the streamlined procedures set forth in §§ 6-9 of this Non-NAS PI TDP to be Qualified and Substantiated, the Holder of such Non-NAS PI Channeled Claim <u>must</u>:

(a)     Hold such Non-NAS PI Channeled Claim against one or more Debtors;

---

Claims that are Disallowed pursuant to the claims resolution process shall not be taken into account in calculating the Aggregate Non-Participating Claims Holdback Amount.

(b)      Provide proof demonstrating usage prior to the September 15, 2019 Petition Date of a qualifying **prescribed** opioid listed in **Exhibit C** hereto (a "**Qualifying Opioid**").

(i)      If the Holder of such Non-NAS PI Channeled Claim (or its decedent, if applicable), used only a **non-prescribed** (diverted) version of a Qualifying Opioid, then such Non-NAS PI Channeled Claim shall be Deficient;

(c)      Have timely[15] filed an individual personal injury Proof of Claim for such Non-NAS PI Channeled Claim against one or more Debtors in the Chapter 11 Cases asserting such Holder's Non-NAS PI Channeled Claim against one or more Debtors;

(d)      Complete, sign,[16] and submit the Non-NAS PI Claim Form attached hereto as **Exhibit A** so that it is received on or before **July 28, 2025** (the "**PI Claims Deadline**"), which is sixty (60) days after the notice of the PI Claims Deadline was distributed to Holders of PI Channeled Claims as set out in the *Order (I) Appointing PI and TPP Claims Administrators; (II) Authorizing the Establishment of Claims Deadlines and Claims Objection Procedures; and (III) Granting Related Relief* [Docket No. 7382];

(e)      Complete, sign, and submit the applicable HIPAA consent form attached hereto as **Exhibit B**; and

(f)      To the extent the Non-NAS PI Channeled Claim concerns the injuries of a decedent of the Holder of such Claim, complete, sign, and submit the Heirship Declaration attached hereto as **Exhibit D**, or provide valid estate documents (as described in Exhibit D) authorizing the Holder of the Claim to act on behalf of the decedent's estate.

**If the Holder of a Non-NAS PI Channeled Claim does not satisfy the requirement in § 3(c) above, such Claim cannot be Qualified.**

**If the Holder of a Non-NAS PI Fully Channeled Claim or Allowed Non-NAS PI Channeled Estate Sub-Claims satisfies all of the requirements in § 3(a)-(e) above [and § 3(f), above, if applicable], such Claim shall be Qualified and Substantiated. If the Holder of a Non-NAS PI Fully Channeled Claim or Non-NAS PI Partially Channeled Claim does not satisfy all of the above requirements (a)-(e) [and (f) if applicable], then such Claim shall be Deficient.**

---

[15]   If the Proof of Claim for the Non-NAS PI Channeled Claim was filed after the General Bar Date but before September 21, 2021, the Claims Administrator shall consider the Proof of Claim timely for purposes of this Non-NAS PI TDP unless such Claim had been Disallowed by a Final Order of the Bankruptcy Court. If the Proof of Claim for the Non-NAS PI Channeled Claim was filed on or after September 21, 2021, the Claims Administrator shall consider the Proof of Claim not timely for purposes of this Non-NAS PI TDP (unless such Proof of Claim is deemed timely by a Final Order of the Bankruptcy Court), and, therefore, such Non-NAS PI Channeled Claim shall be Deficient.

[16]   If the Holder of a Non-NAS PI Channeled Claim is represented by counsel, then such Holder's Non-NAS PI Claim Form may be signed by such Holder's attorney instead of by such Holder; *provided* that such Non-NAS PI Claim Form contains substantially the following attestation "I, [Name of Attorney], hereby swear under penalty of perjury that the information contained herein is true and accurate to the best of my knowledge made after conducting due diligence, and that this Non-NAS PI Claim Form is being filed with the consent of my client,  or the authority to file on my client's behalf under applicable law and/or with appropriate power of attorney." The Claims Administrator shall be entitled to rely on this attestation. However, in the event the Claims Administrator reasonably suspects that the Holder's counsel does not have such consent under applicable law or power of attorney, or is otherwise misrepresenting such consent or authority, the Claims Administrator may request backup documentation. If such backup documentation does not resolve the Claims Administrator's concerns regarding the attestation, the Claims Administrator may require the Holder of the Non-NAS PI Channeled Claim to sign the Non-NAS PI Claim Form in order to avoid such Claim being Deficient, or take other appropriate measures to prevent fraud. In the event of a large inventory doing bulk uploads, the PI Trustee shall establish procedures for bulk attestations.

**Each Holder of a Non-NAS PI Channeled Claim must complete, sign, and submit the Non-NAS PI Claim Form so that it is received by the Claims Administrator on or before the PI Claims Deadline. Failure to do so shall result in such Non-NAS PI Channeled Claim being Deficient.[17]**

## § 4.  DETERMINING WHETHER AN OPIOID IS A QUALIFYING OPIOID.

In order to demonstrate usage prior to the September 15, 2019 Petition Date of a Qualifying Opioid as listed in **Exhibit C** hereto, the following should be taken into account to the extent applicable:

(a) The Holder of a Non-NAS PI Channeled Claim who provides evidence of a prescription for brand name OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt may rely on the name alone without the necessity of a corresponding NDC number.

(b) In order for a Non-NAS PI Channeled Claim to be Substantiated based on the use of one of the generic products listed in **Exhibit C** hereto (e.g., oxycodone, morphine sulfate, hydromorphone), the Holder of such Non-NAS PI Channeled Claim must present evidence that includes either:

(i) The product's corresponding NDC number, which is set forth on **Exhibit C** hereto;[18] demonstrating the product was manufactured or sold by any of the Debtors, or

(ii) A notation in the record submitted by such Holder that the product was manufactured or sold by any of the Debtors.

(c) The Holder of a Non-NAS PI Channeled Claim (or its decedent, if applicable) who used a generic oxycodone prescription that does not contain the evidence listed in § 4(b) above may only have a Substantiated Non-NAS PI Channeled Claim if the prescription utilized one of the following:

(i) Oxycodone CR (Controlled Release); or

(ii) Oxycodone ER (Extended Release).

Holders of Non-NAS PI Channeled Claims whose Claims are based on the use of opioids that are only manufactured by companies other than the Debtors will not be eligible or Qualified to receive a settlement payment from the PI Trust on account of such Claims.

## § 5.  TYPES OF EVIDENCE REQUIRED FOR QUALIFYING OPIOIDS.

Each Holder of a Non-NAS PI Channeled Claim must provide any of the following documentation listed below in (a)–(e) demonstrating (i) a prescription that sets forth the name of the Holder of the Non-NAS PI Channeled Claim (or its decedent, if applicable), for (ii) an opioid that is a Qualifying Opioid by providing one of the following pieces of evidence with its Non-NAS PI Claim Form so as to be received by the Claims

---

[17] If a Non-NAS PI Claim Form is received by the Claims Administrator after the PI Claims Deadline, the applicable Non-NAS PI Channeled Claim shall be a Deficient Claim absent a showing of extraordinary cause, to the satisfaction, and in the sole discretion, of the Claims Administrator,; *provided, however*, that in no event shall such Non-NAS PI Channeled Claim be Qualified or Substantiated if such Non-NAS PI Claim Form is received by the Claims Administrator more than fifteen (15) days after the PI Claims Deadline.  Furthermore, groups of Non-NAS PI Claim Forms represented by the same attorney received after the PI Claims Deadline shall not be considered timely, and thus such Non-NAS PI Channeled Claims shall not be Qualified or Substantiated, because the Claims Administrator only has the discretion to consider one Non-NAS PI Channeled Claim at a time.

[18] Subject to additional NDC numbers after discovery from or other disclosure by the Debtors.

Administrator on or before the PI Claims Deadline, unless such documentation was previously submitted with a Proof of Claim that was timely filed by the Holder of the Non-NAS PI Channeled Claim in the Debtors' Chapter 11 Cases:

(a)     Pharmacy prescription records;

(b)     Other prescription records, including without limitation:

    (i)     A visit note in which the prescribing physician listed a prescription for a Qualifying Opioid; or

    (ii)    A signed prescription from a doctor for a prescribed Qualifying Opioid;

(c)     A historical reference to a prescribed Qualifying Opioid, including but not limited to:[19]

    (i)     A reference in contemporaneous medical records to historical use of a prescribed Qualifying Opioid;

    (ii)    A reference in contemporaneous substance abuse/rehabilitation/mental health records to historical use of a prescribed Qualifying Opioid;

    (iii)   A reference in contemporaneous law enforcement records to historical use of a prescribed Qualifying Opioid; or

    (iv)    A reference in contemporaneous family law or other legal proceeding records to historical use of a prescribed Qualifying Opioid;

(d)     A photograph of the prescription bottle or packaging of a Qualifying Opioid with the date of the prescription as well as the name of the Holder of the Non-NAS PI Channeled Claim (or its decedent, if applicable), listed as the patient on the prescription bottle or packaging; or

(e)     Documentation indicating that the Holder of the Non-NAS PI Channeled Claim (or its decedent, if applicable) had at least one prescription for a Qualifying Opioid supplied prior to the September 15, 2019 Petition Date through customer loyalty programs, patient assistance programs ("**PAPs**") or copay assistance programs provided by the Debtors or one of their successors.

Any Non-NAS PI Channeled Claim that does not meet the requirements of §§ 3, 4, and § 5(a)-(e) of this Non-NAS PI TDP shall be Deficient.

The Claims Administrator has the discretion to request additional documentation believed to be in the possession of the Holder of the Non-NAS PI Channeled Claim or its authorized agent or counsel. The Claims Administrator has the sole discretion, subject to appeal under § 14 of this Non-NAS PI TDP, to classify a Non-NAS PI Channeled Claim as Deficient, or to reduce or eliminate the amount of Awards for Allowed Non-NAS PI Channeled Claims or Substantiated Non-NAS PI Channeled Claims, as applicable, if he concludes that there has been a pattern and practice to circumvent full or truthful disclosure under this § 5.

---

[19]   The record containing the historical reference must have been created prior to the September 15, 2019 Petition Date.

### § 6.   AWARD DETERMINATION.

(a)   Substantiated Non-NAS PI Fully Channeled Claims and Substantiated Deficient Non-NAS PI Partially Channeled Claims shall be categorized[20] in one of two Tiers:

   (i)   **Tier 1**: Use of a Qualifying Opioid equal to or greater than six (6) months[21] for a period prior to September 15, 2019 (16,000 points).

   (ii)   **Tier 2**: Use of a Qualifying Opioid for less than six (6) months for a period prior to September 15, 2019 (8,000 points).

(b)   The point values provided in § 6(a) above resulted from the work of counsel and other professionals advising the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject matter experts for the Ad Hoc Group of Individual Victims and other Holders of PI Channeled Claims, and collaborative discussions with stakeholders.

(c)   Based on an initial sample, the amount of the dollar award per point is estimated to be between $0.70 and $1.20. The dollar amount ultimately awarded per point will be determined with reference to the funds available in the PI Trust and the number and nature of Allowed PI Channeled Claims.  The estimated amount per point will be updated periodically on the PI Trust Website.

(d)   In no event will any Allowed Non-NAS PI Channeled Claim receive a recovery from the PI Trust in an amount in excess of the maximum amount available to Substantiated Non-NAS PI Channeled Claims in Tier 1.

### § 7.   CLAIM DEFICIENCIES.

Within _____ (__) days of the PI Claims Deadline, the Claims Administrator shall send a notice of Deficiency to any Holder of a Non-NAS PI Channeled Claim that submitted a Non-NAS PI Claim Form that is incomplete or Deficient because the Holder of the Non-NAS PI Channeled Claim failed to meet the requirements, or provide proof of meeting the requirements, of § 3(b)-(e) herein.  If the Holder of a Non-NAS PI Channeled Claim receives a notice of Deficiency, the Holder must cure the Deficiency no later than thirty (30) days after the date on which such notice has been sent to such Holder in order for such Non-NAS PI Channeled Claim to avoid being Deficient.  Failure to do so shall result in such Non-NAS PI Channeled Claim being Deficient.  If a Deficiency is timely cured to the satisfaction of the Claims Administrator, such Non-NAS PI Channeled Claim shall not be Deficient, but that does not guarantee that such Non-NAS PI Channeled Claim will otherwise be Qualified.

---

[20]   Holders of Non-NAS PI Claims who assert or allege Qualifying Opioid usage in their respective Non-NAS PI Claim Forms but fail to produce corresponding evidence in support thereof and did not previously submit such evidence with their respective Proofs of Claim timely filed in the Debtors' Chapter 11 Cases, shall be Deficient.

[21]   The six months referred to in § 6(a) do not have to be consecutive use and are calculated based on the sum of all days noted in the supply portion of the prescription or otherwise described in the records. In the event a prescription or reference to a Qualifying Opioid does not reference a time period of supply, it shall not be counted towards the six months to qualify for Tier 1. However, a single reference to a Qualifying Opioid that does not contain a time period of supply would qualify for Tier 2.

**§ 8.     ADDITIONAL CLAIM FACTORS AND VALUATION.**

(a)     To the extent practicable, only objective factors shall be taken into account, based upon the maxim that, in the context of mass torts, consistency is fairness.

(b)     Section 6 of this Non-NAS PI TDP is based in part on scoring grids developed in comparable cases with unique customization according to the claims and injuries encountered and reviewed in sampling individual PI Claims.

(c)     With respect to Non-NAS PI Channeled Claims, because of limited funds, economic damages are not compensable.  Awards issued pursuant to this Non-NAS PI TDP provide compensation only for general pain and suffering.

(d)     In no circumstance shall the Claims Administrator assign any claim value for any punitive damages, exemplary damages, statutory enhanced damages, or attorneys' fees or costs (including statutory attorneys' fees and costs).

**§ 9.     BAR FOR PRIOR SETTLED CASES.**

If a Non-NAS PI Channeled Claim was reduced prior to the Petition Date to a settlement, judgment, or award against a Debtor, the Holder of such Claim shall be barred from receiving any Award under this Non-NAS PI TDP on account of such Non-NAS PI Channeled Claim and shall not recover from the PI Trust on account of such Non-NAS PI Channeled Claim.

**§ 10.    SPECIAL PROCEDURES IN RESPECT OF MINORS.**

With respect to Holders of Non-NAS PI Channeled Claims (or their decedents, if applicable) who are minors under applicable law, the special procedures set forth in **Exhibit E** hereto also apply and shall supplement the procedures set forth in this Non-NAS PI TDP.

**§ 11.    FAIRNESS AUDITS AND FRAUD PREVENTION.**

The Claims Administrator shall use appropriate and reasonable technology and strategies to prevent paying fraudulent claims while making the claims process as simple as possible.  The Claims Administrator shall use reasonable steps to mitigate fraud so as to ensure a fair and secure claims review and payment process, while not falsely flagging legitimate Non-NAS PI Channeled Claims. Periodic fairness audits will be conducted on samples of Non-NAS PI Channeled Claims to ensure that they are being graded and paid fairly.

**§ 12.    CHARITY.**

The PI Trust shall establish a charitable trust to accept donations that can be used to address the opioid addiction crisis by providing grant funding for recovery support services, addiction and addiction family harm reduction-related activities, education, family support, community-based advocacy efforts, and assistance to organizations providing services to individuals and caregivers grappling with opioid-related problems. The distribution of funding provided by this charitable trust may be streamlined through qualified not-for-profit organizations. The charitable trust shall be funded only through donations; none of the funds received by the PI Trust under the Plan may be diverted to fund this charitable trust.

**§ 13.    APPEALS.**

The appeals process will begin as soon as practicable after the Effective Date.  To the extent a Non-NAS PI Channeled Claim has not already been resolved through the claims resolution process as described in the

10

Plan (i.e., Allowed or Disallowed in a Final Order),[22] the Holder of such Non-NAS PI Channeled Claim has a right to appeal the Claims Administrator's determination either that (i) such Claim is not Substantiated or is otherwise Deficient, and thus Allowed in the amount of $0, (ii) such Claim is Substantiated but designated as Tier 2 because of a Deficiency in providing proof demonstrating use of a Qualifying Opioid equal to or greater than six (6) months for a period prior to September 15, 2019  to qualify for Tier 1, or (iii) such Claim is Substantiated or Allowed but the Claims Administrator has reduced or eliminated the amount of Award based on his conclusion that there has been a pattern and practice to circumvent full or truthful disclosure under § 5 of this Non-NAS PI TDP.  Any such appeal shall be referred to a special master appointed by the PI Trustee (the "**Appeals Special Master**").

Specifically, within twenty (20) days of receiving notice of the Claims Administrator's determination, a Holder of a Non-NAS PI Channeled Claim choosing to appeal such determination must submit an appeal to the Claims Administrator in writing setting forth such Holder's position and explaining the reason such Holder believes the Claims Administrator's determination is wrong.  An appeal fee of $500 shall be assessed against such Holder regardless of the outcome of its appeal. Failure to provide the appeal fee within ten (10) days of submission of the appeal will result in the dismissal of the appeal.

- If the Holder of such Non-NAS PI Channeled Claim timely filed a Non-NAS PI Claim Form and was given the opportunity to cure any Deficiency as described in § 7 of this Non-NAS TDP, the Appeals Special Master will conduct a *de novo* review of the appeal record and claim file, and no additional evidence may be provided.

- If the Holder of such Non-NAS PI Channeled Claim did not timely file a Non-NAS PI Claim Form, but otherwise meets the criteria of § 3(a) and (c) of this Non-NAS PI TDP, such Holder must also provide the required documentation outlined in § 3(b), (d)-(f) of this Non-NAS TDP as part of the appeals process because such Holder does not have the right under this Non-NAS PI TDP to cure a Deficiency and, therefore, the Appeals Special Master will only review the evidence provided at the appeals stage.

Decisions of the Appeals Special Master shall be final and binding, and Holders of Non-NAS PI Channeled Claims shall have no further appeal rights as to any determinations made by the Claims Administrator under this Non-NAS PI TDP beyond those set forth in this § 14.  Decisions of the Appeals Special Master shall be made within sixty (60) days of receipt of the notice of the applicable appeal.

---

[22]   To be clear, if a Non-NAS PI Claim was Disallowed during the claims resolution process under the Plan, such Holder of a Claim has no appeal rights under this Non-NAS PI TDP, although it may seek to appeal a Final Order disallowing its Claim in the appropriate appellate court.

11