UNITED STATES BANRUPCY COURT
SOUTHERN DUSTRICT OF NEW YORK

Purdue Pharma L.P.,st al.                                Chapter 11      Case No. 19-23649.    .

PURDUE PHARMA L.P., P.F. LABORATORIES, INC.,

PURDUE PHARMACEUTICALS L.P.,

 PURDUE PHARMA TECHNOLOGIES, INC.,

and RHODES TECHNOLOGIES,

*DEFENDANTS*

AMANDA MORALES

*PLANTIFF*

## OBJECTION  TO APPLICATION OF MOURANT OZANNES (JERSEY) LLP AND MOURANT OZANNES, BVI AS AN ORDINARY COURSE PROFESSIONAL FOR COMPENSATION FOR SERVICES RENDERED IN EXCESS OF THE TIER 1 OCP CAPFOR THE PERIOD FROM FEBRUARY 1, 2026 THROUGH APRIL 30, 2026

I Amanda Morales, as a party in interest in these Chapter 11 cases, respectfully submits this formal objection (the "Objection") to Application of Mourant Ozannes for Allowance of Compensation] (the "Application") filed by Mourant Ozannes ("Applicant").

Purdue Pharma's bankruptcy and litigation proceedings generated nearly $1 billion in legal fees for dozens of firms. Lead bankruptcy attorneys at Davis Polk &

1

Wardwell alone billed over a quarter of a billion dollars, with partner hourly rates reaching $2,645. Personal injury lawyers representing claimants typically take a 40% contingency fee, further reducing the actual money victims receive into their pockets.

Mass tort bankruptcies like Purdue Pharma utilize vast networks of special counsel, financial advisors, and domestic firms (such as Latham & Watkins). A B170 review must check if Mourant's offshore work impermissibly duplicated cross-border asset tracking or corporate governance work already performed by lead domestic counsel. Foreign law firms sometimes utilize different local billing formats. Under SDNY local guidelines, any failure to meticulously break out time entries by specific tasks.

## PRELIMINARY STATEMENT

1.  The Objecting Party brings this targeted challenge under 11 U.S.C. § 330,

Under 11 U.S.C. § 330(a)(1)(A), the bankruptcy court may award a professional person "reasonable compensation for **actual, necessary services** rendered." To evaluate whether professional services meet this threshold, the court uses a market-driven approach that measures the nature, extent, and value of the work.

Mourant Ozannes provides specialized offshore legal services regarding Purdue's cross-border structures, corporate entities, or assets held in Jersey and the BVI.

2.  **The OCP Cap:** As an Ordinary Course Professional, Mourant operates under a court-approved "OCP Cap". When their fees exceed this designated threshold (such as their application seeking over **$182,950** for professional services), they must file a formal application for compensation with the court

3.  Federal Rule of Bankruptcy Procedure 2016, and the Local Bankruptcy Rules for the Southern District of New York, to safeguard the assets of the debtors' estates from unreasonable, non-compensable, and duplicative expenditures.

4. While the Objecting Party acknowledges the specialized cross-border legal services required in these international restructuring proceedings, a rigorous review of the Applicant's time entries reveals a systemic failure to adhere to the mandatory billing guidelines established by this Court and the Office of the United States Trustee.

3. Application contains extensive instances of:

2

(a) impermissible block-billing that groups distinct legal tasks into single multi-hour entries, thereby masking the actual time spent;

(b) unnecessary duplication of cross-border services that overlap with work already performed by lead domestic counsel; and

(c) non-compensable administrative or clerical tasks billed at premium professional hourly rates.

## THE APPLICANT'S RETENTION AS AN ORDINARY COURSE PROFESSIONAL SUBJECTS ITS ENTIRE APPLICATION TO HEIGHTENED COURT SCRUTINY

### A. The Nature and Structural Limits of the Tier 1 OCP Cap

Under the Court-approved Ordinary Course Professional ("OCP") Order entered in these Chapter 11 cases, the Debtors were authorized to retain specialized foreign professionals—such as Mourant Ozannes (Jersey) LLP and Mourant Ozannes (BVI)—to perform localized, routine operational services. To protect the estate's liquidity and ensure predictable administrative overhead, the OCP Order establishes a strict "Tier 1 OCP Cap" governing the billing limits of such professionals.

Under this Court-mandated structural ceiling, an OCP may receive monthly payments without extensive interim formal disclosure only if its rolling billable fees remain underneath the designated case-specific cap. When an international professional's billings puncture this limit, the professional must cease receiving streamlined payments and file a comprehensive, formal fee application subject to notice, objection, and a plenary hearing before this Court under 11 U.S.C. § 330.

### B. Exceeding the Cap Shifts the Presumption Against the Applicant

The filing of the Application itself is a direct consequence of the Applicant breaching the Tier 1 OCP Cap for the billing period. By exceeding this baseline, the Applicant's billing practices automatically lose any administrative presumption of regularity. The transition from an unopposed ordinary course allowance to a formal § 330 review requires this Court to evaluate the entire overage with heightened economic vigilance.

3

The OCP Cap mechanism was deliberately structured to signal when routine localized tasks risk expanding into excessive or unmonitored administrative legal burdens. Because the Applicant's cross-border services triggered this judicial trigger, the Applicant must conclusively establish that the specific fees generating the overage directly provided a corresponding, non-duplicative benefit to the U.S. Debtors' estates that could not be achieved by domestic counsel.

### C. Pervasive Block Billing Displaces the Applicant's Ability to Justify the Overage

To sustain its burden under § 330 for fees filed in excess of the OCP Cap, the Applicant must present time entries with transparency that matches the scale of its increased billing. However, as demonstrated in Exhibit A, the Applicant has attempted to justify this cap overage using aggregated block entries.

## THE APPLICATION REFLECTS UNNECESSARY DUPLICATION OF WORK ALREADY PERFORMED BY LEAD DOMESTIC COUNSEL IN VIOLATION OF SECTION 330(a)(4)(A)(i)

### A. Statutory Prohibitions Against Duplicative Billing

Under 11 U.S.C. § 330(a)(4)(A)(i), this Court is explicitly prohibited from awarding compensation for any "unnecessary duplication of services." The statutory mandate places an independent duty on the Court to ensure that multiple sets of professionals do not charge the estate for performing identical tasks. In large-scale, multi-jurisdictional Chapter 11 proceedings like Purdue Pharma, the risk of multi-firm overstaffing is acutely high. To prevent the depletion of estate assets, specialized international counsel must demonstrate that their services were unique, localized, and entirely distinct from the work handled by lead domestic counsel. See In re Purdue Pharma L.P., Case No. 19-23649 (SHL).

Applicant's role was strictly limited to providing localized Jersey and BVI transactional or statutory support.

4

However, as detailed in Exhibit A, the Applicant frequently billed the estate for broad, macro-level tasks that were already fully staffed and executed by lead domestic counsel. These overlapping services include:

(a) redundant, passive attendance by offshore counsel at multi-hour SDNY omnibus hearings where lead domestic counsel was already presenting arguments;

(b) parallel tracking, reviewing, and analyzing of cross-border discovery motions drafted and managed entirely by domestic firms; and

(c) extensive, multi-lawyer internal strategy conferences that merely reviewed domestic counsel's administrative decisions without providing independent, specialized offshore legal output.

## C. Passive Attendance and Redundant Reviews Provide No Distinct Benefit to the Estate

Under well-settled Second Circuit jurisprudence, compensation will be denied where specialized or local counsel acts as a passive observer or merely duplicates the investigative footprint of lead counsel. Passive attendance at hearings or repetitive review of pleadings does not provide a tangible, prospective benefit to the debtor's estate under § 330(a)(1)(A)

Because lead domestic counsel was already adequately compensated for managing these global discovery and structuring workflows, the Applicant's parallel tracking constituted a clear and unnecessary duplication of effort. The estate should not be forced to pay twice for the same administrative or strategic output. Accordingly, all fees identified in Exhibit A as duplicative of lead domestic counsel's services must be disallowed in full.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, the Objecting Party respectfully requests that this Court:

(a) SUSTAIN the Objections set forth herein in their entirety;

(b) DISALLOW $ from the

   Applicant's requested fee award for the relevant billing period, as itemized  in the attached Exhibit A, based on the Applicant's impermissible use of     block billing,

unnecessary duplication of services with lead domestic counsel, and non-compensable clerical overhead;

(c) DIRECT that any allowed fees be paid strictly in accordance with the limits and procedural mechanisms set forth in the Court-approved OCP Order; and

(d) GRANT the Objecting Party such other, further, and different relief as this Court deems just, proper, and equitable under the circumstances.

Dated: June 15, 2026

New York, New York

Respectfully submitted,

**Amanda Morales**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  June 15, 2026 a copy

of the document(s) entitled  OBJECTION  TO APPLICATION OF MOURANT OZANNES (JERSEY) LLP AND MOURANT OZANNES, BVI AS AN ORDINARY COURSE PROFESSIONAL FOR COMPENSATION FOR SERVICES RENDERED IN EXCESS OF THE TIER 1 OCP CAPFOR THE PERIOD FROM FEBRUARY 1, 2026 THROUGH APRIL 30, 2026

To Defendants  was/were emailed to.

Marshall Huebner marshall.huebner@davispolk.com

James Hill james.hill@mourant.com

Ian Montgomery ian.montgomery@mourant.com

**Vague Descriptions:** Time entries lack sufficient detail (e.g., "review file" instead of "reviewed amended schedules for accuracy").

**Duplication of Effort:** Charging for multiple attorneys to perform the same task or attend the same hearing.

 **Unnecessary Services:** Time spent on tasks that did not benefit the bankruptcy estate or were not authorized by the court.

30/04/2026 8397952 Jasmine Jones GBP 6.00 $440.00 $2,640.00 Signature reviews, updating checklists, reviewing searches.

30/04/2026 8398468 Katharina Jungclaussen GBP 7.00 $475.00 $3,325.00 Closing mechanics - reviewing signature packets, updating documents etc. and all other items.

30/04/2026 8402407 Ian Montgomery GBP 2.00 $870.00 $1,740.00 Completion matters and supervising etc

29/04/2026 8397951 Jasmine Jones GBP 2.20 $440.00 $968.00  Reviewing signature pages, RACs, reviewing the shareholder registers. Drafting the signature pages. Call with K. Jungclaussen.

21/04/2026 8387478 Martyn Heyes GBP 1.70 $630.00 $1,071.00 TRUE 500-06851 Supervision KJ and JJ today and providing DP with status update. Various internal correspondence regarding court application

16/04/2026 8379071 Martyn Heyes GBP 13.10 $630.00 $8,253.00 TRUE 500-06851 2 x internal meetings with KK / JJ. Call with Jersey team. Send throughout the day between Mourant, Ogier, HSFK, Debevoise. Reviewing and agreeing rider for BVI asset security. Reviewing and agreeing update Various calls between 7.45am and 10.15pm on matter with team.

13/04/2026 8379158 Jasmine Jones GBP 5.10 440.00 2,244.00 TRUE 500-06851 Creating the checklist, reviewing the share certificates for the parties involved and all other closing mechanics.

14/04/2026 8379088 Martyn Heyes GBP 5.20 630.00 3,276.00 TRUE 500-06851Work on matter today. Detailed correspondence with Ogier over the course of the day on the BVI deliverables,

10/04/2026 8369666 Martyn Heyes GBP 2.30 $630.00 $1,449.00 TRUE 500-06851 Correspondence with Ogier and HSFK throughout the day on various matters including A-Side collateral agreement, VDR access, collateral documents checklist.