PENACHIO MALARA LLP
245 Main Street, Ste. 450
White Plains, NY 10601
(914) 946-2889
apenachio@pmlawllp.com

BY: Anne Penachio, Esq.

Co-Counsel for Richard Sackler, MD

HARRIS TRZASKOMA, LLP
1300 19th Street, NW, Suite 700
Washington, D.C. 20036
(202) 230-9647
bpollack@harristrz.com

BY: Barry Pollack, Esq.

Co-Counsel for Richard Sackler, MD and
Counsel for Lin Gao

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | Chapter 11 |
| **PURDUE PHARMA L.P., et al.** | Case No. 19-23649 (SHL)<br>Jointly Administered |

TO: The Honorable Sean H. Lane
United States Bankruptcy Judge

**SUPPLEMENTAL OBJECTION TO THE MOTION OF FRANK VELLUCCI, DANIEL CONNOLLY AND RORY HELD AND REQUEST TO COMPEL PRODUCTION OF INFORMATION TO SATISFY SETTLEMENT PAYMENT OBLIGATIONS**

Dr. Richard Sackler ("Dr. Sackler") and Lin Gao, by and through their undersigned counsel, submit this supplemental objection to the Motion of Frank Vellucci, Daniel Connolly and Rory Held to Enforce the Confirmation Plan filed as Dkt. No. 9188 and 9199 ("the Pending Motion"). While neither Dr. Sackler nor Ms. Gao seek in any way to interfere with the Confirmation Plan, they do seek to enforce the rights they explicitly reserved as beneficiaries of various trustees to ensure that the trustees of those trusts do not breach their fiduciary duties either by squandering trust assets or by funding the bankruptcy settlement in a manner that impermissibly subordinates the trustees' duties to certain beneficiaries over others. Accordingly, Dr. Sackler and Ms. Gao intend to file separate motion, for which they have sought from the

Court a date to be heard, an order compelling the immediate production of information, documents, and full accountings for certain trusts that are payment parties under The Eighteenth Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). Obtaining these documents will assist the Court in its resolution of the Pending Motion and may assist the parties in negotiating a resolution obviating the need for the Court to resolve the issues raised in the Pending Motion. Indeed, it is the failure to provide this information that led Dr. Sackler and Ms. Gao to seek relief from the Wyoming state court, which in turn led to the filing of the Pending Motion.

As set forth below, the trustees of certain Sackler family trusts in the B-Side Payment Group 1 have stonewalled Dr. Sackler's reasonable and repeated requests for information for nearly two months, despite acknowledging that the requested information is readily available. In support of this Supplemental Objection, Dr. Sackler and Ms. Gao state as follows:

**BACKGROUND**

1. Dr. Sackler, his wife, Lin Gao, and their minor children, August Gao Sackler and the newborn Beverly Gao Sackler, are beneficiaries of various Sackler family trusts that are central to the implementation of this Court's confirmed Plan.

2. Frank S. Vellucci, Daniel S. Connolly, and Rory Held are currently acting as trustees of certain Sackler family trusts in the B-Side Payment Group 1 (collectively, the "Trustees"). The Trustees bear fiduciary obligations both to the trust beneficiaries and, critically, to this Court as parties responsible for effectuating the Plan's payment obligations.

3. On April 10, 2026, Dr. Sackler requested from Frank S. Vellucci, in his capacity as trustee, the specific arrangement in place for satisfying the financial obligations of the "B Side Payment Group" under the Purdue Bankruptcy Plan, as well as copies of any and all documentation underlying and/or supporting the payments contemplated to be made. **Exhibit 1**.

4. On April 13, 2026, Mr. Vellucci acknowledged receipt of the request and stated that he was "in the process of developing a report for all beneficiaries regarding the mechanics associated with our Day One payments, which we now expect will be made prior to 5:00 p.m. eastern time on May 1, 2026." **Exhibit 1**. Critically, Mr. Vellucci also stated: "[w]ith respect to future payments, presentations have been made to you and your various legal and financial teams on multiple occasions, and the information has not materially changed in the interim." This admission is significant: Mr. Vellucci concedes that the information exists and is readily available, yet he has inexplicably refused to forward it to Dr. Sackler and his current legal advisors. There is no legitimate basis for withholding information that the Trustees themselves acknowledge they possess.

5. On May 1, 2026, Dr. Sackler again requested: (1) the report detailing how the trusts will satisfy the Day One payments and future payment obligations, and (2) all presentations and documentation supporting the payment obligations referenced in Mr. Vellucci's April 13 email. **Exhibit 1**. Mr. Vellucci's response was dismissive: "we will prepare the presentation in due time." This cavalier response to a beneficiary's legitimate request for trust information – information that the Trustees have acknowledged readily exists – is inconsistent with their fiduciary duties and obstructs the orderly implementation of the Plan.

6. Dr. Sackler made additional follow-up requests on May 4, May 7, and May 28, 2026, totaling five separate written requests in total. Each time, the Trustees either ignored the request entirely, failed to respond substantively, or offered nothing more than vague assurances that information would be forthcoming. **Exhibit 1**. This pattern of delay and obstruction is not mere neglect; it reflects a deliberate refusal to comply with basic fiduciary obligations of transparency and disclosure. Even if the delay could be attributed solely to neglect, however, that

neglect has led to the current situation that has resulted in motions being filed in state court and claims that such motions interfere with the Confirmation Plan.

7. On May 28, 2026, Mr. Vellucci responded acknowledging the request but stating only that a report was "in the process" of being completed, without providing any timeline or any of the requested documents and information. **Exhibit 1**.

8. As of the date of this Supplemental Objection, nearly two months after Dr. Sackler's initial request, the Trustees have failed to produce any of the requested information and documents, despite five separate written demands, and despite Mr. Vellucci's own admission that the presentations and information are readily available. The Trustees' conduct has left Dr. Sackler with no choice but to seek judicial intervention to obtain information that should have been freely provided as a matter of course.

9. In addition to the above, Dr. Sackler is the sole current income beneficiary of several Sackler family trusts that are payment parties under the Purdue Pharma bankruptcy settlement, including the FPC Trust A under Trust Agreement dated June 16, 1980, as amended (the "FPC Trust"); the BRP Trust A under Trust Agreement dated December 3, 1979, as amended (the "BRP Trust"); the XPC Trust A under Trust Agreement dated December 23, 1980, as amended (the "XPC Trust"); and the PRAH Trust under Trust Agreement dated August 29, 2003, as amended (the "PRAH Trust") (collectively, the "Trusts").[1]

10. Despite multiple requests, Data has failed and refused to provide full and complete accountings for the Trusts. Data has ignored the majority of Dr. Sackler's requests for

[1] Data LLC ("Data"), a Wyoming limited liability company and private trust company, serves as trustee of all four Trusts. Data's sole member is Data Trust, of which Frank S. Vellucci, Daniel S. Connolly and Rory Held are the Trustees, and therefore they manage and make decisions for Data LLC. Data assumed trusteeship of the FPC Trust, BRP Trust, and XPC Trust in August 2019, and of the PRAH Trust in November 2018.

trust information and accountings. On those rare occasions when Data did provide some limited information, its response raised more questions and concerns than it answered, suggesting potential mismanagement or misappropriation of trust assets. To date, no accountings have been provided for the Trusts, leaving Dr. Sackler – the sole current income beneficiary – without any meaningful understanding of how hundreds of millions of dollars in trust income has been utilized.

11. The limited information provided by Data raises deeply troubling concerns about potential asset dissipation. For example, the FPC Trust generated $88,695,745 in income from 2020 through 2024, the vast majority of which remains entirely unaccounted for. This is particularly alarming given that, as of January 30, 2026, the FPC Trust reflects a cash balance of only $72,234.34.

12. The BRP Trust and XPC Trust collectively generated additional millions of dollars in income during the same period. In total, the FPC, BRP, and XPC Trusts collectively generated approximately $106 million in gross income from 2020 through 2024, with a net after-tax value of $91.6 million. A full accounting is urgently needed to document where this income went exactly. Data provided no income or financial information whatsoever for the PRAH Trust.

13. Notwithstanding the Trusts' failure to distribute any part of this income to Dr. Sackler, the Trusts have reported substantial income to the Internal Revenue Service as income of Dr. Sackler, leaving him with an income tax liability of millions of dollars but with no distributed funds to pay that liability, which will generate interest and penalties for which Dr. Sackler will be held responsible by the IRS. This is but one of the foreseeable consequences of the Trustees' breach of their fiduciary duties.

14. Dr. Sackler and/or his minor children are also current beneficiaries of several other Sackler family trusts that are payment parties under the Purdue Pharma bankruptcy settlement, including the Rockpoint Trust created under Declaration of Trust dated February 2, 2023 ("Rockpoint Trust"), the Rockpoint Land Trust created under Declaration of Trust dated February 2, 2023 ("Rockpoint Land Trust"), the AR Irrevocable Trust dated July 2, 2019, as amended on January 14, 2022 ("AR Trust"), and 1989 Irrevocable Trust f/b/o RSS Issue dated December 23, 1989, as amended on February 20, 1990 and January 14, 2022 ("Captain Trust") (collectively, the "Sackler Family Trusts"). Dr. Sackler also requests an accounting for all of the Sackler Family Trusts.

15. Receiving the requested information pertaining to the Trusts and the Trustees' overall plan to satisfy the settlement payments of the B-Side Payment Group 1 is imperative – not only for Dr. Sackler and the other B-Side Payment Group 1 parties, but also for the integrity of the Plan itself – to ensure a fair and proper liquidation plan is implemented by the Trustees to satisfy the payment obligations, and the sources of such payments, under the Plan and comply with their fiduciary duties. The Trustees have a clear fiduciary duty to provide such information to the beneficiaries, and their persistent refusal to do so is a breach of that duty. An order by this Court to provide that information may obviate the need for further state court litigation and/or resolve or at least streamline the issues currently pending before this Court.

**THE COURT SHOULD DENY OR HOLD IN ABEYANCE THE PENDING MOTION AND DIRECT THE TRUSTEES TO PRODUCE FIANCIAL INFORMATION**

As explained in the opposition filed as Dkt. No. 9204, the Pending Motion should be denied and Dr. Sackler and Ms. Gao should be able to seek the appropriate equitable relief with respect to the Trustees and the Trusts. While the Trustees do no contest, nor could they, that they owe a fiduciary duty to Dr. Sackler and Ms. Gao, the Trustees object to Dr. Sackler and Ms.

Gao pertaining in state court in Wyoming. If they were unable to proceed either in state court in Wyoming or before this Court, they would have no vehicle to obtain relief for the Trustees' breach of their fiduciary duty, leaving them with rights, but no remedies. It is for this reason they specifically reserved their rights to proceed in state court.[2]

To the extent they are unable to proceed in state court in Wyoming, Sr. Sackler and Ms. Gao seek such relief from this Court under Section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The information sought here is indisputably necessary to carry out the Plan, as it directly concerns whether the Trustees are properly funding and administering the trusts' payment obligations under the confirmed Plan. More broadly, Paragraph 34 of the Confirmation Order and Section 11.1 of the Plan provide that this Bankruptcy Court retains jurisdiction over "all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code." Specifically, Section 11.1(a)(vii) retains jurisdiction to "issue and enforce injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court." Section 11.1(a)(xi) retains jurisdiction to "hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or

[2] Relief was not sought from this Court because Dr. Sackler and Ms. Gao understood that this Court was averse to deciding intra family issues, believing these issues should be resolved in state court. However, given the Trustees' motion, the Court, Dr. Sackler, Ms. Gao and other parties will need the information requested herein to properly respond and object to the relief being sought by the Trustees.

payments in furtherance of the Plan or the Confirmation Order." The Trustees' refusal to provide basic trust information and accountings directly implicates each of these jurisdictional bases.

It should be noted that the Pending Motion relies on this authority in arguing that Dr. Sackler and Ms. Gao need not litigate these issues in Wyoming state court and, indeed, should be precluded from doing so. It cannot be that the Trustees have a fiduciary duty to Dr. Sackler, which they plainly do, yet Dr. Sackler has no remedy for the breach of those duties. Proceeding in this Court can be advanced by ordering the production of documents Dr. Sackler and Ms. Gao have sought from the state court in Wyoming. Ordering the production of the requested information would the first step in resolving the issues of the appropriate forum for the resolution of Dr. Sackler's breach of fiduciary claims and the ability for the Settlement Agreement to be funded consistent with the Confirmation Plan and consistent with the duties owed to the various trust beneficiaries. Accordingly, Dr. Sackler and Ms. Gao intend to file a separate expedited motion to compel the production of documents and have sought a return date from the Court for that motion.

The trusts at issue are B-Side Payment Group 1 Payment Parties under the Master Settlement Agreement ("MSA"). Each party to the MSA has submitted to the jurisdiction of this Court for purposes of enforcing the MSA, consented to the authority of this Court to enter final orders or judgments relating to enforcement, and expressly waived any argument that any proceeding arising under the MSA must be adjudicated as an adversary proceeding. The trusts' ongoing payment obligations are central to the Plan's consummation and the protection of the victims and creditors this Plan was designed to serve. Dr. Sackler, Ms. Gao, and their minor children, as beneficiaries of some or all of these trusts at issue, have an immediate and direct interest in understanding how these Plan obligations will be satisfied, and this Court has a

corresponding interest in ensuring that payment parties meet their obligations under the MSA and the Plan in good faith.

Without transparency regarding how the trusts' settlement obligations are being funded, particularly given the serious and alarming concerns about potential asset dissipation identified above, including approximately $91.6 million in net trust income that remains unaccounted for, Dr. Sackler cannot meaningfully assess whether the trusts are being administered in a manner consistent with the Plan's requirements, the MSA's obligations, and the Trustees' fiduciary duties. The Court's oversight is essential to prevent what may amount to a quiet dissipation of trust assets that are supposed to fund Plan payments for the benefit of all parties.

The Plan's Effective Date has already occurred, and the Day One payments have already been made on information and belief, yet the beneficiaries have been given no information about how those payments were funded or how future obligations will be met. Dr. Sackler first requested this information on April 10, 2026 – two months ago – and has received nothing substantive despite five separate written requests. Every day that passes without disclosure is a day in which the Trustees operate without accountability, potentially to the detriment of the Plan and its intended beneficiaries. The Trustees' continued stonewalling, combined with the alarming financial disclosures described above, including tens of millions of dollars in unaccounted-for trust income, warrants expedited consideration from this Court. The status quo can be maintained during the brief period of time required to produce this information, which the Trustees have conceded is readily available, so that the parties and the Court can better assess the need for state court litigation and/or how to resolve the Pending Motion.

## RELIEF REQUESTED

WHEREFORE, Dr. Sackler and Ms. Gao, as beneficiaries and on behalf of their minor children, respectfully request that this Court deny or hold in abeyance the Pending Motion and, pursuant to their separate motion, enter an order on an expedited basis compelling:

1. Production of the following information and documents previously requested by Dr. Sackler from the Trustees:

   (a) The report detailing how the trusts will satisfy the Day One payments and future payment obligations under the Purdue Bankruptcy Plan;

   (b) All presentations and documentation supporting the payment obligations; and

   (c) The specific arrangement in place for satisfying the financial obligations of the B Side Payment Group under the Plan.

2. Full and complete accountings for each of the following trusts that are payment parties under the Plan, covering the period January 1, 2020 to present:

   (a) FPC Trust;

   (b) XPC Trust;

   (c) BRP Trust;

   (d) PRAH Trust;

   (e) Rockpoint Trust;

   (f) Rockpoint Land Trust;

   (g) AR Irrevocable Trust; and

   (h) Captain Trust.

3. That the Motion to Enforce the Confirmation Plan be held in abeyance pending the production of these documents.

4. That the parties agree to further extensions of the deadline for the Trustees to respond to the pending pleadings in Wyoming state court while the Motion to Enforce the Confirmation Plan is held in abeyance.

Dr. Sackler and Ms. Gao further request such other and further relief as this Court deems just and proper, including an order requiring the Trustees to produce all requested information within seven (7) days of the Court's order.

Dated: June 15, 2026

Respectfully submitted,

/s/ Anne Penachio

Anne Penachio
Penachio Malara LLP
245 Main Street
Suite 450
White Plains, NY 10601
914-946-2889
anne@pmlawllp.com

Barry J. Pollack
Harris Trzaskoma, LLP
1300 19th Street, NW
Suite 700
Washington, DC 20036
934-667-3824
bpollack@harristrz.com

38173941_v2