SDNY BANKRUPTCY COURT

RE: PURDUE PHARMA LP, 19-23649
RE: ROSEMARY HELEN ZIZIROS WALKER CASE #23CV33935
CLAIM #63478

OBJECTION TO DOC 9399 & MOTIONS

# Objection to Motion for Admission Pro Hac Vice and Request for Evidentiary Hearing

The undersigned respectfully objects to the Motion for Admission Pro Hac Vice filed on behalf of Dr. Richard Sackler, or alternatively requests that the Court defer ruling on the application pending an evidentiary hearing.

The objection is not based upon the qualifications of proposed counsel. Rather, it is based upon unresolved questions concerning the authority under which prior counsel acted, the accuracy of prior representations made to this Court, and the integrity of the proceedings.

The docket reflects that attorney Ravi Batra previously entered an appearance on behalf of Richard S. Sackler, Lin Gao, and August Gao Sackler. The Court has also been advised that Mr. Batra has withdrawn from representing Richard Sackler.

The undersigned submits that unresolved issues remain concerning whether prior representations made on behalf of Richard Sackler regarding the Shareholder Settlement Agreements, claimant releases, and other material matters were expressly authorized by Richard Sackler himself.

If the record demonstrates that counsel represented to the Court that Richard Sackler consented to material settlement terms without written authorization, without execution of the governing agreements by Mr. Sackler where required, or beyond the authority granted by the client, those issues should be resolved before substitute counsel is permitted to continue advancing those same positions.

The Supreme Court's decision in *Harrington v. Purdue Pharma L.P.* significantly altered the legal foundation of these proceedings by holding that the Bankruptcy Code does not authorize the nonconsensual release of direct claims against non-debtors. Consequently, questions concerning the authority by which non-debtor settlement agreements were negotiated, approved, and represented to this Court are now materially relevant.

The Court possesses inherent authority to ensure that proceedings before it are conducted with candor and that attorneys act with actual authority from their clients. Where substantial questions exist regarding prior representations affecting the rights of hundreds of thousands of

claimants, fundamental fairness favors resolving those questions before permitting substitute counsel to continue the representation.

The undersigned further notes the substantial disparity in representation within these proceedings. Richard Sackler has had multiple retained attorneys representing his interests, while many opioid claimants—including the undersigned, a disabled pro se litigant proceeding without counsel—have been required to litigate extraordinarily complex issues without appointed representation. While this disparity alone does not bar admission of substitute counsel, it reinforces the need for heightened judicial scrutiny to ensure that all parties receive fundamentally fair proceedings consistent with the Due Process Clause of the Fifth Amendment.

Accordingly, the undersigned respectfully requests that the Court:

1.  Defer ruling upon the Motion for Admission Pro Hac Vice;
2.  Conduct an evidentiary hearing concerning the authority for prior representations made on behalf of Richard Sackler;
3.  Determine whether prior counsel possessed actual authority for all material representations concerning the Shareholder Settlement Agreements and related proceedings;
4.  Require production of any documents demonstrating Richard Sackler's authorization, approval, or execution of material settlement documents where such authority is disputed; and
5.  Grant such further relief as the Court deems just and proper.

# Demand for Immediate Ruling and Immediate Distribution of Accepted Purdue Pharma Personal Injury Claims

COMES NOW, Ms. Walker, a qualified disabled American proceeding pro se and in forma pauperis, demands that this Court immediately rule upon the matters argued during the hearings held on **September 17, 2025**, and **May 20, 2026**, upon which, to Ms. Walker's knowledge and review of the docket, no ruling has been entered.

Justice delayed is justice denied.

Ms Walkers justice has been no thing but delayed delayed delayed as has all victims justice.

These proceedings concern numerousf Purdue Pharma Personal Injury victims who have already waited years for compensation while the Court has retained unresolved matters affecting their constitutional and statutory rights.

# I. Immediate Ruling Is Required

The issues presented during the September 17, 2025, and May 20, 2026 hearings were fully argued and submitted.

The Court has an obligation to resolve matters properly submitted for decision so that the parties may know their legal rights and obligations and, if necessary, exercise their appellate rights.

The continued absence of rulings has delayed the administration of the Settlement Trust, delayed distributions, and prevented final resolution of issues affecting hundreds of thousands of Purdue Pharma Personal Injury claimants.

Ms. Walker respectfully demands that the Court immediately issue findings of fact, conclusions of law, and rulings upon every unresolved issue argued during those hearings.

# II. Immediate Distribution of Accepted Purdue Pharma Personal Injury Claims

The Effective Date occurred on **May 1, 2026**.

Upon the Effective Date:

- the confirmed Plan became operative;
- the Settlement Trust assumed responsibility for administration and payment of accepted claims; and
- Purdue Pharma ceased to exist as the reorganizing debtor contemplated by the confirmed Plan.

Accepted Purdue Pharma Brand Personal Injury claimants have completed every procedural requirement imposed upon them.

Their claims have been reviewed.

Their claims have been accepted.

Their claims are no longer contingent.

Accordingly, there exists no equitable justification for continuing to withhold payment from accepted claimants while unrelated legal issues remain pending.

The Settlement Trust was created to compensate victims—not to indefinitely retain settlement funds while accepted claimants continue to suffer financial hardship, disability, declining health, and, in many instances, death before receiving compensation.

## III. Remaining Legal Issues Do Not Justify Delaying Accepted Claims

Questions concerning:

- opt-in and opt-out elections;
- future claimants;
- post-petition claimants;
- constitutional due process;
- non-debtor releases;
- and the continuing effect of *Harrington v. Purdue Pharma L.P.*

may require additional judicial determination.

However, those unresolved legal questions should not delay payment to claimants whose Purdue Pharma Brand Personal Injury claims have already been accepted and whose entitlement to payment has already been determined.

Justice requires separating unresolved legal disputes from distributions owed to accepted claimants.

## IV. The Public Interest Requires Immediate Payment

Every additional day of delay increases the likelihood that accepted Purdue Pharma Personal Injury victims will die before receiving the compensation awarded to them.

That result directly frustrates the stated purpose of the confirmed Plan, the Settlement Trust, and the years of negotiations leading to the Effective Date.

Once the Effective Date occurred, the purpose of the Settlement Trust shifted from confirmation to implementation.

Implementation requires payment.

## V. Demand for Relief

WHEREFORE, Ms. Walker demands that this Court:

1. Immediately issue rulings upon all matters argued during the September 17, 2025, and May 20, 2026 hearings;
2. Enter written findings of fact and conclusions of law resolving those matters;
3. Order the immediate distribution of all accepted Purdue Pharma Personal Injury claims;

4. Require the Trust Administrator to complete payment of all accepted Purdue Pharma Personal Injury claims without further unnecessary delay;

5. Require the filing of a verified accounting identifying:
    - every accepted claim;
    - every paid claim;
    - every unpaid accepted claim;
    - all funds presently available for distribution; and
    - any legal authority claimed to justify withholding payment after the Effective Date; and

6. Grant such other and further relief as justice requires.

The continued withholding of compensation from accepted Purdue Pharma Brand Personal Injury victims after the Effective Date serves neither the Bankruptcy Code nor the interests of justice. The Court should immediately fulfill its obligation to resolve the matters submitted for decision and ensure that accepted claimants receive the compensation to which they have already been determined to be entitled.

# IV. Request for Sanctions Against the Trust Administrator

This is now Ms. Walker's third request seeking judicial intervention concerning the administration of the Purdue Pharma Settlement Trust.

Ms. Walker submits that the record demonstrates that the Trust Administrator, Edgar Gentle, has failed to maintain or produce fundamental records necessary for the proper administration of the Settlement Trust.

During proceedings before this Court, Mr. Gentle represented that he did not know the number of accepted Purdue Pharma Brand Personal Injury claims within each compensation tier or the number of accepted claimants who elected to opt into or decline the Plan releases. Ms. Walker further submits that the Court likewise did not identify those figures during the proceedings.

The inability of the Trust Administrator to identify these basic statistics raises substantial questions concerning whether adequate records have been maintained to permit proper administration of the Settlement Trust, meaningful judicial oversight, and equal treatment of similarly situated claimants.

Ms. Walker contends that maintaining accurate records concerning:

- the number of accepted claims within each compensation tier;
- the number of claimants who opted into the releases;
- the number of claimants who declined to opt in;
- the number of unpaid accepted claims; and
- the status of distributions,

is fundamental to the administration of a settlement trust responsible for compensating hundreds of thousands of Purdue Pharma Personal Injury victims.

Without those records, neither the Court nor claimants can independently verify:

- whether distributions are being administered fairly;
- whether similarly situated claimants are receiving equal treatment;
- whether reserves are properly calculated;
- whether payment priorities are being consistently applied; or
- whether accepted claimants are being unnecessarily delayed.

Ms. Walker further submits that this alleged failure has disproportionately prejudiced pro se claimants and other Purdue Pharma Personal Injury victims, who lack the resources available to institutional parties to independently obtain information regarding Trust administration.

Ms. Walker's seeking action on these matters, and because accepted claimants continue to await payment long after the Effective Date, Ms. Walker respectfully requests that the Court determine whether the Trust Administrator has failed to fulfill the duties imposed by the confirmed Plan, the governing Trust documents, applicable Court Orders, and any applicable record-keeping obligations.

If the Court finds that the Trust Administrator failed to maintain adequate records, failed to provide accurate information to the Court, or unjustifiably delayed distributions to accepted claimants, Ms. Walker respectfully requests that the Court impose appropriate sanctions and remedial relief, including:

- an order compelling immediate production of complete Trust records;
- an independent forensic audit of the Settlement Trust;
- referral of the matter to the United States Trustee for review;
- review of the Trust Administrator's compensation;
- removal or replacement of the Trust Administrator if warranted by the evidence; and
- any further relief the Court deems necessary to protect Purdue Pharma Brand Personal Injury claimants and preserve the integrity of these proceedings.

## VI. Status of the Official Committee of Unsecured Creditors and Akin Gump Following the Effective Date

Ms. Walker submits that the Official Committee of Unsecured Creditors was appointed pursuant to **11 U.S.C. § 1102** to perform the statutory duties set forth in **11 U.S.C. § 1103** during the administration of these Chapter 11 proceedings.

Those duties existed for the purpose of representing unsecured creditors during the pendency of the Chapter 11 case, including participation in plan negotiations, investigation of the debtor,

consultation concerning administration of the estate, and other responsibilities specifically authorized by the Bankruptcy Code.

The confirmed Plan became effective on **May 1, 2026**.

Upon the Effective Date:

- the Plan became operative;
- Purdue Pharma ceased operating as the pre-confirmation debtor contemplated by the Chapter 11 proceedings; and
- implementation shifted to the Settlement Trust and other post-confirmation entities responsible for carrying out the confirmed Plan.

Accordingly, Ms. Walker requests that the Court determine whether the Official Committee of Unsecured Creditors continues to exist as a statutory committee under **11 U.S.C. §§ 1102 and 1103**, or whether its statutory purpose terminated upon the Effective Date.

If the Committee has terminated, Ms. Walker further requests that the Court determine whether Akin Gump Strauss Hauer & Feld LLP continues to possess any authority to appear or advocate on behalf of Purdue Pharma Personal Injury victims.

The Bankruptcy Code authorizes committee counsel to represent the committee—not individual creditors—and the committee's authority derives from the committee's existence under § 1102 and the duties prescribed by § 1103.

If the statutory committee no longer exists, any continuing authority asserted by its former counsel should be identified by specific provision of:

- the confirmed Plan;
- the Confirmation Order;
- the Settlement Trust Agreement; or
- another order of this Court.

Absent such authority, Ms. Walker submits that Akin Gump no longer serves as the statutory representative of Purdue Pharma Personal Injury victims merely by virtue of having previously represented the Official Committee of Unsecured Creditors.

Accordingly, Ms. Walker requests that the Court enter an order identifying:

1. Whether the Official Committee of Unsecured Creditors remains in existence after the Effective Date;
2. If so, the legal authority supporting its continued existence;
3. Whether Akin Gump presently represents the Committee, the Settlement Trust, another entity, or no entity at all;
4. The scope of any continuing authority to act on behalf of Purdue Pharma Personal Injury victims; and

5. The specific source of that authority under the Bankruptcy Code, the confirmed Plan, or an order of this Court.

# VII. Request for Review and Reduction of Akin Gump's Professional Fees

Ms. Walker requests that the Court conduct a comprehensive review of all compensation awarded to Akin Gump Strauss Hauer & Feld LLP pursuant to **11 U.S.C. §§ 330 and 331** and **Federal Rules of Bankruptcy Procedure 2016 and 2017**.

The Official Committee of Unsecured Creditors was appointed under **11 U.S.C. § 1102** to represent the interests of unsecured creditors as a whole, and Akin Gump was employed as counsel to the Committee pursuant to **11 U.S.C. § 1103**.

Accordingly, Akin Gump owed its professional obligations to the Committee in its representative capacity and was responsible for advocating for the interests of unsecured creditors collectively rather than advancing only the interests of selected creditor constituencies.

Ms. Walker submits that significant categories of Purdue Pharma Personal Injury claimants, including late-filed claimants and pro se claimants, remained subject to unresolved legal issues before confirmation, including issues concerning:

- late-filed claims;
- future claims;
- post-petition claims;
- constitutional due process;
- claimant notice;
- and the legal consequences of claimant opt-in and opt-out elections.

Rather than ensuring those issues were fully resolved before confirmation, Ms. Walker contends that the Plan proceeded while substantial disputes affecting unsecured creditors remained unresolved.

The Supreme Court subsequently held in *Harrington v. Purdue Pharma L.P.* that the Bankruptcy Code does not authorize the nonconsensual release of direct claims against non-debtors.

The non-debtor release provisions constituted one of the central legal foundations of the confirmed Plan.

Ms. Walker submits that substantial professional services were devoted to negotiating, supporting, and defending a legal structure that the Supreme Court ultimately determined exceeded the authority granted by Congress.

In addition, Ms. Walker argues that the Committee's statutory duty was to represent unsecured creditors in the bankruptcy case involving Purdue Pharma, the debtor. The Sackler family never

became debtors under Chapter 11, and the Bankruptcy Code did not authorize them to receive the functional equivalent of a bankruptcy discharge through nonconsensual releases, as recognized in *Harrington*.

To the extent Committee resources were devoted to supporting or facilitating legal protections for non-debtors rather than ensuring the full and fair resolution of unresolved unsecured creditor claims, Ms. Walker requests that the Court determine whether those professional services were reasonable, necessary, and beneficial within the meaning of **11 U.S.C. § 330(a)**.

Ms. Walker further submits that accepted Purdue Pharma Personal Injury victims continue to await payment after the Effective Date, unresolved claimant issues remain pending, and substantial constitutional questions remain unresolved despite the expenditure of extraordinary professional fees.

Accordingly, Ms. Walker requests that the Court:

1. Conduct a complete review of all fees awarded to Akin Gump;
2. Determine whether services devoted to the non-debtor release provisions should be disallowed or reduced in light of *Harrington*;
3. Determine whether services relating to unresolved late-filed, future, post-petition, and pro se claimant issues provided a reasonable benefit to unsecured creditors;
4. Reduce or disgorge compensation to the extent the Court finds services were not reasonable, necessary, or beneficial under **11 U.S.C. § 330**; and
5. Grant such additional relief as the Court deems just and proper.

Ms. Walker submits that professional compensation should reflect not only the quantity of work performed but also whether that work fulfilled the statutory responsibilities owed to the unsecured creditor body and produced results authorized by the Bankruptcy Code.

## VIII. Request for Judicial Determination Concerning Execution of the Shareholder Settlement Documents

**Ms. Walker requests that the Court make a determination on the record concerning whether Richard Sackler and Lin Gao personally executed the Shareholder Settlement Agreements and any other material settlement documents upon which the Court relied in confirming and implementing the Plan.**

**During prior hearings, Ms. Walker raised questions concerning whether Richard Sackler and Lin Gao had personally signed the governing settlement documents. Based upon the hearing record as understood by Ms. Walker, no definitive finding has been entered by the Court resolving that issue.**

**Because these agreements form a material part of the settlement structure involving the non-debtor Sackler Parties, the identity of the persons who executed those agreements**

**and the authority under which they were executed are matters directly relevant to the validity and enforceability of those agreements.**

**The Supreme Court's decision in *Harrington v. Purdue Pharma L.P.* makes the distinction between debtors and non-debtors central to these proceedings. Where non-debtor parties seek the benefits of agreements incorporated into the confirmed Plan, the Court should establish that those agreements were properly executed by the parties against whom they are to be enforced or by persons possessing actual authority to bind them.**

**Accordingly, Ms. Walker requests that the Court:**

1. **State on the record whether Richard Sackler personally signed the Shareholder Settlement Agreement and all other material settlement documents applicable to him;**
2. **State on the record whether Lin Gao personally signed the Shareholder Settlement Agreement and all other material settlement documents applicable to her;**
3. **If either individual did not personally execute the applicable agreements, identify:**
   - **the person who executed the agreements on that individual's behalf;**
   - **the legal authority under which that execution occurred;**
   - **whether a written power of attorney, corporate authority, agency authorization, or other written delegation exists; and**
   - **where that authority appears in the record;**
4. **Direct that any executed signature pages, written authorizations, or other documents establishing execution authority be produced and filed under seal if necessary, or otherwise made available for the Court's in camera review if confidentiality concerns exist; and**
5. **Enter findings of fact resolving these issues so that the record clearly reflects whether the material settlement agreements were executed by the appropriate parties or by duly authorized representatives.**

**Ms. Walker submits that resolving these questions is necessary to ensure the accuracy of the record, to permit meaningful appellate review if necessary, and to determine the enforceability of agreements involving non-debtor parties whose rights and obligations are central to the implementation of the confirmed Plan following the Supreme Court's decision in *Harrington*.**

rosemary helen ziziros walker          6.26.26          4:35pm

CERT OF SERVICE i promise i email served davis polk, akin gump, edgar g, howard israel, purdue pharma pi trust and paul s oh & this guy chuck@charleskurmay.com