UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (SHL) |
| Debtors. | |

--------------------------------------------------------X

### MEMORANDUM DECISION AND ORDER ON THE
### LATE CLAIM MOTIONS FILED BY JANICE LOJKO, ROSEMARY WALKER, SALLY ANN CATES, & JACQUELINE TORRES HERRERA

These bankruptcy cases were filed in 2019 to address the thousands of pending and potential lawsuits alleging that the Debtors and their owners—the Sackler family—fueled the national opioid crisis through, among other things, the deceptive marketing of OxyContin.  A large number of claims—over 130,000—were filed in these cases by individuals seeking recompense for their opioid related injuries.

Some seventeen claimants have filed motions seeking to have their claims accepted notwithstanding that the claims were filed after the bar date deadline by which the claimants were required to file their claims.  Given the need for consistency in the application of the bar date among all potential claimants, this Court previously postponed issuing a decision as to some previously filed motions seeking to allow late filed claims so that the Court could issue one decision on all such pending motions after a hearing on these issues.  *See Order Postponing Decision on Late Claim Motion* (contemplating one hearing as to all motions seeking to allow late filed claims) [ECF No. 9034];[1] *Maria Christina Ricarte's, As Trustee of the Plan Administration Trust, Omnibus Response and Objection to Motions to File Proofs of Claim after*

---

[1]     Unless otherwise indicated, references in this Memorandum of Decision to docket entries on the Case Management/Electronic Case Files ("ECF") system are to Bankruptcy Case No. 19-23649.

*Claims Bar Date* (the "Omnibus Objection") [ECF No. 9143].  The majority of these motions have been resolved.  Today the Court issues a decision to address the four remaining motions seeking such relief, which were filed by the following *pro se* parties, (1) Janice Lojko, (2) Rosemary Walker, (3) Sally Ann Cates and (4) Jacqueline Torres Herrera (collectively the "Late Claimants" or "Movants").  While the Court sympathizes with all victims of the opioid crisis, the Court denies these four late filed claims motions for the reasons set forth below.

## BACKGROUND

### A.    These Bankruptcy Cases

In September 2019 (the "Petition Date"), the Debtors filed petitions seeking relief under Chapter 11 of the Bankruptcy Code.  In January 2020, the Debtors filed a motion seeking to set a deadline by which all those who had claims against the Debtors would be required to file their claims.  *See Debtors' Motion for Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof* [ECF No. 717] (the "Bar Date Motion").  The Court subsequently entered an order approving the Bar Date Motion [ECF No. 800] (the "Bar Date Order").  The Bar Date Order established June 30, 2020, at 5:00 pm (Prevailing Eastern Time) as the deadline to file a proof of claim for all persons and entities (as defined therein) holding a prepetition claim, as defined in Section 101(5) of the Bankruptcy Code, against the Debtors which arose on or prior to the Petition Date.  *See* Bar Date Order at 2.  A subsequent order extended the initial bar date one month until July 30, 2020, at 5:00 pm (Prevailing Eastern Time) (the "Bar Date").  *See Order Extending Bar Date* [ECF No. 1221].

**B.     Notice of the Bar Dates**

Once the Bar Date was established, the Debtors conducted a comprehensive notice program to inform potential claimants of the deadline; this program provided actual notice to known claimants and provided notice to unknown creditors via publication in various forms and through various platforms (the "Publication Notice Plan").  *See Disclosure Statement for Thirteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* at 77 [ECF No. 7637] (the "Disclosure Statement"); *see also* Omnibus Objection at 3-4.  The forms of publication under the Publication Notice Plan included paid media (*e.g.*, television, radio, magazine, and newspaper), online displays across multiple devices and videos (*e.g.*, Youtube), social media campaigns (*e.g.*, Facebook, Twitter), out-of-home advertising (*e.g.*, billboards), earned media (*e.g.*, press release, blogs), and community outreach. Disclosure Statement at 77.  In the Bar Date Order, the Court found that the proposed noticing procedures, including the Publication Notice Plan, constituted good, adequate, and sufficient publication notice of the bar dates and procedures for filing proofs of claim in the Debtors' Chapter 11 cases.  Bar Date Order ¶ 19.

**C. The Late Claims Motions and the Plan Administrator's Response**

There were seventeen pending *pro se* claimants who filed motions seeking to have the claims they filed after the Bar Date accepted notwithstanding the fact that these claims were not timely filed. [2]  These motions were filed over an extended period of time.  The Court deferred

---

[2]      The seventeen motions seeking such relief included: *Motion to File Proof of Claim filed by Don W. Hardin* [ECF No. 3897]; *Motion to File Proof of Claim filed by Wayne B. Anderson* [ECF No. 4520]; *Motion to File Proof of Claim filed by Seung Han* [ECF No. 4888]; *Motion to Allow by Roy Howard Murry* [ECF No. 4889]; *Motion to File Proof of Claim filed by Edward N. Whiteman* [ECF No. 5095]; *Motion to File Proof of Claim filed by Richard Paiva* [ECF No. 5269]; *Motion to File Proof of Claim filed by Willard J. Hall* [ECF No. 5859]; Letter Requesting to File Late Claim by Travis Funke [ECF No. 7507]; *Motion to Approve filed by Travis J. Stewart* [ECF No. 7625]; *Letter requesting Permission to file a late claim filed by British D Moss* [ECF No. 7643]; *Letter to the Court regarding Purdue Pharma Oxycotin Claim filed by Janice S. Lojko* [ECF No. 7644]; *Motion to Allow by Eddie M. Vargas Sr.* [ECF No. 7694]; *See Motion in Purdue Pharma filed by Rosemary Walker* [ECF No. 7825]; *Notice to file*

3

holding a hearing on these motions until after the Reorganized Debtors emerged from bankruptcy in May 2026.  Once the Debtors' plan of reorganization went effective, Maria Christina Ricarte, as Trustee of the Plan Administration Trust (the "PAT"), submitted an omnibus response to address the still outstanding motions seeking to allow late filed claims.  *See* Omnibus Objection. The PAT's Omnibus Objection addressed each of these seventeen late claim motions, with the PAT objecting only to four.  *Id.*  The PAT provided an explanation as to why the PAT was not objecting to thirteen of the motions.  *Id.*  The PAT noted that those thirteen claimants had, in the PAT's view, provided adequate justification for the delay in filing the claims.  These justifications included: (1) at the time of the Bar Date, certain claimants were incarnated and therefore had limited access to resources such as internet access and the law library or had limited time outside of their cells, severely impairing these claimants' ability to submit court papers; (2) certain non-incarcerated individuals were able to provide sufficient and detailed reasons related to certain acts of God—such as a tornado hitting their home or medical conditions—that prevented them from filing a proof of claim earlier; and (3) certain non-incarcerated individuals who filed motions relatively early in these cases and these individuals' circumstances—including lack of access to media—demonstrated a reasonable excuse for the delay.  *Id.* at Ex. A 1-5; *see also* Hr'g Tr. (May 24, 2026), 48:7-49:19 [ECF No. 9252].

As to the remaining four motions filed by the Movants here, the PAT encouraged these individuals to submit supplemental briefing in advance of the Court's hearing on the motions—which were ultimately heard on May 20, 2026—to address the applicable legal standard of

---

*Late Claim filed by Michael Walker* [ECF No. 7792]; *see General Opioid Claimant Proof of Claim Form filed by Sally Ann Cates* [ECF No. 7886]; *see Letter dated September 22, 2025 filed by Jacqueline Torres Herrera* [ECF No. 7919]; *Letter submitted by Michael C. Stevens* [ECF No. 8446]; s*ee also* Omnibus Objection, Ex. A (listing the 17 claimants that have made formal requests for their claims to be permitted as late filed and the Plan Administration Trust's position as to each).

excusable neglect, which was explained in the PAT's Omnibus Objection. Omnibus Objection at 1-2. Specifically, the PAT explained that these four individuals should provide "any additional information they have for why they were unable to file their Late Claim Motions and/or proofs of claim earlier." *Id.* at 15. With that general background, the Court will turn to the four motions at issue today.

### D.      Ms. Lojko's Motion to Permit Late Claim Filing

On July 2, 2025, Ms. Lojko filed a letter with the Court concerning her claim. *See Letter to the Court Regarding Purdue Pharma Oxycotin Claim Filed by Janice S. Lojko* [ECF No. 7644] ("Lojko Original Letter"). On July 8, 2025, the claims agent treated The Lojko Original Letter as Ms. Lojko's proof of claim and filed it on the claims register despite her failure to utilize an official proof of claim form. *See* Omnibus Objection Ex. A at 5. In September 2025, Ms. Lojko filed her *Letter to the Court Regarding Late Claims Motions/Request to File Late Claim* [ECF No. 7826] (the "Lojko First Supporting Letter"). Shortly after the Lojko First Supporting Letter was filed, the Debtors filed an objection asserting that Ms. Lojko's request for filing a late proof of claim did not meet the Second Circuit's strict application of the "excusable neglect" standard outlined in Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure. *See Debtors' Omnibus Objection to Late Claim Motions filed on September 10, 2025* [ECF No. 7840]. Almost a week later, Ms. Lojko filed her *Letter to the Court Regarding Motion to Object Debtor's Objection of Late Claims Filed by Janice S. Lojko* [ECF No. 7854] (the "Lojko Second Supporting Letter"). The PAT then addressed Ms. Lojko's claim in the Omnibus Objection. *See* Omnibus Objection at 13-14.

As for the reasons for her delay, Ms. Lojko states that she "made a few attempts to file [her] claim electronically . . . [and] she did file a claim in a timely manner when [she] was aware

[she] could [in June and July of 2025]." Lojko Original Letter at 1; Lojko First Supporting Letter at 1.  She also states that "[her] spouse passed away [in] 2017 . . . [she] was evacuated during the 2017 Tubbs fire [and her home was destroyed or damaged] . . . [she] was suddenly the sole care taker to help [her] daughter and her [daughter's children] . . . [she faced] [y]ears of financial struggles, grief, and guilt, and overwhelmingly long lasting stress mentally and physically . . . [she] had Covid for 3 months . . . [she] helped with homeschooling [her] 3 grandkids . . . [and that she faced a] 7-8 year period of overwhelming hardships, and loss." Lojko Second Supporting Letter at 1.  Ms. Lojko did not file a supplement in response to the PAT's Omnibus Objection but did appear at the hearing on this matter and rested on her previous submissions.  Hr'g Tr. (May 24, 2026) 69:21-70:18 [ECF No. 9252].

###### E.        Ms. Walker's Motion to Permit Late Claim Filing

Ms. Walker filed motions seeking to allow her late filed claim on August 25, 2025, and September 23, 2025.  *See Motion in Purdue Pharma Filed by Rosemary Walker* [ECF No. 7825] ("Walker Original Motion"); *Letter to the Court Filed by Rosemary Walker* [ECF No. 7885] ("Walker First Supporting Letter").  Ms. Walker generally alleges that she suffers from a qualifying disability under the Americans with Disabilities Act.  Walker Original Motion at 11-12.  In an email attached to her Late Claim Motion, Ms. Walker discusses a lawsuit she filed against Purdue and the Sackler family related to opioids in 2023, two years before she filed her proof of claim in these cases.  Walker Original Motion at 12 (Ms. Walker noting her case against the Sacklers in Marion County).[3]  In response to the Omnibus Objection specifically, Ms. Walker

---

[3]       Since the Omnibus Objection was filed, Ms. Walker has filed not less than sixteen pleadings seeking a variety of relief.  *See, e.g.*, *Motion to Allow Immediate TRO & Sanction Against Richard Sackler & Lin Gao per the Plan & ADA Fines from Maria Christina Ricarte From Pat & This Court for ADA Discrimination* [ECF No. 9228]; *Motion for Immediate Decision on Late Claim filed by Rosemary Walker* [ECF No. 9229]; *Motion to Approve* [ECF No. 9231]; *Motion for Immediate Hold on this Case* [ECF No. 9240]; *Evidence and Motion for Immediate TRO Stay Halt Pause* [ECF No. 9256].  While Ms. Walker's request to file a late claim is addressed by this Decision, her other requests for relief will be addressed by separate order.

filed her *Evidence for PAT Per Doc 9143 & Motion for Acceptance of My Purdue Pharma PI Claim Filed by Rosemary Walker* [ECF No. 9160] ("Walker Response").  As for the reasons for her delay in filing a claim, Ms. Walker asserts a variety of reasons, including that she lacked proper notice because she moved states, was "banished" from social media, and experienced hardship as results of a fire disaster and "icenado."  *See* Walker Response.

**F.      Ms. Cates Motion to Permit Late Claim Filing**

Ms. Cates filed her Late Claim Motion in September 2025.  *See General Opioid Claimant Proof of Claim Form Filed by Sally Ann Cates* [ECF No. 7886] ("Cates Original Motion").  In response to the Omnibus Objection, Ms. Cates filed a pleading asserting that her claim was submitted sometime in mid-2024 and that the claim was filed in a timely manner.  *Letter dated 5/15/2026* [ECF No. 9225] ("Cates First Supporting Letter").  Ms. Cates explains that her claim is based on the death of her brother, Peter Foester Smith, as a result of medical and physical complications associated with opioids.  *Id.* But her pleadings do not specifically address why Ms. Cates failed to submit her claim before the Bar Date.  *Id.*

**G.      Ms. Torres Herrera Motion to Permit Late Claim Filing**

On September 29, 2025, Ms. Torres Herrera filed her letter requesting leave to file a late filed claim.  *See Letter dated September 22, 2025 filed by Jacqueline Torres Herrera* [ECF No. 7919] ("Herrera Late Filed Claim Motion").  It discusses the underlying merits of her claim and hardships that she experienced in the years before the Bar Date.  *See* Herrera Late Filed Claim Motion.  Ms. Torres Herrera stated that due to a devastating car accident in 2016, her husband suffered major injuries resulting in him being prescribed opioid medications.  *Id.*  As for the reasons for any delay in filing her claim, Ms. Torres Herrera generally explains that trauma and financial hardship led to her being unaware of the original claim deadlines.  *Id.*  Ms. Torres

7

Herrera has not to date filed a proof of claim and her letter of September 2025 is her only filing in this case. *Id.*

## DISCUSSION

The Court recognizes that each of the individuals here has horrible tales of personal tragedy arising from opioid use. Assuming the truth of all these heart wrenching stories of personal loss, the Court is nonetheless required to apply the applicable legal standard to the facts provided so as to determine whether to grant the requested relief. The Court's tasks consist of two distinct parts. First, the Court examines whether appropriate notice of the Bar Date was provided in these cases. Second, the Court examines whether the failure to file a claim before the Bar Date satisfies the applicable legal standard for excusable neglect set forth by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 382 (1993). The Court conducts its analysis mindful of the role of a bar date "to prevent the floodgates from opening" as to late filed claims in a large bankruptcy case such as this one. *In re Roman Cath. Diocese of Syracuse*, 638 B.R. 33, 39 (Bankr. N.D.N.Y. 2022) (the floodgate concern is pronounced in very large bankruptcy cases and is magnified by the scope of abuse and number of survivors in this case); *see also In re AMR Corp.*, 492 B.R. 660, 667 (Bankr. S.D.N.Y. 2013).

### A.    Notice

In a bankruptcy case, creditors must be afforded notice "reasonably calculated, under all the circumstances to apprise" them of the pendency of a bar date. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "If a debtor that files for chapter 11 bankruptcy protection does not give 'reasonable notice' to a creditor of the bankruptcy proceeding and of the applicable bar date, the creditor's proof of claim cannot be constitutionally discharged." *In re*

8

*SVB Fin. Grp.*, 660 B.R. 60, 81 (Bankr. S.D.N.Y. 2024) (citing *Grant v. U.S. Home Corp.* (*In re U.S.H. Corp. of N.Y.*), 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998)). The type of notice that is reasonable or adequate depends on whether a creditor is "known" or "unknown" to the debtor. *Id.* at 82. On the one hand, "[k]nown creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date." *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995) (citing *City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953)); *see also In re Drexel Burnham Lambert Grp., Inc.*, 151 B.R. 674, 680 (Bankr. S.D.N.Y. 1993) (providing that, for known creditors, adequate notice requires actual written notice of the bankruptcy filing and of the bar date). On the other hand, due process generally requires that unknown creditors in a bankruptcy case receive constructive notice. *In re RML, LLC*, 657 B.R. 709, 720 (Bankr. S.D.N.Y. 2023) (citing *In re XO Commuc'n, Inc.*, 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003)) ("If . . . the creditor is 'unknown to a debtor . . . constructive notice is generally sufficient.'").

It is undisputed that the creditors here are subject to the unknown creditor standard. The PAT treats them as such, and none of the Movants argue that they were known creditors. *See* Omnibus Objection at 3 (explaining that the "Debtors engaged in a notice program . . . aimed at providing extraordinarily broad publication notice . . . to unknown potential claimants— including potential personal injury claimants, like the Movants—who believed that they had claims against the Debtors, but for whom the Debtors did not have any records or contact information.").

For unknown creditors, appropriate constructive notice can be fulfilled by publication. *See In re RML, LLC*, 657 B.R. at 720 (citing *In re XO Commuc'n, Inc.*, 301 B.R. at 739–94). As the Supreme Court has observed, constructive notice is generally sufficient for unknown creditors because "in the case of persons missing or unknown, employment of an indirect and

9

probably even futile means of notification is all that the situation permits and creates no constitutional bar to a final degree foreclosing their rights." *See Mullane* 339 U.S. at 317; s*ee also In re Best Prods. Co.*, 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992) (discussing notice to known creditors and noting that a bar date is strictly enforced unless a creditor has failed to receive adequate notice of the bar date).

Applying all of these principles to the facts here, the Court finds that the Debtors here provided unknown claimants, including these Movants, with legally sufficient notice.  The Debtors' Publication Notice Plan included notice through traditional media channels such as television, newspapers, and radio; online platforms such as YouTube and blogs; social media platforms such as Facebook; and public advertisements, such as billboards.  *See* Disclosure Statement at 77.  Debtors spent over $20 million on the Publication Notice Plan, which delivered over 1.5 billion "impressions." *See id.* (an impression reflects the total number of times the Publication Notice Plan was displayed across social media, display, and search platforms).  For that reason, the Court previously found that the Publication Notice Plan provided constitutionally good, sufficient, and adequate notice in the Bar Date Order.  *See* Bar Date Order ¶ 19; *see also Rezzonico v. H.R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) (the doctrine of "law of the case" provides that "when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case" (quoting *Arizona v. California*, 460 U.S. 605, 618, (1983)).

Indeed, the notice to unknown creditors here is more robust than notice approved by other courts in similar circumstances.  For example, the court in *In re RML* approved a more modest publication plan for bar date notice.  *See In re RML*, 657 B.R. at 716 (deeming notice by publication to be "good, adequate and sufficient for all relevant purposes" in a case involving

10

personal injury claimants contending that they developed gynecological cancers due to pre-bankruptcy exposure to the debtors' hair straightener products).  The publication and impression numbers in *In re RML* were far less extensive than those in this case, with the publication in *RML* consisting of (1) publication in the national editions of the *New York Times*, *USA Today*, *The Globe*, and *Mail* in Canada, and (2) internet notice through the worldwide web and social media, resulting in over 46.6 million online impressions.  *See id.* at 714–16.  Similarly in *In re Best Prods. Co.*, the court found that it would have been unreasonable for the debtor to publish notice in all local newspapers throughout the country regarding the bar date, and instead approved notice provided in the national editions of *The Wall Street Journal* and *The New York Times*, as well as in the three more local papers.  *See In re Best Prods. Co.*, 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992).

Two of the four Movants here complain about the adequacy of the notice provided.  Ms. Lojko states that "[she] was never notified by Purdue Pharma that the drug they sold was proven to be addictive and could kill.  And that they were being sued, and filing Bankruptcy."  Lojko Second Supporting Letter at 1 n.3.  Similarly, Ms. Walker asserts, largely based on analysis performed by her "ai lawyer," that the notice campaign targeted heavily affected geographic regions and disproportionately affected demographic groups, and that she never saw the ads due to a litany of conditions including COVID, natural disasters, and banishment from social media. Walker Response at 9.  While the Court sympathizes with the plight of Ms. Lojko and Ms. Walker, it is well established that "it is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read."  *In re Best Prods. Co.*, 140 B.R. at 358; *see also Mullane*, 339 U.S. at 317–318 ("impracticable and extended searches are not required in the name of due process.").

Given the record here, therefore, the Court concludes that unknown creditors—including Ms. Lojko, Ms. Walker, Ms. Cates, and Ms. Torres Herrera—received constructive notice consistent with the requirements of applicable law.  When unknown creditors receive appropriate notice—as is the case here—they are required to file the claim before the applicable bar date unless they can establish excusable neglect under the *Pioneer* standard.  *See In re AMR Corp.*, 492 B.R. at 666 (holding that "[b]ecause movant received notice, the Court finds that it was within movant's control to file the claim before the Bar Date."); *see also In re Sirgold, Inc.*, 2023 Bankr. LEXIS 1167, *11 (Bankr. S.D.N.Y 2023) (citing *In re Queen Elizabeth Realty Corp.*, 586 B.R. 95, 108 (S.D.N.Y. 2018)) (stating "[w]here a creditor was on notice of the bar date and fails to act, courts generally do not find excusable neglect.").

## B.    The Excusable Neglect Standard

Turning to the second part of the analysis, the Court examines whether Ms. Lojko, Ms. Walker, Ms. Cates, and Ms. Torres Herrera's failure to timely file their proof of claims was due to excusable neglect.

Fed. R. Bankr. P. 9006(b)(1) states that "the court, for cause shown, may at any time in its discretion . . . on motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect."  The Supreme Court has held that the term "neglect" means "to give little attention or respect to a matter, or . . . to leave undone or unattended to esp[ecially] through carelessness." *Pioneer*, 507 U.S. at 388.  Neglect "encompasses both simple, faultless omissions to act, and more commonly, omissions caused by carelessness." *Id.*  Whether the failure to file a timely proof of claim constitutes excusable neglect under Rule 9006(b)(1) is an equitable determination "based on all the relevant circumstances surrounding the party's omissions." *See In re Roman Cath. Diocese of Rockville*

12

*Ctr. N.Y.*, 2023 Bankr. LEXIS 1747, at * 5 (Bankr. S.D.N.Y. July 12, 2023).  A movant has the burden to prove "neglect . . . 'caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control'" and that the neglect was "excusable."  *In re DPH Holdings Corp.*, 434 B.R. 77, 82 (S.D.N.Y. 2010); *see also In re RML*, 657 B.R. at 718 (citing *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005)).

In *Pioneer*, the Supreme Court set forth a four-factor test for determining whether excusable neglect exists under Fed. R. Bankr. P. 9006(b)(1): "(1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith."  *Pioneer*, 507 U.S. at 395.  The Second Circuit has adopted a strict standard in applying the *Pioneer* test.  *See In re Johnson Manville Corp.*, 476 F.3d 118, 124 (2d Cir. 2007); *Enron Corp.*, 419 F.3d at 115 ("[The Second Circuit has] taken a hardline approach in applying the Pioneer test.") (internal citations and quotations omitted).  This approach predominantly emphasizes the third *Pioneer* factor—the reason for delay, including whether it was within the reasonable control of the movant—because the other three *Pioneer* factors rarely weigh against the party seeking the extension.  *See Enron Corp.*, 419 F.3d at 122; *id.* at 132 ("[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule, and . . . where the rule is entirely clear, we continue to expect that a party claiming excusable neglect, in the ordinary course, will lose under the *Pioneer* test.") (internal quotations omitted).

## C.  The First, Second, and Fourth *Pioneer* Factors

The Court starts by turning to the first and second *Pioneer* factors: (1) the danger of prejudice to the debtor, and (2) the length of the delay and its potential impact on judicial

proceedings.  The Court concludes that allowing Ms. Lojko, Ms. Walker, Ms. Cates, and Ms. Torres Herrera's late claims would prejudice the Debtors and claimants who filed timely claims. The Court also finds that the length of delay in each instance here is substantial and may greatly affect these proceedings.

There is no specific threshold that defines when a claim's lateness is "substantial." *Enron Corp.*, 419 F.3d at 128.  Instead, courts evaluate how much the delay might disrupt the judicial administration of that case, with a particular concern about opening the floodgates to potential claimants in large cases such as the ones here.  *See In re Dana Corp.*, 2007 Bankr. LEXIS 1934 at * 6 (Bankr. S.D.N.Y. May 30, 2007); *see also Enron Corp.*, 419 F.3d at 132 n.2 ("[C]ourts in this and other Circuits regularly cite the potential flood of similar claims as a basis for rejecting late-filed claims") (internal citations omitted).  All the late filed claims here were filed in the middle of 2024 or in 2025.  *See* Lojko Original Letter (accepted by Debtors' claim agent as a proof of claim on July 8, 2025); Walker Original Motion (Ms. Walker filed proofs of claim on August 25, 2025 and September 15, 2025); Cates First Supporting Letter (stating that Ms. Cates' claims were filed in the middle of 2024); Herrera Late Filed Claim Motion (Ms. Torres Herrera has not to date filed a proof of claim and this letter dated September 22, 2025 is her first filing in this case). Thus, these four claims were filed between four and five years after the Bar Date of July 30, 2020.  Such substantial delay risks opening the floodgates and inviting untold numbers of late claims, particularly given the scope of the allegations as to Debtors' opioid related activities and the already large claim pool of over 130,000 claimants.  *See Roman Cath. Diocese of Syracuse*, 638 B.R. at 39.  There is great risk that expanding the period of time for filing claims for so many years would render the bar date a nullity, and harm both the Reorganized Debtors and existing creditors who have waited so many years for their claims to be paid in these

cases.[4]  *See Midland Congregation Venture L.P. v. Enron Corp.* (*In re Enron*), 419 F.3d 115, 132

(2d. Cir. 2005) (affirming finding by bankruptcy court denying leave to file late claim where

proposed claim was "sufficiently large and insufficiently indistinguishable" from others to create

a "floodgate" concern, especially given that the movant "introduced no evidence concerning the

number of potential claimants who might have been prompted to file late claims in the wake of a

ruling in [the movant's] favor.").

Regarding the fourth *Pioneer* factor—good faith—the Court has no reason to believe that

Ms. Cates, Ms. Torres Herrera, Ms. Lojko, and Ms. Walker did not act in good faith, nor do the

Debtors or PAT make such argument.  *See* Omnibus Objection.  However, it is well established

that the "good faith" factor rarely comes into play in a way that cuts against claimants.  *In re*

*RML, LLC*, 657 B.R. at 729 (citing *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 104

(Bankr. S.D.N.Y. 2007); *In re Ditech Holding Corp.*, 2021 Bankr. LEXIS 2100, at *6 (Bankr.

S.D.N.Y. Aug. 4, 2021)).  Accordingly, this factor is not afforded great weight.  The Court will

next address each claimant's facts separately under the third and most important factor of the

*Pioneer* test: the Movants' reasons for the delay in filing their claim.

### D.  The Third Pioneer Factor as to each Movant

#### 1.  Ms. Lojko

The Court finds that Ms. Lojko's reason for delay is legally insufficient to meet the strict

standard for the third factor of *Pioneer*.  Her reasons for delay include the sudden loss of her

spouse, evacuation from her home due to a wildfire, damage or destruction of her home by the

---

[4]    Mindful of the prolonged nature of these cases, the confirmed plan promises a prompt payment to
individual claimants.  Hr'g Tr. 77:24-78:19 (November 14, 2025) [ECF No. 8253] (Debtors' counsel's closing
statement at confirmation stating that personal injury claimants would be paid "up front with no time delay" while
other creditors, including governmental entities, would be paid over a period of fifteen years).  As a practical matter,
it would be impossible to honor that promise if the Bar Date is reopened.

wildfire, serving as the "sole caretaker to help [her] daughter with her children . . . overwhelmingly long lasting stress mentally and physically[,]" selling and relocating her residence, experiencing "[y]ears of financial struggles, grief, and guilt[,]" enduring three months of COVID-19, assisting with homeschooling her grandchildren, facing "[a] 7-8 year period of overwhelming hardships, and loss[,]" and not receiving timely notice.  *See* Lojko Second Supporting Letter at 1.  Although the Court greatly sympathizes with Ms. Lojko's challenges, these reasons do not legally satisfy the third *Pioneer* factor because there is not a sufficient explanation as to why these events would result in a nearly five-year delay in filing a claim.  *See Jeweler's Mut. Ins. Co. v. McCrory Corp. (In re McCrory Corp.)*, 1994 U.S. Dist. LEXIS 947, * 4–5 (S.D.N.Y. 1994) (holding that a fire in the debtor's store that "occurred almost two years before the proofs of claim were filed" did not amount a reason for delay that is sufficient to constitute excusable neglect); *Alexander v. Saul*, 5 F.4th 139, 194 (2d Cir. 2021) (relocating residence and mental condition did not provide a compelling reason for the failure to file a timely claim); *Aksman v. Greenwich Quantitative Research* LP, 2021 U.S. Dist. LEXIS 243396, *4 (S.D.N.Y. 2021) (illness or disability by itself does not amount to excusable neglect); *Claimant 20101 v. Roman Cath. Diocese Ctrs. (In re Roman Cath. Diocese of Rockville Ctr.)*, 2024 U.S. Dist. LEXIS 14433, *4 (S.D.N.Y. 2024) (taking time to seek the strength to seek legal redress is insufficient to satisfy the excusable neglect standard because cases finding excusable neglect involve "confusion about the nature of the[] claims or relevant deadlines or interfered with the notice process[.]"); *Favata v. JD Motors of Cny, Ltd.*, 2025 U.S. Dist. LEXIS 110474, * 14 (N.D.N.Y. 2025) (becoming a caregiver to someone is not a sufficient reason for delay if it was not a sudden imposition).  Indeed, this Court has reached a similar conclusion in a prior request in these cases.  *See Ecke v. Purdue Pharma L.P. (In re Purdue Parma L.P.)*, 2023 U.S. Dist.

LEXIS 162411, *17 (S.D.N.Y. 2023) (affirming denial of motion seeking leave to file a late claim and holding that it is not inequitable to deny a party's leave to file a late claim after the bar date even where the party is "full of pain, anguish, [and] grief . . . due to trauma inflicted by Purdue Pharma.").

Ms. Lojko argues that she had problems filing her proof of claim. More specifically, Ms. Lojko states that she "made a few attempts to file [her] claim electronically [and] did file a claim in a timely manner when [she] was aware [that she] could." Lojko Original Letter at 1. But these difficulties do not change the result here given the other relevant facts. Notably, Ms. Lojko only began attempting to file electronic claims in June and July of 2025, nearly five years after the Bar Date, meaning that these technological issues do not explain the delay up to that point. In any event, technology issues are generally not sufficient to excuse an untimely filing over an extended length of time. *See e.g., Doroz v. TECT Utica Corp.*, 2013 U.S. Dist. LEXIS 153887 at *14 (N.D.N.Y. 2013) (noting that oversights due to technology conceivably could give rise to a finding of excusable neglect); *but see Peters v. Wal-Mart*, 876 F. Supp. 2d 1025, 1040 (N.D. Ind. 2012) (noting that technological issues may excuse a delay on the last day to file, but they do not explain other circumstances delaying filing). This is particularly where, as here, a proof of claim could also be submitted by mail, as explained on the website of the Debtors' claim agent. *See* Kroll Restructuring Administration LLC "Submit a Claim" page, https://restructuring.ra.kroll.com/purduepharma/EPOC-Index (last visited June 26, 2026) (stating that proofs of claim could be filed by U.S. Postal Service Mail, Overnight Mail, delivered by hand, or submitted electronically).

2.   Ms. Walker

Ms. Walker asserts that the excusable neglect standard is satisfied given her personal circumstances, including (1) "being a qualified disabled American;" (2) "banishment from social media;" (3) interstate relocation; (4) the COVID pandemic; (5) a "fire declared disaster in Salem Oregon;" (6) an "icenado after firenado;" (7) "hotel fire while I was disabled & displaced;" and (8) "having no internet at times."  Walker Response at 23-28.   As Ms. Walker explains in her pleading, all the circumstances occurred before she learned about the instant bankruptcy case while it was on appeal before the Supreme Court in early 2024.  *Id.* at 23.  In support of her request, Ms. Walker includes a variety of documents, including: (1) an insurance claim stating that a falling object caused a loss related to her residence on February 13, 2021; (2) screenshots of certain twitter accounts presumably used by Ms. Walker that were suspended; and (3) a parking permit for accessible parking locations.  *Id.* at 24-26.

Ms. Walker's circumstances, while certainly difficult, do not satisfy the high standard for excusable neglect.  While Ms. Walker cites her disability in support of excusable neglect, she does not articulate why it prohibited her from receiving notice or filing a proof of claim.  Indeed, "[i]llness or disability alone does not constitute excusable neglect." *J.K.L. Sales, Inc. v. Flaxer* (*In re Lehr Constr. Corp.*), 2017 U.S. Dist. LEXIS 15047, at *4 (S.D.N.Y. Feb. 2, 2017) (collecting cases).  The disability must "involve extraordinary circumstances, such as a sudden, unexpected, or catastrophic illness, or the party [must point] to specific facts and circumstances demonstrating why the . . . disability has caused them to miss the original deadline." *Id.* (footnote omitted).  Indeed Ms. Walker's disability has not prevented her from filing numerous pleadings in these cases or otherwise being actively involved in these bankruptcy cases.  *See e.g.*, Walker Confirmation Objections [ECF Nos. 7771, 7825, 7835, 7855]; Modified Bench Ruling at 54-62

[ECF No. 8270] (addressing Ms. Walker's confirmation objections); Order Denying Motions for

Stays Pending Appeal [ECF No. 8727] (addressing Ms. Walker's motion for a stay pending

appeal); Order Denying Submissions by Pro Se Claimants [ECF No. 9093] (addressing 24

separate docket submissions by Ms. Walker);  Memo Endorsed Order dated June 24, 2026 [Case

No. 7:25-cv-09681] [ECF No. 117] (Order by District Court in appeal of this case reiterating that

Ms. Walker must seek leave and permission to file motions due to repeated filings).

By Ms. Walker's own admission, she learned of these bankruptcy cases in early 2023.

Walker Response at 2 (noting that she filed her lawsuit as soon as she heard about the Purdue

Pharma case before the Supreme Court).  But her lack of action after she learned of these cases

undermines her request here.  Ms. Walker did not seek to file a claim in these bankruptcy cases

for some two years after she learned of these bankruptcy cases in 2023; this is true even though

she filed her lawsuit against both the Debtors and Sackler family in 2023.  *See* Walker First

Supporting Letter at 1.  Ms. Walker's only justification for this delay is her belief that her Oregon

lawsuit somehow had been joined to the bankruptcy.[5]  *Id.*  To the extent Ms. Walker rests on this

mistaken legal conclusion, however, such conduct does not constitute excusable neglect.  *See In

re Motors Liquidation Co.*, 576 B.R. 761, 778-79 (Bankr. S.D.N.Y. 2017) (holding that a

claimant who did not file a claim because he believed his claim had not accrued made a mistake

of law that did not constitute excusable neglect); *see also Canfield v. Van Atta Buick/GMC Truck

Inc.*, 127 F.3d 248, 251 (2d Cir. 1997) (holding that, as a general matter, a mistake of law does

not constitute excusable neglect).[6]

---

[5]     The Court notes that Ms. Walker's lawsuit in 2023 against the Debtors was a violation of the bankruptcy automatic stay and thus it was null and void. *See, e.g.*, *Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (automatic stay is effective immediately upon filing of bankruptcy petition, and any subsequent proceedings against debtor or debtor entities are void).

[6]     The Court notes that in denying Ms. Walker's late filed claim, this denial does not affect her legal rights as to any claims she may have against the Sacklers in her state court lawsuit as the Sacklers are not Debtors in this

3. Ms. Cates

In response to the PAT's Omnibus Objection, Ms. Cates filed a letter in May 2026, explaining the circumstances surrounding the loss of her brother, and requesting accountability. But Ms. Cates does not provide any reason in either her original motion or her more recent May 2026 pleading to specifically address the four-year delay in filing her proof of claim, nor does she address the excusable neglect standard. Accordingly, the Court concludes that she has not satisfied the third *Pioneer* factor.

4. Ms. Torres Herrera

Ms. Torres Herrera filed the Herrera Late Filed Claim Motion over five years after the Bar Date. While she discusses the hardships she endured prior to Debtors' bankruptcy, her reason for delay was due to her being "unaware of the original claim filing deadlines." Herrera Late Filed Claim Motion. General unawareness, however, does not satisfy the excusable neglect standard as this Court has already found that unknown creditors received the appropriate constructive notice here. Accordingly, the Court finds that Ms. Torres Herrera's reason for the delay is legally insufficient to meet the third factor of *Pioneer*.

## CONCLUSION

For all the reasons discussed above, the four Motions seeking leave to file a late claim are denied. While the Court remains sympathetic to all the victims of the opioid crisis—including the four individuals here—the Court concludes that Ms. Lojko, Ms. Walker, Ms. Cates, and Ms. Torres Herrera do not satisfy the strict standard for excusable neglect.

**IT IS SO ORDERED.**

---

case. *See* Modified Bench Ruling at 57 [ECF No. 8270] ("a decision not to opt into the releases provided to the Sackler Parties is separate and apart—and does not prevent any claimant—from voting in favor of the Plan or receiving a distribution from the Purdue bankruptcy estates"). But Ms. Walker cannot be included in the separate Sackler Settlement that is part of these bankruptcy cases because she does not hold a timely claim against the Debtors. *Id.* at 11 (noting that only claimants may "opt-in" to the Sackler settlement).

20

Dated: White Plains, New York
      June 26, 2026

                                                                     */s/Sean H. Lane*
                                                   UNITED STATES BANKRUPTCY JUDGE

**Copies To:**

Janice Lojko
41 Plymouth Way
Santa Rosa, California 95403
Email: jlojko4818@hotmail.com

Rosemary Helen Ziziros Walker
1111 Waller Street SE
Salem Oregon 97302
Email: bigrosemary@gmail.com

Sally Ann Cates
1557 Pin Oak Circle
Roxboro, North Carolina 27573

Jacqueline Torres Herrera
300 E Adell St
Madera, California 93638
Email : Jacquielinetorresherrera@yahoo.com