**Laurie Danielle    Pitts-Tillman**

**℅ 5116 Georgia Highway 99**

**Brunswick Georgia [31525]**


**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**


**In re:**


**PURDUE PHARMA L.P., et al.,**


|  |  |
|---|---|
| **Debtors.** | **Chapter 11** |


**Case No. 19-23649 (SHL)**

**(Jointly Administered)**


**LAURIE DANIELLE PITTS-TILLMAN,**

**Objector,**

**APPLICATIONS FOR COMPENSATION OF RETAINED PROFESSIONALS**


**Reservation of Rights and Special Appearance**

Objector appears specially for the limited purpose of objecting to the pending Applications for Compensation and does not consent to the jurisdiction of this Court beyond what is necessary to present this Objection. Nothing contained herein shall be construed as a waiver of any previously

asserted or future challenge to subject-matter jurisdiction, constitutional authority, personal jurisdiction, venue, or any other jurisdictional, procedural, or substantive objection. Objector expressly reserves all rights, claims, defenses, and remedies, including all objections previously raised and those that may be raised in future proceedings or on appeal.

**OBJECTOR LAURIE DANIELLE PITTS-TILLMAN'S**

**OBJECTION TO APPLICATIONS FOR COMPENSATION**

### I.     The Systematic Depletion of Estate Assets Through Excessive Administrative Fees

The court-sanctioned distribution of massive professional compensation under the guise of administrative  necessity functions as an institutionalized mechanism that strips assets from the estate. Rather than preserving or recovering value for those harmed, the current framework allows court-appointed professionals and legal syndicates to absorb over a billion dollars in fees—effectively locking out rightful claimants and creditors from the recovery they are owed.

By utilizing jurisdictional fictions and administrative procedures that bypass traditional common-law protections and jury trials, these proceedings insulate systemic wealth extraction from genuine accountability. The result is a process where the estate's remaining capital is systematically consumed by the very administrative apparatus ostensibly meant to manage it, converting an insolvency proceeding into a self-sustaining enterprise for professional enrichment at the direct expense of justice.

### II.     Contesting the Expansion of Bankruptcy Estate Extraction

The Constitutional Boundary on Bankruptcy Powers (*Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935)*): The U.S. Supreme Court established that the bankruptcy power of Congress is explicitly bound and limited by substantive constitutional protections, prohibiting the wholesale dismantling of established property and creditor rights under statutory pretexts.

Separation of Powers and Article III Limits (*Stern v. Marshall, 564 U.S. 462 (2011)*): Non-Article III bankruptcy courts overstep constitutional boundaries when they adjudicate matters that do not fundamentally draw on a public right directly integral to the restructuring of the debtor-creditor relationship, improperly expanding administrative power to capture and disburse private funds.

III.     **The Doctrine of Unconstitutional Estate Depletion**: Building on principles from *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982),*

critics and legal challengers argue that utilizing administrative "core" classifications to systematically drain a debtor's assets for internal professional compensation bypasses the requisite protections of common-law adjudication and Article III oversight.

### IV. The Institutionalized Racket of Estate Milking

The Infinite Loop of Administrative Overhead: Rather than serving as a finite mechanism to resolve an insolvency, massive corporate restructurings transform into self-sustaining ecosystems where multiple layers of retained professionals—debtors' counsel, creditors' committees, special interest groups, financial advisors, and fee examiners—extract monthly compounding payouts directly from the pool of assets.

1. **Disproportionate Wealth Extraction vs. Claimant Recovery:** The cumulative professional fees generated across multi-year proceedings regularly eclipse hundreds of millions of dollars, directly cannibalizing capital that is nominally earmarked for victims or legitimate creditors.
2. **The Illusion of Internal Policing**: The reliance on "fee examiners" and routine interim fee applications creates a closed-loop system of internal validation. Minor, negotiated token reductions are used to legitimize an otherwise unchecked pipeline of professional self-enrichment, shielding systemic wealth extraction from true external accountability.

### V. Institutional Conflicts of Interest and the Appearance of Partiality

The Court should also carefully scrutinize these fee applications because the process presents an appearance of institutional bias that undermines confidence in the fairness of the proceedings. The professionals seeking compensation, the attorneys advocating for those requests, and many of the participants involved in the administration of this case all operate within the same professional legal community. (Members of the BAR association) While membership in the legal profession alone does not establish an actual conflict of interest, the Court cannot ignore that these fee applications are frequently reviewed and approved within an insular system in which the same professionals repeatedly appear before the same tribunals seeking compensation from the same estate.

The bankruptcy process depends upon rigorous, independent judicial review of every fee application because the professionals requesting payment are effectively asking the Court to reduce the assets otherwise available for creditors and injured claimants. Where those requesting

payment largely negotiate among themselves, present largely uncontested fee requests, and rely upon internal review mechanisms rather than genuine adversarial testing, there exists at minimum an appearance that the process favors the interests of estate professionals over those of the individuals whose recoveries continue to diminish.

Professional compensation should never become a self-perpetuating enterprise. Every dollar awarded in administrative expenses is a dollar unavailable to injured claimants. Accordingly, this Court should apply the strict standards of 11 U.S.C. §§ 330 and 331 and require each applicant to prove that every requested dollar represents an actual, necessary, and reasonable expense that directly benefitted the estate rather than merely benefitting the professionals themselves.

Given the extraordinary amount of compensation already approved in this case, the Court should exercise heightened scrutiny to ensure that these proceedings do not create even the appearance that estate professionals are approving, defending, and perpetuating compensation practices that primarily enrich members of their own profession while substantially diminishing the recovery available to those the bankruptcy system is intended to protect.

The fee approval process in this case lacks meaningful adversarial review. The governing documents expressly contemplate that certain estate fiduciaries and professionals will either support or refrain from objecting to these fee applications. As a result, those who are charged with protecting the estate are not serving as independent adversaries with respect to professional compensation. Instead, the burden of challenging excessive administrative expenses falls almost exclusively upon the very victims and injured claimants whose recoveries are diminished by every dollar awarded in fees.

This creates an inherent appearance of institutional bias. Estate professionals are compensated from estate assets to prepare, defend, and support fee applications, while the claimants whose distributions are reduced must bear the burden of investigating and objecting without comparable resources or representation. When the parties with the greatest knowledge of the billing records are contractually or procedurally aligned in support of the requested compensation, meaningful judicial scrutiny becomes even more essential.

The Court therefore should not rely upon the absence of objections from estate professionals as evidence that the requested fees are reasonable. Where the governing documents provide that those professionals will support, or not oppose, such applications, the lack of objections is not an indication that the fees are justified. Rather, it underscores why the Court must independently examine every request under 11 U.S.C. § 330 and require each applicant to demonstrate that the services were actual, necessary, reasonable, and beneficial to the estate.

## VI.   Objection Based Upon Duplicative Compensation, Double Recovery, and Unjust Enrichment

The Court should deny or substantially reduce the requested compensation because the Applicants have failed to demonstrate that the fees sought do not constitute duplicative compensation or an impermissible double recovery.

Some of the firms requesting compensation represented individual claimants pursuant to private attorney-client agreements, including, but not limited to, **Andrews Higgins LLP** and **ASK LLP**. These firms were retained by their own clients under contractual fee arrangements and were entitled to seek compensation through those agreements. To the extent these firms have already received retainers, contingency fees, settlements, contractual payments, or other compensation from their clients or any other source, any additional recovery from the bankruptcy estate raises serious concerns regarding duplicative compensation and unjust enrichment.

Under 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016(a), each Applicant must establish that the requested compensation is reasonable and represents actual and necessary services, while disclosing payments previously made or promised for services rendered or to be rendered in connection with this case and the source of such compensation.

The Applicants have failed to provide a complete accounting demonstrating that the fees requested are not duplicative of compensation already received through private fee agreements or other payment arrangements.

Permitting estate professionals to recover compensation from both their private clients and again from the limited assets of the bankruptcy estate, without full disclosure and accounting, would result in an inequitable double recovery. Such payments unjustly enrich the professionals while directly diminishing the funds available for injured claimants and other legitimate creditors.

The Court should therefore require every Applicant to disclose under oath all compensation received from every source, including but not limited to retainers, contingency fees, contractual payments, settlement proceeds, insurance payments, reimbursements, and any other remuneration related to services performed in connection with these proceedings. Without such disclosures, neither the Court nor the parties can determine whether the requested compensation complies with the requirements of 11 U.S.C. § 330 or instead represents an impermissible double recovery.

Because the estate exists for the benefit of creditors and injured claimants—not to provide multiple layers of compensation for the same professional services—the requested fees should be denied unless and until each Applicant proves that no portion of the requested compensation duplicates payments previously received from any other source. At a minimum, the Court should order a complete accounting of all compensation received before authorizing any further payment from the bankruptcy estate.

**VII.      Appearance of Impropriety and Possible Ex Parte Communications**

The Court should also consider the appearance of impropriety surrounding these proceedings. During the confirmation process, counsel who previously represented the Objector informed the Objector that the Plan had already been approved before the Court publicly announced its ruling in open court. If certain parties were informed of the Court's decision before it was publicly announced and before all interested parties received notice, such circumstances raise serious questions regarding the fairness, transparency, and integrity of these proceedings.

Whether these circumstances resulted from improper ex parte communications or otherwise created the appearance of preferential access or advance knowledge, they undermine public confidence in the impartial administration of justice. At a minimum, these facts warrant heightened scrutiny of the fee applications submitted by the professionals who participated in these proceedings.

The integrity of the judicial process depends not only upon actual impartiality but also upon the appearance of impartiality. Where questions arise concerning whether certain parties possessed advance knowledge of a judicial ruling affecting billions of dollars in estate assets before that ruling was announced in open court, the Court should exercise extreme caution before approving additional compensation for those same professionals.

Accordingly, the Court should require full transparency regarding the circumstances surrounding any advance notice of the Court's ruling and should consider whether such circumstances weigh against awarding additional compensation or, at a minimum, require heightened scrutiny of every fee application presented in this case.

**VIII.      CONCLUSION**

This Court serves as the final guardian of the integrity of the bankruptcy process. Objector respectfully contends that the Applicants have not met their burden under 11 U.S.C. § 330.

Applicants bear the burden of proving that every dollar requested is actual, necessary, reasonable, and authorized by law. They have failed to meet that burden. Instead, the record reflects extraordinary administrative expenses, the potential for duplicative compensation and unjust enrichment, a lack of meaningful adversarial review, institutional relationships that warrant heightened scrutiny, and circumstances raising serious concerns regarding the fairness and transparency of the fee approval process.

The Bankruptcy Code was enacted to preserve and equitably distribute estate assets for the benefit of creditors and injured claimants—not to permit the systematic depletion of those assets through excessive professional compensation. Every unnecessary dollar awarded in fees directly

diminishes the recovery available to those who suffered the injuries giving rise to these proceedings.

**REQUEST FOR RELIEF**

**WHEREFORE**, Objector Laurie Danielle     Pitts-Tillman respectfully requests that this Court:

A. Deny the pending Applications for Compensation in their entirety or, alternatively, substantially reduce the requested fees;

B. Require each Applicant to strictly comply with **11 U.S.C. §§ 330** and **331** and **Federal Rule of Bankruptcy Procedure 2016** by filing a complete, sworn accounting identifying all compensation received or promised from every source, including retainers, contingency fee agreements, settlements, contractual payments, insurance proceeds, reimbursements, and any other form of remuneration related to this case;

C. Require each Applicant to demonstrate that no portion of the requested compensation constitutes duplicative compensation, unnecessary duplication of services, unjust enrichment, or an impermissible double recovery at the expense of the bankruptcy estate;

D. Conduct an evidentiary hearing, if necessary, to determine the reasonableness and necessity of the requested fees and to permit inquiry into the issues raised in this Objection;

E. Require disclosure of any communications or circumstances relating to advance knowledge of the Court's confirmation ruling, to the extent the Court finds such inquiry appropriate, in order to preserve public confidence in the integrity of these proceedings;

F. Grant such other and further relief as the Court deems just, equitable, and proper.

**Justice is not measured by the amount paid to professionals, but by the fairness of the process and the protection afforded to those whose rights and recoveries are entrusted to the Court.**

Respectfully presented,

/s/ Laurie Danielle    Pitts-Tillman

Pro Se/Sui Juris Objector

All rights reserved Ucc1-308

Dated August 7, 2026

**CERTIFICATE OF SERVICE**

I, Laurie Danielle Pitts-Tillman, hereby certify that on this 7th day of August, 2026, I filed the foregoing **Objection to Applications for Compensation** with the United States Bankruptcy Court for the Southern District of New York by presenting it through the Court's Pro Se Electronic Document Upload System.

I further certify that on the same date, I served a true and correct copy of this Objection by electronic mail upon counsel for the Debtors and any other party required to be served in accordance with the Federal Rules of Bankruptcy Procedure.

Dated this 7th. day of August, 2026.

/s/ Laurie Danielle   Pitts-Tillman

Pro Se/ Sui Juris Objector

All rights reserved Ucc 1-308

℅ 5116 Georgia Highway 99

Brunswick, Georgia [31525]