**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| *In re*<br><br>In re:<br>PURDUE PHARMA L.P., *et al.*,<br>Debtors.[1] | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Chapter 11<br><br>Case No. 19-23649 (RDD)<br>(Jointly Administered) |

**CERTAIN THIRD-PARTY PAYORS' MOTION FOR ALLOWANCE OF CLAIMS**

The below-listed group of third party payors ("TPPs") (hereinafter "Certain TPPs")[2], by and through their undersigned counsel, hereby moves this Honorable Court for allowance of their Proofs of Claim timely-filed with the Trustee of the Third-Party Payor Trust in this case.[3]

AFSCME Local 590
Ohio AFSCME Care Plan
Asbestos Workers of Philadelphia Welfare and Pension Funds
Avon Grove Area School District
Borough of Dunmore
Greater Pa Carpenters Fund
Cement Masons Local 592 P&W Fund
Chester County Intermediate Unit
Chester Water Authority
Coatesville Area School District
Downingtown Area School District
GCIU Badger
Graphic Communications National Health & Welfare Fund
Great Valley School District

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent.

[2] The "**Certain TPPs**" consists of the above listed fifty-seven (57) TPPs.

[3] We understand from counsel for the Trustee, Attorney Christopher Battaglia, that Alan D. Halperin was appointed as the Third Party Payor Claims Administrator (hereinafter, "**TPP Trustee**"). *See* March 20, 2026 email from Mr. Battaglia **Exhibit "A"** hereto.

| |
|---|
| Haverford Township |
| IAFF Local 22 |
| IAM District 15 Health Fund |
| IBEW Local 81 |
| IBEW Local 126 H&W Fund |
| IBEW Local 313 (NECA) |
| IBEW Local 607 |
| IBEW Local 654 H&W Fund |
| Ironworkers Local 11 |
| Ironworkers Local 17 |
| IUPAT District Council 21 & 711 |
| Kennett Consolidated School District |
| Laborers Local 310 |
| Law Enforcement Health Benefits |
| Local 274 H&W Fund |
| Lower Moreland School District |
| Operating Engineers Local 66 |
| Operating Engineers Local 542 |
| Owen J. Roberts School District |
| Phoenixville Area School District |
| Plumbers & Pipefitters Local 74 |
| Plumbers Local 690 |
| Roofers Local 30 |
| School Cafeteria Employees Union #634 |
| SEIU PSSU Local Unit H&W Fund |
| SEIU Local 32BJ District 36 Benefit Funds |
| Spring Ford Area School District |
| Teamsters Industrial Employees |
| Teamsters Local 641 |
| Teamsters Local 830 |
| Teamsters Local 917 |
| Toledo Electrical Welfare Fund |
| Tredyffrin Easttown School District |
| Trucking Employees of NJ |
| UAW Local 259 |
| UAW Local 259n fka 365 |
| UFCW & Participating Food Industry Employers & 880 H&W Fund |
| UFCW Local 152 H&W Fund |
| UFCW Local 360 |
| UFCW Tri-State H&W Fund |
| Upper Darby School District |
| USW Local 10-00086 Merck Employees H&W Fund |

| |
|---|
| West Chester Area School District |
| West Virginia Pipe Trades H&W Fund |

In support of this Motion, the Certain TPPs aver as follows:

**RELIEF REQUESTED**

1. By this Motion, the Certain TPPs (the "Movant") seek an order from this Honorable Court substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing and allowing the Movant's Proofs of Claim for their respective, proportionate shares of the Third Party Payor Trust. Certain TPPs, all self-funded TPPs, should be given the entirety of their claims, as well as their entire portion of claims filed on their behalf by others and potentially claimed by others without proper authority to so claim.

**JURISDICTION**

2. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Rules 2002 and 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicate for the relief requested herein is Bankruptcy Rules 9014 and 7023 and 11 U.S.C. §105(a).[4]

[4] To the extent the issues presented by this Motion present issues of first impression in this Court, Section 105(a) provides: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C.§105(a).

## BASIS FOR RELIEF

1. The Certain TPPs all filed Proofs of Claims in this Chapter 11 case on September 30, 2025, the deadline for such submission.

2. The "Third-Party Payor Trust Claim Form" submitted was the same form provided to TPPs for submission of such claims. *See* Third-Party Payor Trust Claim Form, and ledger of claims, signed by creditor counsel at Haviland Hughes at **Exhibit "B"** hereto.

3. Counsel for the TPP Trustee acknowledged receipt of the "Third Party Payor ('TPP') Master/Consolidated Claim No. 2188- (along with Sub-Claim Nos. 21822-21879) filed in this case." Ex. A at 1. The TPP Trustee did not take issue with the filing of an aggregate claim by counsel, as such form of claim submission has been approved by this Court and used by multiple claimants, including the large insurance companies who provide third-party administration ("TPA") services to self-funded TPPs, like the Movant Certain TPPs here.

4. Counsel for the TPP Trustee acknowledged in his March 20, 2026 email that the Proofs of Claim filed by the following three (3) Certain TPPs were appropriate, and would be allowed:

21827 Greater Pennsylvania Carpenters Fund ("**Pa Carpenters**") $12,160,220.63

21857 Plumbers Local Union No. 690 Health Plan ("**Plumbers Local 690**") $88,048.96

21858 Roofers Local 30 $1,031,530.39

*See* Ex. A at 1.

5. The TPP Trustee, through counsel, took issue only certain aspects of the remaining 54 claims of the Certain TPPs.

6. Accordingly, this Motion addresses the stated grounds for the TPP Trustee's remaining objections to these 54 claims.

7. As set forth in the March 20, 2026 email, the TTP Trustee raised the following concerns as to the remaining 54 claims.

8. First, while counsel for Certain TPPs filed the claims "in a representative capacity", as allowed by the notice, and provided the requisite W9, the TPP Trustee required "some proof of [the firm's] agency and capacity on behalf of the various sub-claimants." *Id*. at 2. Specifically, the TPP Trustee required "documentation that establishes such agency/capacity (e.g., an appropriate agency, trust or retainer agreement)." *Id*. (hereinafter, the "**Capacity Objection**")

9. Second, the TPP Trustee claimed "[i]t is not clear that the claimants included in the Claims are in fact Third-Party Payors, as defined in the Plan. We will need organizational documents, completed W9s and any other relevant document for each of the sub-claimants identified in the Claims that is clearly not listed as a health, welfare and/or benefit fund, to help establish that they are in fact Third-Party Payors." *Id*. (hereinafter, the "**TPP Status Objection**")

10. The TPP Trustee specifically identified only five (5) claimants as "being ineligible because they are "Domestic Government Entities (and are not asserting claims via a private TPP)": (1) Borough of Dunmore, (2) Cheshire (sic) County Intermediate Unit,[5] (3) Cheshire (sic) County (Water Authority), (4) Haverford Township, and (5) Law Enforcement Health Benefits. *Id*.

11. Third, the TPP Trustee questioned whether the claims were filed "by the Original Bar Date (July 30, 2020)." *Id*. (hereinafter, the "**Bar Date Objection**") The TPP Trustee stated further:

> the Claims can only be considered for distributions from the TPP Trust if the claimant filed or was included in a proof of claim by the Original Bar Date (July 30, 2020) and filed or was included in a claim filed with the TPP Administrator. However, **we have been unable to find** Original Bar Date claims for most of the entities identified in the Haviland firm's master/consolidated claim. We therefore anticipate disallowing most of

[5] Movant expects the TPP Trustee was referring to the Chester County Intermediate Unit ("CCIU")", the entity that "provides services to the 12 school districts in Chester County", Pennsylvania. cciu.org/about/welcome

> the claims asserted in the Master/Consolidated claim in their entirety when initial determinations are made by Mr. Halperin, as the TPP Trustee.

*Id*. (emphasis added).

12. The TPP Trustee noted "there were three exceptions" and specifically identified the above three claimants: (1) Greater Pennsylvania Carpenters Fund, (2) Plumbers Local Union No. 690 Health Fund, and (3) Roofers Local 30. *Id*.

13. Fourth, the TPP Trustee identified five (5) claims as "appear[ing] to be duplicates of other Master/Consolidated Claims filed by established TPP Administrators on behalf of private TPPs." There were: (1) Coatesville Area School District ("**Coatesville**"), (2) Downingtown Area School District ("**Downingtown**"), (3) Kennett Consolidated School District ("**Kennett**"), (4) Phoenixville Area School District ("**Phoenixville**"), and (5) Tredyffrin Easttown School District ("**Tredyffrin Easttown**"). *Id*. (hereinafter, the "**Duplicate Objection**")

14. These five (5) school districts are part of the CCIU, and 5 of the 12 school districts in Chester County, Pennsylvania. *See* cciu.org/special-education/cciu-districts.

15. As explained below, it is noteworthy that the TPP Trustee **did not** challenge the proofs of claim filed by the other four Chester County schools as duplicative of any other four (4) filed Chester County school claims: (1) Avon Grove (ID HH004), (2) Great Valley (ID HH013), (3) Owen J. Roberts (ID HH032) or (4) West Chester (ID HH056).

16. With respect to the TPP Trustee's four (4) objections to Certain TPPs' claims, Mr. Battaglia wrote that, "[b]arring any further information to the contrary, when the TPP Claims Administrator/TPP Trustee makes his Initial Claims Determination, all of the above stated claims (with the exception of the [three]) will be objected to as ineligible for the various reasons asserted above." *Id*. at 3.

17. Undersigned counsel for Certain TPPs wasted no time in responding.

18. The same day Mr. Battaglia wrote, undersigned counsel wrote in response as follows:

> Mr. Battaglia,
> Thank you for your email following up on the firm's Master Claim submitted in accordance with the settlement instructions provided.
> We received acknowledgement of such conformity in conjunction with such submission.
>
> **As to your follow-up questions, we will work with you to satisfy your concerns, some of which appear to simply be a matter of confusion as to the status of this firm's clients and representation of such clients. We will endeavor to respond to your several inquiries as soon as practicable**, but likely will have certain follow up questions about what you are specifically seeking, and how others responded [given your reference to others below] so that we can fully satisfy you that this law firm represents all of the TPPs listed in our aggregate proof of claim.
>
> Kindly let us know your timetable for response so that we may remain compliant with the conditions of the TPP settlement distribution.

March 20, 2026 email at **Exhibit "C"** hereto (emphasis supplied).

19. Mr. Battaglia promptly responded, "Don give me a call on cell if you can…", which Mr. Haviland did. *Id*.

20. Since March 20, 2026, when the TPP Trustee first took issue with some, but not all, of Certain TPPs' proofs of claim, and over the course of the next several months, counsel for Certain TPPs worked diligently to satisfy the TPP Trustee's above-stated concerns. *See, e.g.*, email thread dated March 30, 2026 at **Exhibit "D"** hereto.

21. From Certain TPPs vantage, all the above concerns were satisfied, save one: the Bar Date Objection. All other objections were addressed (or should have been addressed) by Certain TPPs' submissions and/or discussions and agreement between counsel for Certain TPPs and the TPP Trustee's counsel.

22. As discussed more fully herein, as to the Bar Date Objection, Certain TPPs and their counsel contend, and expect to prove to this Court's satisfaction (after leave to take limited

discovery of the insurers is granted)[6], that the Certain TPPs' claims were timely filed and preserved by aggregate proofs of claim filed by their medical insurance carriers who have provide third party claims administration for the self-funded, Certain TPPs during the relevant time period.

23. Both Certain TPPs and their counsel were so told by such TPAs (and their counsel) when they sought the necessary medical claims information from their insurance carriers for purposes of submitting their proofs of claim for opioid expenditures in a related opioid matter. *See, e.g.*, **Exhibit "E"** hereto (emails with IBX counsel)[7]; **Exhibit "G"** hereto (emails with Highmark)[8];

---

[6] As the within Motion demonstrates, neither counsel for Certain TPPs nor counsel for the TPP Trustee have been able to get the counsel for the insurers to provide the information about their aggregate proofs of claim filed on behalf of their contracted, self-funded TPPs in order to finally determine whether or not timely claims were submitted by the Bar Date, as Certain TPPs expect and contend. Accordingly, counsel for Certain TPPs respectfully submits that limited discovery of the insurers who filed aggregate claims should be permitted so the parties and this Court are not left guessing about what was filed by the Bar Date by the insurers.

[7] IBX counsel claimed in December 2024 that IBX had "assignments" from its contracted self-funded TPPs. As discussed hereinbelow, a Court in the Eastern District of Pennsylvania subsequently, expressly found, after multiple rounds of submissions, hearings and arguments, IBX had no right to assert rights of their with self-funded TPPs (referred to "Administrative Services Only" or "ASO" customers) pursuant to their insurance agreements. *See* Order dated September 23, 2025,Dkt. 3698, in *In re: Generic Pharm. Pricing Antitrust Litig*., MDL No. 2724, 16-MD-2724 (Hon. Cynthia M. Rufe) (E.D.Pa.) (at **Exhibit "F"** hereto) at 5 ("The exclusion requests of Independence Blue Cross LLC are denied").

[8] Highmark conceded that it was filing claims on behalf of its contracted TPPs in all bankruptcies, including Purdue. As part of a ruling on "thousands of requests for exclusions" by the TPA insurers, Judge Rufe ruled last year that as to 85 submissions only, Highmark was able to demonstrate "their representatives [] explicitly grant[ed] authority to opt out" of the settlements; but as to the "other ASOs, there are no indications that the ASOs or their purported representatives can or did authorized Highmark to exclude them" from the settlements. Order at **Exhibit "H"** hereto, pp. 5, 7. The Philadelphia Court's Order evidences the fact that Highmark – like other TPAs/ASOs who filed aggregate proofs of claim with the TPP Trustee – may not have satisfied the TPP Trustee's "Capacity Objection" insofar as they have not demonstrated their authorization to proceed on behalf of the contracted, self-funded TPPs, like Certain TPPs here.

**Exhibit "I"** hereto (emails with Medical Mutual).[9]

24. With the TPAs' filings on behalf of their contracted, self-funded TPPs (or ASOs, as they call them), the Certain TPPs' proofs of claim should be deemed timely.

25. The Trustee so acknowledged the timeliness of Certain TPP claims with respect to one such claim that he *subsequently* determined had been filed by a TPA insurer on behalf of Coatesville. This undisclosed TPA filed a claim for self-funded Coatesville. The Trustee thus deemed Haviland Hughes' submission for Coatesville timely. But the same is true (and should be found to be true) as to the other 4 schools subject to the Trustee's Duplicate Objection: rather than being objectionable as "duplicative" of the TPA's claims, the claims.

26. The is true (and should be found to be true) as to every other Certain TPP for which their TPA insurer filed a prior proof of claim by the Bar Date.

27. It was not until the Trustee challenged the timeliness of the Certain TPPs' claims that they had any reason to believe that the actions of their TPAs was objectionable.

28. That is why they all proceeded to file proofs of claim via their authorized representatives at Haviland Hughes, their retained counsel.

29. Accordingly, the only issue to be resolved by this Court is Bar Date Objection: the timeliness of the Certain TPPs' claim submission, by and through the TPA insurance companies who have filed proofs of claim on behalf of Certain TPPs in this bankruptcy.

---

[9] On August 8, 2025, right before the claims submission deadline here, an account executive from Med Mutual for Certain TPPs wrote to give a "heads up … about the Purdue Bankruptcy Settlement plan" stating that Med Mutual intends to participate on behalf of the fund. *Id*. at 3. Fund counsel responded that "Don Haviland will be filing a claim on behalf of the Fund" and asked for the underlying records. *Id*. at 2. Receiving no response, Mr. Haviland wrote, "we are looking to obtain the data for OUD (opioid use disorder) called for by the terms of these opioid settlements (ie. McKinsey, Insys, MDL TPP distributor settlement)…. [W]e would expect the data transfer to be seamless, as it has been for other large insurers, like the Blues, Cigan and Aetna, among others." *Id*. at 1. Not data was provided.

**ARGUMENT**

**A. Standards for Proofs of Claim and Objections to Proofs of Claim**

30. "When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim . . . against the debtor's estate." *Creamer v. Motors Liquidation Co. GUC Tr. (In re Motors Liquidation Co.)*, 2013 U.S. Dist. LEXIS 143957, at *12 (S.D.N.Y. Sep. 26, 2013)(quoting *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co*., 549 U.S. 443, 449, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007)).

31. "A proof of claim 'is deemed allowed, unless a party in interest . . . objects.'" *Id.* (quoting 11 U.S.C. § 502(a)). "Even where a party in interest objects, [however,] the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)," including where "the claim at issue is 'unenforceable against the debtor . . . under any agreement or applicable law.'" *Id.* (quoting *Travelers Cas. & Sur. Co. of Am*., 549 U.S. at 449 (quoting 11 U.S.C. §§ 502(b) & (b)(1))).

32. Here, the Trustee has objected to 54 proofs of claim. He has stated 4 objections, only one of which applies to all 54 claims: the Bar Date Objection.

33. "In analyzing a proof of claim, courts within this Circuit employ a burden-shifting framework in which '[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion."" *Id.* (quoting *In re Oneida Ltd*., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009)).

34. "The burden then shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *Id*. at *12-13 (quoting *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173-74 (3d Cir. 1992))).

35. "When the burden is shifted back to the claimant, [she] must then prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Id*. at *13 (citing *In re*

*Motors Liquidation Co*., No. 11 Civ. 4180 (NRB), 2012 U.S. Dist. LEXIS 5145, 2012 WL 124581, at *3 (S.D.N.Y. Jan. 17, 2012); *see also In re Adelphia Commc'ns Corp*., No. 02-41729 (REG), 2007 Bankr. LEXIS 660, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) ("[C]laimant is [then] required to meet the usual burden of proof.")).

36. Rule 3001 requires only that the proof of claim be in writing, conform substantially to the Official Form, and be signed under penalty of perjury. Fed. R. Bankr. P. 3001(a).

37. The aggregate proof of claim filed by Haviland Hughes was accepted by the Trustee as conforming substantially to the official form. Thus, it complied with Bankruptcy Rule 3001.

38. The proof of claim also must "allege facts sufficient to support the claim". *Allegheny*, 954 F.2d at 173.

39. Such facts must be "sufficient to support a legal liability to the claimant". *Id*.

40. "If the averments in [the] filed claim meet this standard of sufficiency, it is '*prima facie*' valid." *Id*. (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)).

41. Because a properly filed proof of claim is treated not merely as a document containing arguments and assertions, but as evidence that sufficiently supports its claims,[25] a proof of claim that is filed "in accordance" with Bankruptcy Rule 3001 serves to satisfy the claimant's initial burden of production.

42. Here, the Trustee interposed 4 objections to 54 claims. Only one objection applies all 54 claims: the Bar Date Objection.

43. As discussed below, each of these objections either has been resolved, or will be resolved through an evidentiary hearing.

---

[25] *In re Muller*, 479 B.R. 508, 512 (Bankr. W.D. Ark. 2012) (citing *In re Cluff*, 313 B.R. 323, 330 (Bankr. D. Utah 2004))

**B. There Is No Remaining "Capacity Objection" as to Haviland Hughes' Right to Submit Claims for its Clients.**

44. The TPP Trustee initially raised concerns about Haviland Hughes' "capacity" to proceed on behalf of its clients.

45. Immediately, Haviland Hughes offered to share with TPP Trustee counsel its confidential retainer agreements, provided the agreements were no made public and were used by the TPP Trustee only to verify "capacity".

46. The TPP Trustee never asked for such submission.

47. Nevertheless, in one instance – the case of Coatesville – Haviland Hughes shared with TPP Trustee counsel its retainer. *See* Exhibit "J" hereto at 2 ("You can see from the attached, the school district retained Haviland Hughes for the opioid litigation, and Purdue settlement. We are unaware of any retainer of Rawlings.")

48. In the absence of any further request for proof by the TPP Trustee, Certain TPPs respectfully submit this "Capacity Objection" is either withdrawn, or resolved. *See* Ex. J at 1 (wherein the TPP Trustee agreed to allow the Coatesville claim without objection, stating "I don't anticipate an further issues with this claim.").

49. To the extent the TPP Trustee seeks to press its objection, Haviland Hughes is prepared to present evidence of its retainers by the Certain TPPs. However, as part of that evidentiary proceeding, Certain TPPs will insist on a similar showing by the TPAs/ASOs of their claimed "capacity" to proceed independent of their contracted TPPs. In light of Judge Rufe's Orders (included herewith), Certain TPPs submit that many TPAs/ASOs will not be able to make such showing.

50. As set forth above, limited discovery will be needed of the TPAs/ASOs as to these issues prior to any evidentiary hearing and ruling by this Court on the TPP Trustee objections.

**C. There Is No Remaining "Duplication Objection" as to Claims Filed By Haviland Hughes for its Clients and the TPAs/ASOs Who Filed Separate, Aggregate Claims Without the Express Authorization of Certain TPPs to Proceed on their Behalf.**

51. The TPP Trustee's resolution of the above Coatesville claim should be the same for the remaining claims for which the TPP Trustee argues there is "duplication" as between Certain TPPs and the TPAs/ASOs.

52. In Coatesville, the TPP Trustee backed off on his initial claim that Rawlings owned the claim.

53. The TPP Trustee acknowledged, "we have been able to match a Rawlings filed TPP claim (as part of its consolidated claim(s)) as well as a Rawlings pre bar-date filed." *Id*. at 3.

54. It is noteworthy that the TPP Trustee did not find such match until June 10, 2026, even though the Certain TPPs claims were filed in September 2025. This undermines the veracity of the TPP Trustee's objections as to both "duplication" and compliance with the bar date, especially considering the refusal of Rawlings and other TPA/ASO counsel to provide answers to the TPP Trustee's question about the Certain TPPs inclusion in their consolidated claims.

55. Despite such initial objection as to "duplication", the TPP Trustee withdrew the objection as to Coatesville. But he did not withdraw such objection as to the other 4 Chester County schools as to which he initially objected as "duplicative" of other claims.

56. The TPP Trustee identified five (5) claims as "appear[ing] to be duplicates of other Master/Consolidated Claims filed by established TPP Administrators on behalf of private TPPs." There were: (1) Coatesville Area School District ("**Coatesville**"), (2) Downingtown Area School District ("**Downingtown**"), (3) Kennett Consolidated School District ("**Kennett**"), (4) Phoenixville Area School District ("**Phoenixville**"), and (5) Tredyffrin Easttown School District ("**Tredyffrin Easttown**"). *Id*. (hereinafter, the "**Duplicate Objection**")

57. Coatesville was resolved; the others were not.

58. But the same logic applies to the remaining 4: if the TPAs/ASOs filed consolidated claims – which Certain TPPs presume formed the basis of the TPP Trustee's claim of "duplication" – then they were timely, just like Coatesville.

59. Even if the claims were filed by some other party, they were still timely.

60. Any party seeking to claim the right to file a claim must demonstrate the "capacity" to do so, as Haviland Hughes has done, and will do.

61. The duplication objection should be overruled.

**D. There Is No Remaining "Status Objection" as to Certain TPPs' Claims**

62. As with the Duplication Objection, the TPP Trustee interposed a Status Objection as to a few Certain TPPs.

63. TPP Trustee specifically identified only five (5) claimants as "being ineligible because they are "Domestic Government Entities (and are not asserting claims via a private TPP)": (1) Borough of Dunmore, (2) Cheshire (sic) County Intermediate Unit,[10] (3) Cheshire (sic) County (Water Authority), (4) Haverford Township, and (5) Law Enforcement Health Benefits. *Id*.

64. Through their exchanges with the TPP Trustee, Haviland Hughes conceded that two claimants – Dunmore Borough and Haverford Township – were municipal entities that likely met the definition of "Domestic Government Entities."

65. However, as to the other 3, they pointed out that they are not governmental entities within their understanding of the meaning of "government".

[10] Movant expects the TPP Trustee was referring to the Chester County Intermediate Unit ("CCIU")", the entity that "provides services to the 12 school districts in Chester County", Pennsylvania. cciu.org/about/welcome

66. First, the Law Enforcement Health Benefits Corp (or LEHB) is a private TPP. It is the self-funded health plan of the Philadelphia police union. See generally, LEHB.org.

67. Similarly, the CCIU is a service organization that provides services to the Chester County schools, who are TPPs. *See* cciu.org.

68. The Chester County Water Authority is provider of water to residents of Chester County, Delaware County and the City of Chester. Chesterwater.com/about. It is not a municipality.

69. The TPP Trustee has not made clear its intention to continue to objection to these 3 Certain TPPs on grounds of their "Status". Should he do so, these certain TPPs are prepared to have this Court rule on the objections, upon evidentiary submission.

**E. Timeliness of Certain TPPs Proofs of Claim by Reason of TPA Claim Filings**

70. The one objection that the TPP Trustee does interpose as to all 54 Certain TPPs is the Bar Date Objection. This objection requires additional evidence, and likely discovery of the TPAs/ASOs, to resolve.

71. The Third Circuit's *Allegheny* decision holds that "a properly filed proof of claim is prima facie evidence of the claim's allowed amount." The Trustee interposes no objection to whether the Certain TPP proofs of claim were "properly filed", insofar as they were timely submitted by the September 2025 deadline on the appropriate form required. The Trustee also raises no objection as to the substance of any of the claims. Instead, the Trustee's sole basis for arguing that the Certain TPPs proofs of claim were not filed by the Bar Date is that he was "unable to find Original Bar Date claims for most of the entities identified in the Haviland firm's master/consolidated claim." Ex. A.

72. We know from the above record that the TPP Trustee was able to "find" Certain TPP claims after initially objecting. *See* Coatesville discussion above.

73. In response to such objection, Certain TPPs pointed out the above facts about the TPAs proceeding for their self-funded Certain TPPs, including that they have not been successful in getting the TPAs to cooperate.

74. The Trustee did not challenge such proffer. Instead, he directed counsel for Certain TPPs to counsel for the large firms representing the insurance companies and who filed aggregate proofs of claim on their behalf.

75. Since undersigned counsel did know who the TPA counsel were, Mr. Battaglia agree to reach out to them on behalf of Certain TPPs.

76. On April 21, 2026, Mr. Bataglia emailed two lawyers - Noelle Ruggiero of Lowey Dannenberg and Tom Mahlum of Robins Kaplan. (He did not email anyone from Rawlings whom who know served as TPA for Certain TPPs and submitted claims.) *See* **Exhibit K** hereto at 3-6.

77. The failure to include Rawlings is material to the TPP Trustee's objections as to the Bar Date in light of his awareness that Rawlings had submitted claims for Certain TPPs. See Coatesville above.

78. Why does this matter? The Trustee was fully aware of the fact that there are several major firms representing the vast majority of TPAs in the country and who submitted claim. The only way to discover whether any TPA filed claims for Certain TPPs is to ask all these firms to search their claims records.

79. It bears pointing out that, while the Trustee has scrutinized and challenged 54 of 57 claims filed as part of an aggregate proof of claim, there is no evidence that the Trustee has imposed the same level of scrutiny to the aggregate claims of the insurance companies.

80. There is no evidence that the Trustee has required TPA counsel to prove their authority to represent both the TPAs and the TPAs contracted, self-funded TPPs, as he did in interposing the Capacity Objection to Certain TPPs.

81. Both procedural and substantive due process require uniformity of procedures and standards for objections such that one set of claimants is not subjected to a different set of rules than is applied to other claimants, as appears to be the case here.

82. The evidence Certain TPPs have been able to assemble in support of this Motion reveals that one TPA counsel did not answer the Trustee's question, and the other did not respond at all. See Ex. K.

83. For reasons unknown, Ms. Ruggiero never responded to Certain TPPs, despite stating "[w]e are also in the process of checking…". (It is unknown whether she ever responded to TPP Trustee counsel.)

84. Mr. Mahlum responded only that none of the listed Certain TPPs "were included in the original consolidated POC filed by UnitedHealthcare Services." But that was not the question. The question was did Robins Kaplan file any consolidates claims which included the Certain TPPs.

85. The narrow response, and lack of response, are both evidence of Certain TPPs' claim that these TPAs have information about the submission of claims on their behalf but have refused to provide such information as it is contrary their economic self-interests, and the economic self-interests of their clients, the TPA insurance companies.

86. Additional evidence supports such claim.

87. In the *In re Generic Price Fixing case*, counsel for these same large TPA insurance companies sought to opt out of TPP settlement classes. Class Counsel objected.

88. The Federal Court struck the opt outs of Aetna, Cigna, Independence Blus Cross ("IBX") and Highmark, among others. These carriers are significant because they are the carriers of Certain TPPs, who reside in Pennsylvania, New Jersey and other states where these carriers conduct business.

89. Certain TPPs have contracted with these insurance carriers at various times during the relevant time period covered by the claims period.

90. For instance, Plumbers Local 690 has contracted with Aetna for a decade.

91. Aetna had its opt out request denied and stricken by Judge Rufe in the *Generics* case. See Order at Ex. F.

92. The Court struck the opt out because the language of Aetna's insurance contract did not give Aetna the right to act on behalf of self-funded TPPs like Plumbers Local 690.

93. So, what did Aetna do? In June 2026, Aetna wrote to Plumbers Local 690 (and likely its other self-funded TPPs) and sought to amend the language of its insurance contract to justify its prior conduct in filing claims on behalf of its contracted TPPs (and taking the money from such claims payments). *See* **Exhibit "L"** hereto.

94. Aetna has filed such claims in this bankruptcy.

95. The Trustee's report shows the same.

96. The Trustee's report shows that Aetna, Cigan, IBX and Highmark, among others, have filed two sets of aggregate proofs of claim: (1) one claim for "self-funded" plans (like Plumbers Local 690 and the other Certain TPPs), and (2) another claim for its "fully-insured" plans.

97. Why file two sets of aggregate proofs of claim?

98. One claimant can and should file one aggregate proof of claim.

99. But the carriers here file two sets of claims, one of which relies upon the claims data of their self-funded plans.

100. Such filing on behalf of self-funded TPPs – like Certain TPPs – should satisfy the Bar Date requirement that underscores the Trustee's objection.

101. But Aetna's counsel refused to respond.

102. The reason is obvious: Aetna (and others) had their attempted opt-outs in Generics stricken by a federal court.

**NOTICE**

103. Notice of this Motion for Leave will be provided to: (a) the TPP Trustee; (b) counsel to the Debtors; and (c) other counsel of record. Movant submits that, under the circumstances, no other or further notice is required.

**NO PRIOR MOTION**

104. The Movant has not made any prior motion for the relief sought in this Motion to this Court.

WHEREFORE, the Movant, the Certain TPPs, respectfully requests that the Court grant the Motion for Allowance of Claims.

Date: September 21, 2026

CIARDI CIARDI & ASTIN

*<u>/s/ Jennifer C. McEntee</u>*

Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
aciardi@ciardilaw.com
jcranston@ciardilaw.com

-

-and-

Donald E. Haviland, Jr., Esq.
(*Pro hac vice pending*)
*haviland@havilandhughes.com*
William H. Platt II, Esq.
(*Pro hac vice pending*)
*platt@havilandhughes.com*
**HAVILAND HUGHES**
124 South Maple Ave., Suite 220
Ambler, Pennsylvania 19002
T: 215-609-4661

*Counsel for the Certain TPPs*