September 28, 2026

Carrie L. McGaha
P.O. Box 250
Horatio, AR 71842

United States Trustee
Attn: Brian S. Masumoto
Office of the United States Trustee – NY
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

**Re: Purdue Pharma, Case No. 19-23649 — Request for Review**

Dear United States Trustee:

I am writing as an Individual Personal Injury Claimant in the Purdue Pharma bankruptcy because I believe the resolution of this case has failed to address a fundamental problem I repeatedly raised in the record.

**We have created a system that risks repeating the very conduct this case was supposed to correct: generating revenue from placing people on powerful drugs from which they may have great difficulty withdrawing.**

The Purdue/Sackler scandal demonstrated what can happen when financial incentives and misleading pharmaceutical narratives are permitted to influence patient care. Yet the response has created enormous financial interests surrounding addiction treatment and opioid abatement while legitimate pain patients increasingly struggle to obtain longstanding opioid medications.

I specifically warned the Court about this problem. In my June 2025 objection, I challenged terminology concerning what constitutes an "opioid" and warned against redefining **"opioid," "opioid product," and "promote"** in ways that could facilitate continued pharmaceutical marketing under a different narrative.

**That issue should not have been ignored or dismissed.**

If drugs with opioid pharmacology are being presented as "non-opioids," "opioid alternatives," or otherwise separated from opioids through definitions that do not

accurately describe their pharmacology, the United States Trustee should demand an explanation.

**Calling a drug something different does not change what the drug does in the human body.**

At a minimum, the government, the parties to this case, and those administering opioid-abatement programs should be honest about what these medications are. If a drug has opioid pharmacology, that fact should be stated plainly and accurately. It is disingenuous to stigmatize one class of opioid medications while describing other opioid-acting drugs with terminology that gives patients and the public the impression they are something fundamentally different.

**Changing the label does not change the pharmacology.**

If legitimate scientific distinctions exist between medications, explain them openly and precisely. But terminology should not be used to create a false impression about what a drug is or how it acts. Whatever policy choices are made, **they should begin with the truth.**

This is particularly important because the Purdue case itself arose from conduct involving misleading representations concerning opioid products. The lesson from Purdue should have been greater transparency—not another system in which terminology can obscure what medications actually are.

Equally troubling is the narrative that has developed around legitimate pain patients and the physicians who treat them. People like me do not fit neatly within that narrative. **I have no criminal record. I did not obtain drugs illegally. I did not divert my prescriptions. I was a patient who followed the medical system and took medications prescribed to me by licensed healthcare professionals.**

That lived experience matters.

I repeatedly attempted to bring that perspective into these proceedings. My July 2024 filing reminded the Court and the U.S. Trustee of numerous earlier submissions dating back to 2021 and specifically asked that my objections receive meaningful consideration.

Instead, the voices of people whose lived experiences challenge the prevailing narrative have had remarkably little influence over the system being constructed.

Meanwhile, legitimate pain patients are being stigmatized, and physicians operate within an enforcement and regulatory environment that can discourage opioid prescribing. I previously warned the federal courts that the response was creating another class of

victims—people with documented pain who have not abused their medications but encounter barriers to appropriate treatment.

The contradiction is difficult to ignore:

**Traditional opioids are increasingly treated as inherently suspect, while an enormous treatment and abatement system has been constructed around continuing pharmaceutical treatment of opioid-related conditions.**

The financial priorities of this bankruptcy also deserve scrutiny. More than 130,000 individuals filed claims seeking compensation for opioid-related personal injuries, according to the Bankruptcy Court. Yet this bankruptcy has generated extraordinary professional expenses while the compensation available to individual human beings who were actually harmed is comparatively limited.

That disparity raises a basic question of justice: **How can a proceeding intended to address catastrophic human injury devote extraordinary resources to lawyers, consultants, institutions, governments, and administration while actual injured patients receive so little by comparison?**

When the people who suffered become one of the smallest considerations in a system supposedly constructed because of their suffering, something has gone seriously wrong.

The measure of this case cannot simply be how successfully money was negotiated and distributed among institutions. It must include whether injured people were heard and whether the system created in Purdue's wake actually prevents the same underlying conduct from happening again.

I respectfully ask the United States Trustee to  cause an examination of the actual pharmacology of drugs being characterized as “non-opioid” or opioid alternatives; identify who established those classifications; determine who financially benefits from them; and determine whether the Court, creditors, patients, and public received complete and scientifically accurate information about those products and financial relationships.

No pharmaceutical product should be promoted in a manner that substitutes marketing for individualized medical judgment. If people are ill, they should receive the treatment most likely to improve their condition, not simply the newest pharmaceutical product supported by the strongest financial incentives.

**The answer to Purdue cannot be another pharmaceutical system built upon dependency, carefully constructed terminology, and maintaining revenue streams from people maintained on powerful drugs, paid for by taxpayers.**

If we condemn Purdue for misleading representations and profit-driven practices, we cannot tolerate substantially similar incentives merely because the terminology, products, beneficiaries, or stated purpose have changed.

Legitimate pain patients are not the opioid crisis. They should not be punished for the conduct of pharmaceutical companies, illegal drug traffickers, people who divert medications, or people who abuse drugs. For established patients who have responsibly used opioid medication under medical supervision, indiscriminately withholding effective treatment can cause profound and unnecessary suffering.  It is inhumane.

Nor should we solve one form of pharmaceutical dependency by constructing another profitable system dependent upon people remaining in a pharmaceutical prison.

**A system that claims to correct past wrongdoing while disregarding these contradictions and human consequences demands the highest level of scrutiny.**

The people making these decisions have a duty to the human beings affected by them—not merely to institutions, settlements, programs, professional fees, and financial interests.

**Please follow the definitions. Follow the pharmacology. Follow the money. And listen to the patients whose lived experiences do not fit the approved narrative.**

Whatever conclusions follow from that examination, **at least call these drugs what they actually are. The American people deserve that honesty.**

Respectfully,

**Carrie L. McGaha**

**CERTIFICATE OF SERVICE**

I, Carrie L McGaha, Pro Se Claimant, certify that the above referenced document was presented by email on September 28, 2026, to the following:

Debtors' Counsel

- Davis Polk & Wardwell LLP

  450 Lexington Avenue
  New York, NY 10017
  https://www.davispolk.com/
  Phone: 212.450.4000
  Fax: 212.701.5800

  Marshall S. Huebner
  Timothy Graulich
  Eli J. Vonnegut

- United States Trustee

  U.S. Federal Office Building
  201 Varick Street, Suite 1006
  New York, NY 10014
  https://www.justice.gov/ust-regions-r02
  Phone: 212.510.0500
  Fax: 212.668.2255

- United States Bankruptcy Court

  Southern District of New York
  300 Quarropas Street
  White Plains, NY 10601-4140
  http://www.nysb.uscourts.gov

  Phone: 212.668.5637

Counsel for the Official Committee of Unsecured Creditors
Akin Gump Strauss Hauer & Feld LLP
ATTN: Arik Preis
purduecommittee@akingump.com