LEVENFELD PEARLSTEIN, LLC
Harold D. Israel
120 S. Riverside Plaza, Suite 1800
Chicago, Illinois, 60606
Telephone: (312) 346-8380
Facsimile: (312) 346-8434
Hisrael@lplegal.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P., *et al.*,** | **Case No. 19-23649 (SHL)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**NOTICE OF FILING OF INTERIM REPORT OF THE**
**PURDUE PERSONAL INJURY TRUST**

PLEASE TAKE NOTICE that, Edgar C. Gentle, in his capacity as the Purdue Opioid Personal Injury Trust Trustee has filed the Interim Report From Purdue Opioid Personal Injury Trust.

Dated: September 30, 2026

Respectfully submitted,

**PURDUE PERSONAL INJURY TRUST**

By: /s/ Harold D. Israel
Harold D. Israel (admitted *pro hac vice*)
**LEVENFELD PEARLSTEIN, LLC**
120 S. Riverside Plaza, Suite 1800
Chicago, Illinois 60606
Telephone: (312) 346-8380
e-mail: hisrael@lplegal.com
*Counsel to the Purdue Personal Injury Trust*

[1] The Debtors, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Purdue Products L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717), and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

# Purdue Opioid Personal Injury Trust

## Status Report

*For Activity Ending*

**September 30, 2026**

September 30, 2026

## Introduction

The Purdue Personal Injury Trust (the "Purdue PI Trust" or the "Trust") was established pursuant to the *Eighteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (the "Plan"). The Plan became effective on May 1, 2026 (the ("Effective Date'). The Purdue PI Trust was funded with the initial distribution on the same day and has since been fully funded.

The Trust's primary responsibilities are to assume all liabilities and responsibility for all of Purdue Pharma's Personal Injury and Neonatal Abstinence Syndrome ("NAS") Claims, to resolve and make distributions with respect of such Allowed Non-NAS PI Claims and Allowed NAS PI Claims in accordance with the applicable PI Trust Distribution Procedures (collectively, the "PI TDPs", with there being a TDP for Non-NAS Personal Injury Claims and a TDP for NAS Personal Injury Claims), and to use the Trust Assets and income to meet its obligations.

A copy of the PI TDP and other documents related to the Trust can be found at www.PurduePITrust.com. Capitalized terms not defined herein shall have the meaning attributed to such terms in the PI TDP.

Since the Effective Date and through September 30, 2026, the Trust has undertaken the activities necessary to ensure efficient functioning of the claims process, including, but not limited to, the following:

## Claims Update

Trust personnel are reviewing claim deficiency responses and have begun sending claims status letters on a rolling basis. The Trustee is also reviewing information submitted by claimants to the Court pursuant to Paragraph 3 of the Court's *Order Granting Omnibus Claims Objection of the Debtors and Official Committee of Unsecured Creditors to Unsubstantiated Claims* [Docket. No. 9092].

The status letters detail whether the claim has been deemed as Qualified[2] and Allowed[3] under the terms of the applicable PI TDP and therefore entitled to payment or not, in addition to providing the details of any appeal rights claimants may have with respect to their claims.

---

[2] Qualified" with respect to a Non-NAS PI Channeled Claim and NAS PI Channeled Claim refers to a Claim that is Substantiated and entitled to receive an Award under the PI TDPs.

[3] "Allowed" means (i) any Claim held by a Settling Creditor or a Non-Hospital Healthcare Provider Claim (in each case, whose distribution, if any, shall be subject to and determined in accordance with the Plan and any applicable Creditor Trust Documents), (ii) with respect to any Claim held by a Non-Settling Creditor, such Claim that has been allowed in accordance with the Plan or a Final Order (whose distribution, if any, shall be subject to and determined in accordance with the Plan and any applicable Creditor Trust Documents), (iii) with respect to any Adlon General Unsecured Claim or Avrio General Unsecured Claim, such Claim that is Scheduled as not disputed, contingent or unliquidated, and for which no Proof of Claim or Interest, as applicable, has been timely filed, and (iv) with respect to any Claim (other than a Channeled Claim) against a Debtor, such Claim (A) that is allowed pursuant to the Plan or a Final Order, (B) as to which no objection has been timely filed and that is evidenced by a Proof of Claim timely filed by the applicable Bar Date or that is not required to be evidenced by a filed Proof of Claim under the Plan, the Bankruptcy Code or a Final Order or (C) the amount of which has been agreed, compromised, settled or otherwise resolved pursuant to the authority of the Debtors or the Plan Administration Trustee, as applicable. See *Eighteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and It's Affiliated Debtors.*

The Trust has begun issuing status letters to Qualified and Allowed claimants, and additional status letters are being issued on a rolling basis as deficiency reviews are completed and claims eligibility is finalized in accordance with the applicable PI TDPs.

The Trust is also in the process of issuing status letters for claimants whose claims have reached a final determination of Deficient[4,5] under the terms of the applicable PI TDP, with the majority of the current Deficient Claims belonging to claimants whose objections to their claims were either withdrawn or reinstated, claimants who provided some form of evidence with their original Proof of Claim submittal with Kroll but failed to file a claim form with the Purdue PI Trust as required by the PI TDPs and Plan, and claimants whose submitted evidence does not meet evidentiary requirements under the terms of the PI TDPs.

The issuance of status letters to both Qualified and Allowed claimants and Deficient claimants begins the 20-day appeal process timelines outlined under both the PI TDPs. The Trustee has engaged Ken Simon as the Appeals Special Master. Mr. Simon is responsible for handling all appeals related to the Purdue PI Trust determinations made in accordance with the PI TDPs. Decisions of the Appeals Special Master are final and binding, and claimants have no further appeal rights under the PI TDPs.

The awards per claimant for Qualified and Allowed Non-NAS Personal Injury Tiers 1 and 2 and Qualified and Allowed NAS PI Claims have been computed. The award amounts reflect deductions for: (a) operating expenses of the Trust (including claims and lien resolution expenses); (b) certain professional fees provided for under the Plan; and (c) other assessments provided for under the Plan.

The award amounts are stated prior to deductions for the individual claimant's attorneys' fees/costs and medical liens, if applicable. The award amounts are as follows:

| **Claim Category** | **Award Amount** |
|---|---|
| Qualified and Allowed Non-NAS PI Tier 1 Claims | $16,294 |
| Qualified and Allowed Non-NAS PI Tier 2 Claims | $8,147 |
| Qualified and Allowed NAS PI Claims | $25,653 |

The award amounts set forth above represent the initial distribution amounts. A second payment <u>may</u> be made once all contingencies are resolved. The availability and amount of any second payment will be determined by the Trustee based on the number of Qualified and Allowed Claims, the resolution of all outstanding contingencies, and the remaining Trust Assets available for distribution after satisfaction of all administrative obligations.

The Trust continues to process and has begun paying Qualified and Allowed claimants. The Trust currently anticipates that most currently Qualified and Allowed claimants will receive some portion of their award by the end of 2026, as claims are currently being paid on a rolling basis. For Qualified and Allowed claimants that have cleared the lien resolution process, the Trust anticipates issuing payment for their full award under the terms of the PI TDPs, subject to any applicable deductions (and with the possibility of a

[4] "Deficient" or "Deficiency" with respect to a Non-NAS PI Channeled Claim refers to a Non-NAS PI Channeled Claim (i) that does not satisfy the requirements of §§ 3-6 of the Non-NAS PI TDP, or (ii) for which a Deficiency was not timely cured under § 7 of the Non-NAS PI TDP.

[5] "Deficient" or "Deficiency" with respect to a NAS PI Channeled Claim refers to a NAS PI Fully Channeled Claim (i) that does not satisfy the requirements of §§3–4of the NAS PI TDP, or (ii) for which a Deficiency was not timely cured under §4 of the NAS PI TDP.

second payment mentioned above). Qualified and Allowed claimants that have not cleared the lien resolution process will have a portion of their award held as a lien holdback. A lien holdback is a portion of a Qualified and Allowed claimant's award that is temporarily set aside while potential liens are reviewed and resolved. The goal of the lien holdback is to allow for Qualified and Allowed claimants to receive a portion of their award now that would have otherwise been withheld until later while lien resolution is pending. Claimants will receive any remaining funding from their lien holdback once the Lien Administrator completes their individual resolution review and the Trust makes any resulting lien payments.

Now that the Trust has determined the estimated award amounts, Qualified and Allowed claimants must clear the lien resolution process to receive their total funding allocation, less any applicable fees, expenses and liens, under the terms of the applicable TDP. As previously mentioned, some Qualified and Allowed claims may be paid, but have a lien holdback while lien resolution is ongoing.

Qualified and Allowed claimants that are represented by a law firm will receive payment information from their attorneys.

Qualified and Allowed Pro Se Claimants will receive email correspondence from the Purdue PI Trust Administrator to the claimant's email address on file confirming their physical mailing address. Please note that these emails are issued on rolling basis as deficiencies are reviewed and claims determinations are finalized.

Qualified and Non-Participating[6] claims (for Claimants who did not grant the Third-Pary Release) are not currently eligible for payment under the terms of the PI TDPs or Plan. Under the Plan, Qualified and Non-Participating claims are not potentially eligible for payment until eighteen months after the Effective Date of the Plan.[7]

---

[6] "Non-Participating" with respect to a Non-NAS PI Partially Channeled Claim or NAS PI Partially Channeled Claim refers to a Non-NAS PI Partially Channeled Claim or NAS PI Partially Channeled Claim held by a Non-Settling Creditor as of the Effective Date until such Claim is either (i) Allowed in accordance with Section 7.6 or 7.9 of the Plan or (ii) Disallowed by Final Order.

[7] If no objection is affirmatively raised to the Allowance of a Non-Participating Channeled Claim in Classes 10(a) or 10(b) within eighteen (18) months of the Effective Date, such claim shall be deemed Allowed and the holder thereof shall be entitled to the Estate Distribution allocated to such Channeled Claim (if any) under the applicable TDP. Notwithstanding the foregoing, (i) any Allowance pursuant to this Section 7.9(a) of the Plan shall not constitute a determination as to the merits of such Non-Participating Channeled Claim and shall not be used as a basis to assert the merits of such Non-Participating Channeled Claim in any forum, and (ii) any Non-Participating Channeled Claim that is Allowed (pursuant to this Section 7.9 or otherwise) shall still be subject to, and shall only receive a distribution pursuant to, the applicable TDP.