Stephan E. Hornung
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000
stephan.hornung@morganlewis.com

*Co-Counsel for Richard Sackler, M.D. and Lin Gao*

Barry J. Pollack
HARRIS TRZASKOMA, LLP
1300 19th Street, NW, Suite 700
Washington, D.C. 20036
Tel.: (202) 230-9647
bpollack@harristrz.com

*Co-Counsel for Richard Sackler, M.D. and Lin Gao*

Anne Penachio
PENACHIO MALARA LLP
245 Main Street, Ste. 450
White Plains, NY 10601
Tel.: (914) 946-2889
apenachio@pmlawllp.com

*Co-Counsel for Richard Sackler, M.D.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 19-23649 (SHL) |
| PURDUE PHARMA L.P., et al.[1] | Jointly Administered |

**MOTION TO ENFORCE CONFIRMATION ORDER AND SETTLEMENT STIPULATION**

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, were as follows: Purdue Pharma L.P. (7484); Purdue Pharma, Inc. (7486); Purdue Transdermal Technologies L.P. (1868); Purdue Pharma Manufacturing L.P. (3821); Purdue Pharmaceuticals L.P. (0034); Imbrium Therapeutics L.P. (8810); Adlon Therapeutics L.P. (6745); Greenfield Bio Ventures L.P. (6150); Seven Seas Hill Corp. (4591); Ophir Green Corp. (4594); Purdue Pharma of Puerto Reco (3925); Purdue Products L.P. (4140); Purdue Pharmaceutical Products L.P. (3902); Purdue Neuroscience Company (4712); Nayatt Cove Lifescience Inc. (7805); Button Land L.P. (7502); Rhodes Associates L.P. (N/A); Paul Land Inc. (7425); Quidnick Land L.P. (7584); Rhodes Pharmaceuticals L.P. (6166); Rhodes Technologies (7143); UDF LP (0495); SVC Pharma LP (5717); and SVC Pharma Inc. (4014). The Debtors' corporate headquarters was located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

TO: THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

Richard S. Sackler, M.D. and Lin Gao (the "RSS Parties") file this motion (the "Motion") pursuant to sections 105(a) and 1142 of title 11 of the United States Code (the "Bankruptcy Code"), Paragraphs 33(i) and (j) of the *Findings of Fact, Conclusions of Law, and Order Confirming the Eighteenth Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* (the "Confirmation Order"), and Paragraph 9 of the Settlement Stipulation, seeking entry of an order substantially in the form attached as **Exhibit A**, (i) finding that Frank S. Vellucci, Daniel S. Connolly and Rory Held, in their capacities as trustees of the trusts at issue in the Wyoming Litigation (collectively, the "Trustees") have violated the Settlement Stipulation, (ii) enforcing the Litigation Standstill provision of the Settlement Stipulation, (iii) directing the Trustees to refrain from taking any action, directly or indirectly, with respect to the Wyoming Litigation or any of the facts alleged or causes of action asserted in the Wyoming Litigation during the Litigation Standstill, (iv) directing the Trustees to not take any action during the Litigation Standstill to interfere with the ability of the RSS Parties and their children to reside at 60 Field Point Circle or, should Dr. Sackler's wife, Lin Gao, survive him, the ability of her or her minor children to reside at 60 Field Point Circle unless and until 60 Field Point Circle has been sold to fund the settlement pursuant to the Master Shareholder Settlement Agreement ("MSA"). In support of their Motion, the RSS Parties respectfully state as follows:

## Preliminary Statement

The Court recently determined that actions taken in Wyoming and Connecticut by the RSS Parties violated the Confirmation Order and the Settlement Stipulation. At issue in the Trustee's motion was whether specific state court and land record filings violated the Litigation Standstill and non-interference provisions contained in the Settlement Stipulation and

incorporated by reference into the Confirmation Order. The RSS Parties, believing that the Trustees had breached the Settlement Stipulation, took actions under Paragraph 6 of the Stipulation, which they believed they were entitled to take in the event of another party's breach. The Court disagreed and directed the RSS Parties to withdraw or dismiss four so-called "Interference Actions," which the RSS Parties have since done. While certain issues concerning the Trustees' conduct and general authority to sell 60 Field Point Circle were raised in briefing and during oral argument, due to the procedural posture of the Motion, which was directed at the RSS Parties' conduct, the specific issue of whether the Trustees' actions with respect to 60 Field Point Circle, which had precipitated the "Interference Actions," also violated the Settlement Stipulation and Confirmation Order, was not directly before the Court. Nor were actions taken by the Trustees since the Bench Ruling. Accordingly, the RSS Parties have filed this Motion to enforce the Settlement Stipulation to ensure that the Trustees are also complying with its terms.

The Trustees, in their capacities as trustees[2] of the Crystal Trust, and through their control over the Rockpoint Residence Trust, the Rockpoint Land Trust, and the AR Trust, have taken actions with respect to 60 Field Point Circle that violate Paragraph 3 of the Settlement Stipulation, which prohibits all Litigation Parties—not just the RSS Parties—from taking "any actions, directly or indirectly, with respect to the Wyoming Litigation or any of the facts alleged or causes of action asserted in the Wyoming Litigation, until fourteen months after the effective date of the Plan." As detailed below, the Wyoming Litigation alleged facts related to, and based

[2] Crystal Fiduciary Company LLC ("Crystal Fiduciary") serves as trustee of the AR Trust, the Rockpoint Land Trust, and the Rockpoint Residence Trust. Crystal Trust is the sole member of Crystal Fiduciary, a member-managed LLC, such that by virtue of being trustees of Crystal Trust, the Trustees also control Crystal Fiduciary and the trusts for which it serves as trustee: the AR Trust, the Rockpoint Residence Trust, and the Rockpoint Land Trust.

causes of action on, [redacted]

Nonetheless, approximately three weeks before the Plan went effective, the Trustees transferred 60 Field Point Circle between family trusts and, in doing so, altered the rights of the RSS Parties and their children. And more recently, just days after the Court issued its Bench Ruling, the Trustees demanded that the RSS Parties vacate 60 Field Point Circle by [redacted], even though there is no sale of 60 Field Point Circle pending. The RSS Parties are mindful of the Court's Bench Ruling and are not, through this Motion, seeking to relitigate issues the Court has already decided, including the Trustees' general right to liquidate trust assets. However, the Trustees' actions with respect to 60 Field Point Circle are contrary to both the letter and the spirit of the Settlement Stipulation, and the Court should therefore prohibit the Trustees from further impairing the RSS Parties' rights during the remaining standstill period.

The Wyoming Litigation was a Sackler family dispute filed in January 2025 over trust control and fiduciary misconduct—specifically, allegations that Dr. Sackler's powers over family trusts established for the benefit of him and his family were systematically stripped. While there were numerous claims and counterclaims, one of the primary issues was a dispute over whether 60 Field Point Circle, where the RSS Parties currently reside with their minor children, had been properly "decanted" from two existing family trusts: (1) the Trust under Declaration of Trust dated August 23, 1988, referred to as the "Field Point Circle Resident Trust"; and (2) the Trust under Declaration of Trust dated December 17, 1991, referred to as the "Field Point Circle Land Trust," to two other trusts, respectively, known as the "Rockpoint Residence Trust" and the "Rockpoint Land Trust." As alleged in the complaint, Ms. Lin's rights with respect to 60 Field

Point Circle have been severely diminished as a result of the decantings. The RSS Parties' claims that the decantings were improper have never been adjudicated.

After extensive negotiations and mediation, the RSS Parties, the Trustees, and the other parties to the litigation executed the Settlement Stipulation on August 1, 2025. While it is called a "settlement," it did not fully and finally settle all claims between the parties. To be sure, certain issues were resolved—for example, the RSS Parties acknowledged the Trustees' authority to enter into and implement the MSA—but the legal claims, including counterclaims asserted by the Trustees and the other Litigation Parties against the RSS Parties, were not adjudicated. Rather, under the Settlement Stipulation, all claims and counterclaims were dismissed without prejudice, with all parties reserving all rights, claims, and remedies. The cornerstone of the Settlement Stipulation was an agreement that all Litigation Parties would stand down, refrain from litigation, and maintain the status quo for a period of fourteen months after the effective date of the Plan to allow the first two settlement payments to be made. However, just weeks before the Plan went effective, the Trustees broke the Litigation Standstill by taking action to alter the RSS Parties' rights with respect to 60 Field Point Circle.

On April 7, 2026, just prior to the effective date of the Plan, the Trustees purported to transfer 60 Field Point Circle from entities owned by the Rockpoint Residence Trust and the Rockpoint Land Trust to an entity owned by the AR Trust. Importantly, the transfer eliminated altogether the right of Lin Gao to continue living at 60 Field Point Circle after Dr. Sackler's death. At the same time, the Trustees informed the RSS Parties of their intention to market and sell 60 Field Point Circle. These actions were decidedly contrary to maintaining the status quo.

In response to the Trustees' actions, and based on their belief that the Trustees had violated the Settlement Stipulation, the RSS Parties took actions in Wyoming and Connecticut,

which the Court found to have violated the Settlement Stipulation and the Confirmation Order. The RSS Parties have complied with the Court's September 11, 2026 Order, and have caused the "Interference Actions" to be withdrawn or dismissed.

However, the issue before the Court on the Trustees' motion was ultimately narrow: did the Interference Actions violate the Settlement Stipulation and the Confirmation Order? As a result, though the Trustees' efforts to sell 60 Field Point Circle to a third party were raised, the Court did not have squarely before it—and therefore did not need to explicitly decide—whether the April 2026 transfer of 60 Field Point Circle to ARIT LLC violated the Litigation Standstill. Nor, of course, did the Court have before it actions taken by the Trustees since the Bench Ruling, including the Trustees' subsequent demand that the RSS Parties and their minor children vacate 60 Field Point Circle by [redacted]. Accordingly, the RSS Parties now seek relief from the Court to preserve the status quo and ensure that all Litigation Parties honor the Settlement Stipulation during the remaining standstill period.

**<u>Statement of Facts and Procedural History</u>**

1. On January 31, 2025, the RSS Parties filed an action under seal in the Ninth Judicial District Court of Teton County, Wyoming, challenging the appointment of the current Trustees overseeing the trusts that purported to own the RSS Parties' residence located at 60 Field Point Circle and the "decanting" of 60 Field Point Circle into those trusts (the "Wyoming Litigation").[3]

2. While there were many claims, the legal status of 60 Field Point Circle and the rights of Lin Gao to live there after Dr. Sackler's death were directly at issue in the Wyoming Litigation. (*See* Verified Compl. at 4, ¶¶ 57–64; 127–140.) [redacted]

---

[3] Relevant excerpts of the Verified Complaint (without exhibits) are attached as **<u>Exhibit B</u>**.

[redacted]. Whether the decanting was consistent with the intentions of the grantor, Dr. Sackler, who had transferred 60 Field Point Circle to the original trust, is a matter that would need to be determined under applicable state law. (*Id.* ¶¶ 61, 64.)

3. On August 1, 2025, after extensive negotiations, the parties executed a settlement stipulation (the "Settlement Stipulation") dismissing the Wyoming Litigation without prejudice and agreeing to a fourteen-month litigation standstill and a separate twenty-four-month tolling agreement that preserved all Litigation Parties' claims during the standstill period.
(ECF No. 7731.)

4. Paragraph 3 of the Settlement Stipulation required that all Litigation Parties—including the Trustees—not "take any actions, directly or indirectly, with respect to the Wyoming Litigation or **any of the facts alleged or causes of action asserted** in the Wyoming Litigation." (*Id.* ¶ 3 (emphasis added).)

5. Paragraph 6 of the Settlement Stipulation preserved each Litigation Party's right to seek remedies for any breach of the stipulation, including the right to seek specific performance and/or damages. Paragraph 6 provides:

> **Remedies for Breach**. Each of the Litigation Parties hereby agrees that, to the extent that any Litigation Parties breaches the terms of this Stipulation, the Third Party Beneficiaries and, if not otherwise violative of the terms hereof, the nonbreaching Litigation Party shall be entitled to exercise and seek all remedies available at law and equity with respect to such breach, including specific performance and the right to seek damages for any and all losses, liabilities, costs and expenses arising out of or related to such breach, including without limitation, to the full extent of the obligations under the Purdue Plan and Purdue/Sackler Settlement Agreements (including the Master Disbursement Trust (as defined in the Purdue Plan)). For the avoidance of doubt, nothing herein shall prevent or preclude the Trustees from complying in all respects with their fiduciary duties as Trustees, including taking all actions necessary to comply with the B-Side Payment Group 1's payment obligations under the Master Shareholder Settlement Agreement.

(*Id.* ¶ 6.)

6. On November 18, 2025, the Court entered the Confirmation Order, confirming the Debtors' Eighteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors (the "Plan"). (ECF No. 8263.)

7. Paragraph 33(a) of the Confirmation Order incorporates the Settlement Stipulation by reference and provides that the RSS Parties agree not to:

> (i) interfere, now or at any time in the future, with any Trustees' (as defined in the Settlement Stipulation), Shareholder Payment Parties' or the B-Side Payment Group 1's ability to consummate, implement, and perform under the Plan and Shareholder Settlement Agreements; (ii) take (or fail to take) any action that interferes with, delays, frustrates, or impairs the ability of any party to enter into or satisfy its obligations under the Plan or the Shareholder Settlement Agreements, or that would undermine the validity or enforceability of the Plan or the Shareholder Settlement Agreements (including, without limitation, by exercising or purporting to exercise a power of appointment over property held by a Shareholder Payment Party that is in a trust in a manner that interferes with, adversely affects, or undermines the Plan or the Shareholder Settlement Agreements); and (iii) assist or conspire with any other person to take any such action.

(*Id.* at 34.)

8. Paragraph 33(a) of the Confirmation Order provides further that it is not intended to modify or limit the "rights and obligations set forth in" the Settlement Stipulation, which

"remain in full force and effect." It likewise makes clear that the Confirmation Order does not modify any party's rights, claims or defenses in the Wyoming Litigation. It provides:

> **Nothing herein shall modify or limit the rights of any party under the Settlement Stipulation**. This Order is intended, among other things, to implement the obligations set forth in the Settlement Stipulation and shall not extend, broaden, or limit any rights, defenses, claims, or positions of the any of the Parties to the Settlement Stipulation in the pending litigation that is the subject of the Settlement Stipulation. Nothing herein shall modify or limit the rights of any party under the Settlement Stipulation, nor shall any provision herein be construed to affect any party's rights in the Settlement Stipulation or in the pending litigation that is the subject of the Settlement Stipulation.

(*Id.* at 35.)

9. On April 15, 2026—nine months after the parties entered into the Settlement Stipulation and less than six months after the Court incorporated the terms of that stipulation into the Confirmation Order—the Trustees purported to again alter the legal status and ownership of 60 Field Point Circle by transferring the property to a new limited liability company, ARIT Investment Holdings LLC ("ARIT LLC"), an entity that is owned by the AR Irrevocable Trust ("AR Trust"). The transfer of 60 Field Point Circle to an entity owned by the AR Trust—a trust with markedly different terms from the Rockpoint Trusts and the trusts that originally held the property—violated the plain terms of the Litigation Standstill to take no action with respect to the facts and causes of action asserted in the Wyoming Litigation. In particular, the transfer of 60 Field Point Circle [redacted][4]

10. On May 1, 2026, the settling parties executed the MSA and the Plan went effective. Section 11.23 of the MSA contains a broad reservation of rights, making clear that it

---

[4] Relevant excerpts from the Declarations of Trust for the Rockpoint Land Trust and the Rockpoint Residence Trust are attached as **Exhibits C** and **D**, respectively. A copy of the Declaration of Trust for the AR Trust is attached as **Exhibit E**.

does not modify the Settlement Stipulation or the rights, claims and defenses of the Litigation Parties in the Wyoming Litigation. It provides:

> **Reservation of Rights**. The Confirmation Order entered on November 18, 2025 and this Agreement are intended, among other things, to implement the obligations set forth in the Settlement Stipulation Dismissing Proceedings Without Prejudice attached as Exhibit A to the Joint Stipulation of Dismissal Without Prejudice filed on August 1, 2025 on the docket of the Bankruptcy Cases [D.I. 7713] ("Settlement Stipulation"). Consistent with the Confirmation Order (including without limitation paragraph 33(a) thereof, which is incorporated herein by reference), ***nothing in this Agreement shall extend, broaden, modify or limit any rights, defenses, claims, or positions of any of the parties to the Settlement Stipulation in the litigation that is the subject of the Settlement Stipulation***. Nothing herein shall modify or limit the rights of any party under the Settlement Stipulation, nor shall any provision herein be construed to affect any party's rights under the Settlement Stipulation or in the litigation that is the subject of the Settlement Stipulation. ***Nothing in this Agreement shall be deemed to waive, release, modify, or otherwise affect any rights, remedies, claims, or defenses that any party may have under the Settlement Stipulation***, or any rights that any party may have in connection with the litigation underlying the Settlement Stipulation. ***All such rights are expressly reserved. This Agreement shall not modify, amend, or supersede any provision of the Settlement Stipulation.*** . . .

(ECF No. 9132 at 114 (emphases added).) Section 7.02 of Annex G to the MSA, which governs the pledge of Dr. Sackler's personal assets as assets of last resort, contains comparable language. (*Id.* at 1234.)

11. On May 7, 2026, in response to Trustees' actions, the RSS Parties filed (i) a motion in the Wyoming Litigation asserting that the Trustees had breached the Settlement Stipulation and Litigation Standstill and seeking, as a remedy for that breach, the right to reinstate the dismissed Wyoming Litigation (the "Rule 60 Motion") and (ii) a petition against Data LLC, solely in its capacity as Trustee of the FPC Trust, the BRP Trust, the XPC Trust, and the PRAH Trust, seeking an accounting and unpaid income distributions (together, the "Wyoming Actions"). In addition, the RSS Parties recorded a *lis pendens* in Connecticut on 60 Field Point Circle, providing notice of a new civil action against ARIT LLC, which purports to

currently hold title to 60 Field Point Circle, and Ms. Gao filed an affidavit in the Greenwich Connecticut land records providing notice of the Wyoming Litigation (the "Connecticut Actions," and together with the Wyoming Actions, the "Interference Actions"). (*See* ECF No. 9204.)

12. On May 14, 2026, the Trustees filed their *Expedited Motion to Enforce the Confirmation Order*, arguing that the Wyoming Actions and the Connecticut Actions violated the Litigation Standstill and non-interference provisions of the Settlement Stipulation and Confirmation Order. The RSS Parties opposed the Trustee's motion. (*See* ECF Nos. 9189, 9204, 9359.)

13. The Court heard argument on June 29, 2026, and on August 21, 2026, the Court issued a bench ruling (the "Bench Ruling") granting the Trustees' motion. The Court found that each of the "Interference Actions" breached the Litigation Standstill and/or interfered with the Trustees' ability to perform under the MSA. However, because the issue before the Court was whether the specific actions taken by the RSS Parties violated the Settlement Stipulation, and in turn, the Confirmation Order, the Court did not have reason to decide whether the Trustees' actions prior to the effective date of the Plan to transfer title between trusts and alter beneficiary rights violated the Settlement Stipulation. Nor, of course, did the Court have before it whether the Trustees' actions since the Bench Decision violated the Settlement Stipulation.

14. In accordance with the Bench Decision, on September 11, 2026, the Court entered a written Order granting the Trustees' motion and directing the RSS Parties and their counsel to "withdraw or dismiss each of the Interference Actions immediately."[5] (ECF No. 9590.)

[5] In the Order, the Court indicated that it had "So Ordered" the record when it provided its Bench Ruling. (ECF No. 9590 ¶ 3.) The RSS Parties have reviewed the Bench Ruling and have not been able locate it in the record.

15. On September 9, 2026, the RSS Parties dismissed the Wyoming Actions, and on September 11, 2026, the RSS Parties withdrew the Connecticut Actions.

16. Since the Bench Decision, the Trustees have taken new actions in violation of the Litigation Standstill by seeking to evict the RSS Parties and their minor children. By email dated August 25, 2026, the Trustees demanded that the RSS Parties and their minor children vacate 60 Field Point Circle by no later than [redacted], and notified the RSS Parties of their intention to restart efforts to market and sell the property.[6]

**Jurisdiction**

17. The Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, Paragraph 33(j) of the Confirmation Order (ECF No. 8263 at 36), and Paragraph 9 of the Settlement Stipulation. (ECF No. 7713.)

18. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

19. By this Motion, the RSS Parties request the entry of an order, substantially in the form attached as **Exhibit A**, (i) finding that the Trustees have violated the Settlement Stipulation, (ii) enforcing the Litigation Standstill provision of the Settlement Stipulation, (iii) directing the Trustees to refrain from taking any action, directly or indirectly, with respect to the Wyoming Litigation or any of the facts alleged or causes of action asserted in the Wyoming Litigation during the Litigation Standstill, and (iv) directing the Trustees to not take any action during the Litigation Standstill to interfere with the ability of the RSS Parties and their children to reside at 60 Field Point Circle or, should Dr. Sackler's wife, Lin Gao, survive him, the ability of her or her

[6] A copy of the Trustees' August 25, 2026 email is attached as **Exhibit F**.

minor children to reside at 60 Field Point Circle unless and until 60 Field Point Circle has been sold to fund the settlement pursuant to the MSA.

**Basis for Relief**

20. The Confirmation Order should be enforced pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code and Sections 33(i) and (j) of the Confirmation Order. (*See* Confirmation Order ¶ 33(i) (providing that the Court "may compel compliance with this Order"); *id.* ¶ 33(j) (providing the Court with exclusive jurisdiction "to resolve any dispute or failure of performance by . . . any . . . party," and the authority to "impose sanctions, including, without limitation, findings of contempt, monetary sanctions, or such other relief as the Bankruptcy Court determines appropriate for any failure to . . . comply with any obligation set forth [therein]").) It is well established that a bankruptcy court has the authority to enforce its own orders. *See, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (holding that a bankruptcy court has "jurisdiction to interpret and enforce its own prior orders"); Bench Decision at 18, 23.

21. Pursuant to Paragraph 3 of the Settlement Stipulation, all Litigation Parties, including the Trustees (in their capacities as trustees of the trusts at issue in the Wyoming Litigation), were required not to "take any actions, directly or indirectly, with respect to the Wyoming Litigation or ***any of the facts alleged or causes of action asserted*** in the Wyoming Litigation." (ECF No. 7713 ¶ 3 (emphasis added).) Although there were numerous claims asserted in the Wyoming Litigation, it was in large part a dispute over title to 60 Field Point Circle and the right of Ms. Gao and her children to reside there after Dr. Sackler's death. Among other claims, the RSS Parties contended that the trusts that originally held 60 Field Point Circle—(i) Field Point Circle Resident Trust and (ii) Field Point Circle Land Trust—were improperly decanted in February 2023 to the newly created Rockpoint Residence Trust and

Rockpoint Land Trust and that the decanting improperly altered the rights of the RSS Parties. (*See, e.g.*, Ex. B ¶¶ 18–20, 57–64.)

22. Prior to the first decanting, [redacted][7] [redacted]

23. Thus, at the time the Litigation Parties signed the Settlement Stipulation, the status quo was that 60 Field Point Circle was owned by the Rockpoint Residence Trust and the Rockpoint Land Trust, Ms. Gao resided at 60 Field Point Circle with her oldest child, and she had a specifically enumerated beneficial right to stay in 60 Field Point Circle in the event of Dr. Sackler's passing. The Trustees agreed in the Settlement Stipulation not to take any action with respect to any facts alleged in the Wyoming Litigation, which would necessarily include (i)

[7] Several counts of the Verified Complaint also focused on the fact that [redacted] (*See, e.g.*, Ex. B ¶¶ 18–20, 57–64.) By transferring ownership of 60 Field Point Circle to ARIT LLC, now owned by the AR Trust, the Trustees have further disassociated the property from ever receiving favorable tax treatment as intended by the grantor, Dr. Sackler.

further transferring title to 60 Field Point Circle, and (ii) altering the rights of the beneficiaries, including Dr. Sackler, Ms. Gao and their children, which were at issue in the Wyoming Litigation. But that is exactly what the Trustees did. The Trustees' purported to transfer of 60 Field Point Circle into ARIT LLC, which is owned by AR Trust, and eliminated Ms. Gao's right to continue living at the premises should Dr. Sackler pre-decease her. This was plainly an "action" "with respect to the Wyoming Litigation" and the "facts alleged" therein, and these actions violated both the letter and the spirit of the Settlement Stipulation. Indeed, during oral argument, counsel for the Trustees acknowledged that the Rockpoint Residence Trust and the Rockpoint Land Trust were included as Payment Parties as "belt and suspenders" in case the transfer to ARIT LLC was found to have violated the Settlement Stipulation. (June 29, 2026, Tr. at 15:3–21.) So too are the actions taken by the Trustees to evict the RSS Parties since the Court issued its Bench Decision.

24. To be sure, in its Bench Decision, the Court held that the general reservations of rights contained in the Settlement Stipulation, Confirmation Order, and MSA could not trump the more specific provisions in the Settlement Stipulation. (Bench Decision at 31:3–33:11.) The Court similarly expressed skepticism that any actions taken by the Trustees to liquidate trust assets, including 60 Field Point Circle, could be challenged after the Litigation Standstill expired. (*Id.* at 33:16–34:19.) But, respectfully, the RSS Parties believe that, as it relates to the transfer of 60 Field Point Circle between trusts during the standstill period in a manner that materially alters the rights of beneficiaries, this proves too much.[8]

[8] The RSS Parties contend that the Trustees' efforts to market and sell the property also violate the Litigation Standstill. The Court seemed to reject this premise in its Bench Decision. However, because the Court's analysis of this issue was not strictly necessary to the Court's decision that the Interference Actions violated the Settlement Stipulation (and is best understood as dicta), and to ensure that the issue is preserved for appellate review, the RSS Parties include in their request for relief that the Trustees be prohibiting from selling 60 Field Point Circle during the remaining Litigation Standstill.

25. Paragraph 3 of the Settlement Stipulation was not merely a reservation of rights. It was a primary component of the Settlement Stipulation, which allowed the Trustees to enter into the MSA, the Plan to be confirmed, and the first two settlement payments to be made. Paragraph 3, thus, expressly preserved the claims asserted in the Wyoming Litigation regarding which trust properly owns 60 Field Point Circle for another day. And while the RSS Parties do not dispute, as the Court found, that 60 Field Point Circle is subject to the asset pledge under Annex E, it cannot be that the RSS Parties gave up their claims regarding which trust owned the property or their rights under the governing trust documents or that they were agreeing that the Trustees could do anything they wanted with 60 Field Point Circle during Litigation Standstill. To hold otherwise would be to transform a dismissal without prejudice, as provided for in Paragraph 2 of the Settlement Stipulation, into a dismissal with prejudice and a complete release of all claims. The RSS Parties bargained for the right to pursue their claims regarding 60 Field Point Circle when the Litigation Standstill ends, and the Trustees can, at that time, argue that the ratification and non-interference provisions in Paragraph 5 bar the RSS Parties' claims. But what they should not be able to do is effectively adjudicate those claims themselves now, during the Litigation Standstill.[9]

26. There is no dispute that the Trustees have made the first settlement payment and, based upon the limited information previously provided to the RSS Parties by the Trustees, the RSS Parties understand the Trustees have more than sufficient liquid assets to satisfy the second settlement payment without selling 60 Field Point Circle. In other words, 60 Field Point Circle

[9] The original transfer of 60 Field Point Circle to the Rockpoint Residence Trust and the Rockpoint Land Trust in 2023 could not be an action "in furtherance of the Purdue/Sackler Settlement Agreements." Rather, the decanting appears intended to alter the rights of beneficiaries under the governing trust documents.

does not need to be liquidated now; and precluding its sale and the eviction of the RSS Parties and their children from 60 Field Point Circle during the Litigation Standstill does not undermine the Trustees' ability to make payments that are due under the MSA, which have been, and can continue to be, fully funded without violating the Litigation Standstill. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (explaining that, in interpreting a contract, a court "must give 'effect and meaning . . . to every term of [a] contract' and strive 'to harmonize all of its terms'" (quoting *India.Com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005)).

27. On the other hand, the Trustees have already taken and have expressed their intention to take actions in the future that will irreparably affect the rights asserted by Ms. Gao and her minor children to reside there. But even if the Court determines that the pre-effective date transfer of the property was allowed and, as the Court has reasoned, the Trustees are entitled to sell 60 Field Point Circle during the Litigation Standstill, that should not mean that the Trustees may evict the RSS Parties and their minor children on short notice, especially when there is no sale pending. 60 Field Point Circle can be marketed and sold while the RSS Parties and their children live there. Accordingly, to the extent the Court has already determined or now determines that a transfer between trusts or a third-party sale during the Litigation Standstill is allowed under the Settlement Stipulation, it should nonetheless prohibit the unnecessary eviction of the RSS Parties and their children in the absence of a sale.

## **Conclusion**

**WHEREFORE**, the RSS Parties request that the Court enter an order, substantially in the form attached as **Exhibit A** (i) finding that the Trustees have violated the Settlement Stipulation; (ii) enforcing the litigation standstill provision of the Settlement Stipulation; (iii) directing the Trustees to refrain from taking any action, directly or indirectly, with respect to the Wyoming Litigation or any of the facts alleged or causes of action asserted in the Wyoming

Litigation during the Litigation Standstill; (iv) directing the Trustees to not take any action during the Litigation Standstill to interfere with the ability of the RSS Parties and their children to reside at 60 Field Point Circle or, should Dr. Sackler's wife, Lin Gao, survive him, the ability of her or her minor children to reside at 60 Field Point Circle unless and until 60 Field Point Circle has been sold to fund the settlement pursuant to the MSA; and (v) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 1, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Stephan E. Hornung
Stephan E. Hornung
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000
stephan.hornung@morganlewis.com

- and -

Barry J. Pollack
HARRIS TRZASKOMA, LLP
1300 19th Street, NW, Suite 700
Washington, D.C. 20036
Tel.: (202) 230-9647
bpollack@harristrz.com

*Co-Counsel for Richard Sackler, M.D. and Lin Gao*

Anne Penachio
PENACHIO MALARA LLP
245 Main Street, Ste. 450
White Plains, NY 10601
Tel.: (914) 946-2889
apenachio@pmlawllp.com

*Co-Counsel for Dr. Richard Sackler, M.D.*