MCDERMOTT WILL & SCHULTE LLP
Julia M. Winters
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400

KATTEN MUCHIN ROSENMAN LLP
Joshua S. Rubenstein
Bonnie Lynn Chmil
50 Rockefeller Plaza
New York, NY 10020
Telephone (212) 940-8800

*Co-Counsel for Frank S. Vellucci, Daniel S. Connolly and Rory Held, as Successor Co-Trustees of the Crystal Trust and the Data Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P., et al., Plan Administration Trust.**[1] | **Case No. 19-23649 (SHL) Jointly Administered** |

**THE TRUSTEES' OBJECTION TO THE RSS PARTIES' REHEARING MOTION AND RELATED SEALING MOTION**

Frank S. Vellucci, Daniel S. Connolly and Rory Held, in their capacities as trustees of certain trusts in the B-Side Payment Group 1 (collectively, the "Trustees"), file this objection (the "Objection") to the *RSS Parties' Limited Motion for Reargument or, in the Alternative, for Entry of an Order Confirming that an Accounting Action Does Not Violate the Settlement Stipulation or Confirmation Order* (the "Rehearing Motion"), filed on September 25, 2026 [D.I. 9611], as well

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, were as follows: Purdue Pharma L.P. (7484); Purdue Pharma, Inc. (7486); Purdue Transdermal Technologies L.P. (1868); Purdue Pharma Manufacturing L.P. (3821); Purdue Pharmaceuticals L.P. (0034; Imbrium Therapeutics L.P. (8810); Adlon Therapeutics L.P. (6745); Greenfield Bio Ventures L.P. (6150); Seven Seas Hill Corp. (4591); Ophir Green Corp. (4594); Purdue Pharma of Puerto Reco (3925); Purdue Products L.P. (4140); Purdue Pharmaceutical Products L.P. (3902); Purdue Neuroscience Company (4712); Nayatt Cove Lifescience Inc. (7805); Button Land L.P. (7502); Rhodes Associates L.P. (N/A); Paul Land Inc. (7425); Quidnick Land L.P. (7584); Rhodes Pharmaceuticals L.P. (6166); Rhodes Technologies (7143); UDF LP (0495); SVC Pharma LP (5717); and SVC Pharma Inc. (4014). The Debtors' corporate headquarters was located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

as the related *Motion for Entry of Order Pursuant to 11 U.S.C. §§ 105(a) and 107(c) Authorizing the Filing of Certain Information Under Seal in Connection with the Limited Motion for Reargument* (the "Sealing Motion"), filed on September 25, 2026 [D.I. 9610].[2]

**PRELIMINARY STATEMENT**

1. The Court could not have been clearer in its Bench Ruling: Dr. Richard Sackler, M.D. ("Dr. Sackler") and Lin Gao (collectively, the "RSS Parties") are prohibited from interfering with, challenging, or suing over the Trustees' administration of the trusts and assets pledged under Annex E to the Master Shareholder Settlement Agreement (the "MSA"). In particular, the RSS Parties cannot interfere with or impede the Trustees' liquidation of assets owned by Annex E Trust Pledgors. The Court was similarly clear that the RSS Parties ***agreed*** to be so bound and had "consented to and ratified" the Trustees' prior and future decisions in furtherance of the MSA.

2. The Rehearing Motion ignores these overarching takeaways and belatedly attempts to pick at the edges of the Court's August 21 Bench Ruling. Indeed, rather than raise these points at the June 29 hearing, or during the Bench Ruling on August 21, 2026, or in the weeks following the Bench Ruling, or in the proposed order the RSS Parties' counsel submitted to Chambers on August 28, or in their letter seeking a status conference on September 10, 2026 [D.I. 9591] (the "Sept. 10 Letter"), the RSS Parties waited until the last possible day to request a do-over (while simultaneously appealing the Court's Bench Ruling "in its entirety" and subsequently filing a new motion challenging the Court's prior rulings). For the reasons set forth herein, the Rehearing Motion is completely without merit, and the RSS Parties have once again caused the Trustees to incur significant expense and distraction from their responsibilities and obligations under the

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Rehearing Motion.

MSA; the Trustees respectfully request that the Court deny the Rehearing Motion. For the reasons discussed in Section III below, the Trustees also object to the Sealing Motion.

**OBJECTION**

3. By the Rehearing Motion, the RSS Parties request "reargument and reconsideration" of the Court's August 21 Bench Ruling and September 11 Order [D.I. 9590] granting the Trustees' *Expedited Motion to Enforce the Confirmation Order* (the "Motion to Enforce"). *See* Rehearing Mot. at 1. In the alternative, the RSS Parties ask for entry of an order "confirming that filing an accounting action against Data LLC, solely in its capacity as trustee of [four Annex E Trust Pledgors], does not violate the Confirmation Order and authorizing Dr. Sackler to file an accounting petition" in Wyoming state court in the form annexed to the Rehearing Motion. *Id.* The Trustees object to both requests.

4. The RSS Parties style the Rehearing Motion as one seeking reconsideration of "two overlooked facts which, if considered, the RSS Parties believe would alter the outcome of the Bench Ruling and the Order with respect to the [Data LLC Action]." Rehearing Mot. ¶ 1. The purported "overlooked facts" are (1) that Data LLC is not a Litigation Party, as such term is defined in the Aug. 1 Stipulation, and thus the RSS Parties were not precluded from suing Data LLC during the Litigation Standstill; and (2) that the Court neglected to consider whether, if the RSS Parties were to amend the Data LLC Petition to remove the request for distributions, it would not violate the Confirmation Order. *Id.* ¶¶ 2-3.

5. As an initial matter, the RSS Parties fail to satisfy any ground for relief under Rule 59(e). Reconsideration of a previous order under Rule 59(e) "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation omitted).

A Rule 59(e) motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *see also, In re Sears Holdings Corp.*, No. 18-23538 (SHL), 2022 WL 16703174, at *2–3 (Bankr. S.D.N.Y. Nov. 3, 2022) (Lane, J.) (denying reconsideration where movants raised "neither new matters nor controlling decisions that the Court overlooked"). It is also improper, on a Rule 59 motion, to raise new legal arguments for the first time. *See, e.g., In re Centric Brands, Inc.*, No. 20-22637 (SHL), 2022 WL 1132046, at *2 (Bankr. S.D.N.Y. Apr. 15, 2022) (Lane, J.).

6. The two cases the RSS Parties cite in the Rehearing Motion do not support reconsideration in this case. In *In re Hellas Telecommunications (Luxembourg) II SCA*, 526 B.R. 499, 507 (Bankr. S.D.N.Y. 2015), the court granted limited reargument because its prior opinion did not address the merits of movants' section 546(e) argument at all, and therefore genuinely "overlooked" it. Similarly, in *Floyd v. City of New York*, 813 F. Supp. 2d 457, 469–70 (S.D.N.Y. 2011), the court granted reconsideration because newly submitted expert analysis of crime data cast serious doubt on a key factual premise that had been undisputed when the court ruled, and moreover the ruling at issue was interlocutory (i.e., reviewed under Local Rule 6.3, not Rule 59(e)), giving the court far broader discretion to revisit its own order than exists here. As discussed below, this case is entirely different from *In re Hellas* and *Floyd*, rather, it is on all fours with this Court's denial of Rule 59 relief in *In re Sears Holdings* and *In re Centric Brands*.

## I. The Court Did Not Overlook the Definition of "Litigation Parties"

7. The RSS Parties' new contract construction argument at paragraphs 10 and 11 of the Rehearing Motion—that Data LLC is not a Litigation Party because "the definition of

Litigation Parties in the Stipulation makes clear that the parties knew how to bind parties to the litigation in other representative and fiduciary capacities"—is not a fact that the Court overlooked, nor was it an argument the RSS Parties previously raised that the Court neglected to address.

8. Instead, the Court ***disagreed*** with the RSS Parties and found that the Data LLC Action violated the Litigation Standstill as well as paragraph 5 of the Stipulation. Bench Ruling at 29:21-24. And rightly so. Given the purpose of the Stipulation—"to ensure ***for the lifetime of the settlement*** that there will be no actions taken that might destabilize the Plan and threaten the ability of the members of the B-Side Payment Group 1 to comply with their obligations thereunder"—the Court correctly construed "Litigation Parties" to encompass each of the named persons and entities in their capacities as Side B Payment Group 1 members.[3] *See* MDT Statement in Support of Motion to Enforce [D.I. 9389] (emphasis in original); *see also,* Bench Ruling at 22:8-11. Moreover, as is crystal clear from the RSS Parties' second objection to the Motion to Enforce [D.I. 9359], an action against Data LLC is an action against the Trustees:

> Data LLC ("Data"), a Wyoming limited liability company and private trust company, serves as trustee of all four Trusts. Data's sole member is Data Trust, of which Frank S. Vellucci, Daniel S. Connolly and Rory Held are the Trustees, and therefore they manage and make decisions for Data LLC.

RSS Objection at 4, n. 1. *See also*, Rehearing Mot., Ex. A ¶ 2.

9. Even if Data LLC is definitively not a Litigation Party (and it is), reconsideration of that point would not materially alter the Court's decision. *See In re Centric Brands, Inc.*, No. 20-22637 (SHL), 2022 WL 1132046, at *2 (noting that a purportedly overlooked email "was not a dispositive factor in the Court's Memorandum of Decision."). As the RSS Parties acknowledge,

---

[3] The definition of Litigation Parties also captured individuals who might be able to bring suit on behalf of others who are not, themselves, Side B Payment Group 1 members, such as minor children. *See* Stipulation ¶ B.

the Court held that the Data LLC Action violated ***both*** paragraphs 3 and 5 of the Stipulation. Bench Ruling at 29:20-24.

## II. The Court Did Not Overlook Offering An Advisory Opinion On An Unfiled Petition

10. As to the Rehearing Motion's second point (*see* ¶¶12-16)—that the Court should "clarify" whether a petition against Data LLC that does not seek distributions would violate the Stipulation and Confirmation Order—the Trustees struggle to see how the Court could have overlooked an unasked request for an advisory opinion on a not-yet-filed Wyoming state court lawsuit. *See In re Centric Brands, Inc.*, No. 20-22637 (SHL), 2022 WL 1132046, at *2, quoting *In Design v. Lauren Knitwear Corp.,* 1992 WL 42911, at *1 (S.D.N.Y. Feb. 24, 1992) (citation omitted) ("[I]t is improper for the movant to present new material 'because[,] by definition[,] material that has not been previously presented cannot have been previously 'overlooked' by the court.'"). Despite the attempt to shoehorn the argument into Rule 59, the RSS Parties do not seek rehearing or reconsideration at all. Even if the Court could reconsider whether a hypothetical new lawsuit would violate the Stipulation and Confirmation Order, it would not change the Court's determination that the as-filed Data LLC Action did.

11. To be clear, the lawsuit attached as Exhibit A to the Rehearing Motion absolutely would violate the Stipulation and Confirmation Order as it is a lawsuit against a Litigation Party (both Data LLC directly and the Trustees derivatively) during the Litigation Standstill, and also because it challenges the Trustees' oversight, management and decision-making with respect to assets of Annex E Trust Pledgors. In short, while trust beneficiaries can request information from Annex E Trust Pledgors, they cannot ***sue*** to obtain information from the Litigation Parties, at least during the Litigation Standstill, and potentially for the life of the settlement.

12. Moreover, the Trustees have, in fact, provided the RSS Parties (along with all other beneficiaries), with voluminous information concerning the trusts they oversee, including the Data LLC trusts, as detailed in the Trustees' *Reply in Support of the Motion to Enforce* [D.I. 9390]. *See* Reply ¶¶ 9-13. The Trustees have provided this information even though all of the Data LLC trusts' assets are pledged under the MSA, as part of "the most extensively documented confirmation and related settlement ever in the history of American bankruptcy proceedings," and even though there can be no income distributions to Dr. Sackler regardless of what Dr. Sackler thinks the information requested (and already provided to Dr. Sackler and his various current and past lawyers) shows. June 29 Hr'g Tr. at 29:17-19; *see also,* Bench Ruling at 30:16-21.

13. Ultimately, however, it is not the Bankruptcy Court's duty to assist the RSS Parties in figuring out a way to continue attacking the Trustees in state court without running afoul of the Stipulation and Confirmation Order. Not under the Bankruptcy Code or Federal Rules of Bankruptcy Procedure, and certainly not under Rule 59 of the Federal Rules of Civil Procedure.

## III. Objection to the Sealing Motion

14. The RSS Parties request permission to file under seal the entirety of two exhibits to their Rehearing Motion: Exhibit A, a purported petition for an accounting that the RSS Parties have not yet filed in any court, and Exhibit B, an unredacted version of the Stipulation. The RSS Parties also seek to redact a portion of their Rehearing Motion that references a portion of the Stipulation that remains filed under seal in this Court. The Trustees do not believe anything in the Stipulation warrants sealing, but as it was already filed under seal, do not oppose it remaining so; in fact, there was no need for the RSS Parties to attach it again as it was part of the record on the Trustees' Motion to Enforce. As for the RSS Parties' Exhibit A, the RSS Parties' proposed petition against Data LLC has not been filed in Wyoming and therefore Wyoming's sealing statute does

not apply. Nor have the RSS Parties demonstrated a basis for sealing the entirety of the document pursuant to section 107 of the Bankruptcy Code, particularly when much of the substance of Exhibit A has already been aired by the RSS Parties in public filings. *See, e.g.,* RSS Objection [D.I. 9359].

**RESERVATION OF RIGHTS**

15. As the Court will recall, the Trustees engaged a real estate broker to market and sell 60 Field Point Circle ("60 FPC"), real property pledged as security by a Trust Pledgor under Annex E. *See* Bench Ruling at 26:14-16. Although the Trustees need not show why they believe this action is necessary or a proper exercise of their fiduciary duties, they have explained to the RSS Parties (as well as the other beneficiaries) that they are taking advantage of a lucrative Greenwich, Connecticut real estate market to maximize the value of this particular asset. In addition, while the 60 FPC land is extremely valuable, the residence on the property is crowded with accumulated personal belongings and is in a state of disrepair. Thus, the Trustees were informed by a Greenwich real estate expert that the property would likely sell faster and garner the highest and best offer if it is vacant. Accordingly, the Trustees asked the RSS Parties on August 25, 2026, to vacate 60 FPC no later than October 31, 2026.[4] The Trustees also requested that certain artwork (owned in part by an Annex E Trust) be moved into safe storage given the condition of 60 FPC and its impending sale.

16. The RSS Parties have not agreed to vacate and have refused to allow the artwork to be placed in safe keeping. The Sept. 10 Letter makes plain that, notwithstanding this Court's Order, the RSS Parties continue to dispute that "the Trustees are indeed acting on behalf of the trust that, in fact, rightfully owns [60 FPC]," and believe that they are entitled "to continue to

[4] The RSS Parties have been on notice of the Trustees' intent to sell 60 FPC since April 2026.

possess and enjoy" assets that are pledged (in whole or in part) under Annex E. Sept. 10 Letter at 1, n.2. And just yesterday, the RSS Parties filed a new motion—*see* RSS Parties' *Motion to Enforce Confirmation Order and Settlement Stipulation*, [D.I. 9622]—disputing that the Trustees have the unfettered right to liquidate Annex E assets and seeking an order that would permit them to remain in 60 FPC until May 2028. Again, notwithstanding this Court's ruling that the RSS Parties have no ownership interest in 60 FPC and no right to challenge the Trustees' decisions with respect thereto. Bench Ruling 34:23-35:5. Reluctantly, the Trustees will respond to the RSS Parties' new motion in due course.

17. It is now clear that the RSS Parties (and their latest counsel) take the misguided position that the Court's Bench Ruling only reached the four Interference Actions and they are free to interfere in other ways with the Trustees' administration of Annex E. It is also clear that the RSS Parties (and their latest counsel) either do not understand or are blatantly ignoring key portions of the Stipulation: paragraphs 5(a) and 5(b). It bears repeating: among other things, ***the RSS Parties acknowledged and agreed*** that "the actions of [all Annex E Trustees] prior to [August 1, 2025] and taken in the future . . . in the negotiation, approval, and furtherance of the Purdue/Sackler Settlement Agreements ***are hereby consented to and ratified***, and [the RSS Parties] ***will not directly or indirectly [ ] interfere*** now or at any time in the future, in any way with the [Annex E Trustees], Payment Party's or the B-Side Payment Group 1's ability to consummate, implement, and perform under the Purdue/Sackler Settlement Agreements." Stipulation ¶ 5(a) (emphasis added).

18. The Trustees respectfully submit that the Court already ordered the RSS Parties to cease interfering ***in all respects*** with any Annex E pledgors, and to cease challenging (in court or otherwise) the decisions of the Trustees with respect to Annex E administration. *See generally,*

Bench Ruling. Accordingly, the Trustees reserve all rights with respect to the RSS Parties' continuing violations of the Stipulation and paragraph 33 of the Confirmation Order.

## CONCLUSION

For the reasons set forth herein, the Trustees respectfully request that the Court (i) deny the Rehearing Motion in its entirety, (ii) order the RSS Parties to reimburse the Trustees' fees and expenses related to the Rehearing Motion pursuant to paragraphs 4 and 5 of the Order, and (iii) grant the Trustees such other and further relief as is just.

Dated: New York, New York
October 2, 2026

MCDERMOTT WILL & SCHULTE LLP

By: */s/ Julia M. Winters*
Julia M. Winters
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Email: jwinters@mcdermottlaw.com

and

KATTEN MUCHIN ROSENMAN LLP
Joshua S. Rubenstein
Bonnie Lynn Chmil
50 Rockefeller Plaza
New York, NY 10020
Telephone: (212) 940-8800
Email: joshua.rubenstein@katten.com
bonnie.chmil@katten.com

*Co-Counsel to Frank S. Vellucci, Daniel S. Connolly and Rory Held, as Successor Co-Trustees of the Crystal Trust and the Data Trust*