Oct 6, 2026

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK**

In re: PURDUE PHARMA L.P., *et al.*, Debtors.

Chapter 11 · Case No. 19-23649 (SHL) · (Jointly Administered)

**SUPPLEMENTAL STATEMENT OF MAUREEN MULROY KIELIAN, FOR JOHN ANDRE' KIELIAN (CLAIM NO. 1215973), IN FURTHER SUPPORT OF HER OBJECTION TO THE APPLICATION OF THE AD HOC GROUP OF INDIVIDUAL VICTIMS FOR APPROVAL OF PAYMENT OF COMPENSATION AND EXPENSES**

# Preliminary statement

1. Objector submits this supplemental statement under paragraph 17 of her Objection dated August 7, 2026 [ECF No. 9527] (the "Objection"), which reserved the right to supplement. It responds to the Application of the Ad Hoc Group of Individual Victims [ECF No. 9516] (the "Application") and the Ad Hoc Group's reply filed October 5, 2026 [ECF No. 9629].
2. This statement adds two points the Objection did not cover. First, the closest comparable mass-tort case, *In re Boy Scouts of America*, denied a nearly identical request from a claimant-side group of victims' lawyers. Second, the Ad Hoc Group's own counsel argued in this case in 2019 that individual victims should be compensated before committee professionals are paid.
3. Objector does not dispute that the Ad Hoc Group's professionals performed work in this case. Objector asks that the Court deny the Application, which seeks $10,960,305.22 to be paid from the Purdue Personal Injury Trust, or in the alternative reduce it to an amount the Court independently finds reasonable.

# A. The Boy Scouts court denied a nearly identical request

4. In *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del.), a group of personal injury law firms, the Coalition of Abused Scouts for Justice, sought about $21 million in fees from the estate under 11 U.S.C. § 503(b)(3)(D) and (b)(4), claiming a substantial contribution to the plan. On December 5, 2023, Judge Laurie Selber Silverstein denied the request in full. *In re Boy Scouts of Am.*, 2023 WL 8449557 (Bankr. D. Del. Dec. 5, 2023) [D.I. 11652], *aff'd*, Civ. No. 23-1443-RGA (D. Del. Jan. 13, 2025), *aff'd*, No. 25-1136 (3d Cir. Nov. 21, 2025) (non-precedential). The denial has thus been upheld on two levels of appeal.
5. The court found that the Coalition's contribution "did not transcend its self-interest," that parts of its work duplicated the official tort claimants' committee, and that its work primarily benefited its member law firms. The court also noted that the Coalition's firms had told survivors they would not bear the Coalition's fees, yet approval would have shifted those fees onto the survivors' fund.

6. Earlier, in August 2021, the same court withheld approval of a $10.5 million payment of the Coalition's fees, explaining that "any funds diverted from abuse victims, especially to pay an obligation of their lawyers, needs to be closely examined."
7. The parallels are direct. The Boy Scouts trust (about $2.46 billion) was more than three times the Purdue PI Trust's initial funding of about $750 million, and Boy Scouts awards reach $2.7 million per survivor. Purdue claimants expect about $8,000 to $16,000 each. The $10,960,305.22 requested equals the estimated Tier 2 awards of about 1,370 victims. While the Boy Scouts ruling is not binding here, its reasoning applies with greater force where individual recoveries are this small.
8. As in Boy Scouts, an official committee existed here to represent all unsecured creditors, including individual victims, at estate expense. The Application does not show which of the Ad Hoc Group's work for which it seeks payment was distinct from that committee's work.

# B. The Ad Hoc Group's counsel took the opposite position in 2019

9. On November 12, 2019, ASK LLP, through Edward E. Neiger and Jennifer A. Christian, the same counsel who now seek this increase, objected on behalf of individual victims to the Debtors' motion to pay the professional fees of the Ad Hoc Committee [ECF No. ___]. Counsel argued that individual victims had suffered the greatest harm and should be compensated before committee professionals were paid.
10. That principle was sound in 2019 and remains sound now. It should apply equally when the professionals to be paid are counsel's own.

# C. Burden, reasonableness and double payment

11. The applicant bears the burden of proving both entitlement and reasonableness. Section 1129(a)(4) and Plan Section 5.9(h) require that any payment be approved by the Court as reasonable. In 2021 the U.S. Trustee argued that these fees could be allowed only under the substantial-contribution standard of § 503(b)(3) and (4) [ECF No. 3256], which requires a direct and demonstrable benefit to the estate as a whole, not to the applicant's own clients. Whatever standard applies, the Court must make its own reasonableness finding. *See Lebron v. Mechem Fin. Inc.*, 27 F.3d 937 (3d Cir. 1994); *In re U.S. Lines, Inc.*, 103 B.R. 427 (S.D.N.Y. 1989).
12. Objector asks that the Court disallow the $27,000 the Application includes for preparing the Application itself, and any time spent defending it, because that work benefited counsel rather than victims.
13. Objector further asks that the Ad Hoc Group's counsel disclose, under Bankruptcy Rule 2019, whether they or the Ad Hoc Group's member firms hold contingency-fee agreements with individual claimants that will take a share of those claimants' PI Trust awards. If so, payment of the requested fees would compensate the same lawyers twice for the same work, with victims bearing the cost both times.

# D. The Application and its proposed order confirm that victims pay

14. Exhibit A to the Application, the proposed order [ECF No. 9516-1], provides that "[t]he PI Trustee is authorized and directed to pay, from the PI Trust, in full and promptly," the amounts requested. The Application itself states that these fees "are being paid exclusively out of the agreed upon distribution to Personal Injury Victims" (Application ¶ 48), and that amounts paid by the PI Trust are "deducted from Distributions" to holders of personal injury claims (Application ¶ 19). Every dollar approved therefore reduces Objector's recovery, and Objector is a party in interest under 11 U.S.C. § 1109(b).
15. The Application seeks a total of $10,960,305.22: (i) $2,933,706.00 in ASK LLP fees, including $27,000 for preparing the Application; (ii) $1,401,864.22 in expenses for Gentle Turner ($592,147.55), Protiviti ($704,606.00) and Dundon ($105,110.67); and (iii) $6,624,735.00 in fees for Andrews & Thornton ("A&H") for 5,980.4 hours. The Application states that no prior request for this relief has been made (Application ¶ 55).
16. In 2021 this Court declined to find these fees reasonable on the record then before it, because they "are not the reduced contingency fees that the parties and Mr. Feinberg as mediator negotiated . . . but, rather, are based on counsels' hourly rates" (Bench Ruling at 27 [ECF No. 3786], quoted in Application ¶ 24). A&H's own declarant now states that "A&H is primarily a contingency firm and does not typically charge its personal injury clients hourly rates" (Application Ex. C ¶ 8). The hourly rates A&H claims, up to $1,750 per hour, are therefore not rates its clients actually pay. They were set for this Application by comparison to estate professionals.
17. A&H's time includes 820.9 hours at $1,500 per hour ($1,231,350.00) and 2,057.5 hours at $650 per hour ($1,337,375.00) under the category "TDP Validation" (Application Ex. C). Objector asks that the Court require an explanation of why this work was billed at these rates and whether it overlaps with work the PI Trust's claims administrator performs.
18. The Application argues that victims consented to these fees by voting for the Plan (Application ¶ 49). But the Plan made payment "subject to Bankruptcy Court approval" as reasonable, and the Confirmation Order requires a reasonableness application (Confirmation Order ¶ 14). A vote for a plan that preserved this Court's review was not consent to any particular amount. As this Court said in 2021, section 1129(a)(4) means "the Court have the ultimate say on the reasonableness of these fees" (Bench Ruling at 26).

# Relief requested

WHEREFORE, Objector respectfully requests that the Court (i) deny the Application's request for $10,960,305.22 or, in the alternative, reduce it to an amount the Court independently finds reasonable; (ii) deny the Application to the extent it proposes, or would permit, payment from the Purdue Personal Injury Trust; (iii) direct that any compensation allowed be paid solely by the Debtors' estate or the Reorganized Debtors; (iv) grant the relief and require the disclosures described in paragraphs 12, 13 and 17; and (v) grant such other relief as is just and proper.

On October 6, 2026, I served this Supplemental Statement on ASK LLP by email to:

**ASK LLP**
Edward E. Neiger and Jennifer A. Christian
60 East 42nd Street, 46th Floor, New York, NY 10165
Tel. (212) 267-7342 · Fax (212) 918-3427
eneiger@askllp.com · jchristian@askllp.com

Respectfully submitted,

Signature: *Maureen M. Kielian*

Maureen Mulroy Kielian, for John Andre' Kielian Claim No. 125973
Objector, *pro se*
3302 NE Holly Creek Drive
Jensen Beach, FL 34957
Phone: 954-629-5264
mkielian@aol.com