**BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**In re:**
**PURDUE PHARMA L.P., et al.,**
Debtors.

Case No. **19-23649 (SHL)**

## SUPPLEMENTAL OBJECTION AND RESPONSE TO REPLY OF AD HOC GROUP OF INDIVIDUAL VICTIMS; RENEWED DEMAND FOR ACCOUNTING AND RECONCILIATION; AND EXPRESS PRESERVATION OF JURISDICTIONAL, ARTICLE III, AND JURY-TRIAL OBJECTIONS

Laurie Danielle Pitts-Tillman ("Pitts-Tillman"), appearing **pro se**/sui juris respectfully presents this Supplemental Objection and Response to the Reply of the Ad Hoc Group of Individual Victims concerning its Application for approval and payment of compensation and expenses.

## PRELIMINARY AND CONTINUING CHALLENGE TO JURISDICTION AND CONSTITUTIONAL AUTHORITY

**1.** Laurie Danielle Pitts-Tillman begins where she has consistently begun: she continues to challenge the Bankruptcy Court's jurisdiction and constitutional authority insofar as these proceedings purport to adjudicate, determine, impair, channel, release, value, estimate for dispositive purposes, or otherwise finally affect her personal-injury claim and the private rights associated with that claim. Nothing contained in this Supplemental Objection, and nothing stated by Pitts-Tillman at the October 7, 2026 hearing, constitutes consent to adjudication of her personal-injury claim by an Article I bankruptcy court, waiver of an Article III adjudication, waiver of her Seventh Amendment jury-trial demand, or withdrawal of any jurisdictional objection previously asserted.

2. Pitts-Tillman specifically preserves her arguments under **Article III of the United States Constitution**, the **Seventh Amendment**, 28 U.S.C. §157(b)(5), *Stern v. Marshall*, 564 U.S. 462 (2011), *Wellness International Network, Ltd. v. Sharif*, 575 U.S. 665 (2015), *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), and every jurisdictional and constitutional objection previously placed before this Court or the appellate courts.

3. Pitts-Tillman's participation in this fee proceeding is protective and conditional. Applicants seek approximately $10.96 million from a fund established for Personal Injury Victims.

Applicants themselves acknowledge that payment will reduce funds otherwise available for PI distributions. Pitts-Tillman therefore objects to depletion of that fund while expressly disputing that her appearance confers jurisdiction, constitutes consent, cures any asserted constitutional defect, or waives any pending challenge. Applicants expressly acknowledge that payment reduces funds otherwise available for PI victims.

4. Alternatively, even assuming solely for purposes of this objection that the Court possesses authority to determine this fee application, Applicants have not demonstrated that the compensation requested is reasonable under the very standard upon which their Application relies—11 U.S.C. §1129(a)(4).

## I. CONFIRMATION OF §5.9(h) DID NOT CONSTITUTE ADVANCE APPROVAL OF AN UNKNOWN $10.96 MILLION BILL

**5.** Applicants' Reply emphasizes that no Personal Injury Victim objected at confirmation specifically to §5.9(h). That argument improperly conflates two separate questions:

**(a)** whether the Plan contained a mechanism permitting later payment of reasonable professional compensation; and

**(b)** whether the **particular fees, hours, rates, tasks, reimbursements and alleged expenses subsequently submitted are actually reasonable.**

**6.** Applicants themselves recognize the distinction. Their Application asks this Court now to approve as reasonable approximately:

- ASK LLP fees — **$2,933,706.00**;
- A&H fees — **$6,624,735.00**; and
- ASK/A&H expenses — **$1,401,864.22**.

The total request is approximately **$10.96 million**.

**7. None of those particular charges became reasonable merely because the Plan established a mechanism through which a future application could be presented. If confirmation itself conclusively established reasonableness, the present §1129(a)(4) review would serve no purpose.**

## II. PITTS-TILLMAN COULD NOT HAVE OBJECTED AT CONFIRMATION TO BILLING THAT HAD NOT YET BEEN PRESENTED

**8.** Applicants also rely upon overwhelming acceptance of the Plan and contend that PI victims thereby agreed to payment of the Ad Hoc Group's professional fees from their recovery. Their Application reports 58,162 voting PI claim holders, of whom 57,936 accepted the Plan.

**9.** A vote approving a Plan containing a future fee mechanism is not the same thing as informed approval of an undisclosed future invoice.

At the time of solicitation, Pitts-Tillman had not been presented with the present:

**$10.96 million aggregate request; 3,745 claimed TDP-validation hours; individual time entries; $650-per-hour law-clerk billing; consultant reimbursement reconciliation; cross-case billing information; individual-client versus constituency-work segregation; or evidence concerning whether substantially identical claimant records had already been reviewed and compensated elsewhere.**

**10.** Pitts-Tillman further disputes that the volume, technical complexity, timing, incorporation of additional materials, and amendments associated with the solicitation process afforded an ordinary unrepresented PI claimant a meaningful opportunity to identify every consequence buried within the interrelated Plan and Disclosure Statement materials.

**11.** But the Court need not resolve that broader solicitation issue to reject Applicants' present argument. Whatever effect the Plan vote may have had upon §5.9(h), **no claimant could have evaluated the reasonableness of billing entries that had not yet been presented.**

## III. APPLICANTS MUST PROVE THE ACTUAL BILL THEY NOW ASK PI VICTIMS TO PAY

**12.** Applicants contend that the objections failed to identify specific unreasonable billing. Their detailed records now permit that examination.

A&H identifies **3,745 hours** under the category "TDP Validation," described as developing and validating the TDP through reviewing and scoring **"thousands of claims."**

**13.** Yet Applicants identify the number of hours with precision while failing to identify the exact number of unique claims corresponding to those hours.

Without that denominator, neither the Court nor affected PI claimants can determine:

- average hours per claim;
- average cost per claim;

- how many claims were actually scored;
- how many were merely processed;
- how many belonged to A&H clients;
- how many had previously been reviewed; or
- whether repeated review produced additional substantive work.

**14.** Applicants should therefore be required to state the **exact number of unique claimant files** underlying the 3,745-hour charge.

## IV. THE $650-PER-HOUR LAW-CLERK BILLING REQUIRES PARTICULAR SCRUTINY

**15.** A&H's supporting materials identify Elham Eslamian Amiri as a **law clerk whose bar admission was pending**.

A&H nevertheless seeks compensation for approximately **2,057.5 hours at $650 per hour**, totaling approximately **$1,337,375**, much of it categorized as TDP Validation.

**16.** Numerous entries reflect exact 8.0-hour days, resulting in charges of **$5,200 per day**.

**17.** Pitts-Tillman does not contend that every hour worked by a law clerk is noncompensable. She contends that Applicants must establish **what work justified a $650 professional rate**, particularly where the described activity involved review and processing of claimant and medical records.

The Second Circuit has distinguished substantive professional work from clerical activity when determining reasonable fees. See *Lilly v. City of New York*, 934 F.3d 222 (2d Cir. 2019).

**18.** Applicants should therefore segregate:

**substantive legal analysis; medical or claim evaluation requiring professional judgment; paralegal-level work; and purely clerical or administrative record processing.**

## V. APPLICANTS' ASSERTION THAT THERE WAS "NO DUPLICATION" REQUIRES EVIDENTIARY SUPPORT

**19.** Applicants affirmatively state:

"the compensation sought is not duplicative of fees that ASK or A&H may have earned for representing individual claimants."

They characterize the work as fundamentally different constituency-wide work.

Purdue%20-%20Reply%20to%20Objections%20to%20Fee%20App%201129(a)(4).pdf

**20. That assertion places duplication directly at issue.**

Calling work “constituency-wide” does not establish that the underlying tasks did not overlap with compensated individual representation.

**21.** Attorneys representing individual mass-tort clients necessarily must perform sufficient investigation and record review to understand and prosecute those clients’ claims. Where those attorneys also seek millions of dollars from a collective PI Trust for reviewing and scoring claimant records, Applicants should demonstrate how those tasks were segregated.

## VI. THE SAME CLAIMANT RECORDS WERE USED ACROSS MULTIPLE OPIOID PROCEEDINGS

**22.** Pitts-Tillman’s own circumstances provide a concrete means of testing Applicants’ assertion.

Her underlying medical and injury records were relevant to claims involving multiple opioid manufacturers, including Purdue, Mallinckrodt, and Endo.

**23.** Accordingly, Applicants should disclose, with respect to overlapping claimant populations, whether the same records were reviewed in multiple opioid proceedings and whether compensation was received or sought for those reviews.

**24.** Separate product-specific analysis may legitimately require additional work. Pitts-Tillman does not contend otherwise.

But collecting, organizing, reviewing general medical histories, constructing chronologies, identifying rehabilitation history, or performing substantially identical administrative review of the **same records** presents a materially different question.

**25.** Applicants should therefore identify what work was genuinely new and defendant-specific and what work relied upon information already collected, organized, evaluated or compensated in another representation or proceeding.

## VII. PITTS-TILLMAN’S OWN CLAIM SHOULD BE TRACED

**26.** Applicants can answer the duplication issue concretely by identifying whether Pitts-Tillman’s own claim was included among the “thousands” allegedly reviewed.

If so, Applicants should identify:

**who reviewed it; when it was reviewed; hours charged; rate charged; documents reviewed; score or work product generated; whether the records had previously been reviewed by counsel; whether substantially the same records were reviewed in Mallinckrodt or Endo; and what compensation was received or sought for such work.**

**27.** If Applicants cannot determine whether Pitts-Tillman's file was among the "thousands," that inability itself bears upon whether 3,745 hours of claim-review work have been sufficiently substantiated.

## VIII. PRIOR PAYMENTS AND REIMBURSEMENTS MUST BE RECONCILED

**28.** The Application states that Gentle Turner was paid monthly by ASK and A&H and has been **paid in its entirety**; Protiviti received 50% monthly payments with the remainder deferred; and Dundon deferred payment. Applicants nevertheless seek payment or reimbursement from the PI Trust.

**29.** Before payment, Applicants should produce an invoice-by-invoice reconciliation identifying:

the original invoice; payer; payment date; amount paid; outstanding balance; amount sought as reimbursement; amount sought as direct payment; and confirmation that no amount is being compensated twice.

## IX. FAILURE TO PROVIDE REQUESTED ACCOUNTING INFORMATION REMAINS AT ISSUE

**30.** Pitts-Tillman has repeatedly demanded accounting information concerning assets, distributions, deductions, liabilities and the administration of funds affecting PI claimants.

**31.** She preserves her contention that withholding information reasonably necessary to protect her claimed beneficial interest may implicate fiduciary obligations applicable to trust administration.

Restatement (Third) of Trusts §82 addresses a trustee's duties to furnish beneficiaries information concerning trust administration, including information reasonably requested where appropriate to protect the beneficiary's interests.

Bogert, *Trusts & Trustees* §961 likewise addresses a beneficiary's entitlement to information concerning administration of a trust.

**32.** Pitts-Tillman does not ask the Court to decide a fiduciary-breach claim solely from the present record. She asks the Court **not to permit disputed funds to leave the PI Trust before the accounting necessary to evaluate the transaction is produced.**

## X. APPLICANTS CANNOT TURN AN UNFINISHED CLAIM-REVIEW PROCESS INTO A FINDING AGAINST PITTS-TILLMAN

**33.** Applicants acknowledge that they do not know whether Pitts-Tillman is ultimately entitled to a PI Trust distribution and reserve a standing argument if she does not hold an Allowed and Qualified PI Claim.

**34. A claim that remains under review is not, for that reason alone, a disallowed claim.**

If Applicants intend to contest standing, Pitts-Tillman requests that the appropriate party state on the record whether her claim is:

**pending, allowed, qualified, objected to, disallowed, rejected, or otherwise classified**, together with the basis and date of any determination.

Applicants should not simultaneously rely upon an unfinished review process and treat that unfinished process as an adjudication that Pitts-Tillman possesses no affected interest.

## XI. REQUEST FOR RELIEF

WHEREFORE, without waiving and while expressly preserving her threshold jurisdictional and constitutional objections, Pitts-Tillman respectfully requests that the Court:

1. **decline to approve or authorize immediate payment** of the disputed compensation;
2. alternatively defer determination until the requested accounting and reconciliation have been produced;
3. require Applicants to identify the exact number of unique claims underlying the 3,745 TDP-validation hours;
4. require sufficient claim-level, anonymized, or comparable supporting records to substantiate that work;
5. require segregation of substantive attorney work, law-clerk work, paralegal work, and clerical/administrative work;
6. require disclosure of the methodology used to prevent duplication between individual-client work and constituency-wide work;
7. require disclosure and reconciliation of overlapping work involving Purdue, Mallinckrodt, Endo, Insys, or other proceedings where substantially identical claimant records were used;
8. require disclosure sufficient to determine whether contingency compensation or compensation from another proceeding already compensated substantially identical services;
9. require invoice-by-invoice reconciliation of Gentle Turner, Protiviti, Dundon and other payments, advances, reimbursements and outstanding balances;

10. require production of accounting information reasonably necessary to determine the effect of the requested payment upon PI Trust assets and claimant distributions;
11. require clarification of the present status of Pitts-Tillman's claim before adjudicating any standing challenge;
12. permit Pitts-Tillman a reasonable opportunity to supplement her objection in response to Applicants' recently filed substantive Reply and the underlying billing records;
13. preserve the disputed funds pending meaningful review;
14. **determine Pitts-Tillman's threshold jurisdictional objections before treating her participation in this fee proceeding as consent to any broader adjudicatory authority;**
15. expressly recognize that Pitts-Tillman's participation in protecting her claimed interest in PI Trust assets does **not constitute waiver or consent** concerning her Article III, Seventh Amendment, jurisdictional, appellate, release, or personal-injury rights; and
16. grant such other and further relief as the Court deems just and proper.

**RESERVATION OF RIGHTS**

Pitts-Tillman expressly reserves all rights and objections previously asserted, including challenges concerning jurisdiction and constitutional adjudicatory authority; Article III; the Seventh Amendment; 28 U.S.C. §157(b)(5); adjudication or disposition of her personal-injury claim; consent; third-party releases; due process; her conditional vote and reservation of rights; accounting and valuation; appellate rights; and all other matters previously preserved.

I reserve my right, not to be compelled to perform under any contract or commercial agreement that I did not enter into knowingly, willingly voluntarily or intentionally, and I do not accept any liability for the compelled benefit of any unrevealed contract or commercial agreement.

**Respectfully presented,**

**Laurie Danielle Pitts-Tillman**
Pro Se/ Sui Juris All rights reserved UCC 1-308
℅ 5116 Georgia Highway99

Brunswick Georgia [31525]
912-506-8875

**CERTIFICATE OF SERVICE**

I, Laurie Danielle Pitts-Tillman, appearing pro se/sui juris, certify that on October 7, 2026, I presented the foregoing document to the Court through the Court's **Pro Se Upload Tool** for filing on the docket and processing through the Court's **Case Management/Electronic Case Files ("CM/ECF") system**.

To the extent that any party or counsel of record is a registered CM/ECF user entitled to electronic service, notice of the filing and access to the filed document will be transmitted through the Court's CM/ECF system.

I do not know which parties or counsel, if any, are not registered for electronic service through CM/ECF or will not receive electronic notice of this filing. Accordingly, I respectfully request that the Clerk notify me if any person entitled to service or notice is not electronically notified through CM/ECF, so that I may provide separate service as required by the applicable Federal Rules, Local Rules, and orders of this Court.

I make this certification in good faith to ensure that all persons legally entitled to service or notice receive the filing.

Dated: October 7, 2026

Respectfully presented,

**Laurie Danielle Pitts-Tillman**
Pro Se/Sui juris
% 5116 Georgia Highway 99
Brunswick, Georgia [31525]