HERBERT SMITH FREEHILLS KRAMER (US) LLP
Kenneth H. Eckstein
Rachael Ringer
David E. Blabey Jr.
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100

*Attorneys for the Purdue Master Disbursement Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P., et al.,** | **Case No. 19-23649 (SHL)** |
| **Plan Administration Trust.**[1] | **Jointly Administered** |

**THE PURDUE MASTER DISBURSEMENT TRUST'S OBJECTION TO THE RSS PARTIES' MOTION TO ENFORCE CONFIRMATION ORDER AND SETTLEMENT STIPULATION**

The Purdue Master Disbursement Trust (the "MDT"), which was created in connection with the Debtors' Eighteenth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [D.I. 8233] (the "Plan") and the related Findings of Fact, Conclusions of Law, and Order Confirming the Eighteenth Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors [D.I. 8263] (the "Confirmation Order"), by and through its trustees, hereby files this objection (the "Objection") to the *Motion to*

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, were as follows: Purdue Pharma L.P. (7484); Purdue Pharma, Inc. (7486); Purdue Transdermal Technologies L.P. (1868); Purdue Pharma Manufacturing L.P. (3821); Purdue Pharmaceuticals L.P. (0034); Imbrium Therapeutics L.P. (8810); Adlon Therapeutics L.P. (6745); Greenfield Bio Ventures L.P. (6150); Seven Seas Hill Corp. (4591); Ophir Green Corp. (4594); Purdue Pharma of Puerto Rico (3925); Purdue Products L.P. (4140); Purdue Pharmaceutical Products L.P. (3902); Purdue Neuroscience Company (4712); Nayatt Cove Lifescience Inc. (7805); Button Land L.P. (7502); Rhodes Associates L.P. (N/A); Paul Land Inc. (7425); Quidnick Land L.P. (7584); Rhodes Pharmaceuticals L.P. (6166); Rhodes Technologies (7143); UDF LP (0495); SVC Pharma LP (5717); and SVC Pharma Inc. (4014). The Debtors' corporate headquarters was located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

*Enforce Confirmation Order and Settlement Stipulation* [D.I. 9622] (the "October Motion"), filed by Richard S. Sackler and Lin Gao (the "RSS Parties") on October 1, 2026.[2]

**PRELIMINARY STATEMENT**

1. The October Motion follows four other actions filed by the RSS Parties in various jurisdictions (the "Interference Actions"), a Limited Motion for Reargument, [D.I. 9611] (the "Rehearing Motion") and a pending appeal [D.I. 9612]. This latest motion has the same apparent objectives as the prior ones: to frustrate a sale of 60 Field Point Circle (the "Greenwich Property"), and, more broadly, to destabilize the Plan. Like the others, it should be denied.

2. *First*, this Court has already ruled that the RSS Parties' efforts violate the MSA, the Stipulation, and the Confirmation Order. The RSS Parties' assertion that the Court did not have the relevant issues before it when considering the prior motions is incorrect, and the RSS Parties offer no sufficient basis to disturb this Court's prior decisions. *Second*, and regardless, the RSS Parties' purported interpretation of Paragraph 3 of the Stipulation both misreads the plain language of the document and ignores the relevant context of that Paragraph as provided by the remainder of the Stipulation, Confirmation Order, and the MSA. The RSS Parties cannot rewrite the Stipulation, the Confirmation Order, or this Court's decisions enforcing the same.

3. The MDT is charged under the Plan with enforcing the MSA and the MDT Shareholder Rights to, among other things, ensure distributions are made and made timely for the ultimate benefit of the MDT's opioid creditor trust beneficiaries. As the Court already noted in the Bench Ruling, the MDT's ultimate beneficiaries negotiated for the terms set forth in the Stipulation to guarantee they accomplish that mandate; the Stipulation and undertakings memorialized in the

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in this Court's October 8, 2026 Modified Bench Ruling [D.I. 9639] (the "Bench Ruling"), the Confirmation Order and/or the Objection, as applicable.

Confirmation Order were negotiated specifically to prohibit any conduct that would destabilize the Confirmed Plan and the MSA, including the ability of the Side B Payment Group 1 members to comply with their payment obligations. Bench Ruling at 10-11. For that reason, the MSA "'authorize[d] discretionary liquidation of any asset of the Side B Trustees' choosing' (such as the Greenwich Property)." *Id*. at 17. Protecting that discretion (and denying this latest attempt to undercut it) ensures that the MDT is able to enjoy the benefits of the bargained-for rights set forth in the Stipulation.

4. For these and other reasons described below, the October Motion should be denied.

**ARGUMENT**

5. This Court has already ruled—correctly—on the issues that the RSS Parties now raise for at least the third time. The October Motion does not, and cannot, offer any valid basis to revisit what this Court has already decided. It should therefore be denied. *See, e.g.*, *In re Sears Holdings Corp.*, No. 18-23538 (SHL), 2022 WL 16703174, at *2–3 (Bankr. S.D.N.Y. Nov. 3, 2022) (Lane, J.) (denying motion that "seeks the same relief previously addressed" and "constru[ing] [it] as . . . [a] request for reconsideration;" because it does not "[raise] new matters nor overlooked controlling decisions . . ., [nor] . . . assert a mistake . . . new evidence . . . or legally supportable basis for reconsideration . . .") (citation modified).

6. In particular, by the present motion, the RSS Parties ask the Court for an order that would prevent the Side B Trustees, during the time of the Litigation Standstill, from (among other things) selling the Greenwich Property. October Motion at 12-13. To get there, they erroneously argue that "the Court did not have squarely before it—and therefore did not need to explicitly decide—whether the April 2026 transfer of 60 Field Point Circle to ARIT LLC violated the Litigation Standstill." October Motion at 6. Not so.

7. The Bench Ruling on the Interference Actions expressly premised its holding on the Side B Trustees' right to liquidate the Greenwich Property. It held that the Interference Actions "clearly" violate the terms of the Confirmation Order, the MSA, and the Stipulation, "by interfering with the pledges that guarantee the payment obligation of the Side B Payment Group 1." Bench Ruling at 13. It further held that the attempt by the RSS Parties "to assert control over the Greenwich Property . . . directly interferes with the ability of the Side B Trustees to 'enter into or satisfy its obligations under the [Plan and Stipulation].'" Bench Ruling at 13-14. The Interference Actions that sought to cloud title to, encumber, or otherwise restrict the Greenwich Property were similarly held to be "explicitly prohibited by the Stipulation" because they "*make it more difficult, if not impossible, for the Side B Trustees to liquidate that asset*." *Id.* at 14 (emphasis added). Most directly, the Court held that "it is impossible to square the RSS Parties' position with the very specific language of the Stipulation that prohibits the RSS Parties' . . . to challenge the Side B Trustees' Authority to *act and liquidate* the Annex E assets. . ." and that the MSA permits "precisely" the "discretionary liquidation of any asset of the Side B Trustees' choosing." *Id.* at 17 (emphasis added). The Court thus has already squarely considered the core issue raised by the October Motion—whether the Side B Trustees may take actions to liquidate the Greenwich Property.

8. The RSS Parties also urge a tortured reading of the relevant contractual language, asserting that a transfer of the Greenwich Property would amount to a prohibited "action" under Paragraph 3 of the Stipulation. October Motion at 15. This too has already been decided and should be rejected (again). In prohibiting certain "actions . . . with respect to the Wyoming Litigation or any of the facts alleged or causes of action asserted [therein]," Paragraph 3 of the Stipulation barred various forms of *litigation*. This is evident from the title of Paragraph 3: "Stay of Litigation

Proceedings between Litigation Parties." It is also common sense, and the only way to square the terms of the Stipulation with the obligations under the MSA.

9. Beyond plain language, the context of the Stipulation confirms its meaning. Paragraph 3 of the Stipulation—just like the reservation of rights in the MSA—must be construed consistently with other language of the Stipulation and the further language and purpose of the MSA and the Confirmation Order. *See* Bench Ruling at 16 ("It is well settled that where general and specific provisions of a contract [or confirmed plan] are inconsistent, the specific provision controls.") (collecting cases). To the extent the RSS Parties' purported reading of Paragraph 3 of the Stipulation is remotely plausible, it "cannot . . . trump[] the very specific terms of the MSA that outline the detailed obligations—and prohibitions—of both the Side B Payment Group 1 and Richard Sackler." Bench Ruling at 17. The more specific Paragraph 5 of the Stipulation, and the applicable provisions of the MSA and Confirmation Order, require that the Side B Trustees be able to exercise their judgment to liquidate pledged assets as necessary to comply with their obligations under the Confirmation Order and the MSA. *See* Bench Ruling at 8. The RSS Parties' repeated efforts to frustrate the Side B Trustees' compliance with the Settlement—including this latest untenable interpretation of the Stipulation by the RSS Parties' latest counsel—must, again, be rejected.

10. To be clear: all efforts to interfere with or undermine the Side B Trustees' ability to perform under the Settlement Agreement are prohibited by the Stipulation and Confirmation Order, and the MDT will continue to object to all such efforts by the RSS Parties. As already recognized by this Court, and discussed at length in connection with the litigation of the *Trustees' Motion to Enforce the Confirmation Order* [D.I. 9189], the MDT's indirect beneficiaries specifically negotiated for the Stipulation and undertakings in the Confirmation Order to ensure that ***for the***

***lifetime of the settlement*** the RSS Parties cannot take actions to destabilize the Plan or threaten the ability of B-Side Payment Group 1 to comply with their obligations under the Plan. Stipulation ¶ 5. Further, the MDT's ultimate beneficiaries bargained for the Stipulation to avoid the type of costly distractions epitomized by the RSS Parties' repetitive filings. The costs they create, absent this Court's intervention, ultimately fall on creditors and creditor victims. These continued attempts to undermine the bargained-for terms of the Stipulation and Confirmation Order should be rejected.

11. For these reasons, and others, the October Motion should be denied.[3]

## RESERVATION OF RIGHTS

12. By this Objection (and seeking costs incurred related thereto), the MDT in no way waives any potential additional or alternative relief, including but not limited to those rights previously reserved in the MDT's *Statement In Support of Trustees' Objection to the RSS Parties' Rehearing Motion and Related Sealing Motion* [D.I. 9628], whether relating to the Interference Actions, the Rehearing Motion, the October Motion or otherwise.[4] *Id.* at 7-8.

## CONCLUSION

WHEREFORE, the MDT respectfully requests this Court (i) deny the relief requested in the October Motion; (ii) direct the RSS Parties to continue to comply with the Bench Ruling, (iii) reimburse the MDT for its reasonable fees and expenses related to this Objection, and (iv) grant such other and further relief as is just.

---

[3] For the further reasons stated in the B Side Trustees' *Objection To The RSS Parties' Motion To Enforce The Confirmation Order* [D.I. 9654], the October Motion should also be denied.

[4] For the avoidance of doubt, the MDT requests that all costs relating to the MDT's obligation to continually respond to the issues raised by the October Motion, the Interference Actions, and the Rehearing Motion, be reimbursed by the RSS Parties in furtherance of the Bench Ruling and related Order.

Dated: October 21, 2026

Respectfully submitted

/s/ *Rachael Ringer*

Kenneth H. Eckstein
Rachael Ringer
David E. Blabey Jr.
HERBERT SMITH FREEHILLS KRAMER (US) LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Email: Kenneth.Eckstein@hsfkramer.com
Rachael.Ringer@hsfkramer.com
David.Blabey@hsfkramer.com

*Attorneys for the Purdue Master Disbursement Trust*