Stephan E. Hornung
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000
stephan.hornung@morganlewis.com

*Co-Counsel for Richard Sackler, M.D. and Lin Gao*

Barry J. Pollack
HARRIS TRZASKOMA, LLP
1300 19th Street, NW, Suite 700
Washington, D.C. 20036
Tel.: (202) 230-9647
bpollack@harristrz.com

*Co-Counsel for Richard Sackler, M.D. and Lin Gao*

Anne Penachio
PENACHIO MALARA LLP
245 Main Street, Ste. 450
White Plains, NY 10601
Tel.: (914) 946-2889
apenachio@pmlawllp.com

*Co-Counsel for Richard Sackler, M.D.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., et al.[1] | Chapter 11<br><br>Case No. 19-23649 (SHL)<br><br>Jointly Administered |

**THE RSS PARTIES' REPLY IN FURTHER SUPPORT OF MOTION TO ENFORCE CONFIRMATION ORDER AND SETTLEMENT STIPULATION**

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, were as follows: Purdue Pharma L.P. (7484); Purdue Pharma, Inc. (7486); Purdue Transdermal Technologies L.P. (1868); Purdue Pharma Manufacturing L.P. (3821); Purdue Pharmaceuticals L.P. (0034); Imbrium Therapeutics L.P. (8810); Adlon Therapeutics L.P. (6745); Greenfield Bio Ventures L.P. (6150); Seven Seas Hill Corp. (4591); Ophir Green Corp. (4594); Purdue Pharma of Puerto Rico (3925); Purdue Products L.P. (4140); Purdue Pharmaceutical Products L.P. (3902); Purdue Neuroscience Company (4712); Nayatt Cove Lifescience Inc. (7805); Button Land L.P. (7502); Rhodes Associates L.P. (N/A); Paul Land Inc. (7425); Quidnick Land L.P. (7584); Rhodes Pharmaceuticals L.P. (6166); Rhodes Technologies (7143); UDF LP (0495); SVC Pharma LP (5717); and SVC Pharma Inc. (4014). The Debtors' corporate headquarters was located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Richard S. Sackler, M.D. and Lin Gao (the "RSS Parties") submit this Reply in Further Support of their Motion to Enforce Confirmation Order and Settlement Stipulation (the "Motion").[2]

**Preliminary Statement**

This Motion asks only that the Court hold the Trustees to the same bargain it has already enforced against the RSS Parties. In its Bench Ruling, the Court directed the RSS Parties to withdraw four "Interference Actions" because it found, in part, that those filings breached the Litigation Standstill in Paragraph 3 of the Settlement Stipulation. The RSS Parties promptly complied. But Paragraph 3 is not a one-way street. By its plain terms, it bars all Litigation Parties—the Trustees included—from "tak[ing] any actions, directly or indirectly, with respect to the Wyoming Litigation or any of the facts alleged or causes of action asserted in the Wyoming Litigation" for fourteen months after the Effective Date. The Trustees have broken that promise at least twice.

First, approximately three weeks before the Plan went effective, the Trustees caused 60 Field Point Circle to be transferred from holding companies owned by the Rockpoint Trusts to a holding company owned by the AR Trust, eliminating Ms. Gao's right to remain in the home should Dr. Sackler predecease her—one of the very rights at the heart of the Wyoming Litigation. Second, just days after the Bench Ruling, the Trustees demanded that the RSS Parties and their minor children vacate the home by October 31, 2026, even though no sale is pending. Each is plainly an "action" "with respect to . . . the facts alleged and causes of action asserted in the Wyoming Litigation," and each is therefore prohibited during the Litigation Standstill.

---

[2] Undefined capitalized terms have the meanings given to them in the Motion.

The Trustees and the MDT offer no genuine response to the plain text of Paragraph 3. They retreat instead to the consent-and-ratification language of Paragraph 5(a), contending that anything done "in furtherance" of the MSA is beyond challenge. But that reading would write Paragraph 3 out of the Settlement Stipulation. And in all events, the Trustees never explain how transferring the property among family trusts, to Ms. Gao's detriment, furthers the MSA. It does not.

Nor does the Bench Ruling bar this Motion. That decision addressed whether the RSS Parties' filings violated the Settlement Stipulation; it did not decide—and, as to the Trustees' post-ruling eviction demand, could not have decided—whether the Trustees' own conduct breached the Litigation Standstill. Res judicata and collateral estoppel accordingly do not apply: there has been no final judgment on the merits with respect to these claims, the issues were not actually litigated, and the RSS Parties' objection to the Trustees' enforcement motion could not have afforded the RSS Parties the relief they now seek.

Finally, the Trustees' demands for contempt, eviction, removal of jointly owned artwork, $10,000-per-day sanctions, and attorneys' fees should be rejected. Those requests were not made by motion, are not supported by admissible evidence, and otherwise fail on the merits. The RSS Parties ask only that the Settlement Stipulation be enforced evenhandedly and that the status quo be preserved for the few remaining months of the standstill, as was contemplated. The Court should grant the Motion and deny the Trustees' and the MDT's requests for contempt findings, sanctions, and attorneys' fees.

## I THE TRUSTEES' ACTIONS VIOLATED THE LITIGATION STANDSTILL

1. The Trustees violated the Litigation Standstill in at least two ways: (i) three weeks before the Plan went effective, the Trustees, in their capacities as trustees of the Crystal Trust,[3] caused 60 Field Point Circle to be transferred from Rockpoint Land LLC and Rockpoint Residence LLC (holding companies owned by the Rockpoint Trusts) to ARIT Investment Holdings LLC (a holding company purportedly owned by the AR Trust) and effectively altered or eliminated certain rights of the RSS Parties and their children under the Rockpoint Trusts and predecessor trusts; and (ii) the Trustees have demanded that the RSS Parties vacate 60 Field Point Circle by October 31, 2026. The Trustees' actions were plainly "with respect to the Wyoming Litigation" and the "causes of action and facts alleged" therein and therefore prohibited under Paragraph 3 of the Settlement Stipulation.

2. The Trustees do not seriously dispute the RSS Parties' interpretation of Paragraph 3 of the Settlement Stipulation. Instead, they pretend that it does not exist (or at least that it somehow does not apply to them), arguing that the ratification and consent provisions in Paragraph 5(a) trump the Litigation Standstill provision in Paragraph 3. (ECF No. 9654 ¶ 12.) According to the Trustees, their actions to alter the RSS Parties' rights under the trust agreements and to evict them from 60 Field Point Circle are immune to challenge because those actions were in "furtherance" of the MSA. (*Id.*) This interpretation of Paragraph 5 would make Paragraph 3's prohibition on "actions" "with respect to the facts alleged or causes of action asserted in the Wyoming Litigation" meaningless. In interpreting the Settlement Stipulation, the Court is

[3] Crystal Fiduciary Company LLC ("Crystal Fiduciary") serves as trustee of the AR Trust, the Rockpoint Land Trust, and the Rockpoint Residence Trust. Crystal Trust is the sole member of Crystal Fiduciary, a member-managed LLC, such that by virtue of being trustees of Crystal Trust, the Trustees also control Crystal Fiduciary and the trusts for which it serves as trustee: the AR Trust, the Rockpoint Residence Trust, and the Rockpoint Land Trust.

required to "give effect and meaning to every term of a contract and strive to harmonize all of its terms," *Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018), and avoid "[a]n interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless.'" *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quoting *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003)); *accord Mantle v. N. Star Energy & Constr. LLC*, 437 P.3d 758, 781 (Wyo. 2019) (collecting decisions). The RSS Parties' interpretation, on the other hand, is the only one that gives meaning to the full text of Paragraph 3 and harmonizes it with Paragraph 5. Thus, the Court can, as it should, enforce the Litigation Standstill without undermining the consent and ratification provisions in Paragraph 5.

3. Even if the Trustees' interpretation were correct that Paragraph 5(a) took precedence over Paragraph 3 of the Settlement Stipulation, they do not explain how the inter-trust transfer is in furtherance of the MSA. It was not. (*See* ECF No. 9654 ¶ 9 n.5 (quoting June 29, 2026, Hr'g Tr. at 14:18–15:19) (Trustees' counsel acknowledging to the Court that the Rockpoint Trusts are Trust Pledgors under Annex E).) The Trustees have not provided any justification for transferring control of the property between family trusts, which appears to have been specifically designed to alter—and in any event has the effect of altering—Ms. Gao's right to remain at the property even in the absence of a sale of the property, effectively circumventing the Settlement Stipulation and deciding a matter expressly subject to the Litigation Standstill.[4]

4. The MDT's attempts to contort the plain text and clear meaning of Paragraph 3 are likewise without merit. According to the MDT, Paragraph 3 only prohibits "litigation" and

[4] The Trustees' contention that the Settlement Stipulation is not a tolling agreement is plainly wrong. (ECF No. 9654 ¶ 4.) Paragraph 4 ("**Tolling**") expressly tolls the statute of limitations

does not apply, despite its clear terms, to other conduct related to the facts and causes of action alleged in the Wyoming Litigation. (ECF No. 9655 ¶ 8.) But the MDT's interpretation runs headlong into the plain text of the Settlement Stipulation.

5. The first sentence of Paragraph 3 provides that the Litigation Parties shall not "take any actions, directly or indirectly, with respect to the Wyoming Litigation or any of the facts alleged or causes of action asserted in the Wyoming Litigation"—thus it applies to any conduct or actions, not just to the commencement of litigation. (*See* ECF No. 7713 ¶ 3.) There is no basis for reading this broad language narrowly to cover only litigation. This point is driven home by the final sentence of the paragraph which separately prohibits all Litigation Parties from threatening or commencing any "litigation." (*Id.* ("Furthermore, no Litigation Party will threaten in writing or commence litigation against any other Litigation Party in any court during the Litigation Standstill, nor will any Litigation Party support any efforts by any person, directly or indirectly, to bring or threaten any causes of action against any other Litigation Party (the '**Other Potential Litigation'**)."). If, as the MDT contends, Paragraph 3 only applies to litigation, there would have been no reason to include the separate prohibition against taking "any actions directly or indirectly, with respect to . . . the facts alleged or causes of action asserted in the Wyoming Litigation." (*Id.*)[5] The Court should reject the MDT's request to distort the plain text of the Settlement Stipulation.

6. The MDT's reliance on Paragraph 3's heading fares no better. (ECF No. 9655 ¶ 8; *see* ECF No. 7713 ¶ 3 ("Stay of Litigation Proceedings between Litigation Parties").) The

---

for Challenged Matters and Other Potential Litigation for a period of twenty-four months. (ECF No. 7713 ¶ 4.)

[5] The use of the word "Furthermore" indicates that the quoted sentence is in addition to, and not in lieu of, the prohibition of "tak[ing] any actions" with respect to the facts alleged the Wyoming Litigation.

heading clearly cannot be read literally as there is no "stay" of litigation proceedings at all. Rather, all claims were "***dismiss[ed]***" without prejudice. (ECF No. 7713 ¶ 2 (emphasis supplied).) To the extent the heading or title is relevant, it cannot contradict or displace the text of Paragraph 3 which provides that the Litigation Standstill goes far beyond the commencement of litigation. *See Nat'l Fuel Gas Distribution Corp. v. TGX Corp.*, 950 F.2d 829, 835 (2d Cir. 1991) ("While a title or heading may help clarify or point the meaning of an imprecise or dubious provision, it may not alter or limit the effect of unambiguous language in the body of the statute itself."); *In re Sears Holdings Corp.*, 661 B.R. 298, 323 (S.D.N.Y. 2024) ("It is a well settled principle of contract law that the titles and headings in documents are rarely considered to be part of the parties' agreement unless the agreement expressly so provides."), *aff'd*, No. 24-1354-BK, 2024 WL 5113165 (2d Cir. Dec. 16, 2024).

7. Similarly, there is no merit to the MDT's contention that the RSS Parties' interpretation of Paragraph 3 of the Settlement Stipulation would elevate the general provisions of the Settlement Stipulation over other specific provisions. (ECF No. 9655 ¶ 9; *see* Bench Ruling at 16–17.) The RSS Parties are asking the Trustees to comply with one of the central provisions in the Settlement Stipulation, which prohibits the Trustees, as Litigation Parties, from taking very specific limited actions until 14 months after the Effective Date of the Plan. The RSS Parties' interpretation harmonizes the Litigation Standstill with the consent and ratification provisions, while the MDT's interpretation reads one provision out of the Settlement Stipulation altogether. It is the MDT that now attempts to elevate the more general ratification and consent provisions contained in Paragraph 5 above the very specific Litigation Standstill.[6]

---

[6] The Trustees' contention that Paragraph 3 of the Settlement Stipulation is not one the "primary component[s]" of the Settlement Stipulation (ECF No. 9654 ¶ 12) is at odds with theirs and the

8. Finally, the MDT does not explain how the RSS Parties' request that the Trustees comply with the Litigation Standstill for eight months undermines or destabilizes the Plan or the MSA or threatens the Trustees' ability to make the required settlement payments. (ECF No. 9655 ¶¶ 1, 10.) In fact, it does not, as the RSS Parties understand there are more than sufficient assets available in the trusts to satisfy the required settlement payments without selling 60 Field Point Circle. Regardless, taking actions that affect the rights of the RSS Parties even in the absence of a sale, plainly are not in furtherance of the MSA, and the RSS Parties' request for the Court to settle a disputed issue does not destabilize the Plan.

## II THE RSS PARTIES' MOTION IS NOT BARRED BY THE BENCH RULING

9. The Trustees have not carried their heavy burden of establishing that the RSS Parties' claims are barred by *res judicata* (claim preclusion) or collateral estoppel (issue preclusion). *See Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 170 (2d Cir. 1992) (providing that the burden of proof is on the party asserting the applicability of *res judicata*).

10. *Res judicata* applies where an earlier decision was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007). There has been no final judgment on the merits of the RSS Parties' claim that the Trustees violated Paragraph 3 of the Settlement Stipulation by transferring the property to ARIT LLC and subsequently seeking to evict the RSS Parties during the Litigation Standstill. As is relevant here, the Court previously determined that four specific

---

MDT's prior filings and should be rejected. (*See, e.g.*, ECF No. 9189 ¶¶ 2, 11; ECF No. 9389 ¶¶ 1, 5; ECF No. 9390 ¶¶ 3, 5, 14.)

actions taken by the RSS Parties violated the Confirmation Order because each action breached the Litigation Standstill or "clouded title" to 60 Field Point Circle and directed the RSS Parties to withdraw those court and land record filings. (ECF No. 9639 at 14–15; ECF No. 9590 ¶ 3.) The Trustees' enforcement motion and resulting Bench Ruling were directed at the filings themselves. The Bench Ruling did not decide the merits of the RSS Parties' contentions regarding the specific conduct at issue on this Motion, which were not before the Court (in the case of the transfer of 60 Field Point Circle to ARIT LLC) or post-dated the Bench Ruling (in the case of the Trustees' attempts to evict the RSS Parties).

11. To be sure, *res judicata* can also bar claims arising out of the same transaction or occurrence if those claims "could have been raised in [the prior] action." *St. Pierre v. Dyer,* 208 F.3d 394, 399 (2d Cir. 2000).[7] However, "[t]he most basic principles of res judicata require that full relief must have been available in the first action in order for the second action to be barred." *Eastman Kodak Co. v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.)*, 456 F.3d 1277, 1287 (11th Cir. 2006). In the absence of a court order to the contrary, there are no compulsory counterclaims in a contested matter. *See* Fed. R. Bankr. P. 9014(c)(1) (providing that Federal Rule of Bankruptcy Procedure 7013 is not applicable to a contested matter in the absence of a court order). And the RSS Parties could not have obtained the relief they now seek through an objection to the Trustees' enforcement motion. Injunctive or declaratory relief requires a separate contested matter or adversary proceeding. Fed. R. Bankr. P. 9014; Fed. R. Bankr. P.

[7] Nor do the RSS Parties claims arise out of the same transaction or occurrence. The "transactions" at issue in the Trustees' prior enforcement motion were the specific court and land record filings—the so-called "Interference Actions." "[T]he circumstance that several operative facts may be common to successive actions between the same parties" by itself is insufficient to qualify them as the same cause of action. *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983).

7001. Accordingly, because the RSS Parties' objection to the Trustees' motion did not provide an adequate vehicle to assert fully the claims they now raise, *res judicata* cannot be a bar to the RSS Parties' Motion. *See Eastman Kodak Co.*, 456 F.3d at 1287 (finding that *res judicata* did not bar claims where the party could not have been afforded complete relief in the prior contested matters).

12. To the extent the Trustees rely on collateral estoppel, their arguments fare no better. The specific issues raised in the RSS Parties' Motion—the propriety of the inter-trust transfer and later attempt to evict the RSS Parties—were not before the Court. The Court did not—and with respect to actions taken after the Bench Ruling, could not—decide whether the Trustees' actions violated the Litigation Standstill. The Trustees' conclusory claims to the contrary are without merit. (*See* ECF No. 9654 ¶¶ 9, 10.)[8]

13. To be sure, the Court found that the Trustees have the authority to sell the pledged assets, including 60 Field Point Circle. (Bench Ruling at 17.) But the RSS Parties are not through this Motion challenging the Trustees' general authority to liquidate 60 Field Point Circle

---

[8] The Trustees quibble with the RSS Parties' characterization of their counsel's remarks at oral argument regarding the inclusion of the Rockpoint Trusts as pledgors. (ECF No. ¶ 9 n.5.) But the oral argument transcript is crystal clear. In response to questioning by the Court, the Trustees acknowledged uncertainty regarding the transfer of the property from holding companies owned by the Rockpoint Trusts to ARIT LLC which is owned by the AR Trust and acknowledged that the Rockpoint Trusts were included as pledgors as "belt and suspenders":

MS. WINTERS: Absolutely. So I mentioned Rockpoint Land Trust and Rockpoint Residence Trust. Those were the trusts that previously held the title to 60 Field Point Circle.

The COURT: And I assume that that was in there for belt and suspenders, just to make it very clear that if there was any issues with -- anybody raising issues with that transfer, then you're covered.

MS. WINTERS: That's exactly right. . . .

(June 29, 2026, Tr. at 15:3–21.)

and the other trust assets, and the Trustees' general authority is not, in any event, dispositive of the RSS Parties' Motion, which challenges the inter-trust transfer of 60 Field Point Circle and acts to evict the RSS Parties in the absence of an actual sale during the Litigation Standstill.

14. The cases cited by the Trustees—which do not address the preclusive effect of an order deciding a prior contested matter—do not require a different result. In *In re AMR Corp.*, No. 11-15463 (SHL), 2014 WL 5073574, at *4–5 (Bankr. S.D.N.Y. Oct. 9, 2014), at issue was a specific claim that had previously been adjudicated and an express prior finding that the precise claims were barred by *res judicata*. Again, the specific claims and issues the RSS Parties assert were not previously adjudicated.

15. In *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22 (2d Cir. 2017), the Second Circuit found that Connecticut law barred a litigant from asserting breach of fiduciary claims that had necessarily been adjudicated in a prior Cayman Islands winding up petition. The Court explained that the Cayman Court had to resolve the specific breach of fiduciary allegations before it could proceed to the merits of the winding up petition. *Id.* at 32. That is not the case here. The Court did not need to—and did not in fact—decide the RSS Parties' contentions regarding the Trustees' actions expressly or implicitly.

16. Finally, in *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir. 2002), the Court determined that a plaintiff could not file a second lawsuit challenging the propriety of her employment being terminated on a new legal theory that could have—but was not—asserted in the original lawsuit.[9] The relief that the RSS Parties seek now was not available to them in connection with their objection to the Trustees' earlier enforcement motion.

[9] The Trustees and the MDT's contentions that this is a disguised reargument motion is without merit. (ECF No. 9654 ¶¶ 8, 11; ECF No. 9655 ¶ 5.) The RSS Parties filed a separate limited

## III THERE IS NO LEGAL OR FACTUAL BASIS TO HOLD THE RSS PARTIES IN CONTEMPT, SANCTION THEM, OR AWARD ATTORNEYS' FEES TO THE TRUSTEES OR THE MDT

17. The Trustees end their objection by asking for far more than a denial of the RSS Parties' Motion. Based primarily on their say-so, they ask the Court to: (i) hold the RSS Parties in contempt; (ii) order them and their minor children out of their home by October 31, 2026—just three days after the hearing; (iii) order the artwork be removed from the house; (iv) impose sanctions against the RSS Parties of $10,000 per day, until they leave 60 Field Point Circle and the artwork is placed in storage; and (v) award attorneys' fees. (ECF No. 9654 at 8–10.) The MDT also seeks fees and expenses. (ECF No. 9655 at 6.) Each of these requests should be denied.

18. A request for contempt must be made by motion. Fed. R. Bankr. P. 9020 (Rule 9014 governs "a motion for a contempt order"); Fed. R. Bankr. P. 9014(a) ("relief must be requested by motion"). The Trustees have not filed a motion or put forth any evidence to support their specious claims, and their requests can and should be denied on this ground alone.

19. Even if the Trustees' requests were properly before the Court, they would still fail. "[A] contempt order is warranted only where the party has notice of the order, the order is clear and unambiguous, and the proof of noncompliance is clear and convincing." *PHH Mortgage Corp. v. Sensenich* (*In re Gravel*), 6 F.4th 503, 512 (2d Cir. 2021). The Trustees do not identify the provisions of the Confirmation Order or Settlement Stipulation that the RSS Parties supposedly violated, explain how the RSS Parties purportedly violated them, or provide any evidence to support their request. The RSS Parties promptly complied with the Court's order to "withdraw or dismiss each of the Interference Actions immediately." (*See* ECF No.

---

motion for reargument. The RSS Parties could not have obtained the relief they now seek when they objected to the Trustees' original motion or in their limited motion for reargument.

9590.) But there is no order that directs the RSS Parties to leave their home, sets a date by which they must do so, or in any way addresses the artwork, which is jointly owned by Dr. Sackler and one of the trusts. The vacate deadline the Trustees seek to enforce is not a court order at all. It is a date the Trustees chose themselves, in an email they sent days after the Bench Ruling, and the demand, in any event, violates the Litigation Standstill. (Motion ¶ 16; ECF No. 9654 ¶ 15.)

20. Importantly, the Trustees' claims of supposed obstruction are premised on blatant hearsay from an unidentified third-party, supposition, innuendo, and "facts" that are found nowhere in the record. They assert that the RSS Parties' "behavior during [] showings and the condition of the home suggest" an effort to impede a sale, "as the broker has confirmed in writing." (ECF No. 9654 ¶ 17.) But the Trustees do not identify what the RSS Parties supposedly did, explain how the RSS Parties' behavior impeded a sale, identify the broker, attach a copy of the supposed "writing," or otherwise put forth any admissible evidence to support their claims. Nor do they explain how the RSS Parties' presence in the house has made it "difficult" to sell the property, provide any evidence to support their conclusory allegations that the RSS Parties have engaged in any other unidentified "obstructive conduct," or cite to anything supporting their claims that the RSS Parties are not entitled to live in the house they have, in fact, been living in for years. (*Id.* ¶ 18.) And the "facts" the Trustees do include confirm that the RSS Parties have complied with multiple requests to show the residence. (*Id.*)

21. There is no basis for the Court to take any action with respect to the artwork. The RSS Parties did not raise the artwork in the Motion, and it was not at issue or even discussed in the Bench Ruling. Moreover, there is nothing "urgent" about any supposed situation with the artwork. (ECF No. 9654 ¶ 16.) The Trustee first raised the "poor condition" of the property nearly two months ago (*see* ECF No. 9591), and regardless they have known about the condition

of the property from the insurer's property condition report since the Spring.[10] When the RSS Parties attempted to raise these specific issues, the Court explained that "any request for relief must be made by motion on appropriate notice, with a hearing dated selected after consultation with chambers." (*Id.*)

22. In any event, the Trustees' contention that Dr. Sackler has somehow acted improperly with respect to the artwork is without merit. When the Trustees first demanded that the RSS Parties allow an art storage company to take the artwork, the Trustees' counsel made clear their position that any purchaser of the Captain's Trusts 50% interest in the artwork would be entitled to possess it. (*See id.* at 1–2, n.1.) But Dr. Sackler has a 50% interest in the works, and the "naked pledge" entitles him to unfettered control over his assets. His rights in the artwork should be no less than any other joint owner's rights, whether that be the Captain's Trust or a subsequent purchaser.

23. There is likewise no basis to award attorneys' fees to the Trustees or to the MDT. While the Confirmation Order provides the Court with the authority to award fees if a violation of the Confirmation Order is proven, neither the Trustees nor the MDT has submitted any evidence to support their conclusory assertions that the RSS Parties have not complied with the Confirmation Order or that they have interfered with the MSA or somehow destabilized the Plan. The RSS Parties have done exactly what they are supposed to do: seek a ruling from the Court.[11]

24. Finally, as explained in their Motion, the RSS Parties seek a ruling regarding a disposition of the property during the Litigation Standstill to ensure the issue is properly

---

[10] The RSS Parties have paid the outstanding property insurance bill for the property and have been informed that the new policy will be issued in the name of the current owner of the property.

[11] Without contract or statute providing for them, fees and expenses are not available to a prevailing party.

preserved for appeal. (The RSS Parties do not, as the Trustees seem to suggest, seek to bar the sale of the property in perpetuity (*see* ECF No. 9654 ¶ 18).) The RSS Parties fully understand the Court's views on the Interference Actions but respectfully believe that a disposition of the residence, like the inter-trust transfer and efforts to evict the RSS Parties, is prohibited during the Litigation Standstill because it is an action with respect to the causes of action and facts alleged in the Wyoming Litigation. While the Court may, for reasons articulated in its prior ruling, deny this relief, seeking a direct ruling on this issue so that it is ripe for appeal is hardly sanctionable conduct. The Motion primarily seeks other relief that, as set forth above, relate to issues the Court has not previously had the opportunity to address at all. The Court found that the RSS Parties should not have sought relief in other courts and clouded title to the property and sanctioned the RSS Parties for doing so. But there is no basis to sanction the RSS Parties for bringing a dispute to the Court for resolution in accordance with the Confirmation Order.

**Conclusion**

**WHEREFORE**, the RSS Parties request that the Court: (a) enter an order, substantially in the form attached to the Motion as **Exhibit A**,(i) finding that the Trustees have violated the Settlement Stipulation; (ii) enforcing the litigation standstill provision of the Settlement Stipulation; (iii) directing the Trustees to refrain from taking any action, directly or indirectly, with respect to the Wyoming Litigation or any of the facts alleged or causes of action asserted in the Wyoming Litigation during the Litigation Standstill; (iv) directing the Trustees to not take any action during the Litigation Standstill to interfere with the ability of the RSS Parties and their children to reside at 60 Field Point Circle or, should Dr. Sackler's wife, Lin Gao, survive him, the ability of her or her minor children to reside at 60 Field Point Circle unless and until 60 Field Point Circle has been sold to fund the settlement pursuant to the MSA; (b) reject the Trustees'

and the MDT's requests for contempt findings, sanctions, and attorneys' fees; and (c) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 26, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Stephan E. Hornung
Stephan E. Hornung
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6000
stephan.hornung@morganlewis.com

- and -

Barry J. Pollack
HARRIS TRZASKOMA, LLP
1300 19th Street, NW, Suite 700
Washington, D.C. 20036
Tel.: (202) 230-9647
bpollack@harristrz.com

*Co-Counsel for Richard Sackler, M.D. and Lin Gao*

Anne Penachio
PENACHIO MALARA LLP
245 Main Street, Ste. 450
White Plains, NY 10601
Tel.: (914) 946-2889
apenachio@pmlawllp.com

*Co-Counsel for Dr. Richard Sackler, M.D.*