MCDERMOTT WILL & SCHULTE LLP
Julia M. Winters
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400

KATTEN MUCHIN ROSENMAN LLP
Joshua S. Rubenstein
Bonnie Lynn Chmil
50 Rockefeller Plaza
New York, NY 10020
Telephone (212) 940-8800

*Co-Counsel for Frank S. Vellucci, Daniel S. Connolly and Rory Held,*
*as Successor Co-Trustees of the Crystal Trust and the Data Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PURDUE PHARMA L.P., et al., Plan Administration Trust.**[1] | **Case No. 19-23649 (SHL) Jointly Administered** |

**THE TRUSTEES' MOTION FOR ENTRY OF AN ORDER (I) HOLDING RICHARD S. SACKLER AND LIN GAO IN CIVIL CONTEMPT OF THE CONFIRMATION ORDER, (II) DIRECTING THEM TO VACATE THE GREENWICH PROPERTY, AND (III) GRANTING RELATED RELIEF**

Frank S. Vellucci, Daniel S. Connolly and Rory Held, in their capacities as trustees of certain trusts in the B-Side Payment Group 1 (collectively, the "Trustees"), file this motion (the "Motion")[2] pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, were as follows: Purdue Pharma L.P. (7484); Purdue Pharma, Inc. (7486); Purdue Transdermal Technologies L.P. (1868); Purdue Pharma Manufacturing L.P. (3821); Purdue Pharmaceuticals L.P. (0034; Imbrium Therapeutics L.P. (8810); Adlon Therapeutics L.P. (6745); Greenfield Bio Ventures L.P. (6150); Seven Seas Hill Corp. (4591); Ophir Green Corp. (4594); Purdue Pharma of Puerto Reco (3925); Purdue Products L.P. (4140); Purdue Pharmaceutical Products L.P. (3902); Purdue Neuroscience Company (4712); Nayatt Cove Lifescience Inc. (7805); Button Land L.P. (7502); Rhodes Associates L.P. (N/A); Paul Land Inc. (7425); Quidnick Land L.P. (7584); Rhodes Pharmaceuticals L.P. (6166); Rhodes Technologies (7143); UDF LP (0495); SVC Pharma LP (5717); and SVC Pharma Inc. (4014). The Debtors' corporate headquarters was located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2] The Trustees will file a notice of motion setting forth the response deadline for the Motion as soon as they obtain a return date.

Rules"), paragraphs 33(i) and 33(j) of the Confirmation Order [D.I. 8263], paragraphs 6 and 9 of the Stipulation, and the Court's inherent contempt power, for entry of an order holding Richard S. Sackler and Lin Gao (the "RSS Parties") in civil contempt and directing them to vacate the Greenwich Property.[3] In support of the Motion, the Trustees rely on the *Declaration of Frank S. Vellucci*, filed contemporaneously herewith, and the relevant exhibits thereto (the "Vellucci Declaration"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1. On October 28, 2026, the Court denied the RSS Parties' *Motion to Enforce Confirmation Order and Settlement Stipulation* [D.I. 9622] (the "RSS Motion"), the third set of motions on these same issues during what was supposed to be a fourteen-month Litigation Standstill. Oct. 28 Hr'g Tr. 72:3-12, 74:16-75:2. The Court noted that the RSS Motion "challenges everything else that the RSS parties don't like about the October 8th decision" and that, whatever it is called, "it's part and parcel as to who can do what as to this house" and concluded that the RSS Parties' refusal to vacate the Greenwich Property interferes with the Trustees' efforts to liquidate it and maximize the value of the pledged asset. Oct 28 Hr'g Tr. 51:4-5. The Court further confirmed that, absent a ruling to the contrary, the October 8 ruling "is the law of the case." *Id.* at 77:14-16.

2. The Trustees' rights and the RSS Parties' obligations with respect to the Greenwich Property are therefore not open to debate. The Greenwich Property is an asset of the Side B Payment Group 1 Trust Pledgors pledged as security under Annex E, a fact the RSS Parties

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Court's *Modified Bench Ruling Granting the Side B Trustees' Motion to Enforce the Confirmation Order* [D.I. 9639] (the "Bench Ruling") or in the *Trustees' Objection to the RSS Parties' Motion to Enforce Confirmation Order and Settlement Stipulation* [D.I. 9654] (the "Objection"). References to "Oct. 28 Hr'g Tr." are to the transcript of the October 28, 2026, hearing on the RSS Motion.

concede. Bench Ruling at 13-14; Oct. 28 Hr'g Tr. 15:19-23. Thus, the Trustees have unfettered discretion to liquidate it. Bench Ruling at 17-18. The RSS Parties promised, in the Stipulation, the Confirmation Order, and again on the record at confirmation, not to "interfere with, delay, postpone, frustrate, or impair" the Trustees' ability to satisfy their obligations. *Id.* at 7-9; Stip. ¶ 5(a); Confirmation Order ¶ 33(a). As the Court observed, "it's hard to imagine that you can liquidate an asset if somebody else is living in the house." Oct. 28 Hr'g Tr. 25:9-11.

3. At the October 28 hearing, the Court stated that it would "consider any applications to the extent that the RSS parties are interfering with the trustee's actions" to liquidate Annex E assets, that "if there's a need to get the place sold … then there needs to be cooperation in all respects of that," and that it would "entertain any other motions that might be necessary as to specific relief." *Id.* at 53:23-54:13, 76:12-13.

4. The Trustees hereby inform the Court that the RSS Parties continue to interfere with the Trustees' ability to sell the Greenwich Property. Prior to bringing this Motion, the Trustees attempted on multiple occasions to reach a consensual resolution of these issues with the RSS Parties and to avoid seeking the drastic relief of a contempt finding. Vellucci Declaration ¶¶ 4, 6, 11. The Trustees told the RSS Parties on August 25, 2026 that the Greenwich Property must be vacant of all occupants by October 31, 2026, giving them more than two months to relocate. Objection ¶ 15; Oct. 28 Hr'g Tr. 57:14-20; Vellucci Declaration ¶ 6 & Ex. 2. Even after the Court denied the RSS Motion, the Trustees gave the RSS Parties another chance to resolve this consensually: on October 29, 2026, they offered additional time to vacate the Greenwich Property and consent to the removal of the artwork. Vellucci Declaration ¶ 11 & Ex. 4. As of the time of filing, the RSS Parties have not accepted these terms, and upon information and belief, remain in the Greenwich Property, together with the artwork the Trustees have sought to move to secure

storage. *Id.* ¶ 10. The Court should hold the RSS Parties in contempt for their continued interference, order the RSS Parties to vacate the Greenwich Property by the Vacate Deadline (as defined herein), and extend the Litigation Standstill to 14 months following such date as the RSS Parties have vacated and removed their personal belongings.

## JURISDICTION AND VENUE

5. The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, paragraph 33(j) of the Confirmation Order, which provides the Court with "exclusive jurisdiction of all matters arising under, arising out of, or related to the obligations set forth herein," and paragraph 9 of the Stipulation. Bench Ruling at 11-12. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

6. The statutory and rule-based predicates for the relief requested are Bankruptcy Code section 105(a), Bankruptcy Rules 9014 and 9020, paragraphs 33(i) and 33(j) of the Confirmation Order.

## BACKGROUND

### A. The Greenwich Property is Not Dr. Sackler's and Lin Gao's House

7. The Court is already familiar with much of the background related to this Motion; the Trustees thus respectfully refer to and incorporate such facts from the Bench Ruling.

8. The Greenwich Property is owned by a trust within Side B Payment Group 1 and is pledged as security for that group's payment obligations under the MSA. Bench Ruling at 6-7, 13-15. There are "more than a dozen beneficiaries of the trust that owns the Greenwich Property." *Id.* at 18; Vellucci Declaration ¶ 2. At the October 28 hearing, counsel for the RSS Parties admitted there was "no dispute" that the Greenwich Property is an Annex E pledged asset. Oct. 28 Hr'g Tr.

15:19-23. As the Court noted, "the persisten[t] fiction that seems to pervade [the RSS Parties'] papers [is] that this is Dr. Sackler's house and Lin Gao's house. It's not." *Id.* at 17:19-23.

**B. The Trustees' Demand to Vacate and Safeguard the Artwork**

9. On April 7, 2026, the Trustees notified all adult beneficiaries that they intended to market and sell the Greenwich Property. Vellucci Declaration ¶ 4 & Ex. 1; RSS Motion Ex. F. The Trustees also offered for any beneficiary to buy the Greenwich Property. Soon after the Plan Effective Date, the Trustees were forced to pause their sale efforts because of the Interference Actions. Vellucci Declaration ¶ 5.

10. On August 21, 2026, the Court issued its initial bench ruling, finding, among other things, the Trustees had an unfettered right to sell the Greenwich Property, the Interference Action's interfered with this right, and thus they violated the Stipulation and Confirmation Order. On August 25, 2026, four days after the initial bench ruling, the Trustees wrote again to all adult beneficiaries, including the RSS Parties, that they were re-initiating the sales process and directing that the structures on the property be vacated by October 31, 2026. Vellucci Declaration ¶ 6 & Ex. 2. The Trustees also required that certain paintings co-owned 50% by the 1A Trust (the "<u>Captain's Trust</u>") be moved to secure storage, citing the condition of the residence, the beginning of the marketing process, and their obligations under the Confirmation Order and MSA. *Id.* Also on August 25, 2026, the Trustees again offered all beneficiaries, including Dr. Sackler, the opportunity to purchase the Greenwich Property at fair market value. The RSS Parties expressed no interest in doing so. Vellucci Declaration ¶¶ 4, 6 & Exs. 1, 2; Objection ¶ 15; Oct. 28 Hr'g Tr. 57:6-10.

**C. The Condition of the Greenwich Property**

11. Based on their own experience and the advice of their broker, the preeminent high-end real estate broker in Greenwich, Connecticut, the Trustees understand that it is always preferable to market for sale a vacant and staged home (*i.e.*, a home emptied of the personal effects of its current or former occupants). For this reason, the Trustees' broker initially advised the Trustees in August that the RSS Parties should be asked to vacate within 30 days' notice. Vellucci Decl. ¶¶ 5, 7.

12. While it is certainly possible to sell an occupied home, the Trustees have concluded that in this case (involving one of the top three residential sales in Connecticut ever), the condition of the Greenwich Property (as occupied by the RSS Parties) and the RSS Parties' conduct during showings—as described in the Vellucci Declaration—make a sale of this pledged asset at full market value "very difficult, if not impossible." Bench Ruling at 15.

**D. The RSS Parties Demonstrate They Will Not Vacate Voluntarily**

13. In the seven months between when the Trustees told the RSS Parties they would be selling the Greenwich Property and the October 28 hearing, the RSS Parties took no steps to find suitable alternative housing; did not pack or remove any personal belongings, refused to safeguard the valuable artwork; litigated steadfastly and repeatedly to block the sale of the Greenwich Property; and contend it is 'not possible' for the RSS Parties to leave for a host of reasons that could have been addressed in the intervening months.[4] Vellucci Declaration ¶¶ 10, 13. As of the filing of this Motion, the RSS Parties have not vacated, have not agreed to vacate on any reasonable timeline, and otherwise do not appear intent on ever leaving the Greenwich Property. Vellucci Decl. ¶ 12 & Ex. 5.

[4] Notably, the RSS Parties did not raise any of the supposed reasons it is 'not possible' for them to vacate in their pleadings or at the October 28 hearing.

## ARGUMENT

14. By this Motion, the Trustees request entry of an order: (i) holding the RSS Parties in civil contempt; (ii) directing the RSS Parties, their household members, and their guests to vacate the Greenwich Property and directing the RSS Parties to permit the Trustees and their designees to remove and place in safe storage the pledged artwork, within 14 days of entry of the Proposed Order (the "Vacate Deadline"); (iii) extending the Litigation Standstill for 14 months after the RSS Parties have vacated the Greenwich Property and removed their possessions; (iv) directing the RSS Parties to reimburse the Trustees' reasonable attorneys' fees and expenses incurred in connection with this Motion; and (vii) granting related relief.

### I. The Court Has Authority to Enforce the Confirmation Order Through Contempt and Coercive Relief

15. This Court has the power to enforce its orders by holding violators in civil contempt. *See In re Congregation Birchos Yosef*, 535 B.R. 629, 635 (S.D.N.Y. 2015). Federal courts, including bankruptcy courts, also have inherent authority to "sanction parties appearing before it for acting in bad faith, vexatiously, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). Section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9020 provides that Rule 9014 governs a motion for an order of contempt made by a party in interest. Fed. R. Bankr. P. 9020.

16. Here, the Court's authority is also express. In paragraph 33(j) of the Confirmation Order, to which the RSS Parties agreed on the record, the Court retained exclusive jurisdiction "to resolve any dispute or failure of performance by Richard Sackler or any other party, and to impose sanctions, including, without limitation, findings of contempt, monetary sanctions, or such other

relief as the Bankruptcy Court determines appropriate." Bench Ruling at 9. Paragraph 33(i) provides mechanisms for the Court to compel compliance. *Id.* Also, the Stipulation expressly contemplates specific performance. *Id.* at 5 (citing Stip. ¶ 6).

**II. The RSS Parties Should Be Held in Civil Contempt**

17. A party may be held in civil contempt where "(1) the order that was violated was clear and unambiguous, (2) there is clear and convincing proof of the party's noncompliance with the Court's order, and (3) the party has not diligently attempted to reasonably comply with the order." *See New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989); *In re Frankel*, 192 B.R. 623, 627-28 (Bankr. S.D.N.Y. 1996); *Weston Capital Advisors v. PT Bank Mutiara, Tbk*, 738 F. App'x 19, 21-22 (2d Cir. 2018). Civil contempt is appropriate unless there is a "fair ground of doubt as to the wrongfulness of the defendant's conduct," and that standard "is generally an objective one:" "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019). Noncompliance need not be willful. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004). An order "must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers*, 330 U.S. 258, 302-03 (1947).

18. The orders here are clear and unambiguous. The Court has already held that "the clear and precise terms of the Confirmation Order, the MSA, and the Stipulation are unambiguous." Bench Ruling at 19. Those terms prohibit the RSS Parties from taking "(or fail[ing] to take) any action that interferes with, delays, frustrates, or impairs" the Trustees' ability to satisfy their obligations. Conf. Order ¶ 33(a). The Court has held that the Trustees may liquidate the Greenwich Property in their discretion and that actions making it "more difficult, if not

impossible" to liquidate and maximize the value of pledged collateral violate those terms. Bench Ruling at 15, 17-18. At the October 28 hearing, the Court reiterated that its prior rulings are "already operative," that there are "no due process considerations of somebody hearing something for the first time," and that "[i]t's very clear what their obligations are." Oct. 28 Hr'g Tr. 53:11-19.

19. The RSS Parties' noncompliance and continued interference is clear and convincing. The RSS Parties received written notice on August 25, 2026, that they must vacate by October 31, 2026. Vellucci Decl. Ex.¶ 6 & Ex. 2. They did not seek relief from the Court before the Court entered the September 11 order granting the Trustees' Motion to Enforce, or before the Bench Ruling, although they could have. Oct. 28 Hr'g Tr. 52:6-15. They instead filed a motion asking the Court to bar the sale altogether, which the Court denied. *Id.* at 70:13-16, 74:16-75:2. The RSS Parties remain in possession of Annex E Trust property, have limited and obstructed showings impacting the value of the pledged asset, and continue to resist removal of the Annex E pledged artwork for safekeeping. Vellucci Decl. ¶¶ 8-10, 13 & Ex. 3. The RSS Parties may not dictate the terms on which trust pledged assets are marketed and sold. As the Court explained, "you can't put conditions on the things that are pledged for payment because that's the settlement." Oct. 28 Hr'g Tr. 68:12-15. Remaining in a pledged house that must be delivered to a buyer is a paradigmatic "fail[ure] to take" action that "delays, frustrates, or impairs" the Trustees' performance: "you can't honor those [payment obligations] unless you actually liquidate assets," and "it's hard to imagine that you can liquidate an asset if somebody else is living in the house." Oct. 28 Hr'g Tr. 25:9-26:3.

20. The RSS Parties have not diligently attempted to comply. Far from attempting compliance, the RSS Parties have litigated continuously against the sale since days after the

Effective Date, including through the Interference Actions, a motion for reconsideration [D.I. 9611], and the RSS Motion. Bench Ruling at 9-10; Oct. 28 Hr'g Tr. 72:3-12. The Court has noted the RSS Parties' "pattern" of noncompliance, including Dr. Sackler's prior refusal to execute timely documents required for the Plan to go effective. Bench Ruling at 19; Oct. 28 Hr'g Tr. 55:6-18. The RSS Parties declined multiple offers to purchase the property at market value, or to otherwise avoid a contempt finding. *See generally,* Vellucci Decl. There is no fair ground of doubt as to the wrongfulness of the RSS Parties' conduct. *See Taggart*, 139 S. Ct. at 1801.

## III. The Courts Should Order the RSS Parties to Vacate and Permit the Artwork to Be Safeguarded

21. Bankruptcy courts "have lots of experience in dealing with" parties who will not cooperate in the conveyance of property, as the Court noted at the hearing. Oct. 28 Hr'g Tr. 54:14-22. Directing the RSS Parties to vacate is the specific performance of their undertakings that the Stipulation (Stip. ¶ 6) and Confirmation Order (Conf. Order ¶ 33) contemplate and is "necessary or appropriate" to carry out the confirmed Plan. 11 U.S.C. § 105(a).

22. The equities overwhelmingly favor this relief. The RSS Parties have no unique ownership rights in the Greenwich Property as Dr. Sackler is but one of more than a dozen beneficiaries of the trust that owns the Greenwich Property. Bench Ruling at 18-19. Neither Dr. Sackler nor Ms. Gao has any right to continue residing there. Oct. 28 Hr'g Tr. 41:19-42:5. The RSS Parties have had notice since April 2026 that the property would be sold and since August 25, 2026, of the October 31 deadline to vacate. Objection ¶ 15; Vellucci Decl. ¶¶ 4, 6. The artwork relief is equally warranted. Fifty percent of the artwork is owned by Trust Pledgors and is Annex E Collateral. Objection ¶ 16; D.I. 9591. The Trustees do not intend to sell the artwork through this Motion but only seek to move it to secure storage given the condition of the residence and the impending sale of the Greenwich Property. Objection ¶ 16.

23. Any prejudice the RSS Parties may claim from having to relocate, whether based on health, safety, or lifestyle, is of their own making. They have had months to arrange suitable alternative housing and plainly have the means to do so. As the Court observed, "we don't have that kind of issue to confront where you're worried about kicking somebody out of the only home that they have." Oct. 28 Hr'g Tr. 57:14-20. Moreover, although the RSS Parties have filed several rounds of motions and objections concerning the Greenwich Property, they have never identified any health or safety concern that would prevent them from relocating.

**IV. Payment of Trustees' Attorneys' Fees and Expenses is Warranted**

24. The Trustees are also entitled to their reasonable attorneys' fees and expenses. The Court has already held that the Plan's fee-shifting provision "is still applicable here to the extent that it fits these facts and circumstances." Oct. 28 Hr'g Tr. 52:19-53:1; *see also* Bench Ruling at 19-20. Every dollar spent responding to the RSS Parties' obstruction "come[s] at the expense of the creditor victims here." Bench Ruling at 19. Moreover, where a contemnor's conduct is willful, fees and costs incurred in bringing the motion should be awarded and is appropriate where "the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Fredi Adele S.R.G. v. Burlington Coat Factory Warehouse Corp.*, 2007 WL 2982295, at *4 (S.D.N.Y. Oct. 10, 2007). Each element is present here.

**V. The Court Should Extend the Litigation Standstill**

25. As a sanction for the RSS Parties' continued violation of the Stipulation and Confirmation Order since May 7, 2026, and of the Order entered at ECF No. 9590 since September 2026, the Court should extend the Litigation Standstill as to the RSS Parties until 14 months after they have vacated the Greenwich Property and removed their possessions. The Court has authority

to modify the terms of the Stipulation to extend the Litigation Standstill pursuant to paragraph 33(j) of the Confirmation Order, paragraphs 6 and 9 of the Stipulation and section 1142(b) of the Bankruptcy Code.

26. The RSS parties have spent "half of the litigation standstill litigating" to "undermine the sale of the house." Oct. 28 Hr'g Tr. 59:11-13. The Court expressed its "strong suspicion" (and counsel for the RSS Parties said nothing to allay the Court's concern) that the RSS Parties intend "to resume full litigation as to this pledged asset the minute the fourteen-month standstill is over." *Id*. at 37:10-17. An extension of the Litigation Standstill is warranted to allow the Trustees to act without interference from the RSS Parties pursuant to the Stipulation and the Confirmation Order.

27. The Trustees reserve all rights with respect to further relief, including with respect to any additional interference by the RSS Parties with the Trustees' rights and obligations under the MSA.

**NOTICE**

28. Notice of this Motion has been provided to (i) counsel for the RSS Parties; (ii) counsel for the Purdue Master Disbursement Trust; and (iii) all parties entitled to notice under the case management procedures in these cases. The Trustees submit that no other or further notice is required.

**NO PRIOR REQUEST**

29. The Trustees requested related relief in the Objection. At the October 28, 2026 hearing, the Court determined that the request was not ripe on the record before it, but stated it would consider applications concerning specific interference. Oct. 28 Hr'g Tr. 53:9-54:13, 55:23-

56:7, 76:12-13. No other prior request for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Trustees respectfully request that the Court enter an order: (i) holding the RSS Parties in civil contempt; (ii) directing the RSS Parties, their household members, and their guests to vacate the Greenwich Property and directing the RSS Parties to permit the Trustees and their designees to remove and place in safe storage the pledged artwork by the Vacate Deadline; (iii) extending the Litigation Standstill for 14 months after the RSS Parties have vacated the Greenwich Property and removed their possessions; (iv) directing the RSS Parties to reimburse the Trustees' reasonable attorneys' fees and expenses incurred in connection with this Motion; and (vii) granting such other and further relief as is just and proper.

Dated: New York, New York
November 5, 2026

MCDERMOTT WILL & SCHULTE LLP

By: *Julia M. Winters*
Julia M. Winters
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Email: jwinters@mcdermottlaw.com

-and-

KATTEN MUCHIN ROSENMAN LLP
Joshua S. Rubenstein
Bonnie Lynn Chmil
50 Rockefeller Plaza
New York, NY 10020
Telephone: (212) 940-8800
Email: joshua.rubenstein@katten.com
bonnie.chmil@katten.com

*Co-Counsel to Frank S. Vellucci, Daniel S. Connolly and Rory Held,*

*as Successor Co-Trustees of the Crystal Trust and the Data Trust*