Southeast Florida
— Recovery Advocates —
*Where Recovery Meets Policy.*

Maureen Mulroy Kielian
President, Southeast Florida Recovery Advocates, Inc.
3302 NE Holly Creek Drive
Jensen Beach, FL 34957
(954) 629-5264 · Maureen@sefra.org

November 8, 2026

Honorable Sean H. Lane
United States Bankruptcy Judge
United States Bankruptcy Court, Southern District of New York
300 Quarropas Street
White Plains, NY 10601

*Re:* In re Purdue Pharma L.P., *Case No. 19-23649 (SHL): Message from Judge Arleo at Purdue's April 28, 2026 sentencing regarding claimants without records*

Dear Judge Lane:

I am the mother of a personal injury claimant in these cases, John Andre' Kielian (Claim No. 125973), and the founder of Southeast Florida Recovery Advocates, an organization that supports people and families affected by substance use disorder and overdose loss. I write only to make sure the Court has received a message that another federal judge asked be delivered to this Court. This letter is not a motion and does not ask the Court to decide any claim.

On April 28, 2026, the Honorable Madeline Cox Arleo sentenced Purdue Pharma L.P. in *United States v. Purdue Pharma L.P.*, No. 2:20-cr-1028-MCA (D.N.J.). Many victims told her that their personal injury claims were being rejected because they could not produce prescription records from decades ago. Judge Arleo said she hoped the required proof "is not so onerous that legitimate claims are being dismissed. Because this is something that's going back 20 years. . . . This is 30 years' worth of medical records." (Tr. 140:20–24.) The Debtors' bankruptcy counsel, Eli J. Vonnegut, responded that "[b]oth tier 1 and tier 2 do require supporting medical records," and that this "does inevitably result in other claimants not receiving a recovery." (Tr. 142:21–22, 143:5–7.)

When I spoke, I told Judge Arleo that Florida's record-retention periods have long passed and that the affidavit option available under the 2021 procedures had been removed. Judge Arleo then directed Mr. Vonnegut, as an officer of the court, to bring a message to this Court:

> "And I'm going to remind that to Mr. Vonnegut when he goes back to bankruptcy court, there are states where there are no records, you can't make up records and there's alternatives like affidavits from people and loved ones and other ways -- you know, we're not applying for a Real ID here. . . . we have to use common sense and care to make sure that the biggest group of people are covered, and that's a message I want you to take back to your bankruptcy court." (Tr. 171:8–15.)

> "I'm going to tell him to tell the bankruptcy court that I want there to be some flexibility with victims. And if that means an interview, that means talking to relatives, that means other ways. If records aren't available, they're not available. We don't just say no because records aren't available because doctors don't retain them. So please, use common sense and care and compassion -- think really long and hard before you deny a claim for having inadequate documentation." (Tr. 171:20–172:3.)

I am not aware of any filing or statement in this Court that has conveyed Judge Arleo's message. I therefore enclose the relevant pages of the official transcript so that the Court has them directly.

The problem Judge Arleo described is real for thousands of families. Prescription records from the years of heaviest OxyContin prescribing have been lawfully destroyed under state retention rules, and in South Florida the records of many pain clinics were seized by federal agents when those clinics were shut down. Without the affidavit option, many injured people have no way left to prove what happened to them. My son may be filing a motion asking the Court to address these issues.

I respectfully ask that this letter and its enclosure be placed on the docket. Thank you for your time and for your attention to the victims in these cases.

Respectfully,

Maureen Mulroy Kielian

Enclosure: Transcript of Sentencing Hearing, *United States v. Purdue Pharma L.P.*, No. 2:20-cr-1028-MCA (D.N.J. Apr. 28, 2026), pages 1, 139–143 and 170–172.

cc (by mail and email):

Eli J. Vonnegut, Esq., Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (counsel to the Debtors)

Office of the United States Trustee, Region 2, Alexander Hamilton U.S. Custom House, One Bowling Green, Room 534, New York, NY 10004

Edgar C. Gentle, III, Esq., PI Trustee and Claims Administrator, Purdue Personal Injury Trust, P.O. Box 361930, Hoover, AL 35236-1930 (purduepitrust@purduepitrust.com)

Transcript of Sentencing Hearing

United States vs Purdue Pharma LP

No. 2:20-cr- 1028-MCA (D.N.J. Apr. 28, 2026 (Arleo, J.)

Pages 1, 139-142, and 170-172

# Page 139-142

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA, CRIMINAL ACTION NUMBER:

2:20-cr-1028-MCA

vs.

SENTENCE

PURDUE PHARMA, L.P.,

Defendant(s)

---

MARTIN LUTHER KING BUILDING & U.S. COURTHOUSE
50 Walnut Street, Newark, New Jersey 07101
April 28, 2026
Commencing at 11:05 a.m.

**B E F O R E: THE HONORABLE MADELINE COX ARLEO, UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S:**

OFFICE OF THE UNITED STATES ATTORNEY
BY: R. DAVID WALK, JR., ASSISTANT UNITED STATES ATTORNEY
ROBERT TOLL, ASSISTANT UNITED STATES ATTORNEY
970 Broad Street
Newark, New Jersey 07102
For the United States of America

DEPARTMENT OF JUSTICE - CRIMINAL INVESTIGATION UNIT
CRIMINAL DIVISION, FRAUD SECTION
BY: MARYANN McGUIRE, ASSISTANT UNITED STATES ATTORNEY
1400 New York Avenue, NW, Suite 1040
Washington, D.C. 20005
For the United States

McGUIREWOODS LLP
BY: JOHN D. ADAMS, ESQUIRE
ELISSA N. BAUR, ESQUIRE
800 East Canal Street
Richmond, Virginia 23219
For the Defendant

diane_ditizii@njd.uscourts.gov
(973) 776-7738
Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

withdrawal, claimants in their opioid treatment, or their prescriptions that caused them to be in this state today.

That is not fair. It's unfair on every level considering the amounts already being recovered by the states and governments. So why should Medicare and Medicaid take more from them?

I work with mothers who were told by their doctors it was safe for them to take opioids during their pregnancy. Now their children face a lifetime of diagnosis and struggles, and those don't include the trauma they live with every day due to the grief they face of many of their parents being deceased. I have many babies in my case that both parents have been lost to addiction.

I work with families of grieving children and others that will struggle with addiction all their lives. They have been cast aside. This plea does not get justice for them and I hope you won't forget.

Thank you.

THE COURT: Thank you.

Could I ask the bankruptcy attorney for Purdue, is it a true that a third of the claims are being rejected?

MR. VONNEGUT: Your Honor, I don't know if a third is the precise number. The claims that have been objected to in the bankruptcy court so far are only those for which no supporting evidence whatsoever was submitted. Other claims

will be processed.

UNIDENTIFIED SPEAKER: Lie.

(Outbursts in the courtroom.)

THE COURT: Listen, I'm not the bankruptcy judge.

I just want to make something clear that my role here is limited. I hear every one of your voices. I wish there was more that I was empowered to do. You heard that in the beginning and I'll say it at the end. This is a corporate plea with a fine and restitution that will be distributed through the bankruptcy court.

But I am nonetheless going to speak where I feel I need to speak, and I'm hearing -- I'm not the fact-finder here, but I'm hearing a theme here that claims are being rejected. And so I am asking you and I'm -- I want to know what is going on with the amount of claims.

We know on the one hand you need to have information submitted so that they can authenticate a claim. We know that because we know that that's how it works. You have to present some kind of -- some kind of -- whatever proof is needed, but I hope it is not so onerous that legitimate claims are being dismissed. Because this is something that's going back 20 years. This isn't that, you know, I bought a pair of sneakers that were defective last month and I need to show my receipt. This is 30 years' worth of medical records.

So I'm going to ask Mr. Vonnegut --

MR. VONNEGUT: Yes.

THE COURT: -- who is as an officer of this court to really, I want to know what is going on? Who is setting up the procedure? And is there a claims administrator that is making the decision about whether claims are accepted or rejected? Is there some kind of appeal process?

MR. VONNEGUT: Yes, your Honor. So there are two different procedural contexts in which claims are dealt with. Certain claims have been objected to in the bankruptcy case while the bankruptcy is still pending before the plan is consummated, and then any claim that has not been disallowed by the time the plan goes effective will be processed by the personal injury claims trust.

So I want to take those two different contexts.

THE COURT: The first ones that have already rejected, are those because of improper documentation?

MR. VONNEGUT: That's where I'm going, your Honor.

So in order to try to reduce the amount of work that the personal injury claims trust would have to do after the plan is consummated and thus speed distributions going out the door, we collaborated with the gentleman who is going to be the personal injury claims trustee, Ed Gentle, on doing an initial pass through the personal injury claims pool during the case.

That resulted in the filing of objections to claims that were what we call unsubstantiated, meaning that supporting

evidence was not submitted with the claim form and that when the claimant was contacted and asked to provide supporting evidence, they did not provide any.

So that was the initial group of claims to which the debtors objected, together with the creditors committee. However, after those objections were filed, frankly anybody who then responded and came to court and offered evidence of any kind, those objections have been adjourned. So those were withdrawn. Those claims are not being disallowed in the bankruptcy.

In the bankruptcy, prior to consummation of the plan, the only claims that are being disallowed are those for which the claimants did not provide any supporting evidence, either when they initially filed their claim or when they were then contacted by the claims administrator asking for evidence.

Separately, after the plan is consummated, claims that have not yet been disallowed at that point will be reconciled by the PI trustee using the trust distribution procedures that I referred to earlier. And those procedures, as I mentioned, they provide a tier 1 award and a tier 2 award. Both tier 1 and tier 2 do require supporting medical records in order for that payment to be made.

That is not a decision that Purdue Pharma made. As I mentioned, the trust distribution procedures applicable under the plan were all generally drafted by the applicable creditor

group. There is no shortage of difficult bordering on impossible decisions to be made in this bankruptcy, your Honor, and I think if you asked the PI trustee why those trust distribution procedures are appropriate, he would say that it preserves the maximum amount of funds for those with the most well-supported and meritorious claims, but that does inevitably result in other claimants not receiving a recovery.

THE COURT: Okay.

Do you have the next speaker?

MS. McGUIRE: Yes, your Honor. The next speaker will be presenting remotely and her name is Mrs. Glynis Burke.

MS. BURKE: Hello, can you hear me?

THE COURT: I'm going to ask you to try to keep your comments to five to seven minutes. We still have a lot of speakers and the day is going past us. Okay. Thank you.

MS. BURKE: You got it, your Honor, and thank you for allowing me the time to speak.

I wrestled over whether to open here with the obsession of my son's opioid addiction or the nightmare of his death.

Patrick James Burke Dolan's death what avoidable. It could have been prevented were it not for the well-documented, manipulative practices of Purdue Pharmaceuticals and the inherent greed of the Sackler family.

My son's first year and first month at college,

# Page 170-172

I didn't understand that that wasn't part of that grant, but hopefully when it happens, if, that a lot of that money also goes to harm reduction so that we could stop what's going on, at least put a Band-Aid on it.

THE COURT: Well, I appreciate all your efforts. It's uplifting to hear good is coming out of such pain.

MS. ARBACH: Okay. Thank you.

THE COURT: Thank you.

MS. McGUIRE: Thank you, Mrs. Arbach.

The next speaker is Ms. Maureen Kielian.

MS. KIELIAN: Good afternoon.

THE COURT: Good afternoon.

MS. KIELIAN: I have submitted my document and I'll shorten it, but I do want to point out first with regard to the bankruptcy and the claims and the difficulties, you know, that states have retention laws and in Florida -- I'm from Florida -- it's seven years. So this is well past that. And anybody who was prescribing an opioid back in those days, those records are definitely destroyed.

So the burden that they're putting on people to find those records, in addition to the age of the patient, if they're over 18, you've got to get a separate HIPAA release and all this stuff. This is by design why these claims are being rejected. It's by design.

THE COURT: Well, look, I have to speak to that a

little bit and I know it's hard and I'm not saying -- I don't think it's by design. I think it's designed to make sure that the claims are legitimate. And not to disparage anyone, but there are -- you know what happened with -- we know what happened with COVID money. And they have processes but those processes have to be bottomed in common sense and dignity of victims.

And I'm going to remind that to Mr. Vonnegut when he goes back to bankruptcy court, there are states where there are no records, you can't make up records and there's alternatives like affidavits from people and loved ones and other ways -- you know, we're not applying for a Real ID here. We're applying for -- we have to use common sense and care to make sure that the biggest group of people are covered, and that's a message I want you to take back to your bankruptcy court.

MR. VONNEGUT: Thank you, your Honor.

MS. KIELIAN: Thank you, because the affidavit was removed and that is no longer sufficient.

THE COURT: Well, I'm going to tell you to resubmit it. I'm going to tell him to tell the bankruptcy court that I want there to be some flexibility with victims. And if that means an interview, that means talking to relatives, that means other ways. If records aren't available, they're not available. We don't just say no because records aren't available because doctors don't retain them.

So please, use common sense and care and compassion -- think really long and hard before you deny a claim for having inadequate documentation.

MS. KIELIAN: Thank you.

Again, I'm from Florida and my son is alive today at this minute, surely with the addiction, which is worse than having cancer, and he is a medical professional trying every day to survive and it's from the FDA approved, congressionally approved addiction.

I also question Purdue Pharma with regard to warnings on the label. Where does it say that it helps physical pain? Where does it say it helps mental pain and that addiction is mental pain?

So I'll go on to my story, but I have those questions for you.

To many of us, this process feels less like justice and more like negotiated shield from it. We do not believe this plea reflects the true magnitude of the suffering, the loss of life, the lifelong trauma Purdue helped cause. The scale of harm cannot be reduced to financial terms or resolved through a process that prioritizes institutional recovery over human loss.

This case demands a fundamental question be answered: When criminal conduct is knowing, prolonged, and catastrophic in its consequences, why are financial penalties deemed