**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| PURDUE PHARMA L.P., *et al.*, | Chapter 11 |
| Debtors. | Case No. 19-23649 (SHL) |
| | (Jointly Administered) |

Hearing Date: [to be set by Chambers]
Objection Deadline: [to be set by Chambers]

**MOTION OF PERSONAL INJURY CLAIMANT JOHN ANDRE' KIELIAN FOR ENTRY OF AN ORDER CONCERNING THE ADMINISTRATION OF THE NON-NAS PI TRUST DISTRIBUTION PROCEDURES (I) RESTORING SWORN DECLARATIONS AS EVIDENCE OF QUALIFYING OPIOID USE WHERE PRESCRIPTION RECORDS ARE UNAVAILABLE, (II) DIRECTING RE-REVIEW OF CLAIMS DEEMED DEFICIENT FOR LACK OF PRESCRIPTION RECORDS, (III) REQUIRING A REPORT ON, AND CONSIDERATION OF AN AMENDMENT FOR, CLAIMANTS INJURED BY DIVERTED OXYCONTIN, AND (IV) GRANTING RELATED RELIEF**

John Andre' Kielian (the "Movant"), the holder of a timely filed personal injury claim in these chapter 11 cases, appearing *pro se*, respectfully submits this motion (the "Motion") and states as follows:

**PRELIMINARY STATEMENT**

1. Thousands of personal injury claimants who were injured by Purdue opioids cannot prove it with the one kind of document the PI Trust now accepts, because that document no longer exists. Purdue sold its opioids for more than two decades. Pharmacies, physicians and hospitals are generally required to keep prescription records for only a few years. Pharmacies have closed and merged, prescribers have retired or died, and in South Florida federal agents shut down many pain clinics and seized their files. Several states, including Florida, had no prescription monitoring database at all during the peak years of OxyContin prescribing. For

claimants whose use began years or decades ago, the absence of a prescription record says nothing about whether they used a Purdue opioid. It reflects only the passage of time.

2. Under the personal injury trust distribution procedures that accompanied the plan confirmed in 2021, a non-NAS personal injury claimant who could no longer locate prescription records could still qualify for a base award by signing a sworn affidavit attesting to his or her use of a Purdue opioid. That option recognized the reality described above.

3. The trust distribution procedures adopted with the Eighteenth Amended Joint Chapter 11 Plan of Reorganization (the "Plan") removed the affidavit option. The change was made in filings in March and April 2025 without any stated explanation, and it was not the subject of any focused discussion in open court. Many claimants, including claimants who voted on the Plan, did not learn of it until their claims were found deficient.

4. The effect has been severe. Roughly 140,000 individuals timely filed personal injury proofs of claim. Approximately 63,000 submitted evidence by the July 28, 2025 deadline. Fewer than half of the original claimants are expected to receive anything. A substantial number of the deficient findings rest on a single ground: the claimant cannot produce a prescription record that no longer exists.

5. These claimants were not careless. They filed on time in 2020 and 2021, when the claim form did not demand documentary proof. They were first required to produce prescription evidence in 2025, nearly six years after the petition date and, for many, decades after the prescriptions were written. The passage of that time is a product of these chapter 11 cases, not of anything the claimants did.

6. In confirming the Plan, this Court characterized the claimant substantiation burden as very modest. A declaration made under penalty of perjury pursuant to 28 U.S.C. § 1746 is

competent evidence in every federal court in the country. A standard that categorically refuses sworn testimony is not modest for the survivors, parents and family members whose records have been destroyed in the ordinary course.

7. The same procedures shut out a related group entirely. Section 3(b)(i) of the Non-NAS PI TDP provides that a claim is "Deficient" if the claimant "used only a non-prescribed (diverted) version of a Qualifying Opioid." People addicted to OxyContin that was prescribed to someone else and resold on the street were injured by the same product, through conduct Purdue admitted in its 2020 guilty plea. In South Florida, pill-mill clinics wrote single prescriptions for hundreds of oxycodone tablets at a time, which made resale profitable and put Purdue's product on the street. A diverted-use claimant never had a prescription in his or her own name, so no record could ever satisfy the current procedures.

8. Movant brings this Motion in his own right. He does not purport to represent any other claimant. The relief he seeks, however, concerns how the PI Trust administers the Non-NAS PI TDP, and it would apply uniformly to every claimant in the same position. Movant's own claim, which the PI Trust has found deficient, is affected by the requirements this Motion addresses.

9. The relief requested comes in three independent parts. **Part A** asks the Court to restore the use of sworn evidence by authorizing and directing the PI Trustee to exercise the evidentiary discretion the trust distribution procedures already confer, accepting a sworn declaration, subject to meaningful anti-fraud safeguards, where a claimant shows that the underlying records were requested and are unavailable. **Part B** asks only for a report on claims found Deficient under Section 3(b)(i), an order directing the parties who control the trust documents to consider an amendment through the procedure those documents already provide, and a reserve funded solely from residual or unclaimed PI Trust funds. **Part C** asks that families who bring a claim for a

person who died, and who cannot know whether their loved one's OxyContin was prescribed or diverted, be allowed to prove use by a Sworn Declaration without having to prove the source of the pills. Movant does not seek to modify the Plan, increase the funding of the PI Trust, reopen any bar date, or disturb any distribution already made. The Court may grant any part without the others.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

11. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

12. The Court retained jurisdiction after the Effective Date over matters concerning the implementation and interpretation of the Plan, the PI Trust and its distribution procedures. *See* Plan Art. XI, § 11.1(a)(iv), (xi), (xii), (xiv) and (xviii) (Retention of Jurisdiction); Findings of Fact, Conclusions of Law, and Order Confirming the Eighteenth Amended Joint Chapter 11 Plan of Reorganization, ECF No. 8263 (the "Confirmation Order") ¶ 34. A bankruptcy court also "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

13. The statutory and rule-based predicates for the relief requested are 11 U.S.C. §§ 105(a) and 1142(b), Federal Rule of Bankruptcy Procedure 3020(d) and, in the alternative, Federal Rule of Bankruptcy Procedure 9024 incorporating Federal Rule of Civil Procedure 60(b)(6).

## BACKGROUND

### A. The Chapter 11 Cases and the Original Affidavit Option

14. The Debtors filed these cases on September 15, 2019 (the "Petition Date"). Approximately 140,000 individuals timely filed personal injury proofs of claim by the final extended bar date in 2021. The personal injury proof of claim form did not require detailed documentation.

15. The trust distribution procedures that accompanied the plan confirmed in 2021 permitted a non-NAS claimant who lacked prescription records to qualify for a base payment of $3,500 by executing a sworn affidavit attesting to use of a Purdue opioid. That plan was later vacated following *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), on grounds unrelated to the affidavit provision.

### B. The Removal of the Affidavit Option

16. Beginning on or about March 8, 2025, the Debtors filed revised trust distribution procedures that struck the prior eligibility criteria and compensation amounts. The revised procedures for non-NAS claims, as later incorporated into the Plan (the "Non-NAS PI TDP"), require evidence of a prescription for a Qualifying Opioid, such as pharmacy records, a physician visit note, a signed prescription, or a photograph of a labeled prescription bottle. They make no provision for a sworn statement. In April 2025 the Court approved the revised claims procedures and authorized the PI claims administrator to begin requesting evidence before confirmation.

17. Movant is aware of no filing or hearing transcript in which any party explained the reason for removing the affidavit option or assessed how many claimants it would exclude.

18. The Non-NAS PI TDP nonetheless provides that the PI Trust has discretion to determine whether the prescription evidence requirement has been met. Non-NAS PI Claim

FAQs (rev. Jan. 28, 2026), FAQ No. 49 ("The PI Trust shall have discretion to determine whether this requirement has been met.").

**C. Why Prescription Records Are Unavailable to So Many Claimants**

19. The records the Non-NAS PI TDP demands were never meant to last as long as these cases have. State record-retention rules generally require pharmacies and physicians to keep prescription and patient records for only a few years after the last prescription or visit; Florida, for example, requires physicians to keep patient records for five years after the last patient contact. Once that period runs, providers routinely destroy the records. Claimants whose opioid use began in the 1990s or 2000s were asked in 2025 for records that, in the ordinary course, had already been lawfully discarded.

20. Records have also disappeared with the businesses that held them. Independent pharmacies have closed, chains have merged and converted their systems, and prescribers have retired or died. Where a claimant has died of an overdose, the family may not know which physician or pharmacy was involved at all.

21. In South Florida, the center of the national pill-mill trade, the records of many clinics are in the hands of law enforcement. In April 2009 the Associated Press reported that 33 of the top 50 oxycodone-dispensing physicians in the country practiced in Broward County, that Broward pain-clinic doctors wrote prescriptions for about 6.5 million oxycodone pills in the second half of 2008, and that Florida was the largest of twelve states with no prescription monitoring program. DEA data showed that 49 of the top 50 oxycodone-prescribing physicians in the United States were in Florida from October 2008 to March 2009. Between about 2010 and 2014 the Drug Enforcement Administration, working with the Federal Bureau of Investigation and other agencies, closed many of those clinics and seized their records. Florida's prescription

monitoring database did not begin operating until 2011. Many clinics accepted only cash and did not bill insurance, so no bank, credit card or insurance record of a visit exists either. *See* Exhibit C.

22. For claimants in each of these situations, a sworn declaration from the claimant or a family member with personal knowledge, supported by the record requests made and the responses received, is the best evidence that remains.

**D. Confirmation, the Evidence Deadline, and Deficiency Findings**

23. Claimants were required to submit a Non-NAS PI Claim Form, a HIPAA authorization, and prescription evidence by July 28, 2025. Approximately 63,000 claimants did so.

24. Between October 2025 and February 2026, the PI Trust issued deficiency notices giving claimants 30 days to cure. The Court confirmed the Plan on November 18, 2025 (ECF No. 8263). The Plan became effective and was substantially consummated on May 1, 2026 (ECF No. 9133).

25. On or about September 30, 2026, the PI Trust announced initial award amounts of $16,294 for Non-NAS Tier 1 claims and $8,147 for Non-NAS Tier 2 claims and began rolling distributions. The PI Trust has stated that these are initial distributions and that a further distribution may follow once contingencies are resolved. A claimant found deficient may appeal within 20 days to the Appeals Special Master, whose decision is final, and must pay a $500 fee to do so.

26. According to public reporting, the PI Trust itself has identified claimants whose evidence does not meet the distribution procedures as one of the principal sources of deficient findings, and individual claimants, including parents of children who died of overdoses, have

been found deficient because they could not produce a prescription linking the decedent to a Purdue product. *See* Exhibit C (news reports). The same problem was raised at Purdue's criminal sentencing on April 28, 2026. After hearing victim after victim describe claims rejected for lack of decades-old records, United States District Judge Madeline Cox Arleo said she hoped the required proof "is not so onerous that legitimate claims are being dismissed," observing that "[t]his is 30 years' worth of medical records." Debtors' bankruptcy counsel confirmed that both Tier 1 and Tier 2 awards "require supporting medical records," and that the procedures "inevitably result in other claimants not receiving a recovery." When Movant's mother, Maureen Kielian, told the court that the affidavit option had been removed, Judge Arleo asked Debtors' bankruptcy counsel, as an officer of the court, to carry a message to this Court: "there are states where there are no records, you can't make up records and there's alternatives like affidavits from people and loved ones," and "I want there to be some flexibility with victims. . . . If records aren't available, they're not available. We don't just say no because records aren't available because doctors don't retain them." Tr. of Sentencing Hr'g 139:20–140:24, 142:21–143:7, 171:8–172:3, *United States v. Purdue Pharma L.P.*, No. 2:20-cr-1028-MCA (D.N.J. Apr. 28, 2026) (excerpts attached as Exhibit E). Movant is not aware of any filing or statement by the Debtors conveying that message to this Court. To make sure the Court has it, Movant's mother submitted a letter enclosing the transcript excerpts, which was docketed at ECF No. 9706.

**E. Diverted OxyContin and Section 3(b)(i)**

27. Section 3(b) of the Non-NAS PI TDP requires proof of pre-petition use of "a qualifying prescribed opioid listed in Exhibit C" (a "Qualifying Opioid"). Section 3(b)(i) provides: "If the Holder of such Non-NAS PI Channeled Claim (or its decedent, if applicable), used only a non-prescribed (diverted) version of a Qualifying Opioid, then such Non-NAS PI

Channeled Claim shall be Deficient." Section 5 requires documentation of "a prescription that sets forth the name of the Holder," and even the law-enforcement and substance-abuse records allowed by Section 5(c) must refer to "a prescribed Qualifying Opioid."

28. As reported, the 2025 procedures also "eliminated compensation for teenagers who bought Purdue drugs on the street," which the 2021 procedures had provided. *See* Exhibit C.

29. Diversion was the predictable result of conduct Purdue has admitted. In its November 24, 2020 federal guilty plea, Purdue admitted that it marketed to prescribers it had good reason to believe were prescribing without a legitimate medical purpose, including prescribers who diverted opioids to drug abusers, and that it misrepresented its anti-diversion programs to the DEA. Federal prosecutors described South Florida clinics as typically prescribing a "cocktail" of controlled substances, including large quantities of oxycodone together with Xanax and/or Soma, to patients including addicts and traffickers who traveled from Tennessee, Ohio, Kentucky and West Virginia. A 2010 study of South Florida pain-clinic patients recorded single prescriptions of up to 300 30-mg oxycodone tablets with Xanax, found that every participant had sold prescription drugs at some point, and identified OxyContin 80 mg as among the most commonly diverted drugs. *See* Exhibit C. Prescriptions this large made resale profitable and put Purdue's product on the street.

**F. Movant**

30. Movant holds a timely filed personal injury proof of claim, Claim No. 125973.

31. In November 2025 the PI Trust found the claim deficient for lack of qualifying evidence. A response to the deficiency notice was submitted, and no response has been received from the PI Trust. Movant's claim is affected by the evidentiary requirements addressed in this Motion. Because the facts of his claim include private medical information, Movant's supporting

declaration (Exhibit D) will be filed separately, and Movant will ask the Court for leave to file it under seal or in redacted form. 11 U.S.C. § 107; Fed. R. Bankr. P. 9018.

## RELIEF REQUESTED

32. Movant respectfully requests entry of an order, substantially in the form attached as Exhibit B (the "Proposed Order"):

**Part A: Claimants whose prescription records are unavailable**

(a) declaring that, within the discretion conferred by the Non-NAS PI TDP, a declaration executed under penalty of perjury pursuant to 28 U.S.C. § 1746 (a "Sworn Declaration") is competent evidence of Qualifying Opioid use where the claimant shows that prescription records were requested and are unavailable, and authorizing and directing the PI Trustee to accept such Sworn Declarations subject to the safeguards set out below;

(b) directing the PI Trustee to identify every timely filed non-NAS PI claim found deficient, in whole or in part, for lack of prescription evidence, and to give each such claimant written notice and not less than 90 days to submit a Sworn Declaration;

(c) directing the PI Trustee to re-review those claims, and any pending appeals, under the standard described above, and waiving the $500 appeal fee for any appeal arising from that re-review;

(d) directing the PI Trustee to hold back, from any further distribution, a reserve sufficient to pay claims that qualify through a Sworn Declaration, and to report to the Court the number of claims affected and the amount reserved;

**Part B: Claimants injured by diverted OxyContin**

(e) directing the PI Trustee, within 30 days, to file a report stating how many Non-NAS PI claims were found Deficient solely or principally under Section 3(b)(i), and the total of residual, unclaimed or reverted PI Trust funds;

(f) directing the PI Trustee and the parties whose consent is required to amend the Non-NAS PI TDP to meet and confer and to file, within 60 days, either a proposed amendment allowing diverted use of a Qualifying Opioid to be shown by a Section 5(c) record together with a Sworn Declaration, or a statement of why no amendment will be made;

(g) directing the PI Trustee to hold a reserve, from residual or unclaimed funds only, for timely filed claims found Deficient solely under Section 3(b)(i), until the Court rules on any amendment;

(h) waiving the $500 appeal fee for any such claimant seeking review after an amendment; and

**Part C: Claims brought for a person who died**

(i) directing the PI Trustee, where the person who used the Qualifying Opioid has died, to accept a Sworn Declaration from a family member or estate representative as evidence of that use without requiring proof of the prescriber, the pharmacy, or whether the pills were prescribed or diverted, and not to find such a claim Deficient under Section 3(b)(i) unless the PI Trust has evidence that the decedent used only a diverted Qualifying Opioid;

(j) including such claims in the notice, re-review, reserve and appeal-fee waiver described in Part A; and

(k) granting such other relief as is just.

## BASIS FOR RELIEF

### I. The Court Has Authority to Grant This Relief Without Modifying the Plan.

33. Movant recognizes that the Plan has been substantially consummated and may no longer be modified under 11 U.S.C. § 1127(b), and that 11 U.S.C. § 1144 limits revocation of confirmation. Movant seeks neither.

34. The Non-NAS PI TDP already commits to the PI Trust the discretion to decide whether the prescription evidence requirement has been met. Part A asks the Court to construe that existing discretion and direct how it is to be exercised for claimants whose records are unavailable. Part B asks for information, for consideration of an amendment through the procedure the Creditor Trust Documents already provide, and for protection of residual funds while that happens. Each is an act of implementation, which the Court may order under 11 U.S.C. § 1142(b) (the court may direct any necessary party to perform any act necessary for consummation of the plan), Federal Rule of Bankruptcy Procedure 3020(d) (after confirmation the court may issue any order necessary to administer the estate), 11 U.S.C. § 105(a), and the jurisdiction the Court expressly retained over the PI Trust and its procedures.

35. Section 11.1(c) of the Plan, which provides that the resolution of Channeled Claims is governed by Section 6.21 of the Plan, the Master TDP and the Creditor Trust TDPs, does not stand in the way. Movant does not ask the Court to liquidate, allow or resolve any individual claim, including his own. Each claim would still be reviewed and decided by the PI Trust under the Non-NAS PI TDP, with the same appeal rights. Movant asks only that the Court determine how the evidentiary terms of the Non-NAS PI TDP are to be read and applied across defined groups of claimants. That is a dispute over the interpretation and implementation of the Plan and the Creditor Trust Documents, and over whether Distributions to Holders of Allowed Claims are

accomplished as the Plan provides. The Court expressly retained exclusive jurisdiction over each of those matters. Plan § 11.1(a)(iv), (xi), (xii), (xiv) and (xviii); Confirmation Order ¶ 34. Section 11.1(c) assigns the forum for deciding claims; it does not take away the Court's authority to construe the documents that govern that process.

**II. A Sworn Declaration Is Competent Evidence, and Refusing It Is Inconsistent with the Modest Burden the Court Approved.**

36. Congress has provided that an unsworn declaration made under penalty of perjury carries the same force as a sworn affidavit. 28 U.S.C. § 1746. Federal courts decide summary judgment motions on such declarations. Fed. R. Civ. P. 56(c)(4).

37. The Bankruptcy Rules go further. A properly executed proof of claim, signed under penalty of perjury, is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Every claimant affected by this Motion has already submitted such a proof of claim. The current procedures treat the same sworn statement that established the claim as worthless when offered to substantiate it.

38. At confirmation, the Court found that the Plan imposes only a very modest burden of substantiation on personal injury claimants. For a claimant whose records still exist, that is true. For a claimant whose pharmacy closed, whose physician retired, whose clinic's files were seized, or whose child's records were purged under a five- or seven-year retention schedule, the burden is not modest. It is impossible. Accepting sworn testimony, with safeguards, is what gives the Court's finding effect for every claimant rather than only for those whose paperwork survived. As Judge Arleo put it at Purdue's sentencing, "[i]f records aren't available, they're not available. We don't just say no because records aren't available because doctors don't retain them." Sentencing Tr. 171:23–25.

**III. Sworn Statements Are an Established Feature of Mass Tort Compensation, Including in This Very Case.**

39. The 2021 Purdue procedures accepted a sworn affidavit in lieu of records. Compensation programs in other mass tort bankruptcies, including those arising from sexual abuse claims against the Boy Scouts of America and Catholic dioceses, accept sworn statements where documentary proof of long-past harm is unavailable. The national OxyContin and OxyNEO class settlement in Canada permits a class member to submit a sworn affidavit describing his or her prescription and use when the relevant records were requested and are unavailable, provided the affidavit attaches the record requests and the responses received. *See* Exhibit C. That model is the basis for the safeguards proposed below. Most recently, the district judge who sentenced Purdue identified "affidavits from people and loved ones" as an appropriate alternative where records do not exist. Sentencing Tr. 171:8–15.

**IV. Equity Favors the Relief Because the Loss of Records Is a Product of These Cases.**

40. Claimants were told in 2020 and 2021 that a proof of claim was sufficient. They were first asked for prescription evidence in 2025. In the intervening years, records were destroyed in the ordinary course under state retention rules. The claimants had no reason to preserve records that no one had asked for, and many relevant records belong to deceased family members whose providers no longer exist.

41. The change in evidentiary standards was not explained in any filing, and the solicitation materials did not highlight it. Claimants who voted on the Plan, and some who served on creditor committees, have stated publicly that they did not understand the affidavit option had been removed. Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of what is at stake. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950). Whether or not the notice here was legally sufficient, the circumstances weigh heavily in favor of exercising the PI Trust's discretion in claimants' favor.

**V. Section 3(b)(i) Excludes Injured Claimants for a Reason Unrelated to Their Injury.**

42. The Non-NAS PI TDP exists to pay people injured by Purdue opioids, with a very modest burden of substantiation. Section 3(b)(i) does not test whether the claimant used a Purdue opioid or was injured by it. It tests only whose name was on the bottle. A person addicted on OxyContin diverted from a pill mill was injured by the same product, through the same conduct Purdue admitted in 2020.

43. The exclusion also cuts against the TDP's own design. Section 5(c) already accepts law-enforcement, rehabilitation and mental-health records as proof of use. Those are the records most likely to exist for a person who obtained diverted pills. Movant asks that such records, together with a Sworn Declaration, be allowed to show diverted use of a Qualifying Opioid.

44. Claimants filed proofs of claim in 2020 and 2021 under procedures that allowed sworn affidavits and, as reported, compensated some street use. The diverted-use exclusion was added in 2025, after the bar date, with no explanation in the record. *See* ¶ 41 above. A confirmed plan binds creditors, but that rule assumes they received constitutionally adequate notice. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272–75 (2010).

**VI. Part B Does Not Disturb the Confirmed Plan or Any Distribution.**

45. The Second Circuit's equitable mootness cases ask whether relief would unravel a substantially consummated plan, disturb transactions third parties relied on, or reach parties without notice. *In re Chateaugay Corp.*, 10 F.3d 944, 952–53 (2d Cir. 1993); *In re BGI, Inc.*, 772 F.3d 102, 108–10 (2d Cir. 2014). That doctrine governs appeals, but the same finality concerns may be raised here. Part B is built to avoid them: no payment already made is recalled and no

award is reduced; any reserve comes only from residual, unclaimed or reverted PI Trust funds; any change to Section 3(b)(i) is made by the parties who already have authority to amend the Creditor Trust Documents, under the procedure those documents provide; and the relief is prospective and limited to claims that were timely filed and found Deficient solely under Section 3(b)(i).

**VII. Families of People Who Died Cannot Be Required to Prove What Only the Decedent Knew.**

46. Many Non-NAS PI claims are brought by a parent for a child who died of an overdose, or by a child or estate representative for a parent who died. The Non-NAS PI TDP expressly provides for such claims; Section 3(b)(i) itself refers to the Holder's "decedent." These families often cannot know whether their loved one's OxyContin came from a prescription, from the street, or from both. The person who knew where the pills came from is gone. Requiring the family to name the prescriber and pharmacy, or to prove whose name was on the bottle, asks for proof that no longer exists for reasons that have nothing to do with whether the decedent was injured by a Purdue opioid.

47. Section 3(b)(i) makes a claim Deficient only where the decedent "used only a non-prescribed (diverted) version" of a Qualifying Opioid. It does not say that a family that cannot know the source must be treated as if the use was diverted. Where the source is unknown, Movant asks that the PI Trustee accept a Sworn Declaration from a family member or estate representative stating, on personal knowledge or after reasonable inquiry, what the declarant knows of the decedent's use of OxyContin or another Qualifying Opioid and the basis for that knowledge, and that such a claim not be found Deficient under Section 3(b)(i) unless the PI Trust

has evidence that the use was only diverted. The safeguards in paragraph 52 apply, including subparagraph (i), which is written for these claims.

## VIII. In the Alternative, Relief Under Rule 60(b)(6) Is Warranted.

48. If the Court concludes that the Non-NAS PI TDP leaves no room for the relief requested, Movant requests, in the alternative, relief from the Confirmation Order under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b)(6), limited solely to the evidentiary provisions of the Non-NAS PI TDP and to Section 3(b)(i). Rule 60(b)(6) permits relief for any other reason that justifies it in extraordinary circumstances. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). The circumstances here are extraordinary: tens of thousands of timely claimants have been excluded by changes made without explanation, the excluded claimants include the families of people who died, the diverted-use claimants were injured by conduct the Debtor admitted in a guilty plea, and the relief sought does not disturb the Plan's settlements, releases, or funding. This Motion is filed within one year of the Confirmation Order and promptly after the scope of the exclusions became known through the PI Trust's deficiency determinations and public reporting in 2026.

## IX. The Relief Causes No Cognizable Prejudice.

49. The Proposed Order adds no money to the PI Trust and takes none from any other trust. It does not reopen the bar date; it applies only to claimants who filed timely proofs of claim. It does not claw back any distribution already made.

50. Movant acknowledges that allowing additional claims may reduce the amount of any later distribution to other claimants. The PI Trust was funded for the universe of timely personal injury claimants, and it has stated that any further distribution is uncertain. A claimant whose

sworn testimony establishes a valid claim is entitled to share in that fund on equal terms. Equality of distribution among similarly situated creditors is a basic principle of chapter 11.

**X. The Three Parts Are Independent.**

51. Part A concerns claimants who were prescribed a Qualifying Opioid but can no longer prove it. Part B concerns claimants whose use was of diverted pills. Part C concerns families of people who died and who cannot know which of those two situations applies. The parts rest on different provisions of the Non-NAS PI TDP and different facts. The Court may grant any part without the others, and a ruling on one should not affect the others. Movant has a direct stake in the outcome. And as a party in interest, Movant "may raise and may appear and be heard on any issue" in these cases. 11 U.S.C. § 1109(b).

## PROPOSED SAFEGUARDS

52. Movant shares the PI Trust's interest in preventing fraudulent claims. The Proposed Order would permit a Sworn Declaration only where all of the following conditions are met:

(a) **Timely claim.** The claimant filed a timely personal injury proof of claim and a timely Non-NAS PI Claim Form.

(b) **Diligent search.** The declaration identifies each pharmacy, prescriber, hospital, insurer or agency the claimant contacted, attaches copies of the record requests made, and attaches the responses received (or states that none was received after a stated period).

(c) **Specific facts.** For prescribed use, the declaration states, to the best of the declarant's knowledge, the Qualifying Opioid used, the approximate dates of use, the condition for which it was prescribed, the prescriber's name, and the dispensing pharmacy.

(d) **Penalty of perjury.** The declaration is executed under 28 U.S.C. § 1746 and bears the warning that a false claim is punishable under 18 U.S.C. §§ 152 and 3571.

(e) **Corroboration where available.** The PI Trustee may require any reasonably available corroborating material, such as a later medical record referencing past opioid use, an insurance statement, a death certificate or toxicology report, or a declaration from a family member or treating provider.

(f) **Trustee review and audit.** The PI Trustee retains discretion to reject a declaration that is internally inconsistent or contradicted by other evidence, and may audit a sample of approved declarations.

(g) **Tier placement.** Absent documentary evidence of 180 days or more of use, a claim qualifying through a Sworn Declaration alone is placed in Tier 2.

(h) **Diverted use.** For a claim under Part B, the declaration states how, where and when the diverted Qualifying Opioid was obtained, and it is accompanied by at least one record of the kind described in Section 5(c) of the Non-NAS PI TDP, such as a law-enforcement, court, rehabilitation or treatment record, that refers to the claimant's use of OxyContin or another Qualifying Opioid.

(i) **Claims for a person who died.** Where the person who used the Qualifying Opioid has died, conditions (b), (c) and (h) are satisfied if the declaration, made by a family member or estate representative, states what the declarant knows after reasonable inquiry, including that the prescriber, pharmacy or source of the pills is unknown if that is so. The declaration states the basis for the declarant's knowledge of the decedent's use of OxyContin or another Qualifying Opioid, such as having seen bottles or tablets, the decedent's own statements, treatment or rehabilitation stays, or law-enforcement contacts, and attaches any available death certificate, autopsy or toxicology report, or medical examiner record.

## RESERVATION OF RIGHTS

53. Movant does not seek to modify the Plan, revoke confirmation, or recover any distribution already made. Movant reserves the right to seek further relief, including with respect to any amendment proposed under Part B.

## NOTICE

54. Notice of this Motion has been given to: (a) the PI Trustee, Edward E. Gentle; (b) the Plan Administration Trustee; (c) counsel to the Debtors, Davis Polk & Wardwell LLP; (d) counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP; (e) the Office of the United States Trustee for Region 2; and (f) all parties on the Master Service List under the case management order. Movant submits that no further notice is required.

## NO PRIOR REQUEST

55. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, Movant respectfully requests that the Court enter the Proposed Order and grant such other relief as is just.

Dated: November 18, 2026

Respectfully submitted,

**John Andre' Kielian**, *pro se*
3302 NE Holly Creek Drive
Jensen Beach, FL 34957

Personal Injury Claimant, Claim No. 125973

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (SHL) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF MAUREEN KIELIAN IN SUPPORT OF THE MOTION OF JOHN ANDRE' KIELIAN**

I, Maureen Kielian, declare as follows:

1. I am over 18 years of age and competent to make this declaration. I am the mother of the Movant, John Andre' Kielian. I make this declaration on personal knowledge in support of the foregoing Motion.

2. In 2021 I timely filed a personal injury proof of claim in these cases for my son John, Claim No. 125973. I timely submitted a Non-NAS PI Claim Form and HIPAA authorization to the PI Trust on or about July 26, 2025, together with a cover letter dated July 25, 2025.

3. The claim is based on my son John's use of OxyContin.

4. On or about November 14 2025, the PI Trust notified me that the claim was deficient for lack of qualifying evidence. On December 11, 2025, I responded to the deficiency notice with a cover letter and resubmitted the documents I then had. I have received no response from the PI Trust.

5. Pharmacy, clinic and provider records from the years of John's use are more than ten years old and, as far as I have been able to learn, are no longer available.

6. When I filed the proof of claim, no one told me I would need prescription records, and I did not learn that the sworn affidavit option had been removed until January 9, 2026, in a conversation with ProPublica reporter Craig McCoy.

7. On April 28, 2026, I gave a victim impact statement at Purdue's sentencing in the United States District Court for the District of New Jersey. I told the court that the record-retention period in Florida had long passed and that the affidavit option had been removed. Judge Arleo's response appears in the transcript at pages 170 to 172, attached as Exhibit E. On or about November 9, 2026, I submitted a letter to this Court enclosing those transcript pages, which was docketed at ECF No. 9706.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 18,2026, at Jensen Beach, Florida.

Maureen Kielian

**EXHIBIT B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| PURDUE PHARMA L.P., *et al.*, | Chapter 11 |
| Debtors. | Case No. 19-23649 (SHL) |
| | (Jointly Administered) |

**ORDER CONCERNING SWORN DECLARATIONS AND DIVERTED-USE CLAIMS UNDER THE NON-NAS PI TRUST DISTRIBUTION PROCEDURES**

Upon the Motion of John Andre' Kielian (the "Motion"); the Court having jurisdiction under 28 U.S.C. §§ 157 and 1334, Confirmation Order ¶ 34 and Plan § 11.1; due and proper notice having been given; and the Court having found good cause, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. Within the discretion conferred by the Non-NAS PI TDP, a declaration executed under penalty of perjury pursuant to 28 U.S.C. § 1746 that satisfies the conditions in paragraph 52 of the Motion (a "Sworn Declaration") shall be accepted by the PI Trustee as evidence of Qualifying Opioid use where the claimant demonstrates that the relevant prescription records were requested and are unavailable.

3. Within 30 days of entry of this Order, the PI Trustee shall identify each timely filed Non-NAS PI Claim found deficient, in whole or in part, for lack of prescription evidence, and shall mail and email to each such claimant (or counsel) notice of this Order and a form Sworn

Declaration. Each such claimant shall have 90 days from the date of that notice to submit a Sworn Declaration.

4. The PI Trustee shall re-review each claim for which a Sworn Declaration is timely submitted, and any related pending appeal, in accordance with this Order. No appeal fee shall be charged for any appeal arising from that re-review.

5. Pending completion of the re-review, the PI Trustee shall maintain a reserve sufficient to pay claims that qualify under this Order on the same basis as similarly situated allowed claims.

6. Within 30 days of entry of this Order, the PI Trustee shall file a report stating the number of Non-NAS PI claims found Deficient solely or principally under Section 3(b)(i) of the Non-NAS PI TDP, and the amount of residual, unclaimed or reverted PI Trust funds.

7. Within 60 days of entry of this Order, the PI Trustee and the parties whose consent is required to amend the Non-NAS PI TDP shall meet and confer and file either a proposed amendment allowing diverted use of a Qualifying Opioid to be shown by a Section 5(c) record together with a Sworn Declaration, or a statement of reasons why no amendment will be made.

8. Pending further order, the PI Trustee shall reserve, from residual or unclaimed funds only, an amount sufficient to pay timely filed claims found Deficient solely under Section 3(b)(i) at the lowest applicable tier. No appeal fee shall be charged to any such claimant seeking review after an amendment.

9. Where the person who used the Qualifying Opioid has died, a Sworn Declaration from a family member or estate representative that satisfies paragraph 52(i) of the Motion shall be accepted as evidence of Qualifying Opioid use without proof of the prescriber, the pharmacy, or whether the pills were prescribed or diverted. Such a claim shall not be found Deficient under

Section 3(b)(i) of the Non-NAS PI TDP unless the PI Trust has evidence that the decedent used only a diverted Qualifying Opioid. Such claims are included in the notice, re-review, reserve and appeal-fee waiver provided in this Order.

10. Within 120 days of entry of this Order, and every 90 days thereafter until the re-review is complete, the PI Trustee shall file a report stating the number of claims noticed, declarations received, claims allowed and denied, and the amounts reserved.

11. Nothing in this Order modifies the Plan, reopens any bar date, recalls any distribution, or reduces any award made before entry of this Order.

12. The Court retains jurisdiction over all matters arising from the implementation of this Order.

Dated: White Plains, New York
____________, 2026

____________________________
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

## News Reports, Government Sources and Comparison Materials

1. "A Punch in the Gut": After Years of Waiting, Many Opioid Victims Will Be Shut Out of Purdue Settlement, ProPublica / Philadelphia Inquirer (Apr. 23, 2026), https://www.propublica.org/article/purdue-settlement-leaves-opioid-victims-behind

2. After waiting years for justice, many Purdue opioid victims are defeated — by paperwork, The Daily Record (AP) (Apr. 24, 2026), https://thedailyrecord.com/2026/04/24/many-purdue-opioid-victims-lose-compensation-documentation-hurdles/

3. Purdue PI Trust, Non-NAS PI Claim FAQs (rev. Jan. 28, 2026), https://purduepitrust.com/wp-content/uploads/2026/01/Non-NAS-PI-Claim-FAQs-1.28.2026-1.pdf

4. Purdue PI Trust, Non-NAS PI Trust Distribution Procedures, including Exhibits (Aug. 2025), https://purduepitrust.com/wp-content/uploads/2025/08/Non-NAS-PI-Trust-Distribution-Procedures-including-Exhibits.pdf

5. OxyContin and OxyNEO Class Action Settlement (Canada), FAQ on affidavits, https://www.oxycontinclassactionsettlement.com/faq.aspx

6. Florida painkiller industry flourishes, supplies nation, Associated Press, as reported by the Association of Health Care Journalists (Apr. 13, 2009), https://healthjournalism.org/blog/2009/04/florida-painkiller-industry-flourishes-supplies-nation/

7. PolitiFact, Kottkamp says nearly all top 50 oxycodone prescribers are in Florida (Mar. 9, 2010) (rated True), https://www.politifact.com/factchecks/2010/mar/09/jeff-kottkamp/kottkamp-top-50-oxycodone-prescribers/

8. U.S. Attorney's Office, S.D. Fla., Operation Oxy Alley press release (Aug. 23, 2011), https://www.justice.gov/archive/usao/fls/PressReleases/2011/110823-04.html

9. Rigg, March & Inciardi, Prescription Drug Abuse & Diversion: Role of the Pain Clinic, 40 J. Drug Issues 681 (2010), https://pmc.ncbi.nlm.nih.gov/articles/PMC3030470/

10. U.S. Department of Justice, Opioid Manufacturer Purdue Pharma Sentenced for Fraud and Kickback Conspiracies, https://www.justice.gov/opa/pr/opioid-manufacturer-purdue-pharma-sentenced-fraud-and-kickback-conspiracies

11. Purdue Pharma receives $5.5B sentence, paving way for opioid settlement, The Daily Record (Reuters) (Apr. 29, 2026), https://thedailyrecord.com/2026/04/29/purdue-pharma-sentenced-opioid-settlement/

**Sources for Record Citations**

Notice of Occurrence of Effective Date, ECF No. 9133 (May 1, 2026), https://nationalopioidsettlement.com/wp-content/uploads/2026/05/Notice-of-Plan-Effectiveness.pdf

MDL Notice of Bankruptcy Court Order Confirming Plan, citing Confirmation Order ECF No. 8263, https://www.naag.org/wp-content/uploads/2026/04/2025.11.21-MDL-Notice-of-Bankruptcy-Court-Order-Confirming-Bankruptcy-Plan.pdf

Purdue PI Trust award amounts and appeal process (Sept. 30, 2026 update, as reported), https://openclassactions.com/news/purdue-pi-trust-award-amounts-payments-2026.php

## EXHIBIT D

## Declaration of Movant John Andre' Kielian

To be filed separately. Movant will ask the Court for leave to file it under seal or in redacted form because it contains private medical information.

# EXHIBIT E

*Excerpts, Transcript of Sentencing Hearing,* United States v. Purdue Pharma L.P.*, No. 2:20-cr-1028-MCA (D.N.J. Apr. 28, 2026) (Arleo, J.), pages 1, 139–143 and 170–172*

Transcript pages 1, 139–143 and 170–172 are attached.