Anne Penachio
PENACHIO MALARA LLP
245 Main Street, Ste. 450
White Plains, NY 10601
Tel.: (914) 946-2889
apenachio@pmlawllp.com

*Counsel for the RSS Parties*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., et al.[1] | Chapter 11<br><br>Case No. 19-23649 (SHL)<br><br>Jointly Administered |

**RSS PARTIES' OPPOSITION TO TRUSTEES' MOTION FOR ENTRY OF AN ORDER (I) HOLDING RICHARD S. SACKLER AND LIN GAO IN CIVIL CONTEMPT OF THE CONFIRMATION ORDER, (II) DIRECTING THEM TO VACATE THE GREENWICH PROPERTY, AND (III) GRANTING RELATED RELIEF**

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, were as follows: Purdue Pharma L.P. (7484); Purdue Pharma, Inc. (7486); Purdue Transdermal Technologies L.P. (1868); Purdue Pharma Manufacturing L.P. (3821); Purdue Pharmaceuticals L.P. (0034); Imbrium Therapeutics L.P. (8810); Adlon Therapeutics L.P. (6745); Greenfield Bio Ventures L.P. (6150); Seven Seas Hill Corp. (4591); Ophir Green Corp. (4594); Purdue Pharma of Puerto Reco (3925); Purdue Products L.P. (4140); Purdue Pharmaceutical Products L.P. (3902); Purdue Neuroscience Company (4712); Nayatt Cove Lifescience Inc. (7805); Button Land L.P. (7502); Rhodes Associates L.P. (N/A); Paul Land Inc. (7425); Quidnick Land L.P. (7584); Rhodes Pharmaceuticals L.P. (6166); Rhodes Technologies (7143); UDF LP (0495); SVC Pharma LP (5717); and SVC Pharma Inc. (4014). The Debtors' corporate headquarters was located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

Richard Sackler and Lin Gao (together, the RSS Parties") submit this opposition to the motion (the "Motion") of Frank Vellucci ("Vellucci"), Rory Held and Daniel Connelly (collectively, the "Trustees") to hold them in contempt, [redacted] and related relief. The underlying facts are well known to the Court as the issue of compliance with the Confirmation Order has been the subject of prior Court hearings. The facts relating to the Motion are set forth in the Affirmation of Lin Gao filed and served contemporaneously herewith (the "Gao Decl.").

**PRELIMINARY STATEMENT**

Consistent with the Court's statements on the record at hearings on related matters, the [redacted] e. They have not violated an order of this Court.

The RSS Parties have acted in good faith and in a reasonable manner. They have not refused to cooperate with the Trustees [redacted]. They simply are unable to meet the unilateral "deadline" imposed by the Trustees (not by any order of this Court) [redacted]

[redacted].

Finally, the RSS Parties are mindful of the Court's comments regarding the claimants in the Purdue Bankruptcy case and the obligations of the RSS Parties. It is submitted that affording the RSS Parties a reasonable time [redacted] will not adversely affect the Plan. [redacted]

The Trustees have not carried their heavy burden of establishing \that the RSS Parties have violated any express provisions of any orders and the Trustees' Motion should therefore be denied.

## ARGUMENT

### I The Trustees Have Not Carried Their Burden of Establishing Contempt Through Clear and Convincing Evidence.

1. To prevail on a motion for contempt, the movant must show that: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). The Trustees bear that burden. As the Second Circuit has explained, "the relevant inquiry is not whether defendants adequately rebutted plaintiffs' evidence, but rather, whether plaintiffs' evidence alone was adequate to establish" each element. *Latino Officers Ass'n City of N.Y., Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009). Shifting the burden to the alleged contemnor without proving

the underlying noncompliance is impermissible. See *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 251 (2d Cir. 2002).

2. In bankruptcy, a court may hold a party in civil contempt only "if there is no fair ground of doubt as to whether the order barred [the party's] conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 556 (2019) ("In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful."); *see PHH Mortg. Corp. v. Sensenich (In re Gravel)*, 6 F.4th 503, 511(2d Cir. 2021) (a bankruptcy court's contempt power is "narrowly circumscribed"; "civil contempt is a severe remedy" and "basic fairness requires that those enjoined receive explicit notice of what conduct is outlawed"). *Cf, In re Dewitt, 651 B.R. 215 Bank.. S.D. Ohio, 2023).*

3. The Trustees have not met their heavy burden.

**A. There Is No Clear and Unambiguous Order Directing the RSS Parties to Vacate the Property or Compelling Storage of the Artwork.**

4. The issue is not whether the Court, either through comments from the bench or in written opinions, has stated clearly and unambiguously how it interprets its prior orders or how the Court views the parties' legal obligations. It has. Rather, the issue is whether there is a court order, which based on the clear and unambiguous terms of the order itself, a party has violated. A clear and unambiguous order is one that leaves "no uncertainty in the minds of those to whom it is addressed," who "must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058 (quoting *Hess v. N.J. Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988), and *Drywall Tapers, Local 1974 v. Local 530*, 889 F.2d 389, 395 (2d Cir. 1989)). "[A]mbiguities and omissions in orders redound to the benefit of the person charged with contempt." *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 143 (2d Cir. 2014) (quoting *Drywall Tapers*, 889 F.2d at 400). Accordingly, "unless the parties can 'ascertain from the four corners of

the order precisely what acts are forbidden,' the order cannot form the basis for contempt." *Id.* And clarity must be assessed with reference to the specific conduct alleged to be contumacious. *See Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003).

5. [redacted]

6. The Trustees rely on the general non-interference undertaking in Paragraph 33(a) of the Confirmation Order, which bars taking "(or fail[ing] to take) any action that interferes with, delays, frustrates, or impairs" the Trustees' performance. (Dkt. No. 8263.) That provision does not unambiguously [redacted] *n re Gravel*, 6 F.4th 503 at 512

7. In support of their Motion, the Trustees point to statements by the Court in the Bench Ruling that the Confirmation Order, the MSA, and the Stipulation are unambiguous. Mot. ¶ 18. The Bench Ruling's statement about clarity, however, addressed different conduct: the four Interference Actions, consisting of state-court filings and land-record recordings that clouded title. (Bench Ruling at 13–15.) [redacted]

[redacted] They do not. [redacted] The only order directed at the RSS Parties' conduct, the September 11 Order, required them to withdraw the Interference Actions. They did so promptly. And consistent with the Court's rulings, the RSS Parties are cooperating with the Trustees [redacted].

8. [redacted]

9. Under Second Circuit law, observations from the bench during argument are not orders. In fact, at the October 28 hearing, the Court refused to entertain the relief now requested—[redacted]—because it was not properly before the Court. Counsel for the RSS Parties raised the issue that the Trustees had "[redacted] The Court agreed that it did not "have any requests for relief in connection with any of those issues" (*id.* at 39:13–18) or "have in front of [it] the details in an appropriate evidentiary way to delve into it more specifically today." (*Id.* at 53:9–11.) The Court specifically held that the request for additional sanctions not "ripe." (*Id.* at 55:23–24.)

10. The Trustees acknowledge as much. Mot. ¶ 29. The Court's comments that it would "consider any applications" and "entertain any other motions that might be necessary as to specific

relief" anticipated *future* proceedings on a proper record. Oct. 28 Hr'g Tr. 53:23–54:3, 76:12–13. The Court did not issue an order that set obligations the violation of which could be punished as contempt.

11. The "deadline" the Trustees seek to enforce is not a court order. [redacted] A party cannot be held in contempt of a demand letter, or of an order the Court has not entered. [redacted]

12. To the extent the Trustees' claims [redacted] are asserted as a basis for contempt against the RSS Parties, this argument fails for multiple reasons. By the Trustees' own account, [redacted]. [redacted]

2 [redacted] considered, the RSS Parties' [redacted]'.

[redacted] At a minimum, these documents are silent on the question. That silence "redound[s] to the benefit of the person charged with contempt." *Gucci*, 768 F.3d 122 at 142.

13. [redacted]

[redacted]

**B. The Trustees Have Not Established Through Clear and Convincing Proof the RSS Parties' Non-Compliance with the Four Corners of an Order.**

15. Clear and convincing evidence "requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin*, 277 F.3d at 250. The Trustees' showing falls short. The Court observed at the October 28th hearing that the record did not include "the details in an appropriate evidentiary way" that would allow for such a finding. Oct. 28 Hr'g Tr. at 53:9–11. The motion does nothing to remedy that shortcoming.

16. Much of the motion's "proof" is not evidence at all. It consists of citations to the Trustees' own prior Objection (Mot. ¶¶ 10, 22, 23 (citing Objection ¶¶ 15–16)); counsel's argument at the October 28 hearing (*see, e.g.*, *id.* ¶ 22 (citing Oct. 28 Hr'g Tr. 41:19–42:5)); and the Court's questions from the bench. But unsworn assertions from counsel are not evidence, and the Court's October 28 statement that it lacked an evidentiary record on these issues applies equally

here. Oct. 28 Hr'g Tr. 53:9–11. Conduct that was before the Court at the October 28th hearing cannot now be recast as contempt of rulings the Court declined to make.

17. [redacted]

18. [redacted] These out-of-court statements are being offered in court for the truth of their contents: the conditions and circumstances at unspecified showings.

19. The Trustees have not submitted [redacted] any admissible evidence to establish any of the

[3] The [redacted]

supposed conduct or conditions. What the Trustees have submitted cannot be considered by the Court.[5]

20. [redacted]., Mr. Velluci is corporate attorney—not a real estate broker—and the Trustees cannot use his lay opinion to backdoor textbook hearsay into the evidentiary record. [redacted].

21. Finally, even if the Court considered the Broker's inadmissible email, it defeats the motion. [redacted]

22. [redacted]

[redacted]

### C. The RSS Parties Have Complied or Attempted to Comply with the Court's Orders.

23. The third element also fails. The RSS Parties promptly withdrew the Interference Actions when the Court directed them to do so. While they have requested additional relief from this Court, neither those requests for relief nor the impending decisions for cannot form the basis of a contempt finding. Indeed, the Confirmation Order expressly provides the Court with jurisdiction to adjudicate disputes over compliance with its terms. The RSS Parties have not filed any new action concerning the property. Further, while those requests have been pending, they have cooperated [redacted]5.

24. [redacted]. [redacted]

## II [redacted]

[redacted]

26. [redacted]

[redacted] [redacted].

## III THE COURT SHOULD NOT EXTEND THE LITIGATION STANDSTILL

28. The Trustees do not explain how Settlement Stipulation, the Confirmation Order or the Bankruptcy Code provide a legal basis for extending the Litigation Standstill. In fact, none of these supposed bases justifies the extraordinary relief that they seek.

29. The Trustees first point to Section 1142(b) of the Bankruptcy Code, which generally authorizes the Court to "direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). Extension of the Litigation Standstill set forth in a non-plan document is clearly not a directive to a "necessary party . . .to perform any . . . act . . . that is necessary for the consummation of the plan," which was, in any event, substantially consummated when the Plan went effective on May 1, 2025. Unsurprisingly, the Trustees do not cite a single case to support their contention that Section 1142(b) provides the Court authority to modify the terms of the Settlement Stipulation.[6]

30. The Trustees' reliance on paragraphs 6 and 9 of the Settlement Stipulation fares no better. Paragraph 6 of the Settlement Stipulation is general remedies provision that entitles a non-

---

[6] Indeed, Paragraph 33(i)—not Paragraph 33(j)–cites section 1142(b) in connection with discussing the Court's authority to compel compliance with the Confirmation Order and

breaching party to "available remedies at law or equity with respect to such breach." (Dkt. No. 7713 ¶ 6.) Paragraph 9 provides that the Parties consent to the Bankruptcy Court's jurisdiction with respect to any matter "arising under, related to, or in connection with" the Settlement Stipulation. *Id.* ¶ 9. Neither paragraph authorizes the Court to depart from applicable Wyoming law regarding the equitable remedies available for breach of contract. The Trustees have not cited a single case to support their claim that it authorizes a court to rewrite the Settlement Stipulation.

31. Finally, Paragraph 33(j) of the Confirmation Order provides no basis for the Court to extend the Litigation Standstill. Paragraph 33(a) makes clear that the Confirmation Order does not purport to modify the parties' rights, claims, and remedies under the Settlement Stipulation. In relevant part, Paragraph 33(a) provides:

> **Nothing herein shall modify or limit the rights of any party under the Settlement Stipulation.** This Order is intended, among other things, to implement the obligations set forth in the Settlement Stipulation and shall not extend, broaden, or limit any rights, defenses, claims, or positions of the any of the Parties to the Settlement Stipulation in the pending litigation that is the subject of the Settlement Stipulation.

(ECF No. 8263 ¶ 33(a) (emphasis in original).)

32. In any event, Paragraph 33(j) is a general remedies provision that authorizes the Court to grant appropriate relief for a failure to comply with the Confirmation Order. It does not

---

specifically references the execution of documents required to effectuate plan transactions, which is consistent with the plain text of 1142(b).

provide any basis for the Court to depart to fashion a remedy that is not available under applicable state law.

## CONCLUSION

**WHEREFORE**, it is respectfully requested that the Motion be denied and that the Court grant such other and further relief as may be just and proper.

Dated: New York, New York
November 23, 2026

Respectfully submitted,

By: /s/ Anne Penachio

Anne Penachio
PENACHIO MALARA LLP
245 Main Street, Ste. 450
White Plains, NY 10601
Tel.: (914) 946-2889
apenachio@pmlawllp.com

*Counsel for the RSS Parties*